Confidential--For Professional Eyes Only
Mike Kunkel

"(16)    Restricted Payments made prior to [insert date of this Supplemental Indenture] to EFH Corp. with the Net Proceeds from Asset Sales to be used by EFH Corp. to repay or prepay Indebtedness of EFH Corp. that is guaranteed by EFIH and constitutes Parity Lien Debt, to the extent the repayment or prepayment of such Indebtedness is permitted by Section 4.10(b) or Section 4.10(f) hereof, or an Asset Sale Offer or a Collateral Asset Sale Offer made in accordance with Section 4.10 hereof;"

(h)    Clauses (17), (18), (19) and (20) are hereby added to Section 4.07(b) of the Base Indenture:

(17)    Restricted Payments made prior to [insert date of this Supplemental Indenture] in the form of a dividend to EFH Corp. (so long as EFIH is a Subsidiary of EFH Corp.) of (a) any Existing EFH Corp. Notes or Indebtedness of TCEH received by EFIH (i) in exchange for the EFIH Notes in the exchange offers pursuant to which the 9.75% Notes and EFIH Notes were issued or otherwise contributed to it or (ii) in exchange for Indebtedness of EFH Corp. or TCEH received in exchange for the EFIH Notes in the exchange offers pursuant to which the 9.75% Notes and EFIH Notes were issued or otherwise contributed to it, or (b) any Indebtedness of EFH Corp. or its Subsidiaries existing on the Secured Notes Issue Date received by EFIH in exchange for Indebtedness of the Issuer or any Guarantor permitted to be incurred under clause (2) of Section 4.09(b) hereof, in each case, including any payments received from the applicable obligor thereon to the extent such payments are excluded when calculating Consolidated Net Income;

(18)    Restricted Payments made prior to [insert date of this Supplemental Indenture] to EFH Corp. (so long as EFIH is a Subsidiary of EFH Corp.) in an aggregate amount not to exceed EFH Corp.'s Ratable Portion of Oncor Dividends to the extent such dividends have not been used by EFIH or any of its Restricted Subsidiaries to make a Restricted Payment pursuant to Section 4.07(a) hereof; provided that the proceeds of such Restricted Payments are used by EFH Corp. to pay interest on the Existing EFH Corp. Notes, the Notes, any Parity Lien Debt of EFH Corp. or any refinancings thereof;

(19)    guarantees of Indebtedness of EFH Corp. made prior to [insert date of this Supplemental Indenture] to the extent permitted to be incurred under clause (2) of Section 4.09(b) hereof; or

(20)    Restricted Payments made prior to [insert date of this Supplemental Indenture] in the form of a dividend to EFH Corp. from an Asset Sale Collateral Account in accordance with Section 4.10(f) hereof, solely to fund scheduled interest payments when due and payable on Indebtedness of EFH Corp. that is guaranteed by EFIH and constitutes Parity Lien Debt; provided that any individual Restricted Payment made pursuant to this clause (20) may not exceed the amount of the next scheduled interest payment on such Parity Lien Debt of EFH Corp. and that proceeds from an Asset Sale Collateral Account are being applied pro rata to make scheduled interest payments on Parity Lien Debt of the Issuer".

Section 3.02    Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries.

(a)    Clause (1) of Section 4.08(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"contractual encumbrances or restrictions in effect on the Issue Date, including pursuant to the Existing Notes and related documentation".

E-13

Confidential--For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential--For Professional Eyes Only
Mike Kunkel

(b)     Subclause (9)(B) of Section 4.08(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"other Indebtedness, Disqualified Stock or Preferred Stock permitted to be incurred subsequent to the Issue Date pursuant to the provisions of Section 4.09 hereof and either (i) the provisions relating to such encumbrance or restriction contained such Indebtedness are no less favorable to the Issuer, taken as a whole, as determined by the Issuer in good faith, than the provisions contained in the EFIH Indenture, as in effect on the Issue Date or the Indenture as supplemented by this Supplemental Indenture or (ii) any such encumbrance or restriction does not prohibit (except upon a default thereunder) the payment of dividends or loans in an amount sufficient, as determined by the Issuer in good faith, to make scheduled payments of cash interest of the Notes when due".

Section 3.03     Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock.

(a)     Section 4.09(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

"The Issuer shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, create, incur, issue, assume, guarantee or otherwise become directly or indirectly liable, contingently or otherwise (collectively, "incur" and, collectively, an "incurrence") with respect to any Indebtedness (including Acquired Indebtedness), and the Issuer shall not issue any shares of Disqualified Stock and shall not permit any Restricted Subsidiary to issue any shares of Disqualified Stock or Preferred Stock; provided, however, that the Issuer may incur Indebtedness (including Acquired Indebtedness) or issue shares of Disqualified Stock, and any of its Restricted Subsidiaries may incur Indebtedness (including Acquired Indebtedness), issue shares of Disqualified Stock and issue shares of Preferred Stock, if the Fixed Charge Coverage Ratio on a consolidated basis for the Issuer and its Restricted Subsidiaries' most recently ended four fiscal quarters for which internal financial statements are available immediately preceding the date on which such additional Indebtedness is incurred or such Disqualified Stock or Preferred Stock is issued would have been at least 2.00 to 1.00, determined on a pro forma basis (including a pro forma application of the net proceeds therefrom), as if the additional Indebtedness had been incurred, or the Disqualified Stock or Preferred Stock had been issued, as the case may be, and the application of proceeds therefrom had occurred at the beginning of such four-quarter period."

(b)     Clause (1) of Section 4.09(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"the incurrence of Indebtedness under Credit Facilities by the Issuer or any of its Restricted Subsidiaries and the issuance and creation of letters of credit and bankers' acceptances thereunder (with letters of credit and bankers' acceptances being deemed to have a principal amount equal to the face amount thereof), up to an aggregate principal amount of $750.0 million outstanding at any one time".

(c)     Clause (3) of Section 4.09(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Indebtedness represented by the guarantee by EFIH of (i) Indebtedness of EFH Corp. in existence on the Issue Date (other than Indebtedness described in clauses (1) and (2) of this Section 4.09(b)), including its guarantees of the Existing EFH Corp. Notes (including any PIK interest which may be paid with respect thereto and guarantees thereof) and (ii) additional Indebtedness of EFH Corp.

E-14

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

incurred after the Issue Date (other than Indebtedness described in clauses (1) and (2) of this Section 4.09(b)) and prior to [insert date of this Supplemental Indenture]".

(d)    Clause (7) of Section 4.09(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Indebtedness of the Issuer to a Restricted Subsidiary; provided that any such Indebtedness owing to a Restricted Subsidiary that is not a Guarantor is expressly subordinated in right of payment to the Notes; provided, further, that any subsequent issuance or transfer of any Capital Stock or any other event which results in any Restricted Subsidiary ceasing to be a Restricted Subsidiary or any other subsequent transfer of any such Indebtedness (except to the Issuer or another Restricted Subsidiary) shall be deemed, in each case, to be an incurrence of such Indebtedness not permitted by this clause (7)".

(e)    Clause (8) of Section 4.09(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Indebtedness of a Restricted Subsidiary to the Issuer or another Restricted Subsidiary; provided that if a Guarantor incurs such Indebtedness to a Restricted Subsidiary that is not a Guarantor, such Indebtedness is expressly subordinated in right of payment to the Guarantee of the Notes of such Guarantor; provided, further, that any subsequent issuance or transfer of any Capital Stock or any other event which results in any Restricted Subsidiary ceasing to be a Restricted Subsidiary or any other subsequent transfer of any such Indebtedness (except to the Issuer or another Restricted Subsidiary) shall be deemed, in each case, to be an incurrence of such Indebtedness not permitted by this clause (8)".

(f)    Clause (10) of Section 4.09(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Hedging Obligations; provided that such Hedging Obligations are not entered into for speculative purposes (as determined by the Issuer in its reasonable discretion acting in good faith)".

(g)    Clause (12) of Section 4.09(b) of the Base Indenture is hereby amended by deleting the reference to the amount of "$1,750.0 million" and substituting for such amount the amount of "$250.0 million".

(h)    Clause (14) of Section 4.09(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Indebtedness, Disqualified Stock or Preferred Stock of (x) the Issuer or a Restricted Subsidiary incurred to finance an acquisition or (y) Persons that are acquired by the Issuer or any Restricted Subsidiary or merged into the Issuer or a Restricted Subsidiary in accordance with the terms of this Indenture; provided that after giving effect to such acquisition or merger, either (a) the Issuer would be permitted to incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test set forth in Section 4.09(a) hereof or (b) such Fixed Charge Coverage Ratio of the Issuer and its Restricted Subsidiaries is greater than immediately prior to such acquisition or merger".

(i)    Clause (2) of Section 4.09(c) of the Base Indenture is hereby amended by deleting the proviso thereto.

(j)    Section 4.09(f) of the Base Indenture is hereby amended and restated in its entirety as follows:

E-15

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003665

Confidential--For Professional Eyes Only
Mike Kunkel

"Notwithstanding anything in this Section 4.09 to the contrary, the Issuer shall not, and shall not permit [EFIH Finance] [ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] or any Guarantor to, directly or indirectly, incur any Indebtedness (including Acquired Indebtedness) that is subordinated or junior in right of payment to any Indebtedness of the Issuer, [EFIH Finance][ ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] or such Guarantor, as the case may be, unless such Indebtedness is expressly subordinated in right of payment to the Notes or such Guarantor's Guarantee to the extent and in the same manner as such Indebtedness is subordinated to other Indebtedness of the Issuer, [EFIH Finance][ ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] or such Guarantor, as the case may be."

Section 3.04    <u>Asset Sales</u>.

(a)    Section 4.10(b) of the Base Indenture is hereby amended by adding the following clause (1):

"(1)    to repay or prepay Parity Lien Debt of the Issuer (other than the Notes) (and, in the case of revolving loans and other similar obligations, permanently reduce the commitment thereunder) on a <u>pro rata</u> basis (including to make Restricted Payments to EFH Corp. prior to [insert date of this Supplemental Indenture] to permit EFH Corp. to repay or prepay Indebtedness of EFH Corp. (other than Indebtedness owed to a Subsidiary of EFH Corp.) that is guaranteed by EFIH and constitutes Parity Lien Debt), but only up to an aggregate principal amount equal to such Net Proceeds to be used to repay Indebtedness pursuant to this clause (1) multiplied by a fraction, the numerator of which is the aggregate outstanding principal amount of such Parity Lien Debt and the denominator of which is the aggregate principal amount of all Parity Lien Debt (including the Notes), based on amounts outstanding on the date of closing of such Asset Sale; <u>provided</u> that the Issuer shall equally and ratably reduce Obligations under the Notes as provided by Section 3.07 hereof through open-market purchases (to the extent such purchases are at or above 100% of the principal amount thereof) or by making an offer (in accordance with the procedures set forth in this Section 4.10) to all Holders to purchase their Notes at 100% of the principal amount thereof plus the amount of accrued but unpaid interest, if any".

(b)    Clause (1) of Section 4.10(b) of the Base Indenture is hereby renumbered as clause (2) and amended by deleting subclause (C) and renumbering subclause (D) as subclause (C), and by deleting the proviso thereto.

(c)    Clauses (2) and (3) of Section 4.10(b) of the Base Indenture are hereby renumbered as clauses (3), and (4), respectively.

(d)    The references to clauses (2) and (3) in the final proviso to Section 4.10(b) of the Base Indenture are hereby changed to references to clauses (3) and (4).

(e)    Clauses (1) and (2) of Section 4.10(f) of the Base Indenture are hereby amended and restated in their entirety and clause (3) is hereby added as follows:

"(1) to repay or prepay Parity Lien Debt (other than the Notes) (and, in the case of revolving loans and other similar obligations, permanently reduce the commitment thereunder) on a <u>pro rata</u> basis (including to make Restricted Payments to EFH Corp. prior to [insert date of this Supplemental Indenture] to permit EFH Corp. to repay or prepay Indebtedness of EFH Corp. that is guaranteed by EFIH and constitutes Parity Lien Debt), but only up to an aggregate principal amount equal to such Net Proceeds to be used to repay Indebtedness pursuant to this clause (1) multiplied by a fraction, the numerator of which is the aggregate outstanding principal amount of such Parity Lien Debt and the denominator of which is the aggregate outstanding principal

E-16

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003666

Confidential--For Professional Eyes Only
Mike Kunkel

amount of all Parity Lien Debt (including the Notes), in each case based on amounts outstanding on the date of closing of such Asset Sale; provided that the Issuer shall equally and ratably reduce Obligations under the Notes as provided in Section 3.07 hereof, through open-market purchases (to the extent such purchases are at or above 100% of the principal amount thereof) or by making an offer (in accordance with the procedures set forth in Section 4.10(h) hereof for a Collateral Asset Sale Offer) to all Holders to purchase their Notes at 100% of the principal amount thereof plus the amount of accrued and unpaid interest, if any;

(2) to repay, repurchase or redeem the Notes as provided by Section 3.07 hereof, through open-market purchases (to the extent such purchases are at or above 100% of the principal amount thereof) or by making an offer (in accordance with the procedures set forth in this Section 4.10 for a Collateral Asset Sale Offer) to all Holders to purchase their Notes at 100% of the principal amount thereof plus the amount of accrued but unpaid interest, if any; or

(3) to make an Investment in any Oncor Subsidiary or Successor Oncor Business; provided such Investment is received by the Issuer and shall be concurrently pledged as Collateral for the benefit of the Holders of the Notes and holders of the other Secured Debt Obligations; and provided, further that to the extent the proceeds of any such Investment are subsequently dividended, distributed or otherwise paid back to the Issuer without having been invested in a good faith, bona fide manner, such proceeds shall continue to constitute Net Proceeds from such Asset Sale."

(f)    Section 4.10(h) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Any Net Proceeds from Asset Sales of Collateral or other Oncor-related Assets that are not invested or applied as provided and within the time period set forth in Section 4.10(f) hereof shall be deemed to constitute "Collateral Excess Proceeds." When the aggregate amount of Collateral Excess Proceeds exceeds $200.0 million, the Issuer and/or any of its Restricted Subsidiaries shall make an offer to all Holders of the Notes and, if required or permitted by the terms of any Parity Lien Debt, to the holders of such Parity Lien Debt (and if required or permitted by the terms of any Indebtedness of EFH Corp. that is guaranteed by EFIH and constitutes Parity Lien Debt, prior to [insert date of this Supplemental Indenture] EFH Corp. may make an offer to all holders of such Indebtedness) (a "Collateral Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such Parity Lien Debt that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Collateral Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in this Indenture. The Issuer and/or any of its Restricted Subsidiaries shall commence a Collateral Asset Sale Offer with respect to Collateral Excess Proceeds within 10 Business Days after the date that Collateral Excess Proceeds exceed $200.0 million by mailing the notice required pursuant to the terms of this Indenture, with a copy to the Trustee."

Section 3.05    Transactions with Affiliates.

(a)    Clause (1) of Section 4.11(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"(1) transactions (A) between or among the Issuer or any of its Restricted Subsidiaries or between or among the Issuer, any of its Restricted Subsidiaries and the Oncor Subsidiaries in the ordinary course of business or (B) prior to [insert date of this Supplemental Indenture] between or among EFIH or any of

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003667

Confidential--For Professional Eyes Only
Mike Kunkel

its Restricted Subsidiaries and EFH Corp. or any of its restricted Subsidiaries in the ordinary course of business"

(b)    Clause (2) of Section 4.11(b) of the Base Indenture is hereby amended by changing the reference to "Section 4.16" to a reference to "Section 5.01" of the Base Indenture.

(c)    Clause (3) of Section 4.11(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"(3) the payment, prior to [insert date of this Supplemental Indenture], of management, consulting, monitoring and advisory fees and related expenses to the Investors pursuant to the Sponsor Management Agreement (plus any unpaid management, consulting, monitoring and advisory fees and related expenses accrued in any prior year) and the termination fees pursuant to the Sponsor Management Agreement, in each case as in effect on the Issue Date and only to the extent not otherwise paid for with funds (excluding any funds advanced on behalf of EFIH) provided by EFH Corp. or its other Subsidiaries, or any amendment thereto (so long as any such amendment is not disadvantageous in the good faith judgment of the Board of Directors of the Issuer to the Holders when taken as a whole as compared to the Sponsor Management Agreement in effect on the Issue Date)"

(d)    Clause (8) of Section 4.11(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"the Transactions (including payments made after the Closing Date in respect of the Issuer's and its Subsidiaries' or parent companies' long-term incentive plan or in respect of tax gross-ups and other deferred compensation) and the payment of all fees and expenses related to the Transactions."

(e)    Clause (10) of Section 4.11(b) of the Base Indenture is hereby amended and restated in its entirety as follows:

"the issuance of Equity Interests (other than Disqualified Stock) of the Issuer to any Permitted Holder or to any director, officer, employee or consultant of the Issuer or any of its direct or indirect parent companies."

Section 3.06    Liens.    Section 4.12(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

"(a)    The Issuer shall not, and shall not permit [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] or any Guarantor that is a Restricted Subsidiary to, directly or indirectly, create, incur, assume or suffer to exist any Lien (except Permitted Liens) that secures obligations under any Indebtedness or any related guarantee, on any asset or property of the Issuer or any Guarantor that is a Restricted Subsidiary, or any income or profits therefrom, or assign or convey any right to receive income therefrom, unless:

(1) in the case of Liens securing Subordinated Indebtedness, the Notes and any related Guarantees are secured by a Lien on such property, assets or proceeds that is senior in priority to such Liens; or

(2)    in all other cases, the Notes or any Guarantees are equally and ratably secured or are secured by a Lien on such property, assets or proceeds that is senior in priority to such Liens;

E-18

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003668

Confidential--For Professional Eyes Only
Mike Kunkel

except that the foregoing shall not apply to (a) Liens securing Indebtedness permitted to be incurred pursuant to clause (2) or clause (3)(ii) of Section 4.09(b) hereof; provided that the Notes or any related Guarantee are secured on at least an equal and ratable basis as such Indebtedness, (b) Liens securing Indebtedness permitted to be incurred under Credit Facilities, including any letter of credit relating thereto, that was permitted by the terms of this Indenture to be incurred pursuant to clause (1) of Section 4.09(b) hereof and (c) Liens incurred to secure Obligations in respect of any Indebtedness permitted to be incurred pursuant to Section 4.09 hereof; provided that, with respect to Liens securing Obligations permitted under this clause (c), at the time of incurrence and after giving pro forma effect thereto, the Consolidated Secured Debt Ratio for the most recently ended four full fiscal quarters for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur would be no greater than 5.0 to 1.0.  Any Lien which is granted to secure the Notes under this Section 4.12 shall be discharged at the same time as the discharge of the Lien (other than through the exercise of remedies with respect thereto) that gave rise to the obligation to so secure the Notes."

Section 3.07    Limitation on Guarantees of Indebtedness by Restricted Subsidiaries.  Section 4.15 of the Base Indenture is hereby amended by amending and restating the first paragraph thereof in its entirety as follows:

"The Issuer shall not permit any of its Wholly-Owned Subsidiaries that are Restricted Subsidiaries (and non-Wholly-Owned Subsidiaries if such non-Wholly-Owned Subsidiaries guarantee other capital markets debt securities of the Issuer, [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] or any Guarantor), other than [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE], a Guarantor, a Foreign Subsidiary or a Receivables Subsidiary, to guarantee the payment of any Indebtedness of the Issuer, [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] or any Guarantor, unless:"

Section 3.08.    Restrictions on Permitted Asset Transfers.  Section 4.16 of the Base Indenture is hereby amended and restated in its entirety as follows:

"Section 4.16    Limitations on Business Activities of [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE].

[EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE]  may not hold assets, become liable for any obligations or engage in any business activities; provided that it may be a co-obligor with respect to the Notes, the EFIH Notes or any other Indebtedness issued by the Issuer and may engage in any activities directly related thereto or necessary in connection therewith.  [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] shall be a Wholly-Owned Subsidiary of the Issuer at all times."

Section 3.09    Restrictions on TCEH Transfers.  Section 4.17 of the Base Indenture is hereby deleted in its entirety and marked as "[Reserved]."

Section 3.10    Restrictions on Certain Investments in Oncor Subsidiaries and the Collateral.

(a)    Section 4.18(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

E-19

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

"The Issuer shall not permit any Restricted Subsidiary to hold any Equity Interests in, or Indebtedness of, or other Investments in, any of the Oncor Subsidiaries or any Successor Oncor Business or any other Collateral."

(b)        Section 4.18(d) of the Base Indenture is hereby amended and restated in its entirety as follows:

"The Issuer shall not sell, assign, transfer, convey or otherwise dispose of any Collateral, including any consideration (other than cash and Cash Equivalents) received by the Issuer in an Asset Sale, including in respect of a Permitted Asset Swap of Collateral, except in connection with a sale of all or substantially all of the assets of the Issuer in a manner permitted by Section 5.01 hereof or pursuant to an Asset Sale that complies with Section 4.10 hereof pertaining to an Asset Sale of Collateral."

## ARTICLE 4

## AMENDMENT OF ARTICLE 5

Section 4.01    Merger, Consolidation, or Sale of All or Substantially All Assets.  Section 5.01 of the Base Indenture is hereby amended and restated in its entirety as follows:

"(a)        The Issuer shall not consolidate or merge with or into or wind up into (whether or not the Issuer is the surviving corporation), or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of its properties or assets, in one or more related transactions, to any Person unless:

(1)        the Issuer is the surviving corporation or the Person formed by or surviving any such consolidation, wind-up or merger (if other than the Issuer) or to which such sale, assignment, transfer, lease, conveyance or other disposition shall have been made is a corporation, partnership, limited liability company or trust organized or existing under the laws of the jurisdiction of organization of the Issuer or the laws of the United States, any state thereof, the District of Columbia, or any territory thereof (such Person, as the case may be, being herein called the "Successor Company");

(2)        the Successor Company, if other than the Issuer, and, to the extent the Successor Company is not a corporation, a Subsidiary of such Successor Company that is a co-obligor and a corporation organized or existing under the laws of the United States, any state of the United States, the District of Columbia or any territory thereof, expressly assumes (i) all the obligations of the Issuer under the Notes, this Indenture and the Security Documents to which it is a party, pursuant to a supplemental indenture or other document or instrument in form reasonably satisfactory to the Trustee and (ii) the Registration Rights Agreement;

(3)        immediately after such transaction, no Default exists;

(4)        immediately after giving pro forma effect to such transaction and any related financing transactions (including, without limitation, any transaction the proceeds of which are applied to reduce the Indebtedness of the Successor Company or the Issuer, as the case may be), as if such transactions had occurred at the beginning of the applicable four-quarter period,

(A)        the Successor Company would be permitted to incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test set forth in Section 4.09(a) hereof, or

E-20

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003670

Confidential--For Professional Eyes Only
Mike Kunkel

(B)    such Fixed Charge Coverage Ratio for the Successor Company and its Restricted Subsidiaries would be greater than such ratio for the Issuer and its Restricted Subsidiaries immediately prior to such transaction;

(5)    in connection with a Permitted Asset Transfer, the rating on the Notes shall not have been downgraded by two or more of the Rating Agencies (or, if the Notes are rated by only one Rating Agency at the time of the first notice of such Permitted Asset Transfer, such Rating Agency) during the period commencing 30 days prior to the first public notice of the occurrence of a Permitted Asset Transfer or the intention of the Issuer or any Subsidiary thereof to effect a Permitted Asset Transfer and ending on the date 60 days after such notice relative to the rating at the start of such period;

(6)    each Guarantor, unless it is the other party to the transactions described above, in which case clause (1)(B) of Section 5.01(c) hereof shall apply, shall have by a supplemental indenture confirmed that its Guarantee and any Security Documents to which it is a party shall apply to such Person's obligations under this Indenture, the Notes and the Registration Rights Agreement; and

(7)    the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, wind-up, merger or transfer and such supplemental indenture, if any, comply with this Indenture and, if a supplemental indenture is required in connection with such transaction, such supplemental indenture shall comply with the applicable provisions of this Indenture;

provided, that for the purposes of this Section 5.01 only, a transaction meeting the requirements of the proviso to clause (1) under the definition of "Change of Control" shall not be deemed to be a sale, assignment, transfer, conveyance or other disposition of all or substantially all of the properties or assets of the Issuer and its Subsidiaries. For the avoidance of doubt, the Issuer may consummate a transaction meeting the requirements of the proviso to clause (1) under the definition of "Change of Control" without complying with this Section 5.01, and the determination in the preceding proviso shall not affect the determination of what constitutes all or substantially all the assets of the Issuer and its Subsidiaries under any other agreement to which the Issuer is a party.

(b)    Notwithstanding clauses (3) and (4) of Section 5.01(a) hereof,

(1)    any Restricted Subsidiary may consolidate with or merge into or transfer all or part of its properties and assets to the Issuer, and

(2)    the Issuer may merge with an Affiliate of the Issuer solely for the purpose of reincorporating the Issuer in a State of the United States, the District of Columbia or any territory thereof so long as the amount of Indebtedness of the Issuer and its Restricted Subsidiaries is not increased thereby.

(c)    Subject to Section 11.06 hereof, no Guarantor shall, and the Issuer shall not permit any Guarantor to, consolidate or merge with or into or wind up into (whether or not the Issuer or the Guarantor is the surviving corporation), or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of its properties or assets, in one or more related transactions, to any Person unless:

(1)    (A)    such Guarantor is the surviving corporation or the Person formed by or surviving any such consolidation, wind-up or merger (if other than such Guarantor) or to which such sale, assignment, transfer, lease, conveyance or other disposition shall have been made is a

E-21

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential—For Professional Eyes Only
Mike Kunkel

corporation, partnership, limited partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of such Guarantor, as the case may be, or the laws of the United States, any state thereof, the District of Columbia, or any territory thereof (such Guarantor or such Person, as the case may be, being herein called the "Successor Person");

      (B)    the Successor Person, if other than such Guarantor, expressly assumes all the obligations of such Guarantor under this Indenture and such Guarantor's related Guarantee and any Security Documents to which such Guarantor is a party pursuant to supplemental indentures or other documents or instruments in form reasonably satisfactory to the Trustee;

      (C)    immediately after such transaction, no Default exists; and

      (D)    the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, wind-up, merger or transfer and such supplemental indentures, if any, comply with this Indenture; or

    (2)    the transaction is made in compliance with Section 4.10 hereof.

(d)    Notwithstanding Section 5.01(c) hereof, any Guarantor may (i) merge into or transfer all or part of its properties and assets to another Guarantor or the Issuer, (ii) merge with an Affiliate of the Issuer solely for the purpose of reincorporating the Guarantor in the United States, any state thereof, the District of Columbia or any territory thereof or (iii) convert into a corporation, partnership, limited partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of such Guarantor.

(e)    [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] may not consolidate or merge with or into or wind up into (whether or not [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] is the surviving corporation), or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE]'s properties or assets, in one or more related transactions, to any Person unless:

    (1)(A)    concurrently therewith, a corporate Wholly-Owned Subsidiary of the Issuer that is a Restricted Subsidiary organized or existing under the laws of the United States, any state thereof, the District of Columbia, or any territory thereof expressly assumes all the obligations of [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] under the Notes and this Indenture pursuant to a supplemental indenture or other documents or instruments in form reasonably satisfactory to the Trustee; or

      (B)    after giving effect thereto, at least one obligor on the Notes shall be a corporation organized or existing under the laws of the United States, any state thereof, the District of Columbia, or any territory thereof; and

    (2)    immediately after such transaction, no Default exists; and

(3)    [EFIH Finance][ADD NAME OF CORPORATE CO-OBLIGOR IF NOT EFIH FINANCE] shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, wind-up, merger or transfer and such supplemental indenture, if any,

Confidential—For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential--For Professional Eyes Only
Mike Kunkel

comply with this Indenture and, if a supplemental indenture is required in connection with such transaction, such supplement shall comply with the applicable provisions of this Indenture."

## ARTICLE 5

## AMENDMENT OF ARTICLE 8

Section 5.01    Covenant Defeasance.  Section 8.03 of the Base Indenture is hereby amended and restated in its entirety as follows:

"Upon the Issuer's exercise under Section 8.01 hereof of the option applicable to this Section 8.03, the Collateral shall be released from the Lien securing the Notes as provided in Section 10.06 hereof, and the Issuer and the Guarantors shall, subject to the satisfaction of the conditions set forth in Section 8.04 hereof, be released from their obligations under the covenants contained in Sections 4.03, 4.04, 4.05, 4.07, 4.08, 4.09, 4.10, 4.11, 4.12, 4.13, 4.14, 4.15, 4.16, 4.18, 4.19, 4.20 and 4.21 hereof and clauses (3), (4) and (5) of Section 5.01(a), Sections 5.01(c) and 5.01(d) hereof with respect to the outstanding Notes on and after the date the conditions set forth in Section 8.04 hereof are satisfied ("Covenant Defeasance"), and the Notes shall thereafter be deemed not "outstanding" for the purposes of any direction, waiver, consent or declaration or act of Holders (and the consequences of any thereof) in connection with such covenants, but shall continue to be deemed "outstanding" for all other purposes hereunder (it being understood that such Notes shall not be deemed outstanding for accounting purposes). For this purpose, Covenant Defeasance means that, with respect to the outstanding Notes, the Issuer may omit to comply with and shall have no liability in respect of any term, condition or limitation set forth in any such covenant, whether directly or indirectly, by reason of any reference elsewhere herein to any such covenant or by reason of any reference in any such covenant to any other provision herein or in any other document and such omission to comply shall not constitute a Default or an Event of Default under Section 6.01 hereof, but, except as specified above, the remainder of this Indenture and such Notes shall be unaffected thereby.  In addition, upon the Issuer's exercise under Section 8.01 hereof of the option applicable to this Section 8.03 hereof, subject to the satisfaction of the conditions set forth in Section 8.04 hereof, clauses (3), (4), (5) and (6) of Section 6.01(a) hereof (solely with respect to Restricted Subsidiaries or groups of Restricted Subsidiaries that are Significant Subsidiaries), clause (7) of Section 6.01(a) hereof (solely with respect to Restricted Subsidiaries or groups of Restricted Subsidiaries that are Significant Subsidiaries), and clauses (8) and (9) of Section 6.01(a) hereof shall not constitute Events of Default."

## ARTICLE 6

## AMENDMENT OF ARTICLE 9

Section 6.01    Without Consent of Holders of Notes.  Section 9.01(15) of the Base Indenture is hereby deleted in its entirety and clause (16) of Section 9.01 of the Base Indenture is hereby renumbered as clause (15).

Confidential--For Professional Eyes Only
Mike Kunkel

Highly Confidential

EFH00003673

Confidential—For Professional Eyes Only
Mike Kunkel

## ARTICLE 7

## AMENDMENT OF ARTICLE 10

Section 7.01    Ranking of Parity Liens. Section 10.02 of the Base Indenture is hereby amended by amending and restating the first paragraph thereto as follows:

"(a)    The Issuer shall ensure that the Junior Lien Documents, if any, provide that, notwithstanding:"

Section 7.02    Relative Rights.    Section 10.03 of the Base Indenture is hereby amended by amending and restating the first paragraph and clause (1) thereof as follows:

"(a)    The Issuer shall ensure that nothing in any Junior Lien Document shall:

(1)    impair, as between the Issuer and the Holders of the Notes, the obligation of the Issuer to pay principal, premium, if any, and interest and Additional Interest, if any, on the Notes in accordance with their terms or any other obligation of the Issuer under this Indenture;"

Section 7.03    Security Documents. Section 10.04 of the Base Indenture is hereby amended by amending and restating the first paragraph thereto as follows:

"The due and punctual payment of the principal, premium, if any, and interest (including any Additional Interest) on the Notes when and as the same shall be due and payable, whether on an Interest Payment Date, at maturity, by acceleration, repurchase, redemption or otherwise, and interest on the overdue principal, premium, if any, and interest (to the extent permitted by law), on the Notes and performance of all other Obligations of the Issuer to the Holders of Notes or the Trustee under this Indenture and the Notes, according to the terms hereunder or thereunder, are secured as provided in the Pledge Agreement and the Collateral Trust Agreement.  Each Holder of Notes, by its acceptance thereof, consents and agrees to the terms of the Pledge Agreement and Collateral Trust Agreement (including, without limitation, the provisions providing for foreclosure and release of Collateral) as the same may be in effect or may be amended from time to time in accordance with their terms and authorizes and directs the Collateral Trustee and/or the Trustee (as the case may be) to enter into the Pledge Agreement, the Collateral Trust Agreement and any other Security Document and to perform its obligations and exercise its rights thereunder in accordance therewith."

## ARTICLE 8

## AMENDMENT OF ARTICLE 11

Section 8.01    Release of Guarantees.

(a)    Section 11.06(a)(1) of the Base Indenture is hereby amended and restated as follows:

"(1)    any sale, exchange or transfer (by merger, wind-up, consolidation or otherwise) of the Capital Stock of such Guarantor (including any sale, exchange or transfer), after which the applicable Guarantor is no longer a Restricted Subsidiary or sale of all or substantially all the assets of

E-24

Confidential—For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

such Guarantor, which sale, exchange or transfer is made in compliance with the applicable provisions of this Indenture;"

    (b)    Section 11.06(b) of the Base Indenture is hereby deleted in its entirety.

    (c)    Section 11.06(c) of the Base Indenture is hereby deleted in its entirety.

## ARTICLE 9

## MISCELLANEOUS PROVISIONS

Section 9.01    Ratification of Base Indenture.    Except as expressly modified or amended hereby, the Base Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the Notes and this Supplemental Indenture.

Section 9.02    Modification and Deletion of Certain Exhibits to the Base Indenture.    Exhibits A and D of the Base Indenture are hereby modified to conform to the revisions provided above in Articles 2 through 8.  Exhibits E and F of the Base Indenture are hereby deleted and marked as "[Reserved]."

Section 9.03    Notices.  The address for the Issuer stated in Section 13.02 of the Base Indenture is hereby changed to the following:

[_____]
[_____]
[_____]
[_____]
[_____]

Section 9.04    Conflict with Trust Indenture Act.    If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control.  If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

Section 9.05    Provisions Binding on Issuer's Successors.  All agreements of the Issuer in this Supplemental Indenture shall bind its successors.  All agreements of the Trustee in this Supplemental Indenture shall bind its successors.  All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 to the Base Indenture.

Section 9.06    Governing Law.    THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

Section 9.07    Benefits of Indenture.  Nothing in this Supplemental Indenture, expressed or implied, shall give to any person, other than the parties hereto and their successors hereunder, and the Holders, any benefit or any legal or equitable right, remedy or claim under this Supplemental Indenture.

E-25

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003675

Confidential—For Professional Eyes Only
Mike Kunkel

Section 9.08    Headings, Etc.  The headings of the Articles and Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

Section 9.09    Severability.  In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 9.10    Counterpart Originals.  The parties may sign any number of copies of this Supplemental Indenture.  Each signed copy shall be an original, but all of them together represent the same agreement.

Section 9.11    Trustee.  The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture.  The statements and recitals herein are deemed to be those of the Issuer and not of the Trustee.

Section 9.12    Further Instruments and Acts.  Upon request of the Trustee, the Issuer will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purposes of this Supplemental Indenture.

Section 9.13    Waiver of Jury Trial.  EACH OF THE ISSUER, THE GUARANTORS AND THE TRUSTEE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS SUPPLEMENTAL INDENTURE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 9.14    Force Majeure.  In no event shall the Trustee be responsible or liable for any failure or delay in the performance of its obligations under this Supplemental Indenture arising out of or caused by, directly or indirectly, forces beyond its reasonable control, including without limitation strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software or hardware) services.

E-26

Confidential—For Professional Eyes Only
Mike Kunkel

Confidential—For Professional Eyes Only
Mike Kunkel

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be executed as of the date first above written.

[NAME OF SUCCESSOR EFIH COMPANY][ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC]


By: _____
    Name:
    Title:

[Supplemental Indenture]

Confidential—For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential—For Professional Eyes Only
Mike Kunkel

ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

[NEW GUARANTOR]


By: _____
    Name:
    Title:

Confidential—For Professional Eyes Only
Mike Kunkel

Confidential—For Professional Eyes Only
Mike Kunkel

Confidential—For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

EXHIBIT F

[FORM OF TCEH TRANSFER SUPPLEMENTAL INDENTURE]

---

**ENERGY FUTURE HOLDINGS CORP.**

**AND EACH OF THE GUARANTORS PARTY HERETO**

**10.000% SENIOR SECURED NOTES DUE 2020**

SUPPLEMENTAL INDENTURE
TO

INDENTURE, DATED AS OF JANUARY 12, 2010

DATED AS OF [_____], 20[__]

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential—For Professional Eyes Only
Mike Kunkel

## [FORM OF] TCEH TRANSFER SUPPLEMENTAL INDENTURE

### 10.000% Senior Secured Notes due 2020

THIS [___] SUPPLEMENTAL INDENTURE, dated as of [_____], 20[__] (this "Supplemental Indenture"), among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), each of the Guarantors (as defined in the Base Indenture (defined below)) and The Bank of New York Mellon Trust Company, N.A., as Trustee (in such capacity, the "Trustee") under the Base Indenture.

### RECITALS OF THE COMPANY:

WHEREAS, the Issuer, the Guarantors and the Trustee have heretofore entered into an Indenture dated as of January 12, 2010 (the "Base Indenture"), providing for the issuance by the Issuer of 10.000% Senior Secured Notes due 2020 (the "Notes");

WHEREAS, Section 4.17 of the Base Indenture requires the Issuer and the Trustee to enter into this Supplemental Indenture in connection with the consummation of a TCEH Transfer;

WHEREAS, [the Issuer] [one of the Restricted Subsidiaries of the Issuer] intends to consummate a TCEH Transfer pursuant to Section 4.17 of the Base Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture by the Issuer and the Guarantors and to make this Supplemental Indenture valid and binding on the Issuer and the Guarantors have been complied with or have been done or performed;

WHEREAS, pursuant to Section 11.06(a)(1), EFCH shall be automatically released from its Guarantee of the Notes in connection with the TCEH Transfer;

WHEREAS, Section 9.01(15) of the Base Indenture provides that the Issuer, the Guarantors and the Trustee may enter into a TCEH Transfer Supplemental Indenture without obtaining the consent of any Holders of the Notes to amend the Base Indenture in connection with the consummation of a TCEH Transfer in the manner set forth in Section 4.17 of the Base Indenture; and

NOW THEREFORE, for and in consideration of the foregoing and of the covenants contained herein and in the Base Indenture, the Issuer, the Guarantors and the Trustee mutually covenant and agree, for the equal and ratable benefit of all Holders of the Notes as follows:

### ARTICLE 1

### DEFINITIONS

Section 1.01    Relation to Base Indenture.  This Supplemental Indenture constitutes an integral part of the Base Indenture.

Section 1.02    Release of EFCH Guarantee.  The Guarantee of EFCH with respect to the Notes and pursuant to the Indenture is hereby released and terminated and EFCH is hereby released from all liability as an obligor under the Indenture and the Notes and its Guarantee issued thereunder.

Section 1.03    Definitions.

F-1

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003681

Confidential--For Professional Eyes Only
Mike Kunkel

(a)     For all purposes of this Supplemental Indenture, except as otherwise expressly provided for or unless the context otherwise requires:

(i)     Capitalized terms used but not defined herein shall have the respective meanings assigned to them in the Base Indenture;

(ii)     Terms defined both herein and in the Base Indenture shall have the meanings assigned to them herein;

(iii)     All references herein to Articles and Sections, unless otherwise specified, refer to the corresponding Articles and Sections of this Supplemental Indenture; and

(iv)     All other terms used in this Supplemental Indenture, which are defined in the Trust Indenture Act or which are by reference therein defined in the Securities Act (except as herein otherwise expressly provided or unless the context otherwise requires) shall have the meanings assigned to such terms in the Trust Indenture Act and in the Securities Act as in force at the date of the execution of this Supplemental Indenture. The words "herein," "hereof," "hereunder," and words of similar import refer to this Supplemental Indenture as a whole and not to any particular Article, Section or other subdivision. The terms defined in this Article include the plural as well as the singular.

(b)     Section 1.01 of the Base Indenture is hereby amended by replacing certain definitions contained therein in their entirety with the following:

"Consolidated Leverage Ratio" as of any date of determination, means the ratio of (x) Consolidated Total Indebtedness (treating the Oncor Subsidiaries as Restricted Subsidiaries for purposes of such calculation) computed as of the end of the most recent fiscal quarter for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur to (y) the aggregate amount of EBITDA of the Issuer (treating the Oncor Subsidiaries as Restricted Subsidiaries for purposes of such calculation) for the period of the most recently ended four full consecutive fiscal quarters for which internal financial statements are available immediately preceding the date on which such event for which such calculation is being made shall occur, in each case with such pro forma adjustments to Consolidated Total Indebtedness and such EBITDA as are appropriate and consistent with the pro forma adjustment provisions set forth in the definition of "Fixed Charge Coverage Ratio."

"Credit Facilities" means, with respect to the Issuer or any of its Restricted Subsidiaries, one or more debt facilities or other financing arrangements (including, without limitation, commercial paper facilities or indentures) providing for revolving credit loans, term loans, letters of credit or other long-term indebtedness, including any notes, mortgages, guarantees, collateral documents, instruments and agreements executed in connection therewith, and any amendments, supplements, modifications, extensions, renewals, restatements or refundings thereof and any indentures or credit facilities or commercial paper facilities that replace, refund or refinance any part of the loans, notes, other credit facilities or commitments thereunder, including any such replacement, refunding or refinancing facility or indenture that increases the amount permitted to be borrowed thereunder or alters the maturity thereof (provided that such increase in borrowings is permitted under Section 4.09 hereof) or adds Restricted Subsidiaries as additional borrowers or guarantors thereunder and whether by the same or any other agent, lender or group of lenders.

"Deposit L/C Loan" means Deposit L/C Loans under, and as defined in, any Credit Facilities.

F-2

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003682

Confidential--For Professional Eyes Only
Mike Kunkel

"Existing Notes" means

- Energy Future Holdings Corp. 5.55% Fixed Senior Notes Series P due 2014;

- Energy Future Holdings Corp. 6.50% Fixed Senior Notes Series Q due 2024;

- Energy Future Holdings Corp. 6.55% Fixed Senior Notes Series R due 2034;

- Energy Future Holdings Corp. 10.875% Senior Notes due 2017;

- Energy Future Holdings Corp. 11.250%/12.000% Senior Toggle Notes due 2017; and

- 9.75% Notes.

in each case to the extent outstanding on the Issue Date.

"Incremental Deposit L/C Loans" means any Incremental Deposit L/C Loans under, and as defined in, any Credit Facilities.

"Unrestricted Subsidiary" means:

(1)     each of the Oncor Subsidiaries;

(2)     any Subsidiary of the Issuer other than EFIH or any other Guarantor owning Collateral which at the time of determination is an Unrestricted Subsidiary (as designated by the Issuer, as provided below); and

(3)     any Subsidiary of an Unrestricted Subsidiary.

The Issuer may designate any Subsidiary of the Issuer (including any existing Subsidiary and any newly acquired or newly formed Subsidiary) other than EFIH or any other Guarantor owning Collateral to be an Unrestricted Subsidiary unless such Subsidiary or any of its Subsidiaries owns any Equity Interests or Indebtedness of, or owns or holds any Lien on, any property of, the Issuer or any Subsidiary of the Issuer (other than solely any Subsidiary of the Subsidiary to be so designated); provided that

(1)     any Unrestricted Subsidiary must be an entity of which the Equity Interests entitled to cast at least a majority of the votes that may be cast by all Equity Interests having ordinary voting power for the election of directors or Persons performing a similar function are owned, directly or indirectly, by the Issuer;

(2)     such designation complies with Section 4.07 hereof; and

(3)     each of:

(a)     the Subsidiary to be so designated; and

(b)     its Subsidiaries

has not at the time of designation, and does not thereafter, create, incur, issue, assume, guarantee or otherwise become directly or indirectly liable with respect to any Indebtedness pursuant to which the lender has recourse to any of the assets of the Issuer or any Restricted Subsidiary.

F-3

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003683

PX 021
Page 200 of 222

Confidential--For Professional Eyes Only
Mike Kunkel

The Issuer may designate any Unrestricted Subsidiary to be a Restricted Subsidiary; provided that, immediately after giving effect to such designation, no Default shall have occurred and be continuing in the case of any Subsidiary of the Issuer, and (A) the Issuer could incur at least $1.00 of additional Indebtedness pursuant to clause (i) of the Fixed Charge Coverage Ratio test as set forth in Section 4.09(a) hereof; or (B) the Fixed Charge Coverage Ratio for the Issuer and its Restricted Subsidiaries would be greater than such ratio for the Issuer and its Restricted Subsidiaries immediately prior to such designation, in each case on a pro forma basis taking into account such designation.

Any such designation by the Issuer shall be notified by the Issuer to the Trustee by promptly filing with the Trustee a copy of the resolution of the Board of Directors of the Issuer or any committee thereof giving effect to such designation and an Officer's Certificate certifying that such designation complied with the foregoing provisions.

(c)      Section 1.01 of the Base Indenture is hereby amended by amending the following definitions as follows:

Clause (1) of the definition of "Change of Control" is amended and restated as follows: "the sale, lease or transfer, in one or a series of related transactions, of all or substantially all of the assets of the Issuer and its Subsidiaries, taken as a whole, to any Person other than a Permitted Holder, other than (A) a transaction meeting the requirements of the proviso to clause (3) of this definition of "Change of Control" and (B) any foreclosure on the Collateral".

Clause (1)(d) of the definition of "EBITDA" is amended and restated as follows: "any fees, expenses or charges (other than depreciation or amortization expense) related to any Equity Offering, Permitted Investment, acquisition, disposition, recapitalization or the incurrence of Indebtedness permitted to be incurred by such Person and its Restricted Subsidiaries under this Indenture (including a refinancing transaction or amendment or other modification of any debt instrument) (whether or not successful), including (i) such fees, expenses or charges related to the offering of the Initial Notes, the exchange offers pursuant to which the 9.75% Notes and EFIH Notes were issued, the offering of any Additional Notes, Exchange Notes or any additional 9.75% Notes or EFIH Notes, any Credit Facilities and any Receivables Facility, (ii) any amendment or other modification of the Notes, (iii) any such transaction consummated prior to the Closing Date and any such transaction undertaken but not completed and (iv) any charges or non-recurring merger costs as a result of any such transaction, in each case, deducted (and not added back) in computing Consolidated Net Income; plus".

Clause (1)(i) of the definition of "EBITDA" is hereby amended by deleting the reference to the amount of "$150.0 million" and substituting for such amount the amount of "$50.0 million".

Clause (1)(l) of the definition of "EBITDA" is hereby amended and restated as follows: "Intentionally omitted."

Clauses (18), (19) and (20) of the definition of "Permitted Investments" are hereby deleted in their entirety.

The definition of "Permitted Liens" is hereby amended as follows:

Clause (7) is hereby amended and restated as follows: "Liens existing on the Issue Date".

Clause (45) is hereby amended and restated as follows: "Intentionally omitted."

F-4

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003684

Confidential--For Professional Eyes Only
Mike Kunkel

Clauses (1) and (2) of the definition of "Senior Indebtedness" are hereby amended and restated as follows:

"(1) all Indebtedness of the Issuer or any Guarantor outstanding under the 9.75% Notes and related guarantees, the EFIH Notes and related guarantees or the Notes and related Guarantees (including interest accruing on or after the filing of any petition in bankruptcy or similar proceeding or for reorganization of the Issuer or any Guarantor (at the rate provided for in the documentation with respect thereto, regardless of whether or not a claim for post-filing interest is allowed in such proceedings)), and any and all other fees, expense reimbursement obligations, indemnification amounts, penalties, and other amounts (whether existing on the Issue Date or thereafter created or incurred) and all obligations of the Issuer or any Guarantor to reimburse any bank or other Person in respect of amounts paid under letters of credit, acceptances or other similar instruments;

(2) all Hedging Obligations of the Issuer or any Guarantor (and guarantees thereof) owing to a lender or any Affiliate of such lender (or any Person that was a lender or an Affiliate of such Lender at the time the applicable agreement giving rise to such Hedging Obligation was entered into); provided that such Hedging Obligations are permitted to be incurred under the terms of this Indenture".

Clauses (f) and (g) in the proviso to the definition of "Senior Indebtedness" are hereby deleted in their entirety.

(d)     Section 1.01 of the Base Indenture is hereby amended by deleting the definitions of "Collateral Posting Facility," "Expenses Relating to a Unit Outage," "Shell Wind," "TCEH Transfer" and "Unit" in their entirety.

## ARTICLE 2

## AMENDMENTS OF ARTICLE 4

Section 2.01     Limitation on Restricted Payments

(a)     Clause (2) of Section 4.07(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

"immediately after giving effect to such transaction on a pro forma basis, the Restricted Payment Coverage Ratio for the most recently ended four fiscal quarters for which internal financial statements are available immediately preceding the date of such Restricted Payment would have been at least 2.00 to 1.00; and".

(b)     Clause (3) of Section 4.07(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

"such Restricted Payment, together with the aggregate amount of all other Restricted Payments made by the Issuer and its Restricted Subsidiaries after the Closing Date (including Restricted Payments permitted by clauses (1), (2) (with respect to the payment of dividends on Refunding Capital Stock (as defined below) pursuant to clause (b) thereof only), (6)(c), (9) and (14) of Section 4.07(b) hereof, but excluding all other Restricted Payments permitted by Section 4.07(b) hereof), is less than the sum of (without duplication):".

F-5

Confidential--For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential--For Professional Eyes Only
Mike Kunkel

(c)    Clause (3)(a) of Section 4.07(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

"50% of the Consolidated Net Income of the Issuer for the period (taken as one accounting period) beginning October 11, 2007, to the end of the Issuer's most recently ended fiscal quarter for which internal financial statements are available at the time of such Restricted Payment, or, in the case such Consolidated Net Income for such period is a deficit, minus 100% of such deficit; plus".

(d)    Section 4.07(b)(11) of the Base Indenture is hereby amended by deleting the phrase "2.0% of Total Assets at the time made" and substituting for such phrase the following clause: "$100.0 million".

Section 2.02    Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries.

(a)    Section 4.08(b)(1) of the Base Indenture is hereby amended and restated in its entirety as follows:

"contractual encumbrances or restrictions in effect on the Issue Date, including pursuant to the Existing Notes and related documentation".

(b)    Section 4.08(b)(9)(B) of the Base Indenture is hereby amended and restated in its entirety as follows:

"other Indebtedness, Disqualified Stock or Preferred Stock permitted to be incurred subsequent to the Issue Date pursuant to the provisions of Section 4.09 hereof and either (i) the provisions relating to such encumbrance or restriction contained such Indebtedness are no less favorable to the Issuer, taken as a whole, as determined by the Issuer in good faith, than the provisions contained in the EFIH Indenture, as in effect on the Issue Date or (ii) any such encumbrance or restriction does not prohibit (except upon a default thereunder) the payment of dividends or loans in an amount sufficient, as determined by the Issuer in good faith, to make scheduled payments of cash interest of the Notes when due".

Section 2.03    Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock.

(a)    Section 4.09(a) of the Base Indenture is hereby amended and restated in its entirety as follows:

"The Issuer shall not, and shall not permit any of its Restricted Subsidiaries to, directly or indirectly, create, incur, issue, assume, guarantee or otherwise become directly or indirectly liable, contingently or otherwise (collectively, "incur" and, collectively, an "incurrence") with respect to any Indebtedness (including Acquired Indebtedness), and the Issuer shall not issue any shares of Disqualified Stock and shall not permit any Restricted Subsidiary to issue any shares of Disqualified Stock or Preferred Stock; provided, however, that the Issuer may incur Indebtedness (including Acquired Indebtedness) or issue shares of Disqualified Stock, and any of its Restricted Subsidiaries may incur Indebtedness (including Acquired Indebtedness), issue shares of Disqualified Stock and issue shares of Preferred Stock, if the Fixed Charge Coverage Ratio on a consolidated basis for the Issuer and its Restricted Subsidiaries' most recently ended four fiscal quarters for which internal financial statements are available immediately preceding the date on which such additional Indebtedness is incurred or such Disqualified Stock or Preferred Stock is issued would have been at least 2.00 to 1.00, determined on a pro

F-6

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

forma basis (including a pro forma application of the net proceeds therefrom), as if the additional Indebtedness had been incurred, or the Disqualified Stock or Preferred Stock had been issued, as the case may be, and the application of proceeds therefrom had occurred at the beginning of such four-quarter period."

      (b)    Section 4.09(b)(1) of the Base Indenture is hereby amended and restated in its entirety as follows:

"the incurrence of Indebtedness under Credit Facilities by the Issuer or any of its Restricted Subsidiaries and the issuance and creation of letters of credit and bankers' acceptances thereunder (with letters of credit and bankers' acceptances being deemed to have a principal amount equal to the face amount thereof), up to an aggregate principal amount of $750.0 million outstanding at any one time".

      (c)    Section 4.09(b)(7) of the Base Indenture is hereby amended to delete the parenthetical in the first proviso.

      (d)    Section 4.09(b)(8) of the Base Indenture is hereby amended to delete the parenthetical in the first proviso.

      (e)    Section 4.09(b)(10) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Hedging Obligations; provided that such Hedging Obligations are not entered into for speculative purposes (as determined by the Issuer in its reasonable discretion acting in good faith)".

      (f)    Section 4.09(b)(12) of the Base Indenture is hereby amended by deleting the reference to the amount of "$1,750.0 million" and substituting for such amount the amount of "$250.0 million".

      (g)    Section 4.09(b)(14) of the Base Indenture is hereby amended and restated in its entirety as follows:

"Indebtedness, Disqualified Stock or Preferred Stock of (x) the Issuer or a Restricted Subsidiary incurred to finance an acquisition or (y) Persons that are acquired by the Issuer or any Restricted Subsidiary or merged into the Issuer or a Restricted Subsidiary in accordance with the terms of this Indenture; provided that after giving effect to such acquisition or merger, either (a) the Issuer would be permitted to incur at least $1.00 of additional Indebtedness pursuant to the Fixed Charge Coverage Ratio test set forth in Section 4.09(a) hereof or (b) such Fixed Charge Coverage Ratio of the Issuer and its Restricted Subsidiaries is greater than immediately prior to such acquisition or merger".

      (h)    Section 4.09(c)(2) of the Base Indenture is hereby amended by deleting the proviso thereto.

      Section 2.04    Asset Sales.  Section 4.10(b) of the Base Indenture is hereby amended by deleting the first proviso thereto.

      Section 2.05    Restrictions on TCEH Transfers.  Section 4.17 of the Base Indenture is hereby deleted in its entirety.

Confidential--For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential--For Professional Eyes Only
Mike Kunkel

## ARTICLE 3

## AMENDMENT OF ARTICLE 5

Section 3.01    Merger, Consolidation, or Sale of All or Substantially All Assets. Section 5.01(a) of the Base Indenture is hereby amended by amending and restating the proviso thereto in its entirety as follows:

"provided, that for the purposes of this Section 5.01 only, a transaction meeting the requirements of the proviso to clause (3) under the definition of "Change of Control" shall not be deemed to be a sale, assignment, transfer, conveyance or other disposition of all or substantially all of the properties or assets of the Issuer and its Subsidiaries. For the avoidance of doubt, the Issuer or any of its Restricted Subsidiaries may consummate a transaction meeting the requirements of the proviso to clause (3) under the definition of "Change of Control" without complying with this Section 5.01, and the determination in the preceding proviso shall not affect the determination of what constitutes all or substantially all the assets of the Issuer and its Subsidiaries under any other agreement to which the Issuer is a party."

## ARTICLE 4

## AMENDMENT OF ARTICLE 9

Section 4.01    Without Consent of Holders of Notes. Section 9.01(15) of the Base Indenture is hereby amended and restated in its entirety as follows:

"amend this Indenture in the manner set forth in the Permitted Transfer Supplemental Indenture to be entered into in connection with the consummation of a Permitted Asset Transfer in the manner set forth in Section 4.16 hereof; or".

## ARTICLE 5

## MISCELLANEOUS PROVISIONS

Section 5.01    Ratification of Base Indenture. Except as expressly modified or amended hereby, the Base Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the Notes and this Supplemental Indenture.

Section 5.02    Provisions Binding on Successors. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 to the Base Indenture.

Section 5.03    Governing Law. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

F-8

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

Section 5.04    <u>Benefits of Indenture</u>.  Nothing in this Supplemental Indenture, expressed or implied, shall give to any person, other than the parties hereto and their successors hereunder, and the Holders, any benefit or any legal or equitable right, remedy or claim under the Base Indenture, this Supplemental Indenture or the Notes.

Section 5.05    <u>Headings, Etc.</u>  The headings of the Articles and Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

Section 5.06    <u>Severability</u>.  In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

Section 5.07    <u>Counterpart Originals</u>.  The parties may sign any number of copies of this Supplemental Indenture.  Each signed copy shall be an original, but all of them together represent the same agreement.

Section 5.08    <u>Trustee</u>.  The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture.  The statements and recitals herein are deemed to be those of the Issuer and not of the Trustee.

Section 5.09    <u>Further Instruments and Acts</u>.  Upon request of the Trustee, the Issuer will execute and deliver such further instruments and do such further acts as may be reasonably necessary or proper to carry out more effectively the purposes of this Supplemental Indenture.

Section 5.10    <u>Waiver of Jury Trial</u>.  EACH OF THE ISSUER, THE GUARANTORS AND THE TRUSTEE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS SUPPLEMENTAL INDENTURE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 5.11    <u>Force Majeure</u>.  In no event shall the Trustee be responsible or liable for any failure or delay in the performance of its obligations under this Supplemental Indenture arising out of or caused by, directly or indirectly, forces beyond its reasonable control, including without limitation strikes, work stoppages, accidents, acts of war or terrorism, civil or military disturbances, nuclear or natural catastrophes or acts of God, and interruptions, loss or malfunctions of utilities, communications or computer (software or hardware) services.

F-9

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003689

Confidential—For Professional Eyes Only
Mike Kunkel

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be executed as of the date first above written.

ENERGY FUTURE HOLDINGS CORP.


By: _____
     Name:
     Title:




ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC


By: _____
     Name:
     Title:

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003690

Confidential—For Professional Eyes Only
Mike Kunkel

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A., as Trustee


By: _____
     Name:
     Title:

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003691

**PX 021
Page 208 of 222**

Confidential--For Professional Eyes Only
Mike Kunkel

EXHIBIT G

[FORM OF ADDITIONAL NOTES SUPPLEMENTAL INDENTURE]

[_____]¹ SUPPLEMENTAL INDENTURE

[____] Supplemental Indenture (this "Supplemental Indenture"), dated as of [_____], 20[__], among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A., as Trustee (the "Trustee").

W I T N E S S E T H

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010 (the "[Original]² Indenture"), providing for the issuance of $500,000,000 in aggregate principal amount of 10.000% Senior Secured Notes due 2020 on the Issue Date (the "Initial Notes"),³ and an unlimited aggregate principal amount of Additional Notes subsequent to the Issue Date;

WHEREAS, the Company desires to issue an additional $[_____] aggregate principal amount of Additional Notes on the date hereof (the "New Additional Notes");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Notes by the Issuer, which Additional Notes shall be consolidated with and form a single class with the Initial Notes⁴;

WHEREAS, Section 9.01(9) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

---

[1]      Insert ordinal number of supplemental indenture (i.e., "First", "Second", etc.).

[2]      Include "Original" only if supplemental indentures have been entered into subsequent to January 12, 2010.

[3]      Insert reference to any supplemental indentures and to any Additional Notes issued subsequent to January 12, 2010.

[4]      Insert reference to any Additional Notes issued subsequent to January 12, 2010.

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the New Additional Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. NEW ADDITIONAL NOTES. Pursuant to this Supplemental Indenture, the New Additional Notes are hereby designated as "Additional Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $[_____], which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Notes.[5] The New Additional Notes issued hereunder shall be treated as a single class with the Initial Notes and any Additional Notes issued prior to the date hereof for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the New Additional Notes. The New Additional Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of Exhibit A hereto. The terms and provisions of the New Additional Notes set forth in Exhibit A hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. GUARANTEES. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the New Additional Notes as set forth in Article 11 of the Indenture.

4. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

5. RATIFICATION, CONFIRMATION AND PRESERVATION OF INDENTURE. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the New Additional Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

---

[5] Insert reference to any Additional Notes issued subsequent to January 12, 2010.

Confidential--For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential--For Professional Eyes Only
Mike Kunkel

6. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the New Additional Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the New Additional Notes.

8. CONFLICT WITH TRUST INDENTURE ACT. If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control. If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

9. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 of the Indenture.

10. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

11. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

13. SEVERABILITY. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

Confidential--For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential--For Professional Eyes Only
Mike Kunkel

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
     Name:
     Title:

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**, as Guarantor

By: _____
     Name:
     Title

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**, as Guarantor

By: _____
     Name:
     Title:

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee

By: _____
     Name:
     Title:

[Signature Page to [_____] Supplemental Indenture]

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003695

Confidential—For Professional Eyes Only
Mike Kunkel

EXHIBIT A

**[Form of Face of Note]**

[Insert the Global Note Legend, if applicable pursuant to the provisions of the Indenture]

[Insert the Private Placement Legend, if applicable pursuant to the provisions of the Indenture]

CUSIP: [       ]*
ISIN: [      ]

**[144A] [REGULATION S] GLOBAL NOTE**

10.000% Senior Secured Notes due 2020

No. [ ]                                                                $[_____]

**ENERGY FUTURE HOLDINGS CORP.**

promises to pay to CEDE & CO. or registered assigns, the principal sum set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto on January 15, 2020.

Interest Payment Dates:  January 15 and July 15

Record Dates:  January 1 and July 1

---

\*    Rule 144A Note CUSIP / ISIN:  [292680 AG0] / [US292680AG02]
      Regulation S Note CUSIP / ISIN:  [U29191 AD2] / [USU29191AD22]

Confidential—For Professional Eyes Only
Mike Kunkel

Highly Confidential

EFH00003696

Confidential—For Professional Eyes Only
Mike Kunkel

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____, 20__

ENERGY FUTURE HOLDINGS CORP.

By: _____

     Name:
     Title:

This is one of the Notes referred to in the within-mentioned Indenture:

THE BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., as Trustee

By:_____
     Authorized Signatory

A-2

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003697

Confidential—For Professional Eyes Only
Mike Kunkel

**[Form of Reverse of Note]**

This Note is one of a duly authorized series of Notes of the Issuer designated as the "10.000% Senior Secured Notes due 2020" (the "Notes"), originally issued in an aggregate principal amount of $500,000,000 on January 12, 2010 and, as a result of the further issuance of $[_____] aggregate principal amount of Notes on [_____], 20[__][6], now issued in an aggregate principal amount of $[_____], under the Indenture referred to below.

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

(1)     *INTEREST.*  Energy Future Holdings Corp., a Texas corporation (the "Issuer"), promises to pay interest on the principal amount of this Note at 10.000% per annum from January 12, 2010 until maturity and shall pay Additional Interest, if any, payable pursuant to the Registration Rights Agreement referred to below.  The Issuer will pay interest and Additional Interest, if any, semi-annually in arrears on January 15 and July 15 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "Interest Payment Date") without interest accruing on the amount then so payable from such day that is not a Business Day until such Business Day.  Interest on the Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from and including January 12, 2010.  The Issuer will pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at the interest rate on the Notes; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Interest, if any (without regard to any applicable grace periods) from time to time on demand at the interest rate on the Notes.  Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

(2)     *METHOD OF PAYMENT.*  The Issuer will pay interest on the Notes and Additional Interest, if any, to the Persons who are registered Holders of Notes at the close of business on the January 1 or July 1 (whether or not a Business Day), as the case may be, next preceding the Interest Payment Date, even if such Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest.  Payment of interest and Additional Interest, if any, may be made by check mailed to the Holders at their addresses set forth in the register of Holders; provided that payment by wire transfer of immediately available funds will be required with respect to principal, premium, if any, and interest and Additional Interest, if any, on, all Global Notes and all other Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent.  Such payment shall be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

(3)     *PAYING AGENT AND REGISTRAR.*  Initially, The Bank of New York Mellon Trust Company, N.A., the Trustee under the Indenture, will act as Paying Agent and Registrar.  The Issuer may change any Paying Agent or Registrar without notice to the Holders.  The Issuer or any of its Subsidiaries may act in any such capacity.

(4)     *INDENTURE.*  The Issuer issued the Notes under an Indenture, dated as of January 12, 2010 (the "Original Indenture"), as supplemented by[7] the Supplemental Indenture dated as of

---

[6]     Include reference to the Additional Notes being issued hereunder, as well as any previously issued Additional Notes.

[7]     Insert reference to any supplemental indentures and to any Additional Notes issued subsequent to January 12, 2010.

A-3

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003698
**PX 021**
**Page 215 of 222**

Confidential--For Professional Eyes Only
Mike Kunkel

[_____], 20[__] (together with the Original Indenture as it may be amended or supplemented from time to time in accordance with its terms, the "Indenture"), among the Issuer, the Guarantors named therein and the Trustee. The Issuer shall be entitled to issue Additional Notes pursuant to Sections 2.01, 4.09 and 4.12 of the Indenture. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"). The Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

(5)    *OPTIONAL REDEMPTION.*

(a)    Except as set forth below, the Issuer will not be entitled to redeem Notes at its option prior to January 15, 2015.

(b)    At any time prior to January 15, 2015, the Issuer may redeem all or a part of the Notes, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Notes or otherwise in accordance with procedures of DTC, at a redemption price equal to 100% of the principal amount of the Notes redeemed plus the Applicable Premium, plus accrued and unpaid interest, and Additional Interest, if any, to the date of redemption (the "Redemption Date"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(c)    From and after January 15, 2015, the Issuer may redeem the Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Notes or otherwise in accordance with the procedures of DTC, at the redemption prices (expressed as percentages of principal amount of the Notes to be redeemed) set forth below, plus accrued and unpaid interest and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on January 15 of each of the years indicated below:

| Year | Percentage |
|------|------------|
| 2015 | 105.000% |
| 2016 | 103.333% |
| 2017 | 101.667% |
| 2018 and thereafter | 100.000% |

(d)    Prior to January 15, 2013, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of all Notes at a redemption price equal to 110.000% of the aggregate principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the Redemption Date, subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of one or more Equity Offerings; provided that at least 50% of the sum of the original aggregate principal amount of Initial Notes and any Additional Notes issued under the Indenture after the Issue Date remains outstanding immediately after the occurrence of each such redemption; provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the related Equity Offering.

A-4

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003699

Confidential--For Professional Eyes Only
Mike Kunkel

(e)      If the Issuer redeems less than all of the outstanding Notes, the Trustee shall select the Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

(f)      Any redemption pursuant to this paragraph (5) shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

(6)      *MANDATORY REDEMPTION.*    The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

(7)      *NOTICE OF REDEMPTION.*    Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed more than 60 days prior to a Redemption Date if the notice is issued in connection with Article 8 or Article 12 of the Indenture) to each Holder whose Notes are to be redeemed at its registered address or otherwise in accordance with the procedures of DTC.  Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the Notes held by a Holder are to be redeemed.  On and after the Redemption Date interest ceases to accrue on Notes or portions thereof called for redemption.

(8)      *OFFERS TO REPURCHASE.*

(a)      If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to purchase all or any part (equal to $2,000 or an integral multiple of $1,000 in excess thereof) of each Holder's Notes at a purchase price equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest and Additional Interest, if any, to the date of purchase (the "Change of Control Payment"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date. The Change of Control Offer shall be made in accordance with Section 4.14 of the Indenture.

(b)      If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale (other than an Asset Sale of Collateral or other Oncor-related Assets), within 10 Business Days of each date that the aggregate amount of Excess Proceeds exceeds $200.0 million, the Issuer and/or any of its Restricted Subsidiaries shall make an offer to all Holders of the Notes, and if required or permitted by the terms of any Senior Indebtedness, to the holders of such Senior Indebtedness (an "Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such Senior Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture.  To the extent that the aggregate amount of Notes, and such Senior Indebtedness tendered pursuant to an Asset Sale Offer is less than the Excess Proceeds, the Issuer and/or any of its Restricted Subsidiaries may use any remaining Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture.  If the aggregate principal amount of Notes or such Senior Indebtedness surrendered by such holders thereof exceeds the amount of Excess Proceeds, the Notes and such Senior Indebtedness will be purchased on a pro rata basis based on the accreted value or principal amount of the Notes or such Senior Indebtedness tendered.

(c)      The Issuer and/or any of its Restricted Subsidiaries may, at its/their option, make an Asset Sale Offer using proceeds from any Asset Sale at any time after consummation of such Asset Sale (other than an Asset Sale of Collateral or other Oncor-related Assets); provided that such Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million.  Upon consummation of such Asset Sale Offer, any Net Proceeds not required to be used to purchase Notes shall not be deemed Excess Proceeds.

Confidential--For Professional Eyes Only
Mike Kunkel

Confidential--For Professional Eyes Only
Mike Kunkel

(d)    If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale of Collateral or other Oncor-related Assets, within 10 Business Days of each date that the aggregate amount of Collateral Excess Proceeds exceeds $200.0 million, the Issuer and/or any of its Restricted Subsidiaries shall make an offer to all Holders of the Notes and, if required or permitted by the terms of any Parity Lien Debt, to the holders of such Parity Lien Debt (a "Collateral Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such Parity Lien Debt that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Collateral Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture.  To the extent that the aggregate amount of Notes and such Parity Lien Debt tendered pursuant to a Collateral Asset Sale Offer is less than the Collateral Excess Proceeds, the Issuer and/or any of its Restricted Subsidiaries may use any remaining Collateral Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture and the terms of such Parity Lien Debt.  If the aggregate principal amount of Notes or the Parity Lien Debt surrendered by such holders thereof exceeds the amount of Collateral Excess Proceeds, the Notes and such Parity Lien Debt will be purchased on a pro rata basis based on the accreted value or principal amount of the Notes or such Parity Lien Debt tendered.

(e)    The Issuer and/or any of its Restricted Subsidiaries may, at its/their option, make a Collateral Asset Sale Offer using proceeds from any Asset Sale of Collateral or other Oncor-related Assets at any time after consummation of such Asset Sale; provided that such Collateral Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million.  Upon consummation of such Collateral Asset Sale Offer, any Net Proceeds not required to be used to purchase Notes shall not be deemed Collateral Excess Proceeds and the Issuer and its Restricted Subsidiaries may use any remaining Net Proceeds for general corporate purposes, subject to the other covenants contained in the Indenture.

(9)    DENOMINATIONS, TRANSFER, EXCHANGE.  The Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof.  The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture.  The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture.  The Issuer need not exchange or register the transfer of any Notes or portion of Notes selected for redemption, except for the unredeemed portion of any Notes being redeemed in part.  Also, the Issuer need not exchange or register the transfer of any Notes for a period of 15 days before a selection of Notes to be redeemed.

(10)    PERSONS DEEMED OWNERS.  The registered Holder of a Note may be treated as its owner for all purposes.

(11)    AMENDMENT, SUPPLEMENT AND WAIVER.  The Indenture, the Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

(12)    DEFAULTS AND REMEDIES.  The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture.  If any Event of Default occurs and is continuing, the Trustee or the Holders of at least 30% in aggregate principal amount of the then outstanding Notes may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Notes to be due and payable immediately.  Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Notes will become due and payable immediately without further action or notice.  Holders may not enforce the Indenture, the Notes or the Guarantees except as provided in the Indenture.  Subject to certain limitations, Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the Trustee in its

A-6

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003701
PX 021
Page 218 of 222

Confidential--For Professional Eyes Only
Mike Kunkel

exercise of any trust or power. The Trustee may withhold from Holders of the Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, interest or Additional Interest, if any) if it determines that withholding notice is in their interest. The Holders of a majority in aggregate principal amount of the then outstanding Notes by notice to the Trustee may on behalf of the Holders of all of the Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal, premium, if any, interest or Additional Interest, if any, on, any of the Notes held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

(13)    *AUTHENTICATION.*  This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

(14)    *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.*  In addition to the rights provided to Holders of Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the Registration Rights Agreement, dated as of [_____], 20[\_\_], among the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest, if any (as defined in the Registration Rights Agreement).

(15)    *GOVERNING LAW.*  THE INDENTURE, THE NOTES AND THE GUARANTEES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(16)    *CUSIP/ISIN NUMBERS.*  Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture, the Registration Rights Agreement and/or the Security Documents. Requests may be made to the Issuer at the following address:

> Energy Future Holdings Corp.
> Energy Plaza
> 1601 Bryan Street
> Dallas, Texas 75201-3411
> Facsimile No.: (214) 812-6032
> Attention: General Counsel
> And
> Facsimile No.: (214) 812-4097
> Attention: Treasurer

A-7

Confidential--For Professional Eyes Only
Mike Kunkel

EFH00003702

Confidential—For Professional Eyes Only
Mike Kunkel

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____
(Insert assignee's legal name)

_____
(Insert assignee's Soc. Sec. or tax I.D. no.)

_____

_____

_____
(Print or type assignee's name, address and zip code)

and irrevocably appoint _____
to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your Signature _____
(Sign exactly as your name appears on the
face of this Note)

Signature Guarantee*:_____

\* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

A-8

Confidential—For Professional Eyes Only
Mike Kunkel

Highly Confidential

Confidential—For Professional Eyes Only
Mike Kunkel

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Issuer pursuant to Section 4.10(d), 4.10(h) or 4.14 of the Indenture, check the appropriate box below:

☐ Section 4.10(d)        ☐ Section 4.10(h)        ☐ Section 4.14

If you want to elect to have only part of this Note purchased by the Issuer pursuant to Section 4.10(d), 4.10(h) or Section 4.14 of the Indenture, state the amount you elect to have purchased:

$ _____

Date: _____        Your Signature: _____
                                   (Sign exactly as your name appears on the face of this Note)

                                   Tax Identification No.: _____

Signature Guarantee*: _____

*        Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

A-9

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003704

Confidential—For Professional Eyes Only
Mike Kunkel

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE

The initial outstanding principal amount of this Global Note is $[_____].  The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following each decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|

A-10

Confidential—For Professional Eyes Only
Mike Kunkel

EFH00003705