**EXECUTION VERSION**

Energy Future Holdings Corp.
Energy Future Intermediate Holding Company LLC
EFIH Finance Inc.

Dealer Manager Agreement

New York, New York
July 16, 2010

Citigroup Global Markets Inc.
Goldman, Sachs & Co.
Banc of America Securities LLC
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated

c/o  Citigroup Global Markets Inc.
     390 Greenwich Street, 4th Floor
     New York, New York 10013

     Goldman, Sachs & Co.
     200 West Street
     New York, New York 10282-2198

Ladies and Gentlemen:

        Energy Future Holdings Corp., a Texas corporation ("EFH"), Energy Future
Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), and EFIH
Finance Inc. a Delaware corporation ("EFIH Finance"), plan, on the terms and subject to the
conditions described in the Offer Material (as defined below), to make offers (each such offer, as
it may be amended from time to time, an "Exchange Offer" and collectively the "Exchange
Offers") to exchange up to $2.18 billion aggregate principal amount of a new series of 10.000%
Senior Secured Notes due 2020 of EFIH and EFIH Finance (the "New EFIH Notes") to be issued
pursuant to the terms of an indenture (such indenture, including any supplemental indentures
thereto pursuant to which the New EFIH Notes are issued, the "New EFIH Indenture") to be
entered into among EFIH, EFIH Finance and The Bank of New York Mellon Trust Company,
N.A., as trustee (the "EFIH Trustee") and, for Existing Notes (as defined below) validly tendered
(and not validly withdrawn) at or prior to the Early Tender Date, an aggregate of $500 million in
cash, for the respective exchange consideration (expressed per $1,000 principal amount of such
Existing Notes validly tendered and not validly withdrawn) shown on Schedule B hereto.

        To the extent the aggregate principal amount of New EFIH Notes issued in
exchange for Existing Notes that are validly tendered and not validly withdrawn pursuant to the
Exchange Offers exceeds the Maximum Exchange Amount will be subject to proration as

NYDOCS02/907932.7

MOLDOVAN
PLAINTIFF'S
EXHIBIT
3
11/20/14    KRB
EFIHMW00038410

described in the Preliminary Prospectus, the Disclosure Package and the Prospectus. The existing notes listed on Schedule B to be exchanged in the Exchange Offers are hereinafter referred to collectively as the "Existing Notes."

In connection with the Exchange Offers, EFH is also soliciting (the "Solicitations") consents (the "Consents") to the adoption of proposed amendments (the "Proposed Amendments") to the indenture governing the Existing Notes (the "Existing Indenture"), which Proposed Amendments will remove certain restrictive covenants and events of default, and amend certain other provisions in such Existing Indenture. The Dealer Managers (as defined below) will also act as the exclusive solicitation agents in connection with the Solicitations, on the terms and subject to the conditions set forth herein. In connection with the Solicitations, upon receipt of the requisite Consents under the Existing Indenture immediately following the Consent Date (as defined in the Preliminary Prospectus, the Disclosure Package and the Prospectus), it is expected that EFH, EFIH, EFCH, as applicable, and the trustee under the Existing Indenture will execute a supplemental indenture (a "Supplemental Indenture") to the Existing Indenture to give effect to the Proposed Amendments.

The Exchange Offers and, to the extent applicable, the Solicitations, shall be conducted on the terms and subject to the conditions set forth in (a) the Registration Statement (as defined below), (b) the Preliminary Prospectus and Prospectus, (c) the related consent and letter of transmittal dated the Commencement Date to be used by holders of Existing Notes exchanging in the Exchange Offers (the "Letter of Transmittal"), as supplemented or amended from time to time, (d) any press releases or advertisements, to the extent applicable, expressly relating to the Exchange Offers (e) any Rule 165 Material, and (f) any other written material filed with the Commission or furnished by or with the written consent of EFH, EFIH or EFIH Finance to the holders of the Existing Notes in connection with the Exchange Offers and the Solicitations (the items in clauses (a) through (f) in each case, collectively, the "Offer Material"). The date on which the New EFIH Notes are issued in the Exchange Offers and the Existing Notes are exchanged in the Exchange Offers shall be hereinafter referred to as the "Exchange Date." This agreement among EFH, EFIH and EFIH Finance and the Dealer Managers shall be hereinafter referred to as the "Agreement."

EFIH's obligations under the New EFIH Notes will have the benefit of a security interest in the membership interests and other investments that EFIH owns in Oncor Electric Delivery Holdings Company LLC as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus (the "Collateral") and documented by a Pledge Agreement (the "Pledge Agreement") dated as of November 16, 2009, a Collateral Trust Joinder (the "Joinder") executed by the Trustee and acknowledged by The Bank of New York Mellon Trust Company, N.A., as collateral trustee (in such capacity, the "Collateral Trustee"), dated as of the Exchange Date, the Collateral Trust Agreement dated November 16, 2009, among EFIH, The Bank of New York Mellon Trust Company, N.A. as trustee under indentures governing the Old Secured Notes (as defined below) and the Collateral Trustee (the "Collateral Trust Agreement") and the Designation by EFIH of the New EFIH Notes as "Additional Secured Debt" under the Collateral Trust Agreement (the "Designation") and other documents or instruments evidencing or creating or purporting to create a security interest in favor of the Collateral Trustee, for the benefit of the holders of Parity Lien Obligations (as defined in the Collateral Trust Agreement) (collectively, the "Security Documents"). The Parity Lien Obligations include the 9.75% Senior Secured Notes

2

NYDOCS02/907932.7

Highly Confidential                                                                 EFIHMW00038411

due 2019 of EFH (the "Old EFH Notes"), the 9.75% Senior Secured Notes due 2019 of EFIH and EFIH Finance Inc. (the "EFIH Notes") and the 10.000% Senior Secured Notes due 2020 of EFH (the "2020 EFH Notes", and together with the Old EFH Notes and the EFIH Notes, the "Old Secured Notes"). This Agreement, the New EFIH Notes, the New EFIH Indenture, the Supplemental Indenture and the Security Documents are hereinafter referred to collectively as the "Transaction Documents".

The Offer Material has been prepared and approved by EFH, EFIH and EFIH Finance and you are authorized to use the Preliminary Prospectus, the Prospectus and the Letter of Transmittal in connection with the Exchange Offers and the Solicitations delivered on or prior to the date hereof in the manner contemplated by the applicable Offer Material along with such other offering materials and information that EFH, EFIH and EFIH Finance may approve for use subsequent to the date hereof in connection with the Exchange Offers and the Solicitations (collectively, the "Additional Material").

EFH, EFIH and EFIH Finance shall cause to be mailed to each holder of record of the Existing Notes, as soon as practicable after the Commencement Date, copies of the most recent Preliminary Prospectus, the Letter of Transmittal and any other applicable Offer Material (other than any press releases or newspaper advertisements relating to the Exchange Offers and the Solicitations) and any Additional Material (other than any press releases or newspaper advertisements relating to the Exchange Offers and the Solicitations) as in effect at such time. Thereafter, to the extent practicable until the expiration of the Exchange Offers and the Solicitations, each of EFH, EFIH and EFIH Finance shall use its reasonable best efforts to cause copies of such material to be made available upon request to each person who is or becomes a beneficial holder of any Existing Notes.

The Dealer Managers hereby agree that, without the prior written consent of EFH, EFIH and EFIH Finance (which consent EFH, EFIH and EFIH Finance agrees will not be unreasonably withheld), the Dealer Managers will not hereafter publicly disseminate any written materials to holders of Existing Notes for or in connection with the solicitation of tenders of Existing Notes pursuant to the Exchange Offers or the Solicitations, other than the Offer Material and any Additional Material, or make any representations to Holders of Existing Notes in connection with the solicitation of tenders of Existing Notes pursuant to the Exchange Offers or the Solicitations, other than as contained in the Offer Material and any Additional Material.

Any references herein to the terms "amend," "amendment" or "supplement" with respect to any of the Offer Material shall be deemed to refer to and include any information contained in an amendment or supplement to such Offer Material, including any press release that refers to a Preliminary Prospectus or the Prospectus, prepared subsequent to the Commencement Date by EFH, EFIH and EFIH Finance, and to which Citigroup Global Markets Inc. and Goldman, Sachs & Co. have been provided an opportunity to review in accordance with the provisions of Section 4(b) hereunder.

    1.   Appointment as Dealer Manager.

    (a)    EFH, EFIH and EFIH Finance agree that you will act as the exclusive dealer managers and exclusive solicitation agents for the Exchange Offers and the

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038412

Solicitations in the United States (the "Dealer Managers") in accordance with your customary practices, this Agreement and the terms of the Offer Material and any Additional Material, including without limitation by soliciting tenders in the United States pursuant to the Exchange Offers, the solicitation of Consents in the United States pursuant to the Solicitations and assisting in the distribution of the Offer Material in the United States.

(b)    You agree that all actions taken by you as Dealer Managers have complied and will comply in all material respects with all applicable laws, regulations and rules in the United States, including, without limitation, the applicable rules and regulations of the registered national securities exchanges of which you are a member and of FINRA.

(c)    Each Dealer Manager, in its sole discretion, may continue to own or dispose of, in any manner it may elect, any Existing Notes it may beneficially own at the date hereof or hereafter acquire, in any such case, subject to applicable law. The Dealer Managers have no obligation to EFH, EFIH and EFIH Finance, pursuant to this Agreement or otherwise, to tender or refrain from tendering Existing Notes beneficially owned by them in any Exchange Offer (or to deliver Consents in any related Solicitation). The Dealer Managers acknowledge and agree that if any Exchange Offer is not consummated for any reason, EFH, EFIH and EFIH Finance shall have no obligation, pursuant to this Agreement or otherwise, to acquire any Existing Notes from the Dealer Managers or otherwise to hold the Dealer Managers harmless with respect to any losses it may incur in connection with the resale to any third parties of any Existing Notes.

(d)    Each of EFH, EFIH and EFIH Finance agrees that it will not (i) file, use or publish any material in connection with the Exchange Offers, without the prior written consent of Citigroup Global Markets Inc. and/or Goldman, Sachs & Co. (such consent not to be unreasonably withheld), and (ii) other than as used in the Offer Material, use the name of any Dealer Manager or refer to any Dealer Manager or their relationship with EFH, EFIH or EFIH Finance without the prior written consent of such Dealer Manager (such consent not to be unreasonably withheld), as the case may be, to the form of such use or reference. There shall be no fee for any such permitted use or reference other than as set forth herein.

2.    Compensation. The Issuers shall pay to you in respect of your services as Dealer Managers the fee set forth in (and in accordance with) the attached Schedule A (the "Fee"). In the event that the Exchange Offers and the Solicitations are not consummated, the Issuers shall not owe the Dealer Managers any Fee. The Issuers shall also reimburse you for your reasonable out-of-pocket expenses, including the reasonable fees, costs and out-of-pocket expenses of your counsel for their representation of you in connection therewith, incurred by you in connection with preparing for and performing your services as Dealer Managers, whether or not the Exchange Offers and Solicitations are consummated or otherwise completed as contemplated, in an amount not to exceed US$4.0 million. All payments to be made by the Issuers to you pursuant to this Section 2 shall be made promptly after the completion or termination of the Exchange Offers and the Solicitations.

4

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038413

3.  <u>Representations and Warranties</u>. EFH, EFIH and EFIH Finance, jointly and severally, represent and warrant to you as set forth below in this Section 3:

(a)    EFH, EFIH and EFIH Finance have prepared and filed with the Securities and Exchange Commission (the "<u>Commission</u>") a registration statement on Form S-4, including a related Preliminary Prospectus, for registration under the Securities Act of the Exchange Offers (including any amendment thereto, the "<u>Registration Statement</u>"). The Registration Statement will have been declared effective by the Commission prior to the Expiration Date.  As filed, the Prospectus will contain all of the information required by the Securities Act of 1933, as amended (the "<u>Securities Act</u>"), and, except to the extent Citigroup Global Markets Inc. and Goldman, Sachs & Co. shall consent in accordance with Section 4(b) of this Agreement, will be in all substantive respects in the form of the Preliminary Prospectus initially included in the Registration Statement as of the Commencement Date and will contain only such specific additional information and other changes (beyond that contained in such Preliminary Prospectus) as EFH, EFIH and EFIH Finance has advised  Citigroup Global Markets Inc. and Goldman, Sachs & Co. will be included or made therein in accordance with Section 4(b) of this Agreement.

(b)    On (x) the Commencement Date, the Registration Statement complied, and on the Effective Date, the Registration Statement will comply, and (y) the date upon which the Prospectus is first filed in accordance with Rule 424(a) or Rule 424(b), as applicable, on the Expiration Date and on the Exchange Date, the Prospectus (and any supplements thereto) will comply, in all material respects with the applicable requirements of the Securities Act, the Securities Exchange Act of 1934, as amended (the "<u>Exchange Act</u>"), and the Trust Indenture Act of 1939, as amended (the "<u>Trust Indenture Act</u>"), and the respective rules and regulations promulgated thereunder; on the Commencement Date, the Effective Date and the Exchange Date, the Registration Statement did not and will not contain any untrue statement of any material fact required to be stated therein or necessary in order to make the statements therein not misleading; and on the date of any filing pursuant to Rule 424(a) or Rule 424(b), as applicable, as of its date (and on the date of any supplement thereto), on the Expiration Date and on the Exchange Date, the Prospectus (together with any supplement thereto) will not include any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; <u>provided, however</u>, that this representation and warranty shall not apply to (i) those parts of the Registration Statement which shall constitute the Statements of Eligibility and Qualification (Form T-1) under the Trust Indenture Act of the EFH Trustee and the EFIH Trustee or (ii) any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

(c)    No order preventing or suspending the use of any Preliminary Prospectus has been issued by the Commission, and each Preliminary Prospectus included in the Offer Material, at the time of filing thereof, complied or will comply in all material respects with the Securities Act, and no Preliminary Prospectus, at the time of filing thereof, included or will include any untrue statement of a material fact or omitted or will omit to state a material fact necessary in order to make the statements therein, in the

5

NYDOCS02/907932.7

Highly Confidential    EFIHMW00038414

light of the circumstances under which they were made, not misleading; provided, however, that this representation and warranty shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

(d)     On the Expiration Date and on the Exchange Date, the Disclosure Package, when taken together as a whole, will not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, however, that this representation and warranty shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

(e)     Immediately prior to the Early Tender Date, the Preliminary Prospectus will not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, however, that this representation and warranty shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

(f)     The Rule 165 Material when filed with the Commission complied or will comply in all material respects with the applicable requirements of the Securities Act; and no Rule 165 Material, at the time of first use, when taken together with the Preliminary Prospectus as then amended or supplemented, contained or will contain any untrue statement of a material fact or omitted or will omit to state a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, however, that this representation and warranty shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

(g)     At the Commencement Date, the Early Tender Date, the Expiration Date and the Exchange Date, the Offer Material at such date (i) complied and will comply in all material respects with all applicable requirements of the laws of those jurisdictions in which solicitations of tenders and consents are or will be made in the Exchange Offers pursuant to this Agreement and (ii) did not and will not contain an untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, however, that this representation and warranty shall not apply to (i) those parts of the Registration Statement which shall constitute the Statements of Eligibility and Qualification (Form T-1) under the Trust Indenture Act of the EFH Trustee and the EFIH Trustee, or (ii) any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

6

Highly Confidential     EFIHMW00038415

**PX 026**
**Page 6 of 70**

(h)     None of EFH, EFIH or EFIH Finance is, and after giving effect to the offering and issuance of the New EFIH Notes and, if applicable, the cancellation of the Existing Notes as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus, none of them will be, an "investment company" as such term is defined in the United States Investment Company Act of 1940, as amended.

(i)     EFH and EFIH are subject to and in compliance in all material respects with the reporting requirements of Section 13 or Section 15(d) of the Exchange Act.

(j)     EFH, EFIH and EFIH Finance have not paid or agreed to pay to any person any compensation for (i) soliciting another to purchase any of its securities or (ii) soliciting tenders or Consents by holders of Existing Notes pursuant to the Exchange Offers and the Solicitations (except as contemplated in this Agreement or as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus).

(k)     Prior to the date hereof, none of EFH, EFIH or EFIH Finance nor any of their respective Affiliates that are controlled by EFH, EFIH or EFIH Finance have taken any action, directly or indirectly, which is designed to or which has constituted or which might have been expected to cause or result, under the Exchange Act or otherwise, in stabilization or manipulation of the price of any security of EFH, EFIH or EFIH Finance in connection with the Exchange Offers.

(l)     Except as set forth in the Letter of Transmittal, there are no stamp or other issuance or transfer taxes or duties or other similar fees or charges required to be paid in connection with the execution and delivery of this Agreement and the other Transaction Documents, the issuance or sale by EFIH and EFIH Finance of the New EFIH Notes, the solicitation or acceptance of consents or tenders with respect to the Existing Notes or the entering into of the Supplemental Indenture.

(m)     Each of EFH, EFIH, EFIH Finance and EFCH have been duly incorporated or formed and is validly existing as a corporation or limited liability company, as applicable, in good standing under the laws of their respective jurisdictions of incorporation or organization, with power and authority (corporate or limited liability company, as applicable) to own, lease and/or operate its properties and conduct its business as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus, and has been duly registered or qualified as a foreign corporation or limited liability company, as the case may be, for the transaction of business and is in good standing under the laws of each other jurisdiction in which it owns or leases properties or conducts any business so as to require such qualification, except where the failure to so qualify or to be in good standing could not reasonably be expected to result in a material adverse effect upon the business, properties, financial condition, or earnings of each of EFH, EFIH, EFIH Finance and EFCH and their respective subsidiaries, taken as a whole (a "Material Adverse Effect"); and each subsidiary of EFH, EFIH, EFIH Finance and EFCH, respectively, has been duly incorporated or formed and is validly existing as a corporation, limited partnership or limited liability company, as applicable, in good standing under the laws of its jurisdiction of incorporation, formation or organization.

7

NYDOCS02/907932.7

Highly Confidential                                                                EFIHMW00038416

**PX 026**
**Page 7 of 70**

(n)      Each of EFH and EFIH has an authorized capitalization as set forth in the Preliminary Prospectus, the Disclosure Package and the Prospectus, and all of the issued shares of capital stock or membership interests, as the case may be, of EFH and EFIH have been duly and validly authorized and issued and are fully paid and non-assessable; and all of the issued shares of capital stock, membership interests or partnership interests, as the case may be, of each subsidiary of EFH and EFIH, respectively, have been duly and validly authorized and issued, are fully paid and non-assessable, and (except for Oncor Electric Delivery Company LLC, Comanche Peak Nuclear Power Company LLC and LSGT SACROC, Inc.) are owned directly or indirectly by EFH and EFIH, respectively, free and clear of all liens and preemptive or similar rights, except for (i) liens created pursuant to the TCEH Senior Secured Facilities (as defined in the Preliminary Prospectus, the Disclosure Package and the Prospectus), (ii) liens granted under the Security Documents and (iii) preemptive or similar rights granted under the Investor Rights Agreement (as defined in the Preliminary Prospectus, the Disclosure Package and the Prospectus).

(o)      The statements set forth in the Preliminary Prospectus, the Disclosure Package and the Prospectus under the heading "Material U.S. Federal Income Tax Considerations," insofar as such statements constitute a summary of the legal matters referred to therein, fairly present and summarize, in all material respects, the matters referred to therein; and the statements under the headings "Description of the EFIH Notes" and "Proposed Amendments," insofar as they purport to constitute summaries of the terms of the New EFIH Notes or the Supplemental Indenture, as the case may be, and assuming that all Consents are obtained as contemplated by the Preliminary Prospectus, the Disclosure Package and the Prospectus, are accurate in all material respects.

(p)      Other than as set forth in the Preliminary Prospectus, the Disclosure Package and the Prospectus, there are no legal or governmental proceedings pending to which EFH, EFIH, EFIH Finance and EFCH or any of their respective subsidiaries are a party or of which any property of EFH, EFIH, EFIH Finance and EFCH or any of their respective subsidiaries is the subject that, if determined adversely to EFH, EFIH, EFIH Finance and EFCH or any of their respective subsidiaries, (i) would individually or in the aggregate reasonably be expected to result in a Material Adverse Effect or (ii) would reasonably be expected to result in a material adverse effect on the performance by EFH, EFIH, EFIH Finance and EFCH of the Transaction Documents, the issuance of the New EFIH Notes or the consummation of any of the transactions contemplated hereby, thereby or described in the Preliminary Prospectus, the Disclosure Package and the Prospectus, and to the knowledge of each of EFH, EFIH, EFIH Finance and EFCH, no such proceedings are threatened.

(q)      EFH, EFIH and EFIH Finance have duly authorized, executed and delivered this Agreement and, assuming due authorization, execution and delivery of this Agreement by the Dealer Managers, this Agreement will constitute a valid and legally binding instrument of EFH, EFIH and EFIH Finance, enforceable against EFH, EFIH and EFIH Finance in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to

8

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038417

or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law).

(r)    At the Exchange Date, the New EFIH Indenture will have been duly authorized, and, when executed and delivered by EFIH and EFIH Finance and, assuming due authorization, execution and delivery thereof by the EFIH Trustee, the New EFIH Indenture will constitute a valid and legally binding instrument of EFIH and EFIH Finance, enforceable against EFIH and EFIH Finance in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); at the Effective Date and at the Exchange Date, the New EFIH Indenture will be duly qualified under, and did or will comply in all material respects with the applicable requirements of the Trust Indenture Act and the rules and regulations promulgated thereunder; at the Exchange Date, the New EFIH Notes will have been duly authorized by EFIH and EFIH Finance and, when executed and authenticated by the EFIH Trustee in accordance with the provisions of the New EFIH Indenture and delivered to holders of the Existing Notes who tender Existing Notes in accordance with the terms of the Exchange Offers, will have been duly executed, authenticated, issued and delivered by EFIH and EFIH Finance and will constitute valid and legally binding obligations of EFIH and EFIH Finance, entitled to the benefits provided by the New EFIH Indenture, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); and, at the Exchange Date, if delivered to you prior to the Exchange Date, the New EFIH Notes and the New EFIH Indenture will be in substantially the form previously delivered to you.

(s)    At the Exchange Date, the Security Documents will have been duly authorized, executed and delivered by EFIH (to the extent it is a party thereto) and, assuming due authorization, execution and delivery thereof by the other parties thereto, will constitute valid and legally binding instruments of EFIH (to the extent it is a party thereto), enforceable against EFIH in accordance with their terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); and, the Pledge Agreement and the Collateral Trust Agreement will conform to the descriptions in the Preliminary Prospectus, the Disclosure Package and the Prospectus in all material respects.

(t)    The Pledge Agreement, after giving effect to the Joinder and the Designation, is effective to create a valid security interest in the Collateral in favor of the Collateral Trustee for the benefit of the holders of Parity Lien Obligations (including the New EFIH Notes); and the Collateral Trust Agreement, upon delivery of the Designation and execution of the Joinder thereto by the Collateral Trustee and the Trustee, will provide that the Collateral Trustee holds the Collateral for the benefit of the holders of Secured Debt Obligations (as defined in the Collateral Trust Agreement) (including the New EFIH Notes) subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors'

9

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038418

rights and to general equity principles (whether considered in a proceeding in equity or at law).

(u)     At the Exchange Date, EFIH will own the Collateral covered by the Security Documents, free and clear of any security interest, mortgage, pledge, lien, encumbrance or claim ("Liens"), except for (i) Liens granted under the Security Documents; (ii) pre-emptive or similar rights granted under the Investor Rights Agreement (as defined in the Preliminary Prospectus, the Disclosure Package and the Prospectus); and (iii) the PUCT's right to approve any change in majority ownership, controlling ownership or operational control of Oncor Electric Delivery Company LLC as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus.

(v)     At the Exchange Date, the security interest of the Collateral Trustee for the benefit of the holders of Parity Lien Obligations (including the New EFIH Notes) in the Collateral will be perfected by the prior filing of the financing statement in the appropriate office on November 16, 2009.

(w)     At the Exchange Date, the Supplemental Indenture and the Existing Indenture as supplemented by the Supplemental Indenture will have been duly authorized by EFH, EFIH and EFCH, and, when executed and delivered by EFH, EFIH and EFCH, and, assuming due authorization, execution and delivery thereof by the trustee thereunder, the Supplemental Indenture will constitute a valid and legally binding instrument of EFH, EFIH and EFCH, as applicable, enforceable against EFH, EFIH and EFCH, as applicable, in accordance with its respective terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); and, at the Exchange Date, if delivered to you prior to the Exchange Date, the Supplemental Indenture will be in substantially the form previously delivered to you.

(x)     Except as set forth or contemplated in the Preliminary Prospectus, the Disclosure Package and the Prospectus, the compliance by each of EFH, EFIH and EFIH Finance with all of the provisions of the Transaction Documents to which they are a party and the consummation of the transactions herein and therein contemplated will not conflict with or result in a breach or violation of the terms or provisions of, or constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which any of EFH, EFIH, EFIH Finance or EFCH, or any subsidiary of EFH, EFIH, EFIH Finance or EFCH is a party or by which any of EFH, EFIH, EFIH Finance or EFCH or any subsidiary of EFH, EFIH, EFIH Finance or EFCH is bound or to which any of the property or assets of EFH, EFIH, EFIH Finance or EFCH or any subsidiary of EFH, EFIH, EFIH Finance or EFCH is subject, except for such conflicts, breaches, violations or defaults that could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect; nor will such action result in any violation of (i) the provisions of the Certificate of Incorporation or By-laws or other organizational documents of EFH, EFIH, EFIH Finance or EFCH or any subsidiary of EFH, EFIH, EFIH Finance or EFCH; or (ii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over any

10

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038419

of EFH, EFIH, EFIH Finance or EFCH or any subsidiary of any of EFH, EFIH, EFIH Finance or EFCH or any of their respective properties, except in the case of (ii) where such violations could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect; and no consent, approval, authorization, order, registration or qualification of or with any such court or governmental agency or body (each, a "Governmental Consent") is required in connection with the conduct and consummation of the Exchange Offers or Solicitations or the consummation by EFH, EFIH and EFIH Finance of the transactions contemplated in this Agreement and the other Transaction Documents (to which they are a party), except for Governmental Consents as may have been obtained or may be required in connection with the registration of the New EFIH Notes with the Commission pursuant to the Securities Act, and for such Governmental Consents as may be required under state securities or Blue Sky laws in connection with the issuance of the New EFIH Notes in the manner contemplated herein and in the Preliminary Prospectus, the Disclosure Package and the Prospectus or the failure to obtain which would not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect.

(y)     The audited consolidated financial statements included in the Registration Statement, any Preliminary Prospectus, the Disclosure Package and the Prospectus, together with the related notes, present fairly, in all material respects, the consolidated financial position of EFH, EFIH and Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") and their respective subsidiaries as of the dates indicated and the consolidated results of operations and cash flows of EFH, EFIH and Oncor Holdings and their respective subsidiaries for the periods specified and have been prepared in all material respects in conformity with United States generally accepted accounting principles applied on a consistent basis during the periods presented (except as otherwise noted therein) and comply as to form in all material respects with the applicable accounting requirements of the Securities Act. The other financial and statistical data set forth in the Preliminary Prospectus, the Disclosure Package and the Prospectus under the captions "Summary — EFH Corp. and Its Subsidiaries Summary Historical Consolidated Financial Data", "Summary — EFIH and Its Subsidiaries Summary Historical Consolidated Financial Data", "Selected Historical Consolidated Financial Data for EFH Corp. and Its Subsidiaries" and "Selected Historical Consolidated Financial Data for EFIH and Its Subsidiaries", are accurately presented in all material respects and where applicable, have been prepared on a basis consistent with the financial statements and books and records of EFH and EFIH, respectively.

(z)     Deloitte & Touche LLP, which has audited certain financial statements of each of (i) EFH and its subsidiaries, (ii) EFIH and its subsidiaries and (iii) Oncor Holdings and its subsidiaries, is an independent registered public accounting firm as required by the Securities Act and the rules and regulations of the Commission thereunder.

(aa)     EFH, EFIH, EFIH Finance and EFCH and their respective subsidiaries have good and marketable title in fee simple to all real property and good and marketable title to all personal property described in the Preliminary Prospectus, the Disclosure Package and the Prospectus as owned by them, in each case free and clear of

11

NYDOCS02/907932.7

Highly Confidential

all liens, encumbrances and defects except (i) such as are described in the Preliminary Prospectus, the Disclosure Package and the Prospectus, (ii) liens granted on, or in connection with the sale of, Transition Bonds or Transition Property (each as defined in the Public Utility Regulatory Act ("PURA") contained in the Texas Utilities Code) or in connection with the issuance of, or to secure the payment of, transition bonds issued pursuant to PURA or pursuant to a financing order issued by the Texas Public Utility Commission of Texas ("PUCT") or (iii) such as do not materially affect the value of such property and do not materially interfere with the use made and proposed to be made of such property by EFH, EFIH, EFIH Finance and EFCH and their subsidiaries; except as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus, any real property and buildings held under lease by EFH, EFIH, EFIH Finance and EFCH and their respective subsidiaries are held by them under valid, subsisting and enforceable leases, assuming due authorization, execution and delivery by the other parties to such leases, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding at equity or at law), with such exceptions as are not material and do not materially interfere with the use made and proposed to be made of such property and buildings by EFH, EFIH, EFIH Finance and EFCH and their respective subsidiaries. Consistent with the final order in PUCT Docket No. 34077, no assets owned by Oncor Electric Delivery Company LLC have been pledged to support any debt of EFH, EFIH, EFIH Finance and EFCH .

(bb)     EFH and its subsidiaries, including EFIH, on a consolidated basis, maintains a system of internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that complies with the requirements of the Exchange Act and has been designed by the principal executive officer and principal financial officer of EFH, or under their supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with United States generally accepted accounting principles. The internal control over financial reporting of EFH is effective. EFH is not aware of any material weaknesses in its internal controls over financial reporting.

(cc)     Since the date of the latest audited financial statements included in the Preliminary Prospectus, the Disclosure Package and the Prospectus, there has been no change in the internal control over financial reporting of EFH and its subsidiaries, including EFIH, that has materially affected, or is reasonably likely to materially affect, the internal control over financial reporting of EFH and its subsidiaries, including EFIH.

(dd)     EFH and its subsidiaries, including EFIH, on a consolidated basis, maintains disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Exchange Act) that comply with the requirements of the Exchange Act; such disclosure controls and procedures have been designed to ensure that material information relating to EFH and its subsidiaries, including EFIH, is made known to the principal executive officer and principal financial officer of EFH, by others within those entities; and such disclosure controls and procedures are effective.

12

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038421

(ee)    None of EFH, EFIH, EFIH Finance and EFCH or any of their respective subsidiaries is (i) in violation of its Certificate of Incorporation or By-laws or other organizational documents or (ii) in default in the performance or observance of any material obligation, covenant or condition contained in any indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument to which it is a party or by which it or any of its properties may be bound, except in connection with clause (ii) as could not reasonably be expected to result in a Material Adverse Effect.

(ff)    EFH, EFIH, EFIH Finance and EFCH and each of their respective subsidiaries maintains insurance covering its properties, operations, personnel and businesses as EFH, EFIH, EFIH Finance and EFCH or each respective subsidiary deems adequate and customary for companies engaged in similar businesses and all such policies are in full force and effect in all material respects, except where a failure to maintain such insurance policies would not, individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.

(gg)    EFH, EFIH, EFIH Finance and EFCH and each of their respective subsidiaries own, possess or can acquire on reasonable terms, adequate rights to use all trademarks, trade names and other rights to inventions, know-how, patents, copyrights, confidential information and other intellectual property (collectively, "intellectual property rights") described in the Preliminary Prospectus, the Disclosure Package and the Prospectus as being owned by them or necessary for the conduct of their respective businesses (except where a failure to own or possess such intellectual property rights could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect), and have not received any notice of infringement of or conflict with asserted rights of others with respect to any intellectual property rights, the result of which, individually or in the aggregate, if the subject of an unfavorable decision, ruling or finding, would reasonably result in a Material Adverse Effect.

(hh)    (i) Except for such matters that could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect, none of EFH, EFIH, EFIH Finance and EFCH nor any of their respective subsidiaries (A) is in violation of any statute, any rule, regulation, decision or order of any governmental agency or body or any court, domestic or foreign, relating to the use, disposal or release into the environment of regulated, hazardous or toxic substances or relating to the protection or restoration of the environment or human exposure to hazardous or toxic substances (collectively, the "environmental laws"), (B) owns or operates any real property contaminated with any regulated, hazardous or toxic substance that is subject to any remedial obligation or other liabilities pursuant to any environmental laws, (C) is liable for any off-site disposal or contamination pursuant to any environmental laws, or (D) is subject to any claim arising pursuant to any environmental laws; and (ii) except for the request for information used by the Environmental Protection Agency under Section 114 of the Clear Air Act in connection with the Big Brown, Monticello and Martin Lake facilities described in the Preliminary Prospectus, the Disclosure Package and the Prospectus, none of EFH, EFIH, EFIH Finance and EFCH are aware of any pending investigation pursuant to any environmental laws which would reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect.

13

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038422

(ii)    None of EFH, EFIH, EFIH Finance and EFCH nor any of their respective subsidiaries has sustained since the date of the latest audited financial statements included in the Preliminary Prospectus, the Disclosure Package and the Prospectus any material loss or interference with their respective business from fire, explosion, flood or other calamity, whether or not covered by insurance, or from any labor dispute or court or governmental action, order or decree, otherwise than as set forth or contemplated in the Preliminary Prospectus, the Disclosure Package and the Prospectus; and, since the respective dates as of which information is given in the Preliminary Prospectus, the Disclosure Package and the Prospectus, there has not been any change in the capital stock (other than repurchases of capital stock from employees in the ordinary course of business) or long-term debt (other than borrowings under revolving credit facilities in the ordinary course of business, payment of debt on scheduled maturities, and payment of in-kind interest pursuant to the terms of debt agreements) of any of EFH, EFIH, EFIH Finance and EFCH nor any of their respective subsidiaries (other than Oncor Electric Delivery Holdings Company LLC and its subsidiaries), or any material adverse change, or any development involving a prospective material adverse change, in or affecting the general affairs, management, financial position, stockholders' equity or results of operations of any of EFH, EFIH, EFIH Finance and EFCH nor any of their respective subsidiaries, in each case otherwise than as set forth or contemplated in the Preliminary Prospectus, the Disclosure Package and the Prospectus.

(jj)    EFIH, at the Commencement Date and immediately after the Exchange Date, will be Solvent. As used herein, the term "Solvent" means, with respect to EFIH on a particular date, that on such date (i) the fair market value of the assets of EFIH is greater than the total amount of liabilities (including contingent liabilities) of EFIH, (ii) the present fair salable value of the assets of EFIH is greater than the amount that will be required to pay the probable liabilities of EFIH on its debts as they become absolute and matured, (iii) EFIH is able to realize upon its assets and pay its debts and other liabilities, including contingent obligations, as they mature and (iv) EFIH does not have unreasonably small capital.

(kk)    Any certificate signed by any officer of EFH, EFIH or EFIH Finance and delivered to the Dealer Managers or counsel for the Dealer Managers in connection with the Exchange Offers shall be deemed a representation and warranty by EFH, EFIH or EFIH Finance, as applicable, as to matters covered thereby to the Dealer Managers.

4.    Agreements. EFH, EFIH and EFIH Finance, jointly and severally, agree with the Dealer Managers that:

(a)    EFH, EFIH and EFIH Finance will prepare the Offer Material and will file all Offer Material with the Commission to the extent required by the Securities Act and the Exchange Act, as applicable, including all Rule 165 Material, and a final prospectus relating to the Registration Statement in accordance with Rule 424(b). EFH, EFIH and EFIH Finance will furnish to the Dealer Managers and to counsel for the Dealer Managers, without charge, during the period beginning on the Commencement Date and continuing to and including the Exchange Date, (i) signed photostatic copies of the Registration Statement (and any amendment thereto), in each case including all

14

NYDOCS02:907932.7

Highly Confidential

EFIHMW00038423

exhibits and consents filed therewith, and (ii) copies of the Offer Material and any Additional Material and any amendments and supplements thereto in such quantities as the Dealer Managers may reasonably request.

(b)      Each of EFH, EFIH and EFIH Finance agrees that it will not make any written communications (other than non-public communications among participants (as such term is defined in Rule 165 of the Securities Act)) in connection with or related to the Exchange Offers that could constitute a "prospectus" for the purposes of Section 5(b)(1) of the Securities Act except any Preliminary Prospectus, the Prospectus and any Rule 165 Material and to provide you with a copy of all Rule 165 Material promptly after filing of the same with the Commission. EFH, EFIH and EFIH Finance will not amend or supplement the Offer Material or file any Offer Material with the Commission, without the prior written consent of Citigroup Global Markets Inc. and Goldman, Sachs & Co. (which consent shall not be unreasonably withheld), unless required by applicable law.  Prior to the earlier of the Exchange Date or the date of termination of the Exchange Offers and the Solicitations, EFH will not file any document under the Exchange Act unless, within a reasonable time prior to such proposed filing, EFH has furnished to Citigroup Global Markets Inc. and Goldman, Sachs & Co. a copy of such document for review and has provided  Citigroup Global Markets Inc. and Goldman, Sachs & Co. with a reasonable opportunity to review such materials and provide comments to EFH.

(c)      EFH, EFIH and EFIH Finance will comply with the Securities Act and the Exchange Act, as applicable, in conducting the Exchange Offers and the Solicitations and the issuance of the New EFIH Notes pursuant thereto as contemplated in the Registration Statement, any Preliminary Prospectus, the Disclosure Package and the Prospectus.

(d)      EFH and EFIH will make generally available to each holder of New EFIH Notes, respectively, as soon as practicable, but in no event later than 90 days after the period covered thereby, an earnings statement or earnings statements (which need not be audited) covering a twelve-month period beginning with the first calendar quarter after the date of this Agreement which shall satisfy the provisions of Section 11(a) of the Securities Act and Rule 158 under the Securities Act.

(e)      EFH, EFIH and EFIH Finance will advise the Dealer Managers promptly, (i) when the Registration Statement has been filed or become effective, (ii) when any amendment to the Registration Statement has been filed or becomes effective, (iii) when any Preliminary Prospectus or supplement to the Prospectus or any Rule 165 Material or any amendment to the Prospectus has been filed, (iv) of any request by the Commission for any amendment to the Registration Statement, any amendment or supplement to the Prospectus, any Rule 165 Material or the receipt of any comments from the Commission relating to the Registration Statement or any other request by the Commission for any additional information relating to the Exchange Offer, (v) of the issuance by the Commission of any order suspending the effectiveness of the Registration Statement or preventing or suspending the use of any Preliminary Prospectus or the Prospectus or the initiation or threatening of any proceeding for that purpose or pursuant to Section 8A of the Securities Act and (vi) of any injunction or litigation or administrative action or

15

NYDOCS02/907932.7

EFIHMW00038424

claim relating to the Exchange Offer. EFH, EFIH and EFIH Finance will use their commercially reasonable efforts to prevent the issuance of any such order suspending the effectiveness of the Registration Statement or preventing or suspending the use of any Preliminary Prospectus or the Prospectus and, if any such order is issued, will use commercially reasonable efforts to obtain as soon as possible the withdrawal thereof.

(f)     If, at any time prior to the Exchange Date, any event occurs as a result of which the Offer Material or any Additional Material would include any untrue statement of a material fact or omit to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, or if, in the opinion of EFH, EFIH or EFIH Finance, after consultation with Citigroup Global Markets Inc. and Goldman, Sachs & Co., it should be necessary to amend or supplement the Offer Material or any Additional Material to comply with applicable law, EFH, EFIH and EFIH Finance will promptly: (i) notify the Dealer Managers of any such event or non-compliance at which time the Dealer Managers shall be entitled to cease soliciting tenders until such time as EFH, EFIH and EFIH Finance have complied with clause (iii) of this sentence; (ii) subject to the requirements of the first sentence of the above paragraph (b), prepare an amendment or supplement that will correct such statement or omission or effect such compliance; and (iii) supply any such amendment or supplement to the Dealer Managers and counsel for the Dealer Managers without charge in such quantities as the Dealer Managers may reasonably request. EFH, EFIH and EFIH Finance will also promptly inform the Dealer Managers of any litigation or administrative action with respect to the Exchange Offers.

(g)     Prior to the issuance of the New EFIH Notes, EFIH and EFIH Finance, will use their reasonable best efforts to obtain the registration or qualification of the New EFIH Notes for offer or sale by the Dealer Managers under the securities or Blue Sky laws of such U.S. jurisdictions as may be required for the Exchange Offers; provided that in no event shall EFH, EFIH or EFIH Finance be obligated to qualify to do business in any jurisdiction in which it is not now so qualified or to take any action that would subject it to service of process in suits, other than those arising out of the offering or sale of the New EFIH Notes in any jurisdiction in which it is not now so subject. The Issuers will promptly advise the Dealer Managers of the receipt by the Issuers of any notification with respect to the suspension of the qualification of the New EFIH Notes for sale in any U.S. jurisdiction or the initiation or threatening of any proceeding for such purpose.

(h)     EFH, EFIH and EFIH Finance will cause all 11.250%/12.00% Senior Toggle Notes due 2017 of EFH and 10.875% Senior Notes due 2017 of EFH accepted in the Exchange Offers to be retained by EFIH or cancelled, as applicable, as described in the Preliminary Prospectus, the Disclosure Package and the Prospectus.

(i)     Prior to the Exchange Date, EFH, EFIH and EFIH Finance will use their commercially reasonable efforts to cause the New EFIH Notes to have been approved for listing on the NYSE, subject to notice of issuance.

16

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038425

(j)     EFIH and EFIH Finance will cooperate with the Dealer Managers and use their commercially reasonable efforts to permit the New EFIH Notes to be eligible for clearance and settlement through The Depository Trust Company.

(k)     None of EFH, EFIH, EFIH Finance or any of their respective Affiliates that are controlled by such entities will take any action that is designed to cause or result under the Exchange Act or otherwise, in stabilization or manipulation of the price of any security of EFH, EFIH or EFIH Finance to facilitate the sale of the New EFIH Notes or the tender of Existing Notes in the Exchange Offers.

(l)     EFH agrees to pay the costs and expenses in connection with the Exchange Offers and the Solicitations, including without limitation the following: (i) the preparation of the Transaction Documents, the issuance of the New EFIH Notes and the fees of the EFH Trustee, the EFIH Trustee and the Collateral Trustee (including the fees and expenses of counsel to the EFH Trustee, the EFIH Trustee and the Collateral Trustee in connection with the New EFIH Indenture, the New EFIH Notes, the Security Documents and the Supplemental Indenture), the Information Agent and any exchange agent; (ii) the preparation, printing or reproduction of the Offer Material and any Additional Material and each amendment or supplement thereto; (iii) the printing (or reproduction) and customary mailing and handling (including postage, air freight charges and charges for counting and packaging) of such copies of the Offer Material and any Additional Material (and all amendments or supplements thereto) as may, in each case, be reasonably requested for use in connection with the Exchange Offers; (iv) the preparation, printing, authentication, issuance and delivery of certificates for the New EFIH Notes, including any stamp or transfer taxes in connection with the original issuance and sale of the New EFIH Notes; (v) the printing (or reproduction) and delivery of this Agreement, any blue sky memorandum and all other agreements or documents printed (or reproduced) and delivered in connection with the Exchange Offers; (vi) the registration of the Exchange Offers and the New EFIH Notes under the Securities Act; (vii) any registration or qualification of the New EFIH Notes for offer and sale under the Blue Sky laws of the several states or any non-U.S. jurisdiction (including filing fees and the reasonable fees and expenses of counsel for the Dealer Managers relating to such registration and qualification); (viii) any filings required to be made with the Financial Industry Regulatory Authority ("FINRA") (including filing fees and the reasonable fees and expenses of counsel for the Dealer Managers relating to such filings); (ix) the fees and expenses of accountants for EFH, EFIH and EFIH Finance and the fees and expenses of counsel (including local and special counsel) for EFH, EFIH and EFIH Finance; (x) the fees and expenses payable in connection with listing the New EFIH Notes on the New York Stock Exchange (the "NYSE"); (xi) the fees and expenses payable in connection with the rating of the New EFIH Notes with the ratings agencies; and (xii) all other costs and expenses incident to the performance by EFH, EFIH and EFIH Finance of their respective obligations hereunder and in connection with the Exchange Offers and the Solicitations which are not specifically provided for in this Section 4(l).

5.     Conditions to the Obligations of the Dealer Managers.  The obligations of the Dealer Managers under this Agreement shall be subject to the accuracy of the representations and

17

NYDOCS02:907932.7

Highly Confidential

EFIHMW00038426

warranties on the part of EFH, EFIH and EFIH Finance contained herein at the Commencement Date and the Early Tender Date and the Exchange Date (unless such representation or warranty speaks only as of a certain date, in which case such representation and warranty need only be true as of such date), to the accuracy, as of the date of such certificate, of the statements of EFH, EFIH and EFIH Finance made in any certificates pursuant to the provisions hereof, to the performance by EFH, EFIH and EFIH Finance of their obligations hereunder and to the following additional conditions:

   (a)   At the Commencement Date and the Exchange Date, EFH, EFIH and EFIH Finance shall have requested and caused the following opinions to have been furnished to the Dealer Managers, in each case addressed to the Dealer Managers, and in form and substance reasonably satisfactory to, Citigroup Global Markets Inc. and Goldman, Sachs & Co.:

      (i)   Simpson Thacher & Bartlett LLP, counsel for EFH, EFIH and EFIH Finance, substantially in the form of Exhibit A-1, subject to customary qualifications, assumptions and exceptions;

      (ii)   Vinson & Elkins L.L.P., counsel for EFH, EFIH and EFIH Finance, which opinion shall include a negative assurance letter, substantially in the form of Exhibit A-2, subject to customary qualifications, assumptions and exceptions;

      (iii)   Morgan, Lewis & Bockius LLP, Nuclear Regulatory Commission counsel for EFH, EFIH and EFIH Finance, substantially in the form of Exhibit A-3, subject to customary qualifications, assumptions and exceptions; and

      (iv)   Andrew M. Wright, Vice President and Associate General Counsel of EFH Corporate Services Company, a wholly-owned subsidiary of EFH, substantially in the form of Exhibit A-4, subject to customary qualifications, assumptions and exceptions.

   (b)   At the Early Tender Date, EFH, EFIH and EFIH Finance shall have requested and caused Vinson & Elkins L.L.P., counsel for EFH, EFIH and EFIH Finance, to furnish a negative assurance letter to the Dealer Managers, addressed to the Dealer Managers, and in form and substance reasonably satisfactory to, Citigroup Global Markets Inc. and Goldman, Sachs & Co., substantially in the form of Exhibit A-2, subject to customary qualifications, assumptions and exceptions;

   (c)   At the Commencement Date and the Exchange Date, the Dealer Managers shall have received from Shearman & Sterling LLP, special counsel for the Dealer Managers, such opinion or opinions addressed to the Dealer Managers with respect to such matters as Citigroup Global Markets Inc. and Goldman, Sachs & Co. may reasonably request, and such counsel shall have received such papers and information as they may reasonably request to enable them to pass upon such matters.

   (d)   The Registration Statement shall have been declared effective by the Commission, and no stop order suspending the effectiveness of the Registration

18

NYDOCS02/907932.7

EFIHMW00038427

Statement shall be in effect and no proceedings for such purpose shall be pending before or, to knowledge of EFH, EFIH or EFIH Finance be threatened by the Commission.   The Prospectus and any amendment or supplement thereto and all Rule 165 Material shall have been timely filed with the Commission under the Securities Act, subject to compliance with Rule 165(e) of the Securities Act, and in accordance with Section 4(b) hereof.  All requests by the Commission for additional information with respect to the Exchange Offers and the Solicitations shall have been complied with to the reasonable satisfaction of Citigroup Global Markets Inc. and Goldman, Sachs & Co. All other Offer Material required to be filed with the Commission shall have been filed with the applicable time prescribed for such filing under the Securities Act.

(e)      At the Exchange Date, EFH, EFIH and EFIH Finance shall have furnished to the Dealer Managers, a certificate of EFH, EFIH and EFIH Finance, respectively, signed by the Chairman of the Board or the President and the principal financial or accounting officer of each of EFH, EFIH and EFIH Finance, respectively, dated as of the Exchange Date, to the effect that the signers of such certificate have examined the Offer Material and this Agreement and that:

(i)      the representations and warranties of EFH, EFIH and EFIH Finance, as the case may be, in this Agreement are true and correct in all material respects as if made on the Exchange Date (unless such representation or warranty speaks only as of a certain date, in which case such representation and warranty need only be true as of such date), and EFH, EFIH and EFIH Finance, as the case may be, have in all material respects performed all covenants and agreements and satisfied all conditions on its part to be performed or satisfied at or prior to the Exchange Date (after giving effect to the Exchange Offers and the other transactions contemplated by the Offer Material);

(ii)      subsequent to the respective dates as of which information is given in the Preliminary Prospectus, the Disclosure Package and the Prospectus, there has not been any event or development with respect to such entity and such entity's consolidated subsidiaries, considered as one entity, that would reasonably be expected to result in a Material Adverse Effect, otherwise than as set forth or contemplated in the Preliminary Prospectus, the Disclosure Package and the Prospectus; and

(iii)      the Registration Statement has been declared effective by the Commission, and no stop order suspending the effectiveness of the Registration Statement shall be in effect and no proceedings for such purpose shall be pending before or, to knowledge of EFH, EFIH or EFIH Finance, be threatened by the Commission.

(f)      At each of the Commencement Date, the Early Tender Date and the Exchange Date, EFH, EFIH and EFIH Finance shall have requested and caused Deloitte & Touche LLP to furnish to the Dealer Managers comfort letters, dated respectively as of the Commencement Date, the Early Tender Date and the Exchange Date, in form and

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038428

substance reasonably satisfactory to Citigroup Global Markets Inc. and Goldman, Sachs & Co.

(g)      Subsequent to the Commencement Date or, if earlier, the dates as of which information is given in the Preliminary Prospectus, the Disclosure Package and the Prospectus (exclusive of any amendment or supplement thereto), there shall not have been (i) any change or decrease specified in the letter or letters referred to in paragraph (e) of this Section 5 or (ii) any change, or any development involving a prospective change, in or affecting the condition (financial or otherwise), prospects, earnings, business or properties of EFH, EFIH and EFIH Finance and their subsidiaries, taken as a whole, whether or not arising from transactions in the ordinary course of business, except as set forth in or contemplated in the Preliminary Prospectus, the Disclosure Package and the Prospectus (exclusive of any amendment or supplement thereto), the effect of which, in any case referred to in clause (i) or (ii) above, is, in the sole judgment of the Dealer Managers, so material and adverse as to make it impractical or inadvisable to market or deliver the New EFIH Notes or solicit tenders of Existing Notes as contemplated by the Preliminary Prospectus, the Disclosure Package and the Prospectus (exclusive of any amendment or supplement thereto).

(h)      Prior to the Exchange Date, the Issuers shall have obtained all consents, approvals, authorizations and orders of, and shall have duly made all registrations, qualifications and filing with, any court or regulatory authority or other governmental agency or instrumentality required in connection with the making and consummation of the Exchange Offers and the execution, delivery and performance of this Agreement other than such consents approvals, authorizations, orders, registrations, qualifications and filings that, if not obtained or made, would not be reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.

(i)      Prior to the Effective Date, to the extent required, FINRA shall have confirmed that it has not raised any objection with respect to the fairness and reasonableness of the terms and arrangements among EFH, EFIH and EFIH Finance and the Dealer Managers with respect to the transactions contemplated by the Preliminary Prospectus, the Disclosure Package and the Prospectus.

(j)      Prior to the Exchange Date, the Issuers shall have delivered to the Dealer Managers and their counsel such further information, certificates and documents related to the transactions contemplated by this Agreement as they may reasonably request.

If (i) any of the conditions specified in this Section 6 shall not have been fulfilled when and as provided in this Agreement, or (ii) any of the opinions and certificates mentioned above or elsewhere in this Agreement shall not be reasonably satisfactory in form and substance to the Dealer Managers and their counsel, this Agreement and all obligations of the Dealer Managers hereunder may be cancelled by the Dealer Managers at, or at any time prior to, the Exchange Date.  Notice of such cancellation shall be given to EFH, EFIH and EFIH Finance in writing or by telephone or facsimile confirmed in writing.

6.  Indemnification and Contribution.

20

Highly Confidential                                                          EFIHMW00038429

**PX 026**
**Page 20 of 70**

(a)    EFH, EFIH and EFIH Finance, agree, jointly and severally, to indemnify and hold harmless each Dealer Manager, the directors, officers, employees and agents of each Dealer Manager and each person who controls any Dealer Manager within the meaning of either the Securities Act or the Exchange Act (each such person, an "indemnified party") against any and all losses, claims, damages or liabilities, joint or several, to which they or any of them may become subject under the Securities Act, the Exchange Act or other U.S. federal, state or foreign statutory law or regulation, at common law or otherwise, insofar as such losses, claims, damages or liabilities or actions in respect thereof arise out of, or are based upon (1) (A) any untrue statement of a material fact or alleged untrue statement of a material fact contained in the Registration Statement or any amendment or supplement thereto, or arising out of or are based upon the omission or alleged omission to state therein any material fact required to be stated therein or necessary in order to make the statements therein not misleading, (B) any untrue statement of a material fact or alleged untrue statement of a material fact contained in the Disclosure Package, any Preliminary Prospectus, the Prospectus, any Rule 165 Material, the Offer Material or any Additional Material or any other information provided by EFH, EFIH or EFIH Finance to any holder of Existing Notes in connection with the Exchange Offers and the Solicitations or in any amendment thereof or supplement thereto, or arise out of or are based upon the omission or alleged omission to state therein a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, (2) the failure of EFH, EFIH or EFIH Finance to make or consummate the Exchange Offers or the Solicitations or the withdrawal, rescission, termination, amendment or extension of the Exchange Offers or the Solicitations or any failure on the part of EFH, EFIH or EFIH Finance to comply with the terms and conditions contained in the Offer Material, (3) any action or failure to act by EFH, EFIH or EFIH Finance or their respective directors, officers, agents or employees or by any indemnified party at the request or with the consent of EFH, EFIH or EFIH Finance for matters arising out of or related to the Exchange Offers and the Solicitations, or (4) otherwise related to or arising out of the Dealer Managers' engagement hereunder or any transaction or conduct in connection therewith, or the Exchange Offers and the Solicitations, except that this clause (4) shall not apply to the extent any losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party (customary communications with holders of Existing Notes in response to inquiries by holders of Existing Notes shall not be deemed to be gross negligence or willful misconduct of such indemnified party), and in the case of clause (1), (2) or (3) of this sentence, EFH, EFIH and EFIH Finance agree to reimburse each such indemnified party, as incurred, for any legal or other expenses reasonably incurred by it in connection with investigating or defending any such loss, claim, damage, liability or action; provided, however, that EFH, EFIH and EFIH Finance will not be liable in any such case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made in the Offering Documents, or in any amendment thereof or supplement thereto, in reliance upon and in conformity with written information furnished to EFH, EFIH and EFIH Finance by or on behalf of the Dealer Managers specifically for inclusion therein (which for purposes of this provison shall consist of the name and addresses of such Dealer Managers on the front cover and

21

NYDOCS02/907932.7

EFIHMW00038430

the back cover of the Prospectus and the Letter of Transmittal); and provided further, however, that the indemnified party shall repay to EFH, EFIH and EFIH Finance all such legal and other expenses if it shall ultimately be determined that the indemnified party is not entitled to indemnification pursuant to this Section 6.  This indemnity agreement will be in addition to any liability that EFH, EFIH or EFIH Finance may otherwise have.

(b)    Each Dealer Manager, severally and not jointly, agrees to indemnify and hold harmless EFH, EFIH and EFIH Finance, each of their directors and officers, and each person who controls EFH, EFIH or EFIH Finance within the meaning of either the Securities Act or the Exchange Act, to the same extent as the foregoing indemnity to each Dealer Manager in clause (1) of the preceding paragraph (a), but only with respect to written information relating to the Dealer Manager furnished to EFH, EFIH or EFIH Finance by or on behalf of the Dealer Managers for inclusion in the Disclosure Package, any Preliminary Prospectus, the Prospectus, any Rule 165 Material, the Offer Material or any Additional Material (or in any amendment or supplement thereto).  This indemnity agreement will be in addition to any liability that the Dealer Managers may otherwise have.

(c)    Promptly after receipt by an indemnified party under this Section 6 of notice of the commencement of any action or proceeding, such indemnified party will, if a claim in respect thereof is to be made against the indemnifying party under this Section 6, notify the indemnifying party in writing of the commencement thereof; but the failure so to notify the indemnifying party (i) will not relieve it from liability under paragraph (a) or (b) above unless and to the extent it did not otherwise learn of such action and such failure results in the forfeiture by the indemnifying party of substantial rights and defenses and (ii) will not, in any event, relieve the indemnifying party from any obligations to any indemnified party other than the indemnification obligation provided in paragraph (a) or (b) above.  The indemnifying party shall be entitled to appoint counsel (including local counsel) of the indemnifying party's choice at the indemnifying party's expense to represent the indemnified party in any action for which indemnification is sought (in which case the indemnifying party shall not thereafter be responsible for the fees and expenses of any separate counsel retained by the indemnified party or parties, other than reasonable costs incurred in cooperating with the indemnifying party in connection with such action, except as set forth below); provided, however, that such counsel shall be reasonably satisfactory to the indemnified party.  Notwithstanding the indemnifying party's election to appoint counsel (including local counsel) to represent the indemnified party in an action, the indemnified party shall have the right to employ separate counsel (including local counsel), and the indemnifying party shall bear the reasonable fees, costs and expenses of such separate counsel if (i) the use of counsel chosen by the indemnifying party to represent the indemnified party would present such counsel with a conflict of interest; (ii) the actual or potential defendants in, or targets of, any such action include both the indemnified party and the indemnifying party and the indemnified party shall have reasonably concluded that there may be legal defenses available to it and/or other indemnified parties that are different from or additional to those available to the indemnifying party; (iii) the indemnifying party shall not have

22

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038431

employed counsel reasonably satisfactory to the indemnified party to represent the indemnified party within a reasonable time after notice of the institution of such action; or (iv) the indemnifying party shall authorize the indemnified party to employ separate counsel at the expense of the indemnifying party. An indemnifying party will not, without the prior written consent of the indemnified parties (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (with respect to which the indemnified parties (i) are actual parties, or (ii) would reasonably be expected to become parties, to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of each indemnified party from all liability arising out of such claim, action, suit or proceeding and does not include any statement as to or any admission of fault, culpability or failure to act, by or on behalf of any indemnified party.

(d)     In the event that the indemnity provided in paragraph (a) or (b) of this Section 6 is unavailable to or insufficient to hold harmless an indemnified party for any reason, EFH, EFIH and EFIH Finance on the one hand and the Dealer Managers on the other hand agree to contribute to the aggregate losses, claims, damages and liabilities (including legal or other expenses reasonably incurred in connection with investigating or defending any loss, claim, damage, liability or action) (collectively, the "Losses") to which EFH, EFIH and EFIH Finance and one or more of the Dealer Managers may be subject in such proportion as is appropriate to reflect the relative benefits received by EFH, EFIH and EFIH Finance on the one hand and by the Dealer Managers on the other hand other from the Exchange Offers; provided, however, that in no case shall any Dealer Manager be responsible for any amount in excess of the actual amount of Fees received by such Dealer Manager under this Agreement. If the allocation provided by the immediately preceding sentence is unavailable for any reason, EFH, EFIH, EFIH Finance and the Dealer Managers shall contribute in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of EFH, EFIH and EFIH Finance on the one hand and the Dealer Managers on the other hand in connection with the statements, omissions, actions or failure to act that resulted in such Losses, as well as any other relevant equitable considerations. Benefits received (or anticipated to be received) by EFH, EFIH and EFIH Finance shall be deemed to be equal to the principal amount of the securities in respect of which: (a) if the Exchange Offers are consummated, valid tenders of Existing Notes are received, or (b) if the Exchange Offers are not consummated, valid tenders are or were sought pursuant to the Exchange Offers, and benefits received (or anticipated to be received) by the Dealer Managers shall be deemed to be equal to the Fee paid by EFH, EFIH and EFIH Finance to the Dealer Managers under this Agreement (exclusive of amounts paid for reimbursement of expenses or paid under this Agreement). Relative fault shall be determined by reference to, among other things, whether any untrue or any alleged untrue statement of a material fact or the omission or alleged omission to state a material fact or any other alleged conduct relates to information provided by EFH, EFIH or EFIH Finance or other conduct by the EFH, EFIH and EFIH Finance on the one hand or the Dealer Managers on the other, the intent of the parties with respect to such alleged untrue statement or omission and their relative knowledge, access to information and opportunity to correct

23

Highly Confidential

EFIHMW00038432

or prevent such untrue statement or omission. EFH, EFIH, EFIH Finance and the Dealer Managers agree that it would not be just and equitable if contribution were determined by pro rata allocation or any other method of allocation that does not take account of the equitable considerations referred to above.  Notwithstanding the provisions of this paragraph (d), no person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.  For purposes of this Section 6, each person who controls a Dealer Manager within the meaning of either the Securities Act or the Exchange Act and each director, officer, employee and agent of the Dealer Managers shall have the same rights to contribution as such Dealer Managers, and each person who controls EFH, EFIH or EFIH Finance within the meaning of either the Securities Act or the Exchange Act and each officer and director of EFH, EFIH and EFIH Finance shall have the same rights to contribution as EFH, EFIH and EFIH Finance, subject in each case to the applicable terms and conditions of this paragraph (d).

    7.    <u>Non-Disclosure</u>. EFH, EFIH and EFIH Finance shall not disclose the provisions of this Agreement to any other person without the prior written consent of the Dealer Managers, unless EFH, EFIH or EFIH Finance reasonably determine that the failure to make such disclosure would violate applicable law or regulation.

    8.    <u>Certain Acknowledgments</u>. Each of EFH, EFIH and EFIH Finance acknowledge and agree that: (i) the services to be provided by the Dealer Managers pursuant to this Agreement is an arm's-length commercial transaction between EFH, EFIH and EFIH Finance, on the one hand, and the Dealer Managers, on the other; (ii) in connection with each transaction contemplated hereby and the process leading to such transaction each Dealer Manager is and has been acting solely as a principal and is not the agent or fiduciary of EFH, EFIH or EFIH Finance, or their respective affiliates, stockholders, creditors or employees or any other party; (iii) no Dealer Manager has assumed or will assume any fiduciary responsibility in favor of EFH, EFIH or EFIH Finance with respect to any of the transactions contemplated hereby or the process leading thereto (irrespective of whether such Dealer Manager has advised or is currently advising EFH, EFIH or EFIH Finance on other matters) or any other obligation to EFH, EFIH or EFIH Finance except the obligations expressly set forth in this Agreement; (iv) the several Dealer Managers and their respective affiliates may be engaged in a broad range of transactions that involve interests that differ from those of EFH, EFIH or EFIH Finance (including, without limitation, as holders of notes listed on <u>Schedule B</u> hereto) and that the several Dealer Managers have no obligation to disclose any of such interest by virtue of any fiduciary or advisory relationship; and (v) the Dealer Managers have not provided any legal, accounting, regulatory or tax advice with respect to the offering contemplated hereby and EFH, EFIH and EFIH Finance have consulted their own legal, accounting, regulatory and tax advisors to the extent they deemed appropriate

    9.    <u>Representations, Acknowledgments and Indemnities to Survive</u>.  The representations, warranties and indemnifications contained in this Agreement shall continue in effect after completion of the Exchange Offers and shall be effective even if the Exchange Offers are withdrawn, abandoned or terminated.

24

NYDOCS02/907932.7

Highly Confidential

10.    <u>Notices</u>.  All communications hereunder will be in writing and effective only on receipt, and, if sent to the Dealer Managers, will be mailed, delivered or telefaxed to the Citigroup Global Markets General Counsel (fax no.: (212) 816-7912) and confirmed to Citigroup Global Markets at 388 Greenwich Street, New York, New York 10013, Attention:  General Counsel Office and to Goldman, Sachs & Co. at 200 West Street, New York, New York 10282-2198, Attention: Registration Department (fax no.: (212) 902-3000); or, if sent to EFH, EFIH, EFIH Finance or EFCH shall be delivered or sent by mail, telex or facsimile transmission to the address of EFH, EFIH and EFIH Finance set forth in the Preliminary Prospectus, the Disclosure Package and the Prospectus, Attention: General Counsel.

11.    <u>Successors</u>.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and controlling persons referred to in Section 6 hereof, and, no other person will have any right or obligation hereunder.

12.    <u>Applicable Law</u>.  This Agreement will be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York.  Any right to trial by jury with respect to any claim or proceeding related to or arising out of this Agreement or any transaction or conduct in connection herewith, is waived.

13.    <u>Counterparts</u>.  This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.

14.    <u>Headings</u>.  The section headings used herein are for convenience only and shall not affect the construction hereof.

15.    <u>Additional Dealer Managers</u>.  By execution of a Joinder Agreement among EFH, EFIH, EFIH Finance, the Dealer Managers and such other exclusive dealer managers and exclusive solicitation agents for the Exchange Offers and the Solicitations as the parties hereto shall agree, such other exclusive dealer managers and exclusive solicitation agents shall, without further action by such persons, become parties to this Agreement.

16.    <u>Definitions</u>.  The following terms, when used in this Agreement, shall have the meanings indicated.

"Affiliate" shall have the meaning specified in Rule 501(b) of Regulation D.

"Commencement Date" shall mean the date on which the Exchange Offer commences.

"Disclosure Package" shall mean (i) the Prospectus, assuming for purposes of this definition that the Prospectus was dated as of the Expiration Date, and (ii) any Rule 165 Material as supplemented or amended as of the Expiration Date.

"Early Tender Date" shall have the meaning ascribed to such term in the Preliminary Prospectus, the Disclosure Package and the Prospectus.

25

NYDOCS02/907932.7

Highly Confidential

EFIHMW00038434

"Expiration Date" shall have the meaning ascribed to such term in the Preliminary Prospectus, the Disclosure Package and the Prospectus.

"Effective Date" shall mean each date and time that the Registration Statement and any post-effective amendment or amendments thereto became or become effective.

"FINRA" shall mean the Financial Industry Regulatory Authority, Inc.

"FSMA" shall mean the U.K. Financial Services and Markets Act 2000.

"Information Agent" shall mean Global Bondholder Services Corporation.

"Issuers" shall mean EFIH and EFIH Finance.

"Joinder Agreement" shall mean any Joinder Agreement to this Agreement, pursuant to Section 16 of this Agreement, executed by EFIH and EFIH Finance, the Dealer Managers and such other exclusive dealer managers and exclusive solicitation agents for the Exchange Offers and the Solicitations.

"Maximum Exchange Amount" shall have the meaning ascribed to such term in the Preliminary Prospectus, the Disclosure Package and the Prospectus.

"Preliminary Prospectus" shall mean any preliminary prospectus included in the Registration Statement on the Commencement Date or in any amendment thereto prior to the effectiveness of the Registration Statement (excluding the Prospectus) or any preliminary prospectus filed with the Commission pursuant to Rule 424(a) under the Securities Act.

"Prospectus" shall mean the final prospectus in the form included in the Registration Statement at the time it became effective or, if used prior to the Expiration Date, the final prospectus filed pursuant to Rule 424(b) under the Securities Act.

"Rule 165 Material" shall mean any written communication made in connection with or relating to the Exchange Offers in reliance on Rule 165 of the Securities Act, and required to be filed by EFH, EFIH or EFIH Finance with the Commission pursuant to Rule 425 under the Securities Act.

"U.S." or the "United States" shall mean the United States of America.

"You" or "Your" shall mean Citigroup Global Markets Inc., Goldman, Sachs & Co., Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities Inc., Morgan Stanley & Co. Incorporated and such other exclusive dealer managers and exclusive solicitation agents for the Exchange Offers and the Solicitations which execute Joinder Agreements in accordance with Section 16 of this Agreement.

26

NYDOCS02/907932.7

If the foregoing is in accordance with your understanding of our agreement, please sign and return to us the enclosed duplicate hereof, whereupon this Agreement and your acceptance shall represent a binding agreement between EFH, EFIH and EFIH Finance and the Dealer Managers.

Very truly yours,

ENERGY FUTURE HOLDINGS CORP.

By

Name: Andrew Wright
Title: Vice President and Associate General Counsel

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

By

Name: Andrew Wright
Title: Vice President and Associate General Counsel

EFIH FINANCE INC.

By

Name: Andrew Wright
Title: Vice President and Associate General Counsel

Dealer Manager Agreement

Highly Confidential

EFIHMW00038436

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

Citigroup Global Markets Inc.
Goldman, Sachs & Co.

By: Citigroup Global Markets Inc.
    as Dealer Manager

By _____
    Name: Stephen Cheeseman
    Title: Managing Director


By: Goldman, Sachs & Co.
    as Dealer Manager


By _____
    (Goldman, Sachs & Co.)

Dealer Manager Agreement

Highly Confidential

EFIHMW00038437

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

Citigroup Global Markets Inc.
Goldman, Sachs & Co.

By: Citigroup Global Markets Inc.
    as Dealer Manager

By _____
    Name:
    Title:


By: Goldman, Sachs & Co.
    as Dealer Manager

By *Goldman, Sachs & Co.*
    (Goldman, Sachs & Co.)


Dealer Manager Agreement

Highly Confidential

EFIHMW00038438

**PX 026**
**Page 29 of 70**

Banc of America Securities LLC
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated

By: Banc of America Securities LLC
    as Dealer Manager

By *Shelli C. Merritt*
    Name:  Shelli A. Merritt
    Title:   Managing Director


By: Credit Suisse Securities (USA) LLC
    as Dealer Manager


By _____
    Name:
    Title:


By: J.P. Morgan Securities LLC
    as Dealer Manager


By _____
    Name:
    Title:


By: Morgan Stanley & Co. Incorporated
    as Dealer Manager


By _____
    Name:
    Title:


Dealer Manager Agreement

Highly Confidential

Banc of America Securities LLC
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated

By: Banc of America Securities LLC
    as Dealer Manager

By _____
    Name:
    Title:

By: Credit Suisse Securities (USA) LLC
    as Dealer Manager

By _____
    Name: JEAN-PIERRE BOUDRINS
    Title: DIRECTOR

By: J.P. Morgan Securities LLC
    as Dealer Manager

By _____
    Name:
    Title:

By: Morgan Stanley & Co. Incorporated
    as Dealer Manager

By _____
    Name:
    Title:

Dealer Manager Agreement

Highly Confidential

EFIHMW00038440

Banc of America Securities LLC
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated

By: Banc of America Securities LLC
    as Dealer Manager

By _____
   Name:
   Title:


By: Credit Suisse Securities (USA) LLC
    as Dealer Manager

By _____
   Name:
   Title:


By: J.P. Morgan Securities LLC
    as Dealer Manager

By _____
   Name: Lawrence E. Zarker
   Title: Managing Director


By: Morgan Stanley & Co. Incorporated
    as Dealer Manager

By _____
   Name:
   Title:


Dealer Manager Agreement

Highly Confidential

EFIHMW00038441

Banc of America Securities LLC
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities Inc.
Morgan Stanley & Co. Incorporated


By: Banc of America Securities LLC
    as Dealer Manager


By _____
    Name:
    Title:



By: Credit Suisse Securities (USA) LLC
    as Dealer Manager


By _____
    Name:
    Title:


By: J.P. Morgan Securities LLC
    as Dealer Manager


By _____
    Name:
    Title:



By: Morgan Stanley & Co. Incorporated
    as Dealer Manager


By _____
    Name: William Graham
    Title: Authorized Signatory


Dealer Manager Agreement


Highly Confidential

EFIHMW00038442

Schedule A

**Dealer Manager Fee**


**Fee Payable to Each of Citigroup Global Markets Inc. and Goldman, Sachs & Co.**


[amount of New EFIH Notes issued in the Exchange Offers * (0.75%*31.25%)]
+   [amount of cash used to purchase Existing Notes in the Exchange Offers * (0.25%*31.25%)]

In addition to the foregoing, an Exchange Offer Incentive Fee of $3.0 million in the aggregate shall be paid to Citigroup Global Markets Inc. and Goldman, Sachs & Co. if the sum of the aggregate Total Cash Consideration and the aggregate principal amount of New EFIH Notes issued in the Exchange Offers is at least $2.68 billion, prior to proration.  The Offeror shall determine the allocation of the Exchange Offer Incentive Fee between Citigroup Global Markets Inc. and Goldman, Sachs & Co. following the expiration of the Exchange Offers.


**Fee Payable to Each of Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, Morgan Stanley & Co. Incorporated and J.P. Morgan Securities Inc.**


[amount of New EFIH Notes issued in the Exchange Offers * (0.75%*9.375%)]
+   [amount of cash used to purchase Existing Notes in the Exchange Offers * (0.25%*9.375%)]


S-A-1

Highly Confidential                                                                EFIHMW00038443

Schedule B

**Existing Notes**

| Outstanding Principal Amount (in millions) | Issuer | Title of Old Notes | Consideration per $1,000 Principal Amount of Old Secured Notes Validly Tendered | | |
|---|---|---|---|---|---|
| | | | Total Consideration Amount if Tendered at or Prior to the Early Tender Date[1][2][3] | Aggregate Consideration, Including Consent Payment, if Tendered At or Prior to the Early Tender Date[3][4] | Exchange Consideration if Tendered After the Early Tender Date and at or Prior to the Expiration Date[1][3] |
| $2,705 | EFH Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 | $720.00 | $722.50 | $670.00 |
| $1,787 | EFH Corp. | 10.875% Senior Notes due 2017 | $785.00 | $787.50 | $735.00 |

(1) Consideration per $1,000 principal amount of the Existing Notes. Excludes the consent payment of $2.50 per $1,000 principal amount of Existing Notes payable in cash with respect to Consents received at or prior to the Consent Date (as defined in the Preliminary Prospectus, the Disclosure Package and the Prospectus), subject to the requisite Consents being received in respect of the Existing Indenture and a Supplemental Indenture being executed and delivered by the parties thereto.

(2) The Total Consideration consists of the Total Notes Consideration and the Total Cash Consideration.

(3) The aggregate principal amount of the New EFH Notes issuable in the Exchange Offers will not exceed $2.18 billion.

(4) Includes the consent payment of $2.50 per $1,000 principal amount of the Existing Notes payable in cash with respect to Consents received at or prior to the Consent Date, subject to the requisite Consents being received in respect of the Existing Indenture and a Supplemental Indenture being executed and delivered by the parties thereto.

    The aggregate amount of cash payable as the aggregate Total Cash Consideration in the exchange offers is $500 million, which amount may be reduced as a result of proration, if any, or withdrawals after the Early Tender Date of the Existing Notes previously validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. The potential reduction of this cash amount will not change the amount of Total Cash Consideration to be paid in exchange for each $1,000 principal amount of the Existing Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and that will be announced by press release promptly after the Early Tender Date and in any event at least ten business days prior to (and including) the Expiration Date. This aggregate amount of cash will be paid as the Total Cash Consideration in exchange for the Existing Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange such that each 10.875% Senior Note due 2017 of EFH Corp. (the "Old Cash-Pay Notes") and each 11.250%/12.000% Senior Toggle Note due 2017 of EFH Corp. (the "Old Toggle Notes") validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange will receive the same percentage of its Total Consideration Amount in cash. The portion of the Total Consideration Amount paid in cash will correspondingly reduce on a dollar basis the principal amount of the Total Consideration Amount for each issue of the Existing Notes that is comprised of Total Notes Consideration.

S-B-1

Highly Confidential           EFIHMW00038444

**PX 026**
**Page 35 of 70**

At the Commencement Date, the Total Consideration Amount for the Old Cash-Pay Notes equals the minimum Total Cash Consideration of $146.46 per $1,000 principal amount of Old Cash-Pay Notes and the maximum Total Notes Consideration of $638.54 principal amount of New EFIH Notes payable per $1,000 principal amount of Old Cash-Pay Notes, which amounts would be payable if all of the Old Notes were tendered at or prior to the Early Tender Date and Old Notes are accepted for exchange.  At the Commencement Date, the Total Consideration Amount for the Old Toggle Notes equals the minimum Total Cash Consideration of $134.33 per $1,000 principal amount of Old Toggle Notes and the maximum Total Notes Consideration of $585.67 principal amount of New EFIH Notes payable per $1,000 principal amount of Old Toggle Notes, which amounts would be payable if all of the Existing Notes were tendered at or prior to the Early Tender Date and the Existing Notes are accepted for exchange. The definitive amount of the Total Notes Consideration and the Total Cash Consideration per $1,000 principal amount of the Existing Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange will be announced by press release promptly after the Early Tender Date and in any event at least ten business days prior to (and including) the Expiration Date.

S-B-2

Highly Confidential

**Exhibit A-1**

Opinion of Simpson, Thacher & Bartlett LLP

Commencement Date

We have acted as counsel to Energy Future Holdings Corp., a Texas corporation (the "Company"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("Intermediate Holdings") and EFIH Finance Inc., a Delaware corporation ("EFIH Finance" and, together with Intermediate Holdings, the "Offerors"), in connection with (1) the offers of up to $2.18 billion in aggregate principal amount of 10.000% Senior Secured Notes due 2020 to be issued by the Offerors (the "Senior Secured Notes") and $500,000,000 in cash in exchange for the outstanding notes listed in Schedule I hereto (collectively, the "Old Notes") (the "Exchange Offers"), and (2) the Company's solicitation of consents (the "Consent Solicitation") from registered holders of the Old Notes, to certain proposed amendments to the Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, and the Second Supplemental Indenture, dated as of August 3, 2009, each among the Company, Intermediate Holdings, Energy Future Competitive Holdings Company, a Texas corporation ("Competitive Holdings" and, together with Intermediate Holdings, the "Guarantors"), and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as trustee, pursuant to which the Old Notes were issued (the "Old Notes Indenture"), which proposed amendments would, pursuant to a third supplemental indenture among the Company, the Guarantors and The Bank of New York Mellon Trust Company, N.A., to the Old Notes Indenture (the "Third Supplemental Indenture"), among other things, amend certain covenants and other related provisions in the Old Notes Indenture, as more fully described in the Preliminary Prospectus (as defined below) (the "Proposed Amendments"). This opinion is delivered to you pursuant to Section 5 of the Dealer Manager Agreement, dated July 16, 2010 (the "Dealer Manager Agreement"), among the Company, the Offerors and Citigroup Global Markets Inc., Goldman, Sachs & Co., Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities Inc. and Morgan Stanley & Co. Incorporated, as Dealer Managers (the "Dealer Managers").

We have examined the Registration Statement on Form S-4 (the "Registration Statement"), filed by the Offerors under the Securities Act of 1933, as amended (the "Securities Act"); the Offerors' preliminary prospectus dated July 16, 2010 (the "Preliminary Prospectus"), filed by the Offerors under the Securities Act, relating to the Exchange Offers and the Consent Solicitation; the related consent and letter of transmittal; the Old Notes Indenture; the form of the Third Supplemental Indenture; the Old Notes; the Exchange Agreement dated July 15, 2010 among the Company, the Offerors and Western Asset Management Company, the Exchange Agreement dated July 15, 2010 among the Company, the Offerors and Franklin Advisers, Inc. and the Exchange Agreement dated July 15, 2010 among the Company, the Offerors and Avenue Capital Management II, L.P. (collectively, the "Exchange Agreements"); and the Dealer Manager Agreement. In addition, we have examined, and have relied as to matters of fact upon, the documents delivered to you at the closing and upon originals, or duplicates or certified or conformed copies, of such corporate and other records, agreements, documents and other instruments and such certificates or comparable documents of public officials and of officers and

Ex-A-1-1

Highly Confidential

representatives of the Company and the Offerors and have made such other investigations, as we have deemed relevant and necessary in connection with the opinions hereinafter set forth.

In such examination, we have assumed the genuineness of all signatures, the legal capacity of natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as duplicates or certified or conformed copies and the authenticity of the originals of such latter documents. We have also assumed that (i) the Company is validly existing and in good standing under the law of the State of Texas; (ii) the Company has duly authorized, executed and delivered the Dealer Manager Agreement in accordance with the laws of the State of Texas; (iii) the execution, delivery and performance by the Company of the Dealer Manager Agreement does not violate the laws of any jurisdiction (except that no such assumption is made with respect to the federal laws of the United States and the law of the State of New York, the Delaware General Corporation Law and the Delaware Limited Liability Company Act); and (v) the execution, delivery and performance by the Company of the Dealer Manager Agreement does not constitute a violation or breach of any agreement or instrument (except no such assumption is made with respect to agreements listed on Schedule II hereto) which is binding upon the Company or its charter, by-laws or similar organizational documents.

Based upon the foregoing, and subject to the qualifications, assumptions and limitations stated herein, we are of the opinion that:

1.    Intermediate Holdings has been duly formed and is validly existing and in good standing as a limited liability company under the law of the State of Delaware and has full power and authority to conduct its business as described in the Preliminary Prospectus.

2.    EFIH Finance has been duly incorporated and is validly existing and in good standing as a corporation under the law of the State of Delaware and has full power and authority to conduct its business as described in the Preliminary Prospectus.

3.    The Dealer Manager Agreement has been duly authorized, executed and delivered by the Offerors and duly executed and delivered in accordance with the law of New York by the Company and, assuming that the Dealer Manager Agreement is the valid and legally binding obligation of the Dealer Managers, will constitute a valid and legally binding obligation of each of the Offerors and the Company enforceable against each of the Offerors and the Company in accordance with its terms.

4.    The Third Supplemental Indenture has been duly authorized by Intermediate Holdings.

Ex-A-1-2

Highly Confidential

EFIHMW00038447

5.     The execution, delivery and performance by the Company and the Offerors of the Dealer Manager Agreement will not breach or result in a default under any of the agreements or instruments identified on Schedule II hereto, nor will such actions violate the certificate of formation or limited liability company agreement of Intermediate Holdings, the certificate of incorporation or by-laws of EFIH Finance or any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any rule or regulation that has been issued pursuant to any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any order known to us issued pursuant to any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law by any court or governmental agency or body having jurisdiction over the Company and the Offerors or any of their properties, except that it is understood that no opinion is given in this paragraph 5 with respect to any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and in each case the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency).

6.     No consent, approval, authorization, order, registration or qualification of or with any U.S. federal or New York state governmental agency or body or any Delaware state governmental agency or body acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law or, to our knowledge, any U.S. federal or New York state court or any Delaware state court acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law is required for the compliance by the Company and the Offerors with all of the provisions of the Dealer Manager Agreement, except for the registration under the Securities Act of the Senior Secured Notes, and such consents, approvals, authorizations, registrations or qualifications as may be required under state securities or Blue Sky laws in connection with the Exchange Offers and except that it is understood that no opinion is given in this paragraph 6 with respect to any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and in each case the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency).

Ex-A-1-3

7.    None of the Offerors is an "investment company" within the meaning of and subject to regulation under the Investment Company Act of 1940, as amended.

Our opinion set forth in paragraph 3 above is subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, (ii) general equitable principles (whether considered in a proceeding in equity or at law) and (iii) an implied covenant of good faith and fair dealing. Our opinion in paragraph 3 above is further limited by considerations of public policy.

Our opinions set forth in paragraphs 5 and 6 above are limited to our review of only statutes, rules and regulations that, in our experience, are customarily applicable to transactions of the type contemplated by the Preliminary Prospectus and the Dealer Manager Agreement and for the purposes of such opinions we have assumed that the Exchange Offers and Consent Solicitation are conducted in conformity with the terms set forth in the Preliminary Prospectus and the related consent and letter of transmittal. Insofar as our opinions set forth in paragraphs 5 and 6 relate to the transactions contemplated by Exchange Agreements, we note that our opinions are based on oral discussions with the Staff of the Securities and Exchange Commission regarding the applicability of Compliance and Disclosure Interpretation No. 139.29 to the Exchange Offers. With regard to the determination of the Total Notes Consideration and the Total Cash Consideration (each as defined in the Preliminary Prospectus), offered in the Exchange Offers, we note that our opinions in paragraphs 5 and 6 are based on our analysis of the particular facts and circumstances of the Exchange Offers, the plain language of Rule 14e-1 ("Rule 14e-1") promulgated under the Exchange Act and the absence of any explicit indication in the statutes, rules and regulations applicable as it relates to notice of changes in consideration offered in a tender offer to the contrary, we have concluded that the consideration determination arrangements described in the Preliminary Prospectus is consistent with the requirements of Rule 14e-1; however, we note that we found no binding judicial or Securities and Exchange Commission authority on the question.

We understand that, with respect to matters of Texas law, you are relying on the opinions of Vinson & Elkins LLP and Andrew Wright, Esq., Vice President and Associate General Counsel of the Company, and, with respect to matters of federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities or transmission facilities, you are relying on the opinion of Morgan, Lewis & Bockius LLP, each dated the date hereof.

We do not express any opinion herein concerning any law other than the law of the State of New York, the federal law of the United States, the Delaware General Corporation Law and the Delaware Limited Liability Company Act.

Ex-A-1-4

This opinion letter is rendered to you in connection with the above-described transaction. This opinion letter may not be relied upon by you for any other purpose, or relied upon by, or furnished to, any other person, firm or corporation without our prior written consent.

Very truly yours,

SIMPSON THACHER & BARTLETT LLP

Ex-A-1-5

Highly Confidential

EFIHMW00038450

Schedule I

| Issuer | Title of Old Notes |
| --- | --- |
| the Company | 10.875% Senior Notes due 2017 |
| the Company | 11.250%/12.000% Senior Toggle Notes due 2017 |

Ex-A-1-6

Highly Confidential

EFIHMW00038451

<u>Schedule II</u>

1.    Revolving Credit Agreement, dated as of October 10, 2007, among Oncor Electric Delivery Company LLC, the lenders listed in Schedule 2.01 thereof, JPMorgan Chase Bank, N.A., as Administrative Agent, Citibank, N.A., as Syndication Agent, Credit Suisse, Cayman Island Branch, Goldman Sachs Credit Partners L.P., Lehman Commercial Paper Inc. and Morgan Stanley Senior Funding, Inc. as Co-Documentation Agents, J.P. Morgan Securities Inc., Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Goldman Sachs Credit Partners L.P., Lehman Brothers Inc. and Morgan Stanley Senior Funding, Inc., as Joint Lead Arrangers and Bookrunners, JPMorgan Chase Bank, N.A., as Swingline Lender and JPMorgan Chase Bank, N.A. and Citibank, N.A. as Fronting Banks.

2.    Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, and the Second Supplemental Indenture, dated as of August 3, 2009, each among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as trustee, pursuant to which the 10.875% Senior Notes due 2017 and the 11.250%/12.000% Senior Toggle Notes due 2017 were issued.

3.    Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of December 6, 2007 and the Second Supplemental Indenture, dated as of August 3, 2009, each among Texas Competitive Electric Holdings Company LLC, TCEH Finance, Inc., the guarantors named therein and The Bank of New York Mellon (formerly known as the The Bank of New York), as trustee, pursuant to which Texas Competitive Electric Holdings Company LLC's and TCEH Finance, Inc.'s 10.25% Senior Notes due 2015, 10.25% Senior Notes due 2015, Series B, and 10.50%/11.25% Senior Toggle Notes due 2016 were issued.

4.    Indenture, dated as of November 16, 2009, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which Energy Future Holdings Corp.'s 9.75% Senior Secured Notes due 2019 were issued.

5.    Indenture, dated as of November 16, 2009, among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 9.75% Senior Secured Notes due 2019 of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. were issued.

6.    Indenture, dated as of January 12, 2010, as supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, and the Seventh Supplemental Indenture, dated as of July 7, 2010, each among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which Energy Future Holdings Corp.'s 10.000% Senior Secured Notes due 2020 were issued.

Ex-A-1-7

Highly Confidential

EFIHMW00038452

7.    Energy Future Holdings Corp. Senior Notes, issued in November 2004, in the following series:

- 5.550% Series P Senior Notes due November 15, 2014;

- 6.500% Series Q Senior Notes due November 15, 2024; and

- 6.550% Series R Senior Notes due November 15, 2034.

8.    The following Oncor Electric Delivery Company LLC Senior Notes and Debentures:

a)    Oncor Electric Delivery Company LLC Senior Notes, issued in May 2002 in the following series:

- 6.375% Fixed Senior Notes due 2012; and

- 7.000% Fixed Senior Notes due 2032.

b)    Oncor Electric Delivery Company LLC Senior Notes, issued in December 2002 in the following series:

- 6.375% Fixed Senior Notes due 2015; and

- 7.250% Fixed Senior Notes due 2033.

c)    Oncor Electric Delivery Company LLC 7.000% Fixed Debentures due 2022 issued in August 2002.

d)    Oncor Electric Delivery Company LLC Senior Secured Notes, issued in September 2008 in the following series:

- 5.95% Senior Secured Notes due 2013;

- 6.80% Senior Secured Notes due 2018; and

- 7.50% Senior Secured Notes due 2038.

9.    Investor Rights Agreement, dated as of November 5, 2008, by and among Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, Texas Transmission Investment LLC and Energy Future Holdings Corp.

Ex-A-1-8

Highly Confidential

EFIHMW00038453

<u>Exchange Date</u>

1.     Intermediate Holdings has been duly formed and is validly existing and in good standing as a limited liability company under the law of the State of Delaware and has full power and authority to conduct its business as described in the Prospectus.

2.     EFIH Finance has been duly incorporated and is validly existing and in good standing as a corporation under the law of the State of Delaware and has full power and authority to conduct its business as described in the Prospectus.

3.     The Dealer Manager Agreement has been duly authorized, executed and delivered by Intermediate Holdings and EFIH Finance and, assuming that the Dealer Manager Agreement is the valid and legally binding obligation of the Dealer Managers, will constitute a valid and legally binding obligation of each of the Offerors enforceable against each of the Offerors, respectively, in accordance with its terms.

4.     The Supplemental Indenture has been duly authorized, executed and delivered by Intermediate Holdings and, assuming that the Supplemental Indenture is the valid and legally binding obligation of the Trustee, constitutes a valid and legally binding obligation of each of the Company and the Guarantors enforceable against each of the Company and the Guarantors, respectively, in accordance with its terms.

5.     The New EFIH Indenture has been duly authorized, executed and delivered by Intermediate Holdings and EFIH Finance and duly qualified under the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act") and, assuming that the New EFIH Indenture is the valid and legally binding obligation of the EFIH Trustee, constitutes a valid and legally binding obligation of each of Intermediate Holdings and EFIH Finance enforceable against each of Intermediate Holdings and EFIH Finance, respectively, in accordance with its terms.

6.     The EFIH Senior Secured Notes have been duly authorized, executed and issued by Intermediate Holdings and EFIH Finance and, assuming due authentication thereof by the EFIH Trustee and upon exchange of the EFIH Senior Secured Notes for Old Secured Notes in accordance with the Prospectus and the Consent and Letter of Transmittal, will constitute valid and legally binding obligations of each of Intermediate Holdings and EFIH Finance enforceable against each of Intermediate Holdings and EFIH Finance, respectively, in accordance with their terms and entitled to the benefits of the New EFIH Indenture.

7.     The Pledge Agreement has been duly authorized, executed and delivered by Intermediate Holdings and will constitute a valid and legally binding obligation of Intermediate Holdings enforceable against Intermediate Holdings in accordance with its terms.

8.     The Collateral Trust Agreement has been duly authorized, executed and delivered by Intermediate Holdings and, assuming that the Collateral Trust Agreement is the valid and legally binding obligation of the Collateral Trustee, will constitute a valid

Ex-A-1-9

Highly Confidential

EFIHMW00038454

and legally binding obligation of Intermediate Holdings enforceable against Intermediate Holdings in accordance with its terms.

9.    The Pledge Agreement creates a valid security interest in favor of the Collateral Trustee for the benefit of the EFH Trustee, the EFIH Trustee and the holders of the Senior Secured Notes in the collateral described therein in which a security interest may be created under Article 9 of the New York UCC (the "Article 9 Collateral").

10    The statements made in the Prospectus under the captions "Description of the EFIH Notes," and "Proposed Amendments," insofar as they purport to constitute summaries of certain terms of documents referred to therein, constitute accurate summaries of the terms of such documents in all material respects.

11    The issue and sale of the EFIH Senior Secured Notes by Intermediate Holdings and EFIH Finance, the execution, delivery and performance by the Offerors of the Dealer Manager Agreement, the execution and delivery of the New EFIH Indenture by Intermediate Holdings and EFIH Finance and the execution and delivery of the Pledge Agreement and the Collateral Trust Agreement by Intermediate Holdings will not breach or result in a default under any of the agreements or instruments identified on Schedule II hereto, nor will such actions violate the certificate of formation or limited liability company agreement of Intermediate Holdings, the certificate of incorporation or by-laws of EFIH Finance or any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any rule or regulation that has been issued pursuant to any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any order known to us issued pursuant to any U.S. federal or New York state statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law by any court or governmental agency or body having jurisdiction over Intermediate Holdings or any of its properties, except that it is understood that no opinion is given in this paragraph 16 with respect to any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and in each case the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency).

12    No consent, approval, authorization, order, registration or qualification of or with any U.S. federal or New York state governmental agency or body or any Delaware state governmental agency or body acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law or, to our knowledge, any U.S. federal or New York state court or any Delaware state court acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law is required for the issue and sale of the EFIH Senior Secured Notes by Intermediate Holdings and EFIH Finance, compliance by the Offerors with all of the provisions of the Dealer Manager Agreement, compliance by Intermediate Holdings and EFIH Finance

Ex-A-1-10

Highly Confidential

EFIHMW00038455

with all of the provisions of the New EFIH Indenture and compliance by Intermediate Holdings with all of the provisions of the Pledge Agreement and the Collateral Trust Agreement, except for the registration under the Securities Act of the New Senior Secured Notes, and such consents, approvals, authorizations, registrations or qualifications as may be required under state securities or Blue Sky laws in connection with the Exchange Offers and except that it is understood that no opinion is given in this paragraph 17 with respect to any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and in each case the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency).

18.    None of the Offerors is, and after giving effect to the issuance of the Senior Secured Notes in exchange for the Old Secured Notes as described in the Prospectus, none of them will be, an "investment company" within the meaning of and subject to regulation under the Investment Company Act of 1940, as amended.

Ex-A-1-11

Highly Confidential

EFIHMW00038456

**Exhibit A-2**

Opinion of Vinson & Elkins LLP

<u>Commencement Date</u>

We have acted as counsel for Energy Future Holdings Corp., a Texas corporation ("<u>EFH Corp.</u>"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("<u>EFIH</u>"), EFIH Finance Inc., a Delaware corporation ("<u>EFIH Finance</u>," and together with EFIH, the "<u>Offeror</u>"), and Energy Future Competitive Holdings Company, a Texas corporation ("<u>EFCH</u>") in connection with (i) the Offeror's offers (the "<u>Offers</u>") to exchange the notes listed on <u>Schedule I</u> hereto (collectively, the "<u>Old Notes</u>") validly tendered and not validly withdrawn, for 10.000% Senior Secured Notes due 2020 of EFIH and EFIH Finance (the "<u>New EFIH Senior Secured Notes</u>") and (ii) EFH Corp.'s solicitation of consents (the "<u>Solicitation</u>") to the adoption of proposed amendments to the indenture governing the Old Notes. The opinions set forth in this letter are delivered to you pursuant to Section 5(a)(ii) of the Dealer Manager Agreement, dated July 16, 2010 (the "<u>Dealer Manager Agreement</u>"), among EFH Corp., EFIH, EFIH Finance and you, as dealer managers (the "<u>Dealer Managers</u>"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Dealer Manager Agreement.

In rendering the opinions set forth below, we have reviewed copies of the following documents and instruments:

(i)      the Prospectus, dated July 16, 2010, relating to the Offers and the Solicitation (the "<u>Preliminary Prospectus</u>"),

(ii)     the Registration Statement on Form S-4, filed on July 16, 2010, relating to the Offers and the Solicitation,

(iii)    the Dealer Manager Agreement,

(iv)    the organizational documents of each of EFH Corp., EFIH, EFIH Finance and EFCH as listed on <u>Schedule II</u> hereto (such organizational documents herein referred to as the "<u>Organizational Documents</u>"),

(v)     the authorization documents listed on <u>Schedule III</u> hereto,

(vi)    the existence and good standing certificates listed on <u>Schedule IV</u> hereto, and

(vii)   each of the Applicable Contracts (as defined below).

In rendering the opinions set forth herein, we have, with your consent, relied only upon examination of the documents described above. As to any facts material to our opinions, we have made no independent investigation of such facts and have relied, to the extent that we deem such reliance proper, upon statements of public officials and officers or other representatives of the Offeror, EFH Corp. and EFCH and on the representations and warranties set forth in the Dealer Manager Agreement.

Ex-A-2-1

Highly Confidential

EFIHMW00038457

In rendering the opinions expressed below, we have assumed the legal capacity of all natural persons, the genuineness of all signatures, the authenticity of all documents submitted to us as originals, the conformity to authentic original documents of all documents submitted to us as copies, and the accuracy and completeness of all corporate, limited liability company, partnership and other entity records made available to us, which assumptions we have not independently verified. In addition, with your permission and without independent verification, we have made the following assumptions:

(viii)    Each party to the Dealer Manager Agreement (each, a "Transaction Party") is a corporation, partnership, limited liability company or other entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization, except we have not made such assumption as to EFH Corp. with respect to the matters addressed in our opinions in paragraph 1 below.

(ix)    The Dealer Manager Agreement has been duly authorized, executed and delivered by each Transaction Party that is a party thereto, except we have not made such assumption as to EFH Corp. with respect to the matters addressed in our opinions in paragraph 2 below.

(x)    The execution, delivery and performance by each Transaction Party of the Dealer Manager Agreement and the consummation of the transactions contemplated thereby, including the Offers and the Solicitation, do not violate the bylaws or other constituent documents of such Transaction Party, except that we have not made such assumptions as to EFH Corp. with respect to the matters addressed in our opinions in paragraph 4(i) below.

(xi)    The execution, delivery and performance by each Transaction Party of the Dealer Manager Agreement and the consummation of the transactions contemplated thereby, including the Offers and the Solicitation, do not breach or result in a default under any document or instrument binding on it, except that we have not made such assumption as to EFH Corp., EFIH, EFIH Finance and EFCH with respect to any Applicable Contract (as defined below) to the extent of the matters addressed in our opinion in paragraph 4(ii) below.

(xii)    The execution, delivery and performance by each Transaction Party of the Dealer Manager Agreement and the consummation of the transactions contemplated thereby, including the Offers and the Solicitation, do not result in a violation of any provision of any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award applicable to any of them, except that we have not made such assumption as to EFH Corp., EFIH, EFIH Finance and EFCH with respect to Applicable Laws (as defined below) and Applicable Orders (as defined below) to the extent of the matters addressed in our opinions in paragraphs 4(iii) and 4(iv) below.

(xiii)    No authorization, approval, consent, order, license, franchise, permit or other action by, and no notice to or filing with, any nation or government, any state, province, territory or other political subdivision thereof, or any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, including without limitation the Electric Reliability Council of Texas ("Governmental Authority"), or any other third party is required for the due execution, delivery and performance by each Transaction Party of the Dealer Manager Agreement that has not been duly obtained or made and that is not in full

Ex-A-2-2

Highly Confidential

EFIHMW00038458

force and effect, except that we have not made such assumption with respect to Governmental Approvals (as defined below) required to be obtained or taken by EFH Corp., EFIH, EFIH Finance or EFCH or compliance with Texas Electric Utilities Laws (as defined below) as to which we express our opinion in paragraphs 4 and 5 below.

(xiv)    The Dealer Manager Agreement constitutes a valid and binding obligation of each party thereto, enforceable against each such party under the law of the jurisdiction chosen to govern the Dealer Manager Agreement.

(xv)    The laws of any jurisdiction other than the laws that are the subject of this opinion letter do not affect the terms of the Dealer Manager Agreement.

Based upon the foregoing, and subject to the assumptions, qualifications, exceptions and limitations set forth herein, it is our opinion that:

2.    Each of EFH Corp. and EFCH is a corporation validly existing, and each of EFH Corp. and EFCH is in good standing, under the laws of the State of Texas, and has full corporate power and authority to conduct its business as described in the Preliminary Prospectus.

3.    The execution and delivery of the Dealer Manager Agreement by EFH Corp. and the performance of their respective obligations thereunder have been duly authorized by all necessary corporate action of EFH Corp. The Dealer Manager Agreement has been duly executed and delivered by EFH Corp.

4.    The statements made in the Preliminary Prospectus under the heading "Material U.S. Federal Income Tax Considerations," insofar as they purport to constitute summaries of United States federal tax law and regulations or legal conclusions with respect thereto, constitute accurate summaries of the matters described therein in all material respects.

5.    The execution and delivery by EFH Corp., EFIH and EFIH Finance of the Dealer Manager Agreement and the consummation by EFH Corp., EFIH, EFIH Finance and EFCH of the transactions contemplated thereby, including the Offers and the Solicitation, will not:

(i)    violate EFH Corp.'s or EFCH's Organizational Documents,

(ii)    breach or result in a default under any agreement or instrument listed in Part A of Schedule V hereto (collectively, the "Applicable Contracts"),

(iii)    result in any violation by EFH Corp., EFIH, EFIH Finance or EFCH of any Applicable Law (as defined below),

(iv)    result in any violation by EFH Corp., EFIH, EFIH Finance or EFCH of any order, writ, judgment or decree listed in Part B of Schedule V hereto (collectively, the "Applicable Orders"), or

Ex-A-2-3

Highly Confidential

(v)     result in the creation or imposition of any lien on any properties of EFH Corp., EFIH, EFIH Finance or EFCH pursuant to any Applicable Contract, other than as may be contemplated by the Preliminary Prospectus and the Dealer Manager Agreement.

"Applicable Laws" means those laws, rules and regulations of the State of Texas and the rules, orders and regulations adopted thereunder (including protocols, rules and guidelines of the Electric Reliability Council of Texas) and including any order known to us that is issued by any Texas court, that, in our experience, are normally applicable to transactions of the type contemplated by the Preliminary Prospectus and the Dealer Manager Agreement, including, without limitation, Title 2 of the Texas Utilities Code and the rules, orders and regulations adopted thereunder and the final order in PUCT Docket No. 34077 (herein referred to collectively as the "Texas Electric Utilities Laws").  However, the term "Applicable Laws" does not include, and we express no opinion with regard to (i) any state laws, rules or regulations relating to:  (A) pollution or protection of the environment; (B) zoning, land use, building or construction; (C) occupational safety and health or other similar matters; (D) labor, employee rights and benefits; (E) the regulation of utilities, except as to the Texas Electric Utilities Laws; (F) antitrust and trade regulation; (G) tax; (H) securities, including without limitation Texas state securities laws, rules and regulations; (I) corrupt practices; and (J) copyrights, patents and trademarks, and (ii) any laws, rules or regulations of any county, municipality or similar political subdivision or any agency or instrumentality thereof.  For the avoidance of doubt, the term "Applicable Laws" does not include, and we express no opinion with regard to, the laws, rules and regulations of the federal government of the United States (except as provided in paragraphs 6, 7 and 8).

6.      No Governmental Approval that has not been obtained or taken and is not in full force and effect, is required to be obtained or taken by EFIH or EFIH Finance for the issuance and sale of the New EFIH Senior Secured Notes by EFIH and EFIH Finance or the performance by EFH Corp., EFIH or EFIH Finance of their respective obligations under the Dealer Manager Agreement.

"Governmental Approvals" means any consent, approval, license, permit, registration, certification, authorization or validation of, or filing, final order by, recording or registration with, any Governmental Authority pursuant to any Applicable Laws.

7.      If conducted solely in accordance with the terms and conditions set forth in the Preliminary Prospectus and the Letter of Transmittal in respect of the Offers, the terms and provisions of the Offers will comply in all material respects with the requirements of the Securities Act of 1933, as amended (the "Securities Act") and the Securities Exchange Act of 1934, as amended (the "Exchange Act").

8.      The Preliminary Prospectus, as of its date, appears on its face to comply as to form in all material respects with the requirements of the Securities Act.

Ex-A-2-4

Highly Confidential

9.    The Registration Statement, as of the Commencement Date, appears on its face to comply as to form in all material respects with the requirements of the Securities Act.

10.    The execution and delivery of the Old Notes Supplemental Indenture by EFH Corp. and EFCH and the performance of their respective obligations thereunder have been duly authorized by all necessary corporate action by EFH Corp. and EFCH.

The opinions set forth above are subject to the following qualifications and exceptions:

A.    The opinions expressed herein are limited to the matters discussed above; no opinion is implied or may be inferred beyond such matters.

B.    In rendering our opinions in paragraphs 4(iii), 4(iv) and 5 above, we have assumed, with your permission and without independent verification, that (i) neither the Offeror, EFH Corp. nor EFCH is an "electric utility" as such term is defined in Section 31.002(6) of the Texas Utilities Code; (ii) each entity owning in excess of a 4.5% direct or indirect equity interest in the Offeror, EFH Corp. or EFCH either (A) owns no interest in electric generating facilities that generate electricity that is offered for sale in the State of Texas or (B) is a broker or dealer registered under the Exchange Act or a bank or insurance company, as defined in the Exchange Act; (iii) no entity owning any interest in electric generating facilities that generate electricity that is offered for sale in the State of Texas, which acquired any direct or indirect interest in the Offeror, EFH Corp. or EFCH either has the ability to take, or has taken, any action that could reasonably be perceived to exert substantial influence or control over the policies and actions of the Offeror, EFH Corp. or EFCH, or any of the Offeror's, EFH Corp.'s or EFCH's subsidiaries, prior to acquiring a direct or indirect equity interest in the Offeror, EFH Corp. or EFCH; and (iv) all sales of electricity by the Offeror, EFH Corp. and EFCH will be to wholesale customers located within the Electric Reliability Council of Texas.  Due to the absence of controlling judicial precedent, our opinions in paragraphs 4(iii) and 5 above are necessarily a reasoned application of general legal principles, rules of construction and legal precedent that we believe may be persuasive, but not necessarily controlling.  Accordingly, our opinions are not intended as a guaranty as to what position the Public Utility Commission of Texas might take or as to what a particular court would actually hold; rather, our opinion is an expression of our professional judgment as to the decision a court should reach if the issue were properly presented to it and the court followed what we believe to be the applicable legal principles under existing statutory and judicial precedent.  In addition, Governmental Approvals may be required to foreclose on the collateral securing the New EFIH Senior Secured Notes, or otherwise to assume control of Oncor Electric Delivery Holdings Company LLC.

C.    With respect to our opinion set forth in paragraph 1 above, we have relied solely on the certificates set forth on Schedule IV hereto.

Ex-A-2-5

Highly Confidential

EFIHMW00038461

D.    In rendering the opinion expressed in paragraphs 4(ii) and 4(v) above:  (i) we have not reviewed, and express no opinion with respect to, documents other than the Applicable Contracts, irrespective of whether they secure, support or otherwise relate to or are referred to in the Applicable Contracts or might under certain circumstances result in an event of default or require early payment under any of the Applicable Contracts; (ii) we have made no examination of, and express no opinion with respect to, any financial, accounting or similar covenant or provision contained in the Applicable Contracts to the extent that any such covenant or provision would require a determination as to any financial or accounting matters; (iii) we express no opinion as to any breach of any confidentiality provision contained in any Applicable Contract caused by the Dealer Manager Agreement or the Offeror's, EFH Corp.'s or EFCH's actions pursuant thereto or in contemplation thereof; and (iv) our opinions in paragraphs 4(ii) and 4(v) above are limited to the laws of the State of Texas, except with respect to the agreements and instruments listed in Section 6 of Part A of Schedule V hereto, which are limited to the Limited Liability Company Act of the State of Delaware.  Some of the Applicable Contracts provide that they are governed by other governing law.  In every case, we have assumed that a court would enforce the Applicable Contracts as written, and we have limited our opinion to matters readily ascertainable from the face of the Applicable Contracts.

E.    In rendering the opinions expressed in paragraphs 7 and 8 above, we do not express any view as to the financial statements and other information of an accounting or financial nature included in or omitted from the Preliminary Prospectus or the Registration Statement, nor do we, in either case, express any view as to any management's report on the effectiveness of internal control over financial reporting.

This opinion has been prepared in accordance with the customary practice of lawyers who regularly give, and lawyers who regularly advise recipients regarding, opinions of this kind.

We express no opinion as to the laws of any jurisdiction other than Applicable Laws (except as provided in paragraphs 6, 7 and 8 and, with respect to paragraphs 4(ii) and 4(v), paragraph D(iv)).  We express no opinion as to the federal laws of the United States (except as provided in paragraphs 6, 7 and 8).  We call to your attention that certain of the documents that we have reviewed are governed by laws of jurisdictions other than those described above, and we express no opinion as to the effect of any such other laws on the opinions expressed herein.

This letter is rendered as of the date set forth above.  We expressly disclaim any obligation to update this letter after such date.

This letter is given solely for your benefit in connection with the transactions contemplated by the Preliminary Prospectus and may not be furnished to, or relied upon by, any other person or for any other purpose without our prior written consent.

Very truly yours,

Ex-A-2-6

Highly Confidential

SCHEDULE I

| Outstanding Principal Amount (in thousands) | Issuer | Title of Securities |
|---|---|---|
| $1,787,000 | Energy Future Holdings Corp. | 10.875% Senior Notes due 2017 |
| $2,705,000 | Energy Future Holdings Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 |

Ex-A-2-7

Highly Confidential

EFIHMW00038463

SCHEDULE II

Organizational Documents

11.    Restated Certificate of Formation of Energy Future Holdings Corp. dated October 10, 2007.

12.    Amended and Restated By-Laws of Energy Future Holdings Corp. dated May 15, 2008.

13.    Certificate of Formation of Energy Future Intermediate Holding Company LLC dated June 14, 2006, as amended.

14.    Amended and Restated Limited Liability Company Agreement of Energy Future Intermediate Holding Company LLC dated July 8, 2008.

15.    Certificate of Incorporation of EFIH Finance Inc. dated September 1, 2009.

16.    Bylaws of EFIH Finance Inc.

17.    Second Amended and Restated Articles of Incorporation of Energy Future Competitive Holdings Company dated October 5, 2007.

18.    Restated Bylaws of TXU US Holdings Company (now known as Energy Future Competitive Holdings Company) dated January 1, 2002.

Ex-A-2-8

Highly Confidential

EFIHMW00038464

<u>Exchange Date</u>

1.     Each of EFH Corp. and EFCH is a corporation validly existing, and each of EFH Corp. and EFCH is in good standing, under the laws of the State of Texas, and has full corporate power and authority to conduct its business as described in the Preliminary Prospectus and the Prospectus.

2.     The execution and delivery of the Dealer Manager Agreement by EFH Corp. and the performance of its obligations thereunder have been duly authorized by all necessary corporate action of EFH Corp.  The Dealer Manager Agreement has been duly executed and delivered by EFH Corp.

3.     The execution and delivery of the Supplemental Indenture by EFH Corp. and EFCH and the performance of their respective obligations thereunder have been duly authorized by all necessary corporate action of EFH Corp.  The Supplemental Indenture has been duly executed and delivered by EFH Corp. **[Note: Delete if consent is not obtained.]**

4.     The statements made in each of the Preliminary Prospectus and the Prospectus under the heading "Certain U.S. Federal Income Tax Considerations," insofar as they purport to constitute summaries of United States federal tax law and regulations or legal conclusions with respect thereto, constitute accurate summaries of the matters described therein in all material respects.

5.     The execution and delivery by EFH Corp., EFIH, EFIH Finance and EFCH of the Transaction Documents to which it is a party and the consummation by EFH Corp., EFIH, EFIH Finance and EFCH of the transactions contemplated thereby, including the Offers and the Solicitations, will not:

    (i)     violate EFH Corp.'s or EFCH's Organizational Documents,

    (ii)    breach or result in a default under any agreement or instrument listed in Part A of <u>Schedule VI</u> hereto (collectively, the "<u>Applicable Contracts</u>"),

    (iii)   result in any violation by EFH Corp., EFIH, EFIH Finance or EFCH of any Applicable Law (as defined below),

    (iv)    result in any violation by EFH Corp., EFIH, EFIH Finance or EFCH of any order, writ, judgment or decree listed in Part B of <u>Schedule VI</u> hereto (collectively, the "<u>Applicable Orders</u>"), or

    (v)     result in the creation or imposition of any lien on any properties of EFH Corp., EFIH, EFIH Finance or EFCH pursuant to any Applicable Contract, other than as may be contemplated by the Preliminary Prospectus, the Prospectus and the Transaction Documents.

Ex-A-2-9

EFIHMW00038465

"Applicable Laws" means those laws, rules and regulations of the State of Texas and the rules, orders and regulations adopted thereunder (including protocols, rules and guidelines of the Electric Reliability Council of Texas) and including any order known to us that is issued by any Texas court, that, in our experience, are normally applicable to transactions of the type contemplated by the Preliminary Prospectus, the Prospectus and the Transaction Documents, including, without limitation, Title 2 of the Texas Utilities Code and the rules, orders and regulations adopted thereunder and the final order in PUCT Docket No. 34077 (herein referred to collectively as the "Texas Electric Utilities Laws"). However, the term "Applicable Laws" does not include, and we express no opinion with regard to (i) any state laws, rules or regulations relating to:  (A) pollution or protection of the environment; (B) zoning, land use, building or construction; (C) occupational safety and health or other similar matters; (D) labor, employee rights and benefits; (E) the regulation of utilities, except as to the Texas Electric Utilities Laws; (F) antitrust and trade regulation; (G) tax; (H) securities, including without limitation Texas state securities laws, rules and regulations; (I) corrupt practices; and (J) copyrights, patents and trademarks, and (ii) any laws, rules or regulations of any county, municipality or similar political subdivision or any agency or instrumentality thereof.  For the avoidance of doubt, the term "Applicable Laws" does not include, and we express no opinion with regard to, the laws, rules and regulations of the federal government of the United States (except as provided in paragraphs 12, 13 and 14).

6.    No Governmental Approval that has not been obtained or taken and is not in full force and effect, is required to be obtained or taken by EFH Corp., EFIH, EFIH Finance or EFCH for the issuance and sale of the New EFIH Senior Secured Notes by EFIH and EFIH Finance or the performance by EFH Corp., EFIH, EFIH Finance or EFCH of their respective obligations under each Transaction Document, as applicable.

"Governmental Approvals" means any consent, approval, license, permit, registration, certification, authorization or validation of, or filing, final order by, recording or registration with, any Governmental Authority pursuant to any Applicable Laws.

7.    If conducted solely in accordance with the terms and conditions set forth in the Preliminary Prospectus, the Prospectus and the Letter of Transmittal in respect of the Offers, the terms and provisions of the Offers will comply in all material respects with the requirements of the Securities Act of 1933, as amended (the "Securities Act") and the Securities Exchange Act of 1934, as amended (the "Exchange Act").

8.    Each of the Preliminary Prospectus and the Prospectus, as of its date, appears on its face to comply as to form in all material respect with the requirements of the Securities Act.

Ex-A-2-10

Highly Confidential

9.  The Registration Statement became effective and to the best of our knowledge, no stop order suspending the effectiveness of the Registration Statements has been issued.  The Registration Statement, as of the Commencement Date and as of the Effective Date, appears on its face to comply as to form in all material respect with the requirements of the Securities Act.

Ex-A-2-11

Negative Assurance Letter of Vinson & Elkins LLP

Commencement Date

We have acted as counsel for Energy Future Holdings Corp., a Texas corporation ("EFH Corp."), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), EFIH Finance Inc., a Delaware corporation ("EFIH Finance," and together with EFIH, the "Offeror"), and Energy Future Competitive Holdings Company ("EFCH") in connection with (i) the Offeror's offer to exchange the notes listed on Schedule I (collectively, the "Old Notes") hereto validly tendered and not validly withdrawn, for 10.000% Senior Secured Notes due 2020 of the Offeror (the "New EFIH Senior Secured Notes") and (ii) EFH Corp.'s solicitation of consents to the adoption of proposed amendments to the indentures governing the Old Notes. The opinions set forth in this letter are delivered to you pursuant to Section 5(a)(ii) of the Dealer Manager Agreement, dated July 16, 2010 (the "Dealer Manager Agreement"), among EFH Corp., EFIH, EFIH Finance and you, as dealer managers (the "Dealer Managers"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Dealer Manager Agreement.

We have participated in conferences with representatives and officers of the Offeror, with representatives of the Offeror's independent registered public accountants, and with representatives of, and counsel to, the Dealer Managers, at which conferences the contents of the Registration Statement, the Preliminary Prospectus, the other Offer Material and related matters were discussed, and based on the participation described above, no facts have come to our attention that have caused us to believe that (i) the Preliminary Prospectus, as of its date, contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; or (ii) the Offer Material, as of the date hereof, contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading. Notwithstanding the foregoing, we express no view, belief or comment with respect to the form, accuracy, completeness or fairness of the financial statements, including the related notes and schedules thereto and the auditors' reports thereon or other financial or accounting information contained or incorporated by reference therein or excluded therefrom.

This letter speaks as of the dates referenced in the immediately preceding paragraph and we undertake no, and hereby disclaim any, obligation to advise you regarding any changes subsequent to the date hereof in, or otherwise communicate with you with respect to, the matters addressed herein.

The statements made herein are solely to your benefit in connection with the above-described transaction and may not be relied upon by you for any other purpose and may not be used or relied upon for any purpose by any other person without our prior written consent. Except for the use permitted herein, this letter is not to be quoted or reproduced in whole or in

Ex-A-2-12

Highly Confidential

EFIHMW00038468

part or otherwise referred to in any manner nor is it to be filed with any governmental agency or delivered to any other person without our prior written consent.

Very truly yours,

Ex-A-2-13

Highly Confidential

EFIHMW00038469

SCHEDULE I

| Outstanding Principal Amount (in thousands) | Issuer | Title of Securities |
|---|---|---|
| $1,787,000 | Energy Future Holdings Corp. | 10.875% Senior Notes due 2017 |
| $2,705,000 | Energy Future Holdings Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 |

Ex-A-2-14

Highly Confidential

EFIHMW00038470

Early Tender Date

We have participated in conferences with representatives and officers of the Offerors, with representatives of the Offerors' independent registered public accountants, and with representatives of, and counsel to, the Dealer Managers, at which conferences the contents of the Registration Statement, the Preliminary Prospectus, the other Offer Material and related matters were discussed, and based on the participation described above, no facts have come to our attention that have caused us to believe that (i) the Preliminary Prospectus, as of its date or as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; or (ii) the Offer Material, as of the date hereof, contains any untrue statement of a material fact or omits to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.  Notwithstanding the foregoing, we express no view, belief or comment with respect to the form, accuracy, completeness or fairness of the financial statements, including the related notes and schedules thereto and the auditors' reports thereon or other financial or accounting information contained or incorporated by reference therein or excluded therefrom.

Ex-A-2-15

EFIHMW00038471

<u>Exchange Date</u>

We have participated in conferences with representatives and officers of the Offerors, with representatives of the Offerors' independent registered public accountants, and with representatives of, and counsel to, the Dealer Managers, at which conferences the contents of the Registration Statement, the Preliminary Prospectus, the other Offer Material and related matters were discussed, and based on the participation described above, no facts have come to our attention that have caused us to believe that (i) the Registration Statement, as of the Effective Date, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading; (ii) the Prospectus, as of its date or the date hereof, contained any untrue statement of a material fact or omitted to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; or (iii) the Offer Material, as of the date hereof, contained or contains any untrue statement of a material fact or omitted or omits to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.  Notwithstanding the foregoing, we express no view, belief or comment with respect to the form, accuracy, completeness or fairness of the financial statements, including the related notes and schedules thereto and the auditors' reports thereon or other financial or accounting information contained or incorporated by reference therein or excluded therefrom.

Ex-A-2-16

Highly Confidential

Exhibit A-3

Opinion of Morgan, Lewis & Bockius LLP

Commencement Date

Ladies and Gentlemen:

We have acted as special nuclear counsel for Energy Future Holdings Corp., a Texas corporation ("EFH Corp."), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), EFIH Finance, Inc., a Delaware corporation ("EFIH Finance," and together with EFIH, the "Offeror"), and Energy Future Competitive Holdings Company, a Texas corporation ("EFCH") in connection with (i) the Offeror's offers (the "Offers") to exchange the notes listed on Schedule I hereto (collectively, the "Old Notes") validly tendered and not validly withdrawn, for 10.000% Senior Secured Notes due 2020 of EFIH and EFIH Finance (the "New EFIH Senior Secured Notes") and (ii) EFH Corp.'s solicitation of consents (the "Solicitation") to the adoption of proposed amendments to the indenture governing the Old Notes. The opinions set forth in this letter are delivered to you pursuant to Section 5(a)(iii) of the Dealer Manager Agreement, dated July 16, 2010 (the "Dealer Manager Agreement"), among EFH Corp., EFIH, EFIH Finance and you, as dealer managers (the "Dealer Managers"). Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Dealer Manager Agreement.

In rendering the opinions set forth below, we have reviewed copies of the following documents and instruments:

(i) the Prospectus dated July 16, 2010, relating to the Offers and the Solicitations (the "Preliminary Prospectus"),

(ii) the Registration Statement on Form S-4, filed on July 16, 2010, related to the Offers and the Solicitations, and

(iii) the Dealer Manager Agreement.

In rendering the opinions set forth herein, we have, with your consent, relied only upon examination of the documents described above. As to any facts material to our opinions, we have made no independent investigation of such facts and have relied, to the extent that we deem such reliance proper, upon statements of public officials and officers or other representatives of the Offeror, EFH Corp. and EFCH and on the representations and warranties set forth in the Dealer Manager Agreement.

In rendering the opinions expressed below, we have assumed the legal capacity of all natural persons, the genuineness of all signatures, the authenticity of all documents submitted to us as originals, the conformity to authentic original documents of all documents submitted to us as copies, and the accuracy and completeness of all corporate, limited liability company, partnership and other entity records made available to us, which assumptions we have not independently verified.

Ex-A-3-1

Highly Confidential                                                    EFIHMW00038473

Based upon the foregoing, and subject to the assumptions, qualifications, exceptions and limitations set forth herein, it is our opinion that:

10. The execution and delivery by EFH Corp., EFIH and EFIH Finance of the Dealer Manager Agreement and the consummation by EFH Corp., EFIH and EFIH Finance of the transactions contemplated thereby, including the Offers and the Solicitation, will not:

    (i)    result in any violation by EFH Corp., EFIH or EFIH Finance of any Applicable Nuclear Law (as defined below), or

    (ii)    result in any violation by EFH Corp., EFIH or EFIH Finance of any order, writ, judgment or decree known to us issued pursuant to Applicable Nuclear Laws.

"Applicable Nuclear Laws" means the Atomic Energy Act of 1954, as amended, and the related rules, regulations or orders of the U.S. Nuclear Regulatory Commission ("NRC").

11. No NRC Approval is required to be obtained or taken by EFH Corp., EFIH or EFIH Finance for the issuance and sale of the New EFIH Senior Secured Notes by EFIH and EFIH Finance or the performance by EFH Corp., EFIH, or EFIH Finance of their respective obligations under the Dealer Manager Agreement.

"NRC Approvals" means any consent, approval, license, permit, registration, certification, authorization or validation of, or filing, recording or registration with, the NRC pursuant to any Applicable Nuclear Laws.

The opinions expressed herein are limited to the matters discussed above; no opinion is implied or may be inferred beyond such matters.

This opinion has been prepared in accordance with the customary practice of lawyers who regularly give, and lawyers who regularly advise recipients regarding, opinions of this kind.

We express no opinion as to the laws of any jurisdiction other than Applicable Nuclear Laws.

This letter is rendered as of the date set forth above. We expressly disclaim any obligation to update this letter after such date.

This letter is given solely for your benefit in connection with the transactions contemplated by the Preliminary Prospectus and may not be furnished to, or relied upon by, any other person or for any other purpose without our prior written consent.

Sincerely,

Morgan, Lewis & Bockius LLP

Ex-A-3-2

Highly Confidential

Exchange Date

12. The execution and delivery by EFH Corp., EFIH and EFIH Finance of the Transaction Documents to which it is a party and the consummation by EFH Corp., EFIH and EFIH Finance of the transactions contemplated thereby, including the Offers and the Solicitations, will not:

(i) result in any violation by EFH Corp., EFIH or EFIH Finance of any Applicable Nuclear Laws (as defined below),

(ii) result in any violation by EFH Corp., EFIH or EFIH Finance of any order, writ, judgment or decree known to us issued under Applicable Nuclear Laws.

"Applicable Nuclear Laws" means the Atomic Energy Act of 1954, as amended, and the related rules, regulations or orders of the U.S. Nuclear Regulatory Commission ("NRC").

13. No NRC Approval is required to be obtained or taken by EFH Corp., EFIH, EFIH Finance or EFCH for the issuance and sale of the New EFIH Senior Secured Notes by EFIH and EFIH Finance or the performance by EFH Corp., EFIH, EFIH Finance or EFCH of their respective obligations under each Transaction Document, as applicable.

"NRC Approvals" means any consent, approval, license, permit, registration, certification, authorization or validation of, or filing, recording or registration with, the NRC pursuant to any Applicable Nuclear Laws.

Ex-A-3-3

Highly Confidential

EFIHMW00038475

**Exhibit A-4**

Opinion of Andrew Wright

<u>Commencement Date</u>

I am the Vice President and Associate General Counsel of EFH Corporate Services Company, a wholly-owned subsidiary of Energy Future Holdings Corp. ("<u>EFH Corp.</u>"). As such, I have acted as counsel to EFH Corp., Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>") and EFIH Finance Inc. ("<u>EFIH Finance</u>," and together with EFIH, the "<u>Offeror</u>") in connection with the offers by the Offeror to exchange the notes listed on <u>Schedule I</u> hereto (collectively, the "<u>Old Notes</u>") validly tendered and not validly withdrawn, for 10.000% Senior Secured Notes due 2020 of EFIH and EFIH Finance (the "<u>New EFIH Senior Secured Notes</u>") and EFH Corp.'s solicitation of consents to the adoption of proposed amendments to the indenture governing the Old Notes. Capitalized terms used in this opinion and not defined herein shall have the respective meanings assigned thereto in the Dealer Manager Agreement, dated July 15, 2010 among EFH Corp., EFIH, EFIH Finance and you, as dealer managers (the "<u>Dealer Manager Agreement</u>"). This opinion is delivered to you pursuant to Section 5(a)(iv) of the Dealer Manager Agreement.

I have examined the Prospectus dated July 16, 2010 (the "<u>Preliminary Prospectus</u>").

Based upon, and subject to, the limitations and qualifications stated below, I am of the opinion that, as of the date hereof, other than as disclosed in the Preliminary Prospectus, (i) to my knowledge, there is no action, suit or proceeding now pending before or by any court, arbitrator or governmental agency, body or official to which EFH Corp. or the Offeror is a party or to which the business, assets or property of EFH Corp. or the Offeror is subject, and (ii) to my knowledge, no action, suit or proceeding is currently threatened in writing to which EFH Corp. or the Offeror would be a party or to which the business, assets or property of EFH Corp. or the Offeror would be subject, that in each case of (i) or (ii) could reasonably be expected to result in a Material Adverse Effect or could reasonably be expected to result in a material adverse effect on the performance by EFIH, EFIH and EFIH Finance of the Dealer Manager Agreement and the Transaction Documents, the issuance of the New EFIH Senior Secured Notes or the consummation of any of the transactions contemplated thereby or described in the Preliminary Prospectus (exclusive of any amendment or supplement thereto).

I am a member of the Bar of the State of Texas. I do not express any opinion herein concerning any law other than the law of the State of Texas and the federal law of the United States. I have relied as to various questions of fact upon representations and warranties made by EFH Corp. and the Offeror contained in the Dealer Manager Agreement and upon certificates of officers of EFH Corp. and the Offeror furnished pursuant to the Dealer Manager Agreement. In addition, I have examined, and have relied as to matters of fact upon, originals, or duplicates or certified or conformed copies, of such corporate records, agreements, documents and other instruments and such certificates or comparable documents of public officials and of officers and representatives of EFH Corp. and the Offeror and have made such other

Ex-A-4-1

EFIHMW00038476

investigations as I have deemed relevant and necessary in connection with the opinion hereinafter set forth.

       This opinion is limited to the laws and facts in effect on the date hereof.  I disclaim any obligation to advise you of facts, circumstances, events or developments that hereafter may be brought to my attention and that might alter, affect or modify the opinion expressed herein.

       This opinion is given to you solely for the use of the Dealer Managers in connection with the Dealer Manager Agreement and the transactions contemplated therein and may not be relied upon by (or delivered to) any other person.

       Sincerely,


Andrew M. Wright
Vice President and Associate General Counsel
EFH Corporate Services Company

Ex-A-4-2

Highly Confidential

EFIHMW00038477

SCHEDULE I

| Outstanding Principal Amount (in thousands) | Issuer | Title of Securities |
|---|---|---|
| $1,787,000 | Energy Future Holdings Corp. | 10.875% Senior Notes due 2017 |
| $2,705,000 | Energy Future Holdings Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 |

Ex-A-4-3

Highly Confidential

EFIHMW00038478

Exchange Date

Based upon, and subject to, the limitations and qualifications stated below, I am of the opinion that, as of the date hereof, other than as disclosed in the Preliminary Prospectus and the Prospectus, (i) to my knowledge, there is no action, suit or proceeding now pending before or by any court, arbitrator or governmental agency, body or official to which EFH, EFIH and EFIH Finance or EFCH is a party or to which the business, assets or property of EFH, EFIH and EFIH Finance or EFCH is subject, and (ii) to my knowledge, no action, suit or proceeding is currently threatened in writing to which EFH, EFIH and EFIH Finance or EFCH would be a party or to which the business, assets or property of EFH, EFIH and EFIH Finance or EFCH would be subject, that in each case of (i) or (ii) could reasonably be expected to result in a Material Adverse Effect or could reasonably be expected to result in a material adverse effect on the performance by EFH, EFIH and EFIH Finance of the Dealer Manager Agreement and the Transaction Documents, the issuance of the New EFIH Senior Secured Notes or the consummation of any of the transactions contemplated thereby or described in the Preliminary Prospectus and the Prospectus (exclusive of any amendment or supplement thereto).

Ex-A-4-4

Highly Confidential                                                    EFIHMW00038479