

| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | MWRPRFRS12 10.4.6 | MWRpf_rend | 29-Jul-2010 16:22 EST | 14221 TX 1 | 5* |
|---|---|---|---|---|---|---|
| FORM 8-K | | | DAL | | HTM ESS | 0C |
| | | | | | Page 1 of 1 | |

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

## Form 8-K

### Current Report

Pursuant to Section 13 or 15(d) of the
Securities Exchange Act of 1934

Date of Report (date of earliest event reported) – July 29, 2010

## Energy Future Holdings Corp.
(Exact name of registrant as specified in its charter)

| Texas | 1-12833 | 75-2669310 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

## Energy Future Competitive Holdings Company
(Exact name of registrant as specified in its charter)

| Texas | 1-34543 | 75-1837355 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

## Energy Future Intermediate Holding Company LLC
(Exact name of registrant as specified in its charter)

| Texas | 1-34544 | 26-1191638 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

Energy Plaza, 1601 Bryan Street, Dallas, Texas 75201
(Address of principal executive offices, including zip code)

214-812-4600
(Registrants' telephone number, including Area Code)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrants under any of the following provisions (see General Instruction A.2. below):

☒  Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐  Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐  Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐  Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Confidential

EFIHMW00093688

EFIHMW00093688

| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | TX8724AC351094 10.4.6 | MWRacyl0da | 29-Jul-2010 20:52 EST | 14221 TX 2  6* |
|---|---|---|---|---|---|
| FORM 8-K | | | DAL | | HTM ESS  0C |



Page 1 of 1

**Item 1.01    Entry into a Material Definitive Agreement.**

Energy Future Holdings Corp. (the "Company") today announced that it had received, pursuant to the previously announced exchange offers (the "Exchange Offers") of its direct, wholly-owned subsidiary, Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH's direct, wholly-owned subsidiary, EFIH Finance Inc., and the Company's related consent solicitation with respect to the outstanding 11.250%/12.000% Senior Toggle Notes due 2017 and 10.875% Senior Notes due 2017 of EFH Corp. (the "Old Notes"), the requisite consents to adopt certain proposed amendments to the indenture that governs the Old Notes (the "Old Notes Indenture"). The Exchange Offers and consent solicitation are being made upon the terms and subject to the conditions set forth in the preliminary prospectus relating to the Exchange Offers (the "Prospectus") and the related Consent and Letter of Transmittal.

EFH Corp. has been advised by the exchange agent for the Exchange Offers that, as of 5:00 p.m., New York City time, on July 29, 2010 (the "Consent Date"), consents have been validly delivered (and not validly revoked) with respect to $4,469,868,133 aggregate principal amount of outstanding Old Notes, representing approximately 99.51% of the outstanding Old Notes, which Old Notes were validly tendered (and not validly withdrawn) on or before the Consent Date.

In conjunction with receiving the requisite consents, the Company and The Bank of New York Mellon Trust Company, N.A., as trustee, have executed and delivered a supplemental indenture (the "Supplemental Indenture") to the Old Notes Indenture. The Supplemental Indenture gives effect to certain proposed amendments to the Old Notes Indenture, which among other things, eliminate substantially all of the restrictive covenants contained in the Old Notes Indenture and the Old Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations, and modify or eliminate certain other provisions of the Old Notes Indenture. The Supplemental Indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in the Prospectus. Any Old Notes not tendered and accepted for exchange in the Exchange Offers will remain outstanding and the holders thereof will be bound by the terms of the Old Notes Indenture, as supplemented by the Supplemental Indenture. A copy of the Supplemental Indenture is being filed as Exhibit 99.1 to this Form 8-K.

**Item 8.01.   Other Events.**

On July 30, 2010, the Company issued a press release relating to the matters disclosed in this Current Report on Form 8-K. A copy of the press release is filed and attached hereto as Exhibit 99.2 and incorporated herein by reference.

*Forward-Looking Statements*

The information set forth in this report and in Exhibit 99.1 contains forward-looking statements, which are subject to various risks and uncertainties that could cause actual results to differ materially from management's current projections, forecasts, estimates and expectations. All statements, other than statements of historical facts, that are included in this current report that address activities, events or developments that EFH Corp., EFIH or Energy Future Competitive Holdings Company ("EFCH") expect or anticipate to occur in the future (often, but not always, through the use of words or phrases such as "will likely result," "are expected to," "will continue," "is anticipated," "estimated," "projection," "target," "goal," "objective," and "outlook"), are forward-looking statements. Although EFH Corp., EFIH and EFCH believe that in making any such forward-looking statement their expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors in EFH Corp.'s and EFCH's reports filed with the Securities and Exchange Commission (including the sections entitled "Risk Factors," "Management's Discussion and Analysis of Financial Condition and Results of Operations" and "Forward-Looking Statements" contained therein).

**Item 9.01.   Financial Statements and Exhibits.**

| (d) | Exhibit No. | Description |
|---|---|---|
| | 99.1 | Third Supplemental Indenture dated July 29, 2010 |
| | 99.2 | Press Release dated July 30, 2010 |

Confidential

EFIHMW00093689

EFIHMW00093688

**PX 028**
**Page 2 of 14**


| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | TX8724AC351094 10.4.6 | MWRacyl0da | 29-Jul-2010 20:53 EST | 14221 TX 3 | 5* |
| FORM 8-K | START PAGE | | ■ DAL | | HTM ESS | 0C |

Page 1 of 1

# SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, each registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

**ENERGY FUTURE HOLDINGS CORP.**

/s/ STANLEY J. SZLAUDERBACH
Name: **Stanley J. Szlauderbach**
Title: **Senior Vice President and Controller**

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

/s/ STANLEY J. SZLAUDERBACH
Name: **Stanley J. Szlauderbach**
Title: **Senior Vice President and Controller**

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

/s/ STANLEY J. SZLAUDERBACH
Name: **Stanley J. Szlauderbach**
Title: **Senior Vice President and Controller**

Dated: July 30, 2010

Confidential

EFIHMW00093690

EFIHMW00093688

**PX 028**
**Page 3 of 14**



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | MWRPRFRS13 10.4.6 | MWRpf_rend | 29-Jul-2010 16:22 EST | 14221 EX99_1 1 | 3* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

Exhibit 99.1

### THIRD SUPPLEMENTAL INDENTURE

Third Supplemental Indenture (this "Supplemental Indenture"), dated as of July 29, 2010, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as Trustee (the "Trustee").

#### W I T N E S S E T H

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, and the Second Supplemental Indenture, dated as of August 3, 2009 (collectively, the "Indenture"), providing for the issuance of the Issuer's 10.875% Senior Notes due 2017 (the "Senior Cash Pay Notes") and the Issuer's 11.250%/12.000% Senior Toggle Notes due 2017 (together with any increases in the aggregate principal amount thereof, or any Related PIK Notes with respect thereto, in each case in connection with any PIK Payment with respect thereto, and together with the Senior Cash Pay Notes, the "Senior Notes");

WHEREAS, Section 9.02 of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture with the consent of Holders of at least a majority in aggregate principal amount of the Senior Notes then outstanding voting as a single class;

WHEREAS, the Issuer has solicited consents upon the terms and subject to the conditions set forth in the preliminary prospectus dated July 16, 2010 (as the same may be amended or supplemented from time to time, the "Prospectus"), and in the related Consent and Letter of Transmittal, from each Holder of Senior Notes to the amendments to the Indenture set forth in Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight of this Supplemental Indenture (the "Proposed Amendments");

WHEREAS, the Issuer has received the consents from Holders of not less than a majority in aggregate principal amount of the outstanding Senior Notes to effect the Proposed Amendments;

WHEREAS, the Issuer has delivered to the Trustee an Officer's Certificate as well as an Opinion of Counsel to the effect that the execution and delivery of this Supplemental Indenture by the Issuer is authorized or permitted under the Indenture and that all conditions precedent provided for in the Indenture to the execution and delivery of this Supplemental Indenture to be complied with by the Issuer have been complied with;

WHEREAS, the Issuer has been authorized by resolution of its Board of Directors to enter into this Supplemental Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture by the Issuer and to make this Supplemental Indenture valid and binding on the Issuer have been complied with or have been done or performed; and

| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | MWRPRFRS13 10.4.6 | MWRpf_rend | 29-Jul-2010 16:22 EST | 14221 EX99_1 2 | 3* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

WHEREAS, pursuant to Section 9.02 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

## ARTICLE ONE

SECTION 1.01. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

## ARTICLE TWO

SECTION 2.01. AMENDMENT TO THE TABLE OF CONTENTS. The Table of Contents of the Indenture is amended by deleting the titles to Sections 4.05, 4.06, 4.08, 4.09, 4.10, 4.11, 4.12, 4.13, 4.14 and 4.15 and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE THREE

SECTION 3.01. AMENDMENT TO CERTAIN PROVISIONS IN ARTICLE ONE. The following definitions shall be added to Section 1.01 of the Indenture in the appropriate alphabetical location:

""**Permitted Asset Transfer**" means (1) the direct or indirect sale, assignment, transfer, conveyance or other disposition (including by way of merger, wind-up or consolidation) or spin-off by dividend of the Equity Interests of Energy Future Intermediate Holding such that Energy Future Intermediate Holding is no longer a Subsidiary of the Issuer (including without limitation a merger of Energy Future Intermediate Holding with and into the Issuer) or (2) the sale, assignment, transfer, conveyance or other disposition (other than by way of merger, wind-up or consolidation) of all of the Equity Interests of, and other Investments in, Oncor Holdings or another Oncor Subsidiary or successor to Oncor Holdings or an Oncor Subsidiary held by Energy Future Intermediate Holding to a Person (other than an Oncor Subsidiary) that shall continue to hold such Equity Interests and other Investments."

""**TCEH Transfer**" means the sale, transfer, disposition or spin-off (including by way of merger, wind-up or consolidation) of (a) the membership interests or other common Equity Interests of Energy Future Competitive Holdings, TCEH or another Restricted Subsidiary of the Issuer that holds all or substantially all of the assets of TCEH and its Subsidiaries such that Energy Future Competitive Holdings, TCEH or such Restricted Subsidiary ceases to be a Subsidiary of the Issuer or (b) all or substantially all of the assets of TCEH and its Subsidiaries, in each case other than any such transfer to another Restricted Subsidiary."

-2-

Confidential

EFIHMW00093692

EFIHMW00093688

**PX 028**

**Page 5 of 14**



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | MWRPRFRS13 10.4.6 | MWRpf_rend | 29-Jul-2010 16:23 EST | 14221 EX99_1 3 | 3* |
|---|---|---|---|---|---|---|
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

ARTICLE FOUR

SECTION 4.01. AMENDMENT AND ELIMINATION OF CERTAIN PROVISIONS IN ARTICLE FOUR.

(a) Section 4.03 (Reports and Other Information) of the Indenture is amended by deleting the text of such section in its entirety and substituting in lieu thereof the following text: "Notwithstanding that the Issuer may not be subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act or otherwise report on an annual and quarterly basis on forms provided for such annual and quarterly reporting pursuant to rules and regulations promulgated by the SEC, the Issuer shall comply with the reporting obligations set forth under Section 314(a) of the Trust Indenture Act."

(b) Section 4.05 (Taxes) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(c) Section 4.06 (Stay, Extension and Usury Laws) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(d) Section 4.07 (Limitation on Restricted Payments) of the Indenture is amended by deleting the text of such section in its entirety and substituting in lieu thereof the following text: "The Issuer shall not, and shall not permit any of its Restricted Subsidiaries to, pay any cash dividend or make any cash distribution on, or in respect of, the Issuer's Capital Stock or purchase for cash or otherwise acquire for cash any Capital Stock of the Issuer or any direct or indirect parent of the Issuer for the purpose of paying any cash dividend or making any cash distribution to, or acquiring Capital Stock of any direct or indirect parent of the Issuer for cash from, the Investors, or guarantee any Indebtedness of any Affiliate of the Issuer for the purpose of paying such dividend, making such distribution or so acquiring such Capital Stock to or from the Investors unless at the time and after giving effect to such payment, the Consolidated Leverage Ratio of the Issuer would be equal to or less than 7.00 to 1.00."

(e) Section 4.08 (Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(f) Section 4.09 (Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(g) Section 4.10 (Asset Sales) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(h) Section 4.11 (Transactions with Affiliates) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(i) Section 4.12 (Liens) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

-3-

Confidential

EFIHMW00093693

EFIHMW00093688

| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | MWRPRFRS13 10.4.6 | MWRpf_rend | 29-Jul-2010 16:23 EST | 14221 EX99_1 4 | 3* |
|---|---|---|---|---|---|---|
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

(j) Section 4.13 (Corporate Existence) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(k) Section 4.14 (Offer to Repurchase upon Change of Control) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(l) Section 4.15 (Limitation on Guarantees of Indebtedness by Restricted Subsidiaries) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

ARTICLE FIVE

SECTION 5.01. AMENDMENT OF CERTAIN PROVISIONS IN ARTICLE FIVE.

(a) Section 5.01 (Merger, Consolidation, or Sale of All or Substantially All Assets) of the Indenture is amended by deleting the text of clauses (a)(3), (a)(4), (a)(6), (c)(1)(C), (c)(1)(D) and (c)(2) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(b) Section 5.01 of the Indenture is further amended by adding the following new clause (e) to Section 5.01:

"(e) It shall be understood that for purposes of the first sentence of Section 5.01(a) and the first sentence of Section 5.01(c) only, (i) a Permitted Asset Transfer shall not constitute the sale, assignment, transfer, lease, conveyance or disposal of all or substantially all of the assets of the Issuer and, accordingly, the Issuer or any of its Subsidiaries may consummate a Permitted Asset Transfer without being subject to the requirements of this Section 5.01 and (ii) a TCEH Transfer shall constitute the sale, assignment, transfer, lease, conveyance or disposal of all or substantially all of the assets of the Issuer and, accordingly, if the Issuer or any of its Subsidiaries consummates a TCEH Transfer, it must comply with the requirements of this Section 5.01."

ARTICLE SIX

SECTION 6.01. AMENDMENT OF CERTAIN PROVISIONS IN ARTICLE SIX. Section 6.01 (Events of Default) of the Indenture is amended by deleting the text of clauses (a)(3), (a)(4) and (a)(5) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

ARTICLE SEVEN

SECTION 7.01. AMENDMENT OF CERTAIN PROVISIONS IN ARTICLE EIGHT. Section 8.04 (Conditions to Legal or Covenant Defeasance) of the Indenture is amended by deleting the text of clauses (2), (3), (4), (5), (6), (7) and (8) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

-4-

Confidential

EFIHMW00093694

EFIHMW00093688
**PX 028**
**Page 7 of 14**



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | MWRPRFRS13 10.4.6 | MWRpf_rend | 29-Jul-2010 16:23 EST | 14221 EX99_1 5 | 3* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

ARTICLE EIGHT

SECTION 8.01. AMENDMENT OF CERTAIN PROVISIONS IN THE SENIOR NOTES. Paragraph 8 of each Senior Note is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

ARTICLE NINE

SECTION 9.01. REFERENCES TO DELETED OR AMENDED PROVISIONS. Subject to Section 10.01 hereof, all references in the Indenture and any Senior Note, as amended by Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight hereof, to any of the provisions deleted and eliminated or modified as provided herein, or to terms defined in such provisions, shall also be deemed deleted and eliminated or modified, as the case may be, in accordance with the terms of this Supplemental Indenture.

SECTION 9.02. AMENDMENT OF DEFINITIONS. Subject to Section 10.01 hereof, the Indenture and each Senior Note are hereby amended by deleting any definitions from the Indenture and each Senior Note with respect to which all references would be eliminated as a result of amendments to the Indenture and the Senior Notes pursuant to Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight; *provided however*, that, for the avoidance of doubt, all definitions with respect to which any reference remains in the Indenture and/or any Senior Note after giving effect to the amendments to the Indenture and the Senior Notes pursuant to Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight shall not be deleted.

ARTICLE TEN

SECTION 10.01. EFFECTIVENESS OF SUPPLEMENTAL INDENTURE. This Supplemental Indenture shall be effective upon its execution and delivery by the parties hereto. The Amendments set forth in Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight hereof will not become operative until immediately prior to the acceptance for exchange of Senior Notes in accordance with the terms and conditions set forth in the Prospectus.

SECTION 10.02. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

SECTION 10.03. FULL FORCE AND EFFECT. Except as expressly supplemented or amended hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors and the Trustee and every Holder of Senior Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the Indenture, whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

Confidential

EFIHMW00093695

EFIHMW00093688

PX 028
Page 8 of 14


ENERGY FUTURE HOLDIN    RR Donnelley ProFile    MWRPRFRS13 10.4.6    MWRpf_rend    29-Jul-2010 16:23 EST    14221 EX99_1 6    3*
FORM 8-K                                         DAL                                                        HTM ESS    0C
                                                                                                          Page 1 of 1

SECTION 10.04. INDENTURE REMAINS IN FULL FORCE AND EFFECT. Except as supplemented or amended hereby, all provisions in the Indenture shall remain in full force and effect.

SECTION 10.05. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together.

SECTION 10.06. CONFIRMATION AND PRESERVATION OF INDENTURE. The Indenture as supplemented or amended by this Supplemental Indenture is in all respects confirmed and preserved.

SECTION 10.07. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and thereto and their successors hereunder and thereunder and the Holders of the Senior Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Senior Notes.

SECTION 10.08. SUCCESSORS. All agreements of the Issuer and the Guarantors in this Supplemental Indenture shall bind their respective successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

SECTION 10.09. THE TRUSTEE. The Trustee shall not be responsible in any manner for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which are made by the Issuer and the Guarantors.

SECTION 10.10. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

SECTION 10.11. EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

SECTION 10.12. SEVERABILITY. If any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Supplemental Indenture or the Indenture shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-6-



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | NYCFBUAC351228 10.4.6 | MWRwynnm0nd | 30-Jul-2010 01:03 EST | 14221 EX99_1 7 | 4* |
|---|---|---|---|---|---|---|
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

    IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

        **ENERGY FUTURE HOLDINGS CORP.**

By: /s/ Anthony R. Horton
    Name: Anthony R. Horton
    Title: Senior Vice President & Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

By: /s/ Anthony R. Horton
    Name: Anthony R. Horton
    Title: Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: /s/ Anthony R. Horton
    Name: Anthony R. Horton
    Title: Senior Vice President & Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: /s/ Kashif Asgha
    Name: Kashif Asgha
    Title: Senior Associate

[Signature Page to Third Supplemental Indenture]

Confidential

EFIHMW00093697

EFIHMW00093688

**PX 028**
**Page 10 of 14**

ENERGY FUTURE HOLDIN   RR Donnelley ProFile   NY8690AC386214 10.4.6   MWRwebsi0nd   30-Jul-2010 01:42 EST   14221 EX99_2 1   5*
FORM 8-K   DAL   image002   HTM ESS   0C
Page 1 of 1

Exhibit 99.2

# News Release



**FOR IMMEDIATE RELEASE**

## Energy Future Holdings Corp. and
## Energy Future Intermediate Holding Company
## Announce Early Tender Results in Exchange Offers and
## Receipt of Requisite Consents in Related Consent Solicitation

**DALLAS – July 30, 2010** – Energy Future Holdings Corp. ("EFH Corp.") today announced the results, as of 5:00 p.m., New York City time, on July 29, 2010 (the "Early Tender Date"), of the offers (the "Exchange Offers") of its direct, wholly-owned subsidiary, Energy Future Intermediate Holding Company LLC ("EFIH"), and EFIH's direct, wholly-owned subsidiary, EFIH Finance Inc. ("EFIH Finance" and, together with EFIH, the "Offerors") to exchange the outstanding 11.250%/12.000% Senior Toggle Notes due 2017 and 10.875% Senior Notes due 2017 of EFH Corp. (collectively, the "Old Notes") for up to $2.18 billion aggregate principal amount (subject to rounding) of 10.000% Senior Secured Notes due 2020 to be issued by the Offerors (the "New Senior Secured Notes") and an aggregate of $500 million in cash (subject to rounding), upon the terms and subject to the conditions set forth in the preliminary prospectus relating to the Exchange Offers (the "Prospectus") and the related Consent and Letter of Transmittal.

EFH Corp. also announced that as of 5:00 p.m., New York City time, on July 29, 2010 (the "Consent Date"), with respect to its concurrent solicitation (the "Consent Solicitation") of consents (the "Consents") from holders of the Old Notes to certain proposed amendments (the "Proposed Amendments") to the indenture that governs the Old Notes (the "Old Notes Indenture"), that EFH Corp. had received the requisite Consents to adopt the Proposed Amendments. As discussed below, the supplemental indenture relating to the Proposed Amendments has been executed and delivered and Consents delivered pursuant to the Consent Solicitation may no longer be revoked.

1.  **Early Tender and Consent Results**

EFH Corp. was advised by the exchange agent for the Exchange Offers that, as of the Early Tender Date, which is also the Consent Date for the Consent Solicitation, a total of $4,469,868,133 aggregate principal amount of outstanding Old Notes, representing approximately 99.51% of the outstanding Old Notes, were validly tendered (and not validly withdrawn) in the Exchange Offers, and related Consents with respect to such Old Notes were validly delivered (and not validly revoked) in the Consent Solicitation.

Of the tendered Old Notes, as of the Early Tender Date, $1,776,033,000 aggregate principal amount of the outstanding 10.875% Senior Notes due 2017 of EFH Corp. ("Old Cash-Pay Notes") had been validly tendered and not validly withdrawn and $2,693,835,133 aggregate principal amount of the outstanding 11.250%/12.000% Senior Toggle Notes due 2017 of EFH Corp. ("Old Toggle Notes") had been validly tendered and not validly withdrawn.

Therefore, upon the terms and subject to the conditions of the exchange offers, the total consideration payable for each $1,000 principal amount of each issue of Old Notes validly tendered at or prior to the Early Tender Date (and not validly withdrawn prior to the Expiration Date (as defined below)) and accepted for exchange, will consist of:

- in the case of Old Cash-Pay Notes, cash consideration of $146.46 and $638.54 principal amount of New Senior Secured Notes, and

- in the case of Old Toggle Notes, cash consideration of $134.33 and $585.67 principal amount of New Senior Secured Notes.

Page 1 of 4



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | NY8690AC386214 10.4.6 | MWRwebsi0nd | 30-Jul-2010 01:34 EST | 14221 EX99_2 2 | 3* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

The amount of cash and New Senior Secured Notes payable per $1,000 principal amount of Old Notes as set forth above will not be affected by proration and does not include the cash consent payment separately payable in respect to Consents validly delivered and not validly revoked as described below or accrued and unpaid interest, if any, payable with respect to the Old Cash-Pay Notes.

Based on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) as of the Early Tender Date and assuming tendered Old Notes are not withdrawn, the amount of Old Notes accepted for exchange will be prorated. Assuming that no additional Old Notes are validly tendered after the Early Tender Date, no Old Notes that were validly tendered prior to the Early Tender Date are validly withdrawn prior to the Expiration Date, and the Offerors accept for exchange the maximum principal amount of Old Notes allowable under the terms and conditions of the Exchange Offers, the Offerors would accept for exchange in the Exchange Offers approximately 80.4% of the aggregate principal amount of the Old Cash-Pay Notes validly tendered (and not validly withdrawn) prior to the Early Tender Date and approximately 80.4% of the aggregate principal amount of the Old Toggle Notes validly tendered (and not validly withdrawn) prior to the Early Tender Date.

    a.    **Consent Solicitation**

EFH Corp. has received Consents from holders of a majority of the outstanding aggregate principal amount of the Old Notes, voting together as a single class, which constitutes the requisite Consents to adopt the Proposed Amendments. The requisite Consents having been received, EFH Corp. and The Bank of New York Mellon Trust Company, N.A., as trustee, have executed and delivered a supplemental indenture with respect to the Old Notes Indenture to effectuate the Proposed Amendments. The supplemental indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in the Prospectus. EFH Corp. will pay to each holder, in respect of such holder's Old Notes as to which Consents were validly delivered and not validly revoked at or prior to the Consent Date, a cash consent payment of $2.50 per $1,000 principal amount of such Old Notes. Given the amount of Old Notes as to which Consents have been validly delivered (and not validly revoked), the aggregate amount of consent payments payable in relation to the Consent Solicitation is approximately $11,174,670. If all holders of Old Notes had validly delivered (and not validly revoked) Consents to the Proposed Amendments at or prior to the Consent Date, the aggregate maximum amount of consent payments payable would have been approximately $11,230,000.

Any Old Notes not tendered and accepted for exchange in the Exchange Offers, including Old Notes withdrawn from the Exchange Offers after the Consent Date, will remain outstanding and the holders thereof will be bound by the terms of the Old Notes Indenture, as modified by the Proposed Amendments. The Proposed Amendments will, among other things, eliminate substantially all of the restrictive covenants contained in the Old Notes Indenture and the Old Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations, and modify or eliminate certain other provisions. As described in the Prospectus, execution and delivery of the Consent and Letter of Transmittal constitutes an express waiver by a consenting holder of the Old Notes with respect to all claims against EFH Corp., the guarantors of the Old Notes and certain affiliates of EFH Corp. of any breach, default or event of default that may have arisen under the Old Notes Indenture. At this time, EFH Corp. is not aware of any such breaches, defaults or events of default.

    b.    **Consideration Payable in the Exchange Offers**

As described in the Prospectus, the aggregate amount of cash payable in the Exchange Offers, excluding the cash consent payments payable with respect to Consents received at or prior to the Consent Date and accrued and unpaid interest, if any, payable with respect to the Old Cash-Pay Notes, is $500 million (subject to rounding), which aggregate amount may be reduced as a result of proration, if any, or withdrawals after the Early Tender Date of Old Notes that previously were validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. The amount of cash consideration payable for each $1,000 principal amount of Old Notes validly tendered and not validly withdrawn at or prior to the Early Tender Date has been

Page 2 of 4

Confidential

EFIHMW00093699

EFIHMW00093688
**PX 028**
**Page 12 of 14**



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | NY8690AC386214 10.4.6 | MWRwebsi0nd | 30-Jul-2010 01:35 EST | 14221 EX99_2 3 | 3* |
|---|---|---|---|---|---|---|
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

determined as described in the Prospectus and is as set forth above. Based on the reported aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, the percentage of the total consideration payable for each $1,000 principal amount of each issue of Old Notes that consists of cash consideration will be approximately 18.657%.

All holders whose Old Cash-Pay Notes are accepted for exchange will receive an amount equal to accrued and unpaid interest, if any, in cash, from the last applicable interest payment date to, but not including, the settlement date for the Exchange Offers. Holders whose Old Toggle Notes are accepted for exchange will not separately receive any accrued and unpaid payment-in-kind interest with respect to such Old Toggle Notes because the amount of such accrued interest through the anticipated settlement date for the Exchange Offers has been included in determining the consideration being offered in the Exchange Offers for the Old Toggle Notes. If the settlement date occurs later than August 17, 2010, then the consideration being offered in the Exchange Offers for the Old Toggle Notes will be adjusted to account for the additional interest accrued after such date to, but not including, the settlement date.

As described in the Prospectus, the consideration payable (the "Exchange Consideration") with respect to Old Notes that are validly tendered (and not validly withdrawn) after the Early Tender Date and at or prior to the Expiration Date and accepted for exchange will consist solely of New Senior Secured Notes, and no cash consideration will be payable with respect to such Old Notes. The Exchange Consideration payable in respect of each $1,000 principal amount of Old Cash-Pay Notes validly tendered (and not validly withdrawn) after the Early Tender Date and at or prior to the Expiration Date and accepted for exchange will consist of $735.00 principal amount of New Senior Secured Notes. The Exchange Consideration payable in respect of each $1,000 principal amount of Old Toggle Notes validly tendered (and not validly withdrawn) after the Early Tender Date and at or prior to the Expiration Date and accepted for exchange will consist of $670.00 principal amount of New Senior Secured Notes.

2.   **Additional Terms of the Exchange Offers**

As described in the Prospectus, the Exchange Offers will expire at midnight, New York City time, on August 12, 2010 (such time and date, as it may be extended by the Offerors, the "Expiration Date"). The Exchange Offers are subject to the satisfaction or waiver of a number of conditions as set forth in the Prospectus. The terms of the Exchange Offers are described more fully in the Prospectus and the related Consent and Letter of Transmittal. The Exchange Offers constitute a single offer for the Old Notes and the conditions to the Exchange Offers will be satisfied or waived with respect to the offers for both series of Old Notes. Old Notes of both issues will be exchanged if Old Notes of either issue are exchanged.

3.   **Additional Information**

The Offerors filed a registration statement on Form S-4 (as it may be amended from time to time, the "Registration Statement") relating to the Exchange Offers and the Consent Solicitation with the SEC on July 16, 2010. The Registration Statement has not yet become effective and the New Senior Secured Notes may not be issued, nor may the Exchange Offers be completed, until such time as the Registration Statement has been declared effective by the SEC and is not subject to a stop order or any proceedings for that purpose.

We urge holders to read the Prospectus prior to making a decision to tender any of their Old Notes or otherwise make an investment decision with respect to the New Senior Secured Notes because it contains important information regarding the Exchange Offers and the Consent Solicitation.

Copies of the Prospectus, which is contained in the Registration Statement, and the related Consent and Letter of Transmittal are available to all holders of Old Notes free of charge and may be obtained from Global Bondholder Services Corporation, the Information Agent for the Exchange Offers, at (866) 387-1500 (U.S. toll free) or (212) 430-3774. Citi and Goldman, Sachs & Co. are acting as the lead dealer managers in connection with the Exchange Offers and the lead solicitation agents in connection with the Consent Solicitation, and Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities Inc., and Morgan Stanley & Co. Incorporated are also acting as dealer managers and solicitation agents, in

Confidential

EFIHMW00093700

EFIHMW00093688

PX 028
Page 13 of 14



| ENERGY FUTURE HOLDIN | RR Donnelley ProFile | NY8690AC386214 10.4.6 | MWRwebsi0nd | 30-Jul-2010 01:41 EST | 14221 EX99_2 4 | 3* |
| FORM 8-K | | | DAL | | HTM ESS | 0C |

Page 1 of 1

each case, as described in the Prospectus. For additional information, you may contact Citi at (800) 558-3745 (U.S. toll free) or (212) 723-6106 (collect) or Goldman, Sachs & Co. at (800) 828-3182 (U.S. toll free) or (212) 902-5183 (collect). The Prospectus and the related Consent and Letter of Transmittal are also available free of charge at the SEC's website at *www.sec.gov*.

This press release is for informational purposes only and shall not constitute an offer to sell or the solicitation of an offer to buy any security and shall not constitute an offer, solicitation or sale in any jurisdiction in which such offering, solicitation or sale would be unlawful.

\* \* \*

**About EFH Corp.**

EFH Corp. is a Dallas-based holding company engaged in competitive and regulated energy market activities, primarily in Texas. Its portfolio of competitive businesses consists primarily of TXU Energy, a retail electricity provider with more than 2 million customers in Texas, and Luminant, which is engaged largely in power generation and related mining activities, wholesale power marketing and energy trading. Luminant has 18,300 MW of generation in Texas, including 2,300 MW fueled by nuclear power and 8,000 MW fueled by coal. Luminant is also the largest purchaser of wind-generated electricity in Texas and fifth largest in the United States. EFH Corp.'s regulated operations consist of Oncor, which operates the largest electricity distribution and transmission system in Texas with more than three million delivery points, 102,000 miles of distribution conductors and 15,000 miles of transmission lines. While EFH Corp. indirectly owns approximately 80 percent of Oncor, the management of Oncor reports to a separate board with a majority of directors that are independent from EFH Corp.

**Forward Looking Statements**

This press release contains forward-looking statements, which are subject to various risks and uncertainties that could cause actual results to differ materially from management's current projections, forecasts, estimates and expectations. All statements, other than statements of historical facts, that are included in this press release that address activities, events or developments that EFH Corp. or the Offerors expect or anticipate to occur in the future, including the Exchange Offers (often, but not always, through the use of words or phrases such as "will likely result," "are expected to," "will continue," "is anticipated," "estimated," "projection," "target," "goal," "objective," and "outlook"), are forward-looking statements. Although EFH Corp. and the Offerors believe that in making any such forward-looking statement their expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors in the Prospectus and EFH Corp.'s and EFIH's reports filed with the SEC (including the sections entitled "Risk Factors," "Management's Discussion and Analysis of Financial Condition and Results of Operations" and "Forward-Looking Statements" contained therein).

-END-

**Investor Relations:**
Rima Hyder
214.812.5090

Bill Huber
214.812.2480

**Corporate Communications:**
Lisa Singleton
214.812.5049

Confidential

EFIHMW00093701

EFIHMW00093688
**PX 028**
**Page 14 of 14**