# Energy Future Intermediate Holding CO LLC

1601 BRYAN STREET
DALLAS, TX, 75201
214−812−4600

## 424B3

Prospectus filed pursuant to Rule 424(b)(3)
Filed on 8/16/2010

 THOMSON REUTERS

Westlaw. BUSINESS



EFIHMW00051935

EFIHMW00051935

**Table of Contents**

Filed Pursuant to Rule 424(b)(3)
Registration No. 333–168135, 333–168135–01

PROSPECTUS

# ENERGY FUTURE HOLDINGS CORP.
## ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC
### EFIH FINANCE INC.

Offers to Exchange the Outstanding Notes Listed in the Table Below for
Up to $2.18 Billion of 10.000% Senior Secured Notes due 2020
of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc.
and $500 Million in Cash
and
Solicitation of Consents in Respect of the Notes Listed in the Table Below

THE EXCHANGE OFFERS FOR THE OLD NOTES (AS DEFINED BELOW) WILL EXPIRE AT MIDNIGHT, NEW YORK CITY TIME, ON AUGUST 12, 2010 (SUCH TIME AND DATE, AS IT MAY BE EXTENDED, THE "EXPIRATION DATE"). HOLDERS WHO VALIDLY TENDERED OLD NOTES AT OR PRIOR TO 5:00 P.M., NEW YORK CITY TIME, ON JULY 29, 2010 (SUCH TIME AND DATE, THE "EARLY TENDER DATE"), AND DO NOT VALIDLY WITHDRAW SUCH OLD NOTES AT OR PRIOR TO THE EXPIRATION DATE, WILL BE ELIGIBLE TO RECEIVE ADDITIONAL CONSIDERATION AS DESCRIBED BELOW. TENDERS OF OLD NOTES MAY BE VALIDLY WITHDRAWN AT ANY TIME AT OR PRIOR TO THE EXPIRATION DATE.

THE SOLICITATION OF CONSENTS (AS DEFINED BELOW) FOR OLD NOTES EXPIRED AT 5:00 P.M., NEW YORK CITY TIME, ON JULY 29, 2010 (SUCH TIME AND DATE, THE "CONSENT DATE"). CONSENTS MAY NO LONGER BE REVOKED.

Upon the terms and subject to the conditions set forth in this prospectus (as it may be supplemented and amended from time to time, and including the annexes hereto, this "Prospectus") and the related consent and letter of transmittal (as it may be supplemented and amended from time to time, the "Consent and Letter of Transmittal"), including the Maximum Exchange Amount (as defined below) and the prorations, if necessary, resulting therefrom, Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. ("EFIH Finance" and, together with EFIH, the "Offeror") are offering to exchange (the "exchange offers") the outstanding notes listed in the table below (the "Old Notes") for up to $2.18 billion aggregate principal amount of 10.000% Senior Secured Notes due 2020 of the Offeror (the "New EFIH Senior Secured Notes") and, for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, an aggregate of $500 million in cash. The exchange offers are conditioned on at least a majority of the outstanding aggregate principal amount of Old Notes being validly tendered (and not validly withdrawn) at or prior to the Expiration Date.

**You are encouraged to carefully consider all the information included in this Prospectus, including the annexes hereto, in its entirety, in particular "Risk Factors" beginning on page 38.**

EFIH intends to apply to list the New EFIH Senior Secured Notes on the New York Stock Exchange.

None of the Offeror, EFIH Corp., the Dealer Managers (as defined below), the Exchange Agent (as defined below), the Information Agent (as defined below) or any other person is making any recommendation as to whether or not you should tender your Old Notes for exchange in the exchange offers. You must make your own decision whether to tender Old Notes in the exchange offers and, if so, the amount of Old Notes to be tendered.

Neither the Securities and Exchange Commission nor any state securities commission has approved or disapproved of the exchange offers, the New EFIH Senior Secured Notes or the consent solicitation or determined if this Prospectus is truthful or complete. Any representation to the contrary is a criminal offense.

*Lead Dealer Managers and Solicitation Agents*

**Citi**                                                                 **Goldman, Sachs & Co.**

*Co–Dealer Managers and Solicitation Agents*

BofA Merrill Lynch                 Credit Suisse                 J.P. Morgan                     Morgan Stanley

August 12, 2010

EFIHMW00051936

EFIHMW00051935

**Table of Contents**

Upon the terms and subject to the conditions of the exchange offers, including the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, participating holders of Old Notes will be eligible to receive, in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn), the following:

(i) for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange, a principal amount of New EFIH Senior Secured Notes and cash equal, in the aggregate, to the "Total Consideration Amount" as listed in the table below under "Total Consideration Amount if Tendered At or Prior to the Early Tender Date," with the amount of New EFIH Senior Secured Notes (the "Total Notes Consideration") and the amount of cash (the "Total Cash Consideration") comprising the Total Consideration Amount depending on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, as described below, and

(ii) for Old Notes validly tendered (and not validly withdrawn) after the Early Tender Date and at or prior to the Expiration Date and accepted for exchange, New EFIH Senior Secured Notes, referred to as the "Exchange Consideration" as listed in the table below under "Exchange Consideration if Tendered After the Early Tender Date and At or Prior to the Expiration Date." No cash consideration will be payable with respect to Old Notes that are validly tendered after the Early Tender Date.

| CUSIP/ISIN | Outstanding Principal Amount (in millions) | Issuer | Title of Old Notes | Total Consideration Amount if Tendered At or Prior to the Early Tender Date (1)(2) | Aggregate Consideration, Including Consent Payment, if Tendered At or Prior to the Early Tender Date (3) | Exchange Consideration if Tendered After the Early Tender Date and At or Prior to the Expiration Date (1) |
|---|---|---|---|---|---|---|
| 292680 AD7 / US 292680 AD70 | $2,705 | Energy Future Holdings Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 | $720.00 | $722.50 | $670.00 |
| 292680 AC9 / US 292680 AC97 292680 AA3 / US 292680 AA32 | $1,787 | Energy Future Holdings Corp. | 10.875% Senior Notes due 2017 | $785.00 | $787.50 | $735.00 |

(1) Consideration per $1,000 principal amount of Old Notes. Excludes the consent payment of $2.50 per $1,000 principal amount of Old Notes payable in cash with respect to Consents validly delivered (and not validly revoked) at or prior to the Consent Date.
(2) The Total Consideration Amount consists of the Total Notes Consideration and the Total Cash Consideration.
(3) Includes the consent payment of $2.50 per $1,000 principal amount of Old Notes payable in cash with respect to Consents validly delivered (and not validly revoked) at or prior to the Consent Date.

The Offeror was advised by the Exchange Agent that, as of the Early Tender Date, a total of $4,469,868,133 aggregate principal amount of outstanding Old Notes, representing approximately 99.51% of the outstanding Old Notes, were validly tendered (and not validly withdrawn) in the exchange offers. Of the tendered Old Notes, as of the Early Tender Date, $1,776,033,000 aggregate principal amount of the outstanding 10.875% Senior Notes due 2017 of EFH Corp. ("Old Cash–Pay Notes") had been validly tendered and not validly withdrawn and $2,693,835,133 aggregate principal amount of the outstanding 11.250%/12.000% Senior Toggle Notes due 2017 of EFH Corp. ("Old Toggle Notes") had been validly tendered and not validly withdrawn.

Therefore, upon the terms and subject to the conditions of the exchange offers, the Total Consideration Amount payable for each $1,000 principal amount of each issue of Old Notes validly tendered at or prior to the Early Tender Date (and not validly withdrawn prior to the Expiration Date) and accepted for exchange, will consist of:

- in the case of Old Cash–Pay Notes, Total Cash Consideration of $146.46 and Total Notes Consideration of $638.54 principal amount of New EFIH Senior Secured Notes, and

ii

EFIHMW00051937

EFIHMW00051935

**Table of Contents**

- in the case of Old Toggle Notes, Total Cash Consideration of $134.33 and Total Notes Consideration of $585.67 principal amount of New EFIH Senior Secured Notes.

The Total Cash Consideration and the Total Notes Consideration payable per $1,000 principal amount of Old Notes as set forth above will not be affected by proration. The amount of Total Cash Consideration set forth above does not include the cash consent payment separately payable with respect to Consents validly delivered (and not validly revoked) at or prior to the Consent Date or accrued and unpaid interest, if any, payable with respect to the Old Cash–Pay Notes.

The maximum aggregate principal amount of New EFIH Senior Secured Notes issuable in the exchange offers will not exceed $2.18 billion (the "Maximum Exchange Amount"). The maximum principal amount of each issue of Old Notes that will be accepted for exchange is the outstanding principal amount of such issue validly tendered (and not validly withdrawn), as limited by the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom. Each issue of Old Notes will be prorated on an equal basis, if proration is necessary. Subject to applicable law, the Offeror reserves the right, but is not obligated, to increase or decrease the Maximum Exchange Amount. If a change is made to the amount of securities offered to be exchanged pursuant to the exchange offers, including any change to the Maximum Exchange Amount, the exchange offers will remain open for at least ten business days from (and including) the date of the announcement of such change to the extent required by applicable law.

Based on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) as of the Early Tender Date, and assuming no tendered Old Notes are validly withdrawn, the amount of Old Notes accepted for exchange will be prorated. Assuming that no additional Old Notes are validly tendered after the Early Tender Date, no Old Notes that were validly tendered at or prior to the Early Tender Date are validly withdrawn prior to the Expiration Date, and the Offeror accepts for exchange the maximum principal amount of Old Notes allowable under the terms and conditions of the exchange offers, the Offeror would accept for exchange in the exchange offers approximately 80.4% of the aggregate principal amount of the Old Cash–Pay Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and approximately 80.4% of the aggregate principal amount of the Old Toggle Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date.

The aggregate amount of cash payable as the aggregate Total Cash Consideration in the exchange offers is $500 million, which aggregate amount may be reduced as a result of proration or withdrawals, if any, after the Early Tender Date of Old Notes previously validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. The potential reduction of this cash amount will not change the amount of Total Cash Consideration to be paid in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. This aggregate amount of cash will be paid as the Total Cash Consideration in exchange for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange such that each Old Cash–Pay Note and each Old Toggle Note validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange will receive the same percentage of its Total Consideration Amount in cash. Based on the reported aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, the percentage of the total consideration payable for each $1,000 principal amount of each issue of Old Notes that consists of cash consideration will be approximately 18.657%.

The Offeror will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFIH Senior Secured Notes to a participating holder. The aggregate principal amount of New EFIH Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New EFIH Senior Secured Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New EFIH Senior Secured Notes not received as a result of such rounding down.

iii

EFIHMW00051938

EFIHMW00051935

**Table of Contents**

All holders whose Old Cash-Pay Notes are accepted for exchange will receive an amount equal to accrued and unpaid interest, if any, in cash, from the last applicable interest payment date to, but not including, the Settlement Date (as defined below). Holders whose Old Toggle Notes are accepted for exchange will not separately receive any accrued and unpaid payment–in–kind interest with respect to such Old Toggle Notes because the amount of such accrued interest through the anticipated Settlement Date for the exchange offers has been included in determining the consideration being offered in the exchange offers for the Old Toggle Notes. If the Settlement Date occurs later than August 17, 2010, then the consideration being offered in the exchange offers for the Old Toggle Notes will be adjusted to account for the additional interest accrued after such date, to but not including, the Settlement Date.

Concurrent with the exchange offers, and on the terms and subject to the conditions set forth in this Prospectus and the Consent and Letter of Transmittal, EFH Corp. solicited (the "consent solicitation") consents (the "Consents") from holders of Old Notes to certain proposed amendments (the "Proposed Amendments") to the Indenture, dated as of October 31, 2007, by and among EFH Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the Old Notes were issued, as amended and supplemented (the "Old Notes Indenture").

EFH Corp. has received Consents from holders of a majority of the outstanding aggregate principal amount of the Old Notes, voting together as a single class, which constitutes the requisite Consents to adopt the Proposed Amendments. Old Notes held by members of the Sponsor Group and EFH Corp. and their respective affiliates were not considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of the Old Notes delivered Consents necessary to adopt the Proposed Amendments. The requisite Consents having been received, EFH Corp., the guarantors of the Old Notes and The Bank of New York Mellon Trust Company, N.A., as trustee under the Old Notes Indenture, have executed and delivered a supplemental indenture with respect to the Old Notes Indenture to effectuate the Proposed Amendments (the "Supplemental Indenture"). The Supplemental Indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in this Prospectus.

Because the requisite Consents have been received and the Supplemental Indenture has been executed and delivered by the parties thereto, EFH Corp. will pay to each holder, in respect of such holder's Old Notes as to which Consents were validly delivered and not validly revoked at or prior to the Consent Date, a cash consent payment of $2.50 per $1,000 principal amount of such Old Notes. Such consent payment is in addition to any Total Consideration Amount or Exchange Consideration that may be payable to a holder in respect of its Old Notes accepted for exchange. Given the amount of Old Notes as to which Consents have been validly delivered (and not validly revoked), the aggregate amount of consent payments payable in relation to the consent solicitation is approximately $11,174,670. If all holders of Old Notes had validly delivered (and not validly revoked) Consents at or prior to the Consent Date, the aggregate maximum amount of consent payments payable would have been approximately $11,230,000. The consent payments will be made on the Settlement Date (as defined below) or promptly following the termination of the exchange offers, as applicable. EFH Corp.'s obligation to make consent payments is not conditioned upon completion of the exchange offers. If the exchange offers are terminated, the Proposed Amendments in the Supplemental Indenture will not become operative.

The Proposed Amendments would eliminate substantially all of the restrictive covenants and references therein contained in the Old Notes Indenture and the Old Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations and modify or eliminate certain other provisions, including certain provisions relating to defeasance contained in the Old Notes Indenture and Old Notes that would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event. In addition to the foregoing, execution and delivery of the Consent and Letter of Transmittal will constitute an express waiver by a consenting holder of the Old Notes with respect to all claims against EFH Corp., the guarantors of the Old Notes and the Sponsor Group (as defined below) of any breach, default or event of default that may have arisen under the Old Notes Indenture. As of the date of this Prospectus, EFH Corp. is not aware of any such breaches, defaults or events of default. See "Proposed Amendments" for additional information regarding the Proposed Amendments.

iv

EFIHMW00051939

EFIHMW00051935

Table of Contents

On July 15, 2010, EFH Corp., EFIH and EFIH Finance entered into exchange agreements with certain institutional investors that are holders of certain of the Old Notes (the "Exchange Agreements"), pursuant to which such holders agreed to participate in the exchange offers and the consent solicitation. At or prior to the Early Tender Date and the Consent Date, such holders tendered and delivered consents in respect of approximately $2.3 billion aggregate principal amount of Old Notes, representing approximately 52% of the aggregate principal amount of outstanding Old Notes, in the exchange offers and consent solicitation pursuant to these agreements.

Old Notes validly tendered pursuant to the exchange offers (and not validly withdrawn) at or prior to the Consent Date were deemed to include Consents to the Proposed Amendments. The completion, execution and delivery of a Consent and Letter of Transmittal, or transmission of an Agent's Message (as defined below), in connection with a valid tender of Old Notes pursuant to the exchange offers at or prior to the Consent Date constituted the delivery of Consents with respect to such Old Notes. Holders could not validly tender Old Notes in the exchange offers at or prior to the Consent Date without delivering the related Consents, but holders may tender Old Notes after the Consent Date and at or prior to the Expiration Date without delivering Consents with respect to the Old Notes. However, holders tendering Old Notes after the Early Tender Date will not be eligible to receive the applicable Total Consideration Amount for such Old Notes, including the Total Cash Consideration, or the cash consent payment. Holders could not deliver Consents in the consent solicitation without validly tendering their Old Notes in the exchange offers at or prior to the Consent Date and could only validly revoke Consents by validly withdrawing the previously tendered related Old Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution and delivery of the Supplemental Indenture. Because it was expected that the Supplemental Indenture would be executed and delivered promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments, holders were advised that they should not expect to be able to revoke their Consents after the Consent Date. Consents may no longer be revoked because the Consent Date has passed and the Supplemental Indenture has been executed and delivered by the parties thereto.

**Tendered Old Notes may be validly withdrawn at any time prior to the Expiration Date (and, if not previously accepted for exchange, after the expiration of 40 business days from July 16, 2010). Consents may no longer be revoked because the Consent Date has passed and the Supplemental Indenture has been executed and delivered by the parties thereto. See "Procedures for Tendering Old Notes and Delivering Consents."**

Subject to applicable law, the exchange offers, on one hand, and the consent solicitation, on the other hand, are being made independently of each other, and the Offeror reserves the right to terminate, withdraw or amend the exchange offers independently of the consent solicitation at any time and from time to time, as described in this Prospectus.

The exchange offers are conditioned on at least a majority of the outstanding aggregate principal amount of Old Notes being validly tendered (and not validly withdrawn) at or prior to the Expiration Date. As of the date of this Prospectus, a majority of the outstanding aggregate principal amount of Old Notes have been validly tendered (and not validly withdrawn). The exchange offers are also subject to the satisfaction or waiver of a number of other conditions as set forth in this Prospectus, including the condition that the registration statement, of which this Prospectus forms part, has been declared effective by the Securities and Exchange Commission (the "SEC") (which condition cannot be waived). See "Conditions of the Exchange Offers and the Consent Solicitation." In addition, subject to applicable law, the Offeror has the right to terminate or withdraw the exchange offers if any of the applicable conditions described under the "Conditions of the Exchange Offers and the Consent Solicitation" are not satisfied or waived by the Expiration Date. The exchange offers constitute a single offer for both the Old Cash-Pay Notes and the Old Toggle Notes. The conditions to the exchange offers will be satisfied or waived with respect to the single offer being made for both issues of Old Notes. Old Notes of both issues will be exchanged in the exchange offers if Old Notes of either issue are exchanged in the exchange offers.

v

EFIHMW00051940

EFIHMW00051935

Table of Contents

## TABLE OF CONTENTS

ABOUT THIS PROSPECTUS                                                    vi
INDUSTRY AND MARKET INFORMATION                                          vii
AVAILABLE INFORMATION                                                    vii
FORWARD-LOOKING STATEMENTS                                              viii
QUESTIONS AND ANSWERS ABOUT THE EXCHANGE
    OFFERS AND THE CONSENT SOLICITATION                                   1
SUMMARY                                                                  12
RISK FACTORS                                                             38
USE OF PROCEEDS                                                          79
CAPITALIZATION                                                           80
THE TRANSACTIONS                                                         82
SELECTED HISTORICAL CONSOLIDATED FINANCIAL
    DATA FOR EFH CORP. AND ITS SUBSIDIARIES                              85
SELECTED HISTORICAL CONSOLIDATED FINANCIAL
    DATA FOR EFIH AND ITS SUBSIDIARIES                                   89
GENERAL TERMS OF THE EXCHANGE OFFERS AND
    CONSENT SOLICITATION                                                 92
PROPOSED AMENDMENTS                                                      98
ACCEPTANCE OF OLD NOTES; ACCRUAL OF INTEREST                            101
PROCEDURES FOR TENDERING OLD NOTES AND
    DELIVERING CONSENTS                                                 103
WITHDRAWAL OF TENDERS AND REVOCATION OF
    CONSENTS                                                            107
CONDITIONS OF THE EXCHANGE OFFERS AND THE
    CONSENT SOLICITATION                                                109
EXCHANGE AGENT, INFORMATION AGENT; DEALER
    MANAGERS AND SOLICITATION AGENTS; OTHER
    ADVISORS                                                            111
DESCRIPTION OF THE NOTES                                                113
COMPARISON OF PRINCIPAL DIFFERENCES BETWEEN
    OLD NOTES AND NEW EFIH SENIOR SECURED NOTES                         199
BOOK-ENTRY, DELIVERY AND FORM                                           213
MATERIAL U.S. FEDERAL INCOME TAX
    CONSIDERATIONS                                                      215
CERTAIN ERISA CONSIDERATIONS                                            226
LEGAL MATTERS                                                           227
EXPERTS                                                                 228
INDEX TO CONSOLIDATED FINANCIAL STATEMENTS                              F-1
ANNEX A–DEFINITIONS                                                     A-1
ANNEX B–INFORMATION RELATING TO EFH CORP.                               B-1
ANNEX C–INFORMATION RELATING TO EFIH AND EFIH
    FINANCE                                                             C-1

## ABOUT THIS PROSPECTUS

This Prospectus is part of a registration statement that we have filed with the SEC. You should read this Prospectus, including the annexes, together with the registration statement, the exhibits thereto and the additional information described under the heading "Available Information." This Prospectus includes the annexes attached hereto. To the extent information or any statement in any annex to this Prospectus is inconsistent with information or statements contained in this Prospectus not included in the annexes, the information or statements in such annex shall be deemed to be modified or superseded by any such information or statements in the Prospectus not included in the annexes.

None of the Offeror, EFH Corp., the Dealer Managers, the Exchange Agent or the Information Agent have authorized any person (including any dealer, salesperson or broker) to provide you with any information or to make any representation other than as contained in this Prospectus. The Offeror, EFH Corp. and the Dealer Managers do not take any responsibility for, and can provide no assurance as to the reliability of, any information that others may give you. The information included in this Prospectus is accurate as of the date of this Prospectus. You should not assume that the information included in this Prospectus is accurate as of any other date.

The exchange offers are being made, and the consent solicitation has been made, on the basis of this Prospectus and the Consent and Letter of Transmittal and are subject to the terms described in this Prospectus and

vi

EFIHMW00051941

EFIHMW00051935

**Table of Contents**

the Consent and Letter of Transmittal and the indenture governing the New EFIH Senior Secured Notes. This Prospectus does not constitute an offer to participate in the exchange offers to any person in any jurisdiction in which it would be unlawful to make such exchange offers. Any decision to participate in the exchange offers and consent solicitation must be based on the information included in this Prospectus. In making an investment decision, prospective investors must rely on their own examination of the Offeror and the terms of the exchange offers and the New EFIH Senior Secured Notes, including the merits and risks involved. Investors should not construe anything in this Prospectus and the Consent and Letter of Transmittal as legal, investment, business or tax advice. Each investor should consult its advisors as needed to make its investment decision and to determine whether it is legally permitted to participate in the exchange offers and consent solicitation under applicable laws or regulations.

This Prospectus contains summaries believed to be accurate with respect to certain documents, but reference is made to the actual documents themselves for complete information. All such summaries are qualified in their entirety by such reference. Copies of documents referred to in this Prospectus will be made available to holders in the exchange offers and consent solicitation at no cost. See "Available Information."

You should not rely on or assume the accuracy of any representation or warranty in any agreement that we have filed as an exhibit to any document that we have publicly filed or that we may otherwise publicly file in the future because such representation or warranty may be subject to exceptions and qualifications contained in separate disclosure schedules, may have been included in such agreement for the purpose of allocating risk between the parties to the particular transaction, and may no longer continue to be true as of any given date.

### INDUSTRY AND MARKET INFORMATION

The industry and market data and other statistical information used throughout this Prospectus are based on independent industry publications, government publications, reports by market research firms or other published independent sources, including certain data published by the Electric Reliability Council of Texas ("ERCOT"), the Public Utility Commission of Texas (the "PUCT"), and the New York Mercantile Exchange. We did not commission any of these publications or reports. Some data is also based on good faith estimates, which are derived from our review of internal surveys, as well as the independent sources listed above. Independent industry publications and surveys generally state that they have obtained information from sources believed to be reliable, but do not guarantee the accuracy and completeness of such information. While we believe that each of these studies and publications is reliable, we have not independently verified such data and make no representation as to the accuracy of such information. Forecasts are particularly likely to be inaccurate, especially over long periods of time, and we do not know what assumptions regarding general economic growth are used in preparing the forecasts included in this Prospectus. Similarly, while we believe that such internal and external research is reliable, it has not been verified by any independent sources, and we make no assurances that the predictions contained therein are accurate.

### AVAILABLE INFORMATION

EFH Corp. and EFIH file annual, quarterly and current reports and other information with the SEC. You may read and copy any document EFH Corp. or EFIH has filed or will file with the SEC at the SEC's public website (www.sec.gov) or at the Public Reference Room of the SEC located at 100 F Street, N.E., Washington, DC 20549. Copies of such materials can be obtained from the Public Reference Room of the SEC at prescribed rates. You can call the SEC at 1-800-SEC-0330 to obtain information on the operation of the Public Reference Room. These materials do not form part of this Prospectus.

vii

EFIHMW00051942

EFIHMW00051935

**Table of Contents**

You may request a copy of any of our filings with the SEC, or any of the agreements or other documents that constitute exhibits to those filings, at no cost, by writing or telephoning us at the following address or phone number:

Energy Future Holdings Corp.
1601 Bryan Street
Dallas, Texas 75201–3411
Attention: Investor Relations
Telephone: (214) 812–4600

## FORWARD–LOOKING STATEMENTS

This Prospectus and other presentations made by us contain "forward–looking statements." All statements, other than statements of historical facts, that are included in this Prospectus, or made in presentations, in response to questions or otherwise, that address activities, events or developments that the Offeror expects or anticipates to occur in the future, including such matters as projections, capital allocation, future capital expenditures, business strategy, competitive strengths, goals, future acquisitions or dispositions, development or operation of power generation assets, market and industry developments and the growth of our businesses and operations (often, but not always, through the use of words or phrases such as "intends," "plans," "will likely result," "are expected to," "will continue," "is anticipated," "estimated," "should," "projection," "target," "goal," "objective" and "outlook"), are forward–looking statements. Although we believe that in making any such forward–looking statement our expectations are based on reasonable assumptions, any such forward–looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under "Risk Factors" contained elsewhere in this Prospectus and the following important factors, among others, that could cause our actual results to differ materially from those projected in such forward–looking statements:

- prevailing governmental policies and regulatory actions, including those of the Texas Legislature, the Governor of Texas, the Congress of the United States of America, the United States Federal Energy Regulatory Commission ("FERC"), the North American Electric Reliability Council (the "NERC"), the Texas Regional Entity (the "TRE"), the PUCT, the Railroad Commission of Texas (the "RRC"), the United States Nuclear Regulatory Commission (the "NRC"), the United States Environmental Protection Agency (the "EPA"), the Texas Commission on Environmental Quality (the "TCEQ") and the Commodities Futures Trading Commission (the "CFTC"), with respect to, among other things:

    - allowed prices;

    - allowed rates of return;

    - permitted capital structure;

    - industry, market and rate structure;

    - purchased power and recovery of investments;

    - operations of nuclear generating facilities;

    - operations of fossil–fueled generating facilities;

    - operations of mines;

    - acquisitions and disposal of assets and facilities;

    - development, construction and operation of facilities;

    - decommissioning costs;

    - present or prospective wholesale and retail competition;

    - changes in tax laws and policies;

viii

EFIHMW00051943

EFIHMW00051935

Table of Contents

- • changes in and compliance with environmental and safety laws and policies, including climate change initiatives; and
- • clearing over the counter derivatives through exchanges and posting of cash collateral therewith;
- legal and administrative proceedings and settlements;
- general industry trends;
- economic conditions, including the current recessionary environment;
- our ability to attract and retain profitable customers;
- our ability to profitably serve our customers;
- restrictions on competitive retail pricing;
- changes in wholesale electricity prices or energy commodity prices;
- changes in prices of transportation of natural gas, coal, crude oil and refined products;
- unanticipated changes in market heat rates in the ERCOT electricity market;
- our ability to effectively hedge against changes in commodity prices, market heat rates and interest rates;
- weather conditions and other natural phenomena, and acts of sabotage, wars or terrorist activities;
- unanticipated population growth or decline, or changes in market demand and demographic patterns;
- changes in business strategy, development plans or vendor relationships;
- access to adequate transmission facilities to meet changing demands;
- unanticipated changes in interest rates, commodity prices, rates of inflation or foreign exchange rates;
- unanticipated changes in operating expenses, liquidity needs and capital expenditures;
- commercial bank market and capital market conditions and the potential impact of disruptions in United States ("U.S.") and international credit markets;
- access to capital, the cost of such capital, and the results of financing and refinancing efforts, including availability of funds in capital markets;
- financial restrictions placed on us by the agreements governing our debt instruments;
- our ability to generate sufficient cash flow to make interest payments on our debt instruments;
- competition for new energy development and other business opportunities;
- inability of various counterparties to meet their obligations with respect to our financial instruments;
- changes in technology used by and services offered by us;
- changes in electricity transmission that allow additional electricity generation to compete with our generation assets;
- significant changes in our relationship with our employees, including the availability of qualified personnel, and the potential adverse effects if labor disputes or grievances were to occur;
- changes in assumptions used to estimate costs of providing employee benefits, including pension benefits and other postretirement employee benefits ("OPEB"), and future funding requirements related thereto;
- changes in assumptions used to estimate future executive compensation payments;

ix

EFIHMW00051944

EFIHMW00051935

Table of Contents

- hazards customary to the industry and the possibility that we may not have adequate insurance to cover losses resulting from such hazards;
- significant changes in critical accounting policies;
- actions by credit rating agencies;
- our ability to effectively execute our operational strategy; and
- our ability to implement cost reduction initiatives.

Any forward-looking statement speaks only as of the date on which it is made, and except as may be required by applicable law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. You should not unduly rely on such forward-looking statements.

x

EFIHMW00051945

EFIHMW00051935

Table of Contents

### QUESTIONS AND ANSWERS ABOUT THE EXCHANGE OFFERS AND THE CONSENT SOLICITATION

*These answers to questions that you may have as a holder of Old Notes are highlights of selected information included elsewhere in this Prospectus. To fully understand the exchange offers and consent solicitation and the considerations that may be important to your decision about whether to participate in the exchange offers and consent solicitation, you should carefully read this Prospectus in its entirety, including the section entitled "Risk Factors."*

**Why are you making the exchange offers?**

The purpose of the exchange offers is to reduce the outstanding principal amount, and extend the weighted average maturity, of the long-term debt of EFH Corp. and its subsidiaries.

**Why did you make the consent solicitation?**

The purpose of the consent solicitation was to adopt the Proposed Amendments, which will provide EFH Corp. and its subsidiaries additional financial and operational flexibility.

**What securities are subject to the exchange offers?**

The Offeror is offering to exchange outstanding 11.250%/12.000% Senior Toggle Notes due 2017 issued by EFH Corp., which are sometimes referred to herein as the "Old Toggle Notes", and 10.875% Senior Notes due 2017 issued by EFH Corp., which are sometimes referred to herein as the "Old Cash-Pay Notes". The Old Toggle Notes and Old Cash-Pay Notes are referred to herein collectively as the "Old Notes". The exchange offers constitute a single offer for both the Old Cash-Pay Notes and the Old Toggle Notes. The conditions to the exchange offers will be satisfied or waived with respect to the single offer being made for both issues of Old Notes. Old Notes of both issues will be exchanged in the exchange offers if Old Notes of either issue are exchanged in the exchange offers.

**What aggregate principal amount of each issue of Old Notes is being sought in the exchange offers?**

Upon the terms and subject to the conditions of the exchange offers, we will accept for exchange a principal amount of each issue of Old Notes such that the maximum aggregate principal amount of New EFIH Senior Secured Notes issuable in the exchange offers will not exceed $2.18 billion, which is referred to in this Prospectus as the "Maximum Exchange Amount". In the event that the Maximum Exchange Amount is exceeded, the Old Notes will be subject to proration as described in "General Terms of the Exchange Offers and Consent Solicitation—Acceptance; Proration." The Old Toggle Notes and the Old Cash-Pay Notes will be prorated on an equal basis if proration is necessary.

**What is the aggregate principal amount of New EFIH Senior Secured Notes that may be issued in the exchange offers?**

The maximum aggregate principal amount of New EFIH Senior Secured Notes issuable in the exchange offers will not exceed $2.18 billion, the Maximum Exchange Amount. The maximum principal amount of each issue of Old Notes that will be accepted for exchange is the outstanding principal amount of such issue validly tendered and not validly withdrawn, as limited by the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom. The Old Toggle Notes and the Old Cash-Pay Notes will be prorated on an equal basis if proration is necessary. Subject to applicable law, the Offeror reserves the right, but is not obligated, to increase or decrease the Maximum Exchange Amount. If a change is made to the amount of securities offered to

1

EFIHMW00051946

EFIHMW00051935

**Table of Contents**

be exchanged pursuant to the exchange offers, including any change to the Maximum Exchange Amount, the exchange offers will remain open for at least ten business days from (and including) the date of the announcement of such change to the extent required by applicable law.

**Will the amount of Old Notes accepted for exchange in the exchange offers be prorated?**

Based on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) as of the Early Tender Date, and assuming no tendered Old Notes are validly withdrawn, the amount of Old Notes accepted for exchange will be prorated. Assuming that no additional Old Notes are validly tendered after the Early Tender Date, no Old Notes that were validly tendered at or prior to the Early Tender Date are validly withdrawn prior to the Expiration Date, and the Offeror accepts for exchange the maximum principal amount of Old Notes allowable under the terms and conditions of the exchange offers, the Offeror would accept for exchange in the exchange offers approximately 80.4% of the aggregate principal amount of the Old Cash–Pay Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and approximately 80.4% of the aggregate principal amount of the Old Toggle Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date.

**What amendments to the Old Notes Indenture were the subject of the consent solicitation?**

The Proposed Amendments would eliminate substantially all of the restrictive covenants and references thereto contained in the Old Notes Indenture and the Old Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations and modify or eliminate certain other provisions, including certain provisions relating to defeasance contained in the Old Notes Indenture and Old Notes which would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event. See "Proposed Amendments" for additional information regarding the Proposed Amendments.

**Have you received the requisite Consents to adopt the Proposed Amendments?**

EFH Corp. has received Consents from holders of a majority of the outstanding aggregate principal amount of the Old Notes, voting together as a single class, which constitutes the requisite Consents to adopt the Proposed Amendments. Old Notes held by members of the Sponsor Group and EFH Corp. and their respective affiliates were not considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of the Old Notes delivered Consents necessary to adopt the Proposed Amendments. The requisite Consents having been received, EFH Corp., the guarantors of the Old Notes and The Bank of New York Mellon Trust Company, N.A., as trustee under the Old Notes Indenture, have executed and delivered the Supplemental Indenture to effectuate the Proposed Amendments. The Supplemental Indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in this Prospectus. Upon such time, any Old Notes not tendered and accepted for exchange in the exchange offers, including Old Notes withdrawn from the exchange offers after the Consent Date, will remain outstanding and the holders thereof will be bound by the terms of the Old Notes Indenture, as modified by the Proposed Amendments.

**What is the amount of cash that will be paid in the exchange offers?**

The aggregate amount of cash payable in the exchange offers, excluding the cash consent payments payable with respect to Consents validly delivered and not validly revoked at or prior to the Consent Date and accrued and unpaid interest, if any, payable with respect to the Old Cash–Pay Notes, is $500 million, which aggregate amount may be reduced as a result of proration or withdrawals, if any, after the Early Tender Date of Old Notes previously validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. The potential

2

EFIHMW00051947

EFIHMW00051935

**Table of Contents**

reduction of this cash amount will not change the amount of Total Cash Consideration to be paid in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. This aggregate amount of cash will be paid as the Total Cash Consideration in exchange for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange such that each Old Toggle Note and each Old Cash–Pay Note validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange will receive the same percentage of its Total Consideration Amount in cash. Based on the reported aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, the percentage of the total consideration payable for each $1,000 principal amount of each issue of Old Notes that consists of cash consideration will be approximately 18.657%.

**What will I receive in the exchange offers if my Old Notes are accepted for exchange?**

Upon the terms and subject to the conditions of the exchange offers, including the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, participating holders of Old Notes will be eligible to receive, in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn), the following:

(i) for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange, a principal amount of New EFIH Senior Secured Notes and cash equal, in the aggregate, to the "Total Consideration Amount" as listed in the table on page ii of this Prospectus under "Total Consideration Amount if Tendered At or Prior to the Early Tender Date," with the amount of New EFIH Senior Secured Notes (the "Total Notes Consideration") and the amount of cash (the "Total Cash Consideration") comprising the Total Consideration Amount depending on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, as described below, and

(ii) for Old Notes validly tendered (and not validly withdrawn) after the Early Tender Date and at or prior to the Expiration Date and accepted for exchange, New EFIH Senior Secured Notes, referred to as the "Exchange Consideration" as listed in the table on page ii of this Prospectus under "Exchange Consideration if Tendered After the Early Tender Date and At or Prior to the Expiration Date." No cash consideration will be payable with respect to Old Notes that are validly tendered after the Early Tender Date.

The Offeror was advised by the Exchange Agent that, as of the Early Tender Date, a total of $4,469,868,133 aggregate principal amount of outstanding Old Notes, representing approximately 99.51% of the outstanding Old Notes, were validly tendered (and not validly withdrawn) in the exchange offers. Of the tendered Old Notes, as of the Early Tender Date, $1,776,033,000 aggregate principal amount of the outstanding Old Cash–Pay Notes had been validly tendered and not validly withdrawn and $2,693,835,133 aggregate principal amount of the outstanding Old Toggle Notes had been validly tendered and not validly withdrawn.

Therefore, upon the terms and subject to the conditions of the exchange offers, the Total Consideration Amount payable for each $1,000 principal amount of each issue of Old Notes validly tendered at or prior to the Early Tender Date (and not validly withdrawn prior to the Expiration Date) and accepted for exchange, will consist of:

- in the case of Old Cash–Pay Notes, Total Cash Consideration of $146.46 and Total Notes Consideration of $638.54 principal amount of New EFIH Senior Secured Notes, and

- in the case of Old Toggle Notes, Total Cash Consideration of $134.33 and Total Notes Consideration of $585.67 principal amount of New EFIH Senior Secured Notes.

The Total Cash Consideration and the Total Notes Consideration payable per $1,000 principal amount of Old Notes as set forth above will not be affected by proration. The amount of Total Cash Consideration set forth

3

EFIHMW00051948

EFIHMW00051935

**Table of Contents**

above does not include the cash consent payment separately payable with respect to Consents validly delivered (and not validly revoked) at or prior to the Consent Date or accrued and unpaid interest, if any, payable with respect to the Old Cash–Pay Notes.

**Will any Old Notes be given a higher acceptance priority in the exchange offers than other Old Notes?**

No. The exchange offers constitute a single offer for both the Old Cash–Pay Notes and the Old Toggle Notes. Upon the terms and subject to the conditions of the exchange offers, including the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, all Old Notes validly tendered (and not validly withdrawn) in the exchange offers will be accepted in the exchange offers. In the event that proration of validly tendered (and not validly withdrawn) Old Notes is required, the Old Toggle Notes and the Old Cash–Pay Notes will be treated equally in calculating the proration.

If proration of validly tendered (and not validly withdrawn) Old Notes is required, the Offeror will determine the final proration promptly after the Expiration Date and will promptly announce the results of the final proration by press release. To determine the principal amount accepted of each tender subject to proration, the principal amount of such tender will be multiplied by the proration rate, which will be the same for both issues of Old Notes, and the resultant amount rounded down to the nearest permitted denomination of the Old Notes. The Offeror will not be able to determine the final proration prior to the Expiration Date.

Based on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) as of the Early Tender Date, and assuming no tendered Old Notes are validly withdrawn, the amount of Old Notes accepted for exchange will be prorated. Assuming that no additional Old Notes are validly tendered after the Early Tender Date, no Old Notes that were validly tendered at or prior to the Early Tender Date are validly withdrawn prior to the Expiration Date, and the Offeror accepts for exchange the maximum principal amount of Old Notes allowable under the terms and conditions of the exchange offers, the Offeror would accept for exchange in the exchange offers approximately 80.4% of the aggregate principal amount of the Old Cash–Pay Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and approximately 80.4% of the aggregate principal amount of the Old Toggle Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date.

**Will I receive any accrued and unpaid interest on my Old Notes tendered for exchange in the exchange offers?**

All holders whose Old Cash–Pay Notes are exchanged will receive an amount equal to accrued and unpaid interest on such Old Cash–Pay Notes, if any, in cash, from the last applicable interest payment date to, but not including, the Settlement Date. Holders whose Old Toggle Notes are accepted for exchange will not separately receive any accrued and unpaid payment–in–kind interest with respect to such Old Toggle Notes because the amount of such accrued interest through the Settlement Date has been included in determining the consideration being offered in the exchange offers for the Old Toggle Notes. If the Settlement Date occurs later than August 17, 2010, then the consideration being offered in the exchange offers for the Old Toggle Notes will be adjusted to account for the additional interest accrued after such date to, but not including, the Settlement Date.

**What are the differences between the Old Notes and the New EFIH Senior Secured Notes?**

There are important differences between the Old Notes and the New EFIH Senior Secured Notes, including that (i) the New EFIH Senior Secured Notes will be secured by, equally and ratably with the 9.75% Senior Secured Notes due 2019 of EFIH and EFIH Finance (the "EFIH 9.75% Notes") and EFIH's guarantees of the 9.75% Senior Secured Notes due 2019 of EFH Corp. (the "EFH Corp. 9.75% Notes") and the 10.000% Senior Secured Notes due 2020 of EFH Corp. (the "EFH Corp. 10.000% Notes"), EFIH's pledge of 100% of the

4

EFIHMW00051949

EFIHMW00051935

Table of Contents

membership interests and other investments it owns in Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") (such membership interests and other investments, the "Collateral"), which currently represents an approximate 80% equity interest in Oncor Electric Delivery Company LLC ("Oncor") and (ii) the New EFIH Senior Secured Notes are not issued by EFH Corp. and are not guaranteed by Energy Future Competitive Holdings Company ("EFCH"), a wholly-owned subsidiary of EFH Corp. that guarantees the Old Notes and the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, or EFH Corp. and as a result, holders of New EFIH Senior Secured Notes will have no claim on the assets of EFH Corp. or its subsidiaries other than EFIH and EFIH Finance. See "Comparison of Principal Differences Between Old Notes and New EFIH Senior Secured Notes" for more information.

**When was the Early Tender Date?**

The Early Tender Date for the exchange offers was 5:00 p.m., New York City time, on July 29, 2010. Holders must have validly tendered (and not validly withdrawn) their Old Notes into the exchange offers at or prior to the Early Tender Date in order to be eligible to receive the Total Consideration Amount, including the applicable Total Cash Consideration.

**When do the exchange offers expire?**

The exchange offers will expire at midnight, New York City time, on August 12, 2010, unless extended.

**When did the consent solicitation expire?**

The consent solicitation expired at 5:00 p.m., New York City time, on July 29, 2010.

**Until when may I withdraw Old Notes previously tendered for exchange in the exchange offers?**

Tendered Old Notes may be withdrawn at any time at or prior to the Expiration Date. In addition, if not previously accepted for exchange, Old Notes may be withdrawn after the expiration of 40 business days from July 16, 2010.

**Until when may I revoke Consents previously delivered in the consent solicitation?**

Consents may no longer be revoked because the Consent Date has passed and the Supplemental Indenture has been executed and delivered. A withdrawal of Old Notes will not revoke any related Consents, and withdrawing holders will be subject to the Proposed Amendments if they become operative.

**In what denominations will the New EFIH Senior Secured Notes be issued? What will happen if I am otherwise entitled to New EFIH Senior Secured Notes in a lower principal amount?**

The New EFIH Senior Secured Notes will be issued in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof. Tenders of Old Notes pursuant to the exchange offers will be accepted only in principal amounts equal to permitted denominations for such Old Notes. The Offeror will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFIH Senior Secured Notes to a participating holder. The aggregate principal amount of New EFIH Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New EFIH Senior Secured Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New EFIH Senior Secured Notes not received as a result of such rounding down.

5

EFIHMW00051950

EFIHMW00051935

Table of Contents

**Are the exchange offers subject to a minimum condition?**

Yes. The exchange offers are conditioned on at least a majority of the outstanding aggregate principal amount of Old Notes being validly tendered (and not validly withdrawn) at or prior to the Expiration Date. As of the date of this Prospectus, a majority of the outstanding aggregate principal amount of Old Notes have been validly tendered (and not validly withdrawn). The exchange offers are also subject to the satisfaction or waiver of a number of other conditions set forth in this Prospectus, including the condition that the registration statement, of which this Prospectus forms a part, has been declared effective by the SEC (which condition cannot be waived). See "Conditions of the Exchange Offers and Consent Solicitation." The exchange offers constitute a single offer for both the Old Cash–Pay Notes and the Old Toggle Notes. The conditions to the exchange offers will be satisfied or waived with respect to the single offer being made for both issues of Old Notes. Old Notes of both issues will be exchanged in the exchange offers if Old Notes of either issue are exchanged in the exchange offers.

**Did any holders of Old Notes agree to participate in the exchange offers and the consent solicitation in advance of the commencement of the exchange offers and the consent solicitation?**

As described above, pursuant to the Exchange Agreements, holders of Old Notes representing approximately 52% of the aggregate principal amount of outstanding Old Notes agreed to participate in the exchange offers and the consent solicitation. At or prior to the Early Tender Date and the Consent Date, such holders tendered and delivered consents in respect of their Old Notes in the exchange offers and consent solicitation pursuant to the Exchange Agreements.

**May I tender only a portion of the Old Notes that I hold?**

Yes. You may tender all or any portion of your Old Notes in the exchange offers and consent solicitation; however, any Old Note tendered at or prior to the Consent Date will be deemed to include Consents to the Proposed Amendments. You should note that the Offeror will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFIH Senior Secured Notes to a participating holder. The aggregate principal amount of New EFIH Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New EFIH Senior Secured Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New EFIH Senior Secured Notes not received as a result of rounding down.

**If I want to tender my Old Notes, am I required to deliver the related Consents?**

Old Notes validly tendered pursuant to the exchange offers (and not validly withdrawn) at or prior to the Consent Date were deemed to include Consents to the Proposed Amendments. The completion, execution and delivery of a Consent and Letter of Transmittal, or transmission of an Agent's Message, in connection with a valid tender of Old Notes pursuant to the exchange offers at or prior to the Consent Date constituted the delivery of Consents with respect to such Old Notes. Holders could not validly tender Old Notes in the exchange offers at or prior to the Consent Date without delivering the related Consents, but holders may tender Old Notes after the Consent Date and at or prior to the Expiration Date without delivering Consents with respect to such Old Notes. However, holders tendering Old Notes after the Early Tender Date will not be eligible to receive the applicable Total Consideration Amount for such Old Notes, including the Total Cash Consideration, or the cash consent payment. Holders could not deliver Consents in the consent solicitation without validly tendering their Old Notes in the exchange offers at or prior to the Consent Date and could only validly revoke Consents by validly withdrawing the previously tendered related Old Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution and delivery of the Supplemental Indenture by the parties

6

EFIHMW00051951

EFIHMW00051935

**Table of Contents**

thereto. Because it was expected that the Supplemental Indenture would be executed and delivered promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments, holders were advised that they should not expect to be able to revoke their Consents after the Consent Date. Consents may no longer be revoked because the Consent Date has passed and the Supplemental Indenture has been executed and delivered by the parties thereto.

**Will I receive a payment if I deliver Consents in the consent solicitation?**

Because the requisite Consents have been received and the Supplemental Indenture has been executed and delivered by the parties thereto, EFH Corp. will pay to each holder, in respect of such holder's Old Notes as to which Consents are validly delivered and not validly revoked prior to the Consent Date, a cash consent payment of $2.50 per $1,000 principal amount of such Old Notes. Such consent payment is in addition to any Total Consideration Amount or Exchange Consideration that may be payable to a holder in respect of its Old Notes accepted for exchange. Given the amount of Old Notes as to which Consents have been validly delivered (and not validly revoked), the aggregate amount of consent payments payable in relation to the consent solicitation is approximately $11,174,670. If all holders of Old Notes had validly delivered (and not validly revoked) Consents at or prior to the Consent Date, the aggregate maximum amount of consent payments payable would have been approximately $11,230,000. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers, as applicable, assuming that the conditions to such payments are satisfied. EFH Corp.'s obligation to make consent payments is not conditioned upon completion of the exchange offers. If the exchange offers are terminated, the Proposed Amendments in the executed Supplemental Indenture will not become operative.

**Holders of what principal amount of Old Notes were required to validly deliver (and not validly revoke) Consents to the Proposed Amendments in order for the Proposed Amendments to be adopted?**

In order for the Proposed Amendments to be adopted, it was necessary for Consents to be validly delivered and not validly revoked at or prior to the Consent Date in respect of at least a majority of the outstanding aggregate principal amount of the Old Notes. Holders of the Old Notes (both the Old Toggle Notes and the Old Cash–Pay Notes) voted together as a single class with respect to the Proposed Amendments that were the subject of the consent solicitation. Old Notes held by members of the Sponsor Group, EFH Corp. and their respective affiliates were not considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of Old Notes delivered Consents necessary to adopt the Proposed Amendments.

EFH Corp. has received the requisite Consents to adopt the Proposed Amendments and, having received the requisite Consents, EFH Corp., the guarantors of the Old Notes and The Bank of New York Mellon Trust Company, N.A., as trustee under the Old Notes Indenture, have executed and delivered the Supplemental Indenture to effectuate the Proposed Amendments. The Supplemental Indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in this Prospectus.

**If the exchange offers are completed and I do not participate in the exchange offers, or I do not exchange all of my Old Notes in the exchange offers, or some of my Old Notes are not accepted for exchange, how will my rights and obligations under my remaining Old Notes be affected?**

If the Offeror completes the exchange offers, obligations with respect to any Old Notes not tendered by holders or not accepted for exchange or otherwise left outstanding following the completion of the exchange offers will not be secured by the Collateral and will therefore be effectively subordinated to the New EFIH Senior Secured Notes and the $1.317 billion aggregate principal amount of outstanding EFIH 9.75% Notes, EFH Corp. 9.75% Notes and EFH Corp. 10.000% Notes (we collectively refer to the EFIH 9.75% Notes, the EFH

7

EFIHMW00051952

EFIHMW00051935

Table of Contents

Corp. 9.75% Notes and the EFH Corp. 10.000% Notes as the "Existing Secured Notes"), to the extent of the value of the Collateral. Further, because the requisite Consents have been received with respect to the Old Notes Indenture and the Supplemental Indenture giving effect to the related Proposed Amendments has been executed and delivered by the parties thereto, if the Proposed Amendments become operative with respect to the Old Notes Indenture, holders of the Old Notes left outstanding following completion of the exchange offers will no longer be entitled to the benefits of the covenants, events of default and other provisions that are eliminated or modified pursuant to such Proposed Amendments. In addition, to the extent that Old Notes are tendered and accepted in the exchange offers, any existing trading market for the remaining Old Notes may become further limited. The smaller outstanding principal amount may make the trading price of the Old Notes that are not tendered and accepted for payment more volatile. Consequently, the liquidity, market value and price volatility of Old Notes that remain outstanding may be materially and adversely affected. For a description of other consequences of failing to tender your Old Notes pursuant to the exchange offers, see "Risk Factors—Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange."

**What do you intend to do with the Old Notes that are accepted for exchange in the exchange offers?**

Any Old Notes exchanged in the exchange offers may remain outstanding and held by EFIH or be retired and cancelled.

**Are you making a recommendation regarding whether I should participate in the exchange offers?**

None of the Offeror, EFH Corp., the Sponsor Group, the Dealer Managers, the Exchange Agent, the Information Agent or any other person is making any recommendation as to whether or not you should tender your Old Notes for exchange in the exchange offers. You must make your own decision whether to tender Old Notes in the exchange offers, and, if so, the amount of Old Notes to be tendered.

**When will I receive the Total Consideration Amount or Exchange Consideration, as applicable, payable in the exchange offers, any accrued and unpaid interest and, if applicable, consent consideration for my Old Notes that are tendered and accepted for exchange pursuant to the exchange offers?**

The Total Consideration Amount or Exchange Consideration, as applicable, payable in the exchange offers will be deposited with the Exchange Agent (or, upon its instruction, The Depository Trust Company ("DTC")), which will act as your agent for purposes of receiving New EFIH Senior Secured Notes and any cash payment, on the Settlement Date. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers, as applicable, assuming that the conditions to such payments are satisfied. Subject to the terms and conditions of the exchange offers, the Settlement Date for the exchange offers will occur promptly following the Expiration Date. Assuming that the exchange offers are not extended, the Offeror expects that the Settlement Date will be on or about the third business day following the Expiration Date.

**Will the New EFIH Senior Secured Notes issued in the exchange offers be freely tradable?**

New EFIH Senior Secured Notes issued in the exchange offers generally may be offered for resale, resold and otherwise transferred without further registration under the Securities Act of 1933, as amended (the "Securities Act"), and without delivery of a prospectus meeting the requirements of Section 10 of the Securities Act if the holder is not an "affiliate" of the Offeror within the meaning of Rule 144(a)(1) under the Securities Act. Any holder who is an affiliate of the Offeror at the time of the exchange must comply with the registration and prospectus delivery requirements of the Securities Act in connection with any resales, unless such sale or transfer is made pursuant to an exemption from such requirements and the requirements under applicable state securities laws. EFIH intends to apply to list the New EFIH Senior Secured Notes on the New York Stock Exchange.

8

EFIHMW00051953

EFIHMW00051935

Table of Contents

**Do you or any of your affiliates have any current plans to purchase any Old Notes that remain outstanding subsequent to the Expiration Date?**

No. Although we do not currently intend to do so, we may, following the completion, termination or withdrawal of the exchange offers, and subject to applicable law, purchase Old Notes in the open market, in privately negotiated transactions, through subsequent tender or exchange offers or otherwise. Any other purchases may be made on the same terms or on terms which are more or less favorable to holders than the terms of these exchange offers. We also reserve the right to repay any Old Notes not tendered. If we decide to repurchase or repay Old Notes that are not tendered in the exchange offers on terms that are more favorable than the terms of the exchange offers, those holders who decided not to participate in the exchange offers could be better off than those that participated in the exchange offers.

**What are the conditions to the exchange offers?**

The exchange offers are subject to the conditions described under "Conditions of the Exchange Offers and the Consent Solicitation," including the condition that the registration statement, of which this Prospectus forms a part, has been declared effective by the SEC (which condition cannot be waived). The exchange offers are also conditioned on at least a majority of the outstanding aggregate principal amount of Old Notes being validly tendered (and not validly withdrawn) at or prior to the Expiration Date. As of the date of this Prospectus, a majority of the outstanding aggregate principal amount of Old Notes have been validly tendered (and not validly withdrawn). Subject to applicable law, the Offeror has the right to terminate or withdraw the exchange offers if any of the applicable conditions described under "Conditions of the Exchange Offers and the Consent Solicitation" are not satisfied or waived by the Expiration Date. The exchange offers constitute a single offer for both the Old Cash–Pay Notes and the Old Toggle Notes. The conditions to the exchange offers will be satisfied or waived with respect to the single offer being made for both issues of Old Notes. Old Notes of both issues will be exchanged in the exchange offers if Old Notes of either issue are exchanged in the exchange offers.

**Under what circumstances can the exchange offers be extended, amended or terminated?**

Subject to applicable law, the Offeror may terminate or withdraw, at its sole discretion, the exchange offers if any applicable condition to the exchange offers is not satisfied or waived by the Expiration Date. The Offeror reserves the right, subject to applicable law, to (i) waive any and all of the conditions of the exchange offers (except for the condition that the registration statement, of which this Prospectus forms a part, has been declared effective by the SEC (which condition cannot be waived)) at or prior to the Expiration Date and (ii) amend the terms of the exchange offers. In the event that the exchange offers are terminated, withdrawn or otherwise not completed at or prior to the Expiration Date, no consideration will be paid or become payable to holders who have tendered their Old Notes pursuant to the exchange offers, other than the consent payments. In any such event, (1) Old Notes previously tendered pursuant to the exchange offers will be promptly returned to the tendering holders and (2) the Proposed Amendments in the executed Supplemental Indenture will not become operative. See "General Terms of the Exchange Offers and Consent Solicitation—Extension, Termination or Amendment."

**How will I be notified if the exchange offers are extended, amended or terminated?**

Any extension, termination or amendment of the exchange offers will be followed as promptly as practicable by announcement thereof. An announcement in the case of an extension will be issued no later than 9:00 a.m., New York City time, on the next business day following the previously scheduled Expiration Date. Without limiting the manner in which the Offeror may choose to make such announcement, the Offeror will not, unless otherwise required by applicable law, have any obligation to publish, advertise or otherwise communicate any such announcement other than by making a release to a United States news agency or another means of announcement that the Offeror deems appropriate.

9

EFIHMW00051954

EFIHMW00051935

**Table of Contents**

**How will the exchange offers affect the trading markets for the Old Notes that are not exchanged?**

To the extent the exchange offers are completed, the aggregate principal amount of outstanding Old Notes will be reduced. A reduction in the aggregate principal amount of outstanding Old Notes of either issue may materially and adversely affect the liquidity of the Old Notes of such issue that remain outstanding after completion of the exchange offers. An issue of securities with a small principal amount available for trading, or "float," could command a lower price than does a comparable issue of securities with a larger float. Therefore, the market price for an issue of Old Notes that remains outstanding after completion of the exchange offers may be materially and adversely affected. A reduced float may also make the trading prices of Old Notes that are not exchanged more volatile. Following the completion of the exchange offers, an active trading market in the Old Notes may not exist and the trading price for the Old Notes not tendered by holders or not accepted for exchange may materially decline.

**Will the Offeror or EFH Corp. receive any cash proceeds from the exchange offers or the consent solicitation?**

No. Neither the Offeror nor EFH Corp. will receive any cash proceeds from the exchange offers or the consent solicitation. Any Old Notes exchanged in the exchange offers may remain outstanding and be held by EFIH or be retired and cancelled.

**How do I tender my Old Notes for exchange in the exchange offers and deliver Consents in the consent solicitation?**

If a holder wishes to participate in the exchange offers, and such holder's Old Notes are held by a custodial entity such as a broker, dealer, commercial bank, trust company or other nominee, such holder must instruct such custodial entity (pursuant to the procedures of the custodial entity) to tender the Old Notes. In order to have participated in the consent solicitation, Old Notes must have been validly tendered (and not validly withdrawn), thereby delivering the related Consent, at or prior to the Consent Date.

Custodial entities that are participants in DTC must tender Old Notes and deliver Consents through DTC's Automated Tender Offer Program ("ATOP"), by which the custodial entity and the beneficial owner on whose behalf the custodial entity is acting agree to be bound by the Consent and Letter of Transmittal. **A Consent and Letter of Transmittal need not be completed and submitted in connection with tenders effected through ATOP.**

**How do I withdraw Old Notes previously tendered for exchange in the exchange offers and revoke Consents previously delivered in the consent solicitation?**

A holder may withdraw the tender of such holder's Old Notes at any time prior to the Expiration Date (and, if not previously accepted for exchange, after the expiration of 40 business days from July 16, 2010) by submitting a notice of withdrawal to the Exchange Agent using ATOP procedures and/or upon compliance with the other procedures described under "Withdrawal of Tenders and Revocation of Consents." The withdrawal of any Old Notes at or prior to the Consent Date would have constituted a revocation of the related Consents. Consents could not be revoked prior to the Consent Date except by withdrawing tendered Old Notes at or prior to the Consent Date. Consents could have been revoked after the Consent Date by revoking such Consents prior to the execution and delivery of the Supplemental Indenture. Because it was expected that the Supplemental Indenture would be executed and delivered promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments, holders were advised that they should not expect to be able to revoke their Consents after the Consent Date. Any Consents that were not revoked at or prior to the later of the Consent Date and the execution and delivery of the Supplemental Indenture may no longer be revoked.

10

EFIHMW00051955

EFIHMW00051935

Table of Contents

**Will I have to pay any fees or commissions if I tender my Old Notes for exchange in the exchange offers?**

You will not be required to pay any fees or commissions to the Offeror, EFH Corp., the Sponsor Group, the Dealer Managers, the Exchange Agent or the Information Agent in connection with the exchange offers. If your Old Notes are held through a broker, dealer, commercial bank, trust company or other nominee that tenders your Old Notes on your behalf, your broker or other nominee may charge you a commission for doing so. You should consult your broker or other nominee to determine whether any charges will apply.

**Are there procedures for guaranteed delivery of Old Notes?**

No. The exchange offers will not provide for guaranteed delivery procedures with respect to any issue of Old Notes.

**What risks should I consider in deciding whether or not to tender my Old Notes in the exchange offers or deliver Consents in the consent solicitation?**

In deciding whether to participate in the exchange offers or consent solicitation, you should carefully consider the discussion of risks and uncertainties that are described in the section of this Prospectus entitled "Risk Factors."

**What are the material U.S. federal income tax considerations of my participating in the exchange offers and consent solicitation?**

Please see the section of this Prospectus entitled "Material U.S. Federal Income Tax Considerations." The tax consequences to you of the exchange offers and the consent solicitation will depend on your individual circumstances. You should consult your own tax advisor for a full understanding of the tax considerations of participating in the exchange offers or consent solicitation.

**With whom may I talk if I have questions about the exchange offers or consent solicitation?**

If you have any questions or need help in tendering your Old Notes, please contact the Information Agent or the Exchange Agent whose addresses and telephone numbers are listed on the back cover of this Prospectus or your broker, dealer, commercial bank, trust company or other nominee through which your Old Notes are held.

11

EFIHMW00051956

EFIHMW00051935

**PX 030
Page 22 of 734**

Table of Contents

## SUMMARY

*This summary highlights selected information appearing elsewhere in this Prospectus. This summary is not complete and does not contain all of the information that you should consider before investing in the New EFIH Senior Secured Notes or delivering Consents with respect to the Old Notes. You should carefully read this summary together with the entire Prospectus, including the information set forth in the section entitled "Risk Factors."*

*Unless the context otherwise requires or as otherwise indicated: references in this Prospectus to "we," "our" and "us" refer to Energy Future Holdings Corp. and its subsidiaries; references to "EFH Corp.," "EFCH," "TCEH," "EFIH" and "EFIH Finance" refer to Energy Future Holdings Corp., Energy Future Competitive Holdings Company, Texas Competitive Electric Holdings Company LLC, Energy Future Intermediate Holding Company LLC and EFIH Finance Inc., respectively, and not to any of their respective subsidiaries; and references to "Oncor Holdings" and "Oncor" refer to Oncor Electric Delivery Holdings Company LLC and Oncor Electric Delivery Company LLC, respectively, with or without their subsidiaries as indicated in context.*

*Investment funds associated with or designated by Kohlberg Kravis Roberts & Co. ("KKR"), TPG Capital, L.P. ("TPG") and Goldman, Sachs & Co. ("Goldman Sachs" and, together with KKR and TPG, the "Sponsor Group"), and certain other co-investors (collectively with the Sponsor Group, the "Investors"), own EFH Corp. through Texas Energy Future Holdings Limited Partnership ("Texas Holdings"), with the Sponsor Group controlling Texas Holdings' general partner, Texas Energy Future Capital Holdings LLC.*

### Our Businesses

We are a Dallas–based energy company with operations consisting of competitive and regulated energy businesses in Texas. EFH Corp. is a holding company conducting its operations principally through its subsidiaries, TCEH and Oncor. TCEH is wholly–owned, and EFH Corp. holds an approximately 80% interest in Oncor.

TCEH is a holding company for subsidiaries engaged in competitive electricity market activities largely in Texas including electricity generation, wholesale energy sales and purchases, commodity risk management and trading activities, and retail electricity sales. EFCH is the parent company of TCEH and a direct subsidiary of EFH Corp.

As of June 30, 2010, TCEH owned or leased 17,519 megawatts ("MW") of generation capacity in Texas, which consists of lignite/coal, nuclear and natural gas–fueled generation facilities. This amount includes two new lignite–fueled units (Sandow 5 and Oak Grove) that achieved substantial completion (as defined in the EPC agreements for the units) in fall of 2009 but does not include one new lignite–fueled unit (Oak Grove) that achieved substantial completion (as defined in the EPC Agreement for the unit) in June 2010. In addition, TCEH is the largest purchaser of wind–generated electricity in Texas and the fifth largest in the United States. TCEH provides competitive electricity and related services to more than two million retail electricity customers in Texas.

EFIH, a direct subsidiary of EFH Corp., is a holding company whose wholly–owned subsidiary, Oncor Holdings, holds a majority interest (approximately 80%) in Oncor. Oncor is a regulated electricity transmission and distribution company, principally engaged in providing delivery services to retail electric providers, including subsidiaries of TCEH, that sell power in the north–central, eastern and western parts of Texas.

Oncor is engaged in regulated electricity transmission and distribution operations in Texas that are primarily regulated by the PUCT. Oncor provides both distribution services to retail electric providers that sell electricity

12

EFIHMW00051957

EFIHMW00051935

Table of Contents

to consumers and transmission services to other electricity distribution companies, cooperatives and municipalities. Oncor operates the largest transmission and distribution system in Texas, delivering electricity to approximately three million homes and businesses and operating more than 117,000 miles of transmission and distribution lines. A significant portion of Oncor's revenues represent fees for delivery services provided to TCEH. Distribution revenues from TCEH represented 38% of Oncor's total revenues for the year ended December 31, 2009 and 37% for the six months ended June 30, 2010.

EFH Corp. and Oncor have implemented certain structural and operational "ring–fencing" measures based on commitments made by Texas Holdings and Oncor to the PUCT that are intended to enhance the credit quality of Oncor. These measures serve to mitigate Oncor's and Oncor Holdings' credit exposure to Texas Holdings and its other subsidiaries (collectively, the "Texas Holdings Group") and to reduce the risk that the assets and liabilities of Oncor or Oncor Holdings would be substantively consolidated with the assets and liabilities of the Texas Holdings Group in the event of a bankruptcy of one or more of those entities.

At June 30, 2010, we had approximately 9,100 full-time employees (including approximately 3,825 at Oncor), including approximately 2,730 employees under collective bargaining agreements (including approximately 690 at Oncor).

### The Sponsor Group

### KKR

Founded in 1976 and led by Henry Kravis and George Roberts, KKR is a leading global alternative asset manager with $54.7 billion in assets under management as of March 31, 2010. With over 600 people and 14 offices around the world, KKR manages assets through a variety of investment funds and accounts covering multiple asset classes. KKR seeks to create value by bringing operational expertise to its portfolio companies and through active oversight and monitoring of its investments. KKR complements its investment expertise and strengthens interactions with investors through its client relationships and capital markets platforms. KKR is publicly traded on the New York Stock Exchange (NYSE: KKR).

### TPG

TPG is a leading private investment firm with approximately $45 billion of assets under management as of March 31, 2010. The firm was founded in 1992 and is led by David Bonderman and James G. Coulter. Through its global buyout platform, TPG Capital, the firm generally makes significant investments in companies through acquisitions and restructurings across a broad range of industries throughout North America, Europe, Asia and Australia. Notable investments by TPG's energy, power and commodities practice have included Texas Genco, Kraton Performance Polymers and Valerus Compression Services.

### Goldman Sachs

The Goldman Sachs Group, Inc. is a bank holding company and a leading global investment banking, securities and investment management firm. Established in 1986, the firm's Principal Investment Area ("PIA") is part of the Merchant Banking Division and includes the GS Capital Partners, GS Loan Partners and GS Mezzanine Partners funds. Since 1986, PIA has formed 15 investment vehicles aggregating $80 billion of capital. GS Capital Partners VI, L.P., with $20.3 billion in equity, is the Goldman Sachs Group, Inc.'s current primary investment vehicle for privately negotiated equity investments across the globe.

13

EFIHMW00051958

EFIHMW00051935

Table of Contents

Recent Developments

*Liability Management Program*

In October 2009, EFH Corp. implemented a liability management program focused on improving its balance sheet by reducing debt and extending debt maturities.

July 2010 Liability Management Transaction

As part of its liability management program, on July 2, 2010, EFH Corp. consummated a private placement exchange transaction with an institutional investor. In the transaction, EFH Corp. exchanged approximately $412 million aggregate principal amount of EFH Corp. 10.000% Notes plus accrued and unpaid interest on the EFH Corp. Series P Notes (defined below) for approximately $549 million aggregate principal amount of its 5.55% Series P Senior Notes due November 15, 2014 (the "EFH Corp. Series P Notes"). Prior to the transaction, the institutional investor, who held a majority of the outstanding aggregate principal amount of the EFH Corp. Series P Notes, gave its consent to certain amendments to the Indenture (For Unsecured Debt Securities Series P), dated as of November 1, 2004, between EFH Corp. and Bank of New York Mellon ("BNY"), and related documents (collectively, the "Series P Indenture"). The Series P Indenture governs the EFH Corp. Series P Notes. As a result of the consent, EFH Corp. and BNY, as trustee under the Series P Indenture, entered into a Supplemental Indenture, dated as of July 1, 2010 (the "Series P Supplemental Indenture"), that amended and supplemented the Series P Indenture. The amendments to the Series P Indenture, among other things, modify or eliminate substantially all of the restrictive covenants contained in the Series P Indenture, modify or eliminate certain events of default, modify covenants regarding mergers and consolidations and modify or eliminate certain other provisions of the Series P Indenture, including the limitation on the incurrence of secured indebtedness.

Liability Management Program Activities Since the Start of the Second Quarter

Since the start of the second quarter of 2010, under its liability management program, EFH Corp. has acquired (including the transactions described above but not including the exchange offers contemplated in this Prospectus), in aggregate, approximately $1.061 billion principal amount of its and TCEH's outstanding debt. As consideration for this acquired debt, EFH Corp. has issued approximately $527 million principal amount of EFH Corp. 10.000% Notes and paid approximately $235 million of cash (excluding accrued interest payments). These transactions have resulted in EFH Corp. capturing approximately $299 million of debt discount since the start of the second quarter of 2010.

Total Liability Management Program to Date

Since October 2009, when EFH Corp. began its liability management program, including the transactions described above but not including the Exchange Offer contemplated in this prospectus, EFH Corp. (together with EFIH) has acquired, in aggregate, approximately $1.465 billion principal amount of its and TCEH's outstanding debt. As consideration for this acquired debt, EFH Corp. has issued approximately $561 million principal amount of EFH Corp. 10.000% Notes and $115 million principal amount of EFH Corp. 9.75% Notes and paid approximately $235 million of cash (excluding accrued interest payments) and EFIH has issued approximately $141 million principal amount of EFIH 9.75% Notes. These transactions have resulted in EFH Corp. capturing approximately $413 million of debt discount under its liability management program.

The following is a summary of the principal amount of debt acquired to date under EFH Corp.'s liability management program:

- approximately $566 million of EFH Corp. Series P Notes;

14

EFIHMW00051959

EFIHMW00051935

Table of Contents

- approximately $10 million of EFH Corp.'s 6.50% Series Q Senior Notes due 2024;

- approximately $6 million of EFH Corp.'s 6.55% Series R Senior Notes due 2034;

- approximately $213 million of EFH Corp.'s Old Cash-Pay Notes;

- approximately $266 million of EFH Corp.'s Old Toggle Notes;

- approximately $332 million of TCEH's 10.25% Senior Notes due 2015 and 10.25% Senior Notes due 2015, Series B (collectively, the "TCEH Notes");

- approximately $52 million of TCEH's 10.50%/11.25% Senior Toggle Notes due 2016 (the "TCEH Toggle Notes"); and

- approximately $20 million of TCEH's initial term loans under its Senior Secured Credit Facilities.

## Exchange Agreements

On July 15, 2010, EFH Corp., EFIH and EFIH Finance entered into exchange agreements with certain institutional investors that are holders of certain of the Old Notes, which we refer to as the Exchange Agreements, pursuant to which such holders agreed to participate in the exchange offers and the consent solicitation. Pursuant to the terms of the Exchange Agreements, at or prior to the Early Tender Date and the Consent Date such holders tendered and delivered consents in respect of approximately $2.3 billion aggregate principal amount of Old Notes, representing approximately 52% of the aggregate principal amount of outstanding Old Notes, in the exchange offers and the consent solicitation.

15

EFIHMW00051960

EFIHMW00051935

Table of Contents

### Organizational Structure

The chart below is a summary of EFH Corp.'s organizational and ownership structure and illustrates our long–term debt as of June 30, 2010, after giving effect to repurchases and exchanges of EFH Corp.'s and its subsidiaries' notes since June 30, 2010 described in "—Recent Developments—Liability Management Program" and under "Debt Related Activity in 2010 – 2010 Debt Exchanges and Repurchases" in Note 6 to EFH Corp.'s unaudited historical interim condensed consolidated financial statements and related notes for the three and six months ended June 30, 2010 included elsewhere in this Prospectus, as well as the issuance of New EFIH Senior Secured Notes offered by this Prospectus. Please see "Capitalization" for further information regarding our outstanding debt amounts after giving effect to the completion of the exchange offers. The chart below excludes subsidiaries of EFH Corp. that are not subsidiaries of EFH or EFCH, including TXU Receivables Company. TXU Receivables Company conducts an accounts receivable securitization program.



(1)    Represents Old Notes subject to the exchange offers and consent solicitation. See "Capitalization".
(2)    EFH Corp.'s 5.55% Series P Senior Notes due 2014, 6.50% Series Q Senior Notes due 2024 and 6.55% Series R Senior Notes due 2034 (collectively, the "Legacy Notes"). Principal amount excludes $582 million aggregate principal amount of Legacy Notes held by EFH Corp. and EFIH.

EFIHMW00051961

EFIHMW00051935

**PX 030**
**Page 27 of 734**

Table of Contents

(3)   See "Capitalization". The New EFIH Senior Secured Notes will not be guaranteed by EFH Corp., EFCH or any of EFCH's subsidiaries.
(4)   Ring–fenced entities are all unrestricted under the indenture governing the New EFIH Senior Secured Notes, are not subject to the covenants and events of default thereof and are not guaranteeing the New EFIH Senior Secured Notes.
(5)   Principal amount excludes $386 million held by EFH Corp. and EFIH.
(6)   Principal amount excludes $20 million held by EFH Corp.
(7)   Substantially all of the subsidiaries of TCEH are engaged in competitive market activities.

17

EFIHMW00051962

EFIHMW00051935

**PX 030
Page 28 of 734**

Table of Contents

### Additional Information

EFH Corp. was incorporated in Texas in 1996. EFIH was formed in Delaware in 2007. EFIH Finance was incorporated in Delaware in 2009. The Offeror's and EFH Corp.'s principal executive offices are located at Energy Plaza, 1601 Bryan Street, Dallas, TX 75201−3411. The telephone number of the Offeror's and EFH Corp.'s principal executive office is (214) 812−4600. The Offeror's and EFH Corp.'s website is *http://www.energyfutureholdings.com*. Information on or connected to the Offeror's and EFH Corp.'s website does not constitute part of this Prospectus.

18

EFIHMW00051963

EFIHMW00051935

**PX 030
Page 29 of 734**

Table of Contents

**Summary of the Terms of the Exchange Offers and the Consent Solicitation**

*The summary below describes the principal terms of the exchange offers and the consent solicitation. Certain of the terms and conditions described below are subject to important limitations and exceptions. For a more complete understanding of the terms and conditions of the exchange offers and the consent solicitation, you should read this entire Prospectus.*

| | |
|---|---|
| The Exchange Offers | Upon the terms and subject to the conditions of the exchange offers, the Offeror is offering to exchange outstanding Old Notes validly tendered and not validly withdrawn for the consideration set forth in this Prospectus. The exchange offers constitute a single offer for both the Old Cash–Pay Notes and the Old Toggle Notes |
| Maximum Exchange Amount | The maximum aggregate principal amount of New EFIH Senior Secured Notes issuable in the exchange offers will not exceed \$2.18 billion. The maximum principal amount of New EFIH Senior Secured Notes issuable in the exchange offers is referred to in this Prospectus as the "Maximum Exchange Amount." Subject to applicable law, the Offeror reserves the right, but is not obligated, to increase or decrease the Maximum Exchange Amount. If a change is made to the amount of securities offered to be exchanged pursuant to the exchange offers, including any change to the Maximum Exchange Amount, the exchange offers will remain open for at least ten business days from (and including) the date of the announcement of such change to the extent required by applicable law. |
| Acceptance; Proration | Upon the terms and subject to the conditions of the exchange offers, including the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, all Old Notes validly tendered (and not validly withdrawn) in the exchange offers will be accepted in the exchange offers. The maximum principal amount of each issue of Old Notes that will be accepted for exchange is the outstanding principal amount of such issue validly tendered (and not validly withdrawn) as limited by the Maximum Exchange Amount and the resulting prorations, if necessary. In the event that proration of validly tendered (and not validly withdrawn) Old Notes is required, the Old Toggle Notes and the Old Cash–Pay Notes will be treated equally in calculating the proration. |
| | If proration of validly tendered (and not validly withdrawn) Old Notes is required, the Offeror will determine the final proration promptly after the Expiration Date and will announce the results of the final proration by press release. To determine the principal amount accepted of each tender subject to proration, the principal amount of such tender will be multiplied by the proration rate, which will be the same for both issues of Old Notes, and the resultant amount rounded down to the nearest permitted denomination of the particular issue of Old Notes. The Offeror will not be able to determine the final proration prior to the Expiration Date. |
| | Based on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) as of the Early Tender Date, and |

19

EFIHMW00051964

EFIHMW00051935

**PX 030**
**Page 30 of 734**

Table of Contents

assuming no tendered Old Notes are validly withdrawn, the amount of Old Notes accepted for exchange will be prorated. Assuming that no additional Old Notes are validly tendered after the Early Tender Date, no Old Notes that were validly tendered at or prior to the Early Tender Date are validly withdrawn prior to the Expiration Date, and the Offeror accepts for exchange the maximum principal amount of Old Notes allowable under the terms and conditions of the exchange Offers, the Offeror would accept for exchange in the exchange offers approximately 80.4% of the aggregate principal amount of the Old Cash‑Pay Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and approximately 80.4% of the aggregate principal amount of the Old Toggle Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date.

| | |
|---|---|
| Consideration Offered in Exchange Offers | Upon the terms and subject to the conditions of the exchange offers, including the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, participating holders of Old Notes will be eligible to receive, in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn), the following: |

(i) for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange, a principal amount of New EFIH Senior Secured Notes and cash equal, in the aggregate, to the "Total Consideration Amount" as listed in the table on page ii of this Prospectus under "Total Consideration Amount if Tendered At or Prior to the Early Tender Date," with the amount of New EFIH Senior Secured Notes (the "Total Notes Consideration") and the amount of cash (the "Total Cash Consideration") comprising the Total Consideration Amount depending on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, as described below.

(ii) for Old Notes validly tendered (and not validly withdrawn) after the Early Tender Date and at or prior to the Expiration Date and accepted for exchange, New EFIH Senior Secured Notes, referred to as the "Exchange Consideration" as listed in the table on page ii of this Prospectus under "Exchange Consideration if Tendered After the Early Tender Date and At or Prior to the Expiration Date." No cash consideration will be payable with respect to Old Notes that are validly tendered after the Early Tender Date.

The Offeror was advised by the Exchange Agent that, as of the Early Tender Date, a total of $4,469,868,133 aggregate principal amount of outstanding Old Notes, representing approximately 99.51% of the outstanding Old Notes, were validly tendered (and not validly withdrawn) in the exchange offers. Of the tendered Old Notes, as of the Early Tender Date, $1,776,033,000 aggregate principal amount of the outstanding Old Cash‑Pay Notes had been validly tendered and

20

EFIHMW00051965

EFIHMW00051935

PX 030
Page 31 of 734

Table of Contents

not validly withdrawn and $2,693,835,133 aggregate principal amount of the outstanding Old Toggle Notes had been validly tendered and not validly withdrawn.

Therefore, upon the terms and subject to the conditions of the exchange offers, the Total Consideration Amount payable for each $1,000 principal amount of each issue of Old Notes validly tendered at or prior to the Early Tender Date (and not validly withdrawn prior to the Expiration Date) and accepted for exchange, will consist of:

- in the case of Old Cash–Pay Notes, Total Cash Consideration of $146.46 and Total Notes Consideration of $638.54 principal amount of New EFIH Senior Secured Notes, and

- in the case of Old Toggle Notes, Total Cash Consideration of $134.33 and Total Notes Consideration of $585.67 principal amount of New EFIH Senior Secured Notes.

The Total Cash Consideration and the Total Notes Consideration payable per $1,000 principal amount of Old Notes as set forth above will not be affected by proration. The amount of Total Cash Consideration set forth above does not include the cash consent payment separately payable with respect to Consents validly delivered (and not validly revoked) at or prior to the Consent Date or accrued and unpaid interest, if any, payable with respect to the Old Cash–Pay Notes.

Accrued and Unpaid Interest

All holders whose Old Cash–Pay Notes are accepted for exchange will receive an amount equal to accrued and unpaid interest on such Old Cash–Pay Notes, if any, in cash, from the last applicable interest payment date to, but not including, the Settlement Date. Holders whose Old Toggle Notes are accepted for exchange will not separately receive any accrued and unpaid payment–in–kind interest with respect to such Old Toggle Notes because the amount of such accrued interest through the Settlement Date has been included in determining the consideration being offered in the exchange offers for the Old Toggle Notes. If the Settlement Date occurs later than August 17, 2010, then the consideration being offered in the exchange offers for the Old Toggle Notes will be adjusted to account for the additional interest accrued after such date to, but not including, the Settlement Date.

Fractions

The Offeror will not accept any tender of Old Notes that would result in the issuance of less than $2,000 principal amount of New EFIH Senior Secured Notes to a participating holder. The aggregate principal amount of New EFIH Senior Secured Notes issued to each participating holder for all Old Notes validly tendered (and not validly withdrawn) will be rounded down, if necessary, to $2,000 or the nearest whole multiple of $1,000 in excess thereof. This rounded amount will be the principal amount of New EFIH Senior Secured

21

EFIHMW00051966

EFIHMW00051935

Table of Contents

|  |  |
|---|---|
|  | Notes you will receive, and no additional cash will be paid in lieu of any principal amount of New EFIH Senior Secured Notes not received as a result of rounding down. |
| Aggregate Cash Payment in Exchange Offers | The aggregate amount of cash payable in the exchange offers, excluding the cash consent payments payable with respect to Consents validly delivered and not validly revoked at or prior to the Consent Date and accrued and unpaid interest, if any, payable with respect to such Old Cash–Pay Notes, is $500 million, which aggregate amount may be reduced as a result of proration or withdrawals, if any, after the Early Tender Date of Old Notes previously validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. The potential reduction of this cash amount will not change the amount of Total Cash Consideration to be paid in exchange for each $1,000 principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. This aggregate amount of cash will be paid as the Total Cash Consideration pro rata in exchange for Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange such that each Old Toggle Note and each Old Cash–Pay Note validly tendered (and not validly withdrawn) at or prior to the Early Tender Date and accepted for exchange will receive the same percentage of its Total Consideration Amount in cash. Based on the reported aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date, the percentage of the total consideration payable for each $1,000 principal amount of each issue of Old Notes that consists of cash consideration will be approximately 18.657%. |
| The Consent Solicitation | Upon the terms and subject to the conditions described in this Prospectus and the Consent and Letter of Transmittal, EFH Corp. solicited Consents in the consent solicitation of holders of the Old Notes to the Proposed Amendments. |
|  | The solicitation of consents for the Old Notes expired on the Consent Date. Old Notes validly tendered pursuant to the exchange offers (and not validly withdrawn) at or prior to the Consent Date were deemed to include Consents to the Proposed Amendments. The completion, execution and delivery of a Consent and Letter of Transmittal, or transmission of an Agent's Message, in connection with a valid tender of Old Notes pursuant to the exchange offers at or prior to the Consent Date constituted the delivery of Consents with respect to such Old Notes. Holders could not validly tender Old Notes in the exchange offers at or prior to the Consent Date without delivering the related Consents in the consent solicitation and could not validly withdraw previously tendered Old Notes at or prior to the Consent Date without revoking the related Consents. Holders could not deliver Consents in the consent solicitation without validly tendering their Old Notes in the exchange offers at or prior to the Consent Date and could only validly revoke Consents by validly withdrawing the |

22

EFIHMW00051967

EFIHMW00051935

Table of Contents

previously tendered related Old Notes at or prior to the Consent Date or by revoking Consents after the Consent Date and prior to the execution and delivery of the Supplemental Indenture by the parties thereto. Because it was expected that the Supplemental Indenture would be executed and delivered promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments, holders were advised that they should not expect to be able to revoke their Consents after the Consent Date. Consents may no longer be revoked because the Consent Date has passed and the Supplemental Indenture has been executed and delivered by the parties thereto. Holders may tender Old Notes after the Consent Date and at or prior to the Expiration Date without delivering Consents. However, holders tendering Old Notes after the Early Tender Date will not be eligible to receive the applicable Total Consideration Amount, including the Total Cash Consideration, or the cash consent payment.

Because the requisite Consents have been received and the Supplemental Indenture has been executed and delivered by the parties thereto, EFH Corp. will pay to each holder, in respect of such holder's Old Notes as to which Consents are validly delivered and not validly revoked at or prior to the Consent Date, a cash consent payment of $2.50 per $1,000 principal amount of such Old Notes. Such consent payment is in addition to any Total Consideration Amount or Exchange Consideration that may be payable to a holder in respect of its Old Notes accepted for exchange. Given the amount of Old Notes as to which Consents have been validly delivered (and not validly revoked), the aggregate amount of consent payments payable in relation to the consent solicitation is approximately $11,174,670. If all holders of Old Notes had validly delivered (and not validly revoked) Consents at or prior to the Consent Date, the aggregate maximum amount of consent payments payable would have been approximately $11,230,000. The consent payments will be made on the Settlement Date or promptly following the termination of the exchange offers. EFH Corp.'s obligation to make consent payments is not conditioned upon completion of the exchange offers. If the exchange offers are terminated, the Proposed Amendments in the executed Supplemental Indenture will not become operative. See "Procedures for Tendering Old Notes and Delivering Consents" for more information.

The Proposed Amendments

The Proposed Amendments would eliminate substantially all of the restrictive covenants contained in the Old Notes Indenture and the Old Notes, eliminate certain events of default, modify covenants regarding mergers and consolidations, and modify or eliminate certain other provisions, including certain provisions relating to defeasance contained in the Old Notes Indenture and Old Notes that would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event. See "Proposed Amendments" for more information.

23

EFIHMW00051968

EFIHMW00051935

**PX 030
Page 34 of 734**

**Table of Contents**

In addition to the foregoing, execution and delivery of the Consent and Letter of Transmittal will constitute an express waiver by a consenting holder of the Old Notes with respect to all claims against EFH Corp., the guarantors of the Old Notes and the Sponsor Group of any breach, default or event of default that may have arisen under the Old Notes Indenture. As of the date of this Prospectus, EFH Corp. is not aware of any such breaches, defaults or events of default.

Requisite Consents

In order for the Proposed Amendments to be adopted with respect to the Old Notes, it was necessary for Consents to be validly delivered and not validly revoked at or prior to the Consent Date in respect of at least a majority of the outstanding aggregate principal amount of the Old Notes. Holders of Old Notes voted together as a single class with respect to the Proposed Amendments that were the subject of the consent solicitation. Old Notes held by members of the Sponsor Group and their affiliates were not considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of the Old Notes delivered Consents necessary to adopt the Proposed Amendments.

EFH Corp. has received the requisite Consents to adopt the Proposed Amendments and, having received the requisite Consents, EFH Corp., the guarantors of the Old Notes and The Bank of New York Mellon Trust Company, N.A., as trustee under the Old Notes Indenture, have executed and delivered the Supplemental Indenture to effectuate the Proposed Amendments. The Supplemental Indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in this Prospectus.

Consent Date

To deliver Consents pursuant to the consent solicitation, holders must have validly tendered (and not validly withdrawn) their Old Notes, and thereby delivered Consents related to such Old Notes, at or prior to 5:00 p.m., New York City time, on July 29, 2010.

Early Tender Date

To tender by the Early Tender Date, holders must have validly tendered (and not validly withdrawn) their Old Notes at or prior to 5:00 p.m., New York City time, on July 29, 2010.

Expiration Date

The exchange offers will expire at midnight, New York City time, on August 12, 2010, unless extended by the Offeror.

Procedure for Tenders and Delivery of Consents

If a holder wishes to participate in the exchange offers and such holder's Old Notes are held by a custodial entity such as a broker, dealer, commercial bank, trust company or other nominee, such holder must instruct such custodial entity (pursuant to the procedures of the custodial entity) to tender the Old Notes. In order to participate in the consent solicitation, Old Notes must have been validly tendered (and not validly withdrawn), thereby delivering the related Consent, at or prior to the Consent Date.

24

EFIHMW00051969

EFIHMW00051935

**Table of Contents**

Custodial entities that are participants in DTC must tender Old Notes and deliver Consents through ATOP, by which the custodial entity and the beneficial owner on whose behalf the custodial entity is acting agree to be bound by the Consent and Letter of Transmittal. A **Consent and Letter of Transmittal need not be completed and submitted in connection with tenders effected through ATOP.**

| | |
|---|---|
| No Guaranteed Delivery | The exchange offers will not provide for guaranteed delivery procedures with respect to any issue of Old Notes. |
| Withdrawal of Tenders and Revocation of Consents | A holder may withdraw the tender of such holder's Old Notes at any time prior to the Expiration Date (and, if not previously accepted for exchange, after the expiration of 40 business days from July 16, 2010) by submitting a notice of withdrawal to the Exchange Agent using ATOP procedures and/or upon compliance with the other procedures described under "Withdrawal of Tenders and Revocation of Consents." The withdrawal of any Old Notes at or prior to the Consent Date would have constituted a revocation of the related Consents. Consents could not be revoked prior to the Consent Date except by withdrawing tendered Old Notes at or prior to the Consent Date. Consents could have been revoked after the Consent Date by revoking such Consents prior to the execution and delivery of the Supplemental Indenture. Because it was expected that the Supplemental Indenture would be executed and delivered promptly following the Consent Date assuming receipt of the requisite Consents for the Proposed Amendments, holders were advised that they should not expect to be able to revoke their Consents after the Consent Date. Any Consents that were not revoked at or prior to the later of the Consent Date and the execution and delivery of the Supplemental Indenture may no longer be revoked. A withdrawal of Old Notes will no longer revoke any related Consents, and withdrawing holders will be subject to the Proposed Amendments if they become operative. |
| Settlement Date | Subject to the terms and conditions of the exchange offers, the settlement date for the exchange offers will occur promptly following the Expiration Date (such date, the "Settlement Date"). Assuming that the exchange offers are not extended, the Offeror expects that the Settlement Date will be on or about August 17, 2010, the third business day following the Expiration Date. |
| The New EFIH Senior Secured Notes | For a description of the terms of the New EFIH Senior Secured Notes, see "—Summary of New EFIH Senior Secured Notes" and "Description of the Notes." For a comparison of the principal differences between the Old Notes and the New EFIH Senior Secured Notes, see "Comparison of Principal Differences Between Old Notes and New EFIH Senior Secured Notes." |
| Collateral | The New EFIH Senior Secured Notes will be secured, equally and ratably with the EFIH 9.75% Notes and EFIH's guarantees of the |

25

EFIHMW00051970

EFIHMW00051935

Table of Contents

EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, by EFIH's pledge of 100% of the membership interests and other investments it owns in Oncor Holdings (which currently represent an approximate 80% equity interest in Oncor).

| | |
|---|---|
| Conditions to the Exchange Offers and the Consent Solicitation | The exchange offers are conditioned on at least a majority of the outstanding aggregate principal amount of Old Notes being validly tendered (and not validly withdrawn) at or prior to the Expiration Date. As of the date of this Prospectus, a majority of the outstanding aggregate principal amount of Old Notes have been validly tendered (and not validly withdrawn). The exchange offers are also subject to the other conditions described under "Conditions of the Exchange Offers and the Consent Solicitation," including the condition that the registration statement, of which this Prospectus forms a part, has been declared effective by the SEC (which condition cannot be waived). Subject to applicable law, the Offeror has the right to terminate or withdraw the exchange offers if any of the applicable conditions described under "Conditions of the Exchange Offers and the Consent Solicitation" are not satisfied or waived by the Expiration Date. The exchange offers constitute a single offer for both the Old Cash–Pay Notes and the Old Toggle Notes. The conditions to the exchange offers will be satisfied or waived with respect to the single offer being made for both issues of Old Notes. Old Notes of both issues will be exchanged in the exchange offers if Old Notes of either issue are exchanged in the exchange offers. |
| Consequences of Failure to Tender | If the Offeror completes the exchange offers, obligations with respect to any Old Notes not tendered by holders or not accepted for exchange or otherwise left outstanding following the completion of the exchange offers will not be secured by the Collateral and will therefore be effectively subordinated to the New EFIH Senior Secured Notes and the Existing Secured Notes to the extent of the value of the Collateral. Further, because the requisite Consents have been received with respect to the Old Notes Indenture and the Supplemental Indenture giving effect to the related Proposed Amendments has been executed and delivered by the parties thereto, if the Proposed Amendments become operative, holders of Old Notes left outstanding following completion of the exchange offers will no longer be entitled to the benefits of the covenants, events of default and other provisions that are eliminated or modified pursuant to such Proposed Amendments. In addition, to the extent that Old Notes are tendered and accepted in the exchange offers, any existing trading market for the remaining Old Notes may become further limited. The smaller outstanding principal amount may make the trading price of the Old Notes that are not tendered and accepted for payment more volatile. Consequently, the liquidity, market value and price volatility of Old Notes that remain outstanding may be materially and adversely affected. For a description of other consequences of failing to tender |

26

EFIHMW00051971

EFIHMW00051935

**PX 030**
**Page 37 of 734**

Table of Contents

your Old Notes pursuant to the exchange offers, see "Risk Factors— Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange."

| | |
|---|---|
| Amendment and Termination | Subject to applicable law, the Offeror may terminate or withdraw at its sole discretion the exchange offers if any condition to the exchange offers is not satisfied or waived by the Expiration Date. The Offeror reserves the right, subject to applicable law, to (i) waive any and all of the conditions of the exchange offers (except for the condition that the registration statement, of which this Prospectus forms a part, has been declared effective by the SEC (which condition cannot be waived)) at or prior to the Expiration Date, and (ii) amend the terms of the exchange offers. In the event that the exchange offers are terminated, withdrawn or otherwise not completed at or prior to the Expiration Date, no consideration or consent payment will be paid or become payable to holders who have validly tendered their Old Notes pursuant to the exchange offers and delivered their Consents in the consent solicitation, other than the consent payments of $2.50 per $1,000 principal amount of Old Notes as to which Consents are validly delivered and not validly revoked. In any such event, (i) Old Notes previously tendered pursuant to the exchange offers will be promptly returned to the tendering holders and (ii) the Proposed Amendments in the executed Supplemental Indenture will not become operative. See "General Terms of the Exchange Offers and Consent Solicitation—Extension, Termination or Amendment." |
| Use of Proceeds | Neither EFH Corp. nor the Offeror will receive any cash proceeds from the exchange offers or consent solicitation. Any Old Notes exchanged in the exchange offers may remain outstanding and held by EFIH or be retired and cancelled. |
| Taxation | For a discussion of material U.S. federal income tax consequences of the exchange offers, see "Material U.S. Federal Income Tax Considerations." |
| Regulatory Approvals | Other than the declaration of effectiveness by the SEC of the registration statement, of which this Prospectus forms a part, the Offeror is not aware of any regulatory approvals necessary to complete the exchange offers. |
| Dealer Managers and Solicitation Agents | Citigroup Global Markets Inc. and Goldman Sachs & Co. are acting as lead dealer managers and solicitation agents in the United States, and Banc of America Securities LLC, Credit Suisse Securities (USA) LLC, J.P. Morgan Securities Inc. and Morgan Stanley & Co. Incorporated are also acting as dealer managers and solicitation agents in the United States (together, the "Dealer Managers") for the exchange offers and consent solicitation. The addresses and telephone numbers of the lead Dealer Managers are listed on the back cover of this Prospectus. |

27

EFIHMW00051972

EFIHMW00051935

**Table of Contents**

| | |
|---|---|
| Exchange Agent and Information Agent | Global Bondholder Services Corporation. The address and telephone numbers of the Exchange Agent and Information Agent are listed on the back cover of this Prospectus. |
| Risk Factors | **In addition to the other information included in this Prospectus, you should carefully consider the information set forth in the section entitled "Risk Factors" beginning on page 38 before deciding whether or not to participate in the exchange offers.** |

28

EFIHMW00051973

EFIHMW00051935

**PX 030
Page 39 of 734**

Table of Contents

**Summary of New EFIH Senior Secured Notes**

The summary below describes the principal terms of the New EFIH Senior Secured Notes and the related indenture. Certain of the terms and conditions described below are subject to important limitations and exceptions. The "Description of the Notes" section of this Prospectus contains more detailed descriptions of the terms and conditions of the New EFIH Senior Secured Notes and the related indenture.

| | |
|---|---|
| Issuer | Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, the "Offeror") |
| Securities Offered | 10.000% Senior Secured Notes due 2020. |
| Maturity Date | December 1, 2020. |
| Interest Rate | The New EFIH Senior Secured Notes will accrue interest at the rate of 10.000% per annum. |
| Interest Payment Dates | Interest on the New EFIH Senior Secured Notes is payable on June 1 and December 1 of each year, commencing on December 1, 2010. |
| Ranking | The New EFIH Senior Secured Notes will: |

- be senior obligations of the Offeror and will rank equally in right of payment with all existing and future senior indebtedness of the Offeror (including the EFIH 9.75% Notes and EFIH's guarantees of certain of EFH Corp.'s indebtedness, including the Old Notes, the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes);

- will be secured, equally and ratably with the EFIH 9.75% Notes and EFIH's guarantee of the EFH Corp. 10.000% Notes and the EFH Corp. 9.75% Notes, by the pledge of any investments EFIH owns in Oncor Holdings or any of its subsidiaries, which on the date the New EFIH Senior Secured Notes are issued in the exchange offers will consist of all of the membership interests EFIH owns in Oncor Holdings;

- be effectively senior to all unsecured indebtedness of the Offeror and any indebtedness secured by the Collateral on a subordinated basis, to the extent of the value of the Collateral;

- be effectively subordinated to any indebtedness of the Offeror secured by assets of the Offeror other than the Collateral, to the extent of the value of the assets securing such indebtedness;

- be structurally subordinated to all indebtedness and other liabilities of EFIH's subsidiaries (other than EFIH Finance), including Oncor Holdings and its subsidiaries, any of EFIH's future foreign subsidiaries and any other unrestricted subsidiaries; and

- be senior in right of payment to any future subordinated indebtedness of the Offeror.

29

EFIHMW00051974

EFIHMW00051935

Table of Contents

As of June 30, 2010, on a pro forma basis after giving effect to the transactions contemplated by this Prospectus, assuming tender and acceptance of all Old Notes on a pro rata basis up to the Maximum Exchange Amount, (1) the Offeror would not have had any senior indebtedness other than the EFIH 9.75% Notes and the New EFIH Senior Secured Notes and the guarantee by EFIH of the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and any Old Notes remaining outstanding following the exchange offers and (2) the New EFIH Senior Secured Notes would have been structurally subordinated to approximately $6.019 billion principal amount of indebtedness (includes long–term debt, including amounts due currently, and short–term borrowings) of the Offeror's subsidiaries (other than EFIH Finance), including all of Oncor Holdings' and its subsidiaries' indebtedness. As of June 30, 2010, Oncor had approximately $930 million of additional available capacity under its revolving credit facility (excluding $122 million of undrawn commitments from Lehman).

| | |
|---|---|
| Guarantees | The New EFIH Senior Secured Notes will not initially be guaranteed. |
| Security | The New EFIH Senior Secured Notes will be secured, equally and ratably with the EFIH 9.75% Notes and EFIH's guarantees of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, by the Collateral. As of the date of this Prospectus, $1.317 billion aggregate principal amount of EFIH 9.75% Notes, EFH Corp. 9.75% Notes and EFH Corp. 10.000% Notes were outstanding. See "Risk Factors—Risks Related to the Exchange Offers and the New EFIH Senior Secured Notes—The indenture governing the New EFIH Senior Secured Notes may not protect holders from all actions that EFIH or the Oncor Subsidiaries may take that would reduce your interest in the Collateral or that may reduce the value of the Collateral, including sales or exchanges of the Collateral or the assets of the Oncor Subsidiaries for other assets or investments." |
| Optional Redemption | The Offeror may redeem any of the New EFIH Senior Secured Notes on and after December 1, 2015 at the redemption prices set forth in this Prospectus. The Offeror may also redeem any of the New EFIH Senior Secured Notes at any time prior to December 1, 2015 at a price equal to 100% of their principal amount, plus accrued interest and a "make–whole" premium. In addition, before December 1, 2013, the Offeror may redeem up to 35% of the aggregate principal amount of the New EFIH Senior Secured Notes, using the proceeds from certain equity offerings at the redemption price set forth in this Prospectus. See "Description of the Notes—Optional Redemption." |
| Change of Control Offer | Upon the occurrence of certain transactions meeting the definition of "change of control," holders of the New EFIH Senior Secured Notes will have the right to require the Offeror to repurchase some or all of the New EFIH Senior Secured Notes at 101% of their principal amount, plus accrued and unpaid interest to the repurchase date. This |

30

EFIHMW00051975

EFIHMW00051935

Table of Contents

right is subject to important limitations. For example, this right will not apply to a transaction that would otherwise be a "change of control" if the transaction meets certain requirements. See "Description of the Notes—Repurchase at the Option of Holders—Change of Control" and the definition of "Change of Control" under "Description of the Notes."

The Offeror may not be able to pay holders the required price for New EFIH Senior Secured Notes they present to it at the time of a change of control, because the Offeror may not have enough funds at that time, or the terms of the Offeror's other indebtedness or any of its subsidiaries' indebtedness, including Oncor's revolving credit facility, may prevent the Offeror from making such payment or receiving funds from its subsidiaries in an amount sufficient to fund such payment.

See "Risk Factors—Risks Related to the Exchange Offers and the New EFIH Senior Secured Notes—The Offeror may not be able to repurchase the New EFIH Senior Secured Notes upon a change of control" and "Risk Factors—Risks Related to the Exchange Offers and the New EFIH Senior Secured Notes—We may transfer or dispose of our interests in Oncor Holdings to a third party in a manner that would result in such third party becoming the obligor under the New EFIH Senior Secured Notes, without EFIH being required to offer to repurchase the New EFIH Senior Secured Notes. The risks of an investment in the New EFIH Senior Secured Notes may increase further following such a transaction."

Important Covenants

The indenture governing the New EFIH Senior Secured Notes will contain covenants limiting EFIH's ability and the ability of its restricted subsidiaries to:

- pay dividends on or make distributions in respect of EFIH's capital stock or make other restricted payments;

- make investments (including investments in Oncor);

- incur additional debt or issue some types of preferred shares;

- create liens on assets to secure debt;

- sell assets;

- consolidate, merge, sell or otherwise dispose of all or substantially all of its assets in certain circumstances;

- enter into certain transactions with its affiliates; and

- designate its subsidiaries as unrestricted subsidiaries.

These covenants are subject to a number of important additional limitations and exceptions. EFIH is a holding company for its subsidiaries, including EFIH Finance, with no material operations of its own and only limited assets. There will initially be no restricted subsidiaries under the indenture (other than EFIH Finance, which has

31

EFIHMW00051976

EFIHMW00051935

Table of Contents

|  | no assets). Oncor Holdings, the immediate parent of Oncor, and its subsidiaries will be Unrestricted Subsidiaries under the indenture and, accordingly, will not be subject to any of the restrictive covenants or events of default in the indenture. See "Description of the Notes." |
|---|---|
| No Prior Market | The New EFIH Senior Secured Notes will be new securities for which there is currently no market. Although the Dealer Managers have informed the Offeror that they intend to make a market in the New EFIH Senior Secured Notes, they are not obligated to do so, and they may discontinue market making activities at any time without notice. Accordingly, a liquid market for the New EFIH Senior Secured Notes may not develop or be maintained. Additionally, certain of the Dealer Managers may be restricted in their market-making activities. See "Risk Factors—Risks Related to the Exchange Offers and the New EFIH Senior Secured Notes—An active trading market may not develop for the New EFIH Senior Secured Notes." |
| Listing | EFIH intends to apply to list the New EFIH Senior Secured Notes on the New York Stock Exchange. |
| Use of Proceeds | Neither EFH Corp. nor the Offeror will receive any cash proceeds from the exchange offers or the consent solicitation. Any Old Notes exchanged in the exchange offers may remain outstanding and held by EFIH or be retired and cancelled. |
| Denominations | The New EFIH Senior Secured Notes will be issued in minimum denominations of $2,000 and in integral multiples of $1,000 in excess thereof. |
| **Risk Factors** | **In addition to the other information included in this Prospectus, you should carefully consider the information set forth in the section entitled "Risk Factors" beginning on page 38 before deciding whether or not to participate in the exchange offers and the consent solicitation.** |

32

EFIHMW00051977

EFIHMW00051935

**PX 030**
**Page 43 of 734**

Table of Contents

**EFH Corp. and its Subsidiaries**
**Summary Historical Consolidated Financial Data**

The following table sets forth our summary historical consolidated financial data as of and for the periods indicated. The historical financial data as of December 31, 2009 and 2008 (Successor) and for the years ended December 31, 2009 and 2008 (Successor), the period from October 11, 2007 through December 31, 2007 (Successor) and the period from January 1, 2007 through October 10, 2007 (Predecessor) have been derived from our audited historical consolidated financial statements and related notes included elsewhere in this Prospectus. The historical financial data as of December 31, 2007 (Successor), 2006 (Predecessor) and 2005 (Predecessor) and for the years ended December 31, 2006 and 2005 (Predecessor) have been derived from our audited historical consolidated financial statements that are not included in this Prospectus. The "Predecessor" period reflects the period prior to the merger of Texas Energy Future Merger Sub Corp ("Merger Sub") with and into EFH Corp. (the "Merger"), which occurred on October 10, 2007. The historical financial data as of June 30, 2010 and for the six months ended June 30, 2010 and 2009 have been derived from our unaudited historical interim condensed consolidated financial statements and related notes included elsewhere in this Prospectus. In EFH Corp.'s opinion, such unaudited interim financial data reflects all adjustments, consisting of normal recurring accruals, necessary for the fair presentation of the results for those periods. The results of operations for the interim periods, for seasonal and other factors, are not necessarily indicative of the results to be expected for the full year or any future period.

The summary historical consolidated financial data should be read in conjunction with "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Year Ended December 31, 2009" and "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Three and Six Months Ended June 30, 2010," each included in Annex B to this Prospectus, and our historical consolidated financial statements and related notes that are included elsewhere in this Prospectus.

| | Successor | | | Predecessor | |
|---|---|---|---|---|---|
| | Year Ended December 31, | | Period from October 11, 2007 through December 31, 2007 | Period from January 1, 2007 through October 10, 2007 | Year Ended December 31, |
| | 2009 | 2008 | | | 2006 | 2005 |
| | (millions of dollars, except ratios and per share amounts) | | | | | |
| **Statement of Income Data:** | | | | | | |
| Operating revenues | $ 9,546 | $ 11,364 | $ 1,994 | $ 8,044 | $ 10,703 | $ 10,826 |
| Income (loss) from continuing operations before extraordinary loss and cumulative effect of changes in accounting principles | 408 | (9,998) | (1,361) | 699 | 2,465 | 1,775 |
| Income from discontinued operations, net of tax effect | | | | 24 | 87 | 5 |
| Extraordinary loss, net of tax effect | | | | | | (50) |
| Cumulative effect of changes in accounting principles, net of tax effect | | | | | | (8) |
| Preference stock dividends | | | | | | 10 |
| Net income (loss) | 408 | (9,998) | (1,360) | 723 | 2,552 | 1,712 |
| Net income (loss) attributable to noncontrolling interests | (64) | 160 | | | | |
| Net income (loss) attributable to EFH Corp. | 344 | (9,838) | (1,360) | 723 | 2,552 | 1,712 |
| Dividends declared per share | $ — | $ — | $ — | $ 1.30 | $ 1.67 | $ 1.26 |
| Ratio of earnings to fixed charges (a) | 1.24 | — | — | 2.30 | 5.11 | 3.80 |
| Ratio of earnings to combined fixed charges and preference dividends (a) | 1.24 | — | — | 2.30 | 5.11 | 3.74 |

33

EFIHMW00051978

EFIHMW00051935

Table of Contents

| | Successor | | | - | Predecessor | | |
|---|---|---|---|---|---|---|---|
| | Year Ended December 31, | | Period from October 11, 2007 through December 31, 2007 | | Period from January 1, 2007 through October 10, 2007 | Year Ended December 31, | |
| | 2009 | 2008 | | | 2007 | 2006 | 2005 |
| | (millions of dollars, except ratios and per share amounts) | | | | | | |
| **Statement of Cash Flows Data:** | | | | | | | |
| Cash flows provided by (used in) operating activities from continuing operations | $ 1,711 | $ 1,505 | $ (450) | | $ 2,265 | $ 4,954 | $ 2,793 |
| Cash flows provided by (used in) financing activities from continuing operations | 422 | 2,837 | 33,865 | | 1,394 | (2,332) | (1,563) |
| Cash flows used in investing activities from continuing operations | (2,633) | (2,934) | (34,563) | | (2,283) | (2,664) | (1,038) |
| **Other Financial Data:** | | | | | | | |
| Capital expenditures, including nuclear fuel | $ 2,545 | $ 3,015 | $ 716 | | $ 2,542 | $ 2,337 | $ 1,148 |

| | Successor | | | Predecessor | |
|---|---|---|---|---|---|
| | December 31, | | | December 31, | |
| | 2009 | 2008 | 2007 | 2006 | 2005 |
| | (millions of dollars) | | | | |
| **Balance Sheet Data:** | | | | | |
| Total assets | $59,662 | $59,263 | $64,804 | $27,216 | $27,978 |
| Property, plant & equipment—net | 30,108 | 29,522 | 28,650 | 18,569 | 17,006 |
| Goodwill and intangible assets | 17,192 | 17,379 | 27,319 | 729 | 728 |
| Total debt (b) | 43,426 | 42,460 | 40,834 | 12,607 | 13,380 |
| Preferred stock of subsidiaries (c) | — | — | — | — | — |
| Total equity | (1,836) | (2,318) | 6,685 | 2,140 | 475 |

(a)   Fixed charges exceeded "earnings" (net loss) by $10.469 billion and $2.034 billion for the year ended December 31, 2008 and for the period from October 11, 2007 through December 31, 2007, respectively.
(b)   Includes long-term debt, including amounts due currently, and short-term borrowings. Also includes equity-linked debt securities in the amount of $179 million for the year ended December 31, 2005.
(c)   Preferred stock outstanding at the end of 2008, 2007, 2006 and 2005 has a stated amount of $51 thousand. There was no outstanding preferred stock at the end of 2009.

34

EFIHMW00051979

EFIHMW00051935

**PX 030**
**Page 45 of 734**

Table of Contents

Although EFH Corp. continued as the same legal entity after the merger in October 2007, its "Summary Historical Consolidated Financial Data" for periods preceding the merger and for periods succeeding the merger are presented as the consolidated financial statements of the "Predecessor" and the "Successor," respectively. See "Basis of Presentation" in Note 1 to EFH Corp.'s historical consolidated financial statements for the year ended December 31, 2009 included elsewhere in this Prospectus. The consolidated financial statements of the Successor also reflect the application of "purchase accounting." Results for 2008 were significantly impacted by impairment charges related to goodwill, trade name and emission allowances intangible assets and natural gas−fueled generation plants. Results for 2010 reflect the prospective adoption of amended guidance regarding consolidation accounting standards related to variable interest entities that resulted in the deconsolidation of Oncor Holdings as discussed in Note 3 to EFH Corp.'s historical condensed consolidated financial statements for the three and six months ended June 30, 2010 included elsewhere in this Prospectus and amended guidance regarding transfers of financial assets that resulted in the accounts receivable securitization program no longer being accounted for as a sale of accounts receivable and the funding under the program now reported as short−term borrowings as discussed in Note 5 to EFH Corp.'s historical condensed consolidated financial statements for the three and six months ended June 30, 2010 included elsewhere in this Prospectus.

|  | Successor | | Successor | |
|---|---|---|---|---|
|  | Six Months Ended June 30, 2010 | | Six Months Ended June 30, 2009 | |
|  | (millions of dollars, except ratios) | | | |
| **Statement of Income Data:** | | | | |
| Operating revenues | $ | 3,992 | $ | 4,481 |
| Net income (loss) | | (71) | | 315 |
| Net income attributable to noncontrolling interests | | — | | (28) |
| Net income (loss) attributable to EFH Corp | | (71) | | 287 |
| Ratio of earnings to fixed charges (b) | | — | | 1.47 |
| Ratio of earnings to combined fixed charges and preference dividends | | — | | 1.47 |
| **Statement of Cash Flows Data:** | | | | |
| Cash flows provided by operating activities | $ | 134 | $ | 504 |
| Cash flows provided by financing activities | | 39 | | 444 |
| Cash flows used in investment activities | | (122) | | (1,478) |
| **Other Financial Data:** | | | | |
| Capital expenditures, including nuclear fuel | $ | 637 | $ | 1,364 |

|  | Successor | |
|---|---|---|
|  | June 30, 2010 | |
|  | (millions of dollars) | |
| **Balance Sheet Data:** | | |
| Total assets | $ | 51,042 |
| Property, plant & equipment—net | | 20,770 |
| Goodwill and intangible assets | | 12,765 |
| Total debt (a) | | 37,914 |
| Total equity | | (3,208) |

| (a) | Includes long−term debt, including amounts due currently, and short−term borrowings. |
|---|---|
| (b) | Fixed charges exceeded earnings by $141 million for the six months ended June 30, 2010. |

35

EFIHMW00051980

EFIHMW00051935

Table of Contents

**EFIH and its Subsidiaries**
**Summary Historical Consolidated Financial Data**

The following table sets forth EFIH and its subsidiaries' summary historical consolidated financial data as of and for the periods indicated. The historical financial data as of December 31, 2009 and 2008 (Successor) and for the years ended December 31, 2009 and 2008 (Successor), the period from October 11, 2007 through December 31, 2007 (Successor) and the period from January 1, 2007 through October 10, 2007 (Predecessor) have been derived from EFIH and its subsidiaries' audited historical consolidated financial statements and related notes included elsewhere in this Prospectus. The historical financial data as of December 31, 2007 (Successor) reflects Oncor accounted for under the equity method. The historical financial data as of December 31, 2006 and 2005 (Predecessor) and for the years ended December 31, 2006 and 2005 (Predecessor) reflect Oncor accounted for under the equity method; EFIH was formed at the time of the merger in October 2007, and its predecessor is Oncor. The historical financial data as of June 30, 2010 and for the six months ended June 30, 2010 and 2009 have been derived from EFIH and its subsidiaries' unaudited historical interim condensed consolidated financial statements and related notes included elsewhere in this Prospectus. In EFIH's opinion, such unaudited interim financial data reflects all adjustments, consisting of normal recurring accruals, necessary for the fair presentation of the results for those periods. The results of operations for the interim periods, for seasonal and other factors, are not necessarily indicative of the results to be expected for the full year or any future period.

The summary historical consolidated financial data should be read in conjunction with "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Year Ended December 31, 2009" and "Management's Discussion and Analysis of Financial Condition and Results of Operations as of and for the Three and Six Months Ended June 30, 2010," each included in Annex C to this Prospectus, and EFIH and its subsidiaries' historical consolidated financial statements and related notes that are included elsewhere in this Prospectus.

|  | Successor (a) | | Period from October 11, 2007 through December 31, 2007 | Predecessor (a) | | |
|  | Year Ended December 31, | | | Period from January 1, 2007 through October 10, 2007 | Year Ended December 31, | |
|  | 2009 | 2008 | | | 2006 | 2005 |
| | | | (millions of dollars, except ratios) | | | |
| **Statement of Income Data:** | | | | | | |
| Income (loss) before income taxes and equity in earnings of unconsolidated subsidiary | $ (275) | $ (260) | $ (68) | $ — | $ — | $ — |
| Equity in earnings (losses) of unconsolidated subsidiary (net of tax) (b) | 256 | (323) | 64 | 263 | 344 | 351 |
| Net income (loss) | 74 | (495) | 19 | 263 | 344 | 351 |
| Ratio of earnings to fixed charges (c) | — | 1.27 | | | | |
| **Statement of Cash Flows Data:** | | | | | | |
| Cash flows provided by operating activities | $ 216 | $ 333 | $ — | $ 326 | $ 340 | $ — |
| Cash flows used in financing activities | (216) | (330) | — | (326) | (340) | — |
| Cash flows used in investing activities | — | (3) | | | | |

36

EFIHMW00051981

EFIHMW00051935

Table of Contents

| | Successor (a) | | | Predecessor (a) | |
|---|---|---|---|---|---|
| | December 31, | | | December 31, | |
| | 2009 | 2008 | 2007 | 2006 | 2005 |
| **Balance Sheet Data:** | | | | | |
| Total assets | $5,577 | $5,363 | $7,732 | $2,975 | $2,935 |
| Total debt (d) | 2,513 | 2,250 | 2,250 | — | — |
| Total membership interests | 3,010 | 3,069 | 5,439 | 2,975 | 2,935 |

(a) Amounts reflect the retrospective adoption of amended guidance regarding consolidation accounting standards related to variable interest entities that resulted in the deconsolidation of Oncor Holdings and the accounting for EFIH's investment in Oncor Holdings (the carrying value of which totaled $5.396 billion at December 31, 2009) under the equity method. See Note 2 to EFIH and its subsidiaries' audited historical consolidated financial statements as of and for the year ended December 31, 2009 included elsewhere in this Prospectus. EFIH was formed at the time of the merger in October 2007; consequently Predecessor data represents Oncor presented under the equity method of accounting. The consolidated financial statements of the Successor reflect the application of purchase accounting to Oncor.
(b) Amount in 2008 includes the effects of Oncor's $860 million goodwill impairment charge.
(c) Fixed charges exceeded earnings by $59 million and $68 million for the year ended December 31, 2009 and the period from October 11, 2007, respectively. There were no fixed charges for the predecessor periods. For the year ended December 31, 2009 on a pro forma basis for the effects of the exchange offers assuming 99.51% participation in the exchange offers at or prior to the Early Tender Date, no subsequent withdrawals and no participation in the exchange offers after the Early Tender Date, fixed charges would have exceeded earnings by $118 million.
(d) Reflects push down of certain EFH Corp. (parent) debt due to EFIH's guarantee of the debt. See Note 5 to EFIH and its subsidiaries' historical consolidated financial statements for the year ended December 31, 2009 included elsewhere in this Prospectus.

| | Successor (a) | |
|---|---|---|
| | Six Months | Six Months |
| | Ended June 30, 2010 | Ended June 30, 2009 |
| | (millions of dollars, except ratios) | |
| **Statement of Income Data:** | | |
| Loss before income taxes and equity in earnings of unconsolidated subsidiary | $ (146) | $ (137) |
| Equity in earnings of unconsolidated subsidiary (net of tax) | 122 | 112 |
| Net income | 25 | 21 |
| Ratio of earnings to fixed charges (b) | — | — |
| **Statement of Cash Flows Data:** | | |
| Cash flows provided by operating activities | $ 85 | $ 58 |
| Cash flows used in financing activities | (5) | (58) |
| Cash flows provided by investing activities | 3 | — |

| | Successor |
|---|---|
| | June 30, 2010 |
| | (millions of dollars) |
| **Balance Sheet Data:** | |
| Total assets | $ 5,717 |
| Total debt (c) | 2,575 |
| Total membership interests | 3,087 |

(a) Amounts reflect the retrospective adoption of amended guidance regarding consolidation accounting standards related to variable interest entities that resulted in the deconsolidation of Oncor Holdings and the accounting for EFIH's investment in Oncor Holdings (the carrying value of which totaled $5.450 billion at June 30, 2010) under the equity method. See Note 2 to EFIH and its subsidiaries' historical condensed consolidated financial statements as of and for the three and six months ended June 30, 2010 included elsewhere in this Prospectus.
(b) Fixed charges exceeded earnings by $59 million and $79 million for the six months ended June 30, 2010 and 2009, respectively. For the six months ended June 30, 2010 on a pro forma basis for the effects of the exchange offers assuming 99.51% participation in the exchange offers at or prior to the Early Tender Date, no subsequent withdrawals and no participation in the exchange offers after the Early Tender Date, fixed charges would have exceeded earnings by $79 million.
(c) Reflects push down of certain EFH Corp. (parent) debt due to EFIH's guarantee of the debt. See Note 3 to EFIH's historical condensed consolidated financial statements for the three and six months ended June 30, 2010 included elsewhere in this Prospectus.

37

EFIHMW00051982

EFIHMW00051935

Table of Contents

RISK FACTORS

*In addition to the other information included in this Prospectus, you should carefully consider the following risk factors before deciding whether or not to participate in the exchange offers and/or the consent solicitation.*

**Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange**

The following risk factors apply to holders of Old Notes that elect not to tender Old Notes in the exchange offers. There are additional risks relating to ownership of the Old Notes that you should consider before deciding to tender your Old Notes in the exchange offers. Such additional risks are described in this "Risk Factors" section under the headings "—Risks Related to the Exchange Offers and the New EFIH Senior Secured Notes," "—Risks Related to Our Substantial Indebtedness and Debt Agreements," "—Risks Related to Structure," "—Risks Related to Our Businesses" and "—Risks Related to the EFIH Businesses."

> *If the Offeror completes the exchange offers, any Old Notes that remain outstanding will be unsecured obligations and will therefore be effectively subordinated to the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes, the EFIH 9.75% Notes, the New EFIH Senior Secured Notes and to any other debt we may issue that is secured by the Collateral or by any of our other assets.*

The Old Notes are currently, and those that remain outstanding after the completion of the exchange offers will remain, unsecured obligations of EFIH Corp. The New EFIH Senior Secured Notes will be secured, equally and ratably with the EFIH 9.75% Notes and EFIH's guarantee of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, by a first-priority lien on all of the Collateral, which on the Settlement Date will initially consist of 100% of the membership interests of Oncor Holdings, which are owned by EFIH. Oncor Holdings owns approximately 80% of Oncor. The indenture under which the New EFIH Senior Secured Notes will be issued will allow EFH Corp. and EFIH together to incur up to an aggregate of $4.0 billion of debt, including the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes, the EFIH 9.75% Notes and the New EFIH Senior Secured Notes, secured by a first-priority security interest on the Collateral, and a substantial amount of additional debt that may be secured by a junior lien on the Collateral or by any of our other assets. If the maximum $2.18 billion aggregate principal amount of New EFIH Senior Secured Notes is issued on the Settlement Date, approximately $3.5 billion aggregate principal amount of debt secured by a first priority security interest on the Collateral will have been incurred. Therefore, the remaining Old Notes, which are guaranteed by EFIH on an unsecured basis, will be effectively subordinated to the New EFIH Senior Secured Notes, the EFIH 9.75% Notes and EFIH's guarantee of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, and to any future debt secured by the Collateral or by any of our other assets, with respect to, and to the extent of the value of, the Collateral or any other assets securing such debt. In the event of the Offeror's bankruptcy, liquidation or insolvency, the proceeds from any sales of the Collateral or other assets securing any of our future debt will be first applied to satisfy the secured claims of the holders of the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes, the EFIH 9.75% Notes and the New EFIH Senior Secured Notes and other debt secured by the Collateral or such assets, respectively, and there would be fewer assets remaining from which the claims of any Old Notes that remain outstanding after completion of the exchange offers could be satisfied. The unsecured nature of the claims of the Old Notes that remain outstanding after completion of the exchange offers could materially and adversely affect the value of any Old Notes that are not tendered or accepted for exchange in the exchange offers and, in the event of a bankruptcy, liquidation or insolvency of EFH Corp., the extent of such holder's recovery.

> *If the Proposed Amendments become operative, holders of the Old Notes will no longer benefit from the protections provided by the existing restrictive covenants, certain events of default and other provisions.*

If the Proposed Amendments become operative, the Old Notes will be subject to the terms of the Old Notes Indenture as modified by the Supplemental Indenture, which was executed and delivered promptly following the Consent Date.

38

EFIHMW00051983

EFIHMW00051935

**Table of Contents**

If the Proposed Amendments become operative, among other things, substantially all of the restrictive covenants and references thereto and certain events of default contained in the Old Notes Indenture and the Old Notes will be eliminated, covenants regarding mergers and consolidations will be modified and certain other provisions, including certain provisions relating to defeasance contained in the Old Notes Indenture and Old Notes which would otherwise prevent a defeasance without, among other things, delivery of an opinion of counsel confirming such defeasance does not constitute a taxable event, will be modified or eliminated. See "Proposed Amendments" for additional information regarding the Proposed Amendments.

If the Proposed Amendments become operative, holders of Old Notes that remain outstanding after the completion of the exchange offers will no longer be entitled to the benefits of such restrictive covenants, events of default and other provisions. The elimination or modification of these restrictive covenants, events of default and other provisions will permit us to take certain actions previously prohibited that could increase the credit risks with respect to EFH Corp., as well as adversely affect the market price and credit rating of the Old Notes that remain outstanding after completion of the exchange offers. For a description of the Proposed Amendments to the Old Notes Indenture, see "Proposed Amendments" included elsewhere in this Prospectus. If you withdraw your tendered Old Notes after the Consent Date, your Old Notes will be subject to the Proposed Amendments if they become operative.

EFH Corp. has received Consents from holders of a majority of the outstanding aggregate principal amount of the Old Notes, voting together as a single class, which constitutes the requisite Consents to adopt the Proposed Amendments. Old Notes held by members of the Sponsor Group and EFH Corp. and their respective affiliates were not considered outstanding for the purposes of determining whether the holders of the required outstanding principal amount of the Old Notes delivered Consents necessary to adopt the Proposed Amendments. The requisite Consents having been received, EFH Corp., the guarantors of the Old Notes and The Bank of New York Mellon Trust Company, N.A., as trustee under the Old Notes Indenture, have executed and delivered the Supplemental Indenture to effectuate the Proposed Amendments. The Supplemental Indenture will not become operative until immediately prior to the acceptance for exchange of Old Notes upon the terms and subject to the conditions set forth in this Prospectus.

Due to the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, following the completion of the exchange offers, a holder may still own Old Notes for which the Proposed Amendments have become operative even though such holder validly tendered (and did not validly withdraw) all of such holder's Old Notes for exchange in the exchange offers. Based on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) as of the Early Tender Date, and assuming no tendered Old Notes are validly withdrawn, the amount of Old Notes accepted for exchange will be prorated.

While the EFIH 9.75% Notes, the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes currently contain, and the New EFIH Senior Secured Notes will contain, certain restrictive covenants, events of default and other provisions, holders of Old Notes that remain outstanding after the completion of the exchange offers should not rely on the restrictive covenants, events of default and certain other provisions contained in the indentures governing these notes to restrict EFH Corp. or its other subsidiaries from taking actions that would increase the credit risk of EFIH or EFH Corp. or adversely affect the market price and credit rating of the Old Notes that remain outstanding after the completion of the exchange offers. The issuers of these notes may in the future obtain the consent of holders of the applicable notes to amend the indentures governing the applicable notes to eliminate, waive or modify the restrictive covenants, events of default or other provisions contained therein. Additionally, certain strategic transactions with respect to EFIH or EFIH's ownership interest in Oncor Holdings and its subsidiaries, such as the sale, disposition or spin−off of the equity of EFIH such that it is no longer a subsidiary of EFH Corp., or the disposition of all of EFIH's ownership interest in Oncor Holdings and its subsidiaries, are permitted under the indentures governing the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes and will be permitted under the indenture governing the New EFIH Senior Secured Notes.

39

EFIHMW00051984

EFIHMW00051935

Table of Contents

*Following completion of the exchange offers, liquidity of the market for outstanding Old Notes will likely be reduced, and market prices for remaining Old Notes of any issue may materially decline as a result.*

To the extent the exchange offers are completed, the aggregate principal amount of outstanding Old Notes will be reduced. A reduction in the principal amount of outstanding Old Notes of any issue may materially and adversely affect the liquidity of the Old Notes of any such issue that remains outstanding after completion of the exchange offers. A series of securities with a small outstanding principal amount available for trading (referred to as "float") may command a lower price than does a comparable series of securities with a greater float. Therefore, the market price for each issue of Old Notes that remains outstanding after completion of the exchange offers may be materially and adversely affected. A reduced float may also make the trading prices of any issue of Old Notes that are not exchanged more volatile. Following the completion of the exchange offers, an active trading market in the Old Notes may not exist and the trading price for the Old Notes not tendered by holders or not accepted for exchange may materially decline.

*The existing credit ratings for the Old Notes may not be maintained, and the market price of the Old Notes may decrease as a result of negative action with respect to the credit ratings on the Old Notes.*

A credit rating is not a recommendation to buy, sell or hold securities and the credit rating agencies may change or withdraw the ratings assigned to any issue of securities represented by the Old Notes in their sole discretion at any time. As result of the exchange offers, the consent solicitation or otherwise, one or more rating agencies, including Fitch Ratings, Ltd., S&P or Moody's, may take action to withdraw their rating of any issue of the Old Notes, or downgrade or take other negative action upon their respective ratings on any issue of Old Notes. Any withdrawal, downgrade or other negative action with respect to any issue of Old Notes would likely materially and adversely affect the market price of the Old Notes.

**Risks Related to the Exchange Offers and the New EFIH Senior Secured Notes**

The following are some of the risks that apply to you if you elect to participate in the exchange offers and your Old Notes are accepted for exchange in the exchange offers and you receive New EFIH Senior Secured Notes. There are additional risk factors relating to ownership of New EFIH Senior Secured Notes that you should consider before deciding to tender your Old Notes in the exchange offers. These risks are described in this "Risk Factors" section under the headings "—Risks Related to Our Substantial Indebtedness and Debt Agreements," "—Risks Related to Structure" "—Risks Related to Our Businesses" and "—Risks Related to the EFIH Businesses." Additionally, due to the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, following the completion of the exchange offers, a holder may still own Old Notes even though such holder validly tendered (and did not validly withdraw) all of such holder's Old Notes for exchange in the exchange offers. As a result, all holders should also review the risks described above under the heading "—Risks to Holders of Old Notes Not Tendered or Not Accepted for Exchange" whether or not Old Notes are validly tendered (and not validly withdrawn).

*To the extent that you exchange Old Notes for New EFIH Senior Secured Notes with a later maturity, you may increase your risk that the Offeror will be unable to repay or refinance the New EFIH Senior Secured Notes when they mature.*

The maturity of the New EFIH Senior Secured Notes is later than the maturity of the Old Notes. If you exchange your Old Notes you will be exposed to the risk of nonpayment on the New EFIH Senior Secured Notes for a longer period than if you did not exchange your Old Notes in the exchange offers. For example, following the maturity date of a given issue of Old Notes, but prior to the maturity date of New EFIH Senior Secured Notes, the Offeror may become subject to a bankruptcy or similar proceeding. If such a proceeding were to occur, your Old Notes that were not accepted for exchange may be paid in full at maturity. However, there is a risk that your Old Notes that were accepted for exchange would not be paid in full at maturity of the New EFIH Senior Secured Notes or in connection with any bankruptcy or similar proceeding.

40

EFIHMW00051985

EFIHMW00051935

**PX 030**
**Page 51 of 734**

Table of Contents

*The consideration for the exchange offers does not reflect any independent valuation of the Old Notes or the New EFIH Senior Secured Notes.*

The Offeror has not obtained or requested a fairness opinion from any banking or other firm as to the fairness of the consideration or the relative value of the New EFIH Senior Secured Notes as compared to the Old Notes that you would have to tender to participate in any of the exchange offers. If you validly tender your Old Notes, you may or may not receive more or as much value than if you choose to keep them.

*The New EFIH Senior Secured Notes may trade at a discount to their principal amount.*

Each issue of the Old Notes is currently trading at a discount to the principal amount of such issue. While the market, if any, for the New EFIH Senior Secured Notes will depend upon many factors, including prevailing interest rates, the market for similar securities, general economic conditions and our financial condition, performance and prospects, the New EFIH Senior Secured Notes may trade, at least initially, at a discount to their principal amount and any such discount may be significant. However, for the purposes of establishing the "Total Consideration Amount if Tendered At or Prior to the Early Tender Date" set forth on page ii of this Prospectus, the New EFIH Senior Secured Notes are treated as though they have a value equal to their face amount. There can be no assurance that the New EFIH Senior Secured Notes will be traded at or above the principal amount of such notes in the future.

*Holders that tender Old Notes at or prior to the Early Tender Date will not know the definitive amount of Total Notes Consideration and Total Cash Consideration until after the Early Tender Date.*

While the Total Consideration Amount offered for each issue of Old Notes was fixed and set forth on page ii of this Prospectus at the time of the commencement of the exchange offers, the amount of Total Notes Consideration and Total Cash Consideration was dependent on the aggregate principal amount of Old Notes validly tendered (and not validly withdrawn) at or prior to the Early Tender Date. At the time of the commencement of the Exchange Offers, the Total Consideration Amount for the Old Cash–Pay Notes equaled the minimum Total Cash Consideration of $146.46 per $1,000 principal amount of Old Cash–Pay Notes and the maximum Total Notes Consideration of $638.54 principal amount of New EFIH Senior Secured Notes payable per $1,000 principal amount of Old Cash–Pay Notes, which amounts would be payable if all of the Old Notes were tendered at or prior to the Early Tender Date and Old Notes are accepted for exchange. At the time of the commencement of the exchange offers, the Total Consideration for the Old Toggle Notes equaled the minimum Total Cash Consideration of $134.33 per $1,000 principal amount of Old Toggle Notes and the maximum Total Notes Consideration of $585.67 principal amount of New EFIH Senior Secured Notes payable per $1,000 principal amount of Old Toggle Notes, which amounts would be payable if all of the Old Notes were tendered at or prior to the Early Tender Date and Old Notes are accepted for exchange. The definitive amount of the Total Notes Consideration and the Total Cash Consideration was announced by press release promptly after the Early Tender Date. However, because holders were not advised of the definitive amount of the Total Notes Consideration and Total Cash Consideration until after 5:00 p.m., New York City time, on the Early Tender Date, holders tendering Old Notes prior to the announcement of the definitive amount of Total Notes Consideration and Total Cash Consideration did not know the Total Notes Consideration and Total Cash Consideration they could receive prior to the time by which they must have tendered Old Notes to be eligible to receive the Total Consideration Amount.

*The exchange offers may be cancelled, delayed or changed.*

Subject to applicable law, the Offeror has the right to terminate or withdraw, at its sole discretion, the exchange offers if any of the applicable conditions described under "Conditions of the Exchange Offers and the Consent Solicitation" are not satisfied or waived by the Expiration Date. In addition, the Offeror may amend the exchange offers including to increase or decrease the consideration offered or the minimum condition. If a change is made to the amount of securities or cash offered to be exchanged as consideration pursuant to the

41

EFIHMW00051986

EFIHMW00051935

**Table of Contents**

exchange offers, the exchange offers will remain open for at least ten business days from (and including) the date of the announcement of such change to the extent required by applicable law. The Offeror may also decide to commence additional exchange offers to exchange additional debt of EFH Corp. and its subsidiaries for New EFIH Senior Secured Notes. Any such additional offer would remain open for at least twenty business days. Even if the exchange offers are completed, they may not be completed on the schedule described in this Prospectus. The exchange offers may be extended. Accordingly, you may have to wait longer than expected to receive your New EFIH Senior Secured Notes and cash consideration, if applicable.

*You may not receive New EFIH Senior Secured Notes or cash in the exchange offers if the procedures for the exchange offers are not followed.*

Subject to the terms and conditions of the exchange offers, including the Maximum Exchange Amount and the prorations, if necessary, resulting therefrom, the Offeror will issue the New EFIH Senior Secured Notes and, if applicable, cash consideration, in exchange for your Old Notes only if you validly tender the Old Notes and deliver a properly completed and duly executed Consent and Letter of Transmittal, or an Agent's Message in lieu thereof, and other required documents before the Expiration Date. You should allow sufficient time to ensure timely delivery of the necessary documents. None of the Exchange Agent, the Dealer Managers or the Offeror is under any duty to give notification of defects or irregularities with respect to the tenders of Old Notes for exchange. If you are the beneficial owner of Old Notes that are registered in the name of your broker, dealer, commercial bank, trust company or other nominee, and you wish to tender in the exchange offers, you should promptly contact the person in whose name your Old Notes are registered and instruct that person to tender your Old Notes on your behalf.

*The Offeror may not be able to generate sufficient cash to service all of its indebtedness, including the New EFIH Senior Secured Notes, and may be forced to take other actions to satisfy its obligations under its debt agreements, which may not be successful.*

The Offeror's ability to make scheduled payments on or to refinance its debt obligations depends on its and its subsidiaries' financial condition and operating performance, which is subject to prevailing economic and competitive conditions and to certain financial, business and other factors beyond its control. The Offeror and its subsidiaries may not be able to maintain a level of cash flows from operating activities or from contributions or loans from EFH Corp. sufficient to permit the Offeror to pay the principal, premium, if any, and interest on its indebtedness, including the New EFIH Senior Secured Notes.

If cash flows and capital resources are insufficient to fund the Offeror's debt service obligations, the Offeror could face substantial liquidity problems and might be forced to reduce or delay investments and capital expenditures, or to dispose of assets or operations, seek additional capital or restructure or refinance indebtedness, including the New EFIH Senior Secured Notes. These alternative measures may be costly or may not be successful or adequate for the Offeror to meet its debt service obligations then due. Additionally, the Offeror's debt agreements, including the indenture governing the EFIH 9.75% Notes, limit the use of the proceeds from any disposition of assets or operations. As a result, the Offeror may not be allowed, under these documents, to use proceeds from such dispositions to satisfy all current debt service obligations. See "—Risks Related to Our Substantial Indebtedness and Debt Agreements."

*If the Offeror or affiliated entities default on obligations to pay indebtedness, the Offeror may not be able to make payments on the New EFIH Senior Secured Notes.*

Any default under the Offeror's or affiliated entities' debt agreements that is not waived by the required lenders or noteholders, and the remedies sought by the holders of such indebtedness, could prevent the Offeror from paying principal, premium, if any, and interest on the New EFIH Senior Secured Notes, which could substantially decrease the market price of the New EFIH Senior Secured Notes. If the Offeror's subsidiaries or affiliated entities are unable to generate sufficient cash flows and the Offeror is otherwise unable to obtain funds

42

EFIHMW00051987

EFIHMW00051935

Table of Contents

necessary to meet required payments of principal, premium, if any, and interest on its indebtedness, or if the Offeror or its subsidiaries or affiliated entities otherwise fail to comply with the various covenants, including any financial and operating covenants, in the instruments governing their indebtedness, they could be in default under the terms of the agreements governing such indebtedness. In the event of such default, the holders of such indebtedness could elect to declare all the funds borrowed thereunder to be due and payable, together with accrued and unpaid interest, and/or the lenders could elect to terminate their commitments thereunder, cease making further loans and, in the case of the holders of the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes or the EFIH 9.75% Notes, institute foreclosure proceedings against the Collateral, and the Offeror could be forced into bankruptcy, liquidation or insolvency. If EFH Corp.'s subsidiaries breach the covenants under the TCEH Senior Secured Facilities or the indenture governing the TCEH senior notes and seek a waiver, they may not be able to obtain a waiver from the required lenders. If this occurs, such subsidiaries would be in default under the instrument governing that indebtedness, the lenders could exercise their rights, as described above, and such subsidiaries could be forced into bankruptcy, liquidation or insolvency.

*There will be no guarantors of the New EFIH Senior Secured Notes. As a result, the New EFIH Senior Secured Notes will be structurally subordinated to all liabilities of all of EFIH's subsidiaries (other than EFIH Finance) and will have no claim on the assets of EFH Corp. or its subsidiaries.*

The New EFIH Senior Secured Notes will not be guaranteed. EFIH is a holding company. EFIH has no operations, and it relies on distributions from its subsidiaries. EFIH's subsidiaries generated all of its consolidated net income for the year ended December 31, 2009 and for the six months ended June 30, 2010, and as of June 30, 2010, EFIH's investments in its subsidiaries represented 95% of its total assets.

EFIH's subsidiaries (including Oncor Holdings and Oncor and its subsidiaries) are separate and distinct legal entities and have no obligation, contingent or otherwise, to pay any amounts due pursuant to the New EFIH Senior Secured Notes, or to make any funds available therefore, whether by dividends, loans, distributions or other payments. The New EFIH Senior Secured Notes will be structurally subordinated to the indebtedness and other liabilities of all of EFIH's subsidiaries (including Oncor Holdings and Oncor and its subsidiaries), other than EFIH Finance, and holders of the New EFIH Senior Secured Notes will have no claim on the assets of EFH Corp., EFCH, TCEH or any of TCEH's subsidiaries, none of which is obligated to make payments on the New EFIH Senior Secured Notes.

*EFH Corp. and TCEH are not obligated to make payments on the New EFIH Senior Secured Notes, and the Offeror's ability to obtain funds from EFH Corp. and TCEH to pay principal, premium and interest on the New EFIH Senior Secured Notes will be limited in some circumstances.*

None of EFH Corp., EFCH or TCEH and its subsidiaries, are obligated to make any payments on the New EFIH Senior Secured Notes. However, EFH Corp. may choose to, but is not obligated to, loan or contribute cash to the Offeror to make such payments. EFH Corp. is a holding company and substantially all of its consolidated assets are held by its subsidiaries. Therefore, to the extent EFH Corp. chooses to loan or contribute cash to make payments on the New EFIH Senior Secured Notes, EFH Corp. will likely depend on cash generated by or loans from EFCH, TCEH and its subsidiaries to make such contributions. Pursuant to the Indenture, dated as of October 31, 2007, by and among TCEH, TCEH Finance, Inc., The Bank of New York Mellon Trust Company, N.A. and each of the guarantors party thereto (the "TCEH Indenture"), and the TCEH Senior Secured Facilities, as long as TCEH is a subsidiary of EFH Corp., TCEH may provide EFH Corp. with intercompany loans on arm's length terms, in an unlimited amount, to allow EFH Corp. to pay principal, premium and interest on certain indebtedness of EFH Corp. However, the TCEH Indenture limits TCEH's ability to provide such loans for payment of principal, premium and interest on indebtedness of EFH Corp.'s subsidiaries, including the New EFIH Senior Secured Notes. Further, under the terms of TCEH's debt agreements and applicable state law, TCEH is restricted from paying dividends, except in limited circumstances.

43

EFIHMW00051988

EFIHMW00051935

Table of Contents

*The indenture governing the New EFIH Senior Secured Notes will not limit or restrict the activities of Oncor Holdings and its subsidiaries.*

Oncor Holdings and its subsidiaries will not be "restricted subsidiaries" under the indenture governing the New EFIH Senior Secured Notes (except under certain circumstances, such as in connection with the calculation of the "fixed charge coverage ratio" or "consolidated leverage ratio" for purposes of making certain restricted payments; see "Description of the Notes"). As of the date the New EFIH Senior Secured Notes are issued, EFIH's subsidiaries (other than EFIH Finance) will consist only of Oncor Holdings and its subsidiaries, all of which will be unrestricted subsidiaries under the indenture governing the New EFIH Senior Secured Notes. Accordingly, none of EFIH's subsidiaries (other than EFIH Finance) will be subject to the restrictive covenants or the events of default described in "Description of the Notes."

Because Oncor Holdings and its subsidiaries will be unrestricted subsidiaries of EFIH under the indenture governing the New EFIH Senior Secured Notes and will therefore not be subject to any of the restrictive covenants therein, such indenture will not serve to limit or restrict the ability of Oncor Holdings or its subsidiaries to take any actions or enter into any transactions that would impair their ability to dividend funds to EFIH to service the New EFIH Senior Secured Notes and other debt of EFIH, or that would negatively affect the value of EFIH's equity interests in Oncor Holdings that are pledged as Collateral for the New EFIH Senior Secured Notes, such as incurring debt, selling or transferring all or a portion of the assets of Oncor Holdings or its subsidiaries, entering into joint ventures, dividending out assets or engaging in speculative investments. Certain actions that would negatively affect the value of the Collateral may increase the ability of EFIH to make restricted payments.

*EFIH has a very limited ability to control activities at Oncor due to structural and operational "ring–fencing" measures.*

EFIH depends upon Oncor for its cash flows and ability to pay its obligations. However, EFIH has a very limited ability to control the activities of Oncor. As part of the "ring–fencing" measures as implemented by EFH Corp. and Oncor, a majority of the members of Oncor's board of directors are required to meet the New York Stock Exchange requirements for independence in all material respects, and the unanimous consent of such directors is required for Oncor to take certain material actions. In addition, any new independent directors are required to be appointed by the nominating committee of Oncor Holdings' board of directors, a majority of whose members are independent directors. No member of EFH Corp.'s management is a member of Oncor's board of directors. Under Oncor Holdings' and Oncor's organizational documents, EFH Corp. has the right, indirectly, to consent to new issuances of securities by Oncor, material transactions with third parties involving Oncor outside of the ordinary course of business, actions that cause Oncor's assets to increase the level of jurisdiction of the FERC, changes to the state of formation of Oncor, material changes to accounting methods not required by GAAP, and actions that fail to enforce certain tax sharing obligations between Oncor and EFH Corp. See "The Transactions—Ring-Fencing." There are restrictions on Oncor's ability to make distributions to its members, including indirectly to EFIH. Additionally, the Sponsor Group has committed with the PUCT to hold a majority ownership interest in Oncor through October 2012.

*We may purchase or repay any Old Notes not tendered in the exchange offers on terms that could be more favorable to holders of Old Notes than the terms of these exchange offers.*

We may, at any time to the extent permitted by applicable law, purchase Old Notes in the open market, in privately negotiated transactions, through subsequent tender or exchange offers or otherwise. Any other purchases may be made on the same terms or on terms which are more or less favorable to holders than the terms of these exchange offers. We also reserve the right to repay any existing notes not tendered. If we decide to repurchase or repay Old Notes that are not tendered in the exchange offers on terms that are more favorable than the terms of the exchange offers, those holders who decided not to participate in the exchange offers could be better off than those that participated in the exchange offers.

44

EFIHMW00051989

EFIHMW00051935

Table of Contents

*The New EFIH Senior Secured Notes will be secured only to the extent of the value of the assets that have been granted as security for the New EFIH Senior Secured Notes.*

The Collateral securing the New EFIH Senior Secured Notes will consist only of the equity and other investments that EFIH holds in Oncor Holdings and its subsidiaries (which will initially consist of 100% of the membership interests of Oncor Holdings, which are owned by EFIH) and any promissory notes or other indebtedness owed by Oncor Holdings or any of its subsidiaries to EFIH, and does not include any assets of Oncor Holdings or its subsidiaries. Oncor Holdings owns approximately 80% of Oncor. No appraisals of any of the Collateral securing the New EFIH Senior Secured Notes have been prepared by or on behalf of the Offeror in connection with the exchange offers. The fair market value of the Collateral may not be sufficient to repay the holders of the New EFIH Senior Secured Notes upon any foreclosure. The fair market value of the membership interests of Oncor Holdings is subject to fluctuations based on factors that include, among other things, the financial results and prospects of Oncor Holdings and its subsidiaries and its ability to implement its business strategy, Oncor's capital structure and the amount of its other existing indebtedness (as to which EFIH has no control), applicable regulatory approvals that may be required to foreclose on the membership interests of Oncor Holdings and subsequently dispose of the membership interests of Oncor Holdings, the ability to sell the membership interests of Oncor Holdings in an orderly sale, general economic conditions, the availability of buyers and similar factors. Furthermore, upon a foreclosure in the Collateral, holders may be limited in their ability to obtain the best price for the Collateral if they are unable to exercise a "drag–along" right to force Texas Transmission Investment LLC ("Texas Transmission"), owner of 19.75% of Oncor's membership interests, to sell its membership interests pursuant to the terms of an investor rights agreement among EFH Corp., Oncor Holdings, Oncor and Texas Transmission. In addition, a court could limit recoverability if it were to apply non–New York law to a proceeding and deem a portion of the interest claim usurious in violation of public policy. The amount to be received upon a sale of any Collateral would be dependent on numerous factors, including but not limited to the actual fair market value of the Collateral at such time, general, market and economic conditions and the timing and the manner of the sale.

The EFIH 9.75% Notes, and EFIH's guarantees of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, are also secured by the Collateral, equally and ratably with the New EFIH Senior Secured Notes.

In the event that a bankruptcy or similar proceeding is commenced by or against the Offeror, if at the time of the filing the value of the membership interests of Oncor Holdings and other Collateral is less than the amount of principal and accrued and unpaid interest on the New EFIH Senior Secured Notes, the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes, interest may cease to accrue on the New EFIH Senior Secured Notes thereafter. If at the time of the filing the value of the membership interests of Oncor Holdings and other Collateral is greater than the amount of principal and accrued and unpaid interest on the New EFIH Senior Secured Notes, the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes, interest may nevertheless cease to accrue at a subsequent time if at such time the value ceases to be in excess of the principal and accrued and unpaid interest. It is possible, given the broad discretionary powers of a bankruptcy court, even if at the time of the filing the value of the membership interests of Oncor Holdings and other Collateral is greater than the amount of principal and accrued and unpaid interest on the New EFIH Senior Secured Notes, the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes on the date of filing, claims on the membership interests of Oncor Holdings and other Collateral for interest accruing from and after the date the bankruptcy petition is filed might not be allowed. In the event of a foreclosure, liquidation, bankruptcy or similar proceeding, the proceeds from any sale of the membership interests of Oncor Holdings and other Collateral may not be sufficient to pay the obligations due under the New EFIH Senior Secured Notes.

To the extent that the claims of the holders of the New EFIH Senior Secured Notes, the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes exceed the value of the membership interests of Oncor Holdings and other Collateral, those claims will rank equally with the claims of the holders of the then outstanding Old Notes and EFH Corp.'s other debt. As a result, if the value of the membership interests of Oncor

45

EFIHMW00051990

EFIHMW00051935

**Table of Contents**

Holdings and other Collateral is less than the value of the claims of the holders of the New EFIH Senior Secured Notes, the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFH 9.75% Notes, those claims may not be satisfied in full.

The security interest granted in favor of the collateral trustee is subject to practical problems generally associated with the realization of security interests in collateral. For example, the collateral trustee may need to obtain the consent of a third party to obtain or enforce a security interest in a contract (including, for example, the PUCT and/or Texas Transmission), and we cannot assure you that the collateral trustee will be able to obtain any such consent. The consents of any third parties may not be given when required to facilitate a foreclosure on any particular assets. Accordingly, the collateral trustee may not have the ability to foreclose upon such assets, and the value of the Collateral may significantly decrease.

*Regulatory approvals may be required in order to enforce the security interests against the Collateral and to dispose of an interest in, or operational control of, the Collateral that secures the New EFIH Senior Secured Notes.*

The Collateral securing the New EFIH Senior Secured Notes will include all of the membership interests of Oncor Holdings, which are held by EFIH. Pursuant to the Public Utility Regulatory Act ("PURA"), Texas Utilities Code §§39.262(l) and 39.915, an electric utility must obtain prior PUCT approval of any change in majority ownership, controlling ownership or operational control of Oncor. As a result, prior to any foreclosure on the membership interests of Oncor Holdings, approval of the PUCT may be required for a change in ownership or control of Oncor Holdings. Pursuant to PURA §§39.262(m) and 39.915(b), the PUCT will approve such a transfer if it finds that the transaction is in the public interest. In making its determination, these sections of PURA provide that the PUCT will consider whether the transaction will adversely affect the reliability of service, availability of service or cost of service of Oncor. Therefore, in connection with any action taken to enforce the security against the Collateral, such approval may not be granted and, if it were to be granted, it is not known how long such approval would take to obtain. Even if the approval were granted to foreclose on the Collateral, then additional prior PUCT approval may also be required for any subsequent change in majority ownership, controlling ownership or operational control in the membership interests of Oncor Holdings. Additionally, Texas Holdings has committed to hold a majority ownership interest in Oncor through October 10, 2012. This commitment is incorporated in the Order on Rehearing in PUCT Docket No. 34077.

In addition, pursuant to the terms of an investor rights agreement among EFH Corp., Oncor Holdings, Oncor and Texas Transmission, owner of 19.75% of Oncor's membership interests, any transfer of the equity interests in Oncor Holdings to a third party, including as a result of any enforcement of the lien on the Collateral securing the New EFIH Senior Secured Notes, the EFH 9.75% Notes and EFIH's guarantees of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, may be limited and give rise to a tag-along right of Texas Transmission to participate in that transfer on a pro rata basis, which may hinder the enforcement of the lien on the Collateral in a timely manner, if at all. See "The Transactions—Sale of Noncontrolling Interest in Oncor" for a description of the investor rights agreement.

*In the event of the Offeror's bankruptcy, your ability to realize upon the Collateral securing the New EFIH Senior Secured Notes will be subject to certain bankruptcy law limitations.*

The right of the trustee for the New EFIH Senior Secured Notes to repossess and dispose of the Collateral, which will secure the New EFIH Senior Secured Notes, upon acceleration is likely to be significantly impaired by federal bankruptcy law if bankruptcy proceedings are commenced by or against the Offeror. This could be true even if bankruptcy proceedings are commenced after the trustee for the New EFIH Senior Secured Notes has repossessed and disposed of the Collateral. Under bankruptcy law, secured creditors, such as the trustee for the New EFIH Senior Secured Notes, are prohibited from repossessing collateral from a debtor in a bankruptcy case, or from disposing of collateral repossessed from a debtor, without bankruptcy court approval. Moreover,

46

EFIHMW00051991

EFIHMW00051935

**PX 030**

**Page 57 of 734**

**Table of Contents**

bankruptcy law permits the debtor to continue to retain and to use any such collateral, and the proceeds, products, rents or profits of such collateral, even though the debtor is in default under the applicable debt instruments, provided that the secured creditor is given "adequate protection." The meaning of the term "adequate protection" varies according to circumstances, but in general the doctrine of "adequate protection" requires a debtor to protect the value of a secured creditor's interest in the collateral, through cash payments, the granting of an additional security interest or otherwise. It is impossible to predict whether or when payments in respect of the New EFIH Senior Secured Notes might be made following commencement of a bankruptcy case, whether or when the trustee would repossess or dispose of the Collateral, or whether or to what extent you would be compensated for any delay in payment or loss of value of the Collateral through the requirements of "adequate protection." Furthermore, in the event the bankruptcy court determines that the value of the Collateral is not sufficient to repay all amounts due on the New EFIH Senior Secured Notes, you would have unsecured "deficiency claims" as to the difference. Federal bankruptcy laws do not generally permit the payment of interest, costs, or attorneys' fees for unsecured claims during the debtor's bankruptcy case.

*Under the indenture governing the New EFIH Senior Secured Notes, you will agree to not file a bankruptcy proceeding against Oncor Holdings or any of its subsidiaries.*

In connection with the exchange offers and consent solicitation, you will, as part of participation in the exchange offers and consent solicitation, acknowledge and agree that you will not (i) initiate any legal proceeding to procure the appointment of an administrative receiver or (ii) institute any bankruptcy, reorganization, insolvency, winding up, liquidation, or any like proceeding under applicable law, against Oncor Holdings, Oncor or any of their subsidiaries, or against any of the assets of Oncor Holdings, Oncor or any of their subsidiaries. You will further acknowledge and agree that each of Oncor Holdings, Oncor and any of their subsidiaries is a third party beneficiary of the foregoing covenant and has the right to specifically enforce such covenant in any proceeding at law or in equity.

*In the event that EFIH becomes the subject of a bankruptcy proceeding, you will only have a claim for repayment of your New EFIH Senior Secured Notes against EFIH's assets, including the membership interests of Oncor Holdings and any other Collateral.*

You will not benefit from a guarantee of EFH Corp. or any of EFH Corp.'s other subsidiaries. Therefore, in the event that EFIH becomes the subject of a bankruptcy proceeding, you will only have a claim against EFIH's assets, including the membership interests of Oncor Holdings and any other Collateral, to satisfy any outstanding principal, premium and interest on the New EFIH Senior Secured Notes, and will have no claim against the assets of EFH Corp. or any of its subsidiaries (other than EFIH), including EFCH and TCEH.

*The value of the Collateral may be diluted if we issue additional debt that is secured equally and ratably by the same Collateral securing the New EFIH Senior Secured Notes or if the Collateral is sold.*

The New EFIH Senior Secured Notes will be secured by the collateral on a parity lien basis with the EFIH 9.75% Notes and EFIH's guarantee of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes. In addition, the indentures governing the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes provide, and the indenture governing the New EFIH Senior Secured Notes will provide, that EFH Corp. and EFIH may incur up to an aggregate of $4.0 billion of debt, including the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes and the New EFIH Senior Secured Notes to be issued on the Settlement Date, which would be secured on a parity lien basis by the Collateral. Therefore, because the principal amount of the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes is less than this amount of debt, and even after the issuance of the New EFIH Senior Secured Notes, there will be capacity to incur additional debt up to the $4.0 billion limit, EFH Corp. and EFIH may subsequently incur additional debt secured on a parity lien basis by the Collateral up to the $4.0 billion limit, subject to restrictions on their ability to incur debt and liens under the indenture governing the New EFIH Senior Secured Notes and under other documents governing their indebtedness. To the extent that any of this additional debt is incurred in

47

EFIHMW00051992

EFIHMW00051935

Table of Contents
the future, the interests of holders of the New EFIH Senior Secured Notes in the Collateral will be diluted. Additionally, EFH Corp. and EFIH will not be restricted from issuing additional debt that is secured by a junior lien on the Collateral, subject to restrictions on their ability to incur debt and liens under the indenture governing the New EFIH Senior Secured Notes and under other documents governing their indebtedness.

The collateral trust agreement governing the pledge of Collateral generally provides that the holders of a majority of the debt secured by a first priority lien on the Collateral, including the New EFIH Senior Secured Notes, the EFIH 9.75% Notes, EFIH's guarantee of the EFH Corp. 9.75% Notes and the EFH Corp. 10.000% Notes, and other future debt incurred by EFH Corp. or EFIH secured by the Collateral equally and ratably, will have, subject to certain limited exceptions, the exclusive right to manage, perform and enforce the terms of the security documents securing the rights of secured debtholders in the Collateral and to exercise and enforce all privileges, rights and remedies thereunder. To the extent that we incur additional secured debt in the future that is secured equally and ratably with the New EFIH Senior Secured Notes and the amount of this additional secured debt, alone or together with any the EFH Corp. 9.75% Notes, the EFH Corp. 10.000% Notes and the EFIH 9.75% Notes, exceeds the amount of outstanding New EFIH Senior Secured Notes, the holders of the new secured debt may be able to exercise control under the collateral trust agreement and other security documents.

We will in most cases have control over the Collateral securing the New EFIH Senior Secured Notes, and to the extent permitted, its sale by us would eliminate the collateral securing such notes and guarantee. The documents governing the pledge of the Collateral permit EFIH to remain in possession of, retain exclusive control over, freely operate and collect, invest and dispose of, any income from, the Collateral, such as cash dividends. In addition, in certain limited circumstances EFIH will have the right to sell the Collateral free and clear of the security interest underlying the New EFIH Senior Secured Notes.

### *Rights of holders of the New EFIH Senior Secured Notes in the Collateral may be adversely affected by the failure to perfect security interests in certain Collateral acquired in the future.*

EFIH may acquire assets or investments in the future that would be required to be pledged as Collateral securing the New EFIH Senior Secured Notes. There can be no assurance that the trustee or the collateral trustee will monitor, or that we will inform the trustee or the collateral trustee of, the future acquisition of assets or investments that would be required to be pledged as Collateral, and that the necessary action will be taken to properly perfect the security interest in such after–acquired Collateral. Neither the trustee nor the collateral trustee for the New EFIH Senior Secured Notes has an obligation to monitor the acquisition of additional assets or investments that are required to be pledged as Collateral or the perfection of any security interest in such Collateral. Such failure may result in the loss of the security interest in the Collateral or the priority of the security interest in favor of the New EFIH Senior Secured Notes against third parties.

### *We may transfer or dispose of our interests in Oncor Holdings to a third party in a manner that would result in such third party becoming the obligor under the New EFIH Senior Secured Notes, without EFIH being required to offer to repurchase the New EFIH Senior Secured Notes. The risks of an investment in the New EFIH Senior Secured Notes may increase further following such a transaction.*

The indenture governing the New EFIH Senior Secured Notes will provide that EFIH may engage in a "Permitted Asset Transfer" with respect to all of EFIH's equity interests and other investments in Oncor Holdings and its subsidiaries (collectively, the "Oncor Subsidiaries") that would result in the New EFIH Senior Secured Notes no longer being obligations of EFIH. A Permitted Asset Transfer includes the sale, assignment, transfer, conveyance or other disposition (other than by way of merger, wind–up or consolidation) of all of EFIH's equity interests and other investments in the Oncor Subsidiaries or successor Oncor business and all other Collateral held by EFIH.

If a valid Permitted Asset Transfer occurs, the New EFIH Senior Secured Notes would become obligations of the third party transferee of the investments in the Oncor Subsidiaries.

48

EFIHMW00051993

EFIHMW00051935

**Table of Contents**

If a Permitted Asset Transfer occurs in accordance with the terms of the indenture governing the New EFIH Senior Secured Notes, the Offeror will not be required to make a change of control offer to repurchase the New EFIH Senior Secured Notes even if a change of control may otherwise have occurred.

The indenture governing the New EFIH Senior Secured Notes will provide that a Permitted Asset Transfer may only occur if certain conditions are met, including a requirement that the ratings of the New EFIH Senior Secured Notes are not lowered by two or more rating agencies (or the only rating agency then rating such New EFIH Senior Secured Notes) during a specified period before or after the proposed Permitted Asset Transfer has been publicly announced. However, these conditions may not protect holders against actions that EFIH or the permitted transferee could take that may negatively impact the credit risk of the New EFIH Senior Secured Notes following a Permitted Asset Transfer, such as removing assets and cash from EFIH or the Oncor Subsidiaries or increasing debt at EFIH before the Permitted Asset Transfer.

There will be no event of default under the indenture governing the New EFIH Senior Secured Notes if the Oncor Subsidiaries take actions or enter into transactions that would impair their ability to dividend funds to EFIH, which could impair EFIH's ability to service the New EFIH Senior Secured Notes, or that would negatively affect the value of the assets that are pledged as Collateral, such as incurring debt, selling or transferring all or a portion of the assets of Oncor, entering into joint ventures, dividending out assets or engaging in speculative investments.

Any of the above actions on the part of EFIH, the third party transferee or subsequent third party transferee or the Oncor Subsidiaries following the completion of a Permitted Asset Transfer may further increase the credit risk of the New EFIH Senior Secured Notes, may result in the rating agencies taking negative action with respect to the New EFIH Senior Secured Notes and may reduce the market price of the New EFIH Senior Secured Notes.

See "Description of the Notes—Certain Covenants—Restrictions on Permitted Asset Transfers," and the definitions of "Change of Control" and "Permitted Asset Transfer" contained in "Description of the Notes" for more information.

*The indenture governing the New EFIH Senior Secured Notes may not protect holders from all actions that EFIH or the Oncor Subsidiaries may take that would reduce your interest in the Collateral or that may reduce the value of the Collateral, including sales or exchanges of the Collateral or the assets of the Oncor Subsidiaries for other assets or investments.*

Under the indenture that will govern the New EFIH Senior Secured Notes, EFIH may dispose of all or a portion of the Collateral for fair market value consideration (including consideration other than cash) that may consist of assets or equity interests in joint ventures. Additionally, there will be no event of default under the indenture if the Oncor subsidiaries sell, transfer or otherwise dispose of their assets or equity interests for any form of consideration.

If EFIH or the Oncor Subsidiaries effect any of these transactions, holders' interest in the Collateral or the value of the Collateral may be materially reduced.

The indenture governing the New EFIH Senior Secured Notes will allow EFIH to transfer any of the Collateral in exchange for an equivalent fair market value of assets other than cash or for investments in businesses that are similar to the businesses of Oncor, including interests in joint ventures in businesses that are not controlled by EFIH. The assets received as consideration and pledged as substitute Collateral may prove to be less valuable than the value of the investments in Oncor that were disposed of in such transfer or exchange. Additionally, if interests in a new business were received in exchange for the Collateral, such new business may, in the future, engage in businesses activities that are different from the business that Oncor presently is in or such new business may not prove to be as creditworthy or valuable as Oncor, and the Offeror may not have any control over such business' activities if a minority interest in the joint venture interests was received in such

49

EFIHMW00051994

EFIHMW00051935

**Table of Contents**

transfer or exchange. Therefore, such new collateral may negatively alter the risk profile of EFIH or the value of such new collateral may decline relative to the value of the disposed investments in Oncor.

There will be no event of default under the indenture governing the New EFIH Senior Secured Notes if any of the Oncor Subsidiaries sells, transfers or disposes of the assets of Oncor Holdings or investments in or assets of Oncor. The consideration received in exchange for such assets or investments may decline in value as compared to the assets or investments that were so disposed, and, therefore, the value of the Collateral may be less than if such assets and investments had been retained. The Oncor Subsidiaries may transfer their assets and investments in exchange for interests in other businesses or assets, minority interests or interests in joint ventures, in which case the value of the Collateral may be at risk of declining due to the factors described above.

In any joint venture that EFIH or an Oncor Subsidiary has an interest, EFIH or the Oncor Subsidiary may not have the right or power to direct the management and policies of such joint ventures and other participants may take actions contrary to the instructions or requests of EFIH or such Oncor Subsidiary or against its policies and objectives, and any such actions taken by such joint ventures may not be in your best interests. In addition, the other participants to any such joint venture may become bankrupt or have economic or other business interests or goals that are inconsistent with the goals of EFIH or such Oncor Subsidiary and/or you.

The completion of any of the above events may result in the credit risk of the New EFIH Senior Secured Notes increasing, the credit rating agencies taking negative action with respect to the New EFIH Senior Secured Notes or the market price of the New EFIH Senior Secured Notes declining. Additionally, in the event of any foreclosure on the Collateral, you may recover less than if the Collateral still consisted of investments in the Oncor Subsidiaries.

*You may be required to recognize taxable gain or loss in connection with a Permitted Asset Transfer.*

In connection with a Permitted Asset Transfer, EFIH's obligations under the New EFIH Senior Secured Note may be transferred to, and assumed by, a third party transferee or may be considered, for U.S. federal income tax purposes, to undergo a substitution of obligors even if not transferred to, or assumed by, a third party transferee. Upon any such transfer or deemed substitution of obligors, you may be deemed to have exchanged the New EFIH Senior Secured Notes for new notes for U.S. federal income tax purposes. Upon such deemed exchange, you, under U.S. federal income tax law, may be required to recognize gain or loss equal to the difference between the amount deemed to be realized in connection with the deemed exchange and your adjusted tax basis in the New EFIH Senior Secured Notes on the date of the deemed exchange. For more information, please see "Material U.S. Federal Income Tax Considerations—Ownership of New EFIH Senior Secured Notes—Sale, Exchange or Retirement of New EFIH Senior Secured Notes."

*The issuance by EFIH of New EFIH Senior Secured Notes or the grant of the pledge of Collateral by EFIH to secure the New EFIH Senior Secured Notes could be wholly or partially voided as a preferential transfer.*

If EFIH becomes the subject of a bankruptcy proceeding within 90 days after the exchange offers are completed (or, with respect to any insiders specified in bankruptcy law who are holders of New EFIH Senior Secured Notes, within one year after completion of the exchange offers), and a court in connection with a bankruptcy proceeding determines EFIH was insolvent at the time of the exchange offers, then the court could find that the issuance of the New EFIH Senior Secured Notes by EFIH or the pledge of the Collateral by EFIH to secure the New EFIH Senior Secured Notes involved a preferential transfer to the holders of Old Notes that are accepted for exchange in the exchange offers. The exchange offers could be an avoidable preference if, among other things, it is determined in a bankruptcy proceeding for EFIH that, at the time of the exchange offers, EFIH was insolvent, and the exchange offers allowed an exchanging holder of Old Notes to recover more from EFIH than such holder would have received had the exchanges not been made and EFIH was liquidated in a bankruptcy proceeding. As described below we cannot assure you that EFIH would satisfy the solvency tests set forth below or what standard a court would apply in determining whether the Offeror would be considered to be insolvent.

50

EFIHMW00051995

EFIHMW00051935

**Table of Contents**

Because holders of Old Notes would now become secured creditors when Old Notes are exchanged for New EFIH Senior Secured Notes, such holders could be entitled to receive a greater recovery in bankruptcy proceeding liquidation than the same holders would have been entitled to receive if those holders had not participated in the exchange offers. If the court determined that the pledge of the Collateral by EFIH as security for the New EFIH Senior Secured Notes was a preferential transfer that did not qualify for any defense under bankruptcy law, then holders of the affected New EFIH Senior Secured Notes could have all or a portion of the value transferred to such holders in the exchange offers voided or such holders could be treated as unsecured creditors with claims that rank pari passu with all other unsubordinated unsecured creditors of the applicable obligor, including trade creditors. In addition, under such circumstances, the value of any consideration holders received with respect to the New EFIH Senior Secured Notes, including upon foreclosure of the Collateral, could also be subject to recovery from such holders and possibly from subsequent transferees, or holders might be returned to the same position they held as holders of the Old Notes.

*If a court were to find that EFIH was insolvent before or after giving effect to the exchange offers and did not receive reasonably equivalent value or fair consideration in the exchange offers, the court may void all or a portion of the obligations represented by the New EFIH Senior Secured Notes or the pledge of the Collateral granted by EFIH for such notes as a fraudulent conveyance.*

In a bankruptcy proceeding, a trustee, debtor in possession or another person acting on behalf of the bankruptcy estate may seek to recover all or a portion of transfers made or void obligations incurred prior to the bankruptcy proceeding on the basis that such transfers and obligations constituted fraudulent conveyances. Under certain circumstances, creditors may recover transfers or void obligations under state fraudulent conveyance laws even if the debtor is not in bankruptcy.

Fraudulent conveyances are generally defined to include transfers made or obligations incurred for inadequate consideration when a debtor was insolvent, inadequately capitalized or in similar financial distress, or transfers made or obligations incurred with the intent of hindering, delaying or defrauding current or future creditors. A trustee, debtor in possession or another person acting on behalf of a bankruptcy estate may be able to recover such transfers under the fraudulent conveyance provisions of the bankruptcy law and/or state fraudulent conveyance laws. The fraudulent conveyance provisions of the bankruptcy law allows the trustee, debtor in possession, or other person acting on behalf of a bankruptcy estate to void a fraudulent conveyance made within two years prior to the commencement of a bankruptcy proceeding. Under state fraudulent conveyance laws, transfers made more than two years prior to the commencement of a fraudulent conveyance lawsuit may be subject to avoidance.

If a court were to find that the Offeror issued the New EFIH Senior Secured Notes or EFIH granted its pledge of the Collateral under circumstances constituting a fraudulent conveyance, then a court could void all or a portion of the obligations under the New EFIH Senior Secured Notes or the pledge of Collateral. In addition, under such circumstances, the value of any consideration holders received with respect to the New EFIH Senior Secured Notes and the Collateral, including upon foreclosure of the Collateral, could also be subject to recovery from such holders and, possibly, from subsequent transferees of the New EFIH Senior Secured Notes. If the pledge of Collateral was voided and the issuance of New EFIH Senior Secured Notes were not voided, then holders of New EFIH Senior Secured Notes would become unsecured creditors.

The New EFIH Senior Secured Notes or pledge of Collateral by EFIH could be voided as a fraudulent conveyance, or claims in respect of the notes or pledge could be subordinated to all other debts of the Offeror, if the Offeror, at the time it incurred the indebtedness evidenced by the New EFIH Senior Secured Notes or at the time it granted the pledge received less than reasonably equivalent value or fair consideration for the issuance of the New EFIH Senior Secured Notes or the grant of the pledge of Collateral, as applicable, and:

- was insolvent or rendered insolvent by reason of such issuance or incurrence or grant;

51

EFIHMW00051996

EFIHMW00051935