conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

(5)    OPTIONAL REDEMPTION.

(a)    Except as set forth below, the Issuer will not be entitled to redeem Notes at its option prior to October 1, 2015.

(b)    At any time prior to October 1, 2015, the Issuer may redeem the Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder or otherwise delivered in accordance with the procedures of DTC, at a redemption price equal to 100% of the principal amount of the Notes redeemed plus the Applicable Premium as of, and accrued and unpaid interest and Additional Interest, if any, to, the applicable date of redemption (the "Redemption Date"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(c)    From and after October 1, 2015, the Issuer may redeem the Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder or otherwise delivered in accordance with the procedures of DTC, at the redemption prices (expressed as percentages of the principal amount of the Notes to be redeemed) set forth below, plus accrued and unpaid interest and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on October 1 of each of the years indicated below:

| Year | Percentage |
|---|---|
| 2015 | 107.50% |
| 2016 | 105.00% |
| 2017 | 102.50% |
| 2018 and thereafter | 100.00% |

(d)    Prior to October 1, 2013, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of all Notes at a redemption price equal to 115.00% of the aggregate principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the Redemption Date, subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of one or more Equity Offerings; provided that at least 50% of the sum of the original aggregate principal amount of Initial Notes and any Additional Notes issued under the Indenture after the Issue Date remains outstanding immediately after the occurrence of each such redemption; and provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the related Equity Offering.

(e)    If the Issuer redeems less than all of the outstanding Notes, the Trustee shall select the Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

(f)    Any redemption pursuant to this paragraph 5 shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

A-4

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140119

EFIHMW00139970

(6)  *MANDATORY REDEMPTION.*  The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

(7)  *NOTICE OF REDEMPTION.*  Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed or delivered more than 60 days prior to a Redemption Date if the notice is issued in connection with Article 8 or Article 12 of the Indenture) to each Holder whose Notes are to be redeemed at its registered address or otherwise delivered in accordance with the procedures of DTC. Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the Notes held by a Holder are to be redeemed. On and after the Redemption Date interest ceases to accrue on Notes or portions thereof called for redemption.

(8)  *OFFERS TO REPURCHASE.*

(a)  If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to purchase all or any part (equal to $2,000 or an integral multiple of $1,000 in excess thereof) of each Holder's Notes at a purchase price equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest and Additional Interest, if any, to the date of purchase (the "Change of Control Payment"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date. The Change of Control Offer shall be made in accordance with Section 4.14 of the Indenture.

(b)  If TCEH or any of its Restricted Subsidiaries consummates an Asset Sale, within ten Business Days of each date that the aggregate amount of Excess Proceeds exceeds $200.0 million, TCEH and/or any of its Restricted Subsidiaries shall make an offer to all Holders of the Notes, and if required or permitted by the terms of any Senior Indebtedness, to the holders of such Senior Indebtedness (an "Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such Senior Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture. To the extent that the aggregate amount of Notes and such Senior Indebtedness tendered pursuant to an Asset Sale Offer is less than the Excess Proceeds, TCEH and/or any of its Restricted Subsidiaries may use any remaining Excess Proceeds to make Restricted Payments to the extent permitted by Section 4.07(b)(16) of the Indenture. If the aggregate principal amount of Notes or the Senior Indebtedness surrendered by such holders thereof exceeds the amount of Excess Proceeds, the Trustee shall select the Notes and such Senior Indebtedness to be purchased on a pro rata basis based on the accreted value or principal amount of the Notes or such Senior Indebtedness tendered.

(c)  TCEH and/or any of its Restricted Subsidiaries may, at its/their option, make an Asset Sale Offer using proceeds from any Asset Sale at any time after consummation of such Asset Sale; provided that such Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million. Upon consummation of such Asset Sale Offer, any Net Proceeds not required to be used to purchase Notes shall not be deemed Excess Proceeds.

(d)  If TCEH or any of its Restricted Subsidiaries consummates a Collateral Asset Sale, within ten Business Days of each date that the aggregate amount of Collateral Excess Proceeds exceeds $200.0 million, TCEH and/or any of its Restricted Subsidiaries shall make an offer to all Holders of the Notes, and if required or permitted by the terms of any First Lien Obligations and any Pari Passu Secured Indebtedness, to the holders of such other First Lien Obligations and such Pari Passu Secured

027141-0016-11635-Active.12138318

Confidential                                                    EFIHMW00140120

EFIHMW00139970

Indebtedness (a "Collateral Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such First Lien Obligations and Pari Passu Secured Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Collateral Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture and the other documents governing the applicable First Lien Obligations and Pari Passu Secured Indebtedness; provided that in any such Collateral Asset Sale Offer, all First Lien Obligations properly tendered for purchase will be purchased before any Notes or Pari Passu Indebtedness is purchased. To the extent that the aggregate amount of First Lien Obligations, Notes and Pari Passu Secured Indebtedness tendered pursuant to a Collateral Asset Sale Offer is less than the Collateral Excess Proceeds, TCEH and/or any of its Restricted Subsidiaries may use any remaining Collateral Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture. If the aggregate principal amount of First Lien Obligations, Notes and Pari Passu Secured Indebtedness surrendered by such holders thereof exceeds the amount of Collateral Excess Proceeds, then all First Lien Obligations properly tendered for purchase shall be purchased, and, any remaining Collateral Excess Proceeds shall be applied to purchase the Notes and any other Pari Passu Secured Indebtedness properly tendered for purchased on a pro rata basis, based on the accreted value or principal amount of the Notes or such other Pari Passu Secured Indebtedness tendered.

(e)    TCEH may, at its option, make a Collateral Asset Sale Offer using proceeds from any Asset Sale of Collateral at any time after consummation of such Asset Sale; provided that such Collateral Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million. Upon consummation of such Collateral Asset Sale Offer, any Net Proceeds not required to be used to purchase First Lien Obligations, Notes and Pari Passu Secured Indebtedness shall not be deemed Collateral Excess Proceeds.

(9)    *DENOMINATIONS, TRANSFER, EXCHANGE.* The Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof. The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Notes or portion of Notes selected for redemption, except for the unredeemed portion of any Notes being redeemed in part. Also, the Issuer need not exchange or register the transfer of any Notes for a period of 15 days before a selection of Notes to be redeemed.

(10)    *PERSONS DEEMED OWNERS.* The registered Holder of a Note may be treated as its owner for all purposes.

(11)    *AMENDMENT, SUPPLEMENT AND WAIVER.* The Indenture, the Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

(12)    *DEFAULTS AND REMEDIES.* The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture. If any Event of Default occurs and is continuing, the Trustee or the Required Holders of at least 30% in aggregate principal amount of the Required Debt may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Notes to be due and payable immediately. Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Notes will become due and payable immediately without further action or notice. Holders may not enforce the Indenture, the Notes or the Guarantees except as provided in the Indenture. Subject to certain limitations, Required Holders of a majority in aggregate principal amount of the Required Debt may direct the Trustee in its exercise of

A-6

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140121

EFIHMW00139970

any trust or power. The Trustee may withhold from Holders of the Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, Additional Interest, if any, or interest) if it determines that withholding notice is in their interest. The Required Holders of a majority in aggregate principal amount of the Required Debt by notice to the Trustee may on behalf of the Holders of all of the Required Debt waive any existing Default or its consequences under the Indenture except a continuing Default in the payment of interest on, premium, if any, or the principal of any Note held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

(13)   *AUTHENTICATION.*  This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

(14)   *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.*  In addition to the rights provided to Holders of Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the Registration Rights Agreement, dated as of October 6, 2010, among the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest, if any (as defined in the Registration Rights Agreement).

(15)   *GOVERNING LAW.*  THE INDENTURE, THE NOTES AND THE GUARANTEES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(16)   *CUSIP/ISIN NUMBERS.*  Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture, the Registration Rights Agreement and/or the Security Documents. Requests may be made to the Issuer at the following address:

> c/o Texas Competitive Electric Holdings Company LLC
> Energy Plaza
> 1601 Bryan Street
> Dallas, Texas 75201-3411
> Facsimile No.: (214) 812-6032
>                    (214) 812-4097

> c/o TCEH Finance, Inc.
> Energy Plaza
> 1601 Bryan Street
> Dallas, Texas 75201-3411
> Facsimile No.: (214) 812-6032
>                    (214) 812-4097

A-7

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140122

EFIHMW00139970

**ASSIGNMENT FORM**

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____
(Insert assignee's legal name)

_____

(Insert assignee's Soc. Sec. or tax I.D. no.)

_____

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint _____
to transfer this Note on the books of the Issuer.  The agent may substitute another to act for him.

Date: _____

Your Signature _____
(Sign exactly as your name appears on the<br>face of this Note)

Signature Guarantee[*]:_____

*   Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

A-8

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140123

EFIHMW00139970

### OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Issuer pursuant to Section 4.10(d), 4.10(h) or 4.14 of the Indenture, check the appropriate box below:

☐ Section 4.10(d)          ☐ Section 4.10(h)          ☐ Section 4.14

If you want to elect to have only part of this Note purchased by the Issuer pursuant to Section 4.10(d), 4.10(h) or Section 4.14 of the Indenture, state the amount you elect to have purchased:

$ _____

Date: _____

Your Signature: _____
(Sign exactly as your name appears on the face of
   this Note)

Tax Identification No.: _____

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

A-9

027141-0016-11635-Active.12138318

Confidential                                              EFIHMW00140124

EFIHMW00139970

SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE[1]

The initial outstanding principal amount of this Global Note is $ _____. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following each decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|
| | | | | |

---

[1]    This schedule should be included only if the Senior Secured Note is issued in global form.

A-10

027141-0016-11635-Active.12138318

Confidential                                                                EFIHMW00140125

EFIHMW00139970

EXHIBIT B

## FORM OF CERTIFICATE OF TRANSFER

Texas Competitive Electric Holdings Company LLC
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.: (214) 812-6032
                 (214) 812-4097

TCEH Finance, Inc.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.: (214) 812-6032
                 (214) 812-4097

The Bank of New York Mellon Trust Company, N.A.
Corporate Trust Division
601 Travis Street – 16th Floor
Houston, TX 77002
Facsimile No.: (713) 483-6954
Attention:  TCEH Trustee

Re:                           15% Senior Secured Second Lien Notes due 2021

        Reference is hereby made to the Indenture, dated as of October 6, 2010 (the "Indenture"), among Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., the Guarantors named therein and the Trustee.  Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

                (the "Transferor") owns and proposes to transfer the Note[s] or interest in such Note[s] specified in Annex A hereto, in the principal amount of $_____ in such Note[s] or interests (the "Transfer"), to _____ (the "Transferee"), as further specified in Annex A hereto.  In connection with the Transfer, the Transferor hereby certifies that:

[CHECK ALL THAT APPLY]

       1.      ☐ **Check if Transferee will take delivery of a beneficial interest in the 144A Global Note or a Definitive Note pursuant to Rule 144A**.  The Transfer is being effected pursuant to and in accordance with Rule 144A under the United States Securities Act of 1933, as amended (the "Securities Act"), and, accordingly, the Transferor hereby further certifies that the beneficial interest or Definitive Note is being transferred to a Person that the Transferor reasonably believes is purchasing the beneficial interest or Definitive Note for its own account, or for one or more accounts with respect to which such Person exercises sole investment discretion, and such Person and each such account is a "qualified institutional buyer" within the meaning of Rule 144A in a transaction meeting the requirements of Rule 144A and such Transfer is in compliance with any applicable blue sky securities laws of any state of the United States.

B-1

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140126

EFIHMW00139970

2.    ☐   **Check if Transferee will take delivery of a beneficial interest in the Regulation S Global Note or a Definitive Note pursuant to Regulation S**.  The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and, accordingly, the Transferor hereby further certifies that (i) the Transfer is not being made to a person in the United States and (x) at the time the buy order was originated, the Transferee was outside the United States or such Transferor and any Person acting on its behalf reasonably believed and believes that the Transferee was outside the United States or (y) the transaction was executed in, on or through the facilities of a designated offshore securities market and neither such Transferor nor any Person acting on its behalf knows that the transaction was prearranged with a buyer in the United States, (ii) no directed selling efforts have been made in contravention of the requirements of Rule 903(b) or Rule 904(b) of Regulation S under the Securities Act, (iii) the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act and (iv) if the proposed transfer is being made prior to the expiration of the Restricted Period, the transfer is not being made to a U.S. Person or for the account or benefit of a U.S. Person (other than an Initial Purchaser).  Upon consummation of the proposed transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will be subject to the restrictions on Transfer enumerated in the Indenture and the Securities Act.

3.    ☐   **Check and complete if Transferee will take delivery of a beneficial interest in the Definitive Note pursuant to any provision of the Securities Act other than Rule 144A or Regulation S**.  The Transfer is being effected in compliance with the transfer restrictions applicable to beneficial interests in Restricted Global Notes and Restricted Definitive Notes and pursuant to and in accordance with the Securities Act and any applicable blue sky securities laws of any state of the United States, and accordingly the Transferor hereby further certifies that (check one):

(a)    [ ] such Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act;

**OR**

(b)    [ ] such Transfer is being effected to the Issuer or a subsidiary thereof;

**OR**

(c)    [ ] such Transfer is being effected pursuant to an effective registration statement under the Securities Act and in compliance with the prospectus delivery requirements of the Securities Act.

4.    ☐   **Check if Transferee will take delivery of a beneficial interest in an Unrestricted Global Note or of an Unrestricted Definitive Note**.

(a)    ☐   **Check if Transfer is Pursuant to Rule 144**.  (i) The Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any state of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act.  Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes, on Restricted Definitive Notes and in the Indenture.

B-2

027141-0016-11635-Active.12138318

EFIHMW00140127

EFIHMW00139970

**PX 040**
**Page 158 of 171**

(b) ☐ **Check if Transfer is Pursuant to Regulation S.** (i) The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any state of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes, on Restricted Definitive Notes and in the Indenture.

(c) ☐ **Check if Transfer is Pursuant to Other Exemption.** (i) The Transfer is being effected pursuant to and in compliance with an exemption from the registration requirements of the Securities Act other than Rule 144, Rule 903 or Rule 904 and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any State of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will not be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes or Restricted Definitive Notes and in the Indenture.

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer.

[Insert Name of Transferor]

By: _____
　　Name:
　　Title:

Dated: _____

B-3

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140128

EFIHMW00139970

**PX 040**
**Page 159 of 171**

**ANNEX A TO CERTIFICATE OF TRANSFER**

1.    The Transferor owns and proposes to transfer the following:

**[CHECK ONE OF (a) OR (b)]**

(a)    ☐ a beneficial interest in the:

    (i)    ☐ 144A Global Note (CUSIP [          ] [          ]), or

    (ii)    ☐ Regulation S Global Note (CUSIP [          ] [          ]), or

(b)    ☐ a Restricted Definitive Note.

2.    After the Transfer the Transferee will hold:

**[CHECK ONE]**

(a)    ☐ a beneficial interest in the:

    (i)    ☐ 144A Global Note (CUSIP [          ] [          ]), or

    (ii)    ☐ Regulation S Global Note (CUSIP [          ] [          ]), or

    (iii)    ☐ Unrestricted Global Note (CUSIP [          ] [          ]);

or

(b)    ☐ a Restricted Definitive Note; or

(c)    ☐ an Unrestricted Definitive Note, in accordance with the terms of the Indenture.

B-4

027141-0016-11635-Active.12138318

Confidential                                                EFIHMW00140129

EFIHMW00139970

EXHIBIT C

## FORM OF CERTIFICATE OF EXCHANGE

Texas Competitive Electric Holdings Company LLC
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.:  (214) 812-6032
                (214) 812-4097

TCEH Finance, Inc.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.:  (214) 812-6032
                (214) 812-4097

The Bank of New York Mellon Trust Company, N.A.
Corporate Trust Division
601 Travis Street – 16th Floor
Houston, TX 77002
Facsimile No.:  (713) 483-6954
Attention:  TCEH Trustee

Re:                        15% Senior Secured Second Lien Notes due 2021

        Reference is hereby made to the Indenture, dated as of October 6, 2010 (the "Indenture"), among Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., the Guarantors named therein and the Trustee.  Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

        _____ (the "Owner") owns and proposes to exchange the Note[s] or interest in such Note[s] specified herein, in the principal amount of $_____ in such Note[s] or interests (the "Exchange").  In connection with the Exchange, the Owner hereby certifies that:

        1.      **Exchange of Restricted Definitive Notes or Beneficial Interests in a Restricted Global Note for Unrestricted Definitive Notes or Beneficial Interests in an Unrestricted Global Note**

        (a)      ☐ **Check if Exchange is from beneficial interest in a Restricted Global Note to beneficial interest in an Unrestricted Global Note**.  In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for a beneficial interest in an Unrestricted Global Note in an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Global Notes and pursuant to and in accordance with the United States Securities Act of 1933, as amended (the "Securities Act"), (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest in an Unrestricted Global Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

C-1

027141-0016-11635-Active.12138318

Confidential                                                      EFIHMW00140130

EFIHMW00139970

(b)    ☐ **Check if Exchange is from beneficial interest in a Restricted Global Note to Unrestricted Definitive Note.**  In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for an Unrestricted Definitive Note, the Owner hereby certifies (i) the Definitive Note is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Definitive Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(c)    ☐ **Check if Exchange is from Restricted Definitive Note to beneficial interest in an Unrestricted Global Note.**  In connection with the Owner's Exchange of a Restricted Definitive Note for a beneficial interest in an Unrestricted Global Note, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(d)    ☐ **Check if Exchange is from Restricted Definitive Note to Unrestricted Definitive Note.**  In connection with the Owner's Exchange of a Restricted Definitive Note for an Unrestricted Definitive Note, the Owner hereby certifies (i) the Unrestricted Definitive Note is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Unrestricted Definitive Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

2.    **Exchange of Restricted Definitive Notes or Beneficial Interests in Restricted Global Notes for Restricted Definitive Notes or Beneficial Interests in Restricted Global Notes**

(a)    ☐ **Check if Exchange is from beneficial interest in a Restricted Global Note to Restricted Definitive Note.**  In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for a Restricted Definitive Note with an equal principal amount, the Owner hereby certifies that the Restricted Definitive Note is being acquired for the Owner's own account without transfer.  Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the Restricted Definitive Note issued will continue to be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Definitive Note and in the Indenture and the Securities Act.

(b)    ☐ **Check if Exchange is from Restricted Definitive Note to beneficial interest in a Restricted Global Note.**  In connection with the Exchange of the Owner's Restricted Definitive Note for a beneficial interest in the [CHECK ONE]  ☐ 144A Global Note ☐ Regulation S Global Note, with an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer and (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Notes and pursuant to and in accordance with the Securities Act, and in compliance with any applicable blue sky securities laws of any state of the United States. Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the beneficial interest issued will be subject to the restrictions on transfer enumerated in the

C-2

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140131

EFIHMW00139970

Private Placement Legend printed on the relevant Restricted Global Note and in the Indenture and the Securities Act.

C-3

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140132

EFIHMW00139970

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer and are dated _____.

[Insert Name of Transferor]

By: _____
    Name:
    Title:

Dated: _____

C-4

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140133

EFIHMW00139970

EXHIBIT D

[FORM OF SUPPLEMENTAL INDENTURE

TO BE DELIVERED BY SUBSEQUENT GUARANTORS]

Supplemental Indenture (this "Supplemental Indenture"), dated as of _____, among _____ (the "Guaranteeing Subsidiary"), a subsidiary of Texas Competitive Electric Holdings Company LLC, a Delaware limited liability company ("TCEH" ), TCEH Finance, Inc., a Delaware corporation (together with TCEH, the "Issuer"), the Guarantors (as defined in the Indenture referred to below) and The Bank of New York Mellon Trust Company, N.A., as trustee (the "Trustee").

W I T N E S S E T H

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture (the "Indenture"), dated as of October 6, 2010, providing for the issuance of an unlimited aggregate principal amount of 15% Senior Secured Second Lien Notes due 2021 (the "Notes");

WHEREAS, the Indenture provides that under certain circumstances the Guaranteeing Subsidiary shall execute and deliver to the Trustee a supplemental indenture pursuant to which the Guaranteeing Subsidiary shall unconditionally guarantee all of the Issuer's Obligations under the Notes and the Indenture on the terms and conditions set forth herein and under the Indenture (the "Guarantee"); and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Notes as follows:

1.    CAPITALIZED TERMS.  Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2.    AGREEMENT TO GUARANTEE.  The Guaranteeing Subsidiary hereby agrees as follows:

(a)    Along with all Guarantors named in the Indenture, to jointly and severally unconditionally guarantee to each Holder of a Note authenticated and delivered by the Trustee and to the Trustee and its successors and assigns, irrespective of the validity and enforceability of the Indenture, the Notes or the obligations of the Issuer hereunder or thereunder, that:

(i)    the principal of, interest, premium and Additional Interest, if any, on the Notes shall be promptly paid in full when due, whether at maturity, by acceleration, redemption or otherwise, and interest on the overdue principal of and interest on the Notes, if any, if lawful, and all other obligations of the Issuer to the Holders or the Trustee hereunder or thereunder shall be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and

027141-0016-11635-Active.12138318

Confidential                                                EFIHMW00140134

EFIHMW00139970

(ii)      in case of any extension of time of payment or renewal of any Notes or any of such other obligations, that same shall be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at stated maturity, by acceleration or otherwise.  Failing payment when due of any amount so guaranteed or any performance so guaranteed for whatever reason, the Guarantors and the Guaranteeing Subsidiary shall be jointly and severally obligated to pay the same immediately.  This is a guarantee of payment and not a guarantee of collection.

(b)      The obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder of the Notes with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(c)      The following is hereby waived:  diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever.

(d)      Except as set forth in Section 5 hereof, this Guarantee shall not be discharged except by complete performance of the obligations contained in the Notes, the Indenture and this Supplemental Indenture, and the Guaranteeing Subsidiary accepts all obligations of a Guarantor under the Indenture.

(e)      If any Holder or the Trustee is required by any court or otherwise to return to the Issuer, the Guarantors (including the Guaranteeing Subsidiary), or any custodian, trustee, liquidator or other similar official acting in relation to either the Issuer or the Guarantors, any amount paid either to the Trustee or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect.

(f)      The Guaranteeing Subsidiary shall not be entitled to any right of subrogation in relation to the Holders in respect of any obligations guaranteed hereby until payment in full of all obligations guaranteed hereby.

(g)      As between the Guaranteeing Subsidiary, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Guarantee, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the obligations guaranteed hereby, and (y) in the event of any declaration of acceleration of such obligations as provided in Article 6 of the Indenture, such obligations (whether or not due and payable) shall forthwith become due and payable by the Guaranteeing Subsidiary for the purpose of this Guarantee.

(h)      The Guaranteeing Subsidiary shall have the right to seek contribution from any non-paying Guarantor so long as the exercise of such right does not impair the rights of the Holders under this Guarantee.

(i)      Pursuant to Section 10.02 of the Indenture, after giving effect to all other contingent and fixed liabilities that are relevant under any applicable Bankruptcy or fraudulent conveyance laws, and after giving effect to any collections from, rights to receive contribution from or payments made by or on behalf of any other Guarantor in respect of the obligations of

D-2

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140135

EFIHMW00139970

such other Guarantor under Article 10 of the Indenture, this new Guarantee shall be limited to the maximum amount permissible such that the obligations of such Guaranteeing Subsidiary under this Guarantee will not constitute a fraudulent transfer or conveyance.

(j)    This Guarantee shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation, reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Notes and Guarantee, whether as a "voidable preference", "fraudulent transfer" or otherwise, all as though such payment or performance had not been made.  In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Note shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(k)    In case any provision of this Guarantee shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(l)    This Guarantee shall be a general senior secured obligation of such Guaranteeing Subsidiary, ranking equally in right of payment with all existing and future Indebtedness of the Guaranteeing Subsidiary, except to the extent such Indebtedness is expressly subordinated to the Obligations arising under a Guarantee, in which case the obligations of a Guaranteeing Subsidiary under such Guarantee will rank senior in right of payment to such Indebtedness and will be effectively subordinated to all existing and future Indebtedness of the Guarantors that are either (1) secured by a Lien on the Collateral that is senior or prior to the Second-Priority Liens securing a Guarantee, including first-priority Liens securing Obligations under the TCEH Senior Secured Facilities and any other First Lien Obligations (and any Permitted Liens) or (2) secured by assets that are not part of the Collateral securing a Guarantee, in each case, to the extent of the value of the assets securing such Indebtedness. The Guarantees will be senior in right of payment to all existing and future unsecured Indebtedness, to the extent of the value of the Collateral (after taking into consideration all first-priority Liens on the Collateral) of each Guarantor. The Notes will be structurally subordinated to Indebtedness and other liabilities of Subsidiaries of the Issuer that do not Guarantee the Notes, if any.

(m)    Each payment to be made by the Guaranteeing Subsidiary in respect of this Guarantee shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

3.    EXECUTION AND DELIVERY.    The Guaranteeing Subsidiary agrees that the Guarantee shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantee on the Notes.

4.    Merger, Consolidation or Sale of All or Substantially All Assets.

(a)    Except as otherwise provided in Section 5.01(c) of the Indenture, the Guaranteeing Subsidiary may not consolidate or merge with or into or wind up into (whether or not the Issuer or Guaranteeing Subsidiary is the surviving corporation), or sell, assign, transfer,

D-3

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140136

EFIHMW00139970

lease, convey or otherwise dispose of all or substantially all of its properties or assets, in one or more related transactions, to any Person unless:

> (i)    (A)    the Guaranteeing Subsidiary is the surviving corporation or the Person formed by or surviving any such consolidation or merger (if other than the Guaranteeing Subsidiary) or to which such sale, assignment, transfer, lease, conveyance or other disposition will have been made is a corporation, partnership, limited partnership, limited liability partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of the Guaranteeing Subsidiary, as the case may be, or the laws of the United States, any state thereof, the District of Columbia, or any territory thereof (the Guaranteeing Subsidiary or such Person, as the case may be, being herein called the "Successor Person");

> > (B)    the Successor Person, if other than the Guaranteeing Subsidiary, expressly assumes all the obligations of the Guaranteeing Subsidiary under the Indenture and the Registration Rights Agreement and the Guaranteeing Subsidiary's related Guarantee pursuant to supplemental indentures or other documents or instruments in form reasonably satisfactory to the Trustee;

> > (C)    immediately after such transaction, no Default exists; and

> > (D)    the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger or transfer and such supplemental indentures, if any, comply with the Indenture; or

> (ii)    the transaction is made in compliance with Section 4.10 of the Indenture;

> (b)    Subject to certain limitations described in the Indenture, the Successor Person will succeed to, and be substituted for, the Guaranteeing Subsidiary under the Indenture and the Guaranteeing Subsidiary's Guarantee. Notwithstanding the foregoing, the Guaranteeing Subsidiary may (i) merge into or transfer all or part of its properties and assets to another Guarantor or the Issuer, (ii) merge with an Affiliate of the Issuer solely for the purpose of reincorporating the Guaranteeing Subsidiary in the United States, any state thereof, the District of Columbia or any territory thereof or (iii) convert into a corporation, partnership, limited partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of such Guarantor.

5.    RELEASES.  The Guarantee of the Guaranteeing Subsidiary shall be automatically and unconditionally released and discharged, and no further action by the Guaranteeing Subsidiary, the Issuer or the Trustee is required for the release of the Guaranteeing Subsidiary's Guarantee, upon:

> (1)    (A)    any sale, exchange or transfer (by merger, wind-up, consolidation or otherwise) of the Capital Stock of the Guaranteeing Subsidiary (including any sale, exchange or transfer), after which the Guaranteeing Subsidiary is no longer a Restricted Subsidiary or sale of all or substantially all the assets of the Guaranteeing Subsidiary which sale, exchange or transfer is made in compliance with the applicable provisions of the Indenture;

D-4

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140137

EFIHMW00139970

(B)    the release or discharge of the guarantee by the Guaranteeing Subsidiary of the TCEH Senior Secured Facilities or the guarantee which resulted in the creation of the Guarantee, except a discharge or release by or as a result of payment under such guarantee;

(C)    the proper designation of the Guaranteeing Subsidiary as an Unrestricted Subsidiary in compliance with Section 4.08 of the Indenture and the definition of "Unrestricted Subsidiary" in the Indenture; or

(D)    the Issuer exercising its Legal Defeasance option or Covenant Defeasance option in accordance with Article 8 of the Indenture or the Issuer's obligations under the Indenture being discharged in accordance with the terms of the Indenture; and

(2)    the Guaranteeing Subsidiary delivering to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for in the Indenture relating to such transaction have been complied with.

6.    NO RECOURSE AGAINST OTHERS.  No past, present or future director, officer, employee, incorporator or stockholder of the Guaranteeing Subsidiary shall have any liability for any obligations of the Issuer or the Guarantors (including the Guaranteeing Subsidiary) under the Notes, any Guarantees, the Indenture, this Supplemental Indenture or any Security Document or for any claim based on, in respect of, or by reason of, such obligations or their creation.  Each Holder by accepting Notes waives and releases all such liability.  The waiver and release are part of the consideration for issuance of the Notes.

7.    GOVERNING LAW.    THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

8.    COUNTERPARTS.    The parties may sign any number of copies of this Supplemental Indenture.  Each signed copy shall be an original, but all of them together represent the same agreement.

9.    EFFECT OF HEADINGS.  The Section headings herein are for convenience only and shall not affect the construction hereof.

10.    THE TRUSTEE.  The Trustee shall not be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the Guaranteeing Subsidiary.

11.    SUBROGATION.  The Guaranteeing Subsidiary shall be subrogated to all rights of Holders of Notes against the Issuer in respect of any amounts paid by the Guaranteeing Subsidiary pursuant to the provisions of Section 2 hereof and Section 10.01 of the Indenture; provided that if an Event of Default has occurred and is continuing, the Guaranteeing Subsidiary shall not be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Notes shall have been paid in full.

12.    BENEFITS ACKNOWLEDGED.    The Guaranteeing Subsidiary's Guarantee is subject to the terms and conditions set forth in the Indenture. The Guaranteeing Subsidiary acknowledges that it shall receive direct and indirect benefits from the financing arrangements contemplated by the

D-5

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140138

EFIHMW00139970

Indenture and this Supplemental Indenture and that the guarantee and waivers made by it pursuant to this Guarantee are knowingly made in contemplation of such benefits.

13.    SUCCESSORS.    All agreements of the Guaranteeing Subsidiary in this Supplemental Indenture shall bind its Successors, except as otherwise provided in Section 2(k) hereof or elsewhere in this Supplemental Indenture.  All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

D-6

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140139

EFIHMW00139970

**PX 040**
**Page 170 of 171**

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC

By:  _____
      Name:
      Title:

TCEH FINANCE, INC.

By:  _____
      Name:
      Title:

[NAMES OF GUARANTORS]

By:  _____
      Name:
      Title:

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Trustee

By:  _____
      Name:
      Title:

[GUARANTEEING SUBSIDIARY]

By:  _____
      Name:
      Title:

D-7

027141-0016-11635-Active.12138318

Confidential

EFIHMW00140140

EFIHMW00139970

**PX 040**
**Page 171 of 171**