**EXECUTION VERSION**

Energy Future Holdings Corp.
Energy Future Intermediate Holding Company LLC
EFIH Finance Inc.

Dealer Manager Agreement

December 21, 2012

Citigroup Global Markets Inc.
Goldman, Sachs & Co.
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities LLC
Morgan Stanley & Co. LLC

c/o  Citigroup Global Markets Inc.
     388 Greenwich Street
     New York, New York 10013

c/o  Goldman Sachs, & Co.
     200 West Street
     New York, New York 10282

Ladies and Gentlemen:

Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), and EFIH Finance Inc. a Delaware corporation ("EFIH Finance"), plan, on the terms and subject to the conditions described in the Offer Material (as defined below), to make offers (each such offer, as it may be amended from time to time, an "Exchange Offer" and collectively the "Exchange Offers") to exchange any and all of the existing notes shown on Schedule B hereto (the "Existing Notes"), for consideration consisting of, with respect to each $1,000 principal amount of Existing Notes validly tendered in the Exchange Offers, the principal amount of 11.25%/12.25% Senior Toggle Notes due 2018 of EFIH and EFIH Finance (the "New EFIH Notes") shown on Schedule B hereto.  The New EFIH Notes will be issued pursuant to the terms of the Indenture, dated as of December 5, 2012, among EFIH, EFIH Finance and The Bank of New York Mellon Trust Company, N.A., as trustee (the "EFIH Trustee"), as supplemented by the First Supplemental Indenture, dated as of December 5, 2012 (the "EFIH Existing Indenture"), as it will be amended and supplemented with respect to the New EFIH Notes by the Second Supplemental Indenture, to be dated as of the date the New EFIH Notes are issued (the "EFIH Supplemental Indenture," and the EFIH Existing Indenture as so supplemented, the "EFIH Indenture"), will constitute Additional Notes (as defined in the EFIH Indenture) and will, with certain exceptions, have identical terms and conditions as, and form a single series and vote together as a single class with, the $1.145 billion aggregate principal amount of 11.25%/12.25% Senior Toggle Notes due 2018 issued on December 5, 2012 and the $159 million aggregate principal amount of 11.25%/12.25% Senior Toggle Notes due 2018 issued on December 19, 2012 under the EFIH Existing Indenture.

NYDOCS01/1316564.6

The New EFIH Notes will have the benefit of a registration rights agreement (the "Registration Rights Agreement") between the EFIH, EFIH Finance and the Dealer Managers (as defined below), pursuant to which EFIH and EFIH Finance will agree to register the New EFIH Notes with the Securities and Exchange Commission (the "Commission") under the United States Securities Act of 1933, as amended (the "Securities Act") subject to the terms and conditions therein specified.

In connection with the Exchange Offers, EFIH and EFIH Finance have prepared a letter of inquiry dated December 21, 2012 (the "Letter of Inquiry").  The Exchange Offers shall be conducted on the terms and subject to the conditions set forth in (a) the offering memorandum, dated the Commencement Date, including any and all exhibits thereto and any information incorporated by reference therein (as it may be supplemented and amended from time to time, the "Offering Memorandum"), (b) the related letter of transmittal, dated the Commencement Date, to be used by holders of Existing Notes exchanging in the Exchange Offers (as it may be supplemented and amended from time to time, the "Letter of Transmittal"), (c) any press releases or advertisements, to the extent applicable, expressly related to the Exchange Offers and (d) any other written material furnished by or with the written consent of EFH, EFIH or EFIH Finance to the holders of the Existing Notes in connection with the Exchange Offers (the items in clauses (a) through (d), collectively, the "Offer Material").  The Offer Material sets forth certain information concerning EFH, EFIH and EFIH Finance, the New EFIH Notes, the Existing Notes and the Exchange Offers.  The date on which the New EFIH Notes are issued in the Exchange Offers and the Existing Notes are exchanged in the Exchange Offers shall be hereinafter referred to as the "Exchange Date."  This agreement among EFH, EFIH and EFIH Finance and the Dealer Managers shall be hereinafter referred to as the "Agreement."  This Agreement, the New EFIH Notes, the EFIH Indenture and the Registration Rights Agreement are hereinafter referred to collectively as the "Transaction Documents".

The Offer Material has been prepared and approved by EFH, EFIH and EFIH Finance and you are authorized to use the Letter of Inquiry, the Offering Memorandum and the Letter of Transmittal in connection with the Exchange Offers delivered on or prior to the date hereof in the manner contemplated by the applicable Offer Material along with such other offering materials and information that EFH, EFIH and EFIH Finance may approve for use subsequent to the date hereof in connection with the Exchange Offers (together with any and all information and documents incorporated by reference therein, collectively, the "Additional Material").

EFH, EFIH and EFIH Finance shall cause to be distributed electronically to each holder of the Existing Notes who has made the certifications required in the Letter of Inquiry, as soon as practicable after the Commencement Date, copies of the Offering Memorandum, the Letter of Transmittal and any other applicable Offer Material (other than any press releases or newspaper advertisements relating to the Exchange Offers) and any Additional Material (other than any press releases or newspaper advertisements relating to the Exchange Offers).  Thereafter, to the extent practicable until the expiration of the Exchange Offers, each of EFH, EFIH and EFIH Finance shall use its reasonable best efforts to cause copies of such material to be made available upon request to each person who is or becomes an eligible holder that has made the certifications required in the Letter of Inquiry and who is a beneficial holder of any Existing Notes.

The Dealer Managers hereby agree that, without the prior written consent of EFH, EFIH and

2

NYDOCS01/1316564.6

Confidential

EFIH Finance (which consent EFH, EFIH and EFIH Finance agree will not be unreasonably withheld), the Dealer Managers will not hereafter publicly disseminate any written materials to holders of Existing Notes for or in connection with the solicitation of tenders of Existing Notes pursuant to the Exchange Offers, other than the Offer Material, any Additional Material, and one or more term sheets relating to the Exchange Offers containing customary information, or make any representations to holders of Existing Notes in connection with the solicitation of tenders of Existing Notes pursuant to the Exchange Offers, other than as contained in the Offer Material and any Additional Material.

Any references herein to the terms "amend," "amendment" or "supplement" with respect to any of the Offer Material shall be deemed to refer to and include any information contained in an amendment or supplement to such Offer Material, including any press release that refers to the Offering Memorandum, prepared subsequent to the Commencement Date by EFH, EFIH and EFIH Finance, and to which Citigroup Global Markets Inc. and Goldman, Sachs & Co. have been provided an opportunity to review in accordance with the provisions of Section 5(b) hereunder.

1.  Appointment as Dealer Manager.

(a)     EFH, EFIH and EFIH Finance agree that you will act as the exclusive dealer managers for the Exchange Offers in the United States (the "Dealer Managers") in accordance with your customary practices, this Agreement and the terms of the Offer Material and any Additional Material, including without limitation by soliciting tenders in the United States pursuant to the Exchange Offers and assisting in the distribution of the Offer Material in the United States.

(b)     You agree that all actions taken by you as Dealer Managers have complied and will comply in all material respects with all applicable laws, regulations and rules in the United States, including, without limitation, the applicable rules and regulations of the registered national securities exchanges of which you are a member and of FINRA.

(c)     Each Dealer Manager, in its sole discretion, may continue to own or dispose of, in any manner it may elect, any Existing Notes it may beneficially own at the date hereof or hereafter acquire, in any such case, subject to applicable law.  The Dealer Managers have no obligation to EFH, EFIH and EFIH Finance, pursuant to this Agreement or otherwise, to tender or refrain from tendering Existing Notes beneficially owned by them in any Exchange Offer.  The Dealer Managers acknowledge and agree that if any Exchange Offer is not consummated for any reason, EFH, EFIH and EFIH Finance shall have no obligation, pursuant to this Agreement or otherwise, to acquire any Existing Notes from the Dealer Managers or otherwise to hold the Dealer Managers harmless with respect to any losses it may incur in connection with the resale to any third parties of any Existing Notes.

(d)     Each of EFH, EFIH and EFIH Finance agrees that it will not (i) file, use or publish any material in connection with the Exchange Offers, without the prior written consent of Citigroup Global Markets Inc. and Goldman, Sachs & Co. (such

NYDOCS01/1316564.6

Confidential

EFH00079789

**PX 073**
**Page 3 of 40**

consent not to be unreasonably withheld), and (ii) other than as used in the Offer Material, use the name of any Dealer Manager or refer to any Dealer Manager or their relationship with EFH, EFIH or EFIH Finance without the prior written consent of such Dealer Manager (such consent not to be unreasonably withheld), as the case may be, to the form of such use or reference.  There shall be no fee for any such permitted use or reference other than as set forth herein.

2.    <u>Compensation</u>. The Issuers shall pay to you in respect of your services as Dealer Managers the fee set forth in (and in accordance with) the attached <u>Schedule A</u> (the "<u>Fee</u>").  In the event that the Exchange Offers are not consummated, the Issuers shall not owe the Dealer Managers any Fee.  The Issuers shall also reimburse you for your reasonable out-of-pocket expenses, including the reasonable fees, costs and out-of-pocket expenses of your counsel for their representation of you in connection therewith, incurred by you in connection with preparing for and performing your services as Dealer Managers, whether or not the Exchange Offers are consummated or otherwise completed as contemplated, in an amount not to exceed US $500 thousand.  All payments to be made by the Issuers to you pursuant to this Section 2 shall be made promptly after the completion or termination of the Exchange Offers.

3.    <u>Representations and Warranties</u>. EFH, EFIH and EFIH Finance, jointly and severally, represent and warrant to you as set forth below in this Section 3:

(a)    At the Commencement Date, the Early Tender Date,  and the Exchange Date, the Offering Memorandum and the Offer Material as amended or supplemented at such date (i) complied and will comply in all material respects with all applicable requirements of the laws of those jurisdictions in which the Exchange Offers will be made pursuant to this Agreement and (ii) did not and will not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; <u>provided</u>, <u>however</u>, that this representation and warranty shall not apply to any statements or omissions made in reliance upon and in conformity with information furnished in writing to EFH, EFIH or EFIH Finance by any Dealer Manager expressly for use therein.

(b)    None of EFH, EFIH or EFIH Finance nor any of their respective Affiliates that are controlled by EFH, EFIH or EFIH Finance nor any person acting on their behalf (provided that no representation is made as to the Dealer Managers) has (i) directly or indirectly, made offers or sales of any security, or solicited offers to buy any security, under circumstances that would require the registration of the New EFIH Notes under the Securities Act or (ii) engaged in any directed selling efforts (within the meaning of Regulation S) with respect to the New EFIH Notes; and each of EFH, EFIH and EFIH Finance, their Affiliates and each person acting on their behalf (provided that no representation is made as to the Dealer Managers)  has complied with the offering restrictions requirement of Regulation S.

(c)    None of EFH, EFIH or EFIH Finance nor any of their respective Affiliates that are controlled by EFH, EFIH or EFIH Finance nor any person acting on their behalf (provided that no representation is made as to the Dealer Managers) has

4

NYDOCS01/1316564.6

engaged in any form of general solicitation or general advertising (within the meaning of Regulation D) in connection with any offer or sale of the New EFIH Notes.

(d)    When issued, the New EFIH Notes will satisfy the eligibility requirements of Rule 144A(d)(3) under the Securities Act.

(e)    None of EFH, EFIH or EFIH Finance is, and after giving effect to the offering and issuance of the New EFIH Notes and, if applicable, the cancellation of the Existing Notes as described in the Offering Memorandum, none of them will be, an "investment company" as such term is defined in the United States Investment Company Act of 1940, as amended.

(f)    EFH and EFIH are subject to and in compliance in all material respects with the reporting requirements of Section 13 or Section 15(d) of the Exchange Act.

(g)    EFH, EFIH and EFIH Finance have not paid or agreed to pay to any person any compensation for (i) soliciting another to purchase any of its securities or (ii) soliciting tenders by holders of Existing Notes pursuant to the Exchange Offers (except as contemplated in this Agreement or as described in the Offering Memorandum).

(h)    Prior to the date hereof, none of EFH, EFIH or EFIH Finance nor any of their respective Affiliates that are controlled by EFH, EFIH or EFIH Finance have taken any action, directly or indirectly, which is designed to or which has constituted or which might have been expected to cause or result, under the Exchange Act or otherwise, in stabilization or manipulation of the price of any security of EFH, EFIH or EFIH Finance in connection with the Exchange Offers.

(i)    Except as set forth in the Letter of Transmittal, there are no stamp or other issuance or transfer taxes or duties or other similar fees or charges required to be paid in connection with the execution and delivery of this Agreement and the other Transaction Documents, the issuance or sale by EFIH and EFIH Finance of the New EFIH Notes, the solicitation or acceptance of tenders with respect to the Existing Notes or the entering into of the Supplemental Indentures.

(j)    Each of EFH, EFIH and EFIH Finance has been duly incorporated or formed and is validly existing as a corporation or limited liability company, as applicable, in good standing under the laws of the State of Delaware or the State of Texas, as applicable, with power and authority (corporate or limited liability company, as applicable) to own, lease and/or operate its properties and conduct its business as described in the Offering Memorandum, and has been duly registered or qualified as a foreign corporation or limited liability company, as the case may be, for the transaction of business and is in good standing under the laws of each other jurisdiction in which it owns or leases properties or conducts any business so as to require such qualification, except where the failure to so qualify or to be in good standing could not reasonably be expected to result in a material adverse effect upon the business, properties, financial condition, or earnings of EFIH and EFIH Finance and their respective subsidiaries, taken

5

NYDOCS01/1316564.6

EFH00079791

as a whole or EFH and its subsidiaries, taken as a whole (a "Material Adverse Effect"); and each subsidiary of EFH, EFIH and EFIH Finance, respectively, has been duly incorporated or formed and is validly existing as a corporation, limited partnership or limited liability company, as applicable, in good standing under the laws of its jurisdiction of incorporation, formation or organization.

(k)     As of September 30, 2012, each of EFH and EFIH had an authorized capitalization as set forth in the Offering Memorandum, and all of the issued shares of capital stock or membership interests, as the case may be, of EFH and EFIH have been duly and validly authorized and issued and are fully paid and non-assessable; and all of the issued shares of capital stock, membership interests or partnership interests, as the case may be, of each subsidiary of EFH and EFIH, respectively, have been duly and validly authorized and issued, are fully paid and non-assessable, and (except for Oncor Electric Delivery Company LLC, Oncor Management Investment LLC and Comanche Peak Nuclear Power Company LLC) are owned directly or indirectly by EFH and EFIH, respectively, free and clear of any security interest, mortgage, pledge, lien, encumbrance or claim ("Liens") and preemptive or similar rights, except for Liens granted (i) under the Pledge Agreement (the "Pledge Agreement") dated as of November 16, 2009 documenting a security interest in the membership interests and other investments that EFIH owns in Oncor Electric Delivery Holdings Company LLC as described in the Offering Memorandum (the "Collateral") and a Collateral Trust Agreement dated November 16, 2009 (the "Collateral Trust Agreement"), among EFIH and The Bank of New York Mellon Trust Company, N.A., as trustee, and The Bank of New York Mellon Trust Company, N.A., as collateral trustee (the "Collateral Trustee"), and other documents or instruments evidencing or creating or purporting to create a security interest in favor of the Collateral Trustee, (collectively, the "Security Documents") in respect of the 6.875% Senior Secured Notes due 2017 of EFIH and EFIH Finance, the 9.75% Senior Secured Notes due 2019 of EFIH and EFIH Finance, the 10.000% Senior Secured Notes due 2020 of EFIH and EFIH Finance, the 11% Senior Secured Second Lien Notes due 2021 of EFIH and EFIH Finance, the 11.750% Senior Secured Second Lien Notes due 2022 of EFIH and EFIH Finance, the 9.75% Senior Secured Notes due 2019 of EFH and the 10.000% Senior Secured Notes due 2020 of EFH (collectively, the "Old Notes"), (ii) in connection with the 11.5% Senior Secured Notes due 2020 issued by Texas Competitive Electric Holdings Company LLC ("TCEH") and TCEH Finance, Inc. ("TCEH Finance"), the 15% Senior Secured Second Lien Notes due 2021 issued by TCEH and TCEH Finance, the 15% Senior Secured Second Lien Notes due 2021, Series B, issued by TCEH and TCEH Finance, and the credit facilities under the Credit Agreement, dated as of October 10, 2007, as amended on August 7, 2009 and April 7, 2011, by and among Energy Future Competitive Holdings Company, as guarantor, TCEH, as borrower, the lenders party thereto in their capacities as lenders thereunder and Citibank, N.A., as Administrative Agent (collectively, the "TCEH Secured Debt") and (iii) under the Investor Rights Agreement (as defined in the Offering Memorandum).

(l)     The statements set forth in the Offering Memorandum under the heading "Certain U.S. Federal Income Tax Considerations," insofar as such statements constitute a summary of the legal matters referred to therein, fairly present and summarize, in all

6

Confidential

material respects, the matters referred to therein; and the statements under the heading "Description of the New Notes", insofar as they purport to constitute summaries of the terms of the New EFIH Notes, are accurate in all material respects.

(m)    Other than as set forth in the Offering Memorandum, there are no legal or governmental proceedings pending to which EFH, EFIH and EFIH Finance or any of their respective subsidiaries are a party or of which any property of EFH, EFIH and EFIH Finance or any of their respective subsidiaries is the subject that, if determined adversely to EFH, EFIH and EFIH Finance or any of their respective subsidiaries, (i) would individually or in the aggregate reasonably be expected to result in a Material Adverse Effect or (ii) would reasonably be expected to result in a material adverse effect on the performance by EFH, EFIH and EFIH Finance of the Transaction Documents, the issuance of the New EFIH Notes or the consummation of any of the transactions contemplated hereby, thereby or described in the Offering Memorandum, and to the knowledge of each of EFH, EFIH and EFIH Finance, no such proceedings are threatened.

(n)    EFH, EFIH and EFIH Finance have duly authorized, executed and delivered this Agreement and, assuming due authorization, execution and delivery of this Agreement by the Dealer Managers, this Agreement will constitute a valid and legally binding instrument of EFH, EFIH and EFIH Finance, enforceable against EFH, EFIH and EFIH Finance in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law).

(o)    The EFIH Existing Indenture has been duly authorized, executed and delivered by EFIH and EFIH Finance and constitutes a valid and legally binding instrument of EFIH and EFIH Finance, enforceable against EFIH and EFIH Finance in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); and at the Exchange Date (i) the EFIH Supplemental Indenture will have been duly authorized by each of EFIH and EFIH Finance, and, when executed and delivered by EFIH and EFIH Finance and, assuming due authorization, execution and delivery thereof by the Trustee, the EFIH Indenture will constitute a valid and legally binding instrument of EFIH and EFIH Finance, enforceable against EFIH and EFIH Finance in accordance with its terms, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law) (ii) the New EFIH Notes will have been duly authorized by EFIH and EFIH Finance and, when executed and authenticated by the EFIH Trustee in accordance with the provisions of the EFIH Indenture and delivered to holders of the Existing Notes who tender Existing Notes in accordance with the terms of the Exchange Offers, will have been duly executed, authenticated, issued and delivered by EFIH and EFIH Finance and will constitute valid and legally binding obligations of EFIH and EFIH Finance, enforceable against each of EFIH and EFIH Finance, entitled to the benefits provided by

7

Confidential

the EFIH Indenture and the Registration Rights Agreement, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); (iii) the Registration Rights Agreement will have been duly authorized by EFIH and EFIH Finance and, when executed and delivered by EFIH and EFIH Finance (and assuming due authorization, execution and delivery by the Dealer Managers), will constitute a valid and legally binding instrument of EFIH and EFIH Finance enforceable against EFIH and EFIH Finance in accordance with its terms subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding in equity or at law); and (iv) the New EFIH Notes, the EFIH Indenture and the Registration Rights Agreement will conform to the descriptions thereof in the Offering Memorandum and will be in substantially the forms previously delivered to you.

(p)    Except as set forth or contemplated in the Offering Memorandum, the issue of the New EFIH Notes and the compliance by each of EFH, EFIH and EFIH Finance with all of the provisions of the Transaction Documents to which it is a party and the consummation of the transactions herein and therein contemplated will not conflict with or result in a breach or violation of any of the terms or provisions of, or constitute a default under, any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which any of EFH, EFIH or EFIH Finance, or any subsidiary of EFH, EFIH or EFIH Finance is a party or by which any of EFH, EFIH or EFIH Finance or any subsidiary of EFH, EFIH or EFIH Finance is bound or to which any of the property or assets of EFH, EFIH or EFIH Finance or any subsidiary of EFH, EFIH or EFIH Finance is subject, except for such conflicts, breaches, violations or defaults that have been previously waived or could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect; nor will such action result in any violation of (i) the provisions of the Certificate of Incorporation or By-laws or other organizational documents of EFH, EFIH or EFIH Finance or any subsidiary of EFH, EFIH or EFIH Finance; or (ii) any statute or any order, rule or regulation of any court or governmental agency or body having jurisdiction over any of EFH, EFIH or EFIH Finance or any subsidiary of any of EFH, EFIH or EFIH Finance or any of their respective properties, except in the case of (ii)  where such violations could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect; and no consent, approval, authorization, order, registration or qualification of or with any such court or governmental agency or body (each, a "Governmental Consent") is required in connection with the conduct and consummation of the Exchange Offers or the consummation by EFH, EFIH and EFIH Finance of the transactions contemplated in this Agreement and the other Transaction Documents (to which they are a party), except for Governmental Consents as may have been obtained or may be required in connection with the registration of the New EFIH Notes with the Commission pursuant to the Securities Act, pursuant to the Registration Rights Agreement, for such Governmental Consents as may be required under state securities or blue sky laws in connection with the issuance of the New EFIH Notes in the manner contemplated herein and in the Offering Memorandum, or the failure to obtain which would not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect.

8

NYDOCS01/1316564.6

EFH00079794

(q)     The audited consolidated financial statements included in the Offering Memorandum, together with the related notes, present fairly, in all material respects, the consolidated financial position of EFH, EFIH and Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") and their respective subsidiaries as of the dates indicated and the consolidated results of operations and cash flows of EFH and its subsidiaries, EFIH and its subsidiaries and Oncor Holdings and its subsidiaries for the periods specified and have been prepared in all material respects in conformity with United States generally accepted accounting principles applied on a consistent basis during the periods presented (except as otherwise noted therein).  The other financial and statistical data set forth in the Offering Memorandum under the caption "Summary Historical Consolidated Financial Data" is accurately presented in all material respects and where applicable, has been prepared on a basis consistent with the financial statements and books and records of EFIH; there are no financial statements (historical or pro forma) that would be required to be included in a registration statement under the Securities Act if the New EFIH Notes were being registered thereunder that are not included in the Offering Memorandum.

(r)     Deloitte & Touche LLP, which has audited certain financial statements of each of (i) EFH and its subsidiaries, (ii) EFIH and its subsidiaries and (iii) Oncor Holdings and its subsidiaries, is an independent registered public accounting firm as required by the Securities Act and the rules and regulations of the Commission thereunder and the Public Company Accounting Oversight Board.

(s)     EFH, EFIH and EFIH Finance and their respective subsidiaries have good and marketable title in fee simple to all real property and good and marketable title to all personal property described in the Offering Memorandum as owned by them, in each case free and clear of all liens, encumbrances and defects except (i) such as are described in the Offering Memorandum, (ii) Liens granted on, or in connection with the sale of, Transition Bonds or Transition Property (each as defined in the Public Utility Regulatory Act ("PURA") contained in the Texas Utilities Code) or in connection with the issuance of, or to secure the payment of, Transition Bonds issued pursuant to PURA or pursuant to a financing order issued by the Public Utility Commission of Texas ("PUCT"), (iii) Liens granted in connection with Oncor's first lien bonds and credit facility, (iv) Liens in favor of the the Bank of New York Mellon Trust Company, N.A., as collateral trustee for the benefit of the holders of the Old Notes, (v) Liens granted in connection with the TCEH Secured Debt, (vi) Liens granted in connection with EFCH's 9.580% Fixed Notes due in annual installments through December 4, 2019 and 8.254% Fixed Notes due in quarterly installments through December 31, 2021, which debt is referred to as the EFCH Tex La debt and is secured by an undivided interest in Comanche Peak Nuclear Facility, or (vii) such as do not materially affect the value of such property and do not materially interfere with the use made and proposed to be made of such property by EFH, EFIH and EFIH Finance and their respective subsidiaries; except as described in the Offering Memorandum, any real property, buildings and improvements held under lease by EFH, EFIH and EFIH Finance and their respective subsidiaries are held by them under valid, subsisting and enforceable leases, assuming due authorization, execution and delivery by the other parties to such leases, subject, as to enforcement, to bankruptcy, insolvency, reorganization and other laws of

9

NYDOCS01/1316564.6

EFH00079795

general applicability relating to or affecting creditors' rights and to general equity principles (whether considered in a proceeding at equity or at law), with such exceptions as are not material and do not materially interfere with the use made and proposed to be made of such property, buildings and improvements by EFH, EFIH and EFIH Finance and their respective subsidiaries.  No assets owned by Oncor Electric Delivery Company LLC have been pledged to support any debt of EFH, EFIH and EFIH Finance in violation of the final order in PUCT Docket No. 34077.

(t)        EFH and its subsidiaries, including EFIH, on a consolidated basis (but not including Oncor Holdings and its subsidiaries), maintain a system of internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that complies with the requirements of the Exchange Act and has been designed by EFH's principal executive officer and principal financial officer, or under their supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with United States generally accepted accounting principles. The internal control over financial reporting of EFH is effective, and EFH is not aware of any material weaknesses in its internal control over financial reporting; to the knowledge of EFH and EFIH, Oncor Holdings maintains a system of internal control over financial reporting (as such term is defined in Rule 13a-15(f) of the Exchange Act) that complies with the requirements of the Exchange Act and has been designed by its principal executive officer and principal financial officer, or under their supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with United States generally accepted accounting principles.  To the knowledge of EFH and EFIH, the internal control over financial reporting of Oncor Holdings is effective, and EFH and EFIH are not aware of any material weaknesses in Oncor Holdings' internal control over financial reporting.

(u)        Since the date of the latest audited financial statements included in the Offering Memorandum, there has been no change in the internal control over financial reporting of EFH and its subsidiaries, including EFIH, that has materially affected, or is reasonably likely to materially affect, the internal control over financial reporting of EFH and its subsidiaries, including EFIH.

(v)        EFH and its subsidiaries, including EFIH, on a consolidated basis (but not including Oncor Holdings and its subsidiaries), maintain disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Exchange Act) that comply with the requirements of the Exchange Act; such disclosure controls and procedures have been designed to ensure that material information relating to EFH and its subsidiaries, including EFIH (but not including Oncor Holdings and its subsidiaries), is made known to EFIH's principal executive officer and principal financial officer, by others within those entities; and such disclosure controls and procedures are effective; to the knowledge of EFH and EFIH, Oncor Holdings maintains disclosure controls and procedures (as such term is defined in Rule 13a-15(e) of the Exchange Act) that comply with the requirements of the Exchange Act; such disclosure controls and procedures have been designed to ensure that material information relating to Oncor Holdings and its subsidiaries, is made known to EFIH's principal executive officer and principal

10

NYDOCS01/1316564.6

financial officer by others within those entities; and to the knowledge of EFH and EFIH, such disclosure controls and procedures are effective.

(w)    None of EFH, EFIH and EFIH Finance or any of their respective subsidiaries are (i) in violation of their Certificate of Incorporation or By-laws or other organizational documents or (ii) in default in the performance or observance of any material obligation, covenant or condition contained in any indenture, mortgage, deed of trust, loan agreement, lease or other agreement or instrument to which it is a party or by which it or any of its properties may be bound, except in connection with clause (ii) as could not reasonably be expected to result in a Material Adverse Effect.

(x)    EFH, EFIH and EFIH Finance and each of their respective subsidiaries maintain insurance covering its respective properties, operations, personnel and businesses as EFH, EFIH and EFIH Finance or their respective subsidiaries deem adequate and customary for companies engaged in similar businesses and all such policies are in full force and effect in all material respects, except where a failure to maintain such insurance policies would not, individually or in the aggregate, reasonably be expected to result in a Material Adverse Effect.

(y)    EFH, EFIH and EFIH Finance and each of their respective subsidiaries own, possess or can acquire on reasonable terms, adequate rights to use all trademarks, trade names and other rights to inventions, know-how, patents, copyrights, confidential information and other intellectual property (collectively, "intellectual property rights") necessary for the conduct of their respective businesses as currently conducted or proposed to be conducted as described in the Offering Memorandum (except where a failure to own or possess such intellectual property rights could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect), and have not received any notice of infringement of or conflict with asserted rights of others with respect to any intellectual property rights, the result of which, individually or in the aggregate, if the subject of an unfavorable decision, ruling or finding, would reasonably result in a Material Adverse Effect.

(z)    (i) Except as disclosed in the Offering Memorandum  and except for such matters that could not reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect, none of EFH, EFIH and EFIH Finance nor any of their respective subsidiaries (A) is in violation of any statute, any rule, regulation, decision or order of any governmental agency or body or any court, domestic or foreign, relating to the use, disposal or release into the environment of regulated, hazardous or toxic substances or relating to the protection or restoration of the environment or human exposure to hazardous or toxic substances (collectively, the "environmental laws"), (B) owns or operates any real property contaminated with any regulated, hazardous or toxic substance that is subject to any remedial obligation or other liabilities pursuant to any environmental laws, (C) is liable for any off-site disposal or contamination pursuant to any environmental laws, or (D) is subject to any claim arising pursuant to any environmental laws; and (ii) except as disclosed in the Offering Memorandum, none of EFH, EFIH and EFIH Finance are aware of any pending investigation pursuant to any

11

NYDOCS01/1316564.6

environmental laws which would reasonably be expected to, individually or in the aggregate, result in a Material Adverse Effect.

(aa)    None of EFH, EFIH and EFIH Finance nor any of their respective subsidiaries has sustained since the date of the latest audited financial statements included in the Offering Memorandum any material loss or interference with their business from fire, explosion, flood or other calamity, whether or not covered by insurance, or from any labor dispute or court or governmental action, order or decree, otherwise than as set forth or contemplated in Offering Memorandum; and, since the respective dates as of which information is given in the Offering Memorandum, there has not been (1) any change in the capital stock (other than repurchases of capital stock from employees in the ordinary course of business, exchanges by employees of stock options for restricted stock units and the granting of equity incentive awards to employees, directors and consultants in the ordinary course of business) or long-term debt (other than borrowings under revolving credit facilities in the ordinary course of business or as otherwise disclosed in the Offering Memorandum, payment of debt on scheduled maturities, payment of in-kind interest pursuant to the terms of debt agreements and any other issuance or acquisition of indebtedness disclosed in the Offering Memorandum) of any of EFH, EFIH and EFIH Finance nor any of their respective subsidiaries (other than Oncor Electric Delivery Holdings Company LLC and its subsidiaries), or (2) any material adverse change, or any development involving a prospective material adverse change, in or affecting the general affairs, management, financial position, stockholders' equity or results of operations of any of EFH, EFIH and EFIH Finance nor any of their respective subsidiaries, in the case of each of clauses (1) and (2) otherwise than as set forth or contemplated in the Offering Memorandum.

(bb)    EFIH, at the Commencement Date and immediately after the Exchange Date, will be Solvent. As used herein, the term "Solvent" means, with respect to EFIH on a particular date, that on such date (i) the fair market value of the assets of EFIH is greater than the total amount of liabilities (including contingent liabilities) of EFIH, (ii) the present fair salable value of the assets of EFIH is greater than the amount that will be required to pay the probable liabilities of EFIH on its debts as they become absolute and matured, (iii) EFIH is able to realize upon its assets and pay its debts and other liabilities, including contingent obligations, as they mature and (iv) EFIH does not have unreasonably small capital.

(cc)    Any certificate signed by any officer of EFH, EFIH or EFIH Finance and delivered to the Dealer Managers or counsel for the Dealer Managers in connection with the Exchange Offers shall be deemed a representation and warranty by EFH, EFIH or EFIH Finance, as applicable, as to matters covered thereby to the Dealer Managers.

4.    Offering by the Dealer Managers. (a) Each Dealer Manager acknowledges, severally, that the New EFIH Notes have not been and will not be registered under the Securities Act and may not be offered or sold within the United States or to, or for the account or benefit of, U.S. persons, except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Securities Act.

12

NYDOCS01/1316564.6

(b)      Each Dealer Manager represents and warrants to and agrees, severally, with the Company that:

(i)      it has not solicited and it will not solicit tenders of Existing Notes within the United States or from, or for the account or benefit of, U.S. persons, except:

(A) from those in respect of which the Information Agent has informed the Dealer Manager that the Information Agent has received a certification, in the form attached to the Letter of Inquiry, or in respect of which the Dealer Manager reasonably believes, that such persons are "qualified institutional buyers" (as defined in Rule 144A under the Securities Act) or

(B) in accordance with Rule 903 of Regulation S;

(ii)      neither it nor any person acting on its behalf has solicited tenders or will solicit tenders of Existing Notes in the United States by means of any form of general solicitation or general advertising (within the meaning of Regulation D under the Securities Act) in the United States;

(iii)      neither it nor any of its Affiliates nor any person acting on its or their behalf has engaged or will engage in any directed selling efforts with respect to the New EFIH Notes;

(iv)      it has not entered and will not enter into any contractual arrangement with any distributor (as that term is defined by Regulation S) with respect to the distribution of the New EFIH Notes, except with its Affiliates or with the prior written consent of the Company; and

(v)      it and its Affiliates have complied and will comply with the offering restrictions requirement of Regulation S.

5.   Agreements. EFH, EFIH and EFIH Finance, jointly and severally, agree with the Dealer Managers that:

(a)      EFH, EFIH and EFIH Finance will furnish to the Dealer Managers and to counsel for the Dealer Managers, without charge, during the period beginning on the Commencement Date and continuing to and including the Exchange Date, copies of the Offer Material and any amendments and supplements thereto in such quantities as the Dealer Managers may reasonably request.

(b)      EFH, EFIH and EFIH Finance will not amend or supplement the Offer Material or file any Offer Material with the Commission, without the prior written consent of Citigroup Global Markets Inc. (which consent shall not be unreasonably withheld), unless required by applicable law; provided, however, that prior to the Expiration Date, EFH, EFIH and EFIH Finance will supplement the Offer Material with fourth quarter financial information for EFIH and its subsidiaries, and prior to such supplementation EFIH will furnish to Citigroup Global Markets Inc. and Goldman, Sachs & Co. a copy of the proposed supplement for review and provide Citigroup

13

NYDOCS01/1316564.6

EFH00079799

Global Markets Inc. and Goldman, Sachs & Co. with a reasonable opportunity to review such materials and provide comments thereto.  Prior to the earlier of the Exchange Date or the date of termination of the Exchange Offers, EFH and EFIH will not file any document under the Exchange Act unless, within a reasonable time prior to such proposed filing, EFH and EFIH has furnished to Citigroup Global Markets Inc. and Goldman, Sachs & Co. a copy of such document for review and has provided Citigroup Global Markets Inc. and Goldman, Sachs & Co. with a reasonable opportunity to review such materials and provide comments to EFH and EFIH.

(c)    EFH, EFIH and EFIH Finance will comply with the Securities Act and the Exchange Act, as applicable, in conducting the Exchange Offers and the issuance of the New EFIH Notes pursuant thereto as contemplated in the Offering Memorandum.

(d)    EFH and EFIH will make generally available to each holder of New EFIH Notes, respectively, as soon as practicable, but in no event later than 90 days after the period covered thereby, an earnings statement or earnings statements (which need not be audited) covering a twelve-month period beginning with the first calendar quarter after the date of this Agreement which shall satisfy the provisions of Section 11(a) of the Securities Act and Rule 158 under the Securities Act.

(e)    EFH, EFIH and EFIH Finance will advise the Dealer Managers promptly of any administrative action or legal claims relating to the Exchanges Offers.

(f)    If, at any time prior to the Exchange Date, any event occurs as a result of which the Offer Material or any Additional Material would include any untrue statement of a material fact or omit to state any material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, or if, in the opinion of EFH, EFIH or EFIH Finance, after consultation with Citigroup Global Markets Inc. and Goldman, Sachs & Co., it should be necessary to amend or supplement the Offer Material or any Additional Material to comply with applicable law, EFH, EFIH and EFIH Finance will promptly: (i) notify the Dealer Managers of any such event or non-compliance at which time the Dealer Managers shall be entitled to cease soliciting tenders until such time as EFH, EFIH and EFIH Finance have complied with clause (iii) of this sentence; (ii) subject to the requirements of the first sentence of the above paragraph (b), prepare an amendment or supplement that will correct such statement or omission or effect such compliance; and (iii) supply any such amendment or supplement to the Dealer Managers and counsel for the Dealer Managers without charge in such quantities as the Dealer Managers may reasonably request. EFH, EFIH and EFIH Finance will also promptly inform the Dealer Managers of any litigation or administrative action with respect to the Exchange Offers.

(g)    Prior to the issuance of the New EFIH Notes, EFIH and EFIH Finance, will use their reasonable best efforts to obtain the registration or qualification of the New EFIH Notes for offer or sale by the Dealer Managers under the securities or blue sky laws of such U.S. jurisdictions as may be required for the Exchange Offers; provided that in no event shall EFH, EFIH or EFIH Finance be obligated to qualify to do business in any jurisdiction in which it is not now so qualified or to take any action that would

14

NYDOCS01/1316564.6

subject it to service of process in suits, other than those arising out of the offering or sale of the New EFIH Notes in any jurisdiction in which it is not now so subject. The Issuers will promptly advise the Dealer Managers of the receipt by the Issuers of any notification with respect to the suspension of the qualification of the New EFIH Notes for sale in any U.S. jurisdiction or the initiation or threatening of any proceeding for such purpose.

(h)    EFH, EFIH and EFIH Finance will not resell any New EFIH Notes that have been acquired by them.  EFH, EFIH and EFIH Finance will cause all of the Existing Notes accepted in the Exchange Offers to be retained by EFH, EFIH or EFIH Finance or cancelled, as applicable, as described in the Offering Memorandum.

(i)    Neither EFH, EFIH, EFIH Finance nor any of their Affiliates that are controlled by such entities, nor any person acting on their behalf (provided that no representation is made as to the Dealer Managers), will, directly or indirectly, make offers or sales of any security, or solicit offers to buy any security, under circumstances that would require the registration of the New EFIH Notes under the Securities Act.

(j)    Neither EFH, EFIH, EFIH Finance nor any of their Affiliates, that are controlled by such entities, nor any person acting on its or their behalf (provided that no representation is made as to the Dealer Managers), will engage in any form of general solicitation or general advertising (within the meaning of Regulation D) in connection with any offer or sale of the New EFIH Notes in the United States.

(k)    So long as any of the New EFIH Notes are "restricted securities" within the meaning of Rule 144(a)(3) under the Securities Act, EFIH will, during any period in which it is not subject to and in compliance with Section 13 or 15(d) of the Exchange Act, provide to each holder of such restricted securities and to each prospective purchaser (as designated by such holder) of such restricted securities, upon the request of such holder or prospective purchaser, any information required to be provided by Rule 144A(d)(4) under the Securities Act.  This covenant is intended to be for the benefit of the holders, and the prospective purchasers designated by such holders, from time to time of such restricted securities.

(l)    None of EFH, EFIH, EFIH Finance nor any of their Affiliates that are controlled by such entities or any person acting on their behalf (provided that no representation is made as to the Dealer Managers) will engage in any directed selling efforts with respect to the New EFIH Notes; and each of them will comply with the offering restrictions requirement of Regulation S.  Terms used in this paragraph have the meanings given to them by Regulation S.

(m)    EFIH and EFIH Finance will cooperate with the Dealer Managers and use their commercially reasonable efforts to permit the New EFIH Notes to be eligible for clearance and settlement through The Depository Trust Company.

(n)    None of EFH, EFIH, EFIH Finance or any of their respective Affiliates that are controlled by such entities will take any action that is designed to cause or result

15

Confidential

under the Exchange Act or otherwise, in stabilization or manipulation of the price of any security of EFH, EFIH or EFIH Finance to facilitate the sale of the New EFIH Notes or the tender of Existing Notes in the Exchange Offers.

(o)     EFH agrees to pay the costs and expenses in connection with the Exchange Offers, including without limitation the following: (i) the preparation of the Transaction Documents, the issuance of the New EFIH Notes and the fees of the EFIH Trustee (including the fees and expenses of counsel to the EFIH Trustee in connection with the EFIH Indenture and the New EFIH Notes), the Information Agent and any exchange agent; (ii) the preparation, printing or reproduction of the Letter of Inquiry, Offer Material and any Additional Material and each amendment or supplement thereto; (iii) the printing (or reproduction) and customary mailing and handling (including postage, air freight charges and charges for counting and packaging) of such copies of the Letter of Inquiry, Offer Material and any Additional Material (and all amendments or supplements thereto) as may, in each case, be reasonably requested for use in connection with the Exchange Offers; (iv) the preparation, printing, authentication, issuance and delivery of certificates for the New EFIH Notes, including any stamp or transfer taxes in connection with the original issuance and sale of the New EFIH Notes; (v) the printing (or reproduction) and delivery of this Agreement, any blue sky memorandum and all other agreements or documents printed (or reproduced) and delivered in connection with the Exchange Offers; (vi) any registration or qualification of the New EFIH Notes for offer and sale under the blue sky laws of the several states or any non-U.S. jurisdiction (including filing fees and the reasonable fees and expenses of counsel for the Dealer Managers relating to such registration and qualification); (vii) any filings required to be made with the Financial Industry Regulatory Authority ("FINRA") (including filing fees and the reasonable fees and expenses of counsel for the Dealer Managers relating to such filings); (vii) the fees and expenses of accountants for EFH, EFIH and EFIH Finance and the fees and expenses of counsel (including local and special counsel) for EFH, EFIH and EFIH Finance; (ix) the fees and expenses payable in connection with listing the New EFIH Notes on the New York Stock Exchange (the "NYSE"); (x) the fees and expenses payable in connection with the rating of the New EFIH Notes with the ratings agencies; and (xi) all other costs and expenses incident to the performance by EFH, EFIH and EFIH Finance of their respective obligations hereunder and in connection with the Exchange Offers which are not specifically provided for in this Section 5(o).

(p)     EFH, EFIH and EFIH Finance will not take any action or omit to take any action (such as issuing any press release related to any New EFIH Notes without an appropriate legend) which may result in the loss by the Dealer Managers of the ability to rely on any stabilization safe harbor provided by the U.K. Financial Services Authority under the FSMA.

6.   Conditions to the Obligations of the Dealer Managers.  The obligations of the Dealer Managers under this Agreement shall be subject to the accuracy of the representations and warranties on the part of EFH, EFIH and EFIH Finance contained herein at the Commencement

16

NYDOCS01/1316564.6

Date and the Early Tender Date and the Exchange Date (unless such representation or warranty speaks only as of a certain date, in which case such representation and warranty need only be true as of such date), to the accuracy, as of the date of such certificate, of the statements of EFH, EFIH and EFIH Finance made in any certificates pursuant to the provisions hereof, to the performance by EFH, EFIH and EFIH Finance of their obligations hereunder and to the following additional conditions:

(a)    At the Commencement Date and the Exchange Date, EFH, EFIH and EFIH Finance shall have requested and caused the following opinions to have been furnished to the Dealer Managers, in each case addressed to the Dealer Managers, and in form and substance reasonably satisfactory to, Citigroup Global Markets Inc. and Goldman, Sachs & Co.:

(i)    Simpson Thacher & Bartlett LLP, counsel for EFH, EFIH and EFIH Finance, substantially in the form of Exhibit A-1, subject to customary qualifications, assumptions and exceptions;

(ii)    Gibson, Dunn & Crutcher LLP, counsel for EFH, EFIH and EFIH Finance, which opinion shall include a negative assurance letter, substantially in the form of Exhibit A-2, subject to customary qualifications, assumptions and exceptions; and

(iii)    Andrew M. Wright, Vice President and Deputy General Counsel of EFH Corporate Services Company, a wholly-owned subsidiary of EFH, substantially in the form of Exhibit A-3, subject to customary qualifications, assumptions and exceptions.

(b)    At the Early Tender Date, EFH, EFIH and EFIH Finance shall have requested and caused Gibson, Dunn & Crutcher LLP, counsel for EFH, EFIH and EFIH Finance, to furnish a negative assurance letter to the Dealer Managers, addressed to the Dealer Managers, and in form and substance reasonably satisfactory to, Citigroup Global Markets Inc. and Goldman, Sachs & Co., substantially in the form of Exhibit A-2, subject to customary qualifications, assumptions and exceptions;

(c)    At the Commencement Date and the Exchange Date, the Dealer Managers shall have received from Shearman & Sterling LLP, special counsel for the Dealer Managers, such opinion or opinions addressed to the Dealer Managers with respect to such matters as Citigroup Global Markets Inc. and Goldman, Sachs & Co. may reasonably request, and such counsel shall have received such papers and information as they may reasonably request to enable them to pass upon such matters.

(d)    At the Exchange Date, EFH, EFIH and EFIH Finance shall have furnished to the Dealer Managers, a certificate of EFH, EFIH and EFIH Finance, respectively, signed by the Chairman of the Board or the President and the principal financial or accounting officer of each of EFH, EFIH and EFIH Finance, respectively, dated as of the Exchange Date, to the effect that the signers of such certificate have examined the Offer Material and this Agreement and that:

17

NYDOCS01/1316564.6

EFH00079803

(i)      the representations and warranties of EFH, EFIH and EFIH Finance, as the case may be, in this Agreement are true and correct in all material respects as if made on the Exchange Date (unless such representation or warranty speaks only as of a certain date, in which case such representation and warranty need only be true as of such date), and EFH, EFIH and EFIH Finance, as the case may be, have in all material respects performed all covenants and agreements and satisfied all conditions on its part to be performed or satisfied at or prior to the Exchange Date (after giving effect to the Exchange Offers and the other transactions contemplated by the Offer Material); and

(ii)      subsequent to the respective dates as of which information is given in the Offering Memorandum, there has not been any event or development with respect to such entity and such entity's consolidated subsidiaries, considered as one entity, that would reasonably be expected to result in a Material Adverse Effect, otherwise than as set forth or contemplated in the Offering Memorandum.

(e)      At each of the Commencement Date, the Early Tender Date and the Exchange Date, EFH, EFIH and EFIH Finance shall have requested and caused Deloitte & Touche LLP to furnish to the Dealer Managers comfort letters, dated respectively as of the Commencement Date, the Early Tender Date and the Exchange Date, in form and substance reasonably satisfactory to Citigroup Global Markets Inc. and Goldman, Sachs & Co.

(f)      On the Commencement Date, the Early Tender Date and the Exchange Date, the EFH, EFIH and EFIH Finance shall have delivered to the Dealer Managers and their counsel written certificates executed by Stanley J. Szlauderbach, Controller of EFH, dated the Commencement Date, the Early Tender Date or the Exchange Date, as applicable, substantially in the form of Exhibit B hereto.

(g)      Subsequent to the Commencement Date or, if earlier, the dates as of which information is given in the Offering Memorandum (exclusive of any amendment or supplement thereto), there shall not have been (i) any change or decrease specified in the letter or letters referred to in paragraph (e) of this Section 6 or (ii) any change, or any development involving a prospective change, in or affecting the condition (financial or otherwise), prospects, earnings, business or properties of EFH, EFIH and EFIH Finance and their subsidiaries, taken as a whole, whether or not arising from transactions in the ordinary course of business, except as set forth in or contemplated in the Offering Memorandum (exclusive of any amendment or supplement thereto), the effect of which, in any case referred to in clause (i) or (ii) above, is, in the sole judgment of the Dealer Managers, so material and adverse as to make it impractical or inadvisable to market or deliver the New EFIH Notes or solicit tenders of Existing Notes as contemplated by the Offering Memorandum (exclusive of any amendment or supplement thereto).

(h)      Prior to the Exchange Date, the Issuers shall have obtained all consents, approvals, authorizations and orders of, and shall have duly made all registrations, qualifications and filing with, any court or regulatory authority or other governmental agency or instrumentality required in connection with the making and consummation of

18

NYDOCS01/1316564.6

Confidential

the Exchange Offers and the execution, delivery and performance of this Agreement other than such consents approvals, authorizations, orders, registrations, qualifications and filings that, if not obtained or made, would not be reasonably likely to have, individually or in the aggregate, a Material Adverse Effect.

(i)     The New EFIH Notes shall be eligible for clearance and settlement through The Depository Trust Company.

(j)     At the Exchange Date, the Dealer Managers shall have received a counterpart of the Registration Rights Agreement that shall have been executed and delivered by a duly authorized officer of each of EFIH and EFIH Finance.

(k)     Prior to the Exchange Date, the Issuers shall have delivered to the Dealer Managers and their counsel such further information, certificates and documents related to the transactions contemplated by this Agreement as they may reasonably request.

If (i) any of the conditions specified in this Section 6 shall not have been fulfilled when and as provided in this Agreement, or (ii) any of the opinions and certificates mentioned above or elsewhere in this Agreement shall not be reasonably satisfactory in form and substance to the Dealer Managers and their counsel, this Agreement and all obligations of the Dealer Managers hereunder may be cancelled by the Dealer Managers at, or at any time prior to, the Exchange Date. Notice of such cancellation shall be given to EFH, EFIH and EFIH Finance in writing or by telephone or facsimile confirmed in writing.

7.     Indemnification and Contribution.

(a)     EFH, EFIH and EFIH Finance, agree, jointly and severally, to indemnify and hold harmless each Dealer Manager, the directors, officers, employees and agents of each Dealer Manager and each person who controls any Dealer Manager within the meaning of either the Securities Act or the Exchange Act (each such person, an "indemnified party") against any and all losses, claims, damages or liabilities, joint or several, to which they or any of them may become subject under the Securities Act, the Exchange Act or other U.S. federal, state or foreign statutory law or regulation, at common law or otherwise, insofar as such losses, claims, damages or liabilities or actions in respect thereof arise out of, or are based upon (1) any untrue statement of a material fact or alleged untrue statement of a material fact contained in the Offering Memorandum, Offer Material or any Additional Material or any other information provided by EFH, EFIH or EFIH Finance to any holder of Existing Notes in connection with the Exchange Offers or in any amendment thereof or supplement thereto, or arise out of or are based upon the omission or alleged omission to state therein a material fact necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading, (2) the failure of EFH, EFIH or EFIH Finance to make or consummate the Exchange Offers or the withdrawal, rescission, termination, amendment or extension of the Exchange Offers or any failure on the part of EFH, EFIH or EFIH Finance to comply with the terms and conditions contained in the Offer Material, (3) any action or failure to act by EFH, EFIH or EFIH Finance or their respective directors, officers, agents or employees or by any indemnified party at the

19

NYDOCS01/1316564.6

EFH00079805

request or with the consent of EFH, EFIH or EFIH Finance for matters arising out of or related to the Exchange Offers, or (4) otherwise related to or arising out of the Dealer Managers' engagement hereunder or any transaction or conduct in connection therewith, or the Exchange Offers, except that this clause (4) shall not apply to the extent any losses are finally judicially determined to have resulted from the gross negligence or willful misconduct of such indemnified party (customary communications with holders of Existing Notes in response to inquiries by holders of Existing Notes shall not be deemed to be gross negligence or willful misconduct of such indemnified party), and in the case of clause (1), (2), (3) or (4) of this sentence, EFH, EFIH and EFIH Finance agree to reimburse each such indemnified party, as incurred, for any legal or other expenses reasonably incurred by it in connection with investigating or defending any such loss, claim, damage, liability or action; provided, however, that EFH, EFIH and EFIH Finance will not be liable in any such case to the extent that any such loss, claim, damage or liability arises out of or is based upon any such untrue statement or alleged untrue statement or omission or alleged omission made in the Offering Memorandum, Offer Material or any Additional Material, or in any amendment thereof or supplement thereto, in reliance upon and in conformity with written information furnished to EFH, EFIH and EFIH Finance by or on behalf of the Dealer Managers specifically for inclusion therein (which for purposes of this provison shall consist of the name and addresses of such Dealer Managers on the front cover and the back cover of the Offering Memorandum and the Letter of Transmittal); and provided further, however, that the indemnified party shall repay to EFH, EFIH and EFIH Finance all such legal and other expenses if it shall ultimately be determined that the indemnified party is not entitled to indemnification pursuant to this Section 7. This indemnity agreement will be in addition to any liability that EFH, EFIH or EFIH Finance may otherwise have.

(b)    Each Dealer Manager, severally and not jointly, agrees to indemnify and hold harmless EFH, EFIH and EFIH Finance, each of their directors and officers, and each person who controls EFH, EFIH or EFIH Finance within the meaning of either the Securities Act or the Exchange Act, to the same extent as the foregoing indemnity to each Dealer Manager in clause (1) of the preceding paragraph, but only with respect to written information relating to the Dealer Manager furnished to EFH, EFIH or EFIH Finance by or on behalf of the Dealer Managers for inclusion in the Offering Memorandum, Offer Material or any Additional Material, or in any amendment or supplement thereto (which for purposes of this provison shall consist of the name and addresses of such Dealer Managers on the front cover and the back cover of the Offering Memorandum and the Letter of Transmittal). This indemnity agreement will be in addition to any liability that the Dealer Managers may otherwise have.

(c)    Promptly after receipt by an indemnified party under this Section 7 of notice of the commencement of any action or proceeding, such indemnified party will, if a claim in respect thereof is to be made against the indemnifying party under this Section 7, notify the indemnifying party in writing of the commencement thereof; but the failure so to notify the indemnifying party (i) will not relieve it from liability under paragraph (a) or (b) above unless and to the extent it did not otherwise learn of such action and such failure results in the forfeiture by the indemnifying party of substantial rights and defenses and (ii) will not, in any event, relieve the indemnifying party from

20

NYDOCS01/1316564.6

any obligations to any indemnified party other than the indemnification obligation provided in paragraph (a) or (b) above. The indemnifying party shall be entitled to appoint counsel (including local counsel) of the indemnifying party's choice at the indemnifying party's expense to represent the indemnified party in any action for which indemnification is sought (in which case the indemnifying party shall not thereafter be responsible for the fees and expenses of the indemnified party, including fees and expenses of any separate counsel retained by the indemnified party or parties, other than reasonable costs incurred in cooperating with the indemnifying party in connection with such action (including the reasonable costs of investigation), except as set forth below); provided, however, that such counsel shall be reasonably satisfactory to the indemnified party. Notwithstanding the indemnifying party's election to appoint counsel (including local counsel) to represent the indemnified party in an action, the indemnified party shall have the right to employ separate counsel (including local counsel), and the indemnifying party shall bear the reasonable fees, costs and expenses of such separate counsel if (i) the use of counsel chosen by the indemnifying party to represent the indemnified party would present such counsel with a conflict of interest; (ii) the actual or potential defendants in, or targets of, any such action include both the indemnified party and the indemnifying party and the indemnified party shall have reasonably concluded that there may be legal defenses available to it and/or other indemnified parties that are different from or additional to those available to the indemnifying party; (iii) the indemnifying party shall not have employed counsel reasonably satisfactory to the indemnified party to represent the indemnified party within a reasonable time after notice of the institution of such action; or (iv) the indemnifying party shall authorize the indemnified party to employ separate counsel at the expense of the indemnifying party. An indemnifying party will not, without the prior written consent of the indemnified parties (which consent shall not be unreasonably withheld or delayed), settle or compromise or consent to the entry of any judgment with respect to any pending or threatened claim, action, suit or proceeding in respect of which indemnification or contribution may be sought hereunder (with respect to which the indemnified parties (i) are actual parties, or (ii) would reasonably be expected to become parties, to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of each indemnified party from all liability arising out of such claim, action, suit or proceeding and does not include any statement as to or any admission of fault, culpability or failure to act, by or on behalf of any indemnified party.

(d)      In the event that the indemnity provided in paragraph (a) or (b) of this Section 6 is unavailable to or insufficient to hold harmless an indemnified party for any reason, EFH, EFIH and EFIH Finance on the one hand and the Dealer Managers on the other hand agree to contribute to the aggregate losses, claims, damages and liabilities (including legal or other expenses reasonably incurred in connection with investigating or defending any loss, claim, damage, liability or action) (collectively, the "Losses") to which EFH, EFIH and EFIH Finance and one or more of the Dealer Managers may be subject in such proportion as is appropriate to reflect the relative benefits received by EFH, EFIH and EFIH Finance on the one hand and by the Dealer Managers on the other hand from the Exchange Offers; provided, however, that in no case shall any Dealer Manager be responsible for any amount in excess of the actual amount of Fees received by such Dealer Manager under this Agreement. If the allocation provided by the

21

NYDOCS01/1316564.6

EFH00079807

immediately preceding sentence is unavailable for any reason, EFH, EFIH, EFIH Finance and the Dealer Managers shall contribute in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of EFH, EFIH and EFIH Finance on the one hand and the Dealer Managers on the other hand in connection with the statements, omissions, actions or failure to act that resulted in such Losses, as well as any other relevant equitable considerations. Benefits received (or anticipated to be received) by EFH, EFIH and EFIH Finance shall be deemed to be equal to the principal amount of the securities in respect of which: (a) if the Exchange Offers are consummated, valid tenders of Existing Notes are received, or (b) if the Exchange Offers are not consummated, valid tenders are or were sought pursuant to the Exchange Offers, and benefits received (or anticipated to be received) by the Dealer Managers shall be several and deemed to be equal to the Fee paid by EFH, EFIH and EFIH Finance to each Dealer Manager under this Agreement (exclusive of amounts paid for reimbursement of expenses or paid under this Agreement). Relative fault shall be determined by reference to, among other things, whether any untrue or any alleged untrue statement of a material fact or the omission or alleged omission to state a material fact or any other alleged conduct relates to information provided by EFH, EFIH or EFIH Finance or other conduct by the EFH, EFIH and EFIH Finance on the one hand or the Dealer Managers on the other, the intent of the parties with respect to such alleged untrue statement or omission and their relative knowledge, access to information and opportunity to correct or prevent such untrue statement or omission. EFH, EFIH, EFIH Finance and the Dealer Managers agree that it would not be just and equitable if contribution were determined by pro rata allocation or any other method of allocation that does not take account of the equitable considerations referred to above. Notwithstanding the provisions of this paragraph (d), no person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation. The Dealer Managers' obligation to contribute pursuant to this paragraph (d) are several in proportion to the respective portions of the fees payable to such Dealer Managers and not joint. For purposes of this Section 7, each person who controls a Dealer Manager within the meaning of either the Securities Act or the Exchange Act and each director, officer, employee and agent of the Dealer Managers shall have the same rights to contribution as such Dealer Managers, and each person who controls EFH, EFIH or EFIH Finance within the meaning of either the Securities Act or the Exchange Act and each officer and director of EFH, EFIH and EFIH Finance shall have the same rights to contribution as EFH, EFIH and EFIH Finance, subject in each case to the applicable terms and conditions of this paragraph (d).

8.    <u>Non-Disclosure</u>. EFH, EFIH and EFIH Finance shall not disclose the provisions of this Agreement to any other person without the prior written consent of the Dealer Managers, unless EFH, EFIH or EFIH Finance reasonably determines that the failure to make such disclosure would violate applicable law or regulation.

9.    <u>Certain Acknowledgments</u>. Each of EFH, EFIH and EFIH Finance acknowledge and agree that: (i) the services to be provided by the Dealer Managers pursuant to this Agreement is an arm's-length commercial transaction between EFH, EFIH and EFIH Finance, on the one hand, and the Dealer Managers, on the other; (ii) in connection with each transaction

22

NYDOCS01/1316564.6

EFH00079808

contemplated hereby and the process leading to such transaction each Dealer Manager is and has been acting solely as a principal and is not the agent or fiduciary of EFH, EFIH or EFIH Finance, or their respective affiliates, stockholders, creditors or employees or any other party; (iii) no Dealer Manager has assumed or will assume any fiduciary responsibility in favor of EFH, EFIH or EFIH Finance with respect to any of the transactions contemplated hereby or the process leading thereto (irrespective of whether such Dealer Manager has advised or is currently advising EFH, EFIH or EFIH Finance on other matters) or any other obligation to EFH, EFIH or EFIH Finance except the obligations expressly set forth in this Agreement; (iv) the several Dealer Managers and their respective affiliates may be engaged in a broad range of transactions that involve interests that differ from those of EFH, EFIH or EFIH Finance (including, without limitation, as holders of notes listed on Schedule B hereto) and that the several Dealer Managers have no obligation to disclose any of such interest by virtue of any fiduciary or advisory relationship; and (v) the Dealer Managers have not provided any legal, accounting, regulatory or tax advice with respect to the offering contemplated hereby and EFH, EFIH and EFIH Finance have consulted their own legal, accounting, regulatory and tax advisors to the extent they deemed appropriate

10.    Representations, Acknowledgments and Indemnities to Survive.  The representations, warranties and indemnifications contained in this Agreement shall continue in effect after completion of the Exchange Offers and shall be effective even if the Exchange Offers are withdrawn, abandoned or terminated.

11.    Notices.  All communications hereunder will be in writing and effective only on receipt, and, if sent to the Dealer Managers, shall be delivered or sent by mail or facsimile transmission to the Citigroup Global Markets General Counsel (fax no.: (212) 816-7912) and confirmed to Citigroup Global Markets at 388 Greenwich Street, New York, New York 10013, Attention:  General Counsel Office and to Goldman, Sachs & Co. at 200 West Street, New York, New York 10282, Attention: Liability Management (fax no.: (646) 769-7607); or, if sent to EFH, EFIH or EFIH Finance shall be delivered or sent by mail or facsimile transmission to the address of EFH, EFIH and EFIH Finance set forth in the Offering Memorandum, Attention: General Counsel.

12.    Successors.  This Agreement will inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and controlling persons referred to in Section 7 hereof, and, no other person will have any right or obligation hereunder.

13.    Applicable Law.  This Agreement will be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York.  Any right to trial by jury with respect to any claim or proceeding related to or arising out of this Agreement or any transaction or conduct in connection herewith, is waived.

14.    Counterparts.  This Agreement may be signed in one or more counterparts, each of which shall constitute an original and all of which together shall constitute one and the same instrument.

NYDOCS01/1316564.6

Confidential

EFH00079809

15.  <u>Headings</u>.  The section headings used herein are for convenience only and shall not affect the construction hereof.

16.  <u>Additional Dealer Managers</u>.  By execution of a Joinder Agreement among EFH, EFIH, EFIH Finance, the Dealer Managers and such other exclusive dealer managers for the Exchange Offers as the parties hereto shall agree, such other exclusive dealer managers shall, without further action by such persons, become parties to this Agreement.

17.  <u>Definitions</u>.  The following terms, when used in this Agreement, shall have the meanings indicated.

"Affiliate" shall have the meaning specified in Rule 501(b) of Regulation D.

"Commencement Date" shall mean the date on which the Offering Memorandum is first distributed to holders of Existing Notes.

"Early Tender Date" shall have the meaning ascribed to such term in the Offering Memorandum.

"Exchange Act" shall mean the U.S. Securities Exchange Act of 1934, as amended, and the rules and regulations of the Commission promulgated thereunder.

"Expiration Date" shall have the meaning ascribed to such term in the Offering Memorandum.

"FINRA" shall mean the Financial Industry Regulatory Authority, Inc.

"FSMA" shall mean the U.K. Financial Services and Markets Act 2000.

"Information Agent" shall mean Global Bondholder Services Corporation.

"Issuers" shall mean EFIH and EFIH Finance.

"Joinder Agreement" shall mean any Joinder Agreement to this Agreement, pursuant to Section 16 of this Agreement, executed by EFH, EFIH and EFIH Finance, the Dealer Managers and such other exclusive dealer managers for the Exchange Offers.

"U.S." or the "United States" shall mean the United States of America.

"You" or "Your" shall mean Citigroup Global Markets Inc., Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, J.P. Morgan Securities LLC, Morgan Stanley & Co. LLC and such other exclusive dealer managers for the Exchange Offers which execute Joinder Agreements in accordance with Section 16 of this Agreement.

NYDOCS01/1316564.6

Confidential

EFH00079810

**PX 073**
**Page 24 of 40**

       If the foregoing is in accordance with your understanding of our agreement, please sign and return to us the enclosed duplicate hereof, whereupon this Agreement and your acceptance shall represent a binding agreement between EFH, EFIH and EFIH Finance and the Dealer Managers.

                          Very truly yours,

                          ENERGY FUTURE HOLDINGS CORP.

                          By _____
                              Name: Anthony R. Horton
                              Title:   Senior Vice President and Treasurer

                          ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

                          By _____
                              Name: Anthony R. Horton
                              Title:   Senior Vice President and Treasurer

                          EFIH FINANCE INC.

                          By _____
                              Name: Anthony R. Horton
                              Title:   Senior Vice President and Treasurer

[Signature Page to Dealer Manager Agreement]

Confidential

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

CITIGROUP GLOBAL MARKETS INC.

By:

Name: Stephen Cheeseman
Title: Managing Director


GOLDMAN, SACHS & CO.

By:

Name:
Title:


CREDIT SUISSE SECURITIES (USA) LLC

By:

Name:
Title:


J.P. MORGAN SECURITIES LLC

By:

Name:
Title:


MORGAN STANLEY & CO. LLC

By:

Name:
Title:


*[Signature Page to Dealer Manager Agreement]*

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

CITIGROUP GLOBAL MARKETS INC.

    By: _____
        Name:
        Title:


GOLDMAN, SACHS & CO.

    By: *Goldman Sachs & Co.*
        Name: *David Sauer*
        Title: *Managing Director*


CREDIT SUISSE SECURITIES (USA) LLC

    By: _____
        Name:
        Title:


J.P. MORGAN SECURITIES LLC

    By: _____
        Name:
        Title:


MORGAN STANLEY & CO. LLC

    By: _____
        Name:
        Title:


*[Signature Page to Dealer Manager Agreement]*

Confidential

EFH00079813

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

CITIGROUP GLOBAL MARKETS INC.

By: _____
      Name:
      Title:


GOLDMAN, SACHS & CO.

By: _____
      Name:
      Title:

CREDIT SUISSE SECURITIES (USA) LLC

By: _____
      Name: Ted Michaels
      Title: Director


J.P. MORGAN SECURITIES LLC

By: _____
      Name:
      Title:


MORGAN STANLEY & CO. LLC

By: _____
      Name:
      Title:

*[Signature Page to Dealer Manager Agreement]*

Confidential

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

CITIGROUP GLOBAL MARKETS INC.

By: _____

 Name:
 Title:


GOLDMAN, SACHS & CO.

By: _____

 Name:
 Title:


CREDIT SUISSE SECURITIES (USA) LLC

By: _____

 Name:
 Title:


J.P. MORGAN SECURITIES LLC

By: _____

 Name: Warfield Price
 Title: Executive Director


MORGAN STANLEY & CO. LLC

By: _____

 Name:
 Title:

*[Signature Page to Dealer Manager Agreement]*

Confidential
EFH00079815

The foregoing Agreement is hereby
confirmed and accepted as of the
date first above written.

CITIGROUP GLOBAL MARKETS INC.

By: _____
    Name:
    Title:


GOLDMAN, SACHS & CO.

By: _____
    Name:
    Title:


CREDIT SUISSE SECURITIES (USA) LLC

By: _____
    Name:
    Title:


J.P. MORGAN SECURITIES LLC

By: _____
    Name:
    Title:


MORGAN STANLEY & CO. LLC

By: _____
    Name: FRANCESCO CIPOLLONE
    Title: VICE PRESIDENT


*[Signature Page to Dealer Manager Agreement]*

**Schedule A**

Dealer Manager Fee

**Fee Payable to Citigroup Global Markets Inc.**
Amount of New EFIH Notes issued in the Exchange Offers * (0.35%*37.5%)

**Fee Payable to Goldman, Sachs & Co.**
Amount of New EFIH Notes issued in the Exchange Offers * (0.35%*32.5%)

**Fee Payable to Each of Credit Suisse Securities (USA) LLC,  J.P. Morgan Securities LLC and Morgan Stanley & Co. LLC**
Amount of New EFIH Notes issued in the Exchange Offers * (0.35%*10.0%)

S-A-1

Confidential

**Schedule B**

Existing Notes

.

| CUSIP/ISIN | Outstanding Principal Amount | Issuer | Title of Existing Notes | Consideration Per $1,000 Principal Amount of Existing Unsecured Notes Validly Tendered | |
| --- | --- | --- | --- | --- | --- |
| | | | | Total Consideration if Tendered at or prior to the Early Tender Date | Exchange Consideration if Tendered after the Early Tender Date and at or prior to the Expiration Date |
| 292680AC9 US292680AC97 and 292680AA3 US292680AA32 and U29191AA8 USU29191AA82 | $ 64,135,000 | EFH Corp. | 10.875% Senior Notes due 2017 | $ 995.00 Principal Amount of New Senior Toggle Notes | $ 945.00 Principal Amount of New Senior Toggle Notes |
| 292680 AD7 US292680AD70 and 292680AB1 US292680AB15 and U29191AB6 USU29191AB65 | $ 60,329,699 | EFH Corp. | 11.250%/12.000% Senior Toggle Notes due 2017 | $ 995.00 Principal Amount of New Senior Toggle Notes | $ 945.00 Principal Amount of New Senior Toggle Notes |

S-B-1

Confidential

**Exhibit A-1**

<u>Simpson, Thacher & Bartlett LLP</u>

<u>Commenecement Date Opinion</u>

December [21], 2012

Citigroup Global Markets Inc.
Goldman, Sachs & Co.
Credit Suisse Securities (USA) LLC
J.P. Morgan Securities LLC
Morgan Stanley & Co. LLC,
  as Dealer Managers

c/o Citigroup Global Markets Inc.
388 Greenwich Street
New York, New York 10013

c/o Goldman, Sachs & Co.
200 West Street
New York, New York 10282

Ladies and Gentlemen:

        We have acted as counsel to Energy Future Holdings Corp., a Texas corporation (the
"Company"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability
company ("Intermediate Holding"), and EFIH Finance Inc., a Delaware corporation ("EFIH
Finance" and, together with Intermediate Holding, the "Offerors"), in connection with the offers
(the "Exchange Offers") of up to $[        ] million in aggregate principal amount of
11.25%/12.25% Senior Toggle Notes due 2018 to be issued by the Offerors (the "Senior Toggle
Notes") in exchange for the outstanding 10.875% Senior Notes due 2017 of the Company (the
"EFH 10.875% Notes") and the 11.250%/12.000% Senior Toggle Notes due 2017 of the
Company (together with the EFH 10.875% Notes, the "Old Notes").  This opinion is delivered to
you pursuant to Section [6] of the Dealer Manager Agreement, dated December [21], 2012 (the
"Dealer Manager Agreement"), among the Company, the Offerors and Citigroup Global Markets
Inc., Goldman, Sachs & Co., Credit Suisse Securities (USA) LLC, J.P. Morgan Securities LLC
and Morgan Stanley & Co. LLC, as Dealer Managers (the "Dealer Managers").  The Senior
Toggle Notes are additional notes of the same series as the $1,144,770,000 aggregate principal
amount of 11.25%/12.25% Senior Toggle Notes due 2018 issued by the Offerors on December 5,
2012 and the $159,032,000 aggregate principal amount of 11.25%/12.25% Senior Toggle Notes
due 2018 issued by the Offerors on December 19, 2012 (collectively, the "Existing Senior
Toggle Notes").  The Senior Toggle Notes will increase the aggregate principal amount of, and
be consolidated and form a single series with, the Existing Senior Toggle Notes.

Exhibit A-1-1

EFH00079819

We have examined the Offering Memorandum, dated December [21], 2012, relating to the Exchange Offers (the "Offering Memorandum"), which incorporates by reference the Company's Annual Report on Form 10-K for the year ended December 31, 2011, the Company's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2012, June 30, 2012 and September 30, 2012, and the Company's Current Reports on Form 8-K filed on January 6, 2012, January 31, 2012, February 2, 2012, February 7, 2012, February 23, 2012, February 24, 2012, February 29, 2012, June 5, 2012, July 3, 2012, August 7, 2012, August 9, 2012, August 10, 2012, August 17, 2012, October 18, 2012, October 19, 2012, October 24, 2012, November 6, 2012, November 9, 2012, December 5, 2012, December 6, 2012, December 12, 2012 and December 20, 2012, and Intermediate Holding's Annual Report on Form 10-K for the year ended December 31, 2011, Intermediate Holding's Quarterly Reports on Form 10-Q for the quarters ended March 31, 2012, June 30, 2012 and September 30, 2012, Intermediate Holding's Current Reports on Form 8-K filed on January 31, 2012, February 2, 2012, February 7, 2012, February 23, 2012, February 24, 2012, February 29, 2012, August 9, 2012, August 10, 2012, August 17, 2012, October 18, 2012, October 19, 2012, October 24, 2012, November 6, 2012, November 9, 2012, December 5, 2012 and December 20, 2012, each as filed under the Securities Exchange Act of 1934, as amended; the Indenture, dated as of October 31, 2007, as supplemented by the First Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, and the Fourth Supplemental Indenture, dated as of October 18, 2011, each among the Company, Intermediate Holding, Energy Future Competitive Holdings Company, a Texas corporation, and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the Old Notes were issued; the Old Notes; and the Dealer Manager Agreement. In addition, we have examined, and have relied as to matters of fact upon, the documents delivered to you at the commencement of the Exchange Offers and upon originals, or duplicates or certified or conformed copies, of such records, agreements, documents and other instruments and such certificates or comparable documents of public officials and of officers and representatives of the Company and the Offerors and have made such other investigations, as we have deemed relevant and necessary in connection with the opinions hereinafter set forth.

In such examination, we have assumed the genuineness of all signatures, the legal capacity of natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as duplicates or certified or conformed copies and the authenticity of the originals of such latter documents. We have also assumed that (i) the Company is validly existing and in good standing under the law of the State of Texas; (ii) the Company has duly authorized, executed and delivered the Dealer Manager Agreement in accordance with the law of the State of Texas; (iii) the execution, delivery and performance by the Company of the Dealer Manager Agreement does not violate the laws of any jurisdiction (except that no such assumption is made with respect to the federal law of the United States and the law of the State of New York, the Delaware General Corporation Law and the Delaware Limited Liability Company Act); and (iv) the execution, delivery and performance by the Company of the Dealer Manager Agreement does not constitute a violation or breach of any agreement or instrument (except no such assumption is made with respect to agreements listed on Schedule I hereto) which is binding upon the Company or its charter, by-laws or similar organizational documents.

Based upon the foregoing, and subject to the qualifications, assumptions and limitations

Exhibit A-1-2

EFH00079820

stated herein, we are of the opinion that:

1.    Intermediate Holding has been duly formed and is validly existing and in good standing as a limited liability company under the law of the State of Delaware and has full limited liability company power and authority to conduct its business as described in the Offering Memorandum.

2.    EFIH Finance has been duly incorporated and is validly existing and in good standing as a corporation under the law of the State of Delaware and has full corporate power and authority to conduct its business as described in the Offering Memorandum.

3.    The Dealer Manager Agreement has been duly authorized, executed and delivered by the Offerors and duly executed and delivered in accordance with the law of New York by the Company and, assuming that the Dealer Manager Agreement is the valid and legally binding obligation of the Dealer Managers, constitutes a valid and legally binding obligation of each of the Offerors and the Company, enforceable against each of the Offerors and the Company in accordance with its terms.

4.    The execution, delivery and performance by the Company and the Offerors of the Dealer Manager Agreement will not breach or result in a default under any of the agreements or instruments identified on Schedule 1 hereto, nor will such actions violate the certificate of formation or limited liability company agreement of Intermediate Holding, the certificate of incorporation or by-laws of EFIH Finance or any U.S. federal or New York State statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any rule or regulation that has been issued pursuant to any U.S. federal or New York State statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law or any order known to us issued pursuant to any U.S. federal or New York State statute or the Delaware Limited Liability Company Act or the Delaware General Corporation Law by any court or governmental agency or body having jurisdiction over the Company and the Offerors or any of their properties, except that it is understood that no opinion is given in this paragraph 4 with respect to (i) any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and, in each case, the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the U.S. Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency) or (ii) any U.S. federal or state securities law or any rule or regulation issued pursuant to any U.S. federal or state securities law.

5.    No consent, approval, authorization, order, registration or qualification of or with any U.S. federal or New York State governmental agency or body or any Delaware State governmental agency or body acting pursuant to the Delaware Limited

Exhibit A-1-3

Liability Company Act or the Delaware General Corporation Law or, to our knowledge, any U.S. federal or New York State court or any Delaware State court acting pursuant to the Delaware Limited Liability Company Act or the Delaware General Corporation Law is required for the execution, delivery and performance by the Company and the Offerors of the Dealer Manager Agreement or the commencement of the Exchange Offers by the Company and the Offerors, except that it is understood that no opinion is given in this paragraph 5 with respect to (i) any matters subject to federal laws and regulations relating to the generation, storage, sale or transmission of electricity or the ownership or operation of generating facilities (including, without limitation, nuclear generating facilities) or transmission facilities (including, without limitation, the Atomic Energy Act of 1954, as amended, the Federal Power Act, the Energy Policy Act of 2005, the Interstate Commerce Act and the Public Utility Holding Company Act of 2005 and, in each case, the rules and regulations promulgated thereunder and such other rules, regulations and orders administered by the U.S. Federal Energy Regulatory Commission, the U.S. Nuclear Regulatory Commission and the U.S. Environmental Protection Agency) or (ii) any U.S. federal or state securities law or any rule or regulation issued pursuant to any U.S. federal or state securities law.

6.      None of the Offerors is an "investment company" within the meaning of and subject to regulation under the Investment Company Act of 1940, as amended.

Our opinion set forth in paragraph 3 above is subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, (ii) general equitable principles (whether considered in a proceeding in equity or at law) and (iii) an implied covenant of good faith and fair dealing.  Our opinion in paragraph 3 above is further limited by considerations of public policy.

Our opinions set forth in paragraphs 4 and 5 above are limited to our review only of statutes, rules and regulations that, in our experience, are customarily applicable to transactions of the type contemplated by the Offering Memorandum and the Dealer Manager Agreement and for the purposes of such opinions we have assumed that the Exchange Offers will be conducted in conformity with the terms set forth in the Offering Memorandum.

We understand that, with respect to all matters of Texas law, you are relying on the opinions of Gibson, Dunn & Crutcher LLP and Andrew Wright, Esq., Vice President and Associate General Counsel of the Company, each dated the date hereof.

We do not express any opinion herein concerning any law other than the law of the State of New York, the federal law of the United States, the Delaware General Corporation Law and the Delaware Limited Liability Company Act.

This opinion letter is rendered to you in connection with the above-described transaction. This opinion letter may not be relied upon by you for any other purpose, or relied upon by, or furnished to, any other person, firm or corporation without our prior written consent.

Exhibit A-1-4

Confidential

Very truly yours,


SIMPSON THACHER & BARTLETT LLP

Exhibit A-1-5

Confidential
EFH00079823

Schedule I

1.  Indenture and Deed of Trust, dated as of May 1, 2002, between Oncor Electric Delivery Company and The Bank of New York, as trustee, as supplemented by the Supplemental Indenture No. 1, dated as of October 25, 2005, between TXU Electric Delivery Company (formerly known as Oncor Electric Delivery Company) and The Bank of New York, as trustee, and the Supplemental Indenture No. 2, dated as of May 15, 2008, between Oncor Electric Delivery Company LLC (formerly known as TXU Electric Delivery Company, formerly known as Oncor Electric Delivery Company) and The Bank of New York, as trustee, together with (i) an Officer's Certificate 1-S-1, dated May 6, 2002, pursuant to which the 6.375% Senior Secured Notes due 2012 and the 7.000% Senior Secured Notes due 2032 of Oncor Electric Delivery Company were issued and (ii) an Officer's Certificate 2-S-2, dated December 20, 2002, pursuant to which the 6.375% Senior Secured Notes due 2015 and 7.250% Senior Secured Notes due 2033 of Oncor Electric Delivery Company were issued.

2.  Indenture, dated as of August 1, 2002, between Oncor Electric Delivery Company and The Bank of New York, as trustee, as supplemented by the Supplemental Indenture No. 1, dated as of May 15, 2008, between Oncor Electric Delivery Company LLC (formerly known as TXU Electric Delivery Company, formerly known as Oncor Electric Delivery Company) and The Bank of New York, as trustee, together with (i) an Officer's Certificate 1-D-1, dated August 30, 2002, pursuant to which the 7% Debentures due 2022 of Oncor Electric Delivery Company were issued, (ii) an Officer's Certificate 3-SN-1, dated September 8, 2008, pursuant to which the 5.95% Senior Secured Notes due 2013, the 6.80% Senior Secured Notes due 2018 and the 7.50% Senior Secured Notes due 2038 of Oncor Electric Delivery Company were issued, (iii) an Officer's Certificate 1-SN-1, dated September 13, 2010, pursuant to which the 5.25% Senior Secured Notes due 2040 of Oncor Electric Delivery Company LLC were issued and (iv) an Officer's Certificate, dated October 8, 2010, pursuant to which the 5.00% Senior Secured Notes due 2017 and the 5.75% Senior Secured Notes due 2020 of Oncor Electric Delivery Company LLC were issued.

3.  Indenture, dated as of November 1, 2004, as supplemented by the Supplemental Indenture, dated as of July 1, 2010, each between Energy Future Holdings Corp. (formerly TXU Corp.) and The Bank of New York Mellon (formerly known as The Bank of New York), as trustee, together with an Officer's Certificate, dated as of November 26, 2004, pursuant to which the 5.55% Series P Senior Notes due November 15, 2014 of Energy Future Holdings Corp. were issued.

4.  Indenture, dated as of November 1, 2004, as supplemented by the Supplemental Indenture, dated as of December 5, 2012, each between Energy Future Holdings Corp. (formerly TXU Corp.) and The Bank of New York Mellon (formerly known as The Bank of New York), as trustee, together with an Officer's Certificate, dated as of November 26, 2004, pursuant to which the 6.50% Series Q Senior Notes due November 15, 2024 of Energy Future Holdings Corp. were issued.

Exhibit A-1-6

EFH00079824

5.  Indenture, dated as of November 1, 2004, as supplemented by the Supplemental Indenture, dated as of December 5, 2012, each between Energy Future Holdings Corp. (formerly TXU Corp.) and The Bank of New York Mellon (formerly known as The Bank of New York), as trustee, together with an Officer's Certificate, dated as of November 26, 2004, pursuant to which the 6.55% Series R Senior Notes due November 15, 2034 of Energy Future Holdings Corp. were issued.

6.  Indenture, dated as of October 31, 2007, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as trustee, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, between Energy Future Intermediate Holding Company LLC and The Bank of New York Mellon Trust Company, N.A., as trustee, the Second Supplemental Indenture, dated as of August 3, 2009, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, the Third Supplemental Indenture, dated as of July 29, 2010, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, and the Fourth Supplemental Indenture, dated as of October 18, 2011, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 10.875% Senior Notes due 2017 and the 11.250%/12.000% Senior Toggle Notes due 2017 of Energy Future Holdings Corp. were issued.

7.  Investor Rights Agreement, dated as of November 5, 2008, by and among Oncor Electric Delivery Company LLC, Oncor Electric Delivery Holdings Company LLC, Texas Transmission Investment LLC and Energy Future Holdings Corp.

8.  Indenture, dated as of November 16, 2009, among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 9.75% Senior Secured Notes due 2019 of Energy Future Holdings Corp. were issued.

9.  Indenture, dated as of November 16, 2009, among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 9.75% Senior Secured Notes due 2019 of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. were issued.

10. Pledge Agreement, dated as of November 16, 2009, from Energy Future Intermediate Holding Company LLC to The Bank of New York Mellon Trust Company, N.A., as collateral trustee.

11. Collateral Trust Agreement, dated as of November 16, 2009, among Energy Future Intermediate Holding Company LLC, The Bank of New York Mellon Trust Company, N.A., as first lien trustee, the other Secured Debt Representatives named therein and The Bank of New York Mellon Trust Company, N.A., as collateral trustee.

Exhibit A-1-7

EFH00079825

12. Indenture, dated as of January 12, 2010, as supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, and the Seventh Supplemental Indenture, dated as of July 7, 2010, each among Energy Future Holdings Corp., the guarantors named therein and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 10.000% Senior Secured Notes due 2020 of Energy Future Holdings Corp. were issued.

13. Indenture, dated as of August 17, 2010, among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 10.000% Senior Secured Notes due 2020 of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. were issued.

14. Junior Lien Pledge Agreement, dated as of April 25, 2011, from Energy Future Intermediate Holding Company LLC to The Bank of New York Mellon Trust Company, N.A., as collateral trustee.

15. Amended and Restated Revolving Credit Agreement, dated as of October 11, 2011, among Oncor Electric Delivery Company LLC, as borrower, the lenders listed therein, JPMorgan Chase Bank, N.A., as administrative agent for the lenders, JPMorgan Chase Bank, N.A., as swingline lender, and JPMorgan Chase Bank, N.A., Barclays Bank PLC, The Royal Bank of Scotland plc, Bank of America, N.A. and Citibank, N.A., as fronting banks for letters of credit issued thereunder.

16. Indenture, dated as of April 25, 2011, as supplemented by the First Supplemental Indenture, dated as of February 6, 2012, the Second Supplemental Indenture, dated as of February 28, 2012, the Third Supplemental Indenture, dated as of May 31, 2012 and the Fourth Supplemental Indenture, dated as of August 14, 2012, each among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 11% Senior Secured Second Lien Notes due 2021 and the 11.750% Senior Secured Second Lien Notes due 2022 were issued.

17. Indenture, dated as of August 14, 2012, as supplemented by the First Supplemental Indenture, dated as of October 23, 2012, each among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and The Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 6.875% Senior Secured Notes due 2017 were issued.

18. Indenture, dated as of December 5, 2012, as supplemented by the First Supplemental Indenture, dated as of December 19, 2012, each among Energy Future Intermediate Holding Company LLC, EFIH Finance Inc. and the Bank of New York Mellon Trust Company, N.A., as trustee, pursuant to which the 11.25%/12.25% Senior Toggle Notes due 2018 were issued.

Exhibit A-1-8

EFH00079826