# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## Form 8-K

### Current Report

**Pursuant to Section 13 or 15(d) of
the Securities Exchange Act of 1934**

**Date of Report (date of earliest event reported) – November 1, 2013**

# Energy Future Holdings Corp.
#### (Exact name of registrant as specified in its charter)

| Texas | 1-12833 | 46-2488810 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

# Energy Future Intermediate Holding Company LLC
#### (Exact name of registrant as specified in its charter)

| Delaware | 1-34544 | 26-1191638 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

# Energy Future Competitive Holdings Company LLC
#### (Exact name of registrant as specified in its charter)

| Delaware | 1-34543 | 75-1837355 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (I.R.S. Employer Identification No.) |

**Energy Plaza, 1601 Bryan Street, Dallas, Texas 75201**
(Address of principal executive offices, including zip code)

**214-812-4600**
(Registrants' telephone number, including Area Code)

> **EXHIBIT**
> Horton
> 20

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrants under any of the

following provisions (see General Instruction A.2. below):

☐     Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐     Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐     Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐     Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 7.01 Regulation FD Disclosure.**

Introduction

Energy Future Holdings Corp. ("EFH Corp."), Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), and Energy Future Intermediate Holding Company LLC ("EFIH" and together with EFH Corp., EFCH and TCEH, the "Companies") executed confidentiality agreements (the "Confidentiality Agreements") in September and October 2013 with certain unaffiliated holders of first lien senior secured claims against EFCH, TCEH and certain of TCEH's subsidiaries (collectively, the "TCEH Creditors"), certain unaffiliated holders of unsecured claims against EFIH (collectively, the "EFIH Unsecured Creditors"), a significant unaffiliated holder of claims against TCEH, EFCH, EFIH and EFH Corp. (the "Significant Creditor") and an unaffiliated holder of first lien claims against EFIH (the "EFIH First Lien Creditor" and, collectively with the TCEH Creditors, the EFIH Unsecured Creditors and the Significant Creditor, the "Creditors"), to facilitate discussions with the Creditors concerning the Companies' potential restructuring (the "Restructuring"). Pursuant to certain of the Confidentiality Agreements, on October 15, 2013, the Companies publicly disclosed that they and certain of the Creditors had engaged in discussions concerning the Companies' capital structure, as well as certain confidential information concerning the Companies that the Companies had provided to those Creditors.

Since October 15, 2013, from time to time, certain of the Creditors have continued to engage in negotiations with the Companies with respect to the Restructuring. Pursuant to the Confidentiality Agreements, the Companies agreed to disclose publicly after a specified period if certain conditions were met that the Companies and the Creditors have engaged in discussions concerning the Companies' capital structure, information regarding such discussions and certain confidential information concerning the Companies that the Companies have provided to the Creditors. The information included in this Current Report on Form 8-K is being furnished to satisfy the Companies' public disclosure obligations under the Confidentiality Agreements.

Discussions with Creditors

Following execution of certain of the Confidentiality Agreements and as previously disclosed, in September 2013, the Companies, principals of EFH Corp.'s existing equity holders (the "Equity Holders") and certain of the Creditors engaged in discussions with respect to the Companies' capital structure, including the possibility of a consensual, pre-packaged restructuring transaction. Following the disclosure on October 15, 2013, the Companies and the Equity Holders continued to engage in discussions with various Creditors from time to time.

During these continued discussions, the Companies shared with the Creditors prospective financial information. In addition, during discussions regarding the Restructuring, the Companies created a proposal as set forth in Exhibit 99.1 (the "Companies' Proposal") to, among other things, facilitate dialogue and consensus among the parties, the EFIH Unsecured Creditors made a proposal as set forth in Exhibit 99.2 (the "EFIH Unsecured Creditor Proposal"), the Significant Creditor made an oral proposal to the Companies and certain of the Creditors, the material terms and conditions of which are described in Exhibit 99.3 (the "Significant Creditor Proposal"), and the TCEH Creditors made a proposal as set forth in Exhibit 99.4 (the "TCEH Creditor Proposal" and collectively with the Companies' Proposal, the EFIH Unsecured Creditor Proposal and the Significant Creditor Proposal, the "Proposals").

In discussions among certain Creditors and the Equity Holders, the Equity Holders proposed that they would retain 4% of EFH Corp.'s common equity interests under the Companies' Proposal after implementation of the Restructuring, with first lien senior secured creditors of TCEH receiving, among other things, the remaining 96% of EFH Corp.'s common equity interests (in both cases subject to dilution in the manner described in the Companies' Proposal).

In addition, the Companies had various discussions with the EFIH First Lien Creditor and its advisors with respect to refinancing the first lien claims against EFIH. However, these discussions did not result in a consensus on the terms of such refinancing that was within the range of the refinancing terms for such claims contained in any of the Proposals.

2

The Companies' objectives in these discussions were to promote a sustainable capital structure and maximize enterprise value by, among other things, encouraging agreement on a restructuring plan that would minimize time spent in a restructuring through a proactive and organized solution; minimizing any potential adverse tax impacts of a restructuring; maintaining the Companies in one consolidated group; maintaining focus on operating EFH Corp.'s businesses; and maintaining the Companies' high-performing work force. The Companies, the Equity Holders and the Creditors have not reached agreement on the terms of any change in the Companies' capital structure.

To effect a Restructuring, the Companies' Proposal and the TCEH Creditor Proposal contemplated that some combination of EFH Corp. and certain of its subsidiaries (including EFIH, EFCH and TCEH but excluding Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings") and Oncor Electric Delivery Company LLC ("Oncor")) would implement a plan of reorganization by commencing one or more voluntary cases under Chapter 11 of the United States Bankruptcy Code ("Code"), and the EFIH Unsecured Creditor Proposal contemplated that EFIH (excluding Oncor Holdings and Oncor) would implement a plan of reorganization by commencing a stand-alone voluntary case under the Code. The Companies' Proposal and the TCEH Creditor Proposal would have resulted in a pre-negotiated restructuring of EFCH's approximately $32.2 billion principal amount of debt, EFH Corp.'s approximately $650 million principal amount of debt and EFIH's approximately $7.6 billion principal amount of debt (each as of September 30, 2013 and excluding debt held by affiliates). The confirmation of any plans of reorganization in such cases would be subject to applicable regulatory approvals. The Companies' Proposal and the TCEH Creditor Proposal further contemplated that after the Restructuring EFH Corp. would continue to hold all of the equity interests in EFCH and EFIH; EFCH would continue to hold all of the equity interests in TCEH; and EFIH would continue to hold all of the equity interests in Oncor Holdings. The EFIH Unsecured Creditor Proposal contemplated that after the Restructuring certain creditors of EFIH would own a substantial majority of, and certain creditors of EFH Corp. and the Equity Holders would collectively own a minority of, the equity interests in EFIH.

The Companies also disclosed to the TCEH Creditors that they have negotiated for commitments from certain third-party financial institutions to provide, in the event EFCH, TCEH and certain of TCEH's subsidiaries were to file for protection under the Code, up to $3.6 billion of senior secured debtor-in-possession loans, with an additional uncommitted facility of up to $750 million (such loans, the "Proposed TCEH DIP Loan"). The Proposed TCEH DIP Loan would, among other things, (i) be secured by a priming first priority lien on and security interest in substantially all of the assets of EFCH, TCEH and certain of TCEH's subsidiaries (subject to certain exceptions), (ii) mature within twenty-four months (subject to extension by six months if certain conditions were satisfied) and (iii) include other terms and conditions customary for debtor-in-possession loans.

The Companies are not currently engaged in ongoing negotiations with the principals of any of the Creditors. Although the Creditors are not currently engaged in ongoing negotiations with the Companies, certain of the Creditors have directed their advisors to continue to work with the Companies and their advisors to explore further whether the parties can reach an agreement on the terms of a consensual restructuring.

The Companies expect to continue to explore all available restructuring alternatives to facilitate the creation of a sustainable capital structure for the Companies. In addition, the Companies and the Equity Holders may engage from time to time in additional discussions with the Creditors, other creditors of the Companies, and professional advisors to such creditors. Such discussions may include proposed changes to the Companies' capital structure. There can be no guarantee that any future changes in the Companies' capital structure will occur or, if any changes occur, that they will occur as described above or as set forth in any of the Proposals, ultimately be successful, or produce the desired outcome.

The TCEH Creditors that signed confidentiality agreements with the Companies and that supported the TCEH Creditor Proposal hold, in the aggregate, less than 66.7% of the total outstanding amount of the TCEH first lien debt. The EFIH Unsecured Creditors that signed confidentiality agreements with the Companies and that supported the EFIH Unsecured Creditor Proposal hold, in the aggregate, less than 66.7% of the total outstanding amount of EFIH unsecured debt.

Financial Information

3

EFH Corp. and its subsidiaries generally do not publicly disclose detailed prospective financial information. However, in connection with their discussions with the Creditors and their respective advisors, the Companies provided certain financial information, consisting largely of forecasts, to the Creditors and their respective advisors. Management of the Companies prepared the forecasts from certain internal financial projections based on reasonable expectations, beliefs, opinions, and assumptions of the Companies' management at the time they were made. The forecasts were not prepared with a view towards public disclosure and were not prepared in accordance with generally accepted accounting principles ("GAAP") or published guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of "prospective financial information."

The inclusion of the forecasts in this Current Report on Form 8-K should not be regarded as an indication that the Companies or any other person considered, or now consider, this information to be necessarily predictive of actual future results, and does not constitute an admission or representation by any person that such information is material, or that the expectations, beliefs, opinions, and assumptions that underlie such forecasts remain the same as of the date of this Current Report on Form 8-K, and readers are cautioned not to place undue reliance on the prospective financial information.

Neither the independent auditor of the Companies nor any other independent accountant has examined, compiled, or performed any procedures with respect to the prospective financial information contained herein and, accordingly, none has expressed any opinion or any other form of assurance on such information or its achievability and none assumes any responsibility for the prospective financial information.

The prospective financial information:

- is speculative by its nature and was based upon numerous expectations, beliefs, opinions, and assumptions, as further described below, which are inherently uncertain and many of which are beyond the control of the Companies and their respective subsidiaries and may not prove to be accurate;

- does not necessarily reflect current estimates or expectations, beliefs, opinions, or assumptions that the respective management of the Companies may have about prospects for the Companies' and their respective subsidiaries' businesses, changes in general business or economic conditions, or any other transaction or event that has occurred or that may occur and that was not anticipated at the time the information was prepared;

- may not reflect current results or future performance, which may be significantly more favorable or less favorable than as set forth below; and

- is not, and should not be regarded as, a representation that any of the expectations contained in, or forming a part of, the forecasts will be achieved.

All of the financial information contained in this section entitled "Financial Information" is forward-looking in nature. The information is subjective in many respects and thus subject to interpretation. Further, the information relates to multiple future years and such information by its nature becomes less predictive with each succeeding year. The Companies cannot provide assurance that the financial projections will be realized; rather, actual future financial results may vary materially from the forward-looking information presented herein.

Except as required by law, none of EFH Corp., EFCH or EFIH currently intends to update or revise publicly any of the information presented herein to reflect circumstances or other events occurring after the date the financial projections were prepared or to reflect the occurrence of future events. These considerations should be taken into account in reviewing the financial projections, which were prepared as of an earlier date. For additional information on factors that may cause actual future financial results to vary materially from the information presented herein, see the section entitled "Cautionary Note Regarding Forward-Looking Statements" below.

The Companies provided the Creditors and their respective advisors with the projected financial forecasts for EFH Corp. and EFIH below, assuming (i) as of June 30, 2014, payment of $1.150 billion of cash using funds distributed by TCEH in full satisfaction of $2.2 billion (including accrued interest) of EFH Corp. and EFIH unsecured debt, (ii) the redemption of $1 billion of EFIH second lien notes at emergence using funds distributed by TCEH to EFH Corp., and subsequently contributed by EFH Corp. to EFIH, (iii) a refinancing of the EFIH first lien notes and the EFIH second lien notes (other than the $1 billion of EFIH second lien notes to be redeemed at emergence) at certain market rates, and (iv) financing fees equal to 1.5%. The amounts may not foot due to rounding.

4

| EFH/EFIH | 1/1/2013 - 10/31/2013 | At Filing 11/1/2013[1] | 11/2/2013 - 12/31/2013 | 1/1/2014 - 6/30/2014 | At Emergence[2] | 7/1/2014 - 12/31/2014 | 2015 FY | 2016 FY | 2017 FY | 2018 FY |
|---|---|---|---|---|---|---|---|---|---|---|
| *CASH FLOWS* | | | | | | | | | | |
| EBITDA | $ (7) | $ — | $ (3) | $ (5) | $ — | $ (4) | $ (11) | $ (12) | $ (13) | $ (13) |
| Cash Adjustments | 13 | — | 6 | 7 | — | 11 | 28 | 33 | 32 | 29 |
| TECH Dividend | | | | | | | | | | |
| Oncor Dividend (80%) | 215 | — | — | 119 | — | 53 | 255 | 263 | 293 | 288 |
| CapEx | (25) | — | (8) | (19) | — | (19) | (23) | (23) | (18) | (19) |
| Pension/OPEB funding | (6) | — | (1) | (5) | — | (5) | (10) | (10) | (23) | (29) |
| Other CF Items | 180 | — | (80) | 7 | — | 37 | (5) | (1) | (4) | (1) |
| Cashflow | $ 371 | $ — | $ (85) | $ 104 | $ — | $ 72 | $ 234 | $ 251 | $ 267 | $ 254 |
| TCEH Tax Payments | 135 | — | (4) | 32 | — | 4 | 120 | 89 | 158 | 180 |
| Oncor Tax Payments | 80 | — | 2 | 148 | — | 128 | 291 | 266 | 270 | 270 |
| Federal/State Tax Payments | (73) | — | 3 | (45) | — | (5) | (332) | (251) | (321) | (338) |
| Total Tax Payments | $ 142 | — | $ 1 | $ 135 | $ — | $ 126 | $ 79 | $ 104 | $ 107 | $ 112 |
| Free Cashflow – Unlevered | $ 513 | $ — | $ (84) | $ 239 | $ — | $ 198 | $ 314 | $ 355 | $ 374 | $ 366 |
| *Cumulative from Emergence* | | | | | $ — | $ 198 | $ 512 | $ 867 | $1,241 | $1,607 |
| *FINANCING & OTHER* | | | | | | | | | | |
| Cash Interest | $ (496) | $ — | $ (15) | $ (129) | $ (54) | $ (3) | $(252) | $(250) | $(248) | $(247) |
| Repayment of I/C Note | (698) | | | | | | | | | |
| Debt Maturities/ Repayment | (83) | — | — | — | (8,574) | | | | | |
| Call Premium | | | | | (116) | | | | | |
| Debt Issuances for Refinancing | — | — | | | 5,350 | | | | | |
| Debt Issuances for WC Needs | | | | | | | | | | |
| Debt Issuance Costs | (6) | — | — | — | (80) | | | | | |
| Restructuring Fee / Business Impact | (13) | — | (2) | (5) | | | | | | |
| Change in Restricted Cash | (4) | | | | | | | | | |
| New Cash | | | | | 1,000 | | | | | |
| Debt Equitization /Convert | | | | | 2,223 | | | | | |
| Total | $ (1,300) | $ — | $ (17) | $ (134) | $ (250) | $ (3) | $(252) | $(250) | $(248) | $(247) |
| Free Cashflow – Levered | $ (788) | $ — | ($ 101) | $ 105 | $ (250) | $ 195 | $ 62 | $ 105 | $ 126 | $ 119 |
| *Cumulative from Emergence* | | | | | $ (250) | $ (55) | $ 7 | $ 112 | $ 238 | $ 356 |
| *LIQUIDITY* | | | | | | | | | | |
| Cash Beginning Balance | $ 1,419 | $ 631 | $ 631 | $ 530 | $ 636 | $ 385 | $ 581 | $ 642 | $ 748 | $ 873 |
| Free Cashflow | (788) | — | (101) | 105 | (250) | 195 | 62 | 105 | 126 | 119 |
| Cash Ending Balance | $ 631 | $ 631 | $ 530 | $ 636 | $ 385 | $ 581 | $ 642 | $ 748 | $ 873 | $ 992 |

1  Assumes a November 1, 2013 bankruptcy filing by the applicable debtors.
2  Assumes a June 30, 2014 emergence from bankruptcy by the applicable debtors.

The information provided by the Companies to the Creditors and their advisors also included forecasts for debt and leverage ratios for EFH Corp. and EFIH based on the assumptions described above the immediately preceding table.

| EFH / EFIH | 11/2/2013- 12/31/2013 | 1/1/2014- 6/30/2014 | At Emergence[2] | 7/1/2014- 12/31/2014 | 2015 FY | 2016 FY | 2017 FY | 2018 FY |
|---|---|---|---|---|---|---|---|---|
| 1st Lien Debt | $ 3,985 | $ 3,985 | $ 4,137 | $ 4,137 | $4,137 | $4,137 | $4,137 | $4,137 |
| 2nd Lien Debt | 2,156 | 2,156 | 1,213 | 1,213 | 1,213 | 1,213 | 1,213 | 1,213 |
| EFH Unsecured Debt | 670 | 670 | | | | | | |
| EFIH Unsecured Debt | 1,554 | 1,554 | | | | | | |
| Total Debt | $ 8,365 | $ 8,365 | $ 5,350 | $ 5,350 | $5,350 | $5,350 | $5,350 | $5,350 |
| Less: Cash | $ (530) | $ (636) | $ (385) | $ (581) | $ (642) | $ (748) | $ (873) | $ (992) |
| Net Debt | $ 7,834 | $ 7,729 | $ 4,965 | $ 4,770 | $4,708 | $4,603 | $4,477 | $4,358 |
| Total Leverage[3] | 9.5x | 9.5x | 7.4x | 7.1x | 7.0x | 6.9x | 6.9x | 7.0x |
| Net Leverage[3] | 9.1x | 9.1x | 7.1x | 6.7x | 6.6x | 6.4x | 6.3x | 6.4x |

2  Assumes a June 30, 2014 emergence from bankruptcy by the applicable debtors.
3  Includes proportionate amount of Oncor debt, cash and EBITDA.

5

**PX 092**
**Page 6 of 28**

At September 30, 2013, EFH Corp. had $225 million of cash and cash equivalents, EFIH had $329 million of cash and cash equivalents and TCEH had $1.262 billion of cash and cash equivalents and $171 million of available capacity under its letter of credit facility.

**Item 9.01 Financial Statements and Exhibits.**

(d)    Exhibits

| Exhibit No. | Description |
|---|---|
| 99.1 | Companies' Proposal |
| 99.2 | EFIH Unsecured Creditor Proposal |
| 99.3 | Significant Creditor Proposal |
| 99.4 | TCEH Creditor Proposal |

*Cautionary Note Regarding Forward-Looking Statements*

This Current Report on Form 8-K includes forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995, which are subject to risks and uncertainties. All statements, other than statements of historical facts, are forward-looking statements. The projected financial information included herein constitutes forward-looking statements. Readers are cautioned not to place undue reliance on forward-looking statements. Although we believe that in making any such forward-looking statement our expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under Item 1A, "Risk Factors" and the discussion under Item 7, "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the Annual Reports on Form 10-K filed by each of EFH Corp., EFIH, EFCH and Oncor and the following important factors, among others, that could cause actual results to differ materially from those projected in such forward-looking statements:

- prevailing governmental policies and regulatory actions with respect to, among other things:

  - allowed prices;

  - allowed rates of return;

  - permitted capital structure;

  - industry, market and rate structure;

  - purchased power and recovery of investments;

  - operations of nuclear generation facilities;

  - operations of fossil-fueled generation facilities;

  - operations of mines;

  - self-bonding requirements;

  - acquisition and disposal of assets and facilities;

6

- development, construction and operation of facilities;
- decommissioning costs;
- present or prospective wholesale and retail competition;
- changes in tax laws and policies;
- changes in and compliance with environmental and safety laws and policies, and
- clearing over-the-counter derivatives through exchanges and posting of cash collateral therewith;

- legal and administrative proceedings and settlements;
- general industry trends;
- economic conditions, including the impact of an economic downturn;
- our ability to collect trade receivables from counterparties;
- our ability to attract and retain profitable customers;
- our ability to profitably serve our customers;
- restrictions on competitive retail pricing;
- changes in wholesale electricity prices or energy commodity prices, including the price of natural gas;
- changes in prices of transportation of natural gas, coal, fuel oil and refined products;
- changes in market heat rates in the Electric Reliability Council of Texas, Inc. electricity market (ERCOT);
- our ability to effectively hedge against unfavorable commodity price movement, including the price of natural gas, market heat rates and interest rates;
- weather conditions, including drought and limitations on access to water, and other natural phenomena, and acts of sabotage, wars or terrorist or cybersecurity threats or activities;
- population growth or decline, or changes in market supply or demand and demographic patterns, particularly in ERCOT;
- changes in business strategy, development plans or vendor relationships;
- access to adequate transmission facilities to meet changing demands;
- changes in interest rates, commodity prices, rates of inflation or foreign exchange rates;
- changes in operating expenses, liquidity needs and capital expenditures;
- commercial bank market and capital market conditions and the potential impact of disruptions in US and international credit markets;
- the willingness of our lenders to extend the maturities of our debt instruments and the terms and conditions of any such extensions;
- access to capital, the cost of such capital, and the results of financing and refinancing efforts, including availability of funds in capital markets;
- activity in the credit default swap market related to our debt instruments;
- restrictions placed on us by the agreements governing our debt instruments;
- our ability to generate sufficient cash flow to make interest payments on, or refinance, our debt instruments;
- our ability to successfully execute our liability management, reach agreement with our creditors on the terms of any change in our capital structure, or otherwise address our significant interest payments and debt

7

maturities, including through the potential exchange of debt securities for debt or equity securities, the potential waiver of any covenants contained in our debt agreements and/or an in-court restructuring;

- any defaults under certain of our financing arrangements that could trigger cross default or cross acceleration provisions under other financing arrangements;

- our ability to make intercompany loans or otherwise transfer funds among different entities in our corporate structure;

- competition for new energy development and other business opportunities;

- inability of various counterparties to meet their obligations with respect to our financial instruments;

- changes in technology used by and services offered by us;

- changes in electricity transmission that allow additional electricity generation to compete with our generation assets;

- significant changes in our relationship with our employees, including the availability of qualified personnel, and the potential adverse effects if labor disputes or grievances were to occur;

- changes in assumptions used to estimate costs of providing employee benefits and future funding requirements related thereto;

- changes in assumptions used to estimate future executive compensation payments;

- hazards customary to the industry and the possibility that we may not have adequate insurance to cover losses resulting from such hazards;

- significant changes in critical accounting policies;

- actions by credit rating agencies;

- adverse claims by our creditors or holders of our debt securities;

- our ability to effectively execute our operational strategy, and

- our ability to implement cost reduction initiatives.

Any forward-looking statement speaks only at the date on which it is made, and except as may be required by law, we undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events. New factors emerge from time to time, and it is not possible for us to predict all of them; nor can we assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement. As such, readers should not unduly rely on such forward-looking statements.

PX 092
Page 9 of 28

## SIGNATURES

Pursuant to the requirements of the Securities Exchange Act of 1934, each registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

ENERGY FUTURE HOLDINGS CORP.

/s/ Stan J. Szlauderbach
Name: Stan J. Szlauderbach
Title: Senior Vice President & Controller

ENERGY FUTURE INTERMEDIATE HOLDING
COMPANY LLC

/s/ Stan J. Szlauderbach
Name: Stan J. Szlauderbach
Title: Senior Vice President & Controller

ENERGY FUTURE COMPETITIVE HOLDINGS
COMPANY LLC

/s/ Stan J. Szlauderbach
Name: Stan J. Szlauderbach
Title: Senior Vice President & Controller

November 1, 2013

9

Exhibit 99.1

Confidential
Subject to Confidentiality Agreements
Subject to FRE 408
Draft

**ENERGY FUTURE HOLDINGS CORP.**
**Key Terms of Restructuring of EFH and its Subsidiaries**
**October 15, 2013**

This term sheet (this "Term Sheet") describes certain terms of a proposed restructuring (the "Restructuring") of claims and interests against Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH") and certain of TCEH's subsidiaries (the "Subsidiary Guarantors," and together with EFCH and TCEH, the "TCEH Debtors," and together with EFH and EFIH, the "Company").

This Term Sheet does not describe all of the material terms of a Restructuring. Nothing herein shall be deemed an admission of any kind. This Term Sheet is subject to Federal Rule of Evidence 408 and any applicable state rules of evidence. This Term Sheet is not an offer with respect to any securities or solicitation of acceptances of a chapter 11 plan pursuant to section 1125 of the Bankruptcy Code. This Term Sheet shall not be construed as (i) an offer capable of acceptance, (ii) a binding agreement of any kind, (iii) a commitment to enter into, or offer to enter into, any financing or other agreement, or (iv) an agreement to support any chapter 11 plan or disclosure statement or to consummate any transactions otherwise described herein. The transactions described herein are subject in all respects to, among other things, ongoing diligence, and definitive documentation.

Given its understanding of the parties' current positions, the Company believes this Term Sheet encompasses a transaction that should enable consensus among the parties by October 31, 2013.

| TCEH First Lien Creditors | Each holder (collectively, the "TCEH First Lien Creditors") of a senior secured first lien claim against the TCEH Debtors would receive its pro rata share of: <br><br> • $[5.5] billion of a combination of new secured and unsecured debt of the reorganized TCEH Debtors on market terms that are acceptable to the TCEH First Lien Creditors, subject to a maximum weighted average rate of [TBD]% (or at the Company's election, the equivalent amount in cash from the issuance of such new debt to third parties); <br><br> • $[1.5] billion of new subordinated unsecured pay-in-kind debt of the reorganized TCEH Debtors; and <br><br> • [TBD]% of the common equity interests in EFH (the "EFH Common Stock") (subject to dilution on account of the management equity incentive plan and warrants for holders of TCEH Second Lien Notes and TCEH Unsecured Notes (as defined herein)). |
|---|---|
| TCEH Second Lien and Unsecured Creditors | Each holder of a second lien secured note issued by TCEH (collectively, the "TCEH Second Lien Notes") and each holder of unsecured notes issued by TCEH (collectively, the "TCEH Unsecured Notes") would receive its pro rata share of warrants for a [TBD] of pro forma equity of EFH, set at a [TBD] strike price (with limited duration), in an allocation to be determined. |

| | |
|---|---|
| **EFIH First Lien Creditors** | Each holder (collectively, the "EFIH First Lien Creditors") of a first lien secured note issued by EFIH (collectively, the "EFIH First Lien Notes") would receive its pro rata share of $4,137 million of new first lien senior secured notes (or the equivalent amount in cash from the issuance of new debt to third parties) to be issued by reorganized EFIH on the effective date of the Restructuring (the "New EFIH First Lien Notes"). The New EFIH First Lien Notes will be 10-year, 8-year no-call with an interest rate of 4.50%. EFIH First Lien Creditors would not receive any consideration beyond that described above (whether in the form of additional New EFIH First Lien Notes or above-market terms and conditions for such EFIH First Lien Notes), including in respect of any claims they may have for unaccrued interest, any make-whole amount, optional redemption premium, or other premium or costs associated with refinancing the EFIH First Lien Notes. |
| **EFIH Second Lien Creditors** | Each holder (collectively, the "EFIH Second Lien Creditors") of a second lien secured note issued by EFIH (collectively, the "EFIH Second Lien Notes") would receive its pro rata share of (a) $1,000 million in cash (the "EFIH Second Lien Payment") and/or (b) $1,213 million of new second lien senior secured notes (or the equivalent amount in cash from the issuance of new debt to third parties) to be issued by reorganized EFIH on the effective date of the Restructuring (the "New EFIH Second Lien Notes"). The New EFIH Second Lien Notes will be 10-year, 8-year no-call with an interest rate of 5.25%. EFIH Second Lien Creditors would also receive consideration for the optional redemption premium in an amount [TBD] funded by EFIH cash. EFIH Second Lien Creditors would not receive any consideration beyond that described above (whether in the form of additional cash, additional New EFIH Second Lien Notes or above-market terms and conditions for such New EFIH Second Lien Notes), including in respect of any claims they may have for unaccrued interest, any make-whole amount, or other premium or costs associated with refinancing the EFIH Second Lien Notes. |
| **EFIH Unsecured Creditors and EFH Unsecured Creditors** | The holders of (1) unsecured claims against EFIH (the "EFIH Unsecured Creditors") and (2) unsecured claims against EFH (the "EFH Unsecured Creditors") would receive, in the aggregate, $[1,150] million in cash (the "EFH/EFIH Junior Stakeholder Payment"), to be allocated among the EFIH Unsecured Creditors and EFH Unsecured Creditors in a manner to be determined. |
| **EFH Equity Holders** | The holders of existing equity interests in EFH (the "EFH Equity Holders") will retain their existing EFH Common Stock, which will constitute [TBD%] of EFH Common Stock after dilution by the EFH Common Stock issued to the TCEH First Lien Creditors, which will be further diluted by the management equity incentive plan and warrants for holders of TCEH Second Lien Notes and TCEH Unsecured Notes. The EFH Equity Holders will be granted full releases. |

| | |
|---|---|
| **Management** | Management will receive a new equity incentive plan. All other incentive programs shall remain in place after the effective date in accordance with their terms. |
| **TCEH/EFIH Pro Forma Capital Structure** | Reorganized TCEH ($[9.150] billion total debt)<br><br>• $[7.650] billion of a combination of secured and unsecured cash-pay debt:<br><br>  • $[5.5] billion issued to the TCEH First Lien Creditors, subject to a maximum weighted average rate of [TBD]% (or at the Company's election, the equivalent amount in cash from the issuance of such new debt to third parties); and<br><br>  • $[2.150] billion issued to third-parties, the cash proceeds of which would fund the EFIH Second Lien Payment and the EFH/EFIH Junior Stakeholder Payment.<br><br>• $[1.5] billion of subordinated unsecured pay-in-kind debt of the reorganized TCEH Debtors issued to the TCEH First Lien Creditors.<br><br>• The amount and structure of the *pro forma* reorganized TCEH debt described herein is conditioned upon and assumes the consummation of the transactions associated with the Restructuring.<br><br>• The relative proportion of secured and unsecured debt will be structured to optimize reorganized TCEH's capital structure and minimize its interest expense.<br><br>Reorganized EFIH ($5.3 billion total debt)<br><br>• The terms of reorganized EFIH's debt, and the relative proportion of secured and unsecured debt, will be structured to optimize reorganized EFIH's capital structure and minimize its interest expense. |
| **Conditions** | • The Restructuring, and all of the transactions described herein and related thereto, must be consummated within one year of the commencement of the Restructuring (subject to automatic extension if the required regulatory approvals for the Restructuring have not been received by such date).<br><br>• Following the Restructuring, reorganized EFIH must be projected to be cash flow positive of [TBD]. |
| **Employment Obligations** | Employees who are party to employment agreements with the Company shall receive new employment agreements with the Company, which shall have economic terms that are not less favorable to the employee than such employee's current employment agreement. |
| **Indemnification of Prepetition Directors, Officers, and Managers** | Under the Restructuring, consistent with applicable law, all indemnification provisions currently in place for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Company, as applicable, shall be reinstated and remain intact and irrevocable and shall survive the effectiveness of the Restructuring. |

3

| | |
|---|---|
| **Director, Officer, Manager, and Employee Tail Coverage** | On or before the occurrence of the effective date, the Company shall purchase and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the effective date. |
| **Releases by the Company** | As of the effective date, each of the Company's affiliates, equity holders, subsidiaries, former and current officers, former and current directors, managers, employees, and professionals shall be deemed released and discharged by the Company from any and all causes of action, including any derivative claims based on or relating to any act or omission taking place on or before the effective date (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence), including relating to the prepetition liability management program and tax sharing agreements. |
| **Releases by Holders of Claims Against, and Interests in, the Company** | Each of the Company, the Company's affiliates, equity holders, subsidiaries, former and current officers, former and current directors, managers, employees, and professionals shall be deemed released and discharged by all holders in voting classes who abstain from voting on the Plan and who do not opt out of the releases provided by the plan from any and all causes of action, including any derivative claims based on or relating to any act or omission taking place on or before the effective date (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence) relating to the Company. |
| **Injunctions** | All entities who have held claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the effective date, from taking any of the following actions against, as applicable, the Company's affiliates, equity holders, subsidiaries, officers, directors, managers, employees, and professionals from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests. |
| **Exculpation** | As of the effective date, each of the Company's affiliates, equity holders, subsidiaries, officers, directors, managers, employees, and professionals (the "Exculpated Parties") shall be released and exculpated from any cause of action for any claim related to the Company (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence). The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws and shall not be, liable at any time for the violation of any applicable law, rule, or regulation. |

4

**PX 092**
**Page 14 of 28**

Exhibit 99.2

*Privileged and Confidential*
*For Discussion Purposes Only*
*Subject to FRE 408*

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

SUMMARY OF PRINCIPAL TERMS AND CONDITIONS OF RESTRUCTURING

OCTOBER 24, 2013

*This following summary of principal terms (the "**Term Sheet**") provides an outline of a proposed restructuring of Energy Future Intermediate Holding Company LLC ("**EFIH**") pursuant to a chapter 11 plan of reorganization (the "**EFIH Restructuring**"). All terms in this document are subject to legal, tax, financial and business due diligence. Accordingly, the parties do not intend to be bound to any of the terms contained herein unless and until they enter into definitive documentation regarding the subject matter of such items as summarized in this Term Sheet. This Term Sheet does not constitute (nor shall it be construed as) an offer or commitment to sell or buy, nor the solicitation of an offer to sell or buy, any of the securities referred to herein, it being understood that such an offering, if any, only will be made in compliance with applicable provisions of securities and/or applicable laws. Further, this Term Sheet does not constitute (nor shall it be construed as) a solicitation of acceptances or rejections as to any plan of reorganization, it being understood that such solicitation shall be in compliance with applicable provisions of bankruptcy and/or other applicable laws.*

*This Term Sheet is for discussion purposes only and shall not be construed as an indication concerning the views or position of the holders of the EFIH Toggle Notes (as defined below) or their representatives regarding valuation or debt capacity of Energy Future Holdings Corp. ("**EFH**"), EFIH and/or any of such entities' subsidiaries and affiliates or a view as to feasibility of the EFIH Restructuring or any other potential restructuring.*

*The terms and conditions set forth in this Term Sheet are meant to be part of a comprehensive compromise, each element of which is consideration for the other elements and an integral aspect of the proposed restructuring. The Term Sheet is in the nature of a settlement proposal in furtherance of settlement discussions and is entitled to protection from any use or disclosure to any party or person pursuant to Federal Rule of Evidence 408 and any other rule of similar import. The transactions contemplated by this Term Sheet will be subject to the terms and conditions to be set forth in definitive documents acceptable to the Company and the EFIH Backstop Parties (as defined below).*

*This Term Sheet and the information contained herein is strictly confidential and may not be shared with any person or entity without the prior written consent of the EFIH Backstop Parties.*

TRANSACTION OVERVIEW

<u>Company</u>                  Energy Future Intermediate Holding Company LLC

| | |
|---|---|
| <u>Summary of the</u><br><u>Restructuring</u> | EFIH will restructure its secured debt, unsecured debt, equity and other claims through (i) commencement of an exchange offer whereby EFIH will permit holders of up to [100]% of EFH Legacy Notes[1] to exchange such notes for EFIH Toggle Notes[2] (as set forth more fully below), and (ii) commencement of a case under chapter 11 (the "***Chapter 11 Case***") of title 11 of the United States Code (the "***Bankruptcy Code***"). Simultaneously with the commencement of the Chapter 11 Case, EFIH shall file a chapter 11 plan of reorganization, the material terms and conditions of which are set forth in this Term Sheet (the "***Plan***"). |
| <u>EFIH Pro Forma</u><br><u>Capital Structure</u> | Upon consummation of the EFIH Restructuring, the pro forma capital structure of reorganized EFIH ("***Reorganized EFIH***") shall consist of the following: |

- New EFIH first lien secured notes in the aggregate principal amount of $[4.3] billion with market terms, including rate of interest and maturity date (the "***New EFIH First Lien Notes***").

- Reinstated EFIH Second Lien Notes[3] in the aggregate principal amount of $[1.4] billion.[4]

- New EFIH Membership Interests (as defined below) shall be issued, representing [100]% of the economic and voting power of Reorganized EFIH, and shall be allocated as follows: (i) [54.7]%[5] in satisfaction of allowed claims on account of the EFIH Unsecured Claims (as defined below), (ii) [40.2]%[5] to Rights Offering Participants (as defined below), including the Backstop Parties (as defined below) and (iii) up to [5.1]%[5] to affiliates of the Sponsor Parties (as defined below) in connection with the Co-Investment Rights (as defined below). EFH shall retain its existing membership interests in EFIH (subject to the dilution contemplated hereunder).

---

[1]    "***EFH Legacy Notes***" means, collectively, (i) those certain 5.55% Series P unsecured notes due 2014, (ii) those certain 6.50% Series Q unsecured notes due 2024, and (iii) those certain 6.55% Series R unsecured notes due 2034, in each case issued by EFH.

[2]    "***EFIH Toggle Notes***" means the 11.25%/12.25% Senior Toggle Notes due December 1, 2018 issued by EFIH and EFIH Finance, Inc.

[3]    "***EFIH Second Lien Notes***" means, collectively, the (i) 11% Fixed Senior Secured Second Lien Notes due October 1, 2021 and (ii) 11.75% Fixed Senior Secured Second Lien Notes due March 1, 2022. The indentures pursuant to which the EFIH Second Lien Notes were issued shall be referred to, collectively, as the "***Second Lien Indentures.***"

[4]    Assumes 35% of the EFIH Second Lien Notes are redeemed pursuant to the Equity Claw (as defined below) – subject to change based on actual amount of Equity Claw.

[5]    Allocation of New EFIH Membership Interests assumes (i) 35% of the EFIH Second Lien Notes are redeemed pursuant to the Equity Claw (as defined below) and (ii) Sponsor Parties (as defined below) elect to exercise full amount of Co-Investment Rights (as defined below). Amounts subject to change depending on actual amount of Equity Claw and Sponsor Parties' decision to exercise Co-Investment Rights.

2

**PX 092**
**Page 16 of 28**

| | |
|---|---|
| **EFIH Exchange Offer** | Prior to the commencement of the Chapter 11 Case, each holder of an EFH Legacy Note will be permitted to exchange such EFH Legacy Note for an EFIH Toggle Note in a principal amount equal to [10]% of the amount outstanding of such exchanged EFH Legacy Note (including accrued interest). |
| **Adequate Protection** | As adequate protection for any diminution in the value of their collateral and the imposition of the automatic stay, the Debtor shall continue to pay all interest, fees, costs and expenses payable under the Second Lien Indenture as they come due and otherwise continue to comply in all respects with the terms of the Second Lien Indenture during the pendency of the Chapter 11 Case (including, without limitation, current payment of all out of pocket costs and expenses for the professionals of the indenture trustee under the Second Lien Indenture) as adequate protection to holders of the EFIH Second Lien Notes. |
| **Sources of Funding for the Restructuring** | In addition to EFIH cash on hand as of the effective date of the Plan (the "*Effective Date*"), the sources of funding for the transactions contemplated under this Term Sheet are as follows: |

- DIP Financing: First priority secured debtor in possession financing of up to $[4.3] billion (the "*DIP Financing*"), the proceeds of which will be utilized to (i) repay outstanding principal and interest due and owing to holders of EFIH First Lien Claims[6] (but excluding any amount on account of alleged make-whole claims) and (ii) fund costs of administering the EFIH Restructuring.

    - On the Effective Date, the DIP Financing obligations will, at the option of the Backstop Parties, be (i) paid in full through exit financing proceeds or (ii) amended and restated as obligations of Reorganized EFIH.

- Equity Rights Offering: Proceeds of at least $[763] million from the issuance of Reorganized EFIH membership interests (the "*New EFIH Membership Interests*") pursuant to a rights offering (the "*Rights Offering*") which will be backstopped by the Backstop Parties. The proceeds of the Rights Offering, taken together with funds raised in connection with the Co-Investment Rights (as defined below) will fund the partial redemption of the EFIH Second Lien Notes in accordance section 3.07(b) of the Second Lien Indentures (the "*Equity Claw*"). No less than 35%, but no more than 50%, of the EFIH Second Lien Notes shall be redeemed pursuant to the Equity Claw, as determined by the Backstop Parties.

---

6    "*EFIH First Lien Claims*" means, collectively, the claims arising under those certain (i) 6.875% Fixed Senior Secured First Lien Notes due August 15, 2017 and (ii) 10% Fixed Senior Secured First Lien Notes due December 1, 2020. The indentures pursuant to which the EFIH First Lien Notes were issued shall be referred to, collectively, as the "*First Lien Indentures*".

3

**PX 092**
**Page 17 of 28**

## TREATMENT OF KEY CREDITOR CONSTITUENCIES

**EFIH First Lien Claims**

*Est. Allowed Claims: [$4.2] billion*

**Treatment:** Holders of allowed EFIH First Lien Claims shall receive payment in full of the allowed EFIH First Lien Claims from the proceeds of the DIP Financing. The Plan shall provide for the disallowance of any asserted claim on account of any make-whole fee under any of the EFIH First Lien Indentures and no distributions shall be made on account of such claims without the consent of the Backstop Parties.

Voting Status: Unimpaired, Not Entitled to Vote

**EFIH Second Lien Claims**

*Est. Allowed Claims: [$2.2] billion*

**Treatment:** Each holder of an allowed claim arising under any EFIH Second Lien Indenture (each, an "*EFIH Second Lien Claim*") shall receive its *pro rata* share of cash in satisfaction of up to 50% of the principal amount of such holder's EFIH Second Lien Notes in connection with EFIH's exercise of the Equity Claw, and the remaining amount of such holder's EFIH Second Lien Notes shall be reinstated pursuant to section 1124 of the Bankruptcy Code.

Voting Status: Unimpaired, Not Entitled to Vote

**EFIH Unsecured Claims**

*Est. Allowed Claims: [$1.7] billion*

**Treatment:** Each holder of an allowed claim arising under the EFIH Toggle Notes and the EFIH Guaranteed Notes[7] (each, an "*EFIH Unsecured Claim*" and, collectively, the "*EFIH Unsecured Claims*") shall receive its *pro rata* share (i) [54.7]% of the New EFIH Membership Interests and (ii) rights to participate in the Rights Offering.

Voting Status: Impaired, Entitled to Vote

## OTHER KEY ELEMENTS OF THE RESTRUCTURING

**EFIH Rights Offering**

**Rights Offering Amount:** $[863] million[8] (the "*Rights Offering Amount*") provided, however, that the Rights Offering Amount shall be reduced on a dollar-for-dollar basis on account of the amount of funds raised in connection with the Co-Investment Rights (as defined below).

---

[7]    The "*EFIH Guaranteed Notes*" means the 10.875% EFH LBO Senior Notes due 2017 and 11.25%/12.0% EFH LBO Toggle Notes due 2017 which are guaranteed by EFIH.

[8]    Rights Offering Amount and Use of Proceeds assumes 35% of the EFIH Second Lien Notes are redeemed pursuant to the Equity Claw – subject to change based on actual amount of Equity Claw.

4

**PX 092**
**Page 18 of 28**

**Rights Offering Participants:** The right to participate in the Rights Offering will be limited to holders of EFIH Unsecured Claims and the Backstop Parties (as permitted under the applicable backstop documentation) (collectively, the "***Rights Offering Participants***").

**Use of Proceeds:** Proceeds of the Rights Offering shall be used to pay down up to $[755] million of EFIH Second Lien Claims pursuant to the Equity Claw.

**Consideration:** Participants in the Rights Offering will receive their *pro rata* share of [39.0]% of the fully diluted New EFIH Membership Interests.

**Backstop Parties:** [100]% of the Rights Offering Amount shall be backstopped (the "***Backstop Amount***") by certain holders of the EFIH Toggle Notes ( the "***EFIH Backstop Parties***") and certain partners (together with the EFIH Backstop Parties, the "***Backstop Parties***").

**Backstop Fee:** The Backstop Parties shall receive their *pro rata* share of [1.2]% of the fully diluted New EFIH Membership Interests.

**Co-Investment Rights**

Affiliates of the current holders of EFH equity interests (the "***Sponsor Parties***") shall have the right to invest up to $[100] million to purchase up to [5.1]% of the fully diluted New EFIH Membership Interests.

**EFH/EFIH Intercompany Settlement**

EFH and EFIH shall enter into a comprehensive settlement agreement to be approved by the bankruptcy court pursuant to rule 9019 of the Federal Rules of Bankruptcy Procedure resolving all outstanding intercompany claims, disputes and issues (collectively, the "***EFH/EFIH Intercompany Settlement***"), including, without limitation the following:

- Mutual releases of any and all prepetition causes of action, including avoidance actions under chapter 5 of the Bankruptcy Code relating to any transactions effected pursuant to that certain liability management program that EFH and certain subsidiaries put in place in October 2009, which EFH alleged to have been designed to reduce outstanding debt, extend debt maturities and reduce interest expense through debt exchanges, repurchases and issuances (the "***LMP***").

- Termination of that certain Amended and Restated Tax-Sharing Agreement (the "***Oncor TSA***"), dated as of November 5, 2008 among Oncor Electric Delivery Holdings, Oncor Electric Delivery Company LLC (collectively, "***Oncor***") and EFH, and that certain Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group, executed on May 15, 2012 and stated to be effective as of January 1, 2010 (the "***Competitive TSA***" and, collectively with the Oncor TSA, the "***TSAs***") and a release of any and all claims assertable by EFH against EFIH under the Competitive TSA.

5

In consideration for entry into the EFH/EFIH Intercompany Settlement, EFIH shall pay EFH $[25 million] in cash upon the Effective Date.

**Indemnification of Prepetition Directors, Officers, and Managers**

In connection with the EFIH Restructuring, consistent with applicable law, all indemnification provisions currently in place for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of EFIH, as applicable, shall be reinstated and remain intact and irrevocable and shall survive the effectiveness of the EFIH Restructuring.

**EFIH Releases**

Each of EFIH, the Backstop Parties and their respective affiliates, equity holders, subsidiaries, former and current officers, former and current directors, managers, employees, and professionals shall be deemed released and discharged by EFH from any and all causes of action, including any derivative claims based on or relating to any act or omission taking place on or before the Effective Date (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence), including relating to the LMP and TSAs.

**Releases by Holders of Claims Against, and Interests in, EFIH**

Each of EFIH, the Backstop Parties and their respective affiliates, equity holders, subsidiaries, former and current officers, former and current directors, managers, employees, and professionals shall be deemed released and discharged by all holders in voting classes who abstain from voting on the Plan and who do not opt out of the releases provided by the plan from any and all causes of action, including any derivative claims based on or relating to any act or omission taking place on or before the Effective Date (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence) relating to EFIH.

**Exculpation**

As of the Effective Date, each of EFIH, the Backstop Parties, and their respective affiliates, equity holders, subsidiaries, officers, directors, managers, employees, and professionals (the "*Exculpated Parties*") shall be released and exculpated from any cause of action for any claim related to EFIH (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence). The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws and shall not be, liable at any time for the violation of any applicable law, rule, or regulation.

6

| | |
|---|---|
| **Conditions Precedent to Effective Date** | The occurrence of the Effective Date and the consummation of the EFIH Restructuring contemplated in this Term Sheet is conditioned upon the following: |

- The termination of the Oncor TSA so as to permit Oncor to make tax distributions directly to EFIH and Reorganized EFIH, as applicable.

- The removal of EFIH as a counterparty to the Competitive TSA.

- Bankruptcy court approval of the EFH/EFIH Intercompany Settlement.

- The EFIH Restructuring must be consummated within twelve months of the commencement of the Chapter 11 Case.

- The bankruptcy court shall not have entered any order allowing in full or in part any premium or make-whole claim under the First Lien Indentures or Second Lien Indentures.

- No material adverse change in the Debtor's business shall have occurred.

7

Exhibit 99.3

The Significant Creditor Proposal included the following material terms and conditions: (i) EFIH first lien creditors would receive new first lien secured notes issued by EFIH in an amount equal to the principal amount of EFIH first lien notes then held by such EFIH first lien creditors, which new notes would (a) mature 8 years after issuance, (b) accrue interest at the rate of 7% per annum (all payable in cash), and (c) include call protection through maturity; (ii) EFIH second lien creditors would receive (a) cash in an amount equal to the amount that would be due if EFIH redeemed 35% of the outstanding EFIH second lien notes pursuant to the equity redemption provisions in the indentures governing the EFIH second lien notes and (b) new second lien secured notes issued by EFIH in an amount equal to the then-remaining principal amount of EFIH second lien notes held by such EFIH second lien creditors after taking into account the cash redemption in the preceding clause, which new notes would (1) mature 10 years after issuance, (2) accrue interest at the rate of 9.75% per annum (8.75% payable in cash, 1% pay-in-kind), and (3) include call protection for the first eight years after issuance; (iii) EFH Corp. unsecured creditors would receive $257 million in cash and 3.1% of the equity interests in reorganized EFH Corp; and (iv) TCEH creditors would receive the proceeds of an approximately $8 billion debt issuance at TCEH and substantially all of the equity of EFH Corp. The Significant Creditor Proposal did not specify any proposed distributions to EFIH's unsecured creditors or the Equity Holders.

Exhibit 99.4

Privileged & Confidential
Subject to Confidentiality Agreements
Subject to FRE 408
Draft

**ENERGY FUTURE HOLDINGS CORP.**
**Key Terms of Restructuring of EFH and its Subsidiaries**
**October 30, 2013**

This term sheet (this "Term Sheet") describes certain terms of a proposed restructuring (the "Restructuring") of claims and interests against Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH") and certain of TCEH's subsidiaries (the "Subsidiary Guarantors," and together with EFCH and TCEH, the "TCEH Debtors," and together with EFH and EFIH, the "Company").

This Term Sheet does not describe all of the material terms of a Restructuring. Nothing herein shall be deemed an admission of any kind. This Term Sheet, and all negotiations relating hereto, are subject to Federal Rule of Evidence 408 and any applicable state rules of evidence and shall not be discoverable or admissible into evidence in any case or proceeding. This Term Sheet is not an offer with respect to any securities or solicitation of acceptances of a chapter 11 plan pursuant to section 1125 of the Bankruptcy Code. This Term Sheet shall not be construed as (i) an offer capable of acceptance, (ii) a binding agreement of any kind, (iii) a commitment to enter into, or offer to enter into, any financing or other agreement, or (iv) an agreement to support any chapter 11 plan or disclosure statement or to consummate any transactions otherwise described herein. The transactions described herein are subject in all respects to, among other things, ongoing diligence, and definitive documentation.

As provided below, among other conditions, this Term Sheet assumes that EFH, EFIH and the TCEH Debtors commence chapter 11 cases on or before the date on which certain interest payments are due to holders of certain TCEH Junior Claims (as defined below), after giving effect to any applicable grace periods. To the extent such interest payments are made from funds of the TCEH Debtors, the TCEH First Lien Creditors who have delivered this Term Sheet will not receive interests in which they receive interests in EFH (including EFH Common Stock (as defined below)) on account of any portion of their claims against the TCEH Debtors.

| | |
|---|---|
| **TCEH First Lien Creditors** | Each holder (collectively, the "TCEH First Lien Creditors") of a senior secured first lien claim against the TCEH Debtors would receive, in full and final satisfaction of its claim, its pro rata share of: (i) $6.0 billion of new senior secured first lien debt of the reorganized TCEH Debtors on market terms that are acceptable to the TCEH First Lien Creditors (or at the TCEH First Lien Creditors' election, the equivalent amount in cash from the issuance of such new debt to third parties); (ii) $2 billion of new pay-in-kind debt of the reorganized TCEH Debtors; (iii) 100% of the common equity interests in reorganized EFH (the "EFH Common Stock") (subject to dilution only on account of an agreed upon management equity incentive plan); and (iv) on account of its deficiency claims (together with the deficiency claims of all other TCEH First Lien Creditors, the "TCEH First Lien Creditor Deficiency Claim"), to the extent not otherwise waived in the manner described below, its pro rata share of any value attributable to any unencumbered assets of the TCEH Debtors (if any). |

| | |
|---|---|
| **TCEH Junior Creditors** | If all classes of creditors holding junior liens or unsecured claims against the TCEH Debtors (such claims, the "TCEH Junior Claims" and the creditors, the "TCEH Junior Creditors") vote in sufficient numbers and amounts to accept a chapter 11 plan of reorganization proposed by the TCEH Debtors that is consistent with the Restructuring described herein, the TCEH First Lien Creditors would waive in favor of the TCEH Junior Creditors a portion of the distributions (but not voting rights) in respect of the TCEH First Lien Creditor Deficiency Claim (the amount so waived to be determined by the TCEH First Lien Creditors in their sole discretion), and any related turnover obligation under any applicable intercreditor agreement, and each TCEH Junior Creditor would receive, after payment in full of all allowed administrative expense and priority claims asserted against the TCEH Debtors, in full and final satisfaction of its claim, its pro rata share of (i) any value attributable to any unencumbered assets of the TCEH Debtors (if any) and (ii) such other consideration, if any, as may be agreed to by the TCEH First Lien Creditors. If any class of TCEH Junior Creditors does not accept any such chapter 11 plan, each TCEH Junior Creditor shall only receive its pro rata share of any value attributable to the assets described in clause (i) above, and the TCEH First Lien Creditors shall not waive any portion of the TCEH First Lien Creditor Deficiency Claim and shall fully enforce all turnover obligations under applicable intercreditor agreements. |
| **EFIH First Lien Creditors** | Each holder (collectively, the "EFIH First Lien Creditors") of a first lien secured note issued by EFIH (collectively, the "EFIH First Lien Notes") would receive, in full and final satisfaction of its claim, its pro rata share of $4,137 million of new first lien senior secured notes (or the equivalent amount in cash from the issuance of new debt to third parties) to be issued by reorganized EFIH on the effective date of the Restructuring (such notes on terms as described below, the "New EFIH First Lien Notes").<br><br>The New EFIH First Lien Notes would include terms and conditions satisfactory to the TCEH First Lien Creditors, including the following:<br><br>• Maturity: 10 years from the effective date of the Restructuring<br><br>• Call Protection: No-call for 4 years from issuance<br><br>• Interest Rate: 5.25%<br><br>The net present value of all future payment obligations, costs incurred and payments made (or to be made) by the Company in connection with refinancing the EFIH First Lien Notes, including, without limitation, any cash or non-cash distributions, the issuance of additional New EFIH First Lien Notes, or the inclusion of a higher interest rate than that set forth above, longer no-call period or other noteholder-favorable terms and conditions for such New EFIH First Lien Notes, shall constitute the "All- |

2

| | |
|---|---|
| | In EFIH First Lien Refinancing Costs" and the excess, if any, of the All-In EFIH First Lien Refinancing Costs over $4,137 million shall constitute the "EFIH First Lien Refinancing Costs." Any EFIH First Lien Refinancing Costs that do not require the Company to make a cash payment in respect of such EFIH First Lien Refinancing Costs on or before the effective date of the Restructuring shall constitute an "EFIH First Lien Non-Cash Refinancing Cost." |
| **EFIH Second Lien Creditors** | Each holder (collectively, the "EFIH Second Lien Creditors") of a second lien secured note issued by EFIH (collectively, the "EFIH Second Lien Notes") would receive, in full and final satisfaction of its claim, its pro rata share of (a) $1,200 million in cash (the "EFIH Second Lien Payment") from the proceeds of the EFH Equity Contribution (as defined below) and (b) $1,213 million of new second lien senior secured notes (or the equivalent amount in cash from the issuance of new debt to third parties) to be issued by reorganized EFIH on the effective date of the Restructuring (such notes on terms as described below, the "New EFIH Second Lien Notes").

The New EFIH Second Lien Notes would include terms and conditions satisfactory to the TCEH First Lien Creditors, including the following:

- Maturity: 10 years from the effective date of the Restructuring

- Call Protection: No-call for 4 years from issuance

- Interest Rate: 6.50%

The net present value of all future payment obligations, costs incurred and payments made (or to be made) by the Company in connection with refinancing the EFIH Second Lien Notes, including, without limitation, any cash or non-cash distributions, the issuance of additional New EFIH Second Lien Notes, or the inclusion of a higher interest rate than that set forth above, longer no-call period or other noteholder-favorable terms and conditions for such New EFIH Second Lien Notes, shall constitute the "All-In EFIH Second Lien Refinancing Costs" and the excess, if any, of the All-In EFIH Second Lien Refinancing Costs over $2,413 million shall constitute the "EFIH Second Lien Refinancing Costs." Any EFIH Second Lien Refinancing Costs that do not require the Company to make a cash payment in respect of such EFIH Second Lien Refinancing Costs on or before the effective date of the Restructuring shall constitute an "EFIH Second Lien Non-Cash Refinancing Cost" (and together with the EFIH First Lien Non-Cash Refinancing Cost, the "EFIH Non-Cash Refinancing Costs"). |
| **EFIH Unsecured Creditors** | Each holder of an unsecured claim against EFIH (the "EFIH Unsecured Creditors") would receive, in full and final satisfaction of its claim, its pro rata share of cash in an amount equal to $375 million *less* the sum of (a) any EFIH Refinancing Costs and (b) any amounts distributed to the EFH Equity Holders (as defined below). |

**PX 092**
**Page 25 of 28**

| EFH Unsecured Creditors | Each holder of an unsecured claim against EFH (the "EFH Unsecured Creditors") would receive, in full and final satisfaction of its claim, its pro rata share of $225 million of cash from the proceeds of the EFH Equity Acquisition. |
| --- | --- |
| **EFH Equity Holders** | The holders of existing equity interests in EFH (the "EFH Equity Holders") would receive [TBD]. |
| **Management** | The Company shall implement a new management incentive plan upon the effective date of the Restructuring, which plan (together with any existing employee benefit or incentive plans that are assumed pursuant to the Restructuring and with the consent of the TCEH First Lien Creditors) shall include terms and conditions satisfactory to the TCEH First Lien Creditors. |
| **Implementation** | The Restructuring would be implemented pursuant to separate chapter 11 plans of reorganization for each of EFH, EFIH and the TCEH Debtors. Consummation of each of the three plans of reorganization would be conditioned upon one another and would occur concurrently. Pursuant to the TCEH plan of reorganization (the "TCEH Plan"), on the effective date of the TCEH Plan, the reorganized TCEH Debtors would incur up to $1.8 billion of first lien senior secured debt, the cash proceeds of which the reorganized TCEH Debtors would transfer to EFH to fund EFH's plan of reorganization (the "EFH Plan") and EFIH's plan of reorganization (the "EFIH Plan"). The TCEH Debtors would in turn receive 100% of the equity interests of reorganized EFH (the "EFH Equity Acquisition"), which the TCEH Debtors would then distribute to TCEH First Lien Creditors pursuant to the TCEH Plan. Consummation of the EFH Equity Acquisition would be conditioned upon, among other things: (1) consummation of the EFIH Plan, pursuant to which reorganized EFH would retain its equity interests in reorganized EFIH in exchange for a new equity contribution from the proceeds of the EFH Equity Acquisition (the "EFIH Equity Contribution")[1], and which EFIH Plan would be subject to certain conditions (the "EFIH Plan Conditions") and (2) consummation of the EFH Plan, subject to certain conditions (the "EFH Plan Conditions"). <br><br> The EFIH Plan Conditions would include, among others, that reorganized EFIH must have no more than $5.3 billion of total funded debt, which debt shall be on terms satisfactory to the TCEH First Lien Creditors. <br><br> The EFH Plan Conditions would include, among others, that reorganized EFH must have no funded debt. |

---

[1]    The EFIH Equity Contribution would equal $1.8 billion *less* any amounts distributed to EFH Unsecured Creditors and EFH Equity Holders pursuant to the EFH Plan. This amount would be further reduced by an amount equal to any EFIH Non-Cash Refinancing Costs, unless the TCEH First Lien Creditors (in their sole discretion) agree to not reduce the amount of the EFH Equity Acquisition by any EFIH Non-Cash Refinancing Costs.

4

| | |
|---|---|
| **TCEH/EFIH Pro Forma Capital Structure** | Reorganized TCEH (Up to $9.8 billion total debt)<br><br>• Up to $7.8 billion of senior secured first lien cash-pay debt:<br><br>  • $6.0 billion issued to the TCEH First Lien Creditors (or at the TCEH First Lien Creditors' election, the equivalent amount in cash from the issuance of such new debt to third parties); and<br><br>  • Up to $1.8 billion issued to third-parties, the cash proceeds of which would fund the EFH Equity Acquisition.<br><br>• $2.0 billion of pay-in-kind debt of the reorganized TCEH Debtors issued to the TCEH First Lien Creditors.<br><br>• The amount and structure of the *pro forma* reorganized TCEH debt described herein is conditioned upon and assumes the consummation of the transactions associated with the Restructuring.<br><br>• Unless the TCEH First Lien Creditors agree to the contrary, the amount of the EFH Equity Acquisition (and the amount of debt of the reorganized TCEH Debtors incurred to finance the same) would be reduced by an amount equal to any EFIH Non-Cash Refinancing Costs.<br><br>Reorganized EFIH ($5.3 billion total debt)<br><br>• The terms of reorganized EFIH's debt, and the relative proportion of senior and junior debt, will be structured to optimize reorganized EFIH's capital structure and minimize its interest expense. |
| **Conditions** | • EFH, EFIH and the TCEH Debtors must commence voluntary cases under chapter 11 of the Bankruptcy Code before the next payment of interest is due to holders of certain TCEH Junior Claims, after giving effect to any applicable grace periods.<br><br>• The Restructuring, and all of the transactions described herein and related thereto, must be consummated by no later than June 30, 2014. |
| **Employment Obligations** | Employees who are party to employment agreements with the Company shall receive new employment agreements with the Company on terms satisfactory to such employees and the TCEH First Lien Creditors. |
| **Indemnification of Prepetition Directors, Officers, and Managers** | Under the Restructuring, consistent with applicable law, all indemnification provisions currently in place for the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Company, as applicable, shall be reinstated and remain intact and irrevocable and shall survive the effectiveness of the Restructuring. |
| **Director, Officer, Manager, and Employee Tail Coverage** | On or before the occurrence of the effective date, the Company shall purchase and maintain directors, officers, managers, and employee liability tail coverage on terms satisfactory to the TCEH First Lien Creditors. |

5

| Releases | The EFH Plan, EFIH Plan and TCEH Plan would include standard and customary debtor and third-party releases, subject to any agreed upon carveouts and to the extent permissible under applicable law. |
|---|---|
| Injunctions | All holders of claims against or interests in the Company that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the effective date, from commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims against or interests in, as applicable, the Company, and its affiliates, equity holders, subsidiaries, officers, directors, managers, employees, and professionals. |
| Exculpation | As of the effective date, each of the Company and the TCEH First Lien Creditors, and each of their respective affiliates, equity holders, subsidiaries, officers, directors, managers, employees, and professionals (the "Exculpated Parties") shall be released and exculpated from any cause of action or claim relating to the negotiation, execution or consummation of the Restructuring (except claims relating to an act or omission that is determined in a final order to have constituted actual fraud or gross negligence). The Exculpated Parties shall be deemed to have participated in good faith and in compliance with the applicable laws and shall not be, liable at any time for the violation of any applicable law, rule, or regulation. |

6