# In The Matter Of:

*DELAWARE TRUST COMPANY*
*v.*
*ENERGY FUTURE HOLDINGS CORPORATION, et al.*

_____

## *ANTHONY R. HORTON - Vol. 1*
### *December 9, 2014*

_____

## *CONFIDENTIAL*

**MERRILL CORPORATION**

LegaLink, Inc.

1345 Avenue of the Americas
17th Floor
New York, NY 10105
Phone: 212.557.7400
Fax: 212.367.6178

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

C O N F I D E N T I A L                          12:47:54

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
-----------------------------------------x
In re:

ENERGY FUTURE HOLDINGS        Chapter 11
CORPORATION, et al.,          Case No.
                        14-10979(CSS)
        Debtors.
-----------------------------------------x
DELAWARE TRUST COMPANY, as
Indenture Trustee,

        Plaintiff,        Adversary Proceeding
                    No. 14-503639(CSS)
        v.                Related to Docket
                    Nos. 157 and 159
HOLDING COMPANY LLC and
EFIH HOLDING COMPANY LLC
and EFIH FINANCE INC.,

        Defendants.
-----------------------------------------x


            December 9, 2014

            9:39 a.m.


    Videotaped 30(b)(6) deposition of

ANTHONY R. HORTON, and ANTHONY R. HORTON

individually, held at the offices of

WilmerHale LLP, 7 World Trade Center, 250

Greenwich Street, New York, New York, before

Gail F. Schorr, a Certified Shorthand

Reporter, Certified Realtime Reporter and

Notary Public within and for the State of

New York.

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1   A P P E A R A N C E S:

 2   FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
     Attorneys for Fidelity
 3        One New York Plaza
          New York, New York 10004-1980
 4
     BY:  DANIEL VAILLANT, ESQ.   (via phone)
 5        (daniel.vaillant@friedfrank.com)

 6
     FOLEY & LARDNER LLP
 7   Attorneys for UMB Bank as indenture          09:43:21
     trustee for the unsecured notes on the E
 8   side                                         09:43:23
          90 Park Avenue
 9        New York, New York 10016

10   BY:  REBECCA A. HAYES, ESQ.
          (rhayes@foley.com)
11

12   WHITE & CASE LLP
     Attorneys for the Ad Hoc Group of TCEH
13   Unsecured Noteholders
          1155 Avenue of the Americas
14        New York, New York 10036-2787

15   BY:  JASON BARTLETT, ESQ.
          (jason.bartlett@whitecase.com)
16

17   ROPES & GRAY LLP
     Attorneys for Delaware Trust Co., as
18   indenture trustee
          1211 Avenue of the Americas
19        New York, New York 10036-8704

20   BY:  ANDREW G. DEVORE, ESQ.
               -and-
21        KEITH H. WOFFORD, ESQ.
          (andrew.devore@ropesgray.com)
22        (keith.wofford@ropesgray.com)

23

24

25
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1    A P P E A R A N C E S (Continued)

 2    SHEARMAN & STERLING LLP                                    09:43:39
      Attorneys for the EFIH first lien DIP
 3    agent                                                      09:43:41
              599 Lexington Avenue
 4            New York, New York 10022-6069

 5    BY:   NED S. SCHODEK, ESQ.
              (ned.schodek@shearman.com)

 6

 7    WILMER CUTLER PICKERING HALE AND DORR LLP
      Attorneys for Delaware Trust Company as
 8    indenture trustee for the EFIH first lien
      notes
 9            7 World Trade Center
              250 Greenwich Street
10            New York, New York 10007

11    BY:   PHILIP D. ANKER, ESQ.
                    -and-
12            CHARLES C. PLATT, ESQ.
              (philip.anker@wilmerhale.com)
13            (charles.platt@wilmerhale.com)

14                  -AND-

15    WILMER CUTLER PICKERING HALE AND DORR LLP
      Attorneys for Delaware Trust Company as
16    indenture trustee for the EFIH first lien
      notes
17            1875 Pennsylvania Avenue, N.W.
              Washington, DC 20006
18
      BY:   DAVID GRINGER, ESQ.
19            (david.gringer@wilmerhale.com)

20
      KASOWITZ BENSON TORRES & FRIEDMAN LLP
21    Attorneys for the Ad Hoc Group of EFH
      Corp. Noteholders
22            1633 Broadway
              New York, New York 10019-6799
23
      BY:   SHELLEY IVAN, ESQ.
24            (sivan@kasowitz.com)

25
```

```
 1    A P P E A R A N C E S (Continued):

 2    KIRKLAND & ELLIS LLP
      Attorneys for the Debtors and the Witness
 3          300 North LaSalle
            Chicago, Illinois 60654
 4
      BY:   RICHARD U S HOWELL, ESQ.
 5          (richard.howell@kirkland.com)

 6              -AND-

 7    KIRKLAND & ELLIS LLP
      Attorneys for the Debtors and the Witness
 8          555 California Street
            San Francisco, California 94104
 9
      BY:   ALEXANDER G. DAVIS, ESQ.
10          (alexander.davis@kirkland.com)

11
      WACHTELL LIPTON ROSEN & KATZ LLP
12    Attorneys for the EFH equity owners
            51 West 52nd Street
13          New York, New York 10019

14    BY:   ANGELA K. HERRING, ESQ. (via phone)
            (akherring@wlrk.com)
15
16    KRAMER LEVIN NAFTALIS & FRANKEL
      Attorneys for EFIH Second Lien Indenture
17    Trustee
            1177 Avenue of the Americas
18          New York, New York 10036

19    BY:   GREGORY AARON HOROWITZ, ESQ.
                -and-
20          ALISSA R. GOODMAN, ESQ. (via phone)
            (ghorowitz@kramerlevin.com)
21          (agoodman@kramerlevin.com)

22

23

24

25
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1    A P P E A R A N C E S (Continued):

 2    DRINKER BIDDLE & REATH LLP
      Attorneys for CSC Trust Company of
 3    Delaware as Successor Trustee for the
      first lien notes issued by EFIH
 4         1177 Avenue of the Americas
           41st Floor
 5          New York, New York, 10036-2714

 6    BY:   JAMES H. MILLAR, ESQ.
            (james.millar@dbr.com)
 7

 8    VENABLE LLP
      Attorneys for PIMCO
 9         Rockefeller Center
           1270 Avenue of the Americas
10         New York, New York 10020

11    BY:   JEFFREY S. SABIN, ESQ.
            (jssabin@venable.com)
12

13    ALSO PRESENT:

14    ANDREW M. WRIGHT, ESQ.
      EFH
15
      MARK SHANKWEILER
16    Capstone

17    ROBERT GIBBS, Videographer
      Merrill Legal Solutions
18

19

20

21

22

23

24

25
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 6

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER: Good morning, | 09:39:00 |
| 2 | everyone.  This is the video operator | 09:39:10 |
| 3 | speaking, Robert Gibbs of Merrill | 09:39:18 |
| 4 | Legal Solutions, 1345 Sixth Avenue, | 09:39:21 |
| 5 | New York City, New York 10105.  Today | 09:39:23 |
| 6 | is December 9th, 2014 and the time is | 09:39:27 |
| 7 | 9:39 a.m.  We are at the offices of | 09:39:31 |
| 8 | WilmerHale LLP, 7 World Trade Center, | 09:39:35 |
| 9 | New York City, New York, to take the | 09:39:39 |
| 10 | videotaped deposition of Mr. Anthony | 09:39:40 |
| 11 | R. Horton, In Re Energy Futures | 09:39:43 |
| 12 | Holdings Corp., et al., in the United | 09:39:47 |
| 13 | States Bankruptcy Court for the | 09:39:51 |
| 14 | District of Delaware, case number | 09:39:52 |
| 15 | 14-10979(CSS) and adversary | 09:39:55 |
| 16 | proceeding case number 14-50363(CSS). | 09:40:03 |
| 17 | Will defense counsel and | 09:40:12 |
| 18 | examiner please introduce | 09:40:17 |
| 19 | yourselves for the record.  All | 09:40:19 |
| 20 | others will be noted. | 09:40:21 |
| 21 | MR. HOWELL:  Rush Howell from | 09:40:23 |
| 22 | Kirkland & Ellis on behalf of the | 09:40:24 |
| 23 | debtors and the witness. | 09:40:26 |
| 24 | MR. ANKER:  Philip Anker, | 09:40:28 |
| 25 | Wilmer Cutler Pickering Hale and | 09:40:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 7

| | | |
|---|---|---|
| 1 | Dorr, joined by my colleague, David | 09:40:35 |
| 2 | Gringer, representing Delaware | 09:40:37 |
| 3 | Trust Company as indenture trustee | 09:40:39 |
| 4 | for the EFIH first lien notes. | 09:40:41 |
| 5 | THE VIDEOGRAPHER:  Thank you. | 09:40:43 |
| 6 | Will the court reporter, Gail | 09:40:44 |
| 7 | Schorr of Merrill Legal Solutions, | 09:40:45 |
| 8 | please swear the witness. | 09:40:47 |
| 9 | ANTHONY R. HORTON, | |
| 10 | called as a witness, having been | |
| 11 | first duly sworn by the Notary | |
| 12 | Public (Gail F. Schorr), was | |
| 13 | examined and testified as follows: | |
| 14 | THE VIDEOGRAPHER:  You may | |
| 15 | proceed. | |
| 16 | EXAMINATION BY MR. ANKER: | 09:40:57 |
| 17 | Q.    Good morning, Mr. Horton. | 09:40:57 |
| 18 | Sorry you had to come to New York on such | 09:41:00 |
| 19 | a lousy travel and weather day. | 09:41:02 |
| 20 | A.    No worries, thank you. | 09:41:04 |
| 21 | Q.    Can you please state your full | 09:41:05 |
| 22 | name for the record? | 09:41:07 |
| 23 | A.    Anthony Ray Horton. | 09:41:07 |
| 24 | Q.    I take it you are represented | 09:41:09 |
| 25 | personally by Mr. Howell today as well, | 09:41:11 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | correct? | 09:41:15 |
| 2 | A.    That is correct. | 09:41:15 |
| 3 | Q.    I know you've been deposed | 09:41:15 |
| 4 | before in these bankruptcy cases; is that | 09:41:22 |
| 5 | correct, sir? | 09:41:24 |
| 6 | A.    That is correct. | 09:41:25 |
| 7 | Q.    So you're generally familiar | 09:41:25 |
| 8 | with the drill.  I'm not going to spend a | 09:41:27 |
| 9 | lot of time on instructions, but let me | 09:41:28 |
| 10 | just go over a few basic groundrules.  If | 09:41:30 |
| 11 | at any point you do not understand a | 09:41:34 |
| 12 | question that I ask, please let me know | 09:41:35 |
| 13 | and I'll rephrase it.  Otherwise, I'm | 09:41:37 |
| 14 | going to assume and I think the judge is | 09:41:39 |
| 15 | going to assume that you understood the | 09:41:41 |
| 16 | question. | 09:41:43 |
| 17 | Do you understand that, sir? | 09:41:46 |
| 18 | A.    Yes. | 09:41:47 |
| 19 | Q.    If at any time you want to | 09:41:48 |
| 20 | take a break, we want you to be | 09:41:50 |
| 21 | comfortable, let me know.  If there's a | 09:41:51 |
| 22 | pending question I'll ask you to answer | 09:41:53 |
| 23 | it, but otherwise, you're free to let me | 09:41:55 |
| 24 | know whenever you want to take a break. | 09:41:57 |
| 25 | A.    Appreciate that. | 09:42:00 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Q.    And finally, we all in normal | 09:42:00 |
| 2 | conversation indicate things nonverbally, | 09:42:04 |
| 3 | we shake our head as you are doing right | 09:42:07 |
| 4 | now. | 09:42:09 |
| 5 | A.    Sure. | 09:42:09 |
| 6 | Q.    That doesn't work with a court | 09:42:09 |
| 7 | reporter. | 09:42:11 |
| 8 | A.    Understood. | 09:42:11 |
| 9 | Q.    So I'd ask you to give verbal | 09:42:13 |
| 10 | instructions.  One last thing, which we | 09:42:14 |
| 11 | just violated, it's just as much my fault | 09:42:16 |
| 12 | as yours.  Let's not talk over each | 09:42:19 |
| 13 | other.  I will try to complete a | 09:42:21 |
| 14 | question, please let me do so before you | 09:42:23 |
| 15 | answer and I will try to extend you the | 09:42:25 |
| 16 | same courtesy when you are answering. | 09:42:28 |
| 17 | A.    Understood. | 09:42:29 |
| 18 | Q.    Okay.  Do you understand that | 09:42:30 |
| 19 | you've been called here to testify both | 09:42:32 |
| 20 | in your individual capacity and as a | 09:42:34 |
| 21 | representative of the debtors? | 09:42:38 |
| 22 | A.    Yes, I do. | 09:42:39 |
| 23 | Q.    And with respect to the | 09:42:40 |
| 24 | debtors I mean EFIH and the other debtors | 09:42:42 |
| 25 | in these consolidated proceedings, you | 09:42:46 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 10

```
 1    understand that?                              09:42:49
 2         A.    Yes, sir.                          09:42:49
 3         Q.    I will use the term EFIH a         09:42:50
 4    number of times during this deposition.       09:42:53
 5    When I do, please understand I'm              09:42:55
 6    referring to Energy Future Intermediate       09:42:58
 7    Holdings Company and EFIH Finance, Inc.       09:43:02
 8    Is that understood?                           09:43:04
 9         A.    Understood.                        09:43:05
10         Q.    If at any point an answer you      09:43:06
11    need to give is different for one of          09:43:07
12    those entities from the others, please        09:43:09
13    let me know, otherwise, I will assume         09:43:11
14    your answer covers both entities, okay?       09:43:13
15         A.    Okay.                              09:43:16
16         Q.    You are appearing today            09:43:16
17    pursuant to notice of deposition, are you     09:43:20
18    not?                                          09:43:22
19         A.    I am indeed.                       09:43:23
20              MR. ANKER:  Let me mark, and        09:43:24
21         these we have premarked, two            09:43:26
22         exhibits, Exhibit number 1 is a         09:43:28
23         30(b)(6) deposition notice and          09:43:31
24         Exhibit 2 is a 30(b)(1) deposition      09:43:33
25         notice.                                 09:43:36
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | (Horton Exhibit 1 for | 09:43:37 |
| 2 | identification, 30(b)(6) deposition | 09:43:31 |
| 3 | notice.) | 09:43:32 |
| 4 | (Horton Exhibit 2 for | 09:43:32 |
| 5 | identification, 30(b)(1) deposition | 09:43:35 |
| 6 | notice.) | 09:43:36 |
| 7 | Q.    Do you recognize those | 09:43:41 |
| 8 | documents, Mr. Horton? | 09:43:42 |
| 9 | A.    I do. | 09:43:43 |
| 10 | Q.    What is Exhibit 30 -- Exhibit | 09:43:44 |
| 11 | 1? | 09:43:49 |
| 12 | A.    It's the second amended notice | 09:43:49 |
| 13 | of deposition. | 09:43:51 |
| 14 | Q.    In which capacity, sir? | 09:43:53 |
| 15 | A.    Sorry.  30(b)(6). | 09:43:55 |
| 16 | Q.    Okay.  And we understand that | 09:43:58 |
| 17 | you have been designated by the debtors | 09:44:00 |
| 18 | to testify on topics 3 through 4 and 6 | 09:44:03 |
| 19 | and 8; is that right, sir? | 09:44:07 |
| 20 | A.    3, 4, 6, 8 and my | 09:44:09 |
| 21 | understanding is 9 as well. | 09:44:23 |
| 22 | Q.    Okay.  We've worked out a | 09:44:25 |
| 23 | stipulation with your counsel on 9. | 09:44:27 |
| 24 | I'm also going to be asking | 09:44:29 |
| 25 | you for a series, about a series of | 09:44:30 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | documents today which is topic 10 and I | 09:44:33 |
| 2 | presume you are familiar with the | 09:44:35 |
| 3 | documents insofar as they relate to | 09:44:37 |
| 4 | topics 3 to 4, 6 and 8 and potentially 9, | 09:44:39 |
| 5 | correct, sir? | 09:44:43 |
| 6 | A.    I will review those documents | 09:44:44 |
| 7 | and I should be prepared to discuss | 09:44:46 |
| 8 | those. | 09:44:49 |
| 9 | Q.    And what did you do to prepare | 09:44:49 |
| 10 | to testify on these topics? | 09:44:53 |
| 11 | A.    I reviewed, first I met with | 09:44:55 |
| 12 | some of my team members, legal counsel, | 09:45:00 |
| 13 | so Mr. Moldovan, Mr. Wright, Mr. Howell, | 09:45:02 |
| 14 | Mr. Davis, and had some conversations | 09:45:08 |
| 15 | with them.  Mr. Keglevic limited in | 09:45:11 |
| 16 | scope, but had conversations with him. | 09:45:17 |
| 17 | Q.    When did you meet with Mr. | 09:45:19 |
| 18 | Moldovan to prepare for your deposition | 09:45:21 |
| 19 | today? | 09:45:24 |
| 20 | A.    I met with Mr. Moldovan I want | 09:45:24 |
| 21 | to say Wednesday, Thursday of last week, | 09:45:29 |
| 22 | and for a brief period of time yesterday. | 09:45:33 |
| 23 | Q.    Did you -- you're aware he has | 09:45:37 |
| 24 | been deposed in connection with -- by me | 09:45:40 |
| 25 | in connection with the dispute over the | 09:45:43 |

| | | |
|---|---|---|
| 1 | first liens trustee's entitlement to a | 09:45:47 |
| 2 | make-whole premium? | 09:45:51 |
| 3 | A.    That's right. | 09:45:51 |
| 4 | Q.    Have you read his deposition | 09:45:52 |
| 5 | transcript? | 09:45:53 |
| 6 | A.    No, sir. | 09:45:53 |
| 7 | Q.    Did he talk to you about his | 09:45:54 |
| 8 | deposition? | 09:45:56 |
| 9 | A.    No, sir. | 09:45:56 |
| 10 | Q.    Did he tell you any questions | 09:45:57 |
| 11 | that were asked? | 09:45:58 |
| 12 | A.    I'm not aware of any | 09:45:59 |
| 13 | questions. | 09:46:01 |
| 14 | Q.    Did he discuss with you the | 09:46:01 |
| 15 | subject matter of the deposition? | 09:46:03 |
| 16 | A.    Very high level. | 09:46:05 |
| 17 | Q.    What did he tell you? | 09:46:06 |
| 18 | A.    Basically that you'd asked | 09:46:07 |
| 19 | some questions regarding the notes, the | 09:46:12 |
| 20 | 10 percent first lien notes.  Again, | 09:46:17 |
| 21 | nothing specific, no specific questions | 09:46:20 |
| 22 | that I recall. | 09:46:22 |
| 23 | Q.    Have you been provided any | 09:46:22 |
| 24 | excerpts of his deposition from your | 09:46:26 |
| 25 | counsel or from anyone else? | 09:46:28 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 14

```
 1        A.    No, sir.                          09:46:30

 2        Q.    Has your counsel communicated     09:46:30

 3   to you about the substance of the            09:46:33

 4   deposition of Mr. Moldovan?                  09:46:36

 5        A.    No, sir.                          09:46:38

 6        MR. HOWELL:  Object to the              09:46:39

 7        extent it calls for attorney/client     09:46:40

 8        privileged communications,             09:46:42

 9        otherwise, you can answer.             09:46:43

10        MR. ANKER:  I'm simply asking          09:46:46

11        the subject matter, Mr. Howell,         09:46:47

12        which I unquestionably would be        09:46:49

13        entitled to under any                   09:46:50

14        circumstances.                          09:46:52

15        Q.    Did you review any documents      09:46:52

16   in preparation for your deposition today?    09:46:55

17        A.    I did review some documents, a    09:46:57

18   very high level, just kind of flipped        09:47:01

19   through.  And I couldn't tell you            09:47:04

20   specifically which documents, but I did      09:47:05

21   review some documents, some emails.  I       09:47:07

22   couldn't recall those specifically.          09:47:09

23        Q.    Who showed you those              09:47:11

24   documents?                                   09:47:12

25        A.    My counsel.                       09:47:12
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 15

```
1          Q.    And how long did you meet with           09:47:14

2     counsel?                                            09:47:17

3          A.    Again, they attended those --            09:47:18

4     the meetings that you and I discussed               09:47:20

5     Wednesday, Thursday of last week,                   09:47:23

6     yesterday.  So in total, you know, on and           09:47:26

7     off 10, 12 hours, something like that.              09:47:30

8          Q.    You said you spoke with other            09:47:33

9     individuals at the company other than Mr.           09:47:36

10    Moldovan.  Who were those individuals?              09:47:38

11         A.    Mr. Wright.                              09:47:39

12         Q.    What did you discuss with Mr.            09:47:40

13    Wright?                                             09:47:43

14         A.    He was just attending the                09:47:44

15    meetings as well and periodically just             09:47:47

16    feedback from him.                                  09:47:51

17         Q.    I thought you told me a moment           09:47:52

18    ago that you also spoke with Mr. Keglevic          09:47:55

19    in preparation for your deposition; is             09:47:57

20    that correct?                                       09:48:00

21         A.    I'd forgotten it.  Yes, he, he           09:48:00

22    attended one of the preps sessions.  I             09:48:03

23    didn't speak specifically to him, but,             09:48:10

24    you know, he was in the prep.                       09:48:12

25         Q.    Did Mr. Keglevic provide you             09:48:13
```

| | | |
|---|---|---|
| 1 | with any information, any recollections | 09:48:15 |
| 2 | or any other information in preparation | 09:48:17 |
| 3 | for your deposition today? | 09:48:19 |
| 4 | A.    No, sir. | 09:48:21 |
| 5 | Q.    Did you bring any documents | 09:48:22 |
| 6 | with you today? | 09:48:25 |
| 7 | A.    I have my briefcase.  I | 09:48:26 |
| 8 | brought those documents that were | 09:48:29 |
| 9 | provided by the lawyers. | 09:48:31 |
| 10 | Q.    Can you provide us a copy of | 09:48:32 |
| 11 | those documents now, sir? | 09:48:37 |
| 12 | MR. HOWELL:  Do you want to go | 09:48:43 |
| 13 | off the record, we'll see what -- I | 09:48:45 |
| 14 | don't know that he's brought | 09:48:48 |
| 15 | documents. | 09:48:49 |
| 16 | MR. ANKER:  Sure, let's go off | 09:48:50 |
| 17 | the record for a moment. | 09:48:52 |
| 18 | THE VIDEOGRAPHER:  One moment, | 09:48:53 |
| 19 | watch your microphones.  The time | 09:48:53 |
| 20 | is now 9:48 a.m., we're off the | 09:48:56 |
| 21 | record. | 09:49:00 |
| 22 | (A recess was taken.) | 09:49:00 |
| 23 | THE VIDEOGRAPHER:  This is the | 09:57:11 |
| 24 | videographer speaking.  I just want | 09:57:19 |
| 25 | to make a quick correction.  Today | 09:57:21 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 17

| | | |
|---|---|---|
| 1 | is December 9th, not the 10th.  The | 09:57:23 |
| 2 | time is 9:57 a.m., we're back on | 09:57:26 |
| 3 | the record. | 09:57:29 |
| 4 | MR. ANKER:  Let the record | 09:57:32 |
| 5 | reflect that after I asked the | 09:57:33 |
| 6 | witness whether he is prepared to | 09:57:34 |
| 7 | provide us with a copy of the | 09:57:37 |
| 8 | documents he has brought that he | 09:57:39 |
| 9 | reviewed in prep for deposition he | 09:57:41 |
| 10 | asked to leave the room and consult | 09:57:45 |
| 11 | with his counsel, which he has | 09:57:46 |
| 12 | done.  Can you please provide us | 09:57:48 |
| 13 | now with a set of the documents? | 09:57:49 |
| 14 | MR. HOWELL:  When I spoke with | 09:57:51 |
| 15 | Mr. Horton after we exited the | 09:57:54 |
| 16 | room, he indicated that he -- | 09:57:57 |
| 17 | there's a binder of documents that | 09:58:00 |
| 18 | he had received from us that were | 09:58:02 |
| 19 | documents, all of which have been | 09:58:05 |
| 20 | produced in this case.  He did not | 09:58:07 |
| 21 | bring them into this deposition | 09:58:09 |
| 22 | room with him, but he does have | 09:58:11 |
| 23 | them in his briefcase. | 09:58:13 |
| 24 | My understanding is that there | 09:58:14 |
| 25 | are some notes that he has written | 09:58:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 18

| | | |
|---|---|---|
| 1 | while reviewing the documents. | 09:58:20 |
| 2 | Some of those may have been taken | 09:58:21 |
| 3 | during attorney/client privileged | 09:58:24 |
| 4 | communications.  We don't have time | 09:58:27 |
| 5 | to review those now, so we're not | 09:58:29 |
| 6 | going to produce the documents. | 09:58:32 |
| 7 | What I am willing to do is to | 09:58:33 |
| 8 | provide a list of Bates numbers of | 09:58:37 |
| 9 | the documents that are in the | 09:58:40 |
| 10 | binder that was provided to Mr. | 09:58:43 |
| 11 | Horton, as I said, all of which | 09:58:45 |
| 12 | have already been produced in this | 09:58:47 |
| 13 | case.  We can get that for you | 09:58:48 |
| 14 | during the deposition today, but we | 09:58:50 |
| 15 | are not going to produce the | 09:58:53 |
| 16 | documents, the binder that Mr. | 09:58:55 |
| 17 | Horton has in the building in his | 09:58:59 |
| 18 | briefcase with him. | 09:59:00 |
| 19 | MR. ANKER:  Mr. Howell, I'm | 09:59:02 |
| 20 | not going to argue with you, nor am | 09:59:04 |
| 21 | I going to bother the judge to call | 09:59:06 |
| 22 | and ask for a telephonic conference | 09:59:08 |
| 23 | at this moment.  Having said that, | 09:59:11 |
| 24 | we request that you retain the | 09:59:12 |
| 25 | documents in their current | 09:59:14 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 19

| | | |
|---|---|---|
| 1 | condition. | 09:59:15 |
| 2 | Second, I do not believe it | 09:59:16 |
| 3 | will be adequate for you to give me | 09:59:17 |
| 4 | the Bates numbers in the middle of | 09:59:19 |
| 5 | this deposition without my being | 09:59:21 |
| 6 | able to physically see them to be | 09:59:22 |
| 7 | able to question the witness about | 09:59:25 |
| 8 | them.  So if you proceed that way, | 09:59:26 |
| 9 | I want it to be clear that I'm | 09:59:27 |
| 10 | reserving the right to recall this | 09:59:29 |
| 11 | witness at a later date. | 09:59:31 |
| 12 | MR. HOWELL:  Mr. Anker, we | 09:59:33 |
| 13 | will preserve the binder as | 09:59:35 |
| 14 | requested. | 09:59:37 |
| 15 | Also, and we can speak about | 09:59:39 |
| 16 | it further on a break, but we may | 09:59:40 |
| 17 | be able to get hard copies of those | 09:59:43 |
| 18 | documents, given that we know the | 09:59:44 |
| 19 | Bates numbers and can have them for | 09:59:47 |
| 20 | you, but I just leave that as | 09:59:49 |
| 21 | another possible solution. | 09:59:52 |
| 22 | MR. ANKER:  I've stated my | 09:59:55 |
| 23 | position. | 09:59:56 |
| 24 | Q.  Mr. Horton, can you briefly | 09:59:56 |
| 25 | describe -- let me back up.  Is there any | 09:59:58 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 20

| | | |
|---|---|---|
| 1 | reason today you cannot provide full and | 10:00:00 |
| 2 | complete testimony on behalf of the | 10:00:02 |
| 3 | company with respect to the topics on | 10:00:03 |
| 4 | which you have been designated a 30(b)(6) | 10:00:05 |
| 5 | witness? | 10:00:08 |
| 6 | A.    No, sir. | 10:00:08 |
| 7 | Q.    And by the company, I mean the | 10:00:09 |
| 8 | debtors, your answer remains the same to | 10:00:12 |
| 9 | the prior question? | 10:00:16 |
| 10 | A.    Yes, sir. | 10:00:17 |
| 11 | Q.    Can you very briefly provide | 10:00:19 |
| 12 | me with your education starting with | 10:00:20 |
| 13 | college? | 10:00:23 |
| 14 | A.    I have an undergraduate degree | 10:00:23 |
| 15 | from the University of Texas at | 10:00:24 |
| 16 | Arlington, a BBA in management and | 10:00:27 |
| 17 | economics, I have a Master's degree in | 10:00:29 |
| 18 | professional accounting.  I studied at | 10:00:33 |
| 19 | both University of Texas at Dallas and | 10:00:36 |
| 20 | the University of Texas at Arlington, | 10:00:40 |
| 21 | graduating from the University of Texas | 10:00:43 |
| 22 | at Arlington, sat for the CPA and -- the | 10:00:45 |
| 23 | CPA.  I'm a certified management | 10:00:47 |
| 24 | accountant.  I'm a chartered financial | 10:00:49 |
| 25 | analyst.  I'm a certified financial | 10:00:50 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | manager. | 10:00:53 |
| 2 | Q.    Can you very briefly provide | 10:00:53 |
| 3 | me with your employment history starting | 10:00:56 |
| 4 | after you I guess got your MBA? | 10:00:58 |
| 5 | A.    I was with the company at | 10:01:03 |
| 6 | Energy Future Holdings, previously known | 10:01:06 |
| 7 | as TXU, and at that point in time I was | 10:01:10 |
| 8 | working in corporate finance, and from | 10:01:13 |
| 9 | there I worked in corporate planning and | 10:01:19 |
| 10 | public policy, and then came back to | 10:01:23 |
| 11 | corporate finance, the treasury function. | 10:01:26 |
| 12 | In '04 I was promoted to senior vice | 10:01:30 |
| 13 | president and treasurer. | 10:01:32 |
| 14 | Q.    When were you promoted to | 10:01:34 |
| 15 | senior vice president and treasurer? | 10:01:36 |
| 16 | A.    In 2004. | 10:01:37 |
| 17 | Q.    And is that the position you | 10:01:39 |
| 18 | hold today? | 10:01:40 |
| 19 | A.    Yes, sir. | 10:01:41 |
| 20 | Q.    What are your responsibilities | 10:01:41 |
| 21 | as senior vice president and treasurer? | 10:01:43 |
| 22 | A.    I'm responsible for cash | 10:01:46 |
| 23 | operations, treasury operations, debt | 10:01:47 |
| 24 | compliance, raising capital in the -- in | 10:01:50 |
| 25 | the bank markets, the debt capital | 10:01:53 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 22

| | | |
|---|---|---|
| 1 | markets, leveraged finance markets.  I'm | 10:01:58 |
| 2 | responsible for investor relations and | 10:02:01 |
| 3 | risk and insurance. | 10:02:06 |
| 4 | Q.   You indicated that you're | 10:02:07 |
| 5 | responsible for raising capital in a | 10:02:11 |
| 6 | variety of markets, including the debt | 10:02:12 |
| 7 | capital markets and leveraged finance | 10:02:15 |
| 8 | markets.  Do your responsibilities | 10:02:18 |
| 9 | include raising capital through high | 10:02:20 |
| 10 | yield note issuances? | 10:02:23 |
| 11 | A.   Yes, sir, I was including | 10:02:25 |
| 12 | that. | 10:02:26 |
| 13 | Q.   Okay.  And you would describe | 10:02:27 |
| 14 | that as leveraged finance or debt | 10:02:29 |
| 15 | capital, or both? | 10:02:31 |
| 16 | A.   High yield market. | 10:02:32 |
| 17 | Q.   Okay.  And you would | 10:02:33 |
| 18 | acknowledge, would you not, that the EFIH | 10:02:36 |
| 19 | first lien debt that was outstanding as | 10:02:39 |
| 20 | of the petition date, before it was | 10:02:41 |
| 21 | repaid was high yield debt, right? | 10:02:44 |
| 22 | MR. HOWELL:  Object to form. | 10:02:48 |
| 23 | Q.   As you use the term? | 10:02:49 |
| 24 | A.   I would think in the | 10:02:50 |
| 25 | nomenclature of the market it would be | 10:02:52 |

1    considered high yield.                          10:02:54

2         Q.    And as of the petition date          10:02:55

3    the debtors collectively had about $42          10:02:58

4    billion in funded debt, right?                  10:03:01

5         A.    Approximately.                        10:03:05

6         Q.    And was that all or                   10:03:06

7    substantially all high yield debt as used       10:03:08

8    in the market?                                  10:03:12

9         A.    I would consider that to be          10:03:12

10   leveraged loan financing and high yield,        10:03:14

11   high yield paper.                               10:03:19

12        Q.    Who do you report to, sir?           10:03:23

13        A.    Paul Keglevic, the chief             10:03:25

14   financial officer.                              10:03:27

15        Q.    And in describing your               10:03:28

16   responsibilities in terms of raising            10:03:30

17   capital, I take it that is for all of the       10:03:31

18   debtors including, but not limited to           10:03:33

19   EFIH?                                           10:03:35

20        A.    It is all the debtors               10:03:36

21   including EFIH and EFH.                          10:03:38

22        Q.    Did you play any role in the         10:03:43

23   debt issuances or exchange offers for the       10:03:46

24   EFIH first lien debt that was outstanding       10:03:49

25   as of the petition date?                        10:03:52

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 24

| | | |
|---|---|---|
| 1 | A.    Yes, sir. | 10:03:53 |
| 2 | Q.    What roles? | 10:03:54 |
| 3 | A.    I was involved in the | 10:03:56 |
| 4 | negotiations of the initial terms, the | 10:04:00 |
| 5 | tenor of the -- some of the -- some of | 10:04:05 |
| 6 | the covenants, not, certainly not all of | 10:04:10 |
| 7 | them, working with what we considered | 10:04:12 |
| 8 | anchor tenants.  When we do these type of | 10:04:17 |
| 9 | exchanges in the market we like to have | 10:04:22 |
| 10 | anchor investors to anchor the | 10:04:24 |
| 11 | transaction, see if we can't get some | 10:04:26 |
| 12 | momentum and consensus around the | 10:04:30 |
| 13 | transaction.  So ultimately that was it. | 10:04:32 |
| 14 | Q.    Now, among the 30(b)(6) topics | 10:04:36 |
| 15 | that we noticed were ones relating to the | 10:04:40 |
| 16 | negotiation, drafting and issuance of the | 10:04:46 |
| 17 | EFIH first lien debt and all the other | 10:04:49 |
| 18 | debt within the debtors' capital | 10:04:53 |
| 19 | structure.  You were not designated as | 10:04:56 |
| 20 | the 30(b)(6) witness on that topic, | 10:04:58 |
| 21 | right? | 10:05:00 |
| 22 | A.    That's correct. | 10:05:00 |
| 23 | Q.    Mr. Moldovan was, correct? | 10:05:00 |
| 24 | A.    That's correct. | 10:05:03 |
| 25 | Q.    And am I correct to assume | 10:05:03 |

| | | |
|---|---|---|
| 1 | that it's because Mr. Moldovan has | 10:05:06 |
| 2 | greater knowledge on that subject than | 10:05:08 |
| 3 | you do, or those subjects than you do? | 10:05:10 |
| 4 | A.    I think that is an area, yes, | 10:05:12 |
| 5 | that he would have greater knowledge. | 10:05:18 |
| 6 | Q.    And so if he provided us with | 10:05:19 |
| 7 | information, you have no reason as you | 10:05:23 |
| 8 | sit here today to think that information, | 10:05:25 |
| 9 | on those topics, would be unreliable, | 10:05:28 |
| 10 | right? | 10:05:30 |
| 11 | A.    I would agree with that. | 10:05:31 |
| 12 | Q.    You would agree that -- I | 10:05:32 |
| 13 | asked the question with a negative.  You | 10:05:34 |
| 14 | would agree that you have no reason to | 10:05:36 |
| 15 | think his answers would be unreliable, | 10:05:37 |
| 16 | correct? | 10:05:40 |
| 17 | A.    I do not believe his answers | 10:05:40 |
| 18 | would be unreliable. | 10:05:42 |
| 19 | Q.    Who were the anchor investors, | 10:05:43 |
| 20 | let me go back, for the EFIH first lien | 10:05:48 |
| 21 | debt? | 10:05:52 |
| 22 | MR. HOWELL:  Object to form. | 10:05:53 |
| 23 | A.    I can't -- I can't recall | 10:05:54 |
| 24 | specifically. | 10:05:56 |
| 25 | Q.    You can't recall the names of | 10:05:56 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1    any of them?                                    10:05:57

 2         A.    I did a lot of liability            10:05:59

 3    management transactions.  I cannot              10:06:03

 4    specifically recall.                            10:06:05

 5         Q.    It's fair to say that raising       10:06:06

 6    capital through these, this $42 billion         10:06:17

 7    in funded indebtedness was a significant        10:06:22

 8    part of your responsibilities at the            10:06:24

 9    company over the last several years?            10:06:26

10         A.    Yes.                                 10:06:29

11         Q.    And you're a senior executive       10:06:29

12    at the company, right?                          10:06:32

13         A.    I'm the senior vice president        10:06:33

14    and treasurer of the company.                   10:06:35

15         Q.    It's fair to say that from the       10:06:36

16    company's standpoint, the raising of all        10:06:42

17    of this capital is important to it, is it       10:06:44

18    not?                                            10:06:47

19         A.    For a company to operate its         10:06:47

20    business, having sufficient capital and         10:06:50

21    liquidity is important.                         10:06:53

22         Q.    And it's important, and it was       10:06:54

23    important to the debtors that they on an        10:06:58

24    overall basis negotiate the best terms          10:07:02

25    they could for the company, right?              10:07:05
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 27

| | | |
|---|---|---|
| 1 | A.    With any negotiations there's | 10:07:09 |
| 2 | give and takes and we got what we could | 10:07:10 |
| 3 | and we felt was reasonable in our best | 10:07:13 |
| 4 | business judgment. | 10:07:16 |
| 5 | Q.    And Mr. Moldovan told me the | 10:07:16 |
| 6 | same thing and it makes sense to me, | 10:07:18 |
| 7 | there's always gives and takes in | 10:07:19 |
| 8 | negotiation.  But at the end of the day, | 10:07:22 |
| 9 | looking at the package as a whole, let's | 10:07:24 |
| 10 | start with the EFIH first lien issuances, | 10:07:26 |
| 11 | the debtors got what they thought was the | 10:07:29 |
| 12 | best overall package they could, right? | 10:07:32 |
| 13 | MR. HOWELL:  Object to form. | 10:07:35 |
| 14 | A.    I think we got the best | 10:07:41 |
| 15 | package that we could under the terms of | 10:07:42 |
| 16 | the negotiations. | 10:07:44 |
| 17 | Q.    Okay. | 10:07:44 |
| 18 | A.    In our business judgment. | 10:07:49 |
| 19 | Q.    Fair enough.  And among the | 10:07:50 |
| 20 | terms that were important to the company, | 10:07:54 |
| 21 | you mentioned tenor, which is maturity, | 10:07:57 |
| 22 | right? | 10:07:59 |
| 23 | A.    Yes. | 10:08:00 |
| 24 | Q.    That's an important term from | 10:08:01 |
| 25 | the company's perspective, right? | 10:08:03 |

```
 1          A.    That is correct.                    10:08:05

 2          Q.    The interest rate's an              10:08:05

 3    important term, right?                          10:08:08

 4          A.    Interest rates is a key             10:08:09

 5    economic term, yes.                             10:08:12

 6          Q.    Key economic term to the            10:08:12

 7    company, to the issuer, in this case            10:08:15

 8    EFIH, right?                                    10:08:18

 9          A.    And the investor.                   10:08:19

10          Q.    You -- I appreciate it, you         10:08:22

11    anticipated my next question and that's         10:08:24

12    what I was going to ask you.  Now, at the       10:08:26

13    -- strike that.                                 10:08:37

14          And in that regard, from the              10:08:38

15    company's perspective, and I want to            10:08:41

16    break this down, I'm going to ask you           10:08:42

17    about the investor in a second, but let's       10:08:44

18    break it down, from the company's               10:08:46

19    standpoint, the ability to call the debt        10:08:49

20    potentially before it's stated maturity         10:08:51

21    is an important provision, right?               10:08:54

22          A.    It can be important.                10:08:56

23          Q.    And from the investors'             10:08:57

24    standpoint, as you understand it, having        10:09:02

25    some form of call protection is important       10:09:04
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | as well, right? | 10:09:06 |
| 2 | A.    Yes, they -- call protection | 10:09:08 |
| 3 | for the investors is oftentimes something | 10:09:12 |
| 4 | they desire. | 10:09:15 |
| 5 | Q.    Now, at the outset of this | 10:09:18 |
| 6 | bankruptcy case, I think it was filed | 10:09:21 |
| 7 | April 29, 2014; is that right, sir? | 10:09:23 |
| 8 | A.    April 29th, 2014, yes, sir. | 10:09:26 |
| 9 | Q.    At the outset of this | 10:09:28 |
| 10 | bankruptcy there was about 4 billion in | 10:09:31 |
| 11 | EFIH first lien debt outstanding, right? | 10:09:35 |
| 12 | A.    Approximately 4 billion, yes. | 10:09:37 |
| 13 | Q.    And on the first day of the | 10:09:39 |
| 14 | case EFIH filed a series of motions, did | 10:09:41 |
| 15 | it not? | 10:09:43 |
| 16 | A.    It did. | 10:09:44 |
| 17 | Q.    And I take it since they were | 10:09:45 |
| 18 | filed on the first day of the case, these | 10:09:48 |
| 19 | were time-sensitive matters, right? | 10:09:50 |
| 20 | A.    One would suspect so.  I don't | 10:09:54 |
| 21 | -- I'm not a bankruptcy lawyer, so | 10:09:56 |
| 22 | whether that was time sensitive or not, I | 10:10:00 |
| 23 | can't opine on that.  Based on what you | 10:10:03 |
| 24 | said, it -- | 10:10:07 |
| 25 | Q.    Mr. Keglevic, let me rephrase | 10:10:09 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | my question. | 10:10:12 |
| 2 | A.    Mr. Horton. | 10:10:12 |
| 3 | Q.    I'm sorry.  Let me tell you | 10:10:14 |
| 4 | right now I'm hideously bad at names and | 10:10:16 |
| 5 | I apologize. | 10:10:18 |
| 6 | A.    That's all right, so am I. | 10:10:19 |
| 7 | Q.    Although I will probably not | 10:10:21 |
| 8 | butcher the pronunciation of Horton | 10:10:23 |
| 9 | during this deposition. | 10:10:25 |
| 10 | A.    Understood. | 10:10:26 |
| 11 | Q.    Mr. Horton, I will ask you | 10:10:27 |
| 12 | questions and I want your understanding, | 10:10:28 |
| 13 | and to the extent you're a 30(b)(6) | 10:10:30 |
| 14 | witness, the company's understanding. | 10:10:31 |
| 15 | Your understanding, I'll make this | 10:10:33 |
| 16 | personal, the motions that the debtors | 10:10:35 |
| 17 | filed on the first day were time | 10:10:38 |
| 18 | sensitive matters, right? | 10:10:40 |
| 19 | A.    Again, I'm going to repeat. | 10:10:42 |
| 20 | I'm not a bankruptcy lawyer, I have never | 10:10:44 |
| 21 | filed a motion in my entire career up to | 10:10:49 |
| 22 | that point, and I am going to rely upon | 10:10:51 |
| 23 | the judgment of my bankruptcy attorneys | 10:10:54 |
| 24 | that they were time sensitive or the | 10:10:56 |
| 25 | appropriate time to file those motions, | 10:10:59 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | and I don't mean to be disrespectful to | 10:11:01 |
| 2 | you, but it's -- | 10:11:03 |
| 3 | Q.    That's fair. | 10:11:04 |
| 4 | A.    I'm not an expert in this | 10:11:05 |
| 5 | area. | 10:11:07 |
| 6 | Q.    One of the motions the debtors | 10:11:07 |
| 7 | filed on the first day was a motion for a | 10:11:09 |
| 8 | first lien debtor-in-possession | 10:11:11 |
| 9 | financing, right? | 10:11:14 |
| 10 | A.    I'm familiar with that, yes, | 10:11:15 |
| 11 | sir. | 10:11:16 |
| 12 | Q.    And that was filed the first | 10:11:16 |
| 13 | day, right? | 10:11:17 |
| 14 | A.    As I recall, yes. | 10:11:18 |
| 15 | Q.    And the debtors, I understand | 10:11:23 |
| 16 | your counsel reviewed that, filed that | 10:11:26 |
| 17 | motion, but the company and its | 10:11:28 |
| 18 | executives reviewed it before it was | 10:11:29 |
| 19 | filed, right? | 10:11:30 |
| 20 | A.    Correct. | 10:11:31 |
| 21 | Q.    Did you review it personally? | 10:11:31 |
| 22 | A.    Yes, I did. | 10:11:33 |
| 23 | Q.    And with this motion as with | 10:11:33 |
| 24 | every other motion filed in the case, if | 10:11:36 |
| 25 | the debtors believed that there was any | 10:11:38 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | inaccuracy in the motion you wouldn't | 10:11:40 |
| 2 | simply let your counsel file it, right? | 10:11:42 |
| 3 | A.    Yes, that's correct. | 10:11:44 |
| 4 | Q.    So the debtors believed the | 10:11:45 |
| 5 | motion seeking first day relief to | 10:11:47 |
| 6 | provide DIP financing was accurate, | 10:11:51 |
| 7 | right? | 10:11:54 |
| 8 | A.    As far as I know, yes. | 10:11:54 |
| 9 | Q.    And what was the relief sought | 10:11:56 |
| 10 | in that motion? | 10:11:58 |
| 11 | A.    I'd have to have the motion in | 10:11:59 |
| 12 | front of me and review it.  When you say | 10:12:02 |
| 13 | relief, it's a very technical term from | 10:12:06 |
| 14 | bankruptcy. | 10:12:09 |
| 15 | Q.    Okay, let me -- let me reframe | 10:12:09 |
| 16 | it.  I'll ask you a leading question, and | 10:12:12 |
| 17 | I'm not looking for precision.  The | 10:12:14 |
| 18 | document will speak for itself. | 10:12:15 |
| 19 | That motion sought permission | 10:12:18 |
| 20 | to refinance all of the existing first | 10:12:20 |
| 21 | lien debt, right? | 10:12:24 |
| 22 | MR. HOWELL:  Object to form. | 10:12:27 |
| 23 | A.    Again, I don't have the | 10:12:28 |
| 24 | document in front of me.  I would need | 10:12:29 |
| 25 | time to review the document once again. | 10:12:31 |

| | | |
|---|---|---|
| 1 | It's a very complex document.  I would | 10:12:33 |
| 2 | suggest that the document speaks for | 10:12:35 |
| 3 | itself, but if that's the term you would | 10:12:38 |
| 4 | like to use, that's fine. | 10:12:40 |
| 5 | MR. ANKER:  Let's mark as | 10:12:43 |
| 6 | Exhibit 3 the motion filed by the | 10:12:44 |
| 7 | EFIH debtors, document 74 on the | 10:12:46 |
| 8 | docket, 96 pages. | 10:12:51 |
| 9 | (Horton Exhibit 3 for | 10:12:53 |
| 10 | identification, motion filed by the | 10:12:45 |
| 11 | EFIH debtors, document 74 on the | 10:12:46 |
| 12 | docket, 96 pages.) | 10:12:51 |
| 13 | Q.    Mr. Horton, I'm not going to | 10:12:54 |
| 14 | ask you to review it page by page, but do | 10:12:55 |
| 15 | you recognize Exhibit 3? | 10:12:58 |
| 16 | A.    Yes. | 10:13:00 |
| 17 | Q.    What is it, sir? | 10:13:24 |
| 18 | A.    It is a motion -- motion for a | 10:13:25 |
| 19 | re- -- it says here in D, authorization | 10:13:32 |
| 20 | of EFIH first lien debt refinancing. | 10:13:34 |
| 21 | Q.    And so one of the -- I | 10:13:38 |
| 22 | understand you're not a bankruptcy lawyer | 10:13:40 |
| 23 | and I'm not asking you, throughout this | 10:13:42 |
| 24 | deposition I'm never going to ask you for | 10:13:44 |
| 25 | a legal interpretation, the law is what | 10:13:46 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | the law is.  I want your understanding | 10:13:48 |
| 2 | and the company's from a business | 10:13:49 |
| 3 | standpoint. | 10:13:50 |
| 4 |     A.    Sure. | 10:13:51 |
| 5 |     Q.    From a business standpoint, | 10:13:51 |
| 6 | the company was seeking on the first day | 10:13:53 |
| 7 | of this case to refinance its first lien | 10:13:54 |
| 8 | EFIH debt, right? | 10:13:58 |
| 9 |     A.    We were seeking to finance, we | 10:13:59 |
| 10 | were seeking financing to, and to | 10:14:05 |
| 11 | refinance the first lien debt because it | 10:14:09 |
| 12 | was payable, due and payable. | 10:14:10 |
| 13 |     Q.    But there was lots of other | 10:14:15 |
| 14 | debt that was due and payable.  The | 10:14:16 |
| 15 | second lien EFIH debt was due and | 10:14:18 |
| 16 | payable, you didn't seek that relief the | 10:14:21 |
| 17 | first day, did you? | 10:14:23 |
| 18 |     A.    I don't know the specific date | 10:14:23 |
| 19 | that we did seek that, but we were in | 10:14:25 |
| 20 | process as you know. | 10:14:29 |
| 21 |     Q.    The first lien | 10:14:30 |
| 22 | debtor-in-possession financing was about | 10:14:33 |
| 23 | $5.4 billion, right? | 10:14:35 |
| 24 |     A.    Approximately, yes. | 10:14:38 |
| 25 |     Q.    And the existing first lien | 10:14:39 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | debt was less than that, about 4 billion | 10:14:41 |
| 2 | you testified, correct? | 10:14:43 |
| 3 | A.   It's approximately 4 billion, | 10:14:44 |
| 4 | yes, sir. | 10:14:47 |
| 5 | Q.   And the debtors did file a | 10:14:47 |
| 6 | motion to refinance their second lien | 10:14:50 |
| 7 | debt and the expectation there was that | 10:14:53 |
| 8 | some of that second lien debt upon | 10:14:55 |
| 9 | emergence from bankruptcy would become | 10:14:57 |
| 10 | equity in the reorganized debtor, right? | 10:14:59 |
| 11 | A.   Some of the second lien debt | 10:15:02 |
| 12 | would convert to equity. | 10:15:04 |
| 13 | Q.   But that wasn't the plan for | 10:15:05 |
| 14 | the first lien DIP, was it? | 10:15:07 |
| 15 | A.   That's correct. | 10:15:10 |
| 16 | Q.   The plan for the first lien | 10:15:10 |
| 17 | DIP was simply to repay it on emergence | 10:15:12 |
| 18 | from bankruptcy, right? | 10:15:15 |
| 19 | A.   That's correct. | 10:15:17 |
| 20 | Q.   And so the reason for the | 10:15:17 |
| 21 | refinancing of the first lien debt was | 10:15:22 |
| 22 | not to reduce the overall principal | 10:15:25 |
| 23 | amount of first lien debt of the company, | 10:15:27 |
| 24 | was it, of EFIH, was it? | 10:15:30 |
| 25 | A.   Upon emergence, is that what | 10:15:33 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 36

| | | |
|---|---|---|
| 1 | you're referring to? | 10:15:35 |
| 2 | Q. Yes, sir. | 10:15:36 |
| 3 | A. I would think at that moment | 10:15:36 |
| 4 | in time that's correct. | 10:15:38 |
| 5 | Q. Okay. So -- | 10:15:39 |
| 6 | A. Obviously markets change, | 10:15:41 |
| 7 | situations change. At that moment in | 10:15:44 |
| 8 | time, you know, our thoughts were we | 10:15:46 |
| 9 | would refinance 5.4 billion of the DIP | 10:15:49 |
| 10 | financing. | 10:15:55 |
| 11 | Q. So you would end up with more | 10:15:55 |
| 12 | first lien debt, 5.4 compared to what you | 10:15:57 |
| 13 | went into the bankruptcy with, only 4 | 10:16:00 |
| 14 | billion, right? | 10:16:02 |
| 15 | A. That's correct. | 10:16:03 |
| 16 | Q. And so if the rationale for | 10:16:03 |
| 17 | this transaction was not to reduce the | 10:16:07 |
| 18 | principal amount of the debt, what was | 10:16:11 |
| 19 | the rationale for the transaction? | 10:16:12 |
| 20 | A. The rationale for the | 10:16:15 |
| 21 | transaction was to pay the first lien | 10:16:16 |
| 22 | principal and accrued interest and we | 10:16:23 |
| 23 | expected to have some settlement amounts | 10:16:28 |
| 24 | and the first lien debt that we had an | 10:16:37 |
| 25 | additional amount of 500 million that we | 10:16:40 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | were going to use to pay off some of the | 10:16:43 |
| 2 | second lien debt, and we, we had cash | 10:16:47 |
| 3 | needs of roughly 500 million that we | 10:16:49 |
| 4 | expected to retain on the balance sheet. | 10:16:52 |
| 5 | Q.    Well let me come, let me come | 10:16:54 |
| 6 | at it a different way.  The first lien | 10:16:58 |
| 7 | debt as of the petition date, much of it | 10:17:00 |
| 8 | bore an interest rate of 10 percent, | 10:17:02 |
| 9 | right? | 10:17:04 |
| 10 | A.    That's correct. | 10:17:05 |
| 11 | Q.    And some of it bore, 500 | 10:17:06 |
| 12 | million, approximately, of the 4 billion | 10:17:09 |
| 13 | bore an interest rate of 6-7/8, right? | 10:17:12 |
| 14 | A.    Yes. | 10:17:15 |
| 15 | Q.    What was the interest rate on | 10:17:15 |
| 16 | the DIP financing? | 10:17:17 |
| 17 | A.    LIBOR plus 325. | 10:17:18 |
| 18 | Q.    Which translated as of the -- | 10:17:20 |
| 19 | A.    With a one point LIBOR floor, | 10:17:24 |
| 20 | so it was 4.25. | 10:17:26 |
| 21 | Q.    I actually think at one point | 10:17:28 |
| 22 | you said 4.24, but I'll take 4.25.  4.25 | 10:17:30 |
| 23 | is dramatically less than 10 percent, is | 10:17:34 |
| 24 | it not, sir? | 10:17:37 |
| 25 | A.    Yes. | 10:17:38 |

| | | |
|---|---|---|
| 1 | MR. HOWELL:  Object to form. | 10:17:39 |
| 2 | Q.    Okay.  And it's fair to say, | 10:17:40 |
| 3 | isn't it, Mr. Horton, that a principal | 10:17:42 |
| 4 | reason for the transaction was to lower | 10:17:45 |
| 5 | the going forward interest cost of EFIH? | 10:17:48 |
| 6 | A.    I would say that the debt was | 10:17:54 |
| 7 | due and payable.  I looked for the | 10:17:56 |
| 8 | cheapest form, least expensive form of | 10:17:58 |
| 9 | paying that obligation. | 10:18:03 |
| 10 | Q.    Let me ask my question again | 10:18:07 |
| 11 | and if you can give me a yes or no answer | 10:18:13 |
| 12 | I'd appreciate it. | 10:18:15 |
| 13 | Was a principal reason for the | 10:18:16 |
| 14 | transaction to reduce the financing costs | 10:18:19 |
| 15 | of EFIH? | 10:18:25 |
| 16 | MR. HOWELL:  Object to form. | 10:18:27 |
| 17 | A.    The primary reason was that | 10:18:28 |
| 18 | the debt was due and payable and I | 10:18:30 |
| 19 | achieved getting a refinancing at a lower | 10:18:35 |
| 20 | cost than the 10 percent. | 10:18:40 |
| 21 | Q.    So the principal reason was | 10:18:43 |
| 22 | that the debt was due and payable. | 10:18:47 |
| 23 | Wasn't there an acceleration of all the | 10:18:51 |
| 24 | other $42 billion, all the remaining 38 | 10:18:53 |
| 25 | of the 48 billion -- $42 billion in the | 10:18:56 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | debtors' capital structures on the | 10:19:01 |
| 2 | petition date? | 10:19:03 |
| 3 | A.    I'd have to look through all | 10:19:03 |
| 4 | the indentures, but, you know, | 10:19:05 |
| 5 | approximately yes. | 10:19:10 |
| 6 | Q.    And let's put the second lien | 10:19:10 |
| 7 | aside.  The debtors didn't file a motion | 10:19:14 |
| 8 | at the outset of the bankruptcy to | 10:19:17 |
| 9 | refinance all of their other debt, did | 10:19:18 |
| 10 | they? | 10:19:20 |
| 11 | A.    We did not have the ability. | 10:19:22 |
| 12 | Q.    Debtors didn't file a motion | 10:19:25 |
| 13 | to refinance their PIK debt, did they, | 10:19:27 |
| 14 | the EFIH PIK debt, right? | 10:19:31 |
| 15 | A.    I think that was part of the | 10:19:35 |
| 16 | RSA.  I think all of this was in concert | 10:19:37 |
| 17 | with an RSA. | 10:19:40 |
| 18 | Q.    Let's turn to the motion.  Can | 10:19:47 |
| 19 | I turn you to paragraph 4.  Tell me when | 10:19:48 |
| 20 | you're there, sir.  Are you there, Mr. | 10:20:00 |
| 21 | Horton? | 10:20:00 |
| 22 | A.    Are you on page 4, paragraph | 10:20:07 |
| 23 | 4? | 10:20:09 |
| 24 | Q.    Yes, I am.  Correct, sir.  Are | 10:20:09 |
| 25 | you there? | 10:20:12 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 40

| | | |
|---|---|---|
| 1 | A.    I am there. | 10:20:12 |
| 2 | Q.    Now you'll see the second | 10:20:13 |
| 3 | sentence says, and I quote, the relief | 10:20:16 |
| 4 | that the EFIH debtors seek in this motion | 10:20:20 |
| 5 | is necessary to allow the EFIH debtors to | 10:20:23 |
| 6 | maximize the value of the estates, of | 10:20:26 |
| 7 | their estates.  Was that statement true? | 10:20:29 |
| 8 | A.    I would say yes. | 10:20:32 |
| 9 | Q.    Okay.  And then if you go on a | 10:20:37 |
| 10 | few sentences it says the "EFIH debtors, | 10:20:41 |
| 11 | pursuant to a final order, seek to take | 10:20:44 |
| 12 | advantage of highly favorable debt market | 10:20:46 |
| 13 | conditions to refinance the EFIH first | 10:20:49 |
| 14 | lien notes saving," defined as the EFIH | 10:20:52 |
| 15 | first lien refinancing, "saving an | 10:20:56 |
| 16 | estimated $13 million in interest per | 10:20:59 |
| 17 | month," and then the words per month are | 10:21:01 |
| 18 | in italics and bold. | 10:21:04 |
| 19 | Was that statement true and | 10:21:06 |
| 20 | correct? | 10:21:07 |
| 21 | A.    Approximately, yes. | 10:21:07 |
| 22 | Q.    What were the highly favorable | 10:21:08 |
| 23 | debt market conditions that are | 10:21:11 |
| 24 | referenced in paragraph 4? | 10:21:12 |
| 25 | A.    The ability for the company on | 10:21:18 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | a -- on a first lien superpriority basis | 10:21:19 |
| 2 | to issue 5.4 billion of debt at LIBOR | 10:21:23 |
| 3 | plus 325. | 10:21:30 |
| 4 | Q.    You were able to borrow at | 10:21:35 |
| 5 | approximately 4.25 percent refinancing | 10:21:36 |
| 6 | debt that was largely at 10 percent, | 10:21:40 |
| 7 | right? | 10:21:42 |
| 8 | A.    That's correct. | 10:21:42 |
| 9 | Q.    And as a result of that | 10:21:43 |
| 10 | savings of interest, the refinancing was, | 10:21:47 |
| 11 | in the debtors' judgment, in the best | 10:21:50 |
| 12 | interest of their estates, right? | 10:21:54 |
| 13 | A.    Yes. | 10:21:55 |
| 14 | Q.    And that interest saving | 10:21:55 |
| 15 | speaks for itself, right? | 10:21:59 |
| 16 | MR. HOWELL:  Object to form. | 10:22:02 |
| 17 | A.    I'm sorry, would you mind | 10:22:03 |
| 18 | restating the question. | 10:22:04 |
| 19 | Q.    Sure.  Why don't you take a | 10:22:05 |
| 20 | look at paragraph 82 of the motion that's | 10:22:07 |
| 21 | in front of you, page 48. | 10:22:08 |
| 22 | A.    Page 48? | 10:22:18 |
| 23 | Q.    Page 48, yes. | 10:22:19 |
| 24 | A.    Paragraph 42? | 10:22:23 |
| 25 | Q.    Yes. | 10:22:24 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 42

| | | |
|---|---|---|
| 1 | A.    Thank you, sir. | 10:22:25 |
| 2 | Q.    Are you there? | 10:22:31 |
| 3 | A.    I am. | 10:22:31 |
| 4 | Q.    You see where it says | 10:22:32 |
| 5 | "interest savings of up to $13 million | 10:22:33 |
| 6 | per month," and again, per month is in | 10:22:36 |
| 7 | italics and bold, "speaks for itself"? | 10:22:39 |
| 8 | Did I read that correctly? | 10:22:41 |
| 9 | A.    I think you did read that | 10:22:42 |
| 10 | correctly. | 10:22:43 |
| 11 | Q.    And that's in the debtors' own | 10:22:44 |
| 12 | motion, right? | 10:22:46 |
| 13 | A.    That's correct. | 10:22:46 |
| 14 | Q.    And what the debtors were | 10:22:46 |
| 15 | trying to convey there was that there was | 10:22:48 |
| 16 | a significant interest savings in doing | 10:22:50 |
| 17 | the first lien DIP, right? | 10:22:52 |
| 18 | A.    I would characterize it | 10:22:55 |
| 19 | slightly differently. | 10:22:57 |
| 20 | Q.    How would you characterize it? | 10:22:58 |
| 21 | A.    I would say that the debt was | 10:22:59 |
| 22 | due and payable and that we found a way | 10:23:03 |
| 23 | to pay that debt that was due and payable | 10:23:07 |
| 24 | with the benefit to the estate of $13 | 10:23:12 |
| 25 | million per month.  I wouldn't suspect | 10:23:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | that it would be a benefit for me to pay | 10:23:20 |
| 2 | debt that is due and payable with 15 | 10:23:24 |
| 3 | percent money. | 10:23:28 |
| 4 | Q.    Right.  So had the -- had you | 10:23:29 |
| 5 | gone to the market, that makes total | 10:23:32 |
| 6 | sense to me.  Had you gone to the market | 10:23:33 |
| 7 | and the only financing you could have | 10:23:36 |
| 8 | obtained to take out the first lien debt | 10:23:37 |
| 9 | at the outset of this case was at higher | 10:23:40 |
| 10 | interest rates than in fact the EFIH | 10:23:43 |
| 11 | first lien debt, the debtors wouldn't | 10:23:46 |
| 12 | have filed the motion on the first day of | 10:23:49 |
| 13 | the case, right? | 10:23:50 |
| 14 | MR. HOWELL:  Object to form. | 10:23:51 |
| 15 | A.    I'm not certain.  I haven't | 10:23:52 |
| 16 | done that analysis. | 10:23:54 |
| 17 | Q.    Mr. Horton, use your common | 10:23:55 |
| 18 | business sense with me, all right.  If | 10:23:58 |
| 19 | the debtors had only been able to | 10:24:01 |
| 20 | refinance at a higher cost of interest, | 10:24:03 |
| 21 | do you really think they would have filed | 10:24:05 |
| 22 | the motion? | 10:24:07 |
| 23 | A.    It would depend on all the | 10:24:08 |
| 24 | facts and circumstances. | 10:24:10 |
| 25 | Q.    You can't answer that question | 10:24:11 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 44

| | | |
|---|---|---|
| 1 | with a straight yes or no; is that right? | 10:24:13 |
| 2 | A.    In my capacity as the | 10:24:16 |
| 3 | treasurer I need to know what's going on | 10:24:19 |
| 4 | in the entire capital structure, what | 10:24:21 |
| 5 | that actually means. | 10:24:24 |
| 6 | Q.    In fact, I am right though, | 10:24:25 |
| 7 | sir, that the debtors in connection with | 10:24:30 |
| 8 | this motion repeatedly underscored and | 10:24:32 |
| 9 | emphasized the interest savings that they | 10:24:34 |
| 10 | were going to achieve, didn't they? | 10:24:37 |
| 11 | A.    It is stated in the motion | 10:24:39 |
| 12 | that there was interest savings.  The | 10:24:42 |
| 13 | interest savings that we've discussed is | 10:24:45 |
| 14 | $13 million per month, approximately. | 10:24:48 |
| 15 | Q.    Which is a significant amount | 10:24:51 |
| 16 | of money, right?  Even for a company like | 10:24:53 |
| 17 | EFIH it's a significant amount of money, | 10:24:57 |
| 18 | right? | 10:24:58 |
| 19 | A.    It is -- yeah, I would say it | 10:25:01 |
| 20 | was a significant amount of money. | 10:25:03 |
| 21 | Q.    And the debtors underscored | 10:25:04 |
| 22 | that saving to Judge Sontchi, did they | 10:25:08 |
| 23 | not? | 10:25:11 |
| 24 | A.    It's in the motion. | 10:25:12 |
| 25 | Q.    It was also in Mr. Keglevic's | 10:25:12 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 45

| | | |
|---|---|---|
| 1 | affidavit, was it not? | 10:25:16 |
| 2 | A.    I'm not sure if it's in Mr. | 10:25:18 |
| 3 | Keglevic's affidavit, or not. | 10:25:27 |
| 4 | Q.    Okay.  You're aware he gave a | 10:25:30 |
| 5 | first day affidavit in this case, are you | 10:25:32 |
| 6 | not? | |
| 7 | MR. ANKER:  Let's mark this as | |
| 8 | Exhibit 4. | |
| 9 | (Horton Exhibit 4 for | |
| 10 | identification, Mr. Keglevic's | |
| 11 | first day declaration.) | |
| 12 | Q.    Can you identify this | |
| 13 | document? | 10:25:35 |
| 14 | A.    A first day declaration. | 10:25:35 |
| 15 | Q.    A first day declaration, | 10:25:37 |
| 16 | that's right. | 10:25:39 |
| 17 | A.    I know a couple of bankruptcy | 10:25:40 |
| 18 | terms, not too many. | 10:25:42 |
| 19 | Q.    Do you have it, sir? | 10:25:44 |
| 20 | A.    I do. | 10:25:44 |
| 21 | Q.    Can you turn to paragraph 172? | 10:25:45 |
| 22 | A.    What page would that be on, do | 10:25:51 |
| 23 | you know, specifically? | 10:25:52 |
| 24 | Q.    I'll let you know in a second. | 10:25:53 |
| 25 | It's on page 78. | 10:25:59 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | A.    Thank you. | 10:26:02 |
| 2 | Q.    Are you there? | 10:26:02 |
| 3 | A.    I'm on page 78.  What | 10:26:18 |
| 4 | paragraph, please? | 10:26:20 |
| 5 | Q.    172.  Do you see the second | 10:26:21 |
| 6 | sentence?  Let me read it into the record | 10:26:23 |
| 7 | and you can tell me if I'm reading it | 10:26:25 |
| 8 | right.  The EFIH -- | 10:26:27 |
| 9 | A.    I'm sorry, I'm on a different, | 10:26:30 |
| 10 | I'm not sure I'm on the same page as you, | 10:26:30 |
| 11 | sir.  I'm on page 78 and that paragraph | 10:26:32 |
| 12 | is not on it. | 10:26:35 |
| 13 | Q.    Could I have the document from | 10:26:36 |
| 14 | you.  I think there's a bunch of | 10:26:37 |
| 15 | attachments.  Maybe I can get you the | 10:26:39 |
| 16 | right page. | 10:26:41 |
| 17 | A.    Awesome. | 10:26:42 |
| 18 | Q.    Now, are you looking at | 10:27:05 |
| 19 | paragraph 172, Mr. Horton, of Mr. | 10:27:06 |
| 20 | Keglevic's declaration? | 10:27:10 |
| 21 | A.    Yes.  Would you give me a | 10:27:10 |
| 22 | moment to read it, please. | 10:27:12 |
| 23 | Q.    Sure. | 10:27:14 |
| 24 | A.    Okay. | 10:27:37 |
| 25 | Q.    So Mr. Keglevic said, and I | 10:27:38 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | quote, "the EFIH first lien refinancing | 10:27:41 |
| 2 | will save EFIH approximately 13 million | 10:27:44 |
| 3 | per month in interest expense," did he | 10:27:47 |
| 4 | not? | 10:27:49 |
| 5 | A.    I did. | 10:27:49 |
| 6 | Q.    And he thought that was an | 10:27:50 |
| 7 | important enough point to make in his | 10:27:51 |
| 8 | first day declaration to the court, | 10:27:53 |
| 9 | correct? | 10:27:55 |
| 10 | A.    That's correct. | 10:27:55 |
| 11 | Q.    And you know, you're familiar | 10:27:56 |
| 12 | with a Mr. Goldstein? | 10:28:00 |
| 13 | A.    With Evercore, sir? | 10:28:05 |
| 14 | Q.    Yes. | 10:28:07 |
| 15 | A.    Yes, sir. | 10:28:09 |
| 16 | Q.    And who is Mr. Goldstein? | 10:28:09 |
| 17 | A.    Mr. Goldstein works for | 10:28:11 |
| 18 | Evercore and he's one of the financial | 10:28:14 |
| 19 | advisors. | 10:28:16 |
| 20 | Q.    One of the financial advisors | 10:28:17 |
| 21 | for the debtors in connection with this | 10:28:18 |
| 22 | Chapter 11, set of Chapter 11 cases, | 10:28:21 |
| 23 | right? | 10:28:22 |
| 24 | A.    That's right. | 10:28:22 |
| 25 | Q.    And Mr. Goldstein put in a | 10:28:26 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | declaration in connection with the first | 10:28:29 |
| 2 | day affidavit -- the first day motion, | 10:28:30 |
| 3 | first day motions, did he not? | 10:28:32 |
| 4 | A.    That's correct. | 10:28:34 |
| 5 | Q.    And he put one in in | 10:28:34 |
| 6 | connection with the first day motion for | 10:28:35 |
| 7 | approval of the EFIH first lien DIP, did | 10:28:37 |
| 8 | he not? | 10:28:40 |
| 9 | A.    Again, I need to look back. | 10:28:40 |
| 10 | I'm not sure what exactly Mr. Goldstein | 10:28:42 |
| 11 | filed as a declaration.  I need to see | 10:28:45 |
| 12 | those documents. | 10:28:48 |
| 13 | MR. ANKER:  Let's go off the | 10:29:25 |
| 14 | record one second. | 10:29:26 |
| 15 | THE VIDEOGRAPHER:  One moment, | 10:29:28 |
| 16 | watch your microphones.  The time | 10:29:28 |
| 17 | is 10:29 a.m., we're now off the | 10:29:30 |
| 18 | record. | 10:29:32 |
| 19 | (A recess was taken.) | 10:29:44 |
| 20 | THE VIDEOGRAPHER:  The time is | 10:38:36 |
| 21 | 10:38 a.m., back on the record. | 10:38:49 |
| 22 | (Horton Exhibit 5 for | 10:38:49 |
| 23 | identification, declaration of | 10:38:49 |
| 24 | Stephen Goldstein.) | 10:38:52 |
| 25 | Q.    Before we broke, Mr. Horton, I | 10:38:52 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | was asking you whether Mr. Goldstein put | 10:38:54 |
| 2 | in a declaration in support of the DIP | 10:38:57 |
| 3 | motion and I've now marked as Exhibit 5 a | 10:39:02 |
| 4 | document, I won't read the whole title, | 10:39:05 |
| 5 | but it's document 74 on the docket, | 10:39:07 |
| 6 | declaration of Stephen Goldstein.  Do you | 10:39:10 |
| 7 | recognize this document, Mr. Horton? | 10:39:17 |
| 8 | A.    Yes, I do. | 10:39:18 |
| 9 | Q.    And this is a declaration that | 10:39:19 |
| 10 | the debtors submitted from Mr. Goldstein | 10:39:20 |
| 11 | in support of the relief they were | 10:39:23 |
| 12 | seeking in their motion to refinance | 10:39:25 |
| 13 | their first lien debt, right? | 10:39:29 |
| 14 | A.    It appears that way, yes. | 10:39:34 |
| 15 | Q.    If you turn, Mr. Horton, to | 10:39:40 |
| 16 | paragraph 8, and I'm not going to read | 10:39:43 |
| 17 | all the words verbatim, but it's on page | 10:39:50 |
| 18 | 4. | 10:39:53 |
| 19 | A.    Oh, paragraph 8, I'm sorry. | 10:39:54 |
| 20 | Q.    Paragraph 8.  Are you with me? | 10:39:56 |
| 21 | A.    Yes. | 10:39:58 |
| 22 | Q.    Mr. Goldstein notes, does he | 10:39:59 |
| 23 | not, that the debtors currently have 3.95 | 10:40:05 |
| 24 | billion of first lien notes outstanding, | 10:40:08 |
| 25 | right? | 10:40:10 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 50

| | | |
|---|---|---|
| 1 | A.    Paragraph 4? | 10:40:11 |
| 2 | MR. HOWELL:  I'm sorry, I have | 10:40:12 |
| 3 | the wrong document. | 10:40:13 |
| 4 | Q.    Paragraph 8, page 4. | 10:40:14 |
| 5 | MR. HOROWITZ:  Right before | 10:40:17 |
| 6 | the break you circulated another | 10:40:18 |
| 7 | version which you said was marked | 10:40:20 |
| 8 | as Exhibit 5 and I think you've | 10:40:22 |
| 9 | withdrawn. | 10:40:24 |
| 10 | MR. ANKER:  Let me correct the | 10:40:25 |
| 11 | record.  Exhibit 5 is entitled | 10:40:27 |
| 12 | declaration, not supplemental | 10:40:30 |
| 13 | declaration of Stephen Goldstein. | 10:40:32 |
| 14 | It is document number 74 on the | 10:40:33 |
| 15 | docket of these bankruptcy cases. | 10:40:37 |
| 16 | Q.    With that clarification, can | 10:40:42 |
| 17 | you, Mr. Horton, turn to page 4, | 10:40:44 |
| 18 | paragraph 8 of Exhibit number 5. | 10:40:46 |
| 19 | A.    Yes. | 10:40:52 |
| 20 | Q.    Have you done so? | 10:40:53 |
| 21 | A.    I have done so, thank you. | 10:40:53 |
| 22 | Q.    Am I right Mr. Goldstein | 10:40:55 |
| 23 | recites there that the debtors currently | 10:40:57 |
| 24 | have 3.985 billion of first lien notes | 10:41:00 |
| 25 | outstanding, right? | 10:41:03 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | A.    That's correct. | 10:41:04 |
| 2 | Q.    And he then notes the interest | 10:41:04 |
| 3 | rate? | 10:41:07 |
| 4 | A.    Would it be okay if I took a | 10:41:07 |
| 5 | moment just to read that paragraph in | 10:41:09 |
| 6 | total. | 10:41:10 |
| 7 | Q.    Sure, sure. | 10:41:11 |
| 8 | A.    Then it would be easier for me | 10:41:11 |
| 9 | to respond to your questions.  I do want | 10:41:13 |
| 10 | to try to be responsive. | 10:41:15 |
| 11 | Q.    I appreciate that. | 10:41:17 |
| 12 | A.    Yes, sir, I do see that.  I've | 10:41:29 |
| 13 | read it. | 10:41:31 |
| 14 | Q.    And in substance, the document | 10:41:31 |
| 15 | will speak for itself, I'm not trying to | 10:41:32 |
| 16 | trick you, Mr. Horton, but in substance | 10:41:34 |
| 17 | what he's saying in that paragraph is | 10:41:37 |
| 18 | EFIH is going to be able to refinance, | 10:41:41 |
| 19 | quote, high interest EFIH first lien | 10:41:44 |
| 20 | notes at much lower cost, resulting in | 10:41:47 |
| 21 | substantial savings to the debtors of | 10:41:50 |
| 22 | approximately 13 million per month, again | 10:41:52 |
| 23 | italicized and bold, during the course of | 10:41:56 |
| 24 | these Chapter 11 cases, right? | 10:42:00 |
| 25 | A.    That is what it says. | 10:42:01 |

| | | |
|---|---|---|
| 1 | Q.    And the debtors authorized the | 10:42:02 |
| 2 | filing of this declaration, right? | 10:42:06 |
| 3 | A.    That's correct. | 10:42:08 |
| 4 | Q.    Because the debtors thought it | 10:42:08 |
| 5 | was helpful for the court to understand | 10:42:11 |
| 6 | the cost savings, right? | 10:42:13 |
| 7 | A.    I think -- I don't know | 10:42:14 |
| 8 | specifically -- I don't know if I'd | 10:42:17 |
| 9 | characterize it as that, but certainly it | 10:42:18 |
| 10 | has been stated over and over that | 10:42:22 |
| 11 | there's $13 million of savings. | 10:42:24 |
| 12 | Q.    Right. | 10:42:27 |
| 13 | A.    Which is a benefit to the | 10:42:27 |
| 14 | enterprise in terms of savings of | 10:42:31 |
| 15 | interest cost, so. | 10:42:37 |
| 16 | Q.    And it's highly favorable | 10:42:38 |
| 17 | financing, the new DIP financing, right? | 10:42:40 |
| 18 | A.    I don't know, again, you use | 10:42:43 |
| 19 | the term highly favorable.  It's market | 10:42:45 |
| 20 | terms.  We negotiated it.  It's lower | 10:42:47 |
| 21 | interest than the 10 percent and it's | 10:42:51 |
| 22 | saving, I haven't done this exact | 10:42:55 |
| 23 | calculation in a long time, but $13 | 10:42:57 |
| 24 | million per month. | 10:43:00 |
| 25 | Q.    Well Mr. Goldstein thought it | 10:43:01 |

Page 53

| | | |
|---|---|---|
| 1 | was highly favorable, didn't he?  Look at | 10:43:02 |
| 2 | page 9, that was the exact term he used, | 10:43:05 |
| 3 | didn't he?  Paragraph 9, page 5. | 10:43:08 |
| 4 | A.    That appears to be his view, | 10:43:10 |
| 5 | yes. | 10:43:11 |
| 6 | Q.    And you, and the debtors | 10:43:12 |
| 7 | authorized him to file this, right? | 10:43:13 |
| 8 | A.    That's correct. | 10:43:15 |
| 9 | Q.    And if the debtors disagreed | 10:43:15 |
| 10 | with anything in Mr. Goldstein's | 10:43:17 |
| 11 | declaration, they surely would have | 10:43:19 |
| 12 | called it to the court's attention, would | 10:43:20 |
| 13 | they not? | 10:43:22 |
| 14 | A.    Would you mind restating that | 10:43:22 |
| 15 | question.  There was a lot there. | 10:43:24 |
| 16 | Q.    Sure.  Had the debtors thought | 10:43:25 |
| 17 | that Mr. Goldstein had made a | 10:43:27 |
| 18 | misstatement in support of a motion that | 10:43:29 |
| 19 | was the debtors', the debtors would have | 10:43:30 |
| 20 | felt obligated to correct that | 10:43:33 |
| 21 | misstatement, would they not, sir? | 10:43:35 |
| 22 | A.    Mr. Goldstein made a statement | 10:43:36 |
| 23 | in his capacity as a financial advisor | 10:43:38 |
| 24 | that he felt like in his opinion that it | 10:43:41 |
| 25 | was of -- what was the term?  Substantial | 10:43:44 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 54

| | | |
|---|---|---|
| 1 | savings. | 10:43:48 |
| 2 | Q.    Highly favorable savings? | 10:43:48 |
| 3 | A.    Highly favorable savings. | 10:43:49 |
| 4 | Q.    In order to facilitate the | 10:43:52 |
| 5 | maximization of value is it the debtors' | 10:43:54 |
| 6 | view that the debtor-in-possession | 10:43:56 |
| 7 | financing was highly favorable? | 10:43:58 |
| 8 | A.    I believe in the current | 10:44:00 |
| 9 | market conditions it was market -- it was | 10:44:02 |
| 10 | favorable to the estate. | 10:44:05 |
| 11 | Q.    And do you believe it helped | 10:44:06 |
| 12 | facilitate the maximization of value for | 10:44:08 |
| 13 | the debtors? | 10:44:10 |
| 14 | A.    I do. | 10:44:12 |
| 15 | Q.    And do you believe that the | 10:44:12 |
| 16 | interest savings alone would serve as an | 10:44:14 |
| 17 | adequate reason to pursue the EFIH first | 10:44:17 |
| 18 | lien DIP financing? | 10:44:19 |
| 19 | A.    Again, the debt was | 10:44:22 |
| 20 | accelerated, due and payable.  In concert | 10:44:25 |
| 21 | with that, coming up with the -- with | 10:44:28 |
| 22 | highly favorable or favorable financing | 10:44:33 |
| 23 | is a benefit to the estate. | 10:44:35 |
| 24 | Q.    Right.  Now, there was a | 10:44:36 |
| 25 | hearing on this motion, was there not? | 10:44:49 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | There was a hearing on this motion, was | 10:44:58 |
| 2 | there not? | 10:45:00 |
| 3 | A.    I briefly recall that, yes. | 10:45:01 |
| 4 | Q.    Did you attend that hearing, | 10:45:02 |
| 5 | sir? | 10:45:03 |
| 6 | A.    I did. | 10:45:03 |
| 7 | Q.    Your counsel spoke at that | 10:45:04 |
| 8 | hearing, did he not?  The company's | 10:45:10 |
| 9 | counsel? | 10:45:12 |
| 10 | A.    Who specifically are you | 10:45:15 |
| 11 | referring to. | 10:45:16 |
| 12 | Q.    Mr. Hessler of Kirkland & | 10:45:16 |
| 13 | Ellis, are you familiar with Mr. Hessler? | 10:45:19 |
| 14 | A.    I am familiar. | 10:45:20 |
| 15 | Q.    He's a partner in the firm, | 10:45:21 |
| 16 | right? | 10:45:23 |
| 17 | A.    He's a partner. | 10:45:23 |
| 18 | Q.    And he's one of the senior | 10:45:24 |
| 19 | partners working on the representation of | 10:45:25 |
| 20 | the debtors, is he not? | 10:45:28 |
| 21 | A.    He is working on, as a partner | 10:45:33 |
| 22 | on the case.  I don't know the definition | 10:45:35 |
| 23 | of senior partner within the legal | 10:45:37 |
| 24 | organization. | 10:45:39 |
| 25 | Q.    I'll show it to you in a | 10:45:41 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 56

| | | |
|---|---|---|
| 1 | second, I don't want you to take my word | 10:45:46 |
| 2 | for anything, but he said that the | 10:45:48 |
| 3 | financing here was, quote, very, very | 10:45:49 |
| 4 | compelling, do you agree with that? | 10:45:53 |
| 5 | A.    From the chair of the | 10:45:57 |
| 6 | treasurer, as the treasurer, I believe | 10:45:59 |
| 7 | that the financing was at market terms | 10:46:01 |
| 8 | and relatively speaking to -- | 10:46:07 |
| 9 | Q.    Sorry.  I apologize, could you | 10:46:16 |
| 10 | go on with your answer. | 10:46:17 |
| 11 | A.    I'm not sure -- relative to | 10:46:19 |
| 12 | the market conditions that we've seen in | 10:46:22 |
| 13 | the past it was favorable financing. | 10:46:24 |
| 14 | Q.    Okay.  And the debtors | 10:46:30 |
| 15 | obviously, because they kept saying it | 10:46:35 |
| 16 | over and over again, thought that the | 10:46:38 |
| 17 | saving of 14.4 million per month, 173 | 10:46:41 |
| 18 | million per year, was significant, right? | 10:46:46 |
| 19 | A.    It was -- it was substantial, | 10:46:50 |
| 20 | yes. | 10:46:53 |
| 21 | Q.    And it was significantly | 10:46:53 |
| 22 | substantial that the debtors wanted to | 10:46:59 |
| 23 | get the relief so they could do the | 10:47:01 |
| 24 | refinancing as early as possible in the | 10:47:04 |
| 25 | bankruptcy case, right? | 10:47:06 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 57

| | | |
|---|---|---|
| 1 | MR. HOWELL:  Object to form. | 10:47:07 |
| 2 | A.    The debt was due and payable. | 10:47:08 |
| 3 | We found very attractive terms, as we've | 10:47:11 |
| 4 | discussed, favorable terms, and we | 10:47:15 |
| 5 | financed, refinanced the debt. | 10:47:19 |
| 6 | MR. ANKER:  Could we go off | 10:47:45 |
| 7 | the record one second. | 10:47:46 |
| 8 | THE VIDEOGRAPHER:  One moment, | 10:47:50 |
| 9 | watch your microphones.  The time | 10:47:52 |
| 10 | is 10:47 a.m., we're now off the | 10:47:53 |
| 11 | record. | 10:47:56 |
| 12 | (A recess was taken.) | 10:47:58 |
| 13 | THE VIDEOGRAPHER:  The time is | 11:01:56 |
| 14 | 11:02 a.m., back on the record. | 11:02:10 |
| 15 | (Horton Exhibit 6 for | 11:02:14 |
| 16 | identification, transcript of June | 11:02:37 |
| 17 | 6th, 2014 hearing before Judge | 11:02:38 |
| 18 | Sontchi.) | 11:02:15 |
| 19 | Q.    Mr. Horton, before we broke I | 11:02:15 |
| 20 | think I was asking you whether Mr. | 11:02:17 |
| 21 | Hessler of Kirkland & Ellis was one of | 11:02:20 |
| 22 | the partners at Kirkland & Ellis who | 11:02:23 |
| 23 | represent the debtors in this matter and | 11:02:25 |
| 24 | I think you affirmed he is; is that | 11:02:28 |
| 25 | right, sir? | 11:02:30 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 58

| | | |
|---|---|---|
| 1 | A.    That's correct, sir. | 11:02:31 |
| 2 | Q.    Let me turn you to page -- to | 11:02:31 |
| 3 | Exhibit 6, which is the transcript on | 11:02:35 |
| 4 | June 6th, 2014 of a hearing before Judge | 11:02:38 |
| 5 | Sontchi.  Let me turn you to page 124 if | 11:02:44 |
| 6 | I could. | 11:02:47 |
| 7 | A.    Sure. | 11:02:47 |
| 8 | Q.    Tell me when you're there, | 11:02:47 |
| 9 | sir.  Are you there? | 11:03:00 |
| 10 | A.    I am there, sir. | 11:03:00 |
| 11 | Q.    And you'll see that on line, | 11:03:01 |
| 12 | at the very beginning of the page, but | 11:03:05 |
| 13 | line 2 the clerk says "all rise.  This is | 11:03:07 |
| 14 | the beginning of the afternoon session." | 11:03:09 |
| 15 | Do you see that, sir? | 11:03:10 |
| 16 | A.    I do see that. | 11:03:11 |
| 17 | Q.    And you'll see that Mr. | 11:03:12 |
| 18 | Hessler, this is lines 5 through 10 says | 11:03:14 |
| 19 | "Your Honor, I believe we are now at the | 11:03:18 |
| 20 | final motion of the afternoon, which is | 11:03:20 |
| 21 | the EFIH's debtors' motion to approve the | 11:03:22 |
| 22 | first lien, the EFIH's first lien | 11:03:25 |
| 23 | settlement." | 11:03:27 |
| 24 | Do you see that, sir? | 11:03:28 |
| 25 | A.    I do. | 11:03:29 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Q.    And then Mr. Hessler before | 11:03:30 |
| 2 | presenting argument does what we lawyers | 11:03:32 |
| 3 | do, you present an overview of the motion | 11:03:34 |
| 4 | and you see he begins that on line 15 on | 11:03:36 |
| 5 | page 124? | 11:03:40 |
| 6 | A.    Yes, I do. | 11:03:42 |
| 7 | Q.    And you'll see that he says, | 11:03:45 |
| 8 | and tell me if I'm reading this right, | 11:03:48 |
| 9 | "Your Honor, the opinions we have filed | 11:03:51 |
| 10 | in support of the settlement and the | 11:03:53 |
| 11 | evidence that we're going to introduce | 11:03:54 |
| 12 | today, we believe demonstrates that the | 11:03:56 |
| 13 | benefit of the proposed settlement are | 11:03:57 |
| 14 | very, very compelling, but they're also | 11:03:59 |
| 15 | very, very straightforward." | 11:04:02 |
| 16 | Did I read that correctly? | 11:04:04 |
| 17 | A.    I believe you did. | 11:04:05 |
| 18 | Q.    And the debtors didn't stand | 11:04:06 |
| 19 | up and say Mr. Hessler has made a | 11:04:07 |
| 20 | misstatement, that's not true, because | 11:04:10 |
| 21 | the debtors believed it was right, that | 11:04:11 |
| 22 | the proposed settlement was, quote, very, | 11:04:14 |
| 23 | very compelling and very, very | 11:04:16 |
| 24 | straightforward, right? | 11:04:18 |
| 25 | MR. HOWELL:  Object to form. | 11:04:21 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 60

| | | |
|---|---|---|
| 1 | A.    That's what he said. | 11:04:22 |
| 2 | Q.    Well the debtors didn't stand, | 11:04:23 |
| 3 | no one -- you didn't -- you were at this | 11:04:25 |
| 4 | hearing, right, you were an officer | 11:04:27 |
| 5 | company, did you direct anyone to correct | 11:04:29 |
| 6 | Mr. Hessler? | 11:04:31 |
| 7 | A.    I did not direct anyone to | 11:04:32 |
| 8 | correct Mr. Hessler. | 11:04:34 |
| 9 | Q.    Did anyone, to your knowledge, | 11:04:35 |
| 10 | on behalf of the debtors, Mr. Keglevic, | 11:04:37 |
| 11 | anyone, Mr. Young, anyone direct Kirkland | 11:04:38 |
| 12 | & Ellis to correct that statement? | 11:04:43 |
| 13 | A.    No. | 11:04:45 |
| 14 | Q.    Because the debtors believed | 11:04:45 |
| 15 | it to be true, correct? | 11:04:47 |
| 16 | A.    Yes, in general we believed it | 11:04:49 |
| 17 | to be true. | 11:04:52 |
| 18 | Q.    And he goes on to say, and | 11:04:52 |
| 19 | tell me whether I'm reading this right, | 11:04:54 |
| 20 | "Your Honor, the settlement stated simply | 11:04:57 |
| 21 | it replaces higher interest rate debt | 11:04:59 |
| 22 | with lower interest rate debt.  In doing | 11:05:01 |
| 23 | so it saves the estates 14.4 million per | 11:05:05 |
| 24 | month which is 172.8 million per year." | 11:05:08 |
| 25 | Did I read that correctly? | 11:05:12 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 61

| | | |
|---|---|---|
| 1 | A.    Yes, sir, you did. | 11:05:13 |
| 2 | Q.    And that was the first reason | 11:05:14 |
| 3 | he gave as a rationale for this | 11:05:16 |
| 4 | settlement, right? | 11:05:19 |
| 5 | A.    Yes, sir. | 11:05:19 |
| 6 | Q.    And again, no one instructed | 11:05:20 |
| 7 | that Mr. Hessler correct the record, or | 11:05:25 |
| 8 | anyone else from Kirkland & Ellis correct | 11:05:27 |
| 9 | the record, right? | 11:05:29 |
| 10 | A.    No one corrected these | 11:05:30 |
| 11 | statements, no, sir. | 11:05:33 |
| 12 | Q.    Because the debtors believed | 11:05:33 |
| 13 | them -- | 11:05:36 |
| 14 | A.    That I'm aware of. | 11:05:37 |
| 15 | Q.    -- to be true, correct? | 11:05:38 |
| 16 | A.    Again, I don't know I would -- | 11:05:41 |
| 17 | if I would have said it specifically like | 11:05:42 |
| 18 | that, but we did not disagree that this | 11:05:44 |
| 19 | was accurate. | 11:05:46 |
| 20 | Q.    The debtors presented evidence | 11:05:48 |
| 21 | at this hearing, did they not? | 11:05:50 |
| 22 | A.    Yes. | 11:05:53 |
| 23 | Q.    And part of that evidence was | 11:05:54 |
| 24 | the testimony of Mr. Ying, correct? | 11:05:55 |
| 25 | A.    I don't know. | 11:05:59 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 62

| | | |
|---|---|---|
| 1 | Q.    Okay.  Why don't we turn to -- | 11:05:59 |
| 2 | why don't we turn to page 139.  Are you | 11:06:07 |
| 3 | there, sir? | 11:06:18 |
| 4 | A.    I am. | 11:06:19 |
| 5 | Q.    Now you'll see it says sort of | 11:06:19 |
| 6 | at the bottom of the page, line 22, | 11:06:22 |
| 7 | direct examination by Mr. McGann, do you | 11:06:25 |
| 8 | see that? | 11:06:27 |
| 9 | A.    I do. | 11:06:27 |
| 10 | Q.    Mr. McGann is another partner | 11:06:28 |
| 11 | at Kirkland & Ellis, right? | 11:06:30 |
| 12 | A.    That's my understanding. | 11:06:31 |
| 13 | Q.    And you'll see, in fact it may | 11:06:32 |
| 14 | be a little clearer a few lines up on | 11:06:34 |
| 15 | line 8 to 9, the debtors call David Ying, | 11:06:40 |
| 16 | do you see where Mr. McGann says that? | 11:06:45 |
| 17 | A.    I do see that. | 11:06:47 |
| 18 | Q.    So let's go back to my | 11:06:48 |
| 19 | question.  Among the evidence that the | 11:06:49 |
| 20 | debtors presented at the hearing on June | 11:06:52 |
| 21 | 6th was the testimony of Mr. Ying, right? | 11:06:53 |
| 22 | A.    That's correct. | 11:06:55 |
| 23 | Q.    And he was the senior banker | 11:06:56 |
| 24 | at Evercore running the engagement for | 11:06:58 |
| 25 | the debtors, right? | 11:07:01 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 63

| | | |
|---|---|---|
| 1 | A.    I would describe him as that, | 11:07:02 |
| 2 | yes. | 11:07:03 |
| 3 | Q.    Someone you certainly, the | 11:07:04 |
| 4 | company certainly respects, right? | 11:07:05 |
| 5 | A.    He's a senior banker.  He's a | 11:07:07 |
| 6 | professional and yes, we do respect him. | 11:07:12 |
| 7 | Q.    He's given the companies good | 11:07:14 |
| 8 | advice during this matter, right? | 11:07:17 |
| 9 | A.    That's my view. | 11:07:19 |
| 10 | Q.    And it's the company's view, | 11:07:20 |
| 11 | right? | 11:07:22 |
| 12 | A.    That's correct. | 11:07:23 |
| 13 | Q.    Now, Mr. Ying, I want to point | 11:07:23 |
| 14 | you to his testimony on page 146.  Tell | 11:07:27 |
| 15 | me when you're on page 146.  Are you | 11:07:33 |
| 16 | there? | 11:07:36 |
| 17 | A.    Not yet.  I'll tell you. | 11:07:36 |
| 18 | Q.    I'm a New Yorker, I move | 11:07:41 |
| 19 | quickly, but I'll try to, I'll try to | 11:07:43 |
| 20 | have a little less caffeine in me.  Tell | 11:07:45 |
| 21 | me when you're there. | 11:07:48 |
| 22 | A.    I'm there. | 11:07:49 |
| 23 | Q.    Okay.  At the very top Mr. | 11:07:49 |
| 24 | Ying is testifying and he says the same | 11:07:52 |
| 25 | thing, he says "we estimate that as a | 11:07:55 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 64

| | | |
|---|---|---|
| 1 | result of the proposed refinancing of the | 11:07:57 |
| 2 | first lien notes with the DIP facility, | 11:07:59 |
| 3 | that the EFIH estate will be saving | 11:08:01 |
| 4 | approximately 14 million a month and over | 11:08:04 |
| 5 | the course of a 12 month period it will | 11:08:07 |
| 6 | be saving 173 million." | 11:08:09 |
| 7 | Did I read that right? | 11:08:11 |
| 8 | A.    Yes, sir. | 11:08:12 |
| 9 | Q.    And then the question, and | 11:08:12 |
| 10 | this is Mr. McGann asking questions, "It | 11:08:13 |
| 11 | may seem obvious, but I'm going to ask | 11:08:16 |
| 12 | you what are the debtors' business needs, | 11:08:18 |
| 13 | if any, to close on the DIP facility as | 11:08:20 |
| 14 | soon as reasonably possible?" | 11:08:23 |
| 15 | Did I read that accurately? | 11:08:25 |
| 16 | A.    That's correct. | 11:08:26 |
| 17 | Q.    Okay.  And Mr. Ying's answer | 11:08:29 |
| 18 | was as follows:  "Well, every day that | 11:08:31 |
| 19 | the debtor waits the interest rate on the | 11:08:34 |
| 20 | existing first lien notes is paid at | 11:08:36 |
| 21 | their respective contract rates.  And | 11:08:39 |
| 22 | every date that the debtor waits there's | 11:08:41 |
| 23 | that much less value in the state for the | 11:08:43 |
| 24 | benefit of much more junior creditors who | 11:08:45 |
| 25 | are not fully covered by the asset values | 11:08:47 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 65

| | | |
|---|---|---|
| 1 | at EFIH." | 11:08:50 |
| 2 | Did I read that correctly? | 11:08:52 |
| 3 | A.   Yes, you did. | 11:08:53 |
| 4 | Q.   And again, the debtors thought | 11:08:54 |
| 5 | that statement was accurate, did they | 11:08:56 |
| 6 | not? | 11:08:57 |
| 7 | A.   I believe that statement is | 11:08:58 |
| 8 | accurate. | 11:09:00 |
| 9 | Q.   Debtors certainly didn't | 11:09:00 |
| 10 | correct Mr. Ying's testimony before Judge | 11:09:04 |
| 11 | Sontchi, did they? | 11:09:08 |
| 12 | A.   No, sir. | 11:09:09 |
| 13 | Q.   So in summary, it was the | 11:09:14 |
| 14 | debtors' view that this refinancing was | 11:09:18 |
| 15 | beneficial to the EFIH estate, brought | 11:09:20 |
| 16 | value to the estate and doing so sooner | 11:09:23 |
| 17 | rather than later was beneficial because | 11:09:26 |
| 18 | the interest saving began sooner rather | 11:09:28 |
| 19 | than later, right? | 11:09:31 |
| 20 | A.   You asked for the company's | 11:09:32 |
| 21 | view? | 11:09:34 |
| 22 | Q.   Yes. | 11:09:34 |
| 23 | A.   The company's view was the | 11:09:35 |
| 24 | debt was due and payable through | 11:09:36 |
| 25 | acceleration.  We went to the market and | 11:09:40 |

| | | |
|---|---|---|
| 1 | we've got the most attractive financing | 11:09:43 |
| 2 | that we possibly could.  It had, as you | 11:09:45 |
| 3 | would say, as we have said here, | 11:09:50 |
| 4 | significant interest savings over, on a | 11:09:52 |
| 5 | monthly basis, on an annual basis for the | 11:09:56 |
| 6 | benefit of the entire estate and all | 11:09:58 |
| 7 | creditors. | 11:10:01 |
| 8 | Q.    And am I right that one of the | 11:10:01 |
| 9 | reasons, the principally reason that EFIH | 11:10:04 |
| 10 | was able to achieve this cost savings was | 11:10:10 |
| 11 | because interest rates in early 2014 were | 11:10:12 |
| 12 | lower than they had been when the EFIH | 11:10:19 |
| 13 | first lien debt had been issued? | 11:10:21 |
| 14 | A.    I would have to look back in | 11:10:23 |
| 15 | terms of where interest rates were | 11:10:27 |
| 16 | relative to the beginning of 2014. | 11:10:30 |
| 17 | There's a lot of factors in setting rates | 11:10:37 |
| 18 | and yields and coupons.  It's not only | 11:10:40 |
| 19 | what's going on in the interest rate | 11:10:43 |
| 20 | market, it's also what's going on in | 11:10:46 |
| 21 | general in the credit markets, the loan | 11:10:48 |
| 22 | markets themselves, supply and demand. | 11:10:51 |
| 23 | This is a first lien superpriority DIP. | 11:10:54 |
| 24 | So there's a lot of factors that played | 11:10:58 |
| 25 | into what this rate was beyond just the | 11:11:02 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | treasury, or interest rates.  You didn't | 11:11:07 |
| 2 | say treasury, but interest rates. | 11:11:11 |
| 3 | Q.   Let's look at all those | 11:11:12 |
| 4 | factors.  The credit markets were in | 11:11:15 |
| 5 | general more favorable in early 2014 than | 11:11:20 |
| 6 | they had been, for example, in August | 11:11:23 |
| 7 | 2010 when the EFIH first lien, when 2 | 11:11:26 |
| 8 | point -- in excess of $2 billion in EFIH | 11:11:32 |
| 9 | first lien debt had been issued, right? | 11:11:35 |
| 10 | A.   I don't know what the basis of | 11:11:38 |
| 11 | your assumption is.  I cannot recall | 11:11:40 |
| 12 | that.  I don't have a basis for agreeing | 11:11:45 |
| 13 | with that statement. | 11:11:48 |
| 14 | Q.   Well the debtors stated in | 11:11:48 |
| 15 | their motion that the debt market | 11:11:51 |
| 16 | conditions had become highly favorable by | 11:11:53 |
| 17 | 2014.  Do you want to look back at the | 11:11:57 |
| 18 | exhibit or are you going to take my -- or | 11:12:00 |
| 19 | I'm happy to represent to you that's what | 11:12:03 |
| 20 | they said. | 11:12:05 |
| 21 | A.   You were making -- your | 11:12:05 |
| 22 | question to me was relative to 2010, not | 11:12:07 |
| 23 | what was going on in 2014. | 11:12:09 |
| 24 | Q.   Okay.  Fair enough.  The debt | 11:12:11 |
| 25 | market conditions had become highly | 11:12:13 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 68

| | | |
|---|---|---|
| 1 | favorable by 2014, right? | 11:12:15 |
| 2 | A.   At that moment in time, okay, | 11:12:16 |
| 3 | not that they had become, but at that | 11:12:20 |
| 4 | moment in time the, the loan and debt | 11:12:22 |
| 5 | capital markets were attractive. | 11:12:28 |
| 6 | Q.   And they had become attractive | 11:12:30 |
| 7 | gradually over time, had they not? | 11:12:35 |
| 8 | A.   I wouldn't agree with that.  I | 11:12:37 |
| 9 | have no basis for agreeing with that. | 11:12:39 |
| 10 | Q.   Let's focus on the EFIH first | 11:12:43 |
| 11 | lien debt. | 11:12:46 |
| 12 | A.   Okay. | 11:12:46 |
| 13 | Q.   There was, some of it was at | 11:12:47 |
| 14 | 10 percent, right? | 11:12:49 |
| 15 | A.   That's correct. | 11:12:50 |
| 16 | Q.   Okay.  And most of it that was | 11:12:50 |
| 17 | at 10 percent was issued in August 2010, | 11:12:53 |
| 18 | right? | 11:12:55 |
| 19 | A.   That's correct. | 11:12:56 |
| 20 | Q.   And later there was EFIH first | 11:12:57 |
| 21 | lien debt at 6-7/8, right? | 11:13:01 |
| 22 | A.   There was. | 11:13:05 |
| 23 | Q.   Pari passu debt, right? | 11:13:06 |
| 24 | A.   Correct. | 11:13:08 |
| 25 | Q.   Issued in August of 2012, two | 11:13:08 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 69

| | | |
|---|---|---|
| 1 | years later, right? | 11:13:10 |
| 2 | A.    That's correct. | 11:13:11 |
| 3 | Q.    And so the interest rate had | 11:13:12 |
| 4 | come down, or the new interest rate was | 11:13:14 |
| 5 | 3.125 percent lower, right? | 11:13:19 |
| 6 | MR. HOWELL:  Object to form. | 11:13:25 |
| 7 | A.    Approximately, yes. | 11:13:26 |
| 8 | Q.    Okay.  And wasn't that because | 11:13:29 |
| 9 | interest rates had come down? | 11:13:33 |
| 10 | A.    You're comparing two separate | 11:13:35 |
| 11 | pieces of paper.  One piece of paper was | 11:13:36 |
| 12 | a five year tenor and the other was a 10 | 11:13:40 |
| 13 | year piece of paper.  So by definition, | 11:13:43 |
| 14 | having a shorter piece of -- dated piece | 11:13:46 |
| 15 | of paper, it's going to have a lower | 11:13:49 |
| 16 | interest rate.  So may or may not have | 11:13:50 |
| 17 | had a little bit to do with what was | 11:13:54 |
| 18 | going on in the credit markets and in the | 11:13:56 |
| 19 | interest rate markets, but the | 11:13:59 |
| 20 | predominant reason was that it was | 11:14:00 |
| 21 | shorter tenor piece of paper. | 11:14:03 |
| 22 | Q.    Based on your experience, were | 11:14:05 |
| 23 | interest rates in the credit markets | 11:14:09 |
| 24 | generally more favorable to issuers in | 11:14:11 |
| 25 | 2013 than let's say 2010? | 11:14:15 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 70

| | | |
|---|---|---|
| 1 | A.    Again, I would have to look | 11:14:21 |
| 2 | back at the statistics.  What I would say | 11:14:22 |
| 3 | to you generally, since '08 interest rate | 11:14:24 |
| 4 | markets, the interest rates themselves | 11:14:29 |
| 5 | have been low relative to historical | 11:14:31 |
| 6 | levels.  Okay, for that, I would say I | 11:14:34 |
| 7 | can't guarantee it but my instincts tells | 11:14:39 |
| 8 | me for that entire period of time | 11:14:43 |
| 9 | interest rates have been low relative to | 11:14:44 |
| 10 | the historical levels, including 2010. | 11:14:47 |
| 11 | Q.    Well, have they gotten lower | 11:14:50 |
| 12 | is my question, in general, from 2010 | 11:14:52 |
| 13 | through to 2013? | 11:14:55 |
| 14 | A.    From my perspective, and | 11:14:58 |
| 15 | again, I don't have the data in front of | 11:15:01 |
| 16 | me, my guess it would not have been | 11:15:02 |
| 17 | substantial. | 11:15:04 |
| 18 | Q.    Did the debtors prior to | 11:15:05 |
| 19 | filing for bankruptcy make any attempt to | 11:15:08 |
| 20 | determine whether they could refinance | 11:15:11 |
| 21 | their first lien debt outside of | 11:15:14 |
| 22 | bankruptcy at lower interest rates than | 11:15:16 |
| 23 | the blended rate of the 10 percent and | 11:15:19 |
| 24 | the 6.875? | 11:15:21 |
| 25 | A.    In terms of looking into the | 11:15:22 |

| | | |
|---|---|---|
| 1 | market itself with the uncertainty in and | 11:15:27 |
| 2 | the overhang of the distressed situation, | 11:15:32 |
| 3 | the answer to the question is yes. | 11:15:35 |
| 4 | Q.    When? | 11:15:38 |
| 5 | A.    I don't know the specific time | 11:15:39 |
| 6 | frames.  I would say we were continuously | 11:15:43 |
| 7 | looking for opportunities, but I would | 11:15:47 |
| 8 | say 2012, 2013 we were looking for | 11:15:49 |
| 9 | opportunities for refinancing the first | 11:15:54 |
| 10 | lien debt. | 11:15:57 |
| 11 | Q.    So why didn't the debtors just | 11:15:57 |
| 12 | refinance the first lien debt in 2012, | 11:16:00 |
| 13 | 2013? | 11:16:06 |
| 14 | A.    It would have been -- in 2012, | 11:16:07 |
| 15 | 2013 we were expecting that we were going | 11:16:12 |
| 16 | to keep EFH and EFIH out of bankruptcy. | 11:16:14 |
| 17 | We were looking at ways under that | 11:16:18 |
| 18 | agreement, we had an agreement, the | 11:16:21 |
| 19 | indenture, the 10 percent indenture and | 11:16:25 |
| 20 | we were looking at ways that we could | 11:16:28 |
| 21 | refinance using, again, equity claws, | 11:16:30 |
| 22 | looking at using the optional redemption, | 11:16:34 |
| 23 | and it was, it just did not money out. | 11:16:37 |
| 24 | Q.    It just what? | 11:16:42 |
| 25 | A.    It did not money out. | 11:16:43 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1        Q.    What do you mean by it did not          11:16:44
 2   money out?                                         11:16:46
 3        A.    The economics, the cost didn't          11:16:46
 4   -- the cost outweighed the benefit.  We            11:16:48
 5   weren't going to save interest costs.              11:16:50
 6        Q.    Okay.  And part of the cost             11:16:52
 7   that you would -- that EFIH would have             11:16:54
 8   experienced had it refinanced in 2012 or           11:16:57
 9   2013 outside of bankruptcy, would have             11:17:01
10   been that it would have owed a make whole          11:17:05
11   premium, right?                                    11:17:08
12        A.    If we financed outside of some          11:17:09
13   other market solution, if we refinanced            11:17:13
14   looking under section 3.07, and used the           11:17:18
15   make whole option, optional redemption,            11:17:23
16   we would have owed a make whole, yes.              11:17:27
17        Q.    And all I'm asking is in                11:17:29
18   evaluating the benefits of refinancing             11:17:32
19   versus the cost of refinancing, one of            11:17:36
20   the factors the company considered was             11:17:40
21   how much of a make whole it would owe if           11:17:47
22   it refinanced under the optional                   11:17:50
23   redemption provision, right?                       11:17:52
24        A.    It was one of the, one of the           11:17:53
25   stakes in the ground, one of the                   11:17:57
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | goalposts, yes. | 11:17:59 |
| 2 | Q.    And I take it that, imagine | 11:18:00 |
| 3 | that on the day you filed this motion, | 11:18:05 |
| 4 | April 29, 2014, EFIH had not been in | 11:18:10 |
| 5 | bankruptcy, and it had sought to | 11:18:17 |
| 6 | refinance all of its first lien debt, all | 11:18:20 |
| 7 | 4 billion, without some waiver by the | 11:18:23 |
| 8 | first lienholders, it would have owed a | 11:18:28 |
| 9 | make whole, right? | 11:18:30 |
| 10 | MR. HOWELL:  Object to form. | 11:18:32 |
| 11 | A.    I'm not sure I understand your | 11:18:33 |
| 12 | question. | 11:18:36 |
| 13 | Q.    Sure.  Let's focus on the very | 11:18:37 |
| 14 | day the debtors filed for bankruptcy, | 11:18:45 |
| 15 | April 29, 2014. | 11:18:48 |
| 16 | A.    Okay. | 11:18:50 |
| 17 | Q.    And let's assume they're not | 11:18:50 |
| 18 | in bankruptcy on that day. | 11:18:53 |
| 19 | A.    Okay. | 11:18:55 |
| 20 | Q.    Okay.  The indenture provided | 11:18:56 |
| 21 | an equity, the indentures included equity | 11:19:00 |
| 22 | clawback provisions, right? | 11:19:05 |
| 23 | A.    Not on that date, no, sir. | 11:19:06 |
| 24 | Q.    Exactly.  On that date did the | 11:19:08 |
| 25 | indentures -- the indentures included one | 11:19:14 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | way the company could have refinanced and | 11:19:17 |
| 2 | that is by exercising the optional | 11:19:19 |
| 3 | redemption provision, right? | 11:19:22 |
| 4 | A.    So are we in bankruptcy or | 11:19:24 |
| 5 | not? | 11:19:26 |
| 6 | Q.    Outside, outside. | 11:19:26 |
| 7 | A.    So if we were outside of | 11:19:27 |
| 8 | bankruptcy, we could have, again, tried | 11:19:30 |
| 9 | to refinance the debt and at that point | 11:19:36 |
| 10 | in time we would have owed a make whole. | 11:19:38 |
| 11 | Q.    Okay.  As I read the | 11:19:41 |
| 12 | indenture, and I think I asked Mr. | 11:19:44 |
| 13 | Moldovan this, but if you have a | 11:19:47 |
| 14 | different understanding I'd be curious, | 11:19:49 |
| 15 | there is no provision in the indenture | 11:19:52 |
| 16 | that you recollect for any of the first | 11:19:55 |
| 17 | lien debt that would have allowed the | 11:19:56 |
| 18 | debtors to refinance all of the first | 11:20:00 |
| 19 | lien debt on -- in April of 2014 without | 11:20:02 |
| 20 | paying the make whole, right? | 11:20:07 |
| 21 | MR. HOWELL:  Object to form. | 11:20:11 |
| 22 | A.    Outside of bankruptcy, outside | 11:20:12 |
| 23 | of some market-based transaction where | 11:20:16 |
| 24 | we're doing an exchange, we reached some | 11:20:20 |
| 25 | settlement, if we were to redeem the debt | 11:20:22 |

1    and do an optional redemption of the                11:20:32

2    debt, then we would have owed a make                11:20:37

3    whole.                                              11:20:39

4         Q.    But it's the debtors' position           11:20:44

5    that in bankruptcy the debtors can                  11:20:46

6    refinance the debt in April of 2014 and             11:20:49

7    not pay a make whole, right?                        11:20:52

8         A.    The debt is accelerated and              11:20:57

9    due.                                                11:20:59

10        Q.    I understand your theory, I              11:20:59

11   want to ask a factual question.                     11:21:01

12        A.    No, I'm reading from the                 11:21:03

13   indenture, it's not a theory.  So if I              11:21:05

14   read the indenture it says upon                     11:21:07

15   bankruptcy filing the debt is                       11:21:09

16   accelerated.  It's again a default, and             11:21:11

17   again we probably need to read the                  11:21:15

18   specific language because now you're                11:21:16

19   looking at something there, but the debt            11:21:18

20   accelerates and it's due and payable,               11:21:21

21   okay.                                               11:21:26

22        Q.    Okay.  So the debtors' view,             11:21:27

23   to answer my question, is that in                   11:21:32

24   bankruptcy the debtors can refinance the            11:21:37

25   debt in April of 2014 without paying a              11:21:39

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | make whole, right? | 11:21:41 |
| 2 | A.    We can pay the debt, we have | 11:21:42 |
| 3 | an obligation to pay the debt under the | 11:21:44 |
| 4 | contract and we fulfilled that | 11:21:47 |
| 5 | obligation. | 11:21:54 |
| 6 | Q.    So the debtors have an | 11:21:56 |
| 7 | obligation, that's why they took out the | 11:21:59 |
| 8 | debt, right? | 11:22:01 |
| 9 | A.    Under the contract. | 11:22:02 |
| 10 | Q.    Right. | 11:22:02 |
| 11 | A.    There's an obligation to pay | 11:22:03 |
| 12 | the debt as accelerated. | 11:22:05 |
| 13 | Q.    So the debtors had an | 11:22:07 |
| 14 | obligation, right? | 11:22:09 |
| 15 | A.    Yes. | 11:22:10 |
| 16 | Q.    And they were simply | 11:22:10 |
| 17 | fulfilling their obligation, right? | 11:22:11 |
| 18 | A.    We were, we were operating | 11:22:13 |
| 19 | under the terms of the contract. | 11:22:17 |
| 20 | Q.    You were fulfilling your | 11:22:18 |
| 21 | obligation, right? | 11:22:20 |
| 22 | MR. HOWELL:  Object to form. | 11:22:21 |
| 23 | A.    I was operating under the | 11:22:22 |
| 24 | terms of the contract. | 11:22:24 |
| 25 | Q.    I'm asking you were you | 11:22:24 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 77

| | |
|---|---|
| 1 | fulfilling your obligation, were you or | 11:22:26 |
| 2 | were you not? | 11:22:28 |
| 3 | MR. HOWELL:  Object to form. | 11:22:29 |
| 4 | A.    That was due and payable and | 11:22:30 |
| 5 | that's what we did. | 11:22:31 |
| 6 | Q.    I'm going to ask the question | 11:22:32 |
| 7 | again.  Please tell me if you can answer | 11:22:34 |
| 8 | my question.  Were the debtors fulfilling | 11:22:36 |
| 9 | their obligation? | 11:22:38 |
| 10 | MR. HOWELL:  Object to form. | 11:22:39 |
| 11 | A.    Again, under the contract the | 11:22:40 |
| 12 | debt was due and payable. | 11:22:47 |
| 13 | Q.    Can you otherwise answer my | 11:22:49 |
| 14 | question?  You used the term obligation, | 11:22:53 |
| 15 | were the debtors fulfilling their | 11:22:55 |
| 16 | obligation? | 11:22:57 |
| 17 | A.    I don't know if the word | 11:22:57 |
| 18 | obligation is defined in the contract. | 11:22:58 |
| 19 | Q.    I don't think it is. | 11:23:00 |
| 20 | A.    I don't either. | 11:23:01 |
| 21 | Q.    So you can't otherwise answer | 11:23:02 |
| 22 | my question? | 11:23:07 |
| 23 | A.    Please give me a definition of | 11:23:07 |
| 24 | obligation. | 11:23:10 |
| 25 | Q.    Were the debtors required, I | 11:23:10 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | mean -- let me step back a second.  Mr. | 11:23:14 |
| 2 | Horton, I understand you're not a lawyer | 11:23:17 |
| 3 | here.  We will have legal argument.  From | 11:23:19 |
| 4 | a business standpoint, as the treasurer | 11:23:24 |
| 5 | of this company, were the debtors | 11:23:26 |
| 6 | required to repay the first lien debt in | 11:23:28 |
| 7 | the spring of 2014?  Yes or no? | 11:23:30 |
| 8 | A.    Yes. | 11:23:33 |
| 9 | Q.    Did you -- did the company -- | 11:23:33 |
| 10 | so your point is there was a default, | 11:23:39 |
| 11 | right, and therefore the default | 11:23:40 |
| 12 | obligated, required the company to repay | 11:23:42 |
| 13 | the debt, right? | 11:23:44 |
| 14 | A.    That's correct. | 11:23:44 |
| 15 | Q.    Okay.  So could you give me | 11:23:45 |
| 16 | the names of every first lienholder you | 11:23:47 |
| 17 | contacted and asked whether they would be | 11:23:49 |
| 18 | agreed to waive that default? | 11:23:51 |
| 19 | MR. HOWELL:  Object to form. | 11:23:57 |
| 20 | A.    No. | 11:23:58 |
| 21 | Q.    No, because you didn't contact | 11:23:59 |
| 22 | any, did you? | 11:24:00 |
| 23 | A.    No, not regarding that. | 11:24:01 |
| 24 | Q.    Okay.  Did you speak with any | 11:24:02 |
| 25 | -- did you speak with the indenture | 11:24:05 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 79

| | | |
|---|---|---|
| 1 | trustee and ask the indenture trustee, | 11:24:07 |
| 2 | look, we've got this default but we, you | 11:24:10 |
| 3 | know, are you willing to waive that | 11:24:12 |
| 4 | default? | 11:24:13 |
| 5 | A.    I'm not -- I'm not aware of | 11:24:15 |
| 6 | that. | 11:24:17 |
| 7 | Q.    You're not aware of the | 11:24:17 |
| 8 | company making any efforts, are you, Mr. | 11:24:18 |
| 9 | Horton, to see whether the first | 11:24:21 |
| 10 | lienholders would waive the default | 11:24:23 |
| 11 | caused by the bankruptcy, right? | 11:24:26 |
| 12 | A.    That's correct. | 11:24:28 |
| 13 | Q.    And in fact, you know that the | 11:24:29 |
| 14 | first lienholders sent a notice stating | 11:24:31 |
| 15 | that they were prepared to and indeed did | 11:24:35 |
| 16 | waive the default, aren't you? | 11:24:39 |
| 17 | MR. HOWELL:  Object to form. | 11:24:44 |
| 18 | A.    I am aware that there was a | 11:24:45 |
| 19 | notice sent, yes. | 11:24:47 |
| 20 | Q.    And the debtors ignored that | 11:24:47 |
| 21 | notice, right? | 11:24:50 |
| 22 | MR. HOWELL:  Object to form. | 11:24:51 |
| 23 | A.    I don't think we ignored that, | 11:24:52 |
| 24 | no. | 11:24:54 |
| 25 | Q.    Well you didn't agree to it, | 11:24:54 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | did you? | 11:24:56 |
| 2 | A.    We evaluated it, and under | 11:24:56 |
| 3 | the, my understanding, again, I'm not a | 11:24:58 |
| 4 | lawyer as you said just a moment ago, my | 11:25:00 |
| 5 | understanding is that under the | 11:25:02 |
| 6 | bankruptcy code that, that rescission was | 11:25:03 |
| 7 | not available to, to the holders. | 11:25:10 |
| 8 | Q.    No first lienholder had | 11:25:14 |
| 9 | declared a payment default as of the | 11:25:17 |
| 10 | petition date, had they? | 11:25:19 |
| 11 | A.    I do not know that. | 11:25:21 |
| 12 | Q.    You have no information that | 11:25:22 |
| 13 | any first lienholder had declared a | 11:25:23 |
| 14 | payment default, had you? | 11:25:25 |
| 15 | A.    I'm not aware of that.  I | 11:25:27 |
| 16 | don't -- again -- | 11:25:29 |
| 17 | Q.    You're not aware of any first | 11:25:29 |
| 18 | lienholder or the indenture trustee | 11:25:32 |
| 19 | declaring a covenant default or any other | 11:25:35 |
| 20 | default as of the petition date, are you? | 11:25:38 |
| 21 | A.    If I read the agreement, the | 11:25:40 |
| 22 | indenture, I think it's automatic. | 11:25:42 |
| 23 | Q.    Let's go to one second before | 11:25:44 |
| 24 | the bankruptcy filing.  One second before | 11:25:46 |
| 25 | the bankruptcy filing had any | 11:25:48 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | representative of any first lienholder, | 11:25:52 |
| 2 | whether the indenture trustee or any | 11:25:54 |
| 3 | noteholder or anyone else, declared an | 11:25:56 |
| 4 | event of default?  Yes or no? | 11:25:58 |
| 5 | MR. HOWELL:  Object to | 11:26:01 |
| 6 | foundation. | 11:26:02 |
| 7 | A.    I do not know. | 11:26:02 |
| 8 | Q.    As far as you're aware the | 11:26:03 |
| 9 | answer is no, isn't it, sir? | 11:26:05 |
| 10 | A.    I do not know. | 11:26:06 |
| 11 | Q.    Are you aware of any first | 11:26:07 |
| 12 | lien representative, whether the trustee, | 11:26:09 |
| 13 | noteholder or anyone else, declaring an | 11:26:12 |
| 14 | event of default up to one second before | 11:26:14 |
| 15 | the bankruptcy? | 11:26:16 |
| 16 | A.    Again, I'm not aware of that. | 11:26:17 |
| 17 | MR. ANKER:  I think we need to | 11:26:20 |
| 18 | take a break for the tape. | 11:26:22 |
| 19 | THE VIDEOGRAPHER:  One moment, | 11:26:24 |
| 20 | please, watch your microphone. | 11:26:25 |
| 21 | Here now marks the end of tape 1 of | 11:26:26 |
| 22 | the deposition of Mr. Anthony R. | 11:26:28 |
| 23 | Horton, the time is 11:26 a.m., | 11:26:31 |
| 24 | we're off the record. | 11:26:34 |
| 25 | (A recess was taken.) | 11:26:36 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 82

```
 1              THE VIDEOGRAPHER:  Here now          11:37:01
 2        marks the beginning of tape 2 of          11:37:22
 3        the deposition of Mr. Anthony R.          11:37:24
 4        Horton, the time is 11:37 a.m.,           11:37:26
 5        we're back on the record.                 11:37:30
 6           Q.    Mr. Horton, you've mentioned a    11:37:34
 7     number of times that the EFIH first lien     11:37:36
 8     debt was due and payable upon the            11:37:42
 9     bankruptcy filing and therefore the          11:37:45
10     debtors paid it off.  Am I correct that      11:37:48
11     the only reason that the EFIH first lien     11:37:55
12     debt was due and payable is because EFIH     11:37:58
13     filed for bankruptcy?                        11:38:02
14           A.    That's my understanding.         11:38:07
15           Q.    And when you say it was due      11:38:08
16     and payable, you're relying on the           11:38:16
17     section of the indenture for the first       11:38:19
18     lien notes that defines a bankruptcy         11:38:22
19     filing as an event of default and then       11:38:26
20     provides that there is an acceleration of    11:38:30
21     the debt, right?                             11:38:34
22              MR. HOWELL:  Object to form.        11:38:35
23           A.    In general, yes.                 11:38:37
24           Q.    And you're aware, I think we     11:38:39
25     talked about this, that there is a           11:38:47
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 83

| | | |
|---|---|---|
| 1 | provision in the indenture that says that | 11:38:48 |
| 2 | a majority in dollar amount of the EFIH | 11:38:57 |
| 3 | first lien noteholders can waive any | 11:39:02 |
| 4 | event of default and rescind any | 11:39:06 |
| 5 | acceleration, right? | 11:39:09 |
| 6 | A.    That's correct. | 11:39:11 |
| 7 | Q.    So I want you -- I stipulate | 11:39:11 |
| 8 | you're not a bankruptcy lawyer, we will | 11:39:17 |
| 9 | argue the law, you're here to testify | 11:39:19 |
| 10 | about facts. | 11:39:21 |
| 11 | A.    I'm no type of lawyer. | 11:39:22 |
| 12 | Q.    You're no type of lawyer. | 11:39:23 |
| 13 | A.    Okay. | 11:39:25 |
| 14 | Q.    My daughters would say, my | 11:39:25 |
| 15 | daughters would applaud you and say you | 11:39:27 |
| 16 | made a better life-style choice than I | 11:39:29 |
| 17 | did, but let's -- | 11:39:32 |
| 18 | A.    At the moment I'm not quite | 11:39:34 |
| 19 | sure. | 11:39:35 |
| 20 | Q.    Fair enough.  I want you as a | 11:39:36 |
| 21 | business person, based on a business | 11:39:43 |
| 22 | person's understanding of the contract, | 11:39:44 |
| 23 | of the indenture, forget what bankruptcy | 11:39:46 |
| 24 | law does, as a matter of contract, the | 11:39:49 |
| 25 | debtors acknowledge, do they not, that | 11:39:55 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 84

| | | |
|---|---|---|
| 1 | the first lienholders had a right to | 11:39:57 |
| 2 | waive the default and rescind the | 11:40:01 |
| 3 | acceleration? | 11:40:04 |
| 4 | MR. HOWELL:  Object to form. | 11:40:07 |
| 5 | A.    It's extremely difficult for | 11:40:08 |
| 6 | me because you asked me to do this as a | 11:40:14 |
| 7 | business person, to totally divorce that | 11:40:17 |
| 8 | -- our decision and what we ultimately | 11:40:21 |
| 9 | did from the way the bankruptcy court, | 11:40:24 |
| 10 | bankruptcy law overlays this entire | 11:40:30 |
| 11 | situation.  So I cannot answer that | 11:40:33 |
| 12 | question in that vacuum and in that | 11:40:36 |
| 13 | hypothetical situation. | 11:40:38 |
| 14 | Q.    Okay.  I'm not asking you a | 11:40:40 |
| 15 | hypothetical.  I'm not asking you right | 11:40:42 |
| 16 | now about the debtors' decision and what | 11:40:46 |
| 17 | motivated the debtors' decision.  I'm | 11:40:49 |
| 18 | simply asking whether the company | 11:40:53 |
| 19 | understands, whether it's the company's | 11:40:58 |
| 20 | view, that under the terms of the | 11:40:59 |
| 21 | indenture, just looking at the terms of | 11:41:04 |
| 22 | the indenture, the first lien noteholders | 11:41:06 |
| 23 | had the right to waive the default and | 11:41:08 |
| 24 | rescind the acceleration? | 11:41:11 |
| 25 | MR. HOWELL:  Object to form | 11:41:14 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 85

| | | |
|---|---|---|
| 1 | and foundation and outside the | 11:41:15 |
| 2 | scope of this witness' 30(b)(6) | 11:41:16 |
| 3 | designation. | 11:41:19 |
| 4 | Q.    You can answer. | 11:41:21 |
| 5 | A.    Again, reading the agreement | 11:41:22 |
| 6 | as the treasurer, not as the 30(b)(6) | 11:41:32 |
| 7 | witness, I can't speak for the company, | 11:41:34 |
| 8 | as the treasurer it appears to me there | 11:41:36 |
| 9 | was an ability for the holders to waive | 11:41:39 |
| 10 | that event of default. | 11:41:44 |
| 11 | Q.    And rescind the acceleration, | 11:41:45 |
| 12 | right? | 11:41:48 |
| 13 | A.    That's correct. | 11:41:48 |
| 14 | Q.    Okay. | 11:41:49 |
| 15 | MR. HOWELL:  Same objection to | 11:41:52 |
| 16 | the prior question, sorry. | 11:41:53 |
| 17 | MR. ANKER:  Sure.  Objection | 11:41:55 |
| 18 | noted. | 11:41:59 |
| 19 | Q.    The bankruptcy filing was a | 11:42:00 |
| 20 | voluntary filing, was it not? | 11:42:08 |
| 21 | A.    I think that's the term, but | 11:42:10 |
| 22 | yes. | 11:42:14 |
| 23 | Q.    There was not an involuntary | 11:42:14 |
| 24 | petition filed against EFIH, was there? | 11:42:16 |
| 25 | A.    Not that I'm aware of. | 11:42:19 |

| | | |
|---|---|---|
| 1 | Q.    And the purpose of the filing | 11:42:20 |
| 2 | from the debtors' standpoint was to | 11:42:24 |
| 3 | restructure and refinance their debt, | 11:42:27 |
| 4 | right? | 11:42:29 |
| 5 | MR. HOWELL:  Object to form. | 11:42:30 |
| 6 | A.    Are you asking me why we | 11:42:32 |
| 7 | filed? | 11:42:35 |
| 8 | Q.    Well let me direct you to | 11:42:35 |
| 9 | paragraph 4 of the motion which is | 11:42:36 |
| 10 | Exhibit number 3. | 11:42:43 |
| 11 | A.    Do I still have Exhibit 3? | 11:42:44 |
| 12 | Q.    I think you have everything, | 11:42:47 |
| 13 | but I'm happy to -- | 11:42:49 |
| 14 | A.    He took several things back, | 11:42:50 |
| 15 | so I don't know. | 11:42:51 |
| 16 | MR. ANKER:  Rush, I have a | 11:42:54 |
| 17 | copy that is not marked -- do you | 11:42:56 |
| 18 | have a copy that is not marked you | 11:42:58 |
| 19 | can hand the witness? | 11:43:00 |
| 20 | A.    Is this Exhibit 3? | 11:43:02 |
| 21 | Q.    I think you have it in front | 11:43:04 |
| 22 | of you. | 11:43:05 |
| 23 | A.    I can't read some of the | 11:43:06 |
| 24 | writing, apologies. | 11:43:07 |
| 25 | Q.    Can you turn to page 4 of the | 11:43:08 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 87

| | | |
|---|---|---|
| 1 | document, sir. | 11:43:10 |
| 2 | A.    Yes, sir. | 11:43:16 |
| 3 | Q.    Are you there? | 11:43:16 |
| 4 | A.    Yes. | 11:43:16 |
| 5 | Q.    Can you turn to paragraph 4? | 11:43:17 |
| 6 | A.    I can. | 11:43:18 |
| 7 | Q.    You see that's under the | 11:43:19 |
| 8 | heading preliminary statement?  Do you | 11:43:20 |
| 9 | see that heading? | 11:43:22 |
| 10 | A.    Yes. | 11:43:23 |
| 11 | Q.    And the topic sentence, the | 11:43:24 |
| 12 | very first sentence under preliminary | 11:43:27 |
| 13 | statement reads, why don't you read this | 11:43:30 |
| 14 | one into the record? | 11:43:32 |
| 15 | A.    If you wouldn't mind, let me | 11:43:33 |
| 16 | read the entire paragraph and maybe a | 11:43:35 |
| 17 | couple of others just to orient myself. | 11:43:37 |
| 18 | Q.    Sure. | 11:43:40 |
| 19 | MR. ANKER:  Can we go off the | 11:43:42 |
| 20 | record a second. | 11:43:43 |
| 21 | THE VIDEOGRAPHER:  One moment, | 11:43:44 |
| 22 | please, watch your microphones, the | 11:43:45 |
| 23 | time is 11:43 a.m., we're off the | 11:43:49 |
| 24 | record. | 11:43:53 |
| 25 | (A recess was taken.) | 11:43:53 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  The time is | 11:44:34 |
| 2 | 11:44 a.m., back on the record. | 11:44:45 |
| 3 | Q.    Mr. Horton, in addition to not | 11:44:48 |
| 4 | being a lawyer, you're also not a | 11:44:49 |
| 5 | reporter, you're not a -- you don't work | 11:44:53 |
| 6 | for the press, nor do I, but I'm sure | 11:44:55 |
| 7 | you've heard the expression don't bury | 11:44:58 |
| 8 | the lede, right?  You've heard that | 11:45:00 |
| 9 | expression, right? | 11:45:02 |
| 10 | A.    Not really. | 11:45:03 |
| 11 | Q.    Really?  Okay. | 11:45:04 |
| 12 | A.    I'm from Texas, I didn't hear | 11:45:05 |
| 13 | it, so. | 11:45:07 |
| 14 | Q.    The first sentence, the topic | 11:45:07 |
| 15 | sentence under preliminary statement | 11:45:10 |
| 16 | reads as follows.  Why don't you read it | 11:45:12 |
| 17 | into the record? | 11:45:14 |
| 18 | A.    So again, to be clear, page 4, | 11:45:15 |
| 19 | paragraph 4, first sentence? | 11:45:17 |
| 20 | Q.    Correct. | 11:45:19 |
| 21 | A.    "The debtors commence these | 11:45:19 |
| 22 | Chapter 11 cases to restructure more than | 11:45:22 |
| 23 | $42 billion in funded indebtedness, | 11:45:24 |
| 24 | approximately 7.7 billion of which was | 11:45:28 |
| 25 | issued by the EFIH debtors." | 11:45:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 89

| | | |
|---|---|---|
| 1 | | 11:45:36 |
| 2 | Q.    I think you previously | 11:45:36 |
| 3 | testified that you and senior management | 11:45:38 |
| 4 | for the debtors reviewed this motion | 11:45:39 |
| 5 | before it was filed and approved it, | 11:45:43 |
| 6 | right? | 11:45:45 |
| 7 | A.    That's correct. | 11:45:45 |
| 8 | Q.    That statement that you just | 11:45:45 |
| 9 | read is accurate, is it not? | 11:45:47 |
| 10 | A.    Yes. | 11:45:50 |
| 11 | Q.    Now, did the debtors perceive | 11:45:55 |
| 12 | when they filed for bankruptcy that if | 11:46:01 |
| 13 | they could refinance the EFIH first lien | 11:46:04 |
| 14 | debt in bankruptcy at lower interest | 11:46:08 |
| 15 | rates, and because of the acceleration of | 11:46:10 |
| 16 | the debt not pay the make whole premium, | 11:46:13 |
| 17 | they could unlock value? | 11:46:16 |
| 18 | MR. HOWELL:  Object to form. | 11:46:21 |
| 19 | A.    Again, I think our perspective | 11:46:22 |
| 20 | would be that the debt was due and | 11:46:27 |
| 21 | payable, we were able to repay that debt | 11:46:30 |
| 22 | at lower interest rates and that | 11:46:33 |
| 23 | therefore created value to the entire | 11:46:36 |
| 24 | estate. | 11:46:42 |
| 25 | Q.    Is that a, and I don't mean | 11:46:42 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 90

| | | |
|---|---|---|
| 1 | this in a critical way. | 11:46:45 |
| 2 | A.    Sure. | 11:46:46 |
| 3 | Q.    But I want to get to the | 11:46:46 |
| 4 | right, I want to get to an answer to my | 11:46:48 |
| 5 | question.  Is that a way of answering my | 11:46:50 |
| 6 | question with the word yes? | 11:46:52 |
| 7 | MR. HOWELL:  Object to form. | 11:46:54 |
| 8 | A.    I think your question was more | 11:46:57 |
| 9 | limited than the way we thought about it. | 11:46:58 |
| 10 | Q.    Was a consideration, a | 11:47:00 |
| 11 | consideration, not the only | 11:47:03 |
| 12 | consideration, but a consideration that | 11:47:05 |
| 13 | if the company filed for bankruptcy and | 11:47:08 |
| 14 | it thereby could refinance the debt at | 11:47:11 |
| 15 | lower cost and avoid paying the make | 11:47:14 |
| 16 | whole specified in the first lien | 11:47:17 |
| 17 | indentures, it could unlock value? | 11:47:19 |
| 18 | A.    Simply refinancing the debt at | 11:47:22 |
| 19 | a lower interest rate unlocked value. | 11:47:24 |
| 20 | Q.    Do you -- | 11:47:29 |
| 21 | A.    And I think that's what the 13 | 11:47:30 |
| 22 | million refers to consistently. | 11:47:31 |
| 23 | Q.    I agree. | 11:47:33 |
| 24 | A.    Okay. | 11:47:34 |
| 25 | Q.    I thought so too, but I wasn't | 11:47:35 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | sure I was getting you -- getting that | 11:47:37 |
| 2 | testimony from you and I wanted to make | 11:47:40 |
| 3 | sure we were on the same page? | 11:47:41 |
| 4 | A.   You added make whole into that | 11:47:43 |
| 5 | and we talked specifically about the | 11:47:45 |
| 6 | interest savings. | 11:47:46 |
| 7 | Q.   Well -- | 11:47:47 |
| 8 | A.   In your question. | 11:47:49 |
| 9 | Q.   If you have to pay the make | 11:47:49 |
| 10 | whole much of the interest savings | 11:47:51 |
| 11 | evaporates, right, not all of it, but | 11:47:53 |
| 12 | much of it does, right? | 11:47:55 |
| 13 | A.   It would be an incremental | 11:47:56 |
| 14 | cost. | 11:47:59 |
| 15 | Q.   Who is Jim Millstein? | 11:47:59 |
| 16 | A.   He's the -- he works, | 11:48:03 |
| 17 | Millstein company is financial advisor. | 11:48:06 |
| 18 | Q.   To -- | 11:48:10 |
| 19 | A.   To -- excuse me, my voice.  To | 11:48:11 |
| 20 | the first lien lenders at TCEH. | 11:48:14 |
| 21 | Q.   Well respected individual as | 11:48:18 |
| 22 | far as you know, right? | 11:48:23 |
| 23 | A.   I don't know. | 11:48:24 |
| 24 | Q.   Mr. -- why don't I show you | 11:48:27 |
| 25 | the document.  I don't want to give you | 11:48:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | -- I want to give you an opportunity to | 11:48:34 |
| 2 | look at anything we have. | 11:48:35 |
| 3 | (Horton Exhibit 7 for | 11:48:37 |
| 4 | identification, Bates stamped TPG | 11:48:46 |
| 5 | 00003967.) | 11:48:48 |
| 6 | Q.    This has been marked as | 11:48:38 |
| 7 | Exhibit 7.  It's a one-page document | 11:48:43 |
| 8 | bearing the Bates stamped TPG 00003967. | 11:48:45 |
| 9 | Have you seen this document before today, | 11:49:02 |
| 10 | Mr. Horton? | 11:49:03 |
| 11 | A.    I have seen this page.  Is | 11:49:04 |
| 12 | this the complete document, do you know? | 11:49:06 |
| 13 | Q.    I believe it was produced to | 11:49:09 |
| 14 | us in a form as an independent document. | 11:49:10 |
| 15 | A.    Okay. | 11:49:13 |
| 16 | Q.    I wasn't at any meeting with | 11:49:13 |
| 17 | Mr. Millstein where he made a | 11:49:15 |
| 18 | presentation, so it's possible that this | 11:49:17 |
| 19 | is just one page of a much bigger | 11:49:18 |
| 20 | document. | 11:49:20 |
| 21 | A.    Sure, I just didn't know if | 11:49:20 |
| 22 | you knew that or not. | 11:49:22 |
| 23 | Q.    Yes, I don't. | 11:49:23 |
| 24 | A.    Okay. | 11:49:24 |
| 25 | Q.    He made the -- whether this | 11:49:25 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 93

| | | |
|---|---|---|
| 1 | was a stand-alone page or part of a | 11:49:26 |
| 2 | larger document, Mr. Millstein presented | 11:49:29 |
| 3 | Exhibit 7 to the debtors, right? | 11:49:32 |
| 4 | A.    I believe that's correct. | 11:49:35 |
| 5 | Q.    And he did so sometime in | 11:49:38 |
| 6 | 2013? | 11:49:43 |
| 7 | A.    My understanding, this was | 11:49:45 |
| 8 | early, early -- May 2013, something like | 11:49:47 |
| 9 | that. | 11:49:51 |
| 10 | Q.    And you'll note that he says | 11:49:51 |
| 11 | at the top it says alternative | 11:49:54 |
| 12 | refinancing case.  Do you see that | 11:49:56 |
| 13 | language? | 11:49:58 |
| 14 | A.    I do see that language. | 11:49:58 |
| 15 | Q.    And it says "Assuming that | 11:49:59 |
| 16 | prepayment penalties are not payable | 11:50:01 |
| 17 | under the EFIH indentures on automatic | 11:50:04 |
| 18 | acceleration upon filing by EFIH for | 11:50:07 |
| 19 | Chapter 11, significant value could be | 11:50:10 |
| 20 | unlocked." | 11:50:14 |
| 21 | Did I read that accurately? | 11:50:14 |
| 22 | A.    You did indeed. | 11:50:16 |
| 23 | Q.    And did the debtors agree with | 11:50:17 |
| 24 | that view? | 11:50:19 |
| 25 | A.    I don't -- I don't think so. | 11:50:19 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | I don't think so.  I don't think that was | 11:50:26 |
| 2 | our, our view of where we were in the | 11:50:28 |
| 3 | case, not even the case, in the situation | 11:50:32 |
| 4 | of Project Olympus.  I don't think that | 11:50:35 |
| 5 | was our view at that point in time. | 11:50:38 |
| 6 | Q.    Okay.  And I really appreciate | 11:50:40 |
| 7 | your answer because it was precise. | 11:50:43 |
| 8 | Let's fast forward to the fall of 2013, | 11:50:44 |
| 9 | November 2013 or later and into 2014 | 11:50:49 |
| 10 | leading up to the April 29, 2014 filing | 11:50:54 |
| 11 | for bankruptcy.  During that later point | 11:50:58 |
| 12 | in time, was it the debtors' view that by | 11:51:02 |
| 13 | filing for Chapter 11, significant value | 11:51:04 |
| 14 | could be unlocked assuming that the | 11:51:10 |
| 15 | prepayment penalties were not payable | 11:51:14 |
| 16 | under the EFIH indentures? | 11:51:16 |
| 17 | A.    My, my statement about at that | 11:51:18 |
| 18 | -- at this point in time, we had no view | 11:51:21 |
| 19 | that we were going to file EFIH.  We were | 11:51:23 |
| 20 | working under Project Olympus and the | 11:51:26 |
| 21 | objective -- an objective of Project | 11:51:29 |
| 22 | Olympus was to keep EFH and EFIH out of | 11:51:33 |
| 23 | bankruptcy, so we didn't share this view | 11:51:38 |
| 24 | at all.  And I'm not sure what he meant | 11:51:40 |
| 25 | specifically about his statement, but | 11:51:46 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | that wasn't our view.  This wasn't the | 11:51:47 |
| 2 | company's view.  This wasn't the | 11:51:49 |
| 3 | company's focus at all. | 11:51:51 |
| 4 | Q.    We're going to go over some | 11:51:54 |
| 5 | documents, and I appreciate your answer, | 11:51:56 |
| 6 | it's very helpful to me.  I think you | 11:51:57 |
| 7 | didn't understand my follow-up question. | 11:52:00 |
| 8 | And let me -- maybe I wasn't clear. | 11:52:02 |
| 9 | I understand that at the time | 11:52:04 |
| 10 | Mr. Millstein prepared Exhibit number 7, | 11:52:05 |
| 11 | which was in the first half of 2013 you | 11:52:10 |
| 12 | believe, his statement that by filing | 11:52:13 |
| 13 | EFIH, by putting EFIH into bankruptcy | 11:52:17 |
| 14 | that would unlock value was not the | 11:52:20 |
| 15 | company's view then.  I want you to now | 11:52:23 |
| 16 | move -- | 11:52:26 |
| 17 | A.    That's what I was trying to | 11:52:27 |
| 18 | correct. | 11:52:28 |
| 19 | Q.    I understood.  But -- | 11:52:28 |
| 20 | A.    Again, if I could correct my | 11:52:31 |
| 21 | statement.  What I am -- what I said was | 11:52:33 |
| 22 | this was not the company's view at this | 11:52:37 |
| 23 | time. | 11:52:40 |
| 24 | Q.    Okay. | 11:52:40 |
| 25 | A.    And the at this time was that | 11:52:41 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | it was necessary to file EFIH, not | 11:52:44 |
| 2 | whether or not at some future time we | 11:52:47 |
| 3 | were going to be able to unlock | 11:52:49 |
| 4 | significant value.  I wanted to be sure | 11:52:51 |
| 5 | we clarified that. | 11:52:53 |
| 6 |          Q.    Now I want to -- I want | 11:52:54 |
| 7 | clarity as well.  Take your head out of | 11:52:56 |
| 8 | early 2013. | 11:53:00 |
| 9 |          A.    So put this document aside. | 11:53:01 |
| 10 |          Q.    Sure, put the document aside. | 11:53:03 |
| 11 |          A.    Okay. | 11:53:05 |
| 12 |          Q.    Let's go to the first quarter | 11:53:06 |
| 13 | of 2014, January 1 to March 31, 2014. | 11:53:07 |
| 14 | Was it the debtors' view that by filing, | 11:53:16 |
| 15 | by putting EFIH into bankruptcy, | 11:53:19 |
| 16 | significant value could be unlocked | 11:53:21 |
| 17 | assuming that the prepayment penalties | 11:53:23 |
| 18 | are not payable under the EFIH | 11:53:27 |
| 19 | indentures? | 11:53:29 |
| 20 |          A.    There is value in not paying | 11:53:33 |
| 21 | the make whole payments.  I cannot | 11:53:38 |
| 22 | dispute that. | 11:53:41 |
| 23 |          Q.    Okay.  So the answer to my | 11:53:41 |
| 24 | question is yes? | 11:53:43 |
| 25 |          A.    Again, if you wouldn't mind, | 11:53:45 |

| | |
|---|---|
| 1    restate your question. | 11:53:47 |
| 2         Q.    Sure, I'll read it back to you | 11:53:48 |
| 3    from the record. | 11:53:49 |
| 4         A.    Thank you. | 11:53:50 |
| 5         Q.    Let's go to the first quarter | 11:53:51 |
| 6    of 2014, January 1 to March 31, 2014. | 11:53:53 |
| 7    Was it the debtors' view that by putting | 11:53:57 |
| 8    EFIH into bankruptcy, significant value | 11:54:01 |
| 9    could be unlocked assuming that the | 11:54:03 |
| 10    prepayment penalties are not payable | 11:54:05 |
| 11    under the EFIH indentures? | 11:54:07 |
| 12         A.    I would not characterize it in | 11:54:09 |
| 13    that fashion, no. | 11:54:10 |
| 14         Q.    Is the statement inaccurate in | 11:54:11 |
| 15    reflecting the debtors' views at the | 11:54:14 |
| 16    time? | 11:54:16 |
| 17         A.    That putting EFIH in | 11:54:16 |
| 18    bankruptcy would unlock value because we | 11:54:18 |
| 19    would avoid the make whole?  No, I don't | 11:54:20 |
| 20    believe that's accurate. | 11:54:22 |
| 21         Q.    But you don't dispute that in | 11:54:23 |
| 22    fact not paying the make whole creates | 11:54:29 |
| 23    value, right? | 11:54:32 |
| 24              MR. HOWELL:  Object to form. | 11:54:33 |
| 25         Q.    I think you so testified a few | 11:54:34 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 98

| | | |
|---|---|---|
| 1 | minutes ago? | 11:54:36 |
| 2 | A. Not having to pay the make | 11:54:36 |
| 3 | whole is value enhancing. | 11:54:38 |
| 4 | Q. Okay. Now, the motion that | 11:54:41 |
| 5 | was filed at the outset of this case to | 11:54:47 |
| 6 | refinance the first lien debt was the | 11:54:49 |
| 7 | debtors' motion, right? | 11:54:52 |
| 8 | A. That's correct. | 11:54:53 |
| 9 | Q. No EFIH first lienholder filed | 11:54:54 |
| 10 | that motion, right? | 11:54:57 |
| 11 | A. That's correct. | 11:54:58 |
| 12 | Q. No EFIH first lienholder | 11:54:59 |
| 13 | required the debtors to file that motion, | 11:55:01 |
| 14 | right? | 11:55:03 |
| 15 | A. Not that I'm aware of. | 11:55:03 |
| 16 | Q. The first lien indenture | 11:55:05 |
| 17 | trustee didn't require the debtors to | 11:55:07 |
| 18 | file that motion, did it? | 11:55:09 |
| 19 | A. That's correct. | 11:55:10 |
| 20 | Q. And no EFIH first lienholder | 11:55:10 |
| 21 | demanded? I mean I understand -- let's | 11:55:18 |
| 22 | put the language in the indenture aside. | 11:55:20 |
| 23 | Other than whatever the indenture says, | 11:55:23 |
| 24 | no EFIH first lien noteholder demanded | 11:55:25 |
| 25 | upon bankruptcy payment of all principal | 11:55:28 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | and interest, right? | 11:55:30 |
| 2 | A.    Not that I'm aware of. | 11:55:31 |
| 3 | Q.    Okay.  Now, Mr. Keglevic, I'm | 11:55:35 |
| 4 | going to take you back a little bit -- | 11:55:47 |
| 5 | A.    Mr. Horton. | 11:55:49 |
| 6 | Q.    I'm sorry, Mr. Horton. | 11:55:50 |
| 7 | A.    That's okay. | 11:55:51 |
| 8 | Q.    I apologize? | 11:55:52 |
| 9 | A.    With all due respect to Mr. | 11:55:53 |
| 10 | Keglevic. | 11:55:55 |
| 11 | Q.    With all due respect to Mr. | 11:55:55 |
| 12 | Keglevic, I apologize to both of you. | 11:55:57 |
| 13 | I want to take you to a | 11:55:59 |
| 14 | different point in time, pre-bankruptcy. | 11:56:01 |
| 15 | I think you said earlier, but I don't | 11:56:06 |
| 16 | want to put words in your mouth, that | 11:56:07 |
| 17 | there were points in time where EFIH | 11:56:09 |
| 18 | considered refinancing its first lien | 11:56:12 |
| 19 | debt and paying the make whole premium | 11:56:16 |
| 20 | that would have been required under the | 11:56:18 |
| 21 | indenture, did I correctly understand | 11:56:20 |
| 22 | your testimony? | 11:56:22 |
| 23 | A.    No, sir. | 11:56:22 |
| 24 | Q.    Did there come any point in | 11:56:23 |
| 25 | time pre-bankruptcy where EFIH considered | 11:56:25 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 100

| | | |
|---|---|---|
| 1 | the possibility of refinancing its first | 11:56:28 |
| 2 | lien debt and paying the make whole | 11:56:32 |
| 3 | premium? | 11:56:34 |
| 4 | A.    We analyzed the cost of | 11:56:34 |
| 5 | potentially re- -- doing an optional | 11:56:39 |
| 6 | redemption and paying the make whole and | 11:56:43 |
| 7 | analyzed what is that cost.  That was one | 11:56:48 |
| 8 | of our datapoints. | 11:56:50 |
| 9 | Q.    Okay? | 11:56:55 |
| 10 | A.    Again, in the context of what | 11:56:56 |
| 11 | can we do outside of bankruptcy. | 11:56:58 |
| 12 | Q.    I appreciate that answer.  And | 11:57:00 |
| 13 | I may fall back on using the word | 11:57:03 |
| 14 | considered, just so you understand for | 11:57:06 |
| 15 | the purposes of this deposition, what you | 11:57:08 |
| 16 | just said to me is a -- you considered | 11:57:11 |
| 17 | it, you thought about it, you analyzed | 11:57:14 |
| 18 | it, you decided not to do it, but you | 11:57:16 |
| 19 | thought about it, that's all I was | 11:57:18 |
| 20 | asking. | 11:57:19 |
| 21 | Did there ever come a time | 11:57:19 |
| 22 | when the company thought about, as an | 11:57:22 |
| 23 | option, refinancing the first lien debt | 11:57:28 |
| 24 | outside of bankruptcy and paying the make | 11:57:30 |
| 25 | whole, and I think you just answered me | 11:57:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 101

| | | |
|---|---|---|
| 1 | the answer is yes, right? | 11:57:34 |
| 2 | A.    We looked in the optional | 11:57:35 |
| 3 | redemption section, looked at what's the | 11:57:37 |
| 4 | cost of make whole, what's the cost of | 11:57:41 |
| 5 | doing an equity claw, what's the benefit | 11:57:44 |
| 6 | of doing an equity claw, we looked at | 11:57:47 |
| 7 | waiting and utilizing the call features. | 11:57:49 |
| 8 | Q.    When was the first time you | 11:57:55 |
| 9 | recollect the debtors considered the | 11:57:58 |
| 10 | possibility of, analyzed the possibility, | 11:58:00 |
| 11 | I'll use your term, analyzed the | 11:58:06 |
| 12 | possibility of repaying the first lien | 11:58:09 |
| 13 | debt outside of bankruptcy by exercising | 11:58:13 |
| 14 | the optional redemption provision? | 11:58:15 |
| 15 | A.    I would say including all of | 11:58:17 |
| 16 | those that I listed, we probably began | 11:58:24 |
| 17 | that, you know, sometime in late 2012, | 11:58:28 |
| 18 | early 2013, something like that. | 11:58:33 |
| 19 | Q.    Let me show you a document | 11:58:35 |
| 20 | which I think may suggest you were doing | 11:58:45 |
| 21 | it a year -- you were considering the | 11:58:48 |
| 22 | issue as early as a year earlier, but | 11:58:50 |
| 23 | maybe I misunderstood it. | 11:58:52 |
| 24 | MR. ANKER:  This will be | 11:59:02 |
| 25 | Exhibit number 8. | 11:59:03 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 102

| | | |
|---|---|---|
| 1 | (Horton Exhibit 8 for | 11:59:05 |
| 2 | identification, Bates stamped | 11:59:21 |
| 3 | EFIHMW 00005742.) | 11:59:21 |
| 4 | Q.    It's a three page document, | 11:59:05 |
| 5 | the first page of which -- I'm sorry, | 11:59:10 |
| 6 | none of these pages bear a Bates stamp | 11:59:15 |
| 7 | EFIHMW 00005742.  The other two pages | 11:59:21 |
| 8 | don't have a Bates stamp, this is how | 11:59:27 |
| 9 | they were produced to us. | 11:59:30 |
| 10 | Mr. Horton, I realize you are | 11:59:31 |
| 11 | not listed as either the author or | 11:59:37 |
| 12 | recipient of the email that is the top | 11:59:40 |
| 13 | page, but do you recognize this document? | 11:59:45 |
| 14 | A.    No, I do not. | 11:59:48 |
| 15 | Q.    Let me just correct the | 11:59:49 |
| 16 | record.  I said that it was a three-page | 11:59:51 |
| 17 | document.  We've actually, it's a | 11:59:53 |
| 18 | one-page email attaching a three-page | 11:59:55 |
| 19 | spreadsheet. | 11:59:59 |
| 20 | Mr. Ley is an employee, was an | 12:00:01 |
| 21 | employee of EFH who worked in the | 12:00:05 |
| 22 | treasury function in or about the time of | 12:00:08 |
| 23 | this document, November 2011? | 12:00:11 |
| 24 | A.    Yes, sir. | 12:00:13 |
| 25 | Q.    And who was Mr. Swamy?  Am I | 12:00:13 |

| | | |
|---|---|---|
| 1 | pronouncing his name correctly? | 12:00:18 |
| 2 | A.    I don't know exactly who -- | 12:00:22 |
| 3 | oh, Sapna, it was actually a female, and | 12:00:24 |
| 4 | she worked for Mr. Ley if I recall. | 12:00:28 |
| 5 | Q.    Would you agree with me, I | 12:00:34 |
| 6 | understand you don't recognize the | 12:00:35 |
| 7 | document, but it appears that what is | 12:00:37 |
| 8 | being attached is an analysis of what the | 12:00:39 |
| 9 | cost would be to various debtors | 12:00:44 |
| 10 | including EFIH were it to refinance its | 12:00:47 |
| 11 | then outstanding debt either through the | 12:00:53 |
| 12 | optional redemption provision or any | 12:00:55 |
| 13 | equity clawback provision that was | 12:00:58 |
| 14 | available? | 12:01:01 |
| 15 | A.    It appears that the terms for | 12:01:01 |
| 16 | those optional redemptions are on the | 12:01:07 |
| 17 | page. | 12:01:10 |
| 18 | Q.    And does this refresh your | 12:01:10 |
| 19 | recollection that at least at some level | 12:01:12 |
| 20 | the debtors were considering as far back | 12:01:16 |
| 21 | as 2011 the possibility of refinancing | 12:01:18 |
| 22 | their EFIH and other debt using the | 12:01:24 |
| 23 | optional redemption and paying the make | 12:01:28 |
| 24 | whole? | 12:01:31 |
| 25 | A.    I don't know the purpose of | 12:01:31 |

Page 104

| | | |
|---|---|---|
| 1 | this document. | 12:01:32 |
| 2 | Q.    Okay.  By the spring, and I | 12:01:32 |
| 3 | think you thought it was the spring of | 12:01:47 |
| 4 | 2013, but by the spring of 2012, wasn't | 12:01:49 |
| 5 | -- weren't the debtors considering doing | 12:01:51 |
| 6 | analyses to determine how much they would | 12:01:56 |
| 7 | have to pay in a make whole were they to | 12:01:59 |
| 8 | refinance their first lien debt, EFIH | 12:02:02 |
| 9 | first lien debt? | 12:02:05 |
| 10 | A.    What was the date, I | 12:02:06 |
| 11 | apologize, I was -- | 12:02:09 |
| 12 | Q.    Let me show you the document. | 12:02:10 |
| 13 | A.    That's better. | 12:02:12 |
| 14 | Q.    I don't want to -- I don't | 12:02:13 |
| 15 | want to -- I really am not here to have a | 12:02:14 |
| 16 | memory exam with you, I would not | 12:02:17 |
| 17 | remember things. | 12:02:19 |
| 18 | A.    At my age that's good. | 12:02:19 |
| 19 | Q.    It's inconceivable I would | 12:02:21 |
| 20 | remember anything that happened in April | 12:02:23 |
| 21 | of 2012. | 12:02:24 |
| 22 | A.    Understood. | 12:02:26 |
| 23 | Q.    I really want to understand | 12:02:27 |
| 24 | what the facts are, not what your memory | 12:02:28 |
| 25 | without being shown the documents is. | 12:02:30 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 105

| | | |
|---|---|---|
| 1 | A.    Thank you. | 12:02:32 |
| 2 | (Horton Exhibit 9 for | 12:02:57 |
| 3 | identification, Bates stamped | 12:03:01 |
| 4 | EFIHMW 00275045.) | 12:03:03 |
| 5 | Q.    I'm going to show you what's | 12:02:57 |
| 6 | been marked as Exhibit 9.  It's EFIHMW | 12:02:59 |
| 7 | 0027505 -- 5045, excuse me, it's a cover | 12:03:05 |
| 8 | email from Mr. Moldovan to Mr. Ley cc'ing | 12:03:07 |
| 9 | Mr. Carter with a bunch of it looks to me | 12:03:12 |
| 10 | like Excel spreadsheets attached, but you | 12:03:17 |
| 11 | can tell me.  Do you recognize this | 12:03:19 |
| 12 | document, Mr. Horton, what's been marked | 12:03:42 |
| 13 | as Exhibit 9? | 12:03:49 |
| 14 | A.    I don't recognize the email. | 12:03:52 |
| 15 | Clearly I wasn't copied on it.  And I | 12:03:55 |
| 16 | don't know the purpose of this document | 12:04:03 |
| 17 | that Mr. Ley produced. | 12:04:09 |
| 18 | Q.    Well, do you see the subject | 12:04:12 |
| 19 | line in the cover email? | 12:04:14 |
| 20 | A.    Yes, it's a calculation of the | 12:04:18 |
| 21 | make whole economics according to that | 12:04:20 |
| 22 | subject line, yes. | 12:04:24 |
| 23 | Q.    And in fact, when you look at | 12:04:25 |
| 24 | the attachment, the spreadsheets, it | 12:04:27 |
| 25 | calculates what the make whole cost would | 12:04:30 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | be at various points in time were the | 12:04:33 |
| 2 | debtors to refinance various of their | 12:04:38 |
| 3 | debt, including the EFIH first lien debt | 12:04:40 |
| 4 | that was outstanding at that time, right? | 12:04:44 |
| 5 | A.    One, I don't know if these | 12:04:46 |
| 6 | calculations are correct, so I cannot | 12:04:49 |
| 7 | answer that question, so -- | 12:04:51 |
| 8 | Q.    Let me reframe my question. | 12:04:53 |
| 9 | Whether or not the calculations are | 12:04:55 |
| 10 | correct or incorrect, you would agree | 12:04:57 |
| 11 | with me, would you not, that the | 12:05:02 |
| 12 | attachments to Exhibit 9 consist of | 12:05:03 |
| 13 | calculations made by EFIH employees of | 12:05:06 |
| 14 | what they believed would have been the | 12:05:10 |
| 15 | make whole premium due were the debtors | 12:05:13 |
| 16 | to refinance various of their issuances | 12:05:16 |
| 17 | including the EFIH first lien debt? | 12:05:19 |
| 18 | A.    It appears to me from these | 12:05:22 |
| 19 | titles that they are attempting to make | 12:05:25 |
| 20 | make whole calculations for several | 12:05:28 |
| 21 | tranches of debt. | 12:05:31 |
| 22 | Q.    Now, you don't recollect the | 12:05:34 |
| 23 | purpose of this document, do I understand | 12:05:36 |
| 24 | correctly? | 12:05:39 |
| 25 | A.    I'm not -- I don't know. | 12:05:39 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | (Horton Exhibit 10 for | 12:05:39 |
| 2 | identification, Bates stamped | 12:05:39 |
| 3 | EFIHMW 00007382.) | 12:05:53 |
| 4 | Q.    Let me try to refresh your | 12:05:46 |
| 5 | recollection.  Let me show you a document | 12:05:48 |
| 6 | marked as Exhibit 10.  And this bears the | 12:05:50 |
| 7 | Bates stamped EFIHMW 00007382 and then | 12:05:52 |
| 8 | also has a bunch of spreadsheets that are | 12:05:56 |
| 9 | attached to it. | 12:05:58 |
| 10 | Now, Mr. Horton, you'll see | 12:05:59 |
| 11 | that the cover email here is addressed to | 12:06:10 |
| 12 | you, is it not? | 12:06:12 |
| 13 | A.    It is. | 12:06:14 |
| 14 | Q.    Okay.  And Mr. Horton, if it's | 12:06:14 |
| 15 | easier for you, we have, we took the | 12:06:18 |
| 16 | liberty of printing out the attachments | 12:06:22 |
| 17 | on 8-1/2 by 14 paper because we thought | 12:06:25 |
| 18 | it might be easier for others. | 12:06:29 |
| 19 | MR. ANKER:  Why don't we mark | 12:06:33 |
| 20 | that as Exhibit number 11. | 12:06:34 |
| 21 | (Horton Exhibit 11 for | 12:06:36 |
| 22 | identification, larger printout of | 12:06:36 |
| 23 | spreadsheets in Exhibit 10.) | 12:06:36 |
| 24 | Q.    I'll represent to you that | 12:06:36 |
| 25 | what we're handing you as Exhibit 11 is | 12:06:37 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 108

| | | |
|---|---|---|
| 1 | the same thing as the spreadsheet pages | 12:06:39 |
| 2 | on Exhibit 10, just easier at my age to | 12:06:41 |
| 3 | read it on 8-1/2 by 14 paper. | 12:06:44 |
| 4 | A.    Okay. | 12:06:54 |
| 5 | Q.    Okay.  Do you recall receiving | 12:06:54 |
| 6 | this document, let's start with Exhibit | 12:06:56 |
| 7 | 10, on or about May 2nd, 2012? | 12:06:58 |
| 8 | A.    I don't recall this document. | 12:07:00 |
| 9 | It's clear that it was addressed to me. | 12:07:01 |
| 10 | Q.    Does this refresh your | 12:07:08 |
| 11 | recollection that as early as the first | 12:07:09 |
| 12 | half of 2012 the debtors were calculating | 12:07:11 |
| 13 | what the cost might be were it to | 12:07:15 |
| 14 | refinance various of its debt, including | 12:07:18 |
| 15 | the EFIH first lien debt then outstanding | 12:07:22 |
| 16 | and pay the make whole premium? | 12:07:25 |
| 17 | A.    Again, I don't recall the | 12:07:27 |
| 18 | purpose of this.  I don't know if we were | 12:07:32 |
| 19 | building a database, if they were | 12:07:33 |
| 20 | building a model, you know, what we were | 12:07:37 |
| 21 | considering at the time.  I don't mean to | 12:07:39 |
| 22 | be evasive with you, it's just I don't | 12:07:41 |
| 23 | recall. | 12:07:44 |
| 24 | Q.    I don't take you to be | 12:07:44 |
| 25 | evasive.  I take you to be giving me | 12:07:46 |

| | | |
|---|---|---|
| 1 | truthful testimony.  So please don't | 12:07:48 |
| 2 | apologize. | 12:07:51 |
| 3 | Let's look at the cover page | 12:07:52 |
| 4 | though if you would with me for a moment. | 12:07:53 |
| 5 | A.    Sure. | 12:07:55 |
| 6 | Q.    You'll see that the | 12:07:56 |
| 7 | calculation, according to Mr. Ley, look | 12:07:57 |
| 8 | at the second paragraph of his email to | 12:08:01 |
| 9 | you, do you see that, sir? | 12:08:03 |
| 10 | A.    Yes, sir. | 12:08:04 |
| 11 | Q.    If you go to the second it | 12:08:05 |
| 12 | says "The other columns show the interest | 12:08:06 |
| 13 | savings/cost if the notes and make whole/ | 12:08:09 |
| 14 | call premium are refinanced 6.5 percent | 12:08:13 |
| 15 | and the effective yield of that interest | 12:08:16 |
| 16 | savings/cost over the make whole call | 12:08:19 |
| 17 | premium." | 12:08:22 |
| 18 | Did I read that correctly? | 12:08:23 |
| 19 | A.    I think so. | 12:08:24 |
| 20 | Q.    Now, Mr. Ley was someone who | 12:08:34 |
| 21 | worked in your -- in the treasury | 12:08:38 |
| 22 | function at the debtors, right? | 12:08:41 |
| 23 | A.    That's correct. | 12:08:43 |
| 24 | Q.    Well respected employee? | 12:08:43 |
| 25 | A.    I think so. | 12:08:45 |

| | | |
|---|---|---|
| 1 | Q. He did an analysis here I | 12:08:46 |
| 2 | believe assuming that the debtors could | 12:08:54 |
| 3 | refinance all of their debt at an annual | 12:08:56 |
| 4 | interest rate of 6.5 percent. Is that | 12:08:59 |
| 5 | how you read this as well? | 12:09:01 |
| 6 | A. That appears to be his | 12:09:03 |
| 7 | assumption, yes. | 12:09:07 |
| 8 | Q. Based on your experience with | 12:09:10 |
| 9 | Mr. Ley, was he in the business of | 12:09:12 |
| 10 | handing you documents and doing analyses | 12:09:14 |
| 11 | for you with assumptions that were wildly | 12:09:16 |
| 12 | inaccurate? | 12:09:19 |
| 13 | MR. HOWELL: Object to form. | 12:09:27 |
| 14 | A. Again, I don't know the basis | 12:09:28 |
| 15 | for this 6.5 percent. So, so the way | 12:09:29 |
| 16 | that I operate in my group is that when | 12:09:34 |
| 17 | we're going to finalize assumptions it | 12:09:38 |
| 18 | wouldn't come from Mr. Ley, it would come | 12:09:41 |
| 19 | from the group, we would cross-check it | 12:09:46 |
| 20 | with our, with our bulge bracket banks, | 12:09:47 |
| 21 | so forth. I don't know if this is wobbly | 12:09:52 |
| 22 | or not, because again, I don't have | 12:09:54 |
| 23 | enough context. | 12:09:56 |
| 24 | Q. Do you have any -- | 12:10:01 |
| 25 | A. I can only speak to the | 12:10:02 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | question -- to this document at this | 12:10:03 |
| 2 | moment. | 12:10:05 |
| 3 | Q.    Do you have any reason as you | 12:10:05 |
| 4 | sit here today to think that the debtors | 12:10:07 |
| 5 | -- let me strike that. | 12:10:14 |
| 6 | Do you have any reason as you | 12:10:16 |
| 7 | sit here today to believe that Mr. Ley | 12:10:17 |
| 8 | thought that 6.5 percent was wildly | 12:10:19 |
| 9 | inaccurate? | 12:10:22 |
| 10 | A.    I have no idea what Mr. Ley | 12:10:22 |
| 11 | was thinking at the time. | 12:10:24 |
| 12 | Q.    Do you recall having any | 12:10:29 |
| 13 | conversation with him about this document | 12:10:30 |
| 14 | saying, in substance, Jeff, where did you | 12:10:32 |
| 15 | come up with 6.5 percent? | 12:10:35 |
| 16 | A.    I don't recall reviewing this | 12:10:36 |
| 17 | document with Jeff. | 12:10:38 |
| 18 | Q.    Okay, okay.  If you -- the | 12:10:39 |
| 19 | first lien debt that the debtors were | 12:10:43 |
| 20 | able to issue in August of 2012, a few | 12:10:46 |
| 21 | months thereafter, was at 6.875 percent, | 12:10:48 |
| 22 | right? | 12:10:51 |
| 23 | A.    It's a five year piece of | 12:10:51 |
| 24 | paper.  I have no idea what it -- how | 12:10:54 |
| 25 | that relates to this. | 12:10:57 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 112

| | | |
|---|---|---|
| 1 | Q.    When you say how it relates to | 12:10:58 |
| 2 | this you mean to Exhibit 10 and Mr. Ley's | 12:11:00 |
| 3 | analysis at 6.5 percent, right? | 12:11:02 |
| 4 | A.    Yes, I have not reviewed this, | 12:11:04 |
| 5 | I don't have any context. | 12:11:06 |
| 6 | Q.    If you could turn to the | 12:11:07 |
| 7 | analysis on the spreadsheet that is | 12:11:15 |
| 8 | attached for the 10 percent EFIH first | 12:11:17 |
| 9 | lien make whole. | 12:11:24 |
| 10 | A.    There's two pages.  Which | 12:11:30 |
| 11 | page?  Are you on -- which page?  Are you | 12:11:33 |
| 12 | on the big page or the small sheet? | 12:11:36 |
| 13 | Q.    I'm looking at the small, but | 12:11:40 |
| 14 | I'm happy to look at -- | 12:11:41 |
| 15 | A.    No, I'm with you on that. | 12:11:42 |
| 16 | There's two pages, one that says 10 | 12:11:44 |
| 17 | percent first lien make whole. | 12:11:46 |
| 18 | Q.    I think one is EFH and one is | 12:11:47 |
| 19 | EFIH. | 12:11:50 |
| 20 | A.    Got you.  Which one were you | 12:11:50 |
| 21 | referring to? | 12:11:52 |
| 22 | Q.    EFIH. | 12:11:53 |
| 23 | A.    Got you.  Okay. | 12:11:53 |
| 24 | Q.    And am I -- as I interpret | 12:11:54 |
| 25 | this document, I want to make sure I'm | 12:11:55 |

| | | |
|---|---|---|
| 1 | interpreting it right, it shows that even | 12:11:58 |
| 2 | with the payment of the make whole, were | 12:12:01 |
| 3 | EFIH able to refinance at 6.5 percent, | 12:12:07 |
| 4 | there would be a net financing savings to | 12:12:11 |
| 5 | EFIH, am I right in my review of this? | 12:12:15 |
| 6 | A.   Again, I have no personal | 12:12:18 |
| 7 | knowledge of this document.  I can't | 12:12:23 |
| 8 | opine of how these calculations were | 12:12:25 |
| 9 | made.  I certainly wouldn't do it here on | 12:12:29 |
| 10 | the fly. | 12:12:31 |
| 11 | Q.   In -- let's put the document | 12:12:31 |
| 12 | aside then, okay? | 12:12:35 |
| 13 | A.   Okay. | 12:12:36 |
| 14 | Q.   In the summer of 2012, in | 12:12:37 |
| 15 | fact, Oncor redeemed outstanding notes | 12:12:50 |
| 16 | and paid a make whole premium of 3 point | 12:12:53 |
| 17 | -- I'm sorry, of $33 million, right? | 12:12:57 |
| 18 | A.   Oncor is a ring-fenced entity, | 12:13:00 |
| 19 | it has its own treasury operations, its | 12:13:03 |
| 20 | own independent board.  I don't know what | 12:13:06 |
| 21 | Oncor did. | 12:13:08 |
| 22 | Q.   You had no knowledge at the | 12:13:09 |
| 23 | time of whether Oncor did any refinancing | 12:13:13 |
| 24 | in the summer of 2003 and paid a make | 12:13:17 |
| 25 | whole premium? | 12:13:20 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 114

| | | |
|---|---|---|
| 1 | MR. HOWELL:  Objection to | 12:13:20 |
| 2 | form. | 12:13:21 |
| 3 | A.    2003? | 12:13:21 |
| 4 | Q.    I'm sorry, 2012, my apologies? | 12:13:22 |
| 5 | A.    That's okay, I'm just trying | 12:13:24 |
| 6 | to stay straight with us.  I'm not aware | 12:13:26 |
| 7 | what they did, specifically what they | 12:13:28 |
| 8 | did, what the prices were.  They have | 12:13:30 |
| 9 | their own treasury operations, own | 12:13:32 |
| 10 | management team, own independent board. | 12:13:34 |
| 11 | Q.    You mentioned earlier I think | 12:13:47 |
| 12 | bulge bracket banks that the company | 12:13:49 |
| 13 | would speak to about refinancing.  Who | 12:13:51 |
| 14 | were the company's principal bankers? | 12:13:54 |
| 15 | Who were its bulge bracket bankers? | 12:13:57 |
| 16 | A.    I would suggest it would be | 12:14:00 |
| 17 | Citigroup, Goldman Sachs, JPMorgan, | 12:14:02 |
| 18 | Morgan Stanley.  Probably missing one. | 12:14:05 |
| 19 | Occasionally I would talk to Credit | 12:14:13 |
| 20 | Suisse.  Those were -- those were | 12:14:16 |
| 21 | predominantly the banks that we -- | 12:14:22 |
| 22 | Q.    The company continued into -- | 12:14:24 |
| 23 | well, certainly by 2013, you don't | 12:14:25 |
| 24 | recollect what we've been talking about | 12:14:30 |
| 25 | in 2012, certainly by 2013, EFIH was | 12:14:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | considering the possibility, analyzing | 12:14:36 |
| 2 | the possibility of refinancing outside of | 12:14:38 |
| 3 | bankruptcy its first lien debt and paying | 12:14:42 |
| 4 | the make whole, right? | 12:14:44 |
| 5 | A.    We were, again, making a | 12:14:45 |
| 6 | calculation of the cost of a make whole | 12:14:49 |
| 7 | in the event that we exercised an | 12:14:52 |
| 8 | optional redemption of EFIH debt.  So | 12:14:54 |
| 9 | whether we thought that was going to be a | 12:15:03 |
| 10 | possibility or not, whether we were | 12:15:04 |
| 11 | considering that, you know, at that point | 12:15:06 |
| 12 | in time, I don't know.  It was certainly | 12:15:08 |
| 13 | a datapoint though. | 12:15:13 |
| 14 | Q.    And you were doing an analysis | 12:15:14 |
| 15 | to figure out whether it would be | 12:15:15 |
| 16 | advantageous to the company, to EFIH or | 12:15:18 |
| 17 | not, right? | 12:15:19 |
| 18 | A.    I do not know that. | 12:15:20 |
| 19 | Q.    You mentioned that Citi was | 12:15:21 |
| 20 | one of the principal bankers for the | 12:15:25 |
| 21 | company, right? | 12:15:27 |
| 22 | A.    Yes, they are. | 12:15:27 |
| 23 | Q.    And at some point the company | 12:15:28 |
| 24 | began doing a liability management | 12:15:32 |
| 25 | analysis, right? | 12:15:34 |

Page 116

```
 1        A.    The company was continually         12:15:35

 2   involved in liability management.  Not         12:15:40

 3   continuously, that's an overstatement,         12:15:44

 4   but, you know, beginning in '09 through,       12:15:46

 5   you know, parts of 2012 we were involved.      12:15:49

 6        Q.    And I think what Mr. Moldovan       12:15:51

 7   told me was that the goal was to manage        12:15:54

 8   and try to reduce, if possible, financing     12:15:57

 9   costs, is that accurate?                       12:16:01

10        A.    We --                              12:16:05

11              MR. HOWELL:  Object to form.        12:16:06

12        A.    I'm sorry.                          12:16:07

13              MR. HOWELL:  You can answer.        12:16:08

14        A.    Our objectives for liability       12:16:08

15   management I think, I would describe it        12:16:10

16   as threefold.  One, to extend maturities,     12:16:12

17   two, to capture discount, and three, to       12:16:15

18   improve liquidity.  Those were our three      12:16:20

19   screens that we used for the purpose of       12:16:23

20   -- I think implied in Mr. Moldovan's          12:16:28

21   response is, you know, improved              12:16:31

22   liquidity, so lower financing costs, so       12:16:36

23   forth.                                         12:16:39

24        Q.    What do you mean by capture        12:16:39

25   discount?                                      12:16:42
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

1        A.      Oftentimes we were executing          12:16:43

2    exchanges with counterparties, open              12:16:48

3    market exchanges.  In fact, the 2.18             12:16:51

4    billion of your first, first lien 10             12:16:54

5    percent notes were a result of an                12:16:57

6    exchange of paper at EF -- EFH and it was        12:17:02

7    guaranteed by EFIH and some other legacy         12:17:07

8    debt, and through that process we                12:17:10

9    captured a discount, in other words, the         12:17:13

10   amount that we paid for that paper was           12:17:18

11   below par.                                       12:17:21

12        Q.      So the principal balance of         12:17:22

13   the debt came down?                              12:17:24

14        A.      The principal balance came          12:17:25

15   down.                                            12:17:27

16        Q.      So if I understand correctly,       12:17:27

17   there were three principal goals of the          12:17:29

18   liability management program.  First was         12:17:32

19   to lengthen the maturities when the debt         12:17:36

20   came due, right?                                 12:17:38

21        A.      That's correct.                     12:17:39

22        Q.      Second was to capture               12:17:39

23   discounts, which means to reduce the             12:17:42

24   principal balance if possible, right?            12:17:44

25        A.      That's correct.                     12:17:46

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 118

| | | |
|---|---|---|
| 1 | Q.    And the third was to improve | 12:17:46 |
| 2 | liquidity which is another way of saying | 12:17:49 |
| 3 | reduce the interest rate if possible? | 12:17:50 |
| 4 | A.    Well not necessarily the | 12:17:53 |
| 5 | interest rate.  And if I said that I | 12:17:54 |
| 6 | should correct it.  Because at sometimes | 12:17:56 |
| 7 | the interest rate stayed the same but | 12:17:59 |
| 8 | because the principal amount was lower | 12:18:02 |
| 9 | you had lower interest costs.  So let me | 12:18:03 |
| 10 | be careful how I say that. | 12:18:09 |
| 11 | Q.    You spent a fair amount of | 12:18:12 |
| 12 | time, or a significant amount of time by | 12:18:13 |
| 13 | 2013 looking at managing the debtors' | 12:18:16 |
| 14 | liabilities, right? | 12:18:21 |
| 15 | A.    When you say the debtors, EFH, | 12:18:24 |
| 16 | EFIH, TCEH -- | 12:18:29 |
| 17 | Q.    Why don't we ask -- let's | 12:18:32 |
| 18 | focus on -- | 12:18:32 |
| 19 | A.    Let's -- maybe if you don't | 12:18:32 |
| 20 | mind, ask me the question again. | 12:18:33 |
| 21 | Q.    Sure, let's focus on EFIH. | 12:18:35 |
| 22 | You spent a significant amount of time | 12:18:37 |
| 23 | focusing on managing EFIH's liabilities | 12:18:39 |
| 24 | by 2013, right? | 12:18:41 |
| 25 | A.    We, again, had been working on | 12:18:43 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | liability management at EFIH, EFH, as far | 12:18:46 |
| 2 | back as 2009 and continued that process | 12:18:54 |
| 3 | through 2012. | 12:18:58 |
| 4 | Q.    And by -- by -- when was | 12:19:00 |
| 5 | Kirkland & Ellis first retained to | 12:19:04 |
| 6 | provide advice to the company on any sort | 12:19:09 |
| 7 | of restructuring? | 12:19:11 |
| 8 | A.    I'm not -- I'm not aware of | 12:19:12 |
| 9 | those dates. | 12:19:14 |
| 10 | Q.    Do you know the year? | 12:19:14 |
| 11 | A.    I am not for certain how they | 12:19:16 |
| 12 | -- how they were ultimately engaged and | 12:19:22 |
| 13 | under what, if you will, under what | 12:19:25 |
| 14 | capacity, what scope.  So I just don't | 12:19:29 |
| 15 | have those dates and that time. | 12:19:31 |
| 16 | Q.    When did you first have any | 12:19:32 |
| 17 | contact with Kirkland & Ellis? | 12:19:34 |
| 18 | A.    Personally? | 12:19:36 |
| 19 | Q.    Yes. | 12:19:39 |
| 20 | A.    I would have said late 2012 | 12:19:40 |
| 21 | would have been the first contact that I | 12:19:46 |
| 22 | had. | 12:19:48 |
| 23 | Q.    When did you first have | 12:19:48 |
| 24 | contact with Evercore about possible | 12:19:49 |
| 25 | restructuring? | 12:19:52 |

| | | |
|---|---|---|
| 1 | A.   I would say probably, and | 12:19:54 |
| 2 | again under the term restructuring, I | 12:20:03 |
| 3 | think that would be a little, a little | 12:20:06 |
| 4 | strong because again, that's a technical | 12:20:08 |
| 5 | term.  But I began having dialogue with | 12:20:11 |
| 6 | Evercore if I recall sometime in maybe | 12:20:14 |
| 7 | June of 2012, just high level, getting up | 12:20:18 |
| 8 | -- getting them up to speed on the | 12:20:21 |
| 9 | business, understanding the | 12:20:23 |
| 10 | circumstances.  That's the way I recall | 12:20:26 |
| 11 | it. | 12:20:27 |
| 12 | (Horton Exhibit 12 for | 12:20:27 |
| 13 | identification, Bates stamped | 12:20:38 |
| 14 | EFIHMW 00047735 through 00047739.) | 12:20:38 |
| 15 | Q.   Let me show you what's been | 12:20:32 |
| 16 | marked as Exhibit 12, a document dated | 12:20:34 |
| 17 | June 12, 2013, EFIHMW 00047735 through 39 | 12:20:35 |
| 18 | inclusive. | 12:20:43 |
| 19 | Do you recognize this document | 12:20:43 |
| 20 | which has been marked as Exhibit 13, Mr. | 12:20:53 |
| 21 | Horton?  Exhibit 12, Mr. Horton? | 12:21:20 |
| 22 | A.   I don't remember this document | 12:21:20 |
| 23 | specifically. | 12:21:22 |
| 24 | Q.   But this is a, appears to you | 12:21:23 |
| 25 | to be a deck prepared by Citi, one of | 12:21:26 |

| | | |
|---|---|---|
| 1 | your principal advisors as bankers? | 12:21:30 |
| 2 | A.    Yes. | 12:21:33 |
| 3 | Q.    And it is an analysis, is it | 12:21:34 |
| 4 | not, of the possibility of refinancing | 12:21:37 |
| 5 | the EFIH first lien debt, right? | 12:21:40 |
| 6 | A.    That is what it appears to be | 12:21:43 |
| 7 | from the, just a quick review of the | 12:21:48 |
| 8 | pages. | 12:21:51 |
| 9 | Q.    Do you -- | 12:21:52 |
| 10 | A.    I mean I am not, I'm not | 12:21:53 |
| 11 | intimately familiar with this, this | 12:21:55 |
| 12 | document. | 12:21:57 |
| 13 | Q.    Putting Exhibit 12 aside, do | 12:21:57 |
| 14 | you recall in the summer of 2013, or by | 12:22:02 |
| 15 | the summer of 2013 speaking with your | 12:22:04 |
| 16 | principal bankers about a possibility of | 12:22:08 |
| 17 | refinancing EFIH first lien debt? | 12:22:11 |
| 18 | A.    I don't know if I specifically | 12:22:14 |
| 19 | did that or, you know, maybe had one of | 12:22:26 |
| 20 | my team members reach out to Citi and | 12:22:29 |
| 21 | just, you know, talk to them about what's | 12:22:31 |
| 22 | -- what's available in the market. | 12:22:33 |
| 23 | Q.    But whether it was you | 12:22:34 |
| 24 | personally or someone in your staff, you | 12:22:36 |
| 25 | reached out and by the summer of -- | 12:22:38 |

| | | |
|---|---|---|
| 1 | A.    Again, I get a lot of | 12:22:40 |
| 2 | proposals, and I say again, because I | 12:22:42 |
| 3 | didn't say this before, I get a lot of | 12:22:44 |
| 4 | unsolicited proposals from banks on a | 12:22:47 |
| 5 | regular basis about topics.  They | 12:22:52 |
| 6 | obviously read, they surmise around the | 12:22:55 |
| 7 | edge what's going on, so they may have -- | 12:22:58 |
| 8 | I just don't know the origin of this. | 12:23:01 |
| 9 | Q.    I'm not asking about the | 12:23:03 |
| 10 | origin of it.  I'm asking a different | 12:23:04 |
| 11 | question.  I appreciate you don't know | 12:23:06 |
| 12 | this document.  By the summer of 2013, | 12:23:08 |
| 13 | were you and people who reported to you | 12:23:14 |
| 14 | focusing on the -- analyzing the | 12:23:18 |
| 15 | possibility of refinancing EFIH first | 12:23:22 |
| 16 | lien debt outside of bankruptcy and the | 12:23:26 |
| 17 | cost that would be required to satisfy | 12:23:29 |
| 18 | the make whole? | 12:23:31 |
| 19 | A.    I think that -- I think that's | 12:23:32 |
| 20 | true.  I do think that's true. | 12:23:34 |
| 21 | Q.    And I appreciate that.  Mr. | 12:23:35 |
| 22 | Horton, you mentioned I think earlier | 12:23:38 |
| 23 | Project Olympus.  What was it? | 12:23:41 |
| 24 | A.    I can give you a very high | 12:23:42 |
| 25 | level. | 12:23:50 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 123

| | |
|---|---|
| 1      Q.    Sure. | 12:23:50 |
| 2      A.    There's a lot to Project | 12:23:51 |
| 3   Olympus.  I'll give you -- | 12:23:54 |
| 4      Q.    Sure, high level is fine. | 12:23:54 |
| 5      A.    So I'm going to give you a one | 12:23:56 |
| 6   minute overview of it.  But it's | 12:23:58 |
| 7   effectively, it was a plan, a | 12:24:00 |
| 8   restructuring plan for the company.  The | 12:24:03 |
| 9   idea was to keep the company together. | 12:24:06 |
| 10  By that I mean the T side, I'm sure | 12:24:09 |
| 11  you've heard of us refer to the T side | 12:24:11 |
| 12  and the E side, keep the company | 12:24:13 |
| 13  together, keep EFIH and EFH out of | 12:24:17 |
| 14  bankruptcy, file only TCEH, ultimately | 12:24:20 |
| 15  have TCEH convert, first lienholders | 12:24:27 |
| 16  convert their holdings to EFH equity, | 12:24:32 |
| 17  restructuring the E side of the house and | 12:24:38 |
| 18  they, the E side of the house also have a | 12:24:44 |
| 19  relative ownership of the restructured | 12:24:47 |
| 20  EFH.  That's -- that's in essence.  One | 12:24:51 |
| 21  of the, obviously the primary, one of the | 12:24:55 |
| 22  primary objectives was, two primary | 12:24:58 |
| 23  objectives was keep EFH and EFIH out, | 12:25:00 |
| 24  also to avoid triggering, you know, | 12:25:05 |
| 25  significant tax through a deconsolidation | 12:25:07 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 124

| | | |
|---|---|---|
| 1 | of TCEH. | 12:25:09 |
| 2 | Q.    And when you said one of the | 12:25:10 |
| 3 | primary objectives was to keep EFH and | 12:25:11 |
| 4 | EFIH out, I take it you mean out of | 12:25:15 |
| 5 | bankruptcy? | 12:25:18 |
| 6 | A.    It's a very good following | 12:25:18 |
| 7 | question, yes, bankruptcy. | 12:25:23 |
| 8 | Q.    I appreciate it.  When was | 12:25:25 |
| 9 | Project Olympus under active | 12:25:26 |
| 10 | consideration, from approximately date | 12:25:29 |
| 11 | when to approximately date when? | 12:25:31 |
| 12 | A.    I believe that, you know, | 12:25:36 |
| 13 | there were some initial organizational | 12:25:38 |
| 14 | type discussions, you know, | 12:25:41 |
| 15 | November/December of 2012, and then that | 12:25:48 |
| 16 | rolled into what I would consider, you | 12:25:54 |
| 17 | know, more intense analysis and | 12:25:58 |
| 18 | discussions in 2013, January, February, | 12:26:03 |
| 19 | 2013, and that continued through November | 12:26:09 |
| 20 | 1st of 2013. | 12:26:11 |
| 21 | Q.    Okay.  And I take it, correct | 12:26:13 |
| 22 | me if I'm wrong, but part of the premise | 12:26:17 |
| 23 | of keeping EFIH out of bankruptcy was | 12:26:21 |
| 24 | that EFIH was in, in the company's view | 12:26:27 |
| 25 | at the time, solvent? | 12:26:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 125

| | |
|---|---|
| 1          MR. HOWELL:  Object to form. | 12:26:34 |
| 2     A.    I don't know what the | 12:26:35 |
| 3    company's view was around solvency. | 12:26:36 |
| 4     Q.    Okay, let me ask the question | 12:26:38 |
| 5    differently.  Was it your view in the | 12:26:40 |
| 6    fall of 2012, continuing into 2013, Tony | 12:26:47 |
| 7    Horton personally, that EFIH was solvent? | 12:26:51 |
| 8          MR. HOWELL:  Object to form. | 12:26:54 |
| 9     A.    I believe that, you know, | 12:26:55 |
| 10    through 2012 up -- you know, at points up | 12:27:03 |
| 11    through 2012, what it looked like in '13, | 12:27:07 |
| 12    I don't know, but we were solvent at | 12:27:11 |
| 13    EFIH. | 12:27:13 |
| 14     Q.    And was it also your personal | 12:27:13 |
| 15    view that in 2012, leading up to points | 12:27:17 |
| 16    in 2013, that EFH, its parent was | 12:27:20 |
| 17    solvent? | 12:27:23 |
| 18          MR. HOWELL:  Object to form. | 12:27:25 |
| 19     A.    I don't have a view on that. | 12:27:26 |
| 20     Q.    Well, Mr. Horton, I've only | 12:27:27 |
| 21    gotten to meet you in a little bit of | 12:27:31 |
| 22    time today, but I will tell you I formed | 12:27:33 |
| 23    the impression that you're a serious and | 12:27:35 |
| 24    honest person.  I take it if you made | 12:27:38 |
| 25    representations to your bankers at the | 12:27:41 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 126

| | | |
|---|---|---|
| 1 | time you would have taken those | 12:27:47 |
| 2 | representations seriously, right? | 12:27:48 |
| 3 | A.    Absolutely. | 12:27:49 |
| 4 | Q.    And you wouldn't have made | 12:27:50 |
| 5 | them unless you thought they were true, | 12:27:51 |
| 6 | right? | 12:27:52 |
| 7 | A.    That's correct. | 12:27:52 |
| 8 | Q.    And you wouldn't have made | 12:27:53 |
| 9 | them unless you had a good faith basis | 12:27:54 |
| 10 | for making them, right? | 12:27:57 |
| 11 | A.    That's correct. | 12:27:58 |
| 12 | Q.    And unless you had satisfied | 12:27:58 |
| 13 | yourself that you had a good faith basis | 12:28:00 |
| 14 | for them, right? | 12:28:02 |
| 15 | A.    That's correct. | 12:28:03 |
| 16 | Q.    Now you were aware that as | 12:28:04 |
| 17 | part of these various debt issuances? | 12:28:06 |
| 18 | A.    We had a solvency rep. | 12:28:09 |
| 19 | Q.    Actually, I wasn't going to | 12:28:11 |
| 20 | take you right there right then.  I would | 12:28:13 |
| 21 | eventually.  There are things called | 12:28:16 |
| 22 | dealer manager agreements, right? | 12:28:18 |
| 23 | A.    Yes. | 12:28:21 |
| 24 | Q.    And a dealer manager agreement | 12:28:21 |
| 25 | is an agreement between whichever one of | 12:28:23 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | the company, EFIH, EFH, TCEH, whoever is | 12:28:25 |
| 2 | the issuer, is making with the | 12:28:29 |
| 3 | underwriters for the particular issuance, | 12:28:32 |
| 4 | right? | 12:28:34 |
| 5 | A.    Yes. | 12:28:34 |
| 6 | Q.    And these are banks that are | 12:28:35 |
| 7 | -- that EFH and the other debtors, EFIH, | 12:28:36 |
| 8 | had very serious ongoing relationships | 12:28:40 |
| 9 | with, right? | 12:28:43 |
| 10 | A.    They had relationships with. | 12:28:43 |
| 11 | Q.    And you were dependent in part | 12:28:46 |
| 12 | on them, right? | 12:28:49 |
| 13 | MR. HOWELL:  Object to form. | 12:28:50 |
| 14 | A.    I don't know, I don't | 12:28:51 |
| 15 | understand the point.  I don't understand | 12:28:53 |
| 16 | the question. | 12:28:54 |
| 17 | Q.    Let me reframe the question. | 12:28:55 |
| 18 | They were a source of financing in | 12:28:58 |
| 19 | addition to the high yield market, right? | 12:29:00 |
| 20 | A.    They were -- they were our | 12:29:01 |
| 21 | underwriters, obviously.  The market is | 12:29:03 |
| 22 | the market.  And it consists of lots of | 12:29:05 |
| 23 | different investors.  There's obviously | 12:29:09 |
| 24 | interface between the company and the | 12:29:14 |
| 25 | market. | 12:29:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 128

| | | |
|---|---|---|
| 1 | Q.    And it was therefore important | 12:29:16 |
| 2 | to the company to maintain a good | 12:29:17 |
| 3 | relationship with its dealer managers, | 12:29:18 |
| 4 | right? | 12:29:22 |
| 5 | A.    That's right. | 12:29:22 |
| 6 | Q.    And one of the principal | 12:29:24 |
| 7 | dealer managers was Goldman Sachs, a | 12:29:26 |
| 8 | different part of which, a different | 12:29:29 |
| 9 | division within Goldman was one of the | 12:29:30 |
| 10 | three owners of the debtors, right? | 12:29:32 |
| 11 | A.    That's correct. | 12:29:36 |
| 12 | Q.    And for you personally, it | 12:29:36 |
| 13 | wouldn't have been good to Tony Horton's | 12:29:38 |
| 14 | career for Tony Horton to develop a bad | 12:29:40 |
| 15 | reputation with the dealer managers, | 12:29:43 |
| 16 | right? | 12:29:45 |
| 17 | A.    It's not a good for me to | 12:29:46 |
| 18 | develop a bad reputation for -- with | 12:29:51 |
| 19 | anyone within -- for my career, | 12:29:53 |
| 20 | certainly. | 12:29:58 |
| 21 | Q.    So stipulated? | 12:29:58 |
| 22 | A.    Okay. | 12:29:59 |
| 23 | Q.    That makes sense to me.  And | 12:30:00 |
| 24 | in any event, whether it would be good or | 12:30:01 |
| 25 | bad for your career, you wouldn't make | 12:30:04 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 129

```
 1    representations to these people just          12:30:06
 2    because you're an honest guy if you           12:30:07
 3    didn't think they were true, right?           12:30:09
 4         A.    It has nothing to do with my       12:30:11
 5    reputation.  It's about being honest.         12:30:12
 6         Q.    Being a straight shooter?          12:30:14
 7         A.    Being honest, being ethical,       12:30:15
 8    the law.                                      12:30:17
 9         Q.    So let me show you a dealer        12:30:18
10    manager agreement from October 18 of          12:30:23
11    2012.                                         12:30:25
12              MR. ANKER:  This will be            12:30:30
13         Exhibit number 13.                       12:30:31
14              (Horton Exhibit 13 for              12:30:32
15         identification, Bates stamped EFH        12:30:32
16         00080017 through 80090.)                 12:30:41
17         Q.    Mr. Horton, I'm going to take      12:30:41
18    you to a very particular part of this.  I     12:30:42
19    don't need you to read the whole thing?       12:30:44
20         A.    No, I was just seeing who          12:30:45
21    signed it.                                    12:30:47
22         Q.    Sure.  You signed it, did you      12:30:47
23    not, sir?                                     12:30:49
24         A.    This says -- I'm not sure I        12:30:49
25    signed this.                                  12:30:52
```

| | |
|---|---|
| 1 | Q. Could you turn -- | 12:30:56 |
| 2 | A. Yes, I signed that. You've | 12:30:56 |
| 3 | got several other schedules in here. | 12:30:58 |
| 4 | Q. There are exhibits, as there | 12:31:00 |
| 5 | typically are to the dealer manager | 12:31:03 |
| 6 | agreement. | 12:31:05 |
| 7 | A. Okay. | 12:31:05 |
| 8 | Q. But if you go to the end of | 12:31:06 |
| 9 | the text. | 12:31:07 |
| 10 | A. I got it. | 12:31:08 |
| 11 | Q. On page number, bearing the | 12:31:08 |
| 12 | Bates stamp EFH 00080046, the person who | 12:31:12 |
| 13 | signed for Energy Future Holdings, Energy | 12:31:20 |
| 14 | Future Intermediate Holding Company and | 12:31:27 |
| 15 | EFIH Finance was you, correct? | 12:31:28 |
| 16 | A. I was just trying to see what | 12:31:30 |
| 17 | all was in the document, my apologies. | 12:31:32 |
| 18 | Q. That's okay. | 12:31:34 |
| 19 | A. There's something else here, | 12:31:35 |
| 20 | I'm trying to see what's in the exhibits. | 12:31:36 |
| 21 | Q. But you did sign this | 12:31:41 |
| 22 | document, right, sir? | 12:31:43 |
| 23 | A. That's correct, that's | 12:31:44 |
| 24 | correct. | 12:31:45 |
| 25 | Q. And you were -- this document | 12:31:45 |

| | |
|---|---|
| 1 | includes various representations being | 12:31:46 |
| 2 | made by, among others, EFIH and EFH, | 12:31:48 |
| 3 | right? | 12:31:52 |
| 4 | A.    That's correct. | 12:31:52 |
| 5 | Q.    Actually I think it's not | 12:31:53 |
| 6 | correct.  It's only made by EFIH and EFH, | 12:31:55 |
| 7 | I think I misled you, I don't think other | 12:31:58 |
| 8 | debtors are making representations, am I | 12:32:01 |
| 9 | right about that? | 12:32:03 |
| 10 | A.    I think that's correct. | 12:32:04 |
| 11 | Q.    Okay.  And one of the | 12:32:10 |
| 12 | representations -- and the | 12:32:11 |
| 13 | representations, I'm sorry, begin on page | 12:32:12 |
| 14 | 2 of the document bearing the Bates stamp | 12:32:14 |
| 15 | EFH 00080018, right? | 12:32:17 |
| 16 | A.    Yes. | 12:32:19 |
| 17 | Q.    And one of the representations | 12:32:19 |
| 18 | that was being made in October of 2012 by | 12:32:22 |
| 19 | EFIH and EFH, and made by you personally | 12:32:27 |
| 20 | on their behalf, was that both of those | 12:32:31 |
| 21 | debtors were solvent, right?  Let me turn | 12:32:34 |
| 22 | you, if you would -- | 12:32:38 |
| 23 | A.    Which page? | 12:32:39 |
| 24 | Q.    Sure.  Turn to the page that | 12:32:40 |
| 25 | bears the Bates stamp -- okay.  Take a | 12:32:42 |

| | | |
|---|---|---|
| 1 | look, Mr. Horton, at page 14 of the | 12:33:24 |
| 2 | document.  Tell me when you're there. | 12:33:28 |
| 3 | A.    I'm on page 14. | 12:33:38 |
| 4 | Q.    Do you see rep (jj)?  Do you | 12:33:39 |
| 5 | see (jj), sir? | 12:33:51 |
| 6 | A.    I do indeed.  I'm sorry, I was | 12:33:53 |
| 7 | reading the policy.  I should have | 12:33:55 |
| 8 | informed you I was reading. | 12:33:57 |
| 9 | Q.    That's okay.  I think I | 12:33:58 |
| 10 | referred to EFH earlier, but let's just | 12:34:00 |
| 11 | focus on EFIH.  (jj) is a representation | 12:34:02 |
| 12 | made by the company that EFIH is, and | 12:34:05 |
| 13 | immediately after the time of delivery | 12:34:11 |
| 14 | will be solvent, right? | 12:34:13 |
| 15 | MR. HOWELL:  Object to form. | 12:34:15 |
| 16 | A.    Again, what the rep, the rep | 12:34:16 |
| 17 | says what it says, and -- | 12:34:19 |
| 18 | Q.    And it says what I just said, | 12:34:21 |
| 19 | didn't it, sir? | 12:34:22 |
| 20 | MR. HOWELL:  Object to form. | 12:34:23 |
| 21 | A.    Again, apologies, I wasn't | 12:34:24 |
| 22 | listening to what you said verbatim. | 12:34:26 |
| 23 | Q.    Sure. | 12:34:28 |
| 24 | A.    But if -- | 12:34:29 |
| 25 | Q.    The first sentence says, "EFH | 12:34:29 |

| | |
|---|---|
| 1 | is and immediately after the time of | 12:34:33 |
| 2 | delivery will be solvent." Did I read | 12:34:34 |
| 3 | that accurately? | 12:34:36 |
| 4 | A.    Yes, you did, sir. | 12:34:37 |
| 5 | Q.    And then it goes on to define | 12:34:38 |
| 6 | what the term solvent means as used in | 12:34:40 |
| 7 | the document, right? | 12:34:42 |
| 8 | A.    Yes. | 12:34:44 |
| 9 | Q.    And it had multiple meanings, | 12:34:45 |
| 10 | right, all of which had to be satisfied | 12:34:48 |
| 11 | for that representation to be true, | 12:34:50 |
| 12 | correct? | 12:34:52 |
| 13 | MR. HOWELL:  Mr. Anker, if I | 12:34:54 |
| 14 | can stop you for a second, when you | 12:34:56 |
| 15 | reread that section you said EFH | 12:34:58 |
| 16 | rather than EFIH, I just want to | 12:35:01 |
| 17 | make sure the record is clear. | 12:35:03 |
| 18 | MR. ANKER:  You're absolutely | 12:35:04 |
| 19 | right, if I did, I misspoke. | 12:35:04 |
| 20 | Q.    Let's go back to the question | 12:35:07 |
| 21 | I had pending, Mr. Horton. | 12:35:08 |
| 22 | A.    Sure. | 12:35:10 |
| 23 | Q.    In (jj) there's a definition | 12:35:10 |
| 24 | of what solvent means within the meaning | 12:35:13 |
| 25 | of that representation, correct? | 12:35:15 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 134

| 1 | A. Yes. | 12:35:17 |
| 2 | Q. And it's got four different | 12:35:19 |
| 3 | parts to it, right? | 12:35:21 |
| 4 | A. That's correct. | 12:35:22 |
| 5 | Q. And it's not a disjunctive | 12:35:23 |
| 6 | test, it's not satisfying any one of the | 12:35:28 |
| 7 | four is sufficient, you were representing | 12:35:31 |
| 8 | that all four of the tests were | 12:35:33 |
| 9 | satisfied, right? | 12:35:35 |
| 10 | A. That's correct. | 12:35:35 |
| 11 | Q. And the first was what often | 12:35:36 |
| 12 | is referred to as the balance sheet test, | 12:35:38 |
| 13 | right, the fair market value of the | 12:35:40 |
| 14 | assets of EFIH is greater than the total | 12:35:42 |
| 15 | amount of liabilities including | 12:35:44 |
| 16 | contingent liabilities of EFIH, right? | 12:35:46 |
| 17 | A. I don't know if that's the | 12:35:52 |
| 18 | nomenclature specifically referring to | 12:35:53 |
| 19 | that definition, but I have heard the | 12:35:55 |
| 20 | term balance sheet solvent, yes, I'm | 12:35:57 |
| 21 | familiar with it. | 12:35:59 |
| 22 | Q. And the second is that the | 12:35:59 |
| 23 | fair saleable value of the assets of EFIH | 12:36:01 |
| 24 | is greater than the amount needed to pay | 12:36:04 |
| 25 | their probable liabilities as they become | 12:36:07 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 135

| | | |
|---|---|---|
| 1 | due, right? | 12:36:10 |
| 2 | A.    That's correct. | 12:36:10 |
| 3 | Q.    And the third is that EFIH can | 12:36:11 |
| 4 | realize upon, is able to realize upon its | 12:36:15 |
| 5 | assets and pay its debts and other | 12:36:18 |
| 6 | liabilities, including contingent | 12:36:21 |
| 7 | obligations, as they mature, right? | 12:36:22 |
| 8 | A.    That's correct. | 12:36:24 |
| 9 | Q.    And the fourth was that EFIH | 12:36:25 |
| 10 | doesn't have unreasonably small capital, | 12:36:28 |
| 11 | right? | 12:36:30 |
| 12 | A.    That's correct. | 12:36:30 |
| 13 | Q.    And you made these | 12:36:31 |
| 14 | representations because, as you told me | 12:36:32 |
| 15 | earlier, you believed them to be true, | 12:36:34 |
| 16 | correct? | 12:36:36 |
| 17 | A.    That's correct. | 12:36:36 |
| 18 | Q.    And you wouldn't have made | 12:36:37 |
| 19 | them had you done -- had you not done | 12:36:39 |
| 20 | sufficient investigation to satisfy | 12:36:41 |
| 21 | yourself that they were true at the time, | 12:36:43 |
| 22 | right? | 12:36:45 |
| 23 | A.    That is correct. | 12:36:46 |
| 24 | Q.    Okay.  Now going into 2013, | 12:36:47 |
| 25 | the debtors had made various | 12:37:01 |

| | | |
|---|---|---|
| 1 | presentations to their various investors | 12:37:03 |
| 2 | or advisors for investors, right? | 12:37:08 |
| 3 | MR. HOWELL:  Object to form. | 12:37:12 |
| 4 | A.    Again, I would need to see the | 12:37:13 |
| 5 | specific presentations that you're | 12:37:15 |
| 6 | referring to.  Again, it's end of 2012, | 12:37:17 |
| 7 | we're going into 2013, it's a lot of | 12:37:22 |
| 8 | things going on.  For me to -- for me to | 12:37:26 |
| 9 | reflect back and say we were making a lot | 12:37:30 |
| 10 | of presentations to our investors at that | 12:37:33 |
| 11 | point in time, I think it would be | 12:37:35 |
| 12 | difficult for me to, to say that. | 12:37:37 |
| 13 | Q.    Okay.  Sometimes I just try to | 12:37:43 |
| 14 | move things along by not putting a | 12:37:46 |
| 15 | document in front of you, but let's do it | 12:37:48 |
| 16 | with a document, it's more precise that | 12:37:50 |
| 17 | way, okay? | 12:37:51 |
| 18 | A.    Sure. | 12:37:52 |
| 19 | MR. ANKER:  Let's mark Exhibit | 12:37:53 |
| 20 | 14, EFH 00002551 through 2621 | 12:37:55 |
| 21 | inclusive. | 12:38:02 |
| 22 | (Horton Exhibit 14 for | 12:38:03 |
| 23 | identification, Bates stamped EFH | 12:37:56 |
| 24 | 00002551 through 00002621.) | 12:37:56 |
| 25 | Q.    Do you recognize this | 12:38:07 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 137

1    document, Mr. Horton, which has been          12:38:08

2    marked as Exhibit number 14?                  12:38:10

3        A.   I don't remember this specific       12:38:21

4    document.  I've seen forms of this, this      12:38:23

5    document, this February 5th, 2013             12:38:27

6    investor advisor presentation, so this is     12:38:33

7    not necessarily going to our investors.       12:38:35

8    It's going to the investors' advisors.        12:38:38

9    So I think the way you stated your            12:38:41

10   question was we made several                  12:38:43

11   presentations at the end of 2012/2013 to      12:38:45

12   our investors.  This is actually to our       12:38:49

13   investors' advisors.                          12:38:52

14       Q.   Right.  Was there a meeting on       12:38:53

15   February 5, 2013?                             12:38:56

16       A.   I don't know.                        12:38:59

17       Q.   How was this presentation            12:38:59

18   made?  Was it made by conference call, an     12:39:01

19   in-person meeting?                            12:39:04

20       A.   I do not know.                       12:39:05

21       Q.   Did you attend it?                   12:39:06

22       A.   I don't think I did.                 12:39:07

23       Q.   Who were the investor               12:39:08

24   advisors?                                     12:39:12

25       A.   I do not know.                       12:39:13

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 138

| | | |
|---|---|---|
| 1 | Q.    Were they lawyers and | 12:39:14 |
| 2 | financial advisors for various of the | 12:39:16 |
| 3 | creditors of various of the debtors? | 12:39:21 |
| 4 | A.    I honestly do not know. | 12:39:24 |
| 5 | Q.    Did you as part of preparing | 12:39:25 |
| 6 | for your deposition today as a 30(b)(6) | 12:39:31 |
| 7 | witness take any steps to refresh or | 12:39:34 |
| 8 | obtain information or refresh your | 12:39:39 |
| 9 | recollection of the presentations that | 12:39:40 |
| 10 | the company made to investors or investor | 12:39:44 |
| 11 | advisors in connection with Project | 12:39:49 |
| 12 | Olympus? | 12:39:52 |
| 13 | A.    I did.  It's highly unlikely | 12:39:52 |
| 14 | that I covered and looked at every | 12:39:57 |
| 15 | presentation.  So yes, I tried to prepare | 12:39:59 |
| 16 | myself. | 12:40:02 |
| 17 | Q.    Let me -- | 12:40:03 |
| 18 | A.    This particular February 5th, | 12:40:04 |
| 19 | right at the end, after the end of 2012, | 12:40:06 |
| 20 | you know, if you'll recall I said I kind | 12:40:12 |
| 21 | of think Project Olympus started, you | 12:40:14 |
| 22 | know, really start gaining momentum and | 12:40:16 |
| 23 | so forth in February. | 12:40:21 |
| 24 | I don't believe I was at this | 12:40:22 |
| 25 | meeting. | 12:40:24 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 139

| | | |
|---|---|---|
| 1 | Q. Let me ask you questions then | 12:40:24 |
| 2 | not in your personal capacity but in your | 12:40:27 |
| 3 | 30(b)(6) capacity and I'm hopeful you'll | 12:40:30 |
| 4 | be able to answer them. | 12:40:32 |
| 5 | A. Certainly. | 12:40:33 |
| 6 | Q. Just like with the dealer | 12:40:33 |
| 7 | manager agreement which was Exhibit | 12:40:37 |
| 8 | number 13, am I right to assume that when | 12:40:38 |
| 9 | the company prepared this document for a | 12:40:41 |
| 10 | presentation to investment advisors, it | 12:40:46 |
| 11 | sought to be truthful? | 12:40:48 |
| 12 | A. I would highly expect that it | 12:40:49 |
| 13 | would be sought to be truthful. | 12:40:53 |
| 14 | Q. Okay. And indeed, the | 12:40:55 |
| 15 | underlying -- | 12:40:58 |
| 16 | A. I'm not sure this presentation | 12:41:00 |
| 17 | was ever made. This is just a copy. So | 12:41:01 |
| 18 | I don't know if a presentation was | 12:41:04 |
| 19 | actually made. So I have to be very | 12:41:07 |
| 20 | careful how I respond to your question. | 12:41:10 |
| 21 | Q. It doesn't say draft anywhere | 12:41:12 |
| 22 | on the document on its cover, does it, | 12:41:14 |
| 23 | sir? | 12:41:16 |
| 24 | A. I understand, but I have no | 12:41:16 |
| 25 | knowledge if that presentation was made, | 12:41:17 |

| | | |
|---|---|---|
| 1 | if there was a meeting.  I just don't | 12:41:19 |
| 2 | have that knowledge. | 12:41:21 |
| 3 | Q.    Okay. | 12:41:21 |
| 4 | MR. ANKER:  Mr. Howell, I | 12:41:28 |
| 5 | don't want to spend time on the | 12:41:29 |
| 6 | record debating and posturing, this | 12:41:30 |
| 7 | is an important document and set of | 12:41:32 |
| 8 | documents and if we don't get | 12:41:33 |
| 9 | testimony on behalf of the company | 12:41:36 |
| 10 | on this, we are going to have to | 12:41:37 |
| 11 | get it from someone else and | 12:41:41 |
| 12 | reserve our rights.  I don't need | 12:41:42 |
| 13 | -- you reserve all your rights, I | 12:41:44 |
| 14 | want it to be clear to you. | 12:41:47 |
| 15 | MR. HOWELL:  What topic is it | 12:41:48 |
| 16 | amongst the 30(b)(6) topics that | 12:41:49 |
| 17 | your view is this falls under? | 12:41:51 |
| 18 | MR. ANKER:  I'm not going to | 12:41:53 |
| 19 | argue with you right now.  I'm | 12:41:54 |
| 20 | happy to debate it with you during | 12:41:56 |
| 21 | a break. | 12:41:59 |
| 22 | THE WITNESS:  Why don't we | 12:42:00 |
| 23 | take a break right now and I can | 12:42:01 |
| 24 | eat lunch. | 12:42:02 |
| 25 | MR. ANKER:  That's fine. | 12:42:03 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 141

 1          THE VIDEOGRAPHER:  One moment,          12:42:05

 2      please, watch your microphones,             12:42:05

 3      I'll change tape at this time.              12:42:07

 4      Here now marks the end of tape 2 of         12:42:08

 5      the deposition of Mr. Anthony R.            12:42:11

 6      Horton, the time is 12:42, we're            12:42:14

 7      now off the record.                         12:42:16

 8          (Luncheon recess:  12:42 p.m.)          12:42:17

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| | | |
|---|---|---|
| 1 | A F T E R N O O N   S E S S I O N | 13:20:45 |
| 2 | 1:20 p.m. | 13:22:20 |
| 3 | THE VIDEOGRAPHER:  Here now | 13:22:20 |
| 4 | marks the beginning of tape 3 of | 13:22:21 |
| 5 | the deposition of Mr. Anthony R. | 13:22:22 |
| 6 | Horton, the time is 1:22 p.m., | 13:22:24 |
| 7 | we're back on the record. | 13:22:27 |
| 8 | MR. ANKER:  Mr. Howell, I just | 13:22:31 |
| 9 | asked off the record and I'll put | 13:22:32 |
| 10 | it on the record, whether you had | 13:22:34 |
| 11 | made copies of the documents that | 13:22:35 |
| 12 | Mr. Horton reviewed in preparation | 13:22:39 |
| 13 | for this deposition and has with | 13:22:42 |
| 14 | him physically.  You indicated you | 13:22:44 |
| 15 | have not.  I am not going to | 13:22:47 |
| 16 | represent to you that I believe if | 13:22:49 |
| 17 | you get them to me this afternoon | 13:22:51 |
| 18 | we will have adequate time to | 13:22:53 |
| 19 | review them and question the | 13:22:55 |
| 20 | witness, and I reserve our rights, | 13:22:56 |
| 21 | but I certainly will undertake to | 13:22:58 |
| 22 | attempt to review them quickly | 13:23:00 |
| 23 | during a break if you provide them | 13:23:02 |
| 24 | for us.  We reserve all of our | 13:23:04 |
| 25 | rights, and I fully understand that | 13:23:07 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 143

| | | |
|---|---|---|
| 1 | you reserve all of yours. | 13:23:09 |
| 2 | ANTHONY R. HORTON, | |
| 3 | resumed, having been previously | |
| 4 | duly sworn, was examined and | |
| 5 | testified further as follows: | |
| 6 | CONTINUED EXAMINATION | |
| 7 | BY MR. ANKER: | 13:23:12 |
| 8 | Q.    Mr. Horton, I think we were | 13:23:12 |
| 9 | talking before the lunch break about the | 13:23:14 |
| 10 | February 5 investor advisor presentation, | 13:23:16 |
| 11 | and I understand you don't have a | 13:23:18 |
| 12 | recollection of this document.  But | 13:23:21 |
| 13 | presentations were made by the debtors in | 13:23:25 |
| 14 | 2013 in connection with Project Olympus, | 13:23:28 |
| 15 | both to representatives of the holders of | 13:23:31 |
| 16 | the debtors' debt and the actual holders | 13:23:34 |
| 17 | themselves, right? | 13:23:38 |
| 18 | A.    That's correct. | 13:23:38 |
| 19 | Q.    And I think this goes without | 13:23:38 |
| 20 | saying, but I want to lay the predicate. | 13:23:40 |
| 21 | In those presentations, the debtors | 13:23:42 |
| 22 | sought, just as in the dealer manager | 13:23:48 |
| 23 | agreement, to be truthful, right? | 13:23:51 |
| 24 | A.    That's correct. | 13:23:52 |
| 25 | Q.    The debtors didn't knowingly | 13:23:53 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 144

| 1 | make any material misrepresentations, | 13:23:55 |
| 2 | right? | 13:23:57 |
| 3 | A.    That's correct. | 13:23:57 |
| 4 | Q.    And they didn't knowingly make | 13:23:58 |
| 5 | any material omissions of fact, right? | 13:23:59 |
| 6 | A.    That's correct. | 13:24:01 |
| 7 | Q.    And in fact you know because | 13:24:01 |
| 8 | you signed various documents, that many | 13:24:04 |
| 9 | of the debt issuances were registered | 13:24:09 |
| 10 | with the Securities and Exchange | 13:24:13 |
| 11 | Commission, right? | 13:24:14 |
| 12 | A.    That's correct. | 13:24:15 |
| 13 | Q.    And I understand you're not a | 13:24:15 |
| 14 | lawyer so I'm just asking for your | 13:24:17 |
| 15 | understanding, you understood that many | 13:24:19 |
| 16 | of the underlying debt instruments were | 13:24:22 |
| 17 | securities subject to the federal | 13:24:25 |
| 18 | securities laws, right? | 13:24:26 |
| 19 | A.    Yes. | 13:24:27 |
| 20 | Q.    Including the antifraud | 13:24:28 |
| 21 | provisions of the federal securities | 13:24:30 |
| 22 | laws, right? | 13:24:32 |
| 23 | A.    You're taking it a step | 13:24:32 |
| 24 | farther, but I know generally we are, you | 13:24:36 |
| 25 | know, under SEC laws, federal laws, I | 13:24:37 |

```
 1      understand.                                    13:24:42

 2           Q.    Okay.                               13:24:43

 3           A.    Rules and regulations.              13:24:44

 4           Q.    Now, in this investor advisor       13:24:45

 5      presentation which I understand you don't      13:24:47

 6      recollect, this too outlines, and I'm          13:24:51

 7      happy to get you to the relevant pages --      13:24:55

 8           A.    I don't recollect if I was          13:24:58

 9      there.  I don't know if this exact             13:24:59

10      document was presented.  I'm generally         13:25:00

11      familiar with, you know, the materials in      13:25:03

12      the document, but there was a couple of        13:25:06

13      items that I was not sure of whether I         13:25:09

14      was in a meeting, whether we used this         13:25:12

15      exact document.  That was my point.            13:25:14

16           Q.    Okay, I appreciate that and         13:25:15

17      that's helpful.  Let me turn you to the        13:25:17

18      page that bears, I have to give you Bates      13:25:19

19      stamps because the pages are not               13:25:22

20      otherwise numbered.                            13:25:23

21           A.    Got you.                            13:25:25

22           Q.    The last four digits are 2605.      13:25:25

23      It's about three quarters of the way           13:25:28

24      through the document.                          13:25:30

25           A.    Okay.  Okay.                        13:25:31
```

| | | |
|---|---|---|
| 1 | Q.    You'll see the heading | 13:25:39 |
| 2 | "Restructuring transaction," right? | 13:25:41 |
| 3 | A.    Yes. | 13:25:43 |
| 4 | Q.    And you'll see it says at the | 13:25:43 |
| 5 | top "Consolidated structure maintained | 13:25:46 |
| 6 | through simultaneous restructuring and | 13:25:48 |
| 7 | recapitalization transactions." | 13:25:52 |
| 8 | I read that accurately, right? | 13:25:53 |
| 9 | A.    That's correct. | 13:25:55 |
| 10 | Q.    And then it says EFH/EFIH | 13:25:55 |
| 11 | recapitalized out-of-court, right? | 13:25:59 |
| 12 | A.    That's correct. | 13:26:01 |
| 13 | Q.    So that means they don't file | 13:26:01 |
| 14 | for bankruptcy? | 13:26:03 |
| 15 | A.    Yes, you and I discussed that | 13:26:03 |
| 16 | earlier, yes. | 13:26:05 |
| 17 | Q.    Whereas EFCH and TCEH, T side | 13:26:05 |
| 18 | companies are restructured in court, | 13:26:11 |
| 19 | meaning they file for bankruptcy, right? | 13:26:12 |
| 20 | A.    That's correct. | 13:26:14 |
| 21 | Q.    So this is the same concept as | 13:26:14 |
| 22 | we discussed earlier that underlay | 13:26:17 |
| 23 | Project Olympus, right? | 13:26:19 |
| 24 | A.    That's correct. | 13:26:21 |
| 25 | Q.    And indeed, there's a visual | 13:26:21 |

| | | |
|---|---|---|
| 1 | right below on this same page and you'll | 13:26:23 |
| 2 | see that the companies that are in a | 13:26:26 |
| 3 | dotted line, they're encompassed in a | 13:26:33 |
| 4 | dotted line box are the companies that | 13:26:35 |
| 5 | are to file for bankruptcy, right, and | 13:26:36 |
| 6 | they don't include EFIH, right? | 13:26:38 |
| 7 | A.    That's correct. | 13:26:40 |
| 8 | Q.    Okay.  And again, here, the | 13:26:41 |
| 9 | debtors represented, did they not, to | 13:26:46 |
| 10 | their investment advisors, that EFIH was | 13:26:48 |
| 11 | solvent, right? | 13:26:52 |
| 12 | MR. HOWELL:  Object to form. | 13:26:59 |
| 13 | Q.    Let me direct you to the page | 13:27:00 |
| 14 | if you don't have a recollection. | 13:27:01 |
| 15 | A.    Yes, not knowing the entire -- | 13:27:03 |
| 16 | Q.    Sure.  Let's turn to page | 13:27:05 |
| 17 | 2554.  This is the first page of the | 13:27:08 |
| 18 | document under introduction. | 13:27:09 |
| 19 | A.    Yes. | 13:27:24 |
| 20 | Q.    And I am looking, 2554 is the | 13:27:24 |
| 21 | very first page of the document, right? | 13:27:27 |
| 22 | A.    That's correct. | 13:27:28 |
| 23 | Q.    And I know you haven't heard | 13:27:29 |
| 24 | my expression bury the lede, but the | 13:27:30 |
| 25 | debtors when they put together | 13:27:33 |

Page 148

| | | |
|---|---|---|
| 1 | presentations tried to emphasize, did | 13:27:35 |
| 2 | they not, the most important points | 13:27:36 |
| 3 | first, don't bury them on page 96 of a | 13:27:39 |
| 4 | long document, right? | 13:27:41 |
| 5 | A.    Right. | 13:27:43 |
| 6 | Q.    And so -- | 13:27:43 |
| 7 | A.    Actually, that's page 2. | 13:27:45 |
| 8 | Q.    Well, it's page 2 but page 1 | 13:27:47 |
| 9 | is a title, right?  I'm sorry, you're | 13:27:49 |
| 10 | right, you're absolutely right.  Page 1 | 13:27:51 |
| 11 | is the agenda, right? | 13:27:53 |
| 12 | A.    Yes. | 13:27:54 |
| 13 | Q.    Page 2 is the first | 13:27:54 |
| 14 | substantive page, right? | 13:27:56 |
| 15 | A.    That's correct. | 13:27:57 |
| 16 | Q.    Okay.  And the very second | 13:27:58 |
| 17 | bullet has two sub-bullets and the second | 13:28:03 |
| 18 | subbullet is recapitalize a solvent | 13:28:05 |
| 19 | EFH/EFIH out of court, right? | 13:28:12 |
| 20 | A.    Yes. | 13:28:13 |
| 21 | Q.    You're welcome to write on the | 13:28:14 |
| 22 | document. | 13:28:20 |
| 23 | A.    I wasn't, I was just pointing | 13:28:21 |
| 24 | -- | 13:28:22 |
| 25 | Q.    Actually, I would ask you not | 13:28:23 |

|    |    |    |
|----|----|----|
| 1 | to write on the document. | 13:28:24 |
| 2 |     A.    I was just pointing. | 13:28:26 |
| 3 |     Q.    That's fine.  If you want a | 13:28:27 |
| 4 | highlighter to use, you can use. | 13:28:29 |
| 5 | Whatever is easier for you.  The debtors | 13:28:32 |
| 6 | were representing, were they not, that | 13:28:34 |
| 7 | both EFH and EFIH were solvent and | 13:28:36 |
| 8 | therefore could be recapitalized out of | 13:28:38 |
| 9 | court, right? | 13:28:40 |
| 10 |         MR. HOWELL:  Object to form. | 13:28:44 |
| 11 |     A.    Okay, would you mind that -- I | 13:28:45 |
| 12 | wanted to read this sentence again. | 13:28:49 |
| 13 |     Q.    Sure. | 13:28:51 |
| 14 |     A.    If you wouldn't mind | 13:28:51 |
| 15 | restating. | 13:28:53 |
| 16 |     Q.    The debtors were representing | 13:28:54 |
| 17 | that in their view EFIH and EFIH were | 13:28:55 |
| 18 | solvent, right? | 13:28:59 |
| 19 |         MR. HOWELL:  Object to form. | 13:29:01 |
| 20 |     A.    I don't know if at that date | 13:29:02 |
| 21 | that's exactly what this meant.  It says | 13:29:04 |
| 22 | we -- an organized restructuring process | 13:29:06 |
| 23 | could right-size the capital structure | 13:29:12 |
| 24 | and maximize value, recapitalize a | 13:29:13 |
| 25 | solvent EFH, EFIH out of court.  So I | 13:29:17 |

| | | |
|---|---|---|
| 1 | don't know if they're referring to EFH | 13:29:21 |
| 2 | being restructured and then solvent or if | 13:29:24 |
| 3 | they're saying that is at that point in | 13:29:27 |
| 4 | time. | 13:29:30 |
| 5 | So we already know we looked | 13:29:31 |
| 6 | back, we know EFIH was solvent, right, | 13:29:34 |
| 7 | we've made the reps, and so I don't know | 13:29:38 |
| 8 | specifically if that's -- | 13:29:41 |
| 9 | Q.   You know that EFIH made the | 13:29:42 |
| 10 | rep in the fall of 2012, right? | 13:29:44 |
| 11 | A.   Sure, sure. | 13:29:46 |
| 12 | Q.   And we're now fast forwarding | 13:29:47 |
| 13 | from October 2012 to February 2013, | 13:29:49 |
| 14 | right? | 13:29:52 |
| 15 | A.   That's correct. | 13:29:52 |
| 16 | Q.   So we're fast forwarding four | 13:29:52 |
| 17 | months if I did the math right, right? | 13:29:55 |
| 18 | A.   That's correct. | 13:29:58 |
| 19 | Q.   November, December, January, | 13:29:58 |
| 20 | February, right, four months, right? | 13:30:01 |
| 21 | A.   That's correct. | 13:30:03 |
| 22 | Q.   Over that four months, how | 13:30:03 |
| 23 | much additional debt did EFIH incur that | 13:30:05 |
| 24 | it hadn't incurred before? | 13:30:08 |
| 25 | A.   It probably used some cash, so | 13:30:11 |

| | | |
|---|---|---|
| 1 | some, you know, net, net debt went up | 13:30:15 |
| 2 | slightly, but not -- | 13:30:17 |
| 3 | Q.    Slightly? | 13:30:19 |
| 4 | A.    Not significant. | 13:30:19 |
| 5 | Q.    Nothing significant, and in | 13:30:20 |
| 6 | fact, the whole point of the liability | 13:30:21 |
| 7 | management program was to reduce the | 13:30:23 |
| 8 | principal balance of the debt, right, | 13:30:25 |
| 9 | take advantage of discounts, right? | 13:30:27 |
| 10 | A.    Yes. | 13:30:29 |
| 11 | Q.    The debtors weren't in the | 13:30:30 |
| 12 | business of increasing the amount of debt | 13:30:31 |
| 13 | at EFIH during this period, were they? | 13:30:33 |
| 14 | A.    Well, again, when -- during | 13:30:35 |
| 15 | those, during those few months, no.  But | 13:30:38 |
| 16 | there were -- | 13:30:40 |
| 17 | Q.    Okay. | 13:30:41 |
| 18 | A.    There were times when we did | 13:30:42 |
| 19 | add that to EFIH -- | 13:30:44 |
| 20 | Q.    So let's -- | 13:30:44 |
| 21 | A.    -- to repay the intercompany | 13:30:46 |
| 22 | note. | 13:30:48 |
| 23 | Q.    Let's talk about balance sheet | 13:30:48 |
| 24 | solvency.  We've just talked about the | 13:30:49 |
| 25 | liability side, the right-hand side of | 13:30:51 |

| | |
|---|---|
| 1   the balance sheet and you just told me | 13:30:53 |
| 2   those didn't increase the liabilities | 13:30:55 |
| 3   materially.  Did the value of the assets | 13:30:57 |
| 4   between October of 2012 and February of | 13:30:59 |
| 5   2013 deteriorate materially such that | 13:31:03 |
| 6   EFIH went from solvent to insolvent? | 13:31:07 |
| 7        A.    If your focus -- | 13:31:09 |
| 8             MR. HOWELL:  Object to form. | 13:31:11 |
| 9        A.    If your focus is on EFIH I | 13:31:12 |
| 10  would say I would agree that EFIH was | 13:31:14 |
| 11  solvent at that time.  If that's -- if | 13:31:18 |
| 12  that's where you're focused. | 13:31:20 |
| 13       Q.    It's fair enough because I | 13:31:21 |
| 14  asked you whether there was a rep of EFIH | 13:31:23 |
| 15  and EFH.  Let me, let me limit my | 13:31:26 |
| 16  questions from now on, unless I tell you | 13:31:28 |
| 17  differently, to EFIH. | 13:31:31 |
| 18       A.    Okay. | 13:31:32 |
| 19       Q.    You would agree with me that | 13:31:32 |
| 20  in February 2013, EFIH was solvent, | 13:31:34 |
| 21  right? | 13:31:37 |
| 22       A.    Yes. | 13:31:37 |
| 23             MR. HOWELL:  Object to form. | 13:31:38 |
| 24             MR. ANKER:  Did you hear the | 13:31:43 |
| 25       answer over the objection? | 13:31:44 |

| | | |
|---|---|---|
| 1 | THE REPORTER:  Yes. | 13:31:45 |
| 2 | MR. ANKER:  Yes. | 13:31:46 |
| 3 | Q.    And indeed do I understand -- | 13:31:47 |
| 4 | well, you don't recollect this document, | 13:31:49 |
| 5 | but maybe you can recollect sort of the | 13:31:51 |
| 6 | presentation.  Can I ask you to turn to | 13:31:52 |
| 7 | page 2606, this is sort of 80 percent of | 13:31:55 |
| 8 | the way through the document.  Are you | 13:31:57 |
| 9 | there? | 13:32:10 |
| 10 | A.    No.  Okay. | 13:32:12 |
| 11 | Q.    Okay.  You're on 2606.  This | 13:32:16 |
| 12 | is, it says transaction overview and | 13:32:20 |
| 13 | assumptions, right? | 13:32:22 |
| 14 | A.    Yes, sir. | 13:32:23 |
| 15 | Q.    And if you look at the bottom | 13:32:25 |
| 16 | of the page it says EFH new cash and it | 13:32:26 |
| 17 | says new cash $2 billion, right? | 13:32:28 |
| 18 | A.    That's correct. | 13:32:31 |
| 19 | Q.    And the way I read this | 13:32:32 |
| 20 | document, I want to make sure it's | 13:32:34 |
| 21 | consistent with your understanding of the | 13:32:36 |
| 22 | discussions, the new 2 billion wasn't | 13:32:38 |
| 23 | going to come in the form of debt, it was | 13:32:42 |
| 24 | going to come in the form of equity and | 13:32:43 |
| 25 | the equity was then going to be used to | 13:32:45 |

| | | |
|---|---|---|
| 1 | reduce debt at, among other -- at EFIH, | 13:32:47 |
| 2 | right? | 13:32:51 |
| 3 | A.   That is correct. | 13:32:51 |
| 4 | Q.   And indeed, if you look in the | 13:32:52 |
| 5 | right-hand column, EFIH -- EFH | 13:32:55 |
| 6 | recapitalization, do you see that | 13:32:58 |
| 7 | heading? | 13:33:00 |
| 8 | A.   Yes. | 13:33:00 |
| 9 | Q.   And it says in the second | 13:33:00 |
| 10 | bullet, 2 billion of new cash used for | 13:33:02 |
| 11 | debt reduction, right? | 13:33:04 |
| 12 | A.   Yes. | 13:33:05 |
| 13 | Q.   And right below it, it says | 13:33:07 |
| 14 | that 508 million of EFIH 10 percent first | 13:33:10 |
| 15 | lien debt will get retired, right? | 13:33:14 |
| 16 | A.   Yes. | 13:33:17 |
| 17 | Q.   And then it says with 51 | 13:33:17 |
| 18 | million of premium, do you see that | 13:33:19 |
| 19 | language? | 13:33:21 |
| 20 | A.   I do. | 13:33:22 |
| 21 | Q.   So the contemplation was to | 13:33:22 |
| 22 | get equity, use the equity to retire EFIH | 13:33:26 |
| 23 | first lien debt and as part of that, pay | 13:33:30 |
| 24 | whatever make whole or other premium was | 13:33:32 |
| 25 | owed under the indentures, right? | 13:33:35 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 155

```
 1          A.    It was not make whole.  It was        13:33:37

 2    the $2 billion of cash coming in,                 13:33:40

 3    utilizing the equity claw, paying the one         13:33:43

 4    year of coupon required under that                13:33:46

 5    portion of the optional redemption in the         13:33:50

 6    indenture.                                         13:33:53

 7          Q.    Can I turn your attention to          13:33:53

 8    the next page, 2607.  Tell me when you're         13:33:55

 9    there.  And you see the sources and uses          13:34:00

10    and --                                             13:34:02

11          A.    I'm there.                             13:34:02

12          Q.    -- pro forma capitalization?          13:34:03

13          A.    I'm sorry, yes.                        13:34:05

14          Q.    And then on EFH/EFIH uses, not        13:34:06

15    the sources, uses, it says equity                 13:34:11

16    clawback 1 billion 801 million, bond call         13:34:13

17    premium 199 million, the sum of that adds         13:34:17

18    up to 2 billion, did I read that right?           13:34:20

19          A.    You read that correct.                13:34:23

20          Q.    What is the bond call premium         13:34:24

21    referenced on page 2607?                          13:34:26

22          A.    Again, as we're -- if you look        13:34:28

23    in the indenture, as we utilize the               13:34:31

24    equity claw feature in the optional               13:34:34

25    redemption, as part of utilizing that             13:34:37
```

Page 156

| | | |
|---|---|---|
| 1 | equity claw, you pay one year's -- you | 13:34:40 |
| 2 | pay a one time coupon payment effectively | 13:34:44 |
| 3 | as the premium. | 13:34:49 |
| 4 | Q.    Let me ask it this way.  And | 13:34:50 |
| 5 | that's very helpful, I did not appreciate | 13:34:52 |
| 6 | that.  The contemplation here, what is | 13:34:55 |
| 7 | being discussed with investment advisors | 13:34:59 |
| 8 | is using cash to pay down EFIH first lien | 13:35:02 |
| 9 | and second lien debt and pay whatever is | 13:35:08 |
| 10 | owed, whether it's a bond premium as you | 13:35:11 |
| 11 | just described it, or any other premium | 13:35:15 |
| 12 | under the terms of the indenture, right? | 13:35:19 |
| 13 | A.    Under the optional redemption | 13:35:21 |
| 14 | terms of the indenture. | 13:35:23 |
| 15 | Q.    There is no attempt in this | 13:35:24 |
| 16 | proposal to say let's figure out a way | 13:35:27 |
| 17 | not to pay any premium at all that's due | 13:35:29 |
| 18 | under the indenture, right? | 13:35:32 |
| 19 | MR. HOWELL:  Object to form. | 13:35:36 |
| 20 | A.    In this, in this proposal we | 13:35:37 |
| 21 | were using the equity call feature that's | 13:35:42 |
| 22 | provided for in the indenture. | 13:35:45 |
| 23 | Q.    Right.  You said earlier that | 13:35:47 |
| 24 | you weren't sure -- maybe I misheard. | 13:35:51 |
| 25 | You pointed out -- let me back up. | 13:35:53 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Before I get to this.  I meant to ask you | 13:35:56 |
| 2 | this question.  If you look back at the | 13:35:58 |
| 3 | exhibit I've been asking you about, at | 13:36:01 |
| 4 | the bottom of every page it says | 13:36:03 |
| 5 | confidential, for professional eyes only, | 13:36:04 |
| 6 | Mike Kunkel.  Who is Mr. Kunkel? | 13:36:08 |
| 7 | A.    I do not know. | 13:36:12 |
| 8 | MR. ANKER:  Rush, I would ask | 13:36:20 |
| 9 | on the record that the debtors let | 13:36:21 |
| 10 | us know who Mr. Kunkel was and is. | 13:36:23 |
| 11 | MR. HOWELL:  Noted. | 13:36:27 |
| 12 | Q.    You mentioned earlier and | 13:36:29 |
| 13 | pointed out that exhibit, that the prior | 13:36:30 |
| 14 | exhibit, Exhibit number 14 was a | 13:36:33 |
| 15 | presentation to investment advisors, not | 13:36:35 |
| 16 | investors. | 13:36:39 |
| 17 | A.    Correct. | 13:36:39 |
| 18 | (Horton Exhibit 15 for | 13:36:39 |
| 19 | identification, Bates stamped EFH | 13:36:45 |
| 20 | 00305598 through 00305656.) | 13:36:46 |
| 21 | Q.    I'm going to show you now | 13:36:41 |
| 22 | Exhibit number 15 which bears Bates | 13:36:42 |
| 23 | stamps EFH 00305598 through 656.  This is | 13:36:44 |
| 24 | Exhibit 15.  It's entitled Project | 13:36:56 |
| 25 | Olympus investor presentation, is it not, | 13:36:59 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Mr. Horton? | 13:37:02 |
| 2 | A.    That is what it says. | 13:37:04 |
| 3 | Q.    And this presentation is the | 13:37:05 |
| 4 | following month, after Exhibit 14, right? | 13:37:07 |
| 5 | A.    Yes. | 13:37:09 |
| 6 | Q.    Okay.  Do you recognize this | 13:37:11 |
| 7 | document?  Does this one look familiar to | 13:37:14 |
| 8 | you? | 13:37:16 |
| 9 | A.    Yes. | 13:37:16 |
| 10 | Q.    Was this an actual | 13:37:40 |
| 11 | presentation made to investors? | 13:37:41 |
| 12 | A.    I don't know if this is the | 13:37:42 |
| 13 | final draft, if this is the final | 13:37:44 |
| 14 | document that was made.  I suspect that | 13:37:48 |
| 15 | it was. | 13:37:50 |
| 16 | Q.    I will represent to you, Mr. | 13:37:52 |
| 17 | Horton, that it's conceivable we missed | 13:37:56 |
| 18 | it in the production of documents, but | 13:37:58 |
| 19 | this is the only version of this document | 13:38:00 |
| 20 | of which we are aware.  I haven't seen a | 13:38:03 |
| 21 | bunch of drafts.  And you will also note, | 13:38:06 |
| 22 | tell me if I'm wrong, there isn't a word | 13:38:09 |
| 23 | draft on the cover or elsewhere, right? | 13:38:12 |
| 24 | A.    I can assure you this exact | 13:38:14 |
| 25 | document was not shared with the | 13:38:17 |

```
1    investors.                                          13:38:21
2         Q.    And how do you know that?               13:38:21
3         A.    Because it has the speaker              13:38:22
4    notes on the document itself.                      13:38:24
5         Q.    Okay.  So this document was a            13:38:26
6    form of a presentation that in addition            13:38:32
7    to including material actually handed out           13:38:35
8    to the investors, included notes to the            13:38:38
9    company personnel about what they should           13:38:42
10   and should not say, right?                         13:38:45
11              MR. HOWELL:  Object to form.            13:38:48
12        A.    I don't know about what they            13:38:49
13   should or should not say, but it                   13:38:50
14   certainly was a supplement to what was in          13:38:52
15   the document.                                      13:38:55
16        Q.    Was there a meeting with the           13:38:56
17   investors, with investors on or about             13:38:58
18   March 19, 2013?                                    13:39:01
19        A.    I don't recall that, whether           13:39:02
20   or not there was a meeting.                        13:39:04
21        Q.    Was there a teleconference or          13:39:05
22   other get-together in which some form of           13:39:09
23   this presentation was made?                        13:39:14
24        A.    I don't -- I do not know on            13:39:18
25   March 19th whether or not there was a             13:39:21
```

| | | |
|---|---|---|
| 1 | teleconference or meeting specifically on | 13:39:22 |
| 2 | that date. | 13:39:24 |
| 3 | Q.   Whether it was March 19, March | 13:39:25 |
| 4 | 28, April 4th, earlier in March, some | 13:39:27 |
| 5 | point around there, there was a | 13:39:31 |
| 6 | presentation made by the company, whether | 13:39:33 |
| 7 | in person or telephonically with | 13:39:36 |
| 8 | investors, right? | 13:39:39 |
| 9 | A.   I believe that's true. | 13:39:39 |
| 10 | Q.   And who were the investors?  I | 13:39:40 |
| 11 | don't mean for you to name each | 13:39:44 |
| 12 | institution, but were they, were they | 13:39:46 |
| 13 | creditors of a particular debtor within | 13:39:48 |
| 14 | the capital structure? | 13:39:50 |
| 15 | A.   Looking at this document, it | 13:39:52 |
| 16 | was likely we spoke to the TCEH creditors | 13:39:55 |
| 17 | as well as the EF -- EFH, EFIH creditors. | 13:40:01 |
| 18 | Q.   And in this document as well, | 13:40:06 |
| 19 | I think it's essentially the same | 13:40:11 |
| 20 | structure, but tell me if I'm wrong, | 13:40:13 |
| 21 | proposes, does it not, Mr. Horton, a | 13:40:15 |
| 22 | recapitalization of EFH and EFIH outside | 13:40:22 |
| 23 | of bankruptcy? | 13:40:29 |
| 24 | A.   Is there a specific page | 13:40:32 |
| 25 | you're referring to that you would like | 13:40:34 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 161

| | | |
|---|---|---|
| 1 | to draw my attention?  It's a very long, | 13:40:35 |
| 2 | lengthy document. | 13:40:38 |
| 3 | Q.    Sure. | 13:40:39 |
| 4 | A.    It looks like if you go to | 13:40:40 |
| 5 | page 34 -- | 13:40:42 |
| 6 | Q.    Yes. | 13:40:46 |
| 7 | A.    It's kind of a summary of the | 13:40:46 |
| 8 | restructuring transaction, it looks very | 13:40:48 |
| 9 | similar with the $2 billion. | 13:40:54 |
| 10 | Q.    Right.  It assumes, if you | 13:40:56 |
| 11 | look at page 34 and I appreciate your | 13:40:57 |
| 12 | directing me to that, it has, page 34 has | 13:41:00 |
| 13 | two different columns, right? | 13:41:03 |
| 14 | A.    That's correct. | 13:41:05 |
| 15 | Q.    And the left-hand column is | 13:41:05 |
| 16 | entitled TCEH restructuring, right? | 13:41:07 |
| 17 | A.    That's correct. | 13:41:11 |
| 18 | Q.    And it says timing | 13:41:11 |
| 19 | assumptions, filing May 1, 2013, right? | 13:41:13 |
| 20 | A.    Correct. | 13:41:17 |
| 21 | Q.    And by filing you mean TCEH | 13:41:18 |
| 22 | filed for bankruptcy, right? | 13:41:21 |
| 23 | A.    Correct. | 13:41:22 |
| 24 | Q.    And then in the right-hand | 13:41:22 |
| 25 | column it says EFH recapitalization, and | 13:41:25 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 162

| | | |
|---|---|---|
| 1 | it shows the uses of the money.  So | 13:41:30 |
| 2 | again, this is suggesting, this being | 13:41:32 |
| 3 | Exhibit 15, that EFIH would stay out of | 13:41:35 |
| 4 | bankruptcy, right? | 13:41:38 |
| 5 | A.    That's correct. | 13:41:40 |
| 6 | Q.    And again, the statement was | 13:41:41 |
| 7 | made that EFIH was solvent, right?  Turn | 13:41:47 |
| 8 | to page 2.  Again, we're in the | 13:41:57 |
| 9 | introduction where you don't bury the | 13:42:01 |
| 10 | lede.  Tell me when you're on page 2. | 13:42:04 |
| 11 | A.    I'm on page 2. | 13:42:11 |
| 12 | Q.    I understand it says solvent | 13:42:12 |
| 13 | EFH, EFIH.  Let's put EFH to the side. | 13:42:15 |
| 14 | A.    Okay. | 13:42:18 |
| 15 | Q.    You would acknowledge that the | 13:42:18 |
| 16 | debtors believed that as of one month | 13:42:20 |
| 17 | after the, after Exhibit 14, as of March, | 13:42:23 |
| 18 | on or about March 19, 2013, EFIH remained | 13:42:27 |
| 19 | solvent, right? | 13:42:32 |
| 20 | A.    That's correct. | 13:42:33 |
| 21 | MR. HOWELL:  Object to form. | 13:42:34 |
| 22 | Q.    I'm sorry, what was your | 13:42:35 |
| 23 | answer? | 13:42:36 |
| 24 | A.    Correct. | 13:42:37 |
| 25 | Q.    And again, going back to the | 13:42:37 |

| | | |
|---|---|---|
| 1 | page you took me to earlier, 34, the | 13:42:47 |
| 2 | proposal is a $2 billion equity | 13:42:50 |
| 3 | investment with then that money to be | 13:42:53 |
| 4 | used to pay down the EFIH first lien and | 13:42:57 |
| 5 | second lien debt, right? | 13:43:03 |
| 6 | A.    That's correct. | 13:43:04 |
| 7 | Q.    And in each case the paydown | 13:43:06 |
| 8 | would be pursuant to the indenture, | 13:43:08 |
| 9 | right? | 13:43:10 |
| 10 | A.    That's correct. | 13:43:10 |
| 11 | Q.    And to pay whatever premiums | 13:43:11 |
| 12 | were due as specified in the indenture, | 13:43:13 |
| 13 | right? | 13:43:16 |
| 14 | A.    Yes, the amounts due. | 13:43:16 |
| 15 | Q.    Right.  So the company would | 13:43:19 |
| 16 | be invoking the optional redemption | 13:43:20 |
| 17 | provision and then paying what is owed | 13:43:23 |
| 18 | under the optional redemption provision? | 13:43:24 |
| 19 | A.    That's correct. | 13:43:26 |
| 20 | Q.    And the company there means | 13:43:27 |
| 21 | EFIH, right? | 13:43:29 |
| 22 | A.    That's correct. | 13:43:30 |
| 23 | Q.    Okay.  Now, the people who are | 13:43:31 |
| 24 | going to put in this $2 billion in new | 13:43:37 |
| 25 | cash, the debtors' proposal was that it | 13:43:42 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 164

| | | |
|---|---|---|
| 1 | would be the TCEH first liens, right? | 13:43:45 |
| 2 | A.    I'm not sure about that | 13:43:49 |
| 3 | specifically.  We had a lot of variations | 13:43:51 |
| 4 | in this.  It could have come in the form | 13:43:53 |
| 5 | of a rights offering, but I would need to | 13:43:56 |
| 6 | look back at the assumptions.  I'm | 13:43:58 |
| 7 | looking here for that assumption.  EFH | 13:44:14 |
| 8 | would put in $2 billion.  The exact raise | 13:44:21 |
| 9 | of that, the source of that I'm not sure | 13:44:26 |
| 10 | that I see where it's TCEH at this point. | 13:44:32 |
| 11 | Q.    You know, I think I'll show | 13:44:35 |
| 12 | it, I think I have it on a different | 13:44:35 |
| 13 | document, which I'll get you to, but can | 13:44:37 |
| 14 | you stay on that page, on page 34. | 13:44:40 |
| 15 | A.    I'll go back to it. | 13:44:41 |
| 16 | Q.    Sure.  Now, I asked you | 13:44:43 |
| 17 | whether what was being proposed here as | 13:44:51 |
| 18 | of March 19, 2013, was to refinance $2 | 13:44:55 |
| 19 | billion of EFIH first and second lien | 13:45:01 |
| 20 | debt and --and through equity.  And as I | 13:45:04 |
| 21 | actually read the document, Mr. Horton, | 13:45:11 |
| 22 | if you look at the right-hand column it | 13:45:13 |
| 23 | seems to me that it's suggesting in | 13:45:15 |
| 24 | addition refinancing some of the PIK | 13:45:18 |
| 25 | notes, am I reading that right? | 13:45:20 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 165

```
 1          A.     That is also correct.              13:45:21

 2          Q.     But in addition to that, in        13:45:22

 3    addition to that the next bullet says           13:45:29

 4    "Post-emergence refinance first lien debt       13:45:31

 5    at 6 percent and second lien debt at 7.5        13:45:33

 6    percent based on maturity and call              13:45:36

 7    schedules."                                     13:45:39

 8          Did I read that correctly?                13:45:39

 9          A.     That's correct.                    13:45:41

10          Q.     So the proposal was, as of         13:45:41

11    March 19th, 2013, that EFIH is going to         13:45:44

12    refinance 100 percent of its first lien         13:45:50

13    and second lien debt, right?                    13:45:52

14          A.     So post-emergence, so let's        13:45:54

15    look at what emergence is, so the               13:45:57

16    emergence date is January 1st, 2014.            13:45:59

17          Q.     Right.                             13:46:03

18          A.     So we bring $2 billion in          13:46:03

19    under this scenario as you and I have           13:46:06

20    discussed, and use the equity claw to           13:46:09

21    claw and redeem first lien and second           13:46:12

22    lien and PIK notes.  Okay?  We've now           13:46:17

23    emerged from bankruptcy at TCEH, right,         13:46:21

24    at the recapitalized company, and as we         13:46:25

25    approach the, if you will bear with me          13:46:29
```

```
 1    and allow me, as we approach the call          13:46:35
 2    dates for each one of the series of            13:46:37
 3    notes, we were calling the, calling those      13:46:39
 4    notes, so whatever the remaining amounts       13:46:43
 5    are after we've done the equity claw,          13:46:45
 6    call the notes at the redemption price.        13:46:48
 7         Q.    Okay.  So let me -- I think I        13:46:51
 8    understand, but I want to make sure we         13:46:55
 9    have a clean record.  In essence, Exhibit      13:46:56
10    15, and I'll represent to you Exhibit 14       13:47:00
11    is to the same effect, you don't have to       13:47:04
12    look back, it will say what it says.           13:47:06
13         A.    I trust you.                        13:47:08
14         Q.    Exhibit 15 represented dealing      13:47:09
15    with the EFIH debt in two stages.  In          13:47:10
16    stage 1, while TCEH is in bankruptcy,          13:47:14
17    between May 1, 2013 and January 1, 2014,       13:47:18
18    2 billion in equity would be raised and        13:47:23
19    that would be used to refinance $2             13:47:25
20    billion of EFIH first lien, second lien        13:47:29
21    and PIK debt, right?                           13:47:32
22         A.    That's correct.                     13:47:33
23         Q.    That's step 1.  Step 2 is now       13:47:33
24    we fast forward to past January 1, 2014,       13:47:36
25    TCEH is outside of bankruptcy, and all         13:47:40
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | the rest of the EFIH first lien and | 13:47:46 |
| 2 | second lien debt would be refinanced, | 13:47:48 |
| 3 | right? | 13:47:50 |
| 4 | A.    At the call dates. | 13:47:51 |
| 5 | Q.    At the call dates.  And it | 13:47:52 |
| 6 | would be refinanced, the projection here | 13:47:53 |
| 7 | is at 6 percent per annum for the first | 13:47:56 |
| 8 | lien debt and 7.5 percent for the second | 13:47:59 |
| 9 | lien debt, right? | 13:48:02 |
| 10 | A.    Yes, according to this | 13:48:03 |
| 11 | assumption, yes. | 13:48:05 |
| 12 | Q.    Right.  And I think we can | 13:48:06 |
| 13 | stipulate 6 percent is significantly | 13:48:08 |
| 14 | lower than 10 percent, right? | 13:48:11 |
| 15 | A.    It is 400 -- | 13:48:14 |
| 16 | Q.    40 percent, 40 percent lower, | 13:48:17 |
| 17 | right? | 13:48:17 |
| 18 | A.    400 basis points lower. | 13:48:19 |
| 19 | Q.    400 basis points, right? | 13:48:22 |
| 20 | A.    Right. | 13:48:24 |
| 21 | Q.    And presumably the company was | 13:48:24 |
| 22 | putting in the assumption that you could | 13:48:26 |
| 23 | refinance the first lien debt at 6 | 13:48:29 |
| 24 | percent in this presentation which it's | 13:48:31 |
| 25 | making to investors because it thought | 13:48:34 |

| | | |
|---|---|---|
| 1 | that assumption was reasonable, right? | 13:48:36 |
| 2 | A.    That's correct. | 13:48:40 |
| 3 | Q.    And the company recognized | 13:48:41 |
| 4 | that it would have to pay premiums upon | 13:48:44 |
| 5 | that refinancing, right? | 13:48:49 |
| 6 | A.    That's correct. | 13:48:51 |
| 7 | Q.    If I understand you correctly, | 13:48:51 |
| 8 | it wouldn't be the make whole premium | 13:48:54 |
| 9 | because the make whole premium is the | 13:48:56 |
| 10 | premium paid if the debtors called prior | 13:48:58 |
| 11 | to the first call date, right? | 13:49:01 |
| 12 | A.    That's correct. | 13:49:02 |
| 13 | Q.    So if I understand you | 13:49:03 |
| 14 | correctly, instead the company was | 13:49:04 |
| 15 | contemplating calling the notes at the | 13:49:05 |
| 16 | first call date, right? | 13:49:07 |
| 17 | A.    Yes. | 13:49:08 |
| 18 | Q.    Okay.  And the way the | 13:49:09 |
| 19 | indentures work is that once you get to | 13:49:12 |
| 20 | the first call date, you have to pay a | 13:49:14 |
| 21 | premium to par, it might be 105, it might | 13:49:17 |
| 22 | be 104, it might be 106, whatever it is, | 13:49:20 |
| 23 | right? | 13:49:22 |
| 24 | A.    There's a redemption price | 13:49:22 |
| 25 | schedule. | 13:49:25 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 169

```
1        Q.    Right.  And the redemption          13:49:25
2   price is north of par, in excess of par?       13:49:26
3        A.    That's correct.                      13:49:29
4        Q.    Okay.  And so the company was        13:49:29
5   proposing to repay and pay exactly what         13:49:31
6   the indentures called for and it was            13:49:36
7   going to -- how was it going to come up         13:49:39
8   with the money to do that?                      13:49:41
9        A.    Well, if you look at the             13:49:43
10  bigger picture here, we believed at this        13:49:46
11  point in time, again, TCEH, first lien          13:49:50
12  lenders are coming, are exchanging --           13:49:53
13  first lien lenders are, TCEH are taking         13:49:58
14  equity in EFH, valued at approximately,         13:50:03
15  you know, 7.5, $8 billion, we just put $2       13:50:08
16  billion in, we have $10 billion of equity       13:50:12
17  at EFH.  Now currently, at this point in        13:50:15
18  time we actually had zero equity at EFH.        13:50:19
19  So we have a recapitalized company with         13:50:24
20  $10 billion of equity.  We think we had         13:50:29
21  an uplift in all the credit and                 13:50:32
22  therefore, we were able to refinance at 6       13:50:33
23  percent and 7.5 percent, respectively.          13:50:37
24       Q.    My question wasn't clear and         13:50:39
25  maybe let me, let me ask it in a leading        13:50:42
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 170

```
 1    way.                                         13:50:45

 2            I read the next sentence to          13:50:45

 3    say, incremental debt raised in amounts      13:50:48

 4    equal to call premiums.  So I understand     13:50:52

 5    this to be saying we're going to have to     13:50:54

 6    pay in excess of par to refinance the        13:50:57

 7    first lien and second lien debt, and the     13:51:01

 8    source, that's the use of the money, the     13:51:06

 9    source will be we'll borrow incremental      13:51:08

10    money to pay the premium to par?             13:51:10

11        A.    That's correct.                    13:51:13

12        Q.    Did I understand it correctly?     13:51:14

13        A.    That's correct.                    13:51:15

14        Q.    And the debtors were making        13:51:19

15    this proposal on or about March of 2013      13:51:21

16    because they thought it was a reasonable     13:51:23

17    proposal, right?                             13:51:25

18        A.    That's correct.                    13:51:25

19        Q.    This is, I don't mean this         13:51:26

20    question in a condescending way, I really    13:51:29

21    don't.                                       13:51:31

22        A.    Okay.                              13:51:32

23        Q.    The debtors wouldn't have come     13:51:32

24    out and made this proposal and had a         13:51:34

25    meeting with a bunch of investors if they    13:51:37
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 171

1    thought this was a ridiculous proposal        13:51:38

2    that makes no sense, right?                    13:51:41

3        A.    I think it was a, a first cut        13:51:42

4    strawman of a proposal.  We'd obviously        13:51:47

5    done a lot of analysis and there were          13:51:49

6    lots of areas for discussion and              13:51:51

7    negotiation.  And it was a -- I would say      13:51:55

8    it was a strawman proposal, something for      13:52:00

9    us to bounce off our investors, off their     13:52:03

10   advisors, to see if they had any               13:52:06

11   thoughts, any concerns, and at least          13:52:10

12   begin the dialogue.                            13:52:13

13       Q.    What was the response?  I            13:52:14

14   understand you don't recall whether there      13:52:16

15   was a meeting exactly on March 19, 2013,      13:52:17

16   but whenever this meeting occurred, in or     13:52:21

17   about March 15, 2013?                          13:52:24

18       A.    I think the initial reaction        13:52:28

19   was look, this is something we all need        13:52:30

20   to continue to analyze and, there was,        13:52:32

21   you know, negotiation and posturing on        13:52:36

22   both sides at that point, and, you know,      13:52:40

23   I think TCEH had the position that they       13:52:44

24   wanted to take their assets and, you          13:52:46

25   know, go away and weren't terribly            13:52:50

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | supportive of it, and there was a lot of | 13:52:55 |
| 2 | questions from all investors of how do | 13:52:57 |
| 3 | you raise $2 billion in advance of | 13:53:00 |
| 4 | emerging from bankruptcy.  Even if EFH | 13:53:04 |
| 5 | and EFIH were out. | 13:53:10 |
| 6 | Q.    And the debtors filed an 8-K | 13:53:11 |
| 7 | in or about April 15, 2013 describing | 13:53:21 |
| 8 | their ongoing discussions along this line | 13:53:25 |
| 9 | -- along the lines of Exhibit 15, right? | 13:53:28 |
| 10 | A.    I think that's correct, yes, | 13:53:30 |
| 11 | sir. | 13:53:44 |
| 12 | (Horton Exhibit 16 for | 13:53:44 |
| 13 | identification, Bates stamped EFH | 13:53:55 |
| 14 | 00002642 through 00002702.) | 13:53:55 |
| 15 | Q.    Now let me show you the next | 13:53:44 |
| 16 | document which is also entitled Project | 13:53:46 |
| 17 | Olympus and is a deck, and this one is | 13:53:48 |
| 18 | dated May 29, 2013.  It will bear Exhibit | 13:53:49 |
| 19 | 16, EFH 00002642 to 2702 inclusive. | 13:53:53 |
| 20 | Now, Mr. Horton, do you | 13:54:16 |
| 21 | recognize this document which has been | 13:54:18 |
| 22 | marked as Exhibit 16? | 13:54:20 |
| 23 | A.    I do. | 13:54:21 |
| 24 | Q.    What is it, sir? | 13:54:26 |
| 25 | A.    It's a presentation to the | 13:54:27 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 173

| | |
|---|---|
| 1 | EFIH unsecured creditors' advisors. | 13:54:28 |
| 2 | Q.    So those are -- the term here | 13:54:31 |
| 3 | is the EFIH unsecureds and I think I've | 13:54:33 |
| 4 | used during this deposition the PIKs. | 13:54:36 |
| 5 | Are those synonymous? | 13:54:38 |
| 6 | A.    I think so. | 13:54:40 |
| 7 | Q.    Let's back up.  EFIH has a | 13:54:42 |
| 8 | funded indebtedness, a first lien | 13:54:47 |
| 9 | indebtedness, right? | 13:54:50 |
| 10 | A.    Yes. | 13:54:51 |
| 11 | Q.    Second lien indebtedness? | 13:54:51 |
| 12 | A.    That's correct. | 13:54:53 |
| 13 | Q.    And PIK indebtedness, right, | 13:54:53 |
| 14 | the PIK notes? | 13:54:56 |
| 15 | A.    That's correct, and then | 13:54:57 |
| 16 | guaranteed some LBO notes at EFH. | 13:54:58 |
| 17 | Q.    But it's not an operating | 13:55:02 |
| 18 | company, it's an intermediary holding | 13:55:03 |
| 19 | company, right? | 13:55:06 |
| 20 | A.    That's correct. | 13:55:06 |
| 21 | Q.    So it doesn't have meaningful | 13:55:07 |
| 22 | trade debt, right? | 13:55:09 |
| 23 | MR. HOWELL:  Object to form. | 13:55:11 |
| 24 | Q.    Substantial trade debt? | 13:55:12 |
| 25 | A.    I think that's correct. | 13:55:14 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 174

| | | |
|---|---|---|
| 1 | Q.     So the basic capital structure | 13:55:18 |
| 2 | and the basic creditor body is the first | 13:55:21 |
| 3 | liens, the second liens and the PIKs, | 13:55:23 |
| 4 | right? | 13:55:25 |
| 5 | A.     That's correct. | 13:55:25 |
| 6 | Q.     Now, this was a presentation | 13:55:26 |
| 7 | to the EFIH unsecured creditors or the | 13:55:28 |
| 8 | PIKs, right? | 13:55:30 |
| 9 | A.     Yes. | 13:55:31 |
| 10 | Q.     And that's the group | 13:55:31 |
| 11 | represented at least in counsel by Akin | 13:55:33 |
| 12 | Gump, right? | 13:55:37 |
| 13 | A.     That's my understanding. | 13:55:40 |
| 14 | Q.     That's York and Avenue and | 13:55:41 |
| 15 | Third Avenue and Schoenfeld and GSO, | 13:55:43 |
| 16 | right? | 13:55:50 |
| 17 | A.     That's correct. | 13:55:51 |
| 18 | Q.     Right. | 13:55:51 |
| 19 | A.     As we know today. | 13:55:54 |
| 20 | Q.     As we know, as we know today. | 13:55:56 |
| 21 | And was there a meeting on or | 13:56:02 |
| 22 | about May 29, 2013 with this group? | 13:56:03 |
| 23 | A.     I assume there was.  I don't | 13:56:09 |
| 24 | know specifically. | 13:56:12 |
| 25 | Q.     There was some meeting, | 13:56:12 |

1    whether it was --                          13:56:15

2        A.    I know at some point in time      13:56:16

3    we met with them, counsel.                  13:56:17

4        Q.    But again, I don't mean to        13:56:18

5    belabor this point and I don't mean at      13:56:20

6    all to insinuate anything other than the    13:56:22

7    answer to this has to be yes, the           13:56:24

8    company, when it made a presentation to     13:56:28

9    the PIKs, just like when it made a          13:56:30

10   presentation to its dealers, just like      13:56:33

11   when it made a presentation to the other    13:56:35

12   advisors and investors, was careful not     13:56:37

13   to make any knowing misrepresentations,     13:56:40

14   right?                                      13:56:43

15       A.    I would -- I would              13:56:44

16   characterize these presentations as,        13:56:45

17   look, the company had a plan, a strategy,   13:56:50

18   a structure that they had, we had           13:56:56

19   developed and we were clearly testing       13:56:59

20   that with the investment advisors, the      13:57:03

21   creditors, trying to get feedback, at       13:57:07

22   least get the conversations and             13:57:10

23   negotiations ongoing.                       13:57:12

24       Q.    Okay.  That's a helpful          13:57:13

25   answer.  Let me break it into two parts.    13:57:15

| | | |
|---|---|---|
| 1 | Let me get a little more specific.  Can | 13:57:17 |
| 2 | you turn to page it bears the Bates stamp | 13:57:19 |
| 3 | 645, the last three digits.  This is also | 13:57:22 |
| 4 | in the introduction.  Indeed, it's page 1 | 13:57:24 |
| 5 | of the -- the only page of the | 13:57:27 |
| 6 | introduction.  Tell me when you're there. | 13:57:28 |
| 7 | A.    I'm there. | 13:57:33 |
| 8 | Q.    Okay.  And again, it says on | 13:57:33 |
| 9 | this page recapitalize a solvent EFH, | 13:57:35 |
| 10 | EFIH out of court, does it not? | 13:57:38 |
| 11 | A.    It does. | 13:57:40 |
| 12 | Q.    Let's put EFH aside.  The | 13:57:41 |
| 13 | debtors wouldn't have described EFIH as | 13:57:45 |
| 14 | solvent in this presentation dated May | 13:57:49 |
| 15 | 29, 2013, to various of their investors | 13:57:53 |
| 16 | unless the debtors believed that to be | 13:57:57 |
| 17 | true, right? | 13:57:59 |
| 18 | MR. HOWELL:  Object to form. | 13:58:00 |
| 19 | A.    That's correct. | 13:58:01 |
| 20 | Q.    And the debtors wouldn't have | 13:58:02 |
| 21 | made that representation or that | 13:58:05 |
| 22 | statement had they not thought they had | 13:58:07 |
| 23 | an adequate basis for it?  That's a | 13:58:11 |
| 24 | terribly inarticulate question.  Not only | 13:58:15 |
| 25 | did the debtors believe that EFIH was | 13:58:18 |

| | | |
|---|---|---|
| 1 | solvent as of May 29, 2013, but they | 13:58:20 |
| 2 | believed they had a legitimate basis for | 13:58:23 |
| 3 | reaching that conclusion, right? | 13:58:25 |
| 4 | MR. HOWELL: Object to form, | 13:58:27 |
| 5 | to the extent it calls for a legal | 13:58:28 |
| 6 | conclusion. | 13:58:30 |
| 7 | Q. I do not, I'll stipulate right | 13:58:30 |
| 8 | now, I do not want any legal conclusions | 13:58:32 |
| 9 | from you throughout this deposition. As | 13:58:34 |
| 10 | a business guy, you were making, the | 13:58:36 |
| 11 | company was making a representation and | 13:58:39 |
| 12 | it believed it to be true and it believed | 13:58:40 |
| 13 | it had a basis for believing it, right? | 13:58:42 |
| 14 | A. It's in the deck and I suspect | 13:58:44 |
| 15 | the company believed that it was true. | 13:58:47 |
| 16 | Q. Okay. And again, if you turn | 13:58:49 |
| 17 | to page 5, it also contemplates, am I | 13:58:53 |
| 18 | right, that this document, as of May 29, | 13:58:56 |
| 19 | 2013, Exhibit 16, that EFIH will be | 13:59:00 |
| 20 | recapitalized out of court, right? | 13:59:06 |
| 21 | A. EFH and EFIH will be | 13:59:08 |
| 22 | recapitalized out of court. | 13:59:11 |
| 23 | Q. Right. Now, if you -- again, | 13:59:12 |
| 24 | could you turn to page 38. Tell me when | 13:59:41 |
| 25 | you're there. | 13:59:50 |

| | | |
|---|---|---|
| 1 | A.    Yes. | 13:59:59 |
| 2 | Q.    Here again, as with the prior | 14:00:00 |
| 3 | decks, the ones from February and March, | 14:00:06 |
| 4 | it shows EFH, EFIH recapitalize out of | 14:00:11 |
| 5 | court, whereas TCEH and EFCH are | 14:00:15 |
| 6 | restructured in court, right? | 14:00:19 |
| 7 | A.    Yes. | 14:00:20 |
| 8 | Q.    And the TCEH first liens would | 14:00:21 |
| 9 | exchange their debt claims for 5 billion | 14:00:22 |
| 10 | of cash funded by a new debt issuance and | 14:00:23 |
| 11 | they would get some to be negotiated | 14:00:25 |
| 12 | equity in EFH, right? | 14:00:28 |
| 13 | A.    That is correct. | 14:00:30 |
| 14 | Q.    Okay.  This presentation, | 14:00:31 |
| 15 | however, unlike the others, noted that a | 14:00:45 |
| 16 | successful deal requires agreement among | 14:00:51 |
| 17 | EFIH, EFH unsecured creditors, TCEH first | 14:00:55 |
| 18 | lien creditors, the company and the | 14:01:00 |
| 19 | existing EFH equity holders, right?  Let | 14:01:02 |
| 20 | me turn you to page 42. | 14:01:05 |
| 21 | A.    Which page?  I'm sorry. | 14:01:06 |
| 22 | Q.    42.  Are you on page 42, sir? | 14:01:08 |
| 23 | A.    Yes, I'm reading -- if you | 14:01:17 |
| 24 | don't mind, let me read this page, | 14:01:19 |
| 25 | because it's -- | 14:01:22 |

```
 1        Q.    Yes, yes.                              14:01:22

 2        A.    Okay.  Thank you.                      14:01:54

 3        Q.    So in this presentation, the           14:01:55

 4   company was saying to have a deal we need         14:01:57

 5   the agreement of four different                   14:02:01

 6   constituencies, one is itself, the                14:02:03

 7   company, another is the EFIH and the EFH          14:02:05

 8   unsecureds, a second is the TCEH first            14:02:11

 9   lien creditors, and the fourth is the             14:02:13

10   sponsors, right?                                  14:02:15

11        A.    Yes.                                   14:02:16

12        Q.    Now, given that the company's          14:02:16

13   position was that EFIH was solvent, why           14:02:20

14   did a deal require an agreement of the            14:02:24

15   EFIH unsecureds?                                  14:02:27

16        MR. HOWELL:  Object to form.                 14:02:29

17        A.    I'm not sure I know the answer         14:02:34

18   to that.                                          14:02:35

19        Q.    Okay, that's fair.  Now, it            14:02:36

20   doesn't say that a deal requires an               14:02:40

21   agreement of the EFIH first liens or the          14:02:42

22   EFIH second liens, right?                         14:02:47

23        A.    That's correct.                        14:02:49

24        Q.    And that's because the                 14:02:50

25   contemplation was that they would simply          14:02:51
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 180

| | |
|---|---|
| 1    be taken out, paid all principal, all | 14:02:53 |
| 2    accrued interest, and whatever premiums | 14:02:57 |
| 3    were due and payable, right? | 14:02:59 |
| 4         A.    I would need to look through | 14:03:02 |
| 5    this presentation to see the | 14:03:03 |
| 6    restructuring approach.  Right, this is | 14:03:07 |
| 7    May 29th of 2013.  We've made the | 14:03:12 |
| 8    interest payment of May 1st, 2013 on the | 14:03:17 |
| 9    unsecured for the TCEH unsecured | 14:03:21 |
| 10   creditors, and so we've had kind of a, if | 14:03:26 |
| 11   you will, a step change in, you know, | 14:03:29 |
| 12   where we are in the process and, you | 14:03:32 |
| 13   know, we did make changes along the way | 14:03:35 |
| 14   and adjustments obviously, we've had | 14:03:38 |
| 15   several conversations.  So I need -- I | 14:03:41 |
| 16   need a chance to review and see if we're | 14:03:45 |
| 17   still bringing in $2 billion of equity or | 14:03:47 |
| 18   are we asking the EFH, EFIH creditors, | 14:03:50 |
| 19   EFH, EFIH creditors to convert to equity | 14:03:56 |
| 20   at this point.  I need to look. | 14:03:59 |
| 21        Q.    Well you don't have a | 14:04:03 |
| 22   recollection; is that right? | 14:04:04 |
| 23        A.    Of that point? | 14:04:06 |
| 24        Q.    Yes. | 14:04:07 |
| 25        A.    I don't without going through | 14:04:07 |

```
 1     the document.                                14:04:09
 2         Q.    All right.  Now, how did this      14:04:10
 3     meeting end as you recall it, the meeting    14:04:18
 4     at which Exhibit 16 was presented?           14:04:23
 5         A.    I don't recall.                     14:04:25
 6         Q.    We've gone over several            14:04:25
 7     documents in which the debtors stated,       14:04:28
 8     let me not use the word represented, just    14:04:31
 9     stated that EFIH was solvent.  Let's         14:04:33
10     focus on the first half of 2013.  January    14:04:38
11     1, 2013 to June 30, 2013, are you aware      14:04:47
12     of the debtors ever taking the position      14:04:52
13     during that six month period that EFIH       14:04:57
14     was insolvent?                               14:04:59
15              MR. HOWELL:  Object to form.        14:05:02
16         A.    I'm not aware of anyone taking     14:05:03
17     that position that EFIH was insolvent.       14:05:12
18         Q.    Okay.                              14:05:15
19         A.    Can I qualify that slightly.       14:05:24
20     Again, based on, again, what we read in      14:05:26
21     the offering memorandum, in the dealer       14:05:28
22     manager agreement.  Not the offering         14:05:32
23     memorandum, but the dealer manager          14:05:34
24     agreement.                                   14:05:36
25         Q.    Right.                             14:05:37
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 182

```
 1          A.    Under those parameters.            14:05:38

 2          Q.    Right.                             14:05:40

 3          A.    Okay.                              14:05:41

 4          Q.    Now, you're aware that, I'm        14:05:41

 5    going to fast forward a little bit, that       14:05:44

 6    on November 1st, 2013, the debtors filed       14:05:45

 7    an 8-K in which they proposed to, or in        14:05:50

 8    which they said they were engaged in           14:05:55

 9    discussions about putting EFIH into            14:05:57

10    bankruptcy and in bankruptcy                   14:06:00

11    restructuring the first lien debt without      14:06:03

12    paying any make whole, right?                  14:06:05

13          A.    I'd have to look back at that       14:06:08

14    8-K.  You've -- I know we were having          14:06:10

15    those type of conversations.  I don't          14:06:14

16    know if it added specifically, you know,       14:06:16

17    the element of the make whole.                 14:06:19

18          Q.    Prior to -- strike that, we'll      14:06:24

19    get to it.  We'll get to it.                   14:06:26

20                Now, at some point you're          14:06:27

21    having all these discussions about             14:06:42

22    Project Olympus, right?                        14:06:44

23          A.    Yes.                               14:06:45

24          Q.    And the premise of Project          14:06:45

25    Olympus is, one, we're going to keep the       14:06:48
```

| | |
|---|---|
| 1 | whole company, E and T side together, and | 14:06:51 |
| 2 | two, we're going to keep EFIH out of | 14:06:55 |
| 3 | bankruptcy, right? | 14:06:57 |
| 4 |     A.    That's correct. | 14:07:03 |
| 5 |     Q.    And so it may not have been | 14:07:04 |
| 6 | the main driver, but a premise of Project | 14:07:05 |
| 7 | Olympus is we're not going to do | 14:07:08 |
| 8 | something that allows us to refinance the | 14:07:09 |
| 9 | EFIH first lien debt without paying | 14:07:12 |
| 10 | whatever premiums are due, right? | 14:07:15 |
| 11 |     A.    The premise was $2 billion of | 14:07:17 |
| 12 | cash is coming into the E side of the | 14:07:21 |
| 13 | house, for lack of a better term, through | 14:07:26 |
| 14 | equity coming through EFH.  We were | 14:07:30 |
| 15 | taking that equity and we were utilizing | 14:07:33 |
| 16 | the equity claw to reduce debt. | 14:07:38 |
| 17 |     Q.    Right. | 14:07:43 |
| 18 |     A.    Right, as you and I discussed. | 14:07:43 |
| 19 |     Q.    Right. | 14:07:45 |
| 20 |     A.    And trying to get to a place | 14:07:48 |
| 21 | -- and then calling the debt at EH -- | 14:07:49 |
| 22 | EFIH on the specified redemption dates. | 14:07:54 |
| 23 |     Q.    And then paying the redemption | 14:07:58 |
| 24 | premium? | 14:07:59 |
| 25 |     A.    And paying, paying the | 14:08:00 |

| | |
|---|---|
| 1 | redemption premium.  So it's premised on | 14:08:01 |
| 2 | all of those pieces coming together | 14:08:03 |
| 3 | including raising $2 billion in cash | 14:08:05 |
| 4 | because EFIH was a cash flow, EFH, EFIH | 14:08:08 |
| 5 | combined was a cash flow negative | 14:08:19 |
| 6 | business.  And even after we did those | 14:08:21 |
| 7 | things they continued to be a cash flow | 14:08:23 |
| 8 | negative business. | 14:08:24 |
| 9 | Q.    At some point, however, in | 14:08:29 |
| 10 | 2013, the TCEH first lien creditors | 14:08:38 |
| 11 | indicated that they would not support a | 14:08:41 |
| 12 | refinancing, restructuring that kept the | 14:08:46 |
| 13 | E and T sides together, right? | 14:08:49 |
| 14 | A.    I would say that neither side | 14:08:52 |
| 15 | could reach an agreement and we worked on | 14:08:56 |
| 16 | it feverishly up through October 30th, | 14:09:01 |
| 17 | October 31st of 2013, could not reach | 14:09:03 |
| 18 | agreement.  We ultimately, TCEH came back | 14:09:07 |
| 19 | and said, look, we can't support Project | 14:09:12 |
| 20 | Olympus any longer. | 14:09:17 |
| 21 | Q.    You said TCEH came back, I | 14:09:18 |
| 22 | assume you mean the TCEH first liens? | 14:09:21 |
| 23 | A.    Yes, sir. | 14:09:23 |
| 24 | Q.    And that was the group that | 14:09:25 |
| 25 | was advised on the financial side, on the | 14:09:26 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 185

| | | |
|---|---|---|
| 1 | EFH side by Mr. Millstein, right? | 14:09:30 |
| 2 | A.    That's correct. | 14:09:32 |
| 3 | Q.    The same Mr. Millstein who in | 14:09:33 |
| 4 | March of 2013 said, and we can look back | 14:09:35 |
| 5 | at the document, you know, putting EFIH | 14:09:37 |
| 6 | into bankruptcy and maybe we can avoid | 14:09:41 |
| 7 | paying the make wholes and unlock | 14:09:43 |
| 8 | significant value, that same Mr. | 14:09:46 |
| 9 | Millstein, right? | 14:09:47 |
| 10 | MR. HOWELL:  Object to form. | 14:09:49 |
| 11 | A.    Mr. Millstein, yes.  Mr. | 14:09:50 |
| 12 | Millstein in this scenario, he is saying | 14:09:52 |
| 13 | we can no longer support Project Olympus, | 14:09:58 |
| 14 | we are going to take our assets and there | 14:10:02 |
| 15 | is no value to accrete to Mr. Millstein's | 14:10:06 |
| 16 | group from the fact that the E side is | 14:10:11 |
| 17 | not going to not pay make wholes.  So | 14:10:13 |
| 18 | there's no economic incentive for him at | 14:10:16 |
| 19 | that point. | 14:10:19 |
| 20 | Q.    Fair enough.  And at the same | 14:10:19 |
| 21 | point, you said you couldn't get the E | 14:10:23 |
| 22 | side to agree with the T side.  On the E | 14:10:25 |
| 23 | side, the PIKs were making it clear that | 14:10:28 |
| 24 | if there was going to be an E side | 14:10:32 |
| 25 | recapitalization, they wanted as much of | 14:10:36 |

```
 1    the equity in EFIH as they could get,          14:10:40
 2    right?                                          14:10:43
 3         A.    You're going to have to              14:10:44
 4    restate the state -- question.                  14:10:48
 5         Q.    Sure.                                 14:10:49
 6         A.    Let's get, if you wouldn't           14:10:50
 7    mind, where are we on the timeline?  Is         14:10:51
 8    this post-Olympus?                              14:10:53
 9         Q.    Yes, let me tell you where I'm       14:10:55
10    trying to -- where I am in my head in the       14:10:57
11    timeline.  I am leading up to the point         14:11:00
12    in time when Project Olympus is ripped up       14:11:04
13    and you can't go forward.  I'm trying to        14:11:07
14    figure out what happened.  Why, why you         14:11:09
15    have these discussions that we've now           14:11:11
16    spent like an hour on, and eventually           14:11:13
17    they don't come to fruition.  And you've        14:11:15
18    told me on one side of the equation that        14:11:18
19    TCEH first said we're not prepared to           14:11:21
20    continue to support Project Olympus.  And       14:11:23
21    my understanding, but I want to hear it         14:11:27
22    from you, Mr. Horton, from other                14:11:29
23    witnesses, I can show you deposition            14:11:31
24    transcripts, but my understanding is that       14:11:33
25    on the EFIH side the PIKs were saying we        14:11:35
```

| | | |
|---|---|---|
| 1 | went the equity in EFIH, right? | 14:11:41 |
| 2 | MR. HOWELL:  Object to form. | 14:11:43 |
| 3 | A.    So to give you the history | 14:11:45 |
| 4 | about the equity on the E side, we, | 14:11:47 |
| 5 | again, had a structure that you and I've | 14:11:56 |
| 6 | reviewed multiple times where $2 billion | 14:11:59 |
| 7 | was going to be raised to help | 14:12:02 |
| 8 | recapitalize the E side of the house, | 14:12:05 |
| 9 | EFIH.  Whether we thought TCEH would put | 14:12:09 |
| 10 | that $2 billion in, or whether we thought | 14:12:13 |
| 11 | someone else, we could go out and do a | 14:12:17 |
| 12 | rights offering and put that $2 billion | 14:12:19 |
| 13 | in, we quickly determined that we were | 14:12:21 |
| 14 | not going to be able to do that in the | 14:12:27 |
| 15 | midst of Project Olympus, okay. | 14:12:29 |
| 16 | So we went to creditors such | 14:12:32 |
| 17 | as the PIKs and said, we need you to | 14:12:35 |
| 18 | convert to equity in order to keep the E | 14:12:40 |
| 19 | side out of bankruptcy, we're going to, | 14:12:45 |
| 20 | again, get you guys, TCEH first | 14:12:49 |
| 21 | lienholders and the EFIH PIKs to convert | 14:12:53 |
| 22 | to equity and ultimately get a relative | 14:12:57 |
| 23 | share of the EFH side of the house. | 14:13:01 |
| 24 | So that's the origin of the | 14:13:04 |
| 25 | PIKs. | 14:13:06 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 188

```
1          Q.    Okay.                              14:13:07
2          A.    Really didn't have anything to    14:13:08
3     do with Project Olympus falling apart.       14:13:10
4          Q.    That's quite helpful.  Mr.         14:13:12
5     Ying has testified and I'm happy to show     14:13:17
6     it to you, but I'll make a representation    14:13:19
7     to you that the EFIH PIKs have fought        14:13:21
8     hard, fought hard in the months leading      14:13:24
9     up to the bankruptcy, to get as much of      14:13:26
10    the equity in EFIH as they could get.  Is    14:13:29
11    that a fair characterization?                14:13:31
12         A.    I think the PIKs have, they        14:13:32
13    had a belief on value and they believed     14:13:43
14    that they were willing to convert their     14:13:45
15    holdings into equity and, you know, I       14:13:49
16    think that's been consistent even in        14:13:53
17    Project Olympus, they were consistent in    14:13:56
18    saying we would do that so long as the      14:14:00
19    relative value we think our company is      14:14:02
20    worth on the E side versus the T side,      14:14:04
21    we're willing to convert.                   14:14:07
22              And then even post-Project         14:14:08
23    Olympus, under the RSA the PIKs continued   14:14:12
24    to say, yes, we're willing to convert.      14:14:14
25         Q.    And I think it's fair to say       14:14:17
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 189

| | | |
|---|---|---|
| 1 | that as I read Mr. Ying's testimony, but | 14:14:20 |
| 2 | I want to hear your version, not his, it | 14:14:23 |
| 3 | was more than they were willing, they | 14:14:26 |
| 4 | wanted to convert the equity, they fought | 14:14:28 |
| 5 | hard to get the equity on the E side, | 14:14:30 |
| 6 | right? | 14:14:33 |
| 7 | MR. HOWELL:  Object to form. | 14:14:34 |
| 8 | A.   I would say that they had a | 14:14:35 |
| 9 | strong interest in the equity of EFIH at | 14:14:38 |
| 10 | the right value. | 14:14:41 |
| 11 | Q.   Okay.  And part of value to | 14:14:42 |
| 12 | them, right, I'm going to state what I | 14:14:45 |
| 13 | think is a truism, but tell me if I've | 14:14:49 |
| 14 | got it wrong, the equity is worth more to | 14:14:52 |
| 15 | the PIKs, the equity is worth more to | 14:14:54 |
| 16 | anyone who gets the equity if the company | 14:14:57 |
| 17 | can refinance its first lien and second | 14:14:59 |
| 18 | lien debt and not pay the make wholes, | 14:15:01 |
| 19 | right? | 14:15:04 |
| 20 | A.   I think that -- yes, more | 14:15:05 |
| 21 | value would accrue to, to any equity | 14:15:14 |
| 22 | holders. | 14:15:17 |
| 23 | Q.   And in fact, the PIKs sent a, | 14:15:18 |
| 24 | sent a letter to the company saying you | 14:15:24 |
| 25 | need to think about an E side only | 14:15:29 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 190

```
1    proposal and that proposal needs to              14:15:32

2    provide for no payment of the make whole          14:15:34

3    to the EFIH first liens, right?                   14:15:37

4          MR. HOWELL:  Object to form                 14:15:40

5       and foundation.                                14:15:41

6       A.    Okay, so again, I want to go             14:15:41

7    back to what scenario we're in.  So we're         14:15:43

8    post-Olympus, we have as a company                14:15:46

9    recognized that we need to file EFIH for          14:15:50

10   bankruptcy because we're going to run out         14:15:56

11   of cash now because we don't have Project         14:15:57

12   Olympus.  Is that the scenario?                   14:16:01

13      Q.    Yes.  Would it be helpful if I           14:16:02

14   showed you a document?                            14:16:04

15      A.    Not really.                              14:16:05

16      Q.    I will show it to you anyway,            14:16:09

17   but you can answer without first.                 14:16:10

18      A.    So that's the scenario we're             14:16:12

19   in.  We're going to have to file EFIH now         14:16:13

20   regardless of what the PIKs are saying or         14:16:16

21   anyone else is saying because we're               14:16:18

22   running out of cash.                              14:16:20

23      Q.    Okay.                                    14:16:21

24      A.    Project Olympus isn't                    14:16:22

25   happening, EFH is going to have to file,          14:16:24
```

| | |
|---|---|
| 1 | TCEH is going to have to file and EFIH is | 14:16:27 |
| 2 | going to have to file because they're | 14:16:30 |
| 3 | running out of cash.  Regardless of what | 14:16:32 |
| 4 | the PIKs say. | 14:16:36 |
| 5 | Q.    Okay.  My question to you was | 14:16:37 |
| 6 | really simple.  Did the EFIH PIKs send a | 14:16:46 |
| 7 | letter to the company requesting, I won't | 14:16:52 |
| 8 | use the word demanding, requesting that | 14:16:56 |
| 9 | the company put EFIH into bankruptcy and | 14:16:59 |
| 10 | in bankruptcy propose a restructuring | 14:17:04 |
| 11 | under which none of the make whole would | 14:17:09 |
| 12 | be paid to the EFIH first liens?  Yes or | 14:17:12 |
| 13 | no? | 14:17:15 |
| 14 | A.    That I do not know. | 14:17:16 |
| 15 | Q.    Okay.  Now I'll show you the | 14:17:17 |
| 16 | document. | 14:17:24 |
| 17 | (Horton Exhibit 17 for | 14:17:25 |
| 18 | identification, Bates stamped BLKS | 14:17:34 |
| 19 | 0006082 through 0006091.) | 14:17:35 |
| 20 | Q.    Number 17 is a document with a | 14:17:26 |
| 21 | cover email from Scott Alberino of Akin | 14:17:29 |
| 22 | Gump, BLKS 0006082, and it attaches a | 14:17:33 |
| 23 | term sheet that ends on 6091. | 14:17:40 |
| 24 | A.    Oh, this is October. | 14:17:52 |
| 25 | Q.    Yes. | 14:17:54 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 192

| | | |
|---|---|---|
| 1 | A.    October, okay.  So this is | 14:17:54 |
| 2 | actually pre- -- we're still in Olympus. | 14:17:56 |
| 3 | Q.    Okay. | 14:17:59 |
| 4 | A.    We're still negotiating | 14:17:59 |
| 5 | Olympus is where they are, where we are. | 14:18:00 |
| 6 | Okay. | 14:18:03 |
| 7 | Q.    I apologize.  I actually very | 14:18:04 |
| 8 | much like to take a witness through | 14:18:06 |
| 9 | things chronologically and I didn't mean | 14:18:09 |
| 10 | to mess up the chronological order. | 14:18:11 |
| 11 | A.    That's why I -- that's why I | 14:18:13 |
| 12 | was asking the question are we | 14:18:15 |
| 13 | post-Olympus because post-Olympus we're | 14:18:16 |
| 14 | filing EFIH. | 14:18:20 |
| 15 | Q.    My apologies to you. | 14:18:20 |
| 16 | A.    No, no, that's fine. | 14:18:24 |
| 17 | Q.    This is dated -- | 14:18:24 |
| 18 | A.    I should have taken the | 14:18:25 |
| 19 | documents, it's my fault. | 14:18:26 |
| 20 | Q.    Let's not talk over each | 14:18:27 |
| 21 | other, my fault.  There's a cover email | 14:18:29 |
| 22 | and it's dated October 24, 2013, right? | 14:18:32 |
| 23 | A.    Yes, sir. | 14:18:34 |
| 24 | Q.    And it's from Mr. Alberino at | 14:18:35 |
| 25 | Akin Gump, right? | 14:18:37 |

| | |
|---|---|
| 1    A.    Yes, sir. | 14:18:39 |
| 2    Q.    And Akin Gump was legal | 14:18:40 |
| 3    counsel to the PIKs, right? | 14:18:42 |
| 4    A.    Yes, sir, I understand that. | 14:18:44 |
| 5    Q.    I'm bad at this not talking | 14:18:50 |
| 6    over people thing as well.  It attaches a | 14:18:56 |
| 7    letter from Mr. Dizengoff at Akin Gump, | 14:18:58 |
| 8    right?  If you look at the first page it | 14:19:04 |
| 9    has his, upper right it has his -- | 14:19:08 |
| 10    A.    Oh I see, yes, I do see. | 14:19:11 |
| 11    Q.    His name up there, do you see | 14:19:13 |
| 12    that? | 14:19:14 |
| 13    A.    Yes. | 14:19:14 |
| 14    Q.    And this is a letter addressed | 14:19:14 |
| 15    to the Board of Directors of both EFH and | 14:19:16 |
| 16    EFIH, right? | 14:19:19 |
| 17    A.    Yes. | 14:19:20 |
| 18    Q.    And it's care of Kirkland & | 14:19:22 |
| 19    Ellis who were the debtors' counsel, | 14:19:24 |
| 20    right? | 14:19:26 |
| 21    A.    That is correct, sir. | 14:19:26 |
| 22    Q.    And Wachtell, Lipton, who is | 14:19:27 |
| 23    counsel for the sponsors, right?  Right? | 14:19:29 |
| 24    A.    Yes. | 14:19:33 |
| 25    Q.    And look at page 2 of Mr. | 14:19:33 |

Page 194

| | |
|---|---|
| 1    Dizengoff's letter before you get to the | 14:19:45 |
| 2    term sheet, just turn the page over if | 14:19:47 |
| 3    you would. | 14:19:53 |
| 4        A.    I was just reading this one | 14:19:54 |
| 5    sentence here. | 14:19:56 |
| 6        Q.    Okay, that's fine. | 14:19:57 |
| 7        A.    About our refusal. | 14:19:58 |
| 8        Q.    The second, I think you | 14:20:00 |
| 9    skipped a page.  Just turn the document | 14:20:01 |
| 10    over, that one page over. | 14:20:03 |
| 11        A.    Okay. | 14:20:05 |
| 12        Q.    And do you see the first full | 14:20:05 |
| 13    paragraph on page 2? | 14:20:07 |
| 14        A.    Beginning with "while the EFH | 14:20:08 |
| 15    toggle noteholders"? | 14:20:13 |
| 16        Q.    Right. | 14:20:13 |
| 17        A.    I can't speak sometimes, but | 14:20:14 |
| 18    not all the time.  While the EFH toggle | 14:20:16 |
| 19    noteholders, yes, sir. | 14:20:18 |
| 20        Q.    It goes on to say "remain | 14:20:20 |
| 21    committed to negotiating a transaction | 14:20:22 |
| 22    framework that preserves the Olympus | 14:20:24 |
| 23    structure.  At this juncture of the | 14:20:26 |
| 24    restructuring it is imperative that the | 14:20:26 |
| 25    company begin to seriously consider | 14:20:30 |

| | | |
|---|---|---|
| 1 | options for a stand-alone EFIH | 14:20:31 |
| 2 | restructuring." | 14:20:34 |
| 3 | Did I read that correctly? | 14:20:34 |
| 4 | A.   You did. | 14:20:35 |
| 5 | Q.   Okay.  And it goes on to say | 14:20:36 |
| 6 | in that same paragraph, if you go to the | 14:20:42 |
| 7 | next to last sentence, "to this end, the | 14:20:44 |
| 8 | EFIH toggle noteholders have prepared a | 14:20:47 |
| 9 | restructuring term sheet enclosed | 14:20:50 |
| 10 | herewith, the EFIH proposal, which | 14:20:52 |
| 11 | outlines a credible, efficient and | 14:20:55 |
| 12 | actionable path forward for EFIH and its | 14:20:57 |
| 13 | stakeholders," right? | 14:21:00 |
| 14 | A.   You're in the second to last | 14:21:04 |
| 15 | sentence? | 14:21:06 |
| 16 | Q.   Yes. | 14:21:06 |
| 17 | A.   I would like to read the | 14:21:07 |
| 18 | couple of sentences before that, please. | 14:21:09 |
| 19 | Q.   Sure. | 14:21:10 |
| 20 | A.   Okay. | 14:21:30 |
| 21 | Q.   Okay.  Now let's look at the | 14:21:31 |
| 22 | term sheet.  Can I ask you to turn to | 14:21:34 |
| 23 | page 4 of the term sheet.  Are you with | 14:21:35 |
| 24 | me on page 4? | 14:21:45 |
| 25 | A.   I am, sir. | 14:21:46 |

```
 1          Q.    And look under EFIH first lien          14:21:47

 2   claims.  And let me read out loud what              14:21:49

 3   the second sentence says.  You can tell             14:21:52

 4   me whether I'm reading it right:  "The              14:21:54

 5   plan shall provide for the disallowance             14:21:57

 6   of any asserted claim on account of any             14:21:58

 7   make whole fee under any of the EFIH                14:22:01

 8   first lien indentures and no distribution           14:22:04

 9   shall be made on account of such claims             14:22:06

10   without the consent of the backstop                 14:22:09

11   parties."                                           14:22:10

12          Did I read that correctly?                   14:22:11

13          A.    That's correct.                        14:22:13

14          Q.    So let's focus on as of                14:22:14

15   October 2013, before the company has said           14:22:17

16   Project Olympus won't work.  I think                14:22:22

17   we've now said two things are going on.             14:22:24

18   The TCEH firsts are saying we don't want            14:22:26

19   to support a restructuring that keeps the           14:22:35

20   E side and the T side together, right?              14:22:37

21          A.    Not at this point, no.                 14:22:41

22          Q.    I'm sorry they weren't saying          14:22:43

23   that yet or they were?                              14:22:45

24          A.    No, they were not saying that          14:22:47

25   yet.                                                14:22:48
```

| | |
|---|---|
| 1    Q.    Okay.  They said -- | 14:22:48 |
| 2    A.    And the company, the company | 14:22:49 |
| 3  was continuing -- continuing at this | 14:22:50 |
| 4  point in time to negotiate Project | 14:22:53 |
| 5  Olympus which included a blend and extend | 14:22:57 |
| 6  type transaction with your first lien | 14:23:00 |
| 7  clients. | 14:23:02 |
| 8    Q.    One thing that's going on at | 14:23:08 |
| 9  this point in time is, as this exhibit | 14:23:11 |
| 10  shows, the PIKs are demanding that the | 14:23:18 |
| 11  company do, consider doing an E side only | 14:23:21 |
| 12  restructuring that would put the E side | 14:23:25 |
| 13  debtors into bankruptcy and would not pay | 14:23:28 |
| 14  any make whole to the EFIH first liens, | 14:23:31 |
| 15  right? | 14:23:34 |
| 16    A.    Yeah, I would -- I would refer | 14:23:34 |
| 17  back to, you know, paragraph here on page | 14:23:37 |
| 18  1 of the correspondence, since these | 14:23:40 |
| 19  negotiations began, the company, the | 14:23:43 |
| 20  sponsors and the EFH management had -- | 14:23:46 |
| 21  team has steadfastly refused to consider | 14:23:49 |
| 22  any restructuring proposal premised upon | 14:23:51 |
| 23  a separation of either TCEH or EFIH from | 14:23:54 |
| 24  the consolidated groups.  So that's where | 14:23:59 |
| 25  we are in time. | 14:24:01 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 198

| | | |
|---|---|---|
| 1 | Q.   Okay.  But -- | 14:24:01 |
| 2 | A.   They've put forth a proposal, | 14:24:03 |
| 3 | a term sheet, I understand that, and | 14:24:05 |
| 4 | they're making a demand. | 14:24:06 |
| 5 | Q.   Okay.  And a third thing that | 14:24:08 |
| 6 | happened during this fall of 2013 is a | 14:24:10 |
| 7 | court called the US Court of Appeals for | 14:24:14 |
| 8 | the Second Circuit decided the AMR case, | 14:24:16 |
| 9 | right? | 14:24:19 |
| 10 | A.   Wouldn't know. | 14:24:20 |
| 11 | Q.   Well Deutsche Bank made the | 14:24:21 |
| 12 | debtors aware of that decision almost | 14:24:24 |
| 13 | instantaneously, didn't it? | 14:24:27 |
| 14 | A.   I'm not sure. | 14:24:29 |
| 15 | Q.   Was Deutsche Bank one of the | 14:24:29 |
| 16 | bracket, bulge bracket banks that the | 14:24:36 |
| 17 | debtors relied on? | 14:24:41 |
| 18 | A.   They were a new -- they were | 14:24:41 |
| 19 | new to our, our group.  I hadn't -- I had | 14:24:43 |
| 20 | never used Deutsche Bank over the -- as a | 14:24:46 |
| 21 | -- from a capital markets perspective. | 14:24:49 |
| 22 | They were new, they were obviously trying | 14:24:52 |
| 23 | to get their foot in the door for the | 14:24:54 |
| 24 | purposes of building a relationship with | 14:24:57 |
| 25 | the company.  And I had conversations | 14:25:01 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | with them regarding the TCEH first lien | 14:25:05 |
| 2 | debt.  I think we had actually negotiated | 14:25:07 |
| 3 | them into the first lien debt by TCEH. | 14:25:09 |
| 4 | MR. ANKER:  Let me mark as | 14:25:13 |
| 5 | Exhibit 18 a three-page document | 14:25:15 |
| 6 | bearing the Bates stamps EFIHMW | 14:25:17 |
| 7 | 0051200-201 and then what is | 14:25:22 |
| 8 | attached to it has the last four | 14:25:30 |
| 9 | digits 7298.  I believe this is one | 14:25:32 |
| 10 | single document.  I will say that | 14:25:36 |
| 11 | the Bates stamping is not | 14:25:37 |
| 12 | consecutive in a way that would | 14:25:39 |
| 13 | lead me to that conclusion. | 14:25:42 |
| 14 | (Horton Exhibit 18 for | 14:25:43 |
| 15 | identification, Bates stamped | 14:25:19 |
| 16 | EFIHMW 0051200 through 0051201 and | 14:25:19 |
| 17 | 7298.) | 14:26:00 |
| 18 | Q.   Mr. Horton, do you see there's | 14:26:00 |
| 19 | an email from you to Michael Carter, | 14:26:02 |
| 20 | Steve Hessler, Rick Cieri, Chris Moldovan | 14:26:05 |
| 21 | and Geoff Ley on October 18, 2013? | 14:26:10 |
| 22 | A.   My apologies, I was looking | 14:26:13 |
| 23 | through the document to get full context. | 14:26:17 |
| 24 | Q.   Sure. | 14:26:19 |
| 25 | A.   Would you, again, point me -- | 14:26:20 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 200

| | | |
|---|---|---|
| 1 | Q.    Let me rephrase. | 14:26:23 |
| 2 | A.    Point me back to where you | 14:26:24 |
| 3 | were -- | 14:26:25 |
| 4 | Q.    Sure, let me start at a | 14:26:26 |
| 5 | different place.  Mr. Cohen of Deutsche | 14:26:27 |
| 6 | Bank sent an email to various | 14:26:30 |
| 7 | individuals, the first of whom was you, | 14:26:32 |
| 8 | on October 18, 2013 at 7:41 p.m. Central | 14:26:34 |
| 9 | Time, right? | 14:26:41 |
| 10 | A.    Yes. | 14:26:42 |
| 11 | Q.    And the subject was AMR EETC | 14:26:43 |
| 12 | refinancing calendar, right? | 14:26:46 |
| 13 | A.    Yes, that's correct. | 14:26:49 |
| 14 | Q.    And he says "We've attached a | 14:26:50 |
| 15 | timeline for the AMR events relating to | 14:26:52 |
| 16 | one of the financings we led for them | 14:26:55 |
| 17 | this year.  The EETC had a large make | 14:26:57 |
| 18 | whole that should have been voided by the | 14:27:01 |
| 19 | bankruptcy.  The investors obviously took | 14:27:02 |
| 20 | the opposite view.  In the end, AMR won, | 14:27:05 |
| 21 | though they could have pressed the | 14:27:09 |
| 22 | calendar more." | 14:27:11 |
| 23 | Did I read that part of it | 14:27:12 |
| 24 | right? | 14:27:14 |
| 25 | A.    Yes. | 14:27:15 |

| | | |
|---|---|---|
| 1 | Q.    And he goes on to say, "We | 14:27:15 |
| 2 | have debated the different language in | 14:27:22 |
| 3 | EFIH's debentures and have looked at your | 14:27:25 |
| 4 | question about the requirement for an | 14:27:27 |
| 5 | escrow while appeals are pending." | 14:27:29 |
| 6 | Did I read that correctly? | 14:27:31 |
| 7 | A.    I don't know who the your is. | 14:27:33 |
| 8 | It wasn't me. | 14:27:36 |
| 9 | Q.    Okay. | 14:27:37 |
| 10 | A.    There's two -- it's Tony and | 14:27:38 |
| 11 | Chuck. | 14:27:40 |
| 12 | Q.    Well the Tony is you, right? | 14:27:42 |
| 13 | A.    I know that's me.  But there's | 14:27:43 |
| 14 | two people here. | 14:27:45 |
| 15 | Q.    The Chuck is -- | 14:27:46 |
| 16 | A.    I didn't say y'all like we | 14:27:47 |
| 17 | would say in Texas.  Y'alls.  I said | 14:27:49 |
| 18 | your, so take that as singular. | 14:27:52 |
| 19 | Q.    The Chuck is Chuck McMullan of | 14:27:55 |
| 20 | Evercore, right? | 14:27:58 |
| 21 | A.    That's correct. | 14:27:59 |
| 22 | Q.    And they were the financial | 14:27:59 |
| 23 | advisors for the debtors, right? | 14:28:01 |
| 24 | A.    That's correct. | 14:28:03 |
| 25 | Q.    So while it wasn't you, you | 14:28:03 |

| | | |
|---|---|---|
| 1 | would agree with me that someone | 14:28:05 |
| 2 | representing the debtors had asked DB, | 14:28:06 |
| 3 | hey, do you think the court would require | 14:28:10 |
| 4 | an escrow for the make whole while | 14:28:14 |
| 5 | there's an appeal if we, the debtors won | 14:28:17 |
| 6 | the make whole litigation? | 14:28:23 |
| 7 | A.    That would be speculation on | 14:28:24 |
| 8 | my part if someone else asked that | 14:28:25 |
| 9 | question. | 14:28:27 |
| 10 | Q.    Fair enough. | 14:28:27 |
| 11 | A.    Did you mean -- did you | 14:28:30 |
| 12 | mention Mr. Hessler's name on here?  I | 14:28:32 |
| 13 | didn't see it. | 14:28:34 |
| 14 | Q.    You forward the email to Mr. | 14:28:36 |
| 15 | Hessler, look at your forwarding. | 14:28:37 |
| 16 | A.    I'm sorry, I got it. | 14:28:40 |
| 17 | Q.    And you forward it to -- you | 14:28:41 |
| 18 | forward it to Mr. Hessler and to Mr. | 14:28:47 |
| 19 | Cieri, both of whom were partners at | 14:28:50 |
| 20 | Kirkland & Ellis? | 14:28:54 |
| 21 | A.    That makes sense. | 14:28:55 |
| 22 | Q.    I'm not sure if Mr. Cieri | 14:28:56 |
| 23 | actually as of this instant in time is, | 14:28:59 |
| 24 | although I think he is until the end of | 14:29:01 |
| 25 | this year, but be that as it may, he was | 14:29:03 |

| | | |
|---|---|---|
| 1 | then, right? | 14:29:06 |
| 2 | A.    Okay. | 14:29:07 |
| 3 | Q.    In fact, he was the most | 14:29:08 |
| 4 | senior partner on the engagement at the | 14:29:09 |
| 5 | time for Kirkland & Ellis, right? | 14:29:11 |
| 6 | MR. HOWELL:  Object to | 14:29:13 |
| 7 | foundation. | 14:29:14 |
| 8 | A.    I don't know.  I don't know | 14:29:14 |
| 9 | their organizational chart. | 14:29:15 |
| 10 | Q.    And Mr. -- it's fair to say | 14:29:16 |
| 11 | Mr. Cohen was writing to you, among | 14:29:19 |
| 12 | others, about the AMR decision and how it | 14:29:21 |
| 13 | might impact the treatment of the first | 14:29:25 |
| 14 | liens make whole in EFIH in bankruptcy, | 14:29:31 |
| 15 | right? | 14:29:33 |
| 16 | A.    He is providing some view as | 14:29:38 |
| 17 | to the outcome of the AMR bankruptcy. | 14:29:40 |
| 18 | The make whole litigation, yes. | 14:29:44 |
| 19 | Q.    And you must have thought this | 14:29:47 |
| 20 | was somewhat significant because you | 14:29:49 |
| 21 | forwarded it to Mr. Carter, Mr. Hessler, | 14:29:51 |
| 22 | Mr. Cieri, Mr. Moldovan and Mr. Ley, | 14:29:53 |
| 23 | right? | 14:29:56 |
| 24 | A.    I forwarded it to the team as | 14:29:58 |
| 25 | another -- as a datapoint for them for | 14:30:02 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 204

| | | |
|---|---|---|
| 1 | consideration. | 14:30:05 |
| 2 | Q.    So in or about October of | 14:30:08 |
| 3 | 2013, the PIKs are saying don't pay the | 14:30:12 |
| 4 | make whole, sending a letter to the | 14:30:15 |
| 5 | board, Deutsche Bank is saying look at | 14:30:19 |
| 6 | this AMR decision about a make whole, and | 14:30:22 |
| 7 | at some point, you're telling me it's not | 14:30:27 |
| 8 | quite yet, but I want to get to that in a | 14:30:29 |
| 9 | second, at some point the TCEH guys, the | 14:30:31 |
| 10 | first liens are also saying we don't want | 14:30:35 |
| 11 | to do Project Olympus and there's no | 14:30:39 |
| 12 | value to us in paying the EFIH first | 14:30:41 |
| 13 | liens their make whole, right? | 14:30:45 |
| 14 | MR. HOWELL:  Object to form. | 14:30:48 |
| 15 | A.    Again, there was a lot of | 14:30:49 |
| 16 | assumptions in what you said and I can't | 14:30:54 |
| 17 | tell you exactly what all we were | 14:30:58 |
| 18 | thinking at that point, so. | 14:31:01 |
| 19 | Q.    Okay.  Well, you had said to | 14:31:04 |
| 20 | me -- | 14:31:06 |
| 21 | A.    At this point in time we were | 14:31:07 |
| 22 | working, I'm sorry to talk over you, at | 14:31:09 |
| 23 | this point in time we were continuing to | 14:31:12 |
| 24 | focus on Project Olympus and trying to | 14:31:13 |
| 25 | get consensus around Project Olympus. | 14:31:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 205

| | | |
|---|---|---|
| 1 | This is October 18 and we've got an | 14:31:21 |
| 2 | interest payment due on November 1st.  We | 14:31:25 |
| 3 | were in the throes of negotiations. | 14:31:27 |
| 4 | Q.    But by this point in the fall | 14:31:30 |
| 5 | of 2013 isn't it right that both the TCEH | 14:31:33 |
| 6 | first liens and the EFIH PIKs had made | 14:31:41 |
| 7 | proposals to the company? | 14:31:51 |
| 8 | A.    I know that the TCEH first | 14:31:58 |
| 9 | lien had made proposals.  I can't recall | 14:32:01 |
| 10 | if at that point in time the PIKs had | 14:32:06 |
| 11 | made proposals other than the one we just | 14:32:08 |
| 12 | reviewed. | 14:32:14 |
| 13 | Q.    Okay.  Well we just went | 14:32:14 |
| 14 | through one, right? | 14:32:15 |
| 15 | A.    Right, right, right, I wasn't | 14:32:16 |
| 16 | sure. | 14:32:17 |
| 17 | Q.    That was dated in October | 14:32:18 |
| 18 | 2013, right? | 14:32:19 |
| 19 | A.    Right. | 14:32:20 |
| 20 | Q.    And let me show you because I | 14:32:20 |
| 21 | think it's right, that the PIKs -- sorry, | 14:32:22 |
| 22 | the TCEH guys had as well. | 14:32:28 |
| 23 | MR. ANKER:  Would you mark | 14:33:07 |
| 24 | this as Exhibit 19. | 14:33:08 |
| 25 | (Horton Exhibit 19 for | 14:33:09 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 206

| | | |
|---|---|---|
| 1 | identification, 8-K filed by the | 14:33:21 |
| 2 | debtors on October 15, 2013.) | 14:33:23 |
| 3 | Q.    All right, Exhibit 19 is an | 14:33:17 |
| 4 | 8-K filed by the debtors on October 15, | 14:33:21 |
| 5 | 2013, is it not? | 14:33:27 |
| 6 | A.    That's correct. | 14:33:28 |
| 7 | Q.    Okay.  And you'll see, let me | 14:33:31 |
| 8 | turn you to the first page of text under | 14:33:36 |
| 9 | item 7.01. | 14:33:38 |
| 10 | A.    Yes. | 14:33:43 |
| 11 | Q.    Okay.  And if you go under | 14:33:43 |
| 12 | discussions with creditors, you'll see | 14:33:46 |
| 13 | that there is in the third and fourth | 14:33:49 |
| 14 | paragraph, in substance, statements | 14:33:52 |
| 15 | saying that the debtors had received | 14:33:56 |
| 16 | proposals from a significant creditor, | 14:33:57 |
| 17 | the TCEH creditors, and -- and by the way | 14:34:01 |
| 18 | -- and the EFIH creditors, right? | 14:34:09 |
| 19 | A.    Yes. | 14:34:13 |
| 20 | Q.    And if you look at the very | 14:34:13 |
| 21 | first paragraph, the TCEH creditors is | 14:34:15 |
| 22 | defined as the holders of the first liens | 14:34:18 |
| 23 | of TCEH, right?  Do you want me to show | 14:34:20 |
| 24 | you where that is, Mr. Horton? | 14:34:33 |
| 25 | A.    No, I'm reading it.  Okay. | 14:34:35 |

| | | |
|---|---|---|
| 1 | Q.    Okay.  And then, and when | 14:34:40 |
| 2 | there's a reference to the EFIH | 14:34:44 |
| 3 | creditors, those are the unsecureds, | 14:34:46 |
| 4 | right, that's also clear from the very | 14:34:47 |
| 5 | first paragraph, right? | 14:34:49 |
| 6 | A.    Yes. | 14:34:50 |
| 7 | Q.    Now let's go back to the | 14:34:50 |
| 8 | fourth paragraph under discussions with | 14:34:53 |
| 9 | creditors.  It indicates that the TCEH | 14:34:54 |
| 10 | creditor is Exhibit 99.2, right? | 14:34:58 |
| 11 | A.    Yes. | 14:35:00 |
| 12 | Q.    Now let's turn to Exhibit | 14:35:01 |
| 13 | 99.2, if you would.  Tell me when you're | 14:35:04 |
| 14 | there. | 14:35:13 |
| 15 | A.    That may take awhile. | 14:35:14 |
| 16 | Q.    It's I think the second one. | 14:35:18 |
| 17 | 99.1 is the first one.  Unfortunately | 14:35:20 |
| 18 | this isn't Bates stamped. | 14:35:33 |
| 19 | A.    I'm looking. | 14:35:34 |
| 20 | Q.    Do you want me to give you my | 14:35:36 |
| 21 | copy?  I don't want it marked because | 14:35:38 |
| 22 | I've done some highlighting, but I'm | 14:35:40 |
| 23 | happy to show you my copy. | 14:35:42 |
| 24 | MR. HOWELL:  It's three or | 14:35:59 |
| 25 | four pages from the end. | 14:36:00 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Q.    Here, I'll hand you these | 14:36:01 |
| 2 | three pages.  You're looking at Exhibit | 14:36:03 |
| 3 | 99.2, right? | 14:36:06 |
| 4 | A.    Yes. | 14:36:07 |
| 5 | Q.    And this is the proposal from | 14:36:07 |
| 6 | the TCEH firsts, right?  Right? | 14:36:08 |
| 7 | A.    Yes. | 14:36:12 |
| 8 | Q.    And if you look to the | 14:36:12 |
| 9 | language that in the soft version I've | 14:36:13 |
| 10 | handed you I've yellow highlighted, they | 14:36:16 |
| 11 | too were proposing a restructuring at | 14:36:19 |
| 12 | EFIH would not -- which would pay the | 14:36:22 |
| 13 | first liens none of their make whole, | 14:36:23 |
| 14 | right? | 14:36:26 |
| 15 | A.    I'm looking for those words, | 14:36:26 |
| 16 | but I don't see them.  Oh, you're on next | 14:36:32 |
| 17 | page.  Sorry.  That's correct. | 14:36:37 |
| 18 | Q.    So in the fall of 2013 -- | 14:36:54 |
| 19 | A.    Thank you, by the way. | 14:36:57 |
| 20 | Q.    As of October 2013 -- you're | 14:36:58 |
| 21 | welcome -- the decision comes out in AMR, | 14:37:00 |
| 22 | that's one thing, and Deutsche Bank | 14:37:05 |
| 23 | immediately calls it to the company's | 14:37:06 |
| 24 | attention, two of the PIKs are saying | 14:37:08 |
| 25 | don't pay those first liens and make | 14:37:12 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 209

| | | |
|---|---|---|
| 1 | whole and put EFIH in bankruptcy and the | 14:37:14 |
| 2 | TCEH first liens are telling you the same | 14:37:17 |
| 3 | thing, put EFIH into bankruptcy and don't | 14:37:20 |
| 4 | pay those guys a make whole, right? | 14:37:22 |
| 5 | A.     That's correct. | 14:37:25 |
| 6 | MR. HOWELL:  Object to form. | 14:37:25 |
| 7 | Q.     Thank you. | 14:37:26 |
| 8 | MR. ANKER:  I'm told we have | 14:37:28 |
| 9 | less than five minutes left on the | 14:37:29 |
| 10 | tape, why don't we take a break | 14:37:31 |
| 11 | now. | 14:37:33 |
| 12 | THE VIDEOGRAPHER:  Thank you, | 14:37:33 |
| 13 | one moment, please, watch your | 14:37:34 |
| 14 | microphones.  Here now marks the | 14:37:35 |
| 15 | end of tape 3 of the deposition of | 14:37:37 |
| 16 | Mr. Anthony R. Horton, the time is | 14:37:38 |
| 17 | 2:37 p.m., we're off the record. | 14:37:41 |
| 18 | (A recess was taken.) | 14:37:44 |
| 19 | THE VIDEOGRAPHER:  Here now | 14:54:44 |
| 20 | marks the beginning of tape 4 of | 14:54:47 |
| 21 | the deposition of Mr. Anthony R. | 14:54:49 |
| 22 | Horton, the time is 2:54 p.m., | 14:54:50 |
| 23 | we're back on the report. | 14:54:53 |
| 24 | Q.     Mr. Horton, before the break | 14:54:58 |
| 25 | we were discussing a series of events | 14:54:59 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 210

```
 1    including communications that the debtors      14:55:04
 2    received from the TCEH first liens and          14:55:06
 3    the EFIH PIKs which occurred in September       14:55:11
 4    and October of 2013.  And I think we saw        14:55:16
 5    this on an earlier exhibit, the May 2013        14:55:23
 6    presentation to the PIKs, or the PIK            14:55:31
 7    advisors.  But the company's view was           14:55:35
 8    that to do a restructuring, whether it          14:55:38
 9    was Project Olympus or putting the E side       14:55:43
10    also in bankruptcy, it believed that by        14:55:50
11    the, certainly by the fall of 2013 it          14:55:53
12    needed the support and cooperation of the      14:55:55
13    TCEH first liens, right?                        14:55:59
14         A.    That's correct.                      14:56:01
15         Q.    And it also needed the support       14:56:01
16    and cooperation of the EFIH PIKs, right?        14:56:03
17         A.    That's, that's one area I'd          14:56:06
18    like -- I need to do a little bit more          14:56:09
19    homework on.  Again, it's my belief that,       14:56:12
20    I think that we would, but I just don't         14:56:20
21    know that specifically.  It depends on          14:56:22
22    where we are in, in the timeline.               14:56:25
23         Q.    What homework would you have         14:56:28
24    to do to answer that question on behalf         14:56:30
25    of the company?                                 14:56:32
```

| | | |
|---|---|---|
| 1 | A.    I just have to read these | 14:56:33 |
| 2 | documents more fully. | 14:56:35 |
| 3 | Q.    Okay.  Certainly the company | 14:56:38 |
| 4 | thought having the support of the PIKs | 14:56:41 |
| 5 | was a good thing, right? | 14:56:43 |
| 6 | A.    Again, if we're talking, I | 14:56:45 |
| 7 | thought you were talking about in the | 14:56:51 |
| 8 | context of a bankruptcy filing itself, | 14:56:52 |
| 9 | and having an impaired class and having | 14:56:56 |
| 10 | TC -- and also TCEH agreeing to move from | 14:57:02 |
| 11 | its first lien position into EFH, we'd | 14:57:06 |
| 12 | obviously need their support there -- so | 14:57:10 |
| 13 | it was really, I thought you were asking | 14:57:17 |
| 14 | the question in the context of | 14:57:19 |
| 15 | bankruptcy. | 14:57:20 |
| 16 | Q.    And in the context of a | 14:57:20 |
| 17 | bankruptcy you were saying it was | 14:57:22 |
| 18 | important to have the support of an | 14:57:23 |
| 19 | impaired class, right? | 14:57:24 |
| 20 | A.    That's, again, something that | 14:57:25 |
| 21 | I would have to lean on my legal counsel. | 14:57:27 |
| 22 | Q.    Your understanding was that it | 14:57:31 |
| 23 | was important, right? | 14:57:32 |
| 24 | A.    Again, I don't -- what I said | 14:57:33 |
| 25 | earlier is I don't know that specific | 14:57:35 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 212

```
 1    point.                                          14:57:38
 2         Q.    Okay.  Shortly after getting         14:57:38
 3    these communications from the EFIH PIKs         14:57:45
 4    and TCEH first liens saying don't pay the       14:57:51
 5    make whole, and shortly after the AMR           14:57:54
 6    decision is called to the attention of          14:57:58
 7    the company, the company makes its first        14:58:00
 8    public filing, does it not, in which it         14:58:03
 9    proposes itself a restructuring that will       14:58:07
10    not pay the EFIH first liens any make           14:58:09
11    whole?                                          14:58:13
12              MR. HOWELL:  Object to form.          14:58:16
13         A.    There's a lot in that                14:58:17
14    question.  One, you added the datapoint         14:58:19
15    of AMR.  I don't believe that was              14:58:25
16    significant in any decisions we made, any       14:58:29
17    conclusions we drew, so we have -- then         14:58:33
18    you mentioned the PIK proposal which is,        14:58:41
19    you read the PIK proposal and their             14:58:45
20    letter, you know, it said basically the         14:58:48
21    company has opposed any split-up of EFIH        14:58:51
22    -- EFH, EFIH from TCEH, and then we had,        14:58:56
23    you know, the 8-K referring to the TCEH,        14:59:04
24    so -- and obviously both of those EFIH          14:59:08
25    and TCEH continue to say or said in those       14:59:12
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 213

```
 1    documents, we don't want you to pay the        14:59:16

 2    make wholes.  I will acknowledge that.         14:59:19

 3         Q.    Okay.  And I'll show you the        14:59:22

 4    document.  On November 1, 2013, the very       14:59:24

 5    beginning of the next month, within a          14:59:31

 6    couple of weeks, the debtors file an 8-K       14:59:33

 7    in which they make a disclosure of their       14:59:36

 8    own proposal now not to pay the make           14:59:38

 9    whole, right?                                  14:59:42

10              (Horton Exhibit 20 for              14:59:45

11         identification, Form 8-K for EFH          14:59:56

12         and EFIH November 1, 2013.)               15:00:01

13         Q.    Let me show it to you.  This        14:59:45

14    is Exhibit 20.  I'll take you to the           14:59:47

15    relevant parts, although I'm happy to          14:59:52

16    have you look at the document.  This is a      14:59:54

17    Form 8-K for EFH as well as for EFIH,          14:59:56

18    right?                                         15:00:01

19         A.    It's for EFH, EFIH.                 15:00:02

20         Q.    Okay.  And it's dated November      15:00:10

21    1, 2013, right?                                15:00:11

22         A.    That's correct.                     15:00:13

23         Q.    Which is shortly after the          15:00:17

24    letter to the board from the PIKs, the         15:00:20

25    EFIH PIKs and shortly after the TCEH           15:00:25
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 214

| | | |
|---|---|---|
| 1 | proposal that was in the October 15, 2013 | 15:00:28 |
| 2 | 8-K, right? | 15:00:37 |
| 3 | A.    That's correct. | 15:00:38 |
| 4 | Q.    Now let's turn to page 2 of | 15:00:39 |
| 5 | the document and do you see under | 15:00:41 |
| 6 | discussion, do you see the heading | 15:00:42 |
| 7 | discussions with creditors? | 15:00:44 |
| 8 | A.    Yes. | 15:00:44 |
| 9 | Q.    And let's turn to the second | 15:00:45 |
| 10 | paragraph.  "During these" -- I'm going | 15:00:46 |
| 11 | to read it to you, tell me if I'm reading | 15:00:50 |
| 12 | it right.  "During these continued | 15:00:52 |
| 13 | discussions the companies shared with the | 15:00:54 |
| 14 | creditors prospective financial | 15:00:57 |
| 15 | information.  In addition, during | 15:00:58 |
| 16 | discussions regarding the restructuring, | 15:01:00 |
| 17 | the companies created a proposal as set | 15:01:02 |
| 18 | forth in Exhibit 99.1, defined as the | 15:01:05 |
| 19 | companies proposal to, among other | 15:01:10 |
| 20 | things, facilitate dialogue and consensus | 15:01:12 |
| 21 | among the parties."  And then the | 15:01:16 |
| 22 | sentence goes on to say there were other | 15:01:17 |
| 23 | proposals. | 15:01:19 |
| 24 | Did I read that right? | 15:01:20 |
| 25 | A.    Yes. | 15:01:22 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 215

```
 1          Q.    Now let's look at Exhibit        15:01:22
 2    99.1.  Are you there?                        15:01:30
 3          A.    Yes.                             15:01:31
 4          Q.    Okay.  So this is the            15:01:31
 5    company's proposal.  You'll see it's         15:01:33
 6    actually dated as of October 15, 2013,       15:01:35
 7    right?                                       15:01:38
 8          A.    Yes.                             15:01:39
 9          Q.    The very day that the filing     15:01:40
10    is made showing the TCEH first liens         15:01:43
11    proposal not to pay the first liens, the     15:01:47
12    EFIH first liens make whole, right?          15:01:50
13          A.    Where do you see that?           15:01:59
14          Q.    I see the date right at the      15:02:01
15    top on page, the first page of EFIH -- of    15:02:03
16    Exhibit 99.1?                                15:02:06
17          A.    I see the October 15th, 2013.    15:02:07
18    Okay.                                        15:02:10
19          Q.    I was saying that the last       15:02:11
20    exhibit which attached, Exhibit number       15:02:12
21    19, which attached the TCEH proposal, was    15:02:15
22    an 8-K that was also dated October 15 of     15:02:18
23    2013, was it not?                            15:02:22
24          A.    That's correct.                  15:02:25
25          Q.    Now let's look at Exhibit 99.1   15:02:26
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 216

| | | |
|---|---|---|
| 1 | as part of Exhibit 20, and can you turn | 15:02:28 |
| 2 | to page 2. | 15:02:31 |
| 3 | A.    In the exhibit section page 2. | 15:02:36 |
| 4 | Q.    I'm sorry. | 15:02:38 |
| 5 | A.    Yes. | 15:02:39 |
| 6 | Q.    You're on page 2 of Exhibit | 15:02:39 |
| 7 | 99.1, are you, sir? | 15:02:41 |
| 8 | A.    That's correct. | 15:02:42 |
| 9 | Q.    You see the heading EFIH first | 15:02:43 |
| 10 | lien creditors? | 15:02:45 |
| 11 | A.    Yes. | 15:02:47 |
| 12 | Q.    Okay.  And it says each | 15:02:47 |
| 13 | holder, I'm going to skip some defined | 15:02:51 |
| 14 | terms, of the first lien secured note | 15:02:53 |
| 15 | issued by EFIH would receive its pro rata | 15:02:56 |
| 16 | share of 4,137 million of new first lien | 15:02:59 |
| 17 | secured notes, or the equivalent amount | 15:03:05 |
| 18 | in cash from the issuance of new debt to | 15:03:07 |
| 19 | third parties, to be issued by | 15:03:10 |
| 20 | reorganized EFIH and on the effective | 15:03:12 |
| 21 | date of the restructuring. | 15:03:14 |
| 22 | Except for the fact that I | 15:03:15 |
| 23 | left out the defined terms, I read that | 15:03:17 |
| 24 | accurately, right? | 15:03:19 |
| 25 | A.    Okay. | 15:03:20 |

```
 1          Q.    And then it goes on in the        15:03:20
 2   next sentence to say, "The new EFIH first      15:03:22
 3   lien notes will be ten year, eight year        15:03:24
 4   no call with an interest rate of 4.5           15:03:27
 5   percent per annum," right?                     15:03:29
 6          A.    Yes.                              15:03:31
 7          Q.    "EFIH first lien creditors        15:03:31
 8   would not receive any consideration            15:03:33
 9   beyond that described above, whether in        15:03:36
10   form of additional EFIH first lien notes       15:03:39
11   or above market terms and conditions for       15:03:41
12   such EFIH first lien notes, including in       15:03:43
13   respect of any claims they may have for        15:03:48
14   unaccrued interest, any make whole             15:03:50
15   amount, optional redemption premium, or        15:03:53
16   other premium or costs associated with         15:03:56
17   refinancing the EFIH first lien notes."        15:03:59
18          Did I read that correctly?              15:04:01
19          A.    Yes.                              15:04:03
20          Q.    So on October 15, 2013, the       15:04:04
21   very day of the 8-K which attaches the         15:04:11
22   TCEH proposal, the debtors, for the first      15:04:14
23   time, make a public disclosure of a            15:04:20
24   proposed refinancing that -- a public --       15:04:22
25   let me start that again.                       15:04:27
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 218

```
 1                   On October 15, 2013, the very        15:04:27
 2      day of the 8-K which attaches the TCEH            15:04:31
 3      proposal, the debtors, for the first             15:04:34
 4      time, make a public disclosure of their          15:04:36
 5      own proposal to refinance the EFIH first         15:04:40
 6      lien debt without paying the make whole,         15:04:47
 7      right?                                            15:04:49
 8                   MR. HOWELL:  Object to form.         15:04:50
 9           A.    So, yes, the refinancing is an
10      exchange of the existing EFIH 10 percent
11      note into new 10 year notes providing a
12      grater, a longer call period, 8 year no
13      call --
14                   THE REPORTER:  I apologize, my
15              computer just stopped.  Can we go
16              off the record.
17                   THE VIDEOGRAPHER:  The time is
18              3:05 p.m., we're now off the
19              record.
20                   (A recess was taken.)            15:07:28
21                   THE VIDEOGRAPHER:  The time is   15:07:28
22              3:07 p.m., back on the record.       15:07:43
23           Q.    There was a computer problem      15:07:46
24      for a moment, so we went off the record.    15:07:49
25      Let me reask the question you were in the   15:07:52
```

Page 219

| | | |
|---|---|---|
| 1 | middle of answering. | 15:07:54 |
| 2 | A.    Certainly. | 15:07:55 |
| 3 | Q.    And I may frame it a little | 15:07:55 |
| 4 | bit differently to try to make it, break | 15:07:57 |
| 5 | it into parts. | 15:07:59 |
| 6 | I am right, am I not, Mr. | 15:08:01 |
| 7 | Horton, that Exhibit 20, dated November | 15:08:04 |
| 8 | 1st, 2013, to your knowledge, was the | 15:08:08 |
| 9 | first time that the debtors ever publicly | 15:08:12 |
| 10 | disclosed a proposal that they made to | 15:08:16 |
| 11 | restructure EFIH first lien debt without | 15:08:22 |
| 12 | paying the make whole or other premium? | 15:08:25 |
| 13 | A.    That's correct. | 15:08:28 |
| 14 | Q.    And you would agree with me, | 15:08:30 |
| 15 | and I hope we're not going to have a | 15:08:33 |
| 16 | debate over how much time is close or not | 15:08:35 |
| 17 | close, relatively speaking, November 1, | 15:08:38 |
| 18 | 2013 is close in time to the letters that | 15:08:42 |
| 19 | we've gone over in proposals that the | 15:08:49 |
| 20 | debtors received in October of 2013 from | 15:08:53 |
| 21 | the PIKs, EFIH PIKs and from the TCEH | 15:08:56 |
| 22 | first liens also advocating no payment of | 15:09:03 |
| 23 | a make whole to the EFIH first liens, | 15:09:06 |
| 24 | right? | 15:09:09 |
| 25 | MR. HOWELL:    Object to form. | 15:09:10 |

| | | |
|---|---|---|
| 1 | A.    I think the dates are | 15:09:11 |
| 2 | relatively close from the disclosure in | 15:09:16 |
| 3 | the 8-K of the TCEH proposal and the | 15:09:19 |
| 4 | letter that we received from Akin Gump. | 15:09:23 |
| 5 | Q.    Now, ultimately, and I'm now | 15:09:32 |
| 6 | going to fast forward awhile, the debtors | 15:09:35 |
| 7 | signed a restructuring support agreement, | 15:09:37 |
| 8 | right? | 15:09:39 |
| 9 | A.    That's correct. | 15:09:39 |
| 10 | Q.    And that, can I use the | 15:09:40 |
| 11 | shorthand RSA, you'll know what I'm | 15:09:43 |
| 12 | referring to? | 15:09:45 |
| 13 | A.    Yes. | 15:09:45 |
| 14 | Q.    Okay.  That RSA had lots of | 15:09:46 |
| 15 | terms, but one of the terms of the RSA | 15:09:49 |
| 16 | was that the PIKs, the EFIH PIKs would | 15:09:51 |
| 17 | obtain substantially all of the equity in | 15:10:00 |
| 18 | a -- equity in a restructured EFIH, | 15:10:04 |
| 19 | right? | 15:10:08 |
| 20 | A.    My -- again, I don't know what | 15:10:08 |
| 21 | phrase you're reading from the RSA. | 15:10:13 |
| 22 | Q.    I'm not actually, I'm just -- | 15:10:16 |
| 23 | I'm paraphrasing my own understanding. | 15:10:18 |
| 24 | A.    Okay.  So the EFIH PIKs were | 15:10:21 |
| 25 | going to convert their holdings to EFH | 15:10:23 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 221

| | | |
|---|---|---|
| 1 | equity.  In addition to that, the PIKs | 15:10:29 |
| 2 | provided a $1.9 billion second lien | 15:10:35 |
| 3 | facility that they were backstopping, of | 15:10:41 |
| 4 | which other PIK holders had -- it was a | 15:10:43 |
| 5 | group that was backstopping, the backstop | 15:10:47 |
| 6 | group backstopping the 1.9 billion. | 15:10:51 |
| 7 | Other PIK holders would have the | 15:10:53 |
| 8 | opportunity to participate in the $1.9 | 15:10:55 |
| 9 | billion second lien DIP.  When you | 15:10:59 |
| 10 | convert the second lien DIP and the PIK | 15:11:01 |
| 11 | holdings to EFH equity it was a | 15:11:06 |
| 12 | substantial part of the EFH equity. | 15:11:11 |
| 13 | Q.    Okay.  And that -- so the PIKs | 15:11:14 |
| 14 | were going to get equity in EFIH in | 15:11:19 |
| 15 | respect of two different things.  Their | 15:11:23 |
| 16 | EFIH PIK debt which they were going to | 15:11:26 |
| 17 | convert? | 15:11:29 |
| 18 | A.    That's correct. | 15:11:29 |
| 19 | Q.    To equity, and second, they | 15:11:30 |
| 20 | were going to put new money in, right? | 15:11:32 |
| 21 | A.    That's correct. | 15:11:34 |
| 22 | Q.    And have you heard the term | 15:11:35 |
| 23 | fulcrum security? | 15:11:41 |
| 24 | A.    I have heard the term. | 15:11:43 |
| 25 | Q.    Okay.  The debtors, the | 15:11:45 |

| | |
|---|---|
| 1 | premise of the RSA, not the premise, a | 15:11:49 |
| 2 | premise of the RSA was that the PIKs were | 15:11:52 |
| 3 | the fulcrum security at EFIH, right? | 15:11:55 |
| 4 | A.   I don't know if that was the | 15:11:59 |
| 5 | debtors' view.  Obviously that was a | 15:12:01 |
| 6 | negotiated transaction amongst, amongst | 15:12:05 |
| 7 | the creditors at EFH, EFIH, the sponsors. | 15:12:08 |
| 8 | It was a negotiated transaction. | 15:12:17 |
| 9 | Q.   Okay. | 15:12:19 |
| 10 | A.   Within the context of the RSA. | 15:12:22 |
| 11 | Q.   Mr. Ying in a deposition | 15:12:25 |
| 12 | earlier in this bankruptcy case testified | 15:12:27 |
| 13 | that the PIKs were in his view the | 15:12:33 |
| 14 | fulcrum security.  Would it be helpful if | 15:12:36 |
| 15 | I showed you that? | 15:12:39 |
| 16 | A.   Sure. | 15:12:41 |
| 17 | MR. ANKER:  Why don't we mark | 15:12:45 |
| 18 | this Exhibit 21, it's Mr. Ying's | 15:12:47 |
| 19 | deposition June 23rd, 2014. | 15:12:49 |
| 20 | (Horton Exhibit 21 for | 15:12:52 |
| 21 | identification, transcript of Mr. | 15:12:49 |
| 22 | Ying's deposition taken on June | 15:12:49 |
| 23 | 23rd, 2014.) | 15:12:50 |
| 24 | Q.   You see this is Mr. Ying's | 15:12:58 |
| 25 | deposition back in June of this year? | 15:13:00 |

| | | |
|---|---|---|
| 1 | A.    Yes. | 15:13:04 |
| 2 | Q.    Turn to page 48 if you would. | 15:13:04 |
| 3 | And there's four pages per page, so page | 15:13:09 |
| 4 | 48 is relatively early in what you have. | 15:13:12 |
| 5 | A.    Okay. | 15:13:20 |
| 6 | Q.    Tell me if you're on -- you | 15:13:21 |
| 7 | see page 48? | 15:13:22 |
| 8 | A.    I do indeed.  Are you reading | 15:13:23 |
| 9 | from -- I'm sorry. | 15:13:25 |
| 10 | Q.    No, 48 in the upper right. | 15:13:26 |
| 11 | A.    Sorry. | 15:13:28 |
| 12 | Q.    So you're there, sir? | 15:13:28 |
| 13 | A.    I am. | 15:13:30 |
| 14 | Q.    Now, again, Mr. Ying was the | 15:13:32 |
| 15 | senior banker representing the companies, | 15:13:35 |
| 16 | right? | 15:13:39 |
| 17 | A.    Yes, he's one of the senior | 15:13:40 |
| 18 | bankers, yes. | 15:13:44 |
| 19 | Q.    And he was advising the | 15:13:44 |
| 20 | company, right? | 15:13:46 |
| 21 | A.    That's correct. | 15:13:46 |
| 22 | Q.    And he was intimately involved | 15:13:48 |
| 23 | in the negotiation of the RSA? | 15:13:50 |
| 24 | A.    He was extensively involved. | 15:13:52 |
| 25 | Q.    Okay.  I'll take extensively | 15:13:56 |

```
 1    rather than intimately.  And do you see        15:13:58

 2    the question starting on line 12?              15:14:01

 3         A.    Yes.                                15:14:05

 4         Q.    "Based on your preliminary          15:14:05

 5    views of valuation, the PIKs are the           15:14:07

 6    fulcrum security; is that correct?"  And       15:14:09

 7    the court reporter says "fulcrum?"  And        15:14:12

 8    Mr. Devore says, "yes, fulcrum."  And          15:14:15

 9    then the answer is "at the time we were        15:14:19

10    negotiating the RSA that seemed to be the      15:14:22

11    right conclusion based on the positions        15:14:24

12    and actions taken by the second lien           15:14:26

13    creditors at EFIH, the first lien              15:14:29

14    creditors at EFIH, the unsecured PIK           15:14:31

15    creditors at EFIH, and the unsecured           15:14:33

16    creditors at EFH, yes."                        15:14:35

17              Did I read that correctly?           15:14:38

18         A.    Yes.                                15:14:40

19         Q.    But you, I want to make sure I      15:14:44

20    understand your testimony, the debtors         15:14:49

21    didn't have a view that the PIKs were the      15:14:51

22    fulcrum security at the time they              15:14:52

23    negotiated the RSA?                            15:14:54

24         A.    I would say that we at that         15:14:55

25    point in time did not have a, you know,        15:15:05
```

1    definitive view, but again, all of this          15:15:08

2    was a negotiated, you know, transaction.          15:15:11

3        Q.    Right.                                  15:15:14

4        A.    We were obviously relying upon          15:15:15

5    our financial advisors to give their             15:15:17

6    expert view as to who the fulcrum                15:15:20

7    security was.                                     15:15:22

8        Q.    And what did you understand,           15:15:23

9    or what do you understand the term               15:15:25

10   fulcrum security to mean?                         15:15:26

11       A.    It would be a limited                  15:15:28

12   understanding, but it is the, effectively        15:15:32

13   the last security that gets a hundred            15:15:37

14   percent of par.  In the -- in the                15:15:41

15   waterfall.                                        15:15:46

16       Q.    The last security that gets a          15:15:46

17   hundred percent or the last security             15:15:49

18   after everyone senior to it gets a               15:15:51

19   hundred percent?                                  15:15:53

20       A.    Again, I'm giving you my view.         15:15:55

21       Q.    Okay.                                  15:15:57

22       A.    Okay.  I don't have the               15:15:58

23   technical bankruptcy view.                        15:16:00

24       Q.    Was there a -- you said               15:16:01

25   earlier that at that point in time we did        15:16:10

| | | |
|---|---|---|
| 1 | not have a definitive view.  As of April | 15:16:11 |
| 2 | of 2014, had the debtors obtained in | 15:16:20 |
| 3 | anticipation of bankruptcy and as part of | 15:16:24 |
| 4 | negotiating the RSA a valuation opinion | 15:16:26 |
| 5 | with respect to EFIH? | 15:16:31 |
| 6 | A.   No. | 15:16:34 |
| 7 | Q.   And indeed, it's fair to say | 15:16:34 |
| 8 | that as of April 2014, the debtors simply | 15:16:40 |
| 9 | hadn't obtained a valuation for EFIH, | 15:16:48 |
| 10 | right? | 15:16:51 |
| 11 | A.   We did not have a formal | 15:16:51 |
| 12 | valuation of EFIH. | 15:16:53 |
| 13 | Q.   And you certainly hadn't gone | 15:16:54 |
| 14 | out, the debtors gone out and said let's | 15:17:00 |
| 15 | test the market, let's see what investors | 15:17:03 |
| 16 | would pay for EFIH, right? | 15:17:06 |
| 17 | A.   We did not have a formal | 15:17:09 |
| 18 | process where we were going out testing | 15:17:10 |
| 19 | the market.  It was discussions and | 15:17:12 |
| 20 | negotiations amongst creditors. | 15:17:17 |
| 21 | Q.   Right.  So for example, you're | 15:17:19 |
| 22 | aware that Nextera later in the | 15:17:21 |
| 23 | bankruptcy proposal makes a proposal, | 15:17:24 |
| 24 | right? | 15:17:27 |
| 25 | A.   Nextera, yes. | 15:17:27 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 227

```
 1        Q.    I say Nextera.  Is it           15:17:28

 2   pronounced Nextera?                         15:17:30

 3        A.    Yes.                             15:17:32

 4        Q.    Okay, Nextera.  You didn't --    15:17:32

 5   no one at the company reached out to        15:17:33

 6   Nextera pre-petition and said, hey, would   15:17:35

 7   you be interested in buying EF -- buying    15:17:39

 8   EFIH's equity in Oncor, right?              15:17:42

 9        A.    That's correct.                  15:17:45

10        Q.    And you didn't -- no one in      15:17:46

11   the company spoke to any other potential    15:17:47

12   strategic investor and said, hey, would     15:17:50

13   you be interested in going out and buying   15:17:53

14   EFIH's equity in Oncor, right?              15:17:57

15        A.    I'm not aware of any             15:17:59

16   conversations.                              15:18:01

17        Q.    And I limited the last two       15:18:02

18   questions to strategic investors, but in    15:18:04

19   theory you could have a nonstrategic        15:18:06

20   investor.  Did any -- did you personally    15:18:09

21   or anyone else to your knowledge at the     15:18:11

22   company pre-petition reach out to any       15:18:12

23   nonstrategic investor and ask whether       15:18:16

24   they would be interested in purchasing      15:18:18

25   EFIH's equity in Oncor?                     15:18:21
```

```
 1          A.     Not that I'm aware of.              15:18:23

 2          Q.     Now, did the RSA and the            15:18:24

 3    equity split between what the PIKs got in        15:18:33

 4    respect of their debt in EFIH and the 1.9        15:18:36

 5    billion they were putting in in new              15:18:42

 6    money, did that imply a value for EFIH?          15:18:44

 7               MR. HOWELL:  Object to form.          15:18:51

 8          A.     It does imply a value.              15:18:52

 9          Q.     And what value does it imply?       15:18:55

10          A.     I don't have the numbers in         15:18:58

11    front of me, but roughly, as I recall,           15:19:00

12    16.5, $16.5 billion, something like that.        15:19:05

13          Q.     And that is for EFIH's              15:19:08

14    interest in Oncor, right?                        15:19:10

15          A.     Yes.                                15:19:13

16          Q.     You've heard the term               15:19:13

17    enterprise value?                                15:19:16

18          A.     Yes.                                15:19:16

19          Q.     That's 16.5 in enterprise           15:19:17

20    value, right?                                    15:19:20

21          A.     That's correct.                     15:19:21

22          Q.     And then there's debt               15:19:21

23    obviously that EFIH had, right?                  15:19:23

24          A.     Yes.                                15:19:27

25          Q.     Now, since the bankruptcy           15:19:27
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 229

| | | |
|---|---|---|
| 1 | began, the debtors no longer are parties | 15:19:34 |
| 2 | to the RSA, right?  Let me rephrase that. | 15:19:41 |
| 3 | The debtors terminated the RSA, right? | 15:19:48 |
| 4 | A.    The RSA has been terminated, | 15:19:50 |
| 5 | yes. | 15:19:52 |
| 6 | Q.    And the party that terminated | 15:19:52 |
| 7 | it is the debtors, right? | 15:19:53 |
| 8 | A.    That's correct. | 15:19:56 |
| 9 | Q.    The RSA had a fiduciary out, | 15:19:56 |
| 10 | correct? | 15:20:00 |
| 11 | A.    Yes. | 15:20:00 |
| 12 | Q.    And that allowed the debtors, | 15:20:01 |
| 13 | if in the exercise of their fiduciary | 15:20:04 |
| 14 | duty to their creditors decided that it | 15:20:06 |
| 15 | was appropriate to terminate the RSA, to | 15:20:08 |
| 16 | do so, right? | 15:20:11 |
| 17 | A.    That's correct. | 15:20:11 |
| 18 | Q.    And the debtors exercised that | 15:20:11 |
| 19 | because they decided it was consistent | 15:20:13 |
| 20 | with their fiduciary duty to terminate | 15:20:15 |
| 21 | the RSA, right? | 15:20:18 |
| 22 | A.    That's correct. | 15:20:19 |
| 23 | Q.    And the reason the debtors | 15:20:20 |
| 24 | elected to terminate the RSA is because | 15:20:23 |
| 25 | they reached the conclusion during this | 15:20:27 |

| | |
|---|---|
| 1 | bankruptcy that in fact the enterprise | 15:20:29 |
| 2 | value of EFIH was considerably higher | 15:20:32 |
| 3 | than implied by the RSA, right? | 15:20:36 |
| 4 | MR. HOWELL:  Object to form. | 15:20:41 |
| 5 | A.   I think there were multiple | 15:20:42 |
| 6 | reasons and that was certainly one. | 15:20:45 |
| 7 | Q.   Okay.  It was certainly one, | 15:20:47 |
| 8 | right? | 15:20:51 |
| 9 | A.   It was one. | 15:20:51 |
| 10 | Q.   And the reason the debtors | 15:20:52 |
| 11 | reached that conclusion is that Nextera, | 15:20:56 |
| 12 | the party they didn't talk to | 15:20:58 |
| 13 | pre-petition, made a proposal, right? | 15:21:00 |
| 14 | A.   That's correct. | 15:21:03 |
| 15 | Q.   And that proposal would have | 15:21:03 |
| 16 | paid, that proposal was in conjunction | 15:21:05 |
| 17 | with the EFIH second liens, right?  I'm | 15:21:08 |
| 18 | pointing to Mr. Horowitz, their counsel. | 15:21:14 |
| 19 | The proposal made by Nextera was made in | 15:21:16 |
| 20 | conjunction with the EFIH second liens, | 15:21:19 |
| 21 | right? | 15:21:21 |
| 22 | A.   No, the original proposal as I | 15:21:21 |
| 23 | recall was in conjunction with. | 15:21:23 |
| 24 | Q.   And that proposal would have | 15:21:26 |
| 25 | provided sufficient money to pay all but | 15:21:28 |

| | | |
|---|---|---|
| 1 | $25 million of the EFIH second lien make | 15:21:33 |
| 2 | whole, is that your recollection, sir? | 15:21:37 |
| 3 | MR. HOWELL:  Object to form. | 15:21:41 |
| 4 | A.    I need the document. | 15:21:42 |
| 5 | Q.    Okay. | 15:21:45 |
| 6 | MR. ANKER:  Let's go off the | 15:22:00 |
| 7 | record one second. | 15:22:01 |
| 8 | THE VIDEOGRAPHER:  One moment, | 15:22:03 |
| 9 | please, watch your microphones. | 15:22:03 |
| 10 | The time is now 3:21 p.m., we're | 15:22:05 |
| 11 | now off the record. | 15:22:08 |
| 12 | (A recess was taken.) | 15:23:35 |
| 13 | THE VIDEOGRAPHER:  The time is | 15:24:04 |
| 14 | 3:24 p.m., back on the record. | 15:24:19 |
| 15 | MR. ANKER:  Let me mark as | 15:24:26 |
| 16 | Exhibit 22 a letter addressed to | 15:24:28 |
| 17 | the board of directors of EFIH care | 15:24:31 |
| 18 | of Mr. Keglevic from Tom Mayer at | 15:24:38 |
| 19 | Kramer Levin, and Mark E. Hickson, | 15:24:45 |
| 20 | vice president, strategy and | 15:24:49 |
| 21 | corporate development, Nextera | 15:24:50 |
| 22 | Energy, Inc. | 15:24:53 |
| 23 | (Horton Exhibit 22 for | 15:24:54 |
| 24 | identification, letter addressed to | 15:24:29 |
| 25 | the board of directors of EFIH care | 15:24:31 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 232

| | | |
|---|---|---|
| 1 | of Mr. Keglevic, from Tom Mayer at | 15:24:38 |
| 2 | Kramer Levin and Mark E. Hickson, | 15:24:45 |
| 3 | vice president, strategy and | 15:24:49 |
| 4 | corporate development, Nextera | 15:24:50 |
| 5 | Energy, Inc., dated July 16, 2014.) | 15:24:53 |
| 6 | Q.    My first question, Mr. Horton, | 15:25:04 |
| 7 | is simply going to be can you identify | 15:25:07 |
| 8 | the document that has been marked as | 15:25:09 |
| 9 | Exhibit 22? | 15:25:11 |
| 10 | A.    What would you like for me to | 15:25:17 |
| 11 | do, I'm sorry? | 15:25:18 |
| 12 | Q.    Can you simply identify it? | 15:25:19 |
| 13 | Do you recognize it? | 15:25:21 |
| 14 | A.    Yes. | 15:25:22 |
| 15 | Q.    What is it? | 15:25:22 |
| 16 | A.    It's a letter to the board of | 15:25:22 |
| 17 | directors of Energy Future Intermediate | 15:25:22 |
| 18 | Holdings, care of Paul Keglevic. | 15:25:29 |
| 19 | Q.    Was this -- it conveys an | 15:25:33 |
| 20 | offer by Nextera, right? | 15:25:35 |
| 21 | A.    It's a term sheet. | 15:25:38 |
| 22 | Q.    A term sheet for a | 15:25:42 |
| 23 | transaction, right? | 15:25:45 |
| 24 | A.    Yes. | 15:25:46 |
| 25 | Q.    Okay.  Was this the first | 15:25:49 |

Page 233

| | | |
|---|---|---|
| 1 | proposal made by Nextera during the | 15:25:51 |
| 2 | bankruptcy case? | 15:25:54 |
| 3 | A.    As I recall, yes. | 15:25:57 |
| 4 | MR. ANKER:  We can do this on | 15:26:13 |
| 5 | the record.  I'm told that the | 15:26:14 |
| 6 | exhibit I've handed you may be | 15:26:16 |
| 7 | miscopied so that only odd pages | 15:26:18 |
| 8 | are copied.  Does that appear to be | 15:26:20 |
| 9 | your case, Mr. Horton? | 15:26:22 |
| 10 | THE WITNESS:  No. | 15:26:24 |
| 11 | MR. HOROWITZ:  What? | 15:26:27 |
| 12 | THE WITNESS:  No, sir. | 15:26:29 |
| 13 | MR. ANKER:  Can we now go off | 15:26:31 |
| 14 | the record. | 15:26:34 |
| 15 | THE VIDEOGRAPHER:  One moment, | 15:26:35 |
| 16 | the time is 3:26 p.m., we're now | 15:26:36 |
| 17 | off the record. | 15:26:39 |
| 18 | (Discussion off the record.) | 15:27:23 |
| 19 | THE VIDEOGRAPHER:  The time is | 15:27:25 |
| 20 | 3:27 p.m., back on the record. | 15:27:37 |
| 21 | MR. ANKER:  While off the | 15:27:41 |
| 22 | record we confirmed that the copy | 15:27:42 |
| 23 | of Exhibit 22 that the witness has | 15:27:45 |
| 24 | is complete, and the copy that his | 15:27:48 |
| 25 | counsel, Mr. Howell, has is | 15:27:52 |

| | | |
|---|---|---|
| 1 | complete.  There may be some copies | 15:27:54 |
| 2 | that were handed out to other | 15:27:56 |
| 3 | attorneys in the room that for one | 15:27:58 |
| 4 | reason or another are not complete. | 15:28:00 |
| 5 | Any attorney in the room who would | 15:28:02 |
| 6 | like a complete copy please let me | 15:28:04 |
| 7 | or Mr. Gringer know and we will | 15:28:06 |
| 8 | make sure to get it to you at the | 15:28:10 |
| 9 | earliest possible time. | 15:28:13 |
| 10 | MR. HOWELL:  I'll note that we | 15:28:15 |
| 11 | have page 2 of 8 through 8 of 8 | 15:28:16 |
| 12 | which I think as does the witness, | 15:28:19 |
| 13 | but we do have page 1 of 8. | 15:28:21 |
| 14 | MR. ANKER:  I believe page 1 | 15:28:23 |
| 15 | of 8 is literally the fax cover | 15:28:26 |
| 16 | sheet, but we can all check it.  I | 15:28:29 |
| 17 | think it's the fax cover sheet and | 15:28:30 |
| 18 | we concluded that it was not | 15:28:32 |
| 19 | important enough to question the | 15:28:34 |
| 20 | witness about. | 15:28:36 |
| 21 | Q.   My question to you before we | 15:28:37 |
| 22 | had this colloquy was whether the | 15:28:40 |
| 23 | document that has been marked Exhibit 22, | 15:28:44 |
| 24 | dated July 16, 2014, was the first | 15:28:48 |
| 25 | proposal made by Nextera during the | 15:28:53 |

| | | |
|---|---|---|
| 1 | bankruptcy? | 15:28:57 |
| 2 | A.    There was a previous one as we | 15:29:01 |
| 3 | can read here. | 15:29:17 |
| 4 | Q.    Right.  And the previous one | 15:29:19 |
| 5 | was also implied a higher valuation for | 15:29:20 |
| 6 | EFIH than the implied value that underlay | 15:29:25 |
| 7 | -- underlay the RSA, underlied the RSA, | 15:29:32 |
| 8 | right? | 15:29:42 |
| 9 | A.    I would need to set the | 15:29:42 |
| 10 | proposal side by side, review that. | 15:29:44 |
| 11 | Q.    This proposal was certainly, | 15:29:46 |
| 12 | Exhibit 22, significantly higher than the | 15:29:50 |
| 13 | RSA valuation, right? | 15:29:54 |
| 14 | A.    It was higher. | 15:29:55 |
| 15 | Q.    It implied a valuation not in | 15:29:58 |
| 16 | the range of 16.5 billion, but of about | 15:30:00 |
| 17 | 18 billion, didn't it? | 15:30:04 |
| 18 | A.    That's correct. | 15:30:06 |
| 19 | Q.    And at 18 billion EFIH may | 15:30:06 |
| 20 | well, likely is, solvent, right? | 15:30:12 |
| 21 | MR. HOWELL:  Object to form. | 15:30:19 |
| 22 | A.    I would say from a balance | 15:30:21 |
| 23 | sheet perspective, yes. | 15:30:24 |
| 24 | Q.    And for all the debtors know, | 15:30:24 |
| 25 | they could have pre-petition out of | 15:30:29 |

| | | |
|---|---|---|
| 1 | bankruptcy negotiated a transaction | 15:30:33 |
| 2 | before April 29, 2014, with Nextera that | 15:30:37 |
| 3 | would have provided for sufficient funds | 15:30:40 |
| 4 | for the EFIH to pay 100 percent of | 15:30:44 |
| 5 | principal and interest and make whole to | 15:30:48 |
| 6 | the EFIH first liens, 100 percent of | 15:30:52 |
| 7 | interest and principal and make whole to | 15:30:55 |
| 8 | the second liens, and 100 percent of | 15:30:58 |
| 9 | interest and principal plus make whole or | 15:31:00 |
| 10 | other premium, whatever was owed to the | 15:31:04 |
| 11 | PIKs, right? | 15:31:06 |
| 12 | MR. HOWELL:  Object to form. | 15:31:07 |
| 13 | A.    Again, that's a, that's | 15:31:10 |
| 14 | speculation.  I'd be speculating.  We | 15:31:12 |
| 15 | don't know.  There was a lot of, a lot of | 15:31:14 |
| 16 | discussions going on.  We obviously had, | 15:31:18 |
| 17 | you know, the datapoint of TCEH.  We | 15:31:24 |
| 18 | don't know. | 15:31:27 |
| 19 | Q.    Absolutely it's speculation, | 15:31:27 |
| 20 | it's absolutely speculation whether the | 15:31:29 |
| 21 | debtors could have negotiated prior to | 15:31:31 |
| 22 | April 29, 2014 out of bankruptcy a | 15:31:33 |
| 23 | transaction with Nextera that would have | 15:31:38 |
| 24 | paid the debtors enough money to pay all | 15:31:40 |
| 25 | their EFIH creditors in full, including | 15:31:43 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 237

1        all make wholes, right?                              15:31:46

2                MR. HOWELL:  Object to form.               15:31:47

3        Q.    And the reason it's                          15:31:49

4    speculation, Mr. Horton, is because the               15:31:50

5    debtors never had that conversation with             15:31:52

6    Nextera, right?                                        15:31:54

7                MR. HOWELL:  Object to form.               15:31:55

8        A.    The conversation was around,               15:31:56

9    again, with its creditors, existing                   15:31:58

10    creditors, there was a lot of emphasis on            15:32:00

11    continuity of ownership to avoid                      15:32:03

12    incurring a $7 billion tax, and that was            15:32:05

13    the focus.                                            15:32:09

14        Q.    Okay.  I understand that was             15:32:09

15    the focus.                                            15:32:12

16        A.    With the fiduciary out,                   15:32:13

17    ultimately we have the opportunity.                  15:32:16

18        Q.    You took advantage of the                15:32:23

19    fiduciary out and that was a good thing             15:32:28

20    to do and I applaud you for doing it.               15:32:29

21    But I just want to get a clear record.               15:32:31

22    The debtors don't know one way or the               15:32:33

23    other whether they could have                        15:32:36

24    pre-bankruptcy negotiated a transaction             15:32:38

25    with Nextera or another third party that            15:32:40

| | | |
|---|---|---|
| 1 | would have provided sufficient funds to | 15:32:44 |
| 2 | buy EFIH's interest in Oncor and pay the | 15:32:48 |
| 3 | EFIH firsts, the EFIH seconds, and the | 15:32:52 |
| 4 | PIKs everything they were owed including | 15:32:55 |
| 5 | all applicable premium, right? | 15:32:58 |
| 6 | MR. HOWELL:  Object to form. | 15:33:00 |
| 7 | A.    Again, where we were in the | 15:33:01 |
| 8 | process is EFIH was running out of cash, | 15:33:03 |
| 9 | we continued to work on structures where | 15:33:07 |
| 10 | we would avoid a tax liability of $7 | 15:33:09 |
| 11 | billion.  We did not reach out to Nextera | 15:33:14 |
| 12 | or other bidders. | 15:33:16 |
| 13 | Q.    And so the answer to my | 15:33:18 |
| 14 | question, I really want an answer to my | 15:33:19 |
| 15 | question on this one, is that the debtors | 15:33:22 |
| 16 | don't know one way or the other whether | 15:33:29 |
| 17 | they could have pre-bankruptcy negotiated | 15:33:31 |
| 18 | a transaction with Nextera or another | 15:33:33 |
| 19 | third party that would have provided | 15:33:36 |
| 20 | sufficient funds to buy EFIH's interest | 15:33:38 |
| 21 | in Oncor and pay the EFIH firsts, the | 15:33:42 |
| 22 | EFIH seconds, and the PIKs everything | 15:33:46 |
| 23 | they were owed, including all applicable | 15:33:47 |
| 24 | premium, correct? | 15:33:49 |
| 25 | MR. HOWELL:  Object to form, | 15:33:50 |

| | | |
|---|---|---|
| 1 | asked and answered, | 15:33:52 |
| 2 | mischaracterizes his testimony. | 15:33:54 |
| 3 | MR. ANKER:  I'm not | 15:33:55 |
| 4 | characterizing, I'm asking a | 15:33:56 |
| 5 | question. | 15:33:57 |
| 6 | Q.    Correct? | 15:33:57 |
| 7 | A.    Again, the considerations were | 15:33:58 |
| 8 | around tax, continuity of ownership and | 15:33:59 |
| 9 | that was the structure we developed.  The | 15:34:05 |
| 10 | structures have evolved, and Nextera and | 15:34:06 |
| 11 | others have submitted bids refining the | 15:34:09 |
| 12 | structure. | 15:34:13 |
| 13 | Q.   Mr. Horton, I really, this has | 15:34:14 |
| 14 | been a noncontentious deposition and I | 15:34:22 |
| 15 | appreciate that, but I really want an | 15:34:25 |
| 16 | answer to my question.  You may have had | 15:34:26 |
| 17 | discussions about lots of different | 15:34:28 |
| 18 | structures.  I acknowledge that.  I have | 15:34:29 |
| 19 | a simple question for you.  The debtors | 15:34:31 |
| 20 | don't know one way or the other whether | 15:34:34 |
| 21 | they could have pre-bankruptcy negotiated | 15:34:37 |
| 22 | a transaction with Nextera or another | 15:34:39 |
| 23 | third party in which that third party | 15:34:42 |
| 24 | would have purchased EFIH's equity in | 15:34:45 |
| 25 | Oncor and paid consideration sufficient | 15:34:49 |

| 1  | to pay the EFIH firsts, the EFIH seconds | 15:34:52 |
| 2  | and the PIKs everything all three groups | 15:34:56 |
| 3  | were owed, including all applicable | 15:34:59 |
| 4  | premium, right? | 15:35:01 |
| 5  | MR. HOWELL:  Object to form, | 15:35:04 |
| 6  | asked and answered. | 15:35:06 |
| 7  | A.   I do not know. | 15:35:06 |
| 8  | Q.   And it's fair to say, is it | 15:35:07 |
| 9  | not, Mr. Horton, that the debtors were | 15:35:09 |
| 10 | surprised by the magnitude of the Nextera | 15:35:18 |
| 11 | proposal, right? | 15:35:18 |
| 12 | A.   I don't that we would use the | 15:35:23 |
| 13 | term surprised. | 15:35:24 |
| 14 | Q.   What term would you use? | 15:35:25 |
| 15 | A.   I think we were encouraged | 15:35:27 |
| 16 | that the Oncor and the EFIH side of the | 15:35:33 |
| 17 | house was bringing that kind of value. | 15:35:39 |
| 18 | Q.   Maybe my assumption was wrong. | 15:35:41 |
| 19 | I'll tell you what underlie my question. | 15:35:45 |
| 20 | The debtors negotiated and filed a | 15:35:48 |
| 21 | bankruptcy based on a -- based on an RSA | 15:35:50 |
| 22 | that was going to give the PIKs | 15:35:55 |
| 23 | significant value in EFIH based on an | 15:36:01 |
| 24 | implied valuation of $16.5 billion.  Did | 15:36:08 |
| 25 | the debtors really enter into that | 15:36:14 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 241

| | | |
|---|---|---|
| 1 | transaction without thinking that $16.5 | 15:36:16 |
| 2 | billion was about the value of EFIH? | 15:36:20 |
| 3 | A.    We entered into that | 15:36:24 |
| 4 | transaction, again, with the thought that | 15:36:25 |
| 5 | we had a fiduciary out.  We had gone | 15:36:29 |
| 6 | through Project Olympus.  We had seen the | 15:36:33 |
| 7 | valuation fight.  We've seen the low | 15:36:35 |
| 8 | value that came from the TCEH side. | 15:36:38 |
| 9 | Q.    Let me flip the question.  I | 15:36:44 |
| 10 | was asking you to compare the value | 15:36:47 |
| 11 | implied by the Nextera bid to what the | 15:36:52 |
| 12 | debtors negotiated pre-petition the RSA. | 15:36:55 |
| 13 | I want to now change the comparison. | 15:36:58 |
| 14 | The debtors didn't accept and | 15:37:00 |
| 15 | sign up Exhibit 22 in Nextera, right? | 15:37:05 |
| 16 | A.    That's correct. | 15:37:10 |
| 17 | Q.    And you didn't even sign it up | 15:37:10 |
| 18 | subject to a fiduciary out, for example, | 15:37:13 |
| 19 | have it be a stalking-horse, right? | 15:37:16 |
| 20 | A.    We certainly went through the | 15:37:18 |
| 21 | process, we have gone through the bidding | 15:37:21 |
| 22 | procedures.  I believe you've seen our | 15:37:24 |
| 23 | motions.  You've seen the reaction. | 15:37:27 |
| 24 | Q.    I have seen your motions.  And | 15:37:29 |
| 25 | let me get back to my question which I | 15:37:32 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 242

| | | |
|---|---|---|
| 1 | respectfully would like an answer to. | 15:37:34 |
| 2 | The debtors didn't sign up | 15:37:36 |
| 3 | Nextera as a stalking-horse, right? | 15:37:39 |
| 4 | A.   We used our business judgment | 15:37:41 |
| 5 | and we did not sign up a stalking-horse. | 15:37:43 |
| 6 | We went down a different path. | 15:37:46 |
| 7 | Q.   Okay. | 15:37:48 |
| 8 | A.   In the -- | 15:37:49 |
| 9 | Q.   In an exercise -- | 15:37:49 |
| 10 | MR. HOWELL:  I'm sorry, Mr. | 15:37:52 |
| 11 | Horton were you finished with your | 15:37:53 |
| 12 | answer? | 15:37:54 |
| 13 | MR. ANKER:  I'm sorry, I | 15:37:54 |
| 14 | thought he was. | 15:37:55 |
| 15 | Q.   If you were not, I apologize. | 15:37:56 |
| 16 | A.   I've since forgotten.  Go | 15:37:58 |
| 17 | ahead. | 15:38:00 |
| 18 | Q.   I apologize, I didn't mean to | 15:38:00 |
| 19 | talk over you. | 15:38:02 |
| 20 | I accept that the debtors | 15:38:03 |
| 21 | exercised their business judgment.  And | 15:38:04 |
| 22 | in exercising that business judgment not | 15:38:07 |
| 23 | to sign up Nextera as a stalking-horse, | 15:38:09 |
| 24 | the debtors were cognizant of their | 15:38:12 |
| 25 | fiduciary duty to their various | 15:38:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 243

```
 1    creditors, right?                              15:38:17

 2         A.    That's correct.                     15:38:18

 3         Q.    And if the debtors had              15:38:19

 4    concluded that the Nextera proposal was        15:38:21

 5    the highest bid you'd ever get and it          15:38:25

 6    could only go down, the debtors would          15:38:28

 7    have signed up Nextera as a                    15:38:31

 8    stalking-horse, right?                         15:38:35

 9         MR. HOWELL:  Object to form.              15:38:36

10         A.    I don't know if Nextera is          15:38:37

11    going to be the highest bidder.                15:38:39

12         Q.    Exactly.  Let me get to the         15:38:41

13    final question and maybe --I'm really not      15:38:43

14    trying to trick you here, I'm trying to        15:38:45

15    get to a simple proposition.                   15:38:46

16              I assume that the debtors            15:38:53

17    didn't sign up Nextera as a                    15:38:55

18    stalking-horse at 18 billion because the       15:38:57

19    debtors now believe the value of EFIH in       15:38:59

20    the market may well be greater than 18         15:39:01

21    billion, right?                                15:39:03

22              MR. HOWELL:  Object to form.         15:39:04

23         A.    No.                                 15:39:05

24         Q.    No?                                 15:39:06

25         A.    No.                                 15:39:06
```

| | | |
|---|---|---|
| 1 | Q.    Why did the debtors not sign | 15:39:06 |
| 2 | up Nextera as a stalking-horse? | 15:39:09 |
| 3 | A.    We wanted to get consensus and | 15:39:11 |
| 4 | court approved process for the bidding | 15:39:19 |
| 5 | procedures before we ultimately signed up | 15:39:21 |
| 6 | the stalking-horse and went through the | 15:39:23 |
| 7 | auction. | 15:39:28 |
| 8 | Q.    Okay.  But I think you told me | 15:39:29 |
| 9 | a moment ago that you don't know that | 15:39:32 |
| 10 | Nextera will be the highest bidder, | 15:39:34 |
| 11 | right? | 15:39:37 |
| 12 | A.    I do not know. | 15:39:37 |
| 13 | Q.    And in fact, the debtors have | 15:39:38 |
| 14 | had discussions with a number of | 15:39:40 |
| 15 | different bidders, right?  I'm not asking | 15:39:41 |
| 16 | for names.  The debtors had discussions | 15:39:45 |
| 17 | with a number of different bidders, | 15:39:47 |
| 18 | right? | 15:39:49 |
| 19 | A.    That's correct. | 15:39:49 |
| 20 | Q.    And a number of different | 15:39:50 |
| 21 | people have expressed interest, right? | 15:39:51 |
| 22 | A.    That's correct. | 15:39:53 |
| 23 | Q.    And everyone who has expressed | 15:39:53 |
| 24 | interest is aware that there's this $18 | 15:39:55 |
| 25 | billion offer out on the table that's | 15:39:58 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 245

| | | |
|---|---|---|
| 1 | Exhibit 22, right? | 15:40:00 |
| 2 | A.    Yes. | 15:40:01 |
| 3 | Q.    The debtors filed the other | 15:40:01 |
| 4 | day a proposed amended answer and | 15:40:14 |
| 5 | counterclaim to -- in the -- let me back | 15:40:24 |
| 6 | up. | 15:40:30 |
| 7 | You're aware that in addition | 15:40:30 |
| 8 | to the adversary proceeding that the | 15:40:31 |
| 9 | first lien trustee has brought the second | 15:40:33 |
| 10 | lien trustee has also for EFIH brought an | 15:40:36 |
| 11 | adversary proceeding? | 15:40:40 |
| 12 | A.    Regarding? | 15:40:41 |
| 13 | Q.    The make whole? | 15:40:43 |
| 14 | A.    Yes. | 15:40:43 |
| 15 | Q.    Are you aware that the debtors | 15:40:44 |
| 16 | filed a motion the other day for leave to | 15:40:46 |
| 17 | file an amended answer and set of | 15:40:49 |
| 18 | counterclaims? | 15:40:50 |
| 19 | A.    Yes. | 15:40:51 |
| 20 | Q.    Did you review that document | 15:40:52 |
| 21 | before it was filed? | 15:40:54 |
| 22 | A.    Not in detail, but -- not in | 15:40:55 |
| 23 | detail. | 15:40:57 |
| 24 | Q.    In that document, the debtors | 15:40:58 |
| 25 | address whether the second liens should | 15:41:21 |

| | | |
|---|---|---|
| 1 | be allowed to exercise their right under | 15:41:26 |
| 2 | their indenture to rescind the | 15:41:32 |
| 3 | acceleration of their debt, are you aware | 15:41:38 |
| 4 | of that? | 15:41:42 |
| 5 | MR. HOWELL:  Object to | 15:41:43 |
| 6 | foundation. | 15:41:45 |
| 7 | A.    Yes. | 15:41:45 |
| 8 | Q.    And the debtors state in that | 15:41:45 |
| 9 | amended counterclaim that -- I'll read | 15:41:53 |
| 10 | you what they say and then I'll give it | 15:42:16 |
| 11 | to you, okay?  This is paragraph 124 of | 15:42:18 |
| 12 | the proposed counterclaim:  "The second | 15:42:22 |
| 13 | lien trustee has not demonstrated and | 15:42:29 |
| 14 | cannot demonstrate cause for lifting the | 15:42:35 |
| 15 | automatic stay, which would only increase | 15:42:38 |
| 16 | the recovery of the second lien | 15:42:42 |
| 17 | noteholders at the expense of all other | 15:42:43 |
| 18 | creditors." | 15:42:45 |
| 19 | MR. ANKER:  We'll mark this as | 15:42:47 |
| 20 | Exhibit 23. | 15:42:48 |
| 21 | (Horton Exhibit 23 for | 15:42:49 |
| 22 | identification, Energy Future | 15:42:49 |
| 23 | Intermediate Holding Company LLC's | 15:42:49 |
| 24 | and EFIH Finance, Inc.'s first | 15:42:49 |
| 25 | amended answer and counterclaims.) | 15:42:50 |

1    Q.    Do you see paragraph 124, Mr.    15:42:50

2    Horton?    15:43:00

3    A.    I do see that paragraph.    15:43:00

4    Q.    Okay.  Now, it says that if    15:43:12

5    the automatic stay were lifted, that    15:43:15

6    would, quote, only increase the recovery    15:43:18

7    of the second lien noteholders at the    15:43:21

8    expense of all other creditors, right?    15:43:24

9    A.    That's what it says.    15:43:26

10    Q.    But if EFIH proves solvent,    15:43:27

11    then allowing the second liens relief    15:43:31

12    from the stay to exercise their right of    15:43:35

13    rescission won't be at the expense of    15:43:37

14    other creditors of EFIH, right?    15:43:39

15    MR. HOWELL:  Object to form    15:43:42

16    and foundation.    15:43:43

17    A.    I don't know the answer to    15:43:47

18    that.    15:43:48

19    Q.    If I asked you the same    15:43:48

20    question about the first liens, let me    15:43:49

21    ask it, I think you'll give me the same    15:43:51

22    answer?  If EFIH is solvent, and the EFIH    15:43:53

23    first liens are allowed to rescind the    15:43:58

24    acceleration, exercise the very right    15:44:00

25    given to them in the indenture, then    15:44:02

Page 248

| | | |
|---|---|---|
| 1 | that's not going to affect recoveries of | 15:44:06 |
| 2 | any other creditors of EFIH, right? | 15:44:09 |
| 3 | MR. HOWELL:  Object to form | 15:44:11 |
| 4 | and foundation. | 15:44:12 |
| 5 | A.    Again, I do not know. | 15:44:13 |
| 6 | Q.    The debtors have no intent, do | 15:44:15 |
| 7 | they, in the exercise of their fiduciary | 15:44:17 |
| 8 | duties to pay, for example, the PIKs more | 15:44:20 |
| 9 | than they're owed, right? | 15:44:24 |
| 10 | MR. HOWELL:  Object to form. | 15:44:26 |
| 11 | A.    We have our fiduciary | 15:44:27 |
| 12 | responsibilities, we'll follow those. | 15:44:30 |
| 13 | Q.    And you understand that those | 15:44:31 |
| 14 | fiduciary responsibilities include, to | 15:44:34 |
| 15 | the extent there's sufficient value, | 15:44:36 |
| 16 | paying creditors in full everything | 15:44:38 |
| 17 | they're owed but not more than what | 15:44:40 |
| 18 | they're owed, right? | 15:44:42 |
| 19 | A.    That's correct. | 15:44:43 |
| 20 | Q.    So the debtors have no intent | 15:44:44 |
| 21 | of giving the PIKs or any other creditors | 15:44:47 |
| 22 | more than what they're owed, right? | 15:44:50 |
| 23 | A.    I would agree with that. | 15:44:51 |
| 24 | Q.    Okay.  Mr. Horton, I think, I | 15:44:53 |
| 25 | don't know whether I asked you this, do | 15:45:17 |

| | | |
|---|---|---|
| 1 | you report to Mr. Keglevic? | 15:45:18 |
| 2 | A.    I do. | 15:45:19 |
| 3 | Q.    This is probably an unfair | 15:45:19 |
| 4 | question to ask you, but I'll ask it of | 15:45:23 |
| 5 | you.  I presume you hold Mr. Keglevic in | 15:45:25 |
| 6 | high esteem? | 15:45:28 |
| 7 | A.    Yes. | 15:45:29 |
| 8 | Q.    And it would be hard for you | 15:45:29 |
| 9 | to answer on the record other than that, | 15:45:33 |
| 10 | but I accept the answer as totally | 15:45:35 |
| 11 | truthful.  And that's why I said I think | 15:45:37 |
| 12 | it's a hard question for me to ask you. | 15:45:40 |
| 13 | I take it, therefore, that you | 15:45:43 |
| 14 | would generally think that Mr. Keglevic's | 15:45:45 |
| 15 | testimony in this bankruptcy, these | 15:45:48 |
| 16 | bankruptcy cases has been truthful and | 15:45:51 |
| 17 | accurate, right? | 15:45:53 |
| 18 | A.    It's been truthful and as far | 15:45:55 |
| 19 | as I know accurate. | 15:45:57 |
| 20 | Q.    Okay. | 15:45:58 |
| 21 | MR. ANKER:  Let me mark as | 15:46:30 |
| 22 | Exhibit number 24 a deposition of | 15:46:32 |
| 23 | Mr. Keglevic dated May 29, 2014. | 15:46:34 |
| 24 | (Horton Exhibit 24 for | 15:46:38 |
| 25 | identification, transcript of the | 15:46:33 |

| | | |
|---|---|---|
| 1 | deposition of Mr. Keglevic taken on | 15:46:33 |
| 2 | May 29, 2014.) | 15:46:36 |
| 3 | Q.    I'm going to take you to the | 15:46:41 |
| 4 | page that I had my finger on?  Are you | 15:46:44 |
| 5 | there?  I'm sorry.  Could I ask you, Mr. | 15:47:00 |
| 6 | Horton, to turn to page 47, and by page | 15:47:03 |
| 7 | 47, again I mean the small page, this is | 15:47:10 |
| 8 | a Minuscript.  Actual page 47 of the | 15:47:13 |
| 9 | transcript. | 15:47:17 |
| 10 | A.    I see it. | 15:47:18 |
| 11 | Q.    And you'll see if you go back | 15:47:19 |
| 12 | to page 46, this is a direct examination | 15:47:20 |
| 13 | of Mr. Keglevic by Mr. McGann at Kirkland | 15:47:25 |
| 14 | & Ellis, right? | 15:47:30 |
| 15 | A.    Okay. | 15:47:30 |
| 16 | Q.    Okay?  And you'll see he too | 15:47:31 |
| 17 | talks about Mr. Keglevic, this is, the | 15:47:34 |
| 18 | fact that the first lien refinancing will | 15:47:37 |
| 19 | save 173 million over the course of a | 15:47:40 |
| 20 | year, 14 million a month.  Do you see | 15:47:44 |
| 21 | that on page 48, sir? | 15:47:46 |
| 22 | A.    Yes. | 15:47:48 |
| 23 | Q.    Okay.  And going back to page | 15:47:51 |
| 24 | 47, let's go actually to page 46.  You'll | 15:47:54 |
| 25 | see that Mr. McGann asks, "And you're | 15:48:00 |

| | |
|---|---|
| 1 | seeking to pay off the first lien notes | 15:48:03 |
| 2 | toward the beginning of the bankruptcy, | 15:48:06 |
| 3 | right?"  And Mr. Keglevic answers, "Yes." | 15:48:07 |
| 4 | And then Mr. McGann asks "And | 15:48:12 |
| 5 | the purpose, tell me what the purpose of | 15:48:14 |
| 6 | doing it toward the beginning of the | 15:48:16 |
| 7 | bankruptcy is?"  And then Mr. Keglevic | 15:48:17 |
| 8 | answers, "my understanding is that we | 15:48:21 |
| 9 | have an acceleration of the debt and as a | 15:48:24 |
| 10 | result, we have the opportunity to pay it | 15:48:26 |
| 11 | off and by paying it off and replacing it | 15:48:28 |
| 12 | with DIP financing we can lower the | 15:48:31 |
| 13 | interest costs and increase the | 15:48:33 |
| 14 | enterprise value of EFIH." | 15:48:36 |
| 15 | Did I read that accurately? | 15:48:39 |
| 16 | A.    That's correct. | 15:48:40 |
| 17 | Q.    And you would agree with Mr. | 15:48:40 |
| 18 | Keglevic's testimony, would you not? | 15:48:42 |
| 19 | A.    I'd agree that it's | 15:48:43 |
| 20 | accelerated and we had an obligation, as | 15:48:48 |
| 21 | you said earlier, to pay off the debt. | 15:48:51 |
| 22 | Q.    No, you had an opportunity to | 15:48:53 |
| 23 | pay it off, those were the terms that Mr. | 15:48:55 |
| 24 | Keglevic used, right? | 15:48:57 |
| 25 | A.    That's what he said. | 15:48:58 |

Page 252

```
 1          Q.    And you'd agree with him,           15:49:01

 2    would you not?                                  15:49:02

 3          A.    I don't know that I would have      15:49:02

 4    used the term opportunity.  I would have        15:49:05

 5    said obligation.                                15:49:09

 6          Q.    But you're not disagreeing          15:49:11

 7    with Mr. Keglevic even though you --            15:49:12

 8          A.    You hate to disagree with your      15:49:14

 9    boss, yes.                                      15:49:16

10          MR. HOWELL:  Just for the                 15:49:18

11          record, Phil, I think that Mr.            15:49:19

12          McGann is not asking those                15:49:21

13          questions.                                15:49:22

14          MR. ANKER:  I apologize.  It              15:49:27

15          is whoever it is.  If it is not Mr.       15:49:29

16          McGann, the record will be what the       15:49:31

17          record is.                                15:49:33

18          Q.    Let me show you one other           15:49:59

19    document, Mr. Horton, on this subject,          15:50:00

20    and we may change subjects thereafter.          15:50:03

21          A.    Okay.                               15:50:06

22          MR. ANKER:  We'll mark this               15:50:11

23          Exhibit 25, EFH2D 10011811 through        15:50:12

24          832 inclusive.                            15:50:22

25          (Horton Exhibit 25 for                    15:50:33
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 253

```
 1          identification, Bates stamped EFH2D        15:50:13

 2          10011811 through 10011832.)                15:50:15

 3          Q.    Do you recognize the document        15:50:49

 4     that's been marked as Exhibit 25, Mr.           15:50:50

 5     Horton?                                          15:50:52

 6          A.    Give me a moment just to flip        15:50:52

 7     through it.   Okay.                              15:50:55

 8          Q.    Do you recognize the document        15:51:27

 9     that's been marked as Exhibit 25?               15:51:28

10          A.    I think I do.                         15:51:29

11          Q.    This is a deck that was              15:51:30

12     prepared by Deutsche Bank, right?               15:51:31

13          A.    Yes.                                  15:51:33

14          Q.    And it's dated in October of         15:51:34

15     2013, right?                                    15:51:38

16          A.    That's correct.                      15:51:38

17          Q.    And that's right before, or         15:51:40

18     the month before the debtors issue their       15:51:43

19     8-K dated November 1, 2013 in which they       15:51:49

20     make their first public announcement of a      15:51:52

21     proposal to refinance the EFIH first lien      15:51:55

22     debt without paying the make whole,            15:51:58

23     right?                                          15:52:00

24          A.    Yes.                                  15:52:00

25          Q.    And in fact, we looked              15:52:01
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 254

| | | |
|---|---|---|
| 1 | earlier, although it was released on | 15:52:03 |
| 2 | November 1, 2013, the proposal that is | 15:52:05 |
| 3 | attached to that 8-K was in fact dated | 15:52:09 |
| 4 | October 15, 2013, right? | 15:52:11 |
| 5 | A.    I'd like a moment just to | 15:52:14 |
| 6 | review this deck a little bit more if you | 15:52:17 |
| 7 | don't mind. | 15:52:20 |
| 8 | MR. ANKER:  Why don't we go | 15:52:21 |
| 9 | off the record and you can review | 15:52:23 |
| 10 | it. | 15:52:24 |
| 11 | THE VIDEOGRAPHER:  One moment, | 15:52:25 |
| 12 | watch your microphones.  The time | 15:52:25 |
| 13 | is 3:52 p.m., we're now off the | 15:52:27 |
| 14 | record. | 15:52:31 |
| 15 | (A recess was taken.) | 15:52:34 |
| 16 | THE VIDEOGRAPHER:  The time is | 15:56:26 |
| 17 | 3:56 p.m., back on the record. | 15:56:38 |
| 18 | Q.    Mr. Horton, have you had an | 15:56:41 |
| 19 | opportunity to review the exhibit that is | 15:56:45 |
| 20 | Exhibit 25? | 15:56:47 |
| 21 | A.    I did review it very briefly. | 15:56:48 |
| 22 | Q.    And I think my question when | 15:56:52 |
| 23 | you asked for a moment to review it was | 15:56:54 |
| 24 | this document is dated October 2013 and | 15:57:00 |
| 25 | that's the very same month, is it not, as | 15:57:03 |

| | | |
|---|---|---|
| 1 | the date of the term sheet the debtors | 15:57:06 |
| 2 | themselves created that they then | 15:57:10 |
| 3 | attached to a November 1, 2013 8-K | 15:57:14 |
| 4 | proposing for the first time publicly not | 15:57:17 |
| 5 | to pay the EFIH first lien make whole? | 15:57:20 |
| 6 | A.    It's the same time frame. | 15:57:25 |
| 7 | Q.    Same month, right? | 15:57:26 |
| 8 | A.    October 2013, yes. | 15:57:27 |
| 9 | Q.    Okay.  And you'll notice, I'm | 15:57:30 |
| 10 | not going to take you through a lot of | 15:57:33 |
| 11 | the document, but could I turn you to | 15:57:35 |
| 12 | page 5, its Bates number is 820 is the | 15:57:36 |
| 13 | last three digits.  Tell me when you're | 15:57:40 |
| 14 | there. | 15:57:49 |
| 15 | A.    Okay. | 15:57:49 |
| 16 | Q.    Are you there? | 15:57:50 |
| 17 | A.    I am here. | 15:57:50 |
| 18 | Q.    And you'll see in the | 15:57:51 |
| 19 | left-hand column Deutsche Bank uses a | 15:57:53 |
| 20 | slightly different formulation than Mr. | 15:57:57 |
| 21 | Keglevic, but it says, the EFIH debt, it | 15:58:02 |
| 22 | describes it as an opportunistic | 15:58:06 |
| 23 | refinancing.  Do you see that language? | 15:58:10 |
| 24 | A.    I do see it. | 15:58:12 |
| 25 | Q.    That's a fair description, | 15:58:13 |

| | | |
|---|---|---|
| 1 | that it was an opportunistic refinancing. | 15:58:17 |
| 2 | The debtors had, EFIH had an opportunity | 15:58:20 |
| 3 | presented by the bankruptcy and the | 15:58:23 |
| 4 | credit markets to refinance their first | 15:58:26 |
| 5 | lien debt at a substantially lower cost | 15:58:30 |
| 6 | of funds and they took advantage of that | 15:58:33 |
| 7 | opportunity, right? | 15:58:36 |
| 8 | A.    Let me address this | 15:58:37 |
| 9 | presentation first. | 15:58:38 |
| 10 | Q.    Sure. | 15:58:40 |
| 11 | A.    Again, I would -- I would | 15:58:40 |
| 12 | challenge this, this presentation.  I had | 15:58:47 |
| 13 | three other bulge bracket firms in | 15:58:50 |
| 14 | September and in October say that there | 15:58:53 |
| 15 | was no way we were going to be able to | 15:58:57 |
| 16 | raise a first lien DIP at EFIH.  So going | 15:59:00 |
| 17 | into September or October, we had no | 15:59:05 |
| 18 | belief that we could raise a first lien | 15:59:09 |
| 19 | DIP at EFIH. | 15:59:12 |
| 20 | Q.    Okay. | 15:59:15 |
| 21 | A.    So all due respect to Deutsche | 15:59:16 |
| 22 | Bank, new relationship, we had no -- we | 15:59:21 |
| 23 | had no belief that that could be done. | 15:59:27 |
| 24 | Q.    Well it turned out Deutsche | 15:59:29 |
| 25 | Bank was right, you were able to -- | 15:59:30 |

| | | |
|---|---|---|
| 1 | A.    Markets turned and changed and | 15:59:32 |
| 2 | it -- you know. | 15:59:34 |
| 3 | Q.    So -- | 15:59:37 |
| 4 | A.    November, December, January | 15:59:38 |
| 5 | time frame we pushed and ultimately we | 15:59:40 |
| 6 | got something done. | 15:59:45 |
| 7 | Q.    Okay.  My question though is | 15:59:45 |
| 8 | about one particular set of words on page | 15:59:49 |
| 9 | 5.  Deutsche Bank described an EFIH DIP, | 15:59:52 |
| 10 | if you could obtain it, as, quote, | 15:59:59 |
| 11 | opportunistic refinancing, and you saw | 16:00:02 |
| 12 | Mr. Keglevic describe it as an | 16:00:04 |
| 13 | opportunity.  Do you share Deutsche Bank | 16:00:07 |
| 14 | -- Deutsche Bank is right, is it not, | 16:00:10 |
| 15 | that the actual refinancing you were able | 16:00:12 |
| 16 | to do going from 10 percent to 4.25 and | 16:00:15 |
| 17 | avoiding the make whole, was | 16:00:22 |
| 18 | opportunistic for EFIH? | 16:00:24 |
| 19 | MR. HOWELL:  Object to form. | 16:00:28 |
| 20 | A.    I have no idea what they meant | 16:00:29 |
| 21 | by opportunistic. | 16:00:31 |
| 22 | Q.    Okay.  You know the word | 16:00:32 |
| 23 | though, right? | 16:00:34 |
| 24 | A.    I know what opportunistic | 16:00:35 |
| 25 | means.  I don't know what they meant in | 16:00:36 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 258

| | |
|---|---|
| 1 this context. | 16:00:38 |
| 2      Q.    How about as you use it?  EFIH | 16:00:39 |
| 3 took advantage of an opportunity that was | 16:00:43 |
| 4 presented to it, right? | 16:00:45 |
| 5      A.    The debt was due and payable. | 16:00:46 |
| 6      Q.    Okay.  Do you have an | 16:00:50 |
| 7 understanding, Mr. Keglevic -- and I | 16:00:53 |
| 8 understand you're not a lawyer -- | 16:00:57 |
| 9      A.    Mr. Horton. | 16:00:59 |
| 10      Q.    Mr. Horton, my apologies.  I'm | 16:00:59 |
| 11 just asking for your understanding, the | 16:01:02 |
| 12 law will be what the law is.  I'm not | 16:01:03 |
| 13 asking for a legal opinion.  Do you have | 16:01:05 |
| 14 an understanding that the debtors were | 16:01:07 |
| 15 under compulsion to repay their first | 16:01:09 |
| 16 lien debt at the outset of this | 16:01:12 |
| 17 bankruptcy case? | 16:01:14 |
| 18      A.    No, I don't know -- let's back | 16:01:15 |
| 19 up.  I'm not sure what you mean by | 16:01:19 |
| 20 compulsion -- | 16:01:20 |
| 21      MR. SABIN:  Object to the | 16:01:24 |
| 22      form. | 16:01:25 |
| 23      Q.    I'm sorry, what did you say? | 16:01:26 |
| 24      A.    Maybe it would be better if | 16:01:28 |
| 25 you define compulsion. | 16:01:29 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 259

| | | |
|---|---|---|
| 1 | Q.    Sure.  Did you understand that | 16:01:31 |
| 2 | the debtors could have declined to file | 16:01:32 |
| 3 | the motion they filed at the outset of | 16:01:35 |
| 4 | this bankruptcy to refinance their first | 16:01:38 |
| 5 | lien debt? | 16:01:41 |
| 6 | A.    In what way? | 16:01:42 |
| 7 | Q.    Could the debtors have simply | 16:01:44 |
| 8 | continued to pay interest every month and | 16:01:46 |
| 9 | keep the debt outstanding? | 16:01:48 |
| 10 | A.    We were running out of cash, | 16:01:50 |
| 11 | so the answer to that is no. | 16:01:51 |
| 12 | Q.    As a legal matter, and I | 16:01:53 |
| 13 | understand you're not here to testify as | 16:01:56 |
| 14 | a, to give a legal opinion, but to your | 16:01:58 |
| 15 | understanding, was there any legal | 16:02:01 |
| 16 | requirement that EFIH refinance that debt | 16:02:02 |
| 17 | at the outset of the bankruptcy? | 16:02:06 |
| 18 | MR. HOWELL:  Object to form | 16:02:08 |
| 19 | and foundation. | 16:02:09 |
| 20 | A.    The -- as I continue to say, | 16:02:12 |
| 21 | under the terms of the contract, we had, | 16:02:15 |
| 22 | the debt was due and payable, we had the | 16:02:20 |
| 23 | funds available to pay the debt that was | 16:02:22 |
| 24 | due and payable and that's what we did. | 16:02:26 |
| 25 | Q.    I don't want to probe what | 16:02:28 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 260

1    legal advice you may have gotten from        16:02:35

2    counsel, but have you ever -- do you have    16:02:37

3    any understanding as to whether a debtor     16:02:40

4    in bankruptcy can reinstate debt, even       16:02:45

5    debt that has been accelerated?              16:02:48

6        A.    I've heard the term reinstate      16:02:49

7    debt.                                         16:02:51

8        Q.    What do you understand it to       16:02:52

9    mean?                                         16:02:54

10        A.    It means, again, from a            16:02:54

11    bankruptcy perspective, that rather than     16:02:57

12    pay the debt, we go to the bankruptcy        16:03:03

13    court and we have the debt reinstated.       16:03:04

14        Q.    And did you understand that        16:03:08

15    legally, put aside whether it would have     16:03:10

16    been financially sensible, to your           16:03:12

17    understanding, was that option available     16:03:14

18    to the debtors, to EFIH at the outset of     16:03:16

19    this bankruptcy?                             16:03:20

20            MR. HOWELL:  Object to form.         16:03:22

21        A.    I'm not sure why we would do       16:03:23

22    that when we had the ability to pay the      16:03:24

23    debt as it was due.                          16:03:26

24        Q.    Right.  Nevertheless, I'd like     16:03:28

25    an answer to my question, which was did      16:03:32

| | | |
|---|---|---|
| 1 | you understand that legally, put aside | 16:03:35 |
| 2 | whether it would have been financially | 16:03:37 |
| 3 | sensible, to your understanding, was that | 16:03:39 |
| 4 | option, reinstating the debt, available | 16:03:41 |
| 5 | to the debtors, to EFIH at the outset of | 16:03:44 |
| 6 | this bankruptcy? | 16:03:47 |
| 7 | MR. HOWELL:  Object to form. | 16:03:48 |
| 8 | MR. SABIN:  Object to form. | 16:03:49 |
| 9 | A.    I have no qualification to | 16:03:50 |
| 10 | determine whether it would be legally | 16:03:52 |
| 11 | sensible to do that. | 16:03:54 |
| 12 | Q.    Okay.  I'm not asking for the | 16:03:55 |
| 13 | substance of the advice, did the debtors | 16:03:58 |
| 14 | seek legal advice as to whether | 16:04:02 |
| 15 | reinstating the debt would be legally | 16:04:04 |
| 16 | possible? | 16:04:10 |
| 17 | MR. HOWELL:  Object to form. | 16:04:11 |
| 18 | Q.    It just calls for a yes or no | 16:04:14 |
| 19 | answer. | 16:04:16 |
| 20 | A.    If you don't mind ask -- ask | 16:04:17 |
| 21 | the question again, please. | 16:04:20 |
| 22 | Q.    Sure.  I don't want you to go | 16:04:20 |
| 23 | into the substance of any legal advice | 16:04:22 |
| 24 | you gave, but I'm entitled to ask whether | 16:04:24 |
| 25 | you sought legal advice.  Did the debtors | 16:04:26 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 262

| | | |
|---|---|---|
| 1 | seek legal advice as to whether as a | 16:04:30 |
| 2 | legal matter they could reinstate the | 16:04:32 |
| 3 | first lien debt? | 16:04:35 |
| 4 | A.    The question was asked. | 16:04:37 |
| 5 | Q.    I'm sorry? | 16:04:39 |
| 6 | A.    We did ask the question. | 16:04:39 |
| 7 | Q.    Who did you ask the question | 16:04:41 |
| 8 | of? | 16:04:45 |
| 9 | A.    Of my legal counsel. | 16:04:46 |
| 10 | Q.    Kirkland & Ellis? | 16:04:49 |
| 11 | A.    Yes. | 16:04:50 |
| 12 | Q.    When did you ask that | 16:04:51 |
| 13 | question? | 16:04:54 |
| 14 | A.    I suspect probably mid to -- | 16:04:54 |
| 15 | mid-summer 2013, fall 2013. | 16:05:05 |
| 16 | Q.    And the question that you | 16:05:11 |
| 17 | asked was whether as a legal matter EFIH | 16:05:12 |
| 18 | were to file for bankruptcy could | 16:05:19 |
| 19 | reinstate the first lien debt? | 16:05:21 |
| 20 | A.    If this debt is going to | 16:05:22 |
| 21 | become due and payable and we don't have | 16:05:25 |
| 22 | the sources to pay the debt as it becomes | 16:05:28 |
| 23 | due and payable, what are our options. | 16:05:33 |
| 24 | So I didn't come up with the bankruptcy | 16:05:40 |
| 25 | term, can we reinstate the debt. | 16:05:41 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 263

| | | |
|---|---|---|
| 1 | Q.    Okay. | 16:05:46 |
| 2 | MR. ANKER:  Why don't we take | 16:06:10 |
| 3 | a break, I'm about to go to a | 16:06:11 |
| 4 | different subject. | 16:06:13 |
| 5 | THE VIDEOGRAPHER:  One moment, | 16:06:15 |
| 6 | please, watch your microphones, | 16:06:15 |
| 7 | I'll change tape at this time. | 16:06:17 |
| 8 | Here now marks the end of tape 4 of | 16:06:18 |
| 9 | the deposition of Mr. Anthony R. | 16:06:20 |
| 10 | Horton, the time is 4:06 p.m., | 16:06:22 |
| 11 | we're now off the record. | 16:06:24 |
| 12 | (A recess was taken.) | 16:06:26 |
| 13 | THE VIDEOGRAPHER:  Here now | 16:23:06 |
| 14 | marks the beginning of tape 5 of | 16:23:09 |
| 15 | the deposition of Mr. Anthony R. | 16:23:10 |
| 16 | Horton, the time is 4:23 p.m., | 16:23:13 |
| 17 | we're back on the record. | 16:23:15 |
| 18 | Q.    Mr. Horton, before we broke, | 16:23:16 |
| 19 | you were telling me the question that you | 16:23:21 |
| 20 | posed to counsel pre-petition and you | 16:23:25 |
| 21 | said if this debt is going to become due | 16:23:32 |
| 22 | and payable and we don't have the sources | 16:23:33 |
| 23 | to pay the debt as it becomes due and | 16:23:35 |
| 24 | payable, what are our options.  What did | 16:23:37 |
| 25 | counsel say to you in response your | 16:23:41 |

Page 264

```
 1     options were?                           16:23:42

 2            (Instruction not to answer.)     16:23:43

 3            MR. HOWELL:  Object,             16:23:43

 4         privileged, and I'm going to        16:23:44

 5         instruct you not to answer that     16:23:45

 6         question.                           16:23:47

 7         Q.    Mr. Horton, the debtors don't 16:23:55

 8     have any intent at trial in this matter, 16:23:57

 9     the EFIH first lien trial, to assert any 16:23:59

10     defense based on advice of counsel, do  16:24:05

11     they?                                   16:24:07

12            MR. HOWELL:  Object to           16:24:08

13         foundation.                         16:24:09

14         A.    Would you mind repeating that 16:24:10

15     question.                               16:24:11

16         Q.    Sure.                         16:24:11

17         A.    Thank you.                    16:24:12

18         Q.    Your counsel has instructed   16:24:12

19     you not to answer the last question on  16:24:16

20     the ground that it calls for            16:24:18

21     attorney/client privileged information, 16:24:20

22     and I think the law is pretty clear that 16:24:23

23     what you can't do is assert the         16:24:27

24     attorney/client privilege and then say I 16:24:30

25     took certain actions based on advice of 16:24:32
```

```
 1    counsel, because if you're going to say        16:24:34
 2    you took actions based on advice of            16:24:36
 3    counsel, I'm entitled to explore what          16:24:38
 4    that advice was.                               16:24:41
 5              And I just want to get               16:24:42
 6    confirmation in light of Mr. Howell's          16:24:43
 7    instruction that the debtors, to your          16:24:46
 8    knowledge, have no intent to assert at         16:24:49
 9    trial or on summary judgment in the EFIH       16:24:52
10    make whole litigation that they took           16:24:57
11    certain actions, including refinancing         16:24:59
12    the debt in this matter, based on advice       16:25:02
13    of legal counsel?                              16:25:05
14              MR. HOWELL:  Object to form.         16:25:06
15         A.    I would say -- I would agree        16:25:10
16    with your statement.                           16:25:12
17         Q.    Okay.  We talked earlier about      16:25:13
18    a letter that the debtors received, the        16:25:26
19    board received, of EFIH and EFH, from Mr.      16:25:30
20    Dizengoff, counsel for the PIKs, in            16:25:35
21    October of 2013, do you recall that?           16:25:37
22         A.    Yes, sir.                           16:25:41
23         Q.    There is a -- I'm going to          16:25:43
24    show you a document dated June 21 of 2013      16:25:45
25    and it's a, looks to me like a fax cover       16:25:53
```

| | | |
|---|---|---|
| 1 | sheet, but I may be mis- -- calendar | 16:25:58 |
| 2 | appointment I'm told by somebody who is | 16:26:02 |
| 3 | more technologically capable, bearing the | 16:26:04 |
| 4 | Bates stamp EFH2D 10047582, and ask | 16:26:08 |
| 5 | whether you recognize that document? | 16:26:12 |
| 6 | MR. ANKER:  It's marked as | 16:26:16 |
| 7 | Exhibit 26. | 16:26:17 |
| 8 | (Horton Exhibit 26 for | 16:26:18 |
| 9 | identification, Bates stamped EFH2D | 16:26:09 |
| 10 | 10047582.) | 16:26:09 |
| 11 | Q.    Correct? | 16:26:19 |
| 12 | A.    Yes, sir. | 16:26:19 |
| 13 | Q.    Now, this document, Mr. | 16:26:20 |
| 14 | Horton, is a calendar invitation, is it | 16:26:24 |
| 15 | not, for a meeting to occur or a | 16:26:28 |
| 16 | conference call to occur on June 21 of | 16:26:32 |
| 17 | 2013, right? | 16:26:35 |
| 18 | A.    Yes.  I apologize, I'm | 16:26:41 |
| 19 | reviewing this, all the topics.  Okay. | 16:26:43 |
| 20 | Q.    Okay.  And the subject was | 16:26:47 |
| 21 | Olympus liability management issues and | 16:26:50 |
| 22 | make whole discussion, right? | 16:26:53 |
| 23 | A.    That's the topic, subject and | 16:26:54 |
| 24 | topic. | 16:26:57 |
| 25 | Q.    And the location was K&E, | 16:26:57 |

| | | |
|---|---|---|
| 1 | which stands for Kirkland & Ellis, right? | 16:27:00 |
| 2 | A.    That's correct. | 16:27:01 |
| 3 | Q.    In New York on the 50th floor? | 16:27:02 |
| 4 | A.    That's correct. | 16:27:05 |
| 5 | Q.    And the attendees included | 16:27:05 |
| 6 | various people from the company, | 16:27:07 |
| 7 | including the general counsel, Ms. Dore, | 16:27:09 |
| 8 | right? | 16:27:13 |
| 9 | A.    On the invite, certainly. | 16:27:14 |
| 10 | Q.    Right.  As well as Mr. Wright, | 16:27:15 |
| 11 | various counsel for the debtors, | 16:27:19 |
| 12 | including Mr. Sassower, Mr. Hessler, Mr. | 16:27:23 |
| 13 | Cieri, Mr. Dempsey and others, right? | 16:27:26 |
| 14 | A.    Yes, sir. | 16:27:29 |
| 15 | Q.    And in addition, various | 16:27:30 |
| 16 | financial advisors for the debtor, | 16:27:32 |
| 17 | including Mr. Ying, right? | 16:27:35 |
| 18 | A.    Again you're testing my | 16:27:44 |
| 19 | eyesight here. | 16:27:46 |
| 20 | Q.    The third line, first entry. | 16:27:47 |
| 21 | A.    Yes, I do, I do see that, yes. | 16:27:48 |
| 22 | Q.    And in addition, the attendees | 16:27:49 |
| 23 | included various counsel and financial | 16:27:51 |
| 24 | advisors for the EFIH PIKs, right?  Mr. | 16:27:53 |
| 25 | Dizengoff? | 16:28:00 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 268

```
 1          A.    Yes.                          16:28:01
 2          Q.    Mr. Alberino?                 16:28:01
 3          A.    Yes, yes.                     16:28:03
 4          Q.    And then various people from  16:28:03
 5    Centerview, right?                        16:28:05
 6          A.    That is correct.              16:28:06
 7          Q.    And Centerview was the        16:28:06
 8    financial advisors for the PIKs, right?   16:28:08
 9          A.    That's correct.               16:28:10
10          Q.    What transpired at this       16:28:10
11    meeting on the 21st or conference -- I    16:28:14
12    guess meeting, regarding liability        16:28:17
13    management issues and make whole          16:28:20
14    discussion?                               16:28:25
15          A.    I have no idea.  I honestly do 16:28:26
16    not.                                      16:28:28
17          Q.    Do you have -- do you keep a   16:28:28
18    calendar?                                 16:28:32
19          A.    I do keep a calendar.  My     16:28:33
20    assistant keeps it for me, yes, sir.      16:28:36
21          Q.    Do you know whether you       16:28:42
22    attended this meeting?                    16:28:42
23          A.    I don't -- I don't recall.    16:28:44
24    We've had so many meetings.  I don't      16:28:47
25    recall.                                   16:28:49
```

Page 269

| | | |
|---|---|---|
| 1 | Q.    Do you recall whether -- let's | 16:28:49 |
| 2 | broaden the subject matter.  This is | 16:28:53 |
| 3 | dated June 21, 2013.  Were there | 16:28:55 |
| 4 | discussions with the PIKs, or their | 16:28:58 |
| 5 | professionals, in the summer of 2013, | 16:29:02 |
| 6 | where they were urging that EFIH be put | 16:29:04 |
| 7 | in the bankruptcy as a way to refinance | 16:29:08 |
| 8 | the EFIH debt without paying a make whole | 16:29:12 |
| 9 | or other premium? | 16:29:16 |
| 10 | MR. HOWELL:  Object to form. | 16:29:20 |
| 11 | A.    I think we had conversations | 16:29:30 |
| 12 | with the EFIH, at least their advisors | 16:29:31 |
| 13 | regarding, you know, litigation of the, | 16:29:36 |
| 14 | of the make whole.  It's more of a, you | 16:29:40 |
| 15 | know, timeline of what's the schedule for | 16:29:43 |
| 16 | -- the litigation schedule.  That's what | 16:29:47 |
| 17 | I recall. | 16:29:49 |
| 18 | Q.    Do you recall prior to the | 16:29:50 |
| 19 | October 2013 letter that we've already | 16:29:52 |
| 20 | talked about, and that is an exhibit, the | 16:29:56 |
| 21 | EFIH PIKs either orally or in writing | 16:30:00 |
| 22 | urging the company to put EFIH into | 16:30:05 |
| 23 | bankruptcy and then not pay the EFIH | 16:30:09 |
| 24 | first lien make whole? | 16:30:14 |
| 25 | A.    I do not prior to that date. | 16:30:16 |

```
 1    Even prior to, you know, reading the, the        16:30:20
 2    proposal.  I think they were under the           16:30:23
 3    expectation that we were not going to            16:30:30
 4    file EFIH for bankruptcy, at least up to         16:30:33
 5    that point.                                      16:30:37
 6         Q.    Okay.  Now, one last set of           16:30:38
 7    issues, clean up, and then we will move          16:30:41
 8    to the new subject I said we would.              16:30:43
 9              I asked you earlier whether at         16:30:46
10    any point in the first half of 2013,            16:30:49
11    January 1 to June 30, the debtors ever          16:30:53
12    formed the judgment that EFIH was               16:30:56
13    insolvent and I think you said I don't           16:30:58
14    recall our doing so.                             16:31:01
15              And we've talked a lot about           16:31:02
16    now events that occurred in the second          16:31:06
17    half of 2013 and you've told me you never       16:31:08
18    obtained, the debtors never obtained a          16:31:12
19    formal valuation.  Did the debtors in the       16:31:14
20    second half of 2013 ever reach the              16:31:17
21    conclusion that EFIH was insolvent?             16:31:20
22              MR. HOWELL:  Object to form.          16:31:23
23         A.    I don't recall us, you know,          16:31:25
24    having conversations regarding insolvency       16:31:34
25    of EFIH within the terms that you and I         16:31:37
```

| | | |
|---|---|---|
| 1 | reviewed, you know, earlier. | 16:31:42 |
| 2 | Q.    The terms that were in the | 16:31:44 |
| 3 | dealer manager agreement? | 16:31:46 |
| 4 | A.    Yes, sir. | 16:31:47 |
| 5 | Q.    I asked you the question now | 16:31:47 |
| 6 | through the end of 2012.  I think you | 16:31:49 |
| 7 | already are smiling and can anticipate my | 16:31:52 |
| 8 | next question. | 16:31:55 |
| 9 | A.    You said '13. | 16:31:56 |
| 10 | Q.    '13, you're right.  Now let's | 16:31:58 |
| 11 | fast forward from January 1, 2014 to | 16:32:00 |
| 12 | April 28, 2014.  Did the debtors in that | 16:32:05 |
| 13 | time frame ever form the conclusion that | 16:32:11 |
| 14 | EFIH was insolvent within the meaning of | 16:32:13 |
| 15 | that term as we talked about it? | 16:32:15 |
| 16 | MR. HOWELL:  Object to form. | 16:32:19 |
| 17 | A.    Again, within the terms, the | 16:32:21 |
| 18 | construct of the terms that we've talked | 16:32:25 |
| 19 | about, I'm not aware. | 16:32:27 |
| 20 | Q.    You're not aware of ever, the | 16:32:29 |
| 21 | debtors ever forming a judgment that EFIH | 16:32:32 |
| 22 | was insolvent within those terms all the | 16:32:34 |
| 23 | way up to April 28, 2014? | 16:32:36 |
| 24 | A.    That's correct. | 16:32:38 |
| 25 | Q.    Okay.  I am now going to | 16:32:39 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 272

| | | |
|---|---|---|
| 1 | change subjects.  Mr. Horton, Mr. | 16:32:47 |
| 2 | Moldovan's deposition will, it says what | 16:32:59 |
| 3 | it says, but I'll represent to you, and | 16:33:04 |
| 4 | like you, I take seriously my obligation | 16:33:06 |
| 5 | to be honest, that Mr. Moldovan testified | 16:33:10 |
| 6 | that to his knowledge there was never a | 16:33:12 |
| 7 | discussion that he or anyone else | 16:33:16 |
| 8 | representing the debtors had before the | 16:33:19 |
| 9 | fall of 2013 with any EFIH first | 16:33:23 |
| 10 | lienholder about whether if EFIH were to | 16:33:28 |
| 11 | file for bankruptcy it could refinance | 16:33:33 |
| 12 | its debt and not pay -- without paying | 16:33:36 |
| 13 | the make whole. | 16:33:39 |
| 14 | Do you have any knowledge of | 16:33:40 |
| 15 | any discussion that you had or that | 16:33:43 |
| 16 | anyone else representing the debtors, | 16:33:45 |
| 17 | employee, officer, director, legal | 16:33:48 |
| 18 | counsel, financial advisor, anyone | 16:33:52 |
| 19 | representing the debtors had before the | 16:33:54 |
| 20 | fall of 2013 with any EFIH first | 16:33:57 |
| 21 | lienholder about whether the company | 16:34:02 |
| 22 | could file for bankruptcy and then | 16:34:04 |
| 23 | refinance the first lien debt without | 16:34:08 |
| 24 | paying a make whole premium? | 16:34:10 |
| 25 | A.    No. | 16:34:13 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 273

```
1          Q.    Okay.  I asked that question          16:34:15
2     about a discussion with a first                  16:34:18
3     lienholder and I apologize, I need to be         16:34:21
4     anal compulsive and get a complete              16:34:25
5     record.                                          16:34:28
6               Same question, do you have any        16:34:28
7     knowledge of any discussions that you had        16:34:30
8     or that anyone else representing the             16:34:32
9     debtors, any employee, officer, director,        16:34:34
10    legal counsel, financial advisor, anyone         16:34:38
11    representing the debtors had before the          16:34:40
12    fall of 2013 with the EFIH first lien            16:34:42
13    trustee, or with any representative of           16:34:46
14    any EFIH first lienholder about whether          16:34:51
15    the company could file for bankruptcy and        16:34:54
16    then refinance the first lien debt              16:34:56
17    without paying a make whole premium?             16:34:58
18         A.    It seems to me at one point in        16:35:00
19    time, sometime in the summer of 2013,            16:35:15
20    there was a conversation that we had             16:35:25
21    with, and I'm doing this from memory,            16:35:30
22    Capstone, myself, Evercore, around the           16:35:33
23    make whole, the validity of the make            16:35:37
24    whole, you know, what potential options         16:35:41
25    there may be.                                    16:35:43
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 274

```
 1          Q.    That discussion, and I          16:35:43

 2   understand you can't place the exact         16:35:46

 3   date, certainly was long after all of the    16:35:48

 4   issuances and exchanges that gave rise to    16:35:52

 5   the EFIH first lien debt that was            16:35:56

 6   outstanding as of the petition date,         16:35:58

 7   right?                                       16:36:00

 8          A.    That's correct.                 16:36:00

 9          Q.    So as of the date of the        16:36:00

10   issuances or exchanges, to your             16:36:05

11   knowledge, neither you nor any other        16:36:09

12   employee, officer, director, counsel,       16:36:11

13   financial advisor, or anyone else           16:36:15

14   representing the debtors had any            16:36:17

15   conversation with any EFIH first lien       16:36:21

16   noteholder, potential investor in the       16:36:23

17   EFIH first lien notes, indenture trustee,   16:36:27

18   or representative of the EFIH first lien    16:36:30

19   noteholders about whether the company      16:36:36

20   could file for bankruptcy, that is EFIH     16:36:38

21   could file for bankruptcy, and then         16:36:41

22   refinance any EFIH first lien debt          16:36:44

23   without paying the make whole premium?      16:36:46

24          MR. HOWELL:   Object to form.        16:36:49

25          A.    We did not have any -- I'm not  16:36:50
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 275

| | | |
|---|---|---|
| 1 | aware of any conversations or questions | 16:36:55 |
| 2 | that we received from any, any debtor, | 16:36:57 |
| 3 | any investor, lender, trustee.  So there | 16:37:02 |
| 4 | was no conversation. | 16:37:06 |
| 5 | Q.    Okay.  Now, Mr. Moldovan did | 16:37:06 |
| 6 | tell me about a set of discussions that | 16:37:11 |
| 7 | occurred in 2010 with an investor in TCEH | 16:37:16 |
| 8 | debt, Oaktree.  Do you recall anything | 16:37:27 |
| 9 | about those discussions? | 16:37:31 |
| 10 | A.    I do. | 16:37:37 |
| 11 | Q.    Oaktree is a large hedge fund, | 16:37:37 |
| 12 | right? | 16:37:39 |
| 13 | A.    I don't know if I would | 16:37:40 |
| 14 | describe them as a hedge fund.  I don't | 16:37:41 |
| 15 | know what their exact -- a distressed -- | 16:37:43 |
| 16 | a distressed fund. | 16:37:47 |
| 17 | Q.    That's a better term.  And | 16:37:48 |
| 18 | they were an investor in -- someone who, | 16:37:52 |
| 19 | the witness is suggesting that to the | 16:38:09 |
| 20 | extent I am at all articulate here it is | 16:38:11 |
| 21 | because someone is here to help me. | 16:38:13 |
| 22 | A.    I didn't mean it that broadly. | 16:38:16 |
| 23 | Q.    That statement is true.  Let's | 16:38:19 |
| 24 | now get back to the record. | 16:38:24 |
| 25 | The discussion with Oaktree | 16:38:29 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 276

| | | |
|---|---|---|
| 1 | that we're referencing occurred in | 16:38:30 |
| 2 | September and October of 2010, right? | 16:38:32 |
| 3 | A.    That is correct. | 16:38:35 |
| 4 | Q.    And that was after an exchange | 16:38:37 |
| 5 | that occurred in August 2010 that gave | 16:38:40 |
| 6 | rise to about $2.18 billion in EFIH first | 16:38:44 |
| 7 | lien debt, right? | 16:38:49 |
| 8 | A.    That is correct. | 16:38:50 |
| 9 | Q.    Again, I've covered this | 16:38:56 |
| 10 | ground with Mr. Moldovan, you said he had | 16:38:58 |
| 11 | the better recollection, but I want to | 16:39:00 |
| 12 | make sure I don't get any -- I want to | 16:39:02 |
| 13 | know my facts. | 16:39:04 |
| 14 | A.    Okay. | 16:39:05 |
| 15 | Q.    Whatever you discussed with | 16:39:05 |
| 16 | Oaktree, to your knowledge, neither you | 16:39:08 |
| 17 | nor anyone else representing the debtors | 16:39:13 |
| 18 | called any of that discussion to the | 16:39:24 |
| 19 | attention of any EFIH first lien | 16:39:27 |
| 20 | noteholder or indenture trustee or | 16:39:29 |
| 21 | representative of the EFIH first liens, | 16:39:33 |
| 22 | right? | 16:39:36 |
| 23 | A.    Let me begin with we were | 16:39:36 |
| 24 | under an NDA, or confidentiality | 16:39:40 |
| 25 | agreement with Oaktree, and therefore, | 16:39:43 |

| | | |
|---|---|---|
| 1 | there would be -- any conversations that | 16:39:49 |
| 2 | we were having would be confidential. | 16:39:51 |
| 3 | Q.    Thank you.  But the answer to | 16:39:57 |
| 4 | my question is for that reason and maybe | 16:39:59 |
| 5 | others, whatever the reasons were, | 16:40:03 |
| 6 | whatever you discussed with Oaktree and | 16:40:05 |
| 7 | others at EFIH discussed -- others at the | 16:40:08 |
| 8 | debtors discussed with Oaktree about this | 16:40:10 |
| 9 | TCEH offer was not communicated to any | 16:40:14 |
| 10 | EFIH first lien noteholders or indenture | 16:40:20 |
| 11 | trustee or other representatives of the | 16:40:23 |
| 12 | EFIH first liens? | 16:40:25 |
| 13 | A.    No, sir. | 16:40:26 |
| 14 | Q.    No, it was not, right? | 16:40:27 |
| 15 | A.    No, sir, it was not. | 16:40:30 |
| 16 | MR. ANKER:  Mr. Howell, we | 16:40:34 |
| 17 | will check the production, but I | 16:40:35 |
| 18 | will say to you that I'm not aware | 16:40:37 |
| 19 | of a nondisclosure agreement, an | 16:40:38 |
| 20 | NDA that has been produced with | 16:40:43 |
| 21 | Oaktree.  We will search.  We'd ask | 16:40:46 |
| 22 | you to do the same and either point | 16:40:50 |
| 23 | to us in the production that the | 16:40:52 |
| 24 | debtors have already made or | 16:40:54 |
| 25 | produce a copy of it for us. | 16:40:56 |

| | | |
|---|---|---|
| 1 | MR. HOWELL:  Your request is | 16:40:58 |
| 2 | noted. | 16:41:00 |
| 3 | MR. HOROWITZ:  Insofar as | 16:41:07 |
| 4 | these are to some degree 30(b)(6) | 16:41:14 |
| 5 | witnesses, can I just ask have the | 16:41:16 |
| 6 | debtors done investigation and are | 16:41:18 |
| 7 | they taking a position as to what | 16:41:21 |
| 8 | limitations, what NDAs, | 16:41:23 |
| 9 | confidentiality obligations might | 16:41:25 |
| 10 | exist and what limitations they | 16:41:29 |
| 11 | might impose? | 16:41:30 |
| 12 | MR. HOWELL:  I'm not going to | 16:41:32 |
| 13 | get into that, I don't have a -- | 16:41:33 |
| 14 | MR. ANKER:  Mr. Howell, I | 16:41:35 |
| 15 | share your view that it's not | 16:41:36 |
| 16 | necessary for us to have a debate | 16:41:37 |
| 17 | of positions.  For the record, and | 16:41:39 |
| 18 | I think this will not surprise you, | 16:41:41 |
| 19 | it is the position of the EFIH | 16:41:43 |
| 20 | first liens that whatever NDA | 16:41:44 |
| 21 | obligation, whatever -- whatever | 16:41:49 |
| 22 | terms the debtors agreed to as part | 16:41:50 |
| 23 | of an NDA cannot preclude | 16:41:52 |
| 24 | production to us as a legal matter | 16:41:55 |
| 25 | in response to legal process which | 16:41:57 |

| | | |
|---|---|---|
| 1 | we have served.  But just get back | 16:41:59 |
| 2 | to me on whether you've produced it | 16:42:01 |
| 3 | or if not, you haven't produced it, | 16:42:03 |
| 4 | and if not, whether you will or | 16:42:05 |
| 5 | won't produce it. | 16:42:06 |
| 6 | MR. HOWELL:  Your request is | 16:42:08 |
| 7 | noted.  And Mr. Horowitz, I'm happy | 16:42:09 |
| 8 | to take up that issue off line with | 16:42:13 |
| 9 | you. | 16:42:15 |
| 10 | MR. HOROWITZ:  Right.  I | 16:42:16 |
| 11 | understand, just so we're clear, | 16:42:17 |
| 12 | that certain -- that it's not | 16:42:18 |
| 13 | uncommon for NDAs or | 16:42:20 |
| 14 | confidentiality agreements to | 16:42:21 |
| 15 | contain obligations that if | 16:42:23 |
| 16 | material and subject to a discovery | 16:42:24 |
| 17 | request the counterparty get | 16:42:26 |
| 18 | notice.  But if material is being | 16:42:28 |
| 19 | withheld on that ground, we need to | 16:42:32 |
| 20 | be advised of that so we can | 16:42:33 |
| 21 | understand what the status is. | 16:42:35 |
| 22 | MR. ANKER:  I join that | 16:42:37 |
| 23 | request and I understand you have | 16:42:38 |
| 24 | noted it.  Please get back to us | 16:42:40 |
| 25 | off line and we obviously reserve | 16:42:42 |

| | | |
|---|---|---|
| 1 | all rights to recall the witness | 16:42:44 |
| 2 | and you reserve all rights to | 16:42:46 |
| 3 | oppose it. | 16:42:47 |
| 4 | Q.    The discussions with Oaktree | 16:42:56 |
| 5 | that we are referencing concerned an | 16:42:58 |
| 6 | exchange offer in which holders of TCEH | 16:43:02 |
| 7 | notes issued in 2007 were offered the | 16:43:04 |
| 8 | right to exchange those notes for new | 16:43:08 |
| 9 | TCEH notes issued in 2010, right? | 16:43:11 |
| 10 | A.    New TCEH second lien notes in | 16:43:14 |
| 11 | 2010, yes, sir. | 16:43:19 |
| 12 | Q.    And there was an indenture for | 16:43:19 |
| 13 | the TCEH notes that were issued in 2007, | 16:43:23 |
| 14 | the notes that were being exchanged out | 16:43:29 |
| 15 | of? | 16:43:31 |
| 16 | A.    Right. | 16:43:32 |
| 17 | Q.    Is there a term of art, by the | 16:43:33 |
| 18 | way, like the old -- do you call it the | 16:43:35 |
| 19 | old notes and the new notes, is that the | 16:43:38 |
| 20 | way you would refer to it? | 16:43:40 |
| 21 | A.    I think that's correct. | 16:43:41 |
| 22 | Q.    Okay.  So there was an | 16:43:42 |
| 23 | indenture for the old TCEH second lien | 16:43:44 |
| 24 | notes, right? | 16:43:47 |
| 25 | A.    There was an indenture for the | 16:43:48 |

Page 281

| | | |
|---|---|---|
| 1 | old 2007 unsecured LBO notes and then | 16:43:50 |
| 2 | there was a new indenture for the 2010, | 16:43:57 |
| 3 | 2015 notes. | 16:44:04 |
| 4 | Q.    Do you recall the name of the | 16:44:06 |
| 5 | individual or individuals at Oaktree with | 16:44:13 |
| 6 | whom you and others at the debtors | 16:44:16 |
| 7 | communicated over this issue? | 16:44:19 |
| 8 | A.    My primary contact was Armen | 16:44:20 |
| 9 | Panossian. | 16:44:23 |
| 10 | (Horton Exhibit 27 for | 16:44:23 |
| 11 | identification, Bates stamped | 16:44:23 |
| 12 | EFIHMW 00038671.) | 16:44:46 |
| 13 | Q.    Let me show you a document, | 16:44:29 |
| 14 | it's an email from Mr. Panossian I think | 16:44:31 |
| 15 | addressed to both you and Mr. Keglevic | 16:44:34 |
| 16 | dated September 16, 2010.  It's been | 16:44:36 |
| 17 | marked as Horton Exhibit 27 EFIHMW | 16:44:44 |
| 18 | 00038671 and it has an attachment that | 16:44:47 |
| 19 | isn't Bates stamped. | 16:44:52 |
| 20 | Do you recognize Exhibit 27, | 16:45:09 |
| 21 | Mr. Horton? | 16:45:11 |
| 22 | A.    I don't recognize the note. | 16:45:11 |
| 23 | If you would just give me just a moment. | 16:45:13 |
| 24 | Q.    Sure, sure, sure, my | 16:45:15 |
| 25 | apologies. | 16:45:18 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 282

| | | |
|---|---|---|
| 1 | A. Okay. | 16:46:01 |
| 2 | Q. I will represent to you, and I | 16:46:03 |
| 3 | do, I am questioning you chronologically, | 16:46:05 |
| 4 | that this is the first document | 16:46:08 |
| 5 | chronologically I've seen that seems to | 16:46:10 |
| 6 | relate to this series of communications. | 16:46:13 |
| 7 | Do you recollect any prior documents | 16:46:19 |
| 8 | about, relating to the discussion with | 16:46:23 |
| 9 | Oaktree regarding this exchange? | 16:46:25 |
| 10 | A. I do not, and this document | 16:46:29 |
| 11 | that he sent, you know, again, I just | 16:46:35 |
| 12 | vaguely recollect it. | 16:46:40 |
| 13 | Q. Do you recollect any oral | 16:46:42 |
| 14 | communications with Mr. Panossian or | 16:46:45 |
| 15 | anyone else at Oaktree prior to September | 16:46:50 |
| 16 | 16, 2010 that relate to this exchange? | 16:46:53 |
| 17 | A. I would suggest that he and I | 16:46:59 |
| 18 | and Mr. Keglevic not, you know, | 16:47:02 |
| 19 | collectively is not, you know, in the | 16:47:06 |
| 20 | room at the same time, and had some | 16:47:08 |
| 21 | conversations around some key terms. | 16:47:11 |
| 22 | Q. My question is were those | 16:47:14 |
| 23 | conversations, do you recollect any | 16:47:16 |
| 24 | conversations that occurred prior to | 16:47:18 |
| 25 | September -- | 16:47:19 |

| | | |
|---|---|---|
| 1 | A.    My point was -- I apologize, I | 16:47:21 |
| 2 | interrupted, go ahead and finish. | 16:47:23 |
| 3 | Q.    Prior to September 16, 2010? | 16:47:25 |
| 4 | A.    I don't require -- I don't | 16:47:35 |
| 5 | recall specific of conversations.  I | 16:47:36 |
| 6 | would venture to guess that we had | 16:47:39 |
| 7 | conversations verbally prior to this | 16:47:41 |
| 8 | date. | 16:47:43 |
| 9 | Q.    What do you recollect about | 16:47:46 |
| 10 | those conversations? | 16:47:47 |
| 11 | A.    Levels of, you know, coupon, | 16:47:49 |
| 12 | for example, just kind of an idea, it's | 16:47:54 |
| 13 | going to be second lien, coupons, just | 16:47:56 |
| 14 | very high level generally are we in the, | 16:47:58 |
| 15 | in the ball park before we start getting | 16:48:02 |
| 16 | into these other terms. | 16:48:03 |
| 17 | Q.    Now, Mr. Panossian you will | 16:48:04 |
| 18 | see in his email dated September 16, | 16:48:08 |
| 19 | copies a variety of individuals, right? | 16:48:11 |
| 20 | A.    If you don't mind I'll turn | 16:48:19 |
| 21 | back.  Yes, I see that. | 16:48:20 |
| 22 | Q.    He addresses it to you and Mr. | 16:48:27 |
| 23 | Keglevic, but there's a bunch of ccs | 16:48:29 |
| 24 | several of whom have email addresses at | 16:48:32 |
| 25 | Oaktree and several of whom have email | 16:48:34 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 284

| | | |
|---|---|---|
| 1 | addresses at debevoise.com.  Do you see | 16:48:36 |
| 2 | that? | 16:48:40 |
| 3 | A.    Yes. | 16:48:40 |
| 4 | Q.    Did you understand during | 16:48:40 |
| 5 | these discussions that Debevoise was | 16:48:45 |
| 6 | counsel for Oaktree? | 16:48:47 |
| 7 | A.    Yes. | 16:48:54 |
| 8 | Q.    And you'll see that Mr. | 16:48:55 |
| 9 | Panossian in his email attaches clean and | 16:49:03 |
| 10 | marked up copies of various documents, | 16:49:05 |
| 11 | including a summary of key terms.  Do you | 16:49:07 |
| 12 | see that? | 16:49:10 |
| 13 | A.    I do. | 16:49:10 |
| 14 | Q.    And you got that email on the | 16:49:10 |
| 15 | 16th and the following day you forward | 16:49:17 |
| 16 | the email to Mr. Wright and Mr. Santos, | 16:49:21 |
| 17 | correct? | 16:49:25 |
| 18 | A.    That's correct. | 16:49:26 |
| 19 | Q.    And you ask -- Mr. Wright and | 16:49:30 |
| 20 | Mr. Santos are both lawyers in the EFH | 16:49:32 |
| 21 | legal department at this time, right? | 16:49:36 |
| 22 | A.    That's correct. | 16:49:37 |
| 23 | Q.    And they are today as well, | 16:49:37 |
| 24 | right? | 16:49:39 |
| 25 | A.    That's correct. | 16:49:39 |

Page 285

```
 1          Q.    And you ask them to call your       16:49:39

 2     cell and you gave your cell number?            16:49:43

 3          A.    Yes.                                 16:49:47

 4          Q.    I won't read it into the            16:49:47

 5     record.  Did you speak with Mr. Wright         16:49:48

 6     and Mr. Santos?                                 16:49:52

 7          A.    I don't recall.                     16:49:53

 8          Q.    Let's look at the one               16:49:57

 9     attachment which is the summary of key         16:49:59

10     terms?                                          16:50:03

11          A.    Yes.                                 16:50:06

12          Q.    And there's a number of them,       16:50:06

13     but I want to focus you on call               16:50:10

14     protection, which is the seventh item         16:50:13

15     down.  Do you see that?                         16:50:18

16          A.    I do.                                16:50:18

17          Q.    And it says five year              16:50:19

18     non-call.  What did you understand that       16:50:22

19     to mean?                                        16:50:23

20          A.    It was a ten year piece of         16:50:28

21     paper non-callable for five years.            16:50:29

22          Q.    Did you understand it to be        16:50:31

23     non-callable for five years, or did you       16:50:32

24     understand the proposal by Oaktree to be      16:50:34

25     callable only with payment of a make          16:50:37
```

| | | |
|---|---|---|
| 1 | whole premium? | 16:50:40 |
| 2 | A.    I'm sorry.  It's non-callable | 16:50:42 |
| 3 | for five years, okay.  So on that line | 16:50:46 |
| 4 | it's non-callable for five years.  You | 16:50:53 |
| 5 | could redeem it, my expectation would be | 16:50:55 |
| 6 | that you could redeem it within that five | 16:50:59 |
| 7 | year period subject to a make whole. | 16:51:01 |
| 8 | Q.    But if you look at the next | 16:51:03 |
| 9 | entry below, doesn't that support that | 16:51:04 |
| 10 | reading?  It says five year make whole, | 16:51:06 |
| 11 | do you see that? | 16:51:10 |
| 12 | A.    I see that.  I don't know if I | 16:51:10 |
| 13 | would say that's specifically how I would | 16:51:14 |
| 14 | have read that, that language. | 16:51:18 |
| 15 | Q.    Okay. | 16:51:19 |
| 16 | A.    All right.  Make whole, but I | 16:51:20 |
| 17 | think that's what it was implying. | 16:51:26 |
| 18 | Q.    Okay.  And then the next, and | 16:51:27 |
| 19 | then the entry on call protection says | 16:51:32 |
| 20 | five year non-call and then it says 107.5 | 16:51:35 |
| 21 | percent, 105 percent, 102.5 percent | 16:51:38 |
| 22 | thereafter.  You understand those to be, | 16:51:41 |
| 23 | the proposal to be declining call | 16:51:44 |
| 24 | premiums after the first call date, | 16:51:47 |
| 25 | right? | 16:51:48 |

| | | |
|---|---|---|
| 1 | A.    Declining redemption prices | 16:51:49 |
| 2 | after, that's what we would call it. | 16:51:51 |
| 3 | Q.    Now in the next line on make | 16:51:52 |
| 4 | whole it says five year make whole.  So | 16:51:54 |
| 5 | did you understand the proposal by Mr. | 16:51:57 |
| 6 | Panossian to be that for the first five | 16:52:03 |
| 7 | years after the exchange the new notes | 16:52:06 |
| 8 | would be callable but only if a make | 16:52:10 |
| 9 | whole were paid? | 16:52:18 |
| 10 | A.    During the first five years? | 16:52:18 |
| 11 | Q.    Yes. | 16:52:20 |
| 12 | A.    From this I can't, I can't | 16:52:20 |
| 13 | tell.  The call protection, you know, is a | 16:52:22 |
| 14 | much simpler concept, much more referenced | 16:52:25 |
| 15 | in, you know, conversation with the | 16:52:31 |
| 16 | market.  It's just something you -- | 16:52:33 |
| 17 | Q.    Right. | 16:52:37 |
| 18 | A.    Make whole is not something | 16:52:38 |
| 19 | that's, you know, a typical term that you | 16:52:40 |
| 20 | would, you know, quote and discuss in the | 16:52:42 |
| 21 | market. | 16:52:43 |
| 22 | Q.    But when you were talking and | 16:52:43 |
| 23 | discussing in the market during this | 16:52:45 |
| 24 | period, you understood a five year | 16:52:46 |
| 25 | non-call, that shorthand term, not to | 16:52:48 |

| | | |
|---|---|---|
| 1 | literally mean the notes would be | 16:52:51 |
| 2 | absolutely not callable during the five | 16:52:53 |
| 3 | years after issuance, rather, they would | 16:52:55 |
| 4 | be callable but only were they, | 16:52:58 |
| 5 | redeemable only if the company were to | 16:53:02 |
| 6 | pay a make whole premium, right? | 16:53:05 |
| 7 | MR. HOWELL:  Object to form. | 16:53:08 |
| 8 | A.    In the market there's lots of | 16:53:09 |
| 9 | different terms and conditions.  So you | 16:53:10 |
| 10 | could have a non-call five piece of paper | 16:53:13 |
| 11 | that you could optionally redeem and the | 16:53:18 |
| 12 | question is, you know, does it have a | 16:53:22 |
| 13 | make whole in it or not, you know.  It | 16:53:23 |
| 14 | would be atypical I would say to have a | 16:53:26 |
| 15 | five year non-call piece of paper without | 16:53:29 |
| 16 | a make whole. | 16:53:31 |
| 17 | Q.    It would be atypical, not | 16:53:32 |
| 18 | typical, right? | 16:53:34 |
| 19 | A.    It would be atypical, sorry. | 16:53:35 |
| 20 | I said nontypical, but atypical is more | 16:53:38 |
| 21 | correct.  My English teacher would be | 16:53:42 |
| 22 | proud of you. | 16:53:46 |
| 23 | Q.    I think you used atypical, I | 16:53:47 |
| 24 | was trying to make sure you said atypical | 16:53:49 |
| 25 | as opposed to typical because they mean | 16:53:51 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 289

| | | |
|---|---|---|
| 1 | the opposite.  That's all I was trying to | 16:53:53 |
| 2 | get to. | 16:53:55 |
| 3 | In fact, from the company's | 16:53:55 |
| 4 | perspective, having notes that were | 16:53:58 |
| 5 | redeemable within the five years but | 16:54:03 |
| 6 | you'd have to pay a make whole premium, | 16:54:06 |
| 7 | was superior to having notes that were | 16:54:09 |
| 8 | not redeemable at all during the first | 16:54:11 |
| 9 | five years, right? | 16:54:19 |
| 10 | MR. HOWELL:  Object to form | 16:54:21 |
| 11 | and foundation. | 16:54:22 |
| 12 | A.    I think in principle. | 16:54:24 |
| 13 | Q.    Because it gives the company | 16:54:26 |
| 14 | optionality, right? | 16:54:29 |
| 15 | A.    It is an option, it is an | 16:54:30 |
| 16 | optional redemption. | 16:54:32 |
| 17 | Q.    Mr. Horton -- | 16:54:39 |
| 18 | A.    By the way, these call | 16:54:40 |
| 19 | protections are non, nonstandard, so. | 16:54:41 |
| 20 | Q.    The ones described in the | 16:54:43 |
| 21 | document that is the exhibit in front of | 16:54:45 |
| 22 | you? | 16:54:46 |
| 23 | A.    Yes. | 16:54:46 |
| 24 | Q.    You've written on the | 16:54:47 |
| 25 | document, have you not, in red? | 16:54:49 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 290

| | | |
|---|---|---|
| 1 | A.    Yes. | 16:54:50 |
| 2 | Q.    Okay.  Can I see what you | 16:54:51 |
| 3 | wrote? | 16:54:53 |
| 4 | A.    Sure.  Not much. | 16:54:54 |
| 5 | Q.    The next sentence under make | 16:55:00 |
| 6 | whole says, if you could look at it, | 16:55:03 |
| 7 | "Applies to optional redemption as well | 16:55:06 |
| 8 | as any acceleration of the debt, | 16:55:08 |
| 9 | including upon a BK filing." | 16:55:10 |
| 10 | I read that correctly, right? | 16:55:13 |
| 11 | A.    That's correct. | 16:55:15 |
| 12 | Q.    And did you understand BK | 16:55:15 |
| 13 | meant bankruptcy? | 16:55:17 |
| 14 | A.    Again, in the context of this | 16:55:19 |
| 15 | document, I wouldn't have been into quite | 16:55:21 |
| 16 | this level of detail.  I'm not sure at | 16:55:25 |
| 17 | that moment in time if I thought BK meant | 16:55:30 |
| 18 | BK filing, I'll be honest with you.  I | 16:55:34 |
| 19 | just don't know what I was thinking at | 16:55:36 |
| 20 | that point in time. | 16:55:37 |
| 21 | Q.    All right.  Did you have any | 16:55:38 |
| 22 | reactions when you first saw this summary | 16:55:43 |
| 23 | of key terms? | 16:55:48 |
| 24 | A.    You know, ultimately when | 16:55:54 |
| 25 | looking at these terms, and again, I | 16:55:59 |

| | | |
|---|---|---|
| 1 | wasn't involved in all the details, but | 16:56:00 |
| 2 | look, we had some negotiating to do. | 16:56:05 |
| 3 | Q.    Okay.  Now, you emailed Mr. | 16:56:07 |
| 4 | Wright and Mr. Santos at 12:15 in the | 16:56:11 |
| 5 | morning. | 16:56:14 |
| 6 | A.    Imagine that. | 16:56:18 |
| 7 | Q.    Imagine that.  Was this a | 16:56:20 |
| 8 | significant document in your mind and a | 16:56:23 |
| 9 | significant proposal? | 16:56:25 |
| 10 | MR. HOWELL:  I should note for | 16:56:27 |
| 11 | the record that I think that when | 16:56:28 |
| 12 | we, when these documents got | 16:56:30 |
| 13 | produced the top email, the time | 16:56:32 |
| 14 | often resets to GMT time as opposed | 16:56:34 |
| 15 | to Central Time and so | 16:56:37 |
| 16 | unfortunately we can't tell for | 16:56:42 |
| 17 | sure that it's 12:15 a.m., in fact | 16:56:44 |
| 18 | it's more likely that it's 6:15 | 16:56:46 |
| 19 | p.m. | 16:56:48 |
| 20 | MR. ANKER:  Okay.  Let me | 16:56:50 |
| 21 | withdraw the question then. | 16:56:53 |
| 22 | A.    It would be standard for me to | 16:56:58 |
| 23 | be up, so. | 16:56:59 |
| 24 | Q.    Okay.  Prior to this -- well | 16:57:00 |
| 25 | let's back up.  What was your reaction to | 16:57:13 |

|   |   |   |
|---|---|---|
| 1 | the proposal or the summary from Mr. | 16:57:17 |
| 2 | Panossian? | 16:57:22 |
| 3 | MR. HOWELL:  Objection, asked | 16:57:24 |
| 4 | and answered. | 16:57:26 |
| 5 | A.    Again, I think what I said | 16:57:26 |
| 6 | before, there's a lot of negotiating to | 16:57:27 |
| 7 | be done. | 16:57:31 |
| 8 | Q.    What did you feel needed to be | 16:57:32 |
| 9 | negotiated -- | 16:57:35 |
| 10 | A.    I can't recall. | 16:57:36 |
| 11 | Q.    -- would have to be acceptable | 16:57:38 |
| 12 | to the company? | 16:57:39 |
| 13 | A.    I can't recall specifically. | 16:57:40 |
| 14 | Things that jump off the page, you know, | 16:57:44 |
| 15 | quarterly, quarterly payments, the | 16:57:46 |
| 16 | nonstandard call provisions.  This | 16:57:52 |
| 17 | applies to optional redemption as well as | 16:57:57 |
| 18 | any acceleration of the debt, that jumped | 16:57:59 |
| 19 | off the page. | 16:58:04 |
| 20 | Q.    What did you understand that | 16:58:08 |
| 21 | to mean, applies to optional redemption | 16:58:09 |
| 22 | as well as any acceleration of the debt | 16:58:11 |
| 23 | including upon a BK filing? | 16:58:13 |
| 24 | MR. HOWELL:  Objection, asked | 16:58:15 |
| 25 | and answered. | 16:58:17 |

| | |
|---|---|
| 1 | MR. ANKER:  I thought so, but | 16:58:17 |
| 2 | he just answered slightly | 16:58:18 |
| 3 | differently, so let me ask the | 16:58:21 |
| 4 | question. | 16:58:22 |
| 5 | A.    At that point, my view is it | 16:58:22 |
| 6 | was something new that I didn't fully | 16:58:25 |
| 7 | understand, and so it caught my | 16:58:28 |
| 8 | attention. | 16:58:32 |
| 9 | Q.    Did you, I am going to now | 16:58:32 |
| 10 | sort of maybe break chronological order, | 16:58:35 |
| 11 | did you come to an understanding at some | 16:58:39 |
| 12 | point of what Mr. Panossian was | 16:58:40 |
| 13 | suggesting with respect to the make | 16:58:46 |
| 14 | whole? | 16:58:47 |
| 15 | A.    I did come to an | 16:58:48 |
| 16 | understanding. | 16:58:50 |
| 17 | Q.    Okay.  What was that | 16:58:50 |
| 18 | understanding? | 16:58:53 |
| 19 | A.    That rather than having this | 16:58:53 |
| 20 | acceleration of a debt -- of the debt, | 16:58:59 |
| 21 | upon an event of -- let me say it | 16:59:03 |
| 22 | differently.  That the make whole | 16:59:10 |
| 23 | calculation, this optional redemption on | 16:59:13 |
| 24 | the make whole calculation not be just | 16:59:18 |
| 25 | contained within the optional redemption, | 16:59:24 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 294

| | | |
|---|---|---|
| 1 | but also in the event that there was an | 16:59:28 |
| 2 | acceleration in bankruptcy that that | 16:59:31 |
| 3 | event of default and acceleration into | 16:59:35 |
| 4 | bankruptcy, that the make whole | 16:59:37 |
| 5 | applicable premium would apply. | 16:59:39 |
| 6 | Q.    So let me see if I understand | 16:59:41 |
| 7 | that.  You understood Oaktree's proposal | 16:59:44 |
| 8 | to be that if TCEH filed for bankruptcy, | 16:59:48 |
| 9 | the debt would accelerate, so principal | 16:59:58 |
| 10 | would be owed, but in addition to that, | 17:00:00 |
| 11 | the make whole would be due, is that what | 17:00:06 |
| 12 | you understood their proposal to be? | 17:00:09 |
| 13 | A.    If you don't mind, restate | 17:00:10 |
| 14 | that. | 17:00:15 |
| 15 | Q.    Sure. | 17:00:15 |
| 16 | A.    It's a very complex topic. | 17:00:15 |
| 17 | Q.    Sure.  Did you understand that | 17:00:17 |
| 18 | Oaktree's proposal was that if TCEH filed | 17:00:25 |
| 19 | for bankruptcy, in addition to whatever | 17:00:28 |
| 20 | other amounts it might owe, principal, | 17:00:30 |
| 21 | for example, by reason of the bankruptcy | 17:00:32 |
| 22 | filing it would owe the make whole, the | 17:00:37 |
| 23 | applicable premium? | 17:00:39 |
| 24 | A.    Yes, my understanding was it | 17:00:40 |
| 25 | -- in the existing documents only the | 17:00:43 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 295

| | | |
|---|---|---|
| 1 | applicable premium or the make whole only | 17:00:46 |
| 2 | applied in an optional redemption section | 17:00:48 |
| 3 | of the -- of the indenture and he wanted | 17:00:53 |
| 4 | to also include that in the acceleration, | 17:00:56 |
| 5 | in the bankruptcy default and the | 17:01:02 |
| 6 | acceleration clause in the bankruptcy | 17:01:06 |
| 7 | default. | 17:01:08 |
| 8 | Q.    Right.  And which would mean | 17:01:09 |
| 9 | that the applicable premium would be owed | 17:01:10 |
| 10 | by the company if it filed for | 17:01:14 |
| 11 | bankruptcy, right? | 17:01:18 |
| 12 | A.    If we filed -- yes, when we | 17:01:19 |
| 13 | filed for bankruptcy, the debt | 17:01:22 |
| 14 | accelerated, we redeemed the debt, we | 17:01:24 |
| 15 | would owe the make whole, the applicable | 17:01:27 |
| 16 | premium. | 17:01:30 |
| 17 | Q.    Did you receive a -- actually, | 17:01:31 |
| 18 | was a draft description of notes prepared | 17:01:37 |
| 19 | by Mr. Wright describing the -- I'm | 17:01:48 |
| 20 | sorry. | 17:01:54 |
| 21 | Was a description of notes, | 17:01:54 |
| 22 | draft description of notes prepared by | 17:01:56 |
| 23 | Mr. Wright reflecting the discussions | 17:01:59 |
| 24 | with Mr. Panossian? | 17:02:00 |
| 25 | MR. HOWELL:  Object to | 17:02:03 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 296

| | | |
|---|---|---|
| 1 | foundation. | 17:02:04 |
| 2 | A.    I don't know. | 17:02:05 |
| 3 | Q.    Mr. Horton, I think, let me | 17:02:05 |
| 4 | ask you a question about an answer you | 17:02:26 |
| 5 | gave a moment ago.  I asked you what did | 17:02:28 |
| 6 | you understand Mr. Panossian's proposal | 17:02:30 |
| 7 | to be, and you said if we filed, yes, | 17:02:32 |
| 8 | when we filed for bankruptcy the debt | 17:02:37 |
| 9 | accelerated.  If we redeemed the debt we | 17:02:39 |
| 10 | would owe the make whole, the applicable | 17:02:41 |
| 11 | premium. | 17:02:43 |
| 12 | What do you mean by if we | 17:02:48 |
| 13 | redeemed the debt? | 17:02:49 |
| 14 | MR. HOWELL:  Object to form, | 17:02:50 |
| 15 | mischaracterizes his testimony. | 17:02:52 |
| 16 | A.    If we redeemed the debt under | 17:02:54 |
| 17 | the optional redemption, we would owe | 17:02:58 |
| 18 | the, the applicable premium.  If the debt | 17:03:03 |
| 19 | accelerated, then we would be required to | 17:03:10 |
| 20 | do, the debt would become due and payable | 17:03:20 |
| 21 | and the make whole would be also due | 17:03:22 |
| 22 | applicable premium, that's what I meant. | 17:03:26 |
| 23 | Q.    Okay.  I misunderstood your | 17:03:28 |
| 24 | prior answer and that's helpful. | 17:03:30 |
| 25 | Now, how did you obtain that | 17:03:32 |

| | | |
|---|---|---|
| 1 | understanding of Oaktree's position or | 17:03:44 |
| 2 | proposal? | 17:03:46 |
| 3 | A.    One is I contacted my team | 17:03:47 |
| 4 | directly, Mr. Moldovan, and asked him how | 17:03:56 |
| 5 | -- you know, what does this actually -- | 17:04:04 |
| 6 | what is he asking for, Mr. Moldovan went | 17:04:07 |
| 7 | and I'm assuming he spoke to legal | 17:04:15 |
| 8 | counsel and spoke to, and actually read | 17:04:17 |
| 9 | the indenture.  One, again, I didn't know | 17:04:21 |
| 10 | if he had already had this or not in the | 17:04:24 |
| 11 | language.  So one thing I wanted to | 17:04:27 |
| 12 | verify, you know, was it indeed new, I | 17:04:30 |
| 13 | suspected that it was new. | 17:04:35 |
| 14 | Q.    But you didn't know? | 17:04:37 |
| 15 | A.    But I wasn't -- I wasn't sure. | 17:04:38 |
| 16 | And so I had my team research that, they | 17:04:44 |
| 17 | came back and said yes, it is a -- this | 17:04:46 |
| 18 | would be a new add to the indenture. | 17:04:49 |
| 19 | Q.    There is in the documents you | 17:04:59 |
| 20 | produced, or your company produced, a | 17:05:00 |
| 21 | markup of that attachment. | 17:05:10 |
| 22 | MR. ANKER:  Let me mark this | 17:05:14 |
| 23 | as Exhibit number 28.  It bears | 17:05:15 |
| 24 | Bates stamp EFIHMW 00036448. | 17:05:19 |
| 25 | (Horton Exhibit 28 for | 17:05:19 |

```
 1          identification, Bates stamped          17:05:20

 2          EFIHMW 00036448.)                        17:05:21

 3     Q.    Now, Mr. Horton, I will               17:05:33

 4   represent to you that I'm told by people      17:05:35

 5   who understand this stuff, not me, that       17:05:37

 6   there's metadata associated with this         17:05:38

 7   document that indicates it was produced       17:05:41

 8   from your files.                              17:05:43

 9     A.    My files meaning?  You think          17:05:49

10   this is my handwriting?                        17:05:53

11     Q.    I don't know if handwriting --        17:05:54

12     A.    I wish my handwriting was like        17:05:56

13   that.                                          17:05:57

14     Q.    We believe it was produced by         17:05:57

15   your files.  Whose handwriting is this,        17:06:00

16   sir?                                           17:06:02

17          MR. HOWELL:  Object to                  17:06:03

18          foundation.                             17:06:04

19     A.    I have no idea.                         17:06:05

20     Q.    Do you recognize the document          17:06:06

21   that's been handed to you as Exhibit 28?       17:06:08

22     A.    No, I do not.                           17:06:09

23     Q.    Okay.  Let's look at the make          17:06:15

24   whole provision and what's written.            17:06:17

25   Someone has put a box around "as well as       17:06:19
```

| | |
|---|---|
| 1 | any acceleration of the debt," and drawn | 17:06:22 |
| 2 | an arrow to the left, "could be a | 17:06:25 |
| 3 | precedent to sponsors."  Do you see that | 17:06:27 |
| 4 | handwriting? | 17:06:31 |
| 5 | A.    I do. | 17:06:31 |
| 6 | Q.    Do you recall any discussion | 17:06:31 |
| 7 | about whether this proposal might be a | 17:06:33 |
| 8 | precedent to the sponsors? | 17:06:35 |
| 9 | A.    I don't know if it's with this | 17:06:37 |
| 10 | individual, but I did have, I did have | 17:06:41 |
| 11 | discussions as to whether or not this | 17:06:45 |
| 12 | could be a precedent.  Was it | 17:06:47 |
| 13 | specifically to the sponsors, no, it was | 17:06:49 |
| 14 | a broader conversation. | 17:06:52 |
| 15 | Q.    Was it a broader -- was it a | 17:06:53 |
| 16 | conversation about whether this would be | 17:06:57 |
| 17 | a precedent for the EFH group of debtors | 17:06:58 |
| 18 | or was it a discussion about whether it | 17:07:04 |
| 19 | could be a precedent for the sponsors | 17:07:06 |
| 20 | including their ownership of other | 17:07:09 |
| 21 | portfolio companies? | 17:07:12 |
| 22 | A.    I don't know the gist of it's | 17:07:13 |
| 23 | a precedent issue.  I had conversations | 17:07:25 |
| 24 | with one of the sponsors, lead capital | 17:07:26 |
| 25 | markets, what I considered to be, who I | 17:07:33 |

| | | |
|---|---|---|
| 1 | consider to be an expert in the -- we had | 17:07:34 |
| 2 | conversations regarding this ask and | 17:07:39 |
| 3 | ultimately the response was this is a | 17:07:46 |
| 4 | market precedent issue.  I also talked to | 17:07:49 |
| 5 | some of my bulge bracket firms and asked | 17:07:52 |
| 6 | them if they had seen these kind of, this | 17:07:55 |
| 7 | kind of language in indentures and they | 17:07:58 |
| 8 | had replied no, and so it was a market -- | 17:08:01 |
| 9 | I did just a couple of different tests, I | 17:08:06 |
| 10 | -- and Mr. Moldovan probably expressed to | 17:08:09 |
| 11 | you guys that he spoke with legal counsel | 17:08:13 |
| 12 | and it was a market -- it was a market | 17:08:16 |
| 13 | precedent issue amongst, from many | 17:08:20 |
| 14 | different angles, so. | 17:08:24 |
| 15 |     Q.   What did legal counsel say to | 17:08:26 |
| 16 | Mr. Moldovan? | 17:08:34 |
| 17 |         (Instruction not to answer.) | 17:08:37 |
| 18 |     MR. HOWELL:  Object to | 17:08:37 |
| 19 |     foundation and object to privilege | 17:08:38 |
| 20 |     to the -- | 17:08:42 |
| 21 |     MR. ANKER:  That's fine, Mr. | 17:08:43 |
| 22 |     Howell, but then I'm going to move | 17:08:45 |
| 23 |     to strike any answer and any | 17:08:46 |
| 24 |     testimony about what legal counsel | 17:08:47 |
| 25 |     said and what advice was given. | 17:08:49 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 301

```
 1          You can't have it both ways.  So        17:08:51

 2          I'm going to ask the question again      17:08:53

 3          and you can direct him to -- you         17:08:54

 4          can direct him not to answer or you      17:08:57

 5          cannot.  You can make your choice.       17:08:58

 6          Q.    Please tell me what legal          17:09:01

 7     advice counsel gave to Mr. Moldovan to        17:09:02

 8     your knowledge?                               17:09:06

 9          MR. HOWELL:  Okay, I instruct            17:09:07

10          you not to answer if you in fact         17:09:10

11          know any legal advice that was           17:09:13

12          provided to Mr. Moldovan, which          17:09:14

13          hasn't been established, then I          17:09:16

14          instruct you not to provide any          17:09:18

15          advice from legal counsel.               17:09:19

16          A.    I don't know.                      17:09:21

17          Q.    Okay.  You'll see in the           17:09:22

18     right-hand columns the same person           17:09:26

19     presumably wrote "What does this do to        17:09:29

20     them in the latter case?"  Did I read         17:09:31

21     that right?                                   17:09:35

22          A.    I believe you did.                 17:09:36

23          Q.    Is the them there the              17:09:37

24     sponsors?                                     17:09:41

25          A.    I have no idea what this           17:09:41
```

| | | |
|---|---|---|
| 1 | person is asking, stating. | 17:09:44 |
| 2 | Q.    Did you ever have a | 17:09:46 |
| 3 | conversation with Mr. Ley about Oaktree's | 17:09:47 |
| 4 | proposal? | 17:09:52 |
| 5 | A.    I don't recall having any | 17:09:59 |
| 6 | conversation with Mr. Ley about the | 17:10:01 |
| 7 | proposal. | 17:10:02 |
| 8 | Q.    Now you were after -- let me | 17:10:03 |
| 9 | show you as Exhibit number 29 a document | 17:10:25 |
| 10 | bearing the Bates stamp EFIHMW 00053072 | 17:10:27 |
| 11 | through 73. | 17:10:33 |
| 12 | (Horton Exhibit 29 for | 17:10:34 |
| 13 | identification, Bates stamped | 17:10:29 |
| 14 | EFIHMW 00053072 through 00053073.) | 17:10:29 |
| 15 | Q.    Now Mr. Horton, you'll see | 17:10:38 |
| 16 | that this is an email from you initially | 17:10:40 |
| 17 | to Mr. Wright on September 16, and then | 17:10:44 |
| 18 | you sent an email on the 17th to Mr. | 17:10:48 |
| 19 | Keglevic, correct? | 17:10:53 |
| 20 | A.    Yes. | 17:10:54 |
| 21 | Q.    And in fact, you extracted | 17:11:16 |
| 22 | from the prior document, the term sheet | 17:11:20 |
| 23 | prepared by Oaktree, the key terms, | 17:11:22 |
| 24 | right? | 17:11:27 |
| 25 | A.    These look consistent with the | 17:11:33 |

Page 303

| | |
|---|---|
| 1   previous document that you and I | 17:11:34 |
| 2   discussed. | 17:11:36 |
| 3        Q.    You initially sent this to Mr. | 17:11:36 |
| 4   Keglevic, cc Mr. Wright, and Mr. Keglevic | 17:11:44 |
| 5   wrote back, "sadly, all seem too much." | 17:11:48 |
| 6   Do you see that? | 17:11:52 |
| 7        A.    I do see that. | 17:11:53 |
| 8        Q.    What did you understand Mr. | 17:11:54 |
| 9   Keglevic to be saying? | 17:12:00 |
| 10       A.    That Mr. Panossian was asking | 17:12:01 |
| 11   for too much. | 17:12:06 |
| 12       Q.    What was too much? | 17:12:06 |
| 13       A.    And there's a negotiation and | 17:12:08 |
| 14   I can't tell you specifically off recall, | 17:12:14 |
| 15   but in essence, the key terms that Mr. | 17:12:17 |
| 16   Panossian were -- was looking for or | 17:12:20 |
| 17   asked for is too much.  And I've outlined | 17:12:25 |
| 18   just a couple for you. | 17:12:31 |
| 19       Q.    In your testimony earlier? | 17:12:33 |
| 20       A.    Earlier, quarterly payments, | 17:12:35 |
| 21   the nonstandard call protection, this new | 17:12:38 |
| 22   ask on the make whole. | 17:12:40 |
| 23       Q.    You wrote to Mr. Horton on the | 17:12:49 |
| 24   17th, it says at 4:28 a.m. "yep, we may | 17:12:52 |
| 25   be able to beat him back, I told Moldovan | 17:12:58 |

| | | |
|---|---|---|
| 1 | that I couldn't figure out the angle but | 17:13:01 |
| 2 | I felt like they would want a controlling | 17:13:03 |
| 3 | position." | 17:13:05 |
| 4 | I read that correctly, right? | 17:13:05 |
| 5 | A.    Not really.  It was from me to | 17:13:08 |
| 6 | -- from me to Mr. Keglevic. | 17:13:10 |
| 7 | Q.    I thought I said that.  If I | 17:13:14 |
| 8 | didn't, I apologize. | 17:13:16 |
| 9 | A.    That's okay, I just want to be | 17:13:18 |
| 10 | accurate. | 17:13:20 |
| 11 | Q.    What did you mean by we may be | 17:13:20 |
| 12 | able to beat him back? | 17:13:22 |
| 13 | A.    Negotiate more favorable terms | 17:13:28 |
| 14 | for us, so. | 17:13:30 |
| 15 | Q.    Okay.  And Mr. Wright prepared | 17:13:32 |
| 16 | on the 18th, and I'm happy to show you, a | 17:13:42 |
| 17 | description of the notes -- why don't we | 17:13:45 |
| 18 | show the witness that document. | 17:13:49 |
| 19 | MR. ANKER:  This will be | 17:13:52 |
| 20 | Exhibit 30. | 17:13:54 |
| 21 | (Horton Exhibit 30 for | 17:13:55 |
| 22 | identification, Bates stamped | 17:13:55 |
| 23 | EFIHMW 00087752 through 00087841.) | 17:14:12 |
| 24 | Q.    It goes from EFIHMW 00087752 | 17:14:09 |
| 25 | to 7841.  The physical copy I'm handing | 17:14:15 |

| | | |
|---|---|---|
| 1 | you, Mr. Horton, shows the cover email as | 17:14:21 |
| 2 | the last document rather than the first, | 17:14:24 |
| 3 | but you'll see the Bates numbers. | 17:14:26 |
| 4 | A.    You have your finger here for | 17:14:29 |
| 5 | a reason I'm assuming. | 17:14:32 |
| 6 | Q.    I wanted to show you that the | 17:14:33 |
| 7 | email -- | 17:14:36 |
| 8 | A.    No, no, that's perfect, I | 17:14:36 |
| 9 | appreciate that. | 17:14:38 |
| 10 | Q.    Now, remind me who Mr. Wright | 17:14:41 |
| 11 | is? | 17:14:44 |
| 12 | A.    He is our deputy general | 17:14:44 |
| 13 | counsel, ours being EFH. | 17:14:46 |
| 14 | Q.    Well regarded, you regard him | 17:14:51 |
| 15 | well? | 17:14:54 |
| 16 | A.    He's in the room. | 17:14:55 |
| 17 | Q.    You can still provide -- I'm | 17:14:57 |
| 18 | sure you would still provide perfectly | 17:14:59 |
| 19 | honest testimony. | 17:15:01 |
| 20 | A.    He is very well regarded by | 17:15:02 |
| 21 | me. | 17:15:04 |
| 22 | Q.    And what he's doing -- I take | 17:15:04 |
| 23 | it therefore you would assume that his | 17:15:07 |
| 24 | description of the notes would accurately | 17:15:10 |
| 25 | reflect the conversations that had | 17:15:13 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | occurred? | 17:15:14 |
| 2 | A.    Unless there's a | 17:15:18 |
| 3 | miscommunication on our part, or, just in | 17:15:20 |
| 4 | general, but yes, I would think so. | 17:15:22 |
| 5 | Q.    You'll see he says "Armen," so | 17:15:23 |
| 6 | he's sending this email outside of EFIH, | 17:15:26 |
| 7 | or EFH, "attached are revised drafts of | 17:15:29 |
| 8 | the description and notes that we believe | 17:15:33 |
| 9 | reflects the business discussion to | 17:15:35 |
| 10 | date."  Do you see that? | 17:15:37 |
| 11 | A.    Yes. | 17:15:38 |
| 12 | Q.    And now if I could ask you to | 17:15:43 |
| 13 | turn to page bearing the Bates stamp last | 17:15:45 |
| 14 | three digits are 795, it's about halfway | 17:15:53 |
| 15 | through the document. | 17:15:57 |
| 16 | A.    Okay. | 17:16:03 |
| 17 | Q.    And can you go to the very | 17:16:04 |
| 18 | bottom of the page.  And I want to focus | 17:16:06 |
| 19 | you on the second sentence: | 17:16:12 |
| 20 | Notwithstanding the foregoing, in the | 17:16:15 |
| 21 | case of an event of default arising under | 17:16:18 |
| 22 | clause 6 of the first paragraph of this | 17:16:21 |
| 23 | section, the principal cap A Applicable | 17:16:22 |
| 24 | cap P Premium, if any, interest and any | 17:16:27 |
| 25 | other monetary obligations on all | 17:16:29 |

| | | |
|---|---|---|
| 1 | outstanding notes will become due and | 17:16:31 |
| 2 | payable without further action or notice. | 17:16:33 |
| 3 | I read that correctly, did I | 17:16:35 |
| 4 | not? | 17:16:37 |
| 5 | A.    My apologies, where are you? | 17:16:46 |
| 6 | Q.    Page 795 at the bottom right. | 17:16:48 |
| 7 | A.    Yes. | 17:16:50 |
| 8 | Q.    The very last paragraph that | 17:16:51 |
| 9 | then carries over to the next page? | 17:16:52 |
| 10 | A.    Okay, I see you're starting | 17:16:54 |
| 11 | with the paragraph that begins "upon the | 17:16:56 |
| 12 | effectiveness." | 17:16:58 |
| 13 | Q.    Correct.  And then go to the | 17:16:59 |
| 14 | second sentence.  Let me read it again. | 17:17:01 |
| 15 | A.    Okay. | 17:17:04 |
| 16 | Q.    "Notwithstanding the | 17:17:05 |
| 17 | foregoing, in the case of an event of | 17:17:06 |
| 18 | default arising under clause 6 of the | 17:17:08 |
| 19 | first paragraph of this section, the | 17:17:10 |
| 20 | principal Applicable Premium, if any, | 17:17:11 |
| 21 | interest in any other monetary | 17:17:14 |
| 22 | obligations on all outstanding notes will | 17:17:15 |
| 23 | become due and payable without further | 17:17:18 |
| 24 | action or notice." | 17:17:20 |
| 25 | I read that correctly, did I | 17:17:21 |

| | | |
|---|---|---|
| 1 | not? | 17:17:22 |
| 2 | A.    I believe you did. | 17:17:22 |
| 3 | Q.    And paragraph 6, if you look | 17:17:23 |
| 4 | earlier, is an event of default by reason | 17:17:26 |
| 5 | of a bankruptcy filing or insolvency, | 17:17:28 |
| 6 | right? | 17:17:31 |
| 7 | A.    That's correct. | 17:17:32 |
| 8 | Q.    So it appears to me that Mr. | 17:17:32 |
| 9 | Wright is sending to Oaktree, reflecting | 17:17:38 |
| 10 | the business discussions to date, a | 17:17:45 |
| 11 | description of the notes that would | 17:17:48 |
| 12 | provide that the applicable premium would | 17:17:50 |
| 13 | become due and payable upon a bankruptcy | 17:17:56 |
| 14 | filing? | 17:17:58 |
| 15 | MR. HOWELL:  There's not a | 17:18:01 |
| 16 | question pending. | 17:18:02 |
| 17 | Q.    Am I -- do you share -- is | 17:18:03 |
| 18 | that a right reading? | 17:18:05 |
| 19 | MR. HOWELL:  Object to | 17:18:07 |
| 20 | foundation. | 17:18:08 |
| 21 | A.    Would you mind asking the | 17:18:08 |
| 22 | question -- | 17:18:09 |
| 23 | Q.    Sure. | 17:18:10 |
| 24 | A.    -- again, between the dialogue | 17:18:10 |
| 25 | here I've -- | 17:18:12 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 309

```
 1        Q.     Sure.  Let me ask the question          17:18:12
 2    a different way.  I take it the debtors            17:18:14
 3    were trying to have a fruitful                     17:18:18
 4    conversation with Oaktree, right?                  17:18:20
 5        A.     We were -- we were in                   17:18:22
 6    negotiations with Oaktree.                         17:18:24
 7        Q.     Right.  And you'll see that             17:18:26
 8    Mr. Wright in his cover email says, I'm            17:18:28
 9    sending you, Armen, revised drafts that            17:18:32
10    we believe reflects the business                   17:18:35
11    discussions to date, right?                        17:18:37
12        A.     He did say that in his email.           17:18:37
13        Q.     And unless he made an error,            17:18:39
14    which is not his norm, because you've              17:18:41
15    told me he's very good, he did set forth           17:18:43
16    what had been the business discussions to          17:18:46
17    date, right?                                       17:18:48
18        A.     He is --                                17:18:49
19        MR. HOWELL:  Object to                         17:18:50
20        foundation.  Sorry, go ahead.                  17:18:51
21        A.     He is, as I said before, a              17:18:53
22    very highly regarded individual.  He's             17:18:55
23    also a human being, so he could have made          17:18:59
24    an error here.                                      17:19:01
25        Q.     We all can.                             17:19:01
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 310

1       A.      Okay.                                    17:19:03

2       Q.      But you'll note that in this             17:19:04

3    particular sentence I've directed you to            17:19:06

4    on page 795 --                                      17:19:07

5       A.      And I would note it's -- that            17:19:09

6    applicable premiums in parenthetically,             17:19:11

7    it's in brackets a little further up, so            17:19:15

8    I'm sure it's just an error, but maybe,             17:19:19

9    maybe not.  Maybe not.                              17:19:21

10       Q.      Well, at the point of this              17:19:23

11   discussion had the debtors ruled out the            17:19:24

12   possibility of agreeing to this                     17:19:26

13   provision?                                          17:19:28

14       A.      I don't know the exact date             17:19:29

15   when we went back to Armen and said no,             17:19:31

16   we're not doing this.  But we did go back           17:19:34

17   to Armen and said no, and then ultimately           17:19:36

18   in the, you know, indenture, you know, it           17:19:38

19   was -- it was struck, so.                           17:19:43

20       Q.      And the -- you don't know the           17:19:45

21   exact date you went back to Armen and               17:19:49

22   said no, we're not doing this.  The this            17:19:52

23   in this sentence is adding the language             17:19:54

24   that Mr. Wright has included on page 795            17:19:59

25   of the last exhibit, right?                         17:20:05

| | | |
|---|---|---|
| 1 | A.    We are not including -- we're | 17:20:06 |
| 2 | saying no to your ask to include the make | 17:20:13 |
| 3 | whole language in the bankruptcy section. | 17:20:15 |
| 4 | Q.    Okay.  And that language -- | 17:20:17 |
| 5 | A.    And I'm speaking from the | 17:20:23 |
| 6 | chair of the treasurer, not being highly | 17:20:24 |
| 7 | technical in my response. | 17:20:27 |
| 8 | Q.    Right, right.  You understood | 17:20:28 |
| 9 | that language, I'm just looking at it, | 17:20:30 |
| 10 | would have made the applicable premium | 17:20:32 |
| 11 | due and payable without further action or | 17:20:35 |
| 12 | notice upon a bankruptcy filing, right? | 17:20:38 |
| 13 | A.    Are we going back to that | 17:20:41 |
| 14 | section? | 17:20:46 |
| 15 | Q.    Sure.  Take a look at page 795 | 17:20:46 |
| 16 | if you will. | 17:20:51 |
| 17 | A.    Honestly, without going | 17:20:53 |
| 18 | through all the other provisions here, | 17:20:55 |
| 19 | taking this one paragraph and for the | 17:20:58 |
| 20 | treasurer to say yes to your question, | 17:21:01 |
| 21 | that would be irresponsible on my part. | 17:21:05 |
| 22 | I would never do that. | 17:21:08 |
| 23 | Q.    Well I wouldn't want you to be | 17:21:09 |
| 24 | irresponsible.  But the language does | 17:21:14 |
| 25 | say, does it not, "in the case of an | 17:21:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 312

```
 1    event of default arising under clause 6,          17:21:18
 2    the principal applicable premium, if any,         17:21:21
 3    interest and any other monetary                   17:21:24
 4    obligations will become due and payable           17:21:26
 5    without further action or notice"?               17:21:28
 6             That's what you understood              17:21:29
 7    Oaktree wanted, right?                            17:21:31
 8        A.    You're asking me to give you a         17:21:35
 9    legal interpretation and you did in the           17:21:37
10    previous question about whether or not in         17:21:38
11    the event of a bankruptcy given this              17:21:40
12    language the way this is written, that            17:21:43
13    the applicable premium would be -- would          17:21:45
14    be due and I, and I can't answer that.            17:21:48
15        Q.    Okay, I apologize.  I'm not            17:21:52
16    asking you to give me a legal opinion.            17:21:55
17        A.    That's what it would require.          17:21:56
18        Q.    Was it your understanding that         17:21:57
19    Oaktree was asking for a provision that           17:21:59
20    would have made the applicable premium            17:22:05
21    due upon a filing for bankruptcy?  Was it         17:22:10
22    your understanding?                               17:22:15
23        A.    Yeah, again, moving away from          17:22:15
24    this document.                                    17:22:18
25        Q.    Right.                                  17:22:18
```

| | | |
|---|---|---|
| 1 | A.    My understanding is that Armen | 17:22:19 |
| 2 | was asking for a change to the indentures | 17:22:23 |
| 3 | such that the applicable premium would | 17:22:27 |
| 4 | apply in the event of a bankruptcy, an | 17:22:28 |
| 5 | acceleration in event of a bankruptcy. | 17:22:33 |
| 6 | Q.    Okay. | 17:22:35 |
| 7 | A.    Again, I just did not want to | 17:22:37 |
| 8 | interpret what this language said | 17:22:39 |
| 9 | specifically. | 17:22:41 |
| 10 | Q.    On the -- let me show you the | 17:22:41 |
| 11 | next document.  On the 19th -- let me | 17:22:46 |
| 12 | move ahead, try to make this a little | 17:23:18 |
| 13 | faster.  On the -- I want to show you a | 17:23:20 |
| 14 | document, an email exchange, it's one | 17:23:23 |
| 15 | page bearing the Bates stamp 3 -- EFIHMW | 17:23:29 |
| 16 | 00038664. | 17:23:33 |
| 17 | (Horton Exhibit 31 for | 17:23:35 |
| 18 | identification, Bates stamped | 17:23:32 |
| 19 | EFIHMW 00038664.) | 17:23:32 |
| 20 | Q.    Mr. Horton, this is an email | 17:23:55 |
| 21 | exchange back and forth between you and | 17:23:57 |
| 22 | Mr. Keglevic, right? | 17:24:00 |
| 23 | A.    Yes, sir, it is indeed. | 17:24:02 |
| 24 | Q.    Okay.  And the very first | 17:24:07 |
| 25 | email from Mr. Keglevic to you that | 17:24:10 |

| | | |
|---|---|---|
| 1 | begins the exchange says "call Jack and | 17:24:11 |
| 2 | get his thoughts on make whole."  Do you | 17:24:15 |
| 3 | see that, bottom of the page? | 17:24:17 |
| 4 | A.    Yes, sir, I do. | 17:24:19 |
| 5 | Q.    And who was Jack? | 17:24:20 |
| 6 | A.    Jack Weingart with TPG capital | 17:24:21 |
| 7 | markets lead that I referenced earlier in | 17:24:27 |
| 8 | my testimony. | 17:24:29 |
| 9 | Q.    One of the sponsors of the | 17:24:30 |
| 10 | debtors, right? | 17:24:32 |
| 11 | A.    TPG was one of the sponsors of | 17:24:33 |
| 12 | the debtor. | 17:24:37 |
| 13 | Q.    And did you speak to Jack? | 17:24:37 |
| 14 | A.    I did not.  As you can see, | 17:24:42 |
| 15 | he's in a meeting now, I'll let you know | 17:24:45 |
| 16 | as soon as I speak to him. | 17:24:47 |
| 17 | Q.    And then Mr. Keglevic writes | 17:24:48 |
| 18 | back, "We need to send message that we | 17:24:50 |
| 19 | can't introduce bankruptcy protections, | 17:24:55 |
| 20 | acceleration clauses, horrible precedent, | 17:24:57 |
| 21 | etc."  Do you see that? | 17:25:01 |
| 22 | A.    I do see that. | 17:25:05 |
| 23 | Q.    And then you responded, "will | 17:25:06 |
| 24 | do.  Yes, was fearful of precedent."  Do | 17:25:09 |
| 25 | you see that? | 17:25:11 |

| | |
|---|---|
| 1     A.   Yes. | 17:25:11 |
| 2     Q.   And then he says "just | 17:25:12 |
| 3 introducing the B word in a public | 17:25:13 |
| 4 instrument is a nonstarter," do you see | 17:25:15 |
| 5 that? | 17:25:17 |
| 6     A.   I do. | 17:25:17 |
| 7     Q.   The B word was bankruptcy, | 17:25:18 |
| 8 right? | 17:25:20 |
| 9     A.   That's the way I read it. | 17:25:21 |
| 10     Q.   Okay.  You've known Mr. | 17:25:23 |
| 11 Keglevic a long time, right? | 17:25:28 |
| 12     A.   I've known him for six, seven | 17:25:29 |
| 13 years, yes, sir. | 17:25:32 |
| 14     Q.   And as of the time of this | 17:25:33 |
| 15 conversation in 2010, you knew him for | 17:25:34 |
| 16 how many years? | 17:25:38 |
| 17     A.   About a year and a half or so, | 17:25:43 |
| 18 maybe two. | 17:25:44 |
| 19     Q.   Did you have an understanding | 17:25:45 |
| 20 of why he thought introducing the B word | 17:25:45 |
| 21 in any public instrument was a | 17:25:48 |
| 22 nonstarter? | 17:25:51 |
| 23     A.   I did -- I did not.  I didn't | 17:25:52 |
| 24 -- again, this is an email.  I haven't -- | 17:25:55 |
| 25 I did not. | 17:25:58 |

| | |
|---|---|
| 1 | Q.    Did you ask him why he | 17:25:59 |
| 2 | considered it a nonstarter? | 17:26:01 |
| 3 | A.    No, I didn't. | 17:26:05 |
| 4 | Q.    Did you have any surmise as to | 17:26:06 |
| 5 | why he thought it would be a nonstarter? | 17:26:08 |
| 6 | A.    No -- no, I did not. | 17:26:10 |
| 7 | Q.    It didn't dawn on you that | 17:26:14 |
| 8 | maybe he was concerned that referencing | 17:26:17 |
| 9 | bankruptcy would spook potential | 17:26:24 |
| 10 | investors in the market? | 17:26:27 |
| 11 | A.    My -- my belief is that he | 17:26:29 |
| 12 | didn't understand that the word | 17:26:37 |
| 13 | bankruptcy was already in -- in the -- in | 17:26:39 |
| 14 | the indenture and, you know, and in what | 17:26:42 |
| 15 | context we were actually using the word | 17:26:46 |
| 16 | bankruptcy.  So it was just my -- my view | 17:26:49 |
| 17 | that it was a misunderstanding on his | 17:26:52 |
| 18 | part of exactly what we were talking | 17:26:56 |
| 19 | about.  But look, that's -- that's just | 17:26:58 |
| 20 | my read. | 17:27:05 |
| 21 | Q.    And in fact, you wrote back, | 17:27:06 |
| 22 | after he said just introducing the B word | 17:27:09 |
| 23 | in a public instrument is a nonstarter, | 17:27:11 |
| 24 | you wrote back, "Hear you.  But it is | 17:27:13 |
| 25 | really discrete and applies to default | 17:27:17 |

| | |
|---|---|
| 1 | language.  I don't think B is mentioned, | 17:27:19 |
| 2 | but I will double check," right? | 17:27:22 |
| 3 | A.   Yes. | 17:27:25 |
| 4 | Q.   What did you mean by "hear | 17:27:25 |
| 5 | you, but it is really discrete and | 17:27:27 |
| 6 | applies to default language"? | 17:27:29 |
| 7 | A.   Look, I think what I meant at | 17:27:31 |
| 8 | that point in time, and it's been a long | 17:27:34 |
| 9 | time ago, is, you know, look, we're not | 17:27:36 |
| 10 | calling out we're about to file | 17:27:38 |
| 11 | bankruptcy, it's in -- it's in the | 17:27:40 |
| 12 | indenture.  So the reference to the | 17:27:42 |
| 13 | bankruptcy was in the indenture.  It's | 17:27:44 |
| 14 | not boy, we're going to put a big risk | 17:27:46 |
| 15 | factor out there that we're about to file | 17:27:49 |
| 16 | bankruptcy. | 17:27:51 |
| 17 | Q.   Because putting a big risk | 17:27:51 |
| 18 | factor out that you might be filing for | 17:27:53 |
| 19 | bankruptcy, it's certainly putting a risk | 17:27:56 |
| 20 | factor out there that you might file for | 17:28:00 |
| 21 | bankruptcy and if so, investors might not | 17:28:03 |
| 22 | get a make whole if the debtors redeem | 17:28:06 |
| 23 | their debt would potentially concern | 17:28:09 |
| 24 | investors, right? | 17:28:13 |
| 25 | MR. HOWELL:  Object to form | 17:28:13 |

| | |
|---|---|
| 1        and foundation. | 17:28:14 |
| 2        A.    No, what I -- what I was | 17:28:15 |
| 3    implying was we were not in a place where | 17:28:17 |
| 4    we thought we are going to be filing for | 17:28:21 |
| 5    bankruptcy and so I think that's, that's | 17:28:24 |
| 6    what his concern was, we're not at the | 17:28:27 |
| 7    place where we're even considering filing | 17:28:30 |
| 8    bankruptcy, why are we mentioning | 17:28:32 |
| 9    bankruptcy.  Mr. Keglevic, Paul, it's in | 17:28:34 |
| 10   the -- it's already in the -- in the | 17:28:38 |
| 11   indenture in the default language, and | 17:28:41 |
| 12   that was kind of the communication. | 17:28:43 |
| 13       Q.    So you were trying to assuage | 17:28:45 |
| 14   his concerns, right? | 17:28:48 |
| 15       A.    Regarding? | 17:28:49 |
| 16       Q.    Regarding the proposal by, by | 17:28:52 |
| 17   Mr. -- I'll always butcher his name, | 17:28:57 |
| 18   Panossian? | 17:29:02 |
| 19       A.    It's okay.  I was trying to | 17:29:03 |
| 20   let him know that bankruptcy, what I was | 17:29:07 |
| 21   trying to let him know is bankruptcy is | 17:29:11 |
| 22   already mentioned in the documents | 17:29:12 |
| 23   without going into a lot of detail. | 17:29:14 |
| 24       Q.    Now earlier you said you | 17:29:16 |
| 25   didn't speak to Jack and I see where in | 17:29:56 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 319

```
1     the email exchange it suggests you              17:29:59
2     hadn't, but I think later you did.  Let        17:30:01
3     me try to refresh your recollection.           17:30:05
4               MR. ANKER:  This is Exhibit           17:30:07
5          32, EFIHMW 00038663.                       17:30:08
6               (Horton Exhibit 32 for                17:30:08
7          identification, Bates stamped             17:30:09
8          EFIHMW 00038663.)                          17:30:09
9          A.    And as I responded -- as you        17:30:22
10    said I didn't speak to Jack, I said I          17:30:29
11    didn't speak to Jack, I was referring to       17:30:31
12    this point, at that point in time.             17:30:34
13         Q.    Right.                               17:30:37
14         A.    Right.                               17:30:37
15         Q.    Later you did speak with Mr.        17:30:38
16    Weingart, right?                                17:30:41
17         A.    Yes, sir.                            17:30:42
18         Q.    And in fact, the exhibit I've       17:30:42
19    just shown you, number 32, is an email in      17:30:45
20    which you are emailing to Mr. Keglevic in      17:30:49
21    response to his inquiry status that you        17:30:57
22    had in fact spoken to Mr. Weingart on          17:31:00
23    make whole acceleration, right?                17:31:04
24         A.    That's correct.                      17:31:06
25         Q.    And his response I take it was      17:31:06
```

| | | |
|---|---|---|
| 1 | not immediately to say no, you wrote, "He | 17:31:09 |
| 2 | wants to make a couple of calls and think | 17:31:13 |
| 3 | about it," right? | 17:31:15 |
| 4 | A.   That's correct. | 17:31:16 |
| 5 | Q.   And you then go on to say, | 17:31:17 |
| 6 | "he," I think that's Jack, Mr. Weingart, | 17:31:24 |
| 7 | "asks that I speak with lawyers about | 17:31:27 |
| 8 | whether we could include this language | 17:31:29 |
| 9 | for OT only." | 17:31:30 |
| 10 | Did I read that right? | 17:31:32 |
| 11 | A.   You read the language, the | 17:31:33 |
| 12 | sentence right, I question in my own mind | 17:31:36 |
| 13 | whether or not Armen asked me that | 17:31:40 |
| 14 | question or whether Jack asked me that | 17:31:43 |
| 15 | question.  And quite candidly, I don't | 17:31:45 |
| 16 | know which one of them asked me that | 17:31:51 |
| 17 | question. | 17:31:53 |
| 18 | Q.   OT is Oaktree, right? | 17:31:53 |
| 19 | A.   Yes, sir. | 17:31:55 |
| 20 | Q.   Now, later Mr. Weingart got | 17:31:55 |
| 21 | back to you, right? | 17:32:10 |
| 22 | A.   He did. | 17:32:10 |
| 23 | Q.   And Mr. Weingart indicated | 17:32:11 |
| 24 | that he thought the company's position | 17:32:13 |
| 25 | should be to say no to Oaktree and not | 17:32:16 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 321

| | |
|---|---|
| 1   include the proposed language, right? | 17:32:19 |
| 2        A.    Can I get a copy of that as | 17:32:21 |
| 3   well. | 17:32:23 |
| 4        Q.    Sure. | 17:32:23 |
| 5             (Horton Exhibit 33 for | 17:32:30 |
| 6        identification, Bates stamped | 17:32:37 |
| 7        EFIHMW 00037075.) | 17:32:37 |
| 8        Q.    This is Exhibit number 33. | 17:32:32 |
| 9   And it bears the Bates stamp EFIHMW | 17:32:35 |
| 10   00037075.  Do you have the document in | 17:32:39 |
| 11   front of you, Mr. Horton? | 17:32:44 |
| 12        A.    I do, sir. | 17:32:45 |
| 13        Q.    Now you'll see that Mr. | 17:32:46 |
| 14   Weingart wrote to you, "I think our | 17:32:48 |
| 15   position for now should be to say no to | 17:32:51 |
| 16   Oaktree on this point altogether," | 17:32:54 |
| 17   right"? | 17:32:56 |
| 18        A.    Yes, so I'm reading the bottom | 17:33:00 |
| 19   part of the email which if you like | 17:33:02 |
| 20   answers our -- one of our previous | 17:33:05 |
| 21   questions. | 17:33:07 |
| 22        Q.    Why don't we take it in | 17:33:11 |
| 23   chronological order and start with the | 17:33:13 |
| 24   bottom. | 17:33:15 |
| 25        A.    Okay. | 17:33:15 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 322

```
1        Q.     You wrote to Mr. Weingart an      17:33:16
2    email that shows September 20 at 1:52        17:33:18
3    p.m., right?                                 17:33:22
4        A.     Yes, yes, sir.                     17:33:23
5        Q.     You said, "in response to your    17:33:26
6    question regarding including applicable      17:33:27
7    premium for the make whole in the OT         17:33:29
8    indenture only, the answer is yes."          17:33:32
9             So the question did come from       17:33:34
10   Mr. Weingart, right?                         17:33:35
11       A.     Yes, yes, that's a                17:33:36
12   clarification.                               17:33:38
13       Q.     So he had, he had asked you       17:33:38
14   earlier can we include this provision        17:33:40
15   just for Oaktree, right?                     17:33:41
16       A.     That's correct.                   17:33:43
17       Q.     And you said the answer is        17:33:43
18   yes?                                         17:33:44
19       A.     Yes.                              17:33:45
20       Q.     And then you went on to say,      17:33:46
21   "however, these notes would not be           17:33:48
22   fungible with other second lien notes at     17:33:50
23   TCEH and the drafting of the language may    17:33:52
24   draw attention to the provision."            17:33:55
25             What did you mean by that?         17:33:56
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 323

```
 1            A.    That we were going to get      17:34:00
 2      additional asks for it, so.                17:34:03
 3            Q.    Why was that a concern?         17:34:04
 4            A.    Because of the precedent issue  17:34:05
 5      that we felt like, you know, this was       17:34:07
 6      going to establish.  So --                  17:34:09
 7            Q.    Why was that a concern?         17:34:10
 8            A.    To have a precedent issue       17:34:11
 9      regarding this --                           17:34:14
10            Q.    Yes.                            17:34:17
11            A.    You want to -- you don't want   17:34:17
12      to give up key terms that are going to      17:34:19
13      create a market precedent.                  17:34:22
14            Q.    Well, you told me that no one   17:34:24
15      was thinking about filing for bankruptcy.   17:34:25
16      Why was this a key concern?                 17:34:27
17            A.    There are more transactions     17:34:29
18      that are being done, you know, throughout   17:34:32
19      the market, I'm sure there's a market       17:34:34
20      precedent issue, not only for the company   17:34:37
21      had they not filed, but any, any other      17:34:40
22      transaction that we did after the fact,     17:34:44
23      we didn't want the language in there,       17:34:46
24      even if we ultimately ended up filing for   17:34:48
25      bankruptcy.                                 17:34:51
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 324

```
 1          Q.    There was also a concern about        17:34:55

 2     it being a precedent for the sponsors            17:34:56

 3     with respect to other companies for which        17:34:59

 4     they were the, other portfolio companies         17:35:00

 5     they owned, right?                               17:35:03

 6          A.    I could speculate that they           17:35:04

 7     would also be concerned.                         17:35:05

 8          Q.    And Mr. Weingart writes back,         17:35:10

 9     "I think our position for now should be          17:35:12

10     no to Oaktree on this point altogether,"         17:35:14

11     right?  Right?                                   17:35:20

12          A.    I'm sorry.  I'm just reading.         17:35:21

13     Yes.                                             17:35:25

14          Q.    What did you understand for           17:35:25

15     now to mean?                                     17:35:28

16          A.    For now?                              17:35:30

17          Q.    So maybe we'll change our mind        17:35:31

18     in the future?                                   17:35:33

19          A.    I didn't read it as maybe            17:35:33

20     we'll change our mind.  So for now, the          17:35:35

21     answer is no.                                    17:35:38

22          Q.    What did you understand for           17:35:39

23     now to be?  I'm confused.  What did you          17:35:41

24     understand it to mean?                           17:35:45

25          A.    It meant now.  I don't have           17:35:46
```

| | | |
|---|---|---|
| 1 | any other way to describe that.  I didn't | 17:35:48 |
| 2 | read it as oh and we may change our mind. | 17:35:51 |
| 3 | Q.   Okay.  Now, ultimately, | 17:35:53 |
| 4 | ultimately there was a change in the | 17:36:13 |
| 5 | language in the indenture as compared to | 17:36:15 |
| 6 | the '07 indenture, right? | 17:36:17 |
| 7 | A.   When you say a change. | 17:36:19 |
| 8 | Q.   Right. | 17:36:23 |
| 9 | A.   Would you point me | 17:36:24 |
| 10 | specifically to that change. | 17:36:25 |
| 11 | Q.   Sure. | 17:36:26 |
| 12 | MR. ANKER:  There's five | 17:36:46 |
| 13 | minutes left on the tape, why don't | 17:36:47 |
| 14 | we take a quick break. | 17:36:48 |
| 15 | THE VIDEOGRAPHER:  Thank you. | 17:36:50 |
| 16 | One moment please, watch your | 17:36:51 |
| 17 | microphones.  Here now marks the | 17:36:52 |
| 18 | end of tape 5 of the deposition of | 17:36:54 |
| 19 | Mr. Anthony R. Horton, the time is | 17:36:55 |
| 20 | 5:36 p.m., we're now off the | 17:36:57 |
| 21 | record. | 17:37:00 |
| 22 | (A recess was taken.) | 17:45:40 |
| 23 | THE VIDEOGRAPHER:  Here now | 17:54:10 |
| 24 | marks the beginning of tape 6 of | 17:54:24 |
| 25 | the deposition of Mr. Anthony R. | 17:54:25 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 326

| | | |
|---|---|---|
| 1 | Horton to know, the time is 5:54 | 17:54:29 |
| 2 | p.m., we're back on the record. | 17:54:31 |
| 3 | Q.    Mr. Horton, I wanted to | 17:54:32 |
| 4 | clarify a couple of things before going | 17:54:36 |
| 5 | where I was going to go a few minutes | 17:54:39 |
| 6 | ago.  I think you already so testified, | 17:54:42 |
| 7 | but I asked you about the original term | 17:54:46 |
| 8 | sheet or summary of key terms that Mr. | 17:54:53 |
| 9 | Panossian sent you, and on make whole it | 17:54:55 |
| 10 | says "Applies to optional redemption as | 17:54:58 |
| 11 | well as any acceleration of the debt, | 17:55:01 |
| 12 | including upon a BK filing." | 17:55:04 |
| 13 | Did you understand Oaktree's | 17:55:08 |
| 14 | position during these negotiations to be | 17:55:10 |
| 15 | that the make whole would come due upon | 17:55:13 |
| 16 | any acceleration in the event of any type | 17:55:17 |
| 17 | of event of default under the indenture? | 17:55:20 |
| 18 | A.    I'm not sure I read it that | 17:55:24 |
| 19 | finely.  My team probably did, but I | 17:55:28 |
| 20 | don't think that I read it that finely. | 17:55:32 |
| 21 | Q.    But that's certainly what the | 17:55:33 |
| 22 | words say, right, as well as any | 17:55:35 |
| 23 | acceleration of the debt, including upon | 17:55:37 |
| 24 | a bankruptcy filing? | 17:55:40 |
| 25 | A.    I'm sorry, do you have the | 17:55:43 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 327

| | |
|---|---|
| 1 | document?  I'm four documents back. | 17:55:49 |
| 2 | Q.    27. | 17:55:50 |
| 3 | A.    Okay.  It may be under here. | 17:55:51 |
| 4 | Q.    You want me to give you my | 17:56:03 |
| 5 | copy? | 17:56:04 |
| 6 | A.    Yes, somebody gave me a copy | 17:56:05 |
| 7 | by the way of something with a lot of | 17:56:07 |
| 8 | writing on it. | 17:56:08 |
| 9 | Q.    Your counsel is handing you a | 17:56:10 |
| 10 | copy. | 17:56:15 |
| 11 | MR. HOWELL:  You can have mine | 17:56:16 |
| 12 | and hand it back when you're done. | 17:56:17 |
| 13 | Q.    Now look at the make whole. | 17:56:18 |
| 14 | Do you see the language "five year make | 17:56:22 |
| 15 | whole applies to optional redemption as | 17:56:24 |
| 16 | well as any acceleration of the debt | 17:56:26 |
| 17 | including upon a BK filing," right? | 17:56:29 |
| 18 | A.    That's what it says. | 17:56:31 |
| 19 | Q.    Right.  And so, you understood | 17:56:32 |
| 20 | that what Oaktree was proposing was that | 17:56:36 |
| 21 | any event of default, failure to pay | 17:56:41 |
| 22 | interest on time, a covenant default, | 17:56:44 |
| 23 | would leave -- could lead to the make | 17:56:47 |
| 24 | whole coming due, right? | 17:56:52 |
| 25 | MR. HOWELL:  Object to form, | 17:56:55 |

Page 328

| | | |
|---|---|---|
| 1 | asked and answered. | 17:56:56 |
| 2 | A.    Yes, look, again, someone | 17:56:57 |
| 3 | provides a term like this to me, I'm | 17:57:00 |
| 4 | going to run it through my team and we're | 17:57:01 |
| 5 | going to analyze it word for word and get | 17:57:05 |
| 6 | -- get -- look, as I said, I don't know | 17:57:08 |
| 7 | that I sliced it as finely as you did. | 17:57:11 |
| 8 | Q.    And indeed, I think you told | 17:57:14 |
| 9 | me earlier that when you first got the | 17:57:17 |
| 10 | document, you weren't sure whether these | 17:57:19 |
| 11 | terms already existed in the indenture, | 17:57:23 |
| 12 | right? | 17:57:26 |
| 13 | A.    When I first got the document, | 17:57:26 |
| 14 | my initial reaction was this is something | 17:57:29 |
| 15 | new, but I need to verify that it's | 17:57:32 |
| 16 | something new. | 17:57:35 |
| 17 | Q.    Because you weren't sure one | 17:57:35 |
| 18 | way or the other? | 17:57:37 |
| 19 | A.    I wasn't positive, no. | 17:57:38 |
| 20 | Q.    Okay. | 17:57:40 |
| 21 | MR. HOWELL:  If we're done | 17:57:41 |
| 22 | with 27, can you hand me that copy | 17:57:42 |
| 23 | back. | 17:57:44 |
| 24 | Q.    Now, where I was headed | 17:57:44 |
| 25 | earlier was to say there was an agreed | 17:57:50 |

| | | |
|---|---|---|
| 1 | change, wasn't there, to the language in | 17:57:52 |
| 2 | the indenture? | 17:57:55 |
| 3 |     MR. HOWELL:  Object to form. | 17:58:03 |
| 4 |     A.    I'm sure there was a change in | 17:58:04 |
| 5 | the indenture.  With regard to what? | 17:58:05 |
| 6 |     Q.    With regard to acceleration | 17:58:13 |
| 7 | and what effect acceleration would have? | 17:58:15 |
| 8 |     MR. HOWELL:  Object to form. | 17:58:20 |
| 9 |     A.    Is there something specific | 17:58:21 |
| 10 | you want to show me? | 17:58:22 |
| 11 |     Q.    Sure, sure. | 17:58:24 |
| 12 |     A.    Thank you. | 17:58:25 |
| 13 |     MR. ANKER:  Let's mark this as | 17:58:26 |
| 14 | Exhibit 34.  This is an indenture | 17:58:28 |
| 15 | dated October 6th, 2010, Texas | 17:58:30 |
| 16 | Competitive Electric Holdings | 17:58:30 |
| 17 | Company and TCEH Finance, EFIHMW | 17:58:35 |
| 18 | 00139970 to 140140 inclusive. | 17:58:39 |
| 19 |     (Horton Exhibit 34 for | 17:58:39 |
| 20 | identification, Bates stamped | 17:58:37 |
| 21 | EFIHMW 00139970 to 140140.) | 17:58:37 |
| 22 |     A.    Thank you, Mr. Anker. | 17:58:53 |
| 23 |     Q.    And I turn your attention -- | 17:58:54 |
| 24 | this is the indenture for the new notes, | 17:58:56 |
| 25 | right? | 17:58:58 |

| | | |
|---|---|---|
| 1 | A.    It appears to be the indenture | 17:59:01 |
| 2 | for the new notes. | 17:59:05 |
| 3 | Q.    Can you turn to section 6.02, | 17:59:06 |
| 4 | page 103? | 17:59:08 |
| 5 | A.    Okay. | 17:59:21 |
| 6 | Q.    You'll see 6.02 is entitled | 17:59:22 |
| 7 | event of default, right?  I'm sorry, is | 17:59:24 |
| 8 | entitled acceleration? | 17:59:28 |
| 9 | A.    See, you know what, that's why | 17:59:29 |
| 10 | I'm not a lawyer, you threw me off quick. | 17:59:31 |
| 11 | Okay. | 17:59:33 |
| 12 | Q.    It's entitled acceleration, | 17:59:34 |
| 13 | right? | 17:59:35 |
| 14 | A.    Yes, sir, yes, sir. | 17:59:36 |
| 15 | Q.    And if you look at the second | 17:59:36 |
| 16 | paragraph, "notwithstanding the | 17:59:38 |
| 17 | foregoing, in the case of an event of | 17:59:40 |
| 18 | default arising under section 6.01(a)(6) | 17:59:42 |
| 19 | or (7) hereof," let's stop there.  (6) | 17:59:44 |
| 20 | and (7) are the bankruptcy events of | 17:59:48 |
| 21 | default, right? | 17:59:50 |
| 22 | A.    Let me make sure.  It's a new | 17:59:53 |
| 23 | document.  Yes, sir. | 17:59:58 |
| 24 | Q.    So let's go back to the | 18:00:02 |
| 25 | language, "notwithstanding the foregoing, | 18:00:03 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | in the case of an event of default | 18:00:05 |
| 2 | arising under section 6.01(a)(6) or (7) | 18:00:07 |
| 3 | hereof, the principal, principal premium, | 18:00:10 |
| 4 | if any, and interest on all outstanding | 18:00:13 |
| 5 | notes shall be due and payable | 18:00:16 |
| 6 | immediately without further action or | 18:00:18 |
| 7 | notice." | 18:00:20 |
| 8 | The language principal | 18:00:22 |
| 9 | premium, if any, was new, that wasn't in | 18:00:24 |
| 10 | the prior indenture, was it? | 18:00:26 |
| 11 | A.   It certainly was not in this | 18:00:27 |
| 12 | section. | 18:00:38 |
| 13 | Q.   The language -- let's just | 18:00:39 |
| 14 | make a clear record.  The language | 18:00:41 |
| 15 | principal premium, if any, was certainly | 18:00:43 |
| 16 | not in section 6.02 of the prior | 18:00:45 |
| 17 | indenture for the old notes, the TCEH | 18:00:50 |
| 18 | notes issued in 2007, right? | 18:00:54 |
| 19 | MR. HOWELL:  Object to form. | 18:00:56 |
| 20 | Q.   I'm sorry, what was your | 18:00:59 |
| 21 | answer? | 18:01:00 |
| 22 | A.   My answer was going to be yes. | 18:01:00 |
| 23 | Q.   How did this additional | 18:01:02 |
| 24 | language come about? | 18:01:03 |
| 25 | A.   I can't tell you exactly.  I | 18:01:06 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 332

| | | |
|---|---|---|
| 1 | think eventually, after we had gone back | 18:01:12 |
| 2 | to Mr. Panossian and told him no, we will | 18:01:15 |
| 3 | not add the applicable premium in this | 18:01:21 |
| 4 | section of the indenture, he later came | 18:01:24 |
| 5 | back and asked if we could add the | 18:01:30 |
| 6 | language principal premium, if any. | 18:01:33 |
| 7 | Q.    And the debtors agreed to add | 18:01:36 |
| 8 | that language, or TCEH agreed to add that | 18:01:39 |
| 9 | language, right? | 18:01:43 |
| 10 | A.    Yes, sir. | 18:01:43 |
| 11 | Q.    Why did it agree to add that | 18:01:44 |
| 12 | language? | 18:01:46 |
| 13 | MR. HOWELL:  Object to | 18:01:47 |
| 14 | foundation. | 18:01:48 |
| 15 | A.    It was part of a negotiation | 18:01:48 |
| 16 | and it was something that Mr. Panossian | 18:01:50 |
| 17 | had asked for and we felt comfortable | 18:01:53 |
| 18 | adding it.  It did not mean applicable | 18:01:58 |
| 19 | premium, so, which was our focus, and so | 18:02:00 |
| 20 | we added it. | 18:02:06 |
| 21 | Q.    And the debtors' position in | 18:02:06 |
| 22 | this Chapter 11 case is that the addition | 18:02:09 |
| 23 | of the language premium, if any, doesn't | 18:02:14 |
| 24 | make any difference when it comes to the | 18:02:17 |
| 25 | indictment of a noteholder to a make | 18:02:21 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | whole in bankruptcy, right? | 18:02:23 |
| 2 | MR. HOWELL:  Object to form | 18:02:27 |
| 3 | and foundation. | 18:02:28 |
| 4 | A.    What I can say is principal | 18:02:29 |
| 5 | premium if any is not applicable premium. | 18:02:33 |
| 6 | Q.    I understand the words are | 18:02:38 |
| 7 | different.  But you're aware, Mr. Horton, | 18:02:40 |
| 8 | that the debtors have just filed an | 18:02:42 |
| 9 | answer and counterclaim in the second | 18:02:44 |
| 10 | lien litigation, right? | 18:02:47 |
| 11 | A.    I'm aware of it. | 18:02:48 |
| 12 | Q.    And you're aware that the | 18:02:49 |
| 13 | indentures for the second lien -- | 18:02:52 |
| 14 | MR. HOROWITZ:  Object to form. | 18:02:56 |
| 15 | They filed a motion to amend. | 18:02:58 |
| 16 | Q.    Let me rephrase the question. | 18:03:01 |
| 17 | You're aware that the debtors filed a | 18:03:03 |
| 18 | motion seeking permission to file an | 18:03:05 |
| 19 | answer, an amended answer and | 18:03:07 |
| 20 | counterclaim in the EFIH second lien make | 18:03:09 |
| 21 | whole litigation, right? | 18:03:14 |
| 22 | A.    That's correct. | 18:03:18 |
| 23 | Q.    And you're aware that the | 18:03:18 |
| 24 | debtors attached a draft proposed amended | 18:03:20 |
| 25 | answer and counterclaim, right? | 18:03:24 |

| | |
|---|---|
| 1 | A.    I don't know that I fully | 18:03:26 |
| 2 | understand that, but yes, in general. | 18:03:30 |
| 3 | Q.    And you understand that in | 18:03:32 |
| 4 | that document the debtors take the | 18:03:33 |
| 5 | position that the inclusion of the | 18:03:36 |
| 6 | language premium, if any, in this | 18:03:39 |
| 7 | particular section, section 6.02, does | 18:03:42 |
| 8 | not mean that the applicable premium is | 18:03:47 |
| 9 | owed if the debtors refinance the second | 18:03:51 |
| 10 | lien debt in bankruptcy, right? | 18:03:55 |
| 11 | A.    That's correct. | 18:03:57 |
| 12 | Q.    Okay.  So the debtors were | 18:03:58 |
| 13 | agreeing to this language, but they | 18:04:00 |
| 14 | thought it had no legal effect, this | 18:04:02 |
| 15 | additional language, right? | 18:04:05 |
| 16 | MR. HOWELL:  Object to form. | 18:04:07 |
| 17 | A.    I don't believe that we added | 18:04:08 |
| 18 | this language with the thought that it | 18:04:12 |
| 19 | had no additional legal form to the | 18:04:14 |
| 20 | document.  What I believe that we thought | 18:04:19 |
| 21 | was it has no bearing, no implication, no | 18:04:22 |
| 22 | reference to applicable premium. | 18:04:27 |
| 23 | Q.    And therefore, it has no | 18:04:29 |
| 24 | reference and no application to whether | 18:04:32 |
| 25 | in the event TCEH files for bankruptcy, | 18:04:36 |

| | | |
|---|---|---|
| 1 | and then refinances the debt, the holders | 18:04:43 |
| 2 | will be, of the notes will be entitled to | 18:04:46 |
| 3 | the applicable premium, right? | 18:04:49 |
| 4 |     A.    I'm going to ask you to | 18:04:53 |
| 5 | restate the question for me, rather long. | 18:04:55 |
| 6 |     Q.    Sure. | 18:04:57 |
| 7 |     A.    My perspective, sorry. | 18:04:58 |
| 8 |     Q.    The debtors' view at the time | 18:05:00 |
| 9 | they agreed to add this language was that | 18:05:01 |
| 10 | it would have no effect on whether | 18:05:04 |
| 11 | holders of these notes, the TCEH notes, | 18:05:07 |
| 12 | would be entitled to a make whole premium | 18:05:11 |
| 13 | in the event that TCEH filed for | 18:05:13 |
| 14 | bankruptcy and refinanced their notes in | 18:05:16 |
| 15 | bankruptcy? | 18:05:19 |
| 16 |     A.    I would say that -- | 18:05:19 |
| 17 |         MR. HOWELL:  Object to form. | 18:05:20 |
| 18 |     Go ahead. | 18:05:22 |
| 19 |     A.    Okay.  I would say that we had | 18:05:23 |
| 20 | a belief that the applicable premium did | 18:05:25 |
| 21 | not apply in the event that we refinanced | 18:05:28 |
| 22 | the notes or repaid the notes in | 18:05:33 |
| 23 | bankruptcy. | 18:05:36 |
| 24 |     Q.    Okay.  And that was your view | 18:05:37 |
| 25 | as to the -- you said I would say that we | 18:05:40 |

| | | |
|---|---|---|
| 1 | had a belief that the applicable premium | 18:05:50 |
| 2 | did not apply in the event that we | 18:05:52 |
| 3 | refinanced the notes or repaid the notes | 18:05:54 |
| 4 | in bankruptcy, and that was true even | 18:05:56 |
| 5 | with the new language adding premium, if | 18:05:59 |
| 6 | any, right? | 18:06:02 |
| 7 |     A.    I think that's correct. | 18:06:02 |
| 8 |     Q.    Okay.  What legal effect did | 18:06:04 |
| 9 | you think this language had? | 18:06:10 |
| 10 |         MR. HOWELL:  Object to form | 18:06:12 |
| 11 |     and foundation. | 18:06:13 |
| 12 |     A.    I can't point to a specific | 18:06:14 |
| 13 | example of what principal premium, if | 18:06:20 |
| 14 | any, meant.  I know that Armen and | 18:06:24 |
| 15 | Oaktree asked for it, so my view is it | 18:06:30 |
| 16 | had some economic benefit to them.  What | 18:06:33 |
| 17 | specifically they, they had in mind, I -- | 18:06:41 |
| 18 | I don't -- I don't know.  But I believe | 18:06:44 |
| 19 | they did not believe it was applicable | 18:06:50 |
| 20 | premium. | 18:06:51 |
| 21 |     Q.    And why do you believe that | 18:06:52 |
| 22 | they did not believe it was applicable | 18:06:53 |
| 23 | premium? | 18:06:55 |
| 24 |     A.    Because they asked | 18:06:56 |
| 25 | specifically for applicable premium, we | 18:06:57 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 337

| | | |
|---|---|---|
| 1 | went back and specifically said no, we | 18:07:00 |
| 2 | will not put -- add applicable premium | 18:07:05 |
| 3 | here.  It's a defined term, we are not | 18:07:08 |
| 4 | doing that.  And we struck it. | 18:07:11 |
| 5 | Q.    And when -- did you have any | 18:07:13 |
| 6 | conversation with Mr. Panossian or anyone | 18:07:16 |
| 7 | else at Oaktree about what legal | 18:07:19 |
| 8 | consequence or other consequence there | 18:07:23 |
| 9 | was in adding the words premium, if any? | 18:07:25 |
| 10 | A.    I had conversation and my, my | 18:07:28 |
| 11 | belief it was a catchall phrase for them, | 18:07:34 |
| 12 | if there was anything other than | 18:07:38 |
| 13 | applicable premium and, a catchall phrase | 18:07:39 |
| 14 | to capture any premium other than | 18:07:45 |
| 15 | applicable premium. | 18:07:47 |
| 16 | Q.    Isn't the only premium under | 18:07:48 |
| 17 | the indenture the applicable premium? | 18:07:50 |
| 18 | MR. HOWELL:  Object to | 18:07:52 |
| 19 | foundation. | 18:07:54 |
| 20 | A.    I don't believe so, but -- | 18:07:54 |
| 21 | Q.    What other premiums are there? | 18:07:59 |
| 22 | A.    Again, I don't know | 18:08:01 |
| 23 | specifically what he was referring to | 18:08:02 |
| 24 | here. | 18:08:03 |
| 25 | Q.    That's not what I'm asking. | 18:08:03 |

| | | |
|---|---|---|
| 1 | Under the indentures, are you aware of | 18:08:05 |
| 2 | any premiums other than the Applicable | 18:08:08 |
| 3 | Premium, cap A cap P? | 18:08:11 |
| 4 | A.    Again, I'd have to go back | 18:08:14 |
| 5 | through the definitions. | 18:08:16 |
| 6 | Q.    But as you sit here today, | 18:08:17 |
| 7 | you're not aware of any, right? | 18:08:19 |
| 8 | A.    Again, I don't know. | 18:08:20 |
| 9 | Q.    I think we miscommunicated in | 18:08:21 |
| 10 | a question I asked earlier, at least I | 18:08:28 |
| 11 | don't think your answer was responsive. | 18:08:30 |
| 12 | Did you have any discussion with Mr. | 18:08:32 |
| 13 | Panossian about what effect he believed, | 18:08:35 |
| 14 | or you believed the addition of the | 18:08:39 |
| 15 | language premium, if any, would have? | 18:08:42 |
| 16 | A.    I can't recall. | 18:08:45 |
| 17 | Q.    To your knowledge, did anyone | 18:08:48 |
| 18 | else for the company have a discussion | 18:08:51 |
| 19 | with Mr. Panossian or anyone else at | 18:08:53 |
| 20 | Oaktree about the meaning of this | 18:08:56 |
| 21 | language? | 18:08:58 |
| 22 | A.    No. | 18:09:00 |
| 23 | Q.    Now, the debtors have | 18:09:00 |
| 24 | admitted, I'll represent to you, in the | 18:09:08 |
| 25 | first lien adversary proceeding on the | 18:09:10 |

Page 339

```
 1    make whole that the first liens are          18:09:13

 2    oversecured.  You know what the term         18:09:15

 3    oversecured means, right?                    18:09:19

 4         A.    Yes.                              18:09:20

 5         Q.    And the debtors acknowledge,      18:09:21

 6    do they not, that the value of EFIH is       18:09:24

 7    high enough to pay the EFIH first liens,     18:09:27

 8    not only the principal and interest         18:09:32

 9    they've already been paid, but the make     18:09:33

10    whole, right?                                18:09:35

11         A.    I think that's correct.          18:09:36

12         Q.    And that make whole as of the    18:09:40

13    petition date was for all the EFIH first    18:09:43

14    lien holders, including those who           18:09:46

15    settled, north of 700 million, right?       18:09:49

16         A.    As of the petition date?         18:09:51

17              MR. HOWELL:  Object to form       18:09:53

18    and foundation.                             18:09:54

19         Q.    Yes.                             18:09:54

20         A.    I don't -- I don't have that     18:09:55

21    math in my head.                            18:09:56

22         Q.    Does that number sound about     18:09:57

23    right to you?                               18:09:59

24         A.    I have the as of the            18:10:00

25    redemption date, so that's kind of the     18:10:05
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 340

```
1    math I have in my head.                        18:10:07
2         Q.    I'm sorry, as of the                18:10:08
3    redemption date meaning what date?             18:10:12
4         A.    As of the date we repaid, the       18:10:14
5    repayment date.                                18:10:17
6         Q.    Okay.  Redemption date is           18:10:18
7    fine.  And how much was that as of that        18:10:20
8    date?                                          18:10:22
9              MR. HOWELL:  Object to form.         18:10:22
10        Or are you asking for the settled         18:10:23
11        or settled and nonsettled?                18:10:25
12             MR. ANKER:  Both.                     18:10:28
13             MR. HOWELL:  Thank you.              18:10:30
14        A.    For the nonsettled position         18:10:30
15   portion it was around 425 million and for      18:10:33
16   the non- -- for the total, the math I          18:10:35
17   have in my head is around, approximately       18:10:40
18   650 million.                                   18:10:43
19        Q.    And the amount went down over       18:10:44
20   time, right?                                   18:10:52
21        A.    The amount --                       18:10:53
22             MR. HOWELL:  Object to form.         18:10:55
23        Q.    The amount does go down over        18:10:56
24   time?                                          18:10:58
25        A.    I'm sorry, let me back up.  I       18:10:58
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | got interrupted.  Please restate your | 18:11:00 |
| 2 | question. | 18:11:01 |
| 3 | Q.   If the make whole amount was | 18:11:02 |
| 4 | 650 million, you believe, as of the | 18:11:07 |
| 5 | redemption date, which was in June, | 18:11:09 |
| 6 | right, of 2014? | 18:11:11 |
| 7 | A.   Yes, sir. | 18:11:13 |
| 8 | Q.   Okay.  Then it would have been | 18:11:16 |
| 9 | higher as of the petition date, right? | 18:11:17 |
| 10 | A.   That's correct. | 18:11:19 |
| 11 | Q.   And the debtors have | 18:11:26 |
| 12 | acknowledged that the first liens are | 18:11:32 |
| 13 | oversecured even for the amount of the | 18:11:34 |
| 14 | make whole premium.  The debtors I will | 18:11:37 |
| 15 | also represent in their answer to the | 18:11:39 |
| 16 | second lien adversary proceeding | 18:11:42 |
| 17 | complaint have conceded that the second | 18:11:47 |
| 18 | liens are oversecured, including for all | 18:11:48 |
| 19 | amounts that they might be entitled to | 18:11:52 |
| 20 | for a make whole, is that your | 18:11:53 |
| 21 | understanding as well? | 18:11:55 |
| 22 | A.   Yes. | 18:11:56 |
| 23 | Q.   Okay.  Are you aware that -- | 18:11:56 |
| 24 | no, let's back up. | 18:12:02 |
| 25 | In the discussions you were | 18:12:03 |

| | | |
|---|---|---|
| 1 | having with Oaktree, the debtors came to | 18:12:05 |
| 2 | know that Oaktree believed that if | 18:12:13 |
| 3 | Oaktree were oversecured it would be | 18:12:20 |
| 4 | entitled to the make whole even if it | 18:12:22 |
| 5 | didn't add the language premium, if any, | 18:12:24 |
| 6 | right? | 18:12:27 |
| 7 | MR. HOWELL:  Object to form | 18:12:28 |
| 8 | and foundation. | 18:12:29 |
| 9 | A.    I have no idea what basis | 18:12:29 |
| 10 | you're making that statement from. | 18:12:31 |
| 11 | Q.    Okay, let me show you.  Let me | 18:12:34 |
| 12 | show you. | 18:12:36 |
| 13 | MR. ANKER:  We'll mark this as | 18:12:39 |
| 14 | Exhibit 35.  It's an email | 18:12:41 |
| 15 | exchange, EFIHMW 00084711-715. | 18:12:42 |
| 16 | (Horton Exhibit 35 for | 18:12:48 |
| 17 | identification, Bates stamped | 18:12:43 |
| 18 | EFIHMW 00084711 through 0084715.) | 18:12:43 |
| 19 | Q.    Now, do you recognize this | 18:13:04 |
| 20 | email exchange, Mr. Horton? | 18:13:13 |
| 21 | A.    I do not. | 18:13:15 |
| 22 | Q.    Okay.  You testified earlier, | 18:13:15 |
| 23 | I believe, that Debevoise was counsel to | 18:13:23 |
| 24 | Oaktree, correct? | 18:13:27 |
| 25 | A.    That's my understanding. | 18:13:28 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 343

1          Q.    Okay.   And you understood that          18:13:29

2     during the course of these discussions             18:13:33

3     that occurred in September of 2010 and             18:13:35

4     October of 2010, right?                            18:13:37

5          A.    Yes, sir.                               18:13:39

6          Q.    And you'll see that -- let's            18:13:41

7     go to the very beginning of this email             18:13:49

8     chain.   You see that the very first email         18:13:51

9     is from Mr. Santos to you, copy to Mr.             18:13:55

10    Wright dated September 12th at 6:41 p.m.,           18:13:59

11    right?                                             18:14:04

12         A.    Yes, sir.                               18:14:04

13         Q.    Okay.                                   18:14:07

14         A.    According to this time stamp,           18:14:08

15    yes.                                               18:14:10

16         Q.    Right.   And I understand there         18:14:10

17    may be an issue about the time stamps.             18:14:11

18    Frankly the time doesn't matter to me.             18:14:13

19    Let's leave that out.                              18:14:15

20             And Mr. Santos is sending a               18:14:16

21    draft description and notes and                    18:14:19

22    intercreditor agreement, did I read that           18:14:22

23    right?                                             18:14:24

24         A.    Yes.                                    18:14:24

25         Q.    And this is before, September           18:14:25

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 344

| | | |
|---|---|---|
| 1 | 12, whatever time of the day it was on | 18:14:27 |
| 2 | September 12, this is before Mr. | 18:14:29 |
| 3 | Panossian -- I apologize to him for | 18:14:35 |
| 4 | butchering his name. | 18:14:39 |
| 5 | A.    You're doing fine. | 18:14:40 |
| 6 | Q.    Sends his email with the | 18:14:41 |
| 7 | proposed changes in the document, that's | 18:14:42 |
| 8 | four or five days later on the 16th, | 18:14:45 |
| 9 | right? | 18:14:48 |
| 10 | A.    Roughly, that's what I recall. | 18:14:48 |
| 11 | Q.    And if you fast forward to | 18:14:50 |
| 12 | look at an email on September 12, late -- | 18:14:55 |
| 13 | same day, later at night, from My Chi To. | 18:14:58 |
| 14 | Do you see that one, it's on page 84713? | 18:15:05 |
| 15 | A.    I'm kind of going | 18:15:08 |
| 16 | chronologically, trying to catch up with | 18:15:09 |
| 17 | you, I apologize. | 18:15:12 |
| 18 | Q.    That's okay.  Why don't we | 18:15:13 |
| 19 | just do it to make it easier on you and | 18:15:14 |
| 20 | do it chronologically.  Mr. Santos sends | 18:15:16 |
| 21 | to you the draft description and notes | 18:15:19 |
| 22 | and intercreditor agreement and that had | 18:15:22 |
| 23 | the original language, it didn't have the | 18:15:24 |
| 24 | principal premium, if any, right?  This | 18:15:26 |
| 25 | is long before those -- the discussion, | 18:15:29 |

```
 1    right?                                          18:15:31

 2         A.    I'll take your word for it.  I        18:15:31

 3    don't know that.                                18:15:33

 4         Q.    But it's before September 17          18:15:33

 5    or 16 when you get the proposed changes         18:15:35

 6    from Mr. Panossian, right?                      18:15:38

 7         A.    Okay.                                 18:15:40

 8         Q.    And Mr. Santos wouldn't of his        18:15:40

 9    own been proposing the addition of this         18:15:42

10    language, right?                                18:15:45

11         A.    I would agree with that.             18:15:46

12         MR. HOWELL:   Object to form.              18:15:48

13         Q.    And then you respond to -- I'm       18:15:49

14    sorry, you don't respond, you forward it       18:15:51

15    to Mr. Panossian, "Armen, apologies for        18:15:53

16    the long lead time, but please find            18:15:56

17    attached the relevant documents for the        18:15:59

18    TCEH new issuance.  We're available to         18:16:01

19    discuss any questions."                        18:16:04

20              That was on the 12th as well,         18:16:05

21    right?                                          18:16:07

22         A.    Yes, sir.                            18:16:07

23         Q.    And then Mr. Maguire -- you'll       18:16:08

24    see Mr. Panossian says, sends an email         18:16:10

25    and you'll see this is an internal email       18:16:14
```

| | | |
|---|---|---|
| 1 | and an email to his counsel, "TCEH | 18:16:16 |
| 2 | intercreditor and second lien note | 18:16:19 |
| 3 | description attached.  Let's discuss on | 18:16:21 |
| 4 | Monday as soon as you've had an | 18:16:23 |
| 5 | opportunity to review," right? | 18:16:25 |
| 6 | A.    Yes, sir. | 18:16:27 |
| 7 | Q.    Okay, that's also on the 12th. | 18:16:27 |
| 8 | And then later on the 12th, Mr. Maguire, | 18:16:30 |
| 9 | who you will see from the prior email -- | 18:16:33 |
| 10 | well, I'll represent to you is at | 18:16:35 |
| 11 | Debevoise, Mr. Maguire says, I'm unable | 18:16:39 |
| 12 | to open the attachment on my BlackBerry, | 18:16:42 |
| 13 | can you open it and there's some other | 18:16:45 |
| 14 | stuff. | 18:16:47 |
| 15 | A.    Right. | 18:16:47 |
| 16 | Q.    And then later on the same day | 18:16:47 |
| 17 | there's an email from My Chi To on | 18:16:51 |
| 18 | September 12th, 2010, at 10:07 p.m., | 18:16:56 |
| 19 | right? | 18:17:01 |
| 20 | A.    Yes, sir. | 18:17:01 |
| 21 | Q.    And that email is to Mr. | 18:17:01 |
| 22 | Panossian, Mr. Maguire, cc Mr. O'Leary, | 18:17:03 |
| 23 | Mr. Graves, and Mr. Ebel, E-b-e-L.  Do | 18:17:07 |
| 24 | you see that? | 18:17:12 |
| 25 | A.    Yes, sir, I do. | 18:17:13 |

```
 1        Q.    And do you see from the          18:17:14
 2   description of Ms. To's email address       18:17:15
 3   she's at Debevoise?   Do you see that?      18:17:19
 4        A.    I do see that.                    18:17:22
 5        Q.    And you see she writes, "I        18:17:23
 6   reviewed the docs quickly tonight and        18:17:27
 7   will give them more careful read in the      18:17:28
 8   morning.  How about speaking at 12:15        18:17:31
 9   Eastern Time?"  Do you see that?             18:17:33
10        A.    My apologies.  Where -- oh,       18:17:39
11   yes, yes, yes, I'm farther down, sorry.      18:17:42
12        Q.    And then she says "on two key     18:17:44
13   points previously discussed with Armen."     18:17:46
14   Do you see that language?                    18:17:48
15        A.    Yes.                              18:17:49
16        Q.    Now look at what she writes       18:17:49
17   below that, "right to receive make whole     18:17:51
18   in bankruptcy.  Based on the description     18:17:54
19   of notes, the make whole provisions in       18:17:55
20   the new second lien indenture mirror         18:17:57
21   those in the existing TCEH bond              18:18:01
22   indenture.  As noted in my email to          18:18:02
23   Armen, attached for your reference,          18:18:05
24   second lien noteholders will only be         18:18:07
25   entitled to receive a make whole in the      18:18:08
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 348

```
 1    event of a refinancing in bankruptcy to        18:18:10
 2    the extent they are oversecured."              18:18:12
 3              I read that correctly, right?         18:18:15
 4         A.    So you're referring to the          18:18:17
 5    TCEH 2007 bond indenture, I guess that's       18:18:18
 6    what she's referring to, is that how you        18:18:21
 7    interpret that note based on the               18:18:23
 8    description of the notes, the make whole       18:18:25
 9    provisions and the new second lien            18:18:26
10    indenture mirror those, so there's been       18:18:29
11    no change is the way -- right.  And the        18:18:31
12    existing notes, existing 2007 bond            18:18:34
13    indenture, just to catch up with you.         18:18:37
14    Okay.                                          18:18:39
15         Q.    Okay.  Then she says "as noted      18:18:39
16    in my email to Armen," I will tell you we      18:18:41
17    don't have a copy of it, it wasn't in our     18:18:45
18    files, "second lien noteholders will only     18:18:46
19    be entitled to receive a make whole in        18:18:48
20    the event of a refinancing in bankruptcy      18:18:50
21    to the extent they are oversecured."          18:18:52
22              Do you see that?                      18:18:53
23         A.    I do see that.                      18:18:54
24         Q.    And you'll see when you go          18:18:55
25    through this, although this was an             18:18:56
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 349

| | | |
|---|---|---|
| 1 | internal email between Oaktree and its | 18:18:58 |
| 2 | counsel, it ends up getting forwarded to | 18:19:00 |
| 3 | the company, it was produced out of the | 18:19:03 |
| 4 | company's files.  You'll see that in fact | 18:19:05 |
| 5 | if you go to the very first email here, | 18:19:09 |
| 6 | the very last email here, excuse me, | 18:19:11 |
| 7 | Julie Hoffman-Ramos of BNY Mellon | 18:19:13 |
| 8 | forwards this whole email exchange to | 18:19:17 |
| 9 | various people including Mr. Wright, Mr. | 18:19:21 |
| 10 | Santos, lawyers at Simpson Thacher which | 18:19:24 |
| 11 | was the company's counsel, right? | 18:19:30 |
| 12 | A.    Yes. | 18:19:32 |
| 13 | Q.    Okay.  And it includes this | 18:19:33 |
| 14 | whole email chain. | 18:19:36 |
| 15 | A.    Okay. | 18:19:37 |
| 16 | Q.    So the EF -- I'm sorry.  So | 18:19:38 |
| 17 | the debtors get this email chain which | 18:19:41 |
| 18 | reflects the view of legal counsel for | 18:19:43 |
| 19 | the debtors, I'm sorry, legal counsel for | 18:19:49 |
| 20 | Oaktree, that as long as the second liens | 18:19:53 |
| 21 | are oversecured, they'll get their make | 18:19:55 |
| 22 | whole in bankruptcy in the event of a | 18:19:58 |
| 23 | refinancing, right? | 18:20:00 |
| 24 | MR. HOWELL:  Object to form | 18:20:04 |
| 25 | and foundation. | 18:20:05 |

```
 1          Q.    This document was in the              18:20:06
 2    debtors' files, the debtors got this             18:20:07
 3    email, right, you don't deny it, do you?         18:20:10
 4          A.    Yes, I'm not sure who this --        18:20:12
 5    I guess she's actually addressing this to        18:20:17
 6    George or E.B. George, I don't know who          18:20:20
 7    this is to.  As noted in my email to             18:20:24
 8    Armen.  I do see that.                           18:20:26
 9          Q.    And it all, it ultimately gets       18:20:28
10    all forwarded to both outside counsel,           18:20:32
11    in-house counsel, and others                     18:20:36
12    representing, or employed by the debtors,        18:20:41
13    right?                                           18:20:43
14          A.    Right.  So --                        18:20:43
15          Q.    Okay.                                18:20:45
16          A.    Well, again, we can talk about       18:20:45
17    who it's forwarded to.  It's forwarded to        18:20:49
18    Mr. Wright.                                       18:20:52
19          Q.    It's forwarded to --                 18:20:53
20          A.    And to -- and to our outside         18:20:55
21    legal counsel.                                   18:20:57
22          Q.    And to Mr. Brock Degeyter, am        18:20:58
23    I pronouncing it correctly?                      18:21:01
24          A.    Degeyter.                            18:21:02
25          Q.    Who is he?                           18:21:05
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 351

```
 1          A.    At that point in time he        18:21:05
 2   worked in the legal group.  I don't know     18:21:07
 3   specifically if he had moved up to the       18:21:09
 4   corporate secretary's.                       18:21:11
 5          Q.    And it --                        18:21:13
 6          A.    And Mr. Santos was on.          18:21:13
 7          Q.    Sorry, I don't mean to talk     18:21:15
 8   over you.                                     18:21:16
 9          A.    That's okay.                     18:21:17
10          Q.    And then there are about four   18:21:18
11   or five lawyers at the Simpson Thacher       18:21:19
12   firm, which was debtors' counsel, right?     18:21:22
13          A.    Okay.                            18:21:24
14          Q.    Right?                           18:21:25
15          A.    Yes.                             18:21:26
16          Q.    So the debtors received this    18:21:26
17   email exchange in which Oaktree's counsel    18:21:28
18   expressed the view that as long as           18:21:31
19   Oaktree and other second lien holders --     18:21:35
20   I'm sorry, let me start again, end of the    18:21:40
21   day.                                          18:21:42
22          So the company receives this         18:21:42
23   email exchange in which counsel for          18:21:44
24   Oaktree expressed the view that as long      18:21:47
25   as the TCEH bondholders are oversecured,     18:21:49
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 352

```
 1    the second lien noteholders, they will be     18:21:53
 2    entitled to receive a make whole in the       18:21:55
 3    event of a refinancing in bankruptcy,         18:21:58
 4    right?                                         18:22:00
 5               MR. HOWELL:  Object to form.        18:22:02
 6         A.    We've both read the language        18:22:03
 7    and I see what the language says.              18:22:06
 8         Q.    It says what I'm saying,            18:22:11
 9    right?                                         18:22:12
10         A.    It says as noted in my email        18:22:12
11    to Armen, attached for your reference,        18:22:14
12    which we don't have, so we're kind of        18:22:16
13    shooting in the dark a little bit, second    18:22:18
14    lien noteholders will only be entitled to    18:22:21
15    receive a make whole in the event of a       18:22:23
16    refinancing in bankruptcy to the extent      18:22:26
17    that they are oversecured.  And just to      18:22:28
18    be clear, this is no change has been made    18:22:31
19    to any language up to this point.            18:22:34
20         Q.    Right.                             18:22:36
21         A.    Okay.                              18:22:37
22         Q.    So my question is this.            18:22:37
23    Having received this email, did anyone       18:22:39
24    for the company contact anyone for           18:22:42
25    Oaktree and say, look, want to give you      18:22:49
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 353

| | | |
|---|---|---|
| 1 | guys a heads up, we have a very different | 18:22:53 |
| 2 | understanding of the underlying | 18:22:56 |
| 3 | documents?  Did anyone do that? | 18:22:57 |
| 4 | MR. HOWELL:  Object to | 18:23:00 |
| 5 | foundation. | 18:23:01 |
| 6 | Q.    To your knowledge? | 18:23:01 |
| 7 | A.    To my knowledge, I am not | 18:23:02 |
| 8 | aware of anyone reaching out to Oaktree, | 18:23:03 |
| 9 | their counsel, to debate this, debate | 18:23:08 |
| 10 | this issue. | 18:23:11 |
| 11 | Q.    Did anyone, to your knowledge, | 18:23:12 |
| 12 | for the company, reach out to any EFIH | 18:23:14 |
| 13 | first lien noteholder and say, gee, we | 18:23:18 |
| 14 | want to clarify this, a pretty | 18:23:21 |
| 15 | sophisticated investor represented by a | 18:23:23 |
| 16 | pretty sophisticated law firm has an | 18:23:26 |
| 17 | understanding of this agreement that's | 18:23:28 |
| 18 | very different from ours and people are | 18:23:30 |
| 19 | buying and selling interests in this | 18:23:34 |
| 20 | debt, we want the EFIH first lien | 18:23:36 |
| 21 | noteholders to know that we have a | 18:23:38 |
| 22 | different interpretation of the document? | 18:23:39 |
| 23 | A.    That would be -- | 18:23:41 |
| 24 | MR. HOWELL:  Object to form. | 18:23:42 |
| 25 | A.    -- one, that we agreed with | 18:23:43 |

| | | |
|---|---|---|
| 1 | this and agreed with what this | 18:23:45 |
| 2 | interpretation and that would be highly | 18:23:49 |
| 3 | beyond standard protocol for us to reach | 18:23:52 |
| 4 | out to an investor and say oh, this | 18:23:55 |
| 5 | lawyer, and again whether or not we ever | 18:23:58 |
| 6 | had a conversation with the very highly | 18:24:00 |
| 7 | sophisticated Oaktree investor and got | 18:24:03 |
| 8 | questions from him, we don't even know | 18:24:08 |
| 9 | whether this is -- the extent of this | 18:24:13 |
| 10 | conversation, how well that was debated. | 18:24:17 |
| 11 | I don't know that my team even saw this. | 18:24:19 |
| 12 | Q.    Well, it's addressed -- | 18:24:22 |
| 13 | A.    I understand.  Did they read | 18:24:24 |
| 14 | the first part of the, the email or did | 18:24:25 |
| 15 | they read the entire email chain?  And I | 18:24:29 |
| 16 | don't know. | 18:24:34 |
| 17 | Q.    Let me go back to my question. | 18:24:34 |
| 18 | A.    And so to answer your | 18:24:36 |
| 19 | question, no, I'm not aware. | 18:24:37 |
| 20 | Q.    Okay.  Whether the company | 18:24:39 |
| 21 | agreed or disagreed with the | 18:24:42 |
| 22 | interpretation, let's presume the company | 18:24:44 |
| 23 | disagreed, the company didn't reach out | 18:24:47 |
| 24 | to EFIH noteholders or the EFIH first | 18:24:49 |
| 25 | lien indenture trustee and say there | 18:24:55 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | appears to be some difference of | 18:24:58 |
| 2 | understanding in the market about what a | 18:25:00 |
| 3 | key provision of the indentures means, | 18:25:03 |
| 4 | let us tell you what we understand them | 18:25:07 |
| 5 | to mean so that everyone knows what the | 18:25:09 |
| 6 | company's position is, that conversation | 18:25:12 |
| 7 | didn't occur, did it? | 18:25:15 |
| 8 | A.   Let me be very respectful in | 18:25:16 |
| 9 | my response to you.  I don't know if | 18:25:18 |
| 10 | anyone in the company ever read that | 18:25:21 |
| 11 | dialogue. | 18:25:24 |
| 12 | Q.   Okay. | 18:25:25 |
| 13 | A.   And to answer the question, we | 18:25:27 |
| 14 | did not reach out to anyone that I'm | 18:25:30 |
| 15 | aware of and say there is a difference of | 18:25:32 |
| 16 | opinion based upon this email. | 18:25:36 |
| 17 | Q.   Okay. | 18:25:39 |
| 18 | MR. ANKER:  Let's go off the | 18:25:43 |
| 19 | record, I may be done. | 18:25:44 |
| 20 | THE VIDEOGRAPHER:  One moment, | 18:25:46 |
| 21 | please, watch your microphones. | 18:25:46 |
| 22 | The time is 6:25 p.m., we're now | 18:25:48 |
| 23 | off the record. | 18:25:51 |
| 24 | (A recess was taken.) | 18:25:52 |
| 25 | THE VIDEOGRAPHER:  The time is | 18:34:17 |

```
 1              6:34 p.m., we're back on the          18:34:43
 2         record.                                    18:34:45
 3         Q.    Mr. Horton, you I think              18:34:46
 4    testified earlier that you know there's a       18:34:51
 5    provision in the EFIH first lien               18:34:59
 6    indentures, I'm now taking you back to          18:35:01
 7    EFIH, that permits the holders to waive         18:35:04
 8    an event of default and rescind an              18:35:10
 9    acceleration, right?                            18:35:14
10         A.    There are provisions allowing        18:35:19
11    for rescission of acceleration.                 18:35:22
12         Q.    And waiver of defaults, right?       18:35:26
13         A.    Yes.                                 18:35:28
14         Q.    But I think you said you have        18:35:29
15    an understanding that those provisions          18:35:34
16    may not be enforceable in bankruptcy; is        18:35:36
17    that right?                                      18:35:40
18         A.    Generally speaking, and I'm          18:35:40
19    speaking as a layperson, that the stay in       18:35:47
20    the bankruptcy, you know, precludes that        18:35:53
21    option for certain -- for the holders.          18:35:57
22         Q.    When did you first obtain that       18:36:03
23    understanding?                                   18:36:06
24         A.    I would say, you know, several       18:36:08
25    months ago.                                      18:36:19
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Q.    Several months ago.    In | 18:36:19 |
| 2 | calendar year 2014? | 18:36:21 |
| 3 | A.    Yes.    You know, obviously we | 18:36:23 |
| 4 | got the notice and then -- | 18:36:25 |
| 5 | Q.    So when -- and I don't want to | 18:36:27 |
| 6 | ask about the substance, did you obtain | 18:36:30 |
| 7 | that understanding from conversations you | 18:36:32 |
| 8 | had with counsel? | 18:36:34 |
| 9 | A.    It was predominantly with Mr. | 18:36:36 |
| 10 | Moldovan.    My assumption is that he had | 18:36:41 |
| 11 | conversations with legal counsel. | 18:36:43 |
| 12 | MR. HOWELL:  He's not asking | 18:36:45 |
| 13 | you to assume anything.  He's | 18:36:46 |
| 14 | asking you to answer the question, | 18:36:47 |
| 15 | please. | 18:36:49 |
| 16 | THE WITNESS:  Okay. | 18:36:49 |
| 17 | Q.    Did Mr. Moldovan relay to you | 18:36:50 |
| 18 | legal advice he had obtained from | 18:36:54 |
| 19 | counsel? | 18:36:57 |
| 20 | MR. HOWELL:  Object to | 18:36:57 |
| 21 | foundation. | 18:36:58 |
| 22 | A.    No. | 18:36:58 |
| 23 | Q.    What did Mr. Moldovan tell | 18:36:59 |
| 24 | you? | 18:37:02 |
| 25 | A.    Effectively, because we're in | 18:37:03 |

```
 1      bankruptcy, and there's a stay in the        18:37:08
 2      bankruptcy, that the rescission wasn't       18:37:10
 3      going to be honored.  And I'm                18:37:14
 4      paraphrasing of course.                      18:37:17
 5           Q.   Do you have any understanding       18:37:18
 6      of where Mr. Moldovan came up with that      18:37:19
 7      understanding?                                18:37:21
 8           A.   I have no direct knowledge of       18:37:22
 9      how.                                          18:37:24
10           Q.   Do you have indirect knowledge      18:37:25
11      of how Mr. Moldovan came up with that        18:37:27
12      understanding?                                18:37:28
13           A.   No.                                 18:37:30
14           Q.   Mr. Moldovan did go to law          18:37:30
15      school, but he's not a -- he's never been    18:37:34
16      a bankruptcy lawyer, has he?                 18:37:36
17                MR. HOWELL:  Object to             18:37:40
18           foundation.                              18:37:41
19           A.   That's correct.                     18:37:41
20           Q.   And he's been functioning for       18:37:41
21      several years not in a legal function,       18:37:43
22      but in a business function, right?           18:37:45
23           A.   That's correct.                     18:37:46
24           Q.   You don't really think Mr.          18:37:47
25      Moldovan came up with that analysis on       18:37:49
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | his own, do you? | 18:37:51 |
| 2 | A.    No, I do not. | 18:37:54 |
| 3 | Q.    You believe he got advice from | 18:37:55 |
| 4 | someone who is expert in bankruptcy law, | 18:38:00 |
| 5 | right? | 18:38:03 |
| 6 | A.    That would be my expectation. | 18:38:04 |
| 7 | Q.    Okay.  So is it fair to say | 18:38:05 |
| 8 | that at the time EFIH entered into the | 18:38:08 |
| 9 | indentures for the EFIH first lien debt | 18:38:16 |
| 10 | that was outstanding as of the petition | 18:38:21 |
| 11 | -- as of the petition date, $4 billion | 18:38:23 |
| 12 | approximately, EFIH didn't believe that | 18:38:26 |
| 13 | the provision it put in the indentures | 18:38:30 |
| 14 | allowing noteholders to waive an event of | 18:38:32 |
| 15 | default and rescind an acceleration was | 18:38:36 |
| 16 | unenforceable in bankruptcy, right? | 18:38:39 |
| 17 | MR. HOWELL:  Object to form | 18:38:42 |
| 18 | and foundation and outside the | 18:38:43 |
| 19 | scope of the 30(b)(6) topic for | 18:38:45 |
| 20 | this witness. | 18:38:46 |
| 21 | Q.    You're a 30(b)(1) witness, can | 18:38:47 |
| 22 | you answer my question. | 18:38:51 |
| 23 | MR. HOWELL:  Well you asked | 18:38:51 |
| 24 | him to answer for the company and | 18:38:52 |
| 25 | he can't do that and it's outside | 18:38:53 |

| | | |
|---|---|---|
| 1 | the scope of his 30(b)(6) | 18:38:55 |
| 2 | testimony.  You can answer in your | 18:38:57 |
| 3 | personal capacity. | 18:38:59 |
| 4 | Q.    You can answer, Mr. Horton. | 18:38:59 |
| 5 | A.    Okay, would you mind asking | 18:39:01 |
| 6 | the question again. | 18:39:02 |
| 7 | Q.    Sure.  I think you told me -- | 18:39:04 |
| 8 | let me not state it that way. | 18:39:06 |
| 9 | Is it fair to say that at the | 18:39:09 |
| 10 | time EFIH entered into the indentures for | 18:39:13 |
| 11 | the first lien debt that was outstanding | 18:39:15 |
| 12 | as of the petition date, about $4 | 18:39:17 |
| 13 | billion, to your knowledge, EFIH didn't | 18:39:20 |
| 14 | believe that the provision it put in the | 18:39:24 |
| 15 | indentures allowing the holders to waive | 18:39:25 |
| 16 | an event of default and rescind an | 18:39:29 |
| 17 | acceleration was unenforceable in | 18:39:32 |
| 18 | bankruptcy? | 18:39:34 |
| 19 | A.    I don't know. | 18:39:35 |
| 20 | Q.    Was EFIH in the business, in | 18:39:37 |
| 21 | the practice of putting terms in binding | 18:39:41 |
| 22 | contracts that it believed were | 18:39:44 |
| 23 | unenforceable? | 18:39:45 |
| 24 | MR. HOWELL:  Object to form. | 18:39:49 |
| 25 | A.    I don't even understand the | 18:39:50 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | question. | 18:39:52 |
| 2 | Q.    Well, can you give me any | 18:39:52 |
| 3 | other example, any example of EFIH | 18:39:54 |
| 4 | putting a provision in any contract | 18:39:58 |
| 5 | thinking that it was unenforceable and | 18:40:00 |
| 6 | saying let's pull one over on the other | 18:40:02 |
| 7 | side? | 18:40:05 |
| 8 | A.    I don't -- I don't think so. | 18:40:05 |
| 9 | Q.    I wouldn't think so either, | 18:40:07 |
| 10 | it's not something an honorable company | 18:40:09 |
| 11 | would do, right, sir? | 18:40:11 |
| 12 | A.    We try to do business in a | 18:40:12 |
| 13 | very ethical manner. | 18:40:15 |
| 14 | Q.    And so when you put this | 18:40:16 |
| 15 | provision in the agreement, you weren't | 18:40:17 |
| 16 | experts in bankruptcy law, but you | 18:40:20 |
| 17 | thought it was enforceable, right? | 18:40:22 |
| 18 | MR. HOWELL:  Object to | 18:40:24 |
| 19 | foundation. | 18:40:25 |
| 20 | Q.    When you put it in the | 18:40:25 |
| 21 | indentures, right? | 18:40:27 |
| 22 | MR. HOWELL:  Object to | 18:40:28 |
| 23 | foundation. | 18:40:29 |
| 24 | A.    Again, I did not focus on that | 18:40:29 |
| 25 | particular provision, so. | 18:40:31 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Q.    To your knowledge, did anyone | 18:40:36 |
| 2 | at EFIH, when the EFIH agreed to these | 18:40:37 |
| 3 | indentures, think to himself or herself, | 18:40:42 |
| 4 | this provision is unenforceable, but the | 18:40:46 |
| 5 | other guys don't know that?  Anyone think | 18:40:49 |
| 6 | that, to your knowledge, at EFIH or any | 18:40:52 |
| 7 | of the debtors? | 18:40:57 |
| 8 | A.    Again, the way you've | 18:40:58 |
| 9 | structured the question, I don't | 18:41:00 |
| 10 | understand the question. | 18:41:01 |
| 11 | Q.    As best as you know, at the | 18:41:07 |
| 12 | time EFIH entered into the indentures, | 18:41:11 |
| 13 | EFIH assumed that all provisions in the | 18:41:13 |
| 14 | indenture were enforceable, right? | 18:41:15 |
| 15 | A.    Under the contract, yes. | 18:41:17 |
| 16 | Q.    And they understood that it | 18:41:20 |
| 17 | was an integrated contract where all | 18:41:21 |
| 18 | provisions mattered, right? | 18:41:23 |
| 19 | A.    That's correct. | 18:41:25 |
| 20 | Q.    And you couldn't just excise | 18:41:25 |
| 21 | out one provision because the agreement | 18:41:29 |
| 22 | between the parties was manifested by | 18:41:31 |
| 23 | every single provision in that agreement, | 18:41:33 |
| 24 | right? | 18:41:35 |
| 25 | MR. HOWELL:  Object to form | 18:41:37 |

```
1              and foundation.                          18:41:38
2         A.    I'm sure that we believed that          18:41:39
3    all aspects of that contract were                  18:41:42
4    enforceable.   Whether or not it was               18:41:44
5    enforceable under all circumstances is             18:41:47
6    questionable.                                       18:41:51
7         Q.    Okay.   At the time of the              18:41:51
8    discussions you had with Mr. Panossian in          18:42:13
9    September 2010, was that the first time            18:42:16
10   in any context you gave thought to the             18:42:19
11   question if there were a bankruptcy                18:42:23
12   filing would the applicable premium under          18:42:31
13   some or any circumstances be due and               18:42:35
14   payable?                                            18:42:38
15        A.    I would say honestly that's             18:42:41
16   the first time I focused on that                    18:42:42
17   particular indenture.   Element of the             18:42:44
18   indenture.                                          18:42:46
19        Q.    Okay.   To your knowledge had           18:42:47
20   anyone at the debtors focused on that               18:42:58
21   question prior to the discussions that             18:43:00
22   occurred in September 2010 with Mr.                 18:43:03
23   Panossian?                                          18:43:08
24        A.    With Mr. Panossian?                      18:43:09
25        Q.    I'm sorry.  Maybe my question           18:43:12
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 364

| | | |
|---|---|---|
| 1 | was inaccurate -- my question was | 18:43:13 |
| 2 | obviously inexact given your answer. | 18:43:17 |
| 3 | Prior to the discussion with | 18:43:21 |
| 4 | Mr. Panossian in September 2010, to your | 18:43:22 |
| 5 | knowledge, had anyone at EFIH -- had | 18:43:26 |
| 6 | anyone at the debtors focused on the | 18:43:31 |
| 7 | question whether as to any of the | 18:43:35 |
| 8 | debtors, were they to file for bankruptcy | 18:43:39 |
| 9 | would -- it's a garbled question, let me | 18:43:42 |
| 10 | ask it again.  It's getting late in the | 18:43:45 |
| 11 | day. | 18:43:47 |
| 12 | A.    I understand. | 18:43:48 |
| 13 | Q.    I want you to put yourself | 18:43:48 |
| 14 | prior in time to September 2010. | 18:43:50 |
| 15 | A.    Yes. | 18:43:53 |
| 16 | Q.    Prior to September 2010, to | 18:43:53 |
| 17 | the best of your knowledge, had anyone at | 18:43:55 |
| 18 | any of the debtors considered the | 18:44:01 |
| 19 | question, focused on the question, if a | 18:44:05 |
| 20 | particular debtor files for bankruptcy, | 18:44:08 |
| 21 | will there be, will the make whole be due | 18:44:13 |
| 22 | and payable and if so, under what | 18:44:16 |
| 23 | circumstances? | 18:44:18 |
| 24 | A.    I do not know. | 18:44:19 |
| 25 | MR. HOWELL:  Objection. | 18:44:20 |

| | | |
|---|---|---|
| 1 | Q.    You have no knowledge that | 18:44:22 |
| 2 | anyone for the debtors considered or | 18:44:29 |
| 3 | focused on that question at any time | 18:44:32 |
| 4 | prior to September 2010, right? | 18:44:35 |
| 5 | A.    When you say focused, my | 18:44:39 |
| 6 | apologies, what do you mean by focused? | 18:44:41 |
| 7 | Q.    Thought about it, thought | 18:44:45 |
| 8 | about it, gave any thought to the | 18:44:46 |
| 9 | question? | 18:44:48 |
| 10 | A.    I'm -- because in my mind I'm | 18:44:48 |
| 11 | thinking if there is a, an indenture | 18:44:51 |
| 12 | being produced, description of notes | 18:44:54 |
| 13 | being produced, the lawyers are looking, | 18:44:56 |
| 14 | the business team is looking for any | 18:45:01 |
| 15 | specific changes.  So did -- was that | 18:45:03 |
| 16 | change ever in a previous document, | 18:45:09 |
| 17 | previously changed, I don't know.  I | 18:45:12 |
| 18 | don't know the answer to that. | 18:45:19 |
| 19 | Q.    Let me, because I think your | 18:45:19 |
| 20 | answer isn't quite responsive to mine, | 18:45:21 |
| 21 | let me represent to you, I don't think | 18:45:24 |
| 22 | there was any prior use of the premium, | 18:45:25 |
| 23 | if any language before the TCEH new notes | 18:45:30 |
| 24 | in 2010.  But I'm asking a different | 18:45:35 |
| 25 | question. | 18:45:38 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1                  Under the indentures that          18:45:38
 2      existed before September 2010, for any of      18:45:41
 3      the debtors, including EFIH, to your           18:45:48
 4      knowledge, to your knowledge, did anyone       18:45:49
 5      at the debtors think about whether if a        18:45:53
 6      particular debtor filed for bankruptcy a       18:45:58
 7      make whole premium might be due and if         18:46:01
 8      so, under what circumstances?                  18:46:04
 9           A.    I do not know what others were      18:46:06
10      thinking.                                      18:46:08
11           Q.    So you cannot today tell me         18:46:09
12      that anyone for the debtors gave any           18:46:12
13      thought to the question at any point           18:46:15
14      prior to September 2010 when the               18:46:17
15      discussions occurred with Mr. Panossian,       18:46:21
16      right?                                         18:46:24
17           A.    That was my testimony.              18:46:25
18           Q.    And I think you've testified        18:46:30
19      to this, the discussions with Mr.              18:46:31
20      Panossian, which occurred in September         18:46:32
21      2010, were not in any way, shape or form       18:46:35
22      communicated to any holder of EFIH first       18:46:40
23      lien notes, any indenture trustee for the      18:46:45
24      EFIH first lien notes, or any other            18:46:47
25      representative of the EFIH first lien          18:46:50
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | notes, right? | 18:46:52 |
| 2 | MR. HOWELL:  Object to | 18:46:54 |
| 3 | foundation. | 18:46:55 |
| 4 | Q.    To your knowledge? | 18:46:55 |
| 5 | A.    Again, I find, I would find it | 18:46:56 |
| 6 | extraordinary for me to go talk to | 18:47:00 |
| 7 | another first lienholder about | 18:47:02 |
| 8 | negotiations I had with another holder. | 18:47:04 |
| 9 | Q.    So the answer to my question, | 18:47:07 |
| 10 | since you think it's extraordinary, is | 18:47:10 |
| 11 | that as far as you know, the discussions | 18:47:13 |
| 12 | that occurred with Mr. Panossian were | 18:47:19 |
| 13 | kept from all holders of the EFIH first | 18:47:21 |
| 14 | lien notes or potential investors in the | 18:47:25 |
| 15 | EFIH first lien notes and the indenture | 18:47:28 |
| 16 | trustee for the EFIH first notes? | 18:47:30 |
| 17 | MR. HOWELL:  Object to form. | 18:47:34 |
| 18 | A.    I don't know what you mean by | 18:47:35 |
| 19 | kept from, but we had no conversations | 18:47:36 |
| 20 | that I'm aware of with first lien holders | 18:47:39 |
| 21 | regarding our conversations and | 18:47:43 |
| 22 | negotiations with Armen Panossian with | 18:47:45 |
| 23 | Oaktree. | 18:47:50 |
| 24 | Q.    And you also had no | 18:47:50 |
| 25 | conversations, to your knowledge no one | 18:47:56 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | on behalf of the debtors did, with any | 18:47:58 |
| 2 | first lien EFIH noteholders or their | 18:48:05 |
| 3 | representatives, or the trustee, | 18:48:08 |
| 4 | regarding the substance of the discussion | 18:48:12 |
| 5 | with Mr. Panossian? | 18:48:15 |
| 6 | A.    I have no -- I have no | 18:48:17 |
| 7 | knowledge of us having any conversations | 18:48:20 |
| 8 | in that regard. | 18:48:24 |
| 9 | MR. ANKER:  Let's go off one | 18:48:33 |
| 10 | sec. | 18:48:37 |
| 11 | THE VIDEOGRAPHER:  The time is | 18:48:37 |
| 12 | 6:48 p.m., we're now off the | 18:48:38 |
| 13 | record. | 18:48:41 |
| 14 | (Discussion off the record.) | 18:48:42 |
| 15 | THE VIDEOGRAPHER:  The time is | 18:48:49 |
| 16 | 6:49 p.m., back on the record. | 18:48:56 |
| 17 | MR. ANKER:  Mr. Howell, I | 18:49:10 |
| 18 | think during the course of the | 18:49:15 |
| 19 | deposition today I've requested | 18:49:16 |
| 20 | various materials, including, but | 18:49:18 |
| 21 | not limited to the documents that | 18:49:23 |
| 22 | Mr. Horton brought with him today | 18:49:24 |
| 23 | that he reviewed in prep for his | 18:49:27 |
| 24 | deposition.  Do you have copies of | 18:49:29 |
| 25 | those to give me? | 18:49:30 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 369

```
 1            MR. HOWELL:  No, we have not        18:49:32
 2       printed out copies during the           18:49:34
 3       deposition.                             18:49:35
 4            MR. ANKER:  Okay.  We reserve       18:49:36
 5       our rights and keep this deposition     18:49:39
 6       over until such time as we get to       18:49:42
 7       review those documents.                 18:49:44
 8            MR. HOWELL:  I would agree to       18:49:52
 9       keep the deposition over.  I think      18:49:53
10       you meant to say keep the               18:49:55
11       deposition open, but we will, we        18:49:56
12       will oppose an attempt to reopen        18:49:59
13       the deposition.                         18:50:02
14            MR. ANKER:  Okay.  You reserve      18:50:04
15       all your rights, but my position is     18:50:05
16       I get to see the documents that he      18:50:09
17       brought with him as well as             18:50:11
18       everything else that we've              18:50:13
19       requested today, including the, for     18:50:15
20       example, the nondisclosure              18:50:17
21       agreement with Oaktree.  I fully        18:50:19
22       understand you reserve your rights.     18:50:21
23       I want our position to be clear on      18:50:23
24       the record.  And I think your           18:50:25
25       position is as well.                    18:50:27
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | |
|---|---|
| 1 | With that, and while reserving | 18:50:28 |
| 2 | fully our rights to keep this | 18:50:32 |
| 3 | deposition open, Mr. Horton, I | 18:50:34 |
| 4 | appreciate your patience and your | 18:50:38 |
| 5 | time today and thank you. | 18:50:40 |
| 6 | THE WITNESS:  Likewise.  Thank | 18:50:42 |
| 7 | you. | 18:50:44 |
| 8 | THE VIDEOGRAPHER:  Anyone else | 18:50:45 |
| 9 | have questions of this witness? | 18:50:45 |
| 10 | MR. HOWELL:  I may just have a | 18:50:47 |
| 11 | couple of questions.  I promise not | 18:50:49 |
| 12 | to go very long, which is always a | 18:50:52 |
| 13 | dangerous promise for an attorney. | 18:50:54 |
| 14 | EXAMINATION BY MR. HOWELL: | 18:50:56 |
| 15 | Q.   Mr. Horton, to your | 18:50:58 |
| 16 | understanding, when the debtors repaid | 18:51:04 |
| 17 | the first lien notes at issue in this | 18:51:11 |
| 18 | adversary proceeding after filing for | 18:51:14 |
| 19 | bankruptcy, was that an optional | 18:51:16 |
| 20 | redemption under section 3.07 of the | 18:51:18 |
| 21 | first lien indentures? | 18:51:22 |
| 22 | MR. ANKER:  Object to the form | 18:51:26 |
| 23 | of the question and calls for a | 18:51:27 |
| 24 | legal conclusion. | 18:51:28 |
| 25 | MR. HOROWITZ:  Object to the | 18:51:33 |

| | | |
|---|---|---|
| 1 | form. | 18:51:34 |
| 2 | Q.    You can answer. | 18:51:37 |
| 3 | MR. HOROWITZ:  One objection | 18:51:39 |
| 4 | stands for all, right? | 18:51:40 |
| 5 | MR. HOWELL:  Sure. | 18:51:41 |
| 6 | A.    Would you mind repeating the | 18:51:42 |
| 7 | question. | 18:51:44 |
| 8 | Q.    Mr. Horton, to your | 18:51:45 |
| 9 | understanding, when the debtors repaid | 18:51:47 |
| 10 | the first lien notes at issue in this | 18:51:49 |
| 11 | adversary proceeding, after the debtors | 18:51:52 |
| 12 | filed for bankruptcy, to your view, was | 18:51:55 |
| 13 | that an optional redemption under section | 18:51:57 |
| 14 | 3.07 of the first lien indenture? | 18:52:00 |
| 15 | MR. ANKER:  Object to the form | 18:52:03 |
| 16 | of the question.  Object, calls for | 18:52:04 |
| 17 | a legal conclusion. | 18:52:05 |
| 18 | A.    No. | 18:52:05 |
| 19 | Q.    To your view, when the debtors | 18:52:06 |
| 20 | repaid the first lien notes at issue in | 18:52:08 |
| 21 | this adversary proceeding, after filing | 18:52:10 |
| 22 | for bankruptcy, was a make whole amount | 18:52:12 |
| 23 | due, was an applicable premium due? | 18:52:20 |
| 24 | MR. ANKER:  Object to the form | 18:52:25 |
| 25 | of the question.  Object, calls for | 18:52:26 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 372

```
 1          a legal conclusion.                      18:52:28

 2          A.    No.                                18:52:28

 3          Q.    I just want to clarify from        18:52:28

 4     earlier in the deposition, do you             18:52:32

 5     remember Mr. Anker asked you a few            18:52:35

 6     questions regarding whether any first        18:52:37

 7     lien noteholders had required the debtors    18:52:41

 8     to, to repay the notes in bankruptcy?        18:52:50

 9          A.    I recall --                        18:52:56

10          Q.    Do you recall those questions?     18:52:58

11          A.    I recall.                          18:52:59

12          Q.    To your understanding, were        18:52:59

13     any of the first lien noteholders in         18:53:02

14     support of repayment of those notes in       18:53:05

15     the early portion of the bankruptcy?         18:53:09

16              MR. ANKER:   Object to the form      18:53:11

17          of the question.                         18:53:13

18          A.    Yes.                               18:53:13

19          Q.    And who were those first lien      18:53:14

20     noteholders, not any specific names, but     18:53:19

21     just generally?                              18:53:22

22          A.    We had settling parties that       18:53:22

23     wanted us to repay the notes.  We were       18:53:28

24     actually doing an exchange with them of      18:53:30

25     first lien DIP in exchange for their         18:53:35
```

```
 1    notes.                                        18:53:38
 2         Q.    You were also asked questions      18:53:39
 3    about whether there was anything that         18:53:41
 4    required you to repay the first lien          18:53:43
 5    notes at issue in this proceeding in the      18:53:48
 6    early part of the bankruptcy, do you          18:53:52
 7    recall those questions?                       18:53:53
 8         A.    Yes.                               18:53:55
 9         Q.    Do you have an understanding       18:53:55
10    as to whether the RSA had any                 18:53:58
11    requirements upon the debtors regarding       18:54:02
12    repayment of the first lien notes at          18:54:05
13    issue in this adversary proceeding in the     18:54:07
14    early portion of the bankruptcy?              18:54:09
15              MR. HOROWITZ:  Object to form.      18:54:14
16         A.    Yes, it did.                       18:54:15
17         Q.    What is your understanding?        18:54:17
18         A.    Yes, that it -- that the RSA       18:54:18
19    did have requirements that we repay the      18:54:20
20    first lien notes.  I don't remember the      18:54:25
21    specific time frame, but yes, that we        18:54:26
22    did.                                          18:54:28
23              MR. HOWELL:  That's all that I     18:54:31
24         have.                                    18:54:32
25              MR. ANKER:  I did say I was        18:54:34
```

Page 374

```
1              stopped earlier, but you've now        18:54:35
2              asked a few questions, so I have a     18:54:37
3              few more.                              18:54:39
4                   EXAMINATION BY MR. ANKER:         18:54:40
5         Q.   Mr. Howell asked you whether           18:54:42
6    the RSA required the debtors to repay the        18:54:43
7    first lien notes.  The RSA was an                18:54:48
8    agreement with various creditors,                18:54:51
9    including the PIKs and the TCEH, the EFIH         18:54:53
10   PIKs and the TCEH first liens about whom          18:54:56
11   we've spoken earlier, right?                      18:54:59
12        A.   That's correct.                         18:55:01
13        Q.   Okay.  And the debtors were             18:55:01
14   under no compulsion to enter into the            18:55:04
15   RSA, were they?                                   18:55:07
16             MR. HOWELL:  Object to form.            18:55:08
17        Q.   As a business guy, they                 18:55:09
18   entered into the RSA out of their own            18:55:10
19   free -- the debtors entered into the RSA         18:55:12
20   out of their own free will, right?               18:55:14
21        A.   We entered into the RSA as we           18:55:16
22   felt it was beneficial to the estate to          18:55:19
23   have a consensual transaction.                    18:55:23
24        Q.   So you entered into the, the            18:55:25
25   debtors entered into the RSA out of their        18:55:27
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | own free will, correct? | 18:55:30 |
| 2 | A.    To -- I'm sorry -- we entered | 18:55:31 |
| 3 | into the RSA because we felt in our | 18:55:34 |
| 4 | business judgment it maximized enterprise | 18:55:38 |
| 5 | value. | 18:55:42 |
| 6 | Q.    I'm not asking why you entered | 18:55:42 |
| 7 | into it.  I'm asking whether you entered | 18:55:43 |
| 8 | into it out of, whether the debtors | 18:55:45 |
| 9 | entered it into it out of their own free | 18:55:47 |
| 10 | will, and the answer to that question in | 18:55:49 |
| 11 | one word is yes, right? | 18:55:51 |
| 12 | A.    We entered into the | 18:55:54 |
| 13 | transaction, it was a negotiated | 18:55:55 |
| 14 | transaction, and yes, we did that under | 18:55:56 |
| 15 | our own free will. | 18:55:59 |
| 16 | Q.    You were asked whether in your | 18:56:00 |
| 17 | view the repayment in bankruptcy of | 18:56:04 |
| 18 | principal on the first lien notes was an | 18:56:11 |
| 19 | optional redemption, you were asked that | 18:56:14 |
| 20 | question by Mr. Howell, right? | 18:56:17 |
| 21 | MR. HOWELL:  Object to form. | 18:56:18 |
| 22 | A.    Yes. | 18:56:19 |
| 23 | Q.    And your answer to that | 18:56:19 |
| 24 | question was no? | 18:56:21 |
| 25 | A.    No. | 18:56:23 |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

| | | |
|---|---|---|
| 1 | Q.    When did you personally first | 18:56:23 |
| 2 | form the view that a repayment in | 18:56:26 |
| 3 | bankruptcy of the principal amount of the | 18:56:29 |
| 4 | EFIH first lien notes would not be an | 18:56:34 |
| 5 | optional redemption? | 18:56:38 |
| 6 | A.    I would say 90 to 180 days | 18:56:40 |
| 7 | prior to filing the bankruptcy. | 18:56:52 |
| 8 | Q.    Okay.  So either in early 2014 | 18:56:54 |
| 9 | or late 2013, right? | 18:56:58 |
| 10 | A.    That's correct. | 18:57:01 |
| 11 | Q.    And in both cases, after all | 18:57:01 |
| 12 | of the EFIH first lien debt had been | 18:57:03 |
| 13 | issued, right? | 18:57:06 |
| 14 | A.    That's correct. | 18:57:07 |
| 15 | Q.    And did you form that view | 18:57:07 |
| 16 | based on conversations you had with | 18:57:10 |
| 17 | counsel for the debtors? | 18:57:12 |
| 18 | A.    I formed that view -- | 18:57:15 |
| 19 | Q.    Did you form that view based | 18:57:26 |
| 20 | on conversations you had with counsel for | 18:57:28 |
| 21 | the debtors? | 18:57:29 |
| 22 | A.    No, that view was through | 18:57:30 |
| 23 | conversations with the treasury team. | 18:57:33 |
| 24 | Q.    So it was based on | 18:57:35 |
| 25 | conversations you had with others in the | 18:57:38 |

| | | |
|---|---|---|
| 1 | treasury team? | 18:57:40 |
| 2 | A.    Yes. | 18:57:41 |
| 3 | Q.    And how did -- who were those | 18:57:41 |
| 4 | others on the treasury team? | 18:57:43 |
| 5 | A.    Mr. Moldovan, myself, I think | 18:57:44 |
| 6 | Mr. Ley was involved with those | 18:57:47 |
| 7 | conversations. | 18:57:49 |
| 8 | Q.    And we established earlier | 18:57:49 |
| 9 | that Mr. Moldovan, although he does have | 18:57:50 |
| 10 | a legal education, is not a bankruptcy | 18:57:53 |
| 11 | lawyer.  Do you know how Mr. Moldovan | 18:57:54 |
| 12 | came to his understanding? | 18:57:57 |
| 13 | A.    I do not. | 18:57:58 |
| 14 | Q.    May have been based on | 18:57:59 |
| 15 | conversations he had with counsel? | 18:58:01 |
| 16 | A.    Could have. | 18:58:02 |
| 17 | Q.    Okay.  And so you have no -- | 18:58:03 |
| 18 | your understanding is based on things | 18:58:07 |
| 19 | that you were told by Mr. Moldovan and | 18:58:09 |
| 20 | others in treasury, right? | 18:58:12 |
| 21 | A.    That's correct. | 18:58:14 |
| 22 | Q.    You have no independent direct | 18:58:15 |
| 23 | understanding on the question independent | 18:58:18 |
| 24 | of what you've been told by others, | 18:58:20 |
| 25 | right? | 18:58:22 |

| | |
|---|---|
| 1       A.    That's correct. | 18:58:22 |
| 2       Q.    Okay.  What were you told by | 18:58:23 |
| 3   others as to why it is that the repayment | 18:58:25 |
| 4   in bankruptcy, the redemption in | 18:58:30 |
| 5   bankruptcy of the first lien notes was | 18:58:33 |
| 6   not an optional redemption within the | 18:58:35 |
| 7   meaning of section 3.07 of the first lien | 18:58:37 |
| 8   indentures? | 18:58:39 |
| 9       A.    It, again, if you don't mind | 18:58:40 |
| 10   ask the question one more time. | 18:58:45 |
| 11       Q.    Sure.  You've already | 18:58:46 |
| 12   testified that the debtors redeemed the | 18:58:47 |
| 13   notes in bankruptcy, they repaid the | 18:58:49 |
| 14   principal so the notes are not | 18:58:51 |
| 15   outstanding.  And what were you told by | 18:58:53 |
| 16   Mr. Moldovan or anyone else in the | 18:58:57 |
| 17   treasury function you spoke with as to | 18:58:59 |
| 18   why it was their view that that | 18:59:01 |
| 19   redemption in bankruptcy was not an | 18:59:03 |
| 20   optional redemption within the meaning of | 18:59:05 |
| 21   section 3.07 of the first lien | 18:59:07 |
| 22   indentures? | 18:59:11 |
| 23       A.    It -- again, it is in section | 18:59:12 |
| 24   6.02 that we read that as an acceleration | 18:59:18 |
| 25   in the event of a default in bankruptcy | 18:59:21 |

```
1    and then that the notes become due and         18:59:24

2    payable.                                        18:59:27

3         Q.    That was the reason you were         18:59:27

4    given?                                          18:59:30

5         A.    That is a reason in part of          18:59:31

6    the discussion.                                 18:59:34

7         Q.    Mr. Horton, have you -- have         18:59:35

8    the debtors, to your knowledge, ever            18:59:43

9    entered into a contract that has a              18:59:45

10   particular section that begins something        18:59:48

11   like notwithstanding any other section of       18:59:51

12   this agreement, and then proceeds to set        18:59:54

13   forth some terms?  Did debtors ever enter       18:59:57

14   into an agreement that had that?                18:59:59

15         MR. HOWELL:  Object to                    19:00:01

16         foundation.                               19:00:02

17         Q.    To your knowledge?                  19:00:03

18         A.    Have the debtors ever entered       19:00:04

19   into an agreement such as that?                 19:00:06

20         Q.    Yes.                                19:00:07

21         A.    I can't say specifically, but       19:00:08

22   I think so.                                     19:00:13

23         Q.    Okay.  And so the debtors know      19:00:13

24   how to write language, you've got very          19:00:15

25   fine in-house counsel, right?                   19:00:18
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 380

```
 1          A.    I believe so.                    19:00:19
 2          Q.    And you had certainly very       19:00:20
 3   fine counsel advising you with respect to     19:00:23
 4   these indentures, right?                      19:00:25
 5          A.    I believe so.                    19:00:26
 6          Q.    Simpson Thacher is a terrific    19:00:27
 7   law firm, right?                              19:00:30
 8          A.    I believe so.                    19:00:31
 9          Q.    And Gibson, Dunn is a terrific   19:00:31
10   law firm, right?                              19:00:34
11          A.    I would think so.                19:00:34
12          Q.    I'll stipulate they're both      19:00:36
13   terrific law firms.                           19:00:38
14          A.    Okay, okay.                      19:00:38
15          Q.    And they advised you with        19:00:39
16   respect to these indentures, right?           19:00:41
17          A.    They were advisors along with    19:00:42
18   internal counsel.                             19:00:45
19          Q.    And they knew how to draft a     19:00:45
20   provision in section 6.02 that begins         19:00:47
21   notwithstanding anything to the contrary      19:00:51
22   contained in section 3.07, in the event       19:00:54
23   of bankruptcy, the sole remedy of holders     19:00:56
24   will be payment of principal plus             19:00:58
25   interest, all your lawyers knew how to        19:01:01
```

Page 381

| | | |
|---|---|---|
| 1 | write a provision like that, right? | 19:01:03 |
| 2 | MR. HOWELL:  Object to form. | 19:01:06 |
| 3 | Q.    To your knowledge, they all | 19:01:07 |
| 4 | knew how to write a provision like that, | 19:01:08 |
| 5 | right? | 19:01:10 |
| 6 | MR. HOWELL:  Object to form. | 19:01:10 |
| 7 | A.    My lawyers know how to write | 19:01:11 |
| 8 | indentures. | 19:01:15 |
| 9 | Q.    And there is no language in | 19:01:15 |
| 10 | section 6.02, is there, that says 3.07 is | 19:01:17 |
| 11 | inapplicable?  There's no notwithstanding | 19:01:21 |
| 12 | section 3.07 language, is there? | 19:01:24 |
| 13 | MR. HOWELL:  Objection to | 19:01:26 |
| 14 | form. | 19:01:27 |
| 15 | A.    I don't know.  I'd need to | 19:01:27 |
| 16 | look. | 19:01:30 |
| 17 | Q.    I'm not going to at 6 o'clock | 19:01:30 |
| 18 | ask you to take a look and pull out a | 19:01:32 |
| 19 | document. | 19:01:35 |
| 20 | MR. HOWELL:  6 o'clock? | 19:01:35 |
| 21 | Q.    You have no recollection of | 19:01:37 |
| 22 | there being any what I would call | 19:01:39 |
| 23 | superperemptory language in section 6.02, | 19:01:41 |
| 24 | right? | 19:01:46 |
| 25 | MR. HOWELL:  Objection to form | 19:01:47 |

Page 382

| | | |
|---|---|---|
| 1 | and foundation. | 19:01:48 |
| 2 | A.    I don't know what the term | 19:01:49 |
| 3 | means. | 19:01:50 |
| 4 | Q.    You have no recollection of | 19:01:50 |
| 5 | there being language in section 6.02 that | 19:01:51 |
| 6 | says notwithstanding section 3.07 the | 19:01:54 |
| 7 | sole remedy in the event of acceleration | 19:01:57 |
| 8 | will be as follows, right? | 19:01:59 |
| 9 | A.    I have no knowledge, no. | 19:02:00 |
| 10 | MR. ANKER:  Nothing further. | 19:02:02 |
| 11 | THE VIDEOGRAPHER:  One moment, | 19:02:03 |
| 12 | please, watch your microphones. | 19:02:04 |
| 13 | Here now marks the end of tape 6 of | 19:02:05 |
| 14 | the deposition of Mr. Anthony R. | 19:02:08 |
| 15 | Horton, the time is 7:02 p.m., | 19:02:10 |
| 16 | we're now off the record. | 19:02:12 |
| 17 | (Time noted:  7:02 p.m.) | 19:02:13 |
| 18 | | 19:02:26 |
| 19 | _____ | |
| 20 | ANTHONY R. HORTON | |
| 21 | Subscribed and sworn to before me | |
| 22 | this _____ day of _____, 2014. | |
| 23 | | |
| 24 | _____ | 19:02:26 |
| 25 | | |

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 383

1    NAME OF CASE: In re EFH Corporation, et al.
     DATE OF DEPOSITION: December 9, 2010
2    NAME OF WITNESS: Anthony R. Horton
     I wish to make the following changes, for
3    the following reasons:
     PAGE LINE
4    _____ _____  CHANGE: _____

5                 REASON: _____

6    _____ _____  CHANGE: _____

7                 REASON: _____

8    _____ _____  CHANGE: _____

9                 REASON: _____

10   _____ _____  CHANGE: _____

11                REASON: _____

12   _____ _____  CHANGE: _____

13                REASON: _____

14   _____ _____  CHANGE: _____

15                REASON: _____

16   _____ _____  CHANGE: _____

17                REASON: _____

18

19   Subscribed and sworn to before me

20   this _____ day of _____, 2014.

21

22

23   _____  _____

24     (Notary Public)    My Commission Expires:

25

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 384

```
 1              C E R T I F I C A T E

 2     STATE OF NEW YORK   )

 3                          : ss.

 4     COUNTY OF NEW YORK   )

 5

 6              I, GAIL F. SCHORR, a Certified

 7     Shorthand Reporter, Certified Realtime

 8     Reporter and Notary Public within and for

 9     the State of New York, do hereby certify:

10              That ANTHONY R. HORTON, the

11     witness whose deposition is hereinbefore set

12     forth, was duly sworn by me and that such

13     deposition is a true record of the testimony

14     given by the witness.

15              I further certify that I am not

16     related to any of the parties to this action

17     by blood or marriage, and that I am in no

18     way interested in the outcome of this

19     matter.

20              IN WITNESS WHEREOF, I have

21     hereunto set my hand this _____ day of

22     _____, 2014.

23

24              _____

25              GAIL F. SCHORR, C.S.R., C.R.R.
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

```
 1                    I N D E X

 2    EXAMINATION BY:              PAGE:

 3    MR. ANKER               7, 374

 4    MR. HOWELL                 370

 5

 6                  * * * * * *

 7                 E X H I B I T S

 8

 9     DESCRIPTION               PAGE      LINE

10    (Horton Exhibit 1 for          11        1

11     identification, 30(b)(6)

12     deposition notice.)

13

14    (Horton Exhibit 2 for          11        4

15     identification, 30(b)(1)

16     deposition notice.)

17

18    (Horton Exhibit 3 for          33        9

19     identification, motion filed

20     by the EFIH debtors,

21     document 74 on the docket,

22     96 pages.)

23

24

25
```

```
 1      (Horton Exhibit 4 for              45        9
 2      identification, Mr.
 3      Keglevic's first day
 4      declaration.)
 5
 6      (Horton Exhibit 5 for              48        22
 7      identification, declaration
 8      of Stephen Goldstein.)
 9
10      (Horton Exhibit 6 for              57        15
11      identification, transcript
12      of June 6th, 2014 hearing
13      before Judge Sontchi.)
14
15      (Horton Exhibit 7 for              92        3
16      identification, Bates
17      stamped TPG 00003967.)
18
19      (Horton Exhibit 8 for             102        1
20      identification, Bates
21      stamped EFIHMW 00005742.)
22
23
24
25
```

```
 1      (Horton Exhibit 9 for           105        2

 2      identification, Bates

 3      stamped EFIHMW 00275045.)

 4

 5      (Horton Exhibit 10 for          107        1

 6      identification, Bates

 7      stamped EFIHMW 00007382.)

 8

 9      (Horton Exhibit 11 for          107       21

10      identification, larger

11      printout of spreadsheets in

12      Exhibit 10.)

13

14      (Horton Exhibit 12 for          120       12

15      identification, Bates

16      stamped EFIHMW 00047735

17      through 00047739.)

18

19      (Horton Exhibit 13 for          129       14

20      identification, Bates

21      stamped EFH 00080017 through

22      80090.)

23

24

25
```

```
 1      (Horton Exhibit 14 for          136      22
 2      identification, Bates
 3      stamped EFH 00002551 through
 4      00002621.)
 5
 6      (Horton Exhibit 15 for          157      18
 7      identification, Bates
 8      stamped EFH 00305598 through
 9      00305656.)
10
11      (Horton Exhibit 16 for          172      12
12      identification, Bates
13      stamped EFH 00002642 through
14      00002702.)
15
16      (Horton Exhibit 17 for          191      17
17      identification, Bates
18      stamped BLKS 0006082 through
19      0006091.)
20
21      (Horton Exhibit 18 for          199      14
22      identification, Bates
23      stamped EFIHMW 0051200
24      through 0051201 and 7298.)
25
```

```
 1      (Horton Exhibit 19 for          205      25
 2      identification, 8-K filed by
 3      the debtors on October 15,
 4      2013.)
 5
 6      (Horton Exhibit 20 for          213      10
 7      identification, Form 8-K for
 8      EFH and EFIH November 1,
 9      2013.)
10
11      (Horton Exhibit 21 for          222      20
12      identification, transcript
13      of Mr. Ying's deposition
14      taken on June 23rd, 2014.)
15
16
17
18
19
20
21
22
23
24
25
```

```
1     (Horton Exhibit 22 for          231      23

2      identification, letter

3      addressed to the board of

4      directors of EFIH care of

5      Mr. Keglevic, from Tom Mayer

6      at Kramer Levin and Mark E.

7      Hickson, vice president,

8      strategy and corporate

9      development, Nextera Energy,

10     Inc., dated July 16, 2014.)

11

12     (Horton Exhibit 23 for          246      21

13     identification, Energy

14     Future Intermediate Holding

15     Company LLC's and EFIH

16     Finance, Inc.'s first

17     amended answer and

18     counterclaims.)

19

20     (Horton Exhibit 24 for          249      24

21     identification, transcript

22     of the deposition of Mr.

23     Keglevic taken on May 29,

24     2014.)

25
```

```
 1      (Horton Exhibit 25 for          252      25
 2      identification, Bates
 3      stamped EFH2D 10011811
 4      through 10011832.)
 5
 6      (Horton Exhibit 26 for          266       8
 7      identification, Bates
 8      stamped EFH2D 10047582.)
 9
10      (Horton Exhibit 27 for          281      10
11      identification, Bates
12      stamped EFIHMW 00038671.)
13
14      (Horton Exhibit 28 for          297      25
15      identification, Bates
16      stamped EFIHMW 00036448.)
17
18      (Horton Exhibit 29 for          302      12
19      identification, Bates
20      stamped EFIHMW 00053072
21      through 00053073.)
22
23
24
25
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 392

```
 1      (Horton Exhibit 30 for          304      21
 2      identification, Bates
 3      stamped EFIHMW 00087752
 4      through 00087841.)
 5
 6      (Horton Exhibit 31 for          313      17
 7      identification, Bates
 8      stamped EFIHMW 00038664.)
 9
10      (Horton Exhibit 32 for          319       6
11      identification, Bates
12      stamped EFIHMW 00038663.)
13
14      (Horton Exhibit 33 for          321       5
15      identification, Bates
16      stamped EFIHMW 00037075.)
17
18      (Horton Exhibit 34 for          329      19
19      identification, Bates
20      stamped EFIHMW 00139970 to
21      140140.)
22
23
24
25
```

```
 1      (Horton Exhibit 35 for          342       16

 2      identification, Bates

 3      stamped EFIHMW 00084711

 4      through 0084715.)

 5

 6

 7

 8

 9

10

11      (Instruction not to answer.)    264        2

12

13      (Instruction not to answer.)    300       17

14

15

16

17

18

19

20

21

22

23

24

25
```

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**A**

**AARON**
4:19
**ability**
28:19 39:11 40:25
85:9 260:22
**able**
19:6,7,17 41:4 43:19
51:18 66:10 89:21
96:3 111:20 113:3
135:4 139:4 169:22
187:14 256:15,25
257:15 303:25
304:12
**absolutely**
126:3 133:18 148:10
236:19,20 288:2
**accelerate**
294:9
**accelerated**
54:20 75:8,16 76:12
251:20 260:5 295:14
296:9,19
**accelerates**
75:20
**acceleration**
38:23 65:25 82:20
83:5 84:3,24 85:11
89:15 93:18 246:3
247:24 251:9 290:8
292:18,22 293:20
294:2,3 295:4,6
299:1 313:5 314:20
319:23 326:11,16,23
327:16 329:6,7 330:8
330:12 356:9,11
359:15 360:17
378:24 382:7
**accept**
241:14 242:20 249:10
**acceptable**
292:11
**account**
196:6,9
**accountant**

20:24
**accounting**
20:18
**accrete**
185:15
**accrue**
189:21
**accrued**
36:22 180:2
**accurate**
32:6 61:19 65:5,8 89:9
97:20 116:9 249:17
249:19 304:10
**accurately**
64:15 93:21 133:3
146:8 216:24 251:15
305:24
**achieve**
44:10 66:10
**achieved**
38:19
**acknowledge**
22:18 83:25 162:15
213:2 239:18 339:5
**acknowledged**
341:12
**action**
307:2,24 311:11 312:5
331:6 384:16
**actionable**
195:12
**actions**
224:12 264:25 265:2
265:11
**active**
124:9
**actual**
143:16 158:10 250:8
257:15
**Ad**
2:12 3:21
**add**
151:19 297:18 332:3,5
332:7,8,11 335:9
337:2 342:5

**added**
91:4 182:16 212:14
332:20 334:17
**adding**
310:23 332:18 336:5
337:9
**addition**
88:3 127:19 159:6
164:24 165:2,3
214:15 221:1 245:7
267:15,22 294:10,19
332:22 338:14 345:9
**additional**
36:25 150:23 217:10
323:2 331:23 334:15
334:19
**address**
245:25 256:8 347:2
**addressed**
107:11 108:9 193:14
231:16,24 281:15
354:12 390:3
**addresses**
283:22,24 284:1
**addressing**
350:5
**adds**
155:17
**adequate**
19:3 54:17 142:18
176:23
**adjustments**
180:14
**admitted**
338:24
**advance**
172:3
**advantage**
40:12 151:9 237:18
256:6 258:3
**advantageous**
115:16
**adversary**
1:8 6:15 245:8,11
338:25 341:16

370:18 371:11,21
373:13
**advice**
63:8 119:6 260:1
261:13,14,23,25
262:1 264:10,25
265:2,4,12 300:25
301:7,11,15 357:18
359:3
**advised**
184:25 279:20 380:15
**advising**
223:19 380:3
**advisor**
53:23 91:17 137:6
143:10 145:4 272:18
273:10 274:13
**advisors**
47:19,20 121:1 136:2
137:8,13,24 138:2,11
139:10 147:10 156:7
157:15 171:10 173:1
175:12,20 201:23
210:7 225:5 267:16
267:24 268:8 269:12
380:17
**advocating**
219:22
**affect**
248:1
**affidavit**
45:1,3,5 48:2
**affirmed**
57:24
**afternoon**
58:14,20 142:17
**age**
104:18 108:2
**agenda**
148:11
**agent**
3:3
**ago**
15:18 80:4 98:1 244:9
296:5 317:9 326:6

356:25 357:1
**agoodman@krame...**
4:21
**agree**
25:11,12,14 56:4 68:8
79:25 90:23 93:23
103:5 106:10 152:10
152:19 185:22 202:1
219:14 248:23
251:17,19 252:1
265:15 332:11
345:11 369:8
**agreed**
78:18 278:22 328:25
332:7,8 335:9 353:25
354:1,21 362:2
**agreeing**
67:12 68:9 211:10
310:12 334:13
**agreement**
71:18,18 80:21 85:5
126:24,25 129:10
130:6 139:7 143:23
178:16 179:5,14,21
181:22,24 184:15,18
220:7 271:3 276:25
277:19 343:22
344:22 353:17
361:15 362:21,23
369:21 374:8 379:12
379:14,19
**agreements**
126:22 279:14
**ahead**
242:17 283:2 309:20
313:12 335:18
**akherring@wlrk.com**
4:14
**Akin**
174:11 191:21 192:25
193:2,7 220:4
**al**
1:5 6:12 383:1
**Alberino**
191:21 192:24 268:2

**ALEXANDER**
4:9
**alexander.davis@ki...**
4:10
**ALISSA**
4:20
**allow**
40:5 166:1
**allowed**
74:17 229:12 246:1
247:23
**allowing**
247:11 356:10 359:14
360:15
**allows**
183:8
**alternative**
93:11
**altogether**
321:16 324:10
**amend**
333:15
**amended**
11:12 245:4,17 246:9
246:25 333:19,24
390:17
**Americas**
2:13,18 4:17 5:4,9
**amount**
35:23 36:18,25 44:15
44:17,20 83:2 117:10
118:8,11,12,22
134:15,24 151:12
216:17 217:15
340:19,21,23 341:3
341:13 371:22 376:3
**amounts**
36:23 163:14 166:4
170:3 294:20 341:19
**AMR**
198:8 200:11,15,20
203:12,17 204:6
208:21 212:5,15
**anal**
273:4

**analyses**
104:6 110:10
**analysis**
43:16 103:8 110:1
112:3,7 115:14,25
121:3 124:17 171:5
358:25
**analyst**
20:25
**analyze**
171:20 328:5
**analyzed**
100:4,7,17 101:10,11
**analyzing**
115:1 122:14
**anchor**
24:8,10,10 25:19
**ANDREW**
2:20 5:14
**andrew.devore@ro...**
2:21
**ANGELA**
4:14
**angle**
304:1
**angles**
300:14
**Anker**
3:11 6:24,24 7:16
10:20 14:10 16:16
17:4 18:19 19:12,22
33:5 45:7 48:13
50:10 57:6 81:17
85:17 86:16 87:19
101:24 107:19
129:12 133:13,18
136:19 140:4,18,25
142:8 143:7 152:24
153:2 157:8 199:4
205:23 209:8 222:17
231:6,15 233:4,13,21
234:14 239:3 242:13
246:19 249:21
252:14,22 254:8
263:2 266:6 277:16

278:14 279:22
291:20 293:1 297:22
300:21 304:19 319:4
325:12 329:13,22
340:12 342:13
355:18 368:9,17
369:4,14 370:22
371:15,24 372:5,16
373:25 374:4 382:10
385:3
**announcement**
253:20
**annual**
66:5 110:3
**annum**
167:7 217:5
**answer**
8:22 9:15 10:10,14
14:9 20:8 38:11
43:25 56:10 64:17
71:3 75:23 77:7,13
77:21 81:9 84:11
85:4 90:4 94:7 95:5
96:23 100:12 101:1
106:7 116:13 139:4
152:25 162:23 175:7
175:25 179:17
190:17 210:24 224:9
238:13,14 239:16
242:1,12 245:4,17
246:25 247:17,22
249:9,10 259:11
260:25 261:19 264:2
264:5,19 277:3 296:4
296:24 300:17,23
301:4,10 312:14
322:8,17 324:21
331:21,22 333:9,19
333:19,25 338:11
341:15 354:18
355:13 357:14
359:22,24 360:2,4
364:2 365:18,20
367:9 371:2 375:10
375:23 390:17

393:11,13
**answered**
100:25 239:1 240:6
  292:4,25 293:2 328:1
**answering**
9:16 90:5 219:1
**answers**
25:15,17 251:3,8
  321:20
**Anthony**
1:18,18 6:10 7:9,23
  81:22 82:3 141:5
  142:5 143:2 209:16
  209:21 263:9,15
  325:19,25 382:14,20
  383:2 384:10
**anticipate**
271:7
**anticipated**
28:11
**anticipation**
226:3
**antifraud**
144:20
**anyway**
190:16
**apart**
188:3
**apologies**
86:24 114:4 130:17
  132:21 192:15
  199:22 258:10
  281:25 307:5 345:15
  347:10 365:6
**apologize**
30:5 56:9 99:8,12
  104:11 109:2 192:7
  218:14 242:15,18
  252:14 266:18 273:3
  283:1 304:8 312:15
  344:3,17
**appeal**
202:5
**appeals**
198:7 201:5

**appear**
233:8
**appearing**
10:16
**appears**
49:14 53:4 85:8 103:7
  103:15 106:18 110:6
  120:24 121:6 308:8
  330:1 355:1
**applaud**
83:15 237:20
**applicable**
238:5,23 240:3 294:5
  294:23 295:1,9,15
  296:10,18,22 306:23
  307:20 308:12 310:6
  311:10 312:2,13,20
  313:3 322:6 332:3,18
  333:5 334:8,22 335:3
  335:20 336:1,19,22
  336:25 337:2,13,15
  337:17 338:2 363:12
  371:23
**application**
334:24
**applied**
295:2
**applies**
290:7 292:17,21
  316:25 317:6 326:10
  327:15
**apply**
294:5 313:4 335:21
  336:2
**appointment**
266:2
**appreciate**
8:25 28:10 38:12
  51:11 94:6 95:5
  100:12 122:11,21
  124:8 145:16 156:5
  161:11 239:15 305:9
  370:4
**approach**
165:25 166:1 180:6

**appropriate**
30:25 229:15
**approval**
48:7
**approve**
58:21
**approved**
89:5 244:4
**approximately**
23:5 29:12 34:24 35:3
  37:12 39:5 40:21
  41:5 44:14 47:2
  51:22 64:4 69:7
  88:24 124:10,11
  169:14 340:17
  359:12
**April**
29:7,8 73:4,15 74:19
  75:6,25 94:10 104:20
  160:4 172:7 226:1,8
  236:2,22 271:12,23
**area**
25:4 31:5 210:17
**areas**
171:6
**argue**
18:20 83:9 140:19
**argument**
59:2 78:3
**arising**
306:21 307:18 312:1
  330:18 331:2
**Arlington**
20:16,20,22
**Armen**
281:8 306:5 309:9
  310:15,17,21 313:1
  320:13 336:14
  345:15 347:13,23
  348:16 350:8 352:11
  367:22
**arrow**
299:2
**art**
280:17

**articulate**
275:20
**aside**
39:7 96:9,10 98:22
  113:12 121:13
  176:12 260:15 261:1
**asked**
13:11,18 17:5,10
  25:13 65:20 74:12
  78:17 84:6 142:9
  152:14 164:16 202:2
  202:8 239:1 240:6
  247:19 248:25
  254:23 262:4,17
  270:9 271:5 273:1
  292:3,24 296:5 297:4
  300:5 303:17 320:13
  320:14,16 322:13
  326:7 328:1 332:5,17
  336:15,24 338:10
  359:23 372:5 373:2
  374:2,5 375:16,19
**asking**
11:24 14:10 33:23
  49:1 57:20 64:10
  72:17 76:25 84:14,15
  84:18 86:6 100:20
  122:9,10 144:14
  157:3 180:18 192:12
  211:13 239:4 241:10
  244:15 252:12
  258:11,13 261:12
  297:6 302:1 303:10
  308:21 312:8,16,19
  313:2 337:25 340:10
  357:12,14 360:5
  365:24 375:6,7
**asks**
250:25 251:4 320:7
  323:2
**aspects**
363:3
**assert**
264:9,23 265:8
**asserted**

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

196:6
**asset**
64:25
**assets**
134:14,23 135:5 152:3
171:24 185:14
**assistant**
268:20
**associated**
217:16 298:6
**assuage**
318:13
**assume**
8:14,15 10:13 24:25
73:17 139:8 174:23
184:22 243:16
305:23 357:13
**assumed**
362:13
**assumes**
161:10
**assuming**
93:15 94:14 96:17
97:9 110:2 297:7
305:5
**assumption**
67:11 110:7 164:7
167:11,22 168:1
240:18 357:10
**assumptions**
110:11,17 153:13
161:19 164:6 204:16
**assure**
158:24
**attached**
103:8 105:10 107:9
112:8 199:8 200:14
215:20,21 254:3
255:3 306:7 333:24
345:17 346:3 347:23
352:11
**attaches**
191:22 193:6 217:21
218:2 284:9
**attaching**

**attachment**
105:24 281:18 285:9
297:21 346:12
**attachments**
46:15 106:12 107:16
**attempt**
70:19 142:22 156:15
369:12
**attempting**
106:19
**attend**
55:4 137:21
**attended**
15:3,22 268:22
**attendees**
267:5,22
**attending**
15:14
**attention**
53:12 155:7 161:1
208:24 212:6 276:19
293:8 322:24 329:23
**attorney**
234:5 370:13
**attorneys**
2:2,7,12,17 3:2,7,15
3:21 4:2,7,12,16 5:2
5:8 30:23 234:3
**attorney/client**
14:7 18:3 264:21,24
**attractive**
57:3 66:1 68:5,6
**atypical**
288:14,17,19,20,23,24
**auction**
244:7
**August**
67:6 68:17,25 111:20
276:5
**author**
102:11
**authorization**
33:19
**authorized**

52:1 53:7
**automatic**
80:22 93:17 246:15
247:5
**available**
80:7 103:14 121:22
259:23 260:17 261:4
345:18
**Avenue**
2:8,13,18 3:3,17 4:17
5:4,9 6:4 174:14,15
**avoid**
90:15 97:19 123:24
185:6 237:11 238:10
**avoiding**
257:17
**aware**
12:23 13:12 45:4
61:14 79:5,7,18
80:15,17 81:8,11,16
82:24 85:25 98:15
99:2 114:6 119:8
126:16 158:20
181:11,16 182:4
198:12 226:22
227:15 228:1 244:24
245:7,15 246:3
271:19,20 275:1
277:18 333:7,11,12
333:17,23 338:1,7
341:23 353:8 354:19
355:15 367:20
**Awesome**
46:17
**awhile**
207:15 220:6
**a.m**
1:15 6:7 16:20 17:2
48:17,21 57:10,14
81:23 82:4 87:23
88:2 291:17 303:24

---
**B**
---
**B**
315:3,7,20 316:22

317:1 385:7
**back**
17:2 19:25 21:10
25:20 48:9,21 57:14
62:18 66:14 67:17
70:2 78:1 82:5 86:14
88:2 97:2 99:4
100:13 103:20 119:2
133:20 136:9 142:7
150:6 156:25 157:2
162:25 164:6,15
166:12 173:7 182:13
184:18,21 185:4
190:7 197:17 200:2
207:7 209:23 218:22
222:25 231:14
233:20 241:25 245:5
250:11,23 254:17
258:18 263:17
275:24 279:1,24
283:21 291:25
297:17 303:5,25
304:12 310:15,16,21
311:13 313:21
314:18 316:21,24
320:21 324:8 326:2
327:1,12 328:23
330:24 332:1,5 337:1
338:4 340:25 341:24
354:17 356:1,6
368:16
**backstop**
196:10 221:5
**backstopping**
221:3,5,6
**bad**
30:4 128:14,18,25
193:5
**balance**
37:4 117:12,14,24
134:12,20 151:8,23
152:1 235:22
**ball**
283:15
**bank**

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 5

2:7 21:25 198:11,15
198:20 200:6 204:5
208:22 253:12
255:19 256:22,25
257:9,13,14
**banker**
62:23 63:5 223:15
**bankers**
114:14,15 115:20
121:1,16 125:25
223:18
**bankruptcy**
1:2 6:13 8:4 29:6,10
29:21 30:20,23 32:14
33:22 35:9,18 36:13
39:8 45:17 50:15
56:25 70:19,22 71:16
72:9 73:5,14,18 74:4
74:8,22 75:5,15,24
79:11 80:6,24,25
81:15 82:9,13,18
83:8,23 84:9,10
85:19 89:12,14 90:13
94:11,23 95:13 96:15
97:8,18 98:25 100:11
100:24 101:13 115:3
122:16 123:14 124:5
124:7,23 146:14,19
147:5 160:23 161:22
162:4 165:23 166:16
166:25 172:4 182:10
182:10 183:3 185:6
187:19 188:9 190:10
191:9,10 197:13
200:19 203:14,17
209:1,3 210:10 211:8
211:15,17 222:12
225:23 226:3,23
228:25 230:1 233:2
235:1 236:1,22
240:21 249:15,16
251:2,7 256:3 258:17
259:4,17 260:4,11,12
260:19 261:6 262:18
262:24 269:7,23

270:4 272:11,22
273:15 274:20,21
290:13 294:2,4,8,19
294:21 295:5,6,11,13
296:8 308:5,13 311:3
311:12 312:11,21
313:4,5 314:19 315:7
316:9,13,16 317:11
317:13,16,19,21
318:5,8,9,20,21
323:15,25 326:24
330:20 333:1 334:10
334:25 335:14,15,23
336:4 347:18 348:1
348:20 349:22 352:3
352:16 356:16,20
358:1,2,16 359:4,16
360:18 361:16
363:11 364:8,20
366:6 370:19 371:12
371:22 372:8,15
373:6,14 375:17
376:3,7 377:10 378:4
378:5,13,19,25
380:23
**banks**
110:20 114:12,21
122:4 127:6 198:16
**BARTLETT**
2:15
**based**
29:23 69:22 83:21
110:8 165:6 181:20
224:4,11 240:21,21
240:23 264:10,25
265:2,12 347:18
348:7 355:16 376:16
376:19,24 377:14,18
**basic**
8:10 174:1,2
**basically**
13:18 212:20
**basis**
26:24 41:1 66:5,5
67:10,12 68:9 110:14

122:5 126:9,13
167:18,19 176:23
177:2,13 342:9
**Bates**
18:8 19:4,19 92:4,8
102:2,6,8 105:3
107:2,7 120:13
129:15 130:12
131:14,25 136:23
145:18 157:19,22
172:13 176:2 191:18
199:6,11,15 207:18
253:1 255:12 266:4,9
281:11,19 297:24
298:1 302:10,13
304:22 305:3 306:13
313:15,18 319:7
321:6,9 329:20
342:17 386:16,20
387:2,6,15,20 388:2
388:7,12,17,22 391:2
391:7,11,15,19 392:2
392:7,11,15,19 393:2
**BBA**
20:16
**bear**
102:6 165:25 172:18
**bearing**
92:8 130:11 131:14
199:6 266:3 302:10
306:13 313:15
334:21
**bears**
107:6 131:25 145:18
157:22 176:2 297:23
321:9
**beat**
303:25 304:12
**began**
65:18 101:16 115:24
120:5 197:19 229:1
**beginning**
58:12,14 66:16 82:2
116:4 142:4 194:14
209:20 213:5 251:2,6

263:14 325:24 343:7
**begins**
59:4 307:11 314:1
379:10 380:20
**behalf**
6:22 20:2 60:10
131:20 140:9 210:24
368:1
**belabor**
175:5
**belief**
188:13 210:19 256:18
256:23 316:11
335:20 336:1 337:11
**believe**
19:2 25:17 54:8,11,15
56:6 58:19 59:12,17
65:7 92:13 93:4
95:12 97:20 110:2
111:7 124:12 125:9
138:24 142:16 160:9
176:25 199:9 212:15
234:14 241:22
243:19 298:14
301:22 306:8 308:2
309:10 334:17,20
336:18,19,21,22
337:20 341:4 342:23
359:3,12 360:14
380:1,5,8
**believed**
31:25 32:4 59:21
60:14,16 61:12
106:14 135:15
162:16 169:10
176:16 177:2,12,12
177:15 188:13
210:10 338:13,14
342:2 360:22 363:2
**believing**
177:13
**beneficial**
65:15,17 374:22
**benefit**
42:24 43:1 52:13

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

54:23 59:13 64:24
66:6 72:4 101:5
336:16
**benefits**
72:18
**BENSON**
3:20
**best**
26:24 27:3,12,14
41:11 362:11 364:17
**better**
83:16 104:13 183:13
258:24 275:17
276:11
**beyond**
66:25 217:9 354:3
**bid**
241:11 243:5
**bidder**
243:11 244:10
**bidders**
238:12 244:15,17
**bidding**
241:21 244:4
**BIDDLE**
5:2
**bids**
239:11
**big**
112:12 317:14,17
**bigger**
92:19 169:10
**billion**
23:4 26:6 29:10,12
34:23 35:1,3 36:9,14
37:12 38:24,25,25
41:2 49:24 50:24
67:8 73:7 88:23,24
117:4 153:17,22
154:10 155:2,16,18
161:9 163:2,24 164:8
164:19 165:18
166:18,20 169:15,16
169:16,20 172:3
178:9 180:17 183:11

184:3 187:6,10,12
221:2,6,9 228:5,12
235:16,17,19 237:12
238:11 240:24 241:2
243:18,21 244:25
276:6 359:11 360:13
**binder**
17:17 18:10,16 19:13
**binding**
360:21
**bit**
69:17 99:4 125:21
182:5 210:18 219:4
254:6 352:13
**BK**
290:9,12,17,18 292:23
326:12 327:17
**BlackBerry**
346:12
**blend**
197:5
**blended**
70:23
**BLKS**
191:18,22 388:18
**blood**
384:17
**BNY**
349:7
**board**
113:20 114:10 193:15
204:5 213:24 231:17
231:25 232:16
265:19 390:3
**body**
174:2
**bold**
40:18 42:7 51:23
**bond**
155:16,20 156:10
347:21 348:5,12
**bondholders**
351:25
**bore**
37:8,11,13

**borrow**
41:4 170:9
**boss**
252:9
**bother**
18:21
**bottom**
62:6 153:15 157:4
306:18 307:6 314:3
321:18,24
**bounce**
171:9
**box**
147:4 298:25
**boy**
317:14
**bracket**
110:20 114:12,15
198:16,16 256:13
300:5
**brackets**
310:7
**break**
8:20,24 19:16 28:16
28:18 50:6 81:18
140:21,23 142:23
143:9 175:25 209:10
209:24 219:4 263:3
293:10 325:14
**brief**
12:22
**briefcase**
16:7 17:23 18:18
**briefly**
19:24 20:11 21:2 55:3
254:21
**bring**
16:5 17:21 165:18
**bringing**
180:17 240:17
**broaden**
269:2
**broader**
299:14,15
**broadly**

**borrow**
275:22
**Broadway**
3:22
**Brock**
350:22
**broke**
48:25 57:19 263:18
**brought**
16:8,14 17:8 65:15
245:9,10 368:22
369:17
**building**
18:17 108:19,20
198:24
**bulge**
110:20 114:12,15
198:16 256:13 300:5
**bullet**
148:17 154:10 165:3
**bunch**
46:14 105:9 107:8
158:21 170:25
283:23
**bury**
88:7 147:24 148:3
162:9
**business**
26:20 27:4,18 34:2,5
43:18 64:12 78:4
83:21,21 84:7 110:9
120:9 151:12 177:10
184:6,8 242:4,21,22
306:9 308:10 309:10
309:16 358:22
360:20 361:12
365:14 374:17 375:4
**butcher**
30:8 318:17
**butchering**
344:4
**buy**
238:2,20
**buying**
227:7,7,13 353:19

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**C**

**C**
1:1 2:1 3:1,12 4:1 5:1
  384:1,1
**caffeine**
63:20
**calculates**
105:25
**calculating**
108:12
**calculation**
52:23 105:20 109:7
  115:6 293:23,24
**calculations**
106:6,9,13,20 113:8
**calendar**
200:12,22 266:1,14
  268:18,19 357:2
**California**
4:8,8
**call**
18:21 28:19,25 29:2
  62:15 101:7 109:14
  109:16 137:18
  155:16,20 156:21
  165:6 166:1,6 167:4
  167:5 168:11,16,20
  170:4 217:4 218:12
  218:13 266:16
  280:18 285:1,13
  286:19,23,24 287:2
  287:13 289:18
  292:16 303:21 314:1
  381:22
**callable**
285:25 287:8 288:2,4
**called**
7:10 9:19 53:12
  126:21 168:10 169:6
  198:7 212:6 276:18
**calling**
166:3,3 168:15 183:21
  317:10
**calls**
14:7 177:5 208:23

261:18 264:20 320:2
  370:23 371:16,25
**candidly**
320:15
**cap**
306:23,24 338:3,3
**capable**
266:3
**capacity**
9:20 11:14 44:2 53:23
  119:14 139:2,3 360:3
**capital**
21:24,25 22:5,7,9,15
  23:17 24:18 26:6,17
  26:20 39:1 44:4 68:5
  135:10 149:23
  160:14 174:1 198:21
  299:24 314:6
**capitalization**
155:12
**Capstone**
5:16 273:22
**capture**
116:17,24 117:22
  337:14
**captured**
117:9
**care**
193:18 231:17,25
  232:18 390:4
**career**
30:21 128:14,19,25
**careful**
118:10 139:20 175:12
  347:7
**carries**
307:9
**Carter**
105:9 199:19 203:21
**case**
1:5 2:12 6:14,16 17:20
  18:13 28:7 29:6,14
  29:18 31:24 34:7
  43:9,13 45:5 55:22
  56:25 93:12 94:3,3

98:5 163:7 198:8
  222:12 233:2,9
  258:17 301:20
  306:21 307:17
  311:25 330:17 331:1
  332:22 383:1
**cases**
8:4 47:22 50:15 51:24
  88:22 249:16 376:11
**cash**
21:22 37:2 150:25
  153:16,17 154:10
  155:2 156:8 163:25
  178:10 183:12 184:3
  184:4,5,7 190:11,22
  191:3 216:18 238:8
  259:10
**catch**
344:16 348:13
**catchall**
337:11,13
**caught**
293:7
**cause**
246:14
**caused**
79:11
**cc**
303:4 346:22
**ccs**
283:23
**cc'ing**
105:8
**cell**
285:2,2
**Center**
1:20 3:9 5:9 6:8
**Centerview**
268:5,7
**Central**
200:8 291:15
**certain**
43:15 119:11 264:25
  265:11 279:12
  356:21

**certainly**
24:6 52:9 63:3,4 65:9
  113:9 114:23,25
  115:12 128:20 139:5
  142:21 159:14
  210:11 211:3 219:2
  226:13 230:6,7
  235:11 241:20 267:9
  274:3 317:19 326:21
  331:11,15 380:2
**certified**
1:22,23 20:23,25
  384:6,7
**certify**
384:9,15
**chain**
343:8 349:14,17
  354:15
**chair**
56:5 311:6
**challenge**
256:12
**chance**
180:16
**change**
36:6,7 141:3 180:11
  241:13 252:20 263:7
  272:1 313:2 324:17
  324:20 325:2,4,7,10
  329:1,4 348:11
  352:18 365:16 383:4
  383:6,8,10,12,14,16
**changed**
257:1 365:17
**changes**
180:13 344:7 345:5
  365:15 383:2
**Chapter**
1:4 47:22,22 51:24
  88:22 93:19 94:13
  332:22
**characterization**
188:11
**characterize**
42:18,20 52:9 97:12

175:16
**characterizing**
239:4
**CHARLES**
3:12
**charles.platt@wilm...**
3:13
**chart**
203:9
**chartered**
20:24
**cheapest**
38:8
**check**
234:16 277:17 317:2
**Chi**
344:13 346:17
**Chicago**
4:3
**chief**
23:13
**choice**
83:16 301:5
**Chris**
199:20
**chronological**
192:10 293:10 321:23
**chronologically**
192:9 282:3,5 344:16
    344:20
**Chuck**
201:11,15,19,19
**Cieri**
199:20 202:19,22
    203:22 267:13
**Circuit**
198:8
**circulated**
50:6
**circumstances**
14:14 43:24 120:10
    363:5,13 364:23
    366:8
**Citi**
115:19 120:25 121:20

**Citigroup**
114:17
**City**
6:5,9
**claim**
196:6
**claims**
178:9 196:2,9 217:13
**clarification**
50:16 322:12
**clarified**
96:5
**clarify**
326:4 353:14 372:3
**clarity**
96:7
**class**
211:9,19
**clause**
295:6 306:22 307:18
    312:1
**clauses**
314:20
**claw**
101:5,6 155:3,24
    156:1 165:20,21
    166:5 183:16
**clawback**
73:22 103:13 155:16
**claws**
71:21
**clean**
166:9 270:7 284:9
**clear**
19:9 88:18 95:8 108:9
    133:17 140:14
    169:24 185:23 207:4
    237:21 264:22
    279:11 331:14
    352:18 369:23
**clearer**
62:14
**clearly**
105:15 175:19
**clerk**

58:13
**clients**
197:7
**close**
64:13 219:16,17,18
    220:2
**code**
80:6
**cognizant**
242:24
**Cohen**
200:5 203:11
**colleague**
7:1
**collectively**
23:3 282:19
**college**
20:13
**colloquy**
234:22
**column**
154:5 161:15,25
    164:22 255:19
**columns**
109:12 161:13 301:18
**combined**
184:5
**come**
7:18 37:5,5 69:4,9
    99:24 100:21 110:18
    110:18 111:15
    153:23,24 164:4
    169:7 170:23 186:17
    262:24 293:11,15
    322:9 326:15 331:24
**comes**
208:21 332:24
**comfortable**
8:21 332:17
**coming**
54:21 155:2 169:12
    183:12,14 184:2
    327:24
**commence**
88:21

**Commission**
144:11 383:24
**committed**
194:21
**common**
43:17
**communicated**
14:2 277:9 281:7
    366:22
**communication**
318:12
**communications**
14:8 18:4 210:1 212:3
    282:6,14
**companies**
63:7 146:18 147:2,4
    214:13,17,19 223:15
    299:21 324:3,4
**company**
1:7,10,11 3:7,15 5:2
    7:3 10:7 15:9 20:3,7
    21:5 26:9,12,14,19
    26:25 27:20 28:7
    31:17 34:6 35:23
    40:25 44:16 60:5
    63:4 72:20 74:1 78:5
    78:9,12 79:8 84:18
    85:7 90:13 91:17
    100:22 114:12,22
    115:16,21,23 116:1
    119:6 123:8,9,12
    127:1,24 128:2
    130:14 132:12
    138:10 139:9 140:9
    159:9 160:6 163:15
    163:20 165:24
    167:21 168:3,14
    169:4,19 173:18,19
    175:8,17 177:11,15
    178:18 179:4,7 183:1
    188:19 189:16,24
    190:8 191:7,9 194:25
    196:15 197:2,2,11,19
    198:25 205:7 210:25
    211:3 212:7,7,21

223:20 227:5,11,22
246:23 267:6 269:22
272:21 273:15
274:19 288:5 289:13
292:12 295:10
297:20 323:20
329:17 338:18 349:3
351:22 352:24
353:12 354:20,22,23
355:10 359:24
361:10 390:15
**company's**
26:16 27:25 28:15,18
30:14 34:2 55:8
63:10 65:20,23 84:19
95:2,3,15,22 114:14
124:24 125:3 179:12
208:23 210:7 215:5
289:3 320:24 349:4
349:11 355:6
**compare**
241:10
**compared**
36:12 325:5
**comparing**
69:10
**comparison**
241:13
**compelling**
56:4 59:14,23
**Competitive**
329:16
**complaint**
341:17
**complete**
9:13 20:2 92:12
233:24 234:1,4,6
273:4
**complex**
33:1 294:16
**compliance**
21:24
**compulsion**
258:15,20,25 374:14
**compulsive**

273:4
**computer**
218:15,23
**conceded**
341:17
**conceivable**
158:17
**concept**
146:21 287:14
**concern**
317:23 318:6 323:3,7
323:16 324:1
**concerned**
280:5 316:8 324:7
**concerns**
171:11 318:14
**concert**
39:16 54:20
**concluded**
234:18 243:4
**conclusion**
177:3,6 199:13 224:11
229:25 230:11
270:21 271:13
370:24 371:17 372:1
**conclusions**
177:8 212:17
**condescending**
170:20
**condition**
19:1
**conditions**
40:13,23 54:9 56:12
67:16,25 217:11
288:9
**conference**
18:22 137:18 266:16
268:11
**confidential**
157:5 277:2
**confidentiality**
276:24 278:9 279:14
**confirmation**
265:6
**confirmed**

233:22
**confused**
324:23
**conjunction**
230:16,20,23
**connection**
12:24,25 44:7 47:21
48:1,6 138:11 143:14
**consecutive**
199:12
**consensual**
374:23
**consensus**
24:12 204:25 214:20
244:3
**consent**
196:10
**consequence**
337:8,8
**consider**
23:9 124:16 194:25
197:11,21 300:1
**considerably**
230:2
**consideration**
90:10,11,12,12 124:10
204:1 217:8 239:25
**considerations**
239:7
**considered**
23:1 24:7 72:20 99:18
99:25 100:14,16
101:9 299:25 316:2
364:18 365:2
**considering**
101:21 103:20 104:5
108:21 115:1,11
318:7
**consist**
106:12
**consistent**
153:21 188:16,17
229:19 302:25
**consistently**
90:22

**consists**
127:22
**consolidated**
9:25 146:5 197:24
**constituencies**
179:6
**construct**
271:18
**consult**
17:10
**contact**
78:21 119:17,21,24
281:8 352:24
**contacted**
78:17 297:3
**contain**
279:15
**contained**
293:25 380:22
**contemplates**
177:17
**contemplating**
168:15
**contemplation**
154:21 156:6 179:25
**context**
100:10 110:23 112:5
199:23 211:8,14,16
222:10 258:1 290:14
316:15 363:10
**contingent**
134:16 135:6
**continually**
116:1
**continue**
171:20 186:20 212:25
259:20
**continued**
3:1 4:1 5:1 114:22
119:2 124:19 143:6
184:7 188:23 214:12
238:9 259:8
**continuing**
125:6 197:3,3 204:23
**continuity**

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

237:11 239:8
**continuously**
71:6 116:3
**contract**
64:21 76:4,9,19,24
77:11,18 83:22,24
259:21 361:4 362:15
362:17 363:3 379:9
**contracts**
360:22
**contrary**
380:21
**controlling**
304:2
**conversation**
9:2 111:13 237:5,8
273:20 274:15 275:4
287:15 299:14,16
302:3,6 309:4 315:15
337:6,10 354:6,10
355:6
**conversations**
12:14,16 175:22
180:15 182:15
198:25 227:16
269:11 270:24 275:1
277:1 282:21,23,24
283:5,7,10 299:23
300:2 305:25 357:7
357:11 367:19,21,25
368:7 376:16,20,23
376:25 377:7,15
**convert**
35:12 123:15,16
180:19 187:18,21
188:14,21,24 189:4
220:25 221:10,17
**convey**
42:15
**conveys**
232:19
**cooperation**
210:12,16
**copied**
105:15 233:8

**copies**
19:17 142:11 234:1
283:19 284:10
368:24 369:2
**copy**
16:10 17:7 86:17,18
139:17 207:21,23
233:22,24 234:6
277:25 304:25 321:2
327:5,6,10 328:22
343:9 348:17
**Corp**
3:21 6:12
**corporate**
21:8,9,11 231:21
232:4 351:4 390:8
**Corporation**
1:5 383:1
**correct**
8:1,2,5,6 12:5 15:20
24:22,23,24,25 25:16
28:1 31:20 32:3 35:2
35:15,19 36:4,15
37:10 39:24 40:20
41:8 42:13 47:9,10
48:4 50:10 51:1 52:3
53:8,20 58:1 60:5,8
60:12,15 61:7,8,15
61:24 62:22 63:12
64:16 65:10 68:15,19
68:24 69:2 78:14
79:12 82:10 83:6
85:13 88:20 89:7
93:4 95:18,20 98:8
98:11,19 102:15
106:6,10 109:23
117:21,25 118:6
124:21 126:7,11,15
128:11 130:15,23,24
131:4,6,10 133:12,25
134:4,10 135:2,8,12
135:16,17,23 143:18
143:24 144:3,6,12
146:9,12,20,24 147:7
147:22 148:15

150:15,18,21 153:18
154:3 155:19 157:17
161:14,17,20,23
162:5,20,24 163:6,10
163:19,22 165:1,9
166:22 168:2,6,12
169:3 170:11,13,18
172:10 173:12,15,20
173:25 174:5,17
176:19 178:13
179:23 183:4 185:2
193:21 196:13
200:13 201:21,24
206:6 208:17 209:5
210:14 213:22 214:3
215:24 216:8 219:13
220:9 221:18,21
223:21 224:6 227:9
228:21 229:8,10,17
229:22 230:14
235:18 238:24 239:6
241:16 243:2 244:19
244:22 248:19
251:16 253:16
266:11 267:2,4 268:6
268:9 271:24 274:8
276:3,8 280:21
284:17,18,22,25
288:21 290:11
302:19 307:13 308:7
319:24 320:4 322:16
333:22 334:11 336:7
339:11 341:10
342:24 358:19,23
362:19 374:12 375:1
376:10,14 377:21
378:1
**corrected**
61:10
**correction**
16:25
**correctly**
42:8,10 59:16 60:25
65:2 99:21 103:1
106:24 109:18

117:16 165:8 168:7
168:14 170:12 195:3
196:12 201:6 217:18
224:17 290:10 304:4
307:3,25 348:3
350:23
**correspondence**
197:18
**cost**
38:5,20 43:20 51:20
52:6,15 66:10 72:3,4
72:6,19 90:15 91:14
100:4,7 101:4,4
103:9 105:25 108:13
115:6 122:17 256:5
**costs**
38:14 72:5 116:9,22
118:9 217:16 251:13
**counsel**
6:17 11:23 12:12
13:25 14:2,25 15:2
17:11 31:16 32:2
55:7,9 174:11 175:3
193:3,19,23 211:21
230:18 233:25 260:2
262:9 263:20,25
264:10,18 265:1,3,13
265:20 267:7,11,23
272:18 273:10
274:12 284:6 297:8
300:11,15,24 301:7
301:15 305:13 327:9
342:23 346:1 349:2
349:11,18,19 350:10
350:11,21 351:12,17
351:23 353:9 357:8
357:11,19 376:17,20
377:15 379:25 380:3
380:18
**counterclaim**
245:5 246:9,12 333:9
333:20,25
**counterclaims**
245:18 246:25 390:18
**counterparties**

117:2
**counterparty**
279:17
**COUNTY**
384:4
**couple**
45:17 87:17 145:12
  195:18 213:6 300:9
  303:18 320:2 326:4
  370:11
**coupon**
155:4 156:2 283:11
**coupons**
66:18 283:13
**course**
51:23 64:5 250:19
  343:2 358:4 368:18
**court**
1:2 6:13 7:6 9:6 47:8
  52:5 84:9 146:18
  148:19 149:9,25
  176:10 177:20,22
  178:5,6 198:7,7
  202:3 224:7 244:4
  260:13
**courtesy**
9:16
**court's**
53:12
**covenant**
80:19 327:22
**covenants**
24:6
**cover**
105:7,19 107:11 109:3
  139:22 158:23
  191:21 192:21
  234:15,17 265:25
  305:1 309:8
**covered**
64:25 138:14 276:9
**covers**
10:14
**CPA**
20:22,23

**create**
323:13
**created**
89:23 214:17 255:2
**creates**
97:22
**credible**
195:11
**credit**
66:21 67:4 69:18,23
  114:19 169:21 256:4
**creditor**
174:2 206:16 207:10
**creditors**
64:24 66:7 138:3
  160:13,16,17 173:1
  174:7 175:21 178:17
  178:18 179:9 180:10
  180:18,19 184:10
  187:16 206:12,17,18
  206:21 207:3,9 214:7
  214:14 216:10 217:7
  222:7 224:13,14,15
  224:16 226:20
  229:14 236:25 237:9
  237:10 243:1 246:18
  247:8,14 248:2,16,21
  374:8
**critical**
90:1
**cross-check**
110:19
**CSC**
5:2
**curious**
74:14
**current**
18:25 54:8
**currently**
49:23 50:23 169:17
**cut**
171:3
**Cutler**
3:7,15 6:25
**C.R.R**

384:25
**C.S.R**
384:25

———————— **D** ————————

**D**
1:1 3:11 33:19 385:1
**Dallas**
20:19
**dangerous**
370:13
**DANIEL**
2:4
**daniel.vaillant@frie...**
2:5
**dark**
352:13
**data**
70:15
**database**
108:19
**datapoint**
115:13 203:25 212:14
  236:17
**datapoints**
100:8
**date**
19:11 22:20 23:2,25
  34:18 37:7 39:2
  64:22 73:23,24 80:10
  80:20 104:10 124:10
  124:11 149:20 160:2
  165:16 168:11,16,20
  215:14 216:21 255:1
  269:25 274:3,6,9
  283:8 286:24 306:10
  308:10 309:11,17
  310:14,21 339:13,16
  339:25 340:3,3,4,5,6
  340:8 341:5,9 359:11
  360:12 383:1
**dated**
69:14 120:16 172:18
  176:14 192:17,22
  205:17 213:20 215:6

215:22 219:7 232:5
  234:24 249:23
  253:14,19 254:3,24
  265:24 269:3 281:16
  283:18 329:15
  343:10 390:10
**dates**
119:9,15 166:2 167:4
  167:5 183:22 220:1
**daughters**
83:14,15
**David**
3:18 7:1 62:15
**david.gringer@wil...**
3:19
**Davis**
4:9 12:14
**dawn**
316:7
**day**
7:19 27:8 29:13,18
  30:17 31:7,13 32:5
  34:6,17 43:12 45:5
  45:11,14,15 47:8
  48:2,2,3,6 64:18 73:3
  73:14,18 215:9
  217:21 218:2 245:4
  245:16 284:15 344:1
  344:13 346:16
  351:21 364:11
  382:22 383:20
  384:21 386:3
**days**
344:8 376:6
**DB**
202:2
**DC**
3:17
**deal**
178:16 179:4,14,20
**dealer**
126:22,24 128:3,7,15
  129:9 130:5 139:6
  143:22 181:21,23
  271:3

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**dealers**
175:10
**dealing**
166:14
**debate**
140:20 219:16 278:16
353:9,9
**debated**
201:2 354:10
**debating**
140:6
**debentures**
201:3
**Debevoise**
284:5 342:23 346:11
347:3
**debevoise.com**
284:1
**debt**
21:23,25 22:6,14,19
22:21 23:4,7,23,24
24:17,18 25:21 28:19
29:11 32:21 33:20
34:8,11,14,15 35:1,7
35:8,11,21,23 36:12
36:18,24 37:2,7 38:6
38:18,22 39:9,13,14
40:12,23 41:2,6
42:21,23 43:2,8,11
49:13 54:19 57:2,5
60:21,22 65:24 66:13
67:9,15,24 68:4,11
68:21,23 70:21 71:10
71:12 73:6 74:9,17
74:19,25 75:2,6,8,15
75:19,25 76:2,3,8,12
77:12 78:6,13 82:8
82:12,21 86:3 89:14
89:16,20,21 90:14,18
98:6 99:19 100:2,23
101:13 103:11,22
104:8,9 106:3,3,17
106:21 108:14,15
110:3 111:19 115:3,8
117:8,13,19 121:5,17

122:16 126:17
143:16 144:9,16
150:23 151:1,8,12
153:23 154:1,11,15
154:23 156:9 163:5
164:20 165:4,5,13
166:15,21 167:2,8,9
167:23 170:3,7
173:22,24 178:9,10
182:11 183:9,16,21
189:18 199:2,3
216:18 218:6 219:11
221:16 228:4,22
246:3 251:9,21
253:22 255:21 256:5
258:5,16 259:5,9,16
259:22,23 260:4,5,7
260:12,13,23 261:4
261:15 262:3,19,20
262:22,25 263:21,23
265:12 269:8 272:12
272:23 273:16 274:5
274:22 275:8 276:7
290:8 292:18,22
293:20,20 294:9
295:13,14 296:8,9,13
296:16,18,20 299:1
317:23 326:11,23
327:16 334:10 335:1
353:20 359:9 360:11
376:12
**debtor**
35:10 64:19,22 160:13
260:3 267:16 275:2
314:12 364:20 366:6
**debtors**
1:6 4:2,7 6:23 9:21,24
9:24 11:17 20:8 23:3
23:18,20 24:18 26:23
27:11 30:16 31:6,15
31:25 32:4 33:7,11
35:5 39:1,7,12 40:4,5
40:10 41:11 42:11,14
43:11,19 44:7,21
47:21 49:10,23 50:23

51:21 52:1,4 53:6,9
53:16,19,19 54:5,13
55:20 56:14,22 57:23
58:21 59:18,21 60:2
60:10,14 61:12,20
62:15,20,25 64:12
65:4,9,14 67:14
70:18 71:11 73:14
74:18 75:4,5,22,24
76:6,13 77:8,15,25
78:5 79:20 82:10
83:25 84:16,17 86:2
88:21,25 89:4,11
93:3,23 94:12 96:14
97:7,15 98:7,13,17
101:9 103:9,20 104:5
106:2,15 108:12
109:22 110:2 111:4
111:19 118:13,15
127:7 128:10 131:8
131:21 135:25 138:3
143:13,16,21,25
147:9,25 149:5,16
151:11 157:9 162:16
163:25 168:10
170:14,23 172:6
176:13,16,20,25
181:7,12 182:6
193:19 197:13
198:12,17 201:23
202:2,5 206:2,4,15
210:1 213:6 217:22
218:3 219:9,20 220:6
221:25 222:5 224:20
226:2,8,14 229:1,3,7
229:12,18,23 230:10
235:24 236:21,24
237:5,22 238:15
239:19 240:9,20,25
241:12,14 242:2,20
242:24 243:3,6,16,19
244:1,13,16 245:3,15
245:24 246:8 248:6
248:20 253:18 255:1
256:2 258:14 259:2,7

260:18 261:5,13,25
264:7 265:7,18
267:11 270:11,18,19
271:12,21 272:8,16
272:19 273:9,11
274:14 276:17 277:8
277:24 278:6,22
281:6 299:17 309:2
310:11 314:10
317:22 332:7,21
333:8,17,24 334:4,9
334:12 335:8 338:23
339:5 341:11,14
342:1 349:17,19
350:2,2,12 351:12,16
362:7 363:20 364:6,8
364:18 365:2 366:3,5
366:12 368:1 370:16
371:9,11,19 372:7
373:11 374:6,13,19
374:25 375:8 376:17
376:21 378:12 379:8
379:13,18,23 385:20
389:3
**debtor-in-possession**
31:8 34:22 54:6
**debts**
135:5
**December**
1:14 6:6 17:1 150:19
257:4 383:1
**decided**
100:18 198:8 229:14
229:19
**decision**
84:8,16,17 198:12
203:12 204:6 208:21
212:6
**decisions**
212:16
**deck**
120:25 172:17 177:14
253:11 254:6
**decks**
178:3

declaration
45:11,14,15 46:20
47:8 48:1,11,23 49:2
49:6,9 50:12,13 52:2
53:11 386:4,7
declared
80:9,13 81:3
declaring
80:19 81:13
declined
259:2
declining
286:23 287:1
deconsolidation
123:25
default
75:16 78:10,11,18
79:2,4,10,16 80:9,14
80:19,20 81:4,14
82:19 83:4 84:2,23
85:10 294:3 295:5,7
306:21 307:18 308:4
312:1 316:25 317:6
318:11 326:17
327:21,22 330:7,18
330:21 331:1 356:8
359:15 360:16
378:25
defaults
356:12
Defendants
1:12
defense
6:17 264:10
define
133:5 258:25
defined
40:14 77:18 206:22
214:18 216:13,23
337:3
defines
82:18
definition
55:22 69:13 77:23
133:23 134:19

definitions
338:5
definitive
225:1 226:1
Degeyter
350:22,24
degree
20:14,17 278:4
Delaware
1:2,7 2:17 3:7,15 5:3
6:14 7:2
delivery
132:13 133:2
demand
66:22 198:4
demanded
98:21,24
demanding
191:8 197:10
demonstrate
246:14
demonstrated
246:13
demonstrates
59:12
Dempsey
267:13
deny
350:3
department
284:21
depend
43:23
dependent
127:11
depends
210:21
deposed
8:3 12:24
deposition
1:17 6:10 10:4,17,23
10:24 11:2,5,13
12:18 13:4,8,15,24
14:4,16 15:19 16:3
17:9,21 18:14 19:5

30:9 33:24 81:22
82:3 100:15 138:6
141:5 142:5,13 173:4
177:9 186:23 209:15
209:21 222:11,19,22
222:25 239:14
249:22 250:1 263:9
263:15 272:2 325:18
325:25 368:19,24
369:3,5,9,11,13
370:3 372:4 382:14
383:1 384:11,13
385:12,16 389:13
390:22
deputy
305:12
describe
19:25 22:13 63:1
116:15 257:12
275:14 325:1
described
156:11 176:13 217:9
257:9 289:20
describes
255:22
describing
23:15 172:7 295:19
description
255:25 295:18,21,22
304:17 305:24 306:8
308:11 343:21
344:21 346:3 347:2
347:18 348:8 365:12
385:9
designated
11:17 20:4 24:19
designation
85:3
desire
29:4
detail
245:22,23 290:16
318:23
details
291:1

deteriorate
152:5
determine
70:20 104:6 261:10
determined
187:13
Deutsche
198:11,15,20 200:5
204:5 208:22 253:12
255:19 256:21,24
257:9,13,14
develop
128:14,18
developed
175:19 239:9
development
231:21 232:4 390:9
Devore
2:20 224:8
dialogue
120:5 171:12 214:20
308:24 355:11
difference
332:24 355:1,15
different
10:11 37:6 46:9 74:14
99:14 122:10 127:23
128:8,8 134:2 161:13
164:12 179:5 200:5
201:2 221:15 239:17
242:6 244:15,17,20
255:20 263:4 288:9
300:9,14 309:2 333:7
353:1,18,22 365:24
differently
42:19 125:5 152:17
219:4 293:3,22
difficult
84:5 136:12
digits
145:22 176:3 199:9
255:13 306:14
DIP
3:2 32:6 35:14,17 36:9
37:16 42:17 48:7

49:2 52:17 54:18
64:2,13 66:23 221:9
221:10 251:12
256:16,19 257:9
372:25
**direct**
60:5,7,11 62:7 86:8
147:13 250:12 301:3
301:4 358:8 377:22
**directed**
310:3
**directing**
161:12
**directly**
297:4
**director**
272:17 273:9 274:12
**directors**
193:15 231:17,25
232:17 390:4
**disagree**
61:18 252:8
**disagreed**
53:9 354:21,23
**disagreeing**
252:6
**disallowance**
196:5
**disclosed**
219:10
**disclosure**
213:7 217:23 218:4
220:2
**discount**
116:17,25 117:9
**discounts**
117:23 151:9
**discovery**
279:16
**discrete**
316:25 317:5
**discuss**
12:7 13:14 15:12
287:20 345:19 346:3
**discussed**

15:4 44:13 57:4
146:15,22 156:7
165:20 183:18
276:15 277:6,7,8
303:2 347:13
**discussing**
209:25 287:23
**discussion**
171:6 214:6 233:18
266:22 268:14 272:7
272:15 273:2 274:1
275:25 276:18 282:8
299:6,18 306:9
310:11 338:12,18
344:25 364:3 368:4
368:14 379:6
**discussions**
124:14,18 153:22
172:8 182:9,21
186:15 206:12 207:8
214:7,13,16 226:19
236:16 239:17
244:14,16 269:4
273:7 275:6,9 280:4
284:5 295:23 299:11
308:10 309:11,16
341:25 343:2 363:8
363:21 366:15,19
367:11
**disjunctive**
134:5
**dispute**
12:25 96:22 97:21
**disrespectful**
31:1
**distressed**
71:2 275:15,16
**distribution**
196:8
**District**
1:2 6:14
**division**
128:9
**divorce**
84:7

**Dizengoff**
193:7 265:20 267:25
**Dizengoff's**
194:1
**docket**
1:9 33:8,12 49:5 50:15
385:21
**docs**
347:6
**document**
32:18,24,25 33:1,2,7
33:11 45:13 46:13
49:4,5,7 50:3,14
51:14 87:1 91:25
92:7,9,12,14,20 93:2
96:9,10 101:19 102:4
102:13,17,23 103:7
104:1,12 105:12,16
106:23 107:5 108:6,8
111:1,13,17 112:25
113:7,11 120:16,19
120:22 121:12
122:12 130:17,22,25
131:14 132:2 133:7
136:15,16 137:1,4,5
139:9,22 140:7
143:12 145:10,12,15
145:24 147:18,21
148:4,22 149:1 153:4
153:8,20 158:7,14,19
158:25 159:4,5,15
160:15,18 161:2
164:13,21 172:16,21
177:18 181:1 185:5
190:14 191:16,20
194:9 199:5,10,23
213:4,16 214:5 231:4
232:8 234:23 245:20
245:24 252:19 253:3
253:8 254:24 255:11
265:24 266:5,13
281:13 282:4,10
289:21,25 290:15
291:8 298:7,20 302:9
302:22 303:1 304:18

305:2 306:15 312:24
313:11,14 321:10
327:1 328:10,13
330:23 334:4,20
344:7 350:1 353:22
365:16 381:19
385:21
**documents**
11:8 12:1,3,6 14:15,17
14:20,21,24 16:5,8
16:11,15 17:8,13,17
17:19 18:1,6,9,16,25
19:18 48:12 95:5
104:25 110:10 140:8
142:11 144:8 158:18
181:7 192:19 211:2
213:1 282:7 284:10
291:12 294:25
297:19 318:22 327:1
345:17 353:3 368:21
369:7,16
**doing**
9:3 42:16 60:22 65:16
74:24 100:5 101:5,6
101:20 104:5 110:10
115:14,24 197:11
237:20 251:6 270:14
273:21 305:22
310:16,22 337:4
344:5 372:24
**dollar**
83:2
**door**
198:23
**Dore**
267:7
**Dorr**
3:7,15 7:1
**dotted**
147:3,4
**double**
317:2
**draft**
139:21 158:13,23
295:18,22 333:24

343:21 344:21
380:19
**drafting**
24:16 322:23
**drafts**
158:21 306:7 309:9
**dramatically**
37:23
**draw**
161:1 322:24
**drawn**
299:1
**drew**
212:17
**drill**
8:8
**DRINKER**
5:2
**driver**
183:6
**due**
34:12,14,15 38:7,18
38:22 42:22,23 43:2
54:20 57:2 65:24
75:9,20 77:4,12 82:8
82:12,15 89:20 99:9
99:11 106:15 117:20
135:1 156:17 163:12
163:14 180:3 183:10
205:2 256:21 258:5
259:22,24 260:23
262:21,23 263:21,23
294:11 296:20,21
307:1,23 308:13
311:11 312:4,14,21
326:15 327:24 331:5
363:13 364:21 366:7
371:23,23 379:1
**duly**
7:11 143:4 384:12
**Dunn**
380:9
**duties**
248:8
**duty**

229:14,20 242:25

---
**E**
---

**E**
1:1 2:1,1,7 3:1,1 4:1,1
5:1,1 123:12,17,18
142:1,1 183:1,12
184:13 185:16,21,22
185:24 187:4,8,18
188:20 189:5,25
196:20 197:11,12
210:9 231:19 232:2
384:1,1 385:1,7
390:6
**earlier**
99:15 101:22 114:11
122:22 132:10
135:15 146:16,22
156:23 157:12 160:4
163:1 210:5 211:25
222:12 225:25
251:21 254:1 265:17
270:9 271:1 303:19
303:20 308:4 314:7
318:24 322:14 328:9
328:25 338:10
342:22 356:4 372:4
374:1,11 377:8
**earliest**
234:9
**early**
56:24 66:11 67:5 93:8
93:8 96:8 101:18,22
108:11 223:4 372:15
373:6,14 376:8
**easier**
51:8 107:15,18 108:2
149:5 344:19
**Eastern**
347:9
**eat**
140:24
**Ebel**
346:23
**economic**

28:5,6 185:18 336:16
**economics**
20:17 72:3 105:21
**edge**
122:7
**education**
20:12 377:10
**EETC**
200:11,17
**EF**
117:6 160:17 227:7
349:16
**EFCH**
146:17 178:5
**effect**
166:11 329:7 334:14
335:10 336:8 338:13
**effective**
109:15 216:20
**effectively**
123:7 156:2 225:12
357:25
**effectiveness**
307:12
**efficient**
195:11
**efforts**
79:8
**EFH**
3:21 4:12 5:14 23:21
71:16 94:22 102:21
112:18 117:6 118:15
119:1 123:13,16,20
123:23 124:3 125:16
127:1,7 129:15
130:12 131:2,6,15,19
132:10,25 133:15
136:20,23 149:7,25
150:1 152:15 153:16
154:5 157:19,23
160:17,22 161:25
162:13,13 164:7
169:14,17,18 172:4
172:13,19 173:16
176:9,12 177:21

178:4,12,17,19 179:7
180:18,19 183:14
184:4 185:1 187:23
190:25 193:15
194:14,18 197:20
211:11 212:22
213:11,17,19 220:25
221:11,12 222:7
224:16 265:19
284:20 299:17
305:13 306:7 383:1
387:21 388:3,8,13
389:8
**EFH/EFIH**
146:10 148:19 155:14
**EFH2D**
252:23 253:1 266:4,9
391:3,8
**EFIH**
1:11,11 3:2,8,16 4:16
5:3 7:4 9:24 10:3,7
22:18 23:19,21,24
24:17 25:20 27:10
28:8 29:11,14 33:7
33:11,20 34:8,15
35:24 38:5,15 39:14
40:4,5,10,13,14
43:10 44:17 46:8
47:1,2 48:7 51:18,19
54:17 64:3 65:1,15
66:9,12 67:7,8 68:10
68:20 71:16 72:7
73:4 82:7,11,12 83:2
85:24 88:25 89:13
93:17,18 94:16,19,22
95:13,13 96:1,15,18
97:8,11,17 98:9,12
98:20,24 99:17,25
103:10,22 104:8
106:3,13,17 108:15
112:8,19,22 113:3,5
114:25 115:8,16
117:7 118:16,21
119:1 121:5,17
122:15 123:13,23

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

124:4,23,24 125:7,13
127:1,7 130:15 131:2
131:6,19 132:11,12
133:16 134:14,16,23
135:3,9 147:6,10
149:7,17,17,25 150:6
150:9,23 151:13,19
152:6,9,10,14,17,20
154:1,5,14,22 156:8
160:17,22 162:3,7,13
162:18 163:4,21
164:19 165:11
166:15,20 167:1
172:5 173:1,3,7
174:7 176:10,13,25
177:19,21 178:4,17
179:7,13,15,21,22
180:18,19 181:9,13
181:17 182:9 183:2,9
183:22 184:4,4 185:5
186:1,25 187:1,9,21
188:7,10 189:9 190:3
190:9,19 191:1,6,9
191:12 192:14
193:16 195:1,8,10,12
196:1,7 197:14,23
203:14 204:12 205:6
206:18 207:2 208:12
209:1,3 210:3,16
212:3,10,21,22,24
213:12,17,19,25
215:12,15 216:9,15
216:20 217:2,7,10,12
217:17 218:5,10
219:11,21,23 220:16
220:18,24 221:14,16
222:3,7 224:13,14,15
226:5,9,12,16 228:4
228:6,23 230:2,17,20
231:1,17,25 235:6,19
236:4,6,25 238:3,3,8
238:21,22 240:1,1,16
240:23 241:2 243:19
245:10 246:24
247:10,14,22,22

248:2 251:14 253:21
255:5,21 256:2,16,19
257:9,18 258:2
259:16 260:18 261:5
262:17 264:9 265:9
265:19 267:24 269:6
269:8,12,21,22,23
270:4,12,21,25
271:14,21 272:9,10
272:20 273:12,14
274:5,15,17,18,20,22
276:6,19,21 277:7,10
277:12 278:19 306:6
333:20 339:6,7,13
353:12,20 354:24,24
356:5,7 359:8,9,12
360:10,13,20 361:3
362:2,2,6,12,13
364:5 366:3,22,24,25
367:13,15,16 368:2
374:9 376:4,12
385:20 389:8 390:4
390:15

**EFIHMW**
102:3,7 105:4,6 107:3
107:7 120:14,17
199:6,16 281:12,17
297:24 298:2 302:10
302:14 304:23,24
313:15,19 319:5,8
321:7,9 329:17,21
342:15,18 386:21
387:3,7,16 388:23
391:12,16,20 392:3,8
392:12,16,20 393:3

**EFIH's**
58:21,22 118:23 201:3
227:8,14,25 228:13
238:2,20 239:24

**EH**
183:21

**eight**
217:3

**either**
77:20 102:11 103:11

197:23 269:21
277:22 361:9 376:8
**elected**
229:24
**Electric**
329:16
**element**
182:17 363:17
**Ellis**
4:2,7 6:22 55:13 57:21
57:22 60:12 61:8
62:11 119:5,17
193:19 202:20 203:5
250:14 262:10 267:1
**email**
102:12,18 105:8,14,19
107:11 109:8 191:21
192:21 199:19 200:6
202:14 281:14
283:18,24,25 284:9
284:14,16 291:13
302:16,18 305:1,7
306:6 309:8,12
313:14,20,25 315:24
319:1,19 321:19
322:2 342:14,20
343:7,8 344:6,12
345:24,25 346:1,9,17
346:21 347:2,22
348:16 349:1,5,6,8
349:14,17 350:3,7
351:17,23 352:10,23
354:14,15 355:16
**emailed**
291:3
**emailing**
319:20
**emails**
14:21
**emerged**
165:23
**emergence**
35:9,17,25 165:15,16
**emerging**
172:4

**emphasis**
237:10
**emphasize**
148:1
**emphasized**
44:9
**employed**
350:12
**employee**
102:20,21 109:24
272:17 273:9 274:12
**employees**
106:13
**employment**
21:3
**enclosed**
195:9
**encompassed**
147:3
**encouraged**
240:15
**ended**
323:24
**ends**
191:23 349:2
**Energy**
1:4 6:11 10:6 21:6
130:13,13 231:22
232:5,17 246:22
390:9,13
**enforceable**
356:16 361:17 362:14
363:4,5
**engaged**
119:12 182:8
**engagement**
62:24 203:4
**English**
288:21
**enhancing**
98:3
**enter**
240:25 374:14 379:13
**entered**
241:3 359:8 360:10

362:12 374:18,19,21
374:24,25 375:2,6,7
375:9,12 379:9,18
**enterprise**
52:14 228:17,19 230:1
251:14 375:4
**entire**
30:21 44:4 66:6 70:8
84:10 87:16 89:23
147:15 354:15
**entities**
10:12,14
**entitled**
14:13 50:11 157:24
161:16 172:16
261:24 265:3 330:6,8
330:12 335:2,12
341:19 342:4 347:25
348:15 352:2,14
**entitlement**
13:1
**entity**
113:18
**entry**
267:20 286:9,19
**equal**
170:4
**equation**
186:18
**equity**
4:12 35:10,12 71:21
73:21,21 101:5,6
103:13 123:16
153:24,25 154:22,22
155:3,15,24 156:1,21
163:2 164:20 165:20
166:5,18 169:14,16
169:18,20 178:12,19
180:17,19 183:14,15
183:16 186:1 187:1,4
187:18,22 188:10,15
189:4,5,9,14,15,16
189:21 220:17,18
221:1,11,12,14,19
227:8,14,25 228:3

239:24
**equivalent**
216:17
**error**
309:13,24 310:8
**escrow**
201:5 202:4
**ESQ**
2:4,10,15,20,21 3:5,11
3:12,18,23 4:4,9,14
4:19,20 5:6,11,14
**essence**
123:20 166:9 303:15
**essentially**
160:19
**establish**
323:6
**established**
301:13 377:8
**estate**
42:24 54:10,23 64:3
65:15,16 66:6 89:24
374:22
**estates**
40:6,7 41:12 60:23
**esteem**
249:6
**estimate**
63:25
**estimated**
40:16
**et**
1:5 6:12 383:1
**ethical**
129:7 361:13
**evaluated**
80:2
**evaluating**
72:18
**evaporates**
91:11
**evasive**
108:22,25
**event**
81:4,14 82:19 83:4

85:10 115:7 128:24
293:21 294:1,3
306:21 307:17 308:4
312:1,11 313:4,5
326:16,17 327:21
330:7,17 331:1
334:25 335:13,21
336:2 348:1,20
349:22 352:3,15
356:8 359:14 360:16
378:25 380:22 382:7
**events**
200:15 209:25 270:16
330:20
**eventually**
126:21 186:16 332:1
**Evercore**
47:13,18 62:24 119:24
120:6 201:20 273:22
**evidence**
59:11 61:20,23 62:19
**evolved**
239:10
**exact**
52:22 53:2 145:9,15
158:24 164:8 274:2
275:15 310:14,21
**exactly**
48:10 73:24 103:2
149:21 169:5 171:15
204:17 243:12
316:18 331:25
**exam**
104:16
**examination**
7:16 62:7 143:6
250:12 370:14 374:4
385:2
**examined**
7:13 143:4
**examiner**
6:18
**example**
67:6 226:21 241:18
248:8 283:12 294:21

336:13 361:3,3
369:20
**Excel**
105:10
**excerpts**
13:24
**excess**
67:8 169:2 170:6
**exchange**
23:23 74:24 117:6
144:10 178:9 218:10
276:4 280:6,8 282:9
282:16 287:7 313:14
313:21 314:1 319:1
342:15,20 349:8
351:17,23 372:24,25
**exchanged**
280:14
**exchanges**
24:9 117:2,3 274:4,10
**exchanging**
169:12
**excise**
362:20
**excuse**
91:19 105:7 349:6
**executing**
117:1
**executive**
26:11
**executives**
31:18
**exercise**
229:13 242:9 246:1
247:12,24 248:7
**exercised**
115:7 229:18 242:21
**exercising**
74:2 101:13 242:22
**exhibit**
10:22,24 11:1,4,10,10
33:6,9,15 45:8,9
48:22 49:3 50:8,11
50:18 57:15 58:3
67:18 86:10,11,20

92:3,7 93:3 95:10
101:25 102:1 105:2,6
105:13 106:12 107:1
107:6,20,21,23,25
108:2,6 112:2 120:12
120:16,20,21 121:13
129:13,14 136:19,22
137:2 139:7 157:3,13
157:14,14,18,22,24
158:4 162:3,17 166:9
166:10,14 172:9,12
172:18,22 177:19
181:4 191:17 197:9
199:5,14 205:24,25
206:3 207:10,12
208:2 210:5 213:10
213:14 214:18 215:1
215:16,20,20,25
216:1,3,6 219:7
222:18,20 231:16,23
232:9 233:6,23
234:23 235:12
241:15 245:1 246:20
246:21 249:22,24
252:23,25 253:4,9
254:19,20 266:7,8
269:20 281:10,17,20
289:21 297:23,25
298:21 302:9,12
304:20,21 310:25
313:17 319:4,6,18
321:5,8 329:14,19
342:14,16 385:10,14
385:18 386:1,6,10,15
386:19 387:1,5,9,12
387:14,19 388:1,6,11
388:16,21 389:1,6,11
390:1,12,20 391:1,6
391:10,14,18 392:1,6
392:10,14,18 393:1
**exhibits**
10:22 130:4,20
**exist**
278:10
**existed**

**existing**
32:20 34:25 64:20
178:19 218:10 237:9
294:25 347:21
348:12,12
**exited**
17:15
**expect**
139:12
**expectation**
35:7 270:3 286:5
359:6
**expected**
36:23 37:4
**expecting**
71:15
**expense**
47:3 246:17 247:8,13
**expensive**
38:8
**experience**
69:22 110:8
**experienced**
72:8
**expert**
31:4 225:6 300:1
359:4
**experts**
361:16
**Expires**
383:24
**explore**
265:3
**expressed**
244:21,23 300:10
351:18,24
**expression**
88:7,9 147:24
**extend**
9:15 116:16 197:5
**extensively**
223:24,25
**extent**
14:7 30:13 177:5

248:15 275:20 348:2
348:21 352:16 354:9
**extracted**
302:21
**extraordinary**
367:6,10
**extremely**
84:5
**eyes**
157:5
**eyesight**
267:19
**E-b-e-L**
346:23
**E.B**
350:6

---

**F**

**F**
1:1,22 7:12 142:1
384:1,6,25
**facilitate**
54:4,12 214:20
**facility**
64:2,13 221:3
**fact**
43:10 44:6 62:13
79:13 97:22 105:23
113:15 117:3 144:5,7
151:6 185:16 189:23
203:3 216:22 230:1
244:13 250:18
253:25 254:3 289:3
291:17 301:10
302:21 316:21
319:18,22 323:22
349:4
**factor**
317:15,18,20
**factors**
66:17,24 67:4 72:20
**facts**
43:24 83:10 104:24
276:13
**factual**

75:11
**failure**
327:21
**fair**
26:5,15 27:19 31:3
38:2 67:24 83:20
118:11 134:13,23
152:13 179:19
185:20 188:11,25
202:10 203:10 226:7
240:8 255:25 359:7
360:9
**faith**
126:9,13
**fall**
94:8 100:13 125:6
150:10 198:6 205:4
208:18 210:11
262:15 272:9,20
273:12
**falling**
188:3
**falls**
140:17
**familiar**
8:7 12:2 31:10 47:11
55:13,14 121:11
134:21 145:11 158:7
**far**
32:8 81:8 91:22
103:20 119:1 249:18
367:11
**farther**
144:24 347:11
**fashion**
97:13
**fast**
94:8 150:12,16 166:24
182:5 220:6 271:11
344:11
**faster**
313:13
**fault**
9:11 192:19,21
**favorable**

**existing** 328:11 366:2

40:12,22 52:16,19
53:1 54:2,3,7,10,22
54:22 56:13 57:4
67:5,16 68:1 69:24
304:13
**fax**
234:15,17 265:25
**fearful**
314:24
**feature**
155:24 156:21
**features**
101:7
**February**
124:18 137:5,15
138:18,23 143:10
150:13,20 152:4,20
178:3
**federal**
144:17,21,25
**fee**
196:7
**feedback**
15:16 175:21
**feel**
292:8
**felt**
27:3 53:20,24 304:2
323:5 332:17 374:22
375:3
**female**
103:3
**feverishly**
184:16
**Fidelity**
2:2
**fiduciary**
229:9,13,20 237:16,19
241:5,18 242:25
248:7,11,14
**fight**
241:7
**figure**
115:15 156:16 186:14
304:1

**file**
30:25 32:2 35:5 39:7
39:12 53:7 94:19
96:1 98:13,18 123:14
146:13,19 147:5
190:9,19,25 191:1,2
213:6 245:17 259:2
262:18 270:4 272:11
272:22 273:15
274:20,21 317:10,15
317:20 333:18 364:8
**filed**
29:6,14,18 30:17,21
31:7,12,16,19,24
33:6,10 43:12,21
48:11 59:9 73:3,14
82:13 85:24 86:7
89:5,12 90:13 98:5,9
161:22 172:6 182:6
206:1,4 240:20 245:3
245:16,21 259:3
294:8,18 295:10,12
295:13 296:7,8
323:21 333:8,15,17
335:13 366:6 371:12
385:19 389:2
**files**
298:8,9,15 334:25
348:18 349:4 350:2
364:20
**filing**
52:2 70:19 75:15
80:24,25 82:9,19
85:19,20 86:1 93:18
94:10,13 95:12 96:14
161:19,21 192:14
211:8 212:8 215:9
290:9,18 292:23
294:22 308:5,14
311:12 312:21
317:18 318:4,7
323:15,24 326:12,24
327:17 363:12
370:18 371:21 376:7
**final**

40:11 58:20 158:13,13
243:13
**finalize**
110:17
**finally**
9:1
**finance**
1:11 10:7 21:8,11 22:1
22:7,14 34:9 130:15
246:24 329:17
390:16
**financed**
57:5 72:12
**financial**
20:24,25 23:14 47:18
47:20 53:23 91:17
138:2 184:25 201:22
214:14 225:5 267:16
267:23 268:8 272:18
273:10 274:13
**financially**
260:16 261:2
**financing**
23:10 31:9 32:6 34:10
34:22 36:10 37:16
38:14 43:7 52:17,17
54:7,18,22 56:3,7,13
66:1 113:4 116:8,22
127:18 251:12
**financings**
200:16
**find**
345:16 367:5,5
**fine**
33:4 123:4 140:25
149:3 192:16 194:6
300:21 340:7 344:5
379:25 380:3
**finely**
326:19,20 328:7
**finger**
250:4 305:4
**finish**
283:2
**finished**

242:11
**firm**
55:15 351:12 353:16
380:7,10
**firms**
256:13 300:5 380:13
**first**
3:2,8,16 5:3 7:4,11
12:11 13:1,20 22:19
23:24 24:17 25:20
27:10 29:11,13,18
30:17 31:7,8,12 32:5
32:20 33:20 34:6,7
34:11,17,21,25 35:14
35:16,21,23 36:12,21
36:24 37:6 40:13,15
41:1 42:17 43:8,11
43:12 45:5,11,14,15
47:1,8 48:1,2,3,6,7
49:13,24 50:24 51:19
54:17 58:22,22 61:2
64:2,20 66:13,23
67:7,9 68:10,20
70:21 71:9,12 73:6,8
74:16,18 78:6,16
79:9,14 80:8,13,17
81:1,11 82:7,11,17
83:3 84:1,22 87:12
88:14,19 89:13 90:16
91:20 95:11 96:12
97:5 98:6,9,12,16,20
98:24 99:18 100:1,23
101:8,12 102:5 104:8
104:9 106:3,17
108:11,15 111:19
112:8,17 115:3 117:4
117:4,18 119:5,16,21
119:23 121:5,17
122:15 123:15
132:25 134:11
147:17,21 148:3,13
154:14,23 156:8
163:4 164:1,19 165:4
165:12,21 166:20
167:1,7,23 168:11,16

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

168:20 169:11,13
170:7 171:3 173:8
174:2 178:8,17 179:8
179:21 181:10
182:11 183:9 184:10
184:22 186:19
187:20 189:17 190:3
190:17 191:12 193:8
194:12 196:1,8 197:6
197:14 199:1,3 200:7
203:13 204:10,12
205:6,8 206:8,21,22
207:5,17 208:13,25
209:2 210:2,13
211:11 212:4,7,10
215:10,11,12,15
216:9,14,16 217:2,7
217:10,12,17,22
218:3,5 219:9,11,22
219:23 224:13 232:6
232:25 234:24 236:6
245:9 246:24 247:20
247:23 250:18 251:1
253:20,21 255:4,5
256:4,9,16,18 258:15
259:4 262:3,19 264:9
267:20 269:24
270:10 272:9,20,23
273:2,12,14,16 274:5
274:15,17,18,22
276:6,19,21 277:10
277:12 278:20 282:4
286:24 287:6,10
289:8 290:22 305:2
306:22 307:19
313:24 328:9,13
338:25 339:1,7,13
341:12 343:8 349:5
353:13,20 354:14,24
356:5,22 359:9
360:11 363:9,16
366:22,24,25 367:7
367:13,15,16,20
368:2 370:17,21
371:10,14,20 372:6

372:13,19,25 373:4
373:12,20 374:7,10
375:18 376:1,4,12
378:5,7,21 386:3
390:16
**firsts**
196:18 208:6 238:3,21
240:1
**five**
69:12 111:23 209:9
285:17,21,23 286:3,4
286:6,10,20 287:4,6
287:10,24 288:2,10
288:15 289:5,9
325:12 327:14 344:8
351:11
**flip**
241:9 253:6
**flipped**
14:18
**floor**
5:4 37:19 267:3
**flow**
184:4,5,7
**fly**
113:10
**focus**
68:10 73:13 95:3
118:18,21 132:11
152:7,9 181:10
196:14 204:24
237:13,15 285:13
306:18 332:19
361:24
**focused**
152:12 363:16,20
364:6,19 365:3,5,6
**focusing**
118:23 122:14
**FOLEY**
2:6
**follow**
248:12
**following**
124:6 158:4 284:15

383:2,3
**follows**
7:13 64:18 88:16
143:5 382:8
**follow-up**
95:7
**foot**
198:23
**foregoing**
306:20 307:17 330:17
330:25
**forget**
83:23
**forgotten**
15:21 242:16
**form**
22:22 25:22 27:13
28:25 32:22 38:1,8,8
38:16 41:16 43:14
57:1 59:25 69:6
73:10 74:21 76:22
77:3,10 78:19 79:17
79:22 82:22 84:4,25
86:5 89:18 90:7
92:14 97:24 110:13
114:2 116:11 125:1,8
125:18 127:13
132:15,20 136:3
147:12 149:10,19
152:8,23 153:23,24
156:19 159:6,11,22
162:21 164:4 173:23
176:18 177:4 179:16
181:15 185:10 187:2
189:7 190:4 204:14
209:6 212:12 213:11
213:17 217:10 218:8
219:25 228:7 230:4
231:3 235:21 236:12
237:2,7 238:6,25
240:5 243:9,22
247:15 248:3,10
257:19 258:22
259:18 260:20 261:7
261:8,17 265:14

269:10 270:22
271:13,16 274:24
288:7 289:10 296:14
317:25 327:25 329:3
329:8 331:19 333:2
333:14 334:16,19
335:17 336:10
339:17 340:9,22
342:7 345:12 349:24
352:5 353:24 359:17
360:24 362:25
366:21 367:17
370:22 371:1,15,24
372:16 373:15
374:16 375:21 376:2
376:15,19 381:2,6,14
381:25 389:7
**forma**
155:12
**formal**
226:11,17 270:19
**formed**
125:22 270:12 376:18
**forming**
271:21
**forms**
137:4
**formulation**
255:20
**forth**
110:21 116:23 138:23
198:2 214:18 309:15
313:21 379:13
384:12
**forward**
38:5 94:8 166:24
182:5 186:13 195:12
202:14,17,18 220:6
271:1 284:15
344:11 345:14
**forwarded**
203:21,24 349:2
350:10,17,17,19
**forwarding**
150:12,16 202:15

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

forwards
349:8
fought
188:7,8 189:4
found
42:22 57:3
foundation
81:6 85:1 190:5 203:7
246:6 247:16 248:4
259:19 264:13
289:11 296:1 298:18
300:19 308:20
309:20 318:1 332:14
333:3 336:11 337:19
339:18 342:8 349:25
353:5 357:21 358:18
359:18 361:19,23
363:1 367:3 379:16
382:1
four
134:2,7,8 145:22
150:16,20,22 179:5
199:8 207:25 223:3
327:1 344:8 351:10
fourth
135:9 179:9 206:13
207:8
frame
219:3 255:6 257:5
271:13 373:21
frames
71:6
framework
194:22
Francisco
4:8
FRANK
2:2
FRANKEL
4:16
Frankly
343:18
free
8:23 374:19,20 375:1
375:9,15

FRIED
2:2
FRIEDMAN
3:20
front
32:12,24 41:21 70:15
86:21 136:15 228:11
289:21 321:11
fruitful
309:3
fruition
186:17
fulcrum
221:23 222:3,14 224:6
224:7,8,22 225:6,10
fulfilled
76:4
fulfilling
76:17,20 77:1,8,15
full
7:21 20:1 194:12
199:23 236:25
248:16
fully
64:25 142:25 211:2
293:6 334:1 369:21
370:2
function
21:11 102:22 109:22
358:21,22 378:17
functioning
358:20
fund
275:11,14,16
funded
23:4 26:7 88:23 173:8
178:10
funds
236:3 238:1,20 256:6
259:23
fungible
322:22
further
19:16 143:5 307:2,23
310:7 311:11 312:5

331:6 382:10 384:15
future
1:4 10:6 21:6 96:2
130:13,14 232:17
246:22 324:18
390:14
Futures
6:11

--- G ---

G
2:20 4:9
Gail
1:22 7:6,12 384:6,25
gaining
138:22
garbled
364:9
gee
353:13
general
60:16 66:21 67:5
70:12 82:23 267:7
305:12 306:4 334:2
generally
8:7 69:24 70:3 144:24
145:10 249:14
283:14 356:18
372:21
Geoff
199:21
George
350:6,6
getting
38:19 91:1,1 120:7,8
212:2 283:15 349:2
364:10
get-together
159:22
ghorowitz@kramer...
4:20
Gibbs
5:17 6:3
Gibson
380:9

gist
299:22
give
9:9 10:11 19:3 27:2
38:11 46:21 77:23
78:15 91:25 92:1
122:24 123:3,5
145:18 187:3 207:20
225:5 240:22 246:10
247:21 253:6 259:14
281:23 312:8,16
323:12 327:4 347:7
352:25 361:2 368:25
given
19:18 63:7 179:12
247:25 300:25
312:11 364:2 379:4
384:14
gives
27:7 289:13
giving
108:25 225:20 248:21
GMT
291:14
go
8:10 16:12,16 25:20
40:9 48:13 56:10
57:6 62:18 80:23
87:19 95:4 96:12
97:5 109:11 130:8
133:20 161:4 164:15
171:25 186:13
187:11 190:6 195:6
206:11 207:7 218:15
231:6 233:13 242:16
243:6 250:11,24
254:8 260:12 261:22
263:3 283:2 306:17
307:13 309:20
310:16 320:5 326:5
330:24 335:18 338:4
340:23 343:7 348:24
349:5 354:17 355:18
358:14 367:6 368:9
370:12

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 22

goal
116:7
goalposts
73:1
goals
117:17
goes
60:18 133:5 143:19
194:20 195:5 201:1
214:22 217:1 304:24
going
8:8,14,15 11:24 18:6
18:15,20,21 28:12,16
30:19,22 33:13,24
37:1 38:5 44:3,10
49:16 51:18 59:11
64:11 66:19,20 67:18
67:23 69:15,18 71:15
72:5 77:6 94:19 95:4
96:3 99:4 105:5
110:17 115:9 122:7
123:5 126:19 129:17
135:24 136:7,8 137:7
137:8 140:10,18
142:15 153:23,24,25
157:21 162:25
163:24 165:11 169:7
169:7 170:5 180:25
182:5,25 183:2,7
185:14,17,24 186:3
187:7,14,19 189:12
190:10,19,25 191:1,2
196:17 197:8 214:10
216:13 219:15 220:6
220:25 221:14,16,20
226:18 227:13 232:7
236:16 240:22
243:11 248:1 250:3
250:23 255:10
256:15,16 257:16
262:20 263:21 264:4
265:1,23 270:3
271:25 278:12
283:13 293:9 300:22
301:2 311:13,17

317:14 318:4,23
323:1,6,12 326:4,5
328:4,5 331:22 335:4
344:15 358:3 381:17
Goldman
114:17 128:7,9
Goldstein
47:12,16,17,25 48:10
48:24 49:1,6,10,22
50:13,22 52:25 53:17
53:22 386:8
Goldstein's
53:10
good
6:1 7:17 63:7 104:18
124:6 126:9,13 128:2
128:13,17,24 211:5
237:19 309:15
GOODMAN
4:20
gotten
70:11 125:21 260:1
gradually
68:7
graduating
20:21
grater
218:12
Graves
346:23
GRAY
2:17
greater
25:2,5 134:14,24
243:20
Greenwich
1:21 3:9
GREGORY
4:19
Gringer
3:18 7:2 234:7
ground
72:25 264:20 276:10
279:19
groundrules

8:10
group
2:12 3:21 110:16,19
174:10,22 184:24
185:16 198:19 221:5
221:6 299:17 351:2
groups
197:24 240:2
GSO
174:15
guarantee
70:7
guaranteed
117:7 173:16
guess
21:4 70:16 268:12
283:6 348:5 350:5
Gump
174:12 191:22 192:25
193:2,7 220:4
guy
129:2 177:10 374:17
guys
187:20 204:9 205:22
209:4 300:11 353:1
362:5

———————————
H
———————————
H
2:21 5:6 385:7
Hale
3:7,15 6:25
half
95:11 108:12 181:10
270:10,17,20 315:17
halfway
306:14
hand
86:19 208:1 327:12
328:22 384:21
handed
159:7 208:10 233:6
234:2 298:21
handing
107:25 110:10 304:25

327:9
handwriting
298:10,11,12,15 299:4
happened
104:20 186:14 198:6
happening
190:25
happy
67:19 86:13 112:14
140:20 145:7 188:5
207:23 213:15 279:7
304:16
hard
19:17 188:8,8 189:5
249:8,12
HARRIS
2:2
hate
252:8
HAYES
2:10
head
9:3 96:7 186:10
339:21 340:1,17
headed
328:24
heading
87:8,9 146:1 154:7
214:6 216:9
heads
353:1
hear
88:12 152:24 186:21
189:2 316:24 317:4
heard
88:7,8 123:11 134:19
147:23 221:22,24
228:16 260:6
hearing
54:25 55:1,4,8 57:17
58:4 60:4 61:21
62:20 386:12
hedge
275:11,14
held

1:19
**help**
187:7 275:21
**helped**
54:11
**helpful**
52:5 95:6 145:17
156:5 175:24 188:4
190:13 222:14
296:24
**hereinbefore**
384:11
**hereof**
330:19 331:3
**hereunto**
384:21
**herewith**
195:10
**HERRING**
4:14
**Hessler**
55:12,13 57:21 58:18
59:1,19 60:6,8 61:7
199:20 202:15,18
203:21 267:12
**Hessler's**
202:12
**hey**
202:3 227:6,12
**Hickson**
231:19 232:2 390:7
**hideously**
30:4
**high**
13:16 14:18 22:9,16
22:21 23:1,7,10,11
51:19 120:7 122:24
123:4 127:19 249:6
283:14 339:7
**higher**
43:9,20 60:21 230:2
235:5,12,14 341:9
**highest**
243:5,11 244:10
**highlighted**

208:10
**highlighter**
149:4
**highlighting**
207:22
**highly**
40:12,22 52:16,19
53:1 54:2,3,7,22
67:16,25 138:13
139:12 309:22 311:6
354:2,6
**historical**
70:5,10
**history**
21:3 187:3
**Hoc**
2:12 3:21
**Hoffman-Ramos**
349:7
**hold**
21:18 249:5
**holder**
216:13 366:22 367:8
**holders**
80:7 85:9 143:15,16
178:19 189:22
206:22 221:4,7 280:6
335:1,11 339:14
351:19 356:7,21
360:15 367:13,20
380:23
**holding**
1:10,11 130:14 173:18
246:23 390:14
**holdings**
1:4 6:12 10:7 21:6
123:16 130:13
188:15 220:25
221:11 232:18
329:16
**homework**
210:19,23
**honest**
125:24 129:2,5,7
272:5 290:18 305:19

**honestly**
138:4 268:15 311:17
363:15
**Honor**
58:19 59:9 60:20
**honorable**
361:10
**honored**
358:3
**hope**
219:15
**hopeful**
139:3
**Horowitz**
4:19 50:5 230:18
233:11 278:3 279:7
279:10 333:14
370:25 371:3 373:15
**horrible**
314:20
**Horton**
1:18,18 6:11 7:9,17,23
11:1,4,8 17:15 18:11
18:17 19:24 30:2,8
30:11 33:9,13 38:3
39:21 43:17 45:9
46:19 48:22,25 49:7
49:15 50:17 51:16
57:15,19 78:2 79:9
81:23 82:4,6 88:3
92:3,10 99:5,6 102:1
102:10 105:2,12
107:1,10,14,21
120:12,21,21 122:22
125:7,20 128:14
129:14,17 132:1
133:21 136:22 137:1
141:6 142:6,12 143:2
143:8 157:18 158:1
158:17 160:21
164:21 172:12,20
186:22 191:17
199:14,18 205:25
206:24 209:16,22,24
213:10 219:7 222:20

231:23 232:6 233:9
237:4 239:13 240:9
242:11 246:21 247:2
248:24 249:24 250:6
252:19,25 253:5
254:18 258:9,10
263:10,16,18 264:7
266:8,14 272:1
281:10,17,21 289:17
296:3 297:25 298:3
302:12,15 303:23
304:21 305:1 313:17
313:20 319:6 321:5
321:11 325:19 326:1
326:3 329:19 333:7
342:16,20 356:3
360:4 368:22 370:3
370:15 371:8 379:7
382:15,20 383:2
384:10 385:10,14,18
386:1,6,10,15,19
387:1,5,9,14,19
388:1,6,11,16,21
389:1,6,11 390:1,12
390:20 391:1,6,10,14
391:18 392:1,6,10,14
392:18 393:1
**Horton's**
128:13
**hour**
186:16
**hours**
15:7
**house**
123:17,18 183:13
187:8,23 240:17
**Howell**
4:4 6:21,21 7:25 12:13
14:6,11 16:12 17:14
18:19 19:12 22:22
25:22 27:13 32:22
38:1,16 41:16 43:14
50:2 57:1 59:25 69:6
73:10 74:21 76:22
77:3,10 78:19 79:17

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 24

79:22 81:5 82:22
84:4,25 85:15 86:5
89:18 90:7 97:24
110:13 114:1 116:11
116:13 125:1,8,18
127:13 132:15,20
133:13 136:3 140:4
140:15 142:8 147:12
149:10,19 152:8,23
156:19 157:11
159:11 162:21
173:23 176:18 177:4
179:16 181:15
185:10 187:2 189:7
190:4 203:6 204:14
207:24 209:6 212:12
218:8 219:25 228:7
230:4 231:3 233:25
234:10 235:21
236:12 237:2,7 238:6
238:25 240:5 242:10
243:9,22 246:5
247:15 248:3,10
252:10 257:19
259:18 260:20 261:7
261:17 264:3,12
265:14 269:10
270:22 271:16
274:24 277:16 278:1
278:12,14 279:6
288:7 289:10 291:10
292:3,24 295:25
296:14 298:17
300:18,22 301:9
308:15,19 309:19
317:25 327:11,25
328:21 329:3,8
331:19 332:13 333:2
334:16 335:17
336:10 337:18
339:17 340:9,13,22
342:7 345:12 349:24
352:5 353:4,24
357:12,20 358:17
359:17,23 360:24

361:18,22 362:25
364:25 367:2,17
368:17 369:1,8
370:10,14 371:5
373:23 374:5,16
375:20,21 379:15
381:2,6,13,20,25
385:4
**Howell's**
265:6
**human**
309:23
**hundred**
225:13,17,19
**hypothetical**
84:13,15

## I

**idea**
111:10,24 123:9
257:20 268:15
283:12 298:19
301:25 342:9
**identification**
11:2,5 33:10 45:10
48:23 57:16 92:4
102:2 105:3 107:2,22
120:13 129:15
136:23 157:19
172:13 191:18
199:15 206:1 213:11
222:21 231:24
246:22 249:25 253:1
266:9 281:11 298:1
302:13 304:22
313:18 319:7 321:6
329:20 342:17
385:11,15,19 386:2,7
386:11,16,20 387:2,6
387:10,15,20 388:2,7
388:12,17,22 389:2,7
389:12 390:2,13,21
391:2,7,11,15,19
392:2,7,11,15,19
393:2

**identify**
45:12 232:7,12
**ignored**
79:20,23
**Illinois**
4:3
**imagine**
73:2 291:6,7
**immediately**
132:13 133:1 208:23
320:1 331:6
**impact**
203:13
**impaired**
211:9,19
**imperative**
194:24
**implication**
334:21
**implied**
116:20 230:3 235:5,6
235:15 240:24
241:11
**imply**
228:6,8,9
**implying**
286:17 318:3
**important**
26:17,21,22,23 27:20
27:24 28:3,21,22,25
47:7 128:1 140:7
148:2 211:18,23
234:19
**impose**
278:11
**impression**
125:23
**improve**
116:18 118:1
**improved**
116:21
**inaccuracy**
32:1
**inaccurate**
97:14 110:12 111:9

364:1
**inapplicable**
381:11
**inarticulate**
176:24
**incentive**
185:18
**include**
22:9 147:6 248:14
295:4 311:2 320:8
321:1 322:14
**included**
73:21,25 159:8 197:5
267:5,23 310:24
**includes**
131:1 349:13
**including**
22:6,11 23:18,21
70:10 101:15 103:10
106:3,17 108:14
134:15 135:6 144:20
159:7 184:3 210:1
217:12 236:25 238:4
238:23 240:3 265:11
267:7,12,17 284:11
290:9 292:23 299:20
311:1 322:6 326:12
326:23 327:17
339:14 341:18 349:9
366:3 368:20 369:19
374:9
**inclusion**
334:5
**inclusive**
120:18 136:21 172:19
252:24 329:18
**inconceivable**
104:19
**incorrect**
106:10
**increase**
152:2 246:15 247:6
251:13
**increasing**
151:12

**incremental**
91:13 170:3,9
**incur**
150:23
**incurred**
150:24
**incurring**
237:12
**indebtedness**
26:7 88:23 173:8,9,11
173:13
**indenture**
1:7 2:7,18 3:8,16 4:16
7:3 71:19,19 73:20
74:12,15 75:13,14
78:25 79:1 80:18,22
81:2 82:17 83:1,23
84:21,22 98:16,22,23
99:21 155:6,23
156:12,14,18,22
163:8,12 246:2
247:25 274:17
276:20 277:10
280:12,23,25 281:2
295:3 297:9,18
310:18 316:14
317:12,13 318:11
322:8 325:5,6 326:17
328:11 329:2,5,14,24
330:1 331:10,17
332:4 337:17 347:20
347:22 348:5,10,13
354:25 362:14
363:17,18 365:11
366:23 367:15
371:14
**indentures**
39:4 73:21,25,25
90:17 93:17 94:16
96:19 97:11 154:25
168:19 169:6 196:8
300:7 313:2 333:13
338:1 355:3 356:6
359:9,13 360:10,15
361:21 362:3,12

366:1 370:21 378:8
378:22 380:4,16
381:8
**independent**
92:14 113:20 114:10
377:22,23
**indicate**
9:2
**indicated**
17:16 22:4 142:14
184:11 320:23
**indicates**
207:9 298:7
**indictment**
332:25
**indirect**
358:10
**individual**
9:20 91:21 281:5
299:10 309:22
**individually**
1:19
**individuals**
15:9,10 200:7 281:5
283:19
**inexact**
364:2
**information**
16:1,2 25:7,8 80:12
138:8 214:15 264:21
**informed**
132:8
**initial**
24:4 124:13 171:18
328:14
**initially**
302:16 303:3
**inquiry**
319:21
**insinuate**
175:6
**insofar**
12:3 278:3
**insolvency**
270:24 308:5

**insolvent**
152:6 181:14,17
270:13,21 271:14,22
**instant**
202:23
**instantaneously**
198:13
**instincts**
70:7
**institution**
160:12
**instruct**
264:5 301:9,14
**instructed**
61:6 264:18
**instruction**
264:2 265:7 300:17
393:11,13
**instructions**
8:9 9:10
**instrument**
315:4,21 316:23
**instruments**
144:16
**insurance**
22:3
**integrated**
362:17
**intense**
124:17
**intent**
248:6,20 264:8 265:8
**intercompany**
151:21
**intercreditor**
343:22 344:22 346:2
**interest**
28:2,4 36:22 37:8,13
37:15 38:5 40:16
41:10,12,14 42:5,16
43:10,20 44:9,12,13
47:3 51:2,19 52:15
52:21 54:16 60:21,22
64:19 65:18 66:4,11
66:15,19 67:1,2 69:3

69:4,9,16,19,23 70:3
70:4,9,22 72:5 89:14
89:22 90:19 91:6,10
99:1 109:12,15 110:4
118:3,5,7,9 180:2,8
189:9 205:2 217:4,14
228:14 236:5,7,9
238:2,20 244:21,24
251:13 259:8 306:24
307:21 312:3 327:22
331:4 339:8 380:25
**interested**
227:7,13,24 384:18
**interests**
353:19
**interface**
127:24
**intermediary**
173:18
**Intermediate**
10:6 130:14 232:17
246:23 390:14
**internal**
345:25 349:1 380:18
**interpret**
112:24 313:8 348:7
**interpretation**
33:25 312:9 353:22
354:2,22
**interpreting**
113:1
**interrupted**
283:2 341:1
**intimately**
121:11 223:22 224:1
**introduce**
6:18 59:11 314:19
**introducing**
315:3,20 316:22
**introduction**
147:18 162:9 176:4,6
**investigation**
135:20 278:6
**investment**
139:10 147:10 156:7

157:15 163:3 175:20
**investor**
22:4 28:9,17 137:6,23
  138:10 143:10 145:4
  157:25 227:12,20,23
  274:16 275:3,7,18
  353:15 354:4,7
**investors**
24:10 25:19 28:23
  29:3 127:23 136:1,2
  136:10 137:7,8,12,13
  138:10 157:16
  158:11 159:1,8,17,17
  160:8,10 167:25
  170:25 171:9 172:2
  175:12 176:15
  200:19 226:15
  227:18 316:10
  317:21,24 367:14
**invitation**
266:14
**invite**
267:9
**invoking**
163:16
**involuntary**
85:23
**involved**
24:3 116:2,5 223:22
  223:24 291:1 377:6
**in-house**
350:11 379:25
**in-person**
137:19
**irresponsible**
311:21,24
**issuance**
24:16 127:3 178:10
  216:18 288:3 345:18
**issuances**
22:10 23:23 27:10
  106:16 126:17 144:9
  274:4,10
**issue**
41:2 101:22 111:20

253:18 279:8 281:7
  299:23 300:4,13
  323:4,8,20 343:17
  353:10 370:17
  371:10,20 373:5,13
**issued**
5:3 66:13 67:9 68:17
  68:25 88:25 216:15
  216:19 280:7,9,13
  331:18 376:13
**issuer**
28:7 127:2
**issuers**
69:24
**issues**
266:21 268:13 270:7
**italicized**
51:23
**italics**
40:18 42:7
**item**
206:9 285:14
**items**
145:13
**IVAN**
3:23

---

**J**

**Jack**
314:1,5,6,13 318:25
  319:10,11 320:6,14
**JACOBSON**
2:2
**JAMES**
5:6
**james.millar@dbr.c...**
5:6
**January**
96:13 97:6 124:18
  150:19 165:16
  166:17,24 181:10
  257:4 270:11 271:11
**JASON**
2:15
**jason.bartlett@whit...**

2:15
**Jeff**
111:14,17
**JEFFREY**
5:11
**Jim**
91:15
**jj**
132:4,5,11 133:23
**join**
279:22
**joined**
7:1
**JPMorgan**
114:17
**jssabin@venable.com**
5:11
**judge**
8:14 18:21 44:22
  57:17 58:4 65:10
  386:13
**judgment**
27:4,18 30:23 41:11
  242:4,21,22 265:9
  270:12 271:21 375:4
**Julie**
349:7
**July**
232:5 234:24 390:10
**jump**
292:14
**jumped**
292:18
**juncture**
194:23
**June**
57:16 58:4 62:20
  120:7,17 181:11
  222:19,22,25 265:24
  266:16 269:3 270:11
  341:5 386:12 389:14
**junior**
64:24

---

**K**

**K**
4:14
**KASOWITZ**
3:20
**KATZ**
4:11
**keep**
71:16 94:22 123:9,12
  123:13,23 124:3
  182:25 183:2 187:18
  259:9 268:17,19
  369:5,9,10 370:2
**keeping**
124:23
**keeps**
196:19 268:20
**Keglevic**
12:15 15:18,25 23:13
  29:25 46:25 60:10
  99:3,10,12 231:18
  232:1,18 249:1,5,23
  250:1,13,17 251:3,7
  251:24 252:7 255:21
  257:12 258:7 281:15
  282:18 283:23
  302:19 303:4,4,9
  304:6 313:22,25
  314:17 315:11 318:9
  319:20 390:5,23
**Keglevic's**
44:25 45:3,10 46:20
  249:14 251:18 386:3
**KEITH**
2:21
**keith.wofford@rop...**
2:22
**kept**
56:15 184:12 367:13
  367:19
**key**
28:4,6 282:21 284:11
  285:9 290:23 302:23
  303:15 323:12,16
  326:8 347:12 355:3
**kind**

14:18 138:20 161:7
180:10 240:17
283:12 300:6,7
318:12 339:25
344:15 352:12
**Kirkland**
4:2,7 6:22 55:12 57:21
57:22 60:11 61:8
62:11 119:5,17
193:18 202:20 203:5
250:13 262:10 267:1
**knew**
92:22 315:15 380:19
380:25 381:4
**know**
8:3,12,21,24 10:13
15:6,24 16:14 19:18
32:8 34:18,20 36:8
39:4 44:3 45:17,23
45:24 47:11 52:7,8
52:18 55:22 61:16,25
67:10 71:5 77:17
79:3,13 80:11 81:7
81:10 86:15 91:22,23
92:12,21 101:17
103:2,25 105:16
106:5,25 108:18,20
110:14,21 113:20
115:11,12,18 116:4,5
116:21 119:10
121:18,19,21 122:8
122:11 123:24
124:12,14,17 125:2,9
125:10,12 127:14
134:17 137:16,20,25
138:4,20,22 139:18
144:7,24,25 145:9,11
147:23 149:20 150:1
150:5,6,7,9 151:1
157:7,10 158:12
159:2,12,24 164:11
169:15 171:21,22,25
174:19,20,20,24
175:2 179:17 180:11
180:13 182:14,16,16

185:5 188:15 191:14
197:17 198:10 201:7
201:13 203:8,8 205:8
210:21 211:25
212:20,23 220:11,20
222:4 224:25 225:2
234:7 235:24 236:15
236:17,18 237:22
238:16 239:20 240:7
243:10 244:9,12
247:17 248:5,25
249:19 252:3 257:2
257:22,24,25 258:18
268:21 269:13,15
270:1,23 271:1
273:24 275:13,15
276:13 282:11,18,19
283:11 286:12
287:13,15,19,20
288:12,13 290:19,24
292:14 296:2 297:5,9
297:12,14 298:11
299:9,22 301:11,16
310:14,18,18,20
314:15 316:14 317:9
318:20,21 320:16
323:5,18 326:1 328:6
330:9 334:1 336:14
336:18 337:22 338:8
339:2 342:2 345:3
350:6 351:2 353:21
354:8,11,16 355:9
356:4,20,24 357:3
360:19 362:5,11
364:24 365:17,18
366:9 367:11,18
377:11 379:23 381:7
381:15 382:2
**knowing**
147:15 175:13
**knowingly**
143:25 144:4
**knowledge**
25:2,5 60:9 113:7,22
139:25 140:2 219:8

227:21 265:8 272:6
272:14 273:7 274:11
276:16 301:8 338:17
353:6,7,11 358:8,10
360:13 362:1,6
363:19 364:5,17
365:1 366:4,4 367:4
367:25 368:7 379:8
379:17 381:3 382:9
**known**
21:6 315:10,12
**knows**
355:5
**Kramer**
4:16 231:19 232:2
390:6
**Kunkel**
157:6,6,10
**K&E**
266:25

_____

**L**

**L**
1:1
**lack**
183:13
**language**
75:18 93:13,14 98:22
154:19 201:2 208:9
255:23 286:14
297:11 300:7 310:23
311:3,4,9,24 312:12
313:8 317:1,6 318:11
320:8,11 321:1
322:23 323:23 325:5
327:14 329:1 330:25
331:8,13,14,24 332:6
332:8,9,12,23 334:6
334:13,15,18 335:9
336:5,9 338:15,21
342:5 344:23 345:10
347:14 352:6,7,19
365:23 379:24 381:9
381:12,23 382:5
**LARDNER**

2:6
**large**
200:17 275:11
**largely**
41:6
**larger**
93:2 107:22 387:10
**LaSalle**
4:3
**late**
101:17 119:20 344:12
364:10 376:9
**law**
33:25 34:1 83:9,24
84:10 129:8 258:12
258:12 264:22
353:16 358:14 359:4
361:16 380:7,10,13
**laws**
144:18,22,25,25
**lawyer**
29:21 30:20 33:22
78:2 80:4 83:8,11,12
88:4 144:14 258:8
330:10 354:5 358:16
377:11
**lawyers**
16:9 59:2 138:1
284:20 320:7 349:10
351:11 365:13
380:25 381:7
**lay**
143:20
**layperson**
356:19
**LBO**
173:16 281:1
**lead**
199:13 299:24 314:7
327:23 345:16
**leading**
32:16 94:10 125:15
169:25 186:11 188:8
**lean**
211:21

**leave**
17:10 19:20 245:16
327:23 343:19
**led**
200:16
**lede**
88:8 147:24 162:10
**left**
209:9 216:23 299:2
325:13
**left-hand**
161:15 255:19
**legacy**
117:7
**legal**
5:17 6:4 7:7 12:12
33:25 55:23 78:3
177:5,8 193:2 211:21
258:13 259:12,14,15
260:1 261:14,23,25
262:1,2,9,17 265:13
272:17 273:10
278:24,25 284:21
297:7 300:11,15,24
301:6,11,15 312:9,16
334:14,19 336:8
337:7 349:18,19
350:21 351:2 357:11
357:18 358:21
370:24 371:17 372:1
377:10
**legally**
260:15 261:1,10,15
**legitimate**
177:2
**lender**
275:3
**lenders**
91:20 169:12,13
**lengthen**
117:19
**lengthy**
161:2
**letter**
189:24 191:7 193:7,14

194:1 204:4 212:20
213:24 220:4 231:16
231:24 232:16
265:18 269:19 390:2
**letters**
219:18
**let's**
9:12 16:16 27:9 28:17
33:5 39:6,18 45:7
48:13 62:18 67:3
68:10 69:25 73:13,17
80:23 83:17 94:8
96:12 97:5 98:21
108:6 109:3 113:11
118:17,19,21 132:10
133:20 136:15,19
147:16 151:20,23
156:16 162:13
165:14 173:7 176:12
181:9 186:6 192:20
195:21 196:14 207:7
207:12 214:4,9 215:1
215:25 226:14,15
231:6 250:24 258:18
269:1 271:10 275:23
285:8 291:25 298:23
329:13 330:19,24
331:13 341:24 343:6
343:19 346:3 354:22
355:18 361:6 368:9
**level**
13:16 14:18 103:19
120:7 122:25 123:4
283:14 290:16
**levels**
70:6,10 283:11
**leveraged**
22:1,7,14 23:10
**Levin**
4:16 231:19 232:2
390:6
**Lexington**
3:3
**Ley**
102:20 103:4 105:8,17

109:7,20 110:9,18
111:7,10 199:21
203:22 302:3,6 377:6
**Ley's**
112:2
**liabilities**
118:14,23 134:15,16
134:25 135:6 152:2
**liability**
26:2 115:24 116:2,14
117:18 119:1 151:6
151:25 238:10
266:21 268:12
**liberty**
107:16
**LIBOR**
37:17,19 41:2
**lien**
3:2,8,16 4:16 5:3 7:4
13:20 22:19 23:24
24:17 25:20 27:10
29:11 31:8 32:21
33:20 34:7,11,15,21
34:25 35:6,8,11,14
35:16,21,23 36:12,21
36:24 37:2,6 39:6
40:14,15 41:1 42:17
43:8,11 47:1 48:7
49:13,24 50:24 51:19
54:18 58:22,22 64:2
64:20 66:13,23 67:7
67:9 68:11,21 70:21
71:10,12 73:6 74:17
74:19 78:6 81:12
82:7,11,18 83:3
84:22 89:13 90:16
91:20 98:6,16,24
99:18 100:2,23
101:12 104:8,9 106:3
106:17 108:15
111:19 112:9,17
115:3 117:4 121:5,17
122:16 154:15,23
164:19 165:4,5,12,13

165:21,22 166:20,20
167:1,2,8,9,23
169:11,13 170:7,7
173:8,11 178:18
179:9 182:11 183:9
184:10 189:17,18
196:1,8 197:6 199:1
199:3 205:9 211:11
216:10,14,16 217:3,7
217:10,12,17 218:6
219:11 221:2,9,10
224:12,13 231:1
245:9,10 246:13,16
247:7 250:18 251:1
253:21 255:5 256:5
256:16,18 258:16
259:5 262:3,19 264:9
269:24 272:23
273:12,16 274:5,15
274:17,18,22 276:7
276:19 277:10
280:10,23 283:13
322:22 333:10,13,20
334:10 338:25
339:14 341:16 346:2
347:20,24 348:9,18
351:19 352:1,14
353:13,20 354:25
356:5 359:9 360:11
366:23,24,25 367:14
367:15,20 368:2
370:17,21 371:10,14
371:20 372:7,13,19
372:25 373:4,12,20
374:7 375:18 376:4
376:12 378:5,7,21
**lienholder**
78:16 80:8,13,18 81:1
98:9,12,20 272:10,21
273:3,14 367:7
**lienholders**
73:8 79:10,14 84:1
123:15 187:21
**liens**
13:1 164:1 174:3,3

178:8 179:21,22
184:22 190:3 191:12
197:14 203:14
204:10,13 205:6
206:22 208:13,25
209:2 210:2,13 212:4
212:10 215:10,11,12
219:22,23 230:17,20
236:6,8 245:25
247:11,20,23 276:21
277:12 278:20 339:1
339:7 341:12,18
349:20 374:10
**life-style**
83:16
**lifted**
247:5
**lifting**
246:14
**light**
265:6
**Likewise**
370:6
**limit**
152:15
**limitations**
278:8,10
**limited**
12:15 23:18 90:9
225:11 227:17
368:21
**line**
58:11,13 59:4 62:6,15
105:19,22 147:3,4
172:8 224:2 267:20
279:8,25 286:3 287:3
383:3 385:9
**lines**
58:18 62:14 172:9
**Lipton**
4:11 193:22
**liquidity**
26:21 116:18,22 118:2
**list**
18:8

**listed**
101:16 102:11
**listening**
132:22
**literally**
234:15 288:1
**litigation**
202:6 203:18 265:10
269:13,16 333:10,21
**little**
62:14 63:20 69:17
99:4 120:3,3 125:21
176:1 182:5 210:18
219:3 254:6 310:7
313:12 352:13
**LLC**
1:10,11
**LLC's**
246:23 390:15
**LLP**
1:20 2:2,6,12,17 3:2,7
3:15,20 4:2,7,11 5:2
5:8 6:8
**loan**
23:10 66:21 68:4
**location**
266:25
**long**
15:1 52:23 148:4
161:1 188:18 274:3
315:11 317:8 335:5
344:25 345:16
349:20 351:18,24
370:12
**longer**
184:20 185:13 218:12
229:1
**look**
39:3 41:20 48:9 53:1
66:14 67:3,17 70:1
79:2 92:2 105:23
109:3,7 112:14 132:1
153:15 154:4 155:22
157:2 158:7 161:11
164:6,22 165:15

166:12 169:9 171:19
175:17 180:4,20
182:13 184:19 185:4
193:8,25 195:21
196:1 202:15 204:5
206:20 208:8 213:16
215:1,25 285:8 286:8
290:6 291:2 298:23
302:25 308:3 311:15
316:19 317:7,9
327:13 328:2,6
330:15 344:12
347:16 352:25
381:16,18
**looked**
38:7 101:2,3,6 125:11
138:14 150:5 201:3
253:25
**looking**
27:9 32:17 46:18
70:25 71:7,8,17,20
71:22 72:14 75:19
84:21 112:13 118:13
147:20 160:15 164:7
199:22 207:19 208:2
208:15 290:25
303:16 311:9 365:13
365:14
**looks**
105:9 161:4,8 265:25
**lot**
8:9 26:2 53:15 66:17
66:24 122:1,3 123:2
136:7,9 164:3 171:5
172:1 204:15 212:13
236:15,15 237:10
255:10 270:15 292:6
318:23 327:7
**lots**
34:13 127:22 171:6
220:14 239:17 288:8
**loud**
196:2
**lousy**
7:19

**low**
70:5,9 241:7
**lower**
38:4,19 51:20 52:20
60:22 66:12 69:5,15
70:11,22 89:14,22
90:15,19 116:22
118:8,9 167:14,16,18
251:12 256:5
**lunch**
140:24 143:9
**Luncheon**
141:8

---

**M**

**M**
5:14
**magnitude**
240:10
**Maguire**
345:23 346:8,11,22
**main**
183:6
**maintain**
128:2
**maintained**
146:5
**majority**
83:2
**make-whole**
13:2
**making**
67:21 79:8 115:5
126:10 127:2 131:8
136:9 167:25 170:14
177:10,11 185:23
198:4 342:10
**manage**
116:7
**management**
20:16,23 26:3 89:3
114:10 115:24 116:2
116:15 117:18 119:1
151:7 197:20 266:21
268:13

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**manager**
21:1 126:22,24 129:10
130:5 139:7 143:22
181:22,23 271:3
**managers**
128:3,7,15
**managing**
118:13,23
**manifested**
362:22
**manner**
361:13
**March**
96:13 97:6 159:18,25
160:3,3,4 162:17,18
164:18 165:11
170:15 171:15,17
178:3 185:4
**mark**
5:15 10:20 33:5 45:7
107:19 136:19 199:4
205:23 222:17
231:15,19 232:2
246:19 249:21
252:22 297:22
329:13 342:13 390:6
**marked**
49:3 50:7 86:17,18
92:6 105:6,12 107:6
120:16,20 137:2
172:22 207:21 232:8
234:23 253:4,9 266:6
281:17 284:10
**market**
22:16,25 23:8 24:9
40:12,23 43:5,6
52:19 54:9,9 56:7,12
65:25 66:20 67:15,25
71:1 72:13 117:3
121:22 127:19,21,22
127:25 134:13
217:11 226:15,19
243:20 287:16,21,23
288:8 300:4,8,12,12
316:10 323:13,19,19

**355**:2
**markets**
21:25 22:1,1,6,7,8
36:6 66:21,22 67:4
68:5 69:18,19,23
70:4 198:21 256:4
257:1 299:25 314:7
**market-based**
74:23
**marks**
81:21 82:2 141:4
142:4 209:14,20
263:8,14 325:17,24
382:13
**markup**
297:21
**marriage**
384:17
**Master's**
20:17
**material**
144:1,5 159:7 279:16
279:18
**materially**
152:3,5
**materials**
145:11 368:20
**math**
150:17 339:21 340:1
340:16
**matter**
13:15 14:11 57:23
63:8 83:24 259:12
262:2,17 264:8
265:12 269:2 278:24
343:18 384:19
**mattered**
362:18
**matters**
29:19 30:18
**mature**
135:7
**maturities**
116:16 117:19
**maturity**

27:21 28:20 165:6
**maximization**
54:5,12
**maximize**
40:6 149:24
**maximized**
375:4
**Mayer**
231:18 232:1 390:5
**MBA**
21:4
**McGann**
62:7,10,16 64:10
250:13,25 251:4
252:12,16
**McMullan**
201:19
**mean**
9:24 20:7 31:1 72:1
78:1 89:25 98:21
108:21 112:2 116:24
121:10 123:10 124:4
160:11 161:21
170:19 175:4,5
184:22 192:9 202:11
225:10 242:18 250:7
258:19 260:9 275:22
285:19 288:1,25
292:21 295:8 296:12
304:11 317:4 322:25
324:15,24 332:18
334:8 351:7 355:5
365:6 367:18
**meaning**
133:24 146:19 271:14
298:9 338:20 340:3
378:7,20
**meaningful**
173:21
**meanings**
133:9
**means**
44:5 117:23 133:6,24
146:13 163:20
257:25 260:10 339:3

**355**:3 382:3
**meant**
94:24 149:21 157:1
257:20,25 290:13,17
296:22 317:7 324:25
336:14 369:10
**meet**
12:17 15:1 125:21
**meeting**
92:16 137:14,19
138:25 140:1 145:14
159:16,20 160:1
170:25 171:15,16
174:21,25 181:3,3
266:15 268:11,12,22
314:15
**meetings**
15:4,15 268:24
**Mellon**
349:7
**members**
12:12 121:20
**memorandum**
181:21,23
**memory**
104:16,24 273:21
**mention**
202:12
**mentioned**
27:21 82:6 114:11
115:19 122:22
157:12 212:18 317:1
318:22
**mentioning**
318:8
**Merrill**
5:17 6:3 7:7
**mess**
192:10
**message**
314:18
**met**
12:11,20 175:3
**metadata**
298:6

**Michael**
199:19
**microphone**
81:20
**microphones**
16:19 48:16 57:9
  87:22 141:2 209:14
  231:9 254:12 263:6
  325:17 355:21
  382:12
**mid**
262:14
**middle**
19:4 219:1
**midst**
187:15
**mid-summer**
262:15
**Mike**
157:6
**MILLAR**
5:6
**million**
36:25 37:3,12 40:16
  42:5,25 44:14 47:2
  51:22 52:11,24 56:17
  56:18 60:23,24 64:4
  64:6 90:22 113:17
  154:14,18 155:16,17
  216:16 231:1 250:19
  250:20 339:15
  340:15,18 341:4
**Millstein**
91:15,17 92:17 93:2
  95:10 185:1,3,9,11
  185:12
**Millstein's**
185:15
**mind**
41:17 53:14 87:15
  96:25 118:20 149:11
  149:14 178:24 186:7
  254:7 261:20 264:14
  283:20 291:8 294:13
  308:21 320:12

324:17,20 325:2
  336:17 360:5 365:10
  371:6 378:9
**mine**
327:11 365:20
**Minuscript**
250:8
**minute**
123:6
**minutes**
98:1 209:9 325:13
  326:5
**mirror**
347:20 348:10
**mis**
266:1
**mischaracterizes**
239:2 296:15
**miscommunicated**
338:9
**miscommunication**
306:3
**miscopied**
233:7
**misheard**
156:24
**misled**
131:7
**misrepresentations**
144:1 175:13
**missed**
158:17
**missing**
114:18
**misspoke**
133:19
**misstatement**
53:18,21 59:20
**misunderstanding**
316:17
**misunderstood**
101:23 296:23
**model**
108:20
**Moldovan**

12:13,18,20 14:4
  15:10 24:23 25:1
  27:5 74:13 105:8
  116:6 199:20 203:22
  272:5 275:5 276:10
  297:4,6 300:10,16
  301:7,12 303:25
  357:10,17,23 358:6
  358:11,14,25 377:5,9
  377:11,19 378:16
**Moldovan's**
116:20 272:2
**moment**
15:17 16:17,18 18:23
  36:3,7 46:22 48:15
  51:5 57:8 68:2,4
  80:4 81:19 83:18
  87:21 109:4 111:2
  141:1 209:13 218:24
  231:8 233:15 244:9
  253:6 254:5,11,23
  263:5 281:23 290:17
  296:5 325:16 355:20
  382:11
**momentum**
24:12 138:22
**Monday**
346:4
**monetary**
306:25 307:21 312:3
**money**
43:3 44:16,17,20
  71:23,25 72:2 162:1
  163:3 169:8 170:8,10
  221:20 228:6 230:25
  236:24
**month**
40:17,17 42:6,6,25
  44:14 47:3 51:22
  52:24 56:17 60:24
  64:4,5 158:4 162:16
  181:13 213:5 250:20
  253:18 254:25 255:7
  259:8
**monthly**

66:5
**months**
111:21 150:17,20,22
  151:15 188:8 356:25
  357:1
**Morgan**
114:18
**morning**
6:1 7:17 291:5 347:8
**motion**
30:21 31:7,17,23,24
  32:1,5,10,11,19 33:6
  33:10,18,18 35:6
  39:7,12,18 40:4
  41:20 42:12 43:12,22
  44:8,11,24 48:2,6
  49:3,12 53:18 54:25
  55:1 58:20,21 59:3
  67:15 73:3 86:9 89:4
  98:4,7,10,13,18
  245:16 259:3 333:15
  333:18 385:19
**motions**
29:14 30:16,25 31:6
  48:3 241:23,24
**motivated**
84:17
**mouth**
99:16
**move**
63:18 95:16 136:14
  211:10 270:7 300:22
  313:12
**moved**
351:3
**moving**
312:23
**multiple**
133:9 187:6 230:5

_____
**N**
_____

**N**
1:1,1 2:1 3:1 4:1 5:1
  142:1,1,1 385:1
**NAFTALIS**

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 32

4:16
**name**
7:22 103:1 160:11
    193:11 202:12 281:4
    318:17 344:4 383:1,2
**names**
25:25 30:4 78:16
    244:16 372:20
**NDA**
276:24 277:20 278:20
    278:23
**NDAs**
278:8 279:13
**necessarily**
118:4 137:7
**necessary**
40:5 96:1 278:16
**NED**
3:5
**ned.schodek@shear...**
3:5
**need**
10:11 32:24 44:3 48:9
    48:11 75:17 81:17
    129:19 136:4 140:12
    164:5 171:19 179:4
    180:4,15,16,20
    187:17 189:25 190:9
    210:18 211:12 231:4
    235:9 273:3 279:19
    314:18 328:15
    381:15
**needed**
134:24 210:12,15
    292:8
**needs**
37:3 64:12 190:1
**negative**
25:13 184:5,8
**negotiate**
26:24 197:4 304:13
**negotiated**
52:20 178:11 199:2
    222:6,8 224:23 225:2
    236:1,21 237:24

238:17 239:21
    240:20 241:12 292:9
    375:13
**negotiating**
192:4 194:21 224:10
    226:4 291:2 292:6
**negotiation**
24:16 27:8 171:7,21
    223:23 303:13
    332:15
**negotiations**
24:4 27:1,16 175:23
    197:19 205:3 226:20
    309:6 326:14 367:8
    367:22
**neither**
184:14 274:11 276:16
**net**
113:4 151:1,1
**never**
30:20 33:24 198:20
    237:5 270:17,18
    272:6 311:22 358:15
**Nevertheless**
260:24
**new**
1:21,21,25 2:3,3,3,9,9
    2:14,14,19,19 3:4,4
    3:10,10,22,22 4:13
    4:13,18,18 5:5,5,10
    5:10 6:5,5,9,9 7:18
    52:17 63:18 69:4
    153:16,17,22 154:10
    163:24 178:10
    198:18,19,22 216:16
    216:18 217:2 218:11
    221:20 228:5 256:22
    267:3 270:8 280:8,10
    280:19 281:2 287:7
    293:6 297:12,13,18
    303:21 328:15,16
    329:24 330:2,22
    331:9 336:5 345:18
    347:20 348:9 365:23
    384:2,4,9

**Nextera**
226:22,25 227:1,2,4,6
    230:11,19 231:21
    232:4,20 233:1
    234:25 236:2,23
    237:6,25 238:11,18
    239:10,22 240:10
    241:11,15 242:3,23
    243:4,7,10,17 244:2
    244:10 390:9
**night**
344:13
**nomenclature**
22:25 134:18
**non**
289:19 340:16
**noncontentious**
239:14
**nondisclosure**
277:19 369:20
**nonsettled**
340:11,14
**nonstandard**
289:19 292:16 303:21
**nonstarter**
315:4,22 316:2,5,23
**nonstrategic**
227:19,23
**nontypical**
288:20
**nonverbally**
9:2
**non-call**
285:18 286:20 287:25
    288:10,15
**non-callable**
285:21,23 286:2,4
**norm**
309:14
**normal**
9:1
**north**
4:3 169:2 339:15
**Nos**
1:10

**Notary**
1:24 7:11 383:24
    384:8
**note**
22:10 93:10 151:22
    158:21 216:14
    218:11 234:10
    281:22 291:10 310:2
    310:5 346:2 348:7
**noted**
6:20 85:18 157:11
    178:15 278:2 279:7
    279:24 347:22
    348:15 350:7 352:10
    382:17
**noteholder**
81:3,13 98:24 274:16
    276:20 332:25
    353:13
**noteholders**
2:13 3:21 83:3 84:22
    194:15,19 195:8
    246:17 247:7 274:19
    277:10 347:24
    348:18 352:1,14
    353:21 354:24
    359:14 368:2 372:7
    372:13,20
**notes**
2:7 3:8,16 5:3 7:4
    13:19,20 17:25 40:14
    49:22,24 50:24 51:2
    51:20 64:2,20 82:18
    109:13 113:15 117:5
    159:4,8 164:25
    165:22 166:3,4,6
    168:15 173:14,16
    216:17 217:3,10,12
    217:17 218:11 251:1
    274:17 280:7,8,9,10
    280:13,14,19,19,24
    281:1,3 287:7 288:1
    289:4,7 295:18,21,22
    304:17 305:24 306:8
    307:1,22 308:11

322:21,22 329:24
330:2 331:5,17,18
335:2,11,11,14,22,22
336:3,3 343:21
344:21 347:19 348:8
348:12 365:12,23
366:23,24 367:1,14
367:15,16 370:17
371:10,20 372:8,14
372:23 373:1,5,12,20
374:7 375:18 376:4
378:5,13,14 379:1

**notice**
10:17,23,25 11:3,6,12
79:14,19,21 255:9
279:18 307:2,24
311:12 312:5 331:7
357:4 385:12,16

**noticed**
24:15

**notwithstanding**
306:20 307:16 330:16
330:25 379:11
380:21 381:11 382:6

**November**
94:9 102:23 124:19
150:19 182:6 205:2
213:4,12,20 219:7,17
253:19 254:2 255:3
257:4 389:8

**November/December**
124:15

**number**
6:14,16 10:4,22 50:14
50:18 82:7 86:10
95:10 101:25 107:20
129:13 130:11 137:2
139:8 157:14,22
191:20 215:20
244:14,17,20 249:22
255:12 285:2,12
297:23 302:9 319:19
321:8 339:22

**numbered**
145:20

**numbers**
18:8 19:4,19 228:10
305:3

**N.W**
3:17

---

## O

**O**
1:1 142:1,1,1

**Oaktree**
275:8,11,25 276:16,25
277:6,8,21 280:4
281:5 282:9,15
283:25 284:6 285:24
302:23 308:9 309:4,6
312:7,19 320:18,25
321:16 322:15
324:10 327:20
336:15 337:7 338:20
342:1,2,3,24 349:1
349:20 351:19,24
352:25 353:8 354:7
367:23 369:21

**Oaktree's**
294:7,18 297:1 302:3
326:13 351:17

**object**
14:6 22:22 25:22
27:13 32:22 38:1,16
41:16 43:14 57:1
59:25 69:6 73:10
74:21 76:22 77:3,10
78:19 79:17,22 81:5
82:22 84:4,25 86:5
89:18 90:7 97:24
110:13 116:11 125:1
125:8,18 127:13
132:15,20 136:3
147:12 149:10,19
152:8,23 156:19
159:11 162:21
173:23 176:18 177:4
179:16 181:15
185:10 187:2 189:7
190:4 203:6 204:14

209:6 212:12 218:8
219:25 228:7 230:4
231:3 235:21 236:12
237:2,7 238:6,25
240:5 243:9,22 246:5
247:15 248:3,10
257:19 258:21
259:18 260:20 261:7
261:8,17 264:3,12
265:14 269:10
270:22 271:16
274:24 288:7 289:10
295:25 296:14
298:17 300:18,19
308:19 309:19
317:25 327:25 329:3
329:8 331:19 332:13
333:2,14 334:16
335:17 336:10
337:18 339:17 340:9
340:22 342:7 345:12
349:24 352:5 353:4
353:24 357:20
358:17 359:17
360:24 361:18,22
362:25 367:2,17
370:22,25 371:15,16
371:24,25 372:16
373:15 374:16
375:21 379:15 381:2
381:6

**objection**
85:15,17 114:1 152:25
292:3,24 364:25
371:3 381:13,25

**objective**
94:21,21

**objectives**
116:14 123:22,23
124:3

**obligated**
53:20 78:12

**obligation**
38:9 76:3,5,7,11,14,17
76:21 77:1,9,14,16

77:18,24 251:20
252:5 272:4 278:21

**obligations**
135:7 278:9 279:15
306:25 307:22 312:4

**obtain**
138:8 220:17 257:10
296:25 356:22 357:6

**obtained**
43:8 226:2,9 270:18
270:18 357:18

**obvious**
64:11

**obviously**
36:6 56:15 122:6
123:21 127:21,23
171:4 180:14 198:22
200:19 211:12
212:24 222:5 225:4
228:23 236:16
279:25 357:3 364:2

**Occasionally**
114:19

**occur**
266:15,16 355:7

**occurred**
171:16 210:3 270:16
275:7 276:1,5 282:24
306:1 343:3 363:22
366:15,20 367:12

**October**
129:10 131:18 150:13
152:4 184:16,17
191:24 192:1,22
196:15 199:21 200:8
204:2 205:1,17 206:2
206:4 208:20 210:4
214:1 215:6,17,22
217:20 218:1 219:20
253:14 254:4,24
255:8 256:14,17
265:21 269:19 276:2
329:15 343:4 389:3

**odd**
233:7

**offer**
232:20 244:25 277:9
280:6
**offered**
280:7
**offering**
164:5 181:21,22
187:12
**offers**
23:23
**officer**
23:14 60:4 272:17
273:9 274:12
**offices**
1:19 6:7
**oftentimes**
29:3 117:1
**oh**
49:19 103:3 191:24
193:10 208:16 325:2
347:10 354:4
**okay**
9:18 10:14,15 11:16
11:22 22:13,17 27:17
32:15 36:5 38:2 40:9
45:4 46:24 51:4
56:14 62:1 63:23
64:17 67:24 68:2,12
68:16 69:8 70:6 72:6
73:16,19,20 74:11
75:21,22 78:15,24
83:13 84:14 85:14
88:11 90:24 92:15,24
94:6 95:24 96:11,23
98:4 99:3,7 100:9
104:2 107:14 108:4,5
111:18,18 112:23
113:12,13 114:5
124:21 125:4 128:22
130:7,18 131:11,25
132:9 135:24 136:13
136:17 139:14 140:3
145:2,16,25,25 147:8
148:16 149:11
151:17 152:18

153:10,11 158:6
159:5 162:14 163:23
165:22 166:7 168:18
169:4 170:22 175:24
176:8 177:16 178:14
179:2,19 181:18
182:3 187:15 188:1
189:11 190:6,23
191:5,15 192:1,3,6
194:6,11 195:5,20,21
197:1 198:1,5 201:9
203:2 204:19 205:13
206:7,11,25 207:1
211:3 212:2 213:3,20
215:4,18 216:12,25
220:14,24 221:13,25
222:9 223:5,25
225:21,22 227:4
230:7 231:5 232:25
237:14 242:7 244:8
246:11 247:4 248:24
249:20 250:15,16,23
252:21 253:7 255:9
255:15 256:20 257:7
257:22 258:6 261:12
263:1 265:17 266:19
266:20 270:6 271:25
273:1 275:5 276:14
280:22 282:1 286:3
286:15,18 290:2
291:3,20,24 293:17
296:23 298:23 301:9
301:17 304:9,15
306:16 307:10,15
310:1 311:4 312:15
313:6,24 315:10
318:19 321:25 325:3
327:3 328:20 330:5
330:11 334:12
335:19,24 336:8
340:6 341:8,23
342:11,22 343:1,13
344:18 345:7 346:7
348:14,15 349:13,15
350:15 351:9,13

352:21 354:20
355:12,17 357:16
359:7 360:5 363:7,19
369:4,14 374:13
376:8 377:17 378:2
379:23 380:14,14
**old**
280:18,19,23 281:1
331:17
**Olympus**
94:4,20,22 122:23
123:3 124:9 138:12
138:21 143:14
146:23 157:25
172:17 182:22,25
183:7 184:20 185:13
186:12,20 187:15
188:3,17,23 190:12
190:24 192:2,5
194:22 196:16 197:5
204:11,24,25 210:9
241:6 266:21
**omissions**
144:5
**once**
32:25 168:19
**Oncor**
113:15,18,21,23 227:8
227:14,25 228:14
238:2,21 239:25
240:16
**ones**
24:15 178:3 289:20
**one-page**
92:7 102:18
**ongoing**
127:8 172:8 175:23
**open**
117:2 346:12,13
369:11 370:3
**operate**
26:19 110:16
**operating**
76:18,23 173:17
**operations**

21:23,23 113:19 114:9
**operator**
6:2
**opine**
29:23 113:8
**opinion**
53:24 226:4 258:13
259:14 312:16
355:16
**opinions**
59:9
**opportunistic**
255:22 256:1 257:11
257:18,21,24
**opportunities**
71:7,9
**opportunity**
92:1 221:8 237:17
251:10,22 252:4
254:19 256:2,7
257:13 258:3 346:5
**oppose**
280:3 369:12
**opposed**
212:21 288:25 291:14
**opposite**
200:20 289:1
**option**
72:15 100:23 260:17
261:4 289:15 356:21
**optional**
71:22 72:15,22 74:2
75:1 100:5 101:2,14
103:12,16,23 115:8
155:5,24 156:13
163:16,18 217:15
289:16 290:7 292:17
292:21 293:23,25
295:2 296:17 326:10
327:15 370:19
371:13 375:19 376:5
378:6,20
**optionality**
289:14
**optionally**

288:11
**options**
195:1 262:23 263:24
264:1 273:24
**oral**
282:13
**orally**
269:21
**order**
40:11 54:4 187:18
192:10 293:10
321:23
**organization**
55:24
**organizational**
124:13 203:9
**organized**
149:22
**orient**
87:17
**origin**
122:8,10 187:24
**original**
230:22 326:7 344:23
**OT**
320:9,18 322:7
**outcome**
203:17 384:18
**outlined**
303:17
**outlines**
145:6 195:11
**outset**
29:5,9 39:8 43:9 98:5
258:16 259:3,17
260:18 261:5
**outside**
70:21 72:9,12 74:6,6,7
74:22,22 85:1 100:11
100:24 101:13 115:2
122:16 160:22
166:25 306:6 350:10
350:20 359:18,25
**outstanding**
22:19 23:24 29:11

49:24 50:25 103:11
106:4 108:15 113:15
259:9 274:6 307:1,22
331:4 359:10 360:11
378:15
**outweighed**
72:4
**out-of-court**
146:11
**overall**
26:24 27:12 35:22
**overhang**
71:2
**overlays**
84:10
**oversecured**
339:2,3 341:13,18
342:3 348:2,21
349:21 351:25
352:17
**overstatement**
116:3
**overview**
59:3 123:6 153:12
**owe**
72:21 294:20,22
295:15 296:10,17
**owed**
72:10,16 73:8 74:10
75:2 154:25 156:10
163:17 236:10 238:4
238:23 240:3 248:9
248:17,18,22 294:10
295:9 334:9
**owned**
324:5
**owners**
4:12 128:10
**ownership**
123:19 237:11 239:8
299:20
**o'clock**
381:17,20
**O'Leary**
346:22

**P**
**P**
2:1,1 3:1,1 4:1,1 5:1,1
306:24 338:3
**package**
27:9,12,15
**page**
33:14,14 39:22 41:21
41:22,23 45:22,25
46:3,10,11,16 49:17
50:4,17 53:2,3 58:2,5
58:12 59:5 62:2,6
63:14,15 86:25 88:18
91:3 92:11,19 93:1
102:4,5,13 103:17
109:3 112:11,11,12
130:11 131:13,23,24
132:1,3 145:18 147:1
147:13,16,17,21
148:3,7,8,8,10,13,14
153:7,16 155:8,21
157:4 160:24 161:5
161:11,12 162:8,10
162:11 163:1 164:14
164:14 176:2,4,5,9
177:17,24 178:20,21
178:22,24 193:8,25
194:2,9,10,13 195:23
195:24 197:17 206:8
208:17 214:4 215:15
215:15 216:2,3,6
223:2,3,3,7 234:11
234:13,14 250:4,6,6
250:7,8,12,21,23,24
255:12 257:8 292:14
292:19 306:13,18
307:6,9 310:4,24
311:15 313:15 314:3
330:4 344:14 383:3
385:2,9
**pages**
33:8,12 102:6,7 108:1
112:10,16 121:8
145:7,19 207:25
208:2 223:3 233:7

385:22
**paid**
64:20 82:10 113:16,24
117:10 168:10 180:1
191:12 230:16
236:24 239:25 287:9
339:9
**Panossian**
281:9,14 282:14
283:17 284:9 287:6
292:2 293:12 295:24
303:10,16 318:18
326:9 332:2,16 337:6
338:13,19 344:3
345:6,15,24 346:22
363:8,23,24 364:4
366:15,20 367:12,22
368:5
**Panossian's**
296:6
**paper**
23:11 69:11,11,13,15
69:21 107:17 108:3
111:24 117:6,10
285:21 288:10,15
**par**
117:11 168:21 169:2,2
170:6,10 225:14
**paragraph**
39:19,22 40:24 41:20
41:24 45:21 46:4,11
46:19 49:16,19,20
50:1,4,18 51:5,17
53:3 86:9 87:5,16
88:19 109:8 194:13
195:6 197:17 206:14
206:21 207:5,8
214:10 246:11 247:1
247:3 306:22 307:8
307:11,19 308:3
311:19 330:16
**parameters**
182:1
**paraphrasing**
220:23 358:4

parent
125:16
parenthetically
310:6
Pari
68:23
park
2:8 283:15
part
26:8 39:15 61:23 72:6
93:1 124:22 126:17
127:11 128:8 129:18
138:5 154:23 155:25
189:11 200:23 202:8
216:1 221:12 226:3
278:22 306:3 311:21
316:18 321:19
332:15 354:14 373:6
379:5
participate
221:8
particular
127:3 129:18 138:18
160:13 257:8 310:3
334:7 361:25 363:17
364:20 366:6 379:10
parties
196:11 214:21 216:19
229:1 362:22 372:22
384:16
partner
55:15,17,21,23 62:10
203:4
partners
55:19 57:22 202:19
parts
116:5 134:3 175:25
213:15 219:5
party
229:6 230:12 237:25
238:19 239:23,23
passu
68:23
path
195:12 242:6

patience
370:4
Paul
23:13 232:18 318:9
pay
36:21 37:1 42:23 43:1
75:7 76:2,3,11 89:16
91:9 98:2 104:7
108:16 134:24 135:5
154:23 156:1,2,8,9
156:17 163:4,11
168:4,20 169:5 170:6
170:10 185:17
189:18 197:13 204:3
208:12,25 209:4
212:4,10 213:1,8
215:11 226:16
230:25 236:4,24
238:2,21 240:1 248:8
251:1,10,21,23 255:5
259:8,23 260:12,22
262:22 263:23
269:23 272:12 288:6
289:6 327:21 339:7
payable
34:12,14,16 38:7
38:18,22 42:22,23
43:2 54:20 57:2
65:24 75:20 77:4,12
82:8,12,16 89:21
93:16 94:15 96:18
97:10 180:3 258:5
259:22,24 262:21,23
263:22,24 296:20
307:2,23 308:13
311:11 312:4 331:5
363:14 364:22 379:2
paydown
163:7
paying
38:9 74:20 75:25
90:15 96:20 97:22
99:19 100:2,6,24
103:23 115:3 155:3
163:17 182:12 183:9

183:23,25,25 185:7
204:12 218:6 219:12
248:16 251:11
253:22 269:8 272:12
272:24 273:17
274:23
payment
80:9,14 98:25 113:2
156:2 180:8 190:2
205:2 219:22 285:25
380:24
payments
96:21 292:15 303:20
penalties
93:16 94:15 96:17
97:10
pending
8:22 133:21 201:5
308:16
Pennsylvania
3:17
people
122:13 129:1 163:23
193:6 201:14 244:21
267:6 268:4 298:4
349:9 353:18
perceive
89:11
percent
13:20 37:8,23 38:20
41:5,6 43:3 52:21
68:14,17 69:5 70:23
71:19 109:14 110:4
110:15 111:8,15,21
112:3,8,17 113:3
117:5 153:7 154:14
165:5,6,12 167:7,8
167:13,14,16,16,24
169:23,23 217:5
218:10 225:14,17,19
236:4,6,8 257:16
286:21,21,21
perfect
305:8
perfectly

305:18
period
12:22 64:5 70:8
151:13 181:13
218:12 286:7 287:24
periodically
15:15
permission
32:19 333:18
permits
356:7
person
83:21 84:7 125:24
130:12 160:7 301:18
302:1
personal
30:16 113:6 125:14
139:2 360:3
personally
7:25 31:21 119:18
121:24 125:7 128:12
131:19 227:20 376:1
personnel
159:9
person's
83:22
perspective
27:25 28:15 70:14
89:19 198:21 235:23
260:11 289:4 335:7
petition
22:20 23:2,25 37:7
39:2 80:10,20 85:24
274:6 339:13,16
341:9 359:10,11
360:12
Phil
252:11
Philip
3:11 6:24
philip.anker@wilm...
3:12
phone
2:4 4:14,20
phrase

220:21 337:11,13
**physical**
304:25
**physically**
19:6 142:14
**Pickering**
3:7,15 6:25
**picture**
169:10
**piece**
69:11,13,14,14,21
111:23 285:20
288:10,15
**pieces**
69:11 184:2
**PIK**
39:13,14 164:24
165:22 166:21
173:13,14 210:6
212:18,19 221:4,7,10
221:16 224:14
**PIKs**
173:4 174:3,8 175:9
185:23 186:25
187:17,21,25 188:7
188:12,23 189:15,23
190:20 191:4,6 193:3
197:10 204:3 205:6
205:10,21 208:24
210:3,6,16 211:4
212:3 213:24,25
219:21,21 220:16,16
220:24 221:1,13
222:2,13 224:5,21
228:3 236:11 238:4
238:22 240:2,22
248:8,21 265:20
267:24 268:8 269:4
269:21 374:9,10
**PIMCO**
5:8
**place**
183:20 200:5 274:2
318:3,7
**Plaintiff**

1:8
**plan**
35:13,16 123:7,8
175:17 196:5
**planning**
21:9
**PLATT**
3:12
**play**
23:22
**played**
66:24
**Plaza**
2:3
**please**
6:18 7:8,21 8:12 9:14
10:5,12 17:12 46:4
46:22 77:7,23 81:20
87:22 109:1 141:2
195:18 209:13 231:9
234:6 261:21 263:6
279:24 301:6 325:16
341:1 345:16 355:21
357:15 382:12
**plus**
37:17 41:3 236:9
380:24
**point**
8:11 10:10 21:7 30:22
37:19,21 47:7 63:13
67:8 74:9 78:10 94:5
94:11,18 99:14,24
113:16 115:11,23
127:15 136:11
145:15 150:3 151:6
160:5 164:10 169:11
169:17 171:22 175:2
175:5 180:20,23
182:20 184:9 185:19
185:21 186:11
196:21 197:4,9
199:25 200:2 204:7,9
204:18,21,23 205:4
205:10 212:1 224:25
225:25 270:5,10

273:18 277:22 283:1
290:20 293:5,12
310:10 317:8 319:12
319:12 321:16
324:10 325:9 336:12
351:1 352:19 366:13
**pointed**
156:25 157:13
**pointing**
148:23 149:2 230:18
**points**
99:17 106:1 125:10,15
148:2 167:18,19
347:13
**policy**
21:10 132:7
**portfolio**
299:21 324:4
**portion**
155:5 340:15 372:15
373:14
**posed**
263:20
**position**
19:23 21:17 75:4
171:23 179:13
181:12,17 211:11
278:7,19 297:1 304:3
320:24 321:15 324:9
326:14 332:21 334:5
340:14 355:6 369:15
369:23,25
**positions**
224:11 278:17
**positive**
328:19
**possibility**
100:1 101:10,10,12
103:21 115:1,2,10
121:4,16 122:15
310:12
**possible**
19:21 56:24 64:14
92:18 116:8 117:24
118:3 119:24 234:9

261:16
**possibly**
66:2
**posturing**
140:6 171:21
**post-emergence**
165:4,14
**post-Olympus**
186:8 190:8 192:13,13
**post-Project**
188:22
**potential**
227:11 273:24 274:16
316:9 367:14
**potentially**
12:4 28:20 100:5
317:23
**practice**
360:21
**pre**
192:2
**precedent**
299:3,8,12,17,19,23
300:4,13 314:20,24
323:4,8,13,20 324:2
**precise**
94:7 136:16
**precision**
32:17
**preclude**
278:23
**precludes**
356:20
**predicate**
143:20
**predominant**
69:20
**predominantly**
114:21 357:9
**preliminary**
87:8,12 88:15 224:4
**premarked**
10:21
**premise**
124:22 182:24 183:6

183:11 222:1,1,2
**premised**
184:1 197:22
**premium**
13:2 72:11 89:16
99:19 100:3 106:15
108:16 109:14,17
113:16,25 154:18,24
155:17,20 156:3,10
156:11,17 168:8,9,10
168:21 170:10
183:24 184:1 217:15
217:16 219:12
236:10 238:5,24
240:4 269:17 272:24
273:17 274:23 286:1
288:6 289:6 294:5,23
295:1,9,16 296:11,18
296:22 306:24
307:20 308:12
311:10 312:2,13,20
313:3 322:7 331:3,9
331:15 332:3,6,19,23
333:5,5 334:6,8,22
335:3,12,20 336:1,5
336:13,20,23,25
337:2,9,13,14,15,16
337:17 338:3,15
341:14 342:5 344:24
363:12 365:22 366:7
371:23
**premiums**
163:11 168:4 170:4
180:2 183:10 286:24
310:6 337:21 338:2
**prep**
15:24 17:9 368:23
**preparation**
14:16 15:19 16:2
142:12
**prepare**
12:9,18 138:15
**prepared**
12:7 17:6 79:15 95:10
120:25 139:9 186:19

195:8 253:12 295:18
295:22 302:23
304:15
**preparing**
138:5
**prepayment**
93:16 94:15 96:17
97:10
**preps**
15:22
**present**
5:13 59:3
**presentation**
92:18 137:6,17 138:15
139:10,16,18,25
143:10 145:5 153:6
157:15,25 158:3,11
159:6,23 160:6
167:24 172:25 174:6
175:8,10,11 176:14
178:14 179:3 180:5
210:6 256:9,12
**presentations**
136:1,5,10 137:11
138:9 143:13,21
148:1 175:16
**presented**
61:20 62:20 93:2
145:10 181:4 256:3
258:4
**presenting**
59:2
**preserve**
19:13
**preserves**
194:22
**president**
21:13,15,21 26:13
231:20 232:3 390:7
**press**
88:6
**pressed**
200:21
**presumably**
167:21 301:19

**presume**
12:2 249:5 354:22
**pretty**
264:22 353:14,16
**previous**
235:2,4 303:1 312:10
321:20 365:16
**previously**
21:6 89:2 143:3
347:13 365:17
**pre-bankruptcy**
99:14,25 237:24
238:17 239:21
**pre-petition**
227:6,22 230:13
235:25 241:12
263:20
**price**
166:6 168:24 169:2
**prices**
114:8 287:1
**primary**
38:17 123:21,22,22
124:3 281:8
**principal**
35:22 36:18,22 38:3
38:13,21 98:25
114:14 115:20
117:12,14,17,24
118:8 121:1,16 128:6
151:8 180:1 236:5,7
236:9 294:9,20
306:23 307:20 312:2
331:3,3,8,15 332:6
333:4 336:13 339:8
344:24 375:18 376:3
378:14 380:24
**principally**
66:9
**principle**
289:12
**printed**
369:2
**printing**
107:16

**printout**
107:22 387:11
**prior**
20:9 70:18 85:16
157:13 168:10 178:2
182:18 236:21
269:18,25 270:1
282:7,15,24 283:3,7
291:24 296:24
302:22 331:10,16
346:9 363:21 364:3
364:14,16 365:4,22
366:14 376:7
**privilege**
264:24 300:19
**privileged**
14:8 18:3 264:4,21
**pro**
155:12 216:15
**probable**
134:25
**probably**
30:7 75:17 101:16
114:18 120:1 150:25
249:3 262:14 300:10
326:19
**probe**
259:25
**problem**
218:23
**procedures**
241:22 244:5
**proceed**
7:15 19:8
**proceeding**
1:8 6:16 245:8,11
338:25 341:16
370:18 371:11,21
373:5,13
**proceedings**
9:25
**proceeds**
379:12
**process**
34:20 117:8 119:2

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

149:22 180:12
226:18 238:8 241:21
244:4 278:25
**produce**
18:6,15 277:25 279:5
**produced**
17:20 18:12 92:13
102:9 105:17 277:20
279:2,3 291:13
297:20,20 298:7,14
349:3 365:12,13
**production**
158:18 277:17,23
278:24
**professional**
20:18 63:6 157:5
**professionals**
269:5
**program**
117:18 151:7
**Project**
94:4,20,21 122:23
123:2 124:9 138:11
138:21 143:14
146:23 157:24
172:16 182:22,24
183:6 184:19 185:13
186:12,20 187:15
188:3,17 190:11,24
196:16 197:4 204:11
204:24,25 210:9
241:6
**projection**
167:6
**promise**
370:11,13
**promoted**
21:12,14
**pronounced**
227:2
**pronouncing**
103:1 350:23
**pronunciation**
30:8
**proposal**

156:16,20 163:2,25
165:10 170:15,17,24
171:1,4,8 190:1,1
195:10 197:22 198:2
208:5 212:18,19
213:8 214:1,17,19
215:5,11,21 217:22
218:3,5 219:10 220:3
226:23,23 230:13,15
230:16,19,22,24
233:1 234:25 235:10
235:11 240:11 243:4
253:21 254:2 270:2
285:24 286:23 287:5
291:9 292:1 294:7,12
294:18 296:6 297:2
299:7 302:4,7 318:16
**proposals**
122:2,4 205:7,9,11
206:16 214:23
219:19
**propose**
191:10
**proposed**
59:13,22 64:1 164:17
182:7 217:24 245:4
246:12 321:1 333:24
344:7 345:5
**proposes**
160:21 212:9
**proposing**
169:5 208:11 255:4
327:20 345:9
**proposition**
243:15
**prospective**
214:14
**protection**
28:25 29:2 285:14
286:19 287:13
303:21
**protections**
289:19 314:19
**protocol**
354:3

**proud**
288:22
**proves**
247:10
**provide**
15:25 16:10 17:7,12
18:8 20:1,11 21:2
32:6 119:6 142:23
190:2 196:5 301:14
305:17,18 308:12
**provided**
13:23 16:9 18:10 25:6
73:20 156:22 221:2
230:25 236:3 238:1
238:19 301:12
**provides**
82:20 328:3
**providing**
203:16 218:11
**provision**
28:21 72:23 74:3,15
83:1 101:14 103:12
103:13 163:17,18
298:24 310:13
312:19 322:14,24
355:3 356:5 359:13
360:14 361:4,15,25
362:4,21,23 380:20
381:1,4
**provisions**
73:22 144:21 292:16
311:18 347:19 348:9
356:10,15 362:13,18
**public**
1:24 7:12 21:10 212:8
217:23,24 218:4
253:20 315:3,21
316:23 383:24 384:8
**publicly**
219:9 255:4
**pull**
361:6 381:18
**purchased**
239:24
**purchasing**

227:24
**purpose**
86:1 103:25 105:16
106:23 108:18
116:19 251:5,5
**purposes**
100:15 198:24
**pursuant**
10:17 40:11 163:8
**pursue**
54:17
**pushed**
257:5
**put**
39:6 47:25 48:5 49:1
96:9,10 98:22 99:16
113:11 142:9 147:25
162:13 163:24 164:8
169:15 176:12 187:9
187:12 191:9 197:12
198:2 209:1,3 221:20
260:15 261:1 269:6
269:22 298:25
317:14 337:2 359:13
360:14 361:14,20
364:13
**putting**
95:13 96:15 97:7,17
121:13 136:14
167:22 182:9 185:5
210:9 228:5 317:17
317:19 360:21 361:4
**p.m**
142:6 200:8 209:17,22
218:18,22 231:10,14
233:16,20 254:13,17
263:10,16 291:19
322:3 325:20 326:2
343:10 346:18
355:22 356:1 368:12
368:16 382:15

---

### Q

**qualification**
261:9

**qualify**
181:19
**quarter**
96:12 97:5
**quarterly**
292:15,15 303:20
**quarters**
145:23
**question**
8:12,16,22 9:14 19:7
20:9 25:13 28:11
30:1 32:16 38:10
41:18 43:25 53:15
62:19 64:9 67:22
70:12 71:3 73:12
75:11,23 77:6,8,14
77:22 84:12 85:16
90:5,6,8 91:8 95:7
96:24 97:1 106:7,8
111:1 118:20 122:11
124:7 125:4 127:16
127:17 133:20
137:10 139:20
142:19 157:2 169:24
170:20 176:24 186:4
191:5 192:12 201:4
202:9 210:24 211:14
212:14 218:25 224:2
232:6 234:19,21
238:14,15 239:5,16
239:19 240:19 241:9
241:25 243:13
247:20 249:4,12
254:22 257:7 260:25
261:21 262:4,6,7,13
262:16 263:19 264:6
264:15,19 271:5,8
273:1,6 277:4 282:22
288:12 291:21 293:4
296:4 301:2 308:16
308:22 309:1 311:20
312:10 320:12,14,15
320:17 322:6,9
333:16 335:5 338:10
341:2 352:22 354:17

354:19 355:13
357:14 359:22 360:6
361:1 362:9,10
363:11,21,25 364:1,7
364:9,19,19 365:3,9
365:25 366:13 367:9
370:23 371:7,16,25
372:17 375:10,20,24
377:23 378:10
**questionable**
363:6
**questioning**
282:3
**questions**
13:10,13,19,21 30:12
51:9 64:10 139:1
152:16 172:2 227:18
252:13 275:1 321:21
345:19 354:8 370:9
370:11 372:6,10
373:2,7 374:2
**quick**
16:25 121:7 325:14
330:10
**quickly**
63:19 142:22 187:13
347:6
**quite**
83:18 188:4 204:8
290:15 320:15
365:20
**quote**
40:3 47:1 51:19 56:3
59:22 247:6 257:10
287:20

_____

**R**
**R**
1:18,18 2:1 3:1 4:1,20
5:1 6:11 7:9 81:22
82:3 141:5 142:1,5
143:2 209:16,21
263:9,15 325:19,25
382:14,20 383:2
384:1,10

**raise**
164:8 172:3 256:16,18
**raised**
166:18 170:3 187:7
**raising**
21:24 22:5,9 23:16
26:5,16 184:3
**range**
235:16
**rata**
216:15
**rate**
37:8,13,15 51:3 60:21
60:22 64:19 66:19,25
69:3,4,16,19 70:3,23
90:19 110:4 118:3,5
118:7 217:4
**rates**
28:4 43:10 64:21
66:11,15,17 67:1,2
69:9,23 70:4,9,22
89:15,22
**rate's**
28:2
**rationale**
36:16,19,20 61:3
**Ray**
7:23
**reach**
121:20 184:15,17
227:22 238:11
270:20 353:12 354:3
354:23 355:14
**reached**
74:24 121:25 227:5
229:25 230:11
**reaching**
177:3 353:8
**reaction**
171:18 241:23 291:25
328:14
**reactions**
290:22
**read**
13:4 42:8,9 46:6,22

49:4,16 51:5,13
59:16 60:25 64:7,15
65:2 74:11 75:14,17
80:21 86:23 87:13,16
88:16 89:9 93:21
97:2 108:3 109:18
110:5 122:6 129:19
133:2 146:8 149:12
153:19 155:18,19
164:21 165:8 170:2
178:24 181:20 189:1
195:3,17 196:2,12
200:23 201:6 211:1
212:19 214:11,24
216:23 217:18
224:17 235:3 246:9
251:15 285:4 286:14
290:10 297:8 301:20
304:4 307:3,14,25
315:9 316:20 320:10
320:11 324:19 325:2
326:18,20 343:22
347:7 348:3 352:6
354:13,15 355:10
378:24
**reading**
46:7 59:8 60:19 75:12
85:5 132:7,8 164:25
178:23 194:4 196:4
206:25 214:11
220:21 223:8 270:1
286:10 308:18
321:18 324:12
**reads**
87:13 88:16
**realize**
102:10 135:4,4
**really**
43:21 88:10,11 94:6
104:15,23 138:22
170:20 188:2 190:15
191:6 211:13 238:14
239:13,15 240:25
243:13 304:5 316:25
317:5 358:24

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**Realtime**
1:23 384:7
**reask**
218:25
**reason**
20:1 25:7,14 35:20
38:4,13,17,21 54:17
61:2 66:9 69:20
82:11 111:3,6 229:23
230:10 234:4 237:3
277:4 294:21 305:5
308:4 379:3,5 383:5
383:7,9,11,13,15,17
**reasonable**
27:3 168:1 170:16
**reasonably**
64:14
**reasons**
66:9 230:6 277:5
383:3
**REATH**
5:2
**REBECCA**
2:10
**recall**
13:22 14:22 19:10
25:23,25 26:4 31:14
55:3 67:11 103:4
108:5,8,17,23 111:12
111:16 120:6,10
121:14 138:20
159:19 171:14 181:3
181:5 205:9 228:11
230:23 233:3 265:21
268:23,25 269:1,17
269:18 270:14,23
275:8 280:1 281:4
283:5 285:7 292:10
292:13 299:6 302:5
303:14 338:16
344:10 372:9,10,11
373:7
**recapitalization**
146:7 154:6 160:22
161:25 185:25

**recapitalize**
148:18 149:24 176:9
178:4 187:8
**recapitalized**
146:11 149:8 165:24
169:19 177:20,22
**receive**
216:15 217:8 295:17
347:17,25 348:19
352:2,15
**received**
17:18 206:15 210:2
219:20 220:4 265:18
265:19 275:2 351:16
352:23
**receives**
351:22
**receiving**
108:5
**recess**
16:22 48:19 57:12
81:25 87:25 141:8
209:18 218:20
231:12 254:15
263:12 325:22
355:24
**recipient**
102:12
**recites**
50:23
**recognize**
11:7 33:15 49:7
102:13 103:6 105:11
105:14 120:19
136:25 158:6 172:21
232:13 253:3,8 266:5
281:20,22 298:20
342:19
**recognized**
168:3 190:9
**recollect**
74:16 101:9 106:22
114:24 145:6,8 153:4
153:5 282:7,12,13,23
283:9

**recollection**
103:19 107:5 108:11
138:9 143:12 147:14
180:22 231:2 276:11
319:3 381:21 382:4
**recollections**
16:1
**record**
6:19 7:22 16:13,17,21
17:3,4 46:6 48:14,18
48:21 50:11 57:7,11
57:14 61:7,9 81:24
82:5 87:14,20,24
88:2,17 97:3 102:16
133:17 140:6 141:7
142:7,9,10 157:9
166:9 209:17 218:16
218:19,22,24 231:7
231:11,14 233:5,14
233:17,18,20,22
237:21 249:9 252:11
252:16,17 254:9,14
254:17 263:11,17
273:5 275:24 278:17
285:5 291:11 325:21
326:2 331:14 355:19
355:23 356:2 368:13
368:14,16 369:24
382:16 384:13
**recoveries**
248:1
**recovery**
246:16 247:6
**red**
289:25
**redeem**
74:25 165:21 286:5,6
288:11 317:22
**redeemable**
288:5 289:5,8
**redeemed**
113:15 295:14 296:9
296:13,16 378:12
**redemption**
71:22 72:15,23 74:3

75:1 100:6 101:3,14
103:12,23 115:8
155:5,25 156:13
163:16,18 166:6
168:24 169:1 183:22
183:23 184:1 217:15
287:1 289:16 290:7
292:17,21 293:23,25
295:2 296:17 326:10
327:15 339:25 340:3
340:6 341:5 370:20
371:13 375:19 376:5
378:4,6,19,20
**redemptions**
103:16
**reduce**
35:22 36:17 38:14
116:8 117:23 118:3
151:7 154:1 183:16
**reduction**
154:11
**refer**
123:11 197:16 280:20
**reference**
207:2 317:12 334:22
334:24 347:23
352:11
**referenced**
40:24 155:21 287:14
314:7
**referencing**
276:1 280:5 316:8
**referred**
132:10 134:12
**referring**
10:6 36:1 55:11
112:21 134:18 136:6
150:1 160:25 212:23
220:12 319:11
337:23 348:4,6
**refers**
90:22
**refinance**
32:20 34:7,11 35:6
36:9 39:9,13 40:13

43:20 49:12 51:18
70:20 71:12,21 73:6
74:9,18 75:6,24 86:3
89:13 90:14 98:6
103:10 104:8 106:2
106:16 108:14 110:3
113:3 164:18 165:4
165:12 166:19
167:23 169:22 170:6
183:8 189:17 218:5
253:21 256:4 259:4
259:16 269:7 272:11
272:23 273:16
274:22 334:9
**refinanced**
57:5 72:8,13,22 74:1
109:14 167:2,6
335:14,21 336:3
**refinances**
335:1
**refinancing**
33:20 35:21 38:19
40:15 41:5,10 47:1
56:24 64:1 65:14
71:9 72:18,19 90:18
93:12 99:18 100:1,23
103:21 113:23
114:13 115:2 121:4
121:17 122:15
164:24 168:5 184:12
200:12 217:17,24
218:9 250:18 255:23
256:1 257:11,15
265:11 348:1,20
349:23 352:3,16
**refining**
239:11
**reflect**
17:5 136:9 305:25
**reflecting**
97:15 295:23 308:9
**reflects**
306:9 309:10 349:18
**reframe**
32:15 106:8 127:17

**refresh**
103:18 107:4 108:10
138:7,8 319:3
**refusal**
194:7
**refused**
197:21
**regard**
28:14 305:14 329:5,6
368:8
**regarded**
305:14,20 309:22
**regarding**
13:19 78:23 199:1
214:16 245:12
268:12 269:13
270:24 282:9 300:2
318:15,16 322:6
323:9 367:21 368:4
372:6 373:11
**regardless**
190:20 191:3
**registered**
144:9
**regular**
122:5
**regulations**
145:3
**reinstate**
260:4,6 262:2,19,25
**reinstated**
260:13
**reinstating**
261:4,15
**relate**
12:3 282:6,16
**related**
1:9 384:16
**relates**
111:25 112:1
**relating**
24:15 200:15 282:8
**relations**
22:2
**relationship**

128:3 198:24 256:22
**relationships**
127:8,10
**relative**
56:11 66:16 67:22
70:5,9 123:19 187:22
188:19
**relatively**
56:8 219:17 220:2
223:4
**relay**
357:17
**released**
254:1
**relevant**
145:7 213:15 345:17
**relied**
198:17
**relief**
32:5,9,13 34:16 40:3
49:11 56:23 247:11
**rely**
30:22
**relying**
82:16 225:4
**remain**
194:20
**remained**
162:18
**remaining**
38:24 166:4
**remains**
20:8
**remedy**
380:23 382:7
**remember**
104:17,20 120:22
137:3 372:5 373:20
**remind**
305:10
**reopen**
369:12
**reorganized**
35:10 216:20
**rep**

126:18 132:4,16,16
150:10 152:14
**repaid**
22:21 335:22 336:3
340:4 370:16 371:9
371:20 378:13
**repay**
35:17 78:6,12 89:21
151:21 169:5 258:15
372:8,23 373:4,19
374:6
**repaying**
101:12
**repayment**
340:5 372:14 373:12
375:17 376:2 378:3
**repeat**
30:19
**repeatedly**
44:8
**repeating**
264:14 371:6
**rephrase**
8:13 29:25 200:1
229:2 333:16
**replaces**
60:21
**replacing**
251:11
**replied**
300:8
**report**
23:12 209:23 249:1
**reported**
122:13
**reporter**
1:23,23 7:6 9:7 88:5
153:1 218:14 224:7
384:7,8
**represent**
57:23 67:19 107:24
142:16 158:16
166:10 272:3 282:2
298:4 338:24 341:15
346:10 365:21

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

representation
55:19 132:11 133:11
133:25 176:21
177:11 188:6
representations
125:25 126:2 129:1
131:1,8,12,13,17
135:14
representative
9:21 81:1,12 273:13
274:18 276:21
366:25
representatives
143:15 277:11 368:3
represented
7:24 147:9 166:14
174:11 181:8 353:15
representing
7:2 134:7 149:6,16
202:2 223:15 272:8
272:16,19 273:8,11
274:14 276:17
350:12
reps
150:7
reputation
128:15,18 129:5
request
18:24 278:1 279:6,17
279:23
requested
19:14 368:19 369:19
requesting
191:7,8
require
98:17 179:14 202:3
283:4 312:17
required
77:25 78:6,12 98:13
99:20 122:17 155:4
296:19 372:7 373:4
374:6
requirement
201:4 259:16
requirements

373:11,19
requires
178:16 179:20
reread
133:15
rescind
83:4 84:2,24 85:11
246:2 247:23 356:8
359:15 360:16
rescission
80:6 247:13 356:11
358:2
research
297:16
reserve
140:12,13 142:20,24
143:1 279:25 280:2
369:4,14,22
reserving
19:10 370:1
resets
291:14
respect
9:23 20:3 63:6 99:9,11
217:13 221:15 226:5
228:4 256:21 293:13
324:3 380:3,16
respected
91:21 109:24
respectful
355:8
respectfully
242:1
respective
64:21
respectively
169:23
respects
63:4
respond
51:9 139:20 345:13,14
responded
314:23 319:9
response
116:21 171:13 263:25

278:25 300:3 311:7
319:21,25 322:5
355:9
responsibilities
21:20 22:8 23:16 26:8
248:12,14
responsible
21:22 22:2,5
responsive
51:10 338:11 365:20
rest
167:1
restate
97:1 186:4 294:13
335:5 341:1
restating
41:18 53:14 149:15
restructure
86:3 88:22 219:11
restructured
123:19 146:18 150:2
178:6 220:18
restructuring
119:7,25 120:2 123:8
123:17 146:2,6
149:22 161:8,16
180:6 182:11 184:12
191:10 194:24 195:2
195:9 196:19 197:12
197:22 208:11 210:8
212:9 214:16 216:21
220:7
result
41:9 64:1 117:5
251:10
resulting
51:20
resumed
143:3
retain
18:24 37:4
retained
119:5
retire
154:22

retired
154:15
review
12:6 14:15,17,21 18:5
31:21 32:12,25 33:14
113:5 121:7 142:19
142:22 180:16
235:10 245:20 254:6
254:9,19,21,23 346:5
369:7
reviewed
12:11 17:9 31:16,18
89:4 112:4 142:12
187:6 205:12 271:1
347:6 368:23
reviewing
18:1 111:16 266:19
revised
306:7 309:9
rhayes@foley.com
2:10
RICHARD
4:4
richard.howell@kir...
4:5
Rick
199:20
ridiculous
171:1
right
9:3 11:19 13:3 19:10
22:21 23:4 24:21
25:10 26:12,25 27:12
27:22,25 28:3,8,21
29:1,7,11,19 30:4,6
30:18 31:9,13,19
32:2,7,21 34:8,23
35:10,18 36:14 37:9
37:13 39:14 41:7,12
41:15 42:12,17 43:4
43:13,18 44:1,6,16
44:18 45:16 46:8,16
47:23,24 49:13,25
50:5,22,25 51:24
52:2,6,12,17 53:7

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

54:24 55:16 56:18,25
57:25 59:8,21,24
60:4,19 61:4,9 62:11
62:21,25 63:4,8,11
64:7 65:19 66:8 67:9
68:1,14,18,21,23
69:1,5 72:11,23 73:9
73:22 74:3,20 75:7
76:1,8,10,14,17,21
78:11,13 79:11,21
82:21 83:5 84:1,15
84:23 85:12 86:4
88:8,9 89:6 90:4
91:11,12,22 93:3
97:23 98:7,10,14
99:1 101:1 106:4
109:22 111:22 112:3
113:1,5,17 115:4,17
115:21,25 117:20,24
118:14,24 121:5
126:2,6,10,14,20,20
126:22 127:4,9,12,19
128:4,5,10,16 129:3
130:22 131:3,9,15,21
132:14 133:7,10,19
134:3,9,13,16 135:1
135:7,11,22 136:2
137:14 138:19 139:8
140:19,23 143:17,23
144:2,5,11,18,22
146:2,8,11,19,23
147:1,5,6,11,21
148:4,5,9,10,10,11
148:14,19 149:9,18
150:6,10,14,17,17,20
150:20 151:8,9
152:21 153:13,17
154:2,11,13,15,25
155:18 156:12,18,23
158:4,23 159:10
160:8 161:10,13,16
161:19,22 162:4,7,19
163:5,9,13,15,21
164:1,25 165:13,17
165:23 166:21 167:3

167:9,12,14,17,19,20
168:1,5,11,16,23
169:1 170:17 171:2
172:9 173:9,13,19,22
174:4,8,12,16,18
175:14 176:17 177:3
177:7,13,18,20,23
178:6,12,19 179:10
179:22 180:3,6,22
181:2,25 182:2,12,22
183:3,10,17,18,19
184:13 185:1,9 186:2
187:1 189:6,10,12,19
190:3 192:22,25
193:3,8,9,16,20,23
193:23 194:16
195:13 196:4,20
197:15 198:9 200:9
200:12,24 201:12,20
201:23 203:1,5,15,23
204:13 205:5,14,15
205:15,15,18,19,21
206:3,18,23 207:4,5
207:10 208:3,6,6,14
209:4 210:13,16
211:5,19,23 213:9,18
213:21 214:2,12,24
215:7,12,14 216:24
217:5 218:7 219:6,24
220:8,19 221:20
222:3 223:10,16,20
224:11 225:3 226:10
226:16,21,24 227:8
227:14 228:14,20,23
229:2,3,7,16,21
230:3,8,13,17,21
232:20,23 235:4,8,13
235:20 236:11 237:1
237:6 238:5 240:4,11
241:15,19 242:3
243:1,8,21 244:11,15
244:18,21 245:1
246:1 247:8,12,14,24
248:2,9,18,22 249:17
250:14 251:3,24

253:12,15,17,23
254:4 255:7 256:7,25
257:14,23 258:4
260:24 266:17,22
267:1,8,10,13,17,24
268:5,8 271:10 274:7
275:12 276:2,7,22
277:14 279:10 280:8
280:9,16,24 283:19
284:21,24 286:16,25
287:17 288:6,18
289:9,14 290:10,21
295:8,11 301:21
302:24 304:4 307:6
308:6,18 309:4,7,11
309:17 310:25 311:8
311:8,12 312:7,25
313:22 314:10 315:8
315:11 317:2,24
318:14 319:13,14,16
319:23 320:3,10,12
320:18,21 321:1,17
322:3,10,15 324:5,11
324:11 325:6,8
326:22 327:17,19,24
328:12 329:25 330:7
330:13,21 331:18
332:9 333:1,10,21,25
334:10,15 335:3
336:6 338:7 339:3,10
339:15,23 340:20
341:6,9 342:6 343:4
343:11,16,23 344:9
344:24 345:1,6,10,21
346:5,15,19 347:17
348:3,11 349:11,23
350:3,13,14 351:12
351:14 352:4,9,20
356:9,12,17 358:22
359:5,16 361:11,17
361:21 362:14,18,24
365:4 366:16 367:1
371:4 374:11,20
375:11,20 376:9,13
377:20,25 379:25

380:4,7,10,16 381:1
381:5,24 382:8
**rights**
140:12,13 142:20,25
164:5 187:12 280:1,2
369:5,15,22 370:2
**right-hand**
151:25 154:5 161:24
164:22 301:18
**right-size**
149:23
**ring-fenced**
113:18
**ripped**
186:12
**rise**
58:13 274:4 276:6
**risk**
22:3 317:14,17,19
**Robert**
5:17 6:3
**Rockefeller**
5:9
**role**
23:22
**roles**
24:2
**rolled**
124:16
**room**
17:10,16,22 234:3,5
282:20 305:16
**ROPES**
2:17
**ROSEN**
4:11
**roughly**
37:3 228:11 344:10
**RSA**
39:16,17 188:23
220:11,14,15,21
222:1,2,10 223:23
224:10,23 226:4
228:2 229:2,3,4,9,15
229:21,24 230:3

235:7,7,13 240:21
241:12 373:10,18
374:6,7,15,18,19,21
374:25 375:3
**ruled**
310:11
**Rules**
145:3
**run**
190:10 328:4
**running**
62:24 190:22 191:3
238:8 259:10
**Rush**
6:21 86:16 157:8

**S**

**s**
2:1 3:1,5 4:1,4 5:1,11
142:1,1,1 246:24
385:7 390:16
**SABIN**
5:11 258:21 261:8
**Sachs**
114:17 128:7
**sadly**
303:5
**saleable**
134:23
**San**
4:8
**Santos**
284:16,20 285:6 291:4
343:9,20 344:20
345:8 349:10 351:6
**Sapna**
103:3
**Sassower**
267:12
**sat**
20:22
**satisfied**
126:12 133:10 134:9
**satisfy**
122:17 135:20

**satisfying**
134:6
**save**
47:2 72:5 250:19
**saves**
60:23
**saving**
40:14,15 41:14 44:22
52:22 56:17 64:3,6
65:18
**savings**
41:10 42:5,16 44:9,12
44:13 51:21 52:6,11
52:14 54:1,2,3,16
66:4,10 91:6,10
113:4
**savings/cost**
109:13,16
**saw**
210:4 257:11 290:22
354:11
**saying**
51:17 56:15 111:14
118:2 143:20 150:3
170:5 179:4 185:12
186:25 188:18
189:24 190:20,21
196:18,22,24 204:3,5
204:10 206:15
208:24 211:17 212:4
215:19 303:9 311:2
352:8 361:6
**says**
33:19 40:3,10 42:4
51:25 58:13,18 59:7
62:5,16 63:24,25
75:14 83:1 93:10,11
93:15 98:23 109:12
112:16 129:24
132:17,17,18,25
146:4,10 149:21
153:12,16,17 154:9
154:13,17 155:15
157:4 158:2 161:18
161:25 162:12 165:3

166:12 176:8 196:3
200:14 216:12 224:7
224:8 247:4,9 255:21
272:2,3 285:17
286:10,19,20 287:4
290:6 303:24 306:5
309:8 314:1 315:2
326:10 327:18
345:24 346:11
347:12 348:15 352:7
352:8,10 381:10
382:6
**scenario**
165:19 185:12 190:7
190:12,18
**schedule**
168:25 269:15,16
**schedules**
130:3 165:7
**SCHODEK**
3:5
**Schoenfeld**
174:15
**school**
358:15
**Schorr**
1:22 7:7,12 384:6,25
**scope**
12:16 85:2 119:14
359:19 360:1
**Scott**
191:21
**screens**
116:19
**search**
277:21
**sec**
144:25 368:10
**second**
4:16 11:12 19:2 28:17
34:15 35:6,8,11 37:2
39:6 40:2 45:24 46:5
48:14 56:1 57:7 78:1
80:23,24 81:14 87:20
109:8,11 117:22

133:14 134:22
148:16,17 154:9
156:9 163:5 164:19
165:5,13,21 166:20
167:2,8 170:7 173:11
174:3 179:8,22
189:17 194:8 195:14
196:3 198:8 204:9
207:16 214:9 221:2,9
221:10,19 224:12
230:17,20 231:1,7
236:8 245:9,25
246:12,16 247:7,11
270:16,20 280:10,23
283:13 306:19
307:14 322:22
330:15 333:9,13,20
334:9 341:16,17
346:2 347:20,24
348:9,18 349:20
351:19 352:1,13
**seconds**
238:3,22 240:1
**secretary's**
351:4
**section**
72:14 82:17 101:3
133:15 216:3 295:2
306:23 307:19 311:3
311:14 330:3,18
331:2,12,16 332:4
334:7,7 370:20
371:13 378:7,21,23
379:10,11 380:20,22
381:10,12,23 382:5,6
**secured**
216:14,17
**securities**
144:10,17,18,21
**security**
221:23 222:3,14 224:6
224:22 225:7,10,13
225:16,17
**see**
16:13 19:6 24:11 40:2

42:4 46:5 48:11
51:12 58:11,15,16,17
58:24 59:4,7 62:5,8
62:13,16,17 79:9
87:7,9 93:12,14
105:18 107:10 109:6
109:9 130:16,20
132:4,5 136:4 146:1
146:4 147:2 154:6,18
155:9 164:10 171:10
180:5,16 193:10,10
193:11 194:12
199:18 202:13 206:7
206:12 208:16 214:5
214:6 215:5,13,14,17
216:9 222:24 223:7
224:1 226:15 247:1,3
250:10,11,16,20,25
255:18,23,24 267:21
283:18,21 284:1,8,12
285:15 286:11,12
290:2 294:6 299:3
301:17 302:15 303:6
303:7 305:3 306:5,10
307:10 309:7 314:3
314:14,21,22,25
315:4 318:21 321:13
327:14 330:6,9 343:6
343:8 344:14 345:24
345:25 346:9,24
347:1,3,4,5,9,14
348:22,23,24 349:4
350:8 352:7 369:16
**seeing**
129:20
**seek**
34:16,19 40:4,11
261:14 262:1
**seeking**
32:5 34:6,9,10 49:12
251:1 333:18
**seen**
56:12 92:9,11 137:4
158:20 241:6,7,22,23
241:24 282:5 300:6

**selling**
353:19
**send**
191:6 314:18
**sending**
204:4 306:6 308:9
309:9 343:20
**sends**
344:6,20 345:24
**senior**
21:12,15,21 26:11,13
55:18,23 62:23 63:5
89:3 203:4 223:15,17
225:18
**sense**
27:6 43:6,18 128:23
171:2 202:21
**sensible**
260:16 261:3,11
**sensitive**
29:22 30:18,24
**sent**
79:14,19 189:23,24
200:6 282:11 302:18
303:3 326:9
**sentence**
40:3 46:6 87:11,12
88:14,15,19 132:25
149:12 170:2 194:5
195:7,15 196:3
214:22 217:2 290:5
306:19 307:14 310:3
310:23 320:12
**sentences**
40:10 195:18
**separate**
69:10
**separation**
197:23
**September**
210:3 256:14,17 276:2
281:16 282:15,25
283:3,18 302:17
322:2 343:3,10,25
344:2,12 345:4

346:18 363:9,22
364:4,14,16 365:4
366:2,14,20
**series**
11:25,25 29:14 166:2
209:25 282:6
**serious**
125:23 127:8
**seriously**
126:2 194:25 272:4
**serve**
54:16
**served**
279:1
**session**
58:14
**sessions**
15:22
**set**
17:13 47:22 140:7
214:17 235:9 245:17
257:8 270:6 275:6
309:15 379:12
384:11,21
**setting**
66:17
**settled**
339:15 340:10,11
**settlement**
36:23 58:23 59:10,13
59:22 60:20 61:4
74:25
**settling**
372:22
**seven**
315:12
**seventh**
285:14
**shake**
9:3
**SHANKWEILER**
5:15
**shape**
366:21
**share**

94:23 187:23 216:16
257:13 278:15
308:17
**shared**
158:25 214:13
**SHEARMAN**
3:2
**sheet**
37:4 112:12 134:12,20
151:23 152:1 191:23
194:2 195:9,22,23
198:3 232:21,22
234:16,17 235:23
255:1 266:1 302:22
326:8
**SHELLEY**
3:23
**shooter**
129:6
**shooting**
352:13
**shorter**
69:14,21
**shorthand**
1:22 220:11 287:25
384:7
**shortly**
212:2,5 213:23,25
**show**
55:25 91:24 101:19
104:12 105:5 107:5
109:12 120:15 129:9
157:21 164:11
172:15 186:23 188:5
190:16 191:15
205:20 206:23
207:23 213:3,13
252:18 265:24
281:13 302:9 304:16
304:18 305:6 313:10
313:13 329:10
342:11,12
**showed**
14:23 190:14 222:15
**showing**

215:10
**shown**
104:25 319:19
**shows**
113:1 162:1 178:4
197:10 305:1 322:2
**SHRIVER**
2:2
**side**
2:8 123:10,11,12,17
123:18 146:17
151:25,25 162:13
183:1,12 184:14,25
185:1,16,22,22,23,24
186:18,25 187:4,8,19
187:23 188:20,20
189:5,25 196:20,20
197:11,12 210:9
235:10,10 240:16
241:8 361:7
**sides**
171:22 184:13
**sign**
130:21 241:15,17
242:2,5,23 243:17
244:1
**signed**
129:21,22,25 130:2,13
144:8 220:7 243:7
244:5
**significant**
26:7 42:16 44:15,17
44:20 56:18 66:4
93:19 94:13 96:4,16
97:8 118:12,22
123:25 151:4,5 185:8
203:20 206:16
212:16 240:23 291:8
291:9
**significantly**
56:21 167:13 235:12
**similar**
161:9
**simple**
191:6 239:19 243:15

**simpler**
287:14
**simply**
14:10 32:2 35:17
60:20 76:16 84:18
90:18 179:25 226:8
232:7,12 259:7
**Simpson**
349:10 351:11 380:6
**simultaneous**
146:6
**single**
199:10 362:23
**singular**
201:18
**sir**
8:5,17 10:2 11:14,19
12:5 13:6,9 14:1,5
16:4,11 20:6,10
21:19 22:11 23:12
24:1 29:7,8 31:11
33:17 35:4 36:2
37:24 39:20,24 42:1
44:7 45:19 46:11
47:13,15 51:12 53:21
55:5 57:25 58:1,9,10
58:15,24 61:1,5,11
62:3 64:8 65:12
73:23 81:9 87:1,2
99:23 102:24 109:9
109:10 129:23
130:22 132:5,19
133:4 139:23 153:14
172:11,24 178:22
184:23 192:23 193:1
193:4,21 194:19
195:25 216:7 223:12
231:2 233:12 250:21
265:22 266:12
267:14 268:20 271:4
277:13,15 280:11
298:16 313:23 314:4
315:13 319:17
320:19 321:12 322:4
330:14,14,23 332:10

341:7 343:5,12
345:22 346:6,20,25
361:11
**sit**
25:8 111:4,7 338:6
**situation**
71:2 84:11,13 94:3
**situations**
36:7
**sivan@kasowitz.com**
3:24
**six**
181:13 315:12
**Sixth**
6:4
**skip**
216:13
**skipped**
194:9
**sliced**
328:7
**slightly**
42:19 151:2,3 181:19
255:20 293:2
**small**
112:12,13 135:10
250:7
**smiling**
271:7
**soft**
208:9
**sole**
380:23 382:7
**solution**
19:21 72:13
**Solutions**
5:17 6:4 7:7
**solvency**
125:3 126:18 151:24
**solvent**
124:25 125:7,12,17
131:21 132:14 133:2
133:6,24 134:20
147:11 148:18 149:7
149:18,25 150:2,6

152:6,11,20 162:7,12
162:19 176:9,14
177:1 179:13 181:9
235:20 247:10,22
**somebody**
266:2 327:6
**somewhat**
203:20
**Sontchi**
44:22 57:18 58:5
65:11 386:13
**soon**
64:14 314:16 346:4
**sooner**
65:16,18
**sophisticated**
353:15,16 354:7
**sorry**
7:18 11:15 30:3 41:17
46:9 49:19 50:2 56:9
85:16 99:6 102:5
113:17 114:4 116:12
131:13 132:6 148:9
155:13 162:22
178:21 196:22
202:16 204:22
205:21 208:17 216:4
223:9,11 232:11
242:10,13 250:5
258:23 262:5 286:2
288:19 295:20
309:20 324:12
326:25 330:7 331:20
335:7 340:2,25
345:14 347:11
349:16,19 351:7,20
363:25 375:2
**sort**
62:5 119:6 153:5,7
293:10
**sought**
32:9,19 73:5 139:11
139:13 143:22
261:25
**sound**

339:22

**source**
127:18 164:9 170:8,9

**sources**
155:9,15 262:22
263:22

**speak**
15:23 19:15 32:18
51:15 78:24,25 85:7
110:25 114:13
194:17 285:5 314:13
314:16 318:25
319:10,11,15 320:7

**speaker**
159:3

**speaking**
6:3 16:24 56:8 121:15
219:17 311:5 347:8
356:18,19

**speaks**
33:2 41:15 42:7

**specific**
13:21,21 34:18 71:5
75:18 136:5 137:3
160:24 176:1 211:25
283:5 329:9 336:12
365:15 372:20
373:21

**specifically**
14:20,22 15:23 25:24
26:4 45:23 52:8
55:10 61:17 91:5
94:25 114:7 120:23
121:18 134:18 150:8
160:1 164:3 174:24
182:16 210:21
286:13 292:13
299:13 303:14 313:9
325:10 336:17,25
337:1,23 351:3
379:21

**specified**
90:16 163:12 183:22

**speculate**
324:6

**speculating**
236:14

**speculation**
202:7 236:14,19,20
237:4

**speed**
120:8

**spend**
8:8 140:5

**spent**
118:11,22 186:16

**split**
228:3

**split-up**
212:21

**spoke**
15:8,18 17:14 55:7
160:16 227:11 297:7
297:8 300:11 378:17

**spoken**
319:22 374:11

**sponsors**
179:10 193:23 197:20
222:7 299:3,8,13,19
299:24 301:24 314:9
314:11 324:2

**spook**
316:9

**spreadsheet**
102:19 108:1 112:7

**spreadsheets**
105:10,24 107:8,23
387:11

**spring**
78:7 104:2,3,4

**ss**
384:3

**staff**
121:24

**stage**
166:16

**stages**
166:15

**stakeholders**
195:13

**stakes**
72:25

**stalking-horse**
241:19 242:3,5,23
243:8,18 244:2,6

**stamp**
102:6,8 130:12 131:14
131:25 176:2 266:4
297:24 302:10
306:13 313:15 321:9
343:14

**stamped**
92:4,8 102:2 105:3
107:2,7 120:13
129:15 136:23
157:19 172:13
191:18 199:15
207:18 253:1 266:9
281:11,19 298:1
302:13 304:22
313:18 319:7 321:6
329:20 342:17
386:17,21 387:3,7,16
387:21 388:3,8,13,18
388:23 391:3,8,12,16
391:20 392:3,8,12,16
392:20 393:3

**stamping**
199:11

**stamps**
145:19 157:23 199:6
343:17

**stand**
59:18 60:2

**standard**
291:22 354:3

**standpoint**
26:16 28:19,24 34:3,5
78:4 86:2

**stands**
267:1 371:4

**stand-alone**
93:1 195:1

**Stanley**
114:18

**start**
27:10 108:6 138:22
200:4 217:25 283:15
321:23 351:20

**started**
138:21

**starting**
20:12 21:3 224:2
307:10

**state**
1:24 7:21 64:23 186:4
189:12 246:8 360:8
384:2,9

**stated**
19:22 28:20 44:11
52:10 60:20 67:14
137:9 181:7,9

**statement**
40:7,19 53:22 60:12
65:5,7 67:13 87:8,13
88:15 89:8 94:17,25
95:12,21 97:14 162:6
176:22 265:16
275:23 342:10

**statements**
61:11 206:14

**States**
1:2 6:13

**stating**
79:14 302:1

**statistics**
70:2

**status**
279:21 319:21

**stay**
114:6 162:3 164:14
246:15 247:5,12
356:19 358:1

**stayed**
118:7

**steadfastly**
197:21

**step**
78:1 144:23 166:23,23
180:11

**Stephen**
48:24 49:6 50:13
386:8
**steps**
138:7
**STERLING**
3:2
**Steve**
199:20
**stipulate**
83:7 167:13 177:7
380:12
**stipulated**
128:21
**stipulation**
11:23
**stop**
133:14 330:19
**stopped**
218:15 374:1
**straight**
44:1 114:6 129:6
**straightforward**
59:15,24
**strategic**
227:12,18
**strategy**
175:17 231:20 232:3
390:8
**strawman**
171:4,8
**Street**
1:21 3:9 4:8,12
**strike**
28:13 111:5 182:18
300:23
**strong**
120:4 189:9
**struck**
310:19 337:4
**structure**
24:19 44:4 146:5
149:23 160:14,20
174:1 175:18 187:5
194:23 239:9,12

**structured**
362:9
**structures**
39:1 238:9 239:10,18
**studied**
20:18
**stuff**
298:5 346:14
**subbullet**
148:18
**subject**
13:15 14:11 25:2
105:18,22 144:17
200:11 241:18
252:19 263:4 266:20
266:23 269:2 270:8
279:16 286:7
**subjects**
25:3 252:20 272:1
**submitted**
49:10 239:11
**Subscribed**
382:21 383:19
**substance**
14:3 51:14,16 111:14
206:14 261:13,23
357:6 368:4
**substantial**
51:21 53:25 56:19,22
70:17 173:24 221:12
**substantially**
23:7 220:17 256:5
**substantive**
148:14
**sub-bullets**
148:17
**successful**
178:16
**Successor**
5:3
**sufficient**
26:20 134:7 135:20
230:25 236:3 238:1
238:20 239:25
248:15

**suggest**
33:2 101:20 114:16
282:17
**suggesting**
162:2 164:23 275:19
293:13
**suggests**
319:1
**Suisse**
114:20
**sum**
155:17
**summary**
65:13 161:7 265:9
284:11 285:9 290:22
292:1 326:8
**summer**
113:14,24 121:14,15
121:25 122:12 269:5
273:19
**superior**
289:7
**superperemptory**
381:23
**superpriority**
41:1 66:23
**supplement**
159:14
**supplemental**
50:12
**supply**
66:22
**support**
49:2,11 53:18 59:10
184:11,19 185:13
186:20 196:19
210:12,15 211:4,12
211:18 220:7 286:9
372:14
**supportive**
172:1
**sure**
9:5 16:16 34:4 41:19
45:2 46:10,23 48:10
51:7,7 53:16 56:11

58:7 73:11,13 83:19
85:17 87:18 88:6
90:2 91:1,3 92:21
94:24 96:4,10 97:2
109:5 112:25 118:21
123:1,4,10 129:22,24
131:24 132:23
133:17,22 136:18
139:16 145:13
147:16 149:13
150:11,11 153:20
156:24 161:3 164:2,9
164:16 166:8 179:17
186:5 195:19 198:14
199:24 200:4 202:22
205:16 222:16
224:19 234:8 256:10
258:19 259:1 260:21
261:22 264:16
276:12 281:24,24,24
288:24 290:4,16
291:17 294:15,17
297:15 305:18
308:23 309:1 310:8
311:15 321:4 323:19
325:11 326:18
328:10,17 329:4,11
329:11 330:22 335:6
350:4 360:7 363:2
371:5 378:11
**surely**
53:11
**surmise**
122:6 316:4
**surprise**
278:18
**surprised**
240:10,13
**suspect**
29:20 42:25 158:14
177:14 262:14
**suspected**
297:13
**Swamy**
102:25

swear
7:8
sworn
7:11 143:4 382:21
383:19 384:12
synonymous
173:5

**T**

T
1:1 123:10,11 142:1
146:17 183:1 184:13
185:22 188:20
196:20 384:1,1 385:7
table
244:25
take
6:9 7:24 8:20,24 23:17
29:17 37:22 40:11
41:19 43:8 56:1
67:18 73:2 81:18
96:7 99:4,13 108:24
108:25 124:4,21
125:24 126:20
129:17 131:25 138:7
140:23 151:9 171:24
185:14 192:8 201:18
207:15 209:10
213:14 223:25
249:13 250:3 255:10
263:2 272:4 279:8
305:22 309:2 311:15
319:25 321:22
325:14 334:4 345:2
381:18
taken
16:22 18:2 48:19
57:12 81:25 87:25
126:1 180:1 192:18
209:18 218:20
222:22 224:12
231:12 250:1 254:15
263:12 325:22
355:24 389:14
390:23

takes
27:2,7
talk
9:12 13:7 114:19
121:21 151:23
192:20 204:22
230:12 242:19
350:16 351:7 367:6
talked
82:25 91:5 151:24
265:17 269:20
270:15 271:15,18
300:4
talking
114:24 143:9 193:5
211:6,7 287:22
316:18
talks
250:17
tape
81:18,21 82:2 141:3,4
142:4 209:10,15,20
263:7,8,14 325:13,18
325:24 382:13
tax
123:25 237:12 238:10
239:8
TC
211:10
TCEH
2:12 91:20 118:16
123:14,15 124:1
127:1 146:17 160:16
161:16,21 164:1,10
165:23 166:16,25
169:11,13 171:23
178:5,8,17 179:8
180:9 184:10,18,21
184:22 186:19 187:9
187:20 191:1 196:18
197:23 199:1,3 204:9
205:5,8,22 206:17,21
206:23 207:9 208:6
209:2 210:2,13
211:10 212:4,22,23

212:25 213:25
215:10,21 217:22
218:2 219:21 220:3
236:17 241:8 275:7
277:9 280:6,9,10,13
280:23 294:8,18
322:23 329:17
331:17 332:8 334:25
335:11,13 345:18
346:1 347:21 348:5
351:25 365:23 374:9
374:10
teacher
288:21
team
12:12 114:10 121:20
197:21 203:24 297:3
297:16 326:19 328:4
354:11 365:14
376:23 377:1,4
technical
32:13 120:4 225:23
311:7
technologically
266:3
teleconference
159:21 160:1
telephonic
18:22
telephonically
160:7
tell
13:10,17 14:19 30:3
39:19 46:7 58:8 59:8
60:19 63:14,17,20
77:7 105:11 125:22
132:2 152:16 155:8
158:22 160:20
162:10 176:6 177:24
186:9 189:13 196:3
204:17 207:13
214:11 223:6 240:19
251:5 255:13 275:6
287:13 291:16 301:6
303:14 331:25

348:16 355:4 357:23
366:11
telling
204:7 209:2 263:19
tells
70:7
ten
217:3 285:20
tenants
24:8
tenor
24:5 27:21 69:12,21
term
10:3 22:23 27:24 28:3
28:5,6 32:13 33:3
52:19 53:2,25 77:14
85:21 101:11 120:2,5
133:6 134:20 173:2
183:13 191:23 194:2
195:9,22,23 198:3
221:22,24 225:9
228:16 232:21,22
240:13,14 252:4
255:1 260:6 262:25
271:15 275:17
280:17 287:19,25
302:22 326:7 328:3
337:3 339:2 382:2
terminate
229:15,20,24
terminated
229:3,4,6
terms
23:16 24:4 26:24
27:15,20 45:18 52:14
52:20 56:7 57:3,4
66:15 70:25 76:19,24
84:20,21 103:15
156:12,14 216:14,23
217:11 220:15,15
251:23 259:21
270:25 271:2,17,18
271:22 278:22
282:21 283:16
284:11 285:10 288:9

290:23,25 302:23
303:15 304:13
323:12 326:8 328:11
360:21 379:13
**terribly**
171:25 176:24
**terrific**
380:6,9,13
**test**
134:6,12 226:15
**testified**
7:13 35:2 89:3 97:25
143:5 188:5 222:12
272:5 326:6 342:22
356:4 366:18 378:12
**testify**
9:19 11:18 12:10 83:9
259:13
**testifying**
63:24
**testimony**
20:2 61:24 62:21
63:14 65:10 91:2
99:22 109:1 140:9
189:1 224:20 239:2
249:15 251:18
296:15 300:24
303:19 305:19 314:8
360:2 366:17 384:13
**testing**
175:19 226:18 267:18
**tests**
134:8 300:9
**Texas**
20:15,19,20,21 88:12
201:17 329:15
**text**
130:9 206:8
**Thacher**
349:10 351:11 380:6
**thank**
7:5,20 42:1 46:1 50:21
97:4 105:1 179:2
208:19 209:7,12
264:17 277:3 325:15

329:12,22 340:13
370:5,6
**theory**
75:10,13 227:19
**thing**
9:10 27:6 63:25 108:1
129:19 193:6 197:8
198:5 208:22 209:3
211:5 237:19 297:11
**things**
9:2 86:14 104:17
126:21 136:8,14
184:7 192:9 196:17
214:20 221:15
292:14 326:4 377:18
**think**
8:14 22:24 25:4,8,15
27:14 29:6 36:3
37:21 39:15,16 42:9
43:21 46:14 50:8
52:7 57:20,24 74:12
77:19 79:23 80:22
81:17 82:24 85:21
86:12,21 89:2,19
90:8,21 93:25 94:1,1
94:4 95:6 97:25
99:15 100:25 101:20
104:3 109:19,25
111:4 112:18 114:11
116:6,15,20 120:3
122:19,19,20,22
129:3 131:5,7,7,10
132:9 136:11 137:9
137:22 138:21 143:8
143:19 160:19
164:11,12 166:7
167:12 169:20 171:3
171:18,23 172:10
173:3,6,25 188:12,16
188:19,25 189:13,20
189:25 194:8 196:16
199:2 202:3,24
205:21 207:16 210:4
210:20 220:1 230:5
234:12,17 240:15

244:8 247:21 248:24
249:11,14 252:11
253:10 254:22
264:22 269:11 270:2
270:13 271:6 278:18
280:21 281:14
286:17 288:23
289:12 291:11 292:5
296:3 298:9 306:4
317:1,7 318:5 319:2
320:2,6 321:14 324:9
326:6,20 328:8 332:1
336:7,9 338:9,11
339:11 356:3,14
358:24 360:7 361:8,9
362:3,5 365:19,21
366:5,18 367:10
368:18 369:9,24
377:5 379:22 380:11
**thinking**
111:11 204:18 241:1
290:19 323:15 361:5
365:11 366:10
**third**
118:1 135:3 174:15
198:5 206:13 216:19
237:25 238:19
239:23,23 267:20
**thought**
15:17 27:11 47:6 52:4
52:25 53:16 56:16
65:4 90:9,25 100:17
100:19,22 104:3
107:17 111:8 115:9
126:5 167:25 170:16
171:1 176:22 187:9
187:10 203:19 211:4
211:7,13 241:4
242:14 290:17 293:1
304:7 315:20 316:5
318:4 320:24 334:14
334:18,20 361:17
363:10 365:7,7,8
366:13
**thoughts**

36:8 171:11 314:2
**three**
102:4 116:17,18
117:17 128:10
145:23 176:3 207:24
208:2 240:2 255:13
256:13 306:14
**threefold**
116:16
**three-page**
102:16,18 199:5
**threw**
330:10
**throes**
205:3
**Thursday**
12:21 15:5
**time**
6:6 8:9,19 12:22 16:19
17:2 18:4 21:7 29:22
30:17,24,25 32:25
36:4,8 48:16,20
52:23 57:9,13 68:2,4
68:7 70:8 71:5 74:10
81:23 82:4 87:23
88:1 94:5,12,18 95:9
95:23,25 96:2 97:16
99:14,17,25 100:21
101:8 102:22 106:1,4
108:21 111:11
113:23 115:12
118:12,12,22 119:15
124:25 125:22 126:1
132:13 133:1 135:21
136:11 140:5 141:3,6
142:6,18 150:4
152:11 156:2 169:11
169:18 175:2 186:12
194:18 197:4,9,25
200:9 202:23 203:5
204:21,23 205:10
209:16,22 217:23
218:4,17,21 219:9,16
219:18 224:9,22,25
225:25 231:10,13

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 52

233:16,19 234:9
254:12,16 255:4,6
257:5 263:7,10,16
271:13 273:19
282:20 284:21
290:17,20 291:13,14
291:15 315:11,14
317:8,9 319:12
325:19 326:1 327:22
335:8 340:20,24
343:14,17,18 344:1
345:16 347:9 351:1
355:22,25 359:8
360:10 362:12 363:7
363:9,16 364:14
365:3 368:11,15
369:6 370:5 373:21
378:10 382:15,17
**timeline**
186:7,11 200:15
210:22 269:15
**times**
10:4 82:7 151:18
187:6
**time-sensitive**
29:19
**timing**
161:18
**title**
49:4 148:9
**titles**
106:19
**today**
6:5 7:25 10:16 12:1,19
14:16 16:3,6,25
18:14 20:1 21:18
25:8 59:12 92:9
111:4,7 125:22 138:6
174:19,20 284:23
338:6 366:11 368:19
368:22 369:19 370:5
**toggle**
194:15,18 195:8
**told**
15:17 27:5 116:7

135:14 152:1 186:18
209:8 233:5 244:8
266:2 270:17 298:4
303:25 309:15
323:14 328:8 332:2
360:7 377:19,24
378:2,15
**Tom**
231:18 232:1 390:5
**tonight**
347:6
**Tony**
125:6 128:13,14
201:10,12
**top**
63:23 93:11 102:12
146:5 215:15 291:13
**topic**
12:1 24:20 87:11
88:14 140:15 266:23
266:24 294:16
359:19
**topics**
11:18 12:4,10 20:3
24:14 25:9 122:5
140:16 266:19
**TORRES**
3:20
**total**
15:6 43:5 51:6 134:14
340:16
**totally**
84:7 249:10
**To's**
347:2
**TPG**
92:4,8 314:6,11
386:17
**trade**
1:20 3:9 6:8 173:22,24
**tranches**
106:21
**transaction**
24:11,13 36:17,19,21
38:4,14 74:23 146:2

153:12 161:8 194:21
197:6 222:6,8 225:2
232:23 236:1,23
237:24 238:18
239:22 241:1,4
323:22 374:23
375:13,14
**transactions**
26:3 146:7 323:17
**transcript**
13:5 57:16 58:3
222:21 249:25 250:9
386:11 389:12
390:21
**transcripts**
186:24
**translated**
37:18
**transpired**
268:10
**travel**
7:19
**treasurer**
21:13,15,21 26:14
44:3 56:6,6 78:4
85:6,8 311:6,20
**treasury**
21:11,23 67:1,2
102:22 109:21
113:19 114:9 376:23
377:1,4,20 378:17
**treatment**
203:13
**trial**
264:8,9 265:9
**trick**
51:16 243:14
**tried**
74:8 138:15 148:1
**triggering**
123:24
**true**
40:7,19 59:20 60:15
60:17 61:15 122:20
122:20 126:5 129:3

133:11 135:15,21
160:9 176:17 177:12
177:15 275:23 336:4
384:13
**truism**
189:13
**trust**
1:7 2:17 3:7,15 5:2 7:3
166:13
**trustee**
1:7 2:7,18 3:8,16 4:17
5:3 7:3 79:1,1 80:18
81:2,12 98:17 245:9
245:10 246:13
273:13 274:17 275:3
276:20 277:11
354:25 366:23
367:16 368:3
**trustee's**
13:1
**truthful**
109:1 139:11,13
143:23 249:11,16,18
**try**
9:13,15 51:10 63:19
63:19 107:4 116:8
136:13 219:4 313:12
319:3 361:12
**trying**
42:15 51:15 95:17
114:5 130:16,20
175:21 183:20
186:10,13 198:22
204:24 243:14,14
288:24 289:1 309:3
318:13,19,21 344:16
**turn**
39:18,19 45:21 49:15
50:17 58:2,5 62:1,2
86:25 87:5 112:6
130:1 131:21,24
145:17 147:16 153:6
155:7 162:7 176:2
177:16,24 178:20
194:2,9 195:22 206:8

207:12 214:4,9 216:1
223:2 250:6 255:11
283:20 306:13
329:23 330:3
**turned**
256:24 257:1
**two**
10:21 68:25 69:10
102:7 112:10,16
116:17 123:22
148:17 161:13
166:15 175:25 183:2
196:17 201:10,14
208:24 221:15
227:17 315:18
347:12
**TXU**
21:7
**type**
24:8 83:11,12 124:14
182:15 197:6 326:16
**typical**
287:19 288:18,25
**typically**
130:5

---

**U**

**U**
4:4
**ultimately**
24:13 84:8 119:12
123:14 184:18
187:22 220:5 237:17
244:5 257:5 290:24
300:3 301:17 323:24
325:3,4 350:9
**UMB**
2:7
**unable**
346:11
**unaccrued**
217:14
**uncertainty**
71:1
**uncommon**

279:13
**undergraduate**
20:14
**underlay**
146:22 235:6,7
**underlie**
240:19
**underlied**
235:7
**underlying**
139:16 144:16 353:2
**underscored**
44:8,21
**understand**
8:11,17 9:18 10:1,5
11:16 28:24 31:15
33:22 52:5 73:11
75:10 78:2 95:7,9
98:21 99:21 100:14
103:6 104:23 106:23
117:16 127:15,15
139:24 142:25
143:11 144:13 145:1
145:5 153:3 162:12
166:8 168:7,13 170:4
170:12 171:14 193:4
198:3 224:20 225:8,9
237:14 248:13 258:8
259:1,13 260:8,14
261:1 274:2 279:11
279:21,23 284:4
285:18,22,24 286:22
287:5 290:12 292:20
293:7 294:6,17 296:6
298:5 303:8 316:12
324:14,22,24 326:13
333:6 334:2,3 343:16
354:13 355:4 360:25
362:10 364:12
369:22
**understanding**
11:21 17:24 30:12,14
30:15 34:1 62:12
74:14 80:3,5 82:14
83:22 93:7 120:9

144:15 153:21
174:13 186:21,24
211:22 220:23
225:12 251:8 258:7
258:11,14 259:15
260:3,17 261:3
293:11,16,18 294:24
297:1 312:18,22
313:1 315:19 341:21
342:25 353:2,17
355:2 356:15,23
357:7 358:5,7,12
370:16 371:9 372:12
373:9,17 377:12,18
377:23
**understands**
84:19
**understood**
8:15 9:8,17 10:8,9
30:10 95:19 104:22
144:15 287:24 294:7
294:12 311:8 312:6
327:19 343:1 362:16
**undertake**
142:21
**underwriters**
127:3,21
**unenforceable**
359:16 360:17,23
361:5 362:4
**unfair**
249:3
**unfortunately**
207:17 291:16
**United**
1:2 6:12
**University**
20:15,19,20,21
**unlock**
89:17 90:17 95:14
96:3 97:18 185:7
**unlocked**
90:19 93:20 94:14
96:16 97:9
**unquestionably**

14:12
**unreasonably**
135:10
**unreliable**
25:9,15,18
**unsecured**
2:7,13 173:1 174:7
178:17 180:9,9
224:14,15 281:1
**unsecureds**
173:3 179:8,15 207:3
**unsolicited**
122:4
**uplift**
169:21
**upper**
193:9 223:10
**urging**
269:6,22
**use**
10:3 22:23 33:4 37:1
43:17 52:18 101:11
149:4,4 154:22
165:20 170:8 181:8
191:8 220:10 240:12
240:14 258:2 365:22
**uses**
155:9,14,15 162:1
255:19
**utilize**
155:23
**utilizing**
101:7 155:3,25 183:15

---

**V**

**v**
1:9
**vacuum**
84:12
**vaguely**
282:12
**VAILLANT**
2:4
**validity**
273:23

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

Page 54

**valuation**
224:5 226:4,9,12
235:5,13,15 240:24
241:7 270:19
**value**
40:6 54:5,12 64:23
65:16 89:17,23 90:17
90:19 93:19 94:13
95:14 96:4,16,20
97:8,18,23 98:3
134:13,23 149:24
152:3 185:8,15
188:13,19 189:10,11
189:21 204:12 228:6
228:8,9,17,20 230:2
235:6 240:17,23
241:2,8,10 243:19
248:15 251:14 339:6
375:5
**valued**
169:14
**values**
64:25
**variations**
164:3
**variety**
22:6 283:19
**various**
103:9 106:1,2,16
108:14 126:17 131:1
135:25 136:1 138:2,3
144:8 176:15 200:6
242:25 267:6,11,15
267:23 268:4 284:10
349:9 368:20 374:8
**VENABLE**
5:8
**venture**
283:6
**verbal**
9:9
**verbally**
283:7
**verbatim**
49:17 132:22

**verify**
297:12 328:15
**version**
50:7 158:19 189:2
208:9
**versus**
72:19 188:20
**vice**
21:12,15,21 26:13
231:20 232:3 390:7
**video**
6:2
**videographer**
5:17 6:1 7:5,14 16:18
16:23,24 48:15,20
57:8,13 81:19 82:1
87:21 88:1 141:1
142:3 209:12,19
218:17,21 231:8,13
233:15,19 254:11,16
263:5,13 325:15,23
355:20,25 368:11,15
370:8 382:11
**videotaped**
1:17 6:10
**view**
53:4 54:6 63:9,10
65:14,21,23 75:22
84:20 93:24 94:2,5
94:12,18,23 95:1,2
95:15,22 96:14 97:7
124:24 125:3,5,15,19
140:17 149:17
200:20 203:16 210:7
222:5,13 224:21
225:1,6,20,23 226:1
278:15 293:5 316:16
335:8,24 336:15
349:18 351:18,24
371:12,19 375:17
376:2,15,18,19,22
378:18
**views**
97:15 224:5
**violated**

9:11
**visual**
146:25
**voice**
91:19
**voided**
200:18
**voluntary**
85:20

---

**W**

**Wachtell**
4:11 193:22
**waiting**
101:7
**waits**
64:19,22
**waive**
78:18 79:3,10,16 83:3
84:2,23 85:9 356:7
359:14 360:15
**waiver**
73:7 356:12
**want**
8:19,20,24 12:20
16:12,24 19:9 28:15
30:12 34:1 51:9 56:1
63:13 67:17 75:11
83:7,20 90:3,4 91:25
92:1 95:15 96:6,6
99:13,16 104:14,15
104:23 112:25
133:16 140:5,14
143:20 149:3 153:20
166:8 177:8 186:21
189:2 190:6 196:18
204:8,10 206:23
207:20,21 213:1
224:19 237:21
238:14 239:15
241:13 259:25
261:22 265:5 276:11
276:12 285:13 304:2
304:9 306:18 311:23
313:7,13 323:11,11

323:23 327:4 329:10
352:25 353:14,20
357:5 364:13 369:23
372:3
**wanted**
56:22 91:2 96:4
149:12 171:24
185:25 189:4 244:3
295:3 297:11 305:6
312:7 326:3 372:23
**wants**
320:2
**Washington**
3:17
**wasn't**
35:13 38:23 69:8
90:25 92:16 95:1,1,2
95:8 104:4 105:15
126:19 132:21
148:23 153:22
169:24 201:8,25
205:15 291:1 297:15
297:15 328:19 329:1
331:9 348:17 358:2
**watch**
16:19 48:16 57:9
81:20 87:22 141:2
209:13 231:9 254:12
263:6 325:16 355:21
382:12
**waterfall**
225:15
**way**
19:8 37:6 42:22 49:14
74:1 84:9 90:1,5,9
110:15 118:2 120:10
136:17 137:9 145:23
153:8,19 156:4,16
168:18 170:1,20
180:13 199:12
206:17 208:19
237:22 238:16
239:20 256:15 259:6
269:7 271:23 280:18
280:20 289:18 309:2

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

312:12 315:9 325:1
327:7 328:18 348:11
360:8 362:8 366:21
384:18
**ways**
71:17,20 301:1
**weather**
7:19
**Wednesday**
12:21 15:5
**week**
12:21 15:5
**weeks**
213:6
**Weingart**
314:6 319:16,22 320:6
320:20,23 321:14
322:1,10 324:8
**welcome**
148:21 208:21
**went**
36:13 65:25 151:1
152:6 187:1,16
205:13 218:24
241:20 242:6 244:6
297:6 310:15,21
322:20 337:1 340:19
**weren't**
72:5 104:5 151:11
156:24 171:25
196:22 328:10,17
361:15
**West**
4:12
**we'll**
16:13 170:9 182:18,19
246:19 248:12
252:22 324:17,20
342:13
**we're**
16:20 17:2 18:5 48:17
57:10 59:11 74:24
81:24 82:5 87:23
95:4 107:25 110:17
136:7 141:6 142:7

150:12,16 155:22
162:8 170:5 180:16
182:25 183:2,7
186:19 187:19
188:21,24 190:7,7,10
190:18,19,21 192:2,4
192:13 209:17,23
211:6 218:18 219:15
231:10 233:16
254:13 263:11,17
276:1 279:11 310:16
310:22 311:1 317:9
317:10,14,15 318:6,7
325:20 326:2 328:4
328:21 345:18
352:12 355:22 356:1
357:25 368:12
382:16
**we've**
11:22 44:13 56:12
57:3 66:1 79:2
102:17 114:24 150:7
151:24 165:22 166:5
180:7,10,14 181:6
186:15 196:17
200:14 205:1 219:19
241:7 268:24 269:19
270:15 271:18 352:6
369:18 374:11
**WHEREOF**
384:20
**whichever**
126:25
**WHITE**
2:12
**wholes**
185:7,17 189:18 213:2
237:1
**wildly**
110:11 111:8
**willing**
18:7 79:3 188:14,21
188:24 189:3
**Wilmer**
3:7,15 6:25

**WilmerHale**
1:20 6:8
**wish**
298:12 383:2
**withdraw**
291:21
**withdrawn**
50:9
**withheld**
279:19
**witness**
4:2,7 6:23 7:8,10 17:6
19:7,11 20:5 24:20
30:14 85:2,7 86:19
138:7 140:22 142:20
192:8 233:10,12,23
234:12,20 275:19
280:1 304:18 357:16
359:20,21 370:6,9
383:2 384:11,14,20
**witnesses**
186:23 278:5
**wobbly**
110:21
**WOFFORD**
2:21
**won**
200:20 202:5
**word**
56:1 77:17 90:6
100:13 158:22 181:8
191:8 257:22 315:3,7
315:20 316:12,15,22
328:5,5 345:2 375:11
**words**
40:17 49:17 99:16
117:9 208:15 257:8
326:22 333:6 337:9
**work**
9:6 88:5 168:19
196:16 238:9
**worked**
11:22 21:9 102:21
103:4 109:21 184:15
351:2

**working**
21:8 24:7 55:19,21
94:20 118:25 204:22
**works**
47:17 91:16
**World**
1:20 3:9 6:8
**worries**
7:20
**worth**
188:20 189:14,15
**wouldn't**
32:1 42:25 43:11 68:8
87:15 96:25 110:18
113:9 126:4,8 128:13
128:25 135:18
149:14 168:8 170:23
176:13,20 186:6
198:10 290:15
311:23 345:8 361:9
**Wright**
5:14 12:13 15:11,13
267:10 284:16,19
285:5 291:4 295:19
295:23 302:17 303:4
304:15 305:10 308:9
309:8 310:24 343:10
349:9 350:18
**write**
148:21 149:1 379:24
381:1,4,7
**writes**
314:17 324:8 347:5,16
**writing**
86:24 203:11 269:21
327:8
**written**
17:25 289:24 298:24
312:12
**wrong**
50:3 124:22 158:22
160:20 189:14
240:18
**wrote**
290:3 301:19 303:5,23

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

316:21,24 320:1
321:14 322:1

## X

x
1:3,6,13 385:1,7

## Y

yeah
44:19 197:16 312:23
year
56:18 60:24 69:12,13
101:21,22 111:23
119:10 155:4 200:17
202:25 217:3,3
218:11,12 222:25
250:20 285:17,20
286:7,10,20 287:4,24
288:15 315:17
327:14 357:2
years
26:9 69:1 285:21,23
286:3,4 287:7,10
288:3 289:5,9 315:13
315:16 358:21
year's
156:1
yellow
208:10
yep
303:24
yesterday
12:22 15:6
yield
22:10,16,21 23:1,7,10
23:11 109:15 127:19
yields
66:18
Ying
61:24 62:15,21 63:13
63:24 188:5 222:11
223:14 267:17
Ying's
64:17 65:10 189:1
222:18,22,24 389:13

York
1:21,21,25 2:3,3,3,9,9
2:14,14,19,19 3:4,4
3:10,10,22,22 4:13
4:13,18,18 5:5,5,10
5:10 6:5,5,9,9 7:18
174:14 267:3 384:2,4
384:9
Yorker
63:18
Young
60:11
y'all
201:16
Y'alls
201:17

## Z

zero
169:18

## $

$1.9
221:2,8
$10
169:16,20
$13
40:16 42:5,24 44:14
52:11,23
$16.5
228:12 240:24 241:1
$18
244:24
$2
67:8 153:17 155:2
161:9 163:2,24 164:8
164:18 165:18
166:19 169:15 172:3
180:17 183:11 184:3
187:6,10,12
$2.18
276:6
$25
231:1
$33

113:17
$4
359:11 360:12
$42
23:3 26:6 38:24,25
88:23
$5.4
34:23
$7
237:12 238:10
$8
169:15

## 0

00002551
136:20,24 388:3
00002621
136:24 388:4
00002642
172:14,19 388:13
00002702
172:14 388:14
00003967
92:5,8 386:17
00005742
102:3,7 386:21
00007382
107:3,7 387:7
00036448
297:24 298:2 391:16
00037075
321:7,10 392:16
00038663
319:5,8 392:12
00038664
313:16,19 392:8
00038671
281:12,18 391:12
00047735
120:14,17 387:16
00047739
120:14 387:17
00053072
302:10,14 391:20
00053073

302:14 391:21
0006082
191:19,22 388:18
0006091
191:19 388:19
00080017
129:16 387:21
00080018
131:15
00080046
130:12
00084711
342:18 393:3
00084711-715
342:15
00087752
304:23,24 392:3
00087841
304:23 392:4
00139970
329:18,21 392:20
00275045
105:4 387:3
0027505
105:7
00305598
157:20,23 388:8
00305656
157:20 388:9
0051200
199:16 388:23
0051200-201
199:7
0051201
199:16 388:24
0084715
342:18 393:4
04
21:12
07
325:6
08
70:3
09
116:4

| | | | |
|---|---|---|---|
| **1** | 165:12 236:4,6,8 | **107.5** | **129** |
| **1** | **10004-1980** | 286:20 | 387:19 |
| 10:22 11:1,11 81:21 | 2:3 | **11** | **13** |
| 96:13 97:6 148:8,10 | **10007** | 1:4 47:22,22 51:24 | 47:2 51:22 90:21 |
| 155:16 161:19 | 3:10 | 88:22 93:19 94:13 | 120:20 125:11 |
| 166:16,17,17,23,24 | **10011811** | 107:20,21,25 332:22 | 129:13,14 139:8 |
| 176:4 181:11 197:18 | 252:23 253:2 391:3 | 385:10,14 387:9 | 271:9,10 387:19 |
| 213:4,12,21 219:17 | **10011832** | **11:02** | **1345** |
| 234:13,14 253:19 | 253:2 391:4 | 57:14 | 6:4 |
| 254:2 255:3 270:11 | **10016** | **11:26** | **136** |
| 271:11 385:10,10 | 2:9 | 81:23 | 388:1 |
| 386:19 387:5 389:8 | **10019** | **11:37** | **139** |
| **1st** | 4:13 | 82:4 | 62:2 |
| 124:20 165:16 180:8 | **10019-6799** | **11:43** | **14** |
| 182:6 205:2 219:8 | 3:22 | 87:23 | 64:4 107:17 108:3 |
| **1.9** | **10020** | **11:44** | 132:1,3 136:20,22 |
| 221:6 228:4 | 5:10 | 88:2 | 137:2 157:14 158:4 |
| **1:20 p.m** | **10022-6069** | **1155** | 162:17 166:10 |
| 142:2 | 3:4 | 2:13 | 250:20 387:19 388:1 |
| **1:22** | **10036** | **1177** | 388:21 |
| 142:6 | 4:18 | 4:17 5:4 | **14-10979(CSS)** |
| **1:52** | **10036-2714** | **12** | 1:5 6:15 |
| 322:2 | 5:5 | 15:7 64:5 120:12,16 | **14-50363(CSS)** |
| **10** | **10036-2787** | 120:17,21 121:13 | 6:16 |
| 12:1 13:20 15:7 37:8 | 2:14 | 224:2 344:1,2,12 | **14-503639(CSS)** |
| 37:23 38:20 41:6 | **10036-8704** | 387:14,14 388:11 | 1:9 |
| 52:21 58:18 68:14,17 | 2:19 | 391:18 | **14.4** |
| 69:12 70:23 71:19 | **10047582** | **12th** | 56:17 60:23 |
| 107:1,6,23 108:2,7 | 266:4,10 391:8 | 343:10 345:20 346:7,8 | **140140** |
| 112:2,8,16 117:4 | **10105** | 346:18 | 329:18,21 392:21 |
| 154:14 167:14 | 6:5 | **12:15** | **146** |
| 218:10,11 257:16 | **102** | 291:4,17 347:8 | 63:14,15 |
| 387:5,12 389:6 | 386:19 | **12:42** | **15** |
| 391:10 | **102.5** | 141:6 | 43:2 59:4 157:18,22 |
| **10th** | 286:21 | **12:42 p.m** | 157:24 162:3 166:10 |
| 17:1 | **103** | 141:8 | 166:14 171:17 172:7 |
| **10:07** | 330:4 | **120** | 172:9 206:2,4 214:1 |
| 346:18 | **104** | 387:14 | 215:6,22 217:20 |
| **10:29** | 168:22 | **1211** | 218:1 254:4 386:10 |
| 48:17 | **105** | 2:18 | 388:6 389:3 |
| **10:38** | 168:21 286:21 387:1 | **124** | **15th** |
| 48:21 | **106** | 58:5 59:5 246:11 | 215:17 |
| **10:47** | 168:22 | 247:1 | **157** |
| 57:10 | **107** | **1270** | 1:10 388:6 |
| **100** | 387:5,9 | 5:9 | **159** |

**1:10**
**16**
172:12,19,22 177:19
181:4 232:5 234:24
281:16 282:16 283:3
283:18 302:17 345:5
388:11 390:10 393:1
**16th**
284:15 344:8
**16.5**
228:12,19 235:16
**1633**
3:22
**17**
191:17,20 345:4
388:16,16 392:6
393:13
**17th**
302:18 303:24
**172**
45:21 46:5,19 388:11
**172.8**
60:24
**173**
56:17 64:6 250:19
**18**
129:10 199:5,14,21
200:8 205:1 235:17
235:19 243:18,20
388:6,21
**18th**
304:16
**180**
376:6
**1875**
3:17
**19**
159:18 160:3 162:18
164:18 171:15
205:24,25 206:3
215:21 389:1 392:18
**19th**
159:25 165:11 313:11
**191**
388:16

**199**
155:17 388:21

**2**

**2**
10:24 11:4 58:13 67:7
82:2 131:14 141:4
148:7,8,13 153:22
154:10 155:18 162:8
162:10,11 166:18,23
193:25 194:13 214:4
216:2,3,6 234:11
385:14 387:1 393:11
**2nd**
108:7
**2.18**
117:3
**2:37**
209:17
**2:54**
209:22
**20**
213:10,14 216:1 219:7
322:2 389:6,11
**20006**
3:17
**2003**
113:24 114:3
**2004**
21:16
**2007**
280:7,13 281:1 331:18
348:5,12
**2009**
119:2
**2010**
67:7,22 68:17 69:25
70:10,12 275:7 276:2
276:5 280:9,11 281:2
281:16 282:16 283:3
315:15 329:15 343:3
343:4 346:18 363:9
363:22 364:4,14,16
365:4,24 366:2,14,21
383:1

**2011**
102:23 103:21
**2012**
68:25 71:8,12,14 72:8
101:17 104:4,21
108:7,12 111:20
113:14 114:4,25
116:5 119:3,20 120:7
124:15 125:6,10,11
125:15 129:11
131:18 136:6 138:19
150:10,13 152:4
271:6
**2012/2013**
137:11
**2013**
69:25 70:13 71:8,13
71:15 72:9 93:6,8
94:8,9 95:11 96:8
101:18 104:4 114:23
114:25 118:13,24
120:17 121:14,15
122:12 124:18,19,20
125:6,16 135:24
136:7 137:5,15
143:14 150:13 152:5
152:20 159:18
161:19 162:18
164:18 165:11
166:17 170:15
171:15,17 172:7,18
174:22 176:15 177:1
177:19 180:7,8
181:10,11,11 182:6
184:10,17 185:4
192:22 196:15 198:6
199:21 200:8 204:3
205:5,18 206:2,5
208:18,20 210:4,5,11
213:4,12,21 214:1
215:6,17,23 217:20
218:1 219:8,18,20
253:15,19 254:2,4,24
255:3,8 262:15,15
265:21,24 266:17

**269:3,5,19 270:10,17
270:20 272:9,20
273:12,19 376:9
389:4,9
**2014**
1:14 6:6 29:7,8 57:17
58:4 66:11,16 67:5
67:17,23 68:1 73:4
73:15 74:19 75:6,25
78:7 94:9,10 96:13
96:13 97:6,6 165:16
166:17,24 222:19,23
226:2,8 232:5 234:24
236:2,22 249:23
250:2 271:11,12,23
341:6 357:2 376:8
382:22 383:20
384:22 386:12
389:14 390:10,24
**2015**
281:3
**205**
389:1
**21**
222:18,20 265:24
266:16 269:3 387:9
389:11 390:12 392:1
**21st**
268:11
**213**
389:6
**22**
62:6 231:16,23 232:9
233:23 234:23
235:12 241:15 245:1
386:6 388:1 390:1
**222**
389:11
**23**
246:20,21 390:1,12
**23rd**
222:19,23 389:14
**231**
390:1
**24**

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

192:22 249:22,24
390:20,20
**246**
390:12
**249**
390:20
**25**
252:23,25 253:4,9
254:20 389:1 391:1,1
391:14
**250**
1:20 3:9
**252**
391:1
**2554**
147:17,20
**26**
266:7,8 391:6
**2605**
145:22
**2606**
153:7,11
**2607**
155:8,21
**2621**
136:20
**264**
393:11
**266**
391:6
**27**
281:10,17,20 327:2
328:22 391:10
**2702**
172:19
**28**
160:4 271:12,23
297:23,25 298:21
391:14
**281**
391:10
**29**
29:7 73:4,15 94:10
172:18 174:22
176:15 177:1,18

236:2,22 249:23
250:2 302:9,12
390:23 391:18
**29th**
29:8 180:7
**297**
391:14

---

**3**

**3**
11:18,20 12:4 33:6,9
33:15 86:10,11,20
113:16 142:4 209:15
313:15 385:18
386:15
**3.07**
72:14 370:20 371:14
378:7,21 380:22
381:10,12 382:6
**3.125**
69:5
**3.95**
49:23
**3.985**
50:24
**3:05**
218:18
**3:07**
218:22
**3:21**
231:10
**3:24**
231:14
**3:26**
233:16
**3:27**
233:20
**3:52**
254:13
**3:56**
254:17
**30**
11:10 181:11 270:11
304:20,21 392:1
**30th**

184:16
**30(b)(1)**
10:24 11:5 359:21
385:15
**30(b)(6)**
1:17 10:23 11:2,15
20:4 24:14,20 30:13
85:2,6 138:6 139:3
140:16 278:4 359:19
360:1 385:11
**300**
4:3 393:13
**302**
391:18
**304**
392:1
**31**
96:13 97:6 313:17
392:6
**31st**
184:17
**313**
392:6
**319**
392:10
**32**
319:5,6,19 392:10
**321**
392:14
**325**
37:17 41:3
**329**
392:18
**33**
321:5,8 385:18 392:14
**34**
161:5,11,12 163:1
164:14 329:14,19
392:18
**342**
393:1
**35**
342:14,16 393:1
**370**
385:4

**374**
385:3
**38**
38:24 177:24
**39**
120:17

---

**4**

**4**
11:18,20 12:4 29:10
29:12 35:1,3 36:13
37:12 39:19,22,23
40:24 45:8,9 49:18
50:1,4,17 73:7 86:9
86:25 87:5 88:18,19
195:23,24 209:20
263:8 385:14 386:1
**4th**
160:4
**4,137**
216:16
**4.24**
37:22
**4.25**
37:20,22,22 41:5
257:16
**4.5**
217:4
**4:06**
263:10
**4:23**
263:16
**4:28**
303:24
**40**
167:16,16
**400**
167:15,18,19
**41st**
5:4
**42**
41:24 178:20,22,22
**425**
340:15
**45**

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**386:1**
**46**
250:12,24
**47**
250:6,7,8,24
**48**
38:25 41:21,22,23
223:2,4,7,10 250:21
386:6

───────── **5** ─────────

**5**
48:22 49:3 50:8,11,18
53:3 58:18 137:15
143:10 177:17 178:9
255:12 257:9 263:14
325:18 386:6 392:14
**5th**
137:5 138:18
**5.4**
36:9,12 41:2
**5:36**
325:20
**5:54**
326:1
**50th**
267:3
**500**
36:25 37:3,11
**5045**
105:7
**508**
154:14
**51**
4:12 154:17
**52nd**
4:12
**555**
4:8
**57**
386:10
**599**
3:3

───────── **6** ─────────

**6**
11:18,20 12:4 57:15
58:3 165:5 167:7,13
167:23 169:22
306:22 307:18 308:3
312:1 325:24 330:19
381:17,20 382:13
386:10 392:10
**6th**
57:17 58:4 62:21
329:15 386:12
**6-7/8**
37:13 68:21
**6.01(a)(6)**
330:18 331:2
**6.02**
330:3,6 331:16 334:7
378:24 380:20
381:10,23 382:5
**6.5**
109:14 110:4,15 111:8
111:15 112:3 113:3
**6.875**
70:24 111:21
**6:15**
291:18
**6:25**
355:22
**6:34**
356:1
**6:41**
343:10
**6:48**
368:12
**6:49**
368:16
**60654**
4:3
**6091**
191:23
**645**
176:3
**650**
340:18 341:4
**656**

157:23

───────── **7** ─────────

**7**
1:20 3:9 6:8 92:3,7
93:3 95:10 330:19,20
331:2 385:3 386:15
**7.01**
206:9
**7.5**
165:5 167:8 169:15,23
**7.7**
88:24
**7:02**
382:15
**7:02 p.m**
382:17
**7:41**
200:8
**700**
339:15
**7298**
199:9,17 388:24
**73**
302:11
**74**
33:7,11 49:5 50:14
385:21
**78**
45:25 46:3,11
**7841**
304:25
**795**
306:14 307:6 310:4,24
311:15

───────── **8** ─────────

**8**
11:19,20 12:4 49:16
49:19,20 50:4,18
62:15 101:25 102:1
218:12 234:11,11,11
234:13,15 386:19
391:6
**8-K**

172:6 182:7,14 206:1
206:4 212:23 213:6
213:11,17 214:2
215:22 217:21 218:2
220:3 253:19 254:3
255:3 389:2,7
**8-1/2**
107:17 108:3
**80**
153:7
**80090**
129:16 387:22
**801**
155:16
**82**
41:20
**820**
255:12
**832**
252:24
**84713**
344:14

───────── **9** ─────────

**9**
1:14 11:21,23 12:4
53:2,3 62:15 105:2,6
105:13 106:12 383:1
385:18 386:1 387:1
**9th**
6:6 17:1
**9:39**
1:15 6:7
**9:48**
16:20
**9:57**
17:2
**90**
2:8 376:6
**92**
386:15
**94104**
4:8
**96**
33:8,12 148:3 385:22

CONFIDENTIAL
ANTHONY R. HORTON - 12/9/2014

**99.1**
 207:17 214:18 215:2
  215:16,25 216:7
**99.2**
 207:10,13 208:3