# In The Matter Of:

*DELAWARE TRUST COMPANY*
*v.*
*ENERGY FUTURE HOLDINGS CORPORATION, et al.*

_____

## *PAUL KEGLEVIC - Vol. 1*
### *December 10, 2014*

_____

# *CONFIDENTIAL*

**MERRILL CORPORATION**

**LegaLink, Inc.**

1345 Avenue of the Americas
17th Floor
New York, NY 10105
Phone: 212.557.7400
Fax: 212.367.6178

C O N F I D E N T I A L

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
----------------------------------------x
In re:
ENERGY FUTURE                    Chapter 11
HOLDINGS CORPORATION,            Case No.
et al.,                          14-10979(CSS)

       Debtors.
----------------------------------------x
DELAWARE TRUST COMPANY, as
Indenture Trustee,

       Plaintiff,          Adversary Proceeding
                   No. 14-503639(CSS)
    v.                  Related to Docket
                 Nos. 157 and 159
HOLDING COMPANY LLC and
EFIH HOLDING COMPANY LLC
and EFIH FINANCE INC.,

       Defendants.
----------------------------------------x


         December 10, 2014

         9:36 a.m.


    Videotaped 30(b)(6) deposition of PAUL

KEGLEVIC, and PAUL KEGLEVIC individually, at

the offices of WilmerHale LLP, 7 World Trade

Center, 250 Greenwich Street, New York, New

York, before Gail F. Schorr, a Certified

Shorthand Reporter, Certified Realtime

Reporter and Notary Public within and for

the State of New York.

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    A P P E A R A N C E S:

 2    FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
      Attorneys for Fidelity
 3          One New York Plaza
            New York, New York 10004-1980
 4
      BY:   DANIEL VAILLANT, ESQ. (via phone)
 5          (daniel.vaillant@friedfrank.com)

 6

      FOLEY & LARDNER LLP
 7    Attorneys for UMB Bank as indenture               09:43:21
      trustee for the unsecured notes on the E
 8    side                                              09:43:23
            90 Park Avenue
 9          New York, New York 10016

10    BY:   REBECCA A. HAYES, ESQ.
            (rhayes@foley.com)
11

12    WHITE & CASE LLP
      Attorneys for the Ad Hoc Group of TCEH
13    Unsecured Noteholders
            1155 Avenue of the Americas
14          New York, New York 10036-2787

15    BY:   JASON BARTLETT, ESQ.
            (jason.bartlett@whitecase.com)
16

17    ROPES & GRAY LLP
      Attorneys for Delaware Trust Co., as
18    indenture trustee
            1211 Avenue of the Americas
19          New York, New York 10036-8704

20    BY:   ANDREW G. DEVORE, ESQ.
               -and-
21          KEITH H. WOFFORD, ESQ. (via phone)
            (andrew.devore@ropesgray.com)
22          (keith.wofford@ropesgray.com)

23

24

25
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    A P P E A R A N C E S (Continued):

 2    SHEARMAN & STERLING LLP                              09:43:39
      Attorneys for the EFIH first lien DIP
 3    agent                                                09:43:41
              599 Lexington Avenue
 4            New York, New York 10022-6069

 5    BY:    NED S. SCHODEK, ESQ.
             (ned.schodek@shearman.com)
 6

 7    WILMER CUTLER PICKERING HALE AND DORR LLP
      Attorneys for Delaware Trust Company as
 8    indenture trustee for the EFIH first lien
      notes
 9            7 World Trade Center
              250 Greenwich Street
10            New York, New York 10007

11    BY:    PHILIP D. ANKER, ESQ.
             (philip.anker@wilmerhale.com)
12
                    -AND-
13
      WILMER CUTLER PICKERING HALE AND DORR LLP
14    Attorneys for Delaware Trust Company as
      indenture trustee for the EFIH first lien
15    notes
              1875 Pennsylvania Avenue, N.W.
16            Washington, DC 20006

17    BY:    DAVID GRINGER, ESQ.
             (david.gringer@wilmerhale.com)
18

19    KASOWITZ BENSON TORRES & FRIEDMAN LLP
      Attorneys for the Ad Hoc Group of EFH
20    Corp. Noteholders
              1633 Broadway
21            New York, New York 10019-6799

22    BY:    SHELLEY IVAN, ESQ.
             (sivan@kasowitz.com)
23

24

25
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    A P P E A R A N C E S (Continued):

 2    KIRKLAND & ELLIS LLP
      Attorneys for the Debtors and the Witness
 3          655 Fifteenth Street, N.W.
            Washington, DC 20005
 4
      BY:   HOLLY TROGDON, ESQ.
 5          (holly.trogdon@kirkland.com)

 6              -AND-

 7    KIRKLAND & ELLIS LLP
      Attorneys for the Debtors and the Witness
 8          300 North LaSalle
            Chicago, Illinois 60654
 9
      BY:   RICHARD U S HOWELL, ESQ.
10          (richard.howell@kirkland.com)

11              -AND-

12    KIRKLAND & ELLIS LLP
      Attorneys for the Debtors and the Witness
13          555 California Street
            San Francisco, California 94104
14
      BY:   MICHAEL P. ESSER, ESQ.
15          (michael.esser@kirkland.com)

16
      WACHTELL LIPTON ROSEN & KATZ LLP
17    Attorneys for the EFH equity owners
            51 West 52nd Street
18          New York, New York 10019

19    BY:   ANGELA K. HERRING, ESQ. (via phone)
            (akherring@wlrk.com)
20

21

22

23

24

25
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    A P P E A R A N C E S (Continued):

 2    KRAMER LEVIN NAFTALIS & FRANKEL
      Attorneys for EFIH Second Lien Indenture
 3    Trustee
              1177 Avenue of the Americas
 4            New York, New York 10036

 5    BY:   GREGORY AARON HOROWITZ, ESQ.
                -and-
 6            ALISSA R. GOODMAN, ESQ. (via phone)
              (ghorowitz@kramerlevin.com)
 7            (agoodman@kramerlevin.com)

 8
      DRINKER BIDDLE & REATH LLP
 9    Attorneys for CSC Trust Company of
      Delaware as Successor Trustee for the
10    first lien notes issued by EFIH
              1177 Avenue of the Americas
11            41st Floor
              New York, New York, 10036-2714
12
      BY:   JAMES H. MILLAR, ESQ.
13            (james.millar@dbr.com)

14
      VENABLE LLP
15    Attorneys for PIMCO
              Rockefeller Center
16            1270 Avenue of the Americas
              New York, New York 10020
17
      BY:   JEFFREY S. SABIN, ESQ.
18            (jssabin@venable.com)

19
      ALSO PRESENT:
20
      ANDREW M. WRIGHT, ESQ.
21    EFH

22    MARK SHANKWEILER
      Capstone
23
      ROBERT GIBBS, Videographer
24    Merrill Legal Solutions

25
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 6

| | |
|---|---|
| 1 | THE VIDEOGRAPHER: Good morning, | 09:36:26 |
| 2 | everyone.  This is the video operator | 09:36:44 |
| 3 | speaking, Robert Gibbs of Merrill | 09:36:48 |
| 4 | Legal Solutions, 1345 Sixth Avenue, | 09:36:51 |
| 5 | New York City, New York 10105. | 09:36:54 |
| 6 | Today's December 10th, 2014 and the | 09:36:58 |
| 7 | time is 9:36 a.m.  We are at the | 09:37:00 |
| 8 | offices of WilmerHale, 7 World Trade | 09:37:04 |
| 9 | Center, New York City, New York, to | 09:37:07 |
| 10 | take the videotaped deposition of Mr. | 09:37:09 |
| 11 | Paul Keglevic, in the matter of In re | 09:37:11 |
| 12 | Energy Future Holdings Corp., et al., | 09:37:16 |
| 13 | case number 14-10979(CSS), adversary | 09:37:18 |
| 14 | proceedings number 14-50363(CSS), in | 09:37:27 |
| 15 | the United States Bankruptcy Court, | 09:37:34 |
| 16 | for the District of Delaware. | 09:37:35 |
| 17 | Will examiner and defense | 09:37:36 |
| 18 | counsel please introduce themselves | 09:37:39 |
| 19 | for the record.  All others will be | 09:37:40 |
| 20 | noted. | 09:37:42 |
| 21 | MR. ANKER:  Philip Anker, | 09:37:43 |
| 22 | Wilmer Cutler Pickering Hale and | 09:37:46 |
| 23 | Dorr, joined by my colleague David | 09:37:50 |
| 24 | Gringer, we represent Delaware | 09:37:53 |
| 25 | Trust Company as indenture trustee | 09:37:55 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | for the EFIH first lien notes due | 09:37:56 |
| 2 | 2020. | 09:38:00 |
| 3 | MR. HOWELL:  Rush Howell, | 09:38:01 |
| 4 | Kirkland & Ellis LLP, on behalf of | 09:38:02 |
| 5 | the debtors as well as the witness. | 09:38:05 |
| 6 | I'm joined here today by my | 09:38:07 |
| 7 | colleagues Mike Esser and Holly | 09:38:09 |
| 8 | Trogdon, as well as by Mr. Andy | 09:38:12 |
| 9 | Wright who's a representative of | 09:38:15 |
| 10 | the company. | 09:38:17 |
| 11 | THE VIDEOGRAPHER:  Thank you. | 09:38:18 |
| 12 | Will the court reporter, Gail | 09:38:18 |
| 13 | Schorr of Merrill Legal Solutions, | 09:38:19 |
| 14 | please swear the witness. | 09:38:21 |
| 15 | PAUL KEGLEVIC, | 09:38:21 |
| 16 | called as a witness, having been | 09:38:21 |
| 17 | first duly sworn by the Notary | 09:38:21 |
| 18 | Public (Gail F. Schorr), was | 09:38:21 |
| 19 | examined and testified as follows: | 09:38:30 |
| 20 | THE VIDEOGRAPHER:  You may | 09:38:30 |
| 21 | proceed, counsel. | 09:38:31 |
| 22 | EXAMINATION BY MR. ANKER: | 09:38:32 |
| 23 | Q.    Good morning, Mr. Keglevic. | 09:38:32 |
| 24 | A.    Good morning. | 09:38:34 |
| 25 | Q.    Let me start out by saying I'm | 09:38:34 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 8

| | | |
|---|---|---|
| 1 | notoriously bad at names and if I refer | 09:38:36 |
| 2 | to you today as Mr. Horton at any point | 09:38:39 |
| 3 | or butcher your name, please accept in | 09:38:41 |
| 4 | advance that it is purely accidental and | 09:38:45 |
| 5 | unintentional, but I'm really bad at | 09:38:48 |
| 6 | names. | 09:38:50 |
| 7 | You've obviously been deposed | 09:38:53 |
| 8 | several times before in these Chapter 11 | 09:38:55 |
| 9 | cases, correct? | 09:38:58 |
| 10 | A.    Correct. | 09:38:59 |
| 11 | Q.    So I'm not going to spend a | 09:38:59 |
| 12 | lot of time on groundrules.  Let me just | 09:39:02 |
| 13 | go over a few.  I'm sure you've heard | 09:39:05 |
| 14 | these before.  If at any point you do not | 09:39:07 |
| 15 | understand a question that I ask just let | 09:39:09 |
| 16 | me know and I'll rephrase it.  Otherwise, | 09:39:13 |
| 17 | if you answer, I'm going to assume you | 09:39:15 |
| 18 | understood the question and I think the | 09:39:18 |
| 19 | court will as well.  Okay? | 09:39:20 |
| 20 | A.    Okay. | 09:39:21 |
| 21 | Q.    Second, if you want to take a | 09:39:25 |
| 22 | break at any point just let me know.  If | 09:39:26 |
| 23 | there's a pending question I'll ask you | 09:39:28 |
| 24 | to answer it, but otherwise, we want you | 09:39:30 |
| 25 | to be comfortable at all times. | 09:39:32 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | And finally, this is an | 09:39:38 |
| 2 | unnatural process, we often communicate | 09:39:40 |
| 3 | in real life by shaking our head one way | 09:39:41 |
| 4 | or the other, but the court reporter, Ms. | 09:39:44 |
| 5 | Schorr, is going to appreciate getting | 09:39:46 |
| 6 | verbal responses and I said finally, but | 09:39:48 |
| 7 | let me say one other thing.  I will do my | 09:39:52 |
| 8 | best not to talk over you.  If you could | 09:39:54 |
| 9 | do your best not to talk over me and let | 09:39:56 |
| 10 | me complete my question and then I'll let | 09:39:59 |
| 11 | you complete your answer.  That all make | 09:40:00 |
| 12 | sense to you? | 09:40:08 |
| 13 | A.    Yes. | 09:40:08 |
| 14 | Q.    You're here testifying both in | 09:40:09 |
| 15 | your individual capacity and as a | 09:40:10 |
| 16 | corporate representative of the debtors; | 09:40:15 |
| 17 | is that right? | 09:40:17 |
| 18 | A.    That's my understanding. | 09:40:18 |
| 19 | Q.    And you're testifying pursuant | 09:40:24 |
| 20 | to deposition notices, correct? | 09:40:25 |
| 21 | A.    Yes. | 09:40:32 |
| 22 | MR. ANKER:  Let me mark as two | 09:40:33 |
| 23 | documents, see if you recognize | 09:40:34 |
| 24 | them.  The first is Keglevic | 09:40:36 |
| 25 | Exhibit 1, the second is Keglevic | 09:40:38 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Exhibit 2.  The first document is | 09:40:40 |
| 2 | entitled "Second amended notice of | 09:40:42 |
| 3 | deposition pursuant to Fed. R. Civ. | 09:40:45 |
| 4 | P. 30(b)(6), and Keglevic 2 is | 09:40:48 |
| 5 | amended notice of deposition | 09:40:51 |
| 6 | pursuant to Fed. R. Civ. P. | 09:40:52 |
| 7 | 30(b)(1). | 09:40:55 |
| 8 | (Keglevic Exhibit 1 for | 09:40:57 |
| 9 | identification, second amended | 09:40:43 |
| 10 | notice of deposition pursuant to | 09:40:44 |
| 11 | Fed. R. Civ. P. 30(b)(6).) | 09:40:46 |
| 12 | (Keglevic Exhibit 2 for | 09:40:46 |
| 13 | identification, amended notice of | 09:40:51 |
| 14 | deposition pursuant to Fed. R. Civ. | 09:40:52 |
| 15 | P. 30(b)(1).) | 09:40:55 |
| 16 | Q.    Mr. Keglevic, do you recognize | 09:41:04 |
| 17 | Exhibits 1 and 2? | 09:41:07 |
| 18 | A.    I think I've seen these, yes. | 09:41:11 |
| 19 | Q.    Exhibit 1 is the 30(b)(6) | 09:41:12 |
| 20 | deposition, that's where you're | 09:41:19 |
| 21 | testifying as a corporate representative. | 09:41:20 |
| 22 | And my understanding from communications | 09:41:22 |
| 23 | we've had with your counsel is that you | 09:41:24 |
| 24 | have been designated as the corporate | 09:41:28 |
| 25 | representative with respect to topic 5, | 09:41:30 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 11

```
1      the reasons for the filing of the Chapter        09:41:35

2      11 cases.  Is that your understanding as         09:41:38

3      well?                                            09:41:41

4           A.    My understanding was the first        09:41:41

5      sentence of topic 5, up to strategy,             09:41:44

6      before the including.                            09:41:49

7           Q.    Okay.  There is only one              09:41:50

8      sentence, but your understanding is              09:41:51

9      you've been designated as the corporate          09:41:55

10     representative with respect to, "the             09:41:56

11     reasons for the filing of the Chapter 11         09:42:02

12     cases, including the bankruptcy cases of         09:42:03

13     the EFIH debtors and the EFIH debtors'           09:42:07

14     bankruptcy planning and strategy," is            09:42:12

15     that right?                                      09:42:15

16          A.    Correct.                              09:42:15

17          Q.    And so you understand you're          09:42:15

18     not the corporate representative with            09:42:18

19     respect to, quote, "the refinancing and          09:42:19

20     repayment of principal and interest on           09:42:22

21     the EFIH 10 percent notes in connection          09:42:24

22     therewith," period end quote, correct?           09:42:27

23          A.    Correct.                              09:42:29

24          MR. HOWELL:  I'll note for the              09:42:31

25     record that that limitation is one               09:42:32
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | that was expressed in an objection | 09:42:33 |
| 2 | filed by the debtors in response to | 09:42:36 |
| 3 | the 30(b)(6) topics and is the | 09:42:37 |
| 4 | result of discussions between the | 09:42:39 |
| 5 | parties related to narrowing the | 09:42:40 |
| 6 | scope of the 30(b)(6) topics. | 09:42:43 |
| 7 | Q.    Do you understand that the | 09:42:44 |
| 8 | debtors designated a 30(b)(6) | 09:42:48 |
| 9 | representative with respect to the topic | 09:42:49 |
| 10 | of the refinancing and repayment of | 09:42:52 |
| 11 | principal and interest on the EFIH 10 | 09:42:54 |
| 12 | percent notes in connection with the | 09:42:57 |
| 13 | Chapter 11 cases? | 09:42:59 |
| 14 | A.    Yes. | 09:43:00 |
| 15 | Q.    And who was that, sir? | 09:43:01 |
| 16 | A.    Mr. Horton. | 09:43:02 |
| 17 | Q.    Okay.  Mr. Horton was also | 09:43:04 |
| 18 | designated I believe as the 30(b)(6) | 09:43:07 |
| 19 | witness with respect to topics 2, 3, 4, 6 | 09:43:10 |
| 20 | and 8.  Is that your understanding as | 09:43:22 |
| 21 | well, sir? | 09:43:27 |
| 22 | MR. HOWELL:  Object to | 09:43:28 |
| 23 | foundation. | 09:43:29 |
| 24 | A.    I don't -- I just know my | 09:43:29 |
| 25 | piece.  I'm not sure who had the other | 09:43:31 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 13

| | | |
|---|---|---|
| 1 | pieces. | 09:43:33 |
| 2 | Q.    That's fine.  Let me represent | 09:43:33 |
| 3 | to you that Mr. Horton was designated as | 09:43:35 |
| 4 | to those topics and Mr. Moldovan was | 09:43:38 |
| 5 | designated as the 30(b)(6) witness of the | 09:43:42 |
| 6 | debtors with respect to topic number 1 | 09:43:47 |
| 7 | and 2. | 09:43:54 |
| 8 | MR. HOWELL:  And Mr. Horton | 09:43:56 |
| 9 | was not designated with respect to | 09:43:57 |
| 10 | topic 2. | 09:43:58 |
| 11 | MR. ANKER:  I apologize.  I | 09:43:59 |
| 12 | stand corrected. | 09:44:01 |
| 13 | Q.    Is it -- I would make the | 09:44:02 |
| 14 | assumption, and I want to make sure my | 09:44:05 |
| 15 | assumption is right, that the debtors | 09:44:07 |
| 16 | designated as their 30(b)(6) witness with | 09:44:10 |
| 17 | respect to each topic the witness who had | 09:44:13 |
| 18 | the most knowledge on that topic, is that | 09:44:15 |
| 19 | a reasonable assumption? | 09:44:19 |
| 20 | MR. HOWELL:  Object to | 09:44:20 |
| 21 | foundation. | 09:44:21 |
| 22 | Q.    Is it true, to your knowledge? | 09:44:21 |
| 23 | A.    I was not involved in the | 09:44:22 |
| 24 | assignment of those topics, so I don't | 09:44:25 |
| 25 | have a point of view on whether that's | 09:44:27 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | true or not. | 09:44:29 |
| 2 | Q.    Do you have any reason to | 09:44:29 |
| 3 | believe that Mr. Moldovan was not able to | 09:44:32 |
| 4 | give me complete and accurate testimony | 09:44:35 |
| 5 | stating the company's knowledge of facts | 09:44:40 |
| 6 | relevant to the topics for which he was | 09:44:43 |
| 7 | designated? | 09:44:45 |
| 8 | A.    I'm sure Mr. Moldovan gave you | 09:44:46 |
| 9 | facts based on the questions you asked to | 09:44:49 |
| 10 | the best of his knowledge. | 09:44:51 |
| 11 | Q.    And to the best of the | 09:44:53 |
| 12 | company's knowledge since he was | 09:44:54 |
| 13 | testifying as a company representative? | 09:44:55 |
| 14 | A.    Once again, I was not | 09:44:56 |
| 15 | responsible for the assignment or the | 09:44:58 |
| 16 | undertakings of a 30(b)(6) witness with | 09:45:01 |
| 17 | respect to the topics. | 09:45:03 |
| 18 | Q.    Do you have any reason to | 09:45:04 |
| 19 | believe that Mr. Horton was unable to | 09:45:06 |
| 20 | give me or did not give me complete and | 09:45:10 |
| 21 | full testimony for the company on the | 09:45:13 |
| 22 | topics on which he was designated as the | 09:45:16 |
| 23 | 30(b)(6) representative? | 09:45:20 |
| 24 | A.    Once again, I wasn't involved | 09:45:21 |
| 25 | in those topics, but I'm sure he answered | 09:45:22 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | all the questions that you asked to the | 09:45:24 |
| 2 | best of his knowledge and that he did the | 09:45:26 |
| 3 | appropriate reviews consistent with his | 09:45:28 |
| 4 | responsibilities. | 09:45:32 |
| 5 | Q.    Okay.  He was designated to | 09:45:32 |
| 6 | testify not only with respect to his | 09:45:34 |
| 7 | knowledge, but the company's knowledge. | 09:45:36 |
| 8 | Do you have any reason to believe that he | 09:45:38 |
| 9 | did not convey the company's knowledge of | 09:45:40 |
| 10 | facts responsive to the questions I asked | 09:45:43 |
| 11 | on the topics on which he was designated? | 09:45:45 |
| 12 | A.    I wasn't here when you deposed | 09:45:47 |
| 13 | Mr. Horton, so I don't know what you | 09:45:50 |
| 14 | asked, and I assume he did what he was | 09:45:51 |
| 15 | instructed to do. | 09:45:55 |
| 16 | Q.    As you sit here today, if this | 09:45:56 |
| 17 | matter goes to trial, do you plan to | 09:46:03 |
| 18 | offer testimony with respect to any | 09:46:05 |
| 19 | matters other than those covered by the | 09:46:09 |
| 20 | part of topic 5 you have identified as to | 09:46:11 |
| 21 | which you are the debtors' corporate | 09:46:15 |
| 22 | representative? | 09:46:18 |
| 23 | MR. HOWELL:  Object to | 09:46:19 |
| 24 | foundation. | 09:46:20 |
| 25 | A.    I don't have any knowledge of | 09:46:21 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | what our trial strategy may or may not | 09:46:22 |
| 2 | be. | 09:46:24 |
| 3 | Q. Why don't you take a quick | 09:46:24 |
| 4 | look at the other topics, if you will for | 09:46:30 |
| 5 | me, starting with topic 1 and just tell | 09:46:32 |
| 6 | me if you think you have knowledge of | 09:46:35 |
| 7 | facts relevant to topic number 1? | 09:46:37 |
| 8 | A. Which document? | 09:46:42 |
| 9 | Q. I'm sorry, it's the first | 09:46:44 |
| 10 | document, Exhibit 1. And topic 1 is on | 09:46:45 |
| 11 | page 11, Mr. Keglevic, starts on page 11. | 09:46:48 |
| 12 | A. I'm sorry, can you restate | 09:46:59 |
| 13 | your question now that I'm in the right | 09:47:00 |
| 14 | spot. | 09:47:03 |
| 15 | Q. Sure. I need to know what I | 09:47:03 |
| 16 | need to question you about today. So I'm | 09:47:05 |
| 17 | simply asking you whether you believe you | 09:47:08 |
| 18 | have knowledge of facts relevant to topic | 09:47:10 |
| 19 | number 1? | 09:47:12 |
| 20 | A. That's a very broad question. | 09:47:13 |
| 21 | You want to get more specific on | 09:47:16 |
| 22 | knowledge. I certainly, for example, am | 09:47:18 |
| 23 | aware that we have a 10 percent | 09:47:23 |
| 24 | indenture, so I have knowledge that it | 09:47:25 |
| 25 | exists. But you're going to have to be | 09:47:27 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 17

| | | |
|---|---|---|
| 1 | more specific if you want to drill down | 09:47:30 |
| 2 | into something that -- | 09:47:32 |
| 3 | Q.    Sure.  Were you involved in | 09:47:33 |
| 4 | the drafting of that indenture? | 09:47:36 |
| 5 | A.    No. | 09:47:38 |
| 6 | Q.    Were you involved in the | 09:47:38 |
| 7 | negotiation to the extent there was a | 09:47:39 |
| 8 | negotiation of that indenture? | 09:47:41 |
| 9 | A.    No. | 09:47:43 |
| 10 | Q.    Were you involved in the | 09:47:43 |
| 11 | development of terms for that indenture? | 09:47:48 |
| 12 | A.    No. | 09:47:50 |
| 13 | Q.    Would you give me -- as I | 09:47:50 |
| 14 | understand it, there are two indentures | 09:47:52 |
| 15 | for EFIH first lien notes, there's a 10 | 09:47:54 |
| 16 | percent notes and I believe there's 6.875 | 09:47:58 |
| 17 | notes.  Were you involved in the drafting | 09:48:01 |
| 18 | of the indenture for the 6.875 notes? | 09:48:03 |
| 19 | A.    No. | 09:48:05 |
| 20 | Q.    Were you involved in the | 09:48:05 |
| 21 | negotiation of the terms for the 6.875 | 09:48:06 |
| 22 | notes? | 09:48:09 |
| 23 | A.    No. | 09:48:09 |
| 24 | Q.    Were you involved in the | 09:48:10 |
| 25 | development of terms for the 6.875 notes? | 09:48:11 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | A.    No. | 09:48:14 |
| 2 | Q.    Okay.  Let's move to topic | 09:48:15 |
| 3 | number 2.  This topic, as you will see, | 09:48:20 |
| 4 | Mr. Keglevic, is also broad, but it | 09:48:27 |
| 5 | involves sort of the meaning of certain | 09:48:29 |
| 6 | provisions in the indenture.  Since you | 09:48:31 |
| 7 | just told me you weren't involved in the | 09:48:34 |
| 8 | drafting or negotiating of those terms, | 09:48:35 |
| 9 | of the indenture as a whole, I take it | 09:48:38 |
| 10 | you were not involved in the negotiation | 09:48:40 |
| 11 | or the drafting or the development of the | 09:48:41 |
| 12 | terms set forth in sections 3.07 (a)(c) | 09:48:44 |
| 13 | 1.01 or section 6.02 of the indenture? | 09:48:51 |
| 14 | A.    That's correct. | 09:48:54 |
| 15 | Q.    Okay.  Let's look at topic 3. | 09:48:55 |
| 16 | I think you were involved in the | 09:49:04 |
| 17 | development of the first lien DIP | 09:49:06 |
| 18 | facility and aspect of the first lien | 09:49:08 |
| 19 | settlement, right? | 09:49:10 |
| 20 | A.    You have to be more specific | 09:49:11 |
| 21 | when you say I was involved. | 09:49:15 |
| 22 | Q.    Okay.  You know what, I'll | 09:49:16 |
| 23 | take that one by asking specific | 09:49:18 |
| 24 | questions when we get to the subject. | 09:49:19 |
| 25 | Topic 4, the RSA, the | 09:49:21 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | restructuring support agreement, you had | 09:49:24 |
| 2 | some role in that, did you not, sir? | 09:49:26 |
| 3 | A.    Yes, I did. | 09:49:28 |
| 4 | Q.    We've already talked about | 09:49:29 |
| 5 | topic 5.  Let's talk about topic 6.  Do | 09:49:31 |
| 6 | you have any knowledge of any facts | 09:49:42 |
| 7 | relevant to whether there was any | 09:49:43 |
| 8 | consideration and if there was, what it | 09:49:46 |
| 9 | was for alternatives for a Chapter 11 | 09:49:48 |
| 10 | case for the EFIH debtors, including any | 09:49:51 |
| 11 | possible out-of-court restructuring? | 09:49:54 |
| 12 | A.    Yes. | 09:49:57 |
| 13 | Q.    Okay.  Let's skip topic 7 for | 09:49:57 |
| 14 | a moment.  Do you have any knowledge of | 09:50:13 |
| 15 | facts relating to topic 8, a valuation | 09:50:16 |
| 16 | for the debtors or any reorganized | 09:50:19 |
| 17 | debtors, including EFIH and the | 09:50:23 |
| 18 | consideration of the debtors' ability to | 09:50:28 |
| 19 | pay the applicable premium to the EFIH | 09:50:29 |
| 20 | first lienholders were the debt | 09:50:33 |
| 21 | reinstated? | 09:50:38 |
| 22 |         MR. HOWELL:  Object to form. | 09:50:38 |
| 23 | A.    I don't recall that there was | 09:50:40 |
| 24 | any valuation done with respect to that | 09:50:44 |
| 25 | determination. | 09:50:46 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Q. Okay. And in fact, I'm going | 09:50:46 |
| 2 | to ask you this later, but let me since | 09:50:49 |
| 3 | it came up now ask you right now. I | 09:50:51 |
| 4 | believe we have elicited testimony in | 09:50:56 |
| 5 | this adversary proceeding that the | 09:50:58 |
| 6 | debtors at no point up until the petition | 09:51:00 |
| 7 | date for the bankruptcy did a formal | 09:51:04 |
| 8 | valuation of EFIH, correct? | 09:51:07 |
| 9 | MR. HOWELL: Object to form. | 09:51:12 |
| 10 | A. I don't think we did a formal | 09:51:13 |
| 11 | valuation of EFIH. | 09:51:21 |
| 12 | Q. Okay. Did you do a formal | 09:51:23 |
| 13 | valuation of other debtors or the debtors | 09:51:25 |
| 14 | collectively? | 09:51:28 |
| 15 | A. There were valuations done in | 09:51:30 |
| 16 | connection with goodwill impairment test | 09:51:33 |
| 17 | and stock up, and I don't recall through, | 09:51:36 |
| 18 | but certainly in I think beginning in | 09:51:40 |
| 19 | 2008, with respect to the value of Oncor. | 09:51:44 |
| 20 | Q. Am I right that Dun | 09:51:50 |
| 21 | & Bradstreet prepared those values? | 09:51:53 |
| 22 | A. No. | 09:51:55 |
| 23 | Q. Who prepared them? | 09:51:55 |
| 24 | A. Duff & Phelps. | 09:51:56 |
| 25 | Q. I'm sorry, it's early in the | 09:51:57 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | morning and I haven't had enough coffee. | 09:51:59 |
| 2 | It would of course be Duff & Phelps, not | 09:52:01 |
| 3 | Dun & Bradstreet. | 09:52:03 |
| 4 | Those were prepared for tax | 09:52:05 |
| 5 | and accounting purposes, right? | 09:52:06 |
| 6 | A.    Well, and for stock valuation | 09:52:08 |
| 7 | purposes. | 09:52:10 |
| 8 | Q.    Okay.  And they were | 09:52:10 |
| 9 | valuations of Oncor, correct? | 09:52:12 |
| 10 | A.    And TCEH.  So it was really of | 09:52:14 |
| 11 | the EFH family, but they looked at Oncor | 09:52:20 |
| 12 | and then they looked at the TCEH side. | 09:52:22 |
| 13 | Q.    Okay. | 09:52:25 |
| 14 | A.    But never specifically I don't | 09:52:25 |
| 15 | think at the box called EFIH. | 09:52:26 |
| 16 | Q.    Okay.  Topic number 9 is | 09:52:32 |
| 17 | basically a topic relating to the | 09:52:34 |
| 18 | calculation of what make whole and other | 09:52:36 |
| 19 | amounts might be owed to the EFIH first | 09:52:41 |
| 20 | lienholders were we to prevail in this | 09:52:43 |
| 21 | litigation.  Are you aware of any fact | 09:52:45 |
| 22 | relevant to that topic? | 09:52:48 |
| 23 | A.    I know generally what the | 09:52:52 |
| 24 | outcome of the calculations were, not the | 09:52:53 |
| 25 | components or the -- | 09:52:55 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 22

| | | |
|---|---|---|
| 1 | Q.    Tell me, tell me what you | 09:52:56 |
| 2 | recall the outcomes of the calculation | 09:52:59 |
| 3 | were? | 09:53:01 |
| 4 | A.    I recall seeing something that | 09:53:01 |
| 5 | at this point in time, what the amount | 09:53:03 |
| 6 | owed was if we had to pay being roughly | 09:53:05 |
| 7 | $400 million. | 09:53:11 |
| 8 | Q.    When you say at this point in | 09:53:12 |
| 9 | time, at what point in time? | 09:53:14 |
| 10 | A.    Currently. | 09:53:15 |
| 11 | Q.    Currently today.  And is that | 09:53:16 |
| 12 | -- that is a number that reflects what | 09:53:20 |
| 13 | would have to be paid to those EFIH first | 09:53:22 |
| 14 | lien noteholders who did not settle, | 09:53:27 |
| 15 | correct? | 09:53:30 |
| 16 | A.    Correct. | 09:53:30 |
| 17 | MR. HOWELL:  Object to form. | 09:53:31 |
| 18 | Q.    So had all the first lien | 09:53:32 |
| 19 | noteholders not settled the number would | 09:53:34 |
| 20 | be larger, correct? | 09:53:37 |
| 21 | A.    Yes.  Because we already paid | 09:53:38 |
| 22 | the settling noteholders. | 09:53:42 |
| 23 | Q.    Right.  And a majority of | 09:53:46 |
| 24 | noteholders, first lien noteholders in | 09:53:48 |
| 25 | dollar amount have not settled, correct? | 09:53:52 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 23

1        A.    I think the number that have          09:53:54

2   settled is about 44 percent, so that            09:53:56

3   would make the slight majority have not.        09:53:58

4        Q.    Okay.  What did you do to             09:53:59

5   prepare for your deposition today?              09:54:06

6        A.    I met with my counsel and --         09:54:11

7   in the -- in one -- in two separate             09:54:17

8   meetings.  In one of the meetings Mr.           09:54:20

9   Moldovan and Mr. Horton sat in.  In the         09:54:22

10  other one they did not.                         09:54:24

11       Q.    So you had two meetings with         09:54:25

12  counsel, if I understand correctly, at          09:54:29

13  one of which Mr. Moldovan and Mr. Horton        09:54:31

14  sat in and at the other neither sat in,         09:54:33

15  correct?                                        09:54:36

16       A.    Correct.                             09:54:37

17       Q.    Did you speak to Mr. Moldovan        09:54:40

18  or Mr. Horton in preparation for your           09:54:42

19  deposition outside the presence of              09:54:43

20  counsel?                                        09:54:46

21       A.    No.                                  09:54:46

22       Q.    Did you speak to any nonlawyer       09:54:47

23  in preparation for your deposition              09:54:50

24  outside the presence of counsel?                09:54:52

25       A.    No.                                  09:54:54

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 24

| | | |
|---|---|---|
| 1 | Q.    You're aware, I assume -- let | 09:54:56 |
| 2 | me ask the question.  Are you aware that | 09:55:01 |
| 3 | Mr. Moldovan and Mr. Horton have now been | 09:55:03 |
| 4 | deposed in this adversary proceeding? | 09:55:05 |
| 5 | A.    Yes. | 09:55:07 |
| 6 | Q.    Have you spoken with either of | 09:55:08 |
| 7 | them about their depositions? | 09:55:10 |
| 8 | A.    Mr. Moldovan had been deposed | 09:55:12 |
| 9 | when he sat in the meeting, so he might | 09:55:15 |
| 10 | have made a comment or two that, yes, I | 09:55:17 |
| 11 | got asked that question, something to | 09:55:21 |
| 12 | that effect. | 09:55:22 |
| 13 | I've not spoken to Mr. Horton | 09:55:23 |
| 14 | since his deposition. | 09:55:25 |
| 15 | Q.    Can you recall, other than | 09:55:26 |
| 16 | what you just told me, anything that Mr. | 09:55:28 |
| 17 | Moldovan told you about his deposition? | 09:55:31 |
| 18 | A.    No, other than it was thorough | 09:55:34 |
| 19 | and lengthy. | 09:55:37 |
| 20 | Q.    I'll take the thorough part as | 09:55:38 |
| 21 | a compliment and lengthy as a critique | 09:55:41 |
| 22 | which I will try to correct today. | 09:55:44 |
| 23 | A.    I did not intend either, just | 09:55:46 |
| 24 | stating the facts. | 09:55:49 |
| 25 | Q.    Touché.  Did you take any | 09:55:49 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | notes during your meeting, either of your | 09:55:57 |
| 2 | meetings in preparation for your | 09:56:02 |
| 3 | deposition? | 09:56:04 |
| 4 | A.    I did not. | 09:56:04 |
| 5 | Q.    Did you review any documents | 09:56:05 |
| 6 | in preparation for your deposition? | 09:56:11 |
| 7 | A.    I was handed some emails that | 09:56:16 |
| 8 | were -- my understanding is that were | 09:56:18 |
| 9 | part of materials that have been | 09:56:20 |
| 10 | discovered. | 09:56:22 |
| 11 | Q.    Do you -- can you identify for | 09:56:22 |
| 12 | me any of those emails? | 09:56:24 |
| 13 | A.    No. | 09:56:26 |
| 14 | Q.    Okay.  How long were each of | 09:56:30 |
| 15 | the meetings? | 09:56:33 |
| 16 | A.    I would say the first meeting | 09:56:34 |
| 17 | was probably, there were a lot of | 09:56:39 |
| 18 | interruptions, so it wasn't -- that's | 09:56:49 |
| 19 | what's taking me a little time.  Maybe in | 09:56:51 |
| 20 | total an hour and a half, two hours. | 09:56:54 |
| 21 | Q.    Okay. | 09:56:57 |
| 22 | A.    And the second meeting was | 09:56:57 |
| 23 | less than an hour. | 09:56:59 |
| 24 | Q.    And which one did Mr. Horton | 09:56:59 |
| 25 | and Mr. Moldovan attend? | 09:57:01 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 26

```
 1          A.     The longer one.                        09:57:04

 2          Q.     The longer one, okay.  And             09:57:05

 3   when was the second one?                             09:57:07

 4          A.     Yesterday.                             09:57:08

 5          Q.     In the evening after the               09:57:10

 6   deposition with Mr. Horton or during the             09:57:13

 7   day?                                                 09:57:15

 8          A.     During the day while his               09:57:15

 9   deposition was taking place.                         09:57:17

10          Q.     And who from Kirkland & Ellis          09:57:17

11   attended that meeting?                               09:57:21

12          A.     For a portion of it it was             09:57:22

13   Mark McKane and Chad Husnick.  I                     09:57:30

14   apologize.  Mike --                                  09:57:35

15          Q.     That's okay.                           09:57:37

16          A.     Somebody, I know he's from             09:57:38

17   Chicago and his name is Mike, I'm trying             09:57:41

18   to remember his last name.  And the two              09:57:43

19   counsel sitting right here.                          09:57:46

20          Q.     Okay, thank you.  I take it            09:57:48

21   you were not shown any portion of Mr.                09:57:51

22   Moldovan or Mr. Horton's deposition                  09:57:57

23   transcript?                                          09:57:58

24          A.     No, I did not read or see even         09:57:59

25   either of the transcripts.                           09:58:04
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

1        Q.    You obviously didn't listen in          09:58:05
2    to either deposition?                             09:58:07
3        A.    I did not listen in to either           09:58:08
4    deposition.                                       09:58:11
5        Q.    Is there any reason today you           09:58:16
6    believe you cannot provide full and              09:58:18
7    complete testimony?                               09:58:20
8        A.    Not -- well, matters that I'm           09:58:20
9    aware of the answer is no, I should be           09:58:23
10   able to provide full and complete               09:58:26
11   testimony.                                        09:58:28
12       Q.    I'm going to have to cover a            09:58:28
13   little bit of background that frankly            09:58:30
14   you've covered before.  My apologies for         09:58:31
15   covering old ground.                             09:58:34
16            Can you walk through your               09:58:36
17   education starting with college?                 09:58:37
18       A.    It's been a long time, but I           09:58:39
19   think so.  Bachelor of Science degree in        09:58:44
20   accounting from Northern Illinois               09:58:47
21   University and that's the end of my             09:58:49
22   formal education.  As the US trustee            09:58:50
23   pointed out, is that all, and the answer        09:58:55
24   was yes.                                          09:58:56
25       Q.    I will --                               09:59:01

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1        A.    That was on the record, by the        09:59:02

 2   way.                                             09:59:03

 3        Q.    I will not try to ask you any         09:59:03

 4   similar question.                                09:59:05

 5            After -- I understood,                  09:59:06

 6   understand that you were at PwC for a            09:59:10

 7   period; is that right?                           09:59:12

 8        A.    I was, I was at Andersen              09:59:13

 9   before PwC.                                      09:59:16

10        Q.    So why don't you walk me              09:59:18

11   through quickly your employment career           09:59:20

12   after college.  I don't need to know             09:59:22

13   whether you delivered newspapers when you        09:59:23

14   were 12 years old.                               09:59:25

15        A.    I did, maybe I was ten.  But          09:59:26

16   the -- my post-college career began at           09:59:28

17   Arthur Andersen in 1976.  I made partner         09:59:33

18   in 1987 and I continued with their firm          09:59:36

19   until, I don't know exactly when their           09:59:40

20   demise was, but until July 1st, 2008 I           09:59:42

21   think was the date.  And I think on July         09:59:48

22   1st, 2008 is when I started at                   09:59:51

23   PricewaterhouseCoopers as a partner and I        09:59:54

24   continued with PricewaterhouseCoopers            09:59:56

25   from -- did I say 2008?  I'm sorry, 2002,        09:59:58
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 29

| | | |
|---|---|---|
| 1 | excuse me.  Andersen ended 2002, July | 10:00:02 |
| 2 | 1st, 2002 through July 1st, 2008, that's | 10:00:06 |
| 3 | why that was in my head, I was at | 10:00:09 |
| 4 | PricewaterhouseCoopers as a partner. | 10:00:11 |
| 5 | And then on July 1st, 2008 I | 10:00:12 |
| 6 | went to Energy Future Holdings as the | 10:00:15 |
| 7 | executive vice president and chief | 10:00:19 |
| 8 | financial officer.  And then somewhere | 10:00:20 |
| 9 | in, I don't recall when I got the co-CRO | 10:00:24 |
| 10 | title, but that was added to my title | 10:00:28 |
| 11 | somewhere, and I actually don't remember | 10:00:32 |
| 12 | when that occurred. | 10:00:34 |
| 13 | Q.    Were you an audit partner at | 10:00:35 |
| 14 | first Arthur Andersen and PwC? | 10:00:40 |
| 15 | A.    Yes, at both. | 10:00:42 |
| 16 | Q.    Okay.  So you were on the | 10:00:43 |
| 17 | audit side as distinguished from some | 10:00:45 |
| 18 | sort of advisory services side of the | 10:00:47 |
| 19 | business? | 10:00:49 |
| 20 | A.    Yes.  I always -- for a period | 10:00:49 |
| 21 | I ran a consulting part of the operation | 10:00:53 |
| 22 | of Arthur Andersen, but I still | 10:00:56 |
| 23 | maintained an audit client.  So | 10:00:57 |
| 24 | technically, I might have been considered | 10:00:59 |
| 25 | for profit and loss statements a | 10:01:01 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | consulting partner, but I was still a | 10:01:04 |
| 2 | practicing audit partner at the same | 10:01:07 |
| 3 | time.  I never -- I don't believe I ever | 10:01:08 |
| 4 | had a year during my service with either | 10:01:12 |
| 5 | firm that I didn't sign at least one | 10:01:14 |
| 6 | opinion. | 10:01:16 |
| 7 | Q.    Was EFH or maybe it was termed | 10:01:16 |
| 8 | TXU at the point, at any point an audit | 10:01:21 |
| 9 | client of yours? | 10:01:25 |
| 10 | A.    No.  Or of our firm's. | 10:01:26 |
| 11 | Q.    Okay.  You anticipated my next | 10:01:30 |
| 12 | question, thank you.  Who do you report | 10:01:31 |
| 13 | to, sir? | 10:01:37 |
| 14 | A.    John Young. | 10:01:37 |
| 15 | Q.    And you're obviously senior | 10:01:38 |
| 16 | vice president and chief financial | 10:01:41 |
| 17 | officer for all the debtors.  Are you | 10:01:42 |
| 18 | also chief financial officer for EFIH? | 10:01:45 |
| 19 | A.    I'm executive vice president | 10:01:51 |
| 20 | and chief financial officer for all the | 10:01:53 |
| 21 | entities including EFIH. | 10:01:55 |
| 22 | Q.    I apologize. | 10:01:57 |
| 23 | A.    You know, in corporate America | 10:01:58 |
| 24 | that means something. | 10:01:59 |
| 25 | Q.    I appreciate it and I didn't | 10:02:00 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | mean anything. | 10:02:02 |
| 2 | A.    That's okay. | 10:02:02 |
| 3 | Q.    I didn't mean a slight at all. | 10:02:03 |
| 4 | I take it your responsibilities are | 10:02:05 |
| 5 | substantially the same with respect to | 10:02:07 |
| 6 | all of the different debtors? | 10:02:08 |
| 7 | A.    Yes.  But obviously there's | 10:02:12 |
| 8 | different levels of activity and it | 10:02:14 |
| 9 | requires different amounts of time based | 10:02:16 |
| 10 | on the entity and what's included in the | 10:02:17 |
| 11 | entity, but ultimately my | 10:02:19 |
| 12 | responsibilities are the same. | 10:02:21 |
| 13 | Q.    Could you very briefly and at | 10:02:24 |
| 14 | a high level provide an overview of those | 10:02:25 |
| 15 | responsibilities? | 10:02:28 |
| 16 | A.    Perhaps the easiest way would | 10:02:28 |
| 17 | be to talk about the functions that | 10:02:32 |
| 18 | report to me and that ultimately I have | 10:02:33 |
| 19 | responsibility for those functions if | 10:02:35 |
| 20 | that's okay. | 10:02:36 |
| 21 | Q.    Sure, that's perfectly okay. | 10:02:37 |
| 22 | A.    So it would be the | 10:02:39 |
| 23 | controllership, internal audit, tax, | 10:02:39 |
| 24 | information technology, risk management, | 10:02:44 |
| 25 | treasury.  I know I'm missing one, excuse | 10:02:47 |

| | | |
|---|---|---|
| 1 | me, I just have to think through my | 10:03:00 |
| 2 | direct reports.  I'm not recalling, but I | 10:03:02 |
| 3 | think there's seven and I think I named | 10:03:20 |
| 4 | six, so I might miss one. | 10:03:22 |
| 5 | Q.    Investor relations? | 10:03:24 |
| 6 | A.    That's part of treasury, so | 10:03:26 |
| 7 | that's not it, but I do have | 10:03:27 |
| 8 | responsibility for that as well. | 10:03:29 |
| 9 | Q.    Part of the function at | 10:03:30 |
| 10 | treasury, am I right, is the raising of | 10:03:33 |
| 11 | capital for the debtors? | 10:03:38 |
| 12 | A.    Yes. | 10:03:40 |
| 13 | Q.    Okay.  And as of the petition | 10:03:41 |
| 14 | date, the debtors had about, | 10:03:44 |
| 15 | collectively, $42 billion in funded debt, | 10:03:47 |
| 16 | right?  I will tell you that's the number | 10:03:50 |
| 17 | in your first -- I'm sorry.  That is a | 10:03:51 |
| 18 | number I believe in first day papers.  I | 10:03:54 |
| 19 | can't represent it comes out of your | 10:03:56 |
| 20 | affidavit, but I will represent to you | 10:03:57 |
| 21 | that it's in first day papers. | 10:03:59 |
| 22 | A.    It's at least that amount. | 10:04:02 |
| 23 | Q.    Okay.  If it's 43 it doesn't | 10:04:03 |
| 24 | matter.  But the question I'm really | 10:04:06 |
| 25 | getting to is ultimately, the | 10:04:08 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 33

| | | |
|---|---|---|
| 1 | responsibility for the raising of that, | 10:04:11 |
| 2 | those funds and the terms for their | 10:04:13 |
| 3 | repayment came through functions that | 10:04:16 |
| 4 | report to you, right? | 10:04:19 |
| 5 | A.    Yes. | 10:04:20 |
| 6 | Q.    And it's fair to say, even for | 10:04:23 |
| 7 | a company of EFH's size and the debtors' | 10:04:27 |
| 8 | size, 42 or more billion dollars is a lot | 10:04:34 |
| 9 | of money, right? | 10:04:37 |
| 10 | A.    Sure.  Everything has a | 10:04:38 |
| 11 | context, but, you know, it's also | 10:04:40 |
| 12 | important to note with respect to my | 10:04:44 |
| 13 | responsibilities that when I arrived we | 10:04:45 |
| 14 | had $40 billion of debt, so much of the | 10:04:47 |
| 15 | debt that you're referencing was not, did | 10:04:50 |
| 16 | not come through the treasury function | 10:04:53 |
| 17 | when it reported to me. | 10:04:54 |
| 18 | Q.    And I didn't mean to suggest | 10:04:55 |
| 19 | that it was under your watch that the | 10:04:58 |
| 20 | company got levered up.  I didn't mean | 10:05:00 |
| 21 | that at all. | 10:05:03 |
| 22 | But I meant, I was really | 10:05:03 |
| 23 | driving at something differently.  The | 10:05:06 |
| 24 | terms for that debt, the tenor, maturity, | 10:05:10 |
| 25 | the interest rates, the redemption | 10:05:13 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 34

```
 1    provisions, were all important to the        10:05:18
 2    debtors, correct?                            10:05:20
 3        A.     Yes.                              10:05:21
 4        Q.     And both Mr. Moldovan and Mr.     10:05:25
 5    Horton have told me that there's always      10:05:30
 6    give and take and you don't always get       10:05:32
 7    the very best term on every single           10:05:34
 8    provision.  But in the aggregate, the        10:05:36
 9    debtors sought to obtain the best terms      10:05:40
10    net net they could obtain in all their       10:05:44
11    debt issuances, right?                       10:05:48
12            MR. HOWELL:  Object to form.         10:05:50
13        A.     Yeah, certainly our               10:05:51
14    responsibilities as fiduciary is to seek     10:05:53
15    the best possible conditions and terms we    10:05:54
16    can get in negotiating any contract,         10:05:56
17    including an indenture or, you know, an      10:05:59
18    offering memorandum.                         10:06:03
19        Q.     And you understood               10:06:04
20    pre-bankruptcy, you used the term            10:06:05
21    fiduciaries, that you and the other          10:06:08
22    officers of the company were fiduciaries     10:06:10
23    for the share- -- for the ultimate           10:06:13
24    shareholders, for the sponsors, right?       10:06:16
25            MR. HOWELL:  Object to form.         10:06:20
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Q.    I'm not asking -- Mr. | 10:06:21 |
| 2 | Keglevic, let me interrupt my own | 10:06:23 |
| 3 | question and tell you something.  I may | 10:06:24 |
| 4 | ask questions at times that you think ask | 10:06:26 |
| 5 | for sort of a legal interpretation and | 10:06:28 |
| 6 | there's law on what is and what is not a | 10:06:29 |
| 7 | fiduciary.  I really am not going to, I'm | 10:06:32 |
| 8 | really not seeking your -- I'm not asking | 10:06:35 |
| 9 | you to give me a legal opinion.  I'm | 10:06:38 |
| 10 | asking purely of your understanding.  You | 10:06:40 |
| 11 | used the term fiduciary.  Fiduciary to | 10:06:41 |
| 12 | whom? | 10:06:44 |
| 13 | A.    The estate. | 10:06:45 |
| 14 | Q.    Okay.  Let's talk about | 10:06:47 |
| 15 | pre-bankruptcy.  Did you consider | 10:06:48 |
| 16 | yourself to be a fiduciary pre-bankruptcy | 10:06:50 |
| 17 | and if so, to whom? | 10:06:54 |
| 18 | MR. HOWELL:  Object to form. | 10:06:56 |
| 19 | A.    Unfortunately, fiduciary is a | 10:06:57 |
| 20 | very legal term, and I would typically | 10:06:59 |
| 21 | consult pre-bankruptcy, post-bankruptcy, | 10:07:02 |
| 22 | that analysis, with my attorneys to get | 10:07:05 |
| 23 | the appropriate definition and not rely | 10:07:07 |
| 24 | on my knowledge to answer a legal term. | 10:07:09 |
| 25 | Q.    Did you consider yourself, you | 10:07:11 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | used the term, and we were talking about | 10:07:14 |
| 2 | raising debt all of which occurred | 10:07:16 |
| 3 | pre-bankruptcy, did you consider yourself | 10:07:18 |
| 4 | pre-bankruptcy in your own parlance to be | 10:07:20 |
| 5 | a fiduciary and if so, to whom? | 10:07:23 |
| 6 | A.    I consider myself to be a | 10:07:28 |
| 7 | fiduciary to the estate. | 10:07:29 |
| 8 | Q.    Pre-bankruptcy? | 10:07:30 |
| 9 | A.    Yes. | 10:07:34 |
| 10 | Q.    And what do you mean by the | 10:07:34 |
| 11 | estate? | 10:07:35 |
| 12 | A.    Each individual estate. | 10:07:36 |
| 13 | Q.    Each individual -- | 10:07:38 |
| 14 | A.    To do -- my goal as a | 10:07:40 |
| 15 | fiduciary is to maximize value at each | 10:07:41 |
| 16 | estate and therefore I could serve all | 10:07:43 |
| 17 | the constituents at that estate. | 10:07:45 |
| 18 | Q.    And by each estate you mean | 10:07:47 |
| 19 | each of the different debtor entities? | 10:07:49 |
| 20 | A.    Yes, to the best of my | 10:07:51 |
| 21 | knowledge. | 10:07:53 |
| 22 | Q.    Do you believe that the | 10:08:01 |
| 23 | company pre-bankruptcy in negotiating its | 10:08:02 |
| 24 | debt issuances, and I'm really focusing | 10:08:09 |
| 25 | on the high yield debt, in general | 10:08:12 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | achieved the goal of obtaining the best | 10:08:13 |
| 2 | possible terms it could? | 10:08:15 |
| 3 | A.    We have a lot of high yield | 10:08:16 |
| 4 | debt, so which debt are you referring to? | 10:08:17 |
| 5 | Q.    Any of the EFIH first lien | 10:08:19 |
| 6 | debt? | 10:08:21 |
| 7 | A.    Look, best is not -- not | 10:08:24 |
| 8 | defined.  I will just tell you we | 10:08:31 |
| 9 | negotiated and got a deal that we | 10:08:35 |
| 10 | believed was acceptable given our | 10:08:37 |
| 11 | objectives and that given the conditions | 10:08:39 |
| 12 | at the time would maximize value for the | 10:08:41 |
| 13 | estate. | 10:08:44 |
| 14 | Q.    Okay.  And the goal in raising | 10:08:44 |
| 15 | that debt was, among other things, to | 10:08:51 |
| 16 | ensure that each of the debtors had | 10:08:53 |
| 17 | sufficient liquidity to operate? | 10:08:56 |
| 18 | A.    You'd have to take me through | 10:09:00 |
| 19 | the issuance and that point in time what | 10:09:04 |
| 20 | we were trying to achieve. | 10:09:06 |
| 21 | Q.    Okay, let me do it -- I'm | 10:09:07 |
| 22 | trying to cover some ground at a high | 10:09:09 |
| 23 | level, in which case we don't have to | 10:09:10 |
| 24 | spend as much time drilling down, but | 10:09:12 |
| 25 | that's fair, let's drill as we go along. | 10:09:14 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | I spent a lot of time | 10:09:21 |
| 2 | yesterday with Mr. Horton going through, | 10:09:22 |
| 3 | I think I was thorough, events leading up | 10:09:26 |
| 4 | to the bankruptcy.  I'm going to try to | 10:09:29 |
| 5 | do this at a much more top level, but if | 10:09:32 |
| 6 | at any point you need me to drill down I | 10:09:35 |
| 7 | will. | 10:09:37 |
| 8 | You're familiar with the term | 10:09:37 |
| 9 | Project Olympus, are you not? | 10:09:46 |
| 10 | A.    I am. | 10:09:48 |
| 11 | Q.    Can you generally describe for | 10:09:48 |
| 12 | me what Project Olympus was? | 10:09:51 |
| 13 | A.    Yes, Project Olympus was an | 10:09:57 |
| 14 | effort to come to a consensual deal that | 10:09:59 |
| 15 | would keep EFH and all the entities, | 10:10:01 |
| 16 | including EFIH on that side of the | 10:10:07 |
| 17 | organization, out of bankruptcy and have | 10:10:09 |
| 18 | TCEH file for bankruptcy but in a | 10:10:15 |
| 19 | consensual manner where all parties | 10:10:18 |
| 20 | agreed. | 10:10:21 |
| 21 | Q.    Okay. | 10:10:21 |
| 22 | A.    Keep the company together. | 10:10:22 |
| 23 | Q.    So one principal goal was to | 10:10:23 |
| 24 | keep the entire debtor enterprise, both | 10:10:26 |
| 25 | the T side and the E side together, | 10:10:28 |

| | | |
|---|---|---|
| 1 | correct? | 10:10:30 |
| 2 | A.    It wasn't a goal.  A goal was | 10:10:30 |
| 3 | to maximize the value for all of the | 10:10:33 |
| 4 | estates.  But since breaking up the | 10:10:35 |
| 5 | parent in different fashions would | 10:10:39 |
| 6 | trigger potentially massive tax | 10:10:42 |
| 7 | liabilities, one way not to incur those | 10:10:45 |
| 8 | tax liabilities was keeping the company | 10:10:47 |
| 9 | together. | 10:10:49 |
| 10 | Q.    Okay.  Let me not use the word | 10:10:50 |
| 11 | goal.  Another premise of Project Olympus | 10:10:52 |
| 12 | was that neither EFH nor its subsidiary | 10:11:01 |
| 13 | EFIH would be put through bankruptcy? | 10:11:07 |
| 14 | A.    That's right. | 10:11:08 |
| 15 | Q.    And I'll represent to you, and | 10:11:09 |
| 16 | I'm happy to take them out if you want to | 10:11:14 |
| 17 | look at them, I went through with Mr. | 10:11:16 |
| 18 | Horton a series of presentations, decks | 10:11:18 |
| 19 | that were made by the debtors in | 10:11:22 |
| 20 | connection with Project Olympus in the | 10:11:25 |
| 21 | first half of 2013, all of which | 10:11:29 |
| 22 | described EFIH as solvent.  Do you have a | 10:11:35 |
| 23 | recollection of that? | 10:11:41 |
| 24 | MR. HOWELL:  Object to form. | 10:11:42 |
| 25 | A.    Well I know at different | 10:11:43 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | points in time in connection with issuing | 10:11:46 |
| 2 | debt and other things, we found EFIH to | 10:11:49 |
| 3 | be solvent. | 10:11:51 |
| 4 | Q.    The debtors -- EFIH issued | 10:11:52 |
| 5 | debt at different points in time, right? | 10:11:55 |
| 6 | A.    Yes. | 10:11:57 |
| 7 | Q.    And at each point in time, | 10:11:57 |
| 8 | EFIH needed to make representations to | 10:12:00 |
| 9 | the underwriters or to others about | 10:12:02 |
| 10 | whether both in advance of and following | 10:12:05 |
| 11 | that debt issuance EFIH would be solvent, | 10:12:10 |
| 12 | right? | 10:12:13 |
| 13 | MR. HOWELL:  Object to form. | 10:12:14 |
| 14 | A.    I don't know if we were | 10:12:15 |
| 15 | required to, but I know we did make such | 10:12:17 |
| 16 | solvency representations as part of those | 10:12:19 |
| 17 | EFIH issuances.  That's my recollection. | 10:12:23 |
| 18 | Q.    And Mr. Keglevic, I've spent | 10:12:25 |
| 19 | 15 minutes or so with you today, but I've | 10:12:28 |
| 20 | already formed an impression you're a | 10:12:31 |
| 21 | serious guy.  I take it you would -- | 10:12:32 |
| 22 | those representations, if you didn't even | 10:12:34 |
| 23 | sign them -- if you didn't sign them | 10:12:37 |
| 24 | personally, they were made by people | 10:12:39 |
| 25 | under your watch like Mr. Horton, right? | 10:12:40 |

| | | |
|---|---|---|
| 1 | A.    I'm not sure who actually made | 10:12:46 |
| 2 | the representations, but I would say that | 10:12:48 |
| 3 | certainly I was aware that as a company | 10:12:53 |
| 4 | it was either Mr. Horton or Mr. Horton | 10:12:55 |
| 5 | and our legal department, you know, made | 10:12:56 |
| 6 | those representations. | 10:12:58 |
| 7 | Q.    And you would not have allowed | 10:12:59 |
| 8 | those representations to be made unless | 10:13:00 |
| 9 | you believed them to be true, correct? | 10:13:02 |
| 10 | A.    I was certainly never aware of | 10:13:04 |
| 11 | a solvency representation we made that | 10:13:09 |
| 12 | was not true. | 10:13:12 |
| 13 | Q.    Okay. | 10:13:12 |
| 14 | MR. ANKER:  Why don't we mark | 10:13:23 |
| 15 | this as Keglevic Exhibit number 3. | 10:13:25 |
| 16 | It is a multipage document bearing | 10:13:28 |
| 17 | the Bates stamps EFH 00080017 | 10:13:30 |
| 18 | through 090. | 10:13:34 |
| 19 | (Keglevic Exhibit 3 for | 10:13:34 |
| 20 | identification, Bates stamped EFH | 10:13:32 |
| 21 | 00080017 through 00080090.) | 10:13:33 |
| 22 | Q.    Mr. Keglevic, what I've handed | 10:13:59 |
| 23 | you I believe is one of the dealer | 10:14:00 |
| 24 | manager agreements that we were just | 10:14:03 |
| 25 | talking about.  Does that look right to | 10:14:06 |

| | | |
|---|---|---|
| 1 | you?  Does that look like what this | 10:14:12 |
| 2 | document is? | 10:14:14 |
| 3 | A.    Yes, this looks like the 6.875 | 10:14:15 |
| 4 | 2017 note. | 10:14:19 |
| 5 | Q.    And this is for the second | 10:14:20 |
| 6 | liens, right?  If you look at the very | 10:14:22 |
| 7 | first page? | 10:14:30 |
| 8 | A.    Yes, I just want to double | 10:14:30 |
| 9 | check.  Yes. | 10:14:32 |
| 10 | Q.    And you'll see that on page 2, | 10:14:35 |
| 11 | if you can turn to page 2 of the | 10:14:40 |
| 12 | document, you'll see paragraph number 1 | 10:14:42 |
| 13 | begins, "Each of the issuers" and I think | 10:14:44 |
| 14 | if you turn back to page 1 of the | 10:14:47 |
| 15 | document you'll see that the issuers | 10:14:49 |
| 16 | include EFIH, "represents and warrants to | 10:14:52 |
| 17 | the initial purchasers," and then there's | 10:14:54 |
| 18 | a whole series of reps and warranties. | 10:14:56 |
| 19 | And why don't you turn to page 14.  Tell | 10:14:58 |
| 20 | me if you're there. | 10:15:07 |
| 21 | A.    I'm there. | 10:15:08 |
| 22 | Q.    Can you look at subparagraph | 10:15:08 |
| 23 | (jj). | 10:15:10 |
| 24 | A.    Yes. | 10:15:12 |
| 25 | Q.    So here EFIH is, and let's | 10:15:12 |

Page 43

| | | |
|---|---|---|
| 1 | look at the date of this document, | 10:15:17 |
| 2 | October 18, 2012, right, sir, if you go | 10:15:18 |
| 3 | to the very beginning? | 10:15:21 |
| 4 | A.    Yes. | 10:15:22 |
| 5 | Q.    Representing that it is | 10:15:23 |
| 6 | solvent, is today and immediately after | 10:15:26 |
| 7 | the time of delivery will be solvent, and | 10:15:32 |
| 8 | then there's a definition of solvency for | 10:15:35 |
| 9 | purposes of that rep, right? | 10:15:38 |
| 10 | A.    Yes. | 10:15:39 |
| 11 | Q.    And the definition of solvency | 10:15:40 |
| 12 | for purposes of that rep and warranty is | 10:15:41 |
| 13 | four different tests, all of which need | 10:15:46 |
| 14 | to be met for that representation and | 10:15:48 |
| 15 | warranty to be true, correct? | 10:15:50 |
| 16 | A.    It has four conditions that it | 10:15:51 |
| 17 | states we meet. | 10:15:55 |
| 18 | Q.    Okay.  And just to be clear | 10:15:56 |
| 19 | what I'm asking, Mr. Keglevic, the word | 10:15:58 |
| 20 | that separates the four conditions is | 10:16:03 |
| 21 | and, not or, so all four conditions need | 10:16:06 |
| 22 | to be met, not merely one of the four, | 10:16:08 |
| 23 | right? | 10:16:11 |
| 24 | A.    Well I don't see an and, but | 10:16:11 |
| 25 | there is a comma, so I would agree that | 10:16:19 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 44

| | |
|---|---|
| 1 | the meaning I take from that it was all | 10:16:22 |
| 2 | four. | 10:16:24 |
| 3 | Q.    We don't need to disagree.  I | 10:16:24 |
| 4 | think the and, if you look at the very | 10:16:27 |
| 5 | last line, I'm sorry, the next to last | 10:16:28 |
| 6 | line, the very last word, right after | 10:16:31 |
| 7 | mature? | 10:16:33 |
| 8 | A.    I see there's an and before | 10:16:35 |
| 9 | number 4, there's not an and before (ii) | 10:16:37 |
| 10 | and (iii) was my point. | 10:16:40 |
| 11 | Q.    But you understood this to | 10:16:43 |
| 12 | mean that EFIH was representing that it | 10:16:44 |
| 13 | was satisfied -- that it was solvent | 10:16:46 |
| 14 | within the meaning of each of these four | 10:16:48 |
| 15 | tests? | 10:16:50 |
| 16 | MR. HOWELL:  Object to form. | 10:16:51 |
| 17 | A.    Yeah, I'll let the words say | 10:16:52 |
| 18 | what the words say. | 10:16:54 |
| 19 | Q.    Okay.  And you believed this | 10:16:55 |
| 20 | representation to be true and correct at | 10:17:10 |
| 21 | the time it was made, did you not? | 10:17:12 |
| 22 | A.    I have no reason to believe | 10:17:13 |
| 23 | this representation was not correct. | 10:17:14 |
| 24 | Q.    And you believed that each | 10:17:16 |
| 25 | time EFIH represented that it was | 10:17:18 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | solvent, that representation was true and | 10:17:20 |
| 2 | correct, correct? | 10:17:21 |
| 3 | MR. HOWELL:  Object to form. | 10:17:25 |
| 4 | A.    I think if we signed a | 10:17:26 |
| 5 | document we agreed -- we believed the | 10:17:28 |
| 6 | words were accurate. | 10:17:30 |
| 7 | Q.    The decks that are in 2013 for | 10:17:33 |
| 8 | the investor presentations and investor | 10:17:36 |
| 9 | advisors presentations, those aren't | 10:17:39 |
| 10 | signed, those are decks, but in each of | 10:17:41 |
| 11 | them it describes EFIH as solvent.  Did | 10:17:45 |
| 12 | the debtors believe that statement to be | 10:17:49 |
| 13 | true at the time they were made? | 10:17:51 |
| 14 | MR. HOWELL:  Object to form. | 10:17:52 |
| 15 | A.    I don't know what decks you're | 10:17:53 |
| 16 | referring to, and, you know, I know a lot | 10:17:56 |
| 17 | of times we do decks that have | 10:18:00 |
| 18 | assumptions in them.  So it's just very | 10:18:02 |
| 19 | difficult, you know.  For example, I'll | 10:18:05 |
| 20 | give you one since you brought up Project | 10:18:07 |
| 21 | Olympus, in Project Olympus one of the | 10:18:10 |
| 22 | conditions -- one of the things we were | 10:18:12 |
| 23 | looking for and the reason we would not | 10:18:14 |
| 24 | take EFH/EFIH into bankruptcy was that we | 10:18:16 |
| 25 | needed an infusion of capital of $2 | 10:18:19 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | billion.  I think at one point it was | 10:18:21 |
| 2 | 2.2, somewhere in that area.  You know, | 10:18:24 |
| 3 | obviously that assumption has a big | 10:18:26 |
| 4 | impact on any conclusion with respect to | 10:18:29 |
| 5 | solvency.  So I'm not sure, you know, we | 10:18:31 |
| 6 | did not -- you know, certainly these | 10:18:36 |
| 7 | representations have more meaning and | 10:18:41 |
| 8 | more work and support behind them than | 10:18:43 |
| 9 | decks do that have assumptions that are | 10:18:46 |
| 10 | yet to be found to be accurate or not | 10:18:48 |
| 11 | accurate. | 10:18:51 |
| 12 | Q.    And when you said -- I think | 10:18:51 |
| 13 | you -- I think you said this, and you | 10:19:03 |
| 14 | pointed down, has more work behind it and | 10:19:06 |
| 15 | more substance, you were referring to | 10:19:11 |
| 16 | Exhibit 3 and similar dealer manager | 10:19:14 |
| 17 | agreements and other documents with | 10:19:18 |
| 18 | signed representations and warranties by | 10:19:22 |
| 19 | the company, correct? | 10:19:24 |
| 20 | A.    Let me -- I'm referring to | 10:19:25 |
| 21 | this document that you handed me, | 10:19:27 |
| 22 | Keglevic Exhibit 3, and that is based on | 10:19:29 |
| 23 | actual facts that exist before and after | 10:19:32 |
| 24 | the issuance of that, whereas decks might | 10:19:35 |
| 25 | have pro forma assumptions. | 10:19:37 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Q.    Okay. | 10:19:39 |
| 2 | A.    That's my point. | 10:19:40 |
| 3 | Q.    Now that was dated as of | 10:19:41 |
| 4 | October 2012, correct? | 10:19:43 |
| 5 | A.    Yes. | 10:19:45 |
| 6 | Q.    Let's focus on EFIH.  Did EFIH | 10:19:45 |
| 7 | issue materially greater debt, increase | 10:19:50 |
| 8 | of its debt between October 2012 and | 10:19:53 |
| 9 | April of 2014? | 10:19:57 |
| 10 | MR. HOWELL:  Object to form. | 10:20:00 |
| 11 | A.    I'd have to refresh my memory. | 10:20:01 |
| 12 | I don't remember the exact time frames | 10:20:08 |
| 13 | where we issued all of our debt, but I | 10:20:09 |
| 14 | think this is closer to the end than the | 10:20:12 |
| 15 | beginning, for sure. | 10:20:14 |
| 16 | Q.    Was there any change of events | 10:20:14 |
| 17 | between October 2012 and April 2014 that | 10:20:19 |
| 18 | as you sit here today materially | 10:20:24 |
| 19 | increased the debt of EFIH? | 10:20:26 |
| 20 | A.    I'd have to go back and look | 10:20:29 |
| 21 | at the financial statements or something, | 10:20:31 |
| 22 | I just don't recall, you know, all those | 10:20:35 |
| 23 | dates upon which the issuances occurred. | 10:20:37 |
| 24 | Q.    In connection with each | 10:20:38 |
| 25 | issuance, as best as you can recall, the | 10:20:41 |

1    company made, whether it was required to          10:20:43

2    or not, a solvency representation, right?          10:20:45

3         A.    I believe to the extent we              10:20:48

4    issued EFIH debt, we made similar                  10:20:50

5    representations to the one in Keglevic 3.          10:20:54

6         Q.    So I want to make sure.  I'm            10:20:56

7    about to make a leap of logic, but I               10:20:59

8    think it follows sort of as the day                10:21:00

9    follows the night.  If it's right that at          10:21:02

10   the time of the very last debt issuance            10:21:08

11   by EFIH it represented that it was                 10:21:10

12   solvent, then it follows, does it not,             10:21:13

13   that there was no material increase in             10:21:16

14   the debt at EFIH thereafter up until the           10:21:18

15   bankruptcy filing date?                            10:21:21

16             MR. HOWELL:  Object to form.             10:21:23

17        A.    Well, there's other things              10:21:24

18   that can happen that could affect                  10:21:25

19   solvency beyond the issuance of debt.              10:21:27

20        Q.    Asset -- there's two sides of           10:21:29

21   a balance sheet, but I'm only focusing             10:21:31

22   right now on the liability side of the             10:21:33

23   balance sheet.                                     10:21:34

24        A.    The liability side, right, one          10:21:35

25   of the things that could impact that is            10:21:37

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 49

| | | |
|---|---|---|
| 1 | the liabilities, actual debt and | 10:21:39 |
| 2 | contingencies if they go up that could | 10:21:42 |
| 3 | affect solvency. | 10:21:44 |
| 4 | Q.    Were there material increases | 10:21:46 |
| 5 | in -- let's back up.  EFIH was a holding | 10:21:48 |
| 6 | company, right? | 10:21:54 |
| 7 | MR. HOWELL:  Object to form. | 10:21:57 |
| 8 | Q.    An intermediate holding | 10:21:58 |
| 9 | company? | 10:22:01 |
| 10 | A.    Yes, that's fair, it's an | 10:22:01 |
| 11 | intermediate holding company. | 10:22:02 |
| 12 | Q.    It didn't have operations of | 10:22:04 |
| 13 | it own, right? | 10:22:05 |
| 14 | A.    Correct, it didn't have | 10:22:06 |
| 15 | physical operations, it had treasury | 10:22:08 |
| 16 | operations. | 10:22:10 |
| 17 | Q.    Right.  And so it didn't have | 10:22:11 |
| 18 | material trade debt, right? | 10:22:13 |
| 19 | A.    I'm sorry, please restate. | 10:22:15 |
| 20 | Q.    Material trade debt? | 10:22:17 |
| 21 | A.    It did not. | 10:22:20 |
| 22 | Q.    Okay.  And so as of the | 10:22:22 |
| 23 | petition date it had about 7.7 billion | 10:22:25 |
| 24 | according to the first day papers in | 10:22:28 |
| 25 | funded debt consisting of about 4 billion | 10:22:31 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 50

| | | |
|---|---|---|
| 1 | of first lien debt, right, and the rest | 10:22:34 |
| 2 | in second lien and unsecured or PIK debt, | 10:22:36 |
| 3 | right? | 10:22:39 |
| 4 | A.    Yes, that number is pretty | 10:22:41 |
| 5 | close I would think. | 10:22:44 |
| 6 | Q.    That's a fair estimation of | 10:22:45 |
| 7 | the total amount of debt of EFIH as of | 10:22:48 |
| 8 | the petition date, right? | 10:22:50 |
| 9 | A.    Of the debt, yes. | 10:22:53 |
| 10 | Q.    Of liabilities? | 10:22:54 |
| 11 | A.    No, that's the debt. | 10:22:57 |
| 12 | Liabilities are a different issue. | 10:22:59 |
| 13 | Q.    Okay.  What other liabilities | 10:23:01 |
| 14 | did it have? | 10:23:03 |
| 15 | A.    I'd have to look at the | 10:23:04 |
| 16 | financial statements and you have to be | 10:23:05 |
| 17 | more -- I mean at what date, what -- | 10:23:07 |
| 18 | Q.    As of the petition date? | 10:23:09 |
| 19 | A.    As of the petition date I'd | 10:23:10 |
| 20 | have to refresh my memory of what else | 10:23:12 |
| 21 | was on their balance sheet.  There | 10:23:13 |
| 22 | probably were intercompany amounts | 10:23:15 |
| 23 | payable. | 10:23:17 |
| 24 | Q.    It also -- | 10:23:18 |
| 25 | A.    There may have been -- you | 10:23:20 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 51

| | | |
|---|---|---|
| 1 | know, I would just have to see the | 10:23:21 |
| 2 | information to make that determination. | 10:23:22 |
| 3 | Q.   It also had intercompany | 10:23:23 |
| 4 | assets, did it not, it was -- | 10:23:25 |
| 5 | A.   It may -- the same answer, it | 10:23:27 |
| 6 | may have, I'd have to see the financial | 10:23:29 |
| 7 | statements as of that date. | 10:23:31 |
| 8 | Q.   Let's focus on the other side | 10:23:32 |
| 9 | of the balance sheet.  Let's put it | 10:23:33 |
| 10 | differently.  With respect to funded | 10:23:35 |
| 11 | indebtedness, your testimony I think, Mr. | 10:23:37 |
| 12 | Keglevic, but I want to make sure I | 10:23:41 |
| 13 | understand it correctly, is that EFIH | 10:23:42 |
| 14 | provided solvency opinions, to the best | 10:23:45 |
| 15 | of your recollection, each time it | 10:23:47 |
| 16 | incurred funded indebtedness as of the | 10:23:51 |
| 17 | date it incurred that funded | 10:23:54 |
| 18 | indebtedness? | 10:23:57 |
| 19 | A.   My recollection is that is | 10:23:57 |
| 20 | correct, but I, you know, I'm sure Mr. | 10:24:01 |
| 21 | Horton would know or the documents would | 10:24:03 |
| 22 | speak for themselves whether we did or | 10:24:05 |
| 23 | did not. | 10:24:07 |
| 24 | Q.   Sure.  And I think your | 10:24:07 |
| 25 | testimony also is if the debtors, if the | 10:24:08 |

```
 1      documents show that -- if the documents        10:24:11

 2      are consistent with your recollection,         10:24:13

 3      EFIH made those representations in good         10:24:16

 4      faith and they were true when made,            10:24:18

 5      right?                                          10:24:20

 6           A.    Correct.                             10:24:21

 7           Q.    Okay.  Let's focus on the            10:24:21

 8      asset side of the balance sheet.  Did          10:24:25

 9      EFIH's assets deteriorate materially           10:24:27

10      between October of 2012 and April of           10:24:30

11      2014?                                           10:24:34

12           A.    Once again, I'd have to see          10:24:35

13      the financial statements.  I don't recall      10:24:37

14      specifically all the transactions that         10:24:39

15      occurred between that date and the             10:24:41

16      petition date.                                  10:24:42

17           Q.    Did you or anyone at the             10:24:43

18      debtors form the conclusion at any point       10:24:46

19      between -- at any point up to April 2014       10:24:50

20      that EFIH was insolvent?                        10:24:55

21              MR. HOWELL:  Object to                   10:24:57

22           foundation.                                10:24:59

23           A.    I'm sorry, up till what date?        10:24:59

24           Q.    April 28th, 2014.                     10:25:07

25           A.    Well, at April 28th, 2014, we        10:25:14
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 53

| | | |
|---|---|---|
| 1 | saw that effective I think it was June | 10:25:19 |
| 2 | 1st we would no longer be able to pay our | 10:25:22 |
| 3 | bills.  So whether, you know, the fact | 10:25:26 |
| 4 | that we could make that determination in | 10:25:29 |
| 5 | a very short period of time that we would | 10:25:31 |
| 6 | run out of cash, you know, but certainly | 10:25:33 |
| 7 | that's what drove our filing. | 10:25:36 |
| 8 | And I would have to consult | 10:25:38 |
| 9 | with my attorneys as of that date whether | 10:25:40 |
| 10 | with that knowledge in hand whether we | 10:25:42 |
| 11 | would have been able -- I don't think we | 10:25:44 |
| 12 | would have been able to give this kind of | 10:25:46 |
| 13 | rep on the date we filed because of the | 10:25:48 |
| 14 | fact that we knew we were out of cash. | 10:25:51 |
| 15 | Q.    Now, one thing the debtors did | 10:25:52 |
| 16 | not do prior to, I think we've | 10:25:54 |
| 17 | established this, the petition date is, | 10:25:59 |
| 18 | other than the Duff & Phelps work, obtain | 10:26:01 |
| 19 | a valuation of EFIH, right? | 10:26:05 |
| 20 | A.    We did not obtain a formal | 10:26:09 |
| 21 | valuation. | 10:26:12 |
| 22 | Q.    And that was notwithstanding | 10:26:12 |
| 23 | that the debtors had retained Evercore | 10:26:15 |
| 24 | long before April of 2014, right? | 10:26:20 |
| 25 | MR. HOWELL:  Object to form. | 10:26:24 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | A.    Yeah, we obtained -- we -- | 10:26:25 |
| 2 | well, we engaged Evercore in I believe | 10:26:29 |
| 3 | 2012 and we never requested that they do | 10:26:32 |
| 4 | a formal valuation, but we certainly had, | 10:26:35 |
| 5 | I think as I've testified to in the | 10:26:39 |
| 6 | proceeding, many discussions with them on | 10:26:40 |
| 7 | value.  We had presentations to our board | 10:26:42 |
| 8 | where we looked at cash flows and we | 10:26:45 |
| 9 | looked at comparables and we did a -- | 10:26:47 |
| 10 | looked at valuation with and without REIT | 10:26:50 |
| 11 | status.  So while there might not have | 10:26:53 |
| 12 | been a report that said valuation from | 10:26:55 |
| 13 | Evercore, it's not to say there wasn't a | 10:26:58 |
| 14 | lot of dialogue and discussion about what | 10:26:59 |
| 15 | value may be. | 10:27:02 |
| 16 | Q.    Okay.  And if I understand the | 10:27:03 |
| 17 | -- well let's back up, let me ask a | 10:27:07 |
| 18 | different question. | 10:27:09 |
| 19 | Another thing you didn't ask | 10:27:10 |
| 20 | Evercore to do was to market EFIH or its | 10:27:12 |
| 21 | interest in Oncor, right? | 10:27:22 |
| 22 | MR. HOWELL:  Object to form. | 10:27:24 |
| 23 | A.    As of? | 10:27:25 |
| 24 | Q.    Pre-bankruptcy? | 10:27:26 |
| 25 | A.    Pre-bankruptcy, we did not ask | 10:27:27 |

```
 1     Evercore to market the asset.                    10:27:29
 2          Q.    And I asked that question only        10:27:30
 3     about Evercore.  Let me expand it.  Did          10:27:33
 4     the debtors, either themselves, officers         10:27:36
 5     of the debtors, or employees of the              10:27:39
 6     debtors, or the debtors asking any bank          10:27:42
 7     or anyone else, take any steps                   10:27:44
 8     pre-bankruptcy to market EFIH or EFIH's          10:27:47
 9     interest in Oncor?                               10:27:51
10          A.    We did not do a formal                10:27:55
11     marketing process.  My experience is            10:27:57
12     certainly if people are interested in           10:27:59
13     buying it the bankers love to bring you         10:28:01
14     those ideas, they get paid if they come         10:28:03
15     up with ideas.  So the channels are open        10:28:05
16     and people certainly knew that we were          10:28:07
17     under distress, but we did not have a           10:28:08
18     formal marketing process like the one           10:28:10
19     that we petitioned the court for and got        10:28:13
20     approved with qualifications in the             10:28:15
21     recent hearing in September.                     10:28:19
22          Q.    Okay.  And the debtors                10:28:20
23     negotiated pursuant to the restructuring        10:28:24
24     support agreement a potential                    10:28:29
25     restructuring for EFIH based upon a             10:28:33
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 56

| | |
|---|---|
| 1    presumed or assumed value for EFIH, | 10:28:36 |
| 2    right? | 10:28:40 |
| 3         A.    The RSA had a value that was | 10:28:40 |
| 4    implicit based on the transaction that we | 10:28:44 |
| 5    agreed to. | 10:28:46 |
| 6         Q.    And how much was that value? | 10:28:47 |
| 7         A.    Roughly $16.5 billion terminal | 10:28:48 |
| 8    enterprise value, and that's for the | 10:28:52 |
| 9    entire company of which we only own 80 | 10:28:54 |
| 10   percent. | 10:28:58 |
| 11        Q.    Let's just make sure we get a | 10:29:01 |
| 12   clear record.  When you say for the | 10:29:03 |
| 13   entire company, you mean by company | 10:29:04 |
| 14   Oncor? | 10:29:07 |
| 15        A.    Yes.  We typically look at the | 10:29:08 |
| 16   Oncor valuation as the asset that has the | 10:29:11 |
| 17   underlying value all the way up the E | 10:29:14 |
| 18   side.  So it was the Oncor valuation. | 10:29:17 |
| 19   When we talk about numbers, we're talking | 10:29:20 |
| 20   about how somebody would value Oncor, | 10:29:22 |
| 21   what they would pay us for the hundred | 10:29:24 |
| 22   percent stock of Oncor.  Obviously we | 10:29:27 |
| 23   only own 80 percent, so you have to | 10:29:30 |
| 24   reduce -- | 10:29:32 |
| 25        Q.    By 20? | 10:29:34 |

1          A.    By 20.                                      10:29:35

2          Q.    By 20 percent, okay.  And that              10:29:36

3    assumed value of 16.5 billion, I think                  10:29:43

4    you've told me this, was not based on any               10:29:46

5    effort to market the asset                              10:29:49

6    pre-bankruptcy, right?                                  10:29:54

7          A.    Correct, we did not market the              10:29:54

8    asset -- well, I guess -- I'll make some                10:29:56

9    exception to that.  We had as part of                   10:29:59

10   Project Olympus negotiations to sell the                10:30:01

11   E side of the business to the TCEH first                10:30:06

12   liens.  In some respects you could say                  10:30:09

13   that was a marketing attempt, where they                10:30:11

14   offered $800 million to the E side to --                10:30:13

15   and, you know, settle, which had an                     10:30:19

16   implied value that was substantially                    10:30:20

17   lower than 16.5.  Then we had a                         10:30:23

18   negotiation, which you could say is a                   10:30:28

19   marketing, with the PIKs of what they                   10:30:29

20   were willing to pay for the asset, but we               10:30:31

21   did not reach out, other than those two                 10:30:34

22   parties, we did not have -- go out to the               10:30:36

23   broader market and ask for levels of                    10:30:38

24   interest.                                               10:30:41

25         Q.    You didn't speak to any                     10:30:41

| | | |
|---|---|---|
| 1 | strategic investor, for example? | 10:30:43 |
| 2 | A.   We had heard over the years | 10:30:44 |
| 3 | that some strategics may be interested, | 10:30:50 |
| 4 | but none were forthcoming and we didn't | 10:30:55 |
| 5 | solicit bids. | 10:30:57 |
| 6 | Q.   And I think you told me | 10:30:58 |
| 7 | earlier that Project Olympus presumed as | 10:31:00 |
| 8 | an assumption a $2 billion equity | 10:31:05 |
| 9 | infusion on the E side, right? | 10:31:07 |
| 10 | A.   It had, as it evolved there | 10:31:10 |
| 11 | were different numbers, but certainly at | 10:31:13 |
| 12 | a point in time I think we started at | 10:31:15 |
| 13 | two, it went to 2.2.  I can't recall. | 10:31:17 |
| 14 | The last TCEH bid to buy the company | 10:31:20 |
| 15 | would have also infused some money and | 10:31:22 |
| 16 | given the existing holders $800 million. | 10:31:24 |
| 17 | So it varied it's fair to say in those | 10:31:28 |
| 18 | negotiations.  But it was all -- the one | 10:31:31 |
| 19 | thing was unconditional is because EFIH | 10:31:36 |
| 20 | was overlevered we had to get some, you | 10:31:39 |
| 21 | know, payment, new money to pay down the | 10:31:41 |
| 22 | debt. | 10:31:44 |
| 23 | Q.   And Project Olympus, a premise | 10:31:48 |
| 24 | of it was that if that new money came in, | 10:31:50 |
| 25 | EFIH need not file for bankruptcy and | 10:31:55 |

| | | |
|---|---|---|
| 1 | could have its debts dealt with outside | 10:31:59 |
| 2 | of a bankruptcy proceeding, right? | 10:32:04 |
| 3 | A.    That was, yes, that was the | 10:32:07 |
| 4 | hope, is that we could get new money, pay | 10:32:09 |
| 5 | down some debt, and then renegotiate what | 10:32:12 |
| 6 | we were I think referring to, and I'm not | 10:32:15 |
| 7 | sure if you got there with Mr. Horton, | 10:32:18 |
| 8 | blend and extend, exchange the maturity | 10:32:20 |
| 9 | of the existing debt and somehow | 10:32:22 |
| 10 | negotiate a level that would make EFIH | 10:32:24 |
| 11 | with the new money and with the blend and | 10:32:26 |
| 12 | extend program cash flow positive, which | 10:32:29 |
| 13 | prior to that time it had been | 10:32:31 |
| 14 | significantly cash flow negative. | 10:32:33 |
| 15 | Q.    Okay.  And I went over all | 10:32:35 |
| 16 | this with Mr. Horton and I don't, again, | 10:32:38 |
| 17 | propose to go over it with you in detail | 10:32:40 |
| 18 | unless you have a different recollection | 10:32:43 |
| 19 | at a high level, but all of those blend | 10:32:45 |
| 20 | and extend proposals presumed that EFIH | 10:32:49 |
| 21 | would, as it refinanced its first lien | 10:32:55 |
| 22 | debt, pay whatever premiums were owed | 10:32:59 |
| 23 | under the indentures? | 10:33:02 |
| 24 | MR. HOWELL:  Object to form. | 10:33:05 |
| 25 | A.    I don't recall any of the | 10:33:06 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | blend and extend having any elements of | 10:33:08 |
| 2 | premium.  It was just an interest rate | 10:33:10 |
| 3 | that we would pay going forward. | 10:33:13 |
| 4 | Now how that interest rate was | 10:33:15 |
| 5 | derived was based on current interest | 10:33:17 |
| 6 | rate that was on the additional | 10:33:20 |
| 7 | agreement, but I don't recall... | 10:33:22 |
| 8 | Q.    While we're getting a document | 10:34:29 |
| 9 | out, I take it that one of the companies | 10:34:30 |
| 10 | that the debtors did not reach out to | 10:34:32 |
| 11 | pre-petition to see whether it would | 10:34:36 |
| 12 | either purchase the debtors' interest in | 10:34:39 |
| 13 | Oncor or make an equity contribution in | 10:34:42 |
| 14 | exchange for some portion, was Nextera? | 10:34:45 |
| 15 | MR. HOWELL:  Object to | 10:34:48 |
| 16 | foundation. | 10:34:50 |
| 17 | A.    We did not have any | 10:34:50 |
| 18 | discussions with Nextera that I'm aware | 10:34:52 |
| 19 | of prior to filing a petition about | 10:34:56 |
| 20 | buying the company.  I would hesitate -- | 10:35:00 |
| 21 | you know, tell you that the -- you made | 10:35:03 |
| 22 | the comment at the end of that question | 10:35:06 |
| 23 | about equity contribution, or make an | 10:35:07 |
| 24 | equity contribution I believe.  Equity | 10:35:10 |
| 25 | contributions that would change ownership | 10:35:14 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 61

```
 1    outside of bankruptcy, you know,              10:35:16
 2    typically would have triggered tax, so        10:35:18
 3    that wouldn't have been something we           10:35:20
 4    would have solicited because we believed       10:35:22
 5    and we continue to believe that the, on        10:35:24
 6    behalf of all the estates the best thing       10:35:26
 7    to do is not to trigger a tax.  But we         10:35:28
 8    did not reach out to them and ask if they      10:35:30
 9    were interested in buying the company.         10:35:32
10    They made an unsolicited bid during the        10:35:34
11    proceedings when we were reviewing the         10:35:37
12    RSA.                                           10:35:38
13          Q.    Okay.                              10:35:39
14                MR. SABIN:  Just to interrupt      10:35:40
15          for one second for the transcript.       10:35:42
16          You used the word debtors there.         10:35:43
17          Did you mean to mean EFIH and did        10:35:45
18          you mean all the E side?  Just so        10:35:48
19          that we can follow through the rest      10:35:50
20          of today when you use debtors what       10:35:51
21          do you intend to mean?                   10:35:53
22          Q.    My question, Mr. Keglevic, was     10:36:17
23    whether the debtors, plural, had reached       10:36:19
24    out to Nextera pre-petition about either       10:36:24
25    a sale or an equity contribution, and I        10:36:37
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 62

| | | |
|---|---|---|
| 1 | think you said no, they didn't and you | 10:36:43 |
| 2 | explained why an equity contribution | 10:36:44 |
| 3 | wouldn't have made sense to you, but you | 10:36:46 |
| 4 | confirmed that on the sale side you | 10:36:49 |
| 5 | didn't reach out. | 10:36:52 |
| 6 | Would you give me a different | 10:36:53 |
| 7 | answer if I asked that question specific | 10:36:55 |
| 8 | to EFIH?  Wearing your EFIH hat, did you | 10:36:57 |
| 9 | or anyone else at EFIH reach out to | 10:37:02 |
| 10 | Nextera pre-petition about a possible | 10:37:05 |
| 11 | purchase by Nextera of EFIH? | 10:37:07 |
| 12 | A.    No. | 10:37:12 |
| 13 | Q.    Okay.  And you mentioned that | 10:37:12 |
| 14 | ultimately Nextera came in with, I think | 10:37:17 |
| 15 | your term was unsolicited -- | 10:37:20 |
| 16 | A.    If I may. | 10:37:25 |
| 17 | Q.    Sure. | 10:37:25 |
| 18 | A.    Unsolicited with respect to | 10:37:26 |
| 19 | the company did not solicit that bid.  I | 10:37:28 |
| 20 | think some of the creditors may have | 10:37:30 |
| 21 | worked with them and solicited that | 10:37:34 |
| 22 | transaction, but it was unsolicited from | 10:37:36 |
| 23 | EFIH's standpoint. | 10:37:39 |
| 24 | Q.    And in fact, Nextera made two | 10:37:40 |
| 25 | different proposals, right, they made one | 10:37:42 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | initial proposal and then they made a | 10:37:44 |
| 2 | second one, right? | 10:37:46 |
| 3 | A.    I lost track of some of the | 10:37:47 |
| 4 | bidding, but I think that's right.  I | 10:37:51 |
| 5 | don't recall exactly how many bids | 10:37:53 |
| 6 | they've made. | 10:37:55 |
| 7 | Q.    And the second one had an | 10:37:56 |
| 8 | assumed valuation that underlied it -- | 10:37:58 |
| 9 | underlay it, or underlied it, whatever | 10:38:02 |
| 10 | the past tense is, for the enterprise | 10:38:04 |
| 11 | value of Oncor, correct? | 10:38:08 |
| 12 | A.    Their last bid, which is the | 10:38:10 |
| 13 | last public bid on the record, we | 10:38:13 |
| 14 | interpret as having a terminal enterprise | 10:38:17 |
| 15 | value of Oncor of approximately $18 | 10:38:20 |
| 16 | billion. | 10:38:23 |
| 17 | Q.    And let's just make sure we | 10:38:23 |
| 18 | have a clear record.  You were very | 10:38:25 |
| 19 | helpful earlier in telling me that by | 10:38:27 |
| 20 | terminal enterprise value you meant a | 10:38:29 |
| 21 | value of 100 percent of Oncor.  So to | 10:38:33 |
| 22 | figure out what EFIH was worth, you would | 10:38:37 |
| 23 | have to multiply that by .80.  I take it | 10:38:40 |
| 24 | we're doing an apples-to-apples | 10:38:44 |
| 25 | comparison now?  You understood, the | 10:38:47 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

1    company understands that the last bid by                    10:38:50

2    Nextera assumes a terminal equity value                     10:38:52

3    for 100 percent of Oncor of -- I'm sorry,                   10:38:56

4    terminal enterprise value for Oncor of 18                   10:39:00

5    billion?                                                    10:39:03

6            MR. HOWELL:  Object to form                         10:39:04

7        and foundation.                                         10:39:05

8        A.    We -- the last Nextera bid                        10:39:06

9    reflected what we consider a terminal                       10:39:09

10   enterprise value of $18 billion.  That                      10:39:11

11   bid covers 100 percent of the value of                      10:39:14

12   Oncor.  Just to get technical so we're                      10:39:17

13   not confused before, from that amount we                    10:39:20

14   would subtract the amount of debt, which                    10:39:22

15   is roughly $6.2 billion that exists                         10:39:24

16   within the Oncor ring-fence, and that                       10:39:27

17   gives you the amount available for                          10:39:30

18   equity, and that that amount would have                     10:39:32

19   to be multiplied by 80 percent to get to                    10:39:34

20   the amount that would be available to the                   10:39:36

21   EFH side to cover any of its obligations.                   10:39:39

22       Q.    Again, very helpful.  I want                      10:39:43

23   to make sure I understand this correctly.                   10:39:45

24   It is an apple-to-apple comparison, the                     10:39:49

25   18, which is what you understand the                        10:39:52

| | |
|---|---|
| 1    Nextera bid assumes, versus the 16.5 | 10:39:53 |
| 2    which was the underlying assumption for | 10:39:58 |
| 3    the RSA at the time of the bankruptcy? | 10:40:02 |
| 4        A.    They are apples-to-apples | 10:40:07 |
| 5    numbers and they both represent what we | 10:40:09 |
| 6    believe to be a hundred percent of the | 10:40:11 |
| 7    terminal value implicit in the bids. | 10:40:13 |
| 8    Obviously, the 16.5 bid was also raised | 10:40:15 |
| 9    during the process, but the RSA started | 10:40:18 |
| 10    at 16.5. | 10:40:21 |
| 11        Q.    And at 18 billion, assuming -- | 10:40:22 |
| 12    well let's back up. | 10:40:26 |
| 13            The debtors did not sign up | 10:40:26 |
| 14    the Nextera proposal, right? | 10:40:28 |
| 15        A.    We did not. | 10:40:30 |
| 16        Q.    Okay.  And instead, the | 10:40:31 |
| 17    debtors have sought to engage in a | 10:40:33 |
| 18    marketing process, right? | 10:40:35 |
| 19        A.    We have. | 10:40:36 |
| 20        Q.    And I'm going to ask a leading | 10:40:36 |
| 21    question reflecting an assumption.  I | 10:40:41 |
| 22    assume, you've said you're a fiduciary | 10:40:43 |
| 23    for the estate, if you thought Nextera | 10:40:46 |
| 24    was the best possible offer and it wasn't | 10:40:48 |
| 25    going to get better than 18 billion, you | 10:40:53 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | would have signed them up at least as a | 10:40:56 |
| 2 | stalking-horse, right? | 10:40:58 |
| 3 | MR. HOWELL:  Object to form. | 10:41:03 |
| 4 | A.    We certainly would have | 10:41:04 |
| 5 | strongly considered signing up a bid that | 10:41:05 |
| 6 | we thought was high as a stalking-horse. | 10:41:07 |
| 7 | But when you get into the stalking-horse | 10:41:11 |
| 8 | you get into the strategy and what the | 10:41:12 |
| 9 | court will allow.  We, you know, some of | 10:41:14 |
| 10 | it is not just price, it's terms. | 10:41:18 |
| 11 | Q.    Okay. | 10:41:20 |
| 12 | A.    So, you know, we at this point | 10:41:21 |
| 13 | believed that a transparent, open | 10:41:24 |
| 14 | process, not just based on Nextera, but | 10:41:28 |
| 15 | based on some other comments or levels of | 10:41:31 |
| 16 | interest we received from other parties | 10:41:34 |
| 17 | in the marketplace indicate that while -- | 10:41:36 |
| 18 | you know, we're -- the way to maximize | 10:41:41 |
| 19 | value for the estate as we sit here today | 10:41:43 |
| 20 | is to go through a process and not just | 10:41:45 |
| 21 | accept the Nextera bid. | 10:41:49 |
| 22 | Q.    Right.  I think what you're | 10:41:51 |
| 23 | telling me, but I don't want to put words | 10:41:53 |
| 24 | in your mouth, but tell me whether I've | 10:41:55 |
| 25 | got it right, is the debtors believe and | 10:41:57 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | you, Paul Keglevic, as chief | 10:42:02 |
| 2 | restructuring officer personally believe | 10:42:04 |
| 3 | that the result of the bidding process | 10:42:12 |
| 4 | you have undertaken is likely to lead to | 10:42:13 |
| 5 | an overall transaction that provides more | 10:42:16 |
| 6 | value rather than less value than the | 10:42:21 |
| 7 | Nextera proposal based on an 18 billion | 10:42:24 |
| 8 | terminal enterprise valuation for Oncor? | 10:42:28 |
| 9 | MR. HOWELL:  Object to form. | 10:42:32 |
| 10 | A.    I don't have -- the nice part | 10:42:33 |
| 11 | of my job is I don't have to assume what | 10:42:34 |
| 12 | the outcome of the process is.  We do | 10:42:36 |
| 13 | think a competitive process is likely to | 10:42:39 |
| 14 | get us, as we sit here today, the best | 10:42:41 |
| 15 | price with the best terms.  So we might | 10:42:44 |
| 16 | not improve the price, we might improve | 10:42:47 |
| 17 | the terms, we might not improve either, | 10:42:49 |
| 18 | but we think having some competitive | 10:42:51 |
| 19 | pressure on a bidder is the best way to | 10:42:53 |
| 20 | get the best result for the estate. | 10:42:56 |
| 21 | Q.    But let's assume you don't get | 10:42:57 |
| 22 | a penny better, let's just for the sake | 10:43:01 |
| 23 | of my next series of questions assume | 10:43:03 |
| 24 | nothing gets even one penny better, | 10:43:05 |
| 25 | either on terms or price.  At 18 billion | 10:43:07 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | for total enterprise value, it may very | 10:43:12 |
| 2 | well be that EFIH is today able to pay | 10:43:15 |
| 3 | 100 percent -- let's back up.  Let's lay | 10:43:23 |
| 4 | a predicate.  No, let -- let me go back. | 10:43:26 |
| 5 | EFIH has already paid off all | 10:43:32 |
| 6 | the principal of the first lien debt that | 10:43:35 |
| 7 | was owed as of the petition date, right? | 10:43:37 |
| 8 | A.    Correct. | 10:43:39 |
| 9 | Q.    Okay.  Had -- I'm now not | 10:43:39 |
| 10 | going to ask about today, I'm going to go | 10:43:44 |
| 11 | back in time. | 10:43:45 |
| 12 | You've already testified that | 10:43:46 |
| 13 | the debtors didn't reach out and didn't | 10:43:47 |
| 14 | do a formal marketing with strategic | 10:43:49 |
| 15 | investors pre-petition.  The debtors | 10:43:52 |
| 16 | don't know, am I right, whether as of the | 10:43:54 |
| 17 | beginning of April of 2014 Nextera or | 10:43:58 |
| 18 | others might have been prepared to pay a | 10:44:04 |
| 19 | price for EFIH's interest in Oncor that | 10:44:09 |
| 20 | was sufficient to pay the then | 10:44:14 |
| 21 | outstanding first lien debt and all make | 10:44:16 |
| 22 | wholes and other premiums, the | 10:44:19 |
| 23 | outstanding second lien debt and all make | 10:44:21 |
| 24 | wholes, and the outstanding PIK debt and | 10:44:23 |
| 25 | any other amounts owed to the PIKs? | 10:44:26 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 69

| | |
|---|---|
| 1 | MR. HOWELL:  Object to form. | 10:44:30 |
| 2 | A.    I'm sorry, let me try to | 10:44:31 |
| 3 | rephrase.  When we filed the RSA at 16.5 | 10:44:32 |
| 4 | we didn't know if we'd be able to pay all | 10:44:35 |
| 5 | the existing debt obligations at EFIH and | 10:44:37 |
| 6 | the make wholes? | 10:44:41 |
| 7 | Q.    No. | 10:44:42 |
| 8 | A.    Then I -- please rephrase. | 10:44:43 |
| 9 | Q.    Let me try to take it and | 10:44:44 |
| 10 | break it up into steps.  At 18 billion, | 10:44:49 |
| 11 | if you can't improve the price, that may | 10:44:51 |
| 12 | provide sufficient value to pay all EFIH | 10:44:54 |
| 13 | liabilities including the make whole at | 10:44:59 |
| 14 | EFIH if the debtors lose this litigation, | 10:45:02 |
| 15 | right? | 10:45:05 |
| 16 | A.    Well, you said make whole | 10:45:07 |
| 17 | singular.  And there is make whole at the | 10:45:09 |
| 18 | second lien level, there's make whole at | 10:45:14 |
| 19 | the PIK level and then there's the item | 10:45:15 |
| 20 | of post-petition interest on the PIK | 10:45:17 |
| 21 | debts. | 10:45:20 |
| 22 | So I'm trying -- I want to be | 10:45:21 |
| 23 | responsive to your question, but those | 10:45:22 |
| 24 | are material amounts that could change my | 10:45:24 |
| 25 | answer. | 10:45:26 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 70

```
 1          Q.    Okay.  Why don't we -- let me        10:45:26
 2     break it up, okay?  And I appreciate            10:45:29
 3     that.  It's a -- the question was too           10:45:32
 4     broad and I appreciate the clarification.       10:45:34
 5     I'm going to take it in steps.                  10:45:40
 6               Assume that Nextera ends up           10:45:41
 7     being the prevailing bidder and its bid         10:45:46
 8     ends up being exactly what it has already       10:45:49
 9     put on the table, the implied $18 billion       10:45:51
10     total enterprise value for Oncor.  That         10:45:55
11     price may well be sufficient to pay off         10:46:00
12     the EFIH DIP loan, the make whole that is       10:46:05
13     asserted by a majority of the EFIH first        10:46:13
14     lienholders, all principal and accrued          10:46:18
15     interest on the second liens, and all           10:46:22
16     principal and accrued interest, including       10:46:25
17     post-petition interest on the PIKs?             10:46:29
18               MR. HOWELL:  Object to form.          10:46:33
19          A.    It's a calculation I'd be            10:46:34
20     happy to do for you, but I think when you       10:46:45
21     say -- so that is -- it requires numbers        10:46:49
22     that I don't have in front of me.  That's       10:46:53
23     5.4 billion, 2.1 billion, that's 7.5, the       10:46:55
24     PIKs are about 1.7 without -- depending         10:47:00
25     on when I settle post-petition interest         10:47:03
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | continues, so I'm up to 9.1, and then I | 10:47:06 |
| 2 | have to add in the make wholes which I | 10:47:13 |
| 3 | don't even know if the parties have | 10:47:15 |
| 4 | agreement as to what the make whole | 10:47:16 |
| 5 | claims are.  But I think if you add in | 10:47:18 |
| 6 | the DIP at the full 5.4, I don't think | 10:47:20 |
| 7 | that works. | 10:47:23 |
| 8 | Q.    EFIH has cash, does it not? | 10:47:24 |
| 9 | A.    It does. | 10:47:27 |
| 10 | Q.    How much? | 10:47:27 |
| 11 | A.    As we sit here today, I don't | 10:47:29 |
| 12 | know, but -- I don't recall the number, | 10:47:30 |
| 13 | but that would also go into the equation, | 10:47:34 |
| 14 | but, you know, those are -- that's a | 10:47:36 |
| 15 | determination that at 18 billion we could | 10:47:38 |
| 16 | do the math and put the numbers into the | 10:47:40 |
| 17 | formula.  I just think as I sit here | 10:47:43 |
| 18 | today it might not clear the stack with | 10:47:45 |
| 19 | the assumptions you made. | 10:47:48 |
| 20 | Q.    Okay.  I think you heard my | 10:47:49 |
| 21 | assumptions slightly different than I | 10:47:51 |
| 22 | made them.  I'm making an assumption | 10:47:53 |
| 23 | right now in the initial question I asked | 10:47:56 |
| 24 | you of only payment of a make whole to | 10:47:58 |
| 25 | the first liens, not payment of a make | 10:48:00 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 72

| 1 | whole to the second liens and not payment | 10:48:03 |
| 2 | of a make whole or other premium to the | 10:48:04 |
| 3 | PIKs.  Does that change your answer? | 10:48:07 |
| 4 | A.    It may.  Are you willing to | 10:48:09 |
| 5 | give me the amount of that make whole and | 10:48:11 |
| 6 | the amount of cash we have on the balance | 10:48:13 |
| 7 | sheet?  If this is a math exercise, I'm | 10:48:15 |
| 8 | just -- I could do it for you. | 10:48:18 |
| 9 | Q.    Let us at a break, I don't | 10:48:19 |
| 10 | want to do it now, try to give you a | 10:48:23 |
| 11 | blank piece of paper and something and | 10:48:25 |
| 12 | maybe we can, we can do it.  I don't know | 10:48:26 |
| 13 | how much cash you have today, Mr. | 10:48:29 |
| 14 | Keglevic, I mean you'd be in a better | 10:48:31 |
| 15 | position to answer that. | 10:48:33 |
| 16 | A.    I can probably get that. | 10:48:33 |
| 17 | Q.    Than I would.  But let me | 10:48:35 |
| 18 | rephrase the question and let me focus, | 10:48:36 |
| 19 | and I'm going to put emphasis on a word | 10:48:38 |
| 20 | and the word I'm going to put emphasis is | 10:48:41 |
| 21 | may, may. | 10:48:45 |
| 22 | If the prevailing bid ends up | 10:48:46 |
| 23 | being Nextera not for one penny more than | 10:48:53 |
| 24 | they've already offered, 18 billion, it | 10:48:56 |
| 25 | may be the case that EFIH is able to pay | 10:48:58 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 73

| | | |
|---|---|---|
| 1 | all of its liabilities other than any | 10:49:07 |
| 2 | make whole claim by the seconds and any | 10:49:10 |
| 3 | make whole claim by the PIKs, right? | 10:49:13 |
| 4 | MR. HOWELL: Object to form. | 10:49:20 |
| 5 | A. I don't want to -- you're | 10:49:21 |
| 6 | giving me a hypothetical that is very | 10:49:22 |
| 7 | easily answered with actual facts and I | 10:49:23 |
| 8 | just -- I don't want to give you the | 10:49:25 |
| 9 | wrong answer. | 10:49:27 |
| 10 | Q. Okay. I'd be happy to go | 10:49:28 |
| 11 | through the math exercise with you, my | 10:49:35 |
| 12 | only qualm is I don't know the amount of | 10:49:37 |
| 13 | cash you're holding. Do you have a sense | 10:49:40 |
| 14 | of it that you could plug in? | 10:49:41 |
| 15 | A. Sure. | 10:49:43 |
| 16 | Q. Okay. Would it be helpful if | 10:49:43 |
| 17 | I gave you a blank piece of paper or a | 10:49:45 |
| 18 | calculator? Why don't we do a blank | 10:49:48 |
| 19 | piece of paper and create a -- | 10:49:50 |
| 20 | A. Not now, because I don't have | 10:49:52 |
| 21 | the cash. I'd have to send an email. | 10:49:53 |
| 22 | Q. Okay. Can I ask you to do me | 10:49:55 |
| 23 | a favor, which is during the next break | 10:49:56 |
| 24 | send an email to someone in your staff | 10:49:59 |
| 25 | and have them get you the cash? | 10:50:01 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 74

| | | |
|---|---|---|
| 1 | A.    Sure. | 10:50:05 |
| 2 | Q.    Let's come back to this later | 10:50:06 |
| 3 | in time. | 10:50:09 |
| 4 | MR. ANKER:  Actually, there's | 10:50:12 |
| 5 | five minutes left on the tape, why | 10:50:15 |
| 6 | don't we take a break now. | 10:50:17 |
| 7 | THE WITNESS:  Okay. | 10:50:18 |
| 8 | THE VIDEOGRAPHER:  One moment, | 10:50:19 |
| 9 | please, watch your microphones. | 10:50:20 |
| 10 | Here now marks the end of tape 1 of | 10:50:21 |
| 11 | the deposition of Mr. Paul | 10:50:23 |
| 12 | Keglevic, the time is 10:50 a.m., | 10:50:25 |
| 13 | we're now off the record. | 10:50:28 |
| 14 | (A recess was taken.) | 10:50:38 |
| 15 | THE VIDEOGRAPHER:  Here now | 11:04:27 |
| 16 | marks the beginning of tape 2 of | 11:04:34 |
| 17 | the deposition of Mr. Paul | 11:04:40 |
| 18 | Keglevic, the time is 11:04 a.m., | 11:04:42 |
| 19 | we're back on the record. | 11:04:45 |
| 20 | Q.    Mr. Keglevic, during the break | 11:04:49 |
| 21 | were you able to gather any information | 11:04:50 |
| 22 | as to the amount of cash at EFIH? | 11:04:51 |
| 23 | A.    I sent an email. | 11:04:54 |
| 24 | Q.    Let me -- I am told that as of | 11:04:55 |
| 25 | October of this year the debtors | 11:05:00 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | represented that they had 1 point -- EFIH | 11:05:05 |
| 2 | had $1.2 billion in cash.  Does that seem | 11:05:08 |
| 3 | out of range for you? | 11:05:15 |
| 4 | A.    I'd like to see the numbers. | 11:05:16 |
| 5 | I just don't recall what EFIH's cash | 11:05:18 |
| 6 | balance was specifically. | 11:05:21 |
| 7 | Q.    Can you do an analysis for me | 11:05:22 |
| 8 | at one point -- let's assume it was 1.2 | 11:05:24 |
| 9 | billion in cash.  You want me to give you | 11:05:29 |
| 10 | a piece of paper? | 11:05:31 |
| 11 | A.    Sure. | 11:05:32 |
| 12 | Q.    Now I think you told me that | 11:05:54 |
| 13 | the implied enterprise value for Oncor | 11:05:56 |
| 14 | implied by the Nextera bid was 18 | 11:06:00 |
| 15 | billion, right? | 11:06:04 |
| 16 | A.    I did. | 11:06:05 |
| 17 | Q.    And there's 6.2 billion you | 11:06:06 |
| 18 | think in debt at Oncor? | 11:06:10 |
| 19 | A.    That's in my rough | 11:06:13 |
| 20 | approximation, yes. | 11:06:15 |
| 21 | Q.    So that leaves you with about | 11:06:16 |
| 22 | 11.8? | 11:06:18 |
| 23 | A.    Our math agrees so far. | 11:06:19 |
| 24 | Q.    And you multiply that times | 11:06:20 |
| 25 | .8, right? | 11:06:23 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | A.    I do. | 11:06:24 |
| 2 | Q.    And do you get to 9.44 | 11:06:24 |
| 3 | billion? | 11:06:27 |
| 4 | A.    I don't know why you needed | 11:06:30 |
| 5 | me, sir, you're doing great. | 11:06:31 |
| 6 | Q.    And then we add the cash, | 11:06:33 |
| 7 | right, which I'm going to ask you to | 11:06:35 |
| 8 | assume is 1.2, right? | 11:06:37 |
| 9 | A.    I'll add 1.2 at your request. | 11:06:39 |
| 10 | Q.    Okay, what do we come to? | 11:06:45 |
| 11 | A.    10.640. | 11:06:47 |
| 12 | Q.    Seems right.  Now why don't | 11:06:48 |
| 13 | you walk through the liability side and | 11:06:50 |
| 14 | I'll let you do it and -- | 11:06:52 |
| 15 | A.    Well the only numbers I | 11:06:57 |
| 16 | recall, we have a DIP of 5.4, that was | 11:06:59 |
| 17 | your assumption we paid that off.  I | 11:07:01 |
| 18 | don't know what else you want me to | 11:07:04 |
| 19 | include in the stack. | 11:07:05 |
| 20 | Q.    Use the second -- how about | 11:07:05 |
| 21 | the second lien pre-petition balance and | 11:07:08 |
| 22 | the PIK principal pre-petition balance? | 11:07:10 |
| 23 | A.    I think those are about 2150 | 11:07:13 |
| 24 | and a billion seven. | 11:07:16 |
| 25 | Q.    I thought it was a billion 57, | 11:07:19 |

| | | |
|---|---|---|
| 1 | but use a billion seven. | 11:07:22 |
| 2 | A.    That's why I hate doing these | 11:07:23 |
| 3 | without actual numbers, but you may very | 11:07:25 |
| 4 | well be right.  So when I add those | 11:07:27 |
| 5 | together, I get 9 billion 250. | 11:07:29 |
| 6 | Q.    9 billion 250 for, I'm sorry, | 11:07:38 |
| 7 | how much, for total liabilities? | 11:07:41 |
| 8 | A.    For my total debt. | 11:07:42 |
| 9 | Q.    And how much were the assets? | 11:07:44 |
| 10 | A.    10640. | 11:07:46 |
| 11 | Q.    And one thing we've not added | 11:07:48 |
| 12 | in obviously is the make whole at the | 11:07:51 |
| 13 | EFIH first lien.  Why don't you for the | 11:07:54 |
| 14 | sake of right now assume it was as high | 11:07:57 |
| 15 | as 450 million.  There's enough value | 11:08:00 |
| 16 | there to cover that 450 million, is there | 11:08:04 |
| 17 | not? | 11:08:07 |
| 18 | MR. HOWELL:  Object to form. | 11:08:07 |
| 19 | A.    There is under this | 11:08:08 |
| 20 | calculation.  Of course we're using a lot | 11:08:10 |
| 21 | of approximations.  We don't know when | 11:08:12 |
| 22 | the date the settlement will be, or you | 11:08:14 |
| 23 | -- under this calculation there is value | 11:08:18 |
| 24 | left, but -- | 11:08:20 |
| 25 | Q.    To cover the -- to cover the | 11:08:22 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 78

| | | |
|---|---|---|
| 1 | first lien make whole assuming it's 450 | 11:08:25 |
| 2 | billion, right? | 11:08:28 |
| 3 | A.   Assuming it's payable and it's | 11:08:28 |
| 4 | 450 million. | 11:08:31 |
| 5 | Q.   I think I said billion.  There | 11:08:31 |
| 6 | wouldn't be enough at that.  450 million? | 11:08:33 |
| 7 | A.   Assuming it's payable and it's | 11:08:36 |
| 8 | 450 million, yes, under this calculation. | 11:08:38 |
| 9 | MR. ANKER:  Can we mark that | 11:08:42 |
| 10 | as Exhibit number 4, please.  Can I | 11:08:44 |
| 11 | just put that here. | 11:08:46 |
| 12 | (Keglevic Exhibit 4 for | 11:08:47 |
| 13 | identification, calculation | 11:08:47 |
| 14 | performed by Mr. Keglevic.) | 11:08:51 |
| 15 | Q.   What are you writing? | 11:08:51 |
| 16 | A.   I just labeled the 450 and I'm | 11:08:52 |
| 17 | just doing the calculation that I did in | 11:08:59 |
| 18 | my head to show that there would be | 11:09:02 |
| 19 | excess value.  So in total there's 10 | 11:09:04 |
| 20 | billion 640 of asset value, and there's | 11:09:06 |
| 21 | 925 plus the assumed make whole of 450 | 11:09:10 |
| 22 | makes 9-7 of calls on that amount which | 11:09:13 |
| 23 | means that there is $960 million of | 11:09:16 |
| 24 | excess. | 11:09:19 |
| 25 | Q.   Okay. | 11:09:19 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | MR. HOWELL:  Just for the | 11:09:21 |
| 2 | record, we would object to the | 11:09:22 |
| 3 | exhibit being put forward for any | 11:09:24 |
| 4 | purpose other than it was a | 11:09:26 |
| 5 | hypothetical calculation done by | 11:09:29 |
| 6 | Mr. Keglevic based on a series of | 11:09:30 |
| 7 | assumptions and hypotheticals | 11:09:32 |
| 8 | provided by Mr. Anker during the | 11:09:34 |
| 9 | deposition. | 11:09:36 |
| 10 | MR. ANKER:  You reserve all of | 11:09:37 |
| 11 | your rights, Mr. Howell, and I'm | 11:09:38 |
| 12 | prepared to stipulate you reserve | 11:09:40 |
| 13 | them. | 11:09:42 |
| 14 | Q.   Mr. Keglevic, I think I asked | 11:09:50 |
| 15 | you earlier about whether Project Olympus | 11:09:51 |
| 16 | in its analysis assumed that the first | 11:09:58 |
| 17 | lien debt would be paid off over time | 11:10:03 |
| 18 | including with premiums and I think you | 11:10:08 |
| 19 | testified you didn't recollect that there | 11:10:10 |
| 20 | were premiums to be paid.  Let me show | 11:10:12 |
| 21 | you a document and see if it refreshes | 11:10:16 |
| 22 | your recollection. | 11:10:17 |
| 23 | MR. ANKER:  We'll mark this as | 11:10:19 |
| 24 | Exhibit number 5, EFH 00002551 | 11:10:20 |
| 25 | through 2621 inclusive.  This is | 11:10:25 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Keglevic Exhibit 5. | 11:10:29 |
| 2 | (Keglevic Exhibit 5 for | 11:10:32 |
| 3 | identification, Bates stamped EFH | 11:10:22 |
| 4 | 00002551 through 00002621.) | 11:10:23 |
| 5 | MR. HOWELL:  Object to the | 11:10:33 |
| 6 | extent it mischaracterizes prior | 11:10:34 |
| 7 | questions and answers. | 11:10:36 |
| 8 | Q.    Did I mischaracterize your | 11:10:36 |
| 9 | prior testimony, Mr. Keglevic?  If I did, | 11:10:38 |
| 10 | I may not even need to show you the | 11:10:40 |
| 11 | document. | 11:10:42 |
| 12 | A.    I do not recall when we were | 11:10:42 |
| 13 | looking at blend and extend that there | 11:10:44 |
| 14 | was an assumption in the blend and extend | 11:10:46 |
| 15 | that we would pay a premium. | 11:10:48 |
| 16 | Q.    Okay.  Let me walk you through | 11:10:50 |
| 17 | it quickly if I could, all right.  First, | 11:10:52 |
| 18 | could you turn to page number 2.  You | 11:10:54 |
| 19 | recollect I asked you this morning that | 11:11:02 |
| 20 | whether in fact the companies prepared | 11:11:04 |
| 21 | decks that they presented to their | 11:11:12 |
| 22 | creditors stating that EFIH would be, is | 11:11:14 |
| 23 | solvent?  And do you see the language on | 11:11:21 |
| 24 | page 2, recapitalize a solvent EFH/EFIH | 11:11:22 |
| 25 | out of court? | 11:11:26 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
1          A.    Yes, I do not take that as a          11:11:27

2    representation and I would tell you that          11:11:29

3    that had a lot of assumptions and                11:11:32

4    assuming some new equity came in.                11:11:34

5          Q.    Were you involved in the             11:11:40

6    preparation of this document?                    11:11:41

7          A.    I reviewed it and I believe I        11:11:42

8    generally presented it.                          11:11:46

9          Q.    Let's turn toward the back,          11:11:47

10   Mr. Keglevic, to page 44 if we could.            11:11:50

11         A.    I'm there.                            11:12:02

12         Q.    Okay.  And you see it's              11:12:03

13   entitled restructuring transaction?             11:12:06

14         A.    Yes.                                  11:12:07

15         Q.    And as you note, this assumed        11:12:07

16   new cash of $2 billion came in the door,         11:12:11

17   right?                                            11:12:14

18         A.    Yes.                                  11:12:14

19         Q.    Okay.  And now let's look at         11:12:14

20   the column on the right, EFIH                     11:12:18

21   recapitalization.  Do you see that, sir?         11:12:20

22         A.    Yes.                                  11:12:22

23         Q.    Okay.  And do you see the            11:12:22

24   second bullet, 2 billion of new cash used        11:12:24

25   for debt reduction, right?                        11:12:27
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 82

| | | |
|---|---|---|
| 1 | A.    Yes. | 11:12:32 |
| 2 | Q.    And do you see it shows both | 11:12:32 |
| 3 | the EFIH 10 percent first liens, the EFIH | 11:12:33 |
| 4 | 11 percent second liens, the EFIH 11.75 | 11:12:37 |
| 5 | second liens, and the EFIH 11.25/12.25 | 11:12:42 |
| 6 | PIK notes, all being retired in each case | 11:12:48 |
| 7 | with a payment of premium, right? | 11:12:52 |
| 8 | MR. HOWELL:  Object to form. | 11:12:55 |
| 9 | A.    Yes, I believe this is how we | 11:12:57 |
| 10 | would elect at call dates -- | 11:12:59 |
| 11 | Q.    Right. | 11:13:03 |
| 12 | A.    -- to repay the debt, and at | 11:13:03 |
| 13 | the call dates there were premiums | 11:13:05 |
| 14 | associated with the call dates. | 11:13:07 |
| 15 | Q.    Okay. | 11:13:08 |
| 16 | A.    But I -- your question to me | 11:13:09 |
| 17 | was on the blend and extend transaction | 11:13:10 |
| 18 | was there implicit premium.  This has | 11:13:12 |
| 19 | nothing to do with the blend and extend. | 11:13:15 |
| 20 | After paying down these premiums, we were | 11:13:16 |
| 21 | also negotiating the remaining debt at a | 11:13:19 |
| 22 | lower rate and that was what I was | 11:13:21 |
| 23 | referring to in blend and extend.  This | 11:13:23 |
| 24 | is just simply debt reduction premiums on | 11:13:24 |
| 25 | call dates that had specific amounts that | 11:13:27 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 83

|     |                                              |          |
| --- | -------------------------------------------- | -------- |
| 1   | were due.                                    | 11:13:29 |
| 2   | Q.   Indeed, if you look at the              | 11:13:33 |
| 3   | third bullet, post-emergence, the            | 11:13:34 |
| 4   | assumption was the remaining first lien      | 11:13:37 |
| 5   | debt would be refinanced, as well as the     | 11:13:39 |
| 6   | second lien debt, at lower interest          | 11:13:41 |
| 7   | rates, and it says in the second             | 11:13:42 |
| 8   | sentence, does it not, incremental debt      | 11:13:46 |
| 9   | raised in amounts equal to call premiums,    | 11:13:49 |
| 10  | right?                                        | 11:13:51 |
| 11  | A.   It does.  That's what this              | 11:13:56 |
| 12  | document says.  I'm trying to recall what    | 11:13:57 |
| 13  | exactly we had in mind there.  I don't       | 11:13:59 |
| 14  | know if it's referring to the call           | 11:14:04 |
| 15  | premiums up above, because there aren't      | 11:14:06 |
| 16  | call premiums associated with the blend      | 11:14:10 |
| 17  | and extend to the best of my knowledge.      | 11:14:14 |
| 18  | So that sentence is a non sequitur to me     | 11:14:16 |
| 19  | as I read it today.                          | 11:14:20 |
| 20  | Q.   I asked Mr. Horton about it             | 11:14:21 |
| 21  | and he had a recollection of this.  Do       | 11:14:22 |
| 22  | you have any reason to believe his           | 11:14:24 |
| 23  | testimony would be inaccurate?               | 11:14:26 |
| 24  | A.   I don't.  I can only state             | 11:14:27 |
| 25  | what I think.                                 | 11:14:29 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 84

```
 1        Q.    But you have no reason to          11:14:30
 2   think Mr. Horton, who was controller, has     11:14:32
 3   a misunderstanding of what the discussion     11:14:33
 4   was and what this document means, right?      11:14:35
 5              MR. HOWELL:  Object to form.        11:14:39
 6        A.    Mr. Horton is the treasurer.        11:14:40
 7        Q.    I'm sorry.                          11:14:41
 8        A.    And, you know, I -- his             11:14:42
 9   recollection is his recollection and mine     11:14:44
10   is mine.  I don't even -- you know, this      11:14:46
11   says call premiums which is, if we had        11:14:49
12   used all of the call premiums up above        11:14:52
13   that we were entitled to, I don't know        11:14:55
14   how for the remaining debt call premiums      11:14:57
15   have anything to do with the existing         11:15:01
16   debt that aren't subject to call              11:15:03
17   premiums.  Unless it's assuming that          11:15:06
18   further down the road there would be some     11:15:08
19   additional raising of debt and taking of      11:15:10
20   calls, I'd have to look at the underlying     11:15:12
21   assumptions.                                  11:15:14
22        Q.    That was Mr. Horton's              11:15:15
23   testimony, which is that -- I mean let me     11:15:16
24   tell you what I think it was and see if       11:15:18
25   it's consistent.  That the premise behind     11:15:20
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | this was that during the bankruptcy of | 11:15:23 |
| 2 | TCEH $2 billion would be used to reduce | 11:15:27 |
| 3 | EFIH debt, that wouldn't eliminate all of | 11:15:31 |
| 4 | the EFIH first lien debt and second lien | 11:15:33 |
| 5 | debt, there would be additional, and that | 11:15:36 |
| 6 | additional debt would be refinanced | 11:15:38 |
| 7 | post-emergence of TCEH and then both | 11:15:40 |
| 8 | during the bankruptcy 2 billion and | 11:15:45 |
| 9 | post-bankruptcy what would be paid would | 11:15:47 |
| 10 | be, when the refinancing was done, | 11:15:51 |
| 11 | whatever premiums were due under the | 11:15:55 |
| 12 | underlying indentures for the old debt. | 11:15:57 |
| 13 | Is that contrary to your understanding? | 11:16:01 |
| 14 | A.    No.  When you say it like that | 11:16:02 |
| 15 | it's whatever call premiums would be due, | 11:16:04 |
| 16 | but there would still be debt that we | 11:16:07 |
| 17 | could not call that we would refinance at | 11:16:08 |
| 18 | 6 and 75 that would not have any premiums | 11:16:10 |
| 19 | included.  We did not have the ability to | 11:16:15 |
| 20 | call all of the debt. | 11:16:17 |
| 21 | Q.    So you -- | 11:16:19 |
| 22 | A.    Prior to retirement. | 11:16:20 |
| 23 | Q.    So your recollection is that | 11:16:21 |
| 24 | some of the debt would be refinanced | 11:16:23 |
| 25 | without paying of any premium on the old | 11:16:26 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 86

| | | |
|---|---|---|
| 1 | debt? | 11:16:28 |
| 2 | A.    If we -- yeah, we assumed we | 11:16:29 |
| 3 | could renegotiate a 6 and a 7.5 percent | 11:16:32 |
| 4 | coupon on the old debt without premium. | 11:16:36 |
| 5 | To the extent we called it, we would of | 11:16:38 |
| 6 | course follow the indenture which said a | 11:16:41 |
| 7 | call premium was due. | 11:16:43 |
| 8 | Q.    And so to the extent, as you | 11:16:44 |
| 9 | just put it, that you called it, you | 11:16:46 |
| 10 | acknowledge you had an obligation to pay | 11:16:48 |
| 11 | the premium under the indenture, right? | 11:16:50 |
| 12 | MR. HOWELL:  Object to form. | 11:16:52 |
| 13 | A.    The assumption in this case is | 11:16:53 |
| 14 | that. | 11:16:55 |
| 15 | Q.    Okay.  And that was an | 11:16:55 |
| 16 | assumption made by the company, right? | 11:16:58 |
| 17 | A.    It was. | 11:17:00 |
| 18 | Q.    And an assumption that the | 11:17:00 |
| 19 | company and you believed was reasonable, | 11:17:02 |
| 20 | right? | 11:17:03 |
| 21 | A.    Yes, I think the call premiums | 11:17:04 |
| 22 | are outlined in the indenture and I | 11:17:06 |
| 23 | believe Mr. Horton's recommendation was | 11:17:10 |
| 24 | that was the appropriate application | 11:17:12 |
| 25 | outside of bankruptcy. | 11:17:13 |

```
 1        Q.    Okay.  One of the things I        11:17:15
 2   discussed yesterday with Mr. Horton was      11:18:05
 3   various proposals made in 2013 by both       11:18:09
 4   the EFIH PIKs and the TCEH first lien        11:18:15
 5   creditors, and you recall there were         11:18:22
 6   ongoing discussions with both groups,        11:18:23
 7   right?                                       11:18:25
 8        A.    There were.                       11:18:25
 9        Q.    And it's fair that both groups    11:18:26
10   made proposals to the company that,          11:18:30
11   contrary to Project Olympus, put EFIH        11:18:34
12   into bankruptcy and seek there to            11:18:38
13   refinance the first lien debt without        11:18:41
14   paying any make whole or other premium,      11:18:44
15   right?                                       11:18:46
16        MR. HOWELL:  Object to form.            11:18:51
17        A.    At various times in the           11:18:52
18   negotiations parties, for whatever their     11:18:53
19   reasons were, suggested we file the E        11:18:56
20   side in bankruptcy.                          11:18:59
21        Q.    And as part of that, seek to      11:19:00
22   refinance the EFIH first lien debt           11:19:02
23   without paying a make whole or other         11:19:05
24   premium, right?                              11:19:08
25        A.    I don't know that it was clear    11:19:09
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | that even if we filed bankruptcy that we | 11:19:17 |
| 2 | couldn't negotiate the make whole | 11:19:19 |
| 3 | premiums. | 11:19:23 |
| 4 | Q.    Okay.   Either negotiate the | 11:19:23 |
| 5 | make whole premium down or, | 11:19:25 |
| 6 | alternatively, litigate and avoid payment | 11:19:28 |
| 7 | of the make whole premium, right? | 11:19:31 |
| 8 | A.    Yeah, once we -- once we got, | 11:19:33 |
| 9 | you -- you know, they suggested that a | 11:19:36 |
| 10 | lot of it was the T side specifically | 11:19:39 |
| 11 | that they did not want to infuse money | 11:19:41 |
| 12 | into the company, they wanted to get | 11:19:43 |
| 13 | clean title, they wanted to go through | 11:19:45 |
| 14 | bankruptcy to make sure there were no | 11:19:47 |
| 15 | other issues they were aware of. | 11:19:48 |
| 16 | So, you know, there were many | 11:19:54 |
| 17 | reasons for that, it was not driven by a | 11:19:55 |
| 18 | single issue.  That's the basis of my | 11:19:58 |
| 19 | recollection of those discussions. | 11:20:00 |
| 20 | Q.    And among -- on the T side for | 11:20:01 |
| 21 | the first liens, among those you were | 11:20:06 |
| 22 | having discussions with were their | 11:20:09 |
| 23 | financial advisor, Millstein, right? | 11:20:12 |
| 24 | A.    That was -- he was one of the | 11:20:14 |
| 25 | advisors, yes. | 11:20:16 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 89

| | | |
|---|---|---|
| 1 | MR. ANKER:  Let me ask to mark | 11:20:18 |
| 2 | as Exhibit number 6 a document | 11:20:19 |
| 3 | bearing the Bates numbers KKR | 11:20:21 |
| 4 | 00000823 to 825.  This would be | 11:20:27 |
| 5 | Keglevic Exhibit 6. | 11:20:32 |
| 6 | (Keglevic Exhibit 6 for | 11:20:33 |
| 7 | identification, Bates stamped KKR | 11:20:24 |
| 8 | 00000823 to 00000825.) | 11:20:25 |
| 9 | MR. ANKER:  I apologize, this | 11:20:57 |
| 10 | is the only copy I have.  You're | 11:20:58 |
| 11 | welcome, Mr. Howell, to look over | 11:21:01 |
| 12 | it or we can just take a break and | 11:21:04 |
| 13 | quickly make a couple of copies. | 11:21:07 |
| 14 | MR. HOWELL:  I'll take a look. | 11:21:08 |
| 15 | Thank you.  Okay. | 11:21:10 |
| 16 | Q.    Can you identify the document | 11:21:21 |
| 17 | that's been marked as Keglevic Exhibit 6, | 11:21:22 |
| 18 | Mr. Keglevic? | 11:21:25 |
| 19 | A.    I don't -- it looks like a | 11:21:26 |
| 20 | forwarding of a Millstein one page of a | 11:21:45 |
| 21 | deck. | 11:21:50 |
| 22 | Q.    Okay.  And in that one page of | 11:21:50 |
| 23 | a deck, if I could turn you to that, Mr. | 11:21:51 |
| 24 | Millstein says at the top, "Assuming that | 11:21:55 |
| 25 | prepayment penalties are not payable | 11:21:59 |

| | | |
|---|---|---|
| 1 | under the EFIH indentures on automatic | 11:22:01 |
| 2 | acceleration upon the filing by EFIH for | 11:22:04 |
| 3 | Chapter 11, significant value could be | 11:22:06 |
| 4 | unlocked." | 11:22:09 |
| 5 | Did I read that correctly? | 11:22:10 |
| 6 | A.    That's what it says. | 11:22:11 |
| 7 | Q.    Was that in substance a | 11:22:12 |
| 8 | position that the TCEH first liens | 11:22:17 |
| 9 | articulated to you during the | 11:22:20 |
| 10 | negotiations in 2013? | 11:22:22 |
| 11 | MR. HOWELL:  Object to form. | 11:22:29 |
| 12 | A.    Yeah, I think at different | 11:22:30 |
| 13 | points they suggested that there could be | 11:22:37 |
| 14 | more value, you know, more value through | 11:22:40 |
| 15 | potentially going into bankruptcy and | 11:22:46 |
| 16 | either negotiating or winning make wholes | 11:22:48 |
| 17 | than a settlement outside of bankruptcy. | 11:22:51 |
| 18 | Q.    And -- | 11:22:57 |
| 19 | A.    Just to clarify, but my | 11:22:57 |
| 20 | understanding is that the filing of | 11:22:59 |
| 21 | bankruptcy itself, you know, everybody | 11:23:00 |
| 22 | understood that that did not | 11:23:02 |
| 23 | specifically, you know, we'd still have | 11:23:03 |
| 24 | to deal with the make wholes at some | 11:23:05 |
| 25 | point, it was likely to be litigated. | 11:23:07 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | |
|---|---|
| 1 | Q.    And it's also true that the | 11:23:13 |
| 2 | EFIH PIKs presented the company with term | 11:23:15 |
| 3 | sheets and proposals for the company to | 11:23:18 |
| 4 | file for bankruptcy and then litigate in | 11:23:23 |
| 5 | the hope of avoiding payment of any make | 11:23:25 |
| 6 | whole, right? | 11:23:28 |
| 7 | MR. HOWELL:  Object | 11:23:29 |
| 8 | foundation. | 11:23:30 |
| 9 | A.    The filing of bankruptcy was | 11:23:30 |
| 10 | not to -- driven by the make whole | 11:23:32 |
| 11 | payments. | 11:23:35 |
| 12 | Q.    I didn't ask you that | 11:23:35 |
| 13 | question, Mr. -- | 11:23:37 |
| 14 | A.    Okay.  It sounded like you did | 11:23:37 |
| 15 | in your premise. | 11:23:39 |
| 16 | Q.    I didn't ask you that | 11:23:40 |
| 17 | question, Mr. Keglevic. | 11:23:41 |
| 18 | A.    Then please repeat your | 11:23:42 |
| 19 | question. | 11:23:43 |
| 20 | Q.    Sure.  Am I correct that the | 11:23:43 |
| 21 | PIKs, the EFIH PIKs made presentations to | 11:23:46 |
| 22 | the debtors and urged that the debtors | 11:23:50 |
| 23 | put EFIH in bankruptcy and then litigate | 11:23:53 |
| 24 | to avoid payment of the make wholes? | 11:23:58 |
| 25 | MR. HOWELL:  Object to | 11:24:01 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | foundation. | 11:24:02 |
| 2 | A.    I don't recall specifically, | 11:24:03 |
| 3 | but they very well may have. | 11:24:04 |
| 4 | Q.    Give me just one minute. | 11:24:06 |
| 5 | MR. ANKER:  Let's mark this as | 11:24:53 |
| 6 | Keglevic Exhibit 7 if I could. | 11:24:55 |
| 7 | It's a multipage document bearing | 11:24:56 |
| 8 | the Bates stamp BLKS 00006082 | 11:24:58 |
| 9 | through 6091, inclusive. | 11:25:02 |
| 10 | (Keglevic Exhibit 7 for | 11:25:02 |
| 11 | identification, Bates stamped BLKS | 11:25:00 |
| 12 | 00006082 through 00006091.) | 11:25:02 |
| 13 | Q.    Mr. Keglevic, you're familiar | 11:25:20 |
| 14 | -- let me back up.  Akin Gump represented | 11:25:21 |
| 15 | as legal counsel the first -- the EFIH | 11:25:25 |
| 16 | PIKs, right? | 11:25:29 |
| 17 | A.    Yes. | 11:25:29 |
| 18 | Q.    And they periodically, along | 11:25:29 |
| 19 | with their financial advisors at | 11:25:33 |
| 20 | Centerview, met with you and your | 11:25:34 |
| 21 | counsel, correct? | 11:25:38 |
| 22 | A.    They being Akin Gump? | 11:25:43 |
| 23 | Q.    They being Akin Gump or | 11:25:45 |
| 24 | Centerview? | 11:25:46 |
| 25 | A.    Yes. | 11:25:46 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | |
|---|---|
| 1 | Q.    And you in fact met at times, | 11:25:47 |
| 2 | or spoke by the phone with principals for | 11:25:48 |
| 3 | the PIKs, correct? | 11:25:51 |
| 4 | A.    Correct. | 11:25:55 |
| 5 | Q.    Representatives of York | 11:25:55 |
| 6 | Capital by way of example, right? | 11:25:57 |
| 7 | A.    That was one of the PIK | 11:25:59 |
| 8 | holders that we met with, yes. | 11:26:00 |
| 9 | Q.    And they were a significant | 11:26:02 |
| 10 | party in negotiating the restructuring | 11:26:03 |
| 11 | support agreement, right? | 11:26:05 |
| 12 | A.    They were a party. | 11:26:06 |
| 13 | Q.    And under that RSA they were | 11:26:09 |
| 14 | to get ultimately the bulk of the equity | 11:26:11 |
| 15 | in a reorganized EFH, right? | 11:26:14 |
| 16 | A.    Yes, the majority of the | 11:26:19 |
| 17 | equity. | 11:26:21 |
| 18 | Q.    Right.  And do you recall the | 11:26:21 |
| 19 | proposal that I've shown you which is | 11:26:24 |
| 20 | document number 6? | 11:26:25 |
| 21 | A.    I don't specifically, but I'm | 11:26:30 |
| 22 | sure that I saw it at one point or | 11:26:31 |
| 23 | another. | 11:26:33 |
| 24 | Q.    It's directed, it's a letter | 11:26:33 |
| 25 | to the Board of Directors of the company, | 11:26:36 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | right? | 11:26:37 |
| 2 | A.    It is. | 11:26:37 |
| 3 | Q.    And I presume this was | 11:26:37 |
| 4 | presented to the board? | 11:26:39 |
| 5 | MR. HOWELL:  Object to | 11:26:40 |
| 6 | foundation. | 11:26:41 |
| 7 | Q.    To your knowledge? | 11:26:41 |
| 8 | A.    I don't have specific | 11:26:42 |
| 9 | recollection of whether it was presented | 11:26:45 |
| 10 | or not. | 11:26:48 |
| 11 | Q.    Do you recall discussion of it | 11:26:48 |
| 12 | whether at the board or otherwise? | 11:26:51 |
| 13 | A.    You know, we had many, many | 11:26:53 |
| 14 | discussions in a very contentious back | 11:26:57 |
| 15 | and forth negotiation.  So I just can't | 11:27:02 |
| 16 | specifically recall this one | 11:27:08 |
| 17 | independently.  If you ask me specific | 11:27:10 |
| 18 | questions I might recall that that was | 11:27:12 |
| 19 | one of their points. | 11:27:14 |
| 20 | Q.    Sure.  Let me ask you to turn | 11:27:14 |
| 21 | to page 4 which bears the Bates stamp | 11:27:17 |
| 22 | last two digits 88? | 11:27:20 |
| 23 | A.    I'm there. | 11:27:21 |
| 24 | Q.    Can I ask you to look -- this | 11:27:22 |
| 25 | is a term sheet for treatment of key | 11:27:25 |

| | | |
|---|---|---|
| 1 | creditor constituencies, do you see that, | 11:27:27 |
| 2 | sir? | 11:27:29 |
| 3 | A.    Yes. | 11:27:29 |
| 4 | Q.    And look under EFIH first lien | 11:27:30 |
| 5 | claims, do you see it there? | 11:27:32 |
| 6 | A.    Yes. | 11:27:33 |
| 7 | Q.    And look at the second | 11:27:35 |
| 8 | sentence, tell me if I'm reading it | 11:27:37 |
| 9 | correctly:  "The plan shall provide for | 11:27:39 |
| 10 | the disallowance of any asserted claim on | 11:27:41 |
| 11 | account of any make whole fee under any | 11:27:43 |
| 12 | of the EFIH first lien indentures and no | 11:27:46 |
| 13 | distribution shall be made on account of | 11:27:48 |
| 14 | such claims without the consent of the | 11:27:49 |
| 15 | backstop parties."  Did I read that | 11:27:51 |
| 16 | correctly? | 11:27:54 |
| 17 | A.    That's what it says, but | 11:27:54 |
| 18 | ultimately the RSA that they signed | 11:27:55 |
| 19 | included a settlement provision to the | 11:27:58 |
| 20 | first liens.  So this was not the final | 11:28:01 |
| 21 | position. | 11:28:03 |
| 22 | Q.    But I asked you earlier, and | 11:28:04 |
| 23 | I'll want to now ask whether this | 11:28:06 |
| 24 | refreshes your recollection, it is true, | 11:28:08 |
| 25 | is it not, Mr. Keglevic, that the PIKs, | 11:28:10 |

| | |
|---|---|
| 1 | along with the TCEH first liens, during | 11:28:14 |
| 2 | 2013 articulated and -- let me rephrase | 11:28:20 |
| 3 | the question, it's getting long. | 11:28:23 |
| 4 | I want to see whether this | 11:28:27 |
| 5 | refreshes your recollection.  Did the | 11:28:28 |
| 6 | EFIH PIKs, just like the TCEH first | 11:28:30 |
| 7 | liens, at points in time in 2013 urge the | 11:28:33 |
| 8 | debtors to file for bankruptcy and | 11:28:39 |
| 9 | develop a plan that would provide for no | 11:28:41 |
| 10 | payment of any make whole to the EFIH | 11:28:44 |
| 11 | first liens? | 11:28:49 |
| 12 | A.    At different times during our | 11:28:49 |
| 13 | negotiations both parties thought to | 11:28:51 |
| 14 | accomplish a transaction we would have to | 11:28:54 |
| 15 | file the E side for bankruptcy, but at | 11:28:55 |
| 16 | the end of the day, the document that is | 11:28:59 |
| 17 | the culmination of those negotiations is | 11:29:01 |
| 18 | the RSA which provided for settlement of | 11:29:04 |
| 19 | the make whole claims as part of the | 11:29:06 |
| 20 | filing of bankruptcy. | 11:29:08 |
| 21 | Q.    Let me, with all due respect, | 11:29:08 |
| 22 | ask my question again because I don't | 11:29:13 |
| 23 | think you answered it. | 11:29:15 |
| 24 | Did there -- did the EFIH | 11:29:16 |
| 25 | PIKs, just like the TCEH first liens, at | 11:29:19 |

| | | |
|---|---|---|
| 1 | points in time in 2013 urge the debtors | 11:29:22 |
| 2 | to file EFIH for bankruptcy and develop a | 11:29:25 |
| 3 | plan that would provide for no payment of | 11:29:28 |
| 4 | any make whole to the EFIH first liens? | 11:29:31 |
| 5 | MR. HOWELL:  Object to form. | 11:29:38 |
| 6 | A.    The words in these two | 11:29:39 |
| 7 | documents say what they say.  One is -- | 11:29:40 |
| 8 | and it's not clear that the Millstein | 11:29:43 |
| 9 | document says exactly what the TC -- what | 11:29:45 |
| 10 | the EFIH -- the EFIH words say pay | 11:29:48 |
| 11 | nothing to the first lien on the make | 11:29:51 |
| 12 | whole claims.  I'm not sure that it's | 11:29:53 |
| 13 | that clear.  There is some potential | 11:29:59 |
| 14 | savings reflected in Millstein.  I don't | 11:30:02 |
| 15 | know if that's some of the make whole, | 11:30:04 |
| 16 | settlement of the make whole, etc. | 11:30:06 |
| 17 | But of course in negotiations | 11:30:09 |
| 18 | there were all kinds of positions taken | 11:30:10 |
| 19 | with the debtor and ultimately those -- | 11:30:13 |
| 20 | you know, these documents speak for | 11:30:19 |
| 21 | themselves.  I would tell you it's hard | 11:30:21 |
| 22 | -- I feel uncomfortable answering that | 11:30:22 |
| 23 | the way you stated it, that they were | 11:30:26 |
| 24 | urging us to file bankruptcy.  And I take | 11:30:28 |
| 25 | it in your question, for the sole purpose | 11:30:30 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | of not paying the make wholes. | 11:30:32 |
| 2 | Q.    I didn't ask for the sole | 11:30:34 |
| 3 | purpose. | 11:30:35 |
| 4 | A.    Okay. | 11:30:36 |
| 5 | Q.    I'll ask it again.  Did the | 11:30:36 |
| 6 | EFIH PIKs urge the debtors, one, to put | 11:30:38 |
| 7 | EFIH into bankruptcy and two, propose a | 11:30:44 |
| 8 | plan in the bankruptcy that would provide | 11:30:49 |
| 9 | for no payment of any make whole to the | 11:30:51 |
| 10 | first liens, to the first liens? | 11:30:54 |
| 11 | MR. HOWELL:  Object to form | 11:31:03 |
| 12 | and foundation. | 11:31:04 |
| 13 | A.    They sent us the document | 11:31:05 |
| 14 | that, Keglevic Exhibit 7, that says that, | 11:31:07 |
| 15 | what we read into the record says.  They | 11:31:14 |
| 16 | -- I'm struggling with the word urge us. | 11:31:20 |
| 17 | One of the proposed transactions was that | 11:31:23 |
| 18 | we file for bankruptcy, and there were a | 11:31:26 |
| 19 | lot of elements that went with the filing | 11:31:29 |
| 20 | of bankruptcy and how we would treat | 11:31:31 |
| 21 | different claims, and that was their | 11:31:32 |
| 22 | position on that claim which ultimately | 11:31:34 |
| 23 | was not the position we adopted. | 11:31:36 |
| 24 | Q.    And that position, which is | 11:31:37 |
| 25 | set forth in a letter to the board, is to | 11:31:39 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 99

| | | |
|---|---|---|
| 1 | not pay any make whole at all to the EFIH | 11:31:42 |
| 2 | first liens, correct? | 11:31:46 |
| 3 | A.    That's what Keglevic Exhibit 7 | 11:31:46 |
| 4 | says. | 11:31:48 |
| 5 | Q.    Okay.  Mr. Keglevic, I want to | 11:31:48 |
| 6 | change topics if I could for a moment. | 11:31:54 |
| 7 | When the debtors filed for bankruptcy on | 11:32:03 |
| 8 | April 29, 2014, I think you may have | 11:32:05 |
| 9 | already told me this, by my calculations | 11:32:08 |
| 10 | EFIH had about 7.7 billion in debt, does | 11:32:10 |
| 11 | that sound right? | 11:32:16 |
| 12 | A.    Rough numbers that sounds | 11:32:16 |
| 13 | about right. | 11:32:18 |
| 14 | Q.    Let me tell you how I get | 11:32:18 |
| 15 | there.  Roughly, 4 billion on the first | 11:32:21 |
| 16 | lien debt, right? | 11:32:24 |
| 17 | A.    Right. | 11:32:24 |
| 18 | Q.    Roughly about 2.15 billion on | 11:32:26 |
| 19 | the second lien debt, right? | 11:32:29 |
| 20 | A.    Right. | 11:32:30 |
| 21 | Q.    And I think you said roughly | 11:32:31 |
| 22 | 1.7 on the PIK, I actually thought it was | 11:32:33 |
| 23 | 1.57, but somewhere in that vicinity, | 11:32:36 |
| 24 | right? | 11:32:38 |
| 25 | A.    Correct.  Actually, on page 4 | 11:32:38 |

CONFIDENTIAL
PAUL KEGLEVIC – 12/10/2014

Page 100

| | | |
|---|---|---|
| 1 | of Keglevic 7 that you referred me to it | 11:32:44 |
| 2 | says the unsecured claims were 1.7. | 11:32:46 |
| 3 | Q.    Okay. | 11:32:48 |
| 4 | A.    But it was of course it was | 11:32:50 |
| 5 | the PIKs the author, so I don't know if I | 11:32:51 |
| 6 | would have agreed with that amount. | 11:32:53 |
| 7 | Q.    Fair enough.  I think you | 11:32:58 |
| 8 | already testified that the debtors | 11:33:00 |
| 9 | combined including EFIH had at least 42 | 11:33:01 |
| 10 | billion in funded debt, right? | 11:33:04 |
| 11 | A.    Yes. | 11:33:06 |
| 12 | Q.    And the EFIH first lien debt | 11:33:07 |
| 13 | was issued at not all at one point in | 11:33:09 |
| 14 | time, not all 4 billion, right? | 11:33:11 |
| 15 | A.    Correct. | 11:33:13 |
| 16 | Q.    Some had been issued in 2010 | 11:33:13 |
| 17 | in an exchange? | 11:33:16 |
| 18 | A.    I believe that's right. | 11:33:17 |
| 19 | Q.    And some had been issued in | 11:33:19 |
| 20 | 2012 in an exchange? | 11:33:21 |
| 21 | A.    If you're looking at something | 11:33:22 |
| 22 | that can refresh my recollection I can | 11:33:25 |
| 23 | agree.  But they were not issued at the | 11:33:27 |
| 24 | same time.  I don't recall the exact | 11:33:29 |
| 25 | dates. | 11:33:30 |

```
 1        Q.    And they all didn't bear the      11:33:30
 2   same coupon, right?  Some of the EFIH         11:33:32
 3   first lien debt was at 10 percent and        11:33:34
 4   some was at 6.875 percent?                    11:33:36
 5        A.    That's correct.                    11:33:38
 6        Q.    And the 10 percent notes and       11:33:39
 7   the 6.875 percent notes were subject to      11:33:44
 8   different indentures, right?                  11:33:48
 9        A.    That's my recollection.            11:33:49
10        Q.    And obviously, the EFIH second     11:33:50
11   lien debt was subject to a different         11:33:54
12   indenture from either of the EFIH first      11:33:56
13   lien debt indentures, right?                 11:33:59
14        A.    That's correct.                    11:34:00
15        Q.    And obviously, the PIK debt at     11:34:00
16   EFIH was subject to a different indenture    11:34:03
17   from either the EFIH -- from either EFIH     11:34:05
18   first lien debt indenture or the EFIH       11:34:08
19   second lien indenture, right?                11:34:11
20        A.    That's also my recollection.       11:34:13
21        Q.    Okay.  And the funded             11:34:14
22   indebtedness of the other debtors, EFH,     11:34:16
23   TCEH, that was all subject, those were      11:34:19
24   all subject to different indentures as      11:34:22
25   well, right?                                 11:34:24
```

| | | |
|---|---|---|
| 1 | A.    Well, or credit agreements. | 11:34:25 |
| 2 | Q.    Right.  I want to focus now on | 11:34:26 |
| 3 | indentures for the bond debt.  All of the | 11:34:32 |
| 4 | indentures for all of the EFIH first lien | 11:34:34 |
| 5 | debt, to your recollection, included a | 11:34:37 |
| 6 | provision that if EFIH redeemed the debt | 11:34:42 |
| 7 | before December 1, 2015, EFIH would have | 11:34:47 |
| 8 | to pay an applicable premium, right? | 11:34:53 |
| 9 | MR. HOWELL:  Object to form. | 11:34:57 |
| 10 | A.    I don't recall the exact | 11:34:58 |
| 11 | dates. | 11:34:59 |
| 12 | Q.    Let me -- | 11:34:59 |
| 13 | A.    And the indenture requirements | 11:35:02 |
| 14 | of those dates.  I know there were some | 11:35:02 |
| 15 | call premiums as we discussed before. | 11:35:04 |
| 16 | Q.    Why don't I show you one, I | 11:35:07 |
| 17 | don't think we need to go through them | 11:35:09 |
| 18 | all, but let me show you one. | 11:35:10 |
| 19 | MR. ANKER:  Why don't we mark | 11:35:12 |
| 20 | this as Keglevic Exhibit number 8. | 11:35:13 |
| 21 | This is an indenture dated as of | 11:35:16 |
| 22 | August 17, 2010 for the 10 percent | 11:35:18 |
| 23 | senior secured notes due 2020, | 11:35:22 |
| 24 | EFIHMW 00144189 to -- I'm sorry. | 11:35:25 |
| 25 | There's a cover email which is | 11:35:37 |

| | | |
|---|---|---|
| 1 | actually at the back and that bears | 11:35:39 |
| 2 | Bates stamp EFIHMW 00144188 and | 11:35:41 |
| 3 | then the indenture itself is EFIHMW | 11:35:46 |
| 4 | 00144189 through 335 inclusive. | 11:35:50 |
| 5 | (Keglevic Exhibit 8 for | 11:35:50 |
| 6 | identification, Bates stamped | 11:35:49 |
| 7 | EFIHMW 00144188 through 00144335.) | 11:35:49 |
| 8 | Q.    Mr. Keglevic, do you recognize | 11:36:21 |
| 9 | the document which has been marked -- | 11:36:22 |
| 10 | A.    I'm not really.  I'm not the | 11:36:24 |
| 11 | indenture expert at our company. | 11:36:27 |
| 12 | Q.    Okay.  Well let me try -- let | 11:36:29 |
| 13 | me spend a little bit of time on this. | 11:36:31 |
| 14 | If it turns out you're not the right guy, | 11:36:33 |
| 15 | we may move on.  But I was asking you | 11:36:35 |
| 16 | earlier whether each of the first lien | 11:36:38 |
| 17 | indentures included a provision for the | 11:36:41 |
| 18 | payment of an optional redemption.  Can I | 11:36:46 |
| 19 | ask you to turn to page 55 of the | 11:36:48 |
| 20 | indenture.  I think it bears the Bates | 11:36:51 |
| 21 | stamp at the bottom 249 is the last three | 11:36:52 |
| 22 | digits. | 11:36:55 |
| 23 | A.    I'm on page 55.  Bates number | 11:36:58 |
| 24 | 14189? | 11:37:01 |
| 25 | Q.    Yes. | 11:37:02 |

| | | |
|---|---|---|
| 1 | A.    I'm there. | 11:37:03 |
| 2 | Q.    Are you there?  Do you see | 11:37:05 |
| 3 | section 3.07? | 11:37:06 |
| 4 | A.    I do. | 11:37:08 |
| 5 | Q.    Then do you see notes, make | 11:37:09 |
| 6 | whole redemptions, subparagraph (a)? | 11:37:12 |
| 7 | A.    Yes. | 11:37:15 |
| 8 | Q.    And you see it says "At any | 11:37:15 |
| 9 | time prior to December 1, 2015, the | 11:37:17 |
| 10 | issuer may redeem all or part of the | 11:37:21 |
| 11 | notes at a redemption price equal to 100 | 11:37:24 |
| 12 | percent of the principal amount of the | 11:37:26 |
| 13 | notes redeemed plus the applicable | 11:37:28 |
| 14 | premium as of, and accrued and unpaid | 11:37:30 |
| 15 | interest to, the date of redemption, | 11:37:33 |
| 16 | subject to the rights of holders of notes | 11:37:34 |
| 17 | of record on the relevant record date to | 11:37:36 |
| 18 | receive interest due on the relevant | 11:37:37 |
| 19 | interest payment date"? | 11:37:39 |
| 20 | Do you see that language? | 11:37:41 |
| 21 | A.    Yes. | 11:37:42 |
| 22 | Q.    I'll represent to you that | 11:37:42 |
| 23 | each of the other indentures for the EFIH | 11:37:45 |
| 24 | first lien debt also has as the first | 11:37:48 |
| 25 | call date December 1, 2015.  Okay? | 11:37:51 |

| | | |
|---|---|---|
| 1 | A.    Okay. | 11:37:55 |
| 2 | Q.    First off, can you tell me | 11:37:55 |
| 3 | what is a first call date? | 11:37:57 |
| 4 | A.    I don't know what the meaning | 11:37:59 |
| 5 | of this indenture.  I would just be | 11:38:03 |
| 6 | assuming what it means based on my | 11:38:06 |
| 7 | general knowledge. | 11:38:08 |
| 8 | Q.    Let me ask you this, and I | 11:38:09 |
| 9 | think you're right, Mr. Keglevic, that | 11:38:11 |
| 10 | the documents will ultimately speak for | 11:38:15 |
| 11 | themselves, and -- | 11:38:17 |
| 12 | A.    I hope so. | 11:38:18 |
| 13 | Q.    I'm not trying to have a | 11:38:19 |
| 14 | memory test with you.  But is it your | 11:38:20 |
| 15 | recollection that all of the indentures | 11:38:24 |
| 16 | for all of the EFIH first lien debt | 11:38:27 |
| 17 | included an optional redemption provision | 11:38:30 |
| 18 | providing for payment of an applicable | 11:38:33 |
| 19 | premium? | 11:38:35 |
| 20 | A.    When you said all of the EFIH | 11:38:36 |
| 21 | debt including the PIKs? | 11:38:39 |
| 22 | Q.    EFIH first lien? | 11:38:41 |
| 23 | A.    I'm just recollecting, I | 11:38:44 |
| 24 | typically would ask my treasurer, my | 11:38:46 |
| 25 | legal department to outline the key | 11:38:49 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 106

| | | |
|---|---|---|
| 1 | provisions, so I don't know that they all | 11:38:51 |
| 2 | include that.  I'm just making an | 11:38:53 |
| 3 | assumption and I don't think that's | 11:38:54 |
| 4 | helpful to anybody. | 11:38:55 |
| 5 |     Q.    Do you recollect as you sit | 11:38:56 |
| 6 | here today any EFIH first lien debt that | 11:38:58 |
| 7 | didn't provide for the payment of a | 11:39:04 |
| 8 | premium were the notes redeemed prior to | 11:39:06 |
| 9 | December 1, 2015? | 11:39:09 |
| 10 |     A.    I don't have a recollection of | 11:39:12 |
| 11 | the date in the two indentures one way or | 11:39:14 |
| 12 | the other.  I typically rely on other | 11:39:17 |
| 13 | people to tell me those terms. | 11:39:19 |
| 14 |     Q.    Let's put the date December 1, | 11:39:21 |
| 15 | 2015 aside.  To the best of your | 11:39:24 |
| 16 | recollection, did all of the EFIH first | 11:39:26 |
| 17 | lien debt provide for the payment of a | 11:39:29 |
| 18 | redemption premium were the notes | 11:39:32 |
| 19 | redeemed prior to a specified date? | 11:39:34 |
| 20 |     MR. HOWELL:  Object to | 11:39:40 |
| 21 | foundation. | 11:39:41 |
| 22 |     A.    Once again I'd have to look at | 11:39:41 |
| 23 | that indenture, and I'm not the indenture | 11:39:43 |
| 24 | expert, but you've already told me it has | 11:39:45 |
| 25 | the same language in the other one so I | 11:39:48 |

| | | |
|---|---|---|
| 1 | don't know how my assumptions when I | 11:39:50 |
| 2 | don't have the knowledge is going to help | 11:39:51 |
| 3 | with that discovery.  I just -- I'm sure | 11:39:53 |
| 4 | you could show it to me and say are the | 11:39:55 |
| 5 | words the same and I might be able to say | 11:39:57 |
| 6 | yes, but that's what I'd have to do. | 11:39:58 |
| 7 | Q.    Let me put it this way and | 11:40:05 |
| 8 | let's expand this past the EFIH first | 11:40:06 |
| 9 | liens.  It was reasonably common within | 11:40:08 |
| 10 | the $42 billion of total funded | 11:40:14 |
| 11 | indebtedness that the debtors had, that | 11:40:17 |
| 12 | the indentures provided if they were to | 11:40:19 |
| 13 | be redeemed before a date prior to stated | 11:40:21 |
| 14 | maturity, that some premium had to be | 11:40:24 |
| 15 | paid in addition to principal and | 11:40:27 |
| 16 | interest, right? | 11:40:29 |
| 17 | MR. HOWELL:  Object to form. | 11:40:30 |
| 18 | A.    Once again, it's a memory test | 11:40:31 |
| 19 | that I don't recall what provisions were | 11:40:33 |
| 20 | in each of the indentures and we've | 11:40:35 |
| 21 | already said, I don't know if it was in | 11:40:38 |
| 22 | the credit agreement, which covers the | 11:40:40 |
| 23 | majority of our debt, the first lien debt | 11:40:41 |
| 24 | at TCEH.  I know we had call provisions | 11:40:44 |
| 25 | in various indentures, I just don't know | 11:40:48 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | if it's common or included or not.  The | 11:40:50 |
| 2 | documents should speak for themselves. | 11:40:52 |
| 3 | Q.    Let's expand the issue and | 11:40:54 |
| 4 | let's use your term, call provisions.  Is | 11:40:56 |
| 5 | it your understanding that call | 11:41:01 |
| 6 | provisions were unique to EFH and the EFH | 11:41:03 |
| 7 | companies? | 11:41:10 |
| 8 | A.    No, I certainly know that call | 11:41:11 |
| 9 | provisions exist in other indentures. | 11:41:13 |
| 10 | Q.    For other companies? | 11:41:15 |
| 11 | A.    For other companies. | 11:41:16 |
| 12 | Q.    And in particular, do you have | 11:41:17 |
| 13 | an understanding as to whether they're | 11:41:18 |
| 14 | frequently found in indentures for high | 11:41:23 |
| 15 | yield debt? | 11:41:26 |
| 16 | A.    I don't know that I'd be the | 11:41:27 |
| 17 | expert for frequently which would mean | 11:41:31 |
| 18 | that I have some knowledge of the total | 11:41:34 |
| 19 | amount of high yield debt and how many | 11:41:36 |
| 20 | are in and how many are not.  That's | 11:41:38 |
| 21 | beyond the scope of my knowledge. | 11:41:39 |
| 22 | Q.    You would agree that the EFIH | 11:41:41 |
| 23 | first lien and second lien and PIK debt | 11:41:44 |
| 24 | was high yield debt, right? | 11:41:46 |
| 25 | A.    I've never had to identify it. | 11:41:48 |

| | |
|---|---|
| 1    I don't know what that characterization | 11:41:51 |
| 2    means, so I don't refer to them like | 11:41:52 |
| 3    that.  I refer to them as 10 percent | 11:41:55 |
| 4    debt, 11 and three quarters percent debt | 11:41:57 |
| 5    and PIK debt. | 11:42:00 |
| 6         Q.    Now, let's focus on this | 11:42:01 |
| 7    indenture, the one I've given you that's | 11:42:04 |
| 8    Exhibit 8.  Why didn't EFIH rather than | 11:42:06 |
| 9    have the provision that is section 3.07 | 11:42:12 |
| 10   (a) simply include a provision that would | 11:42:15 |
| 11   have allowed it to refinance the notes at | 11:42:18 |
| 12   any time without paying any premium? | 11:42:21 |
| 13            MR. HOWELL:  Object to form | 11:42:24 |
| 14        and foundation and outside the | 11:42:25 |
| 15        scope of this 30(b)(6) designation. | 11:42:27 |
| 16        Q.    To your knowledge, as a | 11:42:29 |
| 17   30(b)(1) witness? | 11:42:30 |
| 18        A.    I don't recall.  You'd have to | 11:42:32 |
| 19   -- my negotiating team would probably | 11:42:34 |
| 20   know the answer to that question. | 11:42:37 |
| 21        Q.    Do you have any understanding | 11:42:38 |
| 22   of whether -- did you have any | 11:42:39 |
| 23   expectation as to whether investors | 11:42:44 |
| 24   expected there to be premiums provided | 11:42:48 |
| 25   for in the indenture were the notes | 11:42:56 |

```
1    called at an early -- prior to stated            11:42:59
2    maturity?                                         11:43:01
3         A.    Each deal stands on it own and         11:43:02
4    each deal's a separate negotiation, so I          11:43:06
5    don't have expectations going in.  I              11:43:08
6    think those develop as you start the              11:43:09
7    negotiation.                                      11:43:11
8         Q.    Did you ever have any                  11:43:12
9    negotiations, you personally have any             11:43:14
10   negotiations with any investors in any of         11:43:16
11   the debt issued by any of the debtors             11:43:20
12   over any call provisions?                         11:43:22
13        A.    I had no negotiations                  11:43:25
14   associated with any of the EFIH debt and          11:43:26
15   I would say I didn't have any                     11:43:29
16   negotiations with the TCEH second lien            11:43:30
17   debt, but I became aware of one issue in          11:43:36
18   the TCEH second lien debt that was                11:43:40
19   brought to my attention.                          11:43:42
20        Q.    Okay.                                  11:43:43
21        A.    I never negotiated the words           11:43:44
22   or, you know, but I think at one point I          11:43:45
23   told the guys that the request made in            11:43:48
24   that negotiation was a no.  But I didn't          11:43:50
25   go back and deliver the message or                11:43:52
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 111

| | | |
|---|---|---|
| 1 | negotiate the resulting compromise. | 11:43:54 |
| 2 | Q.    Did you ever think about why | 11:43:56 |
| 3 | call protection provisions exist in | 11:44:11 |
| 4 | indentures for any of the debtors? | 11:44:15 |
| 5 | A.    No. | 11:44:19 |
| 6 | Q.    You have no -- do you have any | 11:44:20 |
| 7 | thoughts as to why they exist? | 11:44:23 |
| 8 | A.    I'd be assuming, but I assume | 11:44:25 |
| 9 | the creditors would know why they wanted | 11:44:28 |
| 10 | them and I -- you know, I'm not going to | 11:44:30 |
| 11 | speak for other people and their state of | 11:44:32 |
| 12 | mind and why they wanted them. | 11:44:34 |
| 13 | Q.    Well you can tell me what your | 11:44:36 |
| 14 | understanding or assumption is.  What was | 11:44:37 |
| 15 | your assumption? | 11:44:39 |
| 16 | A.    I don't have an understanding, | 11:44:39 |
| 17 | I wasn't part of the negotiations and | 11:44:40 |
| 18 | you're asking me, you know, to suggest | 11:44:42 |
| 19 | what their reasons were for asking for | 11:44:43 |
| 20 | these provisions and I think you find | 11:44:45 |
| 21 | that out across the negotiating table, | 11:44:47 |
| 22 | not -- I think assuming is a bad stance | 11:44:50 |
| 23 | for a CFO to have. | 11:44:55 |
| 24 | Q.    So let me just make sure I | 11:44:57 |
| 25 | have a clear record.  As chief financial | 11:44:58 |

| | | |
|---|---|---|
| 1 | officer for all of the debtors, you have | 11:45:00 |
| 2 | no understanding of why it is that any of | 11:45:05 |
| 3 | the indentures include a provision like | 11:45:08 |
| 4 | section 3.07 (a) in Keglevic Exhibit | 11:45:13 |
| 5 | number 8? | 11:45:18 |
| 6 | A.    My understanding of why it's | 11:45:21 |
| 7 | in there is that was a negotiated deal. | 11:45:23 |
| 8 | Q.    Beyond telling me that that | 11:45:31 |
| 9 | was the negotiated deal, do you have any | 11:45:33 |
| 10 | understanding as to why that provision is | 11:45:34 |
| 11 | there? | 11:45:37 |
| 12 | A.    I don't know the back and | 11:45:37 |
| 13 | forth of the negotiations and how that | 11:45:39 |
| 14 | provision versus any other provision was | 11:45:40 |
| 15 | negotiated. | 11:45:41 |
| 16 | Q.    And so when you say your | 11:45:42 |
| 17 | understanding is that it was the | 11:45:47 |
| 18 | negotiated deal, I take it that's just an | 11:45:48 |
| 19 | assumption you're making because you | 11:45:50 |
| 20 | don't know what negotiations, if any, | 11:45:52 |
| 21 | there were with respect to any of the | 11:45:54 |
| 22 | indentures, right? | 11:45:56 |
| 23 | A.    I know this was the negotiated | 11:45:56 |
| 24 | outcome and it included these call | 11:46:00 |
| 25 | provisions. | 11:46:02 |

| | | |
|---|---|---|
| 1 | Q.    How do you know that?  How do | 11:46:02 |
| 2 | you know it wasn't simply in a form and | 11:46:04 |
| 3 | someone just cut and pasted it? | 11:46:06 |
| 4 | A.    Well, because I know my team | 11:46:09 |
| 5 | goes through the forms and very carefully | 11:46:11 |
| 6 | reviews all of them and make sure it's | 11:46:14 |
| 7 | market, it's based on precedent, and that | 11:46:16 |
| 8 | it makes economic sense and it fits into | 11:46:18 |
| 9 | the objectives we have of that financing. | 11:46:20 |
| 10 | And I find my team, you know, my treasury | 11:46:22 |
| 11 | team, my internal legal team and the | 11:46:26 |
| 12 | external legal team to be very thorough. | 11:46:28 |
| 13 | I don't think we accept cut and paste | 11:46:30 |
| 14 | without understanding what it means and | 11:46:31 |
| 15 | why it was there. | 11:46:33 |
| 16 | Q.    Now you said that, if I | 11:46:34 |
| 17 | understood your last answer, that your | 11:46:39 |
| 18 | team goes through the forms and makes | 11:46:40 |
| 19 | sure that it's market.  What did you mean | 11:46:44 |
| 20 | by that? | 11:46:47 |
| 21 | A.    Well I think that we obviously | 11:46:48 |
| 22 | were owned by sponsor groups that do a | 11:46:52 |
| 23 | lot of transactions in the high yield and | 11:46:56 |
| 24 | other bond markets, and they were -- have | 11:46:58 |
| 25 | always been very concerned about setting | 11:47:02 |

| | |
|---|---|
| 1 | new precedents that then -- that one of | 11:47:04 |
| 2 | their portfolio companies had that then | 11:47:06 |
| 3 | they'd use, somebody would use to | 11:47:08 |
| 4 | negotiate against them in a deal down the | 11:47:09 |
| 5 | road, because these deals tend to be -- | 11:47:11 |
| 6 | you know, whatever the last deal was | 11:47:14 |
| 7 | tends to carry forward as the beginning | 11:47:16 |
| 8 | part of the next deal, that's my | 11:47:18 |
| 9 | understanding. | 11:47:20 |
| 10 | And, you know, we had a fairly | 11:47:22 |
| 11 | sizable precedent when we did the LBO. | 11:47:24 |
| 12 | Those transactions, the debt documents | 11:47:27 |
| 13 | had various terms and conditions and it | 11:47:30 |
| 14 | was very difficult for us to get better | 11:47:33 |
| 15 | terms and conditions with the same lender | 11:47:36 |
| 16 | group than we had agreed to in prior | 11:47:38 |
| 17 | deals.  That's just generally my | 11:47:40 |
| 18 | understanding of how the negotiation | 11:47:41 |
| 19 | market works. | 11:47:43 |
| 20 | So whether we had accepted it | 11:47:44 |
| 21 | in the past is important.  Whether others | 11:47:46 |
| 22 | in the market were accepting new terms is | 11:47:49 |
| 23 | important in a negotiation.  If they can | 11:47:52 |
| 24 | show you, look, this is market because | 11:47:54 |
| 25 | the last 50 deals done have this term, | 11:47:56 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 115

| | | |
|---|---|---|
| 1 | that's an important negotiating point | 11:47:59 |
| 2 | because you're asking for something | 11:48:01 |
| 3 | that's not market.  And generally | 11:48:02 |
| 4 | speaking, you're trying to negotiate a | 11:48:04 |
| 5 | market deal on interest rates and terms. | 11:48:05 |
| 6 | Q.    And when you say generally | 11:48:08 |
| 7 | you're trying to negotiate a market deal | 11:48:11 |
| 8 | on interest rates and terms, I'm not sure | 11:48:13 |
| 9 | I understand who the word -- what your | 11:48:17 |
| 10 | means.  I take -- well -- | 11:48:20 |
| 11 | A.    The company. | 11:48:22 |
| 12 | Q.    Okay.  So to the extent that | 11:48:23 |
| 13 | EFIH was issuing this debt, EFIH was | 11:48:24 |
| 14 | trying to negotiate market terms, right? | 11:48:27 |
| 15 | A.    Yes. | 11:48:30 |
| 16 | Q.    It was trying to get net net | 11:48:30 |
| 17 | the best terms possible for itself, | 11:48:33 |
| 18 | right? | 11:48:35 |
| 19 | MR. HOWELL:  Object, asked and | 11:48:35 |
| 20 | answered. | 11:48:37 |
| 21 | A.    You know, I assume that is the | 11:48:37 |
| 22 | case, but the definition of best terms we | 11:48:42 |
| 23 | talked about before is in the eye of the | 11:48:44 |
| 24 | beholder and you can never get best terms | 11:48:45 |
| 25 | in my understanding, you always wish they | 11:48:49 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 116

| | | |
|---|---|---|
| 1 | were better, that they were lower | 11:48:51 |
| 2 | interest rates or less onerous | 11:48:52 |
| 3 | transactions.  But you get, depending on | 11:48:54 |
| 4 | how your needs are and what you can get | 11:48:58 |
| 5 | in the negotiation, you decide as to | 11:49:00 |
| 6 | whether that's equivalent value or fair | 11:49:01 |
| 7 | value in that transaction. | 11:49:04 |
| 8 | Q.    Now, in debt issuances, among | 11:49:05 |
| 9 | the important terms for the company, | 11:49:10 |
| 10 | that's high yield debt, was the maturity | 11:49:12 |
| 11 | date, right? | 11:49:15 |
| 12 | A.    Yes. | 11:49:15 |
| 13 | Q.    Because I take it with all | 11:49:16 |
| 14 | this high yield debt there was no | 11:49:18 |
| 15 | amortization of principal, it all gets | 11:49:20 |
| 16 | paid at the very end, right? | 11:49:22 |
| 17 | A.    There was none in, in this | 11:49:24 |
| 18 | transaction, yes. | 11:49:26 |
| 19 | Q.    By this transaction, just so | 11:49:27 |
| 20 | we have a clear -- | 11:49:29 |
| 21 | A.    I'm referring to Keglevic 8, | 11:49:30 |
| 22 | that's my understanding. | 11:49:33 |
| 23 | Q.    And another important feature | 11:49:34 |
| 24 | from the company's standpoint is the | 11:49:35 |
| 25 | interest rate, right? | 11:49:39 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1          A.    Sure.                                    11:49:40

 2          Q.    Okay.  And a third important             11:49:41

 3    feature from the company's standpoint is             11:49:45

 4    whether, what call rights it has prior to            11:49:47

 5    stated maturity, right?                              11:49:51

 6          A.    Yes, but it -- it depends.               11:49:53

 7    When you're negotiating, if you have no              11:49:57

 8    intention or no need to ever exercise the            11:50:00

 9    call rights, it might be something the               11:50:02

10    other party values more than you do, and            11:50:03

11    you might be able to -- you know, that's            11:50:05

12    the whole thing with a negotiation, is              11:50:08

13    both parties don't value the same term             11:50:10

14    and the same item the same way.  So in             11:50:13

15    some cases you might give on a call                11:50:16

16    provision at the expense, you know, and            11:50:18

17    get better interest or vice versa.  It             11:50:21

18    just depends on what your strategic               11:50:23

19    situation is and what their strategic             11:50:25

20    situation is.                                     11:50:27

21          Q.    And the ultimate deal that was          11:50:31

22    negotiated, let's focus on the 2010 EFIH          11:50:36

23    first lien notes, is reflected in the             11:50:41

24    indenture and the notes themselves that           11:50:43

25    are Keglevic Exhibit 8?                            11:50:46
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 118

```
 1         A.    I certainly hope so.              11:50:48

 2         Q.    Let me ask my question            11:50:52

 3    differently.  The ultimate deal is the       11:50:53

 4    entirety of the document, right?             11:50:55

 5         A.    Yes, the words say what the        11:50:56

 6    words say.                                   11:51:01

 7         Q.    Let me be more -- let me be a      11:51:02

 8    little bit more clear because I think        11:51:04

 9    you're not following my question.  The       11:51:05

10    company understood that this was an          11:51:11

11    integrated document, a whole, right?         11:51:12

12              MR. HOWELL:  Object to form,       11:51:14

13         foundation and outside the scope of     11:51:15

14         this witness' 30(b)(6).                 11:51:17

15         Q.    You understood it?  You           11:51:18

16    understood it?                               11:51:19

17         A.    I understood that this is the     11:51:19

18    contract.                                    11:51:21

19         Q.    And all of its provisions are     11:51:21

20    important from the company's perspective,    11:51:25

21    right?                                       11:51:28

22         A.    I would --                        11:51:28

23              MR. HOWELL:  Object to form        11:51:28

24         and foundation.                         11:51:30

25         A.    Generally speaking, I think       11:51:33
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | both parties to a contract should believe | 11:51:34 |
| 2 | that all conditions are important. | 11:51:36 |
| 3 | Q.    Okay.  I think this is | 11:51:38 |
| 4 | implicit when you tell me you weren't | 11:52:26 |
| 5 | involved in the negotiations.  At any | 11:52:28 |
| 6 | point in time up until the planning for | 11:52:35 |
| 7 | bankruptcy, did you, Mr. Keglevic, have | 11:52:38 |
| 8 | any discussions with any first lien | 11:52:42 |
| 9 | noteholder about the meaning of any of | 11:52:49 |
| 10 | the terms of the indenture? | 11:52:52 |
| 11 | A.    We met with, I met with some | 11:52:59 |
| 12 | of the principals of the first lien.  I | 11:53:02 |
| 13 | don't think we -- in the meetings I | 11:53:04 |
| 14 | attended we did not get into the meanings | 11:53:06 |
| 15 | of the terms of the indenture, I don't -- | 11:53:08 |
| 16 | Q.    Are you talking about | 11:53:10 |
| 17 | meetings, Mr. Keglevic, that occurred in | 11:53:11 |
| 18 | the bankruptcy planning process period? | 11:53:12 |
| 19 | A.    Yes, I was talking about pre | 11:53:14 |
| 20 | -- I'm sorry, maybe I misunderstood your | 11:53:16 |
| 21 | question.  Pre-filing of the bankruptcy. | 11:53:18 |
| 22 | Q.    Let's put aside discussions | 11:53:20 |
| 23 | that may have occurred during the | 11:53:24 |
| 24 | bankruptcy and discussions that may have | 11:53:25 |
| 25 | occurred about negotiating for a possible | 11:53:27 |

| | | |
|---|---|---|
| 1 | bankruptcy.  I'm really talking about | 11:53:31 |
| 2 | outside bankruptcy negotiations. | 11:53:33 |
| 3 | Did you ever have the occasion | 11:53:37 |
| 4 | to have any discussions with any first | 11:53:41 |
| 5 | lien noteholder about the terms of any | 11:53:44 |
| 6 | first lien debt? | 11:53:47 |
| 7 | A.   No. | 11:53:49 |
| 8 | Q.   I asked you that question | 11:53:49 |
| 9 | about first lien noteholders.  I'm going | 11:53:52 |
| 10 | to ask it now about some other people. | 11:53:54 |
| 11 | Did you ever have the occasion to have | 11:53:57 |
| 12 | any discussion with any prospective | 11:53:58 |
| 13 | investor in first lien EFIH debt about | 11:54:01 |
| 14 | the terms of any such debt? | 11:54:04 |
| 15 | MR. HOWELL:  Object to form. | 11:54:08 |
| 16 | A.   When you say any terms, I | 11:54:09 |
| 17 | don't recall as part of -- occasionally | 11:54:16 |
| 18 | we did a Bloomberg marketing, I don't | 11:54:20 |
| 19 | remember if we did with these notes, I | 11:54:23 |
| 20 | don't recall where we would outline the | 11:54:26 |
| 21 | terms of the notes at a very, very high | 11:54:27 |
| 22 | level.  And in fact, I don't even | 11:54:30 |
| 23 | remember if I probably had the banker | 11:54:33 |
| 24 | cover those; I didn't.  So I think the | 11:54:35 |
| 25 | answer is no, I don't believe I had.  But | 11:54:37 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | I may have as part of a marketing, you | 11:54:39 |
| 2 | know, talk at a very high level some of | 11:54:41 |
| 3 | the basic terms of the notes. | 11:54:44 |
| 4 | Q.    And do you recall ever having | 11:54:45 |
| 5 | a discussion with any representative of | 11:54:54 |
| 6 | the indenture trustee for any of the | 11:54:57 |
| 7 | first lien notes about any of the terms | 11:55:00 |
| 8 | of the first lien debt? | 11:55:03 |
| 9 | A.    That's easier.  No, I don't | 11:55:04 |
| 10 | recall ever meeting any of the members of | 11:55:08 |
| 11 | the trustee. | 11:55:09 |
| 12 | Q.    Do you recall ever having | 11:55:12 |
| 13 | discussions with anyone else about the | 11:55:16 |
| 14 | terms of any of the first lien debt, and | 11:55:20 |
| 15 | I'm excluding your counsel, during | 11:55:22 |
| 16 | bankruptcy? | 11:55:25 |
| 17 | A.    The EFIH first lien debt? | 11:55:28 |
| 18 | Q.    Yes. | 11:55:30 |
| 19 | A.    No. | 11:55:30 |
| 20 | Q.    You mentioned earlier, and I'm | 11:55:30 |
| 21 | going to ask you some questions about it | 11:55:45 |
| 22 | in a bit, about discussions you had with | 11:55:46 |
| 23 | a TCEH investor, and was that investor | 11:55:49 |
| 24 | Oaktree? | 11:55:56 |
| 25 | A.    Yes. | 11:55:56 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 122

```
 1        Q.    And other than the discussions        11:55:57

 2    that you perhaps indirectly participated        11:56:03

 3    in with Oaktree over the TCEH second lien       11:56:06

 4    debt offering, do you recall having            11:56:15

 5    discussions with any investor in any of        11:56:17

 6    the debtors' high yield debt about the         11:56:23

 7    terms of that debt?  I'm just asking for       11:56:26

 8    your recollection, Mr. Keglevic.              11:56:35

 9        A.    Yes, well when you say any of         11:56:36

10    the terms, we renegotiated the TCEH first      11:56:41

11    lien debt and did an amend and extend and      11:56:44

12    so we were talking to them about the           11:56:47

13    terms of the amend and extend, so that         11:56:49

14    would say yes.  You asked me a very broad      11:56:51

15    question.                                      11:56:55

16        Q.    Let me try to narrow it, okay?       11:56:56

17    Do you recall having any discussion with       11:56:58

18    any investor in any of the debtors' high       11:57:01

19    yield debt about the note make whole           11:57:05

20    redemption provision in that indenture?        11:57:13

21        A.    No, other than the one               11:57:17

22    instance that I talked -- and actually, I      11:57:19

23    didn't even have a direct discussion with      11:57:22

24    that party about that issue.                   11:57:24

25        Q.    Okay.  I need to get a very          11:57:25
```

| | |
|---|---|
| 1 | clear record and I know what you're | 11:57:28 |
| 2 | talking about, but that's why I'm asking | 11:57:29 |
| 3 | this. | 11:57:31 |
| 4 | When you just said "no, other | 11:57:31 |
| 5 | than the one instance I talked -- and | 11:57:34 |
| 6 | actually I didn't even have a direct | 11:57:36 |
| 7 | discussion with that party about that | 11:57:38 |
| 8 | issue," you're referring to Oaktree and | 11:57:39 |
| 9 | the TCEH second lien exchange, correct? | 11:57:42 |
| 10 | A.    That's correct, Armen | 11:57:47 |
| 11 | Panossian, exactly.  And for example, he | 11:57:49 |
| 12 | would call me occasionally and say, I | 11:57:51 |
| 13 | remember, hey, you guys, would you | 11:57:56 |
| 14 | consider quarterly payments instead of | 11:57:57 |
| 15 | annual or semiannual, I said we may, let | 11:57:59 |
| 16 | me get to the team.  And then my team | 11:58:02 |
| 17 | brought to me an issue of another ask | 11:58:05 |
| 18 | that was around premiums that I talked | 11:58:06 |
| 19 | through my team but not directly to Mr. | 11:58:09 |
| 20 | Panossian about that. | 11:58:11 |
| 21 | Q.    If you could look at the | 11:58:12 |
| 22 | document that is Exhibit 8, Mr. Keglevic. | 11:58:15 |
| 23 | A.    I'm there. | 11:58:23 |
| 24 | Q.    Look at 3.07 (e) as in Earl, | 11:58:23 |
| 25 | it actually is on page 5 -- I'm sorry, | 11:58:29 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 124

| | | |
|---|---|---|
| 1 | page 56, the next page from the one you | 11:58:31 |
| 2 | were looking at earlier.  And you'll see | 11:58:37 |
| 3 | that says "Any redemption pursuant to | 11:58:39 |
| 4 | this section 3.07 shall be made pursuant | 11:58:42 |
| 5 | to the provisions of section 3.01 and | 11:58:44 |
| 6 | 3.06 hereof," right? | 11:58:48 |
| 7 | A.    That's what it says. | 11:58:50 |
| 8 | Q.    And actually -- well I'll ask | 11:58:51 |
| 9 | you about two different provisions.  Did | 11:58:53 |
| 10 | you ever have any discussion with any | 11:58:55 |
| 11 | investor in any high yield debt of any of | 11:58:59 |
| 12 | the debtors about that provision or | 11:59:05 |
| 13 | anything like it? | 11:59:07 |
| 14 | A.    No. | 11:59:08 |
| 15 | Q.    Take a look at, before you put | 11:59:09 |
| 16 | it down, subparagraph (c) of 3.07. | 11:59:10 |
| 17 | "Except pursuant" -- it's also on the | 11:59:17 |
| 18 | same page. | 11:59:19 |
| 19 | A.    Okay. | 11:59:19 |
| 20 | Q.    Okay, are you with me? | 11:59:20 |
| 21 | A.    Yes. | 11:59:21 |
| 22 | Q.    "Except pursuant to clause (a) | 11:59:21 |
| 23 | and (b) of this section 3.07, the notes | 11:59:23 |
| 24 | shall not be redeemable at the issuer's | 11:59:25 |
| 25 | option prior to December 1, 2015." | 11:59:28 |

| | | |
|---|---|---|
| 1 | Did you ever have any | 11:59:32 |
| 2 | discussion with any investor about in any | 11:59:33 |
| 3 | of the EF -- in any of the debtors' high | 11:59:40 |
| 4 | yield debt about that provision or any | 11:59:44 |
| 5 | comparable provision? | 11:59:46 |
| 6 | A.    No. | 11:59:47 |
| 7 | Q.    Now I've asked you a series of | 11:59:47 |
| 8 | questions about specific provisions in | 11:59:53 |
| 9 | section 3.07 whether you had discussions | 11:59:54 |
| 10 | with any investor.  Potentially you could | 11:59:56 |
| 11 | have had a discussion with somebody who | 12:00:02 |
| 12 | wasn't an investor but was thinking about | 12:00:03 |
| 13 | investing.  Would you give me the same | 12:00:05 |
| 14 | answers, that you don't recall having had | 12:00:07 |
| 15 | any discussion with any potential | 12:00:09 |
| 16 | investor about any of these provisions in | 12:00:10 |
| 17 | section 3.07? | 12:00:13 |
| 18 | A.    The best of my recollection, I | 12:00:14 |
| 19 | did not. | 12:00:15 |
| 20 | Q.    And you said it was easier | 12:00:16 |
| 21 | earlier, but I'm going to ask it.  Did | 12:00:18 |
| 22 | you ever have any discussion with any | 12:00:20 |
| 23 | indenture trustee for the EFIH first | 12:00:22 |
| 24 | liens, the EFIH second liens, TCEH debt, | 12:00:25 |
| 25 | any indenture trustee about any of the | 12:00:28 |

| | | |
|---|---|---|
| 1 | provisions in section 3.07 or anything | 12:00:34 |
| 2 | comparable? | 12:00:36 |
| 3 | A.    To the best of my | 12:00:36 |
| 4 | recollection, I did not. | 12:00:37 |
| 5 | Q.    Do you have any recollection | 12:00:38 |
| 6 | of ever talking with any representative | 12:00:39 |
| 7 | of the indenture trustee for any of the | 12:00:41 |
| 8 | debtors' funded debt about anything at | 12:00:46 |
| 9 | any time? | 12:00:50 |
| 10 | A.    I never called them and I | 12:00:50 |
| 11 | don't recall them ever calling me, or | 12:00:53 |
| 12 | meeting, so no, the answer is no. | 12:00:55 |
| 13 | Q.    Okay.  Can I ask you to turn | 12:00:57 |
| 14 | to section 6.02 of Exhibit number 8. | 12:01:02 |
| 15 | It's on page number 93. | 12:01:15 |
| 16 | A.    I'm there. | 12:01:17 |
| 17 | Q.    Okay.  And that's entitled | 12:01:18 |
| 18 | acceleration, correct? | 12:01:21 |
| 19 | A.    Yes. | 12:01:22 |
| 20 | Q.    Do you recall having any | 12:01:23 |
| 21 | discussion with any EFIH first lien | 12:01:25 |
| 22 | noteholder about section 6.02 either in | 12:01:30 |
| 23 | this indenture or any other indenture for | 12:01:34 |
| 24 | EFIH first lien debt? | 12:01:38 |
| 25 | A.    No. | 12:01:39 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 127

| | | |
|---|---|---|
| 1 | Q.    Do you recall ever having any | 12:01:40 |
| 2 | discussion with any investor in any other | 12:01:41 |
| 3 | high yield debt issued by any of the, any | 12:01:50 |
| 4 | of the debtors regarding the acceleration | 12:01:52 |
| 5 | provision? | 12:01:55 |
| 6 | MR. HOWELL:  Objection -- | 12:01:57 |
| 7 | Q.    Other than the discussion that | 12:01:58 |
| 8 | you had indirectly with Mr. Panossian of | 12:01:59 |
| 9 | Oaktree? | 12:02:02 |
| 10 | A.    And excluding my team and my | 12:02:04 |
| 11 | counsel? | 12:02:10 |
| 12 | Q.    Correct. | 12:02:11 |
| 13 | A.    No. | 12:02:11 |
| 14 | Q.    Okay.  Did you have any | 12:02:12 |
| 15 | discussion with any indenture trustee for | 12:02:16 |
| 16 | any debt issue about section 6.02 or any | 12:02:18 |
| 17 | other acceleration provision of any other | 12:02:22 |
| 18 | indenture? | 12:02:24 |
| 19 | A.    Not to my recollection. | 12:02:25 |
| 20 | Q.    Okay.  Now, you asked, you | 12:02:27 |
| 21 | said earlier, you qualified an answer | 12:02:29 |
| 22 | saying excluding my counsel and my team. | 12:02:31 |
| 23 | I don't want to get into discussions with | 12:02:36 |
| 24 | counsel.  Well let me ask this question. | 12:02:38 |
| 25 | When did you for the first | 12:02:41 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | time have any discussion with any | 12:02:43 |
| 2 | counsel, I'm not asking you for the | 12:02:44 |
| 3 | substance of it, with any counsel | 12:02:46 |
| 4 | regarding the acceleration provision in | 12:02:51 |
| 5 | any indenture? | 12:02:53 |
| 6 | A.   I don't recall the exact date. | 12:02:55 |
| 7 | Q.   Can you give me the year? | 12:02:58 |
| 8 | A.   Probably not. | 12:03:01 |
| 9 | Q.   Was it in connection with | 12:03:03 |
| 10 | potential bankruptcy planning? | 12:03:07 |
| 11 | A.   Probably in connection with | 12:03:11 |
| 12 | bankruptcy planning.  And let me tell you | 12:03:15 |
| 13 | the other specific one that I'm -- I | 12:03:17 |
| 14 | don't recall exactly, but at one point on | 12:03:19 |
| 15 | the TCEH side there were some allegations | 12:03:21 |
| 16 | that we were in default and under a -- | 12:03:26 |
| 17 | geez, I'm forgetting, under a commodity | 12:03:33 |
| 18 | arrangement and they went -- it was the | 12:03:35 |
| 19 | Aurelius matter and they sought to claim | 12:03:38 |
| 20 | that all the debt was accelerated and due | 12:03:42 |
| 21 | and payable. | 12:03:44 |
| 22 | So I think that, you know, was | 12:03:45 |
| 23 | another one that, you know, through that | 12:03:48 |
| 24 | process, the term acceleration might have | 12:03:50 |
| 25 | come up and how it worked and etc.  I | 12:03:54 |

| | | |
|---|---|---|
| 1 | think that was probably back in 2011.  I | 12:03:57 |
| 2 | don't recall the exact dates as to when | 12:04:02 |
| 3 | -- it's publicly disclosed in our | 12:04:03 |
| 4 | matters.  I think that might have been -- | 12:04:05 |
| 5 | and you said any debtor, any high yield | 12:04:07 |
| 6 | debt, so that -- on EFIH side of the | 12:04:10 |
| 7 | house, I had no such discussion other | 12:04:13 |
| 8 | than in connection with bankruptcy | 12:04:16 |
| 9 | planning. | 12:04:18 |
| 10 | Q.   Okay.  You're aware that there | 12:04:19 |
| 11 | is a dispute, that's the reason we're | 12:04:23 |
| 12 | having this deposition, over whether the | 12:04:26 |
| 13 | debtor -- whether EFIH is obligated to | 12:04:29 |
| 14 | pay a so-called make whole premium to the | 12:04:34 |
| 15 | EFIH first liens, right? | 12:04:40 |
| 16 | A.   Yes. | 12:04:41 |
| 17 | Q.   Okay.  And you understand, do | 12:04:41 |
| 18 | you not, that that dispute in part turns | 12:04:44 |
| 19 | on the interplay of the redemption | 12:04:47 |
| 20 | provision of the indenture, section 3.07, | 12:04:51 |
| 21 | and perhaps the acceleration provision of | 12:04:54 |
| 22 | the indenture, section 6.02? | 12:04:57 |
| 23 | MR. HOWELL:  Object to form. | 12:05:00 |
| 24 | A.   I am not specifically up to | 12:05:01 |
| 25 | date as to what are all the sections at | 12:05:02 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 130

| | |
|---|---|
| 1   play and what the arguments you have or | 12:05:05 |
| 2   we have. | 12:05:07 |
| 3        Q.    Let me -- | 12:05:07 |
| 4        A.    I just know that our position | 12:05:08 |
| 5   on those arguments and I've heard | 12:05:09 |
| 6   generally described, but I'm not the | 12:05:11 |
| 7   person to tell you which of these | 12:05:13 |
| 8   sections and why. | 12:05:14 |
| 9        Q.    That's actually not where I'm | 12:05:18 |
| 10   going.  I'm trying to make sure that | 12:05:24 |
| 11   there isn't some discussion you had that | 12:05:24 |
| 12   I need to understand.  Let me try to | 12:05:25 |
| 13   reframe the question. | 12:05:27 |
| 14          You do understand generally, | 12:05:27 |
| 15   Mr. Keglevic, that the dispute concerns | 12:05:32 |
| 16   whether the make whole is payable given | 12:05:34 |
| 17   that EFIH is in bankruptcy? | 12:05:40 |
| 18          MR. HOWELL:  Object to form. | 12:05:43 |
| 19        A.    I'd probably like to make sure | 12:05:44 |
| 20   that's what my counsel believes the issue | 12:05:56 |
| 21   is. | 12:05:57 |
| 22        Q.    Mr. Keglevic, let me come at | 12:05:58 |
| 23   it a different way.  EFIH is in | 12:06:00 |
| 24   bankruptcy, right? | 12:06:02 |
| 25        A.    We are indeed. | 12:06:03 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 131

```
 1          Q.    Okay.  And let's turn back to         12:06:05

 2     section 3.07 if you would, all right.            12:06:07

 3     Tell me when you're there.                       12:06:19

 4          A.    Can you give me a page                12:06:20

 5     reference, I'm sorry, I haven't kept the         12:06:21

 6     page mark.                                       12:06:23

 7          Q.    That's okay, it's on page 55.         12:06:24

 8          A.    I'm there.                            12:06:26

 9          Q.    I want you to turn to 3.07 (a)        12:06:27

10     as in apple, and the language says "At           12:06:30

11     any time prior to December 1, 2015, the          12:06:33

12     issuer may redeem all or a part of the           12:06:36

13     notes at a redemption price equal to 100         12:06:38

14     percent of the principal amount of the           12:06:39

15     notes redeemed plus the applicable               12:06:40

16     premium as of, and accrued and unpaid            12:06:42

17     interest to, the date of redemption,             12:06:46

18     subject to the rights of the holders of          12:06:47

19     notes of record on the relevant record           12:06:49

20     date to receive interest due on the              12:06:51

21     relevant interest date."                         12:06:53

22               I read that correctly, did I           12:06:55

23     not?                                             12:06:56

24          A.    You did.                              12:06:56

25          Q.    I think we can stipulate, I           12:06:58
```

Merrill Corporation - New York
1-800-325-3376                    www.merrillcorp.com/law

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 132

| | | |
|---|---|---|
| 1 | don't really want to waste your time, | 12:06:59 |
| 2 | that there are two conditions here to the | 12:07:01 |
| 3 | obligation to pay the optional | 12:07:03 |
| 4 | redemption.  One, the debtors must be | 12:07:06 |
| 5 | redeeming all or part of the notes, and | 12:07:08 |
| 6 | two, they must be doing so prior to | 12:07:10 |
| 7 | December 1, 2015, right? | 12:07:12 |
| 8 | MR. HOWELL:  Object to form. | 12:07:16 |
| 9 | A.    You know, this is where I have | 12:07:17 |
| 10 | a hard time, I'll tell you, these are | 12:07:19 |
| 11 | complicated documents, there's a lot of | 12:07:21 |
| 12 | sections that go in tandem with each | 12:07:22 |
| 13 | other.  I don't ever put myself in a | 12:07:25 |
| 14 | position of interpreting what an | 12:07:28 |
| 15 | indenture says without my legal team and | 12:07:30 |
| 16 | having them tell me what they believe the | 12:07:32 |
| 17 | words say. | 12:07:34 |
| 18 | Q.    So here's --- | 12:07:34 |
| 19 | A.    So I am not able to form a | 12:07:36 |
| 20 | conclusion or agree with you on any of | 12:07:38 |
| 21 | these provisions as to what you say they | 12:07:39 |
| 22 | mean.  I just don't behave that way. | 12:07:41 |
| 23 | Q.    Okay.  Let me -- let me tell | 12:07:43 |
| 24 | you where you're heading and maybe if I'm | 12:07:45 |
| 25 | heading somewhere you can short-circuit | 12:07:47 |

| | | |
|---|---|---|
| 1 | we can all have an earlier day. | 12:07:50 |
| 2 | A.    Okay. | 12:07:52 |
| 3 | Q.    You said just now these are | 12:07:52 |
| 4 | complicated provisions, I wouldn't | 12:07:57 |
| 5 | interpret them without talking to my | 12:08:00 |
| 6 | counsel.  I fully expect that you have | 12:08:02 |
| 7 | had conversations both in the time | 12:08:05 |
| 8 | leading up to the bankruptcy, in the | 12:08:08 |
| 9 | bankruptcy planning, and during the | 12:08:10 |
| 10 | bankruptcy, in your prep for your | 12:08:14 |
| 11 | deposition about is this provision, | 12:08:16 |
| 12 | section 3.07 (a) triggered in the | 12:08:20 |
| 13 | circumstance where EFIH refinances the | 12:08:23 |
| 14 | notes in bankruptcy. | 12:08:26 |
| 15 | A.    I can assure you that in no | 12:08:27 |
| 16 | meeting did I ever have that we -- | 12:08:31 |
| 17 | somebody quoted me sections of the | 12:08:33 |
| 18 | indenture.  Somebody just gave me, in my | 12:08:35 |
| 19 | discussions with counsel leading up to | 12:08:37 |
| 20 | the bankruptcy, they gave me overall | 12:08:39 |
| 21 | assessments. | 12:08:41 |
| 22 | MR. HOWELL:  Let me just make | 12:08:42 |
| 23 | sure to caution you not to provide | 12:08:43 |
| 24 | any specific privileged | 12:08:45 |
| 25 | information.  With that caveat, | 12:08:47 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | please continue. | 12:08:48 |
| 2 | A.    So nobody ever took me through | 12:08:50 |
| 3 | the chart and showed me what language and | 12:08:53 |
| 4 | why.  I just got overall assessments from | 12:08:57 |
| 5 | counsel. | 12:09:01 |
| 6 | Q.    And you got overall | 12:09:01 |
| 7 | assessments from counsel, you've gotten | 12:09:03 |
| 8 | overall assessments from counsel since | 12:09:05 |
| 9 | the bankruptcy filing, right?  I'm not | 12:09:07 |
| 10 | saying exclusively, but -- | 12:09:11 |
| 11 | A.    Yes. | 12:09:13 |
| 12 | Q.    Okay.  And did you get overall | 12:09:13 |
| 13 | assessments from counsel about this | 12:09:16 |
| 14 | question of whether the applicable | 12:09:18 |
| 15 | premium would be payable if EFIH filed | 12:09:20 |
| 16 | for bankruptcy in some period prior to | 12:09:23 |
| 17 | the bankruptcy filing? | 12:09:26 |
| 18 | A.    Yes, I don't think we would | 12:09:28 |
| 19 | have offered a settlement amount if we | 12:09:31 |
| 20 | thought -- you know, our company's | 12:09:33 |
| 21 | position is that we don't owe it but we | 12:09:36 |
| 22 | were happy to settle it at what we | 12:09:43 |
| 23 | thought was a reasonable settlement price | 12:09:45 |
| 24 | versus going through the cost of | 12:09:48 |
| 25 | litigation. | 12:09:50 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 135

```
 1        Q.    Did you have any discussions          12:09:51

 2   with counsel about this subject we're            12:09:51

 3   just talking about at the time the deals         12:09:54

 4   were negotiated?                                 12:09:56

 5        A.    I'm sorry, what deals?  The           12:09:58

 6   RSA?                                             12:10:01

 7        Q.    No.  I was being -- I was             12:10:02

 8   totally unclear.  Let me make a clear            12:10:04

 9   record.                                          12:10:06

10            I want to figure out whether           12:10:07

11   there were discussions, not in                   12:10:10

12   anticipation of bankruptcy in 2013 and           12:10:12

13   2014 and after bankruptcy, but when this         12:10:16

14   debt was issued, for example, on Exhibit         12:10:20

15   8 in 2010.  At the time when the debt was        12:10:22

16   issued in 2010 that is Exhibit 8, did you        12:10:27

17   speak to your counsel about whether if           12:10:34

18   EFIH subsequently filed for bankruptcy it        12:10:39

19   would have to pay, were it to refinance          12:10:42

20   the debt, the applicable premium, any            12:10:45

21   premium?                                         12:10:48

22        A.    No.                                   12:10:48

23        Q.    Okay.  This is not the only           12:10:49

24   issue of EFIH debt, we've talked about           12:10:52

25   that, there was other debt issued in 2012        12:10:55
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | toward the end of the year, I think it's | 12:10:58 |
| 2 | actually December.  In connection with | 12:11:00 |
| 3 | that debt, did you have any discussions | 12:11:03 |
| 4 | with your counsel about whether were EFIH | 12:11:05 |
| 5 | to file for bankruptcy it would have to | 12:11:09 |
| 6 | pay the applicable premium were it later | 12:11:12 |
| 7 | to refinance the debt? | 12:11:15 |
| 8 | A.    The first time that the issue | 12:11:16 |
| 9 | came up was in connection with the TCEH | 12:11:18 |
| 10 | second lien discussion that we've | 12:11:21 |
| 11 | referenced with respect to Oaktree. | 12:11:23 |
| 12 | Q.    Okay. | 12:11:25 |
| 13 | A.    After that, we, my belief is | 12:11:25 |
| 14 | we, the language, deals we did after that | 12:11:30 |
| 15 | was consistent with that document and I | 12:11:33 |
| 16 | therefore did not have any further | 12:11:35 |
| 17 | discussions. | 12:11:37 |
| 18 | Q.    I asked you, and I'm sorry, | 12:11:37 |
| 19 | I've just got to go through methodically | 12:11:43 |
| 20 | to have a clear record, I asked you | 12:11:47 |
| 21 | whether you or anyone had discussions | 12:11:48 |
| 22 | with counsel in connection with any of | 12:11:50 |
| 23 | the EFIH first lien issuances and I think | 12:11:54 |
| 24 | you've answered that. | 12:11:57 |
| 25 | Now let me change the subject | 12:11:58 |

| | | |
|---|---|---|
| 1 | from discussions with counsel to | 12:12:01 |
| 2 | discussions with noncounsel, discussions | 12:12:04 |
| 3 | you might have had with Mr. Horton or Mr. | 12:12:05 |
| 4 | Moldovan. | 12:12:08 |
| 5 | Putting the TCEH second lien | 12:12:08 |
| 6 | situation to the side, are you -- did you | 12:12:12 |
| 7 | personally have any discussions at any | 12:12:16 |
| 8 | time prior to the bankruptcy planning | 12:12:20 |
| 9 | about whether if EFIH went into | 12:12:24 |
| 10 | bankruptcy and then sought to refinance | 12:12:28 |
| 11 | the debt during bankruptcy, it would have | 12:12:30 |
| 12 | to pay the applicable premium? | 12:12:34 |
| 13 | A.   Typically, when we had those | 12:12:41 |
| 14 | conversations it was a group meeting | 12:12:44 |
| 15 | with, Mr. Horton may very well have been | 12:12:47 |
| 16 | there, my internal counsel and external | 12:12:49 |
| 17 | counsel.  I don't -- I don't recall any | 12:12:51 |
| 18 | specific just with Mr. Horton.  To me, | 12:12:53 |
| 19 | it's a legal matter so I can't imagine I | 12:12:55 |
| 20 | spoke to him about it without counsel in | 12:12:59 |
| 21 | the room.  And frankly, my recollection | 12:13:01 |
| 22 | is any time we discussed it was either me | 12:13:04 |
| 23 | directly with counsel, Mr. Horton was | 12:13:08 |
| 24 | there, counsel was also there. | 12:13:10 |
| 25 | Q.   And counsel being Kirkland & | 12:13:12 |

```
 1    Ellis?                                      12:13:14

 2         A.    Counsel being internal counsel   12:13:14

 3    for the company and Kirkland & Ellis.       12:13:16

 4         Q.    I think because you're telling   12:13:17

 5    me Kirkland & Ellis was there, and I        12:13:19

 6    think candidly we're not communicating,     12:13:21

 7    so I think my questions are not clear.      12:13:23

 8              I want to put aside               12:13:25

 9    discussions that occurred either            12:13:28

10    post-bankruptcy or for planning for         12:13:30

11    bankruptcy.                                 12:13:33

12         A.    Okay.                            12:13:33

13         Q.    I'm talking about discussions    12:13:33

14    at the time of debt issuance, at the time   12:13:35

15    the indentures issued, the parties reach    12:13:38

16    agreement.                                  12:13:41

17              With respect to -- other than     12:13:41

18    the TCEH second lien discussions with Mr.   12:13:46

19    Panossian, are you aware of any             12:13:48

20    discussion that the debtors had with any    12:13:51

21    holder of any -- I'm sorry, let me back     12:13:58

22    up.  I'm now getting confused.              12:14:00

23              Again, I want to start with       12:14:03

24    the same circumstance.  I want you to put   12:14:04

25    aside discussions in anticipation of        12:14:06
```

| | |
|---|---|
| 1 | bankruptcy and discussions during the | 12:14:08 |
| 2 | bankruptcy.  Did you ever have any | 12:14:10 |
| 3 | discussions with anyone who was not a | 12:14:13 |
| 4 | lawyer, other than the indirect | 12:14:16 |
| 5 | discussions with Mr. Panossian, about | 12:14:19 |
| 6 | whether an applicable premium would be | 12:14:22 |
| 7 | payable were the issuer to go in the | 12:14:23 |
| 8 | bankruptcy and seek to refinance the debt | 12:14:27 |
| 9 | in bankruptcy? | 12:14:30 |
| 10 | MR. HOWELL:  Object to form. | 12:14:31 |
| 11 | Go ahead. | 12:14:33 |
| 12 | A.    What I -- so thank you for | 12:14:33 |
| 13 | that clarification.  Just in the | 12:14:35 |
| 14 | timeline, there may have been a brief | 12:14:39 |
| 15 | confirmation that after the Mr. Panossian | 12:14:40 |
| 16 | discussion and the second lien TCEH debt, | 12:14:43 |
| 17 | I believe subsequent to that we issued | 12:14:46 |
| 18 | the second lien EFIH bonds.  And I asked, | 12:14:48 |
| 19 | you know, are there any changes in that | 12:14:54 |
| 20 | language because now that issue had come | 12:14:56 |
| 21 | to the fore, and I was told no, we've | 12:14:58 |
| 22 | incorporated the exact same language in | 12:15:01 |
| 23 | those debts, and that was the extent of | 12:15:03 |
| 24 | the discussion pre-bankruptcy planning. | 12:15:06 |
| 25 | Q.    Okay.  And I think you said | 12:15:07 |

```
 1    this to me, but tell me if I                    12:15:09
 2    misunderstood you.  The first time you          12:15:12
 3    recall the issue of whether an applicable       12:15:17
 4    premium might be payable or might not be        12:15:20
 5    payable if the issuer refinanced the debt       12:15:24
 6    in bankruptcy that you recollect is the         12:15:29
 7    discussion with Mr. Panossian regarding         12:15:32
 8    the TCEH debt, right?                           12:15:34
 9         A.    That's correct.                      12:15:37
10         Q.    Okay.  And I will tell you           12:15:37
11    those discussions, I'm happy to show you        12:15:42
12    emails if you want, were in September and       12:15:45
13    October of 2010, after, for example, the        12:15:47
14    debt issuance that is in front of you           12:15:54
15    that is Exhibit number 8 for the EFIH           12:15:56
16    first lien debt?                                12:15:59
17         A.    That sounds right to me as           12:16:00
18    well.                                           12:16:01
19         Q.    So is it fair to say that --         12:16:05
20    and I understand you're not the company         12:16:06
21    representative, I want the personal --          12:16:08
22    I'm asking you your personal knowledge.         12:16:12
23    At the time EFIH entered into the               12:16:17
24    indenture that is Keglevic Exhibit number       12:16:20
25    8 I believe, did you have any personal          12:16:23
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | understanding as to whether were EFIH | 12:16:41 |
| 2 | later to file for bankruptcy it would be | 12:16:44 |
| 3 | able to refinance the debt in bankruptcy | 12:16:47 |
| 4 | before December 1, 2015 and not have to | 12:16:50 |
| 5 | pay the make whole premium? | 12:16:55 |
| 6 | A.    I did not. | 12:16:57 |
| 7 | Q.    To your knowledge, did anyone | 12:16:57 |
| 8 | at EFIH have any understanding as to | 12:17:02 |
| 9 | whether were EFIH later to file for | 12:17:10 |
| 10 | bankruptcy it would be able to refinance | 12:17:12 |
| 11 | the debt in bankruptcy before December 1, | 12:17:15 |
| 12 | 2015 and not have to pay the make whole | 12:17:21 |
| 13 | premium? | 12:17:23 |
| 14 | A.    You know, as I said, my team | 12:17:23 |
| 15 | goes through these and, you know, creates | 12:17:26 |
| 16 | their own understanding of what these | 12:17:29 |
| 17 | documents mean.  I had no personal | 12:17:30 |
| 18 | discussion with anybody, but I'm unable | 12:17:32 |
| 19 | to tell you whether anybody on that team | 12:17:33 |
| 20 | thought about it or didn't think about | 12:17:36 |
| 21 | it. | 12:17:38 |
| 22 | Q.    Okay.  Fair enough.  I keep | 12:17:38 |
| 23 | using the term, I'm going to slightly | 12:17:48 |
| 24 | change subjects here, make whole premium. | 12:17:50 |
| 25 | You've heard that term before? | 12:17:52 |

| | | |
|---|---|---|
| 1 | A.    I absolutely have. | 12:17:53 |
| 2 | Q.    Okay.  And again, I want to | 12:17:54 |
| 3 | differentiate, Mr. Keglevic, between sort | 12:17:57 |
| 4 | of hearing that term in bankruptcy or | 12:18:02 |
| 5 | during bankruptcy prep from sort of going | 12:18:05 |
| 6 | back to when these deals were negotiated. | 12:18:08 |
| 7 | Had you heard the term referred to as a | 12:18:11 |
| 8 | make whole premium when you were, when | 12:18:13 |
| 9 | you, when the company was issuing this | 12:18:16 |
| 10 | debt, when EFIH was issuing the debt? | 12:18:19 |
| 11 | A.    I don't think so, I think -- I | 12:18:21 |
| 12 | knew there were call provisions, but I | 12:18:23 |
| 13 | don't think I remember the use of those | 12:18:29 |
| 14 | terms until we got to probably the Mr. | 12:18:30 |
| 15 | Panossian discussion. | 12:18:34 |
| 16 | Q.    Okay. | 12:18:35 |
| 17 | A.    And then in bankruptcy | 12:18:36 |
| 18 | planning. | 12:18:37 |
| 19 | Q.    Did you -- have you ever | 12:18:37 |
| 20 | formed an understanding as to why they | 12:18:39 |
| 21 | are often described as make whole | 12:18:43 |
| 22 | provisions? | 12:18:45 |
| 23 | A.    Yes, generally. | 12:18:46 |
| 24 | Q.    Okay.  Could you tell me what | 12:18:48 |
| 25 | that understanding is? | 12:18:50 |

| | | |
|---|---|---|
| 1 | A.    Just that it's, you know, | 12:18:52 |
| 2 | continuation of the amounts under the | 12:18:56 |
| 3 | original indenture as if they hadn't been | 12:18:58 |
| 4 | redeemed. | 12:19:00 |
| 5 | Q.    Is someone being made whole? | 12:19:01 |
| 6 | MR. HOWELL:  Objection. | 12:19:04 |
| 7 | Q.    As you understand the use of | 12:19:05 |
| 8 | the term? | 12:19:07 |
| 9 | MR. HOWELL:  Object to form. | 12:19:07 |
| 10 | A.    I don't know.  I know that's a | 12:19:08 |
| 11 | common euphemism for that calculation, | 12:19:10 |
| 12 | but the calculation is very specific.  I | 12:19:12 |
| 13 | don't know how you make the calculation. | 12:19:14 |
| 14 | I don't know if that was the intent of | 12:19:16 |
| 15 | the parties.  I didn't negotiate it. | 12:19:17 |
| 16 | Q.    Have you -- are you familiar | 12:19:19 |
| 17 | with the term call to yield? | 12:20:10 |
| 18 | A.    Not really. | 12:20:13 |
| 19 | Q.    Are you familiar with the term | 12:20:14 |
| 20 | call protection? | 12:20:17 |
| 21 | A.    I've heard it, but I don't | 12:20:18 |
| 22 | know how it's defined.  I think it can be | 12:20:20 |
| 23 | defined -- | 12:20:22 |
| 24 | Q.    Do you have an understanding | 12:20:22 |
| 25 | of -- | 12:20:23 |

| | |
|---|---|
| 1 | A.    -- differently. | 12:20:23 |
| 2 | Q.    Do you have an understanding | 12:20:24 |
| 3 | of the term? | 12:20:25 |
| 4 | A.    I don't -- I don't -- to me | 12:20:25 |
| 5 | this isn't a memory test to see what a | 12:20:28 |
| 6 | general finance interpretation.  This | 12:20:30 |
| 7 | document speaks for itself.  It's got | 12:20:32 |
| 8 | defined terms and I'll let the court | 12:20:34 |
| 9 | decide what the defined terms mean.  I'm | 12:20:36 |
| 10 | not going to take general terms and say | 12:20:38 |
| 11 | what I think they mean because I don't | 12:20:40 |
| 12 | think that matters what I think they | 12:20:42 |
| 13 | mean.  I think it matters what's in the | 12:20:43 |
| 14 | document. | 12:20:45 |
| 15 | Q.    Okay.  Mr. Keglevic, to your | 12:20:45 |
| 16 | knowledge, the indenture that is Exhibit | 12:21:36 |
| 17 | 8, if you have a different understanding | 12:21:42 |
| 18 | of different indentures tell me, was | 12:21:44 |
| 19 | prepared by EFIH and its counsel along | 12:21:47 |
| 20 | with counsel for the underwriters? | 12:21:51 |
| 21 | A.    I don't know exactly who | 12:21:54 |
| 22 | prepared it.  I just don't have that | 12:21:58 |
| 23 | information. | 12:22:03 |
| 24 | MR. ANKER:  I'm told we have | 12:22:04 |
| 25 | two minutes until the tape ends, so | 12:22:06 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 145

| | | |
|---|---|---|
| 1 | why don't we take a break. | 12:22:08 |
| 2 | THE VIDEOGRAPHER:  Thank you, | 12:22:09 |
| 3 | one moment, please, watch your | 12:22:10 |
| 4 | microphones.  Here now marks the | 12:22:11 |
| 5 | end of tape 2 of the deposition of | 12:22:13 |
| 6 | Mr. Paul Keglevic, the time is | 12:22:14 |
| 7 | 12:22 p.m., we're now off the | 12:22:17 |
| 8 | record. | 12:22:18 |
| 9 | (Luncheon recess:  12:22 p.m.) | 12:22:18 |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

```
 1        A F T E R N O O N   S E S S I O N          13:19:08

 2                  1:19 p.m.                         13:19:09

 3            THE VIDEOGRAPHER:  Here now             13:19:09

 4       marks the beginning of tape 3 of            13:19:17

 5       the deposition of Mr. Paul                  13:19:27

 6       Keglevic, the time is 1:19 p.m.,            13:19:30

 7       we're back on the record.                   13:19:34

 8            PAUL KEGLEVIC,                          13:19:35

 9       resumed, having been previously             13:19:35

10       duly sworn, was examined and                13:19:35

11       testified further as follows:               13:19:35

12            CONTINUED EXAMINATION                   13:19:35

13            BY MR. ANKER:                           13:19:36

14       Q.   Good afternoon, Mr. Keglevic.          13:19:36

15       I asked you this morning some questions     13:19:39

16       about a dealer manager agreement and        13:19:42

17       representations regarding solvency and I    13:19:46

18       believe I asked it to you with respect to   13:19:49

19       an offering in 2010.  What I'm going to     13:19:51

20       hand you is the dealer manager agreement    13:19:57

21       for what I believe is the last EFIH         13:20:00

22       offering made.  You'll see this is dated    13:20:05

23       December 21, 2012.                           13:20:07

24            MR. ANKER:  It will be                  13:20:13

25       Keglevic Exhibit 9 and bears the            13:20:15
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Bates stamps EFH 0007693 through | 13:20:16 |
| 2 | 785, inclusive. | 13:20:24 |
| 3 | (Keglevic Exhibit 9 for | 13:20:24 |
| 4 | identification, Bates stamped EFH | 13:20:18 |
| 5 | 0007693 through 0076785.) | 13:20:19 |
| 6 | Q.    Now, Mr. Keglevic, let me | 13:20:38 |
| 7 | start by asking if you recognize this | 13:20:39 |
| 8 | document? | 13:20:41 |
| 9 | A.    I don't.  I generally -- you | 13:20:44 |
| 10 | know, it looks like the dealer manager | 13:20:46 |
| 11 | agreement.  I wasn't -- I'm generally | 13:20:49 |
| 12 | familiar with it, but I wouldn't have | 13:20:51 |
| 13 | recognized it otherwise. | 13:20:52 |
| 14 | Q.    Okay.  In connection with | 13:20:53 |
| 15 | these dealer manager agreements, the | 13:20:57 |
| 16 | agreement itself specifies there will be | 13:20:59 |
| 17 | an officer's certificate, is that your | 13:21:01 |
| 18 | recollection? | 13:21:04 |
| 19 | A.    I think that's right. | 13:21:05 |
| 20 | Q.    I will tell you we have not | 13:21:06 |
| 21 | been able to locate the officer's | 13:21:09 |
| 22 | certificate for this one, so I can't | 13:21:11 |
| 23 | represent to you whether you were the | 13:21:12 |
| 24 | signatory or someone else was. | 13:21:14 |
| 25 | MR. ANKER:  Mr. Howell, we | 13:21:17 |

| | | |
|---|---|---|
| 1 | would ask you to either direct us | 13:21:18 |
| 2 | in the current production to the | 13:21:20 |
| 3 | officer's certificate or, if it has | 13:21:22 |
| 4 | not already been produced, please | 13:21:25 |
| 5 | provide us with a copy. | 13:21:26 |
| 6 | Q.    But I think you testified, and | 13:21:30 |
| 7 | again, I don't want to put words in your | 13:21:31 |
| 8 | mouth, Mr. Keglevic, that whether you | 13:21:33 |
| 9 | were the signatory or not, you're | 13:21:35 |
| 10 | comfortable that the representations made | 13:21:37 |
| 11 | in these different dealer manager | 13:21:39 |
| 12 | agreements were true when made, right? | 13:21:42 |
| 13 | A.    That's correct.  The company | 13:21:45 |
| 14 | stands behind the representations in | 13:21:48 |
| 15 | these dealer manager agreements. | 13:21:50 |
| 16 | Q.    And the company took these | 13:21:52 |
| 17 | representations seriously, right? | 13:21:54 |
| 18 | A.    We did. | 13:21:58 |
| 19 | Q.    This one, like others, has a | 13:21:58 |
| 20 | solvency rep, and let me bring you to it. | 13:22:00 |
| 21 | Take a look at page 5, that's the | 13:22:03 |
| 22 | beginning of where you'll see in | 13:22:05 |
| 23 | paragraph 3 representations and | 13:22:06 |
| 24 | warranties, right? | 13:22:08 |
| 25 | A.    Yes. | 13:22:11 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Q.    Okay.  And now if you turn | 13:22:12 |
| 2 | forward to page 14. | 13:22:18 |
| 3 | A.    Yes. | 13:22:23 |
| 4 | Q.    Are you there? | 13:22:23 |
| 5 | A.    I am. | 13:22:23 |
| 6 | Q.    Take a look at (gg). | 13:22:24 |
| 7 | A.    There. | 13:22:28 |
| 8 | Q.    And (gg) is a solvency | 13:22:28 |
| 9 | representation with respect to EFIH, | 13:22:33 |
| 10 | right? | 13:22:35 |
| 11 | MR. HOWELL:  Object to form. | 13:22:36 |
| 12 | Q.    As you understand it? | 13:22:38 |
| 13 | A.    Yes, it's consistent with the | 13:22:39 |
| 14 | -- I answer the same way on this one that | 13:22:46 |
| 15 | we did on the prior indenture that you | 13:22:48 |
| 16 | showed me, they appear to be the same | 13:22:50 |
| 17 | representations. | 13:22:52 |
| 18 | Q.    So as you understood it at the | 13:22:53 |
| 19 | time, and understand it today, this is a | 13:22:54 |
| 20 | representation by EFIH that EFIH, as of | 13:22:56 |
| 21 | December 21, 2012, and immediately after | 13:23:03 |
| 22 | the exchange, will be solvent within the | 13:23:07 |
| 23 | meaning of solvency as defined in | 13:23:11 |
| 24 | section, in subparagraph (gg) of | 13:23:14 |
| 25 | paragraph 3, am I right? | 13:23:17 |

| | | |
|---|---|---|
| 1 | A.    Yes, as the words suggest. | 13:23:18 |
| 2 | Q.    And again, the test for | 13:23:20 |
| 3 | solvency here is conjunctive, not | 13:23:23 |
| 4 | disjunctive, that is you understood and | 13:23:26 |
| 5 | understand that the company was | 13:23:29 |
| 6 | representing that it satisfied each of | 13:23:30 |
| 7 | the four tests specified? | 13:23:33 |
| 8 | A.    Yes. | 13:23:35 |
| 9 | Q.    Okay.  Now, this is as of | 13:23:36 |
| 10 | December 21, 2012.  And you'll notice | 13:23:41 |
| 11 | that the first of the four, if I can keep | 13:23:47 |
| 12 | you on that page. | 13:23:51 |
| 13 | A.    Okay. | 13:23:53 |
| 14 | Q.    Is what sometimes I think we | 13:23:53 |
| 15 | lawyers call the balance sheet test, I | 13:23:57 |
| 16 | don't know whether you call it that, but | 13:24:00 |
| 17 | I'll read it, "The fair market value of | 13:24:01 |
| 18 | the assets of EFIH is greater than the | 13:24:04 |
| 19 | total of the liabilities, including | 13:24:05 |
| 20 | contingent liabilities of EFIH." | 13:24:07 |
| 21 | I read that correctly, did I | 13:24:10 |
| 22 | not? | 13:24:11 |
| 23 | A.    You did. | 13:24:12 |
| 24 | Q.    And whether you use that term | 13:24:12 |
| 25 | or not, you understand what I mean by it | 13:24:14 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 151

| | | |
|---|---|---|
| 1 | being a balance sheet test, the assets at | 13:24:16 |
| 2 | fair market value are greater than the | 13:24:18 |
| 3 | liabilities? | 13:24:21 |
| 4 | A.   I do have that understanding | 13:24:21 |
| 5 | -- | 13:24:21 |
| 6 | Q.   Okay. | 13:24:24 |
| 7 | A.   -- of this. | 13:24:24 |
| 8 | Q.   Now, as I understand it, the | 13:24:25 |
| 9 | principal, indeed almost only asset of | 13:24:28 |
| 10 | EFIH other than any cash it's holding at | 13:24:32 |
| 11 | any point in time, is the value of its | 13:24:35 |
| 12 | equity in Oncor, right? | 13:24:37 |
| 13 | A.   Well, there's cash.  I think | 13:24:39 |
| 14 | -- I'm not sure at this date, but they | 13:24:40 |
| 15 | also owned a significant amount of bonds | 13:24:42 |
| 16 | of EFH for which they were paid interest | 13:24:45 |
| 17 | income for many years, which were in | 13:24:48 |
| 18 | excess of a billion dollars and carried, | 13:24:50 |
| 19 | you know, reasonably high coupons.  So I | 13:24:52 |
| 20 | would consider that a material asset. | 13:24:54 |
| 21 | Q.   Okay.  EFIH still owns those | 13:24:56 |
| 22 | bonds today, right, and still owned them | 13:25:02 |
| 23 | as of the petition date, right? | 13:25:03 |
| 24 | A.   Not all of them. | 13:25:05 |
| 25 | Q.   Owned most of them, right? | 13:25:06 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 152

```
 1          A.   I don't think it's most of      13:25:07
 2    them.                                       13:25:08
 3          Q.   You're saying between December   13:25:09
 4    21, 2012 and the petition date EFIH sold    13:25:14
 5    some of those bonds?                        13:25:21
 6          A.    No, I don't know the specific   13:25:22
 7    date that it was done, but it could have    13:25:24
 8    been before December 21st, 2012, I just     13:25:29
 9    don't recall, but there was a substantial   13:25:31
10    amount of EFH bonds that were dividended    13:25:33
11    to the parent.  So if that dividend        13:25:37
12    happened after that, it would have been a   13:25:42
13    substantial -- before December 21st,        13:25:43
14    2012, it would have been a substantial      13:25:46
15    asset as of that date.  I just don't        13:25:47
16    recall the date we did the dividends.       13:25:50
17    And further, there are still some of        13:25:52
18    those bonds held by EFIH so I didn't want   13:25:55
19    to make you think that there were none      13:26:00
20    held.  There are still some.  But at one    13:26:02
21    point there was a greater amount than       13:26:05
22    existed pre-petition.                       13:26:06
23          Q.   And I presume -- when you say    13:26:08
24    those bonds were dividended to the          13:26:10
25    parent, they were dividended by EFIH to     13:26:12
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 153

| | | |
|---|---|---|
| 1 | EFH? | 13:26:14 |
| 2 | A.    Yes. | 13:26:14 |
| 3 | Q.    Okay.   And I presume, but tell | 13:26:15 |
| 4 | me if I'm wrong, EFIH -- the company -- | 13:26:18 |
| 5 | EFIH would not have made that dividend if | 13:26:21 |
| 6 | it believed that that dividend would | 13:26:23 |
| 7 | cause EFIH to become insolvent, right? | 13:26:25 |
| 8 | A.    That's correct. | 13:26:27 |
| 9 | Q.    Now, the single largest asset, | 13:26:27 |
| 10 | I think you would agree with me as of | 13:26:35 |
| 11 | December 21, 2012 of EFIH, was its equity | 13:26:37 |
| 12 | in Oncor, right? | 13:26:41 |
| 13 | A.    It would be, yes, the value of | 13:26:42 |
| 14 | the stock that it held. | 13:26:46 |
| 15 | Q.    Okay.   And the total amount of | 13:26:47 |
| 16 | stock it held was approximately 80 | 13:26:50 |
| 17 | percent as of December 21, 2012 and was | 13:26:53 |
| 18 | still 80 percent as of the petition date, | 13:26:57 |
| 19 | right? | 13:26:59 |
| 20 | A.    Yes, I believe them to be the | 13:26:59 |
| 21 | same. | 13:27:01 |
| 22 | Q.    Okay.   And I have been told, | 13:27:02 |
| 23 | but maybe I'm wrong on this so I'm really | 13:27:04 |
| 24 | asking your testimony, that Oncor is a | 13:27:06 |
| 25 | stable asset, it throws off cash flow in | 13:27:12 |

| | | |
|---|---|---|
| 1 | a relatively stable way, is that a fair | 13:27:17 |
| 2 | statement? | 13:27:21 |
| 3 | MR. HOWELL:  Object to form. | 13:27:21 |
| 4 | A.     That's a -- that's a very | 13:27:22 |
| 5 | general statement.  Regulated utilities | 13:27:25 |
| 6 | typically have less, that are publicly | 13:27:28 |
| 7 | traded have less beta than the general | 13:27:32 |
| 8 | market as a whole.  But, you know, | 13:27:34 |
| 9 | specifically with respect to Oncor, | 13:27:38 |
| 10 | depending on their -- and let me give you | 13:27:40 |
| 11 | an example.  They did a major | 13:27:43 |
| 12 | construction program that was called | 13:27:45 |
| 13 | CREZ, an automated meter reading.  When | 13:27:47 |
| 14 | they substantially increased the amount | 13:27:50 |
| 15 | of construction expenditures it has a | 13:27:52 |
| 16 | material effect on the cash that goes | 13:27:55 |
| 17 | upstream, but, you know, Oncor's ability | 13:27:56 |
| 18 | to increase its net income and rate base, | 13:28:00 |
| 19 | which is effectively the way it derives | 13:28:04 |
| 20 | net income, typically has to take place | 13:28:06 |
| 21 | through construction, and construction is | 13:28:08 |
| 22 | difficult to do overnight. | 13:28:10 |
| 23 | So generally speaking, stable | 13:28:11 |
| 24 | is in the words of the beholder.  I'm | 13:28:15 |
| 25 | saying it has less typically beta than do | 13:28:19 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

1    other organizations and certainly less                13:28:22

2    beta than does the competitive side of                13:28:24

3    our business.                                         13:28:26

4         Q.    Is a fair synonym, I want to              13:28:29

5    understand how you use the term beta,                 13:28:33

6    volatility?                                           13:28:37

7         A.    Yes, that's how I am using                13:28:37

8    beta.                                                 13:28:39

9         Q.    Do you have any reason to                 13:28:40

10   believe, and I'm now looking at the                   13:28:41

11   balance sheet test, that the value of                 13:28:43

12   EFIH's interest in Oncor materially                   13:28:50

13   deteriorated from December 21, 2012 up to             13:28:55

14   April 28th, 2014?                                     13:29:03

15        A.    I'd have to look at the                   13:29:07

16   interim balance sheets, I talked about                13:29:09

17   the one issue that could be material and              13:29:11

18   that is the amount of bonds held by EFH               13:29:12

19   that could have been distributed.  It                 13:29:15

20   could have used cash.  It just -- I can't             13:29:18

21   make that determination unless you give               13:29:21

22   me the interim information.                           13:29:22

23        Q.    Okay.  Had the debtors made a             13:29:24

24   determination -- I understand you may not             13:29:28

25   be able to make the determination without            13:29:31

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | looking at some hard numbers and doing | 13:29:33 |
| 2 | some hard analysis, and my question now | 13:29:36 |
| 3 | is going to be did you look at the hard | 13:29:38 |
| 4 | numbers and did you do that hard | 13:29:40 |
| 5 | analysis?  Had the debtors as of April | 13:29:42 |
| 6 | 28th, 2014 done an analysis, to the best | 13:29:44 |
| 7 | of your knowledge, of whether the value | 13:29:51 |
| 8 | of EFIH's interest in Oncor had | 13:29:53 |
| 9 | materially deteriorated since December | 13:29:59 |
| 10 | 21, 2012? | 13:30:02 |
| 11 |     A.    I'm sure that nobody would | 13:30:07 |
| 12 | have picked December 21st, 2012 and done | 13:30:09 |
| 13 | a comparison to the date of the filing. | 13:30:11 |
| 14 |         I'm not specifically aware if | 13:30:13 |
| 15 | we did that test, you know, prior to | 13:30:14 |
| 16 | filing.  I just don't have personal | 13:30:20 |
| 17 | knowledge of that. | 13:30:22 |
| 18 |     Q.    You -- | 13:30:24 |
| 19 |         MR. HOROWITZ:  I apologize, | 13:30:25 |
| 20 |         I've just gotten an email saying | 13:30:27 |
| 21 |         that apparently the folks on the | 13:30:28 |
| 22 |         phone didn't hear -- | 13:30:30 |
| 23 |         MR. ANKER:  Can we go off the | 13:30:39 |
| 24 |         record then for a moment.  There's | 13:30:41 |
| 25 |         no reason to have this conversation | 13:30:42 |

|    |    |    |
|----|----|----|
| 1  | on the record. | 13:30:44 |
| 2  | THE VIDEOGRAPHER:  One moment, | 13:30:45 |
| 3  | watch your microphones. | 13:30:46 |
| 4  | MR. ANKER:  Our apologies, we | 13:30:55 |
| 5  | hit the wrong button, we will now | 13:30:57 |
| 6  | go back on the record. | 13:30:59 |
| 7  | THE VIDEOGRAPHER:  We're back. | 13:31:01 |
| 8  | Q.    Mr. Keglevic, I understand and | 13:31:01 |
| 9  | appreciate that you're a careful witness. | 13:31:03 |
| 10 | It's fair to say that as you sit here | 13:31:05 |
| 11 | today, you have no recollection that the | 13:31:07 |
| 12 | company did any analysis to determine | 13:31:09 |
| 13 | whether as of any point before the | 13:31:11 |
| 14 | petition date leading up to April 28, | 13:31:15 |
| 15 | 2014, the value of EFIH's interest in | 13:31:19 |
| 16 | Oncor had materially deteriorated since | 13:31:24 |
| 17 | it provided the representation and | 13:31:26 |
| 18 | warranty in the dealer manager agreement | 13:31:29 |
| 19 | dated December 21, 2012, am I correct? | 13:31:31 |
| 20 | A.    I don't know if we did or did | 13:31:38 |
| 21 | not.  I would tell you we may have done | 13:31:44 |
| 22 | balance sheet tests, we may have done | 13:31:47 |
| 23 | other portions of the solvency test. | 13:31:49 |
| 24 | It's not unusual for us to look at those | 13:31:51 |
| 25 | things.  The one thing that I can state | 13:31:53 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | is I don't think we ever compared those | 13:31:57 |
| 2 | results to the results we had achieved | 13:31:58 |
| 3 | when we hit December 21st, 2012. | 13:32:00 |
| 4 | Q.    Do you recall, let's not focus | 13:32:02 |
| 5 | on the comparison, do you recall the | 13:32:05 |
| 6 | debtors doing any balance sheet analysis | 13:32:08 |
| 7 | in which they concluded at any time in | 13:32:11 |
| 8 | 2013 leading all the way through April | 13:32:14 |
| 9 | 28, 2014, that EFIH was balance sheet | 13:32:18 |
| 10 | insolvent? | 13:32:23 |
| 11 | A.    I can't specifically recall | 13:32:23 |
| 12 | any analysis, but we may have done such | 13:32:25 |
| 13 | an analysis.  I just can't speak to the | 13:32:28 |
| 14 | entire teams of people that were working | 13:32:31 |
| 15 | during those periods of time. | 13:32:35 |
| 16 | Q.    The liabilities of EFIH also | 13:32:37 |
| 17 | -- well, the liabilities of EFIH did not | 13:32:44 |
| 18 | materially increase, did they, between | 13:32:46 |
| 19 | December 21, 2012 and April 28, 2014, did | 13:32:50 |
| 20 | they? | 13:32:57 |
| 21 | A.    Once again, material is a term | 13:32:57 |
| 22 | of art, especially in my former world as | 13:32:59 |
| 23 | accountant.  It can be as little as 5 | 13:33:03 |
| 24 | percent.  And I would have to look at the | 13:33:05 |
| 25 | interim information to make those | 13:33:09 |

```
 1    determinations.  We do quarterly              13:33:10
 2    financial statements.  It's in the public     13:33:12
 3    domain.  I just don't want to -- I don't      13:33:14
 4    have that in my head each quarter how the     13:33:17
 5    balance sheet changed.                        13:33:20
 6         Q.    Okay.  As you sit here today,      13:33:20
 7    you have no recollection, do you, of any      13:33:28
 8    material increase in the liabilities of       13:33:31
 9    EFIH from November -- I'm sorry, December     13:33:35
10    21, 2012 through April 24 -- I'm sorry,       13:33:38
11    April 28, 2014?                               13:33:43
12         A.    I have not done that analysis.     13:33:47
13         Q.    Okay.  And you don't recall        13:33:48
14    doing that analysis during that time         13:33:50
15    period, that approximately 16 -- I'm         13:33:52
16    sorry?                                        13:33:56
17         A.    We do financial statements         13:33:56
18    every quarter, so the analysis was done      13:33:57
19    and published, I just don't have that        13:33:59
20    information available to make a reasoned      13:34:01
21    answer to the question.                       13:34:03
22         Q.    So I take it that if I want to     13:34:04
23    get the answer to the question, the best     13:34:06
24    answer to the question I can get is to       13:34:12
25    look at the quarterly financial              13:34:14
```

| | | |
|---|---|---|
| 1 | statements that were filed by the company | 13:34:15 |
| 2 | with the Securities and Exchange | 13:34:17 |
| 3 | Commission? | 13:34:18 |
| 4 | A.    That would certainly be, if | 13:34:18 |
| 5 | not the best, one of the best sources of | 13:34:20 |
| 6 | that information. | 13:34:22 |
| 7 | Q.    Okay.  Let's talk about, now | 13:34:23 |
| 8 | let's move to the second of the four | 13:34:30 |
| 9 | tests set forth in paragraph 3(gg) of the | 13:34:34 |
| 10 | dealer manager agreement dated December | 13:34:38 |
| 11 | 21, 2012.  That is a representation to | 13:34:40 |
| 12 | the present fair salable value of the | 13:34:44 |
| 13 | assets of EFIH, it's on page 14. | 13:34:46 |
| 14 | A.    Sorry, I guess I shouldn't | 13:34:50 |
| 15 | shut these until you're done. | 13:34:52 |
| 16 | Q.    Wishful thinking. | 13:34:53 |
| 17 | A.    Oh, I love this stuff.  I'm | 13:34:56 |
| 18 | happy to talk about it as long as you're | 13:34:58 |
| 19 | willing. | 13:34:59 |
| 20 | Q.    Good.  I'm willing.  The two | 13:35:02 |
| 21 | in the hole, am I reading this right, is | 13:35:08 |
| 22 | "the present fair salable value of the | 13:35:10 |
| 23 | assets of EFIH is greater than the amount | 13:35:13 |
| 24 | that will be required to pay the probable | 13:35:15 |
| 25 | liabilities of EFIH on its debts as they | 13:35:18 |

| | |
|---|---|
| 1 | become absolute and matured"? | 13:35:21 |
| 2 | I read that correctly, did I | 13:35:22 |
| 3 | not? | 13:35:24 |
| 4 | A.   You did. | 13:35:24 |
| 5 | Q.   And let's focus on both parts | 13:35:25 |
| 6 | of the analysis here, because this is | 13:35:27 |
| 7 | also a comparison.  The first part is the | 13:35:29 |
| 8 | present fair salable value of the assets | 13:35:31 |
| 9 | of EFIH, right? | 13:35:35 |
| 10 | A.   Yes. | 13:35:36 |
| 11 | Q.   And I think we established | 13:35:36 |
| 12 | earlier that the debtors did not seek | 13:35:38 |
| 13 | pre-petition to market their, EFIH's | 13:35:41 |
| 14 | equity in Oncor, right? | 13:35:47 |
| 15 | MR. HOWELL:  Object to form. | 13:35:49 |
| 16 | A.   My problem with that is we | 13:35:50 |
| 17 | didn't market the assets when we made | 13:35:52 |
| 18 | this representation, so I don't think you | 13:35:54 |
| 19 | have to market the assets to come to a | 13:35:56 |
| 20 | reasoned judgment of the fair salable | 13:35:58 |
| 21 | value. | 13:36:00 |
| 22 | Q.   Okay.  Tell me how it is as of | 13:36:01 |
| 23 | December 21, 2012, the debtors were | 13:36:04 |
| 24 | comfortable making the representation | 13:36:09 |
| 25 | that the fair salable value of the assets | 13:36:11 |

Page 162

```
 1    of EFIH is greater than the amount that          13:36:13

 2    would be required to pay the probable            13:36:15

 3    liabilities of EFIH on its debts as they         13:36:18

 4    become absolute and matured?                     13:36:21

 5         A.    I --                                   13:36:23

 6              MR. HOWELL:  Object to                  13:36:24

 7         foundation.  You can go ahead.               13:36:25

 8         A.    I'd have to go back and look           13:36:26

 9    at our, the documents we had around that         13:36:27

10    date to refresh my memory of what the            13:36:30

11    underlying work we did.                          13:36:32

12         Q.    Can you give me a sense of            13:36:33

13    what those documents were?                       13:36:36

14         A.    I don't recall.                        13:36:37

15         Q.    But you're comfortable that           13:36:40

16    the debtors had a good faith basis for           13:36:47

17    making the representations set forth in          13:36:50

18    paragraph (gg) two in the hole, as of            13:36:53

19    December 21, 2012, right?                        13:36:57

20         A.    Yes.                                   13:36:59

21              MR. SABIN:  I object as to             13:37:00

22         form.                                        13:37:02

23         Q.    I think, let me try to deal           13:37:10

24    with Mr. Sabin's objection, I think I            13:37:11

25    said you're comfortable that the debtors         13:37:14
```

| | | |
|---|---|---|
| 1 | had a good faith basis and I think Mr. | 13:37:16 |
| 2 | Sabin's objection is this was not | 13:37:19 |
| 3 | actually a rep by all of the debtors.  So | 13:37:21 |
| 4 | I apologize, but his objection is well | 13:37:24 |
| 5 | taken. | 13:37:26 |
| 6 | You're comfortable that EFIH | 13:37:27 |
| 7 | had a good faith basis for making the | 13:37:28 |
| 8 | representation set forth in paragraph | 13:37:30 |
| 9 | (gg), two in the hole, as of December 21, | 13:37:32 |
| 10 | 2012? | 13:37:36 |
| 11 | A.    Yes, I appreciate the | 13:37:36 |
| 12 | objection too, but since we were talking | 13:37:38 |
| 13 | about an EFIH document, I answered EFIH. | 13:37:40 |
| 14 | My answer would be yes, I believe we had | 13:37:42 |
| 15 | to satisfy outside third party to the | 13:37:46 |
| 16 | deal that we had a basis of these reps | 13:37:49 |
| 17 | and I know our team and our law firm came | 13:37:51 |
| 18 | to that conclusion. | 13:37:56 |
| 19 | Q.    Okay.  Now, I mentioned | 13:37:57 |
| 20 | earlier that, as I read two in the hole | 13:38:00 |
| 21 | it's a comparison, it's a comparison of, | 13:38:04 |
| 22 | on the one hand, present fair salable | 13:38:06 |
| 23 | value of assets to, secondly, the | 13:38:10 |
| 24 | probable liabilities of EFIH on its debts | 13:38:12 |
| 25 | as they become absolute and matured.  Do | 13:38:14 |

```
 1    you read it the same way?                      13:38:18

 2         A.    Once again --                        13:38:19

 3              MR. HOWELL:  Object to form.          13:38:19

 4         Sorry, go ahead.                           13:38:22

 5         A.    I do not make interpretations        13:38:24

 6    of these matters by myself so I would --        13:38:26

 7    I would stand behind the definitions that       13:38:32

 8    my team used in doing the work.  I don't        13:38:34

 9    recall exactly how they did that.               13:38:36

10         Q.    Well, you understand that --         13:38:38

11    well, let me ask the question.  Do you          13:38:42

12    understand that in making the comparison        13:38:44

13    in two in the hole EFIH was only looking        13:38:46

14    at debts that matured or were mature as         13:38:49

15    of December 21, 2012?                           13:38:53

16         A.    Well, I don't think that's           13:38:58

17    exactly right because it's immediately          13:39:03

18    after too.                                      13:39:04

19         Q.    My question is not clear.  Let       13:39:05

20    me try to ask it in a more sensible way.        13:39:06

21              On December 21, 2012, for             13:39:09

22    example, the debtors had after this             13:39:12

23    issuance about $4 billion in EFIH first         13:39:20

24    lien debt, right?                               13:39:23

25              MR. SABIN:  Object as to form.        13:39:25
```

| | |
|---|---|
| 1      Q.    I'm sorry, EFIH had about $4 | 13:39:27 |
| 2   billion in first lien debt, right? | 13:39:29 |
| 3      A.    I know we did it in different | 13:39:31 |
| 4   tranches.  I'd have to check exactly what | 13:39:33 |
| 5   level we were up to at that date. | 13:39:36 |
| 6      Q.    None of that debt, whatever it | 13:39:37 |
| 7   was, 4 billion, 3 billion, 2 billion, 1 | 13:39:39 |
| 8   billion, was matured on the date of | 13:39:43 |
| 9   December 21, 2012, right?  It wasn't due | 13:39:47 |
| 10   that day? | 13:39:49 |
| 11      A.    I don't believe any of it was | 13:39:50 |
| 12   due that day. | 13:39:52 |
| 13      Q.    But you understood, and EFIH | 13:39:53 |
| 14   to the best of your knowledge understood, | 13:39:57 |
| 15   that in making the representation in two | 13:39:59 |
| 16   in the hole it couldn't ignore the debt | 13:40:01 |
| 17   that would be maturing in the future? | 13:40:03 |
| 18      MR. HOWELL:  Object to form. | 13:40:07 |
| 19      A.    I think I stated that your, | 13:40:08 |
| 20   you're making definitions about what | 13:40:10 |
| 21   these means.  My answer to that is I do | 13:40:12 |
| 22   not make determinations of what these | 13:40:15 |
| 23   mean, I do it in conjunction with my team | 13:40:18 |
| 24   and counsel.  So I am uncomfortable | 13:40:20 |
| 25   answering you -- answering your portrayal | 13:40:23 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | of what these mean when I cannot have a | 13:40:25 |
| 2 | reasoned opinion what they mean by myself | 13:40:28 |
| 3 | without that discussion and seeing the | 13:40:30 |
| 4 | work that we did. | 13:40:32 |
| 5 | Q.    Mr. Keglevic, you were an | 13:40:32 |
| 6 | audit partner at two of America's leading | 13:40:39 |
| 7 | accounting firms, right? | 13:40:43 |
| 8 | A.    I was. | 13:40:44 |
| 9 | Q.    I'm just asking for your own | 13:40:44 |
| 10 | understanding of two in the hole.  Don't | 13:40:47 |
| 11 | you understand the words on its debts as | 13:40:50 |
| 12 | they become absolute and matured to | 13:40:53 |
| 13 | require the company to consider debts | 13:40:56 |
| 14 | that it currently has but that will | 13:40:58 |
| 15 | mature in the future? | 13:41:00 |
| 16 | A.    My work as an audit partner we | 13:41:03 |
| 17 | do not use as they become absolute in any | 13:41:05 |
| 18 | public financial statements that I ever | 13:41:08 |
| 19 | audited.  So I am not an expert with my | 13:41:10 |
| 20 | experience with respect to those terms. | 13:41:13 |
| 21 | Q.    Okay. | 13:41:14 |
| 22 | A.    So I understand what matured | 13:41:16 |
| 23 | means based on my past experience, but I | 13:41:18 |
| 24 | don't know as they become absolute what | 13:41:20 |
| 25 | that means.  I don't think you can find a | 13:41:22 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | |
|---|---|
| 1 | financial statement that show me the word | 13:41:24 |
| 2 | absolute with respect to debt | 13:41:27 |
| 3 | obligations. | 13:41:28 |
| 4 |     Q.    Did anything -- so you can't | 13:41:29 |
| 5 | tell me what you understood the term on | 13:41:33 |
| 6 | its debts as they become absolute and | 13:41:37 |
| 7 | matured meant? | 13:41:39 |
| 8 |     MR. HOWELL:  Object to form. | 13:41:43 |
| 9 |     A.    I never came to the conclusion | 13:41:44 |
| 10 | by myself.  I reviewed information | 13:41:46 |
| 11 | prepared by my team and my counsel, who | 13:41:48 |
| 12 | told me -- showed me the basis of the | 13:41:52 |
| 13 | calculations and I -- and they made the | 13:41:54 |
| 14 | representation on behalf of the company. | 13:41:57 |
| 15 | I didn't sign the representation. | 13:41:58 |
| 16 |     Q.    But you approved the | 13:42:01 |
| 17 | representation, right? | 13:42:02 |
| 18 |     A.    I don't think I necessarily | 13:42:04 |
| 19 | approved it. | 13:42:06 |
| 20 |     Q.    You reviewed it, right? | 13:42:06 |
| 21 |     A.    I may have reviewed it or I -- | 13:42:08 |
| 22 | I can't specifically recall in this case. | 13:42:09 |
| 23 | I may have delegated that authority to | 13:42:11 |
| 24 | Mr. Horton. | 13:42:13 |
| 25 |     Q.    Do you understand -- let me | 13:42:13 |

```
 1    ask this question.  You've already          13:42:18
 2    testified that the company stands behind     13:42:21
 3    the representations, including the           13:42:24
 4    representation in paragraph 3 (gg) of the    13:42:26
 5    December 32, 2012 dealer manager             13:42:30
 6    agreement.                                   13:42:39
 7             To your knowledge, as you sit       13:42:39
 8    here today, did anything materially          13:42:40
 9    change that makes the representation in      13:42:42
10    subpart (ii) no longer true and accurate    13:42:44
11    at any point in time subsequent to           13:42:51
12    December 21, 2012, up until right before     13:42:53
13    the bankruptcy filing on April 29, 2014?     13:42:55
14         A.    I believe I've testified that     13:42:59
15    I'd have to see the financial statements     13:43:01
16    and underlying information and compare it    13:43:03
17    to that to answer that question             13:43:05
18    intelligently.                               13:43:06
19         Q.    Okay.  I did not realize you      13:43:07
20    had so testified.  But I take it             13:43:08
21    therefore as you sit here today without      13:43:11
22    seeing that information, you're not aware    13:43:13
23    of anything that changed between December    13:43:15
24    21st, 2012 and April 29, 2014 that would     13:43:20
25    make that representation no longer true      13:43:26
```

| | | |
|---|---|---|
| 1 | and correct as of April 28th, 2014? | 13:43:28 |
| 2 | A.    I think it's unlikely there | 13:43:36 |
| 3 | weren't changes in all of these | 13:43:38 |
| 4 | paragraphs as compared to that date, and | 13:43:40 |
| 5 | you're asking me -- and I don't have the | 13:43:42 |
| 6 | information I need to determine whether | 13:43:44 |
| 7 | it was material or not without the | 13:43:45 |
| 8 | interim information that you've | 13:43:49 |
| 9 | described.  In addition to the amount of | 13:43:50 |
| 10 | debt, there's probable liabilities.  The | 13:43:52 |
| 11 | liability may have been the same but we | 13:43:54 |
| 12 | may have determined the probability has | 13:43:56 |
| 13 | changed between those two dates. | 13:43:58 |
| 14 | The salable value likely | 13:43:59 |
| 15 | changed between those two dates because | 13:44:02 |
| 16 | markets move consistently. | 13:44:05 |
| 17 | I would guess that anything we | 13:44:06 |
| 18 | did at that date, which was static as of | 13:44:08 |
| 19 | that date, would not be the same as of | 13:44:10 |
| 20 | any other date and you're asking me if | 13:44:12 |
| 21 | it's material, but without the ability to | 13:44:14 |
| 22 | bridge those two calculations, I don't | 13:44:18 |
| 23 | think I can intelligently answer that. | 13:44:20 |
| 24 | Q.    All right, let me ask the | 13:44:22 |
| 25 | question a different way.  Do you have | 13:44:23 |

1      any recollection of the debtors reaching                13:44:25

2      the conclusion at any point up to April                 13:44:28

3      28, 2014, that the present fair salable                 13:44:31

4      value of the assets of EFIH is less than                13:44:35

5      the amount that would be required to pay                13:44:38

6      the probable liabilities of EFIH on its                 13:44:41

7      debts as they become absolute and                       13:44:44

8      matured?                                                13:44:46

9          A.    I don't have any specific                     13:44:46

10     recollections of any comparisons such as                13:44:48

11     you're asking.                                          13:44:51

12         Q.    Okay.  Do you have any                        13:44:51

13     recollection, let's move to three in the                13:44:55

14     whole hole, that was helpful, do you have               13:44:57

15     any recollection at any point up through                13:44:59

16     -- I'm sorry.                                           13:45:02

17              Do you have any recollection                   13:45:03

18     at any point starting on December 22,                   13:45:04

19     2012, the day after this document, up                   13:45:10

20     through and including April 28, 2014, of                13:45:12

21     EFIH concluding that it is not able to                  13:45:16

22     realize upon its assets and pay its debts               13:45:19

23     and other liabilities, including                        13:45:22

24     contingent liabilities as they mature?                  13:45:24

25         A.    I think I keep answering the                  13:45:27

| | | |
|---|---|---|
| 1 | same question that we -- I don't imagine | 13:45:42 |
| 2 | there's any purpose we would have | 13:45:44 |
| 3 | compared December 21st, the random date | 13:45:46 |
| 4 | of this indenture, to any subsequent | 13:45:49 |
| 5 | date. | 13:45:52 |
| 6 | Q.    My question wasn't clear, | 13:45:52 |
| 7 | because I didn't mean to suggest a | 13:45:53 |
| 8 | comparison.  Let me start it again. | 13:45:55 |
| 9 | You made a representation as | 13:45:59 |
| 10 | of December 21st, 2012.  I'm not asking | 13:46:00 |
| 11 | about whether there was any change.  I | 13:46:02 |
| 12 | just want you to start on a date and end | 13:46:04 |
| 13 | on a date.  So let me ask my question | 13:46:06 |
| 14 | again. | 13:46:09 |
| 15 | Do you have any recollection | 13:46:10 |
| 16 | at any point starting on December 22nd, | 13:46:11 |
| 17 | 2012, continuing through and including | 13:46:13 |
| 18 | April 28th, 2014, of EFIH concluding that | 13:46:16 |
| 19 | it was unable to realize upon its assets | 13:46:21 |
| 20 | and pay its debts and other liabilities, | 13:46:24 |
| 21 | including contingent obligations as they | 13:46:26 |
| 22 | mature? | 13:46:29 |
| 23 | A.    Once again I'd like to | 13:46:30 |
| 24 | determine the, you know, with my counsel | 13:46:32 |
| 25 | what those words mean.  I do know that | 13:46:35 |

| | | |
|---|---|---|
| 1 | prior to filing we were looking at the | 13:46:37 |
| 2 | inability to pay interest expense on June | 13:46:39 |
| 3 | 1st as it came due. | 13:46:43 |
| 4 | Q.    Okay.  As you sit here today | 13:46:45 |
| 5 | without consulting with counsel -- let me | 13:46:50 |
| 6 | back up. | 13:46:56 |
| 7 | As you sit here today, do you | 13:46:57 |
| 8 | recall at any point between December | 13:46:59 |
| 9 | 22nd, 2012 and April 28th, 2014, EFIH | 13:47:01 |
| 10 | concluding that it could not realize upon | 13:47:07 |
| 11 | its assets and pay its debts and other | 13:47:08 |
| 12 | liabilities, including contingent | 13:47:11 |
| 13 | obligations as they mature? | 13:47:13 |
| 14 | A.    I go back to the answer I had. | 13:47:15 |
| 15 | We saw that we were running out of cash | 13:47:17 |
| 16 | and could not pay the obligations as they | 13:47:18 |
| 17 | came due, which in my layman's terms is | 13:47:21 |
| 18 | one of the definitions of solvency, and | 13:47:25 |
| 19 | I'm not sure where it fits in this | 13:47:27 |
| 20 | language, is the ability to pay debts as | 13:47:28 |
| 21 | they came do you. | 13:47:30 |
| 22 | And it was clear, and we | 13:47:32 |
| 23 | talked to our board and we made several | 13:47:33 |
| 24 | presentations and updated them as we went | 13:47:36 |
| 25 | through the year that that was the | 13:47:38 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | situation after Olympus failed and we | 13:47:39 |
| 2 | didn't see any ability to issue debt or | 13:47:42 |
| 3 | get equity to increase the amount of cash | 13:47:44 |
| 4 | we had to meet those obligations. | 13:47:46 |
| 5 | Q.    Did EFIH at any point conclude | 13:47:52 |
| 6 | between December 22nd, 2012 and April | 13:47:54 |
| 7 | 28th, 2014, that it would be unable to | 13:48:00 |
| 8 | sell its interest in Oncor and thereby | 13:48:05 |
| 9 | pay its debts and other liabilities | 13:48:10 |
| 10 | including contingent obligations as they | 13:48:12 |
| 11 | mature? | 13:48:14 |
| 12 | MR. HOWELL:  Object to form | 13:48:17 |
| 13 | and foundation. | 13:48:18 |
| 14 | A.    Once again, we looked at the | 13:48:18 |
| 15 | cash on hand.  Any sales transaction | 13:48:21 |
| 16 | would have taken time.  So we did not | 13:48:24 |
| 17 | believe a sales transaction, which, by | 13:48:27 |
| 18 | the way, also at that time if we just | 13:48:29 |
| 19 | sold interest, would have triggered tax, | 13:48:31 |
| 20 | would not have been a -- in the best | 13:48:34 |
| 21 | interest of the estate, so we rejected it | 13:48:37 |
| 22 | from that standpoint.  And then, you | 13:48:40 |
| 23 | know, that because there would have been | 13:48:42 |
| 24 | a taxable transaction and it would have | 13:48:43 |
| 25 | taken months to consummate, including | 13:48:46 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | regulatory approvals, which the | 13:48:48 |
| 2 | traditional utility deal takes 12 months | 13:48:50 |
| 3 | to close. | 13:48:53 |
| 4 | So selling the assets was not | 13:48:54 |
| 5 | a reasonable option to deal with a short | 13:48:57 |
| 6 | term cash obligation that we otherwise | 13:49:00 |
| 7 | could not cover. | 13:49:02 |
| 8 | Q.   Other than what you have told | 13:49:03 |
| 9 | me about how you thought the company was | 13:49:07 |
| 10 | going to, EFIH was not going to have | 13:49:10 |
| 11 | sufficient cash by June, do you have any | 13:49:13 |
| 12 | basis to believe that EFIH had | 13:49:19 |
| 13 | unreasonably small capital at any point | 13:49:23 |
| 14 | between December 22nd, 2012 and April | 13:49:26 |
| 15 | 28th, 2014? | 13:49:30 |
| 16 | A.   Once again, that's a fairly | 13:49:32 |
| 17 | specific legal term, that's not a general | 13:49:33 |
| 18 | term in financial accounting, so I would | 13:49:36 |
| 19 | have to refresh my memory as to how that | 13:49:38 |
| 20 | was defined in consultation with my | 13:49:40 |
| 21 | counsel. | 13:49:43 |
| 22 | Q.   Okay.  What changed between -- | 13:49:43 |
| 23 | let me back up.  I understand the | 13:49:57 |
| 24 | representation on December 21, 2012 in | 13:49:59 |
| 25 | subparagraph 3 (gg) defines solvency in a | 13:50:02 |

| | | |
|---|---|---|
| 1 | very specific manner.  But did EFIH as of | 13:50:11 |
| 2 | that date believe that it would be able | 13:50:14 |
| 3 | to pay its debts, without a massive sale | 13:50:15 |
| 4 | transaction, be able to pay its debts on | 13:50:18 |
| 5 | a going forward basis? | 13:50:21 |
| 6 | A.    Yes. | 13:50:24 |
| 7 | Q.    Okay.  And you've now told me | 13:50:25 |
| 8 | that when you fast forward to right | 13:50:27 |
| 9 | before the bankruptcy, I think we're | 13:50:29 |
| 10 | talking about 18 months later, the | 13:50:33 |
| 11 | company, EFIH perceived that it would run | 13:50:37 |
| 12 | out of cash by June, right? | 13:50:39 |
| 13 | A.    Correct. | 13:50:41 |
| 14 | Q.    What changed? | 13:50:42 |
| 15 | A.    Negative cash flow for 18 | 13:50:43 |
| 16 | months, probably a reduction in the Oncor | 13:50:47 |
| 17 | dividend as a result -- as a -- I'd have | 13:50:50 |
| 18 | to go through and look at the specific, | 13:50:53 |
| 19 | but fundamentally, one was opportunity to | 13:50:55 |
| 20 | raise capital, we thought we could issue | 13:50:58 |
| 21 | additional debt at this point in time. | 13:51:01 |
| 22 | We had additional capacity under our | 13:51:03 |
| 23 | agreements.  Because we were solvent we | 13:51:05 |
| 24 | thought we could issue additional debt. | 13:51:07 |
| 25 | We had -- I would assume we had more | 13:51:09 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | cash, we had an opportunity to get equity | 13:51:11 |
| 2 | infusion.  I'd have to look at all the | 13:51:14 |
| 3 | things, but it's not a static business | 13:51:18 |
| 4 | and there are a lot of variables that | 13:51:21 |
| 5 | changed between that date and where we | 13:51:23 |
| 6 | ended up before we filed. | 13:51:27 |
| 7 | Q.    The negative cash flow that | 13:51:28 |
| 8 | you've referenced at EFIH, am I right to | 13:51:30 |
| 9 | understand that Oncor before making | 13:51:36 |
| 10 | dividends to EFIH has to satisfy its | 13:51:41 |
| 11 | liabilities, right? | 13:51:45 |
| 12 | MR. HOWELL:  Object to form. | 13:51:47 |
| 13 | A.    Please rephrase that. | 13:51:48 |
| 14 | Q.    Let me be more, let me be more | 13:51:52 |
| 15 | specific. | 13:51:54 |
| 16 | As I understand it, Oncor | 13:51:54 |
| 17 | historically upstreamed cash to EFIH's | 13:51:58 |
| 18 | parent, EFH, under a tax sharing | 13:52:06 |
| 19 | agreement; is that right? | 13:52:10 |
| 20 | A.    Yes. | 13:52:12 |
| 21 | Q.    Okay.  And what was -- it was | 13:52:12 |
| 22 | only after that upstreaming occurred that | 13:52:19 |
| 23 | there was cash flow left at Oncor to be | 13:52:22 |
| 24 | dividended to EFIH, right? | 13:52:28 |
| 25 | A.    That's not a -- that's not the | 13:52:31 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | way I would look at it.  Oncor's ability | 13:52:34 |
| 2 | to make dividends were driven by a few | 13:52:36 |
| 3 | things under the LLC agreement.  One, | 13:52:38 |
| 4 | they could not make a dividend more than | 13:52:40 |
| 5 | the amount of their net income. | 13:52:42 |
| 6 | Obviously, their income tax expense is a | 13:52:44 |
| 7 | component of the net income, but it's not | 13:52:46 |
| 8 | the only one. | 13:52:48 |
| 9 | Secondly, Oncor could not make | 13:52:50 |
| 10 | a dividend if after making a dividend it | 13:52:51 |
| 11 | violated a 60/40 capital structure. | 13:52:54 |
| 12 | And then finally, Oncor could | 13:52:56 |
| 13 | not make a dividend that their board did | 13:52:59 |
| 14 | not believe it was appropriate for them | 13:53:01 |
| 15 | to make. | 13:53:02 |
| 16 | So the amount of income taxes | 13:53:03 |
| 17 | while you could argue is maybe a | 13:53:05 |
| 18 | component of that thinking, it's really | 13:53:06 |
| 19 | not the drivers, it's the three that I | 13:53:08 |
| 20 | just gave you. | 13:53:11 |
| 21 | Q.    Do you recall ever doing an | 13:53:11 |
| 22 | analysis of whether Oncor's cash flow to | 13:53:14 |
| 23 | EF -- let me back up. | 13:53:18 |
| 24 | Did you ever do an analysis as | 13:53:20 |
| 25 | to whether EFIH would be cash flow | 13:53:22 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 178

| | |
|---|---|
| 1   positive rather than cash flow negative | 13:53:24 |
| 2   were Oncor not to make the payment to EFH | 13:53:29 |
| 3   under the tax sharing agreement? | 13:53:33 |
| 4        A.    That's a non sequitur to me. | 13:53:36 |
| 5   I don't know why I would have done that | 13:53:39 |
| 6   calculation.  Because you're basically | 13:53:41 |
| 7   assuming that Oncor would violate its LLC | 13:53:42 |
| 8   agreement and make a payment of tax that | 13:53:46 |
| 9   it was required to make under the LLC | 13:53:48 |
| 10   agreement, and I can't imagine why their | 13:53:51 |
| 11   board would violate the LLC agreement. | 13:53:54 |
| 12   Or I'm sorry, it should be the tax | 13:54:01 |
| 13   sharing agreement? | 13:54:03 |
| 14        Q.    Okay.  So the answer to my | 13:54:09 |
| 15   question is because you thought of it as | 13:54:10 |
| 16   a non sequitur, as you put it, you didn't | 13:54:12 |
| 17   do that calculation, right? | 13:54:15 |
| 18        MR. HOWELL:  Object to form. | 13:54:20 |
| 19        A.    Well, no -- and yes, because, | 13:54:21 |
| 20   and there's other reasons.  If Oncor | 13:54:25 |
| 21   stopped making the tax payment to the | 13:54:27 |
| 22   parent, they were at risk of having their | 13:54:29 |
| 23   regulator reduce the rates which | 13:54:31 |
| 24   incorporated the assumption that that tax | 13:54:33 |
| 25   payment would be made. | 13:54:36 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1                My assumption would be if          13:54:37
 2      Oncor no longer, for whatever reason, had    13:54:39
 3      the requirement or obligation to make the    13:54:42
 4      tax payment, the regulator would reduce      13:54:45
 5      the amount of Oncor's rates so it            13:54:47
 6      wouldn't provide any additional net          13:54:49
 7      income that would be available for           13:54:51
 8      dividends.                                   13:54:52
 9          Q.   I'm sorry, you began, Mr.           13:54:53
10      Keglevic, with "well, no -- and yes."        13:55:02
11      I'm just asking a simple question, not       13:55:04
12      why.  You didn't do the calculation that     13:55:06
13      I have suggested, right?                      13:55:08
14          A.    I will answer that I did not       13:55:11
15      do that calculation, but there's a           13:55:14
16      significant reason which I want to get on     13:55:18
17      the record.  And it's because the            13:55:19
18      calculation doesn't make any sense           13:55:21
19      because effectively your presumption in      13:55:24
20      that calculation is if that tax payment      13:55:27
21      was wasn't made to EFH there would be a      13:55:29
22      bigger pot to distribute dividends to        13:55:33
23      EFIH and I think there is no reading of      13:55:36
24      the agreements or regulatory principles      13:55:38
25      that supports that assumption.               13:55:40
```

| | |
|---|---|
| 1 | So of course I don't make | 13:55:41 |
| 2 | analysis of things that I don't think | 13:55:44 |
| 3 | have any out -- likelihood of that | 13:55:45 |
| 4 | outcome coming true. | 13:55:47 |
| 5 | Also, based on my | 13:55:49 |
| 6 | recollection, the amount of the tax | 13:55:50 |
| 7 | payment still would not, even if they | 13:55:52 |
| 8 | were not made to the parent, would have | 13:55:54 |
| 9 | been sufficient to cover, even if those | 13:55:56 |
| 10 | were additional dividends to EFIH, which | 13:55:59 |
| 11 | I can't imagine how it happened, it would | 13:56:01 |
| 12 | not cover the cash shortfall that EFIH | 13:56:03 |
| 13 | had.  Their cash shortfall was bigger | 13:56:06 |
| 14 | than the amount of the tax payments. | 13:56:08 |
| 15 | Q.    Let me switch subjects.  The | 13:56:09 |
| 16 | debtors refinanced the first lien debt at | 13:56:18 |
| 17 | the outset of the bankruptcy case, right? | 13:56:26 |
| 18 | A.    The EFIH first lien debt? | 13:56:27 |
| 19 | Q.    Yes, I'm sorry, yes. | 13:56:31 |
| 20 | A.    We paid the existing | 13:56:33 |
| 21 | obligation with proceeds from a DIP if | 13:56:34 |
| 22 | that's what you mean by refinancing. | 13:56:36 |
| 23 | Q.    Okay.  And I'm happy to show | 13:56:38 |
| 24 | it to you, and if it's helpful just let | 13:56:42 |
| 25 | me know, but I think in a prior testimony | 13:56:45 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | you said that there was an opportunity to | 13:56:48 |
| 2 | present it to EFIH to do so.  Would it be | 13:56:55 |
| 3 | helpful if I just showed it to you? | 13:56:59 |
| 4 | A.    Sure. | 13:57:01 |
| 5 | Q.    Okay.  I don't think it's fair | 13:57:01 |
| 6 | frankly for me to ask you about what you | 13:57:03 |
| 7 | said months ago without you having the | 13:57:05 |
| 8 | opportunity to see it. | 13:57:07 |
| 9 | MR. ANKER:  Mr. Keglevic, this | 13:57:36 |
| 10 | will be Exhibit number 10.  It's | 13:57:37 |
| 11 | your deposition, volume 1, on May | 13:57:39 |
| 12 | 29, 2014 in the general bankruptcy | 13:57:41 |
| 13 | case.  It doesn't bear a Bates | 13:57:44 |
| 14 | stamp. | 13:57:47 |
| 15 | (Keglevic Exhibit 10 for | 13:57:48 |
| 16 | identification, volume 1 of Mr. | 13:57:40 |
| 17 | Keglevic's  deposition taken on May | 13:57:41 |
| 18 | 29, 2014.) | 13:57:41 |
| 19 | Q.    My questions of you are going | 13:57:48 |
| 20 | to be, relate to testimony you gave at | 13:57:49 |
| 21 | page 47, but you may want to look at a | 13:57:57 |
| 22 | few pages before.  Okay? | 13:57:59 |
| 23 | A.    Thank you. | 13:58:01 |
| 24 | Q.    Tell me when you feel you've | 13:58:19 |
| 25 | had an opportunity to look at context. | 13:58:21 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 182

| | | |
|---|---|---|
| 1 | A.    I think I'm okay. | 13:58:23 |
| 2 | Q.    So, and I don't want to repeat | 13:58:24 |
| 3 | all your testimony, you've given a lot, | 13:58:25 |
| 4 | but you were asked whether the primary | 13:58:27 |
| 5 | purpose of obtaining the DIP financing is | 13:58:32 |
| 6 | to pay off the first lien notes and you | 13:58:34 |
| 7 | said that's the largest use, correct? | 13:58:37 |
| 8 | A.    That's right.  We borrowed 5.4 | 13:58:39 |
| 9 | billion and we were only able to borrow | 13:58:43 |
| 10 | that amount with the understanding that | 13:58:46 |
| 11 | we would use 4 billion to pay off the | 13:58:47 |
| 12 | existing first lien debt.  Had we not had | 13:58:50 |
| 13 | that agreement, we would not have been | 13:58:52 |
| 14 | able to borrow the amount in the DIP. | 13:58:54 |
| 15 | And it was also part of the RSA that we | 13:58:56 |
| 16 | would do that. | 13:58:59 |
| 17 | Q.    And then you were asked what | 13:58:59 |
| 18 | was the purpose of doing it toward the | 13:59:02 |
| 19 | beginning of the bankruptcy, do you see | 13:59:05 |
| 20 | that question on page 47? | 13:59:06 |
| 21 | A.    Yes. | 13:59:08 |
| 22 | Q.    Okay.  And your answer is "My | 13:59:08 |
| 23 | understanding is we have an acceleration | 13:59:11 |
| 24 | of debt and as a result, we have the | 13:59:13 |
| 25 | opportunity to pay it off and by paying | 13:59:15 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 183

```
 1    it off and replacing it with DIP              13:59:17
 2    financing, we can lower the interest          13:59:19
 3    costs and increase the enterprise value       13:59:22
 4    of EFIH."                                      13:59:24
 5              I correctly read your                13:59:26
 6    testimony, right?                              13:59:27
 7         A.    That's what it says.                13:59:28
 8         Q.    Okay.  And that testimony was       13:59:28
 9    both truthful, you weren't intentionally      13:59:31
10    telling a falsehood, and it was accurate      13:59:34
11    when given, right?                             13:59:36
12         A.    Yes.  It remains my                 13:59:37
13    understanding that the -- we have an          13:59:40
14    acceleration of debt so we owe payments       13:59:42
15    to the first lien, the second lien           13:59:44
16    debtholders, for example.  Our intention     13:59:48
17    in the RSA was to pay both off.  Under       13:59:52
18    bankruptcy rules we had the ability to       13:59:54
19    pay both off.  We paid off the first         13:59:56
20    lien, the court gave us significant          13:59:58
21    direction that it was not comfortable        14:00:00
22    with us paying off the second lien, so we    14:00:02
23    did not.                                      14:00:03
24         Q.    And you paid off first lien        14:00:04
25    debt that was mostly at a 10 percent         14:00:06
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | |
|---|---|
| 1 | coupon rate, some of it was at 6.875, but | 14:00:12 |
| 2 | mostly a 10, so a blended rate probably | 14:00:16 |
| 3 | in the eights or nines.  I'm not going to | 14:00:18 |
| 4 | hold you to the calculation, but that | 14:00:21 |
| 5 | sounds about right, right? | 14:00:22 |
| 6 |      A.    Yeah, it was -- the majority | 14:00:24 |
| 7 | was 10 and there was some at 6.875, so I | 14:00:25 |
| 8 | haven't done that calculation, but it | 14:00:29 |
| 9 | probably was in that range. | 14:00:30 |
| 10 |      Q.    I think about 3.5 billion was | 14:00:32 |
| 11 | at 10 percent and about 500 million was | 14:00:34 |
| 12 | at 6.875, does that sound right to you? | 14:00:36 |
| 13 |      A.    That's my recollection as | 14:00:39 |
| 14 | well. | 14:00:41 |
| 15 |      Q.    And the new financing is | 14:00:41 |
| 16 | effectively at a rate of about 4.25 is I | 14:00:42 |
| 17 | think what Mr. Horton told me? | 14:00:46 |
| 18 |      A.    I probably should know exactly | 14:00:50 |
| 19 | what it's at, but I don't recall, but | 14:00:52 |
| 20 | it's somewhere in that range, yes. | 14:00:53 |
| 21 |      Q.    Significantly below the | 14:00:55 |
| 22 | blended rate of the existing first lien | 14:00:56 |
| 23 | debt, EFIH first lien debt as of the | 14:01:01 |
| 24 | petition date, right? | 14:01:04 |
| 25 |      A.    Yes, it's below certainly. | 14:01:05 |

| | | |
|---|---|---|
| 1 | Q.    And was that what you were | 14:01:06 |
| 2 | referencing when you say we have the | 14:01:08 |
| 3 | opportunity to pay it off and by paying | 14:01:10 |
| 4 | it off and replacing it with DIP | 14:01:12 |
| 5 | financing we can lower the interest costs | 14:01:14 |
| 6 | and increase the enterprise value of | 14:01:17 |
| 7 | EFIH? | 14:01:19 |
| 8 | A.    Yes. | 14:01:19 |
| 9 | Q.    I understand you to say to me | 14:01:22 |
| 10 | earlier, and it makes sense to me, I | 14:01:25 |
| 11 | don't engage in silly calculations.  I | 14:01:27 |
| 12 | may disagree with whether the calculation | 14:01:31 |
| 13 | I was suggesting was silly, but the basic | 14:01:32 |
| 14 | point you're making completely resonates | 14:01:35 |
| 15 | with me, you're a busy guy.  I take it | 14:01:37 |
| 16 | that if the opportunity -- if the cost of | 14:01:40 |
| 17 | funds instead of available to EFIH, | 14:01:42 |
| 18 | instead of being lower were higher, the | 14:01:47 |
| 19 | only refinancing you could have done was | 14:01:50 |
| 20 | at 15 percent or 14 percent or 13 | 14:01:52 |
| 21 | percent, you wouldn't have done it, | 14:01:57 |
| 22 | right? | 14:01:58 |
| 23 | MR. HOWELL:  Object to form. | 14:01:59 |
| 24 | A.    It depends on the situation | 14:02:00 |
| 25 | and -- it's just not interest rate. | 14:02:04 |

```
 1    Nobody likes paying higher than their        14:02:06
 2    existing interest rate, but if you have a     14:02:09
 3    liquidity need or if you have a bridge        14:02:11
 4    problem you might be willing to pay that      14:02:13
 5    for a short period of time.  I'd have to      14:02:15
 6    understand the exact circumstance we were     14:02:17
 7    in and whether we had the ability to          14:02:18
 8    issue debt and whether we would issue it      14:02:20
 9    at a certain rate.                            14:02:22
10         Q.    I really don't want to spend       14:02:23
11    all the time I spent with Mr. Horton on       14:02:24
12    this, but I think it's fair to say that       14:02:26
13    in connection with the first lien DIP the     14:02:30
14    debtors repeatedly stated that the           14:02:34
15    principal rationale for it was the            14:02:38
16    interest rate savings, I think you did,       14:02:40
17    is that -- whether you did or you didn't,     14:02:44
18    is that a fair statement from your            14:02:46
19    perspective?                                  14:02:47
20         A.    I think it's --                    14:02:48
21              MR. HOWELL:  Object to form.        14:02:49
22         A.     I think it's two things.  You     14:02:50
23    know, one, that the debt had accelerated      14:02:52
24    so we owed it.  And by paying it sooner       14:02:54
25    we could replace it with cheaper cost of      14:02:57
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    money.                                      14:02:59

 2        Q.    Okay.  I understand you're not    14:02:59

 3    a lawyer and I understand you consulted     14:03:01

 4    with counsel --                             14:03:03

 5        A.    I've gotten that across to        14:03:05

 6    you, have I?                                14:03:06

 7        Q.    You have, Mr. Keglevic.  You      14:03:07

 8    said the debt accelerated so we owed it.    14:03:10

 9    You didn't have any understanding, did      14:03:15

10    you, sir, that at the outset of the         14:03:17

11    bankruptcy EFIH was required to repay the   14:03:19

12    first lien debt?                            14:03:23

13        A.    Yes, that --                      14:03:25

14              MR. HOWELL:  Object to form.      14:03:26

15        A.    My understanding was once we      14:03:27

16    filed we were in default and we were        14:03:28

17    required to pay.                            14:03:30

18        Q.    Wasn't EFIH also in default of    14:03:31

19    its second lien debt and its PIK debt?      14:03:36

20        A.    Yes.                              14:03:38

21        Q.    Okay.  So was EFIH required to    14:03:39

22    repay that debt?                            14:03:42

23        A.    We have an obligation to repay    14:03:43

24    that debt as well, yes.                     14:03:46

25        Q.    I understand you have an          14:03:47
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 188

| | | |
|---|---|---|
| 1 | obligation, but I'm talking about -- let | 14:03:48 |
| 2 | me be clear on my prior question because | 14:03:50 |
| 3 | maybe you didn't understand it. | 14:03:52 |
| 4 | Do you understand that EFIH | 14:03:53 |
| 5 | had an obligation to pay the first lien | 14:03:56 |
| 6 | debt at the outset of the bankruptcy | 14:04:00 |
| 7 | case? | 14:04:02 |
| 8 | A.    The debt, we had an obligation | 14:04:04 |
| 9 | to pay it.  Under -- my understanding is, | 14:04:06 |
| 10 | I've been advised by counsel, that under | 14:04:10 |
| 11 | the bankruptcy rules we then had -- could | 14:04:12 |
| 12 | take that obligation and if we had the | 14:04:15 |
| 13 | ability to raise funds and pay it at the | 14:04:18 |
| 14 | beginning of the case versus the end of | 14:04:20 |
| 15 | the case we could do so. | 14:04:21 |
| 16 | Q.    Okay.  Now, the reason why you | 14:04:23 |
| 17 | understood you had an obligation to pay | 14:04:52 |
| 18 | the debt was that the bankruptcy caused | 14:04:57 |
| 19 | the debt to accelerate? | 14:05:03 |
| 20 | A.    Yes, we always had an | 14:05:05 |
| 21 | obligation to pay the debt, but it | 14:05:07 |
| 22 | accelerated the obligation upon filing. | 14:05:08 |
| 23 | Q.    Right.  There was no, to your | 14:05:10 |
| 24 | knowledge, there was no default under the | 14:05:12 |
| 25 | first lien debt other than the bankruptcy | 14:05:14 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 189

| | | |
|---|---|---|
| 1 | filing, right? | 14:05:17 |
| 2 | A.    I'm not sure.  I'd have to | 14:05:17 |
| 3 | check with counsel, but I don't know that | 14:05:22 |
| 4 | you need more than one default. | 14:05:24 |
| 5 | Q.    I don't think you -- I'm not | 14:05:25 |
| 6 | saying you do. | 14:05:27 |
| 7 | A.    Okay. | 14:05:27 |
| 8 | Q.    I'm not asking the question | 14:05:28 |
| 9 | whether you need more than one. | 14:05:29 |
| 10 | A.    I don't know, I did not review | 14:05:31 |
| 11 | the other events and whether there's | 14:05:32 |
| 12 | cross-defaults once you trigger one.  I'm | 14:05:34 |
| 13 | not, I'm not the person to answer that | 14:05:36 |
| 14 | question. | 14:05:37 |
| 15 | Q.    Did EFIH, to your knowledge, | 14:05:38 |
| 16 | ever receive a notice of default prior to | 14:05:39 |
| 17 | the petition date from the EFIH first | 14:05:41 |
| 18 | lien trustee? | 14:05:45 |
| 19 | A.    If it did, it would not have | 14:05:47 |
| 20 | come to me, so I'm not personally aware | 14:05:50 |
| 21 | of that. | 14:05:52 |
| 22 | Q.    Okay.  Are you aware of any | 14:05:52 |
| 23 | notice of default that rather than the | 14:05:53 |
| 24 | indenture trustee for the EFIH first | 14:05:57 |
| 25 | liens, any holders of EFIH first lien | 14:05:59 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 190

```
 1    debts sent the company?                    14:06:04
 2         A.    Same answer.                     14:06:05
 3         Q.    Okay.  So you're not aware of    14:06:06
 4    any.  Did the company after filing for      14:06:08
 5    bankruptcy and concluding that the filing   14:06:14
 6    for bankruptcy was an event of default,     14:06:17
 7    engage in a conversation with its first     14:06:23
 8    lienholders whether those holders would     14:06:25
 9    waive that event of default?                14:06:28
10              MR. HOWELL:   Object to          14:06:32
11         foundation.                            14:06:33
12         Q.    To your knowledge?               14:06:33
13         A.    I certainly did not myself.      14:06:34
14         Q.    Okay.  And do you have any       14:06:37
15    knowledge of anyone else at EFIH having     14:06:39
16    that, having such a discussion?             14:06:41
17         A.    I'm not aware if anybody did     14:06:43
18    or did not.                                 14:06:44
19         Q.    Do you have any reason to        14:06:48
20    believe that anyone at EFIH had any         14:06:50
21    discussion with any first lienholders to    14:06:54
22    see whether they would waive the event of   14:06:57
23    default so that the debtor -- so that       14:06:59
24    EFIH was not in default?                    14:07:02
25         A.    I don't have any personal        14:07:03
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    knowledge of what they may or may not        14:07:04
 2    have done.                                    14:07:05
 3        Q.    Are you aware that a majority       14:07:06
 4    of the note -- are you aware that the         14:07:08
 5    indenture has a provision that allows a       14:07:10
 6    majority in dollar amount of the EFIH         14:07:12
 7    first lien noteholders to waive any event     14:07:16
 8    of default?                                   14:07:18
 9        A.    I'm not -- I think I'm              14:07:19
10    generally aware that that might be the        14:07:25
11    case.                                         14:07:26
12        Q.    Are you aware that a majority       14:07:26
13    in dollar amount of EFIH first lien           14:07:28
14    noteholders sent a notice to the             14:07:33
15    indenture trustee and copied EFIH waiving    14:07:37
16    the default and rescinding the               14:07:40
17    acceleration?                                 14:07:42
18            MR. HOWELL:  Object to form.          14:07:44
19        A.    I am aware that we received a       14:07:45
20    letter.  I don't know that I specifically     14:07:47
21    reviewed the letter, but I think its         14:07:48
22    contents, I think it's fair to say that      14:07:51
23    you've given a fair summary.  And once       14:07:53
24    again, my understanding was that the,        14:07:55
25    from my attorneys, was that the automatic    14:07:57
```

1    stay prohibited that reinstatement or          14:08:00

2    that waiver.                                    14:08:03

3         Q.   The company, you're aware --         14:08:04

4    are you aware that there is a motion            14:08:05

5    pending for relief from the automatic          14:08:07

6    stay, to the extent the stay applies, so       14:08:09

7    that the first lienholders may send that       14:08:11

8    notice?                                         14:08:14

9         A.   I'm not, but I'll take your          14:08:16

10   word that there is such a motion.              14:08:18

11        Q.   You are aware, are you not,          14:08:19

12   you're the chief restructuring officer of      14:08:23

13   this company, that the, that EFIH is           14:08:24

14   opposing the payment of the make whole to      14:08:28

15   the EFIH first lien noteholders, right?        14:08:30

16        A.   I'm the --                           14:08:33

17             MR. HOWELL:  Object to form.         14:08:34

18        A.   I'm the co-chief restructuring       14:08:35

19   officer and many of the legal matters,         14:08:38

20   the reason we have co's is I generally do      14:08:40

21   the finance and she does the legal, which      14:08:43

22   is why many of these matters I'm not           14:08:45

23   fully up to speed on, because she is.  So      14:08:47

24   I do know that if the question is do I         14:08:52

25   know there's a dispute of the make whole       14:08:56

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | -- I'm sorry, would you rephrase the | 14:09:00 |
| 2 | front part of the schedule, I was thrown | 14:09:02 |
| 3 | off by the chief restructuring officer | 14:09:04 |
| 4 | comment. | 14:09:05 |
| 5 | Q.    You are aware, are you not, | 14:09:08 |
| 6 | that EFIH is opposing the payment of a | 14:09:10 |
| 7 | make whole premium to the EFIH first lien | 14:09:13 |
| 8 | noteholders? | 14:09:16 |
| 9 | A.    Yes. | 14:09:16 |
| 10 | Q.    Okay.  And as part of that | 14:09:17 |
| 11 | opposition, you are aware, are you not, | 14:09:21 |
| 12 | that EFIH is refusing to consent to | 14:09:25 |
| 13 | relief from the automatic stay to permit | 14:09:29 |
| 14 | the EFIH first lien noteholders to send | 14:09:32 |
| 15 | their deacceleration notice? | 14:09:36 |
| 16 | MR. HOWELL:  Object to form. | 14:09:39 |
| 17 | A.    I'm not specifically aware of | 14:09:41 |
| 18 | all the elements of our case and the | 14:09:42 |
| 19 | positions we're taking with respect to | 14:09:44 |
| 20 | that matter.  It would sound logical that | 14:09:48 |
| 21 | that was our point of view, but I don't | 14:09:51 |
| 22 | know if in fact we've made that statement | 14:09:54 |
| 23 | or filed something that makes that clear. | 14:09:56 |
| 24 | I assume all that will come out either in | 14:10:00 |
| 25 | the motion you filed in that hearing or | 14:10:02 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | the litigation itself. | 14:10:04 |
| 2 | Q.    Why do you say it sounds | 14:10:04 |
| 3 | logical that what I described was EFIH's | 14:10:09 |
| 4 | point of view? | 14:10:15 |
| 5 | A.    Just because I, in general | 14:10:15 |
| 6 | discussion with my co-chief restructuring | 14:10:18 |
| 7 | officer and counsel, I think I've -- I | 14:10:20 |
| 8 | knew about the automatic stay, and so I | 14:10:22 |
| 9 | think the basis of our not reinstating | 14:10:26 |
| 10 | the debt was the automatic stay so it | 14:10:28 |
| 11 | would probably follow.  But once again, | 14:10:30 |
| 12 | I'm probably over my skis, I'm not a | 14:10:32 |
| 13 | lawyer, I don't know fully what the | 14:10:35 |
| 14 | company's position will be on that | 14:10:37 |
| 15 | matter, so I would defer to her to give | 14:10:39 |
| 16 | the company's position on that matter. | 14:10:41 |
| 17 | Q.    Ms. Dore has not been | 14:10:43 |
| 18 | identified as a witness with knowledge of | 14:10:45 |
| 19 | matters relevant to this litigation, I'll | 14:10:47 |
| 20 | represent that to you, by the company. | 14:10:50 |
| 21 | So I apologize, I need to ask you these | 14:10:53 |
| 22 | questions. | 14:10:56 |
| 23 | It's fair to say -- | 14:10:56 |
| 24 | A.    I would kick it, by the way, | 14:10:57 |
| 25 | to Mr. Horton or Mr. Moldovan might very | 14:10:59 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 195

| | | |
|---|---|---|
| 1 | well know the answers as well.  I don't | 14:11:01 |
| 2 | mean to suggest that only Ms. Dore is the | 14:11:03 |
| 3 | subject matter expert.  They may very | 14:11:06 |
| 4 | well know the answer to that.  They're | 14:11:08 |
| 5 | much closer to this than I am. | 14:11:09 |
| 6 | Q.    Are you aware of anything, and | 14:11:11 |
| 7 | I understand you're not a lawyer, so you | 14:11:14 |
| 8 | can just tell me I'm not aware but I'm | 14:11:15 |
| 9 | not a lawyer, are you aware of anything | 14:11:17 |
| 10 | that would prevent EFIH from consenting | 14:11:20 |
| 11 | to the waiver of any default and the | 14:11:24 |
| 12 | rescission of any acceleration? | 14:11:28 |
| 13 | MR. HOWELL:  Object to form. | 14:11:31 |
| 14 | A.    Once again, you're asking me | 14:11:32 |
| 15 | to opine on a matter where I have no | 14:11:33 |
| 16 | expertise. | 14:11:35 |
| 17 | Q.    No.  With all -- I'm sorry, | 14:11:36 |
| 18 | Mr. Keglevic, I'm not.  Let me try to | 14:11:37 |
| 19 | reframe the question.  I want you to | 14:11:40 |
| 20 | focus on my language.  I'm not asking you | 14:11:42 |
| 21 | for a legal opinion, I'm asking you for | 14:11:45 |
| 22 | facts. | 14:11:46 |
| 23 | Are you aware of anything, are | 14:11:46 |
| 24 | you personally aware of anything would | 14:11:51 |
| 25 | prevent EFIH from consenting to the | 14:11:53 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

1    waiver of any default and the rescission          14:11:55

2    of any acceleration?                              14:11:56

3         A.    My only understanding is the          14:11:58

4    answer I gave, the automatic stay.                14:11:59

5         Q.    In fact, let's take it out of          14:12:02

6    this example.  You've been in the finance         14:12:04

7    world either as an auditor for companies          14:12:08

8    and a partner at two of the leading               14:12:13

9    accounting firms in this country and then         14:12:16

10   as the chief financial officer for many           14:12:18

11   years.  You've seen companies, have you           14:12:21

12   not, enter into agreements with lenders           14:12:24

13   whereby the lenders waive defaults and            14:12:28

14   forbear from collection action?                   14:12:33

15        A.    I've seen waivers of default.          14:12:35

16   I've never seen a waiver of default in            14:12:37

17   connection with a bankruptcy because I            14:12:39

18   didn't have any of my clients go                  14:12:40

19   bankrupt.                                         14:12:42

20        Q.    Okay.  But you've seen waivers         14:12:42

21   of defaults, have you not?                        14:12:46

22        A.    I have, but I don't know why           14:12:47

23   that matters because that's not our               14:12:50

24   situation.  Our default is driven by the          14:12:51

25   bankruptcy, so I think to ignore that is          14:12:55

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | interesting, but not on point. | 14:12:57 |
| 2 | Q.    Well, now you are sort of | 14:13:00 |
| 3 | entering into law and we'll debate that | 14:13:03 |
| 4 | in court and I appreciate you're not | 14:13:05 |
| 5 | going to do that.  I'm simply asking a | 14:13:07 |
| 6 | fact question. | 14:13:09 |
| 7 | You've seen lenders waive | 14:13:09 |
| 8 | defaults and you've seen companies accept | 14:13:12 |
| 9 | those waivers, right? | 14:13:14 |
| 10 | A.    I believe I answered that. | 14:13:15 |
| 11 | Q.    And the answer is yes? | 14:13:17 |
| 12 | A.    The answer to that was yes. | 14:13:18 |
| 13 | Q.    In connection with the various | 14:13:20 |
| 14 | offerings, I've shown you some dealer | 14:13:40 |
| 15 | manager agreements and I want to go back | 14:13:44 |
| 16 | to, I think we've already marked the one | 14:13:46 |
| 17 | from 2010, right?  I'm sorry, I did not, | 14:13:48 |
| 18 | so let me give you a new document. | 14:13:52 |
| 19 | MR. ANKER:  This will be | 14:14:07 |
| 20 | Keglevic Exhibit 11, it's EFIHMW | 14:14:08 |
| 21 | 00038410 -- this document, Keglevic | 14:14:11 |
| 22 | 11 is EFIHMW 00038410 to 479, | 14:14:11 |
| 23 | inclusive. | 14:14:38 |
| 24 | (Keglevic Exhibit 11 for | 14:14:39 |
| 25 | identification, Bates stamped | 14:14:39 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | EFIHMW 00038410 through 00038479.) | 14:14:11 |
| 2 | Q.    Mr. Keglevic, do you generally | 14:14:58 |
| 3 | recollect the document I've handed you | 14:15:00 |
| 4 | and has been marked as Keglevic Exhibit | 14:15:01 |
| 5 | 11? | 14:15:03 |
| 6 | A.    I know we had a dealer manager | 14:15:03 |
| 7 | agreement, but I don't know that I've | 14:15:09 |
| 8 | ever read it before. | 14:15:10 |
| 9 | Q.    Mr. Keglevic, you will note, I | 14:15:50 |
| 10 | want to take you through a couple of | 14:15:52 |
| 11 | documents if I could that are related to | 14:15:53 |
| 12 | each other, you'll note that this dealer | 14:15:56 |
| 13 | manager agreement and this is -- let me | 14:16:04 |
| 14 | back up. | 14:16:06 |
| 15 | You see that this dealer | 14:16:07 |
| 16 | manager agreement relates to the August | 14:16:09 |
| 17 | 2010 issuance of about 2.18 billion in | 14:16:13 |
| 18 | EFIH first lien debt? | 14:16:18 |
| 19 | A.    I do. | 14:16:19 |
| 20 | Q.    Okay.  And it's an agreement | 14:16:20 |
| 21 | with the underwriters on the transaction, | 14:16:23 |
| 22 | right? | 14:16:27 |
| 23 | A.    Yes, it appears to be. | 14:16:27 |
| 24 | Q.    And in addition to the | 14:16:28 |
| 25 | solvency representations we've gone | 14:16:31 |

| | | |
|---|---|---|
| 1 | through and other dealer manager | 14:16:33 |
| 2 | agreements, you'll see, and I'm happy to | 14:16:36 |
| 3 | direct you to them, there are various | 14:16:38 |
| 4 | representations regarding the offering | 14:16:40 |
| 5 | memoranda and other disclosure documents. | 14:16:45 |
| 6 | Would it be helpful for me to direct you | 14:16:54 |
| 7 | to places? | 14:16:57 |
| 8 | A.    I assume you're going to ask | 14:16:57 |
| 9 | me a question about it, so yes, it would. | 14:16:59 |
| 10 | Q.    All right.  Take a look, for | 14:17:01 |
| 11 | example, at page 5 under representations | 14:17:09 |
| 12 | and warranties.  Are you there? | 14:17:11 |
| 13 | A.    I'm there. | 14:17:13 |
| 14 | Q.    Okay.  You'll see that | 14:17:13 |
| 15 | representation (a) is that "EFH/EFIH and | 14:17:15 |
| 16 | EFIH Finance have prepared and filed with | 14:17:20 |
| 17 | the Securities and Exchange Commission a | 14:17:22 |
| 18 | registration statement on Form S-4, | 14:17:25 |
| 19 | including a preliminary prospectus for | 14:17:28 |
| 20 | registration under the Securities Act of | 14:17:31 |
| 21 | the Exchange Offers." | 14:17:31 |
| 22 | Do you see that? | 14:17:34 |
| 23 | A.    I do. | 14:17:35 |
| 24 | Q.    And then if you look at | 14:17:38 |
| 25 | representation (b) as in boy, the next | 14:17:39 |

| | | |
|---|---|---|
| 1 | paragraph, it begins by saying the | 14:17:42 |
| 2 | registration statement complied on the | 14:17:47 |
| 3 | effective date -- and on the effective | 14:17:50 |
| 4 | date will comply with various SEC rules, | 14:17:53 |
| 5 | and then if you go down a little ways to | 14:17:57 |
| 6 | the, the eighth line, the first one is | 14:18:02 |
| 7 | indenture, it's underlined? | 14:18:07 |
| 8 | A.    Yes. | 14:18:08 |
| 9 | Q.    Okay, you see that?  And now | 14:18:09 |
| 10 | go to the end of that line after the | 14:18:11 |
| 11 | semicolon.  Tell me whether you're there. | 14:18:12 |
| 12 | A.    I'm there. | 14:18:18 |
| 13 | Q.    It says, correct me if I'm | 14:18:19 |
| 14 | wrong, "on the commencement date, the | 14:18:21 |
| 15 | effective date and the exchange date, the | 14:18:23 |
| 16 | registration statement did not and will | 14:18:24 |
| 17 | not contain any untrue statement of any | 14:18:26 |
| 18 | material fact required to be stated | 14:18:28 |
| 19 | therein or necessary in order to make the | 14:18:31 |
| 20 | statements therein not misleading," and | 14:18:33 |
| 21 | it goes on to say "will not include any | 14:18:35 |
| 22 | untrue statement of a material fact or | 14:18:37 |
| 23 | omit the state of material fact necessary | 14:18:40 |
| 24 | in order to make the statements therein | 14:18:43 |
| 25 | in light of the circumstances under which | 14:18:44 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | they were made, not misleading," right? | 14:18:46 |
| 2 | A.    Yes, that's what it says. | 14:18:53 |
| 3 | Q.    And you'll see that, take a | 14:18:56 |
| 4 | look at the next page, paragraph D as in | 14:18:58 |
| 5 | David, "on the expiration date and on the | 14:19:02 |
| 6 | exchange date, the disclosure package | 14:19:03 |
| 7 | when taken as a whole, will not contain | 14:19:06 |
| 8 | any untrue statements of material fact or | 14:19:08 |
| 9 | omit to state any material fact necessary | 14:19:10 |
| 10 | in order to make the statements therein | 14:19:12 |
| 11 | in the light of the circumstances in | 14:19:15 |
| 12 | which they were made not misleading." | 14:19:16 |
| 13 | I read that correctly, did I | 14:19:18 |
| 14 | not? | 14:19:19 |
| 15 | A.    You did. | 14:19:20 |
| 16 | Q.    And you'll see -- | 14:19:20 |
| 17 | MR. ANKER:  Can we go off the | 14:19:47 |
| 18 | record a second. | 14:19:49 |
| 19 | THE VIDEOGRAPHER:  The time is | 14:19:52 |
| 20 | 2:19 p.m., we're now off the | 14:19:53 |
| 21 | record. | 14:19:56 |
| 22 | (A recess was taken.) | 14:19:57 |
| 23 | THE VIDEOGRAPHER:  Here now | 14:30:42 |
| 24 | marks the beginning of tape 4 of | 14:30:59 |
| 25 | the deposition of Mr. Paul | 14:31:00 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | Keglevic, the time is 2:31 p.m., | 14:31:06 |
| 2 | we're back on the record. | 14:31:08 |
| 3 | Q.   I think, Mr. Keglevic, we've | 14:31:10 |
| 4 | solved the problem of having someone on | 14:31:12 |
| 5 | the phone whose answering machine went | 14:31:14 |
| 6 | off. | 14:31:21 |
| 7 | I normally don't like to do | 14:31:21 |
| 8 | this, which is to break the flow, but I | 14:31:22 |
| 9 | want to go back to something that | 14:31:24 |
| 10 | occurred to me during the break. | 14:31:25 |
| 11 | You mentioned that as of the | 14:31:28 |
| 12 | time the debtors filed for bankruptcy, | 14:31:30 |
| 13 | including EFIH on April 29, 2014, they | 14:31:34 |
| 14 | were projecting that EFIH would be unable | 14:31:41 |
| 15 | to make a payment that would come due in | 14:31:46 |
| 16 | June of 2014, is that right? | 14:31:49 |
| 17 | A.   Yes. | 14:31:51 |
| 18 | Q.   And that payment was, am I | 14:31:51 |
| 19 | right, an interest payment on the EFIH | 14:31:57 |
| 20 | first lien debt? | 14:31:59 |
| 21 | A.   I'm not positive, but that's | 14:32:00 |
| 22 | my recollection, that was the EFIH first | 14:32:01 |
| 23 | lien debt payment, interest payment. | 14:32:04 |
| 24 | Q.   Did the company ever approach | 14:32:06 |
| 25 | the EFIH first lien noteholders and ask | 14:32:08 |

| | | |
|---|---|---|
| 1 | whether to avoid that default they would | 14:32:10 |
| 2 | agree to take a payment in kind, or PIK, | 14:32:14 |
| 3 | that interest payment coming due in June | 14:32:24 |
| 4 | of 2014? | 14:32:27 |
| 5 | A.   We had several rounds of | 14:32:28 |
| 6 | dialogues with the first liens and others | 14:32:30 |
| 7 | about the fact that we were going to be | 14:32:34 |
| 8 | out of money and if we couldn't get some | 14:32:36 |
| 9 | agreement we would have to file.  So none | 14:32:40 |
| 10 | was offered, but we did not specifically | 14:32:43 |
| 11 | go to them and ask for that relief, but | 14:32:45 |
| 12 | we certainly explained the situation and | 14:32:50 |
| 13 | our intent with the hope that we could | 14:32:52 |
| 14 | come up with some resolution and weren't | 14:32:54 |
| 15 | able to do so. | 14:32:56 |
| 16 | Q.   Okay.  And I'm told, Mr. | 14:32:56 |
| 17 | Keglevic, that the dividending from EFIH | 14:33:02 |
| 18 | to EFH of notes payable by EFH occurred | 14:33:18 |
| 19 | in January of 2013, the record will be | 14:33:27 |
| 20 | what the record is, and that it was | 14:33:31 |
| 21 | approximately face amount $6.52 billion | 14:33:33 |
| 22 | in EFH notes.  You're shaking your head | 14:33:39 |
| 23 | affirmatively, does that have the ring of | 14:33:42 |
| 24 | -- does that sound about right to you? | 14:33:44 |
| 25 | A.   Yes, that -- my concern was I | 14:33:46 |

| | | |
|---|---|---|
| 1 | couldn't remember the date, but we were | 14:33:49 |
| 2 | talking I think about December 21st, 2012 | 14:33:50 |
| 3 | and you asked if there was any | 14:33:53 |
| 4 | significant change in the assets level | 14:33:54 |
| 5 | and I knew it was sometime after that.  I | 14:33:56 |
| 6 | couldn't recall exactly when.  And I'll | 14:33:58 |
| 7 | accept the numbers, but the numbers are | 14:34:00 |
| 8 | fairly significant. | 14:34:01 |
| 9 | Q.    And I'm told as well that in | 14:34:04 |
| 10 | addition to dividending 6.52 billion in | 14:34:06 |
| 11 | notes from EFIH to EFH, $680 million in | 14:34:10 |
| 12 | cash was dividended from EFIH to EFH, | 14:34:18 |
| 13 | does that sound right? | 14:34:23 |
| 14 | A.    That I don't recall. | 14:34:24 |
| 15 | Q.    Okay. | 14:34:28 |
| 16 | A.    I mean it very well may have | 14:34:29 |
| 17 | been, but I just don't recall that. | 14:34:31 |
| 18 | Q.    At the time the company made | 14:34:33 |
| 19 | the representation in the dealer manager | 14:34:34 |
| 20 | agreement, December 21st, 2012, did it | 14:34:38 |
| 21 | already have a plan to have EFIH dividend | 14:34:44 |
| 22 | approximately $6.5 billion in EFH notes | 14:34:49 |
| 23 | to EFH? | 14:34:55 |
| 24 | MR. HOWELL:  Object to | 14:34:56 |
| 25 | foundation. | 14:34:57 |

| | | |
|---|---|---|
| 1 | A.    I'd have to go back and look | 14:34:58 |
| 2 | as to when we came to the determination | 14:34:59 |
| 3 | we needed to do that.  I don't recall. | 14:35:01 |
| 4 | Q.    You came to the determination | 14:35:06 |
| 5 | that you needed to do that or you could | 14:35:07 |
| 6 | do that? | 14:35:08 |
| 7 | A.    When we came to that | 14:35:09 |
| 8 | determination, period. | 14:35:11 |
| 9 | Q.    Okay.  Prior to filing -- I'm | 14:35:12 |
| 10 | sorry.  Prior to putting EFIH into | 14:35:29 |
| 11 | bankruptcy on April 29, 2014, did the | 14:35:31 |
| 12 | company analyze whether EFIH would be | 14:35:42 |
| 13 | able to cover the interest payment coming | 14:35:44 |
| 14 | due in June on the EFIH first lien notes | 14:35:48 |
| 15 | if I were to reverse the $6.5 billion | 14:35:54 |
| 16 | dividend of EFH notes that occurred a | 14:35:58 |
| 17 | little over a year earlier? | 14:36:04 |
| 18 | MR. HOWELL:  Object to | 14:36:07 |
| 19 | foundation. | 14:36:07 |
| 20 | A.    I don't recall that specific | 14:36:08 |
| 21 | analysis, but I also -- I would have to. | 14:36:10 |
| 22 | I'm not sure if when we transferred the | 14:36:18 |
| 23 | notes back upstairs whether or not they | 14:36:21 |
| 24 | were cancelled which would have foregone | 14:36:22 |
| 25 | our ability to do that.  I have something | 14:36:25 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    in the back of my mind, I can't recall              14:36:26

 2    exactly if that was even an option.                 14:36:28

 3         Q.    But certainly when the company           14:36:30

 4    made that dividend in January of 2013, it           14:36:31

 5    was aware of all the debt on -- let me              14:36:38

 6    back up.  I said the company and that's             14:36:40

 7    probably inexact, and Mr. Sabin, if he's            14:36:42

 8    listening, would be objecting.                      14:36:46

 9            When EFIH dividended $6.5                    14:36:49

10    billion, approximately, in notes, to EFH            14:36:55

11    in January of 2013, it was well aware of            14:36:59

12    all of the debt that EFIH had on its                14:37:03

13    books, right?                                       14:37:06

14         A.    Certainly we were aware at               14:37:06

15    that point in time, and I would say that            14:37:08

16    everybody else should have been aware               14:37:11

17    that we had the ability to do that.  It             14:37:12

18    was clear in our covenants that we had              14:37:15

19    the ability to make such dividends in               14:37:17

20    such amounts or we wouldn't have done it.           14:37:20

21         Q.    And certainly the company -- I           14:37:24

22    said the company.  Certainly EFIH when it           14:37:26

23    made that dividend was aware that                   14:37:28

24    semiannual interest payments were                   14:37:30

25    required on the $4 billion in EFIH first            14:37:33
```

| | | |
|---|---|---|
| 1 | lien debt, right? | 14:37:39 |
| 2 | A.    Yes. | 14:37:40 |
| 3 | Q.    And it was aware that interest | 14:37:40 |
| 4 | payments, I actually don't know whether | 14:37:44 |
| 5 | they're semiannual or not, were due on | 14:37:45 |
| 6 | the EFIH second lien debt, right? | 14:37:48 |
| 7 | A.    We knew interest payments were | 14:37:51 |
| 8 | due whenever they were due on all of our | 14:37:53 |
| 9 | debt at EFIH, and we also knew the amount | 14:37:56 |
| 10 | of interest income that would have flown | 14:37:58 |
| 11 | down to EFIH had we not done that | 14:38:00 |
| 12 | dividend. | 14:38:02 |
| 13 | Q.    And I think I asked you this | 14:38:02 |
| 14 | question in a more general way, so let me | 14:38:05 |
| 15 | ask it in a more specific way.  EFIH | 14:38:08 |
| 16 | would not have in January 2013 dividended | 14:38:11 |
| 17 | $6.5 billion in EFH notes to EFH if it | 14:38:19 |
| 18 | believed that by a little bit over a year | 14:38:24 |
| 19 | later it would be unable to make any debt | 14:38:28 |
| 20 | payments as they came due, right? | 14:38:33 |
| 21 | MR. HOWELL:  Object to form. | 14:38:36 |
| 22 | A.    I don't think at that point in | 14:38:38 |
| 23 | time that was a -- we certainly had the | 14:38:43 |
| 24 | cash flow forecasts at that point in time | 14:38:49 |
| 25 | that indicated that we wouldn't have run | 14:38:52 |

| | | |
|---|---|---|
| 1 | out of cash when we did. | 14:38:54 |
| 2 | Q.    You had cash flow forecasts | 14:38:57 |
| 3 | that projected that EFIH would be able to | 14:38:59 |
| 4 | make all of its, would meet all of its | 14:39:02 |
| 5 | debt obligations as they came due, right? | 14:39:04 |
| 6 | A.    It depends on over what time | 14:39:06 |
| 7 | frame, but I -- you know, we're now into | 14:39:09 |
| 8 | a temporal zone and I don't remember | 14:39:11 |
| 9 | specifically what the forecast showed at | 14:39:14 |
| 10 | that point in time, in January 2013, but | 14:39:18 |
| 11 | my recollection was that it did not, that | 14:39:21 |
| 12 | the date we ran out of cash as time | 14:39:23 |
| 13 | passed became closer to the petition date | 14:39:27 |
| 14 | than it was in January 1st, 2013. | 14:39:32 |
| 15 | Q.    Well, in January 1st, 2013, | 14:39:37 |
| 16 | had the company -- as of January -- let | 14:39:40 |
| 17 | me start again. | 14:39:45 |
| 18 | In January 2013, had the | 14:39:46 |
| 19 | company, had EFIH done analyses that | 14:39:49 |
| 20 | showed that it would run out of cash and | 14:39:52 |
| 21 | be unable to pay its liabilities at any | 14:39:54 |
| 22 | point in the future? | 14:39:57 |
| 23 | A.    I don't recall.  That's a | 14:39:59 |
| 24 | temporal date.  I don't think so.  I | 14:40:03 |
| 25 | think at that point, for the period we | 14:40:05 |

| | | |
|---|---|---|
| 1 | were looking with some major assumptions, | 14:40:07 |
| 2 | I think we showed that we would be able | 14:40:11 |
| 3 | to meet our debt as they came due and | 14:40:13 |
| 4 | that's why we continued to support | 14:40:16 |
| 5 | Olympus.  But there were a lot of | 14:40:17 |
| 6 | assumptions underlying that conclusion. | 14:40:19 |
| 7 | Q.    Right.  But assumptions that | 14:40:21 |
| 8 | the company, EFIH, wouldn't have made, | 14:40:24 |
| 9 | and you as the chief financial officer | 14:40:28 |
| 10 | wouldn't have supported if you didn't | 14:40:29 |
| 11 | think they were reasonable and | 14:40:32 |
| 12 | appropriate at the time, right? | 14:40:33 |
| 13 | A.    I thought at the time they | 14:40:34 |
| 14 | were reasonable assumptions, but they | 14:40:35 |
| 15 | weren't all within our control. | 14:40:38 |
| 16 | Q.    Okay.  Let's go back to where | 14:40:39 |
| 17 | I was, and I do hate to break the flow, | 14:40:47 |
| 18 | but I think that -- let's go back to | 14:40:50 |
| 19 | Exhibit 11.  I think you had, I had gone | 14:40:55 |
| 20 | over with you at least a couple of | 14:40:57 |
| 21 | representations that the prospectus, | 14:40:59 |
| 22 | registration statement and the disclosure | 14:41:03 |
| 23 | package would not contain any material | 14:41:05 |
| 24 | misrepresentations and also not omit any | 14:41:09 |
| 25 | material facts necessary in order to make | 14:41:17 |

| | | |
|---|---|---|
| 1 | the statements therein not misleading, | 14:41:18 |
| 2 | right? | 14:41:23 |
| 3 | A.    Correct. | 14:41:23 |
| 4 | Q.    And I don't think I need to -- | 14:41:23 |
| 5 | why don't I just show you one other. | 14:41:25 |
| 6 | Take a look at page 6, (e) as in Earl. | 14:41:27 |
| 7 | Are you there? | 14:41:36 |
| 8 | A.    Yes. | 14:41:37 |
| 9 | Q.    "Immediately prior to the | 14:41:37 |
| 10 | early tender date, the preliminary | 14:41:38 |
| 11 | prospectus will not contain any untrue | 14:41:40 |
| 12 | statement of a material fact or omit to | 14:41:43 |
| 13 | state any material fact necessary in | 14:41:45 |
| 14 | order to make the statements therein, in | 14:41:47 |
| 15 | light of the circumstances in which they | 14:41:48 |
| 16 | were made, not misleading." | 14:41:49 |
| 17 | I read that correctly, did I | 14:41:52 |
| 18 | not? | 14:41:54 |
| 19 | A.    Yes. | 14:41:54 |
| 20 | Q.    Now you signed I believe an | 14:41:54 |
| 21 | officer's certificate in connection with | 14:41:59 |
| 22 | this dealer manager agreement.  I'm happy | 14:42:05 |
| 23 | to show it to you. | 14:42:08 |
| 24 | A.    Please. | 14:42:09 |
| 25 | Q.    It may refresh your | 14:42:10 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 211

| | | |
|---|---|---|
| 1 | recollection. | 14:42:11 |
| 2 | MR. ANKER:  We'll mark this as | 14:42:12 |
| 3 | Keglevic Exhibit 12.  It bears the | 14:42:14 |
| 4 | Bates stamps EFIHMW 00090975 | 14:42:15 |
| 5 | through 76. | 14:42:20 |
| 6 | (Keglevic Exhibit 12 for | 14:42:22 |
| 7 | identification, Bates stamped | 14:42:17 |
| 8 | EFIHMW 00090975 through 0090976.) | 14:42:17 |
| 9 | Q.    Do you recognize the document | 14:42:32 |
| 10 | that's been marked as Exhibit 12? | 14:42:33 |
| 11 | A.    Yes. | 14:42:34 |
| 12 | Q.    Okay.  What is it, sir? | 14:42:35 |
| 13 | A.    It's the officer's certificate | 14:42:36 |
| 14 | dated August 17th, 2010. | 14:42:39 |
| 15 | Q.    And it bears, in addition to | 14:42:41 |
| 16 | Mr. Horton's signature, your signature? | 14:42:44 |
| 17 | A.    It does. | 14:42:46 |
| 18 | Q.    Okay.  And if you turn to the | 14:42:46 |
| 19 | first page, both you and Mr. Horton were | 14:42:49 |
| 20 | confirming, certifying, that you had | 14:42:56 |
| 21 | examined the offer material and the | 14:43:00 |
| 22 | dealer manager agreement and, among other | 14:43:04 |
| 23 | things, that the representations and | 14:43:06 |
| 24 | warranties of EFIH in the dealer manager | 14:43:08 |
| 25 | agreement are true and correct in all | 14:43:12 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 212

1    material respects, right?                          14:43:14

2         A.    That's right, as of that date.          14:43:15

3         Q.    Okay.   And we've already gone           14:43:16

4    over that many of those representations,           14:43:22

5    not all, but many of them concern the              14:43:24

6    adequacy of the disclosures made in the            14:43:26

7    offering materials.   How did you satisfy          14:43:29

8    yourself when you signed the officer's             14:43:33

9    certificate that is Exhibit number 12,             14:43:37

10   that the representations and warranties            14:43:40

11   were true and correct in all material             14:43:45

12   respects?                                          14:43:47

13        A.    We have a process that we go            14:43:48

14   through, including the incorporation of            14:43:50

15   financial statements and those                     14:43:53

16   disclosures.   We have various functional          14:43:54

17   groups of people, including Mr. Moldovan           14:43:57

18   and Mr. Horton, and our legal department           14:44:01

19   and outside legal department reviewing             14:44:04

20   all the materials and making                       14:44:06

21   recommendations as to what the disclosure          14:44:08

22   should be.   We then have reviews by                14:44:10

23   various levels of management and                    14:44:12

24   ultimately it culminates in the signing            14:44:14

25   of a certificate.                                  14:44:19

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 213

| | | |
|---|---|---|
| 1 | Q.   And so I want to focus you | 14:44:20 |
| 2 | specifically on the representations and | 14:44:22 |
| 3 | warranties in the dealer manager | 14:44:25 |
| 4 | agreement that we've gone over recently, | 14:44:32 |
| 5 | that the registration statement and other | 14:44:35 |
| 6 | disclosure documents were not materially | 14:44:38 |
| 7 | misleading and failed to omit any | 14:44:41 |
| 8 | material fact necessary to make them true | 14:44:43 |
| 9 | and correct. | 14:44:47 |
| 10 |    How did you go about | 14:44:47 |
| 11 | satisfying yourself that that | 14:44:50 |
| 12 | representation or those representations | 14:44:52 |
| 13 | were true and correct? | 14:44:55 |
| 14 |    MR. HOWELL:   Object to form. | 14:44:59 |
| 15 | A.   I'd give the same answer I | 14:45:00 |
| 16 | just gave.  I thought I answered that | 14:45:02 |
| 17 | question. | 14:45:04 |
| 18 | Q.   I think I asked the question | 14:45:04 |
| 19 | broadly about all the reps and | 14:45:06 |
| 20 | warranties? | 14:45:07 |
| 21 | A.   Specifically with this one we | 14:45:07 |
| 22 | would follow the same process. | 14:45:09 |
| 23 | Q.   And you say you would have, I | 14:45:11 |
| 24 | take it you did follow the same process? | 14:45:13 |
| 25 | A.   I believe we did. | 14:45:15 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 214

```
 1        Q.    Okay.  Did you, yourself          14:45:16
 2   review any of the -- I'll start again.        14:45:19
 3             Did you yourself review the         14:45:24
 4   offering memorandum?                          14:45:26
 5        A.    I read certain parts of it.  I     14:45:27
 6   don't remember if I read it cover to          14:45:30
 7   cover.                                        14:45:31
 8        Q.    Did you read the risk factor       14:45:31
 9   disclosures?                                  14:45:33
10        A.    I don't recall specifically        14:45:34
11   what parts I may have read and may not        14:45:36
12   have read.                                    14:45:37
13        Q.    You testified earlier I think      14:45:38
14   that you -- that the term materiality in      14:45:45
15   your world is a term of art, did I hear       14:45:50
16   you correctly?                                14:45:53
17        A.    You did.                           14:45:54
18        Q.    Okay.  And I think you said        14:45:54
19   that it can mean as low as 5 percent; is      14:45:56
20   that right?                                   14:46:02
21        A.    Right, there's some SEC            14:46:02
22   guidance on what it means.                    14:46:05
23        Q.    Can you give me a little more      14:46:07
24   flavor, 5 percent?  Just enumerate --         14:46:08
25        A.    Typical net income test, so 5      14:46:11
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 215

| | | |
|---|---|---|
| 1 | percent of net income is presumed | 14:46:13 |
| 2 | material, but there's also qualitative | 14:46:15 |
| 3 | guidance that says it could be less than | 14:46:18 |
| 4 | 5 percent and be material. | 14:46:20 |
| 5 | Q.    There's both quantitative and | 14:46:22 |
| 6 | qualitative materiality -- | 14:46:25 |
| 7 | A.    Correct. | 14:46:25 |
| 8 | Q.    -- right? | 14:46:26 |
| 9 | A.    Correct. | 14:46:26 |
| 10 | Q.    But certainly, if an event | 14:46:35 |
| 11 | will cause the economic result to be 5 or | 14:46:40 |
| 12 | more percent different than projected, | 14:46:44 |
| 13 | that certainly is a Fed flag that it | 14:46:47 |
| 14 | might be material, right? | 14:46:49 |
| 15 | MR. HOWELL:  Object to form. | 14:46:52 |
| 16 | A.    It depends on the item you're | 14:46:53 |
| 17 | talking about and 5 percent of what. | 14:46:54 |
| 18 | It's typically a net income test so you | 14:46:56 |
| 19 | have to give me more where you're going. | 14:47:02 |
| 20 | It's a pretty broad hypothetical. | 14:47:04 |
| 21 | Q.    Okay.  Are you aware that the | 14:47:06 |
| 22 | 2010 offering memorandum has risk factor | 14:47:12 |
| 23 | disclosures? | 14:47:15 |
| 24 | A.    If you have a copy -- I | 14:47:15 |
| 25 | believe it does.  I know it does, yes. | 14:47:19 |

```
 1          Q.     Let me hand it to you.  I mean           14:47:20
 2    I'm trying frankly to move this along but             14:47:22
 3    I'm happy --                                          14:47:25
 4          A.     No, that's fine, I know it has           14:47:26
 5    a risk factor section and we also have a              14:47:27
 6    process that compares those risk factors              14:47:30
 7    to the ones in our financial statements               14:47:32
 8    so we can identify any new ones or                    14:47:33
 9    changes to what we've been disclosing in              14:47:36
10    our financials, so.                                   14:47:38
11              MR. ANKER:  Why don't we mark                14:47:39
12        this as Keglevic 13, it's EFIHMW                   14:47:40
13        00051935 through 2667.                             14:47:44
14              (Keglevic Exhibit 13 for                     14:47:51
15        identification, Bates stamped                      14:47:42
16        EFIHMW 00051935 through 00052667.)                 14:47:42
17          Q.     Can you briefly identify this            14:48:13
18    document?                                              14:48:14
19          A.     It says prospectus filed                 14:48:14
20    pursuant to rule 424(b)(3) filed on                    14:48:17
21    8/16/2010 for EFIH.                                    14:48:20
22          Q.     So this is one of the                    14:48:21
23    documents that you were representing --               14:48:22
24    that you were certifying, excuse me, was              14:48:24
25    not materially misleading and contained               14:48:28
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | no material omissions in your officer's | 14:48:33 |
| 2 | certificate dated as of August 17, 2020, | 14:48:38 |
| 3 | am I right on that? | 14:48:43 |
| 4 | MR. HOWELL:  Object to form. | 14:48:46 |
| 5 | Q.    I'm sorry, I said 2020.  2010. | 14:48:47 |
| 6 | A.    Yes, it covered the offering, | 14:48:50 |
| 7 | offering materials and dealer manager | 14:48:52 |
| 8 | agreement, so this I believe is the | 14:48:53 |
| 9 | offering memorandum. | 14:48:55 |
| 10 | Q.    And there were, let me turn | 14:49:02 |
| 11 | you to the risk factors, they start on | 14:49:04 |
| 12 | page 38.  If it's easier maybe to do the | 14:49:06 |
| 13 | Bates number, I'm happy to do that as | 14:49:12 |
| 14 | well. | 14:49:13 |
| 15 | A.    Yes, I'm there. | 14:49:14 |
| 16 | Q.    I'm not going to ask you to | 14:49:14 |
| 17 | count the pages, they go on for many | 14:49:15 |
| 18 | pages.  How did the company go about | 14:49:17 |
| 19 | deciding -- well, let me back up. | 14:49:19 |
| 20 | I presume, tell me if my | 14:49:21 |
| 21 | presumption is wrong, that the company, | 14:49:26 |
| 22 | that EFIH sought in this offering | 14:49:28 |
| 23 | memorandum and in all of its offering | 14:49:30 |
| 24 | memorandum for its debt issuances to | 14:49:34 |
| 25 | disclose in the risk factors all material | 14:49:37 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 218

| | |
|---|---|
| 1 | risks of which it was aware? | 14:49:40 |
| 2 | A.    We sought to comply with the | 14:49:42 |
| 3 | applicable securities laws. | 14:49:44 |
| 4 | Q.    I need you to answer my | 14:49:45 |
| 5 | question.  It's not -- I mean I -- I | 14:49:47 |
| 6 | think I'm suggesting good motives, not | 14:49:50 |
| 7 | bad motives, Mr. Keglevic. | 14:49:53 |
| 8 | I presume the company didn't | 14:49:54 |
| 9 | sort of conclude, you know, there's 50 | 14:49:56 |
| 10 | material risks, let's just disclose a | 14:49:59 |
| 11 | subset of them, 48, or 40 or 32, it | 14:50:02 |
| 12 | disclosed all material risks of which it | 14:50:06 |
| 13 | was aware, right? | 14:50:09 |
| 14 | MR. HOWELL:  Object to form. | 14:50:11 |
| 15 | A.    The material risks we | 14:50:12 |
| 16 | disclosed are the ones that we thought | 14:50:14 |
| 17 | were appropriate to disclose. | 14:50:16 |
| 18 | Q.    And you thought what were | 14:50:17 |
| 19 | appropriate were all material risks, | 14:50:21 |
| 20 | right? | 14:50:22 |
| 21 | A.    Well, I think somewhere in | 14:50:22 |
| 22 | this document it will suggest that no | 14:50:24 |
| 23 | registrant or offeror of any securities | 14:50:26 |
| 24 | can anticipate and disclose 100 percent | 14:50:30 |
| 25 | of all potential material risks, so | 14:50:32 |

| | | |
|---|---|---|
| 1 | that's a very important point here.  You | 14:50:34 |
| 2 | don't have, you know, future sight into | 14:50:36 |
| 3 | what may happen. | 14:50:38 |
| 4 | So based on, you know, and we | 14:50:39 |
| 5 | hire outside counsel, the counsel | 14:50:42 |
| 6 | represented your company to make sure if | 14:50:45 |
| 7 | they thought there was a material -- your | 14:50:46 |
| 8 | client think if there's material risk | 14:50:49 |
| 9 | they could have asked for additional | 14:50:50 |
| 10 | disclosures, which they often do, and | 14:50:52 |
| 11 | together with our team and our lawyers | 14:50:54 |
| 12 | and lawyers representing your side, we | 14:50:56 |
| 13 | come to an agreement that we in fact | 14:50:58 |
| 14 | disclosed all material risks. | 14:51:00 |
| 15 | Q.    Let me ask -- | 14:51:02 |
| 16 | A.    It's not a one-sided | 14:51:04 |
| 17 | proposition, sir. | 14:51:05 |
| 18 | Q.    Well, are you personally | 14:51:06 |
| 19 | aware, Mr. Keglevic, of how the drafting | 14:51:08 |
| 20 | of this offering memorandum came about | 14:51:11 |
| 21 | and whether anyone representing my client | 14:51:14 |
| 22 | had any role?  Are you personally aware? | 14:51:17 |
| 23 | A.    Am I personally aware?  I | 14:51:19 |
| 24 | believe the answer to be yes. | 14:51:21 |
| 25 | Q.    You are personally aware? | 14:51:21 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 220

```
 1          A.    I've been informed, I know        14:51:23
 2    during the process that we had to             14:51:25
 3    exchange with your client's counsel and       14:51:27
 4    get comments back and those comments were     14:51:30
 5    reported to me at times.                       14:51:32
 6          Q.    You did not speak with anyone      14:51:33
 7    from --                                         14:51:36
 8          A.    I did not, my team did.            14:51:37
 9          Q.    And are you referring to the       14:51:39
10    underwriters now?                               14:51:40
11          A.    Yes, underwriter counsel.          14:51:41
12          Q.    Now let's go back to where I       14:51:47
13    was, if I could.  I understand the             14:51:49
14    company doesn't have perfect insight into     14:51:51
15    the future, so I'm only limiting my           14:51:54
16    question to material risks of which it        14:51:56
17    was aware.  It's fair to say that the         14:51:58
18    company -- that EFIH sought to disclose       14:52:02
19    in the risk factors all material risks of    14:52:06
20    which it was aware at the time, right?        14:52:09
21               MR. HOWELL:  Object to form.       14:52:13
22          A.    If there was a material risk      14:52:14
23    that we were aware, we would have             14:52:21
24    disclosed it.                                  14:52:24
25          Q.    And are you aware that there      14:52:24
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 221

| | | |
|---|---|---|
| 1 | are a number of disclosures in this risk | 14:52:27 |
| 2 | factors relating to possible bankruptcy | 14:52:30 |
| 3 | filings? | 14:52:33 |
| 4 | MR. HOWELL:  Object to form. | 14:52:35 |
| 5 | Q.    Do you want me to show you a | 14:52:36 |
| 6 | few, would it be helpful? | 14:52:38 |
| 7 | A.    No, I'm sure there are some, | 14:52:39 |
| 8 | yes. | 14:52:40 |
| 9 | Q.    I'll represent to you there's | 14:52:41 |
| 10 | no disclosure in the risk factors section | 14:52:44 |
| 11 | that were -- or if EFIH files for | 14:52:48 |
| 12 | bankruptcy it may be able to refinance | 14:52:52 |
| 13 | the debt and the -- without paying any | 14:52:56 |
| 14 | make whole or other premium even though | 14:53:00 |
| 15 | it does so before December 1, 2015.  Are | 14:53:02 |
| 16 | you aware of any discussion at the | 14:53:07 |
| 17 | company about whether that disclosure | 14:53:10 |
| 18 | should be met? | 14:53:14 |
| 19 | A.    I don't recall.  I personally | 14:53:15 |
| 20 | was not aware that we had that discussion | 14:53:18 |
| 21 | at that time. | 14:53:19 |
| 22 | Q.    Okay, and I think, I think you | 14:53:20 |
| 23 | just anticipated the next question of | 14:53:22 |
| 24 | mine.  I think you said to me earlier, | 14:53:23 |
| 25 | and I want you to keep, remind yourself | 14:53:27 |

| | | |
|---|---|---|
| 1 | of the date of this, August 2010, that to | 14:53:30 |
| 2 | your knowledge, the first time the issue | 14:53:33 |
| 3 | ever came up and to your knowledge anyone | 14:53:35 |
| 4 | at the company thought about it, was | 14:53:38 |
| 5 | later in connection with the TCEH | 14:53:40 |
| 6 | exchange, as far as you're aware? | 14:53:44 |
| 7 | MR. HOWELL:  Object to form. | 14:53:46 |
| 8 | A.    Yeah, I don't want to speak to | 14:53:47 |
| 9 | whether people on my team thought about | 14:53:49 |
| 10 | it.  I don't know if they did or did not. | 14:53:50 |
| 11 | I personally was not involved with | 14:53:53 |
| 12 | communication with my team about the | 14:53:55 |
| 13 | issue prior to the Oaktree exchange that | 14:53:57 |
| 14 | we've talked about previously. | 14:54:01 |
| 15 | Q.    And you personally, Paul | 14:54:02 |
| 16 | Keglevic, didn't think about this issue | 14:54:06 |
| 17 | at all prior to your discussion, indirect | 14:54:08 |
| 18 | discussion with Mr. Panossian? | 14:54:13 |
| 19 | A.    Panossian, yes, that's | 14:54:17 |
| 20 | correct, I did not personally think of -- | 14:54:18 |
| 21 | there's many bankruptcy things in 2010 | 14:54:21 |
| 22 | that I was not aware of or didn't think | 14:54:23 |
| 23 | about. | 14:54:25 |
| 24 | Q.    Okay.  Let's turn, Mr. | 14:54:25 |
| 25 | Keglevic, to the discussion that occurred | 14:54:58 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 223

```
 1    with Mr. Panossian?                        14:55:07
 2         A.    Panossian, I believe, Armen     14:55:11
 3    Panossian, P-a-n-o-s-s-i-a-n.              14:55:14
 4         Q.    I think you already have this,  14:55:18
 5    but let's be clear.  That's a discussion   14:55:20
 6    about an exchange on the TCEH side,        14:55:24
 7    right?                                     14:55:27
 8         A.    Yes, specifically related to    14:55:27
 9    the TCEH second lien offering.             14:55:29
10         Q.    And it was not a discussion     14:55:35
11    about any EFIH first lien debt, was it?    14:55:36
12         A.    No, it had nothing to do with   14:55:40
13    the EFIH first lien debt.                  14:55:41
14         Q.    And I've asked this question    14:55:48
15    and I don't mean to -- you know, I don't   14:55:49
16    really mean to cover the same ground with  14:55:51
17    you that I've covered with others, but if  14:55:53
18    you have a different recollection I need    14:55:54
19    to understand it.                          14:55:56
20              My understanding from Mr.        14:55:56
21    Horton and Mr. Moldovan is that to the     14:55:58
22    best of their knowledge, no aspect of the  14:56:01
23    conversation with Mr. Panossian relating   14:56:06
24    to the TCEH exchange was communicated by   14:56:08
25    any of the debtors to any EFIH first lien  14:56:14
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    noteholder, or the EFIH first lien        14:56:18
 2    trustee.  Do you have a different         14:56:21
 3    understanding?                            14:56:24
 4         A.    I certainly did not have any   14:56:25
 5    of those discussions.                     14:56:27
 6         Q.    So if I can use this term, and 14:56:28
 7    if it's a problem -- if it doesn't make   14:56:32
 8    sense to you I'll use different           14:56:34
 9    terminology, the entire discussion with   14:56:36
10    Mr. Panossian is invisible to the EFIH    14:56:40
11    first lien noteholders and the EFIH first 14:56:47
12    lien note trustee, as far as you know?    14:56:51
13         A.    I did not have any discussion  14:56:56
14    with them.  Who knows if Mr. Panossian or 14:56:57
15    lawyers or -- you know.                   14:57:01
16         Q.    I'm going to try to do this at 14:57:03
17    a high level and not start showing you a  14:57:05
18    lot of documents, but I'm going to show   14:57:08
19    you a few.  What did you -- you never     14:57:10
20    spoke to Mr. Panossian directly, right?   14:57:12
21         A.    I did speak with him directly  14:57:14
22    on many issues, not specifically with     14:57:16
23    respect to his request for this language. 14:57:18
24         Q.    And when you say this          14:57:22
25    language, without giving you like, I      14:57:23
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 225

| | | |
|---|---|---|
| 1 | don't want you to tell me exactly, what | 14:57:26 |
| 2 | did you understand the effect of this | 14:57:28 |
| 3 | language to be? | 14:57:29 |
| 4 | A.    Well, I'll tell you as I | 14:57:30 |
| 5 | understood it.  He asked for capital A | 14:57:31 |
| 6 | capital P Premium, which is a defined | 14:57:34 |
| 7 | term in the indenture and we said no, | 14:57:37 |
| 8 | that wasn't precedent, that wasn't | 14:57:39 |
| 9 | market.  If we did that, we were -- and | 14:57:41 |
| 10 | he wanted it to be clear that under any | 14:57:43 |
| 11 | default, including a bankruptcy default, | 14:57:46 |
| 12 | that he would be entitled to that | 14:57:48 |
| 13 | applicable premium.  That was my | 14:57:54 |
| 14 | understanding of his ask. | 14:57:56 |
| 15 | Q.    So your -- can I just put it | 14:57:56 |
| 16 | in my words? | 14:57:58 |
| 17 | A.    Sure. | 14:57:59 |
| 18 | Q.    And just make sure I | 14:57:59 |
| 19 | understand it.  In your understanding, | 14:58:01 |
| 20 | his ask was -- I'm sorry.  Your | 14:58:03 |
| 21 | understanding of his ask was that were | 14:58:11 |
| 22 | EFIH to default, any type of default, the | 14:58:17 |
| 23 | cap A Applicable cap P Premium would be | 14:58:23 |
| 24 | due? | 14:58:27 |
| 25 | A.    Correct. | 14:58:27 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 226

| | | |
|---|---|---|
| 1 | Q.    And one such default that | 14:58:27 |
| 2 | would cause the cap A Applicable cap P | 14:58:30 |
| 3 | Premium to come due would be a bankruptcy | 14:58:36 |
| 4 | filing by EFIH? | 14:58:38 |
| 5 | A.    That's correct.  Well, but in | 14:58:42 |
| 6 | this case TCEH. | 14:58:46 |
| 7 | Q.    I'm sorry.  Let me -- you know | 14:58:46 |
| 8 | something, I just got a terrible record | 14:58:49 |
| 9 | and I apologize for keeping you.  I need | 14:58:51 |
| 10 | to go back.  I need to go back a couple | 14:58:53 |
| 11 | of questions. | 14:58:55 |
| 12 | Your understanding of Mr. | 14:58:55 |
| 13 | Panossian's ask for Oaktree was that were | 14:58:58 |
| 14 | TCEH to default, any type of default, the | 14:59:05 |
| 15 | cap A Applicable cap P Premium would come | 14:59:08 |
| 16 | due? | 14:59:11 |
| 17 | A.    That's my understanding, yes. | 14:59:12 |
| 18 | Q.    And again, I apologize for | 14:59:13 |
| 19 | being anal compulsive.  Your | 14:59:17 |
| 20 | understanding of Mr. Panossian's ask was | 14:59:19 |
| 21 | that one of the defaults that would cause | 14:59:22 |
| 22 | the cap A cap P -- cap A Applicable cap P | 14:59:28 |
| 23 | Premium to come due would be a bankruptcy | 14:59:33 |
| 24 | filing by TCEH? | 14:59:36 |
| 25 | A.    Correct. | 14:59:45 |

| | | |
|---|---|---|
| 1 | Q.    And you said that TCEH said no | 14:59:45 |
| 2 | to that request? | 14:59:47 |
| 3 | A.    Correct. | 14:59:48 |
| 4 | MR. HOWELL:  Object to form. | 14:59:50 |
| 5 | Q.    To your knowledge, TCEH | 14:59:55 |
| 6 | declined that request? | 14:59:57 |
| 7 | A.    Well, my personal knowledge | 14:59:58 |
| 8 | was when it was brought to my attention | 15:00:00 |
| 9 | and that was the ask, I said no to my | 15:00:02 |
| 10 | team, tell him we will not do that | 15:00:06 |
| 11 | because it was -- you know, it wasn't | 15:00:09 |
| 12 | precedent, wasn't market.  I don't | 15:00:11 |
| 13 | remember what else I might have said, but | 15:00:15 |
| 14 | I remember those two. | 15:00:16 |
| 15 | Q.    I would have thought based on | 15:00:20 |
| 16 | the conversation we had today, that when | 15:00:21 |
| 17 | someone came to you and said should we | 15:00:23 |
| 18 | agree to this, you wouldn't have known | 15:00:26 |
| 19 | immediately whether it was market and | 15:00:28 |
| 20 | whether there was precedent.  Am I right | 15:00:31 |
| 21 | in my supposition? | 15:00:33 |
| 22 | A.    You are.  When they brought to | 15:00:34 |
| 23 | me the ask, I asked various questions, | 15:00:37 |
| 24 | was it market, is there a precedent.  And | 15:00:40 |
| 25 | I received that information from various | 15:00:43 |

| | | |
|---|---|---|
| 1 | sources, which then drew my opinion and | 15:00:45 |
| 2 | my conclusion that said because it is | 15:00:48 |
| 3 | not, we should hold firm and say no. | 15:00:51 |
| 4 | Q.    Okay.  I think you said this | 15:00:52 |
| 5 | earlier, but again, I don't want to put | 15:00:57 |
| 6 | words in your mouth, one of your concerns | 15:00:59 |
| 7 | about agreeing to something that was not | 15:01:02 |
| 8 | market, that was not consistent with | 15:01:05 |
| 9 | prior precedent as you understood it, is | 15:01:09 |
| 10 | that it might create a precedent issue | 15:01:11 |
| 11 | for your owners, the sponsors? | 15:01:13 |
| 12 | MR. HOWELL:  Object to form. | 15:01:16 |
| 13 | Q.    Am I right about that? | 15:01:17 |
| 14 | MR. HOWELL:  Sorry.  Object to | 15:01:18 |
| 15 | form. | 15:01:20 |
| 16 | A.    Yeah, I was mostly -- I was | 15:01:20 |
| 17 | not as much concerned about them as it | 15:01:22 |
| 18 | was that I was concerned about our | 15:01:25 |
| 19 | company and future issuances, but I knew | 15:01:26 |
| 20 | that the sponsors have that sensitivity | 15:01:30 |
| 21 | as well, so effectively our board | 15:01:32 |
| 22 | wouldn't like us agreeing to that because | 15:01:34 |
| 23 | the impact might spread beyond our | 15:01:38 |
| 24 | company into their company, so I did have | 15:01:41 |
| 25 | that in mind. | 15:01:43 |

```
 1         Q.    Just again so I have a clear      15:01:45
 2   record, the sponsors are private equity       15:01:46
 3   firms and they own a series of portfolio       15:01:49
 4   companies, EFH was one, but was not the        15:01:51
 5   beginning and the end of the list of           15:01:54
 6   portfolio companies they had equity            15:01:55
 7   interests in, right?                           15:01:57
 8         A.    It was one of the big ones,        15:01:58
 9   the biggest at one point in time, but          15:02:00
10   certainly they had many other portfolio        15:02:02
11   companies and aspired to continue into         15:02:04
12   the business into the future.                  15:02:06
13         Q.    When you say -- let me back        15:02:08
14   up.  I understand the concern that once        15:02:20
15   you agree to it in one indenture people        15:02:34
16   don't reinvent the wheel, it will end up       15:02:37
17   being in other indentures.  But what was       15:02:39
18   the concern as you perceived it, you,          15:02:42
19   Paul Keglevic, personally, with having         15:02:46
20   this language in all indentures?               15:02:48
21         A.    That it could cost us more         15:02:51
22   money.                                         15:02:52
23         Q.    Because there could be any         15:02:53
24   type of default that would cause the           15:02:56
25   applicable --                                  15:02:57
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 230

```
 1          A.    Correct.                          15:03:03

 2          Q.    Let me complete the sentence,      15:03:03

 3     let's have the witness answer again, I        15:03:05

 4     don't want him to answer an incomplete        15:03:07

 5     question.                                     15:03:09

 6            Mr. Keglevic, do you need a            15:03:09

 7     break for a moment, I'm happy to give it      15:03:11

 8     to you if you need it?                        15:03:13

 9          A.    I'm fine.                          15:03:14

10          Q.    Okay.  As you understood the       15:03:15

11     proposal, any default, as you understood     15:03:20

12     the ask, any ask -- as you understood the    15:03:24

13     ask, any default, a covenant default,        15:03:26

14     anything, would make the applicable          15:03:29

15     premium due?                                 15:03:31

16          A.    Yes, with a specific reference     15:03:35

17     to the bank, a bankruptcy potential          15:03:37

18     default.                                     15:03:39

19          Q.    But that was one of many          15:03:40

20     examples, right?  I mean there are many      15:03:42

21     events of default in the indenture, we       15:03:45

22     can look at them, it's not limited to        15:03:47

23     bankruptcy, right?                           15:03:49

24          A.    That's right.                      15:03:49

25          Q.    And so as you understood the       15:03:50
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 231

| | | |
|---|---|---|
| 1 | ask, any of them would trigger payment of | 15:03:52 |
| 2 | the applicable premium? | 15:03:54 |
| 3 | A.    Yes, I think the first ask was | 15:03:58 |
| 4 | very broad to cover all situations. | 15:04:00 |
| 5 | Q.    Okay, okay.  At one point, and | 15:04:01 |
| 6 | I'll show you the document, you, there's | 15:04:13 |
| 7 | an email exchange, and you say -- well, | 15:04:17 |
| 8 | let me get you the document, let me not | 15:04:22 |
| 9 | paraphrase it. | 15:04:24 |
| 10 | MR. ANKER:  This will be | 15:04:37 |
| 11 | Keglevic Exhibit 14, EFIHMW | 15:04:39 |
| 12 | 00038664. | 15:04:44 |
| 13 | (Keglevic Exhibit 14 for | 15:04:44 |
| 14 | identification, Bates stamped | 15:04:40 |
| 15 | EFIHMW 00038664.) | 15:04:40 |
| 16 | Q.    The print is small, but I can | 15:04:49 |
| 17 | tell you that's not our fault. | 15:04:52 |
| 18 | Mr. Keglevic, do you recognize | 15:04:58 |
| 19 | this email exchange? | 15:05:00 |
| 20 | A.    Yes. | 15:05:01 |
| 21 | Q.    It's been a few years, I'm | 15:05:01 |
| 22 | surprised you recognize it.  How do you | 15:05:06 |
| 23 | recognize it? | 15:05:07 |
| 24 | A.    This is one of the emails that | 15:05:08 |
| 25 | they showed me as part of my deposition | 15:05:10 |

Page 232

```
 1    prep.                                        15:05:11

 2         Q.    And when they did so --          15:05:12

 3         A.    Otherwise, I would not            15:05:15

 4    probably recognize it.                       15:05:17

 5         Q.    Do you have any recollection      15:05:18

 6    now having been prompted through your        15:05:21

 7    deposition prep about this email             15:05:24

 8    exchange?                                    15:05:27

 9         MR. HOWELL:  Object to form.            15:05:28

10         A.    I mean I generally would have     15:05:29

11    been aware of it.  I hadn't seen the         15:05:30

12    email, but I didn't -- you know, I didn't    15:05:32

13    recall exactly what was said, but I          15:05:34

14    remember the issue and the discussions at    15:05:36

15    the time.                                    15:05:38

16         Q.    Okay.  Now, do you see an         15:05:38

17    email that you sent to Mr. Horton on         15:05:43

18    Monday, September 20 at 12:14, I think       15:05:45

19    it's 12:14 p.m. and I assume the 20          15:05:55

20    thereafter is the number of seconds,         15:05:58

21    12.14.20, 2010?                              15:06:03

22         A.    Yes.                              15:06:07

23         Q.    And you see that you wrote        15:06:07

24    "just introducing the B word in a public    15:06:08

25    instrument is a nonstarter"?                 15:06:11
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 233

| | | |
|---|---|---|
| 1 | A.    Yes. | 15:06:12 |
| 2 | Q.    Do you have a recollection of | 15:06:13 |
| 3 | what you meant by the B word? | 15:06:14 |
| 4 | A.    Yes, bankruptcy. | 15:06:16 |
| 5 | Q.    I read it that way, but I want | 15:06:17 |
| 6 | to make sure I understood it correctly. | 15:06:19 |
| 7 | Why did you think introducing the B word | 15:06:22 |
| 8 | in a public instrument would be, or was a | 15:06:24 |
| 9 | nonstarter? | 15:06:27 |
| 10 | A.    Well, this was a cryptic | 15:06:28 |
| 11 | comment because I know we did have, you | 15:06:31 |
| 12 | know, as you pointed out, bankruptcy | 15:06:33 |
| 13 | risks in prior documents, but this was, | 15:06:37 |
| 14 | the way I was thinking about it back then | 15:06:40 |
| 15 | is, you know, if it becomes public that | 15:06:42 |
| 16 | people are asking for extra protections | 15:06:44 |
| 17 | beyond what are in existing agreements in | 15:06:47 |
| 18 | the event of bankruptcy, the marketplace, | 15:06:51 |
| 19 | our vendors, our employees and others are | 15:06:53 |
| 20 | going to start putting more faith in the | 15:06:56 |
| 21 | fact that we, you know, the market is | 15:06:58 |
| 22 | seeing that that's the ultimate outcome | 15:07:02 |
| 23 | of where EFH will go. | 15:07:04 |
| 24 | Q.    And you were concerned that | 15:07:06 |
| 25 | that would cause investors to potentially | 15:07:07 |

1    be less interested in investing in, in                    15:07:11

2    this case, TCEH debt or other debt of                     15:07:16

3    other debtors, right?                                     15:07:18

4         A.    It wasn't just -- it wasn't to                 15:07:20

5    investors particularly, it was to a broad                 15:07:23

6    group of people including vendors,                        15:07:25

7    employees, regulators, etc.  Obviously,                   15:07:28

8    as I said, we did have disclosure around                  15:07:32

9    bankruptcy event, but the more comfort or                 15:07:35

10   the more provisions that people need in                   15:07:38

11   the event of bankruptcy I think the                       15:07:40

12   market starts reading those as saying                     15:07:43

13   that is the likely outcome, and as we sat                 15:07:45

14   there in 2010 that is certainly not where                 15:07:48

15   my head was at or we thought where the                    15:07:51

16   company was going.  And I didn't want to                  15:07:53

17   put extra weight behind an interpretation                 15:07:55

18   that I didn't think was fair that that                    15:07:59

19   was the inevitable outcome.                               15:08:03

20        Q.    You used the phrase where the                  15:08:05

21   company was going.  In the summer of                      15:08:06

22   2010, it was not your thought that it was                 15:08:09

23   likely that TCEH was headed toward                        15:08:19

24   bankruptcy, right?                                        15:08:22

25        A.    Correct.  We --                                15:08:23

```
 1          Q.    And it certainly wasn't your        15:08:24
 2    thought that EFIH was headed toward             15:08:26
 3    bankruptcy in 2010, a month or two later        15:08:28
 4    when you did the, when EFIH issued the          15:08:33
 5    first lien debt of 2.18 billion, right?         15:08:36
 6          A.    Right.                              15:08:38
 7          MR. HOWELL:  Object to form.              15:08:40
 8          A.    To elaborate, us agreeing to        15:08:41
 9    something tends to validate that risk as        15:08:44
10    a reasonable risk and at that point in          15:08:47
11    time we did not think it was a reasonable       15:08:52
12    risk that needed compensation, and --           15:08:54
13          Q.    Okay.  I apologize, Mr.             15:08:59
14    Keglevic, I think my question earlier           15:09:01
15    assumed a chronology that is inaccurate.        15:09:04
16    I asked you that it wasn't where your           15:09:08
17    head was at that EFIH was headed toward         15:09:13
18    bankruptcy in 2010, a month or two later        15:09:16
19    when you did the EFIH first lien debt           15:09:20
20    issuance of 2.18 billion.  I misspoke.          15:09:25
21          The EFIH first lien debt                  15:09:27
22    issuance is in August.  So let me               15:09:30
23    rephrase the question.  And I apologize.        15:09:33
24          It certainly wasn't your                  15:09:35
25    contemplation, expectation in August           15:09:38
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 236

| | | |
|---|---|---|
| 1 | 2010, a couple of months earlier, that | 15:09:42 |
| 2 | EFIH was likely headed for bankruptcy in | 15:09:48 |
| 3 | -- a few months earlier in 2010, right? | 15:09:54 |
| 4 | MR. HOWELL: Object to form. | 15:09:57 |
| 5 | Q. Okay, let me rephrase it, it | 15:09:59 |
| 6 | came out garbled. | 15:10:01 |
| 7 | In August 2010, when EFIH | 15:10:03 |
| 8 | issued the first lien debt in the amount | 15:10:04 |
| 9 | of 2.18 billion, did you think it likely | 15:10:08 |
| 10 | that EFIH would ultimately file for | 15:10:12 |
| 11 | bankruptcy? | 15:10:15 |
| 12 | A. I did not. | 15:10:16 |
| 13 | Q. It wasn't even a remote | 15:10:16 |
| 14 | possibility in your mindset, right? | 15:10:20 |
| 15 | A. I don't want to put a label on | 15:10:24 |
| 16 | it, but it certainly was not likely. And | 15:10:26 |
| 17 | we were not doing any analysis or | 15:10:30 |
| 18 | planning at that point in time. | 15:10:31 |
| 19 | Q. Okay. You mentioned earlier | 15:10:33 |
| 20 | that, again, I'm not putting words in | 15:10:37 |
| 21 | your mouth but I think I've got a pretty | 15:10:40 |
| 22 | good memory, that there ended up being | 15:10:42 |
| 23 | compromise language. Did I hear you | 15:10:44 |
| 24 | correctly? | 15:10:47 |
| 25 | A. Yes. | 15:10:47 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1              MR. HOWELL:  Object to the        15:10:49

 2         form.                                  15:10:50

 3         A.    We ended up not accepting the    15:10:50

 4    capital A capital P and we put in, I        15:10:52

 5    believe, small P premium comma, if any.     15:10:55

 6         Q.    How did you understand that --   15:10:58

 7    well, how do you understand that            15:11:00

 8    compromise came about?                      15:11:03

 9         A.    My negotiating team went back    15:11:05

10    with my instruction and said we cannot      15:11:08

11    accept that language.  I'm not sure who     15:11:10

12    came up with the language we had, or        15:11:13

13    where we ended up.  So I don't know the     15:11:18

14    source of it, but I know that it was        15:11:20

15    ultimately what both parties agreed.        15:11:21

16         Q.    Let me represent to you, I       15:11:25

17    think you testified already that            15:11:36

18    subsequent EFIH second lien issuances       15:11:38

19    have the same language in this section,     15:11:43

20    premium comma if any?                       15:11:47

21         A.    Yes, that's my recollection.     15:11:50

22         Q.    But there was subsequent EFIH    15:11:52

23    first lien debt issuances that -- that do   15:11:55

24    not have that language.  Do you know how    15:12:00

25    that distinction came about?                15:12:02
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 238

| | | |
|---|---|---|
| 1 | A.   I don't, but I can imagine it | 15:12:08 |
| 2 | was probably based on whoever we were | 15:12:09 |
| 3 | doing the deal with, whether they looked | 15:12:11 |
| 4 | at precedent or didn't. | 15:12:13 |
| 5 | Q.   Let me show you a document | 15:12:15 |
| 6 | that may -- let me show you a document | 15:12:17 |
| 7 | that may refresh your recollection.  I | 15:12:23 |
| 8 | think it's consistent with your | 15:12:25 |
| 9 | supposition, Mr. Keglevic. | 15:12:29 |
| 10 | MR. ANKER:  This will be | 15:12:32 |
| 11 | marked as Keglevic Exhibit 15, | 15:12:33 |
| 12 | EFIHMW 00070919 through 1261. | 15:12:36 |
| 13 | (Keglevic Exhibit 15 for | 15:12:49 |
| 14 | identification, Bates stamped | 15:12:36 |
| 15 | EFIHMW 00070919 through 0071261.) | 15:12:36 |
| 16 | Q.   And it is a, the cover is an | 15:12:50 |
| 17 | email from Ms., I think it's Ms. Chung, | 15:12:52 |
| 18 | at Debevoise, the law firm, to a variety | 15:13:00 |
| 19 | of people, including outside counsel and | 15:13:02 |
| 20 | persons at EFIH. | 15:13:10 |
| 21 | Mr. Keglevic, do you know who | 15:13:31 |
| 22 | Debevoise was counsel for? | 15:13:32 |
| 23 | A.   I don't.  I have not seen this | 15:13:33 |
| 24 | email before. | 15:13:35 |
| 25 | Q.   Let me make a representation | 15:13:35 |

| | | |
|---|---|---|
| 1 | to you.  Debevoise represented both with | 15:13:36 |
| 2 | respect to the TCEH offering, the | 15:13:40 |
| 3 | exchange in 2010 that we've been talking | 15:13:48 |
| 4 | about, and with respect to this later | 15:13:50 |
| 5 | EFIH second lien notes Oaktree. | 15:13:53 |
| 6 | A.    Okay. | 15:13:57 |
| 7 | Q.    I could show you documents to | 15:13:58 |
| 8 | confirm, but I'll make the | 15:13:59 |
| 9 | representation, I think your counsel will | 15:14:01 |
| 10 | acknowledge we have a pretty clear record | 15:14:02 |
| 11 | on that.  And if you turn to section 6.02 | 15:14:04 |
| 12 | which is page 106 I believe.  Are you | 15:14:14 |
| 13 | there, sir? | 15:14:29 |
| 14 | A.    Yes. | 15:14:30 |
| 15 | Q.    You'll see that Debevoise is | 15:14:30 |
| 16 | suggesting revisions to the language, | 15:14:32 |
| 17 | it's not quite premium, if any, but I | 15:14:33 |
| 18 | will represent to you that you end up | 15:14:36 |
| 19 | with premium, if any, on the second lien | 15:14:38 |
| 20 | indenture as well. | 15:14:40 |
| 21 | Does looking at this document | 15:14:41 |
| 22 | refresh your recollection that the reason | 15:14:44 |
| 23 | there ended up being the language | 15:14:49 |
| 24 | premium, if any in the acceleration | 15:14:54 |
| 25 | section of the EFIH second lien | 15:14:56 |

```
 1      indenture, that Oaktree was an investor        15:15:00

 2      in that debt?                                   15:15:02

 3           A.   I don't have that                     15:15:03

 4      recollection.  It was all based on what I       15:15:05

 5      understood, so I've never seen that email       15:15:08

 6      and --                                          15:15:10

 7           Q.   Okay.                                 15:15:11

 8           A.   -- I'm not the person, my             15:15:12

 9      negotiating team would understand how it        15:15:13

10      came about, who asked for what.  I don't        15:15:16

11      know.                                           15:15:18

12           Q.   Okay.  It is the company's            15:15:18

13      position today, I believe -- let me back        15:15:23

14      up.  I keep using the company.                  15:15:28

15           It is EFIH's position today                15:15:29

16      that the language in the second lien            15:15:33

17      indenture, the premium, if any language,        15:15:39

18      does not cause the second liens to be           15:15:41

19      entitled to payment of the applicable           15:15:45

20      premium if their debt is refinanced in          15:15:49

21      bankruptcy, is that your understanding as       15:15:52

22      well?                                           15:15:53

23           A.   Generally that's my                   15:15:53

24      understanding, yes.                             15:15:59

25           Q.   And when the debtors -- when          15:15:59
```

| | |
|---|---|
| 1 | the debtors.  When TCEH in 2010 agreed to | 15:16:04 |
| 2 | this change to premium, if any, did it | 15:16:08 |
| 3 | believe then that that language would | 15:16:13 |
| 4 | cause the redemption premium, the | 15:16:16 |
| 5 | applicable premium to be due were TCEH to | 15:16:22 |
| 6 | file for bankruptcy? | 15:16:28 |
| 7 | A.    We didn't -- | 15:16:29 |
| 8 | MR. HOWELL:  Objection to the | 15:16:29 |
| 9 | extent that it calls for him to | 15:16:30 |
| 10 | speak for the company. | 15:16:31 |
| 11 | Q.    To the best of your personal | 15:16:33 |
| 12 | knowledge, the answer to my question, Mr. | 15:16:34 |
| 13 | Keglevic?  I think you started to say no, | 15:16:36 |
| 14 | but I may have misheard because Mr. | 15:16:39 |
| 15 | Howell spoke? | 15:16:42 |
| 16 | A.    Can you rephrase the question. | 15:16:42 |
| 17 | Q.    Was it unclear or do you want | 15:16:44 |
| 18 | me to just repeat it? | 15:16:47 |
| 19 | A.    Just repeat it. | 15:16:48 |
| 20 | Q.    Okay.  When TCEH in 2010 | 15:16:49 |
| 21 | agreed to this change to add the language | 15:17:01 |
| 22 | premium, if any, did it believe that that | 15:17:04 |
| 23 | language would cause the redemption | 15:17:06 |
| 24 | premium, the applicable premium, to be | 15:17:08 |
| 25 | due were TCEH to file for bankruptcy? | 15:17:10 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 242

```
 1              MR. HOWELL:  Same objection.        15:17:15
 2       A.    I was advised that it would          15:17:20
 3   not.  I don't know if the company has a        15:17:21
 4   different position, but I was advised it       15:17:23
 5   would not.                                     15:17:25
 6       Q.    Who were you so advised by?          15:17:26
 7       A.    Counsel.                             15:17:27
 8       Q.    In-house or outside?                 15:17:32
 9       A.    I believe I just spoke to            15:17:34
10   in-house and they had spoken to outside.       15:17:36
11       Q.    And who as in which inside           15:17:38
12   counsel had you spoken with?                   15:17:40
13       A.    Andy Wright.                         15:17:41
14       Q.    And your understanding is Mr.        15:17:44
15   Wright had spoken with other counsel?          15:17:46
16       A.    Yes, I think he had spoken to        15:17:48
17   other counsel.                                 15:17:53
18       Q.    Was there any conversation           15:17:53
19   that you or, to your knowledge, others at      15:17:57
20   the debtors, and I am now using the            15:18:02
21   debtors plural, had with Mr. Panossian,        15:18:09
22   to convey to him the company's view that       15:18:11
23   the language change, the compromise            15:18:16
24   language would not cause the applicable        15:18:20
25   premium to come due upon a bankruptcy          15:18:24
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 243

| | | |
|---|---|---|
| 1 | filing? | 15:18:26 |
| 2 | A.    I don't have knowledge of what | 15:18:30 |
| 3 | discussions may have happened with Mr. | 15:18:32 |
| 4 | Panossian beyond what I've testified to. | 15:18:33 |
| 5 | MR. ANKER:  Can we go off the | 15:18:43 |
| 6 | record, I may be done, I want to | 15:18:45 |
| 7 | spend a couple of minutes looking | 15:18:46 |
| 8 | at a couple of things and talking | 15:18:47 |
| 9 | to some people. | 15:18:48 |
| 10 | THE VIDEOGRAPHER:  One moment, | 15:18:50 |
| 11 | please, watch your microphones. | 15:18:50 |
| 12 | The time is 3:18 p.m., we're now | 15:18:52 |
| 13 | off the record. | 15:18:55 |
| 14 | (A recess was taken.) | 15:19:02 |
| 15 | THE VIDEOGRAPHER:  The time is | 15:31:54 |
| 16 | 3:32 p.m., back on the record. | 15:32:10 |
| 17 | Q.    Mr. Keglevic, earlier I was | 15:32:13 |
| 18 | asking you about issues related to | 15:32:16 |
| 19 | solvency or valuation, and in particular | 15:32:21 |
| 20 | about what changes might have occurred | 15:32:26 |
| 21 | after the officer's certificate dated as | 15:32:28 |
| 22 | of December 21, 2012.  Did the value of | 15:32:31 |
| 23 | Oncor typically rise or fall commensurate | 15:32:42 |
| 24 | or in the same direction at least as | 15:32:50 |
| 25 | other utilities? | 15:32:53 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 244

| | | |
|---|---|---|
| 1 | A.    I think most valuation experts | 15:32:55 |
| 2 | would look at specific peer utilities of | 15:33:03 |
| 3 | Oncor and take note of movements in their | 15:33:07 |
| 4 | valuation and assume the same could apply | 15:33:10 |
| 5 | to Oncor.  Of course there's adjustments | 15:33:12 |
| 6 | between companies that the valuation | 15:33:15 |
| 7 | experts would make, and obviously, market | 15:33:17 |
| 8 | multiples, you know, as well as PE | 15:33:22 |
| 9 | multiples would have that kind of | 15:33:25 |
| 10 | phenomenon.  Yes, so generally speaking, | 15:33:27 |
| 11 | it should be some movement with the | 15:33:30 |
| 12 | market. | 15:33:31 |
| 13 | Q.    Okay.  And I think this is | 15:33:31 |
| 14 | implicit in your answer and frankly my | 15:33:33 |
| 15 | question, unlike Oncor, other, some other | 15:33:36 |
| 16 | peer utilities are themselves public | 15:33:44 |
| 17 | companies, so there are market multiples | 15:33:46 |
| 18 | and analyses one can do, right? | 15:33:50 |
| 19 | A.    Yes, I would suggest probably | 15:33:51 |
| 20 | most. | 15:33:53 |
| 21 | Q.    Okay. | 15:33:54 |
| 22 | A.    Companies like Oncor are | 15:33:55 |
| 23 | public equity companies. | 15:33:57 |
| 24 | Q.    I've been led to understand, | 15:33:58 |
| 25 | and I've no personal knowledge, that in | 15:34:02 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

1    2013 the utility index, the sort of index          15:34:09

2    of utilities increased in value, and I've          15:34:12

3    been led to believe, but I want to be              15:34:19

4    clear to you, I'm making no                        15:34:22

5    representations, I've not taken out a              15:34:23

6    chart and looked, that it moved up on the          15:34:26

7    order of 20 percent over the course of             15:34:27

8    that year.  The facts will be what the             15:34:31

9    facts are.  Does that sound directionally          15:34:33

10   right to you?                                      15:34:35

11        MR. HOWELL:  Object to form.                  15:34:38

12        A.    I -- yeah, we, and I think I            15:34:39

13   have testified in this case, so it is              15:34:41

14   part of the public record, that the                15:34:45

15   utility index has moved up, it doesn't             15:34:49

16   exactly correlate with interest rates              15:34:51

17   going down, but there is some                      15:34:56

18   correlation, a low interest rate                   15:34:59

19   environment is better for values.  I               15:35:00

20   think, you know, there's been a little             15:35:02

21   bit of a flight to quality and away from           15:35:04

22   beta.                                              15:35:06

23             And so yes, I think the                  15:35:07

24   utility, in those time frames, they have           15:35:10

25   certainly done very well and I think it's          15:35:13

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 246

| | | |
|---|---|---|
| 1 | fair to say that's not an unreasonable | 15:35:15 |
| 2 | percentage increase that you quoted based | 15:35:24 |
| 3 | on my recollection. | 15:35:26 |
| 4 | Q.   Does that suggest to you that | 15:35:27 |
| 5 | not necessarily to the same degree, 20 | 15:35:33 |
| 6 | percent, but that in -- it is likely | 15:35:36 |
| 7 | that, if anything, at the end of 2013, | 15:35:38 |
| 8 | from a balance sheet standpoint, Oncor | 15:35:44 |
| 9 | was worth more than it was at the end of | 15:35:48 |
| 10 | 2012? | 15:35:51 |
| 11 | A.   I would at least go this far | 15:35:52 |
| 12 | and hopefully this will satisfy your | 15:35:54 |
| 13 | question, that that is certainly a | 15:35:56 |
| 14 | positive trend to the balance sheet test. | 15:35:57 |
| 15 | You know, I'd have to then look at other | 15:36:00 |
| 16 | assets and cash and liabilities and make | 15:36:02 |
| 17 | sure there wasn't any offset, but it | 15:36:04 |
| 18 | certainly would positively, you know -- | 15:36:06 |
| 19 | everything else being equal, that would | 15:36:10 |
| 20 | have moved up the balance sheet test | 15:36:11 |
| 21 | value. | 15:36:15 |
| 22 | Q.   Of Oncor? | 15:36:16 |
| 23 | A.   Of Oncor. | 15:36:17 |
| 24 | Q.   Mr. Keglevic, one hopefully | 15:36:19 |
| 25 | final set of questions that will take | 15:36:22 |

| | | |
|---|---|---|
| 1 | like two minutes.  You have testified | 15:36:24 |
| 2 | several other times in this general | 15:36:26 |
| 3 | bankruptcy case, but this is the first | 15:36:31 |
| 4 | time in this adversary proceeding. | 15:36:32 |
| 5 | Please do not take these questions as at | 15:36:35 |
| 6 | all suggesting that I think the answer is | 15:36:38 |
| 7 | anything other than yes. | 15:36:41 |
| 8 | You testified truthfully and | 15:36:42 |
| 9 | to the best of your ability each time you | 15:36:44 |
| 10 | testified? | 15:36:46 |
| 11 | A.    Yes, sir. | 15:36:46 |
| 12 | Q.    And you have no reason to | 15:36:47 |
| 13 | think that your testimony at any point | 15:36:48 |
| 14 | previously in this case was inaccurate? | 15:36:51 |
| 15 | A.    Not that I'm aware of as I sit | 15:36:53 |
| 16 | here today.  There's certainly always | 15:36:57 |
| 17 | when I go back and look at it I wish I | 15:36:59 |
| 18 | would have added or, but I don't think -- | 15:37:01 |
| 19 | I may have made some mistakes, I think a | 15:37:03 |
| 20 | couple of times when I've testified I, | 15:37:05 |
| 21 | for example, on the day one hearings I | 15:37:07 |
| 22 | thought I had signed the restructuring | 15:37:09 |
| 23 | agreement, it turns out that I was | 15:37:11 |
| 24 | thinking of something else and Mr. Horton | 15:37:13 |
| 25 | had signed.  So that would be an example | 15:37:15 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

| | | |
|---|---|---|
| 1 | of an inaccuracy. | 15:37:17 |
| 2 | But I can't think of many or | 15:37:18 |
| 3 | any other material matters that I | 15:37:20 |
| 4 | testified to that are, you know, were, I | 15:37:24 |
| 5 | thought they were truthful at the time | 15:37:27 |
| 6 | and I still believe them to be truthful. | 15:37:28 |
| 7 | Q.    And each time you testified | 15:37:30 |
| 8 | you testified in your capacity as an | 15:37:31 |
| 9 | officer and co-chair restructuring | 15:37:35 |
| 10 | officer of the debtors? | 15:37:39 |
| 11 | A.    Yes, as the executive -- I | 15:37:40 |
| 12 | think I testified as the executive vice | 15:37:43 |
| 13 | president, CFO of the debtors and as | 15:37:45 |
| 14 | co-chief restructuring officer of the | 15:37:48 |
| 15 | debtors. | 15:37:50 |
| 16 | Q.    And in your capacity at least | 15:37:50 |
| 17 | as executive vice president of the | 15:37:52 |
| 18 | debtors, you were also testifying as | 15:37:55 |
| 19 | executive vice president of EFIH in | 15:37:59 |
| 20 | particular? | 15:38:01 |
| 21 | A.    Yes, specifically -- I have | 15:38:02 |
| 22 | the -- I hold the same titles at all the | 15:38:03 |
| 23 | entities, so they would apply to EFIH. | 15:38:05 |
| 24 | MR. ANKER:  I'll pass the | 15:38:08 |
| 25 | witness. | 15:38:10 |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 249

| | | |
|---|---|---|
| 1 | THE VIDEOGRAPHER:  Any | 15:38:14 |
| 2 | questions, counsel for the witness? | 15:38:15 |
| 3 | MR. HOWELL:  No questions. | 15:38:17 |
| 4 | MR. ANKER:  Anyone on the | 15:38:19 |
| 5 | telephone have any questions? | 15:38:20 |
| 6 | Okay, that will conclude today's | 15:38:22 |
| 7 | deposition.  Thank you, Mr. | 15:38:24 |
| 8 | Keglevic. | 15:38:26 |
| 9 | THE WITNESS:  Thank you, sir. | 15:38:26 |
| 10 | THE VIDEOGRAPHER:  Here now | 15:38:27 |
| 11 | marks the end of tape 4, the time | 15:38:28 |
| 12 | is 3:38 p.m., we're off the record. | 15:38:30 |
| 13 | (Time noted:  3:38 p.m.) | 15:38:35 |
| 14 | | |
| 15 | | |
| 16 | _____ | |
| 17 | PAUL KEGLEVIC | |
| 18 | | |
| 19 | Subscribed and sworn to before me | |
| 20 | this _____ day of _____, 2014. | |
| 21 | | |
| 22 | _____ | |
| 23 | | |
| 24 | | |
| 25 | | |

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1    NAME OF CASE: In re EFH Corporation, et al
      DATE OF DEPOSITION: December 10, 2014
 2    NAME OF WITNESS: Paul Keglevic
      I wish to make the following changes, for
 3    the following reasons:
      PAGE LINE
 4    ____ ____  CHANGE: _____

 5               REASON: _____

 6    ____ ____  CHANGE: _____

 7               REASON: _____

 8    ____ ____  CHANGE: _____

 9               REASON: _____

10    ____ ____  CHANGE: _____

11               REASON: _____

12    ____ ____  CHANGE: _____

13               REASON: _____

14    ____ ____  CHANGE: _____

15               REASON: _____

16    ____ ____  CHANGE: _____

17               REASON: _____

18

19    Subscribed and sworn to before me

20    this ____ day of _____, 2014.

21

22

23    _____   _____

24      (Notary Public)    My Commission Expires:

25
```

```
 1              C E R T I F I C A T E

 2     STATE OF NEW YORK   )

 3                           : ss.

 4     COUNTY OF NEW YORK  )

 5

 6              I, GAIL F. SCHORR, a Certified

 7     Shorthand Reporter, Certified Realtime

 8     Reporter and Notary Public within and for

 9     the State of New York, do hereby certify:

10              That PAUL KEGLEVIC, the witness

11     whose deposition is hereinbefore set forth,

12     was duly sworn by me and that such

13     deposition is a true record of the testimony

14     given by the witness.

15              I further certify that I am not

16     related to any of the parties to this action

17     by blood or marriage, and that I am in no

18     way interested in the outcome of this

19     matter.

20              IN WITNESS WHEREOF, I have

21     hereunto set my hand this _____ day of

22     _____, 2014.

23

24              _____

25              GAIL F. SCHORR, C.S.R., C.R.R.
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 252

```
 1               I N D E X

 2   EXAMINATION BY:           PAGE:

 3   MR. ANKER                  7

 4

 5              * * * * * *

 6            E X H I B I T S

 7

 8    DESCRIPTION              PAGE    LINE

 9   (Keglevic Exhibit 1 for       10      8

10    identification, second

11    amended notice of deposition

12    pursuant to Fed. R. Civ. P.

13    30(b)(6).)

14

15   (Keglevic Exhibit 2 for       10      12

16    identification, amended

17    notice of deposition

18    pursuant to Fed. R. Civ. P.

19    30(b)(1).)

20

21   (Keglevic Exhibit 3 for       41      19

22    identification, Bates

23    stamped EFH 00080017 through

24    00080090.)

25
```

```
 1        (Keglevic Exhibit 4 for          78      12
 2        identification, calculation
 3        performed by Mr. Keglevic.)
 4
 5        (Keglevic Exhibit 5 for          80       2
 6        identification, Bates
 7        stamped EFH 00002551 through
 8        00002621.)
 9
10        (Keglevic Exhibit 6 for          89       6
11        identification, Bates
12        stamped KKR 00000823 to
13        00000825.)
14
15        (Keglevic Exhibit 7 for          92      10
16        identification, Bates
17        stamped BLKS 00006082
18        through 00006091.)
19
20        (Keglevic Exhibit 8 for         103       5
21        identification, Bates
22        stamped EFIHMW 00144188
23        through 00144335.)
24
25
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

```
 1     (Keglevic Exhibit 9 for          147      3
 2     identification, Bates
 3     stamped EFH 0007693 through
 4     0076785.)
 5
 6     (Keglevic Exhibit 10 for         181      15
 7     identification, volume 1 of
 8     Mr. Keglevic's  deposition
 9     taken on May 29, 2014.)
10
11     (Keglevic Exhibit 11 for         197      24
12     identification, Bates
13     stamped EFIHMW 00038410
14     through 00038479.)
15
16     (Keglevic Exhibit 12 for         211       6
17     identification, Bates
18     stamped EFIHMW 00090975
19     through 0090976.)
20
21     (Keglevic Exhibit 13 for         216      14
22     identification, Bates
23     stamped EFIHMW 00051935
24     through 00052667.)
25
```

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

Page 255

```
 1      (Keglevic Exhibit 14 for        231      13

 2      identification, Bates

 3      stamped EFIHMW 00038664.)

 4

 5      (Keglevic Exhibit 15 for        238      13

 6      identification, Bates

 7      stamped EFIHMW 00070919

 8      through 0071261.)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

## A

**AARON**
5:5
**ability**
19:18 85:19 154:17
169:21 172:20 173:2
177:1 183:18 186:7
188:13 205:25
206:17,19 247:9
**able**
14:3 27:10 53:2,11,12
68:2 69:4 72:25
74:21 107:5 117:11
132:19 141:3,10
147:21 155:25
170:21 175:2,4 182:9
182:14 203:15
205:13 208:3 209:2
221:12
**absolute**
161:1 162:4 163:25
166:12,17,24 167:2,6
170:7
**absolutely**
142:1
**accelerate**
188:19
**accelerated**
128:20 186:23 187:8
188:22
**acceleration**
90:2 126:18 127:4,17
128:4,24 129:21
182:23 183:14
191:17 195:12 196:2
239:24
**accept**
8:3 66:21 113:13
197:8 204:7 237:11
**acceptable**
37:10
**accepted**
114:20
**accepting**
114:22 237:3

**accidental**
8:4
**accomplish**
96:14
**account**
95:11,13
**accountant**
158:23
**accounting**
21:5 27:20 166:7
174:18 196:9
**accrued**
70:14,16 104:14
131:16
**accurate**
14:4 45:6 46:10,11
168:10 183:10
**achieve**
37:20
**achieved**
37:1 158:2
**acknowledge**
86:10 239:10
**Act**
199:20
**action**
196:14 251:16
**activity**
31:8
**actual**
46:23 49:1 73:7 77:3
**Ad**
2:12 3:19
**add**
71:2,5 76:6,9 77:4
241:21
**added**
29:10 77:11 247:18
**addition**
107:15 169:9 198:24
204:10 211:15
**additional**
60:6 84:19 85:5,6
175:21,22,24 179:6
180:10 219:9

**adequacy**
212:6
**adjustments**
244:5
**adopted**
98:23
**advance**
8:4 40:10
**adversary**
1:8 6:13 20:5 24:4
247:4
**advised**
188:10 242:2,4,6
**advisor**
88:23
**advisors**
45:9 88:25 92:19
**advisory**
29:18
**affect**
48:18 49:3
**affidavit**
32:20
**affirmatively**
203:23
**afternoon**
146:14
**agent**
3:3
**aggregate**
34:8
**ago**
181:7
**agoodman@krame...**
5:7
**agree**
43:25 100:23 108:22
132:20 153:10 203:2
227:18 229:15
**agreed**
38:20 45:5 56:5 100:6
114:16 237:15 241:1
241:21
**agreeing**
228:7,22 235:8

**agreement**
19:1 55:24 60:7 71:4
93:11 107:22 138:16
146:16,20 147:11,16
157:18 160:10 168:6
176:19 177:3 178:3,8
178:10,11,13 182:13
198:7,13,16,20 203:9
204:20 210:22
211:22,25 213:4
217:8 219:13 247:23
**agreements**
41:24 46:17 102:1
147:15 148:12,15
175:23 179:24
196:12 197:15 199:2
233:17
**agrees**
75:23
**ahead**
139:11 162:7 164:4
**akherring@wlrk.com**
4:19
**Akin**
92:14,22,23
**al**
1:5 6:12 250:1
**ALISSA**
5:6
**allegations**
128:15
**allow**
66:9
**allowed**
41:7 109:11
**allows**
191:5
**alternatively**
88:6
**alternatives**
19:9
**amend**
122:11,13
**amended**
10:2,5,9,13 252:11,16

**America**
30:23
**Americas**
2:13,18 5:3,10,16
**America's**
166:6
**amortization**
116:15
**amount**
22:5,25 32:22 50:7
64:13,14,17,18,20
72:5,6 73:12 74:22
78:22 100:6 104:12
108:19 131:14
134:19 151:15
152:10,21 153:15
154:14 155:18
160:23 162:1 169:9
170:5 173:3 177:5,16
179:5 180:6,14
182:10,14 191:6,13
203:21 207:9 236:8
**amounts**
21:19 31:9 50:22
68:25 69:24 82:25
83:9 143:2 206:20
**anal**
226:19
**analyses**
208:19 244:18
**analysis**
35:22 75:7 79:16
156:2,5,6 157:12
158:6,12,13 159:12
159:14,18 161:6
177:22,24 180:2
205:21 236:17
**analyze**
205:12
**Andersen**
28:8,17 29:1,14,22
**ANDREW**
2:20 5:20
**andrew.devore@ro...**
2:21

**Andy**
7:8 242:13
**ANGELA**
4:19
**Anker**
3:11 6:21,21 7:22 9:22
13:11 41:14 74:4
78:9 79:8,10,23 89:1
89:9 92:5 102:19
144:24 146:13,24
147:25 156:23 157:4
181:9 197:19 201:17
211:2 216:11 231:10
238:10 243:5 248:24
249:4 252:3
**annual**
123:15
**answer**
8:17,24 9:11 27:9,23
35:24 51:5 62:7
69:25 72:3,15 73:9
109:20 113:17
120:25 126:12
127:21 149:14
159:21,23,24 163:14
165:21 168:17
169:23 172:14
178:14 179:14
182:22 189:13 190:2
195:4 196:4 197:11
197:12 213:15 218:4
219:24 230:3,4
241:12 244:14 247:6
**answered**
14:25 73:7 96:23
115:20 136:24
163:13 197:10
213:16
**answering**
97:22 165:25,25
170:25 202:5
**answers**
80:7 125:14 195:1
**anticipate**
218:24

**anticipated**
30:11 221:23
**anticipation**
135:12 138:25
**anybody**
106:4 141:18,19
190:17
**apologies**
27:14 157:4
**apologize**
13:11 26:14 30:22
89:9 156:19 163:4
194:21 226:9,18
235:13,23
**apparently**
156:21
**appear**
149:16
**appears**
198:23
**apple**
131:10
**apples-to-apples**
63:24 65:4
**apple-to-apple**
64:24
**applicable**
19:19 102:8 104:13
105:18 131:15
134:14 135:20 136:6
137:12 139:6 140:3
218:3 225:13,23
226:2,15,22 229:25
230:14 231:2 240:19
241:5,24 242:24
**application**
86:24
**applies**
192:6
**apply**
244:4 248:23
**appreciate**
9:5 30:25 70:2,4 157:9
163:11 197:4
**approach**

202:24
**appropriate**
15:3 35:23 86:24
177:14 209:12
218:17,19
**approvals**
174:1
**approved**
55:20 167:16,19
**approximately**
63:15 153:16 159:15
203:21 204:22
206:10
**approximation**
75:20
**approximations**
77:21
**April**
47:9,17 52:10,19,24
52:25 53:24 68:17
99:8 155:14 156:5
157:14 158:8,19
159:10,11 168:13,24
169:1 170:2,20
171:18 172:9 173:6
174:14 202:13
205:11
**area**
46:2
**argue**
177:17
**arguments**
130:1,5
**Armen**
123:10 223:2
**arrangement**
128:18
**arrived**
33:13
**art**
158:22 214:15
**Arthur**
28:17 29:14,22
**articulated**
90:9 96:2

**aside**
106:15 119:22 138:8
138:25
**asked**
14:9 15:1,10,14 24:11
55:2 62:7 71:23
79:14 80:19 83:20
95:22 115:19 120:8
122:14 125:7 127:20
136:18,20 139:18
146:15,18 182:4,17
204:3 207:13 213:18
219:9 223:14 225:5
227:23 235:16
240:10
**asking**
16:17 18:23 35:1,8,10
43:19 55:6 103:15
111:18,19 115:2
122:7 123:2 128:2
140:22 147:7 153:24
166:9 169:5,20
170:11 171:10
179:11 189:8 195:14
195:20,21 197:5
233:16 243:18
**aspect**
18:18 223:22
**aspired**
229:11
**asserted**
70:13 95:10
**assessments**
133:21 134:4,7,8,13
**asset**
48:20 52:8 55:1 56:16
57:5,8,20 78:20
151:9,20 152:15
153:9,25
**assets**
51:4 52:9 77:9 150:18
151:1 160:13,23
161:8,17,19,25
163:23 170:4,22
171:19 172:11 174:4

204:4 246:16
**assignment**
13:24 14:15
**associated**
82:14 83:16 110:14
**assume**
8:17 15:14 24:1 65:22
67:11,21,23 70:6
75:8 76:8 77:14
111:8 115:21 175:25
193:24 199:8 232:19
244:4
**assumed**
56:1 57:3 63:8 78:21
79:16 81:15 86:2
235:15
**assumes**
64:2 65:1
**assuming**
65:11 78:1,3,7 81:4
84:17 89:24 105:6
111:8,22 178:7
**assumption**
13:14,15,19 46:3 58:8
65:2,21 71:22 76:17
80:14 83:4 86:13,16
86:18 106:3 111:14
111:15 112:19
178:24 179:1,25
**assumptions**
45:18 46:9,25 71:19
71:21 79:7 81:3
84:21 107:1 209:1,6
209:7,14
**assure**
133:15
**attempt**
57:13
**attend**
25:25
**attended**
26:11 119:14
**attention**
110:19 227:8
**attorneys**

2:2,7,12,17 3:2,7,14
3:19 4:2,7,12,17 5:2
5:9,15 35:22 53:9
191:25
**audit**
29:13,17,23 30:2,8
31:23 166:6,16
**audited**
166:19
**auditor**
196:7
**August**
102:22 198:16 211:14
217:2 222:1 235:22
235:25 236:7
**Aurelius**
128:19
**author**
100:5
**authority**
167:23
**automated**
154:13
**automatic**
90:1 191:25 192:5
193:13 194:8,10
196:4
**available**
64:17,20 159:20 179:7
185:17
**Avenue**
2:8,13,18 3:3,15 5:3
5:10,16 6:4
**avoid**
88:6 91:24 203:1
**avoiding**
91:5
**aware**
16:23 21:21 24:1,2
27:9 41:3,10 60:18
88:15 110:17 129:10
138:19 156:14
168:22 189:20,22
190:3,17 191:3,4,10
191:12,19 192:3,4,11

193:5,11,17 195:6,8
195:9,23,24 206:5,11
206:14,16,23 207:3
215:21 218:1,13
219:19,22,23,25
220:17,20,23,25
221:16,20 222:6,22
232:11 247:15
**a.m**
1:15 6:7 74:12,18

---

**B**

**b**
124:23 199:25 232:24
233:3,7 252:6
**Bachelor**
27:19
**back**
42:14 47:20 49:5
54:17 65:12 68:3,4
68:11 74:2,19 81:9
92:14 94:14 103:1
110:25 112:12 129:1
131:1 138:21 142:6
146:7 157:6,7 162:8
172:6,14 174:23
177:23 197:15
198:14 202:2,9 205:1
205:23 206:1,6
209:16,18 217:19
220:4,12 226:10,10
229:13 233:14 237:9
240:13 243:16
247:17
**background**
27:13
**backstop**
95:15
**bad**
8:1,5 111:22 218:7
**balance**
48:21,23 50:21 51:9
52:8 72:6 75:6 76:21
76:22 150:15 151:1
155:11,16 157:22

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

158:6,9 159:5 246:8
246:14,20
**bank**
2:7 55:6 230:17
**banker**
120:23
**bankers**
55:13
**bankrupt**
196:19
**bankruptcy**
1:2 6:15 11:12,14 20:7
38:4,17,18 39:13
45:24 48:15 58:25
59:2 61:1 65:3 85:1
85:8 86:25 87:12,20
88:1,14 90:15,17,21
91:4,9,23 96:8,15,20
97:2,24 98:7,8,18,20
99:7 119:7,18,21,24
120:1,2 121:16
128:10,12 129:8
130:17,24 133:8,9,10
133:14,20 134:9,16
134:17 135:12,13,18
136:5 137:8,10,11
138:11 139:1,2,8,9
140:6 141:2,3,10,11
142:4,5,17 168:13
175:9 180:17 181:12
182:19 183:18
187:11 188:6,11,18
188:25 190:5,6
196:17,25 202:12
205:11 221:2,12
222:21 225:11 226:3
226:23 230:17,23
233:4,12,18 234:9,11
234:24 235:3,18
236:2,11 240:21
241:6,25 242:25
247:3
**BARTLETT**
2:15
**base**

154:18
**based**
14:9 31:9 46:22 55:25
56:4 57:4 60:5 66:14
66:15 67:7 79:6
105:6 113:7 166:23
180:5 219:4 227:15
238:2 240:4 246:2
**basic**
121:3 185:13
**basically**
21:17 178:6
**basis**
88:18 162:16 163:1,7
163:16 167:12
174:12 175:5 194:9
**Bates**
41:17,20 80:3 89:3,7
92:8,11 94:21 103:2
103:6,20,23 147:1,4
181:13 197:25 211:4
211:7 216:15 217:13
231:14 238:14
252:22 253:6,11,16
253:21 254:2,12,17
254:22 255:2,6
**bear**
101:1 181:13
**bearing**
41:16 89:3 92:7
**bears**
94:21 103:1,20 146:25
211:3,15
**began**
28:16 179:9
**beginning**
20:18 43:3 47:15
68:17 74:16 114:7
146:4 148:22 182:19
188:14 201:24 229:5
**begins**
42:13 200:1
**behalf**
7:4 61:6 167:14
**behave**

132:22
**beholder**
115:24 154:24
**belief**
136:13
**believe**
12:18 14:3,19 15:8
16:17 17:16 20:4
27:6 30:3 32:18
36:22 41:23 44:22
45:12 48:3 54:2
60:24 61:5 65:6
66:25 67:2 81:7 82:9
83:22 86:23 100:18
119:1 120:25 132:16
139:17 140:25
146:18,21 153:20
155:10 163:14
165:11 168:14
173:17 174:12 175:2
177:14 190:20
197:10 210:20
213:25 215:25 217:8
219:24 223:2 237:5
239:12 240:13 241:3
241:22 242:9 245:3
248:6
**believed**
37:10 41:9 44:19,24
45:5 61:4 66:13
86:19 153:6 207:18
**believes**
130:20
**BENSON**
3:19
**best**
9:8,9 14:10,11 15:2
34:7,9,15 36:20 37:1
37:7 47:25 51:14
61:6 65:24 67:14,15
67:19,20 83:17
106:15 115:17,22,24
125:18 126:3 156:6
159:23 160:5,5
165:14 173:20

223:22 241:11 247:9
**beta**
154:7,25 155:2,5,8
245:22
**better**
65:25 67:22,24 72:14
114:14 116:1 117:17
245:19
**beyond**
48:19 108:21 112:8
228:23 233:17 243:4
**bid**
58:14 61:10 62:19
63:12,13 64:1,8,11
65:1,8 66:5,21 70:7
72:22 75:14
**bidder**
67:19 70:7
**bidding**
63:4 67:3
**BIDDLE**
5:8
**bids**
58:5 63:5 65:7
**big**
46:3 229:8
**bigger**
179:22 180:13
**biggest**
229:9
**billion**
32:15 33:8,14 46:1
49:23,25 56:7 57:3
58:8 63:16 64:5,10
64:15 65:11,25 67:7
67:25 69:10 70:9,23
70:23 71:15 72:24
75:2,9,15,17 76:3,24
76:25 77:1,5,6 78:2,5
78:20 81:16,24 85:2
85:8 99:10,15,18
100:10,14 107:10
151:18 164:23 165:2
165:7,7,7,8 182:9,11
184:10 198:17

203:21 204:10,22
205:15 206:10,25
207:17 235:5,20
236:9
**bills**
53:3
**bit**
27:13 103:13 118:8
121:22 207:18
245:21
**blank**
72:11 73:17,18
**blend**
59:8,11,19 60:1 80:13
80:14 82:17,19,23
83:16
**blended**
184:2,22
**BLKS**
92:8,11 253:17
**blood**
251:17
**Bloomberg**
120:18
**board**
54:7 93:25 94:4,12
98:25 172:23 177:13
178:11 228:21
**bond**
102:3 113:24
**bonds**
139:18 151:15,22
152:5,10,18,24
155:18
**books**
206:13
**borrow**
182:9,14
**borrowed**
182:8
**bottom**
103:21
**box**
21:15
**boy**

199:25
**Bradstreet**
20:21 21:3
**break**
8:22 69:10 70:2 72:9
73:23 74:6,20 89:12
145:1 202:8,10
209:17 230:7
**breaking**
39:4
**bridge**
169:22 186:3
**brief**
139:14
**briefly**
31:13 216:17
**bring**
55:13 148:20
**broad**
16:20 18:4 70:4
122:14 215:20 231:4
234:5
**broader**
57:23
**broadly**
213:19
**Broadway**
3:20
**brought**
45:20 110:19 123:17
227:8,22
**bulk**
93:14
**bullet**
81:24 83:3
**business**
29:19 57:11 155:3
176:3 229:12
**busy**
185:15
**butcher**
8:3
**button**
157:5
**buy**

58:14
**buying**
55:13 60:20 61:9

---

**C**

c
1:1 2:1 3:1 4:1 5:1
18:12 124:16 251:1,1
**calculation**
21:18 22:2 70:19
77:20,23 78:8,13,17
79:5 143:11,12,13
178:6,17 179:12,15
179:18,20 184:4,8
185:12 253:2
**calculations**
21:24 99:9 167:13
169:22 185:11
**calculator**
73:18
**California**
4:13,13
**call**
82:10,13,14,25 83:9
83:14,16 84:11,12,14
84:16 85:15,17,20
86:7,21 102:15
104:25 105:3 107:24
108:4,5,8 110:12
111:3 112:24 117:4,9
117:15 123:12
142:12 143:17,20
150:15,16
**called**
7:16 21:15 86:5,9
110:1 126:10 154:12
**calling**
126:11
**calls**
78:22 84:20 241:9
**cancelled**
205:24
**candidly**
138:6
**cap**

225:23,23 226:2,2,15
226:15,22,22,22,22
**capacity**
9:15 175:22 248:8,16
**capital**
32:11 45:25 93:6
174:13 175:20
177:11 225:5,6 237:4
237:4
**Capstone**
5:22
**career**
28:11,16
**careful**
157:9
**carefully**
113:5
**carried**
151:18
**carry**
114:7
**case**
1:4 2:12 6:13 19:10
37:23 72:25 82:6
86:13 115:22 167:22
180:17 181:13 188:7
188:14,15 191:11
193:18 226:6 234:2
245:13 247:3,14
250:1
**cases**
8:9 11:2,12,12 12:13
117:15
**cash**
53:6,14 54:8 59:12,14
71:8 72:6,13 73:13
73:21,25 74:22 75:2
75:5,9 76:6 81:16,24
151:10,13 153:25
154:16 155:20
172:15 173:3,15
174:6,11 175:12,15
176:1,7,17,23 177:22
177:25 178:1 180:12
180:13 204:12

207:24 208:1,2,12,20 246:16
**cause**
153:7 215:11 226:2,21 229:24 233:25 240:18 241:4,23 242:24
**caused**
188:18
**caution**
133:23
**caveat**
133:25
**Center**
1:20 3:9 5:15 6:9
**Centerview**
92:20,24
**certain**
18:5 186:9 214:5
**certainly**
16:22 20:18 34:13 41:3,10 46:6 53:6 54:4 55:12,16 58:11 66:4 108:8 118:1 155:1 160:4 184:25 190:13 203:12 206:3 206:14,21,22 207:23 215:10,13 224:4 229:10 234:14 235:1 235:24 236:16 245:25 246:13,18 247:16
**certificate**
147:17,22 148:3 210:21 211:13 212:9 212:25 217:2 243:21
**Certified**
1:21,22 251:6,7
**certify**
251:9,15
**certifying**
211:20 216:24
**CFO**
111:23 248:13
**Chad**

26:13
**change**
47:16 60:25 69:24 72:3 99:6 136:25 141:24 168:9 171:11 204:4 241:2,21 242:23 250:4,6,8,10 250:12,14,16
**changed**
159:5 168:23 169:13 169:15 174:22 175:14 176:5
**changes**
139:19 169:3 216:9 243:20 250:2
**channels**
55:15
**Chapter**
1:4 8:8 11:1,11 12:13 19:9 90:3
**characterization**
109:1
**chart**
134:3 245:6
**cheaper**
186:25
**check**
42:9 165:4 189:3
**Chicago**
4:8 26:17
**chief**
29:7 30:16,18,20 67:1 111:25 192:12 193:3 196:10 209:9
**chronology**
235:15
**Chung**
238:17
**circumstance**
133:13 138:24 186:6
**circumstances**
200:25 201:11 210:15
**City**
6:5,9
**Civ**

10:3,6,11,14 252:12 252:18
**claim**
73:2,3 95:10 98:22 128:19
**claims**
71:5 95:5,14 96:19 97:12 98:21 100:2
**clarification**
70:4 139:13
**clarify**
90:19
**clause**
124:22
**clean**
88:13
**clear**
43:18 56:12 63:18 71:8 87:25 97:8,13 111:25 116:20 118:8 123:1 135:8 136:20 138:7 164:19 171:6 172:22 188:2 193:23 206:18 223:5 225:10 229:1 239:10 245:4
**client**
29:23 30:9 219:8,21
**clients**
196:18
**client's**
220:3
**close**
50:5 174:3
**closer**
47:14 195:5 208:13
**coffee**
21:1
**colleague**
6:23
**colleagues**
7:7
**collection**
196:14
**collectively**
20:14 32:15

**college**
27:17 28:12
**column**
81:20
**combined**
100:9
**come**
33:16 38:14 55:14 74:2 76:10 128:25 130:22 139:20 161:19 189:20 193:24 202:15 203:14 219:13 226:3 226:15,23 242:25
**comes**
32:19
**comfort**
234:9
**comfortable**
8:25 148:10 161:24 162:15,25 163:6 183:21
**coming**
180:4 203:3 205:13
**comma**
43:25 237:5,20
**commencement**
200:14
**commensurate**
243:23
**comment**
24:10 60:22 193:4 233:11
**comments**
66:15 220:4,4
**Commission**
160:3 199:17 250:24
**commodity**
128:17
**common**
107:9 108:1 143:11
**communicate**
9:2
**communicated**
223:24

communicating
138:6
communication
222:12
communications
10:22
companies
60:9 80:20 108:7,10
108:11 114:2 196:7
196:11 197:8 229:4,6
229:11 244:6,17,22
244:23
company
1:7,10,11 3:7,14 5:9
6:25 7:10 14:13,21
33:7,20 34:22 36:23
38:22 39:8 41:3
46:19 48:1 49:6,9,11
56:9,13,13 58:14
60:20 61:9 62:19
64:1 86:16,19 87:10
88:12 91:2,3 93:25
103:11 115:11 116:9
118:10 138:3 140:20
142:9 148:13,16
150:5 153:4 157:12
160:1 166:13 167:14
168:2 174:9 175:11
190:1,4 192:3,13
194:20 202:24
204:18 205:12 206:3
206:6,21,22 208:16
208:19 209:8 217:18
217:21 218:8 219:6
220:14,18 221:17
222:4 228:19,24,24
234:16,21 240:14
241:10 242:3
company's
14:5,12 15:7,9 116:24
117:3 118:20 134:20
194:14,16 240:12
242:22
comparable
125:5 126:2

comparables
54:9
compare
168:16
compared
158:1 169:4 171:3
compares
216:6
comparison
63:25 64:24 156:13
158:5 161:7 163:21
163:21 164:12 171:8
comparisons
170:10
compensation
235:12
competitive
67:13,18 155:2
complete
9:10,11 14:4,20 27:7
27:10 230:2
completely
185:14
complicated
132:11 133:4
complied
200:2
compliment
24:21
comply
200:4 218:2
component
177:7,18
components
21:25
compromise
111:1 236:23 237:8
242:23
compulsive
226:19
concern
203:25 212:5 229:14
229:18
concerned
113:25 228:17,18

233:24
concerns
130:15 228:6
conclude
173:5 218:9 249:6
concluded
158:7
concluding
170:21 171:18 172:10
190:5
conclusion
46:4 52:18 132:20
163:18 167:9 170:2
209:6 228:2
conditions
34:15 37:11 43:16,20
43:21 45:22 114:13
114:15 119:2 132:2
confirm
239:8
confirmation
139:15
confirmed
62:4
confirming
211:20
confused
64:13 138:22
conjunction
165:23
conjunctive
150:3
connection
11:21 12:12 20:16
39:20 40:1 47:24
128:9,11 129:8 136:2
136:9,22 147:14
186:13 196:17
197:13 210:21 222:5
consensual
38:14,19
consent
95:14 193:12
consenting
195:10,25

consider
35:15,25 36:3,6 64:9
123:14 151:20
166:13
consideration
19:8,18
considered
29:24 66:5
consistent
15:3 52:2 84:25
136:15 149:13 228:8
238:8
consistently
169:16
consisting
49:25
constituencies
95:1
constituents
36:17
construction
154:12,15,21,21
consult
35:21 53:8
consultation
174:20
consulted
187:3
consulting
29:21 30:1 172:5
consummate
173:25
contain
200:17 201:7 209:23
210:11
contained
216:25
contemplation
235:25
contentious
94:14
contents
191:22
context
33:11 181:25

contingencies
49:2
contingent
150:20 170:24 171:21
  172:12 173:10
continuation
143:2
continue
61:5 134:1 229:11
continued
3:1 4:1 5:1 28:18,24
  146:12 209:4
continues
71:1
continuing
171:17
contract
34:16 118:18 119:1
contrary
85:13 87:11
contribution
60:13,23,24 61:25
  62:2
contributions
60:25
control
209:15
controller
84:2
controllership
31:23
conversation
156:25 190:7 223:23
  227:16 242:18
conversations
133:7 137:14
convey
15:9 242:22
copied
191:15
copies
89:13
copy
89:10 148:5 215:24
Corp

3:20 6:12
corporate
9:16 10:21,24 11:9,18
  15:21 30:23
Corporation
1:4 250:1
correct
8:9,10 9:20 11:16,22
  11:23 18:14 20:8
  21:9 22:15,16,20,25
  23:15,16 24:22 34:2
  39:1 41:9 43:15
  44:20,23 45:2,2
  46:19 47:4 49:14
  51:20 52:6 57:7
  63:11 68:8 91:20
  92:21 93:3,4 99:2,25
  100:15 101:5,14
  123:9,10 126:18
  127:12 140:9 148:13
  153:8 157:19 169:1
  175:13 182:7 200:13
  210:3 211:25 212:11
  213:9,13 215:7,9
  222:20 225:25 226:5
  226:25 227:3 230:1
  234:25
corrected
13:12
correctly
23:12 51:13 64:23
  90:5 95:9,16 131:22
  150:21 161:2 183:5
  201:13 210:17
  214:16 233:6 236:24
correlate
245:16
correlation
245:18
cost
134:24 185:16 186:25
  229:21
costs
183:3 185:5
counsel

6:18 7:21 10:23 23:6
  23:12,20,24 26:19
  92:15,21 121:15
  127:11,22,24 128:2,3
  130:20 133:6,19
  134:5,7,8,13 135:2
  135:17 136:4,22
  137:1,16,17,20,23,24
  137:25 138:2,2
  144:19,20 165:24
  167:11 171:24 172:5
  174:21 187:4 188:10
  189:3 194:7 219:5,5
  220:3,11 238:19,22
  239:9 242:7,12,15,17
  249:2
count
217:17
country
196:9
COUNTY
251:4
couple
89:13 198:10 209:20
  226:10 236:1 243:7,8
  247:20
coupon
86:4 101:2 184:1
coupons
151:19
course
21:2 77:20 86:6 97:17
  100:4 180:1 244:5
  245:7
court
1:2 6:15 7:12 8:19 9:4
  55:19 66:9 80:25
  144:8 183:20 197:4
covenant
230:13
covenants
206:18
cover
27:12 37:22 64:21
  77:16,25,25 102:25

120:24 174:7 180:9
  180:12 205:13 214:6
  214:7 223:16 231:4
  238:16
covered
15:19 27:14 217:6
  223:17
covering
27:15
covers
64:11 107:22
co's
192:20
co-chair
248:9
co-chief
192:18 194:6 248:14
co-CRO
29:9
create
73:19 228:10
creates
141:15
credit
102:1 107:22
creditor
95:1
creditors
62:20 80:22 87:5
  111:9
CREZ
154:13
critique
24:21
cross-defaults
189:12
cryptic
233:10
CSC
5:9
culminates
212:24
culmination
96:17
current

60:5 148:2
**currently**
22:10,11 166:14
**cut**
113:3,13
**Cutler**
3:7,13 6:22
**C.R.R**
251:25
**C.S.R**
251:25

---

**D**

**D**
1:1 3:11 201:4 252:1
**DANIEL**
2:4
**daniel.vaillant@frie...**
2:5
**date**
20:7 28:21 32:14 43:1
48:15 49:23 50:8,17
50:18,19 51:7,17
52:15,16,23 53:9,13
53:17 68:7 77:22
104:15,17,19,25
105:3 106:11,14,19
107:13 116:11 128:6
129:25 131:17,20,21
151:14,23 152:4,7,15
152:16 153:18
156:13 157:14
162:10 165:5,8 169:4
169:18,19,20 171:3,5
171:12,13 175:2
176:5 184:24 189:17
200:3,4,14,15,15
201:5,6 204:1 208:12
208:13,24 210:10
212:2 222:1 250:1
**dated**
47:3 102:21 146:22
157:19 160:10
211:14 217:2 243:21
**dates**

47:23 82:10,13,14,25
100:25 102:11,14
129:2 169:13,15
**David**
3:17 6:23 201:5
**david.gringer@wil...**
3:17
**day**
26:7,8 32:18,21 48:8
49:24 96:16 133:1
165:10,12 170:19
247:21 249:20
250:20 251:21
**DC**
3:16 4:3
**deacceleration**
193:15
**deal**
37:9 38:14 90:24
110:3 112:7,9,18
114:4,6,8 115:5,7
117:21 118:3 162:23
163:16 174:2,5 238:3
**dealer**
41:23 46:16 146:16,20
147:10,15 148:11,15
157:18 160:10 168:5
197:14 198:6,12,15
199:1 204:19 210:22
211:22,24 213:3
217:7
**deals**
114:5,17,25 135:3,5
136:14 142:6
**dealt**
59:1
**deal's**
110:4
**debate**
197:3
**Debevoise**
238:18,22 239:1,15
**debt**
19:20 32:15 33:14,15
33:24 34:11 36:2,24

36:25 37:4,4,6,15
40:2,5,11 47:7,8,13
47:19 48:4,10,14,19
49:1,18,20,25 50:1,2
50:7,9,11 58:22 59:5
59:9,22 64:14 68:6
68:21,23,24 69:5
75:18 77:8 79:17
81:25 82:12,21,24
83:5,6,8 84:14,16,19
85:3,4,5,6,12,16,20
85:24 86:1,4 87:13
87:22 99:10,16,19
100:10,12 101:3,11
101:13,15,18 102:3,5
102:6 104:24 105:16
105:21 106:6,17
107:23,23 108:15,19
108:23,24 109:4,4,5
110:11,14,17,18
114:12 115:13 116:8
116:10,14 120:6,13
120:14 121:8,14,17
122:4,6,7,11,19
124:11 125:4,24
126:8,24 127:3,16
128:20 129:6 135:14
135:15,20,24,25
136:3,7 137:11
138:14 139:8,16
140:5,8,14,16 141:3
141:11 142:10,10
164:24 165:2,6,16
167:2 169:10 173:2
175:21,24 180:16,18
182:12,24 183:14,25
184:23,23 186:8,23
187:8,12,19,19,22,24
188:6,8,18,19,21,25
194:10 198:18
202:20,23 206:5,12
207:1,6,9,19 208:5
209:3 217:24 221:13
223:11,13 234:2,2
235:5,19,21 236:8

237:23 240:2,20
**debtholders**
183:16
**debtor**
36:19 38:24 97:19
129:5,13 190:23
**debtors**
1:6 4:2,7,12 7:5 9:16
11:13,13 12:2,8 13:6
13:15 15:21 19:10,16
19:17,18 20:6,13,13
30:17 31:6 32:11,14
33:7 34:2,9 37:16
39:19 40:4 45:12
51:25 52:18 53:15,23
55:4,5,6,6,22 60:10
60:12 61:16,20,23
65:13,17 66:25 68:13
68:15 69:14 74:25
91:22,22 96:8 97:1
98:6 99:7 100:8
101:22 107:11
110:11 111:4 112:1
122:6,18 124:12
125:3 126:8 127:4
132:4 138:20 155:23
156:5 158:6 161:12
161:23 162:16,25
163:3 164:22 170:1
180:16 186:14
202:12 223:25 234:3
240:25 241:1 242:20
242:21 248:10,13,15
248:18
**debts**
59:1 69:21 139:23
160:25 162:3 163:24
164:14 166:11,13
167:6 170:7,22
171:20 172:11,20
173:9 175:3,4 190:1
**December**
1:14 6:6 102:7 104:9
104:25 106:9,14
124:25 131:11 132:7

136:2 141:4,11
146:23 149:21
150:10 152:3,8,13
153:11,17 155:13
156:9,12 157:19
158:3,19 159:9
160:10 161:23
162:19 163:9 164:15
164:21 165:9 168:5
168:12,23 170:18
171:3,10,16 172:8
173:6 174:14,24
204:2,20 221:15
243:22 250:1
**decide**
116:5 144:9
**deciding**
217:19
**deck**
89:21,23
**decks**
39:18 45:7,10,15,17
46:9,24 80:21
**declined**
227:6
**default**
128:16 187:16,18
188:24 189:4,16,23
190:6,9,23,24 191:8
191:16 195:11 196:1
196:15,16,24 203:1
225:11,11,22,22
226:1,14,14 229:24
230:11,13,13,18,21
**defaults**
196:13,21 197:8
226:21
**Defendants**
1:12
**defense**
6:17
**defer**
194:15
**defined**
37:8 143:22,23 144:8

144:9 149:23 174:20
225:6
**defines**
174:25
**definition**
35:23 43:8,11 115:22
**definitions**
164:7 165:20 172:18
**degree**
27:19 246:5
**Delaware**
1:2,7 2:17 3:7,14 5:9
6:16,24
**delegated**
167:23
**deliver**
110:25
**delivered**
28:13
**delivery**
43:7
**demise**
28:20
**department**
41:5 105:25 212:18,19
**depending**
70:24 116:3 154:10
**depends**
117:6,18 185:24 208:6
215:16
**deposed**
8:7 15:12 24:4,8
**deposition**
1:17 6:10 9:20 10:3,5
10:10,14,20 23:5,19
23:23 24:14,17 25:3
25:6 26:6,9,22 27:2,4
74:11,17 79:9 129:12
133:11 145:5 146:5
181:11,17 201:25
231:25 232:7 249:7
250:1 251:11,13
252:11,17 254:8
**depositions**
24:7

**derived**
60:5
**derives**
154:19
**describe**
38:11
**described**
39:22 130:6 142:21
169:9 194:3
**describes**
45:11
**DESCRIPTION**
252:8
**designated**
10:24 11:9 12:8,18
13:3,5,9,16 14:7,22
15:5,11
**designation**
109:15
**detail**
59:17
**deteriorate**
52:9
**deteriorated**
155:13 156:9 157:16
**determination**
19:25 51:2 53:4 71:15
155:21,24,25 205:2,4
205:8
**determinations**
159:1 165:22
**determine**
157:12 169:6 171:24
**determined**
169:12
**develop**
96:9 97:2 110:6
**development**
17:11,25 18:11,17
**DEVORE**
2:20
**dialogue**
54:14
**dialogues**
203:6

**different**
31:6,8,9 36:19 39:5,25
40:5 43:13 50:12
54:18 58:11 59:18
62:6,25 71:21 90:12
96:12 98:21 101:8,11
101:16,24 124:9
130:23 144:17,18
148:11 165:3 169:25
215:12 223:18 224:2
224:8 242:4
**differentiate**
142:3
**differently**
33:23 51:10 118:3
144:1
**difficult**
45:19 114:14 154:22
**digits**
94:22 103:22
**DIP**
3:2 18:17 70:12 71:6
76:16 180:21 182:5
182:14 183:1 185:4
186:13
**direct**
32:2 122:23 123:6
148:1 199:3,6
**directed**
93:24
**direction**
183:21 243:24
**directionally**
245:9
**directly**
123:19 137:23 224:20
224:21
**Directors**
93:25
**disagree**
44:3 185:12
**disallowance**
95:10
**disclose**
217:25 218:10,17,24

220:18
**disclosed**
129:3 218:12,16
219:14 220:24
**disclosing**
216:9
**disclosure**
199:5 201:6 209:22
212:21 213:6 221:10
221:17 234:8
**disclosures**
212:6,16 214:9 215:23
219:10 221:1
**discovered**
25:10
**discovery**
107:3
**discussed**
87:2 102:15 137:22
**discussion**
54:14 84:3 94:11
120:12 121:5 122:17
122:23 123:7 124:10
125:2,11,15,22
126:21 127:2,7,15
128:1 129:7 130:11
136:10 138:20
139:16,24 140:7
141:18 142:15 166:3
190:16,21 194:6
221:16,20 222:17,18
222:25 223:5,10
224:9,13
**discussions**
12:4 54:6 60:18 87:6
88:19,22 94:14 119:8
119:22,24 120:4
121:13,22 122:1,5
125:9 127:23 133:19
135:1,11 136:3,17,21
137:1,2,2,7 138:9,13
138:18,25 139:1,3,5
140:11 224:5 232:14
243:3
**disjunctive**

150:4
**dispute**
129:11,18 130:15
192:25
**distinction**
237:25
**distinguished**
29:17
**distress**
55:17
**distribute**
179:22
**distributed**
155:19
**distribution**
95:13
**District**
1:2 6:16
**dividend**
152:11 153:5,6 175:17
177:4,10,10,13
204:21 205:16 206:4
206:23 207:12
**dividended**
152:10,24,25 176:24
204:12 206:9 207:16
**dividending**
203:17 204:10
**dividends**
152:16 176:10 177:2
179:8,22 180:10
206:19
**Docket**
1:9
**document**
10:1 16:8,10 41:16
42:2,12,15 43:1 45:5
46:21 60:8 79:21
80:11 81:6 83:12
84:4 89:2,16 92:7
93:20 96:16 97:9
98:13 103:9 118:4,11
123:22 136:15 144:7
144:14 147:8 163:13
170:19 197:18,21

198:3 211:9 216:18
218:22 231:6,8 238:5
238:6 239:21
**documents**
9:23 25:5 46:17 51:21
52:1,1 97:7,20
105:10 108:2 114:12
132:11 141:17 162:9
162:13 198:11 199:5
213:6 216:23 224:18
233:13 239:7
**doing**
63:24 76:5 77:2 78:17
132:6 156:1 158:6
159:14 164:8 177:21
182:18 236:17 238:3
**dollar**
22:25 191:6,13
**dollars**
33:8 151:18
**domain**
159:3
**door**
81:16
**Dore**
194:17 195:2
**Dorr**
3:7,13 6:23
**double**
42:8
**drafting**
17:4,17 18:8,11
219:19
**drew**
228:1
**drill**
17:1 37:25 38:6
**drilling**
37:24
**DRINKER**
5:8
**driven**
88:17 91:10 177:2
196:24
**drivers**

177:19
**driving**
33:23
**drove**
53:7
**due**
7:1 83:1 85:11,15 86:7
96:21 102:23 104:18
128:20 131:20 165:9
165:12 172:3,17
202:15 203:3 205:14
207:5,8,8,20 208:5
209:3 225:24 226:3
226:16,23 230:15
241:5,25 242:25
**Duff**
20:24 21:2 53:18
**duly**
7:17 146:10 251:12
**Dun**
20:20 21:3

--- E ---

**e**
1:1 2:1,1,7 3:1,1 4:1,1
5:1,1 38:25 56:17
57:11,14 58:9 61:18
87:19 96:15 123:24
146:1,1 210:6 251:1
251:1 252:1,6
**Earl**
123:24 210:6
**earlier**
58:7 63:19 79:15
95:22 103:16 121:20
124:2 125:21 127:21
133:1 161:12 163:20
185:10 205:17
214:13 221:24 228:5
235:14 236:1,3,19
243:17
**early**
20:25 110:1 210:10
**easier**
121:9 125:20 217:12

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

**easiest**
31:16
**easily**
73:7
**economic**
113:8 215:11
**education**
27:17,22
**EF**
125:3 177:23
**effect**
24:12 154:16 225:2
**effective**
53:1 200:3,3,15
**effectively**
154:19 179:19 184:16
228:21
**effort**
38:14 57:5
**EFH**
3:19 4:17 5:21 21:11
30:7 38:15 39:12
41:17,20 64:21 79:24
80:3 93:15 101:22
108:6,6 147:1,4
151:16 152:10 153:1
155:18 176:18 178:2
179:21 203:18,18,22
204:11,12,22,23
205:16 206:10
207:17,17 229:4
233:23 250:1 252:23
253:7 254:3
**EFH's**
33:7
**EFH/EFIH**
45:24 80:24 199:15
**EFIH**
1:11,11 3:2,8,14 5:2
5:10 7:1 11:13,13,21
12:11 17:15 19:10,17
19:19 20:8,11 21:15
21:19 22:13 30:18,21
37:5 38:16 39:13,22
40:2,4,8,11,17 42:16

42:25 44:12,25 45:11
47:6,6,19 48:4,11,14
49:5 50:7 51:13 52:3
52:20 53:19 54:20
55:8,25 56:1 58:19
58:25 59:10,20 61:17
62:8,8,9,11 63:22
68:2,5 69:5,12,14
70:12,13 71:8 72:25
74:22 75:1 77:13
80:22 81:20 82:3,3,4
82:5 85:3,4 87:4,11
87:22 90:1,2 91:2,21
91:23 92:15 95:4,12
96:6,10,24 97:2,4,10
97:10 98:6,7 99:1,10
100:9,12 101:2,10,12
101:16,17,17,18
102:4,6,7 104:23
105:16,20,22 106:6
106:16 107:8 108:22
109:8 110:14 115:13
115:13 117:22
120:13 121:17
125:23,24 126:21,24
129:6,13,15 130:17
130:23 133:13
134:15 135:18,24
136:4,23 137:9
139:18 140:15,23
141:1,8,9 142:10
144:19 146:21 149:9
149:20,20 150:18,20
151:10,21 152:4,18
152:25 153:4,5,7,11
158:9,16,17 159:9
160:13,23,25 161:9
162:1,3 163:6,13,13
163:24 164:13,23
165:1,13 170:4,6,21
171:18 172:9 173:5
174:10,12 175:1,11
176:8,10,24 177:25
179:23 180:10,12,18
181:2 183:4 184:23

185:7,17 187:11,18
187:21 188:4 189:15
189:17,24,25 190:15
190:20,24 191:6,13
191:15 192:13,15
193:6,7,12,14 195:10
195:25 198:18
199:16 202:13,14,19
202:22,25 203:17
204:11,12,21 205:10
205:12,14 206:9,12
206:22,25 207:6,9,11
207:15 208:3,19
209:8 211:24 216:21
217:22 220:18
221:11 223:11,13,25
224:1,10,11 225:22
226:4 235:2,4,17,19
235:21 236:2,7,10
237:18,22 238:20
239:5,25 248:19,23
**EFIHMW**
102:24 103:2,3,7
197:20,22 198:1
211:4,8 216:12,16
231:11,15 238:12,15
253:22 254:13,18,23
255:3,7
**EFIH's**
52:9 55:8 62:23 68:19
75:5 155:12 156:8
157:15 161:13
176:17 194:3 240:15
**eighth**
200:6
**eights**
184:3
**either**
24:6,23 25:1 26:25
27:2,3 30:4 41:4
55:4 60:12 61:24
67:17,25 88:4 90:16
101:12,17,17 126:22
137:22 138:9 148:1
193:24 196:7

**elaborate**
235:8
**elect**
82:10
**elements**
60:1 98:19 193:18
**elicited**
20:4
**eliminate**
85:3
**Ellis**
4:2,7,12 7:4 26:10
138:1,3,5
**email**
73:21,24 74:23 102:25
156:20 231:7,19
232:7,12,17 238:17
238:24 240:5
**emails**
25:7,12 140:12 231:24
**emphasis**
72:19,20
**employees**
55:5 233:19 234:7
**employment**
28:11
**ended**
29:1 176:6 236:22
237:3,13 239:23
**ends**
70:6,8 72:22 144:25
**Energy**
1:4 6:12 29:6
**engage**
65:17 185:11 190:7
**engaged**
54:2
**ensure**
37:16
**enter**
196:12
**entered**
140:23
**entering**
197:3

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

**enterprise**
38:24 56:8 63:10,14
63:20 64:4,10 67:8
68:1 70:10 75:13
183:3 185:6
**entire**
38:24 56:9,13 158:14
224:9
**entirety**
118:4
**entities**
30:21 36:19 38:15
248:23
**entitled**
10:2 81:13 84:13
126:17 225:12
240:19
**entity**
31:10,11
**enumerate**
214:24
**environment**
245:19
**equal**
83:9 104:11 131:13
246:19
**equation**
71:13
**equity**
4:17 58:8 60:13,23,24
60:24 61:25 62:2
64:2,18 81:4 93:14
93:17 151:12 153:11
161:14 173:3 176:1
229:2,6 244:23
**equivalent**
116:6
**especially**
158:22
**ESQ**
2:4,10,15,20,21 3:5,11
3:17,22 4:4,9,14,19
5:5,6,12,17,20
**Esser**
4:14 7:7

**established**
53:17 161:11
**estate**
35:13 36:7,11,12,16
36:17,18 37:13 65:23
66:19 67:20 173:21
**estates**
39:4 61:6
**estimation**
50:6
**et**
1:5 6:12 250:1
**euphemism**
143:11
**evening**
26:5
**event**
190:6,9,22 191:7
215:10 233:18 234:9
234:11
**events**
38:3 47:16 189:11
230:21
**Evercore**
53:23 54:2,13,20 55:1
55:3
**everybody**
90:21 206:16
**evolved**
58:10
**exact**
47:12 100:24 102:10
128:6 129:2 139:22
186:6
**exactly**
28:19 63:5 70:8 83:13
97:9 123:11 128:14
144:21 164:9,17
165:4 184:18 204:6
206:2 225:1 232:13
245:16
**EXAMINATION**
7:22 146:12 252:2
**examined**
7:19 146:10 211:21

**examiner**
6:17
**example**
16:22 45:19 58:1 93:6
123:11 135:14
140:13 154:11
164:22 183:16 196:6
199:11 247:21,25
**examples**
230:20
**exception**
57:9
**excess**
78:19,24 151:18
**exchange**
59:8 60:14 100:17,20
123:9 149:22 160:2
199:17,21 200:15
201:6 220:3 222:6,13
223:6,24 231:7,19
232:8 239:3
**excluding**
121:15 127:10,22
**exclusively**
134:10
**excuse**
29:1 31:25 216:24
**executive**
29:7 30:19 248:11,12
248:17,19
**exercise**
72:7 73:11 117:8
**exhibit**
9:25 10:1,8,12,19
16:10 41:15,19 46:16
46:22 78:10,12 79:3
79:24 80:1,2 89:2,5,6
89:17 92:6,10 98:14
99:3 102:20 103:5
109:8 112:4 117:25
123:22 126:14
135:14,16 140:15,24
144:16 146:25 147:3
181:10,15 197:20,24
198:4 209:19 211:3,6

211:10 212:9 216:14
231:11,13 238:11,13
252:9,15,21 253:1,5
253:10,15,20 254:1,6
254:11,16,21 255:1,5
**Exhibits**
10:17
**exist**
46:23 108:9 111:3,7
**existed**
152:22
**existing**
58:16 59:9 69:5 84:15
180:20 182:12
184:22 186:2 233:17
**exists**
16:25 64:15
**expand**
55:3 107:8 108:3
**expect**
133:6
**expectation**
109:23 235:25
**expectations**
110:5
**expected**
109:24
**expenditures**
154:15
**expense**
117:16 172:2 177:6
**experience**
55:11 166:20,23
**expert**
103:11 106:24 108:17
166:19 195:3
**expertise**
195:16
**experts**
244:1,7
**expiration**
201:5
**Expires**
250:24
**explained**

62:2 203:12
**expressed**
12:1
**extend**
59:8,12,20 60:1 80:13
80:14 82:17,19,23
83:17 122:11,13
**extent**
17:7 48:3 80:6 86:5,8
115:12 139:23 192:6
241:9
**external**
113:12 137:16
**extra**
233:16 234:17
**eye**
115:23

—————————
F
—————————
**F**
1:1,21 7:18 146:1
251:1,6,25
**face**
203:21
**facility**
18:18
**fact**
20:1 21:21 53:3,14
62:24 80:20 93:1
120:22 193:22 196:5
197:6 200:18,22,23
201:8,9 203:7 210:12
210:13 213:8 219:13
233:21
**factor**
214:8 215:22 216:5
**factors**
216:6 217:11,25
220:19 221:2,10
**facts**
14:5,9 15:10 16:7,18
19:6,15 24:24 46:23
73:7 195:22 209:25
245:8,9
**failed**

173:1 213:7
**fair**
33:6 37:25 49:10 50:6
58:17 87:9 100:7
116:6 140:19 141:22
150:17 151:2 154:1
155:4 157:10 160:12
160:22 161:8,20,25
163:22 170:3 181:5
186:12,18 191:22,23
194:23 220:17
234:18 246:1
**fairly**
114:10 174:16 204:8
**faith**
52:4 162:16 163:1,7
233:20
**fall**
243:23
**falsehood**
183:10
**familiar**
38:8 92:13 143:16,19
147:12
**family**
21:11
**far**
75:23 222:6 224:12
246:11
**fashions**
39:5
**fast**
175:8
**fault**
231:17
**favor**
73:23
**feature**
116:23 117:3
**Fed**
10:3,6,11,14 215:13
252:12,18
**fee**
95:11
**feel**

97:22 181:24
**Fidelity**
2:2
**fiduciaries**
34:21,22
**fiduciary**
34:14 35:7,11,11,16
35:19 36:5,7,15
65:22
**Fifteenth**
4:3
**figure**
63:22 135:10
**file**
38:18 58:25 87:19
91:4 96:8,15 97:2,24
98:18 136:5 141:2,9
203:9 236:10 241:6
241:25
**filed**
12:2 53:13 69:3 88:1
99:7 134:15 135:18
160:1 176:6 187:16
193:23,25 199:16
202:12 216:19,20
**files**
221:11
**filing**
11:1,11 48:15 53:7
60:19 90:2,20 91:9
96:20 98:19 134:9,17
156:13,16 168:13
172:1 188:22 189:1
190:4,5 205:9 226:4
226:24 243:1
**filings**
221:3
**final**
95:20 246:25
**finally**
9:1,6 177:12
**finance**
1:11 144:6 192:21
196:6 199:16
**financial**

29:8 30:16,18,20
47:21 50:16 51:6
52:13 88:23 92:19
111:25 159:2,17,25
166:18 167:1 168:15
174:18 196:10 209:9
212:15 216:7
**financials**
216:10
**financing**
113:9 182:5 183:2
184:15 185:5
**find**
111:20 113:10 166:25
**fine**
13:2 216:4 230:9
**firm**
28:18 30:5 163:17
228:3 238:18
**firms**
166:7 196:9 229:3
**firm's**
30:10
**first**
3:2,8,14 5:10 7:1,17
9:24 10:1 11:4 16:9
17:15 18:17,18 19:20
21:19 22:13,18,24
25:16 29:14 32:17,18
32:21 37:5 39:21
42:7 49:24 50:1
57:11 59:21 68:6,21
70:13 71:25 77:13
78:1 79:16 80:17
82:3 83:4 85:4 87:4
87:13,22 88:21 90:8
92:15 95:4,12,20
96:1,6,11,25 97:4,11
98:10,10 99:2,15
100:12 101:3,12,18
102:4 103:16 104:24
104:24 105:2,3,16,22
106:6,16 107:8,23
108:23 117:23 119:8
119:12 120:4,6,9,13

121:7,8,14,17 122:10
125:23 126:21,24
127:25 129:15 136:8
136:23 140:2,16
150:11 161:7 164:23
165:2 180:16,18
182:6,12 183:15,19
183:24 184:22,23
186:13 187:12 188:5
188:25 189:17,24,25
190:7,21 191:7,13
192:7,15 193:7,14
198:18 200:6 202:20
202:22,25 203:6
205:14 206:25
211:19 222:2 223:11
223:13,25 224:1,11
224:11 231:3 235:5
235:19,21 236:8
237:23 247:3
**fits**
113:8 172:19
**five**
74:5
**flag**
215:13
**flavor**
214:24
**flight**
245:21
**Floor**
5:11
**flow**
59:12,14 153:25
175:15 176:7,23
177:22,25 178:1
202:8 207:24 208:2
209:17
**flown**
207:10
**flows**
54:8
**focus**
47:6 51:8 52:7 72:18
102:2 109:6 117:22

158:4 161:5 195:20
213:1
**focusing**
36:24 48:21
**FOLEY**
2:6
**folks**
156:21
**follow**
61:19 86:6 194:11
213:22,24
**following**
40:10 118:9 250:2,3
**follows**
7:19 48:8,9,12 146:11
**forbear**
196:14
**fore**
139:21
**forecast**
208:9
**forecasts**
207:24 208:2
**foregone**
205:24
**forgetting**
128:17
**form**
19:22 20:9 22:17
34:12,25 35:18 39:24
40:13 44:16 45:3,14
47:10 48:16 49:7
52:18 53:25 54:22
59:24 64:6 66:3 67:9
69:1 70:18 73:4
77:18 82:8 84:5
86:12 87:16 90:11
97:5 98:11 102:9
107:17 109:13 113:2
118:12,23 120:15
129:23 130:18 132:8
132:19 139:10 143:9
149:11 154:3 161:15
162:22 164:3,25
165:18 167:8 173:12

176:12 178:18
185:23 186:21
187:14 191:18
192:17 193:16
195:13 199:18
207:21 213:14
215:15 217:4 218:14
220:21 221:4 222:7
227:4 228:12,15
232:9 235:7 236:4
237:2 245:11
**forma**
46:25
**formal**
20:7,10,12 27:22
53:20 54:4 55:10,18
68:14
**formed**
40:20 142:20
**former**
158:22
**forms**
113:5,18
**formula**
71:17
**forth**
18:12 94:15 98:25
112:13 160:9 162:17
163:8 251:11
**forthcoming**
58:4
**forward**
60:3 79:3 114:7 149:2
175:5,8
**forwarding**
89:20
**found**
40:2 46:10 108:14
**foundation**
12:23 13:21 15:24
52:22 60:16 64:7
91:8 92:1 94:6 98:12
106:21 109:14
118:13,24 162:7
173:13 190:11

204:25 205:19
**four**
43:13,16,20,21,22
44:2,14 150:7,11
160:8
**frame**
208:7
**frames**
47:12 245:24
**Francisco**
4:13
**FRANK**
2:2
**FRANKEL**
5:2
**frankly**
27:13 137:21 181:6
216:2 244:14
**frequently**
108:14,17
**FRIED**
2:2
**FRIEDMAN**
3:19
**front**
70:22 140:14 193:2
**full**
14:21 27:6,10 71:6
**fully**
133:6 192:23 194:13
**function**
32:9 33:16
**functional**
212:16
**functions**
31:17,19 33:3
**fundamentally**
175:19
**funded**
32:15 49:25 51:10,16
51:17 100:10 101:21
107:10 126:8
**funds**
33:2 185:17 188:13
**further**

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

84:18 136:16 146:11
152:17 251:15
**future**
1:4 6:12 29:6 165:17
166:15 208:22 219:2
220:15 228:19
229:12

---

### G

**G**
2:20
**Gail**
1:21 7:12,18 251:6,25
**garbled**
236:6
**gather**
74:21
**geez**
128:17
**general**
36:25 105:7 144:6,10
154:5,7 174:17
181:12 194:5 207:14
247:2
**generally**
21:23 38:11 81:8
114:17 115:3,6
118:25 130:6,14
142:23 147:9,11
154:23 191:10
192:20 198:2 232:10
240:23 244:10
**getting**
9:5 32:25 60:8 96:3
138:22
**gg**
149:6,8,24 162:18
163:9 168:4 174:25
**ghorowitz@kramer...**
5:6
**Gibbs**
5:23 6:3
**give**
14:4,20,20 17:13 34:6
35:9 45:20 53:12

62:6 72:5,10 73:8
75:9 92:4 117:15
125:13 128:7 131:4
154:10 155:21
162:12 194:15
197:18 213:15
214:23 215:19 230:7
**given**
37:10,11 58:16 109:7
130:16 182:3 183:11
191:23 251:14
**gives**
64:17
**giving**
73:6 224:25
**go**
8:13 37:25 43:2 47:20
49:2 57:22 59:17
66:20 68:4,10 71:13
73:10 88:13 102:17
110:25 132:12
136:19 139:7,11
156:23 157:6 162:7,8
164:4 172:14 175:18
196:18 197:15 200:5
200:10 201:17 202:9
203:11 205:1 209:16
209:18 212:13
213:10 217:17,18
220:12 226:10,10
233:23 243:5 246:11
247:17
**goal**
36:14 37:1,14 38:23
39:2,2,11
**goes**
15:17 113:5,18 141:15
154:16 200:21
**going**
8:11,17 9:5 16:25 20:1
27:12 35:7 38:2,4
60:3 65:20,25 68:10
68:10 70:5 72:19,20
76:7 90:15 107:2
110:5 111:10 120:9

121:21 125:21
130:10 134:24
141:23 142:5 144:10
146:19 156:3 174:10
174:10 175:5 181:19
184:3 197:5 199:8
203:7 215:19 217:16
224:16,18 233:20
234:16,21 245:17
**good**
6:1 7:23,24 52:3
146:14 160:20
162:16 163:1,7 218:6
236:22
**GOODMAN**
5:6
**goodwill**
20:16
**gotten**
134:7 156:20 187:5
**GRAY**
2:17
**great**
76:5
**greater**
47:7 150:18 151:2
152:21 160:23 162:1
**Greenwich**
1:20 3:9
**GREGORY**
5:5
**Gringer**
3:17 6:24
**ground**
27:15 37:22 223:16
**groundrules**
8:12
**group**
2:12 3:19 114:16
137:14 234:6
**groups**
87:6,9 113:22 212:17
**guess**
57:8 160:14 169:17
**guidance**

214:22 215:3
**Gump**
92:14,22,23
**guy**
40:21 103:14 185:15
**guys**
110:23 123:13

---

### H

**H**
2:21 5:12 252:6
**Hale**
3:7,13 6:22
**half**
25:20 39:21
**hand**
53:10 146:20 163:22
173:15 216:1 251:21
**handed**
25:7 41:22 46:21
198:3
**happen**
48:18 219:3
**happened**
152:12 180:11 243:3
**happy**
39:16 70:20 73:10
134:22 140:11
160:18 180:23 199:2
210:22 216:3 217:13
230:7
**hard**
97:21 132:10 156:1,2
156:3,4
**HARRIS**
2:2
**hat**
62:8
**hate**
77:2 209:17
**HAYES**
2:10
**head**
9:3 29:3 78:18 159:4
203:22 234:15

235:17
**headed**
234:23 235:2,17 236:2
**heading**
132:24,25
**hear**
156:22 214:15 236:23
**heard**
8:13 58:2 71:20 130:5
141:25 142:7 143:21
**hearing**
55:21 142:4 193:25
**hearings**
247:21
**held**
152:18,20 153:14,16
155:18
**help**
107:2
**helpful**
63:19 64:22 73:16
106:4 170:14 180:24
181:3 199:6 221:6
**hereinbefore**
251:11
**hereof**
124:6
**hereunto**
251:21
**HERRING**
4:19
**hesitate**
60:20
**hey**
123:13
**high**
31:14 36:25 37:3,22
59:19 66:6 77:14
108:14,19,24 113:23
116:10,14 120:21
121:2 122:6,18
124:11 125:3 127:3
129:5 151:19 224:17
**higher**
185:18 186:1

**hire**
219:5
**historically**
176:17
**hit**
157:5 158:3
**Hoc**
2:12 3:19
**hold**
184:4 228:3 248:22
**holder**
138:21
**holders**
58:16 93:8 104:16
131:18 189:25 190:8
**holding**
1:10,11 49:5,8,11
73:13 151:10
**Holdings**
1:4 6:12 29:6
**hole**
160:21 162:18 163:9
163:20 164:13
165:16 166:10
170:14
**Holly**
4:4 7:7
**holly.trogdon@kirk...**
4:5
**hope**
59:4 91:5 105:12
118:1 203:13
**hopefully**
246:12,24
**HOROWITZ**
5:5 156:19
**Horton**
8:2 12:16,17 13:3,8
14:19 15:13 23:9,13
23:18 24:3,13 25:24
26:6 34:5 38:2 39:18
40:25 41:4,4 51:21
59:7,16 83:20 84:2,6
87:2 137:3,15,18,23
167:24 184:17

186:11 194:25
211:19 212:18
223:21 232:17
247:24
**Horton's**
26:22 84:22 86:23
211:16
**hour**
25:20,23
**hours**
25:20
**house**
129:7
**Howell**
4:9 7:3,3 11:24 12:22
13:8,20 15:23 19:22
20:9 22:17 34:12,25
35:18 39:24 40:13
44:16 45:3,14 47:10
48:16 49:7 52:21
53:25 54:22 59:24
60:15 64:6 66:3 67:9
69:1 70:18 73:4
77:18 79:1,11 80:5
82:8 84:5 86:12
87:16 89:11,14 90:11
91:7,25 94:5 97:5
98:11 102:9 106:20
107:17 109:13
115:19 118:12,23
120:15 127:6 129:23
130:18 132:8 133:22
139:10 143:6,9
147:25 149:11 154:3
161:15 162:6 164:3
165:18 167:8 173:12
176:12 178:18
185:23 186:21
187:14 190:10
191:18 192:17
193:16 195:13
204:24 205:18
207:21 213:14
215:15 217:4 218:14
220:21 221:4 222:7

227:4 228:12,14
232:9 235:7 236:4
237:1 241:8,15 242:1
245:11 249:3
**hundred**
56:21 65:6
**Husnick**
26:13
**hypothetical**
73:6 79:5 215:20
**hypotheticals**
79:7

### I

**ideas**
55:14,15
**identification**
10:9,13 41:20 78:13
80:3 89:7 92:11
103:6 147:4 181:16
197:25 211:7 216:15
231:14 238:14
252:10,16,22 253:2,6
253:11,16,21 254:2,7
254:12,17,22 255:2,6
**identified**
15:20 194:18
**identify**
25:11 89:16 108:25
216:8,17
**ignore**
165:16 196:25
**ii**
44:9 168:10
**iii**
44:10
**Illinois**
4:8 27:20
**imagine**
137:19 171:1 178:10
180:11 238:1
**immediately**
43:6 149:21 164:17
210:9 227:19
**impact**

46:4 48:25 228:23
**impairment**
20:16
**implicit**
56:4 65:7 82:18 119:4
  244:14
**implied**
57:16 70:9 75:13,14
**important**
33:12 34:1 114:21,23
  115:1 116:9,23 117:2
  118:20 119:2 219:1
**impression**
40:20
**improve**
67:16,16,17 69:11
**inability**
172:2
**inaccuracy**
248:1
**inaccurate**
83:23 235:15 247:14
**include**
42:16 76:19 106:2
  109:10 112:3 200:21
**included**
31:10 85:19 95:19
  102:5 103:17 105:17
  108:1 112:24
**including**
11:6,12 19:10,17
  30:21 34:17 38:16
  69:13 70:16 79:18
  100:9 105:21 150:19
  168:3 170:20,23
  171:17,21 172:12
  173:10,25 199:19
  202:13 212:14,17
  225:11 234:6 238:19
**inclusive**
79:25 92:9 103:4
  147:2 197:23
**income**
151:17 154:18,20
  177:5,6,7,16 179:7

207:10 214:25 215:1
  215:18
**incomplete**
230:4
**incorporated**
139:22 178:24
**incorporation**
212:14
**increase**
47:7 48:13 154:18
  158:18 159:8 173:3
  183:3 185:6 246:2
**increased**
47:19 154:14 245:2
**increases**
49:4
**incremental**
83:8
**incur**
39:7
**incurred**
51:16,17
**indebtedness**
51:11,16,18 101:22
  107:11
**indenture**
1:7 2:7,18 3:8,14 5:2
  6:25 16:24 17:4,8,11
  17:18 18:6,9,13
  34:17 86:6,11,22
  101:12,16,18,19
  102:13,21 103:3,11
  103:20 105:5 106:23
  106:23 109:7,25
  117:24 119:10,15
  121:6 122:20 125:23
  125:25 126:7,23,23
  127:15,18 128:5
  129:20,22 132:15
  133:18 140:24 143:3
  144:16 149:15 171:4
  189:24 191:5,15
  200:7 225:7 229:15
  230:21 239:20 240:1
  240:17

**indentures**
17:14 59:23 85:12
  90:1 95:12 101:8,13
  101:24 102:3,4
  103:17 104:23
  105:15 106:11
  107:12,20,25 108:9
  108:14 111:4 112:3
  112:22 138:15
  144:18 229:17,20
**independently**
94:17
**index**
245:1,1,15
**indicate**
66:17
**indicated**
207:25
**indirect**
139:4 222:17
**indirectly**
122:2 127:8
**individual**
9:15 36:12,13
**individually**
1:18
**inevitable**
234:19
**inexact**
206:7
**information**
31:24 51:2 74:21
  133:25 144:23
  155:22 158:25
  159:20 160:6 167:10
  168:16,22 169:6,8
  227:25
**informed**
220:1
**infuse**
88:11
**infused**
58:15
**infusion**
45:25 58:9 176:2

**initial**
42:17 63:1 71:23
**inside**
242:11
**insight**
220:14
**insolvent**
52:20 153:7 158:10
**instance**
122:22 123:5
**instructed**
15:15
**instruction**
237:10
**instrument**
232:25 233:8
**integrated**
118:11
**intelligently**
168:18 169:23
**intend**
24:23 61:21
**intent**
143:14 203:13
**intention**
117:8 183:16
**intentionally**
183:9
**intercompany**
50:22 51:3
**interest**
11:20 12:11 33:25
  54:21 55:9 57:24
  60:2,4,5,12 66:16
  68:19 69:20 70:15,16
  70:17,25 83:6 104:15
  104:18,19 107:16
  115:5,8 116:2,25
  117:17 131:17,20,21
  151:16 155:12 156:8
  157:15 172:2 173:8
  173:19,21 183:2
  185:5,25 186:2,16
  202:19,23 203:3
  205:13 206:24 207:3

207:7,10 245:16,18
**interested**
55:12 58:3 61:9 234:1
251:18
**interesting**
197:1
**interests**
229:7
**interim**
155:16,22 158:25
169:8
**intermediate**
49:8,11
**internal**
31:23 113:11 137:16
138:2
**interplay**
129:19
**interpret**
63:14 133:5
**interpretation**
35:5 144:6 234:17
**interpretations**
164:5
**interpreting**
132:14
**interrupt**
35:2 61:14
**interruptions**
25:18
**introduce**
6:18
**introducing**
232:24 233:7
**investing**
125:13 234:1
**investor**
32:5 45:8,8 58:1
120:13 121:23,23
122:5,18 124:11
125:2,10,12,16 127:2
240:1
**investors**
68:15 109:23 110:10
233:25 234:5

**invisible**
224:10
**involved**
13:23 14:24 17:3,6,10
17:17,20,24 18:7,10
18:16,21 81:5 119:5
222:11
**involves**
18:5
**in-house**
242:8,10
**issuance**
37:19 40:11 46:24
47:25 48:10,19
138:14 140:14
164:23 198:17
235:20,22
**issuances**
34:11 36:24 40:17
47:23 116:8 136:23
217:24 228:19
237:18,23
**issue**
47:7 50:12 88:18
108:3 110:17 122:24
123:8,17 127:16
130:20 135:24 136:8
139:20 140:3 155:17
173:2 175:20,24
186:8,8 222:2,13,16
228:10 232:14
**issued**
5:10 40:4 47:13 48:4
100:13,16,19,23
110:11 127:3 135:14
135:16,25 138:15
139:17 235:4 236:8
**issuer**
104:10 131:12 139:7
140:5
**issuers**
42:13,15
**issuer's**
124:24
**issues**

88:15 224:22 243:18
**issuing**
40:1 115:13 142:9,10
**item**
69:19 117:14 215:16
**IVAN**
3:22

---

**J**

**JACOBSON**
2:2
**JAMES**
5:12
**james.millar@dbr.c...**
5:13
**January**
203:19 206:4,11
207:16 208:10,14,15
208:16,18
**JASON**
2:15
**jason.bartlett@whit...**
2:15
**JEFFREY**
5:17
**jj**
42:23
**job**
67:11
**John**
30:14
**joined**
6:23 7:6
**jssabin@venable.com**
5:18
**judgment**
161:20
**July**
28:20,21 29:1,2,5
**June**
53:1 172:2 174:11
175:12 202:16 203:3
205:14

---

**K**

**K**
4:19
**KASOWITZ**
3:19
**KATZ**
4:16
**keep**
38:15,22,24 141:22
150:11 170:25
221:25 240:14
**keeping**
39:8 226:9
**Keglevic**
1:18,18 6:11 7:15,23
9:24,25 10:4,8,12,16
16:11 18:4 35:2
40:18 41:15,19,22
43:19 46:22 48:5
51:12 61:22 67:1
72:14 74:12,18,20
78:12,14 79:6,14
80:1,2,9 81:10 89:5,6
89:17,18 91:17 92:6
92:10,13 95:25 98:14
99:3,5 100:1 102:20
103:5,8 105:9 112:4
116:21 117:25 119:7
119:17 122:8 123:22
130:15,22 140:24
142:3 144:15 145:6
146:6,8,14,25 147:3
147:6 148:8 157:8
166:5 179:10 181:9
181:15 187:7 195:18
197:20,21,24 198:2,4
198:9 202:1,3 203:17
211:3,6 216:12,14
218:7 219:19 222:16
222:25 229:19 230:6
231:11,13,18 235:14
238:9,11,13,21
241:13 243:17
246:24 249:8,17
250:2 251:10 252:9
252:15,21 253:1,3,5

253:10,15,20 254:1,6
254:11,16,21 255:1,5
**Keglevic's**
181:17 254:8
**KEITH**
2:21
**keith.wofford@rop...**
2:22
**kept**
131:5
**key**
94:25 105:25
**kick**
194:24
**kind**
53:12 203:2 244:9
**kinds**
97:18
**Kirkland**
4:2,7,12 7:4 26:10
137:25 138:3,5
**KKR**
89:3,7 253:12
**knew**
53:14 55:16 142:12
194:8 204:5 207:7,9
228:19
**know**
8:16,22 12:24 15:13
16:15 18:22 21:23
26:16 28:12,19 30:23
31:25 33:11 34:17
39:25 40:14,15 41:5
45:15,16,16,19 46:2
46:5,6 47:22 51:1,20
51:21 53:3,6 57:15
58:21 60:21 61:1
66:9,12,18 68:16
69:4 71:3,12,14
72:12 73:12 76:4,18
77:21 83:14 84:8,10
84:13 87:25 88:9,16
90:14,21,23 94:13
97:15,20 100:5
102:14 105:4 106:1

107:1,21,24,25 108:8
108:16 109:1,20
110:22 111:9,10,18
112:12,20,23 113:1,2
113:4,10 114:6,10
115:21 117:11,16
121:2 123:1 128:22
128:23 130:4 132:9
134:20 139:19
141:14,15 143:1,10
143:10,13,14,22
144:21 147:10
150:16 151:19 152:6
154:8,17 156:15
157:20 163:17 165:3
166:24 171:24,25
173:23 178:5 180:25
184:18 186:23 189:3
189:10 191:20
192:24,25 193:22
194:13 195:1,4
196:22 198:6,7 207:4
208:7 215:25 216:4
218:9 219:2,4 220:1
222:10 223:15
224:12,15 226:7
227:11 232:12
233:11,12,15,21
237:13,14,24 238:21
240:11 242:3 244:8
245:20 246:15,18
248:4
**knowledge**
13:18,22 14:5,10,12
15:2,7,7,9,25 16:6,18
16:22,24 19:6,14
35:24 36:21 53:10
83:17 94:7 105:7
107:2 108:18,21
109:16 140:22 141:7
144:16 156:7,17
165:14 168:7 188:24
189:15 190:12,15
191:1 194:18 222:2,3
223:22 227:5,7

241:12 242:19 243:2
244:25
**known**
227:18
**knows**
224:14
**KRAMER**
5:2

---

**L**

**L**
1:1
**label**
236:15
**labeled**
78:16
**language**
80:23 104:20 106:25
131:10 134:3 136:14
139:20,22 172:20
195:20 224:23,25
225:3 229:20 236:23
237:11,12,19,24
239:16,23 240:16,17
241:3,21,23 242:23
242:24
**LARDNER**
2:6
**larger**
22:20
**largest**
153:9 182:7
**LaSalle**
4:8
**law**
35:6 163:17 197:3
238:18
**laws**
218:3
**lawyer**
139:4 187:3 194:13
195:7,9
**lawyers**
150:15 219:11,12
224:15

**lay**
68:3
**layman's**
172:17
**LBO**
114:11
**lead**
67:4
**leading**
38:3 65:20 133:8,19
157:14 158:8 166:6
196:8
**leap**
48:7
**leaves**
75:21
**led**
244:24 245:3
**left**
74:5 77:24 176:23
**legal**
5:24 6:4 7:13 35:5,9
35:20,24 41:5 92:15
105:25 113:11,12
132:15 137:19
174:17 192:19,21
195:21 212:18,19
**lender**
114:15
**lenders**
196:12,13 197:7
**lengthy**
24:19,21
**letter**
93:24 98:25 191:20,21
**let's**
18:2,15 19:5,13 35:14
37:25 42:25 47:6
49:5 51:8,9 52:7
54:17 56:11 63:17
65:12 67:21,22 68:3
68:3 74:2 75:8 81:9
81:19 92:5 106:14
107:8 108:3,4 109:6
117:22 119:22 131:1

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

158:4 160:7,8 161:5
170:13 196:5 209:16
209:18 218:10
220:12 222:24 223:5
230:3
**level**
31:14 37:23 38:5
59:10,19 69:18,19
120:22 121:2 165:5
204:4 224:17
**levels**
31:8 57:23 66:15
212:23
**levered**
33:20
**LEVIN**
5:2
**Lexington**
3:3
**liabilities**
39:7,8 49:1 50:10,12
50:13 69:13 73:1
77:7 150:19,20 151:3
158:16,17 159:8
160:25 162:3 163:24
169:10 170:6,23,24
171:20 172:12 173:9
176:11 208:21
246:16
**liability**
48:22,24 76:13 169:11
**lien**
3:2,8,14 5:2,10 7:1
17:15 18:17,18 22:14
22:18,24 37:5 50:1,2
59:21 68:6,21,23
69:18 76:21 77:13
78:1 79:17 83:4,6
85:4,4 87:4,13,22
95:4,12 97:11 99:16
99:19 100:12 101:3
101:11,13,18,19
102:4 103:16 104:24
105:16,22 106:6,17
107:23 108:23,23

110:16,18 117:23
119:8,12 120:5,6,9
120:13 121:7,8,14,17
122:3,11 123:9
126:21,24 136:10,23
137:5 138:18 139:16
139:18 140:16
164:24 165:2 180:16
180:18 182:6,12
183:15,15,20,22,24
184:22,23 186:13
187:12,19 188:5,25
189:18,25 191:7,13
192:15 193:7,14
198:18 202:20,23,25
205:14 207:1,6 223:9
223:11,13,25 224:1
224:11,12 235:5,19
235:21 236:8 237:18
237:23 239:5,19,25
240:16
**lienholders**
19:20 21:20 70:14
190:8,21 192:7
**liens**
42:6 57:12 70:15
71:25 72:1 82:3,4,5
88:21 90:8 95:20
96:1,7,11,25 97:4
98:10,10 99:2 107:9
125:24,24 129:15
189:25 203:6 240:18
**life**
9:3
**light**
200:25 201:11 210:15
**likelihood**
180:3
**likes**
186:1
**limitation**
11:25
**limited**
230:22
**limiting**

220:15
**line**
44:5,6 200:6,10 250:3
252:8
**LIPTON**
4:16
**liquidity**
37:17 186:3
**list**
229:5
**listen**
27:1,3
**listening**
206:8
**litigate**
88:6 91:4,23
**litigated**
90:25
**litigation**
21:21 69:14 134:25
194:1,19
**little**
25:19 27:13 103:13
118:8 158:23 200:5
205:17 207:18
214:23 245:20
**LLC**
1:10,11 177:3 178:7,9
178:11
**LLP**
1:19 2:2,6,12,17 3:2,7
3:13,19 4:2,7,12,16
5:8,14 7:4
**loan**
70:12
**locate**
147:21
**logic**
48:7
**logical**
193:20 194:3
**long**
25:14 27:18 53:24
96:3 160:18
**longer**

26:1,2 53:2 168:10,25
179:2
**look**
16:4 18:15 37:7 39:17
41:25 42:1,6,22 43:1
44:4 47:20 50:15
56:15 81:19 83:2
84:20 89:11,14 94:24
95:4,7 106:22 114:24
123:21,24 124:15
148:21 149:6 155:15
156:3 157:24 158:24
159:25 162:8 175:18
176:2 177:1 181:21
181:25 199:10,24
201:4 205:1 210:6
230:22 244:2 246:15
247:17
**looked**
21:11,12 54:8,9,10
173:14 238:3 245:6
**looking**
45:23 80:13 100:21
124:2 155:10 156:1
164:13 172:1 209:1
239:21 243:7
**looks**
42:3 89:19 147:10
**lose**
69:14
**loss**
29:25
**lost**
63:3
**lot**
8:12 25:17 33:8 37:3
38:1 45:16 54:14
77:20 81:3 88:10
98:19 113:23 132:11
176:4 182:3 209:5
224:18
**love**
55:13 160:17
**low**
214:19 245:18

**lower**
57:17 82:22 83:6
116:1 183:2 185:5,18
**Luncheon**
145:9

**M**

**M**
5:20
**machine**
202:5
**maintained**
29:23
**major**
154:11 209:1
**majority**
22:23 23:3 70:13
93:16 107:23 184:6
191:3,6,12
**making**
71:22 106:2 112:19
161:24 162:17 163:7
164:12 165:15,20
176:9 177:10 178:21
185:14 212:20 245:4
**management**
31:24 212:23
**manager**
41:24 46:16 146:16,20
147:10,15 148:11,15
157:18 160:10 168:5
197:15 198:6,13,16
199:1 204:19 210:22
211:22,24 213:3
217:7
**manner**
38:19 175:1
**mark**
5:22 9:22 26:13 41:14
78:9 79:23 89:1 92:5
102:19 131:6 211:2
216:11
**marked**
89:17 103:9 197:16
198:4 211:10 238:11

**market**
54:20 55:1,8 57:5,7,23
113:7,19 114:19,22
114:24 115:3,5,7,14
150:17 151:2 154:8
161:13,17,19 225:9
227:12,19,24 228:8
233:21 234:12 244:7
244:12,17
**marketing**
55:11,18 57:13,19
65:18 68:14 120:18
121:1
**marketplace**
66:17 233:18
**markets**
113:24 169:16
**marks**
74:10,16 145:4 146:4
201:24 249:11
**marriage**
251:17
**massive**
39:6 175:3
**material**
48:13 49:4,18,20
69:24 151:20 154:16
155:17 158:21 159:8
169:7,21 200:18,22
200:23 201:8,9
209:23,25 210:12,13
211:21 212:1,11
213:8 215:2,4,14
217:1,25 218:10,12
218:15,19,25 219:7,8
219:14 220:16,19,22
248:3
**materiality**
214:14 215:6
**materially**
47:7,18 52:9 155:12
156:9 157:16 158:18
168:8 213:6 216:25
**materials**
25:9 212:7,20 217:7

**math**
71:16 72:7 73:11
75:23
**matter**
6:11 15:17 32:24
128:19 137:19
193:20 194:15,16
195:3,15 251:19
**matters**
15:19 27:8 129:4
144:12,13 164:6
192:19,22 194:19
196:23 248:3
**mature**
44:7 164:14 166:15
170:24 171:22
172:13 173:11
**matured**
161:1 162:4 163:25
164:14 165:8 166:12
166:22 167:7 170:8
**maturing**
165:17
**maturity**
33:24 59:8 107:14
110:2 116:10 117:5
**maximize**
36:15 37:12 39:3
66:18
**McKane**
26:13
**mean**
31:1,3 33:18,20 36:10
36:18 44:12 50:17
56:13 61:17,17,18,21
72:14 84:23 108:17
113:19 132:22
141:17 144:9,11,13
150:25 165:23 166:1
166:2 171:7,25
180:22 195:2 204:16
214:19 216:1 218:5
223:15,16 230:20
232:10
**meaning**

18:5 44:1,14 46:7
105:4 119:9 149:23
**meanings**
119:14
**means**
30:24 78:23 84:4
105:6 109:2 113:14
115:10 165:21
166:23,25 214:22
**meant**
33:22 63:20 167:7
233:3
**meet**
43:17 173:4 208:4
209:3
**meeting**
24:9 25:1,16,22 26:11
121:10 126:12
133:16 137:14
**meetings**
23:8,8,11 25:2,15
119:13,17
**members**
121:10
**memoranda**
199:5
**memorandum**
34:18 214:4 215:22
217:9,23,24 219:20
**memory**
47:11 50:20 105:14
107:18 144:5 162:12
174:19 236:22
**mentioned**
62:13 121:20 163:19
202:11 236:19
**merely**
43:22
**Merrill**
5:24 6:3 7:13
**message**
110:25
**met**
23:6 43:14,22 92:20
93:1,8 119:11,11

221:18
**meter**
154:13
**methodically**
136:19
**MICHAEL**
4:14
**michael.esser@kirk...**
4:15
**microphones**
74:9 145:4 157:3
243:11
**Mike**
7:7 26:14,17
**MILLAR**
5:12
**million**
22:7 57:14 58:16
77:15,16 78:4,6,8,23
184:11 204:11
**Millstein**
88:23 89:20,24 97:8
97:14
**mind**
83:13 111:12 206:1
228:25
**mindset**
236:14
**mine**
84:9,10 221:24
**minute**
92:4
**minutes**
40:19 74:5 144:25
243:7 247:1
**mischaracterize**
80:8
**mischaracterizes**
80:6
**misheard**
241:14
**misleading**
200:20 201:1,12 210:1
210:16 213:7 216:25
**misrepresentations**

209:24
**missing**
31:25
**misspoke**
235:20
**mistakes**
247:19
**misunderstanding**
84:3
**misunderstood**
119:20 140:2
**Moldovan**
13:4 14:3,8 23:9,13,17
24:3,8,17 25:25
26:22 34:4 137:4
194:25 212:17
223:21
**moment**
19:14 74:8 99:6 145:3
156:24 157:2 230:7
243:10
**Monday**
232:18
**money**
33:9 58:15,21,24 59:4
59:11 88:11 187:1
203:8 229:22
**month**
235:3,18
**months**
173:25 174:2 175:10
175:16 181:7 236:1,3
**morning**
6:1 7:23,24 21:1 80:19
146:15
**motion**
192:4,10 193:25
**motives**
218:6,7
**mouth**
66:24 148:8 228:6
236:21
**move**
18:2 103:15 160:8
169:16 170:13 216:2

**moved**
245:6,15 246:20
**movement**
244:11
**movements**
244:3
**multipage**
41:16 92:7
**multiples**
244:8,9,17
**multiplied**
64:19
**multiply**
63:23 75:24

---

**N**

**N**
1:1,1 2:1 3:1 4:1 5:1
146:1,1,1 252:1
**NAFTALIS**
5:2
**name**
8:3 26:17,18 250:1,2
**named**
32:3
**names**
8:1,6
**narrow**
122:16
**narrowing**
12:5
**necessarily**
167:18 246:5
**necessary**
200:19,23 201:9
209:25 210:13 213:8
**NED**
3:5
**ned.schodek@shear...**
3:5
**need**
16:15,16 28:12 38:6
43:13,21 44:3 58:25
80:10 102:17 117:8
122:25 130:12 169:6

186:3 189:4,9 194:21
210:4 218:4 223:18
226:9,10 230:6,8
234:10
**needed**
40:8 45:25 76:4 205:3
205:5 235:12
**needs**
116:4
**negative**
59:14 175:15 176:7
178:1
**negotiate**
59:10 88:2,4 111:1
114:4 115:4,7,14
143:15
**negotiated**
37:9 55:23 110:21
112:7,9,15,18,23
117:22 135:4 142:6
**negotiating**
18:8 34:16 36:23
82:21 90:16 93:10
109:19 111:21 115:1
117:7 119:25 237:9
240:9
**negotiation**
17:7,8,21 18:10 57:18
94:15 110:4,7,24
114:18,23 116:5
117:12
**negotiations**
57:10 58:18 87:18
90:10 96:13,17 97:17
110:9,10,13,16
111:17 112:13,20
119:5 120:2
**neither**
23:14 39:12
**net**
34:10,10 115:16,16
154:18,20 177:5,7
179:6 214:25 215:1
215:18
**never**

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

21:14 30:3 41:10
54:3 108:25 110:21
115:24 126:10 167:9
196:16 224:19 240:5
**new**
1:20,20,24 2:3,3,3,9,9
2:14,14,19,19 3:4,4
3:10,10,21,21 4:18
4:18 5:4,4,11,11,16
5:16 6:5,5,9,9 58:21
58:24 59:4,11 81:4
81:16,24 114:1,22
184:15 197:18 216:8
251:2,4,9
**newspapers**
28:13
**Nextera**
60:14,18 61:24 62:10
62:11,14,24 64:2,8
65:1,14,23 66:14,21
67:7 68:17 70:6
72:23 75:14
**nice**
67:10
**night**
48:9
**nines**
184:3
**non**
83:18 178:4,16
**noncounsel**
137:2
**nonlawyer**
23:22
**nonstarter**
232:25 233:9
**normally**
202:7
**North**
4:8
**Northern**
27:20
**Nos**
1:10
**Notary**

1:23 7:17 250:24
251:8
**note**
11:24 33:12 42:4
81:15 122:19 191:4
198:9,12 224:12
244:3
**noted**
6:20 249:13
**noteholder**
119:9 120:5 126:22
224:1
**noteholders**
2:13 3:20 22:14,19,22
22:24,24 120:9 191:7
191:14 192:15 193:8
193:14 202:25
224:11
**notes**
2:7 3:8,15 5:10 7:1
11:21 12:12 17:15,16
17:17,18,22,25 25:1
82:6 101:6,7 102:23
104:5,11,13,16 106:8
106:18 109:11,25
117:23,24 120:19,21
121:3,7 124:23
131:13,15,19 132:5
133:14 182:6 203:18
203:22 204:11,22
205:14,16,23 206:10
207:17 239:5
**notice**
10:2,5,10,13 150:10
189:16,23 191:14
192:8 193:15 252:11
252:17
**notices**
9:20
**notoriously**
8:1
**notwithstanding**
53:22
**November**
159:9

**number**
6:13,14 13:6 16:7,19
18:3 21:16 22:12,19
23:1 32:16,18 41:15
42:12 44:9 50:4
71:12 78:10 79:24
80:18 89:2 93:20
102:20 103:23 112:5
126:14,15 140:15,24
181:10 212:9 217:13
221:1 232:20
**numbers**
56:19 58:11 65:5
70:21 71:16 75:4
76:15 77:3 89:3
99:12 156:1,4 204:7
204:7
**N.W**
3:15 4:3

_____

**O**

**O**
1:1 146:1,1,1
**Oaktree**
121:24 122:3 123:8
127:9 136:11 222:13
226:13 239:5 240:1
**object**
12:22 13:20 15:23
19:22 20:9 22:17
34:12,25 35:18 39:24
40:13 44:16 45:3,14
47:10 48:16 49:7
52:21 53:25 54:22
59:24 60:15 64:6
66:3 67:9 69:1 70:18
73:4 77:18 79:2 80:5
82:8 84:5 86:12
87:16 90:11 91:7,25
94:5 97:5 98:11
102:9 106:20 107:17
109:13 115:19
118:12,23 120:15
129:23 130:18 132:8
139:10 143:9 149:11

154:3 161:15 162:6
162:21 164:3,25
165:18 167:8 173:12
176:12 178:18
185:23 186:21
187:14 190:10
191:18 192:17
193:16 195:13
204:24 205:18
207:21 213:14
215:15 217:4 218:14
220:21 221:4 222:7
227:4 228:12,14
232:9 235:7 236:4
237:1 245:11
**objecting**
206:8
**objection**
12:1 127:6 143:6
162:24 163:2,4,12
241:8 242:1
**objectives**
37:11 113:9
**obligated**
129:13
**obligation**
86:10 132:3 174:6
179:3 180:21 187:23
188:1,5,8,12,17,21
188:22
**obligations**
64:21 69:5 167:3
171:21 172:13,16
173:4,10 208:5
**obtain**
34:9,10 53:18,20
**obtained**
54:1
**obtaining**
37:1 182:5
**obviously**
8:7 27:1 30:15 31:7
46:3 56:22 65:8
77:12 101:10,15
113:21 177:6 234:7

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

244:7
**occasion**
120:3,11
**occasionally**
120:17 123:12
**occurred**
29:12 36:2 47:23
52:15 119:17,23,25
138:9 176:22 202:10
203:18 205:16
222:25 243:20
**October**
43:2 47:4,8,17 52:10
74:25 140:13
**offer**
15:18 65:24 211:21
**offered**
57:14 72:24 134:19
203:10
**offering**
34:18 122:4 146:19,22
199:4 212:7 214:4
215:22 217:6,7,9,22
217:23 219:20 223:9
239:2
**offerings**
197:14
**offeror**
218:23
**Offers**
199:21
**officer**
29:8 30:17,18,20 67:2
112:1 192:12,19
193:3 194:7 196:10
209:9 248:9,10,14
**officers**
34:22 55:4
**officer's**
147:17,21 148:3
210:21 211:13 212:8
217:1 243:21
**offices**
1:19 6:8
**offset**

246:17
**Oh**
160:17
**okay**
8:19,20 11:7 12:17
15:5 18:2,15,22
19:13 20:1,12 21:8
21:13,16 23:4 25:14
25:21 26:2,15,20
29:16 30:11 31:2,20
31:21 32:13,23 35:14
37:14,21 38:21 39:10
41:13 43:18 44:19
47:1 49:22 50:13
52:7 54:16 55:22
57:2 59:15 61:13
62:13 65:16 66:11
68:9 70:1,2 71:20
73:10,16,22 74:7
76:10 78:25 80:16
81:12,19,23 82:15
86:15 87:1 88:4
89:15,22 91:14 98:4
99:5 100:3 101:21
103:12 104:25 105:1
110:20 115:12 117:2
119:3 122:16,25
124:19,20 126:13,17
127:14,20 129:10,17
131:1,7 132:23 133:2
134:12 135:23
136:12 138:12
139:25 140:10
141:22 142:2,16,24
144:15 147:14 149:1
150:9,13 151:6,21
153:3,15,22 155:23
159:6,13 160:7
161:22 163:19
166:21 168:19
170:12 172:4 174:22
175:7 176:21 178:14
180:23 181:5,22
182:1,22 183:8 187:2
187:21 188:16 189:7

189:22 190:3,14
193:10 196:20
198:20 199:14 200:9
203:16 204:15 205:9
209:16 211:12,18
212:3 214:1,18
215:21 221:22
222:24 228:4 230:10
231:5,5 232:16
235:13 236:5,19
239:6 240:7,12
241:20 244:13,21
249:6
**old**
27:15 28:14 85:12,25
86:4
**Olympus**
38:9,12,13 39:11,20
45:21,21 57:10 58:7
58:23 79:15 87:11
173:1 209:5
**omissions**
217:1
**omit**
200:23 201:9 209:24
210:12 213:7
**once**
14:14,24 52:12 88:8,8
106:22 107:18
158:21 164:2 171:23
173:14 174:16
187:15 189:12
191:23 194:11
195:14 229:14
**Oncor**
20:19 21:9,11 54:21
55:9 56:14,16,18,20
56:22 60:13 63:11,15
63:21 64:3,4,12,16
67:8 68:19 70:10
75:13,18 151:12
153:12,24 154:9
155:12 156:8 157:16
161:14 173:8 175:16
176:9,16,23 177:9,12

178:2,7,20 179:2
243:23 244:3,5,15,22
246:8,22,23
**Oncor's**
154:17 177:1,22 179:5
**onerous**
116:2
**ones**
216:7,8 218:16 229:8
**one-sided**
219:16
**ongoing**
87:6
**open**
55:15 66:13
**operate**
37:17
**operation**
29:21
**operations**
49:12,15,16
**operator**
6:2
**opine**
195:15
**opinion**
30:6 35:9 166:2
195:21 228:1
**opinions**
51:14
**opportunity**
175:19 176:1 181:1,8
181:25 182:25 185:3
185:16
**opposing**
192:14 193:6
**opposition**
193:11
**option**
124:25 174:5 206:2
**optional**
103:18 105:17 132:3
**order**
200:19,24 201:10
209:25 210:14 245:7

organization
38:17
organizations
155:1
original
143:3
outcome
21:24 67:12 112:24
180:4 233:22 234:13
234:19 251:18
outcomes
22:2
outline
105:25 120:20
outlined
86:22
outset
180:17 187:10 188:6
outside
23:19,24 59:1 61:1
86:25 90:17 109:14
118:13 120:2 163:15
212:19 219:5 238:19
242:8,10
outstanding
68:21,23,24
out-of-court
19:11
overall
67:5 133:20 134:4,6,8
134:12
overlevered
58:20
overnight
154:22
overview
31:14
owe
134:21 183:14
owed
21:19 22:6 59:22 68:7
68:25 186:24 187:8
owned
113:22 151:15,22,25
owners

4:17 228:11
ownership
60:25
owns
151:21

**P**

P
2:1,1 3:1,1 4:1,1,14
5:1,1 10:4,6,11,15
225:6,23 226:2,15,22
226:22 237:4,5
252:12,18
package
201:6 209:23
page
16:11,11 42:7,10,11
42:14,19 80:18,24
81:10 89:20,22 94:21
99:25 103:19,23
123:25 124:1,1,18
126:15 131:4,6,7
148:21 149:2 150:12
160:13 181:21
182:20 199:11 201:4
210:6 211:19 217:12
239:12 250:3 252:2,8
pages
181:22 217:17,18
paid
22:13,21 55:14 68:5
76:17 79:17,20 85:9
107:15 116:16
151:16 180:20
183:19,24
Panossian
123:11,20 127:8
138:19 139:5,15
140:7 142:15 222:18
222:19 223:1,2,3,23
224:10,14,20 242:21
243:4
Panossian's
226:13,20
paper

72:11 73:17,19 75:10
papers
32:18,21 49:24
paragraph
42:12 148:23 149:25
160:9 162:18 163:8
168:4 200:1 201:4
paragraphs
169:4
paraphrase
231:9
parent
39:5 152:11,25 176:18
178:22 180:8
Park
2:8
parlance
36:4
part
15:20 24:20 25:9
29:21 32:6,9 40:16
57:9 67:10 87:21
96:19 104:10 111:17
114:8 120:17 121:1
129:18 131:12 132:5
161:7 182:15 193:2
193:10 231:25
245:14
participated
122:2
particular
108:12 243:19 248:20
particularly
234:5
parties
12:5 38:19 57:22
66:16 71:3 87:18
95:15 96:13 117:13
119:1 138:15 143:15
237:15 251:16
partner
28:17,23 29:4,13 30:1
30:2 166:6,16 196:8
parts
161:5 214:5,11

party
93:10,12 117:10
122:24 123:7 163:15
pass
248:24
passed
208:13
paste
113:13
pasted
113:3
Paul
1:17,18 6:11 7:15 67:1
74:11,17 145:6 146:5
146:21 251:25 222:15
229:19 249:17 250:2
251:10
pay
19:19 22:6 53:2 56:21
57:20 58:21 59:4,22
60:3 68:2,18,20 69:4
69:12 70:11 72:25
80:15 86:10 97:10
99:1 102:8 129:14
132:3 135:19 136:6
137:12 141:5,12
160:24 162:2 170:5
170:22 171:20 172:2
172:11,16,20 173:9
175:3,4 182:6,11,25
183:17,19 185:3
186:4 187:17 188:5,9
188:13,17,21 208:21
payable
50:23 78:3,7 89:25
128:21 130:16
134:15 139:7 140:4,5
203:18
paying
82:20 85:25 87:14,23
98:1 109:12 182:25
183:22 185:3 186:1
186:24 221:13
payment
58:21 71:24,25 72:1

82:7 88:6 91:5,24
96:10 97:3 98:9
103:18 104:19
105:18 106:7,17
178:2,8,21,25 179:4
179:20 180:7 192:14
193:6 202:15,18,19
202:23,23 203:2,3
205:13 231:1 240:19
**payments**
91:11 123:14 180:14
183:14 206:24 207:4
207:7,20
**PE**
244:8
**peer**
244:2,16
**penalties**
89:25
**pending**
8:23 192:5
**Pennsylvania**
3:15
**penny**
67:22,24 72:23
**people**
40:24 55:12,16 106:13
111:11 120:10
158:14 212:17 222:9
229:15 233:16 234:6
234:10 238:19 243:9
**perceived**
175:11 229:18
**percent**
11:21 12:12 16:23
17:16 23:2 56:10,22
56:23 57:2 63:21
64:3,11,19 65:6 68:3
82:3,4 86:3 101:3,4,6
101:7 102:22 104:12
109:3,4 131:14
153:17,18 158:24
183:25 184:11
185:20,20,21 214:19
214:24 215:1,4,12,17

218:24 245:7 246:6
**percentage**
246:2
**perfect**
220:14
**perfectly**
31:21
**performed**
78:14 253:3
**period**
11:22 28:7 29:20 53:5
119:18 134:16
159:15 186:5 205:8
208:25
**periodically**
92:18
**periods**
158:15
**permit**
193:13
**person**
130:7 189:13 240:8
**personal**
140:21,22,25 141:17
156:16 190:25 227:7
241:11 244:25
**personally**
40:24 67:2 110:9
137:7 189:20 195:24
219:18,22,23,25
221:19 222:11,15,20
229:19
**persons**
238:20
**perspective**
118:20 186:19
**petition**
20:6 32:13 49:23 50:8
50:18,19 52:16 53:17
60:19 68:7 151:23
152:4 153:18 157:14
184:24 189:17
208:13
**petitioned**
55:19

**Phelps**
20:24 21:2 53:18
**phenomenon**
244:10
**Philip**
3:11 6:21
**philip.anker@wilm...**
3:11
**phone**
2:4,21 4:19 5:6 93:2
156:22 202:5
**phrase**
234:20
**physical**
49:15
**picked**
156:12
**Pickering**
3:7,13 6:22
**piece**
12:25 72:11 73:17,19
75:10
**pieces**
13:1
**PIK**
50:2 68:24 69:19,20
76:22 82:6 93:7
99:22 101:15 108:23
109:5 187:19 203:2
**PIKs**
57:19 68:25 70:17,24
72:3 73:3 87:4 91:2
91:21,21 92:16 93:3
95:25 96:6,25 98:6
100:5 105:21
**PIMCO**
5:15
**place**
26:9 154:20
**places**
199:7
**Plaintiff**
1:8
**plan**
15:17 95:9 96:9 97:3

98:8 204:21
**planning**
11:14 119:6,18 128:10
128:12 129:9 133:9
137:8 138:10 139:24
142:18 236:18
**play**
130:1
**Plaza**
2:3
**please**
6:18 7:14 8:3 49:19
69:8 74:9 78:10
91:18 134:1 145:3
148:4 176:13 210:24
243:11 247:5
**plug**
73:14
**plural**
61:23 242:21
**plus**
78:21 104:13 131:15
**point**
8:2,14,22 13:25 20:6
22:5,8,9 30:8,8 37:19
38:6 40:7 44:10 46:1
47:2 52:18,19 58:12
66:12 75:1,8 90:25
93:22 100:13 110:22
115:1 119:6 128:14
151:11 152:21
157:13 168:11 170:2
170:15,18 171:16
172:8 173:5 174:13
175:21 185:14
193:21 194:4 197:1
206:15 207:22,24
208:10,22,25 219:1
229:9 231:5 235:10
236:18 247:13
**pointed**
27:23 46:14 233:12
**points**
40:1,5 90:13 94:19
96:7 97:1

portfolio
  114:2 229:3,6,10
portion
  26:12,21 60:14
portions
  157:23
portrayal
  165:25
position
  72:15 90:8 95:21
  98:22,23,24 130:4
  132:14 134:21
  194:14,16 240:13,15
  242:4
positions
  97:18 193:19
positive
  59:12 178:1 202:21
  246:14
positively
  246:18
possibility
  236:14
possible
  19:11 34:15 37:2
  62:10 65:24 115:17
  119:25 221:2
post-bankruptcy
  35:21 85:9 138:10
post-college
  28:16
post-emergence
  83:3 85:7
post-petition
  69:20 70:17,25
pot
  179:22
potential
  55:24 97:13 125:15
  128:10 218:25
  230:17
potentially
  39:6 90:15 125:10
  233:25
practicing

30:2
pre
  119:19
precedent
  113:7 114:11 225:8
  227:12,20,24 228:9
  228:10 238:4
precedents
  114:1
predicate
  68:4
preliminary
  199:19 210:10
premise
  39:1 58:23 84:25
  91:15
premium
  19:19 60:2 72:2 80:15
  82:7,18 85:25 86:4,7
  86:11 87:14,24 88:5
  88:7 102:8 104:14
  105:19 106:8,18
  107:14 109:12
  129:14 131:16
  134:15 135:20,21
  136:6 137:12 139:6
  140:4 141:5,13,24
  142:8 193:7 221:14
  225:6,13,23 226:3,15
  226:23 230:15 231:2
  237:5,20 239:17,19
  239:24 240:17,20
  241:2,4,5,22,24,24
  242:25
premiums
  59:22 68:22 79:18,20
  82:13,20,24 83:9,15
  83:16 84:11,12,14,17
  85:11,15,18 86:21
  88:3 102:15 109:24
  123:18
prep
  133:10 142:5 232:1,7
preparation
  23:18,23 25:2,6 81:6

prepare
  23:5
prepared
  20:21,23 21:4 68:18
  79:12 80:20 144:19
  144:22 167:11
  199:16
prepayment
  89:25
presence
  23:19,24
present
  5:19 160:12,22 161:8
  163:22 170:3 181:2
presentations
  39:18 45:8,9 54:7
  91:21 172:24
presented
  80:21 81:8 91:2 94:4,9
president
  29:7 30:16,19 248:13
  248:17,19
pressure
  67:19
presume
  94:3 152:23 153:3
  217:20 218:8
presumed
  56:1 58:7 59:20 215:1
presumption
  179:19 217:21
pretty
  50:4 215:20 236:21
  239:10
prevail
  21:20
prevailing
  70:7 72:22
prevent
  195:10,25
previously
  146:9 222:14 247:14
pre-bankruptcy
  34:20 35:15,16,21
  36:3,4,8,23 54:24,25

55:8 57:6 139:24
Pre-filing
  119:21
pre-petition
  60:11 61:24 62:10
  68:15 76:21,22
  152:22 161:13
price
  66:10 67:15,16,25
  68:19 69:11 70:11
  104:11 131:13
  134:23
PricewaterhouseCo...
  28:23,24 29:4
primary
  182:4
principal
  11:20 12:11 38:23
  68:6 70:14,16 76:22
  104:12 107:15
  116:15 131:14 151:9
  186:15
principals
  93:2 119:12
principles
  179:24
print
  231:16
prior
  53:16 59:13 60:19
  80:6,9 85:22 104:9
  106:8,19 107:13
  110:1 114:16 117:4
  124:25 131:11 132:6
  134:16 137:8 149:15
  156:15 172:1 180:25
  188:2 189:16 205:9
  205:10 210:9 222:13
  222:17 228:9 233:13
private
  229:2
privileged
  133:24
pro
  46:25

**probability**
169:12
**probable**
160:24 162:2 163:24
    169:10 170:6
**probably**
25:17 50:22 72:16
    109:19 120:23 128:8
    128:11 129:1 130:19
    142:14 175:16 184:2
    184:9,18 194:11,12
    206:7 232:4 238:2
    244:19
**problem**
161:16 186:4 202:4
    224:7
**proceed**
7:21
**proceeding**
1:8 20:5 24:4 54:6
    59:2 247:4
**proceedings**
6:14 61:11
**proceeds**
180:21
**process**
9:2 55:11,18 65:9,18
    66:14,20 67:3,12,13
    119:18 128:24
    212:13 213:22,24
    216:6 220:2
**produced**
148:4
**production**
148:2
**profit**
29:25
**program**
59:12 154:12
**prohibited**
192:1
**Project**
38:9,12,13 39:11,20
    45:20,21 57:10 58:7
    58:23 79:15 87:11

**projected**
208:3 215:12
**projecting**
202:14
**prompted**
232:6
**proposal**
63:1 65:14 67:7 93:19
    230:11
**proposals**
59:20 62:25 87:3,10
    91:3
**propose**
59:17 98:7
**proposed**
98:17
**proposition**
219:17
**prospective**
120:12
**prospectus**
199:19 209:21 210:11
    216:19
**protection**
111:3 143:20
**protections**
233:16
**provide**
27:6,10 31:14 69:12
    95:9 96:9 97:3 98:8
    106:7,17 133:23
    148:5 179:6
**provided**
51:14 79:8 96:18
    107:12 109:24
    157:17
**provides**
67:5
**providing**
105:18
**provision**
34:8 95:19 102:6
    103:17 105:17 109:9
    109:10 112:3,10,14
    112:14 117:16

122:20 124:12 125:4
    125:5 127:5,17 128:4
    129:20,21 133:11
    191:5
**provisions**
18:6 34:1 106:1
    107:19,24 108:4,6,9
    110:12 111:3,20
    112:25 118:19 124:5
    124:9 125:8,16 126:1
    132:21 133:4 142:12
    142:22 234:10
**public**
1:23 7:18 63:13 159:2
    166:18 232:24 233:8
    233:15 244:16,23
    245:14 250:24 251:8
**publicly**
129:3 154:6
**published**
159:19
**purchase**
60:12 62:11
**purchasers**
42:17
**purely**
8:4 35:10
**purpose**
79:4 97:25 98:3 171:2
    182:5,18
**purposes**
21:5,7 43:9,12
**pursuant**
9:19 10:3,6,10,14
    55:23 124:3,4,17,22
    216:20 252:12,18
**put**
39:13 51:9 66:23 70:9
    71:16 72:19,20 78:11
    79:3 86:9 87:11
    91:23 98:6 106:14
    107:7 119:22 124:15
    132:13 138:8,24
    148:7 178:16 225:15
    228:5 234:17 236:15

237:4
**putting**
137:5 205:10 233:20
    236:20
**PwC**
28:6,9 29:14
**P-a-n-o-s-s-i-a-n**
223:3
**p.m**
145:7,9 146:6 201:20
    202:1 232:19 243:12
    243:16 249:12

_____

**Q**

**qualifications**
55:20
**qualified**
127:21
**qualitative**
215:2,6
**quality**
245:21
**qualm**
73:12
**quantitative**
215:5
**quarter**
159:4,18
**quarterly**
123:14 159:1,25
**quarters**
109:4
**question**
8:15,18,23 9:10 16:13
    16:16,20 24:2,11
    28:4 30:12 32:24
    35:3 54:18 55:2
    60:22 61:22 62:7
    65:21 69:23 70:3
    71:23 72:18 82:16
    91:13,17,19 96:3,22
    97:25 109:20 118:2,9
    119:21 120:8 122:15
    127:24 130:13
    134:14 156:2 159:21

159:23,24 164:11,19
168:1,17 169:25
171:1,6,13 178:15
179:11 182:20 188:2
189:8,14 192:24
195:19 197:6 199:9
207:14 213:17,18
218:5 220:16 221:23
223:14 230:5 235:14
235:23 241:12,16
244:15 246:13
**questions**
14:9 15:1,10 18:24
35:4 67:23 80:7
94:18 121:21 125:8
138:7 146:15 181:19
194:22 226:11
227:23 246:25 247:5
249:2,3,5
**quick**
16:3
**quickly**
28:11 80:17 89:13
**quite**
239:17
**quote**
11:19,22
**quoted**
133:17 246:2

_____
**R**
**R**
2:1 3:1 4:1 5:1,6 10:3
10:6,11,14 146:1
251:1 252:12,18
**raise**
175:20 188:13
**raised**
65:8 83:9
**raising**
32:10 33:1 36:2 37:14
84:19
**ran**
29:21 208:12
**random**

**171:**3
**range**
75:3 184:9,20
**rate**
60:2,4,6 82:22 116:25
154:18 184:1,2,16,22
185:25 186:2,9,16
245:18
**rates**
33:25 83:7 115:5,8
116:2 178:23 179:5
245:16
**rationale**
186:15
**reach**
57:21 60:10 61:8 62:5
62:9 68:13 138:15
**reached**
61:23
**reaching**
170:1
**read**
26:24 83:19 90:5
95:15 98:15 131:22
150:17,21 161:2
163:20 164:1 183:5
198:8 201:13 210:17
214:5,6,8,11,12
233:5
**reading**
95:8 154:13 160:21
179:23 234:12
**real**
9:3
**realize**
168:19 170:22 171:19
172:10
**really**
8:5 21:10 32:24 33:22
35:7,8 36:24 103:10
120:1 132:1 143:18
153:23 177:18
186:10 223:16
**Realtime**
1:22 251:7

**reason**
14:2,18 15:8 27:5
44:22 45:23 83:22
84:1 129:11 155:9
156:25 179:2,16
188:16 190:19
192:20 239:22
247:12 250:5,7,9,11
250:13,15,17
**reasonable**
13:19 86:19 134:23
174:5 209:11,14
235:10,11
**reasonably**
107:9 151:19
**reasoned**
159:20 161:20 166:2
**reasons**
11:1,11 87:19 88:17
111:19 178:20 250:3
**REATH**
5:8
**REBECCA**
2:10
**recall**
19:23 20:17 22:2,4
24:15 29:9 47:22,25
52:13 58:13 59:25
60:7 63:5 71:12 75:5
76:16 80:12 83:12
87:5 92:2 93:18
94:11,16,18 100:24
102:10 107:19
109:18 120:17,20
121:4,10,12 122:4,17
125:14 126:11,20
127:1 128:6,14 129:2
137:17 140:3 152:9
152:16 158:4,5,11
159:13 162:14 164:9
167:22 172:8 177:21
184:19 204:6,14,17
205:3,20 206:1
208:23 214:10
221:19 232:13

**recalling**
32:2
**recapitalization**
81:21
**recapitalize**
80:24
**receive**
104:18 131:20 189:16
**received**
66:16 191:19 227:25
**recess**
74:14 145:9 201:22
243:14
**recognize**
9:23 10:16 103:8
147:7 211:9 231:18
231:22,23 232:4
**recognized**
147:13
**recollect**
79:19 80:19 106:5
140:6 198:3
**recollecting**
105:23
**recollection**
39:23 40:17 51:15,19
52:2 59:18 79:22
83:21 84:9,9 85:23
88:19 94:9 95:24
96:5 100:22 101:9,20
102:5 105:15 106:10
106:16 122:8 125:18
126:4,5 127:19
137:21 147:18
157:11 159:7 170:1
170:13,15,17 171:15
180:6 184:13 202:22
208:11 211:1 223:18
232:5 233:2 237:21
238:7 239:22 240:4
246:3
**recollections**
170:10
**recommendation**
86:23

**recommendations**
212:21
**record**
6:19 11:25 28:1 56:12
  63:13,18 74:13,19
  79:2 98:15 104:17,17
  111:25 123:1 131:19
  131:19 135:9 136:20
  145:8 146:7 156:24
  157:1,6 179:17
  201:18,21 202:2
  203:19,20 226:8
  229:2 239:10 243:6
  243:13,16 245:14
  249:12 251:13
**redeem**
104:10 131:12
**redeemable**
124:24
**redeemed**
102:6 104:13 106:8,19
  107:13 131:15 143:4
**redeeming**
132:5
**redemption**
33:25 103:18 104:11
  104:15 105:17
  106:18 122:20 124:3
  129:19 131:13,17
  132:4 241:4,23
**redemptions**
104:6
**reduce**
56:24 85:2 178:23
  179:4
**reduction**
81:25 82:24 175:16
**refer**
8:1 109:2,3
**reference**
131:5 230:16
**referenced**
136:11 176:8
**referencing**
33:15 185:2

**referred**
100:1 142:7
**referring**
37:4 45:16 46:15,20
  59:6 82:23 83:14
  116:21 123:8 220:9
**refinance**
85:17 87:13,22 109:11
  135:19 136:7 137:10
  139:8 141:3,10
  221:12
**refinanced**
59:21 83:5 85:6,24
  140:5 180:16 240:20
**refinances**
133:13
**refinancing**
11:19 12:10 85:10
  180:22 185:19
**reflected**
64:9 97:14 117:23
**reflecting**
65:21
**reflects**
22:12
**reframe**
130:13 195:19
**refresh**
47:11 50:20 100:22
  162:10 174:19
  210:25 238:7 239:22
**refreshes**
79:21 95:24 96:5
**refusing**
193:12
**regarding**
127:4 128:4 140:7
  146:17 199:4
**registrant**
218:23
**registration**
199:18,20 200:2,16
  209:22 213:5
**Regulated**
154:5

**regulator**
178:23 179:4
**regulators**
234:7
**regulatory**
174:1 179:24
**reinstated**
19:21
**reinstatement**
192:1
**reinstating**
194:9
**reinvent**
229:16
**REIT**
54:10
**rejected**
173:21
**relate**
181:20
**related**
1:9 12:5 198:11 223:8
  243:18 251:16
**relates**
198:16
**relating**
19:15 21:17 221:2
  223:23
**relations**
32:5
**relatively**
154:1
**relevant**
14:6 16:7,18 19:7
  21:22 104:17,18
  131:19,21 194:19
**relief**
192:5 193:13 203:11
**rely**
35:23 106:12
**remaining**
82:21 83:4 84:14
**remains**
183:12
**remember**

26:18 29:11 47:12
  120:19,23 123:13
  142:13 204:1 208:8
  214:6 227:13,14
  232:14
**remind**
221:25
**remote**
236:13
**renegotiate**
59:5 86:3
**renegotiated**
122:10
**reorganized**
19:16 93:15
**rep**
43:9,12 53:13 148:20
  163:3
**repay**
82:12 187:11,22,23
**repayment**
11:20 12:10 33:3
**repeat**
91:18 182:2 241:18,19
**repeatedly**
186:14
**rephrase**
8:16 69:3,8 72:18 96:2
  176:13 193:1 235:23
  236:5 241:16
**replace**
186:25
**replacing**
183:1 185:4
**report**
30:12 31:18 33:4
  54:12
**reported**
33:17 220:5
**reporter**
1:22,23 7:12 9:4 251:7
  251:8
**reports**
32:2
**represent**

6:24 13:2 32:19,20
39:15 65:5 104:22
147:23 194:20 221:9
237:16 239:18
**representation**
41:11 43:14 44:20,23
45:1 48:2 81:2 149:9
149:20 157:17
160:11 161:18,24
163:8 165:15 167:14
167:15,17 168:4,9,25
171:9 174:24 199:15
199:25 204:19
213:12 238:25 239:9
**representations**
40:8,16,22 41:2,6,8
46:7,18 48:5 52:3
146:17 148:10,14,17
148:23 149:17
162:17 168:3 198:25
199:4,11 209:21
211:23 212:4,10
213:2,12 245:5
**representative**
7:9 9:16 10:21,25
11:10,18 12:9 14:13
14:23 15:22 121:5
126:6 140:21
**Representatives**
93:5
**represented**
44:25 48:11 75:1
92:14 219:6 239:1
**representing**
43:5 44:12 150:6
216:23 219:12,21
**represents**
42:16
**reps**
42:18 163:16 213:19
**request**
76:9 110:23 224:23
227:2,6
**requested**
54:3

**require**
166:13
**required**
40:15 48:1 160:24
162:2 170:5 178:9
187:11,17,21 200:18
206:25
**requirement**
179:3
**requirements**
102:13
**requires**
31:9 70:21
**rescinding**
191:16
**rescission**
195:12 196:1
**reserve**
79:10,12
**resolution**
203:14
**resonates**
185:14
**respect**
10:25 11:10,19 12:9
12:19 13:6,9,17
14:17 15:6,18 19:24
20:19 31:5 33:12
46:4 51:10 62:18
96:21 112:21 136:11
138:17 146:18 149:9
154:9 166:20 167:2
193:19 224:23 239:2
239:4
**respects**
57:12 212:1,12
**response**
12:2
**responses**
9:6
**responsibilities**
15:4 31:4,12,15 33:13
34:14
**responsibility**
31:19 32:8 33:1

**responsible**
14:15
**responsive**
15:10 69:23
**rest**
50:1 61:19
**restate**
16:12 49:19
**restructuring**
19:1,11 55:23,25 67:2
81:13 93:10 192:12
192:18 193:3 194:6
247:22 248:9,14
**result**
12:4 67:3,20 175:17
182:24 215:11
**resulting**
111:1
**results**
158:2,2
**resumed**
146:9
**retained**
53:23
**retired**
82:6
**retirement**
85:22
**reverse**
205:15
**review**
25:5 189:10 214:2,3
**reviewed**
81:7 167:10,20,21
191:21
**reviewing**
61:11 212:19
**reviews**
15:3 113:6 212:22
**revisions**
239:16
**rhayes@foley.com**
2:10
**RICHARD**
4:9

**richard.howell@kir...**
4:10
**right**
9:17 11:15 13:15
16:13 18:19 20:3,20
21:5 22:23 26:19
28:7 32:10,16 33:4,9
34:11,24 39:14 40:5
40:12,25 41:25 42:6
43:2,9,23 44:6 48:2,9
48:22,24 49:6,13,17
49:18 50:1,3,8 52:5
53:19,24 54:21 56:2
57:6 58:9 59:2 62:25
63:2,4 65:14,18 66:2
66:22,25 68:7,16
69:15 71:23 73:3
75:15,25 76:7,8,12
77:4,14 78:2 80:17
81:17,20,25 82:7,11
83:10 84:4 86:11,16
86:20 87:7,15,24
88:7,23 91:6 92:16
93:6,11,15,18 94:1
99:11,13,16,17,19,20
99:24 100:10,14,18
101:2,8,13,19,25
102:2,8 103:14 105:9
107:16 108:24
112:22 115:14,18
116:11,16,25 117:5
118:4,11,21 124:6
129:15 130:24 131:2
132:7 134:9 140:8,17
147:19 148:12,17,24
149:10,25 151:12,22
151:23,25 153:7,12
153:19 160:21 161:9
161:14 162:19
164:17,24 165:2,9
166:7 167:17,20
168:12 169:24 175:8
175:12 176:8,11,19
176:24 178:17
179:13 180:17 182:8

183:6,11 184:5,5,12
184:24 185:22
188:23 189:1 192:15
197:9,17 198:22
199:10 201:1 202:16
202:19 203:24
204:13 206:13 207:1
207:6,20 208:5 209:7
209:12 210:2 212:1,2
214:20,21 215:8,14
217:3 218:13,20
220:20 223:7 224:20
227:20 228:13 229:7
230:20,23,24 234:3
234:24 235:5,6 236:3
236:14 244:18
245:10
**rights**
79:11 104:16 117:4,9
131:18
**ring**
203:23
**ring-fence**
64:16
**rise**
243:23
**risk**
31:24 178:22 214:8
215:22 216:5,6
217:11,25 219:8
220:19,22 221:1,10
235:9,10,12
**risks**
218:1,10,12,15,19,25
219:14 220:16,19
233:13
**road**
84:18 114:5
**Robert**
5:23 6:3
**Rockefeller**
5:15
**role**
19:2 219:22
**room**

137:21
**ROPES**
2:17
**ROSEN**
4:16
**rough**
75:19 99:12
**roughly**
22:6 56:7 64:15 99:15
99:18,21
**rounds**
203:5
**RSA**
18:25 56:3 61:12 65:3
65:9 69:3 93:13
95:18 96:18 135:6
182:15 183:17
**rule**
216:20
**rules**
183:18 188:11 200:4
**run**
53:6 175:11 207:25
208:20
**running**
172:15
**Rush**
7:3

—————————
S
—————————

**S**
2:1 3:1,5 4:1,9 5:1,17
146:1,1,1 252:6
**Sabin**
5:17 61:14 162:21
164:25 206:7
**Sabin's**
162:24 163:2
**sake**
67:22 77:14
**salable**
160:12,22 161:8,20,25
163:22 169:14 170:3
**sale**
61:25 62:4 175:3

**sales**
173:15,17
**San**
4:13
**sat**
23:9,14,14 24:9
234:13
**satisfied**
44:13 150:6
**satisfy**
163:15 176:10 212:7
246:12
**satisfying**
213:11
**savings**
97:14 186:16
**saw**
53:1 93:22 172:15
**saying**
7:25 127:22 134:10
152:3 154:25 156:20
189:6 200:1 234:12
**says**
83:7,12 84:11 89:24
90:6 95:17 97:9
98:14,15 99:4 100:2
104:8 124:3,7 131:10
132:15 183:7 200:13
201:2 215:3 216:19
**schedule**
193:2
**SCHODEK**
3:5
**Schorr**
1:21 7:13,18 9:5 251:6
251:25
**Science**
27:19
**scope**
12:6 108:21 109:15
118:13
**SEC**
200:4 214:21
**second**
5:2 8:21 9:25 10:2,9

25:22 26:3 42:5 50:2
61:15 63:2,7 68:23
69:18 70:15 72:1
76:20,21 81:24 82:4
82:5 83:6,7 85:4
95:7 99:19 101:10,19
108:23 110:16,18
122:3 123:9 125:24
136:10 137:5 138:18
139:16,18 160:8
183:15,22 187:19
201:18 207:6 223:9
237:18 239:5,19,25
240:16,18 252:10
**secondly**
163:23 177:9
**seconds**
73:2 232:20
**section**
18:13 104:3 109:9
112:4 124:4,5,23
125:9,17 126:1,14,22
127:16 129:20,22
131:2 133:12 149:24
216:5 221:10 237:19
239:11,25
**sections**
18:12 129:25 130:8
132:12 133:17
**secured**
102:23
**securities**
160:2 199:17,20 218:3
218:23
**see**
9:23 18:3 26:24 42:10
42:12,15 43:24 44:8
51:1,6 52:12 60:11
75:4 79:21 80:23
81:12,21,23 82:2
84:24 95:1,5 96:4
104:2,5,8,20 124:2
144:5 146:22 148:22
168:15 173:2 181:8
182:19 190:22

198:15 199:2,14,22
200:9 201:3,16
232:16,23 239:15
**seeing**
22:4 166:3 168:22
233:22
**seek**
34:14 87:12,21 139:8
161:12
**seeking**
35:8
**seen**
10:18 196:11,15,16,20
197:7,8 232:11
238:23 240:5
**sell**
57:10 173:8
**selling**
174:4
**semiannual**
123:15 206:24 207:5
**semicolon**
200:11
**send**
73:21,24 192:7 193:14
**senior**
30:15 102:23
**sense**
9:12 62:3 73:13 113:8
162:12 179:18
185:10 224:8
**sensible**
164:20
**sensitivity**
228:20
**sent**
74:23 98:13 190:1
191:14 232:17
**sentence**
11:5,8 83:8,18 95:8
230:2
**separate**
23:7 110:4
**separates**
43:20

**September**
55:21 140:12 232:18
**sequitur**
83:18 178:4,16
**series**
39:18 42:18 67:23
79:6 125:7 229:3
**serious**
40:21
**seriously**
148:17
**serve**
36:16
**service**
30:4
**services**
29:18
**set**
18:12 98:25 160:9
162:17 163:8 246:25
251:11,21
**setting**
113:25
**settle**
22:14 57:15 70:25
134:22
**settled**
22:19,25 23:2
**settlement**
18:19 77:22 90:17
95:19 96:18 97:16
134:19,23
**settling**
22:22
**seven**
32:3 76:24 77:1
**shaking**
9:3 203:22
**SHANKWEILER**
5:22
**share**
34:23
**shareholders**
34:24
**sharing**

176:18 178:3,13
**SHEARMAN**
3:2
**sheet**
48:21,23 50:21 51:9
52:8 72:7 94:25
150:15 151:1 155:11
157:22 158:6,9 159:5
246:8,14,20
**sheets**
91:3 155:16
**SHELLEY**
3:22
**short**
53:5 174:5 186:5
**shortfall**
180:12,13
**Shorthand**
1:22 251:7
**short-circuit**
132:25
**show**
52:1 78:18 79:20
80:10 102:16,18
107:4 114:24 140:11
167:1 180:23 210:5
210:23 221:5 224:18
231:6 238:5,6 239:7
**showed**
134:3 149:16 167:12
181:3 208:9,20 209:2
231:25
**showing**
224:17
**shown**
26:21 93:19 197:14
**shows**
82:2
**SHRIVER**
2:2
**shut**
160:15
**side**
2:8 21:12 29:17,18
38:16,25,25 48:22,24

51:8 52:8 56:18
57:11,14 58:9 61:18
62:4 64:21 76:13
87:20 88:10,20 96:15
128:15 129:6 137:6
155:2 219:12 223:6
**sides**
48:20
**sight**
219:2
**sign**
30:5 40:23,23 65:13
167:15
**signatory**
147:24 148:9
**signature**
211:16,16
**signed**
45:4,10 46:18 66:1
95:18 210:20 212:8
247:22,25
**significant**
90:3 93:9 151:15
179:16 183:20 204:4
204:8
**significantly**
59:14 184:21
**signing**
66:5 212:24
**silly**
185:11,13
**similar**
28:4 46:16 48:4
**simple**
179:11
**simply**
16:17 82:24 109:10
113:2 197:5
**single**
34:7 88:18 153:9
**singular**
69:17
**sir**
12:15,21 19:2 30:13
43:2 76:5 81:21 95:2

187:10 211:12
219:17 239:13
247:11 249:9
**sit**
15:16 47:18 66:19
67:14 71:11,17 106:5
157:10 159:6 168:7
168:21 172:4,7
247:15
**sitting**
26:19
**situation**
117:19,20 137:6 173:1
185:24 196:24
203:12
**situations**
231:4
**sivan@kasowitz.com**
3:22
**six**
32:4
**Sixth**
6:4
**sizable**
114:11
**size**
33:7,8
**skip**
19:13
**skis**
194:12
**slight**
23:3 31:3
**slightly**
71:21 141:23
**small**
174:13 231:16 237:5
**sold**
152:4 173:19
**sole**
97:25 98:2
**solicit**
58:5 62:19
**solicited**
61:4 62:21

**Solutions**
5:24 6:4 7:13
**solved**
202:4
**solvency**
40:16 41:11 43:8,11
46:5 48:2,19 49:3
51:14 146:17 148:20
149:8,23 150:3
157:23 172:18
174:25 198:25
243:19
**solvent**
39:22 40:3,11 43:6,7
44:13 45:1,11 48:12
80:23,24 149:22
175:23
**somebody**
26:16 56:20 114:3
125:11 133:17,18
**sooner**
186:24
**sorry**
16:9,12 20:25 28:25
32:17 44:5 49:19
52:23 64:3 69:2 77:6
84:7 102:24 119:20
123:25 131:5 135:5
136:18 138:21 159:9
159:10,16 160:14
164:4 165:1 170:16
178:12 179:9 180:19
193:1 195:17 197:17
205:10 217:5 225:20
226:7 228:14
**sort**
18:5 29:18 35:5 48:8
142:3,5 197:2 218:9
245:1
**sought**
34:9 65:17 128:19
137:10 217:22 218:2
220:18
**sound**
99:11 184:12 193:20

203:24 204:13 245:9
**sounded**
91:14
**sounds**
99:12 140:17 184:5
194:2
**source**
237:14
**sources**
160:5 228:1
**so-called**
129:14
**speak**
23:17,22 51:22 57:25
97:20 105:10 108:2
111:11 135:17
158:13 220:6 222:8
224:21 241:10
**speaking**
6:3 115:4 118:25
154:23 244:10
**speaks**
144:7
**specific**
16:21 17:1 18:20,23
62:7 82:25 94:8,17
125:8 128:13 133:24
137:18 143:12 152:6
170:9 174:17 175:1
175:18 176:15
205:20 207:15
230:16 244:2
**specifically**
21:14 52:14 75:6
88:10 90:23 92:2
93:21 94:16 129:24
154:9 156:14 158:11
167:22 191:20
193:17 203:10 208:9
213:2,21 214:10
223:8 224:22 248:21
**specified**
106:19 150:7
**specifies**
147:16

**speed**
192:23
**spend**
8:11 37:24 103:13
186:10 243:7
**spent**
38:1 40:18 186:11
**spoke**
93:2 137:20 224:20
241:15 242:9
**spoken**
24:6,13 242:10,12,15
242:16
**sponsor**
113:22
**sponsors**
34:24 228:11,20 229:2
**spot**
16:14
**spread**
228:23
**ss**
251:3
**stable**
153:25 154:1,23
**stack**
71:18 76:19
**staff**
73:24
**stalking-horse**
66:2,6,7
**stamp**
92:8 94:21 103:2,21
181:14
**stamped**
41:20 80:3 89:7 92:11
103:6 147:4 197:25
211:7 216:15 231:14
238:14 252:23 253:7
253:12,17,22 254:3
254:13,18,23 255:3,7
**stamps**
41:17 147:1 211:4
**stance**
111:22

**stand**
13:12 164:7
**standpoint**
62:23 116:24 117:3
173:22 246:8
**stands**
110:3 148:14 168:2
**start**
7:25 110:6 138:23
147:7 171:8,12
208:17 214:2 217:11
224:17 233:20
**started**
28:22 58:12 65:9
241:13
**starting**
16:5 27:17 170:18
171:16
**starts**
16:11 234:12
**state**
1:24 83:24 111:11
157:25 200:23 201:9
210:13 251:2,9
**stated**
97:23 107:13 110:1
117:5 165:19 186:14
200:18
**statement**
45:12 154:2,5 167:1
186:18 193:22
199:18 200:2,16,17
200:22 209:22
210:12 213:5
**statements**
29:25 47:21 50:16
51:7 52:13 159:2,17
160:1 166:18 168:15
200:20,24 201:8,10
210:1,14 212:15
216:7
**states**
1:2 6:15 43:17
**static**
169:18 176:3

**stating**
14:5 24:24 80:22
**status**
54:11
**stay**
192:1,6,6 193:13
194:8,10 196:4
**steps**
55:7 69:10 70:5
**STERLING**
3:2
**stipulate**
79:12 131:25
**stock**
20:17 21:6 56:22
153:14,16
**stopped**
178:21
**strategic**
58:1 68:14 117:18,19
**strategics**
58:3
**strategy**
11:5,14 16:1 66:8
**Street**
1:20 3:9 4:3,13,17
**strongly**
66:5
**structure**
177:11
**struggling**
98:16
**stuff**
160:17
**subject**
18:24 84:16 101:7,11
101:16,23,24 104:16
131:18 135:2 136:25
195:3
**subjects**
141:24 180:15
**subparagraph**
42:22 104:6 124:16
149:24 174:25
**subpart**

168:10
**Subscribed**
249:19 250:19
**subsequent**
139:17 168:11 171:4
237:18,22
**subsequently**
135:18
**subset**
218:11
**subsidiary**
39:12
**substance**
46:15 90:7 128:3
**substantial**
152:9,13,14
**substantially**
31:5 57:16 154:14
**subtract**
64:14
**Successor**
5:9
**sufficient**
37:17 68:20 69:12
70:11 174:11 180:9
**suggest**
33:18 111:18 150:1
171:7 195:2 218:22
244:19 246:4
**suggested**
87:19 88:9 90:13
179:13
**suggesting**
185:13 218:6 239:16
247:6
**summary**
191:23
**summer**
234:21
**support**
19:1 46:8 55:24 93:11
209:4
**supported**
209:10
**supports**

179:25
**supposition**
227:21 238:9
**sure**
8:13 12:25 13:14 14:8
14:25 16:15 17:3
31:21 33:10 41:1
46:5 47:15 48:6
51:12,20,24 56:11
59:7 62:17 63:17
64:23 73:15 74:1
75:11 88:14 91:20
93:22 94:20 97:12
107:3 111:24 113:6
113:19 115:8 117:1
130:10,19 133:23
151:14 156:11
172:19 181:4 189:2
205:22 219:6 221:7
225:17,18 233:6
237:11 246:17
**surprised**
231:22
**swear**
7:14
**switch**
180:15
**sworn**
7:17 146:10 249:19
250:19 251:12
**synonym**
155:4
**S-4**
199:18

---

**T**

**T**
1:1 38:25 88:10,20
146:1 251:1,1 252:6
**table**
70:9 111:21
**take**
6:10 8:21 16:3 18:9,23
24:20,25 26:20 31:4
34:6 37:18 39:16

40:21 44:1 45:24
55:7 60:9 63:23 69:9
70:5 74:6 81:1 89:12
89:14 97:24 112:18
115:10 116:13
124:15 144:10 145:1
148:21 149:6 154:20
159:22 168:20
185:15 188:12 192:9
196:5 198:10 199:10
201:3 203:2 210:6
213:24 244:3 246:25
247:5
**taken**
74:14 97:18 163:5
173:16,25 181:17
201:7,22 243:14
245:5 254:9
**takes**
174:2
**talk**
9:8,9 19:5 31:17 35:14
56:19 121:2 160:7,18
**talked**
19:4 115:23 122:22
123:5,18 135:24
155:16 172:23
222:14
**talking**
36:1 41:25 56:19
119:16,19 120:1
122:12 123:2 126:6
133:5 135:3 138:13
163:12 175:10 188:1
204:2 215:17 239:3
243:8
**tandem**
132:12
**tape**
74:5,10,16 144:25
145:5 146:4 201:24
249:11
**tax**
21:4 31:23 39:6,8 61:2
61:7 173:19 176:18

177:6 178:3,8,12,21
178:24 179:4,20
180:6,14
**taxable**
173:24
**taxes**
177:16
**TC**
97:9
**TCEH**
2:12 21:10,12 38:18
57:11 58:14 85:2,7
87:4 90:8 96:1,6,25
101:23 107:24
110:16,18 121:23
122:3,10 123:9
125:24 128:15 136:9
137:5 138:18 139:16
140:8 222:5 223:6,9
223:24 226:6,14,24
227:1,5 234:2,23
239:2 241:1,5,20,25
**team**
109:19 113:4,10,11,11
113:12,18 123:16,16
123:19 127:10,22
132:15 141:14,19
163:17 164:8 165:23
167:11 219:11 220:8
222:9,12 227:10
237:9 240:9
**teams**
158:14
**technical**
64:12
**technically**
29:24
**technology**
31:24
**telephone**
249:5
**tell**
16:5 22:1,1 32:16 35:3
37:8 42:19 60:21
66:24 81:2 84:24

95:8 97:21 99:14
105:2 106:13 111:13
119:4 128:12 130:7
131:3 132:10,16,23
140:1,10 141:19
142:24 144:18
147:20 153:3 157:21
161:22 167:5 181:24
195:8 200:11 217:20
225:1,4 227:10
231:17
**telling**
63:19 66:23 112:8
138:4 183:10
**temporal**
208:8,24
**ten**
28:15
**tend**
114:5
**tender**
210:10
**tends**
114:7 235:9
**tenor**
33:24
**tense**
63:10
**term**
34:7,20 35:11,20,24
36:1 38:8 62:15 91:2
94:25 108:4 114:25
117:13 128:24
141:23,25 142:4,7
143:8,17,19 144:3
150:24 155:5 158:21
167:5 174:6,17,18
214:14,15 224:6
225:7
**termed**
30:7
**terminal**
56:7 63:14,20 64:2,4,9
65:7 67:8
**terminology**

224:9
**terms**
17:11,21,25 18:8,12
33:2,24 34:9,15 37:2
66:10 67:15,17,25
106:13 114:13,15,22
115:5,8,14,17,22,24
116:9 119:10,15
120:5,14,16,21 121:3
121:7,14 122:7,10,13
142:14 144:8,9,10
166:20 172:17
**terrible**
226:8
**test**
20:16 105:14 107:18
144:5 150:2,15 151:1
155:11 156:15
157:23 214:25
215:18 246:14,20
**testified**
7:19 54:5 68:12 79:19
100:8 146:11 148:6
168:2,14,20 214:13
237:17 243:4 245:13
247:1,8,10,20 248:4
248:7,8,12
**testify**
15:6
**testifying**
9:14,19 10:21 14:13
248:18
**testimony**
14:4,21 15:18 20:4
27:7,11 51:11,25
80:9 83:23 84:23
153:24 180:25
181:20 182:3 183:6,8
247:13 251:13
**tests**
43:13 44:15 150:7
157:22 160:9
**thank**
7:11 26:20 30:12
89:15 139:12 145:2

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

181:23 249:7,9
**therewith**
11:22
**they'd**
114:3
**thing**
9:7 53:15 54:19 58:19
61:6 77:11 117:12
157:25
**things**
37:15 40:2 45:22
48:17,25 87:1 157:25
176:3 177:3 180:2
186:22 211:23
222:21 243:8
**think**
8:18 10:18 16:6 18:16
20:10,18 21:15 23:1
27:19 28:21,21 32:1
32:3,3 35:4 38:3
42:13 44:4 45:4 46:1
46:12,13 47:14 48:8
50:5 51:11,24 53:1
53:11,16 54:5 57:3
58:6,12 59:6 62:1,14
62:20 63:4 66:22
67:13,18 70:20 71:5
71:6,17,20 75:12,18
76:23 78:5 79:14,18
83:25 84:2,24 86:21
90:12 96:23 99:8,21
100:7 102:17 103:20
105:9 106:3 110:6,22
111:2,20,22 113:13
113:21 118:8,25
119:3,13 120:24
128:22 129:1,4
131:25 134:18 136:1
136:23 138:4,6,7
139:25 141:20
142:11,11,13 143:22
144:11,12,12,13
147:19 148:6 150:14
151:13 152:1,19
153:10 158:1 161:11

161:18 162:23,24
163:1 164:16 165:19
166:25 167:18 169:2
169:23 170:25 175:9
179:23 180:2,25
181:5 182:1 184:10
184:17 186:12,16,20
186:22 189:5 191:9
191:21,22 194:7,9
196:25 197:16 202:3
204:2 207:13,22
208:24,25 209:2,11
209:18,19 210:4
213:18 214:13,18
218:6,21 219:8
221:22,22,24 222:16
222:20,22 223:4
228:4 231:3 232:18
233:7 234:11,18
235:11,14 236:9,21
237:17 238:8,17
239:9 241:13 242:16
244:1,13 245:12,20
245:23,25 247:6,13
247:18,19 248:2,12
**thinking**
125:12 160:16 177:18
233:14 247:24
**third**
83:3 117:2 163:15
**thorough**
24:18,20 38:3 113:12
**thought**
65:23 66:6 76:25
96:13 99:22 134:20
134:23 141:20 174:9
175:20,24 178:15
209:13 213:16
218:16,18 219:7
222:4,9 227:15
234:15,22 235:2
247:22 248:5
**thoughts**
111:7
**three**

103:21 109:4 170:13
177:19
**thrown**
193:2
**throws**
153:25
**till**
52:23
**time**
6:7 8:12 22:5,9,9
25:19 27:18 30:3
31:9 37:12,19,24
38:1 40:1,5,7 43:7
44:21,25 45:13 47:12
48:10 51:15 53:5
58:12 59:13 65:3
68:11 74:3,12,18
79:17 96:7 97:1
100:14,24 103:13
104:9 109:12 119:6
126:9 128:1 131:11
132:1,10 133:7 135:3
135:15 136:8 137:8
137:22 138:14,14
140:2,23 145:6 146:6
149:19 151:11 158:7
158:15 159:14
168:11 173:16,18
175:21 186:5,11
201:19 202:1,12
204:18 206:15
207:23,24 208:6,10
208:12 209:12,13
220:20 221:21 222:2
229:9 232:15 235:11
236:18 243:12,15
245:24 247:4,9 248:5
248:7 249:11,13
**timeline**
139:14
**times**
8:8,25 35:4 45:17
75:24 87:17 93:1
96:12 220:5 247:2,20
**title**

29:10,10 88:13
**titles**
248:22
**today**
7:6 8:2 15:16 16:16
22:11 23:5 24:22
27:5 40:19 43:6
47:18 61:20 66:19
67:14 68:2,10 71:11
71:18 72:13 83:19
106:6 149:19 151:22
157:11 159:6 168:8
168:21 172:4,7
227:16 240:13,15
247:16
**today's**
6:6 249:6
**told**
18:7 24:16,17 34:5
57:4 58:6 74:24
75:12 99:9 106:24
110:23 139:21
144:24 153:22
167:12 174:8 175:7
184:17 203:16 204:9
**top**
38:5 89:24
**topic**
10:25 11:5 12:9 13:6
13:10,17,18 15:20
16:5,7,10,18 18:2,3
18:15,25 19:5,5,13
19:15 21:16,17,22
**topics**
12:3,6,19 13:4,24 14:6
14:17,22,25 15:11
16:4 99:6
**TORRES**
3:19
**total**
25:20 50:7 68:1 70:10
77:7,8 78:19 107:10
108:18 150:19
153:15
**totally**

135:8
**Touché**
24:25
**track**
63:3
**trade**
1:19 3:9 6:8 49:18,20
**traded**
154:7
**traditional**
174:2
**tranches**
165:4
**transaction**
56:4 62:22 67:5 81:13
82:17 96:14 116:7,18
116:19 173:15,17,24
175:4 198:21
**transactions**
52:14 98:17 113:23
114:12 116:3
**transcript**
26:23 61:15
**transcripts**
26:25
**transferred**
205:22
**transparent**
66:13
**treasurer**
84:6 105:24
**treasury**
31:25 32:6,10 33:16
49:15 113:10
**treat**
98:20
**treatment**
94:25
**trend**
246:14
**trial**
15:17 16:1
**trigger**
39:6 61:7 189:12
231:1

**triggered**
61:2 133:12 173:19
**Trogdon**
4:4 7:8
**true**
13:22 14:1 41:9,12
43:15 44:20 45:1,13
52:4 91:1 95:24
148:12 168:10,25
180:4 211:25 212:11
213:8,13 251:13
**Trust**
1:7 2:17 3:7,14 5:9
6:25
**trustee**
1:7 2:7,18 3:8,14 5:3,9
6:25 27:22 121:6,11
125:23,25 126:7
127:15 189:18,24
191:15 224:2,12
**truthful**
183:9 248:5,6
**truthfully**
247:8
**try**
24:22 28:3 38:4 69:2,9
72:10 103:12 122:16
130:12 162:23
164:20 195:18
224:16
**trying**
26:17 37:20,22 69:22
83:12 105:13 115:4,7
115:14,16 130:10
216:2
**turn**
42:11,14,19 80:18
81:9 89:23 94:20
103:19 126:13 131:1
131:9 149:1 211:18
217:10 222:24
239:11
**turns**
103:14 129:18 247:23
**two**

9:22 17:14 23:7,11
24:10 25:20 26:18
48:20 57:21 58:13
62:24 94:22 97:6
98:7 106:11 124:9
132:2,6 144:25
160:20 162:18 163:9
163:20 164:13
165:15 166:6,10
169:13,15,22 186:22
196:8 227:14 235:3
235:18 247:1
**TXU**
30:8
**type**
225:22 226:14 229:24
**Typical**
214:25
**typically**
35:20 56:15 61:2
105:24 106:12
137:13 154:6,20,25
215:18 243:23

_____
**U**

**U**
4:9
**ultimate**
34:23 117:21 118:3
233:22
**ultimately**
31:11,18 32:25 62:14
93:14 95:18 97:19
98:22 105:10 212:24
236:10 237:15
**UMB**
2:7
**unable**
14:19 141:18 171:19
173:7 202:14 207:19
208:21
**unclear**
135:8 241:17
**uncomfortable**
97:22 165:24

**unconditional**
58:19
**underlay**
63:9
**underlied**
63:8,9
**underlined**
200:7
**underlying**
56:17 65:2 84:20
85:12 162:11 168:16
209:6
**understand**
8:15 11:17 12:7 17:14
23:12 28:6 51:13
54:16 64:23,25 115:9
129:17 130:12,14
140:20 143:7 149:12
149:19 150:5,25
151:8 155:5,24 157:8
164:10,12 166:11,22
167:25 174:23 176:9
176:16 185:9 186:6
187:2,3,25 188:3,4
195:7 220:13 223:19
225:2,19 229:14
237:6,7 240:9 244:24
**understanding**
9:18 10:22 11:2,4,8
12:20 25:8 35:10
85:13 90:20 108:5,13
109:21 111:14,16
112:2,6,10,17 113:14
114:9,18 115:25
116:22 141:1,8,16
142:20,25 143:24
144:2,17 151:4
166:10 182:10,23
183:13 187:9,15
188:9 191:24 196:3
223:20 224:3 225:14
225:19,21 226:12,17
226:20 240:21,24
242:14
**understands**

64:1
**understood**
8:18 28:5 34:19 44:11
63:25 90:22 113:17
118:10,15,16,17
149:18 150:4 165:13
165:14 167:5 188:17
225:5 228:9 230:10
230:11,12,25 233:6
240:5
**undertaken**
67:4
**undertakings**
14:16
**underwriter**
220:11
**underwriters**
40:9 144:20 198:21
220:10
**Unfortunately**
35:19
**unintentional**
8:5
**unique**
108:6
**United**
1:2 6:15
**University**
27:21
**unlocked**
90:4
**unnatural**
9:2
**unpaid**
104:14 131:16
**unreasonable**
246:1
**unreasonably**
174:13
**unsecured**
2:7,13 50:2 100:2
**unsolicited**
61:10 62:15,18,22
**untrue**
200:17,22 201:8

210:11
**unusual**
157:24
**updated**
172:24
**upstairs**
205:23
**upstream**
154:17
**upstreamed**
176:17
**upstreaming**
176:22
**urge**
96:7 97:1 98:6,16
**urged**
91:22
**urging**
97:24
**use**
39:10 61:20 76:20
77:1 108:4 114:3,3
142:13 143:7 150:24
155:5 166:17 182:7
182:11 224:6,8
**utilities**
154:5 243:25 244:2,16
245:2
**utility**
174:2 245:1,15,24

---

**V**

**v**
1:9
**VAILLANT**
2:4
**validate**
235:9
**valuation**
19:15,24 20:8,11,13
21:6 53:19,21 54:4
54:10,12 56:16,18
63:8 67:8 243:19
244:1,4,6
**valuations**

20:15 21:9
**value**
20:19 36:15 37:12
39:3 54:7,15 56:1,3,6
56:8,17,20 57:3,16
63:11,15,20,21 64:2
64:4,10,11 65:7
66:19 67:6,6 68:1
69:12 70:10 75:13
77:15,23 78:19,20
90:3,14,14 116:6,7
117:13 150:17 151:2
151:11 153:13
155:11 156:7 157:15
160:12,22 161:8,21
161:25 163:23
169:14 170:4 183:3
185:6 243:22 245:2
246:21
**values**
20:21 117:10 245:19
**variables**
176:4
**varied**
58:17
**variety**
238:18
**various**
87:3,17 107:25 114:13
197:13 199:3 200:4
212:16,23 227:23,25
**VENABLE**
5:14
**vendors**
233:19 234:6
**verbal**
9:6
**versa**
117:17
**versus**
65:1 112:14 134:24
188:14
**vice**
29:7 30:16,19 117:17
248:12,17,19

**vicinity**
99:23
**video**
6:2
**Videographer**
5:23 6:1 7:11,20 74:8
74:15 145:2 146:3
157:2,7 201:19,23
243:10,15 249:1,10
**videotaped**
1:17 6:10
**view**
13:25 193:21 194:4
242:22
**violate**
178:7,11
**violated**
177:11
**volatility**
155:6
**volume**
181:11,16 254:7

---

**W**

**WACHTELL**
4:16
**waive**
190:9,22 191:7 196:13
197:7
**waiver**
192:2 195:11 196:1,16
**waivers**
196:15,20 197:9
**waiving**
191:15
**walk**
27:16 28:10 76:13
80:16
**want**
8:21,24 13:14 16:21
17:1 39:16 42:8 48:6
51:12 64:22 66:23
69:22 72:10 73:5,8
75:9 76:18 88:11
95:23 96:4 99:5

102:2 127:23 131:9
132:1 135:10 138:8
138:23,24 140:12,21
142:2 148:7 152:18
155:4 159:3,22
171:12 179:16
181:21 182:2 186:10
195:19 197:15
198:10 202:2 213:1
221:5,25 222:8 225:1
228:5 230:4 233:5
234:16 236:15
241:17 243:6 245:3
**wanted**
88:12,13 111:9,12
225:10
**warranties**
42:18 46:18 148:24
199:12 211:24
212:10 213:3,20
**warrants**
42:16
**warranty**
43:12,15 157:18
**Washington**
3:16 4:3
**wasn't**
14:24 15:12 25:18
39:2 54:13 65:24
111:17 113:2 125:12
147:11 165:9 171:6
179:21 187:18 225:8
225:8 227:11,12
234:4,4 235:1,16,24
236:13 246:17
**waste**
132:1
**watch**
33:19 40:25 74:9
145:3 157:3 243:11
**way**
9:3 28:2 31:16 39:7
56:17 66:18 67:19
93:6 97:23 106:11
107:7 117:14 130:23

132:22 149:14 154:1
154:19 158:8 164:1
164:20 169:25
173:18 177:1 194:24
207:14,15 233:5,14
251:18
**ways**
200:5
**Wearing**
62:8
**weight**
234:17
**welcome**
89:11
**went**
29:6 39:17 58:13
59:15 98:19 128:18
137:9 172:24 202:5
237:9
**weren't**
18:7 119:4 169:3
183:9 203:14 209:15
**West**
4:17
**we'll**
79:23 197:3 211:2
**we're**
56:19 60:8 63:24
64:12 66:18 74:13,19
77:20 129:11 135:2
138:6 145:7 146:7
157:7 175:9 193:19
201:20 202:2 208:7
243:12 249:12
**we've**
10:23 19:4 53:16
77:11 107:20 135:24
136:10 139:21
193:22 197:16
198:25 202:3 212:3
213:4 216:9 222:14
239:3
**wheel**
229:16
**WHEREOF**

251:20
**WHITE**
2:12
**wholes**
68:22,24 69:6 71:2
90:16,24 91:24 98:1
**willing**
57:20 72:4 160:19,20
186:4
**Wilmer**
3:7,13 6:22
**WilmerHale**
1:19 6:8
**winning**
90:16
**wish**
115:25 247:17 250:2
**Wishful**
160:16
**witness**
4:2,7,12 7:5,14,16
12:19 13:5,16,17
14:16 74:7 109:17
118:14 157:9 194:18
230:3 248:25 249:2,9
250:2 251:10,14,20
**WOFFORD**
2:21
**word**
39:10 43:19 44:6
61:16 72:19,20 98:16
115:9 167:1 192:10
232:24 233:3,7
**words**
44:17,18 45:6 66:23
97:6,10 107:5 110:21
118:5,6 132:17 148:7
150:1 154:24 166:11
171:25 225:16 228:6
236:20
**work**
46:8,14 53:18 162:11
164:8 166:4,16
**worked**
62:21 128:25

**working**
158:14
**works**
71:7 114:19
**world**
1:19 3:9 6:8 158:22
196:7 214:15
**worth**
63:22 246:9
**wouldn't**
61:3 62:3 78:6 85:3
133:4 147:12 179:6
185:21 206:20
207:25 209:8,10
227:18 228:22
**Wright**
5:20 7:9 242:13,15
**writing**
78:15
**wrong**
73:9 153:4,23 157:5
200:14 217:21
**wrote**
232:23

———————————
X
**x**
1:3,6,13 252:1,6

———————————
Y
**yeah**
34:13 44:17 54:1 86:2
88:8 90:12 184:6
222:8 228:16 245:12
**year**
30:4 74:25 128:7
136:1 172:25 205:17
207:18 245:8
**years**
28:14 58:2 151:17
196:11 231:21
**yesterday**
26:4 38:2 87:2
**yield**
36:25 37:3 108:15,19

CONFIDENTIAL
PAUL KEGLEVIC – 12/10/2014

108:24 113:23
116:10,14 122:6,19
124:11 125:4 127:3
129:5 143:17
**York**
1:20,21,24 2:3,3,3,9,9
2:14,14,19,19 3:4,4
3:10,10,21,21 4:18
4:18 5:4,4,11,11,16
5:16 6:5,5,9,9 93:5
251:2,4,9
**Young**
30:14

---

**Z**

**zone**
208:8

---

**$**

**$1.2**
75:2
**$16.5**
56:7
**$18**
63:15 64:10 70:9
**$2**
45:25 58:8 81:16 85:2
**$4**
164:23 165:1 206:25
**$40**
33:14
**$400**
22:7
**$42**
32:15 107:10
**$6.2**
64:15
**$6.5**
204:22 205:15 206:9
207:17
**$6.52**
203:21
**$680**
204:11
**$800**

57:14 58:16
**$960**
78:23

---

**0**

**00000823**
89:4,8 253:12
**00000825**
89:8 253:13
**00002551**
79:24 80:4 253:7
**00002621**
80:4 253:8
**00006082**
92:8,12 253:17
**00006091**
92:12 253:18
**00038410**
197:21,22 198:1
254:13
**00038479**
198:1 254:14
**00038664**
231:12,15 255:3
**00051935**
216:13,16 254:23
**00052667**
216:16 254:24
**00070919**
238:12,15 255:7
**0007693**
147:1,5 254:3
**00080017**
41:17,21 252:23
**00080090**
41:21 252:24
**00090975**
211:4,8 254:18
**00144188**
103:2,7 253:22
**00144189**
102:24 103:4
**00144335**
103:7 253:23
**0071261**

238:15 255:8
**0076785**
147:5 254:4
**0090976**
211:8 254:19
**090**
41:18

---

**1**

**1**
9:25 10:8,17,19 13:6
16:5,7,10,10,19
42:12,14 74:10 75:1
102:7 104:9,25 106:9
106:14 124:25
131:11 132:7 141:4
141:11 165:7 181:11
181:16 221:15 252:9
254:7
**1st**
28:20,22 29:2,2,5 53:2
172:3 208:14,15
**1.01**
18:13
**1.2**
75:8 76:8,9
**1.57**
99:23
**1.7**
70:24 99:22 100:2
**1:19**
146:6
**1:19 p.m**
146:2
**10**
1:14 11:21 12:11
16:23 17:15 78:19
82:3 101:3,6 102:22
109:3 181:10,15
183:25 184:2,7,11
250:1 252:9,15
253:15 254:6
**10th**
6:6
**10.640**

76:11
**10:50**
74:12
**100**
63:21 64:3,11 68:3
104:11 131:13
218:24
**10004-1980**
2:3
**10007**
3:10
**10016**
2:9
**10019**
4:18
**10019-6799**
3:21
**10020**
5:16
**10022-6069**
3:4
**10036**
5:4
**10036-2714**
5:11
**10036-2787**
2:14
**10036-8704**
2:19
**10105**
6:5
**103**
253:20
**106**
239:12
**10640**
77:10
**11**
1:4 8:8 11:2,11 12:13
16:11,11 19:9 82:4
90:3 109:4 197:20,22
197:24 198:5 209:19
254:11
**11.25/12.25**
82:5

**11.75**
82:4
**11.8**
75:22
**11:04**
74:18
**1155**
2:13
**1177**
5:3,10
**12**
28:14 174:2 211:3,6
  211:10 212:9 252:15
  253:1 254:16
**12.14.20**
232:21
**12:14**
232:18,19
**12:22**
145:7,9
**1211**
2:18
**1261**
238:12
**1270**
5:16
**13**
185:20 216:12,14
  254:21 255:1,5
**1345**
6:4
**14**
42:19 149:2 160:13
  185:20 231:11,13
  254:21 255:1
**14-10979(CSS)**
1:5 6:13
**14-50363(CSS)**
6:14
**14-503639(CSS)**
1:9
**14189**
103:24
**147**
254:1

**15**
40:19 185:20 238:11
  238:13 254:6 255:5
**157**
1:10
**159**
1:10
**16**
159:15
**16.5**
57:3,17 65:1,8,10 69:3
**1633**
3:20
**17**
102:22 217:2
**17th**
211:14
**18**
43:2 64:4,25 65:11,25
  67:7,25 69:10 71:15
  72:24 75:14 175:10
  175:15
**181**
254:6
**1875**
3:15
**19**
252:21
**197**
254:11
**1976**
28:17
**1987**
28:18

_____
**2**
**2**
10:1,4,12,17 12:19
  13:7,10 18:3 42:10
  42:11 74:16 80:18,24
  81:24 85:8 145:5
  165:7 252:15 253:5
**2.1**
70:23
**2.15**

99:18
**2.18**
198:17 235:5,20 236:9
**2.2**
46:2 58:13
**2:19**
201:20
**2:31**
202:1
**20**
56:25 57:1,2 232:18
  232:19 245:7 246:5
**20005**
4:3
**20006**
3:16
**2002**
28:25 29:1,2
**2008**
20:19 28:20,22,25
  29:2,5
**2010**
100:16 102:22 117:22
  135:15,16 140:13
  146:19 197:17
  198:17 211:14
  215:22 217:5 222:1
  222:21 232:21
  234:14,22 235:3,18
  236:1,3,7 239:3
  241:1,20
**2011**
129:1
**2012**
43:2 47:4,8,17 52:10
  54:3 100:20 135:25
  146:23 149:21
  150:10 152:4,8,14
  153:11,17 155:13
  156:10,12 157:19
  158:3,19 159:10
  160:11 161:23
  162:19 163:10
  164:15,21 165:9
  168:5,12,24 170:19

171:10,17 172:9
  173:6 174:14,24
  204:2,20 243:22
  246:10
**2013**
39:21 45:7 87:3 90:10
  96:2,7 97:1 135:12
  158:8 203:19 206:4
  206:11 207:16
  208:10,14,15,18
  245:1 246:7
**2014**
1:14 6:6 47:9,17 52:11
  52:19,24,25 53:24
  68:17 99:8 135:13
  155:14 156:6 157:15
  158:9,19 159:11
  168:13,24 169:1
  170:3,20 171:18
  172:9 173:7 174:15
  181:12,18 202:13,16
  203:4 205:11 249:20
  250:1,20 251:22
  254:9
**2015**
102:7 104:9,25 106:9
  106:15 124:25
  131:11 132:7 141:4
  141:12 221:15
**2017**
42:4
**2020**
7:2 102:23 217:2,5
**21**
146:23 149:21 150:10
  152:4 153:11,17
  155:13 156:10
  157:19 158:19
  159:10 160:11
  161:23 162:19 163:9
  164:15,21 165:9
  168:12 174:24
  243:22
**21st**
152:8,13 156:12 158:3

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

168:24 171:3,10
204:2,20
**211**
254:16
**2150**
76:23
**216**
254:21
**22**
170:18
**22nd**
171:16 172:9 173:6
174:14
**231**
255:1
**238**
255:5
**24**
159:10 254:11
**249**
103:21
**250**
1:20 3:9 77:5,6
**2621**
79:25
**2667**
216:13
**28**
157:14 158:9,19
159:11 170:3,20
**28th**
52:24,25 155:14 156:6
169:1 171:18 172:9
173:7 174:15
**29**
99:8 168:13,24 181:12
181:18 202:13
205:11 254:9

**3**

**3**
12:19 18:15 41:15,19
46:16,22 48:5 146:4
148:23 149:25 165:7
168:4 174:25 252:21

254:1
**3(gg)**
160:9
**3.01**
124:5
**3.06**
124:6
**3.07**
18:12 104:3 109:9
112:4 123:24 124:4
124:16,23 125:9,17
126:1 129:20 131:2,9
133:12
**3.5**
184:10
**3:18**
243:12
**3:32**
243:16
**3:38**
249:12
**3:38 p.m**
249:13
**30(b)(1)**
10:7,15 109:17 252:19
**30(b)(6)**
1:17 10:4,11,19 12:3,6
12:8,18 13:5,16
14:16,23 109:15
118:14 252:13
**300**
4:8
**32**
168:5 218:11
**335**
103:4
**38**
217:12

**4**

**4**
12:19 18:25 44:9
49:25 78:10,12 94:21
99:15,25 100:14
165:7 182:11 201:24

249:11 253:1
**4.25**
184:16
**40**
218:11
**41**
252:21
**41st**
5:11
**42**
33:8 100:9
**424(b)(3)**
216:20
**43**
32:23
**44**
23:2 81:10
**450**
77:15,16 78:1,4,6,8,16
78:21
**47**
181:21 182:20
**479**
197:22
**48**
218:11

**5**

**5**
10:25 11:5 15:20 19:5
79:24 80:1,2 123:25
148:21 158:23
199:11 214:19,24,25
215:4,11,17 253:5,20
**5.4**
70:23 71:6 76:16
182:8
**50**
114:25 218:9
**500**
184:11
**51**
4:17
**52nd**
4:17

**55**
103:19,23 131:7
**555**
4:13
**56**
124:1
**57**
76:25
**599**
3:3

**6**

**6**
12:19 19:5 85:18 86:3
89:2,5,6,17 93:20
210:6 253:10,10
254:16
**6.02**
18:13 126:14,22
127:16 129:22
239:11
**6.2**
75:17
**6.52**
204:10
**6.875**
17:16,18,21,25 42:3
101:4,7 184:1,7,12
**60/40**
177:11
**60654**
4:8
**6091**
92:9
**640**
78:20
**655**
4:3

**7**

**7**
1:19 3:9 6:8 19:13
92:6,10 98:14 99:3
100:1 252:3 253:15
**7.5**

CONFIDENTIAL
PAUL KEGLEVIC - 12/10/2014

70:23 86:3
**7.7**
49:23 99:10
**75**
85:18
**76**
211:5
**78**
253:1
**785**
147:2

**8**

**8**
12:20 19:15 75:25
  102:20 103:5 109:8
  112:5 116:21 117:25
  123:22 126:14
  135:15,16 140:15,25
  144:17 252:9 253:20
**8/16/2010**
216:21
**80**
56:9,23 63:23 64:19
  153:16,18 253:5
**825**
89:4
**88**
94:22
**89**
253:10

**9**

**9**
21:16 77:5,6 146:25
  147:3 254:1
**9-7**
78:22
**9.1**
71:1
**9.44**
76:2
**9:36**
1:15 6:7
**90**

2:8
**92**
253:15
**925**
78:21
**93**
126:15
**94104**
4:13