## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Merits Objection Deadline:** <br> **To Be Determined** |
| | **Merits Hearing Date:** <br> **To Be Determined** |
| | **Status Conference Date:** <br> **October 15, 2015 at 10:30 a.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO SECTIONS 105, 505, AND 506 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER DETERMINING CONTESTED *AD VALOREM* TAX MATTERS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached as **Exhibit A** (the "Order"), determining contested *ad valorem* tax matters. In further support of this Motion, the Debtors respectfully state as follows.

### Preliminary Statement

1.    The Debtors pay property taxes to the local Texas tax jurisdictions where the Debtors' power plants are located. The amount of property tax that is owed is based on the market value of the Debtors' power plants. The Texas Tax Code requires that all taxable

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

property be appraised at its market value as of January 1 of the tax year. Any property owner that disagrees with an appraisal district's determination of a property's appraised value may protest such determination to the appraisal review board (an "ARB") for the county where the property is located, followed by an in-court litigation process if the property owner disagrees with the value determined by the ARB.

2.      The Debtors have followed this process for protesting the appraised values of several of their plants and related property for the 2015 tax year. Unfortunately, the appraised values set by the ARBs fail to reflect the significant decrease in the value of the power plants at issue. Indeed, based on the Debtors' analysis of the market values of their nuclear and coal-fired power plants for the 2015 tax year, the Debtors believe the ARBs' erroneous value determination, if left unchallenged, would result in the Debtors owing approximately $40 million (and potentially more) of excess property taxes for the 2015 tax year. The Debtors therefore have no choice but to seek judicial determination of the appropriate values for these power plants and related property.

3.      By the filing of this Motion, the Debtors seek to right-size their property tax liabilities. The valuations of the Debtors' power plants are key to many other aspects of these chapter 11 cases, including the ongoing plan process and the transactions that will be executed to effect a step-up in the tax basis of certain of the Debtors' assets (including certain assets addressed by this Motion). There is significant overlap between the valuation methodologies and evidence needed to establish valuation for property tax purposes and for other purposes. Moreover, this Court's familiarity with the economic headwinds faced by the Debtors and the downward pressure those headwinds have imposed on the value of the Debtors' power plants makes this Court uniquely positioned to resolve the property tax disputes. Indeed, this Court has

grappled with the Debtors' business for over a year and will likely address the reasonableness of the Debtors' business plans and the valuation of the Debtors' plants in other contexts going forward. Accordingly, this Court is in the best position to resolve the Debtors' property tax disputes in the most efficient way possible.

**Relief Requested**

4.      By this Motion, the Debtors seek entry of an order pursuant to sections 105, 505, and 506 of title 11 of the United States Code (the "Bankruptcy Code") determining the taxable value, exclusive of applicable exemptions, of the Debtors' assets listed on **Exhibit 1** to the Order for all purposes related to the Debtors' 2015 property tax liabilities.

**Jurisdiction and Venue**

5.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 505, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The bases for the relief requested in this Motion are sections 105, 505, and 506 of the Bankruptcy Code.

## Background

8.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and Corporate Services (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## I.      The Property Tax Appraisals.

9.      The property tax appraisals that are the subject of this Motion relate to the Debtors' nuclear and coal-fired power plants and certain related property.  The value of each of these plants has significantly declined in recent years, largely in correlation with the significant decline in power prices and natural gas prices.  Unfortunately, the Debtors' local taxing authorities have failed to properly reflect these declines in the appraised values of the Debtors' plants and related property.

10.     The Texas Tax Code provides the general framework for determining the market values of property in Texas for property tax purposes.  There is significant similarity to other

valuation determinations: appraisers "consider the cost, income, and market data comparison methods of appraisal and use the most appropriate method" to determine the price at which a property would be sold in the marketplace. *See* Tex. Tax Code §§ 1.04(7); 23.01-23.013. There are, however, a number of exclusions and exemptions from otherwise taxable property, generally including most intangible property and certain pollution control property. Tex. Tax Code § 11.01-11.34 (defining "taxable property" and listing exemptions).

11.      An appraisal is made, in the first instance, by the appraisal district for the county in which the subject property is located. If a taxpayer objects to the appraised value, the taxpayer may file a "protest" with the ARB, and the appraisal district has the burden of establishing the value of the property. Tex. Tax Code. § 41.43. If the taxpayer continues to object to the value established by the ARB, the taxpayer may seek judicial review and assert, among other things, that the appraisal was excessive, unequal when compared to other appraisals, or that a taxing jurisdiction failed to properly apply an exclusion or exemption. *See, e.g.*, Tex. Tax Code §§ 42.01, 42.25, 42.26.[2] The ARB's valuation determination is subject to *de novo* review by the court. *See* Tex. Tax Code § 42.23.

12.      Although the appraised values on the Debtors' nuclear and coal-fired power plants have decreased in recent years, the decrease has not adequately reflected the true decline in the market value of those plants. Between 2008 and 2015, natural gas prices have declined by approximately 56%;[3] "full year" power prices in most of Texas have declined by approximately 59%; and the amount of electricity generated by the Debtors' coal fleet has declined sharply,

---

[2]  Similar challenges to appraised value can also be brought under the Texas Constitution. *See* Tex. Const. Art. VIII, Sec. 20 (providing that property shall not be assessed for *ad valorem* taxes at a value greater than the property's fair cash market value).

[3]  Based on NYMEX Spot Prices for December 31, 2007, and December 31, 2014.

largely as a result of intentionally reduced generation activity. This Court is already aware of many of these metrics. Indeed, as the Debtors have acknowledged, from the first day of these chapter 11 cases, that the decline in natural gas prices is one of the main reasons the Debtors are in chapter 11 in the first place. Yet, the appraised values of the Debtors' nuclear and coal-fired plants at issue here do not adequately reflect this decline, and will require the Debtors to pay millions more in property taxes than are appropriately due. Consequently, establishing a more reasonable property tax valuation of the Debtors' nuclear and coal-fired plants is important to the Debtors' overall restructuring, and to the Debtors' property tax liabilities going forward.

13.    The Debtors have attempted to resolve these valuation disputes with their local taxing jurisdictions. Unfortunately, despite the Debtors' formal and informal efforts to find common ground with the relevant taxing authorities, the taxable values set by the local ARBs fail to reflect the true decline in the plants' values and are unreasonably high. In fact, the taxable values proposed by the appraisal districts and adopted by the ARBs for the 2015 tax year (the "Taxable Values") for the Debtors' plants either *increased*, or decreased by an immaterial amount, compared to the final values for the 2014 tax year, notwithstanding a decrease in natural gas prices from $4.31 to $3.14 in that time frame.[4] As a result, the Debtors believe that the Taxable Values would result in a property tax liability that is approximately $40 million too high. Thus, the Taxable Values exceed the taxable appraised values permitted by law and they are impermissibly unequal.[5]

---

[4] Notably, natural gas prices have continued to significantly decline in 2015: for instance, as of August 7, 2015, the NYMEX spot price for natural gas was $2.76 per MMBtu, a decrease of nearly 12% since January 1.

[5] The Debtors also believe that certain taxing authorities failed to properly apply exemptions related to certain pollution control equipment and other items.

14.    The excessive Taxable Values, as set by the local ARBs, are reflected in the following table:

| Plant | Taxable Value[6] |
|---|---|
| Comanche Peak[7] | $2,361,721,055 |
| Oak Grove | $1,041,700,000 |
| Martin Lake | $701,077,760 |
| Sandow V | $238,728,000 |
| Sandow IV | $224,724,200 |
| Monticello | $341,292,290 |
| Big Brown | $245,000,000 |

15.    The Debtors have concluded that they must challenge the Taxable Values, both because (i) of the approximately $40 million of excess tax liability (which would be "full pay" secured claims in these chapter 11 cases), and (ii) challenging the excessive Taxable Values will allow the Debtors to establish a more realistic "base line" valuation for their plants. That challenge must be heard either in this Court, or in seven separate state court proceedings before different finders of fact.[8]

---

[6] These values are the taxable values as determined by the ARB and reflected in the orders issued by the ARB for the property tax accounts that the Debtors intend to challenge in these proceedings.

[7] Includes both the Comanche Peak plant and a separate account for nuclear fuel.

[8] Under Texas law, following a determination by the ARB, a taxpayer must file suit in state court within 60 days of receiving the ARB's determination. On the same date of filing of this Motion, the Debtors are timely filing challenges to all the Taxable Values in the applicable state courts. These filings are solely to preserve the Debtors' state law rights and to avoid any argument that "the applicable period for contesting or redetermining [their ad valorem taxes] under applicable nonbankruptcy law has expired." See 11 U.S.C. § 505(a)(2)(C). For the avoidance of doubt, the Debtors believe that the filing of the state court petitions was unnecessary to preserve their rights under section 505 of the Bankruptcy Code, and they also believe that they would have been entitled to file a proceeding under section 505 of the Bankruptcy Code if they had filed in state court first and waited for some period of time to bring this Motion. The Debtors' filing of the state court petitions should not be interpreted as any acknowledgment by the Debtors that the state courts, rather than this Court, should hear these proceedings. In conjunction with determining a schedule for discovery and litigation, the Debtors may seek entry of an order pursuant to sections 105, 505, and 506 of the Bankruptcy Code staying the state court proceedings to avoid unnecessary and duplicative costs and expenses.

16.     The Debtors respectfully submit that this Court presents the far more efficient forum for litigating these matters.     Rather than having seven simultaneous state court proceedings (and potential appeals from those proceedings), this Court can more efficiently resolve any contested valuation.    The Debtors' stakeholders that will own TCEH after these cases are completed will have greater ability to monitor the proceedings.    This Court already has significant exposure to issues related to the valuation of the Debtors' plants, and that exposure will be amplified in the plan confirmation process (which is expected to occur prior to any trial of the contested property tax matters).    And valuation of the Debtors' plants is a key aspect of the basis step-up transaction that is a cornerstone of the Debtors' plan of reorganization. Accordingly, this Court presents the best forum to address these issues in a unified way.

### Basis for Relief

I.     **Section 505 of the Bankruptcy Code Permits this Court to Determine the Proper Value of the Debtors' Plants for Property Tax Purposes.**

17.     Section 505 of the Bankruptcy Code grants this Court broad authority to determine the amount or legality of "any tax."  This broad authority plainly includes postpetition *ad valorem* taxes of the kind addressed by this Motion.  *See, e.g.*, *In re Majestic Star Casino, LLC*, 457 B.R. 327 (Bankr. D. Del. 2011) (determining disputed valuation for property tax purposes); *In re Continental Airlines, Inc.*, 138 B.R. 430, 433 (Bankr. D. Del. 1992) (noting the breadth of a bankruptcy court's authority under section 505), *rev'd on other grounds*, 149 B.R. 76 (D. Del. 1993), *aff'd in part, rev'd in part*, 8 F.3d 811 (3d Cir. 1993) (Table), *cert. denied*,

510 U.S. 1192 (1994); *In re Schmidt*, 205 B.R. 394, 399 (Bankr. N.D. Ill. 1997) (same). None of the potential exceptions to this Court's authority to determine these matters applies.[9]

18.     This Court's authority under section 505 of the Bankruptcy Code to hear a tax dispute is not mandatory. Thus, in deciding whether to exercise this authority, courts look to a variety of factors, including (a) complexity; (b) efficiency; (c) burden to the bankruptcy court; (d) the amount of time required to reach a decision; (e) whether a debtor's asset and liability structure warrants a ruling; and (f) potential prejudice to the parties. *See, e.g., In re New Haven Projects Ltd.*, 225 F.3d 283, 287–89 (2d Cir. 2000) (analyzing discretionary nature of provision and listing factors).

19.     Each of those factors supports acceptance of jurisdiction by this Court. Valuation is a key element of these chapter 11 cases, and it makes more sense to address any and all valuation disputes, including those related to the Debtors' property tax liabilities, in a single forum (even though somewhat different valuation standards apply). Moreover, while trial on these matters may occur after plan confirmation, valuation discovery and other pre-trial matters would likely occur simultaneously with any valuation analysis done in connection with plan confirmation and the determinations being made to structure the basis step-up transaction. Thus, having a single forum resolve the key valuation issues in this case will be more efficient and it will also facilitate the orderly pre- and post-confirmation conduct of these chapter 11 cases. The amount at stake is material, especially in the context of a "full pay" administrative liability. And, importantly, the current-year savings of approximately $40 million will have carry-forward

---

[9] Specifically, no judicial or administrative tribunal adjudicated the property tax disputes at issue before the commencement of the Debtors' cases, so section 505(a)(2)(A) of the Bankruptcy Code is inapplicable; the Debtors are not seeking a tax refund, so section 505(a)(2)(B) of the Bankruptcy Code is inapplicable; and the "applicable period for contesting or redetermining" the Debtors' property tax valuations has not expired under Texas law, so section 505(a)(2)(C) of the Bankruptcy Code is inapplicable.

effects to future years by establishing a more reasonable "base line" valuation, thereby enhancing the viability of the Debtors' restructuring.[10]

20.    The Debtors acknowledge that some or all of their taxing authorities may prefer to litigate these valuation issues in their local state district courts.    But the fact is that these valuation issues are significant to the Debtors' overall restructuring, involve substantial amounts of money, and will have a material impact on the Debtors' reorganization.    Consequently, the prejudice or burden to the taxing authorities associated with litigating in this Court, if any, is considerably outweighed by the paramount interest of the Debtors, their creditors, their employees, and their overall business enterprise in having the valuation of the Debtors' property and associated property tax liabilities determined in a single, efficient forum that is already intimately familiar with the valuation issues presented in these cases.    Accordingly, the Debtors respectfully submit that this Court should elect to exercise jurisdiction.

### Scheduling Matters

21.    The Debtors are not, at this time, proposing a specific schedule for addressing any disputes with respect to any matter addressed by this Motion.    The Debtors intend to meet and confer with the relevant taxing authorities to reach a consensual schedule for discovery and litigation.    If consensus is reached, the Debtors will file a separate motion for entry of a consensual scheduling order.    If consensus is not reached, the Debtors will ask the Court to set a schedule as proposed by the Debtors, and any disputes regarding the proposed schedule will be

---

[10]    Specifically, pursuant to Texas Tax Code § 41.43(a-3), if an appraised value is lowered in a preceding tax year, then in the following year, an appraisal district must meet a "clear and convincing" standard, rather than a preponderance standard, to establish the value of the property.    Moreover, as a practical matter, establishing a more reasonable "base line" is likely to influence property tax valuations in later years as well.

handled in due course. In any case, the Debtors request that a status conference on this Motion be held during the scheduled October 15, 2015 omnibus hearing.

### Reservation of Rights

22.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Order is intended or should be construed as: (a) an admission as to the validity or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; or (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law.

### Notice

23.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and

counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas;

(y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the appraisal districts for Somervell County, Texas, Robertson County, Texas, Rusk County, Texas, Milam County, Texas, Titus County, Texas, and Freestone County, Texas. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court (1) enter the Order, substantially in the form attached hereto as **Exhibit A** (with appropriate modifications to the list of "Ordered Values" in **Exhibit 1** thereto); and (2) grant such other and further relief as is appropriate under the circumstances.

*[Remainder of page intentionally left blank.]*

Dated: August 21, 2015
     Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession