# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.,*[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Ref No. 5269** |
| | ) |

## OBJECTION OF ALCOA INC. TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AMENDING CERTAIN HEARING DATES AND DEADLINES IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION

Alcoa Inc. ("Alcoa"), by and through its undersigned counsel, hereby files this objection (the "Objection") to the motion of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") for entry of an order (the "Proposed Amended Scheduling Order") [ECF No. 5269] amending certain hearing dates and deadlines in connection with the confirmation of Debtors' plan of reorganization (the "Plan"). In support of its Objection, Alcoa respectfully represents as follows:

## OBJECTION

1.      This Court should not enter the Proposed Amended Scheduling Order. The attempted truncation and re-trade of dates setting the stage for Plan confirmation—which this Court already approved over a month ago[2]—are contrary to basic notions of fundamental

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection With the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* (the "Initial Scheduling Order") [ECF No. 4916].

fairness.  Truncating the dates set forth in the Initial Scheduling Order is wholly unwarranted here and would cause severe and unfair hardship to Alcoa given the significant issues Alcoa intends to raise in connection with confirmation and its reliance on this Court's prior scheduling order and stipulations with the Debtors.

2.    Alcoa has current and ongoing claims against certain Debtors that could call into question the viability of the parties' contracts and impact Plan feasibility.  These claims will require extensive trial preparation and discovery.  Specifically, Alcoa's claims arise out of more than two dozen complex contracts, leases and associated amendments with Luminant Generation, LLC ("Luminant Generation"), Luminant Mining, LLC ("Luminant Mining"), and Sandow Power Company, LLC ("Sandow Power," and together with Luminant Mining and Luminant Generation, collectively, with their predecessors, the "Luminant Entities") that cover the divided ownership, operations, and other aspects of the relationship among the parties going back more than sixty years (the "Alcoa/Luminant Agreements").  The Alcoa/Luminant Agreements are related to industrial and power facilities on Alcoa's properties located at Rockdale, Texas (the "Rockdale Facilities"), under which Alcoa essentially pays for electricity on a cost-plus basis.  Among other things, in breach of its express contractual obligation, Luminant Generation has incurred and passed on to Alcoa unreasonable and imprudent costs in operating the power plant over the last several years, and apparently intends to keep doing so. Alcoa has attempted to resolve the Rockdale issues with the Debtors throughout the Chapter 11 cases.

3.    The Rockdale Facilities are significant generating facilities for the Luminant Entities and are critical to their ongoing operations.  It is all but certain that the Debtors will seek to assume the Alcoa/Luminant Agreements, which require the Debtors to cure the past and

ongoing claims under these contracts, and which in turn, could impact Plan feasibility. The trial preparation necessary to fully and fairly litigate these substantial claims cannot be accomplished within the timeframe set forth in the Proposed Amended Scheduling Order. Instead of having a possible maximum timeframe of approximately 148 additional days for trial preparation (at least 97 days of which are guaranteed for discovery),[3] Alcoa will be limited to merely 64 days, or stated differently, the timeframe for trial preparation would be cut by more than half under the Debtor's Proposed Amended Scheduling Order. If approved by the Court, this severe truncation of time would deprive Alcoa of a fair and reasonable opportunity to prepare and litigate its claims.

4.       In addition, the Debtors' Proposed Amended Scheduling Order would do more than prevent Alcoa from having enough time to prepare and litigate its claims: it also would unfairly deprive Alcoa of the benefit for which it specifically bargained in two scheduling and discovery stipulations. The Debtors announced their Proposed Amended Scheduling Order with expedited timeframes *less than one business day* following Alcoa's entry into one such stipulation—a stipulation that included Alcoa's agreement to withdraw discovery it had already served. Alcoa negotiated this stipulation with Debtors and agreed to withdraw its discovery *in reliance and based upon the timeframe set in the Initial Scheduling Order.* The Debtors' Proposed Amended Scheduling Order undermines the key purposes of this stipulation, which were to (i) carve Alcoa's claims out of the discovery deadlines set forth in the Initial Scheduling Order to give the parties time to attempt to settle Alcoa's claims and (ii) establish a discovery

---

[3] *Stipulation Regarding Participation of Alcoa Inc. in Plan Confirmation Discovery Between Energy Future Holdings Corp. and Alcoa Inc.* [ECF No. 5243].

schedule that made sense in connection with the established schedule for Debtors' other confirmation disputes.

5.      Simply put, the timeframe set forth in the Proposed Amended Scheduling Order, and the circumstances surrounding it, deprive Alcoa of the opportunity to fully and fairly present its case and ignore general standards of fairness with respect to Alcoa's rights. The Proposed Amended Scheduling Order should not be entered by this Court.

A.      The Alcoa/Luminant Agreements Are Important to Luminant and the Plan

6.      Alcoa and the Luminant Entities own the Rockdale Facilities. While Alcoa owns and operates its smelting plant at the Rockdale Facilities and the Luminant Entities own and operate two power plants at the Rockdale Facilities (known as "Unit 4" and "Unit 5"), the operation of these collective facilities is contractually and functionally intertwined and interdependent. For example, both Alcoa and the Luminant Entities have interests in the lignite coalmine known as the "Three Oaks Mine," which supplies lignite coal used to fuel the power plants. Alcoa also owns certain common facilities, water rights and real property, all of which are critical to the operation of the Rockdale Facilities.

7.      In addition to the substantial revenue generated by the Luminant Entities at the Rockdale Facilities, the Rockdale Facilities' power plants generate over 1200 gross megawatts of wholesale power for the Luminant Entities based upon Alcoa's and Luminant's lignite coal— which is over 10% of the Luminant Entities lignite power production. Lignite power production represents in excess of 70% of the Luminant power production.[4] Rockdale is therefore critical to the Luminant Entities' ongoing operations.

---

[4] Disclosure Statement at p. 33.

{1017.001-W0038104.2}                              4

8.      Given the importance of the Alcoa/Luminant Agreements to the Luminant Entities' operations, Alcoa expects the Debtors to assume all the Alcoa/Luminant Agreements in connection with the Plan.  Indeed, in connection with the deadline under Bankruptcy Code § 365(d)(4) to assume non-residential real property leases, the Debtors have already assumed eleven purported ground leases intertwined with the other Alcoa/Luminant Agreements this past November,[5] and it is clear from the Debtors' actions that they intend to assume the additional agreements as well.  Nevertheless, to date, the Debtors have yet to officially notify the Court of their intention to assume the Alcoa/Luminant Agreements.

9.      While Alcoa has participated in these cases when necessary,[6] Alcoa understands that the crux of these cases involves a restructuring of the Debtors' massive debt and capital structure.  Nevertheless, issues concerning regular non-bondholder creditors, such as Alcoa must also be addressed.  Alcoa has also attempted to engage the Debtors in a constructive dialogue concerning the future of the Rockdale Facilities and was finally able to arrange for a meeting with Luminant's management on May 1, 2015.

B.      Alcoa Has Claims That Could Render the Plan Not Feasible

10.     Upon the Debtors assumption of the Alcoa/Luminant Agreements, the Debtors will be required to cure the past and ongoing claims under these contracts.  Alcoa's claims are substantial and are likely to call into question the viability of the contracts and impact Plan feasibility.

---

[5] *Order Approving the Assumption of Certain Unexpired Leases By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa Inc.* [ECF No. 2759].

[6] *See, e.g., Response of Alcoa Inc. to Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates for Entry of a Final Order Authorizing Use of Cash Collateral and Granting Related Relief* [ECF No 634]; *Motion to Approve (Motion of Energy Future Holdings Corp., et al., Approving the Stipulation By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa Inc.* [ECF No 1928]; *Limited Objection to Second Motion for Entry of an Order Extending Luminant's Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof* [ECF No. 3418].

11.    For example, Luminant Generation's breaches of its express obligations under the Alcoa/Luminant Agreements relate to the operation of Unit 4, which provides for what is essentially a cost-plus arrangement.  Under the applicable contract, Alcoa pays for electricity by paying certain expenses and capital costs related to power generation.  As would be expected in a cost-plus contract, the Alcoa/Luminant Agreements specifically limit the type of expenses and costs that Luminant Generation can pass onto Alcoa by requiring Luminant Generation to use appropriate "due diligence" to operate Unit 4 in "an efficient and economical manner."  Yet, over the last several years, Luminant Generation has in fact made substantial expenditures that no prudent power plant operator would have made, improperly passing those costs onto Alcoa in breach of the Alcoa/Luminant Agreements and apparently intends to keep doing so.  Alcoa objected and reserved its rights prior to these costs being incurred and throughout these Chapter 11 cases has attempted to negotiate a resolution of this dispute with the Luminant Entities.

12.    At this time, Alcoa estimates that damages for breach of the Alcoa/Luminant Agreements, which Alcoa reserves the right to assert as cure claims, are significant and could likely impact the viability of the Debtors' Plan. Alcoa will also seek to limit expenses and other costs paid to the Luminant Entities under the Alcoa/Luminant Agreements in the future, resulting in additional relief to Alcoa of similar significant value.  Alcoa's claims therefore could likely have an impact on a critical business of the Luminant Entities.

13.    In addition, Alcoa's claims call into question the viability of the Alcoa/Luminant Agreements and threaten the feasibility of the Plan. Alcoa believes that the Debtors may be unable to cure the claims under the Alcoa/Luminant Agreements.  As a consequence, the feasibility of the Plan—at least with respect to the Luminant Entities—may be jeopardized, as the Alcoa/Luminant Agreements (and the Rockdale Facilities themselves) are a major

component of the Luminant Entities' operations and are likely necessary for their successful

reorganization.

      C.      The Proposed Order Deprives Alcoa of the Necessary Trial Preparation and Discovery for Its Claims

      14.      Litigating Alcoa's Plan objection will take substantial time, involving significant

discovery, expert testimony and trial preparation.  While Alcoa is prepared to proceed on an

expedited basis, Alcoa's claims related to imprudent expenditures go to the intricacies of the two

dozen Alcoa/Luminant Agreements, the operation of the Rockdale Facilities, the electricity

markets, and environmental compliance issues for coal-fired power plants.  This is not a simple

matter.

      15.      For example, to litigate its claims Alcoa will need to engage in trial preparation

and discovery related to (i) potential capital investments considered for Unit 4, (ii) the Luminant

Entities' analyses of the electric power market, (iii) the Luminant Entities' projections of the

capital, operating costs and other costs for Unit 4, (iv) a breakdown of all costs actually incurred

to operate Unit 4, (v) analyses concerning the impact of different operating decisions for Unit 4,

(vi) analyses concerning any potential retirement of Unit 4, and (vii) analyses and assessments of

the efficiency and heat rate of Unit 4, among many others.

      16.      In addition, Alcoa's experts will need to:  (i) analyze the discovery on all of the

above issues; (ii) evaluate the accuracy and reasonableness of Luminant Generation's projections

and financial analyses for Unit 4; (iii) calculate and verify the heat energy consumed by Unit 4;

(iv) evaluate the operating options available to Luminant Generation and the processes they used

to make these decisions, (v) determine what Alcoa should actually have paid in connection with

the operation of Unit 4, and, (vi) recalculate several years' worth of energy transactions at

different prices to determine damages/cure amounts, among many other things.

17.    Accordingly, the Proposed Amended Scheduling Order—with a Plan Objection Deadline of October 21 and the Plan confirmation hearing set to begin on October 28—is not workable. Even if discovery were to begin immediately on August 25th, the Proposed Amended Scheduling Order would give Alcoa a maximum of 64 total days for all the trial preparation and discovery detailed above. The proposed order's October 28 start date for the confirmation hearing is simply too soon for Alcoa to prepare to litigate the feasibility of the Plan including damages for breaches under the Alcoa/Luminant Agreements.

D.    The Proposed Order Deprives Alcoa of the Benefit of Its Bargain under Its Discovery Stipulation with the Debtors

18.    In fact, the Proposed Amended Scheduling Order not only deprives Alcoa of the necessary time to conduct trial preparation and discovery for its claims, the proposed order also unfairly deprives Alcoa of the benefit of its bargain under the stipulation that it recently made with the Debtors regarding discovery on August 7 (the "Discovery Stipulation").[7] The purpose of the Discovery Stipulation was to (1) carve Alcoa's claims out of the discovery deadlines set forth in the Initial Scheduling Order in order to give the parties time to attempt to settle and (2) provide a discovery schedule specific to Alcoa's claims that made sense in connection with the established schedule for the Debtors other confirmation disputes. Both of these purposes are undermined by the Proposed Amended Scheduling Order.

19.    In addition, the Proposed Amended Scheduling Order would substantially curtail Alcoa's opportunity to prepare for trial and seek discovery. Assuming a discovery schedule was established under the Proposed Amended Scheduling Order that provided for discovery to start

---

[7] *Stipulation Regarding Participation of Alcoa Inc. in Plan Confirmation Discovery Between Energy Future Holdings Corp. and Alcoa Inc.* [ECF No. 5243]. The Discovery Stipulation did not require this Court's approval as it was executed pursuant to Initial Scheduling Order ¶ 22.

immediately and end on the day before the confirmation hearing, Alcoa would have, at best, only 64 days available for trial preparation and discovery compared to the 148 days for trial preparation that it would have otherwise (with at least 97 days of guaranteed for discovery under the Discovery Stipulation). In short, the proposed order would reduce Alcoa's opportunity for trial preparation by 84 days or by well over half, which is a considerable amount of time when dealing with a schedule that is already expedited.

20.    Moreover, approval of the Proposed Amended Scheduling Order would further cause unfair hardship for Alcoa because Alcoa agreed to withdraw its discovery under the Initial Scheduling Order and the Discovery Stipulation *in reliance on* the existing schedule for Plan confirmation hearings that would begin on January 20th. During the negotiations on the Discovery Stipulation, which were finally completed around 6 P.M. on Friday August 7th (the deadline of the Debtors' to object to Alcoa's status as a "Participating Party" under the Initial Scheduling Order), Debtors' counsel never mentioned that it was contemplating moving the confirmation hearing to October. Yet, a mere one business day after the Discovery Stipulation was filed and Alcoa withdrew its discovery, Alcoa learned (through a *Wall Street Journal* article) that the Debtors were seeking to expedite the Plan confirmation hearing by three months. Alcoa would never have agreed to withdraw its discovery had it known that it would have to litigate Plan feasibility including aspects of its cure related to the Alcoa/Luminant Agreements by October 28 as the Debtors propose.

21.    Upon receiving notice of the Debtors' proposed order, on August 13, 2015, Alcoa's counsel telephoned the Debtors' counsel to raise this issue and to initiate discussions with respect to an immediate start to discovery. Debtors' counsel said he would look into the issue but has yet to return the call.

22.     Yet, even if discovery started immediately or Alcoa's original discovery was reinstated, it still would not be possible for Alcoa to complete the trial preparation and discovery necessary to fully and fairly litigate its substantial claim and objection to Plan feasibility within the timeframe of the Proposed Amended Scheduling Order.  Alcoa is fully prepared to litigate its claims on an expedited basis consistent with the existing schedule, but to further accelerate the schedule consistent with the Proposed Amended Scheduling Order is contrary to basic notions of fundamental fairness.

23.     Accordingly, through this Objection, Alcoa asks this Court to reject the Proposed Amended Scheduling Order.

## RESERVATION OF RIGHTS

24.     Alcoa is still reviewing the Proposed Amended Order and has initiated conversations with the Debtors about the new Plan confirmation timetable therein, as well as the Proposed Amended Scheduling Order's effects on (i) the timing for notice of assumption and (ii) the timing of discovery and the substance of a discovery plan.  Alcoa specifically reserves its right to amend or supplement this Objection in any way and at any time, including, without limitation, to amend or further revise the relief sought herein.

## JOINDER

25.     Alcoa joins all other objections to the entry of the Proposed Amended Scheduling Order to the extent not inconsistent with this Objection and/or the parties' prior stipulations.

**WHEREFORE**, Alcoa respectfully requests that the Court (i) maintain the Initial

Scheduling Order in full force and effect and (ii) grant Alcoa such other and further relief as this

Court may deem just and proper under the circumstances.

Dated: August 21, 2015
      Wilmington, Delaware

                        **LANDIS RATH & COBB LLP**

                        Adam G. Landis (No. 3407)
                        Matthew B. McGuire (No. 4366)
                        Joseph D. Wright (No. 5669)
                        919 Market Street, Suite 1800
                        Wilmington, DE  19899
                        Telephone: (302) 467-4400
                        Facsimile:  (302) 467-4450

                        -and-

                        **MCKOOL SMITH, P.C.**
                        Peter S. Goodman (*Admitted Pro Hac Vice*)
                        Michael R. Carney (*Admitted Pro Hac Vice*)
                        One Bryant Park, 47th Floor
                        New York, NY 10036
                        Telephone:  (212) 402-9400
                        Facsimile:  (212) 402-9444

                        *Counsel for Alcoa Inc.*