## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 5269, 5601 |

**OBJECTION OF THE EFH OFFICIAL COMMITTEE TO MOTION
OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER
AMENDING CERTAIN HEARING DATES AND DEADLINES IN CONNECTION
WITH THE CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION**

The official committee of unsecured creditors (the "**EFH Committee**") of Energy

Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC

("**EFIH**"), EFIH Finance Inc., and EECI, Inc. hereby submits this objection to the motion of

EFH and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") for entry of

an order amending certain hearing dates and deadlines in connection with the confirmation of the

Debtors' Plan [D.I. 5269] (the "**Scheduling Motion**"),[2] and respectfully represents as follows:

### Preliminary Statement

1.      The Debtors' Scheduling Motion attempts to paint a picture that the

Plan—which represents nothing more than a free option for a consortium of T-silo creditors to

purchase the E-silo's valuable interest in Oncor Electric Delivery Holdings Company LLC and

---

[1]     The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]     All capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Scheduling Motion or the *Third Amended Plan of Reorganization of Energy Future Holdings Corp, et. al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5244] (the "**Plan**"), as applicable.

its subsidiaries ("**Oncor**") if they choose to do so and no recourse if they decide to walk away—simplifies the Debtors' exit from bankruptcy and therefore justifies a substantially shortened confirmation litigation schedule.  The Debtors are wrong.  The Plan presents complex issues that require a fair and reasonable litigation schedule that is no shorter than the schedule already litigated, negotiated and entered by this Court, which contemplates a confirmation hearing beginning January 20, 2016.

2.     Moreover, after initially obfuscating their intentions, the Debtors on August 19 filed a revised proposed amended schedule (the "**Proposed Amended Schedule**") that seeks to shoehorn all discovery related to the Settlement Motion into the same expedited schedule.  The Settlement Motion, which contemplates the transfer of $700 million from EFH to TCEH based on claims of dubious value, is of crucial importance to the EFH Committee.  The Debtors' effort to roll discovery related to the Settlement Agreement and the Plan together ignores the separate issues raised by the Settlement Agreement, which will stand even if the Plan is never consummated, and the likelihood of litigation relating to the large transfer of value from EFH to TCEH in settling the inter-silo claims and granting the improper release of insiders included as terms of that settlement.

3.     While the Settlement Agreement is unrelated to the Plan's economic terms, the Debtors have nevertheless chosen to make approval of the Settlement Agreement a condition to confirmation of the Plan.  The Court has stated that the Settlement Agreement will be considered at the plan confirmation hearing.  (Aug. 18, 2015 Hr'g Tr. 40:1-5.)  As a result, the litigation schedule needs to account for the significant discovery necessary for the E-silo creditors to address the various components of the Settlement Motion.  As the Court recognized in remarks on August 18, 2015, the Settlement Agreement needs to be addressed on the merits,

which will include the need to present evidence that, in turn, requires discovery of that evidence. (*Id.*)  The time required to marshal the necessary evidence precludes the Debtors' attempt to further expedite what was already an ambitious litigation schedule.

4.       The Debtors' two other primary arguments in support of shortening the litigation schedule both fail.  First, EFH and EFIH creditors are not being "paid in full in cash," and the October confirmation hearing dates contemplated by the July Scheduling Order are thus irrelevant.  The Plan is conditioned on the Court's approval of the Settlement Agreement that, irrespective of whether the Plan is ever consummated, allows a $700 million claim in favor of TCEH, pays T-silo creditor professional fees and releases all E-silo debtor claims.  As long as the Plan is conditioned on the Settlement Agreement, E-silo creditors are not being paid in full.

5.       Second, the Debtors seek to expedite confirmation in order to ensure compliance with milestones set forth in the Plan Support Agreement.  The Debtors, however, candidly acknowledge that the professed need to shorten the schedule is strategic, stating "**[b]y design**, there is little room for delay if the Plan is to succeed."  (Mot. at 10 (emphasis added).) The only reason to design the Plan to require such an unreasonably compressed litigation schedule is to attempt to achieve victory by momentum; to effectively silence objectors by limiting the opportunity to conduct full and fair discovery in advance of a confirmation hearing. The self-serving exigency created by the Debtors is not a basis to trample the E-silo creditors' due process rights.

SC1:3926397.2

**Objection**

6.      The Debtors' Scheduling Motion presents no legitimate basis to truncate the confirmation schedule set forth in the July Scheduling Order,[3] and the thus that motion should be denied.  The Plan and the newly separate Settlement Agreement on which the Plan is conditioned, together, present *more* complex issues than the prior plan of reorganization (which incorporated the proposed inter-silo debtors claim settlement only as part of an effective plan of reorganization).  The current Plan and the Settlement Motion were not filed until August 10, 2015.  The EFH Committee was not provided an advance opportunity to review the more than 1,800 pages of documents that were filed.  As of the date of this objection, the Debtors continue to withhold material transaction documents, including the debt commitment documents, the Oncor Letter Agreement, and the signature pages to the Settlement Agreement and the Plan Support Agreement.  The Debtors' unilateral redaction of signature pages, without filing a motion to seal, improperly deprives the EFH Committee and other stakeholders from knowing who orchestrated these transactions and thus from whom discovery is necessary.

7.      If anything, the litigation schedule should be lengthened, not shortened, to deal with the many important issues raised by both the Plan and the Settlement Agreement. Mindful of not creating undue delay, the EFH Committee is prepared to abide by the schedule set forth in the July Scheduling Order despite the passage of time, and the Debtors and the T-silo creditors should as well.  The hearing to consider the Plan and Settlement Agreement should remain on January 20, 2016.

---

[3]     The "**July Scheduling Order**" is the *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* [D.I. 4916].

-4-

## I.        THE PROPOSED AMENDED SCHEDULE IS UNREASONABLE

8.        The Debtors have chosen a path of litigation with the E-silo unsecured creditors, none of whom, to the EFH Committee's knowledge, support the Plan.  The Debtors' refrain that the E-silo creditors are unimpaired under the Plan (itself a disputed issue) is of no moment.  As discussed below, there are numerous issues for which the EFH Committee is entitled to discovery to develop its objections even if E-silo creditors are unimpaired, including issues relating to good faith and feasibility.  Moreover, the EFH Committee is unquestionably entitled to discovery in connection with the Settlement Motion.

9.        Complex litigation takes time, and the Debtors and the Plan Sponsors should not be permitted to circumvent the litigation process to further their strategic interests. The Debtors seek to shorten the court-approved litigation schedule detailed in the July Scheduling Order by 84 days, reduce the time to complete fact discovery to a mere 30 days, and fast-track a confirmation hearing to commence on October 28, 2015.  That schedule is both unreasonable and unrealistic, and should be rejected.

### A.        The Proposed Schedule Flouts the Current Confirmation Schedule.

10.        A central premise of the Scheduling Motion is that the Plan satisfies the requirements necessary to move up the confirmation hearing to October 2015, as contemplated by the July Scheduling Order.  (*See* Mot. at 1, 6-7, 11.)  This argument is disingenuous.

11.        Article IX.A.1 of the Plan makes it a pre-condition to confirmation that the "Bankruptcy Court shall have entered the Settlement Order" approving the Settlement Agreement.  Among other things, the Settlement Agreement (a) provides TCEH a $700 million allowed claim against EFH, (b) resolves all inter-silo debtor claims "from the beginning of the world through the Settlement Effective Date," (c) provides advance releases to insiders, and (d) provides for T-silo creditors' professional fees to be paid.  (Settlement Agmt. §§ 2.1, 2.3, 2.4,

-5-

2.7.)  Critically, the Settlement Agreement would "remain binding on all Parties regardless of whether the Plan is confirmed or consummated." (*Id.*, at Recitals.)

12.     By conditioning confirmation of the Plan on approval of the Settlement Agreement, the Debtors have effectively made the Settlement Agreement an integral part of the Plan.  EFH creditors are impaired by the terms of the Settlement Agreement if the Plan Sponsors choose not to exercise their option and consummate the Plan, and E-silo creditors will not be paid in full in cash as contemplated by the July Scheduling Order.  Given the highly conditional nature of the Plan, and the complete lack of recourse against the Plan Sponsors should they decide to walk away, there is a serious risk the Plan will not be consummated.

13.     The Debtors unnecessarily chose to condition the Plan upon approval of the Settlement Agreement.  After all, the terms of the inter-silo debtor settlement are mooted by the terms of the Plan because, if consummated, the TCEH Settlement Claim is deemed satisfied (Plan Article IV.B.16), and plan releases are provided (Plan Article VIII).  The terms of the inter-silo debtor settlement are thus relevant only to plans of reorganization *other* than the Plan. However, having chosen to link the two, EFIH and EFH creditors are not being paid in full because the terms of the Settlement Agreement must also be considered.

14.     The Debtors' argument is further belied by the facts upon which an October confirmation hearing was contemplated in the context of the July Scheduling Order.  An October confirmation hearing was premised on a consensual resolution of the case with no meaningful contested issues because E-silo claims would be satisfied in full in cash.  Counsel for the TCEH Committee described being in a position to invoke paragraph 9 of the July Scheduling Order as "nirvana" because these cases could be quickly concluded on a consensual basis.  (June 25, 2015 Hr'g Tr. at 46:13-17.)  The current Plan achieves nothing of the sort.

-6-

15.    At the June 25, 2015 scheduling hearing, counsel for the TCEH unsecured noteholders—now proponents of the Plan—argued that complex litigation would be necessary if T-silo creditors were not bought off with the T-silo creditors' REIT Reorganization plan.  He asserted that contesting the inter-debtor claims settlement would mean "there's a lot of litigation to be done." (*Id.* at 52:8-12.)  In fact, the T-silo unsecured creditors were then arguing that a January 2016 confirmation hearing was "burdensome" and threatened to "ask for additional time." (*Id.* at 13:9-14.)  The same issues that were the focus of T-silo creditors two months ago (and more) remain today as the focus of E-silo creditors.  The fact that E-silo creditors remain as the primary objectors does not in any way lessen the time necessary for discovery and pre-trial matters.

**B.    Significant Discovery is Necessary With Respect to the Plan and Settlement Agreement.**

16.    The Debtors seek to drastically shorten the schedule detailed in the July Scheduling Order so that a confirmation hearing can commence on October 28, 2015.  The Debtors' Proposed Amended Schedule would have fact discovery *close* on September 25, 2015, after a mere 30 days.[4]  The July Scheduling Order provides an already compressed 101 days for fact discovery (thirteen of which passed prior to the Plan and Settlement Agreement being filed).  The chart below illustrates the impact of the Debtors' modified schedule on the ability of E-silo creditors to investigate the Plan and Settlement Agreement, prepare an objection, and prepare for trial:

---

[4]    Assuming the Court approves the proposed Amended Confirmation Scheduling Order on August 25, 2015.

| Event | Period Under July Scheduling Order | Period Under Debtors' Proposed Amended Schedule | Change in Time Period |
|---|---|---|---|
| Fact discovery period | 101 days | 30 days | Minus 71 days |
| Time to complete deposition of fact witnesses | 46 days | 24 days | Minus 22 days |
| Time between deadline to complete document production and deadline to file motions to compel | 21 days | 7 days | Minus 14 days |
| Time between designation of expert witness and deadline to complete expert discovery | 38 days | 18 days | Minus 20 days |
| Time to file objections to plan | 151 days | 67 days | Minus 84 days |
| Time between filing plan objections and deadline for *motions in limine* and pretrial briefs | 22 days | 0 days | Minus 22 days |

17.    Furthermore, the Debtors' new proposed schedule provides *no* opportunity to serve additional document discovery in connection with the Plan.  The July Scheduling Order specifically contemplates the service of supplemental document requests upon the filing of an amended plan or if material modifications are made to the plan.  (July Scheduling Order at ¶¶ 8.b, 8.c.)  Stakeholders must be permitted to amend and supplement the pending document discovery to address the new Plan.  However, before supplemental discovery can be served, the Debtors need to provide the missing documents related to the transactions contemplated by the

-8-

Plan. The EFH Committee has requested those documents from the Debtors, but none have been provided. The Debtors should be directed to immediately provide the requested transaction documents and the EFH Committee will then serve its supplemental document requests within three days of receiving those documents.

18.     The time provided by the Debtors' new proposed schedule is ludicrous under the circumstances. But the Debtors do not stop there. The Proposed Amended Schedule also restricts the ability to conduct discovery in more direct ways than shortening the time available. Most notably, Paragraph 15 reduces the aggregate maximum number of fact depositions from 30 to only 10. After 10 collective depositions, plan objectors must obtain leave of the Court for good cause shown before noticing a deposition. Incredibly, the Debtors ask that this limit of 10 depositions apply to the Plan and the Settlement Agreement combined.

### i.     Plan Discovery

19.     E-silo creditors, even if purportedly unimpaired, have standing to object to Plan confirmation. For example, all parties in interest have standing to assert that a plan of reorganization was not proposed in good faith under section 1129(a)(3). *In re Big Shanty Land Corp.* v. *Comer Prop.*, *Inc.*, 61 B.R. 272, 280 (N.D. Ga. 1985) (holding that an aggrieved losing bidder and creditor has standing to raise good faith arguments and that the court has an independent duty to examine good faith in any event); *see also In re 203 North LaSalle Street Ltd. P'ship*, 190 B.R. 567, 593 (Bankr. N.D. Ill. 1995) (noting that the debtor's lender "plainly" has standing to raise good faith challenges under section 1129(a)(3)). Unimpaired creditors also have standing to object to the feasibility of a proposed plan of reorganization. *In re Scott Cable Commc'ns, Inc.*, 232 B.R. 558, 564 n.4 (Bankr. D. Conn. 1999), *rev'd in part on other grounds*, 259 B.R. 536 (D. Conn. 2001) (noting that an unimpaired creditor has standing to object to

-9-

confirmation on the basis of feasibility under section 1129(a)(11)).  Good faith is a critical issue

that must be explored in connection with confirmation discovery given the cancellation of a

competitive bidding process and the absence of a binding bid.

20.     Courts in this Circuit permit "wide-ranging discovery" in connection with

plan confirmation hearings.  *See*, *e.g.*, *In re Int'l Wireless Commc'ns Holdings, Inc.*, 1999 Bankr.

LEXIS 1853, at *9 (Bankr. D. Del. Mar. 26, 1999) (permitting minority shareholders to obtain

wide-ranging discovery in preparation for the confirmation hearing).  Under Rule 26(b)(1) of the

Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7026, parties are entitled

to obtain discovery on matters "relevant to any party's claim or defense" that are "reasonably

calculated to lead to the discovery of admissible evidence."  *In re NewStarcom Holdings, Inc.*,

514 B.R. 394, 399-400 (Bankr. D. Del. 2014).  The Debtors would turn these rules on their head,

severely limiting the ability of E-silo creditors to obtain discovery concerning the Plan.

21.     The Debtors attempt to justify their Proposed Amended Schedule by

asserting that there are somehow "far fewer issues in play" so "the scope of discovery can

likewise be substantially narrowed, and the confirmation schedule and hearing can be shortened

accordingly."  (Mot. at 2.)  The entire premise of this assertion is wrong.

22.     There are certainly not "far fewer issues in play."  While some issues have

faded, others have emerged.  By way of example, the July Scheduling Order was entered in

connection with a plan filed during an ongoing competitive auction process for Oncor.  The EFH

Committee was an active participant with broad approval and review rights in that process, as

contemplated by the Court-approved bidding procedures.  The goal of the process was to identify

the highest and best bid—where "best" may or may not have been the highest bid because all

terms, including conditionality of the bid, were to be considered.  The auction was subsequently

cancelled, the publicly reported bid from the Hunt group was mysteriously converted into a T-silo creditor "plan proposal," and the current Plan was developed in secret through collusion among previously competing bidders in the auction, to the exclusion of the EFH Committee and its constituents. As a result, discovery is necessary into the circumstances surrounding the failed auction and the development of the Plan in order to evaluate whether the auction was conducted in compliance with the law and the Plan was filed in good faith in compliance with Section 1129(a)(3).

23.     Furthermore, the Plan Sponsors have an unfettered right to walk away without recourse of any kind. The Debtors' disclosure statement acknowledges that whether or not the closing conditions are satisfied, the Plan Sponsors "may determine not to close the Merger or contribute the cash necessary under the Plan." (Disclosure Statement at 173.) If the Plan Sponsors decide they no longer want to purchase Oncor, "the Debtors will lack the ability to pursue specific performance or damages." (*Id.* at 160.) Under these highly unusual circumstances, creditors must be permitted to investigate whether the Plan is feasible under section 1129(a)(11) and, importantly, what happens if the Plan never goes effective.

24.     The Debtors have disclosed that consummation of the Plan is subject to conditions whose fulfillment is highly uncertain, including the issuance of regulatory approval and rulings from various government agencies. The risks posed by the multitude of conditions require both fact discovery and potential expert testimony. The debt commitment documents will likely reveal that the debt funding is subject to additional conditions equally, if not more stringent on the Debtors. The uncertain nature of the REIT Reorganization that is a central element of the plan is evident from the Debtors' insistence on conditioning the Plan on approval of the Settlement Agreement. Discovery on all of these issues is appropriate.

-11-

25.    The EFH Committee is entitled to discovery on other issues as well, including the improper releases of third parties and pre-effective date releases of insiders.  The current equity sponsors were at the negotiating table while E-silo creditors were not.  Presumably as a result, those negotiating the Plan terms for the Debtors sought and obtained pre-effective date releases for insiders without any assurance that the Plan will be consummated.[5]  The Plan also raises, among other things, questions of disparate treatment of EFIH creditors, questions about whether E-silo creditors are impaired without being solicited, questions about feasibility with respect to the E-silo Debtors assuming claims of asbestos victims, and questions under section 1129(a)(4) by providing payments of tens of millions of dollars to T-silo creditors' advisors without oversight.

### ii.    Settlement Agreement Discovery

26.    As the Court acknowledged at the August 18, 2015 hearing, the Settlement Agreement needs to be addressed on the merits, which will include evidence and "evidence means discovery."  (Aug. 18, 2015 Hr'g Tr. 40:1-5.)  The Settlement Motion is a contested matter for which Rule 26 of the Federal Rules of Civil Procedure applies.  Courts in the Third Circuit have long recognized that Rule 26 "allow[s] broad and liberal discovery."  *Pacitti* v. *Macy's*, 193 F.3d 766, 777 (3d Cir. 1999).  As here, where the settlement in question materially impacts creditor recoveries and the outcome of the Debtors' cases, the scope of permissible discovery needs to be broad.  The EFH Committee should be permitted a meaningful opportunity to develop the evidence necessary to challenge the Settlement Agreement through discovery.

---

[5]    All matters relating to claims against the equity sponsors, including proposed releases thereof, are being handled only by Montgomery McCracken Walker & Rhoads LLP, conflicts counsel to the EFH Committee.

27.     The Settlement Agreement, among other things, adopts the core terms of the inter-debtor claims settlement proposed by the Disinterested Directors.  The Court has previously been informed of the complex issues presented by the terms of the inter-debtor claims settlement, all of which require discovery and investigation, including:

- the process by which the inter-debtor settlement was negotiated, agreed upon and approved;

- the insider nature of the transaction and other conflict matters, including bargaining for releases, for which a heightened standard of review is required;

- whether there is any need to facilitate a tax-free reorganization and the consideration provided for such a tax-free reorganization;

- consideration of the merits of each of the underlying inter-debtor claims being resolved and released, including the tax claims that are the subject of the EFH Committee's Tax Objection;[6] and

- whether the terms of the Settlement Agreement are appropriate from the perspective of each of the individual Debtor estates and its creditors.

28.     This last issue is made more complex because the Debtors are now seeking to bind all stakeholders to the terms of the Settlement Agreement—including the inter-debtor claims settlement, the allowance of the $700 million claim in favor of TCEH, and releases for insiders—without regard for plan structure, creditor recoveries or the date of emergence.

29.     Discovery is also necessary to explore the reasons for the Debtors' complete about-face concerning their repeated representations that **"the inter-debtor settlement as a whole needs to be considered in the context of the plan."**  (May 13, 2015 Hr'g Tr., 25:6-9; 25:22-26:5 (emphasis added).)  In determining to stay the EFH Committee's Tax Objection, the Court observed that "[a]ny rights to dispute the validity of that claim are fully preserved in

---

[6]     *Objection of the EFH Official Committee to General Unsecured Tax Claims of Texas Competitive Electric Holdings Company LLC Against Energy Future Holdings Corporation* [D.I. 4365] (the "**Tax Objection**").

SC1:3926397.2

that the parties will have their rights to dispute the settlement.  If the underlying claim has no

merit and the settlement rises or falls on the settlement of a claim that makes no sense, then the

settlement itself comes into question."  (*Id*. at 38:4-10.)  The Debtors' Proposed Amended

Schedule attempts to preempt any meaningful challenge to the terms of the Settlement

Agreement, which would stand even if the Plan is never contemplated.  The Debtors' attempt to

force a rush to judgment on the Settlement Agreement should be rejected.

### iii.    Discovery to Be Conducted

30.    In order to develop the relevant evidence and prepare for trial, the EFH

Committee is entitled to—and requires—discovery from the Debtors and the Plan Sponsors.  The

EFH Committee reserves its rights to pursue any appropriate discovery as permitted by the

applicable rules.  As of now, however, the EFH Committee has, in accordance with the July

Scheduling Order, served Initial Consolidated Requests for documents on the following

Participating Parties:  (i) the Debtors, (ii) the Ad Hoc Committee of TCEH First Lien Creditors

and its members, (iii) the Ad Hoc Group of TCEH Second Lien Creditors and its members,

(iv) the Ad Hoc Group of TCEH Unsecured Creditors and its members, and (v) the equity

sponsors.[7]  The EFH Committee has also subpoenaed documents from each of the Disinterested

Directors.  The EFH Committee served its document requests prior to the Debtors filing their

amended Plan and related documents, and thus will need to supplement those requests promptly

upon receipt of all Plan-related documents.  There are third parties from whom the EFH

Committee also intends to seek discovery.  The documents ultimately produced—which will

---

[7]    All matters relating to claims against the equity sponsors, including proposed releases thereof, are being
handled only by Montgomery McCracken Walker & Rhoads LLP, conflicts counsel to the EFH Committee.

total hundreds of thousands of pages or more—will need to be reviewed and considered prior to proceeding with depositions or expert discovery.

31.    The Debtors and the T-silo creditor groups, on August 18, 2015, served responses and objections to the EFH Committee's document requests.  In a clearly coordinated strategy, the T-silo creditors have all taken the untenable position that all of the discovery sought by the EFH Committee is objectionable and they will produce nothing.  The same creditors advocating for the Debtors' accelerated Proposed Amended Schedule have thus created a significant discovery dispute that the EFH Committee will address at the appropriate time.  The Debtors, on the other hand, on August 17, 2015 decided to make an initial production of documents totaling over 231,000 pages without any indication of what was produced.  This indiscriminate document dump will take time to review and digest, and such an uncooperative approach is inconsistent with the Debtors' stated desire to complete all fact discovery—including a significant number of depositions—in the next 30 days.  Based on the Debtors' written responses and objections, there likely will be discovery disputes with the Debtors as well.[8]

32.    A significant number of depositions will need to be taken after document discovery is complete.  These depositions will likely include:  (i) each of the four Disinterested Directors, (ii) the Debtors, (iii) the Debtors' Co-Chief Restructuring Officers, (iv) Hunt, (v) the Hunt Investor Parties, (vi) at least certain of the ten principal Creditor Investor Parties, and (vii) the equity sponsors.  All parties understood the likelihood for numerous depositions by including 30 depositions for objectors as the number in the July Scheduling Order before court

---

[8]    The EFH Committee expects to meet and confer with the Debtors and the T-silo creditor groups regarding discovery in due course.

approval is necessary.  The attempt to slash those 30 depositions to just 10 depositions is another example of Debtors' improper efforts to silence E-silo creditors.

## II.      ARTIFICIAL PLAN SUPPORT MILESTONES DO NOT TRUMP DUE PROCESS

33.     The Plan Support Agreement entered into among the Debtors, their T-silo creditor allies, and the equity sponsors contains certain milestones relied upon by the Debtors as a basis for requesting an expedited litigation schedule.  Specifically, the Debtors assert that the confirmation hearing must begin on October 28, 2015 to ensure that the artificial milestone of confirming the Plan *and* approving the Settlement Agreement occur by January 15, 2016. (Mot. at 10.)  While the EFH Committee shares a goal of a successful emergence from chapter 11 as soon as practicable, due process and fundamental fairness require that stakeholders be permitted sufficient time to meaningfully challenge the Plan and Settlement Agreement.  The rights of E-silo creditors cannot be trampled to facilitate compliance with tactical milestones that are just dates pulled out of the air, with no independent significance.

34.     The Debtors acknowledge that the so-called exigency they invoke is not only entirely of the Debtors' and the Plan Sponsors' own making, but "by design."  (Mot. at 10.) The Court should not reward the Debtors and Plan Sponsors for manufacturing a highly compressed series of milestones that would prevent the E-silo creditors from fully evaluating the Plan and the Settlement Agreement, and challenging them to the extent necessary to protect the legitimate interests of the E-silo creditors.

### Conclusion

35.     For the reasons stated herein, the EFH Committee respectfully requests that the Court (i) deny the Scheduling Motion and reaffirm the July Scheduling Order, and

SC1:3926397.2

(ii) permit the EFH Committee to serve supplemental document requests within three days of

receipt of the undisclosed Plan-related documents.[9]

Dated:  Wilmington, Delaware
        August 21, 2015

MONTGOMERY McCRACKEN WALKER
& RHOADS, LLP

*/s/ Mark A. Fink*
Natalie D. Ramsey (DE Bar No. 5378)
Davis Lee Wright (DE Bar No. 4324)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE  19801
Telephone: (302) 504-7800
Facsimile: (302) 504 -7820
E-mail:        nramsey@mmwr.com
               dwright@mmwr.com
               mfink@mmwr.com

– and –

SULLIVAN & CROMWELL LLP

Andrew G. Dietderich
Steven L. Holley
Robert J. Giuffra, Jr.
Brian D. Glueckstein
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:        dietdericha@sullcrom.com
               holleys@sullcrom.com
               giuffrar@sullcrom.com
               gluecksteinb@sullcrom.com

*Counsel for The Official Committee of Unsecured
Creditors of Energy Future Holdings Corp.,
Energy Future Intermediate Holding Company
LLC, EFIH Finance Inc., and EECI, Inc.*

---

[9]     The EFH Committee is currently discussing with the Debtors scheduling matters with respect to the Plan
Support Agreement Motion.  To the extent unresolved, the EFH Committee intends to also address them with
the Court.