**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) | (Jointly Administered)<br><br>Re: Docket No. 5686 |

**AD HOC GROUP OF TCEH UNSECURED NOTEHOLDERS'
JOINDER IN DEBTORS' REPLY IN FURTHER SUPPORT OF THEIR
MOTION FOR ENTRY OF AN ORDER AMENDING CERTAIN
HEARING DATES AND DEADLINES IN CONNECTION WITH THE
<u>CONFIRMATION OF DEBTORS' PLAN OF REORGANIZATION</u>**

The ad hoc group of certain holders (the "Ad Hoc Group") of approximately $3.0 billion of 10.25% Fixed Senior Notes due 2015 (including Series B) and 10.50%/11.25% Senior Toggle Notes due 2016 issued by Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc., by and through its undersigned counsel, hereby joins in the *Debtors' Reply in Further Support of Their Motion for Entry of an Order Amending Certain Hearing Dates and Deadlines in Connection With the Confirmation of Debtors' Plan of Reorganization* [Docket No. 5686] (the "Reply") as set forth herein.[2] In support of this joinder, the Ad Hoc Group respectfully represents as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s federal tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Reply.

## JOINDER

The members of the Ad Hoc Group hold, collectively, nearly $3.0 billion of unsecured claims against the TCEH Debtors' estates. As a representative of the single largest unsecured creditor-constituency of the T-side estates, the Ad Hoc Group is keenly interested in seeing these chapter 11 cases resolved in a timely and resounding success. For the reasons set forth herein, the Ad Hoc Group joins in those aspects of the Reply (i) seeking a hearing on the Plan pursuant to the schedule proposed by the Debtors and (ii) addressing the Objectors' misplaced attacks on the nature and level of the funding commitment on the part of the T-side unsecured creditors and the other Plan Sponsors (as defined in the Plan).

The Ad Hoc Group echoes the Debtors' desire for entry of the proposed amended confirmation schedule, which represents the only present means of facilitating any exit from chapter 11 in the near-term while still providing appropriate due process. In the absence of the E-side merger transaction and T-side spin-off contemplated by the Plan, the paralysis among E-side creditors and their inability to raise the capital necessary to effectuate an E-side equitization would have resulted in the dual-cramdown plan scenario described in the Reply and an open-ended, destructive stay in chapter 11. In addition to conserving the time and money that otherwise would be spent in limbo while all wait for an impaired E-side solution, the Plan provides for payment in full of all allowed E-side claims and permits T-side creditors to invest in the reorganized E-side, thereby realizing value that would otherwise go unrealized in any other structure contemplated in these chapter 11 cases. The window for obtaining that success, however, is of an extremely limited duration. Pointedly, the Debtors and the T-side first lien creditors are affording the T-side unsecured creditors one shot to confirm and consummate the

2

Plan, and the E-side creditors one shot at payment in full, which all disappears if the Plan does not proceed on the milestones set forth in the PSA.

Given the complexity of the transactions contemplated by the Plan and the need for significant post-confirmation processes, members of the Ad Hoc Group would certainly have appreciated additional time to pursue confirmation and consummation. The agreed milestones, however, were heavily negotiated, are an integral part of the deal, and are much later in time than certain necessary parties were originally willing to agree. Indeed, only by agreeing to a reduction in recoveries in an alternative plan scenario were the T-side unsecured creditors (and the T-side official committee) able to secure any "flex" in the disclosure statement, confirmation and plan consummation milestones. See PSA § 11(d), (e), (g). There simply is no more time to build into the schedule and still present the parties a reasonable opportunity to get to consummation in time.

Regarding the Objectors' claims that the Plan constitutes a "free option" for T-side unsecured creditors, those objections will be addressed on a full record in the context of the hearing on approval of the PSA. The Ad Hoc Group nevertheless notes its strong disagreement with the suggestion that the E-side merger transaction is in any way an "option" at all. All of the commitments that form the basis of the Plan transaction documents are memorialized in binding contracts, signed by the parties thereto and filed on the docket. Those contracts require performance by members of the Ad Hoc Group, various other T-side creditors and the Plan Sponsors and, in tandem, establish an obligation on all parties to pursue the Plan and the transactions contemplated by it. Contrary to the insinuation of the Objectors, none of those documents permit a funding party an option to elect not to fund a transaction that is otherwise subject to performance. On the contrary, if the Plan Sponsors or other parties to that transaction

3

fail to perform their commitments or other agreements despite all conditions to funding and closing having been satisfied, there are a detailed series of consequences that flow, most notably the "disarmament" that relegates all T-side unsecured recoveries to one small pot of cash to be paid at consummation of some unspecified plan at some unspecified date far in the future.  At heart, the Objectors are simply protesting that the remedies for non-performance are not, in their view, sufficiently punitive to incentivize performance.  They do so, however, without suggesting what they would consider an appropriate remedy in the context of contracts that are subject to a broad fiduciary out by the Debtors or what option they have that is better than the construct that the Plan support parties have negotiated over the past months with the assistance of the plan mediator.  Again, the Ad Hoc Group will create a record as to how the contemplated remedies were negotiated and what they mean, but the Court can be assured that "disarmament" presents a far more than significant disincentive not to close than any break fee or other traditional remedy in a funding commitment.

## RESERVATION OF RIGHTS

The Ad Hoc Group hereby reserves all rights to respond further with respect to the objections to the Debtors' proposed amended confirmation schedule and to participate at the hearing with respect thereto.

**CONCLUSION**

WHEREFORE, the Ad Hoc Group joins in the Reply as set forth herein and requests that the Court enter an order approving the Debtors' proposed amended confirmation schedule.

Dated: August 24, 2015
      Wilmington, Delaware

                        FOX ROTHSCHILD LLP

                By:  /s/ *L. John Bird*
                        Jeffrey M. Schlerf (No. 3047)
                        L. John Bird (No. 5310)
                        919 North Market St., Suite 300
                        Wilmington, DE 19801
                        Telephone: (302) 654-7444
                        Facsimile: (302) 463-4971
                        jschlerf@foxrothschild.com
                        lbird@foxrothschild.com

                        and

                        WHITE & CASE LLP
                        J. Christopher Shore (admitted *pro hac vice*)
                        Gregory M. Starner (admitted *pro hac vice*)
                        1155 Avenue of the Americas
                        New York, NY 10036
                        Telephone: (212) 819-8200
                        Facsimile: (212) 354-8113
                        cshore@whitecase.com
                        gstarner@whitecase.com

                        Thomas E Lauria (admitted *pro hac vice*)
                        Matthew C. Brown (admitted *pro hac vice*)
                        Southeast Financial Center, Suite 4900
                        200 South Biscayne Blvd.
                        Miami, FL 33131
                        Telephone: (305) 371-2700
                        Facsimile: (305) 358-5744
                        tlauria@whitecase.com
                        mbrown@whitecase.com

                        *Counsel to the Ad Hoc Group of*
                        *TCEH Unsecured Noteholders*

5