## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Hearing Date: September 17, 2015 at 9:30 a.m.** |
| | ) | **Objection Deadline: September 10, 2015 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE STIPULATION BETWEEN CERTAIN DEBTORS AND HOLT (A) RESOLVING CLAIMS ASSERTED BY HOLT AND (B) ASSUMING CERTAIN AMENDED EXECUTORY CONTRACTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the Stipulation, attached as **Exhibit 1** to **Exhibit A**, between Texas Competitive Electric Holdings Company LLC, Sandow Power Company LLC, Oak Grove Management Company LLC, Oak Grove Mining Company LLC, Luminant Mining Company LLC, Luminant Generation Company LLC, Luminant Big Brown Mining Company LLC, and EFH Corporate Services Company, (collectively, the "Settling Debtors") and Holt Texas Ltd. (d/b/a HOLT CAT) (together with its affiliates and successors, "Holt" and together with the Settling Debtors, the "Parties"), dated August 27, 2015 (the "Stipulation"). In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel in Support of the Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Approving the Stipulation between Certain Debtors and Holt (A) Resolving Claims Asserted by Holt and (B) Assuming Certain*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Amended Executory Contracts* (the "Frenzel Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully state as follows.

<h3 align="center">Jurisdiction and Venue</h3>

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105(a), 363(b), and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

<h3 align="center">Relief Requested</h3>

4.      By this Motion, the Debtors seek entry of the Order approving the Stipulation, which (a) resolves outstanding claims between the Parties and (b) permits the Settling Debtors to assume the Executory Contracts, as amended by the Amendments (each as described herein), on terms negotiated at arms'-length and mutually beneficially to the Parties.

**Background**

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Holt is a member of the TCEH Creditors' Committee and is independently represented by counsel.

6.      Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

**I.      The Parties' Prepetition Agreements and Outstanding Obligations.**

7.      The Debtors operate as the largest lignite coal miner in Texas and the ninth-largest coal miner in the United States.  In 2014, by way of example, the Debtors recovered approximately 30 million tons of lignite to fuel their generation plants.  The Debtors' mining operations have historically been a tremendous source of value and are critical to the intertwined

nature of the Debtors' operations (*i.e.*, the Debtors use the lignite and coal recovered through their mining operations as a fuel source their generation facilities and produce energy that is then sold by their retail entities and to the wholesale market).

8.      Holt has historically been a valuable partner in the Settling Debtors' mining operations for a number of reasons.  ***First***, Holt is the only supplier of new Caterpillar mining equipment (known as "CATs") in certain regions of Texas, and Holt sponsors certain of the Settling Debtors in a loyalty program to Caterpillar that provides the Settling Debtors with further discounts.  ***Second***, the Settling Debtors regularly rebuild their mining-related equipment to extend the life of such equipment (rebuilding can extend the life of equipment from seven to thirteen years).  Holt has four to five times the rebuild capacity of its nearest competitor, thus creating significant economies of scale.  This is especially important as the Settling Debtors anticipate launching substantial rebuild efforts from 2017-2019.  ***Third***, Holt provides the Settling Debtors with certified on-site mechanics to supplement the Settling Debtors' efforts on a warrantied basis, and provides continued technical and product improvement updates on critical mining equipment for the life of such equipment.  Importantly, Holt has a formal and recognized safety program and is known for providing high quality parts and services.

9.      The Settling Debtors and Holt have a longstanding strategic relationship that has been mutually beneficial to both parties. The Settling Debtors own 190 pieces of Holt-manufactured equipment, constituting 80% of the Settling Debtors' heavy and medium-duty mining equipment.  Furthermore, the Settling Debtors are the single-largest customer (based on revenue) of Holt and its affiliates. This business relationship among Holt and the Settling Debtors is expected to continue.

10.      Since 2011, Holt has provided machinery, equipment, and services critical to the

Settling Debtors' mining operations.  These contractual commitments are set forth in the following agreements:  (a) certain site-based contracts-for-services agreements (collectively, the "CFS"), (b) an undercarriage contract (the "U/C"), and (c) a vendor-managed inventory contract (the "VMI") (collectively, the "Executory Contracts"):

- **CFS**.  The CFS are for repair services associated with the Caterpillar mining equipment the Settling Debtors own and operate. These machines include draglines and hydraulic excavators for extracting, large tractor dozers and trucks for material handling, and fire safety critical for mining operations. Compared to their equivalents, CATs are known for their fuel efficiency, dependability, and ability to operate over large tracts of land and with the success of machine rebuilding, the lowest total cost of ownership.

- **U/C**.  The Settling Debtors utilize complete undercarriages from Holt for each of the approximate 62 bulldozers in the Settling Debtors' fleet. The dozer fleet runs three shifts per day and the undercarriage of the dozer wears out with use requiring replacement.  This agreement provides a comprehensive program for inspections, the components themselves, and a unique, in-field, replacement service requiring specialized capital equipment and service crew dedicated to this work to optimize productivity of these machines.  Components include, among other things, the tracks, pins and links, sprocket segments, and rollers used to mobilize bulldozers.  Top-of-the-line undercarriages are critical to maximizing life of the equipment as well as the safety of mining operators. As a result, it is critically important to ensure that undercarriages are inspected and maintained through reliable vendors like Holt.

- **VMI**.  Holt keeps an inventory of essential parts necessary to keep the CATs operating smoothly and to use in the event parts need to be repaired or replaced on-site. Such inventory is made available to the Settling Debtors at each site and the availability of such inventory is integrated into the Settling Debtors' job-planning efforts.  Holt also ensures that such inventory is available for overnight jobs and such inventory is often critical to minimizing down-time in the event of unplanned maintenance.

RLF1 12896927v.1

11.     In connection with outstanding amounts owed to Holt under the Executory Contracts, the Scheduling Debtors' schedules of assets and liabilities and statements of financial affairs, filed on June 30, 2014 (the "Statements and Schedules") reflected an aggregate unsecured liability of $9,429,474.15 to Holt.[2]

12.     On October 24, 2014, Holt filed five identical proofs of claim against each of the Settling Debtors, asserting, in the aggregate, $15,620,361.60 in liquidated amounts and certain unliquidated amounts (collectively, the "Asserted Claims"), with certain amounts specified as being secured claims and certain other amounts specified as having priority status under section 503(b)(9) of the Bankruptcy Code or administrative status as amounts accrued on account of postpetition transactions.  The liquidated amounts included in the Asserted Claims were asserted in a single aggregate amount but, as discussed below, further discussions and account reconciliation efforts between the Parties disclosed that the Asserted Claims reflected a number of different types of claims.

## II.    Negotiations Regarding Global Resolution of Proofs of Claim and Executory Contracts.

13.     Since the Petition Date, the Debtors and Holt have been engaged in discussions regarding the Executory Contracts and the Asserted Claims, including with respect to (a) the potential for global resolution of ongoing issues related to the Asserted Claims; and (b) the potential amendment and assumption of the Executory Contracts.  A critical part of this process was reconciling the outstanding obligations reflected on the Settling Debtors' Statements and Schedules and the amounts asserted in the Asserted Claims.  As part of this reconciliation

---

[2]     *See* Scheduled Claim Nos. 501800590, 503218420, 502204090, 504232800, 504232770, 504232790, 502204130, 504232760, 503218440, 503218430, 504232730, 502204120, 504232750, 504232740, 502204150, 502204140, 502204100, 503302490, 504232780, 502204110, 502204160, 504233540, and 597802720.

process, the Parties agreed to put forth proposals regarding the terms of any amendments to the Executory Contracts (collectively, the "<u>Amendments</u>").   Ultimately, these efforts yielded the terms set forth in the Stipulation, attached as **<u>Exhibit 1</u>** to **<u>Exhibit A</u>**.

14.   ***Resolution of Asserted Claims***. Specifically, the Parties agreed that the Asserted Claims would be categorized into the following types of claims, each of which would be allowed as follows and each of which would receive the following treatment on account of such allowed claims (collectively, the "<u>Agreed Claims</u>"):

| Analysis of Claim | Description | Parties' Resolution |
|---|---|---|
| **PMSI Claim** | Amounts related to a purchase money security interest in equipment purchased on November 14, 2013, for which Holt asserts it filed a UCC statement and otherwise has a perfected security interest, and accrued interest at 18%, in the full amount of $2,674,231. | An allowed secured claim in the amount of $2,295,256 (reflecting 7.5% simple accrued interest from the Petition Date through the September 30, 2015), payable by the Settling Debtors within five (5) business days after entry of the Order. |
| **Priority Claim** | Amounts related to services provided off-site after the Petition Date in the full amount of $1,464,998. | An allowed general administrative claim in the amount of $750,000 to be paid in cash upon the effective date of the Debtors' plan of reorganization filed on August 10, 2015 [D.I. 5244] (as may be amended, modified, or supplemented from time to time, the "Plan"). |
| **503(b)(9) Claims** | Amounts related to (a) $888,274 in pure goods delivered in the 21 days before the Petition Date; (b) $150,093 in goods delivered as part of on-site repairs in the 21 days before the Petition Date; and (c) $373,708 in goods delivered as part of off-site repairs under "cross-over" invoices in the 21 days before the Petition Date, in the full amount of $1,412,075. | An allowed general administrative claim in the amount of $1,398,801 to be paid in cash upon the effective date of the Plan. |
| **Contract Cure Claims** | Cure amounts related to the | A contract cure amount of |

| | amendment and assumption of the Executory Contracts (discussed in further detail below), in the full amount of $3,169,261. | $3,169,261, payable by the Settling Debtors within five (5) business days after entry of the Order. |
|---|---|---|
| **Postpetition Goods and Services Claim** | Amounts related to goods and services provided after the Petition Date, in the full amount of $696,829. | An amount of $696,829, payable by the Settling Debtors, in the ordinary course of business as soon as reasonably practicable, following entry of the Order. |
| **Remaining General Unsecured Claims** | Remaining amounts asserted in the Asserted Claims, in the full amount of $5,918,767. | An allowed, general unsecured claim in the amount of $6,647,039 treated as Class C5 under the Plan. |

15.     *Amendment and Assumption of Executory Contracts and Entry into Rebate Agreement*.  The Executory Contracts are critical to the Settling Debtors' mining operations.  Consequently, the Settling Debtors engaged with Holt at length to determine mutually-beneficial terms governing the amendment and assumption of the Executory Contracts.  Negotiations centered around four key points:  (a) the terms of the amended contract; (b) the labor rates charged by Holt, as compared to the rates currently charged and Holt's listed rate to third-parties for various categories of workers (*e.g.*, shop labor, field labor, truck servicing labor); (c) the effect of a change-in-control of the Settling Debtors to a competitor of the Settling Debtors; and (d) the existence and application of a historical rebate program for the benefit of the Settling Debtors.

16.     Ultimately, as reflected in the Amendments, the Parties agreed that the contract term would be extended by three years and four months (terminating December 31, 2018).  In addition, the Parties negotiated a new series of labor rates and rebate provisions that provide Holt with a beneficial rate while providing the Debtors with a discount they may not obtain in the open market.  Furthermore, the Parties agreed to a limited change-in-control provision that

8

would allow Holt to terminate or renegotiate certain terms if ownership of Luminant Mining Company LLC was transferred to a specified list of Luminant Mining Company LLC's competitors. The Settling Debtors believe that the Amendments and assumption of the Executory Contracts, as modified by the Amendments, will allow the Debtors and Holt to preserve their long-term relationship on mutually beneficial terms. In the absence of assuming the Executory Contracts, as amended by the Amendments, the Settling Debtors would be forced to expend costs and resources identifying counterparties with the same reliability as Holt or be forced to enter into new contracts with Holt potentially at significantly higher rates.

### Basis for Relief

**I.     The Stipulation Meets the Standards of Bankruptcy Rule 9019.**

17.    Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed compromise or settlement. Fed. R. Bankr. P. 9019(a). The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted).

18.    Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citation omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005)

("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

19.    In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Key3Media Grp. Inc.*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal").

20.    "[T]he court does not have to be convinced that the settlement is the best possible compromise," but "the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'"  *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citations omitted); *see also In re Energy Corp.*, 886 F.2d 912, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, No. 06-11156 (KJC), 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *In re Key3Media Grp. Inc.*, No. 03-10323 (MFW) 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).[3]

21.    Additionally, under section 363(b)(1) of the Bankruptcy Code, a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  If a valid business justification exists for the use

---

[3]    Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits of the underlying dispute.  *In re Grant Broad. of Phila., Inc.*, 71 B.R. 390, 396 (Bankr. E.D. Pa. 1987).  Rather, the court need only consider those facts which are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement.  *In re Pa. Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979) (citation omitted); *In re Energy Co-op., Inc.*, 886 F.2d 921, 924-25 (7th Cir. 1989).

or sale of property, there is strong presumption that "in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, (*In re Integrated Res., Inc.*), 147 B.R. 548, 567 (Bankr. D. Del. 2008) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).   Generally, when applying the business judgment standard, courts grant great deference to debtors' business decisions.

22.     The Stipulation is the product of months of arms'-length negotiations between the Settling Debtors, Holt, and their respective advisors.  The Stipulation allows the Settling Debtors to preserve their critical relationship with Holt and saves the Settling Debtors' estates the costs of litigating the Asserted Claims.   Importantly, certain of the Asserted Claims were initially asserted with priority status, but through extensive negotiations and invoice reconciliation efforts, the Parties determined that certain of these amounts would be allowed as general unsecured claims—further preserving the assets of the Debtors' estates.   Accordingly, the Debtors submit that the decision to enter into the Stipulation is well within the range of reasonableness and is a sound exercise of the Settling Debtors' business judgment.

## II.     Assumption of the Executory Contracts as Amended is an Exercise of the Debtors' Business Judgment.

23.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval.  11 U.S.C. § 365(a).  Courts generally authorize debtors to assume or reject executory contracts and unexpired leases where the debtors appropriately exercise their "business judgment." *See, e.g., Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800

(B.A.P. 9th Cir. 1982); *cf. In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (holding that absent bad faith or abuse of discretion, deference is given to debtor's business judgment); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

24.     Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  The "business judgment" test merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See In re Trans World Airlines*, 261 B.R. 103, 121 (Bankr. D. Del. 2003) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849-50); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7-8 (Bankr. D. Del. Mar. 16, 2001) (noting that the standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate).

25.     The Debtors are currently evaluating all of their executory contracts and unexpired leases for purposes of deciding whether to assume or reject such agreements.  The Debtors have determined that, in their sound business judgment, assumption of the Executory Contracts (as amended by the Amendments) at this time is in the best interest of the Debtors' estates.  The Executory Contracts, as amended by the Amendments, provide a wide breadth of critical services necessary to the Settling Debtors' mining operations.  To preserve the value generated by such operations (and minimize the disruption to such operations during these chapter 11 cases), the Debtors have entered into the Amendments and seek to assume the Executory Contracts, as amended by the Amendments.

III.    **The Debtors Have Satisfied the Adequate Assurance Requirements of Section 365 of the Bankruptcy Code.**

26.    Pursuant to section 365(b)(1)(A) of the Bankruptcy Code, a debtor may not assume an executory contract unless, at the time of assumption, the debtor cures or provides adequate assurance that the debtor will promptly cure any existing default.  *See* 11 U.S.C. § 365(b)(1)(A); *see also L.R.S.C. Co. v. Rickel Home Ctrs. (In re Rickel Home Ctrs.), Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (finding that that the debtor must cure defaults or provide adequate assurance of prompt cure); *In re DBSI, Inc.*, 405 B.R. 698, 704 (Bankr. D. Del. 2009) (same); *In re Rowland*, 292 B.R. 815, 818 (Bankr. E.D. Pa. 2003) ("There is no dispute that in order for a debtor to assume an executory contract, it must cure existing defaults.").  Further, pursuant to section 365(b)(1)(C) of the Bankruptcy Code, a debtor seeking to assume an executory contract must provide adequate assurance of future performance under such contract.

27.    Under the Stipulation, the Parties have agreed that the Settling Debtors will pay $3,169,261 within five (5) business days after entry of the Order to cure any defaults under the Executory Contracts.  Following such payment, the Settling Debtors will not owe any cure amounts under the Executory Contracts.  Moreover, Holt is adequately assured of the Debtors' future performance under the Executory Contracts as required by section 365(b)(1)(C) of the Bankruptcy Code.[4]  The Debtors submit that their access to cash collateral and funding under the TCEH DIP Facility, the Debtors' ongoing power generation and electricity sale operations, and diligence in remaining current on postpetition obligations to Holt together constitute adequate assurance of future performance.  *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (suggesting the meaning of "adequate assurance of

---

[4]    Nothing herein shall constitute an admission by the Debtors that there is or has been a default under any of the Executory Contracts.

future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction"); *In re Casual Male Corp.*, 120 B.R. 256, 264-65 (Bankr. D. Mass 1990) (finding an irrevocable letter of credit to be adequate assurance for future performance under section 365(b)(1)(C)); *In re Alipat, Inc.*, 36 B.R. 274, 277-78 (Bankr. E.D. Mo. 1984) (same).

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

29.    The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) the TCEH Creditors' Committee; (c) the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture

trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties

that have requested notice pursuant to Bankruptcy Rule 2002; and (z) Holt.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

30.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **<u>Exhibit A</u>**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

[*Remainder of page intentionally left blank.*]

16

Wilmington, Delaware
Dated:   August 27, 2015

*/s/ Joseph C. Barsalona II*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              defranceschi@rlf.com
              madron@rlf.com
              barsalona@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com
-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession