# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket No. 5778** |

## DECLARATION OF ROBERT FRENZEL IN SUPPORT OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE STIPULATION BETWEEN CERTAIN DEBTORS AND HOLT (A) RESOLVING CLAIMS ASSERTED BY HOLT AND (B) ASSUMING CERTAIN AMENDED EXECUTORY CONTRACTS

Pursuant to 28 U.S.C. § 1746, I, Robert Frenzel, hereby declare as follows under penalty of perjury:

1. I am the Senior Vice President and Chief Financial Officer of Luminant Generation Company LLC ("Luminant"), an indirect subsidiary of Energy Future Holdings Corp. ("EFH Corp."), both of which are organized under the laws of the state of Texas. EFH Corp.'s direct subsidiary Energy Future Competitive Holdings Company LLC ("EFCH"), a limited liability company organized under the laws of the state of Delaware; EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC, a limited liability company organized under the laws of the state of Delaware; EFH Corp.'s direct subsidiary, Energy Future Intermediate Holding Company LLC, a limited liability company organized under the laws of the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

state of Delaware; and various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, are collectively referred to as the "Debtors" in this declaration.

2. I have worked for the Debtors since 2009. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this declaration are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors. I am over the age of 18 and duly authorized to execute this Declaration on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Stipulation Between Certain Debtors and Holt (A) Resolving Claims Asserted by Holt and (B) Assuming Certain Amended Executory Contracts* (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

I.   **The Parties' Prepetition Agreements and Outstanding Obligations**.

3. The Debtors operate as the largest lignite coal miner in Texas and the ninth-largest coal miner in the United States. In 2014, by way of example, the Debtors recovered approximately 30 million tons of lignite to fuel their generation plants. The Debtors' mining operations have historically been a tremendous source of value and are critical to the intertwined nature of the Debtors' operations (*i.e.*, the Debtors use the lignite and coal recovered through their mining operations as a fuel source for their generation facilities and produce energy that is then sold by their retail entities and to the wholesale market).

4. Holt has historically been a valuable partner in the Settling Debtors' mining

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

operations for a number of reasons.  ***First***, Holt is the only supplier of new Caterpillar mining equipment (known as "CATs") in certain regions of Texas, and Holt sponsors certain of the Settling Debtors in a loyalty program to Caterpillar that provides the Settling Debtors with further discounts.  ***Second***, the Settling Debtors regularly rebuild their mining-related equipment to extend the life of such equipment (rebuilding can extend the life of equipment from seven to thirteen years).  Holt has four to five times the rebuild capacity of its nearest competitor, thus creating significant economies of scale.  This is especially important as the Settling Debtors anticipate launching substantial rebuild efforts from 2017-2019.  ***Third***, Holt provides the Settling Debtors with certified on-sitemechanics to supplement the Settling Debtors' efforts on a warrantied basis, and provides continued technical and product improvement updates on critical mining equipment for the life of such equipment.  Importantly, Holt has a formal and recognized safety program and is known for providing high quality parts and services.

5. The Settling Debtors and Holt have a longstanding strategic relationship that has been mutually beneficial to both parties. The Settling Debtors own 190 pieces of Holt-manufactured equipment, constituting 80% of the Settling Debtors' heavy and medium-duty mining equipment.  Furthermore, the Settling Debtors are the single-largest customer (based on revenue) of Holt and its affiliates. This business relationship among Holt and the Settling Debtors is expected to continue.

6. Since 2011, Holt has provided machinery, equipment, and services critical to the Settling Debtors' mining operations.  These contractual commitments are set forth in the following agreements:  (a) certain site-based contracts-for-services agreements (collectively, the "CFS"), (b) an undercarriage contract (the "U/C"), and (c) a vendor-managed inventory contract (the "VMI") (collectively, the "Executory Contracts"):

- *CFS*. The CFS are for repair services associated with the Caterpillar mining equipment the Settling Debtors own and operate. These machines include draglines and hydraulic excavators for extracting, large tractor dozers and trucks for material handling, and fire safety critical for mining operations. Compared to their equivalents, CATs are known for their fuel efficiency, dependability, and ability to operate over large tracts of land and with the success of machine rebuilding, the lowest total cost of ownership.

- *U/C*. The Settling Debtors utilize complete undercarriages from Holt for each of the approximate 62 bulldozers in the Settling Debtors' fleet. The dozer fleet runs three shifts per day and the undercarriage of the dozer wears out with use requiring replacement. This agreement provides a comprehensive program for inspections, the components themselves, and a unique, in-field, replacement service requiring specialized capital equipment and service crew dedicated to this work to optimize productivity of these machines. Components include, among other things, the tracks, pins and links, sprocket segments, and rollers used to mobilize bulldozers. Top-of-the-line undercarriages are critical to maximizing life of the equipment as well as the safety of mining operators. As a result, it is critically important to ensure that undercarriages are inspected and maintained through reliable vendors like Holt.

- *VMI*. Holt keeps an inventory of essential parts necessary to keep the CATs operating smoothly and to use in the event parts need to be repaired or replaced on-site. Such inventory is made available to the Settling Debtors at each site and the availability of such inventory is integrated into the Settling Debtors' job-planning efforts. Holt also ensures that such inventory is available for overnight jobs and such inventory is often critical to minimizing down-time in the event of unplanned maintenance.

`

7. In connection with outstanding amounts owed to Holt under the Executory Contracts, the Scheduling Debtors' schedules of assets and liabilities and statements of financial affairs, filed on June 30, 2014 (the "Statements and Schedules") reflected an aggregate unsecured liability of $9,429,474.15 to Holt.[3]

8. On October 24, 2014, Holt filed five identical proofs of claim against each of the Settling Debtors, asserting, in the aggregate, $15,620,361.60 in liquidated amounts and certain

---

[3] *See* Scheduled Claim Nos. 501800590, 503218420, 502204090, 504232800, 504232770, 504232790, 502204130, 504232760, 503218440, 503218430, 504232730, 502204120, 504232750, 504232740, 502204150, 502204140, 502204100, 503302490, 504232780, 502204110, 502204160, 504233540, and 597802720.

4

unliquidated amounts (collectively, the "Asserted Claims"), with certain amounts specified as being secured claims and certain other amounts specified as having priority status under section 503(b)(9) of the Bankruptcy Code or administrative status as amounts accrued on account of postpetition transactions. The liquidated amounts included in the Asserted Claims were asserted in a single aggregate amount but, as discussed below, further discussions and account reconciliation efforts between the Parties disclosed that the Asserted Claims reflected a number of different types of claims.

## II. Negotiations Regarding Global Resolution of Proofs of Claim and Executory Contracts.

9. Since the Petition Date, the Debtors and Holt have been engaged in discussions regarding the Executory Contracts and the Asserted Claims, including with respect to (a) the potential for global resolution of ongoing issues related to the Asserted Claims; and (b) the potential amendment and assumption of the Executory Contracts. A critical part of this process was reconciling the outstanding obligations reflected on the Settling Debtors' Statements and Schedules and the amounts asserted in the Asserted Claims. As part of this reconciliation process, the Parties agreed to put forth proposals regarding the terms of any amendments to the Executory Contracts (collectively, the "Amendments"). Ultimately, these efforts yielded the terms set forth in the Stipulation, attached as **Exhibit 1** to **Exhibit A** to the Motion.

10. *Resolution of Asserted Claims*. Specifically, the Parties agreed that the Asserted Claims would be categorized into the following types of claims, each of which would be allowed as follows and each of which would receive the following treatment on account of such allowed claims (collectively, the "Agreed Claims"):

| Analysis of Claim | Description | Parties' Resolution |
|---|---|---|
| **PMSI Claim** | Amounts related to a purchase | An allowed secured claim in the |

| | | |
|---|---|---|
| | money security interest in equipment purchased on November 14, 2013, for which Holt asserts it filed a UCC statement and otherwise has a perfected security interest, and accrued interest at 18%, in the full amount of $2,674,231. | amount of $2,295,256 (reflecting 7.5% simple accrued interest from the Petition Date through the September 30, 2015), payable by the Settling Debtors within five (5) business days after entry of the Order. |
| **Priority Claim** | Amounts related to services provided off-site after the Petition Date in the full amount of $1,464,998. | An allowed general administrative claim in the amount of $750,000 to be paid in cash upon the effective date of the Debtors' plan of reorganization filed on August 10, 2015 [D.I. 5244] (as may be amended, modified, or supplemented from time to time, the "Plan"). |
| **503(b)(9) Claims** | Amounts related to (a) $888,274 in pure goods delivered in the 21 days before the Petition Date; (b) $150,093 in goods delivered as part of on-site repairs in the 21 days before the Petition Date; and (c) $373,708 in goods delivered as part of off-site repairs under "cross-over" invoices in the 21 days before the Petition Date, in the full amount of $1,412,075. | An allowed general administrative claim in the amount of $1,398,801 to be paid in cash upon the effective date of the Plan. |
| **Contract Cure Claims** | Cure amounts related to the amendment and assumption of the Executory Contracts (discussed in further detail below), in the full amount of $3,169,261. | A contract cure amount of $3,169,261, payable by the Settling Debtors within five (5) business days after entry of the Order. |
| **Postpetition Goods and Services Claim** | Amounts related to goods and services provided after the Petition Date, in the full amount of $696,829. | An amount of $696,829, payable by the Settling Debtors, in the ordinary course of business as soon as reasonably practicable, following entry of the Order. |
| **Remaining General Unsecured Claims** | Remaining amounts asserted in the Asserted Claims, in the full amount of $5,918,767. | An allowed, general unsecured claim in the amount of $6,647,039 treated as Class C5 under the Plan. |

11. *Amendment and Assumption of Executory Contracts and Entry into Rebate Agreement*. The Executory Contracts are critical to the Settling Debtors' mining operations. Consequently, the Settling Debtors engaged with Holt at length to determine mutually-beneficial terms governing the amendment and assumption of the Executory Contracts. Negotiations centered around four key points: (a) the term of the amended contract; (b) the labor rates charged by Holt, as compared to the rates currently charged and Holt's listed rate to third-parties for various categories of workers (*e.g.*, shop labor, field labor, truck servicing labor); (c) the effect of a change-in-control of the Settling Debtors to a competitor of the Settling Debtors; and (d) the existence and application of a historical rebate program for the benefit of the Settling Debtors.

12. Ultimately, as reflected in the Amendments, the Parties agreed that the contract term would be extended by three years and four months (terminating December 31, 2018). In addition, the Parties negotiated a new series of labor rates and rebate provisions that provide Holt with a beneficial rate while providing the Debtors with a discount they may not obtain in the open market. Furthermore, the Parties agreed to a limited change-in-control provision that would allow Holt to terminate or renegotiate certain terms if ownership of Luminant Mining Company LLC was transferred to a specified list of Luminant Mining Company LLC's competitors. I believe that the Amendments and assumption of the Executory Contracts, as modified by the Amendments, will allow the Debtors and Holt to preserve their long-term relationship on mutually beneficial terms. In the absence of assuming the Executory Contracts, as amended by the Amendments, the Settling Debtors would be forced to expend costs and resources identifying counterparties with the same reliability as Holt or be forced to enter into new contracts with Holt potentially at significantly higher rates.

**III.    The Global Resolution of Proofs of Claim and Executory Contracts**.

13.    The Stipulation is the product of arms'-length negotiations between the Settling Debtors, Holt, and their respective advisors.  The Stipulation allows the Settling Debtors to preserve their critical relationship with Holt and saves the Settling Debtors' estates the costs of litigating the Asserted Claims.  Importantly, certain of the Asserted Claims were initially asserted with priority status, but through extensive negotiations and invoice reconciliation efforts, the Parties determined that certain of these amounts would be allowed as general unsecured claims.  Accordingly, I believe that the decision to enter into the Stipulation is a sound exercise of the Settling Debtors' business judgment.

14.    The Debtors are currently evaluating all of their executory contracts and unexpired leases for purposes of deciding whether to assume or reject such agreements.  I believe that assumption of the Executory Contracts (as amended by the Amendments) at this time is in the best interest of the Debtors' estates.  The Executory Contracts, as amended by the Amendments, provide a wide breadth of critical services necessary to the Settling Debtors' mining operations.  To preserve the value generated by such operations (and minimize the disruption to such operations during these chapter 11 cases), the Debtors have entered into the Amendments (which provide above-market terms in many respects) and seek to assume the Executory Contracts, as amended by the Amendments.

15.    Under the Stipulation, the Parties have agreed that the Settling Debtors will pay $3,169,261 within five (5) business days after entry of the Order to cure any defaults under the Executory Contracts.  Following such payment, the Settling Debtors will not owe any cure amounts under the Executory Contracts.  Moreover, Holt is adequately assured of the Debtors' future performance under the Executory Contracts.  I believe that their access to cash collateral

and funding under the TCEH DIP Facility, the Debtors' ongoing power generation and electricity sale operations, and diligence in remaining current on postpetition obligations to Holt together constitute adequate assurance of future performance.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: August 27, 2015

                                                      */s/ Robert Frenzel*
                                                     Robert Frenzel
                                                     Senior Vice President and Chief Financial Officer
                                                     Luminant Generation Company LLC