## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: September 17, 2015 at 9:30 a.m.** |
| | **Objection Deadline: September 10, 2015 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR AN ORDER AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER THE STIPULATION BETWEEN OAK GROVE MANAGEMENT COMPANY LLC AND HEADWATERS RESOURCES, INC.

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing entry into and performance under the claim settlement stipulation between Oak Grove Management Company LLC ("Oak Grove") and Headwaters Resources, Inc. ("HRI," and, together with Oak Grove, the "Parties") substantially in the form attached hereto as **Exhibit 1** to **Exhibit A** (the "Stipulation"). In support of this Motion, the Debtors submit the *Declaration of Robert Frenzel in Support of the Motion of Energy Future Holdings Corp.,* et al.*, for an Order Authorizing Entry into and Performance Under the Stipulation Between Oak Grove Management Company LLC and Headwaters Resources Inc.* (the "Frenzel Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully submit as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 363 and 365 of title 11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4.      By this Motion, the Debtors seek entry of the Order authorizing Oak Grove to enter into and perform under the Stipulation.    The Court's approval of the Stipulation will authorize:  (a) HRI's payment to Oak Grove of approximately $1,570,899 (which reflects a full reconciliation of prepetition and postpetition payables), (b) the mutual release of all claims relating to the Agreement (as defined below), and (c) Oak Grove's assumption of the Agreement as amended and restated pursuant to the Modified Agreement (as defined below).

2

**Background**

5.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

I.      **The By-Products Sales Agreement.**

6.      Oak Grove operates the Oak Grove Steam Electric Station (the "Plant"), located in Robertson County, Texas.  The Plant is a lignite-fired coal power plant that generates approximately 1,600 MW of energy.  Lignite coal combustion produces fly ash and bottom ash, which are fine particulate by-products that can be monetized and are often used in the construction industry to produce finished concrete and other construction materials (the "By-Products").  HRI, a cost leader in the industry, markets and sells to third parties the By-Products produced by the Plant and provides other on-site ash handling, site management,

3

and construction services, all pursuant to that certain By-Products Sales Agreement, dated May 7, 2012, Contract No. C0760219C, by and between Oak Grove and HRI (together with any related agreements, amendments, or modifications thereto, the "Agreement"), which contains the following key terms:[2]

- ***Rights Granted to HRI***.   Oak Grove granted HRI the non-exclusive right to (a) purchase and use the By-Products produced at the Plant, and (b) market such By-Products to third parties and remit a percentage of such sales to Oak Grove.

- ***Services by HRI***.  HRI agreed to (a) market and sell Oak Grove's By-Products for reuse, and (b) provide on-site ash handling and disposal services at the Plant.

- ***Rebate***.  Pursuant to Exhibit F of the Agreement, HRI also was to pay Oak Grove a rebate for achieving certain economies of scale under the Agreement, the exact amount of which was to be determined annually based on HRI's By-Product sale volume (the "Rebate").

**II.**    Amounts Alleged to be Outstanding.

7.      In relation to the Agreement, Oak Grove scheduled two claims on the official claims register maintained in the Debtors' chapter 11 cases (scheduled claim nos. 502203920 and 502203930), recorded in the aggregate amounts of $591,940.27 and $4,080.60, respectively (collectively, the "Scheduled Claims"), related to prepetition trade payables outstanding to HRI. These amounts reflected Oak Grove's best estimates of the amounts due to HRI under the Agreement at the time the Scheduled Claims were scheduled, based on Oak Grove's review of its books and records.  Subsequently, HRI filed proof of claim no. 4877 against Oak Grove asserting a prepetition claim in the aggregate amount of $306,051.31 (the "Proof of Claim" and, together with the Scheduled Claims, the "Claims").  In the documentation accompanying the Proof of Claim, HRI asserted recoupment rights relating to amounts due to Oak Grove under the Agreement.  Oak Grove asserted that HRI was not entitled to exercise such recoupment rights.

---

[2]   The summaries of the Agreement set forth in this section are qualified in their entirety by the provisions of the Agreement.   To the extent there exists any inconsistency between this summary and the Agreement, the Agreement shall govern.

8.      Oak Grove further asserted that HRI owes Oak Grove the following: (a) approximately $852,566.63 for amounts due under the Agreement through the Petition Date (the "Prepetition Payable"); (b) approximately $718,331.51 for amounts due under the Agreement after the Petition Date through June 2014 (together with the Prepetition Payable, the "Payables"), for a total Payables amount of $1,570,899; and (c) the Rebate, in the amount of approximately $1,041,261.20 for the period of time between June 1, 2014, and May 31, 2015.

## III.    The Modified Agreement.

9.      In the ordinary course of business, Oak Grove and HRI negotiated an amendment to the Agreement, dated as of July 16, 2015, which amends and restates the existing Agreement (such amended and restated Agreement, the "Modified Agreement"), and contains the following key terms:[3]

- **Extension of Term.**  The term of the Agreement will be extended from July 1, 2015 through December 31, 2027.

- **Rights Granted to HRI.**  Oak Grove grants HRI the exclusive right to purchase and use the By-Products produced at the Plant.  Oak Grove reserves the right to use the By-Products for its own benefit on terms agreed upon by Oak Grove and HRI.

- **Services by HRI.**  HRI agrees to market and sell a minimum tonnage of By-Products each year to the extent such By-Products are made available by Oak Grove to HRI.

- **Replacement of Rebate with Credits.**  HRI will no longer pay Oak Grove the Rebate, which shall be replaced by new revenue sharing and expense credits for Oak Grove's benefit.

10.     Oak Grove estimates that the new revenue sharing and expense credits replacing the Rebate in the Modified Agreement will result in approximately $11 million of aggregate benefit to Oak Grove over the term of the Modified Agreement.

---

[3]    The summaries of the Modified Agreement set forth in this section are qualified in their entirety by the provisions of the Modified Agreement.  To the extent there exists any inconsistency between this summary and the Modified Agreement, the Modified Agreement shall govern.

## IV.    The Stipulation.

11.    In an effort to develop a global resolution of (a) the Claims, (b) the Payables, (c) the Rebate, and (d) all outstanding issues under the Agreement, and to allow the parties to move forward with assumption of the Agreement as amended and restated by the Modified Agreement, the Parties engaged in arm's-length discussions and negotiated the Stipulation.  As described below, the Stipulation provides for Oak Grove's assumption of the Agreement as amended and restated by the Modified Agreement, settlement of the Claims, the Rebate, and Payables, and a mutual release of claims relating to the Agreement among the Parties:[4]

> (a) **Assumption of Agreement.**  Oak Grove agrees to assume the Agreement as amended and restated by the Modified Agreement.  Oak Grove and HRI agree that no cure amount will be paid by Oak Grove to HRI in connection with the assumption of the Agreement as amended and restated by the Modified Agreement.

> (b) **Payment of the Payables.** HRI agrees to pay Oak Grove the Payables in immediately available funds within fifteen days after Court approval of Oak Grove's assumption of the Agreement as amended and restated by the Modified Agreement.

> (c) **Mutual Release.**  Except with respect to the Payables and certain other exceptions as set forth in the Stipulation, as of the date of the Bankruptcy Court's approval of the Stipulation, the Parties agree to release, waive, and discharge each other from any and all claims (including the Claims and the Rebate) arising before or after the Petition Date.

12.    The Debtors believe that resolving the Claims and other outstanding disputes relating to the Agreement through the Stipulation and assuming the Agreement as amended and restated by the Modified Agreement will save the Debtors time and cost, minimize the uncertainties surrounding HRI's claims, and maximize value for the Debtors' estates.

---

[4]    The summaries of the Stipulation set forth in this section are qualified in their entirety by the provisions of the Stipulation.  To the extent there exists any inconsistency between this summary and the Stipulation, the Stipulation shall govern.

RLF1 12896955v.1

<u>**Basis for Relief**</u>

**I.     Assumption Of the Agreement as Amended and Restated by the Modified Agreement Is an Exercise of the Debtors' Business Judgment.**

13.     Section 365(a) of the Bankruptcy Code provides that a debtor in possession "may assume or reject any executory contract or unexpired lease of the debtor" subject to the court's approval.  11 U.S.C. § 365(a).  Courts generally authorize debtors to assume or reject executory contracts and unexpired leases where the debtors appropriately exercise their "business judgment."  *See*, *e.g.*, *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39-40 (3d Cir. 1989); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993); *Robertson v. Pierce (In re Chi-Feng Huang)*, 23 B.R. 798, 800 (B.A.P. 9th Cir. 1982); *cf. In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985) (holding that absent bad faith or abuse of discretion, deference is given to debtor's business judgment); *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 849 (Bankr. W.D. Pa. 1987); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

14.     Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease.  The "business judgment" test merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate.  *See In re Trans World Airlines*, 261 B.R. 103, 121 (Bankr. D. Del. 2003) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice'") (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. at 849-50); *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722, at *7-8 (Bankr. D. Del. Mar. 16, 2001) (noting that the

standard under section 365 requires consideration of the benefit of the rejection to the debtor's estate).

15.    Here, Oak Grove has determined, in its sound business judgment, that assumption of the Agreement as amended and restated by the Modified Agreement is in the best interest of its estate.  HRI is a cost leader in the By-Product marketing and sales industry.  Additionally, Oak Grove estimates that the Modified Agreement's new revenue-sharing and expense credits will provide Oak Grove with approximately $11 million of aggregate benefit over its term. Accordingly, the Court should approve Oak Grove's assumption of the Agreement as amended and restated by the Modified Agreement.

## II.    Oak Grove Has Satisfied the Adequate Assurance Requirements of Section 365 of the Bankruptcy Code.

16.    Pursuant to section 365(b)(1)(A) of the Bankruptcy Code, a debtor may not assume an executory contract unless, at the time of assumption, the debtor cures or provides adequate assurance that the debtor will promptly cure any existing default.  *See* 11 U.S.C. § 365(b)(1)(A); *see also L.R.S.C. Co. v. Rickel Home Ctrs. (In re Rickel Home Ctrs.), Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (finding that that the debtor must cure defaults or provide adequate assurance of prompt cure); *In re DBSI, Inc.*, 405 B.R. 698, 704 (Bankr. D. Del. 2009) (same); *In re Rowland*, 292 B.R. 815, 818 (Bankr. E.D. Pa. 2003) ("There is no dispute that in order for a debtor to assume an executory contract, it must cure existing defaults.").  Further, pursuant to section 365(b)(1)(C) of the Bankruptcy Code, a debtor seeking to assume an executory contract must provide adequate assurance of future performance under such contract.

17.    Oak Grove and HRI have agreed that no cure amount shall be paid in connection with the assumption of the Agreement as amended and restated by the Modified Agreement. Moreover, HRI is adequately assured of the Debtors' future performance under the Modified

Agreement as required by section 365(b)(1)(C) of the Bankruptcy Code.[5]  The Debtors submit

that their access to cash collateral, the Debtors' ongoing power generation and electricity sale

operations, and diligence in remaining current on postpetition obligations to HRI together

constitute adequate assurance of future performance.  *See Carlisle Homes, Inc. v. Azzari (In re*

*Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (suggesting the meaning of

"adequate assurance of future performance" depends on the facts and circumstances of each case,

but should be given "practical, pragmatic construction"); *In re Casual Male Corp.*, 120 B.R. 256,

264-65 (Bankr. D. Mass 1990) (finding an irrevocable letter of credit to be adequate assurance

for future performance under section 365(b)(1)(C)); *In re Alipat, Inc.*, 36 B.R. 274, 277-78

(Bankr. E.D. Mo. 1984) (same).

### III.    The Stipulation Satisfies Section 363 of the Bankruptcy Code.

18.    Section 363(c)(1) of the Bankruptcy Code provides that a debtor in possession

"may enter into transactions, including the sale or lease of property of the estate, in the ordinary

course of business, without notice or a hearing, and may use property of the estate in the ordinary

course of business without notice or a hearing."   11 U.S.C. § 363(c)(1).   In addition,

section 363(b)(1) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a

hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  A debtor may use, sell, or lease property of the

estate where a sound business purpose justifies such actions.  *See Contrarian Funds LLC v.*

*Aretex LLC (In re WestPoint Stevens, Inc.)*, 600 F.3d 231, 248 n.8 (2d Cir. 2010); *Fulton State*

*Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (noting that criteria for

approval of transaction under section 363(b) is whether debtor has "an articulated business

---

[5]    Nothing herein shall constitute an admission by the Debtors that there is or has been a default under the Agreement and/or Modified Agreement.

justification"); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983) (holding that debtor must satisfy the business judgment rule under section 363(b)(1)); *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D.N.Y. 2011) (same).  Specifically, once a debtor articulates a valid business justification for a particular form of relief, the court reviews the debtor's request under the business judgment rule.  *See In re Commercial Mortg. and Fin. Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that debtor in possession "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

19.    To the extent that section 363(b)(1) of the Bankruptcy Code is applicable to the Stipulation, the Debtors submit that the Stipulation satisfies section 363(b)(1) of the Bankruptcy Code.  Specifically, the proposed Stipulation was negotiated at arm's-length and in good faith. The Stipulation would, if approved, prevent further disruption to the Debtors' billing practices, result in the payment to Oak Grove by HRI of approximately $1,570,899 on account of the Payables, and release and discharge the Debtors from the Claims and all other claims relating to the Agreement.  Accordingly, the Debtors respectfully request that the Court approve the Stipulation.

## IV.    The Stipulation is Fair and in the Best Interests of the Debtors' Estates, Is a Proper Exercise of the Debtors' Business Judgment, and Should Be Approved.

20.    Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

21.     The Stipulation is subject to approval by the Court under Bankruptcy Rule 9019(a). Settlements and compromises are tools often utilized to expedite case administration and to reduce unnecessary administrative costs; as such, they are favored in bankruptcy. *See In re Nutraquest, Inc.,* 434 F.3d 639, 646 (3d Cir. 2006) ("[i]t is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006). Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed compromise is fair, reasonable, and in the best interest of the estate. *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Nw. Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate") (citation omitted); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

22.     A proposed compromise need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities." *In re Energy Corp.*, 886 F.2d 921, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *Key3Media Grp.*, 2006 WL 2842462, at *3.

23.     In determining whether a compromise is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement. The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation

involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Nutraquest,* 434 F.3d 639, 643; *see also Key3Media Grp.*, 336 B.R. 87 at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" (internal citations omitted)).

24.     Based on the above factors, the Debtors believe the Stipulation represents a fair and reasonable compromise that is in the best interests of the Debtors' estates.  The Stipulation is a resolution of the Claims relating to the Agreement.  As contemplated by the Stipulation, HRI will pay Oak Grove the full amount of the Payables while also releasing the Claims and all other claims against the Debtors relating to the Agreement.  Additionally, as discussed above, Oak Grove has determined, in its sound business judgment, that assumption of the Agreement as amended and restated by the Modified Agreement is in the best interest of its estate.  In consideration of all these factors, the Debtors respectfully request that the Court approve the Stipulation pursuant to Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code.

## **Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

25.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## **Notice**

26.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its

capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain

holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) HRI and counsel thereto.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

27.    No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

*[Remainder of page intentionally left blank.]*

RLF1 12896955v.1

Wilmington, Delaware
Dated:  August 27, 2015

/s/ Joseph C. Barsalona II
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:        (302) 651-7700
Facsimile:        (302) 651-7701
Email:            collins@rlf.com
                  defranceschi@rlf.com
                  madron@rlf.com
                  barsalona@rlf.com


-and-


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com
                  brian.schartz@kirkland.com
-and-


James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted pro hac vice)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            james.sprayregen@kirkland.com
                  marc.kieselstein@kirkland.com
                  chad.husnick@kirkland.com
                  steven.serajeddini@kirkland.com


*Co-Counsel to the Debtors and Debtors in Possession*

RLF1 12896955v.1