# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
|  | ) Re: Docket No. 5269 |

## PARTIAL RESPONSE OF UMB BANK, N.A. TO EFIH DEBTORS' PARTIAL OBJECTION TO PROOF OF CLAIM NO. 6347 FILED BY INDENTURE TRUSTEE FOR THE EFIH UNSECURED NOTES

UMB Bank, N.A., as Indenture Trustee (the "**Trustee**") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "**PIK Notes**"), issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, the "**EFIH Debtors**"), pursuant to an indenture dated December 5, 2012 (together with all supplements, amendments, and exhibits, the "**PIK Indenture**"), and the holders thereof (the "**PIK Noteholders**"), by and through its undersigned counsel, hereby submits its response (the "**Response**") to the portion of the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [Docket No. 4964] (the "**Claim Objection**") regarding the PIK Noteholders' entitlement to a call premium under section 3.07 of the PIK Indenture (the "**Premium Objection**").[1] In support of the Response, the Trustee respectfully submits as follows:

---

[1] The Trustee's response to the portion of the Claim Objection dealing with the PIK Noteholders' entitlement to postpetition interest at the rate set forth in the PIK Indenture (the "**Postpetition Interest Objection**") will be briefed separately. By agreement with the EFIH Debtors, the Trustee intends to file its response to the Postpetition Interest Objection by September 4, 2015.

## PRELIMINARY STATEMENT

1.  Section 3.07 of the PIK Indenture unambiguously provides that PIK Noteholders are entitled to payment of a call premium if, following a bankruptcy-triggered acceleration, the EFIH Debtors repay or "call" the PIK Notes prior to certain dates set forth therein. While the EFIH Debtors have not yet repaid the PIK Notes, they seek to confirm a plan of reorganization that proposes to repay the PIK Notes during the time period set forth in section 3.07(d) of the PIK Indenture. Specifically, section 3.07(d) of the PIK Indenture provides that if the EFIH Debtors repay the PIK Notes after the first call date but prior to maturity, they must pay specified "redemption prices" or call premiums. Moreover, upon a bankruptcy-triggered acceleration, section 6.02 of the PIK Indenture unambiguously provides that the EFIH Debtors remain liable not only for principal and accrued interest, but also for any additional "*premium*" and "*other monetary obligations*" (emphasis added) that may be owed on the PIK Notes. Thus, notwithstanding their bankruptcy filing, the EFIH Debtors remain liable for the call premium if they repay the PIK Notes during the time period set forth in section 3.07(d) of the PIK Indenture. The EFIH Debtors contend that the PIK Indenture is "identical in every material way" to the indenture governing the EFIH first lien notes (the "**First Lien Indenture**") and argue that the Court's March 26, 2015 summary judgment decision [Adv. Proc. No. 14-50363, Docket No. 245] (the "**First Lien Decision**"), analyzing provisions of the First Lien Indenture "should apply" here. *See* Claim Obj. ¶ 40. The EFIH Debtors are mistaken. The relevant language in the PIK Indenture, while similar to the language analyzed in the First Lien Indenture, is distinguishable in critical ways.

2. The First Lien Indenture, in the second paragraph of section 6.02, provides that "in the case of an Event of Default arising [from a bankruptcy filing], all outstanding Notes shall be due and payable immediately without further action or notice."

3. By contrast, the PIK Indenture contains additional language, which is set forth in bold in the following quote: "[I]n the case of an Event of Default arising [from a bankruptcy filing], all ***principal of and premium, if any, interest (including Additional Interest, if any) and any other monetary obligations on the*** outstanding Notes shall be due and payable immediately without further action or notice."

4. By unambiguously stating that the EFIH Debtors owe a "premium" and "any other monetary obligations" upon a bankruptcy-triggered acceleration, the PIK Indenture is meaningfully different from the First Lien Indenture, and, in fact, highlights the parties' intention to obligate the EFIH Debtors to pay a call premium, even in connection with a bankruptcy-triggered acceleration of the PIK Notes. Accordingly, the Court need not revisit its First Lien Decision in order to find that the PIK Noteholders are entitled to a call premium pursuant to the PIK Indenture.[2]

5. If the language added to section 6.02 of the PIK Indenture is to be given any effect, the Court must reach a different result in respect of the PIK Noteholders' entitlement to payment of a call premium under the PIK Indenture than it did in its First Lien Decision. As explained below, the "premium, if any" and "any other monetary obligation" language, taken together, could not refer to anything other than the call premium owed to the PIK Noteholders under section 3.07 of the PIK Indenture. Furthermore, the added language is clearer still in the context of the contract as a whole. Indeed, section 3.07 of the PIK Indenture includes multiple

---

[2] Although the Trustee will not re-argue issues already decided by the Court, it reserves its appeal rights on all issues raised in the Premium Objection.

call premiums: (i) the "Applicable Premium" (as defined in the PIK Indenture) owed pursuant to section 3.07(a) for a redemption prior to December 1, 2014; (ii) a premium associated with an equity claw in section 3.07(b); and (iii) the gradually-reducing call premiums set forth as the redemption prices in section 3.07(d). The inclusion of "premium, if any" reflects an unambiguous decision to obligate the EFIH Debtors to pay any of the call premiums that may apply, depending on the timing and form of repayment.

6. Moreover, the drafting and negotiating history of the PIK Indenture (and the precedent indenture upon which it was based) confirms that the Trustee's interpretation is the correct one.

7. The expressed intent of the parties as set forth in the PIK Indenture was to obligate the EFIH Debtors to pay a call premium upon repayment of the PIK Notes, notwithstanding a bankruptcy-triggered acceleration.[3] Thus, the Court should deny the Premium Objection.

## BACKGROUND

### I.     The EFIH First Lien Litigation

8. On May 15, 2014, the trustee for the EFIH first lien notes (the "**First Lien Trustee**" and such notes the "**First Lien Notes**") initiated an adversary proceeding seeking a declaratory judgment that the EFIH Debtors were required to pay the Applicable Premium upon repayment of the First Lien Notes (the "**First Lien Litigation**"). [Adv. Proc. No. 14-50363, Docket No. 1] On March 26, 2015, the Court issued the First Lien Decision. *See Findings of*

---

[3]     The summary judgment motions filed in connection with the adversary proceeding commenced by the indenture trustee for the EFIH second lien notes' (the "**Second Lien Trustee**") regarding the EFIH second lien noteholders' (the "**Second Lien Noteholders**") entitlement to a call premium [Adv. Proc. No. 14-50405, Docket No. 41], presents similar issues because section 6.02 of the PIK Indenture is identical to section 6.02 in the indenture governing the second lien notes (the "**Second Lien Indenture**").

*Facts and Conclusions of Law Regarding Cross-Motions for Summary Judgment* [Adv. Proc. No. 14-50363, Docket No. 245].[4]  The Court disagreed with the First Lien Trustee that payment of the Applicable Premium was required, finding (i) the "plain language of the [First Lien] Indenture does not require payment of an Applicable Premium upon repayment of the First Lien Notes following an acceleration under section 6.02, arising from a [bankruptcy default" and (ii) that the Debtors' decision to file for bankruptcy did not constitute an "intentional default." *Id.* at ¶ 8.

9.  Most relevant here, the Court found that section 6.02 of the First Lien Indenture—which provided that, upon an acceleration as a result of a bankruptcy filing, "all outstanding Notes shall be due and payable immediately without further action or notice"—did "not include clear and unambiguous language that a make-whole premium . . . is due upon the repayment of the Notes following a bankruptcy acceleration" and thus did not create such an obligation. *Id*. ¶¶ 20, 51.

## II.    The PIK Notes and PIK Indenture

10.  Pursuant to the PIK Indenture (and all relevant supplements), between December 5, 2012 and January 30, 2013, the EFIH Debtors issued $1,392,445,000 in aggregate principal amount of PIK Notes due 2018.  *See* PIK Indenture, attached as **Exhibit A** hereto.  As a result of the PIK Notes' payment-in-kind ("**PIK**") feature, the principal balance currently outstanding on the PIK Notes is approximately $1,566,234,000.

---

[4]  Cognizant that the Court has already rejected these arguments, the Trustee incorporates by reference all arguments made in the briefs filed by the First Lien Trustee and Second Lien Trustee in connection with the First Lien Litigation, in order to preserve those arguments for appeal.

### A.     The Call Restrictions and Premiums

11.     The PIK Indenture provides that the EFIH Debtors may not redeem the PIK Notes prior to the stated maturity date, except under certain conditions, and then only if the EFIH Debtors pay a call premium to the PIK Noteholders.

12.     Section 3.07(a) of the PIK Indenture sets forth the Applicable Premium. It provides that prior to December 1, 2014, the EFIH Debtors can repay the full amount of the PIK Notes only if they pay the PIK Noteholders the Applicable Premium pursuant to section 3.07(a). *See* PIK Indenture §§ 3.07(a), (c).

13.     Section 3.07(b) of the PIK Indenture sets forth a premium associated with an equity claw of the PIK Notes. Prior to December 1, 2014, the EFIH Debtors could use net cash proceeds of an equity offering to "redeem up to 35% of the aggregate principal amount of Notes at a redemption price equal to 111.25% of the aggregate principal amount thereof, plus accrued and unpaid interest (including Additional Interest, if any) to the Redemption Date . . . ." *Id.* § 3.07(b), (c).

14.     Finally, section 3.07(d) of the PIK Indenture sets forth varying call premiums that the EFIH Debtors must pay if they repay the PIK Notes following the first call date. On or after December 1, 2014, if the EFIH Debtors repay the PIK Notes prior to the 2018 maturity date, they must pay a redemption price, as follows:

| Year | Percentage |
|---|---|
| 2014 | 105.6250% |
| 2015 | 105.6250% |
| 2016 and thereafter | 102.8125% |

*Id.* § 3.07(d).

15.     Thus, if the EFIH Debtors repay the PIK Notes prior to December 1, 2016, they must pay a premium of 105.6250% of the principal amount of the PIK Notes being redeemed.

6

*Id.* If the EFIH Debtors repay the PIK Notes on December 1, 2016 or thereafter, they must pay a premium of 102.8125% of the principal amount of the PIK Notes being redeemed. *Id.*

16. These are the only references to payment of a "premium" on the PIK Notes in the PIK Indenture.

### B. Section 6.02 of the PIK Indenture

17. Article 6 of the PIK Indenture governs events of default and acceleration of the PIK Notes. It also provides holders with various remedies in the event of a default, including automatic acceleration of the PIK Notes if the EFIH Debtors default by filing for bankruptcy. Section 6.02 provides that:

> In the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of *and premium, if any*, interest (including Additional Interest, if any) *and any other monetary obligations* on the outstanding Notes shall be due and payable immediately without further action or notice.

*Id.* § 6.02 (emphasis added).[5]

18. This provision expressly contemplates that the right to a call premium will be preserved even after an Event of Default caused by, among other things, a bankruptcy filing. In contrast, section 6.02 of the First Lien Indenture previously analyzed by this Court does *not* contain the phrases "and premium, if any" or "and any other monetary obligations." *See* First Lien Indenture § 6.02.[6]

### C. Negotiation of the PIK Indenture

19. Section 6.02 of the PIK Indenture is identical to the bankruptcy acceleration provisions in the Second Lien Indenture and an indenture governing TCEH second lien notes

---

[5] Section 6.01(a)(6) provides for an event of default upon filing for bankruptcy. *Id.* § 6.01(a)(6).
[6] An excerpt of section 6.02 of the First Lien Indenture is attached hereto as **Exhibit B**.

(the "**TCEH Indenture**").[7] █████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████

    20.  ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[7] Excerpts of section 6.02 of the TCEH Indenture and the Second Lien Indenture are attached hereto as **Exhibit C.**

[8] Excerpts of the 8/25/2015 Moldovan Tr. are attached hereto as **Exhibit D**.

[9] Excerpts of the 11/20/2014 Moldovan Tr. are attached hereto as **Exhibit E.**

[10] Excerpts of the 8/25/2015 Horton Tr. are attached hereto as **Exhibit F**.

[11] Excerpts of the 12/9/2014 Horton Tr. are attached hereto as **Exhibit G**.

**III.    Procedural History**

21.     On December 16, 2014, the EFIH Debtors commenced a declaratory judgment action against the Trustee (the "**Declaratory Judgment Action**"), seeking similar relief to the Claim Objection.  Specifically, the EFIH Debtors sought declarations that the PIK Noteholders (i) are not entitled to any type of call premium and (ii) are only entitled to postpetition interest at the federal judgment rate if the EFIH Debtors are solvent.  On February 6, 2015, the Trustee moved to dismiss the Declaratory Judgment Action for lack of subject matter jurisdiction because the declarations sought by the EFIH Debtors relied on contingencies and were not ripe for adjudication.

22.     On June 15, 2015, the Court held in favor of the Trustee and dismissed the Declaratory Judgment Action for lack of subject matter jurisdiction.  *See Energy Future Intermediate Holding Co. LLC v. UMB Bank, N.A.*, 531 B.R. 499 (Bankr. D. Del. 2015).  The Court held, among other things, that because "the parties and the Court do not know the structure of any confirmed plan, whether and how much the PIK Notes will be paid, or whether the Trustee for the PIK Notes will object to any proposed treatment of the PIK Notes in a plan," the matter was not ripe for adjudication.  *Id*. at 514.  The Court, however, also stated that "nothing in this Opinion limits the EFIH Debtors' ability to object to the PIK Claim or to seek to liquidate such claim." *Id.* at 515.

23.     On July 9, 2015, the EFIH Debtors filed the Claim Objection.

**ARGUMENT**

**I.     The PIK Indenture Contains Express Language Preserving the PIK Noteholders' Right to a Call Premium Following Bankruptcy Acceleration**

24.    The PIK Indenture expressly provides for the payment of a call premium upon an acceleration of the PIK Notes triggered by a bankruptcy. As the Court noted in the First Lien Decision, in order to preserve a call premium or make-whole premium in bankruptcy, an indenture must contain express language requiring payment of a premium where acceleration was triggered by bankruptcy. *See* First Lien Decision at ¶ 47 (citing *Northwestern Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 816 N.Y.S.2d 831, 836 (N.Y. Sup. Ct. 2006); *In re South Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011)).

25.    Unlike the First Lien Indenture, the PIK Indenture contains such language. In the First Lien Litigation, the Court found that section 6.02 of the First Lien Indenture lacked reference to "anything that would support the Trustee's position that the Applicable Premium is owed upon a bankruptcy event of default and acceleration." First Lien Decision ¶ 49. Here, by contrast, the PIK Indenture (and the Second Lien Indenture) does include such language—a fact highlighted when compared with the First Lien Indenture.

26.    Specifically, the PIK Indenture includes two additions that refer to the payment of a call premium, even in bankruptcy. In material part, it reads as follows:

> In the case of an Event of Default arising [from a bankruptcy filing], all principal of ***and premium, if any***, interest (including Additional Interest, if any) ***and any other monetary obligations*** on the outstanding Notes shall be due and payable immediately without further action or notice.

PIK Indenture § 6.02 (emphasis added). These differences are not accidental; rather, they reflect the parties' intent to establish a clear and enforceable right to a call premium upon acceleration, even in bankruptcy. *See Northwestern*, 816 N.Y.S.2d at 836 (finding that "[w]hen a clear and

unambiguous clause . . . calls for payment of the prepayment premium or a sum equal thereto . . . such clause . . . is generally enforceable"); *In re United Merchants and Mfrs., Inc.*, 674 F.2d 134, 142-43 (2d Cir. 1982) (upholding "contractually agreed upon sum for liquidated damages"). On its face, "any other monetary obligations" was clearly intended as a classic catch-all provision, encompassing any other category of obligation that might be due under the PIK Notes. The deliberate insertion of "and premium, if any" immediately following "principal" and before "interest" indicates that such language is not surplusage, but a reference to an adjustment to the principal amount.

27. Read together with "any other monetary obligations," the phrase "premium, if any" must refer to something more specific, and the only things that "premium, if any" could logically refer to are the call premiums set forth in section 3.07. By using the phrase "premium, if any," rather than the narrower term Applicable Premium, the PIK Indenture captures the multiple premiums that could be owed, depending on the form and timing of repayment. The EFIH Debtors' alternate reading of the "premium, if any" language essentially renders it meaningless, running afoul basic contract construction principles. *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213 (N.Y. 2007) ("A reading of the contract should not render any portion meaningless."); *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 67 F.3d 435, 439 (2d Cir. 1995) ("The entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency.") (citations and internal quotation marks omitted). Because the Court cannot interpret the contract in such a way that the inclusion of these phrases was meaningless, it must find that section 6.02 was updated to obligate the EFIH Debtors to pay a call premium when applicable, as it is here.

28. Indeed, during depositions, ██████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████ Further, while the EFIH Debtors state in the Claim Objection that "[n]othing in section 3.07(d), which sets forth the Optional Redemption Price, refers to this additional amount owed as a 'premium,'" ████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
███████████

29. Moreover, the added language is clearer still in the context of the PIK Indenture as a whole. The PIK Indenture refers to multiple call premiums: (i) the Applicable Premium owed pursuant to section 3.07(a) for a redemption prior to the first call date; (ii) a premium associated with an equity claw in section 3.07(b); and (iii) the redemption prices in section 3.07(d) as premiums for repayment following the first call date. The inclusion of "premium, if any", however, unambiguously obligates the EFIH Debtors to pay any of the call premiums that may apply depending on the timing and form of repayment. Indeed, if the PIK Indenture had

---

[12] ████████████████████████████████████████████████ It is attached hereto as **Exhibit H**.

used the narrower term "Applicable Premium" in section 6.02 rather than the broader language "premium, if any," the EFIH Debtors surely would argue that use of the term "Applicable Premium" excluded the fixed premiums under section 3.07(d) of the PIK Indenture from becoming due post-acceleration. The use of the more inclusive term "premium" does not render the PIK Indenture insufficiently specific to include payment of a call premium if the EFIH Debtors redeem the PIK Notes during the bankruptcy case.

30.     The EFIH Debtors' indefensible position is exposed by their weak offerings of "premiums" in the PIK Indenture other than the call premiums of section 3.07 to which section 6.02 might refer, the existence of which they argue renders 6.02 ambiguous. *See* Claim Obj. ¶ 48. It does not require a particularly close reading of the PIK Indenture to see that Article IV ("Covenants") and sections 4.07 and 4.09 refer to circumstances under which a premium may be paid on *other debt* that is subordinate to the PIK Notes. Nor do any of the other provisions cited by the Debtors *create* a premium. Instead, the cited sections 2.06(h)(i)(vi), 5.02, 11.01 [sic], and 11.02 [sic] refer—like section 6.02—to circumstances under which a "premium, if any," need be paid; that is, scenarios in which the Debtors may be obligated to pay a call premium. This uniform way of collectively referring to the various possible call premiums does not undermine the Trustee's argument; it strengthens it.

31.     The EFIH Debtors are no better served by highlighting the inclusion of "if any" in section 6.02 of the PIK Indenture. The Trustee agrees that "the 'if any' qualifier expressly contemplates that *no* premium might be owed . . . ." Claim Objection ¶ 49. However, the EFIH Debtors' argument that "if any" is somehow synonymous with "other than in bankruptcy" is illogical for a provision titled "Acceleration". The only reasonable reading of this qualifier here is to allow for the possibility that the EFIH Debtors could file for bankruptcy before the

December 1, 2018 maturity date of the PIK Notes—perhaps *because of* the looming maturity—but not repay the PIK Notes until after December 1, 2018, in which case no premium would be owed.

32. The Trustee is aware of only two cases—neither in the Third Circuit—construing language similar (but not identical) to the language at issue here where courts have denied a premium upon automatic acceleration due to a bankruptcy event of default. *See In re MPM Silicones*, *LLC*, 531 B.R. 321, 336 (S.D.N.Y. 2015); *In re Solutia Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007). In *MPM Silicones*, without significant discussion, the district court affirmed the bankruptcy court's conclusion that the words "premium, if any" were not specific enough to establish an intent for the makewhole provision of that indenture to apply following acceleration—thus treating the language as a boilerplate provision intended to catch any other charges that might be owed as of the time of acceleration. In the bankruptcy court, Judge Drain likened "if any" to other belt-and-suspenders catch-all provisions in other New York cases. *In re MPM Silicones, LLC*, 2014 WL 4436335, at *15 (Bankr. S.D.N.Y. Sept. 9, 2014). Here, by contrast, the role of catch-all is clearly played by the "and any other monetary obligations" provision. As noted above, the obvious reading of "premium, if any" in this case refers to the applicability of the call premium except for payments made after the maturity date.

33. In *Solutia*, the language was even more ambiguous—the creditors relied on "plain vanilla" language detailing the dates upon which principal and interest would be paid. *Solutia*, 379 B.R. at 488-89. Because the provision did not speak to treatment upon acceleration, the court held that this was not a prepayment giving rise to a make-whole premium. *Id.* at 489.

34. The Court should not reach the same conclusion here. The indentures in *MPM Silicones* and *Solutia* did not include the additional phrase "and any other monetary obligations

14

on the outstanding Notes." As explained above, since both that phrase *and* "premium, if any" must be assigned meaning under standard contract construction principles, the latter phrase as used in the PIK Indenture and the Second Lien Indenture must be something *more* than a mere catch-all. The only way to reasonably read the language is as preserving the possibility of a call premium in certain circumstances following acceleration. Alternatively, if the Court were to find that the phrase "premium, if any" is a catch-all meant to refer to something other than the call premiums, then "other monetary obligations" would capture the call premiums, as the two phrases cannot have the same meaning. Finally, the phrase "other monetary obligations" is not qualified by the words "if any," and there should be no reason why the monetary obligations (which include the call premium) would not be triggered upon redemption after acceleration.

## II. The Negotiating and Drafting History Supports the Trustee's Argument that the PIK Noteholders' Right to a Call Premium is Preserved Following Bankruptcy

35. The evidence here confirms that the "premium, if any" and "other monetary obligations" language included in section 6.02 of the PIK Indenture was specifically bargained for as a modification to the similar provision in the First Lien Indenture to provide for different legal entitlements upon bankruptcy acceleration than under the First Lien Indenture.[13] Moreover, the negotiating and drafting history of the PIK Indenture and its precedents also distinguishes the present case from *MPM Silicones* and *Solutia*.

36. This difference in language was intentionally bargained for in order to preserve a holder's entitlement to a call or make-whole premium in the event of bankruptcy. [REDACTED]

[REDACTED]

---

[13] For the avoidance of doubt, citation to deposition testimony should not be construed as an admission of any ambiguity in the relevant provisions of the PIK Indenture. To the contrary, such evidence is cited because it is entirely consistent with the plain-language interpretation advocated by the Trustee.

15

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
███████  ████████████████████████████████████████████████████████
███████████████████

37.   ███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
██████████████████████████   ████████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
████████████████████████████████

38.   As discussed above, the only interpretation of the "premium, if any" and "other monetary obligations" language included in section 6.02 of the PIK Indenture, and the relevant precedent indentures, is that section 6.02 provides for payment of a call premium upon repayment of the PIK Notes following acceleration as a result of bankruptcy.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein, the Trustee respectfully requests that the Court (a) deny the Premium Objection and (b) grant such other and further relief as may be just, proper and equitable.

Dated:  August 28, 2015
Wilmington, Delaware

| | By: /s/ *Raymond H. Lemisch* |
|---|---|
| **AKIN GUMP STRAUSS HAUER & FELD LLP** | **KLEHR HARRISON HARVEY BRANZBURG LLP** |
| Ira S. Dizengoff (admitted *pro hac vice*) | Raymond H. Lemisch (No. 4204) |
| Abid Qureshi (admitted *pro hac vice*) | 919 Market Street, Suite 1000 |
| One Bryant Park | Wilmington, DE 19801 |
| New York, NY 10036 | Tel: (302) 426-1189 |
| Telephone:   (212) 872-1000 | Fax: (302) 426-9193 |
| Facsimile:   (212) 872-1002 | E-mail: rlemisch@klehr.com |
| Email:   idizengoff@akingump.com | |
|       aqureshi@akingump.com | *-and-* |
| | |
| Scott L. Alberino (admitted *pro hac vice*) | **FOLEY & LARDNER LLP** |
| 1333 New Hampshire Avenue, N.W. | Harold L. Kaplan (admitted *pro hac vice*) |
| Washington, D.C. 20036 | Mark F. Hebbeln (admitted *pro hac vice*) |
| Telephone:   (202) 887-4000 | Lars A. Peterson (admitted *pro hac vice*) |
| Facsimile:   (202) 887-4288 | 321 North Clark Street, Suite 2800 |
| Email:   salberino@akingump.com | Chicago, IL 60654-5313 |
| | Tel: (312) 832-4500 |
| | Fax: (312) 832-4700 |
| | Email: hkaplan@foley.com |
| |        mhebbeln@foley.com |
| |        lapeterson@foley.com |
| | |
| | Barry G. Felder (admitted *pro hac vice*) |
| | Jonathan H. Friedman (admitted *pro hac vice*) |
| | 90 Park Avenue |
| | New York, NY 10016 |
| | Tel: (212) 682-7474 |
| | Fax: (212) 687-2329 |
| | E-mail: bgfelder@foley.com |
| |        jfriedman@foley.com |
| | |
| | *Co-Counsel for UMB Bank, N.A., as Trustee* |