IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 5789** |

**DECLARATION OF ROBERT FRENZEL IN SUPPORT
OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR
ENTRY OF AN ORDER APPROVING THE ASSUMPTION OF ALL EXECUTORY
CONTRACTS BY AND AMONG LUMINANT GENERATION COMPANY LLC,
LUMINANT MINING COMPANY LLC, SANDOW POWER COMPANY LLC,
TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC, AND ALCOA INC.**

Pursuant to 28 U.S.C. § 1746, I, Robert Frenzel, hereby declare as follows under penalty of perjury:

1. I am the Senior Vice President and Chief Financial Officer of Luminant Holding Company LLC, an indirect subsidiary of Energy Future Holdings Corp. ("EFH Corp.") and parent of Luminant Generation Company LLC ("Luminant Generation"), Luminant Mining Company LLC ("Luminant Mining"), and Sandow Power Company LLC ("Sandow Power"). EFH Corp.'s direct subsidiary, Energy Future Competitive Holdings Company LLC ("EFCH"), a limited liability company organized under the laws of the state of Delaware; EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC, a limited liability company organized under the laws of the state of Delaware; EFH Corp.'s direct subsidiary, Energy Future Intermediate Holding Company LLC, a limited liability company organized under the laws of the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

state of Delaware; and various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, are collectively referred to as the "Debtors" in this declaration.

2. I have worked for the Debtors since 2009. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this Declaration are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors. I am over the age of 18 and duly authorized to execute this Declaration on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp., et al., For Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. This Declaration addresses the facts surrounding the Motion, pursuant to which the Debtors are seeking to assume all executory agreements with Alcoa Inc. ("Alcoa") that have not previously been assumed in these chapter 11 cases, a non-exclusive list of which is set forth on **Exhibit 1** to **Exhibit A** attached to the Motion.

I. **Overview of the Rockdale Facility, the Debtors' Related Operations, and the Alcoa Contracts.**

4. In the 1950s, Alcoa built a primary aluminum smelter in Rockdale, Texas (the "Rockdale Facility"). To ensure a reliable supply of electricity to the Rockdale Facility, Alcoa constructed three electric generating units at the Rockdale Facility ("Sandow Units 1-3"). In

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

1951, Alcoa and the Debtor Parties entered into two contracts under which the Debtor Parties operated and maintained Sandow Units 1-3 until 1989, at which time Alcoa took over the operation of Sandow Units 1-3 and operated them as it saw fit. In 1976, Alcoa and the Debtor Parties entered into an agreement for the Debtor Parties to supply "firm" power to Alcoa from a new generating unit ("Sandow Unit 4"), that was constructed and is owned by Luminant Generation. By that same agreement, Alcoa agreed to furnish fuel to Sandow Unit 4. Sandow Unit 4 began commercial operation in 1981.

5. In 2001, private citizens groups filed a lawsuit against Alcoa alleging violations of the Clean Air Act based on work performed by Alcoa on Sandow Units 1-3 subsequent to 1989, for which Alcoa did not obtain permits and which the lawsuit alleged unlawfully increased emissions from Sandow Units 1-3. That lawsuit was joined by the United States and, in 2003, Alcoa entered into a consent decree with the citizens groups and the United States to resolve the lawsuit (the "Consent Decree"). Pursuant to the Consent Decree, Sandow Units 1-3 were permanently retired in December 2006.

6. Also pursuant to the Consent Decree, Alcoa elected to construct a replacement unit ("Sandow Unit 5"), which the Consent Decree required to be operational by April 2007. Alcoa tried, unsuccessfully, to find a third party to construct Sandow Unit 5 from 2003 to 2005. In 2006, with multiple construction-related deadlines looming, Alcoa and the Debtor Parties entered into an agreement for the Debtor Parties to obtain the rights to build Sandow Unit 5. However, because Alcoa was unable to meet the requirement to begin operating Sandow Unit 5 by April 2007 or several other construction-related deadlines, it was necessary to seek an amendment to the Consent Decree to resolve Alcoa's violations of those requirements in the Consent Decree. In those settlement negotiations with the citizens groups and the United States,

the Debtor Parties agreed to become a party to the Consent Decree and to add a selective catalytic reduction ("SCR") device at Sandow Unit 4—which was not previously involved in the Consent Decree proceeding—to reduce nitrogen oxide (NOx) emissions.  In 2007, the United States District Court for the Western District of Texas approved the amendments to the Consent Decree via a series of orders, which included a finding that Alcoa was in contempt of the original Consent Decree and had been willfully indifferent to the Consent Decree deadlines.  The Debtor Parties proceeded to construct Sandow Unit 5, which began commercial operation in 2010.

7. Sandow Units 1-3 and Sandow Unit 4 were initially fueled by lignite from Alcoa's Sandow Mine.  In the 1990s, as the Sandow Mine neared depletion, Alcoa identified other sources of lignite and chose a site known as the Three Oaks Mine in Elgin, Texas (the "Three Oaks Mine"), which Alcoa opened in 2005.  In 2007, Alcoa and the Debtor Parties entered into a purchase and sale agreement providing for Alcoa's sale of the Three Oaks Mine—excluding Alcoa's lignite reserves—to the Debtor Parties and a contract mining agreement (both further described below) that provided for Luminant Mining to operate the Three Oaks Mine on behalf of the lignite reserve owners, which, following these and related transactions, are Alcoa and Sandow Power Company.

8. Over the years, the Debtor Parties and Alcoa have entered into various contracts and leases (including, but not limited to, those described herein) memorializing terms relating to, among other things: (a) the purchase of power generated by Sandow Unit 4; (b) the ownership, mining, and payment as between the parties for the lignite at Three Oaks Mine; (c) ownership, leases, and other interests in the real property at the Rockdale Facility; and (d) the use, operation, improvement, and maintenance of certain common facilities and water supply in connection with the operations at the Rockdale Facility (collectively, the "Alcoa Agreements").  As described

herein, certain leases have already been assumed by the Debtor Parties (each, an "Alcoa Lease"), and the Debtor Parties now seek to assume all remaining agreements comprising the Alcoa Agreements—the Alcoa Contracts. The following provides a summary of the primary Alcoa Contracts and the key terms thereof.

9. ***Operating Contract and Power Contract.*** Signed in 1951, collectively, these contracts provide for Luminant Generation (a successor to Texas Power & Light), to assume operations of Sandow Units 1-3 from Alcoa and for Alcoa to pay Luminant Generation certain fees and provide the power necessary to operate the mine supporting Sandow Units 1-3 (the "Mine Load Obligation").[3] In 1989, Alcoa took over operating Sandow Units 1-3 until they were shut down and replaced by Sandow Unit 5 in accordance with the terms of the Consent Decree, as discussed above. These contracts are referenced by almost all subsequent agreements, and Alcoa's obligation to provide the power necessary to operate the mine supporting Sandow Unit 4 (currently the Three Oaks Mine) persists. The contracts are effective for sixty years following the initial operation of the "generating plant" (which initially referred to Sandow Units 1-3, but Alcoa and the Debtor Parties have subsequently amended these contracts to include Sandow Unit 4) and continues in effect thereafter unless terminated in writing by either party upon three years' notice.

10. ***Unit 4 Agreement.*** This agreement, which has been materially amended several times in the past thirty years, currently obligates Alcoa to provide 100% of the fuel to Sandow Unit 4 and for Luminant Generation to provide Alcoa with approximately 83% of the total generation output of Sandow Unit 4. Of that 83%, 398 megawatts is "firm" energy, meaning that if Alcoa needs energy for purposes of operating its smelter facility when Sandow Unit 4 is not

---

[3] In 1976, the parties amended the Mine Load Obligation through the Unit 4 Agreement (described herein) to account for Sandow Unit 4.

5

running, that power must be obtained elsewhere by Luminant Generation and provided to Alcoa at the contract price. The 398 megawatts of "firm" energy was determined because that constituted a significant portion of the smelter's load requirements when it was operating. If Alcoa does not consume its share of the generation output of Sandow Unit 4 at the Rockdale Facility (or in satisfaction of the Mine Load Obligation), that "excess energy" is transferred to an energy reserve account ("ERA") and repurchased monthly by Luminant Generation—half at an agreed market rate (the ERCOT Real Time Settled Price), and half at the contract rate (as defined in the agreement). Simply, each party pays for its respective share of the current period operating costs and over time a return on and of the invested capital of Sandow Unit 4. Today, nearly all of Alcoa's share of the output of Sandow Unit 4 goes into the ERA because Alcoa voluntarily shut down its smelting operations. Additionally, Alcoa is obligated to deliver the lignite that fuels Sandow Unit 4. The costs to mine and deliver the lignite for Sandow Unit 4 are split in accordance with the generation split, with Alcoa paying for 83% and Luminant Generation paying for 17% of those costs. The Unit 4 Agreement is effective through December 31, 2038, and continues in effect thereafter unless terminated in writing by either party upon three years' notice.

11.    *Unit 5 Agreement.*  Originally, this agreement set forth terms governing the design, construction, ownership, and operation of Sandow Unit 5 and provided for Alcoa to supply the lignite that powers Sandow Unit 5. The Unit 5 Agreement has since been amended, in conjunction with the Lignite Ownership Agreement and the Contract Mining Agreement (as described below), to transfer to Sandow Power the responsibility for supplying lignite to Sandow Unit 5. Pursuant to a related ground lease, Luminant Generation leases from Alcoa the real property upon which Sandow Unit 5 is located (the "Unit 5 Premises Lease"). In connection

with the Consent Decree, TCEH indemnifies Alcoa for certain claims and damages relating to certain obligations of Sandow Power with respect to Sandow Unit 5. The Unit 5 Agreement is effective through December 31, 2038, and continues in effect thereafter unless terminated in writing by either party upon one year' notice.

12.     ***Agreement Regarding Ownership of Lignite Interests.***     This agreement establishes the ownership of the interests in the lignite reserves in the Three Oaks Mine—Alcoa owns the lignite supplied to Sandow Unit 4 pursuant to the terms of the Unit 4 Agreement, and Sandow Power owns the lignite supplied to Sandow Unit 5 pursuant to the terms of the Unit 5 Agreement. Each party bears responsibility for the payment of royalties attributable to their respective ownership and leasehold interests in the lignite reserves in Three Oaks Mine.

13.     ***Contract Mining Agreement.***   Under this agreement, Luminant Mining acts as a contract miner to mine the lignite reserves at Three Oaks Mine, which are owned by Alcoa and Sandow Power as described above, in order to satisfy Alcoa's obligation to supply 100% of the lignite for Sandow Unit 4 and Sandow Power's obligation to supply the lignite for Sandow Unit 5 pursuant to the Unit 4 Agreement and the Unit 5 Agreement, respectively. The Contract Mining Agreement requires that the lignite be provided to Alcoa and Sandow Power on a cost-plus basis. Alcoa and Sandow Power are obligated to pay certain specified costs, including cost of capital and depreciation. Additionally, the agreement provides for Alcoa to transfer to Luminant Mining certain permits, licenses, government consents, and other approvals necessary to operate the Three Oaks Mine.[4] The Contract Mining Agreement terminates on the earlier of

---

[4]   A purchase and sale agreement executed on the same day as the Contract Mining Agreement provides for the purchase of the surface real estate of Three Oaks Mine, the lease of certain equipment used at Three Oaks Mine, and the transfer of certain employees at Three Oaks Mine from Alcoa to Luminant Mining.

the life of the Three Oaks Mine or December 31, 2038 (the end date of the initial terms of the Unit 4 Agreement and the Unit 5 Agreement).

14. ***Amended and Restated Common Facilities Agreement.*** This agreement clarifies the ownership interests and duties of Alcoa, Luminant Generation, and Sandow Power with respect to various common areas at the Rockdale Facility used in connection with the operations of Sandow Unit 4 and Sandow Unit 5. The duties provided for include the operation, maintenance, and repair of the common facilities, which are defined, in part, by reference to the Unit 4 Agreement. These facilities include, but are not limited to, access roads, potable water, access to Alcoa Lake (which provides cooling water to the power stations), security facilities, cell phone service towers, piping system, and power cable switch yards. In addition, Luminant Generation and Sandow Power are obligated to pay Alcoa certain amounts for use of those common areas. While the Common Facilities Agreement terminates on the date that the Unit 4 Agreement terminates or expires in accordance with its terms, it is important to note that Sandow Unit 5 directly benefits from the Common Facilities Agreement.

15. ***The Alcoa Leases.*** The Alcoa Leases, already assumed by the Debtors, further support the operation of Sandow Unit 4, Sandow Unit 5, and Three Oaks Mine.[5] The Alcoa Leases include, but are not limited to, the Unit 5 Premises Lease, the long-term lease by Luminant Generation and Sandow Power of other real property used in connection with the operation of Sandow Unit 4 and Sandow Unit 5, the lease of an office building owned by Alcoa and used by Sandow Power in connection with the operation of Sandow Unit 5, and the lease by

---

[5] The Debtors assumed the Alcoa Leases in the fall of 2014 in order to comply with the deadline to assume unexpired leases of nonresidential real property provided in section 365(d)(4) of the Bankruptcy Code.

Sandow Power of a portion of Alcoa's mining rights to certain lignite reserves at Three Oaks Mine.[6]

## II. The Alcoa Contracts Provide a Significant Source of Value to the Debtor Parties.

16. The Debtor Parties seek to assume all of the remaining Alcoa Agreements that are not Alcoa Leases previously assumed pursuant to the Lease Assumption Order. The Debtor Parties, including Luminant Generation, have been evaluating the current and expected use of their executory contracts, the ongoing and potential future benefits of such contracts, and the effect on the Debtors' businesses of assuming the same. As part of this process, the Debtor Parties, in their sound business judgment, have determined that the Alcoa Contracts in their entirety are beneficial to the Debtors' estates and should be assumed. Sandow Unit 4 is a significant source of value for the Debtors and the Alcoa Contracts significantly increase the current value of Sandow Unit 4.

17. Under the terms of the Alcoa Contracts, Alcoa pays its portion of the operating expenses for Sandow Unit 4, Three Oaks Mine, and certain common facilities plus a depreciation expense on asset value of Sandow Unit 4, and a contractual return on Alcoa's portion of the invested capital of Sandow Unit 4 and Three Oaks Mine. Specifically, under the Unit 4 Agreement, Alcoa is eligible to receive approximately 83% of the power generated by Sandow Unit 4 and, accordingly, Alcoa pays approximately 83% of that unit's current period operating costs. Accordingly, under the Unit 4 Agreement, Alcoa's obligations currently total approximately $125 million per year—an amount that is projected to remain constant over the next few years—of which approximately $80 million constitutes Alcoa's portion of a return of

---

[6] For more detail regarding the Alcoa Leases, see the *Motion of Energy Future Holdings Corp.,* et al.*, for Entry of an Order Approving the Assumption of Certain Unexpired Leases By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, and Alcoa Inc.* [D.I. 2534].

and on previously invested capital. The Contract Mining Agreement has a similar construct and value as the Unit 4 Agreement. In times of higher market prices, this "cost-plus" construct yields a contract price that is generally lower than the market price, and when market prices decline—like the present—the construct yields a contract price generally higher than the market price. The Unit 4 Agreement incorporates a mechanism whereby any volume of power that exceeds the load required by the Rockdale Facility is purchased by Luminant Generation at the Unit 4 Agreement's stipulated price (50% at market price; 50% at contract price) and then resold. Currently, the Sandow Unit 4 contract prices exceed market prices predominantly due to the return on and return of capital from Sandow Unit 4, which value accrues to Luminant Generation. In addition, similar to the Unit 4 Agreement, under the Contract Mining Agreement, Alcoa pays its portion of operating expenses, as well as its return on and of previously invested capital. In short, Luminant Generation currently earns more by providing power and contract mining services to Alcoa under the Alcoa Contracts than it would on the open market.

18.     The Debtor Parties estimate the financial benefit of assuming the Alcoa Contracts by calculating the difference in the projected net present value of operating Sandow Unit 4 from Luminant Generation's perspective assuming the Alcoa Contracts remain in place and the net present value of operating Sandow Unit 4 in the absence of the Alcoa Contracts. The projections and assumptions under both scenarios are regularly updated during the Debtor Parties' Long Range Planning cycles or upon the request of Luminant Generation senior management.

19.     The Sandow Unit 4 projections referenced above incorporate a number of terms pulled directly from the language of the Alcoa Contracts themselves, and also consider factors that include, but are not limited to: fuel prices; power prices; inflation; projected outage days; operating and maintenance expenditures; plant reliability over time; invested capital and

projected capital expenditures; and other contractual items, including whether Alcoa has declared a smelter closing event. The Debtor Parties' projections for Sandow Unit 4 and Three Oaks Mine are consistent with the Debtor Parties' other coal assets and consistent with their underlying assumptions.

20. The primary driver of the Sandow Unit 4 projections is the expected market price of electric power, derived from the Debtor's official forward price curve ("<u>OFPC</u>"), relative to the projected contracted price of power. The Sandow Unit 4 generation projections are derived from the Debtor's proprietary plan dispatch model that accounts for planned outage days, fuel and equipment derates, variable operating and maintenance costs, projected reliability, and expected emissions. The generation dispatch projections and OFPC are relied upon by Luminant Generation senior management, including myself, to help generate annual budgets for Luminant Generation and other Debtor Parties. These assumptions and projections are scrutinized and pressure-tested, and the reliable calculations contained therein directly inform the assumptions on which the Sandow Unit 4 projections are based.

21. Based on the aforementioned projections, the Alcoa Contracts are projected to deliver value to the Debtor Parties under a wide range of assumptions. Specifically, based on the Debtor Parties' OFPC as of December 31, 2014, Sandow Unit 4 has a net present value of approximately $450 million, presuming the Alcoa Contracts remain in effect. Conversely, the net present value of Sandow Unit 4 without the benefit of the Alcoa Contracts is approximately $150 million. The implied value of the Alcoa Contracts is therefore approximately $300 million.

22. Notably, this estimate does not include any impacts the Alcoa Contracts may have on the value of Sandow Unit 5. Nor does it account for the various operating efficiencies the Alcoa Contracts and Alcoa Leases were designed to capture. For instance, were Luminant

Generation and Sandow Power to attempt to operate the power stations at the Rockdale Facility absent the Alcoa Contracts, they would potentially have to lease the real property on which the units stood, purchase lignite royalty interests, obtain access to the common facilities, obtain necessary water and water permits—all at full cost. The Alcoa Contracts clearly represent an important element of Luminant Generation's business and the assumption thereof will yield a significant benefit to the Debtors on a go-forward basis.

23. Furthermore, the Debtor Parties' business operations at the Rockdale Facility also benefit from the long-term continuity and stability—a prized asset in the operation of electric generating units—provided by various Alcoa Contracts. Indeed, one of the principal purposes of entering into this multi-decade contractual cost-plus relationship was to attain protection against volatility in fuel and power prices, even at the risk of sometimes being "upside down" on the contract. While for many years Alcoa enjoyed being "in the money" under the Alcoa Agreements, the Debtor Parties currently enjoy that benefit as a result of current and projected power prices. Assumption of the Alcoa Contracts will allow the Debtor Parties and their estate to continue to benefit. Similarly, over the years Luminant Generation has considered-and consistently rejected-various unsolicited Alcoa offers to terminate the parties' relationship.

**III.    The Debtors Have Continued to Perform Under the Alcoa Contracts and Are Not in Breach of Their Obligations Under the Alcoa Contracts.**

24. During these chapter 11 cases, the Debtor Parties have continued operating their power generation and electricity sale businesses as debtors in possession, and have remained current with respect to their ongoing post-petition performance obligations under their agreements with Alcoa, including the Alcoa Contracts. The Debtor Parties anticipate, however, that Alcoa will argue that there are material defaults under the various Alcoa Contracts that must

KE 37364809.13RLF1 12901767v.1

be cured before Luminant Generation may assume the Alcoa Contracts. The Debtor Parties vigorously dispute any such assertion.

25. In fact, the Debtor Parties are *owed* money under the Alcoa Contracts as Alcoa has improperly withheld approximately $11 million owed to Luminant Mining. In 2013, Alcoa unilaterally wrote-off from its books the value of a large sum of its lignite reserves in Three Oaks Mine, and invoiced Luminant Generation for a portion thereof. Luminant Generation disputed those charges on the grounds that the Unit 4 Agreement expressly provides that Alcoa cannot invoice the Debtor Parties for any costs associated with lignite before its actual consumption at Sandow Unit 4. Alcoa proceeded to offset payments due to Luminant Mining under the Contract Mining Agreement, thereby inappropriately retaining $11 million. To date, Alcoa has yet to reimburse the Debtor Parties for those improper withholdings. The Debtor Parties reserve any and all rights with respect to such claim and any other claim that may exist under the Alcoa Contracts.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: August 28, 2015                                  Respectfully submitted,

                                                         */s/ Robert Frenzel*
                                                         Robert Frenzel
                                                         Senior Vice President and Chief Financial Officer
                                                         Luminant Generation Company LLC