## EXHIBIT 1

**Operating Contract**

[2.  Operating Contract]

Table of Contents*

|  |  | PAGE |
|---|---|---|
| 1. | Texas to operate generating plant as agent for Alcoa..... | 44 |
| 2. | Sale of by-products of lignite......................... | 44 |
| 3. | Alcoa to have access to generating plant; and Texas to keep appropriate records ........................... | 45 |
| 4. | Capital additions .................................. | 45 |
| 5. | Alcoa to reimburse Texas for expenses in connection with operation of generating plant ........................ | 45 |
| 6. | Operating fee to Texas.............................. | 46 |
| 7. | Incentive fee to Texas.............................. | 47 |
| 8. | Texas to indemnify Alcoa from damage claims due to negligence of Texas .................................... | 48 |
| 9. | Term of contract is sixty years....................... | 48 |
| 10. | Termination ..................................... | 48 |
|  | (a) Contract may be terminated by either party if contemporaneous power contract becomes inoperative or Texas gives notice of election to buy the generating plant ................................... | 48 |
|  | (b) Texas may terminate after third year, upon eighteen months' notice ............................ | 49 |
|  | (c) Either party may terminate upon three months' failure of other party to perform obligations...... | 49 |
|  | (d) Alcoa may terminate after initial five year period upon two months' written notice for cause which Texas does not correct to Alcoa's satisfaction..... | 49 |
|  | (e) Payment of incentive fee to Texas after termination | 49 |
| 11. | Notices ......................................... | 50 |
| 12. | Successors and Assigns ............................ | 50 |

* This is an unofficial Table of Contents, and not a part of the original contract.

41

## OPERATING CONTRACT

THIS CONTRACT dated as of the 29th day of August, 1951, and made and entered into by and between ALUMINUM COMPANY OF AMERICA, a Pennsylvania corporation, having its principal office in Pittsburgh, Pennsylvania (herein called Alcoa), and TEXAS POWER & LIGHT COMPANY, a Texas corporation, having its principal office in Dallas, Texas (herein called Texas),

### WITNESSETH:

WHEREAS, Alcoa proposes to construct, or cause to be constructed, an aluminum smelting plant in Milam County, Texas, in the vicinity of Sandow, having an initial capacity of approximately 85,000 tons of aluminum per year and requiring approximately 180,000 kw of firm electric power for its operation; and

WHEREAS, in order to insure continuous delivery of the power required for the said smelting plant, Alcoa also proposes to construct or cause to be constructed, adjacent to said smelting plant, an electric generating station of a net capability of not less than 240,000 kw, adapted to the use of lignite as a fuel, and to construct or cause to be constructed and acquire certain related facilities, including lignite leases, lignite mining, lignite transportation, crushing, drying and carbonization facilities (including crude tar recovery facilities), a 13.8/132 kilovolt substation of not less than 100,000 kva capacity and one or more dams and reservoirs (but excluding the transmission lines and related facilities referred to in Sections 3.2 and 3.3 of Article III of the Power Contract), such electric generating station and related facilities as the same may exist from time to time being referred to herein as the *generating plant;* and

WHEREAS, Texas is experienced in the use of lignite as a fuel in the generation of electric energy and has conducted extensive research work relating to the production of by-products of lignite and is experienced in the operation of steam electric generating stations;

43

Now, THEREFORE, the parties hereto mutually agree as follows:

The underscored* words herein shall be defined and have the meaning of the same underscored* words as specified in the Power Contract between the parties hereto of even date herewith.

1. *Operation of Generating Plant.* Alcoa hereby appoints Texas as its agent to operate the *generating plant* during the period beginning when the first generating unit in the *generating plant* is ready for commercial operation and ending with the termination of this contract, and Texas hereby accepts such appointment and agrees to use due diligence to operate the same in an efficient and economical manner in the name of and subject to the general direction of Alcoa. Texas shall perform all functions incident to the ordinary operation of the *generating plant* (for which Alcoa shall advance to Texas a reasonable working fund), including: the selection and employment of an adequate and capable staff (who shall be employees of Texas), purchasing, engineering, accounting, maintenance and repairs (including the making of any special additions, retirements or replacements involving in any year an aggregate amount of less than Twenty-five Thousand ($25,000) Dollars) and the maintenance of adequate insurance for the benefit of Alcoa and Texas, as their interests may appear. No commitments shall be made by Texas on behalf of Alcoa without Alcoa's prior approval except such as are incident to the ordinary operation of the *generating plant.* With the prior consent of Alcoa, Texas may contract with others for the operation of any portion of the lignite mining.

2. *Products.* In addition to the electric energy generated at the *generating plant,* all products resulting from the operation thereof, including lignite and by-products of lignite, shall belong to Alcoa. Alcoa and Texas shall cooperate to sell or dispose of the same upon as favorable a basis as practicable, at a price determined by Alcoa, so as to produce the maximum reduction in the cost of the generation of electric energy at the *generating plant,* but no such products shall be sold or disposed of without the prior consent of Alcoa. Alcoa shall be entitled to receive the proceeds of all sales of such products and the net proceeds shall be credited to the operating cost of the *generating plant.*

---

* The underscored words in the original contract are italicized in this printing.

44

3. *Access and Records.* Designated representatives of Alcoa shall have access to the *generating plant* at all reasonable times. Texas shall keep complete accounting and other records of the operation of the *generating plant,* such accounting records to be kept in accordance with generally accepted accounting principles and, in respect to the generating of electric energy, in accordance with the Uniform System of Accounts for Public Utilities as promulgated by the National Association of Railroad and Utilities Commissioners; and all such records shall be available for inspection by designated representatives of Alcoa at all reasonable times. Texas shall submit monthly to Alcoa such reasonable reports of the operation of the *generating plant* as Alcoa may from time to time request.

4. *Capital Additions.* Texas shall have the right, upon approval by Alcoa, to make such capital improvements, additions, retirements or replacements from time to time for the account of Alcoa as Texas may deem advisable. Alcoa shall have the right, after consultation with Texas, to make such capital improvements, additions, retirements or replacements from time to time as Alcoa may deem advisable, provided, however, that no such capital improvements, additions, retirements or replacements shall increase the cost to Texas of *interchange energy* under the Power Contract between the parties hereto of even date herewith or reduce the amount of such *interchange energy* otherwise available, without prior consent of Texas.

5. *Expenses.* Alcoa shall pay upon authentication by Texas, or reimburse Texas if Texas pays, all expenses incurred in connection with the operation of the *generating plant,* such as but not limited to all *operating costs,* as defined in the Power Contract between the parties hereto of even date herewith, but excluding (i) taxes of any nature which may be assessed against the *generating plant* or the operations or facilities herein contemplated and which are paid directly by Alcoa, (ii) any portion of the salaries and wages of officers and general administrative employees of Texas not stationed in the vicinity of the *generating plant* and engaged in the operation thereof, (iii) general administrative expenses of Texas, (iv) other general expenses of Texas, except those which are mutually agreed upon as being directly related to and required in

45

the operation and maintenance of the *generating plant* such as expenses for maintenance, inspection, safety measures and service, insurance of all kinds normally carried, welfare costs and retirement plan costs as normally provided for employees, (v) expenses for other special services not approved in advance by Alcoa, and (vi) if Texas shall have contracted with another person for the operation of the lignite mines or any part thereof, the sums paid to such other person to supervise or manage such operation. The amount of any item of expense reimbursable by Alcoa to Texas hereunder shall be limited to the excess of the Texas total expenditures therefor in its entire operations over the amount which would have been expended therefor by Texas if the operations contemplated hereby had not been carried on. All sums payable by Alcoa to Texas under this section shall be paid monthly within fifteen (15) days after receipt of a bill therefor. Alcoa shall pay directly to the proper authorities taxes of any nature which may be properly assessed against the *generating plant* or the operations or facilities herein contemplated (except taxes on payroll).

6. *Operating Fee.* In consideration of the performance by Texas of its obligations under this contract, Alcoa shall pay to Texas an operating fee equal to five (5%) per cent of the operating cost of the *generating plant* during each calendar year, or, in case this contract shall have been terminated pursuant to Section 10 hereof with respect to the lignite mining, a fee equal to five (5%) per cent of the operating cost of the *generating plant* exclusive of the operating cost of the lignite mining during each calendar year. Such operating fee shall be paid monthly on the basis of estimated cost and shall be adjusted after the actual operating cost for said year has been determined. Operating cost, for the purpose of this section, shall have the meaning of *operating cost,* defined in the Power Contract between the parties hereto of even date herewith, except that the *operating cost* shall not include ad valorem taxes or other taxes assessed against the facilities or the operation thereof, royalties on lignite mined or any sums paid to any person other than Texas for supervising or managing the operation of the lignite mines, nor shall said *operating cost* be diminished by the net receipts from the sale of by-products of lignite. As promptly as practicable after the date hereof the parties hereto shall negotiate

46

with a view to the establishment of fees, on the basis of estimated *operating costs,* to be paid to Texas under this section, in lieu of the five (5%) per cent fee mentioned above with respect to the operation of the *generating plant* with and without the facilities for the carbonization of lignite and including and excluding the lignite mining.

7.  *Incentive Fee.* If, in any calendar year after the first full calendar year of operation of all units in the generating station of the *generating plant,* the *operating cost,* as defined in Subdivision (b) of Article II of the Power Contract between the parties hereto of even date herewith, of the *generating plant* (after deducting from such cost any portion thereof attributable to increases in labor rates, material prices, taxes, insurance premiums and other items which may be considered to be largely outside of the control of Texas after such first full calendar year) per net kilowatt hour generated at the *generating plant* shall be less than 1.83 mills (with such minor adjustments as may be agreed upon by the parties as promptly as practicable after the date of this contract, which, when so agreed upon, shall be effective for the term of this contract) for periods of operation with dried lignite as fuel or less than 0.86 mills (with such minor adjustments as may be agreed upon by the parties as aforesaid) for periods of operation with carbonized lignite as fuel, then Alcoa shall pay to Texas, in addition to the operating fee under Section 6 hereof, an incentive fee equal to twenty-five (25%) per cent of such difference multiplied by the net kilowatt hours generated at the *generating plant* in that year (with appropriate proration during the year that such facilities become ready for initial operation), such incentive fee to be paid promptly after the determination of the amount thereof; provided, however, that no such incentive fee shall be payable under this section for any year in which such *operating cost* (without deducting from such cost any portion thereof attributable to increases in labor rates, material prices, taxes, insurance premiums and other items which may be considered to be largely outside the control of Texas after such first full calendar year) per net kilowatt hour generated at the *generating plant* shall exceed 2.2 mills (with such minor adjustments as may be agreed upon by the parties as promptly as practicable after the date of this contract) prior to the installation and

47

initial operation of such lignite carbonization facilities, or 1.5 mills (with such minor adjustments as may be agreed upon by the parties as aforesaid) thereafter; and provided further, however, that if in any calendar year the average of all daily market base prices of 99% minimum average guaranteed purity standard fifty-pound aluminum pigs during such year shall exceed 18 cents per pound, then the amounts 2.2 mills and 1.5 mills (as the same may be adjusted) for purposes of the preceding proviso, shall be increased in the same proportion that such average during such year bears to 18 cents. Such daily market base prices are currently published in the trade publication "American Metal Market," and so long as they continue to be so published the average to be used in the last proviso of the preceding sentence shall be determined from such prices published in "American Metal Market," with appropriate weighting on a time basis only. If and when such daily market prices cease to be published in the "American Metal Market," the parties shall agree upon the substitution of another trade publication.

8. *Indemnity.* Texas shall indemnify and hold Alcoa harmless from and against all liability and claims for damages to property or injury to others arising out of the operation of the *generating plant* which is due to the negligence of Texas, and shall at Texas' expense defend any actions based thereon.

9. *Term.* Subject to the provisions contained in Section 10 hereof, this contract shall be effective until the expiration of a period of sixty (60) years from the date the first generating unit in the *generating plant* is ready for commercial operation, and shall continue in effect after such date unless and until terminated by either party by written notice given three (3) years in advance of the intended date of termination.

10. *Termination.* (a) This contract may be terminated by either party upon notice to the other in the event that provisions of the Power Contract between the parties hereto of even date herewith (other than Articles VIII and X thereof) shall cease to be in effect under Article I or XI thereof or otherwise, or Texas shall have given notice of its election to buy the *generating plant*, as provided in Paragraph (a) of Section 8.1 of Article VIII of said Power Contract. In the latter contingency Texas will cooperate with Alcoa with respect to the operation of the *generating plant.*

48

(b) This contract may be terminated by Texas upon the expiration of the third or any succeeding full calendar year after the first generating unit in the *generating plant* is ready for commercial operation, upon eighteen (18) months' written notice to Alcoa.

(c) This contract may be terminated by either party if the other party shall fail to perform its obligations hereunder and such failure shall continue for a period of at least three (3) months after notice thereof from the party not in default, termination to be fifteen (15) months after the expiration of said three (3) months' period.

(d) If, at any time after the expiration of five (5) years from the date when the first generating unit in the *generating plant* is ready for operation Alcoa shall notify Texas that Alcoa is no longer satisfied with the performance of Texas hereunder, by reason of operating conditions, results achieved or the legal status of the operations, Alcoa may terminate this contract, upon two (2) years' written notice, either in its entirety or with respect to the lignite mining only, provided that in such notice Alcoa shall have advised Texas of the cause or causes of the proposed termination and Texas shall not have corrected such cause or causes to Alcoa's satisfaction within six (6) months thereafter. Such termination, with respect to the lignite mining only, shall not exhaust the right of Alcoa to terminate the remainder of this contract under the provisions of this paragraph at a later date.

(e) If this contract is terminated in whole or in part under the preceding Subparagraph (d) of this Section 10, there shall nevertheless be paid to Texas annually during the remainder of the original 60-year term of this contract an incentive fee in lieu of the incentive fee theretofore payable under Section 7) equal to twenty-five (25%) per cent of any savings effected in the operation of the *generating plant* resulting from the processing of lignite and from any recovery of by-products of lignite resulting therefrom. Such fee shall be computed on the basis of the figures set out in Section 7 hereof. This incentive fee is payable in recognition of the patents, data and know-how made available to Alcoa by Texas with respect to a low-temperature carbonization process and resulting recovery of by-products of lignite.

49

11. *Notices.* All notices, requests, approvals, consents or other communications required or permitted to be given under this contract shall be in writing and any such notice, request or other communication to Alcoa hereunder shall be deemed to be properly given if mailed, postage prepaid, to "Aluminum Company of America, Gulf Building, Pittsburgh, Pennsylvania, Attention: Vice President in Charge of Production," and any such notice or other communication to Texas hereunder shall be deemed to be properly given if mailed, postage prepaid, to "Texas Power & Light Company, Interurban Building, Dallas, Texas, Attention: President and General Manager." The designation of the person to be so notified or the address of such person may be changed at any time and from time to time by either party by similar notice.

12. *Successors and Assigns.* This contract shall bind and inure to the benefit of Alcoa and Texas and their respective successors and assigns, but this contract shall not be assigned by either party without the prior consent of the other, except to a successor to all or substantially all of its business, or, in the case of Alcoa, to its aluminum smelting operations in Milam County, whether by merger, consolidation or otherwise; provided, however, that Alcoa may delegate the performance of any of its obligations hereunder, and may assign any of its rights hereunder, to a *subsidiary* and may transfer the *generating plant* or any part thereof to a *subsidiary,* but no such delegation, assignment or transfer shall relieve Alcoa of any of its obligations hereunder.

IN WITNESS WHEREOF the parties hereto have executed this agreement in duplicate as of the day and year first above written.

ALUMINUM COMPANY OF AMERICA
By THOS. D. JOLLY
Vice President

ATTEST:
J. R. D. HUSTON
Secretary
[CORPORATE SEAL]

TEXAS POWER & LIGHT COMPANY
By W. W. LYNCH
President

ATTEST:
W. G. BURNETT
Secretary
[CORPORATE SEAL]

50