# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

555 California Street
San Francisco, California 94104

Mark E. McKane
To Call Writer Directly:
(415) 439-1473
mark.mckane@kirkland.com

(415) 439-1400

www.kirkland.com

Facsimile:
(415) 439-1500

September 4, 2015

**By eFiling and Hand Delivery**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:  *In re Energy Future Holdings, Corp., et. al.* (Case 14-10979)

Dear Judge Sontchi:

I write to request an expedited telephonic conference to determine the scope of the hearing on Energy Further Holdings Corp., *et. al.*'s motion to authorize Debtors to enter into and perform under the Plan Support Agreement [D.I. 5248] (the "PSA Motion" or the "Motion") scheduled for September 17, 2015 at 9:30 a.m. (EDT). In light of an upcoming deposition relating to the Motion that is scheduled for Thursday, September 10, 2015 at 10:00 a.m. (EDT) in New York, the Debtors request that any responses to this letter be filed by Tuesday, September 8, 2015 at 4:00 p.m. (EDT), and that a telephonic conference be scheduled for Wednesday, September 9, 2015 at 2:00 p.m. (EDT).

As this Court has already ruled *in this case*, the scope of a hearing and related discovery on a motion to assume a support agreement is narrow. In connection with the Debtors' motion to assume the RSA, the Court explained:

> When you look at it from a strictly legal perspective it really is extremely limited relief that the Court is granting. I'm not confirming a plan, I'm not approving a disclosure statement, I'm not making a valuation, I'm not saying that, you know, the Debtors if they continue down this road and ultimately come to a point where I make a decision that there's going to be some sort of presumption of reasonableness or anything along those lines.

(June 6, 2014 Hr'g Tr. 65:23-66:6.)

Now, as then, the relief sought in the PSA Motion is extremely limited. The Debtors seek nothing more that authorization to "enter into and perform under the PSA," subject to a

Beijing    Chicago    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    Shanghai    Washington, D.C.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 2

robust "fiduciary out." The *only* issues pertinent to the Motion are: 1) whether Debtors' decision to enter into the PSA is based on a "sound business purpose"; 2) whether the PSA is proposed in good faith; 3) whether reasonable notice was provided; and 4) whether the PSA constitutes an improper voting solicitation.

All other topics are out-of-bounds. In particular, although the PSA is structured to facilitate confirmation of the Plan and to preserve the benefits of the Settlement Agreement in the event that the Plan fails, nothing in the Motion or the PSA itself will impact the Court's assessment of the Plan or Settlement Agreement beginning on November 3, 2015. Accordingly, those issues are irrelevant to the hearing on the PSA Motion and inappropriate for related discovery.

### Background

**I.    THE PSA MOTION SEEKS NARROW RELIEF.**

Debtors filed the PSA Motion on August 10, 2015. The relief sought in the motion is narrow: "an order, substantially in the form of the PSA Order attached as **Exhibit A** authorizing the Debtors to enter into and perform under the PSA." (Motion ¶¶ 12, 89.) The Argument section of the PSA Motion comprised two subsections. The first focused on whether entering into the PSA was an exercise of the Debtors' sound business judgment. The second concerned whether the PSA complies with Section 1125 of the Bankruptcy Code.

As explained in the Motion, the PSA itself commits the contracting parties, including the Consenting TCEH Creditor Parties, (a) to support the Plan and to cooperate to confirm the Plan on a reasonable time line, and (b) to support an Alternative Restructuring containing certain minimum conditions, including the terms of the hard-fought Settlement Agreement, in the event that the Plan fails. The Debtors' commitments, however, are subject to two robust "fiduciary out" provisions. First, the PSA permits any Debtor's governing body to take any action necessary to comply with their fiduciary duties, without violating the PSA:

> Notwithstanding anything to the contrary in this Agreement, (i) the board of directors, the board of managers, or any such similar governing body of a Debtor ***shall be permitted to take (or permitted to refrain from taking) any action*** with respect to the Restructuring Transactions to the extent such board of directors, board of managers, or such similar governing body determines, in good faith based upon advice of counsel, that taking such action, or refraining from taking such action, as applicable, is reasonably required to comply with applicable law, including its fiduciary duties.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 3

(PSA § 4.3(c) (emphasis added).) Second, the PSA permits any Debtor to walk away from the agreement entirely if necessary to comply with its governing body's fiduciary duties:

> A Debtor *may terminate this Agreement as to it*…upon the occurrence and during the continuation of any of the following events: … (h) the board of directors, board of managers, or such similar governing body of any Debtor determines in good faith after consultation with its outside financial advisors and outside legal counsel, and based on the advice of such counsel, that proceeding with the Plan and Restructuring Transactions or the Alternative Restructuring would be inconsistent with its applicable fiduciary duties.

(PSA § 12.6(h) (emphasis added).)

## II. THE OBJECTORS RAISE ISSUES BEYOND THE SCOPE OF THE MOTION.

On August 24, 2015, four objections to the Motion were filed.[1] Those objections raised numerous issues unrelated to the narrow issue before the Court on the Motion. In particular, the Objectors not only argued the merits of the PSA and the Motion, but also attacked the *Plan* and the *Settlement Agreement*, while at the same time demanding that the Debtors remove all references to the Plan and Settlement Agreement in the proposed PSA order. Specific issues addressed in the objections that go beyond the PSA Motion include:

- Whether the Plan is feasible.
- Whether regulators will request concessions in exchange for approval of the transactions in the Plan.
- Creditors' characterization of the Plan as a "free option" or otherwise.
- Whether the Debtors negotiated the Plan or Settlement Agreement in good faith.
- Whether the Plan has been "market tested."
- The merits of any releases included in the Plan or Settlement Agreement.
- The merits of any compensation agreements contemplated by the Plan.

The Debtors have been working with the Objectors to resolve their objections to the PSA Motion, and to provide the information necessary to evaluate the Motion. First, the Debtors voluntarily prioritized the production of certain documents in response to plan confirmation document requests. On September 3, 2015 the Debtors produced all the final Board minutes and packages through August 2015 that contain materials related to the Debtors' discussion and

---

[1] Objections were filed by the EFH Committee; the EFH Indenture Trustee; UMB Bank; and the Bank of New York Mellon and the Bank of New York Mellon Trust Company (collectively, the "Objectors").

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 4

decisions regarding the Plan Support Agreement. Second, on August 31, 2015 the Debtors voluntarily identified two witnesses (Paul Keglevic, the Debtors' CFO and co-CRO, and Charles Cremens, the disinterested manager of EFIH) likely to be called at the September 17, 2015 hearing on the PSA Motion Hearing. The Debtors supplemented their list on September 1, 2015 to include a third witness (Billie Williamson, a disinterested director of EFH) likely to be called at the hearing. Third, the Debtors have voluntarily offered all three witnesses for deposition, starting with Mr. Keglevic on Thursday, September 10, 2015.

In addition, given the Objectors' attacks on the Plan and the Settlement Agreement, the Debtors sought an agreement that the hearing on the motion would *not* address the merits of the Plan or the Settlement Agreement, which are to be heard during the confirmation proceedings starting on November 3, 2015, and that discovery on those topics was therefore inappropriate. The Debtors specifically requested the Objectors' agreement that the above-listed topics raised in the objections are not relevant to the hearing on the Motion or related discovery.

The Debtors met and conferred with the Objectors regarding this proposal. In an effort to compromise and to reinforce the narrow scope of the PSA Motion, the Debtors offered to remove any findings regarding the Plan or the Settlement Agreement from the proposed order on the Motion. Nevertheless, the Objectors would not commit to the Debtors' proposed agreement regarding the scope of the hearing on the Motion.

In the absence of an agreement with the Objectors, the Debtors respectfully request the Court's guidance on the appropriate scope of the hearing on the PSA Motion and all related discovery. The Debtors are submitting this letter promptly after reaching an impasse with the Objectors, but time is of the essence, as the hearing is less than two weeks away, and the first deposition relating to the Motion is set to take place in six days.

## Argument

**I.   CONFIRMATION-RELATED ISSUES ARE NOT APPROPRIATE FOR A HEARING ON A MOTION TO ASSUME A SUPPORT AGREEMENT.**

**A.   This Court Has Already Ruled In This Case That A Motion To Assume A Support Agreement Seeks Narrow Relief.**

The issue raised in this letter is not a novel one, even in this case. On May 16, 2014, the Debtors filed a motion to assume the RSA to which E-side creditors were a party. Several objectors to that motion sought extensive discovery on issues relating to plan confirmation, including valuation. As they do now, the Debtors then sought a ruling limiting the scope of the hearing on the assumption motion and denying discovery into confirmation-related issues. Then,

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 5

as now, the Debtors argued that the focus of any hearing on the assumption motion should be the Debtors' business judgment in entering into the RSA.

The RSA objectors, by contrast, argued that upon approval of the RSA assumption motion, the Debtors would essentially be locked into a plan process, and, therefore, that the Debtors' business judgment in entering the RSA could not be assessed without digging into merits of the contemplated plan. This Court expressly rejected that argument, noting:

> [A]ll I'm doing if I approve the RSA is allowing [the Debtors] to assume the obligation to pay certain professional fees and go forward until they change their mind with a plan of attack they could have done without an RSA.

(June 6, 2014 Hr'g Tr. 51:20-24.) The Court further noted that the only parties truly bound by the PSA were the creditors:

> I'm approving the assumption of [an] agreement that really more than nailing down the Debtor nails down the creditors and allows the debtor to take a picture of where -- where they are and where the creditors are and to if not lock in, make it much more difficult for creditors who are signatories to the RSA to back out at a later time for whatever changed circumstances, while at the same time preserving their options and -- the Debtors' option on whether it makes sense to continue down the road.

(*Id.* at 66:7-15.) That was true whether or not the Debtors appeared to be committed to the plan of action contemplated by the RSA:

> Now [the creditor's counsel] is probably right, [the Debtors have] made their decision, they've made their call, 99 percent sure they're going to stick with it unless something external arises that changes the Debtors' mind.

(*Id.* at 66:16-19.)

### B. Other Cases Confirm That Confirmation-Related Issues Are Beyond The Scope Of A PSA Motion.

Courts have repeatedly made clear that, in assessing the assumption of plan support agreements, the court is not ruling on the underlying plan or its elements. For example, in *In re Delphi Corp.*, No. 05-44481, *111 (Bankr. S.D.N.Y. Jan. 12, 2007), in deciding to approve the assumption of the plan support agreement, the court declared that it was "not ruling today on the underlying plan or any elements of it." ¶¶ 18-19. Similarly, in assessing the proposed assumption of a restructuring support agreement in *In re Genco Shipping & Trading Limited*,

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 6

Case No. 14-11108 (SHL) (Bankr. S.D.N.Y. Apr. 24, 2014), the court emphasized that confirmation-related objections could wait: "[O]bjection[s] to the RSA and to that plan resulting from the RSA can be appropriately raised in an objection to plan confirmation. At this point, the Court is only being asked to approve assumption of the RSA; that is, the agreement among most of the parties in this bankruptcy." As Judge Lane explained, "[a] motion to assume [a restructuring support agreement] should be considered a *summary proceeding* intended to efficiently review a trustee or debtor's decision to adhere to or reject a particular contract in the course of swift administration of the bankruptcy estate. *It is not the time or place for prolonged discovery or a lengthy trial with disputed issues*." *Genco* Hr'g Tr. at 21:23-22:3 (emphasis added).

This Court also acknowledged the distinction between approving plan support agreements and the ultimate confirmation of a plan in *In re Visteon Corp.*, No. 09-11786 (CSS) (Bankr. D. Del. June 17, 2010), Hr'g Tr. at 24:19-25:3. In *Visteon*, Mr. Shore, counsel to the Ad Hoc Group here, argued on behalf of the parties to that plan support agreement that there was no need for a valuation determination upon the contract's assumption; only fees were being paid, and the valuation issues would be determined instead at confirmation. The Court agreed, rejecting the argument that approval of a plan support agreement would result in a party "los[ing] their right to have [a] valuation fight." *Id.* at 25:19-20. It follows that the appropriate time and place for arguing the merits of a Plan is at confirmation, not in connection with a PSA Assumption Motion.

**II.    THE HEARING ON THE PSA MOTION AND ALL ASSOCIATED DISCOVERY SHOULD BE LIMITED.**

    **A.    The Objectors Are Not Entitled To Put On Evidence Regarding The Merits Of The Plan Or The PSA.**

The PSA Motion is qualitatively no different from the RSA assumption motion that was at issue in June 2014. Like the RSA, the primary effect of the PSA is to bind creditors to a course of action culminating either in confirmation and effectiveness of the Plan or in an Alternative Restructuring subject to certain minimum requirements. Given the robust fiduciary protections in the PSA, the Debtors are now committing, just as they were in June 2014, to nothing more than to "go forward until they change their mind with a plan of attack they could have done without" the PSA.[2] (June 6, 2014 Hr'g Tr. 51:20-24.) The only impact to the Debtors' estates under the PSA is the payment of certain fees, to which no one has objected.

---

[2] UMB Bank, for instance, candidly acknowledges: "To state the obvious, the Debtors are free to pursue confirmation of the Plan and approval of the Settlement Agreement without Court approval of the PSA." (UMB Objection [D.I. 5705] ¶ 13.)

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 7

Thus, this Court's prior ruling applies, and the scope of the hearing on the PSA Motion should be limited to the four narrow issues identified above.

Assessing the Debtors' business judgment in deciding to enter into the PSA does not require the Court to hear evidence on the Debtors' views of the merits of the Plan or the Settlement Agreement. The information considered by the Debtors and the process they employed in reaching their decision are clearly relevant. The Debtors' rationale for binding creditors to support the Plan and, if necessary, an Alternative Restructuring subject to minimum requirements, is also fair game. What is not permitted is for the Objectors to examine witnesses and put on evidence concerning the specific terms of the Plan or the Settlement Agreement in an effort to challenge the Debtors' current support for those terms. As the court explained in *In re Delphi Corp.*, in ruling on the PSA this Court is "*not* ruling . . . on the underlying plan or any elements of it." No. 05-44481, *111¶¶ 18-19 (Bankr. S.D.N.Y. Jan. 12, 2007) (emphasis added), and such evidence is therefore irrelevant.

Limiting the scope of the PSA Motion hearing in no way restricts the ability of creditors to challenge the merits of the Plan or the Settlement Agreement. Those issues will be heard at the confirmation hearing starting on November 3, 2015. Indeed, in its objection the EFH Committee "reserves all rights with respect to (1) confirmation of the Amended Plan, or any other proposed in there chapter 11 cases, and (2) approval of the Settlement Agreement, in each case, on any and all grounds." (EFH Committee Objection [D.I. 5700] ¶59.)

### B.     The Objectors Appear To Misconstrue The PSA Itself.

The Objectors' refusal to agree appears to be founded upon a fundamental misunderstanding of the terms of the PSA itself. Specifically, the objections to the PSA Motion suggest that the Objectors incorrectly believe that, contrary to a "normal" support agreement, the required minimum conditions for an Alternative Restructuring in the PSA somehow irrevocably commit the Debtors not to pursue any Alternative Restructuring that does not include those conditions. The EFH Committee, in particular argues that this Court's approval of the PSA would constitute a "'back-door' approval of the Settlement Agreement," a "back-door implementation of Insider Releases," and an approval of certain management compensation arrangements. (EFH Committee Objection ¶ 35, 47.) Not so.

First, the merits of the Settlement Agreement and its associated releases will be heard starting on November 3, 2015, and nothing in the PSA Motion seeks any determination of the merits of that agreement.[3] Indeed, the Debtors have proposed to remove all findings that could

---

[3] *See* EFH Committee Objection ¶ 44 ("The Settlement Agreement is not before the Court for approval at this time….").

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 4, 2015
Page 8

be construed as addressing the merits of the Settlement Agreement from the proposed order on the Motion.

Second, the PSA does not "implement[] the Settlement Agreement through stealth." (EFH Committee Objection ¶ 35.) It does not "lock in the key terms of the Settlement Agreement," or any other arrangement, except insofar as the consenting *creditors* are bound to incorporate them into any Alternative Restructuring should the Plan fail. Any reciprocal obligation of the Debtors is, of course, subject to the fiduciary out provisions of the PSA. If the Settlement Agreement is not approved, and the Debtors determine that their fiduciary duties require them to pursue a restructuring that does not include the terms of the Settlement Agreement, they are free to do so under the PSA, or even to terminate the PSA as to them should they so choose. To the extent that the PSA binds non-Debtors who are not estate fiduciaries to include particular terms in an Alternative Restructuring, that is not an issue for the PSA Motion.

Third, the required terms with respect to compensation apply only to a *T-side* Alternative Reorganization. (*See* PSA § 6.1(a)(vi).) Even to the extent the merits of those terms could be an issue for the PSA Motion (and they are not), the E-side creditors do not have standing to raise such an objection.

The Debtors have attempted to clarify to the Objectors the terms of the PSA regarding the scope of the "fiduciary out," the application of the requirements of an Alternative Restructuring, and the compensation provisions. To the extent that any misconceptions or disagreements remain, the terms of the PSA are a matter of legal interpretation. No amount of fact discovery or witness testimony from the Debtors' directors, officers, or managers will aid the Objectors or the Court in understanding those provisions.

### III.   CONCLUSION

For the reasons set forth above, the Debtors respectfully request the Court's guidance on the appropriate scope of the hearing on the PSA Motion. Specifically, the Debtors seek confirmation that the hearing will not address the merits of the Plan or the Settlement Agreement, which should be reserved for the confirmation proceedings starting November 3, 2015.

Sincerely,

*/s/ Mark E. McKane*

Mark E. McKane