# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re*: | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | : | Case No. 14-10979 (CSS) |
| | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | Hearing Date: September 17, 2015 at 10:00 a.m. |
| | : | Objections Due: August 24, 2015 by 4:00 p.m. Extended by consent for the U.S. Trustee to September 4, 2015 by 4:00 p.m. |

## OBJECTION OF THE ACTING UNITED STATES TRUSTEE TO THE DISCLOSURE STATEMENT FOR THE THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (D.I. 5246)

Andrew R. Vara, the Acting United States Trustee for Region 3 (the "U.S. Trustee"), by and through his counsel, hereby submits this objection (the "Objection") to the Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 5246) (the "Disclosure Statement")[1] and in support hereof, the U.S. respectfully states:

## I. INTRODUCTION

The U.S. Trustee objects to the Disclosure Statement because it does not provide adequate information concerning the Plan to creditors whose votes will be solicited, as required by Section 1125 of the Bankruptcy Code. The U.S. Trustee has identified several informational deficiencies where adequate information is not contained in the Disclosure Statement, including:

- ° the lack of adequate information concerning the payment of the fees and expenses of certain professionals and other parties without

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Disclosure Statement, the Plan or any such other referenced document or pleading.

      review and the justification for such as set forth in Article IV, Section R of the Plan;

- the lack of adequate information concerning the implementation of the Reorganized Debtors' Management Incentive Plan and the payments thereunder and the justification for such as set forth in Article IV, Section O of the Plan;

- the lack of adequate information concerning, and justification for, the proposed exculpation provisions, the non-debtor third-party releases, any limitations of liability and injunctions as set forth in Article VIII of the Plan; and,

- the lack of adequate information concerning (i) the justification for including U.S. Trustee fees together with Administrative Expense Claims, (ii) the Debtors' obligation to pay U.S. Trustee fees through entry of a final decree, dismissal or conversion of each Debtor's Chapter 11 case, and (iii) the failure to provide for post-confirmation reporting as required under Fed. R. Bankr. 2015 and the U.S. Trustee Chapter 11 Operating Guidelines

Absent amendment of the Disclosure Statement and the Plan as set forth herein, the Disclosure Statement fails to meet the requirements of Sections 1125 of the Bankruptcy Code and approval of the Disclosure Statement should be denied.

## II. JURISDICTION

1. The Court has jurisdiction to hear this Objection.

2. Pursuant to Section 586 of title 28, U.S. Code, the U.S. Trustee is charged with overseeing the administration of Chapter 11 cases filed in this District. 11 U.S.C. § 586. Under Section 586 and Section 307 of the Bankruptcy Code, Congress charged the U.S. Trustee with broad responsibilities in Chapter 11 cases and the standing to rise and be heard on any issue in any case or proceeding. 11 U.S.C. § 307; *see also United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96

(3d Cir. 1994) (the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3. Specifically, in accordance with 28 U.S.C. § 586(a)(3) and more specifically 28 U.S.C. § 586(a)(a)(3)(B), the U.S. Trustee is charged with the duties and obligations to supervise the administration of cases and trustees in Chapter 11 cases, monitoring plans and disclosure statements filed in Chapter 11 cases and filing with the court, in connection with hearings under sections 1125 and 1128, comments with respect to such plans and disclosure statements.

4. Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to the above-referenced Objection.

### III. FACTS

5. On April 29, 2014, the Debtors commenced these Chapter 11 cases.

6. On April 14, 2015, the Debtors filed their first plan of reorganization and disclosure statement. (D.I. 4142 & 4143).

7. On May 18, 2015 the Court entered an order approving a schedule for approval of the disclosure statement, but did not enter a scheduling order for plan confirmation schedule (D.I. 4497).

8. On July 2, 2015, the Court entered the Initial Confirmation Scheduling Order which, among other things set a deadline of Friday, November 6, 2015, when all fact discovery would be completed and a confirmation hearing date of January 20, 2016 (D.I. 4916).

9. On July 23, 2015, the Debtors filed an Amended Joint Plan of Reorganization (D.I. 4142).

10. On August 3, 2015, the Debtors filed a Second Amended Joint Plan of Reorganization (D.I. 5197).

11. On August 9, 2015, the Debtors, the Investor Parties, the Consenting Interest Holdings, the Consenting TCEH First Lien Creditors, the Consenting TCEH Unsecured Noteholders, the Consenting TCEH Second Lien Noteholders, the TCEH Official Committee, and the TCEH First Lien Agent (collectively, the "PSA Parties") entered into the Plan Support Agreement ("PSA").

12. On August 10, 2015, the Debtors filed the PSA Motion, a Third Amended Joint Plan of Reorganization (the "Plan") (D.I. 5244), a Disclosure Statement for the Third Amended Plan (the "Disclosure Statement") (D.I. 5246), and a Motion to Approve Compromise under Rule 9019 and Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement ("Settlement Agreement") (D.I. 5249).

13. On August 27, 2015, this Court entered the Amended Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization providing for, among other things, the hearing on plan confirmation commencing on November 3, 2015. (D.I. 5771).

### III. DISCLOSURE STATEMENT OBJECTIONS

**A.     The Governing Law.**

14. The disclosure statement requirement of section 1125 is "crucial to the effective functioning of the federal bankruptcy system[;] . . . the importance of full and honest disclosure cannot be overstated." *Ryan Operations G.P. v. Santiam-Midwest*

*Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (citing *Oneida Motor Freight, Inc. v. United Jersey Bank* (*In re Oneida Motor Freight, Inc.*), 848 F.2d 414 (3d Cir. 1988)).

15. "Adequate information" under section 1125 is "determined by the facts and circumstances of each case." *See Oneida*, 848 F.2d at 417 (citing H.R. Rep. No. 595, 97th Cong., 2d Sess. 266 (1977)).

16. The "adequate information" requirement is designed to help creditors in their negotiations with Debtors over the plan. *See Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988). Section 1129(a)(2) conditions confirmation upon compliance with applicable Code provisions. The disclosure requirement of section 1125 is one of those provisions. *See* 11 U.S.C. 1129(a)(2); *In re PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000).

17. Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125; *see also, In re Quigley Co*., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007). If the plan is patently unconfirmable on its face, the application to approve the disclosure statement must be denied. *Id. (citing In re Beyond.com Corp*., 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (collecting cases); *In re 266 Washington Assocs*., 141 B.R. 275, 288 (Bankr. E.D.N.Y.) aff'd, 147 B.R. 827 (E.D.N.Y. 1992); *In re Filex*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)).

18. The Bankruptcy Code defines adequate information" as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical

5

reasonable investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); *see also, Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.),* 25 F.3d 1132, 1136 (2d Cir. 1994*); Kunica v. St. Jean Fin., Inc.,* 233 B.R. 46, 54 (S.D.N.Y. 1999).

19. To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("substantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan"). Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy Code] alternatives ...." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).

20. Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less. *See In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990). The "adequate information" requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors. *In re Adelphia Commc'ns Corp.,* 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (citing *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d at 100). Once the "adequate disclosure" floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate and its inclusion is not misleading. *Adelphia*, 352 B.R. at 596. The purpose of the disclosure statement is to give creditors enough information so that

they can make an informed choice of whether to approve or reject the debtor's plan. *In re Duratech Indus.,* 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd,* 241 B.R. 283 (E.D.N.Y. 1999). The disclosure statement must inform the average creditor what it is going to get and when, and what contingencies there are that might intervene. *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D.N.H. 1991). For the reasons set forth below, the Disclosure Statement does not provide sufficient disclosures appropriate to the circumstances of these cases.

**B.     The Disclosure Statement Should Be Amended to Provide Adequate Information As Required By Section 1125 of the Bankruptcy Code.**

21.     The *Energy Future Holdings Corp*. bankruptcy cases are among the largest and most complex bankruptcy filings that ever have occurred in the history of the United States bankruptcy system. It is, therefore, not surprising that the proposed Plan contains a myriad of complex and intricate provisions that will govern the distributions to the Debtors' many creditors.

22.     "The circumstances of these proceedings may be exceptional, but the core legal principles are familiar ones that are generally applicable in other chapter 11 cases." *In re Lehman Bros., Inc.,* 445 B.R. 143, 149 (Bankr. S.D.N.Y. 2011). It may be anticipated that many of the interested parties in these cases already have, or will seek legal, financial or other professional advice to assist them in considering whether to vote to accept or reject the Plan. The Bankruptcy Code requires that the Debtors' Disclosure Statement provide adequate information to inform the average creditor what it is going to get and when, and what contingencies may arise. *Ferretti,* 128 B.R. at 19.

23.     A review of the Disclosure Statement reveals that the Disclosure Statement should be amended to provide additional information so that it includes

7

"adequate information" of a nature sufficient to meet the requirements of Section 1125 of the Bankruptcy Code.

> *a.    The Disclosure Statement Should Be Amended to Provide Adequate Information Concerning the Fees and Expenses to be Paid to Professionals and other Parties under Article IV, Section R of the Plan.*

24.     Article V, Section F.1. of the Disclosure Statement provides that without any further notice to or action, order, or approval of the Bankruptcy Court, the Reorganized Debtors shall pay on the Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by professionals (a) payable under (1) the TCEH DIP Facility (which fees and expenses shall be paid by Reorganized TCEH), (2) the EFIH First Lien DIP Facility (which fees and expenses shall be paid by Reorganized EFIH), (3) the Merger and Purchase Agreement (which fees and expenses shall be paid by Reorganized EFIH), (4) the Backstop Agreement (which fees and expenses shall be paid by Reorganized EFIH), and (5) the Cash Collateral Order (which fees and expenses shall be paid by TCEH or Reorganized TCEH), including any applicable transaction, success, or similar fees for which the applicable Debtors have agreed to be obligated, and (b) retained by any individual member of the TCEH First Lien Ad Hoc Committee that is a TCEH Supporting First Lien Creditor. See also Article IV, Section R of the Plan.

25.     Likewise, that same paragraph of the Disclosure Statement also provides that the EFH Debtors shall pay in cash in full on the Effective Date, the reasonable and documented fees and expenses (including professional and other advisory fees and expenses) incurred through the Effective Date of the TCEH Unsecured Notes Trustee, the TCEH Second Lien Notes Trustee, the TCEH Second Lien Notes Collateral Agent, the

members of the TCEH Unsecured Ad Hoc Group, and the members of the TCEH Second Lien Consortium. See also Article IV, Section R of the Plan.

26. For the reasons set forth herein, neither the Disclosure Statement nor the Plan set forth the legal or factual justification for such payments, the amount of such payments, the identity of such professionals and parties to whom payments are to be made, the legal justification for making such payments without review or oversight and how these payments impact distributions under the Plan. The Debtors do not identify where such payments may be reflected in any of the financial documents attached to the Disclosure Statement or whether they intend to supplement the Disclosure Statement with current financial information concerning the payment of these fees and expenses before they solicit votes for the Plan.

27. As set forth in the Acting United States Trustee's Objection to the Debtors' Motion to Enter into and Perform under Plan Support Agreement (the "PSA Objection") (D.I. 5858)[2], such payments are governed by specific Code sections, namely, Sections 503(b)(3)(D), (b)(4) and (b)(5). Specific code provisions cannot be trumped by more general provisions of the Code. *See, In re AMR Corp.* 497 B.R. 690, 697 (Bankr. S.D.N.Y. 2013) (J. Lane) (rejected a plan provision to pay a departing CEO amounts in excess of Section 503(c)(2) citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* --- U.S. --- , 132 S. Ct. 2065 (2012)).

28. In addition, these provisions do not comport with, among others, Section 1129(a)(4) of the Bankruptcy Code which requires that any payments made for services or for costs and expenses of the Chapter 11 cases (i) be disclosed and (ii) be approved by

---

[2] To the extent applicable, the U.S. Trustee adopts his PSA Objection as if set forth herein and submitted herewith.

the Court.  11 U.S.C. § 1129(a)(4); *see, e.g., In re Washington Mutual, Inc.,* 442 B.R. 314, 365 (Bankr. D. Del. 2011) (bankruptcy court denying confirmation where proposed plan provided for payment of fees to indenture trustees, settling noteholders and liquidating trustee without notice and approval by the court); *In re Journal Register Co.*, 407 B.R. 520, 536 (Bankr. S.D.N.Y. 2009) (The requirements under Section 1129(a)(4) are two-fold:  (i) first there must be disclosure of the fees and (ii) the court must approve the reasonableness of the payments).  Further, the Disclosure Statement does not provide any binding authority that supports the proposed payments or the manner in which they are proposed to be made in these cases.  *Cf. In re Adelphia Commc'ns Corp.*, 441 B.R. 6 (Bankr. S.D.N.Y. 2010) (the reasonable professional fees of unsecured creditors that were incorporated as part of a global settlement embodied in confirmed Chapter 11 plan could be paid absent a showing of substantial contribution).

29.     The Debtors should amend the Disclosure Statement to provide, among other things, the legal and factual justification for such payments, information based upon the most current financial information concerning the amount of such payments, the identity of the professionals and parties to whom such payments are intended to be made, the legal justification supporting the making of such payments without review or oversight and information concerning the likely consequences that such payments may have upon projected Plan distributions and the effect on creditors.

> b.  *The Disclosure Statement Should Be Amended To Provide Adequate Information the Reorganized Debtors Management Incentive Plans to be paid through the Plan as set forth in Article IV, Section O of the Plan.*

30.     Article V, Section F.12 of the Disclosure Statement provides that the Reorganized Debtor Management Incentive Plan is approved in its entirety and shall be

implemented on the Effective Date by the applicable Reorganized Debtors without any further action by the New Boards or the Bankruptcy Court. See also Article IV, Section O of the Plan.

31. No information is provided with respect to the terms, conditions and parameters of the Reorganized Debtor Management Incentive Plan. The Debtors should provide additional information concerning this compensation plan, including, among others, identifying the participants under such a Management Incentive Plan, what amounts are sought to be paid, the metrics of the Management Incentive Plan, whether the participants are "insiders" under the Code, and the factual and legal justification for such payments.[3]

32. Accordingly, the Disclosure Statement should be amended to provide this information.

> c. *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning The Proposed Non-Debtor Third-Party Releases, Exculpations, Limitations of Liability and Injunctions.*

33. The Disclosure Statement and the Plan calls for broad releases of liability for the "Released Parties", exculpation of the "Exculpated Parties" and injunctive relief. The Disclosure Statement does not provide adequate information because it does not provide the legal and factual justification for the releases being bestowed upon the Released Parties or the exculpation being granted to the Exculpated Parties. Under the Plan, the Released Parties[4] are defined as:

---

[3] As set forth in the PSA Objection, such an incentive plan and the payments thereunder appear to violate Section 503(c) of the Code (See PSA Objection, Paragraphs 42-46).

[4] A similar but not identical definition and identification of parties is found at Article I, Section A, Paragraph 164 for "Exculpated Parties".

> The Plan Sponsors; OV2; Holders of TCEH First Lien Claims; Holders of TCEH Second Lien Note Claims; Holders of TCEH Unsecured Note Claims; Holders of EFH Legacy Note Claims; (g) Holders of EFH Unexchanged Note Claims; Holders of EFH LBO Note Primary Claims; (i) Holders of EFIH First Lien Note Claims; Holders of EFIH Second Lien Note Claims; Holders of EFIH Unsecured Note Claims; Holders of EFH LBO Note Guaranty Claims; the DIP Lenders; the TCEH First Lien Agent; the Indenture Trustees; the Dealer Managers; TEF; Texas Holdings; Oncor; funds and accounts managed or advised by Kohlberg Kravis Roberts & Co., L.P., TPG Capital, L.P. or Goldman, Sachs & Co. that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp.; the TCEH Committee; Holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH; (w) Holders of General Unsecured Claims Against EFCH; Holders of General Unsecured Claims Against the EFIH Debtors; (y) Holders of General Unsecured Claims Against EFH Corp.; Holders of General Unsecured Claims Against the EFH Debtors Other Than EFH Corp.; with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing entities, such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and; and (bb) the DTC; *provided*, *however*, that any Holder of a Claim or Interest that opts out of the releases contained in the Plan shall not be a "Released Party.

Plan at Article I, Section A, Paragraph 268. The fact that all of these parties, including a multitude of non-debtor third parties, are receiving broad releases under the Plan should be disclosed in the Disclosure Statement. The Disclosure Statement should be amended to set forth the legal and factual justification for such non-debtor third party releases, exculpations, limitations on liability and injunctions because as such these provisions are inconsistent with and contrary to applicable Third Circuit law.

34.     Parties receiving exculpation are limited to only those parties who served in the capacity of estate fiduciaries. *See, In re PWS Holding Corp*, 228 F.3d 224 (3d Cir.

2000), *In re PTL Holdings, LLC*, 2011 WL 5509031 *12 (Bankr. D. Del. Nov. 10, 2011); *In re Washington Mutual Inc.*, 442 B.R. at 350; *In re Tribune Co.*, 464 B.R. 126 (Bankr. D. Del. 2011); *In re Indianapolis Downs, LLC*, 486 B. R. 286, 306 (Bankr. D. Del. 2013), See also, *In re Coram Healthcare Corp.*, 315 B.R. 321, 337 (Bankr. D. Del. 2004) (stating that "[third party release provisions against Trustee, Equity Committee and their respective agents and professionals] are not permissible except to the extent they are limited to post-petition activity which does not constitute gross negligence or willful misconduct").

35. Third party releases are only permitted in a plan where the plan proponents produce credible evidence and valid reasons supporting the propriety of the third-party non-debtor releases granted to each of the sought-to-be protected parties and how these third-party non-debtor releases are appropriate and comply with applicable law. *See, e.g., In re Washington Mutual, Inc.*, 442 B.R. at 349-350. (J. Walrath) (holding that, *inter alia*, under applicable law, there was no basis whatsoever for the debtors to grant releases to the debtors' directors and officers or any professionals, current or former, because no evidence was presented with respect to, among other things, a substantial contribution" having been made to the case by the parties seeking such releases); *In re Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999) (J. Walrath) (court adopted and cited the five factors set forth in *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 935, 937 (Bankr.W.D.Mo.1994); *In re Genesis Health Ventures*, Inc., 266 B.R. 591, 606-609 (Bankr. D. Del. 2001) (discussing Zenith).

36. In *In re Continental Airlines*, 203 F.3d 203 (2d Cir. 2000), the Third Circuit noted that a permanent injunction in favor of non-debtors is a "rare thing" that

should not be considered absent a showing of exceptional circumstances in which certain key factors are present. The Third Circuit determined that fairness requires a showing that sufficient consideration was given to creditors whose claims were to be released and that such consideration renders the plan feasible. *Id*. at 213-214. The Third Circuit noted that the success of the plan must be based on the releases, and that there be an identity of interest between the debtor and the non-debtor so that the debtor would likely bear the cost of the litigation against the non-debtor. *Id* at 216. *See also, In re Genesis Health Ventures, Inc*., 266 B.R. 591 (Bankr. D. Del. 2001).

37. Accordingly, the Disclosure Statement should be amended to provide this information.

> d. *The Disclosure Statement Should Be Amended To Provide Adequate Information Concerning (i) the Justification for including U.S. Trustee Fees together with Administrative Claims, (ii) the Debtors' Obligation to pay U.S. Trustee Fees through Entry of a final decree, dismissal or conversion of each Debtor's Chapter 11 Case, and the Failure to Provide for Post-Confirmation Reporting as Required under Fed. R. Bankr. 2015 and the U.S. Trustee Chapter 11 Operating Guidelines.*

38. The Disclosure Statement contains no information concerning the Debtors obligations to pay statutory fees and charges to the United States Trustee on all disbursements pursuant to Section 1930 of Title 28 and, if applicable, interest pursuant to Section 3717 of title 31, United States Code ("U.S. Trustee Fees"). Article I, Section A, Paragraph 9 of the Plan improperly includes the U.S. Trustee Fees within the definition of "Administrative Claim," and purports to pay U.S. Trustee Fees in the same manner as Administrative Claims. Plan at Article II, Section A, Paragraph 1.

39. The Debtors' obligations to pay U.S. Trustee Fees on all disbursements, including payments pursuant to the Plan in and outside the ordinary course of the Debtors' business, continue through entry of a final decree in each of the Debtors' cases, dismissal of a case or conversion of a case to a case under Chapter 7 of the Bankruptcy Code.[5]

40. Although Article XII, Section C of the Plan provides for the payment of U.S. Trustee Fees, the Plan must also provide for the post-confirmation payment of U.S. Trustee Fees as well as the filing of post-confirmation quarterly reports and the provision of those reports to the U.S. Trustee. Accordingly, the Disclosure Statement and Plan should be amended to clarify these points.

41. The Debtor and Reorganized Debtors are obligated to pay U.S. Trustee Fees in each case in accordance with applicable law. U.S. Trustee Fees must be paid by the Debtors and Reorganized Debtors and the Debtors and Reorganized Debtors are required to report their respective disbursement through quarterly financial reports in a format prescribed by the U. S. Trustee.[6] All post-confirmation U.S. Trustee Fees must be paid to the U. S. Trustee until a final decree is entered or the case is converted or dismissed in accordance with 28 U.S.C. § 1930(a)(6). The payment of U.S. Trustee Fees

---

[5] *See, e.g., In re Charter Behavioral Health Systems, LLC*, 292 B.R. 36 (Bankr. D. Del. 2003); *In re Kindred Healthcare, Inc.*, 2003 WL 22327933 (Bankr. D. Del. 2003). "Payments made on behalf of a debtor, whether made directly or indirectly through centralized disbursing accounts, constitute that particular debtor's disbursements for the purpose of quarterly fees calculations under § 1930(a)(6)." *In re Genesis Health Ventures, Inc.* 402 F. 3d 416 (3d Cir. 2005). *See also, Cash Cow Servs. of Fla. LLC v. United States Trustee (In re Cash Cow Servs. of Fla. LLC)*, 296 F.3d 1261, 1263 (11th Cir. 2002), *cert. denied,* 537 U.S. 1161, 123 S. Ct. 979 (2003) (where the Eleventh Circuit Court of Appeals held that consumer loans made by the debtor were "disbursements" within the meaning of 28 U.S.C. § 1930(a)(6) and therefore subject to the payment of U.S. Trustee Fees).

[6] Pursuant to 11 U.S.C. § 704 (7) and (8), made applicable in Chapter 11 cases by 11 U.S.C. §§ 1106(a)(1) and 1107 (a) and Fed. R. Bankr. P. 2015, certain reports as prescribed by the United States Trustee Operating Guidelines and Reporting Requirements for Chapter 11 cases are required to be supplied in each case.

is required by law and the parties may not avert, abrogate or avoid their obligation to pay U.S. Trustee Fees. The payment of U.S. Trustee Fees is required until the cases are closed, converted or dismissed. *United States Trustee v. The Stone Mansion at Gryphon*, 166 F. 3d 552 (3d Cir. 1999). It is a strict requirement of confirmation. 11 U.S.C. §1129(a) (12).

42. Accordingly the Plan and Disclosure Statement should be amended and revised to provide for the proper payment of the U.S. Trustee Fees and the proper post-confirmation reporting as required under Fed. R. Bankr. P. 2015 and the applicable U.S. Trustee Guidelines.

## IV. ALL OBJECTIONS TO CONFIRMATION ARE PRESERVED

43. If applicable, the objections raised herein are also being asserted as objections to confirmation of the Plan and/or the Settlement Agreement. Accordingly, the U.S. Trustee reserves any and all rights, remedies and obligations found at law, equity or otherwise, to, *inter alia*, complement, supplement, augment, alter, substitute and/or modify this Objection, file any further objections to the confirmation of the Plan, object to any Plan provisions, to the approval of the Settlement Agreement, move for any appropriate relief, conduct any and all discovery or examinations as may be deemed necessary or as may be required and assert such other grounds as may become apparent.

## V.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i) sustain the Objection, (ii) direct the Debtors to amend the Disclosure Statement and Plan to cure the informational inadequacies and to address the issues identified in the Objection and (iii) grant such other relief as is just.

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

By:  */s/Richard L. Schepacarter*
    Richard L. Schepacarter
    Andrea B. Schwartz
    Trial Attorneys
    U.S. Department of Justice
    Office of the U.S. Trustee
    J. Caleb Boggs Federal Building
    844 N. King Street, Room 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491 (Tel.)
    (302) 573-6497 (Fax)
    Email: Richard.Schepacarter@usdoj.gov
    Email: Andrea.B.Schwartz@usdoj.gov

Dated: September 4, 2015