# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*
_____

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

September 8, 2015

<u>Via ECF and Hand Delivery</u>

Honorable Christopher S. Sontchi,
    United States Bankruptcy Court for the District of Delaware,
        824 N. Market Street, 5th Floor,
            Wilmington, DE 19801.

Re:    *In re Energy Future Holdings Corp., et al.*,
    <u>Case. No. 14-10979 (CSS)</u>

Dear Judge Sontchi:

We are counsel to the official committee of unsecured creditors of Energy Future Holdings Corp. ("<u>EFH</u>"), Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>"), EFIH Finance Inc., and EECI, Inc. (the "<u>EFH Committee</u>").  We write in response to the Debtors' letter of Friday, September 4, 2015 [D.I. 5855] (the "<u>McKane Letter</u>") concerning the scope of the hearing on the motion to authorize the Debtors to enter into and perform under the PSA [D.I. 5248] ("<u>Motion</u>") and related discovery.

The EFH Committee agrees that a hearing to approve plan support undertakings need not address the merits of plan confirmation or the substance of the Settlement Agreement.  However, this is not a free pass from judicial review.  The Debtors bear the burden of proof.  The hearing may be "limited", but only by the Debtors' choice of the particular business purpose articulated and evidence proffered for good faith.  In light of the schedule and the desire to simplify the hearing if possible, the EFH Committee has asked the Debtors to describe the affirmative case they will present, but the Debtors have declined to do so.  For now we must assume the Debtors' affirmative case will follow their earlier statements in Court and specific factual assertions in their Motion.

In this respect, the McKane Letter is incorrect in its attempt to exclude completely a list of taboo topics about the Plan or Settlement Agreement.  For example, at the confirmation hearing, the nature of the Plan as an option is relevant in determining feasibility and whether the Plan provides adequate means of implementation.  At the plan support hearing, the Debtors' *understanding* of the Plan as an option also is relevant for the purpose of establishing a prudent business purpose to pursue such a plan.  In this case, the Debtors acknowledge the Plan is an option, just not a "free" one, and the Debtors'

Honorable Christopher S. Sontchi                                                                    -2-

proposed business purpose in proceeding with an option is the valuable "disarmament" achieved by the Settlement Agreement. Whether the pursuit of a plan premised on this combination is for a prudent business purpose and proposed in good faith, each from the standpoint of EFH and EFIH, is at issue at the hearing on September 17; whether the unusual Plan that results is ready for confirmation under the Bankruptcy Code is not at issue until November 3.

Of even greater importance is a second set of issues the McKane Letter ignores, and with respect to which the EFH Committee requests guidance from the Court. As much as the EFH Committee may agree that the hearing should be limited to review of plan support undertakings on the applicable standard, the EFH Committee cannot control the scope of relief sought by the Debtors. The Debtors' Motion seeks far more than approval of plan support undertakings with respect to the T-side REIT merger Plan ("REIT Plan Support Obligations"), expiring if confirmation is denied. It also seeks approval of the following provisions, all at the hearing on September 17:

- Findings and conclusions that the Plan itself was negotiated at "arm's-length" and "in good faith." (Proposed Order ¶ A.)

- Findings and conclusions that the Disinterested Directors were involved in the relevant "actual conflict matters" and undertook a "thorough, independent review" of the settlements and compromises in the Settlement Agreement, and that "entry into the Settlement Agreement … is in the best interests of the Debtors' estates and their creditors." (Proposed Order ¶ D.)

- Presumably in reliance on such findings and conclusions about the Settlement Agreement, an order enjoining the Debtors, the equity owners and all creditor parties from voting or taking "any action in furtherance of" an alternative plan of reorganization for any Debtor (E-side or T-side) unless the plan implements the settlements and compromises in the Settlement Agreement (the "Alternative Plan Prohibition"). The Alternative Plan Prohibition survives even if the Court does not approve the Settlement Agreement. (PSA §§ 5 and 6 and *passim*.)

- As a component of the Alternative Plan Prohibition, an order approving a specifically-enforceable promise for the benefit of EFH's equity owners that EFH and all creditor parties may not file, vote or take "any action in furtherance of" a plan of reorganization that does not release EFH insiders.

This relief goes beyond what is appropriate for a plan support agreement and its limited scope of review. Findings and conclusions about the Plan and the Settlement Agreement should be reserved until the confirmation and settlement hearings, as they require evidence on the merits. And the novel Alternative Plan Prohibition is

Honorable Christopher S. Sontchi                                                                            -3-

merely another way to implement the terms of the disputed Settlement Agreement, thus requiring much of the same evidence as the settlement itself.[1]

       The unorthodox Alternative Plan Prohibition raises the most difficult questions about scope of the hearing.  Unlike plan support undertakings that relate to a particular plan of reorganization, and are therefore fundamentally temporary, the Alternative Plan Prohibition restricts <u>all</u> future plans of reorganization.  The Alternative Plan Prohibition applies even if the currently proposed Plan (or any alternative plan) fails to be confirmed, and even if the reason for a confirmation failure is that the one of the required elements (e.g., insider releases or compensation) prevents confirmation.  Indeed, it is striking that the only agreement about alternative plans at EFH and EFIH is the Alternative Plan Prohibition:  there is no agreement about whether the estate's property is to be sold or reorganized, no agreement whether an alternative plan would be taxable or tax-free, no identification of any means to implement an alternative plan, no proposed treatment of any E-side creditor, and no deadline after which the Alternative Plan Prohibition terminates.  For these reasons, the EFH Committee respectfully submits that the Court must review the business purpose and good faith for the Debtors' hand-cuffing themselves as to each of the main elements of the underlying required plan terms, without the relaxation of the standard of review that results from the temporary nature of undertakings to support a specific plan.[2]

       Subjecting the Alternative Plan Prohibition to a fiduciary out does not change the need to address it as meaningful relief.  First, the Debtors cite no case for the proposition that a settlement or use of property can avoid review of its merits (or reduce review to a mere plan support standard) by inclusion of a fiduciary out.  Second, unlike confirmation of a plan or approval of a settlement, a fiduciary out is exercised at the election of the Debtors, and there is no Court approval of a *failure* to exercise it in the future.  Third, this particular fiduciary out is in the hands of insiders that benefit personally from the Alternative Plan Prohibition, the first commandment of which is that any plan shall release directors, officers and other insiders.  *See* "Required EFH Alternative Terms" in Section 6.1(b)(i) of the PSA.  Fourth, the Debtors also propose that

---

[1]    The McKane Letter objects to the EFH Committee calling the Alternative Plan Prohibition a 'back-door' settlement.  Yet the Debtors say as much in their Motion.  The "PSA . . . settles a broad collection of litigation claims,"  and  independently "maintains the Settlement Agreement's obligations."  (Motion ¶¶ 3 and 65.)  "The PSA contains contractual provisions that bind the PSA Parties to support and consent to [insider releases and inter-debtor releases] that are substantially coextensive with those provided by the Settlement Agreement,"   and these "obligations . . . will remain effective whether or not the Court enters the Settlement Order." (*Id.* ¶ 73.)  The Debtors may prove the settlement complies with Rule 9019 and applicable law; but they have not done so yet.

[2]    The Alternative Plan Prohibition also raises a host of legal issues that will need to be addressed at the hearing, as the EFH Committee has communicated to the Debtors.

Honorable Christopher S. Sontchi                                                    -4-

the Court approve an independent right of the equity owners (who one expects will deny any fiduciary duty to creditors) to specifically enforce the Alternative Plan Prohibition against creditors even if the Debtors' fiduciary out is exercised.

The Debtors initially scheduled the hearing on the Motion for same day as the motion to approve the Settlement Agreement (the "Settlement Motion"), presumably because of the close relationship between the settlement and the Alternative Plan Prohibition. The EFH Committee objected to that abbreviated schedule for considering the complex Settlement Agreement, and the Settlement Motion was adjourned until the confirmation hearing on November 3. The EFH Committee has asked the Debtors to delay approval of the Alternative Plan Prohibition until the hearing on the Settlement Motion. The Debtors have to date declined.

Before the McKane Letter was sent, the EFH Committee also proposed to modify the Debtors' proposed form of Order (the "Proposed Order") more surgically so that the hearing could be limited to the four issues relevant to approval of an M&A plan support agreement: prudent business purpose, good faith, notice and improper solicitation (an issue the EFH Committee has not raised). At the time of the McKane Letter, the EFH Committee had received a revised form of order from the Debtors making some progress in this regard. And on Saturday, September 5, the EFH Committee provided the revised form of order attached as Exhibit A (the "Revised Order") to the Debtors.[3]

The Revised Order includes the following changes:

- Requested findings and conclusions relating to confirmation and settlement or otherwise not necessary for approval of the REIT Plan Support Obligations have been struck. The parties' rights with respect to confirmation and settlement matters are fully reserved.

- The Debtors' proposal that the Court pre-authorize all amendments to the PSA is qualified as provided in paragraph 3.

- The 'fiduciary out' of the E-side Debtors is expanded to cover their obligations with respect to alternative plans and insider issues at EFH, as well as to the T-Side REIT merger itself.

- The Alternative Plan Prohibition as applied to the terms of a plan of reorganization of the E-side debtors has been eliminated, without prejudice to the

---

[3]    A cumulative redline of the Revised Order marked against the Debtors' initial Proposed Order is attached as Exhibit B.

Honorable Christopher S. Sontchi                                                          -5-

right of the Debtors to request Court consideration in connection with the Settlement Motion on November 3 or otherwise.

Taken together, these changes permit a contested hearing of appropriate scope.  If they are not accepted, the EFH Committee has requested that the Debtors provide more information on the affirmative case behind each of the special requests for relief, including the main elements of the Alternative Plan Prohibition, so that discovery and the scope of the hearing can be determined.  The EFH Committee is fully prepared to limit the scope of the hearing as reasonably necessary to rebut the still-unspecified scope of the Debtors' affirmative evidence.

We continue to discuss these matters with the Debtors in the hope of narrowing any dispute further, or resolving it entirely, in advance of tomorrow's telephonic conference.

Respectfully submitted,

/s/ Andrew G. Dietderich

Andrew G. Dietderich

cc:      All counsel of record (via ECF)

EXHIBIT A

Revised Order

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER AUTHORIZING DEBTORS TO ENTER INTO
AND PERFORM UNDER PLAN SUPPORT AGREEMENT**

Upon the motion (the "PSA Motion")[2] of the Debtors for entry of an order (this "Order"),

authorizing the Debtors (a) to enter into the Plan Support Agreement (the "PSA"), attached

hereto as Exhibit A, by and among (i) the Debtors; (ii) the holders of approximately 99.26% of

the outstanding equity interests in EFH and its direct and indirect equity holders (the

"Consenting Interest Holders"); (iii) holders of more than [__]% of the aggregate outstanding

principal amount of the TCEH First Lien Claims (determined without regard to any claims held

by any Debtor) (the "Consenting TCEH First Lien Creditors"); (iv) holders of more than [__]%

of the aggregate outstanding principal amount of the TCEH Second Lien Note Claims

(determined without regard to any claims held by any Debtor) (the "Consenting TCEH Second

Lien Noteholders"); (v) holders of more than [__]% of the aggregate outstanding principal

amount of the TCEH Unsecured Note Claims (determined without regard to any claims held by

any Debtor) (the "Consenting TCEH Unsecured Noteholders," and together with the Consenting

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    All capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in the PSA Motion, and if not defined therein, then in the Plan Support Agreement.

TCEH First Lien Creditors and the Consenting TCEH Second Lien Noteholders, the "Consenting Creditors"); (vi) the statutory committee of unsecured creditors of the TCEH Debtors and EFH Corporate Services appointed in the Chapter 11 Cases (the "TCEH Official Committee"); and (viii) certain equity investors that are providing and/or backstopping the equity financing in connection with the plan of reorganization (the "Plan") attached as Exhibit A to the PSA (the "Investor Parties," and together with the Debtors, the Consenting Interest Holders, the Consenting Creditors, and the TCEH Official Committee the "Parties"); and (b) to take any and all actions reasonably necessary to consummate, and to perform any and all obligations contemplated by, the PSA, all as more fully set forth in the PSA Motion; and the Court having found that it has jurisdiction to consider the PSA Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that consideration of the PSA Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that due and proper notice of the PSA Motion is adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the PSA Motion (the "Hearing"); and upon consideration of the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief set forth below is in the best interests of the Debtors' estates, their creditors and other parties in interest; and that the legal and factual bases set forth in the PSA Motion establish just cause for the relief granted herein; and any objections to the requested relief have been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED**:

**Findings and Conclusions Related To the PSA**

A.      As a result of negotiations between the Parties, on August 9, 2015, they reached the agreements embodied in the PSA, which include the agreement between the Parties the pursue and support the Plan on the terms set forth in the PSA attached thereto, and if the Plan is not consummated (and under certain other circumstances), certain of the Parties agree to support an alternative plan of reorganization or other form of restructuring, liquidation, sale, or structured dismissal consistent with and that incorporates the terms of the Settlement Agreement (an "Alternative Restructuring").

B.      Each of the Debtors, including the Disinterested Directors with respect to such matters as they have determined are actual conflicts matters, have determined that entry into the PSA is in the best interests of the Debtors' estates and their creditors.  The Court makes no finding with respect to what matters are or are not actual conflict matters.

C.      The PSA has a sound business purpose, is proposed in good faith, does not constitute a solicitation of an acceptance or rejection of a plan, and does not violate section 1125 of the Bankruptcy Code.

D.      Upon entry of this Order, each of the Debtors and each of the other Parties (1) has full power and authority to enter into and perform all of their obligations under the PSA, (2) has full power and authority to take any and all action necessary to authorize and approve the PSA and has requested and obtained all necessary approvals required to do so, and (3) is legally authorized to enter into and perform the PSA and to take any and all actions necessary to authorize, approve and implement the PSA.

E.      Based on the findings set forth above, as well as the record before this Court, the Court hereby concludes as a matter of law that the Debtors' entry into and performance under the

PSA has a sound business purpose  and satisfies the legal requirements for approval in this jurisdiction.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The PSA Motion is **GRANTED** as set forth herein, and any objections to the PSA Motion not previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled with prejudice.

2.      The execution and delivery of the PSA by the Parties, including the Debtors and TCEH Official Committee, are hereby approved.

3.      The Debtors and each of the Parties are authorized and directed to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate, complete, execute, and implement the PSA in accordance with the terms and conditions thereof, including amending the PSA in accordance with the terms thereof, provided that any amendment to the PSA that affects the rights, obligations or property of EFH, EFIH, EFIH Finance Inc., and EECI, Inc. (collectively, the "**EFH Debtors**") or that benefits directly or indirectly any "insider" (as defined in section 101(31) of the Bankruptcy Code) of the EFH Debtors shall require (i) the prior consent of the official committee of unsecured creditors of the EFH Debtors and the US Trustee or (ii) Court approval.

4.      Notwithstanding anything to the contrary in this Order or the PSA, (i) the board of directors, the board of managers, or any such similar governing body of the EFH Debtors (or any successor thereto) shall be permitted to take (or permitted to refrain from taking) any action or cause the EFH Debtors to take (or refrain from taking) any action with respect to the Restructuring Transactions or any plan of reorganization, including any Alternative

Restructuring or any plan of reorganization that does not include some or all of the Required Alternative Terms, to the extent such board of directors, board of managers, or such similar governing body determines, in good faith based upon advice of counsel, that taking such action, or refraining from taking such action, as applicable, is reasonably required to comply with applicable law, including its fiduciary duties, and (ii) the officers and employees of the Debtors shall not be required to take any actions inconsistent with applicable law.

5.      Notwithstanding anything to the contrary in this Order or the PSA, when and to the extent the PSA permits a Party to the PSA to file, vote in favor of, support or take any action in furtherance of an Alternative Transaction, such Party shall be free to do so in connection with any plan of reorganization with respect to the EFH Debtors whether or not such plan of reorganization is an Alternative Restructuring or includes the Required EFH Alternative Terms.

6.      Nothing in this Order, including the findings contained herein, shall (a) constitute a finding (i) as to the applicable standard of review that should apply to the Plan or Settlement Agreement, (ii) that the Plan or Settlement Agreement was negotiated in good-faith or at arm's-length or (iii) that the Recitals in the PSA are true and accurate, or (b) prejudice, in any respect, the rights of any party-in-interest to assert any argument with respect to the Plan or the Settlement Agreement, and such rights are hereby preserved.

7.      The Parties' entry into the PSA, any and all negotiations among the Parties leading to the execution thereof, and the Parties' performance of or actions in further of any obligations thereunder shall not constitute a solicitation of votes in violation of section 1125(b) of the Bankruptcy Code.

8.      Entry of this Order and any termination of the PSA shall not alter or limit the Court's *Stipulation and Agreed Order Regarding Certain Confirmation Scheduling Matters*

[D.I. 4918] or the Court's *Third Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 4634] (each as may be amended from time to time) with respect to the Debtors' exclusive right to propose and solicit votes with respect to a chapter 11 plan.

9.      All dates contained in the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], as amended by the *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters* [D.I. 2760], dated November 13, 2014, the *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters* [D.I. 4012], dated March 31, 2015, and the *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters* [D.I. 5057], dated July 21, 2015, regarding the filing of a motion for standing are hereby adjourned without further order or notice.

10.      The PSA and this Order shall bind the Parties, their respective successors, assigns, heirs, executors, administrators, and representatives, including, for the avoidance of doubt, any future transferees of the Consenting TCEH First Lien Creditors, the Consenting TCEH Unsecured Noteholders, and the Consenting TCEH Second Lien Noteholders (subject to the terms and conditions set forth in the Plan Support Agreement), as well as (a) counsel to the Consenting TCEH Unsecured Noteholders, White & Case LLP, (b) counsel to the Consenting TCEH First Lien Creditors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and (c) counsel to the Consenting TCEH Second Lien Noteholders, Brown Rudnick LLP; and (d) any group presently or later identified in a statement filed under Bankruptcy Rule 2019 as being represented by such counsel identified in clause (a), (b), or (c).

11.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

12.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the construction, performance, enforcement, and implementation of the terms of this Order.

Dated: September __, 2015

                                      _____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

EXHIBIT B

Cumulative Redline

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## ORDER AUTHORIZING DEBTORS TO ENTER INTO
## AND PERFORM UNDER PLAN SUPPORT AGREEMENT

Upon the motion (the "PSA Motion")[2] of the Debtors for entry of an order (this "Order"),

authorizing the Debtors (a) to enter into the Plan Support Agreement (the "PSA"), attached

hereto as Exhibit- A, by and among (i) the Debtors; (ii) the holders of approximately 99.26% of

the outstanding equity interests in EFH and its direct and indirect equity holders (the

"Consenting Interest Holders"); (iii)- holders of more than [__]% of the aggregate outstanding

principal amount of the TCEH First Lien Claims (determined without regard to any claims held

by any Debtor) (the "Consenting TCEH First Lien Creditors"); (iv) holders of more than [__]%

of the aggregate outstanding principal amount of the TCEH Second Lien Note Claims

(determined without regard to any claims held by any Debtor) (the "Consenting TCEH Second

Lien Noteholders"); (v) holders of more than [__]% of the aggregate outstanding principal

amount of the TCEH Unsecured Note Claims (determined without regard to any claims held by

any Debtor) (the "Consenting TCEH Unsecured Noteholders," and together with the Consenting

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the
debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these
chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four
digits of their federal tax identification numbers is not provided herein. A complete list of such information
may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    All capitalized terms used but not otherwise defined in this Order shall have the meanings ascribed to them in
the PSA Motion, and if not defined therein, then in the Plan Support Agreement.

TCEH First Lien Creditors and the Consenting TCEH Second Lien Noteholders, the "Consenting Creditors"); (vi) the statutory committee of unsecured creditors of the TCEH Debtors and EFH Corporate Services appointed in the Chapter 11 Cases (the "TCEH Official Committee"); and (viii) certain equity investors that are providing and/or backstopping the equity financing in connection with the plan of reorganization (the "Plan") attached as Exhibit A to the PSA (the "Investor Parties," and together with the Debtors, the Consenting Interest Holders, the Consenting Creditors, and the TCEH Official Committee the "Parties"); and (b) to take any and all actions reasonably necessary to consummate, and to perform any and all obligations contemplated by, the PSA, all as more fully set forth in the PSA Motion; and the Court having found that it has jurisdiction to consider the PSA Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that consideration of the PSA Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b); and the Court having found that venue is proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that due and proper notice of the PSA Motion is adequate and appropriate under the particular circumstances; and a hearing having been held to consider the relief requested in the PSA Motion (the "Hearing"); and upon consideration of the record of the Hearing and all proceedings had before the Court; and the Court having found and determined that the relief ~~sought in the PSA Motion~~set forth below is in the best interests of the Debtors' estates, their creditors and other parties in interest; and that the legal and factual bases set forth in the PSA Motion establish just cause for the relief granted herein; and any objections to the requested relief have been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED**:

**Findings and Conclusions Related To the PSA**

1.    The Parties have been engaged in extensive arm's length negotiations with each other in good faith, through mediation and otherwise, regarding the terms of an alternative transaction to be implemented through the Plan, which would amend and replace the Initial Plan. In connection with such Plan negotiations, and as a critical part thereof, certain of the Parties have also engaged in extensive arm's length negotiations with each other in good faith, through mediation and otherwise, regarding settlement of the litigation in connection with the Standing Motions and the Litigation Letters, including the inter-Debtor and affiliate claims and causes of action and the claims and causes of action against the holders of TCEH First Lien Claims sought to be brought thereunder.

2.    Certain of the Parties have also been engaged in Court-ordered mediation in an effort to consensually resolve, *inter alia*, the claims and causes of action that the TCEH Official Committee and the ad hoc group of holders of TCEH Unsecured Note Claims sought to pursue in connection with the Standing Motions.

C.A.    As a result of the negotiations between the Parties, on August [__],9, 2015, they reached the agreements embodied in the Settlement Agreement and PSA, which include (1) the agreement between the parties to the Settlement Agreement to settle all disputes, claims, and causes of action, whether or not previously identified, and whether known or unknown, as described more fully in the Settlement Agreement; and (2) the agreement between the Parties the pursue and support the Plan on the terms set forth in the PSA attached thereto, and if the Plan is not consummated (and under certain other circumstances), certain of the Parties agree to support an alternative plan of reorganization or other form of restructuring, liquidation, sale, or

structured dismissal consistent with and that incorporates the terms of the Settlement Agreement (an "Alternative Restructuring").

4.    Each of the Debtors, including the Disinterested Directors with respect to such matters as they have determined are actual conflicts matters, have undertaken a thorough, independent review of (1) the settlements and compromises contained in the Settlement Agreement, including the settlements and compromises between the Debtors with respect to inter-Debtor claims, and the settlements and compromises between the Consenting Parties with respect to estate claims and causes of action alleged against the Consenting Interest Holders and the holders of TCEH First Lien Claims, and (2) the Parties' respective rights and obligations under the PSA, and they have determined, in the valid exercise of their business judgment,determined that entry into the Settlement Agreement and the PSA is in the best interests of the Debtors' estates and their creditors.

B.    The PSA was negotiated at arm's length,Court makes no finding with respect to what matters are or are not actual conflict matters.

E.C.    The PSA has a sound business purpose, is proposed in good faith, does not constitute a solicitation of an acceptance or rejection of a plan, and does not violate section 1125 of the Bankruptcy Code.

F.D.    Upon entry of this Order, each of the Debtors and each of the other Parties (1) has full power and authority to enter into and perform all of their obligations under the PSA and all other documents contemplated thereby, (2) has full power and authority to take any and all action necessary to authorize and approve the PSA and the transactions contemplated thereby and has requested and obtained all necessary approvals required to do so, and (3) is legally authorized to

enter into and perform the PSA and to take any and all actions necessary to authorize, approve and implement the PSA ~~and the transactions contemplated thereby.~~.

~~G.~~E.    Based on the findings set forth above, as well as the record before this Court, the Court hereby concludes as a matter of law that the Debtors' entry into and performance under the PSA ~~is an appropriate exercise of the Debtors'~~has a sound business ~~judgment~~purpose   and satisfies the legal requirements for approval in this jurisdiction.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT**:

1._____The PSA Motion is **GRANTED** as set forth herein, and any objections to the PSA Motion not previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled with prejudice.

2._____The execution and delivery of the PSA by the Parties, including the Debtors and TCEH Official Committee, are hereby approved.

3._____The Debtors and each of the Parties are authorized and directed to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate, complete, execute, and implement the PSA in accordance with the terms and conditions thereof, including amending the PSA in accordance with the terms thereof, provided that any amendment to the PSA that affects the rights, obligations or property of EFH, EFIH, EFIH Finance Inc., and EECI, Inc. (collectively, the "**EFH Debtors**") or that benefits directly or indirectly any "insider" (as defined in section 101(31) of the Bankruptcy Code) of the EFH Debtors shall require (i) the prior consent of the official committee of unsecured creditors of the EFH Debtors and the US Trustee or (ii) Court approval.

4.      Notwithstanding anything to the contrary in this Order or the PSA, (i) the board of directors, the board of managers, or any such similar governing body of the EFH Debtors (or any successor thereto) shall be permitted to take (or permitted to refrain from taking) any action or cause the EFH Debtors to take (or refrain from taking) any action with respect to the Restructuring Transactions or any plan of reorganization, including any Alternative Restructuring or any plan of reorganization that does not include some or all of the Required Alternative Terms, to the extent such board of directors, board of managers, or such similar governing body determines, in good faith based upon advice of counsel, that taking such action, or refraining from taking such action, as applicable, is reasonably required to comply with applicable law, including its fiduciary duties, and (ii) the officers and employees of the Debtors shall not be required to take any actions inconsistent with applicable law.

5.      Notwithstanding anything to the contrary in this Order or the PSA, when and to the extent the PSA permits a Party to the PSA to file, vote in favor of, support or take any action in furtherance of an Alternative Transaction, such Party shall be free to do so in connection with any plan of reorganization with respect to the EFH Debtors whether or not such plan of reorganization is an Alternative Restructuring or includes the Required EFH Alternative Terms.

6.      Nothing in this Order, including the findings contained herein, shall (a) constitute a finding (i) as to the applicable standard of review that should apply to the Plan or Settlement Agreement, (ii) that the Plan or Settlement Agreement was negotiated in good-faith or at arm's-length or (iii) that the Recitals in the PSA are true and accurate, or (b) prejudice, in any respect, the rights of any party-in-interest to assert any argument with respect to the Plan or the Settlement Agreement, and such rights are hereby preserved.

4.7.    The Parties' entry into the PSA, any and all negotiations among the Parties leading to the execution thereof, and the Parties' performance of or actions in further of any obligations thereunder shall not constitute a solicitation of votes in violation of section 1125(b) of the Bankruptcy Code.

5.8.    Entry of this Order and any termination of the PSA shall not alter or limit the Court's *Stipulation and Agreed Order Regarding Certain Confirmation Scheduling Matters* [D.I. 4918] or the Court's *Third Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Stipulation Code* [D.I. 4634] (each as may be amended from time to time) with respect to the Debtors' exclusive right to propose and solicit votes with respect to a chapter 11 plan.

6.9.    All dates contained in the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], as amended by the *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters* [D.I. 2760], dated November 13, 2014, the *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters* [D.I. 4012], dated March 31, 2015, and the *Stipulation and Agreed Order Extending Dates in Order Regarding a Protocol for Certain Case Matters* [D.I. 5057], dated July 21, 2015, regarding the filing of a motion for standing are hereby adjourned without further order or notice.

7.10.    The PSA and this Order shall bind the Parties, their respective successors, assigns, heirs, executors, administrators, and representatives, including, for the avoidance of doubt, any future transferees of the Consenting TCEH First Lien Creditors, the Consenting TCEH Unsecured Noteholders, and the Consenting TCEH Second Lien Noteholders (subject to the terms and conditions set forth in the Plan Support Agreement), as well as (a) counsel to the Consenting TCEH Unsecured Noteholders, White & Case LLP, (b) counsel to the Consenting TCEH First Lien Creditors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, and (c) counsel to

the Consenting TCEH Second Lien Noteholders, Brown Rudnick ~~–~~ LLP; and (d) any group presently or later identified in a statement filed under Bankruptcy Rule ~~–~~ 2019 as being represented by such counsel identified in clause (a), (b), or (c).

~~8.~~11.   The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

~~9.~~12.   The Court shall retain jurisdiction to hear and determine all matters arising from or related to the construction, performance, enforcement, and implementation of the terms of this Order.

Dated: September __, 2015

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge