# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

September 9, 2015

<u>Via ECF and Hand Delivery</u>

Honorable Christopher S. Sontchi,
    United States Bankruptcy Court for the District of Delaware,
        824 N. Market Street, 5th Floor,
            Wilmington, DE 19801.

        Re:    *In re Energy Future Holdings Corp., et al.*,
                <u>Case. No. 14-10979 (CSS)</u>

Dear Judge Sontchi:

        We are counsel to the official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc. (the "<u>EFH Committee</u>").  As referenced on today's teleconference, we write to respectfully request that the Court promptly address a discovery dispute in connection with the REIT Plan and Settlement Agreement,[1] scheduled for trial on November 3.  The dispute concerns documents to be produced by the plan sponsors and the T-side creditors who are signatories to the Settlement Agreement, approval of which is a condition to confirmation of the REIT Plan.  In light of the upcoming discovery deadlines, we appreciate the Court making time to address these issues on Friday, September 11, 2015 at 1:00 p.m. (EDT).

        The nature of the dispute is straightforward:  the plan sponsors and T-side creditors have made a "take it or leave it" offer to produce a limited set of documents in response to the EFH Committee's requests for production.  The EFH Committee believes

---

[1]    The "<u>REIT Plan</u>" is the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5244], as it may be amended; the "<u>Settlement Agreement</u>" is that Settlement Agreement attached as Exhibit 1 to Exhibit A of the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 5249] (the "<u>Settlement Motion</u>").

Honorable Christopher S. Sontchi                                                         -2-

that the scope of the production needs to be expanded in four critical ways, each of which are discussed in detail below:

    i.    the plan sponsors and settling creditors should apply the EFH Committee's proposed search criteria to identify documents on four focused issues;

    ii.    the proposed date range covering barely three months is unreasonably narrow and should be expanded back to January 14, 2015, the date the Court entered the Bidding Procedures Order;[2]

    iii.    more than two custodians per group are necessary.  In light of the expedited schedule, the EFH Committee requests only five custodians from each group: two principals and three professionals (a combination of counsel and financial advisors); and

    iv.    non-privileged internal group member communications within the search criteria must be produced.  The categorical refusal to produce such documents is inappropriate.

**Background**

        On July 28, 2015, in accordance with the Initial Scheduling Order,[3] the EFH Committee served initial consolidated discovery requests (the "Initial Consolidated Requests") on (i) the Ad Hoc Committee of TCEH First Lien Creditors (the "TCEH First Lien Group"), (ii) the Ad Hoc Consortium of TCEH Second Lien Noteholders (the "TCEH Second Lien Group"), and (iii) the Ad Hoc Group of TCEH Unsecured Noteholders (the "TCEH Unsecured Group" and together with the TCEH First Lien Group and the TCEH Second Lien Group, the "Settling TCEH Creditor Groups"), seeking documents in connection with the plan of reorganization then on file.

        On August 10, 2015, the Debtors filed the REIT Plan and Settlement Motion, reflecting the agreed-upon terms of the T-side's REIT Plan proposal and a separate Settlement Agreement.  The Settlement Agreement contains three discrete

---

[2]    "Bidding Procedures Order" is the Court's *Order (A) Approving Revised Bidding Procedures, (B) Scheduling an Auction and Related Deadlines and Hearings, and (C) Approving the Form and Manner of Notice Thereof* [D.I. 3295].

[3]    "Initial Scheduling Order" is the Court's *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of the Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Order* [D.I. 4916].

Honorable Christopher S. Sontchi                                                              -3-

settlements, each of which is relevant only if the REIT plan is not consummated:  (i) a
resolution of intra-T-side creditor disputes; (ii) a purported inter-silo Debtors claim
resolution; and (iii) a pre-effective date settlement and release of claims against insiders.
Critically, the plan sponsors agreed to make approval of the Settlement Agreement a
condition to confirmation of the REIT Plan.  (*See* REIT Plan Article IX.A.1.)

On August 18, 2015, in accordance with the Initial Scheduling Order, each
of the Settling TCEH Creditor Groups served written objections to the Initial
Consolidated Requests and stated that none of them would produce any documents to the
EFH Committee.

In accordance with the Amended Scheduling Order,[4] on August 27, 2015,
the EFH Committee notified the Settling TCEH Creditor Groups that, with certain
modifications, the Initial Consolidated Requests remain applicable, and on September 1,
2015, the Settling TCEH Creditor Groups reaffirmed their objections to the Initial
Consolidated Requests.

After learning their identities, the EFH Committee, on August 27, 2015,
served requests for production upon the "Creditor-Investor Consortium" consisting of ten
parties who are plan sponsors and whose counsel at White & Case led negotiations of the
REIT Plan, and on August 28, 2015, upon Hunt Consolidated, Inc. ("Hunt") and one of
its principal investors, Avenue Capital Management II, L.P. ("Avenue").

The Creditor-Investor Consortium and Hunt served responses and
objections to the EFH Committee's document requests on September 3 and September 4,
2015, respectively.  Both contained the same framework for an inappropriately limited
production of documents.[5]

On September 4, 2015, counsel for the EFH Committee and counsel for
the Creditor-Investor Consortium, Hunt, Avenue, and the Settling TCEH Creditor Groups
(collectively, the "T-side Parties") held a telephonic meet and confer (the "September 4
Meet and Confer").  The meet and confer was held jointly because the various discovery
recipients believed it efficient to do so.  During the September 4 Meet and Confer, each
of the T-side Parties acknowledged they would produce documents but only under the
"take it or leave it" terms proposed by counsel for the Creditor-Investor Consortium.

---

[4]    The "Amended Scheduling Order" is the *Amended Order (A) Revising Certain Hearing Dates and
       Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors'
       Plan of Reorganization* [D.I. 5771].

[5]    *See Creditor-Investor Consortium's Responses and Objections to the First Set of Requests for
       Production of Documents of the EFH Committee*, dated September 3, 2015, at ¶ 29.

Honorable Christopher S. Sontchi                                               -4-

### The Discovery Sought By the EFH Committee

Mindful of the expedited schedule reflected in the Amended Scheduling Order, the EFH Committee has informed the T-side Parties that it is seeking documents relating to only four limited subjects:

**Communications among T-side Parties concerning the Settlement Agreement.**  The EFH Committee believes that the potential communications among the T-side parties about the terms of the Settlement Agreement and its link to the REIT Plan are highly material.  The T-side Parties voluntarily took the unusual step of conditioning both their acquisition bid and implementation of the T-side mediation settlement on the approval of the other elements of the Settlement Agreement that affect EFH and its insiders.  How and why they agreed to this condition, and their view on whether it is necessary for the bid, is relevant to the EFH Committee's objections to the Settlement Agreement.  These documents are unavailable from the Debtors, and could provide essential probative evidence with respect to the appropriateness of the Settlement Agreement, its link to the REIT Plan, and the good faith and feasibility of the REIT Plan.

**Documents and Communications concerning "Disarmament" and "Drag."**  The communications among T-side Parties about the so-called "Disarmament" and "Drag" provisions that the Debtors tout as the consideration for agreeing to the conditional nature of the REIT Plan and the lack of typical remedies for a failure to close the contemplated transactions, are highly material to the EFH Committee's objections to the REIT Plan and Settlement Agreement.  The Debtors have stated that "Disarmament" will work like a reverse break fee and encourage the plan sponsors to close.  The EFH Committee must be permitted discovery to understand whether "Disarmament" is viewed as a significant cost by the T-side Parties.  Moreover, whether the T-side Parties were willing to proceed with less conditionality and to provide liquidated damages or a reverse break fee, rather than "Disarmament," is relevant to the feasibility and confirmability of the REIT Plan.

**Documents and Communications concerning likelihood of closing.**  The Creditor-Investor Consortium focuses on the uncertainties inherent in any regulatory condition to argue that documents bearing on the highly conditional nature of the REIT Plan are not relevant.  This argument misses the mark because, as will be at issue at confirmation, many of the conditioned approvals and rulings are unprecedented.  But more importantly, the EFH Committee's concerns about the conditionality of the REIT Plan go far beyond regulatory approval.  As the Debtors acknowledge, "the [plan sponsors] may determine not to close the [Oncor transaction] or contribute the cash necessary to fund payments under the Plan," and the Debtors will have no recourse.  (Disclosure Statement at 160.)  Thus, information on whether the T-side Parties actually

Honorable Christopher S. Sontchi                                                    -5-

intend or expect to consummate the contemplated transaction and the circumstances in which they believe they have the unfettered opportunity to walk away are highly material. Indeed, the T-side Parties have offered little in terms of assurances they will close other than the proposition that the economic loss to them of "Disarmament" exceeds $550 million and a variety of statements by counsel about the buyers' subjective intent and commitment. The reliance on these soft factors to establish the likelihood of closing makes discovery of the persons who presumably have this intent all the more important. Moreover, there are legitimate questions about the funding sources in a transaction of this size and complexity that will not close for at least six months or more. All of these issues are central to the feasibility of the REIT Plan and whether the Debtors have means to implement the REIT Plan that satisfy sections 1129(a)(11) and 1123(a)(5), respectively.

       **Documents and Communications concerning Hunt and the T-side Creditor-Investor Consortium joining forces.** Central to the narrative of the Debtors and the T-side Parties is that the REIT Plan is the only plan available. But, if that is true, it makes it all the more important to ask why that is so. The facts as to how Hunt, a reported bidder in the court-approved bidding process pursuant to the Bidding Procedures Order, ended up abandoning its bid to work with the T-side Creditor Investor Consortium are important to that premise. The fact that the Debtors ultimately cancelled the court-supervised auction in favor of the REIT Plan negotiated without the EFH Committee's involvement and oversight highlights the importance of allowing the EFH Committee—with a right under section 1103(c) of the Bankruptcy Code to investigate matters relating to acts of the Debtors and formulation of the REIT Plan—to know how the T-side Creditor-Investor Consortium and Hunt got together. This goes directly to questions about the REIT Plan's good faith and whether it may be tainted by the actions of insiders in cancelling the auction.

<u>**The Scope of Production**</u>

       The T-side Parties have offered a framework that is constructive start but is overly constrained. Despite the parties' efforts, there remain four areas of dispute for which the EFH Committee seeks the Court's assistance:

       **1. Scope of Production**. As outlined above, the EFH Committee is only pursuing document discovery from the T-side Parties on four subjects. The T-side Parties nonetheless indicated during the September 4 Meet and Confer that they would not agree to produce documents relating to their members' communications with respect to conditionality of the REIT Plan or how the T-side Creditor-Investor Consortium and Hunt began cooperating. The EFH Committee has provided a list of search criteria, attached hereto as <u>Exhibit A</u>, to the T-side Parties that covers each of the subjects at

Honorable Christopher S. Sontchi                                                    -6-

issues, and should be applied.[6]  The search criteria permits the efficient review and production of documents by permitting the results to be filtered by relevant domain names and to exclude documents likely to have been produced by the Debtors.

      **2.  Date Range.**  The T-side Parties have offered to produce documents for the time period between May 1, 2015 and August 10, 2015, subject to certain limitations for claims of joint or common interest privilege.[7]  This date range is too narrow given that discussions about a T-side creditor REIT plan began at least in April (based on documents already produced by the Debtors), if not before.  As the Court knows, the potential of such a plan was discussed in detail at the May 5, 2015 scheduling hearing.  Critical information about the involvement of Hunt and insiders in such a transaction, as well as the conditionality of and remedies included in early iterations of the plan, are all highly relevant.  The EFH Committee submits that a reasonable search period begins on January 14, 2015, the date on which the Court entered the Bidding Procedures Order.  This still only requires the T-side Parties to search less than 7 months of documents.  Furthermore, any claim of joint or common interest privilege should not cause a time period to be excluded from the search but rather only shields privileged communications; non-privileged communications should be produced.

      **3.  Number of Custodians.**  The T-side Parties have agreed to search a total of two custodians each.  This is an unreasonably narrow search given that the Creditor-Investor Consortium and the Settling TCEH Creditor Groups are each comprised of numerous independent parties.  While the EFH Committee believes discovery would be appropriate from each group member, it is proposing a total of only five custodians for each group: two principals and three professionals (a combination of counsel and financial advisors), to be reasonably agreed upon with the individual T-side Parties.

      **4.  Internal Group Communications.**  Counsel for the Creditor-Investor Consortium and Hunt have expressly stated that they will not under any circumstances agree to produce internal group communications.  To the extent any such communications are not privileged they are potentially highly relevant and should be produced.  For example, if the principal of group member A discussed with the principal

---

[6]    The EFH Committee continues to discuss the search terms with the T-side Parties and are working to reach resolution on that issue.  The parties' dispute as to the filters to be applied is a result of the other issues remaining in dispute (*i.e.* internal group communications).

[7]    The EFH Committee reserves its rights with respect to the validity or enforceability of any claims of joint or common interest privilege pending further investigation.  There is no doubt that business communications cannot be shielded by a joint or common interest privilege, even if lawyers are conducting negotiations on behalf of their clients.

Honorable Christopher S. Sontchi                                                    -7-

of group member B the likelihood of the transactions contemplated by the REIT Plan closing for any reason, the EFH Committee should be able to review those communications.

        The Court in this case has considered an ad hoc group's internal communications, and determined that they are discoverable.  The Court concluded that "discovery should not be limited to the ad hoc committee.  The members of the ad hoc committee are subject to the discovery rules." (July 18, 2014 Hr'g Tr. at 117:15-19.) The Court went on to hold that "I believe and find that the internal communications of the members of the ad hoc committee are discoverable, subject to the other limitations." (*Id.* at 117:20-23.)  Here, given that the EFH Committee is only seeking seven months of documents responsive to a targeted set of issues, the burden on the T-side Parties to produce these documents is not unreasonable.

        The EFH Committee respectfully requests that the Court direct the T-side Parties to search for and produce documents as set forth herein.  Given the upcoming deadlines for depositions and fact discovery, it is imperative that the EFH Committee receive these documents by a date certain that provides a meaningful opportunity to review them and consider in connection with fact depositions.

        We are available to discuss these matters as requested, and look forward to guidance from the Court.

Respectfully submitted,

/s/ Brian D. Glueckstein

Brian D. Glueckstein

cc:    All Participating Parties (via E-mail)
       All counsel of record (via ECF)

SC1:3937432.3

**<u>EXHIBIT A</u>**

**EFH/EFIH Committee:  Proposed Search Terms for Plan Sponsors and T-Side**

1. <u>Search terms:</u>

| | |
|---|---|
| (plan OR restructur*) w/20 (EFH OR EFIH OR TCEH OR EFCH) | (alternativ* OR backup OR downside) w//20 (EFH OR EFIH OR TCEH OR EFCH) |
| (disinterested OR independent) w/5 (director* OR manager) | DD or DDA or DDs or DDAs |
| (settl* OR releas*) w/50 inter* | tax w/2 free |
| (settl* OR releas*) w/50 (claim* OR "cause of action" OR COA OR litig* OR suit* or liab* or disput*) | disarmament OR disarm* |
| (settl* OR releas*) w/50 tax* | drag w/20 (plan OR restructur*) |
| (settl* OR releas*) w/50 (cash OR stock*) | "minority investor drag" |
| (settl* OR releas*) w/50 (legacy OR note) | "plan support" OR PSA |
| (settl* OR releas*) w/50 (sponsor* OR director* OR officer* OR D&O OR insider*) | "distributable value" |
| (settl* OR releas*) w/50 (benefit*) | high* w/20 (contingent* OR condition*) |
| (settl* OR releas*) w/50 ("first lien") | condition* w/50 plan |
| (settl* OR releas*) w/50 (debtor* OR Kirkland) | Evans |
| (settl* OR releas*) w/50 (damage*) | Sawyer |
| (settl* OR releas*) w/50 (interest) | Williamson |
| (settl* OR releas*) w/50 (plan*) | Cremens |
| (settl* OR releas*) w/50 (condition*) | Hugh |
| "settlement agreement" | terminat* w/20 agree* |
| "settlement claim" | promot* w/10 Hunt |
| "TCEH settlement" | equity w/50 (sharing OR recovery) |
| "T-side settlement" | "ERCOT" OR "PUC" OR "PUCT" OR "public utility commission" |
| "termination fee" | equity w/50 (spli* or allocation*) |
| "break fee" | inter* w/20 (claim* OR transaction* OR recovery OR upside) |
| "settlement distribution" | LD w/5 breach* |
| "settlement intercompany claim" | merger w/20 (agreement OR scenario) |
| liquidat* /2 damage* | "private letter ruling" |
| "reverse break" | tax* w/50 consequence* |
| option* | tax* w/50 (impact* or effect* OR affect*) |
| "sub rosa" | "toggle" |
| "special committee" | unimpair* |

| | |
|---|---|
| sponsor* w/50 agree* | "700 million" |
| (settl* OR releas*) w/50 (cash OR stock) | milestone* |
| "conditionality" | "Nextera" |
| "minority investor drag" | (merger OR advis* OR transact*) w/50 sponsor* |
| inter* w/20 (claim* OR action*) | (equity OR sponsor) w/50 (plan scenario transaction* restructur*) |
| backstop* | "700 million" |
| "term sheet" | cash w/5 full |
| breakup OR break-up | value* w/20 maxim* |
| backstop* | sponsor* OR equity w/50 (commit* OR invest* OR agree* OR deal*) |
| equity w/50 (pay* OR benefit*) | lien* w/50 (releas* OR challenge*) |
| (claim* OR interest*) w/50 (allow* OR distribut*) | exculpat* |
| (transaction w/20 (document* OR agreement*)) AND (EFH OR EFIH OR EFCH OR TCEH OR Oncor) | "rights offering" |
| (backup OR alternativ*) w/50 (plan OR scenario OR transaction* OR restructur* OR approv*) | downside w/50 (plan OR scenario OR transaction* OR restructur* OR approv*) |
| (backup OR alternativ*) w/50 (term* condition*) | downside w/50 (term* OR condition*) |
| feasib* w/50 (plan OR scenario OR transaction* OR restructur*) | feasib* w/50 (downside OR backup OR alternativ*) |
| release* w/20 approv* | (sponsor* OR equity* OR creditor*) w/50 (request* OR require* OR condition*) |
| "alternative restructuring" | Hunt OR Hunts |
| (stop* or halt*) w/20 (sale OR auction OR process) | (Oncor w/50 bid*) |
| likel* /20 clos* | (REIT or regulatory) w/20 approv* |
| Shore | Lauria |
| Ricky | Kornberg |
| Zelin | |

2. <u>Results limited to search custodians' communications with the following domain names</u>:

| | |
|---|---|
| @avenuecapital.com | @wlrk.com |
| @pecosventures.com | @blackstone.com |
| @flourishcapital.co.uk | @paulweiss.com |
| @huntconsolidated.com | @millsteinandco.com |
| @huntoil.com | @apollo.com |
| @huntpower.com | @apollolp.com |
| @bakerbotts.com | @oaktreecapital.com |
| @huntutility.com | @brookfield.com |
| @velaw.com | @brookfieldinfrastructure.com |
| @oncor.com | @fortress.com |
| @jonesday.com | @kingstreet.com |
| @millerbuckfire.com | @centerview.com |
| @whitecase.com | @angelogordon.com |
| @hl.com | @paulsonco.com |
| @hlhz.com | @brownrudnick.com |
| @foxrothschild.com | @rothschild.com |
| @anchoragecap.com | @blackrock.com |
| @arrowgrass.com | @centerbridge.com |
| @avenuecap.com | @gsocap.com |
| @bamfunds.com | @mofo.com |
| @bhrcap.com | @lazard.com |
| @cyruscapital.com | @tpg.com |
| @kkr.com | @kirkland.com  (*) |
| @gs.com | @evercore.com  (*) |
| @db.com | @energyfutureholdings.com  (*) |
| @taconiccap.com | @oeblegal.com  (*) |
| @fticonsulting.com | @stevenslee.com  (*) |
| @rlf.com  (*) | @jenner.com  (*) |
| @proskauer.com  (*) | @mto.com  (*) |
| @cravath.com  (*) | @mdmc-law.com  (*) |

(*)  Subject to exclusion in section 3 below

3. <u>Exclusion of Debtors' Communications ONLY where the following domain names appear in the most recent email in the chain</u>:

- @kirkland.com
- @evercore.com
- @energyfutureholdings.com
- @rlf.com
- @oeblegal.com
- @proskauer.com
- @stevenslee.com

- @cravath.com
- @jenner.com
- @mdmc-law.com
- @mto.com