WHITE & CASE

September 11, 2015

VIA ECF AND HAND DELIVERY

Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 N. Market Street, 5th Floor
Wilmington, Delaware 19801

White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
T +1 212 819 8200

whitecase.com

**Re: In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS)**

We write on behalf of (i) the Ad Hoc Group of TCEH Unsecured Noteholders, (ii) the "Investor Consortium" of Anchorage Capital Group, L.L.C., Arrowgrass Capital Partners (US) LP, Balyasny Asset Management L.P., BHR Capital LLC, BlackRock Financial Management, Inc., Cyrus Capital Partners, LP, Deutsche Bank Securities Inc., Centerbridge Partners, L.P., GSO Capital Partners LP and Taconic Capital Advisors, L.P. (the "Creditor-Investor Consortium") (iii) the Ad Hoc Group of TCEH First Lien Creditors, (iv) the Ad Hoc Group of TCEH Second Lien Noteholders, (v) Hunt Consolidated, Inc., and (vi) Avenue Capital Management II, L.P. (collectively, the "Non-Debtor PSA Parties") in response to the September 9, 2015 letter of the Official Committee of Unsecured Creditors of EFH, EFIH, EFIH Finance, Inc. and EECI, Inc. (the "EFH Committee") seeking the Court's assistance in connection with a discovery dispute between the EFH Committee and the Non-Debtor PSA Parties. The Non-Debtor PSA Parties jointly request that the Court deny the application of the EFH Committee for an order compelling discovery and instead enter a protective order curtailing certain of the discovery the Committee has sought in relation to the Plan on file.

**Background of the Discovery Dispute.** At various points throughout these Cases, counsel for the EFH Committee has expressed a sentiment that extensive plan discovery might be "interesting," "curious," or "important to understand." In that regard, following the filing of the Amended Plan on July 23, 2015, the EFH Committee served 100 individual discovery requests on the Debtors and an additional 59 individual discovery requests on three groups of T-side creditors, as follows:

- Initial Consolidated Discovery Requests to the Ad Hoc Consortium of TCEH Second Lien Noteholders, dated July 28, 2015;

- Initial Consolidated Discovery Requests to the Ad Hoc Group of TCEH Unsecured Noteholders, dated July 28, 2015; and

- Initial Consolidated Discovery Requests to the Ad Hoc Committee of TCEH First Lien Creditors, dated July 28, 2015.

Following the filing of the Third Amended Plan—which provides for the payment in full of all allowed E-side unsecured claims in cash at consummation—the EFH Committee refused to stand down on any of its inquiry. On the contrary, it *expanded* the scope of discovery, serving an additional 57 individual discovery requests on plan funding parties, as follows:

WHITE & CASE

Honorable Christopher S. Sontchi
September 11, 2015

- First Set of Requests for Production to the Creditor-Investor Consortium, dated August 27, 2015;

- First Set of Requests for Production to Hunt Consolidated, Inc., dated August 28, 2015; and

- First Set of Requests for Production to Avenue Capital Management II, L.P., dated August 28, 2015.

Even a cursory review of the EFH Committee's now 217 operative discovery requests makes clear that it is on the very fishing expedition that this Court has forbidden. See Aug. 25, 2015 Hr'g Tr. at 72:14-24 ("The facts and circumstances about the plan in front of the Court guides what discovery is appropriate. I'm not going to give you a fishing expedition because somebody has filed a plan that allows you to look into every nook and cranny."). For example, it has served demands for documents from creditors pertaining to the Oncor sale process, the bidding procedures, EFH enterprise valuation and individual creditors' assessment of the inter-Debtor claims and causes of action that, at best, bear a marginal relationship to feasibility, good faith, impairment or the Debtors' business judgment in entering into the Settlement Agreement.

Notwithstanding the marginal relevance and striking overbreadth of the discovery sought, the Non-Debtor PSA Parties promptly served formal responses, requested a meet and confer and, on three occasions, have conferred with EFH Committee counsel to attempt to reach a consensual discovery plan. On August 25, following the Court's consideration of the Amended Scheduling Order, counsel for the Ad Hoc Group of TCEH Unsecured Noteholders, the Creditor-Investor Consortium, and the Ad Hoc Group of TCEH First Lien Creditors had a meet-and-confer with the EFH Committee, at which we proposed a production along the parameters set forth herein. The EFH Committee did not respond to that proposal, either at the August 25 meet and confer or subsequently, and instead served 57 additional demands on three additional parties. While the Non-Debtor PSA parties do not see how the discovery sought will in any way assist the EFH Committee's proposed Plan and Settlement Agreement objections, we reiterated our proposal at subsequent meet and confers. Thus, before any issue was ever raised with this Court, each of the Non-Debtor PSA Parties expressly committed to produce expedited discovery on certain agreed guidelines, including that: (1) productions would be supplemental to, but not duplicative of, the discovery produced by the Debtors; (2) there would be no manual collection of hard copy documents on the understanding that substantially all responsive communications or documents will have been maintained in electronic form; (3) the responding parties would run electronic searches on the files of designated custodians pursuant to an agreed set of search terms and (4) documents created after the inception of a joint defense or common interest privilege among the Non-Debtor PSA Parties would be deemed outside the scope of production. Based on

WHITE & CASE

Honorable Christopher S. Sontchi
September 11, 2015

yesterday's letter, it appears that the EFH Committee has agreed to almost all of those principles, although it may have backtracked somewhat on the margins, as addressed below.

Only three issues remain open for the Court's resolution: (1) the relevant start and end dates for electronic searches, (2) the number of custodians whose files will be searched and (3) the inclusion of searches directed to purely intra-group communications.[1]  These are material issues —the resolution of each will have a direct effect on the overall cost, time and burden of the production process, all of which fall on the Non-Debtor PSA Parties.  The discovery sought is at best marginally relevant to the EFH Committee's proposed objections, and the disputed areas of discovery are hugely burdensome.  Further, unlike the constituents of the EFH Committee (and the Committee itself), T-side creditors are heavily impaired under the Plan, will not be paid in full, and are effectively structurally subordinated to the payment of all administrative expenses of these Cases at consummation of the Plan.  Every dollar paid to the EFH Committee for conducting its discovery expedition (as well as to the Debtors and other estate-funded parties who are being required to respond to the EFH Committee) will result in one fewer dollar of distributable value available to pay the T-side creditors who will eventually own the E-side and T-side capital structures.  From the outset, the Non-Debtor PSA Parties have thus sought to maintain an appropriate balance between the preservation of value for distribution to creditors on one hand and the production of discovery relevant to the EFH Committee's objections to the Third Amended Plan, on the other.  The EFH Committee has, for its part, insisted that, irrespective of cost and burden (and relevance), the non-Debtor PSA parties must produce what the committee wants for its "concede nothing" strategy.  Because the disputed areas of discovery simply will not yield much in the way of relevant discovery, and because there is a stark asymmetry here with respect to burden—no matter the costs of plan discovery, the EFH Committee's constituents will receive payment in full of their allowed claims under that Plan— we seek the Court's assistance.

**The Discovery Sought By the EFH Committee Is Not Appropriate Under the Rules.**

Obviously, Rule 7026 of the Federal Rules of Bankruptcy Procedures does not authorize discovery of matters that are "interesting" or "curious" to a litigant.  As this Court has already noted, the Rule makes clear that the EFH Committee is entitled only to discovery of materials that are "relevant to" its articulated plan objections—good faith, impairment and feasibility.  See Aug. 25, 2015 Hr'g Tr. at 72:24.  We have asked the EFH Committee repeatedly for proffers as to the relevance of matters such as valuation and the bid procedures process to feasibility, impairment or good faith, and the EFH Committee has done nothing more than it did in its letter to this Court, resting on conclusory assurances that the materials sought are "highly material."

---

[1] We believe that the parties have now reached agreement on the search terms without material modification to what the EFH Committee proposed.  A blackline reflecting the Non-Debtor PSA Parties' changes from the initial proposal is attached hereto as Exhibit A.

3

Honorable Christopher S. Sontchi
September 11, 2015

That assertion simply does not justify the broad-reaching discovery sought.  Nonetheless, to streamline the issues before the Court and in a show of good faith, and without conceding the relevance or admissibility of the broad swath of documents requested by the EFH Committee (particularly, documents concerning Hunt and the Creditor-Investor Consortium "joining forces"), the Non-Debtor PSA Parties have agreed to produce non-privileged documents relating to the four subjects set forth in the Committee's letter.

We are, however, requesting that the Court establish the proper balance between the costs to the Non-PSA Parties and any benefits to the EFH Committee in having particular searches run to collect, review and produce non-privileged, responsive documents.  FRCP 26 will expressly restrict discovery to "any nonprivileged matter that is relevant to any party's claim or defense <u>and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit</u>."  <u>See</u> FRCP 26(a)(1) (emphasis added).  As the underlined 2015 amendment to FRCP 26 clarifies, the fact that a relevant document might exist is only one piece of the discovery puzzle.  A court considering the proper scope of a proposed discovery plan must also take into account a host of other factors that bear directly on the dispute before the Court.  That inquiry in these Cases, on these facts, fully supports the protective order sought.

**The Court Should Restrict Searches to the Period Beginning May 1, 2015 and Ending at the Inception of Any Relevant Common Interest Arrangement.**  All document discovery at issue concerns confirmation of the Third Amended Plan and approval of the Settlement Motion under Rule 9019.  There is no dispute that those two pleadings have their direct genesis in a July 14, 2015 proposal from the ad hoc committees of TCEH unsecured noteholders, TCEH first and second-lien noteholders and the TCEH Official Committee.  (A copy of the initial proposed term sheet is attached hereto as Exhibit B.)  By that document, the T-side creditors informed the Debtors that they (i) had reached a resolution that had the overwhelming support of the T-side and the EFH residual equity, (ii) made the consent of E-side creditors unnecessary through unimpairment and (iii) desired that the Debtors solicit that plan immediately.  What followed thereafter were a host of modifications to the proposal that have apparently piqued the interest of the EFH Committee including "drag and disarmament," lock-ups to alternative plan structures, insider releases, and conditioning of the Plan on approval of the Settlement Agreement.  Because the matters that concern the EFH Committee's stated objections occurred after the July 14th proposal, the Non-Debtor PSA Parties have proposed limiting searches to the period after May 1, 2015.  That rollback of six weeks seems more than generous under the circumstances.

Honorable Christopher S. Sontchi
September 11, 2015

    The EFH Committee, for its part, seeks discovery over a seven month period beginning on January 14, 2015, requiring each of the non-Debtor PSA Parties to comb through additional thousands of emails that, for example, contain the phrase "settlement agreement" or "option" but have nothing to do with these Cases. That burden and expense is significant, given that some of the proposed custodians will be bankruptcy professionals whose emails and other electronic documents relating to other investments and other assignments will invariably address matters such as settlements, options, backstops and term sheets. It is also completely unnecessary, given that the communications between the Ad Hoc Group of TCEH Unsecured Noteholders and the Ad Hoc Group of TCEH First Lien Creditors regarding the Plan currently on file began in late May. Thus, imposing on PSA parties the costs and burdens of reviewing and producing from a seven-month period prior to the filing of the Third Amended Plan far outweighs any benefit that the EFH Committee has articulated in its letter to this Court. At best, the justification for a January 14th start date is the fact that the Court entered the bidding procedures order on that date. What the bidding procedures for the sale of assets to a third-party, or the "joining forces" of plan support parties have to do with the terms of a creditor-funded plan that unimpairs the E-side unsecured creditors, however, remains a mystery.

    As for the proposed end date for searches, as noted above, during the parties' meet and confers there seemed to have been a general agreement that documents shared between common interest parties after the date of any relevant common interest arrangement would be outside the scope of the searches. In its letter to the Court, however, the EFH Committee seems to have backtracked, requesting an order that searches must extend to the present and that all non-privileged materials shared between common interest parties at any time to the present would have to be produced. That proposal is simply not workable. While it is conceivable that there are non-privileged documents between common interest parties, such as the sharing of a news article relating to these cases, the cost of reviewing all documents created after a joint defense for attorney-client and work product privileges, redacting them as appropriate and logging their withholding will be immensely time consuming and expensive. The non-Debtor PSA Parties should not be put to that burden, particularly when the EFH Committee has not explained how a non-privileged communication regarding general case matters could materially impact issues of feasibility, good faith or impairment.

**The Court Should Require No More Than 10 Total Custodians for the File Searches.**
During the parties' second meet and confer, the Non-Debtor PSA Parties proposed that the EFH Committee suggest a slate of ten custodians to have their files searched and further that the proposed slate could contain a mix of principals of and advisors to the Non-Debtor PSA Parties. Given that the material negotiations of the Third Amended Plan took place in the virtual inboxes of virtually every PSA party, a slate of ten custodians is expected to present a panoramic snapshot of all negotiations relevant to the EFH Committee's stated objections and will more

5

Honorable Christopher S. Sontchi
September 11, 2015

than adequately disabuse the EFH Committee of its stated supposition that plan negotiations were a sham "Trojan horse" designed to mislead the Court and all parties in interest in these Cases.

Nonetheless, the EFH Committee continues to insist that a total of thirty custodians' files must be searched, presumably on the misguided notion that, by asking for "twenty more," their leverage in plan negotiations will increase by "twenty more." On the contrary, given the increase in time and expense of searching the files of thirty custodians versus ten, the practical limitations of review time under the operative plan confirmation schedule and the lack of any appreciable relevance of the EFH Committee's discovery requests in the first instance, the Court should deny the EFH Committee's attempt to use the imposition of cost as a means to obtain as-yet-unspecified plan concessions.

**The Court Should Restrict the Production of Purely Internal Communications.** Finally, and most importantly, the Court can readily understand that, in cases of this size, hundreds if not thousands of communications occur daily between individual members of groups such as the Ad Hoc Group of TCEH Unsecured Notes, as well as between their advisors concerning the case. Some of these communications are innocuous, relating to the scheduling of calls, the forwarding of pleadings and unannotated requests for comments on a document. Others will reflect detailed legal strategy and advice relating to negotiations, pleadings, courtroom developments and legal principles that are highly confidential and proprietary to the group. Almost nothing in that universe of documents will consist of material, non-privileged documents that are relevant to anything. The Non-Debtor PSA Parties have proposed, as is consistent with discovery in almost all large cases, that searches exclude communications occurring solely within a group or an institution, including its advisors, as the burden of conducting that discovery significantly outweighs any probative value of the discovery sought. Further, given the imperative for heightened review and the exponential expansion of the universe of documents subject to review, there is no way an intra-group production can be completed within the time frame contemplated by the operative plan confirmation scheduling order. Such a search also will require the preparation of six separate, extensive privilege logs at substantial cost, invariably leading to more disputes and more costs.

In justifying its demand to have the Non-Debtor PSA Parties tear apart the proverbial haystack and search and produce intra-group communications, the EFH Committee points only to the July 18, 2014 status conference at which the Court addressed the issue of discovery of intra-group communications in the first lien makewhole dispute. Ultimately, in the first lien makewhole dispute, the Court was called upon to rule on the individual investors' investment expectations. Thus, their individual subjective views were directly at issue. Here, however, what an individual creditor, attorney or financial advisor thinks about impairment, good faith,

6

Honorable Christopher S. Sontchi
September 11, 2015

feasibility, or the Debtors' business judgment in entering into the Settlement Agreement is not probative (assuming it were non-privileged). Even with respect to an issue such as feasibility, the existence of a hypothetical communication between a group member and a financial advisor relating to subjective willingness to fund the Plan—which is apparently the EFH Committee's dreamed "needle" for which the haystack must be wrought—would be entirely irrelevant evidence of subjective intent contradicting the express terms of the funding commitments before the Court. For a committee that should have every interest in seeing the Third Amended Plan consummated, the notion that they would spend time developing theories that would undermine the ability of the Debtors to enforce the execution of that plan is mystifying.

*\*\**

In light of all the foregoing, the Non-Debtor PSA Parties respectfully request that the Court enter a protective order limiting the substantial and marginally relevant discovery sought by the EFH Committee to the more reasonable framework proposed by the Non-Debtor PSA Parties. That framework, we submit, strikes the appropriate balance between providing the EFH Committee with discovery necessary to prosecute its articulated plan objections while protecting each of the other FRCP 26 limitations on unnecessary cost, delay and burden.

We look forward to speaking with the Court this afternoon.

Respectfully submitted,

*Chris Shore    /wP*

**J. Christopher Shore**

T +212.819.8394
E cshore@whitecase.com

cc:     The Non-Debtor PSA Parties (via E-mail)
        All Participating Parties (via E-mail)
        All counsel of record (via ECF)

Americas 90790546