**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: D.I. 4964, 5788** |

**EFIH DEBTORS' REPLY IN SUPPORT OF
PARTIAL OBJECTION TO PROOF OF CLAIM NO. 6347
FILED BY THE INDENTURE TRUSTEE FOR THE EFIH UNSECURED NOTES**

This Court should disallow the PIK Noteholders' claim for a make-whole premium for the same reasons that it denied the First Lien Trustee's claim for a make-whole premium and should deny the Second Lien Trustee's claim for a make-whole premium.[2] Although the PIK Noteholders seek what they refer to as a "call premium" under section 3.07(d) of the PIK Indenture, and not the Applicable Premium under section 3.07(a) as argued by the First Lien Noteholders and the Second Lien Noteholders, the PIK Indenture similarly does not provide for a make-whole premium in this or any other form. Because the brief filed by the PIK Noteholders and PIK Trustee ("PIKs") repeats the Second Lien Trustee's arguments made in connection with virtually the same issues and materially identical language, this brief incorporates the arguments

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] By agreement between the EFIH Debtors and the PIK Noteholders, the PIK Noteholders and the PIK Trustee filed their response on August 28, 2015, only addressing the make-whole portion of the EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed By The Indenture Trustee For The EFIH Unsecured Notes, D.I. 4964. The PIK Noteholders and Trustee filed a separate response to the portion of this claim objection regarding postpetition interest on September 4, 2015. The EFIH Debtors' response to that brief will be filed on or before September 18, 2015.

RLF1 12965426v.1

in the EFIH Debtors' reply brief in the Second Lien make-whole litigation, No. 14-50405 (D.I. 53) ("EFIH Summ. J. Reply").

*First*, like the Second Lien Trustee, the PIKs fail to distinguish *Momentive* and the many other cases holding the law will not award a make-whole premium absent explicit language requiring one after default and acceleration.  As *Momentive* held, the term "premium, if any" fails this test.  For the same reasons, the PIK Indenture does too.  The term "if any" underscores the indefiniteness of the Indenture's language.  The PIKs argue that the qualifying phrase "if any" refers specifically to a make-whole premium that may not later be owed when the notes are repaid.  This is pure invention.  The Indenture also refers to "Additional Interest, if any," but here the qualifying phrase "if any" means no such thing.  The obligation to pay "Additional Interest, if any" does not dissipate over time.

*Second*, the PIKs reprise the Second Lien Trustee's unusual "classic catch-all" argument. Simply put, if the term "premium, if any" is not explicit without an imaginative gloss relying on different terms in the Indenture, the Indenture does not clearly provide for a make-whole premium.  The PIKs also make the same mistake as the Second Lien Trustee by misconstruing the rule against surplusage as a rule against any possible conceptual overlap between items in a list of terms.  The two canons of construction are not the same.  Overlapping contract terms are commonplace.

*Third*, and finally, the PIKs also invoke the relevant drafting history, which should be irrelevant as parole evidence.  Far from supporting their assertion that the Debtors "intentionally bargained for" language "preserv[ing] a holder's entitlement to a call or make-whole premium in the event of bankruptcy," the drafting history shows precisely the opposite:  the Debtors intentionally struck out language that explicitly provided for a make-whole after a bankruptcy-

caused default and related acceleration because they would *not* agree that it was due under those circumstances.

### Argument

I. **No Precedent Or Principle Of Textual Interpretation Supports Holding That "Premium, If Any" Provides For A Make-Whole Premium.**

1. The PIKs seek what they describe as a "call premium" under section 3.07(d) of the Indenture, not the Applicable Premium under section 3.07(a). Br. ¶ 1.[3] Although this call premium may be for a lesser amount than the Applicable Premium, New York law still requires that the PIK Indenture expressly provide for this premium after a bankruptcy-induced default and acceleration. Summary Judgment Decision ¶ 47 (citing cases).[4] The PIKs embrace this well-established standard, as they must, *see* Br. ¶ 24, but cannot meet it.

2. As the EFIH Debtors previously explained, the Court's prior decision in the First Lien proceeding and *Momentive* are directly contrary to the PIKs' position. *See* EFIH. Summ. J. Reply 4. Regarding the First Lien Indenture this Court previously held, "[b]ecause the Indenture does not specify that the Applicable Premium is owed after automatic acceleration, the Applicable Premium is not owed." Summary Judgment Decision ¶ 51. *Momentive* similarly held that "references to other rights or *'premiums, if any'* to be paid upon prepayment *are not specific enough*, however . . . ." *In re MPM Silicones, LLC*, No. 14-22503, 2014 WL 4436335, at *15 (Bankr. S.D.N.Y. Sept. 9, 2014), *aff'd*, 531 B.R. 321 (S.D.N.Y. 2015) (emphasis added). Affirming the bankruptcy court, the district court held that "premium, if any" in the acceleration

---

[3] Citations to "Br." refer to Partial Response of UMB Bank, N.A., to EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by Indenture Trustee For The EFIH Unsecured Notes (D.I. 5788).

[4] Citations to "Summary Judgment Decision" refer to this Court's Findings of Fact and Conclusions of Law Regarding Cross-Motions For Summary Judgment, No. 14-50363, D.I. 245 (Mar. 26, 2015).

provision "does not clearly and unambiguously call for the payment of the make-whole premium in the event of an acceleration of debt." *In re MPM Silicones, LLC*, 531 B.R. 321, 336 (S.D.N.Y. 2015).

3.  The PIKs cite three cases all of which weigh in favor the EFIH Debtors. *See* Br. ¶¶ 24, 26 (citing *In re United Merchants & Mfrs., Inc.*, 674 F.2d 134, 142-43 (2d Cir. 1982); *In re South Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011), *aff'd sub nom. U.S. Bank Nat. Ass'n v. S. Side House, LLC*, No. 11-4135, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012); *Nw. Mut. Life Ins. Co. v. Uniondale Realty Assocs.*, 816 N.Y.S.2d 831, 833-34 (N.Y. Sup. Ct. 2006)). As explained in the EFIH Debtors' reply brief in the Second Lien make-whole litigation, the language in *Northwestern* and *United Merchants* is far more specific than the language here. EFIH Summ. J. Reply 5-6. The contracts in both *Northwestern Mutual*[5] and *United Merchants*[6] clearly denote the specific premium owed upon repayment after default and acceleration and

---

[5] The contract in *Northwestern Mutual* stated:

> Borrower shall have the right, upon thirty (30) days advance written notice, beginning December 15, 2003 of paying this note in full with a *prepayment fee.* This fee represents consideration to Lender for *loss of yield and reinvestment costs.* The fee shall be the greater of *Yield Maintenance* or 2% of the outstanding principal balance of this note on the date of prepayment (emphasis supplied).
> \*\*\*
> *In the event of a prepayment* of this note following (i) the occurrence of an Event of Default . . . followed by the acceleration of the whole indebtedness evidenced by this note . . . *such prepayment will constitute an evasion of the prepayment terms* . . . and be deemed to be a voluntary prepayment . . . and such payment will, therefore, . . . **include the prepayment fee required under the prepayment in full privilege recited above** . . . .

*Nw. Mut.*, 816 N.Y.S.2d at 833-34 (bold emphasis added, other emphasis in original).

[6] The contract in *United Merchants* stated:

> [A]t the option of the holder of any Note, exercised by written notice to (UM&M), the principal of such Note shall forthwith become due and payable, together with the interest accrued thereon, and, to the extent permitted by law, ***an amount equal to the prepayment charge*** that would be payable if (UM&M) were pre-paying such Note at the time ***pursuant to P 8.2 hereof***.

*United Merchants*, 674 F.2d at 140 (emphasis added).

looks nothing like the general phrase "premium, if any." Also, decidedly unlike the Indenture here, the contracts in those cases expressly incorporate into the post-acceleration language the relevant prepayment provisions from elsewhere in the contracts. *South Side House* similarly supports the EFIH Debtors. There, the lending agreement similarly defined repayment after default and acceleration as a prepayment requiring payment of "a premium equal to the prepayment consideration or premium that would have been payable on the date of such tender had the debt not been so accelerated."[7] *In re South Side House*, 451 B.R. at 257. In each of these cases, the language is far clearer than the term "premium, if any."

4.  The PIKs ignore cases discussed in *Momentive* in which contract language properly provides for a make-whole premium after default and acceleration. EFIH Summ. J. Reply 6-7 (discussing *In re LaGuardia Assocs., L.P.*, No. 11-19334, 2012 WL 6043284, at *3 (Bankr. E.D. Pa. Dec. 5, 2012); *In re Madison 92nd St. Assocs. LLC*, 472 B.R. 189, 196 (Bankr. S.D.N.Y. 2012)). The PIKs also ignore the many cases cited by this Court in its March 26, 2015, Summary Judgment Decision where contract language expressly called for a prepayment premium when the obligations were repaid after default and acceleration. *See* Summary Judgment Decision ¶ 48 (citing cases); *see also* EFIH Summ. J. Reply 7-8 (discussing cases).

---

[7] The lending agreement in *South Side House* stated, in relevant part:

> Following an Event of Default and acceleration of the Debt, if Borrower or anyone on Borrower's behalf makes a tender of payment of the amount necessary to satisfy the Debt at any time prior to foreclosure sale (including, but not limited to, sale under power of sale under this Security Instrument), or during any redemption period after foreclosure, (i) ***the tender of payment shall constitute an evasion of Borrower's obligation to pay any prepayment consideration*** or premium due under the Note and such ***payment shall***, therefore, to the maximum extent permitted by law, ***include a premium equal to the prepayment consideration or premium that would have been payable on the date of such tender had the Debt not been so accelerated***, or (ii) if at the time of such tender a prepayment would have been prohibited under the Note had the Debt not been so accelerated, the tender of payment shall constitute an evasion of such prepayment prohibition and shall, therefore, to the maximum extent permitted by law, include an amount equal to [a specified formula] . . . .

> *South Side House*, 451 B.R. at 257 (emphasis added).

5.      The PIKs also repeat the Second Lien Trustee's mistaken argument that the broad, generic phrase "premium, if any" was used, instead of Applicable Premium, to avoid precluding the make-whole premiums that may be due under section 3.07(b) or 3.07(d).  Br. ¶¶ 27, 29.  But contrary to the PIKs' assertion, the term "premium, if any" does not "unambiguously obligate[] the EFIH Debtors to pay *any* of the call premiums that may apply."  Br. ¶ 29 (emphasis added).  An "unambiguous obligation" would resemble the language in many cases where courts have found a prepayment premium is due after default and acceleration.  *See* EFIH Summ. J. Reply 5-7.  For example, section 6.02 could have obligated EFIH unambiguously to pay a make-whole premium by explicitly incorporating section 3.07 or simply by stating that repayment after a bankruptcy-caused default and automatic acceleration was an Optional Redemption.  The Indenture, however, does neither of these things, nor does it include any of the other easily drafted choices that could have supplied the required specificity.  *See* EFIH Summ. J. Reply 8-9.

6.      Repeating the Second Lien Trustee, the PIKs argue that "premium" is sufficiently specific because it is an "inclusive term" encompassing the more precise language the Indenture could have used.  Br. ¶ 29.  And as with the Second Lien Trustee's argument, inclusive terms are not clear terms.  EFIH Summ. J. Reply 9-10.  The language must expressly and unambiguously provide for a make-whole premium and simply employing generic, non-specific terms (without more) does not meet this standard.  *Id.*

7.      The PIKs do not repeat, and appear to reject, the Second Lien Trustee's flawed assertion that "if any" implies that acceleration might be rescinded.  *See* EFIH Summ. J. Reply 10-12.  In a new argument, the PIKs assert that "[t]he *only reasonable reading* of this qualifier here is to allow for the possibility that the EFIH Debtors could file for bankruptcy . . . but not

repay the PIK Notes until after December 1, 2018, in which case no premium would be owed." Br. ¶ 31 (emphasis added).  This is wrong for two reasons.

8.      *First*, the qualifier "if any" cannot signify the passage of time because section 6.02 also obligates the payment of "Additional Interest, *if any*."  Additional Interest is owed only if EFIH does not file a registration statement with the Securities & Exchange Commission to allow the PIK Notes to be freely tradable within a certain time period.  *See* Exhibit A, Registration Rights Agreement at 3; *see id.* at Exhibit 4.2.  If any Additional Interest is owed at the time of a bankruptcy-caused default and automatic acceleration, the obligation to pay Additional Interest does not expire with the passage of time.

9.      *Second*, the PIKs erroneously argue that the "*only reasonable reading*" is their preferred reading.  But that makes no sense.  In plain English the term "if any" here means that a premium may not be due at all, creating further doubt that "premium" means the "Applicable Premium," in particular.  *See* EFIH Summ. J. Reply 10-11.  As the bankruptcy court in *AMR* explained, the word "if any" should be interpreted to mean that "payment of [a prepayment premium] is not automatic and there are some circumstances under which [a prepayment premium] will not be payable."  *In re AMR Corp.*, 485 B.R. 279, 303 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013), *cert. denied sub nom. U.S. Bank Trust Nat'l Ass'n v. AMR Corp.*, 134 S. Ct. 1888 (2014).  Still further, the PIKs do not grapple with *Momentive*'s persuasive explanation of what "if any" means.  *See* EFIH Summ. J. Reply 12.  As that court explained, "if any" denotes that a make-whole premium would be owed if an Optional Redemption were to occur under section 3.07.  *Id.* (quoting *MPM* 2014 WL 4436335, at *15).  This Court has already ruled that no Optional Redemption occurred when the First Lien Notes were repaid after a bankruptcy-caused default and automatic acceleration.  Summary Judgment

Decision ¶¶ 53-57, 81.  Here too, where the relevant language is materially identical, no Optional Redemption will occur when the PIK Notes are repaid, and no make-whole premium will be owed.  The PIKs "only reasonable reading" is therefore neither reasonable nor the only reading.

**II.     The "Classic Catch-All" Does Not Supply The Required Specificity To The Term "Premium, If Any."**

10.     Like the Second Lien Trustee, the PIKs also argue that the additional language "any other monetary obligations on the outstanding Notes" clarifies that "premium, if any" must refer to the make-whole premiums in section 3.07(c).  Br. ¶¶ 26-27, 34.  The PIKs offer no arguments not previously raised by the Second Lien Trustee, and the EFIH Debtors have already addressed these issues in their Reply filed in the Second Lien make-whole litigation.  EFIH Summ. J. Reply 8, 12-13.

11.     Like the Second Lien Trustee, the PIKs try to distinguish *Momentive* because the indenture there did not include the "any other monetary obligations" language.  Br. ¶ 34.  If as *Momentive* held the term "premium, if any" is not specific enough to provide for a make-whole premium, then looking to *other* language to clarify "premium, if any" demonstrates only that the language is neither express nor explicit.  *See* EFIH Summ. J. Reply 8.

12.     The PIKs also echo the Second Lien Trustee's unusual "classic catch-all" terminology and advance the same flawed argument.  *See* Br. ¶¶ 26-27.  According to the PIKs, who cite no authority, only one term within a string of related contractual terms can be a "catch-all" for unforeseen contingencies.  *See id.*  As a result, again according to the PIKs, either the term "premium, if any" is a catch-all or "other monetary obligations on the outstanding Notes" is a catch-all, but not both.  Br. ¶¶ 27, 34.

13.     As the EFIH Debtors explained in reply to the Second Lien Trustee, contract terms often overlap; in fact, contracts often use synonyms.  EFIH Summ. J. Reply 12-13.  There

is no reason why the drafters were precluded from using two (or three or more) provisions to address possible contingent amounts owed in bankruptcy. *Id.* If so, the PIKs argue, one of these "catch-all" provisions would be surplusage. *See* Br. ¶ 27. This argument confuses commonly occurring contract terms having overlapping meaning with the rule against interpreting contract terms to have *no* meaning. EFIH Summ. J. Reply 12-13. The rule against surplusage is well-established, but it is also well-established that an interpretation acknowledging a redundancy is far superior to the PIKs' proposed interpretation, which creates unintended or inappropriate meaning. *Casler v. Connecticut Mut. Life Ins. Co.*, 22 N.Y. 427, 432 (1860) ("[M]ere redundancy of words is not so unusual as to justify the court in giving an interpretation to the contract which its words do not import."); *see also* EFIH Summ. J. Reply 12-13 (citing cases). Because the PIKs' "only-one-catch-all" canon of interpretation misunderstands the rule against surplusage, it also fails to establish that a make-whole premium is owed.

**III.   The Indenture's Drafting History Also Clearly Demonstrates That No Applicable Premium Is Owed.**

14. The PIKs, like the Second Lien Trustee, purport to address the drafting history of the "premium, if any" language which they claim was "intentionally bargained for in order to preserve a holder's entitled to a call or make-whole premium in the event of bankruptcy." Br. ¶ 35. The PIKs argue first that the addition of "premium, if any" was "indisputably intended to produce a different outcome than under the First Lien Indenture." Br. ¶ 37. The PIKs next argue—from implication—that the only possible "different outcome" that could result from "premium, if any" is that a make-whole premium is owed if the Notes are repaid following a bankruptcy-caused automatic acceleration. Br. ¶ 38. This argument fails for two main reasons.

15. *First*, this argument begs the question and adds nothing to the textual arguments the PIKs previously raised. The PIKs first focus on the intentional inclusion of the term

"premium, if any." Br. ¶ 37. This is not controversial as the EFIH Debtors have never argued that "premium, if any" is merely a scrivener's error. But the PIKs imply that this intentional addition was "indisputably intended" to award them a make-whole premium because—again according to the PIKs—"premium, if any" can only have one meaning. Br. ¶ 38. The PIKs just repeat their previous arguments about the "classic catch all." *See* Br. ¶ 38 ("As discussed above . . . ."); *see id.* at ¶ 35. The PIKs therefore have *no* argument that the negotiating and drafting history of the term "premium, if any" advances their views.

16.     *Second*, had the PIKs fully depicted the extrinsic evidence, they would have been forced to concede that the EFIH Debtors in no way "indisputably intended" to provide for a make-whole premium in these circumstances. Quite to the contrary, the EFIH Debtors expressly stated otherwise. As explained now in two different submissions, the language of the PIK Indenture, like the Second Lien Indenture, is borrowed from a different debt issuance at TCEH. *See* EFIH Summ. J. Reply 14-16; EFIH Summ. J. Br. 23-26, No. 14-50363 (D.I. 176). And while negotiating that debt issuance, TCEH expressly rejected language that would have required paying the "Applicable Premium, if any" or "the Applicable Premium . . . in the event that the Notes are . . . accelerated as a result of an Event of Default." EFIH Summ. J. Reply 14; EFIH Summ. J. Br. 24-25, No. 14-50363 (D.I. 176).

17.     As deposition testimony confirms, the EFIH Debtors did assume that the term "premium, if any," which was requested by the negotiating counterparty (not the EFIH Debtors), would have *some* meaning. *See* Br. ¶ 36. But because the term "premium, if any" lacks the required specificity under New York law and because TCEH had expressly rejected the inclusion of the words "Applicable Premium, if any" in the negotiation of the TCEH 2L Indenture, the EFIH Debtors knew that this term could not mean the Applicable Premium, or any other

premium from section 3.07. *See* EFIH Summ. J. Reply 14-16 & nn. 10-11 (citing Hertz-Bunzl Decl., No. 14-50405 (Adv. D.I. 48), Ex. C, 11/20/2014 Moldovan Dep. Tr. 262:3-16[8]; Hertz-Bunzl Decl. No. 14-50405 (Adv. D.I. 48), Ex. D, 12/9/2014 Horton Dep. Tr. 334:3-22[9]). The PIKs do not cite or in any way address this drafting history and choose instead to depict a truncated version of these events. Accordingly, their argument regarding this history fails.

## Conclusion

18. For the foregoing reasons, the Court should enter an order granting the EFIH Debtors' Partial Objection To Proof Of Claim No. 6347 to the extent Proof of Claim No. 6347 seeks a make-whole premium of any kind.

---

[8] Mr. Moldovan testified:

Q. Okay. Did the company indicate to Oak Tree whether it believed this language would or would not make the applicable premium payable in the event of a bankruptcy filing?
A. This language?
Q. Yes. Did the company express a view to Oak Tree?
A. My recollection is that our view expressed to Oak Tree is that this did not include applicable premium.
Q. And you personally expressed that view to Oak Tree?
A. I was -- the conversation, in my recollection, was Mr. Horton and myself. I couldn't tell you which of us expressed that. It was a conversation four years ago.

*Id.* at 262:3-16.

[9] Mr. Horton testified:

Q. And you understand that in that document the debtors take the position that the inclusion of the language premium, if any, in this particular section, section 6.02, does not mean that the applicable premium is owed if the debtors refinance the second lien debt in bankruptcy, right?
A. That's correct.
Q. Okay. So the debtors were agreeing to this language, but they thought it had no legal effect, this additional language, right?
[Objection]
A. I don't believe that we added this language with the thought that it had no additional legal form to the document. What I believe that we thought was it has no bearing, no implication, no reference to applicable premium.

*Id.* at 334:3-22.

| | |
|---|---|
| Dated: September 11, 2015<br>Wilmington, Delaware | */s/ Jason M. Madron*<br>**RICHARDS, LAYTON & FINGER, P.A.**<br>Mark D. Collins (No. 2981)<br>Daniel J. DeFranceschi (No. 2732)<br>Jason M. Madron (No. 4431)<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 651-7700<br>Facsimile:  (302) 651-7701<br>Email:  collins@rlf.com<br>defranceschi@rlf.com<br>madron@rlf.com |

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:  edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:  james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*