**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                            :
     In re                                  :   Chapter 11
                                            :
ENERGY FUTURE HOLDINGS CORP.,               :   Case No. 14-10979 (CSS)
et al.,                                     :
                                            :   (Jointly Administered)
                                            :
            Debtors.                        :   Re: Docket Nos. 5244, 5246.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

**RESERVATION OF RIGHTS OF TEXAS TRANSMISSION INVESTMENT LLC
REGARDING DISCLOSURE STATEMENT FOR THE THIRD AMENDED
JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS
CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Texas Transmission Investment LLC ("**TTI**") respectfully submits this reservation of rights (the "**Reservation of Rights**") with respect to: (i) the Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 5246) (the "**Disclosure Statement**"); (ii) the proposed Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.* Pursuant to Chapter 11 of the Bankruptcy Code (Docket No. 5244) (the "**Plan**"); (iii) the Merger proposed in the Plan; (iv) any contested matter or adversary proceeding in which the value or amount of "E-Side" claims is determined; and (v) the Required Sale Notice dated as of September 4, 2015, attached as **Exhibit A** hereto (the "**Required Sale Notice**"), pursuant to which Energy Future Holdings Corp. ("**EFH**" and, together with its debtor affiliates, the "**Debtors**") seeks to compel TTI to sell its equity interests in a non-debtor entity, Oncor Electric Delivery Company LLC ("**Oncor**"), pursuant to the Investor Rights Agreement for Oncor (the

"**Investor Rights Agreement**").  In support of the Reservation of Rights, TTI respectfully states as follows:

## RESERVATION OF RIGHTS

1. The Required Sale Notice purports to require TTI – the Minority Member[1] of Oncor and a party in interest in these Chapter 11 Cases – to sell 100% of its equity interests in Oncor to Ovation Acquisition I, LLC ("**OV1**") on the premise that OV1 has made a qualifying offer (the "**Offer**") to purchase "IPO Units" and LLC Units that will result in a Change of Control as defined in Section 3.3 of the Investor Rights Agreement, thereby triggering certain "drag-along rights."

2. The Required Sale Notice and Offer suffer from numerous defects.  Indeed, the Debtors recognize in the Disclosure Statement that their ability to invoke the drag-along rights successfully is uncertain. Nevertheless, because the Required Sale Notice contemplates a purchase price for TTI's equity interest in Oncor calculated as a function of the aggregate amount of allowed claims against the "E-Side" Debtors, TTI files this Reservation of Rights out of an abundance of caution to avoid any argument that any E-Side claim settlement could reduce the implied value of TTI's equity in Oncor.

3. As a preliminary matter, the Plan is expressly *not* conditioned on consummation of the Minority Buy-Out (see Disclosure Statement at 95, 148, 179-80).  The defects in the Required Sale Notice and Offer therefore do not require attention from this Court in connection with approval of the Disclosure Statement, and can be litigated at an appropriate time in a court

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in, as applicable, the Disclosure Statement, the Required Sale Notice or the Investor Rights Agreement.

of competent jurisdiction. Accordingly, TTI does not object to approval of the Disclosure Statement. However, TTI respectfully submits this Reservation of Rights to: (i) alert the Court and other parties in interest that the Debtors cannot effectuate the Minority Buy-Out without TTI's consent; and (ii) ensure that its rights are fully reserved should litigation prove necessary.

4. In particular, TTI reserves all rights and defenses concerning whether the "Illustrative Oncor Minority Interest Purchase Price Analysis" appended to the Required Sale Notice appropriately calculates the purchase price in connection with any potential drag sale and, more generally, whether the Required Sale Notice and Offer properly invoke any drag-along rights.

5. The drag provisions were negotiated between sophisticated parties and incorporate numerous safeguards for TTI. Section 3.3 of the Investor Rights Agreement provides that Oncor's Minority Member (i.e., TTI) can only be "dragged" in a sale of Oncor LLC Units or IPO Units by the Initial Member (i.e., Oncor Electric Delivery Holdings Company LLC) and if numerous specified conditions are met. The Offer described in the Required Sale Notice does not satisfy the conditions needed to effectuate the drag. Among other defects, the Offer does not contemplate the purchase by OV1, the putative offeree, of: (i) EFH's indirectly-held Oncor LLC Units; nor (ii) "IPO Units," insofar as neither Oncor Electric Delivery Holdings Company LLC (the entity indirectly owned by EFH) nor TTI are being issued any IPO Units.[2] Moreover, the

---

[2] IPO Units are shares of common stock in an IPO Corporation, which is a corporation formed as a suitable vehicle for an initial public offering. (See Investor Rights Agreement Ex. A.) An IPO Corporation may be created by undertaking an IPO Conversion – a series of steps that would, among other things, "ensure that each Member [of Oncor] receives shares of common stock (or other equity securities) or the right to receive shares of common stock (or other equity securities), and other rights in connection with such IPO Conversion substantially equivalent to, and in exchange for, its economic interest, governance, priority other rights and privileges as such Member had with respect to its [Oncor] LLC Units." (Id. § 3.7(a).)

Required Sale Notice implies that OV1 may purchase a combination of IPO Units from one party and Oncor LLC Units from another. TTI does not accept that an offer structured in this manner would trigger any drag-along rights. To the contrary, the Investor Rights Agreement contemplates that the putative purchaser would offer to purchase *either* IPO Units *or* LLC Units "as the case may be" from both parties, depending on whether an IPO Conversion has or has not occurred. (Investor Rights Agreement § 3.3(a).) In other words, the drag provisions require that both parties sell the same security. TTI reserves all rights and defenses concerning whether the Required Sale Notice and Offer properly invoke any drag-along rights.

6. Further, the Required Sale Notice contemplates a purchase price proportionate to the aggregate amount of allowed claims against the "E-Side" Debtors. Under the valuation mechanism employed by EFH, as the total allowed amount of E-Side claims increases, so too does the value ascribed to Oncor's equity interests. The Required Sale Notice proposes a purchase price equal to Oncor's total equity value, calculated in this manner, multiplied by TTI's current percentage equity interest in Oncor. TTI respectfully reserves its right to dispute whether the purchase price in a drag sale – if, indeed, the Offer described in the Required Sale Notice could trigger a drag sale – may permissibly be calculated in this manner.

7. While the appropriateness of valuing TTI's interest in Oncor in the manner set forth in the preceding paragraph is an issue for another day (and one that may never arise given the defects in the Required Sale Notice and Offer), to the extent that methodology is employed, TTI files this Reservation of Rights to avoid any argument that consensual E-Side claims settlements could reduce the implied value of Oncor's equity, to TTI's detriment. TTI expressly reserves the right to litigate the actual amount of debt-relief consideration (whether determined by settlement, contested matter, adversary proceeding or otherwise) included in any purchase

price analysis, should one become necessary, as well as whether other forms of consideration provided to EFH and its owners should be included in any such purchase price analysis. Notably, the Debtors' incentives in this context are diametrically opposed to TTI's interests: the Debtors and the Plan Sponsors will seek to reduce the allowed amount of E-Side claims, thereby reducing the "purchase price" due to TTI. The anomalous implication of this construct is that the "seller's" aim is to achieve the *lowest* purchase price. In contrast, the Investor Rights Agreement's drag-along provisions are predicated on the assumption that, in a drag scenario, the minority and majority members' interests are aligned: both desire the highest possible purchase price.[3] This dynamic accentuates TTI's belief that the Offer described in the Required Sale Notice is not a bona fide offer as described in the Investor Rights Agreement, and TTI reserves its right to, at minimum, challenge whether a consensual, non-judicial claim settlement may result in a reduction in the purchase price paid to TTI in connection with any drag sale.

8. In sum, TTI reserves all rights and defenses in connection with the foregoing matters including, without limitation, its rights to: (i) object to the Plan; (ii) defend any Enforcement Action (should one be commenced) on any available grounds; and (iii) institute any proceeding or take any action, consistent with the Bankruptcy Code and other applicable law, to protect its rights in connection with the Required Sale Notice, the Offer, and proposed Minority Buy-Out.

---

[3] This assumption is reflected in, among other provisions, Section 3.3(d)(i) of the Investor Rights Agreement, which provides that "each of the Members shall receive the same type and amount of consideration," except in certain limited circumstances. (Id. § 3.3(d)(i).)

DATED:   Wilmington, Delaware
         September 14, 2015

                            SKADDEN, ARPS, SLATE,
                              MEAGHER & FLOM LLP

By:   */s/ Jason M. Liberi*
      Jason M. Liberi (I.D. No. 4425)
      One Rodney Square
      P.O. Box 636
      Wilmington, Delaware 19899-0636
      Telephone: (302) 651-3000
      Fax: (302) 651-3001

      - and -

      George N. Panagakis (*pro hac vice pending*)
      Carl T. Tullson (*pro hac vice pending*)
      155 North Wacker Drive
      Chicago, Illinois 60606
      Telephone: (312) 407-0700
      Fax: (312) 407-0411

      - and -

      George A. Zimmerman (*pro hac vice pending*)
      Jason C. Vigna (*pro hac vice pending*)
      Four Times Square
      New York, New York 10036
      Telephone: (212) 735-3000
      Fax: (202) 735-2000

      *Attorneys for Texas Transmission Investment LLC*