EXHIBIT B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 14-10979 (CSS) <br><br> Jointly Administered |

**NOTICE OF DEPOSITION OF THE DEBTORS PURSUANT TO**
**RULE 30(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

TO:  Energy Future Holdings Corporation and the above-captioned debtors (collectively, the "Debtors")
c/o Richards, Layton & Finger
920 North King Street
Wilmington, DE 19801
Attn: Mark D. Collins

Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104
Attn: Mark E. McKane

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attn: Andrew R. McGaan, P.C.

**PLEASE TAKE NOTICE THAT** pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this pending contested matter pursuant to Rules 7026, 7030 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Official Committee of Unsecured Creditors of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company, LLC, EFIH Finance Inc., and

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such

EECI, Inc. (the "EFH Committee"), by its undersigned counsel, will take the deposition upon oral examination of a designee or designees of the Debtors in accordance with the *Amended Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization* [D.I. 5771], and in connection with the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5244], as it may be amended and the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249].

**PLEASE TAKE FURTHER NOTICE THAT** the deposition will take place on October 2, 2015, at 9:30 a.m. (Eastern Time) at the offices of Sullivan & Cromwell LLP, 125 Broad Street, New York, New York 10004 (or such other time and place as may be agreed by the parties). The deposition will take place before a court reporter and will be recorded by stenographic means, may be videotaped, and shall continue from day to day until it has been completed. Pursuant to Bankruptcy Rules 7030 and 9014 and Federal Rule 30(b)(6), the Debtors must designate one or more persons to testify on behalf of themselves with regard to all matters known or reasonably available to that particular Debtor on the matters set forth on Schedule A attached hereto. The EFH Committee requests that the Debtors provide, as soon as reasonably possible, a written designation of the name(s) and position(s) of the persons who will testify on behalf of the Debtors.

---

information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

2

| | |
|---|---|
| Dated: Wilmington, Delaware<br>September 4, 2015 | **MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**<br><br>Natalie D. Ramsey (DE Bar No. 5378)<br>Davis Lee Wright (DE Bar No. 4324)<br>Mark A. Fink (DE Bar No. 3946)<br>1105 North Market Street, 15th Floor<br>Wilmington, DE 19801<br>Telephone:  (302) 504-7800<br>Facsimile:   (302) 504-7820<br>E-mail:        nramsey@mmwr.com<br>                    dwright@mmwr.com<br>                    mfink@mmwr.com<br><br>– and –<br><br>**SULLIVAN & CROMWELL LLP**<br><br> /s/ Brian D. Glueckstein<br>Steven L. Holley<br>Robert J. Giuffra, Jr.<br>Andrew G. Dietderich<br>Brian D. Glueckstein<br>125 Broad Street<br>New York, NY 10004<br>Telephone:     (212) 558-4000<br>Facsimile:      (212) 558-3588<br>E-mail:           holleys@sullcrom.com<br>                       giuffrar@sullcrom.com<br>                       dietdericha@sullcrom.com<br>                       gluecksteinb@sullcrom.com<br><br>*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance Inc.; and EECI, Inc.* |

## **SCHEDULE A**

**A.    INSTRUCTIONS**

1. Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rules 7030 and 9014 of the Federal Rules of Bankruptcy Procedure, you are directed to designate one or more of your officers, directors, managing agents, or other persons who consent to testify on your behalf and who have knowledge of and are adequately prepared to testify concerning the topics enumerated below.

2. The use of the singular form of any word shall include the plural form, and the plural form shall include the singular form

3. The use of the present tense of any word includes the past tense, the use of the past tense of any word shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

4. "Any" or "each" should be understood to include and encompass "all;" "or" should be understood to include and encompass "and;" and "and" should be understood to include and encompass "or."

**B.    DEFINITIONS**

1. "Affiliate" of any specified Person shall mean any other Person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the Person specified.

2. "AMT Credit Claim" shall mean TCEH's alleged Claim against EFH for the purported elimination of certain alternative minimum tax credits and other adjustments for taxable year 2006.

3. "Bankruptcy Code" shall mean Title 11 of the United States Code, and all provisions thereof.

4

4.    "Bidding Procedures" means the procedures contemplated in the Bidding Procedures Order.

5.    "Bidding Procedures Order" shall mean the *Order (a) Approving Revised Bidding Procedures, (b) Scheduling an Auction and Related Deadlines and Hearings, and (c) Approving the Form and Manner of Notice Thereof* [D.I. 3295].

6.    "Chapter 11 Cases" shall mean the Chapter 11 cases, commenced by the Debtors in the United States Bankruptcy Court for the District of Delaware on April 29, 2014, and jointly administered as case number 14-10979.

7.    "Claim" shall mean any claim against any Debtor as defined in section 101(5) of the Bankruptcy Code.

8.    "Communication" shall mean every manner or means of disclosure, transfer, or exchange of information, including, but not limited to, any of the following:  (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

9.    The terms "concerning," "referencing," "in connection with," "relate to," "related to," "relating to," "refer to," "referred to," and "referring to" shall be construed to mean and include all documents that in any manner or form are relevant in any way to or bear upon the subject matter in question, including, without limitation, all documents that contain, record, reflect, evidence, summarize, evaluate, comment upon, transmit, support, pertain to, show, consider, memorialize, study, analyze or discuss that subject matter, or that in any manner state

the background of, or were the basis or bases for, or that record, evaluate, comment upon, or were referred to, relied upon, utilized, generated, transmitted, or received in arriving at any conclusion, opinion, estimate, calculation, position, decision, belief, assertion or allegation, or undermine, contradict, or conflict with any conclusion, opinion, calculation, estimate, position, belief, assertion, or allegation, concerning the subject matters in question.

10. "Debtors" shall mean, collectively, EFH Corp. and its affiliated entities, as debtors-in-possession, as applicable, which filed voluntary Chapter 11 petitions under the Bankruptcy Code commencing these Chapter 11 Cases, and any of their direct or indirect subsidiaries, Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives, and other persons acting on its behalf, including, but not limited to, K&E, Sidley, Evercore, Filsinger, and Alvarez & Marsal North America, LLC.

11. "Disclosure Statement" shall mean the *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5246], as it may be amended.

12. "Disinterested Directors" shall mean, collectively, the EFIH Independent Manager, the EFH Disinterested Directors, and the TCEH Disinterested Manager.

13. "Document" or "Documents" shall have the meaning prescribed by Rule 7034 of the Federal Rules of Bankruptcy Procedure, including, without limitation, any tangible thing upon which any expression, Communication or representation has been recorded by any means, and includes, but is not limited to, all electronically stored information, Communications, sworn statements, deposition transcripts, affidavits, recordings, photographs, computer data, electronic mail, handwritten notations, correspondence, memoranda, notes, financial calculations,

6

calendars, appointment books, telephone call records, and all other writings and recordings of every kind that are in your actual or constructive possession, custody, or control.

14. "EFH" or "EFH Corp." shall mean Energy Future Holdings Corporation, its predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

15. "EFH Disinterested Directors" shall refer to Donald L. Evans and Billie I. Williamson, and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on their behalf, including, but not limited to, Proskauer Rose LLP and Solic Capital, which were retained under the supervision of Mr. Evans and Ms. Williamson to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

16. "EFH Schedules" shall mean EFH's *Schedules of Assets and Liabilities* [D.I. 1237], as amended.

17. "EFIH" shall mean Energy Future Intermediate Holding Company LLC, its predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

18. "EFIH Independent Manager" shall refer to Charles H. Cremens and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on his behalf, including, but not limited to, Cravath, Swaine & Moore LLP and Goldin Associates, LLC, which were retained under the supervision of

Mr. Cremens to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

19. "Evercore" shall mean Evercore Group L.L.C. and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

20. "Filsinger" shall mean Filsinger Energy Partners and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

21. "Including" shall mean including, without limitation, or in any way qualifying, limiting or restricting the foregoing.

22. "Insiders" shall mean insiders as defined in Section 101(31) of the Bankruptcy Code.

23. "IRS" shall mean the Internal Revenue Service and each of its employees and agents.

24. "K&E" shall mean Kirkland & Ellis LLP and/or all of its current and former partners, representatives, employees, agents, consultants, accountants, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

25. "NOL" shall mean "net operating loss" as used in the Internal Revenue Code.

26. "NOL Claim" shall mean TCEH's alleged Claim against EFH for the purported use of NOLs for taxable years 2006 through 2012.

27. "Oncor" shall mean Oncor Electric Holdings Company LLC and Oncor Electric Delivery Company LLC, which are owned directly and indirectly, respectively, by EFIH, their predecessor entities, all of their current and former direct or indirect subsidiaries, and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

28. "Oncor Sale Process" shall mean the potential direct or indirect disposition of EFH's indirect interest in Oncor Electric Delivery Company LLC or its properties or business, whether by sale, merger, plan of reorganization or any other means in accordance with the Bidding Procedures Order.

29. "Person" or "persons" shall mean all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

30. "Petition Date" shall mean April 29, 2014.

31. "Plan" shall mean the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5244], as it may be amended.

32. "Prepetition Intercompany Claims" shall mean any Claims, causes of action, or disputes among EFH, EFIH, and TCEH arising before the Petition Date, including avoidance actions under sections 544, 547, and 548 of the Bankruptcy Code, and including, but not limited to, the Claims described on pages 31-92 of the Settlement Motion and section V.H.3(b) of the Disclosure Statement.

9

33.     "Protocol for Certain Case Matters" shall mean the *Stipulation and Agreed Order Regarding a Protocol for Certain Case Matters* [D.I. 2051], as amended.

34.     "REIT Reorganization" has the meaning ascribed to it in the Plan.

35.     "Restructuring" shall broadly mean any actual or potential modification considered, contemplated, proposed, attempted and/or made to the debt, operations, ownership, or structure of any Debtor.

36.     "Settlement Agreement" shall mean that settlement agreement dated August 9, 2015, attached as Exhibit 1 to Exhibit A of the Settlement Motion.

37.     "Settlement Motion" shall mean the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249].

38.     "Sidley" shall mean Sidley Austin LLP and/or all of its current and former partners, representatives, employees, agents, consultants, accountants, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

39.     "Sponsors" shall mean Kohlberg Kravis Roberts & Co. LP, TPG Global, LLC, and/or GS Capital Partners and/or all of their current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

40.     "TCEH" shall mean Texas Competitive Electric Holdings Company LLC, its predecessor entities, all of its current and former direct or indirect subsidiaries, and all of its or

SC1:3890887.2A

their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

41.    "TCEH Disinterested Manager" shall refer to Hugh Sawyer and any consultants, accountants, attorneys, financial advisors, and any other person currently or formerly acting or purporting to act on his behalf, including, but not limited to, Munger, Tolles & Olson LLP and Greenhill & Co., Inc., which were retained under the supervision of Mr. Sawyer to render professional services with respect to Independent Matters, as that term is used in the Protocol for Certain Case Matters.

42.    "TCEH Schedules" shall mean TCEH's *Schedules of Assets and Liabilities* [D.I. 1294], as amended.

43.    "You" or "your" shall refer to the Debtors and all of their current and former affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on the Person's behalf for any purpose whatsoever.

**C.    RULE 30(b)(6) DEPOSITION TOPICS**

1.    The terms and contents of the Plan, and drafts thereof.

2.    The negotiation and approval of the Plan by each of the Debtors.

3.    Documents on which each of the Debtors intend to rely in connection with the confirmation of the Plan.

4.    The terms and contents of the Settlement Agreement, and drafts thereof.

5.    The negotiation and approval of the Settlement Agreement by each of the Debtors.

6. The consideration received by each Debtor in return for the consideration provided in the Settlement Agreement.

7. Documents on which each of the Debtors intend to rely in connection with the approval of the Settlement Agreement.

8. The conditioning of Plan confirmation on approval of the Settlement Agreement.

9. The Oncor Sale Process, including but not limited to any analyses of any Bid Information (as defined in the Bidding Procedures annexed to the Bidding Procedures Order).

10. Your discussions with and submissions to the IRS on any tax matters described in the Plan.

11. Your discussions with and submissions to any regulator or any other Person relating to any regulatory approvals required to consummate the REIT Reorganization.

12. Each Debtor's analyses or considerations concerning or relating to any potential plan of reorganization or Restructuring of any Debtor, including but not limited to the Plan.

13. Each Debtor's analyses or assessments regarding any conditions precedent to any plan involving a REIT Reorganization.

14. Each Debtor's analyses or assessments concerning risks associated with a failure to satisfy the conditions to consummate the REIT Reorganization contemplated in the Plan.

15. Each Debtor's negotiations or discussions with the Sponsors relating to the Plan and/or the Settlement Agreement, including, but not limited to, any proposed or actual terms of the Settlement Agreement affecting any rights, liabilities, or releases of the Sponsors.

16. Your consideration or identification of any conflicts of interest or "Independent Matters," as that term is used in the Protocol for Certain Case Matters, including, but not limited

to, any review, investigation, study, analysis, assessment, or evaluation undertaken by You to determine the existence of any actual or potential conflicts of interest or "Independent Matters."

17. Each Debtor's assessment or evaluations of any Claims against any of the "Released Parties," as provided in the Settlement Agreement and the Plan, including, but not limited to, whether and to what extent any party or entity should be considered a "Released Party."

18. Each Debtor's involvement or discussions with any Insiders concerning or relating to the releases contained in Section 2 of the Settlement Agreement and Article VIII of the Plan.

19. Each Debtor's criteria, guidelines, decision-making processes, policies, and practices relating to your approval of the Settlement Agreement and/or the Plan.

20. Each Debtor's review, investigation, study, analysis, assessment, or evaluation of the Prepetition Intercompany Claims and/or the Settlement Agreement, including, but not limited to, any discussions or negotiations with the TCEH Disinterested Manager, EFIH Independent Manager, and any of the EFH Disinterested Directors concerning the Prepetition Intercompany Claims and/or the Settlement Agreement.

21. Each Debtor's assessment or evaluations relating to the cost of litigating the Prepetition Intercompany Claims, including, but not limited to, any budget or assessment of actual or potential litigation costs.

22. Your analyses or considerations relating to the inclusion of the NOL Claim and/or the AMT Credit Claim on the TCEH Schedules and the EFH Schedules.

23. Each Debtor's assessment or considerations relating to the provision in the Settlement Agreement allowing any of the Disinterested Directors to terminate the Settlement

Agreement "if any of them determines, based on the advice of counsel, that termination of the Disinterested Director Settlement would be consistent with the exercise of their fiduciary duties," as described in the Disclosure Statement.

24. Your analysis or considerations relating to the "classification" and "treatment of Claims and Interests," as described in the Plan.

25. The treatment of a Legacy General Unsecured Claim Against the EFH Debtors (as that term is used in the Plan) and the assets available to satisfy such claims.