IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) | (Jointly Administered) |
|  | ) | **Re: Docket Nos. 4144, 5248** |

**REPLY OF THE TCEH COMMITTEE IN SUPPORT OF
(I) THE MOTION OF ENERGY FURTHER HOLDINGS CORP., ET AL., TO
AUTHORIZE THE DEBTORS TO ENTER INTO AND PERFORM UNDER
THE PLAN SUPPORT AGREEMENT AND (II) THE MOTION OF ENERGY FUTURE
HOLDINGS CORP. ET AL., FOR ENTRY OF AN ORDER (A) APPROVING THE
DISCLOSURE STATEMENT, (B) ESTABLISHING THE VOTING RECORD DATE,
VOTING DEADLINE, AND OTHER DATES, (C) APPROVING PROCEDURES FOR
SOLICITING, RECEIVING, AND TABULATING VOTES ON THE PLAN AND FOR
FILING OBJECTIONS TO THE PLAN, AND (D) APPROVING THE MANNER AND
<u>FORMS OF NOTICE AND OTHER RELATED DOCUMENTS</u>**

The Official Committee of Unsecured Creditors (the "**TCEH Committee**") of Energy Future Competitive Holdings Company LLC ("**EFCH**"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC and their direct and indirect subsidiaries, and EFH Corporate Services Company, by and through its undersigned counsel, hereby files this reply (the "**Reply**") in support of the *Motion of Energy Future Holdings Corp., et al., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [Docket No. 5248] (the "**PSA Motion**") and the *Motion Of Energy Future Holdings Corp. et al., For Entry Of An Order (A) Approving The Disclosure Statement, (B) Establishing The Voting Record Date, Voting Deadline, And Other Dates, (C) Approving Procedures For Soliciting, Receiving, And Tabulating Votes On The Plan And For Filing Objections To The Plan, And (D) Approving The*

ny-1202970

*Manner And Forms Of Notice And Other Related Documents* [Docket No. 4144] (the "**DS Motion**").[1]  In support of the Reply, the TCEH Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. The TCEH Committee is a party to the PSA and supports approval of the PSA Motion. The TCEH Committee joins in the Debtors' reply in support of the PSA Motion and will not repeat the arguments set forth therein. The TCEH Committee believes that it is appropriate, however, to separately explain why the TCEH Committee determined that entry into the PSA (defined below) is in the best interests of its constituents, and to respond to the objections to the PSA Motion to the extent they specifically concern the TCEH Committee. As set forth in further detail below, the TCEH Committee believes that the Plan contemplated under the PSA is in the best interest of unsecured creditors of the TCEH Debtors and EFH Corporate Services, and represents a monumental improvement over what those creditors would have received under the Debtors' pre-petition plan support agreement.

2. In accordance with the PSA, the TCEH Committee also supports approval of the DS Motion. The TCEH Committee has been working with the Debtors to amend the Disclosure Statement (defined below) to address the various objections to the Disclosure Statement. The TCEH Committee is hopeful that most, if not all, of the Disclosure Statement objections will be consensually resolved. To the extent any such objections remain unresolved in advance of the hearing on the DS Motion, the TCEH Committee joins in the Debtors' reply in support of the DS Motion.

---

[1] Capitalized terms not otherwise defined herein shall the meaning given to such terms in the PSA Motion or the DS Motion, as applicable.

**BACKGROUND**

3.      On April 14, 2015, the Debtors filed the DS Motion, seeking, among other things, approval of the *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et. al., Pursuant to Chapter 11 of the Bankruptcy Code* (as amended, the "**Disclosure Statement**").

4.      On August 10, 2015, the Debtors filed the PSA Motion, seeking authority to enter into and perform under the Plan Support Agreement attached thereto as Exhibit 1 to Exhibit A (as amended, the "**PSA**").

5.      Also on August 20, 2015, the Debtors filed an amended Disclosure Statement with respect to the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 5246].

6.      Four parties filed objections (collectively, the "**PSA Objections**") to the PSA Motion: (a) the Office of the United States Trustee (the "**UST**") [Docket No. 5858]; (b) the EFH Committee [Docket No. 5700]; (c) UMB Bank as indenture trustee for the EFIH Senior Toggle Notes ("**UMB**") [Docket No. 5705]; and (d) The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A., in its respective capacities as trustee for the PCRBs and the EFCH 2037 Notes (collectively, "**BNY**") [Docket No. 5696].

7.      Eleven parties filed objections (collectively, the "**DS Objections**" and, together with the PSA Objections, the "**Objections**") to the DS Motion that have not been withdrawn: (a) the PBGC [Docket No. 5347]; (b) BNY [Docket No. 5352]; (c) Delaware Trust Company as indenture trustee for the EFIH First Lien Notes [Docket No. 5354] and as successor trustee for the TCEH 11.5% Senior Secured Notes [Docket No. 5360]; (d) the EFH Indenture Trustee [Docket No. 5355]; (e) the EFH Committee [Docket No. 5356]; (f) UMB [Docket No. 5358]; (g) two individual members of the EFH Committee [Docket No. 5361]; (h) the EFIH Second

Lien Notes Trustee [Docket No. 5362]; (i) The United States of America, on behalf of the U.S. Environmental Protection Agency [Docket No. 5357]; and (j) the UST [Docket No. 5872].

8.      On September 9, 2015, the Debtors filed an amended proposed order granting the PSA Motion [Docket No. 5895].

## **REPLY**

### I.     The PSA Is in the Best Interests of Unsecured Creditors of the TCEH Debtors

9.      As the Court is well-aware, these chapter 11 cases are tremendously complex due to a number of factors, including the Debtors' complicated organizational and capital structures, which have given rise to numerous potential intercompany and intercreditor claims and disputes. The PSA represents a significant step forward in these chapter 11 cases because it achieves nearly complete consensus among all of the T-side creditors, which was obtained only after mediation and months of hard-fought, and often precarious, negotiations. The importance of this consensus in facilitating the Debtors' expeditious exit from bankruptcy cannot be understated, and forms the foundation of a plan that, in the TCEH Committee's judgment, represents the best opportunity to maximize recoveries for its constituents.

10.     Critically, the peace that has been brokered under the PSA will survive even if the Plan contemplated under the PSA ultimately is not consummated. Specifically, the PSA Parties have agreed that they will endeavor to consummate a plan that contains terms they all support and that will pay in full the claims of E-side creditors. In the event those best efforts prove unsuccessful, however, the complex T-side intercreditor issues that warranted the appointment of a mediator by this Court will remain settled, including a resolution of the claims asserted in the TCEH Committee's standing motion [Docket No. 3593] and issues regarding allocation of value on account of claims held by the TCEH Debtors against the E-side. This arrangement will

4

confer a lasting benefit on the Debtors, their estates, and the T-side creditors because the PSA Parties will not be forced to return to square one years into these chapter 11 cases due to an inability to obtain the requisite governmental approvals necessary to accomplish the proposed restructuring transactions.

11. A number of the PSA Objections focus on what happens if the Plan fails. For example, UMB argues that the PSA "is designed to make the Plan a *fait accompli* notwithstanding the substantial costs it will impose upon the E-Side Unsecured Creditors should it fail." (UMB PSA Obj. at ¶ 15.) This argument is simply misplaced. If the Plan fails, it will impose substantial costs on <u>all</u> creditors. If approved by the Court, the PSA will mitigate the risk of failure by ensuring that the T-side consensus will remain unbroken even if the Plan is not consummated, so that parties do not lose all of the progress that has been made to date and can quickly consummate an alternative plan.

12. Significantly, what the T-side creditors have agreed to settle for under an Alternative Restructuring is far less than they stand to receive if the Plan is successful and what they likely could have achieved under other scenarios. Before entry into the PSA, the TCEH Committee was prepared to contest the allowance of a $700 million claim by TCEH against EFH as being woefully inadequate and to prosecute significant claims against the TCEH First Lien Creditors. The settlement of those claims is acceptable to the TCEH Committee <u>only</u> as a "plan B" in the context of the global settlements embodied in PSA, the Plan, and the Settlement Agreement. It is, in part, the inferiority of the Alternative Restructuring for T-side creditors that provided the TCEH Committee with sufficient comfort that the Investor Parties—the majority of whom are also unsecured creditors of TCEH—will remain properly incentivized to pursue the proposed restructuring transactions, and will not withdraw their commitments on a whim, as the

5

EFH Committee suggests. (EFH Comm. PSA Obj. at ¶ 11.) Although the risk that the Plan will fail cannot be eliminated entirely given the various regulatory approvals that must be obtained, the fact that T-side creditors have already spent months in developing the Plan, have agreed to commit billions of dollars to it, and have agreed today to lock themselves into significantly lower recoveries if the Plan does fail, speaks volumes about their sincere belief that the Plan will not fail (and if it does, it will not be for lack of trying on their part).

13. For these reasons, the TCEH Committee approved entry into the PSA, and the TCEH Committee continues to support the PSA and the Plan.

### II. The TCEH Committee's Limited Fiduciary Out Under the PSA Is Appropriate Under the Circumstances

14. The UST contends that "the PSA lacks an effective or 'robust' fiduciary-out for the TCEH Official Committee," and highlights the differences between the fiduciary out provision for the Debtors and the one for the TCEH Committee in support of this position. (UST PSA Obj. ¶ 26.) This argument overlooks the very different roles and positions of the Debtors and the TCEH Committee in these chapter 11 cases.

15. As an initial matter, the entire PSA, including the fiduciary out provision, was carefully negotiated by the TCEH Committee in its capacity as a fiduciary only for unsecured creditors of the TCEH Debtors and EFH Corporate Services. A substantial majority of the unsecured creditors of the TCEH Debtors are themselves a party to the PSA. In contrast, the Debtors are fiduciaries for all constituents and currently have the exclusive ability to propose a plan of reorganization. As a result, they require significantly more flexibility in dealing with creditors of non-TCEH Debtors, who are not a party to the PSA.

16. Moreover, the PSA resolves, among other things, litigation that the TCEH Committee sought standing to bring against the TCEH First Lien Creditors. *See* PSA Motion at

6

ny-1202970

¶¶ 34-35. In negotiating the PSA, the TCEH First Lien Creditors rightly pointed out that the TCEH Committee's potential claims against them would never be truly released—even after providing the other consideration under the PSA—if the TCEH Committee could simply back out of that settlement in reliance on its fiduciary out.  Thus, without an appropriate limitation on the TCEH Committee's fiduciary out, the TCEH First Lien Creditors would not have consented to the PSA.  As set forth above, the TCEH Committee believes that the Plan contemplated under the PSA poses the best chance of maximizing recoveries to all of its constituents, taken as a whole, and that the benefits of the lasting peace reached on the T-side under the PSA and the certainty provided by an Alternative Restructuring far outweigh any incremental recoveries that might be recognized by its constituents under a speculative alternative plan that—more than 15 months into these chapter 11 cases—has yet to materialize.  The TCEH Committee's fiduciary out is narrowly tailored to ensure that the TCEH Committee can take such actions as are necessary to ensure that its constituents realize the full benefit of the bargain embedded in the PSA, which the TCEH Committee has determined is in the best interests of its constituents to the exclusion of other potential restructuring options.

17.     Significantly, the TCEH Committee's support of the Plan does not bind individual unsecured creditors of TCEH to vote for the Plan, nor does it preclude individual unsecured creditors of TCEH from filing objections to the Plan or the PSA to the extent such creditors disagree with the TCEH Committee's conclusion that the PSA and Plan should be approved (and, indeed, BNY, a member of the TCEH Committee, filed one of the PSA Objections). Accordingly, the limited fiduciary-out provision in favor of the TCEH Committee under the PSA is appropriate under the circumstances and sufficient to protect the interests of unsecured creditors of the TCEH Debtors.

### III. The DS Motion Should Be Approved

18. Since the DS Objections were filed, the TCEH Committee has been working with the Debtors to revise the Disclosure Statement to address each of those objections in the hope that the DS Objections will be consensually resolved in advance of the hearing. The TCEH Committee is also preparing a letter in support of the Plan, which will be attached as an exhibit to the Disclosure Statement and will set forth in a concise manner the basis for the TCEH Committee's support of the Plan, the proposed treatment of the TCEH Committee's constituents under the Plan, and a chart showing the illustrative values of the consideration that could flow to those creditors at various potential valuations. The TCEH Committee intends to file a draft of that letter by the DS Motion reply deadline.

19. The TCEH Committee joins in the Debtors' reply in support of the DS Motion and submits that, in light of the revisions and supplements to the Disclosure Statement, the DS Objections should be overruled and the DS Motion should be granted.

### CONCLUSION

20. Based on the foregoing, the TCEH Committee respectfully requests that the Court overrule the Objections and grant the PSA Motion and the DS Motion.

Dated: Wilmington, Delaware
      September 14, 2015

**MORRISON & FOERSTER LLP**
James M. Peck
Brett H. Miller
Lorenzo Marinuzzi
Todd M. Goren
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
E-mail: jpeck@mofo.com
         brettmiller@mofo.com
         lmarinuzzi@mofo.com
         tgoren@mofo.com

-and-

*/s/ Christopher A. Ward*
**POLSINELLI PC**
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
E-mail: cward@polsinelli.com
         jedelson@polsinelli.com
         skatona@polsinelli.com

*Attorneys for the Official Committee
of TCEH Unsecured Creditors*

ny-1202970