Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3   In re:                          :

                                    :   Chapter 11

4   ENERGY FUTURE HOLDINGS          :

    CORP., et al.,                  :   Case No. 14-10979(CSS)

5                                   :

            debtors.                :   (Joint Administration

6   _____:   Requested)

7

8

9                                   United States Bankruptcy Court

10                                  824 North Market Street

11                                  Wilmington, Delaware

12

13                                  September 11, 2015

14                                  1:02 PM - 1:49 PM

15  B E F O R E :

16  HON CHRISTOPHER S. SONTCHI

17  U.S. BANKRUPTCY JUDGE

18

19

20

21

22

23

24

25  ECR OPERATOR:  LESLIE MURIN

1   HEARING re EFH Committee Letter regarding a discovery

2   dispute with the plan sponsors and the T-side creditors who

3   are signatories to the Settlement Agreement in connection

4   with the REIT Plan and Settlement Agreement.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    SULLIVAN & CROMWELL LLP

4         Attorney for Official Committee of Unsecured Creditors

5

6    BY:  BRIAN GLUECKSTEIN (TELEPHONICALLY)

7

8    WHITE & CASE

9         Attorney for The Ad Hoc Group of TCEH Unsecured Note

10        Holders

11

12   BY:  J. CHRISTOPHER SHORE (TELEPHONICALLY)

13

14   KIRKLAND & ELLIS LLP

15        Attorney for Debtor

16

17   BY:  MARK E. MCKANE (TELEPHONICALLY)

18

19   PAUL WEISS RIFKIND WHARTON & GARRISON

20        Attorney for Ad Hoc Committee of TCEH First Lien

21        Creditors

22

23   BY:  ANDREW EHRLICH (TELEPHONICALLY)

24

25

1  BROWN RUDNICK LLP

2       Attorney for Wilmington Savings Fund Society, FSB

3

4  BY:  JEFFREY L. JONAS (TELEPHONICALLY)

5

6  ALSO PRESENT TELEPHONICALLY:

7  DEREK C. ABBOTT

8  WARD BENSON

9  ADAM BERNSTEIN

10  ROBERT J. BOLLER

11  WILLIAM BOWDEN

12  PEG A. BRICKLEY

13  CHRISTOPHER L. CARTER

14  REBECCA CHAIKIN

15  STEVEN H. CHURCH

16  MARIA CHUTCHIAN

17  HOWARD A. COHEN

18  KEN COLLIER

19  LAURA DAVIS JONES

20  MICHAEL L. DAVITT

21  MICHAEL D. DEBAECKE

22  DANIEL DEFRACHESCHI

23  STACEY DORE

24  JUSTIN K. EDELSON

25  JAMIE EDMONSON

```
 1    ERIN FAY

 2    JEFFREY R. FINE

 3    SIMON FRASER

 4    JONATHAN FRIEDMAN

 5    MEGGIE GILSTRAP

 6    SETH GOLDMAN

 7    ANNA E. GRACE

 8    DANIEL J. HARRIS

 9    PAUL HEATH

10    MARK F. HEBBEIN

11    ANGELA K. HERRING

12    DANIEL K. HOGAN

13    NATASHA HWANGPO

14    GARY L. KAPLAN

15    HAROLD KAPLAN

16    CHRISTOPHER W. KEEGAN

17    MATTHEW W. KINSKEY

18    CHARLES KOSTER

19    ARI D. KINOFSKY

20    KIMBERLY LAWSON

21    JHAMES J. LEE

22    RAYMOND LEMISCH

23    DANIEL A. LOWENTHAL

24    JASON M. MADRON

25    ANDY MCGAAN
```

1    R. STEPHEN MCNEILL

2    STEPHEN MILLER

3    PAULINE K. MORGAN

4    MORGAN NIGHAN

5    THOMAS E. OBRRIEN

6    RICHARD PEDONE

7    DAVID PRIMACK

8    ABID QUERESHI

9    RACHAEL RINGER

10   BRENTON ROGERS

11   MARC B. ROITMAN

12   JEFFREY S. SABIN

13   BRIAN SCHARTZ

14   JEFFREY M. SCHLERF

15   NED S. SCHODEK

16   MARK SHEPPARD

17   MOSES SILVERMAN

18   J. KATE STICKLES

19   AMER TIWANA

20   THOMAS WALPER

21   CHRISTOPHER A.  WARD

22   EDWARD WEISFELNER

23   SCOTT L. ALBERINO

24   ARLENE R. ALVES

25   ASHLEY F. BARTRAM

1    VAN BECKWITH

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           THE COURT:  Good afternoon counsel and

3    participants.  This is Judge Sontchi.  We are here on the

4    request of the EFH committee for a ruling in connection with

5    a discovery matter related to confirmation of plans -- the

6    settlement agreement.  As usual, in this case, we have quite

7    a few people on the telephone, and I would ask you, as

8    always, to please keep your phones on mute unless you are

9    speaking.  We get, you know, keyboard noises, things like

10   that, and it's very distracting.

11          Also, if you could identify yourself each time you

12   speak so the transcript is clear, I would appreciate it.  I

13   know Mr. Glueckstein filed -- or at least signed -- the

14   letter for the E-side Committee, and unless, there's any

15   object, I would turn to him or someone on his side of the

16   table to start the presentation to the court.

17          MR. GLUECKSTEIN:  Thank you, Your Honor.  This is

18   Brian Glueckstein, Sullivan & Cromwell, on behalf of the E-

19   side Official Committee.  Thank you, Your Honor, for taking

20   the time on this Friday afternoon to address this issue.

21          The EFH Committee has, for a number of weeks, been

22   taking discovery from the T-side plan proponents, who are

23   likely to have information, we believe, directly relevant to

24   the Committee's potential objection to the confirmation of

25   the plan and importantly the conditional settlement

1    agreement.

2         As everyone in this case is well aware, we are all

3    operating under an incredibly compressed discovery schedule,

4    one proposed and advocated for by the parties who are now

5    refusing to produce relevant discovery on the most important

6    issues in this case, which we believe we've asked for only

7    going to a reasonable period of time and for a reasonable

8    set of custodians.

9         Our ability to prepare for depositions and the

10   upcoming trial continues to be impeded with each passing day

11   that we don't move forward with this discovery.  Mr. Shore's

12   letter this morning refers to the targets of the discovery

13   as the non-debtor PSA parties.

14         I would assume that, Your Honor, that the

15   discovery is not being sought from parties who are merely

16   signatories to the PSA. In fact, this discovery goes to the

17   heart of plan confirmation issues and the settlement

18   agreement.

19         These are the parties who are the architects and

20   sponsors of the debtor's plan, along with the signatories to

21   this highly, we believe, highly unusual settlement agreement

22   that if approved provides whether the plan should be

23   consummated or not.

24         In addition to the, what, 10 members now of the

25   Creditor Investor Consortium, Hunt Avenue, the ad hoc groups

1    of the T-side Creditors who -- individual members who,

2    themselves, comprised many individual members, these members

3    are signatories to the settlement agreement, all of whom

4    would be subject -- are subject to appropriate detail and

5    discovery under the federal rule of civil procedure.

6              The argument submitted to the Court, a burden of

7    discovery in this context, given the narrow issues that

8    remain, I would submit ring hollow, given the nature of the

9    limited scope of the dispute here and as sophisticated

10   parties (indiscernible) to the transaction at which we're

11   talking about.

12             And certainly the issues that are going to be

13   before the Court on November 3rd can ask for confirmation of

14   the settlement agreement are of enormous importance, both in

15   magnitude and effect (indiscernible).

16             Already, the parties have agreed to numerous key

17   limitations that will reduce the cost and burden on the plan

18   proponents including, importantly, filter out documents that

19   the EFH Committee should have received from the debtors and

20   their professionals.

21             Mindful of both the time constraints of all

22   operating and the cost of discovery on everybody enduring

23   the cost of the need to confirm process, the committee has

24   focused its document requests on a narrow set of subjects

25   that are outlined in our letter; communication concerning

1    the settlement agreement including its terms, an agreement

2    to provide by -- agreement by the creditors pre-effective

3    date, releases and other settlement terms, the decision to

4    permit approval of that settlement to be a condition of the

5    plan and delayed negotiations.

6            Two, what's referred to in papers and to the Court

7    as disarmament drag provision debtors have spoken at length

8    about that has been represented as being seek and return for

9    the T-side pertaining being granted an option to purchase

10    on.  The (indiscernible) what we believe is a highly

11    conditional plan structure.  We (indiscernible) plan

12    sponsors to choose to exercise the purchase option they've

13    been granted.  And finally, being patient about how the

14    consortium came to be, the consortium of the investor

15    consortium with the Hunt at the helm along with the other

16    parties who are all now supportive of this series of

17    transactions.

18            Importantly, for the first time in their letter

19    this morning, the plan proponent has now apparently agreed

20    to produce documents on all four of these subjects,

21    including the likelihood of closure.  We certainly welcome

22    their proposal and it is the most complete to date.

23            But while the issues have significantly narrowed,

24    Your Honor, there are three important issues remaining for

25    which we seek assistance from the Court.

1          First and foremost is the question -- the subject

2     of what is referred to in our letter as internal group

3     communications.  The plan proponents have refused to produce

4     any non-probus internal communication, including both

5     communications internal to a particular group member and

6     communications among group members.  So, those, you know,

7     two unaffiliated parties who are members of an ad hoc group

8     or an investor consortium, non-probus would not be produced

9     o would be filtered out.

10          The plan proponents do not appear to dispute the

11     potentially (indiscernible) documents related to the

12     subjects that are now agreed to for production, but rather

13     that the burden to find and produce them is too great in

14     comparison to the relevance.

15          Mr. Shore's letter this morning suggests that --

16     suggested that the plan proponents is not at all relevant to

17     the issues before the Court at confirmation. We respectfully

18     disagree. They are, we believe, a central focus to the

19     confirmation hearing will be on the feasibility of the plan

20     and the likelihood that this plan will ever be consummated.

21          There is no debate at this point the plan sponsors

22     have received an option.  Discovery to the debtors make this

23     clear.  The granting of a purchase option to the plan

24     sponsors irrespective of what may have been received in

25     return and that'll be a question for confirmation.  In our

1   view, may be (indiscernible) to those parties highly

2   relevant to the facts this case.

3           And, Your Honor, we've submitted the internal

4   communications on this subject for arguably the most

5   relevant documents.  The party discussion internally amongst

6   themselves or within their group members are likely to be

7   far more candid that communications they have that might

8   have an agenda or posturing for other parties across those

9   lines.

10          We simply believe there's no basis in not

11  (indiscernible) the documents on the limited subjects that

12  we've now focused on and agreed to.  The Court itself has

13  heard, and we've all heard as recently as the August 25th

14  hearing, about subjective factors such as the time, the

15  effort, (indiscernible) transactions, you know, arguing

16  (indiscernible).

17          The NFH Committee we believe should be permitted

18  discovery in intra-group and internal communications on the

19  limited subjects that are now agreed to, specifically

20  internal communications of why agreements were made for

21  these claims to make the settlement plan we believe are

22  probative of the good faith nature of the proposed set of

23  transactions that are being put before the Court and is an

24  appropriate scope of discovery.

25          Any undue burden with respect to searching these

1    types of documents is already limited by the scope of the

2    production being focused on the search terms and now agreed

3    upon topics that the parties have discussed (indiscernible)

4    process.

5            The Court has previously held in this case that

6    internal communications are discoverable in appropriate

7    circumstances and an appearing through an ad hoc group does

8    not sometimes limit discovery to group members.  There is no

9    basis in our view to preclude such discovery.

10           Second, Your Honor, with respect to my --  plan

11   proponents have offered to produce documents beginning on

12   May 1st 2015.  The Court in their position and Mr. Shore

13   stated a terms sheet and he read it this morning, have taken

14   the position that the operative terms were first submitted

15   to the debtors on July 14th.

16           We would submit, Your Honor, that the relevant

17   facts they go into the plan here certainly far predate that.

18   And by the terms of the July 14th email that was submitted

19   this morning, certainly it's clear that a substantial amount

20   of the agreement of the plan terms were agreed to prior to

21   that date.

22           We believe based on discovery (indiscernible) that

23   -- from the debtors that negotiations on the terms of this

24   plan amongst the parties and discussions with the debtors

25   predated the May 1st deadline and certainly go back into

1    March and April.

2            We've asked for a discovery period beginning on

3    January 14th.  It's only the addition of a few additional

4    months, we're not asking for years of discovery here, to

5    ensure that we have the complete set of negotiation history

6    on the relevant topic, again, limited by the search terms

7    and the relevant topics that we -- that are tailored the

8    relevant topics we -- has been agreed to amongst the parties

9    to ensure the history on critical points such as when the E-

10   side creditors began talking to the Hunt, how that came to

11   be and how agreements were made with respect to settlement

12   terms and releases that are now found in the settlement

13   agreement were all agreed to amongst the parties.

14           We think the period requested is not going to be

15   burdensome given the limited scope on which discovery is to

16   be provided.

17           Similarly, Your Honor, I'm requesting a custodian.

18   The position that we've heard to date has been two

19   custodians per group, take it or leave it from the plan

20   proponents.  We believe certainly give the number of

21   parties, the sheer number of parties at issue here, from

22   whom, again, we believe under other circumstances or even

23   these circumstances, far more could be subject to individual

24   discovery.

25           We have made a request that we believe, again, to

1    be reasonable, that (indiscernible) on two to five

2    custodians to encompass its principals and advisors and it

3    is clear from discovery to date, without the (indiscernible)

4    the Court, that both certainly were involved in the

5    transaction.

6              So, it's really those three somewhat narrow

7    issues, Your Honor, that we would believe are incredibly

8    important that need resolution today and we would submit,

9    Your Honor, that the parameters that we outlined in our

10   letter on those three points including not excluding

11   internal communications from the production set, the

12   expansion by a few additional months of discovery period and

13   some additional custodians.  It is an appropriate balance

14   under the circumstances and we would ask the Court to direct

15   the parties if you so wish to.

16             THE COURT:  Thank you.

17             MR. GLUECKSTEIN:  Absent any questions, I'll

18   certainly turn it over to the other side.

19             THE COURT:  Thank you. Mr. Shore?

20             MR. SHORE:  Thank you, Your Honor.  For

21   convenience purposes, I'll just be addressing everything on

22   behalf of the non-debtors PSA party, but people may need to

23   add in because we're not all exactly aligned.

24             So let me just start by saying we're not plan

25   proponents, and that's going to matter when I get to the

1   relevance of this.  We have been the subject of discovery

2   since before the third amendment plan was filed, and the EFH

3   Committee has always wanted to get documents from us, but I

4   want to assure The Court that we've been proactive

5   throughout all the process to move this along.

6          On the day that he went in for the scheduling

7   order, I met with Mr. Glueckstein in court and laid out that

8   we would produce documents.  We weren't going to -- and set

9   some of the ground rules that they have now agreed to at the

10   end of August, which were that we weren't going to be

11   producing materials that they could get from the debtors,

12   that we would have to have an agreed list of service terms.

13   We would run it against the electronic files of certain

14   custodians, that we would do it for a defined period, and

15   that we would then review the documents for responsiveness

16   and produce them.

17          We have initiated each of the meet and confers.

18   We served our formal responses.  I think everybody served

19   their formal responses early.  We've been moving this

20   process along.  In fact, I asked last -- was it -- maybe

21   last Friday for their list of custodians.  Give me the

22   custodians so at least we can start the process of isolating

23   their emails.  I still don't have the proposal from Mr.

24   Glueckstein about any custodians, not ten, not thirty, not

25   even one.

1           Second, despite all of the meet and confers we've

2      had, both formal and informal, it bears noting that the

3      relevance of any of the material they are seeking from us,

4      which is, by definition, material that wasn't shared with

5      the debtors, has any real bearing on the plan objection.

6      The rules in the case -- the rules under the rules is that

7      they're only entitled to discovery which is relevant to

8      their claim.  They have never explained how any document in

9      the files of any of the non-debtor PSA parties could be

10     relevant in any way to whether or not there is an impairment

11     of E-side creditors.

12          Same with good faith.  The question under

13     1129(e)(3) is the debtor's good faith in proposing the plan.

14     What our views are about the debtor is no more prohibitive

15     than what the EFH views are -- EFH Committee's views are of

16     what the debtor is doing.  They'll get the discovery from

17     the debtor with respect to the good faith of the proposed --

18     proposal of the plan.

19          The settlement agreement is going to be judged

20     under Rule 9019, and it's subject is the debtor's business

21     judgment, not the creditor's business judgment.  So what

22     individual non-debtor parties who signed the PSA think about

23     the settlement agreement isn't going to be prohibitive for

24     Your Honor's assessment of whether the debtors exercised

25     their business judgement appropriate in settling it within

1    this zone of reasonableness.

2            The only issue which Mr. Glueckstein has provided

3    any color on, either on his letter or today, would be with

4    respect to feasibility, but again, is a communication

5    between a PSA party FA and one of the investors regarding

6    the PUC approval process going to be prohibitive as to

7    whether or not the PUC is going to approve?  I doubt it.

8            And the issue with respect to whether the

9    financing parties are going to close the transaction is

10   going to be governed by the contractors.  Their subjective

11   intent is completely irrelevant to the meaning of those

12   contracts before Your Honor, and just as it wouldn't be

13   prohibitive if one said, "Gee, I have some reservations

14   about closing," it also wouldn't be prohibitive that they

15   said, "Gee, I have no reservations about closing,"

16   notwithstanding the terms of the contract.

17           It's just not -- the material they are seeking,

18   they agreed to limit to, which is communications with PSA

19   parties at the debtor's, isn't really going to be

20   prohibitive of anything, but as I said, from the beginning,

21   rather than create a problem and have to bring it to Your

22   Honor, we committed, and every non-debtor PSA party on the

23   phone, has committed to produce documents.

24           We are ready, willing, and able to take the search

25   terms, which now seem to be agreed to -- except for some

1    minor things that I don't think we need to talk to you about

2    -- ready to run searches.  We need the custodians.  We need

3    the start dates.  We need the end dates, and we need to know

4    whether or not we're going to filter out things that only

5    have domain names within the individual groups.

6    So let me address that, but -- actually, let me add one more

7    point before I address those three pieces.

8              Notwithstanding Mr. Glueckstein's statement that

9    this is easy and sophisticated part or anything else, this

10   is going to be time consuming and expensive pulling the

11   documents and going through them.  The way we set this up is

12   we will search a custodian's files during the relevant

13   period for the word term sheet.

14             So we will be pulling out in the production dozens

15   if not hundreds of emails which are going to contain the

16   search terms, terms sheet.  "Options" is one of the things

17   they want us to search and we're going to have to pull out

18   all the things related to all the other deals that other

19   people are working on, the custodians are working on to make

20   sure what we're not doing is producing privileged materials

21   in other cases or confidential material from other cases.

22             We nonetheless committed to do it provided that

23   what we're not doing is expanding that.  So let me come to

24   the issue of the date ranges.  We proposed day one and we

25   attached to the letter we submitted to Your Honor this

1    morning, I don't know whether you've had a chance to see it,

2    the original term sheet that T-side agreed to, brought to

3    the debtors and said we want you to (indiscernible).

4             As we pointed out in the letter, the negotiations

5    between the first and the second and the (indiscernible) and

6    the UCC over the terms of that began in late May under the

7    (indiscernible) of the mediator.  So a May 1 date will give

8    them what they need to know with respect to the third

9    amended plan and notably the issues that they have raised,

10   the things what they'd call the goody bag that the debtors

11   seem to have put into the settlement agreement and the plan

12   that they don't like came in after that.

13            So they will get a cross section of the

14   negotiations from before the plan at its genesis and started

15   to take hold and through the point where the plan was

16   (indiscernible).  They'll get that and they'll have an

17   opportunity to assess it and it will show that there were a

18   wide range of negotiations that took place over that period,

19   quite frankly, they've already seen it in the debtor's

20   production, all of the draft and term sheets and things that

21   flew back and forth.

22            They want to go back to January 15th.  I have no

23   idea how that is relevant.  Everything in this case has led

24   to the third amended plan, as you can imagine, Your Honor.

25   It started from before this case so any date where what

1    you're wanting to do is find out how did the concept of a

2    REIT plan come about, that was around pre-petition.  How did

3    the concept of the TCEH first lien creditors taking their

4    collateral and leaving?  That came up pre-petition.  What we

5    have on file, though, is the third amended plan and we are

6    providing discovery with respect to how the third amended

7    plan was negotiated and ultimately proposed by the debtors.

8              So I think it's got to start in May and not back

9    because we've -- every month we move it back, we're adding

10   in hundreds of thousands more emails which really have

11   nothing to do with this case but have to do with term sheets

12   and other cases and opt-ins from other cases and settlements

13   of other cases.

14             The end date has to be the date the joint defense

15   came in.  I thought we had an agreement on that, that we

16   were just going to do it.  They, in the letter that Mr.

17   Glueckstein sent, he added in the notion that we should be

18   going through emails after the date up to the present to

19   pull out things that are not privileges.

20             So, for example, when someone from Morrison and

21   Foerster sends an email to White & Case people see -- say,

22   see, look at this article that was written.  They want us to

23   go through, pull that out and send it.  But more importantly

24   then also schedule all the other thousands of emails that

25   are going on between the firms at any given time and

1    schedule those as privileged.  That, you know, that is a

2    classic instance in which the probative value of the

3    material sought is so outweighed by the prejudice and burden

4    of having to go gather that material.

5            So with respect to date range, we think it's

6    perfectly appropriate to start on May 1, which is weeks

7    before the negotiations really start on the third amended

8    plan and ending when the parties entered into joint defense

9    agreement, custodian, because I know that Sullivan &

10   Cromwell had seen the negotiations from the debtor's

11   perspective.  Everything in this case, as you can imagine,

12   carries a date CC line of about 40 people.

13           These negotiations, there were not 30 separate

14   people negotiating 30 separate terms.  They were teams and

15   that's just a question of picking the right custodian.

16           But again, adding more custodians -- after you get

17   the right money and 10's probably even too many.  You could

18   probably pick two or three and get basically every material

19   communication that occurred that constituted a negotiation.

20   We've offered 10.  It seems more than enough and anything

21   else is really just going to be getting the same

22   communications out of different people's inboxes, deduping

23   it and then producing it.  So you'll get maybe a few more

24   documents but you'll increase the burden by, well, they

25   propose threefold.

1          Finally, intragroup communication, and this is

2     maybe the biggest issue for us because of the burden

3     associated with that.  Obviously throughout the case, I

4     mean, I -- everybody here has hundreds of emails a day on

5     this deal.  Some are inoculate -- can we meet for five

6     minutes before the call with the board?  Yes, yes, yes, yes,

7     yes.  It will create 12 emails, right, just going back and

8     forth.  That stuff isn't going to be probative with

9     anything.

10          And then there will be emails that, for example,

11    we've left out to the group members, here's what happened in

12    Court today and will contain our legal advice with respect

13    to what's going on or communications between members.  White

14    & Case says that substantially all of that material is going

15    to be either common interest within the group, we're all

16    pushing forward to get our deals done on behalf of the

17    group, or a common interest either reflecting legal advice,

18    this is how we're going to get it done or work product, this

19    is, you know, this is the draft.

20          Will there be non-privileged material responsive

21    documents going back and forth?  Maybe.  But the burden of

22    going through and doing two or three level reviews of

23    communications between Houlihan Lokey and White & Case to

24    tease out what is Houlihan doing here on behalf of the

25    lawyers?  What's the analysis that's being done?  Is that

1    work product?  Does it reflect legal advice?  How would we

2    redact it?  It's not going to be probative, again, of any of

3    the stated objections that the EFH Committee has to the

4    third amended plan and settlement agreement.

5              So we're going to do it and it's going to cost --

6    this whole thing is going to cost in the millions of dollars

7    to get this production done.  It's all coming out of the

8    recoveries of T-unsecured creditors.  None of them -- and

9    the unsecured creditors, (indiscernible).  None of it is

10   coming out of the hide of EFH creditors under the plan.

11   Regardless of how much money is spent on getting to

12   confirmation, no matter how hard the EFH Committee fights to

13   make us spend money, their constituents are going to be paid

14   in cash, in full on the effective date and the full amount

15   of their allowed claim.

16             So we are asking to have the Board intercede

17   because the EFH Committee has no incentive to produce

18   burden.  It has every incentive to try to get some as yet

19   unidentified concessions in connection with this plan

20   because if their constituents can get paid, I don't know

21   more than in full, I don't know.  But we do need the Court

22   to come in and set some limits so that we don't get into a

23   $5 million, $7 million, $10 million discovery plan to

24   provide material that really has nothing to do with the

25   objection of people who are getting paid in our view in full

1    at the end of the first quarter of next year.

2              THE COURT:  Thank you.

3              MR. SHORE:  Unless Your Honor has any questions, I

4    have nothing else.

5              THE COURT:  Thank you, Mr. Shore.  Would anyone

6    like to be heard before I turn it back to Mr. Glueckstein?

7              MR. MCKANE:  Your Honor, briefly, it's Mark McKane

8    of Kirkland & Ellis on behalf of the debtors.

9              THE COURT:  Okay.

10             MR. MCKANE:  Your Honor, we just briefly arrived

11   in support of the respondents here in part because not only

12   do we agree with the position that they have taken but we

13   wanted to highlight, you know, when evaluating the need for

14   this discovery, we ask the Court to consider how cumulative

15   this truly is when you build it on top of everything that

16   the debtors have already provided, you know, that allows the

17   Court and all the objectors to evaluate what negotiations

18   actually occurred.

19             And so it's only for that cumulative nature of all

20   of this that we wanted to emphasize this morning.  Thank

21   you, Your Honor.

22             THE COURT:  Thank you.

23             MR. EHRLICH:  Your Honor, Andrew Ehrlich from Paul

24   Weiss on behalf of the first lien TCEH creditors.  I will

25   not belabor the points Mr. Shore made.  We join them

1   completely.  The relevance concerns we share entirely with

2   you of one of our individual committee members as to the

3   expressed objections to date from Mr. Glueckstein on topics

4   such as impairment and feasibility.  We view those documents

5   wholly irrelevant.  The burden issues are equally acute

6   given the role that Paul Weiss played in negotiating on

7   behalf of the client and the communications with the clients

8   and among the clients to be dominated almost to an entirety

9   by privileged communications and not reflecting privileged

10  communications.

11          And finally, with respect to timeframe, I would

12  simply add that from our perspective, this transaction was

13  presented to counsel for first lien creditors no earlier

14  than the 20th of May, and so it's argue that going back to

15  May 1st, which we'll gladly do, is more than accommodating

16  providing responsive, relevant materials to the discovery

17  requirements.  Thank you.

18          THE COURT:  You're welcome.

19          MR. JONAS:  Your Honor, Jeff Jonas from Brown

20  Rudnick for the T-side second liens and I would also be

21  supportive of Mr. Shore's comments.  And, Your Honor, I'd

22  just like to reserve, our group is in somewhat of a unique

23  particular situation and I don't want to speak to it now.

24  If I could just -- if, depending on how the Court rules, if

25  I could just reserve a moment to address our particular

1    group -- I hope I don't need to but I just want to point

2    that out, Your Honor.

3              THE COURT:  Okay.  Thank you, Mr. Jonas.

4              MR. JONAS:  Thank you.

5              THE COURT:  Anyone else?  All right.  I hear none.

6    Mr. Glueckstein.

7              MR. GLUECKSTEIN:  Thank you, Your Honor.  For the

8    record, Brian Glueckstein, Sullivan & Cromwell.  Just

9    briefly to a few of the points Mr. Shore made.

10             First, Your Honor, just to respond on the

11   suggestion that the EFH Committee is somehow interested in

12   increasing costs in the case for the sake of increasing

13   costs, it's -- I take extreme issue with.  The EFH

14   Committee, in short, continually refers to its plan and the

15   fact that we are going to get paid in full and that is

16   exactly the question, the feasibility that's going before

17   the Court in November.

18             Part of what the Court's hearing and part of the

19   subject of discovery that's being sought goes to provision

20   and terms that will be imposed on E-side creditors for all

21   time if the settlement agreement is approved.  And the

22   question and the information that's being sought that goes

23   to the terms that appear in those docs and how we got to

24   this point in the negotiation history are relevant.

25             And so while we are -- and we are mindful and we

1    have limited our discovery to the topics we believe most

2    relevant, both of schedule and at the cost of everybody, not

3    only on the T-side but certainly of the E-side of both this

4    process and the fact of what happens in the event that their

5    plan is not closed and what -- the continued cost of the

6    case and results for E-side creditors.

7              With respect to the specifics of the issues before

8    the Court today, Mr. Shore, I think concedes, that there's a

9    possibility in his view that there are some relevant

10   documents with respect to internal communications.  Mr.

11   McKane spoke in support that we have the negotiation history

12   and certainly while the negotiation history is a critical

13   component and we certainly believe and I would expect

14   everybody would expect there to be negotiations and

15   discussions about those negotiations and terms internally

16   within the group that not every communication of which would

17   be privileged.

18             There's also the issue that we believe is

19   fundamental to our feasibility objection on the facts of

20   this case that the investor group, Mr. Shore's clients,

21   direct clients, whether or not the option is being granted

22   through this plan is going to be exercised and we can talk

23   about the amendment agreements and everything else but there

24   is no question that part of the inquiry here is going to

25   keep going in our view in this objective intent of these

1    parties when you start looking into the question of the

2    likelihood that this plan is feasible, is going to close and

3    it's going to pay my clients in full, in cash as we continue

4    to do.

5                And so that discovery and the internal

6    communications that are likely the most candid

7    communications on this subject are material to what we're

8    doing here.

9                On the question of custodians, certainly Mr. Shore

10   alone has had clients in his investor group.  We're talking

11   about they're offering 10 custodians for everybody that's on

12   the phone.  And so we are not asking, Your Honor, to

13   authorize us to take discovery from each and every member of

14   Mr. Shore's group or any of the creditor groups on the

15   phone.  We are asking simply that we have an opportunity to

16   take enough discovery that we have, you know, enough of a

17   cross section that we know we've got all the material

18   documents.

19               We don't think back here what we're talking about

20   is, you know, a material increase in the cost of burden.  We

21   all know the document requests, document production, as does

22   review and preparation, requires a good deal of time and

23   effort.  But we're working on the schedule we have.  We're

24   moving forward and we appreciate the Court's guidance on

25   this narrow scope of issues there.  Thank you, Your Honor.

1           THE COURT:  You're welcome.

2           MR. SHORE:  Your Honor, may I be heard on one

3    issue, please?

4           THE COURT:  Briefly.

5           MR. SHORE:  Yes.  This notion of subjective

6    investor intent, maybe today is the right time but we're

7    going to have to nip this in bud before the confirmation

8    hearing.  If the notion is that the E-side Committee is

9    going to call each of the signatories of the funding

10   document, put them on the stand and say are you going to

11   exercise this option, it's not probative of anything.

12   Right?  The document is what the document is.  Their rights

13   are what their rights are.  The question's going to be the

14   extent to which the terms document do or do not bring an

15   issue with feasibility.

16          But the discovery that's being sought right now at

17   least on the feasibility point is exactly that.  It's

18   irrelevant to the approval of the client.  It's irrelevant

19   to the issue of feasibility, so I just don't -- getting down

20   that road even at the point of documents discovery is just

21   leading ultimately to a complete waste of time by the time

22   we get to confirmation.

23          THE COURT:  All right.  Well, on that last point,

24   since the subject matters have generally been agreed upon, I

25   don't think I need to get into, you know, whether to make a

1    ruling about the relevance of subjective intent or not.

2            The issues before me, as I understood them are the

3    narrow issues of the timing, the number of custodians and

4    internal communications.  And on all three of those areas, I

5    completely agree with the position of Mr. Shore as

6    articulated in his letter and as clarified and expanded

7    before the Court today.

8            The cost of discovery and the amount of time and

9    effort required for discovery is always an issue the Court

10   needs to take into account when determining scope.  And you

11   have to weigh that against the probative nature of evidence

12   being sought.

13           I believe that what's been offered is a reasonable

14   and appropriate way of compromise between allowing this

15   discovery at all and allowing it in a full or, as requested

16   by the E-side Committee.

17           There is a strong argument to be made that some of

18   this discovery shouldn't be sought at all.  It's been agreed

19   to be done and I'm certainly not going to interfere with

20   that and not make any kind of ruling to upset that.  I think

21   the scope that's been agreed to is more than sufficient to

22   allow the E-side Committee to explore the issues it's

23   identified that it might have with the settlement agreement

24   and the claim.

25           The question becomes, okay, we've agreed on scope.

1    How deep do I allow the E-side Committee to go and how much

2    money do I allow them to spend?  And I think the proposal of

3    the E-side Committee as to scope, number of custodians,

4    timing, unnecessarily and -- excuse me, unnecessarily expand

5    the cost and burden of discovery.  They're getting what they

6    need, especially, again, I think the debtor's point about

7    duplicative nature of what's being sought is important.

8    They're getting what they need to develop their case.

9            With regard to internal communications, that's a -

10   - it's more difficult question.  But, again, I think the

11   borderline relevance of what's being sought and the

12   incredible cost and expense associated with going through

13   those internal communications and already the agreed

14   production of what documents that will probably be

15   overwhelming, frankly, when we get to the actual numbers but

16   will give a very complete picture of what was going on, is

17   enough.  And this is a different situation from what I

18   ordered in 2014 on allowing the production of internal

19   communications among an ad hoc committee.  I don't think

20   it's required here and I'm not going to allow it.

21           So I agree with Mr. Shore's position, taken on

22   behalf of the non-debtor PSA parties and deny the request of

23   the E-side Committee, to extend its request for the

24   discovery sought and will limit it as agreed by the parties

25   and not expand it any further.  And I would urge the parties

```
1    to get as busy as possible as quickly as possible because

2    we're going to start a confirmation hearing in this case on

3    November 3rd and unless there is a huge disruption in the

4    space time continuum, that's when we're starting.  Mr. Jonas

5    --

6              MR. SHORE:  Thank you, Your Honor.

7              THE COURT:  You're welcome.  Mr. Jonas, do you

8    need to be heard at this point?

9              MR. JONAS:  No, Your Honor.  Thank you very much.

10             THE COURT:  You're welcome.  All right.  Very

11   good.  I'm not going to enter an order.  I think my oral

12   ruling is sufficient and I know there might be yet another

13   discovery call at some point in an issue that's been

14   percolating with the Proskauer firm but I'll wait to hear on

15   developments at that.  And, again, if you have any issues,

16   this is the way to proceed.  Let's get some letters in.

17   Let's get everybody on the phone.  Let's get it decided as

18   quickly as possible.  So I welcome --

19             MR. SHORE:  Yeah, Your Honor?

20             THE COURT:  I welcome your communications.

21             MR. SHORE:  Your Honor, this is Chris Shore.  On

22   that front, we do have a also brewing dispute with the

23   trustees of PCRBs, you know, towards the request to have

24   discovery, served discovery.  They served discovery.  We're

25   trying to work through it.  But we may agree on a schedule
```

1    that would get you letters and then maybe we could take it

2    up at the hearing on Thursday if we can't dissolve it by

3    then.

4              THE COURT:  Yeah.  Actually, thank you for raising

5    that last point.  I really want to limit what we're going to

6    talk about Thursday to the PSA and the disclosure statement.

7    It's on -- the disclosure statement is on as well, correct?

8              MR. SHORE:  Yes.

9              THE COURT:  Okay.  I really want to limit it to

10   that and I actually had this conversation through Ms. Gadsen

11   to Mr. Madron earlier today in connection with the Proskauer

12   issue.  Let's set aside special times to do this, preferably

13   on the phone.  I can fit those in pretty easily because

14   they're discrete issues as opposed to taking up valuable

15   courtroom time in connection with what we have scheduled on

16   the 17th.  So I would prefer not to deal with it on the 17th

17   or on the continued second date, which is now the 21st if

18   you hadn't heard.  So the extent we go to a second day on

19   the PSA disclosure statement, it'll be Monday the 21st.

20             Let's hold those dates and times for those

21   hearings and schedule the discovery disputes separately.

22             MR. SHORE:  Thank you, Your Honor.

23             THE COURT:  You're welcome.

24             MAN:  Thank you, Your Honor.

25             THE COURT:  All right.  Have a good day.  We're

1    adjourned.

2           MAN:   Thank you, Your Honor.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 37

CERTIFICATION

I, Sonya Ledanski Hyde, certified that the foregoing

transcript is a true and accurate record of the proceedings.

Sonya Ledanski
Hyde

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde,
o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2015.09.15 09:56:09 -04'00'

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  September 11, 2015

| & | 9 | | argument 10:6 |
|---|---|---|---|
| **&** 3:3,8,14,19 8:18 22:21 23:9 24:14,23 26:8 28:8 | **9019** 18:20 | 15:13 18:19,23 21:11 22:15 23:9 25:4 28:21 32:23 | 32:17 |

**&** 3:3,8,14,19 8:18
22:21 23:9 24:14,23
26:8 28:8

**9**

**9019** 18:20

**a**

**abbott** 4:7
**abid** 6:8
**ability** 9:9
**able** 19:24
**absent** 16:17
**accommodating** 27:15
**account** 32:10
**accurate** 37:4
**actual** 33:15
**acute** 27:5
**ad** 3:9,20 9:25 12:7 14:7 33:19
**adam** 4:9
**add** 16:23 20:6 27:12
**added** 22:17
**adding** 22:9 23:16
**addition** 9:24 15:3
**additional** 15:3 16:12,13
**address** 8:20 20:6,7 27:25
**addressing** 16:21
**adjourned** 36:1
**administration** 1:5
**advice** 24:12,17 25:1
**advisors** 16:2
**advocated** 9:4
**afternoon** 8:2,20
**agenda** 13:8
**agree** 26:12 32:5 33:21 34:25
**agreed** 10:16 11:19 12:12 13:12,19 14:2 14:20 15:8,13 17:9 17:12 19:18,25 21:2 31:24 32:18,21,25 33:13,24
**agreement** 2:3,4 8:6 9:1,18,21 10:3,14 11:1,1,2 14:20

**1**

**1** 21:7 23:6
**10** 9:24 23:20 25:23 30:11
**10's** 23:17
**11** 1:3,13 37:25
**1129** 18:13
**11501** 37:23
**12** 24:7
**14-10979** 1:4
**14th** 14:15,18 15:3
**15th** 21:22
**17th** 35:16,16
**1:02** 1:14
**1:49** 1:14
**1st** 14:12,25 27:15

**2**

**2014** 33:18
**2015** 1:13 14:12 37:25
**20th** 27:14
**21st** 35:17,19
**25th** 13:13

**3**

**3** 18:13
**30** 23:13,14
**300** 37:22
**330** 37:21
**3rd** 10:13 34:3

**4**

**40** 23:12

**5**

**5** 25:23

**7**

**7** 25:23

**8**

**824** 1:10

15:13 18:19,23
21:11 22:15 23:9
25:4 28:21 32:23
**agreements** 13:20
15:11 29:23
**al** 1:4
**alberino** 6:23
**aligned** 16:23
**allow** 32:22 33:1,2 33:20
**allowed** 25:15
**allowing** 32:14,15 33:18
**allows** 26:16
**alves** 6:24
**amended** 21:9,24 22:5,6 23:7 25:4
**amendment** 17:2 29:23
**amer** 6:19
**amount** 14:19 25:14 32:8
**analysis** 24:25
**andrew** 3:23 26:23
**andy** 5:25
**angela** 5:11
**anna** 5:7
**apparently** 11:19
**appear** 12:10 28:23
**appearing** 14:7
**appreciate** 8:12 30:24
**appropriate** 10:4 13:24 14:6 16:13 18:25 23:6 32:14
**approval** 11:4 19:6 31:18
**approve** 19:7
**approved** 9:22 28:21
**april** 15:1
**architects** 9:19
**areas** 32:4
**arguably** 13:4
**argue** 27:14
**arguing** 13:15

**argument** 10:6 32:17
**ari** 5:19
**arlene** 6:24
**arrived** 26:10
**article** 22:22
**articulated** 32:6
**ashley** 6:25
**aside** 35:12
**asked** 9:6 15:2 17:20
**asking** 15:4 25:16 30:12,15
**assess** 21:17
**assessment** 18:24
**assistance** 11:25
**associated** 24:3 33:12
**assume** 9:14
**assure** 17:4
**attached** 20:25
**attorney** 3:4,9,15 3:20 4:2
**august** 13:13 17:10
**authorize** 30:13
**avenue** 9:25
**aware** 9:2

**b**

**b** 1:15 6:11
**back** 14:25 21:21 21:22 22:8,9 24:7 24:21 26:6 27:14 30:19
**bag** 21:10
**balance** 16:13
**bankruptcy** 1:1,9 1:17
**bartram** 6:25
**based** 14:22
**basically** 23:18
**basis** 13:10 14:9
**bearing** 18:5
**bears** 18:2
**beckwith** 7:1
**began** 15:10 21:6
**beginning** 14:11 15:2 19:20

behalf  8:18 16:22
24:16,24 26:8,24
27:7 33:22
belabor  26:25
believe  8:23 9:6,21
11:10 12:18 13:10
13:17,21 14:22
15:20,22,25 16:7
29:1,13,18 32:13
benson  4:8
bernstein  4:9
biggest  24:2
board  24:6 25:16
boller  4:10
borderline  33:11
bowden  4:11
brenton  6:10
brewing  34:22
brian  3:6 6:13 8:18
28:8
brickley  4:12
briefly  26:7,10 28:9
31:4
bring  19:21 31:14
brought  21:2
brown  4:1 27:19
bud  31:7
build  26:15
burden  10:6,17
12:13 13:25 23:3,24
24:2,21 25:18 27:5
30:20 33:5
burdensome  15:15
business  18:20,21
18:25
busy  34:1

c

c  3:1 4:7 8:1 37:1,1
call  21:10 24:6 31:9
34:13
candid  13:7 30:6
carries  23:12
carter  4:13
case  1:4 3:8 8:6 9:2
9:6 13:2 14:5 18:6
21:23,25 22:11,21
23:11 24:3,14,23

28:12 29:6,20 33:8
34:2
cases  20:21,21
22:12,13
cash  25:14 30:3
cc  23:12
central  12:18
certain  17:13
certainly  10:12
11:21 14:17,19,25
15:20 16:4,18 29:3
29:12,13 30:9 32:19
certified  37:3
chaikin  4:14
chance  21:1
chapter  1:3
charles  5:18
choose  11:12
chris  34:21
christopher  1:16
3:12 4:13 5:16 6:21
church  4:15
chutchian  4:16
circumstances  14:7
15:22,23 16:14
civil  10:5
claim  18:8 25:15
32:24
claims  13:21
clarified  32:6
classic  23:2
clear  8:12 12:23
14:19 16:3
client  27:7 31:18
clients  27:7,8 29:20
29:21 30:3,10
close  19:9 30:2
closed  29:5
closing  19:14,15
closure  11:21
cohen  4:17
collateral  22:4
collier  4:18
color  19:3
come  20:23 22:2
25:22

coming  25:7,10
comments  27:21
committed  19:22,23
20:22
committee  2:1 3:4
3:20 8:4,14,19,21
10:19,23 13:17 17:3
25:3,12,17 27:2
28:11,14 31:8 32:16
32:22 33:1,3,19,23
committee's  8:24
18:15
common  24:15,17
communication
10:25 12:4 19:4
23:19 24:1 29:16
communications
12:3,5,6 13:4,7,18
13:20 14:6 16:11
19:18 23:22 24:13
24:23 27:7,9,10
29:10 30:6,7 32:4
33:9,13,19 34:20
comparison  12:14
complete  11:22
15:5 31:21 33:16
completely  19:11
27:1 32:5
component  29:13
compressed  9:3
comprised  10:2
compromise  32:14
concedes  29:8
concept  22:1,3
concerning  10:25
concerns  27:1
concessions  25:19
condition  11:4
conditional  8:25
11:11
confers  17:17 18:1
confidential  20:21
confirm  10:23
confirmation  8:5,24
9:17 10:13 12:17,19
12:25 25:12 31:7,22
34:2

connection  2:3 8:4
25:19 35:11,15
consider  26:14
consortium  9:25
11:14,14,15 12:8
constituents  25:13
25:20
constituted  23:19
constraints  10:21
consuming  20:10
consummated  9:23
12:20
contain  20:15 24:12
context  10:7
continually  28:14
continue  30:3
continued  29:5
35:17
continues  9:10
continuum  34:4
contract  19:16
contractors  19:10
contracts  19:12
convenience  16:21
conversation  35:10
corp  1:4
correct  35:7
cost  10:17,22,23
25:5,6 29:2,5 30:20
32:8 33:5,12
costs  28:12,13
counsel  8:2 27:13
country  37:21
court  1:1,9 8:2,16
10:6,13 11:6,25
12:17 13:12,23 14:5
14:12 16:4,14,16,19
17:4,7 24:12 25:21
26:2,5,9,14,17,22
27:18,24 28:3,5,17
29:8 31:1,4,23 32:7
32:9 34:7,10,20
35:4,9,23,25
court's  28:18 30:24
courtroom  35:15
create  19:21 24:7

creditor   9:25 30:14
creditor's   18:21
creditors   2:2 3:4,21
  10:1 11:2 15:10
  18:11 22:3 25:8,9
  25:10 26:24 27:13
  28:20 29:6
critical   15:9 29:12
cromwell   3:3 8:18
  23:10 28:8
cross   21:13 30:17
css   1:4
cumulative   26:14
  26:19
custodian   15:17
  23:9,15
custodian's   20:12
custodians   9:8
  15:19 16:2,13 17:14
  17:21,22,24 20:2,19
  23:16 30:9,11 32:3
  33:3

**d**

d   4:21 5:19 8:1
daniel   4:22 5:8,12
  5:23
date   11:3,22 14:21
  15:18 16:3 20:24
  21:7,25 22:14,14,18
  23:5,12 25:14 27:3
  35:17 37:25
dates   20:3,3 35:20
david   6:7
davis   4:19
davitt   4:20
day   9:10 17:6 20:24
  24:4 35:18,25
deadline   14:25
deal   24:5 30:22
  35:16
deals   20:18 24:16
debaecke   4:21
debate   12:21
debtor   3:15 9:13
  18:9,14,16,17,22
  19:22 33:22

debtor's   9:20 18:13
  18:20 19:19 21:19
  23:10 33:6
debtors   1:5 10:19
  11:7 12:22 14:15,23
  14:24 16:22 17:11
  18:5,24 21:3,10
  22:7 26:8,16
decided   34:17
decision   11:3
deduping   23:22
deep   33:1
defense   22:14 23:8
defined   17:14
definition   18:4
defracheschi   4:22
delaware   1:2,11
delayed   11:5
deny   33:22
depending   27:24
depositions   9:9
derek   4:7
despite   18:1
detail   10:4
determining   32:10
develop   33:8
developments   34:15
different   23:22
  33:17
difficult   33:10
direct   16:14 29:21
directly   8:23
disagree   12:18
disarmament   11:7
disclosure   35:6,7,19
discoverable   14:6
discovery   2:1 8:5
  8:22 9:3,5,11,12,15
  9:16 10:5,7,22
  12:22 13:18,24 14:8
  14:9,22 15:2,4,15
  15:24 16:3,12 17:1
  18:7,16 22:6 25:23
  26:14 27:16 28:19
  29:1 30:5,13,16
  31:16,20 32:8,9,15
  32:18 33:5,24 34:13

34:24,24,24 35:21
discrete   35:14
discussed   14:3
discussion   13:5
discussions   14:24
  29:15
dispute   2:2 10:9
  12:10 34:22
disputes   35:21
disruption   34:3
dissolve   35:2
distracting   8:10
district   1:2
docs   28:23
document   10:24
  18:8 30:21,21 31:10
  31:12,12,14
documents   10:18
  11:20 12:11 13:5,11
  14:1,11 17:3,8,15
  19:23 20:11 23:24
  24:21 27:4 29:10
  30:18 31:20 33:14
doing   18:16 20:20
  20:23 24:22,24 30:8
dollars   25:6
domain   20:5
dominated   27:8
don't   31:25
dore   4:23
doubt   19:7
dozens   20:14
draft   21:20 24:19
drag   11:7
duplicative   33:7

**e**

e   1:15,15 3:1,1,17
  5:7 6:5 8:1,1,14,18
  15:9 18:11,13 28:20
  29:3,6 31:8 32:16
  32:22 33:1,3,23
  37:1
earlier   27:13 35:11
early   17:19
easily   35:13
easy   20:9

ecr   1:25
edelson   4:24
edmonson   4:25
edward   6:22
effect   10:15
effective   11:2 25:14
effort   13:15 30:23
  32:9
efh   2:1 8:4,21 10:19
  17:2 18:15,15 25:3
  25:10,12,17 28:11
  28:13
ehrlich   3:23 26:23
  26:23
either   19:3 24:15,17
electronic   17:13
ellis   3:14 26:8
email   14:18 22:21
emails   17:23 20:15
  22:10,18,24 24:4,7
  24:10
emphasize   26:20
encompass   16:2
enduring   10:22
energy   1:4
enormous   10:14
ensure   15:5,9
enter   34:11
entered   23:8
entirely   27:1
entirety   27:8
entitled   18:7
equally   27:5
erin   5:1
especially   33:6
et   1:4
evaluate   26:17
evaluating   26:13
event   29:4
everybody   10:22
  17:18 24:4 29:2,14
  30:11 34:17
evidence   32:11
exactly   16:23 28:16
  31:17
example   22:20
  24:10

excluding 16:10
excuse 33:4
exercise 11:12
  31:11
exercised 18:24
  29:22
expand 33:4,25
expanded 32:6
expanding 20:23
expansion 16:12
expect 29:13,14
expense 33:12
expensive 20:10
explained 18:8
explore 32:22
expressed 27:3
extend 33:23
extent 31:14 35:18
extreme 28:13

**f**

f 1:15 5:10 6:25
  37:1
fa 19:5
fact 9:16 17:20
  28:15 29:4
factors 13:14
facts 13:2 14:17
  29:19
faith 13:22 18:12,13
  18:17
far 13:7 14:17
  15:23
fay 5:1
feasibility 12:19
  19:4 27:4 28:16
  29:19 31:15,17,19
feasible 30:2
federal 10:5
fights 25:12
file 22:5
filed 8:13 17:2
files 17:13 18:9
  20:12
filter 10:18 20:4
filtered 12:9
finally 11:13 24:1
  27:11

financing 19:9
find 12:13 22:1
fine 5:2
firm 34:14
firms 22:25
first 3:20 11:18
  12:1 14:14 21:5
  22:3 26:1,24 27:13
  28:10
fit 35:13
five 16:1 24:5
flew 21:21
focus 12:18
focused 10:24 13:12
  14:2
foerster 22:21
foregoing 37:3
foremost 12:1
formal 17:18,19
  18:2
forth 21:21 24:8,21
forward 9:11 24:16
  30:24
found 15:12
four 11:20
frankly 21:19 33:15
fraser 5:3
friday 8:20 17:21
friedman 5:4
front 34:22
fsb 4:2
full 25:14,14,21,25
  28:15 30:3 32:15
fund 4:2
fundamental 29:19
funding 31:9
further 33:25
future 1:4

**g**

g 8:1
gadsen 35:10
garrison 3:19
gary 5:14
gather 23:4
gee 19:13,15
generally 31:24

genesis 21:14
getting 23:21 25:11
  25:25 31:19 33:5,8
gilstrap 5:5
give 15:20 17:21
  21:7 33:16
given 10:7,8 15:15
  22:25 27:6
gladly 27:15
glueckstein 3:6 8:13
  8:17,18 16:17 17:7
  17:24 19:2 22:17
  26:6 27:3 28:6,7,8
glueckstein's 20:8
go 14:17,25 21:22
  22:23 23:4 33:1
  35:18
goes 9:16 28:19,22
going 9:7 10:12
  15:14 16:25 17:8,10
  18:19,23 19:6,7,9
  19:10,19 20:4,10,11
  20:15,17 22:16,18
  22:25 23:21 24:7,8
  24:13,14,18,21,22
  25:2,5,5,6,13 27:14
  28:15,16 29:22,24
  29:25 30:2,3 31:7,9
  31:10,13 32:19
  33:12,16,20 34:2,11
  35:5
goldman 5:6
good 8:2 13:22
  18:12,13,17 30:22
  34:11 35:25
goody 21:10
governed 19:10
grace 5:7
granted 11:9,13
  29:21
granting 12:23
great 12:13
ground 17:9
group 3:9 12:2,5,6
  12:7 13:6,18 14:7,8
  15:19 24:11,15,17
  27:22 28:1 29:16,20

  30:10,14
groups 9:25 20:5
  30:14
guidance 30:24

**h**

h 4:15
happened 24:11
happens 29:4
hard 25:12
harold 5:15
harris 5:8
hear 28:5 34:14
heard 13:13,13
  15:18 26:6 31:2
  34:8 35:18
hearing 2:1 12:19
  13:14 28:18 31:8
  34:2 35:2
hearings 35:21
heart 9:17
heath 5:9
hebbein 5:10
held 14:5
helm 11:15
herring 5:11
hide 25:10
highlight 26:13
highly 9:21,21
  11:10 13:1
history 15:5,9 28:24
  29:11,12
hoc 3:9,20 9:25 12:7
  14:7 33:19
hogan 5:12
hold 21:15 35:20
holders 3:10
holdings 1:4
hollow 10:8
hon 1:16
honor 8:17,19 9:14
  11:24 13:3 14:10,16
  15:17 16:7,9,20
  19:12,22 20:25
  21:24 26:3,7,10,21
  26:23 27:19,21 28:2
  28:7,10 30:12,25
  31:2 34:6,9,19,21

35:22,24 36:2
**honor's** 18:24
**hope** 28:1
**houlihan** 24:23,24
**howard** 4:17
**huge** 34:3
**hundreds** 20:15
 22:10 24:4
**hunt** 9:25 11:15
 15:10
**hwangpo** 5:13
**hyde** 2:25 37:3,8

**i**

**idea** 21:23
**identified** 32:23
**identify** 8:11
**imagine** 21:24
 23:11
**impairment** 18:10
 27:4
**impeded** 9:10
**importance** 10:14
**important** 9:5
 11:24 16:8 33:7
**importantly** 8:25
 10:18 11:18 22:23
**imposed** 28:20
**inboxes** 23:22
**incentive** 25:17,18
**including** 10:18
 11:1,21 12:4 16:10
**increase** 23:24
 30:20
**increasing** 28:12,12
**incredible** 33:12
**incredibly** 9:3 16:7
**indiscernible** 10:10
 10:15 11:10,11
 12:11 13:1,11,15,16
 14:3,22 16:1,3 21:3
 21:5,7,16 25:9
**individual** 10:1,2
 15:23 18:22 20:5
 27:2
**informal** 18:2
**information** 8:23
 28:22

**initiated** 17:17
**inoculate** 24:5
**inquiry** 29:24
**ins** 22:12
**instance** 23:2
**intent** 19:11 29:25
 31:6 32:1
**intercede** 25:16
**interest** 24:15,17
**interested** 28:11
**interfere** 32:19
**internal** 12:2,4,5
 13:3,18,20 14:6
 16:11 29:10 30:5
 32:4 33:9,13,18
**internally** 13:5
 29:15
**intra** 13:18
**intragroup** 24:1
**investor** 9:25 11:14
 12:8 29:20 30:10
 31:6
**investors** 19:5
**involved** 16:4
**irrelevant** 19:11
 27:5 31:18,18
**irrespective** 12:24
**isolating** 17:22
**issue** 8:20 15:21
 19:2,8 20:24 24:2
 28:13 29:18 31:3,15
 31:19 32:9 34:13
 35:12
**issues** 9:6,17 10:7
 10:12 11:23,24
 12:17 16:7 21:9
 27:5 29:7 30:25
 32:2,3,22 34:15
 35:14
**it'll** 35:19

**j**

**j** 3:12 4:10 5:8,21
 6:18
**jamie** 4:25
**january** 15:3 21:22
**jason** 5:24

**jeff** 27:19
**jeffrey** 4:4 5:2 6:12
 6:14
**jhames** 5:21
**join** 26:25
**joint** 1:5 22:14 23:8
**jonas** 4:4 27:19,19
 28:3,4 34:4,7,9
**jonathan** 5:4
**jones** 4:19
**judge** 1:17 8:3
**judged** 18:19
**judgement** 18:25
**judgment** 18:21,21
**july** 14:15,18
**justin** 4:24

**k**

**k** 4:24 5:11,12 6:3
**kaplan** 5:14,15
**kate** 6:18
**keegan** 5:16
**keep** 8:8 29:25
**ken** 4:18
**key** 10:16
**keyboard** 8:9
**kimberly** 5:20
**kind** 32:20
**kinofsky** 5:19
**kinskey** 5:17
**kirkland** 3:14 26:8
**know** 8:9,13 12:6
 13:15 20:3 21:1,8
 23:1,9 24:19 25:20
 25:21 26:13,16
 30:16,17,20,21
 31:25 34:12,23
**koster** 5:18

**l**

**l** 4:4,13,20 5:14
 6:23
**laid** 17:7
**late** 21:6
**laura** 4:19
**lawson** 5:20
**lawyers** 24:25

**leading** 31:21
**leave** 15:19
**leaving** 22:4
**led** 21:23
**ledanski** 2:25 37:3
 37:8
**lee** 5:21
**left** 24:11
**legal** 24:12,17 25:1
 37:20
**lemisch** 5:22
**length** 11:7
**leslie** 1:25
**letter** 2:1 8:14 9:12
 10:25 11:18 12:2,15
 16:10 19:3 20:25
 21:4 22:16 32:6
**letters** 34:16 35:1
**level** 24:22
**lien** 3:20 22:3 26:24
 27:13
**liens** 27:20
**likelihood** 11:21
 12:20 30:2
**limit** 14:8 19:18
 33:24 35:5,9
**limitations** 10:17
**limited** 10:9 13:11
 13:19 14:1 15:6,15
 29:1
**limits** 25:22
**line** 23:12
**lines** 13:9
**list** 17:12,21
**llp** 3:3,14 4:1
**lokey** 24:23
**look** 22:22
**looking** 30:1
**lowenthal** 5:23

**m**

**m** 5:24 6:14
**madron** 5:24 35:11
**magnitude** 10:15
**man** 35:24 36:2
**marc** 6:11
**march** 15:1

maria  4:16
mark  3:17 5:10
  6:16 26:7
market  1:10
material  18:3,4
  19:17 20:21 23:3,4
  23:18 24:14,20
  25:24 30:7,17,20
materials  17:11
  20:20 27:16
matter  8:5 16:25
  25:12
matters  31:24
matthew  5:17
mcgaan  5:25
mckane  3:17 26:7,7
  26:10 29:11
mcneill  6:1
mean  24:4
meaning  19:11
mediator  21:7
meet  17:17 18:1
  24:5
meggie  5:5
member  12:5 30:13
members  9:24 10:1
  10:2,2 12:6,7 13:6
  14:8 24:11,13 27:2
merely  9:15
met  17:7
michael  4:20,21
miller  6:2
million  25:23,23,23
millions  25:6
mindful  10:21
  28:25
mineola  37:23
minor  20:1
minutes  24:6
moment  27:25
monday  35:19
money  23:17 25:11
  25:13 33:2
month  22:9
months  15:4 16:12
morgan  6:3,4

morning  9:12 11:19
  12:15 14:13,19 21:1
  26:20
morrison  22:20
moses  6:17
move  9:11 17:5 22:9
moving  17:19 30:24
murin  1:25
mute  8:8

**n**

n  3:1 8:1 37:1
names  20:5
narrow  10:7,24
  16:6 30:25 32:3
narrowed  11:23
natasha  5:13
nature  10:8 13:22
  26:19 32:11 33:7
ned  6:15
need  10:23 16:8,22
  20:1,2,2,3,3 21:8
  25:21 26:13 28:1
  31:25 33:6,8 34:8
needs  32:10
negotiated  22:7
negotiating  23:14
  27:6
negotiation  15:5
  23:19 28:24 29:11
  29:12
negotiations  11:5
  14:23 21:4,14,18
  23:7,10,13 26:17
  29:14,15
never  18:8
nfh  13:17
nighan  6:4
nip  31:7
noises  8:9
non  9:13 12:4,8
  16:22 18:9,22 19:22
  24:20 33:22
north  1:10
notably  21:9
note  3:9
noting  18:2

notion  22:17 31:5,8
notwithstanding
  19:16 20:8
november  10:13
  28:17 34:3
number  8:21 15:20
  15:21 32:3 33:3
numbers  33:15
numerous  10:16
ny  37:23

**o**

o  1:15 8:1 12:9 37:1
object  8:15
objection  8:24 18:5
  25:25 29:19
objections  25:3
  27:3
objective  29:25
objectors  26:17
obrien  6:5
obviously  24:3
occurred  23:19
  26:18
offered  14:11 23:20
  32:13
offering  30:11
official  3:4 8:19
okay  26:9 28:3
  32:25 35:9
old  37:21
operating  9:3 10:22
operative  14:14
operator  1:25
opportunity  21:17
  30:15
opposed  35:14
opt  22:12
option  11:9,12
  12:22,23 29:21
  31:11
options  20:16
oral  34:11
order  17:7 34:11
ordered  33:18
original  21:2
outlined  10:25 16:9

outweighed  23:3
overwhelming
  33:15

**p**

p  3:1,1 8:1
paid  25:13,20,25
  28:15
papers  11:6
parameters  16:9
part  20:9 26:11
  28:18,18 29:24
participants  8:3
particular  12:5
  27:23,25
parties  9:4,13,15,19
  10:10,16 11:16 12:7
  13:1,8 14:3,24 15:8
  15:13,21,21 16:15
  18:9,22 19:9,19
  23:8 30:1 33:22,24
  33:25
party  13:5 16:22
  19:5,22
passing  9:10
patient  11:13
paul  3:19 5:9 26:23
  27:6
pauline  6:3
pay  30:3
pcrbs  34:23
pedone  6:6
peg  4:12
people  8:7 16:22
  20:19 22:21 23:12
  23:14 25:25
people's  23:22
percolating  34:14
perfectly  23:6
period  9:7 15:2,14
  16:12 17:14 20:13
  21:18
permit  11:4
permitted  13:17
perspective  23:11
  27:12
pertaining  11:9

**petition** 22:2,4
**phone** 19:23 30:12
  30:15 34:17 35:13
**phones** 8:8
**pick** 23:18
**picking** 23:15
**picture** 33:16
**pieces** 20:7
**place** 21:18
**plan** 2:2,4 8:22,25
  9:17,20,22 10:17
  11:5,11,11,19 12:3
  12:10,16,19,20,21
  12:23 13:21 14:10
  14:17,20,24 15:19
  16:24 17:2 18:5,13
  18:18 21:9,11,14,15
  21:24 22:2,5,7 23:8
  25:4,10,19,23 28:14
  29:5,22 30:2
**plans** 8:5
**played** 27:6
**please** 8:8 31:3
**pm** 1:14,14
**point** 12:21 20:7
  21:15 28:1,24 31:17
  31:20,23 33:6 34:8
  34:13 35:5
**pointed** 21:4
**points** 15:9 16:10
  26:25 28:9
**position** 14:12,14
  15:18 26:12 32:5
  33:21
**possibility** 29:9
**possible** 34:1,1,18
**posturing** 13:8
**potential** 8:24
**potentially** 12:11
**pre** 11:2 22:2,4
**preclude** 14:9
**predate** 14:17
**predated** 14:25
**prefer** 35:16
**preferably** 35:12
**prejudice** 23:3

**preparation** 30:22
**prepare** 9:9
**present** 4:6 22:18
**presentation** 8:16
**presented** 27:13
**pretty** 35:13
**previously** 14:5
**primack** 6:7
**principals** 16:2
**prior** 14:20
**privileged** 20:20
  23:1 24:20 27:9,9
  29:17
**privileges** 22:19
**proactive** 17:4
**probably** 23:17,18
  33:14
**probative** 13:22
  23:2 24:8 25:2
  31:11 32:11
**problem** 19:21
**probus** 12:4,8
**procedure** 10:5
**proceed** 34:16
**proceedings** 37:4
**process** 10:23 14:4
  17:5,20,22 19:6
  29:4
**produce** 9:5 11:20
  12:3,13 14:11 17:8
  17:16 19:23 25:17
**produced** 12:8
**producing** 17:11
  20:20 23:23
**product** 24:18 25:1
**production** 12:12
  14:2 16:11 20:14
  21:20 25:7 30:21
  33:14,18
**professionals** 10:20
**prohibitive** 18:14
  18:23 19:6,13,14,20
**proponent** 11:19
**proponents** 8:22
  10:18 12:3,10,16
  14:11 15:20 16:25

**proposal** 11:22
  17:23 18:18 33:2
**propose** 23:25
**proposed** 9:4 13:22
  18:17 20:24 22:7
**proposing** 18:13
**proskauer** 34:14
  35:11
**provide** 11:2 25:24
**provided** 15:16
  19:2 20:22 26:16
**provides** 9:22
**providing** 22:6
  27:16
**provision** 11:7
  28:19
**psa** 9:13,16 16:22
  18:9,22 19:5,18,22
  33:22 35:6,19
**puc** 19:6,7
**pull** 20:17 22:19,23
**pulling** 20:10,14
**purchase** 11:9,12
  12:23
**purposes** 16:21
**pushing** 24:16
**put** 13:23 21:11
  31:10

**q**

**quarter** 26:1
**quereshi** 6:8
**question** 12:1,25
  18:12 23:15 28:16
  28:22 29:24 30:1,9
  32:25 33:10
**question's** 31:13
**questions** 16:17
  26:3
**quickly** 34:1,18
**quite** 8:6 21:19

**r**

**r** 1:15 3:1 5:2 6:1,24
  8:1 37:1
**rachael** 6:9
**raised** 21:9

**raising** 35:4
**range** 21:18 23:5
**ranges** 20:24
**raymond** 5:22
**read** 14:13
**ready** 19:24 20:2
**real** 18:5
**really** 16:6 19:19
  22:10 23:7,21 25:24
  35:5,9
**reasonable** 9:7,7
  16:1 32:13
**reasonableness**
  19:1
**rebecca** 4:14
**received** 10:19
  12:22,24
**record** 28:8 37:4
**recoveries** 25:8
**redact** 25:2
**reduce** 10:17
**referred** 11:6 12:2
**refers** 9:12 28:14
**reflect** 25:1
**reflecting** 24:17
  27:9
**refused** 12:3
**refusing** 9:5
**regard** 33:9
**regarding** 2:1 19:5
**regardless** 25:11
**reit** 2:4 22:2
**related** 8:5 12:11
  20:18
**releases** 11:3 15:12
**relevance** 12:14
  17:1 18:3 27:1 32:1
  33:11
**relevant** 8:23 9:5
  12:16 13:2,5 14:16
  15:6,7,8 18:7,10
  20:12 21:23 27:16
  28:24 29:2,9
**remain** 10:8
**remaining** 11:24
**represented** 11:8

| | | | |
|---|---|---|---|
| **request** 8:4 15:25 33:22,23 34:23 | **ruling** 8:4 32:1,20 34:12 | 20:11 25:22 35:12 | **somewhat** 16:6 27:22 |
| **requested** 1:6 15:14 32:15 | **run** 17:13 20:2 | **seth** 5:6 | **sontchi** 1:16 8:3 |
| **requesting** 15:17 | **s** | **settlement** 2:3,4 8:6 8:25 9:17,21 10:3 | **sonya** 2:25 37:3,8 |
| **requests** 10:24 30:21 | **s** 1:16 3:1 6:12,15 8:1 | 10:14 11:1,3,4 13:21 15:11,12 | **sophisticated** 10:9 20:9 |
| **required** 32:9 33:20 | **sabin** 6:12 | 18:19,23 21:11 25:4 28:21 32:23 | **sought** 9:15 23:3 28:19,22 31:16 |
| **requirements** 27:17 | **sake** 28:12 | **settlements** 22:12 | 32:12,18 33:7,11,24 |
| **requires** 30:22 | **savings** 4:2 | **settling** 18:25 | **space** 34:4 |
| **reservations** 19:13 19:15 | **saying** 16:24 | **share** 27:1 | **speak** 8:12 27:23 |
| **reserve** 27:22,25 | **says** 24:14 | **shared** 18:4 | **speaking** 8:9 |
| **resolution** 16:8 | **schartz** 6:13 | **sheer** 15:21 | **special** 35:12 |
| **respect** 13:25 14:10 15:11 18:17 19:4,8 | **schedule** 9:3 22:24 23:1 29:2 30:23 | **sheet** 14:13 20:13 20:16 21:2 | **specifically** 13:19 |
| 21:8 22:6 23:5 24:12 27:11 29:7,10 | 34:25 35:21 | **sheets** 21:20 22:11 | **specifics** 29:7 |
| **respectfully** 12:17 | **scheduled** 35:15 | **sheppard** 6:16 | **spend** 25:13 33:2 |
| **respond** 28:10 | **scheduling** 17:6 | **shore** 3:12 14:12 16:19,20 26:3,5,25 | **spent** 25:11 |
| **respondents** 26:11 | **schlerf** 6:14 | 28:9 29:8 30:9 31:2 | **spoke** 29:11 |
| **responses** 17:18,19 | **schodek** 6:15 | 31:5 32:5 34:6,19 | **spoken** 11:7 |
| **responsive** 24:20 27:16 | **scope** 10:9 13:24 14:1 15:15 30:25 | 34:21,21 35:8,22 | **sponsors** 2:2 9:20 11:12 12:21,24 |
| **responsiveness** 17:15 | 32:10,21,25 33:3 | **shore's** 9:11 12:15 27:21 29:20 30:14 | **stacey** 4:23 |
| **results** 29:6 | **scott** 6:23 | 33:21 | **stand** 31:10 |
| **return** 11:8 12:25 | **search** 14:2 15:6 19:24 20:12,16,17 | **short** 28:14 | **start** 8:16 16:24 17:22 20:3 22:8 |
| **review** 17:15 30:22 | **searches** 20:2 | **show** 21:17 | 23:6,7 30:1 34:2 |
| **reviews** 24:22 | **searching** 13:25 | **side** 2:2 8:14,15,19 8:22 10:1 11:9 | **started** 21:14,25 |
| **richard** 6:6 | **second** 14:10 18:1 21:5 27:20 35:17,18 | 15:10 16:18 18:11 | **starting** 34:4 |
| **rifkind** 3:19 | **section** 21:13 30:17 | 21:2 27:20 28:20 | **stated** 14:13 25:3 |
| **right** 23:15,17 24:7 28:5 31:6,12,16,23 | **see** 21:1 22:21,22 | 29:3,3,6 31:8 32:16 | **statement** 20:8 35:6 35:7,19 |
| 34:10 35:25 | **seek** 11:8,25 | 32:22 33:1,3,23 | **states** 1:1,9 |
| **rights** 31:12,13 | **seeking** 18:3 19:17 | **signatories** 2:3 9:16 9:20 10:3 31:9 | **stephen** 6:1,2 |
| **ring** 10:8 | **seen** 21:19 23:10 | **signed** 8:13 18:22 | **steven** 4:15 |
| **ringer** 6:9 | **send** 22:23 | **significantly** 11:23 | **stickles** 6:18 |
| **road** 31:20 37:21 | **sends** 22:21 | **silverman** 6:17 | **street** 1:10 |
| **robert** 4:10 | **sent** 22:17 | **similarly** 15:17 | **strong** 32:17 |
| **rogers** 6:10 | **separate** 23:13,14 | **simon** 5:3 | **structure** 11:11 |
| **roitman** 6:11 | **separately** 35:21 | **simply** 13:10 27:12 30:15 | **stuff** 24:8 |
| **role** 27:6 | **september** 1:13 37:25 | **situation** 27:23 33:17 | **subject** 10:4,4 12:1 13:4 15:23 17:1 |
| **rudnick** 4:1 27:20 | **series** 11:16 | **society** 4:2 | 18:20 28:19 30:7 31:24 |
| **rule** 10:5 18:20 | **served** 17:18,18 34:24,24 | **solutions** 37:20 | **subjective** 13:14 19:10 31:5 32:1 |
| **rules** 17:9 18:6,6,6 27:24 | **service** 17:12 | | **subjects** 10:24 11:20 12:12 13:11 |
| | **set** 9:8 10:24 13:22 15:5 16:11 17:8 | | |

13:19
**submit**  10:8 14:16
  16:8
**submitted**  10:6 13:3
  14:14,18 20:25
**substantial**  14:19
**substantially**  24:14
**sufficient**  32:21
  34:12
**suggested**  12:16
**suggestion**  28:11
**suggests**  12:15
**suite**  37:22
**sullivan**  3:3 8:18
  23:9 28:8
**support**  26:11
  29:11
**supportive**  11:16
  27:21
**sure**  20:20

**t**

**t**  2:2 8:22 10:1 11:9
  21:2 25:8 27:20
  29:3 37:1,1
**table**  8:16
**tailored**  15:7
**take**  15:19 19:24
  21:15 28:13 30:13
  30:16 32:10 35:1
**taken**  14:13 26:12
  33:21
**talk**  20:1 29:22 35:6
**talking**  10:11 15:10
  30:10,19
**targets**  9:12
**tceh**  3:9,20 22:3
  26:24
**teams**  23:14
**tease**  24:24
**telephone**  8:7
**telephonically**  3:6
  3:12,17,23 4:4,6
**ten**  17:24
**term**  20:13 21:2,20
  22:11
**terms**  11:1,3 14:2
  14:13,14,18,20,23

15:6,12 17:12 19:16
  19:25 20:16,16 21:6
  23:14 28:20,23
  29:15 31:14
**thank**  8:17,19 16:16
  16:19,20 26:2,5,20
  26:22 27:17 28:3,4
  28:7 30:25 34:6,9
  35:4,22,24 36:2
**thing**  25:6
**things**  8:9 20:1,4,16
  20:18 21:10,20
  22:19
**think**  15:14 17:18
  18:22 20:1 22:8
  23:5 29:8 30:19
  31:25 32:20 33:2,6
  33:10,19 34:11
**third**  17:2 21:8,24
  22:5,6 23:7 25:4
**thirty**  17:24
**thomas**  6:5,20
**thought**  22:15
**thousands**  22:10,24
**three**  11:24 16:6,10
  20:7 23:18 24:22
  32:4
**threefold**  23:25
**thursday**  35:2,6
**time**  8:11,20 9:7
  10:21 11:18 13:14
  20:10 22:25 28:21
  30:22 31:6,21,21
  32:8 34:4 35:15
**timeframe**  27:11
**times**  35:12,20
**timing**  32:3 33:4
**tiwana**  6:19
**today**  16:8 19:3
  24:12 29:8 31:6
  32:7 35:11
**top**  26:15
**topic**  15:6
**topics**  14:3 15:7,8
  27:3 29:1
**transaction**  10:10
  16:5 19:9 27:12

**transactions**  11:17
  13:15,23
**transcribed**  2:25
**transcript**  8:12 37:4
**trial**  9:10
**true**  37:4
**truly**  26:15
**trustees**  34:23
**try**  25:18
**trying**  34:25
**turn**  8:15 16:18
  26:6
**two**  11:6 12:7 15:18
  16:1 23:18 24:22
**types**  14:1

**u**

**u.s.**  1:17
**ucc**  21:6
**ultimately**  22:7
  31:21
**unaffiliated**  12:7
**understood**  32:2
**undue**  13:25
**unidentified**  25:19
**unique**  27:22
**united**  1:1,9
**unnecessarily**  33:4
  33:4
**unsecured**  3:4,9
  25:8,9
**unusual**  9:21
**upcoming**  9:10
**upset**  32:20
**urge**  33:25
**usual**  8:6

**v**

**valuable**  35:14
**value**  23:2
**van**  7:1
**veritext**  37:20
**view**  13:1 14:9
  25:25 27:4 29:9,25
**views**  18:14,15,15

**w**

**w**  5:16,17
**wait**  34:14
**walper**  6:20
**want**  17:4 20:17
  21:3,22 22:22 27:23
  28:1 35:5,9
**wanted**  17:3 26:13
  26:20
**wanting**  22:1
**ward**  4:8 6:21
**waste**  31:21
**way**  18:10 20:11
  32:14 34:16
**we've**  9:6 13:3,12
  13:13 15:2,18 17:4
  17:19 18:1 22:9
  23:20 24:11 30:17
  32:25
**weeks**  8:21 23:6
**weigh**  32:11
**weisfelner**  6:22
**weiss**  3:19 26:24
  27:6
**welcome**  11:21
  27:18 31:1 34:7,10
  34:18,20 35:23
**went**  17:6
**wharton**  3:19
**white**  3:8 22:21
  24:13,23
**wholly**  27:5
**wide**  21:18
**william**  4:11
**willing**  19:24
**wilmington**  1:11
  4:2
**wish**  16:15
**word**  20:13
**work**  24:18 25:1
  34:25
**working**  20:19,19
  30:23
**written**  22:22

| y | |
|---|---|
| **yeah** | 34:19 35:4 |
| **year** | 26:1 |
| **years** | 15:4 |

| z | |
|---|---|
| **zone** | 19:1 |