IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 4144, 4886, 5246, 5347, 5352,** |
| | ) | **5354, 5355, 5357, 5358, 5360,** |
| | ) | **5361, 5362, 5872** |

## DEBTORS' OMNIBUS REPLY TO
## OBJECTIONS TO DISCLOSURE STATEMENT MOTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this reply (this "Reply") to the objections[2] filed to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 4144] (the "Disclosure Statement Motion").[3] In support of this Reply and in further support of approval of

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The twelve objections (the "Objections" and, the objecting parties, the "Objectors") and the Debtors' specific responses to each are summarized in more detail on **Exhibit A** attached hereto (the "Objection Chart"). The Debtors' responses are incorporated to this Reply as though fully set forth herein.

[3] On August 10, 2015, the Debtors filed the *Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5246] (the "Disclosure Statement") and the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5244] (the "Plan"). The Debtors intend to file a further Amended Disclosure Statement and Plan on

the Disclosure Statement and entry of the Order (as defined in the Disclosure Statement Motion), the Debtors respectfully state as follows.

**Preliminary Statement**

1. With over $42 billion in liabilities, these chapter 11 cases are among the biggest and most complex ever. For more than a year and a half, the Debtors have been working with their key stakeholders to build consensus for a value-maximizing plan of reorganization. And, over the course of the last several months, the Debtors engaged in extensive plan negotiations with creditors and parties in interest from both the E-side and the T-side. These negotiations culminated on August 10, 2015, with the Debtors finalizing a Plan and related merger transaction that has the broad support of nearly all TCEH creditors and pays in full all allowed EFH and EFIH claims. This deal substantially speeds up Plan confirmation and emergence while also saving the Debtors' estates from the payment of significant, ongoing professionals' fees.

2. The Debtors' comprehensive, 200-plus page Disclosure Statement provides significant and adequate disclosure regarding the Plan and related merger transaction. Further, the Disclosure Statement provides adequate information for holders of claims and interests entitled to vote on the Plan to make an informed judgment on whether to accept or reject the Plan. Therefore, the Disclosure Statement on its face satisfies the requirements of section 1125 of the Bankruptcy Code.

3. Twelve parties objected to the Disclosure Statement. Seven of these objections are from parties who are unimpaired under the Plan and, therefore, will not vote on the Plan. Even though the Debtors question whether these parties have standing to object to the Disclosure Statement, the Debtors have worked to resolve all of the Objections they received to the

---

September 17, 2015. Capitalized terms used but not defined herein shall have the meanings ascribed to them as set forth in the Disclosure Statement Motion, the Disclosure Statement, or the Plan, as applicable.

Disclosure Statement in a consensual manner. To date, and as reflected in the attached Objection Chart, three of the Objections have been resolved with additional disclosures or modifications to the Disclosure Statement Order and related exhibits. The Debtors continue to discuss potential resolution with the other Objections.[4]

4. The remaining, unresolved Objections can be categorized into two categories: (a) Objections that the Debtors have proposed additional disclosure language that has been rejected as insufficient; or (b) confirmation objections that the Debtors assert should be considered at the hearing concerning confirmation of the Plan (the "Confirmation Hearing"). For the reasons discussed below, the Debtors request that the Court overrule these remaining Objections and approve the revised Disclosure Statement and solicitation materials.

## Reply

I. **The Disclosure Statement Meets the Applicable Standards for Approval Under Section 1125 of the Bankruptcy Code.**

5. As set forth in the Disclosure Statement Motion, the Debtors believe that they have included in the Disclosure Statement all the information required for disclosure pursuant to section 1125 of the Bankruptcy Code. Moreover, in resolving the Objections to the Disclosure Statement Motion, the Debtors believe that that they have gone above and beyond section 1125's disclosure requirements.

---

[4] The following three objections have been resolved: *Objection of Knife River Corporation - South to the Proposed Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4886]; *United States Objection to the Disclosure Statement for the Third Amended Plan* [D.I. 5357]; *Objection of the Acting United States Trustee to the Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5872].

**A. The Unresolved Objections to the Adequacy of the Disclosure Statement Should be Overruled.**

6. Since the filing of the Disclosure Statement and the Objections thereto, the Debtors have actively engaged their stakeholders in discussions to resolve their concerns regarding the adequacy of disclosure in the Disclosure Statement. As set forth in the Disclosure Statement, and more fully discussed in the Objection Chart, the Debtors have made significant progress providing enhanced disclosure with respect to the following material issues:

- providing additional disclosures regarding the Plan treatment of EFH and EFIH postpetition interest, makewhole, and fee claims;

- clarifying the Plan's treatment of environmental law obligations; and

- explaining the treatment of the Debtors' qualified pension plans under the Plan and merger transaction.

7. As set forth in detail in the Objection Chart, the Debtors have revised the Disclosure Statement to address certain of the disclosure-related Objections and have incorporated language from the objecting party where applicable. The Debtors will continue to work with these parties up to the time of the hearing; the Debtors believe, however, that certain of the certain disclosure-related Objections will not be able to be addressed through additional disclosure.

**1. The EFH Committee's Objection Should be Overruled.**

8. The official committee of unsecured creditors of EFH, EFIH, EFIH Finance Inc., and EECI, Inc. (the "EFH Committee") filed an objection to the Disclosure Statement.[5] The EFH Committee asserts a number of objections, including that because the Plan is speculative

---

[5] *Objection of the EFH Official Committee to the Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 5356] (the "EFH Official Committee Objection").

and a waste of resources, the Disclosure Statement Hearing should be postponed until the Debtors have proposed an "economic transaction of substance;"[6] the TCEH Debtors should bear the costs of soliciting the Plan;[7] and that the Disclosure Statement Hearing should not proceed prior to the plan support agreement ("PSA") being considered.[8] Included in the EFH Committee Objection is the EFH Committee's statement that "[s]ince no E-side creditor will be solicited . . . the EFH Committee has no reason to comment on the adequacy of disclosure"[9]—a statement the Debtors agree with.

9. Contrary to the EFH Committee's assertion, the Debtors believe that the Plan, which pays all of the EFH Committee's constituents in full, benefits all of the Debtors' estates. The Debtors believe that this is a value-maximizing Plan and that the cost of Plan solicitation is appropriately shared by all of the Debtors' estates. The Debtors believe the EFH Committee's objections, to the extent they remain extant, should be overruled.[10]

    **2.**    **The EFH Indenture Trustee Lacks Standing to Object Because Its Constituents Are Unimpaired and Not Entitled to Vote on the Plan.**

10. American Stock Transfer & Trust Company, LLC, the indenture trustee for EFH notes (the "EFH Indenture Trustee"), like the EFH Committee, represents holders of claims that are unimpaired and not entitled to vote on the Plan. Nevertheless, the EFH Indenture Trustee

---

[6] *Id.*, ¶, 3, page 3. The Debtors assert that this objection raises issues related to Plan confirmation, is not appropriate in the context of the Disclosure Statement, and should not be heard at this time.

[7] *Id.*, ¶, 1, page 4.

[8] *Id.*, ¶, 2, page 3. This Debtors believe that this objection is moot as the Court stated during the hearing held on August 18, 2015 that the PSA will be heard prior to the Disclosure Statement on September 17, 2015. *See* Hr'g Tr. at [39:7-39:14] (Bankr. D. Del. August 18, 2015) ("I do think we need to deal with the PSA first and the disclosure statement second . . . So just for internal scheduling that's how we'll proceed.").

[9] EFH Official Committee Objection, ¶, 1, page 2.

[10] The EFH Committee proposed an insert to the Disclosure Statement. The Debtors included that insert in the preamble of the Disclosure Statement.

filed an objection to the Disclosure Statement.[11] As stated in the Objection Chart, the Debtors have added additional disclosure to address the majority of the EFH Indenture Trustee's objections. The Debtors believe that the EFH Indenture Trustee's remaining objections will not be resolved through additional disclosure and should be overruled by the Court.

11. The EFH Indenture Trustee's objection is based on the fundamentally flawed premise that the EFH notes claims are actually impaired and the holders of such claims are entitled to vote on the Plan. The EFH Indenture Trustee's constituents are, on the face of the Plan, unimpaired and not entitled to vote. The Debtors, of course, bear the burden to demonstrating at confirmation that the E-side creditors are in fact unimpaired. But this does not require that the Debtors solicit votes from such unimpaired creditors. Accordingly, the Debtors assert that the EFH Indenture Trustee lacks standing to comment on the Disclosure Statement.[12] Nevertheless, the Debtors address each of the EFH Indenture Trustee's remaining objections.

12. The EFH Indenture Trustee asserts that the Disclosure Statement is confusing and ambiguous, particularly for smaller claim holders who are not represented by counsel, and thus should be revised to provide complete and accurate disclosures tailored to these parties.[13] The EFH Indenture Trustee also asserts that the Court must evaluate the Disclosure Statement independently for each Debtor. Thus, the Debtors must provide the "voting EFH Noteholders"

---

[11] *Objection of EFH Indenture Trustee to Approval of Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al. [D.I. 5355] (the "EFH Indenture Trustee Objection").

[12] *See, e.g., In re Adana Mortg. Bankers, Inc.*, 14 B.R. 29, 30 (Bankr. N.D. Ga. 1981) ("[Creditors] have standing to object to the Disclosure Statement only as to their class and may not object to the adequacy of the Disclosure Statement as it may affect another class of creditors"); *In re Middle Plantation of Williamsburg, Inc.*, 47 B.R. 884, 891 (E.D. Va. 1984) ("Holders of impaired claims who have been induced to vote in favor of a plan are the only ones who may raise the issue of the adequacy of the Disclosure Statements."); *In re B. Cohen & Sons Caterers, Inc.*, 124 B.R. 642, 646-47 (E.D. Pa. 1991) ("Creditors whose rights are unimpaired under the plan and therefore have no right to vote on the plan . . . lack standing to object to the chapter 11 confirmation process.")

[13] *EFH Indenture Trustee Objection,* ¶ 22.

with adequate information to determine if the Plan is in the best interests of holders of EFH debt.[14] The Disclosure Statement is neither confusing nor ambiguous and additional disclosure or revisions to the Disclosure Statement will not benefit any party in interest, even smaller claim holders not represented by counsel. Further, the Disclosure Statement provides adequate information of the respective Debtors for all holders of claims and interests entitled to vote on the Plan. Moreover, the EFH Indenture Trustee offered **zero** language that would, in its mind, address these "issues," beyond what is included in the Disclosure Statement. The Court should reject the EFH Indenture Trustee's request for additional disclosure related to the unimpaired E-side claims.

13.   The Court should likewise reject the EFH Indenture Trustee's request for an EFH-specific liquidation analysis.[15] Such a liquidation analysis would only be relevant to demonstrating that the Plan satisfies the best interest of creditors test under section 1129(a)(7) of the Bankruptcy Code. That section of the Bankruptcy Code, however, is by its own terms inapplicable to the E-side creditors who are unimpaired and not entitled to vote under the Plan. *See* 11 U.S.C. § 1129(a)(7) ("[w]ith respect to each **impaired class of claims or interests** . . ."). This makes complete sense given that the E-side creditors are receiving a 100 percent recovery under the Plan on account of their allowed claims. It is not possible for a creditor receiving a 100 percent recovery to do better in a hypothetical chapter 7 liquidation because a creditor cannot receive more than a 100 percent recovery. As such, an EFH-specific liquidation analysis is unnecessary.

---

[14] *Id.*, ¶, 17, 22.

[15] *Id.*, ¶, 30.

14. Finally, the Court should deny the EFH Indenture Trustee's request to continue the Disclosure Statement Hearing.[16] Even though the Debtors filed over 1,800 pages of the Plan, Disclosure Statement, and supporting transaction documents,[17] the EFH Indenture Trustee demands more, arguing that all Plan documents and related proposed forms of order must be filed before the Disclosure Statement can be approved. This is inconsistent with the requirements of section 1125 of the Bankruptcy Code. Moreover, the EFH Indenture Trustee has not identified a single additional document that would be necessary for creditors who are entitled to vote on the Plan to evaluate whether to vote to accept or reject the Plan. Therefore, the Debtors request that the Court overrule the remaining EFH Indenture Trustee's request to delay the Disclosure Statement Hearing.

15. In sum, the Debtors believe that the Disclosure Statement, in addition to the supplemental disclosures incorporated therein and referenced in the Objection Chart, resolves all of the properly-brought disclosure-related Objections and satisfies the Debtors' burden under section 1125 of the Bankruptcy Code to provide creditors entitled to vote on the Plan with "adequate information." Accordingly, the Debtors respectfully request that the Court overrule the EFH Committee Objection and EFH Indenture Trustee Objection and find that the Disclosure Statement provides adequate information.

## II. The Plan Is Far from "Patently Unconfirmable" Under Any of the Bases Asserted by the Objectors.

16. The Objectors also raise confirmation issues in addition to their objections to the Disclosure Statement. In general, it is not appropriate to address confirmation issues at a disclosure statement hearing. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir.

---

[16] *Id.*, ¶ 2, Section V.

[17] *See Id.*, ¶ 1.

2012). The limited exception to this general rule is "where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." *Id.* at 154.

17. The Objectors generally do not purport to assert that the confirmation issues they raise make the Plan "patently unconfirmable," and thus these issues need not be addressed at this stage. Regardless, none of these issues come close to rendering the Plan patently unconfirmable.

### A. The Plan Properly Classifies Claims Against EFH Corp. and EFIH as Unimpaired.

#### 1. Disallowance of, or Objections to, Makewhole Amounts or Postpetition Interest Do Not Render Claims Impaired.

18. Contrary to the assertions of UMB Bank, N.A., the indenture trustee for the EFIH senior toggle notes (the "EFIH PIK Trustee"),[18] and the EFH Indenture Trustee, all EFH and EFIH claims are unimpaired under the Plan. Given that the Plan would repay the allowed amount of these claims in full in cash, Objections in this vein face an uphill battle from the outset.

19. The EFIH PIK Trustee and EFH Indenture Trustee assert that their claims are impaired because the Plan provides for postpetition interest on the claims at the federal judgment rate rather than the contract rate and does not provide for payment of professional fees. The problem with this line of argument is that it has been addressed and outright rejected by the Third Circuit. In *In re PPI Enterprises*, the Third Circuit stated that "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment; we must examine whether the plan itself is a source of limitation on a creditor's legal, equitable, or contractual rights." 324 F.3d 197, 204 (3d Cir. 2003). In that case, a creditor asserted that its claims were impaired due to the

---

[18] *See Objection of UMB Bank, N.A. in Connection with the Disclosure Statement for Debtors' Third Amended Joint Chapter 11 Plan of Reorganization* [D.I. 5358] (the "EFIH PIK Trustee Objection").

landlord-claim cap in section 502(b) of the Bankruptcy Code. But the court held that "where § 502(b)(6) alters a creditor's nonbankruptcy claim, there is no alteration of the claimant's legal, equitable, and contractual rights for the purposes of impairment under § 1124(1)." *Id.*; *see also In re W.R. Grace & Co.*, 475 B.R. 34, 161 (D. Del. 2012) (confirming that the *PPI Enterprises* holding also applies to section 502(b)(2)'s prohibition on allowance of unmatured interest on unsecured debt).

20. Here, the limitations on the amounts of the EFH and EFIH note claims are by operation of the Bankruptcy Code. To that end, the Debtors have objected to or otherwise challenged, or will object to or otherwise challenge, all disputed amounts under the EFH and EFIH note claims that are impermissible under the Bankruptcy Code. The Objectors' impairment argument thus fails as a matter of law under Third Circuit precedent. To address these parties' disclosure related Objections, the Debtors have revised the Disclosure Statement to address in greater detail the treatment of the EFH and EFIH makewhole, postpetition interest, and fee claims and the postpetition interest reserve.

### 2. Pending or Anticipated Appeals Do Not Render Claims Impaired.

21. Delaware Trust Company (the "EFIH First Lien Trustee")[19] and Computershare Trust Company, N.A. (the "EFIH Second Lien Trustee")[20] assert that their claims are impaired unless the Plan provides for payment of amounts hypothetically allowed on appeal after the Plan's effective date. This is not the law.

22. A claim is unimpaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."

---

[19] *Limited Objection of Delaware Trust Company to Disclosure Statement for the Third Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5354].

[20] *EFIH Second Lien Indenture Trustee's Objection to Debtor's Disclosure Statement* [D.I. 5362].

11 U.S.C. § 1124(1). But the situation that the trustees complain of—that the Court's orders will take effect unless stayed—is the status quo, not a modification of rights.

23. Absent a stay, a bankruptcy court order disallowing a claim becomes effective immediately, and the debtor need not pay the disallowed claim when the plan becomes effective. *See In re Whatley*, 155 B.R. 775, 781 (Bankr. D. Colo. 1993), *aff'd*, 169 B.R. 698 (D. Colo. 1994), *aff'd*, 54 F.3d 788 (10th Cir. 1995). A party that disagrees with that result has the burden of demonstrating that it is entitled to the extraordinary remedy of a stay pending appeal. *See, e.g., In re W.R. Grace & Co.*, 475 B.R. 34, 220 (D. Del. 2012).

24. The EFIH First Lien and Second Lien Trustees' argument is essentially that, unless the plan addresses a hypothetical result on appeal, the plan impairs their appellate rights. But the trustees do not have an existing right to have the Plan or the Court preemptively fashion an appellate remedy, and they cite no authority to the contrary. This is because "neither the Bankruptcy Code nor tenets of due process require that a reorganized company in effect bond an appeal by a losing claimant." *In re Chateaugay Corp.*, 10 F.3d 944, 961 (2d Cir. 1993).

25. Thus, the EFIH first lien and second lien note claims are likewise unimpaired notwithstanding any pending or anticipated appeals. To address these parties' disclosure related Objections, and as included in the Objection Chart, the Debtors have revised the Disclosure Statement to address the possibility of appeals of the Court's makewhole ruling and to provide more detailed disclosures regarding the treatment of makewhole, postpetition interest, and fee, expense, and indemnification claims asserted by the respective indenture trustees.

**B.  The Plan Is Feasible Because It Is Reasonably Likely to Be Successful.**

26. Parties have sought to cast doubt on the Plan's feasibility, focusing on the required regulatory approvals and the false "free-option" narrative. Neither argument is convincing.

1. **The Standard for Feasibility Is That the Plan Is Reasonably Likely to Be Successful.**

27.     Feasibility refers to the Bankruptcy Code's requirement that plan confirmation must not be "likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). Under this standard, it is well established that the success of the plan need only be "reasonably likely," not "guaranteed." *In re WR Grace & Co.*, 729 F.3d 332, 348 (3d Cir. 2013); *see also In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 801 (5th Cir. 1997) ("All the bankruptcy court must find is that the plan offer 'a reasonable probability of success.'"). Indeed, "a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility." *In re Brice Rd. Developments, L.L.C.*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008); *see also In re Washington Mut., Inc.*, 461 B.R. 200, 252 (Bankr. D. Del. 2011) (quoting "low threshold of proof" standard); *In re Trenton Ridge Investors*, LLC, 461 B.R. 440, 479 (Bankr. S.D. Ohio 2011) (same).

28.     The fact that a plan depends on regulatory approvals does not render it infeasible or change the statutory feasibility standard. To the contrary, "[i]t is not at all unusual for consummation of a Chapter 11 plan to be conditioned upon the expectation of approval by regulatory authorities, and courts have not typically held up confirmation of a plan to wait for issuance of such approvals." *In re Indianapolis Downs, LLC*, 486 B.R. 286, 298 (Bankr. D. Del. 2013). Numerous courts have approved chapter 11 plans that are conditioned on regulatory approvals, including state utility commission approvals.[21] In the regulatory context, courts

---

[21] *See, e.g., In re Lightsquared Inc.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y., Mar. 27, 2015) [D.I. 2276] (Federal Communications Commission); *In re Sorenson Commnc's, Inc.*, Case No. 14-10454 (BLS) (Bankr. D. Del., Apr. 10, 2014) [D.I. 180] (Federal Communications Commission); *In re Edison Mission Energy*, Case No. 12-49219 (JPC) (Bankr. N.D. Ill., Mar. 11, 2014) [D.I. 2206] (Federal Energy Regulatory Commission); *In re AMR Corp.*, Case No. 11-15463 (SHL) (Bankr. S.D.N.Y., Oct. 22, 2013)

consistently emphasize that the likelihood of success need only be "reasonable" to show feasibility—including the cases cited by Objectors in open court, which found the plans feasible despite post-confirmation regulatory conditions. *See id.* at 299; *In re Tribune Co.*, 464 B.R. 126, 185 (Bankr. D. Del. 2011), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011).

### 2. The Plan Is Reasonably Likely to Be Successful.

29. The Debtors will demonstrate at the confirmation hearing that the Plan is reasonably likely to be successful. As set forth above, regulatory approval conditions are common, and the Objections have not come close to showing they draw into question the Plan's reasonable likelihood of success, certainly not to a degree that would render it patently unconfirmable.

30. Certain parties have also asserted that the merger is a "free option" that renders the Plan infeasible. As discussed in greater detail in the Debtors' PSA reply, this free-option narrative is false. The Disclosure Statement has always made clear that the merger documents are subject to a substantial number of conditions and that the Debtors do not have the right to seek specific performance or money damages under the merger documents.[22]

31. But in place of a traditional remedies package, the Debtors negotiated for two critical features that disprove the free-option narrative. The first is a robust and unqualified

---

[D.I. 10367] (Federal Aviation Administration and Department of Transportation); *In re DBSD North America*, Case No. 09-13061 (REG) (Bankr. S.D.N.Y., July 5, 2011) [D.I. 1159] (Federal Communications Commission); *In re Majestic Star Casino, LLC*, Case No. 09-14136 (KG) (Bankr. D. Del., Mar 10, 2011) [D.I. 1059] (State gaming regulators); *In re Citadel Broadcasting Corp.*, Case No. 09-17442 (BRL) (Bankr. S.D.N.Y., May 19, 2010) [D.I. 369] (Federal Communications Commission); *In re Hawaiian Telecom Commcn's, Inc.*, Case No. 08-02005 (Bankr. D. Haw., Dec. 30, 2009) [D.I. 1570] (Hawaii Public Utilities Commission and the Federal Communications Commission); *In re Maxcom Telecommunicaciones, S.A.B. DE C.V.*, Case No. 13-11839 (PJW) (Bankr. D. Del., Sept. 10, 2013) [D.I. 148] (the Mexican Government under Mexican telecommunications law); *In re Adelphia Commnc's Corp.*, Case No. 02-41729 (REG) (Bankr. S.D.N.Y., Jan. 5, 2007) (Federal Trade Commission); *In re Global Crossings, Ltd.*, Case No. 02-40188 (REG) (Bankr. S.D.N.Y., Dec. 26, 2002) (Federal Communications Commission) [D.I. 2586].

[22] Disclosure Statement, Part VIII.B.9 (Aug. 10, 2015) [D.I. 5246].

fiduciary out under both the merger documents and the PSA that has no time limitation and is not subject to *any form* of breakup or topping fee.[23] The second is disarmament and drag, critical remedies that discourages a failure to close. The claims and litigation rights that the TCEH junior creditors have agreed to irrevocably waive are their "crown jewel" in these cases, and the relinquishment of that crown jewel is more valuable in this context than a market-standard reverse breakup fee. And, unlike a traditional remedies package, disarmament applies if the merger fails to close for virtually any reason, not just a breach by the purchasers.

32. Beyond this strong contractual incentive, the investor group has the motivation and financial wherewithal to close. Hunt Consolidated, Inc., for example, has been seeking to acquire Oncor for the better part of a decade. *See* James Osborne, *Hunt's Play for Oncor Gets New Life in Energy Future Bankruptcy*, The Dallas Morning News (July 23, 2015), http://bizbeatblog.dallasnews.com/2015/07/hunts-play-for-oncor-gets-new-life.html/.

33. There is, of course, risk that the merger transaction does not close, as there is with any transaction. But, in evaluating the Plan's feasibility, the Court may also take into account the safeguards that the Debtors have put in place should the merger not close. *See* 11 U.S.C. § 1129(a)(11) (contemplating that subsequent reorganization "proposed in the plan" will mitigate feasibility issues); *T-H New Orleans*, 116 F.3d at 802 (taking into account alternative proposals contemplated by the plan when evaluating feasibility); Plan, Art. X, ¶ A (contemplating that, subject to Court approval, Plan may be modified after confirmation "to effectuate the Alternative Plan"). The Debtors will demonstrate at the confirmation hearing that, together, all of these factors establish a reasonable likelihood of success.

---

[23] *See* Merger Agreement § 8.3(e)-(f); PSA §§ 4.3(c), 12.6(h).

**C.   The Other Plan Objections Likewise Do Not Come Close to Establishing that the Plan is Patently Unconfirmable.**

34.   The EFIH PIK Trustee also enumerates a list of potential plan objections. The trustee asserts only that these objections "may render the plan unconfirmable," devoting only a bullet point to each and citing no case law.[24] Thus, having failed to allege that these objections render confirmation futile as a matter of law, these are merely hypothetical confirmation objections that should not be considered at the disclosure statement stage. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012).

35.   In any event, none of them render the plan unconfirmable:

- **Third-Party Releases.** Third-party plan releases are permissible under appropriate circumstances. *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 302-03 (Bankr. D. Del. 2013). Vague and conclusory allegations to the contrary notwithstanding, the Debtors will demonstrate that the releases in the Plan are appropriate at the Confirmation Hearing.

- **Pre-Effective Date Releases.** The Plan does not contain pre-effective date releases, and objections to the settlement motion should be styled and addressed as such. Moreover, purported outrage in the face of a pre-plan settlement under Bankruptcy Rule 9019 is unconvincing.

- **"Improper" Payments.** After demanding payment of its own fees and expenses, the EFIH PIK Trustee suggests that the customary provisions for payment of fees and expenses under the Plan "appear" to be impermissible. But provisions related to payment of fees are permissible in a plan of reorganization, and the Debtors will demonstrate as much at confirmation. *See Indianapolis Downs*, 486 B.R. at 302-03.

- **Good Faith.** Under Third Circuit law, the "good faith" standard requires only that the plan be designed to "fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000). The fact that the Plan includes customary release provisions is not a basis for a good-faith objection. And, again, as explained above in the PSA Reply, and as will be demonstrated at the confirmation hearing, the "free option" narrative is false and as a result does not provide a basis to assert a lack of good faith of the proponents of the Plan.

---

[24] EFIH PIK Trustee Objection ¶ 6.

36. Likewise, the asbestos claimants' confirmation-based objections do not render the Plan patently unconfirmable. The assertion that the Plan is patently unconfirmable for its failure to provide a trust pursuant to section 524(g) of the Bankruptcy Code is unfounded and contrary to this Court's prior opinion.[25] The Asbestos Claimants assert that a plan of reorganization may only be accomplished with respect to those Debtors with potential asbestos liabilities through a section 524(g) channeling injunction, thus rending the Plan unconfirmable. As the Court opined on January 7, 2015, "[t]he formation of a trust pursuant to section 524 is permissive; furthermore, such consideration is not undertaken until confirmation of a plan of reorganization . . . in short, a channeling injunction is not required."[26] Therefore, the Debtors request that the Court overrule the Asbestos Claimants' Objection that the Plan is patently unconfirmable.

### Conclusion

37. For all the foregoing reasons, the Debtors respectfully submit that the Objections should be overruled (to the extent that the objecting parties do not acknowledge that their objections are resolved at the hearing on the Disclosure Statement Motion) and that the Disclosure Statement Motion should be approved, as the Disclosure Statement clearly satisfies the requirements of section 1125 of the Bankruptcy Code.

---

[25] *Joinder of Fenicle and Fahy to the Objections of the EFH Official Committee of Unsecured Creditors to the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Disclosure Statement,* et al. [D.I. 5361] (the "Asbestos Claimants' Objection").

[26] *Opinion,* [D.I. 3183].

Dated: September 16, 2015
Wilmington, Delaware

/s/ [signature]

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:    (302) 651-7701
Email:         collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:    (212) 446-4900
Email:         edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:    (312) 862-2200
Email:         james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession