# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

300 North LaSalle
Chicago, Illinois 60654

Brenton A. Rogers
To Call Writer Directly:
(312) 862-7119
brenton.rogers@kirkland.com

(312) 862-2000

www.kirkland.com

Facsimile:
(312) 862-2200

September 17, 2015

**By eFile**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re: *In re Energy Future Holdings Corporation, et al.*, Case No. 14-10979 (Bankr. Del.)

Dear Judge Sontchi:

In advance of today's telephonic discovery conference, the Debtors write to apprise the Court of the parties' efforts to reach agreement on the number and scheduling of fact witness depositions in accordance with the *Amended Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols In Connection with the Confirmation of Debtors' Plan of Reorganization* [D.I. 5771] (the "Scheduling Order").[1] Despite the challenges inherent in developing consensus among the many interested parties—including resolving disputes over the number and identity of witnesses and the topics of inquiry, not to mention accommodating the schedules of more than a dozen witnesses—a comprehensive proposal put forth by the Debtors has garnered considerable support from Plan supporters and objectors alike.

Indeed, regarding the Debtors' witnesses, all but two disputes have been resolved. By this letter, the Debtors also seek the Court's guidance on those remaining disputes.

*First*, both Delaware Trust Company (the "EFIH First Lien Trustee"), on behalf of holders of the EFIH first lien notes (the "EFIH First Lien Noteholders"), and Computershare Trust Company (the "EFIH Second Lien Trustee"), on behalf of holders of the EFIH second lien notes (the "EFIH Second Lien Noteholders") have served overbroad Rule 30(b)(6) notices on the Debtors, including many topics calling for legal conclusions and speculative conjecture. The Debtors will produce a witness to testify to the *facts* regarding the Plan's treatment of the EFIH

---

[1] All capitalized terms not defined in this letter have the meaning they are given in the Scheduling Order.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
September 17, 2015
Page 2

First Lien Noteholders and the EFIH Second Lien Noteholders; any remaining topics should be off limits.[2]

*Second*, certain Plan objectors have raised concerns about conducting multiple fact witness depositions on the same day. The reality of the discovery schedule and the fast approaching deadline for fact depositions necessitates such double-tracking: the simple math of scheduling more than a dozen witnesses in the span of less than ten business days means that more than one deposition *must* be completed on some days. The Debtors have worked to minimize any inconvenience associated with the deposition schedule.

The Debtors respectfully request that the Court limit the topics of inquiry in the First Lien Trustee's and Second Lien Trustee's Rule 30(b)(6) deposition notices to facts concerning the treatment of their respective claims, that the Court preclude detours into legal or speculative topics. Additionally, the Debtors respectfully request that the Court approve the dual-tracking of depositions, given the unavoidable constraints of the deposition schedule.

I. **THE PARTIES HAVE LARGELY COALESCED AROUND THE DEBTORS' COMPREHENSIVE PROPOSAL.**

Consistent with prior discussions and the Court's recent guidance, and in an effort to resolve all potential disputes regarding the number and scheduling of fact depositions in the Confirmation Proceedings, on September 16, 2015 the Debtors proposed a comprehensive schedule for all such depositions. *See* Email from B. Rogers attached as **Exhibit A**. That schedule included fourteen total deponents. Notwithstanding the ten-deposition limit imposed by the Scheduling Order on each side, the Debtors, mindful of the Court's recent guidance concerning the appropriate number of depositions, proposed to allocate twelve of the fourteen depositions to Plan objectors.[3]

The Debtors have since made concessions and coordinated revisions to the schedule in response to the reasonable requests of Plan objectors. For instance, pursuant to a request by the EFH Committee, the Debtors have agreed to add another Debtor witness to the list, increasing

---

[2]  This letter responds to the letter filed on this issue yesterday, September 17, 2015, by the EFIH First Lien Trustee.

[3]  The Debtors understand that the two parties proposed to be deposed by Plan supporters—Bank of New York Mellon and the EFH Official Committee—have both objected to their depositions.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 17, 2015
Page 3

the number of depositions by Plan objectors to thirteen.[4] Additionally, to avoid a potential conflict between the depositions of co-CRO Paul Keglevic and EFH Disinterested Director Billie Williamson, the Debtors agreed to postpone and reschedule Mr. Keglevic's deposition. These concessions and revisions have resolved substantially all outstanding issues regarding the number and scheduling of depositions insofar as they relate to the Debtors.

**II.   THE EFIH NOTEHOLDERS' 30(B)(6) DEPOSITION TOPICS ARE IMPROPER AND IRRELEVANT TO SETTLEMENT OR CONFIRMATION ISSUES.**

The EFIH First Lien Trustee represents creditors whose principal and accrued interest was fully paid in cash in June 2014, following the Court's approval of the EFIH First Lien DIP. For months, they unsuccessfully litigated an additional claim for a make-whole payment. They no longer have that claim. What remains are some small claims for professional fees under the indenture and a small amount of accrued interest not paid under the EFIH First Lien DIP.

The EFIH First Lien Trustee purports not to understand the treatment the Plan gives for these small claims. The Plan provides the following regarding the EFIH First Lien Noteholders' claims:[5]

> 18.   Class B3 - EFIH First Lien Note Claims.
>
>   (a)   *Classification:* Class B3 consists of EFIH First Lien Note Claims, if any.
>
>   (b)   *Allowance:* As Class B3 Claims, the EFIH First Lien Note Claims are disallowed in their entirety, unless such Claims are otherwise Allowed in any amount by Final Order.
>
>   (c)   *Treatment:* Only if such Claims are Allowed in any amount by Final Order, except to the extent that a Holder of an Allowed Claim in Class B3 agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class

---

[4]   In exchange, the EFH Committee agreed that it will not attempt to depose any of the individuals previously identified by the Debtors as persons with knowledge, even if the Debtors later call those individuals as witnesses at the confirmation hearing.

[5]   The Debtors will soon file a fourth amended plan of reorganization that slightly alters the treatment of the EFIH First Lien Noteholder Claims to be more favorable. The new language has been shared with the EFIH First Lien Trustee.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 17, 2015
Page 4

> (d) *Voting:* Class B3 is Unimpaired under the Plan. Holders of Claims in Class B3 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

> B3, if any, each such Holder shall receive, up to the amount of its Allowed Claim, either payment in full in Cash or other treatment rendering such Claim Unimpaired.

Plan at 49. The Debtors have been working doggedly to negotiate with the EFIH First Lien Trustee Disclosure Statement language to elaborate on the plain meaning of the Plan's treatment of their remaining claims. Either the parties will come to agreement on that or the EFIH First Lien Trustee will argue its objection to the Disclosure Statement language, presumably on the ground that no amount of elaboration is enough.

In the meantime, the EFIH First Lien Trustee filed a 30(b)(6) notice on September 14, 2015, attached to this letter as **Exhibit B**, demanding the Debtors produce witnesses to testify on eight separate topics. Those topics implicate a host of overbroad and irrelevant issues:

- Topic No. 1 implicates a legal dispute over what constitutes "unimpairment" under Section 1124 of the Bankruptcy Code, and seeks speculative testimony regarding what might happen someday if the EFIH First Lien Noteholders' disallowed make-whole claims are reinstated by the Third Circuit on appeal.

- Topic No. 2 calls for a witness give a legal opinion as to whether the Plan leaves the EFIH First Lien Noteholders' legal, contractual, and equitable rights "unaltered."

- Topic No. 3 asks a witness to testify to the Debtors' *characterizations* of the Plan, which are of course irrelevant to how the Plan *actually* treats the EFIH First Lien Noteholders.

- Topic No. 4 calls for a witness to interpret the Plan's description of the treatment of EFIH First Lien Noteholders.

- Topic No. 5 asks for a witness to testify to the basis for any objections the Debtors have to the EFIH First Lien Noteholders' claims, a legal question.

- Topic No. 6 calls for witness testimony on all aspects of "feasibility," without limitation of any kind.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
September 17, 2015
Page 5

- Topic No. 7 calls for a witness to explain the Plan's treatment of creditors other than the EFIH First Lien Noteholders.

- Topic No. 8 broadly seeks testimony on "[a]ny other aspect of the Plan affecting the EFIH First Lien Notes Claims and the Notes."

None of these topics is appropriate for fact witness testimony. To the extent that they call for interpretations of the Plan, they are more properly presented as requests for clarification of the Disclosure Statement. To the extent that they seek testimony regarding the legal impact of the Plan and how it operates in hypothetical scenarios, they are the subject of argument at the confirmation hearing. And to the extent that they are not limited in any reasonable way, they are improper.

At a telephonic hearing on Wednesday, September 16, the Court permitted a limited Rule 30(b)(6) deposition by the Bank of New York Mellon ("BNYM"), which objects to the Plan's proposed treatment of Pollution Control Revenue Bonds ("PCRBs"). In particular, the Court noted that BNYM objected to its allegedly unfair treatment compared to other unsecured TCEH creditors. The Court ruled that a Rule 30(b)(6) deposition was appropriate, but only if "limited to the issues actually relevant to the pollution control revenue bond objection and the treatment of the PCRBs under the plan. Issues of subjective knowledge, belief, et cetera, about the value of litigation claims are off base completely and would not be a proper subject for deposition and I think that's sufficient." (Sept. 16, 2015 Tr. at 38:20-38:25.)

Yesterday, September 17, 2015, the EFIH First Lien Trustee wrote to the Debtors, referencing the Court's PCRB ruling, and insisted it was entitled to ask a witness questions "regarding the treatment of its [the First Liens'] claim under" the Plan. To resolve the dispute, the Debtors *agreed*. They offered to produce a fact witness to testify on that narrowly stated topic, even though, unlike BNYM, the EFIH First Lien Noteholders are not disputing the settled value of their claim or any disparate treatment compared to others. This offer hews precisely to the Court's recent order.

Faced with the Debtors' acceptance of its proposed topic, the EFIH First Lien Trustee backtracked, insisting that regardless of any notice or Court-limited topic, it would ask the Debtors' Rule 30(b)(6) witness anything it wanted, and that the witness would be required to provide corporate testimony notwithstanding any timely objection. Not only does this telegraph a strategy of expanding the permitted scope of the Debtors' deposition on the fly, but it is also fundamentally unfair to the Debtors and their witness. The Debtors are obligated to prepare witnesses to provide corporate testimony, but only as to properly defined subject matters. Rule 30(b)(6) requires "reasonable particularity" and does not sanction limitless examination.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
September 17, 2015
Page 6

Fed. R. Civ. P. 30(b)(6). When the Debtors refused to agree to limitless questioning, the EFIH First Lien Trustee backed away from its offer.

Even worse, rather than cooperate when the Debtors' pointed out these defects, the EFIH Indenture Trustee instead abruptly threatened to obstruct the Debtors' Disclosure Statement if its deposition demands were not met. Indeed, in an e-mail attached to this letter as **Exhibit C**, the EFIH Indenture Trustee threatened that, even if the Debtors satisfied all of the issues raised in its objection to the Disclosure Statement, *if the Court agreed* with the Debtors and ruled that its Rule 30(b)(6) topics were out of bounds, it "may need to press some aspects of [its] disclosure statement objection" anyway.

All of the issues discussed above regarding the deposition topics in the First Lien Trustee's 30(b)(6) notice apply equally to the topics in the Second Lien Trustee's 30(b)(6) notice, attached to this letter as **Exhibit D**. Accordingly, the Debtors respectfully request the following relief:

1. The EFIH First Lien Trustee's and EFIH Second Lien Trustee's overly broad notice should be stricken, subject to 2 and 3, below.

2. The Debtors should be allowed to designate one of their existing witnesses to provide fact testimony only on the following topics: "the treatment of the EFIH First Liens' claim in the Plan and treatment of the EFIH Second Liens' claim in the Plan."

3. The First Lien Trustee and Second Lien Trustee should be directed that their respective questioning must be limited to facts regarding that topic and not to stray into legal positions or issues, speculative matters such as what may or may not happen on or after appeals from this Court's orders, or matters of subjective intent, motive, or belief, as the Court previously ordered was the permissible scope of BNYM's Rule 30(b)(6) deposition.

### III.    DUAL-TRACKING DEPOSITIONS IS UNAVOIDABLE.

The second dispute regarding depositions relates to the United States Trustee's ("UST") objection to the dual-tracking of depositions (i.e., scheduling two depositions to occur on the

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 17, 2015
Page 7

same day). The UST has stated it may not be able to cover two depositions scheduled simultaneously.[6]

The Debtors have made every effort to accommodate the logistical needs of all the parties and to minimize dual-tracking depositions, but some amount of simultaneous scheduling is inevitable given the number of days allowed for deposition (ten business days) and the number of depositions to be taken (up to fifteen depositions). The Debtors have given as much notice as possible to all parties regarding the proposed deposition schedule. The Debtors continue to coordinate with the various parties regarding deposition logistics and will continue to make every effort possible to accommodate those needs, given the tight schedule and limitations on the availability of witnesses. Nevertheless, all parties, including the Debtors, will have to bear the burden of allocating resources among multiple depositions on certain days.

Accordingly, the Debtors respectfully request that the Court endorse the necessary dual-tracking of depositions.

Respectfully submitted,

/s/ Brenton A. Rogers

Brenton A. Rogers

---

[6] The UST also objected to the Debtors' proposal that Don Evans be deposed in Dallas, Texas and the EFH Committee objected to the proposal that Sponsor witness Michael MacDougall be deposed in Austin, Texas. The parties are working to determine mutually agreeable venues for those depositions.