## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | )  Chapter 11<br>)<br>)  Case No. 14-10979 (CSS)<br>)<br>)  (Jointly Administered)<br>)<br>)  **Re: D.I. 4964, 5874**<br>)  **<u>Hearing Date:</u> TBD** |

### EFIH DEBTORS' REPLY IN SUPPORT OF
### PARTIAL OBJECTION TO PROOF OF CLAIM NO. 6347
### <u>FILED BY THE INDENTURE TRUSTEE FOR THE EFIH UNSECURED NOTES</u>

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT................................................................................................................. 2

I.    The Bankruptcy Code Provides Unsecured Creditors Of Solvent Debtors With
      Postpetition Interest At No More Than The Federal Judgment Rate ......................... 2

    A.    The Code Expressly Prohibits Postpetition Interest For Unsecured
          Creditors, And The Only Relevant Exception Provides Interest At
          "The Legal Rate." ................................................................................... 2

    B.    "The Legal Rate" Means The Federal Judgment Rate ......................................... 4

    C.    The Trustee Fails To Demonstrate That The Legal Rate Could Ever
          Mean The Contract Rate........................................................................... 7

II.   This Straightforward Statutory Framework For Awarding Postpetition Interest
      Applies Here. ........................................................................................................ 11

    A.    This Court Can Address Postpetition Interest In This Claim Objection. ........... 12

    B.    The Trustee's Impairment Arguments Are Circular. ......................................... 13

    C.    *Washington Mutual* Is Directly Applicable. ..................................................... 15

III.  The Court Should Decline To Adopt The Trustee's Alternate Pathway
      To Contract Rate Interest. ...................................................................................... 17

CONCLUSION............................................................................................................ 22

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Consolidated Rock Products Company v. du Bois*,
    312 U.S. 510 (1941)................................................................17, 18

*Dewsnup v. Timm*,
    502 U.S. 410 (1992)......................................................................19

*Empire Trust Co. v. Equitable Office Bldg. Corp.*,
    167 F.2d 346 (2d Cir. 1948)..........................................................18

*Griffith v. Kentucky*,
    479 U.S. 314 (1987)......................................................................21

*In re Adelphia Commc'ns Corp.*,
    368 B.R. 140 (Bankr. S.D.N.Y. 2007)...........................................5

*In re AgFeed USA, LLC*, No. 13-11761, Hearing Transcript
    (Bankr. D. Del. Nov. 4, 2014) (Doc. 1557) ................................7, 22

*In re Armstrong World Indus., Inc.*,
    320 B.R. 523 (D. Del.), *aff'd*, 432 F.3d 507 (3d Cir. 2005) ...................21

*In re Beguelin*,
    220 B.R. 94 (9th Cir. B.A.P. 1998).................................................5

*In re Best*,
    365 B.R. 725 (Bankr. W.D. Ky. 2007) ...........................................5

*In re Boyer*,
    90 B.R. 200 (D.S.C. 1988)............................................................5

*In re Chiapetta*,
    159 B.R. 152 (Bankr. E.D. Pa. 1993) .........................................5, 7

*In re Country Manor of Kenton*,
    254 B.R. 179 (Bankr. N.D. Ohio 2000)..........................................5

*In re David Green Prop. Mgmt.*,
    164 B.R. 92 (Bankr. W.D. Mo. 1994)..........................................4, 5

*In re Dow Corning Corp.*, ("*Dow I*")
    237 B.R. 380 (Bankr. E.D. Mich. 1999) .................................5, 6, 20

*In re Dow Corning Corp.*, ("*Dow II*")
    244 B.R. 678 (Bankr. E.D. Mich. 1999) ...................................................6, 13

*In re Dow Corning Corp.*, ("*Dow III*")
    456 F.3d 668 (6th Cir. 2006) ...................................................6, 19, 20

*In re Federated Dep't. Stores, Inc.*,
    131 B.R. 808 (S.D. Ohio 1991) ...................................................11

*In re Gaines*,
    178 B.R. 101 (Bankr. W.D. Va. 1995) ...................................................4, 5

*In re Garriock*,
    373 B.R. 814 (E.D. Va. 2007)...................................................5

*In re Godsey*,
    134 B.R. 865 (Bankr. M.D. Tenn. 1991) ...................................................5, 6

*In re Joyce*,
    41 B.R. 249 (Bankr. E.D. Pa. 1984) ...................................................3

*In re Laymon*,
    117 B.R. 856 (Bankr. W. D. Tex. 1990), *aff'd*, 1991 WL 349624 (W.D. Tex.
    Mar. 22, 1991), *rev'd on other grounds*, 958 F.2d 72 (5th Cir. 1992) ...................................................5

*In re Manchester Gas Storage, Inc.*,
    309 B.R. 354 (Bankr. N.D. Okla. 2004) ...................................................20

*In re Melenyzer*,
    143 B.R. 829 (Bankr. W.D. Tex. 1992)...................................................5, 7

*In re Oakwood Homes Corp.*,
    449 F.3d 588 (3d Cir. 2006)...................................................3

*In re PPI Enters. (U.S.), Inc.*,
    324 F.3d 197 (3d Cir. 2003)...................................................11, 14, 15

*In re Premier Entm't Biloxi LLC*,
    445 B.R. 582 (Bankr. S.D. Miss. 2010)...................................................4, 5

*In re Realty Assocs. Sec. Corp.*,
    163 F.2d 387 (2d Cir. 1947)...................................................18

*In re Schoeneberg*,
    156 B.R. 963 (Bankr. W.D. Tex. 1993)...................................................5

*In re Shaffer Furniture Co.*,
    68 B.R. 827 (Bankr. E.D. Pa. 1987) ...................................................5

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) ......................3, 4, 5, 7, 15, 17

*In re Washington Mutual, Inc.*,
    461 B.R. 200 (Bankr. D. Del. 2011) ...........................................1, 3, 4, 5, 7, 11, 12, 16, 17, 22

*Norman v. Elkin*,
    726 F. Supp. 2d 464 (D. Del. 2010) .........................................................................................7

*Onink v. Cardelucci (In re Cardelucci)*,
    285 F.3d 1231 (9th Cir. 2002) ...........................................................................3, 4, 5, 6, 7, 9

*Pa. Pub. Welfare Dep't v. Davenport*,
    495 U.S. 552 (1990)...............................................................................................................19

*Till v. SCS Credit Corp.*,
    541 U.S. 465 (2004)..........................................................................................................21, 22

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*,
    484 U.S. 365 (1988).................................................................................................................3

*Vanston Bondholders Protective Comm. v. Green*,
    329 U.S. 156 (1946)...............................................................................................................19

*United States v. Zelinsky*,
    689 F.2d 435 (3d Cir.1982)....................................................................................................16

**Statutes**

11 U.S.C. § 502(b) ....................................................................................................20, 21

11 U.S.C. § 502(b)(2) .................................................................................2, 12, 15, 20, 22

11 U.S.C. § 502(b)(6) ..................................................................................................11, 14, 15

11 U.S.C. § 506(b) .......................................................................................................3, 5, 6, 18

11 U.S.C. § 726(a) ..............................................................................................................3, 15

11 U.S.C. § 726(a)(5)................................................................1, 2, 3, 4, 5, 9, 12, 13, 16, 21

11 U.S.C. § 726(a)(6).............................................................................................................3

11 U.S.C. § 1124(1) ........................................................................................................13, 14

11 U.S.C. § 1124(3) ...............................................................................................................15

11 U.S.C. § 1129(a)(7)..............................................................................................1, 6, 12, 21

11 U.S.C. § 1129(a)(7)(A)(ii) ................................................................................................3, 21

11 U.S.C. § 1129(b) ...............................................................................................2, 6, 14, 20

11 U.S.C. § 1129(b)(1) ..........................................................................................................17

11 U.S.C. § 1129(b)(2) ..........................................................................................................17

11 U.S.C. § 1129(b)(2)(A)(iii) ...............................................................................................18

11 U.S.C. § 1129(b)(2)(B)(i) .................................................................................................21

28 U.S.C. § 1961 ..........................................................................................................1, 5, 8, 9

## Other Authorities

4 *Collier on Bankruptcy* ¶ 502.03[3][c] (16th ed. 2015) ..............................................................3

6 Collier on Bankruptcy ¶ 726.02[5] (16th ed. 2015)................................................................5, 6

7 *Collier on Bankruptcy* ¶ 1129.03[4][b][i][C] (16th ed. 2015) .............................................13, 14

C. Lonstein & S. Domanowski, *Payment of Post-Petition Interest to Unsecured
    Creditors: Federal Judgment Rate Versus Contract Rate*, 12 Am. Bankr. Inst.
    L. Rev. 421 (Winter 2004)..........................................................................................................4

H. L. A. Hart, *The Concept of Law* 155 (Oxford Univ. Press 1965) ...........................................21

H.R. Rep. No. 93-137 (1973)......................................................................................................21

## INTRODUCTION

The Trustee asks this Court to reject a clearly established means for awarding postpetition interest grounded in the text of the Bankruptcy Code, and to instead award a higher rate of postpetition interest by adopting an alternative method based on a line of cases that predate the Code. The Court should decline the Trustee's invitation to depart from the Code and should instead hold, following *In re Washington Mutual Inc.*, 461 B.R. 200 (Bankr. D. Del. 2011), and other cases, that the Code at most provides the PIK Noteholders with interest at "the legal rate."

The Trustee does not deny, because it cannot, that the Code prohibits postpetition interest on unsecured debt with only one exception—section 726(a)(5)—which awards to unsecured creditors of a solvent debtor postpetition interest at "the legal rate."[2] Although the Trustee argues to the contrary, the best view—and the majority view—is that "*the* legal rate" is the federal judgment rate, 28 U.S.C. § 1961. If interest is owed, section 726(a)(5) is made applicable to chapter 11 cases through the best interests of creditors test, codified in section 1129(a)(7) and requiring a chapter 11 plan to provide creditors with at least as much as they might receive under a chapter 7 liquidation. Based on this straightforward analysis, *Washington Mutual* held that unsecured creditors of solvent debtors, like the PIK Noteholders here, are only entitled to postpetition interest at the federal judgment rate.

The Trustee urges the Court to adopt a minority position based on pre-Code practice that would entitled the PIK Noteholders to postpetition interest at the contract rate, which just so happens to be higher than the federal judgment rate. The Trustee argues that this pre-Code practice was left unaltered by the enactment of the Code's clear prohibition on postpetition

---

[2]    For the purposes of this claim objection only, the EFIH Debtors may be assumed to be solvent. The EFIH Debtors reserve the right to assert otherwise during the confirmation hearing.

1

interest, together with its specific and limited exceptions, and that this pre-Code practice was enshrined in the "fair and equitable" test in section 1129(b). This is incorrect. The pre-Code authorities on which the Trustee relies establish, at best, that the Court may balance the equities to award postpetition interest at a rate of its choosing—not that postpetition interest must be awarded at the contract rate. And the Trustee fails to address the statutory provisions, most notably the Code's prohibition on unmatured interest in section 502(b)(2), that signal a clear departure from this pre-Code balance-of-equities approach. Nor does the Trustee justify why its plain desire to receive a greater percentage recovery than any other unsecured creditor in these cases supersedes the words and sound policy of Congress to provide predictability and uniformity among unsecured creditors. The Court should hold as a matter of law that, in the case of a solvent debtor, the Bankruptcy Code entitles unsecured creditors to postpetition interest at no more than the federal judgment rate. This outcome is mandated by the Code and supported by well-reasoned case law and sound restructuring policy.

## ARGUMENT

**I.      The Bankruptcy Code Provides Unsecured Creditors Of Solvent Debtors With Postpetition Interest At No More Than The Federal Judgment Rate.**

1.      The only relevant statutory basis for awarding the PIK Noteholders postpetition interest is through section 726(a)(5), which provides unsecured creditors of solvent debtors with postpetition interest at "the legal rate," which means the federal judgment rate.

**A.      The Code Expressly Prohibits Postpetition Interest For Unsecured Creditors, And The Only Relevant Exception Provides Interest At "The Legal Rate."**

2.      The Code provides only one potential pathway for the PIK Noteholders to recover any postpetition interest. In the first instance, the Code expressly prohibits claims for unmatured interest. 11 U.S.C. § 502(b)(2) ("[T]he court . . . shall allow such claims . . . except to the extent that . . . such claim is for unmatured interest.") As a result, "interest stops accruing at the date of

2

the filing of the petition, because any claim for unmatured interest is disallowed under this paragraph." *In re Oakwood Homes Corp.*, 449 F.3d 588, 600 (3d Cir. 2006) (quoting H.R. Rep. No. 95-595, at 352-54 (1997)).  Of course, postpetition interest is by definition "unmatured interest." *In re Joyce*, 41 B.R. 249, 255 (Bankr. E.D. Pa. 1984) (citing H.R.Rep. No. 95–595, at 352 (1997) (describing unmatured interest in part as "postpetition interest that is not yet due and payable")).

3.    The Bankruptcy Code provides only two exceptions.  *See In re W.R. Grace & Co.*, 475 B.R. 34, 159 n.132 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013).  The first, not available to the unsecured PIK Noteholders, provides secured creditors with postpetition interest at the rate "provided for under the agreement or state statute under which such claim arose."  11 U.S.C. § 506(b); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 372-73 (1988).  The second exception is available to unsecured creditors, but only when a debtor is solvent.  *See Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002); *Wash. Mut.*, 461 B.R. at 241; 4 *Collier on Bankruptcy* ¶ 502.03[3][c] (16th ed. 2015). Section 726(a) lists the order of priority for distributing estate assets in a liquidation, and under this provision, claims must receive "payment of interest *at the legal rate* from the date of the filing of the petition" before assets are returned to the debtor.  11 U.S.C. § 726(a)(5), (6) (emphasis added).  Section 726(a) is made applicable to this chapter 11 proceeding via section 1129(a)(7)(A)(ii), also known as the best interests of creditors test, which provides that a chapter 11 plan must provide an objecting class of impaired claims with at least as much value as they would receive under a chapter 7 liquidation.  *See W.R. Grace*, 475 B.R. at 200; *Wash. Mut.*, 461 B.R. at 241.  Accordingly, this exception to the prohibition on postpetition interest provides

RLF1 12996654v.1

unsecured creditors of a solvent debtor in a chapter 11 reorganization with postpetition interest on their claims at "the legal rate." *W.R. Grace*, 475 B.R. at 163-64, 200.

4.    *Washington Mutual* applied this straightforward test in a chapter 11 case to hold that unsecured creditors of a solvent debtor are only due postpetition interest at "the legal rate." 461 B.R. at 243, 245.    Other courts in chapter 11 cases have also used the best interests of creditors test to award the legal rate of postpetition interest to unsecured creditors in chapter 11. *E.g.*, *Cardelucci*, 285 F.3d at 1234-36; *W.R. Grace*, 475 B.R. at 200; *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 644 (Bankr. S.D. Miss. 2010); *In re Gaines*, 178 B.R. 101, 104-06 (Bankr. W.D. Va. 1995); *In re David Green Prop. Mgmt.*, 164 B.R. 92, 98-99 (Bankr. W.D. Mo. 1994); *see also* C. Lonstein & S. Domanowski, *Payment of Post-Petition Interest to Unsecured Creditors: Federal Judgment Rate Versus Contract Rate*, 12 Am. Bankr. Inst. L. Rev. 421 (Winter 2004).

5.    The Trustee contests what "the legal rate" should be and whether the Court should follow the Code-mandated analysis described here and in *Washington Mutual*.    But the Trustee does not contest that a straightforward application of the Code results in providing unsecured creditors of solvent debtors with postpetition interest at "the legal rate."

### B.    "The Legal Rate" Means The Federal Judgment Rate.

6.    *Washington Mutual*—and the many other courts that have applied the federal judgment rate approach—have held that "the legal rate" in section 726(a)(5) of the Bankruptcy

Code means the federal judgment rate of interest.[3]  461 B.R. at 242-43.  The federal judgment

rate is the interest rate applied to "any money judgment in a civil case recovered in a district

court."  28 U.S.C. § 1961.  The most straightforward meaning of the term "*the* legal rate" is the

federal judgment rate established by federal law, and not as the Trustee argues, *any* interest rate

agreed to by private parties, *see* Br. ¶¶ 59-62.  Although a minority of courts have looked to state

law—either to a contract[4] or, absent a contract, to state statutory interest rates[5]—the federal

judgment rate is the majority view.  *W.R. Grace*, 475 B.R. at 200 ("The majority approach taken

by most courts today is the federal judgment rate approach."); *see also* 6 Collier on Bankruptcy

¶ 726.02[5] (16th ed. 2015).

7.    The majority view is also the best view of section 726(a)(5) for a number of

reasons.  **First**, the statute provides for interest at "*the* legal rate," not *a* legal rate.  The definite

article "the" in a statute is a term of limitation referring to a particular item whereas "a" is an

indefinite article that generalizes its object.  *See Cardelucci*, 285 F.3d at 1234.  Here, the word

"the" denotes that Congress intended for a single uniform rate of interest to apply.  *See Wash.

Mut.*, 461 B.R. at 242; 6 *Collier* ¶ 726.02[5].[6]  Further, if the Code intended for bankruptcy

---

[3]    *E.g.*, *In re Cardelucci*, 285 F.3d at 1235; *In re Beguelin*, 220 B.R. 94 (9th Cir. B.A.P. 1998); *In re Garriock*, 373 B.R. 814, 816 (E.D. Va. 2007); *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 644 (Bankr. S.D. Miss. 2010); *In re Best*, 365 B.R. 725, 727 (Bankr. W.D. Ky. 2007); *In re Country Manor of Kenton*, 254 B.R. 179, 183 (Bankr. N.D. Ohio 2000); *In re Dow Corning Corp.*, 237 B.R. 380, 400-02 (Bankr. E.D. Mich. 1999) ("*Dow I*"); *In re Gaines*, 178 B.R. 101 (Bankr. W.D. Va. 1995); *In re David Green Property Mgmt.*, 164 B.R. 92 (Bankr.W.D. Mo. 1994); *In re Chiapetta*, 159 B.R. 152 (Bankr. E.D. Pa. 1993); *In re Melenyzer*, 143 B.R. 829, 832-33 (Bankr. W.D. Tex. 1992); *In re Godsey*, 134 B.R. 865 (Bankr. M.D. Tenn. 1991); *In re Laymon*, 117 B.R. 856, 864 (Bankr. W. D. Tex. 1990), *aff'd*, 1991 WL 349624 (W.D. Tex. Mar. 22, 1991), *rev'd on other grounds*, 958 F.2d 72 (5th Cir. 1992); *see also In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 257 (Bankr. S.D.N.Y. 2007) ("[I]t is by far the better view, in my opinion, that 'legal rate' is the federal judgment rate and not the same as that authorized under section 506(b), which is a contract rate.").

[4]    *E.g.*, *In re Schoeneberg*, 156 B.R. 963 (Bankr. W.D. Tex. 1993).

[5]    *E.g.*, *In re Shaffer Furniture Co.*, 68 B.R. 827, 831 (Bankr. E.D. Pa. 1987) (applying Pennsylvania's statutory interest rate); *In re Boyer*, 90 B.R. 200, 201 (D.S.C. 1988).

[6]    This is true notwithstanding the Trustee's careful effort to avoid including "the" in quotation marks when describing the "legal rate" instead of "the legal rate."  *See* Br. ¶¶ 57-66.

courts to apply *any* legal rate, then surely Congress would not have to caution bankruptcy courts to apply only "legal" rates and to avoid applying illegal ones. *See In re Dow Corning Corp.*, 237 B.R. 380, 404-05 (Bankr. E.D. Mich. 1999) ("*Dow I*").[7] If such caution were necessary, the rest of the Code would need to contain similar admonishments. *Id.* at 405.

8.    ***Second***, based on both dictionary definitions and 100 years of case law, one court has persuasively explained that the "legal rate of interest" means "a rate of interest fixed by statute." *See Dow I*, 237 B.R. at 400-02. "[H]ad Congress intended contract rates to apply, it presumably would have used language other than 'the legal rate,' a term that typically refers to a statutory rate." 6 *Collier* ¶ 726.02[5]. For example, Congress could have, but did not, simply provide for "interest" to be paid, or it could have incorporated the concept of an "agreement" as it did when it provided for secured creditors to receive postpetition interest under section 506(b). *See In re Godsey*, 134 B.R. 865, 866 (Bankr. M.D. Tenn. 1991). In fact, in drafting the applicable Code provision, Congress struck draft language that provided generically for "interest on claims allowed" and inserted the more specific "interest at the legal rate." *Cardelucci*, 285 F.3d at 1234. Congress's decision to strike the version of this provision suggesting *any* interest rate in favor of the current version, which points to a specific interest rate, is further evidence that Congress did not intend for the contract rate of interest to apply. *Id.*

9.    ***Third***, legal policy supports holding that the best interpretation of "the legal rate" is the federal judgment rate. Applying a single, federal rate to claims, entitlement to which is a

---

[7]    In *Dow I* the bankruptcy court held that, in a solvent debtor chapter 11 case, section 1129(a)(7), via section 726(a)(5), required paying unsecured creditors the federal judgment rate of interest. In *In re Dow Corning Corp.*, 244 B.R. 678, 687-93, 696 (Bankr. E.D. Mich. 1999) ("*Dow II*"), the bankruptcy court also ruled that in solvent debtor chapter 11 cases courts should consider the contract rate of interest when applying the absolute priority rule under § 1129(b), and award postpetition interest at the contract rate, but not the default rate. The Sixth Circuit in *In re Dow Corning Corp.*, 456 F.3d 668, 677-80 (6th Cir. 2006) ("*Dow III*") affirmed this reasoning, but remanded for an assessment whether awarding the default rate of interest was equitable under the circumstances of that case. EFIH respectfully disagrees with *Dow II* and *Dow III*, as discussed further below.

matter of federal law, promotes uniformity among federal courts and within federal law.[8]
*Cardelucci*, 284 F.3d at 1235.  Further, postpetition interest is analogous to an award of post-judgment interest.  *Id.*; *In re Chiapetta*, 159 B.R. 152, 161 (Bankr. E.D. Pa. 1993) ("[A] claim is like a judgment entered at the time of the bankruptcy filing . . . ."); *In re Melenyzer*, 143 B.R. 829, 833 (Bankr. W.D. Tex. 1992) (same).  And federal courts award post-judgment interest as a matter of federal procedural law, even if the cause of action arises under state law.  *Norman v. Elkin*, 726 F. Supp. 2d 464, 479 (D. Del. 2010) ("Federal courts sitting in diversity must apply federal law, rather than state law, in determining post-judgment interest.").  Courts have also explained that a single, uniform rate will promote fairness among creditors because certain creditors will not, by happenstance of state law or contract rights, receive a "disproportionate share of any remaining assets to the detriment of other unsecured creditors."  *Cardelucci*, 285 F.3d at 1235-36.  Additionally, applying one uniform rate is judicially efficient and reduces the administrative burden on courts and parties, who avoid having to use different interest rates to calculate postpetition interest owed potentially to multiple unsecured creditors.  *Id.* at 1236.  In sum, the best textual reading of "the legal rate" is the federal judgment rate.

C.    **The Trustee Fails To Demonstrate That The Legal Rate Could Ever Mean The Contract Rate.**

10.    The Trustee raises, in essence, four arguments why "the legal rate" does not mean the federal judgment rate: (i) other statutory uses of the phrase "the legal rate," (ii) the definition of the federal judgment rate at the time the Code was enacted, (iii) policy reasons to depart from the dominant textual interpretation, and (iv) fairness.  None of these arguments demonstrates that

---

[8]    At least one other bankruptcy court in Delaware has stated that the federal judgment rate approach is generally the correct approach, citing *Washington Mutual* and *W.R. Grace*.  Hr'g Tr. at 21:8:16, 37:1-9, *In re AgFeed USA, LLC*, No. 13-11761 (Bankr. D. Del. Nov. 4, 2014) (Shannon, J.) (Doc. 1557) ("I believe that the federal judgment rate is, in fact, controlling here. While there may be flexibility or a measure of discretion as the Case Law teaches, I do not see a specific reason in a case such as this to deviate from that.  Particularly, when I am talking about the determination of impairment, I believe that consistent treatment is particularly important.").

the contract rate is a permissible interpretation of "the legal rate," that the federal judgment rate is an incorrect interpretation of "the legal rate," or that Congress intended "the legal rate" to mean whatever rate a bankruptcy court chooses.

11.    ***Other statutes.***  The Trustee argues that Congress has referred to the statutory source of the federal judgment rate when it intended for that rate to apply.  Br. ¶ 59.  Congress's reference in some instance to 28 U.S.C. §1961, which is the legal rate of interest in federal courts, does not indicate that "the legal rate" means anything other than the federal judgment rate, especially where other textual indications weigh in favor of this meaning.  The Trustee also argues that, in still other instances, Congress has used the phrase "legal rate" but went on to define what the phrase meant in that setting.  Br. ¶¶ 60-61.  The Trustee points out that in none of its four examples did Congress define "the legal rate" to mean the federal judgment rate, but of course this cuts the other way.  In each instance identified by the Trustee, Congress expanded on the term "legal rate" when it did *not* mean the federal judgment rate.  Instead, each of these definitions references a source of public law, such as a statute or regulation, to provide for the specific rate of interest—sources that are far more analogous to the federal judgment rate.  *See* Br. ¶ 60.  Moreover, none defined "the legal rate" to mean what the Trustee advocates here: either a privately negotiated contract rate or a rate subject to judicial discretion.

12.    ***Previous federal judgment rate.***  The Trustee asserts that, at the time the 1978 bankruptcy code was enacted, the federal judgment rate pointed to state statutory interest rates, not a single federally established rate.[9]  According to the Trustee, Congress therefore intended to

---

[9]    The version of 28 U.S.C. § 1961 in effect when the Code was enacted stated:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. Execution therefor may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for Interest on judgments recovered in the courts of the State.  Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

8

reference either state statutory rates or any contract rate to which parties agreed.  Br. ¶ 61.  But this proposed interpretation ignores how statutes work.  In section 726(a)(5), Congress pointed to "the legal rate" to govern postpetition interest.  And, as this line of argument implicitly acknowledges, the best definition of "*the* legal rate" is a single definition of the legal rate: 28 U.S.C. § 1961.  When Congress amended section 1961 to mean a single, federally determined rate of interest, all statutes affected by section 1961 picked up this new meaning.  Congress did not have to amend every single statute that cross references section 1961 to make clear that the the meaning of those statutes also changed.

13.    ***Policy***.  The Trustee argues that "*in this case*" this Court should interpret "the legal rate" to mean the contract rate for policy reasons not applicable here, but which some courts have adopted to avoid applying the federal judgment rate, like fairness or administrative efficiency.  Br. ¶¶ 62-64 (emphasis added).  Yet at least one circuit has expressly rejected this argument.  In *Cardelucci*, the Ninth Circuit explained that, "these two interests . . . may be of limited relevance in certain bankruptcy proceedings . . . .  Nonetheless 'interest at the legal rate' is a statutory term with a definitive meaning that cannot shift depending on the interests invoked by the specific factual circumstances before the Court."  285 F.3d at 1236.  In other words, if the statutory term "the legal rate" means the federal judgment rate, courts are not free to pick and choose when to apply this interpretation.  Some courts have articulated policy reasons—in addition to textual reasons—why the federal judgment rate is the best interpretation of this term.  But the meaning of the words does not change based on the facts of each case.  The Trustee's unbounded approach to statutory interpretation—where statutory text takes on different meanings depending on the facts of each case—cannot be the law.

9

14.    Further, contrary to the Trustee's argument, no court "has rel[ied] *solely* upon principles of judicial efficiency and administrative convenience."    Br. ¶ 63 (emphasis added). By latching onto two policy reasons for adopting the fixed meaning of "the legal rate," the Trustee ignores the main reason that a majority of courts apply the federal judgment rate approach: the language of the Bankruptcy Code.    And the Trustee ignores some of the *other* policy reasons courts have provided, like promoting uniformity of federal law.    Judicial efficiency and administrative convenience are only a small part of the reason why the federal judgment rate is the best interpretation of the statutory term "the legal rate," which has a fixed meaning, not one that adapts to fit the facts of each case.

15.    ***Contract rights***.    The Trustee also appeals to a supposed universal principle of the Bankruptcy Code that all state contract rights must remain unaltered in a solvent debtor case. Br. ¶¶ 14, 65-66.    But this argument begs the question, and is contrary to Third Circuit law.    The Code only requires that an unsecured creditor receive postpetition interest where the debtor is solvent, and yet the great weight of cases holds that postpetition interest should be awarded at a rate other than the contract rate.    Every one of these cases undermines the Trustee's broad brush argument.    Further, none of the Trustee's "solvent debtor" cases—most of which have nothing to do with postpetition interest—holds there are unwritten exceptions to express Bankruptcy Code provisions for solvent debtors.    *See* Br. ¶ 14 (citing cases).    To the contrary, even a solvent debtor may avail itself of the protections of the Code.    *See, e.g.*, *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197 (3d Cir. 2003) (holding that the section 502(b)(6) cap on claims for rejection damages is applicable in solvent debtor cases); *In re Federated Dep't. Stores, Inc.*, 131 B.R. 808, 817 (S.D. Ohio 1991) (same).

16.     In the same vein, the Trustee also argues that it would be unfair for EFH to recover under the Plan if the PIK Noteholders do not receive postpetition interest at the contract rate.  Br. ¶ 66.  But this argument actually cuts against the Trustee—and strongly.  In a typical solvent debtor case, a *shareholder* is taking a recovery, virtually by definition.  But, here, the Plan contemplates a sale where the purchaser is being required to pay in full all allowed claims against the sellers regardless of whether the sellers are solvent.  The proceeds of the sale go to the *creditors* of another Debtor.  Indeed, the equity holders here recover nothing under the Debtors' Third Amended Plan (and its soon-to-be-filed Fourth Amended Plan).  The Trustee's fairness argument, even if premised on mistaken facts, also ignores the interlocking complexity of these cases.  Distributions, if any, by EFIH to EFH will facilitate EFH's ability to pay its own creditors, including, pursuant to the proposed Settlement Agreement, a $700 million unsecured claim by TCEH.  Successful restructurings of EFH and TCEH, moreover, are critical to EFIH's emerging from bankruptcy.  *See* July 8, 2015 Stay Decision ¶ 65, No. 14-50363 (Adv. D.I. 304) (discussing this interdependent restructuring).  This makes any fairness issue less acute, not more acute, than in the other solvent cases.  And even in those cases, a majority of courts have determined that the federal judgment rate applies.

## II.    This Straightforward Statutory Framework For Awarding Postpetition Interest Applies Here.

17.     The Trustee provides several arguments why the statutory framework set forth above and applied in *Washington Mutual* does not, or should not, apply here.  First, the Trustee contends that a claim objection, which the Court expressly permitted the EFIH Debtors to file, is an improper vehicle for addressing this postpetition interest claim.  Second, the Trustee argues that the PIK Noteholders must receive postpetition interest at the contract rate irrespective of whether they are impaired.  Third, the Trustee asserts flatly that *Washington Mutual*'s reasoning

and holding should not apply to here, contrary to its clear application to the facts here.  All of these arguments are misplaced.

### A.    This Court Can Address Postpetition Interest In This Claim Objection.

18.    The Trustee argues that section 726(a)(5) does not apply *directly* to this or any other chapter 11 case, implying that it is somehow irrelevant to this claim objection.  Br. ¶ 11.  This does not help the Trustee's argument:  if section 726(a)(5) does not apply under the ultimate plan, directly or otherwise, the Trustee receives no postpetition interest by express operation of section 502(b)(2), which prohibits postpetition interest on unsecured claims by its plain language.  If 726(a)(5) *does* apply under the ultimate plan, then the Trustee would be entitled to receive postpetition interest up to the federal judgment rate.  The EFIH Debtors are by no means conceding that the Trustee is entitled to receive postpetition interest.  Instead, one thing is clear:  in no event is the Trustee entitled to more than the federal judgment rate, and a claim objection is an entirely appropriate vehicle for addressing this legal claim.

19.    The Trustee also argues that section 726(a)(5) cannot be used to "disallow" its claim for postpetition interest.  Br. ¶¶ 10, 12, 13.  But, again, it is not section 726(a)(5) that disallows the Trustee's contract interest claim; it is section 502(b)(2).    If anything, section 726(a)(5) benefits the Trustee by implying a very narrow exception to the general prohibition on unsecured postpetition interest.  In sum, section 502(b)(2), as modified by sections 726(a)(5) and 1129(a)(7), precludes the Trustee from receiving any postpetition interest at a rate greater than the federal judgment rate.  *See Wash. Mut.*, 461 B.R. at 243, 245 (holding unsecured creditors were by law not entitled to more than the federal judgment rate).  This too is a proper basis for a claim objection.

20.    At best, the Trustee's argument appears to hang on the inconsequential technicality whether, on the one hand, the Trustee's claim for postpetition interest is being

12

disallowed under 502(b)(2) or whether, on the other hand, the rate of postpetition interest being awarded *on* its claim is capped at the federal judgment rate.  Whether this postpetition interest is part of the claim, or is awarded on the claim, makes no legal or practical difference here. *Compare* 7 *Collier on Bankruptcy* ¶ 1129.03[4][b][i][C] (16th ed. 2015) ("[U]nless the debtor is solvent, or the creditor oversecured, postpetition interest is not part of a creditor's allowed claim."), *with Dow II*, 244 B.R. at 685 ("Properly understood, then, interest under § 726(a)(5) is paid *on* an allowed claim (as stated in the statute itself), rather than *as* an allowed claim." (emphasis in original)).  The Trustee has requested postpetition interest as part of its proof of claim.  This Court has explained this briefing's purpose is to assess whether the rate of interest owed to unsecured creditors of solvent debtors can be determined as a matter of law.  *See* Aug. 11, 2015 Hr'g Tr. 144:17-21.  If, as a matter of law, any postpetition owed to the PIK Noteholders is capped at the federal judgment rate, there is no reason why the Court should have to wait until confirmation to provide this legal ruling.

### B.      The Trustee's Impairment Arguments Are Circular.

21.      The Trustee's circular impairment argument does nothing to further its position that the PIK Noteholders are entitled to postpetition interest at the contract rate.  According to the Trustee, the PIK Noteholders must receive interest at the contract rate to be considered unimpaired under section 1124(1)—in which case, the Trustee argues, the best interests of creditors test awarding interest at "the legal rate" does not even apply.  *See* Br. ¶¶ 15-27.  If the PIK Noteholders do not receive their contract rate of interest, the Trustee then argues that the PIK Noteholders are impaired, the absolute priority rule of section 1129(b) will apply, and through this pathway the PIK Noteholders should also receive their contract rate of interest.  *See* Br. ¶¶ 28-48.  The Trustee therefore argues that the PIK Noteholders must receive postpetition interest at the contract rate irrespective of whether their claims are impaired.  But these

impairment arguments are beside the point.  If the Bankruptcy Code caps postpetition interest on unsecured debt at the federal judgment rate—which it does—then the Notes are unimpaired so long as the plan provides that the PIK Noteholders receive at least the federal judgment rate— which the proposed plan does.  *See* Third Am. Joint Plan of Reorganization at 56, Aug. 10, 2015 (D.I. 5245).

22.     Under the Bankruptcy Code, a claim is unimpaired if the plan "leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest," 11 U.S.C. § 1124(1).  The Trustee assumes the phrase "*contractual rights*" requires payment of postpetition interest at the contract rate.  *See* Br. ¶¶ 17, 19, 27.  Yet, under Third Circuit law, a claim is only impaired under 1124(1) when the *plan* alters the creditor's legal, equitable or contractual rights.  *PPI Enters.*, 324 at 204 (3d Cir. 2003).  In *PPI Enterprises*, a landlord argued that his claim was impaired because section 502(b)(6) capped lease payments he was otherwise owed by the debtor.  *Id.* at 203.  The court explained that the Code, and not the plan, limited the landlord's contract rights.  *Id.* at 204.  Accordingly, "a creditor's claim outside of bankruptcy is not the relevant barometer for impairment," and a claim is not impaired under section 1124(1) if the Code limits a creditor's contractual rights.  *PPI Enters.*, 324 F.3d at 204; *see also* 7 Collier on Bankruptcy ¶ 1124.03[6] (16th ed 2015) (titled "Alteration of Rights by the Code Is Not Impairment under Section 1124(1)").

23.     The same principle applies here.  Although *PPI Enterprises* addressed section 502(b)(6), its holding and reasoning applies equally to 502(b)(2)'s prohibition on claims for unmatured interest.  As the district court explained in *W.R. Grace*, just as capping lease payments under 502(b)(6) did not impair the creditor in *PPI Enterprises*, neither do limitations on unmatured interest under 502(b)(2).  *See W.R. Grace*, 475 B.R. at 161 ("[I]f [the *PPI* court]

14

found no impairment on the basis of application of subsection (b)(6) to a creditor's claim, then it stands to reason that there likewise would be no impairment from the application of subsection (b)(2)."). Accordingly, a solvent debtor's plan must, at most, provide for postpetition interest to unsecured creditors at the federal judgment rate. Where the plan so provides, a creditor can point to no right of which it has been deprived by the plan and is therefore unimpaired.

24.    Yet the Trustee argues that, if its claim really is unimpaired, the best interests of creditors test would not apply, and therefore the PIK Noteholders would not be limited to postpetition interest at the federal judgment rate. *See* Br. ¶ 15. But this proves too much: if the best interests test, and therefore section 726(a)(5), does not apply, then the Trustee's claim for postpetition interest should be disallowed in full. This circular logic does therefore does nothing for the Trustee.

25.    The Trustee's extended discussion of Congress's decision to delete section 1124(3) is unavailing. Br. ¶¶ 22-27. The Trustee correctly points out that the purpose of this amendment was to correct decisions holding that unsecured creditors of solvent debtors were unimpaired even if they received no postpetition interest. *See* Br. ¶ 24. The Third Circuit recognized as much in *PPI Enterprises*, a case which "at most stands for the proposition that a claim must receive *some* form of post-petition interest in a solvent debtor case to qualify as unimpaired." *W.R. Grace*, 475 B.R. at 164 (emphasis in original).

### C.    *Washington Mutual* Is Directly Applicable.

26.    To avoid this result, the Trustee argues that this Court simply should not follow *Washington Mutual*. Br. ¶¶ 49-56. As discussed above, the court in *Washington Mutual* held that interest ceases to accrue on unsecured claims as of the petition date, but that for solvent debtors, section 726(a)(5), together with the best interests of creditors test in 1129(a)(7), requires paying postpetition interest at "the legal rate." *Wash. Mut.*, 461 B.R. at 241.

15

27.     The Trustee has three quibbles with this analysis.  *First*, the Trustee argues that, because *Washington Mutual* was a chapter 11 liquidation, the court had a greater reason to limit the recovery of unsecured creditors to the federal judgment rate.  Br. ¶ 51.  It is hard to see why unsecured creditors should receive a lower interest rate where, as in *Washington Mutual*, "there was no business to reorganize," but a higher interest rate where, as here, the Debtors are in the process of reorganizing.  No court suggests, much less holds, that this distinction matters.

28.     *Second*, the Trustee argues that *Washington Mutual* had no reason to address the absolute priority rule.  Br. ¶ 52.  The opinion acknowledged the test, however, and reasoned that complying with it also required paying senior creditors no more than they were owed, which the court explained, was their federal judgment rate of interest.  *Wash. Mut.*, 461 B.R. at 241 n.34.

29.     *Third*, the Trustee argues that the opinion's legal holding was "unnecessary" because the court also considered the equities of the case.  Br. ¶ 53.  But the court expressly stated that it was not relying on its discussion of the equities.  *Wash. Mut.*, 461 B.R. at 243 ("Even if a consideration of the equities was appropriate . . . .").  By the Trustee's logic, *Washington Mutual* should have avoided discussing the equities of that case, not avoided its dispositive legal ruling "applying the plain language of the statute."  *Id.*  In any event, even if *Washington Mutual* relied on both its pure legal ruling and its discussion of the equities, the alternate pure legal holding is equally valid.  *United States v. Zelinsky*, 689 F.2d 435, 440 (3d Cir. 1982) ("We note first that an alternate holding has the same force as a single holding; it is binding precedent.").

30.     In sum, the *Washington Mutual* decision tracks the Bankruptcy Code closely, is well-reasoned, and should be applied to this chapter 11 reorganization.

RLF1 12996654v.1

**III.    The Court Should Decline To Adopt The Trustee's Alternate Pathway To Contract Rate Interest.**

31.    The Trustee's chief argument is that the absolute priority rule requires payment of the contract rate of interest to unsecured creditors before making any distributions to equity (here, EFH)—an argument that is just as circular as its impairment argument.  Br. ¶ 31.  As an initial matter, the Trustee acknowledges that this test only applies where the PIK Noteholders' claims are impaired.  *See* Br. ¶¶ 28-48; *id.* at ¶ 28 ("To the extent the PIK Noteholders' claims are deemed impaired . . . .").  Because these claims will receive interest at the federal judgment rate, they are not impaired, and the Trustee's extended discussion of sections 1129(b)(1) and (b)(2) is therefore irrelevant.  *See W.R. Grace*, 475 B.R. at 201-202 (declining to address absolute priority rule objections).

32.    Should the Trustee's "alternate pathway" nonetheless be considered, no Code provision actually provides for the relief the Trustee seeks.  Br. ¶¶ 35-36.  The Trustee instead requests that this Court apply pre-Code precedent—in conflict with the actual Code—to award the PIK Noteholders interest at the contract rate and in excess of the statutorily prescribed federal judgment rate.  *Id.* at ¶¶ 48.  The Trustee's preferred approach (i) overstates the holdings of pre-Code cases as requiring contract rate interest, (ii) is contrary to the Code, (iii) and will lead to inconsistent and potentially unjust results.

33.    ***First***, the Trustee's sole source of authority for this alternative pathway is pre-Code caselaw.  *See id.* at ¶¶ 33-35.  The Trustee chiefly relies on *Consolidated Rock Products Company v. du Bois*, where the Court held that *secured* bondholders were entitled to receive postpetition interest at the contract rate and that new securities being exchanged for old securities needed to reflect the more favorable terms of the prior bonds.  312 U.S. 510, 514-15, 520, 527-28 (1941) (discussing "bonds secured by an indenture" and ruling "on the assumption that the

enterprise as a whole is solvent").  Neither holding is contrary to current practice under the Code, and neither is relevant here:  *secured* creditors receive postpetition interest at the contract rate (to the extent of their security cushion), 11 U.S.C. § 506(b), and the cram down standards require providing non-accepting secured creditors with the "indubitable equivalent" of their claims, 11 U.S.C. § 1129(b)(2)(A)(iii).  Nothing in *Consolidated Rock* holds that the absolute priority rule requires unsecured creditors to receive postpetition interest at the contract rate.  A correct reading of its holding, moreover, removes the linchpin of the Trustee's entire "pre-Code controls" argument.

34.     The Trustee aggressively leverages *Consolidated Rock*'s inapposite holding to argue that pre-Code practice *required* solvent debtors to pay unsecured creditors postpetition interest at the contract rate.  *See* Br. ¶¶ 35 ("runs afoul of the absolute priority rule").  But that case does not so hold, nor do the other pre-Code authorities the Trustee cites.[10]

35.     Setting aside *Consolidated Rock*'s inapplicability, the Trustee can—at best—be understood to argue in favor of the "balance of equities" approach to postpetition interest reflected in pre-Code caselaw.  As one pre-Code case explained, "[i]t is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor."  *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165 (1946) (denying claim for default interest).  In other words under pre-Code practice, bankruptcy courts may have had discretion to award postpetition interest at the contract rate.  *See* Br. 42 (citing *In*

---

[10]    *Realty Associates* held that it would have been inequitable under the facts of that case to award the higher statutory rate of interest to bondholders (who appear to have held secured claims), and so awarded the contract rate of interest.  *In re Realty Assocs. Sec. Corp.*, 163 F.2d 387, 391 (2d Cir. 1947) ("We find no equities to override the bargain which the parties made for themselves . . . .").  *Empire Trust* concerns unsecured claims (debentures), but nowhere holds that they *must* receive the contract rate of postpetition interest, as this decision was controlled by the earlier *Realty Associates* decision holding that allowance of a claim did not trigger the higher state statutory rate for postjudgment interest.  *Empire Trust Co. v. Equitable Office Bldg. Corp.*, 167 F.2d 346, 347 (2d Cir. 1948).

*re Schoeneberg*, 156 B.R. 963, 972 (W.D. Tex. 1993), which discusses the "balancing of the equities test" and cites *Vanston*, 329 U.S. at 162). But the Trustee overreaches when it argues that pre-Code practice *required* unsecured creditors of solvent debtors to receive postpetition interest at the contract rate. *See* Br. ¶ 36 ("demand," "must be honored").

36.    The Trustee's main post-Code authority, *Dow III*, adopts this same balance of the equities approach. There, the court held that "other equitable factors" must be considered, together with the contract rate of interest, and remanded the case to the bankruptcy court to determine whether the default rate of interest should be awarded based on the facts of that case. *Dow III*, 456 F.3d at 680. This is not an inflexible command that unsecured creditors of solvent debtors must receive postpetition interest at the contract rate, but a further extension of *Vanston*'s balance of the equities approach. *See id.* And, as discussed above, it is neither the majority approach nor the law of this Circuit.

37.    ***Second***, this free-floating balance of equities test was superseded by the Code. The Trustee cites several authorities for the well-worn proposition that pre-Code practices will not be considered overridden unless Congress clearly indicates otherwise or discusses the change in legislative history. Br. ¶ 33. The corollary to this rule, however, is that "where the language is unambiguous, silence in the legislative history cannot be controlling." *Dewsnup v. Timm*, 502 U.S. 410, 419-20 (1992); *see also Pa. Pub. Welfare Dep't v. Davenport*, 495 U.S. 552, 563 (1990) (finding that the statutory language plainly evidenced an intent to depart from pre-Code practice). Section 502(b)(2) is just such an unambiguous provision.

38.    As one court explained, postpetition interest was a matter of federal common law and equitable principles before the Code's enactment. *See In re Manchester Gas Storage, Inc.*, 309 B.R. 354, 384 (Bankr. N.D. Okla. 2004). With section 502(b)(2), however, Congress

19

expressly established that postpetition interest is now prohibited by statute. *Id.* "Congress eliminated the subjectivity of pre-Code discretion and specifically prohibited allowance of postpetition interest by enacting Section 502(b) and specifically mandated allowance of such interest in enacting 506(b) and 726(a)(5). *The concept that postpetition interest is a matter of the bankruptcy court's equitable discretion has been superseded by statute*." *Id.* at 385 (emphasis added). This Court should similarly find that postpetition interest is governed by the plain text of the Bankruptcy Code.

39. ***Third***, applying the discretionary approach to postpetition interest from *Dow Corning* will lead to inconsistent results. The Sixth Circuit in *Dow III* begins its analysis by stating that a court's equitable powers are limited by the Bankruptcy Code, but the opinion instead injects an equitable principal unmoored to the Code. *Dow III*, 456 F.3d 668, 677-78 (6th Cir. 2006). Chief among these is that the absolute priority rule of 1129(b) operates differently in solvent and insolvent cases, even though the text of 1129(b)—unlike the text of 726(a)(5)—makes no reference to solvent or insolvent debtors. *Dow III*, 456 F.3d at 678-79. The opinion then grafts this judicially created principle to the text of section 1129(b) and holds that courts may use their discretion to award interest at the contract rate, or at any rate that they think appropriate under the circumstances of the case. *See id.* at 678-80.

40. This approach is a recipe for unnecessary and potentially unjust inconsistency. It should go without saying that a bedrock principle of the rule of law is that courts should treat like cases alike. *Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987); H. L. A. Hart, *The Concept of Law* 155 (Oxford Univ. Press 1965). In fact, one of the original reasons for establishing the Bankruptcy Code in 1978 was to address the unequal treatment of creditors and debtors. H.R. Rep. No. 93-137, at 4 (1973) (criticizing a "lack of uniform standards . . . caus[ing] unequal

treatment of creditors and debtors"). Although bankruptcy courts have always had, and should have, broad discretion over a variety of matters, they do not have a roving commission to do equity. *In re Armstrong World Indus., Inc.*, 320 B.R. 523, 540 n.31 (D. Del.), *aff'd*, 432 F.3d 507 (3d Cir. 2005). And any equitable powers of this or any other court are constrained by the Code—here, sections 502(b), 726(a)(5), and 1129(a)(7).

41.     Applying the federal judgment rate promotes uniformity within bankruptcy law. The preference for uniformity is consistent with the the Supreme Court's approach, in a different context, as to how bankruptcy courts should select interest rates. *See Till v. SCS Credit Corp.*, 541 U.S. 465, (2004). In *Till*, the Supreme Court addressed what interest rate should be used to assess whether a proposed chapter 13 debt adjustment plan paid "not less than the [claim's] allowed amount" over time. *Id.* at 468-69 (quoting 11 U.S.C. § 1325(a)(5)(B)(ii)). The Court cited a number of Code provisions where courts must choose an interest rate, including sections 1129(a)(7)(A)(ii) and 1129(b)(2)(B)(i), and stated, "[w]e think it likely the Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions." *Till*, 541 U.S. at 474. The creditor there advocated an approach based on the contract rate, but the Court rejected it in favor of one that "aim[ed] to treat similarly situated creditors similarly" by using the national prime rate and not relying "on the creditors' circumstances or its prior interactions with the debtor." *Id.* at 477, 479. Similarly, here, it would be inequitable for unsecured creditors, who are required by the Bankruptcy Code to be treated ratably, to receive varying premium recoveries based on provisions in their prepetition agreements that are expressly overruled by the Bankruptcy Code— this is the principle that underlies 502(b)(2) and even more so the use of the "legal rate."

RLF1 12996654v.1

42.     The benefits of a consistent approach extend beyond equal *outcomes*.  As the Trustee argues, unsecured creditors of a solvent debtor must receive postpetition interest to be unimpaired, and as the Trustee's endorsement of pre-Code practice implies, the proper rate of postpetition interest cannot be determined until all of the equities are balanced at confirmation. If this were true, however, stakeholders in a solvent chapter 11 case could not know until the confirmation hearing, when postpetition interest rates are assessed, whether unsecured creditors are impaired and entitled to vote on any given proposed plan of reorganization.[11]  Without clarity on this potentially significant issue, as it is in this case, parties will be hindered in their ability to negotiate plans of reorganization and consensually resolve disputes.  The consistency gained from using the uniform federal judgment rate, rather than balancing equities, thus extends beyond litigated outcomes and has salutary effects for the plan negotiation process.

43.     The Code provides for unsecured creditors of solvent debtors to receive postpetition interest at "the legal rate of interest."  *Washington Mutual* followed this textual approach, as have other courts, and this Court should follow suit to similarly hold that this rate, the federal judgment rate, is the amount of interest to which the PIK Noteholders are entitled by law.

## **CONCLUSION**

For the foregoing reasons, the EFIH Debtors respectfully request that the Court grant their objection to Proof of Claim No. 6347 to the extent the Proof of Claim requests postpetition interest at a rate greater than the federal judgment rate.

---

[11]     *See* Hr'g Tr. 37:1-9, *In re AgFeed USA, LLC*, No. 13-11761 (Bankr. D. Del. Nov. 4, 2014) (Shannon, J.) (Doc. 1557) ("Particularly, when I am talking about the determination of impairment, I believe that consistent treatment is particularly important.")

Wilmington, Delaware
Dated: September 18, 2015

/s/  *Joseph C. Barsalona II*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com
                barsalona@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession

RLF1 12996654v.1