**<u>Exhibit L</u>**

Letter from Office of the Office of Texas Attorney General



KEN PAXTON
ATTORNEY GENERAL OF TEXAS

July 2, 2015
*Sent via U.S. Mail and electronic mail*

Tom Lauria
White & Case LLP
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
tlauria@whitecase.com

RE:    *In re Energy Future Holdings Corp.*, Chapter 11, Case No. 14-10979, United States
        Bankruptcy Court for the District of Delaware

Dear Mr. Lauria,

       I write to you as bankruptcy counsel for the Public Utility Commission of Texas ("PUC"
or "Commission"). I attended by phone last week's EFH hearing in which you made the following
statements on the record:

> *Hunt Consolidated orchestrated a utility REIT transaction*
> *in Texas which was approved both through the PUC in Texas and*
> *also the IRS, and we view as a model for the transaction that we're*
> *pursing* [sic] *here.*
> *They have not only operational expertise, which has been*
> *recognized in the State of Texas, but they also have the regulatory*
> *connections and experience that we believe is vital to going forward*
> *with the transaction.*

Transcript of June 25, 2015 hearing, 56:1-8

> *. . . and we've been told by the management group at Oncor,*
> *who we understand is viewed in Texas as the premier management*
> *team of the largest utility in the State of Texas, that they're going to*
> *stay on. They'll work with us whichever direction we go, and so our*
> *expectation is that we will have what we think is the dream team*
> *from an operational perspective and from a regulatory perspective*
> *coming out of this transaction.*

Transcript of June 25, 2015 hearing, 57:9-16

> *On the regulatory approval front, I think this is really critical because we think we've checked the boxes. There's been a lot said about concern about regulatory approval. What have we done? What have we done to address what we understand to be the regulator's concerns, which is they want to have quality operational expertise at the helm and they want to have a stable business in terms of capital structure and access to liquidity going forward.*

> *We've put together the dream team. I don't think anybody is going to say that between Oncor Management and the expertise brought to the table by Hunt Consolidated that you could possibly conceive of a stronger management team for this business going forward.*

Transcript of June 25, 2015 hearing, 60:21-25 and 61:1-8

The PUC is charged under the Texas Public Utility Regulatory Act Sections 39.262(l) and (m) and 39.915, with determining whether any proposed change in control [of Oncor] is consistent with the public interest. This is a broad standard which provides significant latitude for the PUC to review factors they deem relevant to make this determination. Sections 39.262(m) and 39.915(b) require the PUC to consider "whether the transaction will adversely affect the reliability of service, availability of service, or cost of service of the . . . transmission and distribution utility."

If Oncor elects to file a Change of Control Application under the provisions of PURA section 14.101 the Commission must consider the following factors:

> (1) the reasonable value of the property, facilities, or securities to be acquired, disposed of, merged, transferred, or consolidated;
> (2) whether the transaction will:
>> (A) adversely affect the health or safety of customers or employees;
>> (B) result in the transfer of jobs of citizens of this state to workers domiciled outside this state; or
>> (C) result in the decline of service;
> (3) whether the public utility will receive consideration equal to the reasonable value of the assets when it sells, leases, or transfers assets; and
> (4) whether the transaction is consistent with the public interest.

Tex. Util. Code §§ 14.101(b)(1)-(3).

In addition, the PUC will almost certainly review the ring fence provisions from the original merger proceeding to determine which provisions may need to be applied in the upcoming

July 2, 2015
Page 3 of 3

change in control proceeding and whether any additional protections need to be included in order to protect Oncor.

As you are also no doubt aware, in the PUC's Final Order approving Sharyland's request to move their assets into the entity that ultimately became the REIT vehicle, Ordering Provision #2 recites:

> The entry of this Order does not indicate the Commission's endorsement or approval of any principle or methodology that may underlie the Stipulation. Neither shall the entry of the Order be regarded as a binding, holding, or precedent as to the appropriateness of any theory or methodology underlying the Stipulation except for the purpose of enforcing the Stipulation or this Order in any future proceeding.

Any insinuation on your part or by your clients that the deal you are proposing has been vetted by the PUC or is assured of approval is respectfully severely misplaced and we trust there will be no such further insinuations as to what the Public Utility Commission of Texas will, or will not, approve at such time as a change of control proceeding is pending before it.

Thank you for your anticipated courtesies in this matter.

Very truly yours,

Hal F. Morris
Assistant Attorney General
Managing Attorney/ Bankruptcy Regulatory Section
Office of Texas Attorney General
Direct Dial (512) 475-4550
hal.morris@texasattorneygeneral.gov

cc: *via electronic mail*
Edward Sassower, Kirkland & Ellis LLP, edward.sassower@kirkland.com
James Peck, Morrison & Foerster, jpeck@mofo.com
Andrew G. Dietderich, Sullivan & Cromwell LLP, dietdericha@sullcrom.com
Richard Schepacarter, Office of the U.S. Trustee, richard.schepacarter@usdoj.gov
Corinne Ball, Jones Day, cball@jonesday.com
Luckey McDowell, Baker Botts LLP, luckey.mcdowell@bakerbotts.com
Brian Lloyd, Public Utility Commission, brian.lloyd@puc.texas.gov
Tom Hunter, Public Utility Commission, tom.hunter@puc.state.tx.us