# Exhibit K

Minutes from Disinterested Director and Manager Board Meeting

# Exhibit 1

[Minutes]

# MINUTES OF A MEETING OF THE
# DISINTERESTED DIRECTORS
# OF ENERGY FUTURE HOLDINGS CORP.

### APRIL 1, 2015

A meeting of the Disinterested Directors of the Board of Directors (the "Board") of Energy Future Holdings Corp., a Texas corporation ("EFH" or the "Company"), was held on April 1, 2015, at 9:00 a.m. (Eastern).

**Disinterested Directors Present:**

Donald L. Evans
Billie I. Williamson

**Others Present:**

Julie M. Allen, Esq., Proskauer Rose LLP
Michael A. Firestein, Esq., Proskauer Rose LLP
Jeff J. Marwil, Esq., Proskauer Rose LLP
Mark K. Thomas, Esq., Proskauer Rose LLP
Neil Luria, SOLIC Capital
Raoul Nowitz, SOLIC Capital

Ms. Allen acted as Secretary of the meeting. Ms. Allen noted that the purpose of the meeting (i) to consider and approve the Settlement (as defined below), (ii) to consider and approve the Joint Statement of Summary of Settlement of Intercompany Claims (the "Joint Statement") to be used by the Debtors to communicate the terms of the Settlement to various creditor constituencies and other parties in interest, (iii) to authorize the report of the Settlement to the full Board as required by the Resolutions (as defined below) and (iv) to consider and approve the letter (the "Response Letter") to be sent by Proskauer Rose LLP ("Proskauer") to Sullivan & Cromwell LLP ("S&C"), counsel to the EFH/EFIH Unsecured Creditors Committee, to its letter dated March 23, 2015 to the Disinterested Directors,

others.

After discussion of the agreement in principle that had been reached among the Disinterested Directors, the disinterested manager of Energy Future Intermediate Holding Company LLC ("EFIH") and the disinterested manager of Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC ("TCEH") and its direct and indirect subsidiaries (collectively, the "TCEH Entities" and the Company, EFIH and the TCEH Entities, collectively the "Debtors") on March 26, 2015, to resolve all Settled Conflict Matters (as defined below), the following resolutions were unanimously adopted by the Disinterested Directors:

WHEREAS, by resolutions duly adopted by the Board on November 7, 2014, as supplemented by resolutions duly adopted by the Board on December 9, 2014 (collectively, the "Resolutions"), the Board delegated to the Disinterested Directors the authority to review and act upon any matter pertaining to the Chapter 11 bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Delaware under the caption In re Energy Future Holdings Corp., et al., Case No. 14-10979 (the "Chapter 11 Proceedings") on which an actual conflict exists between the Company, on the one hand, and any other Debtor, on the other hand (the "Conflict Matters");

WHEREAS, pursuant to the Resolutions, the Board delegated to the Disinterested Directors the authority to investigate and determine whether any matter constitutes a Conflict Matter;

WHEREAS, pursuant to the Resolutions, the Board delegated to the Disinterested Directors the authority to make all decisions, and to implement or direct the implementation of all such decisions, in each case on the Company's behalf, with respect to Conflict Matters;

WHEREAS, pursuant to the Resolutions, the officers, employees, advisors and agents of the Company (the "Authorized Persons") are authorized, empowered and directed to implement any decision made by the Disinterested Directors in respect of a Conflict Matter on behalf of the Company

directed by the Disinterested Directors;

WHEREAS, the Disinterested Directors retained Proskauer as their legal advisors in November 2014 and SOLIC Capital ("SOLIC") as their financial advisors in December 2014;

WHEREAS, Proskauer and SOLIC conducted a thorough due diligence review and independent investigation of the intercompany claims listed on Schedule A attached to these minutes (the "Intercompany Claims") and matters related to the intended tax-free treatment of the transactions contemplated by the Debtors' proposed Plan of Reorganization (as defined below) (the "Step-Up Matter", which is also described on Schedule A), and participated in numerous meetings and conference calls with (i) Kirkland & Ellis ("K&E") and Evercore, the non-conflict matter legal and financial advisors to the Debtors, (ii) the legal and financial advisors to the disinterested managers of each of EFIH and the TCEH Entities, (iii) Company personnel, including the Co-CROs and other management, tax, legal, finance and accounting personnel, and (iv) representatives of, and advisors to, the Company's equity holders (the "Equity Holders") and various creditors of EFIH and the Company, among others, including, without limitation, the meetings and conference calls listed on Schedule B attached to these minutes;

WHEREAS, Proskauer and SOLIC were provided access to extensive databases containing documentary due diligence materials and productions that had been made throughout the course of the Chapter 11 Proceedings, including the legacy discovery produced by the Debtors and other investigative materials prepared for the Company prior to the commencement of the Chapter 11 Proceedings, and additional materials requested by Proskauer and SOLIC, which were reviewed by Proskauer and SOLIC in the course of their due diligence review and independent investigation;

WHEREAS, Proskauer and SOLIC conducted extensive legal research, factual analysis and financial analysis, respectively, regarding the Intercompany Claims and the Step-Up Matter;

WHEREAS, Kirkland, Evercore and the Co-CROs distributed to interested parties on March 9, 2015 a plan term sheet (the "CRO Term Sheet"), which (i) included, among other terms, an aggregate $450 million allowed unsecured claim of TCEH against EFH with respect to the Intercompany Claims and the Step-Up Matter, and (ii) the Disinterested Directors supported the decision to publish the CRO Term Sheet as a process matter (although the full EFH Corp. board and the Disinterested Directors did not take any position on the merits or the particulars of the proposed economic terms or settlements set forth in the CRO Term Sheet);

WHEREAS, the Disinterested Directors held numerous meetings with Proskauer and SOLIC to discuss, among other things, the status and results of the investigation and analysis of the Intercompany Claims and the Step-Up Matter;

WHEREAS, on March 16, 2015, Munger Tolles & Olson LLP ("MTO"), as counsel to Mr. Sawyer, the Disinterested Manager of the TCEH Entities, made a settlement demand with respect to Intercompany Claims and the Step-Up Matter, demanding (i) an allowed unsecured claim of $1.2 billion[1] against the Company (including a $200 million claim against EFIH) *plus* (ii) all of the Company's NOLs at emergence *plus* (iii) 100% of all excess consideration (the "Excess received by the Company upon the sale of reorganized Energy Future Holdings Corp. and its direct or indirect subsidiaries, including reorganized Energy Future Intermediate Holding Company LLC and its subsidiaries but excluding the TCEH Entities (the "Oncor Sale") after payment in full of the creditors EFIH and the Company, and a $10 million distribution to the Equity Holders, and the directors and officers of the Debtors and the Equity Holders would receive full releases ("Full Releases") (the TCEH Demand");

---

[1] MTO contended that the Initial TCEH Demand (as defined below) was a compromise of the Intercompany Claims and the Step-Up Matter, which it contended had a litigation value in the range of $1.8 to $2.5 billion plus the litigation value of claims related to the LBO (as defined below).

4

WHEREAS, on March 18, 2015, Proskauer, on behalf of the Disinterested Directors and after extensive meetings and discussions with the Disinterested Directors, made a counter-offer to the Initial TCEH Proposal (as authorized by the Disinterested Directors at a meeting held on March 17, 2015) to MTO with respect to the Intercompany Claims and the Step-Up Matter of (i) a $100 million allowed unsecured *pari passu* claim of TCEH against the Company *plus* (ii) all of the Company's NOLs at emergence *plus* (iii) a sharing of the Excess Consideration pursuant to a reasonable waterfall to be agreed along the lines set forth in the CRO Term Sheet, in exchange for a waiver of all affirmative claims held by the Company against TCEH, a $10 million distribution to the Equity Holders, and Full Releases (the "Initial EFH Counter");

WHEREAS, between March 18, 2015 and March 24, 2015, the Disinterested Directors and the disinterested managers of EFIH and the TCEH Entities, and their respective independent legal and financial advisors, had numerous calls, conferences and discussions regarding the Intercompany Claims and the Step-Up Matter, the Initial TCEH Demand and the Initial EFH Counter;

WHEREAS, the Disinterested Directors and disinterested managers of EFIH and the TCEH Entities, together with their respective independent legal and financial advisors, held extensive in-person settlement negotiations in Dallas, Texas at the Company's offices on March 24, 25 and 26, 2015 during which meetings numerous illustrative models of varying levels of allowed claims and distributable value sharing percentages and caps were reviewed by the Disinterested Directors and the disinterested managers of EFIH and the TCEH Entities;

WHEREAS, on March 25, 2015, Hugh Sawyer, the disinterested manager of the TCEH made a further counter-proposal with respect to the Intercompany Claims and the Step-Up Matter of (i) an allowed unsecured claim of TCEH of $710 million against the Company and $25 million against EFIH *pari passu plus* (ii) a 51% (TCEH)/49% (Company) sharing of Excess Consideration until the

Company receives $42 million *plus* (iii) 100% of Excess Consideration thereafter to TCEH, and a $10 million distribution to the Equity Holders, and Full Releases;

WHEREAS, thereafter on March 25, 2015, the Disinterested Directors made a further counter-proposal with respect to the Intercompany Claims and the Step-Up Matter of (i) an allowed unsecured claim of $675 million against the Company (with no claim against EFIH) *pari passu plus* (ii) a 50/50 split of Excess Consideration until TCEH receives $800 million *plus* (iii) 100% of the Excess Consideration thereafter to the Company, and a $10 million distribution to the Equity Holders, and Full Releases;

WHEREAS, on March 25, 2015, Mr. Sawyer made a further counter-proposal with respect to the Intercompany Claims and the Step-Up Matter of (i) an allowed unsecured claim of $705 million against the Company (with no claim against EFIH) *pari passu plus* (ii) a 50/50 split of Excess Consideration until TCEH receives $925 million *plus* (iii) a 25% (TCEH)/75% (Company) sharing of Excess Consideration thereafter, and a $10 million distribution to the Equity Holders, and Full ReleasesWHEREAS, on March 26, 2015, the Disinterested Directors made a further counter-proposal with respect to the Intercompany Claims and the Step-Up Matter of (i) an allowed unsecured claim of $700 million against the Company (no claim against EFIH) *pari passu* with a $700 million recovery by the Company's creditors and 50/50 split of Excess Consideration until TCEH receives $800 million with all Excess Consideration thereafter going to the Company, and a $10 million distribution to the Equity Holders;

WHEREAS, on March 26, 2015, the Disinterested Directors and the disinterested managers of EFIH and the TCEH Entities reached an agreement in principle with respect to the Settlement, the terms of which are set forth below, subject to documentation and final approval by the Disinterested Directors and the disinterested managers of EFIH and the TCEH Entities; and

WHEREAS, attached to these minutes as <u>Schedule C</u> is a financial spreadsheet that provides illustrative distributions based on anticipated realized values from the Oncor Sale that may result from implementation of the Settlement. It must be emphasized that the delineated hypothetical distributions in <u>Schedule C</u> are illustrative only and do not represent the exact terms of the Settlement. To the extent there is any difference between the hypothetical distributions in <u>Schedule C</u> and the exact terms of the Settlement as described here or embodied in the Plan of Reorganization, the latter shall control over the contents of <u>Schedule C</u>;

NOW, THEREFORE, BE IT RESOLVED, that the Disinterested Directors, in the exercise of their business judgment, do hereby determine that all pre-petition inter-Debtor claims, causes of action and disputes (including avoidance actions), including, without limitation, the Intercompany Claims and the Step-Up Matter (all of such pre-petition matters and the Step-Up Matter, collectively, the "<u>Settled Conflict Matters</u>"), are Conflict Matters;

FURTHER RESOLVED, that the Disinterested Directors, in the exercise of their business judgment, do hereby determine that a global resolution of the Settled Conflict Matters is an essential component of a confirmable plan of reorganization in the Chapter 11 Proceedings insofar as the resolution of some, but not all, Settled Conflict Matters would not reduce the expense, delay, inconvenience, management distraction and risk associated with litigation of any of such matters;

FURTHER RESOLVED, that the Disinterested Directors, in the exercise of their business judgment, do hereby determine that while the Disinterested Directors believe that the Company has Intercompany Claims against the TCEH Entities and defenses to the Intercompany Claims of EFIH and the TCEH Entities against the Company, (i) none of the Intercompany Claims is without risk of (ii) some of the Intercompany Claims, if successful, pose substantial financial risk to the Company and (iii) litigating any of the Intercompany Claims would involve substantial expense, inconvenience and

7

management distraction as well as significant delay in the Chapter 11 Proceedings, all to the harm of operating businesses and creditors of the Company;

FURTHER RESOLVED, that, the Disinterested Directors, in the exercise of their business judgment, do hereby determine that (i) the Settlement reflects consideration of all the Intercompany Claims and the Step-Up Matter taken together, (ii) the Settlement eliminates costs of continued litigation and avoids delay in distribution to creditors, (iii) the Settlement falls within the reasonable range of litigation possibilities and (iv) the Settlement is in the best interests of the Company's estate and its stakeholders in prosecuting a feasible and confirmable chapter 11 plan of reorganization;

FURTHER RESOLVED, that, the Disinterested Directors, in the exercise of their business judgment, do hereby determine that the plan of reorganization (the "Plan of Reorganization") to be filed by the Debtors in the Chapter 11 Proceedings shall incorporate the following agreed-upon terms of the settlement (the "Settlement") of all pre-petition intercompany claims, causes of action and disputes among the Debtors and the Step-Up Matter:

- TCEH shall have an allowed unsecured non-priority claim of $700,000,000 in the Chapter 11 Proceedings, which claim shall receive the same form of distributable value as all other unsecured non-priority EFH creditors under any plan of reorganization (the "TCEH Claim").

- After full satisfaction of all allowed administrative, priority and secured claims against EFH, the next $1,410,000,000 of distributable value from the EFH estate shall be distributed as follows: (a) EFH shall retain 49.645% for distribution on account of allowed unsecured claims and interests (other than the TCEH Claim); (b) TCEH shall receive 49.645% on account of the TCEH Claim; and (c) the EFH equity holders shall receive 0.709%.

- Distributable value from the EFH estate above $1,410,000,000 shall be distributed as follows: (a) TCEH shall receive 50%, until TCEH receives an additional $105,000,000, for a total distribution to TCEH of $805,000,000; and (b) EFH shall retain 50% for distribution on account of allowed unsecured claims and interests (other than the TCEH Claim).

- Once TCEH has received a total of $805,000,000 in distributable value, all remaining distributable value from the EFH estate shall be retained by EFH and distributed in accordance with the terms of the plan of reorganization.

- The sharing of distributable value between EFH's stakeholders and TCEH as described above shall not be affected by the total amount of allowed unsecured claims in the EFH Case. If allowed Other EFH Claims are less than $700,000,000, EFH shall remain entitled to the same percentages of distributable value from the EFH estate as described above. If allowed Other EFH Claims are greater than $700,000,000, TCEH shall remain entitled to the same percentages of distributable value from the EFH estate as described above, up to a maximum aggregate distribution of $805,000,000.

- Each of (a) the disinterested directors of EFH, (b) the disinterested manager of EFIH, and (c) the disinterested manager of TCEH may (without the consent of the other disinterested managers or disinterested directors, as applicable) terminate the Settlement if any of them determines, based on the advice of counsel, that termination of the Settlement would be consistent with the exercise of their fiduciary duties.

- The Plan of Reorganization to be filed will provide for the spin-off of TCEH in a tax-free transaction, and the tax-free reorganization of EFH and EFIH.

FURTHER RESOLVED, that the Disinterested Directors, in the exercise of their business judgment, having found that the Settlement is fair and equitable and is within the range of litigation possibilities and above the lowest point in the range of reasonableness, considering, among other things, (i) the complexity of the Intercompany Claims and the Step-Up Matter, (ii) the expense, inconvenience, management distraction and delay of litigating the Intercompany Claims, (iii) the inherent uncertainty of success in litigation, (iv) the likely difficulties in collection with respect to the Intercompany Claims and (v) the paramount interest of maximizing the value of the Company's estate for the benefit of its creditors, do hereby approve the Settlement;

FURTHER RESOLVED, that the Disinterested Directors, in the exercise of their business judgment, do hereby approve the Joint Statement substantially in the form attached to these minutes as Schedule D;

FURTHER RESOLVED, that the Disinterested Directors, in the exercise of their business judgment, do hereby approve the Response Letter, substantially in the form previously distributed to

9

Disinterested Directors, and do hereby direct Proskauer to deliver the Response Letter to S&C.

There being no further business to come before the meeting, the meeting was adjourned at approximately 10:00 a.m. (Eastern).

/s/ Julie M. Allen
Julie M. Allen, Secretary of the Meeting