# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) | (Jointly Administered)  **Re: D.I. 6141** |

**DECLARATION OF ROBERT FRENZEL IN
SUPPORT OF THE MOTION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER
AUTHORIZING REJECTION OF A PREVIOUSLY ASSUMED
NONRESIDENTIAL REAL PROPERTY LEASE BETWEEN LUMINANT
GENERATION COMPANY LLC AND THE CITY OF DALLAS,
TEXAS, EFFECTIVE *NUNC PRO TUNC* TO SEPTEMBER 22, 2015**

Pursuant to 28 U.S.C. § 1746, I, Robert Frenzel, hereby declare as follows under penalty of perjury:

1. I am the Senior Vice President and Chief Financial Officer of Luminant Generation Company LLC ("Luminant"), an indirect subsidiary of Energy Future Holdings Corp. ("EFH Corp."), both of which are organized under the laws of the state of Texas. EFH Corp.'s direct subsidiary Energy Future Competitive Holdings Company LLC ("EFCH"), a limited liability company organized under the laws of the state of Delaware; EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC, a limited liability company organized under the laws of the state of Delaware; EFH Corp.'s direct subsidiary, Energy Future Intermediate Holding Company LLC, a limited liability company organized under the laws of the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

state of Delaware; and various other direct and indirect subsidiaries of EFH Corp. that are debtors in these chapter 11 cases, are collectively referred to as the "Debtors" in this declaration.

2. I have worked for the Debtors since 2009. I am generally familiar with the Debtors' businesses, day-to-day operations, financial matters, results of operations, cash flows, and underlying books and records. All facts set forth in this declaration are based upon my personal knowledge of the Debtors' businesses, operations, and related financial information gathered from my review of their books and records, relevant documents, and information supplied to me by members of the Debtors' management team and advisors. I am over the age of 18 and duly authorized to execute this Declaration on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp.,* et. al, *for Entry of an Order Authorizing Rejection of a Previously Assume Nonresidential Real Property Lease Between Luminant Generation Company LLC and the City of Dallas, Texas, Effective* Nunc Pro Tunc *to September 22, 2015* [D.I. 6141] (the "Motion").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3. On February 18, 1974, Texas Utilities Generating Company, predecessor-in-interest to Luminant ("Texas Utilities"), and the Sabine River Authority of Texas (the "SRA")[3] entered into a water supply facilities agreement whereby SRA would construct, own, and operate the Lake Fork Reservoir and Texas Utilities would pay SRA amounts to help cover the construction bonds, and operating and maintenance costs, and, in return, have the right

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

[3] The Debtors are also parties to a contract, dated as of April 1, 2007, with the SRA (the "SRA Contract") that provides for, among other things, the release of the Luminant Water (as defined herein) from the SRA to Luminant. Under its terms, the SRA Contract expires on the date on which Luminant's rights to the Luminant Water under the Water Rights Lease expires. Substantially contemporaneous herewith, the Debtors are moving to reject the SRA Contract out of an abundance of caution consistent with the Debtors' procedures for the rejection, assumption, or assumption and assignment of executory contracts and unexpired leases [D.I. 2015].

2

to use up to 120,000 acre-feet of water per year from SRA's water rights in the Lake Fork Reservoir (the "TXU Junior Water Rights").  That same year, the Texas Water Rights Commission, predecessor to the Texas Commission on Environmental Quality ("TCEQ"), granted Permit No. 2948 to SRA allowing it to construct the Lake Fork Reservoir, impound a certain amount of water in the Lake Fork Reservoir, and divert a certain amount of water from the Lake Fork Reservoir for industrial use (the "SRA Senior Water Rights").

4. On October 1, 1981, SRA, Texas Utilities, and the City of Dallas, Texas ("Dallas") entered into a Water Supply Contract and Conveyance Agreement (the "Water Rights Option Agreement") under which Dallas obtained the TXU Junior Water Rights from Texas Utilities (following such transfer, the "Dallas Junior Water Rights").  Texas Utilities entered into the Water Rights Option Agreement, which allowed it to reserve an option to obtain, for a period running through the end of 2013, the right to use up to 17,000 acre-feet of water out of the Dallas Junior Water Rights (the "Water Rights Option"), based on potential long-term plans, including possible expansion of the Martin Lake Steam Electric Station ("MLSES"), located in Tatum, Texas.  Under the Water Rights Option Agreement, Texas Utilities' deadline to exercise the Water Rights Option was to expire on September 1, 1994.

5. On July 30, 1986, the SRA, Texas Utilities, and Dallas amended the Water Rights Option Agreement to extend Texas Utilities' deadline to exercise the Water Rights Option to September 1, 2009, and to extend the term of the water use right (if the Water Rights Option was exercised) from December 31, 2013 to the date that is 40 years from the date of exercise.  TXU Generation Company LP, predecessor-in-interest to Luminant, exercised the Water Rights Option for the right to use up to 17,000 acre-feet of water out of the Dallas Junior Water Rights on July 24, 2006.

RLF1 13041687v.1

6. In 2007, SRA and Luminant entered into a water release agreement setting forth the terms of SRA's release of water (from the SRA Senior Water Rights) for use by Luminant (in connection with its exercise of the Water Rights Option for up to 17,000 acre-feet of water out of the Dallas Junior Water Rights). Then, in 2011, to maintain sufficient water levels in Martin Lake in connection with the operation of the MLSES, Luminant and Dallas entered into the Water Rights Lease providing Luminant the right to use up to 12,000 acre-feet of water per year for a defined term commencing on January 1, 2011 and remaining in effect for a term of 40 years until December 31, 2050 (the "Luminant Water").[4] Luminant entered into the Water Rights Lease in a time of drought, when Martin Lake was at approximately 50 feet of conservation level,[5] and with the foresight to manage its potential water needs at Martin Lake.

7. The Debtors' payments under the Water Rights Lease are calculated based on the current prevailing rate for untreated water, as specified by Dallas ordinance, and all costs, fees, or charges imposed by the SRA to implement deliveries of water and maintain necessary water delivery facilities. The rates under the Water Rights Lease are subject to change from time to time. In fact, the Debtors have experienced significant increases in the rate since the inception of the Water Rights Lease. Indeed, the current prevailing rate for the Luminant Water is $182.90[6] per acre-foot compared to $155.37 per acre-foot in 2011. The Debtors are required to pay for the Luminant Water, regardless of whether the Debtors actually use any of the Luminant Water. While the rates have increased, the Debtors' usage of water under the Water Rights Lease has

---

[4] The Water Rights Lease is subject to the terms of the Water Rights Option Agreement.

[5] Martin Lake has a capacity conservation level of 306 feet. See Comprehensive Sabine Watershed Management Plan Report, *Section 3 - Existing Surface Water Supplies*, http://www.sratx.org/srwmp/comprehensive_plan/final_report/html/Section3/Section3.htm (last visited September 22, 2015).

[6] The 2015 rate does not include the costs, fees, and other charges imposed by the SRA for the period. As such, the rate is expected to be substantially higher than what is currently reflected.

decreased, with zero acre-feet being used in 2014 and 2015, compared to over 12,000 acre-feet in 2011 and over 18,000 acre-feet in 2012.

8.  A number of reasons have contributed to the decrease in water usage under the Water Rights Lease. Most importantly, Martin Lake and most of east Texas' reservoirs have fully recovered from the 2011 drought.[7] Further, the MLSES is currently in seasonal operations and requires substantially less water to maintain operations than previously required. Furthermore, the longer-term forecast generation profile for MLSES is diminished due to expected market conditions. Finally, the Debtors are not currently considering an expansion of the MLSES that would require use of the Luminant Water. As such, the Debtors are paying for an asset that is not utilized, is not expected to be utilized, has gotten more expensive each year, and is forecast to become increasingly more expensive in the future.

9.  On May 15, 2015, Dallas notified Luminant that in response to a substantial rate increase from the SRA, the rate payable by Luminant to Dallas would increase beginning in October 1, 2015. The increased rate will result in approximately $1 million of additional payments annually from Luminant to Dallas in order to continue the Water Rights Lease, an approximate fifty-percent (50%) increase. Dallas has been engaged in protracted litigation with SRA regarding this rate increase (the "SRA-Dallas Litigation"), but there is no guaranty that the SRA-Dallas Litigation will be resolved in Dallas' favor. Further, even if Dallas is successful in the SRA-Dallas Litigation, Luminant has no guarantee that its rate will be reduced or to what it will be reduced. Thus, Luminant remains exposed to uncertain payments for the Luminant Water through the end of the Water Rights Lease term in 2050.

---

[7] As of September 22, 2015, Martin Lake is 87.7 percent full with a water level of 303.97 feet. *See* Water Data for Texas, http://www.waterdatafortexas.org/reservoirs/individual/martin (last visited September 22, 2015).

5

10. The Water Rights Lease allows the Debtors to resell any unused Luminant Water to a third party. The Water Rights Lease, however, restricts resale by the Debtors to short-term water agreements of no longer than a three-year term. The general nature of water usage and needs is not conducive to short-term water leases. First, the cost outlays prohibit most short-term water leases because, many times, the lessee is required to build the infrastructure necessary to transport or divert the water. Second, parties seeking water are typically interested in satisfying long-term water needs and typically seek agreements with a minimum term of ten (10) years to satisfy these needs. In fact, SRA tends to not favor the issuance of short-term subleases because of the possibility that the entity subleasing the water will ultimately need it long-term. As such, a maximum term length of three years makes this water virtually unmarketable.

11. The Debtors are also limited in the sources to which this water can be marketed under Texas law. While other basins in Texas may be depleted or in need of water, the ability of Debtors to perform inter-basin transfers is an arduous, lengthy, and costly regulatory process. Once submitted, an application for inter-basin transfer is subject to notice, comments, at least one public meeting, and submission of a drought contingency plan. Not only is it cost prohibitive for the Debtors to sell any unused Luminant Water outside of the Sabine River Basin, it is also unlikely that the Debtors would be successful in reselling the Luminant Water within the Sabine River Basin in a period of drought because any potential purchaser would likely prefer to contract directly with SRA to avoid any additional costs to the water imposed by Dallas.

12. The Debtors previously assumed the Water Rights Lease as a nonresidential real property leases on October 27, 2014, in advance of the deadline set forth under section 365(d)(4)

of the Bankruptcy Code.[8]  But the Debtors have since determined that it is no longer economically feasible or operationally justifiable to continue the Water Rights Lease given that the Debtors have not used the Luminant Water since prior to the Petition Date and the price for the Luminant Water has increased substantially since the inception of the Water Rights Lease and the date of the assumption.  Further, the price for the Luminant Water is expected to increase further, resulting in additional exposure to future rate increases from Dallas through the end of the term in 2050, at a time when the Debtors have decreased long-term water needs at Martin Lake.  Therefore, the Debtors seek to reject the Water Rights Lease and reallocate costs currently expended under the Water Rights Lease on more appropriate projects.

13. The Debtors have determined that rejection of the Water Rights Lease is in the best interests of the Debtors, their creditors, and other parties in interest.  As an initial matter, the Water Rights Lease is not necessary for the Debtors' business operations, and the Debtors do not expect to need the water provided under the Water Rights Lease for the future operations of the MLSES.  Further, based on the limited third-party re-sell rights included within the Water Rights Lease, the Debtors have estimated that the Water Rights Lease does not have any material, realizable value in the marketplace.  And, absent rejection, the Water Rights Lease will impose unnecessary costs—that can be escalated at any time—on the Debtors' estates for approximately the next 34 years.

---

[8] See Order Approving the Assumption of Certain Executory Contracts and Unexpired Leases [D.I. 2574].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Dated: September 22, 2015

*/s/ Robert Frenzel*
Robert Frenzel
Senior Vice President and Chief Financial Officer
Luminant Generation Company LLC

RLF1 13041687v.1