# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588

WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

September 24, 2015

Via ECF and Hand Delivery

Honorable Christopher S. Sontchi,
   United States Bankruptcy Court for the District of Delaware,
      824 N. Market Street, 5th Floor,
         Wilmington, DE 19801.

        Re:   *In re Energy Future Holdings Corp., et al.*,
               Case. No. 14-10979 (CSS)

Dear Judge Sontchi:

      We are counsel to the official committee (the "EFH Committee") of unsecured creditors of Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), EFIH Finance Inc., and EECI, Inc. (together with EFH, EFIH and EFIH Finance Inc., the "EFH Debtors"). In light of the Debtors' recent change in the merger currency for the REIT Plan[1] from "payment in full in cash" to potential payment with securities of reorganized TCEH, we do not believe the current schedule gives objectors a fair opportunity to complete discovery and address newly relevant issues between now and November 3, 2015. The EFH Committee respectfully requests an extension of the hearing date for the REIT Plan to the earliest date open on the Court's calendar after the Thanksgiving holiday. This relatively short extension should be sufficient; teams from many law firms have been working nonstop, and there has been considerable progress in discovery on the cash transaction everyone thought (before Monday) was the subject of the November 3 hearing.

      The balance of equities weighs strongly in favor of a short extension.

      The EFH Committee and other parties initially agreed to a schedule that contemplated a contested confirmation hearing in January.[2] At the time, the parties

---

[1]   The "REIT Plan" is the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6123], as it may be amended.

[2]   *See Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates*

SC1:3949016.4

Honorable Christopher S. Sontchi                                                                                                    -2-

expected that hearing to address both challenges to the confirmation and the substance of the Settlement Agreement,[3] which existed only as a component of the plan of reorganization. The agreement on the January hearing date included an exception: if there was a T-side plan that paid E-side creditors in full in cash, the confirmation hearing could be held as early as October. The words "in cash" were essential to that agreement. The T-side sponsors initially proposed that the order read "payment in full." The EFH Committee insisted that it say "payment in full *in cash*." That change was accepted, agreed and reflected in the Original Scheduling Order.[4]

Payment in full in cash was also central to the Debtors' pleadings, arguments to the Court, and public statements concerning the schedule to pursue confirmation of the REIT Plan based on the underlying merger transaction. In reliance on what the Debtors said, the Court set the November 3 hearing date over the objection of the EFH Committee and other E-side parties based on the understanding that E-side creditors would be paid in full in cash.[5]

The resulting Amended Scheduling Order[6] set a fact discovery deadline of October 2, 2015. The Debtors, the EFH Committee, and the other objecting parties have worked around the clock to complete the core document discovery and related depositions for the cash merger transaction on this highly expedited schedule. There are 11 depositions that are scheduled to occur over 10 days, the first of which was completed yesterday. There is simply no room in such a compressed schedule to now include additional document discovery—including re-review of documents already produced and consideration of whether additional document discovery is necessary—and additional deposition time on an entirely new line of inquiry, namely, potential reinstatement of EFH bonds at reorganized TCEH. The EFH Committee and its constituents have to date had no reason to pay more than superficial attention to the capital structure on the

---

      *in the Disclosure Statement's Scheduling Order* [D.I. 4916] (the "Original Scheduling Order"), ¶ 8 (confirmation hearing shall commence on January 20, 2016).

[3] The "Settlement Agreement" is that Revised Settlement Agreement attached as Exhibit A to *Notice of Filing of Revised Exhibit to Order in Connection With "Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement" D.I. 5249* [D.I. 6085].

[4] Original Scheduling Order, ¶ 9 (confirmation hearing to commence on October 5, 2015 if the amended Plan proposes to pay all allowed claims of EFIH and EFH creditors ***in full in cash***) (emphasis added).

[5] Aug. 25, 2015 Hr'g Tr. 30:2-21; 35:7-11; 149:4-5.

[6] The "Amended Scheduling Order" is the *Amended Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization* [D.I. 5771].

Honorable Christopher S. Sontchi                                                                                                   -3-

reorganized T-side.  This capital structure is irrelevant to a merger transaction that pays all allowed claims of E-side creditors in full in cash.  However, with the Debtors' new idea to "pay" EFH bondholders by giving them securities of reorganized TCEH, the T-side capital structure becomes the single most important issue in determining the ultimate recovery for EFH bondholders.  The EFH Committee is consulting with its professionals and other E-side creditors about the scope of additional document discovery necessary.  With plan confirmation discovery already well underway and the time for fact discovery nearing completion, the EFH Committee sees no alternative but to request extension of the current schedule.

        Any effort by the Debtors or the plan sponsors to point to the boilerplate language of the non-consensual REIT Plan misses the point.  The key problem with reinstatement of EFH bonds for the EFH Committee from a scheduling standpoint is not the language in the REIT Plan, written conventionally and broadly to reserve rights under the Bankruptcy Code, but the nature of the actual merger transaction the Debtors propose to bring to the Court at the confirmation hearing.  The change to a transaction that does not pay cash raises new issues to be addressed.  This change is a surprise.  Discovery about the merger transaction so far has been consistent with the Debtors' public posture and representations to this Court:  the merger transaction pays E-side creditors "in full in cash."  Not only has this been the description of the merger transaction presented to the EFH Committee, it also appears to be the basis on which the directors of EFH and EFIH *themselves* determined that the REIT merger was in the best interests of creditors.  Billie Williamson, a director of EFH, testified at her deposition that "full payment in cash to the E side creditors" was one of the reasons that EFH agreed to enter into the recently approved Plan Support Agreement.  (Williamson Tr., Sept. 15, 2015 at 17:17-18.)  Charles Cremens, a director of EFIH, testified at his deposition that the "number one" reason for EFIH's entry into the Plan Support Agreement to pursue the REIT Plan is "a hundred percent cash payout to the E side, not only EFIH, but the parent as well."  (Cremens Tr., Sept. 15, 2015 at 47:20-25.)  Both depositions were conducted only last week.

        A change from a cash merger to a merger that pays in reorganized TCEH securities is relevant to many confirmation requirements on which the Debtors bear the burden of proof, including feasibility, impairment, good faith, compliance with fiduciary duties, and the simple question of whether the EFH directors knew what was going on when they decided the REIT Plan was better for EFH creditors than available alternatives.  In order to prepare for the confirmation hearing, the EFH Committee now requires an expert to evaluate the T-side business, who in turn will require access to the Debtors' documents and testimony to understand—and test—the feasibility of long-term bond payments, involving not just the projected value of reorganized TCEH, but projected cash flow on the T-side available for debt service.  With expert reports currently due on October 12, it is simply unrealistic to expect this work to be completed

Honorable Christopher S. Sontchi -4-

in less than three weeks.  In addition, the EFH Committee is entitled to explore *why* the sudden change in business direction, especially after quasi-consensual resolution of important milestones, such as the Plan Support Agreement approval, justified by the Debtors on the existing record and in numerous informal conversations premised on the REIT Plan satisfying EFH and EFIH claims in cash.  The recent change also leads to the obvious question of whether there is no longer enough cash available under the REIT Plan to actually pay E-side creditors in full in cash.

A modest extension is fully consistent with the PSA as approved by the Court.[7]  The PSA itself does not contemplate a rush to confirmation, but a more conventional march.  It terminates if the REIT Plan is not confirmed on or prior to January 15, 2016.  With the PSA now in place and work underway (including the pursuit of regulatory approvals), there is no basis to believe the Debtors or any other party will suffer prejudice by delaying the confirmation hearing four weeks.

To the contrary, E-side unsecured creditors bear the risk of and benefit of any disposition of Oncor and their interests should be paramount in considering when to proceed with confirmation.  Since the PSA effectively prohibits the pursuit of better alternatives, the E-side creditors bear the true cost of waiting to resolve the disputed issues concerning the REIT Plan.  The EFH Committee also bears the risk of case expenses if the REIT Plan is not confirmed or is confirmed and fails to close.  The EFH Committee respectfully submits that a short extension will improve the chances for an orderly resolution, and is worth any costs of a modest delay.

For these reasons, the EFH Committee requests a one-month extension of the current schedule, with the confirmation hearing to begin as soon as possible after the Thanksgiving holiday or as determined by the Court.  The EFH Committee is confident that extending the hearing date will permit the parties to develop a sensible revised schedule, including the adjournment of certain presently scheduled depositions to consider the impact of the Debtors' potential reinstatement of EFH bonds and obviate the need to recall witnesses.  As of now, the EFH Committee is proceeding with scheduled depositions premised on a cash merger transaction, with all rights reserved on the issue of recalling witnesses to address the new issue of reinstatement.

---

[7] The "Plan Support Agreement" or "PSA" is the Amended and Restated Plan Support Agreement attached as Exhibit C to the *Certification of Counsel Concerning Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement* [D.I. 6019].

SC1:3949016.4

Honorable Christopher S. Sontchi                                                                                         -5-

        We are available to address any questions at the Court's convenience.

        Respectfully submitted,

        /s/ Andrew G. Dietderich

        Andrew G. Dietderich

cc:   All Participating Parties (via E-mail)
      All counsel of record (via ECF)

SC1:3949016.4