PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

WRITER'S DIRECT DIAL NUMBER
(212) 373-3209

WRITER'S DIRECT FACSIMILE
(212) 492-0209

WRITER'S DIRECT E-MAIL ADDRESS
akornberg@paulweiss.com

UNIT 3601, OFFICE TOWER A, BEIJING FORTUNE PLAZA
NO. 7 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT
BEIJING 100020
PEOPLE'S REPUBLIC OF CHINA
TELEPHONE (86-10) 5828-6300

12TH FLOOR, HONG KONG CLUB BUILDING
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, U.K.
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
ALLAN J. ARFFA
ROBERT A. ATKINS
JOHN F. BAUGHMAN
LYNN B. BAYARD
DANIEL J. BELLER
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
JAMES L. BROCHIN
RICHARD J. BRONSTEIN
DAVID W. BROWN
SUSANNA M. BUERGEL
PATRICK S. CAMPBELL*
JESSICA S. CAREY
JEANETTE K. CHAN
YVONNE Y.F. CHAN
LEWIS R. CLAYTON
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
CHARLES E. DAVIDOW
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
LESLIE GORDON FAGEN
MARC FALCONE
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ROBERT C. FLEDER
MARTIN FLUMENBAUM
ANDREW J. FOLEY
HARRIS B. FREIDUS
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
ROBERT D. GOLDBAUM
NEIL GOLDMAN
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
GAINES GWATHMEY, III
ALAN S. HALPERIN
JUSTIN G. HAMILL
CLAUDIA HAMMERMAN
GERARD E. HARPER
BRIAN S. HERMANN
MICHELE HIRSHMAN
MICHAEL S. HONG
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
BRIAN M. JANSON
JAREN JANGHORBANI
MEREDITH J. KANE

ROBERTA A. KAPLAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
ALAN W. KORNBERG
DANIEL J. KRAMER
DAVID K. LAKHDHIR
STEPHEN P. LAMB*
JOHN E. LANGE
DANIEL J. LEFFELL
XIAOYU GREG LIU
JEFFREY D. MARELL
MARCO V. MASOTTI
EDWIN S. MAYNARD
DAVID W. MAYO
ELIZABETH R. McCOLM
MARK F. MENDELSOHN
WILLIAM B. MICHAEL
TOBY S. MYERSON
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
MARC E. PERLMUTTER
VALERIE E. RADWANER
CARL L. REISNER
LORIN L. REISNER
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
DALE M. SARRO
TERRY E. SCHIMEK
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
STEPHEN J. SHIMSHAK
DAVID R. SICULAR
MOSES SILVERMAN
STEVEN SIMKIN
JOSEPH J. SIMONS
ADAM J. SOLOWAY
SCOTT M. SONTAG
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
ROBYN F. TARNOFSKY
MONICA K. THURMOND
DANIEL J. TOAL
LIZA M. VELAZQUEZ
MARIA T. VULLO
ALEXANDRA M. WALSH*
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
BETH A. WILKINSON
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
JULIA MASON WOOD
JENNIFER H. WU
JORDAN E. YARETT
KAYE N. YOSHINO
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

By ECF

September 28, 2015

Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 N. Market Street, 5th Floor
Wilmington, DE 19801

       *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (CSS)

Dear Judge Sontchi:

       We write on behalf of the ad hoc committee of TCEH first lien creditors (the "TCEH First Lien Ad Hoc Committee") in response to the letter (the "EFH Committee Letter"), dated September 24, 2015, from counsel to the official committee of unsecured creditors of the EFH Debtors,[1] in which the EFH Committee belatedly requests a nearly one-month adjournment of the upcoming confirmation hearing. The EFH Committee Letter fails to establish cause to deviate from the recently-approved Amended Scheduling Order, and the TCEH First Lien Ad Hoc Committee respectfully requests that

---

[1]   Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the EFH Committee's Letter or the Plan (as defined below), as applicable.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Christopher S. Sontchi                                                    2

the Court deny this latest misguided attempt by the EFH Committee to further delay this
Court's consideration of the Plan on its merits.[2]

       The fundamental premise of the EFH Committee's request—that there has
been a "recent change" to the Plan's proposed treatment of the EFH Legacy Notes that
necessitates additional and unforeseen discovery—is belied by the unambiguous terms of
the Plan documents that have been on file with the Court for weeks, as well as the public
filings of one of the EFH Committee's own members, and should be rejected by the
Court.

       On August 10, 2015, the Debtors filed their *Third Amended Joint Plan of
Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the
Bankruptcy Code* [D.I. 5244] (the "Third Amended Plan"), pursuant to which the Debtors
proposed to render all E-side creditors (including the holders of Allowed EFH Legacy
Note Claims) unimpaired. The Third Amended Plan proposed to accomplish such goal
by providing that all holders of Allowed Claims against the E-Side would receive either
"payment in full in cash **or other treatment rendering such Claim Unimpaired**."[3]
This latter option was not buried deep within the Third Amended Plan's defined terms,
but rather was featured prominently in the section which describes the treatment for 16
classes of claims against the E-Side creditors, including the Class that is comprised of the
EFH Legacy Note Claims.

       This element of optionality was not lost on at least one of the EFH
Committee's own members. American Stock Transfer & Trust Company LLC, the
indenture trustee for the EFH Legacy Notes and a member of the EFH Committee (the
"EFH Indenture Trustee"), filed a sixteen page objection to approval of the Disclosure
Statement for the Third Amended Plan, in which it focused on the meaning of this very
provision. *See Objection of EFH Indenture Trustee to Approval of Disclosure Statement
for the Third Amended Joint Plan of Reorganization of Energy future Holdings Corp., et
al.* [D.I. 5355], ¶¶ 3-4, 10-14. Proving the age-old adage that no good deed goes
unpunished, in an effort to resolve the EFH Indenture Trustee's Disclosure Statement
objection, the Debtors revised the Third Amended Plan and related Disclosure Statement
to replace this generic description of unimpairment with an express articulation of the
only manner in which the Debtors could render the EFH Legacy Notes unimpaired other

---

[2]   The "Plan" is the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.,
Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6123], as it may be amended from time to time in
accordance with its terms.

[3]   *See, e.g.,* Third Amended Plan, Article III.B.5 (emphasis added). An earlier version of the Plan in
which the Debtors retained flexibility to pursue either an E-Side merger or creditor-equitization
restructuring transaction also utilized identical language in the context of the "Merger Scenario." *See
Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter
11 of the Bankruptcy Code* [D.I. 5078], filed on July 23, 2015, Article III.B.4.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Christopher S. Sontchi                                                3

than through payment in full in cash—by reinstating such notes under section 1124(2) of the Bankruptcy Code.

The EFH Committee cannot legitimately claim that it is now "surprised" by this application of black letter bankruptcy law.  Again, the EFH Indenture Trustee's Disclosure Statement objection is instructive, as it specifically quoted section 1124 of the Bankruptcy Code in arguing that the Third Amended Plan did not render the EFH Legacy Notes unimpaired.[4]  While that issue—the extent to which the Plan satisfies the requirements of section 1124 of the Bankruptcy Code and renders the EFH Legacy Note Claims unimpaired—is one that remains open for debate, and all parties will have a full and fair opportunity to test its merits in connection with confirmation, no party (and certainly not the EFH Committee) can credibly contend that it requires additional time and discovery to consider an issue that has been readily apparent on the face of the Debtors' plan documents for weeks.

Nor can the EFH Committee claim that it is surprised that the EFH Legacy Notes, if reinstated, would become obligations of Reorganized TCEH.  To be clear, this element of reinstatement is not dictated by the Plan, but rather by the EFH Legacy Note Indentures themselves.  Specifically, those indentures provide that upon a separation of TCEH from EFH, there will be a default under the indentures unless the successor to the T-Side business (in this instance, Reorganized TCEH) assumes EFH's obligations.[5]  Accordingly, the holders of the EFH Legacy Notes have unquestionably been on notice of (and indeed specifically bargained for) this very outcome.[6]

Importantly, and as the TCEH First Lien Ad Hoc Committee has stressed on numerous occasions in the past, there are significant costs associated with prolonging these chapter 11 cases (many of which are borne disproportionately by the TCEH first lien creditors) that greatly outweigh any purported benefit to the EFH Committee of further delaying the confirmation process.  In addition to the astronomical administrative expenses arising from professional fees and interest expense, the TCEH Debtors have suffered significant value degradation as a result of, among other things, their inability to pursue strategic transactions while operating in these litigious chapter 11 cases.  Billions

---

[4]    *See* EFH Indenture Trustee Disclosure Statement Objection at ¶ 11.

[5]    *See, e.g.*, section 1101(a) of the EFH Legacy Series Q Indenture and section 3.01 of the EFH Legacy Series Q Supplemental Indenture.

[6]    Given the impact of reinstatement on Reorganized TCEH, the Debtors' ability to elect this form of treatment is subject to, *inter alia*, the consent of the TCEH First Lien Supporting Creditors.  *See* Plan Article III.B.4.  As of the date hereof, the Debtors, the TCEH First Lien Supporting Creditors and the Plan Sponsors have not agreed on the terms and conditions upon which Reorganized TCEH would assume the reinstated EFH Legacy Notes (including, most notably, the amount of consideration that Reorganized TCEH would receive in connection therewith).  The TCEH First Lien Ad Hoc Committee reserves all rights in that regard.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Christopher S. Sontchi                                                    4

of dollars of value is being squandered on the T-Side while it remains hostage to the E-Side creditors' incessant disputes regarding their entitlements to amounts in excess of a par recovery (as contrasted with the 59.4% expected recovery for the TCEH first lien creditors under the Plan).[7]  After nearly seventeen months in chapter 11, the TCEH first lien creditors should not be required to bear this value destruction any longer; it is time for the parties to end their posturing and gamesmanship and begin the steady march towards emergence, consistent with the confirmation and discovery timeline that this Court approved only weeks ago.

          Finally, even if this clarification to the Third Amended Plan could be considered a material modification that the sophisticated holders of EFH Legacy Notes and the EFH Committee failed to foresee in crafting their initial discovery requests, the EFH Committee has not demonstrated why this change actually requires several weeks of additional discovery.  The EFH Legacy Notes that are potentially subject to reinstatement total approximately $492 million.  These notes bear a relatively low interest rate (6.5%-6.55%) and don't mature until 2024 and 2034; the annual cost of servicing the reinstated debt would total approximately $32 million.  These amounts are relatively insignificant when considered in the context of Reorganized TCEH's equity account (which the Debtors project will equal approximately $7 billion at emergence) and cash flow projections, which have been publicly available for months.[8]  The EFH Committee fails to establish how reinstating such a relatively small tranche of low-interest debt could conceivably impact the Plan's feasibility.  The reason is simple—it will not.  Moreover, as explained in footnote 6, Reorganized TCEH would be compensated by EFH (or the Plan Sponsors) if such notes become the obligation of Reorganized TCEH.  Finally, if any party is incentivized to ensure that Reorganized TCEH has ample liquidity and financial resources to service its debt obligations post-emergence (including, if applicable, any reinstated EFH Legacy Notes), it is the TCEH first lien creditors, who are slated to receive the bulk of their recovery on account of their *$25 billion in first lien secured claims* in the form of equity in Reorganized TCEH.  The TCEH First Lien Ad Hoc Committee has no intention of permitting its members' multi-billion dollar equity investments in Reorganized TCEH to be jeopardized by permitting it to emerge with an unsustainable capital structure.  In any event, the Debtors' existing projections and valuation analysis provide the EFH Committee with more than ample information to assess the reasonableness of these determinations within the context of the existing discovery schedule.

---

[7]   *See Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6124], at p. 22.

[8]   The Debtors initially filed the Reorganized TCEH Financial Projections and Valuation Analysis on April 14, 2015.  *See Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4143].  The TCEH First Lien Ad Hoc Committee reserves all rights with respect to Reorganized TCEH's financial projections, valuation analysis and related issues.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Christopher S. Sontchi                                          5

      For the reasons set forth above, the TCEH First Lien Ad Hoc Committee respectfully requests that the Court deny the EFH Committee's request to further delay these confirmation proceedings.  The possibility that the EFH Legacy Notes would be reinstated has been known to all parties and has been a matter of public record for weeks, and the EFH Committee's feigned surprise to this potential outcome rings hollow and should not be indulged by the Court.

      Respectfully,

Alan W. Kornberg