**<u>Exhibit A</u>**

**Sur-Reply**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 )  ) Case No. 14-10979 (CSS) ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) (Jointly Administered) ) |
| Debtors. | ) Re: D.I. 4964, 5874, 6109 ) Hearing Date: TBD ) |

### SUR-REPLY OF UMB BANK, N.A. TO THE EFIH DEBTORS' REPLY IN SUPPORT OF PARTIAL OBJECTION TO PROOF OF CLAIM NO. 6347 FILED BY THE INDENTURE TRUSTEE FOR THE EFIH UNSECURED NOTES

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes due 2018 (the "PIK Notes" and such holders, the "PIK Noteholders") and the 9.75% Senior Notes due 2019 (the "Unexchanged Senior Notes" and, together with the PIK Notes, the "EFIH Unsecured Notes"), by and through its undersigned counsel, files this sur-reply to the *EFIH Debtors' Reply In Support of Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [D.I. 6109] (the "Reply").[1]

The EFIH Debtors' Reply, like the Objection itself, is premised on their assertion that Section 502(b)(2) categorically precludes unsecured creditors from receiving postpetition interest and that Section 726(a)(5)—a chapter 7 provision permitting postpetition interest on allowed claims at "the legal rate"—provides the *sole* exception in chapter 11 by which an unsecured creditor may recover postpetition interest on its allowed claim. *See* Reply at ¶¶ 1-3. That assertion, borne of the EFH Debtors' tunnel vision on Sections 502(b)(2) and 726(a)(5), all but ignores the abundant authority for postpetition interest grounded in Sections 1124 and 1129(b).

---

[1] The arguments made herein apply equally to the holders of the Unexchanged Senior Notes. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the *Response of UMB Bank, N.A. to the EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* (the "Trustee Response") [D.I. 5874] or the Plan (as defined herein), as applicable.

For the first time in the Reply, the EFIH Debtors argue that (i) the "legal rate" under Section 726(a)(5) is the only rate of interest required to render an unsecured creditor unimpaired under Section 1124(1), and (ii) enactment of the Bankruptcy Code superseded any prior entitlement of unsecured creditors to receive interest at the contract rate in solvent debtor reorganizations. *See* Reply at ¶¶ 23, 37. Because neither Section 1124(1) nor Section 1129(b)(2) triggers the application of Section 726, the meaning of "the legal rate" simply does not bear on the rate of postpetition interest due in this case.[2]

## I. THE BANKRUPTCY CODE NOWHERE LIMITS POSTPETITION INTEREST TO THE "LEGAL RATE" FOR UNIMPAIRED UNSECURED CREDITORS IN A SOLVENT CHAPTER 11 CASE

### A. *Third Circuit Precedent Demands Pursuant to Section 1124(1) That the PIK Noteholders Receive Postpetition Interest*

7. Where a debtor is solvent, courts uniformly have recognized that unsecured creditors are entitled to postpetition interest. *See* Trustee Response at ¶¶ 24-25, 42. The EFIH Debtors do not dispute this longstanding principle, but rather concede the existence of a "solvent debtor" exception. *See* Reply at ¶ 3.

8. The EFIH Debtors nevertheless assert that Section 726(a)(5) is the ***only*** pathway available for unsecured creditors—including in a chapter 11 solvent debtor reorganization—to recover postpetition interest. *See id.* at ¶ 1. Third Circuit precedent forecloses that argument: if an unsecured claim is "intended [to] be unimpaired," as is the case under the Plan here, "the claim must receive postpetition interest." *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 206 (3d Cir. 2003). Specifically, "failure to pay postpetition interest does not leave unaltered the contractual or legal rights of the claim" and thus would not qualify for non-impairment under

---

[2] The Trustee rests on its arguments in the Trustee Response as to the meaning of "the legal rate" under Section 726(a)(5). *See* Trustee Response at ¶¶ 57-66.

2

Section 1124(1). *Id.* at 207. As such, if the EFIH Debtors want to treat the PIK Noteholders as unimpaired under the Plan, then the PIK Noteholders' contractual and legal rights must be left unaltered; as discussed below, this requires payment of postpetition interest at the contract rate wholly independent of Section 726.

      **B.**    ***The Plain Language of Section 1124 Requires Payment at the Contract Rate***

9.    The analysis of the applicable rate of postpetition interest under Section 1124(1) should begin, and end, with the following question: which rate "leaves unaltered the legal, equitable, and contractual rights" to which the PIK Noteholders are entitled. 11 U.S.C. § 1124(1). If the Plan does not leave "unaltered the . . . contractual rights," then the PIK Noteholders are impaired. Because anything short of the contract rate would alter their contractual rights, *a fortiori* the PIK Noteholders must receive postpetition interest ***at the contract rate*** in order to be treated as unimpaired under the Plan.

10.    The EFIH Debtors instead try to focus the Court on an entirely different question: what "the legal rate" means under Section 726(a)(5). The EFIH Debtors ignore the fact that the Third Circuit's decision in *PPI Enterprises* establishes an unimpaired unsecured creditor's entitlement—separate and apart from Section 726—to postpetition interest in a solvent debtor case. Indeed, in its analysis, the Third Circuit makes no mention of Section 726 and cites legislative history acknowledging that the Best Interests Test under Section 1129(a)(7) does not, and need not, apply to unimpaired creditors or interest holders. Contrary to the EFIH Debtors' contention, Section 726 and its reference to "the legal rate" have no place in a Section 1124 analysis.

11.    The Debtors also argue that Section 1124(1) does not require the payment of postpetition interest at the contract rate because it is the ***Bankruptcy Code*** (Section 502(b)(2), specifically), not the ***Plan***, that alters the PIK Noteholders' contractual rights by limiting the

3

availability of postpetition interest. As *PPI Enterprises* demonstrates, however, Section 502(b)(2) is inapplicable to an impairment analysis under Section 1124(1).

12.   *PPI Enterprises* addresses whether a plan properly classified a landlord's allowed claim as "unimpaired" where the plan proposed to pay the full amount of the "allowed" claim, as reduced by Section 502(b)(6), plus postpetition interest on the allowed claim. The landlord contended that his claim was impaired by operation of Section 502(b)(6). *In re PPI Enters. (U.S.), Inc.*, 324 F.3d at 203-04. The Third Circuit held that this "statutory impairment" of the landlord's allowed claim under Section 502(b)(6) was not impairment for purposes of Section 1124(1). *Id*. at 205. The EFIH Debtors argue, by analogy, that the PIK Noteholders' claims are similarly limited by Section 502(b)(2) and thus the failure to pay postpetition interest at the contract rate does not constitute impairment by the Plan. *See* Reply at ¶ 22. But the Third Circuit held that a creditor was impaired if a chapter 11 plan failed to pay the creditor postpetition interest *in addition to* the "allowed" prepetition amount of its claim. *In re PPI Enters. (U.S.), Inc.*, 324 F.3d at 207. Thus, under *PPI Enterprises*, in addition to the "allowed" amount of the PIK Noteholders' claim under Section 502(b)(2), the PIK Noteholders must also receive postpetition interest in order to be unimpaired under Section 1124(1). That means the PIK Noteholders are entitled to receive interest at the rate provided for in the PIK Indenture so as not to alter the PIK Noteholders' "contractual rights."

13.   EFIH Debtors' position, by contrast, would create incongruous results. As recognized by Judge Walsh in *PPI Enterprises*, an unimpaired unsecured creditor must receive under Section 1124(1) at least as much as it would be entitled to receive as an impaired creditor under the Fair and Equitable Test (*i.e.*, postpetition interest at the contract rate):

> The result in *New Valley* stood in contrast with a line of cases holding that where a debtor is solvent, unsecured creditors ***must be paid in full, including postpetition***

>   *interest*, pursuant to the "fair and equitable" test of § 1129(b)(2) when the debtor is cramming down that creditor's claim. Thus, solvent debtors could avoid paying "unimpaired" unsecured creditors postpetition interest by paying them in full in cash, yet the same solvent debtor would be required to pay postpetition interest to an "impaired" dissenting class of unsecured creditors.

*In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 351 (Bankr. D. Del. 1998) (emphasis added). As discussed in the Trustee Response (at ¶¶ 28-48), unimpaired unsecured creditors in a solvent debtor reorganization are entitled to postpetition interest at the contract rate by application of the Fair and Equitable Test.

## II. THE *DOW CORNING* CASES, NOT *WASHINGTON MUTUAL*, SPEAK TO THE RATE OF POSTPETITION INTEREST UNDER SECTION 1129(b)(2)

14. To the extent the PIK Noteholders are deemed impaired, Section 1129(b) comes into play. Although the EFIH Debtors understandably prefer to focus only on the Best Interests Test under Section 1129(a)(7) (which provides a hook to Section 726(a)(5)), courts have long held that creditors of a solvent debtor must be paid in full under the absolute priority rule or Fair and Equitable Test, now embodied in Section 1129(b)(2). *See, e.g., Consol. Rock Prods. Co. v. Dubois*, 312 U.S. 510, 527 (1941);[3] Trustee Response at ¶¶ 35, 44 (collecting authorities). The *Dow Corning* line of cases is the most recent of such cases to so hold, and the ***only*** Circuit case specifically to address the question of the postpetition interest rate unsecured creditors of a

---

[3] The EFIH Debtors attempt to re-frame *Consolidated Rock's* holding as limited to ***secured*** creditors. While it is true that the noteholders in *Consolidated Rock* were secured, nothing in the Court's analysis suggests that unsecured creditors could not equally avail themselves of the general principle it articulated, *i.e.*, in the case of a solvent reorganizing debtor, a plan of reorganization runs afoul of the absolute priority rule if equity receives value before bondholders are paid their full contract rate of interest. *Consol. Rock Prods. Co. v. Dubois*, 312 U.S. at 527-29. Through the 1994 amendment, Congress was clearly trying to protect unsecured creditors because oversecured creditors were already protected through Section 506(b).

reorganizing solvent debtor must receive in order to satisfy the Fair and Equitable Test. The answer: the contract rate.[4]

15. The EFIH Debtors acknowledge that the *Dow Corning* cases require payment of postpetition interest at the contract rate in order to satisfy the Fair and Equitable Test. *See* Reply at ¶ 7, n.7 ("In *Dow II*, the bankruptcy court also ruled that in solvent debtor chapter 11 cases courts should consider the contract rate of interest when applying the absolute priority rule under § 1129(b), and award postpetition interest at the contract rate, but not the default rate. The Sixth Circuit in *Dow III* affirmed this reasoning . . . .") (internal citations omitted). Other than expressing their obvious disagreement with the result in the *Dow Corning* cases, the Debtors fail to explain why this Court should render a decision in clear conflict with the holding of the ***only*** Circuit court to have decided this issue. For the reasons set forth in the Trustee Response (at ¶¶ 39-43), the Trustee asserts that *Dow II* and *Dow III* provide a well-reasoned analysis as to why unsecured creditors (like the PIK Noteholders) in a solvent debtor reorganization case should be entitled to receive postpetition interest at the contract rate under the Fair and Equitable Test.

16. The Debtors instead urge the Court to follow *Washington Mutual*. As discussed in the Trustee Response (at ¶¶ 49-56), however, *Washington Mutual* is not applicable here. *Washington Mutual* stands at most for the disputed proposition that "the legal rate" under Section 726(a)(5) means the Federal Judgment Rate. That is because *Washington Mutual* assumed application of Section 726(a)(5) (via Section 1129(a)(7)) without any meaningful consideration of Section 1129(b)(2). The only mention of Section 1129(b)(2) that the EFIH Debtors can point

---

[4] *See Dow II*, 244 B.R. 678, 695 (Bankr. E.D. Mich. 1999) ("Where the debtor is solvent, the bankruptcy rule is that where there is a contractual provision, valid under state law, providing for interest on unpaid installments of interest, the bankruptcy court will enforce the contractual provision . . ."); *Dow III*, 456 F.3d 668, 679 (6th Cir. 2006) ("When a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the parties . . .").

6

to is a single footnote of a 65-page opinion, which noted merely that paying a creditors' claim at their contract rate rather than at the Federal Judgment Rate *could* conflict with the Fair and Equitable Test. *See In re Washington Mut. Inc.*, 461 B.R. 200, 241 n.34 (Bankr. D. Del. 2011). *Washington Mutual*'s cursory (and flawed) treatment of the ramifications of the Fair and Equitable Test on the proper interest rate is understandable in light of the circumstances of that case: the court was considering a Section 1129(a)(7) objection raised by the official committee of equity interest holders, not a cram down objection raised by the creditors seeking contract rate interest under Section 1129(b)(2). *Washington Mutual*'s passing footnote simply cannot stand up to the thorough and considered analysis of the Fair and Equitable Test in the Sixth Circuit's *Dow Corning* decision.

Dated: October 2, 2015
Wilmington, Delaware

| | |
|---|---|
| **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Ira S. Dizengoff (admitted *pro hac vice*)<br>Abid Qureshi (admitted *pro hac vice*)<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br><br>Scott L. Alberino (admitted *pro hac vice*)<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 887-4000 | By: __/s/ Raymond H. Lemisch__<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Raymond H. Lemisch (No. 4204)<br>919 Market Street, Suite 1000<br>Wilmington, DE 19801<br>Telephone: (302) 426-1189<br><br>**FOLEY & LARDNER LLP**<br>Harold L. Kaplan (admitted *pro hac vice*)<br>Mark F. Hebbeln (admitted *pro hac vice*)<br>Lars A. Peterson (admitted *pro hac vice*)<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: (312) 832-4500<br><br>Barry G. Felder (admitted *pro hac vice*)<br>Jonathan H. Friedman (admitted *pro hac vice*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 682-7474 |

*Co-Counsel for UMB BANK, N.A., as Trustee*