## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 6140** |

**OBJECTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, TO THE
APPLICATION SEEKING EMPLOYMENT OF GIBBS & BRUNS LLP
AS SPECIAL CONFLICTS TRIAL COUNSEL TO THE EFH
COMMITTEE UNDER BANKRUPTCY CODE SECTIONS 328(a) AND
1103(a), BANKRUPTCY RULE 2014(a), AND LOCAL RULE 2014-1,
EFFECTIVE *NUNC PRO TUNC* TO SEPTEMBER 8, 2015**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this objection (this "Objection") to the *Application for an Order Approving the Employment of*

*Gibbs & Bruns LLP as Special Conflicts Trial Counsel to the Official Committee of Unsecured*

*Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company,*

*LLC, EFIH Finance, Inc., and EECI, Inc. Under Bankruptcy Code Sections 328(a) and 1103(a),*

*Bankruptcy Rule 2014(a), and Local Rule 2014-1, Effective* nunc pro tunc *to September 8, 2015*

[D.I. 6140] (the "Gibbs Application"), filed by the Official Committee of Unsecured Creditors of

Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The
location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large
number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete
list of the debtors and the last four digits of their federal tax identification numbers is not provided
herein. A complete list of such information may be obtained on the website of the debtors' claims and
noticing agent at http://www.efhcaseinfo.com.

Finance, Inc., and EECI, Inc. (the "EFH Committee"), seeking to retain Gibbs & Bruns LLP ("Gibbs").[2] In further support of this Objection, the Debtors respectfully submit as follows.

## Objection

The EFH Committee cannot show good cause to retain additional counsel for the sole purpose of analyzing alleged Sponsor Claims. These chapter 11 cases have been pending for 17 months. The Debtors completed legacy discovery on March 27, 2015, producing over 5 million pages and over 800,000 documents regarding historical transactions and potential claims underlying such transactions. Since its inception and throughout the legacy discovery process the EFH Committee has been ably represented by its primary counsel, Sullivan & Cromwell, LLP ("Sullivan"), and its conflicts counsel and Delaware counsel, Montgomery McCracken Walker & Rhoads LLP ("MMWR"). More recently, MMWR has been actively representing the EFH Committee in fact discovery regarding alleged Sponsor Claims in connection with confirmation of the Debtors' proposed plan of reorganization and approval of the global settlement agreement. In fact, MMWR has already questioned eight of the Debtors' fact witnesses about the very claims that Gibbs now seeks to challenge. Now, after all this time and despite the fact that fact discovery will conclude before the Court considers the request, the EFH Committee seeks to retain another set of lawyers as purported "special conflicts trial counsel" to investigate and challenge the exact same alleged Sponsor Claims that MMWR has

---

[2] In support of the Gibbs Application, the EFH Committee filed the *Declaration of Mabel Brown in Support of Application for an Order Approving the Employment of Gibbs & Bruns LLP as Special Conflicts Trial Counsel to the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company. LLC, EFIH Finance, Inc., and EECI, Inc. Under Bankruptcy Code Sections 328(a) and 1103(a), Bankruptcy Rule 2014(a), and Local Rule 2014-1, Effective nunc pro tunc to September 8, 2015 and the Declaration of Kathy D. Patrick, ESQ. in Support of Application for an Order Approving the Employment of Gibbs & Bruns LLP as Special Conflicts Trial Counsel to the Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company. LLC, EFIH Finance, Inc., and EECI, Inc. Under Bankruptcy Code Sections 328(a) and 1103(a), Bankruptcy Rule 2014(a), and Local Rule 2014-1, Effective nunc pro tunc to September 8, 2015* [D.I. 6140-3] (the "EFH Committee Declaration").

been investigating since its retention in January 2015.[3]    The Court should reject the EFH Committee's untimely and duplicative request to retain a third law firm.

I.    **The EFH Committee's Request to Retain Gibbs is Untimely.**

1.    The EFH Committee's request to retain Gibbs at this juncture of these chapter 11 cases is untimely. *First*, discovery regarding the Sponsor Claims has been available since the appointment of the EFH Committee. In August 2014, the Court approved the Debtors' legacy discovery protocol, pursuant to which the Debtors provided significant discovery regarding a number of prepetition transactions [D.I. 1832]. The EFH Committee does not argue, nor could it argue, that information regarding the Sponsor Claims has not been produced as part of legacy discovery. In fact, legacy discovery laid the foundation for the motion filed by, among others, the EFH Committee, to investigate, prosecute, and settle claims related to a number of prepetition transactions, including the transactions that allegedly give rise to the Sponsor Claims [D.I. 3605]. Unsurprisingly, a review of MMWR's time entries, submitted with their interim fee application, shows that MMWR attorneys and paraprofessionals billed 703.1 hours to "Derivative Litigation Investigation"—work that the Debtors believe included a review of certain of the Sponsor Claims.

2.    *Second*, the EFH Committee suggests that the inclusion of releases of the Sponsor Claims came as a surprise in the August 10, 2015 filing of the Settlement Agreement. EFH Committee Objection, ¶ 8, 9; Hr'g Tr. 42:4-8 (August 11, 2015) (counsel for the EFH Committee stating that the sponsors were at the "secret negotiating table" and "bargained for free releases"). These baseless assertions ignore the unassailable fact that the Sponsor Claims and proposed releases of the Sponsor Claims have been a prominent issue in these chapter 11 cases since the Petition Date. Indeed, the proposed releases that Gibbs seeks to challenge now were a key

---

[3] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Gibbs Application.

component of the term sheet approved by the Debtors' co-CROs and publicly posted to the Debtors' restructuring website eight months ago, and were included in every version of the plan of reorganization (the "Plan") the Debtors have ever filed or circulated to their various creditor constituencies. *See, e.g., Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142], Article VIII.C. MMWR's time entries, submitted with their first and second interim fee applications, demonstrate that to date, MMWR has billed approximately 127.7 hours to "Plan and Disclosure Statement," so it strains credulity for the EFH Committee to assert that it has not been aware of the proposed releases on the Sponsor Claims since the very first Plan filing.

3.      Moreover, by virtue of including releases of the Sponsor Claims in the Plan for several publicly filed versions of the Plan (and the co-CROs term sheet posted publicly in February), all parties have been on notice that such releases will be evaluated in connection with Plan confirmation. Given the prominence that Sponsor Claims and releases of Sponsor Claims have had in the Debtors' chapter 11 cases, the EFH Committee retained MMWR as conflicts counsel long ago, specifically to investigate the alleged Sponsor Claims; it should not be allowed now to retain a second firm as "special litigation counsel" to challenge the exact same claims. The Debtors fear retaining such "special litigation counsel" now will needlessly increase expense in this case and unnecessarily delay the parties from bringing these cases to a close. Given the enormous amount of time and money already spent by MMWR and S&C in investigating all relevant derivative claims, including the alleged Sponsor Claims, the Debtors do not believe that the retention of Gibbs, on the eve of confirmation, will yield any corresponding benefits to the EFH estate.

## II.    **Gibbs is Duplicative of MMWR.**

4.    While the Bankruptcy Code allows for the retention of more than one law firm, the standard dictates retaining one firm and requires the requesting party to show good cause for deviating from the norm. *See, e.g., In re Sw. Food Distributors, LLC*, 561 F.3d 1106 (10th Cir. 2009) (stating that cause must be shown to depart from the norm providing for the employment of one attorney); *In re Bashas' Inc.*, 2010 WL 6466571, at *2 (B.A.P. 9th Cir. Jan. 14, 2010) (stating that under section 1103, one attorney should normally suffice); *In re Elec. Materials Co.*, 160 B.R. 1016, 1017 (Bankr. W.D. Mo. 1993) (stating that "a committee may employ more than one attorney, but it is the exception to the rule and the committee must show good cause."); *In re The Bible Speaks*, 67 B.R. 426 (Bankr. D. Mass. 1986) (same); *see also* S. Rep. 95-989, 95th Cong. 2nd Sess. 114 (1978) (stating that "normally one attorney should suffice; more than one may be authorized for good cause"); H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 402 (1977) (stating that "the subsection provides for the employment of more than one attorney. . .however, this will be the exception, not the rule; cause must be shown to depart from the normal standard.").

5.    MMWR was retained to serve as "conflicts counsel . . . on any asbestos conflicts matter *and such other conflicts matters as the EFH Committee may determine*." MMWR Retention Application, ¶ 9 (emphasis added). Unsurprisingly, and by the EFH Committee's own admission, the "EFH Debtors' claims against the Sponsor Parties" has been "identified through the work of . . . Montgomery." Gibbs Application, ¶ 4. Similarly, "Montgomery has been advising the EFH Committee with respect to the investigation, analysis, and evaluation of claims of the Debtors against the Sponsor Parties." Gibbs Application, ¶ 17. In fact, in its recent objection to the Debtors' motion seeking approval to enter into and perform under their Plan Support Agreement, the EFH Committee stated that "[MMWR] is advising the EFH Committee

in connection with the assessment and prosecution of claims against the equity sponsors and those directors who are employees of the equity sponsors." EFH Committee PSA Objection, fn. 16.

6.    There is no justification provided in the Gibbs Application or EFH Committee Declaration as to why it is necessary to introduce new counsel at this juncture to conduct an investigation for which MMWR has been billing the EFH Debtors' estates.  Duplication of efforts creates unnecessary administrative expenses for the bankruptcy estate without providing any value. *See e.g. In re Elec. Materials Co.*, 160 B.R. 1016, 1017 (Bankr. W.D. Mo. 1993) ("If the work of a second professional will be clearly duplicative and wasteful, the court should deny the committee's request for employment of another professional.").[4]

7.    The EFH Committee Application itself contemplates that Gibbs and MMWR will work "in conjunction" to investigate and challenge the Sponsor Claims and yet provides no direction on how the professionals will avoid duplication of services.  Not only is the retention of Gibbs duplicative in theory of the work MMWR was retained to perform, it is also already proven to be duplicative in practice.  In addition to the fact that MMWR advised the EFH Committee in connection with its PSA Objection, MMWR actively participated in the recent depositions of the Debtors' co-chief restructuring officers and disinterested directors and managers of EFH, TCEH, and EFIH, taken in connection with the Sponsor Claims.  At each

---

[4]    Additionally, under the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases,* effective as of November 1, 2013 and applicable to the Debtors' chapter 11 cases (the "UST Guidelines"), non-compensable services are defined to include "excessive time bringing secondary counsel "up to speed" on the case" (*i.e.,* potentially certain time billed by MMWR with respect to time already spent educating Gibbs). UST Guidelines, ¶ F(5)(a). Moreover, with respect to conflicts by lead counsel (*i.e.,* Sullivan & Cromwell LLP), one circumstance in which it may be inappropriate to retain conflicts counsel is where "conflicts counsel has been retained to litigate matters in which the lead counsel has represented the debtor in settlement negotiations." By extension, it would be equally incongruous to retain additional counsel (*i.e.,* Gibbs) to litigate matters with respect to which separate counsel (*i.e.,* MMWR) has served as lead counsel for several months. UST Guidelines, ¶ F(3)(b).

deposition, MMWR attorneys asked targeted questions focused solely on the Sponsor Claims. *See, e.g.,* Sawyer Deposition, 268:10-15 (counsel from MMWR stating that MMWR is "counsel for the EFH committee, special conflicts counsel in connection with claims relating to the sponsors" and noting that counsel would be "focusing [his] questioning particularly on the claims related to the sponsors") (Sheppard, M., attorney from MMWR); Keglevic Deposition, 73-15 ("I want to try to avoid as much as I can any duplication so I want to stick *specifically to the issues relating to the releases* and in particular what's referred to as SD&O release") (Sheppard, M., attorney from MMWR) (emphasis added); Cremens Deposition, 75:12-15 (questioning the witness regarding "the process for evaluating whether or not the releases of the sponsors and D&Os should have been included in the PSA") (Sheppard, M., attorney from MMWR); Williamson Deposition, 85-87 (questioning the witness regarding the scope of sponsor releases and the extent to which such releases survived termination of the PSA) (Sheppard, M., attorney from MMWR). In addition, MMWR was the only representative of the EFH Committee to question certain of the Sponsor directors regarding various prepetition and postpetition financing transactions taken less than two weeks ago. *See, e.g.*, Smidt Deposition, 10-8:75-13 (Liebesman, S. attorney from MMWR questioning EFH Corp. director Jonathan Smidt).

8.      The only basis asserted by the EFH Committee for retaining a third law firm at this time is the alleged need for Texas Counsel to evaluate the alleged Sponsor Claims. The purported need for Texas counsel to challenge the Sponsor Claims—EFH's status as a Texas corporation—has been apparent since the appointment of the EFH Committee. And the EFH Committee knew from the time it hired S&C that it would need to use conflicts counsel to address potential Sponsor Claims. MMWR Retention Application, ¶ 17 (stating that the EFH Committee will retain MMWR to advise the EFH Committee on Actual Conflicts Matters—*i.e.,* those matters on which S&C "can no longer provide advice to the EFH Committee"). In any

RLF1 13125289v.1

event, it is hardly persuasive for the EFH Committee to assert that it needs separate Texas Counsel to investigate claims against the Sponsors when Texas courts often look to Delaware law on matters related to corporate governance and fiduciary duty. *See, e.g., In re Aguilar*, 344 S.W.3d 41, 46 (Tex. App. 2011) (referencing Delaware case law with respect to questions of fiduciary duty issues and stating that Delaware "has been described as the "Mother Court of corporate law");   *In re Mirant Corp.,* 326 B.R. 646, 651 (Bankr. N.D.Tex. 2005) (citing Delaware's well-established principle of law that creditors are owed fiduciary duties when a corporation is insolvent); *In re VarTec Telecom, Inc.*, 2007 WL 2872283, at *3 (Bankr. N.D. Tex. Sept. 24, 2007) (analyzing fiduciary duty under both Texas law and "highly persuasive. . . other case law, particularly case law in Delaware").

### Conclusion

9.    The EFH Committee's request to retain a third law firm is untimely (in light of, among other things, the EFH Committee's nearly year-long awareness of potential Sponsor Claims), and the work to be performed by Gibbs is duplicative of the work already performed by MMWR.    As a result, the Debtors respectfully request that the Court deny the Gibbs Application.


*[Remainder of page intentionally left blank.]*

Dated: October 6, 2015
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

9