## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Energy Future Holdings Corp., *et al.,*[1] | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 6131** |

## MOTION FOR LEAVE TO APPEAL
## PURSUANT TO 28 U.S.C. §158(a)(3)

Shirley Fenicle, as successor-in-interest to The Estate of George Fenicle, and David William Fahy (collectively, "Appellants"), both members of the Energy Future Holdings Corp. Official Committee of Unsecured Creditors (the "Committee"), by their attorneys, hereby respectfully move for entry of an order granting them leave to appeal to the United States District Court for the District of Delaware from the Order (A) Approving Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents [Docket No. 6131] (the "Order") entered on September 22, 2015 by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in the bankruptcy proceeding entitled *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979.[2]  In support of this motion, Appellants state:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas  75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on a final basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] A copy of the Order (without Exhibits1 through 10) is attached hereto as Exhibit A.

## BACKGROUND

1.      This jointly-administered bankruptcy case includes the cases of 70 separate debtor entities (collectively, the "Debtors").  Included among these cases are the separate bankruptcies of EECI, Inc. (Case No. 14-10992), EEC Holdings (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).  There appears to be no dispute that these four companies have no current liabilities other than asbestos personal injury claims.  In particular, before its bankruptcy filing, EECI, Inc. was in the business of accepting asbestos personal injury lawsuits to tender to insurance carriers for defense and indemnity.  The Debtors, including these four entities, have proposed their Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 6122] (the "Plan"), by which they seek to resolve all pending asbestos-related liabilities, including liability to claimants that have been exposed to asbestos for which one or more of the Debtors is responsible, but who have not yet developed an illness related to this asbestos exposure.[3]  However, to the extent that an asbestos victim has not manifested illness or injury and does not know to pursue a claim at this time, that victim's rights will be improperly cut off by the Plan.  In connection with their efforts to confirm their Plan, the Debtors filed their Disclosure Statement for the Fifth Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 6124] (the "Disclosure Statement").

2.      On August 17, 2015, the EFH Official Committee of Unsecured Creditors (the "Committee") filed its Objection to the Motion of Energy Future Holdings Corp., *et al.,* for Entry of an Order Approving the Disclosure Statement, *et al.* [Docket No. 5356] (the "Committee Objection"), asserting that consideration of the proposed Disclosure Statement was inappropriate

---

[3] Asbestos-related diseases typically manifest after a lengthy latency period, often decades following occupational or other exposure to asbestos.

based on several fatal deficiencies with respect to the Plan and that solicitation at this time would waste valuable estate resources.

3.      On August 17, 2015, the Appellants filed their joinder to the Committee Objection [Docket No. 5361] and further addressed the fact that the Debtors' plan was patently unconfirmable because the Plan would eliminate liability to individuals exposed to asbestos but with no current asbestos-related illness <u>without</u> providing those individuals with the protections set forth in 11 U.S.C. § 524(g) of the Bankruptcy Code.

4.      Based on the unique nature of asbestos-related liabilities, including the lengthy latency period prior to manifestation of illness or injury, Congress enacted section 524(g) to protect the due process rights of exposed but unimpaired asbestos personal injury victims and provide bankruptcy debtors with a means to address ongoing asbestos personal injury liability. "The purpose of section 524(g) is to provide those whose illnesses manifest post-bankruptcy, regardless of the timing of their exposure to a chapter 11 debtor's asbestos, with a fund for recovery equivalent to what currently ill claimants will be paid.  Section 524(g) thus removes the risk that the size of payment in compensation for injuries will depend on how quickly a victim gets sick or manifests an injury."  *In re Flintkote Co.*, 486 B.R. 99, 124 (Bankr. D. Del. 2012) *aff'd sub nom. In re Flintkote Co.*, 526 B.R. 515 (D. Del. 2014).  Although the aim of section 524(g) of the Bankruptcy Code is to provide equivalent treatment to asbestos victims who have currently manifested diseases and those asbestos victims for whom disease manifests in the future, the latter would receive the opposite treatment under the Debtor's Plan because the Plan eschews section 524(g). Unless these claimants know that they are required to file a claim with the Debtors by December 14, 2015, notwithstanding the fact that they may not become ill until years later, the Debtors purport to cut off their rights while simultaneously shielding the assets of the Debtors' estates from recovery by these unknowing "claimants."

5.      On September 22, 2015, the Bankruptcy Court overruled the Committee Objection and the Appellants' joinder, approved the Disclosure Statement as adequate for purposes of section 1125(a) of the Bankruptcy Code, established a Plan confirmation objection deadline of October 23, 2015 and authorized the Debtors' solicitation of votes to accept or reject the Plan.

## RELIEF REQUESTED

6.      By this Motion, the Appellants seek leave to prosecute an interlocutory appeal to obtain reversal of the Order.  This motion is premised on 28 U.S.C. § 158(a)(3), but that statute provides no guidance as to when a district court should grant leave to appeal.  Courts considering section 158(a)(3) motions therefore look to the three-part test set out in 28 U.S.C. § 1292(b), which governs interlocutory appeals of district court judgments to federal courts of appeal. Under that test, an interlocutory appeal is appropriate when it:  (1) involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation.  But whereas courts of appeal typically allow interlocutory appeals under section 1292(b) only sparingly, the standards of section 158 are relaxed, making the district court's inquiry a permissive and flexible one. *See, e.g., In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir.1985) (explaining because "[b]ankruptcy cases frequently involve protracted proceedings with many parties participating. To avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory").  *See also In re Bertoli*, 812 F.2d 136, 140 (3d Cir. 1987) (interpreting Section 158(a)(3) as permitting district courts to hear interlocutory appeals at their discretion).

7.      Recently, in *In re Fisker Auto. Holdings, Inc*., No. 14-CV-99, 2014 WL 546036, at *2 (D. Del. Feb. 7, 2014), the District Court interpreted section 1292(b) to provide that an interlocutory appeal should be heard when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* at *2.  Additionally, the *Fisker* court stated that "the appellant must establish that 'exceptional circumstances justify a departure from the basic policy of postponing a review until after the entry of final judgment.'"  *Id. at* *2 (citations omitted).

8.      Here, the Bankruptcy Court has made a clear error that satisfies requirements of sections 158(a)(3) and 1292(b) and warrants interlocutory review.  The central issue in this appeal, whether the Bankruptcy Court erred by approving the disclosure statement for a patently unconfirmable plan of reorganization, involves a controlling question of law (*i.e.,* whether section 524(g) of the Bankruptcy Code mandates specific protections as a precondition of resolving unmanifested asbestos claims) on which the bankruptcy court has taken a position at odds with the directives of the Third Circuit in *In re Combustion Engineering, Inc.*, 391 F.3rd 190 (3rd Cir. 2004).

9.      As explained in *Combustion Engineering,* this type of debtor cannot reorganize except in compliance with 11 U.S.C. § 524(g).  *See Combustion Engineering,* 391 F.3d 190 at 234-37.  This is particularly the case given that the Debtors seek to address and resolve "Future Claims" within the chapter 11 plan.  *Combustion Engineering* sets out in a definitive and unambiguous way how an asbestos bankruptcy must proceed in the Third Circuit.  Moreover, the Third Circuit, in *In re Amatex Corp.,* 755 F.3d 1034, 1042-43 (3rd Cir. 1985), makes clear that future asbestos claimants are entitled to their own legal representative in a chapter 11 reorganization based on the fact that they have a stake in the outcome of the case.  As the Third

Circuit explained, "[b]ecause of the adverse interests of the other parties, it would appear that future claimants require their own representative." *Id.* at 1043.[4]

10.     Despite the Third Circuit's clear directive, the Debtors' Plan ignores the requirements of section 524(g), rendering the Plan unconfirmable.  These circumstances warranted the Court's rejection of the associated Disclosure Statement prior to undertaking the costly plan solicitation process.  *See In re American Capital Equipment, LLC,* 688 F.3d 145, 154 (3rd Cir. 2012) ("a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable.")

11.     The immediate appeal on this issue may also materially advance the ultimate termination of the litigation.  Absent adjudication of the appeal at this time, the Debtors would proceed with a lengthy and costly plan confirmation process, seeking approval of a fatally flawed and deficient plan.  This solicitation and confirmation process will impose a substantial financial burden on all parties.  By addressing these issues on appeal without delay, at least some of those costs may be avoided.

12.     Furthermore, permitting this interlocutory appeal will further the ultimate resolution of the Debtors' bankruptcy cases.  To the extent that the Debtors will be forced back to the drawing board by the District Court's recognition of the patent unconfirmability of the Debtors' current Plan, all parties will benefit from such a directive being provided earlier in the

---

[4] Although the Bankruptcy Court has stated that the Committee adequately represents the interests of asbestos victims, the Committee has recognized that a conflict of interest exits between the Committee and the unmanifested claimants because the interests of the present claimants, whose interests the Committee represents, "is to maximize their own recovery, which may require minimizing the claims of Unmanifested Asbestos Claims."  *See* Emergency Motion of the EFH Official Committee for Entry of an Order (I) Adjourning the Hearing Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof and (II) Shortening Notice With Respect to the Emergency Motion, at ¶ 9, fn 4 [Docket No. 4553].

case, rather than on appeal from an order confirming the Plan, causing the parties to scramble to undo the Debtors' efforts to consummate their Plan.

13.    The Appellants' appeal seeks resolution of an issue that could impact thousands of future creditors, none of whom have become aware of the latent diseases that will cause substantial damage to them and their families.  At the same time, the Debtors' Plan contemplates several transactions that would need to be altered or undone in order to afford these injured parties relief after the fact.

14.    In addition, the Bankruptcy Court has set a December 14, 2015 deadline for both manifested and unmanifested asbestos victims to assert claims.  Nevertheless, pursuant to the Order, the deadline for objections to the Plan is October 23, 2015, six weeks <u>before</u> the deadline for filing such claims.  To the extent that unmanifested asbestos victims do become aware of this deadline and submit claims, they have no opportunity to object to the proposed treatment of their future claims and may not even receive timely notice of the confirmation hearing on the Plan. The Debtors appear to be making a concerted effort to outrun their asbestos liabilities, hoping to consummate their plan before any creditor would have a meaningful opportunity to seek appellate review.  An early start to this appellate process is therefore critically important to ensure that the District Court has a meaningful opportunity to address these issues.

15.    These exceptional circumstances warrant immediate, interlocutory appeal of the Order so that all parties may have the benefit of the District Court's review of the Order and its direction regarding the extent to which the Debtors' Plan must be altered consistent with the requirements and protections of 11 U.S.C. § 524(g), as recognized by the Third Circuit Court of Appeals.

WHEREFORE, Shirley Fenicle, as successor-in-interest to The Estate of George Fenicle, and David William Fahy respectfully request that the Court enter an order granting them leave to pursue an interlocutory appeal of the Order pursuant to 28 U.S.C. § 158(a)(3) and granting such other relief as is just.

Dated: October 6, 2015
Wilmington, Delaware

Respectfully submitted,

By:    */s/ Daniel K. Hogan*
       Daniel K. Hogan (DE Bar # 2814)
       HOGAN♦McDANIEL
       1311 Delaware Avenue
       Wilmington, Delaware  19806
       Telephone:  (302) 656-7540
       Facsimile: (302) 656-7599
       dkhogan@dkhogan.com

       -and-
       Steven Kazan (CA Bar # 46855)
       Kazan McClain Satterley & Greenwood
       A Professional Law Corporation
       Jack London Market
       55 Harrison Street, Suite 400
       Oakland, CA 94607
       Telephone: (510) 302-1000
       Facsimile: (510) 835-4913

       -and-
       Ethan Early (CT Juris # 417930)
       Early Lucarelli Sweeney & Strauss
       265 Church Street, 11th Floor
       New Haven, CT 06508-1866
       Telephone: (203) 777-7799
       Facsimile: (203) 785-1671

       *Counsel for Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy*