# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., et al., | Jointly Administered |
| Debtors. | |

**EFH LEGACY SERIES Q/R TRUSTEE'S MEMORANDUM
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT:
(I) IN RESPONSE TO OBJECTION TO MAKEWHOLE CLAIMS; AND
<u>(II) REGARDING CONDITION PRECEDENT 9 TO EFFECTIVENESS OF PLAN</u>**

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)........................................................................................12

*Berrier v. Simplicity Mfg., Inc.*,
563 F.3d 38 (3d Cir. 2009)............................................................................12

*Butner v. U.S.*,
440 U.S. 48 (1979).........................................................................................20

*Delaware Trust Co. v. EFIH and EFIH Finance*, No. 14-50363, Findings of Fact and
Conclusions of Law Regarding Cross Motions for Summary Judgment,
.................................................................................................................3, 16

*Delaware Trust Co. v. EFIH and EFIH Finance*,
No. 14-50363, Bifurcation Order.................................................................22

*Gencarelli v. Gencarelli*,
501 F.3d 1 (1st Cir. 2007)............................................................................23

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr. S.D.N.Y. 2010)...........................................13, 16, 17, 23

*In re Delta Mills, Inc.*,
404 B.R. 95 (Bankr. D. Del. 2009)..............................................................12

*In re Energy Future Holdings Corp.*,
527 B.R. 178 (Bankr. D. Del. 2015).................................................12, 16, 18

*In re LHD Realty Corp.*,
726 F.2d 327 (7th Cir. 1984).................................................................19, 20

*In re Los Angeles Dodgers LLC*,
465 B.R. 18 (D. Del. 2011)..........................................................................23

*In re Optel*,
60 F. App'x 390 (3d Cir. 2003)...................................................................16

*In re Payless Cashways, Inc.*,
287 B.R. 482 (Bankr. W.D. Mo. 2002).......................................................19

*In re Sch. Specialty, Inc.*,
No. 13-10125, 2013 WL 1838513 (Bankr. D. Del. Apr. 22, 2013)..........16, 21, 22

*In re Skyler Ridge*,
     80 B.R. 500 (Bankr. C.D. Cal. 1987) ................................................................... 19

*In re SNTL Corp.*,
     571 F.3d 826 (9th Cir. 2009) ............................................................................... 20

*In re Trico Marine Servs., Inc.*,
     450 B.R. 474 (Bankr. D. Del 2011) ...................................................................... 22

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
     549 U.S. 443 (2007) ............................................................................... 13, 21, 22

STATE CASES

*Barrow v. Lawrence United Corp.*,
     538 N.Y.S.2d 363 (App. Div. 3rd Dep't1989) ...................................................... 14

*Beal Sav. Bank v. Sommer*,
     8 N.Y.3d 318 (2007) ............................................................................................ 14

*JMD Holding Corp. v. Cong. Fin. Corp.*,
     828 N.E.2d 604 (N.Y. 2005) ................................................................................ 21

*Muzak Corp. v. Hotel Taft Corp.*,
     133 N.E.2d 688 (N.Y. 1956) ................................................................................ 14

*R/S Assocs. v. N.Y. Job Dev. Auth.*,
     98 N.Y.2d 29 (App. Div. 2002) ............................................................................ 14

*Schron v. Troutman Sanders LLP*,
     986 N.E.2d 430 (N.Y. 2013) ................................................................................ 14

*W.W.W. Assoc., Inc. v. Giancontieri*,
     566 N.E.2d 639 (N.Y. 1990) ................................................................................ 14

*Waldman v. New Phone Dimensions, Inc.*,
     487 N.Y.S.2d 29 (App. Div. 1985) ...................................................................... 14

FEDERAL STATUTES

11 U.S.C. §§ 101(5) ..................................................................................................... 20

11 U.S.C. § 362 ............................................................................................................ 16

*Chapter 11 of the Bankruptcy Code* ........................................................................ 1, 6

11 U.S.C. § 502(b) ....................................................................................................... 21

11 U.S.C. § 502(b)(2) ........................................................................................ 9, 22, 11

iii

**RULES**

Fed. R. Bankr. P. 9014.................................................................................................................12

Fed. R. Bankr. P. 3007(a) ...........................................................................................................7

Fed. R. Civ. P. 56(a) ..................................................................................................................12

Fed. R. Civ. P. 56................................................................................................................12, 21

Fed. R. Bankr. P. 7056 and 9014(c).........................................................................................12

4816-2244-9705 1

# TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................................. 1

II. NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 5

    A.      AST's retention as successor trustee for the EFH Legacy Notes .......................... 5

    B.      Filings in the Debtors' bankruptcy cases ................................................................ 6

III. SUMMARY OF ARGUMENT ................................................................................... 7

IV. STATEMENT OF UNDISPUTED FACTS ..................................................................... 9

    A.      Terms of the Indenture and Notes. ......................................................................... 9

    B.      No declaration of acceleration has been given by the trustee or otherwise. ........ 11

V. SUMMARY JUDGMENT STANDARD ........................................................................ 12

VI. ARGUMENT ........................................................................................................ 13

    A.      The EFH Legacy Q/R Holders are contractually entitled to payment of their Makewhole Claims under the terms of the EFH Legacy Q/R Indentures ........... 13

    B.      Unlike the other Indentures in the Debtors' bankruptcy cases that this Court has previously reviewed, the EFH Legacy Q/R Notes did not accelerate by their terms upon the filing of the Petition ............................................................................ 16

    C.      The Bankruptcy Code does not disallow the claim for payment of the redemption price ...................................................................................................................... 21

    D.      Solvency, to the extent relevant, should be assumed for purposes of this Motion 22

VII. CONCLUSION ..................................................................................................... 24

4816-2244-9705 1

## I.    PRELIMINARY STATEMENT

American Stock Transfer & Trust Company, LLC ("AST") as successor trustee to The Bank of New York Mellon Trust Company, N.A. for the Series Q and Series R Indentures as more fully described below (the "EFH Legacy Series Q/R Trustee") by its undersigned counsel, hereby submits this Memorandum in Support of Motion for Partial Summary Judgment: (I) In Response to Objection to Makewhole Claims; and (II) Regarding Condition Precedent 9 to Effectiveness of Plan ("Motion").  The Motion seeks entry of an Order and legal rulings in connection with certain narrow issues required to be determined in connection with confirmation of the Plan[1] and in response to the Debtors' objections in the Plan to the makewhole aspects of the claims filed by the EFH Legacy Series Q/R Trustee.[2]

The EFH Legacy Series Q/R Trustee is successor trustee under six separate indentures in which the Debtor Energy Future Holdings Corp. ("EFH") was issuer, including three separate series of notes identified in the Plan as the "EFH Legacy Notes."  Two of those EFH Legacy Note Indentures—Series Q and Series R—are at issue for purposes of the Motion[3] (the "EFH Legacy Q/R Indentures").[4]

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the *Amended Chapter 11 Plan (Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] and associated *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.* [D.I. 6124], or, as otherwise applicable, the meanings ascribed to them in the EFH Legacy Note Indentures.

[2] The Claims objected to in Article VII.A of the Plan are Nos. 7478 and 7479.  [D.I. 6122]  True and accurate copies of those claims are attached to the Appendix filed herewith.

[3] A complete description of the Series Q and Series R Indentures is attached hereto as Exhibit 1.

[4] The notes issued pursuant to the EFH Legacy Q/R Indentures shall be referred to herein as the "EFH Legacy Q/R Notes," and the holders of EFH Legacy Q/R Notes are referred to herein as, the "EFH Legacy Q/R Holders." The third series of EFH Legacy Notes (Series P) matured by its own terms in November of 2014.  For the avoidance of doubt, the EFH Legacy Series Q/R Trustee reiterates that this Motion is addressed only to the EFH Legacy Q/R Indentures and not any other debt of EFH Corp.

It is a condition precedent to effectiveness of the Plan that all Claims against the EFH Debtors with respect to any Makewhole Claim be disallowed by Order of the Bankruptcy Court. Plan Art. IX.B.9 (conditions precedent to effectiveness); Art. I.A.69 (defining "Disallowed Makewhole Claim").  Accordingly, if the EFH Legacy Q/R Indenture makewhole claims are not disallowed, the Plan may only be confirmed if the Debtors establish (a) that waivers from all required parties can be obtained (Plan Article IX.C) or (b) at the option of the Debtors and various other parties, reinstatement of the relevant EFH Corp. debt at Reorganized TCEH is permissible.[5]  For the reasons demonstrated here, the EFH Legacy Q/R Indenture makewhole claims should be allowed.

The EFH Legacy Q/R Indentures are unique in these proceedings in the simplicity and clarity with which they entitle the EFH Legacy Q/R Holders to be paid a "Redemption Price" if the EFH Legacy Q/R Notes are repaid ahead of the fixed 2024 and 2034 "Stated Maturity" dates. Pursuant to the widely advertised first choice "Cash" option described in Article III.B.4.c.ii. of the Plan, EFH makes a <u>voluntary</u> election to pay off the EFH Legacy Q/R Notes before 2024 and 2034.  Pursuant to the indentures, this election mandates the payment of the full Redemption Price.

---

[5] While the Debtors propose to allow the principal on the EFH Legacy Q/R Notes, several issues not addressed in the Motion remain in dispute between the Debtors and the EFH Legacy Series Q/R Trustee, including entitlement to trustee fees and expenses, post-petition interest and makewhole amounts for other tranches. Unlike the makewhole issue addressed herein, those issues are not unique to the EFH Legacy Q/R Notes and will be addressed separately.   Additionally, under the Plan the Debtors now seek to reserve the option to reinstate the debt under the EFH Legacy Q/R Indentures at Reorganized TCEH.  *See* Plan, at Article III.B.4.c.ii. The Motion, however, is limited to issues related to whether the EFH Legacy Series Q/R Trustee's allowed claims under the Plan should include the makewhole amounts.  The EFH Legacy Series Q/R Trustee and AST as trustee for other debt, expressly reserves all rights to further object to the Plan, and respond to the claim objections contained therein on behalf of itself and holders of other tranches of EFH debt, including on makewhole, reinstatement, and other grounds.  To the extent required such further responses will be included in the indenture  trustee's confirmation objection.

While the claim for the Redemption Price is a "Makewhole Claim," the unequivocal entitlement to the Redemption Price as provided in the indentures is not clouded by any of the complexities that shadow some of the other Makewhole Claims under perhaps more modern or sophisticated indenture provisions already reviewed by this Court in connection with debt issued by EFIH.[6]  The EFH Legacy Q/R Indentures do not contain any contractual language providing for "automatic" acceleration.  Nor have EFH Legacy Q/R Holders or the EFH Legacy Series Q/R Trustee given any notice of acceleration or taken any other action to accelerate the debt.  Thus the issues presented in the Motion involve the narrow, rare, and perhaps unprecedented situation where a debtor voluntarily seeks to pay in full and leave unimpaired unsecured debt that has not been accelerated.

Accordingly, this Court's prior rulings on makewhole premiums, which were premised on contractual automatic acceleration under very different contract terms, are inapplicable.[7]  Instead, the EFH Legacy Q/R Holders' makewhole claims are due because the holders are owed the Redemption Price upon payment under the Plan when it occurs ahead of the fixed, specified "Stated Maturity" dates: November 15, 2024, and November 15, 2034, for Series Q and R, respectively.  *See* Appendix (attaching proofs of claim).  This conclusion mandates ruling in favor of the EFH Legacy Series Q/R Trustee.

To summarize, the relevant undisputed facts are as follows:

- Neither the EFH Legacy Q/R Indentures nor the EFH Legacy Q/R Notes contain any sort of "automatic" acceleration provision.

---

[6] The EFIH First Lien Indenture is dated August 14, 2012 (as amended, modified, or supplemented), and the Second Lien Indenture is dated April 25, 2011 (as amended, modified, or supplemented).  Both contain automatic acceleration clauses.  In contrast, the EFH Legacy Q/R Indentures do not contain an automatic acceleration provision.

[7] *See Findings of Fact and Conclusions of Law Regarding Cross Motions for Summary Judgment*, Adv. No. 14-50363 (the "First Lien Makewhole Ruling") [D.I. 3984].

- Neither the EFH Legacy Series Q/R Trustee nor any other party has taken any action to accelerate the debt.

- The Plan, as described in the Disclosure Statement, seeks to leave the EFH Legacy Q/R Holders, along with all other unsecured creditors of EFH Corp., unimpaired and such holders are not entitled to vote.

- The Plan states that it constitutes an objection to any Makewhole amounts due on the EFH Legacy Q/R Notes. Plan, Art. VII.A.

- The claims and the admissions in the Plan and Disclosure Statement establish that, aside from objecting to the EFH Legacy Series Q/R Trustee's makewhole claims and claims for fees and expenses, and contesting the applicable interest rate, the Debtors agree that the claims should be allowed.[8]

- A condition precedent to the effective date of the Plan is that all claims against EFH Debtors and/or the EFIH Debtors with respect to any Makewhole Claim shall be disallowed. *See* Plan, Art. IX.B.9.

The EFH Legacy Series Q/R Trustee seeks summary judgment based upon these narrow, undisputed facts and application of New York law to the unambiguous provisions of the relevant indentures related to voluntary elections to pay early.

While the confirmation trial will start on November 3, no order, law or practical reason prevents an earlier ruling on purely legal issues related to the Plan. Furthermore, the practical equities strongly counsel in favor of the prompt, early determination of the narrow legal issues related to the makewhole amounts due on the EFH Legacy Series Q/R Indenture as presented in the Motion.[9] Specifically:

- Disallowance of the makewhole portion of the Redemption Price is a condition precedent to the Plan.

---

[8] This Motion does not seek summary judgment on issues related to fees and expenses or the applicable rate. Those matters will be addressed separately.

[9] Here, in contrast with the procedural posture in play when this Court granted the motion to dismiss EFIH Debtors' declaratory judgment regarding the PIK Note Indentures makewhole claims [D.I. 4752] (June 15, 2015), the issues are ripe because the Debtors objected to the claims in the Plan, the hearing on confirmation of the Plan is scheduled to begin November 3, 2015, and all confirmation-related issues are now being litigated in accordance with various orders issued by the Court. *See e.g.*, [D.I. 5771] (procedural Order dated August 27, 2015).

- If the EFH Series Q/R Makewhole amounts are allowed, then the claims held by Class A4 will be impaired since no provision is made for payment of those claims.

- If the parties' rights are clarified to allow the makewhole claims, issues related to potential waivers, reserves, etc. could be resolved ahead of confirmation.

In summary, because allowance of the makewhole amounts on the EFH Legacy Series Q/R Indentures is compelled as a matter of law by the clear language of the EFH Legacy Q/R Indentures and governing law, and no facts that could be disputed are pertinent, the Court should grant partial summary judgment to the EFH Legacy Series Q/R Trustee ordering that its allowed claims under the EFH Legacy Q/R Indentures must include the full Redemption Price, including makewhole amounts, and ruling that Condition Precedent number 9 to the effectiveness of the Plan cannot be met.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

### A.    AST's retention as successor trustee for the EFH Legacy Notes.

AST serves as the successor indenture trustee under the Indentures for the EFH Notes issued by EFH Corp.  The EFH Legacy Series Q/R Trustee has filed proofs of claim detailing the amounts due.  *See* Appendix (attaching proofs of claim).[10]

On April 11, 2014, AST, EFH Corp. and the Bank of New York Mellon as predecessor trustee entered into a tripartite agreement pursuant to which EFH Corp. appointed AST as, and AST assumed the role of, EFH Legacy Series Q/R Trustee under the EFH Legacy Q/R Indentures.  *See* [D.I. 256] (Notice of Appearance).

---

[10] Financial professionals for the EFH Legacy Series Q/R Trustee and EFH Corp. are working to reach an agreement on the calculation of the amount of  balances due.  The Motion does not seek a ruling on such calculations, and at this time the EFH Legacy Series Q/R Trustee does not believe that future court involvement on those issues will be required.

**B.**     **Filings in the Debtors' bankruptcy cases.**

On April 29, 2014 (the "Petition Date"), the Debtors filed their voluntary petitions. On October 24, 2014, the EFH Legacy Series Q/R Trustee timely filed proofs of claim for its claims under the Series Q/R Indentures. *See* Appendix (attaching proofs of claim).

Each of the proofs of claim asserts a claim for payment of not only the full principal and all interest, but also any "makewhole amounts," as well as "all other interest, charges, . . . penalties, premiums, and advances, which may be due or become due under the Notes and Indentures . . . ." *See* Proofs of Claim, Addendum page 3.

On September 21, 2015, the Debtors filed their *Amended Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6124] (including the exhibits thereto, the "Disclosure Statement") and the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6123] (the "Plan"). On September 22, 2015, the Bankruptcy Court entered its *Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 6131] (the "Disclosure Statement Order").

On September 28, 2015, by telephone the Court heard argument on requests by the EFH Legacy Series Q/R Trustee and the Official Committee of Unsecured Creditors for leave to take additional discovery and for revisions to the confirmation schedule in order to investigate the Debtors' recent proposal to reinstate the EFH Legacy Q/R Indenture debt and potentially transfer those obligations to Reorganized TCEH. On that date, the Court ordered the parties to negotiate a parallel track discovery schedule whereby the confirmation hearing will proceed as per the

6

Court's amended *Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors Plan of Reorganization* [D.I. 5771], while issues related to the reinstatement proposal remain open to discovery and will not be taken up by the Court until the week of November 30. *See* September 28, 2015 Hearing Transcript p. 43 (attached as Exhibit A).

Section VII.A of the Plan provides that:

> [e]xcept as specifically provided as Allowed Claims pursuant to Article III.B of the Plan or otherwise objected to by the Debtors in the Chapter 11 Cases, the Plan shall serve as the Debtors' objection to all other EFIH First Lien Note Claims, EFIH Second Lien Note Claims, EFIH Unsecured Note Claims, EFH LBO Note Claims, and EFH Legacy Note Claims under the respective indentures.[11]

Accordingly, the Plan provides that the Plan serves as the Debtors' objection to the EFH Legacy Note claims.

## III.    SUMMARY OF ARGUMENT

Under the required two-step analysis, a claim must be allowed in Bankruptcy if the claimed right is provided as a matter of state law and no specific Bankruptcy Code provision requires that it be disallowed. *See infra* Section VI. A. Under the first step here, the EFH Legacy Q/R Indentures plainly require payment of the "Redemption Price" according to a formula stated in the Notes, upon payment in advance of the fixed "Stated Maturity" dates of November 15,

---

[11] In the Disclosure Statement the Debtors state that they have or intend to file a separate objection to the Claim for makewhole payments as to the EFH Legacy Q/R Notes. *See* Disclosure Statement, p. 15 (defining "Makewhole Challenges" to include the "EFH Legacy Note Claims" and stating: "The following applies to the Makewhole Claims, other than those that are the subject of the Makewhole Challenges: The filing and notice of filing of the Plan, in accordance with Fed. R. Bankr. P. 3007(a), shall serve as the Debtors' objections to the Makewhole Claims.") (emphasis added). The EFH Legacy Q/R Trustee believes that the clear objection language in the Plan governs and that the Makewhole portion of its claim has been objected to and that the issues presented in the Motion are ripe. The Motion is filed in response to the objection to the Makewhole Claims on the EFH Legacy Q/R Indentures. AST in its capacity as trustee will respond separately to all other aspects of the Debtors' objections to its claims and all such response rights are reserved.

2024, and November 15, 2034, respectively. *See id*. The Plan proposes to pay the notes in advance of those dates, which amounts to a "redemption" for which the Redemption Price must be paid. *See id.*

Unlike certain other indentures that the Court has previously considered in these cases, the EFH Legacy Q/R Indentures do not include an automatic acceleration clause and the debt has not otherwise been accelerated. *See infra* Section VI. B. i. For this reason, the Court's prior rulings disallowing makewhole claims as to those very different indentures do not apply here. *See id*. Moreover, under the applicable agreements the Redemption Price is triggered upon redemption prior to fixed, "Stated Maturity" dates. *See infra* Section VI. B. ii. Those dates would be unaffected by any acceleration even if a notice of acceleration had been given. *See id*. Nor does the filing of a petition change the Stated Maturity dates. *See infra* Section VI. B. iii. Many courts agree that, to the extent the filing of a petition is sometimes said to automatically accelerate maturity for the purposes of filing a claim, that does not advance the fixed trigger date (here, the "Stated Maturity") for purposes of entitlement to early payment premiums. *Id*. Indeed, this Court's prior ruling on the EFIH First Lien makewhole claims—that if the automatic stay were lifted thereby permitting deceleration, the EFIH refinancing "would be an Optional Redemption under section 3.07 of the Indenture and the Applicable Premium would be due and owing" -- would have been unnecessary and incorrect if mere filing of a petition automatically constituted acceleration for such purposes. *Id*.

Having established entitlement to the makewhole under this particular contract language as a matter of state law, the second step is to consider whether the Bankruptcy Code requires disallowance of the claim. *See infra* Section VI. C. It does not. The Redemption Price is not unenforceable under state law, as demonstrated above. Section 502(b)(1) is therefore inapt. The

right to the Redemption Price includes liquidated damages negotiated among sophisticated parties, and is not unmatured interest barred by section 502(b)(2).  *See id*.  Nor do other exceptions under section 502 (such as for property tax, child support etc.) apply.  *See id*.  Accordingly, the makewhole claims on the EFH Legacy Q/R Notes must be allowed.

There is also an additional independent ground mandating allowance of the makewhole claims here.  Numerous bankruptcy cases in which the debtor is solvent hold that valid state-law contract provisions must be enforced in bankruptcy.  *See infra* Section VI. D.  The EFH Legacy Q/R Trustee does not ask the Court to rule on solvency for purposes of this summary judgment motion.  *See id*.  Instead, the Trustee respectfully requests that the Court assume solvency, as it had done in evaluating legal arguments on prior makewhole summary judgment motions.  *See id*.  Moreover, it is appropriate to assume solvency in this case, where the Plan purports to pay all unsecured creditors in full, is structured so that there is purportedly no impaired class, and holders of pre-petition equity will obtain value in the form of releases and other consideration.  Under the solvent-debtor cases, the makewhole should be allowed.  *See id*.

Finally, because the EFH Legacy Q/R makewhole claims should be allowed, the Court should further rule that Condition Precedent number 9 to the effective date of the Plan – which conditions effectiveness of the Plan on these claims being "Disallowed Makewhole Claims" -- cannot be met.  *See infra* Section VII.

## IV.    STATEMENT OF UNDISPUTED FACTS

### A.    Terms of the Indentures and Notes.

The EFH Series Q/R Indentures were issued in 2004.  As noted, their clarity on the makewhole issues is extraordinary.

Section 401 of each of the EFH Legacy Q/R Indentures provides:

9

Securities of any series, or any Tranche thereof, which are redeemable before their Stated Maturity shall be redeemable in accordance with their terms and (except as otherwise specified as contemplated by Section 301 for Securities of such series or Tranche) in accordance with this Article.

The officer's certificate related to the issuance of each EFH Legacy Q/R Note provides:

The Notes will be redeemable at the option of the Company prior to the Stated Maturity of the principal thereof as provided in the form [of Note] thereof set forth in Exhibit B hereto.

Each EFH Legacy Q/R Note provides that:

The Securities of this series will be redeemable at the option of the Company prior to the Stated Maturity (each a "Redemption Date"), in whole or in part, at any time. The Company will give notice of its intent to redeem such Securities of this series at least 30 days but no more than 60 days prior to the Redemption Date. If the Company redeems all or any part of the Securities of this series, it will pay a Redemption Price (the "Redemption Price") equal to the greater of

(1) 100% of the principal amount of the Securities of this series being redeemed, and

(2) the sum of the present values of the remaining scheduled payments of principal and interest (excluding any portion of any such interest accrued to the Redemption Date) on the Securities of this series being redeemed, discounted to the Redemption Date on a semi-annual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate plus 35 basis points, plus, in each case, accrued interest on those Securities of this series to the Redemption Date….

Upon payment of the Redemption Price, on and after the Redemption Date interest will cease to accrue on the Securities of this series or portions thereof called for redemption.

Section 101 of each EFH Legacy Q/R Indenture defines the following terms:

"Stated Maturity," when used with respect to any obligation or any installment of principal thereof or interest thereon, means the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension).

Article 802 of each EFH Legacy Q/R Indenture provides:

If an Event of Default due to the default in payment of principal of, or interest on, any series of Securities or due to the default in the performance or breach of any other covenant or warranty of the Company applicable to the Securities of such series but not applicable to all Outstanding Securities shall have occurred and be continuing, either the Trustee or the Holders of not less than 33% in principal amount of the Securities of such series may then declare the principal amount (or, if any of the Securities of such series are Discount Securities, such portion of the principal amount as may be specified in the terms thereof as contemplated by Section 301) of all Securities of such series and interest accrued thereon to be due and payable immediately by a written notice to the Company (and to the Trustee if given by the Holders). If an Event of Default due to default in the performance of any other of the covenants or agreements herein applicable to all Outstanding Securities or an Event of Default specified in Section 801(d) or (e) shall have occurred and be continuing, either the Trustee or the Holders of not less than 33% in principal amount of all Securities then Outstanding (considered as one class), and not the Holders of the Securities of any one of such series, may declare the principal of all Securities and interest accrued thereon to be due and payable immediately by a written notice to the Company (and to the Trustee if given by the Holders). As a consequence of each such declaration (herein referred to as a declaration of acceleration) with respect to Securities of any series, the principal amount (or portion thereof in the case of Discount Securities) of such Securities and interest accrued thereon shall become due and payable immediately.

*Id.* (emphasis added).

The stated maturity dates of the EFH Legacy Q/R Notes are November 15, 2024, and November 15, 2034, for Series Q and R, respectively. *See* Appendix (attaching proofs of claim) (Series Q and R Officer's Certificates, Section. 2).

**B.      No declaration of acceleration has been given by the trustee or otherwise.**

The EFH Legacy Series Q/R Trustee has not made any "declaration of acceleration" as specified in Section 802 of the EFH Legacy Q/R Indentures. *See* Goodstein Decl. ¶ 4. To the knowledge of the EFH Legacy Series Q/R Trustee, no EFH Legacy Q/R Holders have made any "declaration of acceleration" as specified in Section 802 of the EFH Legacy Q/R Indentures. *See*

4816-2244-9705 1

Goodstein Decl. ¶ 5; see also the deposition of Paul Keglevic Dep. (Oct. 1, 2015) 250:25-251:1-12.

## V.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, made applicable to this contested matter by Rules 7056 and 9014(c) of the Federal Rules of Bankruptcy Procedure, directs that summary judgment should be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also In re Delta Mills, Inc.*, 404 B.R. 95, 103 (Bankr. D. Del. 2009).  Summary judgment is designed "to avoid trial or extensive discovery if facts are settled and the dispute turns on an issue of law." *Delta Mills*, 404 B.R. at 104. If the movant provides the necessary support for a motion for summary judgment, the non- movant must produce admissible evidence demonstrating the existence of a "genuine" issue of "material" fact for trial, and cannot rest on unproved allegations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45 (3d Cir. 2009).

Here there are no genuine issues of material fact.  Summary judgment is appropriate because the sole issue before the court is the legal interpretation of the terms of the EFH Legacy Q/R Indentures.  *See In re Energy Future Holdings Corp.*, 527 B.R. 178, 190 (Bankr. D. Del. 2015) (citing *Niagara Frontier Transit Metro Sys., Inc. v. Cnty. of Erie*, 623 N.Y.S.2d 33 (N.Y. App. Div. 1995) (citing *W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639 (N.Y. 1990) ("Where the contract is unambiguous on its face, it should be construed as a matter of law and summary judgment is appropriate.").  While summary judgment is frequently sought on claim objections, it is equally appropriate for issues related to confirmation.   Confirmation objections are contested matters subject to the Bankruptcy Rule 9014.  Moreover, unlike many other confirmation objections, the rulings sought here do not depend on any evidence to be submitted

at confirmation.  Accordingly, summary judgment is also the appropriate means for

determination of legal issues in connection with confirmation of the Plan.

## VI.    ARGUMENT

**A.    The EFH Legacy Q/R Holders are contractually entitled to payment of their Makewhole Claims under the terms of the EFH Legacy Q/R Indentures.**

Courts follow a two-step analysis of whether a lender is entitled to payment of a

prepayment premium, makewhole or a Redemption Price.  The first issue is whether the payment

is triggered under the applicable contract.  The second issue is whether the payment is not

disallowed under the Bankruptcy Code.  *See, e.g., Travelers Cas. & Sur. Co. of Am. v. Pac. Gas*

*& Elec. Co.*, 549 U.S. 443, 449-52 (2007); *In re Chemtura Corp.*, 439 B.R. 561, 600 (Bankr.

S.D.N.Y. 2010).  With this Motion the EFH Legacy Series Q/R Trustee seeks summary

judgment on each of these issues.

Each EFH Legacy Q/R Note provides that a redemption of the EFH Legacy Q/R Notes

prior to their "Stated Maturity" requires payment of the Redemption Price.

> The Securities of this series will be redeemable at the option of the
> Company prior to the Stated Maturity (each a "Redemption Date"), in
> whole or in part, at any time. The Company will give notice of its intent to
> redeem such Securities of this series at least 30 days but no more than 60
> days prior to the Redemption Date. If the Company redeems all or any part
> of the Securities of this series, it will pay [the] Redemption Price. . . .

*See* Exhibit A to Proof of Claim Addendum (form of Note), Claim Nos. 7478 and 7479.  The

Redemption Price is a contractually provided calculation of liquidated damages for the early

redemption of the EFH Legacy Q/R Notes.

Each EFH Legacy Q/R Indenture is governed by New York law.  *See* EFH Legacy Q/R

Indentures, section 112.  Under New York law a court need not look "outside the four corners"

of a complete document to determine what the parties intended.  *W.W.W. Assoc. Inc.*, 566 N.E.2d

at 642; *see also R/S Assocs. v. N.Y. Job Dev. Auth.*, 98 N.Y.2d 29, 30 (App. Div. 2002) (applying

same principle).  Each EFH Legacy Q/R Indenture is a complete document and unambiguous as regards the EFH Legacy Q/R Holders' right to a makewhole payment.

Courts generally follow three canons in interpreting contracts governed by New York law.  First, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013) (internal quotation marks and citation omitted).  Second, should there be an inconsistency between a specific and general provision of a contract, the specific controls.  *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956); *Waldman v. New Phone Dimensions, Inc.*, 487 N.Y.S.2d 29, 31 (App. Div. 1985).  Third, "[a] reading of the contract should not render any portion meaningless." *See Beal Sav. Bank v. Sommer*, 8 N.Y.3d 318, 324 (2007) (quotation marks and citations omitted); *Barrow v. Lawrence United Corp.*, 538 N.Y.S.2d 363, 365 (App. Div. 3rd Dep't 1989) ("Contracts are also to be interpreted to avoid inconsistencies and to give meaning to all of its terms.").

Under the plain language of each EFH Legacy Q/R Indenture, the payment of the principal amount of the EFH Legacy Q/R Notes prior to their Stated Maturity requires payment of the Redemption Price calculated in accordance with the terms of the Note.  *See* each Note and Article 4 of each EFH Legacy Q/R Indenture and EFH Legacy Q/R Indentures, section 101(defining "Stated Maturity").  *See* EFH Legacy Q/R Indentures section 401 ("Securities of any series…which are redeemable before their Stated Maturity shall be redeemable in accordance with their terms….").

The Stated Maturity for each of the EFH Legacy Q/R Notes is "the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (*without regard to any provision for redemption, prepayment, acceleration, purchase or*

14

*extension*).” *See* EFH Legacy Q/R Indentures, Section 101 (emphasis added). In particular, the 6.50% Series Q Notes are due and payable with all accrued and unpaid interest on November 15, 2024. *See* Series Q Officer's Certificate, Section. 2. The 6.55% Series R Notes are due and payable with all accrued and unpaid interest on November 15, 2034. *See* Series R Officer's Certificate, Section 2.[12] The Stated Maturities are therefore November 15, 2024 and November 15, 2034, respectively. Accordingly, the EFH Legacy Q/R Holders are entitled to payment of the Redemption Price.

Under the Plan, the Debtors propose to pay the principal, accrued but unpaid prepetition interest, and accrued post-petition interest at the Federal Judgment Rate owed on the EFH Legacy Q/R Notes in full on the Effective Date. *See* Plan Sec. III.B.4 and VI.A. The Plan provides that on the Effective Date all notes and indentures and other documents evidencing the EFH Legacy Q/R Notes claims “shall be deemed canceled, surrendered, and discharged without need for any further action or approval of the Bankruptcy Court.” *See* Plan Sec. IV.I. Payment of the EFH Legacy Q/R Notes, cancelation of the EFH Legacy Q/R Notes and discharge of the Indentures as part of a plan of reorganization is clearly a redemption of the Notes under the Indenture. Numerous cases addressing makewhole provisions support that repayment of notes prior to a stated date, regardless of an intervening bankruptcy petition, triggers an obligation by the issuer to pay a makewhole premium when the applicable indenture so provides. *See*, *e.g.*, *Findings of Fact and Conclusions of Law Regarding Cross Motions for Summary Judgment*, Adv. No. 14-50363 (the “First Lien Makewhole Ruling”) [D.I. 3984] (*see infra* n. 14); *In re Sch.*

---

[12] The 5.55% Series P Senior Notes are also defined in the Plan as being among the EFH Legacy Note Indentures. However, they became due and payable with all accrued and unpaid interest on November 14, 2014 and thus are not at issue in the Motion. *See* Series P Officer's Certificate, Section 2 [Claim No. 7477]; Plan at 12 (defining “EFH Legacy Note Indentures” as “collectively: (a) the EFH Legacy Series P Indenture; (b) the EFH Legacy Series Q Indenture; and (c) the EFH Legacy Series R Indenture.”).

*Specialty, Inc.*, No. 13-10125, 2013 WL 1838513, at *2-3 (Bankr. D. Del. Apr. 22, 2013); *In re Chemtura Corp.*, 439 B.R. 561 (Bankr. S.D.N.Y. 2010).

**B.      Unlike the other Indentures in the Debtors' bankruptcy cases that this Court has previously reviewed, the EFH Legacy Q/R Notes did not accelerate by their terms upon the filing of the Petition.**

       i.       The EFH Legacy Q/R Indentures do not include an automatic acceleration clause.

Under section 802 of each EFH Legacy Q/R Indenture, the EFH Legacy Q/R Notes could only be accelerated if either the Trustee or the Holders of not less than 33% in principal amount of a particular series of EFH Legacy Q/R Notes sent a written notice to EFH Corp., and declared the principal amount of such series to be due and payable immediately.  *See* Indenture Sec. 802. Neither the Trustee nor, to the best of its knowledge, any EFH Legacy Q/R Holder has sent a notice to EFH Corp. purporting to accelerate any series of EFH Legacy Q/R Notes.  *See* Goodstein Decl. ¶¶ 4, 5.

Indeed, even if the EFH Legacy Series Q/R Trustee, or the Holders of the requisite amount of EFH Legacy Q/R Notes, intended to take steps to accelerate the Notes under the terms of the EFH Legacy Q/R Indentures, the automatic stay under the Bankruptcy Code would have barred any such steps.  *See* 11 U.S.C. § 362; *In re Optel*, 60 F. App'x 390 (3d Cir. 2003) (noteholder could file a claim for an unmatured deferred payment, it was not entitled to take steps to collect on deferred payment); *In re Energy Future Holdings Corp.*, 527 B.R. 178, 197 (Bankr. D. Del. 2015) (First Lien Makewhole Ruling) (holding that a rescission notice (a corollary to an acceleration notice) "is an act to 'collect, assess or recover' on a claim, especially when the Noteholders have already been paid their full principal and accrued interest.") (citations omitted).

16

In this respect, the terms of the EFH Legacy Q/R Indentures and Notes are fundamentally different from the terms of any other debt documents already reviewed by this Court in connection with prior makewhole disputes.[13]

    ii.    <u>The Redemption Price is triggered on a redemption prior to the "Stated Maturity" – which is a fixed date that is unaffected by any acceleration.</u>

In addition, the Stated Maturity of the EFH Legacy Q/R Notes was unaffected by the filing of EFH Corp.'s petition.  The definition of Stated Maturity provides that it is "the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (*without regard to any provision for redemption, prepayment, acceleration, purchase or extension*)."  *See* EFH Legacy Q/R Indentures, Section 101 (emphasis added); *see, e.g., In re Chemtura Corp*., 439 B.R. 561, 601 (Bankr. S.D.N.Y. 2010) (finding that the bondholders had the better argument because the notes at issues provided for a  "Maturity Date" defined, as a date certain, the right to accelerate did not change that contractual definition, and the contract provided for the makewhole becoming due if the notes were paid before the "Maturity Date").

Accordingly, even if hypothetically the Trustee had given a notice of acceleration for the EFH Legacy Q/R Notes, that would not have affected the Stated Maturity under the EFH Legacy Q/R Indentures and any redemption before the Stated Maturity would still require payment of the Redemption Price.

---

[13] Until the Plan was filed, the Debtors have never challenged the makewhole premium of EFH Legacy Q/R Notes.  The Plan is the Debtors' first foray seeking a judicial determination of the merits of the makewhole premium.

iii.  <u>To the extent The Bankruptcy Code may be said to accelerate unmatured debts for purposes of filing proofs of claim, it does not accelerate the fixed Stated Maturity Date or otherwise undermine the right to the Redemption Price.</u>

Filing a petition under the Bankruptcy Code is sometimes said to act as an automatic acceleration for purposes of filing a proof of claim.  However, that does not alter the parties' rights under the contract, and does not defeat a lender's right to a redemption premium under the applicable contract.  This Court has already ruled as much in the First Lien Makewhole Ruling.  There, based on the plain language of the First Lien Indenture, the Court held that in the absence of a <u>contractual</u> acceleration, EFIH's refinancing would be an "Optional Redemption" and the "Applicable Premium" <u>would be due and owing</u> to the First Lien noteholders.  *See* First Lien Makewhole Ruling [D.I. 3984].[14]  That ruling is squarely contrary to any notion that automatic acceleration under the Code (which perforce is present in every bankruptcy) – as opposed to automatic contractual acceleration pursuant to certain other indentures' very different contract language -- forecloses allowing claims for makewhole amounts universally.

Indeed, if acceleration for purposes of filing a proof of claim were acceleration for all purposes, then prepayment and makewhole payments would never be enforceable in bankruptcy.  If that were so, then this Court would not have needed to interpret the contractual acceleration clause in the EFIH First Lien Indenture in its ruling on the makewhole claim under the EFIH first lien.  *See In re Energy Future Holdings Corp.*, 527 B.R. 178, 191 (Bankr. D. Del. 2015).  If the Court applies the same analysis to the EFH Legacy Q/R Indentures, based on the plain language

---

[14] As this Court ruled, "if the Court were to lift the automatic stay, *nunc pro tunc* to a date on or before the repayment of the Notes on June 19, 2014, to allow the Trustee to waive the default and decelerate the Notes <u>then EFIH's refinancing would be an Optional Redemption</u> under section 3.07 of the Indenture <u>and the Applicable Premium would be due and owing</u> to the non-settling Noteholders." *Id.* at 184 (emphasis added). To assume that the statutory automatic acceleration for purposes of making a claim operates as acceleration for all purposes would render this ruling nonsense.

of the contracts and the undisputed fact that there has been no notice of acceleration, the EFH

Legacy Q/R Holders are entitled to makewhole payments in connection with any voluntary

redemption such as that contemplated under the Plan.

Moreover, this aspect of the First Lien Makewhole Ruling is fully in keeping with

numerous courts that have considered this issue.  *See*, *e.g.*, *Biloxi*, 445 B.R. at 630, 631, 632

("The automatic acceleration of a debt under the Bankruptcy Code allows a lender to file a proof

of claim for the unmatured principal amount of the debt under §502 without violating the

automatic stay, but such acceleration is relatively limited and does not change the maturity date

of the debt.") (internal citations omitted); *see also In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr.

C.D. Cal. 1987) ("automatic acceleration of a debt upon the filing of a bankruptcy case is not the

kind of acceleration that eliminated the right to prepayment premium"); *In re Payless Cashways,

Inc.*, 287 B.R. 482, 488 (Bankr. W.D. Mo. 2002) (lender was not entitled to default interest

because the court found that "the filing of the bankruptcy petition in this case did not per se

accelerate the Loans.  Oaktree took no affirmative action to accelerate as it was required to do by

federal bankruptcy law, and the law of New York").

Indeed, as the Seventh Circuit made clear in *In re LHD Realty Corp.*, 726 F.2d 327 (7th

Cir. 1984), the correct path for a lender who wishes to preserve a right to a redemption premium

in the shadow of a bankruptcy filing is <u>not</u> to accelerate, and if the Debtor repays the loan (as the

Plan here provides) enforce the premium.  Specifically, the Seventh Circuit stated that:

> [I]f the lender wishes to preserve its right to a premium, it must forebear
> from exercising its acceleration option and await the trustee's or the
> debtor's decision.  Should the trustee or the debtor then decide to repay the
> loan, the lender would presumably be able to enforce an otherwise valid
> prepayment premium.

*Id*. at 332.

19

Furthermore, the mere fact that the Bankruptcy Code permits creditors to file proofs of claims for unmatured and contingent claims does not mean that the claims were in fact accelerated under the applicable contract or pursuant to state law.  No provision of the Bankruptcy Code speaks to such acceleration and thus with regard to the calculation of claim amounts, and whether or not the underlying debt was accelerated, the general rule that one looks to state law must continue to govern. *Butner v. U.S.,* 440 U.S. 48, 54 (1979) (state law governs the substance of claims. *See also* 11 U.S.C. §§ 101(5); 502(b); *In re SNTL Corp.*, 571 F.3d 826, 838 (9th Cir. 2009) (a contingent claim that is valid under state law must be allowed under section 502(b)(1) even though the contingency occurred postpetition).   In addition, if commencement of a case were to automatically accelerate debt for all purposes, then there would in effect be no unmatured claims.  Likewise automatic contractual acceleration provisions would be superfluous if all unmatured debt were accelerated for all purposes upon the filing of the bankruptcy.

Separate and apart from the foregoing general considerations, here, due to the special language of the EFH Legacy Q/R Indentures, even if filing the petition were said to automatically accelerate the EFH Legacy Q/R Notes, that would still not undermine the EFH Legacy Q/R Holders' entitlement to payment of the Redemption Price.  Unlike other indentures, the amount owed in the case of a full payment prior to the "Stated Maturity" is the Redemption Price – and "Stated Maturity" does not change on account of any acceleration, whether contractual or otherwise.

Under the plain language of each EFH Legacy Q/R Indenture the payment of the full principal amount of the EFH Legacy Q/R Notes prior to their Stated Maturity requires payment

of the Redemption Price calculated in accordance with the terms of the Note.  New York law is clear on this.  There is no dispute of fact.  Judgment under Fed. R. Civ. P. 56 is appropriate.

**C.      The Bankruptcy Code does not disallow the claim for payment of the redemption price.**

Having established as a matter of contract and state law that the Redemption Price is required to be paid, it only remains to be considered whether the Bankruptcy Code requires disallowance of the Claim.  It does not.  Under section 502(b) of the Bankruptcy Code, an objected-to claim must be allowed except to the extent that one of nine enumerated exceptions apply.  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 443-44 (2007).  None of the exceptions applies here.

The exception under section 502(b)(1) for claims that are unenforceable under state law (setting aside contingency or lack of maturity) does not apply.  As demonstrated above, the contract requires payment of the Redemption Price.  Likewise, payment of the Redemption Price is not an impermissible penalty under applicable New York law.[15]

---

[15] Under New York law, prepayment provisions and early termination fees are analyzed under the standards applicable to liquidated damages.  *See In re Sch. Specialty, Inc.*, No. 13-10125, 2013 WL 1838513, at *2-3 (Bankr. D. Del. Apr. 22, 2013) (citing *JMD Holding Corp. v. Cong. Fin. Corp.*, 828 N.E.2d 604, 609 (N.Y. 2005) ("[w]hether the early termination fee represents an enforceable liquidation of damages or an unenforceable penalty is a question of law, giving due consideration to the nature of the contract and the circumstances"); *Leasing Serv. Corp. v. Justice*, 673 F.2d 70, 74 (2d Cir.1982)).  "New York courts will consider a prepayment premium to be enforceable when (i) actual damages are difficult to determine, and (ii) the sum stipulated is not 'plainly disproportionate' to the possible loss." *In re Sch. Specialty, Inc.*, 2013 WL 1838513, at *2-3 (citing *In re South Side House, LLC*, 451 B.R. 248, 270 (Bankr. E.D.N.Y.2011)).  The reasonableness of the damages is determined as of the time the parties entered into the agreement and not at the time of the breach.  *Id.* (citing *Walter E. Heller & Co., Inc. v. Am. Flyers Airline Corp.*, 459 F.2d 896, 898–99 (2d Cir.1972)).  Further, New York courts have cautioned against interfering with parties' agreements.  *JMD Holding*, 828 N.E.2d at 609-10 (citing *Fifty States Mgt. Corp. v. Pioneer Auto Parks*, 389 N.E.2d 113, 115-16 (N.Y. 1979) ("Absent some element of fraud, exploitive over-reaching or unconscionable conduct to exploit a technical breach, there is no warrant, either in law or equity, for a court to refuse enforcement of the agreement of the parties")).

The exception under section 502(b)(2) of the Bankruptcy Code for claims of unmatured interest does not apply because the Redemption Price is not unmatured interest. *In re Trico Marine Servs., Inc.*, 450 B.R. 474 (Bankr. D. Del 2011) (claim for makewhole is liquidated damages); *In re School Specialty, Inc.*, No. 13-10125, 2013 WL 1838513 (Bankr. D. Del 2013) (claim for makewhole is liquidated damages).

Nor is this claim one for property tax, child support or alimony, services provided by an attorney of the debtor, damages resulting from the termination of a lease or employment contract, or the late payment of any employment tax. *See Travelers,* 549 U.S. at 450. Thus the claim must be allowed. *See id.*

Because the plain language of the EFH Legacy Q/R Indentures and state law entitles the EFH Legacy Q/R Holders to payment of the Redemption Price, and the Bankruptcy Code does not disallow the claim, the Court should allow the claim for the Redemption Price in full.

**D.      Solvency, to the extent relevant, should be assumed for purposes of this Motion.**

The EFH Legacy Series Q/R Trustee is not asking the Court to rule on solvency at this juncture. In prior makewhole decisions, however, the Court has properly bifurcated issues for analysis and ruled on legal issues while assuming solvency. *See Delaware Trust Co. v. EFIH and EFIH Finance*, No. 14-50363, Bifurcation Order [D.I. 128] (solvency will be assumed for determining contractual entitlement to makewhole). Because of the fundamental importance of Plan confirmation issues to which entitlement to the makewhole is directly relevant, the EFH Legacy Series Q/R Trustee respectfully requests that the Court similarly address the makewhole issues without requiring proof of solvency at this time.

As demonstrated above, the makewhole claim should be allowed under the two-step process, but underlined independent of that analysis, there is further support in allowing makewhole to the extent that the Court is willing to assume solvency. In solvent debtor cases, "the bankruptcy rule

22

is that where there is a contractual provision, valid under state law, the bankruptcy court will enforce the contractual provision." *Gencarelli v. Gencarelli*, 501 F.3d 1, 7 (1st Cir. 2007) (quoting *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*, 679 F.2d 264, 269 (1st Cir. 1982) and citing cases); *see also In re Los Angeles Dodgers LLC*, 465 B.R. 18, 32 (D. Del. 2011); *In re Chemtura Corp.*, 439 B.R. 561, 605 (Bankr. S.D.N.Y. 2010).  This is because "issues as to fairness amongst creditors, in sharing a limited pie, no longer apply; the allowance of claims under a make-whole provision, or for damages for breach of a no-call, no longer comes at the expense of other creditors." *In re Chemtura Corp.*, 439 B.R. at 605.

Furthermore, in this case, the Court must assume solvency at confirmation in connection with allowance of EFH claims because the Plan at issue (i) features no impaired unsecured creditor class, but instead purports to pay all unsecured creditors in full; and (ii) the Plan purports to distribute value in the form of releases and other consideration to holders of pre-petition equity.  As a result, the Redemption Price payable to the EFH Legacy Q/R Notes does not come at the expense of other creditors.[16]

Of course, once solvency is assumed or established, the EFH Legacy Q/R Holders are entitled to the benefits of the solvent-debtor case law.  As demonstrated above, those solvent-debtor cases mandate payment of the makewhole claim here.  Accordingly, for this independent reason, the Court should enter Summary Judgment ordering that the EFH Legacy Q/R Trustee's makewhole claims be allowed and, consequently, that Condition Precedent number 9 to the effectiveness of the Plan cannot be met.

---

[16] The Motion and this Memorandum  lay out a simple and direct path to the allowance of the Makewhole Claims. There are other, perhaps more fact-intensive paths, such as damages for early payment.  The EFH Legacy Series Q/R Trustee reserves all rights to raise other arguments in support of the EFH Legacy Q/R Holders' right to full and complete payment on their claims at a later time.

## VII.    <u>CONCLUSION</u>

Based on the foregoing, the EFH Legacy Series Q/R Trustee respectfully requests that the Court grant its Motion for Summary Judgment and enter an Order that: (i) the allowed amounts of the EFH Legacy Q/R Trustee's makewhole claims shall include the full Redemption Price as determined in the EFH Legacy Q/R Indentures and Notes; (ii) Condition Precedent number 9 to the Effective Date of the Plan (Plan Art. IX.B.9) cannot be met; and (iii) granting such other relief as the Court deems just and proper to effectuate the allowance of the EFH Legacy Series Q/R Trustee's claims in the manner sought in the Motion.

Dated: Wilmington, DE
      October 7, 2015

**CROSS & SIMON, LLC**

By: /s/ *Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust
Company, LLC, as Indenture Trustee*

4816-2244-9705 1