# EXHIBIT B

| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE | **PROOF OF CLAIM** |
|---|---|

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
Energy Future Holdings Corp. Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
Grand Central Station, P.O. Box 4613
New York, NY 10163-4613

**PROOF OF CLAIM**

**COURT USE ONLY**

| Name of Debtor: | Case Number: |
|---|---|
| Energy Future Holdings Corp. | 14-10979 |

Filed: USBC - District of Delaware
Energy Future Holdings Corp., et al., Et Al.
14-10979 (CSS)    0000007479

**NOTE:** Do not use this form to make a claim for an administrative expense that arises *after* the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

Name and address where notices should be sent:

American Stock Transfer & Trust Company, LLC, as Indenture Trustee for the 6.55% Notes Due 2034
6201 15th Avenue, Brooklyn, NY  11219
with a copy to:
Amanda D. Darwin, Nixon Peabody, LLP
100 Summer Street, Boston, MA 02110
Telephone number:  718-921-8200      Email:  admin5@amstock.com

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
_____
*(If known)*

Filed on:  _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**FILED / RECEIVED**

OCT **2 4** 2014

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

Name and address where payment should be sent (if different from above) :

Telephone number:        Email:

**COURT USE ONLY**

**5.    Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐  Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐  Wages, salaries or commissions (up to $12,475), earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐  Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐  Up to $2,775 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐  Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☑  Other – Specify applicable paragraph of 11 U.S.C. § 507(a)( **2** ).

**Amount entitled to priority:**

$ unliquidated
see attached.

**1.    Amount of Claim as of Date Case Filed:**    $772,515,625.00
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.      plus additional amounts due, see attached.
If all or part of the claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.
☑  Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest charges.

**2.    Basis for Claim:**  unsecured indebtedness for money loaned, plus
(See instruction #2)  additional amounts (including fees and expenses) under the Indenture.

**3.    Last four digits of any number by which creditor identifies debtor:** ___ ___ ___ ___
  **3a. Debtor may have scheduled account as:** _____
  (See instruction #3a)

**4.    Secured Claim (See instruction #4)**
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff:
☐ Real Estate      ☐ Motor Vehicle      ☐ Other

**Describe:** _____
**Value of Property: $** _____
**Annual Interest Rate** _____% ☐ Fixed  or ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of time case was filed, included in secured claim, if any:**
$ _____

**Basis for perfection:** _____

**Amount of Secured Claim:**  $ _____

**Amount Unsecured:**  $ _____

**6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $** _____    (See instruction #6)

**7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #7)

**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8 and definition of "redacted".)*
DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**9.    Signature:** (See instruction #9)    Check the appropriate box:
☑ I am the creditor.   ☐ I am the creditor's authorized agent.      ☐ I am the trustee, or the debtor, or their      ☐ I am a guarantor, surety, indorser, or other codebtor.
      (Attached a copy of power of attorney, if any.)    authorized agent. (See Bankruptcy Rule 3004.)    (See Bankruptcy Rule 3005.)
I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Paul Kim
Title:  Assistant General Counsel
Company:  American Stock Transfer & Trust Company, LLC, as Indenture Trustee
(Signature)
October 21, 2014
(Date)

Address, telephone number, and email (if different from notice address above):

Telephone number:  718-921-8200
Email:  admin5@amstock.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP. *et. al.*, | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |

## ADDENDUM TO PROOF OF CLAIM BY AMERICAN STOCK TRANSFER & TRUST COMPANY, LLC AS INDENTURE TRUSTEE FOR THE ENERGY FUTURE HOLDINGS CORP. 6.55% SERIES R NOTES DUE 2034 ON BEHALF OF ITS HOLDERS AND FOR ITS OWN FEES AND EXPENSES

This Addendum is submitted with and incorporated in the Proof of Claim (this "Proof of Claim") filed in this case by American Stock Transfer & Trust Company, LLC, solely in its capacity as Indenture Trustee (together with its predecessors, successors and assigns, the "Indenture Trustee"), as successor to The Bank of New York Mellon Trust Company, N.A ("BNYMTC"), under that certain Indenture dated as of November 1, 2004, between Energy Future Holdings Corp.("EFH" or the "Issuer"), as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Indenture", as may be further amended, supplemented or modified) pursuant to which the Issuer issued the 6.55% Series R Notes Notes Due 2034 (the "Notes") in the outstanding principal amount of $750,000,000. The Indenture, the Notes, and any and all other documents, instruments, certificates or other writings executed or delivered in connection therewith are hereby collectively referred to as the "Indenture Documents."

This Proof of Claim by the Indenture Trustee on behalf of itself as Indenture Trustee and the holders of the Notes issued pursuant to the Indenture is filed pursuant to (1) the Order (A) Setting Bar Dates For Filing Non-Customer Proofs Of Claim And Request For Payment, (B) Approving The Form Of And Manner For Filing Non-Customer Proofs Of Claim And Request For Payment. And (C) Approving The Notice [D.I. 1866] entered on August 18, 2014, and (2) Fed. R. Bankr. P. 3003(c)(5).

### CREDITOR

American Stock Transfer & Trust Company, LLC is a New York limited liability trust company having an office at 6201 15th Avenue, Brooklyn, New York. The signatory of this Proof of Claim, Paul Kim, is an Assistant General Counsel of American Stock Transfer & Trust Company, LLC and is authorized to make this Proof of Claim.

On April 11, 2014, under the terms of the Indenture and pursuant to that certain Agreement of Resignation, Appointment and Acceptance, dated April 11, 2014, by and among the Issuer, BNYMTC, as resigning trustee, and American Stock Transfer & Trust Company, LLC, as successor trustee, the Indenture Trustee succeeded to BNYMTC as Indenture Trustee under the Indenture.

The Indenture Trustee hereby files, and is authorized pursuant to the Indenture to file, this Proof of Claim. The Indenture Trustee is aware that one or more holders of the Notes (the "Holders") may file proofs of claim on their own behalf with respect to the Notes held by such Holders.

## CLASSIFICATION AND AMOUNT OF CLAIMS
## AGAINST ISSUER

The claims filed hereunder are unsecured and administrative claims. The claims asserted are in the following liquidated and unliquidated amounts against the Issuer:

      A.      Liquidated Claims of Holders and the Indenture Trustee as of the Petition Date. The Issuer was, on April 29, 2014 (the "Petition Date"), and is now indebted and liable to the Holders and to the Indenture Trustee under the Indenture for the benefit of the Holders, all pursuant to the provisions of the Indenture and the Notes, in certain liquidated amounts described as follows:

      i.      Unpaid Principal (LIQUIDATED). The aggregate outstanding principal balance of the Notes in the liquidated amount of Seven Hundred Fifty Million and 00/100 Dollars ($750,000,000.00); and

      ii.      Unpaid Interest Due as of the Petition Date (LIQUIDATED). The amount of interest accrued and unpaid on the Notes from the last date for which an interest payment was made to the Petition Date, in the liquidated amount of Twenty-Two Million, Five Hundred Fifteen Thousand, Six Hundred Twenty-Five and 00/100 Dollars ($22,515,625.00);

for a current total liquidated claim as of the Petition Date of at least Seven Hundred Seventy-Two Million, Five Hundred Fifteen Thousand, Six Hundred Twenty-Five and 00/100 Dollars ($772,515,625.00).

      B.      Unliquidated Claims of Holders against Issuer. In addition to the foregoing liquidated amounts, the Issuer was, as of the Petition Date, and is now indebted and liable to the Holders and to the Indenture Trustee under the Indenture for the benefit of the Holders, pursuant to the provisions of the Notes and the Indenture in certain unliquidated amounts described as follows:

      i.      Interest (UNLIQUIDATED). The amount of interest accruing on the Notes from the Petition Date to the date of payment of the Notes, at the rates and in the manner set forth in the Notes and in the Indenture;

- 2 -

ii.      Other Interest (UNLIQUIDATED).  The default rate of interest, the amount of interest accruing on past-due installments of interest, all from and after the Petition Date to the date of payment of such interest, at the rates and in the manner set forth in the Notes and in the Indenture;

iii.      Other Charges (UNLIQUIDATED).  All other interest, charges, make whole amounts, penalties, premiums, and advances which may be due or become due under the Notes and the Indenture, including, without limitation, reasonable compensation, expenses, disbursements and advances (including, without limitation, reasonable fees and disbursement of counsel and financial advisors) of the Indenture Trustee and (if applicable) of the Holders; and

iv.      Damages (UNLIQUIDATED). All claims (including "claims" as defined in Bankruptcy Code §101(5)), suits, causes of action, and any other right of the Indenture Trustee or the Holders, whether known or unknown, against the Issuer, or any of their respective affiliates, agents, representatives, contractors, advisors, or any other entity that in any way is based upon, arises out of or is related to any of the Indenture Documents or the transactions related thereto or contemplated thereby.

C.      Unliquidated Claims of Indenture Trustee.  The claims asserted herein are in the following unliquidated amount:

i.      Fees and Expenses.  the Issuer was, at the Petition Date, and is now indebted and liable to the Indenture Trustee under the Indenture for reasonable compensation, expenses, disbursements and advances, including reasonable fees and disbursements of counsel and financial advisors, as Indenture Trustee under the Indenture, all incurred and being incurred until such date as the Indenture Trustee is discharged and released from its duties thereunder, including, without limitation, the reasonable fees and disbursements of counsel and financial advisors to the Indenture Trustee, incurred in connection with the Issuer's defaults under the Notes, collection of amounts payable thereunder, and enforcement of performance or observance of the obligations and agreements of the Issuer contained therein, including without limitation, all agreements of the Issuer to indemnify and hold the Indenture Trustee harmless contained therein.

D.      Administrative Claims.  The Indenture Trustee hereby makes a claim for the foregoing liquidated and unliquidated amounts for such fees and expenses, including those of its counsel, as administrative expenses of the Issuer, pursuant to Section 907 of the Indenture and Section 503(b)(1)(A), Sections 503(b)(3)(D) and (F) and Sections 503(b)(4) and (5) of the Bankruptcy Code.

In addition to seeking all amounts specifically described in this Addendum, with this claim the Indenture Trustee seeks to recover all amounts that it is entitled to recover pursuant to the terms of the Indenture Documents (hereby incorporated herein by reference), as well as applicable law.

## COPIES OF SUPPORTING DOCUMENTS

The claims hereby made are all founded on the terms of the Notes (the originals of which are in the possession of the Holders) and the terms of the Indenture Documents (which are incorporated herein by reference). True and correct copy of the Indenture (which includes the form of the Notes) is attached hereto as Exhibit A. The other Indenture Documents are voluminous and therefore, copies of the other Indenture Documents have not been attached to this Proof of Claim. Copies of the other Indenture Documents are available from the Indenture Trustee upon request and reimbursement to the Indenture Trustee for copying and shipping expense.

## RESERVATION OF RIGHTS AND CLAIMS

The filing of this Proof of Claim is specifically made without any election of rights and remedies, and the Indenture Trustee hereby reserves all rights and remedies (including, without limitation, set-off and recoupment) which it may have, in addition to filing of and pursuit of this Proof of Claim, against any Debtor and against any other person or entity. This Proof of Claim is not intended to be, and shall not be construed as, a waiver of any defaults under the Indenture Documents, or a waiver or limitation of any claims or interests of the Indenture Trustee thereunder, or a waiver of any rights, defenses or remedies the Indenture Trustee may have, including, without limitation, a right to a jury trial on any issue.

The Indenture Trustee is entitled, pursuant to applicable provisions of the Indenture, to a senior lien on all recoveries of the Holders in order to pay the compensation, expenses, disbursements and advances of the Indenture Trustee, its counsel and advisors. All claims and rights in connection with such liens are hereby reserved. Pursuant to Fed. R. Bankr. 3021, all distributions on account of this Proof of Claim or the Notes must be made to American Stock Transfer & Trust Company, LLC, as Indenture Trustee. Any claim that such separate claim of the Indenture Trustee is actually for the benefit of the Holders (in order to prevent diminution of the full claims asserted by the Holders) is also hereby reserved.

The Indenture Trustee asserts and reserves all claims, whether contingent, priority, in the nature of an administrative expense, or otherwise, including, without limitation, rights of indemnity, subrogation, and contribution, related to its agreements with the Issuer or under any other applicable theory with respect to its claims against the Debtors. Nothing in this Proof of Claim shall impair or limit the rights of the Indenture Trustee against any third parties with respect to the claims asserted herein, which such rights the Indenture Trustee hereby expressly reserves. Nothing in this Proof of Claim shall impair or limit the Indenture Trustee's rights, to the extent applicable, to supplement amounts owed under the claims referenced herein or under any and all other claims against any Debtor.

The filing of this Proof of Claim is not and shall not be deemed or construed as: (a) a waiver or release by the Indenture Trustee or any Holder of any rights against any person, entity

or property; (b) a consent by the Indenture Trustee to the jurisdiction of this Court with respect to the subject matter of this Proof of Claim, any objections or other proceeds commenced with respect thereto, or any other proceeding commenced in this case or otherwise involving the Indenture Trustee or the Holders; (c) a waiver or release of the Indenture Trustee's right to trial by jury in this Court or any other court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy or proceeding related hereto, notwithstanding the designation or not of such matters as core proceedings pursuant to 28 U.S.C. § 157, and whether such jury trial right is pursuant to the statute or the United States Constitution; (d) a consent by the Indenture Trustee to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy or proceeding related hereto pursuant to 28 U.S.C. § 157 or otherwise; (e) a waiver or release of the Indenture Trustee's right to have any and all final orders in any and all non-core matters or proceedings entered on after *de novo* review by a judge of the United States District Court; (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this Proof of Claim, or otherwise challenge the jurisdiction of judicial power of this Court with respect to the subject matter of this Proof of Claim, any objections or other proceedings commenced with respect thereto or any other proceeding commended in this case against or otherwise involving the Indenture Trustee or the Holders; (g) an election of remedies; (h) a waiver or release of, or any limitation on the Indenture Trustee's right to assert that any portion of the claims asserted herein are entitled to treatment as priority claims; (i) a waiver or release of, or any limitation on the Indenture Trustee's right to assert that any portion of the claims asserted herein are entitled to treatment as administrative claims under §§ 503(b) and 507(a) of the Bankruptcy Code; (j) precluding or limiting in any way, any claims made in connection with the Agreement in any proof of claim filed by the Issuer; or (k) a waiver of any rights, claim, actions or defenses, setoffs, recoupments or other matters to which the Indenture Trustee is entitled under any agreements, at law, in equity or under the United States Constitution.

The Indenture Trustee reserves the right to supplement or amend this Proof of Claim as necessary or desirable for any reason, including, without limitation, to provide an updated statement of amount then due, or for any other purpose for which a Proof of claim filed in this case may be amended.

**Exhibit A**

**Indenture**

**TXU CORP.**

**TO**

**THE BANK OF NEW YORK**

**Trustee**

---

*Indenture*
**(For Unsecured Debt Securities Series R)**

**Dated as of November 1, 2004**

NY #630288 v3

-i-

## TABLE OF CONTENTS

PARTIES ..................................................................................................................................1
RECITAL OF THE COMPANY ...............................................................................................1

ARTICLE ONE Definitions and Other Provisions of General Application ....................................1

    SECTION 101. Definitions...................................................................................................1

        Act........................................................................................................................ 2
        Affiliate ................................................................................................................ 2
        Authenticating Agent ........................................................................................... 2
        Authorized Officer ............................................................................................... 2
        Board of Directors................................................................................................ 2
        Board Resolution ................................................................................................. 2
        Business Day......................................................................................................... 2
        Commission ......................................................................................................... 2
        Company............................................................................................................... 3
        Company Request or Company Order ................................................................... 3
        Corporate Trust Office ......................................................................................... 3
        corporation .......................................................................................................... 3
        Defaulted Interest................................................................................................ 3
        Discount Security................................................................................................. 3
        Dollar or $ ........................................................................................................... 3
        Eligible Obligations ............................................................................................. 3
        Event of Default .................................................................................................. 3
        Governmental Authority ....................................................................................... 3
        Government Obligations........................................................................................ 3
        Holder ................................................................................................................. 4
        Indenture ............................................................................................................. 4
        Interest Payment Date .......................................................................................... 4
        Maturity............................................................................................................... 4
        Officer's Certificate ............................................................................................. 4
        Opinion of Counsel ............................................................................................. 4
        Outstanding......................................................................................................... 4
        Paying Agent........................................................................................................ 5
        Periodic Offering ................................................................................................. 5
        Person.................................................................................................................. 6
        Place of Payment................................................................................................. 6
        Predecessor Security ............................................................................................ 6
        Redemption Date ................................................................................................. 6
        Redemption Price................................................................................................. 6
        Regular Record Date............................................................................................ 6
        Required Currency ............................................................................................... 6
        Responsible Officer ............................................................................................. 6
        Securities.............................................................................................................. 6
        Security Register and Security Registrar ............................................................... 6

Note:      This table of contents shall not, for any purpose, be deemed to be part of the Indenture.      NY #63

Special Record Date.................................................................................................... 6
Stated Interest Rate ................................................................................................... 6
Stated Maturity............................................................................................................ 7
Subsidiary ................................................................................................................... 7
Tranche ........................................................................................................................ 7
Trust Indenture Act ..................................................................................................... 7
Trustee......................................................................................................................... 7
United States ............................................................................................................... 7
SECTION 102. Compliance Certificates and Opinions. ............................................7
SECTION 103. Form of Documents Delivered to Trustee..........................................8
SECTION 104. Acts of Holders. ................................................................................9
SECTION 105. Notices, etc. to Trustee and Company. .............................................10
SECTION 106. Notice to Holders of Securities; Waiver. ..........................................11
SECTION 107. Conflict with Trust Indenture Act....................................................12
SECTION 108. Effect of Headings and Table of Contents. .......................................12
SECTION 109. Successors and Assigns......................................................................12
SECTION 110. Separability Clause. ..........................................................................12
SECTION 111. Benefits of Indenture.........................................................................12
SECTION 112. Governing Law. .................................................................................12
SECTION 113. Legal Holidays. .................................................................................12

ARTICLE TWO Security Forms................................................................................... 13

SECTION 201. Forms Generally................................................................................13
SECTION 202. Form of Trustee's Certificate of Authentication..............................13

ARTICLE THREE The Securities................................................................................. 14

SECTION 301. Amount Unlimited; Issuable in Series. .............................................14
SECTION 302. Denominations. ..................................................................................17
SECTION 303. Execution, Authentication, Delivery and Dating. .............................17
SECTION 304. Temporary Securities. ........................................................................20
SECTION 305. Registration, Registration of Transfer and Exchange. ......................21
SECTION 306. Mutilated, Destroyed, Lost and Stolen Securities.............................22
SECTION 307. Payment of Interest; Interest Rights Preserved. ...............................23
SECTION 308. Persons Deemed Owners. ..................................................................24
SECTION 309. Cancellation by Security Registrar. ..................................................24
SECTION 310. Computation of Interest. ....................................................................24
SECTION 311. Payment to Be in Proper Currency. ..................................................24
SECTION 312. Extension of Interest Payment. ..........................................................25

ARTICLE FOUR Redemption of Securities ................................................................ 25

SECTION 401. Applicability of Article......................................................................25
SECTION 402. Election to Redeem; Notice to Trustee. ............................................25
SECTION 403. Selection of Securities to Be Redeemed. ..........................................25
SECTION 404. Notice of Redemption. .......................................................................26

SECTION 405. Securities Payable on Redemption Date. ..........................................27
SECTION 406. Securities Redeemed in Part. .......................................................28

ARTICLE FIVE Sinking Funds ...........................................................................28

SECTION 501. Applicability of Article. ...............................................................28
SECTION 502. Satisfaction of Sinking Fund Payments with Securities. ...................28
SECTION 503. Redemption of Securities for Sinking Fund. .....................................29

ARTICLE SIX Covenants ..................................................................................30

SECTION 601. Payment of Principal, Premium and Interest. ....................................30
SECTION 602. Maintenance of Office or Agency. ..................................................30
SECTION 603. Money for Securities Payments to Be Held in Trust. ..........................30
SECTION 604. Corporate Existence. ...................................................................32
SECTION 605. Maintenance of Properties. ...........................................................32
SECTION 606. Annual Officer's Certificate as to Compliance. ................................32
SECTION 607. Waiver of Certain Covenants. ........................................................32
SECTION 608. Limitation on Liens. ....................................................................33

ARTICLE SEVEN Satisfaction and Discharge ......................................................35

SECTION 701. Satisfaction and Discharge of Securities. .........................................35
SECTION 702. Satisfaction and Discharge of Indenture. .........................................38
SECTION 703. Application of Trust Money. ..........................................................38

ARTICLE EIGHT Events of Default; Remedies. ...................................................39

SECTION 801. Events of Default. ......................................................................39
SECTION 802. Acceleration of Maturity; Rescission and Annulment. ........................40
SECTION 803. Collection of Indebtedness and Suits for Enforcement by
                      Trustee. ...........................................................................41
SECTION 804. Trustee May File Proofs of Claim. ................................................42
SECTION 805. Trustee May Enforce Claims Without Possession of Securities. ...........42
SECTION 806. Application of Money Collected. ....................................................43
SECTION 807. Limitation on Suits. ....................................................................43
SECTION 808. Unconditional Right of Holders to Receive Principal, Premium
                      and Interest. .....................................................................44
SECTION 809. Restoration of Rights and Remedies. ..............................................44
SECTION 810. Rights and Remedies Cumulative. ..................................................44
SECTION 811. Delay or Omission Not Waiver. .....................................................44
SECTION 812. Control by Holders of Securities. ..................................................44
SECTION 813. Waiver of Past Defaults. ..............................................................45
SECTION 814. Undertaking for Costs. ................................................................45
SECTION 815. Waiver of Stay or Extension Laws. ................................................46

ARTICLE NINE The Trustee......................................................................................................... 46

SECTION 901. Certain Duties and Responsibilities. .............................................................46
SECTION 902. Notice of Defaults. ........................................................................................47
SECTION 903. Certain Rights of Trustee. .............................................................................47
SECTION 904. Not Responsible for Recitals or Issuance of Securities. ...............................48
SECTION 905. May Hold Securities.......................................................................................48
SECTION 906. Money Held in Trust. .....................................................................................49
SECTION 907. Compensation and Reimbursement. ..............................................................49
SECTION 908. Disqualification; Conflicting Interests. .........................................................50
SECTION 909. Corporate Trustee Required; Eligibility.........................................................50
SECTION 910. Resignation and Removal; Appointment of Successor. ..................................51
SECTION 911. Acceptance of Appointment by Successor. .....................................................53
SECTION 912. Merger, Conversion, Consolidation or Succession to Business......................54
SECTION 913. Preferential Collection of Claims Against Company.......................................54
SECTION 914. Co-trustees and Separate Trustees. ................................................................55
SECTION 915. Appointment of Authenticating Agent.............................................................56

ARTICLE TEN Holders' Lists and Reports by Trustee and Company......................................... 58

SECTION 1001. Lists of Holders............................................................................................58
SECTION 1002. Reports by Trustee and Company..................................................................58

ARTICLE ELEVEN Consolidation, Merger, Conveyance or Other Transfer .............................. 58

SECTION 1101. Company May Consolidate, etc., Only on Certain Terms. ............................58
SECTION 1102. Successor Corporation Substituted. ..............................................................59
SECTION 1103. Limitations. ..................................................................................................59

ARTICLE TWELVE Supplemental Indentures ........................................................................... 60

SECTION 1201. Supplemental Indentures Without Consent of Holders..................................60
SECTION 1202. Supplemental Indentures With Consent of Holders.......................................61
SECTION 1203. Execution of Supplemental Indentures. ........................................................63
SECTION 1204. Effect of Supplemental Indentures................................................................63
SECTION 1205. Conformity With Trust Indenture Act. ..........................................................64
SECTION 1206. Reference in Securities to Supplemental Indentures......................................64
SECTION 1207. Modification Without Supplemental Indenture . ...........................................64

ARTICLE THIRTEEN Meetings of Holders; Action Without Meeting....................................... 64

SECTION 1301. Purposes for Which Meetings May Be Called...............................................64
SECTION 1302. Call, Notice and Place of Meetings...............................................................64
SECTION 1303. Persons Entitled to Vote at Meetings............................................................65
SECTION 1304. Quorum; Action. ..........................................................................................65
SECTION 1305. Attendance at Meetings; Determination of Voting Rights; ...........................66
SECTION 1306. Counting Votes and Recording Action of Meetings.......................................67
SECTION 1307. Action Without Meeting. ..............................................................................68

-v-

ARTICLE FOURTEEN Immunity of Incorporators, Shareholders, Members, Officers, Managers and Directors ................................................................................................................................. 68

    SECTION 1401. Liability Solely Corporate................................................................................68

ARTICLE FIFTEEN Series R Notes............................................................................................. 68

    SECTION 1501. Designation of Series R Notes. .......................................................................68

## TXU CORP.

### Reconciliation and tie between Trust Indenture Act of 1939 and Indenture, dated as of November 1, 2004

| Trust Indenture Act Section | | Indenture Section |
|---|---|---|
| §310 | (a)(1) | 909 |
| | (a)(2) | 909 |
| | (a)(3) | 914 |
| | (a)(4) | Not Applicable |
| | (b) | 908 |
| | | 910 |
| §311 | (a) | 913 |
| | (b) | 913 |
| | (c) | 913 |
| §312 | (a) | 1001 |
| | (b) | 1001 |
| | (c) | 1001 |
| §313 | (a) | 1002 |
| | (b) | 1002 |
| | (c) | 1002 |
| §314 | (a) | 1002 |
| | (a)(4) | 606 |
| | (b) | Not Applicable |
| | (c)(1) | 102 |
| | (c)(2) | 102 |
| | (c)(3) | Not Applicable |
| | (d) | Not Applicable |
| | (e) | 102 |
| §315 | (a) | 901 |
| | | 903 |
| | (b) | 902 |
| | (c) | 901 |
| | (d) | 901 |
| | (e) | 814 |
| §316 | (a) | 812 |
| | | 813 |
| | (a)(1)(A) | 802 |
| | | 812 |
| | (a)(1)(B) | 813 |
| | (a)(2) | Not Applicable |
| | (b) | 808 |
| §317 | (a)(1) | 803 |
| | (a)(2) | 804 |
| | (b) | 603 |
| §318 | (a) | 107 |

INDENTURE, dated as of November 1, 2004, between **TXU CORP.**, a corporation duly organized and existing under the laws of the State of Texas (herein called the "Company"), having its principal office at Energy Plaza, 1601 Bryan Street, Dallas, Texas 75201, and **THE BANK OF NEW YORK**, a New York banking corporation, having its principal corporate trust office at 101 Barclay Street, New York, New York 10286, as Trustee (herein called the "Trustee").

## RECITAL OF THE COMPANY

The Company has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its unsecured debentures, notes or other evidences of indebtedness (herein called the "Securities"), in an unlimited aggregate principal amount to be issued in one or more series as contemplated herein; and all acts necessary to make this Indenture a valid agreement of the Company have been performed.

For all purposes of this Indenture, except as otherwise expressly provided herein or unless the context otherwise requires, capitalized terms used herein shall have the meanings assigned to them in Article One of this Indenture.

NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Securities or of any series thereof, as follows:

## ARTICLE ONE

### Definitions and Other Provisions of General Application

**SECTION 101. Definitions.**

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(b) all terms used herein without definition which are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(c) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles in the United States, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such accounting principles as are generally accepted in the United States at the date of such computation or, at the election of the Company from time to time, at the date of the execution and delivery of this Indenture; provided, however, that in determining generally accepted accounting principles applicable to the Company, the Company shall, to

the extent required, conform to any order, rule or regulation of any administrative agency, regulatory authority or other governmental body having jurisdiction over the Company;

(d) any reference to an "Article" or a "Section" refers to an Article or a Section, as the case may be, of this Indenture; and

(e) the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or other subdivision.

Certain terms, used principally in Article Nine, are defined in that Article.

"**Act**", when used with respect to any Holder of a Security, has the meaning specified in Section 104.

"**Affiliate**" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "**control**" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or through one or more intermediaries, whether through the ownership of voting securities, by contract or otherwise; and the terms "**controlling**" and "**controlled**" have meanings correlative to the foregoing.

"**Authenticating Agent**" means any Person (other than the Company or an Affiliate of the Company) authorized by the Trustee pursuant to Section 915 to act on behalf of the Trustee to authenticate one or more series of Securities or Tranche thereof.

"**Authorized Officer**" means the Chairman of the Board, the Vice Chairman, the President, any Vice President, the Treasurer, any Assistant Treasurer, or any other officer or agent of the Company duly authorized by the Board of Directors to act in respect of matters relating to this Indenture.

"**Board of Directors**" means either the board of directors of the Company or any committee thereof duly authorized to act in respect of matters relating to this Indenture.

"**Board Resolution**" means a copy of a resolution certified by the Secretary or an Assistant Secretary of the Company to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

"**Business Day**", when used with respect to a Place of Payment or any other particular location specified in the Securities or this Indenture, means any day, other than a Saturday or Sunday, which is not a day on which banking institutions or trust companies in such Place of Payment or other location are generally authorized or required by law, regulation or executive order to remain closed, except as may be otherwise specified as contemplated by Section 301.

"**Commission**" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, as amended, or, if at any

time after the date of execution and delivery of this Indenture such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body, if any, performing such duties at such time.

"**Company**" means the Person named as the "Company" in the first paragraph of this Indenture until a successor Person shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Company" shall mean such successor Person.

"**Company Request**" or "**Company Order**" means a written request or order signed in the name of the Company by an Authorized Officer and delivered to the Trustee.

"**Corporate Trust Office**" means the office of the Trustee at which at any particular time its corporate trust business shall be principally administered, which office at the date of execution and delivery of this Indenture is located at 101 Barclay Street, Floor 8 W, New York, New York 10286.

"**corporation**" means a corporation, association, company, limited liability company, partnership, joint stock company, business or statutory trust or other business entity, and references to "corporate" and other derivations of "corporation" herein shall be deemed to include appropriate derivations of such entities.

"**Defaulted Interest**" has the meaning specified in Section 307.

"**Discount Security**" means any Security which provides for an amount less than the principal amount thereof to be due and payable upon a declaration of acceleration of the Maturity thereof pursuant to Section 802. "Interest" with respect to a Discount Security means interest, if any, borne by such Security at a Stated Interest Rate.

"**Dollar**" or "**$**" means a dollar or other equivalent unit in such coin or currency of the United States as at the time shall be legal tender for the payment of public and private debts.

"**Eligible Obligations**" means:

(a) with respect to Securities denominated in Dollars, Government Obligations; or

(b) with respect to Securities denominated in a currency other than Dollars or in a composite currency, such other obligations or instruments as shall be specified with respect to such Securities, as contemplated by Section 301.

"**Event of Default**" has the meaning specified in Section 801.

"**Governmental Authority**" means the government of the United States or of any State or territory thereof or of the District of Columbia or of any county, municipality or other political subdivision of any of the foregoing, or any department, agency, authority or other instrumentality of any of the foregoing.

"**Government Obligations**" means:

-4-

(a) direct obligations of, or obligations the principal of and interest on which are unconditionally guaranteed by, the United States and entitled to the benefit of the full faith and credit thereof; and

(b) certificates, depositary receipts or other instruments which evidence a direct ownership interest in obligations described in clause (a) above or in any specific interest or principal payments due in respect thereof; provided, however, that the custodian of such obligations or specific interest or principal payments shall be a bank or trust company (which may include the Trustee or any Paying Agent) subject to Federal or state supervision or examination with a combined capital and surplus of at least $50,000,000; and provided, further, that except as may be otherwise required by law, such custodian shall be obligated to pay to the holders of such certificates, depositary receipts or other instruments the full amount received by such custodian in respect of such obligations or specific payments and shall not be permitted to make any deduction therefrom.

"**Holder**" means a Person in whose name a Security is registered in the Security Register.

"**Indenture**" means this instrument as originally executed and delivered and as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof, including, for all purposes of this instrument and any such supplemental indenture, the provisions of the Trust Indenture Act that are deemed to be a part of and govern this Indenture and any such supplemental indenture, respectively. The term "Indenture" shall also include the provisions or terms of particular series of Securities established as contemplated by Section 301.

"**Interest Payment Date**", when used with respect to any Security, means the Stated Maturity of an installment of interest on such Security.

"**Maturity**", when used with respect to any Security, means the date on which the principal of such Security or an installment of principal becomes due and payable as provided in such Security or in this Indenture, whether at the Stated Maturity, by declaration of acceleration, upon call for redemption or otherwise.

"**Officer's Certificate**" means a certificate signed by an Authorized Officer and delivered to the Trustee.

"**Opinion of Counsel**" means a written opinion of counsel, who may be counsel for the Company, or other counsel reasonably acceptable to the Trustee.

"**Outstanding**", when used with respect to Securities, means, as of the date of determination, all Securities theretofore authenticated and delivered under this Indenture, except:

(a) Securities theretofore canceled or delivered to the Security Registrar for cancellation;

(b) Securities deemed to have been paid in accordance with Section 701; and

(c) Securities which have been paid pursuant to Section 306 or in exchange for or in lieu of which other Securities have been authenticated and delivered pursuant to this Indenture, other than any such Securities in respect of which there shall have been presented to the Trustee proof satisfactory to it and the Company that such Securities are held by a bona fide purchaser or purchasers in whose hands such Securities are valid obligations of the Company;

provided, however, that in determining whether or not the Holders of the requisite principal amount of the Securities Outstanding under this Indenture, or the Outstanding Securities of any series or Tranche, have given any request, demand, authorization, direction, notice, consent or waiver hereunder or whether or not a quorum is present at a meeting of Holders of Securities,

(x)  Securities owned by the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor (unless the Company, such Affiliate or such obligor owns all Securities Outstanding under this Indenture, or (except for the purposes of actions to be taken by Holders of (i) more than one series voting as a class under Section 812 or (ii) more than one series or more than one Tranche, as the case may be, voting as a class under Section 1202) all Outstanding Securities of each such series and each such Tranche, as the case may be, determined without regard to this clause (x)) shall be disregarded and deemed not to be Outstanding, except that, in determining whether the Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver or upon any such determination as to the presence of a quorum, only Securities which a Responsible Officer of the Trustee actually knows to be so owned shall be so disregarded; provided, however, that Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Trustee the pledgee's right so to act with respect to such Securities and that the pledgee is not the Company or any other obligor upon the Securities or any Affiliate of the Company or of such other obligor; and

(y)  the principal amount of a Discount Security that shall be deemed to be Outstanding for such purposes shall be the amount of the principal thereof that would be due and payable as of the date of such determination upon a declaration of acceleration of the Maturity thereof pursuant to Section 802;

provided, further, that, in the case of any Security the principal of which is payable from time to time without presentment or surrender, the principal amount of such Security that shall be deemed to be Outstanding at any time for all purposes of this Indenture shall be the original principal amount thereof less the aggregate amount of principal thereof theretofore paid.

"**Paying Agent**" means any Person, including the Company, authorized by the Company to pay the principal of, and premium, if any, or interest, if any, on any Securities on behalf of the Company.

"**Periodic Offering**" means an offering of Securities of a series from time to time any or all of the specific terms of which Securities, including without limitation the rate or rates

-6-

of interest, if any, thereon, the Stated Maturity or Maturities thereof and the redemption provisions, if any, with respect thereto, are to be determined by the Company or its agents from time to time subsequent to the initial request for the authentication and delivery of such Securities by the Trustee, as contemplated in Section 301 and clause (b) of Section 303.

"**Person**" means any individual, corporation, joint venture, trust or unincorporated organization or any Governmental Authority.

"**Place of Payment**", when used with respect to the Securities of any series, or any Tranche thereof, means the place or places, specified as contemplated by Section 301, at which, subject to Section 602, principal of and premium, if any, and interest, if any, on the Securities of such series or Tranche are payable.

"**Predecessor Security**" of any particular Security means every previous Security evidencing all or a portion of the same debt as that evidenced by such particular Security; and, for the purposes of this definition, any Security authenticated and delivered under Section 306 in exchange for or in lieu of a mutilated, destroyed, lost or stolen Security shall be deemed (to the extent lawful) to evidence the same debt as the mutilated, destroyed, lost or stolen Security.

"**Redemption Date**", when used with respect to any Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

"**Redemption Price**", when used with respect to any Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture, exclusive of accrued and unpaid interest.

"**Regular Record Date**" for the interest payable on any Interest Payment Date on the Securities of any series means the date specified for that purpose as contemplated by Section 301.

"**Required Currency**" has the meaning specified in Section 311.

"**Responsible Officer**", when used with respect to the Trustee, means any Vice President, Assistant Vice President, Trust Officer or other officer of the Trustee who, in the case of each of the foregoing, is assigned by the Trustee to its corporate trust department responsible for the administration of this Indenture that is located in the Corporate Trust Office.

"**Securities**" has the meaning stated in the first recital of this Indenture and more particularly means any securities authenticated and delivered under this Indenture.

"**Security Register**" and "**Security Registrar**" have the respective meanings specified in Section 305.

"**Special Record Date**" for the payment of any Defaulted Interest on the Securities of any series means a date fixed by the Trustee pursuant to Section 307.

"**Stated Interest Rate**" means a rate (whether fixed or variable) at which an obligation by its terms is stated to bear simple interest. Any calculation or other determination to

be made under this Indenture by reference to the Stated Interest Rate on a Security shall be made without regard to the effective interest cost to the Company of such Security and without regard to the Stated Interest Rate on, or the effective cost to the Company of, any other indebtedness in respect of which the Company's obligations are evidenced or secured in whole or in part by such Security.

"**Stated Maturity**", when used with respect to any obligation or any installment of principal thereof or interest thereon, means the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension).

"**Subsidiary**" means a corporation more than 50% of the outstanding voting stock of which is owned, directly or indirectly, by the Company or by one or more other Subsidiaries, or by the Company and one or more other Subsidiaries. For the purposes of this definition, "voting stock" means stock (or other interests) of a corporation having voting power for the election of directors, managers or trustees thereof, whether at all times or only so long as no senior class of stock (or other interests) has such voting power by reason of any contingency.

"**Tranche**" means a group of Securities which (a) are of the same series and (b) have identical terms except as to principal amount and/or date of issuance.

"**Trust Indenture Act**" means, as of any time, the Trust Indenture Act of 1939, or any successor statute, as in effect at such time.

"**Trustee**" means the Person named as the "Trustee" in the first paragraph of this Indenture until a successor Trustee shall have become such with respect to one or more series of Securities pursuant to the applicable provisions of this Indenture, and thereafter "Trustee" shall mean or include each Person who is then a Trustee hereunder, and if at any time there is more than one such Person, "Trustee" as used with respect to the Securities of any series shall mean the Trustee with respect to Securities of that series.

"**United States**" means the United States of America, its territories, its possessions and other areas subject to its political jurisdiction.

**SECTION 102. Compliance Certificates and Opinions.**

Except as otherwise expressly provided in this Indenture, upon any application or request by the Company to the Trustee to take any action under any provision of this Indenture, the Company shall, if requested by the Trustee, furnish to the Trustee an Officer's Certificate stating that in the opinion of the Authorized Officer executing such Officer's Certificate all conditions precedent, if any, provided for in this Indenture relating to the proposed action (including any covenants compliance with which constitutes a condition precedent) have been complied with and an Opinion of Counsel stating that in the opinion of such counsel all such conditions precedent, if any, have been complied with, except that in the case of any such application or request as to which the furnishing of such documents is specifically required by any provision of this Indenture relating to such particular application or request, no additional certificate or opinion need be furnished.

Every certificate or opinion with respect to compliance with a condition or covenant provided for in this Indenture shall include:

(a) a statement that each Person signing such certificate or opinion has read such covenant or condition and the definitions herein relating thereto;

(b) a brief statement as to the nature and scope of the examination or investigation upon which the statements or opinions contained in such certificate or opinion are based;

(c) a statement that, in the opinion of each such Person, such Person has made such examination or investigation as is necessary to enable such Person to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d) a statement as to whether, in the opinion of each such Person, such condition or covenant has been complied with.

**SECTION 103. Form of Documents Delivered to Trustee.**

In any case where several matters are required to be certified by, or covered by an opinion of, any specified Person, it is not necessary that all such matters be certified by, or covered by the opinion of, only one such Person, or that they be so certified or covered by only one document, but one such Person may certify or give an opinion with respect to some matters and one or more other such Persons as to other matters, and any such Person may certify or give an opinion as to such matters in one or several documents.

Any certificate or opinion of an officer of the Company may be based, insofar as it relates to legal matters, upon a certificate or opinion of, or representations by, counsel, unless such officer knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to the matters upon which such officer's certificate or opinion are based are erroneous. Any such certificate or Opinion of Counsel may be based, insofar as it relates to factual matters, upon a certificate or opinion of, or representations by, an officer or officers of the Company stating that the information with respect to such factual matters is in the possession of the Company, unless such counsel knows, or in the exercise of reasonable care should know, that the certificate or opinion or representations with respect to such matters are erroneous.

Where any Person is required to make, give or execute two or more applications, requests, consents, certificates, statements, opinions or other instruments under this Indenture, they may, but need not, be consolidated and form one instrument.

Whenever, subsequent to the receipt by the Trustee of any Board Resolution, Officer's Certificate, Opinion of Counsel or other document or instrument, a clerical, typographical or other inadvertent or unintentional error or omission shall be discovered therein, a new document or instrument may be substituted therefor in corrected form with the same force and effect as if originally filed in the corrected form and, irrespective of the date or dates of the actual execution and/or delivery thereof, such substitute document or instrument shall be deemed to have been executed and/or delivered as of the date or dates required with respect to the document or instrument for which it is substituted. Anything in this Indenture to the contrary

notwithstanding, if any such corrective document or instrument indicates that action has been taken by or at the request of the Company which could not have been taken had the original document or instrument not contained such error or omission, the action so taken shall not be invalidated or otherwise rendered ineffective but shall be and remain in full force and effect, except to the extent that such action was a result of willful misconduct or bad faith. Without limiting the generality of the foregoing, any Securities issued under the authority of such defective document or instrument shall nevertheless be the valid obligations of the Company entitled to the benefits of this Indenture equally and ratably with all other Outstanding Securities, except as aforesaid.

### SECTION 104. Acts of Holders.

(a) Any request, demand, authorization, direction, notice, consent, election, waiver or other action provided by this Indenture to be made, given or taken by Holders may be embodied in and evidenced by one or more instruments of substantially similar tenor signed by such Holders in person or by an agent duly appointed in writing or, alternatively, may be embodied in and evidenced by the record of Holders voting in favor thereof, either in person or by proxies duly appointed in writing, at any meeting of Holders duly called and held in accordance with the provisions of Article Thirteen, or a combination of such instruments and any such record. Except as herein otherwise expressly provided, such action shall become effective when such instrument or instruments or record or both are delivered to the Trustee and, where it is hereby expressly required, to the Company. Such instrument or instruments and any such record (and the action embodied therein and evidenced thereby) are herein sometimes referred to as the "Act" of the Holders signing such instrument or instruments and so voting at any such meeting. Proof of execution of any such instrument or of a writing appointing any such agent, or of the holding by any Person of a Security, shall be sufficient for any purpose of this Indenture and (subject to Section 901) conclusive in favor of the Trustee and the Company, if made in the manner provided in this Section. The record of any meeting of Holders shall be proved in the manner provided in Section 1306.

(b) The fact and date of the execution by any Person of any such instrument or writing may be proved by the affidavit of a witness of such execution or by a certificate of a notary public or other officer authorized by law to take acknowledgments of deeds, certifying that the individual signing such instrument or writing acknowledged to him the execution thereof or may be proved in any other manner which the Trustee and the Company deem sufficient. Where such execution is by a signer acting in a capacity other than his individual capacity, such certificate or affidavit shall also constitute sufficient proof of his authority.

(c) The ownership, principal amount (except as otherwise contemplated in clause (y) of the first proviso to the definition of Outstanding) and serial numbers of Securities held by any Person, and the date of holding the same, shall be proved by the Security Register.

(d) Any request, demand, authorization, direction, notice, consent, election, waiver or other Act of a Holder shall bind every future Holder of the same Security and the Holder of every Security issued upon the registration of transfer thereof or in exchange therefor or in

-10-

lieu thereof in respect of anything done, omitted or suffered to be done by the Trustee or the Company in reliance thereon, whether or not notation of such action is made upon such Security.

(e) Until such time as written instruments shall have been delivered to the Trustee with respect to the requisite percentage of principal amount of Securities for the action contemplated by such instruments, any such instrument executed and delivered by or on behalf of a Holder may be revoked with respect to any or all of such Securities by written notice by such Holder or any subsequent Holder, proven in the manner in which such instrument was proven.

(f) Securities of any series, or any Tranche thereof, authenticated and delivered after any Act of Holders may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any action taken by such Act of Holders. If the Company shall so determine, new Securities of any series, or any Tranche thereof, so modified as to conform, in the opinion of the Trustee and the Company, to such action may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series or Tranche.

(g) If the Company shall solicit from Holders any request, demand, authorization, direction, notice, consent, waiver or other Act, the Company may, at its option, fix in advance a record date for the determination of Holders entitled to give such request, demand, authorization, direction, notice, consent, waiver or other Act, but the Company shall have no obligation to do so. If such a record date is fixed, such request, demand, authorization, direction, notice, consent, waiver or other Act may be given before or after such record date, but only the Holders of record at the close of business on the record date shall be deemed to be Holders for the purposes of determining whether Holders of the requisite proportion of the Outstanding Securities have authorized or agreed or consented to such request, demand, authorization, direction, notice, consent, waiver or other Act, and for that purpose the Outstanding Securities shall be computed as of the record date.

**SECTION 105. Notices, etc. to Trustee and Company.**

Any request, demand, authorization, direction, notice, consent, election, waiver or Act of Holders or other document provided or permitted by this Indenture to be made upon, given or furnished to, or filed with, the Trustee by any Holder or by the Company, or the Company by the Trustee or by any Holder, shall be sufficient for every purpose hereunder (unless otherwise herein expressly provided) if in writing and delivered personally to an officer or other responsible employee of the addressee at the applicable location set forth below or at such other location as such party may from time to time designate by written notice, or transmitted by facsimile transmission or other direct written electronic means to such telephone number or other electronic communications address as the parties hereto shall from time to time designate by written notice, or transmitted by certified or registered mail, charges prepaid, to the applicable address set forth below or to such other address as either party hereto may from time to time designate by written notice:

If to the Trustee, to:

-11-

The Bank of New York
Corporate Trust Division, Corporate Finance Unit
101 Barclay Street, Floor 8W
New York, New York 10286

Attention:      Remo J. Reale
Telephone:     (212) 815-2492
Telecopy:      (212) 815-5707

If to the Company, to:

TXU Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201

Attention:      Treasurer
Telephone:     (214) 812-5565
Telecopy:      (214) 812-8998

Any communication contemplated herein shall be deemed to have been made, given, furnished and filed if personally delivered, on the date of delivery, if transmitted by facsimile transmission or other direct written electronic means, on the date of receipt, and if transmitted by certified or registered mail, on the date of receipt.

**SECTION 106.  Notice to Holders of Securities; Waiver.**

Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of any event, such notice shall be sufficiently given, and shall be deemed given, to Holders if in writing and mailed, first-class postage prepaid, to each Holder affected by such event, at the address of such Holder as it appears in the Security Register, not later than the latest date, if any, and not earlier than the earliest date, if any, prescribed for the giving of such notice.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice to Holders by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.  In any case where notice to Holders is given by mail, neither the failure to mail such notice, nor any defect in any notice so mailed, to any particular Holder shall affect the sufficiency of such notice with respect to other Holders.

Any notice required by this Indenture may be waived in writing by the Person entitled to receive such notice, either before or after the event otherwise to be specified therein, and such waiver shall be the equivalent of such notice.  Waivers of notice by Holders shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

-12-

**SECTION 107. Conflict with Trust Indenture Act.**

In the event this Indenture becomes subject to the Trust Indenture Act, (a) if any provision of this Indenture limits, qualifies or conflicts with another provision hereof which is required or deemed to be included in this Indenture by, or is otherwise governed by, any of the provisions of the Trust Indenture Act, such other provision shall control; and (b) if any provision hereof otherwise conflicts with the Trust Indenture Act, the Trust Indenture Act shall control unless otherwise provided as contemplated by Section 301 with respect to any series of Securities.

**SECTION 108. Effect of Headings and Table of Contents.**

The Article and Section headings in this Indenture and the Table of Contents are for convenience only and shall not affect the construction hereof.

**SECTION 109. Successors and Assigns.**

All covenants and agreements in this Indenture by the Company and Trustee shall bind their respective successors and assigns, whether so expressed or not.

**SECTION 110. Separability Clause.**

In case any provision in this Indenture or the Securities shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**SECTION 111. Benefits of Indenture.**

Nothing in this Indenture or the Securities, express or implied, shall give to any Person, other than the parties hereto, their successors hereunder and the Holders, any benefit or any legal or equitable right, remedy or claim under this Indenture.

**SECTION 112. Governing Law.**

**This Indenture and the Securities shall be governed by and construed in accordance with the law of the State of New York (including, without limitation, Section 5-1401 of the New York General Obligations Law or any successor to such statute), except to the extent that the Trust Indenture Act shall be applicable.**

**SECTION 113. Legal Holidays.**

In any case where any Interest Payment Date, Redemption Date or Stated Maturity of any Security shall not be a Business Day at any Place of Payment, then (notwithstanding any other provision of this Indenture or of the Securities other than a provision in Securities of any series, or any Tranche thereof, or in the indenture supplemental hereto, Board Resolution or Officer's Certificate which establishes the terms of the Securities of such series or Tranche, which specifically states that such provision shall apply in lieu of this Section) payment of interest or principal and premium, if any, need not be made at such Place of Payment

on such date, but may be made on the next succeeding Business Day at such Place of Payment, with the same force and effect, and in the same amount, as if made on the Interest Payment Date or Redemption Date, or at the Stated Maturity, as the case may be, and, if such payment is made or duly provided for on such Business Day, no interest shall accrue on the amount so payable for the period from and after such Interest Payment Date, Redemption Date or Stated Maturity, as the case may be, to such Business Day.

## ARTICLE TWO

### Security Forms

**SECTION 201.  Forms Generally.**

The definitive Securities of each series shall be in substantially the form or forms thereof established in the indenture supplemental hereto establishing such series or in a Board Resolution establishing such series, or in an Officer's Certificate pursuant to such supplemental indenture or Board Resolution, in each case with such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks of identification and such legends or endorsements placed thereon as may be required to comply with the rules of any securities exchange or as may, consistently herewith, be determined by the officers executing such Securities, as evidenced by their execution thereof.  If the form or forms of Securities of any series are established in a Board Resolution or in an Officer's Certificate pursuant to a supplemental indenture or a Board Resolution, such Board Resolution and Officer's Certificate, if any, shall be delivered to the Trustee at or prior to the delivery of the Company Order contemplated by Section 303 for the authentication and delivery of such Securities.

Unless otherwise specified as contemplated by Section 301 or clause (g) of Section 1201, the Securities of each series shall be issuable in registered form without coupons. The definitive Securities shall be produced in such manner as shall be determined by the officers executing such Securities, as evidenced by their execution thereof.

**SECTION 202.  Form of Trustee's Certificate of Authentication.**

The Trustee's certificate of authentication shall be in substantially the form set forth below:

This is one of the Securities of the series designated therein referred to in the within-mentioned Indenture.

Dated:

_____
as Trustee


By:_____
        Authorized Signatory

## ARTICLE THREE

### The Securities

**SECTION 301.  Amount Unlimited; Issuable in Series.**

The aggregate principal amount of Securities which may be authenticated and delivered under this Indenture is unlimited.

The Securities may be issued in one or more series.  Subject to the last paragraph of this Section, prior to the authentication and delivery of Securities of any series there shall be established by specification in a supplemental indenture or in a Board Resolution, or in an Officer's Certificate pursuant to a supplemental indenture or a Board Resolution:

(a) the title of the Securities of such series (which shall distinguish the Securities of such series from Securities of all other series);

(b) any limit upon the aggregate principal amount of the Securities of such series which may be authenticated and delivered under this Indenture  (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such series pursuant to Section 304, 305, 306, 406 or 1206 and except for any Securities which, pursuant to Section 303, are deemed never to have been authenticated and delivered hereunder);

(c) the Person or Persons (without specific identification) to whom interest on Securities of such series, or any Tranche thereof, shall be payable on any Interest Payment Date, if other than the Persons in whose names such Securities (or one or more Predecessor Securities) are registered at the close of business on the Regular Record Date for such interest;

(d) the date or dates on which the principal of the Securities of such series, or any Tranche thereof, is payable or any formulary or other method or other means by which such date or dates shall be determined, by reference to an index or other fact or event ascertainable outside of this Indenture or otherwise (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension);

(e) the rate or rates at which the Securities of such series, or any Tranche thereof, shall bear interest, if any (including the rate or rates at which overdue principal shall bear interest, if different from the rate or rates at which such Securities shall bear interest prior to Maturity, and, if applicable, the rate or rates at which overdue premium or interest shall bear interest, if any), or any formulary or other method or other means by which such rate or rates shall be determined, by reference to an index or other fact or event ascertainable outside of this Indenture or otherwise; the date or dates from which such interest shall accrue; the Interest Payment Dates on which such interest shall be payable and the Regular Record Date, if any, for the interest payable on such Securities on any Interest Payment Date; the right of the Company, if any, to extend the interest payment periods and the duration of any such extension as contemplated by Section 312; and the basis of computation of interest, if other than as provided in Section 310;

(f) the place or places at which or methods by which (1) the principal of and premium, if any, and interest, if any, on Securities of such series, or any Tranche thereof, shall be payable, (2) registration of transfer of Securities of such series, or any Tranche thereof, may be effected, (3) exchanges of Securities of such series, or any Tranche thereof, may be effected and (4) notices and demands to or upon the Company in respect of the Securities of such series, or any Tranche thereof, and this Indenture may be served; the Security Registrar and any Paying Agent or Agents for such series or Tranche; and if such is the case, that the principal of such Securities shall be payable without presentment or surrender thereof;

(g) the period or periods within which, or the date or dates on which, the price or prices at which and the terms and conditions upon which the Securities of such series, or any Tranche thereof, may be redeemed, in whole or in part, at the option of the Company and any restrictions on such redemptions, including but not limited to a restriction on a partial redemption by the Company of the Securities of any series, or any Tranche thereof, resulting in delisting of such Securities from any national exchange;

(h) the obligation or obligations, if any, of the Company to redeem or purchase the Securities of such series, or any Tranche thereof, pursuant to any sinking fund or other mandatory redemption provisions or at the option of a Holder thereof and the period or periods within which or the date or dates on which, the price or prices at which and the terms and conditions upon which such Securities shall be redeemed or purchased, in whole or in part, pursuant to such obligation, and applicable exceptions to the requirements of Section 404 in the case of mandatory redemption or redemption at the option of the Holder;

(i) the denominations in which Securities of such series, or any Tranche thereof, shall be issuable if other than denominations of $1,000 and any integral multiple thereof;

(j) the currency or currencies, including composite currencies, in which payment of the principal of and premium, if any, and interest, if any, on the Securities of such series, or any Tranche thereof, shall be payable (if other than in Dollars);

(k) if the principal of or premium, if any, or interest, if any, on the Securities of such series, or any Tranche thereof, are to be payable, at the election of the Company or a Holder thereof, in a coin or currency other than that in which the Securities are stated to be payable, the period or periods within which and the terms and conditions upon which, such election may be made;

(l) if the principal of or premium, if any, or interest, if any, on the Securities of such series, or any Tranche thereof, are to be payable, or are to be payable at the election of the Company or a Holder thereof, in securities or other property, the type and amount of such securities or other property, or the formulary or other method or other means by which such amount shall be determined, and the period or periods within which, and the terms and conditions upon which, any such election may be made;

-16-

(m) if the amount payable in respect of principal of or premium, if any, or interest, if any, on the Securities of such series, or any Tranche thereof, may be determined with reference to an index or other fact or event ascertainable outside of this Indenture, the manner in which such amounts shall be determined to the extent not established pursuant to clause (e) of this paragraph;

(n) if other than the principal amount thereof, the portion of the principal amount of Securities of such series, or any Tranche thereof, which shall be payable upon declaration of acceleration of the Maturity thereof pursuant to Section 802;

(o) any Events of Default, in addition to those specified in Section 801, with respect to the Securities of such series, and any covenants of the Company for the benefit of the Holders of the Securities of such series, or any Tranche thereof, in addition to those set forth in Article Six;

(p) the terms, if any, pursuant to which the Securities of such series, or any Tranche thereof, may be converted into or exchanged for shares of capital stock or other securities of the Company or any other Person;

(q) the obligations or instruments, if any, which shall be considered to be Eligible Obligations in respect of the Securities of such series, or any Tranche thereof, denominated in a currency other than Dollars or in a composite currency, and any additional or alternative provisions for the reinstatement of the Company's indebtedness in respect of such Securities after the satisfaction and discharge thereof as provided in Section 701;

(r) if the Securities of such series, or any Tranche thereof, are to be issued in global form, (i) any limitations on the rights of the Holder or Holders of such Securities to transfer or exchange the same or to obtain the registration of transfer thereof, (ii) any limitations on the rights of the Holder or Holders thereof to obtain certificates therefor in definitive form in lieu of temporary form and (iii) any and all other matters incidental to such Securities;

(s) if the Securities of such series, or any Tranche thereof, are to be issuable as bearer securities, any and all matters incidental thereto which are not specifically addressed in a supplemental indenture as contemplated by clause (g) of Section 1201;

(t) to the extent not established pursuant to clause (r) of this paragraph, any limitations on the rights of the Holders of the Securities of such Series, or any Tranche thereof, to transfer or exchange such Securities or to obtain the registration of transfer thereof; and if a service charge will be made for the registration of transfer or exchange of Securities of such series, or any Tranche thereof, the amount or terms thereof;

(u) any exceptions to Section 113, or variation in the definition of Business Day, with respect to the Securities of such series, or any Tranche thereof;

(v) any collateral security, assurance or guarantee for the Securities of such series;

-17-

(w) any non-applicability of Section 608 to the Securities of such series or any exceptions or modifications of Section 608 with respect to the Securities of such series;

(x) any rights or duties of another Person to assume the obligations of the Company with respect to the Securities of such series (whether as joint obligor, primary obligor, secondary obligor or substitute obligor) and any rights or duties to discharge and release any obligor with respect to the Securities of such series or the Indenture to the extent related to such series; and

(y) any other terms of the Securities of such series, or any Tranche thereof, not inconsistent with the provisions of this Indenture.

With respect to Securities of a series subject to a Periodic Offering, the indenture supplemental hereto or the Board Resolution which establishes such series, or the Officer's Certificate pursuant to such supplemental indenture or Board Resolution, as the case may be, may provide general terms or parameters for Securities of such series and provide either that the specific terms of Securities of such series, or any Tranche thereof, shall be specified in a Company Order or that such terms shall be determined by the Company or its agents in accordance with procedures specified in a Company Order as contemplated by clause (b) of Section 303.

Unless otherwise provided with respect to a series of Securities as contemplated in Section 301(b), the aggregate principal amount of a series of Securities may be increased and additional Securities of such series may be issued up to the maximum aggregate principal amount authorized with respect to such series as increased.

**SECTION 302. Denominations.**

Unless otherwise provided as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, the Securities of each series shall be issuable in denominations of $1,000 and any integral multiple thereof.

**SECTION 303. Execution, Authentication, Delivery and Dating.**

Unless otherwise provided as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, the Securities shall be executed on behalf of the Company by an Authorized Officer and may have the corporate seal of the Company affixed thereto or reproduced thereon attested by any other Authorized Officer or by the Secretary or an Assistant Secretary of the Company. The signature of any or all of these officers on the Securities may be manual or facsimile.

Securities bearing the manual or facsimile signatures of individuals who were at the time of execution Authorized Officers or the Secretary or an Assistant Secretary of the Company shall bind the Company, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Securities or did not hold such offices at the date of such Securities.

-18-

The Trustee shall authenticate and deliver Securities of a series, for original issue, at one time or from time to time in accordance with the Company Order referred to below, upon receipt by the Trustee of:

(a) the instrument or instruments establishing the form or forms and terms of such series, as provided in Sections 201 and 301;

(b) a Company Order requesting the authentication and delivery of such Securities and, to the extent that the terms of such Securities shall not have been established in an indenture supplemental hereto or in a Board Resolution, or in an Officer's Certificate pursuant to a supplemental indenture or Board Resolution, all as contemplated by Sections 201 and 301, either (i) establishing such terms or (ii) in the case of Securities of a series subject to a Periodic Offering, specifying procedures, acceptable to the Trustee, by which such terms are to be established (which procedures may provide, to the extent acceptable to the Trustee, for authentication and delivery pursuant to oral or electronic instructions from the Company or any agent or agents thereof, which oral instructions are to be promptly confirmed electronically or in writing), in either case in accordance with the instrument or instruments delivered pursuant to clause (a) above;

(c) the Securities of such series, executed on behalf of the Company by an Authorized Officer;

(d) an Opinion of Counsel to the effect that:

     (i) the form or forms of such Securities have been duly authorized by the Company and have been established in conformity with the provisions of this Indenture;

     (ii) the terms of such Securities have been duly authorized by the Company and have been established in conformity with the provisions of this Indenture; and

     (iii) when such Securities shall have been authenticated and delivered by the Trustee and issued and delivered by the Company in the manner and subject to any conditions specified in such Opinion of Counsel, such Securities will have been duly issued under this Indenture and will constitute valid and legally binding obligations of the Company, entitled to the benefits provided by this Indenture, and enforceable in accordance with their terms, subject, as to enforcement, to laws relating to or affecting generally the enforcement of mortgagees' and other creditors' rights, including, without limitation, bankruptcy, insolvency, reorganization, receivership, moratorium and other laws affecting the rights and remedies of creditors and mortgagees' generally and general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law);

provided, however, that, with respect to Securities of a series subject to a Periodic Offering, the Trustee shall be entitled to receive such Opinion of Counsel only once at or prior to the time of the first authentication of such Securities (provided that such Opinion of Counsel addresses the authentication and delivery of all Securities of such series) and that in lieu of the opinions described in clauses (ii) and (iii) above Counsel may opine that:

(x) when the terms of such Securities shall have been established pursuant to a Company Order or Orders or pursuant to such procedures (acceptable to the Trustee) as may be specified from time to time by a Company Order or Orders, all as contemplated by and in accordance with the instrument or instruments delivered pursuant to clause (a) above, such terms will have been duly authorized by the Company and will have been established in conformity with the provisions of this Indenture; and

(y) such Securities, when (1) executed by the Company, (2) authenticated and delivered by the Trustee in accordance with this Indenture, (3) issued and delivered by the Company and (4) paid for, all as contemplated by and in accordance with the aforesaid Company Order or Orders, as the case may be, will have been duly issued under this Indenture and will constitute valid and legally binding obligations of the Company, entitled to the benefits provided by the Indenture, and enforceable in accordance with their terms, subject, as to enforcement, to laws relating to or affecting generally the enforcement of mortgagees' and other creditors' rights, including, without limitation, bankruptcy, insolvency, reorganization, receivership, moratorium and other laws affecting the rights and remedies of creditors and mortgagees generally and general principles of equity (regardless of whether such enforceability is considered in a proceeding in equity or at law).

With respect to Securities of a series subject to a Periodic Offering, the Trustee may conclusively rely, as to the authorization by the Company of any of such Securities, the form and terms thereof and the legality, validity, binding effect and enforceability thereof, and compliance of the authentication and delivery thereof with the terms and conditions of this Indenture, upon the Opinion of Counsel and other documents delivered pursuant to Sections 201 and 301 and this Section, as applicable, at or prior to the time of the first authentication of Securities of such series unless and until such opinion or other documents have been superseded or revoked or expire by their terms. In connection with the authentication and delivery of Securities of a series subject to a Periodic Offering, the Trustee shall be entitled to assume that the Company's instructions to authenticate and deliver such Securities do not violate any applicable law or any applicable rule, regulation or order of any Governmental Authority having jurisdiction over the Company.

If the form or terms of the Securities of any series have been established by or pursuant to a Board Resolution or an Officer's Certificate as permitted by Sections 201 or 301, the Trustee shall not be required to authenticate such Securities if the issuance of such Securities pursuant to this Indenture will materially or adversely affect the Trustee's own rights, duties or immunities under the Securities and this Indenture or otherwise in a manner which is not reasonably acceptable to the Trustee.

Unless otherwise specified as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, each Security shall be dated the date of its authentication.

Unless otherwise specified as contemplated by Section 301 with respect to any series of Securities, or any Tranche thereof, no Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Security a certificate of authentication substantially in the form provided for herein executed by the Trustee or an Authenticating Agent by manual signature, and such certificate upon any Security shall be conclusive evidence, and the only evidence, that such Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture.    Notwithstanding the foregoing, if any Security shall have been authenticated and delivered hereunder to the Company, or any Person acting on its behalf, but shall never have been issued and sold by the Company, and the Company shall deliver such Security to the Security Registrar for cancellation as provided in Section 309 together with a written statement (which need not comply with Section 102 and need not be accompanied by an Opinion of Counsel) stating that such Security has never been issued and sold by the Company, for all purposes of this Indenture such Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits hereof.

## SECTION 304.  Temporary Securities.

Pending the preparation of definitive Securities of any series, or any Tranche thereof, the Company may execute, and upon Company Order the Trustee shall authenticate and deliver, temporary Securities which are printed, lithographed, typewritten, mimeographed or otherwise produced, in any authorized denomination, substantially of the tenor of the definitive Securities in lieu of which they are issued, with such appropriate insertions, omissions, substitutions and other variations as any officer executing such Securities may determine, as evidenced by such officer's execution of such Securities; provided, however, that temporary Securities need not recite specific redemption, sinking fund, conversion or exchange provisions.

Unless otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, after the preparation of definitive Securities of such series or Tranche, the temporary Securities of such series or Tranche shall be exchangeable, without charge to the Holder thereof, for definitive Securities of such series or Tranche upon surrender of such temporary Securities at the office or agency of the Company maintained pursuant to Section 602 in a Place of Payment for such Securities.  Upon such surrender of temporary Securities for such exchange, the Company shall, except as aforesaid, execute and the Trustee shall authenticate and deliver in exchange therefor definitive Securities of the same series and Tranche of authorized denominations and of like tenor and aggregate principal amount.

Until exchanged in full as hereinabove provided, temporary Securities shall in all respects be entitled to the same benefits under this Indenture as definitive Securities of the same series and Tranche and of like tenor authenticated and delivered hereunder.

**SECTION 305.  Registration, Registration of Transfer and Exchange.**

The Company shall cause to be kept in each office designated pursuant to Section 602, with respect to the Securities of each series, a register (all registers kept in accordance with this Section being collectively referred to as the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Company shall provide for the registration of Securities of such series, or any Tranche thereof, and the registration of transfer thereof.  The Company shall designate one Person to maintain the Security Register for the Securities of each series on a consolidated basis, and such Person is referred to herein, with respect to such series, as the "Security Registrar."    Anything herein to the contrary notwithstanding, the Company may designate one or more of its offices as an office in which a register with respect to the Securities of one or more series shall be maintained, and the Company may designate itself the Security Registrar with respect to one or more of such series. The Security Register shall be open for inspection by the Trustee and the Company at all reasonable times.

Except as otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, upon surrender for registration of transfer of any Security of such series or Tranche at the office or agency of the Company maintained pursuant to Section 602 in a Place of Payment for such series or Tranche, the Company shall execute, and the Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Securities of the same series and Tranche, of authorized denominations and of like tenor and aggregate principal amount.

Except as otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, any Security of such series or Tranche may be exchanged at the option of the Holder, for one or more new Securities of the same series and Tranche, of authorized denominations and of like tenor and aggregate principal amount, upon surrender of the Securities to be exchanged at any such office or agency.  Whenever any Securities are so surrendered for exchange, the Company shall execute, and the Trustee shall authenticate and deliver, the Securities which the Holder making the exchange is entitled to receive.

All Securities delivered upon any registration of transfer or exchange of Securities shall be valid obligations of the Company, evidencing the same debt, and entitled to the same benefits under this Indenture, as the Securities surrendered upon such registration of transfer or exchange.

Every Security presented or surrendered for registration of transfer or for exchange shall (if so required by the Company, the Trustee or the Security Registrar) be duly endorsed or shall be accompanied by a written instrument of transfer in form satisfactory to the Company, the Trustee or the Security Registrar, as the case may be, duly executed by the Holder thereof or his attorney duly authorized in writing.

Unless otherwise specified as contemplated by Section 301 with respect to Securities of any series, or any Tranche thereof, no service charge shall be made for any registration of transfer or exchange of Securities, but the Company may require payment of a

sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Securities, other than exchanges pursuant to Section 304, 406 or 1206 not involving any transfer.

The Company shall not be required to execute or to provide for the registration of transfer of or the exchange of (a) Securities of any series, or any Tranche thereof, during a period of 15 days immediately preceding the date notice is to be given identifying the serial numbers of the Securities of such series or Tranche called for redemption or (b) any Security so selected for redemption in whole or in part, except the unredeemed portion of any Security being redeemed in part.

**SECTION 306.  Mutilated, Destroyed, Lost and Stolen Securities.**

If any mutilated Security is surrendered to the Trustee, the Company shall execute and the Trustee shall authenticate and deliver in exchange therefor a new Security of the same series and Tranche, and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Company and the Trustee (a) evidence to their satisfaction of the ownership of and the destruction, loss or theft of any Security and (b) such security or indemnity as may be reasonably required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Company or the Trustee that such Security is held by a Person purporting to be the owner of such Security, the Company shall execute and the Trustee shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Security, a new Security of the same series and Tranche, and of like tenor and principal amount and bearing a number not contemporaneously outstanding.

Notwithstanding the foregoing, in case any such mutilated, destroyed, lost or stolen Security has become or is about to become due and payable, the Company in its discretion may, instead of issuing a new Security, pay such Security.

Upon the issuance of any new Security under this Section, the Company may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other reasonable expenses (including the fees and expenses of the Trustee) connected therewith.

Every new Security of any series issued pursuant to this Section in lieu of any destroyed, lost or stolen Security shall constitute an original additional contractual obligation of the Company, whether or not the destroyed, lost or stolen Security shall be at any time enforceable by anyone other than the Holder of such new Security, and any such new Security shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Securities of such series duly issued hereunder.

The provisions of this Section are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Securities.

**SECTION 307.  Payment of Interest; Interest Rights Preserved.**

Unless otherwise specified as contemplated by Section 301 with respect to the Securities of any series, or any Tranche thereof, interest on any Security which is payable, and is punctually paid or duly provided for, on any Interest Payment Date shall be paid to the Person in whose name that Security (or one or more Predecessor Securities) is registered at the close of business on the Regular Record Date for such interest.

Subject to Section 312, any interest on any Security of any series which is payable, but is not punctually paid or duly provided for, on any Interest Payment Date (herein called "Defaulted Interest") shall forthwith cease to be payable to the Holder on the related Regular Record Date by virtue of having been such Holder, and such Defaulted Interest may be paid by the Company, at its election in each case, as provided in clause (a) or (b) below:

(a) The Company may elect to make payment of any Defaulted Interest to the Persons in whose names the Securities of such series (or their respective Predecessor Securities) are registered at the close of business on a date (herein called a "Special Record Date") for the payment of such Defaulted Interest, which shall be fixed in the following manner.  The Company shall notify the Trustee in writing of the amount of Defaulted Interest proposed to be paid on each Security of such series and the date of the proposed payment, and at the same time the Company shall deposit with the Trustee an amount of money equal to the aggregate amount proposed to be paid in respect of such Defaulted Interest or shall make arrangements satisfactory to the Trustee for such deposit on or prior to the date of the proposed payment, such money when deposited to be held in trust for the benefit of the Persons entitled to such Defaulted Interest as in this clause provided.  Thereupon the Trustee shall fix a Special Record Date for the payment of such Defaulted Interest which shall be not more than 15 days and not less than 10 days prior to the date of the proposed payment and not less than 10 days after the receipt by the Trustee of the notice of the proposed payment.  The Trustee shall promptly notify the Company of such Special Record Date and, in the name and at the expense of the Company, shall promptly cause notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor to be mailed, first-class postage prepaid, to each Holder of Securities of such series at the address of such Holder as it appears in the Security Register, not less than 10 days prior to such Special Record Date.  Notice of the proposed payment of such Defaulted Interest and the Special Record Date therefor having been so mailed, such Defaulted Interest shall be paid to the Persons in whose names the Securities of such series (or their respective Predecessor Securities) are registered at the close of business on such Special Record Date.

(b) The Company may make payment of any Defaulted Interest on the Securities of any series in any other lawful manner not inconsistent with the requirements of any securities exchange on which such Securities may be listed, and upon such notice as may be required by such exchange, if, after notice given by the Company to the Trustee of the proposed payment pursuant to this clause, such manner of payment shall be deemed practicable by the Trustee.