**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Hearing Date: October 28, 2015 at 3:00 p.m. |
| | ) Objection Deadline: October 21, 2015 at 4:00 p.m. |

**MOTION FOR ENTRY OF AN ORDER AUTHORIZING ENERGY
FUTURE HOLDINGS CORP., *ET AL.*, TO FILE REDACTED PORTIONS
OF MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY
OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE TCEH DEBTORS
(A) TO PARTICIPATE IN A COMPETITIVE BIDDING PROCESS, AND
(B) IF SELECTED AS THE WINNING BIDDER, TO CONSUMMATE A
PROPOSED ACQUISITION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Sealing Motion")[2] for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing the TCEH Debtors (as defined herein) to file under seal those redacted portions of: (i) the *Motion of Energy Future Holdings Corp., et. al., for Entry of an Order Authorizing, But Not Requiring, the Debtors (A) to Participate in a Competitive Bidding Process, and (B) If Selected as the Winning Bidder, to Consummate a Proposed Acquisition* (the "Bid Procedures Motion"); and (ii) the *Declaration of Michael Carter in Support of the Motion of Energy Future Holdings Corp., et. al., for Entry of an Order Authorizing, But Not Requiring, the Debtors (A) to Participate in a Competitive Bidding Process,*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Bid Procedures Motion (as defined herein), filed contemporaneously herewith.

RLF1 13131988v.1

*and (B) If Selected as the Winning Bidder, to Consummate a Proposed Acquisition* (the "Carter Declaration"), all filed contemporaneously herewith, and (b) directing that those redacted portions of the Bid Procedures Motion and the Carter Declaration shall remain under seal and confidential and not be made available to anyone without the consent of the Debtors, except to (i) the Court, (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") on a confidential basis, and (iii) on a confidential, "professionals' eyes only" basis, the advisors to the TCEH Creditors' Committee (defined herein) and the ad hoc group of TCEH first lien creditors (the "Ad Hoc Group of TCEH First Lien Creditors"). In support of this Sealing Motion, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Sealing Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Sealing Motion are sections 105(a) and 107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 6004 and 9018 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 9018-1.

### Relief Requested

4. By this Sealing Motion, the Debtors seek entry of the Order (a) authorizing the Debtors to file under seal those certain redacted portions of the Bid Procedures Motion; and (b) directing that those redacted portions of the Bid Procedures Motion shall remain under seal and confidential and not be made available to anyone without the consent of the Debtors except to (i) the Court, (ii) the U.S. Trustee on a confidential basis, and (iii) on a confidential, "professionals' eyes only" basis, the advisors to the TCEH Creditors' Committee and the Ad Hoc Group of TCEH First Lien Creditors.

### Background

1. On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. On June 6, 2015, the Court entered an order approving the use of cash collateral by Energy Future Competitive Holdings Company LLC ("EFCH"), its direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and the direct and indirect Debtor subsidiaries of EFCH and TCEH [D.I. 855] (the "TCEH Cash Collateral Order") and an order approving postpetition financing by EFCH, TCEH, and the direct and indirect subsidiaries of EFCH and TCEH (the "TCEH DIP Order").

2. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of EFCH, TCEH, the direct and

3

indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] and the *Disclosure Statement For the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6124], approved by the Court on September 22, 2015 [D.I. 6131].

3. To remain a leader in the increasingly competitive electricity business, the TCEH Debtors proactively position themselves for new, strategic market opportunities that complement their existing lines of business.  The Seller is currently conducting a bidding process to sell all of the equity interests in one of its subsidiaries that indirectly, through SaleCo's subsidiaries, owns certain generation facilities.  The TCEH Debtors believe that the Assets will provide strategic enhancements to the TCEH Debtors' existing generation business, thereby providing significant value to the TCEH Debtors' estates.

4. The Seller is conducting the Sale Process in two phases.  During the first phase, interested parties were asked to submit a preliminary, non-binding indication of interest based on review of an informational memorandum and a financial model.  During the second phase, selected bidders have received or will receive access to a comprehensive data room, management presentation, and site visits before such bidders must submit final binding proposals, including a marked version of a stock purchase agreement.  The TCEH Debtors believe that the deadline to submit such final binding proposals likely will be in early November.

5. The TCEH Debtors timely submitted a first phase, non-binding, indication of interest on September 22, 2015. The TCEH Debtors have been selected to participate in the second phase of the Sale Process.

**Basis For Relief**

6. Congress, through the Bankruptcy Code and Bankruptcy Rules, was careful to balance the public's right to access the papers and proceedings generated by a bankruptcy case with a debtor's and its associates' critical need to ensure particular types of business information remained confidential.

7. Section 107(b) of the Bankruptcy Code enables the Court to protect entities from potential harm that might result from the disclosure of certain confidential information. 11 U.S.C. § 107(b). Specifically, section 107(b) provides, in relevant part, that:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information.

*Id.* Courts often provide this protection by using their inherent equitable powers, codified in Section 105(a) of the Bankruptcy Code, to authorize the filing of documents under seal. Section 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

8. Additionally, Bankruptcy Rule 9018 sets forth the procedures by which a party may obtain a protective order authorizing the filing of a document under seal. Bankruptcy Rule 9018 provides, in relevant part, that "[o]n motion, or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial

5

information . . . ." Fed. R. Bankr. P. 9018.  Further, Local Bankruptcy Rule 9018-1(b) provides, in relevant part, that "[a]ny party who seeks to file documents under seal must file a motion to that effect." Del. Bankr. L.R. 9018-1(b).

9. If the material sought to be protected satisfies one of the categories identified in section 107(b), "the court is *required* to protect a requesting party and has no discretion to deny the application." *Video Software Dealers Assocs. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis in original).  Moreover, the resulting order should be broad (*i.e.*, "any order which justice requires"). *In re Global Crossing, Ltd.*, 295 B.R. 720, 724 (Bankr. S.D.N.Y. 2003); Fed. R. Bankr. P. 9018.  "Courts have supervisory powers over their records and files and may deny access to those records and files to prevent them from being used for an improper purpose." *In re Kaiser Aluminum Corp.*, 327 B.R. 554, 560 (D. Del. 2005).  Courts are required to provide such protections "generally where open inspection may be used as a vehicle for improper purposes." *Orion Pictures*, 21 F.3d at 27.  Indeed, the "authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice." *Global Crossing*, 295 B.R. at 724.

10. Courts have also found that such relief should be granted if the information sought to be protected is "commercial information," which is defined as "information which would result in 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *In re Alterra Healthcare Corp.*, 353 B.R 66, 75 (Bankr. D. Del. 2006); *see Global Crossing*, 295 B.R. at 725 (finding that the purpose of Bankruptcy Rule 9018 is to "protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury").  Commercial information does not have to rise to the level of a trade secret to be protected under section 107(b) of the Bankruptcy Code. *See*

*Orion Pictures*, 21 F.3d at 27-28 (finding that section 107(b)(1) creates an exception to the general rule that court records are open to examination by the public and, under this exception, an interested party has to show only that the information it wishes to seal is "confidential" and "commercial" in nature). Unlike its counterpart in Rule 26(c) of the Federal Rules of Civil Procedure, section 107(b) of the Bankruptcy Code does not require an entity seeking such protection to demonstrate "good cause." *See*, *e.g.*, *Orion Pictures*, 21 F.3d at 25 (holding that a license agreement authorizing a licensee "to reproduce, manufacture, distribute, and sell videocassettes" of three films contained confidential commercial information).

11. Here, the Debtors seek to preserve the confidentiality of three narrow categories of information. The Debtors believe that maintaining the confidentiality of these specific and narrowly tailored disclosures is necessary to ensuring the TCEH Debtors are a competitive bidder, preserving the value of the Debtors' estates (by preventing the TCEH Debtors from having to disclose their maximum bid (as described in the Motion, the "Bid Cap")), and permitting the Seller to run a clean Sale Process.

12. *First*, the Debtors seek to seal the identity of the Seller. The Seller is not conducting a public sale process and only certain, financially credit-worthy purchasers were invited to participate. If there is any risk of the Seller's name becoming disclosed as part of the TCEH Debtors' efforts to obtain the relief necessary to submit a bid in the Sale Process, the Seller may eliminate the TCEH Debtors as a potential bidder. Indeed, the very purpose of the Motion is to ensure that, as far as possible, the TCEH Debtors remain on competitive footing with other potential bidders. Any risk created by virtue of the TCEH Debtors' position as chapter 11 debtors will directly, and, potentially, significantly, reduce the TCEH Debtors' ability to bid competitively.

13. *Second*, the Debtors seek to seal information regarding the Assets. The Texas electricity market is both extraordinarily competitive and small. The major players in the generation business are well known to each other and, in many instances, have been competitors for years. Identification of the Assets is tantamount to identifying the Seller. The TCEH Debtors have disclosed a significant amount of information regarding the general nature of the Assets (*i.e.,* the fact that the Assets will fill a gap in the TCEH Debtors' current generation activities and complement the TCEH Debtors' retail electricity operations). The sealed information describes the location of the Assets and their MW capacity—information that if publicly disclosed, would render the private Sale Process public. As described in the previous paragraph, the TCEH Debtors seek to prevent the public disclosure of the Seller's identity to preserve their role as a competitive bidder and to preserve the value of the Assets.

14. *Third*, the Debtors seek to seal pricing information, specifically, the Initial Bid Amount (which includes the Cash Bid and the Credit Support Obligations), the size of the Secured Loan Terms, and the Bid Cap. Disclosure of the Credit Support Obligations and the Secured Loan Terms creates a significant risk of disclosing the Seller's identity. Additionally, disclosure of the Initial Bid Amount essentially, and inappropriately, puts the TCEH Debtors' in the position of being an involuntary stalking horse. Other bidders, and the Seller, will use the Initial Bid Amount as a starting point for competing bids. The Seller may receive an inadvertent windfall from such disclosure while the TCEH Debtors would receive none of the traditional benefits associated with being a stalking horse (*e.g.,* break-up fees). Similarly, disclosure of the Bid Cap will put the Seller on notice of the TCEH Debtors' upper bid limit and, to be a competitive bidder, the TCEH Debtors will be forced to bid at the Bid Cap. Ultimately, this puts the TCEH Debtors in a position where they will have to bid at a higher amount than they may

have otherwise been required to bid. In addition, the asymmetric information sharing created by public disclosure of one bidder's upper bid limit will prevent the Seller from running a clean sale process. At bottom, it is in the best interests of the TCEH Debtors, the Seller, and the Sale Process to seal the TCEH Debtors' pricing information.

15. The TCEH Debtors must balance the needs of disclosure against the desire to remain a competitive force and prevent diminution of the very Assets the TCEH Debtors seek to purchase from public disclosure of the Seller's identity. By selectively redacting only that information the public disclosure of which is likely to detract from the TCEH Debtors' ability to act as a competitive bidder or capture the full value of the Assets, and by providing all redacted information to those parties with a vested interest in the submission of a bid by the TCEH Debtors, the Debtors believe they have struck the appropriate balance.

16. Indeed, the Seller required all potential bidders to sign a confidentiality agreement. Recognizing that as chapter 11 debtors, the TCEH Debtors would need to at least consult with, if not obtain the consent of, other parties with a vested interest in the TCEH Debtors' bid efforts, the TCEH Debtors asked the Seller if such parties (specifically, the TCEH Creditors' Committee and the Ad Hoc Committee of TCEH First Lien Creditors) could be "brought under the tent." Ultimately, such parties signed, or are in the process of signing, confidentiality agreements. In short, the execution of such documents, like the proposed sealing of the narrow categories of information described above, was designed to ensure that the negotiation process between the Sellers and the TCEH Debtors would be on par with the negotiations between the Seller and other potential bidders.

17. Courts in this district have consistently authorized the filing of confidential documents under seal in other chapter 11 cases. *See*, *e.g.*, *In re Green Field Energy Services,*

*Inc.*, No. 13-12783 (KG) (Bankr. D. Del. Jan. 17, 2014) (authorizing the filing under seal in its entirety a motion to approve a settlement agreement); *In re Metavation, LLC*, No. 13-11831 (BLS) (Bankr. D. Del. Aug. 7, 2013) (authorizing the filing under seal in its entirety a motion for approval of a sale agreement); *In re ASDI Incorporated*, No. 10-12139 (CSS) (Bankr. D. Del. Apr. 4, 2012) (authorizing the filing under seal in its entirety an opposition brief in adversary proceedings); *In re Rotech Healthcare Inc.*, No. 13-10741 (PJW) (Bankr. D. Del. Jul. 29, 2013) (authorizing the filing under seal of exit financing fee letters); *In re Capmark Fin. Grp. Inc. (f/k/a GMAC Commercial Holding Corp.)*, No. 09-13684 (CSS) (Bankr. D. Del. Jul. 5, 2011) (authorizing the filing under seal of a term sheet to a commercial contract); *Capmark*, No. 09-13684 (CSS) (Bankr. D. Del. Apr. 5, 2011) (authorizing the filing under seal of schedules to a sale contract); *In re Tribune Co.*, No. 08-13141 (KJC), (Bankr. D. Del. Dec. 10, 2008) (authorizing the filing under seal of fee letters containing confidential information); *In re Mervyn's Holdings, LLC*, No. 08-11586 (Bankr. D. Del. Oct. 30, 2008) (authorizing the filing under seal of an objection supplement); *In re Boscov's, Inc.,* No. 08-11637 (KG) (Bankr. D. Del. Sep. 26, 2008) (authorizing the filing under seal in its entirety of debtor's motion and granting an *in camera* hearing); *In re WCI Communities, Inc.*, No. 08-11643 (KJC) (Bankr. D. Del. Sept. 23, 2008) (authorizing the filing under seal of a fee letter executed in connection with a proposed DIP credit facility).[3]

18.     The Debtors therefore submit that good cause exists to authorize the Debtors to file those redacted portions of the Bid Procedures Motion under seal because of the harm that would ensue if the sensitive and confidential commercial information contained in the Bid Procedures Motion became public information.

---

[3] Because of the voluminous nature of the orders cited herein, such orders are not attached to this Sealing Motion. Copies of these orders are available upon request of the Debtors' counsel.

**Notice**

19. The Debtors shall provide notice of this Sealing Motion on the date hereof via U.S. first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and

(ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the TCEH Second Lien Indenture Trustee; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the Seller and counsel thereto.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Prior Request

20.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Sealing Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  October 7, 2015  
       Wilmington, Delaware

*/s/ Jason M. Madron*  
**RICHARDS, LAYTON & FINGER, P.A.**  
Mark D. Collins (No. 2981)  
Daniel J. DeFranceschi (No. 2732)  
Jason M. Madron (No. 4431)  
920 North King Street  
Wilmington, Delaware 19801  
Telephone: (302) 651-7700  
Facsimile: (302) 651-7701  
Email: collins@rlf.com  
      defranceschi@rlf.com  
      madron@rlf.com  

-and-

**KIRKLAND & ELLIS LLP**  
**KIRKLAND & ELLIS INTERNATIONAL LLP**  
Edward O. Sassower, P.C. (admitted *pro hac vice*)  
Stephen E. Hessler (admitted *pro hac vice*)  
Brian E. Schartz (admitted *pro hac vice*)  
601 Lexington Avenue  
New York, New York 10022-4611  
Telephone: (212) 446-4800  
Facsimile: (212) 446-4900  
Email: edward.sassower@kirkland.com  
      stephen.hessler@kirkland.com  
      brian.schartz@kirkland.com  

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)  
Marc Kieselstein, P.C. (admitted *pro hac vice*)  
Chad J. Husnick (admitted *pro hac vice*)  
Steven N. Serajeddini (admitted *pro hac vice*)  
300 North LaSalle  
Chicago, Illinois 60654  
Telephone: (312) 862-2000  
Facsimile: (312) 862-2200  
Email: james.sprayregen@kirkland.com  
      marc.kieselstein@kirkland.com  
      chad.husnick@kirkland.com  
      steven.serajeddini@kirkland.com  

Co-Counsel to the Debtors and Debtors in Possession