**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | Hearing Date: October 28, 2015 at 3:00 p.m. |
| | | Objection Deadline: October 21, 2015 at 4:00 p.m. |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT REQUIRING, THE TCEH DEBTORS (A) TO PARTICIPATE IN A COMPETITIVE BIDDING PROCESS, AND (B) IF SELECTED AS THE WINNING BIDDER, TO CONSUMMATE A PROPOSED ACQUISITION**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), authorizing, but not requiring, the TCEH Debtors (defined herein) to (a) participate in a competitive bidding process for the acquisition of certain strategic business assets, pursuant to the Bidding and Acquisition Procedures (defined herein); and (b) if selected as the winning bidder, execute definitive agreements, obtain any necessary regulatory authorizations or consents, and consummate the proposed acquisition without further order of the Court. In support of this Motion, the Debtors submit the *Declaration of Michael Carter in Support of the Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Authorizing, But Not Requiring, the Debtors (A) to Participate in a Competitive Bidding Process, and (B) If Selected as the Winning Bidder, to Consummate a Proposed Acquisition*, filed

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

contemporaneously herewith.[2] In further support of this Motion, the Debtors respectfully state as follows.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the United States Bankruptcy Court for the District of Delaware in connection with this Motion (the "Court") to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Motion are sections 105 and 363 of the Bankruptcy Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4. By this Motion, the Debtors seek entry of the Order authorizing, but not requiring, the TCEH Debtors to (a) participate in a competitive bidding process for the acquisition of certain strategic business assets, pursuant to the Bidding and Acquisition Procedures; and (b) if

[2] Contemporaneously herewith, the Debtors also filed the *Motion for Entry of an Order Authorizing Energy Future Holdings Corp.*, et al., *to File Redacted Portions of Motion of Energy Future Holdings Corp.*, et al., *for Entry of an Order Authorizing, But Not Requiring, the TCEH Debtors (A) To Participate in a Competitive Bidding Process, and (B) If Selected as the Winning Bidder, to Consummate a Proposed Acquisition*, seeking to seal certain commercially sensitive information disclosed in the Motion.

selected as the winning bidder, execute definitive agreements, obtain any necessary regulatory authorizations or consents, and consummate the proposed acquisition without further order of the Court.

**Background**

5. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. On June 6, 2014, the Court entered a final order approving the use of cash collateral by Energy Future Competitive Holdings Company LLC ("EFCH"), its direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and the direct and indirect Debtor subsidiaries of EFCH and TCEH (together with EFCH and TCEH, the "TCEH Debtors") [D.I. 855] (the "TCEH Cash Collateral Order") and a final order approving postpetition financing by the TCEH Debtors [D.I. 856] (the "TCEH DIP Order").

6. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of the TCEH Debtors and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] and the *Disclosure Statement For the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to*

*Chapter 11 of the Bankruptcy Code* [D.I. 6124], approved by the Court on September 22, 2015 [D.I. 6131] (the "Disclosure Statement").

**I. The TCEH Debtors' Generation Business.**

7. The Debtors have been a longstanding leader in the electricity industry and in the Electric Reliability Council of Texas ("ERCOT"). The TCEH Debtors, through Debtor Luminant Holding Company LLC and its subsidiaries (collectively, "Luminant"), are leaders in the Texas power generation market. Luminant owns and operates 13 power plants comprising 36 electricity generation units (of which 32 units are active, year-round operations). Luminant's total electricity generation is approximately 13,772 megawatts ("MW"), which accounts for approximately 15% of the generation capacity in the ERCOT market. Luminant operates one 2,300 MW nuclear generation facility and approximately 8,017 MW of lignite/coal units at five plant sites.

8. In addition, Luminant's natural gas-fueled generation operations consist of 22 units at seven plant sites with 3,455 MW of nameplate capacity. Luminant's natural gas-fueled units are primarily used when electricity demand is highest (*i.e.*, they are considered "peaking" units because they are generally used during peak demand periods) or to support system reliability at times of low "reserve margins" (*i.e.*, times when the system's overall generation capacity needs to be increased to maintain a certain target "cushion" over expected demand for electricity). Luminant also manages approximately 11.5 billion cubic feet of natural gas storage capacity, primarily to assist in fueling its natural gas-fueled units, and engages in various activities related to natural gas including direct purchases, transportation agreements, storage leases, and commercial retail sales.

9. As described in the First Day Declaration and the Disclosure Statement, the shale boom in the United States has ushered in an era of low-priced natural gas and low wholesale

power prices. Additionally, with Henry Hub gas prices below $4/MMBtu, the operational coal-to-gas fuel switch is becoming prevalent across ERCOT and other U.S. power markets, driven by plant operating economics and changing environmental policy. [redacted] Consequently, as appropriate opportunities to acquire [redacted] assets arise, Luminant (and the TCEH Debtors) regularly reviews these opportunities.

## II. The Proposed Transaction.

10. [redacted] (the "Seller")[4] [redacted] The Seller is currently conducting a bidding process (the "Sale Process") to sell all of the equity interests in one of its subsidiaries (such subsidiary, "SaleCo") that indirectly, through SaleCo's subsidiaries (collectively, the "HoldCos") owns [redacted] generation facilities [redacted] (such transaction, the "Transaction" and such facilities, the "Assets"). [redacted]

3 [redacted]

4 The Seller is not owned, controlled by, or affiliated with, any of the Debtors.

[redacted]

11. The Seller is conducting the Sale Process in two phases. During the first phase, interested parties were asked to submit a preliminary, non-binding indication of interest based on review of an informational memorandum and a financial model. During the second phase, selected bidders have received or will receive access to a comprehensive data room, management presentation, and site visits before such bidders must submit final binding proposals, including a marked version of a stock purchase agreement. The TCEH Debtors believe that the deadline to submit such final binding proposals likely will be in early November (the "Bid Deadline").

12. The TCEH Debtors timely submitted a first phase, non-binding, indication of interest on September 22, 2015. The TCEH Debtors have been selected to participate in the second phase of the Sale Process.

**III. The Acquisition.**

13. To remain a leader in the increasingly competitive electricity business, the TCEH Debtors proactively position themselves for new, strategic market opportunities that complement their existing lines of business. The TCEH Debtors believe that the Assets will provide strategic enhancements to the TCEH Debtors' existing generation business [redacted], thereby providing significant value to the TCEH Debtors' estates.

14. To realize the value offered by the Assets, the Debtors seek authority to submit a final binding bid for the Assets, pursuant to the Bidding and Acquisition Procedures (as defined

herein), and, if selected as the winning bidder, execute definitive agreements, obtain the necessary regulatory approvals and consents for the Transaction, and consummate the Transaction without further order of the Court. The Debtors believe that the proposed Bidding and Acquisition Procedures appropriately balance the interests of the Debtors and their various stakeholders. Specifically, the Bidding and Acquisition Procedures require the Debtors to obtain the approval of certain Notice Parties (as defined herein) whose interests are most directly implicated if the TCEH Debtors' consummate the Transaction, while providing the TCEH Debtors with the requisite flexibility necessary to be competitive in the Sale Process.

15. The TCEH Debtors' proposed bid will include three components: (a) a cash bid, to purchase all of the equity interests in SaleCo (the "Cash Bid"); (b) [REDACTED] (the "Secured Loan Terms"); and (c) TCEH's agreement to provide certain credit support to, and satisfy certain liquidity obligations of, the HoldCos upon consummation of the Transaction, [REDACTED] (the "Credit Support Obligations").[5]

---

[5] It is anticipated that the definitive purchase and sale agreement for the Transaction will include customary purchase price adjustment provisions, such as to take into account the HoldCos' working capital balance at the closing of the Transaction. Because any such purchase price adjustment is not determinable in advance of the closing of the Transaction, the Cash Bid as described herein does not reflect any amount payable by the TCEH Debtors on account of such purchase price adjustment provisions. Pursuant to the Order, authorization to submit a final binding bid and to consummate the Transaction in accordance with this Motion and the Bidding and Acquisition Procedures shall be deemed to include authorization for the TCEH Debtors to pay any amounts payable on account of such purchase price adjustment provisions.

In addition, the principal amount of the Secured Loan outstanding may be reduced prior to the submission of the final, binding bid and the consummation of the Transaction due to payments on the Secured Loan by the HoldCos, in which case the Cash Bid may be increased up to the amount of the offsetting decrease in the outstanding principal amount of the Secured Loan. Pursuant to the Order, authorization to submit a final binding bid and to consummate the Transaction in accordance with this Motion and the Bidding and Acquisition Procedures shall be deemed to include authorization for the TCEH Debtors to pay such additional amount in the Cash Bid.

16. The TCEH Debtors anticipate using cash on hand and the funds available pursuant to the TCEH DIP Order to fund the Cash Bid in the desired amount and to satisfy the Credit Support Obligations. As of June 30, 2015, the TCEH Debtors have over $3 billion available in the form of cash on hand and a revolving credit facility, pursuant to the terms of the TCEH DIP Order.[6] [REDACTED] to fund the Cash Bid in the desired amount, and to satisfy the Credit Support Obligations, the TCEH Debtors may amend the DIP Documents (as defined in the TCEH DIP Order) [REDACTED], or otherwise obtain a waiver from, or consent of, the lenders under the DIP Documents to permit consummation of the Transaction. The TCEH Debtors are in the process of discussing the terms of such an amendment, waiver, or consent provision with counsel to the TCEH Creditors' Committee and counsel to the ad hoc committee of TCEH first lien creditors. In accordance with paragraph 11 of the TCEH DIP Order, if the TCEH Debtors decide to amend the TCEH DIP Agreement or otherwise obtain a waiver from, or consent of, the lenders under the DIP Documents to permit

---

Finally, if the TCEH Debtors are selected as the winning bidder, and if the TCEH Debtors and the Sellers execute binding, definitive documentation in connection with the Transaction, the TCEH Debtors may, pursuant to the Order, include as part of the Transaction, a cash deposit, letter-of-credit, or such other forms of assurance to be negotiated by the TCEH Debtors and the Seller (subject to the terms of the TCEH DIP Order and the TCEH Cash Collateral Order).

Notwithstanding anything herein to the contrary, the TCEH Debtors will not execute any definitive documentation with respect to the Transaction (including any final binding bid or any related purchase and sale agreement) without the prior written consent of the ad hoc committee of TCEH first lien creditors.

[6] *See Energy Future Holdings Corp.*, Form 10-Q for the period ending June 30, 2015 (filed August 3, 2015), from Energy Future Holdings Corp., website, http://phx.corporate-ir net/phoenix.zhtml?c=102498&p=irol-SECText&TEXT=aHR0cDovL2FwaS50ZW5rd2l6YXJkLmNvbS9maWxpbmcueG1sP2lwYWdlPTEwNDA5NjM4JkRTRVE9MCZTRVE9MCZTUURFU0M9U0VDVElPTl9FTlRJUkUmc3Vic2lkPTU3.

consummation of the Transaction, the TCEH Debtors will provide notice, as applicable, to such parties, as well as the U.S. Trustee, contemporaneously with the execution of such amendment.

## IV. The Proposed Bidding and Acquisition Procedures.

17. The TCEH Debtors propose that they be authorized, but not required, to submit a bid in the Sale Process and, if selected as the winning bidder, to consummate the Transaction pursuant to the following procedures (the "Bidding and Acquisition Procedures"):

a. ***Initial Bid Amount***. The TCEH Debtors will be authorized, but not required, to (x) submit a Cash Bid not to exceed [REDACTED] and agree to satisfy the Credit Support Obligations in an amount not to exceed [REDACTED] (collectively, the "Initial Bid Amount") and (y) agree to the Secured Loan Terms, from and after consummation of the Transaction (collectively, the "Bid Terms"). If selected as the winning bidder on the basis of the Bid Terms, including a Cash Bid and Credit Support Obligations that do not, in the aggregate, exceed the Initial Bid Amount, the TCEH Debtors are authorized to execute definitive agreements, obtain any necessary regulatory authorizations or consents for the Transaction, and consummate the Transaction without further order of the Court. The TCEH Debtors will advise the Notice Parties (as defined below) of the material terms of the definitive agreements for the Transaction.[7]

b. ***Bid Cap***. Notwithstanding the foregoing, no less than four business days before the objection deadline on this Motion, the TCEH Debtors may determine, in the exercise of their business judgment and in consultation with their professional advisors, to increase the Initial Bid Amount. If the TCEH Debtors desire to increase the Initial Bid Amount, the TCEH Debtors shall provide notice no less than four business days before the objection deadline on this Motion of their intent to increase the Initial Bid Amount up to a designated amount (such amount, the "Bid Cap").

This notice shall include the Bid Cap and shall be provided to the Court, under seal,[8] and to the following parties, on a confidential and professionals' eyes only basis: (a) counsel to the TCEH Creditors' Committee, Morrison & Foerster LLP, 250 W. 55th Street, New York, NY 10019, Attn: Brett Miller and Todd Goren; and (b) counsel to the ad hoc committee of TCEH first lien creditors, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the

---

[7] *See*, *supra*, footnote 5.

[8] For the avoidance of doubt, the Debtors will file a separate motion with the Court seeking authority to file notice of the Bid Cap under seal.

Americas, New York, NY 10019, Attn: Brian S. Hermann and Jacob A. Adlerstein (collectively, the "Notice Parties").

i. If any of the Notice Parties object to the proposed Bid Cap, such Party must file a timely, written objection with the Court, under seal, and serve notice of such objection upon the TCEH Debtors and their counsel, and the other Notice Parties. If any of the Notice Parties files a timely objection to the proposed Bid Cap, the TCEH Debtors shall not be authorized to submit a bid in excess of the Initial Bid Amount unless and until such objection is withdrawn, resolved to the satisfaction of the objecting Notice Party and the TCEH Debtors, or overruled by the Court. If no objections are received, the TCEH Debtors will be authorized to submit a final, binding bid, reflecting the Bid Terms and, with respect to the Initial Bid Amount, in an amount up to the Bid Cap, and, if selected as the winning bidder, execute definitive agreements, obtain any necessary regulatory authorizations or consents, and consummate the Transaction without further order of the Court and subject to the terms of the Order. The TCEH Debtors will advise the Notice Parties of the material terms of the definitive agreements for the Transaction.[9]

c. ***Enhanced Bid***. The TCEH Debtors may decide, in the exercise of their business judgment and in consultation with their professional advisors, to submit a final, binding bid, reflecting the Bid Terms and, with respect to the Initial Bid Amount, in an amount in excess of the Bid Cap. By these Bidding and Acquisition Procedures, the TCEH Debtors are authorized, but not required to, submit any proposal to increase the Initial Bid Amount in an amount in excess of the Bid Cap and, if selected as the winning bidder, to execute definitive agreements, obtain any necessary regulatory authorizations or consents, and consummate the Transaction without further order of the Court, *provided, however*, that the Notice Parties approve such enhanced bid pursuant to the following procedures (the "Enhanced Bid Approval Procedures"):

i. if the TCEH Debtors determine, in their business judgment, that submission of a final, binding bid reflecting the Bid Terms and, with respect to the Initial Bid Amount, in an amount in excess of the Bid Cap is in the best interests of the TCEH Debtors' estates, they shall submit a written request (a "Request") to the Notice Parties for approval of such increase;

---

[9] *See*, *supra*, footnote 5.

ii. upon receipt of a Request from the TCEH Debtors, the Notice Parties will have two business days to provide a written response (a "Response") to the TCEH Debtors either (A) approving such increase in the Initial Bid Amount in an amount in excess of the Bid Cap, or (B) stating that the Notice Parties do not approve such increase;

iii. if the Notice Parties do not approve such increase or fail to deliver a timely Response, the TCEH Debtors shall not submit a final, binding bid reflecting an Initial Bid Amount in excess of the Bid Cap, unless and until the TCEH Debtors receive written approval from the Notice Parties or upon further order of the Court; and

iv. if the Notice Parties approve such increase, the Bid Cap shall be increased by the amount set forth in the Request and the TCEH Debtors are authorized to submit a final, binding bid reflecting the Bid Terms and, with respect to the Initial Bid Amount, in an amount not to exceed the amount set forth in the Request. If the TCEH Debtors are selected as the winning bidder, the TCEH Debtors are authorized to execute definitive agreements, obtain any necessary regulatory authorizations or consents, and consummate the Transaction with the Seller without further order of the Court, subject to the terms of the Order. The TCEH Debtors will advise the Notice Parties of the material terms of the definitive agreements for the Transaction.[10]

## Basis for Relief

### I. Section 363 of the Bankruptcy Code Authorizes the Debtors to Bid For and, If Successful, Consummate the Transaction Because Doing So Is Within the Debtors' Sound Business Judgment.

18. Section 363 of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a 'business judgment test.'" *In re Montgomery Ward Holding Corp.,* 242

[10] *See*, *supra*, footnote 5.

B.R. 147, 153 (D. Del. 1999). Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Accordingly, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

19. Indeed, when applying the "business judgment" standard, courts show great deference to a debtor's business decisions. *See Integrated Res.*, 147 B.R. at 656 ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence."); *Pitt v. First Wellington Canyon Assocs. (In re First Wellington Canyon Assocs.)*, No. 89-593, 1989 WL 106838, at *3 (N.D. Ill. Sept. 8, 1989) (under the business judgment test, "the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

20. Based on this rationale, courts have routinely permitted debtors to consummate transactions outside the ordinary course of business provided there is "some articulated business justification" to support the debtor's actions. *In re Lionel*, 722 F. 2d 1063, 1070 (2d Cir. 1983); *see also In re Cont'l Airlines*, 780 F. 2d 1223, 1226 (5th Cir. 1986) (affirming authorization of

airline to enter into aircraft leases to take advantage of market opportunity). Once a court is satisfied that a debtor has a sound business reason to justify the transaction in question, the reviewing court should also consider (a) that the debtor has provided the interested parties with adequate and reasonable notice, (b) that the sale price is fair and reasonable, and (c) that the parties are proceeding in good faith. *See, e.g., In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).

21. Courts in this district and others have authorized a debtor's purchase of assets as a sound exercise of business judgment under section 363 of the Bankruptcy Code. *See, e.g., In re Longview Power, LLC*, No. 13-12211 (Bankr. D. Del. Dec. 18, 2013) (authorizing debtors' $4.5 million purchase of equity interests in other companies); *In re AMR Corp.*, No. 11-15463 (Bankr. S.D.N.Y. Aug. 28, 2012) (authorizing the purchase of aircraft for a redacted amount); *In re Allied Holdings, Inc.*, No. 05-12515 (CRM) (Bankr. N.D. Ga. May 8, 2007) (authorizing debtor's $15 million financing and acquisition of approximately 150 tractor and trailer rigs and related equipment); *In re W. R. Grace & Co.*, No. 01-01139 (JKF) (Bankr. D. Del. May 16, 2006) (authorizing Debtors' $20 million acquisition of target business assets, including buildings, production machinery and equipment, formulations, technology, customer lists, intellectual property, and goodwill); *In re Solutia Inc.*, No. 03-17949 (PCB) (Bankr. S.D.N.Y. Dec. 15, 2005) (authorizing debtor's $20 million acquisition of interest in Mexican production entity and related real property from debtor's joint venture partner); *In re Tower Auto., Inc.*, No. 05-10578 (ALG) (Bankr. S.D.N.Y. Oct. 12, 2005) (authorizing debtor's $10 million acquisition of manufacturing facility).[11]

[11] Due to the voluminous nature of the orders cited herein, copies of such orders are not attached to the Motion but are available upon request of the Debtors' counsel.

**A. Sound Business Reason Justifies The Transaction.**

22. The Debtors have articulated a sound business reason to bid for and, if successful, to consummate the Transaction. The TCEH Debtors have been a longstanding leader in the electricity industry and in ERCOT, and, through Luminant, use ERCOT as a platform for their generation activities. Luminant's natural gas-fueled operations are critical to the supply of electricity provided through the ERCOT market. Consequently, Luminant and the TCEH Debtors constantly seek out opportunities to create value across their operations.



24. the TCEH Debtors believe that the Assets will provide significant value to the Debtors' estates in a number of ways. The purchase of the Assets will allow the TCEH Debtors to expand Luminant's generation capacity. Further, no assets of any Debtor other than the TCEH Debtors will be used to satisfy amounts paid in connection with the Bidding and Acquisition Procedures. Therefore, the TCEH Debtors' purchase of the Assets is well within the Debtors' sound business judgment.

**B. The Final Sale Price Will Be Fair and Reasonable, and Will Be Based Upon the Debtors' Business Judgment.**

25. The TCEH Debtors, along with their professional advisors, will assess the value of the strategic business opportunities they will realize by acquiring the Assets in determining the amount of the Cash Bid to submit in the Sale Process. This value will be determined by using commonly accepted valuation methodologies.

**C. The Parties are Proceeding in Good Faith.**

26. The TCEH Debtors and the Seller are proceeding in good faith. The TCEH Debtors have already been selected by the Seller to participate in the second phase of the Sale Process, and are currently engaged in extensive due diligence and negotiations to allow the TCEH Debtors, pursuant to the Bidding and Acquisition Procedures, to determine the appropriate cash purchase price. If selected as the winning bidder, the TCEH Debtors and the Seller will engage in arm's-length negotiations to develop definitive documentation for and consummate the Transaction.

27. Given the benefits and business opportunities the TCEH Debtors may realize as owners of the Assets, submitting a bid and, if successful, consummating the Transaction will maximize the value of the TCEH Debtors' estates for the benefit of all stakeholders in these chapter 11 cases. Accordingly, the Debtors respectfully submit that they have satisfied the requirements of section 363(b) of the Bankruptcy Code and request that the Court authorize the TCEH Debtors to submit a bid in the Sale Process, pursuant to the Bidding and Acquisition Procedures, and, if selected as the winning bidder, to obtain the necessary regulatory authorizations or consents and to consummate the Transaction with the Seller without further order of the Court.

**D. The Bidding and Acquisition Procedures are Necessary and Appropriate in Order to Allow the TCEH Debtors to Submit a Successful Bid.**

28. The Bidding and Acquisition Procedures allow the TCEH Debtors to be a competitive participant in the Sale Process while providing the Notice Parties with meaningful protections concerning the amount of the TCEH Debtors' Initial Bid Amount and, ultimately, the Bid Terms. Implementation of the Bidding and Acquisition Procedures ensures that the TCEH Debtors will be able to enter a final, binding bid in excess of the Initial Bid Amount up to the Bid

Cap only if the Notice Parties do not object. Advance approval of the Initial Bid Amount up to the Bid Cap (and the other Bid Terms), and the ability to submit a binding, enhanced bid, subject to the Enhanced Bidding Procedures, will provide the TCEH Debtors with flexibility to achieve the best price negotiable in the Transaction without being hindered by a requirement to obtain additional authorizations from the Court or the Notice Parties. In addition, without such advance approval, the TCEH Debtors' competitive position in the Sale Process would be compromised because any bid submitted by the TCEH Debtors would be subject to further approvals, and the uncertainty created by such conditionality would likely prejudice the Seller against the TCEH Debtors' bid. Moreover, if the Sale Process and related negotiations lead the TCEH Debtors to determine that an Initial Bid Amount in excess of the Bid Cap may be necessary to be selected as the winning bidder, the Enhanced Bid Approval Procedures permit the TCEH Debtors to quickly determine whether the Notice Parties will support an increase in the amount of the Initial Bid Amount above the Bid Cap. As discussed above, the Assets present a highly valuable complement to the TCEH Debtors' existing businesses that would significantly increase the value of the TCEH Debtors' estates. The TCEH Debtors believe that the Bidding and Acquisition Procedures are necessary if they are to successfully bid for the Assets. As such, the TCEH Debtors respectfully submit that the Bidding and Acquisition Procedures should be approved.

**E. The Automatic Stay Does Not Affect Any Rights of the Seller With Respect to Breaches of Definitive Documents Executed In Connection with the Sale Process**.

29. As described below, the TCEH Debtors believe that the automatic stay under section 362 of the Bankruptcy Code does not affect any rights of the Seller to bring any claims or causes of action with respect to breaches by the TCEH Debtors or their successors of definitive documentation executed by the TCEH Debtors and the Seller regarding the Transaction.

Therefore, the TCEH Debtors request that the Order confirm that the automatic stay does not affect such rights of the Seller and that the TCEH Debtors and the Seller reserve all rights in connection with such breaches.

30. Section 362 of the Bankruptcy Code does not apply to suits against the debtor based wholly on post-petition conduct. *See In re Bellini Imports, Ltd.*, 944 F.2d 1999 (4th Cir. 1991) (stating that, as a general matter, the automatic stay does not apply to postpetition breaches of contract); *In re Matter of M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984) (stating that "proceedings or claims arising post-petition are not subject to the automatic stay"); *In re Qimonda AG*, 482 B.R. 879 (Bankr. E.D. Va. 2012) (stating that automatic stay does not apply to purely postpetition torts or breaches of contract); *In re Gammo, Inc.*, 180 B.R. 485, 490 (Bankr. E.D. Mich. 1995) (stating that actions that could "not have been commenced against the debtor before commencement of the case" are not subject to the automatic stay).

**Waiver of Bankruptcy Rules 6006(c) and 6004(h)**

31. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6006(c) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

32. The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock

Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of

TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) Seller and counsel thereto. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

33. No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated: October 7, 2015

/s/ Jason M. Madron

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: collins@rlf.com
defranceschi@rlf.com
madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted pro hac vice)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*