## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: October 15, 2015 at 10:30 a.m.** |
| | ) | **Re: Docket Nos. 6154 & 6200** |
| | ) | |

**DEBTORS' OMNIBUS OBJECTION TO THE JURISDICTIONAL CHALLENGES TO DEBTORS' MOTION PURSUANT TO SECTIONS 105, 505, AND 506 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER DETERMINING CONTESTED *AD VALOREM* TAX MATTERS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (the "Objection") to (i) the *Motion for Abstention with Regard to Debtors' Motion Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining the Amount of Contested Ad Valorem Tax Matters* [D.I. 5620] filed by Somervell Central Appraisal District ("Somervell CAD") on September 23, 2015 [D.I. 6154] (the "Abstention Motion") and (ii) the *Motion to Transfer Venue and Partial Dismissal, Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining the Amount of Contested Ad Valorem Tax Matters* [D.I. 5620] filed by Freestone Central Appraisal District ("Freestone CAD"), Robertson County Appraisal District ("Robertson CAD"), Rusk County Appraisal District ("Rusk CAD"), and Titus County Appraisal District ("Titus County CAD," and together with Freestone CAD, Robertson CAD, and Rusk CAD, the "Appraisal

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

Districts") on September 25, 2015 [D.I. 6200] (the "Venue Motion").[2]    In support of their Objection, the Debtors respectfully state as follows.

### Preliminary Statement

1.    On August 21, 2015, the Debtors moved pursuant to sections 105, 505, and 506 of the Bankruptcy Code for entry of an order determining the Taxable Values of seven nuclear and coal-fueled power plants for all purposes related to the Debtors' 2015 property tax liabilities (the "Tax Motion").[3]

2.    On September 23, 2015, Somervell CAD responded to the Tax Motion by requesting that the Court take the extraordinary step of declining to exercise the jurisdiction that Congress has conferred upon it under section 505 of the Bankruptcy Code, arguing that permissive abstention is justified based on the application of the twelve-factor test cited in the

---

[2]    On October 7, 2015, Milam Appraisal District ("Milam AD") filed the *(I) Motion for Abstention with Regard to Debtor's Motion Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining the Amount of Contested Ad Valorem Tax Matters, and, In the Alternative, (II) Joinder to the Motion for Abstention Filed by Somervell County* [D.I. 6378] (the "Milam Abstention Motion"). Although the Milam Abstention Motion is noticed for hearing on November 25, 2015 [D.I. 6378-1], the arguments raised by Milam AD generally are substantially similar to the arguments raised in the Abstention Motion. Accordingly, the Debtors object to the Milam Abstention Motion for the same reasons as set forth herein with respect to the Abstention Motion. In addition, this Objection addresses the few new arguments raised in the Milam Abstention Motion.

Also on October 7, 2015, Milam AD filed the *Joinder of Milam Appraisal District to Somervell County Central Appraisal District's Motion for Abstention With Regard to Debtor's Motion Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining the Amount of Contested Ad Valorem Tax Matters* [D.I. 6381] (the "Milam Joinder") and Somervell CAD filed the *Joinder of Somervell County Central Appraisal District, In the Alternative to its Motion for Abstention [D.I. 6154], to Freestone Central Appraisal District, Robertson County Appraisal District, Rusk County Appraisal District, and Titus County Appraisal District's Motion to Transfer Venue and Partial Dismissal, Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining Contested Ad Valorem Tax Matters [D.I. 6200]* [D.I. 6379] (the "Somervell Joinder"). The Debtors object to the Milam Joinder and the Somervell Joinder for the same reasons as set forth herein with respect to the Debtors' objections to the Abstention Motion and the Venue Motion, respectively.

[3]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Tax Motion.

Abstention Motion.[4]  (Abstention Motion ¶14).  The arguments set forth in the Abstention Motion are flawed, misleading, and do not demonstrate the exceptional circumstances that justify abstention.  Instead, the relevant factors weigh heavily against abstention and in favor of this Court exercising its jurisdiction to make the determinations requested in the Tax Motion.

3.       On September 25, 2015, the Appraisal Districts submitted a response to the Tax Motion, requesting (i) that this Court transfer the matters set forth in the Tax Motion to the United States District Court for the Northern District of Texas, Dallas Division because that court is a more convenient forum for all parties and (ii) that the Debtors' claims pursuant to section 506 of the Bankruptcy Code be dismissed for failure to state a claim for which relief may be granted because "the Districts are not creditors, have no allowed claims, and have no interest in any property of the estate."  (Venue Motion ¶ 8).  Like the venue transfer arguments rejected by this Court early in these cases, the Appraisal Districts' arguments do not satisfy their burden of establishing that a transfer of venue is necessary in the interests of justice or for the convenience of the parties—indeed, the Appraisal Districts submitted no evidence of any kind to establish the purported difficulty of litigating in this Court.  Further, their argument in support of partial dismissal is wholly without merit.

4.       The Tax Motion is a "core proceeding" under section 505 of the Bankruptcy Code and thus necessarily bears a substantial relationship to the Debtors' bankruptcy.  Additionally,

---

[4]    Somervell CAD states in the Abstention Motion that it "has no interest and therefore takes no position with respect to the other six properties in the [Tax Motion]."  (Abstention Motion ¶ 1, n.2).  Although the arguments set forth in the Abstention Motion ostensibly are limited to the Debtors' request that this Court determine the Taxable Value of the "Comanche Peak" plant (and related property, including nuclear fuel) located in Somervell County, Texas, it is highly unlikely that the Court will abstain from making the requested determinations with respect to that property while exercising its jurisdiction with respect to the remaining properties.  Moreover, Milam AD has filed both the standalone Milam Abstention Motion and a joinder to Somervell CAD's Abstention Motion.  Accordingly, this objection addresses Somervell CAD's arguments, and considers the factors relevant to the permissive abstention analysis, in each case as they apply to the entirety of the Tax Motion (including all seven properties and six appraisal districts).

the valuation of the plants and related property at issue here is implicated by the basis step-up transaction that is a cornerstone of the Debtors' plan of reorganization. The Debtors' creditors also stand to obtain a significant benefit should the Court exercise its discretion to hear the Tax Motion—the Tax Motion is, at its center, a motion to right-size the Debtors' 2015 property tax liabilities (which would be "full-pay" secured administrative claims in these chapter 11 cases) by approximately $40 million (and potentially more). This is a potentially significant value to the Debtors' creditors in *these* cases.

5.     Moreover, this Court has particular expertise in valuing large business assets and has received evidence of many of the facts relevant to valuing the Debtors' power plants on more than one occasion to date, including the compensation trial testimony of Luminant's Chief Executive Officer Mac McFarland and energy industry expert Todd Filsinger regarding the Debtors' method for forecasting earnings and the operating, maintenance, and capital expenditure costs associated with the plants. The effective administration of these chapter 11 cases will thus be furthered by addressing the core valuation issues regarding the Debtors' significant assets—together—in this forum. On the other hand, it is hard to think of a less efficient and less convenient result than that requested by the Abstention Motion, *i.e.*, requiring the Debtors to litigate seven separate proceedings, including at least three, and possibly up to seven, separate jury trials.[5]

6.     Accordingly, and for the reasons set forth in detail below, the Debtors respectfully assert that the Abstention Motion and Venue Motion should be denied.

---

[5] Under the Texas Rules of Civil Procedure, a request for jury trial can be made up until 30 days before trial; it is therefore possible that all seven state court proceedings could be tried before juries if timely requested by either party. *See* Tex. R. Civ. Proc. 216. To date, requests for jury trials have been made by the applicable appraisal districts in three of the seven pending state court proceedings.

RLF1 13134579v.1

<u>**Additional Background Relevant to the Objection**</u>[6]

7.      The valuation disputes at issue in the Tax Motion pertain to the Debtors' seven nuclear and coal-fueled power plants and certain related property located in six different taxing jurisdictions within Texas.  As set forth in the Tax Motion, the Debtors believe that the Taxable Values of these properties as proposed by the appraisal districts and adopted by the appraisal review boards are excessively overstated and, if left unchallenged, would result in approximately $40 million of excess property tax liabilities (which would be "other secured claims" that will be paid in full in cash or otherwise left unimpaired under the Debtors' proposed plan of reorganization) for the 2015 tax year.  (Tax Motion ¶¶ 9-15).

8.      After filing the Tax Motion with this Court on August 21, 2015, the Debtors timely filed on the same date challenges to all of the Taxable Values in the applicable Texas state district courts, consisting of seven different petitions filed with six different courts.[7]  The Debtors filed the petitions solely to preserve the Debtors' rights under Texas law and to foreclose any possible argument under section 505(a)(2)(C) of the Bankruptcy Code that "the applicable period for contesting or redetermining [their *ad valorem* taxes] under applicable nonbankruptcy law has

---

[6]    The facts set forth herein are directed at the jurisdictional issues that are the subject of the Abstention and Venue Motions. For a discussion of the facts relevant to the substance of the valuation disputes, the Debtors respectfully refer the Court to the Tax Motion.

[7]    As contemplated in the Texas Tax Code, the Debtors filed a separate action with respect to each of their seven properties.  Because two of the properties are located in the same appraisal district but owned by different Debtors, this resulted in the commencement of seven proceedings in six different courts.

expired."[8]  (Tax Motion ¶15, n.8).  To date, requests for jury trials have been made by the

applicable appraisal districts in three of the seven answers filed in the pending state court

proceedings, and two of the appraisal districts have served requests for written discovery.

Responses to these discovery requests have not yet become due and have not been served.[9]

<u>Argument</u>

I.    **This Court Should Exercise its Jurisdiction Under Section 505 of the Bankruptcy Code to Resolve the Valuation Disputes**

9.    Section 505 of the Bankruptcy Code grants this Court broad authority to

determine the amount or legality of "any tax."[10]  This broad authority plainly includes

postpetition *ad valorem* taxes of the kind addressed by the Tax Motion.  *See, e.g.*, *United States*

*v. Bond*, 762 F.3d 255, 260 (2d Cir. 2014) ("The language [of § 505(a)(1)] is broad, conferring

jurisdiction over 'any tax.'"); *In re Majestic Star Casino, LLC*, 457 B.R. 327 (Bankr. D. Del.

2011) (determining disputed valuation for property tax purposes); *In re ANC Rental Corp.*, 316

B.R. 153, 157 (Bankr. D. Del. 2004) (debtor's valuation claim for purposes of determining its *ad*

---

[8]    The petitions filed by the Debtors in the state court proceedings each contain the following language: "Plaintiff files this Original Petition within the time period permitted by Texas Tax Code § 42.21 to preserve its rights under Texas law.  On the same day as it makes this filing, Plaintiff has filed, or will file, a motion pursuant to 11 U.S.C. §§ 105, 505, and 506 seeking adjudication in the Bankruptcy Court of the property tax values and tax issues in this case and in other cases in which Plaintiff and Plaintiff's affiliates are contesting property tax values and tax issues.  The Bankruptcy Court is familiar with the Debtors' businesses and properties, and it provides a single forum to efficiently adjudicate tax issues facing Plaintiff and Plaintiff's affiliates along with other matters affecting the Debtors' ability to restructure."  The Debtors anticipate that the state court proceedings will be permanently stayed if this Court exercises jurisdiction to hear the Tax Motion.

[9]    On October 6, 2015, Milam AD served each of Luminant Generation and Sandow Power with a Notice of Trial Setting, indicating that each of the matters has been set for jury trial on February 22, 2016.  Other than the Petitions and Answers, there have been no additional filings, and there has been no discovery in the Milam AD proceedings (other than the requests for disclosure under Tex. R. Civ. Pro. 194.2 included in Milam AD's Answers).  During an October 7, 2015, scheduling conference, the Somervell proceeding was set for trial on January 25, 2016, with the judge indicating that he would stay the proceeding in favor of this Court should Somervell CAD's Abstention Motion be denied.  There has been no discovery in the Somervell CAD proceeding.

[10]    As this Court is aware, Section 505(a)(1) of the Bankruptcy Code explicitly grants a bankruptcy court jurisdiction to "determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to a tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."

*valorem* tax liability brought under section 505).  Moreover, none of the potential exceptions to this Court's authority to determine the matters set forth in the Tax Motion applies.[11]

10.    Because the Tax Motion invokes a substantive right provided by section 505(a)(1) of the Bankruptcy Code, *i.e.*, the Debtors' right to have this Court determine their tax liabilities, it is a "core proceeding."[12]   *See, e.g.*, *In re ANC Rental*, 316 B.R. at 157 (debtor's valuation claim brought under section 505 constituted a "core proceeding" because it "invokes a right given to the Debtor under title 11"); *see also* 28 U.S.C. § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . relationship, except personal injury tort or wrongful death claims" are core proceedings); 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.").  A court cannot be required to abstain from core proceedings.  *See* 28 U.S.C. § 1334(c)(2) (requiring a court to abstain from hearing certain claims, not including claims "arising under title 11 or arising in a case under title 11"); *In re Lorax Corp.*, 295 B.R. 83, 90 (Bankr. N.D. Tex. 2003) (noting that the "mandatory abstention" provisions of section 1334(c)(2) of the Judicial Code do not apply to core proceedings).

11.    Although the Court cannot be required to abstain from hearing the Tax Motion, Somervell CAD argues that the Court should nevertheless exercise its discretion to do so under either section 1334(c)(1) of the Judicial Code or section 505(a) of the Bankruptcy Code.

---

[11]    Specifically, no judicial or administrative tribunal adjudicated the property tax disputes at issue before the commencement of the Debtors' cases, so section 505(a)(2)(A) of the Bankruptcy Code is inapplicable; the Debtors are not seeking a tax refund, so section 505(a)(2)(B) of the Bankruptcy Code is inapplicable; and the "applicable period for contesting or redetermining" the Debtors' property tax valuations has not expired under Texas law, so section 505(a)(2)(C) of the Bankruptcy Code is inapplicable.

[12]    There is no basis for Milam AD's bald assertion that the Tax Motion is "no longer a 'core' matter" because the Debtors commenced state court proceedings solely to preserve the Debtors' rights.  (Milam Abstention Motion ¶ 14 n.1).

(Abstention Motion ¶¶ 12, 13).  This request is based largely on flawed and misleading arguments and a misapplication of the standards under which "permissive abstention" is appropriate.  Indeed, many of Somervell CAD's arguments, carried to their natural conclusion, would practically eviscerate section 505 of the Bankruptcy Code, weighing in favor of abstention in all but the most unique of circumstances.

12.    In reality, "[f]ederal courts have a virtually unflagging obligation to exercise the jurisdiction given them," and permissive abstention is "appropriate only in certain narrowly-tailored, exceptional circumstances." *In re Calpine Corp.*, 361 B.R. 665, 670 (Bankr. S.D.N.Y. 2007) (internal quotation marks omitted); *see also New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989) ("[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States."); *In re ANC Rental*, 316 B.R. at 158 ("Only in exceptional circumstances should abstention be used.").  This is particularly true in complex reorganization cases such as this, where efficient and expeditious administration is of critical importance.  *See In re Ionosphere Clubs, Inc.*, 108 B.R. 951, 955 (Bankr. S.D.N.Y. 1989) ("Where there is a conflict between a bankruptcy court administering a complex reorganization and other court proceedings, equity favors the unfettered authority of the bankruptcy court to proceed expeditiously and without the time-consuming and costly distraction of other litigation.").

13.    According to the Abstention Motion, the Court should apply an exhaustive, twelve-factor analysis in determining whether to abstain from hearing the Tax Motion. (Abstention Motion ¶14).  These factors include: (i) the effect or lack thereof on the efficient administration of the estate; (ii) the extent to which state law issues predominate over bankruptcy issues; (iii) the difficulty or unsettled nature of applicable state law; (iv) the presence of a related

proceeding commenced in state court or other nonbankruptcy court; (v) the jurisdictional basis, if any, other than section 1334 of the Judicial Code; (vi) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (vii) the substance rather than the form of an asserted core proceeding; (viii) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (ix) the burden of the court's docket; (x) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (xi) the existence of a right to a jury trial; and (xii) the presence of non-debtor parties. *In re LaRoche Indus., Inc.*, 312 B.R. 249, 254 (Bankr. D. Del. 2004).

14. However, this twelve-factor test applies only to general abstention issues under section 1334(c)(1) of the Judicial Code and not to ***core*** proceedings like a motion invoking section 505 of the Bankruptcy Code. *See In re Super Van, Inc.*, 161 B.R. 184, 190 (Bankr. W.D. Tex. 1993) ("Section 1334(c)(1) is generic, and the case law construing it covers a wide variety of situations that really have little or nothing to do with the special considerations involved in tax determinations brought under the special and unique authority conferred by section 505.").

15. As one Delaware bankruptcy court stated in *In re ANC Rental*, 316 B.R. at 159, "Courts have developed a six factor test to determine whether a bankruptcy court should abstain from hearing a tax issue." These six factors include: (i) the complexity of the tax issue; (ii) the need to administer the bankruptcy case in an orderly and efficient manner; (iii) the burden on the bankruptcy court's docket; (iv) the length of time required for a trial and decision; (v) the debtor's asset and liability structure; and (vi) the prejudice to the debtor and the potential prejudice to the taxing authority. *Id.*

16.    Regardless of whether the six-factor or twelve-factor analysis is applied, no single factor is necessarily decisive.  Instead, the Court must carefully balance the important factors as they apply to the matter at hand, "with the balance heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

17.    Because of the significant overlap in analysis, and in order to best address the various flawed arguments advanced by Somervell CAD, the Debtors use the more exhaustive analysis applied in the Abstention Motion, noting (in footnotes) the corresponding analysis under the six-factor test.  Although Somervell CAD asserts that all twelve factors favor abstention, as set forth in detail below, the Debtors submit that most—if not all—of those factors actually weigh heavily against abstention and in favor of this Court exercising its jurisdiction to hear the Tax Motion.

A.    **Efficiency Favors this Court Exercising its Jurisdiction**[13]

18.    The efficient administration of the estate is consistently the first factor analyzed by courts in deciding whether to abstain from exercising their jurisdiction.  As detailed below, abstention from hearing the Tax Motion: (i) will waste the Debtors' assets by requiring them to litigate seven separate state court proceedings while at the same time proceeding in this Court on their chapter 11 cases and (ii) will not facilitate the more efficient or timely adjudication of all of the valuation disputes.  Accordingly, this factor weighs heavily against abstention and in favor of the Court exercising its jurisdiction to hear the Tax Motion.

---

[13]    The second and fourth factors in the six-factor test set forth in *In re ANC Rental*, 316 B.R. at 159, consider, respectively, the need to administer the bankruptcy case in an orderly and efficient manner and the length of time required for trial and decisions.  For many of the same reasons set forth herein, these factors also weigh against abstention and in favor of the Court exercising its jurisdiction.  Moreover, these same reasons also suggest that the fifth factor in the six-factor test weighs against abstention.  That factor considers whether the organizational complexity of the debtor will make it difficult to determine the correct tax liability in the bankruptcy court. Although this is a complex reorganization case, as discussed herein this Court is intimately familiar with the Debtors' businesses, assets, and liabilities and accordingly is in the best position to efficiently and expeditiously make all of the determinations requested in the Tax Motion.

RLF1 13134579v.1

a. Requiring the Debtors to litigate the valuation disputes in seven separate proceedings is an inefficient use of the Debtors' resources.

19. Somervell CAD maintains that consolidating the seven separate valuation disputes into a single proceeding before the Court is "not efficient" and "raises the likelihood of confusion," because "the facts and circumstances regarding the valuation of each of the properties and appraisals are separate and unique." (Abstention Motion ¶ 15). As an initial matter, it strains credulity to suggest that it is more efficient for the Debtors to be forced to litigate these issues in seven separate proceedings in six different courts, rather than in one proceeding before this Court. Moreover, this argument underestimates this Court's ability to handle complex issues.[14]

20. Somervell CAD's argument on this factor also ignores the fact that all seven of the properties at issue are power plants that produce energy for sale in the Texas energy market. Accordingly, there are significant commonalities in the facts that will be relevant to determining their Taxable Values. For example, applying the "income method of appraisal" to these plants will require consideration of, *inter alia*, the market prices at which each plant's production can be sold (with the price curves generally being the same across the plants) and each plant's

---

[14] *See, e.g.*, Findings of Fact and Conclusions of Law, Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC and EFIH Finance Inc., No. 14-50363 (CSS) (Bankr. D. Del. March 26, 2015) (Adv. D.I. 245) (granting Debtors summary judgment on whether a $431 million makewhole premium was due under several indenture provisions, whether the Debtors' bankruptcy filing constituted an intentional default under the indenture, and whether the Debtors breached the terms of the indenture by not paying a makewhole); Findings of Fact and Conclusions of Law, Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC and EFIH Finance Inc., No. 14-50363 (CSS) (Bankr. D. Del. July 8, 2015) (Adv. D.I. 304) (ruling after three-day trial including three expert witnesses that no cause existed to lift the automatic stay nunc pro tunc to the date of the EFIH First Lien Indenture Trustee's rescission notice, denying a $431 million makewhole premium); Hr'g Tr. at 168:22-203:1, *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. Oct. 15, 2014) (approving incentive compensation program after five-day trial and considering incentivizing nature of Luminant executive performance metrics including EBITDA, coal available generation, nuclear available generation, operations and maintenance, sales, general, and administrative expenses, coal fuel costs, and capital expenditures); *In re Nellson Nutraceutical, Inc.*, "Findings of Fact and Conclusions of Law," Dkt. No. 992 (Jan. 18, 2007) (Sontchi, J.), Case No. 06-10072 (determining enterprise value of entire debtor group after twenty-three day valuation trial).

operational expenses (some of which, such as tax, legal, and accounting, are allocated among the various plants).  *See* Tex. Tax Code § 23.012 (describing the income method of appraisal). Somervell CAD's allegation that some "facts and circumstances regarding valuation of each of the properties and appraisals are separate and unique" in no way undercuts the significant commonality among the plants, and the efficiencies that will therefore be gained by making all of the valuation determinations in a single proceeding.  (Abstention Motion ¶ 15).

21.    Moreover, having grappled with the nuances of the Debtors' business and assets for over a year, this Court has already developed significant knowledge of many of the facts relevant to making the valuation determinations, including the recent declines in the prices of natural gas and power and the amount of electricity generated by the Debtors' coal fleet; the various operating, maintenance, and capital expenditure costs associated with the plants; and the Debtors' method for forecasting earnings.  Indeed, in the course of hearing *Debtors' Motion for Entry of an Order Authorizing the Debtors to (A) Pay Certain Prepetition Amounts on Account of the Insider Compensation Programs and (B) Continue the Insider Compensation Programs in the Ordinary Course of Business on a Postpetition Basis* [D.I. 1792], this Court was presented with and evaluated extensive expert testimony on these precise facts.

22.    If the Court abstains from exercising its jurisdiction over the valuation disputes, the Debtors will not only lose the benefit of this Court's learning curve, but they also will be required to present a largely overlapping set of issues and facts *seven separate times* (including to at least three, and possibly seven, juries).  It is difficult to imagine a more inefficient and inconvenient result.

b.    <u>The valuation disputes can be resolved most efficiently by this Court.</u>

23.    This Court is the best forum in which to resolve *all* of the valuation disputes in a cost-effective and efficient manner.  Not only does this Court possess a unique expertise in the

valuation of large business assets, but as discussed above, this Court also has already invested considerable time and resources in learning many of the facts relevant to *these* valuation disputes.  In addition, the Debtors have significant resources already in place in these chapter 11 cases.  For example, the Debtors believe that much of the discovery relevant to the adjudication of the Tax Motion has already been reviewed, issue coded, and produced as part of the Debtors' previous efforts in this case.  Moreover, in view of the significant commonalities between the plants, and in an effort to push the Tax Motion forward, the Debtors' proposed schedule for the adjudication of the Tax Motion calls for partially consolidated discovery, which is proposed to commence on October 19, 2015.[15]  The prompt commencement of discovery in this forum will allow the Debtors to leverage the numerous contract attorneys already in place to conduct plan confirmation discovery, and who are intimately familiar with the content and organization of the extant document production.

---

[15]  On September 23, 2015, the Debtors filed a *Motion for Entry of an Order Scheduling Certain Hearing Dates and Deadlines* [D.I. 6152] (the "Scheduling Motion"), which proposed a reasonable schedule to govern the adjudication of the Tax Motion by this Court.  Under the Debtors' proposed schedule, the trial on the Tax Motion would proceed on March 28, 2016.  In the course of the Debtors' efforts to build a consensus regarding this proposed schedule, the Debtors originally suggested a trial date of February 29, 2016.  The Debtors pushed the proposed trial date out to March 28, 2016, over concerns about the schedule being too aggressive.  On October 6, 2015, Milam AD served each of Luminant Generation and Sandow Power with a Notice of Trial Setting, indicating that the Milam AD proceedings have been set for jury trial on February 22, 2016; neither Luminant Generation nor Sandow Power has received any communications directly from the Milam County District Court.  During an October 7, 2015, scheduling conference set by Somervell CAD, the Somervell proceeding was set for trial on January 25, 2016, at Somervell CAD's request.  Also on October 7, 2015, the Appraisal Districts filed an *Objection to the Scheduling Motion* [D.I. 6372], in which they objected that the timeline proposed in the Debtors' Scheduling Motion is "prejudicial to the [Appraisal] Districts and will not provide ample time for them to properly develop their cases."  The Debtors will separately respond to the various objections to the Scheduling Motion filed by the Appraisal Districts, Milan AD, and Somervell CAD.

**B.    Valuation is Not a Novel State Tax Issue and the Tax Motion Does Not Undermine Texas Law on Valuation or its Uniform Application**[16]

24.    With respect to the second factor (the extent to which state issues predominate over bankruptcy issues), Somervell CAD emphasizes that the Tax Motion "is based on Texas State Law." (Abstention Motion ¶ 17). However, what Somervell CAD fails to acknowledge is the fact that the state law at issue is valuation, an area of expertise for bankruptcy courts. Rather than addressing this issue head on, Somervell CAD makes the bald assertion that a determination by this Court could jeopardize the "uniformity of assessment" of Texas property taxes. (Abstention Motion ¶¶ 18-21). As set forth below, this Court is well-suited to apply the straightforward legal principles presented by the Tax Motion, and a determination of all of the plants' values in a single proceeding before this Court is *more likely* to result in a consistent application of Texas law and uniformity of assessment than having seven separate proceedings in six different jurisdictions. Accordingly, this factor weighs against abstention and in favor of the Court exercising its jurisdiction.

a.    The Tax Motion involves straightforward issues of state law that this Court is ideally equipped to apply.

25.    The mere fact that a dispute is based on state law "does not mandate equitable abstention or remand, particularly where the state law claims are not novel or complex." *Neuman v. Goldberg*, 159 B.R. 681, 688 (S.D.N.Y. 1993); *see also In re Ionosphere Clubs, Inc.*, 108 B.R. 951, 955 (Bankr. S.D.N.Y. 1989) (denying abstention with respect to state law action where the legal grounds being traversed had been "well-charted … by applicable state statutes and case law"). The valuation statute at issue in this matter is Texas Tax Code § 23.01, which

---

[16]    The first factor in the six-factor test set forth in *In re ANC Rental*, 316 B.R. at 159, considers the complexity of the tax issues. Accordingly, for many of the same reasons set forth herein, this factor also weighs against abstention and in favor of the Court exercising its jurisdiction.

requires that all taxable property be appraised at its "market value" (as such term is defined in Texas Tax Code § 1.04(7)) as of January 1 of the tax year. "Market value" is not a novel or highly technical concept. To the contrary, the Texas Tax Code invokes standards familiar to this Court, referring to "generally accepted appraisal methods and techniques," including: (i) the cost method, (ii) the income method, and (iii) the market data comparison method.[17]   Tex. Tax Code §§ 23.01(b), 23.0101.  This Court is well-equipped to apply these straightforward valuation methodologies to the Debtors' power plants.

26.     Bankruptcy courts routinely decide valuation issues, perhaps more frequently than any other court. *See* Christopher S. Sontchi, *Valuation Methodologies: A Judge's View*, 20 Am. Bankr. Inst. L. Rev. 1, 1 (2012) (noting that determining the value of the property of the estate and the claims is central to a chapter 11 case, and stating, "Understanding the methodologies used to determine value is critical for any attorney or judge in this field."). As the Court of Appeals for the Fifth Circuit has noted, "[V]aluation issues can arise in various contexts throughout the entire bankruptcy case.  Establishing equity, allowing claims, adequate protection, and plan confirmation are only a few examples of when the issue of valuation can be raised." *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 797-98 (5th Cir. 1997) (citations omitted).

27.     Indeed, this Court frequently values property by applying state law, including in cases involving complex business and asset structures. *E.g., In re Majestic Star Casino LLC*,

---

[17]    In general terms, "market value" under the Texas Tax Code refers to what a willing buyer would pay a willing seller in an arms-length transaction.  Tex. Tax Code § 1.04(7).  The willing-buyer, willing-seller measure is a widely understood concept.  Although the Texas Tax Code contains a number of exclusions and exemptions from otherwise taxable property, including most intangible property and certain pollution control property, (*see* Tex. Tax Code §§ 11.01-11.34) (defining "taxable property" and listing exemptions)), the crux of the dispute between the parties is the market value of the Debtors' power plants and not the application or non-application of these various exemptions and exclusions.  Even if there were a dispute regarding an exemption or exclusion, this Court could apply Texas law to resolve such a dispute as easily as could a Texas court (or a series of Texas courts).

457 B.R. 327 (Bankr. D. Del. 2011) (revaluing the debtor's riverboat casino vessels for Indiana property tax purposes); *In re Cable & Wireless USA, Inc.*, 331 B.R. 568 (Bankr. D. Del. 2005) (engaging in a substantive review of the valuation of the debtor's telecommunications assets for Florida property tax purposes).  And, numerous other bankruptcy courts have valued property for *ad valorem* tax purposes by applying the Texas Tax Code.  *E.g., In re Breakwater Shores Partners, L.P.*, No. 10-61254, 2012 WL 1155773 (Bankr. E.D. Tex. Apr. 5, 2012) (determining an independent valuation of a residential real estate development in Mabank, Texas); *In re MCorp Fin., Inc.*, 216 B.R. 596 (Bankr. S.D. Tex. 1996) (considering and ruling on value of city block of real property in Houston, Texas); *In re Quality Beverage Co.*, 170 B.R. 310 (Bankr. S.D. Tex. 1994) (adjusting the assessment of liquor distributor's Texas assets); *In re Fairchild Aircraft Corp.*, 124 B.R. 488 (Bankr. W.D. Tex. 1991) (abating a "grossly excessive" property tax assessment made on the debtor's Texas-based aircraft inventory, parts, and machinery).

28.     Thus, the valuation principles presented by the Tax Motion are not only relatively straightforward, but they also fall squarely within the purview of this Court's expertise.[18]  It is difficult to imagine that any of the state courts (which are courts of general jurisdiction) in which the valuation disputes are pending have more expertise than this Court in valuing large business assets such as the Debtors' power plants.

b.     Multiple state law proceedings pose a greater threat to uniformity of assessment.

29.     Rather than addressing this Court's unique expertise with respect to valuation issues, Somervell CAD instead makes the unsupported assertion that "[t]he need for uniform

---

[18]    Although the Texas Tax Code contains a number of exclusions and exemptions from otherwise taxable property, the crux of the dispute between the parties is the market value of the Debtors' power plants and not the secondary issue of whether various portions of that value are otherwise exempt or excluded from tax.  *See supra* discussion at n.17.

assessments under Texas law is a compelling reason for the Court to abstain in this case."
(Abstention Motion ¶¶ 17-21).  In reality, any uniformity concerns implicated by the valuation
determinations sought in the Tax Motion are most appropriately addressed by having all of the
determinations made by this Court in a single proceeding rather than by seven separate triers of
fact, including at least three (and possibly up to seven) juries.

30.   Somervell CAD's uniformity argument rests entirely on *In re ANC Rental*, in
which the Court decided to abstain in a case involving the valuation of property for Texas *ad
valorem* tax purposes, based primarily on its determination that "[r]esolution of this dispute
could affect the uniformity of assessment of property taxes." 316 B.R. at 159.  However, *In re
ANC Rental* presented an unusual set of circumstances: the debtor sought valuation
determinations with respect to its rental car fleet, which was located entirely within a single
appraisal district, for each of three consecutive years.[19]  The court held that it did not have
jurisdiction over the first two years because the debtor had failed to comply with Texas law
regarding its claim, and abstained from making the requested determination with respect to the
third year citing, *inter alia*, concerns regarding the uniform assessment of Texas property taxes.
The consequence of the bankruptcy court's abstention in *In re ANC Rental* was that the debtor
would instead have to litigate the valuation issues in a single state court proceeding (as opposed
to a single bankruptcy court proceeding).

31.   Notwithstanding the case's distinguishable facts, Somervell CAD apparently
interprets *In re ANC Rental* to mean that any time a court is asked to make a valuation
determination for *ad valorem* tax purposes, uniformity concerns are present and abstention is

---

[19]   Brief of Appellant ANC Rental Corporation, *ANC Rental Corp. v. Dallas County*, Civil Action No. 04-1430 at 3
(D. Del. Aug. 12, 2005) (stating that the determination at issue "boils down to the proper valuation of a single
fleet of ANC's rental vehicles at one location for one tax year.").  A copy of the Appellant's Brief is attached
hereto as **Exhibit A**.

warranted.[20]  This is simply not correct.[21]  Instead, Somervell CAD is required to make a specific showing that having this Court make the determinations sought in the Tax Motion would undermine the uniformity of assessment of Texas property taxes.[22]  *See In re Fairchild Aircraft Corp.*, 124 B.R. at 491 (stating, in a case involving the valuation of property for Texas tax purposes, that "[a]bstention from deciding a tax adjudication question under Section 505 is only appropriate upon a showing that uniformity of assessment is of significant importance").  Somervell CAD has not made any such showing, and indeed has not even pled that uniformity is of significance importance.

---

[20]  Taken to their logical end, the arguments on the predominance of state law issues and uniformity of assessment raised by Somervell CAD and Milam AD would eviscerate section 505(a)(1) of the Bankruptcy Code, particularly in the property tax context, since a state's interest in independently and uniformly addressing its tax statutes is implicated any time a debtor invokes section 505 of the Bankruptcy Code to determine a state or local tax liability.  This cannot be correct.  Instead, "Congress is presumed to have been fully aware of the potential for conflict when it enacted section 505, and to have concluded that bankruptcy policy nonetheless compelled provision for resolving tax disputes in the bankruptcy forum."  *In re Super Van*, 161 B.R. at 190 (rejecting the argument that abstention is necessary when there is a risk of inconsistent results between state and federal tribunals).  Indeed, Congress's intent that the bankruptcy courts have the authority to determine property tax disputes, which are always based on state and local law, is made clear by section 505(a)(2)(C) of the Bankruptcy Code, which sets forth a specific circumstance under which a bankruptcy court may *not* determine a property tax dispute.  *See also In re Mocco*, 222 B.R. 440, 455 (Bankr. D. N.J. 1998) ("Section 505 has been interpreted to permit the bankruptcy court to determine the amount of any tax, including real estate tax assessments.  The ability of a bankruptcy court to determine any and all issues of tax liability of debtors, where there has been no prior determination by any state, judicial or judicial body, is well established in the Third Circuit.") (internal citations omitted).  The arguments raised by Somervell CAD and Milam AD would essentially render section 505(a)(2)(C) superfluous and largely remove property tax disputes from the ambit of section 505.

[21]  Indeed, the bankruptcy courts in this jurisdiction and others have made valuation determinations for state and local tax purposes, notwithstanding abstention requests.  *E.g., In re Custom Distrib. Servs., Inc.*, 216 B.R 136 (Bankr. D.N.J. 1997) (engaging in valuation determination notwithstanding taxing authorities' abstention request), *aff'd in part and rev'd in part by In re Custom Distrib. Servs. Inc.*, 224 F.3d 235 (3d Cir. 2000) (affirming the bankruptcy court's valuation determinations without discussing abstention, reversing determinations for certain years on the basis of a lack of jurisdiction); *In re R-P Packaging, Inc.*, 278 B.R. 281, 288-89 (Bankr. M.D. Ga. 2002) (declining to abstain and making valuation determinations); *In re AWB Assocs., G.P.*, 144 B.R. 270, 280-81 (Bankr. E.D. Pa. 1992) (same).

[22]  The sole argument that Somervell CAD makes in this regard is to claim that the Tax Motion urges the Court to resolve the valuation disputes "by resorting to bankruptcy standards -- 'in a unified way'."  (Abstention Motion ¶ 20).  The Tax Motion makes no such suggestion.  To the contrary, the Tax Motion is clear that the Court should apply Texas state law in making the requested valuation determinations.  (Tax Motion ¶¶ 9-13).  Moreover, the Abstention Motion itself acknowledges that in arguing that it would be more efficient to "address any and all valuation disputes, including those related to the Debtors' property tax liabilities, in a single forum," the Tax Motion expressly states that "somewhat different valuation standards apply."  (Tax Motion ¶ 19; Abstention Motion ¶ 9).

18

32.     As an initial matter, in making the determinations requested in the Tax Motion, this Court will be bound under both *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and the Full Faith and Credit Act, 28 U.S.C. § 1738, to follow substantive Texas laws and precedents in rendering its decision.[23]  *See Arkansas Corp. Comm'n v. Thompson*, 313 U.S. 132, 142 (1941) ("Manifestly, whether or not taxes are 'legally due and owing' to a state depends upon the valid laws of that state.").  Moreover, the applicable state laws are well-developed and establish a comprehensive roadmap for making valuation determinations,[24] and the Debtors are seeking only to have their plants accurately appraised consistent with those laws.  Accordingly, the danger of inconsistency between applicable Texas law as applied by the state courts and as it will be applied by this Court is minimal at best.  *See In re Cable & Wireless USA, Inc.*, 331 B.R. at 575 (suggesting that the court would avoid the uniformity concerns expressed in *In re ANC Rental* by making the valuation determinations consistent with state law principles and not by application of the streamlined and unified approach advocated by the debtors).

33.     Under these circumstances, there is simply no reason to believe that a more uniform application of Texas law will be achieved if the valuation determinations are made in seven separate proceedings, including at least three (and possibly up to seven) jury trials, rather than by this Court in a single proceeding that can properly account for the numerous commonalities between the various plants.  Accordingly, concerns regarding uniformity of assessment do not weigh in favor of abstention.

---

[23]   Somervell CAD's concern that the Tax Motion "could lead to improper and unconstitutional pre-emption of Texas law" is therefore completely unfounded.  (Abstention Motion ¶ 9).

[24]   *See In re Breakwater Shores*, 2012 WL 1155773 at *3 (noting the existence of a "comprehensive scheme" for determining property tax appraisals under the Texas Property Tax Code).

C.      **The Relevant Provisions of Texas Law are Well-Settled**

34.      This factor considers the difficulty or unsettled nature of state law.[25]    The

Abstention Motion argues that this factors weighs in favor of abstention because "Texas state

law regarding *ad valorem* tax appraisals is not fully settled and [is] in a state of flux."

(Abstention Motion ¶ 25).  In support of this assertion, the Abstention Motion first notes that the

Debtors have alleged that "Somervell CAD's 'determinations of the appraised values and market

values of the Property violate both the Texas and United States Constitution.'"    (Abstention

Motion ¶ 23).    This is a red herring.    The Debtors have not called into question the

constitutionality of any provision of the Texas Tax Code.  Rather, the Debtors have asserted that

the particular valuation determinations at issue here violate both the Texas and United States

Constitutions because the appraised values of the plants exceed their market values and are

therefore inconsistent with the requirements set forth in Texas law.  The fact that litigants—in

this case or in others—challenge the application of the law to their circumstances does not mean

that the law itself is in flux.

35.      Somervell CAD also references an unrelated lawsuit recently filed by the City of

Austin and alleging that certain aspects of the Texas property tax appraisal system are

unconstitutional.  (Abstention Motion ¶ 24).  Specifically, the City of Austin has alleged that

amendments made in 1997 and 2003 to the Texas Tax Code that removed barriers to taxpayer

protests and created a statutory equal and uniform cause of action in addition to an

already-existing constitutional one have resulted in a diminution in the appraised values of

certain of its vacant and commercial real estate properties, leading to unequal taxation of those

properties in violation of the Texas Constitution.  *See* Original Petition, *City of Austin v. Travis*

---

[25]    The straightforward nature of the valuation principles at issue in the Tax Motion is discussed in detail above in connection with the second factor.

*Central Appraisal District*, Civil Action No. D-1-GN-15-003492 (Travis Co. Dist. Ct., Filed Aug. 24, 2015).[26]  The mere fact that a city has filed suit against an appraisal district to challenge certain provisions of the Texas Tax Code in no way undermines the well-settled, comprehensive nature of the law pertaining to the valuation determinations this Court is being asked to make. Accordingly, this factor weighs against abstention and in favor of the Court exercising its jurisdiction.

> **D.    The Existence of the State Court Proceedings is Irrelevant to the Abstention Determination**

36.    This factor takes into account the presence of a related proceeding commenced in state or other non-bankruptcy court.  The Abstention Motion argues that because the Debtors, on the same date that they filed the Tax Motion, filed petitions in the applicable Texas state courts, this factor weighs in favor of abstention.  (Abstention Motion ¶ 26).  However, this fact is wholly irrelevant to the abstention issue; as discussed in the Tax Motion, the Debtors filed the state court proceedings solely to preserve their rights under Texas law and to foreclose any possible argument under section 505(a)(2)(C) of the Bankruptcy Code that "the applicable period for contesting or redetermining [their *ad valorem* taxes] under applicable nonbankruptcy law has expired." (Tax Motion ¶15 n.8).  Moreover, as discussed above in connection with the first factor, the state court proceedings are still nascent, whereas the Debtors already have in place in these chapter 11 cases significant resources which, together with the Court's existing knowledge of many of the relevant facts, will aid in the cost-effective and efficient resolution of all of the valuation disputes.   Accordingly, this factor weighs in favor of this Court exercising its jurisdiction.

---

[26]   A copy of the City of Austin's Original Petition is attached hereto as **Exhibit B**.

E.      **This Court Has Independent Subject Matter Jurisdiction Over the Tax Motion Under Section 505 of the Bankruptcy Code**

37.     This factor is concerned with the proceeding's jurisdictional basis, if any, other than section 1334 of the Judicial Code, and weighs in favor of abstention where there is not one. Section 505 of the Bankruptcy Code clearly gives this Court independent subject matter jurisdiction over the Tax Motion. *See In re Custom Distrib. Servs.*, 224 F.3d at 239-40 (noting that the Third Circuit has "consistently interpreted § 505(a) as a jurisdictional statute that confers on the bankruptcy court authority to determine certain tax claims"); *Quattrone Accountants, Inc., v. IRS*, 895 F.2d 921, 923 (3d Cir. 1990) ("Section 505 was intended to clarify the bankruptcy court's jurisdiction over tax claims."). Accordingly, this factor weighs in favor of this Court exercising its jurisdiction.

F.      **The Valuation Issues Involve Substantial Amounts of Money and are Significant to the Debtors' Overall Restructuring**

38.     This factor considers the degree of relatedness or remoteness of the proceeding to the main bankruptcy case. In analyzing this factor, Somervell CAD attempts to diminish the importance of the Tax Motion to the Debtors' chapter 11 cases by stressing that "confirmation of the Debtors' plan of reorganization does not depend on resolution of the [valuation disputes]." (Abstention Motion ¶ 29). This argument conveniently overlooks the fact that the Tax Motion is a core proceeding under section 505 of the Bankruptcy Code, and thus necessarily bears a substantial relationship to these chapter 11 cases. Moreover, these valuation disputes involve substantial amounts of money and will have a material impact on the Debtors' reorganization. Indeed, the Tax Motion is, at its center, a motion to right-size the Debtors' property tax liabilities by approximately *$40 million* (and potentially more) in the 2015 tax year alone. Significantly, it is reasonable to expect that a more appropriate baseline valuation for 2015 would result in

similar tax savings in the Debtors' 2016 tax year as well.[27]   These are substantial amounts of money, particularly considering that they relate to post-petition taxes that would be "other secured claims" that will be paid in full in cash or otherwise left unimpaired under the Debtors' proposed plan of reorganization.[28]   Somervell CAD cannot reasonably suggest that a proceeding involving a potential $80 million (or greater) reduction in the Debtors' post-petition liability is not of significant importance to the Debtors' estates and their creditors.   This factor thus weighs in favor of this Court hearing the Tax Motion.

###    G.    The Tax Motion is a Core Proceeding in Both Form and Substance[29]

39.    This factor asks whether the "essence" or "substance" of the claim is a state law claim rather than a core proceeding.   Relying on *In re LaRoche Industries,* 312 B.R. at 253, Somervell CAD states that because the substantive issues raised by the Tax Motion are based on the Texas Tax Code, this factor weighs in favor of abstention.   (Abstention Motion ¶ 32). Importantly, *In re LaRoche Industries* did not involve a proceeding brought under section 505 of the Bankruptcy Code.  This Court has jurisdiction over the Tax Motion pursuant to section 505

---

[27]   Pursuant to Texas Tax Code § 41.43(a-3), if an appraised value is lowered in a preceding tax year, then in the following year, an appraisal district must meet a "clear and convincing" standard, rather than a preponderance standard, to establish the value of the property.  Although this presumptive benefit is limited to the immediately following year (here, 2016), as a practical matter, a more reasonable "base-line" valuation is likely to inform valuation determinations in later years as well.

[28]   In the Milam Abstention Motion, Milam AD argues that the amount at issue from the perspective of the Debtors is insignificant, while the amount at issue from the perspective of Milam County "heavily" favors abstention. (Milam Abstention Motion ¶ 23).  This argument is unavailing.  It strains credulity to suggest that a potential $80 million (or more) reduction in tax liability (which would be a "full-pay" secured administrative claim) is insignificant to *any* bankruptcy proceeding.  Moreover, because, as discussed above, this Court is required to apply substantive Texas laws in making the requested valuation determinations, there is no reason to believe that Milam AD (or the other appraisal districts) will be unable to obtain a full and fair adjudication of the issues in this Court.

[29]   The Venue Motion similarly suggests that the Tax Motion is not a core proceeding under section 505 of the Bankruptcy Code because it is based on Texas law.  (Venue Motion ¶ 2)  This argument is without merit.  *See In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir. 1987) ("[T]he fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core … Congress specifically provided that the 'determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.' 28 U.S.C. § 157(b)(3).").  As discussed herein, the Tax Motion clearly is a core proceeding under section 505 of the Bankruptcy Code.

of the Bankruptcy Code, and this matter is therefore statutorily a core proceeding in both form and substance. *See In re ANC Rental Corp.*, 316 B.R. at 157 (holding that debtor's claim brought under section 505 constituted a core proceeding "because it invokes a right given to the [d]ebtor under title 11"). Accordingly, this factor weighs in favor of the Court exercising its jurisdiction.

## H.    There is No Need to Sever State Law Claims

40.    This factor considers whether there are state law issues that need to be severed from the core proceedings and resolved in a separate court. Because, as discussed above, the Tax Motion was brought under section 505 of the Bankruptcy Code, it is a core proceeding in its entirety. Accordingly, this Court can fully resolve the disputed issues, and this factor does not favor abstention. *In re LaRoche*, 312 B.R. at 254 (where the only matter before the court is a core matter, "there is no issue raised about severing core from state law matters").

## I.    The Additional Burden to the Court's Docket Does Not Warrant Abstention[30]

41.    This factor considers the burden exercising jurisdiction will place on the bankruptcy court's docket. The Debtors recognize that this Court has a full calendar, but for the reasons set forth above this Court provides the best and most efficient forum in which to resolve the valuation disputes. In addition, the Debtors have proposed a schedule that provides ample opportunity for evaluation of these issues, and is, of course, subject to this Court's availability and schedule. Further, any trial on this matter likely will not take place until after confirmation of the Debtors' plan of reorganization, at which point the Court's calendar will not, as the Abstention Motion claims, be "occupied with numerous issues relating to the Debtor and its

---

[30]    The third factor in the six-factor test set forth in *In re ANC Rental*, 316 B.R. at 159, considers the burden on the bankruptcy court's docket. Accordingly, for the same reasons set forth herein, this factor does not constitute cause for abstention or, at the very least, does not tip the balance of the factors in favor of abstention.

seventy subsidiaries." (Abstention Motion ¶ 34). Accordingly, the Debtors respectfully submit that this factor does not constitute cause for abstention or, at the very least, does not tip the balance of the factors in favor of abstention.

**J.      The Debtors' Exercise of Their Statutory Right to Choose Their Forum Does Not Constitute Forum Shopping**

42.      This factor considers the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties. Somervell CAD's arguments with respect to this factor ignore the fact that the Debtors have a substantive right to seek a redetermination of their tax liabilities under section 505(a)(1) of the Bankruptcy Code, "whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." In other words, Congress has granted the Debtors a statutory right to choose their forum, and it is patently unreasonable to suggest that in exercising that right, the Debtors are engaging in forum shopping.[31]

43.      Indeed, this Court has held that absent any evidence of a contrary motive, a debtor is entitled to a presumption that it is invoking section 505 of the Bankruptcy Code in good faith and not as a product of forum shopping. *See In re Cont'l Airlines, Inc.*, 156 B.R. 441, 444 (Bankr. D. Del. 1993) ("[A]lthough Movants submit that Debtors' effort to have this Court decide this matter is an effort at forum shopping, this Court will not speculate as to Debtors' motive for filing an Adversary Proceeding in this Court."). Where, as here, the state court proceedings relate to post-petition taxes and are filed *on the same day* as the bankruptcy court

---

[31]    Milam AD suggests that the Debtors are engaging in forum shopping by "attempting to simultaneously pursue identical relief in both state court and federal court to increase their odds of prevailing." (Milam Abstention Motion ¶ 35). This is simply not true. The Debtors filed the state court proceedings solely to preserve their rights under Texas state law, and anticipate that the state court proceedings will be permanently stayed if this Court exercises its jurisdiction to hear the Tax Motion.

25

proceeding, there is no such evidence of a "contrary motive."  *See*, *e.g.*, *In re Cody, Inc.*, 281 B.R. 182 (S.D.N.Y. 2002) (affirming the bankruptcy court's decision to abstain where debtor filed a Chapter 11 petition for the "sole purpose" of seeking an adjudication under section 505 following an adverse state court judgment); *In re Overmyer*, No. 05-40137, 2007 WL 1299336 (Bankr. D. Colo. Feb. 26, 2007) (finding evidence of forum shopping where the debtor sought to invoke section 505 to resolve tax liabilities in a dispute that had been ongoing for twenty-five years).  Accordingly, this factor does not favor abstention.

### K.    The Existence of a Right to Jury Trial in State Court Does Not Warrant Abstention

44.    This factor considers whether a right to a jury trial exists in the event the matter is litigated in state court.  Under the circumstances at hand, this factor does not weigh in favor of abstention.  The Tax Motion is a core proceeding that fits squarely within the Court's equitable powers under section 505 of the Bankruptcy Code.  In enacting section 505, Congress gave bankruptcy courts subject matter jurisdiction over state tax disputes, and requiring those courts to abstain every time there is a right to a jury trial in the state court would undermine the broad scope of section 505.  *See In re Stoecker*, 179 F.3d 546, 549 (7th Cir. 1999) (noting the broad authority granted to bankruptcy courts under section 505 to resolve state tax disputes, and stating, "If federal courts could not determine the debtor's liability for state taxes, if they had to abstain pending a determination of that liability in state court, bankruptcy proceedings would be even more protracted than they are.").  Moreover, it is important to note that abstention would, in this particular case, require the Debtors to litigate at least three, and possibly up to seven, separate jury trials throughout Texas—an inefficient result that runs squarely against the circumstances section 505 was meant to avoid.  *See In re Cable & Wireless USA, Inc.*, 331 B.R.

at 575 (Bankr. D. Del. 2005) (noting that one of the main purposes of section 505 is to avoid making the estate "litigate the tax or assessment in several state jurisdictions.").

### L.     The Debtors' Interest in Efficient Resolution of the Valuation Disputes Outweighs Any Inconvenience to the Non-Debtor Parties

45.     This factor takes into account the presence of non-debtor parties in the proceeding.  In finding that this factor warrants abstention, courts generally are concerned not with the potential inconvenience to any non-debtor parties, but rather with the possibility that non-debtor parties might be taking advantage of the availability of the bankruptcy court as a forum in which to bring claims that would otherwise have to be brought in state court.  For example, in *In re LaRoche*, 312 B.R. at 255, the Court ruled that this factor favored abstention where one party was a former debtor and the other party was a non-debtor.  According to the Court, "Merely having once been a debtor in a bankruptcy case is insufficient to require the bankruptcy court to continue to resolve all disputes involving that party." *Id.*  Similarly, in *In re Continental Airlines*, 156 B.R. at 444, this Court noted that the fact that the movants were non-debtors, many of whom lived in Colorado (the site of the underlying state law claim), weighed in favor of abstention.  This is not the case here.  The Tax Motion has been brought to the Court *by the Debtors*, seeking a core determination pursuant section 505 of the Bankruptcy Code.

46.     In any event, the burden and prejudice, if any, to the taxing authorities associated with litigating in this Court are considerably outweighed by the paramount interest of the Debtors and their creditors in having the valuation of the Debtors' property and associated property tax liabilities determined in a single, efficient forum in which the resources are already in place to facilitate a cost-effective and expeditious resolution.  Accordingly, this factor weighs in favor of the Court exercising its jurisdiction to hear the Tax Motion.

II.    **The Appraisal Districts Have Failed to Meet Their Burden of Proving that the Interests of Justice and Convenience Necessitate a Transfer of Venue**

47.    This Court may transfer the Tax Motion to another district if doing so is "in the interest of justice" or necessary "for the convenience of the parties."  28 U.S.C. §§ 1404, 1412. It is well established, however, that there is a "strong presumption in favor of maintaining venue where the bankruptcy case is pending."  *In re Hechinger Inv. Co. of Del.*, 288 B.R. 398, 402 (Bankr. D. Del. 2003) (citation omitted); *see also In re Onco Invest Co.*, 320 B.R. 577, 579 (Bankr. D. Del. 2005) (same).  Moreover, a debtor's proper choice of venue is entitled to "great weight" in the consideration of change of venue motions.  *See, e.g.*, *In re Del. & Hudson Ry.*, 96 B.R. 467, 467 (Bankr. D. Del. 1988), *aff'd*, 884 F.2d 1383 (3d Cir. 1989) ("When venue is proper, the debtor's choice of forum is entitled to 'great weight.'"); *In re PWS Holding Corp.,* 1998 Bankr. LEXIS 549, at *4-5 (Bankr. D. Del. Apr. 28, 1998) (holding that debtor's choice of venue is "to be accorded substantial weight and deference").  The party seeking transfer has the burden of producing *evidence* sufficient to overcome the presumption in favor of the Debtors' choice of venue.  *See In re Enron Corp.,* 274 B.R. 327,342 (Bankr. S.D.N.Y. 2002).  The Appraisal Districts have not met this burden.

48.    In the Venue Motion, the Appraisal Districts do not contest the validity of the Debtors' choice of forum, but rather assert that "the interests of justice" and "convenience" require a transfer to the United States District Court for the Northern District of Texas, Dallas Division, under sections 1404 and 1412 of the Judicial Code.[32]  (Venue Motion ¶ 6).  The only argument the Appraisal Districts make in support of this assertion is that litigating in this Court

---

[32]    This Court has already considered issues and arguments substantially similar to those raised in the Venue Motion in connection with the *Motion of Wilmington Savings Fund Society, FSB Pursuant to 28 USC. §§1408 and 1412 and Rule 1014 of the Federal Rules of Bankruptcy Procedure to Tranofer Cases to the United States District Court for the Northern District of Texas* [D.I. 5] (the "Motion to Transfer").  The Venue Motion raises no new issues and should be denied for the same reasons this Court denied the Motion to Transfer.

would impose a "logistical and financial burden" on the Appraisal Districts due to the fact that they all are located in Texas. (Venue Motion ¶ 7). The Appraisal Districts do not produce *any* evidence, not even so much as a declaration, in support of this claim. The Venue Motion and its bare assertions thus fall far short of carrying the Appraisal Districts' burden of showing that the balance "strongly favors" setting aside the Debtors' choice of forum, *In re Uslar,* 131 B.R. 22, 23 (Bankr. E.D. Pa. 1991), or that the evidence establishes a clear and proper justification, *In re Holiday Towers, Inc.,* 18 B.R. 183, 187 (Bankr. S.D. Ohio. 1982).

49.     To the contrary, and for all of the reasons discussed above in connection with the Objection to the Abstention Motion, the balance strongly favors this Court retaining jurisdiction in order to promote the economic and efficient administration of the Debtors' estate. *See In re Commonwealth Oil Ref Co.,* 596 F.2d at 1247 ("[T]he most important consideration is whether the requested transfer would promote the economic and efficient administration of the estate."). Perhaps most importantly, this Court, which has a unique expertise in valuing large business assets, is already intimately familiar with many of the facts relevant to valuing the Debtors' power plants. The Appraisal Districts do not posit any credible basis for why the United States District Court for the Northern District of Texas is better equipped to make the determinations requested in the Tax Motion. Moreover, a transfer of venue would burden the Debtors by depriving them of the ability to effectively leverage the significant resources in place in these chapter 11 cases and which will aid them in their efforts to resolve the valuation disputes in a cost-effective and expeditious manner. Indeed, while a transfer of venue would require the Debtors to litigate simultaneously in Dallas while continuing their work before this Court, maintenance of jurisdiction over these matters in this Court would not require the Appraisal Districts to split their attentions and resources among multiple venues. *See In re*

*Enron Corp.*, 274 B.R. 327, 342-43 (Bankr. S.D.N.Y. 2002) ("Where a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed.").

50.     For all of these reasons, the paramount interests of the Debtors and their creditors in the economic and efficient administration of the Debtors' estates will be best served by this Court retaining jurisdiction.  Accordingly, transferring the Tax Motion to the United States District Court for the Northern District of Texas, Dallas Division, is not necessary in the interest of justice or for the convenience of the parties, and the Appraisal Districts' request to transfer venue should be denied.

## III.    The Appraisal Districts' Motion for Partial Dismissal Should be Denied

51.     The Venue Motion also asserts that the Debtors' claim for relief under section 506 of the Bankruptcy Code should be dismissed because the Debtors do not "state claims for which relief can be granted against the [Appraisal] Districts."  (Venue Motion ¶ 8).

52.     The Debtors cited to section 506 of the Bankruptcy Code in their Tax Motion solely to the extent such provision is relevant to the allowance or disallowance of any secured claims in these chapter 11 cases.  As discussed above, the tax claims that will result from the appraised values of the Debtors' plants will be "other secured claims" that will be paid in full in cash or otherwise left unimpaired under the Debtors' proposed plan of reorganization.  For the reasons set forth in the Tax Motion, the Debtors believe the amount of any such claims should be reduced pursuant to section 505 of the Bankruptcy Code.

53.     The Appraisal Districts' request for dismissal of the claim for relief under section 506 of the Bankruptcy Code is in effect an objection to the relief requested in the Tax Motion. For all of the reasons discussed above and in the Tax Motion, their objection should be denied.

## Conclusion

54.     For the reasons set forth above, the Debtors respectfully request that the Court exercise jurisdiction and deny the Abstention Motion and the Venue Motion in all respects, and grant the relief requested in the Debtors' Tax Motion.

RLF1 13134579v.1

Wilmington, Delaware
Dated:  October 8, 2015

    */s/ Joseph C. Barsalona II*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:          (302) 651-7700
Facsimile:          (302) 651-7701
Email:               collins@rlf.com
                        defranceschi@rlf.com
                        madron@rlf.com
                        barsalona@rlf.com


-and-


**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)

601 Lexington Avenue
New York, New York 10022-4611
Telephone:          (212) 446-4800
Facsimile:          (212) 446-4900
Email:               edward.sassower@kirkland.com
                        stephen.hessler@kirkland.com
                        brian.schartz@kirkland.com
-and-


James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:          (312) 862-2000
Facsimile:          (312) 862-2200
Email:               james.sprayregen@kirkland.com
                        marc.kieselstein@kirkland.com
                        chad.husnick@kirkland.com
                        steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*