Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3

4

5   In re:                          :

                                    :     Chapter 11

6   ENERGY FUTURE HOLDINGS          :

    CORP., et al.,                  :     Case No. 14-10979(CSS)

7                                   :

            Debtors.                :     (Joint Administration

8   _____:     Requested)

9

10                                  United States Bankruptcy Court

11                                  824 North Market Street

12                                  Wilmington, Delaware

13

14                                  September 17, 2015

15                                  9:41 AM– 11:211 AM

16

17

18

19

20   B E F O R E :

21   HON CHRISTOPHER S. SONTCHI

22   U.S. BANKRUPTCY JUDGE

23

24

25   ECR OPERATOR:  LESLIE MURIN

1   HEARING RE: Motion of Energy Future Holdings Corp., et al.,

2   to Authorize the Debtors to Enter into and Perform Under the

3   Plan Support Agreement [D.I. 5248; filed August 10, 2015]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    REED SMITH LLP

4         Attorneys for creditor Bank of New York Mellon

5

6    BY:  KURT GWYNNE

7

8    YOUNG CONAWAY STARGATT & TAYLOR, LLP

9         Attorneys for Ad Hoc Committee of TCEH First Lien

10        Creditors

11

12   BY:  PAULINE K. MORGAN, ESQ.

13

14   OFFICE OF THE UNITED STATES TRUSTEE

15

16   BY:  RICHARD L. SCHEPACARTER, ESQ.

17

18   FRIED FRANK

19        Attorneys for Fidelity

20

21   BY:  GARY KAPLAN

22

23

24

25

1   RICHARDS LAYTON & FINGER

2        Co-Counsel to EFHC debtors

3

4   BY:  JASON M MADRON ESQ

5        DANIEL DEFRANCESCHI, ESQ.

6

7   MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

8        Attorneys to Debtors and Debtors in Possession Energy

9        Future Competitive Holidays Company LLC and Texas

10       Competitive Electric Holdings Company LLC

11

12   BY:  DAVID PRIMACK

13

14   CROSS & SIMON LLC

15       Counsel to American Stock Transfer & Trust Co

16

17   BY:  CHRISTOPHER SIMON, ESQ

18

19   O'KELLY ERNST & BIELLI

20       Attorney for EFH

21

22   BY:  DAVID KLAUDER

23

24

25

Page 5

```
 1   JENNER & BLOCK

 2        Attorney for EFIH

 3

 4   BY:  VINCENT LAZAR

 5

 6   WHITE & CASE LLP

 7        Attorney for Ad Hoc Group of TCEH Unsecured Noteholders

 8

 9   BY:  J. CHRISTOPHER SHORE, ESQ.

10        TOM LAURIA, ESQ.

11

12   PAUL WEISS, RIFKIND WHARTON & GARRISON

13        Attorneys for Ad Hoc Committee of TCEH First

14        Lien Creditors

15

16   BY:  ALAN KORNBERG

17        BRIAN HERMANN

18        JACOB ADLESTEIN

19

20   FOX ROTHSCHILD LLP

21        Attorney for Ad Hoc Group of Unsecured TCEH Noteholders

22

23   BY:  JEFFREY M. SCHLERF, ESQ.

24

25
```

1   MORGAN LEWIS

2        Attorneys for PIMCO

3

4   BY:  DAVID SALMANS

5        CHRIS CARTER

6

7   VENABLE LLC

8        Attorney for PIMCO

9

10  BY:  JAMIE L. EDMONSON

11       JEFF SABEN

12

13  PROSKAUER ROSE LLP

14       Counsel to Energy Future Holdings Corp

15

16  BY:  MARK K THOMAS, ESQ.

17       MICHAEL FIRESTEIN

18

19

20       Director of EFH, chair of the audit committee,

21       disinterested director

22       BILLY WILLIAMSON

23

24       Disinterested director

25       DON EVANS

1  KIRKLAND & ELLIS LLP

2      Attorney for Debtors

3

4  BY:  MARK E. MCKANE

5      MARK KEISELSTEIN

6      EDWARD SASSOWER

7      CHAD HUSNICK

8

9  SULLIVAN & CROMWELL LLP

10      Attorney for E-side Committee

11

12  BY:  ANDREW DIETRICH, ESQ.

13      BRIAN D. GLUCKSTEIN, ESQ.

14

15  OFFICE OF THE UNITED STATES TRUSTEE

16

17  BY:  RICHARD L. SCHEPACARTER, ESQ.

18

19  NIXON PEABODY

20      Attorney for EFH Indentured Trustee

21

22  BY:  RICHARD PEDONE

23

24

25

1   DRINKER BIDDLE & REATH LLP

2       Attorney for Citibank, NA, DIP agent

3

4   BY:  HOWARD COHEN, ESQ.

5

6   FOLEY & LARDNER LLP.

7       Attorney for UNB Indentured Trustee

8   HAROLD KAPLAN

9

10   BROWN RUDNICK

11       Attorneys for WSFS Trustee

12

13   BY: JEFFREY JONAS

14

15   ASHBY & GEDDES, P.A.

16       Counsel to Wilmington Savings/WSFS

17

18   BY:  GREGORY TAYLOR, ESQ

19

20   SEWARD & KISSEL LLP

21       Attorneys for Wilmington Trust, TCEH First Lean Agent

22

23   BY:  ARLENE R. ALVES

24

25

1    MUNGER TOLLES & OLSON LLP

2         Attorneys for EFH

3

4    BY:  THOMAS WALPER

5

6    COLE SCHOTZ MEISEL FORMAN & LEONARD, PA

7         Attorney for CSC Trust Company of Delaware

8

9    BY:  J. KATE STICKLES, ESQ.

10

11   PRESENT TELEPHONICALLY:

12   SCOTT L. ALBERINO

13   DESIREE M. AMADOR

14   PHIL ANKER

15   ALISON ASHMORE

16   ASHLEY F. BARTRAM

17   MATTHEW BROD

18   STEPHEN BUMAZIAN

19   EMILY A BUSSIGEL

20   JAE SEON CHOI

21   KEN COLLIER

22   THOMAS CURTIN

23   ADAM M. DENHOFF

24   Michelle DREYER

25   BENJHAMIN D. FEER

```
 1   MOSHE FINK
 2   MARK FLANNAGAN
 3   SCOTT FRIEDMAN
 4   JULIA FROST-DAVIES
 5   MEGGIE GILSTRAP
 6   RICHARD GILLEN
 7   STEVEN GOLDEN
 8   SETH GOLDMAN
 9   ISLEY M. GOSLIN
10   ANNA E. GRACE
11   MATTHEW GREENBERG
12   XIAOYU GU
13   BRIAN GUINEY
14   MARK W. HANCOCK
15   STEPHEN C. HARRIS
16   PAUL HEATH
17   ANGELA K. HERRING
18   PATRICK HOLOHAN
19   NATASHA HWANGPO
20   GARY L. KAPLAN
21   SCOTT E. KOERNER
22   CHARLES KOSTER
23   STUART KOVENSKY
24   ALEXA J. KRANZLEY
25   ARI D. KUNCHSKY
```

```
 1   MICHELLE F. KYROUZ

 2   Kevin LIPPMAN

 3   BENJAMIN LOVELAND

 4   KENNETH MAIMAN

 5   ROBERT MALONE

 6   JONATHAN D. MARSHALL

 7   JEFF MARWIL

 8   MEREDITH P. PARKINSON

 9   DARSHAN PATEL

10   KATHY D. PATRICK

11   BRIAN PFEFFER

12   ABID QUERESHI

13   RACHAEL RINGER

14   DANIEL J. ROEMIEIN

15   MARC B. ROITMAN

16   RAVI SARAWGI

17   ERIC SCHIDER

18   ANDREA B. SCHWARTZ

19   RICHARD A. STEIGLITZ

20   BRAD SWEENEY

21   MARK TAUB

22   ANDREW M. THAU

23   AMER TIWANA

24   BRIAN TONG

25   MATTHEW J. TROY
```

1   CARL TULLSON

2   MATTHEW UNDERWOOD

3   BRADY C. WILLIAMSON

4   JULIA M. WINTERS

5   AUSTIN WITT

6   APARNA YENAMANDRA

7   DANIELE ZAZOVE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  All rise.  Please be seated.  Excuse

3     me.

4              MARC KIESELSTEIN:  Good morning, Your Honor.

5              THE COURT:  Good morning.

6              MARC KIESELSTEIN:  Marc Kieselstein, Edward

7     Sassower, Chad Husnick and Mark McKane, Kirkland & Ellis

8     LLP, on behalf of the debtors.  Your Honor, the only item on

9     the agenda today is the debtor's motion to enter into the

10    plan support agreement.  Your Honor, as we informed the

11    Court yesterday, we have resolved the bulk of the

12    objections.

13             The remaining objections, Your Honor, those of the

14    Bank of New York and the U.S. Trustee's Office are legal in

15    nature and those parties have agreed that no live testimony

16    is required.  I'll address those objections in a moment in

17    the form of argument, Your Honor.

18             Your Honor, with respect to the objections of the

19    EFH Committee, the EFH Indenture Trustee and the EFIH

20    Indenture Trustee, those objections were resolved by the

21    addition of language to the order, primarily in paragraph

22    four, that order was filed last night at Docket Number 6064.

23    I do have copies.

24             Your Honor, in a nutshell, the additional language

25    makes it as clear as we could collectively make it, that

1    granting of the PSA motion should Your Honor grant the

2    motion would be without prejudice to any parties' procedural

3    or substantive objection to either the settlement motion or

4    the plan of reorganization.  That is all for another day

5    namely November 3rd and thereafter.

6              Your Honor, I'd like to leave it at that on that

7    aspect of it lest anyone think I'm trying to put a gloss on

8    the order and feel compelled to respond.  Suffice it to say,

9    Your Honor, the debtors are satisfied with the order as

10   amended as are the other PSA parties and we thank the

11   objectors for working with us so we could resolve their

12   concerns at least as with respect to the PSA motion.

13             Your Honor, we also submitted last night a

14   declaration of Mr. Paul Keglevic at Docket Number 6068.

15   Your Honor, I have copies of that as well if you would like.

16             THE COURT:  It was a short read.

17             MARC KIESELSTEIN:  It was a short read and I'll

18   address that.  As the Court may be aware, there was no

19   declaration that accompanied the original motion.  We

20   anticipated, obviously, the presentation of live testimony

21   and indeed Mr. Keglevic was deposed in anticipation of an

22   evidentiary hearing.  That was obviated happily by virtue of

23   the resolution that I just spoke of.

24             The declaration is purposefully brief and was

25   reviewed by the objecting parties to ensure that it spoke

1    only to those factual elements necessary to satisfy our

2    burden for a motion of this kind, i.e. the appropriate

3    exercise of business judgment.

4            We wanted to be careful not to stray into any gray

5    areas that could be construed as bearing directly on the

6    settlement agreement or the plan.  Again, those are issues

7    for November 3rd and thereafter.

8            Your Honor, Mr. Keglevic, as you know, is the

9    debtor's co-CRO and the Court has heard from him on a number

10   of occasions.  He is in the courtroom today and available

11   should Your Honor have any questions.

12           Now, Your Honor, as I've indicated, the remaining

13   objectors have agreed that no live testimony or cross is

14   necessary with respect to the legal issues that they have

15   raised.  Accordingly and before I inevitably forget, I'd ask

16   for the admission of Mr. Keglevic's declaration into

17   evidence.

18           THE COURT:  Any objection?  Okay.  It's admitted

19   without objection.

20           MARC KIESELSTEIN:  Thank you, Your Honor.  Your

21   Honor, if I may --

22           THE COURT:  I'm sorry.  Just for the formalities,

23   does anyone wish to cross-examine the witness?  Okay.  I

24   hear no one.

25           MARC KIESELSTEIN:  Thank you, Your Honor.  Your

1    Honor, now, I'd like to very briefly cede the podium to Mr.

2    Thomas of the Proskauer firm who has another introduction to

3    make.

4              THE COURT:  Okay.

5              MARK THOMAS:  Thank you.  Good morning, Your Honor

6    --

7              THE COURT:  Good morning.

8              MARK THOMAS:  --Mark Thomas of Proskauer, counsel

9    to EFH, acting on behalf of and at the direction of the

10   disinterested directors, that would be Don Evans and Ms.

11   Billy Williamson.  Your Honor, I'd like to introduce you to

12   Ms. Billy Williamson.

13             THE COURT:  Hello.

14             MARK THOMAS:  Ms. Williamson is a director of EFH.

15   She is the chair of the audit committee and she is the

16   disinterested director.  She's in the courtroom today

17   because we anticipated live testimony.  She was deposed on

18   Tuesday by various parties.  She delivered clear, concise,

19   and credible evidence to support the business judgment of

20   EFH in entering into the PSA.  We're thankful that after

21   that testimony the objections were resolved.  Thank you,

22   Your Honor.

23             THE COURT:  You're welcome.

24             ANDY DIETDERICH:  Andy Dietderich and Brian

25   Glueckstein, Your Honor, for the Official Committee.  We

1    heard the Court about the nature of this hearing and we've

2    worked with the debtor on both the order and the declaration

3    and we're comfortable it doesn't prejudice us with the

4    arguments we have at settlement and confirmation.

5            We thank the debtors for the succinctness of their

6    remarks on the point and I'll keep mine similar.  But, I do

7    want to make clear that this isn't peace, it's sequencing,

8    that we believe what we have to say requires evidence and

9    requires pleadings and wasn't appropriate for today's

10   proceeding.

11           Our objection is stronger than ever and I wanted

12   to take just a minute to give you its essence.  The plan and

13   settlement are an economic unit.  They've been put together

14   by the debtors and everything in this case works only if the

15   EFH creditor is paid.

16           It's what makes it all happen.  It's the central

17   premise of the case.  It's what allows the completion of the

18   estates.  It's what allows Oncor to be sold for effectively

19   the benefit of everybody.  It's what allows a t side veto in

20   the Oncor dispositin process.  It's what allows money to

21   move from E to T to buy peace.

22           All of that works beautifully if the EFH Creditor

23   was paid.  They know this.  That's why we're unimpaired.

24   Unimpairment isn't a gift.  But, they forgot one thing

25   because a deal is price and risk and we will plead and we

1    will prove that both price and risk need to be allocated

2    equitably and until closing risk in this package deal is

3    allocated equitable, the plan isn't confirmable.  I just

4    wanted to make sure Your Honor understood that.  With that,

5    we are happy to kind of cede the battleground today.

6              THE COURT:  Very good.

7              ANDY DIETDERICH:  Thank you.

8              THE COURT:  Thank you.  Okay.  Here we go.

9              RICHARD SCHEPACARTER:  Very briefly, Your Honor.

10   Richard Schepacarter for the United States Trustee.

11             Mr. Kieselstein made reference to an order that

12   was submitted, I think, it was either yesterday or the day

13   before, with respect to the motion -- the plan support

14   agreement motion.  I reviewed paragraph four and I didn't

15   see the U.S. Trustee referenced in paragraph four, so I

16   would ask the parties on the record if they had any

17   objection to adding the United States Trustee to the parties

18   listed in paragraph four.

19             Basically, what it does is it indicates that no

20   parties, including those parties named, are prejudice with

21   respect to objections to either the settlement agreement or

22   to the plan or confirmation of a plan.

23             We intend to object to both the plan and the

24   settlement agreement, so I wanted to make sure and ensure

25   that the United States Trustee isn't somehow prejudiced by

1   not being included in that paragraph.  So, I leave it up to

2   the -- to Your Honor and to the parties.

3          MARC KIESELSTEIN:  Your Honor, not to get into a

4   dialogue with Mr. Schepacarter in front of Your Honor, but

5   I'm not clear if Mr. Schepacarter is suggesting being added

6   to that would resolve his objections for today or not.  I'm

7   just not clear on that.

8          RICHARD SCHEPACARTER:  It doesn't -- well, I'll

9   wait for Your Honor.

10          THE COURT:  Well, go ahead.

11          RICHARD SCHEPACARTER:  Oh, thank you, Your Honor.

12   I just wanted to make sure that the United States Trustee

13   isn't prejudiced even after today with respect to going

14   forward with objections to either the settlement agreement

15   or to the confirmation of the plan.  I just wanted to make

16   sure that including those parties aren't prejudiced, that

17   the United States Trustee is likewise not prejudiced.

18          THE COURT:  I think that the language in paragraph

19   four as revised is consistent with what I have said numerous

20   times and in my mind happy to sign it with it in there, but

21   I think it's redundant because it states what I believe the

22   case to be and that is nothing that happens today or in this

23   order affects substantive rights of anyone in connection

24   with the settlement agreement or the plan or the alternative

25   transaction if that ever comes to be.  I don't think they

1    need to put you in specifically.  I think you're covered

2    generally.

3              RICHARD SCHEPACARTER:  Thank you, Your Honor.

4    Thank you.

5              THE COURT:  Mr. Pedone.

6              RICHARD PEDONE:  Your Honor, Richard Pedone, on

7    behalf of the EFH Indenture Trustee.  I'd like to join Mr.

8    Glueckstein's comments and just state for the record that we

9    are in disagreement with Mr. Thomas' unexpected comments

10   concerning the content of his client's deposition testimony.

11   We don't believe that's part of the record today and that's

12   all.  Thank you.

13             THE COURT:  Very good.

14             MARC KIESELSTEIN:  Your Honor, with that, if I

15   may, I'd like to turn to the arguments on the remaining

16   objections?

17             THE COURT:  Sure.

18             MARC KIESELSTEIN:  I don't think they need to

19   detain us very long, Your Honor.  First, Your Honor, both

20   the Bank of New York and the U.S. Trustee have argued that

21   the PSA constitutes an impermissible solicitation under

22   Section 1125 of the code and, therefore, cannot be approved.

23   We think that objection should be summarily overruled and to

24   demonstrate why I'd like to take a step back.

25             Your Honor, we start with the uncontroversial

1    proposition that Congress in enacting the Bankruptcy Code in

2    1978 was seeking to promote the rehabilitation of distressed

3    companies that offered a good or a service that the

4    marketplace valued.  That is the overriding goal of Chapter

5    11.

6              Your Honor, we next assert that the vehicle for

7    implementing the rehabilitative goals of Chapter 11 is

8    primarily a plan of reorganization and it is also beyond

9    dispute that Chapter 11 is designed to foster consensus and

10   consensual resolution, whether in the context of one-off

11   disputes under Section 363 and Rule 1919 or more globally

12   with respect to the formulation and negotiation of a plan,

13   rehabilitation through a plan with as make stakeholders

14   onboard as possible.  That's bankruptcy 101.

15             As long as I'm in the realm of the obvious, Your

16   Honor, one more truism is that in order to achieve the

17   maximum possible consensus around the rehabilitation of the

18   debtor through a plan, there needs to be free and open

19   communication between a debtor and its key stakeholders.

20             Consensus can't be achieved telepathically or with

21   smoke signals.  It is achieved by sitting down and engaging

22   in negotiation by putting out ideas and concepts and

23   structures and sharing business information with key

24   stakeholders so they can assess and evaluate those ideas and

25   provide ideas of their own.  Indeed, Your Honor, a debtor

1    seeing to retain exclusivity needs to show exactly that sort

2    of engagement with their creditors.  That sort of dialogue

3    is what the bankruptcy code demands of a debtor in position.

4         Almost 30 years ago, the Third Circuit in Century

5    Glove recognized the need for that sort of open dialogue and

6    recognized that solicitation as used in the code is meant to

7    be defined very narrowly.

8         They were quite clear about it and said, "A broad

9    reading of Section 1125 can seriously inhibit free creditor

10   negotiations."  The Century Glove court went on to say that,

11   "The purpose of negotiations between creditors is to reach

12   compromise over the terms of a tentative plan.  The purpose

13   of compromise is to win acceptance for the plan.

14        We see no principle predictable difference between

15   negotiation and solicitation of future acceptances.  We,

16   therefore, reject any definition of solicitation which might

17   cause creditors to limit their negotiations."

18        Your Honor, under the compelling logic of Century

19   Glove, restructuring and plan support agreements have become

20   an important and common tool for bringing stability to

21   cases, particularly large ones, so they can wind their way

22   through the confirmation process with some degree of

23   confidence and visibility into the likely outcome.

24        Your Honor, we have cited a dozen or more orders

25   from the leading jurisdictions where RSAs and PSAs, both pre

1    and post petition, have been routinely approved by courts.

2             The best articulation, Your Honor, of the utility

3    and the appropriateness of support agreements is Judge

4    Shannon's very thorough opinion in Indianapolis Downs.

5             Your Honor, in that case, Judge Shannon was

6    confronted with the same arguments that we confront here --

7    that a plan support agreement that commits a part to vote in

8    the future for a particular plan is a per se violation of

9    Section 1125, Solicitation Requirements.

10            Judge Shannon demolished that argument and many of

11   the things he said in that opinion apply with equal force

12   here.

13            For instance, Judge Shannon noted and I quote,

14   "Congress intended that creditors have the opportunity to

15   negotiate with debtors and amongst each other to the extent

16   their negotiations bear fruit on narrow construction of

17   solicitation affords those parties the opportunity to

18   memorialize those agreements in a way that allows a Chapter

19   11 case to move forward."  That's precisely what has

20   happened here.

21            Your Honor urged the parties to stop their

22   incessant squabbling and jocking and to focus on plan

23   negotiations.  You appointed a mediator to assist the T-Side

24   parties in that endeavor.  Those efforts did bear fruit here

25   and the parties did memorialize their agreement in a way

1    that allows the case to move forward.

2          And by signing of the parties to the PSA, the

3    debtor can move forward with a very time-consuming, broad

4    and expensive solicitation process with a high degree of

5    confidence that so long as the plan that is ultimately

6    solicited conforms to what was agreed to by the signatories,

7    it will actually result in a consensual plan.  It will

8    actually result in accepting impaired classes.

9          Now, in the absence of such an agreement, parties

10   with nothing more than vague assurances of support could

11   change their minds on a whim or sell to someone with a

12   completely different point of view.  That would be

13   antithetical to the rehabilitative purposes of Chapter 11,

14   particular in large and complex cases.  That could result in

15   very expensive and time consuming missteps that serve no

16   good end.

17          Now, to try to escape the compelling logic of

18   Indianapolis Downs, the objectors point to two unreported

19   and unpublished orders from 2002 that appear to have applied

20   a much broader definition of solicitation in the context of

21   support agreements and Judge Shannon made short work of that

22   argument in Indianapolis Downs noting that such orders, "Do

23   not contain any legal analysis and consistent with this

24   Court's practice are of only the most limited, if any,

25   precedential value."  Indeed, we cited a number of orders

1    approving PSAs and RSAs, both pre and post-petition, that

2    post-dated stations holding an NII and they underscored

3    Judge Shannon's point that those unpublished orders have

4    been given little to no weight in this district or any

5    other.

6            Next, Your Honor, the Bank of New York attempts to

7    distinguish Indianapolis Downs on the grounds that that RSA

8    did not contain a specific performance remedy and that the

9    signatories in Indianapolis Downs were formal cosponsors to

10   the deal.

11           Now, I'm sure it was inadvertent but the Bank of

12   New York actually badly miscited the facts of Indianapolis

13   Downs on those two points.  The fact is that the RSA in

14   Indianapolis Downs did provide for a specific performance

15   and the Court spoke about that at some length saying and I

16   quote, "As noted, the record reflects that sophisticated

17   parties negotiated a deal and memorialized that deal in the

18   RSA.  Predictably, it contained a commitment to vote for a

19   plan that embodied that deal.

20           In the absence of such a provision, it does not

21   appear that the parties would have had a deal.  Negotiation

22   and formulation of a plan in a large, complex Chapter 11

23   case such as this one is not a hypothetical exercise.

24           Each party to the RSA wanted and needed to know

25   that their agreement would be memorialized in a plan that

1    enjoyed substantial creditor support in the event the

2    debtors' proposed plan differed materially from what was

3    contemplated by the restructuring support parties.

4              Obviously, they would not be obliged to vote for

5    it, but the plan as filed conformed to the heavily

6    negotiated RSA.  The parties were entitled to demand and

7    rely upon assurances that accepting both votes would be cast

8    by the parties thereto.

9              In fact, there was a specific performance remedy

10   and in most of the orders we cited, the vast majority, there

11   was indeed a specific performance remedy and that makes

12   perfect sense.

13             THE COURT:  I'm sorry to interrupt.  Somebody on

14   the phone is making a lot of noise.  I'm getting a lot of

15   feedback.  Please, mute your phone.  If we continue to get

16   the feedback, I'm going to identify the line and cut you

17   off.  Go ahead.

18             MARC KIESELSTEIN:  Thank you, Your Honor.  Your

19   Honor, similarly, the Indianapolis Downs Court held that

20   notwithstanding the fact that the signatories to the support

21   agreement were not cosponsors.  That wasn't a problem.  That

22   did not mean the agreement ran afoul of 1125.

23             The Board said so because the level of involvement

24   of the parties in that case, the size of their positions,

25   their retention of experienced advisors, and their level of

1    involvement in the case made them the functional equivalent

2    of cosponsors.  Those facts are absolutely present here.

3              That brings me to another point made by Judge

4    Shannon, which is that the limits on solicitation were

5    created and intended to protect small creditors and

6    shareholders, trade creditors, retail bond holders,

7    contractual counterparties, etcetera and to protect them

8    from being bamboozled by a debtor into voting for a plan

9    without the benefit of a court approved disclosure statement

10   containing certain baseline information.

11             Now, who are the counterparties to the PSA here?

12   They are some of the largest, most sophisticated players in

13   the distressed space.  Entities whose very business is the

14   analysis and assessment of these types of distressed

15   situations and restructurings and the buying and selling of

16   large positions in distressed or bankrupt companies.

17             Here, almost all of the signatories to the PSA

18   became restricted, signed NDAs, and conducted extensive

19   diligence, some on their own, some through their advisors,

20   and here we know they're the most sophisticated and able

21   advisors represented the PSA signatories and they had access

22   to information far more voluminous and detailed than

23   contained in any disclosure statement.

24             The idea that 1125 was meant to protect parties of

25   this level of sophistication from being manipulated or

1    mislead by a debtor is simple nonsensical and Judge Shannon

2    did note that dynamic as well.

3            Your Honor, for all of those reasons, we believe

4    that the objection runs contrary to the core principles of

5    Chapter 11, would make this case far more difficult and

6    expensive to move forward, would serve no legitimate

7    purpose, and, in fact, would be contrary to what Chapter 11

8    is meant to accomplish and should be overruled.

9            Your Honor, I don't know if you want to hear the

10   objections on this point or have me go onto other remaining

11   objections.

12           THE COURT:  No.  Why don't you finish your

13   presentation?

14           MARC KIESELSTEIN:  I'll be brief on the remaining

15   objections, Your Honor.  First, Your Honor, the U.S. Trustee

16   has objected to provisions of the PSA regarding certain

17   release and compensation provisions that are contemplated in

18   the plan.  Second, the U.S. Trustee objected to a provision

19   of the PSA that relates to professional fees.  Third, the

20   PCRB Trustee objected to waiver of the 14-day stay.  We'll

21   address -- we did address those points in our reply brief,

22   but let me touch on them briefly.

23           With respect to the U.S. Trustee's objections,

24   again, this is an example of the parties getting ahead of

25   themselves.  Your Honor, it is clear, and paragraph four,

1    makes it painfully clear and Your Honor has already stated

2    it repeatedly.  Nothing related to the plan is being

3    approved today.  Those release provisions, those

4    compensation provisions, which parties have agreed to

5    support are not active until Your Honor approves the

6    documents in which they are contained.

7              Nothing is happening today that prejudices the

8    rights of the U.S. Trustee to raise those arguments of

9    confirmation and you just heard Mr. Schepacarter say that's

10   exactly what he intends to do, raise them at the time of

11   confirmation, at the time of the settlement motion.  Again,

12   we don't think that objection is well founded in dealing

13   with the plan support agreement.

14             With respect to professional fees, Your Honor,

15   same thing is true; entry of this order will not authorize

16   the debtors to pay one penny of professional fees to the

17   signatories.  Those provisions are activated when the

18   settlement agreement is approved if it is approved and are

19   contained as well in the merger agreement in terms of go

20   forward.

21             The settlement agreement contemplates a catch-up

22   payment.  The merger agreement contemplates go forward

23   payments through consummation.

24             Your Honor, none of that is before you today.  All

25   of that is for a later date.  Again, the fact that parties

1    have agreed to support those provisions in the plan is

2    irrelevant to the questions for the objection that is being

3    prosecuted today.

4              Your Honor, with respect to the 14-day stay,

5    again, we think the relief being asked for here is modest.

6    It's not a 363 sale.  It's not a plan itself.  There is no

7    reason to delay the effectiveness of the order.  Your Honor,

8    we want to move forward.  We're on a tight schedule.  That

9    14 day period serves no purposes in this situation and ought

10   to be waived.

11             THE COURT:  Well, is there anything that's set to

12   occur in the next 14 days that won't occur if I don't waive

13   the stay?

14             MARC KIESELSTEIN:  I'm not certain, Your Honor.

15   Other than, there will be a cloud and a shadow hanging over

16   the order.  That's intangible.  I can't point to anything

17   tangible, unless my colleagues have something in mind that

18   I'm not thinking of at the moment, but I do think given the

19   track we're on -- Your Honor, I'm told that there are

20   regulatory filings with the PUC that are pegged off the

21   entry and effectiveness of the PSA order.  Those are

22   targeted to be done by the end of September or earlier, so

23   there, in fact, could be a tangible impact on not going

24   forward and waiving that 14-day period.  Unless Your Honor

25   has questions, that's all I've got.

1          THE COURT:  Nope.  I'm fine.  Thank you.

2          MARC KIESELSTEIN:  Thank you.

3          THE COURT:  Anyone wish to be heard in support of

4     the debtors' position before we turn it over to the

5     objectors?  Mr. Shore, good morning.

6          CHRISTOPHER SHORE:  Good morning, Your Honor.  I

7     won't repeat what was said in our joinder.  I've just got a

8     couple of comments to make.  I hope Your Honor --

9          THE COURT:  By the way, I loved --

10         CHRISTOPHER SHORE:  What?

11         THE COURT:  By the way, I loved your joinder.

12         CHRISTOPHER SHORE:  Thank you, Your Honor.  I hope

13    you know and everybody knows we're trying to get issues

14    resolved in the case and today is proof of that.  In any

15    opportunity we get to try to resolve and keep people focused

16    on recoveries, we do it.

17         Obviously, we hope that moving forward we can

18    convince the U.S. Trustee and the PCRBs that returning to

19    chaos is recovery suicide for everybody in the case and we'd

20    like nothing better than to get to a fully consensual

21    confirmation hearing and we are working to do that.

22         But the gravamen of the two objections that are

23    pending is that both the U.S. Trustee and PCRBs are cloaking

24    themselves in the mantle of merely enforcing the code as a

25    comprehensive scheme even if that means recovery suicide.

1    That there is some larger purpose to be served by finding a

2    solicitation violation here than the success of the plan

3    going forward.  Respectfully, I don't think that's true and

4    I think these are just strategic objections that are being

5    made.

6            We've never seen the U.S. Trustees' Office step in

7    on a solicitation violation and we doubt that the position

8    that's being espoused today is reason policy coming out of

9    DC.  More specifically to this case, if the issue were

10   application of the law to protect the disenfranchised in the

11   EFH capital structure, where were the PCRBs and the U.S.

12   Trustee when the prepetition RSA was being pursued?  That

13   gave the disenfranchised zero.  They took no position on

14   that.

15           Where were they when the cash collateral order was

16   up which had a provision which would have required the

17   disenfranchised to bear all of the administrative expense of

18   the t side?  Where were they when the record was made on

19   corporate governance where there were serious concerns

20   raised as to whether independent directors really had the

21   ability to act independently to protect the disenfranchised?

22   Where were they when Oncor was being auctioned, which

23   would've given all of the upside of Oncor to third-party

24   bidders and taken away from the disenfranchised?

25           In fairness, I don't think that one can sit back

1    and require others to enforce the comprehensive statutory

2    scheme on their behalf at no cost to them and then later,

3    only when it suits a particular strategy, attempt to don the

4    tweed blazer of a law professor and talk about plain meaning

5    and policy no matter what the consequences are in recovery.

6    In sum, I think there's more than enough evidence in the

7    record of these cases for Your Honor to conclude that the

8    solicitation violation arguments that are being made are

9    purely strategic.

10            I'm not going to repeat the law but only add

11   another piece.  There is no claim here that there was any

12   wrongful conduct other than the execution of the PSA.  There

13   are none of the other factors that were in Century Glove

14   that the Third Circuit was dealing with or other cases where

15   courts have found solicitation violations.  This is the most

16   technical of arguments that a prepetition RSA which contains

17   a specific performance remedy, which can only be enforced

18   after the Court has approved the disclosure statement, is

19   per say a solicitation violation.

20            The courts that have addressed that issue either

21   not directly just by entering the orders approving it, which

22   are all cited in the debtors reply, or in Heritage or

23   Indianapolis Downs.  The courts had taken into consideration

24   a whole host of factors.  All of which favor the finding of

25   no solicitation violation.  They have taken into

1   consideration the purpose of the objections.  Again, these

2   are strategic objections that are being made.  This is not

3   an attempt to protect a disenfranchised class that was

4   somehow duped by the debtors, which leads into a point that

5   was raised by Mr. Kieselstein.

6          Courts have taken into consideration the

7   sophistication of the parties and we agree our clients are

8   hardly a disenfranchised class who is uneducated about these

9   cases and was, therefore, duped by the debtors into voting

10  for a plan in an RSA.  Courts have also taken into

11  consideration the amount of disclosure to date in the case.

12  That was specifically relied upon by Judge Shannon in

13  Indianapolis Downs.

14         Here, there's been near constant diligence of the

15  PSA parties to the debtors operations, both going forward

16  and going back.  There was monitoring of all the PSA

17  signatories under the cash collateral order, which has

18  provide real-time reporting of how the business has been

19  operating.  There was obviously the Legacy Discovery

20  database that the PSA parties spent millions of dollars

21  reviewing, which ultimately led to their getting comfortable

22  with entering into the agreement.

23         There was the Oncor data room, which has been made

24  available to people to understand the business going forward

25  and the value of what the parties are purchasing.  There was

1    the oversight of the mediator in all the process, making

2    sure that what was happening here is people were in a fair

3    debate about what was and was not an appropriate resolution

4    of their claims in the case.

5              Finally, the size and complexity of the case has

6    been taken into consideration.  Let me make a pitch of this

7    particular PSA.  We need to get to closure to allow an

8    orderly efficient confirmation hearing.  There are steps

9    that couldn't wait until confirmation to get started.

10             For example, the PSA -- the approval to the --

11   sorry, the application to the PUCT.  The debtors weren't

12   comfortable going to the PUCT until they had a deal.

13   They're not going with a hypothetical deal.  The approval of

14   the PSA provides the deal around which the applications can

15   all be started.

16             Let's be clear of the effect of not doing it.

17   What the PCRBs and the U.S. Trustees' Office are saying is

18   that we should've waited another three months before

19   starting these processes, from the time we entered into a

20   deal and got it approved to the confirmation hearing.

21   Respectfully, I don't understand the argument when one looks

22   at the effect on recoveries.

23             Waiting another three months in these cases to get

24   those approval processes started, not completed but started,

25   runs another three months of dip interest on both sides of

1    the house, second lien interested EFIH, PPI if awardable to

2    any of the e side creditors, legal restructuring expense

3    which is gargantuan in this case, and adequate protection

4    payments.

5              The ability to get out now, lock in sufficient

6    support that the debtors feel comfortable making their

7    regulatory approval requests for a particular deal is part

8    of the consideration which is being used to resolve the

9    cases.  In other words, waiting to have those processes

10   started makes less distributable value and makes it harder

11   to get a deal done.

12             In the end, I don't think that the central tenant

13   of the two objections, that we should be protected from

14   ourselves carries water.  I think it's the other way around.

15   I think the PCRBs certainly need to be told that they need

16   to get serious about their recoveries and move forward with

17   those recovers.

18             Ironically, when one talks about protecting the

19   disenfranchised, the only reason the PCRBs are

20   disenfranchised is because they disenfranchised themselves.

21   There has still not been a single holder of a PCRB who has

22   appeared in this case either individual or through counsel

23   who has the ability to negotiate for a compromise of their

24   principle and interest.

25             In sum, I think the record reflects here that the

1    PSA is appropriate.  There is no solicitation violation and

2    we ask that you grant the motion, Your Honor.

3            THE COURT:  Thank you.

4            ALAN KORNBERG:  Good morning, Your Honor, Alan

5    Kornberg of Paul Weiss, Rifkind, Wharton and Garrison for

6    the Ad Hoc Committee of TCEH First Lien Creditors.  Your

7    Honor, we fully support the debtors' motion and we filed a

8    joinder in the debtors reply to the objections.  People on

9    this side of the aisle have worked tirelessly to build

10   support for restructuring a transaction that will both

11   maximize the value of the debtors' estates and expedite

12   their emergency from Chapter 11.

13            The PSA as you've heard this morning is a

14   critically important milestone in achieving those objectives

15   and its approval is unquestionably in the best interest of

16   these estates.  I don't want repeat the debtors or other

17   arguments, but I did want to respond specifically to one

18   aspect of the U.S. Trustees objection which is critical of

19   several of the required alternative terms as that's defined

20   in the PSA and suggests that the Court should consider the

21   merits of those objections.

22            As Your Honor has said a number of times and we

23   completely agree, consideration of those terms is quite

24   premature.  First of all, an alternative restructuring is

25   not currently before the court.  We hope it's never

```
1    presented to the court.  The t side creditors want to see

2    this deal get done and I suspect if the e side creditors are

3    properly focused on the right objections, they want to see

4    the plan that's before the Court and go effective as well.

5              In fact, Your Honor, in our negotiations, the

6    alternative restructuring was commonly referred to as the

7    booby prize.  It's not in the best interest of our creditor

8    clients and it's not in the best interest of Mr. Shore's.

9    Today is obviously not the time to consider an alternative

10   restructuring.  Today's not the time to consider the plan as

11   Your Honor well knows and it's certainly not a hypothetical

12   plan that may never be presented.

13             The PSA, the plan, and the settlement agreement

14   were, as Your Honor knows, the result in part of the

15   parties' mediation efforts with Mr. [BOROWITZ?].  A major

16   accomplishment of that mediation process was to achieve what

17   we call durability.  That is the parties' agreement that

18   certain commitments to each other would survive a failure of

19   the current plan for whatever reason.  For example, the $550

20   million settlement was a major focus of our mediation

21   efforts.  The reason that that's a great achievement is that

22   if we find ourselves six months down the road at square one,

23   we don't have to start over.  We have in place a blueprint

24   for (indiscernible) 45:53 settlements and that is critical

25   to this case.
```

1          To find ourselves at square one if the plan fails

2     would be an unacceptable outcome.  Our clients are eager to

3     stem the astronomical cost of these cases and to begin the

4     process of optimizing the value of the TCH debtors' assets

5     post Chapter 11.  Your Honor, durability is a very good

6     thing for these cases on these estates.  It was very hard to

7     achieve and, frankly, we think it would be applauded not

8     criticized.  If and only if and when an alternative

9     restructuring is ever presented to the Court, the U.S.

10    Trustee and other parties will be able to test the merits of

11    that transaction, whatever it may be, and their rights are

12    fully preserved.

13          Your Honor, we would ask that you approve the PSA,

14    that we reserve all the questions about the plan or an

15    alternative to a later day when everybody can be heard.

16    Thank you very much.

17          THE COURT:  Thank you.  Mr. Miller, good morning.

18          BRENT MILLER:  Thank you, Your Honor.  Good

19    morning, Brett Miller, Morrison & Forrester on behalf of the

20    T Side Committee.  The T Side Committee supports the entry

21    of the order today and filed a joinder.  I just want to

22    touch on one point raised by the U.S. Trustee in paragraph

23    26 of its objection and I'll quote, "PSA effectively ties

24    the hands of the TCEH Official Committee."  And then goes on

25    to say, "Accordingly, the TCEH Official Committee is

1    prevented from effectively representing its constituents and

2    as such doubt is cast upon the good faith beyond the PSA."

3    This could not be further from the truth.

4         The T Side Committee has been involved in

5    negotiations from the beginning.  One look at our

6    constituency, the first lien deficiency claim, the second

7    liens who are unsecured, the unsecured notes, the PCRBs,

8    trade, and the PBGC, everyone on that list totaling more

9    than $15 billion of debt is onboard with this deal except

10   the PCRBs and, separately, we're working to hopefully try to

11   resolve that issue.

12        The Creditors Committee's hands are not tied.  The

13   Creditors Committee has been in the middle of this.  We've

14   been in the muck with the parties.  We've worked with the

15   disinterested directors and the debtors on the

16   (indiscernible) 48:18 proposals that are key to this

17   settlement.  As a result, I think that paragraph 26 is

18   absolutely false and the Court should not read into it at

19   all.  That's all I have other than to agree on the

20   Indianapolis Downs case and that the Court should approve

21   the relief requested.  Thank you.

22        THE COURT:  Thank you, Mr. Miller.  Mr. Jonas,

23   good morning.

24        JEFF JONAS:  Good morning, Your Honor, Jeff Jonas

25   from Brown Rudnick for the t side second liens.  Your Honor,

1    I'll be very brief.  I won't restate what's been said.  We

2    support approval of the PSA.  We filed a joinder and we'll

3    stand on that.  Thank you, Your Honor.

4              THE COURT:  Thank you.  Mr. Schepacarter?

5              RICHARD SCHEPACARTER:  Thank you, Your Honor, for

6    the record, Richard Schepacarter for the United States

7    Trustee.

8              THE COURT:  Go ahead, I'm sorry.

9              RICHARD SCHEPACARTER:  I wanted to address some of

10   the comments that were made and I think Mr. Kornberg was the

11   one that talked about the alternative transaction.  Before I

12   really get into my argument, I sort of want to focus in on

13   that.  That was sort of a (indiscernible) 49:41 some phrased

14   that was used (indiscernible) 48:43 of our objection in this

15   case in that the alternative transaction--it's a little bit

16   different and I'll get into this in a second, but it's a

17   little bit different than the Indianapolis Downs case

18   because there was no alternative transaction that was

19   already preset in that case.

20              In that case, there was a dual track of a plan,

21   but there was no alternative transaction basically that

22   parties had already agreed to certain terms and conditions

23   that are set forth in this plan support agreement in

24   Sections 6.1, 6.2 and 6.3.  I wanted to address that I want

25   to use that as the focus of my argument.  I wanted the Court

1   to be aware of the fact that that is really where our

2   argument is going with respect to the plan support agreement

3   because as I've stated before, and I think the parties are

4   well aware, there are certain issues with respect to the

5   plan and settlement agreement that we're going to take issue

6   with.  We're taking discovery on and I think that the

7   parties are well aware of those.  Those are the releases,

8   the (indiscernible) 50:53, the payment of the fees, and the

9   management (indiscernible) 50:56.

10          In the alternative transaction, those items

11  survive.  The parties have already agreed to support a plan

12  with all of those aspects in it.  If the plan and the

13  settlement agreement are not approved by Your Honor and this

14  alternative transaction whatever it may be goes forward,

15  it's going forward with those terms already set forth in

16  whatever alternative transaction that's going to be made,

17  whether it be a plan or something else.  Those terms are

18  already set in stone.

19          The issue comes in with respect to the 1125 issue.

20  There's no disclosure statement with that alternative

21  transaction.  They've already agreed to alternative

22  transaction with no disclo -- we have a disclosure statement

23  now and it's being amended and you're going to hear more

24  about that on Monday, but we don't have a disclosure

25  statement with respect to any alternative transaction.

1       That's really the (indiscernible) 51:56 of our objection.

2              As we stated in our objection, the Bankruptcy

3       Codeis a comprehensive federal scheme that governs the

4       entirety of the bankruptcy process.  We objected to the PSA

5       motion because it endorses and sets the framework for an

6       impermissible plan process being the alternative transaction

7       and again this improper solicitation of votes with respect

8       to that alternative transaction under 1125 and the relevant

9       case log.

10             In Indy Downs, the restructuring support agreement

11      was structured a little bit differently than here.  I'm not

12      sure that the judge demolished that, but I think he was able

13      to distinguish it in that case because of the different

14      types of facts.  There was no alternative plan of

15      restructuring in the event that the dual trek plan was

16      defeated.  Also, there was no alternative plan scripted, as

17      I indicated earlier, that bound the parties to a

18      restructuring with the preset terms and conditions, some of

19      which are objectionable under the code.  In that case, there

20      was no committee and there were not that many other

21      unsecured creditors.

22             In Indy Downs, the procedural structure was a

23      little bit different.  In Indy Downs, the objecting parties

24      were seeking to have the court penalize the debtors for the

25      suspected and alleged Section 1125 violations by having the

1    votes designated or not counted.  I think the alternative

2    here, sort of the what happens if the PSA isn't approved by

3    Your Honor, is that it just doesn't get approved.  As I

4    think I'll show in a minute that we really probably don't

5    need the PSA in this case.

6            As I indicated earlier, the PSA in this case goes

7    further than the one in the Indy Downs case because it

8    didn't have that required terms with respect to an

9    alternative transaction.  I think it's interesting to note

10   and I think the Court should note that in the

11   (indiscernible) 54:20 which is a (indiscernible) 54:22.  I

12   think it's been cited in the papers.  The judge in that case

13   did consider to a certain extent the station holdings and

14   the NII holdings.  Judge [WOLWRATH'S?] case from 2002.

15           It, basically, states that -- I'll just read this

16   quote.  "Plan support agreements or lock-up agreements have

17   generally been approved by courts in this and other

18   districts.  In 2002, Judge [WOLWRATH?] entered orders in two

19   cases, station holdings and NII holdings, finding votes of

20   creditors' case pursuant to post-petition plan and support

21   agreements could not be counted because such agreements

22   violate the disclosure and solicitation requirements of

23   Section 1125."

24           "These cases have generally been distinguished on

25   the grounds that the agreements at issue include specific

1    performance provisions, especially providing that monetary

2    damages could not compensate a breach of the agreement

3    meaning the creditors could not later reconsider their

4    preliminary decision after receiving adequate information.

5    Accordingly, courts have reasoned that the plan support

6    agreements in station holdings and NII holdings were

7    impermissible only because the locked up creditors could be

8    forced to vote in favor of the plan regardless of the

9    circumstances, which effectively rendered the agreements

10   into votes and the creditors were there by script of the

11   bankruptcy codes protections against the harm caused by

12   solicitation without court approved adequate information."

13             I make that quote to highlight the fact that under

14   the alternative restructuring that is the situation.  The

15   parties have already -- both the debtors and the creditors

16   have already locked themselves into a situation where they

17   have to vote for a plan and have to propose a plan of this

18   nature.  The debtors would have to propose a plan with all

19   of those terms and conditions which include the payment of

20   fees under Section, I think, 6.1(a), the management

21   incentive plan, the releases, the (indiscernible) 56:28 and

22   the like.  Those are basically tied to do that.  Here, the

23   way I read the PSA, there is a specific performance

24   provision in that so that if the alternative transaction

25   doesn't include those terms and conditions that specific

1  performance could be effectuated and that they would have to

2  do that.

3          With respect to Mr. Miller's comments and there is

4  nothing pejorative about the statement that was made

5  intersection he pleading.  Basically, what I was saying and

6  what I was trying to say was that there's a fiduciary

7  (indiscernible) 57:14 for the debtors, which they've turned

8  as the robust fiduciary out, but the fiduciary out for the

9  Creditors Committee was much narrower with respect to that

10  fiduciary out.

11          In the event that the plan is not consummated,

12  certain creditor and other parties have agreed under the PSA

13  to support the alternative plan of reorganization or the

14  other type of restructuring.  Specifically, if the plan and

15  the settlement agreement are not approved, the consenting

16  interest holders and the other parties under the PSA agree

17  that they will object, delay, impede or take any other

18  action or inaction to interfere with the acceptance and

19  limitation, consummation or amendment or the alternative

20  transaction.

21          Basically, they cannot take any action that is

22  even if the plan and settlement agreement are not approved

23  later this year, they cannot take any other action with

24  respect to alternative restructuring that doesn't include

25  those terms that are set forth in the PSA.  Once the PSA is

1    approved, it appears that valid challenges to the plan and

2    settlement agreement may not be affected.  Despite

3    challenges to the plans release and (indiscernible) 58:43

4    provisions, the management incentive compensation

5    provisions, and the payment of the fees all set forth in the

6    current plan such provisions would ultimately become a part

7    of an alternative restructuring.  The parties should not be

8    given what I'll call as a do over in bankruptcy court.

9              Just to highlight a couple things, under the PSA,

10   the alternative transaction, there are those three things

11   that I had mentioned earlier which are the payment of the

12   fees, which the payment of the fees as we will see later on

13   once we argue the plan and settlement agreement objections,

14   you'll see that the payment of those fees are in

15   contravention of Sections 503, B3, D and B4.  Likewise, the

16   release in (indiscernible) 59:48 that are set forth in the

17   plan, which are also part of the alternative transaction,

18   also are in violation of Third Circuit precedent be it the

19   watching the mutual decision, whether it be (indiscernible)

20   1:00:03 and all of those cases under that.

21             Likewise, with respect to the management incentive

22   plan under the alternative transaction and again with

23   respect to those issues, these are governed by Section

24   503(c).  Again, to the extent that the alternative

25   transaction is part of this plan support agreement, you can

1    see that those sections that I quoted and the issues that

2    are under that plan support agreement are all violative of

3    various code sections that specifically govern those items.

4         Other than that, Your Honor -- if Your Honor has

5    any questions.  Thank you.

6         THE COURT:  Nope.  Thank you.  Mr. Gwynne, I can't

7    see you there.  Oh, there you are.

8         KURT GWYNNE:  Good morning, Your Honor, Kurt

9    Gwynne from Reed Smith on behalf of Bank of New York Mellon

10   as Indenture Trustee for the pollution control bondholders,

11   otherwise known as the PCRBs.  The Bank of New York Mellon

12   objects to the plan support agreement because it is an

13   improper solicitation of votes in violation of the plain and

14   unambiguous language of Section 1125(b) of the bankruptcy

15   code.  There's only one reported decision regarding Section

16   1125(b) that binds this court and that's the Third Circuit's

17   decision in Century Glove.

18        Under that binding precedent, we want to also

19   point out that Third Circuit says, the Court doesn't have

20   discretion with respect to whether Section 1125(b) is

21   violated, but instead, the Court says that whether the

22   provision is violated is not a matter left to the discretion

23   of the bankruptcy court but as a matter of fact and law.

24   Determining whether Section 1125(b) has been violated, we

25   proceed where the Supreme Court said in Hartford

1    Underwriters with the understanding that Congress says in a

2    statute what it means.  It means in a statute what it says.

3    Also, interpreting the Bankruptcy Codeas Your Honor knows in

4    Ron Pear, the Court says whereas here the statutes language

5    is plain, the sole function of the Court is to enforce it

6    according to its terms.

7              Your Honor's recognized those principles as

8    statutory interpretation in many cases including American

9    Home Mortgage and others.  Let's start the analysis where it

10   should begin and end with the plain language of Section

11   1125(b), something that the debtors specifically omit any

12   discussion on.  Section 1125(b) says an acceptance or

13   rejection of -- I'll read this with ellipses, but, "An

14   acceptance or rejection of a plan may not be solicited after

15   the commencement of a case unless at the time of or before

16   such solicitation, it was transmitted to such holder the

17   plan or summary of a plan and a written disclosure statement

18   approved after notice and hearing by the Court."

19             Let's consider the meaning of the word solicit and

20   solicitation as used in Section 1125(b).  According to the

21   Forth Edition Revised of Black's Law Dictionary, which is

22   the version that was in effect when the Bankruptcy Codewas

23   passed, solicitation means asking or enticing and to solicit

24   means to ask for or obtain by asking.  Judge [WOLWRATH?]

25   recognized the plain language of Section 1125(b) in Stations

1    Holding which he declared that the plain language of the

2    term solicitation means asking for a vote, requesting a

3    vote.

4              Courts do recognize that there's a spectrum of

5    communication in a bankruptcy case between the debtor and

6    its creditors.  At one end of the spectrum is the natural,

7    factual statement regarding a plan, which is certainly

8    permissible and not a solicitation.  Permissible

9    communications also include, according to the legislative

10   history, request for opinions, and also on the permissible

11   side of the spectrum is negotiation of plan term.  When

12   debtors' counsel was at the podium, he talked about how

13   important it is to negotiate the formulation and negotiation

14   of a plan.  I agree.  Bank of New York Mellon agrees and

15   that's entirely permissible.  Nothing in Section 1125(b)

16   prohibits that.

17             At the other end of the spectrum, the

18   impermissible end of the spectrum is a request for a vote to

19   accept or reject the plan before a disclosure statement has

20   been approved.  That is a solicitation.  Yes.  In Century

21   Glove, the Third Circuit said that the term solicitation

22   should be read narrowly, not very narrowly as debtors'

23   counsel said, but narrowly on page 101 of Century Glove.

24   But, the Third Circuit said more about what was a

25   solicitation and what was not a solicitation in Century

1    Glove.

2            The Court said that a party does not solicit

3    acceptances.  When it presents a draft plan for the

4    consideration of a creditor, "but does not request that

5    creditor's vote," and the Court said that the party did not

6    solicit acceptances of its plan where it was undisputed that

7    such party "never asked for a vote."  Here, the debtors did

8    more than present a draft plan for consideration.  Here, the

9    debtors did ask for votes in favor of the plan.  The PSA

10   specifically provides in Section 4.1(a) (indiscernible) that

11   the creditor parties to the plan support agreement agree to

12   vote each of their claims, to accept the plan by delivering

13   it's dually executed and completed ballots accepting the

14   plan.  That's as clear and unambiguous a request for an

15   official vote as there can be.

16            In (indiscernible) Section 4.1(a), those creditor

17   parties to the PSA also agreed that they would not change

18   their votes or cause their votes to be changed.  The debtors

19   admit in paragraph 79 of their motion that the PSA not only

20   lays the groundwork for the terms of the plan, which is

21   permissible, but it "also gives the debtors the votes of a

22   significant group of creditors," or in the debtor's words,

23   "A large block of yes votes."  The debtors even describe

24   what they have done is having locked up the other PSA

25   parties in paragraph 64 of the motion.

1            The terms of the plan support agreement and the

2     debtors' description thereof smack of an impermissible

3     solicitation.  In Century Glove, the Third Circuit

4     approvingly cited the in RE: Snyder case which is a

5     bankruptcy court decision that was relied upon by the

6     district court in Century Glove.  In Re: Snyder, the court

7     said that solicitation does not encompass discussions,

8     exchanges of information, negotiations, or tentative

9     arrangements that may lead to the development of the plan or

10    disclosure statement or terms to be included therein.

11            The Court also said that it follows that an

12    unauthorized solicitation would include a specific request

13    for an official vote for or against a plan of reorganization

14    that is made before dissemination of the parties and

15    interests of an approved disclosure statement.  In Section

16    4.1(a), that's exactly what the debtors did.  They made a

17    request for an official vote, a ballot in favor of the plan.

18            While it's true that somewhere along the spectrum

19    of communications between the debtor and the creditor, there

20    is some gray area, but this case involves the far and

21    permissible end of that spectrum, actual requests for votes.

22    In the words of Judge [WOLWRATH?] in NII Holdings if this is

23    not soliciting vote in favor of the debtor's plan, I don't

24    know what is.

25            Bank of New York Mellon requests that the Court

1   enforce that plain language in 1125(b) because to hold

2   otherwise would as Judge [WOLWRATH?] recognized in NII

3   Holdings completely eviscerate Section 1125(b)'s prohibition

4   on solicitation prior to approval of the disclosure

5   statement.  Now, the debtors believe that their improper

6   solicitation is somehow cleansed by the fact that the

7   creditor's votes are conditioned on the subsequent approval

8   by Your Honor of a disclosure statement.

9           Surprisingly, there are a couple courts non-

10  binding decisions that have accepted that contingent, one of

11  which was residential capital, which is distinguishable for

12  other reasons that I'll get into.  That interpretation would

13  render Section 1125(b) to be mere (indiscernible).  The

14  statute does not distinguish between conditional and

15  unconditional solicitations.  In any event, the PSA on

16  Section 1 on page 7 specifically provides that it is

17  immediately effective and binding on each party other than

18  the debtors, which, of course, need court approval.

19          The (inaudible) court like the debtors in this

20  case, Your Honor, failed to appreciate that Section 1125(b)

21  restricts the time when a creditor may be solicited.  In

22  Century Glove, when talking about the 1125(b) prohibition,

23  the Third Circuit specifically emphasized the word time,

24  noting that the prohibition is a time prohibition on when

25  solicitation can occur.  The statute very clearly provides

1    that unless at the time or before such solicitation, a

2    disclosure statement has to be approved.  Here, Your Honor,

3    obviously, had not approved a disclosure statement at the

4    time the debtor solicited the votes in the PSA.

5              Another rule of statutory interpretation is

6    instructive in this case.  In (indiscernible), the Supreme

7    Court said that interpreting the Bankruptcy Codeis a

8    holistic endeavor and that a provision that may be unclear

9    or ambiguous in isolation is often clarified because there's

10   only one permissible meaning that is compatible with the

11   rest of the statute.  Let's look at another provision of the

12   Bankruptcy Codethat supports the plain meaning

13   interpretation of Section 1125(b).  That section is 1125(g).

14             1125(g) of the Bankruptcy Codeprovides a limited

15   exception to the prohibition in Section 1125(b) against

16   post-petition plan support agreements.  Section 1125(g) was

17   an amendment to the code that allowed a debtor that had

18   solicited a plan pre-petition in connection with the

19   prepackaged or prearranged plan to continue that

20   solicitation process post-petition notwithstanding that a

21   disclosure statement had not been approved.  Here, the

22   debtor had a pre-petition RSA, restructuring support

23   agreement.  The debtors' post-petition PSA plan support

24   agreement, however, relates to a different plan and it

25   involves different parties.  I believe, the TCH first lien

1    lenders and the debtors may be the only common parties

2    between the RSA and the PSA.

3            Section 1125(g) provides no exception for the

4    debtors solicitations post-petition under the PSA and the

5    debtors properly do not rely upon section 1125(g), but that

6    section is relevant because it demonstrates that there is

7    only that one limited category of post-petition

8    solicitations that is permissible under the Bankruptcy

9    Codeprior to the approval of the disclosure statement,

10   whether interpreted alone or in conjunction with Section

11   1125(g), the plain language of the Bankruptcy Codeprohibits

12   the debtors post-petition PSA solicitations.

13            In addition to the language of the statute and the

14   binding Third Circuit precedent of Century Glove, the

15   debtors own admissions support the fact that they violated

16   Section 1125.  As we indicated in our objection in Docket

17   Item 737, I won't give Your Honor the title because it's

18   very long, but in paragraph 30 of Docket Item 737, it was a

19   reply that the debtors file.  The debtor said that

20   "solicitation under Section 1125 of the Bankruptcy

21   Codeoccurs only when a party and interest makes a specific

22   request for an official note, either accepting or rejecting

23   a plan of reorganization."  Well, that's exactly what the

24   debtors did here.

25            The debtors requested (indiscernible) parties

1    deliver ballots voting in favor of the third amended plan.

2    The debtors cannot now rewrite Section 1125(b) to permit

3    what they acknowledge was impermissible and (indiscernible)

4    the debtors, respectfully the Court, of course, lacks the

5    authority to rewrite the statute to permit what is plainly

6    impermissible.  A couple months ago in the Asarco case, the

7    Supreme Court recognized that it lacked authority to rewrite

8    the Bankruptcy Codeeven if its interpretation would fall

9    particularly hard on a party.

10            The Court noted its unwillingness to soften the

11   import of Congress' chosen words even if those words led to

12   a harsh result and that was a longstanding unwillingness

13   that is "no less true in bankruptcy than it is elsewhere."

14   As the U.S. Trustee said in its preliminary statement, "No

15   matter how big the case, no matter how much money is at

16   issue, the Bankruptcy Codeshould be enforced in accordance

17   with this plain language."  Now, the debtors make no attempt

18   to terse the plain language of Section 1125(b) and why would

19   they?  The plain language of the code offers them no

20   comfort.  Instead, the debtors try to find comfort in case

21   law.

22            The debtors acknowledge the courts in this

23   district have declined to approve post-petition PSA with

24   specific enforcement provisions including Station Holding

25   and NII Holdings by Judge [WOLWRATH?].  The debtors rely

1    upon the Delaware bankruptcy decision of Indianapolis Downs

2    as supporting their assertion that they're not violating the

3    restructuring support agreement.

4            First of all, Your Honor, to the extent that

5    Indianapolis Downs is contrary to the plain language of the

6    Bankruptcy Codeand a full and fair reading of Century Glove

7    including all the quotes that I've referred to today, the

8    Court should simply reject it.  Secondly, Indianapolis Downs

9    relied heavily upon the bankruptcy courts analysis in the

10   Heritage Organization case.  It was a bankruptcy court

11   decision from the Northern District of Texas in 2007.  Even

12   though the Court declared the bankruptcy court's decision to

13   be dispositive, the bankruptcy court in the Indianapolis

14   Downs didn't technically follow the Heritage Organization

15   court's analysis.

16           In Heritage, the Court distinguished Station

17   Holdings and NII Holdings on the basis that the lockup

18   agreements in those cases were impermissible because they

19   contained specific performance provisions that precluded

20   creditors from later changing their votes.  We hear in

21   Section 14.11, the PSA does provide a remedy of specific

22   performance.  Yes.  In Indy Downs, the plan support

23   agreement contained a specific performance provision.  In

24   the Heritage decision upon which Judge Shannon relied, it

25   did not contain a specific performance provision and that

1   was one of the two factors that was important to the

2   Heritage court.

3          In addition, the Court in Indianapolis Downs

4   recognized that the Heritage court placed special emphasis

5   on the fact that the creditors that were executing the plan

6   support agreement were co-proponents of the plan.  Well,

7   here, the creditors -- in Heritage, the Court said it

8   doesn't make sense to say you're a co-proponent of a plan.

9   What do you have to do, mail the plan to yourself and mail

10  the disclosure statement to yourself before you can agree to

11  vote on it?  Obviously, that's a much different situation

12  than we're presented with here today.

13         Now, in Indy Downs, the bankruptcy court said that

14  it considered the Heritage analysis and reasoning to be

15  dispositive.  Yet, in Indy Downs, the parties that signed

16  the plan support agreement also were not co-proponents of

17  the plan.  The Court really didn't follow the analysis that

18  it said was dispositive in Indy Downs, but, instead, went

19  well beyond that to extend the law in a way that we believe

20  to be well beyond what's permitted under the plain language

21  of the code.

22         By the way, the ResCap decision also did draw a

23  distinction.  Even though in ResCap, the Court bought the

24  argument that if you solicit a vote now contingent upon the

25  future approval of the disclosure statement that that

1    somehow was okay.  The Court in ResCap bought that analysis.

2    I think it's contrary to the plain language of the code,

3    contrary to Century Glove and the emphasis on time that the

4    Court put in that case.  In ResCap, the Court did note that

5    NII Holdings and Stations Holding have been distinguished

6    based on the fact that they did not contain specific

7    performance provisions that the Court noted in ResCap that

8    the parties in that case had the ability to get out of the

9    plan support agreement.

10           Here, of course, the debtors, the committee, will

11   tell you that they have fiduciary outs.  Obviously, other

12   parties that signed the PSA do not.  Well, why does Bank of

13   New York Mellon care?  This is not just something that we

14   consider to be a technicality, not up here with the

15   Professor [ROBE?] or whatever it was that Mr. Shore referred

16   to, but the (indiscernible) revenue bonds were excluded says

17   Your Honor (indiscernible) form sharing in the TCEH first

18   lien claimant's waiver of their deficiency.  They waived it

19   for all the other creditors, for trade creditors, for the

20   TCEH second liens, for the TCEH unsecured ad hoc groups, but

21   the pollution control revenue bondholders are excluded from

22   sharing in that waiver.

23           The problem with this PSA is that the terms of it

24   cannot be modified without the agreement of the other

25   parties.  We have a situation where we were not included and

1    if the PSA is approved unless all the parties agree, the

2    terms of the definitive documents can't be changed.  If the

3    PSA is not approved by Your Honor, we would hope that Mr.

4    Sawyer, the disinterested director, would not agree to this

5    type of agreement again and, hopefully, we would have an

6    opportunity to discuss with him our views as to why we

7    should be able to share in that deficiency claim.  This is

8    not a technicality for us, Your Honor.  It's a real issue

9    that we believe has importance in this case.

10            With respect to the debtors request to waive the

11   14-day state in Rule 6004(h), the purpose of that rule is to

12   give folks sufficient time to request a stay pending appeal

13   and in the (indiscernible) Basement case, the Court said

14   that the Court should eliminate or reduce a 14-day stay

15   period only upon a showing that there is a sufficient

16   business need to close the transaction within the 14-day

17   period.  The debtor can make his regulatory filings and do

18   the other things that it needs to do without waiving that

19   stay.

20            There's no basis or assertion of any justification

21   for waiving the say.  Bank of New York Mellon believes that

22   Your Honor should deny that as well.  In conclusion under

23   the plain language of Section 1125(b), whether alone or

24   interpreted together with 1125(g), under the Third Circuit's

25   binding decision in Century Glove, under Judge [WOLWRATH'S?]

1   decisions -- by the way, while her orders are terse, there

2   was significant discussion by Judge [WOLWRATH?] on the

3   record in both of those cases and we've attached those

4   transcripts as Exhibit A and B to our objection.

5          Under those decisions, under the debtors own prior

6   admissions in documents filed with this Court, the PSA does

7   constitute an improper solicitation and should not be

8   approved by this Court.  It does not mean that the Court has

9   to address at this time designation of votes under 1126(e)

10  and that, by the way, is something that under the code cases

11  (indiscernible) the Court has discretion to deal with.  The

12  obligation to support the plan and the settlement agreement

13  would be eliminated if the PSA was disapproved so that the

14  issue of designation of votes may be irrelevant.  That's all

15  I have, Your Honor, unless the Court has any questions.

16          THE COURT:  No.

17          KURT GWYNNE:  Thank you.

18          MARC KIESELSTEIN:  Your Honor, very briefly.  With

19  respect to Mr. Schepacarter's argument with regard to

20  alternative transaction terms, Your Honor, there is nothing

21  unusual or inappropriate about parties agreeing to some of

22  the anchor provisions of a future plan that has yet to be

23  fully flushed out.  We submit that if we came in and we were

24  only talking about the alternative plan transaction and

25  those required terms, that would be perfectly appropriate

1    and, obviously, no one could say we're soliciting votes in

2    favor of that plan because that plan beyond this anchor

3    provisions would need to be fully flushed out in terms of

4    how people are going to get treated, what their recovers are

5    going to be, so by no definition could that be -- even Mr.

6    Gwynne's definition could that be deemed a solicitation.

7    All parties are doing is agreeing and Mr. Kornberg emphasis

8    on some very important terms that would govern the

9    parameters of a plan in the future.  That plan does not yet

10   exist.  I think that disposes of that argument.

11           With regard to Mr. Gwynne, Your Honor, I think

12   essentially he repeated almost word for word his entire

13   objection.  I'm going to try to be a little briefer than

14   that.  Our view is that Century Glove was clear in

15   annunciating the principle that solicitation should be

16   narrowly construed for these purposes.  Solicitation is

17   essentially a term of art under the Bankruptcy Code.  It's

18   talking about going out and formally getting people's votes

19   for a plan after a disclosure statement has been approved,

20   getting people to commit to vote if, in fact, the disclosure

21   statement is approved, and getting people to commit that if

22   a plan conforms to what they agree to, they will vote for

23   it.  That is not solicitation as Century Glove instructed it

24   to construe and as Judge Shannon correctly construed it in

25   the Indy Downs case, Your Honor.

```
 1              I think Mr. Gwynne's real complaint and he sort of
 2      fessed up at the end was that we didn't impermissible
 3      solicit his client and involve them in discussions and get
 4      them onboard for something that they would find more
 5      satisfactory.  Tweed blazer or not, Your Honor, I think
 6      that's really what's going on there.  Again, I think the
 7      dictionary definition of solicitation is not the same thing
 8      as plain meaning when the code uses it as a term of art in
 9      many context.  Your Honor, we think that objection should be
10      overruled as well.
11              THE COURT:  Thank you.
12              CHRISTOPHER SHORE:  Chris Shore on behalf of the
13      Ad Hoc Group.  Actually, I believe Mr. Gwynne's legitimate
14      beef is that he represents three percent of a class of
15      unsecured creditors at TCEH so whatever happens, whether
16      we're under this plan or some future hypothetical plan, his
17      clients are going to have three percent of the votes and
18      he's never going to be able to dictate the recovery at those
19      estates.
20              MR. SHORE:  But let me focus on two pieces of the
21      record to highlight to Your Honor.  Let's be clear, there is
22      no specific performance of any votes until after delivery of
23      an approved disclosure statement.  That's in Section 4.1(a)
24      of the agreement, which is legended at the top that it is
25      not a solicitation of votes.  There will be no solicitation
```

1     until the disclosure statement is approved.

2            Mr. Gwynn's only argument is that that's

3     (indiscernible).  That really doesn't matter, the timing

4     doesn't matter and he highlighted Century Glove, Century

5     Glove, Century Glove right after the statement that it's to

6     be construed narrowly, it does say narrowly, not very

7     narrowly.  The Third Circuit came out and disabused anybody

8     of that notion that you shouldn't be focusing on the future.

9            They said the purpose of negotiations between

10    creditors is to reach a compromise over the terms of a

11    tentative plan.  The purpose of compromise to win -- is to

12    win acceptance for the plan.  We find no principled

13    predictable difference between negotiations and solicitation

14    of future acceptances.

15           The Third Circuit is directly talking about them.

16    Remember what was happening in Century Glove is a creditor

17    was out seeking to solicit votes for a future plan that was

18    going to be filed based on a contingency.  If the debtor's

19    plan is voted down, this is the plan we want to do.  Is

20    there any problem with that and the Third Circuit said very

21    clearly no principle decis -- distinction there.  Of course

22    it's going to be dealing with future events.

23           If and to the extent that the court approves a

24    disclosure statement and it is delivered to the PSA parties,

25    then the debtors will have the right to enforce those vote

1    provisions.

2            Second, it sounded like the U.S. Trustee was

3    making an attack on the debtor's business judgment.  Well,

4    there's no problem.  You don't have to do anything now.

5    Don't approve the PSA.  And I draw your attention to Section

6    4.3(a) of the PSA and all the things the debtors need to

7    start doing immediately, which includes getting regulatory

8    approval as soon as possible.

9            There is a ton of work that needs to get done.

10   The debtors want to know before I go to all my regulatory

11   bodies and start talking about a deal I need to know I have

12   a deal.  That's what the PSA does and that's what we're

13   trying to get done here.

14           There's a ton of work to get done.  We just can't

15   sit back and wait until we get to a confirmation hearing.

16           So, unless Your Honor has any further questions,

17   that's all I've got.

18           MR. MILLER:  Sorry, Your Honor, one more point.

19   Brett Miller, Morrison & Forester on behalf of the T-Side

20   Committee.

21           With regard to Mr. Gwynn's concern that the PSA

22   locks in the PCRB distribution and it cannot be changed

23   without agreement by all the parties, this is something that

24   the committee is actually very involved in and has been

25   talking to the mediator, Mr. Sho -- talking to Mr. Shore,

1    talking to Mr. Walper, talking to the debtors about trying

2    to resolve the PCRB issue and if we are successful in

3    resolving it, whether it's with the mediator or not, we will

4    endeavor to work with all the parties to get the documents

5    changed to reflect the change.  Thank you.

6            THE COURT:  There's a person in the back who keeps

7    signaling to me, apparently he wishes to be heard.

8            MR. TROWLEN:  Hi. My name is Jim Trowlen and I'm a

9    Pollution Control bondholder, retail investor like many

10   others that are out there.  And I fully support what Mr.

11   Gwynn is doing here today and just looking at what's been

12   put out, as an unsecured creditor to be treated differently

13   doesn't seem fair and that's why we support Mr. Gwynn.

14           THE COURT:  Okay. Thank you.  All right, thank you

15   everyone for your so -- submissions, both in writing and

16   orally and they all were -- they all were excellent and very

17   helpful to the Court.

18           First of all, dealing with the motion as a whole,

19   I think it important to note, you know, what I'm being asked

20   to do today and what I'm not being asked to do today and I'm

21   being asked to approve the debtor's entry into the polu --

22   the plan support agreement.  That's what I'm being asked to

23   do.

24           It's outside the ordinary course of business under

25   363 it requires court approval.  I'm not being asked to

1    approve anybody else's entry into the PSA, including the

2    Official Committee's entry into the PSA.  That approval

3    isn't required nor is it being solicited from the Court.

4              In deciding whether or not the debtors should be

5    allowed to enter into the PSA, it's a question of whether

6    the debtors have made a reasonable exercise of their

7    business judgment -- again, a narrow issue in front of the

8    Court.

9              There is no question based on the uncontested

10   record before the Court and the arguments made in support of

11   the motion that the debtor's entry into the PSA is a

12   reasonable exercise of the debtor's business judgment and

13   that's really the beginning, middle and end of the analysis

14   that the Court has to deal with.

15             Now, there are a number of objections remaining to

16   the debtor's entry into the polu -- the plan support

17   agreement and basically filed by Bank of New York-Mellon on

18   behalf of the Pollution Control Revenue Bonds and the Office

19   of the United States Trustee.

20             And the primary objection raised is that the Court

21   should not approve the debtor's entry into the PSA because

22   the PSA is a solicitation of votes under -- for a plan of

23   reorganization prior to approval of a disclosure statement.

24             Now, I'm not sure that this is the proper

25   procedural mechanism or, excuse me, procedural point to

1   raise an improper solicitation objection.  Again, the

2   question is whether entry into the PSA is a reasonable

3   exercise of the debtor's business judgment.  The actual plan

4   is not in front of the Court.  There's no actual request to

5   designate votes.

6          Until I actually have a plan or a request to

7   designate votes I don't really have a controversy over how

8   those votes were solicited.  I'm not even sure I need to get

9   into it, but I'll address it on its merits in any event.

10          The argument here is basically one of plain

11   meaning, that solicitation means solicitation and you can't

12   do it before the disclosure statement is approved and, of

13   course, the reliance is on the Century Glove decision of the

14   Third Circuit, which is clearly controlling here.

15          I do not believe nor do I find that what occurred

16   here today was actually a solicitation as defined under

17   Section 1125 of the Bankruptcy Code and I look to the plain

18   meaning of solicitation as it exists under the Bankruptcy

19   Code in making that decision.

20          In my mind and in my holding, solicitation means

21   the formal sending out of ballots to parties in support of a

22   plan asking them to vote on those ballots, mark yes or no

23   and send them back for counting in connection with approval

24   of the plan.

25          That's not what is going on here.  Even though the

1    PSA contains obligations in the event certain conditions

2    exist, for the parties to do that, that's not actually

3    what's being done.  That may be a fine distinction, but an

4    important one -- an important one given the Third Circuit's

5    acknowledgement of the importance of promoting a negotiation

6    and coming up with a plan of reorganization and it's

7    directed to narrowly construe the definition of

8    solicitation.

9              This is, and Mr. Shore pointed that out at the

10   end, more akin to a solicitation of future acceptances which

11   the Third Circuit specifically allows as opposed to a

12   solicitation of votes on the plan.

13             Now to the extent that the NII Holdings case and

14   the Stations Holding cases, the oral rulings by Judge

15   Walrath hold otherwise, I disagree and I disavow those

16   Holdings in their entirety.

17             I believe that Judge Shannon's opinion in

18   Indianapolis Downs is on all fours and I agree completely,

19   endorse and adopt his holding.

20             I also think the attempts to distinguish

21   Indianapolis Downs from this case or the Heritage

22   Organizations case are unavailing.

23             One of the things Judge Shannon talks about in

24   Indianapolis Downs is looking at the parties that are being

25   bound by the actions that's being taken here.  To say that

1    the parties who are signatories to the plan support

2    agreement are sophisticated is an understatement.  To say

3    that they're not informed about the facts and circumstances

4    surrounding this case is an even greater understatement.

5              You know, frankly, I don't even think we need a

6    disclosure statement when it comes to the parties who have

7    voted -- have voted by -- have voted, who have signed the

8    PSA.  Certainly disclosure statements are important.

9    Obviously a condition to confirmation, you can't do it

10   without it and we will have one, but the idea of a

11   disclosure statement is not designed to protect parties like

12   the signatories in this case.

13             Addressing some of the more specific arguments

14   made by the UST and by Bank of New York-Mellon, one of the

15   things the UST focuses on is the fact that there's no

16   disclosure statement at all with the alternative transaction

17   as opposed to a pending disclosure statement which may or

18   may not be approved Monday -- Monday? Monday.

19             But I don't think that's the case because the

20   existing of a pending disclosure statement is not the

21   determinate factor.  The factor is whether a solicitation is

22   occurring prior to the approval of a disclosure statement.

23   It doesn't matter whether the disclosure statement is on the

24   verge of being approved or whether it hasn't even been

25   written.  The real issue here is there's no actual

1    solicitation, not how far along the disclosure statement

2    exists.

3              There's also an argument made by Mr. Schepacarter

4    and Mr. Gwynn that we don't really need the PSA.  Now I

5    couldn't disagree more that we don't need the PSA.  If we're

6    going to move from where we are today to a hearing on the

7    substance of confirmation and the settlement agreement in

8    November, the PSA is absolutely critical and failure to

9    approve it, I believe, would severely hamper the ability to

10   move to a hearing on confirmation.

11             Now we may or may not confirm that plan and there

12   are elements that have been raised by Mr. Schepacarter in

13   particular, but also the E-Side committee that are fair

14   issues, important issues and issues that are in play and I

15   haven't made up my mind on those.

16             But we have a plan filed during the exclusive

17   period and the only way we get to confirmation in my mind is

18   if the PSA is approved.  And the progress that has been made

19   to get us to a point where we can talk about the details of

20   confirmation or whether confirmation is appropriate at all,

21   the progress to get there has been phenomenal, a result of a

22   lot of hard work and to not approve the PSA I think would be

23   disastrous for hopefully a resolution -- at least a

24   resolution to get us to the point where we have a plan

25   that's going to be in front of the Court and able to be

1    decided on the merits.

2          You know, at the end of the day a couple sort of

3    comments in response to the Bank of New York-Mellon's

4    specific points, I think we forget, and maybe lose focus on

5    the fact, Bank of New York-Mellon loses focus on the fact,

6    that Century Glove actually found there was no solicitation.

7    Century Glove has limitations in the language, but let's

8    look at what happened there.

9          The judge -- the judge -- the court in that

10   instance said there was no solicitation going on.  So it's

11   not like Century Glove is setting, you know, a precedent f

12   or not approving these types of agreements.

13         Also it think at heart, and this goes to the plain

14   meaning argument, to hold that there was solicitation going

15   on under the facts of this case I think would elevate form

16   over substance and lead to an absurd result.  And remember

17   in our plain meaning analysis, absurd result means we don't

18   necessarily file the plain meaning.

19         I think what -- I'm ruling consistent with plain

20   meaning, but to hold otherwise would elevate form over

21   substance, lead to an absurd result with great adverse

22   effect on the debtor's estates.

23         So for those various reasons, I overrule the

24   objection in connection with the solicitation.

25         The issues the Office of the Trustee relays --

1    relates raises, excuse me, in connection with releases,

2    professional fees, management incentive plan are all

3    premature issues for today.  They will be dealt with on the

4    merits at confirmation of a plan to the extent they're still

5    in a plan somebody brings before the Court.

6            I've already offered some very preliminary sort of

7    side comments on the fees issue.  I recently ruled on scope

8    of exculpation that's permissible or not permissible in a

9    different case.  Those issues will play into what happens

10   when we get to the confirmation hearing, but they're not in

11   front of the Court today.

12           With regard to the waiver of the stay, it kind of

13   puts it back where -- the question is one of cause.  Is

14   there cause to waive the stay here?  I find that there is

15   because there are important steps that need to be taken

16   immediately in order to get to a timely confirmation hearing

17   and a timely effective date if confirmation is approved.

18           A transaction doesn't have to close, but the

19   closability, I'm making up a new word, the transaction in a

20   timely fashion requires actions to be taken now as opposed

21   to later.

22           So, I do find that there's cause to waive the stay

23   and there is nothing that's going to happen in connection

24   with closing a transaction that will prejudice any party

25   that wants to appeal from this Court's ruling from getting

1    relief from the appellate court.  Again, we're not at

2    confirmation tomorrow.  All that's going to happen is we're

3    going to start the public utility process and we're going to

4    lock in the PSA so people know where they are and going

5    forward and we can continue the process of getting to

6    confirmation.

7              So I will waive the stay provided for in the

8    statute.  So I will overrule the objection of the Office of

9    the U.S. Trustee and that of Bank of New York-Mellon in its

10   entirety.

11             Just to touch on, finally, the issue raised by the

12   gentleman who is a holder of the PCRBs, whether or not the

13   plan is fair, whether or not the plan is confirmable,

14   whether there is unfair discrimination, whether the

15   confirmation standards can or can't be met is a question for

16   confirmation, not for today, and it's one that's fully

17   presumed.

18             So, with that I will approve the PSA.  I am

19   satisfied with the form of order and if you'll sign up a

20   clean copy I'll sign it.

21             MR. THOMAS:  Your Honor, we're doing some final

22   cleanup of a couple of (indiscernible), so if it's all

23   right, we'll submit that to chambers under COC this

24   afternoon.

25             THE COURT:  That's fine.

1          MR. THOMAS:  Thank you, Your Honor.

2          THE COURT:  You're welcome.

3          MR. THOMAS:  That's all we've got.

4          THE COURT:  Anything else for today?  All right,

5    very good.  I will see some of you here, some of you on the

6    phone tomorrow at noon and I'll see some of you in Court

7    Monday at 9:30.

8          MR. SHORE:  Tomorrow at 3:00.

9          THE COURT:  Tomorrow at 3:00.  Mr. Shore is my

10   personal assistant.  Oh, tomorrow at 3:00.  That's a whole

11   other matter.  That's whole other case.  I know I'll see Mr.

12   Sassower there, but that's something else.  We're adjourned.

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 76

1                          I N D E X

2

3                            RULINGS

4                                              Page       Line

5    HEARING RE: Motion of Energy Future        84         7

6    Holdings Corp., et al., to Authorize

7    the Debtors to Enter into and Perform

8    Under the Plan Support Agreement

9    [D.I. 5248; filed August 10, 2015]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5     Sonya

6     Ledanski Hyde

7

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde,
o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2015.09.18 10:50:58 -04'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  September 17, 2015

**&**

**&**   3:8 4:1,7,14,15
4:19 5:1,6,12 7:1,9
8:1,6,15,20 9:1,6
13:7 39:19 65:19

**1**

**1**   53:16
**10**   2:3 76:9
**101**   21:14 50:23
**11**   1:5 21:5,7,9
23:19 24:13 25:22
28:5,7 37:12 39:5
**1125**   20:22 22:9
23:9 26:22 27:24
42:19 43:8,25 44:23
48:14,16,20,24
49:11,12,20,25
50:15 53:1,3,13,20
53:22 54:13,13,14
54:15,16 55:3,5,11
55:16,20 56:2,18
60:23,24 68:17
**1126**   61:9
**11501**   77:23
**11:211**   1:15
**14**   28:20 30:4,9,12
30:24 60:11,14,16
**14-10979**   1:6
**14.11**   57:21
**15**   40:9
**17**   1:14 77:25
**1919**   21:11
**1978**   21:2
**1:00:03**   47:20

**2**

**2002**   24:19 44:14,18
**2007**   57:11
**2015**   1:14 2:3 76:9
77:25
**26**   39:23 40:17

**3**

**30**   22:4 55:18
**300**   77:22
**330**   77:21

**363**   21:11 30:6
66:25
**3:00**   75:8,9,10
**3rd**   14:5 15:7

**4**

**4.1**   51:10,16 52:16
63:23
**4.3**   65:6
**45:53**   38:24
**48:18**   40:16
**48:43**   41:14
**49:41**   41:13

**5**

**503**   47:15,24
**50:53**   42:8
**50:56**   42:9
**51:56**   43:1
**5248**   2:3 76:9
**54:20**   44:11
**54:22**   44:11
**550**   38:19
**56:28**   45:21
**57:14**   46:7
**59:48**   47:16

**6**

**6.1**   41:24 45:20
**6.2**   41:24
**6.3.**   41:24
**6004**   60:11
**6064**   13:22
**6068**   14:14
**64**   51:25

**7**

**7**   53:16 76:5
**737**   55:17,18
**79**   51:19

**8**

**824**   1:11
**84**   76:5

**9**

**9:30**   75:7
**9:41**   1:15

**a**

**abid**   11:12
**ability**   32:21 36:5
36:23 59:8 71:9
**able**   27:20 39:10
43:12 60:7 63:18
71:25
**absence**   24:9 25:20
**absolutely**   27:2
40:18 71:8
**absurd**   72:16,17,21
**accept**   50:19 51:12
**acceptance**   22:13
46:18 49:12,14
64:12
**acceptances**   22:15
51:3,6 64:14 69:10
**accepted**   53:10
**accepting**   24:8 26:7
51:13 55:22
**access**   27:21
**accompanied**   14:19
**accomplish**   28:8
**accomplishment**
38:16
**accurate**   77:4
**achieve**   21:16 38:16
39:7
**achieved**   21:20,21
**achievement**   38:21
**achieving**   37:14
**acknowledge**   56:3
56:22
**acknowledgement**
69:5
**act**   32:21
**acting**   16:9
**action**   46:18,21,23
**actions**   69:25 73:20
**activated**   29:17
**active**   29:5
**actual**   52:21 68:3,4
70:25
**ad**   3:9 5:7,13,21
37:6 59:20 63:13
**adam**   9:23

**add**   33:10
**added**   19:5
**adding**   18:17
**addition**   13:21
55:13 58:3
**additional**   13:24
**address**   13:16 14:18
28:21,21 41:9,24
61:9 68:9
**addressed**   33:20
**addressing**   70:13
**adequate**   36:3 45:4
45:12
**adjourned**   75:12
**adlestein**   5:18
**administration**   1:7
**administrative**
32:17
**admission**   15:16
**admissions**   55:15
61:6
**admit**   51:19
**admitted**   15:18
**adopt**   69:19
**adverse**   72:21
**advisors**   26:25
27:19,21
**affords**   23:17
**afoul**   26:22
**afternoon**   74:24
**agenda**   13:9
**agent**   8:2,21
**ago**   22:4 56:6
**agree**   34:7 37:23
40:19 46:16 50:14
51:11 58:10 60:1,4
62:22 69:18
**agreed**   13:15 15:13
24:6 29:4 30:1
41:22 42:11,21
46:12 51:17
**agreeing**   61:21 62:7
**agreement**   2:3
13:10 15:6 18:14,21
18:24 19:14,24 23:7
23:25 24:9 25:25
26:21,22 29:13,18

29:19,21,22 34:22
38:13,17 41:23 42:2
42:5,13 43:10 45:2
46:15,22 47:2,13,25
48:2,12 51:11 52:1
54:23,24 57:3,23
58:6,16 59:9,24
60:5 61:12 63:24
65:23 66:22 67:17
70:2 71:7 76:8
**agreements** 22:19
23:3,18 24:21 44:16
44:16,21,21,25 45:6
45:9 54:16 57:18
72:12
**agrees** 50:14
**ahead** 19:10 26:17
28:24 41:8
**aisle** 37:9
**akin** 69:10
**al** 1:6 2:1 76:6
**alan** 5:16 37:4,4
**alberino** 9:12
**alexa** 10:24
**alison** 9:15
**alleged** 43:25
**allocated** 18:1,3
**allow** 35:7
**allowed** 54:17 67:5
**allows** 17:17,18,19
17:20 23:18 24:1
69:11
**alternative** 19:24
37:19,24 38:6,9
39:8,15 41:11,15,18
41:21 42:10,14,16
42:20,21,25 43:6,8
43:14,16 44:1,9
45:14,24 46:13,19
46:24 47:7,10,17,22
47:24 61:20,24
70:16
**alves** 8:23
**amador** 9:13
**ambiguous** 54:9
**amended** 14:10
42:23 56:1

**amendment** 46:19
54:17
**amer** 11:23
**american** 4:15 49:8
**amount** 34:11
**analysis** 24:23
27:14 49:9 57:9,15
58:14,17 59:1 67:13
72:17
**anchor** 61:22 62:2
**andrea** 11:18
**andrew** 7:12 11:22
**andy** 16:24,24 18:7
**angela** 10:17
**anker** 9:14
**anna** 10:10
**annunciating** 62:15
62:17
**anticipated** 14:20
16:17
**anticipation** 14:21
**antithetical** 24:13
**anybody** 64:7 67:1
**aparna** 12:6
**apparently** 66:7
**appeal** 60:12 73:25
**appear** 24:19 25:21
**appeared** 36:22
**appears** 47:1
**appellate** 74:1
**applauded** 39:7
**application** 32:10
35:11
**applications** 35:14
**applied** 24:19
**apply** 23:11
**appointed** 23:23
**appreciate** 53:20
**appropriate** 15:2
17:9 35:3 37:1
61:25 71:20
**appropriateness**
23:3
**approval** 35:10,13
35:24 36:7 37:15
41:2 53:4,7,18 55:9
58:25 65:8 66:25
67:2,23 68:23 70:22

**approve** 39:13
40:20 56:23 65:5
66:21 67:1,21 71:9
71:22 74:18
**approved** 20:22
23:1 27:9 29:3,18
29:18 33:18 35:20
42:13 44:2,3,17
45:12 46:15,22 47:1
49:18 50:20 52:15
54:2,3,21 60:1,3
61:8 62:19,21 63:23
64:1 68:12 70:18,24
71:18 73:17
**approves** 29:5
64:23
**approving** 25:1
33:21 72:12
**approvingly** 52:4
**area** 52:20
**areas** 15:5
**argue** 47:13
**argued** 20:20
**argument** 13:17
23:10 24:22 35:21
41:12,25 42:2 58:24
61:19 62:10 64:2
68:10 71:3 72:14
**arguments** 17:4
20:15 23:6 29:8
33:8,16 37:17 67:10
70:13
**ari** 10:25
**arlene** 8:23
**arrangements** 52:9
**art** 62:17 63:8
**articulation** 23:2
**asarco** 56:6
**ashby** 8:15
**ashley** 9:16
**ashmore** 9:15
**asked** 30:5 51:7
66:19,20,21,22,25
**asking** 49:23,24
50:2 68:22
**aspect** 14:7 37:18

**aspects** 42:12
**assert** 21:6
**assertion** 57:2
60:20
**assess** 21:24
**assessment** 27:14
**assets** 39:4
**assist** 23:23
**assistant** 75:10
**assurances** 24:10
26:7
**astronomical** 39:3
**attached** 61:3
**attack** 65:3
**attempt** 33:3 34:3
56:17
**attempts** 25:6 69:20
**attention** 65:5
**attorney** 4:20 5:2,7
5:21 6:8 7:2,10,20
8:2,7 9:7
**attorneys** 3:4,9,19
4:8 5:13 6:2 8:11
8:21 9:2
**auctioned** 32:22
**audit** 6:20 16:15
**august** 2:3 76:9
**austin** 12:5
**authority** 56:5,7
**authorize** 2:2 29:15
76:6
**available** 15:10
34:24
**awardable** 36:1
**aware** 14:18 42:1,4
42:7

**b**

**b** 1:20 11:15,18
48:14,16,20,24
49:11,12,20,25
50:15 53:1,3,13,20
53:22 54:13,15 56:2
56:18 60:23 61:4
**b3** 47:15
**b4** 47:15
**back** 20:24 32:25
34:16 65:15 66:6

68:23 73:13
**badly** 25:12
**ballot** 52:17
**ballots** 51:13 56:1
68:21,22
**bamboozled** 27:8
**bank** 3:4 13:14
20:20 25:6,11 48:9
48:11 50:14 52:25
59:12 60:21 67:17
70:14 72:3,5 74:9
**bankrupt** 27:16
**bankruptcy** 1:1,10
1:22 21:1,14 22:3
43:2,4 45:11 47:8
48:14,23 49:3,22
50:5 52:5 54:7,12
54:14 55:8,11,20
56:8,13,16 57:1,6,9
57:10,12,13 58:13
62:17 68:17,18
**bartram** 9:16
**based** 59:6 64:18
67:9
**baseline** 27:10
**basement** 60:13
**basically** 18:19
41:21 44:15 45:22
46:5,21 67:17 68:10
**basis** 57:17 60:20
**battleground** 18:5
**bear** 23:16,24 32:17
**bearing** 15:5
**beautifully** 17:22
**beef** 63:14
**beginning** 40:5
67:13
**behalf** 13:8 16:9
20:7 33:2 39:19
48:9 63:12 65:19
67:18
**believe** 17:8 19:21
20:11 28:3 53:5
54:25 58:19 60:9
63:13 68:15 69:17
71:9

**believes** 60:21
**benefit** 17:19 27:9
**benjamin** 11:3
**benjhamin** 9:25
**best** 23:2 37:15 38:7
38:8
**better** 31:20
**beyond** 21:8 40:2
58:19,20 62:2
**bidders** 32:24
**biddle** 8:1
**bielli** 4:19
**big** 56:15
**billion** 40:9
**billy** 6:22 16:11,12
**binding** 48:18
53:10,17 55:14
60:25
**binds** 48:16
**bit** 41:15,17 43:11
43:23
**black's** 49:21
**blazer** 33:4 63:5
**block** 5:1 51:23
**blueprint** 38:23
**board** 26:23
**bodies** 65:11
**bond** 27:6
**bondholder** 66:9
**bondholders** 48:10
59:21
**bonds** 59:16 67:18
**booby** 38:7
**borowitz** 38:15
**bought** 58:23 59:1
**bound** 43:17 69:25
**brad** 11:20
**brady** 12:3
**breach** 45:2
**brent** 39:18
**brett** 39:19 65:19
**brian** 5:17 7:13
10:13 11:11,24
16:24
**brief** 14:24 28:14
28:21 41:1

**briefer** 62:13
**briefly** 16:1 18:9
28:22 61:18
**bringing** 22:20
**brings** 27:3 73:5
**broad** 22:8 24:3
**broader** 24:20
**brod** 9:17
**brown** 8:10 40:25
**build** 37:9
**bulk** 13:11
**bumazian** 9:18
**burden** 15:2
**business** 15:3 16:19
21:23 27:13 34:18
34:24 60:16 65:3
66:24 67:7,12 68:3
**bussigel** 9:19
**buy** 17:21
**buying** 27:15

**c**

**c** 3:1 10:15 12:3
13:1 47:24 77:1,1
**call** 38:17 47:8
**capital** 32:11 53:11
**care** 59:13
**careful** 15:4
**carl** 12:1
**carpenter** 4:7
**carries** 36:14
**carter** 6:5
**case** 1:6 5:6 17:14
17:17 19:22 23:5,19
24:1 25:23 26:24
27:1 28:5 31:14,19
32:9 34:11 35:4,5
36:3,22 38:25 40:20
41:15,17,19,20 43:9
43:13,19 44:5,6,7
44:12,14,20 49:15
50:5 52:4,20 53:20
54:6 56:6,15,20
57:10 59:4,8 60:9
60:13 62:25 69:13
69:21,22 70:4,12,19
72:15 73:9 75:11

**cases** 22:21 24:14
33:7,14 34:9 35:23
36:9 39:3,6 44:19
44:24 47:20 49:8
57:18 61:3,10 69:14
**cash** 32:15 34:17
**cast** 26:7 40:2
**catch** 29:21
**category** 55:7
**cause** 22:17 51:18
73:13,14,22
**caused** 45:11
**cede** 16:1 18:5
**central** 17:16 36:12
**century** 22:4,10,18
33:13 48:17 50:20
50:23,25 52:3,6
53:22 55:14 57:6
59:3 60:25 62:14,23
64:4,4,5,16 68:13
72:6,7,11
**certain** 27:10 28:16
30:14 38:18 41:22
42:4 44:13 46:12
69:1
**certainly** 36:15
38:11 50:7 70:8
**certified** 77:3
**chad** 7:7 13:7
**chair** 6:20 16:15
**challenges** 47:1,3
**chambers** 74:23
**change** 24:11 51:17
66:5
**changed** 51:18 60:2
65:22 66:5
**changing** 57:20
**chaos** 31:19
**chapter** 1:5 21:4,7,9
23:18 24:13 25:22
28:5,7 37:12 39:5
**charles** 10:22
**choi** 9:20
**chosen** 56:11
**chris** 6:5 63:12
**christopher** 1:21
4:17 5:9 31:6,10,12

63:12
circuit 22:4 33:14
  47:18 48:19 50:21
  50:24 52:3 53:23
  55:14 64:7,15,20
  68:14 69:11
circuit's 48:16
  60:24 69:4
circumstances 45:9
  70:3
cited 22:24 24:25
  26:10 33:22 44:12
  52:4
citibank 8:2
claim 33:11 40:6
  60:7
claimant's 59:18
claims 35:4 51:12
clarified 54:9
class 34:3,8 63:14
classes 24:8
clean 74:20
cleansed 53:6
cleanup 74:22
clear 13:25 16:18
  17:7 19:5,7 22:8
  28:25 29:1 35:16
  51:14 62:14 63:21
clearly 53:25 64:21
  68:14
client 63:3
client's 20:10
clients 34:7 38:8
  39:2 63:17
cloaking 31:23
closability 73:19
close 60:16 73:18
closing 18:2 73:24
closure 35:7
cloud 30:15
coc 74:23
code 20:22 21:1
  22:3,6 31:24 43:19
  48:3,15 54:17 56:19
  58:21 59:2 61:10
  62:17 63:8 68:17,19

codeand 57:6
codeas 49:3
codeeven 56:8
codeis 43:3 54:7
codeoccurs 55:21
codeprior 55:9
codeprohibits
  55:11
codeprovides 54:14
codes 45:11
codeshould 56:16
codethat 54:12
codewas 49:22
cohen 8:4
cole 9:6
collateral 32:15
  34:17
colleagues 30:17
collectively 13:25
collier 9:21
comes 19:25 42:19
  70:6
comfort 56:20,20
comfortable 17:3
  34:21 35:12 36:6
coming 32:8 69:6
commencement
  49:15
comments 20:8,9
  31:8 41:10 46:3
  72:3 73:7
commit 62:20,21
commitment 25:18
commitments 38:18
commits 23:7
committee 3:9 5:13
  6:20 7:10 13:19
  16:15,25 37:6 39:20
  39:20,24,25 40:4,13
  43:20 46:9 59:10
  65:20,24 71:13
committee's 40:12
  67:2
common 22:20 55:1
commonly 38:6
communication
  21:19 50:5

communications
  50:9 52:19
companies 21:3
  27:16
company 4:9,10 9:7
compatible 54:10
compelled 14:8
compelling 22:18
  24:17
compensate 45:2
compensation
  28:17 29:4 47:4
competitive 4:9,10
complaint 63:1
completed 35:24
  51:13
completely 24:12
  37:23 53:3 69:18
completion 17:17
complex 24:14
  25:22
complexity 35:5
comprehensive
  31:25 33:1 43:3
compromise 22:12
  22:13 36:23 64:10
  64:11
conaway 3:8
concepts 21:22
concern 65:21
concerning 20:10
concerns 14:12
  32:19
concise 16:18
conclude 33:7
conclusion 60:22
condition 70:9
conditional 53:14
conditioned 53:7
conditions 41:22
  43:18 45:19,25 69:1
conduct 33:12
conducted 27:18
confidence 22:23
  24:5
confirm 71:11

confirmable 18:3
  74:13
confirmation 17:4
  18:22 19:15 22:22
  29:9,11 31:21 35:8
  35:9,20 65:15 70:9
  71:7,10,17,20,20
  73:4,10,16,17 74:2
  74:6,15,16
conformed 26:5
conforms 24:6
  62:22
confront 23:6
confronted 23:6
congress 21:1 23:14
  49:1 56:11
conjunction 55:10
connection 19:23
  54:18 68:23 72:24
  73:1,23
consensual 21:10
  24:7 31:20
consensus 21:9,17
  21:20
consenting 46:15
consequences 33:5
consider 37:20 38:9
  38:10 44:13 49:19
  59:14
consideration 33:23
  34:1,6,11 35:6 36:8
  37:23 51:4,8
considered 58:14
consistent 19:19
  24:23 72:19
constant 34:14
constituency 40:6
constituents 40:1
constitute 61:7
constitutes 20:21
construction 23:16
construe 62:24 69:7
construed 15:5
  62:16,24 64:6
consuming 24:3,15
consummated
  46:11

**consummation**
29:23 46:19
**contain** 24:23 25:8
57:25 59:6
**contained** 25:18
27:23 29:6,19 57:19
57:23
**containing** 27:10
**contains** 33:16 69:1
**contemplated** 26:3
28:17
**contemplates** 29:21
29:22
**content** 20:10
**context** 21:10 24:20
63:9
**contingency** 64:18
**contingent** 53:10
58:24
**continue** 26:15
54:19 74:5
**contractual** 27:7
**contrary** 28:4,7
57:5 59:2,3
**contravention**
47:15
**control** 48:10 59:21
66:9 67:18
**controlling** 68:14
**controversy** 68:7
**convince** 31:18
**copies** 13:23 14:15
**copy** 74:20
**core** 28:4
**corp** 1:6 2:1 6:14
76:6
**corporate** 32:19
**correctly** 62:24
**cosponsors** 25:9
26:21 27:2
**cost** 33:2 39:3
**counsel** 4:2,15 6:14
8:16 16:8 36:22
50:12,23
**counted** 44:1,21
**counterparties** 27:7
27:11

**counting** 68:23
**country** 77:21
**couple** 31:8 47:9
53:9 56:6 72:2
74:22
**course** 53:18 56:4
59:10 64:21 66:24
68:13
**court** 1:1,10 13:2,5
13:11 14:16,18 15:9
15:18,22 16:4,7,13
16:23 17:1 18:6,8
19:10,18 20:5,13,17
22:10 25:15 26:13
26:19 27:9 28:12
30:11 31:1,3,9,11
33:18 37:3,20,25
38:1,4 39:9,17
40:18,20,22 41:4,8
41:25 43:24 44:10
45:12 47:8 48:6,16
48:19,21,23,25 49:4
49:5,18 51:2,5 52:5
52:6,6,11,25 53:18
53:19 54:7 56:4,7
56:10 57:8,10,12,13
57:16 58:2,3,4,7,13
58:17,23 59:1,4,4,7
60:13,14 61:6,8,8
61:11,15,16 63:11
64:23 66:6,14,17,25
67:3,8,10,14,20
68:4 71:25 72:9
73:5,11 74:1,25
75:2,4,6,9
**court's** 24:24 57:12
57:15 73:25
**courtroom** 15:10
16:16
**courts** 23:1 33:15
33:20,23 34:6,10
44:17 45:5 50:4
53:9 56:22 57:9
**covered** 20:1
**created** 27:5
**credible** 16:19

**creditor** 3:4 17:15
17:22 22:9 26:1
38:7 46:12 51:4,11
51:16 52:19 53:21
64:16 66:12
**creditor's** 51:5 53:7
**creditors** 3:10 5:14
22:2,11,17 23:14
27:5,6 36:2 37:6
38:1,2 40:12,13
43:21 44:20 45:3,7
45:10,15 46:9 50:6
51:22 57:20 58:5,7
59:19,19 63:15
64:10
**critical** 37:18 38:24
71:8
**critically** 37:14
**criticized** 39:8
**cro** 15:9
**cromwell** 7:9
**cross** 4:14 15:13,23
**csc** 9:7
**css** 1:6
**current** 38:19 47:6
**currently** 37:25
**curtin** 9:22
**cut** 26:16

---

**d**

**d** 7:13 9:25 10:25
11:6,10 13:1 47:15
76:1
**d.i.** 2:3 76:9
**damages** 45:2
**daniel** 4:5 11:14
**daniele** 12:7
**darshan** 11:9
**data** 34:23
**database** 34:20
**date** 29:25 34:11
73:17 77:25
**dated** 25:2
**david** 4:12,22 6:4
**davies** 10:4
**day** 14:4 18:12
28:20 30:4,9,24
39:15 60:11,14,16

72:2
**days** 30:12
**dc** 32:9
**deal** 17:25 18:2
25:10,17,17,19,21
35:12,13,14,20 36:7
36:11 38:2 40:9
61:11 65:11,12
67:14
**dealing** 29:12 33:14
64:22 66:18
**dealt** 73:3
**debate** 35:3
**debt** 40:9
**debtor** 17:2 21:18
21:19,25 22:3 24:3
27:8 28:1 50:5
52:19 54:4,17,22
55:19 60:17
**debtor's** 13:9 15:9
51:22 52:23 64:18
65:3 66:21 67:11,12
67:16,21 68:3 72:22
**debtors** 1:7 2:2 4:2
4:8,8 7:2 13:8 14:9
17:5,14 23:15 26:2
29:16 31:4 33:22
34:4,9,15 35:11
36:6 37:7,8,11,16
39:4 40:15 43:24
45:15,18 46:7 49:11
50:12,22 51:7,9,18
51:21,23 52:2,16
53:5,18,19 54:23
55:1,4,5,12,15,19
55:24,25 56:2,4,17
56:20,22,25 59:10
60:10 61:5 64:25
65:6,10 66:1 67:4,6
76:7
**decided** 72:1
**deciding** 67:4
**decis** 64:21
**decision** 45:4 47:19
48:15,17 52:5 57:1
57:11,12,24 58:22
60:25 68:13,19

**decisions** 53:10
61:1,5
**declaration** 14:14
14:19,24 15:16 17:2
**declared** 50:1 57:12
**declined** 56:23
**deemed** 62:6
**defeated** 43:16
**deficiency** 40:6
59:18 60:7
**defined** 22:7 37:19
68:16
**definition** 22:16
24:20 62:5,6 63:7
69:7
**definitive** 60:2
**defranceschi** 4:5
**degree** 22:22 24:4
**delaware** 1:2,12 9:7
57:1
**delay** 30:7 46:17
**deliver** 56:1
**delivered** 16:18
64:24
**delivering** 51:12
**delivery** 63:22
**demand** 26:6
**demands** 22:3
**demolished** 23:10
43:12
**demonstrate** 20:24
**demonstrates** 55:6
**denhoff** 9:23
**deny** 60:22
**deposed** 14:21
16:17
**deposition** 20:10
**describe** 51:23
**description** 52:2
**designate** 68:5,7
**designated** 44:1
**designation** 61:9,14
**designed** 21:9 70:11
**desiree** 9:13
**despite** 47:2
**detailed** 27:22

**details** 71:19
**detain** 20:19
**determinate** 70:21
**determining** 48:24
**deutsch** 4:7
**development** 52:9
**dialogue** 19:4 22:2
22:5
**dictate** 63:18
**dictionary** 49:21
63:7
**dietderich** 16:24,24
18:7
**dietrich** 7:12
**differed** 26:2
**difference** 22:14
64:13
**different** 24:12
41:16,17 43:13,23
54:24,25 58:11 73:9
**differently** 43:11
66:12
**difficult** 28:5
**diligence** 27:19
34:14
**dip** 8:2 35:25
**directed** 69:7
**direction** 16:9
**directly** 15:5 33:21
64:15
**director** 6:20,21,24
16:14,16 60:4
**directors** 16:10
32:20 40:15
**disabused** 64:7
**disagree** 69:15 71:5
**disagreement** 20:9
**disapproved** 61:13
**disastrous** 71:23
**disavow** 69:15
**disclo** 42:22
**disclosure** 27:9,23
33:18 34:11 42:20
42:22,24 44:22
49:17 50:19 52:10
52:15 53:4,8 54:2,3
54:21 55:9 58:10,25

62:19,20 63:23 64:1
64:24 67:23 68:12
70:6,8,11,16,17,20
70:22,23 71:1
**discovery** 34:19
42:6
**discretion** 48:20,22
61:11
**discrimination**
74:14
**discuss** 60:6
**discussion** 49:12
61:2
**discussions** 52:7
63:3
**disenfranchised**
32:10,13,17,21,24
34:3,8 36:19,20,20
**disinterested** 6:21
6:24 16:10,16 40:15
60:4
**disposes** 62:10
**dispositin** 17:20
**dispositive** 57:13
58:15,18
**dispute** 21:9
**disputes** 21:11
**dissemination**
52:14
**distinction** 58:23
64:21 69:3
**distinguish** 25:7
43:13 53:14 69:20
**distinguishable**
53:11
**distinguished** 44:24
57:16 59:5
**distressed** 21:2
27:13,14,16
**distributable** 36:10
**distribution** 65:22
**district** 1:2 25:4
52:6 56:23 57:11
**districts** 44:18
**docket** 13:22 14:14
55:16,18

**documents** 29:6
60:2 61:6 66:4
**doesn't** 58:8
**doing** 35:16 62:7
65:7 66:11 74:21
**dollars** 34:20
**don** 6:25 16:10 33:3
**doubt** 32:7 40:2
**downs** 23:4 24:18
24:22 25:7,9,13,14
26:19 33:23 34:13
40:20 41:17 43:10
43:22,23 44:7 57:1
57:5,8,14,22 58:3
58:13,15,18 62:25
69:18,21,24
**dozen** 22:24
**draft** 51:3,8
**draw** 58:22 65:5
**dreyer** 9:24
**drinker** 8:1
**dual** 41:20 43:15
**dually** 51:13
**duped** 34:4,9
**durability** 38:17
39:5
**dynamic** 28:2

### e

**e** 1:20,20 3:1,1 7:4
7:10 10:10,21 13:1
13:1 17:21 36:2
38:2 61:9 71:13
76:1 77:1
**eager** 39:2
**earlier** 30:22 43:17
44:6 47:11
**economic** 17:13
**ecr** 1:25
**edition** 49:21
**edmonson** 6:10
**edward** 7:6 13:6
**effect** 35:16,22
49:22 72:22
**effective** 38:4 53:17
73:17
**effectively** 17:18
39:23 40:1 45:9

| | | | |
|---|---|---|---|
| **effectiveness** 30:7 30:21 | **ensure** 14:25 18:24 | **eviscerate** 53:3 | **facts** 25:12 27:2 43:14 70:3 72:15 |
| **effectuated** 46:1 | **enter** 2:2 13:9 67:5 76:7 | **exactly** 22:1 29:10 52:16 55:23 | **factual** 15:1 50:7 |
| **efficient** 35:8 | **entered** 35:19 44:18 | **examine** 15:23 | **failed** 53:20 |
| **efforts** 23:24 38:15 38:21 | **entering** 16:20 33:21 34:22 | **example** 28:24 35:10 38:19 | **fails** 39:1 |
| **efh** 4:20 6:20 7:20 9:2 13:19,19 16:9 16:14,20 17:15,22 20:7 32:11 | **enticing** 49:23 | **excellent** 66:16 | **failure** 38:18 71:8 |
| | **entire** 62:12 | **exception** 54:15 55:3 | **fair** 35:2 57:6 66:13 71:13 74:13 |
| | **entirely** 50:15 | | **fairness** 32:25 |
| | **entirety** 43:4 69:16 74:10 | **exchanges** 52:8 | **faith** 40:2 |
| **efhc** 4:2 | **entities** 27:13 | **excluded** 59:16,21 | **fall** 56:8 |
| **efih** 5:2 13:19 36:1 | **entitled** 26:6 | **exclusive** 71:16 | **false** 40:18 |
| **either** 14:3 18:12,21 19:14 33:20 36:22 55:22 | **entry** 29:15 30:21 39:20 66:21 67:1,2 67:11,16,21 68:2 | **exclusivity** 22:1 | **far** 27:22 28:5 52:20 71:1 |
| | | **exculpation** 73:8 | **fashion** 73:20 |
| **electric** 4:10 | **equal** 23:11 | **excuse** 13:2 67:25 73:1 | **favor** 33:24 45:8 51:9 52:17,23 56:1 62:2 |
| **elements** 15:1 71:12 | **equitable** 18:3 | | |
| **elevate** 72:15,20 | **equitably** 18:2 | **executed** 51:13 | |
| **eliminate** 60:14 | **equivalent** 27:1 | **executing** 58:5 | **federal** 43:3 |
| **eliminated** 61:13 | **eric** 11:17 | **execution** 33:12 | **feedback** 26:15,16 |
| **ellipses** 49:13 | **ernst** 4:19 | **exercise** 15:3 25:23 67:6,12 68:3 | **feel** 14:8 36:6 |
| **ellis** 7:1 13:7 | **escape** 24:17 | | **feer** 9:25 |
| **else's** 67:1 | **especially** 45:1 | **exhibit** 61:4 | **fees** 28:19 29:14,16 42:8 45:20 47:5,12 47:12,14 73:2,7 |
| **embodied** 25:19 | **espoused** 32:8 | **exist** 62:10 69:2 | |
| **emergency** 37:12 | **esq** 3:12,16 4:4,5,17 5:9,10,23 6:16 7:12 7:13,17 8:4,18 9:9 | **existing** 70:20 | |
| **emily** 9:19 | | **exists** 68:18 71:2 | **fessed** 63:2 |
| **emphasis** 58:4 59:3 62:7 | | **expedite** 37:11 | **fidelity** 3:19 |
| | **essence** 17:12 | **expense** 32:17 36:2 | **fiduciary** 46:6,8,8 46:10 59:11 |
| **emphasized** 53:23 | **essentially** 62:12,17 | **expensive** 24:4,15 28:6 | |
| **enacting** 21:1 | **estates** 17:18 37:11 37:16 39:6 63:19 72:22 | | **file** 55:19 72:18 |
| **encompass** 52:7 | | **experienced** 26:25 | **filed** 2:3 13:22 26:5 37:7 39:21 41:2 61:6 64:18 67:17 71:16 76:9 |
| **endeavor** 23:24 54:8 66:4 | | **extend** 58:19 | |
| | **et** 1:6 2:1 76:6 | **extensive** 27:18 | |
| **endorse** 69:19 | **etcetera** 27:7 | **extent** 23:15 44:13 47:24 57:4 64:23 69:13 73:4 | |
| **endorses** 43:5 | **evaluate** 21:24 | | **filings** 30:20 60:17 |
| **energy** 1:6 2:1 4:8 6:14 76:5 | **evans** 6:25 16:10 | | **final** 74:21 |
| | **event** 26:1 43:15 46:11 53:15 68:9 69:1 | **f** | **finally** 35:5 74:11 |
| **enforce** 33:1 49:5 53:1 64:25 | | **f** 1:20 9:16 11:1 72:11 77:1 | **find** 38:22 39:1 56:20 63:4 64:12 68:15 73:14,22 |
| | **events** 64:22 | **fact** 25:13 26:9,20 28:7 29:25 30:23 38:5 42:1 45:13 48:23 53:6 55:15 58:5 59:6 62:20 70:15 72:5,5 | |
| **enforced** 33:17 56:16 | **everybody** 17:19 31:13,19 39:15 | | **finding** 32:1 33:24 44:19 |
| **enforcement** 56:24 | **evidence** 15:17 16:19 17:8 33:6 | | **fine** 31:1 69:3 74:25 |
| **enforcing** 31:24 | | | **finger** 4:1 |
| **engagement** 22:2 | **evidentiary** 14:22 | **factor** 70:21,21 | **finish** 28:12 |
| **engaging** 21:21 | | **factors** 33:13,24 58:1 | **fink** 10:1 |
| **enjoyed** 26:1 | | | |

**firestein** 6:17
**firm** 16:2
**first** 3:9 5:13 8:21
20:19 28:15 37:6,24
40:6 54:25 57:4
59:17 66:18
**flannagan** 10:2
**flushed** 61:23 62:3
**focus** 23:22 38:20
41:12,25 63:20 72:4
72:5
**focused** 31:15 38:3
**focuses** 70:15
**focusing** 64:8
**foley** 8:6
**folks** 60:12
**follow** 57:14 58:17
**follows** 52:11
**force** 23:11
**forced** 45:8
**foregoing** 77:3
**forester** 65:19
**forget** 15:15 72:4
**forgot** 17:24
**form** 13:17 59:17
72:15,20 74:19
**formal** 25:9 68:21
**formalities** 15:22
**formally** 62:18
**forman** 9:6
**formulation** 21:12
25:22 50:13
**forrester** 39:19
**forth** 41:23 42:15
46:25 47:5,16 49:21
**forward** 19:14
23:19 24:1,3 28:6
29:20,22 30:8,24
31:17 32:3 34:15,24
36:16 42:14,15 74:5
**foster** 21:9
**found** 33:15 72:6
**founded** 29:12
**four** 13:22 18:14,15
18:18 19:19 28:25
**fours** 69:18

**fox** 5:20
**framework** 43:5
**frank** 3:18
**frankly** 39:7 70:5
**free** 21:18 22:9
**fried** 3:18
**friedman** 10:3
**front** 19:4 67:7 68:4
71:25 73:11
**frost** 10:4
**fruit** 23:16,24
**full** 57:6
**fully** 31:20 37:7
39:12 61:23 62:3
66:10 74:16
**function** 49:5
**functional** 27:1
**further** 40:3 44:7
65:16
**future** 1:6 2:1 4:9
6:14 22:15 23:8
58:25 61:22 62:9
63:16 64:8,14,17,22
69:10 76:5

**g**

**g** 13:1 54:13,14,16
55:3,5,11 60:24
**gargantuan** 36:3
**garrison** 5:12 37:5
**gary** 3:21 10:20
**geddes** 8:15
**generally** 20:2
44:17,24
**gentleman** 74:12
**getting** 26:14 28:24
34:21 62:18,20,21
65:7 73:25 74:5
**gift** 17:24
**gillen** 10:6
**gilstrap** 10:5
**give** 17:12 55:17
60:12
**given** 25:4 30:18
32:23 47:8 69:4
**gives** 51:21
**globally** 21:11

**gloss** 14:7
**glove** 22:5,10,19
33:13 48:17 50:21
50:23 51:1 52:3,6
53:22 55:14 57:6
59:3 60:25 62:14,23
64:4,5,5,16 68:13
72:6,7,11
**gluckstein** 7:13
**glueckstein** 16:25
**glueckstein's** 20:8
**go** 18:8 19:10 26:17
28:10 29:19,22 38:4
41:8 65:10
**goal** 21:4
**goals** 21:7
**goes** 39:24 42:14
44:6 72:13
**going** 19:13 26:16
30:23 32:3 33:10
34:15,16,24 35:12
35:13 42:2,5,15,16
42:23 62:4,5,13,18
63:6,17,18 64:18,22
68:25 71:6,25 72:10
72:14 73:23 74:2,3
74:3,4
**golden** 10:7
**goldman** 10:8
**good** 13:4,5 16:5,7
18:6 20:13 21:3
24:16 31:5,6 37:4
39:5,17,18 40:2,23
40:24 48:8 75:5
**goslin** 10:9
**govern** 48:3 62:8
**governance** 32:19
**governed** 47:23
**governs** 43:3
**grace** 10:10
**grant** 14:1 37:2
**granting** 14:1
**gravamen** 31:22
**gray** 15:4 52:20
**great** 38:21 72:21
**greater** 70:4

**greenberg** 10:11
**gregory** 8:18
**grounds** 25:7 44:25
**groundwork** 51:20
**group** 5:7,21 51:22
63:13
**groups** 59:20
**gu** 10:12
**guiney** 10:13
**gwynn** 66:11,13
71:4
**gwynn's** 64:2 65:21
**gwynne** 3:6 48:6,8,9
61:17 62:11
**gwynne's** 62:6 63:1
63:13

**h**

**h** 60:11
**hamper** 71:9
**hancock** 10:14
**hands** 39:24 40:12
**hanging** 30:15
**happen** 17:16 73:23
74:2
**happened** 23:20
72:8
**happening** 29:7
35:2 64:16
**happens** 19:22 44:2
63:15 73:9
**happily** 14:22
**happy** 18:5 19:20
**hard** 39:6 56:9
71:22
**harder** 36:10
**harm** 45:11
**harold** 8:8
**harris** 10:15
**harsh** 56:12
**hartford** 48:25
**hear** 15:24 28:9
42:23 57:20
**heard** 15:9 17:1
29:9 31:3 37:13
39:15 66:7
**hearing** 2:1 14:22
17:1 31:21 35:8,20

49:18 65:15 71:6,10
73:10,16 76:5
**heart** 72:13
**heath** 10:16
**heavily** 26:5 57:9
**held** 26:19
**hello** 16:13
**helpful** 66:17
**heritage** 33:22
57:10,14,16,24 58:2
58:4,7,14 69:21
**hermann** 5:17
**herring** 10:17
**hi** 66:8
**high** 24:4
**highlight** 45:13
47:9 63:21
**highlighted** 64:4
**history** 50:10
**hoc** 3:9 5:7,13,21
37:6 59:20 63:13
**hold** 53:1 69:15
72:14,20
**holder** 36:21 49:16
74:12
**holders** 27:6 46:16
**holding** 25:2 50:1
56:24 59:5 68:20
69:14,19
**holdings** 1:6 2:1
4:10 6:14 44:13,14
44:19,19 45:6,6
52:22 53:3 56:25
57:17,17 59:5 69:13
69:16 76:6
**holidays** 4:9
**holistic** 54:8
**holohan** 10:18
**home** 49:9
**hon** 1:21
**honor** 13:4,8,10,13
13:17,18,24 14:1,6
14:9,13,15 15:8,11
15:12,20,21,25 16:1
16:5,11,22,25 18:4
18:9 19:2,3,4,9,11
20:3,6,14,19,19,25

21:6,16,25 22:18,24
23:2,5,21 25:6
26:18,19 28:3,9,15
28:15,25 29:1,5,14
29:24 30:4,7,14,19
30:24 31:6,8,12
33:7 37:2,4,7,22
38:5,11,14 39:5,13
39:18 40:24,25 41:3
41:5 42:13 44:3
48:4,4,8 49:3 53:8
53:20 54:2 55:17
57:4 59:17 60:3,8
60:22 61:15,18,20
62:11,25 63:5,9,21
65:16,18 74:21 75:1
**honor's** 49:7
**hope** 31:8,12,17
37:25 60:3
**hopefully** 40:10
60:5 71:23
**host** 33:24
**house** 36:1
**howard** 8:4
**husnick** 7:7 13:7
**hwangpo** 10:19
**hyde** 2:25 77:3,8
**hypothetical** 25:23
35:13 38:11 63:16

**i**

**i.e.** 15:2
**idea** 27:24 70:10
**ideas** 21:22,24,25
**identify** 26:16
**immediately** 53:17
65:7 73:16
**impact** 30:23
**impaired** 24:8
**impede** 46:17
**impermissible**
20:21 43:6 45:7
50:18 52:2 56:3,6
57:18 63:2
**implementing** 21:7
**import** 56:11
**importance** 60:9
69:5

**important** 22:20
37:14 50:13 58:1
62:8 66:19 69:4,4
70:8 71:14 73:15
**improper** 43:7
48:13 53:5 61:7
68:1
**inaction** 46:18
**inadvertent** 25:11
**inappropriate**
61:21
**inaudible** 53:19
**incentive** 45:21
47:4,21 73:2
**incessant** 23:22
**include** 44:25 45:19
45:25 46:24 50:9
52:12
**included** 19:1 52:10
59:25
**includes** 65:7
**including** 18:20
19:16 49:8 56:24
57:7 67:1
**indenture** 13:19,20
20:7 48:10
**indentured** 7:20 8:7
**independent** 32:20
**independently**
32:21
**indianapolis** 23:4
24:18,22 25:7,9,12
25:14 26:19 33:23
34:13 40:20 41:17
57:1,5,8,13 58:3
69:18,21,24
**indicated** 15:12
43:17 44:6 55:16
**indicates** 18:19
**indiscernible** 38:24
40:16 41:13,14 42:8
42:9 43:1 44:11,11
45:21 46:7 47:3,16
47:19 51:10,16
53:13 54:6 55:25
56:3 59:16,17 60:13
61:11 64:3 74:22

**individual** 36:22
**indy** 43:10,22,23
44:7 57:22 58:13,15
58:18 62:25
**inevitably** 15:15
**information** 21:23
27:10,22 45:4,12
52:8
**informed** 13:10
70:3
**inhibit** 22:9
**instance** 23:13
72:10
**instructed** 62:23
**instructive** 54:6
**intangible** 30:16
**intend** 18:23
**intended** 23:14 27:5
**intends** 29:10
**interest** 35:25 36:24
37:15 38:7,8 46:16
55:21
**interested** 36:1
**interesting** 44:9
**interests** 52:15
**interfere** 46:18
**interpretation** 49:8
53:12 54:5,13 56:8
**interpreted** 55:10
60:24
**interpreting** 49:3
54:7
**interrupt** 26:13
**intersection** 46:5
**introduce** 16:11
**introduction** 16:2
**investor** 66:9
**involve** 63:3
**involved** 40:4 65:24
**involvement** 26:23
27:1
**involves** 52:20
54:25
**ironically** 36:18
**irrelevant** 30:2
61:14

isley 10:9
isolation 54:9
issue 32:9 33:20
  40:11 42:5,19,19
  44:25 56:16 60:8
  61:14 66:2 67:7
  70:25 73:7 74:11
issues 15:6,14 31:13
  42:4 47:23 48:1
  71:14,14,14 72:25
  73:3,9
item 13:8 55:17,18
items 42:10 48:3

**j**

j 5:9 9:9 10:24
  11:14,25
jacob 5:18
jae 9:20
jamie 6:10
jason 4:4
jeff 6:11 11:7 40:24
  40:24
jeffrey 5:23 8:13
jenner 5:1
jim 66:8
jocking 23:22
join 20:7
joinder 31:7,11
  37:8 39:21 41:2
joint 1:7
jonas 8:13 40:22,24
  40:24
jonathan 11:6
judge 1:22 23:3,5
  23:10,13 24:21 25:3
  27:3 28:1 34:12
  43:12 44:12,14,18
  49:24 52:22 53:2
  56:25 57:24 60:25
  61:2 62:24 69:14,17
  69:23 72:9,9
judgment 15:3
  16:19 65:3 67:7,12
  68:3
julia 10:4 12:4
jurisdictions 22:25

justification 60:20

**k**

k 3:12 6:16 10:17
kaplan 3:21 8:8
  10:20
kate 9:9
kathy 11:10
keep 17:6 31:15
keeps 66:6
keglevic 14:14,21
  15:8
keglevic's 15:16
keiselstein 7:5
ken 9:21
kenneth 11:4
kevin 11:2
key 21:19,23 40:16
kieselstein 13:4,6,6
  14:17 15:20,25
  18:11 19:3 20:14,18
  26:18 28:14 30:14
  31:2 34:5 61:18
kind 15:2 18:5
  73:12
kirkland 7:1 13:7
kissel 8:20
klauder 4:22
know 15:8 17:23
  25:24 27:20 28:9
  31:13 52:24 65:10
  65:11 66:19 70:5
  72:2,11 74:4 75:11
known 48:11
knows 31:13 38:11
  38:14 49:3
koerner 10:21
kornberg 5:16 37:4
  37:5 41:10 62:7
koster 10:22
kovensky 10:23
kranzley 10:24
kunchsky 10:25
kurt 3:6 48:8,8
  61:17
kyrouz 11:1

**l**

l 3:16 6:10 7:17
  9:12 10:20
lacked 56:7
lacks 56:4
language 13:21,24
  19:18 48:14 49:4,10
  49:25 50:1 53:1
  55:11,13 56:17,18
  56:19 57:5 58:20
  59:2 60:23 72:7
lardner 8:6
large 22:21 24:14
  25:22 27:16 51:23
larger 32:1
largest 27:12
lauria 5:10
law 32:10 33:4,10
  48:23 49:21 56:21
  58:19
lays 51:20
layton 4:1
lazar 5:4
lead 52:9 72:16,21
leading 22:25
leads 34:4
lean 8:21
leave 14:6 19:1
led 34:21 56:11
ledanski 2:25 77:3
  77:8
left 48:22
legacy 34:19
legal 13:14 15:14
  24:23 36:2 77:20
legended 63:24
legislative 50:9
legitimate 28:6
  63:13
lenders 55:1
length 25:15
leonard 9:6
leslie 1:25
lest 14:7
level 26:23,25 27:25
lewis 6:1

lien 3:9 5:14 36:1
  37:6 40:6 54:25
  59:18
liens 40:7,25 59:20
likewise 19:17
  47:15,21
limit 22:17
limitation 46:19
limitations 72:7
limited 24:24 54:14
  55:7
limits 27:4
line 26:16 76:4
lippman 11:2
list 40:8
listed 18:18
little 25:4 41:15,17
  43:11,23 62:13
live 13:15 14:20
  15:13 16:17
llc 4:9,10,14 6:7
llp 3:3,8 4:7 5:6,20
  6:13 7:1,9 8:1,6,20
  9:1 13:8
lock 36:5 44:16
  74:4
locked 45:7,16
  51:24
locks 65:22
lockup 57:17
log 43:9
logic 22:18 24:17
long 20:19 21:15
  24:5 55:18
longstanding 56:12
look 40:5 54:11
  68:17 72:8
looking 66:11 69:24
looks 35:21
lose 72:4
loses 72:5
lot 26:14,14 71:22
loved 31:9,11
loveland 11:3

| m | | | |
|---|---|---|---|
| **m**  4:4 5:23 9:13,23 10:9 11:22 12:4 | **meant**  22:6 27:24 28:8 | **moment**  13:16 30:18 | **ndas**  27:18 |
| **madron**  4:4 | **mechanism**  67:25 | **monday**  42:24 70:18,18,18 75:7 | **near**  34:14 |
| **mail**  58:9,9 | **mediation**  38:15,16 38:20 | **monetary**  45:1 | **necessarily**  72:18 |
| **maiman**  11:4 | **mediator**  23:23 35:1 65:25 66:3 | **money**  17:20 56:15 | **necessary**  15:1,14 |
| **major**  38:15,20 | **meggie**  10:5 | **monitoring**  34:16 | **need**  18:1 20:1,18 22:5 35:7 36:15,15 44:5 53:18 60:16 62:3 65:6,11 68:8 70:5 71:4,5 73:15 |
| **majority**  26:10 | **meisel**  9:6 | **months**  35:18,23,25 38:22 56:6 | |
| **making**  26:14 35:1 36:6 65:3 68:19 73:19 | **mellon**  3:4 48:9,11 50:14 52:25 59:13 60:21 67:17 70:14 72:5 74:9 | **morgan**  3:12 6:1 | **needed**  25:24 |
| **malone**  11:5 | | **morning**  13:4,5 16:5,7 31:5,6 37:4 37:13 39:17,19 40:23,24 48:8 | **needs**  21:18 22:1 60:18 65:9 |
| **management**  42:9 45:20 47:4,21 73:2 | **mellon's**  72:3 | | **negotiate**  23:15 36:23 50:13 |
| **manipulated**  27:25 | **memorialize**  23:18 23:25 | **morrison**  39:19 65:19 | **negotiated**  25:17 26:6 |
| **mantle**  31:24 | **memorialized**  25:17 25:25 | **mortgage**  49:9 | **negotiation**  21:12 21:22 22:15 25:21 50:11,13 69:5 |
| **marc**  11:15 13:4,6,6 14:17 15:20,25 19:3 20:14,18 26:18 28:14 30:14 31:2 61:18 | **mentioned**  47:11 | **moshe**  10:1 | |
| | **mere**  53:13 | **motion**  2:1 13:9 14:1,2,3,12,19 15:2 18:13,14 29:11 37:2 37:7 43:5 51:19,25 66:18 67:11 76:5 | **negotiations**  22:10 22:11,17 23:16,23 38:5 40:5 52:8 64:9 64:13 |
| | **meredith**  11:8 | | |
| | **merely**  31:24 | | **never**  32:6 37:25 38:12 51:7 63:18 |
| **mark**  6:16 7:4,5 10:2,14 11:21 13:7 16:5,8,8,14 68:22 | **merger**  29:19,22 | **move**  17:21 23:19 24:1,3 28:6 30:8 36:16 71:6,10 | **new**  3:4 13:14 20:20 25:6,12 48:9,11 50:14 52:25 59:13 60:21 67:17 70:14 72:3,5 73:19 74:9 |
| **market**  1:11 | **merits**  37:21 39:10 68:9 72:1 73:4 | | |
| **marketplace**  21:4 | **met**  74:15 | **moving**  31:17 | |
| **marshall**  11:6 | **michael**  6:17 | **muck**  40:14 | |
| **marwil**  11:7 | **michelle**  9:24 11:1 | **mulvaney**  4:7 | **night**  13:22 14:13 |
| **materially**  26:2 | **middle**  40:13 67:13 | **munger**  9:1 | **nii**  25:2 44:14,19 45:6 52:22 53:2 56:25 57:17 59:5 69:13 |
| **matter**  33:5 48:22 48:23 56:15,15 64:3 64:4 70:23 75:11 | **milestone**  37:14 | **murin**  1:25 | |
| | **miller**  39:17,18,19 40:22 65:18,19 | **mute**  26:15 | |
| | **miller's**  46:3 | **mutual**  47:19 | **nixon**  7:19 |
| **matthew**  9:17 10:11 11:25 12:2 | **million**  38:20 | | **noise**  26:14 |
| | | n | **non**  53:9 |
| **maximize**  37:11 | **millions**  34:20 | **n**  3:1 13:1 76:1 77:1 | **nonsensical**  28:1 |
| **maximum**  21:17 | **mind**  19:20 30:17 68:20 71:15,17 | **name**  66:8 | **noon**  75:6 |
| **mcelroy**  4:7 | **minds**  24:11 | **named**  18:20 | **nope**  31:1 48:6 |
| **mckane**  7:4 13:7 | **mine**  17:6 | **narrow**  23:16 67:7 | **north**  1:11 |
| **mean**  26:22 61:8 | **mineola**  77:23 | **narrower**  46:9 | **northern**  57:11 |
| **meaning**  33:4 45:3 49:19 54:10,12 63:8 68:11,18 72:14,17 72:18,20 | **minute**  17:12 44:4 | **narrowly**  22:7 50:22,22,23 62:16 64:6,6,7 69:7 | **note**  28:2 44:9,10 55:22 59:4 66:19 |
| | **miscited**  25:12 | | |
| | **mislead**  28:1 | **natasha**  10:19 | **noted**  23:13 25:16 56:10 59:7 |
| **means**  31:25 49:2,2 49:23,24 50:2 68:11 68:20 72:17 | **missteps**  24:15 | **natural**  50:6 | |
| | **modest**  30:5 | **nature**  13:15 17:1 45:18 | |
| | **modified**  59:24 | | |

noteholders 5:7,21
notes 40:7
notice 49:18
noting 24:22 53:24
notion 64:8
notwithstanding
  26:20 54:20
november 14:5 15:7
  71:8
number 13:22
  14:14 15:9 24:25
  37:22 67:15
numerous 19:19
nutshell 13:24
ny 77:23

**o**

o 1:20 13:1 77:1
o'kelly 4:19
object 18:23 46:17
objected 28:16,18
  28:20 43:4
objecting 14:25
  43:23
objection 14:3
  15:18,19 17:11
  18:17 20:23 28:4
  29:12 30:2 37:18
  39:23 41:14 43:1,2
  55:16 61:4 62:13
  63:9 67:20 68:1
  72:24 74:8
objectionable 43:19
objections 13:12,13
  13:16,18,20 16:21
  18:21 19:6,14 20:16
  28:10,11,15,23
  31:22 32:4 34:1,2
  36:13 37:8,21 38:3
  47:13 67:15
objectives 37:14
objectors 14:11
  15:13 24:18 31:5
objects 48:12
obligation 61:12
obligations 69:1
obliged 26:4

obtain 49:24
obviated 14:22
obvious 21:15
obviously 14:20
  26:4 31:17 34:19
  38:9 54:3 58:11
  59:11 62:1 70:9
occasions 15:10
occur 30:12,12
  53:25
occurred 68:15
occurring 70:22
offered 21:3 73:6
offers 56:19
office 3:14 7:15
  13:14 32:6 35:17
  67:18 72:25 74:8
official 16:25 39:24
  39:25 51:15 52:13
  52:17 55:22 67:2
oh 19:11 48:7 75:10
okay 15:18,23 16:4
  18:8 59:1 66:14
old 77:21
olson 9:1
omit 49:11
onboard 21:14 40:9
  63:4
once 46:25 47:13
oncor 17:18,20
  32:22,23 34:23
ones 22:21
open 21:18 22:5
operating 34:19
operations 34:15
operator 1:25
opinion 23:4,11
  69:17
opinions 50:10
opportunity 23:14
  23:17 31:15 60:6
opposed 69:11
  70:17 73:20
optimizing 39:4
oral 69:14
orally 66:16

order 13:21,22 14:8
  14:9 17:2 18:11
  19:23 21:16 29:15
  30:7,16,21 32:15
  34:17 39:21 73:16
  74:19
orderly 35:8
orders 22:24 24:19
  24:22,25 25:3 26:10
  33:21 44:18 61:1
ordinary 66:24
organization 57:10
  57:14
organizations 69:22
original 14:19
ought 30:9
outcome 22:23 39:2
outs 59:11
outside 66:24
overriding 21:4
overrule 72:23 74:8
overruled 20:23
  28:8 63:10
oversight 35:1

**p**

p 3:1,1 11:8 13:1
p.a. 8:15
pa 9:6
package 18:2
page 50:23 53:16
  76:4
paid 17:15,23
painfully 29:1
papers 44:12
paragraph 13:21
  18:14,15,18 19:1,18
  28:25 39:22 40:17
  51:19,25 55:18
parameters 62:9
parkinson 11:8
part 20:11 23:7
  36:7 38:14 47:6,17
  47:25
particular 23:8
  24:14 33:3 35:7
  36:7 71:13

particularly 22:21
  56:9
parties 13:15 14:2
  14:10,25 16:18
  18:16,17,20,20 19:2
  19:16 23:17,21,24
  23:25 24:2,9 25:17
  25:21 26:3,6,8,24
  27:24 28:24 29:4,25
  34:7,15,20,25 38:15
  38:17 39:10 40:14
  41:22 42:3,7,11
  43:17,23 45:15
  46:12,16 47:7 51:11
  51:17,25 52:14
  54:25 55:1,25 58:15
  59:8,12,25 60:1
  61:21 62:7 64:24
  65:23 66:4 68:21
  69:2,24 70:1,6,11
party 25:24 32:23
  51:2,5,7 53:17
  55:21 56:9 73:24
passed 49:23
patel 11:9
patrick 10:18 11:10
paul 5:12 10:16
  14:14 37:5
pauline 3:12
pay 29:16
payment 29:22 42:8
  45:19 47:5,11,12,14
payments 29:23
  36:4
pbgc 40:8
pcrb 28:20 36:21
  65:22 66:2
pcrbs 31:18,23
  32:11 35:17 36:15
  36:19 40:7,10 48:11
  74:12
peabody 7:19
peace 17:7,21
pear 49:4
pedone 7:22 20:5,6
  20:6

pegged   30:20
pejorative   46:4
penalize   43:24
pending   31:23
  60:12 70:17,20
penny   29:16
people   31:15 34:24
  35:2 37:8 62:4,20
  62:21 74:4
people's   62:18
percent   63:14,17
perfect   26:12
perfectly   61:25
perform   2:2 76:7
performance   25:8
  25:14 26:9,11 33:17
  45:1,23 46:1 57:19
  57:22,23,25 59:7
  63:22
period   30:9,24
  60:15,17 71:17
permissible   50:8,8
  50:10,15 51:21
  52:21 54:10 55:8
  73:8,8
permit   56:2,5
permitted   58:20
person   66:6
personal   75:10
petition   23:1 25:1
  44:20 54:16,18,20
  54:22,23 55:4,7,12
  56:23
pfeffer   11:11
phenomenal   71:21
phil   9:14
phone   26:14,15
  75:6
phrased   41:13
piece   33:11
pieces   63:20
pimco   6:2,8
pitch   35:6
place   38:23
placed   58:4
plain   33:4 48:13
  49:5,10,25 50:1

53:1 54:12 55:11
  56:17,18,19 57:5
  58:20 59:2 60:23
  63:8 68:10,17 72:13
  72:17,18,19
plainly   56:5
plan   2:3 13:10 14:4
  15:6 17:12 18:3,13
  18:22,22,23 19:15
  19:24 21:8,12,13,18
  22:12,13,19 23:7,8
  23:22 24:5,7 25:19
  25:22,25 26:2,5
  27:8 28:18 29:2,13
  30:1,6 32:2 34:10
  38:4,10,12,13,19
  39:1,14 41:20,23
  42:2,5,11,12,17
  43:6,14,15,16 44:16
  44:20 45:5,8,17,17
  45:18,21 46:11,13
  46:14,22 47:1,6,13
  47:17,22,25 48:2,12
  49:14,17,17 50:7,11
  50:14,19 51:3,6,8,9
  51:11,12,14,20 52:1
  52:9,13,17,23 54:16
  54:18,19,23,24
  55:23 56:1 57:22
  58:5,6,8,9,16,17
  59:9 61:12,22,24
  62:2,2,9,9,19,22
  63:16,16 64:11,12
  64:17,19,19 66:22
  67:16,22 68:3,6,22
  68:24 69:6,12 70:1
  71:11,16,24 73:2,4
  73:5 74:13,13 76:8
plans   47:3
play   71:14 73:9
players   27:12
plead   17:25
pleading   46:5
pleadings   17:9
please   13:2 26:15
podium   16:1 50:12

point   17:6 24:12,18
  25:3 27:3 28:10
  30:16 34:4 39:22
  48:19 65:18 67:25
  71:19,24
pointed   69:9
points   25:13 28:21
  72:4
policy   32:8 33:5
pollution   48:10
  59:21 66:9 67:18
polu   66:21 67:16
position   22:3 31:4
  32:7,13
positions   26:24
  27:16
possession   4:8
possible   21:14,17
  65:8
post   23:1 25:1,2
  39:5 44:20 54:16,20
  54:23 55:4,7,12
  56:23
ppi   36:1
practice   24:24
pre   22:25 25:1
  54:18,22
prearranged   54:19
precedent   47:18
  48:18 55:14 72:11
precedential   24:25
precisely   23:19
precluded   57:19
predictable   22:14
  64:13
predictably   25:18
prejudice   14:2 17:3
  18:20 73:24
prejudiced   18:25
  19:13,16,17
prejudices   29:7
preliminary   45:4
  56:14 73:6
premature   37:24
  73:3
premise   17:17

prepackaged   54:19
prepetition   32:12
  33:16
present   9:11 27:2
  51:8
presentation   14:20
  28:13
presented   38:1,12
  39:9 58:12
presents   51:3
preserved   39:12
preset   41:19 43:18
presumed   74:17
prevented   40:1
price   17:25 18:1
primack   4:12
primarily   13:21
  21:8
primary   67:20
principle   22:14
  36:24 62:15 64:21
principled   64:12
principles   28:4 49:7
prior   53:4 61:5
  67:23 70:22
prize   38:7
probably   44:4
problem   26:21
  59:23 64:20 65:4
procedural   14:2
  43:22 67:25,25
proceed   48:25
proceeding   17:10
proceedings   77:4
process   17:20 22:22
  24:4 35:1 38:16
  39:4 43:4,6 54:20
  74:3,5
processes   35:19,24
  36:9
professional   28:19
  29:14,16 73:2
professor   33:4
  59:15
progress   71:18,21
prohibition   53:3,22
  53:24,24 54:15

**prohibits** 50:16
**promote** 21:2
**promoting** 69:5
**proof** 31:14
**proper** 67:24
**properly** 38:3 55:5
**proponent** 58:8
**proponents** 58:6,16
**proposals** 40:16
**propose** 45:17,18
**proposed** 26:2
**proposition** 21:1
**prosecuted** 30:3
**proskauer** 6:13
  16:2,8
**protect** 27:5,7,24
  32:10,21 34:3 70:11
**protected** 36:13
**protecting** 36:18
**protection** 36:3
**protections** 45:11
**prove** 18:1
**provide** 21:25 25:14
  34:18 57:21
**provided** 74:7
**provides** 35:14
  51:10 53:16,25 55:3
**providing** 45:1
**provision** 25:20
  28:18 32:16 45:24
  48:22 54:8,11 57:23
  57:25
**provisions** 28:16,17
  29:3,4,17 30:1 45:1
  47:4,5,6 56:24
  57:19 59:7 61:22
  62:3 65:1
**psa** 14:1,10,12
  16:20 20:21 24:2
  27:11,17,21 28:16
  28:19 30:21 33:12
  34:15,16,20 35:7,10
  35:14 37:1,13,20
  38:13 39:13,23 40:2
  41:2 43:4 44:2,5,6
  45:23 46:12,16,25
  46:25 47:9 51:9,17

51:19,24 53:15 54:4
  54:23 55:2,4,12
  56:23 57:21 59:12
  59:23 60:1,3 61:6
  61:13 64:24 65:5,6
  65:12,21 67:1,2,5
  67:11,21,22 68:2
  69:1 70:8 71:4,5,8
  71:18,22 74:4,18
**psas** 22:25 25:1
**public** 74:3
**puc** 30:20
**puct** 35:11,12
**purchasing** 34:25
**purely** 33:9
**purpose** 22:11,12
  28:7 32:1 34:1
  60:11 64:9,11
**purposefully** 14:24
**purposes** 24:13
  30:9 62:16
**pursuant** 44:20
**pursued** 32:12
**put** 14:7 17:13 20:1
  59:4 66:12
**puts** 73:13
**putting** 21:22

**q**

**quereshi** 11:12
**question** 67:5,9
  68:2 73:13 74:15
**questions** 15:11
  30:2,25 39:14 48:5
  61:15 65:16
**quite** 22:8 37:23
**quote** 23:13 25:16
  39:23 44:16 45:13
**quoted** 48:1
**quotes** 57:7

**r**

**r** 1:20 3:1 8:23 13:1
  77:1
**rachael** 11:13
**raise** 29:8,10 68:1
**raised** 15:15 32:20
  34:5 39:22 67:20

71:12 74:11
**raises** 73:1
**ran** 26:22
**ravi** 11:16
**reach** 22:11 64:10
**read** 14:16,17 40:18
  44:15 45:23 49:13
  50:22
**reading** 22:9 57:6
**real** 34:18 60:8 63:1
  70:25
**really** 32:20 41:12
  42:1 43:1 44:4
  58:17 63:6 64:3
  67:13 68:7 71:4
**realm** 21:15
**reason** 30:7 32:8
  36:19 38:19,21
**reasonable** 67:6,12
  68:2
**reasoned** 45:5
**reasoning** 58:14
**reasons** 28:3 53:12
  72:23
**reath** 8:1
**receiving** 45:4
**recognize** 50:4
**recognized** 22:5,6
  49:7,25 53:2 56:7
  58:4
**reconsider** 45:3
**record** 18:16 20:8
  20:11 25:16 32:18
  33:7 36:25 41:6
  61:3 63:21 67:10
  77:4
**recoveries** 31:16
  35:22 36:16
**recovers** 36:17 62:4
**recovery** 31:19,25
  33:5 63:18
**reduce** 60:14
**redundant** 19:21
**reed** 3:3 48:9
**reference** 18:11
**referenced** 18:15

**referred** 38:6 57:7
  59:15
**reflect** 66:5
**reflects** 25:16 36:25
**regard** 61:19 62:11
  65:21 73:12
**regarding** 28:16
  48:15 50:7
**regardless** 45:8
**regulatory** 30:20
  36:7 60:17 65:7,10
**rehabilitation** 21:2
  21:13,17
**rehabilitative** 21:7
  24:13
**reject** 22:16 50:19
  57:8
**rejecting** 55:22
**rejection** 49:13,14
**related** 29:2
**relates** 28:19 54:24
  73:1
**relays** 72:25
**release** 28:17 29:3
  47:3,16
**releases** 42:7 45:21
  73:1
**relevant** 43:8 55:6
**reliance** 68:13
**relied** 34:12 52:5
  57:9,24
**relief** 30:5 40:21
  74:1
**rely** 26:7 55:5 56:25
**remaining** 13:13
  15:12 20:15 28:10
  28:14 67:15
**remarks** 17:6
**remedy** 25:8 26:9
  26:11 33:17 57:21
**remember** 64:16
  72:16
**render** 53:13
**rendered** 45:9
**reorganization** 14:4
  21:8 46:13 52:13
  55:23 67:23 69:6

repeat 31:7 33:10 37:16
repeated 62:12
repeatedly 29:2
reply 28:21 33:22 37:8 55:19
reported 48:15
reporting 34:18
represented 27:21
representing 40:1
represents 63:14
request 50:10,18 51:4,14 52:12,17 55:22 60:10,12 68:4 68:6
requested 1:8 40:21 55:25
requesting 50:2
requests 36:7 52:21 52:25
require 33:1
required 13:16 32:16 37:19 44:8 61:25 67:3
requirements 23:9 44:22
requires 17:8,9 66:25 73:20
rescap 58:22,23 59:1,4,7
reserve 39:14
residential 53:11
resolution 14:23 21:10 35:3 71:23,24
resolve 14:11 19:6 31:15 36:8 40:11 66:2
resolved 13:11,20 16:21 31:14
resolving 66:3
respect 13:18 14:12 15:14 18:13,21 19:13 21:12 28:23 29:14 30:4 42:2,4 42:19,25 43:7 44:8 46:3,9,24 47:21,23 48:20 60:10 61:19

respectfully 32:3 35:21 56:4
respond 14:8 37:17
response 72:3
rest 54:11
restate 41:1
restricted 27:18
restricts 53:21
restructuring 22:19 26:3 36:2 37:10,24 38:6,10 39:9 43:10 43:15,18 45:14 46:14,24 47:7 54:22 57:3
restructurings 27:15
result 24:7,8,14 38:14 40:17 56:12 71:21 72:16,17,21
retail 27:6 66:9
retain 22:1
retention 26:25
returning 31:18
revenue 59:16,21 67:18
reviewed 14:25 18:14
reviewing 34:21
revised 19:19 49:21
rewrite 56:2,5,7
richard 3:16 7:17 7:22 10:6 11:19 18:9,10 19:8,11 20:3,6,6 41:5,6,9
richards 4:1
rifkind 5:12 37:5
right 38:3 64:5,25 66:14 74:23 75:4
rights 19:23 29:8 39:11
ringer 11:13
rise 13:2
risk 17:25 18:1,2
road 38:22 77:21
robe 59:15
robert 11:5

robust 46:8
roemiein 11:14
roitman 11:15
ron 49:4
room 34:23
rose 6:13
rothschild 5:20
routinely 23:1
rsa 25:7,13,18,24 26:6 32:12 33:16 34:10 54:22 55:2
rsas 22:25 25:1
rudnick 8:10 40:25
rule 21:11 54:5 60:11,11
ruled 73:7
ruling 72:19 73:25
rulings 69:14 76:3
runs 28:4 35:25

**s**

s 1:21 3:1 13:1 53:3
saben 6:11
sale 30:6
salmans 6:4
sarawgi 11:16
sassower 7:6 13:7 75:12
satisfactory 63:5
satisfied 14:9 74:19
satisfy 15:1
savings 8:16
sawyer 60:4
saying 25:15 35:17 46:5
says 48:19,21 49:1,2 49:4,12 59:16
schedule 30:8
scheme 31:25 33:2 43:3
schepacarter 3:16 7:17 18:9,10 19:4,5 19:8,11 20:3 29:9 41:4,5,6,9 71:3,12
schepacarter's 61:19
schider 11:17

schlerf 5:23
schotz 9:6
schwartz 11:18
scope 73:7
scott 9:12 10:3,21
script 45:10
scripted 43:16
se 23:8
seated 13:2
second 28:18 36:1 40:6,25 41:16 59:20 65:2
secondly 57:8
section 20:22 21:11 22:9 23:9 43:25 44:23 45:20 47:23 48:14,15,20,24 49:10,12,20,25 50:15 51:10,16 52:15 53:3,13,16,20 54:13,13,15,16 55:3 55:5,6,10,16,20 56:2,18 57:21 60:23 63:23 65:5 68:17
sections 41:24 47:15 48:1,3
see 18:15 22:14 38:1,3 47:12,14 48:1,7 75:5,6,11
seeing 22:1
seeking 21:2 43:24 64:17
seen 32:6
sell 24:11
selling 27:15
send 68:23
sending 68:21
sense 26:12 58:8
seon 9:20
separately 40:10
september 1:14 30:22 77:25
sequencing 17:7
serious 32:19 36:16
seriously 22:9
serve 24:15 28:6

served   32:1
serves   30:9
service   21:3
set   30:11 41:23
    42:15,18 46:25 47:5
    47:16
seth   10:8
sets   43:5
setting   72:11
settlement   14:3
    15:6 17:4,13 18:21
    18:24 19:14,24
    29:11,18,21 38:13
    38:20 40:17 42:5,13
    46:15,22 47:2,13
    61:12 71:7
settlements   38:24
severely   71:9
seward   8:20
shadow   30:15
shannon   23:5,10,13
    24:21 27:4 28:1
    34:12 57:24 62:24
    69:23
shannon's   23:4
    25:3 69:17
share   60:7
shareholders   27:6
sharing   21:23 59:17
    59:22
sho   65:25
shore   5:9 31:5,6,10
    31:12 59:15 63:12
    63:12,20 65:25 69:9
    75:8,9
shore's   38:8
short   14:16,17
    24:21
should've   35:18
show   22:1 44:4
showing   60:15
side   7:10 17:19
    23:23 32:18 36:2
    37:9 38:1,2 39:20
    39:20 40:4,25 50:11
    65:19 71:13 73:7

sides   35:25
sign   19:20 74:19,20
signaling   66:7
signals   21:21
signatories   24:6
    25:9 26:20 27:17,21
    29:17 34:17 70:1,12
signed   27:18 58:15
    59:12 70:7
significant   51:22
    61:2
signing   24:2
similar   17:6
similarly   26:19
simon   4:14,17
simple   28:1
simply   57:8
single   36:21
sit   32:25 65:15
sitting   21:21
situation   30:9 45:14
    45:16 58:11 59:25
situations   27:15
six   38:22
size   26:24 35:5
smack   52:2
small   27:5
smith   3:3 48:9
smoke   21:21
snyder   52:4,6
soften   56:10
sold   17:18
sole   49:5
solicit   49:19,23 51:2
    51:6 58:24 63:3
    64:17
solicitation   20:21
    22:6,15,16 23:9,17
    24:4,20 27:4 32:2,7
    33:8,15,19,25 37:1
    43:7 44:22 45:12
    48:13 49:16,20,23
    50:2,8,20,21,25,25
    52:3,7,12 53:4,6,25
    54:1,20 55:20 61:7
    62:6,15,16,23 63:7
    63:25,25 64:13

67:22 68:1,11,11,16
    68:18,20 69:8,10,12
    70:21 71:1 72:6,10
    72:14,24
solicitations   53:15
    55:4,8,12
solicited   24:6 49:14
    53:21 54:4,18 67:3
    68:8
soliciting   52:23
    62:1
solutions   77:20
somebody   26:13
    73:5
sontchi   1:21
sonya   2:25 77:3,8
soon   65:8
sophisticated   25:16
    27:12,20 70:2
sophistication
    27:25 34:7
sorry   15:22 26:13
    35:11 41:8 65:18
sort   22:1,2,5 41:12
    41:13 44:2 63:1
    72:2 73:6
sounded   65:2
space   27:13
special   58:4
specific   25:8,14
    26:9,11 33:17 44:25
    45:23,25 52:12
    55:21 56:24 57:19
    57:21,23,25 59:6
    63:22 70:13 72:4
specifically   20:1
    32:9 34:12 37:17
    46:14 48:3 49:11
    51:10 53:16,23
    69:11
spectrum   50:4,6,11
    50:17,18 52:18,21
spent   34:20
spoke   14:23,25
    25:15
squabbling   23:22

square   38:22 39:1
stability   22:20
stakeholders   21:13
    21:19,24
stand   41:3
standards   74:15
stargatt   3:8
start   20:25 38:23
    49:9 65:7,11 74:3
started   35:9,15,24
    35:24 36:10
starting   35:19
state   20:8 60:11
stated   29:1 42:3
    43:2
statement   27:9,23
    33:18 42:20,22,25
    46:4 49:17 50:7,19
    52:10,15 53:5,8
    54:2,3,21 55:9
    56:14 58:10,25
    62:19,21 63:23 64:1
    64:5,24 67:23 68:12
    70:6,11,16,17,20,22
    70:23 71:1
statements   70:8
states   1:1,10 3:14
    7:15 18:10,17,25
    19:12,17,21 41:6
    44:15 67:19
station   44:13,19
    45:6 56:24 57:16
stations   25:2 49:25
    59:5 69:14
statute   49:2,2 53:14
    53:25 54:11 55:13
    56:5 74:8
statutes   49:4
statutory   33:1 49:8
    54:5
stay   28:20 30:4,13
    60:12,14,19 73:12
    73:14,22 74:7
steiglitz   11:19
stem   39:3
step   20:24 32:6

stephen 9:18 10:15
steps 35:8 73:15
steven 10:7
stickles 9:9
stock 4:15
stone 42:18
stop 23:21
strategic 32:4 33:9
  34:2
strategy 33:3
stray 15:4
street 1:11
stronger 17:11
structure 32:11
  43:22
structured 43:11
structures 21:23
stuart 10:23
submissions 66:15
submit 61:23 74:23
submitted 14:13
  18:12
subsequent 53:7
substance 71:7
  72:16,21
substantial 26:1
substantive 14:3
  19:23
success 32:2
successful 66:2
succinctness 17:5
suffice 14:8
sufficient 36:5
  60:12,15
suggesting 19:5
suggests 37:20
suicide 31:19,25
suite 77:22
suits 33:3
sullivan 7:9
sum 33:6 36:25
summarily 20:23
summary 49:17
support 2:3 13:10
  16:19 18:13 22:19
  23:3,7 24:10,21
  26:1,3,20 29:5,13

30:1 31:3 36:6 37:7
  37:10 41:2,23 42:2
  42:11 43:10 44:16
  44:20 45:5 46:13
  47:25 48:2,12 51:11
  52:1 54:16,22,23
  55:15 57:3,22 58:6
  58:16 59:9 61:12
  66:10,13,22 67:10
  67:16 68:21 70:1
  76:8
supporting 57:2
supports 39:20
  54:12
supreme 48:25 54:6
  56:7
sure 18:4,24 19:12
  19:16 20:17 25:11
  35:2 43:12 67:24
  68:8
surprisingly 53:9
surrounding 70:4
survive 38:18 42:11
suspect 38:2
suspected 43:25
sweeney 11:20

t

t 17:19,21 23:23
  32:18 38:1 39:20,20
  40:4,25 65:19 77:1
  77:1
take 17:12 20:24
  42:5 46:17,21,23
taken 32:24 33:23
  33:25 34:6,10 35:6
  69:25 73:15,20
talk 33:4 71:19
talked 41:11 50:12
talking 53:22 61:24
  62:18 64:15 65:11
  65:25,25 66:1,1
talks 36:18 69:23
tangible 30:17,23
targeted 30:22
taub 11:21
taylor 3:8 8:18

tceh 3:9 5:7,13,21
  8:21 37:6 39:24,25
  59:17,20,20 63:15
tch 39:4 54:25
technical 33:16
technicality 59:14
  60:8
technically 57:14
telepathically 21:20
telephonically 9:11
tell 59:11
tenant 36:12
tentative 22:12 52:8
  64:11
term 50:2,11,21
  62:17 63:8
terms 22:12 29:19
  37:19,23 41:22
  42:15,17 43:18 44:8
  45:19,25 46:25 49:6
  51:20 52:1,10 59:23
  60:2 61:20,25 62:3
  62:8 64:10
terse 56:18 61:1
test 39:10
testimony 13:15
  14:20 15:13 16:17
  16:21 20:10
texas 4:9 57:11
thank 14:10 15:20
  15:25 16:5,21 17:5
  18:7,8 19:11 20:3,4
  20:12 26:18 31:1,2
  31:12 37:3 39:16,17
  39:18 40:21,22 41:3
  41:4,5 48:5,6 61:17
  63:11 66:5,14,14
  75:1
thankful 16:20
thau 11:22
thereof 52:2
thereto 26:8
thing 17:24 29:15
  39:6 63:7
things 23:11 47:9
  47:10 60:18 65:6
  69:23 70:15

think 14:7 18:12
  19:18,21,25 20:1,18
  20:23 29:12 30:5,18
  32:3,4,25 33:6
  36:12,14,15,25 39:7
  40:17 41:10 42:3,6
  43:12 44:1,4,9,10
  44:12 45:20 59:2
  62:10,11 63:1,5,6,9
  66:19 69:20 70:5,19
  71:22 72:4,13,15,19
thinking 30:18
third 22:4 28:19
  32:23 33:14 47:18
  48:16,19 50:21,24
  52:3 53:23 55:14
  56:1 60:24 64:7,15
  64:20 68:14 69:4,11
thomas 6:16 9:4,22
  16:2,5,8,8,14 20:9
  74:21 75:1,3
thorough 23:4
three 35:18,23,25
  47:10 63:14,17
tied 40:12 45:22
ties 39:23
tight 30:8
time 24:3,15 29:10
  29:11 34:18 35:19
  38:9,10 49:15 53:21
  53:23,24 54:1,4
  59:3 60:12 61:9
timely 73:16,17,20
times 19:20 37:22
timing 64:3
tirelessly 37:9
title 55:17
tiwana 11:23
today 13:9 15:10
  16:16 18:5 19:6,13
  19:22 20:11 29:3,7
  29:24 30:3 31:14
  32:8 38:9 39:21
  57:7 58:12 66:11,20
  66:20 68:16 71:6
  73:3,11 74:16 75:4

**today's** 17:9 38:10
**told** 30:19 36:15
**tolles** 9:1
**tom** 5:10
**tomorrow** 74:2 75:6
  75:8,9,10
**ton** 65:9,14
**tong** 11:24
**tool** 22:20
**top** 63:24
**totaling** 40:8
**touch** 28:22 39:22
  74:11
**track** 30:19 41:20
**trade** 27:6 40:8
  59:19
**transaction** 19:25
  37:10 39:11 41:11
  41:15,18,21 42:10
  42:14,16,21,22,25
  43:6,8 44:9 45:24
  46:20 47:10,17,22
  47:25 60:16 61:20
  61:24 70:16 73:18
  73:19,24
**transcribed** 2:25
**transcript** 77:4
**transcripts** 61:4
**transfer** 4:15
**transmitted** 49:16
**treated** 62:4 66:12
**trek** 43:15
**trowlen** 66:8,8
**troy** 11:25
**true** 29:15 32:3
  52:18 56:13 77:4
**truism** 21:16
**trust** 4:15 8:21 9:7
**trustee** 3:14 7:15,20
  8:7,11 13:19,20
  18:10,15,17,25
  19:12,17 20:7,20
  28:15,18,20 29:8
  31:18,23 32:12
  39:10,22 41:7 48:10
  56:14 65:2 67:19
  72:25 74:9

**trustee's** 13:14
  28:23
**trustees** 32:6 35:17
  37:18
**truth** 40:3
**try** 24:17 31:15
  40:10 56:20 62:13
**trying** 14:7 31:13
  46:6 65:13 66:1
**tuesday** 16:18
**tullson** 12:1
**turn** 20:15 31:4
**turned** 46:7
**tweed** 33:4 63:5
**two** 24:18 25:13
  31:22 36:13 44:18
  58:1 63:20
**type** 46:14 60:5
**types** 27:14 43:14
  72:12

**u**

**u.s.** 1:22 13:14
  18:15 20:20 28:15
  28:18,23 29:8 31:18
  31:23 32:6,11 35:17
  37:18 39:9,22 56:14
  65:2 74:9
**ultimately** 24:5
  34:21 47:6
**unacceptable** 39:2
**unambiguous** 48:14
  51:14
**unauthorized** 52:12
**unavailing** 69:22
**unb** 8:7
**unclear** 54:8
**unconditional**
  53:15
**uncontested** 67:9
**uncontroversial**
  20:25
**underscored** 25:2
**understand** 34:24
  35:21
**understanding** 49:1
**understatement**
  70:2,4

**understood** 18:4
**underwood** 12:2
**underwriters** 49:1
**undisputed** 51:6
**uneducated** 34:8
**unexpected** 20:9
**unfair** 74:14
**unimpaired** 17:23
**unimpairment**
  17:24
**unit** 17:13
**united** 1:1,10 3:14
  7:15 18:10,17,25
  19:12,17 41:6 67:19
**unpublished** 24:19
  25:3
**unquestionably**
  37:15
**unreported** 24:18
**unsecured** 5:7,21
  40:7,7 43:21 59:20
  63:15 66:12
**unusual** 61:21
**unwillingness** 56:10
  56:12
**upside** 32:23
**urged** 23:21
**use** 41:25
**uses** 63:8
**ust** 70:14,15
**utility** 23:2 74:3

**v**

**vague** 24:10
**valid** 47:1
**value** 24:25 34:25
  36:10 37:11 39:4
**valued** 21:4
**various** 16:18 48:3
  72:23
**vast** 26:10
**vehicle** 21:6
**venable** 6:7
**verge** 70:24
**veritext** 77:20
**version** 49:22
**veto** 17:19

**view** 24:12 62:14
**views** 60:6
**vincent** 5:4
**violate** 44:22
**violated** 48:21,22
  48:24 55:15
**violating** 57:2
**violation** 23:8 32:2
  32:7 33:8,19,25
  37:1 47:18 48:13
**violations** 33:15
  43:25
**violative** 48:2
**virtue** 14:22
**visibility** 22:23
**voluminous** 27:22
**vote** 23:7 25:18
  26:4 45:8,17 50:2,3
  50:18 51:5,7,12,15
  52:13,17,23 58:11
  58:24 62:20,22
  64:25 68:22
**voted** 64:19 70:7,7
  70:7
**votes** 26:7 43:7 44:1
  44:19 45:10 48:13
  51:9,18,18,21,23
  52:21 53:7 54:4
  57:20 61:9,14 62:1
  62:18 63:17,22,25
  64:17 67:22 68:5,7
  68:8 69:12
**voting** 27:8 34:9
  56:1

**w**

**w** 10:14
**wait** 19:9 35:9
  65:15
**waited** 35:18
**waiting** 35:23 36:9
**waive** 30:12 60:10
  73:14,22 74:7
**waived** 30:10 59:18
**waiver** 28:20 59:18
  59:22 73:12
**waiving** 30:24
  60:18,21

**walper**   9:4 66:1
**walrath**   69:15
**want**   17:7 28:9 30:8
  37:16,17 38:1,3
  39:21 41:12,24
  48:18 64:19 65:10
**wanted**   15:4 17:11
  18:4,24 19:12,15
  25:24 41:9,24,25
**wants**   73:25
**watching**   47:19
**water**   36:14
**way**   22:21 23:18,25
  31:9,11 36:14 45:23
  58:19,22 61:1,10
  71:17
**we've**   17:1 32:6
  40:13,14 61:3 75:3
**weight**   25:4
**weiss**   5:12 37:5
**welcome**   16:23 75:2
**went**   22:10 58:18
**wharton**   5:12 37:5
**whim**   24:11
**white**   5:6
**williamson**   6:22
  12:3 16:11,12,14
**wilmington**   1:12
  8:16,21
**win**   22:13 64:11,12
**wind**   22:21
**winters**   12:4
**wish**   15:23 31:3
**wishes**   66:7
**witness**   15:23
**witt**   12:5
**wolwrath**   44:18
  49:24 52:22 53:2
  56:25 61:2
**wolwrath's**   44:14
  60:25
**word**   49:19 53:23
  62:12,12 73:19
**words**   36:9 51:22
  52:22 56:11,11
**work**   24:21 65:9,14
  66:4 71:22

**worked**   17:2 37:9
  40:14
**working**   14:11
  31:21 40:10
**works**   17:14,22
**would've**   32:23
**writing**   66:15
**written**   49:17 70:25
**wrongful**   33:12
**wsfs**   8:11,16

**x**

**x**   76:1
**xiaoyu**   10:12

**y**

**year**   46:23
**years**   22:4
**yenamandra**   12:6
**yesterday**   13:11
  18:12
**york**   3:4 13:14
  20:20 25:6,12 48:9
  48:11 50:14 52:25
  59:13 60:21 67:17
  70:14 72:3,5 74:9
**young**   3:8

**z**

**zazove**   12:7
**zero**   32:13