# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

|  |  |  |
|---|---|---|
| Mark E. McKane | 555 California Street<br>San Francisco, California 94104 |  |
| To Call Writer Directly:<br>(415) 439-1473<br>mark.mckane@kirkland.com | (415) 439-1400<br>www.kirkland.com | Facsimile:<br>(415) 439-1500 |

October 14, 2015

**By eFiling and Hand Delivery**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

    Re: *In re Energy Future Holdings, Corp., et. al.* (Case No. 14-10979)

Dear Judge Sontchi:

  I write in connection with tomorrow's initial pre-trial hearing on the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement*, filed August 10, 2015 [D.I. 5249] (the "Settlement Motion") and confirmation of the fifth amended plan of reorganization of Energy Future Holdings Corp., *et al.*, [D.I. 6122] (as may be further amended, modified, or supplemented, the "Plan"). The Settlement Motion and Plan confirmation proceedings (the "Confirmation Proceedings") are scheduled to begin on November 3, 2015. In an effort to organize and streamline the Confirmation Proceedings, the debtors and debtors in possession of Energy Future Holdings Corp., *et al.* (collectively, the "Debtors") offer the following proposals. The Debtors raised and discussed these proposals with all parties participating in the Confirmation Proceedings (the "Participating Parties") during an October 13, 2015 telephonic meet and confer.

**I. The Confirmation Proceedings Should Be Separated Into Two Phases and Witnesses Should Be Called Only Once In Phase One.**

  The Court has ruled that issues concerning reinstatement of the EFH legacy notes, including the feasibility of a reorganized TCEH, will be addressed in a separate phase of the Confirmation Proceedings, scheduled to begin the week of November 30, 2015. (9/28/15 Hr'g Tr. at 43.) Because many of the Debtors' witnesses will be testifying in support of both the Settlement Agreement and Plan confirmation, division of the Confirmation Proceedings into additional phases, such as separate phases for the Settlement Motion and Plan confirmation, would require calling numerous witnesses two or even three times. This would be inefficient and

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
October 14, 2015
Page 2

impractical for many reasons, including due to duplication of testimony, time lost getting witnesses on and off of the stand, and the costs incurred in coordinating multiple rounds of testimony for many witnesses.

Accordingly, the Debtors propose that the Confirmation Proceedings should have two phases only: an initial phase to address the Settlement Motion and Plan confirmation generally ("phase one") and a second phase limited to reinstatement ("phase two"). Witnesses called in phase one should take the stand only once. To the extent that a witness appears on the witness list of both Plan supporters and Plan objectors, the Debtors propose, subject of course to the Court's control on a witness-by-witness basis, that the cross examination of the witness may exceed the scope of the direct if necessary to avoid recalling the witness.

The Participating Parties discussed the Debtors' proposal at length in the meet and confer and have agreed to proceed in two phases only, with witnesses being called in phase one only once.

## II.     Phase One of the Confirmation Proceedings Should be Limited to Fifty-Five Hours.

The Court has set aside ten days for the Confirmation Proceedings. During the meet and confer, the Participating Parties generally agreed that phase one of the Confirmation Proceedings should be completed within those ten trial days.

Based on this consensus and on a realistic assessment of the amount of actual court time available each day—after accounting for morning conferences, reasonable breaks, short lunches, and other minor interruptions—the Debtors proposed that phase one of the Confirmation Proceedings should be limited to 50 hours. This time limit should include all court time used, including for direct and cross examinations, arguing motions, opening statements (if any), and closing arguments.

The Debtors believe that the issues to be determined will be fairly discrete, including, among other things, whether the Plan was proposed in good faith, whether the Plan, after its Effective Date, is feasible or is likely to be followed by liquidation or need for further financial reorganization, whether the EFIH and EFH creditor claims are impaired, whether certain fees and expenses may be paid to Plan supporters, and whether, after canvassing the issues relating to the inter-creditor, inter-Debtor and insider claims being released pursuant to the Settlement Motion, the Settlement should be approved as being fair, reasonable, equitable and in the best interests of the estates, given the probability of success in litigation, the likely difficulties in collection and the complexity, expense, inconvenience and delay of the litigation being settled.

The Debtors understand that the Plan objectors do not agree to the Debtors' 50-hour proposal and insisted that 60 hours may be necessary. The Debtors disagree that ten hours of

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
October 14, 2015
Page 3

additional time will be necessary, and believe that expanding to 60 hours would make concluding phase one in the ten days allotted by the Court infeasible, requiring the Court to add days to the current hearing schedule, which would likely extend phase one beyond the Thanksgiving holiday.

As a compromise, the Debtors propose 55 hours, which the Debtors believe is the maximum number of hours that the current 10-day schedule can realistically accommodate and should be more than sufficient for the parties to fully present their cases. Thus, the Debtors request the Court to direct the parties to put their cases on within a 55-hour limit. This would not preclude the Court from re-visiting the duration of the trial at a later time if circumstances change; however, if more time is added now it assuredly will be consumed regardless of whether it is actually needed.

### III.  Court Time Should Be Allocated Equally Between Plan Supporters and Objectors.

The Debtors and other Plan supporters bear the burden of proof on the Settlement Motion and the Plan, and by necessity the great majority of fact witnesses identified by all Participating Parties are Debtor or other Plan supporter witnesses. Accordingly, the Debtors proposed that sixty percent of the time allotted for phase one should be allocated to Plan supporters, with time monitored by a chess clock. Should a Participating Party require time beyond its allocation, that party should have to demonstrate a compelling need to address a matter that it was unable to raise during its allocated time through no fault of its own.

The Debtors raised their proposal on time allocation during the meet and confer. While Plan objectors were amenable to the chess clock concept, they did not agree on the 60/40 allocation, nor did they agree that additional time should be granted only with a showing greater than "good cause."

In an effort to compromise on time allocation, the Debtors propose that the parties divide court time equally between Plan supporters and objectors. The Debtors continue to maintain that time should be extended only after a showing of compelling need, and the proposed compromise on time allocation only lends further support to that position.

### IV.  Witnesses Should be Permitted to Testify Through Written Directs, Live Testimony, Deposition Designations, or a Combination of these Formats.

To conserve court time and promote efficiency, the Debtors propose that any Participating Party may submit narrative written directs for all or part of any witness's testimony. Written directs would not count against a party's allocated time. Under the Debtors' proposal, witnesses testifying by written direct would also be permitted to supplement the written direct with live testimony. Of course, all witnesses would be tendered for cross examination. Written

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
October 14, 2015
Page 4

directs should be provided to all Participating Parties at least 48 hours before the witness takes the stand for live direct testimony or cross examination.

The Plan objectors did not reject the concept of written directs during the parties' meet and confer, but did not agree to the terms of the Debtors' proposal. In particular, the EFH Committee maintains that parties should not be permitted to offer a witness for a combination of written and live testimony. The Debtors disagree. Most of the fact witnesses will be testifying to a wide range of transactions and negotiations. Parties should have the discretion to decide that, for example, certain transactions can be more efficiently described in written testimony while opting to highlight negotiation history through live testimony. Also, the significance of some issues may wax or wane during trial which may require a witness to supplement written testimony from the stand. There is no good reason to eliminate that flexibility. The EFH Committee's all-or-nothing position, which would prevent this and other sensible divisions between written and live testimony, should be rejected.

The Plan objectors also expressed concern that allowing testimony through written directs that do not count against the tendering party's time unduly favors the Debtors and Plan supporters, for whom this option will be more available. The Debtors propose to assuage this concern by permitting Plan objectors to submit deposition designations even for witnesses who are available and will testify live. Deposition designations, like written directs, would not count against the submitting party's time. To minimize inefficiency, however, the Participating Parties should refrain from covering matters on cross examination that are already the subject of deposition designations.

**V.  Opening Statements Should Be Unnecessary.**

By the start of the Confirmation Proceedings on November 3, the Court will have received extensive briefing on all contested issues. The Court will have had an opportunity to read (or reread) the Plan, the Debtors' comprehensive Settlement Motion, the objections to the Plan and Settlement Motion, and the Debtors' and other Plan supporters' responses to those objections. Those written materials will orient the Court to the issues and the parties' positions. Opening statements would only retrace that familiar ground and consume valuable court time without introducing any evidence that could advance the proceedings. Unless the Court feels otherwise and would welcome further introductory remarks, the Debtors propose that the hearing proceed directly to the evidence without a detour for lawyer speeches and slide shows.

The parties discussed this issue during the parties' meet and confer on trial logistics, but the Plan objectors did not agree to forgo opening statements.

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 14, 2015
Page 5

## VI. Plan Supporters Should Be Permitted to File Supporting Briefs on October 30, 2015.

Plan objectors will file their objections to the Plan and Settlement Agreement on October 23, 2015. Debtors will be filing their reply to all timely objections on Friday, October 30, 2015. (Scheduling Order at 7.) Plan supporters should be permitted to file supporting briefs on that same date, so as to be responsive to the lodged objections. Plan supporters' briefs, like the Debtors', should not be subject to the page limits set forth in Local Bankruptcy Rule 7007-2(a)(iv).

At the meet and confer, certain Plan objectors refused to agree to this briefing schedule. Since then, the EFH Committee has agreed to the Debtors' proposed schedule for supporting briefs. Any remaining objections to the Debtors' proposal should be overruled. Supporting briefs will be of little use to the Court unless they are filed after the objections and can address the objections directly.

## VII. EFH Legacy Notes Makewhole, PPI, and OID Issues Should Not Be Part of the Confirmation Proceedings.

The EFH Indenture Trustee continues to assert that its makewhole claims must be litigated in connection with confirmation of the Plan. Consistent with that theory, the trustee submitted an expert report for the confirmation hearing regarding makewhole claims. The trustee's position is incorrect. The makewhole litigation and other disputed claims need not be resolved before confirmation. It is the *effective date* of the Plan, not its confirmation, that is conditioned on disallowance of the EFH and EFIH makewhole claims. (Plan at IX.B.9.)

There is nothing that requires claims allowance issues to be resolved before or at Plan confirmation. As the Debtors have explained repeatedly to the EFH Indenture Trustee, they will file a separate objection before the confirmation hearing to the makewhole claims, postpetition contract interest claims, and certain other amounts allegedly due on the EFH legacy notes. The Court can hear this objection after confirmation, as is common in large chapter 11 cases. Accordingly, the Court can and should remove the EFH legacy notes makewhole, postpetition interest, and OID claims from the list of issues that must be adjudicated before or at the Confirmation Proceedings.

\*    \*    \*

For the reasons set forth above, the Debtors respectfully request that the Court resolve the foregoing logistical matters and disputes as proposed by the Debtors. Specifically, the Debtors ask the Court to order that (1) the Confirmation Proceedings will have two phases only; (2) 55 hours of in-court time will be allotted for the Confirmation Proceedings; (3) time will be

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 14, 2015
Page 6

allocated equally between Plan supporters and objectors; (4) witnesses will be permitted to testify by narrative written directs, live, by deposition designation, or some combination thereof; (5) there will be no opening statements; (6) Plan supporters may file supporting briefs on the same date as the Debtors file their reply to Plan objections; and (7) EFH legacy notes makewhole, postpetition interest, and OID claims will not be litigated at or before the Confirmation Proceedings.

                Sincerely,

                */s/ Mark E. McKane*

                Mark E. McKane