## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Objection Deadline: Oct. 28, 2015, at 4:00 p.m.** |
|  | ) | **Hearing Date: Nov. 25, 2015, at 10:00 a.m.** |
|  | ) |  |

### OBJECTION OF ENERGY FUTURE HOLDINGS CORP. TO PROOFS OF CLAIM 6524-6733, 7477, 7478 AND 7479 FILED BY AMERICAN STOCK TRANSFER & TRUST CO. AS INDENTURE TRUSTEE FOR EFH LEGACY NOTES

Energy Future Holdings Corp. ("EFH Corp.") files this partial objection (this "Objection")[2] to the proofs of claim[3] (the "Legacy Note Claims") filed by American Stock

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]      The Legacy Trustee filed: (a) on October 7, 2015, the *Motion for Partial Summary Judgment: (i) in Response to Objection to Makewhole Claims; and (ii) Regarding Condition Precedent 9 to Effectiveness of Plan* (D.I. 6386) (the "Summary Judgment Motion"), and an accompanying memorandum of law in support thereof (D.I. 6387), in which the Legacy Trustee requests that the Court order (1) that the allowed amounts of the Legacy Q and Legacy R Note Claims include the full Redemption Price as determined in the Legacy Q Indenture and the Legacy R Indenture and the Legacy Q and Legacy R Notes and (2) that condition precedent number 9 to the effective date of the Plan (Plan Art. IX.B.9) – which provides that all make-whole claims against EFH Corp. be disallowed by order of the Court – cannot be met; and (b) on October 14, 2015, a letter (D.I. 6443) requesting that the Court hold a hearing on the Summary Judgment Motion prior to the start of the Plan confirmation hearing.  The Summary Judgment Motion prescribes an objection deadline of October 22, 2015, at 4:00 p.m. EDT.  That notwithstanding, this Objection to the Legacy Note Claims does not constitute Debtor EFH Corp.'s response to the Summary Judgment Motion.  The Summary Judgment Motion is not ripe for consideration by the Court, and, accordingly, the deadline to object to the Summary Judgment Motion should be tolled, given that the Plan provides for the potential reinstatement of the Legacy Q and Legacy R Notes and, in such event, the Summary Judgment Motion would be rendered moot.  EFH Corp. requests that the Court enter and continue, without further briefing, both the Summary Judgment Motion and the Objection for status hearing at an upcoming omnibus hearing of matters in the Debtors' cases.  EFH Corp. will present this position to the Court at the October 15, 2015 pretrial scheduling conference.

[3]      The Legacy Trustee filed Proofs of Claim 7477, 7478 and 7479 against EFH Corp., the obligor under the Legacy Notes, with supporting addenda attached thereto.  Copies of the addenda for these Proofs of Claim are attached as **Exhibits 1-3**.  The Legacy Trustee also has filed Proofs of Claims against each Debtor other than EFH Corp. to preserve alleged rights arising out of intercompany transfers.  *See* Proofs of Claim 6524-6593 (relating to

Transfer & Trust Company, LLC (the "Legacy Trustee"), as indenture trustee for the unsecured 5.55% Series P Notes due 2014 (the "P Notes"), 6.50% Series Q Notes due 2024 (the "Q Notes") and 6.55% Series R Notes due 2034 (the "R Notes," and, collectively with the P Notes and the Q Notes, the "Legacy Notes") issued by EFH Corp., to the extent the Legacy Note Claims: (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount ("OID"), (iv) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date and (v) fees and expenses, including any right to indemnification from EFH Corp. or any other Debtor; (b) assert claims against EFH Corp.'s debtor-affiliates (collectively with EFH Corp., the "Debtors"); and (c) assert claims in excess of the amounts owed under the respective indentures relating to the Legacy Notes.  In support of the Objection, EFH Corp. respectfully states as follows:

## Preliminary Statement

EFH Corp. objects to the Legacy Note Claims on the following bases.  *First*, EFH Corp. objects to the Legacy Note Claims to the extent that they seek allowance of a Redemption Price claim pursuant to the Forms of Reverse of Notes accompanying each of the Legacy Notes.  No Redemption Price is owed upon repayment of the Legacy Notes because, among other reasons, the governing documents provide for payment of a Redemption Price only in the event of an optional redemption and not, as is the case here, where the Legacy Notes are to be repaid pursuant to a chapter 11 plan after their maturity was automatically accelerated by operation of section 502 of the Bankruptcy Code upon the Debtors' bankruptcy filing.  The Legacy Note

---

5.55% Series P Notes due 2014) (attached hereto as **Exhibit 4**), Proofs of Claim 6594-6663 (reserving the same rights with respect to the 6.50% Series Q Notes due 2024) (attached hereto as **Exhibit 5**) and Proofs of Claim 6664-6733 (reserving the same rights with respect to the 6.55% Series R Notes due 2034) (attached hereto as **Exhibit 6**).

52241274v3

Claims for these amounts should be denied because optional redemption is no longer possible because the Legacy Notes automatically were accelerated by operation of law (section 502 of the Bankruptcy Code) on the Petition Date.  Similarly, EFH Corp. is not liable for breach of contract or "no call" damages resulting from the repayment of the Legacy Notes before a certain date. Neither the Legacy Notes, their indentures, nor any related documents contain any provision that prohibits repayment of the Legacy Notes before their respective scheduled maturities (and, in any event, such maturities have now occurred as a matter of law by virtue of the filing of EFH Corp.'s chapter 11 petition).

*Second*, EFH Corp. also objects to the Legacy Note Claims because they seek postpetition interest at the rate specified in the respective indentures, postpetition interest at the default rate and interest accruing on unpaid interest due as of the Petition Date.  All three of these measures of postpetition interest are disallowed under section 502(b)(2) of the Bankruptcy Code as unmatured interest.  Although courts have generally recognized an exception to this rule when the debtor is solvent, the Debtors' proposed plan of reorganization[4] does not provide for any distribution on account of equity interests in EFH Corp.   EFH Corp. therefore is not solvent within the meaning of the solvent-debtor exception.  Even if the solvent-debtor exception were to apply to EFH Corp. however, the majority view, and the more persuasive view, is that postpetition interest should be awarded only at the federal judgment rate, not at the contract rate. Accordingly, the Legacy Note Claims for postpetition interest in excess of the federal judgment rate should be disallowed.

---

[4]	The *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, D.I. 6122, hereinafter the "Plan."

**Third**, the Debtors object to the Legacy Note Claims because they seek OID that had not amortized as of the Petition Date.  This unamortized OID should be disallowed as unmatured contract interest.

**Fourth**, EFH Corp. objects to the Legacy Note Claims because they seek postpetition fees and expenses, including a right to indemnification.  This Objection does not seek to preclude the Legacy Trustee from pursuing its rights under its charging lien to seek fees from the Legacy Noteholders, as expressly stated in the Debtors' Plan.  These charging lien rights, however, only permit the Legacy Trustee to seek fees from the Legacy Noteholders, not from the EFH Corp. estate.  The Legacy Notes are unsecured notes; therefore, claims for postpetition fees, expenses and indemnification are not allowed pursuant to section 506(b) of the Bankruptcy Code.  Further, contrary to the Legacy Trustee's assertions in the Legacy Note Claims, the Legacy Trustee has not provided a "substantial contribution" to the chapter 11 cases under section 503 of the Bankruptcy Code.

**Fifth**, EFH Corp. objects to the Legacy Note Claims against Debtors other than EFH Corp., which is the only obligor under the Legacy Notes,[5] because the Legacy Trustee has failed to provide *prima facie* evidence to support such claims.

**Sixth and finally**, EFH Corp. objects to the Legacy Note Claims to the extent the outstanding balances of principal and unpaid prepetition interest as of the Petition Date are overstated.

In further support of this Objection, EFH Corp. respectfully states as follows.

---

[5]    Unlike certain of the other EFH Corp. notes, the Legacy Notes are not (and have never been) guaranteed by Energy Future Intermediate Holding Company, LLC ("EFIH") or Energy Future Competitive Holdings Company, LLC.

**Jurisdiction and Venue**

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Objection are section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**The Parties**

4.      EFH Corp. is a corporation organized under the laws of the State of Texas.  On April 29, 2014 (the "Petition Date"), EFH Corp. and the other Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for protection under chapter 11 of the United States Bankruptcy Code.

5.      The Legacy Trustee serves as trustee pursuant to: (a) that certain Indenture governing the issuance of 5.55% Series P Notes, dated as of November 1, 2004 (as amended and supplemented from time to time, the "Series P Indenture"); (b) that certain Indenture governing the issuance of 6.50% Series Q Notes, dated as of November 1, 2004 (as amended and supplemented from time to time, the "Series Q Indenture"); and (c) that certain Indenture

5

governing the issuance of 6.50% Series R Notes, dated as of November 1, 2004 (as amended and supplemented from time to time, the "Series R Indenture" and, collectively, the "Indentures").

## Background

6.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases (D.I. 849).  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions (D.I. 98) and in the Disclosure Statement for the Plan (D.I. 6124).

7.      The Debtors filed the Plan on September 21, 2015, and the Court has set the confirmation hearing to begin on November 3, 2015, and to continue on subsequent dates until completed (D.I. 5771).

## Proofs of Claim

8.      On October 21, 2014, the Legacy Trustee filed Proofs of Claim Nos. 7477, 7478 and 7479, with supporting addenda attached thereto.[6]  Copies of the addenda for these Proofs of Claim are attached as **Exhibits 1-3**, respectively.  Taken together, these Legacy Note Claims assert a minimum of approximately $2.497 billion "plus additional amounts due" against EFH Corp.[7]  (Ex. 1, at 1; Ex. 2, at 1; Ex. 3, at 1.)  The addenda to the Legacy Note Claims state, in relevant part, that the Legacy Trustee seeks $2,428,564,000.00 in principal and $68,479,721.75 in accrued interest.[8]  (Ex. 1, at 2; Ex. 2, at 2; Ex. 3, at 2.)

---

[6]      The addenda attached to these Proofs of Claim contain materially identical classifications of claims against the Debtors.

[7]      As noted in paragraphs 66 through 68 below, the $2.497 billion is overstated by approximately $56 million.

[8]      Approximately $1,282,000,000 in aggregate principal amount of the Legacy Notes is held by EFIH (i.e., almost two-thirds of the Legacy Notes), a Debtor in the chapter 11 cases.  Pursuant to the pending settlement

9.    Moreover, each of the addenda asserts the following categories of claims in addition to principal and prepetition interest:  a make-whole premium, postpetition interest, fees and costs and a right to indemnification.  *Id.* at 2-4.

10.    Regarding a make-whole premium, the Legacy Note Claims seek:

iii.    <u>Other Charges (UNLIQUIDATED).</u>  All other interest, charges, make whole amounts, penalties, premiums, and advances which may be due or become due under the Notes and the Indenture . . .

(Ex. 1, at 3; Ex. 2, at 3; Ex. 3, at 3.)

11.    The Legacy Note Claims seek the following measures of postpetition interest:

i.    <u>Interest (UNLIQUIDATED).</u>  The amount of interest accruing on the Notes from the Petition Date to the date of payment of the Notes, at the rates and in the manner set forth in the Notes and in the Indenture;

ii.    <u>Other Interest (UNLIQUIDATED).</u>  The default rate of interest, the amount of interest accruing on past-due installments of interest, all from and after the Petition Date to the date of payment of such interest, at the rates and in the manner set forth in the Notes and in the Indenture[.]

(Ex. 1, at 2-3; Ex. 2, at 2-3; Ex. 3, at 2-3.)

12.    The Legacy Note Claims also seek fees and expenses for the Legacy Noteholders and the Legacy Trustee, including a right to indemnification:

iii.    <u>Other Charges (UNLIQUIDATED).</u>  All other interest, charges, make whole amounts, penalties, premiums, and advances which may be due or become due under the Notes and the Indenture including, without limitation, reasonable compensation, expenses, disbursements and advances (including, without limitation, reasonable fees and disbursement of counsel and financial advisors) of the Indenture Trustee and (if applicable) of the Holders; and

iv.    <u>Damages</u> (UNLIQUIDATED).  All claims (including "claims" as defined in Bankruptcy Code § 101(5)), suits, causes of action, and any other right of the Indenture Trustee or the Holders, whether known or unknown, against the Issuer, or any of their respective affiliates, agents,

---

agreement among EFH Corp., EFIH and various other parties, EFIH shall waive and release all Legacy Note claims it holds against EFH Corp.

representatives, contractors, advisors, or any other entity that in any way is based upon, arises out of or is related to any of the Indenture Documents or the transactions related thereto or contemplated thereby.

\*\*\*

i.    <u>Fees and Expenses.</u>  The Issuer was, at the Petition Date, and is now indebted and liable to the Indenture Trustee under the Indenture for reasonable compensation, expenses, disbursements and advances, including reasonable fees and disbursements of counsel and financial advisors, as Indenture Trustee under the Indenture, all incurred and being incurred until such date as the Indenture Trustee is discharged and released from its duties thereunder, including, without limitation, the reasonable fees and disbursements of counsel and financial advisors to the Indenture Trustee, incurred in connection with the Issuer's defaults under the Notes, collection of amounts payable thereunder, and enforcement of performance or observance of the obligations and agreements of the Issuer contained therein, including without limitation, all agreements of the Issuer to indemnify and hold the Indenture Trustee harmless contained therein.

\*\*\*

D.    <u>Administrative Claims</u>.  The Indenture Trustee hereby makes a claim for the foregoing liquidated and unliquidated amounts for such fees and expenses, including those of its counsel, as administrative expenses of the Issuer, pursuant to Section 907 of the Indenture and Section 503(b)(1)(A), Sections 503(b)(3)(D) and (F) and Sections 503(b)(4) and (5) of the Bankruptcy Code.

(Ex. 1, at 3-4; Ex. 2, at 3-4; Ex. 3, at 3-4.)

<u>**Relief Requested**</u>

13.    By this Objection and pursuant to Bankruptcy Rule 3007, EFH Corp. requests that the Court enter an order under sections 502, 503 and 506 of the Bankruptcy Code, disallowing the Legacy Note Claims to the extent they: (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized OID, (iv) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date and (v) fees and expenses, including any right to

indemnification from EFH Corp. or any other Debtor; (b) assert claims against any Debtor other than EFH Corp.; and (c) assert claims in excess of the amounts owed under the respective indentures relating to the Legacy Notes. This Objection does not affect any other part of the Legacy Note Claims, but EFH Corp. reserves its rights to file any future objections to the amounts remaining under the Legacy Note Claims (the "Remaining Claims") and to otherwise contest the Remaining Claims.

## The Legacy Note Claims

### A.    The Governing Indentures

14.    On November 1, 2004, TXU Corp. (the predecessor to EFH Corp.) and The Bank of New York (the predecessor to the Legacy Trustee) entered into the Indentures pursuant to which EFH Corp. issued approximately $1,864,000,000 in outstanding aggregate principal amount of Legacy Notes. This total amount included approximately $371,000,000 outstanding under the P Notes (originally due November 15, 2014), approximately $746,000,000 outstanding under the Q Notes (originally due November 15, 2024) and approximately $747,000,000 outstanding under the R Notes (originally due November 15, 2034). As noted above, Debtor EFIH holds approximately $1,282,000,000 of the aggregate principal amount of the Legacy Notes, which claims against EFH Corp. will be released if the Court approves the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* (D.I. 5249). In addition to the Indentures, each series of Legacy Notes included an Officer Certificate including a Form of Notes (comprised of a Form of Face and a Form of Reverse for each series

of Legacy Notes).[9]  The Indentures are governed by, and construed in accordance with, the laws of the State of New York.  *See* Indentures § 112.

15.     Currently there is approximately $582,000,000 in outstanding aggregate principal amount of unsecured Legacy Notes held by parties other than Debtor EFIH.  This total amount includes approximately $90,300,000 outstanding under the P Notes, approximately $200,400,000 outstanding under the Q Notes (originally due November 15, 2024) and approximately $291,300,000 outstanding under the R Notes (originally due November 15, 2034).

16.     The Legacy Notes provide that they will be "redeemable at the option of the Company prior to the Stated Maturity."  *See* Form of Reverse of Notes, Exs. 7-9, at A-5.  "Stated Maturity" is defined as "the date on which the principal of such obligation . . . is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension)."  *See* Indentures § 101 ("Stated Maturity").  Thus, the Legacy Notes do not have a "no call covenant" or other prohibition on payment prior to their contractual maturity dates.

17.     To redeem the Legacy Notes optionally, EFH Corp. must, among other things, present a resolution from its board of directors authorizing redemption and provide forty-five days' notice in writing informing the Legacy Trustee of the redemption date and the principal amount of Legacy Notes to be redeemed.  *See* Indentures § 402 ("Election to Redeem; Notice to Trustee"); *id.* at § 404 ("Notice of Redemption"); *see id.* at Art. Four ("Redemption of Securities").

---

[9]     Complete copies of the Indentures and Forms of Notes for the Series P, Q, and R Notes are each attached as "Exhibit A" to Exhibits 1-3, respectively.

52241274v3

18.    Had EFH Corp. voluntarily elected to redeem the Legacy Notes before the Stated Maturity, it would be obligated to pay a "Redemption Price."  *See* Form of Reverse of Notes, Exs. 7-9, at A-5.   The Legacy Notes each describe the "Redemption Price" as:

> "Equal to the greater of (1) 100% of the principal amount of the Securities of this series being redeemed, and (2) the sum of the present value of the remaining scheduled payments of principal and interest (excluding any portion of any such interest accrued to the Redemption Date) on the Securities of this series being redeemed, discounted to the Redemption Date on a semi-annual basis … as the Treasury Rate plus 30 basis points, plus, in each case, accrued interest on those Securities of this series to the Redemption Date."

*See id*.  The Redemption Price clearly constitutes a claim for unmatured interest.

19.    Section 801 of each of the Indentures defines "Event of Default" to include, at subsections (d) and (e), certain events relating to insolvency and bankruptcy, including the filing of a bankruptcy petition.  *See* Indentures § 801(e) ("[T]he commencement by the Company of a voluntary case or proceeding under any applicable Federal or State bankruptcy, insolvency, reorganization or other similar law or of any other case or proceeding to be adjudicated a bankrupt or insolvent . . . .").

20.    Section 802 of each of the Indentures provides for "Acceleration of Maturity" as follows:

> If an Event of Default . . . specified in Section 801(d) or (e) shall have occurred and be continuing, either the Trustee or the Holders of not less than 33% in principal amount of all Securities then Outstanding … may declare **the principal of all Securities and interest accrued thereon** to be due and payable immediately by a written notice to the Company.

Indentures § 802 (emphasis added).  Neither the Trustee nor the Holders have declared such acceleration, but as discussed further below, the Legacy Notes were automatically accelerated by operation of law (i.e., Bankruptcy Code section 502) upon the filing of EFH Corp.'s chapter 11 petition.

21.    Section 307 of each of the Indentures provides for "Defaulted Interest" to be paid where "any interest . . . is not punctually paid or duly provided for" and sets forth a method for calculating Defaulted Interest.  *See* Indentures § 307.

22.    Section 907 of each of the Indentures provides that EFH Corp. will:

(a) pay to the Trustee from time to time reasonable compensation for all services rendered . . .;

(b) . . . reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances reasonably incurred or made by the Trustee in accordance with any provision of this Indenture (including the reasonable compensation and the expenses and disbursements of its agents and counsel) . . . ; and

(c) indemnify the Trustee for . . . any loss, liability or expense reasonably incurred by it arising out of or in connection with the acceptance or administration of the trusts or trusts hereunder or the performance of its duties hereunder . . . .

Indentures § 907.

**B.    The Court's March 26, 2015 Summary Judgment Decision**

23.    On March 26, 2015, the Court issued a summary judgment decision in the adversary proceeding involving certain Senior Secured First Lien Notes Due 2020 issued by EFIH and EFIH Finance, Inc.  *See* Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) ("Summary Judgment Decision").  The Summary Judgment Decision held, in relevant part, that an optional redemption "is an act separate and apart from automatic acceleration."   Summary Judgment Decision ¶ 54.  Accordingly, the Court ruled that the repayment of the First Lien Notes after their automatic acceleration was not an optional redemption and did not trigger any obligation to pay any prepayment redemption premiums.  *Id*. at ¶¶ 54-57.

C.      **The Debtors' Fifth Amended Joint Proposed Plan of Reorganization**

24.      The Plan proposes to pay "the principal amount outstanding, plus accrued but unpaid prepetition interest" on the Legacy Note Claims.  Plan at 47-48.  The Plan does not propose to pay any claim for a make-whole premium on the Legacy Note Claims.  *Id.* Additionally, the Plan proposes to pay "accrued postpetition interest at the Federal Judgment Rate."  *Id.*  The Plan does not provide for any other postpetition interest or for any fees or expenses, including indemnification.[10]  *See id.*  Finally, the Plan provides that in lieu of payment in cash on the Plan Effective Date, the Debtors may elect, "on or prior to the Effective Date," the "Reinstatement of [the Legacy Note Claims]."  Reinstatement would render the make-whole litigation moot.

25.      Although the Plan does not provide for payment of the Trustee's fees and expenses, it expressly preserves "any rights of . . . the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the relevant indenture . . . including any rights to . . . exercise charging liens."  *See* Plan at 68.

## Objection

26.      A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper."  *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and 1107(a).  Section 502(b) provides that the Court shall allow claims except to the extent: "(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or

---

[10]      The Plan does, however, provide for a reserve for payment of interest on, among other debts, the Legacy Notes, at their respective contract rates in the event that the Court allows such claims pursuant to a final order.

applicable law for a reason other than because such claim is contingent or unmatured; [or] (2) such claim is for unmatured interest." 11 U.S.C. § 502(b)(1), (2).

27.    The burden of proof for determining the validity of claims rests on different parties at different stages of the objection process. As explained by the United States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid [citations omitted]. In other words, a claim that alleges facts sufficient to support legal liability to the claimant satisfies the claimants' initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. . . . In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted). Once the *prima facie* validity of a Claim is rebutted, "it is for the claimant to prove his claim, not for the objector to disprove it." *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

### A.    No Make-Whole Premium Is Owed.

28.    The plain terms of the Indentures do not provide for a make-whole premium after acceleration of the Legacy Notes and, even if such a premium were owed, section 502(b)(2) disallows one here, where the plain language of the Indentures demonstrates that this make-whole premium is unmatured interest and not liquidated damages, unlike other make-whole premiums due upon default and automatic acceleration.

### 1.    The Governing Documents Do Not Give Rise to the Payment of the Redemption Price Under the Applicable Circumstances.

14

52241274v3

29.     Pursuant to the Plan, EFH Corp. either may (a) repay the outstanding principal of and prepetition accrued on the Legacy Notes in full in cash as part of the Plan, which payment obligation was automatically accelerated by operation of the Bankruptcy Code and *not* by any provision in the Indentures regarding acceleration, or (b) elect, with the consent of certain Plan supporters, to reinstate the Legacy Q and Legacy R Notes at Texas Competitive Electric Holdings, LLC ("TCEH").  *See* Plan at 47-48.  The Legacy Note Claims seek "[a]ll other interest, charges, **make whole amounts**, penalties, **premiums**, and advances" allegedly owing on the Legacy Notes.  (Ex. 1, at 3; Ex. 2, at 3; Ex. 3, at 3 (emphasis added).)  This language clearly seeks a Redemption Price that would only be owed upon an Optional Redemption of the Legacy Notes prior to the Stated Maturity.[11]  *See* Form of Reverse of Notes A-5.  And no make-whole amounts would be owed if the Legacy Notes are reinstated.

30.     The Legacy Note Claims should be disallowed to the extent they seek a make-whole premium under section 502(b)(1) of the Bankruptcy Code because, under the plain and unambiguous language of the Indentures and relevant case law, EFH Corp. owes no Redemption Price to the Legacy Noteholders.  The Redemption Price is owed *only if* the Legacy Notes are optionally redeemed before their respective Stated Maturities.  *See* Form of Reverse of Note, Exs. 1-3, at A-5.  For the P Notes, the stated maturity date of November 15, 2014, has passed, and the Legacy Notes have not been redeemed at the option of EFH Corp.  Thus, no optional redemption has occurred or could occur for the P Notes.

31.     With respect to all three series of Legacy Notes, the Redemption Price is not owed because the Legacy Notes have not been and cannot be *optionally redeemed prior* to their Stated Maturities.  The Debtors have not presented a resolution of EFH Corp.'s board of

---

[11]     And the Redemption Price of the Q and R Legacy Notes would not be owed if EFH Corp. elects to reinstate those notes.

directors and has not provided forty-five days' written notice, among other steps required to "redeem" the Legacy Notes.  *See* Indentures, Art. Four "Redemption of Securities."

32.    More fundamentally, under well-settled case law, EFH Corp.'s chapter 11 filing accelerated all of its debts, including the Legacy Notes, at which point they became immediately due and payable.  *U.S. Trust Co. of N.Y. v. LTV Steel Co. (In re Chateaugay Corp.)*, 150 B.R. 529, 542 (Bankr. S.D.N.Y. 1993), *aff'd,* 170 B.R. 551 (S.D.N.Y. 1994) ("Chapter 11 filing automatically, by operation of bankruptcy law, accelerated the entire principal amount of each Series of Bonds"); *In re Manville Forest Prods. Corp.*, 43 B.R 293, 297–98 (Bankr. S.D.N.Y. 1984) ("It is a basic tenet of the Bankruptcy Code that [b]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor . . . .") (internal quotation marks omitted), *aff'd in part, rev'd in part on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986).  Courts in other cases involving make-whole disputes have held, or otherwise recognized, that the Bankruptcy Code automatically accelerated the notes at issue upon the filing of the debtor's petition.  *See In re AMR Corp.*, 485 B.R. 279, 290 n.7 (Bankr. S.D.N.Y. 2013), *aff'd*, 730 F.3d 88 (2d Cir. 2013); *In re Solutia Inc.*, 379 B.R. 473, 484-85 (Bankr. S.D.N.Y. 2007); *In re Calpine Corp. (Calpine I)*, 2007 WL 4326738, at *9 (S.D.N.Y. Nov. 21, 2007).

33.    As this Court has already held, repayment after acceleration is not voluntary because acceleration moves the "stated maturity" up to the acceleration date, which here is the Petition Date.  Summary Judgment Decision ¶ 56 (quoting and citing *AMR*, 730 F.3d at 103; *South Side*, 451 B.R. at 268; *Solutia*, 379 B.R. at 484).  After acceleration, the debts are "mature," meaning due and payable immediately, and repayment cannot be a "prepayment" or an "optional redemption."  Summary Judgment Decision ¶ 57.  Accordingly, repaying the Legacy Notes after the bankruptcy petition date cannot be an optional redemption.  *See id.*

34.     Further, there is no reference in Section 802 of the Indentures to the payment of the Redemption Price in the event of a default under section 801(d) or (e).  The Indentures provide that an "Event of Default" occurs if EFH Corp. commences a voluntary bankruptcy proceeding.  Indentures § 801(e).  The Debtors filed for chapter 11 protection on April 29, 2014, unquestionably triggering an Event of Default.  Nowhere in the Indentures or the Officer's Certificates is there any provision modifying the Acceleration of Maturity provision of Section 802 to provide that the Redemption Price is due in the event of a default under section 801(d) or (e).  Nor is there any provision in the Indentures or Officer's Certificates indicating that the Redemption Price is due when the Legacy Notes are accelerated as a result of bankruptcy (or at the option of the Noteholders).  *See* Summary Judgment Decision ¶¶ 45-51.

35.     Further, neither the Indentures nor the Legacy Notes make any reference to the Redemption Price being owed in the event of a bankruptcy acceleration.  The only section of the Indentures addressing payment upon acceleration omits any reference to the Redemption Price.  *See* Indentures § 802 ("[a]s a consequence of [acceleration] … the principal amount … of such Securities and interest accrued thereof shall become immediately due and payable.").

36.     Indeed, nothing in the Indentures suggests that the Redemption Price is owed in any circumstance outside of an optional redemption voluntarily made by EFH Corp. prior to "Stated Maturity."  In fact, for EFH Corp. to optionally redeem the debt, it must provide the Legacy Noteholders with "at least 30 days but not more than 60 days" notice, which EFH Corp. has not done and, under the terms of the Plan, does not intend to do.  *See* Form of Reverse of Note, Exs. 1-3, at A-5.  Moreover, no such optional redemption is now possible due to the automatic acceleration of the Legacy Notes that occurred by operation of law (i.e., section 502 of the Bankruptcy Code).  Although the Indentures define "Stated Maturity" as "the date on which

the principal of such obligation … is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension)," acceleration of the Legacy Notes did not occur by operation of any "provisions" in the Indentures or Legacy Notes. Acceleration occurred by operation of law (i.e., section 502 of the Bankruptcy Code). Thus, any argument that the "Stated Maturity" of the Indentures is a date certain has no merit in connection with bankruptcy acceleration.

37.     In short, repayment of automatically-accelerated debt is neither optional nor voluntary and therefore does not trigger the Redemption Price.

### 2.     The Redemption Price Is Unmatured Interest, Not Liquidated Damages, and Should Be Disallowed Under Section 502(b)(2).

38.     Even if the Redemption Price were owed under the terms of the Indentures and applicable state law, these claims must be disallowed as unmatured interest under the Bankruptcy Code. According to the language of the Legacy Notes, the Redemption Price approximates the unmatured interest that would not be paid if the Legacy Notes were redeemed. Indeed, the Legacy Notes expressly define "Redemption Price" to include the "the sum of the present value of the remaining scheduled payments of principal and interest." Form of Reverse of Notes. Yet, the Bankruptcy Code clearly disallows claims for unmatured interest. 11 U.S.C. § 502(b)(2).

39.     For this reason, courts have held that section 502(b)(2) disallows make-whole and comparable claims as unmatured interest. *See, e.g.*, *HSBC Bank USA v. Calpine Corp.*, No. 07 CIV 3088 GBD, 2010 WL 3835200, at *5 (S.D.N.Y. 2010) ("Section 502(b)(2) of the Bankruptcy Code also specifically disallows Trustee's claim for expectation damages because it disallows claims for unmatured interest."); *In re Ridgewood Apartments*, 174 B.R. 712, 721 (Bankr. S.D. Ohio 1994) ("Fannie Mae's claim for a prepayment penalty is not allowed under 11 U.S.C. § 502(b)(2)."); *see also Cont'l Sec. Corp. v. Shenandoah Nursing Home P'ship*, 188 B.R.

205, 214 (W.D. Va. 1995) ("Were the bankruptcy court to hold that Shenandoah must pay Continental the full value of the Note through its maturity, it would essentially be allowing the payment of unmatured interest which is prohibited by § 502.").

40.     Some courts have nonetheless taken the view that a make-whole premium designed to approximate unmatured interest is not, in fact, unmatured interest, but is instead a measure of liquidated damages.  *See In re Trico Marine Services, Inc.*, 450 B.R. 474, 481 (Bankr. D. Del. 2011); *see also In re School Specialty, Inc.*, 2013 WL 1838513, at *5 (*discussing Trico Marine*, 450 B.R. at 480-81).   *Trico*, however, relied on case law reasoning that prepayment premiums are not "unmatured interest" because, when properly triggered by an automatic acceleration clause, they "mature" *before the petition date.  See id.* at 480-81.

41.     In this case, however, if the Court were to find that a make-whole premium is due by the terms of the contract—which, as described above, is not the case—it would presumably be because the Legacy Notes did *not* accelerate prepetition, unlike, for example, the EFIH first lien notes.  As the court in *Doctors Hospital* explained, "the timing of when the prepayment clause takes effect matters."   *In re Doctors Hosp. of Hyde Park, Inc.*, 508 B.R. 697, 706 (N.D. Ill. 2014).  If, at the time the bankruptcy petition is filed, there is no claim for the make-whole premium, then the premium is "unmatured interest" within the meaning of section 502(b)(2) to the extent it later becomes due.  *Id.* at 706. Accordingly, even if the make-whole claim is due under the terms of the contract, it must be disallowed as unmatured interest under the Bankruptcy Code.

**B.       The Legacy Noteholders Are Not Entitled to Postpetition Interest.**

42.     The Legacy Note Claims also seek two components of postpetition interest: (a) postpetition interest at the contract rate; and (b) default interest.  (Ex. 1, at 2-3; Ex. 2, at 2-3; Ex. 3, at 2-3.)

43.     Section 502(b)(2) of the Bankruptcy Code disallows claims for interest on unsecured debt that comes due on or after the Petition Date.  Thus, the general rule is that unsecured creditors are not entitled to postpetition interest.  *In re Wash. Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011), *vacated in unrelated part*, No. 08-12229, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012).  Courts, however, have created an exception to this general rule where debtors are solvent.  *Id.* at 241.

44.     The only relevant statutory basis for awarding *any* postpetition interest to an unsecured creditor is section 726(a)(5).  Under the "best interests of creditors" requirement for confirmation of a chapter 11 plan, a creditor must receive at least as much as it would were the debtor being liquidated in chapter 7.  *See* 11 U.S.C. § 1129(a)(7); *see Wash. Mut.*, 461 B.R. at 241.  Unsecured creditors in chapter 7 are entitled to interest "at the legal rate" before shareholders receive any distribution.  *Id.* (citing 11 U.S.C. § 726(a)(5), (6)).  As a result, when a debtor is solvent—*i.e.*, "before shareholders receive any distribution"—courts have held that postpetition interest can be awarded on unsecured debts at "the legal rate."  *Id.* at 241.

45.     Here, shareholders of EFH Corp. will not receive any distribution under the Plan. EFH Corp. therefore is not solvent for the purposes of this exception because the implied chapter 7 "waterfall" under section 726(a) for distribution of value would never reach equity.

46.     But even if EFH Corp. is "solvent" and the Court were to apply the solvent-debtor exception, "the better view is that the federal judgment rate is the appropriate rate to be applied under section 726(a)(5), rather than the contract rate."[12]  *Wash. Mut.*, 461 B.R. at 242.  A majority of courts that have considered the issue have agreed with this view.  *See*, *e.g.*, *Onink v.*

---

[12]     Specifically, the federal judgment rate of interest is the weekly average one-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System the week immediately before the Petition Date, compounded annually.  *See* 28 U.S.C. § 1961.

*Cardelucci* (*In re Cardelucci*), 285 F.3d 1231, 1234-36 (9th Cir. 2002); *In re W.R. Grace & Co.*, 475 B.R. 34, 200 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) ("The majority approach taken by most courts today is the federal judgment rate approach."); *see also* 6 *Collier on Bankruptcy* ¶ 726.02[5] (16th ed. 2015).

47.    The majority view is also the best view of section 726(a)(5) for a number of reasons. **First**, the statute provides for interest at "*the* legal rate," not *a* legal rate. The definite article "the" in a statute is a term of limitation referring to a particular item whereas "a" is an indefinite article that generalizes its object. *See Cardelucci*, 285 F.3d at 1234. Here, the word "the" denotes that Congress intended for a single uniform rate of interest to apply. *See Wash. Mut.*, 461 B.R. at 242; 6 *Collier* ¶ 726.02[5]. Further, if the Code intended for bankruptcy courts to apply *any* legal rate, then surely Congress would not have to caution bankruptcy courts to apply only "legal" rates and to avoid applying illegal ones. *See In re Dow Corning Corp.*, 237 B.R. 380, 404-05 (Bankr. E.D. Mich. 1999) ("*Dow I*").[13] If such caution were necessary, the rest of the Code would need to contain similar admonishments. *Id.* at 405.

48.    **Second**, based on both dictionary definitions and 100 years of case law, one court has persuasively explained that the "legal rate of interest" means "a rate of interest fixed by statute." *See Dow I*, 237 B.R. at 400-02. "[H]ad Congress intended contract rates to apply, it presumably would have used language other than 'the legal rate,' a term that typically refers to a statutory rate." 6 *Collier* ¶ 726.02[5]. For example, Congress could have, but did not, simply

---

[13]    In *Dow I*, the bankruptcy court held that, in a solvent debtor chapter 11 case, section 1129(a)(7), via section 726(a)(5), required paying unsecured creditors the federal judgment rate of interest. In *In re Dow Corning Corp.*, 244 B.R. 678, 687-93, 696 (Bankr. E.D. Mich. 1999) ("*Dow II*"), the bankruptcy court also ruled that in solvent debtor chapter 11 cases courts should consider the contract rate of interest when applying the absolute priority rule under § 1129(b), and award postpetition interest at the contract rate, but not the default rate. The Sixth Circuit in *In re Dow Corning Corp.*, 456 F.3d 668, 677-80 (6th Cir. 2006) ("*Dow III*") affirmed this reasoning, but remanded for an assessment whether awarding the default rate of interest was equitable under the circumstances of that case. EFH Corp. respectfully disagrees with *Dow II* and *Dow III*.

21

provide for "interest" to be paid, or it could have incorporated the concept of an "agreement" as it did when it provided for secured creditors to receive postpetition interest under section 506(b). *See In re Godsey*, 134 B.R. 865, 866 (Bankr. M.D. Tenn. 1991). In fact, in drafting the applicable Code provision, Congress struck draft language that provided generically for "interest on claims allowed" and inserted the more specific "interest at the legal rate." *Cardelucci*, 285 F.3d at 1234. Congress's decision to strike the version of this provision suggesting *any* interest rate in favor of the current version, which points to a specific interest rate, is further evidence that Congress did not intend for the contract rate of interest to apply. *Id.*

49. **Third**, legal policy supports holding that the best interpretation of "the legal rate" is the federal judgment rate. Applying a single, federal rate to claims, entitlement to which is a matter of federal law, promotes uniformity among federal courts and within federal law.[14] *Cardelucci*, 284 F.3d at 1235. Further, postpetition interest is analogous to an award of post-judgment interest. *Id.*; *In re Chiapetta*, 159 B.R. 152, 161 (Bankr. E.D. Pa. 1993) ("[A] claim is like a judgment entered at the time of the bankruptcy filing . . . ."); *In re Melenyzer*, 143 B.R. 829, 833 (Bankr. W.D. Tex. 1992) (same). And federal courts award post-judgment interest as a matter of federal procedural law, even if the cause of action arises under state law. *Norman v. Elkin*, 726 F. Supp. 2d 464, 479 (D. Del. 2010) ("Federal courts sitting in diversity must apply federal law, rather than state law, in determining post-judgment interest."). Courts have also explained that a single, uniform rate will promote fairness among creditors because certain creditors will not, by happenstance of state law or contract rights, receive a "disproportionate

---

[14] At least one other bankruptcy court in Delaware has stated that the federal judgment rate approach is generally the correct approach, citing *Washington Mutual* and *W.R. Grace*. Hr'g Tr. at 21:8:16, 37:1-9, *In re AgFeed USA, LLC*, No. 13-11761 (Bankr. D. Del. Nov. 4, 2014) (Shannon, J.) (Doc. 1557) ("I believe that the federal judgment rate is, in fact, controlling here. While there may be flexibility or a measure of discretion as the case law teaches, I do not see a specific reason in a case such as this to deviate from that. Particularly, when I am talking about the determination of impairment, I believe that consistent treatment is particularly important.").

share of any remaining assets to the detriment of other unsecured creditors." *Cardelucci*, 285 F.3d at 1235-36.  Additionally, applying one uniform rate is judicially efficient and reduces the administrative burden on courts and parties, who avoid having to use different interest rates to calculate postpetition interest owed potentially to multiple unsecured creditors.  *Id.* at 1236.  In sum, the best textual reading of "the legal rate" is the federal judgment rate.

50.    Accordingly, the Legacy Noteholders are not entitled to interest in any amount greater than the federal judgment rate.  Thus, the Legacy Note Claims should be partially disallowed to the extent they seek interest greater than the federal judgment rate.

### C.    The Unamortized Original Issue Discount on the Legacy Notes Should Be Disallowed.

51.    The Legacy Note Claims also seek the full amount of their principal.  (Ex. 1-3.) Each series of Legacy Notes, however, was purchased for cash at a discount from face value when first issued in November 2004.[15]  This creates original issue discount, or OID, equal to the difference between the issue price and the face value.  Although that OID amortizes over the life of the notes, the bulk of the Legacy Notes' OID remained unamortized as of the Petition Date – approximately $1.86 million using the constant-yield amortization method.

52.    As the Third Circuit explained, "courts have treated . . . any such unamortized original issue discounts as claims for unmatured interest within the meaning of § 502(b)(2)." *In re Oakwood Homes Corp.*, 449 F.3d 588, 607 (3d Cir. 2006).  Indeed, courts have universally held that unamortized OID, created when the notes were issued for cash, should be disallowed as unmatured interest on unsecured debt.  *See, e.g.*, *In re Chateaugay Corp.*, 961 F.2d 378, 380-81 (2d Cir. 1992); *In re Pengo Indus., Inc.*, 962 F.2d 543, 545-46 (5th Cir. 1992); *In re ICH Corp.*,

---

[15]    The Series P 5.55% Notes were issued at 99.798%, the Series Q 6.50% Notes were issued at 99.572%, and the Series R 6.55% Notes were issued at 99.496%

230 B.R. 88, 92 (N.D. Tex. 1999); *In re Solutia Inc.*, 379 B.R. 473, 486 (Bankr. S.D.N.Y. 2007);

*In re Pub. Serv. Co. of New Hampshire*, 114 B.R. 800, 803 (Bankr. D.N.H. 1990).

53.     As set forth above, the Legacy Notes are not entitled to postpetition interest in any amount in excess of the federal judgment rate.  Thus, the Court should disallow the unamortized OID on the Legacy Notes, calculated using the constant-yield method, as unmatured interest.

> **D.     The Legacy Trustee Is Not Entitled to Fees and Expenses or "Damages."**

54.     The Legacy Note Claims seek to recover "reasonable compensation, expenses, disbursements and advances, including reasonable fees and disbursements of counsel and financial advisors" incurred by the Legacy Trustee under the Indentures.  (Ex. 1, at 3; Ex. 2, at 3; Ex. 3, at 3).  They also seek to recover unidentified "damages" under "suits" and "causes of action" relating to the Indentures.

55.     The Bankruptcy Code does not entitle the Legacy Trustee to recover fees and expenses under the Indentures because the Legacy Note Claims are unsecured.  The Bankruptcy Code provides for payment of professional fees and expenses only to oversecured creditors, not unsecured creditors.  *See* 11 U.S.C. § 506(b).  Conversely, the Bankruptcy Code provides that the amount of an *unsecured* claim should be determined "as of the date of the filing of the petition."  11 U.S.C. § 502(b).  Thus, even in solvent debtor cases, a majority of courts have held that section 506(b) precludes unsecured creditors from recovering professional fees provided under an indenture.  *In re Seda France, Inc.*, No. 10-12948-CAG, 2011 WL 3022563, at *1 (Bankr. W.D. Tex. July 22, 2011) ("The majority of courts . . . have held that an unsecured creditor is not entitled to collect postpetition attorneys' fees, costs, and other similar charges— even if there is an underlying contractual right to do so.") (emphasis added); *see also, e.g.*, *In re Electric Machinery Enterprises, Inc.*, 371 B.R. 549, 550 (Bankr. M.D. Fla. 2007); *In re Global Indus. Techs., Inc.*, 327 B.R. 230, 239 (Bankr. W.D. Pa. 2005); *In re Hedged-Investments*

*Assocs., Inc.*, 293 B.R. 523, 525-26 (D. Colo. 2003); *In re Southeast Banking Corp.*, 188 B.R. 452, 462 (Bankr. S.D. Fla. 1995); *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 356 (Bankr. S.D.N.Y. 1995).[16]

56.     As stated above, because EFH Corp. is not subject to the "solvent-debtor" exception, the Legacy Note Claims should be denied to the extent that they seek post-petition fees and expenses incurred pursuant to the Indentures.  Even if EFH Corp. is solvent, consistent with the majority view, the Court should disallow the Legacy Trustee's claims for fees and expenses under the Indentures.

57.     The Legacy Note Claims should also be denied to the extent they seek to recover on account of damages or "causes of action" arising under the Indentures.  The Legacy Note Claims do not specify any legal theory or other basis of recovery for any amounts other than unpaid principal and accrued interest as of the Petition Date.  In the event the Legacy Trustee attempts to assert a claim for "no call" damages or violation of the so-called "perfect tender rule," no such claim can be sustained.

58.     Each of the Legacy Notes provides that it ***may*** be redeemed prior to maturity upon payment of specific amounts to be paid upon redemption in addition to principal and accrued interest, specifically the Redemption Price.  *See* Form of Reverse of Note.  The Indentures therefore do not contain a so-called "no call" provision—a provision that prohibits the repayment of a note before a specific date.  To the contrary, the Legacy Notes specify that an optional redemption before a certain date (or, as described above, acceleration of such date) is permissible, upon the payment of a specific premium.  Accordingly, the Legacy Trustee (on

---

[16]     Although the Supreme Court addressed unsecured professional fees in *Travelers*, as discussed in *Seda* and *Electric Machinery*, its holding there is not inconsistent with the majority rule.  *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 454-55 (2007) (expressly declining to address section 506(b) because the issue was not properly preserved on appeal).

behalf of the Noteholders) is not entitled to "no call damages"—an unsecured claim for breach of contract damages.

59.    Additionally, the so-called "perfect tender" rule does not apply to the Legacy Notes.  The Legacy Notes automatically accelerated upon EFH's chapter 11 filing pursuant to section 502 of the Bankruptcy Code.  Such acceleration advanced the Legacy Notes' maturity date to the Petition Date.  Any repayment pursuant to a plan of reorganization will occur after the Legacy Notes' maturity date and therefore cannot violate the perfect tender rule, even if it applied.

60.    Even if EFH Corp. were seeking to repay the Legacy Notes before their maturity date, which it is not, EFH Corp. would not be in breach of the Indentures or any related document; rather, the documents expressly provide that redemption prior to maturity is permissible upon payment of consideration to be calculated according to the specified formula contained in the governing documents (which, as set forth in this Objection, is not now and will never be payable as the Legacy Notes have matured by acceleration).

### E.    The Legacy Trustee Is Not Entitled to an Administrative Priority Claim for "Substantial Contribution."

61.    In addition to its claims for fees and expenses under the Indentures, the Legacy Trustee makes a claim for "fees and expenses . . . pursuant to . . . Section[] 503(b)(3)(D) . . . and 503(b)(5)."  These provisions of the Bankruptcy Code provide for the payment of expenses to parties that have made a "substantial contribution" to a chapter 11 case.  The term "substantial contribution" is not defined in the Code.  It has, however, been "universally construed as requiring a contribution that provides tangible benefit to the bankruptcy estate and to unsecured creditors."  *In re Appliance Store, Inc.*, 181 B.R. 237, 242 (Bankr. W.D. Pa. 1995); *In re Columbia Gas Sys., Inc.*, 224 B.R. 540, 547 (Bankr. D. Del. 1998) ("[T]he applicable test is

26

whether the efforts of the applicant resulted in an actual and demonstrable benefit to the debtor's estate and the creditors." (citation omitted)).  In other words, benefits that are "incidental" to the estate are insufficient.  *See id.* at 543-44.

62.     The substantial-contribution provision has been understood to apply *only* where a creditor's contributions are "unusual" or "extraordinary."  *See, e.g.*, *In re Buckhead Am. Corp.*, 161 B.R. 11, 16 (Bankr. D. Del. 1993); *9085 E. Mineral Office Bldg. Ltd.*, 119 B.R. 246, 250 (Bankr. D. Colo. 1990).  For example, courts have found this burden satisfied where a creditor compromised its own claim and created a plan which paid creditors more than the debtor's proposed plan or dramatically improved treatment of creditors under the plan.  *See In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34, 37 (Bankr. D. N.J. 1996); *9085 E. Mineral Office Bldg.*, 119 B.R. at 251-53.  Absent such extraordinary efforts, courts should deny a creditor's substantial contribution application.

63.     Moreover, at least one Delaware Bankruptcy Court has observed that where "[t]he plan of reorganization confirmed in [a] chapter 11 case was the result of complex, adversarial and extended negotiations and legal maneuvering among the parties in interest[,] . . . the activities of th[ose] parties in interest . . . [are] typical of those in a Chapter 11 case (on a very large scale)," and do not amount "to the type of unusual action by a creditor usually found in a meritorious substantial contribution application."  *Columbia Gas*, 224 B.R. at 548.

64.     In this case, the Legacy Trustee has not provided a "substantial contribution" to these chapter 11 cases.  The Legacy Note Claims are likewise devoid of any factual allegations that would give rise to a "substantial contribution" claim.  The Court therefore should deny this aspect of the Legacy Note Claims.

**F.     The Legacy Note Claims Should Be Disallowed to the Extent They Are Overstated.**

27

65.     Each of the Legacy Note Claims as asserted in proofs of claim 7477, 7478 and 7479 overstates the Legacy Trustee's claims for outstanding principal and prepetition interest pursuant to the terms of each of the Indentures and EFH Corp.'s books and records.

66.     Pursuant to the Indenture for the P Notes, EFH Corp. issued P Notes in the aggregate principal amount of $371,000,000.  On Schedule F to EFH Corp.'s Schedules of Assets and Liabilities filed on June 30, 2014 at Dkt. # 1237 ("Schedule F"), EFH Corp. scheduled a claim for unpaid principal and prepetition interest under the P Notes in the amount of $381,419,753.97, which includes the $371,000,000 in unpaid principal and $10,419,753.97 in accrued, unpaid prepetition interest.  Claim No. 7477, however, asserts a claim for the P Notes in the amount of $928,564,000 of principal and $23,620,346.75, for a total of $952,184,346.75.  As such, the liquidated portion of Claim No. 7477 is overstated by approximately $570,764,592.78, and this Legacy Note Claim must be reduced by $570,764,592.78.

67.     Pursuant to the Indenture for the Q Notes, EFH Corp. issued Q Notes in the aggregate principal amount of $746,000,000.  On Schedule F, EFH Corp. scheduled a claim for unpaid principal and prepetition interest under the Series Q Notes in the amount of $767,487,566.39, which includes the $746,000,000 in unpaid principal and $21,487,566.39 in accrued, unpaid interest.  Claim No. 7478, however, asserts a claim for the Q Notes in the overstated amount of $750,000,000 of principal and $22,343,750.00, for a total of $772,343,750. As such, the liquidated portion of the Legacy Note Claim for the Q Notes is overstated by $4,856,183.61, and this Legacy Note Claim must be reduced by $4,856,183.61.

68.     Pursuant to the Indenture for the R Notes, EFH Corp. issued R Notes in the aggregate principal amount of $747,000,000.  On Schedule F, EFH Corp. scheduled a claim for unpaid principal and prepetition interest under the Series R Notes in the amount of

$769,746,898.47, which includes the $747,000,000 in unpaid principal and $22,746,898.47 in accrued, unpaid interest. Claim No. 7479, however, asserts a claim for the R Notes in the overstated amount of $750,000,000 of principal and $22,515,625.00, for a total of $772,515,625. As such, the liquidated portion of the Legacy Note Claim for the R Notes is overstated by $2,768,726.53, and this Legacy Note Claim must be reduced by $2,768,726.53.

G.    **The Legacy Note Claims Against Debtors Other Than EFH Corp. Should Be Disallowed.**

69.    In addition to its claims against EFH Corp., the Legacy Trustee also filed Proofs of Claim against each Debtor other than EFH Corp. "in order to provide notice and preserve all claims, causes of action, rights and remedies . . . that it may have as a creditor against [the] Debtors . . . arising out of any intercompany transfers, . . . including without limitation all preferential transfers, fraudulent transfers, and *quantum meruit* and unjust enrichment claims." *E.g.*, Proofs of Claim Nos. 6524-6593.

70.    EFH Corp., however, is the only obligor under the Legacy Notes. And the Legacy Trustee has not alleged any facts sufficient to support claims against Debtors that are not parties to the Legacy Notes. Thus, the Legacy Trustee has failed to meet its burden to establish *prima facie* evidence of these claims. *See, e.g.*, *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d. Cir. 1992) (affirming claim disallowance due to creditor's failure to make a *prima facie* case). The Court should thus disallow Legacy Note Claims against Debtors other than EFH Corp.

## Conclusion

71.    For the foregoing reasons, EFH Corp. respectfully requests that the Court enter an order disallowing the Legacy Note Claims to the extent provided in this Objection.

**Reservation of Rights**

72.     Nothing contained in this Objection or any actions taken by EFH Corp. or the other Debtors is intended or should be construed as:  (a) an admission as to the validity of any portion of the Legacy Note Claims; (b) a waiver of the Debtors' rights to dispute the Legacy Note Claims on any grounds; (c) a promise or requirement to pay the Legacy Note Claims; (d) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (e) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (f) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (g) an admission that any contract or lease is integrated with any other contract or lease.

**Notice**

73.     EFH Corp. shall provide notice of this Objection on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and

30

counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas;

31

and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors

submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

74.     No prior request for the precise relief sought in this Objection has been made to

this or any other court.

*[Remainder of page intentionally left blank.]*

32

Wilmington, Delaware
Dated:  October 14, 2015

**BIELLI & KLAUDER, LLC**


*/s/  David M. Klauder*
David M. Klauder (No. 5769)
Cory P. Stephenson (No. 6097)
1204 N. King Street
Wilmington, DE 19801
Telephone:      (302) 803-4600
Facsimile:      (302) 397-2557
Email:          dklauder@bk-legal.com
                cstephenson@bk-legal.com

-and-

**PROSKAUER ROSE LLP**

Jeff J. Marwil (admitted *pro hac vice*)
Mark K. Thomas (admitted *pro hac vice*)
Peter J. Young (admitted *pro hac vice*)
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, IL 60602
Telephone:      (312) 962-3550
Facsimile:      (312) 962-3551
Email:          jmarwil@proskauer.com
                mthomas@proskauer.com
                pyoung@proskauer.com

*Co-Counsel to Debtor*
*Energy Future Holdings Corp.*

52241274v3