## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | Objection Deadline: November 6, 2015 at 4:00 p.m. |

## SUMMARY COVER SHEET TO THE FOURTH INTERIM FEE APPLICATION OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP, ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM MAY 1, 2015 THROUGH AND INCLUDING AUGUST 31, 2015

In accordance with the Local Bankruptcy Rules for the District of Delaware (the "Local Bankruptcy Rules"), Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"), attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"), submit this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fourth interim fee application to which this Summary is attached (the "Fee Application")[2] for the period from May 1, 2015 through and including August 31, 2015 (the "Fee Period").

Kirkland submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

### General Information

| Name of Applicants: | Kirkland & Ellis LLP and Kirkland & Ellis International LLP |
|---|---|

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]    Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| | |
|---|---|
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain Kirkland: | September 16, 2014, *nunc pro tunc* to April 29, 2014 [D.I. 2052] |

### Summary of Fees and Expenses Sought in the Fee Application[3]

| | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | May 1, 2015 through and including August 31, 2015 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: [4] | Reduced fees by $571,688.50 and expenses by $144,644.41 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $25,374,478.00 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $1,829,505.70 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $27,203,983.70 |

---

[3]  Of the amount of fees and expenses sought in the Fee Application, as of the date hereof, $5,074,895.60 represents the amount for which Kirkland has not sought compensation in the monthly fee statements it has filed for the following periods:  May 1, 2015 to May 31, 2015 [D.I. 4922] (the "May Monthly Fee Statement"), June 1, 2015 to June 30, 2015 [D.I. 5805] (the "June Monthly Fee Statement"), July 1, 2015 to July 31, 2015 [D.I. 6197] (the "July Monthly Fee Statement"), and August 1, 2015 to August 31, 2015 [D.I. 6334] (the "August Monthly Fee Statement" and, collectively with the other above-referenced fee statements, the "Monthly Fee Statements").

The total fees and expenses sought in the Fee Application include (a) fees for work performed and expenses incurred for a specific Debtor's estate totaling $2,747,598.90 (comprised of $2,740,909.00 in fees and $6,689.90 in expenses) (the "Direct Benefit Fees") and (b) fees for work performed and expenses incurred for all Debtors' estates totaling $24,456,384.80 (comprised of $22,633,569.00 in fees and $1,822,815.80 in expenses) (the "Collective Benefit Fees").  Specifically, the Direct Benefit Fees include fees and expenses of (a) $77,784.90 for the EFH Corp. Debtors, (b) $892,254.40 for the EFIH Debtors, and (c) $1,777,559.60 for the TCEH Debtors.  The Collective Benefit Fees include fees and expenses of (a) $1,281,847.50 for the EFH Corp. Debtors, (b) $7,926,895.31 for the EFIH Debtors, and (c) $15,247,641.99 for the TCEH Debtors.

[4]  Kirkland voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

| **Rate Increases Applicable to the Fee Period** | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $23,566,779.00 |

| **Summary of Past Requests for Compensation and Prior Payments[5]** | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: [6] | $104,771,908 |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $9,033,312.58 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $47,935,421.83 |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $2,878,164.97 |
| Total Allowed Compensation Paid to Date: | $47,935,421.83 |
| Total Allowed Expenses Paid to Date: | $2,878,164.97 |
| Compensation Sought in this Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $9,979,850.00 |
| Expenses Sought in this Fee Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $738,492.23 |

---

[5] Kirkland filed the May Monthly Fee Statement on July 6, 2015 [D.I. 4922], the June Monthly Fee Statement on August 31, 2015 [D.I. 5805], the July Monthly Fee Statement on September 25, 2015 [D.I. 6197], and the August Monthly Fee Statement on October 6, 2015 [D.I. 6334]. As of the date hereof, Kirkland has received payments totaling $10,718,342.23 relating to compensation and expenses sought in the Monthly Fee Statements.

[6] Kirkland filed its third interim fee application on June 15, 2015 [D.I. 4773], which will be heard at the hearing scheduled for October 26, 2015.

Wilmington, Delaware
Dated:  October 15, 2015

*/s/ Edward O. Sassower*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Objection Deadline: November 6, 2015 at 4:00 p.m. |

**FOURTH INTERIM FEE APPLICATION OF
KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL
LLP, ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR
THE PERIOD FROM MAY 1, 2015 THROUGH AND INCLUDING AUGUST 31, 2015**

Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland"),

attorneys for the above-captioned debtors and debtors in possession (collectively, the "Debtors"),

hereby submits its fourth interim fee application (the "Fee Application") for allowance of

compensation for professional services provided in the amount of $25,374,478.00 and

reimbursement of actual and necessary expenses in the amount of $1,829,505.70 that Kirkland

incurred for the period from May 1, 2015 through and including August 31, 2015 (the "Fee

Period"). In support of this Fee Application, Kirkland submits the declaration of Edward O.

Sassower, the president of Edward O. Sassower, P.C., a partner of Kirkland & Ellis LLP, and a

partner of Kirkland & Ellis International LLP, (the "Sassower Declaration"), which is attached

hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application,

Kirkland respectfully states as follows.[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined in this Fee Application shall have the meanings ascribed to such terms in the *Summary Cover Sheet to the Fourth Interim Fee Application of Kirkland & Ellis LLP and*

## Jurisdiction

1.     The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and Kirkland consents pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Fee Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 2016-1 and 2016-2 of the Local Bankruptcy Rules, the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").[3]

---

*Kirkland & Ellis International LLP, Attorneys for the Debtors and Debtors in Possession, for the Period from May 1, 2015 Through and Including August 31, 2015.*

[3]    On October 3, 2014, October 7, 2014, December 1, 2014, March 9, 2015, and June 9, 2015, the Fee Committee (as defined herein) distributed guidelines to those professionals retained in these chapter 11 cases regarding a number of topics, including, expense reimbursement, fee review criteria, and the contents of interim fee applications (collectively, the "Fee Committee Guidelines").

**Background**

4.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp. ("EFH Corp."), Energy Future Intermediate Holding Company, LLC ("EFIH"), EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee" and, together with the TCEH Creditors' Committee, the "Official Committees") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

5.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all retained professionals in these cases.

6.      Given the size and complexity of the Debtors' chapter 11 cases, the U.S. Trustee, the Debtors, and the TCEH Creditors' Committee agreed to recommend that the Court appoint a fee committee to review and report on, as appropriate, interim and final fee applications filed by all retained professionals in accordance with sections 328, 330, and 331 of the Bankruptcy Code

and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court

entered the Fee Committee Order, appointing the Fee Committee and establishing the procedures

governing the Fee Committee's review of the Debtors' retained professionals' applications for

compensation and the resolution of any concerns raised during such review.

## Preliminary Statement

7.    This Fee Period has been one of the most active periods since the commencement

of these chapter 11 cases for the Debtors and their professional advisors.  At the start of the Fee

Period, the Debtors were in the early stages of obtaining support for their proposed plan of

reorganization and accompanying disclosure statement, each of which was filed on April 14,

2015 (as each has been and may be amended from time to time, the "Plan" and "Disclosure

Statement").  By the end of the Fee Period, the Debtors obtained the support of nearly every T-

side creditor for a revised Plan, executed an extensively negotiated agreement settling and

releasing a host of claims and causes of action by and against the Debtors and a number of other

supporting stakeholders (the "Settlement Agreement"), and negotiated and executed a plan

support agreement with a substantial number of the T-side creditors and certain other parties-in-

interest (the "Plan Support Agreement").  The deal embodied in the Plan and Settlement

Agreement resolves many of the issues in these chapter 11 cases, offers the potential for a 100%

recovery for E-side creditors, and has the support of and consent by a significant majority of the

T-side unsecured creditors.

8.    Early in the Fee Period, and with the goal of facilitating discussions with all

stakeholders, the Debtors sought and obtained Court approval of a schedule governing Plan

confirmation and an extension of exclusivity through the end of the statutory periods.  Against

the backdrop of Court-ordered deadlines, the Debtors used the time afforded by the exclusivity

extension to engage all stakeholders in discussions regarding three potential restructuring

alternatives with respect to Reorganized EFH embodied in the Plan: (a) a merger or sale transaction; (b) a standalone reorganization; and (c) a potential backstop transaction. Specifically, the Debtors and their advisors negotiated during the Fee Period with bidders to acquire the economic interests in Oncor.  At the same time, the Debtors advanced discussions with the E-side stakeholders on a potential standalone equitization alternative and discussions with T-side stakeholders on a merger transaction backstopped by certain members of the ad hoc group of TCEH unsecured noteholders (the "TCEH Unsecured Ad Hoc Group") and a consortium of purchasers led by Hunt Consolidated Inc. (the "Hunt Consortium").  The Debtors filed modified versions of the Plan and Disclosure Statement in July 2015 that reflected continued negotiations and narrowed the Debtors' potential restructuring alternatives.

9.     Ultimately, as the Court is aware, the Debtors reached agreement with the TCEH Unsecured Ad Hoc Group and nearly all of the T-side creditors on the terms of a Plan and Settlement Agreement that the Debtors filed on August 10, 2015.  That Plan contemplates a tax-free spin-off of TCEH to the TCEH first lien creditors and a merger transaction premised upon a $12.6 billion investment, the proceeds of which will be used to provide a 100% recovery to E-side creditors.  The Settlement Agreement resolves many of the alleged claims that have been the subject of expensive litigation in these chapter 11 cases, including alleged inter-Debtor claims, alleged claims against the TCEH first lien creditors, alleged claims against the holders of equity interests in EFH Corp., and alleged claims against the Debtors' directors and officers related to each of the foregoing periods.  Since the filing of the Plan and the Settlement Agreement, the Debtors and their advisors have undertaken a massive effort to pursue confirmation and consummation of the proposed Plan, including, among other things, seeking and obtaining approval of the Plan Support Agreement and the Disclosure Statement, preparing for and

providing confirmation-related discovery, and preparing applications to obtain regulatory approval of the Merger Transaction (as defined below) and tax-free spin-off of TCEH to be executed under the Plan.

10.    Kirkland also continued to advise the Debtors during the Fee Period on various other work streams (described in detail below), including advancing the claims reconciliation process, continuing to litigate various interest rate and makewhole issues across the EFIH capital structure, and evaluating executory contracts and unexpired leases to assist the Debtors with determining whether to assume or reject such agreements.  As a result of these efforts, the Debtors are entering the final phase of their chapter 11 cases and stand ready to confirm and consummate a value-maximizing plan of reorganization.

### Case Status Summary

11.    The Debtors made a tremendous amount of progress during the Fee Period toward their goal of consummating a value-maximizing reorganization.  In addition to executing definitive documentation governing the Merger Transaction (as defined below) and the Settlement Agreement, the Debtors obtained approval of a Plan confirmation schedule that positions them to start Plan confirmation proceedings on November 3, 2015 and are currently in the midst of soliciting votes to select or reject the Plan.  Over the next several weeks, the Debtors will work to complete confirmation discovery.  In addition, the Debtors will devote resources as necessary to resolve objections filed in connection with the Plan and the Settlement Agreement (which objections are due on October 23rd).  The next several weeks in these chapter 11 cases are critically important to the Debtors' goal of confirming and consummating the Plan within the milestones set forth in the Plan Support Agreement.

## **The Debtors' Retention of Kirkland**

12.     On September 16, 2014, the Court entered the *Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2052] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference. The Retention Order authorizes the Debtors to compensate and reimburse Kirkland in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Committee Order, and the Interim Compensation Order.   The Retention Order also authorizes the Debtors to compensate Kirkland at Kirkland's hourly rates charged for services of this type and to reimburse Kirkland for actual and necessary out-of-pocket expenses incurred, subject to application to this Court.[4]  The particular terms of Kirkland's engagement are detailed in the engagement letter by and between Kirkland and the Debtors, effective as of June 19, 2012, and attached hereto as **Exhibit C** (the "Engagement Letter").

13.     The Retention Order authorizes Kirkland to provide the following services consistent with and in furtherance of the services enumerated above:

  a.  advising the Debtors with respect to their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

  b.  preparing pleadings, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates and consistent with the services identified in the Retention Order;

  c.  appearing before the Court and any appellate courts to represent the interests of the Debtors' estates before those courts in connection with the services in the Retention Order; and

---

[4]     In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.

d.  performing all other legal services reasonably necessary or otherwise beneficial for the Debtors in connection with these chapter 11 cases.

### **Disinterestedness of Kirkland**

14.  To the best of the Debtors' knowledge and as disclosed in:  the *Declaration of Edward O. Sassower, P.C. in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 660] (the "First Sassower Declaration"); the *Amended Declaration of Edward O. Sassower in Support of the Debtors Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Effective Date* [D.I. 1733] (the "Amended Sassower Declaration"); the *First Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2005] (the "First Supplemental Sassower Declaration"); the *Second Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 2949] (the "Second Supplemental Sassower Declaration"); the *Third Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 3041] (the "Third Supplemental Sassower Declaration"); the *Fourth Supplemental*

*Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 4963] (the "Fourth Supplemental Sassower Declaration"); the *Fifth Supplemental Declaration of Edward O. Sassower in Support of the Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland and Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 6240] (the "Fifth Supplemental Sassower Declaration" and together with the First Sassower Declaration, the Amended Sassower Declaration, the First Supplemental Sassower Declaration, the Second Supplemental Sassower Declaration, the Third Supplemental Sassower Declaration, and the Fourth Supplemental Sassower Declaration, the "Kirkland Declarations"), Kirkland (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtors' estates; and (c) has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the Kirkland Declarations.

15.    Kirkland may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these chapter 11 cases.  In the Kirkland Declarations, Kirkland disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.  Kirkland will update the Kirkland Declarations or file additional ones, as appropriate, if Kirkland becomes aware of relevant and material new information.

16.     Kirkland performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

17.     Except to the extent of the advance payments paid to Kirkland that Kirkland previously disclosed to this Court in the Kirkland Declarations, Kirkland has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.[5]

18.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared, nor has Kirkland agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of Kirkland or (b) any compensation another person or party has received or may receive.

### Summary of Compliance with Interim Compensation
### Order and Fee Committee Order

19.     This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

20.     Kirkland seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of $25,374,478.00 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $1,829,505.70.   During the Fee Period, Kirkland attorneys and paraprofessionals expended a total of 32,992.60 hours for which compensation is requested.

---

[5]     Under the Merger and Purchase Agreement (as defined below) (attached as <u>Exhibit B</u> to the *Motion of Energy Future Holdings Corp.* et al., *to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248]) EFH Corp. is separately tracking certain fees and expenses incurred by the Debtors' professionals (including Kirkland) in connection with certain Enforcement Actions (as defined in the Merger and Purchase Agreement). EFH Corp. will seek reimbursement from an entity owned by the Hunt Consortium (defined as the "Parent" in the Merger and Purchase Agreement) for any such fees and expenses.

21.     Kirkland has received payments totaling $10,718,342.23 under the Interim Compensation Order and the Fee Committee Order.  Kirkland has submitted the Monthly Fee Statements seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services rendered by Kirkland and (b) 100% of the actual and necessary costs and expenses incurred by Kirkland in connection with the services provided to the Debtors for each month.

22.     Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, Kirkland seeks payment of the remaining $5,074,895.60, which represents the 20% holdback period on fees incurred during the Fee Period.

### Fees and Expenses Incurred During Fee Period

**A.     Customary Billing Disclosures**.

23.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for other restructuring matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such restructurings and other complex matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit D** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.      Fees Incurred During Fee Period**.

24.      In the ordinary course of Kirkland's practice, Kirkland maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at Kirkland's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the first interim fee application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective* Nunc Pro Tunc *to the Petition Date* [D.I. 660] (the "Retention Application").

**C.      Expenses Incurred During Fee Period**.

25.      In the ordinary course of Kirkland's practice, Kirkland maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  Kirkland currently charges $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, Kirkland charged no more than $0.10 per page for

standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions.

26.    For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit F** is a summary of expenses incurred during the Fee Period and setting forth the total amount of reimbursement sought with respect to each category of expenses for which Kirkland is seeking reimbursement.

## Proposed Payment Allocation

27.    In accordance with paragraph 2(b) of the Interim Compensation Order, Kirkland proposes the following allocation of the fees and expenses sought in this Fee Application among (a) EFH Corp., (b) EFIH, and (c) the TCEH Debtors:

| Direct Benefit Fees: $2,747,598.90 (comprised of $2,740,909.00 fees and $6,689.90 expenses) | |
| --- | --- |
| Debtor(s) | Amount |
| EFH Corp. | $77,784.90 |
| EFIH | $892,254.40 |
| TCEH Debtors | $1,777,559.60 |
| *Total:* | $2,747,598.90 |
| Collective Benefit Fees: $24,456,384.80 (comprised of $22,633,569.00 fees and $1,822,815.80 expenses) | |
| Debtor(s) | Amount |
| EFH Corp. | $1,281,847.50 |
| EFIH | $7,926,895.31 |
| TCEH Debtors | $15,247,641.99 |
| *Total:* | $24,456,384.80 |
| *Grand Total:* | $27,203,983.70 |

## Summary of Legal Services Rendered During the Fee Period

28.    As discussed above, during the Fee Period, Kirkland provided extensive and important professional services to the Debtors in connection with these chapter 11 cases.  These services were often performed under severe time constraints and were necessary to address a

multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

29.    To provide a meaningful summary of Kirkland's services provided on behalf of the Debtors and their estates, Kirkland has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period:[6]

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0005 | [ALL] Business Operations | 1.70 | $1,288.50 |
| 0006 | [ALL] Case Administration | 293.60 | $142,340.50 |
| 0007 | [ALL] Cash Management | 1.50 | $997.50 |
| 0008 | [ALL] Claims Administration & Objections | 1,179.70 | $785,819.50 |
| 0009 | [ALL] Contested Matters & Adv. Proceed. | 9,024.40 | $5,577,702.00 |
| 0010 | [ALL] Corp. Governance and Sec. Issues | 5,402.70 | $4,705,489.00 |
| 0011 | [ALL] Exec. Contracts & Unexpired Leases | 42.80 | $26,605.00 |
| 0012 | [ALL] Hearings | 254.60 | $230,805.00 |
| 0013 | [ALL] Insurance | 6.00 | $2,917.00 |
| 0014 | [ALL] Kirkland Retention and Fee Applications | 959.10 | $521,179.50 |
| 0015 | [ALL] Mediation | 2.10 | $1,494.00 |
| 0017 | [ALL] Non-Kirkland Retentions & Fee Apps | 75.90 | $47,989.50 |
| 0018 | [ALL] Non-Working Travel | 356.10 | $326,774.00 |
| 0019 | [ALL] Official Committee Issues & Meet. | 12.20 | $9,140.50 |
| 0021 | [ALL] Plan and Disclosure Statements | 8,511.80 | $7,551,886.50 |
| 0023 | [ALL] Regulatory Issues | 4.20 | $4,251.00 |
| 0026 | [ALL] Retiree and Employee Issues/OPEB | 691.60 | $529,727.00 |
| 0029 | [ALL] Tax Issues | 2,231.50 | $2,078,886.00 |
| 0030 | [ALL] U.S. Trustee Issues | 0.60 | $399.00 |
| 0034 | [TCEH] Asset Dispositions and Purchases | 42.50 | $28,445.50 |
| 0035 | [TCEH] Automatic Stay | 37.20 | $21,410.00 |
| 0036 | [TCEH] Bond Issues | 2.10 | $1,669.50 |
| 0037 | [TCEH] Business Operations | 34.50 | $20,993.00 |
| 0038 | [TCEH] Cash Collateral and DIP Financing | 94.70 | $80,384.50 |
| 0039 | [TCEH] Claims Administration & Objection | 320.90 | $199,374.50 |
| 0040 | [TCEH] Contested Matters & Advers. Proc. | 108.80 | $72,037.00 |
| 0041 | [TCEH] Corp. Governance and Sec. Issues | 2.20 | $2,129.00 |

---

[6]    In certain instances Kirkland may have billed the same amount of fees, but different amount of hours to different Matter Categories.  This difference is the result of different staffing of each such Matter Category.

| Matter Number | Project Category Description | Hours Billed | Total Compensation Billed |
|---|---|---|---|
| 0042 | [TCEH] Environmental Issues | 116.20 | $107,702.50 |
| 0046 | [TCEH] Non-Debtor Affiliates | 51.50 | $29,888.00 |
| 0048 | [TCEH] Non-Working Travel | 11.90 | $10,946.00 |
| 0049 | [TCEH] Official Committee Issues & Meet. | 4.70 | $2,875.00 |
| 0051 | [TCEH] Plan and Disclosure Statements | 151.60 | $103,504.00 |
| 0057 | [TCEH] Trading and Hedging Contracts | 33.90 | $23,739.50 |
| 0062 | [TCEH] Vendor and Other Creditor Issues | 148.80 | $88,372.00 |
| 0065 | [EFIH] Bond Issues | 7.70 | $6,258.00 |
| 0066 | [EFIH] Cash Collat./DIP Finan./Make-whole | 29.70 | $28,768.00 |
| 0068 | [EFIH] Contested Matters & Advers. Pro. | 1,041.60 | $853,274.50 |
| 0070 | [EFIH] Hearings | 3.10 | $3,087.50 |
| 0085 | [EFH] Claims Administration & Objections | 47.80 | $23,146.00 |
| 0086 | [EFH] Contested Matters & Advers. Proc. | 26.90 | $19,637.00 |
| 0089 | [EFH] EFH Properties | 43.90 | $32,791.50 |
| 0108 | [TCEH] Exec. Contracts & Unexpired Lease | 1,462.30 | $958,985.00 |
| 0113 | [ALL] Enforcement of TTI Rights | 68.80 | $58,232.50 |
| 0114 | [ALL] Drag Along Rights | 30.60 | $29,645.50 |
| 0115 | [TCEH] Exit Financing | 16.60 | $21,491.50 |

30.     The following is a summary, by Matter Category, of the most significant professional services provided by Kirkland during the Fee Period.  This summary is organized in accordance with Kirkland's internal system of matter numbers.   The detailed descriptions demonstrate that Kirkland was heavily involved in performing services for the Debtors on a daily basis, often including night and weekend work, to meet the needs of the Debtors' estates in these chapter 11 cases.

31.     A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by Kirkland partners, associates, and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit G**. **Exhibit H** is Kirkland's budget and staffing plan for this Fee Period, which has been approved by the Debtors, and **Exhibit I** is a comparison of hours and fees budgeted for each matter category to which Kirkland professionals and paraprofessionals billed time during the Fee Period against the hours and fees for which Kirkland seeks compensation for the Fee Period.

32.     In addition, Kirkland's computerized records of time expended providing professional services to the Debtors and their estates are attached hereto as **Exhibit J**, and Kirkland's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit K**.

(a)     **[ALL] Business Operations (Matter No. 5)**

Total Fees:    $1,288.50
Total Hours:   1.70

33.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the Debtors' business operations.  Specifically, Kirkland attorneys and paraprofessionals spent time advising the Debtors' management and other advisors regarding UCC continuation statements and tripartite agreements.

(b)     **[ALL] Case Administration (Matter No. 6)**

Total Fees:    $142,340.50
Total Hours:   293.60

34.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period on tasks assuring the smooth and efficient administration of the Debtors' chapter 11 cases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.     coordinating work streams, client communications, and creditor communications by monitoring critical dates and case developments and maintaining and disseminating case calendars, task lists, work-in-progress reports, and key deadlines in these chapter 11 cases;

    ii.    preparing for and participating in regular meetings and telephone conferences with both the Kirkland working groups, other retained professionals, and the Debtors regarding the status of pending workstreams, discovery issues, and database management;

    iii.   preparing for and attending telephone conferences every other week with certain creditor constituencies, including the Official Committees, regarding case status and progress on critical workstreams; and

16

iv.    reviewing docket entries as they are filed to apprise the Debtors, as well as other retained professionals, of developments in these chapter 11 cases, in real-time.

**(c)    [ALL] Cash Management (Matter No. 7)**

Total Fees:    $997.50
Total Hours:    1.50

35.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period analyzing bank account opening and closures and authorized depositories.

**(d)    [ALL] Claims Administration & Objections (Matter No. 8)**

Total Fees:    $785,819.50
Total Hours:    1,179.70

36.    To date, creditors have filed over 10,000 proofs of claim in these chapter 11 cases.  This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims either filed against all of the Debtors' estates or claims, the resolution of which, that may affect all of the Debtors' estates.  Specifically, Kirkland attorneys and paraprofessionals spent time, among other things:

i.    analyzing and researching issues related to claims against the Debtors;

ii.    preparing for a trial on the asbestos bar date noticing plan and negotiating an agreed noticing plan;[7]

iii.    preparing and filing nine omnibus objections to claims, which resulted in the court disallowing or modifying 851 proofs of claim to reduce the total amount asserted against the Debtors by $41,429,416.62;[8]

---

[7]    *See Objection of Energy Future Holdings Corp., et al., to the Emergency Motion of the EFH Official Committee for Entry of an Order (I) Adjourning the Hearing, Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof and (II) Shortening Notice with Respect to the Emergency Motion* [D.I. 4565]; *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claims, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof* [D.I. 5171].

17

    iv.    monitoring a claims telephone hotline and e-mail account and managing
           related communications; and

    v.     responding to formal and informal responses to the omnibus objections.

    (e)    **[ALL] Contested Matters & Adversary Proceedings (Matter No. 9)**

           Total Fees:    $5,577,702.00
           Total Hours:   9,024.40

37.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals responding to numerous discovery and diligence requests filed by various parties-in-interest, including 164 document requests in connection with plan confirmation. Specifically, Kirkland attorneys and paraprofessionals spent time during the Fee Period:

    i.     drafting and revising written discovery and written responses and
           objections to consolidated discovery requests;

    ii.    monitoring the docket to ensure compliance with certain requirements of a
           confidentiality agreement and protective order and fulfilling requirements
           to maintain confidentiality of designated material;

    iii.   evaluating and negotiating the scope of disclosure statement discovery
           requests, including 349 document requests, 5 interrogatories, and 16

---

[8]    *See Debtors' Sixteenth Omnibus (Non-Substantive) Objection to (Insufficient Documentation, Amended, and Wrong Debtor) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4782]; *Debtors' Seventeenth Omnibus (Substantive) Objection to (Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4784]; *Debtors Eighteenth Omnibus (Substantive) Objection to Certain Improperly Asserted Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4786]; *Debtors Nineteenth Omnibus (Non-Substantive) Objection to (Insufficient Documentation, Amended, and Wrong Debtor) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4970]; *Debtors' Twentieth Omnibus (Substantive) Objection to (Substantive Duplicate and No Liability) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4972]; *Debtors' Twenty-First Omnibus (Substantive) Objection to (Certain Improperly Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 4974]; *Debtors' Twenty-Fourth Omnibus (Non-Substantive) Objection to Amended, Wrong Debtor, and Exact Duplicate Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 5364]; *Debtors Twenty-Fifth Omnibus (Substantive) Objection to (Substantive Duplicate and No Liability) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1* [D.I. 5366]; *Debtors' Twenty-Sixth Omnibus (Substantive) Objection to Certain Improperly Asserted Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-*[D.I. 5369].

deposition notices, including seven section 30(b)(6) notices covering 51 topics;

iv.    evaluating and negotiating the scope of plan confirmation discovery requests, including 192 requests for production, 13 interrogatories, and 6 deposition notices;

v.    identifying, collecting, and processing documents from the Debtors and various third parties for review and potential production;

vi.    coordinating document review processes internally and with third-party database vendors to ensure an efficient document review process;

vii.    analyzing and reviewing potentially responsive documents related to the disclosure statement that culminated in the production of more than 9,000 documents totaling more than 40,000 pages;

viii.    analyzing and reviewing potentially responsive documents related to confirmation that culminated in the production of approximately 68,000 documents and over 456,000 pages, including more than 40,000 documents and over 230,000 pages just one week after filing the Plan and Settlement Agreement;[9]

ix.    drafting and revising a letter brief regarding the resolution of discovery disputes related to the disclosure statement;[10]

x.    conferencing with the Debtors, their advisors, and certain parties-in-interest regarding the status of litigation matters, including the document production process and discovery requests;

xi.    researching and analyzing factual circumstances related to the assessment and evaluation of potential claims; and

xii.    negotiating the Settlement Agreement, as well as, drafting, reviewing, and revising the Settlement Motion.[11]

---

[9]    *See Hr'g Tr.* 33: 3-9 (Aug. 25, 2015).

[10]    *See Joint Letter from the Debtors and Their Respective Disinterested Directors and Managers to The Honorable Christopher S. Sontchi Concerning Resolution of All Pending Discovery Disputes Related to Disclosure Statement* [D.I. 4718]; *Joint Letter from the Debtors and Their Respective Disinterested Directors and Managers to The Honorable Christopher S. Sontchi Seeking Relief from Disclosure Statement Discovery Requests* [D.I. 4606]

[11]    *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249] (the "Settlement Motion").

(f)      **[ALL] Corporate and Securities Issues (Matter No. 10)**

Total Fees:    $4,705,489.00
Total Hours:  5,402.70

38.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period related to corporate governance issues involving all of the Debtors, including their respective disinterested directors and managers.  Specifically, Kirkland attorneys spent time:

    i.    preparing for, and participating in, joint meetings with all of the Debtors' boards of directors regarding corporate and financial aspects of the chapter 11 process;

    ii.    drafting, reviewing, and revising documents and resolutions related to all of the Debtors' corporate governance during the chapter 11 process;

    iii.    negotiating, drafting, and revising transactional documents with various parties regarding the merger agreement between EFH, EFIH, and the Hunt/TCEH Unsecured Group regarding the economic interests in Oncor (with the latter providing the funding necessary to consummate the merger) (such transaction, the "<u>Merger Transaction</u>" and such agreement the "<u>Merger and Purchase Agreement</u>");

    iv.    preparing for and participating in substantive negotiations with the Debtors' key stakeholders regarding the proposed terms of the Merger Transaction and the Merger and Purchase Agreement;

    v.    reviewing Round 2 bids received from strategic and third-party buyers for the economic interests in Oncor;

    vi.    discussing the terms of Round 2 bids with various parties in interest in advance of potential stalking horse hearing;

    vii.    negotiating, drafting, and revising the Plan Support Agreement, related Plan Support Agreement Motion, and documents related to the Merger Transaction; and

    viii.    revising plan and disclosure statement filing resolutions.

(g)      **[ALL] Exec. Contracts & Unexpired Leases (Matter No. 11)**

Total Fees:    $26,605.00
Total Hours:  42.80

39.    This Matter Category includes time spent by Kirkland attorneys and

paraprofessionals during the Fee Period examining issues related to the Debtors' executory contracts and unexpired leases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

> i.    drafting and revising contract and lease assumption and rejection pleadings as well as other documents related thereto;[12]
>
> ii.   reviewing and analyzing certain lease stipulations;
>
> iii.  analyzing and researching the Debtors' obligations under various executory contracts and leases; and
>
> iv.   communicating with outside parties regarding contract assumption and rejection issues.

**(h)    [ALL] Hearings (Matter No. 12)**

> Total Fees:    $230,805.00
> Total Hours:   254.60

40.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period preparing for and attending the Debtors' omnibus hearings, including, among other things:

> i.    hearings regarding the Debtors' third request for an extension of the Debtors' exclusivity period and amending the confirmation scheduling order;
>
> ii.   telephonic hearings regarding certain discovery and deposition disputes in connection with, among other things, the Debtors' Plan and Disclosure Statement;
>
> iii.  disclosure statement status conferences and scheduling conferences; and
>
> iv.   telephonic hearings regarding the Debtor's request to enter into certain long-term power purchase agreements.

---

[12]  *See, e.g., Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Luminant Generation Company LLC to Reject Certain Executory Contracts with Tarrant County College District, Effective Nunc Pro Tunc to August 20, 2015* [D.I. 5604]; *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Assumption of All Executory Contracts by and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC and Alcoa Inc* [D.I. 5789].

### (i)    [ALL] Insurance (Matter No. 13)

Total Fees:    $2,917.00
Total Hours:  6.00

41.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period analyzing insurance policies and ensuring the Debtors maintain sufficient coverage as required by chapter 11 operating guidelines.

### (j)    [ALL] Kirkland Retention and Fee Applications (Matter No. 14)

Total Fees:    $521,179.50
Total Hours:  959.10

42.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to Kirkland's retention and fee materials. Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.    reviewing, revising, and refining budget and staffing materials;

    ii.    reviewing and revising invoices regarding privilege and compliance with applicable guidelines and rules;

    iii.    reviewing and analyzing conflicts reports for any potential conflicts of interest; and

    iv.    preparing and revising Kirkland's third interim fee application.[13]

### (k)    [ALL] Mediation (Matter No. 15)

Total Fees:    $1,494.00
Total Hours:  2.10

43.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period negotiating mediation non-disclosure agreements and analyzing diligence requests regarding the plan mediation process.

---

[13]    *See Third Interim Fee Application of Kirkland & Ellis LLP, Attorneys for the Debtors and Debtors in Possession, for the period from January 1, 2015 to April 30, 2015* [D.I. 4773].

(l)        **[ALL] Non-Kirkland Retentions and Fee Applications (Matter No. 17)**

Total Fees:    $47,989.50
Total Hours:    75.90

44.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to the retention of professionals other than Kirkland.  Specifically, Kirkland attorneys and paraprofessionals spent time:

   i.    revising certain ordinary course professionals' declarations of disinterestedness;[14]

   ii.    corresponding with the Debtors' professionals regarding, among other things, supplemental declarations, the scope of the professionals' services, budgeting, and the interim compensation process;

   iii.    assisting other professionals in receiving compensation in accordance with the interim compensation process;

   iv.    updating the schedule of ordinary course professionals;[15] and

   v.    facilitating the Debtors' retention of various professionals other than Kirkland.[16]

---

[14]    *See, e.g.*, *Declaration of Disinterestedness of Jackson Gilmour & Dobbs, PC Pursuant to the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 4889]; *Declaration of Disinterestedness of The Willis Law Group, PLLC Pursuant to the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 4890]; *Declaration of Disinterestedness of Boulette Golden & Marin L.L.P. Pursuant to the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 4993]; *Supplemental Declaration of Disinterestedness of Vinson & Elkins LLP Pursuant to the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 5108].

[15]    *See Amended List of Ordinary Course Professionals (Notice of Tenth Amended List of Ordinary Course Professionals)* [D.I. 4891]; *Amended List of Ordinary Course Professionals (Notice of Eleventh Amended Lists of Ordinary Course Professionals* [D.I. 4992]; *List of Ordinary Course Professionals (Notice of Twelfth Amended Lists of Ordinary Course Professionals)* [D.I. 5777]

[16]    *See, e.g.*, *Order Expanding the Retention and Employment of McDermott Will & Emery as Special Counsel for Energy-Related and REIT Transactional Matters Effective* nunc pro tunc *to June 2, 2015* [D.I. 4999]

23

### (m)    [ALL] Non-Working Travel (Matter No. 18)

Total Fees:    $326,774.00
Total Hours:   356.10

45.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the Debtors.  The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

### (n)    [ALL] Official Committee Issues and Meetings (Matter No. 19)

Total Fees:    $9,140.50
Total Hours:   12.20

46.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period communicating with the Debtors' official committees generally.

### (o)    [ALL] Plan and Disclosure Statements (Matter No. 21)

Total Fees:    $7,551,886.50
Total Hours:   8,511.80

47.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period developing a plan of reorganization, disclosure statement, and related documents.  Specifically, Kirkland attorneys and paraprofessionals spent time during the Fee Period:

    i.    drafting, reviewing, revising, and filing the Debtors' motion to extend exclusivity to the statutory maximum, responding to the objections, joinder of objections, and response of seven parties-in-interest, and preparing for a contested hearing involving such parties-in-interest regarding the Debtors' exclusivity motion;[17]

---

[17]    The Court entered an order approving the Debtors' exclusivity motion on June 1, 2015.  *See Third Order Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code* [D.I. 4634].

ii.     drafting, reviewing, revising, and filing the amended Plans and related Disclosure Statements, as well as related exhibits and consents;[18]

iii.    drafting, reviewing, revising, and filing a motion to approve a confirmation schedule;[19]

iv.     negotiating, drafting, reviewing, revising, and filing the Plan Support Agreement and Plan Support Agreement Motion;

v.      researching, drafting, reviewing, and revising a plan term sheet and addressing factual and legal issues regarding the same;

vi.     researching and analyzing potential confirmation issues;

vii.    communicating with the disinterested directors' advisors of each of EFH Corp., EFIH, and EFCH/TCEH regarding the Debtors' Plan, a Plan Support Agreement, and the Disclosure Statement;

viii.   communicating and coordinating with the Debtors' other advisors regarding the terms of the Plan and term sheet as well as open issues pertaining to the same and the disclosure statement;

ix.     preparing for and participating in substantive negotiations with the Debtors' key stakeholders regarding the proposed terms of the Plan;

x.      negotiating confidentiality agreements and attending meetings with various parties-in-interest, including strategic and third-party bidders for the economic interests in Oncor;

xi.     evaluating, investigating, and responding to diligence requests from creditor constituencies and disinterested director advisors; and

xii.    evaluating and researching plan structures and proposals.

---

[18]  *See* the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5078]; *Amended Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5080]; *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5197]; *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5244]; *Amended Disclosure Statement (Disclosure Statement for the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5247]; *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6107]; *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6110];

[19]  *See Motion of Energy Future Holdings Corp., et al., for Entry of an Order Amending Certain Hearing Dates and Deadlines in Connection with the Confirmation of the Debtors' Plan of Reorganization* [D.I. 4138].

**(p)**      **[ALL] Regulatory Issues (Matter No. 23)**

Total Fees:     $4,251.00
Total Hours:    4.20

48.     This Matter Category includes time spent by K&E attorneys related to advising the Debtors as to various regulatory issues and addressing the same. Specifically, K&E attorneys spent time engaging with various regulatory bodies regarding among other things, necessary or preferred rulings or guidance in connection with contemplated Plan transactions and analyzing trade restriction issue connected with the Plan.

**(q)**      **[ALL] Retiree and Employee Issues / OPEB (Matter No. 26)**

Total Fees:     $529,727.00
Total Hours:    691.60

49.     This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services related to various issues concerning the Debtors' retirees and employees, including employees of EFH Corporate Services. Specifically, Kirkland attorneys and paraprofessionals spent time:

     i.      analyzing, in consultation with the Debtors, certain of the Debtors' retiree and employee compensation and benefit obligations, including employment agreement considerations;

     ii.      advising the Debtors in connection with the potential transfer of benefit programs to the reorganized Debtor as part of the Plan;

     iii.      advising the Debtors to ensure compliance with the order approving the 2015 compensation program;

     iv.      providing ongoing advice to the Debtors regarding existing compensation relief and compliance therewith; and

     v.      drafting, reviewing, and revising motion for an order approving the 2016 compensation program.

(r)    [ALL] Tax Issues (Matter No. 29)

Total Fees:    $2,078,886.00
Total Hours:    2,231.50

50.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period conducting legal research, preparing correspondence, pleadings, and disclosures, and generally advising the Debtors in connection with tax issues.  Specifically, Kirkland attorneys spent time:

i.      researching and analyzing potential REIT structures associated with the Plan and Merger Transaction;

ii.     researching and analyzing certain tax issues associated with the Merger and Purchase Agreement and related transactions;

iii.    researching and analyzing certain tax issues arising in connection with the Debtors' current business operations and potential transactions;

iv.     drafting and revising tax memoranda;

v.      preparing a factual assessment of the Debtors' historical tax accounting practices; and

vi.     addressing and responding to inquiries from various parties-in-interest regarding diligence related to various tax considerations.

(s)    [ALL] U.S. Trustee Issues (Matter No. 30)

Total Fees:    $399.00
Total Hours:    0.60

51.    This Matter Category includes the services provided by Kirkland attorneys related to reviewing and revising the Debtors' monthly operating reports to comply with U.S. Trustee guidelines and discussions with the U.S. Trustee.

(t)    **[TCEH] Asset Disposition and Acquisition (Matter No. 34)**

Total Fees:    $28,445.50
Total Hours:    42.50

52.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period rendering services related to the disposition, investment, or purchase of assets by the TCEH Debtors.  Specifically, Kirkland attorneys represented the Debtors in negotiations with parties-in-interest regarding the terms and conditions of certain *de minimis* investments, researching certain potential investments, advising the Debtors regarding certain asset purchase notices, and drafting and revising ordinary course asset transfer motions.

(u)    **[TCEH] Automatic Stay (Matter No. 35)**

Total Fees:    $21,410.00
Total Hours:    37.20

53.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period providing services related to enforcing the automatic stay as it affects the TCEH Debtors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    responding to formal and informal inquiries from certain parties-in-interest to lift the automatic stay and performing legal research on related issues, including the permissibility of doing so in light of alleged personal injury actions; and

ii.    drafting, reviewing, and revising the Debtors' pleading that the automatic stay does not apply to certain state court litigations and related pleadings.[20]

---

[20]    *See Objection of Energy Future Holdings,* et al.*, to the Tremble Motion Not to Reinstate Appeal* [D.I. 5908].

(v)      **[TCEH] Bond Issues (Matter No. 36)**

Total Fees:    $1,669.50
Total Hours:   2.10

54.    This Matter Category includes the services provided by Kirkland attorneys related to analyzing the potential replacement of the collateral agent under the TCEH second lien debt documents.

(w)      **[TCEH] Business Operations (Matter No. 37)**

Total Fees:    $20,993.00
Total Hours:   34.50

55.    This Matter Category includes time spent during the Fee Period related to the business operations of the TCEH Debtors, including:

i.      strategizing with the TCEH Debtors' management and other advisors regarding processes to ensure uninterrupted operations and compliance with provisions of the Bankruptcy Code and orders entered in these chapter 11 cases;

ii.     addressing compliance issues concerning the TCEH Debtors' business operations in connection with, among other things, adhering to certain relief authorized by the Court;

iii.    reviewing and revising tripartite agreements;

iv.     researching and drafting memoranda relating to water rights; and

v.      preparing for and participating in meetings with the TCEH Debtors' business units in connection with the same.

(x)      **[TCEH] Cash Collateral and DIP Financing (Matter No. 38)**

Total Fees:    $80,384.50
Total Hours:   94.70

56.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the DIP facility available to TCEH and TCEH's authorized use of cash collateral.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.       analyzing issues and advising the TCEH Debtors and their other professionals regarding payments under the TCEH cash collateral order;

    ii.      analyzing and reviewing letter of credit issues; and

    iii.     drafting, revising, and negotiating a stipulation extending the challenge period under the TCEH Cash Collateral Order.[21]

**(y)**    **[TCEH] Claims Administration and Objections (Matter No. 39)**

Total Fees:   $199,374.50
Total Hours:  320.90

57. This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims against the TCEH Debtors' estates, including:

    i.       corresponding with various parties regarding claims and claims stipulations;

    ii.      reviewing and drafting documents related to potential environmental claims; and

    iii.     reviewing and revising settlement agreements and related materials and contract amendments.

**(z)**    **[TCEH] Contested Matters and Adversary Proceedings (Matter No. 40)**

Total Fees:   $72,037.00
Total Hours:  108.80

58. This Matter Category includes time spent by Kirkland professionals and paraprofessionals during the Fee Period related to motions, adversary proceedings, derivative standing, and contested matters involving the TCEH Debtors, including:

    i.       strategizing and negotiating regarding the Standing Motions;

---

[21] *See Stipulation and Consent Order Extending Certain Deadlines in the Final Cash Collateral Order* [D.I. 4958].

ii.      drafting, revising, and corresponding with parties in interest regarding the Debtors' objection to a motion to affirm the Texas state courts' ruling regarding the automatic stay;

iii.     strategizing regarding, preparing pleadings for, and otherwise addressing non-bankruptcy legal proceedings involving the TCEH Debtors; and

iv.      drafting and revising the Debtors' motion to determine certain ad valorem property taxes pursuant to section 505 of the Bankruptcy Code.[22]

**(aa)    [TCEH] Corp. Governance and Sec. Issues (Matter No. 41)**

    Total Fees:    $2,129.00
    Total Hours:   2.20

59.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period preparing for and presenting to the TCEH board of managers on various issues regarding these chapter 11 cases.

**(bb)    [TCEH] Environmental Issues (Matter No. 42)**

    Total Fees:    $107,702.50
    Total Hours:   116.20

60.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period analyzing and addressing certain environmental compliance issues, including potential environmental liabilities, litigation matters, options contracts, insurance options, and the dischargeability of environmental claims against the TCEH Debtors.

**(cc)    [TCEH] Non-Debtor Affiliates (Matter No. 46)**

    Total Fees:    $29,888.00
    Total Hours:   51.50

61.    This Matter Category includes time spent during the Fee Period advising certain of the TCEH Debtors' non-debtor affiliates (excluding Oncor) on recommended resolutions to

---

[22]    *Motion of Energy Future Holdings Corp., et al., Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining Contested Ad Valorem Tax Matters* [D.I. 5620].

issues related to non-debtor land sale stipulations, plant expense authorization, and the Comanche Peak quarterly report.

### (dd)    [TCEH] Non-Working Travel (Matter No. 48)

Total Fees:    $10,946.00
Total Hours:   11.90

62.    This Matter Category includes non-working travel time spent by Kirkland attorneys and paraprofessionals during the Fee Period in connection with their representation of the TCEH Debtors.  The amounts requested in the Fee Application reflect a reduction of one-half of the charges for travel time not spent working on matters related to these chapter 11 cases.

### (ee)    [TCEH] Official Committee Issues and Meetings (Matter No. 49)

Total Fees:    $2,875.00
Total Hours:   4.70

63.    This Matter Category includes the services provided by Kirkland attorneys and paraprofessionals during the Fee Period communicating with the professionals for the TCEH Creditors' Committee regarding, among other things, diligence requests, operational relief, and the claims reconciliation process.

### (ff)    [TCEH] Plan and Disclosure Statements (Matter No. 51)

Total Fees:    $103,504.00
Total Hours:   151.60

64.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period engaging in discussions with TCEH creditors regarding discrete plan issues affecting the TCEH Debtors, including mediation issues and diligence requests.

32

**(gg)    [TCEH] Trading and Hedging Contracts (Matter No. 57)**

Total Fees:    $23,739.50
Total Hours:   33.90

65.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to analyzing and responding to issues concerning the hedging and trading activities of the TCEH Debtors.  Specifically, Kirkland attorneys spent time:

i.    negotiating with opposing counsel regarding liquidation of terminated hedging and trading agreements;

ii.    diligencing requests for additional, limited non-proprietary hedging and trading relief;

iii.    drafting, reviewing, and revising a motion to enter into certain non-proprietary hedging and trading arrangements; [23]

iv.    negotiating relief in the hedging and trading motion with U.S. Trustee, TCEH Committee, and other parties-in-interest; and

v.    discussing reports issued under the hedging and trading order with professionals for various stakeholders.

**(hh)    [TCEH] Vendor and Other Creditor Issues (Matter No. 62)**

Total Fees:    $88,372.00
Total Hours:   148.80

66.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to addressing issues involving certain of the TCEH Debtors' suppliers and vendors.  Specifically, Kirkland attorneys and paraprofessionals spent time:

i.    addressing correspondence from the TCEH Debtors' vendors including inquiries related to potential liens, reclamation, and other claims;

---

[23]    *See Motion of Energy Future Holdings Corp.,* et al*., for Entry of an Order Authorizing Certain Debtors to Enter Into Limited Non-Proprietary Hedging and Trading Arrangements Subject to the Debtors Risk Management Guidelines* [D.I. 5065].

ii. researching, conferring, and corresponding with vendors regarding such inquiries;

iii. drafting response letters to trade vendors;

iv. reviewing vendor and other creditor contracts;

v. negotiating resolutions to vendor issues, including the Holt Settlement;[24] and

vi. researching, drafting, revising and reviewing pleadings regarding vendor issues, including the Holt Settlement.

**(ii)** **[EFIH] Bond Issues (Matter No. 65)**

Total Fees:     $6,258.00
Total Hours:   7.70

67. This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to certain bond issues. Specifically, Kirkland attorneys spent time analyzing and corresponding regarding an indenture trustee's motion to pay certain fees and expenses.

**(jj)** **[EFIH] Cash Collateral / DIP Financing / Make-whole Issues (Matter No. 66)**

Total Fees:     $28,768.00
Total Hours:   29.70

68. This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to potential EFIH financing and repayment alternatives. Specifically, Kirkland attorneys and paraprofessionals spent time:

i. reviewing the second lien EFIH DIP proposal;

ii. negotiating an amendment to the EFIH DIP financing to facilitate such partial repayment;

iii. drafting and filing the letter regarding the PIK makewhole objection;[25]

---

[24] *Motion of Energy Future Holdings Corp.,* et al., *for Entry of an Order Approving the Stipulation Between Certain Debtors and Holt (A) Resolving Claims Asserted by Holt and (B) Assuming Certain Executory Contracts* [D.I. 5778] (the "Holt Settlement").

34

> iv.     assisting the EFIH Debtors and their other advisors in analyzing alternative means of reducing postpetition interest expense or the accrual of postpetition interest claims; and

> v.     drafting, reviewing, and revising board presentations summarizing these alternatives and the corresponding research and analysis.

### (kk)   [EFIH] Contested Matters and Adversary Proceedings (Matter No. 68)

Total Fees:    $853,274.50
Total Hours:   1,041.60

69.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the EFIH Debtors' contested matters and adversary proceedings with EFIH creditors, in particular, the EFIH First Lien, Second Lien, and Unsecured makewhole litigations. Specifically, Kirkland attorneys and paraprofessionals spent time:

> i.     researching, drafting, and revising filings associated with these litigations;

> ii.     drafting and revising the post-trial submissions for the lift stay hearing in the EFIH First Lien makewhole litigation;[26]

> iii.     researching, drafting, and revising pleadings and materials associated with and in preparation for the EFIH Second Lien makewhole summary judgment[27] and lift stay proceedings;

> iv.     preparing for and attending the Third Circuit mediation conference for the First Lien settlement appeal litigation;

> v.     researching, drafting, and revising the Debtors' response brief in the EFIH First Lien settlement appeal litigation pending in the Third Circuit;

---

[25]   *See Letter from Andrew R. McGaan regarding EFIH Debtors Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes to the Honorable Christopher S. Sontchi* [D.I. 5238]

[26]   *See EFIH Debtors' Proposed Findings of Fact and Conclusions of Law* [Adversary D.I. 294]; *EFIH Debtors' Post-Trial Brief* [Adversary D.I. 295]; *Designation of Record by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. Pursuant to Federal Rule of Bankruptcy Procedure 8009* [Adversary D.I. 315].

[27]   *See e.g. EFIH Debtors' Motion for Summary Judgment* [Adversary D.I. 41]; *EFIH Debtors' Memorandum in Support of Their Motion for Partial Summary Judgment* [Adversary D.I. 42].

vi.      researching, drafting, and revising the EFIH Debtors' materials in preparation for the hearing regarding the EFIH Unsecured noteholders motion to dismiss on ripeness grounds;

vii.     researching, drafting, and revising submissions for the EFIH Unsecured makewhole litigation;[28] and

viii.    preparing for and defending depositions in the EFIH Unsecured makewhole litigation.

**(ll)      [EFIH] Hearings (Matter No. 70)**

Total Fees:    $3,087.50
Total Hours:   3.10

70.     This Matter Category includes time spent by Kirkland attorneys preparing for and attending the mediation conference associated with the EFIH First Lien Makewhole litigation.

**(mm)   [EFH] Claims Administration & Objections (Matter No. 85)**

Total Fees:    $23,146.00
Total Hours:   47.80

71.     This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period related to the administration and resolution of claims filed against EFH Corp.   Specifically, Kirkland attorneys and paraprofessionals spent time analyzing and researching issues related to claims against EFH Corp.

**(nn)    [EFH] Contested Matters and Adversary Proceedings (Matter No. 86)**

Total Fees:    $19,637.00
Total Hours:   26.90

72.     This Matter Category includes the limited time spent by Kirkland attorneys during the Fee Period reviewing and analyzing potential claims against EFH Corp., corresponding with

---

[28]   *See EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by Indenture Trustee for the EFIH Unsecured Notes*, [D.I. 4964]; *EFIH Debtors' Reply in Support of Partial Objection to Proof of Claim No. 6347 Filed by Indenture Trustee for the EFIH Unsecured Notes* [D.I. 5962]; *McGaan Letter to Judge Sontchi re EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by Indenture Trustee for the EFIH Unsecured Notes* [D.I. 5238]

the Company regarding the same, and reviewing and revising board presentations regarding the same.

**(oo)    [EFH] EFH Properties (Matter No. 89)**

Total Fees:    $32,791.50
Total Hours:    43.90

73.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period providing services, on behalf of the Debtors, related to certain leases, as well as researching, drafting, and revising presentations regarding EFH Properties.

**(pp)    [TCEH] Executory Contracts and Unexpired Leases (Matter No. 108)**

Total Fees:    $958,985.00
Total Hours:    1,462.30

74.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period examining issues related to the TCEH Debtors' executory contracts and unexpired leases.  Specifically, Kirkland attorneys and paraprofessionals spent time:

    i.    researching and analyzing the TCEH Debtors' obligations under various executory contracts and leases;

    ii.    drafting, reviewing, and revising motions, discovery responses and requests, and related documents with respect to rejecting, assuming, or assigning such contracts and leases; [29]

    iii.    preparing for and participating in meetings and client interviews regarding the Alcoa litigation;

---

[29] *See Stipulation Regarding Participation of Alcoa Inc. in Plan Confirmation Discovery* [D.I. 5243]; *Motion of Energy Future Holdings Corp.*, et al., *Pursuant to Sections 105, 505, and 506 of the Bankruptcy Code for Entry of an Order Determining Contested* Ad Valorem *Tax Matters* [D.I. 5620]; *Motion of Energy Future Holdings Corp.*, et al., *for Entry of an Order Approving the Assumption of All Executory Contracts by and among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* [D.I. 5789]; *Declaration of Alexander G. Davis in Support of the Motion of Energy Future Holdings Corp.*, et al., *for Entry of an Order Approving the Assumption of All Executory Contracts by and among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* [D.I. 5792].

iv.      reviewing and evaluating production documents regarding privilege and responsiveness and drafting and revising discovery responses and objections; and

v.      drafting, reviewing, and revising contract assumption stipulations and amendments.

**(qq)**    **[ALL] Enforcement of TTI Rights (Matter No. 113)**

Total Fees:    $58,232.50
Total Hours:   68.80

75.    This Matter Category includes time spent by Kirkland attorneys during the Fee Period reviewing and analyzing potential litigation required under the Merger Agreement as part of the Merger Transaction.  Specifically, Kirkland attorneys spent time:

i.      reviewing EFH and TTI governing documents (e.g., Investor Rights Agreement);

ii.     engaging in discussions with various parties to the Plan Support Agreement and Merger and Purchase Agreement regarding discussions with TTI related to EFH's "drag-along rights" associated with the sale of Oncor;

iii.    drafting pleadings related to the potential enforcement of EFH's "drag along rights"; and

iv.    evaluating regulatory considerations related to, among other things, potential EFH enforcement actions.

**(rr)**    **[ALL] Drag Along Rights (Matter No. 114)**

Total Fees:    $29,645.50
Total Hours:   30.60

76.    This Matter Category includes time spent by Kirkland attorneys and paraprofessionals during the Fee Period analyzing drag along rights related to the proposed sale of the interests in EFH and EFIH, including drafting and revising a sale notice for the proposed sale.

**(ss)    [TCEH] Exit Financing (Matter No. 115)**

Total Fees:    $21,491.50
Total Hours:   16.60

77.     This Matter Category includes time spent by Kirkland attorneys during the Fee

Period examining issues related to the TCEH Debtors' exit financing.  Specifically, Kirkland

attorneys and paraprofessionals spent time:

    i.    researching and reviewing various exit financing issues, including the exit financing bid process and exit financing commitments and obligations; and

    ii.    drafting, reviewing, and revising a term sheet for a potential exit financing facility.

**Actual and Necessary Expenses Incurred by Kirkland**

78.     As set forth in **Exhibit K** attached hereto, and as summarized in **Exhibit F**

attached hereto, Kirkland has incurred a total of $1,829,505.70 in expenses on behalf of the

Debtors during the Fee Period.  These charges are intended to reimburse Kirkland's direct

operating costs, which are not incorporated into the Kirkland hourly billing rates.  Kirkland

charges external copying and computer research at the provider's cost without markup.  Only

clients who actually use services of the types set forth in **Exhibit K** of this Fee Application are

separately charged for such services.  The effect of including such expenses as part of the hourly

billing rates would be to impose that cost upon clients who do not require extensive

photocopying and other facilities and services.

**Reasonable and Necessary Services Provided by Kirkland**

**A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors.**

79.     The foregoing professional services provided by Kirkland on behalf of the

Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration

of these chapter 11 cases and related matters.

80.    Many of the services performed by partners and associates of Kirkland were provided by Kirkland's Restructuring Group.  Kirkland has a prominent practice in this area and enjoys a national and international reputation for its expertise in financial reorganizations and restructurings of troubled companies, with approximately 100 attorneys focusing on this area of the law.  The attorneys at Kirkland have represented either the debtor or the creditors' committee or have acted as special counsel in many large chapter 11 cases.

81.    In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from Kirkland's Litigation, Corporate, and Tax Groups were heavily involved with Kirkland's representation of the Debtors during the Fee Period.  These practice groups also enjoy a national and international reputation for their expertise.  Overall, Kirkland brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of the Debtors and all stakeholders.

**B.    Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

82.    The time constraints imposed by the circumstances of these chapter 11 cases required Kirkland attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the Debtors.  These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties-in-interest on a timely basis, satisfy the demands of the Debtors' businesses, and ensure the orderly administration of their estates.  Consistent with firm policy and the Fee Committee Guidelines, and as further disclosed in the Retention Application, Kirkland attorneys and other Kirkland employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs.  Kirkland's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and

all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

83.    In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties-in-interest in relation to Kirkland's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in Kirkland's overhead for the purpose of setting billing rates, and Kirkland has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

84.    Among other things, Kirkland makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.  Specifically, Kirkland regularly reviews its bills to ensure that the Debtors are billed for only services that were actual and necessary, and also, where appropriate, prorates expenses across the Debtors' estates.  In accordance with the Retention Order, Kirkland does not seek reimbursement of expenses for office supplies pursuant to this Fee Application.  In addition, Kirkland has waived certain fees and reduced certain expenses to comply with the Fee Committee Guidelines.  Kirkland will not seek reimbursement of expenses related to, among other things, in-office and out-of-office meals in excess of that allowed under the Fee Committee Guidelines and local travel expenses for those Kirkland employees who work on weekends or late in the evenings that do not meet the Fee Committee Guidelines.   In the Fee Period, Kirkland voluntarily reduced its fees by $571,688.50 and expenses by $144,944.41.   Consequently,

Kirkland does not seek payment of such fees or reimbursement of such expenses in this Fee Application.

### Kirkland's Requested Compensation and Reimbursement Should be Allowed

85.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.   Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."   11 U.S.C. § 330(a)(1).   Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a)     the time spent on such services;
>
> (b)     the rates charged for such services;
>
> (c)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

86.     Kirkland respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time rendered, necessary for and beneficial to the Debtors and their estates and were rendered to protect and preserve the Debtors' estates.   Kirkland further believes that it performed the services for the Debtors economically, effectively, and efficiently,

42

and that the results obtained benefited not only the Debtors, but also the Debtors' estates and the Debtors' stakeholders. Kirkland further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties-in-interest.

87.    During the Fee Period, Kirkland's hourly billing rates for attorneys ranged from $480.00 to $1,375.00. The hourly rates and corresponding rate structure utilized by Kirkland in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by Kirkland for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. Kirkland strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

88.    Moreover, Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

89.    In sum, Kirkland respectfully submits that the professional services provided by Kirkland on behalf of the Debtors and their estates during these chapter 11 cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by Kirkland, the nature and extent of Kirkland's services provided, the value of Kirkland's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in

section 330 of the Bankruptcy Code.  Accordingly, Kirkland respectfully submits that approval of the compensation sought herein is warranted and should be approved.

### Reservation of Rights and Notice

90.    It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  Kirkland reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017;

(ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) the Fee Committee; and (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002 (the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

91.    Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on Kirkland and the

Notice Parties so that it is **actually received** on or before November 6, 2015, at 4:00 p.m. (Prevailing Eastern Time).

## No Prior Request

92.     No prior application for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, Kirkland respectfully requests that the Court enter an order (a) awarding Kirkland interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $25,374,478.00, and reimbursement of actual, reasonable, and necessary expenses incurred in the Fee Period in the amount of $1,829,505.70; (b) authorizing and directing the Debtors to remit payment to Kirkland for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Wilmington, Delaware
Dated:  October 15, 2015

*/s/ Edward O. Sassower*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            edward.sassower@kirkland.com
                  stephen.hessler@kirkland.com
                  brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            james.sprayregen@kirkland.com
                  marc.kieselstein@kirkland.com
                  chad.husnick@kirkland.com
                  steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*