Page 1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                    :

                               :    Chapter 11

6    ENERGY FUTURE HOLDINGS    :

     CORP., ET AL.,            :    Case No. 14-10979

7                              :

             Debtors.          :    (Jointly Administration

8    _____:    Requested)

9

10

11                              United States Bankruptcy Court

12                              824 North Market Street

13                              Wilmington, Delaware

14                              October 15, 2015

15                              10:36 AM - 2:54 PM

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   LESLIE MURIN

Page 2

1   HEARING re Debtors' First Omnibus (Non-Substantive)

2   Objection to (Amended and Superseded, Exact Duplicate, and

3   Insufficient Documentation) Claims Pursuant to Section

4   502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

5   and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 2808; filed

6   November 18, 2014]

7

8   HEARING re Debtors' Third Omnibus (Non-Substantive)

9   Objection to (No Supporting Documentation) Customer Claims

10  Pursuant to Section 502(b) of the Bankruptcy Code,

11  Bankruptcy Rules 3001,3003, and 3007, and Local Bankruptcy

12  Rule 3007- 1 [D.I. 2992; filed December 12, 2014]

13

14  HEARING re Debtors' Fourth Omnibus (Substantive) Objection

15  to Certain Substantive Duplicate and No Liability Claims

16  Pursuant to Section 502(b) of the Bankruptcy Code,

17  Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy

18  Rule 3007-1 [D.I. 2994; filed December 12, 2014]

19

20  HEARING re Debtors' Sixth Omnibus (Non-Substantive)

21  Objection to (Insufficient Documentation) Claims Pursuant to

22  Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

23  3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

24  3212; filed January 9, 2015]

25

1   HEARING re Debtors' Seventh Omnibus (Substantive) Objection

2   to Certain No Liability Claims Pursuant to Section 502(b) of

3   the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,

4   and Local Bankruptcy Rule 3007-1 [D.I. 3218; filed January

5   9, 2015]

6

7   HEARING re Debtors' Eighth Omnibus (Non-Substantive)

8   Objection to (Insufficient Documentation) Claims Pursuant to

9   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

10   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

11   3381; filed January 27, 2015]

12

13   HEARING re Debtors' Tenth Omnibus (Substantive) Objection to

14   (Certain No Liability) Claims Pursuant to Section 502(b) of

15   the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,

16   and Local Bankruptcy Rule 3007-1 [D.I. 3473; filed February

17   6, 2015]

18

19   HEARING re Motion of the Official Committee of Unsecured

20   Creditors for Entry of an Order Granting Exclusive Standing

21   and Authority to Commence, Prosecute, and Settle Certain

22   Claims for Declaratory Judgment, Avoidance and Recovery of

23   Liens, Security Interests, Obligations, Fees, and Interest

24   Payments, and Disallowance of Claims (Redacted) [D.I. 3593;

25   filed February 19, 2015]

1    HEARING re Motion of the Ad Hoc Group of TCEH Unsecured

2    Noteholders for Entry of an Order Granting Standing and

3    Authority to Commence, Prosecute, and Settle Certain Claims

4    for Declaratory Judgment, Avoidance and Recovery of Liens,

5    Security Interests, Obligations, Fees, and Interest

6    Payments, and Disallowance of Claims (Sealed) [D.I. 3596;

7    filed February 19, 2015]

8

9    HEARING re Motion of the EFH Official Committee for Entry of

10   an Order Granting Derivative Standing and Authority to

11   Prosecute and Settle Claims on Behalf of the Luminant

12   Debtors' Estates [D.I. 3605; filed February 19, 2015]

13

14   HEARING re Debtors' Twelfth Omnibus (Non-Substantive)

15   Objection to (Insufficient Documentation) Claims Pursuant to

16   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

17   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

18   3896; filed March 13, 2015]

19

20   HEARING re Debtors' Thirteenth Omnibus (Non-Substantive)

21   Objection to (Insufficient Documentation) Claims Pursuant to

22   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

23   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

24   4003; filed March 27, 2015]

25

Page 5

1    HEARING re Debtors' Fourteenth Omnibus (Substantive)

2    Objection to (Certain Substantive Duplicate, No Liability,

3    and No Claim Asserted) Claims Pursuant to Section 502(b) of

4    the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,

5    and Local Bankruptcy Rule 3007-1 [D.I. 4050; filed April 2,

6    2015]

7

8    HEARING re Debtors' Fifteenth Omnibus (Non-Substantive)

9    Objection to (Insufficient Documentation) Claims Pursuant to

10   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

11   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

12   4052; filed April 2, 2015]

13

14   HEARING re Motion of the EFH Official Committee for Entry of

15   an Order Directing Disclosure of Oncor Bid Information to

16   the EFH Official Committee [D.I. 4260; filed April 23, 2015]

17

18   HEARING re Motion for Order Authorizing Payment and

19   Reimbursement of Certain Fees and Expenses of UMB Bank,

20   N.A., as the EFIH Unsecured Indenture Trustee [D.I. 4433;

21   filed May 8, 2015]

22

23   HEARING re Debtors' Sixteenth Omnibus (Non-Substantive)

24   Objection to (Insufficient Documentation, Amended, and Wrong

25   Debtor) Claims Pursuant to Section 502(b) of the Bankruptcy

1   Code, Bankruptcy Rules 3001, 3003, and 3007, and Local

2   Bankruptcy Rule 3007-1 [D.I. 4782; filed June 16, 2015]

3

4   HEARING re Debtors' Seventeenth Omnibus (Substantive)

5   Objection to (Substantive Duplicate, No Liability, and No

6   Claim Asserted) Claims Pursuant to Section 502(b) of the

7   Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and

8   Local Bankruptcy Rule 3007-1 [D.I. 4784; filed June 16,

9   2015]

10

11   HEARING re Debtors' Eighteenth Omnibus (Substantive)

12   Objection to Certain Improperly Asserted Claims Pursuant to

13   Section 5020) of the Bankruptcy Code, Bankruptcy Rules 3001,

14   3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 4786;

15   filed June 16, 2015]

16

17   HEARING re EFIH Debtors' Partial Objection to Proof of Claim

18   No. 6347 Filed by the Indenture Trustee for the EFIH

19   Unsecured Notes [D.I. 4964; filed July 9, 2015] (the

20   "Objection")

21

22   HEARING re Debtors' Nineteenth Omnibus (Non-Substantive)

23   Objection to (Insufficient Documentation, Amended, and Wrong

24   Debtor) Claims Pursuant to Section 502(b) of the Bankruptcy

25   Code, Bankruptcy Rules 3001, 3003, and 3007, and Local

1    Bankruptcy Rule 3007-1 [D.I. 4970; filed July 10, 2015]

2

3    HEARING re Debtors' Twentieth Omnibus (Substantive)

4    Objection to (Substantive Duplicate and No Liability) Claims

5    Pursuant to Section 502(b) of the Bankruptcy Code,

6    Bankruptcy Rules 3001,3003, and 3007, and Local Bankruptcy

7    Rule 3007-1 [D.I. 4972; filed July 10, 2015]

8

9    HEARING re Debtors' Twenty-First Omnibus (Substantive)

10    Objection to (Certain Improperly Asserted) Claims Pursuant

11    to Section 502(b) of the Bankruptcy Code, Bankruptcy

12    Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1

13    [D.I. 4974; filed July 10, 2015]

14

15    HEARING re Twenty-Second Omnibus (Non-Substantive) Objection

16    to Claims (Wrong Debtor) Pursuant to Section 502(b) of the

17    Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and

18    Local Bankruptcy Rule 3007-1 [D.I. 4976; filed July 10,

19    2015]

20

21    HEARING re Twenty-Third Omnibus (Substantive) Objection to

22    (Certain Improperly Asserted) Claims Pursuant to Section

23    502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

24    and 3007 and Local Bankruptcy Rule 3007-1 [D.I. 4978; filed

25    July 10, 2015]

1    HEARING re Motion of Energy Future Holdings Corp., et al.,

2    to Approve a Settlement of Litigation Claims and Authorize

3    the Debtors to Enter into and Perform Under the Settlement

4    Agreement [D.I. 5249; filed August 10, 2015]

5

6    HEARING re Debtors' Twenty-Fifth Omnibus (Substantive)

7    Objection to (Substantive Duplicate and No Liability) Claims

8    Pursuant to Section 502(b) of the Bankruptcy Code,

9    Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy

10   Rule 3007- 1 [D.I. 5366; filed August 17, 2015]

11

12   HEARING re Debtors' Twenty-Sixth Omnibus (Substantive)

13   Objection to Certain Improperly Asserted Claims Pursuant to

14   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

15   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

16   5369; filed August 17, 2015]

17

18   HEARING re Twenty-Seventh Omnibus (Non-Substantive)

19   Objection to Claims (Wrong Debtor) Pursuant to Section

20   502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

21   and 3007 and Local Bankruptcy Rule 3007-1 [D.I. 5371; filed

22   August 17, 2015]

23

24   HEARING re Twenty-Eighth Omnibus (Substantive) Objection to

25   (Certain Improperly Asserted) Claims Pursuant to Section

1   502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

2   and 3007 and Local Bankruptcy Rule 3007-1 [D.I. 5373; filed

3   August 17, 2015]

4

5   HEARING re Application for an Order Approving the Employment

6   of Gibbs & Bruns LLP as Special Conflicts Trial Counsel to

7   the Official Committee of Unsecured Creditors of Energy

8   Future Holdings Corp., Energy Future Intermediate Holding

9   Company, LLC, EFIH Finance, Inc., and EECI, Inc. Under

10  Bankruptcy Code Sections 328(a) and 1103(a), Bankruptcy Rule

11  2014(a), and Local Rule 2014-1, Effective Nunc Pro Tunc to

12  September 8, 2015 [D.I. 6140; filed September 22, 2015]

13

14  HEARING re Motion of Energy Future Holdings Corp., et al.,

15  for Entry of an Order Authorizing Rejection of a Previously

16  Assumed Nonresidential Real Property Lease Between

17  Luminant Generation Company LLC and the City of Dallas,

18  Texas, Effective Nunc Pro Tunc to September 22, 2015 [D.I.

19  6141; filed September 22, 2015]

20

21  HEARING re Motion Not to Reinstate Appeal filed by the

22  Tremble Parties [D.I. 4967; filed July 10, 2015]

23

24  HEARING re Motion of Energy Future Holdings Corp., et al.,

25  for Entry of an Order Confirming that No Automatic Stay is

1    in Effect or, in the Alternative, Modifying the Automatic

2    Stay to the Extent Necessary to Permit Luminant Mining

3    Company LLC and Energy Future Holdings Corp. to Proceed with

4    Certain Litigation [D.I. 5067; filed July 21, 2015]

5

6    HEARING re Motion of Energy Future Holdings Corp., et al.,

7    Pursuant to Sections 105, 505, and 506 of the Bankruptcy

8    Code for Entry of an Order Determining Contested Ad Valorem

9    Tax Matters [D.I. 5620; filed August 21, 2015]

10

11   Motion of Energy Future Holdings Corp., et al., for Entry of

12   an Order Scheduling Certain Hearing Dates and Deadlines in

13   Connection with the Motion of Energy Future Holdings Corp.,

14   et al., Pursuant to Sections 105, 505, and 506 of the

15   Bankruptcy Code for Entry of an Order Determining Contested

16   Ad Valorem Tax Matters [D.I. 6152; filed September 23, 2015]

17

18   Somervell County Central Appraisal District's Motion for

19   Abstention with Regard to Debtors' Motion Pursuant to

20   Sections 105, 505, and 506 of the Bankruptcy Code for Entry

21   of an Order Determining the Amount of Contested Ad Valorem

22   Tax Matters [D.N. 5620] [D.I. 6154; filed September 23,

23   2015]

24

25   Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   GREER, HERZ & ADAMS, L.L.P.

4        Attorney for Somervell CAD

5

6   BY:  ANDREW MYTELKA

7        JAMES M. ROQUEMORE

8

9   OFFIT KURMAN

10        Attorney for Somervell CAD

11

12   BY:  CURTIS A. HEHN

13

14   DRINKER BIDDLE

15        Attorney for Citibank, N.A., DIP Agent

16

17   BY:  HOWARD A. COHEN

18

19   SHEARMAN & STERLING LLP

20        Attorney for Deutsche Bank New York

21

22   BY:  NED S. SCHODEK

23

24

25

1    POTTER ANDERSON & CORROON LLP

2         Attorney for Deutsche Bank New York

3

4    BY:  R. STEPHEN MCNEILL

5

6    SULLIVAN & CROMWELL

7         Attorney for the EFH Committee

8

9    BY:  BRIAN D. GLUECKSTEIN

10

11   HOGAN MCDANIEL

12        Attorney for Fenick & Fahy

13

14   BY:  DANIEL K. HOGAN

15

16   OLSON & OLSON LLP

17        Attorney for Robertson CAD, Titus CAD

18

19   BY:  G. TODD STEWART

20

21   MCCREARY, VESELKA, BRAGG & ALLEN, P.C.

22        Attorney for Firestone Capital

23

24   BY:  D. KIRK SWINNEY

25

1    HARGROVE & EVANS, LLP

2         Attorney for Rusk CAD

3

4    BY:  JAMES R. EVANS

5

6    FERRY JOSEPH PA

7         Attorney for Robertson CAD, Rusk CAD, Titus CAD,

8    Freestone CAD

9

10   BY:  THEODORE J. TACCONELLI

11

12   JACKSON WALKER LLP

13        Attorney for Milam Appraisal District

14

15   BY:  MATTHEW CAVENAUGH

16

17   FISHER, BOYD, JOHNSON & HUGUENARD, LLP

18        Attorney for Milam Appraisal District

19

20   BY:  BERNARD JOHNSON

21

22   GEBHARDT & SMITH LLP

23        Attorney for Milam Appraisal District

24

25   BY:  LISA B. TANCREDI

1   KIRKLAND & ELLIS LLP

2        Attorney for the Debtors

3

4   BY:  MARC KIESELSTEIN

5        ANDY R. MCGANN

6        MARK E. MCKANE

7        CHAD J. HUSNICK

8        STEVE N. SERAJEDDINI

9

10  PACHULSKI STANG ZIEL & JONES

11       Attorney for Second Lien Indenture Trustee

12

13  BY:  COLIN R. ROBINSON

14

15  NIXON PEABODY LLP

16       Attorney for AST as EFH Indenture Trustee

17

18  BY:  RICHARD C. PEDONE

19

20  BLANK ROME

21       Wilmington Trust as Successor of First Lien

22       Administrative Agent and Collateral Agent

23

24  BY:  MICHAEL D. DEBAECKE

25

1    SEWARD KISSEL

2         Wilmington Trust as Successor of First Lien

3         Administrative Agent and Collateral Agent

4

5    BY:  MARK D. KOTWICK

6

7    MORRIS JAMES LLP

8         Attorney for Law Debenture of New York, Indenture

9         Trustee

10

11   BY:  STEPHEN MILLER

12

13   PATTERSON BELKNAP

14        Attorney for Law Debenture of New York, Indenture

15        Trustee

16

17   BY:  DANIEL LOWENTHAL

18

19   FOX ROTHSCHILD

20        Attorney for TCEH Ad-hoc Unsecured Noteholders

21

22   BY:  JEFFREY M. SCHLERF

23

24

25

1    WHITE & CASE LLP

2              Attorney for TCEH Ad-hoc Unsecured Noteholders

3

4    BY:  J. CHRISTOPHER SHORE

5

6    MORRISON & FOERSTER

7         Attorney TCEH Committee

8

9    BY:  TODD GOREN

10        ALEX LAWRENCE

11

12   UNITED STATES DEPARTMENT OF JUSTICE

13        Attorney for the U.S. Trustee

14

15   BY:  RICHARD L. SCHEPACARTER

16        ANDREA B. SCHWARTZ

17

18   PAUL, WEISS, RIFKIND, WARTON & GARRISON

19        Attorney for Ad-Hoc Committee of TCEH First Lein

20        Creditors

21

22   BY:  ALAN W. KORNBERG

23        JACOB A. ADLERSTEIN

24        ADAM J. BERNSTEIN

25

1    YOUNG CONAWAY STARGATT & TAYLOR, LLP

2         Attorney for Ad-Hoc Committee of TCEH First Lein

3         Creditors

4

5    BY:  PAULINE K. MORGAN

6

7    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

8         Attorney for Equity Sponsors

9

10   BY:  DEREK C. ABBOTT

11

12   WACHTELL LIPTON ROSEN & KATZ

13        Attorney for Equity Sponsors

14

15   BY:  EMIL A. KLEINHAUS

16

17   REED SMITH

18        Attorney for the Bank of New York PCRB Trustee EFCH

19        2037 Noteholder Trustee

20

21   BY:  SARAH K. KAM

22

23

24

25

1   VENABLE

2        Attorney for PIMCO

3

4   BY:  DAN O'BRIEN

5

6   RICHARDS, LAYTON & FINGER

7        Attorney for the Debtors

8

9   BY:  DANIEL J. DEFRANCESCHI

10       JASON M. MADRON

11

12  KRAMER LEVIN

13       Attorney for the Second Lien Indenture Trustee

14

15  BY:  JOSHUA BORDY

16       RACHAEL RINGER

17

18  COLE SCHOTZ, P.C.

19       Attorney for DTCO

20

21  BY:  NORMAN L. PERNICK

22

23

24

25

1    BIELLI & KLAUDER

2          Attorney for EFH Corp. Disinterested Partners

3

4    BY:  DAVID M. KLAUDER

5

6    PROSKAUER ROSE LLP

7          Attorney for EFH Corp. Disinterested Partners

8

9    BY:  MARK THOMAS

10

11   KLEHR HARRISON HARVEY BRANZBURG LLP

12         Attorney for UMB Bank, N.A.

13

14   BY:  (Indiscernible)

15

16   AKIN GUMP STRAUSS HAUER & FELD LLP

17         Attorney for UMB Bank, N.A.

18

19   BY:  ROBERT J. BOLLER

20

21   MONTGOMERY MCCRACKEN WALKER & RHOADS, LLP

22         Attorney for Official EFH Committee

23

24   BY:  MARK B. SHEPPARD

25         NATALIE D. RAMSEY

1   MUNGER TOLLS & OLSON LLP

2        Attorney for TCFH

3

4   BY:  THOMAS B. WALPER

5

6   ASHBY & GEDDES, P.A.

7        Attorney for Ad Hoc Second Lien Notes SWFS

8

9   BY:  WILLIAM P. BOWDEN

10

11  STEVENS & LEE

12       Attorney for EFIH Special Conflicts

13

14  BY:  JOSEPH H. HUSTON, JR.

15

16  ALSO PRESENT TELEPHONICALLY:

17

18  SCOTT L. ALBERINO

19  DESIREE M. AMADOR

20  PHIL ANKER

21  ASHLEY F. BARTRAM

22  TREVOR BROAD

23  EMILY A BUSSIGEL

24  CHRISTOPHER L. CARTER

25  KEVIN COCO

1    MARK A. CODY

2    KENT COLLIER

3    SHARON DONALDSON

4    STACEY DORE

5    DAVID M. DUNN

6    BENJAMIN D. FEDER

7    PATRICK FITZGERALD

8    MARK FLANNAGAN

9    MEGGIE GILSTRAP

10   ISLEY M. GOSTIN

11   ANNA E. GRACE

12   XIAOYU GU

13   BRIAN GUINEY

14   MARK W. HANCOCK

15   PAUL HEATH

16   MARK F. HEBBELN

17   PATRICK HOLOHAN

18   NATASHA HWANGPO

19   GARY L. KAPLAN

20   HAROLD KAPLAN

21   MATTHEW W. KINSKEY

22   CHARLES KOSTER

23   STUART KOVENSKY

24   MICHELLE F. KYROUZ

25   ALEXANDER LEES

1    CATHERINE LOTEMPIO

2    BENJAMIN LOVELAND

3    ROBERT K. MALONE

4    JONATHAN D. MARSHALL

5    BRIAN P. MORGAN

6    TINA MOSS

7    JONATHAN NEWMAN

8    MORGAN NIGHAN

9    JEFFREY L. JONAS

10   MEREDITH PFISTER

11   ABID QUERESHI

12   LARY A. RAPPAPORT

13   ELIZABETH RASSKAZOVA

14   MARC B. ROITMAN

15   NED B. SCHODEK

16   JENNIFER SHARRET

17   J. CHRISTOPHER SHORE

18   ANDREW M. THAU

19   AMER TIWANA

20   WILMER TREMBLE

21   MATTHEW J. TROY

22   CARL TULLSON

23   MICHAEL TURKEL

24   MATTHEW UNDERWOOD

25   MICHAEL J. WALSH

1    JULIA M. WINTERS

2    APARNA YENAMANDRA

3    DANIEL ZAZOVE

4    LOUIS A. CURCIO

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2           CLERK:  All rise.

3           THE COURT:  Please be seated.  Good morning.

4           MR. SERAJEDDINI:  Good morning, Your Honor.

5  Steven Serajeddini of Kirkland & Ellis on behalf of the

6  debtors.  We have three items on the agenda for today: the

7  debtors' motion for a finding that the automatic stay does

8  not apply to certain State Court litigation, filed by the

9  debtors; the debtors' motion to determine ad -- certain ad

10 valorem property taxes; and the pretrial conference for the

11 confirmation hearing.  With Your Honor's permission, we will

12 take the items up in the order set forth on the agenda.

13 Great.

14           So, the first item on the agenda is the debtors'

15 motion that the automatic stay does not apply to certain

16 State Court litigation filed by the debtors against the

17 Tremble parties, who are the defendants.  The Tremble

18 parties separately filed a motion on July 10th related to

19 the same subject, and the debtors filed a response to that

20 motion on September 10th, 2015.  The debtors' original

21 motion was supported by a declaration filed by Gary Moore.

22           I understand that at least one of the Tremble

23 parties is on the phone today, Wilmer Tremble.  So, he will

24 be available to participate and comment here for the Court.

25           So, by way of background, back in November 2013,

1    debtor Luminant filed suit in Texas State Court seeking to

2    partition property in Texas in which it had an undivided

3    interest.  Debtors named the Tremble parties, among others,

4    as defendants in that suit.  In October 2014, after the

5    debtors filed for bankruptcy, the Texas State Court granted

6    summary judgment in favor of the debtors regarding the

7    rights to the property.  And on December 4th, 2014, Luminant

8    filed a motion to effect a partition by sale, which the

9    Texas State Court granted on December 16th, 2014.

10          The Tremble parties appealed that second judgment.

11   On December 12th, the Tremble parties filed their own

12   separate suit in Texas State Court, naming the debtors as

13   defendants, and the debtors filed a notice of pendency of

14   bankruptcy in that case.  And that case was stayed pursuant

15   to that notice.

16          That separate litigation is not the subject of

17   this motion.  I only mention it because, subsequent to that,

18   the Tremble parties filed a similar notice of bankruptcy in

19   the proceedings that the debtors had initiated.

20          So, after that filing, and some back-and-forth

21   with the Court, the Texas Appellate Court effectively stayed

22   its -- that litigation pending a determination by Your Honor

23   that the litigation is not stayed, or otherwise that any

24   such stay has been lifted.  And that's -- that was the

25   purpose behind the motion.

1          Following that ruling, the Trembles themselves

2     filed a motion in this Court, as I mentioned earlier, and

3     the debtors believe, as we laid out in our objection, that

4     that doesn't validly state a prayer for relief, and

5     regardless it should just be interpreted as an objection,

6     preemptive objection, to the debtors' motion.

7          So, since the filing of the motion, the debtors

8     have had a great deal of back-and-forth with the Trembles in

9     an effort to resolve this without having to bring it to the

10    Court.  Ultimately, despite all that back-and-forth and

11    countless phone calls, the parties were unable to reach a

12    resolution.

13         And so, all of this is laid out more fully in the

14    Moore declaration.  And Mr. Moore is in the courtroom today

15    and ready to testify.  So, unless Your Honor has any

16    questions, I would ask that you admit the Moore declaration

17    into evidence.

18         THE COURT:  All right.  It's admitted.

19         MR. SERAJEDDINI:  Thank you.  So, turning to the

20    debtors' request, as laid out more fully in our papers, we

21    think the plain language of the Code and the law of this

22    Circuit and others is clear: the automatic stay applies to

23    actions against the debtor, and not to actions commenced by

24    the debtor.  That's, among other cases, Maritime Electric

25    Co., 959 F 2nd 11 94.

1          With respect to the appeals, the Third Circuit has

2     also said that whether a case is subject to the automatic

3     stay is determined at its inception.  And therefore, the

4     identity of the defendant, rather than the identity of the

5     appellant, governs whether an action is against the debtors.

6          So, in this case, the underlying actions, again,

7     were brought by the debtors.  And therefore, the automatic

8     stay does not apply to the pending appeal.

9          Last, even if Your Honor were to find that the

10    automatic stay does apply, the debtors believe that they

11    have shown sufficient cause to lift the stay.  Allowing the

12    appeal to go forward will permit judicial economy by

13    bringing the State Court litigation to a finale.  And the

14    debtors are highly likely, in their view, to prevail on the

15    merits, after winning on summary judgment at the Trial

16    Court.

17         And, as the Moore declaration explains, allowing

18    the litigation to proceed will provide for, in the debtors'

19    view, efficient, expeditious, and final resolution to these

20    causes of action.  And it's therefore in the best interests

21    of the estate.

22         So, with that, I'm happy to answer any questions

23    Your Honor may have at this time.  Otherwise, I'll turn the

24    podium to the Trembles.

25         THE COURT:  What's the status of the litigation

1    again?  So, in December, the notice was filed by the

2    Trembles, a suggestion of bankruptcy.

3               MR. SERAJEDDINI:  Yes.

4               THE COURT:  And nothing's happened since?

5               MR. SERAJEDDINI:  No.  Since then, the Court

6    issued a standard order that it issues when parties file

7    notices of suggestion of bankruptcy that says that the

8    debtors -- or either party may seek to reinstate the appeal.

9               THE COURT:  Right.

10               MR. SERAJEDDINI:  But with either an order of a

11    Court providing that the stay has been lifted or, second,

12    some certified statement by counsel -- or, actually, rather

13    just certified statement providing that the appeal should be

14    reinstated because it does not violate the stay.

15               We submitted the second of those two options.  The

16    Texas Court concluded that, in their view, there was enough

17    uncertainty in the law as to whether the stay actually did

18    apply, and basically directed us to --

19               THE COURT:  Come here.

20               MR. SERAJEDDINI:  Refer to the original order and

21    try again, leaving one other option, which is seeking an

22    order from this Court.

23               THE COURT:  Okay.  Very good.  Thank you.

24               MR. SERAJEDDINI:  Thank you.

25               THE COURT:  Does anyone wish to be heard in

1    support of the debtors' position before I turn it over to

2    any other comments?  Yes, ma'am?  No?  Never mind.  All

3    right.  Does anyone else wish to be heard in connection with

4    this matter?

5            MS. DONALDSON:  Your Honor?

6            THE COURT:  Yes.

7            MS. DONALDSON:  Yes, this is Sharon Donaldson.

8            THE COURT:  I'm sorry, I -- you're breaking up a

9    little bit.  Are you on speakerphone?

10           MS. DONALDSON:  I am.  Hold on just one moment,

11   sir.

12           THE COURT:  Thank you.

13           MS. DONALDSON:  Your Honor, this is Sharon Tremble

14   Donaldson.  Can you hear me now?

15           THE COURT:  Yes, much better.  Thank you.

16           MS. DONALDSON:  You're certainly welcome.  Good

17   morning, sir.

18           THE COURT:  Good morning.

19           MS. DONALDSON:  I am representing the Tremble

20   family in this matter, and the points are:  there was a

21   summary judgment.  Luminant filed a final judgment.  We

22   filed the appeal.  Luminant put us in the bankruptcy.

23   Luminant then filed a motion not to reinstate the appeal.

24   Luminant then was denied because of the bankruptcy by the

25   Appellate Court.  Luminant is trying to send us to the

1    District Court.  We are then to return to the Appellate

2    Court.

3            THE COURT:  What is the harm to you, if any, of

4    proceeding in State Court?

5            MS. DONALDSON:  In the State Court, there was a

6    great deal of bias.  And we had filed some motions that were

7    completely disregarded.  The gentleman prior said we had

8    numerous conversations with the -- with Luminant, and that

9    was not the case.  The conversations were very limited, and

10   because we did move forward with our suit, as a result of

11   several summary judgments that were filed by Luminant.

12           THE COURT:  Okay.  So, if I -- so, all right.  So,

13   you would like me to keep this, I take it, and make the

14   determination on the merits?  Is that what you're asking?

15           MS. DONALDSON:  Yes, Your Honor.

16           THE COURT:  All right.  Thank you.  Did -- I'm

17   sorry.

18           MS. DONALDSON:  You're welcome.

19           THE COURT:  Okay.  Does anyone else wish to be

20   heard?  Okay.  I'm going to grant the motion, overrule any

21   objection thereto.  This is a question of whether the

22   automatic stay applies.  The automatic stay does not apply

23   to actions by the debtor.

24           I agree that the issue is whether the action at

25   its inception was stayed -- or, excuse me, whether the

1    action at its inception was brought by the debtor, which it

2    was.  So, the fact that others have appealed, the appeals

3    are not violated by the automatic stay and the debtor is not

4    seeking to apply the automatic stay to any of those appeals.

5             This will put the case back where it belongs,

6    without any prejudice to any party, which is in State Court.

7    Obviously, any issues as to bias or any other complaints the

8    Tremble parties may have in connection with what the Trial

9    Court did in State Court will be available to be litigated

10   on appeal to the proper state authorities.

11            This Court might have jurisdiction over the

12   matter, but, to the extent that I do, which I don't

13   necessarily believe I do, but I would certainly abstain in

14   this type of issue.  This is clearly a specific state law

15   dispute already pending.  Was it already pending at the time

16   of the bankruptcy?

17            MR. SERJEDDINI:  It was.

18            THE COURT:  It was already pending at the time of

19   the bankruptcy.  So, I am going to overrule your party --

20   your objection, and deny, to the extent necessary, your

21   motion, if it's deemed to be a motion, grant the debtors

22   relief, send this back to State Court where it belongs, with

23   a determination that the stay is not applicable.  Do you

24   have an order?

25            MR. SERAJEDDINI:  I do.  Thank you, Your Honor.

1          THE COURT:  Thank you.  All right, I've signed the

2    order.  Anyone on the phone for this matter is certainly

3    welcome to hang up if they wish, because it's going to be a

4    long day on other issues.

5          MR. SERAJEDDINI:  Thank you, Your Honor.

6          THE COURT:  All right.

7          MR. MCKANE:  Good morning, Your Honor.  For the

8    record, Mark McKane of Kirkland & Ellis on behalf of the

9    debtors.  Your Honor, next on the agenda is a series of

10   motions that are procedural in nature and relate to the

11   debtors' Rule 505 motion that was filed in August.

12   Specifically, there is a motion to abstain, a motion to

13   transfer venue, and a motion for a partial dismissal, as

14   well as the debtors' motion to set a schedule for the 505

15   motion.

16          The debtors have conferred with the Counties and

17   Districts, the Appraisal Districts -- I may refer to them as

18   the Counties periodically; I apologize if I do -- about how

19   best to address this in a procedurally proper manner that's

20   easiest for the Judge.

21          Our recommendation -- and I believe it's

22   consensual -- is that we proceed with the abstention venue

23   motion, and even the dismissal argument, together, let the

24   Appraisal Districts put on their case, the debtors will

25   respond, like they did with their omnibus reply, in an

1    omnibus fashion, and then allow Your Honor to rule.  And

2    then, to the extent the Court keeps the case, then proceed

3    to the scheduling motion.

4              THE COURT:  Very good.

5              MR. MCKANE:  All right.

6              THE COURT:  Thank you.

7              MR. MCKANE:  Your Honor, I understand that the

8    Appraisal Districts would like to introduce some of their

9    Texas counsel.

10             THE COURT:  All right.

11             MR. TACCONELLI:  Good morning, Judge Sontchi.

12   Theodore Tacconelli, local counsel for Freestone Central

13   Appraisal District, Robertson County Appraisal District,

14   Titus County Appraisal District, and Rusk County Appraisal

15   District.

16             Your Honor, with me in Court today is Kirk Swinney

17   from -- he represents Freestone Central Appraisal District.

18   Next to him is Todd Olson -- or Todd Stewart, excuse me,

19   Your Honor.  He represents Robertson County Appraisal

20   District and Titus County Appraisal District.  And seated

21   behind him is Tim Evans, and he represents Rusk County

22   Appraisal District.  Mr. Evans will be addressing the Court

23   today regarding the motion to transfer venue.

24             THE COURT:  Okay.

25             MR. TACCONELLI:  Thank you.

1          THE COURT:  Thank you, Mr. Tacconelli.

2          MR. HEHN:  Good morning, Your Honor.  It's nice to

3    see you.

4          THE COURT:  Mr. Hehn.

5          MR. HEHN:  Curtis Hehn from the Law Office of

6    Curtis A. Hehn, appearing upon behalf of the Somervell

7    Central Appraisal District.  With me in Court, also

8    appearing upon behalf of the Somervell CAD, are Andrew J.

9    Mytelka and James M. Roquemore, both of whom are attorneys

10   with the law firm of Greer, Herz & Adams, LLP, in Galveston,

11   Texas.

12          Your Honor, I would thank the Court for having

13   previously entered orders granting their admission pro hoc

14   vice.  I'm going to be, at least initially, presenting the

15   argument for Somervell CAD's abstention motion.  And if the

16   Court would like us to proceed now, I will proceed.

17          THE COURT:  Well, however you've decided you're

18   going to do it is fine with me.

19          MR. HEHN:  Okay, Your Honor.  Thank you.  So, the

20   Somervell CAD is here with respect to one of the properties

21   that are the subject of the debtors' tax motion.  That

22   property is Comanche Peak.  It's a nuclear power facility

23   owned by debtor Luminant Generation Company, which I'll

24   hereafter refer to as Luminant.

25          So, the Somervell CAD appraised the value of

1   Comanche Peak for 2015 ad valorem property tax purposes at

2   approximately $2.36 billion, Your Honor.  The debtors

3   contest that appraisal.  We're here because the Somervell

4   CAD is the entity designated by the Texas Tax Code as a

5   political subdivision of the State of Texas, having

6   responsibility for appraising property in Somervell County

7   for ad valorem tax purposes and litigating contested ad

8   valorem tax matters relating to Somervell County.  And

9   that's the Texas Code, Section 6.01(b) and (c).

10          Your Honor, we were also named as the defendant in

11  the lawsuit that debtor Luminant filed in Somervell County

12  to have a trial before a Texas State Court judge with

13  respect to the appraisal for ad valorem property tax

14  purposes.  They filed that after their contest of the

15  appraisal by the Somervell CAD was initially rejected.

16          So, that case is actually pending in Texas. It is

17  before the District Court of Somervell County in Texas in

18  the 18th Judicial District, and it's Case Number C10412.

19  And I'll refer to it as the Luminant lawsuit.

20          I would not -- and I'm going to come back to this

21  several times, Your Honor -- that there was a pretrial

22  conference in that matter.  It was attended by the debtors.

23  The Texas Court has scheduled a jury trial to start on

24  January 26th of next year.  So, if the Court grants the

25  motion to abstain, that actual dispute is going to be

1    quickly adjudicated in a Texas Court before a jury, Your

2    Honor.

3            So, the Somervell CAD opposes the relief being

4    sought in the debtors' tax motion with respect to Comanche

5    Peak.  While the substantive hearing on the tax motion has

6    not yet been scheduled, because we knew we were going to

7    oppose it, we filed our abstention motion.  And we're asking

8    the Court to abstain from hearing the tax dispute for ad

9    valorem property taxes with respect to Comanche Peak for

10   several reasons.

11           So, even though our abstention motion is a

12   standalone pleading, Your Honor, since we're referencing the

13   debtors' tax motion, I'm going to make a few points with

14   respect to that.  And then I will go into abstention.

15           Your Honor, in the tax motion, what the debtors

16   essentially want you to do is to consolidate the valuation

17   trials for ad valorem property tax purposes for seven

18   different properties into a single proceeding, and have Your

19   Honor determine the tax value for each of those separate

20   properties.  Six of them are coal power plants.  One of them

21   is the nuclear power plant Comanche Peak.  I would not that

22   that is one of two nuclear power plants in Texas.  And that

23   is it with respect to nuclear power plants in Texas.

24           The debtors assert four key arguments in their tax

25   motion in support of the requested relief.  And all of them

1    essentially revolve around efficiency or speed.  And I'm

2    going to briefly address those.

3              So, the first argument is what I call the "Right

4    Court" argument.  You're the right court, Your Honor,

5    because you do valuation work as part of your job day in and

6    day out, and you have significant experience valuing complex

7    assets.  We think that argument breaks down, Your Honor,

8    because Somervell CAD has a right to a jury trial.  And they

9    asserted that right to a jury trial.  And Bankruptcy Courts

10   don't have the ability to hear jury trials.

11             So, all of the expertise that you have during the

12   course of your career, both as an attorney and as a

13   practitioner, aren't going to be applicable, because it's

14   going to be a jury trial and you're not going to be able to

15   actually hear it.  If it remains in Delaware, it's going to

16   be before an Article Three Judge, you know, who may or may

17   not have that experience, Your Honor.  So, we think that

18   that argument breaks down.

19             The second argument is what I will call the

20   "Valuation Efficiency" argument.  And it goes along these

21   lines:  you're already hearing valuation testimony in

22   connection with plan confirmation. There's some overlap.

23   So, it just makes sense for you to hear it with respect to

24   ad valorem property taxes as well.

25             Your Honor, we think that argument also breaks

1    down for the same reason, which is the Bankruptcy Court

2    doesn't have jurisdiction to adjudicate a jury trial.

3    You're not -- the parties aren't going to be able to get

4    your benefit, to the extent there's benefit, from

5    adjudicating valuation issues in the context of a

6    confirmation hearing.

7             The third argument, Your Honor, is the speed

8    argument.  In their scheduling motion, the debtors had

9    sought to have trial commence towards the end of March of

10   next year.  We think we have that beat in the Texas State

11   Court, at least as far as Comanche Peak and Somervell CAD

12   go, since the judge there has scheduled this for trial on

13   January 26th.  That's about two months quicker than what the

14   debtors were asking.

15            We think it's beneficial for everybody.  We would

16   like to have this dispute adjudicated quickly, too.  It's

17   important for Somervell CAD.  It's a small county in terms

18   of people.  Those taxes will become due and payable next

19   year, you know, in whatever amount they're resolved.  But it

20   needs to be done quickly, because they're essential for

21   things like hospitals, schools, police, fire department.

22   So, there's not going to be any delay or foot-dragging upon

23   our part.  And it's already scheduled for a quick and speedy

24   trial.

25            And finally, Your Honor, the debtors have the

1    "Avoid Multiple Proceedings" argument.  Your Honor, the

2    debtors essentially want you to consolidate the valuation

3    trials on all seven of these major, complicated, apex

4    industrial assets, because it's going to be more efficient

5    from them.  And they think it'll be more efficient from the

6    perspective of the Court's use of time.

7              We think that argument only makes sense at a very

8    high level of abstraction, because there's material

9    differences between coal, which is what six of the plants

10   are, and nuclear, which is what Comanche Peak is, and that,

11   when you look at those actual differences and how they would

12   play out in the context of, you know, one single,

13   consolidated proceeding before Your Honor, those synergies

14   are illusory.  And they just break down.

15             Some of these differences include, among others,

16   fuel prices: coal is high-cost in terms of the amount of

17   power you get for the fuel, and it's subject to greater

18   volatility compared to nuclear, where uranium is cheaper for

19   the amount of energy produced and it's less susceptible to

20   market fluctuation.  That's going to be an important

21   difference.

22             Regulatory risk:  coal has huge regulatory risk

23   with respect to a carbon tax.  That's not at issue in

24   nuclear.  That's going to be part of the valuation mix.

25             Nuclear, on the other hand, is subject to

1    decommissioning funds.  The cost of those anticipated funds

2    will affect the valuation.  You're not going to have that

3    with respect to coal.  That's a completely separate issue.

4    Same with relicensing:  nuclear has to be relicensed on a

5    periodic basis; that's going to be in the mix.  You're not

6    going to have that with respect to coal.

7              So, each of these material differences, and

8    others, are going to be reflected in the models that are

9    going to be used to establish the value of the plants,

10   which, at a minimum, at least for Comanche Peak, is going to

11   have to include some type of discounted cash flow model and

12   a one-year capitalized income approach, Your Honor.

13             And I anticipate that there's going to be material

14   disagreement on the assumptions that underlie those

15   competing models, the competing forecasts for market pricing

16   data, what parties argue should be the right discount rate

17   and why, and the costs of decommissioning, which are only

18   going to be applicable to nuclear.

19             I don't think it would be unreasonable, Your

20   Honor, to anticipate at least one to two weeks' worth of

21   trial time before Your Honor, if you were to keep this and

22   could hear it, just on the Comanche Peak valuation issues

23   alone, because it's, you know, at least a 2 billion, you

24   know, give or take a little bit, plant.  It's a major apex,

25   complex, industrial establishment.  And it's going to take

1    time.

2            Moreover, while the debtors' moving papers

3    emphasize the importance of the drop in the price of

4    electricity to valuation, they don't really consider other

5    factors that have to be examined under Texas law, which

6    include the cost method of valuation and market data

7    comparison methods.

8            We think that the historical costs and replacement

9    costs for a nuclear power plant are going to be quite

10   different than for coal plants, and that there's no good way

11   to compare those.  You're not going to get apples-to-apples.

12   I don't know how you compare scrubbing technology, for

13   example, in a coal plant to the cost of spin fuel power rods

14   and replacing them.  So, it's an apples-to-oranges

15   comparison, not apples-to-apples.

16           So, given these foregoing differences, we submit

17   that there's no fair way for the valuation of Comanche Peak,

18   the nuclear plant, to be included in the valuation process

19   for the six coal plants.  It's just too different.  We don't

20   think that the significant commonality among the plants that

21   the debtors referred to repeatedly in their moving papers

22   are applicable.  That benefit just isn't going to be there

23   with respect to nuclear.

24           And finally, for purposes of the tax motion, Your

25   Honor, I would note that courts, including this Court, in

1    Cable and Wireless, have noted that there's really two

2    fundamental purposes for 505.  And I would note the language

3    from Cable and Wireless.  The Court said that one is to

4    protect the creditors from the dissipation of the estate

5    assets accruing from the failure of the debtor to protest

6    the tax.

7           That is clearly not at issue here.  The debtors

8    have aggressively protested the tax before they filed the

9    complaint in Texas.  They timely filed the complaint.

10   They've been at that hearing.  And they've actually filed a

11   505 motion.  There, I submit, is no risk that you're not

12   going to have an aggressive defense of the debtors' view of

13   the taxes.  So, I think that purpose of 505 is not at issue.

14          The second one is to afford and alternative forum

15   in order for the Bankruptcy Courts to allow prompt

16   administration of the estate, which would otherwise be

17   threatened if the estate had to litigate a tax or assessment

18   in several state jurisdictions or over a prolonged period of

19   time.  That's not at issue here, Your Honor.  We have a

20   January 26, 2016, trial date.  So, neither of those

21   purposes, we think, would favor granting the motion with

22   respect to Comanche Peak.

23          Your Honor, I'm not going to rehash all of that.

24   But I do want to run through the different abstention

25   factors that we laid out in our motion.  And, if I may

1    approach the Court, I would like to hand up -- this is just

2    a demonstrative.  It's a list of the abstention factors,

3    both under the six-factor 505(a) test and under the

4    permissive abstention standards under 28 USC 1334(c)(1).

5              THE COURT:  Yes.

6              MR. HEHN:  May I approach, Your Honor?

7              THE COURT:  Yes.

8              MR. HEHN:  Yes.  And I will hand out copies for

9    everybody else, too.

10             THE COURT:  Yes.  Thank you.

11             MR. HEHN:  The purpose of this, Your Honor, is

12   just for parties to be able to refer to it.  There was a

13   little bit of dispute in the papers with respect to what the

14   correct standard is for abstention on a 505 tax motion.  We

15   don't think that the application of the standard makes a

16   difference.  We think it gets to the same point under 505(a)

17   and cases like ANC before Judge Walrath, where she went

18   through the six factors.

19             And permissive abstention, which has also been

20   done by Delaware Bankruptcy Courts -- and I think the papers

21   cited to LaRoche Industries at 312 BR 249, with the 12-

22   factor test.  And what I'd like to do is just go through the

23   different factors as to why we believe abstention is

24   appropriate for Comanche Peak.

25             So, Your Honor, we respectfully think that a Texas

1    trial is going to be more efficient, in the best interest of

2    the estate and non-debtor parties, and also this Court's

3    docket.  On the 505 test, we believe this would be factors

4    2, 3, 4, and 6, and, on the 1334 test, 1, 4, 8, 9, and 12.

5           We believe that exigency supports abstention and

6    favors a trial in Texas; Texas Court's ready to go; they can

7    also do the jury trial component of that.  We think that's

8    an issue here.  The debtors' scheduling motion didn't

9    address it, but they are seeking to have this Court set

10   forth a schedule that has and end of March target.

11          So, not only is that a little bit slower, but it

12   doesn't deal with the fact that we think, because of the

13   jury trial piece, the debtors are going to have to try to

14   reach out to the District Court and deal with scheduling on

15   a jury trial for valuation purposes before the District

16   Court.  And we think that could cause a significant delay.

17          And that's not just bad for the debtors in the

18   administration of their estates; it's also bad for Somervell

19   because we need to have the taxes paid once they're

20   determined, because they're critical for that small

21   community, Your Honor.

22          Your Honor, we think that a consolidated Delaware

23   hearing will also risk confusion.  We went through the

24   differences, briefly, between nuclear and coal, and why we

25   think that's important.  They also impact how discovery is

1    going to be done.  We don't think that we belong in a

2    consolidated discovery schedule with the six coal plants.

3    We think we're different.  We think that would be unwieldy.

4          We think it would be hard for this Court, with all

5    due respect.  I can't imagine handling seven different

6    valuation proceedings for seven different complicated assets

7    at the same time, where, at least with respect to the

8    nuclear piece, we're going to have different models.  We're

9    going to have different data.  We're going to be getting in

10   the weeds and fighting about the minutiae.  I mean, it could

11   potentially be quite bogged down.

12          And I just don't know how you're supposed to keep

13   track of all of those details, and then also the details for

14   the six other coal plants at the same time.  And, at the end

15   of this consolidated process, you know, render a decision

16   that makes sense and that keeps track of everything and is

17   fair to everybody.

18          Your Honor, we discussed briefly on it, but the

19   learning curve -- we think that that doesn't really exist,

20   because, with the jury trial component, you're not going to

21   be involved.  It's going to be an Article Three judge if it

22   stays here.  We don't think that that helps the debtor.  We

23   don't think there's any reason not to have the Texas State

24   Court judge do it.  And there's been no allegations

25   whatsoever that it would be improper or biased, or that

1    there's any kind of a problem with having the Texas State

2    Court judge do it.

3            Your Honor, we also believe that state law

4    taxation issues favor abstention.  Under 505 test, this

5    would be factor 1.  Under 1334, it would be factor 2.  You

6    know, it's Texas state law that's going to be used in

7    connection with valuation.

8            While the concepts are similar, there's opinions

9    out there in the case law that note that there's a

10   distinction between valuation for 505 purposes, which deals

11   with state law, and the more traditional bankruptcy

12   valuation under 506, which deals with really getting at the

13   value of assets in terms of market for debtors for purposes

14   of confirmation and the other types of issues that valuation

15   is used for.  There is a distinction.

16           Now, the Texas statute talks about market value as

17   well.  But we think that this is where the issue of

18   uniformity of assessment comes up, and is quite important.

19   This is just one of two nuclear power facilities.  Whoever

20   winds up adjudicating the ad valorem property tax dispute is

21   going to have done it with respect to half of the nuclear

22   power market for Texas.  And it's definitely going to have

23   an impact on the other nuclear facility.

24           So, we think that the uniformity of assessment is

25   an important concern.  And that's a concern that many judges

1    have looked at and said, "That favors abstention.  We're

2    going to send it back to the State Court," especially if

3    there is a venue that's ready to go and hear it.

4         Your Honor, I'd just mention again the right to a

5    jury trial.  I won't berate it, but, under 505, it's factors

6    3 and 4; under 1334, we believe it's factor 11.  Just note

7    that there are several opinions within this District that

8    have held that the Bankruptcy Courts just aren't authorized

9    to conduct jury trials.  That was Judge Walrath's conclusion

10   in In Re: DHP Holdings II Corp., 435 BR 220 and 223.  And

11   that's a 2010 opinion.  It was also the holding in LaRoche

12   Industries versus Orica Nitrogen LLC, 312 BR 249 at 255.

13   And that was a 2004.

14        Your Honor, we also have concerns over prejudice.

15   And I don't mean prejudice in the sense of, like, overt

16   prejudice or overt forum shopping.  It's just we think that

17   the process of trying to push everything together in a

18   single, consolidated proceeding -- you know, six coal plants

19   and a nuclear power plant -- just that process itself will

20   be prejudicial to the nuclear power plant because it's

21   different than coal.

22        Under Texas law, the debtors wouldn't be able to

23   glom all of these together.  But they are trying to do it in

24   the Bankruptcy Court.  We understand why, but we think that

25   inevitably, if that's done, the material differences between

1   coal and nuclear power are going to get minimized in the

2   context of a really complicated, long, protracted valuation

3   trial.  And that's going to be prejudicial to us because we

4   think we are different.

5          Your Honor, with respect to cost, we think it's

6   prejudicial to Somervell CAD for litigate it here.  And the

7   reason for it is this:  it's a small county in terms of

8   numbers of people.  It's going to have to fly, with the

9   exception of me, local counsel, all of its professionals,

10  its expert, and all of its fact witnesses, up here.  If it's

11  a trial that takes one to two weeks, they're going to have

12  to stay up here.  They're going to have to lodge and eat up

13  here.  That's an economic burden for them.

14         Now, the debtors have the same economic problem,

15  but it's going to be the same for them regardless of whether

16  they come to Delaware or if they go to Texas, or at least

17  less of a burden, we think, for them, because either way

18  they've got to travel.  I would note that I would think a

19  lot of their fact witnesses and experts are probably coming

20  out of Texas, too.  So, they would most likely save money if

21  they stayed there as well.

22         Your Honor, on a high level of abstraction, I

23  definitely understand the appeal of having this Court act

24  kind of like a Super-Tax Court in Bankruptcy, and quickly

25  resolving all of these issues.  But I think that that

1     process itself causes damage.

2            And this isn't the first time that the issue has

3     come up.  And I would just note that the -- in Metro Media

4     Fiber Networks, up in the Southern District of New York, the

5     Bankruptcy Court was confronted with this issue as well.

6     That case involved cable.  And there were 12 different

7     adversary proceedings for the valuation of 12 different

8     properties in 12 different taxing jurisdictions.  And the

9     debtors wanted to have the Bankruptcy Court hear it, and for

10    all of the same reasons as here -- you know, efficiency, and

11    the right court, and so forth.

12           And what the judge said there was, "The problem

13    with the debtors' streamlined, unified approach to

14    determining the fair market value of all their taxable

15    property in multiple taxing jurisdictions, using a single

16    methodology or combination of methodologies, is that the

17    resulting uniform valuation may produce results which are

18    highly anomalous and discretionary vis-à-vis other similarly

19    situated taxpayers in the various taxing jurisdictions.

20           "Moreover, all the defendants employ their own

21    individualized schemes and methodologies for allocating the

22    burden of taxation amongst all of the taxpayers in their

23    respective jurisdictions.  Even if, as the debtors assert,

24    all the defendant tax jurisdictions purport to utilize a

25    concept of market value, in the assessment process, the

1    methodologies used are bound to differ.

2         "Any uniform valuation of the debtors' taxable

3    property determined by this Court is bound to be at variance

4    with state or local methodologies mandated by local law or

5    practice and with assessment valuation by the defendants of

6    other taxpayer properties within their respective

7    jurisdictions, producing disparate and discriminatory

8    results."

9         So, we think that the process itself has the

10   potential to do damage, and that that is prejudicial.  And

11   when our papers talk about forum shopping, that's what our

12   concern is, Your Honor.  We wouldn't have that in Texas.

13        We understand why the debtors are trying to do it

14   here; we understand, at a high level of abstraction, there's

15   a certain intuitive appeal to that.  But we think it breaks

16   down when you get down into the weeds and start looking at

17   the facts and how it's going to work, and the disparities

18   between nuclear and coal.

19        Your Honor, for all the foregoing reasons, the

20   Somervell CAD respectfully requests that this Court abstain

21   from hearing the valuation dispute for ad valorem property

22   taxes for Comanche Peak.  We don't think that either of the

23   purposes that underlie 505 are implicated here.  The debtors

24   are going to protective -- are going to aggressively protect

25   their rights and the rights of creditors vis-à-vis

1   contesting these taxes.  And we've got a speedy trial that's

2   already set in front of a jury for January 26th.

3           And we think that the debtors' proposal to

4   actually consolidate everything would cause this prejudice,

5   Your Honor, that shouldn't happen.  So, thank you, Your

6   Honor.

7           THE COURT:  You're welcome.

8           MR. EVANS:  May I proceed, Your Honor?

9           THE COURT:  Yes.

10          MR. EVANS:  Your Honor, my name is Jim Evans.  I

11  live in Austin, Texas.  I work in Austin, Texas.  I'm here

12  for the joint motion to transfer venue filed by the

13  Freestone Central Appraisal District, the Rusk County

14  Appraisal District, Robertson County Appraisal District, and

15  Titus County Appraisal District.

16          As a threshold matter, the parties have agreed

17  with the debtors -- and I'll quote an email from debtors'

18  counsel -- that the parties agree not to object to the

19  admissibility or authenticity of the declarations of the

20  Appraisal Districts, and they agree not to call -- if we

21  agree not to call live witnesses today.

22          Also, the debtors agree that they will not object

23  to the authenticity or admissibility of the Appraisal

24  Districts' proposed certified exhibits for the purpose of

25  this venue hearing, so long as the Appraisal Districts agree

1    that the debtors have reserved all rights to argue the

2    accuracy of the appraised or taxable values listed in

3    Exhibits E-M of the Taxing Units', or Appraisal Districts',

4    reply.

5              And, for the purpose of this particular argument,

6    when I refer to Districts, I mean Freestone, Robertson,

7    Rusk, and Titus, and not the other Districts who are before

8    the Court.

9              We would like to discuss some of the factors in

10   the 12-factor test that Bankruptcy Courts use in determining

11   venue transfer motions.  For example, in DHP Holding versus

12   Home Depot, the Court examined 12 factors in deciding to

13   transfer venue from this Court to the Northern District of

14   Georgia.

15             The first two that were discussed in that case,

16   plaintiff's choice of venue and defendant's preferred venue

17   -- well, that's why we're here before the Court.  So, I'll

18   go to the third factor.  And that factor that's often

19   mentioned in the case law on this subject is where the claim

20   arose.

21             The claims arose in six counties in Texas, when

22   six Appraisal Districts, who are political subdivisions of

23   the State of Texas, appraised seven electrical generating

24   plants in those counties.  The claims also arose from

25   notices of appraised value issued by the Appraisal

1    Districts, which they're required to do under the Texas

2    Property Tax Code.  The notices went to debtors' location in

3    Dallas, Texas.

4              The claims also are connected with the Districts

5    in that, in the initial forum for protesting property tax

6    values, the appraisal review board hearing, those appraisal

7    review boards are in the six counties who are before the

8    Court today.

9              And, just to paraphrase the state process, or to

10   summarize it, rather, an owner who's dissatisfied with a

11   proposed appraised value goes to an informal hearing

12   comprised of individuals who are called appraisal review

13   board members, ARB members.  And, in the state law, if a

14   party is not satisfied with the ARB determination, then the

15   next level is State District Court in Texas.

16             But there's another connection to Texas in this

17   claim, and that is the fact that all of the electrical

18   plants are located in Texas.  So, if the ARB had given the

19   debtors what they wanted, then there would be no 505 motion

20   before the Court today.  So, the claims arose in Texas. Each

21   claim against each Appraisal District arose in Texas.

22             The fourth factor that the cases mention has to do

23   with the location of books and records.  And here we're

24   talking about plant operating data.  But what's far more

25   important is the fact we're talking about the plants

1    themselves and the inspection of the plants themselves, all

2    of which, of course, are in the six counties in Texas.

3              Any expert on valuation, whether that person is

4    retained by the debtors or by the Appraisal Districts, will

5    want to inspect the plants.  The experts will be expected to

6    go to the plant, to each plant, to see what equipment is in

7    place, to look at the processes, to inspect the condition of

8    the equipment, to take photographs, to check what is on the

9    ground versus what might be in plans or schematics, and to

10   do all of the other things that an expert might be required

11   to do.

12             So, the experts will most likely be in Texas, in

13   those counties, inspecting those plants, crawling over

14   machinery, et cetera, to make sure that the appraisals are

15   as accurate as they can possibly be.  We assert that that

16   should be the fourth factor in this case before the Court.

17             The fifth factor has to do with the convenience of

18   parties by the relative physical and financial condition of

19   the parties.  The Districts assert that, since they and

20   their counsel are all in Texas, convenience favors transfer

21   to Texas.  And we're asking for transfer, of course, to the

22   Northern District of Texas, Dallas Division.

23             The discrepancy in size between the debtors and

24   the Appraisal Districts should be obvious.  In our reply, we

25   have the 2010 Census populations of each of the Appraisal

1    Districts, the four that are right now before the Court.

2    And we're all small Appraisal Districts.

3            I would like to point out that, in the venue

4    motion that was filed by Wilmington Savings Fund Society on

5    May 22nd of 2014, the debtors said -- and, by the way, this

6    is one of the things that the debtors have stipulated to

7    that they're not going to object; we're asking the Court to

8    take judicial notice of that transcript of that hearing.

9            The debtors said, and this is on page 46 of the

10   transcript, beginning on line 11, that, in that hearing,

11   there were no Texas lawyers.  The debtors said there's no

12   Texas interest here, saying, "This is unjust or

13   inconvenient, and we need to be in Texas."  The debtors also

14   remarked, beginning on line 19 of the same page, that not a

15   single person outside of Boston, New York, or Chicago was

16   present at the deposition of two EHF officers in connection

17   with Wilmington's motion to transfer.

18           Well, here, all of the lawyers today representing

19   each of the Districts, except for Delaware counsel, are from

20   Galveston, Texas; Austin, Texas; and Houston, Texas.  And we

21   represent the six Texas political subdivisions.  And the

22   lawyers from Texas are the ones here saying to the Court:

23   keeping the case in Wilmington is unjust and inconvenient,

24   and we need to be here in Texas.  The distinction, of

25   course, between our motion and Wilmington Savings' motion is

1    we're Texans; we're all from Texas; we ask for transfer to

2    Texas.

3           The sole reason why we are here in this 505 motion

4    is because debtors or their predecessors decided to build

5    electrical generating plants in Texas.  So, the Appraisal

6    District, in each of these Districts, happens to have

7    electrical plants in their jurisdictions.  So, it would be a

8    heck of an inconvenience if the Districts who are all in

9    small counties have to spend travel expense and, way more

10   than that, attorneys' fees to come to Wilmington to argue

11   each motion.

12          The Districts are here involuntarily.  We filed no

13   proof of claim.  And we have not voluntarily invoked the

14   jurisdiction of this Court.  So, unlike the Wilmington

15   Savings fact, where loans -- loan creditors were all on the

16   East Coast, we are all in Texas.

17          Now, this ground has been plowed before, but I

18   will reiterate that the debtors are all in Dallas.  But it

19   makes sense that, if the Appraisal Districts are in Texas,

20   and the debtors are in Texas, and the property that is the

21   subject of the 505 motion is in Texas, then there is no

22   inconvenience to anyone to try these cases in Texas.

23          In the Wilmington Savings motion, debtors, on page

24   45, in line 12, noted that Wilmington Savings did not argue

25   anything about how much hotels cost, or how much more costly

1   or less costly it would be to administer the case in Texas.

2   But that is absolutely not the case here.  We refer the

3   Court to the distances from each county seat to Wilmington,

4   and those are on page 4 of our reply, and of the travel

5   costs estimated by Mr. Terry Decker, the chief appraiser for

6   the Rusk County Appraisal District, in his declaration in

7   Exhibit C.

8            In its motion for abstention, Milam County

9   Appraisal District described the financial effect of a loss

10  from a hypothetical reduction in value.  And, in Milam's

11  motion, they identify specific governmental job losses that

12  would occur if the value were reduced to what the debtors

13  want.  But not only would you have layoffs, you would also

14  have the necessity of increasing the tax rate to maintain

15  current levels of government services.

16           So, this is a big deal for our clients.  If each

17  of the Districts are running similar risks that Milam County

18  Appraisal District is running, then let us manage these

19  cases in Texas.

20           The sixth point has to do with convenience of

21  witnesses.  And, according to the DHP case, and other case

22  law, the factor is whether witnesses are unavailable.  So,

23  if we try this case in Wilmington, then many witnesses who

24  are non-party witnesses and are outside subpoena range will

25  not be compelled to come to Wilmington to give live

1    testimony.

2         So, if we wanted to call a non-party witness who

3    happens to be in Texas, who may have worked on the plant at

4    some point, like an engineer or a feedstock supplier or a

5    consultant, we would not be able to bring that witness here

6    for live testimony.  So, those kinds of witnesses would be

7    unavailable to this Court.

8         The eighth factor that's discussed in DHP is about

9    the practical considerations that would make the trial easy,

10   expeditious, or inexpensive.  In the DHP Holdings case, the

11   Court noted that, at the time of the venue hearing, little

12   had progressed in that adversary proceeding.  And that was a

13   practical consideration, said the Court.

14        Here, little if anything has progressed with

15   regard to the 505 motion.  We have not been given an answer

16   date.  This Court would require the same time to come -- to

17   become familiar with the facts and the issues as a Court

18   anywhere else.  So, while this proceeding is brand new,

19   Dallas would be an appropriate forum for the 505 motion.

20        Also in DHP, the Court noted that Home Depot had

21   made a jury demand, and Home Depot did not consent to a jury

22   trial in the Bankruptcy Court.  We're taking the same

23   position.  And finally, under that point, the Districts

24   submit that it would be more expensive for them to try this

25   case in Wilmington, rather than Dallas.  So, that is a huge

1    practical consideration for the Districts.

2           The 11th factor cited by DHP has to do with

3    familiarity of the forum with applicable state law.  And

4    this case, and these cases, have all kinds of state law

5    issues.  For example, how much property should be exempt,

6    and what is the value of the exemption, for pollution

7    control equipment is appropriate in these cases.  That is a

8    state law issue governed by Texas Property Tax Code Section

9    11.131.

10          There's the applicability of equal and uniform

11   valuation, which is a specific Texas constitutional

12   provision, codified in the Texas Property Tax Code as well.

13   There's also going to be a determination of Property Tax

14   Code provisions that say that intangible personal property

15   is exempt from property tax.

16          So, if the debtors are going to make an assertion,

17   for example, that some of the plants' value ought to be

18   deducted because it is comprised of intangible personal

19   property, that's going to be a Texas state law issue on

20   whether any of that is intangible, and, if so, how much is

21   there.

22          There's also the -- some unique state issues that

23   relate to the Texas marketplace, and that relate to

24   electrical generation in Texas.  Texas has its own grid, by

25   and large.  It's called ERCOT, the Electric Reliability

1     Council of Texas.  And the Texas grid is one of three

2     nationwide.  So, the peculiar facts and operation of the

3     Texas grid may absolutely come into play in this case,

4     making it yet another state issue.

5             And the 12th and final factor in DHP has to do

6     with the local interest in deciding local controversies at

7     home.  Texas has a much greater interest in deciding

8     valuation issues of its taxable property, as also mentioned

9     by the Milam County Appraisal District in its abstention

10    motion.  School funding, provided in large part by the Texas

11    Education Agency, could be directly impacted by reductions

12    in value that could happen to our clients.

13            In Texas, according to Government Code Section

14    403.302, value losses to school districts in litigation are

15    partially made up by the state.  So, that becomes a state

16    revenue issue that is a unique State of Texas issue.  This

17    means that, hypothetically, a substantial value reduction

18    means a substantial payment by the State of Texas.

19            Not only that, as the declarations note, the

20    plants contribute large percentages to the local tax basis.

21    For example, as stated by Mr. Decker in Exhibit J of our

22    reply, the Luminant generation plant in the Tatum

23    Independent School District in Rusk County is 62 percent of

24    the school district's total taxable value -- 62 percent.

25    So, we believe that factor weighs in favor of transfer to

1   Texas.  These are local controversies that should be decided

2   locally.

3          In the Wilmington motion, the debtors stated, on

4   page 45, on line 20, that Wilmington's lawyers represent a

5   client who's just down the street.  Well, we're not just

6   down the street.  We are 1200 air miles, at least, from

7   Fairfield, Franklin, Henderson, and Mt. Pleasant.

8          Your Honor, in conclusion, I'm going to say that

9   one way to look at the issues before the Court is to

10  consider the three positions of the parties.  A couple of

11  parties are asking for abstention, four districts are asking

12  for transfer to Dallas, and the debtors want to keep this

13  case in Wilmington.  And, by the way, all of the Appraisal

14  Districts have joined in the other Districts' motions.

15         I respectfully suggest that, if there is some

16  middle ground here, that the middle ground is referral to

17  the Northern District of Texas, Dallas Division.  Referral

18  would keep the case in the federal system.  It would still

19  give the debtors the benefit of keeping everything in one

20  forum rather than six separate District Courts.  And it

21  gives the Districts some degree of relief.

22         You know, and, frankly, we're talking about the

23  Appraisal Districts are going to have to go to their taxing

24  units, who are already stretched, at some point, and ask for

25  more money to try these lawsuits.  If we can try them in

1    Texas, it may be a lot cheaper than trying these elsewhere.

2            And while the expense of trying these lawsuits,

3    these adversary proceedings, might be a drop in the bucket

4    for the debtors, considering how much their assets are

5    worth, this is a gulf of expense for our Appraisal District

6    clients.  We rely on public money to operate.  That is it.

7    So, we say that, in the interests of justice and for the

8    convenience of all of the parties, that transfer to the

9    Northern District of Texas, Dallas Division, should be

10   granted.  Thank you, Your Honor.

11           THE COURT:  Thank you.

12           MS. TANCREDI:  Good morning, Your Honor.  I'm Lisa

13   Tancredi from Gebhardt & Smith, and I'm local counsel for

14   Milam Appraisal District.  Here today in the courtroom is

15   Matthew Cavenaugh from the firm of Jackson Walker LLP; his

16   motion pro hac vice has been granted this morning; and also

17   Wayne Fisher from Fisher Boyd Johnson & Huguenard.  And I

18   would ask that Your Honor let Mr. Cavenaugh take over the

19   podium.

20           THE COURT:  Okay.  Thank you.

21           MR. CAVENAUGH:  Good morning, Your Honor.

22           THE COURT:  Good morning.

23           MR. CAVENAUGH:  Your Honor, Matthew Cavenaugh for

24   Milam Appraisal District.  Your Honor, we filed our own

25   standalone motion to abstain.  We also joined in the

1    abstention motion field by Somervell County.  One point of

2    clarification to the last argument made by counsel that was

3    here just before me:  we did not -- we have not, at this

4    point, joined the motion to transfer venue.  We've only

5    filed the abstention papers.

6            Your Honor, just a little bit of brief background,

7    and I won't belabor the points made by Somervell's counsel

8    with regard to the abstention factors, but just some

9    particular background for the Milam Appraisal District:  it

10   is a small, lower county in Central Texas.  Luminant is by

11   far the largest employer in that county.  They are two power

12   plants there, the Sandow Four power plant and the Sandow

13   Five power plant.  And both of those power plants are the

14   two largest tax accounts on the rolls there in Milam County.

15           Your Honor, shortly after this 505 motion was

16   filed by the debtors, within, I think, a couple days, the

17   debtors initiated the lawsuits in Milam County.  Those

18   lawsuits were timely answered by the Milam Appraisal

19   District.  The Milam Appraisal District also included in

20   their answer a jury demand and paid the jury fee.  And those

21   cases are currently set to commence trial in early February

22   of 2016.

23           A couple more specific points about Milam

24   Appraisal District:  they have not filed a proof of clam in

25   this case for any of these cases.  And so far their only

1    appearance in this bankruptcy case has been the special

2    appearance in the motion to abstain and the joinder to

3    Somervell's abstention motion.

4            Your Honor, again, I won't go through the points

5    raised by Somervell, which we join.  I would just like to

6    briefly respond to two arguments raised by the debtor in

7    their omnibus objection, and the answer any questions that

8    the Court might have as to the other factors, if the Court

9    has any.

10           Your Honor, the debtors' omnibus objection, at

11   Docket 6406, page 24, paragraph 41, the debtors admit that

12   trial on this matter, the 505 matters, will likely not take

13   place until after confirmation.  I bring that to the Court's

14   attention because, by the debtors' own admission, a

15   determination of these matters cannot affect confirmation.

16   It's just not going to make or break confirmation of this

17   case as the confirmation is currently scheduled.

18           Next, Your Honor, on page 26, paragraph 44, the

19   debtors basically respond to the jury demand argument as

20   saying that it would be inefficient to have between 3-7 jury

21   trials.  Your Honor, I think this argument fails for at

22   least two reasons.  Number one, I don't think that there is

23   an efficiency exception to a constitutional or jury trial

24   right, as Milam County has here.  It's specifically provided

25   for in the type of action initiated by the debtor in Texas

1   Courts and provided for in the Texas Finance Code.

2           Again, Your Honor, no proof of claim was filed by

3   the Milam Appraisal District in this case.  And so, I don't

4   think any of the factors that would indicate some kind of

5   express or implied consent to an adjudication of a jury

6   trial matter in this Court has taken place.

7           Again, the only exception that I'm aware of to a

8   right to a jury trial, other than consent, is some kind of

9   public rights exception, as raised in the U.S. Supreme

10  Court's case of Granfinanciera v. Nordberg.  No argument or

11  showing has been made by the debtor that the public rights

12  exception exists.  And I would submit that no exemption does

13  exist in this circumstance, where you have a specific grant

14  of a jury right that has been exercised and demanded by the

15  party.

16          With that, Your Honor, I think I'll yield the

17  podium, unless you have any questions.

18          THE COURT:  I do not.  Thank you.

19          MR. CAVENAUGH:  Thank you.

20          MR. MCKANE:  Your Honor, I believe that's it for

21  the Counties.  And, with that -- oh, for the record, Mark

22  McKane of Kirkland & Ellis -- on behalf of the debtors, I'd

23  like to respond.

24          Frankly, I think you will see the overlapping

25  nature of many of the points as relates to abstention and

1    transfer.  So, I'll address abstention first, then transfer.

2    Happy to answer any questions that Your Honor has along the

3    way.  But let's just start with a couple of kind of key

4    facts.

5           We initiated the 505 motion in August, on August

6    21st, and then separately filed, as placeholders in Texas

7    Courts, the appeals from the appraisal boards, because,

8    under Texas law, our 505 motion -- there was a question of

9    whether we've exercised all of our rights if we don't file

10   there.  We expressly stated in all of those petitions that

11   we have filed here, that we believe that this was the proper

12   forum, right?

13          We anticipated that there'd be an abstention

14   argument, and that we are -- and we -- and even when we

15   appeared back in Somervell, we told the Court there, you

16   know, based on this -- Your Honor's ruling, if Your Honor

17   keeps the case, we will come back and ask those Courts to

18   stay those proceedings.  And, you know, I don't want to

19   characterize the Court's comments and what he said to that,

20   but he is fully aware of this proceeding.

21          There have been no actions in those proceedings

22   other than sua sponte, in response to us filing a scheduling

23   motion, asking for a March trial, certain Districts set

24   trial dates, right, in advance of that.  And, you know, read

25   into that what you will in terms of messaging.  But there is

1    -- it is not as if we're trying to forum shop.  So, there's

2    no question of that here.

3              Your Honor, with regard -- before I go any

4    further, with regards to evidence in the record, I know that

5    the counsel for the two movents to transfer venue, Mr.

6    Evans, identified certain materials that he wanted in the

7    record.  There are two additional pieces of evidence we'd

8    like in the record.

9              One is a full and complete transcript from the

10   April proceeding on venue.  And, obviously, we have copies

11   of that for the Court.  The other is a public statement

12   filed in -- excuse me.  A -- frankly, Your Honor, it's an

13   open letter to Somervell County residents filed by Danny L.

14   Chambers, Somervell County Judge, published in the GLEN ROSE

15   REPORTER on October 1st, 2015, at page 86, in response to

16   the filing of this motion.  And we have copies available for

17   counsel as well.  And if I could approach?

18              THE COURT:  Yes.

19              MR. MCKANE:  Your Honor, as you can see from your

20   review of the letter, that is a statement by the -- by one

21   of the two judges in Somervell County about his position on

22   the fact that Luminant is challenging the tax appraisals,

23   both in State Court and here in the Bankruptcy Court, and

24   his views as regards the impact of that on the state.  We

25   filed that just as a factor for the Court to consider with

1   regards to the venue issues.

2           MR. MYTELKA:  Your Honor?  My name is Andrew

3   Mytelka; I represent -- my name is Andrew Mytelka.  I

4   represent Somervell County.  We would object to this letter.

5   First of all, Danny Chambers is not the trial judge.  He's

6   basically the senior governmental official in Somervell

7   County; they're just called county judges.  So, I don't want

8   it characterized that this is the -- one of the District

9   Judges who wrote this letter, which is what he just said.

10          MR. MCKANE:  Well, no.  Let me be absolutely

11  clear.  I'm not suggesting that he's the trial judge.  I

12  don't know whether he's the trial judge, to be honest.

13          [UNINTEL VOICES OVERLAPPING]

14          THE COURT:  You stop interrupting each other?

15          MR. MCKANE:  I Just wanted to state the

16  evidentiary basis for the letter.  First of all, it's self-

17  authenticating under Rule 902 as a statement by a government

18  official, with the seal of the County.  It is also a public

19  record under Federal Rule of Evidence 8038.  And it's for

20  those reasons that I ask that the Court accept it into

21  evidence.

22          MR. MYTELKA:  Your Honor, my only objection to it

23  is it was characterized as one of the two judges in

24  Somervell County.  And he is not a District Judge that would

25  -- that is hearing any cases.  He is the senior governmental

1   official, which, in Texas, instead of a County Commissioner,

2   they call them County Judges.  And that -- I just want to

3   make sure that's clear.

4          THE COURT:  All right.  I'll admit the -- subject

5   to that clarification, I'll admit the letter.

6          MR. MCKANE:  And we accept the clarification, and

7   didn't suggest otherwise.

8          THE COURT:  And, of course, the transcript.  I

9   think you filed a request for judicial notice this morning.

10  I saw a request for judicial notice this morning on the

11  transcript.  So, I'm happy to take judicial notice of the

12  transcript.

13         MR. MCKANE:  Thank you, Your Honor.  And, with

14  that, I'd like to proceed into argument.  Your Honor,

15  Section 505 of the Bankruptcy Code is the driver of these

16  proceedings.  It is critical to the scope and appreciation

17  of the issues here.  And it grants the Court broad authority

18  to determine the amount or legality of any tax.

19         As this Court is fully aware, Federal Courts have

20  an unflagging obligation to exercise jurisdiction given to

21  them, and permissive abstention is only appropriate in

22  certain narrowly tailored, exceptional circumstances.  That

23  is both the Supreme Court's recognition and this Court's

24  recognition that there must be exceptional circumstances

25  before a Court abstains from these proceedings.

1            We have seen multiple factor tests being presented

2    to Your Honor.  We've seen a 12-factor test; frankly, Your

3    Honor, that applies to non-core proceedings.  We've seen a

4    six-factor test that applies to core proceedings.  We've

5    seen that the ANC Records Court applied a slightly different

6    test as it relates to tax proceedings.

7            I will address factors, but the message, Your

8    Honor, is, one, this is all within your discretion, whether

9    to keep this case or not.  And the standard on which you

10   have to evaluate whether to exercise your discretion to keep

11   this case is whether there are exceptional circumstances

12   here that would somehow justify not.

13           And our message, Your Honor, to you is:  Section

14   505 of the Bankruptcy Code provides a federal substantive

15   right to a debtor to go to the Bankruptcy Court in the

16   exercise of its equitable jurisdiction to evaluate whether

17   this tax is appropriately measured.  And it's the Bankruptcy

18   Court's ability to evaluate and do valuation, especially in

19   the context of a larger restructuring and the impact of the

20   taxes and the costs on that larger restructuring, that is

21   one of the bases for why we can come to you, Your Honor, and

22   ask that the Bankruptcy Court evaluate what is the proper

23   amount of the tax

24           There is no doubt that Section 505 of the

25   Bankruptcy Code provides that this is a core proceeding, and

1    is absolutely related to the overall restructuring.  And one

2    thing, Your Honor, we want to come back to later is:  this

3    is a core proceeding.  It is a motion.  I've heard others

4    suggest this is not an adversary proceeding; this is just a

5    motion and a contested matter.

6         Looking, Your Honor, at the factors that have been

7    presented by others and how they weigh here:  the effect or

8    lack of effect on the official -- the efficient

9    administration of this case.  Your Honor, the debtors

10   believe that it would be an inefficient and expensive waste

11   of our resources to try six or seven separate proceedings

12   throughout Texas, rather than one proceeding here.

13        There -- we heard from Somervell to try to suggest

14   that there are material differences between the plants

15   because of coal and nuclear.  But we ask that Your Honor

16   step back and look at this.  There are significant

17   similarities as well.

18        This Court is already familiar with how this

19   company operates and runs these plants.  We run these plants

20   as a fleet.  They are dispatched as a fleet in a common

21   market, ERCOT.  They are driven by the economics of that

22   market based on their own heat rates and where they fall on

23   that dispatch, right?

24        They -- nuclear is different than coal.  We don't

25   dispute that.  Right?  We acknowledge that, that there are

1   some differences.  But when you set -- when you are asked

2   that this Court, familiar with valuation techniques, is

3   being asked to do a valuation proceeding here, you then say:

4   how are you going to do that?  You're not providing anything

5   other than common appraisal techniques, widely recognized

6   common appraisal techniques, specifically the -- an income

7   test, a cost-based approach, and comparable market data.

8          Your Honor, through your own experience and

9   through multiple bankruptcies, are very familiar with these

10  appraisal approaches.  And you're also familiar, from this

11  case, with how the company runs these facilities.

12         In our incentive compensation hearing, you heard

13  from Matt McFarlane, who runs the Luminant Generation

14  Company and manages these assets about how they run these

15  assets, and takes in -- what cost factors and income

16  factors.  You heard from the energy -- the industry expert

17  Todd Filsinger about the income and the projections for

18  EBITDA over time, and what are the risks and challenges

19  associated with this.

20         A coordinated proceeding here, where the common

21  issues as it relates to how Luminant operates these

22  facilities are presented to one trier of fact.  And then the

23  specific, uniquely specific characteristics of each plant --

24  the scrubber they use, the heat rate they use -- will be

25  presented separately, for Your Honor to factor that in to do

1    the -- to render a ruling on the actual appraisals.

2             But the core of this proceeding is about how --

3    what these plants are, the energy markets, the efficiency of

4    these plants, the income that they're going to produce, what

5    the cost would be to replace them.  Those factors will be

6    presented as a unit.  And that is appropriate and efficient.

7             In addition to the efficiencies here, Your Honor,

8    we've already produced and gone through in this proceeding

9    substantial valuation materials, not all of it, not

10   suggesting our discovery efforts are done.

11            But the core efforts that have been done here can

12   be built upon, built upon your general knowledge of

13   valuation and appraisal techniques, the specific information

14   that you've already learned in these proceedings, the work

15   that we've already done on these proceedings as we

16   anticipated a valuation trial, to then go forward and finish

17   the job with the remaining time to then present, in one

18   coordinated proceeding, the issues for these appraisals.

19            Your Honor, there's some -- been some question

20   about whether somehow state law predominates over the

21   bankruptcy issues.  There's no doubt that few judges are

22   better positioned to evaluate valuation issues than a

23   bankruptcy judge.  We're using standard appraisal

24   techniques.  There's no doubt about that.

25            There's been some suggestion, however, that

1    multiple State Court proceedings would -- that there's --

2    let me step back for a second.  There's been a suggestion,

3    Your Honor, that the Texas law requires a uniformity of

4    application to properties that would somehow be impaired if

5    a judge other than the judge who -- from that county who

6    evaluates those properties values those properties.  That is

7    essentially the argument; they call it a uniformity issue.

8              And when some judges, including in ANC Rentals,

9    evaluated, "Is that an issue?" they look to: what is the

10   property being evaluated?  This is not a situation like in

11   ANC Rentals when you have a set of costs -- a car company,

12   we have a car rental fleet, where you have a make and model

13   that could be valued differently, could be valued the same

14   across multiple properties within the county.  That's not

15   what we have here.  We have seven plants.  Right?  With --

16   that are commonly operated but have some differing

17   characteristics.  Right?  They're not off-the-shelf models.

18             So, the real issue is:  how do you best address

19   uniformity risk?  Is it better to have one trier of fact in

20   one proceeding evaluate the properties and evaluate what is

21   similar between the properties and different in applying a

22   standard test for income, cost, and comparables?  Or is it

23   better to have seven separate proceedings?  We submit, Your

24   Honor, frankly, that it is more efficient, more consistent

25   with Texas law, to have one trier of fact.

1          The other subtext about uniformity is that somehow

2    Your Honor cannot apply Texas law, or may not apply Texas

3    law correctly.  We reject that notion.  We reject that

4    notion because:  what are you being asked to do?  Texas law

5    says that taxes apply at a market rate, at the market value.

6    It's very straightforward in that regard.

7          The crux of this entire proceeding is a valuation

8    trial.  It's an appraisal.  Then, from there, if there are

9    deducts that are expressly stated, we apply the deducts.

10   But the core of this proceeding is a valuation trial

11   applying Texas law, which simply says, both at the

12   constitutional level and at the state level, that it should

13   be a market valuation.  That's all we're asking for.

14          Your Honor, the notion that has been raised by

15   Somervell that somehow there is a difficulty or an unsettled

16   nature of state law should also be rejected.  You know,

17   there was a suggestion that somehow, because we've raised a

18   constitutional challenge, that this is somehow appropriate

19   for another forum.

20          Your Honor, the only constitutional challenge

21   we've raised is Texas law says market-based valuation;

22   that's in the constitution.  And to the extent that we're

23   being charged a rate above where our market value is, it's

24   unconstitutional.  That is the extent of the argument.

25   There's nothing more there; it's really a red herring.

1          Your Honor, the other aspect of this that is

2    troubling is, as relates to the uniformity argument, the

3    notion that, if there's a concern about uniformity of

4    application, you should send it back or abstain from taking

5    the proceeding.  Your Honor, that guts Section 505 of the

6    Bankruptcy Code.

7          It will always be the case, with a property tax,

8    so long as the debtor owns the property before bankruptcy,

9    during bankruptcy, and after bankruptcy, that, during that

10   period of time, to the extent that there is a 505 challenge

11   brought and the Court hears it, right, that there will be a

12   different trier of fact at one point in time.  It cannot be

13   that there is a different forum involved, that there is a

14   uniformity problem.

15         It is the application of settled law to commonly

16   accepted appraisal tech -- using commonly accepted appraisal

17   techniques to render a conclusion.  That's how you solve the

18   uniformity issue.  And we submit, Your Honor, as a result,

19   it's a non-issue in these proceedings.

20         Your Honor, there's been some suggestion that

21   somehow the presence of related proceedings in Texas is a

22   reason for you to abstain.  Your Honor, I think it was

23   already explained those proceedings were (indiscernible)

24   solely to enable us to protect the question of:  did we

25   exercise our Texas appellate rights?  This Court -- if this

1   Court accepts jurisdiction and retains jurisdiction in this

2   case, we absolutely intend to stay those proceedings.

3           Your Honor, another factor in whether to abstain

4   or not is whether there's a jurisdictional basis other than

5   1334 of the Judicial Code.  And, undeniably, Section 505 of

6   the Code -- of the Bankruptcy Code gives this Court

7   independent subject matter jurisdiction over the

8   proceedings.

9           Your Honor, there was a suggestion raised this

10  morning that somehow you'd be acting as some Super-Tax Court

11  in bankruptcy.  We submit, Your Honor, Section 505 of the

12  Code is exactly what empowers this Court and empowers the

13  debtor to come to you and say -- and submit that these are

14  the issues that we think can be coordinated and presented in

15  one fashion.  There's nothing Super-Tax Court about it.

16  It's what the Bankruptcy Code provides for.

17          Your Honor, the other issue that has come up

18  repeatedly is the existence of a jury right.  And we want to

19  pause there for a second.  The law -- there is no automatic

20  right to abstain here.  And, more importantly, Section 505

21  of the Bankruptcy Code empowers this Court to assess the

22  amount of the tax.

23          And I think that's critical, Your Honor.  You have

24  to go to the language of the Code.  And it specifically

25  provides for, in Section A, "The Court may determine the

1    amount or legality of any tax."  This Court, right?  The

2    fact that a -- that there may be an ability for a jury to

3    make that determination in a separate proceeding, frankly,

4    is irrelevant, and does not create a jury right here.

5            This Court -- if this Court accepts jurisdiction,

6    right, and retains jurisdiction here, you will be the trier

7    of fact here.  That's what Section -- that's what Congress

8    intended in the Bankruptcy Code.

9            And, Your Honor, in the case of In Re: York, 291

10   BR 806, the Bankruptcy Court in the Eastern District of

11   Texas noted that, to the extent there is a deprivation of a

12   right or an ability to have a jury trial, that fact by

13   itself does not overweigh the fact favor keeping the

14   proceeding in this Court.  Congress empowered this Court to

15   be the trier of fact as it relates to tax issues, and the

16   existence of a jury right elsewhere does not diminish that

17   empowerment.

18           In sum, Your Honor, we believe there is no

19   compelling basis to abstain.  You better than anyone else,

20   based on what you've learned from the debtors already in the

21   course of these proceedings, is best situated to do this

22   appraisal, to evaluate these properties.  And there's

23   nothing unique or compelling about Texas state law that

24   would justify abstention here.

25           Turning to the transfer issues, Your Honor, first,

1    let's pause for a second.  You have two Appraisal Districts

2    who are asking for abstentions, send this back to State

3    Court.  Then you have four Appraisal Districts saying, "No,

4    no, send it to Dallas, to Federal Court."  Right?  All by

5    Milam cross-join one another, right?

6           So, there's no uniformity in what the Districts

7    want, other than not here.  But there's a fundamental

8    problem with the request, right?  There is no ability, under

9    Section 1404, 1406, 1412 of the Judicial Code to transfer a

10   motion.  This is a motion.  This is not an adversary

11   proceeding.

12          This is a -- under 1404, you transfer the case.

13   Specifically, in Chrysler Credit Corp. versus County

14   Chrysler, the 10th Circuit, 928 F 2nd 1509, (indiscernible)

15   1518, the 10th Circuit made absolutely clear what was

16   obvious from the Judicial Code:  "Section 1404 only

17   authorizes transfer of an entire action, not individual

18   claims.  A Court acting under 1404 may not transfer part of

19   a case for one purpose while maintaining jurisdiction for

20   another purpose.  The Section contemplates a plenary

21   transfer of the entire case."

22          Your Honor, there is no base -- we're not

23   transferring this case.  Right?  We -- there is no basis to

24   transfer this motion, to Dallas or anywhere else.  We don't

25   believe there is a viable basis under Section 1404 of the

1    Judicial Code to transfer a motion.

2           THE COURT:  Doesn't it say -- hang on.  Oh, shoot.

3    Well, what about 1409, which talks about venue?  Cases are -

4    - sorry.  What about 1409, which deals with venue of cases -

5    - venue of proceedings related -- arising in -- venue of

6    proceedings arising under Title XI or arising in or related

7    to cases under Title XI?  Can I transfer it under that

8    Section?  And you're going to say, I guess, "Well, that just

9    gives you venue; that doesn't empower you to transfer

10   venue"?

11          MR. MCKANE:  Your Honor, I believe that's right.

12   I'll look at it more closely.  But I think 1409 is an

13   empowering statute.  Your transfer motion -- even if you

14   look at 1406 and 12, what they say is it all reverts back to

15   the standard under 1404, which is the ability -- you know,

16   what are you transferring?

17          THE COURT:  Mm hmm.

18          MR. MCKANE:  And, yeah, I think, even here, when

19   you say --

20          THE COURT:  Doesn't 1404 use the word

21   "proceeding," though?  Doesn't it say "case or proceeding"?

22   I can't...  I don't have a copy of it up here.

23          MR. MCKANE:  Your Honor, if you'd like, we can

24   bring copies of 1404 with, for Your Honor.

25          THE COURT:  I've only got about three books of

1   statutes up here.

2           MR. MCKANE:  Yeah.

3           THE COURT:  And they all jump from 1334 right to

4   1408, unfortunately.  Right.  Hang on.  Ms. Werkheiser --

5           MR. MCKANE:  So, Your Honor, if you just looked at

6   1412 --

7           THE COURT:  Mr. -- hang on.  I'm sorry.  Just give

8   me a second.

9           MR. MCKANE:  Yeah.

10          THE COURT:  Ms. Werkheiser sent it to me.

11          MR. MCKANE:  If it's helpful for you, 1412 does

12  refer to a case or proceeding.

13          THE COURT:  Right.  Right, "The District" -- okay.

14          MR. MCKANE:  Right?  Good. And, Your Honor, the --

15          THE COURT:  "Transfer a case or proceeding under

16  Title XI."

17          MR. MCKANE:  Right.

18          THE COURT:  But it doesn't say arising in or

19  related to Title XI.

20          MR. MCKANE:  That's correct.  On -- our

21  distinction that we're drawing is this is not a -- this --

22  obviously, this is the case.  But not -- excuse me.  But, as

23  a proceeding, this is not an adversary proceeding.

24          THE COURT:  Well, it doesn't say adversary

25  proceeding, right?  You're supposed to --

1            MR. MCKANE:  Well, I mean, Your Honor, if you step

2    back and say to yourself, "What kind of proceedings could

3    exist?" you know, we -- well, if necessary, if it'd be

4    helpful for Your Honor to aid in your analysis, we think it

5    would be an adversary proceeding.  This is not a separately

6    engaged adversary proceeding.  This is a core matter that is

7    a contested motion in the case itself.

8            THE COURT:  Okay.

9            MR. MCKANE:  Okay.  Your Honor, then, turning to

10   the issue -- you know, if we're really evaluating what are

11   we transferring, right, we're never -- we're not

12   transferring the proceeding.  This Court's already concluded

13   that venue is proper here, that -- and has more than

14   accepted the case, and has already gone -- spent over a year

15   on these proceedings.  Right?

16            And then, if you -- we believe that the Appraisal

17   Districts have failed to meet their burden that the

18   interests of justice prevail or -- and require them

19   transferring it to Dallas, where none of the core

20   proceedings are, where, you know, none of the Appraisal

21   Districts are in Dallas County, right?  And we believe that

22   there is a strong presumption in maintaining the venue here,

23   where you are, where you have evaluated these proceedings

24   already.  And that presumption is afforded great weight.

25            Your Honor, as it relates to the districts and the

1    issue of forum shopping, all of the -- we -- and I want to

2    pause for a second, because we talked about the districts,

3    but they are appraisal districts for counties, which -- and

4    what that means is, they have the appraisers that set the

5    value.  They're the proper defendant under Texas law,

6    because they set the appraisal and we are -- believe -- and

7    what we are contesting is that appraisal, we're saying, is

8    wrongly valued.

9            The collector of the tax is the county, right?

10   Every county other than Milam County has filed a proof of

11   claim in this case, right?  They field those proofs of claim

12   because they hadn't been paid for their taxes at the time of

13   the case.  They were then paid.

14           Some of them withdrew those claims, but when the

15   next tax comes due, they will surely prevail upon this Court

16   to -- you know, whether they file a claim or not because

17   it's an adversary claim -- I'm sorry -- an administrative

18   claim or they can do an administrative claim.  They don't

19   have to file a proof of claim.

20           But there's no question that counties who these

21   districts are agents for have come forward and received the

22   benefit of being able to receive payment on their taxes from

23   this Court and from this debtor.  So there's no question

24   there at all, forum shopping, in any way.

25           Your Honor, as to the other factors for transfer,

1    you previously ruled that whether the -- a transfer promotes

2    economic and efficient administration, the case, that that

3    was a neutral factor that last year.  And we believe that

4    it's law, the case, that if anything, that factor tilts in

5    our favor now, based on the curve that Your Honor has

6    acquired on the -- on these assets, and how then this

7    company.

8           We believe that there's no question the parties,

9    as (indiscernible) a fair trial in either venue.  That's not

10   an issue here.  We don't believe that there's any basis for

11   the debtors to have their choice of forum disturbed, as it

12   relates to the location of parties and evidence.  Your

13   Honor's previously acknowledged that in this day and age,

14   location of documents is less relevant because of the

15   electronic discovery that's available, and that's obviously

16   proven itself accurate here.

17          As it relates to the convenience of witnesses, if

18   you look at the appraisers' motions and their replies,

19   they've acknowledged that this is going to be an expert

20   driven exercise.  There's no doubt that that's the case.

21   This is going to be an expert driven exercise.  Experts

22   travel, just like lawyers travel.  This is not something

23   that tilts heavily in favor of transferring venue.

24          As it relates to non-party witnesses, as this

25   Court has already seen with non-parties, there are

1    videotapes, depositions, and those depositions can be

2    designated, and portions of those can be played. That is

3    true, regardless, and frankly, if you look at where these

4    appraisal districts are vis-à-vis Dallas, many of them are

5    outside the subpoena power of that court as well.  So the

6    issue of non-party witnesses is neutral.

7            And finally, Your Honor, as it relates to whether

8    this is a local issue or a big deal, the values here in this

9    case are always staggering.  We acknowledge that, that this

10   is $40 million a year in costs that are admin related costs,

11   full paid amounts.  That's $40 million for 2015, and based

12   on where the appraisals will come in, we anticipate it to be

13   in the same ballpark for 2016.

14           $80 million in the -- in these proceedings is

15   still a lot of money.  It's material for us.  It's material

16   for the people who, for the creditors that will become the

17   new owners of this company going forward.  It is a -- it is

18   why we filed this motion in this Court to right size the

19   property, the taxes for these core assets.

20           Just to give you perspective, Your Honor, we're

21   talking about over 50 percent of the value of Ruminant is in

22   these seven plants.  That is a -- as a factual matter, a

23   core proceeding, and as a legal matter, a core proceeding.

24   It is core to our restructuring and the assets to retain the

25   jurisdiction.  If you have any questions, I'm happy to

1    answer them.

2         THE COURT:  No.  Mr. Kornberg?

3         MR. KORNBERG:  Good morning, Your Honor, Alan

4    Kornberg from Paul, Weiss, Rifkind, Wharton and Garrison on

5    behalf of the ad hoc committee of TCEH first lien creditors.

6    Your Honor, we urge you to retain these matters and to hear

7    the debtor's 505 motion.  We agree with the districts this

8    morning, when they said that the amounts at stake are not

9    trivial.  They are a big deal, especially, Your Honor, when

10   you consider that the task claims at issue are recurring

11   claims, and they're determined one year, and then based off

12   of those numbers, there will be future determinations.

13        We believe, along with the debtors, that the tax

14   claims are overstated, and it's very important to our

15   clients, as the future owners of TCEH, to address that

16   situation.  I think everybody agrees that the 505 motion, at

17   its core, involves pure valuation issues.  And Your Honor,

18   we believe there is no better court than this one to address

19   valuation issues.

20        And we also believe very strongly that having a

21   single forum where these matters can be coordinated will

22   result in an effective and efficient administration of the

23   Chapter XI cases.  The alternative, which we've heard about

24   today, is requiring the debtors to participate in six or

25   seven jury trials across multiple jurisdictions in Texas

1    with absolutely no coordination.

2         That is going to burden these estates with

3    significant and unnecessary costs and expenses.  And Your

4    Honor, we believe that that's exactly -- avoiding that

5    result is exactly why Section 505 is in the code, that in

6    the context of a massive reorganization, we need an

7    efficient coordinated and effective way to resolve these

8    matters, and not have them languish in state court

9    proceedings.

10        So Your Honor, in addition to the valuation

11   expertise that this Court has, you also have very valuable

12   context.  You're about to have a further crash course in

13   valuation in this case, as we approach confirmation, where

14   we know there will be expert testimony that will bear on

15   valuation of the debtor's assets.  And the suggestion that

16   this Court might have a hard time applying state law is

17   ridiculous.  Your Honor applies state law to questions every

18   day of the week in this and other cases.

19        So Your Honor, what we think is needed here is a

20   coordinated process in one court with one highly qualified

21   judge.  There's no question that the tasking authorities

22   have legitimate due process needs.  They can be addressed

23   through an appropriate schedule order, but we urge Your

24   Honor to hear these matters and to resolve them in the

25   context of this case and with the benefit of the background

1   and expertise you will have and the knowledge that you will

2   have of these debtors and their businesses.  Thank you very

3   much.

4            THE COURT:  You're welcome.

5            MR. GOREN:  Thank you, Your Honor.  Todd Goren,

6   Morrison and Foerster on behalf of the TCEH Official

7   Committee.  We likewise support the debtor's objection here,

8   and would ask that the Court retain jurisdiction of the 505

9   motion.  As Mr. Kornberg pointed out, there's going to be

10  some valuation testimony at confirmation.  You have a

11  critical background on the debtor's business and operations.

12  You're going to get more of that.  So we think you are the

13  best positioned to hear this case most efficiently.

14            And it's also a very important issue to be

15  resolved.  You've heard a little bit in the past about the

16  reinstatement issue, the potential reinstatement of EFH debt

17  at TCEH.  Just for order of magnitude, that's approximately

18  a $20 million a year issue, this is potentially 40.  Then we

19  think after confirmation, you'll be able to find the plan is

20  feasible, even if the debtors have to pay both, but it's

21  undoubtedly a material amount of money, and so, we think

22  it's an important issue to be resolved, and we would ask the

23  Court to schedule the 505 motion in accordance with the

24  debtor's scheduling motion.  Thank you.

25            THE COURT:  Okay.  Thank you.  Mr. Hehn?

1          MR. HEHN:  Your Honor, for the record, Curtis Hehn

2     for Somervell CAD.  Very briefly, if I may, Your Honor?

3          THE COURT:  Mm hmm.

4          MR. HEHN:  Just a couple of points.  Your Honor,

5     Somervell CAD doesn't dispute that the language of 505 is

6     broad.  But by its own terms, it's discretionary, and the

7     case law shows that the purpose of 505 isn't to have the

8     Bankruptcy Court communicate every possible tax claim that

9     comes before it, it's really to make sure that the debtors

10    are protected, in the event that -- and the debtor's

11    creditors are protected, in the event that the debtor hasn't

12    challenged tax assessments that should've been challenged in

13    the past.  So it's a safety valve for that.  And, to make

14    sure that if there is a tax dispute that is going to

15    languish, I believe was the term that you heard, and it's

16    going to impact the administration of the debtor's estate,

17    that it can be resolved in the Bankruptcy Court so that

18    doesn't happen.

19          Those issues are not at play with respect to

20    Somervell CAD and Comanche Peak to the extent that we're

21    concerned about speed -- and everybody is.  There's a faster

22    alternative venue.  That's the Texas Tax Court.  It's there.

23    It's ready to go.  It addresses the issue of the jury trial.

24    You've heard about proofs of claim being filed.  I know that

25    proofs of claim for prior assessed years, pre-petitioned

1    years were filed.  This is a post petition tax assessment.

2    Somervell CAD's never filed a proof of claim, and I don't

3    believe the county has filed a proof of claim for this.

4            So I mean, you're obligated to file a proof of

5    claim, if you want to get a recovery on your pre-petition

6    claims, but that hasn't been done post-petition.  And we

7    contend that that doesn't waive our right to a jury trial.

8    Your Honor, you've heard that -- from the debtor, that

9    uniformity of assessment, that concerned (indiscernible)

10   505.  We disagree.  There's multiple cases out there,

11   including Judge Walrath in ANC, where they've said, "Hey,

12   this is an important concern."

13           Judge Walrath actually noted that -- and this is

14   from her opinion -- "The dispute here involves the value of

15   the debtor's property upon which the tax was based, and the

16   taxable property's relation to the state."  Resolution of

17   this dispute could affect the uniformity of assessment of

18   property taxes imposed on other taxpayers who own rental

19   properties in Texas.  This is a compelling reason to

20   abstain.

21           So it doesn't mean you have to abstain.  You have

22   discretion, but it certainly doesn't gut 505 and other

23   courts, if they believe it's appropriate within the exercise

24   of their discretion.  They abstain all the time.  And 505

25   abstention is not extraordinary, Your Honor.  You see it in

1    the cases, and it's based off of looking at the facts and

2    circumstances of each case.  And we think it's appropriate

3    here, and that the Court should abstain for all of the

4    reasons that we have set forth.

5            Your Honor, the debtors also go back to a high

6    level of abstraction with respect to valuation.  And I

7    believe some of the language you've heard was, "Peer

8    valuation issue," or "this is a valuation."  We don't

9    dispute that you have expertise with valuation.  Other

10   courts have expertise with valuation, too, but the problem

11   here isn't in the concept of valuation, the problem is in

12   the application to the specific facts and circumstances.

13           You know, the debtors, in their opposition brief,

14   cited to the court's -- I think it was 23 days of trial and

15   (indiscernible) -- I was here for some of those days, Ms.

16   (indiscernible).  Complicated stuff.  This is also going to

17   be complicated.  There is absolutely going to be a fight

18   between competing experts with respect to the models, the

19   assumptions that are used in the models, the projected

20   electricity pricing forecasts.  We're going to be fighting

21   over discount rates.  That's where you get into problems

22   with respect to being able to do a consolidated proceeding,

23   and that's also a basis for abstention.

24           Again, in ANC, Judge Walrath said that, "A trial

25   on this matter could be lengthy.  The Court would need to

1     hear evidence, not only as to the debtor's assets, but on

2     the proper method of valuing these assets.  Unlike other

3     Section 505 cases, the issue to be determined here is not

4     simply whether the tax is due, but whether the proper method

5     for determining what tax is due was used.  Trial could

6     require expert testimony by both sides as to the market

7     value of the assets.  This factor weighs in favor of

8     abstention."

9          She also noted that it would be complex in the

10    fifth point, and that weighted in favor of abstention.  And

11    we believe that when you leave the high level of abstraction

12    and you look at what the parties are actually asking you to

13    do, what the debtor wants you to do, this is going to be

14    complicated.  Well, it's easy to talk about valuation

15    techniques at a high level.  Their application is an awful

16    lot of work, and it's going to be a big fight.

17          Your Honor, Somervell does not believe, at least

18    with respect to Comanche Peak, that the debtors are going to

19    be prejudiced, if they have to litigate that in the

20    Somervell District Court.  The debtors are well represented

21    in the area of tax by multiple professionals, and including

22    Kirkland and Ellis, as the debtors lead bankruptcy counsel,

23    Thompson and Knight, LLP is special counsel to the debtors

24    for certain tax related matters. K&L Gates, LLP, who

25    actually signed the debtor's complaint that was filed in

1    Somervell, and appeared at the hearing along with Kirkland

2    and Ellis.

3           And there's a variety of other tax professionals

4    that have been retained, too. And I don't know if they'll be

5    involved, but they include Duff and Phelps, LLC, who

6    provides valuation in (indiscernible) and property tax

7    advice, American (indiscernible), who provides property tax

8    experts for litigation, Harris and Dickey, LLC, who provides

9    tax consulting, Robert Half Finance and Accounting, who

10   provides tax consulting, and SAK Consulting LLC, who

11   provides tax consulting.  So the debtors have the

12   professional firepower to do this.  They are well

13   represented.  They're not going to be prejudiced if Comanche

14   Peak is peeled off and sent back to Somervell, if the court

15   abstains on that motion.

16          And then, finally, Your Honor, this isn't directly

17   relevant, but it's important to provide context, I think,

18   which is, $40 million is a lot.  I don't know how much of

19   that $40 million is attributable to the Comanche Peak

20   nuclear power plant.  It's not in the debtor's papers that I

21   have seen that have been filed at least in public.  But

22   let's put that in the context of these mega cases as a

23   whole.  I believe that the professional fees for the first

24   and second quarters of this case were in excess of $80

25   million.

1          So while that's all legitimate and useful, that's

2    a lot of money,  The $40 million is a lot of money.  The

3    piece that's going to ultimately be attributable to Comanche

4    Peak for taxes, it's a lot of money.  But in the context of

5    these super mega cases, it's all relative.  And just because

6    there's money involved that's important, doesn't mean that

7    the Texas court can't adjudicate it.  Thank you, Your Honor.

8          MR. EVANS:  Your Honor, Jim Evans for Freestone

9    Robertson, Rusk in Titus County appraisal (indiscernible) to

10   reply to the debtor's response very briefly.  I'd like to

11   start out by just addressing one thing that the creditor's

12   committee counsel mentioned.  And I appreciate his remarks,

13   but what but what he doesn't appreciate and what the

14   creditors don't appreciate is the budget constraints that

15   our clients have.

16          We're local governmental entities, who rely on

17   public money from local governments every year when writing

18   budgets.  The debtors have already said they're looking for

19   a reduction of $40 million for tax year 2015.  That's not

20   right sizing.  That is looking for a sweetheart deal, in our

21   position.  They're looking for a reduction in value.

22          In my experience, representing appraisal

23   districts, I'll admit I think it's obvious so far that I'm

24   not a bankruptcy lawyer.  I represent appraisal districts.

25   I get these kinds of lawsuits all the time.  And these

1    things occur year after year, they're right about that.  But

2    my experience is that these are business decisions.  These

3    are not necessarily instances, sometimes they are, but not

4    all the time, they're not instances in which the party truly

5    believes that the property's been overvalued.  It's always

6    been my experience that there are business decisions.

7             I'd like to address a little bit, you know,

8    comments about forum shopping.  We're not looking for a

9    forum in which we think we're going to get a more favorable

10   ruling.  We're looking for a forum which would allow us to

11   try this thing to defend ourselves in such a manner that

12   it's not going to cost us even more money to send lawyers,

13   experts and the clients' management to Wilmington, to try

14   this lawsuit.

15            It's not forum shopping.  We're seeking to

16   minimize the expense of public money so we can defend

17   ourselves.  We can not afford to keep coming to Wilmington.

18   Regarding the debtor's comment about witnesses who are non-

19   parties, they made an assumption just now that the only

20   witnesses who would be before the Court in any proceeding

21   would be expert witnesses.  That is not necessarily true.

22   As this Court knows, trials involve all kinds of witnesses,

23   who are not only experts, but also fact witnesses.

24            And as we've pointed out in our remarks, there are

25   plenty of non-party fact witnesses who could become

1    witnesses in this proceeding -- engineers, consultants,

2    vendors, etc.  You know, they gratuitously suggested that we

3    could video deposition testimony and then bring it to

4    Wilmington.  Why put us through that?  Why shouldn't we have

5    the ability to present live witnesses like anybody else,

6    like their witnesses, for example?

7              Regarding their assertion that this proceeding can

8    not be transferred, as the Court pointed out, Section 1409

9    absolutely does not limit transfer to adversary proceedings,

10   it just says, "Proceedings."  And their argument is

11   basically this, if somewhere in their motion the word

12   adversary was in there, then they say it could be

13   transferred, but they left the word adversary out, so if can

14   not be transferred.  I think that's their position, but is

15   that congressional intent?  I would say no.  If the

16   congressional intent was the only thing that could be

17   transferred would be adversarial proceedings, then that

18   would be in a 1412.

19             Now if the Court were to transfer this case to

20   Dallas, the debtors still have their 505 motion.  And we're

21   fine with a consolidated process.  The debtors would still

22   have that, but they'd have it in Dallas.  What they would

23   have, Your Honor, is a single forum with one judge and equal

24   taxation of all of the properties in all of these counties.

25             So we reiterate, on behalf of our cash strapped

1   public entities, who are small counties, the Court has the

2   populations of each county in the reply, and the distances

3   to Wilmington, it's going to cost us a lot of money.  And we

4   believe that for the reasons stated in our motion and for

5   the reasons advanced today, that the cases against the four

6   districts should be transferred in the interest of justice,

7   and for the convenience of all the parties.  Thank you, Your

8   Honor.

9            MR. MCKANE:  Your Honor, I rise not as a

10  (indiscernible).  You had asked a question about 1404, and I

11  specifically just want to, you know, call to your attention.

12  As it relates to transfer of cases, that's 1404(a), right?

13  And that is the issue that we -- that you are commonly

14  familiar with.  That's for the convenience of parties and

15  witnesses, and in the interest of justice.  And there, a

16  district court may transfer any civil action to another

17  district or to a division that could -- yeah, so as long as

18  there's a venue proper in that other jurisdiction, go

19  forward and transfer it.

20           I believe we are -- your question is in regards to

21  what other than a civil action?  And that regards to

22  proceedings or motions.  If you look in 1404(b), upon a

23  motion (indiscernible) stipulation the parties, you can

24  transfer something smaller than a civil action, under 1404,

25  but that is only within the district.  It's to another

1    division within the district.

2         So to the extent that Your Honor is recalling 14 -

3    - and 1404, a difference between a civil action and a

4    smaller motion, it is with -- in regards to 1404(b), which

5    is limited to transfer within the district.

6         THE COURT:  Thank you.  All right.  We're going to

7    take a recess and I am going to consider the matter and then

8    I will come out and give you a ruling and sentence.  It's

9    12:30 and I might take a little while.  We'll just break and

10   reconvene at 1:30.

11        THE COURT:  All right.  Please be seated.  Sorry.

12   I'm getting organized.  Okay, in front of the Court are --

13   well, three matters, but three motions, if you will.  One is

14   for this partial dismissal issue.  I'll set that aside.  The

15   real issues are, A, whether I should transfer venue of this

16   contested matter to the Northern District of Texas, and B,

17   whether I should permissibly abstain under 1334(c)(1) from

18   hearing the motion for determination of tax filed by the

19   debtors under 505(a).

20        Taking the venue motion first, the venue motion

21   has a lot in favor of it.  It would make a lot of sense to

22   do it.  It would serve as a nice sort of balancing, I think,

23   of the debtor's legitimate desire, under 505, to have a, you

24   know, one stop shopping as a debtor in possession, invoking

25   a right they have under the code, to have a bankruptcy judge

1    determine tax amounts.  And it's right there.  There's

2    nothing improper about doing that.  And certainly, it would

3    be preferable to them, than having to go to seven -- well,

4    six different jurisdictions, with (indiscernible) seven

5    different (indiscernible).

6            It would also deal with what I think is a very

7    real issue in this case, which is prejudice to the taxing

8    authorities, to have to litigate these issues in Delaware,

9    which will prove to be very expensive.  And I think that's

10   legitimate and very important.  However, unfortunately,

11   given sort of the common sense that that makes, if it makes

12   common sense, you usually can't do it.  And I can't do it.

13   I don't have the authority to transfer a contested matter.

14           If you trace through the rules, and if you trace

15   through the statute, I can transfer a bankruptcy case, I can

16   transfer an adversary proceeding, I could transfer a

17   contested matter, I believe, to another division, if we had

18   another division in Delaware, which of course, we don't.

19   But what I can't do is transfer a contested matter to

20   another district.  So I simply don't have that authority,

21   which takes us -- so I'm going to deny that motion.

22           That takes us to the question for abstention, and

23   I am going to grant that motion, and I am going to abstain

24   from hearing the 505 tax motion.  The standards are your

25   general sort of laundry list of factors that courts

1    consider, whether it be under the six factor 505 test or the

2    12 factor under 1334.

3            Frankly, if you sort of trace through the factors,

4    that some matter more than others and they're not supposed

5    to be a score card.  They really can come down fairly even.

6    You know, I think I counted, you know, two to two on the six

7    factor test, with you know, two neutral, and I think it was

8    literally like, five and five on the 12 with two neutral.

9    So they really do split it right down the middle.

10           Where I really come down, though, I think, and

11   this is the real crux of the matter, is prejudice to the

12   taxing authorities.  The debtors will be in a situation that

13   they have been in pre-bankruptcy, and will continue to be in

14   post-bankruptcy, which is they own property in these taxing

15   districts.  They operate those plants.  And they are a

16   taxpayer.  And as a taxpayer, they are subject to having

17   their taxes determined by the appropriate entity and they

18   have, of course, their rights under state law, to contest

19   that and to have it decided by a court of law, to the extent

20   necessary.

21           There's nothing different that -- from what has

22   been done or what's going to be done in the future.  There's

23   a fight over the value of the property being appraised, and

24   that's something that could previously and could in the

25   future be done under state law.  They are properly invoking

1    505(a).  There's certainly nothing improper in trying to do

2    that.  And there are definite economic advantages to the

3    debtors, to having one forum decide these matters.  It

4    certainly is relevant to their bankruptcy.  It's a lot of

5    money, even in a big case like this.  Millions is still

6    millions.  And as a result, there is certainly something to

7    be said for allowing a debtor to invoke a substantive right

8    granted under the Bankruptcy Code.

9            At the same time, I think that the prejudice to

10   the districts is severe here.  These are counties, mostly

11   where I believe all, mostly rural counties in the State of

12   Texas, operating out of public funds, and operating on

13   limited budgets.  Of course, we're all under limited budget,

14   but there are discrepancies between the debtor's ability to

15   fund this, as opposed to the taxing authority's ability to

16   fund this.

17           These are very much local issues, dealing with

18   local property, local plants, and local tax basis and local

19   services.  And I think to require the taxing authorities to

20   have a long, expensive litigation and trial in Delaware will

21   add millions of dollars, and I--well, maybe not millions,

22   but I wouldn't be surprised if the numbers got close to a

23   million dollars in added expense that comes with having to

24   litigate this thing up here.  And it also creates an

25   inconvenience for their client--the lawyer's clients, etc.

1          This is, you know, a hard issue, a close issue,

2    but I think ultimately, it comes down to prejudice, to the

3    taxing authorities.  And in this instance, I think that

4    prejudice outweighs any costs or inconvenience for the

5    debtors.  So I don't take lightly abstaining from something

6    that I specifically have been granted jurisdiction to do.  I

7    don't take lightly refusing to do something the debtors have

8    legitimately asked me to do.  But I think given the facts

9    and circumstances of this case, and the substantial

10   prejudice that would, in your -- in against the taxing

11   authorities, that they were required to litigate this in

12   Delaware, that I am going to exercise my discretion to

13   abstain from hearing the motion.  And if you could -- oh,

14   unless there is an objection.  Well, I was going to say, I

15   can enter like, a two line order or I could have the parties

16   submit one under certification, however you want to proceed.

17          MR. HEHN:  Your Honor, for the record, Curtis

18   Hehn, no objection.  We did file a proposed form of order.

19   I have a copy of it.  If it would be appropriate to hand up-

20   -

21          THE COURT:  Well, that's -- I want one order to

22   deal with all the motions.  So--

23          MR. HEHN:  Okay.

24          THE COURT:  The Court will prepare an order.

25          MR. HEHN:  Okay.  Thank you, Your Honor.

1           THE COURT:  And enter an order.  With regard to

2    the partial motion to dismiss the 506(c) issue, that

3    motion's denied (indiscernible), since it doesn't have any

4    affect.  So the Court will enter an order to that effect.

5           And that resolves that issue.  Why don't we take

6    just a couple of minutes to re -- I've got to change my

7    papers around here.  And people who might want to leave can

8    do so if -- during a very short break, and then we'll turn

9    to the pre-trial (indiscernible).

10          MR. HEHN:  Thank you, Your Honor.

11          THE CLERK:  All rise.

12          THE COURT:  Please be seated.

13          MR. MCKANE:  Good afternoon, Your Honor, Mark

14   McKane, Kirkland and Ellis on behalf of the debtors, and I

15   apologize to raise one issue, as it relates to tax.  We

16   would ask -- the debtors would respectfully request that the

17   Court hold off on entering the order for 48 hours, so that

18   we have an opportunity to confer with our client.  We

19   recognize that what you -- that your preferred method was

20   to, if possible, transfer.  We're respectful of that, and if

21   there is a potential solution, we'd like to come forward and

22   present that to you.

23          THE COURT:  All right, did you talk with this --

24   with the others before they left, or--?

25          MR. MCKANE:  All I asked is, we will circle up

1    with them as we--

2          THE COURT:  I already submitted an order on the

3    certification of counsel.  That would give you an

4    opportunity to have a discussion.

5          MR. MCKANE:  All right, thank you very much.

6          THE COURT:  You're welcome.  But even if you

7    agree, I can't transfer a contested matter.  You'd have to

8    try -- you'd have to turn it into an adversary proceeding.

9          MR. MCKANE:  Yes, Your Honor.

10         THE COURT:  Okay.

11         MR. MCGAAN:  Good afternoon, Your Honor, Andrew

12   McGaan, Kirkland and Ellis for the debtor.  We are turning

13   now, if it's all right with Your Honor, to the pretrial.

14         THE COURT:  Yes.

15         MR. MCGAAN:  We have just a couple of matters to

16   cover, from our perspective.  And obviously, address any

17   questions Your Honor might have.  And I don't know if the --

18   our adversaries are going to have additional issues to put

19   in front of you today.  But I believe for purposes of the

20   pretrial, this is our agenda.

21         The parties have reached an agreement as to some

22   pretrial changes to some pretrial deadlines.  And that's --

23   deadline's original set forth in Your Honor's August 27th,

24   what we call a scheduling order.  It was an order of

25   confirmation protocols.  In paragraph 20 of that order,

1    permitted the parties to make some changes, if they agreed.

2    We've done that.  We filed that yesterday.  I'm happy to

3    review with Your Honor what the significant changes were, if

4    you're interested in doing that.

5              And there's one update.  There was an agreed

6    deadline that we learned this morning was missing from the

7    piece we filed yesterday.  So we're going to revise it and

8    file it again this afternoon.  There was an agreed deadline

9    for filing in limine motions that just didn't make it into

10   the piece that got filed yesterday, so we'll correct that.

11             THE COURT:  Okay, all right.

12             MR. MCGAAN:  Would you like me, Your Honor, to go

13   through what the key changes were in this?

14             THE COURT:  Yes.

15             MR. MCGAAN:  Okay.  The agreed conclusion for

16   expert discovery is May -- is May -- Monday, October 26th.

17   Time flies.  And then, with respect to objections to the

18   Rule 9019 settlement motion and the confirmation motion,

19   we've agreed that objections would be filed on Friday

20   October 23rd, and that replies would be due on October 30th.

21             THE COURT:  Okay.

22             MR. MCGAAN:  Pretrial briefs would be filed by the

23   parties on Friday October 23rd as well.  The final witness

24   and exhibit lists would be submitted on Monday October 26th.

25   The parties would prepare a proposed joint pretrial order

1    consistent with the rules, and file that on Tuesday October

2    27.  And then, a final pretrial conference would be held on

3    Wednesday October 28.

4            THE COURT:  And that's already on the calendar.

5            MR. MCGAAN:  Yeah, some of these overlap, that's

6    correct, Your Honor.  Some of these overlap with -- and

7    don't change from the prior order, and then, built within

8    that are some relatively minor modifications that the

9    parties agreed upon.  With respect to in limine motions, as

10   I just mentioned, the agreed -- the new agreed deadline for

11   that, it had been October 26th.  We've agreed to move that

12   to October 28.  That'll appear in the revisionable file

13   today.  And oppositions to in limine motions will be due

14   October 30th.

15           And then with respect to deposition designations,

16   designations in the first instance would be filed or

17   exchanged October 27th. Objections to designations and

18   encounters on October 29, and then, objections to counters

19   on October 30th.  While it's not set out here, Your Honor,

20   I'm confident as we've done previously in your court, the

21   parties will work on creating a final color coded set, so

22   Your Honor can see very quickly who designated what.

23           THE COURT:  Mm hmm.

24           MR. MCGAAN:  And then, we'll hopefully minimize to

25   the greatest extent possible, where the objections are that

1    we can point you to when you're prepared to rule on them and

2    want to be heard on that.

3              THE COURT:  Okay.

4              MR. MCGAAN:  That is -- otherwise, the prior order

5    remains in effect, and I think those are the principle

6    changes.  Maybe I've covered all of them.

7              THE COURT:  Okay.

8              MR. MCGAAN:  The other matter on our agenda to

9    cover today, Your Honor, the issues addressed in the letter

10   we submitted yesterday.  So the parties have talked about

11   some additional, or made an effort to come to an agreement

12   about some additional rules on how the trial's going to go.

13   And some of it is reflected in the order that I was just

14   discussing, dating back to August.  And then, there's some

15   tweaks to that, which we've been discussing.  And I want to

16   walk through those, because we don't have a complete

17   agreement.  We have an agreement on some of them.  None of

18   these are yet completely embodied in an order.  So

19   hopefully, we'll get there, maybe even today.

20              One thing we talked about is the ordering of

21   evidence, because we have, as Your Honor knows, a

22   confirmation motion in front of you, to begin on November

23   3rd, but we also have a Rule 9019 settlement motion.  And

24   then, Your Honor has ordered that beginning November 30th,

25   he would hear the reinstatement issue.  So that breaks out

1    into what we're calling a phase one and a phase two.

2              Within phase one, there will be witnesses that

3    debtors will call, who -- a number of witnesses, who will

4    have testimony that goes to both motions that are before

5    Your Honor.  So we've talked with, and I think we have an

6    agreement on this point, that we would call those witnesses

7    once.  So they would take the stand, their direct testimony,

8    their cross examination would go to any and all of the

9    issues under the confirmation motion and under the Rule 9019

10   settlement motion.

11             The reason we proposed that, it just seems the

12   most efficient of all.  Otherwise, you need to break that

13   phase one into two subparts, and you end up recalling a lot

14   of witnesses.  Your Honor's carved out 10 trial days in

15   November, as you know.  We've got a plan here, and I think

16   we're in -- largely in agreement again, with the objecting

17   parties, about how to get the evidence in on those two

18   motions, in that time.  And this would greatly help, if it's

19   acceptable to Your Honor, that we call the witnesses once.

20             And in closing argument, and in post hearing

21   submissions, we would undertake to separate out what

22   evidence goes where, and address that more specifically.  So

23   I'll just add, I think we have an agreement on that, as

24   well--

25             THE COURT:  And then, if there were witnesses who

1    testified in phase one and testified and it was relevant in

2    this phase two, they would re -- recall to testify on the

3    stuff that's on phase two?

4            MR. MCGAAN:  Yes, yes.  That, that's the way we

5    look at it now, that we're not suggesting that it would not

6    be brought back to focus -- and it's going to be a much,

7    much smaller set of witnesses, maybe a very, very truncated

8    proceeding.  But we would -- we're not suggesting that we

9    refer back to this phase one evidence.  We'd bring them back

10   to address specifically the issues that were raised--

11           THE COURT:  All right.

12           MR. MCGAAN:  --by the reinstatement, the

13   reinstatement option.  The parties have also agreed, and

14   this is embodied in the order dating back to August, that

15   there'll be trial time here, monitored by a chess clock.

16   And it would be divided equally between the plan supporters

17   and the plan objectors.  So that leaves the question, now

18   that we know that trial time that you've opened up on your

19   schedule in November, how many hours and how to manage that,

20   so everyone can plan accordingly.  Because again, I think

21   there's a broad agreement that -- among all the parties,

22   that we can get this evidence in.  But how do we manage it

23   so we planned properly and do it efficiently?

24           We got down to is our letter to Your Honor

25   yesterday, explains we suggested 50 total hours of trial

1   time.  The objecting parties wanted 60.  And so, we thought

2   we were being brilliant in coming up with a split the baby

3   and suggest 55 total hours, that's 27 and a half hours per

4   side.  And our proposal and what we'd ask you to adopt, Your

5   Honor, is that that would encompass all trial time.  So

6   whether we're at the podium arguing, a motion comes up in

7   the middle of trial, or you've got a witness on the stand,

8   you've got your 27 and a half hours to work with.  And we've

9   figured out a way to keep -- a fair way to keep track of

10  that.

11          That means, over the course of, you know, I'm

12  going to stick with my higher math here, over the course of

13  10 trial days, five and a half hours of trial time a day, on

14  average.  And we think given Your Honor's earlier comments

15  about how you intend to proceed each day, I think that's

16  easily, easily doable.

17          So one of our requests here this morning is that

18  you direct the parties to operate within those time

19  constraints and plan their witnesses and the duration of the

20  examinations to make it all fit.  Another issue, and there's

21  only just a few here, that really goes to the same issue is,

22  how do we do this efficiently?  How do we get this evidence

23  in?  There's plenty -- I don't want to say plenty -- but

24  there's certainly time to get it done.  And one of the ways

25  to assist in doing that, is already again, embodied in the

1    order that Your Honor enter, and that is that the parties

2    may submit direct examinations in writing.  And there's some

3    changes to that, that we'd like to propose to make it easier

4    for everyone's planning.

5              Firstly, we're suggesting that if a party's going

6    to -- if a witness is going to be put on by written direct,

7    that there be 48 hours' notice, provided to the other side,

8    I think we have agreement on that concept, with the

9    objecting parties.  But here's the part I like to focus on.

10   What we're proposing, we don't have agreement on this, but I

11   do think, and I'll explain why it makes a lot of sense.  We

12   think that any party calling a witness may, at its option,

13   submit all or just a part of the direct in writing, as a

14   time saver, and retain the option of putting the witness on

15   and consuming some of the predetermined trial time, to offer

16   some live testimony as well.  And that provides a number of

17   advantages.

18             Firstly, the -- there's no prejudice to anybody by

19   that.  The written directs two days before a witness takes

20   the stand is nothing but an advantage for the cross examiner

21   and a time saver for all parties and the court.  If you

22   submit, as will happen in this case, where we believe,

23   particularly with respect to the 9019 motion, there's some

24   significant and potentially time consuming fact information

25   that needs to be put into the record and brought to the

1    Court's attention.  A lot of it is not going to be

2    controversial.  A lot of it won't be objected to, but

3    there's information about different transactions that are

4    being settled or proposed to be settled in this motion.

5            And we'd like the opportunity, and we think it

6    makes a lot of sense, to have a witness put in in writing,

7    for example, a good bit of that information, and then, maybe

8    take the stand and have that witness testify live about his

9    or her role in the settlement negotiations or his or her

10   considerations as an employee of the debtor, of why they

11   believe the settlement makes sense for the debtor and why

12   alternatives didn't make sense.

13           That's important.  We wouldn't do it for every

14   witness.  There may be a number of witnesses that would go

15   in entirely by written direct, because of the judgment of

16   the trial lawyers and the pace of the trial.  But as Your

17   Honor knows, things come up during the trial that require

18   some flexibility and there may be a witness that testified

19   the day before.  There may be a testimony elicited on cross

20   examination that the next witness is logically in a position

21   to address.  And we wouldn't want to be locked in or

22   revising written directs, and living in the world that the

23   objecting parties have proposed, which is an all or nothing

24   world.  Either you do the entire direct live or you do it

25   entirely in writing.

1          So our proposal is, let's just have the

2     flexibility to do as much of the direct in writing as we

3     feel necessary, using our limited time as we see fit.  And

4     of course, the other parties would have that -- the right to

5     do the same thing.  So that is a proposal -- again, we

6     didn't reach agreement on that one, and we'd ask Your Honor

7     to direct the parties to operate in that very way.

8          Another, maybe ultimately a small matter, but we

9     want to get some clarity on it, we've proposed, in order to

10    maximize the time that we have available to us in this

11    courtroom for the presentation of evidence, that the parties

12    not give opening statements.  Now this is clearly something

13    that is utterly, as (indiscernible) your discretion, Your

14    Honor, so we really look to you to see whether after the

15    volume of written materials that will be put in front of you

16    this month, laying out the parties' positions and the scope

17    of the hearing and the issues that they believe we need to

18    consider, whether it would be valuable to take up time

19    beginning out of the box on November 3rd, with opening

20    statements.  And the objecting parties speak for themselves

21    and have proposed brief openings.  We'd just like to get to

22    the evidence, so that's another proposal we've made that we

23    don't have agreement on, that we dispense with openings, if

24    that's acceptable to Your Honor.

25          If it's not, and you want to hear from the part --

1    the lawyers at that time, we obviously will have to adjust

2    accordingly, and I think that would be time in that

3    situation that ought to come out of the allocation of trial

4    time that we're talking about.  So the only -- so those are

5    the issues with respect to the proceedings at trial, and

6    some of the management issues that we could, as Your Honor

7    reacts to these, and let's us know where you'd like to go,

8    further modify the order so everyone's working off of the

9    same page.

10           The only other issue for today is the -- from our

11   perspective, is the question of whether the trial on the

12   confirmation motion and the settlement motion should be

13   interrupted or delayed by a hearing on the EFH legacy bond

14   make-whole motion, that's a motion for partial summary

15   judgment that was filed just last week.  And Mr. Pedone

16   submitted a letter on behalf of the EFH legacy bond trustee,

17   arguing that we can't do any of this.  We can't get to trial

18   until his motion for partial summary judgment is resolved.

19           And we strongly disagree with that.  The hinge

20   point for his argument seems to be that in terms of how this

21   ought to be scheduled, is an argument that the plan the

22   debtors filed here constitutes an objection to his make-

23   whole claim, to the trustee's make-whole claim.

24           And as such, Your Honor can not enter a

25   confirmation order, if you're inclined to do so, at the end

1    of the evidence -- can not do so until you resolve the make-

2    whole claim.  Now there's more to their claim than just a

3    claim to a make-whole.  There's post petition interest.

4    There's fees.  There's costs.  There's an OID component

5    here.  And so, their motion doesn't even seek to address all

6    of their claim, but it is a misreading of the plan to say

7    that we can't get to a confirmation without Your Honor

8    deciding the make-whole claim.

9            Our proposal is that we conduct a discovery that

10   it's not a lot, but we need to conduct some discovery with

11   respect to this claim, and that we find the time after the

12   confirmation proceedings to address that, to litigate that.

13   And either it gets resolved or we have an issue we have to

14   put in front of Your Honor.  But I want to come back to what

15   the plan provides.  The language in both the disclosure

16   statement and the plan do say that to the extent there is

17   not a make-whole proceeding underway, that the plan itself

18   constitutes an objection to make-whole claims that are out

19   there.  But it carves out all instances in which there's

20   been an objection to the make-whole, and provides that they

21   will be addressed in the context of their own respective

22   proceedings, which is what's happened here.

23           The debtor's filed yesterday, a claim objection to

24   all aspects of the EFH legacy bond claims every piece of it,

25   not just the make-whole piece.  So while we've objected to

1    the make-whole claim under two of the three series of BFH

2    legacy bonds, there's a third one that is not in dispute

3    with respect to the make-whole.  And I think we're in

4    agreement with the trustee on this, the time has passed.

5    There is no make-whole claim there.

6             But with respect to two series, the Q and the R

7    series, there is.  We've objected also to their claim for

8    post petition interest at the contract rate, objected to

9    their claim for post petition fees, expenses and an

10   indemnity claim.  We've objected to the amount, the

11   principle and accrued interest that they're claiming.

12   There's a factual dispute there.  That may be something we

13   can work out, but it's got to be determined.  And we've

14   objected to the OID amounts, which are not recoverable as

15   un-matured interest, and there'll be a little bit of

16   discovery that we need to take on that.

17            So as a practical matter -- and now again, I'm

18   going to come back to the language of the plan -- but as a

19   practical matter, the idea that someone in the trustee's

20   position would file just last week, a motion for partial

21   summary judgment and insist the confirmation proceedings,

22   which have been the subject of discussion here for months,

23   would be held up until his single issue is decided,

24   including the discovery that needed to get done and the

25   briefing, in this latter half of October, where everybody is

1    preparing and conducting the expert discovery and doing what

2    they need to do to get ready for the confirmation

3    (indiscernible) makes no sense at all.

4           Now, the language of the plan and the disclosure

5    statement.  The disclosure statement defines -- and I've got

6    the -- I'm going to refer to just one place in the

7    disclosure statement and one place in the plan.  And I've

8    got a copy that flags where they are, if you want me to hand

9    those up.

10          THE COURT:  Sure.  Thank you.

11          MR. MCGAAN:  And I'm going to start with the page

12   -- on page 15 of the disclosure statement.

13          THE COURT:  Mm hmm.

14          MR. MCGAAN:  This was filed on -- this is docket

15   number 6124.  And there is, in Section 2(a), and 2(a)'s

16   objections to make-whole claims, there's first a -- the

17   second full paragraph Your Honor, there, is a definition of

18   what we're talking about in the disclosure statement, when

19   we refer to make-whole challenges.  And it talks about the

20   debtors having objected or otherwise challenged certain

21   make-whole claims or will object or otherwise challenge

22   make-whole claims, asserted by the holders, of among others,

23   the EFH legacy no claims that we're talking about right now.

24          And those make-whole claims, together with the

25   others in this case, are collectively referred to as make-

whole challenges in the disclosure statement. And this language, by the way, was heavily negotiated with the make-whole claimants, including the EFH legacy bond trustee. So the sort of the operative provisions that talk about what the debtor’s intention is here, with respect to litigating those challenges, and then we’ll turn to what the plan does to implement that.

But it says that the following applies to the make-whole claims other than those that are the subject of make-whole challenges. So it’s talking about make-whole challenges other than, or make-whole claims other than the EFH legacy bond claims. And in that instance, it talks about the filing of the plan, constituting an objection to the make-whole claim, again, not the EFH legacy bonds, and that we could litigate it, and the way they’re arguing it should be litigated now, by objecting to the plan.

It says in the last sentence of that paragraph, Your Honor, “For the avoidance of doubt, the make-whole challenges shall be addressed in the context of their respective proceedings.” That claim objection is now on file. There is to be a separate and should be a separate proceeding on that make-whole challenge, and it is not -- it is not within the notion of the plan being an objection to the claim. And so, the plan itself, Your Honor, and now I’m at page 80 of the plan that was filed on September 21. This

1    is docket 6122.

2           And similarly, in -- I'm now in the last paragraph

3    on page 80, except as specifically provided as allowed

4    claims, obviously not what we're talking about here, "or

5    otherwise objected to by the debtors in the Chapter 11

6    cases."  And then, it goes on to describe how the plan would

7    then constitute an objection to the make-whole, "well, we

8    have otherwise objected to the EFH legacy bond claim." And

9    consistent with the disclosure statement that was negotiated

10   with the trustee, it is not part and parcel of the plan.

11   There is no plan language in short, that drives us to

12   having, and this Court having, to decide the make-whole

13   claim before November 3rd or on November 3rd, in lieu of

14   proceeding with the confirmation and settlement hearing.

15          So we suggest that what we -- the parties should

16   be directed to do is work together on completing the

17   discoveries that ought to be done.  Again, I'm not

18   suggesting it's an enormous amount, but there is some to

19   prepare the record on some aspects of this claim, namely,

20   the amounts of the claim and the OID issue.  And then, find

21   a time in consultation with chambers, when to the degree we

22   can't work things out, that we need to put it in front of

23   Your Honor afterwards.

24          Now there's another aspect of the trustees'

25   argument here that I'd like to address, and that is that the

1    debtors should be directed to make a determination now about

2    whether they're going to seek to reinstate those claims.

3    And this is odd.  It's a little out of time.  We -- Your

4    Honor has set a schedule to litigate whether the debtors

5    have the right to reinstate.  And the benefit of that, if we

6    prevail and are entitled to pursue a reinstatement option,

7    if necessary, we move to the period after the plan, and

8    assuming, just for the sake of argument on scheduling here,

9    assuming Your Honor confirms the plan -- and then, there's

10   going to be a period of time before the effective date.

11           And the plan, the plan's effectiveness is

12   conditioned on denial of the make-whole.  That's true.  If

13   Your Honor concludes, after the confirmation proceedings,

14   that they're entitled to a make-whole, why if we were

15   successful in obtaining the right to reinstate, which we

16   believe we will be, debtors have a fail safe or a fallback.

17   They can simply reinstate, if they're entitled to a make-

18   whole.  If they're not entitled to a make-whole, they need

19   not reinstate the plan, at least with respect to that

20   precondition can go effective.

21           So none of this has to happen in the next two or

22   three weeks.  None of it has to get in the way of the

23   preparation of the confirmation, settlement trial, or take

24   up court time in November in lieu of proceeding with the

25   motions that have been on schedule for a while.

1          So for those reasons, we ask again, that with

2    respect to the motion for partial summary judgment, now

3    subject to a claim objection, that we file that's broader,

4    it covers the entirety of their -- of the disputed issues

5    with respect to their claim, the parties simply be directed

6    to work out whatever the discovery is, work out a timing

7    that we can propose to Your Honor, and not, again, interrupt

8    these proceedings for which, quite frankly, we really need

9    the time to get the evidence in.

10          THE COURT:  Does someone else wish to be heard?

11          MR. GOREN:  Good afternoon, Your Honor, Todd

12    Goren, Morrison and Foerster on behalf of the TCEH

13    Committee.  Just very briefly, Your Honor, we support the

14    debtor's position on all the open issues as to the

15    scheduling order and the pretrial issues.  Just one brief

16    point on the EFH trustees' motion, I think it's also

17    important to note that the summary judgment motion they

18    filed is also not timely, under rule 7056, which requires

19    that the motion be heard -- be filed within 30 days of the

20    start of the evidentiary hearing.  They filed their motion

21    on October 7th.  The first day of confirmation is November

22    3rd.  So I think that sort of reiterates the point,  that

23    you shouldn't have to be cramming in extra stuff during this

24    period of time before trial, when people are very busy doing

25    other things.  So for that additional reason, we also think

1    the motion should be put off and heard in conjunction with

2    (indiscernible).  Thank you.

3              MR. PEDONE:  Your Honor, Richard Pedone.  I'm

4    going to address the issues related to the trustee and we've

5    coordinated with the Committee with regard to the other

6    scheduling issues.

7              THE COURT:  All right.

8              MR. PEDONE:  Your Honor, this is not about what's

9    in the disclosure statement and what may or may not have

10   gone out as a description, we put on the record what we

11   believed of the disclosure statement and its applicability.

12   It's about what's in the plan.  And as we stated in our

13   letter, they unequivocally made an objection to the claim

14   within the plan.

15             THE COURT:  No, they didn't.

16             MR. PEDONE:  Your Honor, rely on the quote that I-

17   -

18             THE COURT:  Well, I know what I'm reading.

19   "Otherwise objected to by the debtors in the Chapter XI

20   case."  They objected.

21             MR. PEDONE:  At the time the plan went out, Your

22   Honor, they had not objected.  So I understand--

23             THE COURT:  It doesn't say, "At the time."

24             MR. PEDONE:  Your Honor, I understand.  They've

25   now objected.

1              THE COURT:  Right.

2              MR. PEDONE:  And so, the question is, what are the

3     issues for confirmation?

4              THE COURT:  Right.

5              MR. PEDONE:  So an issue for confirmation is

6     whether or not the plan is feasible.

7              THE COURT:  Right.

8              MR. PEDONE:  And whether or not they'll be enter -

9     - able to enter the typical order at the end of the

10    confirmation process, that would state that the plan is in

11    fact not likely to be followed by further reorganization,

12    meaning, in essence, is the plan feasible?  Condition number

13    nine in the plan is a condition to consummation.  So I would

14    assume, that as part of the debtor's case, they are going to

15    say, "We are going to be able to clear condition number

16    nine."  Clearing condition number nine requires the

17    disallowance.  Or, it requires them to say, "We're not

18    putting evidence in that we're going to obtain the

19    disallowance at a later date.  We're going to rely on the

20    reinstatement option."

21             But the plan that is out, the plan that is --

22    they're attempting to confirm, contains a condition

23    precedent, and it's their burden to prove that they can meet

24    conditions precedent to consummation.  And I'm quite certain

25    they're going to try to put in a record and get findings

1   that they can meet the conditions to the plan going

2   effective.

3          And that triggers, and that puts us in this odd

4   procedural situation, that triggers the need for evidence

5   and the need to address the merits of the claim in some way.

6   I believe it requires them to prove they'll obtain the

7   disallowance.  So do we have to litigate these issues twice

8   or do we turn to the merits?  The motion for summary

9   judgment was a motion filed, concerning the claim, and

10  concerning condition precedent number nine.  We believe it's

11  (indiscernible) legal issues.  It's well laid out in the

12  motion.

13         In prior proceedings, they've argued that these in

14  fact are legal issues.  I think this is the first time that

15  the debtors have said, "In connection with a make-whole that

16  actually needs some discovery."  That's news to us.  And

17  that's the crux of what we're looking for, is what will the

18  stage be for confirmation with regard to this claim--?

19         THE COURT:  How can you possibly expect me to

20  decide the merits of summary judgment motion on this kind of

21  schedule?

22         MR. PEDONE:  Your Honor, that would be why when we

23  were discussing the disclosure statement in the plan, I

24  asked them -- and for six months now, they've said, "When is

25  the claim objection coming?"  I understand--

1          THE COURT:  And that was in September, and you've

2    waited until, or August, and you've waited until October 7th

3    to file a summary judgment motion.  These are not new

4    issues.  The--

5          MR. PEDONE:  Your--

6          THE COURT:  This plan was filed August 10th.

7          MR. PEDONE:  In our claim, the (indiscernible)

8    objected to, in--

9          THE COURT:  All right.  I just--

10         MR. PEDONE:  I (indiscernible) you understand my

11   position, Your Honor.

12         THE COURT:  I understand your position, I just --

13   it's a practical impossibility for me to decide a summary

14   judgment -- I mean, briefing even won't be done until days

15   before the hearing.

16         MR. PEDONE:  So Your Honor, I'd asked for guidance

17   with regard to how we are going to manage evidence

18   concerning condition precedent number nine for the plan.

19         THE COURT:  Right.

20         MR. PEDONE:  That's a practical thing that we need

21   to work through.  It doesn't have to be done today.  There's

22   another pretrial, but that's a reality.  They need to say,

23   "Will they be presenting evidence on that condition?  Is

24   there going to be evidence of waiver on that condition?"

25   which we inquired about in discovery and found no evidence

1    that anybody has begun discussing that condition.  There's

2    no evidence that the rein--

3              THE COURT:  Well, let me ask Mr. -- now let me ask

4    Mr. McGaan.

5              MR. PEDONE:  Thank you.

6              THE COURT:  What are you -- how do you deal --

7    what's your response to this argument, which is, look, a

8    condition to going effective is not having to pay make-

9    wholes.  So how do you deal with that in the context --

10   what's your response to the argument?  How can you prove up

11   feasibility in your confirmation hearing, without making a

12   record on whether you can satisfy that condition to

13   (indiscernible)?

14             MR. MCGAAN:  There is a variety of ways Your Honor

15   can deal with -- that we can deal with it.  One is that they

16   will have briefing on the briefs are -- have been filed, our

17   substantial brief from the claim objection.  You've got a

18   substantial brief in support of the motion for partial

19   summary judgment that lays out the legal issues.  But there

20   is no need to make a decision about that during the

21   confirmation trial itself, or at the conclusion of it.

22   We've got to get to the reinstatement piece.

23             If we're entitled, if we have -- the debtors have

24   the option to reinstate, they view that as an opportunity

25   that if later, Your Honor, before effectiveness, before the

1    effective date says, "The make-whole's due here," this is

2    different than the other issues you've dealt with in this

3    case, make-wholes do, which is the argument they're making.

4            Then we would simply reinstate or if the

5    reinstatement option is for some reason unavailable and the

6    make-whole is awarded, the parties, as the witnesses have

7    testified already, would confirm amongst one another,

8    because at that point, by the language of the plan, it

9    couldn't go effective. They would have to modify or waive

10   that condition at that time to meet the requirement.

11           But pointedly to your question, what is it you

12   have in front of you to look at feasibility?  The

13   possibility of a make-whole claim of an amount of...  Say

14   this right...  Our belief that the make-whole claim -- I

15   don't think it's set out in Mr. Pedone's brief but if we

16   assume an end of March 2016 emergence about a $195 million

17   claim, you would look at that in terms of if that were to

18   become due and owing and the debtors had no other way to

19   avoid paying it a la reinstatement, is the plan nonetheless

20   feasible?

21           So, one of the things you would look at -- you can

22   have the briefs, you can look at the weight of the

23   arguments.  We don't need to put evidence on during the

24   conversation trial itself with regard to the merits of that

25   claim.  We can have a proceeding afterwards.  And it's being

1    set up in a way to create options, as I've described.

2    Reinstatement, renegotiation, or waiver of the condition.

3              THE COURT:  Okay.

4              MR. PEDONE:  I don't have anything to add other

5    than it's an issue that needs to be addressed.  And we do

6    feel firmly it will be their burden to put evidence on that

7    they can satisfy conditions precedent, and we can address it

8    as we go forward.

9              THE COURT:  Well, I'm not going to hold up

10   confirmation for the summary judgment motion, so I'm not

11   going to grant your request that I either hear that sort of

12   as a preliminary matter or, you know, in lieu of, or

13   anything like that.  I'm just not going to be in a position

14   to do that kind of legal work on the schedule that you asked

15   for.  And I'm not going to be forced into it by whatever

16   position you find yourself in.

17             With regard to conditions to go effective and

18   whether they have to show that those conditions are

19   satisfiable in order to make a record on feasibility, I do

20   think they're going to need to make an evidentiary record

21   that they can either satisfy the conditions, or if they

22   can't, what the effect would be.  So, along the lines of

23   what Mr. McGann was saying -- if they make a record that if

24   I decide there's a make-whole and they can't reinstate, and

25   it's $200 million, and they're left with a situation of does

1    the plan either fail or do they decide to pay...?  And I

2    think the feasibility argument that comes into play there is

3    going to be whether they're going to be able to afford to

4    pay if they're put in that situation.

5            So, I don't think I need to decide a make-whole...

6    I don't think I need evidence on the specific enforceability

7    of the make-whole or not to make a finding of feasibility,

8    but I certainly will need some evidence that indicates what

9    would happen were I -- what would the financial effect be on

10   the plan and the feasibility of the plan if I were to rule

11   the money was due?  So I think that's a different issue than

12   me actually making a substantive ruling as part of

13   confirmation and as part of the feasibility finding that

14   you're owed your make-whole or not.

15           MR. PEDONE:  I understand, Your Honor.  On the

16   evidence -- there is no evidence that parties -- we ask

17   these questions at depositions -- are parties evaluating

18   waiver or are parties evaluating paying.  And we could go

19   back to --

20           THE COURT:  Well, I think you can explore that.  I

21   mean, I think that's something that you would be able to

22   explore as part of the feasibility analysis, which is -- you

23   know, is it realistic as part of the feasibility analysis --

24   you know, is it realistic for the debtors to get up and

25   argue "Look, if you say it's due, we've got an option.  It

1    either all fails -- it all falls apart for $200 million, or

2    everybody agrees that we can waive it." And you can

3    certainly cross-examine on that.  Well, nobody's talked

4    about that.  How can it be legitimate to even argue that

5    everybody could agree to waive it when nobody's even had a

6    discussion?  I think that might go into feasibility, as

7    opposed to getting into the merits of your particular

8    indenture and, you know, what it says or doesn't say, and

9    whether that make-whole is specifically enforceable or not.

10   I think I can decide that at a later time.

11             MR. PEDONE:  Okay.  Your Honor, I'd just like

12   to...  This is against the backdrop of Mr. Loria's comments

13   when we had a discussion concerning reinstatement at the

14   pretrial.  And his words were -- and this is what the

15   evidence from the witnesses showed, as best as witnesses

16   testified about things they hadn't analyzed:  "We have

17   always required from an investment standpoint that the make-

18   wholes have to be disallowed or not paid."  Period, full

19   stop.  And that's what the plan provides.

20             THE COURT:  I know he said that.  Yeah.

21             MR. PEDONE:  And so now we're talking about a

22   trial at which they might put new evidence of other things

23   in, they might try to satisfy condition precedent number

24   nine in a different way, and it will be very fluid and I

25   understand Your Honor's guidance that we're going to have to

1    deal with that.  And I don't necessarily believe that's a

2    fair process.  I think we should have the plan laid out that

3    we're litigating against at the start of confirmation.  But

4    I hear, Your Honor.  Thank you.

5            THE COURT:  You're welcome.  Mr. Gluechstein?

6            MR. GLUECHSTEIN:  Good afternoon, Your Honor.  For

7    the record, Brian Gluechstein, Sullivan & Cromwell on behalf

8    of the EFH Committee.  I just want to address a few of the

9    points Mr. McGann raised in the letter they submitted last

10   evening with respect to some of the broader nuts and bolts

11   about the trial and the process we're trying to work out.

12           We have been working constructively with the plan

13   supporters, with the debtors in an ongoing dialogue on

14   resolving the scheduling issue and trying to make this trial

15   work in the most efficient manner possible.  Everybody here

16   is in agreement that we want this to proceed as efficiently

17   as possible and not take any more of the Court's time than

18   is absolutely necessary.

19           The problem with the request the debtors are

20   asking for today, and it flows from the request to lock in

21   today the total amount of trial time as a finite in-stone

22   number, is that we believe there's still much to be

23   determined before the start of trial, even though it's only

24   a few weeks away -- by the debtor's disclosure in advance

25   that's unknown today to objectors that will happen in

1    advance of the final pretrial conference in two weeks on the

2    path they intend to take on things like what issues they're

3    actually intending to put evidence on, with respect to --

4    and what witnesses they're going to call.  The fact

5    witnesses, as I think Mr. McGann alluded to, are by in large

6    the debtor's witnesses.  There are some of those fact

7    witnesses who are on our preliminary witness list will be on

8    our witness list to be called, even if the debtors were to

9    not bring them.  But the debtors at this point have

10   identified up to 21 witnesses that they may or may not call

11   at the trial, with a full reservation as would be expected

12   at this stage in a preliminary identification -- to add more

13   names, take names off the list...  And certainly a

14   connection with the pretrial order, there will be some

15   refinement, as is the purpose of it, about what the debtor's

16   case is that they're going to put on in chief in advance of

17   the trial.

18          And so the discussions that the plan objectors had

19   around numbers, we certainly are fine with the working

20   proposition that the 55 hours or so that is allotted by the

21   Court's current schedule should be appropriate or could be

22   appropriate if the debtors focus on the issues we think

23   they're going to focus on and bring a reasonable number of

24   witnesses and evidence into the record that go to those

25   issues.  But we simply don't know that yet.  And our

1    concern, Your Honor, is that the requests today are going to

2    prematurely impose limits that are talked about in the

3    context of efficiency, but really only serve to limit the

4    ability of objectors to cross-examine witnesses, and that

5    would potentially prejudice us, not yet knowing how the

6    debtors intend to proceed at the trial.  And we do submit,

7    Your Honor, that if they choose to bring all 21 witnesses

8    that would then require cross-examination in addition to

9    affirmative evidence that the objectors are going to need to

10   put on, that would require a different amount of trial time

11   than if they brought some much smaller subset of those

12   witnesses.

13          In addition, Your Honor, as Your Honor knows,

14   there are already identified a number of known objectives,

15   many of whom have objections that raise issues that are

16   unrelated to one another.  Other parties may still file

17   objections.  The objection deadline is on the 23rd of

18   October.  So, the committee -- we have undertaken to

19   coordinate with all the objectors the time, the allocation

20   of time as best we can with respect to the cases that the

21   objectors are going to need to put on, with the shared goal

22   of trying to streamline things as much as possible.  But we

23   do believe that setting in stone today a 55-hour or some

24   other limit is premature.  And we would ask, Your Honor,

25   that while we are working towards that assumption and

1    planning for that assumption that we actually consider that

2    issue and whether there is additional trial time that might

3    be necessary at the final pretrial conference when more is

4    known about the case that the plan supporters are going

5    (Indiscernible).

6           With respect to the phasing issue that Mr. McGann

7    raised, we are okay certainly and in agreement conceptually

8    that we can call the witnesses, the fact witnesses in Phase

9    1 that would be without prejudice to (Indiscernible) back in

10   Phase 2 on the reinstatement issue.  I think there's

11   agreement on that point, as Mr. McGann alluded to.  We do

12   think -- and my understanding is certainly the witness would

13   appear if the objectors have subject to direct, they go

14   beyond the scope of cross, we would ask those questions.  We

15   do think there has to be at least the contemplation -- I

16   hope it would not be necessary -- that given events that

17   transpire later in the debtor's presentation of evidence,

18   that there be some ability, if the need were to arise, to

19   address -- you know, bring a witness back to the stand on

20   additional issues, should that prove necessary.  We would

21   anticipate that not to be the case.  But, again, we don't

22   think there should be a finite rule on that point entered

23   now.

24          A few other points Mr. McGann raised, Your Honor.

25   On the allocation issue, 50/50 was in the order that is

1   currently in place.  We certainly agree that that should be

2   the baseline, assuming witnesses on both sides were going to

3   testify a lot.  The allocation becomes an issue, in our

4   view, when we start talking about the next piece that the

5   debtors have proposed, which is the subject of written

6   direct testimony.  We certainly do not oppose, for

7   efficiency purposes, the request to have the option to put

8   in written direct.  The committee does believe, however,

9   that the party should choose how they're going to proceed

10   and that choice should be made sufficiently in advance as to

11   whether they're going to call the witness live or submit

12   direct testimony.

13          Under the debtor's proposal, as Mr. McGann walked

14   through it, they can choose to put in a lengthy written

15   testimony without taken any of their allotted trial time,

16   and it still presents selected portions of testimony live

17   utilizing their 50 percent of the in-court time.  The

18   objectors, on the other hand, without that opportunity to

19   put in directs of their witnesses, will need then to cross-

20   examine the witnesses with all of that cross-examination

21   under their proposal counting against this finite set of

22   time that we have allotted under the schedule.  And so the

23   result of that, Your Honor, as we see it is it allows the

24   debtors and the plan supporters an opportunity to manage any

25   time constraints in a way that's not available to the

1    objectors.

2            And so, we do believe that to the extent that the

3    debtors elect to put in direct testimony for any substantial

4    portion of the witnesses that we should be revisiting the

5    question of whether 50/50 is the appropriate allocation or

6    whether more of the time should actually be allotted to the

7    (Indiscernible).  And so we do think that this written

8    testimony can save time and it's certainly possible that it

9    will save overall trial time, but again, this is an issue

10   that I think needs to be planned for and addressed in

11   advance, and it shouldn't be a piecemeal as we go decide

12   we're going to put some testimony in here on direct, we're

13   going to put some testimony on live while we retain 50

14   percent of the limited trial time that we're likely to have.

15           But, again, Your Honor, I think some of these

16   allocation issues -- this is all being caused by the idea

17   that the debtors want today to lock in a finite number at 55

18   hours to be allocated 50/50 for the trial.  And I think that

19   it's an issue that, frankly, is premature.  And I think that

20   we will continue to try to work with the debtors in the two

21   weeks before we're back in front of you to continue to work

22   through these issues as we work through other issues, but we

23   do think it could be prejudicial to pick a somewhat

24   artificial number today before some of the additional

25   disclosure's been made.

1          Just a few additional points, Your Honor.  On the

2   opening statement piece, we (Indiscernible) in the course of

3   the meet-confer, as did a number of other objectors, that we

4   thought very short opening statements, no more than 15

5   minutes, could be useful to the Court to frame the actual

6   issues to be tried at the trial, but we certainly defer to

7   the Court on that.  If the Court finds that helpful, we're

8   happy to do it; if the Court feels that the pretrial

9   submissions will be sufficient, obviously we'll defer to the

10  Court on that subject.

11          We continue to talk...  One of the subjects we're

12  continuing to talk to the debtors about is how to approach

13  trial issues, briefing, and closing arguments, which we

14  think are important to the story but we're not at a point

15  yet to be making proposals to the Court.  We'll address that

16  at the later conference.

17          One final issue, Your Honor, from our perspective

18  anyway -- and a technical one with respect to page limits.

19  Your Honor, the debtors have been provided in the scheduling

20  order relief from Local Rule 7007-2 on the 40-page limit for

21  their submission.  We're prepared certainly to make a

22  motion, if necessary, before the Court but we wanted to

23  raise the issue of relief from that rule on our side with

24  respect to our pretrial submission.  Given the scope of the

25  issues the committee is facing, we would appreciate the

1    opportunity to have additional length for our submission as

2    well.  If the Court would like us to make a motion on that,

3    we're happy to do it, but we thought that we might be able

4    to address that today as well.

5            THE COURT:  On that point, Mr. McGann, I assume

6    you have no issue with that?

7            MCGANN:  No objection to it.

8            THE COURT:  Yeah, I'm reluctant to give anyone

9    carte blanche on how many pages of briefing to do.  But the

10   issues are obviously complex, they're varied, they're

11   numerous, so I'm not going to require you to file a motion

12   or anything like that.  Any of the parties in connection

13   with that briefing can go as far and as long as they feel

14   they need to go.

15           MR. GLUECHSTEIN:  Of course, Your Honor.  It

16   certainly won't be more than --

17           THE COURT:  My eyes glaze over on page 222 but,

18   you know, I'll do the best I can.  And to address that point

19   on this idea of doing direct by writing and 48-hours'

20   notice, I'm not sure that works for me because I'm going to

21   want to have an opportunity to read the direct exam,

22   obviously, not in court -- so, you know, outside court

23   before the witness is put up for cross-examination.  So I'm

24   a little worried about getting jammed on that.  So I'm not

25   sure if we have trial Wednesday, Thursday, and Friday and I

1    get something Wednesday morning for a witness that's going

2    on Friday, you know, it just may be difficult for me to fit

3    the time in.  So, hopefully, maybe something where you can

4    frontload that a little bit more would be better.  But we

5    can talk about that more at the next hearing.

6            On this idea of mixing -- you know, I hear what

7    Mr. Gluechstein's saying.  He's afraid you're going to

8    frontload all your evidence, take zero time, and he's going

9    to be stuck with a limited amount of time to cross-examine

10   on a huge host of issues, only some of which you've put in

11   play and actually used time for and the other is all in

12   writing.  That might be fixable to a certain extent if we

13   get the written direct earlier than just 48 hours before

14   it's going to be used.  That seems tight to me.  I'll hear

15   from everybody.  I don't think I'll make any rulings yet.

16   I'll hear from everybody else.

17           MR. GLUECHSTEIN:  Thank you, Your Honor.

18           THE COURT:  So, who's going to go next?

19           MR. PEDONE:  May I comment on two logistics

20   issues?

21           THE COURT:  Yes, Mr. Pedone.  And then I'll hear

22   from Mr. Brody.

23           MR. PEDONE:  Your Honor, the pretrial order

24   contemplates pretrial briefs and objections.  We would like

25   to file a combined pleading that addresses typically what

1    you'd see in both in one pleading unless the Court had a

2    preference to see them separate.  So, in other words, we

3    object for these reasons -- we believe the evidence will

4    show, and then identify what's in the record or what we

5    expect in the record.  We can split it.  It's a question for

6    the Court's preference.  The parties had discussions and

7    weren't sure.

8              THE COURT:  If you want to put it -- I have no

9    preference one way or the other.  If it's -- an objection

10   for you can also be sort of a pretrial brief.  The debtors

11   aren't objecting so they either need to file a reply to your

12   objection or a pretrial brief, so I can understand how they

13   might want to do it in two different pieces.  But if you

14   want to do it in one piece, I don't care.

15             MR. PEDONE:  I do.  And with the relief on the

16   page number it becomes easy to make it -- what I believe

17   would be easier for you.

18             THE COURT:  Okay.

19             MR. PEDONE:  And then, second, with regard to the

20   trial time and the limits, I believe that this is something

21   that just needs to stay in flux until we actually see what

22   the debtor's case is and we see the staging.  They attempted

23   to argue in their letter for a higher standard, for example,

24   for bringing a witness back.  We believe these are things

25   that you should evaluate on the go during the trial, set the

1    guidelines now, but it's hard to nail them down.  Thank you.

2            THE COURT:  I definitely like the idea of a time

3    limit, and I like the idea of allocating that time limit,

4    and I like the idea of doing it ahead of time so that

5    everybody knows what it is and we can work our way through

6    that time.  I'm not sure whether 55 hours is appropriate.

7    60/50...I think that's something that's still in flux based

8    on how we move forward.  I'm going to set a time limit.  I

9    am going to maintain flexibility to allow people to get out

10   of that time limit.  Whether that'll be a cause standard or

11   some higher standard I haven't decided yet.  I'll think

12   about that.  But it can't be too easy where the time limit

13   becomes meaningless.

14            And we do have the ability -- I'm holding on --

15   people are screaming at me for dates in December and I'm

16   just not giving them.  I'm holding onto as many dates as I

17   can as long as I can to have some flexibility.  So I think

18   when we reconvene next time on a pretrial, we'll have a

19   better...  If you need 60 hours and that means we need to

20   add some trial dates, I think I'll have that flexibility.

21   But, obviously, my time's not infinite, your time's not

22   infinite, even the debtor's assets aren't infinite.  At some

23   point we've got to stop.  Yes.

24            MR. BRODY:  For the record, Josh Brody from

25   (Indiscernible) Eleven on behalf of the EFIH second lien

1    indenture trustee.  I actually was rising to address this

2    point primarily because -- and obviously, Your Honor's

3    addressed that it's not going forward today.  No decisions

4    are being made.  But just to sort of make sure Your Honor

5    understands from our perspective is -- the majority of the

6    issues that are going to take up most of the time really are

7    issues being raised by the EFH committee and the EFH

8    indenture trustee, which don't impact me at all.  And,

9    really, we are much more focused and much more narrow issue

10   related primarily to impairment, and I just want to make

11   sure people appreciate -- and we've mentioned this to the

12   debtors; I don't know if the conversations we have with EFH

13   committee -- that when they're talking about dividing up

14   time, the amount of time that we need is much more discrete.

15   But going to Your Honor's comment about --

16            THE COURT:  You don't want to be forgotten.

17            MR. BRODY:  Exactly right.  That doesn't happen to

18   me too often but I want to make sure.  Thank you, Your

19   Honor.

20            THE COURT:  That's a bit of a thorny issue, right?

21   How do we allocate up that time?  So, I definitely don't

22   want people to get squeezed.  And if there becomes a tussle

23   over -- say I said 30 hours, I'm just making numbers up, for

24   the objectors and you guys can't quite agree how that should

25   be allocated, you can always come to me, have an appropriate

1    time...

2         Mr. BRODY: Well, that kind of a thing.  And one

3    thing, I guess, to make it a little bit easier for Your

4    Honor, the EFI first liens are all sort of very similar in

5    terms of what our issues are with the plan -- we've been

6    trying to coordinate as much as possible.  So at least from

7    our perspective, we're not overlapping with each other.

8         THE COURT:  Okay.  Before I hear from Mr.

9    Schepacarter, just real quick...  What was I going to say?

10   Oh, opening statements.  I think they'd actually be helpful

11   if short, but they would certainly count towards your trial

12   time.  I don't want one of these Supreme Court confirmation

13   hearings where the first two days are Senators talking and

14   the witness just sits there.  I don't want it to be that

15   lengthy.  But I think if people want to pull stuff out in a

16   very focused opening, I think that'd be helpful to set the

17   stage.  But if you go through your whole brief, you're going

18   to be wasting our -- you know, I'm not going to let you

19   waste hours of time by going through your whole brief.  It

20   should be (Indiscernible).

21        The other thing is I know that over a lengthy

22   period of time, people have different duties.  They have

23   personal issues, they have other courts to attend to, they

24   have clients.  Certainly people should feel free to attend

25   or not attend as they are able to.  If you're not here and

1    something happens you don't like, I can't help you.  But if

2    you have to be somewhere else for another judge or for

3    whatever reason, you don't need to ask permission to leave.

4    That applies to anybody.  So I know you're all probably

5    doing this thing three or four people deep so that won't be

6    an issue, but I wanted to make that point.

7              And then I had a question -- has there been any

8    discussion about whether you're going to sequester

9    witnesses?

10             MR. MCGANN:  I'm not aware that we talked about it

11   but I'm looking to my...

12             THE COURT:  I'm not saying you should or

13   shouldn't.  I was just wondering if it had come up.  It

14   would be difficult, I think, but...

15             MR. GLUECHSTEIN:   Your Honor, we do have a view

16   on that.  I mean, in fairness, we have not discussed it with

17   the debtor yet.

18             THE COURT:  All right, well, why don't you talk

19   about it offline?  Obviously, there's an exception for

20   clients so we're not going to make you sequester your

21   client, even if they are a witness.  But I just wanted to

22   ask that question.  The other thing is, while I'm thinking

23   about it -- I had mentioned that I find it helpful in these

24   kind of things to have a brief morning meeting.  We were

25   talking about doing it at 9:30 in the conference room over

1    here.  Very much non-substantive, very much just procedural,

2    plan of the day kind of thing.  I can't fit all of you

3    people in that conference room, so we're going to have to

4    figure out -- maybe you guys can talk about it offline, but

5    obviously the debtors, and the proponents, and the

6    objectors, you start to get to a large number.  So we're

7    going to have to figure out a way to either limit the number

8    of representatives that are there or maybe the debtors can

9    bring two but nobody else can bring more than one.  And,

10   again, it's not meant to be substantive; it's meant to be

11   more procedural.  Keep that in the back of your head.  If

12   push comes to shove, we can use the library upstairs, which

13   can fit a lot more people but it creates an issue that

14   everybody's got to go through security again.  So, it

15   delays.  We just waste 20 minutes of trial time just getting

16   everybody back through the metal detectors, so I prefer not

17   to do that.  So, keep that in your head about figuring out

18   how you want to proceed.  Now I'll let you talk, Mr.

19   Schepacarter.

20            MR. SCHEPACARTER:  Thank you, Your Honor.

21            THE COURT:  Sorry.  I was on a roll.

22            Mr. SCHEPACARTER:  It was excellent because you

23   probably short-circuited some of what I was going to ask

24   for.  For the record, Richard Schepacarter for the United

25   States Trustee.  Today I'm joined by Andre Schwartz, my

1    colleague from our office.  The one issue I wanted to

2    address was -- and we've participated with respect to the

3    prepetition discovery, and the meet and confer, and all of

4    those matters -- and the one thing that I wanted to address

5    was the opening statement.  I thought that it would be -- at

6    least our position is that it would be very helpful to have

7    an opening statement, especially with respect to our issues.

8    Because our issues -- I don't think Your Honor has really

9    heard from us on those issues.  They were addressed briefly

10   In the disclosure statement, a little bit more in the plan

11   support agreement objection, but I think it would be very

12   helpful to hear from us, especially with respect to our

13   issues and the ones that we want to address, and to lay out

14   some of the facts for Your Honor with respect to the

15   otherwise legal issues, but there are some facts that go

16   with those.  So I thought it would be helpful.  And that's

17   really what I wanted to address today with Your Honor.

18   Thank you.

19            THE COURT:  Okay, thank you.  Mr. Shore?  Good

20   afternoon.

21            MR. SHORE:  Good afternoon, Your Honor, Chris

22   Shore from White & Case on behalf of the ad hoc group of

23   TCEH unsecured notes.  One of the great things about sitting

24   at this table is you get your fees paid; one of the problems

25   with sitting at this table is you have to pay everybody

1    else's fees apparently.  And in that regard, I mean, we are

2    a huge proponent for a very definite amount of time, and it

3    shouldn't be a use it or lose it time.  In other words, if

4    one side is being efficient and presenting its case in a

5    manner that is efficient, there's always a problem of

6    putting on a written direct, is that Your Honor may or may

7    not get the import of what's going on, and you can't react

8    to it.  People are being efficient and moving the thing

9    along as a means of keeping down expense -- that shouldn't

10   then seed time to the other side.

11            THE COURT:  Right.

12            MR. SHORE:  So we are very supportive of a

13   definite time limit.  Definite time limits get people to

14   focus, and get people to prepare, and get people to really

15   present to the Court only what needs to be presented.  In

16   that regard --

17            THE COURT:  We're going to have one.  Absolutely.

18            MR. SHORE:  Okay.  In that regard, just as part of

19   a pretrial conference, I'll update Your Honor on where we

20   are on the other part, the stuff that's not going on in the

21   courtroom.  We have reached a deal with 40 percent of the

22   PICS with respect to their claims with a withdrawal of any

23   claim for a make-whole and with a payment of an agreed

24   amount of post-petition interest.  We are going to be making

25   that offer open to all other PIC holders in advance of the

1    Tuesday hearing with respect to the make-wholes and,

2    hopefully, we can get somewhere with that.

3            We started a mediation today with the PCRBs.

4    Peter Borowitz has kindly agreed to help us mediate that,

5    and we are in the process of now starting discussions with

6    them.  They have identified more than 53 percent of the

7    holders and the principal, who is capable of negotiating.

8    So we're going to be moving forward on that.  We've also had

9    substantial discussions with FIDO, who holds about 70 --

10   more than 70 percent of the EFH legacy notes and about 40

11   percent of the EFIH second liens.  We have exchanged draft

12   agreements with them and we're moving forward on that.

13           All this is to say the existence of deadlines, the

14   existence of definite trial time, the scheduling, for

15   example, of a firm date on the second lien and PIC make-

16   whole disputes, all of that has a purpose and that purpose

17   is flowing through with results.  So, we would implore the

18   Court to keep everybody moving and let the Chapter 11

19   process outside the court work its course in conjunction

20   with what has to go on in court.  Obviously, our preference

21   is to come in on November 3rd and say, "We have a

22   comprehensive deal with everybody".  Whether we get there or

23   not, I don't know, but just this process, the scheduling

24   order and the scheduling of various dates, is, I want to

25   assure the Court, having its intended effect.

```
 1              THE COURT:  Good.  Always happy to hear that
 2      people are having substantive negotiations.  I mean, that's
 3      the whole point of Chapter 11, if it works right.  And I've
 4      said it before, I'll say it again: We are starting
 5      confirmation on...  I almost said the wrong day.
 6              MAN:  November 3rd.
 7              THE COURT:  November 3rd, come hell or high water.
 8              MR. MCGANN:  Andrew McGann, Kirkland & Ellis for
 9      the debtors, Your Honor.  Very briefly, thank you for the
10      guidance.  It's going to be helpful, I think, for the
11      parties to work out, hammer out the final details.  The
12      concept of building in more advanced notice on written
13      directs to address not only the issue Your Honor raised but
14      what Mr. Gluechstein raised about worrying about what's
15      going in the record -- I know Mr. Gluechstein wasn't
16      suggesting this.  It wasn't our intent to set up a procedure
17      whereby we could game anything.  Literally, it's a time-
18      saver.  And I think what we'll all see is that much of the
19      whole or partial written directs or putting evidence into
20      record is largely not in dispute to save time.  But we'll
21      work with the opposing parties, find a time and see if it
22      works for Your Honor so we can preserve that --
23              THE COURT:  Yeah, I'm okay with a mix of written
24      and direct orally.  I'm fine with that.  And I think that if
25      we have sufficient advanced notice of what the actual
```

1    written piece of it is, this opportunity to game the system

2    or this potential for prejudice to the objectors I think

3    will largely go away.

4              MR. MCGANN:  With respect to the challenge of

5    allocating time with multiple objecting parties, it worked

6    in the deposition process.  That was the agreement and it

7    played itself out in a very predictable and, I think,

8    efficient way.  Because witnesses who had things to say that

9    mattered more to one objector or another, we could see that

10   the parties have carved that time up and I think they could

11   do that...  I mean, there were no fistfights over that so it

12   seemed to work.

13             THE COURT:  I think it'll be fine.  I mean, I

14   think it's doable, but it's certainly something where if

15   there's...  The point I was trying to make is, you know, if

16   somebody feels like they're getting slighted or something's

17   going on, you always have the opportunity to come to me and

18   I'll make a random decision based on incomplete facts.

19             MR. MCGANN:  And then it's just, you know...  With

20   Your Honor's statement that you're going to set a time --

21   very, very helpful for all the reasons that have already

22   been stated, because people will plan ahead and be efficient

23   as a result.  But we didn't mean to suggest in making a

24   proposal -- in fact, I think all the parties in discussions

25   before we came here agreed that this evidence can all go in

1    before Thanksgiving.  But no one suggested that it would rob

2    Your Honor of the flexibility you maintain as you watch

3    things proceed.  If you felt something needed to be added,

4    you obviously have the authority to do that.  And you've

5    just said as much.  But going in with a default that this is

6    what we're all shooting for will discipline all of us.

7           So on the procedures, that's all I had to add here

8    at the end.  And then I just had, I guess, what's a

9    housekeeping matter.  And I neglected to mention with

10   respect to the corrected, amended scheduling order that

11   we're filing today, there was one other change that is not

12   reflected in what we filed last night.  But this pertains to

13   the deadline, Friday, October 30th for filing replies to

14   objections, to the settlement motion in plan.  The way it is

15   phrased currently is that that's a deadline for the debtors

16   to file their reply.  And it will be modified to make clear

17   that that applies to all plan supporters.  So, a small

18   matter but I think we have agreement on that and we'll make

19   that clear.  That's all I have, Your Honor.

20          THE COURT:  Okay.  Excellent.  Anyone else on

21   anything?  All right, thank you for coming in for this.  I

22   truly appreciate it.  I think it's -- I know it's a problem

23   to travel, and I was happy to combine...  Well, I was

24   willing to combine Tuesday's and today's date in order to

25   make that happen, and it worked out just fine.  These are

1   the types of hearings where I think you need to be able to

2   see each other and react to each other, and it's hard on the

3   phone to do that and you can't interrupt each other, etc.

4   So, thank you for coming in to Delaware.  I appreciate it.

5             Tuesday, 9 a.m. on the second lien summary

6   judgment motion and the partial objection, if I remember

7   correctly?

8             MR. MCGANN:  It's the PIC and second lien make-

9   whole claim objections, right.

10            MAN:  Your Honor, it was 10 o'clock.

11            THE COURT:  It's at 10?

12            MAN:  Yes.

13            THE COURT:  I know that's better for you but I may

14  not have been down for 10 because I'm jammed up on the

15  backend.  Let me just...  No, yeah, it's for 9.  Let me...

16  All right, we can start at 10 but just so everybody knows, I

17  truly have -- because I have to get to the Third Circuit

18  Judicial Conference in New Bedford, Pennsylvania or wherever

19  the heck it is, and I can't not go because my boss --

20  everybody's got a boss, and I've got a boss, and it's the

21  Third Circuit.  And I want to go but I am definitely going

22  and I have to be there.  So we have truly a hard stop at

23  three in order to make that happen.  Five hours should be

24  enough but...

25            MR. MCGANN:  The parties that are arguing have

1    talked and we have an agreement to keep it to 2-1/2, where I

2    would have an hour and they would share an hour and a half.

3            THE COURT:  Okay.

4            MR. MCGANN:  So we'll do it in 2-1/2.

5            THE COURT:  Okay.  And then we can start at 10,

6    and I know that's a lot easier for the people coming from

7    New York.  I'm happy to make that accommodation.  Okay, 10

8    o'clock on Tuesday.  Very good.  Thank you.  Have a good

9    day.  We're adjourned.

10

11                        *  *  *  *  *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4   DESCRIPTION                          PAGE        LINE

5   Motion of Energy Future                26          18

6   Holdings Corp., et al., for Entry of

7   an Order Confirming that No Automatic

8   Stay is in Effect or, in the Alternative,

9   Modifying the Automatic Stay to the

10  Extent Necessary to Permit Luminant

11  Mining Company LLC and Energy Future

12  Holdings Corp. to Proceed with Certain

13  Litigation [D.I. 5067; filed July 21, 2015]

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3      I, Sonya Ledanski Hyde, certified that the foregoing

4      transcript is a true and accurate record of the proceedings.

5

6      Sonya
       Ledanski Hyde

7

8      Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20      Veritext Legal Solutions

21      330 Old Country Road

22      Suite 300

23      Mineola, NY 11501

24

25      Date:  October 16, 2015