**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SS Body Armor I, Inc., et al.,[1] | ) | Case No. 10-11255 (CSS) |
| | ) | |
| Debtors. | ) | Jointly Administered |

<u>**MEMORANDUM IN SUPPORT OF CLAIMS
OF D. DAVID COHEN IN RESPONSE
TO DEBTOR'S OBJECTIONS TO CLAIMS**</u>

<u>Preliminary Statement</u>

This is the case of a publicly owned entity which was undemocratically ruled, cheated, abused with the entity, ransacked in now proven criminal schemes (2003-2006) and certain later events. A detailed preliminary statement appears in the accompanying sworn declaration of the Claimant, D. David Cohen, Esq. ("Cohen") and is incorporated herein by reference.

The current Plan has been opposed by Cohen, a former (2002) executive of the publicly-owned entity who has been a long term advocate for the Debtor, the Victims, and the public shareholders, and against the crimes and other

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax Identification numbers are: SS Body Armor I, Inc. ((9361) f/k/a Point Blank Solutions, Inc., SS Body Armor II, Inc. (4044) f/k/a Point Blank Body Armor, Inc.; SS Body Armor III, Inc. (9051) f/k/a Protective Apparel Corporation of America; and PBSS LLC (8203).

shenanigans which have taxed the public and publicly-owned Debtor throughout. This is a Memorandum by Cohen in support of his own claim in Bankruptcy in the amount of One Million Eight Hundred Eighty Six Thousand Eight Hundred Fifty Dollars ($1,886,850). Cohen's claim is based on long overdue compensation denied to him when he became an advocate against the original criminality. His claims are on the basis of breach of contract, fraud, intentional and tort oppression and in this proceeding, seeking his remedies also on the basis of Quantum Meruit.

Statement of Claim

The statement of Cohen's claim is six pages long, and attaches a detailed Complaint which Cohen had filed in State Court 15 months before the Bankruptcy. It is the Debtor, not Cohen, which has been unwilling to proceed to have this dispute adjudicated in State Court or any Court. Cohen filed twice. The second filing (Claim 402) was done with a letter dated August 9, 2010 acknowledging that the prior filing had been made and stating "enclosed papers were also mailed on Friday, August 5, 2010, without a cover letter." There was obviously no intent to file two claims

or to seek double payment. Cohen seeks relief only under the first filed claim, Claim 390.[2]

**I. The entirety of the Cohen claims are viable, properly stated and allowable. The Cohen Claims against the Debtors are supported by the known facts and evidence.**

As noted above, attached to the Cohen Claim is his Verified Amended Complaint dated December 30, 2008, more than 15 months before the Bankruptcy filing. Also attached is the Settlement Agreement of February 23, 2005 signed by the Debtor and its then counsel. Debtors assertion that the information is insufficient or too vague are clearly insincere objections. Debtor has known of all of these matters since prior to the filing of Bankruptcy. If it needed any additional information, it could have asked and gotten prompt responses. Instead, it hid in the weeds and surfaced only at the last moment with charges against the Claimant individually which were answered entirely in the Declaration.

The Claims asserted include a $202,000 Claim for a net partial penalty under the Settlement Agreement for Debtor's failure to comply with its obligations to keep the Shares tradeable. This is <u>not</u> a securities obligation. It is a

---

[2] In addition, Cohen's counsel, Carter Ledyard Milburn ("CLM") has its own claim. Cohen makes no further claim on behalf of CLM, except to the extent necessary to implement CLM's claim for itself.

obligation which was monetized by August of 2007 for breaches which cannot be denied that began in early 2006.

The Second Cause of Action is for loss of the capital attributable to deprivation of promised remuneration from the Settlement Shares - $500,000. The Debtor itself had valued the Shares with an 1099 at $588,800. It was the Debtor's intentional misconduct, in direct breach of provisions which were "of the essence" in the Settlement Agreement, which results in that claim. That breach made the Shares untradeable for more than two years, while the Shares dropped to near zero value.

The Third Cause of Action asserts that the Original Class Settlement was "giving away" substantially all of Company's liquid assets and all of the Company's claims against Brooks and others. This was a direct loss to Cohen as a consequence of his exposure via the Settlement Agreement to the collusive Original Settlement. Cohen would never have taken any Shares in February of 2005, if Debtor had disclosed the extent of the underlying on-going fraud, or if he could have imagined that there would be a collusive Class Settlement resolving the initial fraud. Cohen seeks One Million Dollars ($1,000,000) in actual damages for that breach and fraud. The $1,000,000 is minimally what was lost by the Debtor's original misconduct

in withholding Cohen's Warrant.  100,000 Shares at $5 – the stock price reached over $20 per Share by the end of 2004. Cohen contends that the Share price would have been at much higher levels if Brooks and cohorts were not robbing the Company.  But, even if one uses the actual price at which Brooks and the other officers/directors sold in December, 2004, there was approximately $1.5 Million in excess value of the Warrant.  $1 Million is a responsible compromise.

Finally, the Fourth Cause of Action charges Debtor with intentional tort retaliation against him, for his observation of his professional responsibilities to the Debtor, and asserts a nominal claim of Two Hundred Thousand Dollars ($200,000) for that continuing misconduct. Againm this is a modest, not exaggerated, claim for what has been 13 years of hell, detailed in part by the Declaration.

In the Bankruptcy Claims, Cohen's also asserts that he is entitled to that sum by Quantum Meruit.  Quantum Meruit requires the determination of a reasonable amount to be paid to someone when that someone renders a service for another without any contract to do so.  When Debtor was criminally controlled and prepared to surrender all claims against Brooks, Cohen stepped in and acting derivatively for the entity, did save the entire amount of the Original Settlement escrow ($35,200,000) and potentially another

$186,000,000 upon the SEC prosecuting the 304 claim against Brooks. Class Counsel did not save the 304 Claim. Derivative Counsel did not save the 304 Claim. Bankruptcy Counsel did not save the 304 Claim. Cohen did so. Cohen seeks only that this Court look at the value Cohen created for the Debtors by his independent actions, including his retaining CLM and advancing $100,000 to it to prosecute the appeal. In this case, Quantum Meruit alone justifies at least the entirety of Cohen's claims.

**II. The Debtor's defense to the Cohen Claims which assert that the misconduct of individuals are not attributable to the Debtor entity by the doctrine of respondeat superior is unsupported and completely unsupportable in this case.**

The Debtor's attempt to avoid liability to Cohen on Cohen's claims based on the doctrine of respondeat superior is supported in their objections by only one clearly inappropriate and inapplicable cited authority, Sparks v. Jay's A.C. & Refrigeration, Inc. 917 F.Supp. 1433 (M.D. Fla. 1977). Sparks is a case about alleged sexual harassment which has nothing whatsoever to do with the events at DHB. In Sparks, the alleged offending employee was not an officer of the entity, not a director of the entity, and his conduct was not authorized or approved by the Board implicitly or of explicitly. In DHB, the

intentional criminal wrongdoers were the CEO, COO and CFO of the entity; their conduct was permitted by the Board of Directors actually or at least implicitly, and sanctioned by multiple counsel for the Company who either actuallty knew of it, or proceeded as if they were blindfolded.

Clearly, a corporation is responsible for the willful misconduct of directors and officers who have control over the corporation's business.  See <u>Aetna Cas & Sur. Co. v. Shuler</u> 72 A.D. 2d 591, 421 NYS 2d 87 (2d Dep't.1979) cited in <u>American JurisPrudence</u> 2d, Corporations §1815.

**III. Cohen's claims are not for derivative injures.  Cohen was the direct Individual Victim of breach of contracts, torts, fraudulent conduct aimed at him.**

The doctrine which forecloses Claimants from making personal claims for stock market losses they <u>only</u> incurred on a derivative basis has nothing to do with the disputes herein.  Cohen was an executive employee of the Debtor. Cohen's individual physical property was wrongfully taken by agents of the Debtor.  Cohen then settled with the Debtor and secured specific contract provisions, which were breached by the Debtor or fraudulently made in the first instance.  Cohen is entitled to enforce his contract, or to seek relief for the fraud in the inducement.  Cohen has also been victimized by the retaliation which the Debtors

heaped upon him because he dared to comply with the professional responsibility provisions of SOX, and the final rules adopted by the SEC. Release 2003-13 (January 23, 2003). (Final rules to implement Section 307 of the SOX Act setting "standards of professional conduct".) It is noteworthy that while Cohen had to act before the final rules were written, what he did: the written report to the Audit Committee comports entirely with those Rules.

Debtor also claims that Cohen's "nemesis" has been Brooks (Debtor's Objection ¶8). While that is obviously partially correct, Cohen's real "adversaries" throughout the entirety of this extended litigated controversy have been the many <u>lawyers</u> for the Company, and for the Company as derivative plaintiff, who have not cared about (i) the survival of the publicly-owned entity, (ii) the provisions of SOX and the SEC rules implementing Section 307 of the SOX Act, and (iii) their fiduciary responsibility to protect the interests of the public equity owners of the entity and the Class.

It is no mistake that <u>the Debor entity</u> has been crushed, put out of business, all employees fired, when the only directors since 2009 represent no one and refuse to hold elections and fail to provide shareholders with current information. The directors have effectively

abandoned their responsibilities in favor of the Bankruptcy lawyers and in such a circumstance, it ought come as no surprise that there are unpaid lawyer bills of in excess of $15 Million after the millions already paid to counsel. The entirety of more than $30 Million received from the sale of the operations has been expended.

**IV.  "Fundamental Fairness" requires that Cohen's claims be allowed in full, and not subordinated, in light of Debtors very large benefit from his conduct.**

It is correct that Section 510(b) provides for mandatory subordination of claims "arising from" a securities transaction, and that one possible view of Cohen's claims would label them entirely as arising from a securities transaction.  There are certain disagreements among the circuits as to when a claim arises from a securities transaction. But, both the Second Circuit and the Third Circuit Court of Appeals have adopted a broad view of the statutory term "arising from" or relating to a securities transaction.  See discussion <u>In re Sea Quest Diving L.P.</u> 579 F.3d 411, 421 (5th Cir. 2009) and authorities discussed therein.

The <u>Sea Quest</u> decision states that "For purposes of the damages category," the Circuit Courts agree that a claim arising from the purchase or sale of a security can

include a claim predicated on post-issuance conduct, such as breach of contract, including failure to register stock. See In re Telegraph, Inc. 281 F.3d 133, 136 141-42 (3d Cir. 2002). Cohen concedes that, therefore, his contract claims for the Debtor's failure and refusal to register his Debtor stock (when the Debtor was known as Point Blank Solutions, Inc.- PBSO ) could be subject to subordination.

If all the Cohen claims in this case are treated as equity to be subordinated, it would, however, mistreat Cohen and violently violate another important concept in Bankruptcy claims: fundamental fairness.

In Reading Co. v. Brown, 391 U.S. 471 (1967), a case decided under the former Bankruptcy Act, the United States Supreme Court addressed the allow-ability of administrative claims which did not benefit the Estate in the traditional way. The Court concluded that while benefits to the Estate and rehabilitation of the Debtor are worthy objectives, it would be inconsistent with the principles of respondeat superior (making the principal liable for the acts of the agent) and with the rule of fundamental fairness in bankruptcy to seek such objectives at the cost of excluding tort creditors during the petition period from its assets, "or totally subordinating the claims of those for whose benefit it is initiated." See 391 U.S. at 479. Stretching

the language of the Act, the Court decided that Tort claims arising during the course of an arrangement are actual and necessary expenses of the arrangement rather than post-petition debts of the bankrupt (Id. at 482). Fundamental fairness rules, the Court decided. Dropping Cohen to the back of the line of Claimants would clearly be inconsistent with the principles of fundamentally fair administration of the Estate.

The DHB events impacting on Cohen started in 2002 just when Congress, in response to the collapse of Enron Corp. was adopting stricter rules of professional responsibility for attorneys. That legislation required that Congress, not later than 180 days after July 30, 2002 issue rules, in the public interest and for the protection of investors, setting forth minimum standards for professional conduct for attorneys appearing and practicing before the Commission in any way in the representation of issuers including a rule (1) requiring attorney to report evidence of material violation of securities law or breach of fiduciary duty or similar violation . . . and (2) in the absence of a general counsel to whom such a report could be made requiring the attorney to report the evidence to the Audit Committee of the Board of Directors.

Cohen adhered to that mandate. Cohen not only was correct, in his warning about the original crimes before they occurred, but he was correct as well about the Original Settlement when he understood and asserted that the entire Settlement was a sham and in clear violation of SOX 304. Cohen's counsel, CLM, won the appeal before the Second Circuit, and with the victory <u>saved</u> the critical assets ($35,200,000 plus 9 years of interest on most of such sums) for the <u>Current Plan for the Debtors</u>. Debtor's Bankruptcy Counsel speaks with forked tongue when it denies that Cohen's positions, and CLM's legal work, were responsible for saving those critical assets – indeed the entirety of the assets FOR the Plan; assets which were not even listed in the Petition, not even listed as contingencies. Whatever argument exists to suggest that Cohen's claims may be subordinated fails completely when measured against the "fundamental fairness" required for the proper administration of a Bankruptcy Estate. Cohen's claims should be allowed as general unsecured claims in the entirety, or the Court should permit Cohen to make a motion to have his claims (and those of CLM as well) treated as priority payments under 503(b). If Cohen did not do what he did, and CLM did not effectively win the Appeal before the Second Circuit, there could not be any Plan.

Prayer for Relief

**WHEREFORE**, Cohen respectfully requests that the Court find as follows:

(i) Cohen was an executive officer of, and counsel to the Debtors prior to June of 2002.

(ii) Cohen was promised and issued certain securities compensation (a Warrant to purchase 100,000 Shares at $5.00 per Share) for his services prior to June of 2002.

(iii) On July 11, 2002 and thereafter, Cohen promptly acted in accordance with the newly enacted Sarbanes Oxley Act, 15 U.S.C. §7245, Law requiring an attorney to report evidence of a material violation of securities law or breach of fiduciary duty by the Company or any agent thereof to the Audit Committee of the Debtor.

(iv) Following Cohen's initial report to the Audit Committee, the Debtor withheld Cohen's Warrant from him, and that withholding lasted until February of 2003.

(v) The publicly traded Shares of the Debtor were very valuable and the withholding of the Warrant individually damaged Cohen.

(vi) On February 23, 2003, Cohen entered into a Settlement Agreement with the Debtor providing for the issuance of 40,000 Shares of DHB Common Stock to Cohen and certain others with the provision that "It is of the

essence of this Agreement" that Cohen and the Distributees timely receive the Shares and secure an unimpeded opportunity to sell or otherwise transfer such Shares, and to effect same requiring the Debtor to file all reports required to be filed by a publicly-owned Company with a class of securities registered under the Securities and Exchange Act.

(vii)  It is uncontested that Debtor failed to timely make the filings required by the Settlement Agreement on a timely basis for the last quarter and full year of 2005, and for each of the quarters of, and the full year of 2006.

(viii)  It is further uncontested that during the course of this Bankruptcy, Debtor failed to make all such filings for the full year 2010, and for all quarterly reports and full year reports in 2011, 2012, et seq., and that Debtor, of its own volition, has deregistered the Common Stock so that it is no longer required to make such Exchange Act filings.

(ix) In 2006, Debtor entered into a Consolidated Class Action/Derivative Action Settlement of certain litigation with the persons in an identified Class, and that such Consolidated Settlement would have forgiven, released and indemnified David H. Brooks from his liabilities to the Corporation and to the Class, and that Cohen filed

objections to the Settlement and thereafter actively and successfully sought the support of the Department of Justice on behalf of itself and the Securities & Exchange Commission, for Cohen's Objections to the Original Settlement.

(x) After the Original Settlement was approved by the District Court in 2008, Cohen promised and then paid the law firm of Carter Ledyard & Milburn and additional One Hundred Thousand Dollars ($100,000) (above approximately $39,000 previously paid to CLM) to pursue Cohen's derivative objections on behalf of Debtor.

(xi) Cohen's appeal to the Second Circuit, by CLM, was successful; the entirety of the Original Settlement was stopped, and the Debtor's deposit payment for the Settlement in the amount of Thirty Five Thousand Two Hundred Dollars ($35,200) became at least theoretically, available to the Debtor, and the release and indemnity to Brooks was voided.

(xii) Cohen has filed a claim as a creditor seeking One Million Eight Hundred Thirteen Thousand Two Hundred Ten Dollars ($1,813,218) for himself plus Forty Three Thousand Six Hundred Thirty Two Dollars ($43,632) as representative of certain employee distributees of the Common Stock, with determinations that:

FIRST, Fundamental fairness requires allowance of the Cohen claims in full; without Cohen's multiple prior efforts, Cohen's cash advance to CLM; and the successful appeal to the Second Circuit, the Debtors would not have had access to the Thirty Two Thousand Five Hundred Thousand Dollar ($32,500,000) escrow monies on deposit in the EDNY, and the SEC would not be able to pursue its 304 claims against criminal Defendants Brooks and Schlegel for the benefit of the Debtor, opening a potential recovery of up to an additional One Hundred Eighty Six Million Dollars ($186,000,000) from Defendant Brooks alone; and

SECOND, rejecting subordination of the Cohen claims to the claims of the Unsecured Creditors would do a disservice to the process of subordination in a case in which there would be no money to pay to the Unsecured Creditors but for the actions and efforts of Cohen, as described in the findings.

Respectfully submitted,

_____
D. David Cohen

October 19, 2015