**EXHIBIT A(i)**

Charter for New EFH

# CERTIFICATE OF INCORPORATION

## OF

## [OVATION ACQUISITION I, INC.]

### ARTICLE I
### NAME

Section 1.1    Name.  The name of the Corporation is [Ovation Acquisition I, Inc.]

### ARTICLE II
### REGISTERED AGENT

Section 2.1    Address.  The address of the Corporation's registered office in the State of Delaware is [c/o Corporation Trust Center, 1209 Orange Street, Wilmington, County of New Castle, Delaware 19801.]  The name of the registered agent at such address is [The Corporation Trust Company.]

### ARTICLE III
### PURPOSE

Section 3.1    Purpose.  The purposes for which the Corporation is formed are to engage in any lawful act or activity (including, without limitation or obligation, engaging in business as a real estate investment trust under the Internal Revenue Code of 1986, as amended, or any successor statute (the "**Code**")) for which corporations may be organized under the Delaware General Corporation Law (the "**DGCL**") as now or hereafter in force.  For purposes of this Certificate of Incorporation, "**REIT**" means a real estate investment trust under Sections 856 through 860 of the Code, and any reference to a particular section of the Code shall mean such section of the Code, any rules or regulations issued under, or pursuant to, such section and, in the event such section is amended or replaced at any time hereafter, any such amended or successor section and any rules or regulations issued under, or pursuant to, such amended or successor section.

### ARTICLE IV
### AUTHORIZED STOCK

Section 4.1    Capitalization.  The total number of shares of all classes of stock that the Corporation is authorized to issue is [●] shares, consisting of (i) [●] shares of common stock, par value $0.01 per share ("**Common Stock**"), and (ii) [●] shares of preferred stock, par value $[●] per share ("**Preferred Stock**").

Section 4.2    Preferred Stock.

(a)    The Board of Directors of the Corporation (the "**Board of Directors**") is hereby expressly authorized, by resolution or resolutions, at any time and from time to time, to provide, out of the unissued shares of Preferred Stock, for one or more series of Preferred Stock and, with respect to each such series, to fix, without further stockholder approval, the number of shares constituting such series and the designation of such series, the voting powers (if any) of the shares of such series, and the powers, preferences and relative participating, optional or other special rights, if any, and any qualifications, limitations or restrictions thereof, of the shares of such series and to cause to be filed with the Secretary of State of the State of Delaware a certificate of designation with respect thereto (a "**Preferred Stock Designation**"). The powers, preferences and relative, participating, optional and other special rights of each series of Preferred Stock, and the qualifications, limitations or restrictions thereof, if any, may differ from those of any and all other series at any time outstanding.

(b)     Except as otherwise required by law, holders of a series of Preferred Stock, as such, shall be entitled only to such voting rights, if any, as shall expressly be granted thereto by this Certificate of Incorporation (including any Preferred Stock Designation relating to such series).

Section 4.3    Common Stock.

(a)    Voting Rights.

(1) Each holder of Common Stock, as such, shall be entitled to one vote for each share of Common Stock held of record by such holder on all matters on which stockholders generally are entitled to vote; provided, however, that to the fullest extent permitted by law, holders of Common Stock, as such, shall have no voting power with respect to, and shall not be entitled to vote on, any amendment to this Certificate of Incorporation (including any Preferred Stock Designation relating to any series of Preferred Stock) that relates solely to the terms of one or more outstanding series of Preferred Stock and has no effect on the rights or obligations of holders of Common Stock, if the holders of such affected series of Preferred Stock are entitled, either separately or together with the holders of one or more other such series of Preferred Stock, to vote thereon pursuant to this Certificate of Incorporation (including any Preferred Stock Designation relating to any series of Preferred Stock) or pursuant to the DGCL.

(2) Except as otherwise required in this Certificate of Incorporation or by applicable law, the holders of Common Stock shall vote together as a single class on all matters (or, if any holders of Preferred Stock are entitled to vote together with the holders of Common Stock, as a single class with such holders of Preferred Stock).

(3) Except as may otherwise be provided by a contract approved by the Board of Directors, no holder of Common Stock will have any preemptive right to subscribe for any shares of capital stock issued in the future.

(b)    Dividends and Distributions.  Subject to applicable law and the rights, if any, of the holders of any outstanding series of Preferred Stock or any class or series of stock having a preference over or the right to participate with the Common Stock with respect to the payment of dividends and other distributions in cash, stock of any corporation or property of the Corporation, such dividends and other distributions may be declared and shall be paid ratably on the Common Stock out of the assets of the Corporation that are by law available therefor at such times and in such amounts as the Board of Directors in its discretion shall determine.

(c)    Liquidation, Dissolution or Winding Up.  In the event of any voluntary or involuntary liquidation, dissolution or winding up of the affairs of the Corporation, after payment or provision for payment of the debts and other liabilities of the Corporation and of the preferential and other amounts, if any, to which the holders of Preferred Stock shall be entitled, the holders of all outstanding shares of Common Stock shall be entitled to receive the remaining assets of the Corporation available for distribution ratably in proportion to the number of shares held by each such stockholder.

Section 4.4    Transferable Shares; Preferential Dividends.    Notwithstanding any other provision in this Certificate of Incorporation, if the Corporation elects to qualify for U.S. federal income tax purposes as a REIT, then until such time as the Board of Directors determines that it is no longer in the best interests of the Corporation to attempt to, or to continue to, qualify as a REIT, no determination shall be made by the Board of Directors nor shall any transaction be entered into by the Corporation that would cause any shares in the Corporation not to constitute "transferable shares" under Section 856(a)(2)

of the Code or that would cause any distribution to constitute a preferential dividend as described in Section 562(c) of the Code.

Section 4.5    Limitation on Non-Voting Equity Securities.  Notwithstanding anything herein to the contrary, the Corporation shall not issue any class of non-voting equity securities unless and solely to the extent permitted by section 1123(a)(6) of the United States Bankruptcy Code (the "Bankruptcy Code") as in effect on the date of filing this Certificate of Incorporation with the Secretary of State of the State of Delaware, provided that the foregoing restriction (a) will have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) will only have such force and effect for so long as Section 1123 of the Bankruptcy Code is in effect and applicable to the Corporation and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.

## ARTICLE V
## INCORPORATOR

Section 5.1    Incorporator.   The name and mailing address of the incorporator of the Corporation is:

| Name | Address |
|---|---|
| [_____] | [_____] |

## ARTICLE VI
## AMENDMENT OF BY-LAWS

Section 6.1    Amendment of By-Laws.  In furtherance and not in limitation of the powers conferred by the DGCL, the Board of Directors is expressly authorized to make, amend, alter, change, add to or repeal the by-laws of the Corporation (as in effect from time to time, the "**By-Laws**") without the assent or vote of the stockholders in any manner not inconsistent with the law of the State of Delaware or this Certificate of Incorporation; provided, however, that any amendment, alteration, modification, or repeal of a By-Law or adoption of a new provision in the By-Laws, in each case by the stockholders, may provide that it cannot be further amended, altered, modified or repealed by the Board of Directors, in which case the Board of Directors shall not be authorized to further amend, alter, modify or repeal such By-Law amendment or such new By-Law provision.  Notwithstanding anything to the contrary contained in this Certificate of Incorporation, the affirmative vote of the holders of at least a majority of the voting power of the then outstanding Common Stock shall be required for the stockholders to make, amend, alter, change, add to or repeal any provision of the By-Laws.

## ARTICLE VII
## MATTERS RELATING TO THE BOARD OF DIRECTORS

Section 7.1    Board of Directors.

(a)    Number.  The number of directors of the Corporation shall be fixed by the By-Laws and may be increased or decreased from time to time in such a manner as may be prescribed by the By-Laws and the DGCL; provided, however, that the number of directors shall never be less than seven, nor more than fifteen.  The names of the directors who shall serve as the initial Board of Directors of the Corporation are:

(1) [_____]; and

[_____]

(collectively, the "**Hunt Nominated Directors**"); and

(2) [_____] (the "**Hunt Consortium Nominated Director**"); and

(3) [_____];

[_____];

[_____];

[_____];

[_____];

[_____];

[_____];

[_____];

[_____]; and

[_____].

(b)     Removal.  Subject to the rights of the holders of any series of Preferred Stock, if any outstanding, with respect to the election and removal of directors under specified circumstances, any director may be removed from office at any time, with or without cause, by the affirmative vote of the holders of a majority of the voting power of the then outstanding Common Stock.

(c)     Term.  Notwithstanding the foregoing provisions of this Article VII, each director shall serve until such director's successor is duly elected and qualified or until such director's earlier death, resignation or removal.  No change in the number of directors constituting the Board of Directors shall shorten or increase the term of any incumbent director.

(d)     Newly Created Directorships and Vacancies.  Subject to the rights of holders of any series of Preferred Stock, if any outstanding, under specified circumstances, any newly created directorship on the Board of Directors that results from an increase in the number of directors may be filled by a majority of the directors then in office, and any other vacancy occurring on the Board of Directors (except as otherwise provided in this Section 4.4(d)) may be filled by a majority of the directors then in office, even if less than a quorum; provided that any vacancy occurring on the Board of Directors as a result of the removal of any director (other than a Hunt Nominated Director or the Hunt Consortium Nominated Director) from office by the holders of Common Stock may be filled by the affirmative vote of the holders of a majority of the voting power of the then outstanding Common Stock; provided further that any vacancy occurring on the Board of Directors as a result of the resignation or the removal from office of a Hunt Nominated Director or the Hunt Consortium Nominated Director shall be filled in accordance with the By-Laws.  Subject to the rights of holders of any series of Preferred Stock, if any outstanding, under specified circumstances, any director elected to fill a vacancy shall serve the same remaining term as that of his or her predecessor, subject, however, to prior death, resignation, retirement, disqualification, or removal from office.

(e)     Election of Directors.  Directors of the Corporation need not be elected by written ballot unless the By-Laws shall so provide.

(f)     REIT Qualification.  If the Corporation elects to qualify as a REIT under Sections 856 through 860 of the Code, the Board of Directors shall use its reasonable best efforts to take such actions as are necessary or appropriate, and may take such actions as in its sole judgment and discretion are desirable, to preserve the status of the Corporation as a REIT; however, if the Board of Directors determines that it is no longer in the best interests of the Corporation to attempt to, or continue to, qualify as a REIT, the Board of Directors may revoke or otherwise terminate the Corporation's REIT election pursuant to Section 856(g) of the Code.  The Board of Directors, in its sole and absolute discretion, also may (a) determine upon advice of counsel that compliance with any restriction or limitation on stock ownership and transfers set forth in Article XIV is no longer required for REIT qualification and (b) make any other determination or take any other action pursuant to Article XIV.

## ARTICLE VIII
## MATTERS RELATING TO STOCKHOLDERS

Section 8.1    Action by Consent in Lieu of Meeting.  Any action required or permitted to be taken by the stockholders of the Corporation may be taken without a meeting, without a vote and without prior notice, if, in accordance with the procedures provided for in the By-Laws (if any), a consent in writing setting forth the action so taken shall be signed by the holders of outstanding Common Stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

Section 8.2    Special Meetings of Stockholders.  Special meetings of the stockholders of the Corporation may be called (i) by the Board of Directors, (ii) by the Chief Executive Officer of the Corporation or (iii) upon the request of the holders of at least ten percent (10%) of the voting power of the then outstanding Common Stock.

## ARTICLE IX
## LIMITATION OF LIABILITY

Section 9.1    Limited Liability of Directors.  To the fullest extent permitted by the DGCL as the same exists or may hereafter be amended, no current or former director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.  If the DGCL or any other law of the State of Delaware is amended after approval by the stockholders of this Article IX to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the Corporation shall be eliminated or limited to the fullest extent permitted by the DGCL or such other law as so amended.  Neither the amendment nor repeal of this Article IX, nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article IX, nor, to the fullest extent permitted by the DGCL, any modification of law shall eliminate, reduce or otherwise adversely affect any right or protection of a current or former director of the Corporation existing at the time of such amendment, repeal, adoption or modification.

## ARTICLE X
## INDEMNIFICATION AND INSURANCE

Section 10.1    Indemnification.  Subject to the specific provisions of the By-Laws related to indemnification of directors or officers of the Corporation, the Corporation, to the fullest extent permitted by the DGCL, as the same exists or may hereafter be amended, shall indemnify and hold harmless any person who was or is made or is threatened to be made a party or is otherwise involved in any action, suit or proceeding, whether civil, criminal, administrative, regulatory, arbitral or investigative (a "**proceeding**"), by reason of the fact that he or she, or a person for whom he or she is a legal representative, is or was a director or officer of the Corporation, or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee or agent of another corporation or of a partnership, limited liability entity, joint venture, trust, other enterprise or

non-profit entity, including service with respect to employee benefit plans (in each case, a "**Covered Person**"), against all liability and loss (including judgments, fines and amounts paid in settlement) suffered and expenses (including attorneys' fees) reasonably incurred by such Covered Person. Notwithstanding the foregoing sentence, the Corporation shall be required to indemnify a Covered Person in connection with a proceeding (or part thereof) commenced by such Covered Person (other than proceedings to enforce rights conferred by this Certificate of Incorporation or the By-Laws) only if the commencement of such proceeding was authorized in the specific case by the Board of Directors. To the fullest extent permitted by the DGCL, as the same exists or may hereafter be amended, expenses (including attorneys' fees) incurred by a Covered Person in defending any proceeding shall be paid by the Corporation in advance of the final disposition of such proceeding upon receipt of an undertaking by or on behalf of such director or officer to repay such amount if it shall ultimately be determined that he or she is not entitled to be indemnified by the Corporation as authorized hereby. The Corporation may, by action of the Board of Directors, provide indemnification to employees and agents of the Corporation or its subsidiaries with the same (or lesser) scope and effect as the foregoing indemnification of directors and officers. The indemnification provided by this Section 10.1 shall not be exclusive of other indemnification rights arising under any By-law, agreement, vote of directors or stockholders or otherwise.

Section 10.2   Insurance.  The Corporation may purchase and maintain insurance, at its expense, on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was a director, officer, employee or agent of the Corporation serving at the request of the Corporation as a director, officer, employee or agent of another corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise against any liability, expense or loss asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power or the obligation to indemnify such person against such liability, expense or loss under the provisions of the By-Laws or the DGCL. To the extent that the Corporation maintains any policy or policies providing such insurance, each such person shall be covered by such policy or policies in accordance with its or their terms to the maximum extent of the coverage thereunder for any such person.

## ARTICLE XI
## SECTION 203 OPT OUT

Section 11.1   Section 203 Opt Out.  The Corporation shall not be governed by Section 203 of the DGCL.

## ARTICLE XII
## CHOICE OF FORUM

Section 12.1   Exclusive Jurisdiction for Certain Actions.  Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by applicable law, be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders, creditors or other constituents, (iii) any action asserting a claim against the Corporation or any director or officer of the Corporation arising pursuant to any provision of the DGCL or this Certificate of Incorporation or the By-Laws (as either may be amended from time to time), or (iv) any action asserting a claim against the Corporation or any director or officer of the Corporation governed by the internal affairs doctrine, in each such case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein; provided, that, if and only if the Court of Chancery of the State of Delaware dismisses any such action for lack of subject matter jurisdiction, such action may be brought in another state court sitting in the State of Delaware.

Any person or entity purchasing or otherwise acquiring any interest in the shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article XII.

## ARTICLE XIII
## SEVERABILITY

Section 13.1    Severability.  If any provision or provisions of this Certificate of Incorporation shall be held to be invalid, illegal or unenforceable as applied to any circumstance for any reason whatsoever: (i) the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of this Certificate of Incorporation (including, without limitation, each portion of any paragraph of this Certificate of Incorporation containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby and (ii) to the fullest extent possible, the provisions of this Certificate of Incorporation (including, without limitation, each such portion of any paragraph of this Certificate of Incorporation containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to permit the Corporation to protect its directors, officers, employees and agents from personal liability in respect of their good faith service to or for the benefit of the Corporation to the fullest extent permitted by law.

## ARTICLE XIV
## RESTRICTIONS ON OWNERSHIP AND TRANSFER

Section 14.1    Definitions.  For the purpose of this Article XIV, the following terms shall have the following meanings:

"Aggregate Stock Ownership Limit" shall mean 9.8% in value of the aggregate of the outstanding shares of Capital Stock, or such other percentage determined by the Board of Directors in accordance with Section 14.2.8.

"Beneficial Ownership" shall mean ownership of Capital Stock by a Person, whether the interest in the shares of Capital Stock is held directly or indirectly (including by a nominee), and shall include (i) interests that are actually owned or would be treated as owned through the application of Section 544 of the Code, as modified by Section 856(h)(1)(B) and 856(h)(3) of the Code and (ii) any Person who would be considered a beneficial owner of such shares for purposes of Rule 13d-3 under the Exchange Act, provided, however, that in determining the number of shares Beneficially Owned by a Person, no share shall be counted more than once with respect to that Person. The terms "Beneficial Owner," "Beneficially Owns" and "Beneficially Owned" shall have the correlative meanings.

"Business Day" shall mean any day, other than a Saturday or Sunday, that is neither a legal holiday nor a day on which banking institutions in New York City are authorized or required by law, regulation or executive order to close.

"Capital Stock" shall mean all classes or series of stock of the Corporation, including, without limitation, Common Stock and Preferred Stock.

"Charitable Beneficiary" shall mean one or more beneficiaries of the Trust as determined pursuant to Section 14.3.6, provided that each such organization must be described in Section 501(c)(3) of the Code and contributions to each such organization must be eligible for deduction under each of Sections 170(b)(1)(A), 2055 and 2522 of the Code.

"Common Stock Ownership Limit" shall mean 9.8% (in value or in number of shares, whichever is more restrictive) of the aggregate of the outstanding shares of Common Stock of the Corporation, or such other percentage determined by the Board of Directors in accordance with Section 14.2.8.

"Constructive Ownership" shall mean ownership of shares of Capital Stock by a Person, whether the interest in the shares of Capital Stock is held directly or indirectly (including by a nominee), and shall include interests that would be treated as owned through the application of Section 318(a) of the Code, as modified by Section 856(d)(5) of the Code. The terms "Constructive Owner," "Constructively Owns" and "Constructively Owned" shall have the correlative meanings.

"Excepted Holder" shall mean a stockholder of the Corporation for whom an Excepted Holder Limit is created by this Certificate of Incorporation or by the Board of Directors pursuant to Section 14.2.7.

"Excepted Holder Limit" shall mean, provided that the affected Excepted Holder agrees to comply with the requirements established by the Board of Directors pursuant to Section 14.2.7 and subject to adjustment pursuant to Section 14.2.8, the percentage limit established by the Board of Directors pursuant to Section 14.2.7.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended.

"Individual" shall mean an individual, a trust qualified under Section 401(a) or Section 501(c)(17) of the Code, a portion of a trust permanently set aside for or to be used exclusively for the purposes described in Section 642(c) of the Code, or a private foundation within the meaning of Section 509(a) of the Code, provided that, except as set forth in Section 856(h)(3)(A)(ii) of the Code, a trust described in Section 401(a) of the Code and exempt from tax under Section 501(a) of the Code shall be excluded from this definition.

"Initial Date" shall mean the closing of the issuance of shares of Common Stock pursuant to the initial underwritten public offering of the Corporation.

"Market Price" on any date shall mean, with respect to any class or series of outstanding shares of Capital Stock, the Closing Price for such Capital Stock on such date. The "Closing Price" on any date shall mean the last sale price for such Capital Stock, regular way, or, in case no such sale takes place on such day, the average of the closing bid and ask prices, regular way, for such Capital Stock, in either case as reported in the principal consolidated transaction reporting system with respect to securities listed or admitted to trading on the NYSE or, if such Capital Stock is not listed or admitted to trading on the NYSE, as reported on the principal consolidated transaction reporting system with respect to securities listed on the principal national securities exchange on which such Capital Stock is listed or admitted to trading or, if such Capital Stock is not listed or admitted to trading on any national securities exchange, the last quoted price, or, if not so quoted, the average of the high bid and low ask prices in the over-the-counter market, as reported by the National Association of Securities Dealers, Inc.'s Automated Quotation System or, if such system is no longer in use, the principal other automated quotation system that may then be in use or, if such Capital Stock is not quoted by any such organization, the average of the closing bid and ask prices as furnished by a professional market maker making a market in such Capital Stock selected by the Board of Directors or, in the event that no trading price is available for such Capital Stock, the fair market value of the Capital Stock, as determined by the Board of Directors.

"NYSE" shall mean the New York Stock Exchange.

"Person" shall mean an Individual, corporation, partnership, limited liability company, estate, trust, association, joint stock company or other entity and also includes a group as that term is used for purposes of Section 13(d)(3) of the Exchange Act and a group to which an Excepted Holder Limit applies.

"Prohibited Owner" shall mean, with respect to any purported Transfer, any Person who, but for the provisions of this Article XIV, would Beneficially Own or Constructively Own shares of Capital

Stock in violation of Section 14.2.1, and if appropriate in the context, shall also mean any Person who would have been the record owner of the shares that the Prohibited Owner would have so owned.

"Non-Transfer Event" shall mean any event or other changes in circumstances other than a purported Transfer, including, without limitation, any change in the value of any shares of Capital Stock and any redemption of any shares of Capital Stock.

"Restriction Termination Date" shall mean the first day after the Initial Date on which the Corporation determines pursuant to Section 7.1(f) of this Certificate of Incorporation that it is no longer in the best interests of the Corporation to attempt to, or to continue to, qualify as a REIT or that compliance with the restrictions and limitations on Beneficial Ownership, Constructive Ownership and Transfers of shares of Capital Stock set forth herein is no longer required for the Corporation to qualify as a REIT.

"Transfer" shall mean any issuance, sale, transfer, gift, assignment, devise or other disposition, as well as any other event that causes any Person to acquire, or change its level of, Beneficial Ownership or Constructive Ownership, or any agreement to take any such actions or cause any such events, of Capital Stock or the right to vote or receive dividends on Capital Stock, including (a) the granting or exercise of any option (or any disposition of any option), (b) any disposition of any securities or rights convertible into or exchangeable for Capital Stock or any interest in Capital Stock or any exercise of any such conversion or exchange right and (c) Transfers of interests in other entities that result in changes in Beneficial Ownership or Constructive Ownership of Capital Stock; in each case, whether voluntary or involuntary, whether owned of record, Constructively Owned or Beneficially Owned and whether by operation of law or otherwise. The terms "Transferring" and "Transferred" shall have the correlative meanings.

"Trust" shall mean any trust provided for in Section 14.3.1.

"Trustee" shall mean a Person unaffiliated with the Corporation and a Prohibited Owner, that is appointed by the Corporation to serve as trustee of the Trust.

Section 14.2    Capital Stock.

Section 14.2.1    Ownership Limitations.  During the period commencing on the Initial Date and prior to the Restriction Termination Date, but subject to Section 14.4:

(a)    Basic Restrictions.

(i)    (1) No Person, other than an Excepted Holder, shall Beneficially Own or Constructively Own shares of Capital Stock in excess of the Aggregate Stock Ownership Limit, (2) no Person, other than an Excepted Holder, shall Beneficially Own or Constructively Own shares of Common Stock in excess of the Common Stock Ownership Limit and (3) no Excepted Holder shall Beneficially Own or Constructively Own shares of Capital Stock in excess of the Excepted Holder Limit for such Excepted Holder.

(ii)    No Person shall Beneficially Own or Constructively Own shares of Capital Stock to the extent that such Beneficial Ownership or Constructive Ownership of Capital Stock would result in the Corporation being "closely held" within the meaning of Section 856(h) of the Code (without regard to whether the ownership interest is held during the last half of a taxable year), or otherwise failing to qualify as a REIT (including, without limitation, Beneficial Ownership or Constructive Ownership that would result in the Corporation actually owning or Constructively Owning an interest in a tenant that is described in Section 856(d)(2)(B) of the Code if the income derived by the Corporation from such tenant, taking into account any other income of the Corporation that would not qualify under the gross income requirements of Section 856(c) of the

Code, would cause the Corporation to fail to satisfy any of such gross income requirements).

(iii) Any Transfer of shares of Capital Stock that, if effective, would result in the Capital Stock being beneficially owned by less than 100 Persons (determined under the principles of Section 856(a)(5) of the Code) shall be void *ab initio,* and the intended transferee shall acquire no rights in such shares of Capital Stock.

(b) Transfer in Trust. If any Transfer of shares of Capital Stock or Non-Transfer Event occurs which, if effective, would result in any Person Beneficially Owning or Constructively Owning shares of Capital Stock in violation of Section 14.2.1(a)(i) or (ii)

(i) then that number of shares of the Capital Stock the Beneficial Ownership or Constructive Ownership of which otherwise would cause such Person to violate Section 14.2.1(a)(i) or (ii) (rounded up to the nearest whole share) shall be automatically transferred to a Trust for the benefit of a Charitable Beneficiary, as described in Section 14.3, effective as of the close of business on the Business Day prior to the date of such Transfer or Non-Transfer Event, as the case may be, and such Person shall acquire no rights in such shares; or

(ii) if the transfer to the Trust described in Section 14.2(b)(i) would not be effective for any reason to prevent the violation of Section 14.2.1(a)(i) or (ii) then the Transfer of that number of shares of Capital Stock that otherwise would cause any Person to violate Section 14.2.1(a)(i) or (ii) shall be void *ab initio,* and the intended transferee shall acquire no rights in such shares of Capital Stock.

To the extent that, upon a transfer of shares of Capital Stock pursuant to this Section 14.2.1(b), a violation of any provision of this Article XIV would nonetheless be continuing (for example where the ownership of shares of Capital Stock by a single Trust would violate the 100 stockholder requirement applicable to REITs), then shares of Capital Stock shall be transferred to that number of Trusts, each having a distinct Trustee and a Charitable Beneficiary or Beneficiaries that are distinct from those of each other Trust, such that there is no violation of any provision of this Article XIV.

Section 14.2.2 Remedies for Breach. If the Board of Directors shall at any time determine that a Transfer or Non-Transfer Event has taken place that results in a violation of Section 14.2.1 or that a Person intends to acquire or has attempted to acquire Beneficial Ownership or Constructive Ownership of any shares of Capital Stock in violation of Section 14.2.1 (whether or not such violation is intended), the Board of Directors shall take such action as it deems advisable to refuse to give effect to or to prevent such Transfer or Non-Transfer Event, including, without limitation, causing the Corporation to redeem shares, refusing to give effect to such Transfer on the books of the Corporation or instituting proceedings to enjoin such Transfer or Non-Transfer Event; *provided, however,* that any Transfer or attempted Transfer or Non-Transfer Event in violation of Section 14.2.1 shall automatically result in the transfer to the Trust described above, and, where applicable, such Transfer or Non-Transfer Event shall be void *ab initio* as provided above irrespective of any action (or non-action) by the Board of Directors.

Section 14.2.3 Notice of Restricted Transfer. Any Person who acquires or attempts or intends to acquire Beneficial Ownership or Constructive Ownership of shares of Capital Stock that will or may violate Section 14.2.1(a) or any Person who would have owned shares of Capital Stock that resulted in a transfer to the Trust pursuant to the provisions of Section 14.2.1(b) shall immediately give written notice to the Corporation of such event or, in the case of such a proposed or attempted transaction, give at least 15 days prior written notice, and shall provide to the Corporation such other information as the

Corporation may request in order to determine the effect, if any, of such Transfer on the Corporation's status as a REIT.

Section 14.2.4  Owners Required To Provide Information.  From the Initial Date and prior to the Restriction Termination Date:

(a)  every Beneficial Owner or Constructive Owner of five percent or more (or such lower percentage as required by the Code or the Treasury Regulations promulgated thereunder) of the outstanding shares of Capital Stock, within 30 days after the end of each taxable year, shall give written notice to the Corporation stating the name and address of such owner, the number of shares of Capital Stock Beneficially Owned and a description of the manner in which such shares are held.  Each such Beneficial Owner or Constructive Owner shall provide to the Corporation such additional information as the Corporation may request in order to determine the effect, if any, of such Beneficial Ownership or Constructive Ownership on the Corporation's status as a REIT and to ensure compliance with the Aggregate Stock Ownership Limit and the Common Stock Ownership Limit; and

(b)  each Person who is a Beneficial Owner or Constructive Owner of Capital Stock and each Person (including the stockholder of record) who is holding Capital Stock for a Beneficial Owner or Constructive Owner shall provide to the Corporation such information as the Corporation may request, in order to determine the Corporation's status as a REIT, the Corporation's status as a "domestically controlled qualified investment entity" (within the meaning of Section 897(h) of the Code) and to comply with requirements of any taxing authority or governmental authority or to determine such compliance.

Section 14.2.5  Remedies Not Limited.  Subject to Section 7.1(f) of this Certificate of Incorporation, nothing contained in this Section 14.2 shall limit the authority of the Board of Directors to take such other action as it deems necessary or advisable to protect the Corporation in preserving the Corporation's status as a REIT.

Section 14.2.6  Ambiguity.  In the case of an ambiguity in the application of any of the provisions of this Section 14.2, Section 14.3, or any definition contained in Section 14.1, the Board of Directors shall have the power to determine the application of the provisions of this Section 14.2 or Section 14.3 or any such definition with respect to any situation based on the facts known to it.  In the event Sections 14.2 or 14.3 requires an action by the Board of Directors and this Certificate of Incorporation fails to provide specific guidance with respect to such action, the Board of Directors shall have the power to determine the action to be taken so long as such action is not contrary to the provisions of Sections 14.1, 14.2 or 14.3.  Absent a decision to the contrary by the Board of Directors, if a Person would have (but for the remedies set forth in Section 14.2.2) acquired Beneficial Ownership or Constructive Ownership of Capital Stock in violation of Section 14.2.1, such remedies (as applicable) shall apply first to the shares of Capital Stock which, but for such remedies, would have been Beneficially Owned or Constructively Owned (but not actually owned) by such Person, pro rata among the Persons who actually own such shares of Capital Stock based upon the relative number of the shares of Capital Stock held by each such Person.

Section 14.2.7  Exceptions.

(a)  Subject to Section 14.2.1(a)(ii), the Board of Directors, subject to the directors' duties under applicable law, may exempt (prospectively or retroactively) a Person from the Aggregate Stock Ownership Limit and the Common Stock Ownership Limit, as the case may be, and may establish or increase an Excepted Holder Limit for such Person if:

(i)  the Board of Directors obtains such representations and undertakings from such Person as are reasonably necessary to ascertain that no Person's Beneficial

Ownership or Constructive Ownership of such shares of Capital Stock will violate Section 14.2.1 (a)(ii);

(ii) such Person does not and represents that it will not actually own or Constructively Own an interest in a tenant of the Corporation (or a tenant of any entity owned or controlled by the Corporation) that would cause the Corporation to actually own or Constructively Own more than a 9.9% interest (as set forth in Section 856(d)(2)(B) of the Code) in such tenant and the Board of Directors obtains such representations and undertakings from such Person as the Board of Directors determines, in its sole and absolute discretion, are reasonably necessary to ascertain this fact (for this purpose, a tenant from whom the Corporation (or an entity owned or controlled by the Corporation) derives (and is expected to continue to derive) a sufficiently small amount of revenue such that, in the judgment of the Board of Directors, rent from such tenant would not adversely affect the Corporation's ability to qualify as a REIT shall not be treated as a tenant of the Corporation); and

(iii) such Person agrees that any violation or attempted violation of such representations or undertakings (or other action which is contrary to the restrictions contained in Sections 14.2.1 through 14.2.6) will result in such shares of Capital Stock being automatically transferred to a Trust in accordance with Sections 14.2.1(b) and 14.3.

(b) Prior to granting any exception pursuant to Section 14.2.7(a), the Board of Directors may require a ruling from the Internal Revenue Service, or an opinion of counsel, in either case in form and substance satisfactory to the Board of Directors, as it may deem necessary or advisable in order to determine or ensure the Corporation's status as a REIT. Notwithstanding the receipt of any ruling or opinion, the Board of Directors may impose such conditions or restrictions as it deems appropriate in connection with granting such exception.

(c) Subject to Section 14.2.1(a)(ii), an underwriter which participates in a public offering or a private placement of Capital Stock (or securities convertible into or exchangeable for Capital Stock) may Beneficially Own or Constructively Own shares of Capital Stock (or securities convertible into or exchangeable for Capital Stock) in excess of the Aggregate Stock Ownership Limit, the Common Stock Ownership Limit, or both such limits, but only to the extent necessary to facilitate such public offering or private placement.

(d) The Board of Directors may only reduce the Excepted Holder Limit for an Excepted Holder: (1) with the written consent of such Excepted Holder at any time, or (2) pursuant to the terms and conditions of the agreements and undertakings entered into with such Excepted Holder in connection with the establishment of the Excepted Holder Limit for that Excepted Holder. No Excepted Holder Limit shall be reduced to a percentage that is less than the Common Stock Ownership Limit or the Aggregate Stock Ownership Limit, as applicable.

Section 14.2.8 Increase or Decrease in Common Stock Ownership or Aggregate Stock Ownership Limits. Subject to Section 14.2.1(a)(ii), the Board of Directors may from time to time increase the Common Stock Ownership Limit and the Aggregate Stock Ownership Limit for one or more Persons and decrease the Common Stock Ownership Limit and the Aggregate Stock Ownership Limit for all other Persons; provided, however, that the decreased Common Stock Ownership Limit or Aggregate Stock Ownership Limit will not be effective for any Person that Beneficially Owns or Constructively Owns shares of Capital Stock in excess of such decreased Common Stock Ownership Limit or Aggregate Stock Ownership Limit until such time as such Person's Beneficial Ownership or Constructive Ownership of shares of Capital Stock, as applicable, equals or falls below the decreased Common Stock Ownership Limit and/or Aggregate Stock Ownership Limit, but any further acquisition of shares of Capital Stock by

such Person will be in violation of the Common Stock Ownership Limit or Aggregate Stock Ownership Limit.  Notwithstanding the foregoing, any new Common Stock Ownership Limit and/or Aggregate Stock Ownership Limit shall not allow five or fewer Persons to Beneficially Own more than 49.9% in value of the outstanding Capital Stock.

Section 14.2.9 <u>Legend</u>.  Each certificate for shares of Capital Stock shall bear substantially the following legend:

The shares represented by this certificate are subject to restrictions on Beneficial and Constructive Ownership and Transfer for the purpose, among others, of the Corporation's maintenance of its status as a Real Estate Investment Trust under the Internal Revenue Code of 1986, as amended (the "Code").  Subject to certain further restrictions and except as expressly provided in the Corporation's Certificate of Incorporation, (i) no Person may Beneficially or Constructively Own shares of the Corporation's Common Stock in excess of the Common Stock Ownership Limit unless such Person is an Excepted Holder (in which case the Excepted Holder Limit shall be applicable); (ii) no Person may Beneficially or Constructively Own shares of Capital Stock of the Corporation in excess of the Aggregate Stock Ownership Limit, unless such Person is an Excepted Holder (in which case the Excepted Holder Limit shall be applicable); (iii) no Person may Beneficially or Constructively Own Capital Stock that would result in the Corporation being "closely held" under Section 856(h) of the Code or otherwise cause the Corporation to fail to qualify as a REIT; and (iv) no Person may Transfer shares of Capital Stock if such Transfer would result in the Capital Stock of the Corporation being owned by fewer than 100 Persons.  Any Person who Beneficially or Constructively Owns or attempts to Beneficially or Constructively Own shares of Capital Stock which causes or will cause a Person to Beneficially or Constructively Own shares of Capital Stock in excess or in violation of the above limitations must immediately notify the Corporation.  If any of the restrictions on transfer or ownership are violated, the shares of Capital Stock represented hereby will be automatically transferred to a Trustee of a Trust for the benefit of one or more Charitable Beneficiaries.  In addition, the Corporation may redeem shares upon the terms and conditions specified by the Board of Directors in its sole and absolute discretion if the Board of Directors determines that ownership or a Transfer or other event may violate the restrictions described above.  Furthermore, upon the occurrence of certain events, attempted Transfers in violation of the restrictions described above may be void *ab initio*.  All capitalized terms in this legend have the meanings defined in the Certificate of Incorporation of the Corporation, as the same may be amended from time to time, a copy of which, including the restrictions on transfer and ownership, will be furnished to each holder of Capital Stock of the Corporation on request and without charge.  Requests for such a copy may be directed to the Secretary of the Corporation at its Principal Office.

Instead of the foregoing legend, the certificate may state that the Corporation will furnish a full statement about certain restrictions on transferability to a stockholder on request and without charge.

Section 14.3    <u>Transfer of Capital Stock in Trust</u>.

Section 14.3.1 <u>Ownership in Trust</u>.  Upon any purported Transfer or other event described in <u>Section 14.2.1(b)</u> that would result in a transfer of shares of Capital Stock to a Trust, such shares of Capital Stock shall be deemed to have been transferred to the Trustee as trustee of a Trust for the exclusive benefit of one or more Charitable Beneficiaries.  Such transfer to the Trustee shall be deemed to be effective as of the close of business on the Business Day prior to the purported Transfer or other event that results in the transfer to the Trust pursuant to <u>Section 14.2.1(b)</u>.  The Trustee shall be appointed by the Corporation and shall be a Person unaffiliated with the Corporation and any Prohibited Owner.  Each Charitable Beneficiary shall be designated by the Corporation as provided in <u>Section 14.3.6</u>.

Section 14.3.2  <u>Status of Shares Held by the Trustee</u>.  Shares of Capital Stock held by the Trustee shall be issued and outstanding shares of Capital Stock of the Corporation.  The Prohibited Owner shall have no rights in the shares held by the Trustee.  The Prohibited Owner shall not benefit economically from ownership of any shares held in trust by the Trustee, shall have no rights to dividends or other distributions and shall not possess any rights to vote or other rights attributable to the shares held in the Trust.

Section 14.3.3  <u>Dividends, Voting Rights and Rights upon Liquidation</u>.  The Trustee shall have all voting rights and rights to dividends or other distributions with respect to shares of Capital Stock held in the Trust, which rights shall be exercised for the exclusive benefit of the Charitable Beneficiary.  Any dividend or other distribution paid prior to the discovery by the Corporation that the shares of Capital Stock have been transferred to the Trustee shall be paid by the recipient of such dividend or distribution to the Trustee upon demand and any dividend or other distribution authorized but unpaid shall be paid when due to the Trustee.  Any dividend or other distribution so paid to the Trustee shall be held in trust for the Charitable Beneficiary.  The Prohibited Owner shall have no voting rights with respect to shares held in the Trust and, subject to Delaware law, effective as of the date that the shares of Capital Stock have been transferred to the Trustee, the Trustee shall have the authority (at the Trustee's sole and absolute discretion) (i) to rescind as void any vote cast by a Prohibited Owner prior to the discovery by the Corporation that the shares of Capital Stock have been transferred to the Trustee and (ii) to recast such vote; provided, however, that if the Corporation has already taken irreversible corporate action, then the Trustee shall not have the authority to rescind and recast such vote.  Notwithstanding the provisions of this <u>Article XIV</u>, until the Corporation has received notification that shares of Capital Stock have been transferred into a Trust, the Corporation shall be entitled to rely on its share transfer and other stockholder records for purposes of preparing lists of stockholders entitled to vote at meetings, determining the validity and authority of proxies and otherwise conducting votes and determining the other rights of stockholders.

Upon any voluntary or involuntary liquidation, dissolution or winding up of or any distribution of the assets of the Corporation, the Trustee shall be entitled to receive, ratably with each other holder of Capital Stock of the class or series of Capital Stock held in the Trust, that portion of the assets of the Corporation available for distribution to the holders of such class or series (determined based upon the ratio that the number of shares of such class or series of Capital Stock held by the Trustee bears to the total number of shares of such class or series of Capital Stock then outstanding).  The Trustee shall distribute any such assets received in respect of the Capital Stock held in the Trust in any liquidation, dissolution or winding up or distribution of the assets of the Corporation, in accordance with <u>Section 14.3</u> hereof.

Section 14.3.4  <u>Sale of Shares by Trustee</u>.  Within 20 days of receiving notice from the Corporation that shares of Capital Stock have been transferred to the Trust, the Trustee of the Trust shall sell the shares held in the Trust to a Person, designated by the Trustee, whose ownership of the shares will not violate the ownership limitations set forth in <u>Section 14.2.1(a)</u>.  Upon such sale, the interest of the Charitable Beneficiary in the shares sold shall terminate and the Trustee shall distribute the net proceeds of the sale to the Prohibited Owner and to the Charitable Beneficiary as provided in this <u>Section 14.3.4</u>.  The Prohibited Owner shall receive the lesser of (1) the price paid by the Prohibited Owner for the shares or, if the Prohibited Owner did not give value for the shares in connection with the event causing the shares to be held in the Trust (e.g., in the case of a gift, devise or other such transaction), the Market Price of the shares on the day of the event causing the shares to be held in the Trust and (2) the price per share received by the Trustee (net of any commissions and other expenses of sale) from the sale or other disposition of the shares held in the Trust.  The Trustee may reduce the amount payable to the Prohibited Owner by the amount of dividends and other distributions which have been paid to the Prohibited Owner and are owed by the Prohibited Owner to the Trustee pursuant to <u>Section 14.3.3</u>.  Any net sales proceeds in excess of the amount payable to the Prohibited Owner shall be immediately paid to the Charitable

Beneficiary.  If, prior to the discovery by the Corporation that shares of Capital Stock should have been transferred to the Trustee, such shares were instead first sold by a Prohibited Owner, then (i) such shares shall be deemed to have been sold on behalf of the Trust and (ii) to the extent that the Prohibited Owner received an amount for such shares that exceeds the amount that such Prohibited Owner was entitled to receive pursuant to this Section 14.3.4, such excess shall be paid to the Trustee upon demand.

        Section 14.3.5  Purchase Right in Stock Transferred to the Trustee.  Shares of Capital Stock transferred to the Trustee shall be deemed to have been offered for sale to the Corporation, or its designee, at a price per share equal to the lesser of (i) the price per share in the transaction that resulted in such transfer to the Trust (or, in the case of a devise or gift, the Market Price at the time of such devise or gift) and (ii) the Market Price on the date the Corporation, or its designee, accepts such offer.  The Corporation may reduce the amount payable to the Prohibited Owner by the amount of dividends and other distributions which has been paid to the Prohibited Owner and are owed by the Prohibited Owner to the Trustee pursuant to Section 14.3.3.  The Corporation may pay the amount of such reduction to the Trustee for the benefit of the Charitable Beneficiary.  The Corporation shall have the right to accept such offer discussed in the first sentence of this Section 14.3.5 until the Trustee has sold the shares held in the Trust pursuant to Section 14.3.4.  Upon any such sale to the Corporation pursuant to this Section 14.3.5, the interest of the Charitable Beneficiary in the shares sold shall terminate and the Trustee shall distribute the net proceeds of the sale to the Prohibited Owner.

        Section 14.3.6  Designation of Charitable Beneficiaries.  By written notice to the Trustee, the Corporation shall designate one or more nonprofit organizations to be the Charitable Beneficiary of the interest in the Trust such that (i) the shares of Capital Stock held in the Trust would not violate the restrictions set forth in Section 14.2.1(a) in the hands of such Charitable Beneficiary and (ii) each such organization must be described in Section 501(c)(3) of the Code and contributions to each such organization must be eligible for deduction under each of Sections 170 (b)(1)(A), 2055 and 2522 of the Code.  Neither the failure of the Corporation to make such designation nor the failure of the Corporation to appoint the Trustee before the automatic transfer provided in Section 14.2.1(b) takes place shall make such transfer ineffective, provided that the Corporation thereafter makes such designation and appointment.

        Section 14.3.7  Costs, Expenses and Compensation of Trustee and the Corporation.  The Trustee shall be indemnified by the Corporation or from the proceeds from the sale of shares of Capital Stock held in the Trust, as further provided in this Article XIV, for its costs and expenses reasonably incurred in connection with conducting its duties and satisfying its obligations pursuant to this Article XIV.  The Trustee shall be entitled to receive reasonable compensation for services provided by the Trustee in connection with serving as a Trustee, the amount and form of which shall be determined by agreement of the Board of Directors and the Trustee.  Costs, expenses and compensation payable to the Trustee pursuant to this Section 14.3.7 may be funded from the Trust or by the Corporation.  The Corporation shall be entitled to reimbursement on a first priority basis (after payment in full of amounts payable to the Trustee pursuant to this Section 14.3.7) from the Trust for any such amounts funded by the Corporation.  Costs and expenses incurred by the Corporation in the process of enforcing the ownership limitations set forth in Section 14.2.1(a) hereof, in addition to reimbursement of costs, expenses and compensation of the Trustee which have been funded by the Corporation, may be collected from the Trust.

        Section 14.4  NYSE Transactions.  Nothing in this Article XIV shall preclude the settlement of any transaction entered into through the facilities of the NYSE or any other national securities exchange or automated inter-dealer quotation system.  The fact that the settlement of any transaction occurs shall not negate the effect of any other provision of this Article XIV and any transferee in such a transaction shall be subject to all of the provisions and limitations set forth in this Article XIV.

Section 14.5    Enforcement.  The Corporation is authorized specifically to seek equitable relief, including injunctive relief, to enforce the provisions of this Article XIV.

Section 14.6    Non-Waiver.  No delay or failure on the part of the Corporation or the Board of Directors in exercising any right hereunder shall operate as a waiver of any right of the Corporation or the Board of Directors, as the case may be, except to the extent specifically waived in writing.

## ARTICLE XV
## CORPORATE OPPORTUNITIES

Section 15.1    Corporate Opportunities.

(a)    To the fullest extent permitted by law, none of the directors or officers of the Corporation or any of their respective affiliates (each, an "**Affiliate**") (such persons identified above being referred to, collectively, as "**Identified Persons**" and, individually, as an "**Identified Person**") shall have any obligation, responsibility or duty to refrain from directly or indirectly (w) engaging in any business opportunity, including but not limited to business opportunities in the same or similar business activities or lines of business in which the Corporation or any of its Affiliates may, from time to time, be engaged or propose to engage (a "**Business Opportunity**"), (x) owning any investments or engaging in any business activities (including investments and business activities that are similar to the Corporation's current or proposed investments or business activities), (y) buying, selling or trading any securities or commodities for their own accounts (including taking positions contrary to the Corporation's) or (z) competing with the Corporation, and, to the fullest extent permitted by law, no Identified Person shall be liable to the Corporation or its stockholders by reason of the fact that such Identified Person engages in any such activities.  To the fullest extent permitted by applicable law, the Corporation shall not have any right, interest or expectancy with respect to any Business Opportunity presented to any Identified Person, such investments or activities shall not be deemed wrongful or improper, and no such Identified Person shall be obligated to communicate, offer or present any Business Opportunity to the Corporation even if such Business Opportunity is of a character that, if presented to the Corporation, could be taken by the Corporation, so long as such Business Opportunity was not expressly communicated to an Identified Person solely in his or her capacity as a director or officer of the Corporation as an opportunity intended exclusively for the Corporation or its subsidiaries (a "**Restricted Opportunity**").  In the event that any Identified Person acquires knowledge of a Business Opportunity that is not a Restricted Opportunity, such Identified Person shall have no duty to communicate or offer such Business Opportunity to the Corporation and shall not be liable to the Corporation or its stockholders for breach of any fiduciary duty by reason of the fact that such Identified Person pursues or acquires such Business Opportunity for itself, directs such Business Opportunity to another person, or does not communicate information regarding such Business Opportunity to the Corporation, and the Corporation hereby renounces any interest or expectancy in such Business Opportunity.  In furtherance of the foregoing, the Corporation renounces any interest or expectancy in, or in being offered the opportunity to participate in, any corporate opportunity covered by, but not allocated to it pursuant to, this Section 15.1 to the fullest extent permitted by Section 122(17) of the DGCL (or any successor provision).

(b)    In addition to and notwithstanding the foregoing provisions of this Section 15.1, a Business Opportunity shall not be deemed to be a Restricted Opportunity if it is a Business Opportunity that (i) the Corporation is neither financially or legally able, nor contractually permitted to undertake, (ii) from its nature, is not in the line of the Corporation's business or is of no practical advantage to the Corporation or (iii) is one in which the Corporation has no interest or reasonable expectancy.

(c)    Nothing in this Article XV shall be construed as limiting any rights the Corporation may have in any agreement to which it is a party.

## ARTICLE XVI
## AMENDMENT OF CERTIFICATE OF INCORPORATION

      Section 16.1    <u>Amendment of Certificate of Incorporation</u>.  In addition to any votes required by applicable law and subject to the express rights of the holders of any series of Preferred Stock, if any outstanding, and notwithstanding anything contained in this Certificate of Incorporation to the contrary, the affirmative vote of at least sixty-six and two-thirds percent (66 2/3%) of the voting power of the then outstanding Common Stock shall be required to amend, modify or repeal any provision, or adopt any new or additional provision, in a manner inconsistent with <u>Article VI</u>, <u>Section 7.1(b)</u>, <u>Section 7.1(d)</u>, <u>Article VIII</u>, <u>Article X</u>, <u>Article XI</u>, <u>Article XV</u> and this <u>Article XVI</u>.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Corporation has caused this Certificate of Incorporation to be signed by the undersigned authorized officer this [●] day of [●], 2016.

[Ovation Acquisition I, Inc.]

By: _____
Name:
Title:

[*Signature Page to Certificate of Incorporation*]