**EXHIBIT A(ii)**

Bylaws for New EFH

BY-LAWS

OF

[OVATION ACQUISITION I, INC.]

# TABLE OF CONTENTS

Page

ARTICLE I STOCKHOLDERS ........................................................................................ 1
    Section 1.    Annual Meetings .......................................................................... 1
    Section 2.    Special Meetings .......................................................................... 1
    Section 3.    Notice of Meetings ...................................................................... 1
    Section 4.    Quorum ........................................................................................ 2
    Section 5.    Chairman of Meetings ................................................................. 2
    Section 6.    Proxies ........................................................................................ 3
    Section 7.    Voting .......................................................................................... 4
    Section 8.    Record Date ................................................................................. 4
    Section 9.    Consent of Stockholders in Lieu of Meeting .............................. 5
    Section 10.   Inspectors .................................................................................... 5
    Section 11.   Notice of Stockholder Business and Nominations ..................... 5
    Section 12.   Shares ......................................................................................... 9

ARTICLE II BOARD OF DIRECTORS ....................................................................... 11
    Section 1.    Powers ....................................................................................... 11
    Section 2.    Number; Tenure and Resignation ............................................. 11
    Section 3.    Vacancies .................................................................................. 11
    Section 4.    Meetings .................................................................................... 12
    Section 5.    Quorum; Vote Required ............................................................ 12
    Section 6.    Organization .............................................................................. 15
    Section 7.    Preferred Stock ......................................................................... 15
    Section 8.    Committees ................................................................................ 15
    Section 9.    Action Without a Meeting ......................................................... 16
    Section 10.   Remote Meeting ........................................................................ 16
    Section 11.   Compensation ............................................................................ 16
    Section 12.   Reliance on Books and Records ................................................ 16
    Section 13.   Chairman of the Board .............................................................. 16

ARTICLE III OFFICERS .............................................................................................. 17
    Section 1.    Number ...................................................................................... 17
    Section 2.    Term; Removal .......................................................................... 17
    Section 3.    Powers ....................................................................................... 17
    Section 4.    Chief Executive Officer ............................................................ 17
    Section 5.    President .................................................................................... 17
    Section 6.    Vice Presidents ......................................................................... 17
    Section 7.    Secretary ................................................................................... 18
    Section 8.    Chief Financial Officer ............................................................. 18
    Section 9.    Treasurer ................................................................................... 18

ARTICLE IV CORPORATE BOOKS .......................................................................... 18

ARTICLE V CHECKS, DRAFTS, PROXIES ............................................................... 18
    Section 1.    Contracts ................................................................................... 18
    Section 2.    Checks and Drafts ..................................................................... 19
    Section 3.    Proxies to Vote ......................................................................... 19

ARTICLE VI FISCAL YEAR ....................................................................................... 19

ARTICLE VII INDEMNIFICATION ............................................................................ 19
    Section 1.    Indemnification Respecting Third Party Claims ...................... 19

(i)

Page

Section 2.    Indemnification Respecting Derivative Claims ................................................. 20
Section 3.    Determination of Entitlement to Indemnification; Claims................................. 21
Section 4.    Right to Indemnification Upon Successful Defense ........................................ 21
Section 5.    Advances of Expenses................................................................................... 21
Section 6.    Indemnification Not Exclusive....................................................................... 21
Section 7.    Corporate Obligations; Reliance .................................................................... 22
Section 8.    Amendment or Repeal.................................................................................... 23
Section 9.    Accrual of Claims; Successors ....................................................................... 23
Section 10.    Insurance ....................................................................................................... 23
Section 11.    Definitions of Certain Terms.......................................................................... 23
Section 12.    Good Faith Defined........................................................................................ 23

ARTICLE VIII WAIVER OF NOTICE ................................................................................ 24

ARTICLE IX DISTRIBUTIONS ......................................................................................... 24
Section 1.    Authorization.................................................................................................. 24
Section 2.    Contingencies ................................................................................................ 24

ARTICLE X CORPORATE SEAL ....................................................................................... 24

ARTICLE XI GENERAL PROVISIONS .............................................................................. 24
Section 1.    Section Headings............................................................................................ 24
Section 2.    Inconsistent Provisions................................................................................... 24
Section 3.    Severability .................................................................................................... 25

ARTICLE XII AMENDMENTS ........................................................................................... 25

ARTICLE I

STOCKHOLDERS

Section 1.    <u>Annual Meetings</u>.    The annual meeting of the stockholders of [Ovation Acquisition I, Inc.] (the "<u>Corporation</u>") for the purpose of electing directors and for the transaction of such other business as may properly be brought before the meeting shall be held on such date, and at such time and place, if any, within or without the State of Delaware as may be designated from time to time by the Board of Directors of the Corporation (the "<u>Board</u>").  The Board may, in its sole discretion, determine that the meeting shall not be held at any place, but may instead be held solely by means of remote communication in accordance with Section 211(a)(2) of the General Corporation Law of the State of Delaware (the "<u>DGCL</u>"). Written notice of the annual meeting stating the place, date and hour of the meeting shall be given to each stockholder entitled to vote at such meeting not less than ten (10) nor more than sixty (60) days before the date of the meeting.

Section 2.    <u>Special Meetings</u>.  Subject to the rights of the holders of any class or series of preferred stock of the Corporation, special meetings of the stockholders of the Corporation may be called (i) by or at the direction of the Board or the Chief Executive Officer of the Corporation, and shall be held on such date and at such time and place, if any, within or without the State of Delaware as may be designated from time to time by the person calling such meeting, or (ii) to act on any matter that may properly be considered at a meeting of stockholders upon the written request, delivered to the Secretary of the Corporation (of if there be no Secretary, to the Chief Executive Officer) of stockholders entitled to cast not less than ten (10) percent of all the voting power of the then outstanding shares of Common Stock. No business other than that stated in the notice of meeting (or any supplement thereto), which notice shall include the business requested to be considered by the stockholders requesting such special meeting, shall be transacted at any special meeting. Each such special meeting shall be held on such date and at such time, as the Board shall, in a resolution duly adopted by it, designate.  If a special meeting is to be called upon the request of stockholders, such Board designation shall be made promptly (and in no event more than 10 days) after receipt of a written request from stockholders stating the purposes thereof; <u>provided</u> that the date so designated shall not be more than seventy-five (75) days after receipt of such written request for such special meeting. The provisions set forth in this <u>Section 2</u> may not be repealed or amended in any respect or in any manner, including by any merger or consolidation of the Corporation with any other corporation (other than a Non-Affiliated Transaction), unless the surviving corporation's certificate of incorporation or bylaws contains a provision to the same effect as this <u>Section 2</u>, except by the affirmative vote of the holders of a not less than sixty-six and two-thirds percent (66 2/3%) of the voting power of the then outstanding Common Stock, subject to the terms of any series of preferred stock that may at the time be outstanding. For the purpose of these By-Laws, a "<u>Non-Affiliated Transaction</u>" shall mean a merger or consolidation with a person or entity that is not an Affiliate (as such term is defined in Rule 12b-2 of the Securities and Exchange Act of 1934, as amended) of the Corporation and which results in either (i) the shares of capital stock of the Corporation entitled to vote generally in the election of directors at an annual meeting of stockholders of the Corporation (without reference to any rights of any preferred stock providing for special voting rights or restrictions with respect to particular matters) (the "<u>Voting Stock</u>") outstanding immediately prior thereto representing immediately thereafter (either by remaining outstanding or by being converted into voting securities of the surviving or acquiring entity) less than a majority of the combined voting power of the Voting Stock of the Corporation or such surviving, acquiring or resulting entity outstanding immediately after such transaction or (ii) individuals who are members of the Board at the time the Board approves such transaction comprising less than a majority of the full board of directors of the entity resulting from or surviving such transaction.

Section 3.    <u>Notice of Meetings</u>.  Except as otherwise provided by law, the Corporation's certificate of incorporation (the "<u>Charter</u>") or these By-Laws, notice of the date, time, place (if any), the

means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, the record date for determining the stockholders entitled to vote at the meeting (if such date is different from the record date for stockholders entitled to notice of the meeting) and, in the case of a special meeting, the purpose or purposes of the meeting of stockholders shall be given not more than sixty (60), nor less than ten (10), days previous thereto, to each stockholder entitled to vote at the meeting as of the record date for determining stockholders entitled to notice of the meeting at such address as appears on the records of the Corporation. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the stockholder at the stockholder's address as it appears on the records of the Corporation, with postage thereon prepaid. Whenever any notice whatsoever is required to be given under the provisions of the DGCL or the Charter or these By-Laws, a waiver thereof in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. Attendance at any meeting shall constitute waiver of notice thereof unless the person at the meeting objects to the holding of the meeting because proper notice was not given. Any meeting of the stockholders of the Corporation, other than a special meeting called at the request of holders of shares of the Corporation, may be postponed or cancelled by resolution of the Board upon public notice given prior to the date previously scheduled for such meeting of stockholders. A meeting of the stockholders called at the request of holders of shares in the Corporation may not be postponed or cancelled, except with the written consent of the holders of shares requesting such meeting.

When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken; provided that, if the date of any adjourned meeting is more than thirty (30) days after the date for which the meeting was originally noticed, or if a new record date is fixed for the adjourned meeting, notice of the place, if any, date, and time of the adjourned meeting and the means of remote communications, if any, by which stockholders and proxyholders may be deemed to be present in person and vote at such adjourned meeting, shall be given in conformity herewith. At any adjourned meeting, any business may be transacted which might have been transacted at the original meeting.

Section 4.    Quorum.  At any meeting of stockholders, the presence in person or by proxy of stockholders entitled to cast a majority of all the votes entitled to be cast at such meeting on any matter shall constitute a quorum; but this section shall not affect any requirement under any statute or the Charter for the vote necessary for the approval of any matter.  If such quorum is not established at any meeting of the stockholders, the chairman of the meeting may adjourn the meeting to a date not more than thirty (30) days after the original record date without notice other than announcement at the meeting.  At such adjourned meeting at which a quorum shall be present, any business may be transacted which might have been transacted at the meeting as originally notified.  Notwithstanding the foregoing, where a separate vote by a class or series or classes or series is required, a majority in voting power of the outstanding shares of such class or series or classes or series, present in person or represented by proxy, shall constitute a quorum entitled to take action with respect to that separate vote.

If at any meeting for the election of directors, the Corporation has outstanding more than one class of stock, and one or more such classes or series thereof are entitled to vote separately as a class to elect directors, and there shall be a quorum of only one such class or series of stock, that class or series of stock shall be considered to have a quorum for the actions that class or series of stock is entitled to vote notwithstanding absence of a quorum of the other class or series of stock.

Section 5.    Chairman of Meetings.  Every meeting of stockholders shall be conducted by an individual appointed by the Board to be chairman of the meeting or, in the absence of such appointment or appointed individual, by the Chairman of the Board or, in the case of a vacancy in the office or absence

of the Chairman of the Board, by the Chief Executive Officer, or, in the absence of any such individual, a chairman chosen by the stockholders by the vote of a majority of the votes cast by holders of Voting Stock present in person or by proxy.  The Secretary, or, in the Secretary's absence, an assistant Secretary, or, in the absence of both the Secretary and assistant secretaries, an individual appointed by the Board or, in the absence of such appointment, an individual appointed by the chairman of the meeting shall act as secretary of the meeting and shall record the minutes of the meeting.  The order of business and all other matters of procedure at any meeting of stockholders shall be determined by the chairman of the meeting. The chairman of the meeting may prescribe such rules, regulations and procedures and take such action as, in the discretion of the chairman and without any action by the stockholders, are appropriate for the proper conduct of the meeting, including, without limitation, (i) limiting attendance at the meeting to stockholders of record of the Corporation, their duly authorized proxies and such other individuals as the chairman of the meeting may determine; (ii) limiting participation at the meeting on any matter to stockholders of record of the Corporation entitled to vote on such matter, their duly authorized proxies and other such individuals as the chairman of the meeting may determine; (iii) limiting the time allotted to questions or comments; (iv) determining when and for how long the polls should be opened and when the polls should be closed; (v) maintaining order and security at the meeting; (vi) concluding a meeting or recessing or adjourning the meeting, whether or not a quorum is present, to a later date and time and at a place announced at the meeting; and (vii) complying with any state and local laws and regulations concerning safety and security.  Unless otherwise determined by the chairman of the meeting, meetings of stockholders shall not be required to be held in accordance with the rules of parliamentary procedure.

Section 6.        Proxies.  At all meetings of stockholders, any stockholder entitled to vote thereat shall be entitled to vote in person or by proxy, but no proxy shall be voted after three years from its date, unless such proxy provides for a longer period.  Without limiting the manner in which a stockholder may authorize another person or persons to act for the stockholder as proxy pursuant to the DGCL, the following shall constitute a valid means by which a stockholder may grant such authority: (1) a stockholder may execute a writing authorizing another person or persons to act for the stockholder as proxy, and execution of the writing may be accomplished by the stockholder or the stockholder's authorized officer, director, employee or agent signing such writing or causing his or her signature to be affixed to such writing by any reasonable means including, but not limited to, by facsimile signature; or (2) a stockholder may authorize another person or persons to act for the stockholder as proxy by transmitting or authorizing the transmission of a facsimile or other means of electronic transmission to the person who will be the holder of the proxy or to a proxy solicitation firm, proxy support service organization or like agent duly authorized by the person who will be the holder of the proxy to receive such transmission, provided that any such facsimile or other means of electronic transmission must either set forth or be submitted with information from which it can be determined that the facsimile or other electronic transmission was authorized by the stockholder.  If it is determined that such transmissions are valid, the inspector or inspectors of stockholder votes or, if there are no such inspectors, such other persons making that determination shall specify the information upon which they relied.

A proxy shall be irrevocable if it states that it is irrevocable and if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power.  A stockholder may revoke any proxy which is not irrevocable by attending the meeting and voting in person or by delivering to the Secretary of the Corporation a revocation of the proxy or a new proxy bearing a later date.

Any copy, facsimile telecommunication or other reliable reproduction of the writing or transmission created pursuant to the preceding paragraph of this Section 6 may be substituted or used in lieu of the original writing or transmission for any and all purposes for which the original writing or transmission could be used, provided that such copy, facsimile telecommunication or other reproduction shall be a complete reproduction of the entire original writing or transmission.

Proxies shall be filed with the secretary of the meeting prior to or at the commencement of the meeting to which they relate.

Section 7.        Voting.  When a quorum is present at any meeting, the vote of the holders of a majority of the votes cast shall decide any question brought before such meeting, unless the question is one upon which by express provision of the Charter, these By-Laws or the DGCL a different vote is required, in which case such provision shall govern and control the decision of such question. Notwithstanding the foregoing, where a separate vote by a class (or classes) or series is required and a quorum is present, the affirmative vote of a majority of the votes cast by shares of such class(es) or series shall be the act of such class(es) or series, unless the question is one upon which by express provision of the Charter, these By-Laws or the DGCL a different vote is required, in which case such express provision shall govern and control the decision of such question.

Stock of the Corporation registered in the name of a corporation, partnership, trust, limited liability company, joint venture or other entity, if entitled to be voted, may be voted by the chief executive officer, the president or a vice president, managing director, director, general partner, trustee, managing member or manager thereof, as the case may be, or a proxy appointed by any of the foregoing individuals, unless some other person who has been appointed to vote such stock pursuant to a bylaw or a resolution of the governing body of such corporation or other entity or agreement of the partners of a partnership or managing members or managers, as applicable, of a limited liability company presents a certified copy of such bylaw, resolution or agreement, in which case such person may vote such stock.  Any director or fiduciary, in such capacity, may vote stock registered in such director's or fiduciary's name, either in person or by proxy.

Section 8.        Record Date.

(A)        In order that the Corporation may determine the stockholders entitled to notice of any meeting of stockholders or any adjournment thereof, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which record date shall, unless otherwise required by law, not be more than sixty (60) nor less than ten (10) days before the date of such meeting.  If the Board so fixes a date, such date shall also be the record date for determining the stockholders entitled to vote at such meeting unless the Board determines, at the time it fixes such record date, that a later date on or before the date of the meeting shall be the date for making such determination.  If no record date is fixed by the Board, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.  A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board may fix a new record date for determination of stockholders entitled to vote at the adjourned meeting, and in such case shall also fix as the record date for stockholders entitled to notice of such adjourned meeting the same or an earlier date as that fixed for determination of stockholders entitled to vote in accordance herewith at the adjourned meeting.

(B)        In order that the Corporation may determine the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board may fix a record date, which shall not be more than sixty (60) days prior to such other action.  If no such record date is fixed, the record date for determining stockholders for any such purpose shall be at the close of business on the day on which the Board adopts the resolution relating thereto.

Section 9.    <u>Consent of Stockholders in Lieu of Meeting</u>.  At any time when the Charter permits action by one or more classes of stockholders of the Corporation to be taken by written consent, the provisions of this section shall apply.  All consents properly delivered in accordance with the Charter, this section and the DGCL shall be deemed to be recorded when so delivered.  No written consent shall be effective to take the corporate action referred to therein unless, within sixty (60) days of the earliest dated consent delivered to the Corporation as required by this section, written consents signed by the holders of a sufficient number of shares to take such corporate action are so recorded.  Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders to take the action were delivered to the Corporation.  Any action taken pursuant to such written consent or consents of the stockholders shall have the same force and effect as if taken by the stockholders at a meeting thereof.  In order that the Corporation may determine the stockholders entitled to consent to corporate action in writing without a meeting, the Board may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board, and which date shall not be more than ten (10) days after the date upon which the resolution fixing the record date is adopted by the Board.  Any stockholder of record of the Corporation seeking to have the stockholders authorize or take corporate action by consent in writing shall, by written notice to the Secretary of the Corporation (or if there be no Secretary, to the Chief Executive Officer), request the Board to fix a record date.  The Board shall promptly, but in all events within ten (10) days after the date on which such a request is received by the Secretary (or, if there be no Secretary, the Chief Executive Officer), adopt a resolution fixing the record date (unless a record date has previously been fixed by the Board). If no record date has been fixed by the Board, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board is required by statute, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal place of business, or an officer or agent of the Corporation having custody of the book in which proceedings of meetings of stockholders are recorded.  If no record date has been fixed by the Board and prior action by the Board is required by statute, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting shall be at the close of business on the day on which the Board adopts the resolution taking such prior action.

Section 10.    <u>Inspectors</u>.  The Board or the chairman of the meeting may appoint, before or at the meeting, one or more inspectors for the meeting and any successor to the inspector.  Except as otherwise provided by the chairman of the meeting, the inspectors, if any, shall (i) determine the number of shares of stock represented at the meeting, in person or by proxy, and the validity and effect of proxies, (ii) receive and tabulate all votes, ballots or consents, (iii) report such tabulation to the chairman of the meeting, and (iv) do such acts as are proper to fairly conduct the election or vote.  Each such report shall be in writing and signed by the inspector or by a majority of them if there is more than one inspector acting at such meeting.  If there is more than one inspector, the report of a majority shall be the report of the inspectors.  The report of the inspector or inspectors on the number of shares represented at the meeting and the results of the voting shall be prima facie evidence thereof.

Section 11.    <u>Notice of Stockholder Business and Nominations</u>.

(A)    <u>Annual Meetings of Stockholders</u>.

(1)    Nominations of persons for election to the Board and the proposal of other business to be considered by the stockholders may be made at an annual meeting of stockholders only (a) pursuant to the Corporation's notice of meeting (or any supplement thereto) delivered pursuant to <u>Article I</u>, <u>Section 3</u> of these By-Laws, (b) by or at the

direction of the Board or any committee thereof or (c) by any stockholder of the Corporation who is entitled to vote on such election or such other business at the meeting, who complied with the notice procedures set forth in subparagraphs (2) and (3) of this paragraph (A) of this By-Law and who was a stockholder of record at the time such notice is delivered to the Corporation.

(2)      For nominations or other business to be properly brought before an annual meeting by a stockholder, the stockholder must have given timely notice thereof in writing to the Secretary of the Corporation (or if there be no Secretary, to the Chief Executive Officer), and, in the case of business other than nominations of persons for election to the Board, such other business must be a proper matter for stockholder action. To be timely, a stockholder's notice shall be delivered to the Secretary (or if there be no Secretary, to the Chief Executive Officer) at the principal executive offices of the Corporation not less than ninety (90) days nor more than one hundred twenty (120) days prior to the first anniversary of the preceding year's annual meeting; provided, however, that in the event that no annual meeting was held in the previous year or the date of the annual meeting is changed by more than thirty (30) days from such anniversary date, notice by the stockholder to be timely must be so delivered not earlier than the 120th day prior to such annual meeting and not later than the close of business on the later of the 90th day prior to such annual meeting or the tenth day following the day on which public announcement of the date of such meeting is first made; and provided further that, for purposes of the application of Rule 14a-4(c) of the Securities Exchange Act of 1934, as amended (the "Exchange Act") (or any successor provision), the date for notice specified in this paragraph (A)(2) shall be the earlier of the date calculated as hereinbefore provided or the date specified in paragraph (c)(1) of Rule 14a-4.  For purposes of the first annual meeting following the adoption of these By-Laws, the date of the first anniversary of the preceding year's annual meeting shall be deemed to be [●], 201[●].  Such stockholder's notice shall set forth (a) as to each person whom the stockholder proposes to nominate for election or re-election as a director all information relating to such person that is required to be disclosed in solicitations of proxies for election of directors, or is otherwise required, in each case pursuant to Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder, including such person's written consent to being named in the proxy statement as a nominee and to serving as a director if elected; (b) as to any other business that the stockholder proposes to bring before the meeting, a brief description of the business desired to be brought before the meeting, the text of the proposal or business (including the text of any resolutions proposed for consideration and, in the event that such business includes a proposal to amend these By-Laws, the language of the proposed amendment) and the reasons for conducting such business at the meeting; and (c) as to the stockholder giving the notice and the beneficial owner, if any, on whose behalf the nomination or proposal is made (i) the name and address of such stockholder, as they appear on the Corporation's books, and of such beneficial owner, (ii) the class or series and number of shares of the Corporation which are owned beneficially and of record by such stockholder and such beneficial owner, (iii) a representation that the stockholder is a holder of record of stock of the Corporation entitled to vote at such meeting and intends to appear in person or by proxy at the meeting to propose such business or nomination and (iv) any other information relating to such stockholder and beneficial owner, if any, required to be disclosed in a proxy statement required to be filed pursuant to the Exchange Act in connection with solicitations of proxies for, as applicable, the proposal and/or for the election of directors in an election contest pursuant to and in accordance with Section 14(a) of the Exchange Act and the rules and regulations promulgated thereunder.

The Corporation may require any proposed nominee to furnish such other information as it may reasonably require to determine the eligibility of such proposed nominee to serve as a director of the Corporation and to determine the independence of such director under the Exchange Act and rules and regulations thereunder and applicable stock exchange rules.

(3)    Notwithstanding anything in paragraph (A)(2) of this By-Law to the contrary, if the number of directors to be elected to the Board is increased, effective after the time period for which nominations would otherwise be due under paragraph (A)(2) of this By-Law, and there is no public announcement naming all of the nominees for director or specifying the size of the increased Board made by the Corporation at least eighty (80) days prior to the first anniversary of the preceding year's annual meeting, a stockholder's notice required by this By-Law shall also be considered timely, but only with respect to nominees for any new positions created by such increase, if it shall be delivered to the Secretary (or if there be no Secretary, to the Chief Executive Officer) at the principal executive offices of the Corporation not later than the close of business on the tenth day following the day on which a public announcement of such increase is first made by the Corporation; provided that, if no such announcement is made at least ten (10) days before the meeting, then no such notice shall be required.

(B)    Special Meetings of Stockholders.  Only such business shall be conducted at a special meeting of stockholders as shall have been brought before the meeting pursuant to the Corporation's notice of meeting pursuant to Article I, Section 3 of these By-Laws.  Nominations of persons for election to the Board may be made at a special meeting of stockholders at which directors are to be elected pursuant to the Corporation's notice of meeting (a) by or at the direction of the Board or a committee thereof or (b) provided that directors are to be elected at such meeting pursuant to the call of such meeting, by any stockholder of the Corporation who is entitled to vote on such election at the meeting who complies with the notice procedures set forth in this By-Law and who is a stockholder of record at the time such notice is delivered to the Secretary of the Corporation (or if there be no Secretary, to the Chief Executive Officer).  If the Corporation calls a special meeting of stockholders for the purpose of electing one or more directors to the Board, any such stockholder entitled to vote in such election of directors may nominate a person or persons (as the case may be) for election to such position(s) as specified in the Corporation's notice of meeting if the stockholder's notice as required by paragraph (A)(2) of this By-Law shall be delivered to the Secretary (or if there be no Secretary, to the Chief Executive Officer) at the principal executive offices of the Corporation not earlier than the 120th day prior to such special meeting and not later than the close of business on the later of the 90th day prior to such special meeting or the tenth day following the day on which public announcement is first made of the date of the special meeting and of the nominees proposed to be elected at such meeting.

(C)    General.

(1)    Only persons who are nominated in accordance with the procedures set forth in this By-Law shall be eligible to serve as directors and only such business shall be conducted at a meeting of stockholders as shall have been brought before the meeting in accordance with the procedures set forth in this By-Law.  In addition, nominations of persons by a stockholder for election to the Board and business proposed to be brought by a stockholder may not be brought before the meeting if such stockholder or any proponent persons, as applicable, takes action contrary to the representations made in the notice referred to in subparagraph (2) of paragraph (A) of this By-Law applicable to such nomination or business in any material respect.  Except as otherwise provided by law, the

7

Charter or these By-Laws, the chairman of the meeting shall, if the facts warrant, determine and declare to the meeting that any nomination or business was not properly brought before the meeting in accordance with the provisions of these By-Laws, and if he or she should so determine, the chairman shall so declare to the meeting, and any such nomination or business not properly brought before the meeting shall not be transacted; provided that any stockholder proposing to bring any such business before any such meeting is informed of any deficiency in such procedures as soon as practicable and given a reasonable opportunity to cure any such deficiency.

(2)    For purposes of this By-Law, "public announcement" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or comparable national news service or in a document publicly filed or furnished by the Corporation with the Securities and Exchange Commission pursuant to Section 13, 14 or 15(d) of the Exchange Act.

(3)    For purposes of this By-Law, no adjournment or postponement or notice of adjournment or postponement of any meeting shall be deemed to constitute a new notice of such meeting for purposes of this Section 11, and in order for any notification required to be delivered by a stockholder pursuant to this Section 11 to be timely, such notification must be delivered within the periods set forth above with respect to the originally scheduled meeting.

(D)    Hunt Nominated Directors.  Notwithstanding anything to the contrary contained in these By-Laws:

(1)    For so long as no Hunt Termination Event has occurred, the Hunt Group (as defined in Article II, Section 5(D)(6)) shall have the right to designate up to two persons, one of whom will be the Chief Executive Officer of the Corporation (to the extent the services of such individual as the Chief Executive Officer of the Corporation are provided to the Corporation under the Management Agreement) (each, a "Hunt Nominee") to be nominated for election to the Board at each annual meeting of stockholders or special meeting of stockholders called for the purpose of electing directors in a manner that would ensure that, at all times, the Board will include two directors nominated by Hunt Consolidated, Inc., as set forth in a written certification signed by one of its executive officers (each, a "Hunt Nominated Director").  Following the Corporation's receipt of notice of such designation by Hunt Consolidated, Inc., the Board (or the appropriate nominating committee thereof) shall nominate the Hunt Nominees for election at such meeting.  For the avoidance of doubt, any director originally nominated by Hunt Consolidated, Inc., who is subsequently nominated by the Board, shall be deemed to have been nominated by Hunt Consolidated, Inc. for purposes of this provision unless Hunt Consolidated, Inc. objects in writing to the Board to the nomination of such director for election.

(2)    For so long as no Hunt Consortium Termination Event has occurred, the Hunt Consortium Investors shall have the right to designate one person (the "Hunt Consortium Nominee") to be nominated for election to the Board at each annual meeting of stockholders or special meeting of stockholders called for the purpose of electing directors in a manner that would ensure that, at all times, the Board will include one director collectively nominated by all of the Hunt Consortium Investors (the "Hunt Consortium Nominated Director").  Following the Corporation's receipt of notice of such designation by the Hunt Consortium Investors, as set forth in a written certification signed by each of the Hunt Consortium Investors, the Board (or the appropriate

nominating committee thereof) shall nominate the Hunt Consortium Nominees for election at such meeting.

(3)     For purposes of this Section 11(D) of this Article I, the following terms shall have the following meanings:

a.     The term "Hunt Consortium Investor" means an Investor designated as such on Schedule A of the Interest Holders Agreement (as defined in Article II, Section 5(D)(8)).

b.     The term "Hunt Consortium Termination Event" means (i) a Hunt Termination Event or (ii) the Hunt Consortium Investors, together with their respective Affiliates (as such term is defined in Rule 12b-2 of the Securities and Exchange Act of 1934, as amended), ceasing to own in the aggregate at least a majority of the shares of Common Stock owned by the Hunt Consortium Investors as of [●], 2016.

c.     The term "Hunt Termination Event" means (i) the Manager resigns or is removed or terminated from service in such capacity under the Management Agreement and is not succeeded in such capacity under the Management Agreement by another member of the Hunt Group, (ii) the Manager at any time ceases to be a member of the Hunt Group or (iii) there is an OEDC Change of Control.

d.     The term "Management Agreement" means the Management Agreement, dated as of [●], 2016, among Hunt Utility Services, LLC, the Corporation, the Operating Partnership (as defined in Article II, Section 5(D)(9)), [Oncor AssetCo] Holdings Company LLC and [Oncor AssetCo] LLC.

e.     The term "Manager" means the manager under the Management Agreement.

f.     The term "OEDC" means Oncor Electric Delivery Company LLC, a Texas limited liability company

g.     The term "OEDC Change of Control" means the members of the Hunt Group ceasing to Control (as defined in Article II, Section 5(D)(3)) OEDC.

The provisions set forth in this Section 11 may not be repealed or amended in any respect or in any manner, including by any merger or consolidation of the Corporation with any other corporation (other than a Non-Affiliated Transaction), unless the surviving corporation's certificate of incorporation or bylaws contains a provision to the same effect as this Section 11, except by the affirmative vote of the holders of a majority of the voting power of all shares of capital stock of the Corporation entitled to vote on the election of directors, subject to the terms of any series of preferred stock that may at the time be outstanding.

Section 12.     Shares.

(A)     Certificates representing shares of the Corporation shall be in such form as may be determined by the Board. Such certificates shall be signed by the President or Vice President and by the Secretary or an Assistant Secretary. Any signatures or countersignature on the certificate may be facsimiles. If any officer of the Corporation, or any officer or employee of the transfer agent or registrar, who has signed or whose facsimile signature has been placed upon such certificate ceases to be an officer of the corporation, or an officer or employee of the transfer

agent or registrar, before such certificate is issued, the certificate may be issued by the Corporation with the same effect as if the officer of the Corporation, or the officer or employee of the transfer agent or registrar, had not ceased to be such at the date of its issue. Certificates for shares shall be individually numbered or otherwise individually identified. Each certificate for shares shall state the name of the registered owner of the shares in the stock ledger, the number and the class and series, if any, of such shares, and the date of issuance of the certificate. If the Corporation is authorized to issue more than one class of stock, a full summary or statement of all of the designations, preferences, qualifications, limitations, restrictions, and special or relative rights of each class authorized to be issued, and, if the Corporation is authorized to issue any preferred or special class in series, the variations in the relative rights and preferences among such series, shall be set forth upon the face or back of the certificate. Such statement may be omitted if it shall be set forth upon the face or back of the certificate that such statement, in full, will be furnished by the Corporation to any stockholder upon request and without charge.

(B)    The Board may provide by resolution that some or all of any or all classes and series of its shares shall be uncertificated shares, and may provide an election by individual stockholders to receive certificates or uncertificated shares and the conditions of such election, provided that such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Within a reasonable time after the registration of issuance or transfer of uncertificated shares, the Corporation shall send to the registered owner thereof a written notice containing the information required to be set forth or stated on certificates pursuant to the DGCL or these By-Laws. Except as otherwise expressly provided by law, the rights and obligations of the holders of uncertificated shares and rights and obligations of the holders of certificates representing shares of the same class and series shall be identical.

(C)    All transfers of shares of stock shall be made on the books of the Corporation, by the holder of the shares, in person or by his or her attorney, in such manner as the Board or any officer of the Corporation may prescribe and, if such shares are certificated, upon surrender of certificates duly endorsed.  The issuance of a new certificate upon the transfer of certificated shares is subject to the determination of the Board that such shares shall no longer be represented by certificates.

(D)    The Corporation shall be entitled to treat the holder of record of any share of stock as the holder in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share or on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise expressly provided by the laws of the State of Delaware.

(E)    Notwithstanding the foregoing, transfers of shares of any class or series of stock will be subject in all respects to the Charter and all of the terms and conditions contained therein.

(F)    Any officer of the Corporation may direct a new certificate or certificates to be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost, destroyed, stolen or mutilated, upon the making of an affidavit of that fact by the person claiming the certificate to be lost, destroyed, stolen or mutilated; provided, however, that if such shares have ceased to be certificated, no new certificate shall be issued unless requested in writing by such stockholder and the Board has determined that such certificates may be issued. Unless otherwise determined by an officer of the Corporation, the owner of such lost, destroyed, stolen or mutilated certificate or certificates, or his or her legal representative, shall be required, as a condition precedent to the issuance of a new certificate or certificates, to give the Corporation a bond in such sums as it may direct as indemnity against any claim that may be made against the Corporation.

(G)    The Corporation shall maintain at its principal office, or at the office of its counsel, accountants or transfer agent, an original or duplicate stock ledger containing the name and address of each stockholder and the number of shares of each class held by such stockholder.

(H)    The Corporation may, but shall not be required to, issue fractions of a share.

ARTICLE II

BOARD OF DIRECTORS

Section 1.    <u>Powers</u>.  The business and affairs of the Corporation shall be managed by or under the direction of its Board.  The Board may exercise all such authority and powers of the Corporation and do all such lawful acts and things as are not by the DGCL or the Charter directed or required to be exercised or done by the stockholders.

Section 2.    <u>Number; Tenure and Resignation</u>.

(A)    At any regular meeting or at any special meeting called for that purpose, a majority of the entire Board may establish, increase or decrease the number of directors, <u>provided</u> that the number thereof shall never be less than seven, nor more than fifteen, and further <u>provided</u> that the tenure of office of a director shall not be affected by any decrease in the number of directors. The number of directors initially, and at all times until _____,[1] shall consist of 13 individuals. A plurality of the votes cast in favor of a nominee at any such meeting annual meeting of stockholders or at a special meeting of stockholders called for the purpose of electing directors shall be required for, and sufficient to, elect a director. Each director shall hold office until the next annual meeting of stockholders following such director's election and until such director's successor shall have been duly elected and qualified or until such director's earlier death, resignation or removal. Directors need not be stockholders or residents of the State of Delaware.

(B)    Any director may resign at any time upon written notice to the Corporation, and may be removed only in the manner provided in the Charter.  Any resignation shall take effect immediately upon its receipt or at such later time specified in the resignation.  The acceptance of a resignation shall not be necessary to make it effective unless otherwise stated in the resignation.

Section 3.    <u>Vacancies</u>.  If for any reason any or all of the directors cease to be directors, such event shall not terminate the Corporation or affect these By-Laws or the powers of the remaining directors hereunder or under the Charter. Subject to the rights of holders of any series of preferred stock, if any outstanding, under specified circumstances, any newly created directorship on the Board that results from an increase in the number of directors may be filled by a majority of the directors then in office, and any other vacancy occurring on the Board (except as otherwise provided in this <u>Section 3</u> of <u>Article II</u>) may be filled by a majority of the directors then in office, even if less than a quorum; <u>provided</u> that any vacancy occurring on the Board as a result of the removal of any director (other than a Hunt Nominated Director, at any time prior to the occurrence of a Hunt Termination Event, or the Hunt Consortium Nominated Director, at any time prior to the occurrence of a Hunt Consortium Termination Event) from office by the holders of Common Stock in accordance with the procedures set forth in the Charter may be filled by the affirmative vote of the holders of a majority of the voting power of the then outstanding Common Stock; <u>provided further</u> that  any vacancy occurring on the Board of Directors as a result of the resignation or removal from office of a Hunt Nominated Director at any time prior to the occurrence of a Hunt Termination Event shall be filled only by the remaining Hunt Nominated Director then in office, and any

---

[1] Date to be the first anniversary of emergence from bankruptcy.

such replacement director shall be deemed to be a "Hunt Nominated Director" for purposes of these By-Laws and the Charter; and <u>further provided</u> that any vacancy occurring on the Board of Directors as a result of the resignation or removal from office of the Hunt Consortium Nominated Director at any time prior to the occurrence of a Hunt Consortium Termination Event shall be collectively filled only by the Hunt Consortium Investors, as set forth in a written certification signed by each of the Hunt Consortium Investors, and any such replacement director shall be deemed to be a "Hunt Consortium Nominated Director" for purposes of these By-Laws and the Charter.  Subject to the rights of holders of any series of preferred stock, if any outstanding, under specified circumstances, any director elected to fill a vacancy shall serve the same remaining term as that of his or her predecessor, subject, however, to prior death, resignation, retirement, disqualification, or removal from office.

Section 4.     <u>Meetings</u>.

(A)     An annual meeting of the Board shall be held immediately after and at the same place as the annual meeting of stockholders, no notice other than this By-Law being necessary. In the event such meeting is not so held, the meeting may be held at such time and place as shall be specified in a notice given as hereinafter provided for special meetings of the Board.  The Board may provide, by resolution, the time and place for the holding of regular meetings of the Board without other notice than such resolution.

(B)     Special meetings of the Board may be called by or at the request of the Chairman of the Board, the Chief Executive Officer, the Chief Financial Officer, the President or a majority of the directors then in office.  The person or persons authorized to call special meetings of the Board may fix any place as the place for holding any special meeting of the Board called by them.  The Board may provide, by resolution, the time and place for the holding of special meetings of the Board without other notice than such resolution.

(C)     Notice of any special meeting shall be given: (i) at least five business days (or 12 hours, including at least four hours between 8:00 a.m. New York time and 6:00 p.m. New York time, if telephonic participation or participation by other electronic communication equipment is provided for with respect to the special meeting) prior thereto if the notice is given personally or by an electronic transmission, (ii) at least five business days (or two business days if telephonic participation or participation by other electronic communication equipment is provided for with respect to the special meeting) prior thereto if the notice is given by having it delivered by a third party entity that provides delivery services in the ordinary course of business and guarantees delivery of the notice to the director no later than the following business day, and (iii) at least seven business days prior thereto if the notice is given by mail  For this purpose, the term "<u>electronic transmission</u>" may include a facsimile, email or other electronic means. Notice shall be delivered to the director's business address and/or telephone number and shall be deemed given upon electronic transmission, upon delivery to the third party delivery service, or upon being deposited in the United States mail with postage thereon prepaid. Any director may waive notice of any meeting by signing a written waiver of notice either before or after the meeting. Attendance of a director at any meeting shall constitute a waiver of notice of such meeting, except when a director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of the board of directors need be specified in the notice or waiver of notice of such meeting.

Section 5.     <u>Quorum; Vote Required</u>.

(A)     A majority of the directors shall constitute a quorum for transaction of business at any meeting of the Board, <u>provided</u> that, if less than a majority of such directors is present at

such meeting, a majority of the directors present may adjourn the meeting from time to time without further notice, and provided further that if, pursuant to applicable law, the Charter or these By-Laws, the vote of a majority or other percentage of a particular group of directors is required for action, a quorum must also include a majority or such other percentage of such group. Except as otherwise provided in Section 5(C) of this Article II, the act of a majority of the directors comprising the full Board at a meeting at which a quorum is present shall be the act of the Board.

(B)     The directors present at a meeting which has been duly called and at which a quorum has been established may continue to transact business until adjournment, notwithstanding the withdrawal from the meeting of enough directors to leave fewer than required to establish a quorum.

(C)     Any action by the Board to approve or take action to authorize or effect any of the following transactions or other matters will require the approval of 66⅔% of the total number of directors:

(1)     any consolidation of the Corporation or the Operating Partnership with another Entity or any merger of the Corporation or the Operating Partnership with or into another Entity;

(2)     any issuance of Equity Interests in the Corporation or the Operating Partnership to any Person (or group of Persons) that owns more than 5% of the total outstanding Equity Interests of the applicable class of Equity Interests of the Corporation or the Operating Partnership;

(3)     any change (whether by conversion, recapitalization or otherwise) in the legal form of the Corporation or the Operating Partnership from a Delaware corporation (in the case of the Corporation) or a Delaware limited partnership (in the case of the Operating Partnership) to any other type of Entity;

(4)     any modification of or amendment to the Interest Holders Agreement;

(5)     any modification of or amendment to the Partnership Agreement that requires the approval of the Corporation;

(6)     any consent by the Corporation to any Transfer by the Hunt Limited Partner of any Common Units received by it upon conversion of Class A Units pursuant to Section 3.9 of the Partnership Agreement other than to members of the Hunt Group; or

(7)     the voluntary filing of a petition in bankruptcy for the Corporation or the Operating Partnership, the making of an assignment for the benefit of creditors of the Corporation or the Operating Partnership, the filing of a petition or answer seeking, consenting to or acquiescing in any reorganization, arrangement, readjustment, liquidation, dissolution or similar relief with respect to the Corporation or the Operating Partnership under any statute, law or regulation or the taking of any action seeking, consenting to or acquiescing in the appointment of a trustee, receiver or liquidator of the Corporation or the Operating Partnership or any substantial part of the properties and assets of the Corporation or the Operating Partnership.

(D)     For purposes of Section 5(C) of this Article II, the following terms shall have the following meanings:

(1)     The term "<u>Class A Unit</u>" means a partnership unit in the Operating Partnership with the preferences, conversion or other rights, voting powers or rights, restrictions, limitations as to distribution, qualifications or other terms or conditions provided for Class A Units under the Partnership Agreement.

(2)     The term "<u>Common Unit</u>" means a partnership unit in the Operating Partnership with the preferences, conversion or other rights, voting powers or rights, restrictions, limitations as to distribution, qualifications or other terms or conditions provided for Common Units under the Partnership Agreement.

(3)     The term "<u>Control</u>" or "<u>Controlled</u>" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of Equity Interests, by contract or otherwise. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the Equity Interests.

(4)     The term "<u>Entity</u>" means any partnership (whether general or limited), limited liability company, trust (including a common law trust, statutory trust, voting trust or any other form of trust), estate, association (including any group, organization, co-tenancy, plan, board, council or committee), corporation, governmental authority or any other entity.

(5)     The term "<u>Equity Interests</u>" means (i) with respect to any corporation, all shares, interests, participations or other equivalents of capital stock of such corporation, however designated, and any warrants, options or other rights to purchase or acquire any such capital stock and any securities convertible into or exchangeable or exercisable for any such capital stock, (ii) with respect to any partnership, all partnership interests, participations or other equivalents of partnership interests of such partnership, however designated, and any warrants, options or other rights to purchase or acquire any such partnership interests and any securities convertible into or exchangeable or exercisable for any such partnership interests, (iii) with respect to any limited liability company, all units, interests, participations or other equivalents of membership interests of such limited liability company, however designated, and any warrants, options or other rights to purchase or acquire any such membership interests and any securities convertible into or exchangeable or exercisable for any such membership interests and (iv) with respect to any other Entity, all equity interests in such Entity that are equivalent to the equity interests described in clauses (i) through (iii) above.

(6)     The term "<u>Hunt Group</u>" means (i) Hunt Consolidated, Inc.; (ii) Ray L. Hunt, Hunter L. Hunt, their respective spouses, any trust established primarily for the benefit of any of the foregoing and any lineal descendent of the foregoing (including by adoption); (iii) Sharyland Utilities, L.P., and (iv) all Entities Controlled, individually or collectively, or directly or indirectly, by any of the Persons identified in the preceding clause (i), (ii) or (iii).

(7)     The term "<u>Hunt Limited Partner</u>" has the meaning ascribed to such term in the Partnership Agreement.

(8)     The term "<u>Interest Holders Agreement</u>" means the Interest Holders Agreement, dated as of [●], 2016, among the Corporation, Ovation Acquisition II, L.L.C., the Operating Partnership, Hunt Power Holdings, L.L.C. and each of the Persons identified on Schedule A thereto, as it may be amended from time to time.

(9)    The term "<u>Operating Partnership</u>" means [Ovation Partners, L.P.], or any successor Entity thereto.

(10)    The term "<u>Partnership Agreement</u>" means the Agreement of Limited Partnership of the Operating Partnership, dated as of [●], 2016, as it may be amended from time to time.

(11)    The term "<u>Person</u>" means any individual or Entity.

(12)    The term "<u>Transfer</u>" means, with respect to a Common Unit, a transfer, assignment, mortgage, encumbrance, grant of a security interest in, or any other disposition or hypothecation of such Common Unit, direct or indirect, voluntary, involuntary or by operation of law.

Section 6.    <u>Organization</u>.    At each meeting of the Board, the Chairman of the Board or, in the absence of the chairman, a director chosen by a majority of the directors present, shall act as chairman of the meeting.  The Secretary or, in his or her absence, an assistant Secretary of the Corporation, or, in the absence of the Secretary and all assistant secretaries, an individual appointed by the chairman of the meeting, shall act as Secretary of the meeting.

Section 7.    <u>Preferred Stock</u>.    Notwithstanding the foregoing, whenever the holders of any one or more series of preferred stock issued by the Corporation shall have the right, voting separately as a series or separately as a class with one or more such other series, to elect directors at an annual or special meeting of stockholders, the election, term of office, removal, and other features of such directorships shall be governed by the terms of the Charter (including any certificate of designation relating to any series of preferred stock) applicable thereto.  The number of directors that may be elected by the holders of any such series of preferred stock shall be in addition to the number fixed pursuant to the Charter and these By-Laws.  Except as otherwise expressly provided in the terms of such series, the number of directors that may be so elected by the holders of any such series of stock shall be elected for terms expiring at the next annual meeting of stockholders, and vacancies among directors so elected by the separate vote of the holders of any such series of preferred stock shall be filled by the affirmative vote of a majority of the remaining directors elected by such series, or, if there are no such remaining directors, by the holders of such series in the same manner in which such series initially elected a director.

Section 8.    <u>Committees</u>.    The Board may designate, by resolution passed by the Board, one or more committees, each such committee to consist of one or more of the directors of the Corporation.  The Board may designate one or more directors as alternate members of any committee to replace any absent or disqualified member at any meeting of the committee.  Any such committee, to the extent provided in the resolution of the Board establishing such committee, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation (if any) to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to the following matters of: (a) approving or adopting, or recommending to the stockholders, any action or matter (other than the election or removal of directors) expressly required by the DGCL to be submitted to stockholders for approval or (b) adopting, amending or repealing any By-Law of the Corporation.  All committees of the Board shall keep minutes of their meetings and shall report their proceedings to the Board when requested or required by the Board.  Each committee of the Board may fix its own rules of procedure and shall hold its meetings as provided by such rules, except as may otherwise be provided by a resolution of the Board designating such committee.  Unless otherwise provided in such a resolution, the presence of at least a majority of the members of the committee shall be necessary to constitute a quorum.  Unless otherwise provided in such a resolution, in the event that a member and that member's alternate, if alternates are designated by the Board, of such committee is or are absent or disqualified, the member or members thereof present at any

meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in place of any such absent or disqualified member.

Section 9.    Action Without a Meeting.    Unless otherwise restricted by the Charter or these By-Laws, any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing (including by electronic transmission), and the writing or writings (including any electronic transmissions) are filed with the minutes of proceedings of the Board.

Section 10.    Remote Meeting.    The members of the Board or any committee thereof may participate in a meeting of such Board or committee, as the case may be, by means of conference telephone or other communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting pursuant to this subsection shall constitute presence in person at such a meeting.

Section 11.    Compensation.    The Board may establish policies for the compensation of directors and for the reimbursement of the expenses of directors, in each case, in connection with services provided by directors to the Corporation. Without limiting the foregoing, directors may be paid their expenses, if any, of attendance at each meeting of the Board. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefor. The Chairman of the Board and members of special or standing committees may be compensated additionally for so serving.

Section 12.    Reliance on Books and Records.    A member of the Board, or a member of any committee designated by the Board shall, in the performance of such person's duties, be fully protected in relying in good faith upon records of the Corporation and upon such information, opinions, reports or statements presented to the Corporation by any of the Corporation's officers or employees, or committees of the Board, or by any other person as to matters the member reasonably believes are within such other person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Corporation.

Section 13.    Chairman of the Board.    The Chairman of the Board shall be elected by a majority of the non-management members of the Board, shall not be a member of the Corporation's management team and shall hold the position until a successor is elected and qualified or until such chairman's earlier resignation or removal. Any vacancy occurring in the position shall be filled by the Board for the unexpired portion of the term. The Chairman of the Board shall serve at the pleasure of the Board. The Chairman of the Board, or in such person's absence, the Chief Executive Officer, or in the absence of both such persons, the person determined by resolution of the Board, shall preside at all meetings of the Board and shall coordinate, develop an agenda for, and moderate meetings of the Board. The Chairman of the Board shall also have the power (among other things): to convene executive sessions of the non-management directors of the Board and shall coordinate, develop an agenda for, and moderate such sessions; to consult with the non-management directors and serve as a conduit to senior management of the corporation of the views of the non-management directors when the Board is not in session; to engage outside advisors to report to the Board or a committee thereof; to refer to the chairman of any committee of the Board, matters within the scope of such committee's authority; and to confer with outside counsel, auditors and other advisors to the Corporation.

ARTICLE III

OFFICERS

Section 1.        Number.  The Board, at its next meeting following each annual meeting of the stockholders, shall elect officers of the Corporation, including a Chief Executive Officer, President, Chief Financial Officer, Treasurer and a Secretary.  The Board may also from time to time elect such other officers (including, without limitation, a Chief Operating Officer, a Chief Legal Officer and/or General Counsel, one or more Vice Presidents, a Treasurer, one or more Assistant Vice Presidents, one or more Assistant Secretaries and one or more Assistant Treasurers) as it may deem proper or may delegate to any elected officer of the Corporation the power to appoint and remove any such other officers and to prescribe their respective terms of office, authorities and duties.  Any two or more offices may be held by the same person except (a) Chief Executive Officer and Chief Financial Officer or (b) President and Vice President.  Any Vice President may be designated Executive, Senior or Corporate, or may be given such other designation or combination of designations as the Board or the Chief Executive Officer may determine.  Except as provided otherwise in this section, any two or more offices may be held by the same person.  An officer may or may not also be an employee of the Corporation.

Section 2.        Term; Removal.  All officers of the Corporation elected by the Board shall hold office for such terms as may be determined by the Board or, except with respect to his or her own office, the Chief Executive Officer, or until their respective successors are chosen and qualified or until his or her earlier resignation or removal.  Any officer may be removed from office at any time either with or without cause by affirmative vote of a majority of the members of the Board then in office, or, in the case of appointed officers, by any elected officer upon whom such power of removal shall have been conferred by the Board.

Section 3.        Powers.  Each of the officers of the Corporation elected by the Board or appointed by an officer in accordance with these By-Laws shall have the powers and duties prescribed by law, by these By-Laws or by the Board and, in the case of appointed officers, the powers and duties prescribed by the appointing officer, and, unless otherwise prescribed by these By-Laws or by the Board or such appointing officer, shall have such further powers and duties as ordinarily pertain to that office.

Section 4.        Chief Executive Officer.  The Chairman of the Board shall not be the Chief Executive Officer of the Corporation. The Chief Executive Officer shall (a) determine and administer the policies of the corporation, subject to the oversight and instructions of the Board; (b) be authorized to execute all documents in the name and on behalf of the Corporation, except in cases where the execution thereof shall be expressly delegated by the Board to some other officer or agent of the Corporation or shall be required by law to be otherwise executed; and (c) perform all duties normally incident to the office of Chief Executive Officer and such other duties as the Board or these By-Laws may from time to time prescribe.

Section 5.        President.  The President shall, in the absence of a Chief Operating Officer, be the chief operating officer of the Corporation, and shall, in the absence of a Chief Executive Officer, be the chief executive officer and generally be in charge of the operations of the Corporation, subject to the oversight and control of the Board.  The President shall (a) be authorized to execute all documents in the name and on behalf of the Corporation, except in cases where the execution thereof shall be expressly delegated by the Board to some other officer or agent of the Corporation or shall be required by law to be otherwise executed and (b) perform all duties normally incident to the office of President and such other duties as the Board may from time to time prescribe.

Section 6.        Vice Presidents.  In the absence of the President or in the event of the inability or refusal of the President to act, the Vice President (or if there is more than one Vice President, the Vice

Presidents in the order of seniority of title, or in the event of equal seniority, then in the order designated, or in the absence of any designation, then in the order named in the most recent resolution providing for the annual election of officers) shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. Any Vice President shall perform such other duties and have such other powers as the Board or the Chief Executive Officer or President may from time to time prescribe.

Section 7.    Secretary.    The Secretary shall (a) attend meetings of the Board and meetings of the stockholders and record minutes of the proceedings of the meetings of the stockholders and of the Board, and, when required, shall perform like duties for the committees of the Board; (b) assure that all notices are duly given in accordance with the provisions of these By-Laws or as required by law; (c) maintain custody of the corporate records of the Corporation; (d) keep or cause to be kept a register of the post office address of each stockholder as furnished to the Secretary by such stockholder; (e) sign certificates for shares of the Corporation, the issuance of which shall have been authorized by resolution of the Board; (f) have charge of the stock transfer books of the Corporation and authority over a stock transfer agent, if any; (g) certify copies of the By-Laws, resolutions of the stockholders and Board and committees thereof and other documents of the Corporation as true and correct copies thereof; and (h) perform all duties normally incident to the office of Secretary and such other duties as the Board or the Chief Executive Officer or President may from time to time prescribe.

Section 8.    Chief Financial Officer.    The Chief Financial Officer shall have responsibility for the financial affairs of the Corporation and, if the Chief Financial Officer is not also the Treasurer, shall exercise supervisory responsibility for the performance of the duties of the Treasurer. The Chief Financial Officer shall perform all duties normally incident to the office of Chief Financial Officer and such other duties as the Board or the Chief Executive Officer or President may from time to time prescribe.

Section 9.    Treasurer.    The Treasurer shall (a) have custody of the funds and securities of the Corporation; (b) deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board; (c) maintain adequate accounts of the Corporation; (d) disburse the funds of the Corporation as may be ordered by the Board; (e) submit financial statements to the Chief Executive Officer, President, Chief Financial Officer and the Board; and (f) perform all duties normally incident to the office of Treasurer and such other duties as the Board or the Chief Executive Officer, President or Chief Financial Officer may from time to time prescribe.

ARTICLE IV

CORPORATE BOOKS

The books of the Corporation may be kept inside or outside of the State of Delaware at such place or places as the Board may from time to time determine.  The Board shall have power to determine to what extent and at what times and places and under what conditions and regulations the accounts and books of the Corporation, or any of them, shall be open to the inspection of the stockholders; and no stockholder shall have any right to inspect any account or book or document of the Corporation, except as conferred by the laws of the State of Delaware, unless and until authorized by resolution of the Board or of the stockholders of the Corporation.

ARTICLE V

CHECKS, DRAFTS, PROXIES

Section 1.    Contracts.    The Board may authorize any officer or agent to enter into any contract or to execute and deliver any instrument in the name of and on behalf of the Corporation and

such authority may be general or confined to specific instances.  Any agreement, deed, mortgage, lease or other document shall be valid and binding upon the Corporation when duly authorized or ratified by action of the Board and executed by an authorized person.

Section 2.        Checks and Drafts.  All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the Corporation shall be signed by such officer or agent of the Corporation in such manner as shall from time to time be determined by the Board.

Section 3.        Proxies to Vote.  Proxies to vote and consents with respect to securities of other corporations owned by or standing in the name of the Corporation may be executed and delivered from time to time on behalf of the Corporation by the Chairman of the Board, the Chief Executive Officer, or by such officers as the Chairman of the Board, the Chief Executive Officer or the Board may from time to time determine.

ARTICLE VI

FISCAL YEAR

The fiscal year of the Corporation shall be fixed, and shall be subject to change, by the Board.

ARTICLE VII

INDEMNIFICATION

Section 1.        Indemnification Respecting Third Party Claims.

(A)        Indemnification of Directors and Officers.  Subject to Section 3 of this Article VII, the Corporation, to the fullest extent and in the manner permitted by the laws of the State of Delaware as in effect from time to time, shall indemnify in accordance with the following provisions of this Article VII any person (a "Covered Person") who was or is made a party to, is threatened to be made a party to or is involved in any threatened, pending or completed action, suit or proceeding (including any appeal thereof), whether civil, criminal, administrative, regulatory or investigative in nature (other than an action by or in the right of the Corporation), by reason of the fact that such Covered Person is or was a director or officer of the Corporation, or, at a time when he or she was a director or officer of the Corporation, is or was serving at the request of, or to represent the interests of, the Corporation as a director, officer, partner, member, trustee, fiduciary, employee or agent (a "Subsidiary Officer") of another corporation, partnership, joint venture, limited liability company, trust, employee benefit plan or other enterprise, including any charitable or not-for-profit public service organization or trade association (an "Affiliated Entity"), against reasonable expenses (including attorneys' fees and disbursements), costs, judgments, fines, penalties and amounts paid in settlement actually incurred by such Covered Person in connection with such action, suit or proceeding if such Covered Person acted in good faith and in a manner such Covered Person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his or her conduct was unlawful; provided, however, that the Corporation shall not be obligated to indemnify against any amount paid in settlement unless the Corporation has consented to such settlement.  The termination of any action, suit or proceeding by judgment, order, settlement or conviction or upon a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the Covered Person did not act in good faith and in a manner which such Covered Person reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, that such Covered Person had reasonable cause to believe that his or her conduct was unlawful.

19

Notwithstanding anything to the contrary in the foregoing provisions of this paragraph, a Covered Person shall not be entitled, as a matter of right, to indemnification pursuant to this paragraph against costs or expenses incurred in connection with any action, suit or proceeding commenced by such Covered Person against the Corporation or any Affiliated Entity or any person who is or was a director, officer, partner, member, trustee, fiduciary, employee or agent of the Corporation or a Subsidiary Officer of any Affiliated Entity in their capacity as such unless such action, suit or proceeding (or part thereof) was authorized or consented to by the Board, but such indemnification may be provided by the Corporation in a specific case as permitted by Section 6 of this Article VII; provided that such Covered Person shall, to the fullest extent permitted by law, be entitled to indemnification in connection with any action, suit or proceeding commenced by such Covered Person to enforce his or her rights under this Article VII.

(B)     Indemnification of Employees and Agents.  The Corporation may indemnify any employee or agent of the Corporation in the manner and to the same or a lesser extent that it shall indemnify any director or officer under paragraph (A) above in this Section 1.

Section 2.     Indemnification Respecting Derivative Claims.

(A)     Indemnification of Directors and Officers.  Subject to Section 3 of this Article VII, the Corporation, to the fullest extent and in the manner permitted by the laws of the State of Delaware as in effect from time to time, shall indemnify in accordance with the following provisions of this Article VII any Covered Person who was or is made a party to, is threatened to be made a party to or is involved in any threatened, pending or completed action or suit (including any appeal thereof) brought by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that such Covered Person is or was a director or officer of the Corporation, or, at a time when he or she was a director or officer of the Corporation, is or was serving at the request of, or to represent the interests of, the Corporation as a Subsidiary Officer of an Affiliated Entity against reasonable expenses (including attorneys' fees and disbursements) and costs actually incurred by such Covered Person in connection with such action or suit if such Covered Person acted in good faith and in a manner such Covered Person reasonably believed to be in or not opposed to the best interests of the Corporation, except that no indemnification shall be made in respect of any claim, issue or matter as to which such Covered Person shall have been adjudged to be liable to the Corporation unless, and only to the extent that, the Court of Chancery of the State of Delaware or the court in which such judgment was rendered shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such Covered Person is fairly and reasonably entitled to indemnity for such expenses and costs as the Court of Chancery of the State of Delaware or such other court shall deem proper. Notwithstanding anything to the contrary in the foregoing provisions of this paragraph, a Covered Person shall not be entitled, as a matter of right, to indemnification pursuant to this paragraph against costs and expenses incurred in connection with any action or suit in the right of the Corporation commenced by such Covered Person unless such action, suit or proceeding (or part thereof) was authorized or consented to by the Board, but such indemnification may be provided by the Corporation in any specific case as permitted by Section 6 of this Article VII; provided that such Covered Person shall, to the fullest extent permitted by law, be entitled to indemnification in connection with any action, suit or proceeding commenced by such Covered Person to enforce his or her rights under this Article VII.

(B)     Indemnification of Employees and Agents.  The Corporation may indemnify any employee or agent of the Corporation in the manner and to the same or a lesser extent that it shall indemnify any director or officer under paragraph (A) above in this Section 2.

Section 3.　　Determination of Entitlement to Indemnification; Claims.　Any indemnification to be provided under Section 1 or 2 of this Article VII (unless ordered by a court of competent jurisdiction) shall be made by the Corporation only as authorized in the specific case upon a determination that indemnification is proper under the circumstances because such Covered Person has met the applicable standard of conduct set forth in such paragraph.　Such determination shall be made (a) by a majority vote of the directors who are not parties to such action, suit or proceeding, even if less than a quorum, or by majority vote of the members of a committee of the Board composed of at least three (3) members each of whom is not a party to such action, suit or proceeding; (b) if there are no such directors, or if such committee is not established or obtainable, or if such directors so direct, by independent legal counsel in a written opinion; or (c) by the stockholders.　If a claim for indemnification (following the final disposition of such action, suit or proceeding) or advancement of expenses under this Article VII is not paid in full within ninety (90) days after a written claim therefor by a Covered Person has been received by the Corporation, such person may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim.

Section 4.　　Right to Indemnification Upon Successful Defense.　Notwithstanding the other provisions of this Article VII, to the extent that a director or officer of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in any of paragraphs (A) or (B) of Section 1 or 2 of this Article VII, or in defense of any claim, issue or matter therein, or in any action, suit or proceeding brought by the director or officer to enforce rights to indemnification or advancement of expenses and costs granted pursuant to this Article VII, such Covered Person shall, to the fullest extent permitted by law, be indemnified against reasonable expenses (including attorneys' fees and disbursements) and costs actually incurred by such Covered Person in connection therewith.

Section 5.　　Advances of Expenses.

(A)　　Advances to Directors and Officers.　To the fullest extent not prohibited by applicable law, expenses (including attorneys' fees and disbursements and court costs) and costs incurred by any Covered Person referred to in paragraph (A) of Section 1 or 2 of this Article VII in defending a civil, criminal, administrative, regulatory or investigative action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding; provided, however, that to the extent required by law, such payment of expenses and costs in advance shall be made only upon receipt of an undertaking in writing by or on behalf of such Covered Person to repay such amount if it shall ultimately be determined that such Covered Person is not entitled to be indemnified in respect of such costs and expenses by the Corporation as authorized by this Article VII.

(B)　　Advances to Employees and Agents.　To the fullest extent not prohibited by applicable law, expenses and costs incurred by any person referred to in paragraph (B) of Section 1 or 2 of this Article VII in defending a civil, criminal, administrative, regulatory or investigative action, suit or proceeding may be paid by the Corporation in advance of the final disposition of such action, suit or proceeding as authorized by the Board, a committee thereof or an officer of the Corporation authorized to so act by the Board upon receipt of an undertaking in writing by or on behalf of such person to repay such amount if it shall ultimately be determined that such person is not entitled to be indemnified by the Corporation in respect of such costs and expenses as authorized by this Article VII.

Section 6.　　Indemnification Not Exclusive.

(A)　　The provision of indemnification to or the advancement of expenses and costs to any Covered Person under this Article VII, or the entitlement of any Covered Person to

indemnification or advancement of expenses and costs under this <u>Article VII</u>, shall not limit or restrict in any way the power of the Corporation to indemnify or advance expenses and costs to such Covered Person in any other way permitted by law or be deemed exclusive of, or invalidate, any right to which any Covered Person seeking indemnification or advancement of expenses and costs may be entitled under any law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in such Covered Person's capacity as an officer, director, employee or agent of the Corporation and as to action in any other capacity.

(B)    Given that certain jointly indemnifiable claims (as defined below) may arise due to the service of the Covered Person as a director of the Corporation at the request of the indemnitee-related entities (as defined below), the Corporation shall be fully and primarily responsible for the payment to the Covered Person in respect of indemnification or advancement of expenses in connection with any such jointly indemnifiable claims, pursuant to and in accordance with the terms of this <u>Article VII</u>, irrespective of any right of recovery the Covered Person may have from the indemnitee-related entities.    Under no circumstance shall the Corporation be entitled to any right of subrogation or contribution by the indemnitee-related entities and no right of advancement or recovery the Covered Person may have from the indemnitee-related entities shall reduce or otherwise alter the rights of the Covered Person or the obligations of the Corporation hereunder.

For purposes of this <u>Section 6(B)</u> of <u>Article VII</u>, the following terms shall have the following meanings:

(1)    The term "<u>indemnitee-related entities</u>" means any corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise (other than the Corporation or any other corporation, limited liability company, partnership, joint venture, trust, employee benefit plan or other enterprise for which the Covered Person has agreed, on behalf of the Corporation or at the Corporation's request, to serve as a director, officer, employee or agent and which service is covered by the indemnity described herein) from whom a Covered Person may be entitled to indemnification or advancement of expenses with respect to which, in whole or in part, the Corporation may also have an indemnification or advancement obligation.

(2)    The term "<u>jointly indemnifiable claims</u>" shall be broadly construed and shall include, without limitation, any action, suit or proceeding for which the Covered Person shall be entitled to indemnification or advancement of expenses from both the indemnitee-related entities and the Corporation pursuant to Delaware law, any agreement or certificate of incorporation, by-laws, partnership agreement, operating agreement, certificate of formation, certificate of limited partnership or comparable organizational documents of the Corporation or the indemnitee-related entities, as applicable.

Section 7.    <u>Corporate Obligations; Reliance</u>.

(A)    The rights granted pursuant to the provisions of this <u>Article VII</u> shall vest at the time a person becomes a director or officer of the Corporation and shall be deemed to create a binding contractual obligation on the part of the Corporation to the persons who from time to time are elected as officers or directors of the Corporation, and such persons in acting in their capacities as officers or directors of the Corporation or Subsidiary Officers of any Affiliated Entity shall be entitled to rely on such provisions of this <u>Article VII</u> without giving notice thereof to the Corporation.

(B)    Without the consent of any affected Covered Person, the Corporation shall not, in connection with the settlement or resolution of any claim alleged against it in any action, suit or

proceeding, seek or consent to entry of an order that releases, bars or otherwise affects the rights of indemnification and advancement of expenses provided in this Article VII.

Section 8.    Amendment or Repeal.  Any repeal or modification of the provisions of this Article VII shall not adversely affect any right or protection hereunder of any Covered Person in respect of any action, suit or proceeding (regardless of when such action, suit or proceeding is first threatened, commenced or completed) arising out of, or related to, any act or omissions occurring prior to the time of such repeal or modification.

Section 9.    Accrual of Claims; Successors.  The indemnification provided or permitted under the foregoing provisions of this Article VII shall or may, as the case may be, apply in respect of any expense, cost, judgment, fine, penalty or amount paid in settlement, whether or not the claim or cause of action in respect thereof accrued or arose before or after the effective date of such provisions of this Article VII.  The right of any Covered Person who is or was a director, officer, employee or agent of the Corporation to indemnification or advancement of expenses as provided under the foregoing provisions of this Article VII shall continue after he or she shall have ceased to be a director, officer, employee or agent and shall inure to the benefit of the heirs, distributees, executors, administrators and other legal representatives of such Covered Person.

Section 10.    Insurance.  The Corporation is authorized to purchase and shall maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of, or to represent the interests of, the Corporation as a Subsidiary Officer of any Affiliated Entity, against any expense, liability or loss asserted against such person and incurred by such person in any such capacity, or arising out of such person's status as such, whether or not the Corporation would have the power to indemnify such person against such expense, liability or loss under the provisions of this Article VII or applicable law.

Section 11.    Definitions of Certain Terms.  For purposes of this Article VII, (a) references to "the Corporation" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed into the Corporation in a consolidation or merger if such corporation would have been permitted (if its corporate existence had continued) under applicable law to indemnify its directors, officers, employees or agents, so that any person who is or was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request, or to represent the interests of, such constituent corporation as a Subsidiary Officer of any Affiliated Entity shall stand in the same position under the provisions of this Article VII with respect to the resulting or surviving corporation as such person would have with respect to such constituent corporation if its separate existence had continued; (b) references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; (c) references to "serving at the request of the Corporation" shall include any service as a director, officer, partner, member, trustee, fiduciary, employee or agent of the Corporation or as a Subsidiary Officer of any Affiliated Entity which service imposes duties on, or involves services by, such director, officer, partner, member, trustee, fiduciary, employee or agent with respect to an employee benefit plan, its participants or beneficiaries; and (d) a Covered Person who acted in good faith and in a manner such Covered Person reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan shall be deemed to have acted in a manner "not opposed to the best interest of the Corporation" as referred to in this Article VII.

Section 12.    Good Faith Defined.  For purposes of any determination under Section 3 of this Article VII, a person shall be deemed to have acted in good faith and in a manner such person reasonably believed to be in or not opposed to the best interests of the Corporation, or, with respect to any criminal action or proceeding, to have had no reasonable cause to believe his or her conduct was unlawful, if such person's action is based on the records or books of account of the Corporation or an Affiliated Entity, or on information supplied to such person by the officers of the Corporation or an Affiliated Entity in the

course of their duties, or on the advice of legal counsel for the Corporation or an Affiliated Entity or on information or records given or reports made to the Corporation or an Affiliated Entity by an independent certified public accountant or by an appraiser or other expert selected with reasonable care by the Corporation or an Affiliated Entity. The provisions of this Section 12 shall not be deemed to be exclusive or to limit in any way the circumstances in which a person may be deemed to have met the applicable standard of conduct set forth in Section 1 or Section 2 of this Article VII, as the case may be.

ARTICLE VIII

WAIVER OF NOTICE

Whenever any notice of a meeting is required to be given pursuant to the Charter or these By-Laws or pursuant to applicable law, a waiver thereof in writing or by electronic transmission, given by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.  Neither the business to be transacted at nor the purpose of any meeting need be set forth in the waiver of notice of such meeting, unless specifically required by statute. The attendance of any person at any meeting shall constitute a waiver of notice of such meeting, except where such person attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting has not been lawfully called or convened.

ARTICLE IX

DISTRIBUTIONS

Section 1.     Authorization.    Dividends and other distributions upon the stock of the Corporation may be authorized by the Board, subject to the provisions of law and the Charter.  Dividends and other distributions may be paid in cash, property or stock of the Corporation, subject to the provisions of law and the Charter.

Section 2.     Contingencies.    Before payment of any dividends or other distributions, there may be set aside out of any assets of the Corporation available for dividends or other distributions such sum or sums as the Board may from time to time, in its absolute discretion, think proper as a reserve fund for contingencies, for equalizing dividends, for repairing or maintaining any property of the Corporation or for such other purpose as the Board shall determine, and the Board may modify or abolish any such reserve.

ARTICLE X

CORPORATE SEAL

The Corporation shall be authorized, but shall not be required, to obtain a corporate seal in such form as the Board shall prescribe.

ARTICLE XI

GENERAL PROVISIONS

Section 1.     Section Headings.    Section headings in these By-Laws are for convenience of reference only and shall not be given any substantive effect in limiting or otherwise construing any provision herein.

Section 2.     Inconsistent Provisions.    In the event that any provision of these By-Laws is or becomes inconsistent with any provision of the Charter or the DGCL, the provision of these By-Laws

24

shall not be given any effect to the extent of such inconsistency but shall otherwise be given full force and effect.

Section 3.    <u>Severability</u>. If any provision or provisions of these By-Laws shall be held to be invalid, illegal or unenforceable as applied to any circumstance for any reason whatsoever: (i) the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of these By-Laws (including, without limitation, each portion of any paragraph of these By-Laws containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby and (ii) to the fullest extent possible, the provisions of these By-Laws (including, without limitation, each such portion of any paragraph of these By-Laws containing any such provision held to be invalid, illegal or unenforceable) shall be construed so as to permit the Corporation to protect its directors, officers, employees and agents from personal liability in respect of their good faith service to or for the benefit of the Corporation to the fullest extent permitted by law.

ARTICLE XII

AMENDMENTS

These By-Laws may be altered, amended or repealed, in whole or in part, or new By-Laws may be adopted by the Board or by the stockholders as provided in these By-Laws, the Charter or the DGCL; <u>provided</u>, <u>however</u>, that in addition to any other vote of stockholders (if any) required by law and notwithstanding that a lower vote (or no vote) of stockholders would otherwise be required, if any provision of these By-Laws or the Charter requires a particular vote of stockholders in order to take the action specified in such provision, then such vote of stockholders shall be required in order to amend, alter, change or repeal any provision inconsistent with such provision of these By-Laws.

The foregoing By-Laws were adopted by the Board on the       of       , 2016 and are effective as of the       of       , 2016.