**EXHIBIT A(iii)**

Reorganized EFIH Partnership Agreement

---

**AMENDED AND RESTATED AGREEMENT OF
LIMITED PARTNERSHIP
OF
[OVATION PARTNERS, L.P.][1]**

---

[•], 2016

**THE INTERESTS REFERENCED HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR ANY STATE OR NON-U.S. SECURITIES LAWS AND MAY NOT BE SOLD OR TRANSFERRED UNLESS THEY ARE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND ANY OTHER APPLICABLE LAWS OR AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE. THE INTERESTS REFERENCED HEREIN ARE SUBJECT TO THE RESTRICTIONS ON TRANSFER SET FORTH IN THIS AGREEMENT.**

---

[1] Note to Draft: Entity names to be determined.

# TABLE OF CONTENTS

ARTICLE I DEFINED TERMS ........................................................................................1
Section 1.1    Defined Terms. ...........................................................................1
Section 1.2    Interpretation; Terms Generally...............................................19

ARTICLE II ORGANIZATIONAL MATTERS.............................................................20
Section 2.1    Organization...............................................................................20
Section 2.2    Name...........................................................................................20
Section 2.3    Registered Office and Agent; Other Offices.............................20
Section 2.4    Term............................................................................................20
Section 2.5    Purposes.....................................................................................20
Section 2.6    Powers........................................................................................20
Section 2.7    Fiscal Year .................................................................................20
Section 2.8    General Partner REIT Qualification ..........................................21
Section 2.9    Power of Attorney......................................................................21

ARTICLE III CAPITAL..................................................................................................22
Section 3.1    Partnership Units Generally.......................................................22
Section 3.2    Initial Partnership Units .............................................................23
Section 3.3    Additional Partnership Interests.................................................23
Section 3.4    Additional Funds and Capital Contributions. ...........................25
Section 3.5    Other Contribution Provisions....................................................26
Section 3.6    Dividend Reinvestment Plan or Cash Option Purchase Plan............26
Section 3.7    No Interest on Capital ................................................................26
Section 3.8    Hunt Group Ownership Limit.....................................................27
Section 3.9    Conversion of Class A Units......................................................27
Section 3.10   Equity Incentive Plan .................................................................28

ARTICLE IV DISTRIBUTIONS .....................................................................................34
Section 4.1    Requirement and Characterization of Distributions. ................34
Section 4.2    Amounts Withheld .....................................................................36
Section 4.3    Distributions Upon Liquidation .................................................37
Section 4.4    Revisions to Reflect Issuance of Partnership Interests .............37

ARTICLE V ALLOCATIONS..........................................................................................37
Section 5.1    Allocations For Capital Account Purposes ...............................37
Section 5.2    Capital Accounts of the Partners................................................39
Section 5.3    No Withdrawal............................................................................41
Section 5.4    Revisions to Allocations to Reflect Issuance of Partnership Interests..............42
Section 5.5    Special Allocation Rules............................................................42
Section 5.6    Allocations for Tax Purposes.....................................................46

ARTICLE VI MANAGEMENT AND OPERATIONS OF BUSINESS ...................................47
Section 6.1    Management.................................................................................47
Section 6.2    Certificate of Limited Partnership .............................................51
Section 6.3    Title to Partnership Assets .........................................................51
Section 6.4    Payment of Expenses. .................................................................52
Section 6.5    Outside Activities of the General Partner. .................................54

Section 6.6    Transactions with Partners and Affiliates. .....................................................55
Section 6.7    Limitation on Liability and Indemnification. ..............................................56
Section 6.8    Liability of the General Partner. ................................................................58
Section 6.9    Other Matters Concerning the General Partner. ........................................59
Section 6.10   Reliance By Third Parties. ........................................................................61
Section 6.11   Confidentiality Obligations. ......................................................................61
Section 6.12   Restrictions On General Partner's Authority ............................................63

ARTICLE VII RIGHTS AND OBLIGATIONS OF LIMITED PARTNERS ...........................63
Section 7.1    Limitation of Liability .................................................................................63
Section 7.2    Management of Business ...........................................................................63
Section 7.3    Return of Capital .......................................................................................63
Section 7.4    Outside Activities of Limited Partners ......................................................63
Section 7.5    Rights of Limited Partners Relating to the Partnership. .............................64
Section 7.6    Redemption Right. .....................................................................................65

ARTICLE VIII BOOKS, RECORDS, ACCOUNTING AND REPORTS ..............................68
Section 8.1    Records and Accounting ............................................................................68
Section 8.2    Reports. ....................................................................................................68

ARTICLE IX TAX MATTERS. ..............................................................................................69
Section 9.1    Preparation of Tax Returns .......................................................................69
Section 9.2    Tax Elections ............................................................................................69
Section 9.3    Tax Matters Partner. ..................................................................................69
Section 9.4    Organizational Expenses. ..........................................................................71
Section 9.5    Withholding ...............................................................................................71
Section 9.6    Code Section 83 Safe Harbor Election ......................................................71
Section 9.7    Limitation to Preserve REIT Status ...........................................................72

ARTICLE X TRANSFERS AND WITHDRAWALS .............................................................73
Section 10.1   Transfer ....................................................................................................73
Section 10.2   Transfers of Partnership Interests or Shares of General Partner;
               Termination Transactions. .......................................................................73
Section 10.3   Limited Partners' Rights to Transfer. ........................................................75
Section 10.4   Substituted Limited Partners. ....................................................................76
Section 10.5   Assignees ..................................................................................................77
Section 10.6   General Provisions. ...................................................................................77

ARTICLE XI ADMISSION OF PARTNERS ..........................................................................80
Section 11.1   Admission of a Successor General Partner. ...............................................80
Section 11.2   Admission of Additional Limited Partners. ...............................................80
Section 11.3   Amendment of Agreement and Certificate of Limited Partnership ..................81
Section 11.4   Limit on Number of Partners .....................................................................81

ARTICLE XII DISSOLUTION AND LIQUIDATION ...........................................................81
Section 12.1   Dissolution ................................................................................................81
Section 12.2   Winding Up. ..............................................................................................82
Section 12.3   Compliance With Timing Requirements of Regulations; Restoration of
               Deficit Capital Accounts. ........................................................................83
Section 12.4   Rights of Limited Partners .......................................................................84

Section 12.5    Notice of Dissolution ........................................................................84
Section 12.6    Cancellation of Certificate of Limited Partnership..........................84
Section 12.7    Reasonable Time For Winding Up .....................................................84
Section 12.8    Waiver of Partition............................................................................84
Section 12.9    Liability of Liquidator.......................................................................85

ARTICLE XIII AMENDMENTS; MEETINGS ........................................................85
Section 13.1    Amendments.......................................................................................85
Section 13.2    Meetings of the Partners. ..................................................................87

ARTICLE XIV GENERAL PROVISIONS ................................................................88
Section 14.1    Addresses and Notice........................................................................88
Section 14.2    Further Action ...................................................................................88
Section 14.3    Binding Effect ...................................................................................88
Section 14.4    Creditors............................................................................................88
Section 14.5    Waiver ...............................................................................................88
Section 14.6    Counterparts ......................................................................................89
Section 14.7    Applicable Law .................................................................................89
Section 14.8    Waiver of Jury Trial ..........................................................................89
Section 14.9    Forum Selection and Consent to Jurisdiction ...................................89
Section 14.10  Invalidity of Provisions.....................................................................89
Section 14.11  Entire Agreement ..............................................................................90
Section 14.12  No Rights as Shareholders ................................................................90
Section 14.13  No Presumption Against Drafter .......................................................90


SCHEDULE 5.2    EFFECTIVE DATE CAPITAL ACCOUNT BALANCES

EXHIBIT A          PARTNER REGISTRY
EXHIBIT B          FORM OF NOTICE OF REDEMPTION

**AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP**
**OF**
**OVATION PARTNERS, L.P.**

**THIS AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP** (the "Agreement") of [OVATION PARTNERS, L.P.] (the Partnership") is dated [●], 2016 (the "Effective Date")[2], and is between [OVATION ACQUISITION I, INC.], a Delaware corporation ("Ovation I"), as General Partner, and OVATION ACQUISITION II, L.L.C., a Delaware limited liability company ("Ovation II"), and HUNT POWER HOLDINGS, L.L.C., a Delaware limited liability company (the "Hunt Limited Partner"), as Limited Partners, together with any other Persons that are admitted as Partners (as defined below) in accordance with this Agreement.

### RECITALS

The Partnership is the successor to Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), and was formed by the conversion of EFIH to a Delaware limited partnership pursuant to a Certificate of Conversion and a Certificate of Limited Partnership, each filed with the Secretary of State of the State of Delaware on [●], 2016 (the "IPO Date").[3]

The General Partner and [●] (the "Initial Limited Partner") entered into an Agreement of Limited Partnership dated [●], 2016 (the "Original Agreement").

The parties hereto desire to amend and restate the Original Agreement on the terms and conditions set forth herein effective as of the Effective Date.

This Agreement is being entered into to govern the Partnership from and after the Effective Date.

The parties hereto agree as follows:

### ARTICLE I

### DEFINED TERMS

Section 1.1    Defined Terms. As used in this Agreement, the terms set forth below have the following respective meanings:

"30-Day VWAP Price" has the meaning set forth in Section 3.9.3(a).

"704(c) Value" of any Contributed Property means the fair market value of such property at the time of contribution as determined by the General Partner using such reasonable method of

---

[2] Note to Draft: Effective Date is the date of the Second Closing.
[3] Note to Draft: The IPO Date is the date of the First Closing.

valuation as it may adopt; provided, however, that, subject to Article V, the General Partner shall, in its sole and absolute discretion, use such method as it deems reasonable and appropriate to allocate the aggregate of the 704(c) Value of Contributed Properties in a single or integrated transaction among the separate properties on a basis proportional to their respective fair market values.

"Additional Funds" has the meaning set forth in Section 3.4.1.

"Additional Limited Partner" means a Person admitted to the Partnership as a Limited Partner pursuant to Section 11.2.

"Adjusted Capital Account" means the Capital Account maintained for each Partner as of the end of each Fiscal Year or other relevant period (i) increased by any amounts which such Partner is obligated to restore pursuant to any provision of this Agreement or is deemed to be obligated to restore pursuant to the penultimate sentences of Regulations Sections 1.704-2(g)(1) and 1.704-2(i)(5) and (ii) decreased by the items described in Regulations Sections 1.704-1(b)(2)(ii)(d)(4), 1.704-1(b)(2)(ii)(d)(5) and 1.704-1(b)(2)(ii)(d)(6). The foregoing definition of Adjusted Capital Account is intended to comply with the provisions of Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

"Adjusted Capital Account Deficit" means, with respect to any Partner, the deficit balance, if any, in such Partner's Adjusted Capital Account as of the end of the relevant Fiscal Year or other relevant period.

"Adjusted Property" means any property the Carrying Value of which has been adjusted pursuant to Section 5.2.4.

"Adjusted Value" has the meaning set forth in Section 5.2.4(a).

"Adjustment Event" has the meaning set forth in Section 3.10.3(a).

"Advisers Act" means the Investment Advisers Act of 1940, as it may be amended from time to time, and any successor to such statute.

"Affiliate" means, with regard to a Person, a Person that Controls, is Controlled by, or is under common Control with such original Person.

"Agreed Value" means (i) in the case of any Contributed Property, the 704(c) Value of such property as of the time of its contribution (or deemed contribution) to the Partnership, reduced by any liabilities either assumed by the Partnership upon such contribution (or deemed contribution) or to which such property is subject when contributed (or deemed contributed), as the same is reflected in the books and records of the Partnership; and (ii) in the case of any property distributed to a Partner by the Partnership, the Partnership's Carrying Value of such property at the time such property is distributed, reduced by any indebtedness either assumed by such Partner upon such distribution or to which such property is subject at the time of distribution as determined under Section 752 of the Code and the regulations thereunder. The Agreed Value of any Contributed Property shall be set forth in the Partner Registry.

"Agreement" has the meaning set forth in the Preamble.

"Applicable Laws" means all laws, ordinances, statutes, orders and regulations of any federal, state or local government, regulatory or administrative authority, agency or commission thereof, or any court or tribunal relating to the investments or operations of the General Partner, the Partnership or any of their respective Subsidiaries, including all requirements of the Federal Energy Regulatory Commission, Public Utility Commission of Texas, Southwest Power Pool and Electric Reliability Council of Texas (ERCOT).

"Assignee" means a Person to whom one or more Partnership Units have been transferred in a manner permitted under this Agreement, but who has not become a Substituted Limited Partner, and who has the rights set forth in Section 10.5.

"Award Agreement" has the meaning set forth in Section 3.10.4(b).

"Bankruptcy" means, with respect to any Person, (a) the filing by such Person of a voluntary petition seeking liquidation, reorganization, arrangement or readjustment, in any form, of its debts under Title 11 of the United States Code or any other federal, state or foreign insolvency law, or such Person's filing an answer consenting to or acquiescing in any such petition, (b) the making by such Person of any assignment for the benefit of its creditors, (c) the expiration of 60 days after the filing of an involuntary petition under Title 11 of the United States Code, an application for the appointment of a receiver for a material portion of the assets of such Person, or an involuntary petition seeking liquidation, reorganization, arrangement or readjustment of its debts under any other federal, state or foreign insolvency law; provided, that the same shall not have been vacated, set aside or stayed within such 60-day period or (d) the entry against it of a final and non-appealable order for relief under any bankruptcy, insolvency or similar law now or hereinafter in effect.

"Benefit Plan Investor" means any Partner that is a "benefit plan investor" as defined in Section 3(42) of ERISA and any regulations promulgated thereunder.

"Board" or "Board of Directors" means the board of directors of the General Partner, and any individual member of the Board may be referred to herein as a "Director."

"Book-Tax Disparities" means, with respect to any item of Contributed Property or Adjusted Property, as of the date of any determination, the difference between the Carrying Value of such Contributed Property or Adjusted Property and the adjusted basis thereof for U.S. federal income tax purposes as of such date. A Partner's share of the Partnership's Book-Tax Disparities in all of its Contributed Property and Adjusted Property will be reflected by the difference between such Partner's Capital Account balance as maintained pursuant to Section 5.2 and the hypothetical balance of such Partner's Capital Account computed as if it had been maintained strictly in accordance with U.S. federal income tax accounting principles.

"Book-Up Target" has the meaning set forth in Section 5.5.10(a).

"Business Day" means any day other than a Saturday, Sunday or other day in which commercial banks in New York, New York are authorized or required by law or executive order to be closed.

"Capital Account" means the Capital Account maintained for a Partner pursuant to Section 5.2.

"Capital Account Limitation" has the meaning set forth in Section 3.10.5(b).

"Capital Contribution" a contribution of cash or other property to the capital of the Partnership.

"Carrying Value" means (i) with respect to Contributed Property or Adjusted Property, the 704(c) Value or Adjusted Value, respectively, of such property reduced (but not below zero) by all Depreciation with respect to such Contributed Property or Adjusted Property, as the case may be, charged to the Partners' Capital Accounts, and (ii) with respect to any other Partnership property, the adjusted basis of such property for U.S. federal income tax purposes, all as of the time of determination. The Carrying Value of any property shall be adjusted from time to time in accordance with Section 5.2.4, and to reflect changes, additions (including capital improvements thereto) or other adjustments to the Carrying Value for dispositions and acquisitions of Partnership properties, as deemed appropriate by the General Partner.

"Cash Amount" means an amount of cash equal to the Value on the Valuation Date of the Shares Amount.

"Cash From Operations" means, with respect to any period for which such calculation is being made:

(a)     all cash revenues and funds received by the Partnership from whatever source (excluding the proceeds of any Capital Contribution but including, to the extent deemed appropriate by the General Partner, any net proceeds remaining from a Debt issuance or a refinancing) plus the amount of any reduction (including a reduction resulting because the General Partner determines such amounts are no longer necessary) in reserves of the Partnership, which reserves are referred to in clause (b)(4) below;

less

(b)     the sum of the following (except to the extent made with the proceeds of any Capital Contribution):

1.     all interest, principal and other debt payments made during such period by the Partnership,

2.     all cash expenditures (including operating expenses, taxes, if any, redemption of Partnership Interests, and capital expenditures) made by the Partnership during such period,

3.     investments, in any Entity (including loans made thereto) to the extent that such investments are permitted under this Agreement and are not otherwise described in clauses (b)(1) or (2), and

4.    the amount of any increase in reserves established during such period which the General Partner determines is necessary or appropriate in its sole and absolute discretion.

Cash From Operations shall include cash proceeds from the sale or other disposition of assets; provided, that Cash From Operations shall not include any cash received or reductions in reserves, or take into account any disbursements made or reserves established, after commencement of the dissolution and liquidation of the Partnership.

"Cash-Unit Distribution" means a distribution by the Partnership to holders of Units in the form of additional Units or, at the election of some or all of the holders of Units who are provided an election pursuant to the distribution, a combination of cash and Units, which distribution of Units and cash is intended to support and correspond to an elective cash-stock distribution by the General Partner on the Shares which is governed by Section 305(b) of the Code, such that the number of additional Units received by the General Partner and its Qualified REIT Subsidiaries corresponds (per the Conversion Factor) with the number of additional Shares issued by the General Partner in its elective cash-stock distribution.

"Certificate" means the Certificate of Limited Partnership of the Partnership, as filed in the office of the Secretary of State of the State of Delaware, as it may be amended or restated from time to time.

"Class A Unit" means a Partnership Unit with the preferences, conversion or other rights, voting powers or rights, restrictions, limitations as to distribution, qualifications or other terms or conditions provided for Class A Units under this Agreement.

"Class A Value" has the meaning set forth in Section 3.9.3(b).

"Code" means the Internal Revenue Code of 1986, as amended, or any successor to such statute, and all applicable regulations thereunder.

"Common Shareholder" means a Shareholder that holds Common Shares.

"Common Shares" means shares of common stock of the General Partner.

"Common Unit" means a Partnership Unit with the preferences, conversion or other rights, voting powers or rights, restrictions, limitations as to distribution, qualifications or other terms or conditions provided for Common Units under this Agreement.

"Common Unit Economic Balance" has the meaning set forth in Section 5.5.10(b).

"Company By-Laws" means the by-laws of the General Partner as in effect from time to time.

"Company Charter" means the Certificate of Incorporation of the General Partner.

"Consent" means the consent or approval of a proposed action by a Partner given in accordance with Section 13.2.

"Contributed Property" means each property or other asset contributed or deemed contributed to the Partnership, in such form as may be permitted by the LP Act, but excluding cash contributed or deemed contributed to the Partnership. Once the Carrying Value of a Contributed Property is adjusted pursuant to Article V, such property shall no longer constitute a Contributed Property for purposes of Article V, but shall be deemed an Adjusted Property for such purposes.

"Control" when used with respect to any Person, means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, and the terms "Controlling" and "Controlled" have meanings correlative to the foregoing.

"Conversion Date" has the meaning set forth in Section 3.10.5(b).

"Conversion Factor" means 1.0; provided that the Conversion Factor will be adjusted as follows:

(a)    If the General Partner (i) declares or pays a dividend on its outstanding Shares in Shares or makes a distribution to all holders of its outstanding Shares in Shares, (ii) splits or subdivides its outstanding Shares or (iii) effects a reverse stock split or otherwise combines its outstanding Shares into a smaller number of Shares, the Conversion Factor shall be adjusted by multiplying the Conversion Factor previously in effect by a fraction, the numerator of which shall be the number of Shares issued and outstanding on the record date for such dividend, distribution, split, subdivision, reverse split or combination (assuming for such purposes that such dividend, distribution, split, subdivision, reverse split or combination has occurred as of such time) and the denominator of which shall be the actual number of Shares (determined without the above assumption) issued and outstanding on the record date for such dividend, distribution, split, subdivision, reverse split or combination.

(b)    If the General Partner distributes any rights, options or warrants to all holders of Shares to subscribe for or to purchase or to otherwise acquire Shares (or other securities or rights convertible into, exchangeable for or exercisable for Shares), other than rights to acquire Shares issued pursuant to a Qualified DRIP/COPP or, subject to paragraph (e) below, a stockholders' rights plan, at a price per Share less than the Value of a Share on the record date for such distribution ("Distributed Rights"), then, as of the distribution date of any such Distributed Rights or, if later, the time such Distributed Rights first become exercisable, the Conversion Factor shall be adjusted by multiplying the Conversion Factor previously in effect by a fraction, the numerator of which is (x) the number of Shares issued and outstanding on the record date (or, if later, the date such Distributed Rights first become exercisable) plus the maximum number of Shares purchasable under such Distributed Rights, and the denominator of which is (y) the sum of (A) the number of Shares issued and outstanding on the record date (or, if later, the date such Distributed Rights first become exercisable) plus (B) a fraction, the numerator of which is (1) the maximum number of Shares purchasable under such Distributed Rights times the minimum purchase price per Share under such Distributed Rights, and the denominator of which is (2) the Value of a Share as of the record date (or, if later, the date such Distributed Rights first become exercisable); provided, however, that if any such Distributed Rights expire or become no longer exercisable, then the Conversion Factor shall be adjusted, effective retroactive to the date of

distribution of the Distributed Rights, to reflect a reduced maximum number of Shares or any change in the minimum purchase price for the purposes of the above fraction.

(c)      If the General Partner, by dividend or otherwise, distributes to all holders of its Shares evidences of its indebtedness or assets (including securities, but excluding (1) any dividend or distribution for which an adjustment is made pursuant to paragraph (a) above and (2) any distribution of Distributed Rights pursuant to which as adjustment is made pursuant to paragraph (b) above), which evidences of indebtedness or assets relate to assets not received by the General Partner or its Subsidiaries pursuant to a pro rata distribution by the Partnership, then the Conversion Factor shall be adjusted to equal the amount determined by multiplying the Conversion Factor in effect immediately prior to the close of business on the date fixed for determination of Stockholders entitled to receive such distribution by a fraction (i) the numerator of which shall be such Value of a Share on the date fixed for such determination and (ii) the denominator of which shall be the Value of a Share on the dates fixed for such determination less the then fair market value (as determined by the General Partner, whose determination shall be conclusive) of the portion of the evidences of indebtedness or assets so distributed applicable to one Share.

(d)      If an entity other than an Affiliate of the General Partner shall become General Partner pursuant to any merger, consolidation or combination of the General Partner with or into another entity (the "Successor Entity"), the Conversion Factor shall be adjusted by multiplying the Conversion Factor by the number of shares of the Successor Entity into which one Share is converted pursuant to such merger, consolidation or combination, determined as of the date of such merger, consolidation or combination.

(e)      If the General Partner adopts a stockholders' rights plan with respect to any Shares and the rights issued under such plan separate from the Shares, then the Conversion Factor will be adjusted at the time of separation as provided in paragraph (b) above as if the separated rights constituted Distributed Rights, subject to readjustment in the event of the expiration, termination or redemption of such rights.

Notwithstanding the foregoing, no adjustments to the Conversion Factor will be made in connection with any event described in this definition for any class or series of Partnership Interests to the extent that the Partnership makes or effects any correlative distribution or payment to all of the Partners holding Partnership Interests of such class or series, or effects any correlative split or reverse split in respect of the Partnership Interests of such class or series. Any adjustment to the Conversion Factor shall become effective immediately after the effective date of the event retroactive to the record date, if any, for the event giving rise thereto, it being intended that (x) adjustments to the Conversion Factor are to be made to avoid unintended dilution or anti-dilution as a result of transactions in which Shares are issued, redeemed or exchanged without a corresponding issuance, redemption or exchange of Partnership Units and (y) if a Specified Redemption Date shall fall between the record date and the effective date of any event of the type described above, the Conversion Factor applicable to such redemption shall be adjusted to take into account such event. For the avoidance of doubt, no change to the Conversion Factor shall result from an elective cash-stock distribution by the General Partner on the Shares and governed by Section 305(b) of the Code if it is supported by and corresponds to an underlying Cash-Unit Distribution.

7

"Conversion Notice" has the meaning set forth in Section 3.10.5(b).

"Conversion Right" has the meaning set forth in Section 3.10.5(a).

"Covered Person" means the General Partner or an officer or director of the General Partner, (ii) an officer of the Partnership, or (iii) any Person serving at the request of, or to represent the interests of, the Partnership or the General Partner as a director, officer, partner, member, trustee, fiduciary, employee or agent of another corporation, partnership, joint venture, limited liability company, trust, employee benefit plan or other enterprise, including any charitable or not-for-profit public service organization or trade association.

"Debt" means, as to any Person, as of any date of determination, (i) all indebtedness of such Person for borrowed money or for the deferred purchase price of property or services, (ii) all amounts owed by such Person to banks or other Persons in respect of reimbursement obligations under letters of credit, surety bonds and other similar instruments guaranteeing payment or other performance of obligations by such Person, (iii) all indebtedness for borrowed money or for the deferred purchase price of property or services secured by any lien on any property owned by such Person, to the extent attributable to such Person's interest in such property, even though such Person has not assumed or become liable for the payment thereof, and (iv) lease obligations of such Person that, in accordance with GAAP, should be capitalized.

"Depreciation" means, for each Fiscal Year or other relevant period, an amount equal to the U.S. federal income tax depreciation, amortization, or other cost recovery deduction allowable with respect to an asset for such year or period, except that if the Carrying Value of an asset differs from its adjusted basis for U.S. federal income tax purposes at the beginning of such year or other period, Depreciation shall be an amount which bears the same ratio to such beginning Carrying Value as the U.S. federal income tax depreciation, amortization, or other cost recovery deduction for such year or period bears to such beginning adjusted tax basis; provided, however, that if the U.S. federal income tax depreciation, amortization, or other cost recovery deduction for such year or period is zero, Depreciation shall be determined with reference to such beginning Carrying Value using any reasonable method selected by the General Partner; provided, further, if the remedial allocation method described in Regulations Section 1.704-3(d) applies to such asset, then Depreciation shall be determined in accordance with Regulations Section 1.704-3(d)(2).

"Distributed Right" has the meaning set forth in the definition of "Conversion Factor" in this Section 1.1.

"Economic Capital Account Balance" has the meaning set forth in Section 5.5.10(c).

"Effective Date" has the meaning set forth in the Preamble.

"Effective Date Common Units" has the meaning set forth in Section 3.9.3(c).

"Effective Date Equity Value" has the meaning set forth in Section 3.9.3(d).

"EFIH" has the meaning set forth in the Recitals.

"Entity" means any partnership, limited partnership, proprietorship, corporation, joint venture, joint stock company, limited liability company, limited liability partnership, business trust, estate, governmental entity, cooperative, association or other foreign or domestic enterprise.

"Equity Incentive Plan" has the meaning set forth in Section 3.10.1.

"Equity Interests" means any shares of capital stock, membership interests, partnership interests or other equity interests and options or warrants to acquire, or securities convertible into, capital stock, membership interests, partnership interests or other equity securities of an Entity.

"ERISA" means the Employee Retirement Income Security Act of 1974, as it may be amended from time to time and any successor statute.

"Exchange Act" means the Securities Exchange Act of 1934, as amended, and all rules and regulations promulgated thereunder.

"FERC" means the Federal Energy Regulatory Commission, or any successor Governmental Authority.

"Fiscal Year" has the meaning set forth in Section 2.7.

"Forced Conversion" has the meaning set forth in Section 3.10.5(c).

"Forced Conversion Notice" has the meaning set forth in Section 3.10.5(c).

"GAAP" means generally accepted accounting principles in the United States, as consistently applied by the General Partner and the Partnership.

"General Partner" means Ovation I, in its capacity as the general partner of the Partnership, or any Person hereafter admitted as the general partner of the Partnership in accordance with this Agreement.

"General Partner Interest" means the Partnership Interest of the General Partner.

"General Partner Loan" has the meaning set forth in Section 3.4.5.

"General Partner Payment" has the meaning set forth in Section 9.7.

"Governmental Authority" means any nation or government, any state, city, municipality or other political subdivision thereof, any federal or state court or any other agency, body, authority or entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

"Hunt" means Hunt Consolidated, Inc., a Delaware corporation, or its successors.

"Hunt Employee Investor" means a Partner that is an employee of any Hunt Group Member.

"<u>Hunt Group</u>" means (a) Ray L. Hunt and Hunter L. Hunt; (b) any lineal descendent of the foregoing (including by adoption); (c) any spouse of the foregoing; (d) any trust established primarily for the benefit of any one or more of the foregoing; and (e) any Entity controlled, individually or collectively, by any of the foregoing Persons identified in the preceding clauses (a) and (d) (including Hunt, the Manager and the Hunt Limited Partner).

"<u>Hunt Group Member</u>" means any member of the Hunt Group.

"<u>Hunt Limited Partner</u>" has the meaning set forth in the Preamble.

"<u>Hurdle Value</u>" has the meaning set forth in <u>Section 3.9.3(e)</u>.

"<u>Immediate Family</u>" means, with respect to any Partner who is a natural person, such Partner's spouse, parents and descendants (whether natural or adopted) and any trust for the benefit of such Partner and/or such Partner's spouse, parents, descendants, nephews, nieces, brothers, and sisters, any of such Partner's executors, administrators, testamentary trustee, legatees or beneficiaries upon such Partner's death or any Entity that is, directly or indirectly, wholly owned and Controlled by such Partner and/or any of the foregoing Persons.

"<u>Incapacity</u>" or "<u>Incapacitated</u>" means, (i) as to any individual, death, total physical disability or entry of a judgment by a court of competent jurisdiction adjudicating such Person incompetent to manage his or her Person or estate; (ii) as to any corporation, the filing of a certificate of dissolution, or its equivalent, for the corporation or the revocation of its charter; (iii) as to any partnership or limited liability company, the dissolution and commencement of winding up of the partnership or limited liability company; (iv) as to any trust, the termination of the trust (but not the substitution of a new trustee) and (v) as to any Person, the Bankruptcy of such Person.

"<u>Initial Limited Partner</u>" has the meaning set forth in the Recitals.

"<u>Interim Investors Agreement</u>" means the Interim Investors Agreement, dated as of August 9, 2015, among Ovation Acquisition I, L.L.C. (as predecessor to Ovation I), Ovation II, and the Shareholders named therein.

"<u>Investment Grade</u>" means, with respect to any outstanding indebtedness, that such indebtedness is rated BBB or higher by Standard & Poor's, a division of The McGraw-Hill Companies. Inc., or by Moody's Investors Services, Inc.

"<u>Investor</u>" means a Shareholder or Ovation II.

"<u>IPO Date</u>" has the meaning set forth in the Recitals.

"<u>IPO Date Shares</u>" has the meaning set forth in <u>Section 3.9.3(f)</u>.

"<u>IRS</u>" means the United States Internal Revenue Service.

"Limited Partner" means each Person identified as such on Exhibit A and any other Person hereafter admitted as a limited partner of the Partnership in accordance with this Agreement, in each case in such Person's capacity as a limited partner of the Partnership.

"Limited Partner Interest" means the Partnership Interest of a Limited Partner.

"Liquidating Event" has the meaning set forth in Section 12.1.

"Liquidator" has the meaning set forth in Section 12.2.1.

"LP Act" means the Delaware Revised Uniform Limited Partnership Act, as it may be amended from time to time, and any successor to such statute.

"LTIP Unit" means a Partnership Unit designated as a LTIP Unit by the General Partner with the preferences, conversion or other rights, voting power or rights, restrictions, limitation as to distributions, qualifications or other terms or conditions provided for LTIP Units under this Agreement.

"majority in interest" of the Limited Partners means Limited Partners holding more than 50% of the Common Units held by all Limited Partners.

"Management Agreement" means the management agreement, dated the IPO Date, between Hunt Utility Services, L.L.C., as manager, and the General Partner, the Partnership, and OAC, as such agreement may be amended, supplemented, restated, or otherwise modified from time to time.

"Manager" means Hunt Utility Services, L.L.C., in its capacity as manager under the Management Agreement.

"Net Income" means, for any Fiscal Year or other relevant period, the excess, if any, of the Partnership's items of income and gain for such taxable period over the Partnership's items of loss and deduction for such Fiscal Year or other relevant period. The items included in the calculation of Net Income shall be determined in accordance with Section 5.2. If an item of income, gain, loss or deduction that has been included in the initial computation of Net Income is subjected to the special allocation rules in Section 5.5, Net Income or the resulting Net Loss, whichever the case may be, shall be recomputed without regard to such item.

"Net Loss" means, for any Fiscal Year or other relevant period, the excess, if any, of the Partnership's items of loss and deduction for such taxable period over the Partnership's items of income and gain for such Fiscal Year or other relevant period. The items included in the calculation of Net Loss shall be determined in accordance with Section 5.2. If an item of income, gain, loss or deduction that has been included in the initial computation of Net Loss is subjected to the special allocation rules in Section 5.5, Net Loss or the resulting Net Income, whichever the case may be, shall be recomputed without regard to such item.

"New Securities" means (i) any rights, options, warrants or convertible or exchangeable securities having the right to subscribe for or purchase Shares, excluding grants under any Equity

Incentive Plan, or (ii) any Debt issued by the General Partner that provides any of the rights described in clause (i).

"Nonrecourse Built-in Gain" means, with respect to any Contributed Properties or Adjusted Properties that are subject to a mortgage or negative pledge securing a Nonrecourse Liability, the amount of any taxable gain that would be allocated to the Partners pursuant to Section 5.6.1(a) or 5.6.1(b) if such properties were disposed of in a taxable transaction in full satisfaction of such liabilities and for no other consideration.

"Nonrecourse Deductions" has the meaning set forth in Regulations Section 1.704-2(b)(1), and the amount of Nonrecourse Deductions for a Fiscal Year shall be determined in accordance with the rules of Regulations Section 1.704-2(c).

"Nonrecourse Liability" has the meaning set forth in Regulations Section 1.752-1(a)(2).

"Notice" has the meaning set forth in Section 9.6.

"Notice of Redemption" means a Notice of Redemption substantially in the form of Exhibit B.

"OAC" has the meaning set forth in Section 2.5.

"OEDC" means Oncor Electric Delivery Co., a Texas limited liability company.

"Operating Entity" has the meaning set forth in Section 6.4.5.

"Organizational Expenses" means all reasonable and documented fees, costs and expenses paid or reimbursed by any Investors or the Hunt Group pursuant to Section 3.1(a) of the Interim Investors Agreement.

"Original Agreement" has the meaning set forth in the recitals to this Agreement.

"Ovation II" has the meaning set forth in the Preamble.

"Parent Entity" has the meaning set forth in Section 6.4.5.

"Partner" means the General Partner or a Limited Partner, and "Partners" means the General Partner and the Limited Partners.

"Partner Nonrecourse Debt" has the meaning set forth in Regulations Section 1.704-2(b)(4).

"Partner Nonrecourse Debt Minimum Gain" means an amount, with respect to each Partner Nonrecourse Debt, equal to the Partnership Minimum Gain that would result if such Partner Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Regulations Section 1.704-2(i)(3).

"Partner Nonrecourse Deductions" has the meaning set forth in Regulations Section 1.704-2(i)(1), and the amount of Partner Nonrecourse Deductions with respect to a Partner

Nonrecourse Debt for a Fiscal Year or other relevant period shall be determined in accordance with the rules of Regulations Section 1.704-2(i)(2).

"<u>Partner Registry</u>" means the Partner Registry maintained by the General Partner in the books and records of the Partnership in substantially the form of the Partner Registry attached as <u>Exhibit A</u>, which is the Partner Registry as of the Effective Date.

"<u>Partnership</u>" has the meaning set forth in the preamble.

"<u>Partnership Information</u>" has the meaning set forth in <u>Section 6.11.1</u>.

"<u>Partnership Interest</u>" means, with respect to a Partner, the entire interest of that Partner in the Partnership, including all benefits to which the Partner is entitled under this Agreement and all obligations of the Partner to comply with the terms of this Agreement. A Partnership Interest may comprise any number of one or more classes or series, or classes and series, of Partnership Units.

"<u>Partnership Minimum Gain</u>" has the meaning set forth in Regulations Section 1.704-2(b)(2), and the amount of Partnership Minimum Gain, as well as any net increase or decrease in Partnership Minimum Gain, for a Fiscal Year shall be determined in accordance with the rules of Regulations Section 1.704-2(d).

"<u>Partnership Record Date</u>" means the record date established by the General Partner either (a) for the distribution of Cash From Operations or non-cash items pursuant to <u>Section 4.1</u>, which record date shall be the same as the record date established by the General Partner for a distribution to its Shareholders of some or all of its portion of such distribution, (b) if applicable, for determining the Partners entitled to Consent to any proposed action for which the Consent of the Partners is sought pursuant to <u>Section 13.2</u>, or (c) for any other proper Partnership purpose.

"<u>Partnership Unit</u>" means a fractional, undivided share of the Partnership Interests of all Partners.

"<u>Partnership Unit Designation</u>" has the meaning set forth in <u>Section 3.3.2</u>.

"<u>Percentage Interest</u>" means, as to a Partner holding a class or series of Partnership Units, its interest in such class or series, determined by dividing the Partnership Units of such class or series owned by such Partner by the total number of Partnership Units of such class or series then outstanding as specified in the Partner Registry.

"<u>Permitted Transferee</u>" means (i) with respect to the Hunt Limited Partner or any other Hunt Group Member, (A) any other Hunt Group Member, (B) any current or former employee of any Hunt Group Member who has or receives the right to receive distributions or transfers of Partnership Units pursuant to an agreement or other arrangement with any Hunt Group Member, (C) only in respect of indirect Transfers, any Service Provider Entity or current or former employee of a Service Provider Entity that provided material services to any Hunt Group Member in connection with the formation of the Partnership or the transactions undertaken in connection therewith or in contemplation thereof, or (D) any member of the Immediate Family

of any individual identified in clause (B) or (C); or (ii) with respect to any other Limited Partner, any member of such Limited Partner's Immediate Family.

"Person" means any individual or Entity.

"Plan Asset Regulation" means the U.S. Department of Labor regulation located at 29 C.F.R. Section 2510.3-101, or any successor regulation thereto, as in effect at the time of reference, as modified by Section 3(42) of ERISA.

"Plan Assets" means "plan assets" as defined in the Plan Asset Regulation.

"Prime Rate" means, as of the date reference, the prime rate of interest for large money center banks in New York, New York, as reported in *The Wall Street Journal* on such date, or if such date is not a Business Day, on the next Business Day.

"Prohibited Party" has the meaning set forth in the definition of "Unacceptable Investor" in this Section 1.1.

"Publicly Traded" means listed or admitted to trading on New York Stock Exchange LLC, NYSE MKT LLC, The Nasdaq Stock Market LLC or another national securities exchange, or any successor to any of the foregoing.

"Qualified DRIP/COPP" means a dividend reinvestment plan or a cash option purchase plan of the General Partner that permits participants to acquire Shares using the proceeds of dividends paid by the General Partner or cash of the participant, respectively; provided, however, that if such shares are offered at a discount, such discount must (i) be designed to pass along to the Stockholders the savings enjoyed by the General Partner in connection with the avoidance of stock issuance costs, and (ii) not exceed 5% of the value of a Share as computed under the terms of such plan and as computed in accordance with IRS Revenue Ruling 83-117 (or any successor published guidance thereto).

"Qualified REIT Subsidiary" means any Subsidiary of the General Partner that is a "qualified REIT subsidiary" within the meaning of Section 856(i) of the Code or a disregarded entity within the meaning of Regulations promulgated under Section 7701 of the Code.

"Recapture Income" means any gain recognized by the Partnership (computed without regard to any adjustment required by Section 734 or Section 743 of the Code) upon the disposition of any property or asset of the Partnership, which gain is characterized either as ordinary income or as "unrecaptured Section 1250 gain" (as defined in Section 1(h)(6) of the Code) because it represents the recapture of deductions previously taken with respect to such property or asset.

"Redeemed Interest" has the meaning set forth in Section 6.9.5(c).

"Redeemed Limited Partner" has the meaning set forth in Section 6.9.5(c).

"Redeeming Partner" has the meaning set forth in Section 7.6.1(a).

"Redemption Amount" means either the Cash Amount or the Shares Amount, as determined by the General Partner, in its sole and absolute discretion. A Redeeming Partner shall have no right, without the General Partner's consent, in its sole and absolute discretion, to receive the Redemption Amount in the form of the Shares Amount.

"Redemption Effective Date" has the meaning set forth in Section 6.9.5(c).

"Redemption Right" has the meaning set forth in Section 7.6.1(a).

"Redemption Value" means, with respect to a Redeemed Interest, the fair market value of such Redeemed Interest as of the applicable Redemption Effective Date, as determined in good faith by the General Partner; provided that, if the Regulatory Issue is a result of a breach of a representation, warranty or covenant made by the Redeemed Limited Partner or a change in law applicable to the Redeemed Limited Partner, the Redemption Value shall be (in each case as determined in good faith by the General Partner) the lesser of (i) the fair market value of such Redeemed Interest on the applicable Redemption Effective Date and (ii) the fair market value of the Redeemed Interest on the date on which cash is allocated to make redemption payments. In making such determination of fair market value, the General Partner shall assume that all of the assets of the Partnership will be sold on the applicable date in a commercially reasonable manner and the proceeds of such sale, net of estimated closing costs, as reasonably determined by the General Partner, and all obligations of the Partnership (other than the redemption of the Redeemed Interests being redeemed as of such date), will be distributed to the Partners pursuant to this Agreement. With respect to a Regulatory Issue that is not a result of a breach of a representation, warranty or covenant made by the Redeemed Limited Partner or a change in law, if the majority of such Redeemed Limited Partners disagree with the General Partner's determination of the Redemption Value of the applicable interests in the Partnership, such Redeemed Limited Partners shall negotiate in good faith to resolve such disagreement, and if such Redeemed Limited Partners continue to disagree after negotiations are held, either side may request that an independent valuation firm (who must be reasonably acceptable to the other party) be retained, whose valuation shall be final and binding on the Partnership and all of the Partners. The Partnership will bear the cost of such independent valuation firm.

"Regulated Investor" has the meaning set forth in Section 6.9.5(b).

"Regulations" means the Treasury Regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

"Regulatory Allocations" has the meaning set forth in Section 5.5.8.

"Regulatory Issue" has the meaning set forth in Section 6.9.5(b).

"REIT" means a real estate investment trust taxed under Sections 856-860 of the Code.

"REIT Rules" means the requirements for qualification and taxation as a REIT under the Code and the Regulations.

"Residual Gain" or "Residual Loss" means any item of gain or loss, as the case may be, of the Partnership recognized for U.S. federal income tax purposes resulting from a sale, exchange or other disposition of Contributed Property or Adjusted Property, to the extent such item of gain or loss is not allocated pursuant to Sections 5.6.1(a) or 5.6.1(b) to eliminate Book-Tax Disparities.

"Safe Harbors" has the meaning set forth in Section 10.6.6.

"Securities Act" means the Securities Act of 1933, as amended, or any similar federal statute, and the rules and regulations of the United States Securities and Exchange Commission thereunder, all as the same shall be in effect at the time of reference.

"Service Provider Entity" means any Entity primarily owned or controlled by individuals that are current or former employees or service providers of any Hunt Group Member.

"Share" means a share of common stock (or, where the context so admits in respect of preferred Partnership Units under Section 3.3, preferred stock) of the General Partner.

"Shareholder" means a record holder of Shares of the General Partner in such Person's capacity as a Shareholder.

"Shares Amount" means a number of Shares equal to the product of the number of Partnership Units offered for redemption by a Redeeming Partner times the Conversion Factor; provided that, if the General Partner issues to all holders of Shares rights, options, warrants or convertible or exchangeable securities entitling such holders to subscribe for or purchase Shares or any other securities or property (collectively, "rights") and no adjustment to the Conversion Factor is made pursuant to paragraph (b) of the definition of "Conversion Factor" in connection with the issuance of such rights, then the Shares Amount shall also include such rights that a holder of that number of Shares would be entitled to receive.

"Specified Redemption Date" means the tenth (10th) Business Day after receipt by the General Partner of a Notice of Redemption.

"Subscription Agreement" means, as to any Investor, the subscription agreement by which such Investor subscribed for an interest in the General Partner or the Partnership, or both, as accepted by the General Partner.

"Subsidiary" means, with respect to any Person, any corporation, limited liability company, trust, partnership or joint venture, or other Entity of which a majority of (i) the voting power of the voting equity securities or (ii) the outstanding Equity Interests is owned, directly or indirectly, by such Person.

"Substituted Limited Partner" means a Person who is admitted as a Limited Partner to the Partnership pursuant to Section 10.4.

"Successor Entity" has the meaning set forth in the definition of "Conversion Factor" in this Section 1.1.

"Surviving Partnership" has the meaning set forth in Section 10.2.2(b).

"Target Balance" has the meaning set forth in Section 5.5.10.

"Termination Transaction" has the meaning set forth in Section 10.2.2.

"Transaction" has the meaning set forth in Section 3.10.5(f).

"Transfer" means, with respect to any Partnership Units, whether by operation of law or otherwise, any direct or indirect sale, transfer, distribution, assignment, bequest, lease, pledge, hypothecation, encumbrance, or grant of a security interest in such Partnership Units, or any grant, issue, sale or conveyance of any option, warrant or right to acquire or to otherwise dispose of, transfer, or permit to be transferred, during life or at death, such Partnership Units, including (a) the granting of any option or entering into any agreement for the sale, transfer or other disposition of Shares or Partnership Units, (b) the sale, transfer, assignment or other disposition of any securities or rights convertible into or exchangeable for Shares or Partnership Units, (c) any transfer or other disposition of any interest in Shares or Partnership Units as a result of a change in the marital status of the holder thereof, and (d) any change in the citizenship, or the country of formation, incorporation, organization or domicile, of the holder of Shares or Partnership Units, but excluding (i) the exchange or conversion of any security of the General Partner for Shares or any security of the Partnership for Partnership Units, (ii) the redemption of Partnership Units pursuant to Section 7.6 or pursuant to the Partnership Unit Designation providing for such Partnership Units, (iii) the conversion of Class A Units to Common Units pursuant to Section 3.9, and (iv) any conversion of LTIP Units to Common Units pursuant to Section 3.10.5. A "Transfer" includes any transaction, occurrence or event described in the foregoing clauses (a), (b), (c) or (d) that is effected, occurs or arises directly or indirectly, including the sale, transfer or assignment of a controlling interest in a Partner or by way of a merger, consolidation, business combination or similar transaction; provided, however, for any Partner that has issued securities of a class that are Publicly Traded (or securities of a class that are similarly traded publicly on a securities exchange or market in any other jurisdiction), "Transfer" does not include a sale of any such publicly traded securities. The terms "Transferred" and "Transferee" have correlative meanings.

"Trigger Date" has the meaning set forth in Section 3.9.3(g).

"Trigger Date Equity Value" has the meaning set forth in Section 3.9.3(h).

"Unacceptable Investor" means any Investor who is (a) a "designated national," "specially designated national," "specially designated terrorist," "specially designated global terrorist," "foreign terrorist organization," or "blocked person" (any of these a "Prohibited Party") within the definitions set forth in the Foreign Assets Control Regulations of the United States Treasury Department; (b) acting on behalf of, or a Person owned or Controlled by, any Prohibited Party or government against whom the United States maintains economic sanctions or embargoes under the regulations of the United States Treasury Department; (c) designated as a Prohibited Party by the United States Treasury Department pursuant to Executive Order 13224— Blocking Property and Prohibiting Transactions with Persons who Commit, Threaten to Commit, or Support Terrorism, effective September 24, 2001; (d) designated as a Prohibited Party by the

United States Treasury Department pursuant to any of the following statutes or regulations and executive orders issued thereunder: the Trading with the Enemy Act, the Iraq Sanctions Act, the National Emergencies Act, the Antiterrorism and Effective Death Penalty Act of 1996, the International Emergency Economic Powers Act, the United Nations Participation Act, the International Security and Development Cooperation Act, the Nuclear Proliferation Prevention Act of 1994, the Foreign Narcotics Kingpin Designation Act, the Cuban Democracy Act, the Cuban Liberty and Democratic Solidarity Act, and the Foreign Operations, Export Financing, and Related Programs Appropriations Act and any similar laws enacted by the U.S.; and (e) designated as a Prohibited Party by the United States or any other government under laws, regulations or executive orders similar to, or any other law, regulation or executive order of similar import as, those set forth above under the preceding clauses (a) through (d), whether as to the United States or any non-U.S. country, if and to the extent such laws, regulations or executive orders are in effect, or as any of the laws, regulations or executive or other orders in the preceding clauses may be amended, supplemented, adjusted, modified, reviewed or interpreted from time to time.

"United States" or "U.S." means the United States of America, its territories and possessions, any State of the United States and the District of Columbia.

"Unrealized Gain" attributable to any item of Partnership property means, as of any date of determination, the excess, if any, of (i) the fair market value of such property (as determined under Section 5.2.4) as of such date, over (ii) the Carrying Value of such property (prior to any adjustment to be made pursuant to Section 5.2.4) as of such date.

"Unrealized Loss" attributable to any item of Partnership property means, as of any date of determination, the excess, if any, of (i) the Carrying Value of such property (prior to any adjustment to be made pursuant to Section 5.2.4) as of such date, over (ii) the fair market value of such property (as determined under Section 5.2.4) as of such date.

"Unvested LTIP Units" has the meaning set forth in Section 3.10.4(b).

"Valuation Date" means the date of receipt by the General Partner of a Notice of Redemption or, if such date is not a Business Day, the first Business Day thereafter.

"Value" means, with respect to any Shares that are Publicly Traded, the average of the daily market price per Share for the ten (10) consecutive trading days immediately preceding the date with respect to which value must be determined. The market price for each such trading day shall be the closing price, regular way, as reported by the national exchange on which the Shares are listed and traded, on such day, or if no such sale takes place on such day, the average of the closing bid and asked prices on such day. If the Shares are Publicly Traded and the Shares Amount includes rights that a holder of Shares would be entitled to receive, then the Value of such rights shall be determined by the General Partner acting in good faith on the basis of such quotations and other information as it considers, in its reasonable judgment, appropriate. If the Shares are not Publicly Traded, the Value of the Shares Amount per Partnership Unit offered for redemption (which will be the Cash Amount per Partnership Unit offered for redemption payable pursuant to Section 7.6.1) means the amount that a holder of one Partnership Unit would receive if each of the assets of the Partnership were to be sold for their fair market value on the Specified

Redemption Date, the Partnership were to pay all of its outstanding liabilities, and the remaining proceeds were to be distributed to the Partners in accordance with the terms of this Agreement. Such Value shall be determined by the General Partner, acting in good faith and based upon a commercially reasonable estimate of the amount that would be realized by the Partnership if each asset of the Partnership (and each asset of each partnership, limited liability company, trust, joint venture or other Entity in which the Partnership owns a direct or indirect interest) were sold to an unrelated purchaser in an arms' length transaction where neither the purchaser nor the seller were under economic compulsion to enter into the transaction (without regard to any discount in value as a result of the Partnership's minority interest in any property or any illiquidity of the Partnership's interest in any property). In connection with determining the Value of a Partnership Interest for purposes of determining the number of additional Partnership Units issuable upon a Capital Contribution funded by an underwritten public offering or an arm's length private placement of Shares (or other comparable Equity Interest) of the General Partner, the Value of each Share (or comparable Equity Interest) shall be the public offering or arm's length private placement price per Share (or comparable Equity Interest equivalent) sold.

"Vested LTIP Units" has the meaning set forth in Section 3.10.4(b).

Section 1.2    Interpretation; Terms Generally.

1.2.1    The headings in this Agreement are inserted for convenience and identification only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof. Except where specified otherwise, all references to Articles, Sections, Schedules, or Exhibits refer to articles and sections of and schedules and exhibits to this Agreement.

1.2.2    The words "include", "includes", and "including" are deemed to be followed by the phrase "without limitation." The words "hereof", "herein", and "hereunder", and words of similar import when used in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement.

1.2.3    Unless otherwise specified, any references to any agreement or other instrument or any statute or regulation (including references in the Preamble and Recitals and in terms set forth in Section 1.1) are to it as amended and supplemented from time to time (and, in the case of a statute or regulation, to any corresponding provisions of successor statutes or regulations).

1.2.4    Except where otherwise specified, the provisions of this Agreement relative to number of days refer to calendar days. When the date for performance of any monetary obligation falls on a non-Business Day, such obligation need not be performed until the next-following Business Day.

1.2.5    All sums and amounts payable or to be payable pursuant to the provisions of this Agreement are payable only in coin or currency of the United States of America that, at the time of payment, is legal tender for the payment of public and private debts in the United States of America.

## ARTICLE II

## ORGANIZATIONAL MATTERS

Section 2.1    Organization. The Partnership is a limited partnership organized pursuant to the provisions of the LP Act and upon the terms and conditions set forth in this Agreement. The rights and obligations of the Partners and the administration and termination of the Partnership are governed by this Agreement and, subject to the terms of this Agreement, the LP Act. The General Partner is the sole general partner of the Partnership, and each Person identified in Exhibit A as a Limited Partner is hereby admitted as a limited partner of the Partnership. The Initial Limited Partner is hereby withdrawn from the Partnership and has no rights or obligations under this Agreement. The Partnership Interest of each Partner is personal property for all purposes. This Agreement is deemed to be effective as of the Effective Date.

Section 2.2    Name. The name of the Partnership is "[Ovation Partners, L.P.]" The Partnership's business may be conducted under any other name or names deemed advisable by the General Partner, including the name of the General Partner or any Affiliate thereof. The General Partner in its sole and absolute discretion may change the name of the Partnership at any time and from time to time. The General Partner shall notify the Limited Partners of any change to the name of the Partnership.

Section 2.3    Registered Office and Agent; Other Offices. The registered office and registered agent of the Partnership in the State of Delaware are set forth in the Certificate. The General Partner may change the registered agent from time to time. The Partnership may maintain other offices at such place or places within or outside the State of Delaware as the General Partner deems advisable.

Section 2.4    Term. The Partnership has an indefinite term and will continue in existence until terminated as provided in Article XII and the LP Act.

Section 2.5    Purposes. The purposes of the Partnership are to (a) conduct any business that may be lawfully conducted by a limited partnership organized pursuant to the LP Act, including to indirectly through [Oncor AssetCo] Holdings Company LLC, a Delaware limited liability company, acquire and act in all respects as owner of equity interests in [Oncor AssetCo], a Delaware limited liability company ("OAC"), (b) engage in all business and activities contemplated by this Agreement, and (c) engage in any other activities relating to and compatible with the foregoing.

Section 2.6    Powers. The Partnership has all powers granted to limited partnerships under the LP Act and the power to do all acts and things necessary or appropriate, incidental to, or convenient to accomplish the purposes of the Partnership, including the power to (a) enter into, perform, and carry out contracts of any kind, (b) incur obligations and liabilities of any kind, (c) borrow money and issue evidences of indebtedness, secured and unsecured, and (d) engage in all activities contemplated by this Agreement.

Section 2.7    Fiscal Year. The fiscal year of the Partnership ("Fiscal Year") will end on December 31 of each year unless another date is required under the Code for federal income tax

purposes. The Partnership will have the same Fiscal Year for income tax and financial and accounting purposes.

Section 2.8    General Partner REIT Qualification. Except as otherwise permitted by the General Partner, the Partnership shall not take any action that, in the judgment of the General Partner, in its sole and absolute discretion, (a) could adversely affect the ability of the General Partner to qualify as a REIT, or could subject the General Partner to any taxes under Section 856, Section 857, Section 860E or Section 4981 of the Code, unless the Board has previously determined to terminate the General Partner's REIT election for U.S. federal income tax purposes, or (b) could violate any law or regulation of any governmental body or agency having jurisdiction over either the General Partner or its securities, unless such action (or inaction) has been approved by the Board.

Section 2.9    Power of Attorney

2.9.1    Each Limited Partner and each Assignee constitutes and appoints each of the General Partner and any Liquidator (and any successor to any thereof by merger, transfer, assignment, election or otherwise) and each of the authorized officers and attorneys-in-fact of each of the foregoing, and each of those acting singly, in each case, with full power of substitution, as its true and lawful agent and attorney-in-fact, with full power and authority in its name, place and stead, in each case, in the name and on behalf such Limited Partner, in such Limited Partner's capacity as a Limited Partner, to:

(a)    execute, swear to, acknowledge, deliver, file and record in the appropriate public offices: (i) all certificates, documents and other instruments (including this Agreement and the Certificate and all amendments or restatements thereof) that the General Partner or any Liquidator, as applicable, deems appropriate or necessary to form, qualify or continue the existence or qualification of the Partnership as a limited partnership (or a partnership in which the limited partners have limited liability) in the State of Delaware and in all other jurisdictions in which the Partnership may conduct business or own property; (ii) all instruments that the General Partner or any Liquidator, as applicable, deems appropriate or necessary to reflect any amendment, change, modification or restatement of this Agreement made in accordance with the terms of this Agreement; (iii) all conveyances and other instruments or documents that the General Partner or any Liquidator, as applicable, deems appropriate or necessary to reflect the dissolution and liquidation of the Partnership pursuant to the terms of this Agreement, including a certificate of cancellation; (iv) all instruments relating to the admission, withdrawal, removal or substitution of any Partner pursuant to, or other events described in, Articles X, XI or XII or the Capital Contribution of any Partner; and (v) all certificates, documents and other instruments relating to the determination of the rights, preferences and privileges of Partnership Units, including any class of Partnership Units issued pursuant to Article III; and

(b)    execute, swear to, acknowledge and file all ballots, consents, approvals, waivers, certificates and other instruments appropriate or necessary, in the sole discretion of the General Partner or any Liquidator, as applicable, to make, evidence, give, confirm or ratify any vote, consent, approval, agreement or other action that is made or given by the Partners hereunder or that is consistent with the terms of this Agreement or appropriate or

necessary, in the discretion of the General Partner or any Liquidator, as applicable, to effectuate the terms or intent of this Agreement.

2.9.2    Nothing contained in this <u>Section 2.9</u> authorizes or is to be construed as authorizing the General Partner or any Liquidator, as applicable, to amend this Agreement except in accordance with <u>Article XIII</u> or as may be otherwise expressly provided for in this Agreement.

2.9.3    The foregoing power of attorney is hereby declared to be irrevocable and a power coupled with an interest, in recognition of the fact that each of the Partners will be relying upon the power of the General Partner and any Liquidator, as applicable, to act as contemplated by this Agreement in any filing or other action by it on behalf of the Partnership, and it shall survive and not be affected by the subsequent Incapacity of any Limited Partner or Assignee or the Transfer of all or any portion of such Limited Partner's or Assignee's Partnership Units or Partnership Interests and shall extend to such Limited Partner's or Assignee's heirs, successors, assigns and personal representatives. Each such Limited Partner or Assignee hereby agrees to be bound by any representation made by the General Partner or any Liquidator, as applicable, acting in good faith pursuant to such power of attorney; and each such Limited Partner or Assignee hereby waives any and all defenses which may be available to it to contest, negate or disaffirm the action of the General Partner or any Liquidator, as applicable, taken in good faith under such power of attorney. Each Limited Partner or Assignee shall execute and deliver to the General Partner or any Liquidator, as applicable, within 15 days after receipt of the General Partner's or Liquidator's, as applicable, request therefor, such further designation, powers of attorney and other instruments as the General Partner or the Liquidator, as the case may be, deems necessary to effectuate this Agreement and the purposes of the Partnership

## ARTICLE III

### CAPITAL

Section 3.1    <u>Partnership Units Generally</u>.

(a)    All Partnership Interests are to be denominated in Partnership Units. Partnership Units may be designated in different classes or series. The Partnership may issue fractional Partnership Units.

(b)    Notwithstanding that the General Partner and Limited Partners may hold the same class or series of Partnership Units, the General Partner Interest and the Limited Partner Interests have the differences in rights, privileges, and obligations provided for in this Agreement. All Limited Partners holding a specified series or class of Partnership Units will be deemed to constitute a single class of Limited Partners in respect of such Partnership Units for purposes of the LP Act. Any Limited Partner Interest acquired by the General Partner, whether pursuant to the exercise by a Limited Partner of its right to Redemption or otherwise, shall upon acquisition by the General Partner be deemed automatically converted to a General Partner Interest comprising an identical number of Partnership Units of the same class and series of those comprised by the acquired Partnership Interest. If the General Partner Transfers any

Partnership Units to a Person that has not been admitted as a general partner of the Partnership in accordance with this Agreement, then the transferee shall be deemed to hold such Partnership Units in respect of or as an Assignee of a Limited Partner Interest.

Section 3.2    Initial Partnership Units.

3.2.1    As of the Effective Date, there are designated three classes of Partnership Units: Common Units, Class A Units, and LTIP Units. Each Common Unit entitles the holder thereof to one (1) vote in respect of each matter subject to a vote or consent by holders of Common Units under this Agreement. Class A Units and LTIP Units do not entitle the holders thereof to any voting or consent rights under this Agreement, except as specifically set forth in this Agreement or as required by the LP Act.

3.2.2    As of the Effective Date, each Person identified on Exhibit A as a Partner has made or is deemed to have made Capital Contributions in the amount indicated on Exhibit A and is deemed to hold the number of Common Units or Class A Units indicated on Exhibit A. The Partnership is authorized to issue the Common Units and Class A Units listed on Exhibit A, and all such Common Units and Class A Units are deemed to be issued and outstanding as of the Effective Date.

3.2.3    As of the Effective Date, no LTIP Units have been issued or are outstanding. The General Partner is authorized to cause the Partnership to issue LTIP Units as provided in, and subject to the limitations of, this Agreement to newly admitted Partners as consideration for the performance of past or future services on behalf of the General Partner, the Partnership, OEDC or any of their Subsidiaries.

3.2.4    The Class A Units issued under this Agreement are intended to qualify as "profits interests" under IRS Revenue Procedures 93-27 and 2001-43, and the sections of this Agreement relating to such interests are to be interpreted and applied consistently therewith. In this regard, (x) any Class A Units so issued shall have a Capital Account as of their issue date equal to $0 and (y) to the extent any portion of a distribution otherwise payable to a holder of Class A Units (or Common Units into which such Class A Units are converted) would cause such holder to have a deficit balance in its Adjusted Capital Account after taking into account all allocations of income, gain, loss and deduction expected to be made to such holder for the year in or for which the distribution is made, such portion of the distribution shall not be paid to such holder until such time, if any, that the payment of such portion of the distribution would not have the result described in this clause (y).

Section 3.3    Additional Partnership Interests.

3.3.1    Subject to the terms of any outstanding Partnership Units, and the other terms of this Agreement, in addition to the Partnership Units authorized under Section 3.2, the Partnership may, at the discretion of the General Partner, issue additional Partnership Units from time to time on such terms as the General Partner determines to be appropriate to such Persons as the General Partner may determine, including the General Partner. Any such additional Partnership Units may be Common Units or Class A Units (provided that no additional Class A Units may be issued without the written consent of the Hunt Limited

23

Partner) or may be designated in one or more other classes or series, or series of classes, of Partnership Units, with such rights, privileges, preferences, and duties, including rights, preferences, and privileges senior to existing Partnership Units (subject to the terms of any existing Partnership Units), as the General Partner may determine, including the following:

(a)    the rights of such class or series of Partnership Units upon dissolution and liquidation of the Partnership;

(b)    whether such class or series of Partnership Units is redeemable by the Partnership and, if so, the price at which, and the terms and conditions upon which, such class or series of Partnership Units may be or is required to be redeemed by the Partnership;

(c)    whether such class or series of Partnership Units is issued with a conversion right and, if so, the rate at which, and the terms and conditions upon which, such class or series of Partnership Units may be converted into any other class or series of Partnership Units or other property;

(d)    the terms and conditions upon which such class or series of Partnership Units will be issued; and

(e)    the rights, if any, of such class or series of Partnership Units to vote on Partnership matters.

3.3.2    <u>Partnership Unit Designation</u>. The rights, privileges, preferences, and duties of any class or series of Partnership Units (other than the Common Units, Class A Units and LTIP Units) are to be set forth in a "<u>Partnership Unit Designation</u>" adopted by the General Partner. Upon its approval by the General Partner, a Partnership Unit Designation will constitute an amendment to, and be deemed to be part of, this Agreement. In the event of any conflict between the body of this Agreement and a Partnership Unit Designation, such Partnership Unit Designation shall control. The General Partner may amend this Agreement as it deems appropriate to make this Agreement consistent with the terms of any additional Partnership Units issued as provided in this <u>Section 3.3</u>. The General Partner shall amend the Partner Registry as needed so that it accurately sets forth the holders of all outstanding Partnership Units and the number of Partnership Units of each class and series of Partnership Units they hold.

3.3.3    <u>Specific Authority</u>. Without limiting the general authority granted to the General Partner in <u>Section 3.3.1</u> and elsewhere in this Agreement, the General Partner is expressly authorized to cause the Partnership to issue Partnership Units (a) upon the conversion, redemption, or exchange of any Debt, Partnership Units, or other securities issued by the Partnership, (b) for less than fair market value, so long as the General Partner concludes in good faith that such issuance is in the best interest of the Shareholders, the General Partner and the Partnership, (c) in connection with any merger of any other Person into the Partnership or any Subsidiary of the Partnership if the applicable merger agreement provides that Persons are to receive Partnership Units in exchange for their interests in the Person merging into the Partnership or any Subsidiary of the Partnership, and (d) in consideration for services rendered to or for the benefit of the Partnership.

3.3.4    <u>Issuances to the General Partner</u>. The Partnership shall not issue additional Partnership Units to the General Partner except in the following circumstances:

(a)    the additional Partnership Units are issued to all Partners in proportion to their respective Percentage Interests with respect to the class of Partnership Units so issued;

(b)    (i) the additional Partnership Units are (x) Common Units issued in connection with an issuance of Common Shares by the General Partner, or (y) Partnership Units (other than Common Units or Class A Units) issued in connection with the issuance of Shares other than Common Shares by the General Partner, which Partnership Units have rights, privileges, preferences (including upon liquidation, dissolution, and winding up) and qualifications that are substantially the same as those of such Shares, and (ii) the General Partner directly or indirectly contributes or otherwise causes to be transferred to the Partnership the net cash proceeds or other consideration, if any, received in connection with the issuance of such Shares; or

(c)    the additional Partnership Units are issued upon the conversion, redemption, or exchange of Debt, Partnership Units, or other securities previously issued by the Partnership to the General Partner.

3.3.5    <u>Certificates for Partnership Units</u>. As of the Effective Date, the Partnership Units are not certificated. The General Partner may from time to time elect to issue certificates in respect of any or all of the outstanding Partnership Units or any Partnership Units hereafter issued by the Partnership. At the request of any Partner, the General Partner will cause the Partnership to issue a certificate representing some or all of the Partnership Units held by such Partner in connection with a pledge of such Partnership Units permitted pursuant to <u>Article X</u>. All Partnership Units held by a Partner are deemed to be securities within the meaning of, and governed by, (i) Article 8 of the Delaware Uniform Commercial Code and (ii) Article 8 of the Uniform Commercial Code of any other applicable jurisdiction.

Section 3.4    <u>Additional Funds and Capital Contributions</u>.

3.4.1    <u>General</u>. The General Partner may, at any time and from time to time, determine that the Partnership requires additional funds ("<u>Additional Funds</u>") for the acquisition of additional Partnership assets, for the redemption of Partnership Units, or for such other Partnership purposes as the General Partner may determine. Additional Funds may be raised by the Partnership, at the election of the General Partner, in any manner contemplated by, and in accordance with, the terms of <u>Section 3.3</u> and this <u>Section 3.4</u>.

3.4.2    <u>No Preemptive Rights</u>. Except as may be provided in a separate written agreement to which the Partnership or the General Partner is party, no Partner or any other Person has any preemptive, preferential, or other similar right to acquire, receive, purchase, or subscribe for any additional Partnership Units or other Equity Interests of the Partnership.

3.4.3    <u>Additional Capital Contributions</u>. The Partnership may raise all or any portion of any Additional Funds, and acquire additional Partnership assets, by accepting additional Capital Contributions from the Partners or from third parties on such terms and

conditions as the General Partner determines. In connection with any additional Capital Contributions (of cash or property), the General Partner may cause the Partnership to issue additional Partnership Units as provided in Section 3.3. No Partner is obligated to make any additional Capital Contributions to the Partnership except as may be required by a separate agreement between such Partner and the Partnership or the General Partner.

3.4.4    Loans by Third Parties. The General Partner, on behalf of the Partnership, may obtain any Additional Funds by causing the Partnership to incur Debt to any Person upon such terms as the General Partner determines appropriate, including making such Debt convertible, redeemable, or exchangeable for Partnership Units; provided, however, that the Partnership shall not incur any Debt if any Partner would be personally liable for the repayment of such Debt (unless such Partner otherwise agrees).

3.4.5    General Partner Loans. The General Partner, on behalf of the Partnership, may obtain any Additional Funds by causing the Partnership to incur Debt to the General Partner (a "General Partner Loan"), if (a) such Debt is, to the extent permitted by Applicable Law, on substantially the same terms and conditions (including interest rate, repayment schedule, and conversion, redemption, repurchase, and exchange rights) as Debt incurred by the General Partner for the purpose of making such General Partner Loan, the net proceeds of which are loaned to the Partnership to provide such Additional Funds, or (b) such Debt is on terms and conditions no less favorable to the Partnership than would be available to the Partnership from any third party; provided, however, that the Partnership shall not incur any such Debt if (i) a breach, violation, or default of such Debt would be deemed to occur by virtue of the Transfer by any Limited Partner of any Partnership Interest, or (ii) such Debt is recourse to any Partner (unless such Partner otherwise agrees).

Section 3.5    Other Contribution Provisions. If any Partner is admitted to the Partnership and is given a Capital Account in exchange for services rendered to the Partnership, such transaction shall be treated by the Partnership and the affected Partner as if the Partnership had compensated such Partner in cash, and the Partner had contributed such cash to the capital of the Partnership.

Section 3.6    Dividend Reinvestment Plan or Cash Option Purchase Plan. Except as may otherwise be provided in this Article III, all amounts received or deemed received by the General Partner in respect of any Qualified DRIP/COPP, either (a) shall be utilized by the General Partner to effect open market purchases of Shares, or (b) if the General Partner elects instead to issue new Shares with respect to such amounts, shall be contributed by the General Partner to the Partnership in exchange for additional Common Shares. Upon such contribution, the Partnership will issue to the General Partner a number of Common Units equal to the quotient of (i) the number of new Shares so issued, divided by (ii) the Conversion Factor then in effect. The Partnership is expressly authorized to issue Common Units as contemplated by this Section 3.6 without any further act, approval or vote of any Partner or any other Persons.

Section 3.7    No Interest on Capital. No Partner shall be entitled to interest on its Capital Contributions or its Capital Account.

Section 3.8    <u>Hunt Group Ownership Limit</u>. In no event shall a Hunt Group Member be required or permitted to make Capital Contributions, or receive Capital Account credit, to the extent that such Capital Contributions or Capital Account credits would result in Hunt Group Members collectively, directly or indirectly, having made Capital Contributions or having Capital Account balances that in the aggregate exceed 24.8% of the total amount of Capital Contributions or Capital Account balances, respectively, of all Partners.

Section 3.9    Conversion of Class A Units.

3.9.1    <u>Automatic Conversion</u>. The Class A Units will convert, automatically and without any action on the part of the General Partner or any other Person, into Common Units following the Trigger Date as provided in this <u>Section 3.9</u>; <u>provided</u>, that if, prior to the Trigger Date, the Management Agreement is terminated by (i) the Manager for any reason, or (ii) by any other party to the Management Agreement pursuant to Section 19 thereof (other than in a scenario where the proviso in clause (viii) of such section applies), then (1) the Class A Units shall be cancelled, (2) <u>Sections 3.9.2</u> and <u>3.9.3</u> shall have no force or effect, and (3) the holders of Class A Units shall have no rights in respect of the Class A Units under this Agreement or otherwise.

3.9.2    <u>Conversion Calculation</u>. Promptly on or after the Trigger Date, the General Partner shall deliver to the Hunt Limited Partner a certificate setting forth in reasonable detail the General Partner's calculation (as approved by the Board of Directors) of the Trigger Date Equity Value, the Hurdle Value, the Class A Value, and the number of Common Units into which the Class A Units are to be converted as provided in this <u>Section 3.9</u>. Absent manifest error, the calculations presented in such certificate will be binding on all parties. On the second Business Day after the Trigger Date, each Class A Unit will be deemed to have converted to a number of Common Units equal to the Class A Value divided by the 30-Day VWAP Price of a Share as of the Trigger Date.

3.9.3    <u>Conversion-Related Definitions</u>. The following terms have the meanings indicated:

(a)    "<u>30-Day VWAP Price</u>" means, as of any date, the volume-weighted average price of the Shares over the thirty (30) consecutive trading days ending on such date (or, if date is not a Business Day, the next succeeding Business Day), as displayed on the Bloomberg page for the Shares (or, if such price is not available on such source, as provided by or calculated on the basis of an alternative source or sources proposed by the Hunt Limited Partner and approved by the Board of Directors).

(b)    "<u>Class A Value</u>" means an amount equal to 12.5% of the result of (A) the sum of the Trigger Date Equity Value plus the amount of all cash distributions (but only the cash portion of any Cash-Unit Distribution) paid in respect of Effective Date Common Units during the period from the Effective Date through and including the Trigger Date minus (B) the sum of the Hurdle Value plus the Effective Date Equity Value.

(c)     "Effective Date Common Units" means [the Common Units outstanding as of the Effective Date] plus the number of Common Units distributed in respect of such Common Units if and when Common Units are distributed in a Cash-Unit Distribution.

(d)     "Effective Date Equity Value" means $[_____]⁴ billion.

(e)     "Hurdle Value" means an amount equal to the amount of interest that would accrue and be outstanding as of the Trigger Date if (1) the Effective Date Equity Value accrued interest at the rate of 8% per annum, compounded annually, from the Effective Date to the Trigger Date, and (2) all cash distributions made in respect of Effective Date Common Units on or prior to the Trigger Date were first, treated as payment of interest accrued as described in clause (1) above until such interest has been paid in full and, second, applied to reduce the Effective Date Equity Value.

(f)     "IPO Date Shares" means (i) Shares outstanding as of the IPO Date, (ii) Shares issued or issuable upon redemption of Common Units outstanding as of the IPO Date (without regard to any holding period or other restriction on the redemption of such Common Units), and Shares issued in any distribution on any Shares described in clause (i) or (ii).

(g)     "Trigger Date" means the date that is [ALTERNATIVE 1: the earliest of (i) the 90th day after the earlier of (x) a merger or other transaction after the IPO Date in which a majority of the outstanding Shares are exchanged for Publicly Traded Equity Interests, or (y) the closing of any offering of Shares registered under the Securities Act carried out by the General Partner after the IPO Date (other than a resale shelf offering of IPO Date Shares), (ii) the 365th day after the IPO Date, and (iii) the third Business Day prior to the closing date of a Termination Transaction, other than a Termination Transaction described in clause (i)(x) of this Section 3.9.3(g)][ ALTERNATIVE 2: the earlier of (i) the 90th day after the IPO Date, and (ii) the third Business Day prior to the closing date of a Termination Transaction]⁵.

(h)     "Trigger Date Equity Value" means (x) the 30-Day VWAP Price of a Share as of the Trigger Date multiplied by, (y) product of (i) the number of Effective Date Common Units, and (ii) the Conversion Factor.

Section 3.10     Equity Incentive Plan

3.10.1     Establishment of Equity Incentive Plan. Nothing in this Agreement shall be construed or applied to preclude or restrain the General Partner from adopting, modifying or terminating incentive plans for the benefit of employees, directors or other business associates of the General Partner, the Manager, the Partnership or any of their Affiliates ("Equity Incentive Plans"). The General Partner may implement one or more Equity Incentive Plans and

---

⁴ Note to Draft: Blank to be filled in with a dollar amount equal to the number of Effective Date Common Units multiplied by the Rights Offering price per Share (as set forth on the cover of the prospectus for the Rights Offering).

⁵ Note to Draft: The parties will know at the time this Agreement is signed whether the Company has achieved Investment Grade status at the Effective Date as a result of an equity offering on or prior to the Effective Date (other than the Rights Offering). If it has not achieved Investment Grade status, this definition will consist of Alternative 1; if it has, this definition will consist of Alternative 2.

take or establish the parameters for any actions to be taken under such plans (such as the grant or exercise of options to acquire Shares or Partnership Units, the issuance of restricted Shares or Partnership Units, or the issuance of LTIP Units), whether taken with respect to or by an employee or other service provider of the General Partner, the Manager or the Partnership or its Subsidiaries, in a manner reasonably determined by the General Partner, which may be set forth in plan implementation guidelines and/or Award Agreements that the General Partner may establish or amend from time to time. The Partners acknowledge and agree that, in the event that any such Equity Incentive Plan is adopted, modified or terminated by the General Partner, amendments to this Agreement may become necessary or advisable and that the General Partner is authorized to make any such amendments without the consent or approval of any Limited Partner. The Partnership is expressly authorized to issue Partnership Units as contemplated by this <u>Section 3.10</u> without any further act, approval or vote of any Limited Partner or any other Person.

3.10.2  <u>Options Granted or Other Issuances of Shares</u>. If at any time or from time to time, in connection with an Equity Incentive Plan, a stock option to acquire Shares is duly exercised or any Shares are otherwise issued (e.g., an award of restricted stock), (i) the General Partner shall, as soon as practicable after such exercise or issuance, make or cause to be made directly or indirectly a Capital Contribution to the Partnership in an amount equal to the exercise price (if any) paid to the General Partner by such exercising party in connection with the exercise of such stock option or recipient in connection with such other issuance of Shares and (ii) notwithstanding the amount of the Capital Contribution (if any) actually made upon any such exercise or issuance, the General Partner shall be deemed to have contributed directly or indirectly to the Partnership, as a Capital Contribution, in consideration of an additional Limited Partnership Interest (expressed in and as additional Partnership Units), an amount equal to the Value of a Share as of the date of exercise or issuance multiplied by the number of Shares then being issued in connection with the exercise of such stock option or otherwise. For purposes of this <u>Section 3.10.2</u>, in determining the Value of a Share, only the trading date immediately preceding the exercise of the relevant stock option or other issuance of Shares under the Equity Incentive Plan shall be considered.

3.10.3  <u>Issuance of LTIP Units</u>. The General Partner may from time to time issue LTIP Units to Persons who provide services to or for the benefit of the Partnership, the General Partner, OEDC or any of their Subsidiaries, for such consideration as the General Partner may determine to be appropriate, and admit such Persons as Limited Partners. Subject to the provisions of this <u>Section 3.10.3</u>, LTIP Units shall be treated as Common Units, with all of the rights, privileges and obligations attendant thereto. For purposes of computing the Partners' Percentage Interests, holders of LTIP Units shall be treated as holders of Common Units and LTIP Units shall be treated as Common Units. In particular, the Partnership shall maintain at all times a one-to-one correspondence between LTIP Units and Common Units for conversion, distribution and other purposes, including complying with the following procedures:

(a)  If an Adjustment Event (as defined below) occurs, then the General Partner shall make a corresponding adjustment to the LTIP Units to maintain a one-for-one conversion and economic equivalence ratio between Common Units and LTIP Units. "<u>Adjustment Events</u>" means any of the following: (A) the Partnership makes a distribution on all

outstanding Common Units in Partnership Units, (B) the Partnership subdivides the outstanding Common Units into a greater number of units or combines the outstanding Common Units into a smaller number of units, or (C) the Partnership issues any Partnership Units in exchange for its outstanding Common Units by way of a reclassification or recapitalization of its Common Units. If more than one Adjustment Event occurs, the adjustment to the LTIP Units need be made only once using a single formula that takes into account each and every Adjustment Event as if all Adjustment Events occurred simultaneously. For the avoidance of doubt, the following are not Adjustment Events: (x) the issuance of Partnership Units in a financing, reorganization, acquisition or other similar business transaction, (y) the issuance of Partnership Units pursuant to any employee benefit or compensation plan or distribution reinvestment plan, or (z) the issuance of any Partnership Units to the General Partner in respect of a Capital Contribution to the Partnership of proceeds from the sale of securities by the General Partner. If the Partnership takes an action affecting the Common Units other than actions specifically described above as "Adjustment Events," and in the opinion of the General Partner such action would require an adjustment to the LTIP Units to maintain the one-to-one correspondence described above, the General Partner has the right to make such adjustment to the LTIP Units, to the extent permitted by law and by any Equity Incentive Plan, in such manner and at such time as the General Partner, in its sole discretion, determines to be appropriate under the circumstances. If an adjustment is made to the LTIP Units as herein provided, the General Partner shall promptly file in the books and records of the Partnership an officer's certificate setting forth such adjustment and a brief statement of the facts requiring such adjustment, which certificate shall be conclusive evidence of the correctness of such adjustment absent manifest error. Promptly after the filing of such certificate, the General Partner shall mail a notice to each holder of any LTIP Units setting forth the adjustment to his or her LTIP Units and the effective date of such adjustment; and

(b)     Subject to Section 3.10.3(c), in connection with any distribution by the Partnership to holders of Common Units, the holders of LTIP Units are entitled to receive, on the Partnership Record Date established by the General Partner with respect to such distribution to holders of Common Units, distributions in respect of their LTIP Units, when, as and if authorized and declared by the General Partner out of assets legally available for that purpose, in an amount per LTIP Unit equal to the amount per Common Unit distributed to holders of Common Units. So long as any LTIP Units are outstanding, the General Partner shall not, and shall not permit the Partnership to, authorize, declare or pay any distribution (whether in cash or in kind) on Common Units, unless equal distributions have been or contemporaneously are authorized, declared and paid on the LTIP Units.

(c)     A distribution by the Partnership to holders of Common Units in the form of an elective Cash-Unit Distribution (intended to support an elective cash-stock distribution on the Shares governed by Section 305(b) of the Code) shall not be treated as a distribution under Section 3.10.3(b), but instead shall be treated as an Adjustment Event under Section 3.10.3(a) (and for purposes of such Adjustment Event, the amount of Common Units distributed shall equal not only the amount of Common Units actually distributed, but also shall be deemed to include the number of additional Common Units that would have been distributed if no cash were elected in the Cash-Unit Distribution (or in the associated cash-stock distribution on the Shares) and thus additional Common Units (and Shares) were issued instead).

3.10.4    Special Provisions Applicable to LTIP Units.

(a)    *Priority*. Subject to the provisions of this Section 3.10.4 and Section 3.10.5, the LTIP Units rank pari passu with the Common Units as to the payment of regular and special, periodic or other distributions. Immediately prior to any liquidation, dissolution or winding up of the Partnership, the General Partner shall exercise its right to cause a Forced Conversion with respect to the maximum number of LTIP Units then eligible for conversion, taking into account any allocations that occur in connection with the liquidation, dissolution or winding up, at a value determined by the General Partner in good faith using the value attributed to the Partnership Units in the context of the liquidation, dissolution or winding up (in which case the Conversion Date shall be the Partnership Record Date for the final liquidating distribution made in connection with the liquidation, dissolution or winding up, or such other date as the General Partner determines to be appropriate). As to the payment of distributions and as to distribution of assets upon liquidation, dissolution or winding up, any class or series of Partnership Units or Partnership Interests that by its terms ranks junior to, pari passu with, or senior to the Common Units shall also rank junior to, pari passu with, or senior to, as the case may be, the LTIP Units.

(b)    *Award Agreements; Vesting*. LTIP Units may, in the sole discretion of the General Partner, be issued subject to such vesting, forfeiture and restrictions on transfer as are set forth in an award agreement entered into between the recipient and the General Partner and/or the Partnership (an "Award Agreement"). The terms of any Award Agreement may be modified by the General Partner from time to time in its sole discretion, subject to any restrictions on amendment imposed by the relevant Award Agreement or by the Equity Incentive Plan, if applicable. LTIP Units that have vested under the terms of an Award Agreement are referred to as "Vested LTIP Units"; all other LTIP Units are referred to as "Unvested LTIP Units."

(c)    *Forfeiture*. Unless otherwise specified in the Award Agreement, upon the occurrence of any event specified in an Award Agreement as resulting in either the right of the Partnership or the General Partner to repurchase LTIP Units at a specified purchase price or some other forfeiture of LTIP Units, then upon the exercise by the Partnership or the General Partner of such right to repurchase or such forfeiture in accordance with the applicable Award Agreement, the relevant LTIP Units shall immediately, and without any further action, be treated as cancelled and no longer outstanding for any purpose. Unless otherwise specified in the applicable Award Agreement, no consideration or other payment shall be due with respect to any LTIP Units that have been repurchased or forfeited, other than any distributions declared with respect to a Partnership Record Date prior to the effective date of the repurchase or forfeiture. In connection with any repurchase or forfeiture of LTIP Units, the balance of the portion of the Capital Account of the holder of the LTIP Units that is attributable to all of his or her LTIP Units shall be reduced by the amount, if any, by which it exceeds the Target Balance (as determined and defined in Section 5.5.10), calculated with respect to such holder's remaining LTIP Units, if any.

(d)    *Redemption*. The redemption right provided to Limited Partners under Section 7.6 shall not apply with respect to LTIP Units unless and until they are converted to Common Units as provided in Section 3.10.5.

(e)     *Voting*. LTIP Units shall not have any voting rights until such time as they are converted into Common Units as provided herein.

(f)     *Characterization as Profits Interests*. Any LTIP Units issued under this Agreement are intended to qualify as "profits interests" under IRS Revenue Procedures 93-27 and 2001-43, and the sections of this Agreement relating to such interests are to be interpreted and applied consistently therewith. In this regard, (x) any LTIP Units so issued shall have a Capital Account as of their issue date equal to $0 and (y) to the extent any portion of a distribution otherwise payable to a holder of LTIP Units would cause such holder to have a deficit balance in its Adjusted Capital Account after taking into account all allocations of income, gain, loss and deduction expected to be made to such holder for the year in or for which the distribution is made, such portion of the distribution shall not be paid to such holder until such time, if any, that the payment of such portion of the distribution would not have the result described in this clause (y).

3.10.5    Conversion of LTIP Units.

(a)     Subject to Section 3.10.5(b), a holder of LTIP Units has the right (the "Conversion Right"), at his or her option, at any time to convert all or a portion of his or her Vested LTIP Units into Common Units; provided, however, that a holder may not exercise the Conversion Right for less than 100 Vested LTIP Units or, if such holder holds less than 100 Vested LTIP Units, less than all of the Vested LTIP Units held by such holder. A holder of LTIP Units shall not have the right to convert Unvested LTIP Units into Common Units until they become Vested LTIP Units; provided, however, that when a holder of LTIP Units is notified of the expected occurrence of an event that will cause his or her Unvested LTIP Units to become Vested LTIP Units, such holder of LTIP Units may give the General Partner a Conversion Notice (as defined in Section 3.10.5(b)) conditioned upon, and effective as of the time of, such LTIP Units vesting, and the General Partner shall accept such Conversion Notice subject to such condition, unless such holder of LTIP Units revokes such Conversion Notice prior to the Conversion Date specified therein. In all cases, the conversion of any LTIP Units into Common Units is subject to the conditions and procedures set forth in this Section 3.10.5.

(b)     A holder of Vested LTIP Units may convert such Units into an equal number of fully paid and nonassessable Common Units, giving effect to all adjustments (if any) made pursuant to Section 3.10.3.; provided that, in no event may a Limited Partner convert a number of Vested LTIP Units that exceeds the result of (x) the portion of the Economic Capital Account Balance of such Limited Partner that is attributable to all the LTIP Units of such Limited Partner, divided by (y) the Common Unit Economic Balance, in each case as determined as of the Conversion Date (the "Capital Account Limitation"). In order to exercise his or her Conversion Right, a holder of LTIP Units must deliver a notice (a "Conversion Notice") to the General Partner that specifies the number of Vested LTIP Units to be converted and a conversion date (the "Conversion Date") that is not less than 10 days, or more than 60 days, after the date of delivery of such Conversion Notice. A holder of LTIP Units may deliver a Notice of Redemption pursuant to Section 7.6.1 relating to Common Units that will be issued to such holder upon conversion of LTIP Units in advance of the Conversion Date specified in the Conversion Notice providing for such conversion, as long as the Specified Redemption Date resulting from such Notice of Redemption occurs on or after the Conversion Date specified in such Conversion

Notice. The Partners intend that a holder of LTIP Units may, if he or she so wishes, arrange for the Common Units into which his or her Vested LTIP Units will be converted to be redeemed by the Partnership simultaneously with such conversion, with the further consequence that, if the General Partner elects to assume the Partnership's redemption obligation with respect to such Common Units under Section 7.6.2 by delivering to such holder Shares rather than cash, such holder can have such Shares issued to him or her simultaneously with the conversion of his or her Vested LTIP Units into Common Units. The General Partner, if requested, shall reasonably cooperate with any holder of LTIP Units to coordinate the timing of the different events described in the foregoing sentence to achieve this intent.

(c)     The Partnership, at any time at the election of the General Partner, may cause any number of Vested LTIP Units held by a holder of LTIP Units to be converted (a "Forced Conversion") into an equal number of Common Units, giving effect to all adjustments (if any) made pursuant to Section 3.10.4; provided, however, that the Partnership may not cause Forced Conversion of any LTIP Units that would not at the time be eligible for conversion at the option of such holder of LTIP Units pursuant to Section 3.10.5(b) (e.g., due to the application of the Capital Account Limitation). In order to exercise the right of Forced Conversion, the General Partner shall deliver a notice (a "Forced Conversion Notice") to the applicable holder of LTIP Units not less than ten nor more than 60 days prior to the Conversion Date specified in such Forced Conversion Notice.

(d)     A conversion of Vested LTIP Units for which the holder thereof has given a Conversion Notice or the General Partner has given a Forced Conversion Notice shall occur automatically after the close of business on the applicable Conversion Date without any action on the part of such holder of LTIP Units or any other Person, as of which time such holder of LTIP Units shall be credited on the books and records of the Partnership with the issuance as of the opening of business on the next day of the number of Common Units issuable upon such conversion. After the conversion of LTIP Units as aforesaid, the General Partner shall deliver to such holder of LTIP Units, upon his or her written request, a certificate certifying the number of Common Units and remaining LTIP Units, if any, held by such person immediately after such conversion.

(e)     For purposes of making future allocations under Section 5.1 and applying the Capital Account Limitation, the portion of the Economic Capital Account Balance of the applicable holder of LTIP Units that is treated as attributable to his or her remaining LTIP Units shall be reduced, as of the date of conversion, by the product of the number of LTIP Units converted and the Common Unit Economic Balance.

(f)     If the Partnership, the General Partner or the Partner is a party to any transaction (including a merger, a unit exchange, self-tender offer for all or substantially all Common Units or other business combination or reorganization, or sale of all or substantially all of the Partnership's assets, but excluding any transaction which constitutes an Adjustment Event) as a result of which Common Units are exchanged for or converted into the right, or the holders of Common Units are otherwise entitled in connection therewith, to receive cash, securities or other property or any combination thereof (any of the foregoing, a "Transaction"), then, immediately prior to the Transaction, (x) in the event of a merger, consolidation, exchange or other similar transaction resulting in a change of control of the Partnership, all Unvested LTIP

Units shall immediately vest and (y) the General Partner shall exercise its right to cause a Forced Conversion with respect to the maximum number of LTIP Units then eligible for conversion, taking into account any allocations that occur in connection with the Transaction or that would occur in connection with the Transaction if the assets of the Partnership were sold at the Transaction price or, if applicable, at a value determined by the General Partner in good faith using the value attributed to the Partnership Units in the context of the Transaction (in which case the Conversion Date will be the effective date of the Transaction).

(g)     In anticipation of a Forced Conversion upon the consummation of a Transaction, the General Partner shall use commercially reasonable efforts to cause each holder of LTIP Units to be afforded the right to receive in connection with such Transaction, in consideration for the Common Units into which his or her LTIP Units will be converted, the same kind and amount of cash, securities and other property (or any combination thereof) receivable upon the consummation of such Transaction by a holder of the same number of Common Units, assuming such holder of Common Units is not a Person with which the Partnership consolidated or into which the Partnership merged or that merged into the Partnership or to which such sale or transfer was made, as the case may be, or an Affiliate of such Person. In the event that holders of Common Units have the opportunity to elect the form or type of consideration to be received upon consummation of a Transaction, prior to such Transaction the General Partner shall give prompt written notice to each holder of LTIP Units of such election, and shall use commercially reasonable efforts to (i) afford the holders of LTIP Units the right to elect, by written notice to the General Partner, the form or type of consideration to be received upon conversion of each LTIP Unit held by such holder into Common Units in connection with such Transaction, and (ii) arrange that if a holder of LTIP Units fails to make such an election, such holder (and his or her Transferees and Assignees) shall receive upon conversion of each LTIP Unit held by him or her (and his or her Transferees and Assignees) the same kind and amount of consideration that a holder of a Common Unit would receive if such holder of a Common Unit failed to make such an election.

(h)     Conversions under this <u>Section 3.10.5</u> are not to be treated as Transfers (and, thus, are not subject to the restrictions on Transfers provided for in this Agreement).

## ARTICLE IV

## DISTRIBUTIONS

Section 4.1     <u>Requirement and Characterization of Distributions</u>.

4.1.1     <u>General</u>.

(a)     Subject to the terms of any Partnership Interest set forth in a Partnership Unit Designation, the General Partner shall generally cause the Partnership to distribute at least quarterly Cash From Operations from each quarterly or shorter period to the Partners who are Partners on the Partnership Record Date with respect to such quarterly or shorter period.

(b)     In no event may a Partner receive a distribution of Cash From Operations or non-cash items with respect to a Partnership Unit for an applicable period if such Partner is entitled to receive a distribution for such period with respect to a Share for which such Partnership Unit has been redeemed or exchanged.

(c)     The General Partner shall make reasonable efforts, as determined by it in its sole and absolute discretion and consistent with the qualification of the General Partner as a REIT, to distribute Cash From Operations to the General Partner in an amount sufficient to enable the General Partner to make distributions to its Shareholders that will enable the General Partner to (1) satisfy the requirements for qualification as a REIT under the REIT Rules and (2) avoid any U.S. federal income or excise tax liability.

4.1.2     Method.

(a)     Each holder of a class of Partnership Units that, as a class, is entitled to any preference in distribution shall be entitled to a distribution in accordance with the rights of any such class of Partnership Units (and, within such class, pro rata in proportion to the respective Percentage Interests in such class on the Partnership Record Date for such distribution); and

(b)     Subject to Section 4.1.3, to the extent there is Cash From Operations remaining after payment of or reservation for any preference in distribution in accordance with the clause (a) of this Section 4.1.2 and the applicable terms of any Partnership Units to which clause (a) of this Section 4.1.2 applies, distributions are to be made with respect to Partnership Interests that are not entitled to any such preference in distribution pro rata to each such class in accordance with the terms of such class (and, within each such class, pro rata in proportion to the respective Percentage Interests in such class on the applicable Partnership Record Date).

4.1.3     Distributions on Class A Units. Except as provided in Section 4.1.6, the Partnership will not make any distributions in respect of Class A Units. Holders of Class A Units are entitled to receive distributions only (i) in respect of such Class A Units as provided in Section 4.1.6, or (ii) in respect of Common Units as provided in Section 4.1.2(b) that are issued to them upon the conversion of Class A Units to Common Units as provided in Section 3.10.

4.1.4     Distributions in Kind. Except as specifically provided herein, no Partner has the right to demand or receive any property other than cash in respect to its Partnership Interest. The General Partner may elect to make a distribution in kind to the Partners of Partnership assets, in which case the distribution will be made so that the fair market value of the assets distributed is distributed as provided in this Section 4.1. The fair market value of any assets distributed in kind will be determined by the General Partner. The General Partner will give at least 90 days' prior written notice to any Limited Partner to which it plans to make a distribution in kind.

4.1.5     Hunt Group Distribution Limitation. Notwithstanding the other provisions of this Section 4.1 or any other provision of this Agreement, in no event shall any

amount be distributed by the Partnership to a Partner that is a Hunt Group Member if such amount, when added to all other amounts distributed by the Partnership to Partners that are Hunt Group Members, would result in Hunt Group Members collectively receiving, in the aggregate, either (i) in excess of 24.8% of the total amount then being distributed by the Partnership, (ii) cumulative distributions during any particular Fiscal Year in excess of 24.8% of the cumulative amount distributed by the Partnership to all Partners during such Fiscal Year, or (iii) cumulative distributions during the current and all prior Fiscal Years in excess of 24.8% of the cumulative amount distributed by the Partnership to all Partners during the current and all prior Fiscal Years. Any amount that would otherwise be distributed to a Partner that is a Hunt Group Member but for the application of the preceding sentence shall instead be distributed in accordance with the applicable provision of Sections 4.1.1, 4.1.2, and 4.1.3 to holders of Common Units that are not Hunt Group Members in proportion to the number of Common Units held by each such holder.

        4.1.6    Tax Distributions. Notwithstanding Section 4.1.3, but subject to the terms of any Partnership Interest set forth in a Partnership Unit Designation, prior to (1) the Trigger Date, and (2) in the case of holders of Class A Units, the first anniversary of the Trigger Date, each Partner holding Common Units or Class A Units is entitled to receive cash distributions from the Partnership during a Fiscal Year (after taking into account any other distributions received by such Partner in such Fiscal Year pursuant to this Section 4.1) in amounts sufficient to enable such Partner to discharge any U.S. federal, state, and local tax liability (excluding penalties) arising as a result of allocations to such Common Units or Class A Units pursuant to Article V, determined by assuming the applicability of the highest marginal combined U.S. federal, state and local tax rate (including the Texas Margin Tax) for a corporation doing business in Dallas, Texas. The amount of such tax liability shall be calculated taking into account (a) the cumulative amount of loss, deduction and credit previously allocated to such Partner pursuant to Section 5.1.1 and Section 5.1.2 in prior Fiscal Years and not used in prior Fiscal Years to reduce taxable income for the purpose of making distributions under this Section 4.1.6, and (b) the character of any income or gain and the income tax rates applicable thereto. The calculation shall be made on the assumption that taxable income or tax loss from the Partnership is a Partner's only taxable income or tax loss. Such distributions shall be debited against each Partner's Capital Account. Any amounts distributed pursuant to this Section 4.1.6 shall be considered an advance against the next distribution payable to such Partner pursuant to Section 4.1.2 and shall reduce or offset such subsequent distributions to such Partner pursuant to Section 4.1.2. Any amount distributed in respect of Class A Units pursuant to this Section 4.1.6 shall be considered an advance against distributions payable in respect of Common Units issuable upon conversion of such Class A Units to Common Units and shall reduce or offset such subsequent distributions pursuant to Section 4.1.2 to the Partner holding such Class A Units.

        Section 4.2    Amounts Withheld. All amounts withheld pursuant to the Code or any provisions of any state or local tax law and Section 9.5 with respect to any allocation, payment or distribution to the General Partner, the Limited Partners or Assignees shall be treated as amounts distributed to the General Partner, Limited Partners or Assignees pursuant to Section 4.1 for all purposes under this Agreement.

Section 4.3    Distributions Upon Liquidation. Proceeds from the sale or other disposition of all or substantially all of the assets of the Partnership for cash or a related series of transactions that, taken together, result in the sale or other disposition of all or substantially all of the assets of the Partnership for cash shall be distributed to the Partners in accordance with Section 12.2.

Section 4.4    Revisions to Reflect Issuance of Partnership Interests. If the Partnership issues Partnership Interests to the General Partner or any Limited Partner pursuant to Article III, the General Partner shall revise this Article IV and the Partner Registry as it deems necessary to reflect the issuance of such additional Partnership Interests; no consent or approval is needed from any other Partner for any such revision.

## ARTICLE V

## ALLOCATIONS

Section 5.1    Allocations For Capital Account Purposes. For purposes of maintaining the Capital Accounts and in determining the rights of the Partners among themselves, the Partnership's items of income, gain, loss and deduction (computed in accordance with Section 5.2) shall be allocated among the Partners (and determined separately for each class of Partnership Interest held by each Partner) in each Fiscal Year or other relevant period as provided herein below.

5.1.1    Net Income. After giving effect to the special allocations set forth in Section 5.5 and subject to Sections 5.5.9 and 5.5.10, Net Income for each Fiscal Year or other relevant period shall be allocated as follows:

(a)    first, to the General Partner until the cumulative Net Income previously allocated to the General Partner pursuant to this clause (a) equals the cumulative Net Losses previously allocated to the General Partner pursuant to Section 5.1.2(d);

(b)    second, to the holders of any Partnership Interests that are entitled to any preference upon liquidation until the cumulative Net Income allocated under this clause (b) equals the cumulative Net Losses allocated to such Partners under Section 5.1.2(c);

(c)    third, to the holders of any Partnership Unit that are entitled to any preference in distribution (other than a preferred return of capital) in accordance with the rights of any such class of Partnership Unit until each such Partnership Unit has been allocated, on a cumulative basis pursuant to this clause (c), Net Income equal to the amount of any such preference in distribution (other than a preferred return of capital) of such class of Partnership Units (and, within such class, pro rata in proportion to the respective Percentage Units as of the last day of the period for which such allocation is being made); and

(d)    thereafter, with respect to Partnership Units that are not entitled to any preference in the allocation of Net Income, pro rata to each such class in accordance with the terms of such class (and, within such class, pro rata in proportion to their respective Percentage Interests as of the last day of the period for which such allocation is being made).

5.1.2    Net Losses. After giving effect to the special allocations set forth in Section 5.5 and subject to Sections 5.5.9 and 5.5.10, Net Losses for each Fiscal Year or other relevant period shall be allocated as follows:

(a)    first, to the holders of Partnership Units, in proportion to and to the extent of the excess of (i) the cumulative Net Income previously allocated to such holders pursuant to Section 5.1.1(d), over (ii) the sum of (A) the aggregate distributions with respect to such Partnership Units pursuant to clause (b) of Section 4.1.2, and (B) the cumulative allocations of Net Losses to such holders pursuant to this Section 5.1.2(a) for all prior taxable years;

(b)    second, with respect to classes of Partnership Units that are not entitled to any preference in distribution upon liquidation, pro rata to each such class in accordance with the terms of such class (and, within such class, pro rata in proportion to their respective Percentage Interests as of the last day of the period for which such allocation is being made); provided, that Net Losses shall not be allocated to any Partner pursuant to this Section 5.1.2(b) to the extent that such allocation would cause such Partner to have an Adjusted Capital Account Deficit (or increase any existing Adjusted Capital Account Deficit) (determined in the case of a Partner who also holds classes of Partnership Units that are entitled to any preferences in distribution upon liquidation, by subtracting from such Partners' Adjusted Capital Account the amount of such preferred distribution to be made upon liquidation) at the end of such Fiscal Year or other relevant period;

(c)    third, with respect to classes of Partnership Interests that are entitled to any preference in distribution upon liquidation, in reverse order of the priorities of each such class (and within each such class, pro rata in proportion to their respective Percentage Interests as of the last day of the period for which such allocation is being made); provided that Net Losses shall not be allocated to any Partner pursuant to this Section 5.1.2(c) to the extent that such allocation would cause such Partner to have an Adjusted Capital Account Deficit (or increase any existing Adjusted Capital Account Deficit) (determined in each case by not including in the Partners' Adjusted Capital Accounts any amount that a Partner is obligated to contribute to the Partnership with respect to any deficit in its Capital Account pursuant to Section 12.3) at the end of such taxable year (or portion thereof); and

(d)    thereafter, to the General Partner.

5.1.3    Allocation of Nonrecourse Debt. For purposes of Regulations Section 1.752-3(a), the Partners agree that Nonrecourse Liabilities of the Partnership in excess of the sum of (i) the amount of Partnership Minimum Gain and (ii) the total amount of Nonrecourse Built-in Gain shall be allocated by the General Partner by taking into account the facts and circumstances relating to each Partner's respective interest in the profits of the Partnership. For this purpose, the General Partner will have discretion in any Fiscal Year to allocate such excess Nonrecourse Liabilities among the Partners in any manner permitted under Code Section 752 and the Regulations thereunder.

5.1.4    Recapture Income. Any gain allocated to the Partners upon the sale or other taxable disposition of any Partnership asset shall, to the extent reasonably practicable after taking into account other required allocations of gain pursuant to Section 5.5 and Section

5.6, be characterized as Recapture Income in the same proportions and to the same extent as such Partners have been allocated any deductions directly or indirectly giving rise to the treatment of such gains as Recapture Income.

      5.1.5    Hunt Group Allocation Limitation. Notwithstanding Section 5.1.1 and 5.1.2, or any other provision of this Agreement, in no event shall the amount of Net Income or items of income and gain of the Partnership which is allocated for any taxable year or other relevant period to all Partners that are Hunt Group Members exceed 24.8% of the total amount of Net Income and items of income and gain, respectively, of the Partnership for such taxable year or other relevant period. Any amount that would otherwise be allocated to Partners that are Hunt Group Members but for the application of the preceding sentence shall instead be allocated among the other Partners in accordance with their respective economic interests in the Partnership (as determined by the General Partner). If the foregoing limitation applies so as to reduce the Net Income or items of income and gain allocated to the Hunt Group Members for a particular taxable year or other relevant period, additional Net Income or items of income and gain, as the case may be, shall, subject to the limitation in the first sentence of this Section 5.1.5, be allocated to the Hunt Group Members for subsequent taxable years until any such prior reductions in allocations have been fully restored.

      Section 5.2    Capital Accounts of the Partners.

      5.2.1    The Partnership shall maintain for each Partner a separate Capital Account in accordance with the rules of Regulations Section l.704-l(b)(2)(iv). Such Capital Account shall be increased by (i) the amount of cash and the Agreed Value of all property (other than cash) contributed or deemed contributed by such Partner to the Partnership pursuant to this Agreement and (ii) all items of Partnership income and gain (including income and gain exempt from tax) computed in accordance with Section 5.2.2 and allocated to such Partner pursuant to Section 5.1, and Section 5.5, and decreased by (x) the amount of cash or Agreed Value of all distributions of cash or property made to such Partner pursuant to this Agreement and (y) all items of Partnership deduction and loss computed in accordance with Section 5.2.2 and allocated to such Partner pursuant to Section 5.1 and Section 5.5. The Capital Account of each Partner as of the Effective Date is as set forth on Schedule 5.2.

      5.2.2    In computing Net Income and Net Losses and the amount of any item of income, gain, deduction or loss to be reflected in the Partners' Capital Accounts, unless otherwise specified in this Agreement, the determination, recognition and classification of any such item shall be the same as its determination, recognition and classification for U.S. federal income tax purposes determined in accordance with Section 703(a) of the Code (for this purpose all items of income, gain, loss or deduction required to be stated separately pursuant to Section 703(a)(1) of the Code shall be included in taxable income or loss), with the following adjustments:

      (a)    Except as otherwise provided in Regulations Section 1.704-1(b)(2)(iv)(m), the computation of all items of income, gain, loss and deduction shall be made without regard to any election under Section 754 of the Code which may be made by the Partnership; provided that the amounts of any adjustments to the adjusted bases of the assets of the Partnership made pursuant to Section 734 of the Code as a result of the distribution of

property by the Partnership to a Partner (to the extent that such adjustments have not previously been reflected in the Partners' Capital Accounts) shall be reflected in the Capital Accounts of the Partners in the manner and subject to the limitations prescribed in Regulations Section l.704-1(b)(2)(iv)(m)(4).

(b)     The computation of all items of income, gain, and deduction shall be made without regard to the fact that items described in Section 705(a)(l)(B) or 705(a)(2)(B) of the Code are not includible in gross income or are neither currently deductible nor capitalized for federal income tax purposes.

(c)     Any income, gain or loss attributable to the taxable disposition of any Partnership property shall be determined as if the adjusted basis of such property as of such date of disposition were equal in amount to the Partnership's Carrying Value with respect to such property as of such date.

(d)     In lieu of the depreciation, amortization, and other cost recovery deductions taken into account in computing such taxable income or loss, there shall be taken into account Depreciation for such Fiscal Year or other relevant period.

(e)     In the event the Carrying Value of any Partnership asset is adjusted pursuant to Section 5.2.4, the amount of any such adjustment shall be taken into account as gain or loss from the disposition of such asset.

(f)     Any items specially allocated under Section 5.5 of this Agreement shall not be taken into account in determining Net Income and Net Losses, but such items shall be determined in a manner consistent with the provisions of this Section 5.2.2.

5.2.3     A Transferee (including any Assignee) of a Partnership Unit shall succeed to a pro rata portion of the Capital Account of the transferor.

5.2.4

(a)     Consistent with the provisions of Regulations Section 1.704-1(b)(2)(iv)(f), and as provided in Section 5.2.4(b), the Carrying Values of all Partnership assets shall be adjusted upward or downward (such adjusted Carrying Value for an asset, the "Adjusted Value" of such asset) to reflect any Unrealized Gain or Unrealized Loss attributable to such Partnership assets, as of the times of the adjustments provided in Section 5.2.4(b), as if such Unrealized Gain or Unrealized Loss had been recognized on an actual sale of each such property and allocated pursuant to Section 5.1 and Section 5.5.

(b)     Such adjustments shall be made as of the following times: (i) immediately prior to the acquisition of an additional interest in the Partnership by any new or existing Partner in exchange for more than a de minimis Capital Contribution or as consideration for services performed on behalf of the Partnership or its subsidiaries; (ii) immediately prior to the distribution by the Partnership to a Partner of more than a de minimis amount of property as consideration for an interest in the Partnership; and (iii) immediately prior to the liquidation of the Partnership within the meaning of Regulations Section 1.704-l(b)(2)(ii)(g) (except as provided in Regulations Section 1.704-1(b)(2)(iv)(*l*)), provided, however, that adjustments

pursuant to clauses (i) and (ii) above shall be made only if the General Partner determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Partners in the Partnership.

(c)　　In accordance with Regulations Section 1.704-l(b)(2)(iv)(e), the Carrying Value of Partnership assets distributed in kind shall be adjusted upward or downward to reflect any Unrealized Gain or Unrealized Loss attributable to such Partnership assets, as of the time any such asset is distributed.

(d)　　In determining Unrealized Gain or Unrealized Loss for purposes of this Section 5.2, the aggregate cash amount and fair market value of all Partnership assets (including cash or cash equivalents) shall be determined by the General Partner using such reasonable method of valuation as it may adopt, or in the case of a liquidating distribution pursuant to Article XII, shall be determined and allocated by the Liquidator using such reasonable methods of valuation as it may adopt. The General Partner, or the Liquidator, as the case may be, shall allocate such aggregate fair market value among the assets of the Partnership in such manner as it determines in its sole and absolute discretion to arrive at a fair market value for individual properties.

(e)　　Notwithstanding anything herein to the contrary, (x) the conversion of Class A Units into Common Units that occurs pursuant to Section 3.9 shall be treated as a transaction described in Section 5.2.4(b) that triggers the adjustments described in Section 5.2.4(a) and (y) Unrealized Gain resulting from such adjustments shall be allocated among the Partners as provided in Section 5.5.9.

5.2.5　　The provisions of this Agreement (including this Section 5.2) relating to the maintenance of Capital Accounts are intended to comply with Regulations Section 1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations. In the event the General Partner shall determine that it is prudent to modify the manner in which the Capital Accounts, or any debits or credits thereto (including debits or credits relating to liabilities which are secured by contributed or distributed property or which are assumed by the Partnership, the General Partner, or the Limited Partners) are computed in order to comply with such Regulations, the General Partner may make such modification without regard to Article XIII; provided that it is not likely to have a material effect on the amounts distributable to any Person pursuant to Article XII upon the dissolution of the Partnership. The General Partner also shall (i) make any adjustments that are necessary or appropriate to maintain equality between the Capital Accounts of the Partners and the amount of Partnership capital reflected on the Partnership's balance sheet, as computed for book purposes, in accordance with Regulations Section l.704-l(b)(2)(iv)(q), and (ii) make any appropriate modifications in the event unanticipated events might otherwise cause this Agreement not to comply with Regulations Section l.704-1(b).

Section 5.3　　No Withdrawal. No Partner shall be entitled to withdraw any part of its Capital Contribution or Capital Account or to receive any distribution from the Partnership, except as provided in Articles III, IV, VI and XII of this Agreement.

Section 5.4   Revisions to Allocations to Reflect Issuance of Partnership Interests. If the Partnership issues Partnership Interests to the General Partner or any Additional Limited Partner pursuant to Article III, the General Partner shall make such revisions to this Article V and the Partner Registry as it deems necessary to reflect the terms of the issuance of such Partnership Interests, including making preferential allocations to classes of Partnership Interests that are entitled thereto. Such revisions shall not require the consent or approval of any other Partner.

Section 5.5   Special Allocation Rules. Notwithstanding any other provision of this Agreement, the following special allocations shall be made in the following order:

5.5.1   Minimum Gain Chargeback. Notwithstanding the provisions of Section 5.1 or any other provisions of this Section 5.5, if there is a net decrease in Partnership Minimum Gain during any Fiscal Year or other relevant period, each Partner shall be specially allocated items of Partnership income and gain for such year or period (and, if necessary, subsequent years and periods) in an amount equal to such Partner's share of the net decrease in Partnership Minimum Gain, as determined under Regulations Section 1.704-2(g). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(f)(6). This Section 5.5.1 is intended to comply with the minimum gain chargeback requirements in Regulations Section 1.704-2(f) and for purposes of this Section 5.5.1 only, each Partner's Adjusted Capital Account Deficit shall be determined prior to any other allocations pursuant to Section 5.1 of this Agreement with respect to such Fiscal Year or other relevant period and without regard to any decrease in Partner Minimum Gain during such Fiscal Year or other relevant period.

5.5.2   Partner Minimum Gain Chargeback. Notwithstanding any other provision of Section 5.1 of this Agreement or any other provisions of this Section 5.5 (except Section 5.5.1), if there is a net decrease in Partner Nonrecourse Debt Minimum Gain attributable to a Partner Nonrecourse Debt during any Fiscal Year or other relevant period, each Partner who has a share of the Partner Nonrecourse Debt Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(5), shall be specially allocated items of Partnership income and gain for such year or period (and, if necessary, subsequent years and periods) in an amount equal to such Partner's share of the net decrease in Partner Minimum Gain attributable to such Partner Nonrecourse Debt, determined in accordance with Regulations Section 1.704-2(i)(5). Allocations pursuant to the previous sentence shall be made in proportion to the respective amounts required to be allocated to each Partner pursuant thereto. The items to be so allocated shall be determined in accordance with Regulations Section 1.704-2(i)(4). This Section 5.5.2 is intended to comply with the minimum gain chargeback requirement in such Section of the Regulations and shall be interpreted consistently therewith. Solely for purposes of this Section 5.5.2, each Partner's Adjusted Capital Account Deficit shall be determined prior to any other allocations pursuant to Section 5.1 or Section 5.5 with respect to such Fiscal Year or other relevant period, other than allocations pursuant to Section 5.5.1.

5.5.3   Qualified Income Offset. In the event any Partner unexpectedly receives any adjustments, allocations or distributions described in Regulations Sections 1.704-l(b)(2)(ii)(d)(4), l.704-1(b)(2)(ii)(d)(5), or 1.704-l(b)(2)(ii)(d)(6), and after giving effect to the

allocations required under Section 5.5.1 and Section 5.5.2 with respect to such Fiscal Year or other relevant period, such Partner has an Adjusted Capital Account Deficit, items of Partnership income and gain (consisting of a pro rata portion of each item of Partnership income, including gross income and gain for the Fiscal Year or other relevant period) shall be specifically allocated to such Partner in an amount and manner sufficient to eliminate, to the extent required by the Regulations, its Adjusted Capital Account Deficit created by such adjustments, allocations or distributions as quickly as possible. This Section 5.5.3 is intended to constitute a "qualified income offset" under Regulations Section 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

5.5.4    Gross Income Allocation. In the event that any Partner has an Adjusted Capital Account Deficit at the end of any Fiscal Year or other relevant period (after taking into account allocations to be made under the preceding provisions of this Article V with respect to such Fiscal Year or other relevant period), each such Partner shall be specially allocated items of Partnership income and gain (consisting of a pro rata portion of each item of Partnership income, including gross income and gain for the Fiscal Year or other relevant period) in an amount and manner sufficient to eliminate, to the extent required by the Regulations, its Adjusted Capital Account Deficit; *provided, however,* that this Section 5.5.4 shall not apply to LTIP Units to the extent that the effect of applying this Section 5.5.4 would be to cause a holder of LTIP Units to receive distributions in excess of the amount of distributions that would have been made to such holder had this Section 5.5.4 not applied.

5.5.5    Nonrecourse Deductions. Nonrecourse Deductions for any Fiscal Year or other relevant period shall be allocated to the Partners in proportion to the number of Common Units owned by each of them. If the General Partner determines in its good faith discretion that the Partnership's Nonrecourse Deductions must be allocated in a different ratio to satisfy the safe harbor requirements of the Regulations promulgated under Section 704(b) of the Code, the General Partner is authorized, upon notice to the Limited Partners, to revise the prescribed ratio for such Fiscal Year or other relevant period to the numerically closest ratio which would satisfy such requirements.

5.5.6    Partner Nonrecourse Deductions. Any Partner Nonrecourse Deductions for any Fiscal Year or other relevant period shall be specially allocated to the Partner who bears the economic risk of loss with respect to the Partner Nonrecourse Debt to which such Partner Nonrecourse Deductions are attributable in accordance with Regulations Sections 1.704-2(b)(4) and 1.704-2(i).

5.5.7    Code Section 754 Adjustments. To the extent an adjustment to the adjusted tax basis of any Partnership asset pursuant to Section 734(b) or 743(b) of the Code is required, pursuant to Regulations Section 1.704-l(b)(2)(iv)(m), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis), and such item of gain or loss shall be specially allocated to the Partners in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to such Section of the Regulations.

5.5.8    Curative Allocations. The allocations set forth in this Section 5.5 (the "Regulatory Allocations") are intended to comply with certain requirements of Regulations Sections 1.704-1(b) and 1.704-2. Notwithstanding any other provision of this Article V (other than the Regulatory Allocations), the General Partner is authorized to make offsetting special allocations of Partnership income, gain, loss or deduction in whatever manner it deems appropriate so that, after such offsetting allocations are made, each Partner's Capital Account balance is, to the extent possible, equal to the Capital Account balance such Partner would have had if the Regulatory Allocations were not part of this Agreement and all Partnership items were allocated pursuant to Section 5.1.

5.5.9    Special Allocations With Respect to Class A Units. Notwithstanding the provisions of Section 5.1 above, no allocations of Net Income or Net Loss shall be made with respect to Class A Units, except as provided in the following sentence. Net Income (including Unrealized Gain resulting from the adjustments described in Section 5.2.4(e)), which is generated through the portion of the Fiscal Year ending on the date that the conversion of Class A Units into Common Units occurs pursuant to Section 3.9 (and, to the extent necessary to achieve the result described in this sentence, Net Income generated thereafter), shall be allocated among the Partners (other than holders of LTIP Units in respect of their LTIP Units) in the minimum amount necessary so as to cause each Partner's Capital Account balance (excluding the portion thereof attributable to LTIP Units) to equal the product of the Common Unit Economic Balance and the number of Common Units owned by each such Partner (including those received in connection with a conversion pursuant to Section 3.9)

5.5.10    Special Allocations Regarding LTIP Units. Notwithstanding the provisions of Section 5.1 above, but after applying the provisions of Section 5.5.9 above, (a) Liquidating Gains shall first be allocated to the holders of LTIP Units until the portion of the Economic Capital Account Balance of each such holder of LTIP Units that is attributable to all the LTIP Units owned by such holder of LTIP Units is equal to (i) the Common Unit Economic Balance, multiplied by (ii) the number of LTIP Units owned by such holder of LTIP Units (the "Target Balance") and (b) prior to the time the result in (a) is achieved, notwithstanding Section 5.1, a holder of LTIP Units shall be specially allocated an amount of Net Income in respect of each LTIP Unit for any Fiscal Year or other relevant period in an amount equal to the amount of cash and property (other than Units) distributed in respect of such LTIP Unit for such Fiscal Year or other period. For purposes of this Agreement:

(a)    "Book-Up Target" for a LTIP Unit means (i) initially, the Common Unit Economic Balance as determined on the date such LTIP Unit was granted, plus or minus, as the case may be, (ii) the remaining amount, if any, required to be allocated to such LTIP Unit for the Economic Capital Account Balance of the holder of such LTIP Unit, to the extent attributable to such LTIP Unit, to be equal to the Common Unit Economic Balance.

(b)    "Common Unit Economic Balance" means (i) the Capital Account balance of the General Partner, plus the amount of the General Partner's share of any Partner Nonrecourse Debt Minimum Gain or Partnership Minimum Gain, in either case to the extent attributable to the General Partner's ownership of Common Units and computed on a hypothetical basis after taking into account all allocations, distributions and reimbursement of expenses pursuant to Section 6.4 through the date on which any allocation is made under Section

5.5.9 or Section 5.5.10, as the case may be, divided by (ii) the number of the General Partner's Common Units.

(c)      "Economic Capital Account Balance" of a holder of LTIP Units means an amount equal to the portion of such holder's Capital Account balance which is attributable to all LTIP Units owned by such holder, plus the amount of his or her allocable share of any Partner Nonrecourse Debt Minimum Gain or Partnership Minimum Gain attributable to such LTIP Units.

(d)      "Liquidating Gains" means gains realized in connection with the sale or other disposition of all or substantially all of the assets of the Partnership, including but not limited to Unrealized Gain treated as recognized as the result of an adjustment to the Carrying Value of Partnership assets pursuant to Section 5.2.4.

(e)      "Liquidating Losses" means losses realized in connection with the sale or other disposition of all or substantially all of the assets of the Partnership, including but not limited to Unrealized Loss treated as recognized as the result of an adjustment to the Carrying Value of Partnership assets pursuant to Section 5.2.4.

Liquidating Gain allocated to a holder of LTIP Units under this Section 5.5.10 will be attributed to specific LTIP Units of such holder for purposes of determining (i) allocations under this Section 5.5.10, (ii) the effect of the forfeiture or conversion of specific LTIP Units on such holder's Capital Account and (iii) the ability of such holder of LTIP Units or the Partnership to convert specific LTIP Units into Common Units pursuant to Section 3.10.5(b) and Section 3.10.5(c). Such Liquidating Gain allocated to such holder of LTIP Units will generally be attributed in the following order: (i) first, to Vested LTIP Units held for more than two years, (ii) second, to Vested LTIP Units held for two years or less, (iii) third, to Unvested LTIP Units that have remaining vesting conditions that only require continued employment or service to the General Partner, the Partnership or an Affiliate of either for a certain period of time (with such Liquidating Gains being attributed in order of vesting from soonest vesting to latest vesting), and (iv) fourth, to other Unvested LTIP Units (with such Liquidating Gains being attributed in order of issuance from earliest issued to latest issued). Within each category, Liquidating Gain will be allocated seriatim (i.e., entirely to the first unit in a set, then entirely to the next unit in the set, and so on, until a full allocation is made to the last unit in the set) in the order of smallest Book-Up Target to largest Book-Up Target. After giving effect to the special allocations set forth above, if, due to distributions with respect to Common Units in which a LTIP Unit does not participate, forfeitures or otherwise, the Economic Capital Account Balance of any present or former holder of LTIP Units attributable to such holder's LTIP Units, exceeds the Target Balance, then Liquidating Losses shall be allocated to such holder of LTIP Units, or Liquidating Gains shall be allocated to the other Partners, to reduce or eliminate the disparity; provided, however, that if Liquidating Losses or Liquidating Gains are insufficient to completely eliminate all such disparities, such losses or gains shall be allocated among Partners in a manner reasonably determined by the General Partner. In the event that Liquidating Gains or Liquidating Losses are allocated under this Section 5.5.10, Net Income and Net Losses allocable under Section 5.1 shall be recomputed without regard to the Liquidating Gains or Liquidating Losses so allocated. The parties agree that the intent of this Section 5.5.10 is (i) to make allocations of Liquidating Gains and Liquidating Loss so as to cause the Capital Account balance associated

with each LTIP Unit to be economically equivalent to the Capital Account balance associated with the General Partner's Common Units (on a per-Common Unit/LTIP Unit basis) and (ii) to allow conversion of a Vested LTIP Unit into a Common Unit when sufficient Liquidating Gains have been allocated to such LTIP Unit pursuant to Section 5.5.10 so that either its initial Book-Up Target has been reduced to zero or the parity described in the definition of Target Balance has been achieved.

Section 5.6    Allocations for Tax Purposes. Except as otherwise provided in this Section 5.6, for U.S. federal and applicable state income tax purposes, each item of income, gain, loss and deduction shall be allocated among the Partners in the same manner as its correlative item of "book" income, gain, loss or deduction is allocated pursuant to Section 5.1 and Section 5.5.

5.6.1    In an attempt to eliminate any Book-Tax Disparities attributable to a Contributed Property or Adjusted Property, items of income, gain, loss, and deduction shall be allocated for U.S. federal income tax purposes among the Partners as follows:

(a)    In the case of a Contributed Property, such items attributable thereto shall be allocated among the Partners consistent with the principles of Section 704(c) of the Code to take into account the variation between the 704(c) Value of such property and its adjusted basis at the time of contribution or deemed contribution (taking into account Section 5.6.2); and (ii) any item of Residual Gain or Residual Loss attributable to a Contributed Property shall be allocated among the Partners in the same manner as its correlative item of "book" gain or loss is allocated pursuant to Section 5.1 and Section 5.5.

(b)    (1) In the case of an Adjusted Property, such items shall

(i)    first, be allocated among the Partners in a manner consistent with the principles of Section 704(c) of the Code to take into account the Unrealized Gain or Unrealized Loss attributable to such property and the allocations thereof pursuant to Section 5.1;

(ii)    second, in the event such property was originally a Contributed Property, be allocated among the Partners in a manner consistent with Section 5.6.1(a); and

(2)    any item of Residual Gain or Residual Loss attributable to an Adjusted Property shall be allocated among the Partners in the same manner its correlative item of "book" gain or loss is allocated pursuant to Section 5.1 and Section 5.5.

(c)    all other items of income, gain, loss and deduction shall be allocated among the Partners the same manner as their correlative item of "book" gain or loss is allocated pursuant to Section 5.1 and Section 5.5.

5.6.2    With respect to any Contributed Property or Adjusted Property, the General Partner has the authority to elect the allocation method to be used by the Partnership under Section 704(c) of the Code and Treasury Regulations Section 1.704-3, and such election shall be binding on all Partners; provided that, to the extent that the General Partner has (on

behalf of the Partnership) agreed to use a particular method with respect to a Contributed Property, the General Partner shall be bound by such agreement pursuant to the terms thereof.

## ARTICLE VI

## MANAGEMENT AND OPERATIONS OF BUSINESS

Section 6.1    Management.

6.1.1    Powers of General Partner. Except as otherwise provided in this Agreement, all management powers over the business and affairs of the Partnership are and shall be exclusively vested in the General Partner, and no Limited Partner shall have any right to participate in or exercise control or management power over the business and affairs of the Partnership. The General Partner may not be removed by the Limited Partners with or without cause. In addition to the powers now or hereafter granted a general partner of a limited partnership under Applicable Law or which are granted to the General Partner under any other provision of this Agreement, the General Partner, subject to Section 6.12 and any specific requirements set forth in this Agreement, shall have full power and authority to do all things deemed necessary or desirable by it to conduct the business of the Partnership, to exercise all powers set forth in Section 2.6 and to effectuate the purposes set forth in Section 2.5, including the following:

(1)    engaging in such investment activities as the General Partner may determine;

(2)    the making of any expenditures, the lending or borrowing of money (including making prepayments on loans and borrowing money to permit the Partnership to make distributions to its Partners in such amounts as are required under Section 4.1.1 or will permit the General Partner (so long as the General Partner qualifies as a REIT) to avoid the payment of any U.S. federal income tax (including, for this purpose, any excise tax pursuant to Section 4981 of the Code) and to make distributions to its Shareholders sufficient to permit the General Partner to maintain its REIT status), the assumption or guarantee of, or other contracting for, indebtedness and other liabilities, the issuance of evidences of indebtedness (including the securing of same by mortgage, deed of trust or other lien or encumbrance on the Partnership's assets) and the incurring of any obligations the General Partner deems necessary for the conduct of the activities of the Partnership;

(3)    the making of tax, regulatory and other filings, or rendering of periodic or other reports to governmental or other agencies having jurisdiction over the business or assets of the Partnership;

(4)    the negotiation, execution, and performance of any contracts, conveyances or other instruments that the General Partner considers useful or necessary to the conduct of the Partnership's operations or the exercise of the General Partner's powers under this Agreement, including contracting with

contractors, developers, consultants, accountants, legal counsel, other professional advisors and other agents and the payment of their expenses and compensation out of the Partnership's assets;

(5)    the mortgage, pledge, encumbrance or hypothecation of any assets of the Partnership, and the use of the assets of the Partnership (including cash on hand) for any purpose consistent with the terms of this Agreement and on any terms it sees fit, including the financing of the conduct or the operations of the General Partner or the Partnership, the lending of funds to other Persons (including any Subsidiaries of the Partnership) and the repayment of obligations of the Partnership, any of its Subsidiaries and any other Person in which it has an equity investment;

(6)    the distribution of Partnership cash or other Partnership assets in accordance with this Agreement;

(7)    the holding, managing, investing and reinvesting of cash and other assets of the Partnership;

(8)    the collection and receipt of revenues and income of the Partnership;

(9)    the selection, designation of powers, authority and duties and the dismissal of officers of the Partnership (including officers having titles such as "president," "vice president," "secretary" and "treasurer") and agents, outside attorneys, accountants, consultants and contractors of the Partnership;

(10)    the maintenance of such insurance for the benefit of the Partnership and the Partners as it deems necessary or appropriate;

(11)    the formation of, or acquisition of an interest (including non-voting interests in entities controlled by Affiliates of the Partnership or third parties) in, and the contribution of property to, any further limited or general partnerships, joint ventures, limited liability companies or other Entities or the establishment of other relationships that the General Partner deems desirable (including the acquisition of interests in, and the contributions of funds or property to, or making of loans to, Subsidiaries of the Partnership and any other Person in which the Partnership has an equity investment from time to time, or the incurrence of indebtedness on behalf of such Persons or the guarantee of the obligations of such Persons); provided that, as long as the General Partner has determined to qualify, or to continue to qualify, as a REIT, the Partnership may not engage in any such formation, acquisition, or contribution that would cause the General Partner to fail to qualify as a REIT;

(12)    the control of any matters affecting the rights and obligations of the Partnership, including the settlement, compromise, submission to arbitration or any other form of dispute resolution or abandonment of any claim, cause of action, liability, Debt or damages due or owing to or from the Partnership, the

commencement or defense of suits, legal proceedings, administrative proceedings, arbitrations or other forms of dispute resolution, the representation of the Partnership in all suits or legal proceedings, administrative proceedings, arbitrations or other forms of dispute resolution, the incurring of legal expense and the indemnification of any Person against liabilities and contingencies to the extent permitted by law;

(13)    the determination of the fair market value of any Partnership property distributed in kind, using such reasonable method of valuation as the General Partner may adopt in accordance with this Agreement;

(14)    the exercise, directly or indirectly, through any attorney-in-fact acting under a general or limited power of attorney, of any right, including the right to vote, appurtenant to any assets or investment held by the Partnership;

(15)    the exercise of any of the powers of the General Partner enumerated in this Agreement on behalf of or in connection with any Subsidiary of the Partnership or any other Person in which the Partnership has a direct or indirect interest, individually or jointly with any such Subsidiary or other Person;

(16)    the exercise of any of the powers of the General Partner enumerated in this Agreement on behalf of any Person in which the Partnership does not have any interest pursuant to contractual or other arrangements with such Person;

(17)    the making, executing and delivering of any and all deeds, leases, notes, deeds to secure Debt, mortgages, deeds of trust, security agreements, conveyances, contracts, guarantees, warranties, indemnities, waivers, releases or other legal instruments or agreements in writing necessary or appropriate in the judgment of the General Partner for the accomplishment of any of the powers of the General Partner enumerated in this Agreement;

(18)    any action the General Partner determines is necessary or desirable to ensure that the assets of the Partnership are not deemed to be Plan Assets;

(19)    the distribution of cash to acquire Partnership Units held by a Limited Partner in connection with a Limited Partner's exercise of its Redemption Right under Section 7.6; and

(20)    the maintenance of the Partner Registry to reflect accurately at all times the Capital Contributions and Percentage Interests of the Partners as the same are adjusted from time to time to the extent necessary to reflect redemptions, Capital Contributions, the issuance of Partnership Units, the admission of any Additional Limited Partner or any Substituted Limited Partner or otherwise.

Notwithstanding the foregoing, the General Partner shall not (and shall not permit any agent of the General Partner or the Partnership to) take, make or give any action, decision, determination, direction, appointment, approval, consent or the like by or with respect to the Partnership, its

business or properties or the management of the business and affairs of the Partnership that, under this Agreement, requires the consent of any Limited Partner or any specified group or percentage of Limited Partners or class of Limited Partners, unless such consent has been given or obtained.

6.1.2    <u>Authorized Persons</u>.

(a)    Subject to the terms of the Company Charter and the Company By-Laws and any restrictions on the powers of the officers of the General Partner contained therein, each officer of the General Partner may act for and in the name of the General Partner under this Agreement. In dealing with the General Partner acting for or on behalf of the Partnership, no Person shall be required to inquire into, and Persons dealing with the Partnership are entitled to rely conclusively on, the right, power, and authority of the General Partner to bind the Partnership.

(b)    Subject to the terms of the Company Charter and the Company By-Laws and any restrictions on the powers of the officers of the General Partner contained therein, in the absence of any specific corporate action on the part of the General Partner to the contrary, the taking of any action or the execution of any document or writing by an officer of the General Partner, in the name and on behalf of the General Partner, in its capacity as the general partner of the Partnership, shall conclusively evidence (i) the approval thereof by the General Partner, in its capacity as the general partner of the Partnership, (ii) the General Partner's determination that such action, document, or writing is necessary, advisable, appropriate, desirable, or prudent to conduct the business and affairs of the Partnership, exercise the powers of the General Partner under this Agreement and the LP Act, or effect the purposes of the Partnership, or any other determination by the General Partner required by this Agreement in connection with the taking of such action or the execution of such document or writing, and (iii) the authority of such officer with respect thereto.

6.1.3    <u>No Approval by Limited Partners</u>.

(a)    Except as provided in <u>Section 6.12</u> or as otherwise specifically provided in this Agreement, and subject to the preferences of any Partnership Interest set forth in a Partnership Unit Designation, the General Partner is authorized to (i) execute, deliver, and perform the above-mentioned agreements and transactions on behalf of the Partnership and (ii) execute and deliver any affidavit, agreement, certificate, consent, instrument, notice, power of attorney, waiver, or other writing or document in the name and on behalf of the Partnership and to otherwise exercise any power of the General Partner under this Agreement and the LP Act on behalf of the Partnership, in each case without any further act, approval, or vote of the Limited Partners or any other Persons, to the full extent permitted under the LP Act or other Applicable Law.

(b)    The execution, delivery or performance by the General Partner or the Partnership of any agreement authorized or permitted under this Agreement shall not constitute a breach by the General Partner of any duty that the General Partner may owe the Partnership or the Limited Partners or any other Persons under this Agreement or of any duty stated or implied by law or equity.

6.1.4    <u>Insurance</u>. At all times from and after the Effective Date, the General Partner may cause the Partnership to obtain and maintain (a) casualty, liability, and other insurance on the properties of the Partnership, (b) liability insurance for the Covered Persons hereunder, and (c) such other insurance as the General Partner determines to be advisable.

6.1.5    <u>Working Capital and Other Reserves</u>. At all times from and after the Effective Date, the General Partner may cause the Partnership to establish and maintain working capital reserves in such amounts as the General Partner deems appropriate and reasonable from time to time, including upon liquidation of the Partnership under <u>Article XII</u>.

6.1.6    <u>Obligations to Limited Partners</u>. In exercising its authority under this Agreement, the General Partner is acting on behalf of the Partners and the Shareholders collectively and is under no obligation to consider the separate interests of the Limited Partners (except as otherwise set forth in this Agreement) in deciding whether to cause the Partnership to take (or decline to take) any action. The General Partner and the Partnership shall not have liability to a Limited Partner for monetary damages or otherwise for losses sustained, liabilities incurred or benefits not derived by such Limited Partner in connection with such decisions, provided that the General Partner has acted in good faith and pursuant to its authority under, and in accordance with the terms of, this Agreement.

Section 6.2    <u>Certificate of Limited Partnership</u>. To the extent that such action is determined by the General Partner to be reasonable and necessary or appropriate, the General Partner shall file amendments to and restatements of the Certificate and do all the things to maintain the Partnership as a limited partnership (or a partnership in which the limited partners have limited liability) under the laws of the State of Delaware and each other state, the District of Columbia or other jurisdiction in which the Partnership may elect to do business or own property. Subject to <u>Section 7.5.1(c)</u>, the General Partner shall not be required, before or after filing, to deliver or mail a copy of the Certificate or any amendment thereto to any Limited Partner. The General Partner shall use all reasonable efforts to cause to be filed such other certificates or documents as may be reasonable and necessary or appropriate for the formation, continuation, qualification and operation of a limited partnership (or a partnership in which the limited partners have limited liability) in the State of Delaware and any other state, the District of Columbia or other jurisdiction in which the Partnership may elect to do business or own property.

Section 6.3    <u>Title to Partnership Assets</u>. Title to Partnership assets, whether real, personal or mixed and whether tangible or intangible, shall be deemed to be owned by the Partnership as an Entity, and no Partners, individually or collectively, shall have any ownership interest in such Partnership assets or any portion thereof. Title to any or all of the Partnership assets may be held in the name of the Partnership, the General Partner or one or more nominees, as the General Partner may determine, including Persons Controlled by the General Partner. The General Partner hereby declares and warrants that any Partnership assets for which legal title is held in the name of the General Partner or any nominee of or Person Controlled by the General Partner shall be held for the use and benefit of the Partnership in accordance with the provisions of this Agreement. All Partnership assets shall be recorded as the property of the Partnership in its books and records, irrespective of the name in which legal title to such Partnership assets is held.

Section 6.4    Payment of Expenses.

6.4.1    No Compensation. Except as provided in this Section 6.4 and elsewhere in this Agreement (including the provisions of Articles IV and V regarding distributions, payments, and allocations to which it may be entitled), the General Partner shall not be compensated for its services as the general partner of the Partnership.

6.4.2    Responsibility for Partnership, General Partner Expenses.

(a)    The Partnership is responsible for and shall pay all expenses relating to the business, operations and activities of the Partnership and the General Partner, including, but not limited to (i) fees, costs and expenses of third parties related to the business, operations and activities of the Partnership and the General Partner (such as fees of any legal, financial, accounting, consulting or other advisors), (ii) principal of and interest on any other obligations in respect of any Indebtedness of the Partnership or the General Partner, (iii) insurance, indemnity or litigation payments or expenses, (iv) expenses associated with the obligations of the Partnership and the General Partner to deliver financial statements and other reports to Investors, and (v) any amounts payable to the Manager under the Management Agreement that are not payable by OAC.

(b)    The Partnership shall reimburse the Investors and the Hunt Group for Organizational Expenses incurred by them. Subject to the proviso in clause (i) of this Section 6.4.2(b), the Partnership shall reimburse the General Partner on a monthly basis, or such other basis as the General Partner may determine in its sole and absolute discretion, for all expenses the General Partner incurs relating to the ownership and operation of, or for the benefit of, the Partnership (including expenses related to the operations of the General Partner and to the management and administration of any Subsidiaries or the Partnership or Affiliates of the Partnership, such as auditing expenses and filing fees); provided that the amount of any such reimbursement shall be reduced by (i) any interest earned by the General Partner with respect to bank accounts or other instruments or accounts held by it on behalf of the Partnership as permitted under clause (ii) of Section 6.5.1 (which interest is considered to belong to the Partnership and shall be paid over to the Partnership to the extent not applied to reimburse the General Partner for expenses hereunder); and (ii) any amount derived by the General Partner from any investments permitted under Section 6.5.1. The General Partner shall determine in good faith the amount of expenses incurred by it related to the ownership and operation of, or for the benefit of, the Partnership. If certain expenses are incurred for the benefit of the Partnership and other Entities (including the General Partner), such expenses will be allocated to the Partnership and such other Entities in such a manner as the General Partner in its sole and absolute discretion deems fair and reasonable. Such reimbursements shall be in addition to any reimbursement pursuant to Section 9.3.3 and as a result of indemnification pursuant to Section 6.7. All payments and reimbursements hereunder shall be characterized for U.S. federal income tax purposes as expenses of the Partnership incurred on its behalf, and not as expenses of the General Partner or such other Entities.

6.4.3    Partnership Interest Issuance Expenses. The Partnership shall reimburse the General Partner for all expenses the General Partner incurs relating to any issuance of Partnership Interests, Shares, Debt of the Partnership or the General Partner or rights, options,

warrants or convertible or exchangeable securities pursuant to Article III (including all costs, expenses, damages and other payments resulting from or arising in connection with litigation related to any of the foregoing), all of which expenses are considered by the Partners to constitute expenses of, and for the benefit of, the Partnership.

6.4.4    Reimbursement not a Distribution. If and to the extent any reimbursement made pursuant to this Section 6.4 is determined for U.S. federal income tax purposes not to constitute a payment of expenses of the Partnership, the amount so determined shall constitute a guaranteed payment with respect to capital within the meaning of Section 707(c) of the Code, shall be treated consistently therewith by the Partnership and all Partners and shall not be treated as a distribution for purposes of computing the Partners' Capital Accounts.

6.4.5    Funding for Certain Capital Transactions. In the event that the General Partner undertakes to acquire (whether by merger, consolidation, purchase, or otherwise) the assets or Equity Interests of another Person and such acquisition will require the payment of cash by the General Partner (whether to such Person or to any other selling party or parties in such transaction or to one or more creditors, if any, of such Person or such selling party or parties), (i) the Partnership shall advance to the General Partner the cash required to consummate such acquisition if, and to the extent that, such cash is not to be obtained by the General Partner through an issuance of Shares or pursuant to a transaction described in Section 3.3.4(b) or pursuant to a transaction described in Section 6.5.4, (ii) the General Partner shall immediately, upon consummation of such acquisition, transfer to the Partnership (or cause to be transferred to the Partnership), in full and complete satisfaction of such advance and as required by Section 3.5, the assets or Equity Interests of such Person acquired by the General Partner in such acquisition, and (iii) pursuant to and in accordance with Section 3.3.4(b) and Section 6.5.4 the Partnership shall issue to the General Partner Partnership Interests and/or rights, options, warrants or convertible or exchangeable securities of the Partnership having designations, preferences, and other rights that are substantially the same as those of any additional Shares, other equity securities, New Securities and/or debt securities, as the case may be, issued by the General Partner in connection with such acquisition (whether issued directly to participants in the acquisition transaction or to third parties in order to obtain cash to complete the acquisition). In addition to, and without limiting the foregoing, in the event that the General Partner engages in a transaction in which (x) the General Partner (or a wholly owned direct or indirect Subsidiary of the General Partner) merges with another Entity (referred to as the "Parent Entity") that is organized in the "UPREIT format" (i.e., where the Parent Entity holds all or substantially all of its assets and conducts all or substantially all of its operations through a partnership, limited liability company or other Entity (referred to as an "Operating Entity")) and the General Partner survives such merger, (y) such Operating Entity merges with or is otherwise acquired by the Partnership in exchange in whole or in part for Partnership Interests, and (z) the General Partner is required or elects to pay part of the consideration in connection with such merger involving the Parent Entity in the form of cash and part of the consideration in the form of Shares, the Partnership shall distribute to the General Partner with respect to its existing Partnership Interest an amount of cash sufficient to complete such transaction and the General Partner shall cause the Partnership to cancel a number of Partnership Units (rounded to the nearest whole number) held by the General Partner equal to the product attained by multiplying the number of additional Shares of the General

Partner that the General Partner would have issued to the Parent Entity or the owners of the Parent Entity in such transaction if the entire consideration therefor were to have been paid in Shares by a fraction, the numerator of which is one and the denominator of which is the Conversion Factor.

Section 6.5    Outside Activities of the General Partner.

6.5.1    General. The General Partner shall not, directly or indirectly, enter into or conduct any business other than in connection with the ownership, acquisition and disposition of Partnership Interests as General Partner or Limited Partner and the management of the business of the Partnership and such activities as are incidental thereto, except that the General Partner may acquire and own publicly traded securities of one or more REITs in such amount as the General Partner determines to be appropriate for purposes of the General Partner qualifying as a REIT under the REIT Rules. The assets of the General Partner shall be limited to Partnership Interests and permitted Debt obligations of the Partnership (as contemplated by Section 6.5.4), so that Shares and Partnership Units are completely fungible except as otherwise specifically provided herein; provided that (i) the General Partner is permitted to hold publicly traded securities of one or more REITs as provided in the preceding sentence, and (ii) the General Partner is permitted to hold such bank accounts or similar instruments or accounts in its name as it deems necessary to carry out its responsibilities and purposes as contemplated under this Agreement and its organizational documents.

6.5.2    Repurchase of Shares. If the General Partner exercises its rights under the Company Charter to purchase Shares or otherwise elects to purchase from its Shareholders Shares in connection with a share repurchase or similar program or for the purpose of delivering such Shares to satisfy an obligation under any dividend reinvestment or share purchase program adopted by the General Partner, any employee share purchase plan adopted by the General Partner or any similar obligation or arrangement undertaken by the General Partner in the future, then the General Partner shall cause the Partnership to purchase from the General Partner that number of Partnership Units of the appropriate class equal to the product obtained by multiplying the number of Shares purchased by the General Partner times a fraction, the numerator of which is one and the denominator of which is the Conversion Factor, on the same terms and for the same aggregate price that the General Partner purchased such Shares.

6.5.3    Forfeiture of Shares. If the Partnership or the General Partner acquires Shares as a result of the forfeiture of such Shares under a restricted or similar share plan, then the General Partner shall cause the Partnership to cancel that number of Partnership Units equal to the product of the number of Shares so acquired multiplied by a fraction, the numerator of which is one and the denominator is the Conversion Factor, and, if the Partnership acquired such Shares, it shall transfer such Shares to the General Partner for cancellation.

6.5.4    Issuances of Shares. After the Effective Date, the General Partner shall not grant, award, or issue any additional Shares (other than Shares issued pursuant to Section 7.6, pursuant to a dividend or distribution (including any share split) of Shares to all of its Shareholders, or in connection with any acquisition permitted by Section 6.5.1 of up to a one percent (1%) interest in any partnership or limited liability company at least ninety-nine percent

(99%) of the equity of which is owned, directly or indirectly, by the Partnership), other equity securities of the General Partner, New Securities or debt securities unless (i) the General Partner shall cause, pursuant to <u>Section 3.3.1</u>, the Partnership to issue to the General Partner Partnership Interests or rights, options, warrants or convertible or exchangeable securities of the Partnership having designations, preferences and other rights, all such that the economic interests are substantially the same as those of such additional Shares, other equity securities, New Securities or debt securities, as the case may be, and (ii) the General Partner transfers to the Partnership, as an additional Capital Contribution, the proceeds from the grant, award, or issuance of such additional Shares, other equity securities, New Securities or debt securities, as the case may be, or from the exercise of rights contained in such additional Shares, other equity securities, New Securities or debt securities, as the case may be. Without limiting the foregoing, the General Partner is expressly authorized to issue additional Shares, other equity securities, New Securities or debt securities, as the case may be, for less than fair market value, and the General Partner is expressly authorized, pursuant to <u>Section 3.3.1</u>, to cause the Partnership to issue to the General Partner corresponding Partnership Interests, as long as (a) the General Partner concludes in good faith that such issuance is in the interests of the General Partner and the Partnership (for example, and not by way of limitation, the issuance of Shares and corresponding Partnership Units pursuant to a share purchase plan providing for purchases of Shares, either by employees or Shareholders, at a discount from fair market value or pursuant to employee share options that have an exercise price that is less than the fair market value of the Shares, either at the time of issuance or at the time of exercise) and (b) the General Partner transfers all proceeds from any such issuance or exercise to the Partnership as an additional Capital Contribution.

Section 6.6    Transactions with Partners and Affiliates.

6.6.1    <u>Transactions with Certain Affiliates</u>. Except as expressly permitted by this Agreement or as approved by the Board of Directors in accordance with the Company Charter and the Company By-Laws, the Partnership shall not, directly or indirectly, sell, transfer or convey any property to, or purchase any property from, or borrow funds from, or lend funds to, any Partner or any Affiliate of the Partnership that is not also a Subsidiary of the Partnership.

6.6.2    <u>Permitted Transactions</u>.

(a)    The General Partner is expressly authorized to enter into, in the name and on behalf of the Partnership, a right of first opportunity arrangement and other conflict avoidance agreements with any Partner or any of any Affiliate of any Partner on such terms as the General Partner believes are advisable.

(b)    The Partnership may lend or contribute funds or other assets to its Subsidiaries or other Persons in which it has an equity investment, and such Persons may borrow funds from the Partnership, on terms and conditions established in the sole and absolute discretion of the General Partner. The foregoing authority shall not create any right or benefit in favor of any Subsidiary or any other Person.

(c)    The Partnership may transfer assets to joint ventures, limited liability companies, partnerships, corporations, business trusts or other business entities in which it is or thereby becomes a participant upon such terms and subject to such conditions consistent with this Agreement and Applicable Law as the General Partner believes to be advisable.

Section 6.7    Limitation on Liability and Indemnification.

6.7.1    Limitation of Liability. To the maximum extent permitted under the LP Act in effect from time to time, no Covered Person shall be liable to the Partnership or to any Partner for (i) any act or omission performed or failed to be performed by it, or for any losses, claims, costs, damages or liabilities arising from any such act or omission if such Covered Person acted in good faith and in a manner such Covered Person reasonably believed to be in or not opposed to the best interests of the Partnership, or (ii) any tax liability imposed on the Partnership (subject to Section 4.2 and Section 9.5), provided that such tax liability did not result from such Covered Person's gross negligence, willful misconduct or fraud, or (iii) any losses due to the negligence (gross or ordinary), dishonesty or bad faith of any agents of the Partnership that are not Covered Persons or Affiliates of any Covered Person, as long as such Persons are selected with reasonable care. Without limiting the generality of the foregoing, each such Person shall, in the performance of his, her or its duties, be fully protected in relying in good faith upon the records of the General Partner or the Partnership and upon information, opinions, reports or statements presented to such Person by the General Partner or by any other Person as to matters such Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the General Partner or the Partnership. Any repeal or modification of this Section 6.7.1 shall not adversely affect any right or protection of a Person existing at the time of such repeal or modification.

6.7.2    Indemnification. To the maximum extent permitted under the LP Act in effect from time to time, the Partnership shall indemnify each Covered Person against all reasonable expenses (including attorneys' fees and disbursements), losses, claims, costs, damages or liabilities to which such Covered Person may become subject in connection with the business or affairs of the Partnership or one of its direct or indirect Subsidiaries or serving at the Partnership's or one of the Partnership's direct or indirect Subsidiary's request as a director, trustee, officer, partner, employee or agent of another foreign or domestic corporation, partnership, joint venture, trust or other enterprise or employee benefit plan if such Covered Person acted in good faith and in a manner such Covered Person reasonably believed to be in or not opposed to the best interests of the Partnership and, with respect to any criminal action or proceeding, had no reasonable cause to believe that his or her conduct was unlawful). If for any reason the foregoing indemnification is unavailable to such Covered Person, or is insufficient to hold it harmless, then the Partnership shall contribute to the amount paid or payable to the Covered Person as a result of such loss, claim, cost, damage or liability in such proportion as is appropriate to reflect not only the relative benefits received by the Partnership on the one hand and such Covered Person on the other hand but also the relative fault of the Partnership and such Covered Person in connection with the transaction, event, or matter giving rise to the applicable claim, as well as any relevant equitable considerations. The General Partner shall use reasonable efforts to cause a Covered Person to repay amounts paid by the Partnership for

indemnification of such Covered Person pursuant to this <u>Section 6.7.2</u> if and to the extent such Covered Person recovers such amounts from insurance recoveries or other sources of payment.

      6.7.3    <u>Advancement of Expenses</u>. To the fullest extent not prohibited by applicable law, reasonable costs and expenses (including attorneys' fees and disbursements and court costs) incurred or expected to be incurred by a Covered Person shall be paid or reimbursed by the Partnership in advance of the final disposition of any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative made or threatened against a Covered Person upon receipt by the Partnership of a written undertaking by or on behalf of the Covered Person to repay the amount if it shall ultimately be determined that such Covered Person is not entitled to be indemnified in respect of such costs and expenses by the Partnership as authorized by this <u>Section 6.7</u>.

      6.7.4    <u>No Limitation of Rights</u>. The indemnification provided by this <u>Section 6.7</u> shall be in addition to any other rights to which a Covered Person or any other Person may be entitled under any agreement, pursuant to any vote of the Partners, as a matter of law or otherwise, and shall continue as to a Covered Person who has ceased to serve in such capacity unless otherwise provided in a written agreement pursuant to which such Covered Person is indemnified.

      6.7.5    <u>Insurance</u>. The Partnership shall purchase and maintain insurance on behalf of the Covered Persons and such other Persons as the General Partner shall determine against any liability that may be asserted against or expenses that may be incurred by such Persons in connection with the Partnership's activities, regardless of whether the Partnership would have the power to indemnify such Person against such liability under the provisions of this Agreement. Such insurance may be obtained through an umbrella policy maintained by the Hunt Group or its Affiliates, in which event the Partnership shall pay or reimburse the Hunt Group or such Affiliates for an allocable share of the cost of such insurance, as may be reasonably approved by the General Partner in good faith.

      6.7.6    <u>No Personal Liability for Partners</u>. Notwithstanding anything in this Agreement to the contrary (including in this <u>Section 6.7</u>), any indemnification or other obligation of the Partnership relating to the matters covered in this <u>Section 6.7</u> shall be provided out of and to the extent of Partnership assets only and no Partner (unless such Partner otherwise agrees in writing or is found in a final decision by a court of competent jurisdiction to have personal liability on account thereof) shall have personal liability on account thereof or shall be required to make additional Capital Contributions (other than pursuant to an express commitment by a Partner in accordance with a Subscription Agreement or other agreement to which such Partner is party) to help satisfy such indemnity of the Partnership. In no event may a Covered Person subject any of the Partners to personal liability by reason of the indemnification provisions set forth in this Agreement.

      6.7.7    <u>Interested Transactions</u>. A Covered Person shall not be denied indemnification in whole or in part under this <u>Section 6.7</u> because the Covered Person had an interest in the transaction with respect to which the indemnification applies if the transaction was otherwise permitted by the terms of this Agreement.

6.7.8    <u>Benefit</u>. The provisions of this <u>Section 6.7</u> are for the benefit of the Covered Persons, their employees, officers, directors, trustees, heirs, successors, assigns and administrators and shall not be deemed to create any rights for the benefit of any other Persons. Any amendment, modification or repeal of this <u>Section 6.7</u>, or any other provision of this Agreement, shall be prospective only and shall not in any way affect the limitation on the Partnership's liability to any Covered Person under this <u>Section 6.7</u> as in effect immediately prior to such amendment, modification or repeal with respect to claims arising from or related to matters occurring, in whole or in part, prior to such amendment, modification or repeal, regardless of when such claims may arise or be asserted.

6.7.9    <u>Indemnification Payments Not Distributions</u>. If and to the extent any payments to the General Partner pursuant to this <u>Section 6.7</u> constitute gross income to the General Partner (as opposed to the repayment of advances made on behalf of the Partnership), such amounts shall constitute guaranteed payments within the meaning of Section 707(c) of the Code, shall be treated consistently therewith by the Partnership and all Partners, and shall not be treated as distributions for purposes of computing the Partners' Capital Accounts.

6.7.10    <u>Exception to Indemnification</u>. Notwithstanding anything to the contrary in this Agreement, the General Partner shall not be entitled to indemnification hereunder for any loss, claim, damage, liability or expense for which the General Partner is obligated to indemnify the Partnership under any other agreement between the General Partner and the Partnership.

Section 6.8    <u>Liability of the General Partner</u>.

6.8.1    <u>No Obligation to Consider Separate Interests of Limited Partners</u>. The Limited Partners expressly acknowledge that the General Partner is acting on behalf of the Partnership, that, except as expressly set forth in this Agreement, the General Partner is under no obligation to consider the separate interests of the Limited Partners (including the tax consequences to Limited Partners or Assignees) in deciding whether to cause the Partnership to take (or decline to take) any actions, and that the General Partner shall not be liable for monetary damages for losses sustained, liabilities incurred or benefits not derived by Limited Partners in connection with such decisions, provided that the General Partner has acted in good faith.

6.8.2    <u>Actions of Agents</u>. Subject to its obligations and duties as General Partner set forth in <u>Section 6.1.1</u>, the General Partner may exercise any of the powers granted to it by this Agreement and perform any of the duties imposed upon it hereunder either directly or by or through its agents. The General Partner shall not be responsible for any misconduct or negligence on the part of any such agent appointed by the General Partner in good faith.

6.8.3    <u>Effect of Amendment</u>. Notwithstanding any other provision contained herein, any amendment, modification or repeal of this <u>Section 6.8</u> or any other provision of this Agreement shall be prospective only and shall not in any way affect the limitations on the General Partner's liability to the Partnership and the Limited Partners under this <u>Section 6.8</u> as in effect immediately prior to such amendment, modification or repeal with respect to claims

arising from or relating to matters occurring, in whole or in part, prior to such amendment, modification or repeal, regardless of when such claims may arise or be asserted.

Section 6.9    Other Matters Concerning the General Partner.

6.9.1    Reliance on Documents. The General Partner may rely and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture or other paper or document believed by it in good faith to be genuine and to have been signed or presented by the proper party or parties.

6.9.2    Reliance on Advisors. The General Partner may consult with legal counsel, accountants, appraisers, management consultants, investment bankers and other consultants and advisers selected by it, and any act taken or omitted to be taken in reliance upon the opinion of such Persons as to matters which the General Partner reasonably believes to be within such Person's professional or expert competence shall be conclusively presumed to have been done or omitted in good faith and in accordance with such opinion.

6.9.3    Action Through Agents. The General Partner shall have the right, in respect of any of its powers or obligations hereunder, to act through any of its duly authorized officers and a duly appointed attorney or attorneys-in-fact. Each such attorney shall, to the extent provided by the General Partner in the power of attorney, have full power and authority to do and perform all and every act and duty which is permitted or required to be done by the General Partner hereunder.

6.9.4    Actions to Maintain REIT Status or Avoid Taxation of the General Partner. Notwithstanding any other provisions of this Agreement or the LP Act, any action of the General Partner on behalf of the Partnership or any decision of the General Partner to refrain from acting on behalf of the Partnership undertaken in the good faith belief that such action or omission is necessary or advisable in order (i) to protect the ability of the General Partner to qualify as a REIT or (ii) to allow the General Partner to avoid incurring any liability for taxes under Section 856, Section 857, Section 860E or Section 4981 of the Code, is expressly authorized under this Agreement and is deemed approved by all of the Limited Partners.

6.9.5    Regulatory Matters. (a) Each Limited Partner acknowledges that the assets of the Partnership are not intended to constitute plan assets of such Limited Partner for purposes of any applicable non-U.S., state or local law governing the investment and management of the assets of that Limited Partner, and that, as a result, none of the Partnership, the General Partner, or any of their Affiliates is intended by any Partner to be acting as a fiduciary within the meaning of any applicable non-U.S., state or local law relating to governmental plans or foreign plans with respect to such Limited Partner or the Partnership assets; provided, however, that this provision is not intended to negate the fiduciary duties imposed upon a general partner under the LP Act.

(b)    In the event that the General Partner believes (i) that the investment in the Partnership by a Limited Partner which is or is affiliated with a governmental

plan, foreign plan or other regulated Entity (other than a Benefit Plan Investor) (each, a "Regulated Investor") may result in (1) any violation of any law applicable to such Regulated Investor, (2) the treatment of the assets of the Partnership as assets of such Regulated Investor or (3) the treatment of the Partnership or the General Partner as a fiduciary under any law applicable to such Regulated Investor, and (ii) if, in the reasonable judgment of the General Partner, any of the foregoing conditions results in or may result in any adverse consequences to the Partnership, the General Partner, the Board of Directors or the officers of the General Partner (both of (i) and (ii), a "Regulatory Issue"), then the General Partner, in its sole discretion, (x) may require that such Regulated Investor provide an opinion of counsel (such opinion and counsel reasonably acceptable to the General Partner) that no Regulatory Issue exists, or (y) in the event such an opinion is not delivered within a reasonable time after being requested, may take any of the following actions in its sole discretion and considering the best interests of the Partnership: (A) in accordance with the provisions of Section 13.1 amend this Agreement to avoid any material consequences, (B) cause the Partnership to redeem such Regulated Investor's interest in the Partnership, in whole or in part in a manner consistent with the procedures of Section 6.9.5(c) and (d), (C) require such Regulated Investor to sell its interest in the Partnership, in whole or in part, to one or more other Partners at the Redemption Value, or (D) cause a dissolution of the Partnership and wind up its affairs in accordance with Article XII. The reasonable expense of obtaining an opinion described in the preceding sentence shall be shared equally by the Partnership and such Regulated Investor.

(c)     Effective upon the date specified by the General Partner in the notice sent to a Limited Partner, notifying such Limited Partner of the General Partner's determination to completely or partially redeem such Limited Partner's interest in the Partnership pursuant to Section 6.9.5(b) (the "Redemption Effective Date"), such Limited Partner (the "Redeemed Limited Partner") shall cease to be a Partner of the Partnership with respect to the withdrawn portion of its interest (the "Redeemed Interest") only and, in addition to its right to receive payment for the Redeemed Interest as provided in Section 6.9.5(d), shall continue to be entitled, with respect to its remaining interest only, if any, to the rights of a Partner under this Agreement (including the right to have any allocations made to its Capital Account (as such may be adjusted) pursuant to Article V, the right to receive distributions pursuant to Article IV and upon dissolution of the Partnership pursuant to Article XII and the right to vote on matters as provided in this Agreement).

(d)     The Redemption Value shall be paid by the Partnership to such Redeemed Limited Partner in cash by paying to such Limited Partner a "pro rata portion" of each distribution payable to the Redeemed Limited Partners until the Redemption Value has been fully paid; provided, that the General Partner shall be under no obligation to sell, finance or refinance any Partnership property or assets or to take any other action to effect such redemption which, in the judgment of the General Partner, may affect adversely the Partnership (taking into account the liquidity needs of the Partnership) or any Partner. For purposes of the preceding sentence, a Redeemed Limited Partner's "pro rata portion" of a distribution shall be an amount equal to the amount such Redeemed Limited Partner would have received in respect of the Redeemed Interest had such interest not been redeemed.

6.9.6     Unacceptable Investor. If the General Partner determines that a Partner is an Unacceptable Investor, the General Partner may cause the Partnership to withhold such

Partner's distributions and Partnership Units, remove such Partner as a Limited Partner of the Partnership upon terms deemed appropriate by the General Partner in its sole discretion and take such other actions as may be desirable or necessary to comply with Applicable Law.

Section 6.10    Reliance By Third Parties.

Notwithstanding anything to the contrary in this Agreement, any Person dealing with the Partnership shall be entitled to assume that the General Partner has full power and authority, without consent or approval of any other Partner or Person, to encumber, sell or otherwise use in any manner any and all assets of the Partnership, to enter into any contracts on behalf of the Partnership and to take any and all actions on behalf of the Partnership, and such Person shall be entitled to deal with the General Partner as if the General Partner were the Partnership's sole party in interest, both legally and beneficially. Each Limited Partner hereby waives any and all defenses or other remedies which may be available against such Person to contest, negate or disaffirm any action of the General Partner in connection with any such dealing. In no event shall any Person dealing with the General Partner or its representatives be obligated to ascertain that the terms of this Agreement have been complied with or to inquire into the necessity or expedience of any act or action of the General Partner or its representatives. Each and every certificate, document or other instrument executed on behalf of the Partnership by the General Partner or its representatives shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i) at the time of the execution and delivery of such certificate, document or instrument, this Agreement was in full force and effect, (ii) the Person executing and delivering such certificate, document or instrument was duly authorized and empowered to do so for and on behalf of the Partnership, and (iii) such certificate, document or instrument was duly executed and delivered in accordance with the terms and provisions of this Agreement and is binding upon the Partnership.

Section 6.11    Confidentiality Obligations.

6.11.1    General. Subject to the remaining provisions of this Section 6.11, each Partner agrees to keep strictly confidential, and not to make use of (other than for purposes reasonably related to its interest in the Partnership or for purposes of filing such Partner's tax returns or for other routine matters required by law) or disclose to any Person, any information or matter received from or relating to the Partnership and its affairs or any information or matter related to any assets of the Partnership or its Subsidiaries (Collectively, "Partnership Information") and acknowledges and agrees that Partnership Information is confidential proprietary business information and a trade secret. Each Partner agrees that it shall be liable to the Partnership and each other Partner for any breach of the terms of this Section 6.11 by any of such Partner's equity holders or Affiliates, or by any of the equity holders of such Partner's Affiliates, or by such Partner's, its equity holders' or any of its or their Affiliates' respective employees, directors, officers, trustees, agents, advisors or representatives.

6.11.2    Permitted Disclosures.

(a)    A Partner may disclose Partnership Information to any other Partner.

(b)　　A Partner may disclose Partnership Information to such Partner's Affiliates and such Partner's and its Affiliates' respective employees, directors, officers, trustees, agents, advisors, or representatives responsible for matters relating to the Partnership, <u>provided</u> that such Persons are subject to the same confidentiality restrictions set forth herein.

(c)　　A Partner may disclose Partnership Information to the extent that such Partner (i) is required by law or by any rule, regulation, order or directive of a regular auditor or a Governmental Authority or by legal process to disclose such information, in which event (excluding any ordinary course inspection or examination by a regular auditor or a Governmental Authority unrelated to the General Partner, the Partnership or their respective Subsidiaries or any ordinary course information filing with a Governmental Authority) such Partner shall provide the General Partner with prompt notice of such requirement so that the General Partner may seek an appropriate protective order or other appropriate remedy (as to which each Partner agrees to reasonably cooperate at the Partnership's expense) or (ii) receives the written consent of the General Partner to such disclosure.

(d)　　Subject to the immediately following sentence, a Partner may disclose any Partnership Information (x) to any Person that holds an Equity Interest in such Partner or in an Affiliate of such Partner, if in either case such Person agrees to be subject to the same confidentiality restrictions set forth in this <u>Section 6.11</u> or (y) to a prospective purchaser of all or part of such Partner's Partnership Interest or a third party in connection with the formation of an Affiliate of such Partner, but only if, for purposes of this clause (y), (1) such Partner advises the General Partner of the identity of, and consults with the General Partner in regard to, the recipient of such Partnership Information, and (2) such recipient executes a confidentiality agreement in a form reasonably approved by the General Partner. A Partner shall not disclose any Partnership Information pursuant to the preceding sentence to any such Person that is a hedge fund that has a publicly documented history of engaging in proxy contests or otherwise undertaking initiatives to encourage or further shareholder opposition to management or management-sponsored directives, unless the General Partner has approved such disclosure to such Person.

6.11.3　　<u>Open Records Requests</u>. If a Partner receives a third-party request under an applicable state open records law (or comparable law or regulation) for disclosure of any information provided by the Partnership to such Partner, such Partner will promptly notify the Partnership of such request, and prior to the disclosure by such Partner of any of the requested information, such Partner will assert all applicable exemptions available under the applicable state open records law (or comparable law or regulation) and will reasonably cooperate, at the Partnership's expense, with the Partnership if the Partnership should seek to obtain an order or other reliable assurance that confidential treatment will be accorded to all or designated portions of the requested information.

6.11.4　　<u>Disclosure of Tax Treatment</u>. Notwithstanding anything in this Agreement to the contrary, each Partner (and each employee, agent or representative of a Partner) may disclose to any and all Persons, without limitation of any kind, the U.S. federal income tax treatment and tax structure of the Partnership or any transactions undertaken by the Partnership, except to the extent maintaining confidentiality is necessary to comply with any U.S. federal, state or foreign securities laws, it being understood and agreed that, for this

purpose, (a) the name of, or any other identifying information regarding, the Partnership or any Partner (or any Affiliate thereof), or any investment or transaction entered into by the Partnership or (b) any performance or other information relating to the Partnership does not constitute such tax treatment or tax structure information.

Section 6.12    Restrictions On General Partner's Authority. The General Partner may not (i) take any action in contravention of an express prohibition or limitation of this Agreement, (ii) perform any act that would subject a Limited Partner to liability as a general partner in any jurisdiction or any other liability except as provided herein or under the LP Act, or (iii) enter into any contract, mortgage, loan or other agreement that restricts, or has the effect of prohibiting or restricting, the ability of a Limited Partner to exercise its Redemption Right, except in each case with the written Consent of (a) all Partners adversely affected or (b) such lower percentage of the Limited Partnership Interests as may be specifically provided for under a provision of this Agreement or the LP Act.

## ARTICLE VII

## RIGHTS AND OBLIGATIONS OF LIMITED PARTNERS

Section 7.1    Limitation of Liability. No Limited Partner shall have any liability under this Agreement except as expressly provided in this Agreement, including Section 9.5, or another agreement entered into by such Limited Partner relating to the Partnership (including such Limited Partner's Subscription Agreement) or under the LP Act.

Section 7.2    Management of Business. No Limited Partner or Assignee (other than the General Partner, any of its Affiliates, or any officer, director, employee, partner, agent or trustee of the General Partner, the Partnership or any of their Affiliates, in their capacity as such) shall take part in the operation, management or control (within the meaning of the LP Act) of the Partnership's business, transact any business in the Partnership's name or have the power to sign documents for or otherwise bind the Partnership. The transaction of any such business by the General Partner, any of its Affiliates or any officer, director, employee, partner, agent or trustee of the General Partner, the Partnership or any of their Affiliates, in their capacity as such, shall not affect, impair or eliminate the limitations on the liability of the Limited Partners or Assignees under this Agreement.

Section 7.3    Return of Capital. Except pursuant to the right of redemption set forth in Section 7.6, no Limited Partner shall be entitled to the withdrawal or return of its Capital Contribution, except to the extent of distributions made pursuant to this Agreement or upon termination of the Partnership as provided herein. No Limited Partner or Assignee shall have priority over any other Limited Partner or Assignee either as to the return of Capital Contributions (except as permitted by Section 3.3.1) or, except to the extent provided by Article V or as permitted by Sections 4.1.2(a), 5.1.1 and 5.1.2, or otherwise expressly provided in this Agreement, as to profits, losses, distributions or credits.

Section 7.4    Outside Activities of Limited Partners

(a)     Subject to any agreements entered into by a Limited Partner or its Affiliates with the General Partner, the Partnership or any Affiliate thereof (including any employment agreement), any Limited Partner and any Assignee, officer, director, employee, agent, trustee, Affiliate, member or shareholder of any Limited Partner shall be entitled to and may have business interests and engage in business activities in addition to those relating to the Partnership, including business interests and activities that are in direct or indirect competition with the Partnership or that are enhanced by the activities of the Partnership. Neither the Partnership nor any Partner shall have any rights by virtue of this Agreement in any business ventures of any Limited Partner or Assignee. Subject to such agreements, none of the Limited Partners nor any other Person shall have any rights by virtue of this Agreement or the partnership relationship established hereby in any business ventures of any other Person (other than the General Partner, to the extent expressly provided herein), and such Person shall have no obligation pursuant to this Agreement, subject to any agreements entered into by a Limited Partner or its Affiliates with the General Partner, the Partnership or any Affiliate thereof, to offer any interest in any such business ventures to the Partnership, any Limited Partner or any such other Person, even if such opportunity is of a character that, if presented to the Partnership, any Limited Partner or such other Person, could be taken by such Person.

(b)     Without limiting the generality of the foregoing, any Partner or any of its Affiliates may engage in the ownership, operation or leasing, directly or through Subsidiaries, of assets relating to the ownership, production, leasing, transmission, distribution or other activities in respect to electricity-related assets, and the acquisition and ownership of preferred equity, equity interests, debt interests, Debt or equity-related interests, participations, leasehold interests, or other interests, direct or indirect, in or relating to any such assets (including, for all purposes hereunder, partial interests or rights in any such assets), options, rights of refusal, rights of first offer and similar rights in Entities that are taxed as real estate investment trusts for U.S. federal income tax purposes and regardless of whether such businesses, ventures or activities are competitive with the Partnership or the General Partner. The fact that a Partner or its Affiliates (including members of the Hunt Group) may from time to time (i) encounter opportunities to develop, construct, purchase, otherwise acquire, lease, sell or otherwise dispose of any assets, businesses or ventures and may take advantage of such opportunities itself or introduce such opportunities to Entities in which it has or does not have any interest or (ii) enforce or exercise its rights in respect of any such assets, businesses or ventures, shall not subject such Partner or any such other Person to liability to the Partnership, the General Partner or any Limited Partner, any of their Subsidiaries or any other Person.

Section 7.5    Rights of Limited Partners Relating to the Partnership.

7.5.1    General. In addition to other rights provided by this Agreement or by the LP Act, and except as limited by Section 7.5.4, each Limited Partner shall have the right, for a purpose reasonably related to such Limited Partner's interest as a limited partner in the Partnership, upon written demand with a statement of the purpose of such demand and at such Limited Partner's own expense to the following:

(a)     to obtain a copy of the Partnership's U.S. federal, state and local income tax returns for each Fiscal Year;

(b)     to obtain a current list of the name and last known business, residence or mailing address of each Partner;

(c)     to obtain a copy of this Agreement and the Certificate and all amendments thereto, together with executed copies of all powers of attorney pursuant to which this Agreement, the Certificate and all amendments thereto have been executed; and

(d)     to obtain true and full information regarding the amount of cash and a description and statement of any other property or services contributed by each Partner and which each Partner has agreed to contribute in the future, and the date on which each became a Partner.

7.5.2     <u>Notice of Conversion Factor</u>. The Partnership shall notify each Limited Partner upon request of the then current Conversion Factor and any changes that have been made thereto.

7.5.3     <u>Withholding Confidential Information</u>. Notwithstanding any other provision of this <u>Section 7.5</u>, the General Partner may keep confidential from the Limited Partners, for such period of time as the General Partner determines in its sole and absolute discretion to be reasonable, any information that (i) the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner in good faith believes is not in the best interests of the Partnership or could damage the Partnership or its business or (ii) the Partnership is required by law or by agreements with unaffiliated third parties to keep confidential.

7.5.4     <u>Separate Agreements</u>. In connection with the issuance of Partnership Units to any Additional Limited Partner, the Partnership may enter into separate agreements that set forth additional rights and obligations of such Additional Limited Partner and additional terms and conditions of such Additional Limited Partner's Partnership Interest.

Section 7.6     <u>Redemption Right</u>.

7.6.1     <u>General</u>. (a) Subject to <u>Section 7.6.3</u>, and subject to such other agreements as may be entered into between the Partnership and the General Partner, on the one hand, and a Limited Partner, on the other hand, (1) at any time on and after the Effective Date with respect to Partnership Units outstanding on the Effective Date or issuable upon conversion or exchange of convertible or exchangeable securities outstanding on the Effective Date, and (2) at any time on or after the first anniversary date of the issuance of a Partnership Unit to a Limited Partner after the Effective Date (which one-year period shall commence, if applicable, upon the issuance by the Partnership of any other security of the Partnership which is convertible into a Partnership Unit), or on or after such date prior to the expiration of such one-year period as the General Partner, in its sole and absolute discretion, designates with respect to any or all Partnership Units then outstanding, the holder of a Partnership Unit (if other than the General Partner or any Subsidiary of the General Partner) shall have the right (the "<u>Redemption Right</u>") to require the Partnership to redeem such Partnership Unit, with such redemption to occur on the Specified Redemption Date and at a redemption price equal to and (subject to <u>Section 7.6.2</u>) in the form of the Cash Amount to be paid by the Partnership; <u>provided,</u>

however, that (i) the foregoing Redemption Right shall not apply to any Class A Unit unless such Class A Unit is first converted to a Common Unit, and (ii) the Partnership Unit Designation establishing any class of series of Partnership Unit may restrict, modify, or eliminate the Redemption Right as to that class or series of Partnership Units as set forth in such Partnership Unit Designation. Any such Redemption Right shall be exercised pursuant to a Notice of Redemption delivered to the General Partner by the Limited Partner who is exercising the Redemption Right (the "Redeeming Partner"). A Limited Partner may exercise the Redemption Right from time to time, without limitation as to frequency, with respect to part or all of the Partnership Units that it owns, as selected by the Limited Partner, provided that a Limited Partner may not exercise the Redemption Right for less than one thousand (1,000) Partnership Units, unless such Redeeming Partner then holds less than one thousand (1,000) Partnership Units, in which event such Redeeming Partner must exercise the Redemption Right for all Partnership Units held by such Redeeming Partner.

(b)     The Redeeming Partner shall have no right with respect to any Partnership Units so redeemed to receive any distributions paid after the Specified Redemption Date with respect to such Partnership Units.

(c)     The Assignee of any Limited Partner may exercise the rights of such Limited Partner pursuant to this Section 7.6, and such Limited Partner shall be deemed to have assigned such rights to such Assignee and shall be bound by the exercise of such rights by such Limited Partner's Assignee. In connection with any exercise of such rights by such Assignee on behalf of such Limited Partner, the Cash Amount shall be paid by the Partnership directly to such Assignee and not to such Limited Partner.

7.6.2    General Partner Assumption of Right. (a) If a Limited Partner has delivered a Notice of Redemption, the General Partner may, in its sole and absolute discretion (subject to the limitations on ownership and transfer of Shares set forth in the Company Charter and subject to Section 6.9.5), assume directly and satisfy a Redemption Right by paying to the Redeeming Partner either the Cash Amount or the Shares Amount, as the General Partner determines in its sole and absolute discretion, on the Specified Redemption Date, whereupon the General Partner shall acquire the Partnership Units offered for redemption by the Redeeming Partner and shall be treated for all purposes of this Agreement as the owner of such Partnership Units. Unless the General Partner, in its sole and absolute discretion, shall exercise its right to assume directly and satisfy the Redemption Right, the General Partner shall not have any obligation to the Redeeming Partner or to the Partnership with respect to the Redeeming Partner's exercise of the Redemption Right. If the General Partner exercises its right to satisfy the Redemption Right in the manner described in the first sentence of this Section 7.6.2, and the General Partner fully performs its obligations in connection therewith, the Partnership shall have no right or obligation to pay any amount to the Redeeming Partner with respect to such Redeeming Partner's exercise of the Redemption Right, and each of the Redeeming Partner, the Partnership and the General Partner shall, for U.S. federal income tax purposes, treat the transaction between the General Partner and the Redeeming Partner as a sale of the Redeeming Partner's Partnership Units to the General Partner. Nothing contained in this Section 7.6.2 shall imply any right of the General Partner to require any Limited Partner to exercise the Redemption Right afforded to such Limited Partner pursuant to Section 7.6.1.

(b)     If the General Partner determines to pay the Redeeming Partner the Redemption Amount in the form of Shares, the total number of Shares to be paid to the Redeeming Partner in exchange for the Redeeming Partner's Partnership Units shall be the applicable Shares Amount. If this amount is not a whole number of Shares, the Redeeming Partner shall be paid (i) that number of Shares which equals the nearest whole number less than such amount plus (ii) an amount of cash which the General Partner determines, in its reasonable discretion, to represent the fair value of the remaining fractional Share which would otherwise be payable to the Redeeming Partner.

(c)     Each Redeeming Partner agrees to execute such documents as the General Partner may reasonably require in connection with the issuance of Shares upon exercise of the Redemption Right.

7.6.3     Exceptions to Exercise of Redemption Right.

(a)     Notwithstanding the provisions of this Section 7.6 or any other provision of this Agreement, a Limited Partner (i) shall not be entitled to effect a Redemption for a specified Redemption Amount (whether in cash or Shares) to the extent the ownership or right to acquire Shares pursuant to such Redemption by such Limited Partner on the Specified Redemption Date (assuming the Redemption Amount was entirely settled in Shares) could cause such Limited Partner or any other Person to violate the restrictions on ownership and transfer of Shares set forth in the Company Charter and (ii) shall have no rights under this Agreement to acquire Shares that would otherwise be prohibited under the Company Charter. To the extent any attempted exercise of the Redemption Right or exchange for Shares would be in violation of this Section 7.6.3(a), it shall be null and void ab initio, and such Limited Partner shall not acquire any rights or economic interest in the cash otherwise payable upon such exercise of such Redemption Right or the Shares otherwise issuable upon such exchange. Notwithstanding the foregoing, the General Partner may, and may cause the Partnership to, take reasonable steps to cooperate with any Limited Partner who exercises the Redemption Right to structure any such Redemption that would otherwise violate the restrictions on ownership and transfer of Shares set forth in the Company Charter in a manner that would permit the Redemption without violating such restrictions. Such steps may include (x) satisfying the Redemption of any Partnership Units with respect to which the issuance of Shares would result in the violation of the restrictions on ownership through the payment of the Cash Amount, (y) the General Partner selling in a registered or private offering Shares and causing the Redemption of Partnership Units with the proceeds from such sales, or (z) otherwise structuring any sales by holders of Shares in a registered offering in a manner that would not result in a Limited Partner violating the ownership restrictions set forth in the Company Charter.

(b)     Notwithstanding the provisions of Sections 7.6.1 and 7.6.2, a Partner shall not be entitled to exercise the Redemption Right pursuant to Section 7.6.1 if (but only as long as) the delivery of Shares to such Partner on the Specified Redemption Date would be prohibited under applicable U.S. federal or state securities laws or regulations (in each case regardless of whether the General Partner would in fact assume and satisfy the Redemption Right).

(c)     Class A Units cannot be redeemed, but they can be converted to Common Units as and when provided in Section 3.9, and such Common Units can be redeemed as provided in this Section 7.6.

(d)     For the avoidance of doubt, notwithstanding any provision of this Section 7.6 to the contrary, if the General Partner's acquisition of Partnership Units in exchange for the Shares Amount would violate the restrictions on ownership and transfer of Shares set forth in the Company Charter, then the General Partner shall not elect to acquire such Partnership Units, and the Partnership shall not be obligated to effect any such redemption of such Partnership Units, whether for cash or the applicable Shares Amount.

7.6.4    No Liens on Partnership Units Delivered for Redemption. Each Limited Partner covenants and agrees with the General Partner that all Partnership Units delivered for redemption shall be delivered to the Partnership or the General Partner, as the case may be, free and clear of all liens; and, notwithstanding anything contained herein to the contrary, neither the General Partner nor the Partnership shall be under any obligation to acquire Partnership Units that are or may be subject to any liens. Each Limited Partner further agrees that, if any state or local property transfer tax is payable as a result of the transfer of its Partnership Units to the Partnership or the General Partner, such Limited Partner shall assume and pay such transfer tax.

7.6.5    Additional Partnership Interests. If the Partnership issues Partnership Interests to any Additional Limited Partner pursuant to Article III, the General Partner shall make such revisions to this Section 7.6 as it determines are necessary to reflect the issuance of such Partnership Interests (including setting forth any restrictions on the exercise of the Redemption Right with respect to such Partnership Interests).

## ARTICLE VIII

## BOOKS, RECORDS, ACCOUNTING AND REPORTS

Section 8.1    Records and Accounting. The General Partner shall keep or cause to be kept at the principal office of the Partnership appropriate books and records with respect to the Partnership's business, including all books and records necessary to provide to the Limited Partners any information, lists and copies of documents required to be provided pursuant to Section 7.5. Any records maintained by or on behalf of the Partnership in the regular course of its business may be kept on, or be in the form of, punch cards, magnetic tape, photographs, micrographics or any other information storage device, provided that the records so maintained are convertible into clearly legible written form within a reasonable period of time. The books of the Partnership shall be maintained, for financial and tax reporting purposes, on an accrual basis in accordance with GAAP.

Section 8.2    Reports.

8.2.1    Annual Reports. As soon as practicable, but in no event later than five (5) Business Days after the date on which the General Partner provides its annual report to its Shareholders, the General Partner shall cause to be provided to each Limited Partner an annual

report, as of the close of the most recently ended Fiscal Year, containing audited consolidated financial statements of the Partnership, or of the General Partner if such statements are prepared solely on a consolidated basis with the Partnership, for such Fiscal Year, presented in accordance with GAAP.

        8.2.2    <u>Quarterly Reports</u>. If and to the extent that the General Partner provides quarterly reports to its Shareholders, as soon as practicable, but in no event later than the date on which such reports are provided, the General Partner shall cause to be provided to each Limited Partner a report containing unaudited consolidated financial statements of the Partnership, or of the General Partner if such statements are prepared solely on a consolidated basis with the Partnership, as of the last day of each fiscal quarter, presented in accordance with GAAP, together such other information as may be required by Applicable Laws or as the General Partner determines to be appropriate.

        8.2.3    <u>Availability of Reports</u>. The General Partner shall have satisfied its obligations under <u>Section 8.2.1</u> and <u>8.2.2</u> by posting or making available the reports required by this <u>Section 8.2</u> on the website maintained from time to time by the Partnership or the General Partnership provided that such reports are able to be printed or downloaded from such website.

## ARTICLE IX

## TAX MATTERS

        Section 9.1    <u>Preparation of Tax Returns</u>. The General Partner shall arrange for the preparation and timely filing of all returns of Partnership income, gains, deductions, losses and other items required of the Partnership for U.S. federal and state income tax purposes and shall use all reasonable efforts to furnish, within one hundred and five (105) days of the close of each taxable year, the tax information reasonably required by Limited Partners for U.S. federal and state income tax reporting purposes.

        Section 9.2    <u>Tax Elections</u>. Except as otherwise provided herein, the General Partner shall, in its sole and absolute discretion, determine whether to make any available election pursuant to the Code; provided, however, that the General Partner shall make the election under Section 754 of the Code in accordance with applicable regulations thereunder. The General Partner shall have the right to seek to revoke any such election (including the election under Section 754 of the Code) upon the General Partner's determination in its sole and absolute discretion that such revocation is in the best interests of the Partners.

        Section 9.3    <u>Tax Matters Partner</u>.

        9.3.1    <u>General</u>. The General Partner shall be the "tax matters partner" of the Partnership for U.S. federal income tax purposes. Pursuant to Section 6223(c) of the Code, upon receipt of notice from the IRS of the beginning of an administrative proceeding with respect to the Partnership, the tax matters partner shall furnish the IRS with the name, address, taxpayer identification number and percentage interest in Partnership profits of each of the Limited Partners and any Assignees; provided, however, that such information is provided to the Partnership by the Limited Partners.

9.3.2    <u>Powers</u>. The tax matters partner is authorized, but not required:

(1)    to enter into any settlement with the IRS with respect to any administrative or judicial proceedings for the adjustment of Partnership items required to be taken into account by a Partner for income tax purposes (such administrative proceedings being referred to as a "tax audit" and such judicial proceedings being referred to as "judicial review"), and in the settlement agreement the tax matters partner may expressly state that such agreement shall bind all Partners, except that such settlement agreement shall not bind any Partner (i) who (within the time prescribed pursuant to the Code and Regulations) files a statement with the IRS providing that the tax matters partner shall not have the authority to enter into a settlement agreement on behalf of such Partner or (ii) who is a "notice partner" (as defined in Section 6231(a)(8) of the Code) or a member of a "notice group" (as defined in Section 6223(b)(2) of the Code);

(2)    if a notice of a final administrative adjustment at the Partnership level of any item required to be taken into account by a Partner for tax purposes (a "<u>final adjustment</u>") is received, to seek judicial review of such final adjustment, including the filing of a petition for readjustment with the Tax Court or the filing of a complaint for refund with the United States Claims Court or the District Court of the United States for the district in which the Partnership's principal place of business is located;

(3)    to intervene in any action brought by any other Partner for judicial review of a final adjustment;

(4)    to file a request for an administrative adjustment with the IRS at any time and, if any part of such request is not allowed by the IRS, to file an appropriate pleading (petition or complaint) for judicial review with respect to such request;

(5)    to enter into an agreement with the IRS to extend the period for assessing any tax which is attributable to any Partnership item required to be taken into account by a Partner for tax purposes, or an item affected by such item; and

(6)    to take any other action on behalf of the Partners of the Partnership in connection with any tax audit or judicial review proceeding to the extent permitted by Applicable Law or regulations.

The taking of any action and the incurring of any expense by the tax matters partner in connection with any such proceeding, except to the extent required by law, is a matter in the sole and absolute discretion of the tax matters partner and the provisions relating to indemnification of the General Partner set forth in <u>Section 6.7</u> shall be fully applicable to the tax matters partner in its capacity as such.

9.3.3    <u>Reimbursement</u>. The tax matters partner shall receive no compensation for its services. All third party costs and expenses incurred by the tax matters partner in

performing its duties as such (including legal and accounting fees and expenses) shall be borne by the Partnership. Nothing herein shall be construed to restrict the Partnership from engaging an accounting firm and/or law firm to assist the tax matters partner in discharging its duties hereunder, so long as the compensation paid by the Partnership for such services is reasonable.

Section 9.4    <u>Organizational Expenses</u>. The Partnership shall elect to deduct expenses, if any, incurred by it in organizing the Partnership ratably over a one hundred eighty (180) month period as provided in Section 709 of the Code.

Section 9.5    <u>Withholding</u>. Each Limited Partner hereby authorizes the Partnership to withhold from or pay on behalf of or with respect to such Limited Partner any amount of U.S. federal, state, local, or foreign taxes that the General Partner determines that the Partnership is required to withhold or pay with respect to any amount distributable or allocable to such Limited Partner pursuant to this Agreement, including any taxes required to be withheld or paid by the Partnership pursuant to Section 1441, 1442, 1445, 1446, or 1471 through 1474 of the Code. Any amount paid on behalf of or with respect to a Limited Partner shall constitute a loan by the Partnership to such Limited Partner, which loan shall be repaid by such Limited Partner within fifteen (15) days after notice from the General Partner that such payment must be made unless (i) the Partnership withholds such payment from a distribution which would otherwise be made to the Limited Partner or (ii) the General Partner determines, in its sole and absolute discretion, that such payment may be satisfied out of the available funds of the Partnership which would, but for such payment, be distributed to the Limited Partner. Any amounts withheld pursuant to the foregoing clauses (i) or (ii) shall be treated as having been distributed to such Limited Partner. Each Limited Partner hereby unconditionally and irrevocably grants to the Partnership a security interest in such Limited Partner's Partnership Interest to secure such Limited Partner's obligation to pay to the Partnership any amounts required to be paid pursuant to this <u>Section 9.5</u>. If a Limited Partner fails to pay any amounts owed to the Partnership pursuant to this <u>Section 9.5</u> when due, the General Partner may, in its sole and absolute discretion, elect to make the payment to the Partnership on behalf of such defaulting Limited Partner, and in such event shall be deemed to have loaned such amount to such defaulting Limited Partner and shall succeed to all rights and remedies of the Partnership as against such defaulting Limited Partner (including the right to receive distributions). Any amounts payable by a Limited Partner hereunder shall bear interest at the base rate on corporate loans at large United States money center commercial banks, as published from time to time in the Wall Street Journal, plus four (4) percentage points (but not higher than the maximum lawful rate under the laws of the State of Texas) from the date such amount is due (i.e., fifteen (15) days after demand) until such amount is paid in full. Each Limited Partner shall take such actions as the Partnership or the General Partner shall request to perfect or enforce the security interest created hereunder.

Section 9.6    <u>Code Section 83 Safe Harbor Election</u>. By executing this Agreement, each Partner authorizes and directs the Partnership to elect to have the "Safe Harbor" described in the proposed Revenue Procedure set forth in Internal Revenue Service Notice 2005-43 (the "<u>Notice</u>") apply to any interest in the Partnership transferred to a service provider by the Partnership on or after the effective date of such Revenue Procedure in connection with services provided to the Partnership. For purposes of making such Safe Harbor election, the tax matters partner is hereby designated as the "partner who has responsibility for federal income tax reporting" by the Partnership and, accordingly, execution of such Safe Harbor election by the tax

matters partner constitutes execution of a "Safe Harbor Election" in accordance with Section 3.03(1) of the Notice. The Partnership and each Partner hereby agree to comply with all requirements of the Safe Harbor described in the Notice, including the requirement that each Partner shall prepare and file all U.S. federal income tax returns reporting the income tax effects of each "Safe Harbor Partnership Interest" (as described in Section 3.02 of the Notice) issued by the Partnership in a manner consistent with the requirements of the Notice. Each Partner authorizes the tax matters partner to amend this <u>Section 9.6</u> to the extent necessary to achieve substantially the same tax treatment with respect to any interest in the Partnership transferred to a service provider by the Partnership in connection with services provided to the Partnership as set forth in Section 4 of the Notice (e.g., to reflect changes from the rules set forth in the Notice in subsequent Internal Revenue Service guidance), <u>provided</u> that such amendment is not materially adverse to any Partner (as compared with the after-tax consequences that would result if the provisions of the Notice applied to all interests in the Partnership transferred to a service provider by the Partnership in connection with services provided to the Partnership).

Section 9.7    <u>Limitation to Preserve REIT Status</u>. With respect to any period in which the General Partner intends to be treated as a REIT for Federal income tax purposes, to the extent that any amount paid, credited or reimbursed to the General Partner or any of its officers, trustees, employees or agents, whether as a reimbursement, fee, expense or indemnity and whether pursuant to <u>Section 6.4</u>, <u>Section 6.7</u> or otherwise, would constitute gross income to the General Partner for purposes of Section 856(c)(2) or 856(c)(3) of the Code that is not described in subsections (A) through (H) of Section 856(c)(2) of the Code (a "<u>General Partner Payment</u>") then, notwithstanding any other provision of this Agreement, the amount of such General Partner Payment for any Fiscal Year shall not exceed the lesser of:

(a)    an amount equal to the excess, if any, of (a) 4% of the General Partner's total gross income for the Fiscal Year over (b) the amount of gross income (within the meaning of Section 856(c)(2) of the Code) derived by the General Partner from sources other than those described in subsections (A) through (H) of Section 856(c)(2) of the Code (but not including any General Partner Payments); or

(b)    an amount equal to the excess, if any of (a) 24% of the General Partner's total gross income for the Fiscal Year over (b) the amount of gross income (within the meaning of Section 856(c)(3) of the Code) derived by the General Partner from sources other than those described in subsections (A) through (I) of Section 856(c)(3) of the Code (but not including any General Partner Payments);

<u>provided</u>, <u>however</u>, that General Partner Payments in excess of the amounts set forth in subparagraphs (i) and (ii) above may be made if the General Partner, as a condition precedent, obtains an opinion of tax counsel that the receipt of such excess amounts would not adversely affect the General Partner's ability to qualify as a REIT. To the extent General Partner Payments may not be made in a year due to the foregoing limitations, such General Partner Payments shall carry over and be treated as arising in the following Fiscal Year, <u>provided</u>, <u>however</u>, that such amounts shall not carry over for more than five years, and if not paid within such five year period, shall expire; <u>and provided further</u>, that (i) as General Partner Payments are made, such payments shall be applied first to carry over amounts outstanding, if any, and (ii) with respect to

carry over amounts for more than one Fiscal Year, such payments shall be applied to the earliest Fiscal Year first.

## ARTICLE X

## TRANSFERS AND WITHDRAWALS

Section 10.1    Transfer. No Partnership Interest shall be Transferred, in whole or in part, except in accordance with the terms and conditions set forth in this Article X. Any Transfer or purported Transfer of a Partnership Interest not made in accordance with this Article X shall be null and void. No part of the interest of a Limited Partner shall be subject to the claims of any creditor, any spouse for alimony or support, or to legal process, and may not be voluntarily or involuntarily alienated or encumbered except as may be specifically provided for in this Agreement.

Section 10.2    Transfers of Partnership Interests or Shares of General Partner; Termination Transactions.

10.2.1    Except as provided in Section 10.2.2 or Section 10.2.3, and subject to the rights of any holder of any Partnership Interest set forth in a Partnership Unit Designation, the General Partner may not Transfer all or any portion of its Partnership Interest (whether by sale, disposition, statutory merger or consolidation, liquidation or otherwise) without the Consent of the Limited Partners. It is a condition to any Transfer of a Partnership Interest of a General Partner otherwise permitted hereunder (including any Transfer permitted pursuant to Section 10.2.2 or Section 10.2.3) that: (i) coincident with such Transfer, the transferee is admitted as a General Partner pursuant to Section 11.1; (ii) the transferee assumes, by operation of law or express agreement, all of the obligations of the transferor General Partner under this Agreement with respect to such transferred Partnership Interest; and (iii) the transferee has executed such instruments as may be necessary to effectuate such admission and to confirm the agreement of such transferee to be bound by all the terms and provisions of this Agreement with respect to the Partnership Interest so acquired and the admission of such transferee as a General Partner.

10.2.2    Subject to the rights of any holder of any Partnership Interest set forth in a Partnership Unit Designation, the General Partner may, without the Consent of the Limited Partners, Transfer all of its Partnership Interest in connection with a Termination Transaction permitted under this Section 10.2.2. "Termination Transaction" means (i) a merger (including a triangular merger), consolidation or other combination of the General Partner with or into another Person, or (ii) a sale of all or substantially all of the General Partner's assets in a single transaction or series of related transactions. The General Partner is authorized to undertake Termination Transactions as follows:

(a)    Without the Consent of the Limited Partners, the General Partner is permitted to engage in a Termination Transaction in connection with which all of the Limited Partners will receive, or will have the right to elect to receive, for each Partnership Unit an amount of cash, securities or other property equal to the product of the Conversion Factor and the greatest amount of cash, securities or other property paid to a holder of one Share in consideration of one Share pursuant to the terms of such Termination Transaction; provided, that

if, in connection with such Termination Transaction, a purchase, tender or exchange offer shall have been made to and accepted by the holders of the outstanding Shares, each holder of Partnership Units shall receive, or shall have the right to elect to receive, the greatest amount of cash, securities or other property which such holder of Partnership Units would have received had it exercised its Redemption Right pursuant to Section 7.6 and received Shares in exchange for its Partnership Units immediately prior to the expiration of such purchase, tender or exchange offer and had thereupon accepted such purchase, tender or exchange offer and then such Termination Transaction shall have been consummated. The terms of a Termination Transaction undertaken pursuant to this Section 10.2.2(a) may require all Limited Partners to exercise their Redemption Rights, or provide that all Limited Partners' Redemption Rights are deemed to be exercised, in connection with such Termination Transaction, and each Limited Partner hereby agrees to exercise its Redemption Rights in connection with such a Termination Transaction.

(b)    Without the Consent of the Limited Partners, the General Partner is permitted to engage in a merger or other combination with another entity (and, in connection therewith, may cause the Partnership to merge or combine with another entity) if (w) substantially all of the assets directly or indirectly owned by the surviving entity are owned directly or indirectly by the Partnership or another limited partnership or limited liability company which is the survivor of a merger, consolidation or combination of assets with the Partnership (in each case, the "Surviving Partnership"); (x) Limited Partners that held Partnership Units immediately prior to the consummation of such Termination Transaction own a percentage interest of the Surviving Partnership based on the relative fair market value of the net assets of the Partnership and the other net assets of the Surviving Partnership immediately prior to the consummation of such transaction; (y) the rights, preferences and privileges in the Surviving Partnership of such Limited Partners are at least as favorable as those in effect with respect to the Partnership Units immediately prior to the consummation of such transaction and as those applicable to any other limited partners or non-managing members of the Surviving Partnership; and (z) the rights of such Limited Partners include at least one of the following: (i) the right to redeem their interests in the Surviving Partnership for the consideration available to such persons pursuant to Section 10.2.2(a) or (ii) the right to redeem their interests in the Surviving Partnership for cash on terms substantially equivalent to those in effect with respect to their Partnership Units immediately prior to the consummation of such transaction, or, if the ultimate controlling person of the Surviving Partnership has publicly traded common equity securities, for such common equity securities, with an exchange ratio based on the determination of relative fair market value of such securities and the Shares.

10.2.3    Notwithstanding the other provisions of this Article X (other than Section 10.6.5), the General Partner may Transfer all of its Partnership Interests at any time to any Person that is, at the time of such Transfer, an Affiliate of the General Partner, including any Qualified REIT Subsidiary, without the Consent of any Limited Partner. The provisions of Section 10.2.2, 10.3, 10.4.1 and 10.5 hereof shall not apply to any Transfer permitted by this Section 10.2.3. The General Partner may undertake a reclassification, recapitalization or change of any outstanding shares of the General Partner's stock or other outstanding equity interests without the Consent of the Limited Partners so long as, in connection with any such event, the General Partner takes such actions as are necessary to maintain the correspondence of Partnership Interests to Shares that existed prior to such event, whether by making corresponding adjustments to the Partnership Interests, the Conversion Factor, or otherwise.

10.2.4    Except in connection with Transfers permitted in this <u>Article X</u> and as otherwise provided in this <u>Section 10.2</u> in connection with the Transfer of the General Partner's entire Partnership Interest, the General Partner may not voluntarily withdraw as a general partner of the Partnership without the consent or approval of the Limited Partners.

Section 10.3    <u>Limited Partners' Rights to Transfer</u>.

10.3.1    <u>General</u>. Subject to the other provisions of this <u>Section 10.3</u>, a Limited Partner may Transfer all or any portion of its Partnership Interest, or any of such Limited Partner's rights as a Limited Partner, with or without the consent of the General Partner.

10.3.2    <u>Hunt Limited Partner Restricted</u>. Prior to the earlier of (a) the first anniversary of the Effective Date, and (b) the termination of the Management Agreement as it relates to the Company, the Hunt Limited Partner shall not Transfer any Class A Units, or any Common Units issued upon conversion of the Class A Units, to any Person, except that (a) the Hunt Limited Partner and owners of interests in the Hunt Limited Partner may Transfer all or part of the Hunt Limited Partner's Partnership Interest or direct or indirect interests in the Hunt Limited Partner to Permitted Transferees of the Hunt Limited Partner, and (b) owners of direct or indirect interests in the Hunt Limited Partner may pledge all or part of such interests to one or more third party lenders as collateral for indebtedness provided by such lenders to such persons.

10.3.3    <u>Conditions to Transfer</u>. It is a condition to any Transfer otherwise permitted under this Agreement (excluding pledges of a Partnership Interest, but including any Transfer of the pledged Partnership Interest, whether to the secured party or otherwise, and whether or not pursuant to the secured party's exercise of its remedies under such pledge or the related loan or extension of credit) that the Transferee assumes by operation of law or express agreement all of the obligations of the transferor Limited Partner under this Agreement with respect to such Transferred Partnership Interest. Any Transferee, whether or not admitted as a Substituted Limited Partner, shall take subject to the obligations of the Transferor under this Agreement with respect to the Transferred Partnership Interest. Unless admitted as a Substituted Limited Partner, the only rights of a Transferee, whether by a voluntary Transfer, by operation of law or otherwise, in respect of any Transferred Partnership Interests shall be those of an Assignee as provided in <u>Section 10.5</u>.

10.3.4    <u>Incapacitated Limited Partners</u>. If a Limited Partner is subject to Incapacity, the executor, administrator, trustee, committee, guardian, conservator or receiver of such Limited Partner's estate shall have all the rights of a Limited Partner, but not more rights than those enjoyed by other Limited Partners for the purpose of settling or managing the estate and such power as the Incapacitated Limited Partner possessed to transfer all or any part of its Partnership Interest. The Incapacity of a Limited Partner, in and of itself, shall not dissolve or terminate the Partnership.

10.3.5    <u>No Transfers Violating Securities Laws</u>. The General Partner may prohibit any Transfer of Partnership Units by a Limited Partner if, in the opinion of legal counsel to the Partnership, such transfer would require the filing of a registration statement under the Securities Act, would otherwise violate any federal or state securities laws or

regulations applicable to the Partnership or the General Partner, or would require the Partnership or the General Partner to register as an investment company under the Investment Company Act.

10.3.6    No Transfers Affecting Tax Status of Partnership. No Transfer of Partnership Units by a Limited Partner (including a redemption or exchange pursuant to Section 7.6) may be made to any Person if (i) in the opinion of legal counsel for the Partnership, it would create a material risk of the Partnership being treated as an association taxable as a corporation for U.S. federal income tax purposes or would result in a termination of the Partnership for U.S. federal income tax purposes (except as a result of the redemption or exchange for Shares of all Partnership Units held by all Limited Partners other than the General Partner or any Subsidiary of the General Partner or pursuant to a transaction expressly permitted under Section 10.2), (ii) in the opinion of legal counsel for the Partnership, it would adversely affect the ability of the General Partner to continue to qualify as a REIT or would subject the General Partner to any additional taxes under Section 856, Section 857, Section 860E or Section 4981 of the Code or (iii) such Transfer is effectuated through an "established securities market" or a "secondary market (or the substantial equivalent thereof)" within the meaning of Section 7704 of the Code (provided that this clause (iii) shall not be the basis for limiting or restricting in any manner the exercise of the Redemption Right under Section 7.6 unless, and only to the extent that, outside tax counsel provides to the General Partner an opinion to the effect that, in the absence of such limitation or restriction, there is a significant risk that the Partnership will be treated as a "publicly traded partnership" and, by reason thereof, taxable as a corporation).

10.3.7    No Transfers to Holders of Nonrecourse Liabilities. No pledge or other Transfer of any Partnership Units may be made to a lender to the Partnership or any Person who is related (within the meaning of Section 1.752-4(b) of the Regulations) to any lender to the Partnership whose loan constitutes a Nonrecourse Liability unless (i) the General Partner is provided notice thereof and (ii) the lender enters into an arrangement with the Partnership and the General Partner to exchange or redeem for the Redemption Amount any Partnership Units in which a security interest is held simultaneously with the time at which such lender would be deemed to be a partner in the Partnership for purposes of allocating liabilities to such lender under Section 752 of the Code.

Section 10.4    Substituted Limited Partners.

10.4.1    Consent of General Partner. No Limited Partner shall have the right to substitute a transferee as a Limited Partner in its place. The General Partner shall, however, have the right to consent to the admission of a transferee of the interest of a Limited Partner pursuant to this Section 10.4 as a Substituted Limited Partner, which consent may be given or withheld by the General Partner in its reasonable discretion and subject to Section 6.9.5; provided that in the case of a Transfer to a Permitted Transferee, the General Partner shall not withhold its consent to the admission of such Permitted Transferee as a Substituted Limited Partner if such Permitted Transferee assumes all of the obligations of the Transferor Limited Partner under this Agreement with respect to such Partnership Units and the Transfer is made in accordance with the this Agreement. If the General Partner denies admission of a proposed

transferee of Partnership Units, the General Partner shall provide to the Transferor or proposed Transferor of such Partnership Units written notice setting forth the reasons for such denial.

10.4.2    <u>Rights of Substituted Limited Partner</u>. A transferee who has been admitted as a Substituted Limited Partner in accordance with this <u>Article X</u> shall have all the rights and powers and be subject to all the restrictions and liabilities of a Limited Partner under this Agreement. The admission of any transferee as a Substituted Limited Partner shall be conditioned upon the transferee executing and delivering to the Partnership an acceptance of all the terms and conditions of this Agreement and such other documents or instruments as may be required to effect the admission.

10.4.3    <u>Partner Registry</u>. Upon the admission of a Substituted Limited Partner, the General Partner shall include the name, address, Capital Account, number of Partnership Units, and Percentage Interest of such Substituted Limited Partner on the Partner Registry and eliminate or adjust, if necessary, the name, address, Capital Account, number of Partnership Units and Percentage Interest of the predecessor of such Substituted Limited Partner on the Partner Registry.

Section 10.5    <u>Assignees</u>. If the General Partner, in its reasonable discretion, does not consent to the admission of any permitted transferee under <u>Section 10.3</u> as a Substituted Limited Partner, as described in <u>Section 10.4</u>, such transferee shall be considered an Assignee for purposes of this Agreement. An Assignee shall be entitled to all the rights of an assignee of a limited partnership interest under the LP Act, including the right to receive distributions from the Partnership and the share of Net Income, Net Losses, gain, loss and Recapture Income attributable to the Partnership Units assigned to such transferee, and shall have the rights granted to the Limited Partners under <u>Section 7.6</u>, but shall not be deemed to be a holder of Partnership Units for any other purpose under this Agreement, and shall not be entitled to vote such Partnership Units in any matter presented to the Limited Partners for a vote (such Partnership Units being deemed to have been voted on such matter in the same proportion as all other Partnership Units held by Limited Partners are voted). If any such transferee desires to make a further assignment of any such Partnership Units, such transferee shall be subject to all the provisions of this <u>Article X</u> to the same extent and in the same manner as any Limited Partner desiring to make an assignment of Partnership Units.

Section 10.6    <u>General Provisions</u>.

10.6.1    <u>Withdrawal of Limited Partner</u>. No Limited Partner may withdraw from the Partnership other than as a result of a permitted Transfer of all of such Limited Partner's Partnership Units in accordance with this <u>Article X</u> or pursuant to redemption of all of its Partnership Units under <u>Section 7.6</u>.

10.6.2    <u>Termination of Status as Limited Partner</u>. Any Limited Partner who shall transfer all of its Partnership Units in a Transfer permitted pursuant to this <u>Article X</u> or pursuant to redemption of all of its Partnership Units under <u>Section 7.6</u> shall cease to be a Limited Partner.

10.6.3    Timing of Transfers. Transfers pursuant to this Article X may only be made upon three business days prior notice, unless the General Partner otherwise agrees.

10.6.4    Allocations. If any Partnership Interest is transferred during any quarterly segment of the Partnership's Fiscal Year in compliance with the provisions of this Article X or redeemed pursuant to Section 7.6, Net Income, Net Losses, each item thereof and all other items attributable to such interest for such Fiscal Year shall be divided and allocated between the transferor Partner and the transferee Partner by taking into account their varying interests during the Fiscal Year in accordance with Section 706(d) of the Code, using the interim closing of the books method (unless the General Partner, in its sole and absolute discretion, elects to adopt a daily, weekly, or a monthly proration period, in which event Net Income, Net Losses, each item thereof and all other items attributable to such interest for such Fiscal Year shall be prorated based upon the applicable method selected by the General Partner). Solely for purposes of making such allocations, each of such items for the calendar month in which the transfer or redemption occurs shall be allocated to the Person who is a Partner as of midnight on the last day of said month. All distributions of Cash From Operations and non-cash items attributable to any Partnership Unit with respect to which the Partnership Record Date is before the date of such Transfer or redemption shall be made to the transferor Partner or the Redeeming Partner, as the case may be, and, in the case of a Transfer other than a redemption, all distributions of Cash From Operations and non-cash items thereafter attributable to such Partnership Unit shall be made to the transferee Partner.

10.6.5    Additional Restrictions. In addition to any other restrictions on Transfer herein contained, including the provisions of this Article X, in no event may any Transfer of a Partnership Interest by any Partner (including pursuant to Section 7.6) be made without the express consent of the General Partner, in its sole and absolute discretion, (i) to any Person who lacks the legal right, power or capacity to own a Partnership Interest; (ii) in violation of Applicable Law; (iii) of any component portion of a Partnership Interest, such as the Capital Account, or rights to distributions, separate and apart from all other components of a Partnership Interest; (iv) if in the opinion of legal counsel to the Partnership such Transfer would cause a termination of the Partnership for U.S. federal or state income tax purposes (except as a result of the redemption or exchange for Shares of all Partnership Units held by all Limited Partners or pursuant to a transaction expressly permitted under Section 10.2); (v) if in the opinion of counsel to the Partnership, such Transfer would cause the Partnership to cease to be classified as a partnership for U.S. federal income tax purposes (except as a result of the redemption or exchange for Shares of all Partnership Units held by all Limited Partners or pursuant to a transaction expressly permitted under Section 10.2); (vi) if such Transfer would cause the Partnership Interests of Benefit Plan Investors to become "significant," within the meaning of the Plan Assets Regulation or would cause the Partnership to become, with respect to any Benefit Plan Investor, a "party-in-interest" (as defined in Section 3(14) of ERISA) or a "disqualified person" (as defined in Section 4975(c) of the Code); (vii) if such Transfer, in the General Partner's good faith determination, may cause the assets of the Partnership to be deemed Plan Assets; (viii) if such Transfer requires the registration of such Partnership Interest pursuant to any applicable federal or state securities laws; (ix) if such Transfer is effectuated through an "established securities market" or a "secondary market" (or the substantial equivalent thereof) within the meaning of Section 7704 of the Code or such Transfer causes the Partnership to become a "publicly traded partnership," as such term is defined in Section

469(k)(2) or Section 7704(b) of the Code (provided that this clause (ix) shall not be the basis for limiting or restricting in any manner the exercise of the Redemption Right under Section 7.6 unless, and only to the extent that, outside tax counsel provides to the General Partner an opinion to the effect that, in the absence of such limitation or restriction, there is a significant risk that the Partnership will be treated as a "publicly traded partnership" and, by reason thereof, taxable as a corporation); (x) if such Transfer subjects the Partnership to regulation under the Investment Company Act or the Advisers Act; (xi) such Transfer could adversely affect the ability of the General Partner to remain qualified as a REIT; (xii) if in the opinion of legal counsel for the transferring Partner (which opinion and counsel shall be reasonably satisfactory to the Partnership) or legal counsel for the Partnership, such Transfer would adversely affect the ability of the General Partner to qualify as a REIT or subject the General Partner to any taxes under Section 856, Section 857, Section 860E or Section 4981 of the Code, or (xiii) if such Transfer would result in Partners that are Hunt Group Members directly or indirectly owning more than 24.8% of outstanding interests in the capital or in the profits of the Partnership.

       10.6.6   <u>Avoidance of "Publicly Traded Partnership" Status</u>. The General Partner shall monitor the Transfers of interests in the Partnership to determine (i) if such interests are being traded on an "established securities market" or are readily tradable on a "secondary market (or the substantial equivalent thereof)" within the meaning of Section 7704 of the Code and (ii) whether additional Transfers of interests would result in the Partnership being unable to qualify for at least one of the "safe harbors" set forth in Regulations Section 1.7704-1 (or any other guidance subsequently published by the IRS setting forth safe harbors under which interests will not be treated as "readily tradable on a secondary market (or the substantial equivalent thereof)" within the meaning of Section 7704 of the Code) (the "<u>Safe Harbors</u>"). The General Partner shall take all steps reasonably necessary or appropriate to prevent any trading of interests or any recognition by the Partnership of Transfers made on such markets and, except as otherwise provided herein, to insure that at least one of the Safe Harbors is met; provided, however, that the foregoing shall not authorize the General Partner to limit or restrict in any manner the right of any holder of a Partnership Unit to exercise the Redemption Right in accordance with the terms of Section 7.6 unless, and only to the extent that, outside tax counsel provides to the General Partner an opinion to the effect that, in the absence of such limitation or restriction, there is a significant risk that the Partnership will be treated as a "publicly traded partnership" and, by reason thereof, taxable as a corporation.

       10.6.7   <u>Indemnification</u>. (a) The transferor and transferee of a Partner's interest shall be jointly and severally obligated to reimburse the Partnership for all expenses (including legal fees) incurred by or on behalf of the Partnership in connection with any Transfer. If, under Applicable Law, a Transfer of an interest in the Partnership that does not comply with this <u>Article X</u> is nevertheless legally effective, the transferor and transferee shall be jointly and severally liable to the Partnership for, and shall indemnify and hold harmless the Partnership against, any losses, damages or expenses (including attorneys' fees, judgments, fines and amounts paid in settlement) actually and reasonably incurred by them in connection with such Transfer.

       (b)     To the fullest extent permitted under Applicable Law, each Partner shall indemnify and hold harmless the Partnership and all other Partners who were or are parties,

or are threatened to be made parties, to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of or arising from any actual or alleged misrepresentation, misstatement of facts or omission to state facts made (or omitted to be made), noncompliance with any agreement or failure to perform any covenant by any such Partner in connection with any Transfer of all or any portion of such Partner's interest (or any economic interest therein) in the Partnership, against any losses, damages or expenses (including attorneys' fees, judgments, fines and amounts paid in settlement) actually and reasonably incurred by it or them in connection with such action, suit or proceeding and for which it or they have not otherwise been reimbursed.

## ARTICLE XI

## ADMISSION OF PARTNERS

Section 11.1    <u>Admission of a Successor General Partner</u>. A successor to all of the General Partner's General Partner Interest pursuant to <u>Section 10.2</u> who is proposed to be admitted as a successor General Partner shall be admitted to the Partnership as the General Partner, effective upon such Transfer. Any such successor shall carry on the business of the Partnership without dissolution. In such case, the admission shall be subject to such successor General Partner executing and delivering to the Partnership an acceptance of all of the terms and conditions of this Agreement and such other documents or instruments as may be required to effect the admission.

Section 11.2    <u>Admission of Additional Limited Partners</u>.

11.2.1    <u>General</u>. No Person (other than a transferee of an existing Limited Partner as provided in <u>Section 10.4</u>) shall be admitted as an Additional Limited Partner without the consent of the General Partner, which consent may be given or withheld in the General Partner's sole and absolute discretion, subject to <u>Section 6.9.5</u>. A Person who makes a Capital Contribution to the Partnership in accordance with this Agreement, including under <u>Section 3.3.1</u>, or who exercises an option to receive Partnership Units shall be admitted to the Partnership as an Additional Limited Partner only with the consent of the General Partner and only upon furnishing to the General Partner (i) evidence of acceptance in form satisfactory to the General Partner of all of the terms and conditions of this Agreement, and (ii) such other documents or instruments as may be required in the discretion of the General Partner to effect such Person's admission as an Additional Limited Partner. The admission of any Person as an Additional Limited Partner shall become effective on the date upon which the name of such Person is recorded in the Partner Registry, following the consent of the General Partner to such admission.

11.2.2    <u>Allocations to Additional Limited Partners</u>. If any Additional Limited Partner is admitted to the Partnership on any day other than the first day of a Fiscal Year, then Net Income, Net Losses, each item thereof and all other items allocable among Partners and Assignees for such Fiscal Year shall be allocated among such Additional Limited Partner and all other Partners and Assignees by taking into account their varying interests during the Fiscal Year in accordance with Section 706(d) of the Code, using the interim closing of the books method (unless the General Partner, in its sole and absolute discretion, elects to adopt a daily,

weekly or monthly proration method, in which event Net Income, Net Losses, and each item thereof would be prorated based upon the applicable method selected by the General Partner). Solely for purposes of making such allocations, each of such items for the calendar month in which an admission of any Additional Limited Partner occurs shall be allocated among all the Partners and Assignees including such Additional Limited Partner in accordance with the principles described in Section 10.6.4. All distributions of Cash From Operations and non-cash items with respect to which the Partnership Record Date is before the date of such admission shall be made solely to Partners and Assignees other than the Additional Limited Partner, and all distributions of Cash From Operations and non-cash items thereafter shall be made to all the Partners and Assignees including such Additional Limited Partner.

Section 11.3    <u>Amendment of Agreement and Certificate of Limited Partnership</u>. For the admission to the Partnership of any Partner, the General Partner shall take all steps necessary and appropriate under the LP Act to amend the records of the Partnership and, if necessary, to prepare as soon as practical an amendment of this Agreement and, if required by law, shall prepare and file an amendment to the Certificate.

Section 11.4    <u>Limit on Number of Partners</u>. Unless otherwise permitted by the General Partner, no Person shall be admitted to the Partnership as an Additional Limited Partner if the effect of such admission would be to cause the Partnership to have a number of Partners that would cause the Partnership to become a reporting company under the Exchange Act.

## ARTICLE XII

## DISSOLUTION AND LIQUIDATION

Section 12.1    <u>Dissolution</u>. The Partnership shall not be dissolved by the admission of Substituted Limited Partners or Additional Limited Partners or by the admission of a successor General Partner in accordance with the terms of this Agreement. Upon the withdrawal of the General Partner, any successor General Partner shall continue the business of the Partnership. The Partnership shall dissolve, and its affairs shall be wound up, upon the first to occur of any of the following ("<u>Liquidating Events</u>"):

(a)    an event of withdrawal of the General Partner, as defined in the LP Act (other than an event of bankruptcy), unless within ninety (90) days after the withdrawal a "majority in interest" of the Limited Partners consent in writing to continue the business of the Partnership and to the appointment, effective as of the date of withdrawal, of a substitute General Partner;

(b)    an election to dissolve the Partnership made by the General Partner that is approved by holders of a majority of the outstanding Common Units voting together as a single class (and all holders of Partnership Units hereby expressly consent that such approval may be effected upon written consent of said applicable percentage of such outstanding Partnership Units);

(c)    entry of a decree of judicial dissolution of the Partnership pursuant to the provisions of the LP Act;

(d)     the sale of all or substantially all of the assets and properties of the Partnership for cash or for marketable securities;

(e)     a good faith determination by the General Partner that dissolution of the Partnership is necessary or desirable to avoid any material adverse consequences to the Partnership, the General Partner, the Board of Directors or the officers of the General Partner as a result of any law applicable to a Regulated Investor; or

(f)     a final and non-appealable judgment is entered by a court of competent jurisdiction ruling that the General Partner is bankrupt or insolvent, or a final and non-appealable order for relief is entered by a court with appropriate jurisdiction against the General Partner, in each case under any federal or state bankruptcy or insolvency laws as now or hereafter in effect, unless prior to or at the time of the entry of such order or judgment a "majority in interest" of the Limited Partners consent in writing to continue the business of the Partnership and to the appointment, effective as of a date prior to the date of such order or judgment, of a substitute General Partner.

Section 12.2   <u>Winding Up</u>.

12.2.1   <u>General</u>. Upon the occurrence of a Liquidating Event, the Partnership shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and Partners. No Partner shall take any action that is inconsistent with, or not necessary to or appropriate for, the winding up of the Partnership's business and affairs. The General Partner (or, if there is no General Partner, any Person elected by a "majority in interest" of the Limited Partners) shall be responsible for overseeing the winding up and dissolution of the Partnership (the "<u>Liquidator</u>") and shall take full account of the Partnership's liabilities and property and the Partnership property shall be liquidated as promptly as is consistent with obtaining the fair value thereof, and the proceeds therefrom (which may, to the extent determined by the General Partner, include equity or other securities of the General Partner or any other Entity) shall be applied and distributed in the following order:

(1)     First, to the payment and discharge of all of the Partnership's liabilities to creditors other than the Partners;

(2)     Second, to the payment and discharge of all of the Partnership's liabilities to the General Partner;

(3)     Third, to the payment and discharge of all of the Partnership's liabilities to the Limited Partners;

(4)     Fourth, to the holders of Partnership Units that are entitled to any preference in distribution upon liquidation in accordance with the rights of any such class or series of Partnership Units (and, within each such class or series, to each holder thereof pro rata based on the proportion of the total number of outstanding units of such class or series represented by such holder's units of such series or class) and as otherwise provided in <u>Article IV</u>; and

(5)    The balance, if any, to the Partners in accordance with their respective positive Capital Account balances (determined after taking into account all allocations and adjustments for all periods).

It is the intention of the Partners that distributions made pursuant to clause (5) of this <u>Section 12.2.1</u> shall be made in the same manner as if such distributions were made pursuant to <u>Section 4.1</u>.

The General Partner shall not receive any additional compensation for any services performed pursuant to this <u>Article XII</u>.

12.2.2    <u>Deferred Liquidation</u>. Notwithstanding the provisions of <u>Section 12.2.1</u> which require liquidation of the assets of the Partnership, but subject to the order of priorities set forth therein, if prior to or upon dissolution of the Partnership the Liquidator determines that an immediate sale of part or all of the Partnership's assets would be impractical or would cause undue loss to the Partners, the Liquidator may, in its sole and absolute discretion, defer for a reasonable time the liquidation of any assets except those necessary to satisfy liabilities of the Partnership (including those to Partners as creditors) or distribute to the Partners, in lieu of cash, as tenants in common and in accordance with the provisions of <u>Section 12.2.1</u>, undivided interests in such Partnership assets as the Liquidator deems not suitable for liquidation. Any such distributions in kind shall be made only if, in the good faith judgment of the Liquidator, such distributions in kind are in the best interest of the Partners, and shall be subject to such conditions relating to the disposition and management of such properties as the Liquidator deems reasonable and equitable and to any agreements governing the operation of such properties at such time. The Liquidator shall determine the fair market value of any property distributed in kind using such reasonable method of valuation as it may adopt.

Section 12.3    <u>Compliance With Timing Requirements of Regulations; Restoration of Deficit Capital Accounts</u>.

12.3.1    <u>Timing of Distributions</u>. If the Partnership is "liquidated" within the meaning of Regulations Section 1.704-1(b)(2)(ii)(g) (other than as described in Regulations Section 1.704-1(b)(2)(iv)(*l*)), distributions shall be made under this <u>Article XII</u> to the General Partner and Limited Partners who have positive Capital Accounts in compliance with Regulations Section 1.704-1(b)(2)(ii)(b)(2). In the discretion of the General Partner, a pro rata portion of the distributions that would otherwise be made to the General Partner and Limited Partners pursuant to this <u>Article XII</u> may be: (A) distributed to a trust established for the benefit of the General Partner and Limited Partners for the purposes of liquidating Partnership assets, collecting amounts owed to the Partnership and paying any contingent or unforeseen liabilities or obligations of the Partnership or of the General Partner arising out of or in connection with the Partnership (in which case the assets of any such trust shall be distributed to the General Partner and Limited Partners from time to time, in the reasonable discretion of the General Partner, in the same proportions as the amount distributed to such trust by the Partnership would otherwise have been distributed to the General Partner and Limited Partners pursuant to this Agreement); or (B) withheld to provide a reasonable reserve for Partnership liabilities (contingent or otherwise) and to reflect the unrealized portion of any installment obligations

owed to the Partnership; provided that such withheld amounts shall be distributed to the General Partner and Limited Partners as soon as practicable.

12.3.2   Restoration of Deficit Capital Accounts Upon Liquidation of the Partnership. If any Partner has a deficit balance in its Capital Account (after giving effect to all contributions, distributions and allocations for all taxable years, including the year during which such liquidation occurs), such Partner shall have no obligation to make any contribution to the capital of the Partnership with respect to such deficit, and such deficit shall not be considered a Debt owed to the Partnership or to any other Person for any purpose whatsoever except as otherwise set forth in this Section 12.3.2, or as otherwise expressly agreed in writing by the affected Partner and the Partnership after the Effective Date. Notwithstanding the foregoing, the first sentence of this Section 12.3.2 shall not apply with respect to any other Partner to the extent, but only to such extent, that such Partner previously has agreed in writing, with the consent of the General Partner, to undertake an express obligation to restore all or any portion of a deficit that may exist in its Capital Account upon a liquidation of the Partnership. Any contribution required of a Partner under this Section 12.3.2 shall be made on or before the later of (i) the end of the Fiscal Year in which the interest is liquidated or (ii) the ninetieth (90th) day following the date of such liquidation.

Section 12.4   Rights of Limited Partners. Except as otherwise provided in this Agreement, each Limited Partner shall look solely to the assets of the Partnership for the return of its Capital Contributions and shall have no right or power to demand or receive property other than cash from the Partnership. Except as otherwise expressly provided in this Agreement, no Limited Partner shall have priority over any other Limited Partner as to the return of its Capital Contributions, distributions, or allocations.

Section 12.5   Notice of Dissolution. If a Liquidating Event occurs or an event occurs that would, but for provisions of an election or objection by one or more Partners pursuant to Section 12.1, result in a dissolution of the Partnership, the General Partner shall, within thirty (30) days thereafter, provide written notice thereof to each of the Partners and to all other parties with whom the Partnership regularly conducts business (as determined in the discretion of the General Partner).

Section 12.6   Cancellation of Certificate of Limited Partnership. Upon the completion of the liquidation of the Partnership cash and property as provided in Section 12.2, the Partnership shall be terminated and the Certificate and all qualifications of the Partnership as a foreign limited partnership in jurisdictions other than the State of Delaware shall be canceled and such other actions as may be necessary to terminate the Partnership shall be taken.

Section 12.7   Reasonable Time For Winding Up. A reasonable time shall be allowed for the orderly winding up of the business and affairs of the Partnership and the liquidation of its assets pursuant to Section 12.2, to minimize any losses otherwise attendant upon such winding-up, and the provisions of this Agreement shall remain in effect among the Partners during the period of liquidation.

Section 12.8   Waiver of Partition. Each Partner hereby waives any right to partition of the Partnership property.

Section 12.9    <u>Liability of Liquidator</u>. The Liquidator shall be indemnified and held harmless by the Partnership in the same manner and to the same degree as a Covered Person may be indemnified pursuant to <u>Section 6.7</u>.

**ARTICLE XIII**

**AMENDMENTS; MEETINGS**

Section 13.1    <u>Amendments</u>.

13.1.1    <u>General</u>. Amendments to this Agreement may be proposed by the General Partner. Following such proposal (except an amendment pursuant to <u>Section 13.1.2</u>), the General Partner shall submit any proposed amendment to the Partners. The General Partner shall seek the written consent of the Partners on the proposed amendment or shall call a meeting to vote thereon and to transact any other business that it may deem appropriate. For purposes of obtaining a written consent, the General Partner may require a response within a reasonable specified time, but not less than fifteen (15) days, and failure to respond in such time period shall constitute a consent which is consistent with the General Partner's recommendation with respect to the proposal. Except as provided in this Agreement (including <u>Sections 13.1.2</u>, <u>13.1.3</u> and <u>13.1.4</u>), a proposed amendment shall be adopted and be effective as an amendment hereto if it is approved by the General Partner and it receives the Consent of Partners holding a majority of the Partnership Units entitled to vote (including Partnership Units held by the General Partner).

13.1.2    <u>Amendments Not Requiring Limited Partner Approval</u>. Notwithstanding <u>Section 13.1.1</u>, but subject to <u>Section 13.1.3</u> and <u>Section 13.1.4</u>, the General Partner shall have the power, without the consent of the Limited Partners, to amend this Agreement as may be required to facilitate or implement any of the following purposes:

(1)    to add to the obligations of the General Partner or surrender any right or power granted to the General Partner or any Affiliate of the General Partner for the benefit of the Limited Partners;

(2)    to reflect the admission, substitution, termination, or withdrawal of Partners in accordance with this Agreement;

(3)    to set forth the designations, rights, powers, duties, and preferences of the holders of any additional Partnership Interests issued pursuant to <u>Article III</u>;

(4)    to reflect a change that does not adversely affect the Limited Partners in any material respect, or to cure any ambiguity, correct or supplement any provision in this Agreement not inconsistent with law or with other provisions of this Agreement, or make other changes with respect to matters arising under this Agreement that will not be inconsistent with law or with the provisions of this Agreement;

(5)     to satisfy any requirements, conditions, or guidelines contained in any order, directive, opinion, ruling or regulation of a U.S. federal, state or local agency or contained in U.S. federal, state or local law;

(6)     to change the name of the Partnership, the location of the principal place of business of the Partnership, the registered agent of the Partnership or the registered office of the Partnership;

(7)     to effect a change that, in the sole discretion of the General Partner, is necessary or appropriate to qualify or continue the qualification of the Partnership as a limited partnership or a partnership in which the limited partners have limited liability under the laws of any state or that is necessary or advisable in the opinion of the General Partner to ensure that the Partnership will not be treated as an association taxable as a corporation or otherwise taxed as an Entity for U.S. federal income tax purposes;

(8)     to effect a change in the Fiscal Year or taxable year of the Partnership and any changes that, in the sole discretion of the General Partner, are necessary or appropriate as a result of a change in the Fiscal Year or taxable year of the Partnership;

(9)     to adopt an amendment that is necessary, in the opinion of counsel to the Partnership, to prevent the Partnership or the General Partner or their directors or officers from in any manner being subjected to the provisions of the Investment Company Act or the Advisers Act;

(10)     to take such actions as are contemplated in <u>Section 6.9.5(b)</u>;

(11)     to adopt any amendment expressly permitted in this Agreement to be made by the General Partner acting alone; and

(12)     to effect any other amendments of a substantially similar nature to the foregoing.

The General Partner shall notify the Limited Partners when any action under this <u>Section 13.1.2</u> is taken in the next regular communication to the Limited Partners; <u>provided</u>, <u>however</u>, that no notice need be given of any amendment of this Agreement to reflect the admission, substitution, termination, or withdrawal of Partners in accordance with this Agreement.

13.1.3    <u>Minimum Consent for Certain Amendments</u>. Notwithstanding the provisions of <u>Sections 13.1.1</u> and <u>13.1.2</u>, no provision of this Agreement that establishes a minimum Percentage Interest of Partnership Units (or any class or series thereof) required to take any action shall be amended, altered, changed, repealed or rescinded in any respect that would have the effect of reducing such voting requirement unless such amendment is approved by the written consent or the affirmative vote of holders of such Percentage Interest that constitutes not less than the voting requirement sought to be reduced. No amendment to this Agreement, nor any adoption of a new limited partnership agreement in lieu of this Agreement, may be effected by a merger, consolidation or other extraordinary transaction involving the

Partnership unless such amendment or the adoption of such new limited partnership agreement has been approved in accordance with the terms of this <u>Section 13.1</u>.

13.1.4    Other    Amendments    Requiring    Limited    Partner    Approval. Notwithstanding anything in this <u>Section 13.1</u> to the contrary, (a) no amendment or modification to this Agreement shall take away any right of any Partner hereunder that is personal to that Partner and different from the rights of other Partners without the Consent of such Partner and (b) no amendment or modification to this Agreement that would adversely affect any Partner in a materially disproportionate manner compared to other Partners shall be effective against such adversely affected Partner without the prior written consent of such adversely affected Partner.

Section 13.2    <u>Meetings of the Partners</u>.

13.2.1    <u>General</u>. Meetings of the Partners may be called by the General Partner and shall be called upon the receipt by the General Partner of a written request by Limited Partners holding twenty-five percent (25%) or more of the aggregate Partnership Units. The call shall state the nature of the business to be transacted. Notice of any such meeting shall be given to all Partners not less than ten (10) days or more than ninety (90) days prior to the date of such meeting. Partners may vote in person or by proxy at such meeting. Whenever the vote or Consent of Partners is permitted or required under this Agreement, such vote or Consent may be given at a meeting of Partners or may be given in accordance with the procedure prescribed in <u>Section 13.2.2</u>. Except as otherwise expressly provided in this Agreement, the Consent of holders of a majority of the aggregate Partnership Units held by the Partners shall control.

13.2.2    <u>Actions Without a Meeting</u>. Any action required or permitted to be taken at a meeting of the Partners may be taken without a meeting if a written consent setting forth the action so taken is signed by Partners who own a majority of the aggregate Partnership Units (or such other percentage as is expressly required by this Agreement). Such written consent may be in one instrument or in several instruments, and shall have the same force and effect as a vote of a majority of the aggregate Partnership Units held by the Partners (or such other percentage as is expressly required by this Agreement). The General Partner shall file any such written consent with the books and records of the Partnership. An action so taken shall be deemed to have been taken at a meeting held on the effective date so certified.

13.2.3    <u>Proxy</u>. Each Limited Partner may authorize any Person or Persons to act for such Limited Partner by proxy on all matters in which a Limited Partner is entitled to participate, including waiving notice of any meeting, or voting or participating at a meeting. Every proxy must be signed by the Limited Partner or such Limited Partner's attorney-in-fact. No proxy shall be valid after the expiration of eleven (11) months from the date thereof unless otherwise provided in the proxy. Every proxy shall be revocable at the pleasure of the Limited Partner executing it, such revocation to be effective upon the Partnership's receipt of written notice thereof.

13.2.4    <u>Conduct of Meeting</u>. Each meeting of Partners shall be conducted by the General Partner or such other Person as the General Partner may appoint pursuant to such rules for the conduct of the meeting as the General Partner or such other Person deems appropriate.

## ARTICLE XIV

## GENERAL PROVISIONS

Section 14.1    <u>Addresses and Notice</u>. In order to be deemed effective, all documents to be delivered and all notices, approvals, authorizations, demands, requests, reports and/or consents to be given or obtained by any party to this Agreement shall be deemed received, unless earlier received, (i) if sent by certified or registered mail, return receipt requested, when actually delivered as aforesaid, except that such delivery shall be prior to 5:00 p.m., recipient's time, on any Business Day and if a notice is not delivered on a Business Day or is delivered after 5:00 p.m., recipient's time, such notice shall be deemed to have been received by such recipient at the commencement of such recipient's first Business Day next following the time of delivery, (ii) if sent by overnight mail or international courier, when actually delivered as aforesaid, except that such delivery shall be prior to 5:00 p.m., recipient's time, on any Business Day and if a notice is not delivered on a Business Day or is delivered after 5:00 p.m., recipient's time, such notice shall be deemed to have been received by such recipient at the commencement of such recipient's first Business Day next following the time of delivery, (iii) if sent by email or facsimile transmission, prior to 5:00 p.m., recipient's time, on any Business Day and if a notice is not transmitted on a Business Day or is transmitted after 5:00 p.m., recipient's time, such notice shall be deemed to have been received by such recipient at the commencement of such recipient's first Business Day next following transmission of such notice; <u>provided</u> that confirmatory notice is sent promptly thereafter by first-class mail, postage prepaid, and (iv) if delivered by hand, on the date of receipt, at the address set forth on the Partner Registry or such other address as the Partner or assignee of Partnership Units shall notify the General Partner in writing.

Section 14.2    <u>Further Action</u>. The parties shall execute and deliver all documents, provide all information and take or refrain from taking all such action as may be necessary or appropriate to achieve the purposes of this Agreement.

Section 14.3    <u>Binding Effect</u>. Subject to the provisions of this Agreement restricting Transfers, all covenants and agreements in this Agreement by or on behalf of any of the parties hereto shall bind and inure to the benefit of their respective successors, heirs, legal representatives, and permitted assigns.

Section 14.4    <u>Creditors</u>. Other than as expressly set forth herein with regard to any Covered Person, this Agreement is solely for the benefit of the parties hereto and (i) none of the provisions of this Agreement shall be for the benefit of, or shall be enforceable by, any creditor of the Partnership and (ii) no provisions of this Agreement shall be deemed to confer upon any other party any remedy, claim, liability, reimbursement, cause of action or other right.

Section 14.5    <u>Waiver</u>. Neither the failure nor any delay on the part of a party to exercise any right, remedy, power or privilege or insist on strict performance under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or

privilege preclude any other or further exercise of the same or of any other right, remedy, power or privilege, nor shall any waiver of any right, remedy, power or privilege with respect to any occurrence be construed as a waiver of such right, remedy, power or privilege with respect to any other occurrence. No waiver shall be effective unless it is in writing and is signed by the party asserted to have granted such waiver.

Section 14.6    <u>Counterparts</u>. This Agreement may be executed and delivered in one or more counterparts (including by means of facsimile or electronic mail transmission), each of which when so executed and delivered shall be deemed an original, none of which need contain the signatures of each of the parties hereto and all of which together shall constitute one and the same instrument binding on all the parties hereto. Each party shall become bound by this Agreement immediately upon affixing its signature hereto.

Section 14.7    <u>Applicable Law</u>. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAWS.

Section 14.8    <u>Waiver of Jury Trial</u>. TO THE EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HEREBY IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 14.9    <u>Forum Selection and Consent to Jurisdiction</u>. ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS AGREEMENT, SHALL BE BROUGHT AND MAINTAINED EXCLUSIVELY IN THE COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN OR IN A UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN. EACH OF THE PARTIES HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN AND OF A UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK LOCATED IN THE BOROUGH OF MANHATTAN FOR THE PURPOSE OF ANY SUCH LITIGATION AS SET FORTH ABOVE. EACH OF THE PARTIES HEREBY EXPRESSLY AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH LITIGATION BROUGHT IN ANY SUCH COURT REFERRED TO ABOVE AND ANY CLAIM THAT ANY SUCH LITIGATION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

Section 14.10    <u>Invalidity of Provisions</u>. Whenever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under Applicable Law, however, if performance of any provision of this Agreement, at the time such performance shall be due, shall transcend the limit of validity prescribed by law, then the obligation to be performed shall be reduced to the limit of such validity; and if any clause or provision contained in this Agreement operates or would operate to invalidate this Agreement, in whole or in part, then such clause or provision only shall be held ineffective, as though not herein contained, and

the remainder of this Agreement shall remain operative and in full force and effect. The parties shall negotiate in good faith a replacement clause or provision as consistent with the ineffective clause or provision as is practicable under law.

Section 14.11 <u>Entire Agreement</u>. This Agreement (and any agreements or other documents referenced herein) contains the entire understanding and agreement among the parties with respect to the subject matter hereof and supersedes any prior written or oral understandings or agreements among them with respect thereto. Except as otherwise expressly provided in this Agreement, no amendment, modification or discharge of this Agreement shall be valid or binding unless set forth in writing and duly executed by each of the parties hereto.

Section 14.12 <u>No Rights as Shareholders</u>. Nothing contained in this Agreement shall be construed as conferring upon the holders of the Partnership Units any rights whatsoever as Shareholders of the General Partner, including any right to receive dividends or other distributions made to Shareholders or to vote or to consent or receive notice as Shareholders in respect to any meeting of Shareholders for the election of members of the Board of Directors or any other matter.

Section 14.13 <u>No Presumption Against Drafter</u>. Each of the parties hereto have jointly participated in the negotiation and drafting of this Agreement. In the event that an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by each of the parties hereto and no presumptions or burdens of proof shall arise favoring any party by virtue of the authorship of any of the provisions of this Agreement.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date first above written.

**GENERAL PARTNER:**

OVATION ACQUISITION I, INC.

By _____
    Name:
    Title:

**LIMITED PARTNERS:**

OVATION ACQUISITION II, L.L.C.

By: _____
    Name:
    Title:

**HUNT POWER HOLDINGS, L.L.C.**

By: _____
    Name:
    Title:

The undersigned hereby withdraws as a limited partner of the Partnership.

[INITIAL LIMITED PARTNER]

By: _____
    Name:
    Title:

**SCHEDULE 5.2**

**EFFECTIVE DATE CAPITAL ACCOUNT BALANCES**

**(To be Updated as of the Effective Date)**

| Partner Name and Address | Capital Account |
|---|---|
| General Partner | $[ |
| | ] |
| Ovation II | $[ |
| | ] |
| Hunt Power Holdings, L.L.C | $0.00 |

**EXHIBIT A**

**PARTNER REGISTRY**
**CAPITAL CONTRIBUTIONS, CAPITAL ACCOUNTS AND PARTNERSHIP UNITS**
**(To be Updated as of the Effective Date)**

| Partner Name and Address | Capital Contributions | Partnership Units |
|---|---|---|
| General Partner | | |
| Ovation Acquisition I, Inc. | $[      ] | [      ] |
| Limited Partners | | |
| Ovation Acquisition II, L.L.C. | $[      ] | [      ] |
| Hunt Power Holdings, L.L.C | $0.00 | [      ]s |

A-1

**EXHIBIT B**

**FORM OF
NOTICE OF REDEMPTION**

The undersigned hereby irrevocably (i) redeems _____ Partnership Units in [OVATION PARTNERS, L.P.] in accordance with the terms of the Agreement of Limited Partnership of [Ovation Partners, L.P.], as amended or restated through the date hereof, and the Redemption Right referred to therein, (ii) surrenders such Partnership Units and all right, title and interest therein and (iii) directs that the Cash Amount or Shares Amount (as determined by the General Partner) deliverable upon exercise of the Redemption Right be delivered to the address specified below, and if Shares are to be delivered, such Shares be registered or placed in the name(s) and at the address(es) specified below. The undersigned hereby represents, warrants, and certifies that the undersigned (a) has marketable and unencumbered title to such Partnership Units, free and clear of the rights of or interests of any other person or entity, (b) has the full right, power and authority to redeem and surrender such Partnership Units as provided herein and (c) has obtained the consent or approval of all persons or entities, if any, having the right to consent or approve such redemption and surrender.

Dated: _____          Name of Limited Partner: _____

_____
(Signature of Limited Partner)

_____
(Street Address)

_____
(City)          (State)          (Zip Code)

Signature Guaranteed by: _____

If Shares are to be issued, issue to:

Name: _____