# **EXHIBIT G**

**Reorganized TCEH Registration Rights Agreement**

**Reorganized TCEH Registration Rights Agreement**
**Summary of Material Terms and Conditions**

This Term Sheet summarizes the material terms and conditions of the Reorganized TCEH Registration Rights Agreement (the "RRA") described in the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code (as may be further amended from time to time, the "Plan"). All capitalized terms used but not defined herein shall have the meanings set forth in the Plan.

| | |
|---|---|
| **Parties** | The parties to the RRA will be any holder who (together with affiliated holders and any investment funds or accounts managed by such holder or affiliated holders) beneficially owns, in the aggregate, at least 5% of the Reorganized TCEH Common Stock as of the Effective Date and other holders who become signatories thereto from time to time in accordance with the terms thereof (collectively, "Holders") and Reorganized TCEH. |
| | One or more Holders who beneficially own, in the aggregate, at least 5% of the outstanding shares of common stock in Reorganized TCEH from time to time are referred to herein as "Demand Holders." |
| **Registrable Securities** | "Registrable Securities" under the RRA will include all shares of common stock in Reorganized TCEH beneficially owned by the Holders, including shares of the Reorganized TCEH Common Stock and any other shares of common stock in Reorganized TCEH issued and acquired after the Effective Date; provided, however, that as to any Registrable Securities, such securities shall cease to constitute Registrable Securities upon the earliest to occur of: (i) the date on which the securities are disposed of by the Holders pursuant to an effective registration statement under the Securities Act of 1933, as amended (the "Securities Act"); (ii) the date on which the securities are disposed of by the Holders pursuant to Rule 144 (or any successor provision) under the Securities Act; and (iii) the date on which the securities cease to be outstanding. |
| **S-1 Shelf, Exchange Act Registration and Listing Requirement** | Immediately following the earlier of (x) a Form 10 or other registration statement under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), registering the common stock in Reorganized TCEH having been declared effective by the Securities and Exchange Commission (the "SEC") or (y) April 30, 2017, Reorganized TCEH will be required to: |

    (i)    file with the SEC a Form S-1 or similar long-form shelf registration statement (the "S-1 Shelf") registering all Registrable Securities requested by Holders to be included therein on or prior to the day after the initial filing of the S-1 Shelf, and use reasonable best efforts to have the S-1 Shelf declared effective by the SEC as soon as reasonably practicable and in no event later than 120 days after the initial filing of the S-1 Shelf;

    (ii)    upon effectiveness of the S-1 Shelf, register its common stock under the Exchange Act if it has not already done so; and

    (iii)    upon the completion of (i) and (ii) above, list its common stock on the New York Stock Exchange or NASDAQ if it has not already done so.

Notwithstanding the foregoing, except as otherwise required by applicable law,

|  |  |
|---|---|
|  | Reorganized TCEH will be permitted to delay compliance with the requirements of clauses (i), (ii) and/or (iii) above for up to six months if a majority of Reorganized TCEH's board of directors (the "Board") determines that such delay is in the best interests of Reorganized TCEH. |

In addition, Reorganized TCEH will be required to use reasonable best efforts to convert the S-1 Shelf into (or file) a Form S-3 or similar short-form shelf registration statement (the "S-3 Shelf" and, together with the S-1 Shelf, the "Shelf") as soon as reasonably practicable after Reorganized TCEH becomes eligible to use the S-3 Shelf form.

Reorganized TCEH will further be required, subject to customary suspension periods, to use reasonable best efforts to keep the Shelf continuously effective until the earliest to occur of (a) the day after all the Registrable Securities covered by the Shelf have been sold and (b) the first date on which there ceases to be any Registrable Securities covered by the Shelf. Notwithstanding the foregoing, after the third anniversary of the date the S-1 Shelf is initially declared effective, plus any period that the Shelf is not kept effective or its use is suspended, Reorganized TCEH may terminate the offering under the Shelf and withdraw the registration statement as long as no Holder beneficially owns at least 5% of the outstanding common stock of Reorganized TCEH and no Holder has a representative on the Board or any right to nominate a representative to the Board (and has not had any such representative or right within the prior 90 days).

Non-marketed, non-underwritten takedowns from the Shelf or any shelf Demand Registration (as defined below) will be unlimited in number and offering size. Underwritten block trades from the Shelf or in connection with any Demand Registration will be unlimited in number but must meet a minimum threshold amount of $25 million. Marketed underwritten offerings from the Shelf or in connection with any Demand Registration will be unlimited in number but must meet a minimum threshold amount of $100 million; provided that Reorganized TCEH will not be required to effect more than four such marketed underwritten offerings within any 12-month period.

**Demand Rights**    At any time following the registration of the common stock of Reorganized TCEH under the Exchange Act, the Demand Holders will have the right to request that the sale of all or any portion of the Registrable Securities held by such Demand Holders be registered under the Securities Act (x) on a Form S-1 or a similar long-form registration statement (a "Long-Form Demand Registration") or (y) if available, on a Form S-3 or a similar short-form registration statement (a "Short-Form Demand Registration" and, together with a Long-Form Demand Registration, a "Demand Registration"), in each case, including a shelf registration statement if requested.

The Demand Holders will not be entitled to initiate more than six Long-Form Demand Registrations. Short-Form Demand Registrations will be unlimited in number. In addition, Reorganized TCEH will not be required to effect more than one Long-Form Demand Registration or Short-Form Demand Registration within any 90-day period. The minimum threshold amount for a Long-Form Demand Registration will be $100 million, and the minimum threshold amount for a Short-Form Demand Registration will be $25 million. No Demand Holder will be entitled to request a Demand Registration if all of its Registrable Securities are registered on

        an effective S-3 Shelf.

        Non-requesting Holders will have customary piggyback registration rights with respect to any Demand Registration.

        Demand Registrations will be subject to customary exceptions, including customary pro rata underwriter cutbacks, customary grace periods between underwritten offerings and Reorganized TCEH's right to defer Demand Registrations under certain circumstances.

**Piggyback Rights**    Holders will have customary piggyback registration rights with respect to any registration of securities by Reorganized TCEH on Form S-1, Form S-3 or any similar long-form or short-form registration statement (subject to customary exceptions), whether or not such securities are registered for Reorganized TCEH's own account (any such registration, a "Company Registration"). To the extent that a Holder's shares of common stock in Reorganized TCEH are registered on a shelf registration statement, such Holder will also have piggyback registration rights with respect to any marketed underwritten takedown from such shelf registration statement.

        Such piggyback registration rights with respect to Company Registrations will be subject to customary exceptions, including customary pro rata underwriter cutbacks and Reorganized TCEH's right to defer the Company Registration under certain circumstances.

**Fees & Expenses**    All customary fees, costs and expenses incurred by Reorganized TCEH in discharging its obligations under the RRA will be borne by Reorganized TCEH. Reorganized TCEH will reimburse or pay, as the case may be, the reasonable fees and reasonable out-of-pocket expenses of one law firm retained by the Holders in connection with the Shelf, any Demand Registration and any piggyback registration rights exercised in connection with any Company Registration. Notwithstanding anything contained herein to the contrary, all underwriting fees, discounts, selling commissions and stock transfer taxes applicable to the sale of Registrable Securities shall be borne by the Holder owning such Registrable Securities.

**Indemnification**    The RRA will contain customary indemnification provisions for the benefit of Reorganized TCEH, Holders and underwriters.

4

| | |
|---|---|
| **Holdback Arrangements** | In connection with underwritten offerings, the RRA will provide for customary holdback arrangements applicable to Reorganized TCEH, its directors and officers and Holders (i) in the case of Reorganized TCEH's initial public offering, for a period (a) beginning upon the earlier of (x) the commencement of the roadshow or (y) 7 days prior to the pricing and (b) ending 180 days after the pricing and (ii) in the case of any other marketed underwritten offering, solely with respect to Holders who beneficially own at least 5% of the outstanding common stock in Reorganized TCEH at the time of such underwritten offering, for a period (a) beginning upon the earlier of (x) the commencement of the roadshow or (y) 7 days prior to the pricing and (b) ending 90 days after the pricing or such earlier date as may be agreed with the underwriters for such underwritten offering.  If requested by the lead underwriter, Holders will enter into lock-up agreements with the underwriters on similar terms in customary form provided that Reorganized TCEH and all directors and officers of Reorganized TCEH at the time of such underwritten offering have entered into such lock-up agreements with the underwriters. |
| **Availability of Information** | At any time when Reorganized TCEH is not subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act, Reorganized TCEH shall make available certain periodic and current information of Reorganized TCEH (including, without limitation, annual, quarterly and current reports) to current and prospective holders of common stock in Reorganized TCEH. |
| **Governing Law** | New York. |