**EXHIBIT J(i)**

TCEH First Lien Debt Term Sheet

[DRAFT – 10/20/15]
PRIVILEGED AND CONFIDENTIAL

TCEH Exit Financing
Summary of Terms

Set forth below is a summary of the anticipated terms for (i) a Revolving Credit Facility and Term Loan Credit Facility (collectively, the "Credit Facilities") and (ii) any senior notes (collectively, the "Senior Notes").  It is merely a summary of selected terms and is not complete and is not a commitment, offer, or agreement in principle to provide financing or amend or otherwise revise any existing financing arrangements or documents.  The actual terms of the Credit Facilities and Senior Notes may be more or less favorable than those set forth below because they will depend on then-existing market conditions and a competitive process.

| | |
|---|---|
| **Borrower/Issuer:** | A new entity (the "Borrower,"  with respect to the Credit Facilities, and the "Issuer," with respect to the Senior Notes) resulting from transactions in connection with emergence from bankruptcy proceedings that succeeds to the business and operations of Texas Competitive Electric Holdings Company LLC. |
| **Guarantors:** | Wholly owned domestic subsidiaries, other than certain customary exceptions consistent with Documentation Principles (as defined below), including unrestricted subsidiaries and immaterial subsidiaries. |

## I.      Revolving Credit Facility:

| | |
|---|---|
| **Amount:** | Subject to the then-existing market conditions, up to $2.0 billion (with an L/C sublimit to be determined). |
| **Pricing:** | Subject to the then-existing market conditions, up to L + 375bps (no LIBOR floor), with stepdowns to be mutually agreed. |
| **Maturity:** | Subject to the then-existing market conditions and Borrower's desire to stagger maturities, 5 years. |
| **Financial Covenant:** | Subject to then-existing market conditions, the Revolving Credit Facility may include a Net First Lien Leverage Ratio (to be defined as the ratio Consolidated Total Net Debt that is secured by a first priority lien on the Collateral to Consolidated EBITDA) that cannot exceed a single level to be agreed, subject to a testing threshold to be agreed. |

## II.     Term Loan Credit Facility:

| | |
|---|---|
| **Amount:** | Up to an amount such that the ratio of the outstanding principal amount of Term Loans, plus the outstanding principal amount of senior notes (including Senior Notes), if any, less any restricted or unrestricted cash (the |

"Consolidated Total Net Debt") to Consolidated EBITDA (as defined in the TCEH Credit Agreement (the "Total Net Leverage Ratio") on the Closing Date would not exceed 5.50 to 1.00.

**Pricing:**  Subject to the then-existing market conditions, up to L + 400bps (up to 100bps LIBOR floor), with stepdowns to be mutually agreed.

Subject to the then-existing market conditions, OID: 98.5 - 99.5.

**Maturity:**  Subject to the then-existing market conditions and Borrower's desire to stagger maturities, 7 years.

**Amortization:**  1% per annum, subject to then-existing market conditions.

**Financial Covenants:**  None.

**Incremental Facilities:**  Subject to then-existing market conditions, Borrower will have the right to add one or more incremental term loan or incremental revolving loan facilities to the Credit Facilities.

**III.   Credit Facility Documentation:**

**Collateral:**  Consistent with Documentation Principles (as defined below); the Collateral may, subject to then-existing market conditions, exclude the following: (a)(i) any fee-owned real property with a fair market value of less than $7.5 million or that is located in a jurisdiction other than the U.S. (with all required mortgages being permitted to be delivered post-closing); (ii) all real property leasehold interests (with no requirement to obtain landlord waivers, estoppels or collateral access letters); (iii) motor vehicles, airplanes and other assets subject to certificates of title; (iv) any governmental licenses or state or local franchises, charters and authorizations to the extent a security interest therein is prohibited or restricted by applicable law (after giving effect to the applicable anti-assignment provisions of the Uniform Commercial Code or other applicable law); (v) pledges and security interests prohibited or restricted by applicable law (with no requirement to obtain the consent of any governmental authority, regulatory authority or third party, including, without limitation, no requirement to comply with the

Federal Assignment of Claims Act or any similar statute) (after giving effect to the applicable anti-assignment provisions of the Uniform Commercial Code or other applicable law); (vi) any lease, license, permit or agreement or any property subject to such agreement or arrangement to the extent that a grant of a security interest therein would violate or invalidate such lease, license, permit or agreement or create a right of termination in favor of any other party thereto (other than Borrower and its subsidiaries) or otherwise require consent thereunder (other than from Borrower and its subsidiaries) (after giving effect to the applicable anti-assignment provisions of the UCC or other applicable law); (vii) any assets to the extent a security interest in such assets could reasonably be expected to result in adverse tax consequences or adverse regulatory consequences, in each case, as reasonably determined by Borrower; (viii) cash and cash equivalents (other than cash and cash equivalents representing proceeds of other "Collateral") and deposit, commodities and securities accounts (including securities entitlements and related assets) (except to the extent perfected solely through the filing of a UCC financing statement) and any other assets requiring perfection through control agreements or perfection by "control" (control agreements or perfection by "control" shall not be required in any event); (ix) any intent-to-use application trademark application prior to the filing of a "Statement of Use" or "Amendment to Allege Use" with respect thereto and acceptance thereof by the USPTO, to the extent, if any, that, and solely during the period, if any, in which, the grant of a security interest therein would impair the validity or enforceability of or void such intent-to-use trademark application under applicable federal law; (x) margin stock and stock and assets of unrestricted subsidiaries, captive insurance subsidiaries, not-for-profit subsidiaries, special purpose entities (including special purpose entities for receivables financings, but in the case of stock of such special purpose entities, only to the extent a pledge thereof is prohibited by applicable law or contractual obligation) and immaterial subsidiaries; (xi) interests in joint ventures and non-wholly owned subsidiaries; (xii) any property subject to a purchase money or capital lease financing arrangement or similar arrangement; (xiii) letter of credit rights (other than to the extent such rights can be perfected solely by filing a UCC

financing statement) and commercial tort claims below a threshold to be mutually agreed; (xiv) any assets acquired in connection with a Permitted Acquisition or other permitted investment subject to liens permitted by the Credit Facilities and which are subject to contractual arrangements prohibiting a lien securing the Credit Facilities that is not incurred in contemplation of such acquisition; (xv) receivables and related assets (or interest therein) sold to any receivables subsidiary or otherwise pledged, factored, transferred or sold in connection with a permitted receivables financing and (xvi) assets where the cost of obtaining a security interest therein exceeds the practical benefit to the Lenders afforded thereby, in each case, as reasonably determined by the Borrower; and (b) any assets located or titled outside the U.S. or assets that require action under the laws of any jurisdiction other than the U.S. to create or perfect a security interest in such assets, including any intellectual property registered in any jurisdiction other than the U.S. (it being understood that there shall be no security agreements or pledge agreements governed under the laws of any jurisdiction other than the U.S.) (the foregoing described in clauses (a)(i) through (xvi) and (b) are, collectively, the "Excluded Assets").

**Negative Covenants:** Consistent with Documentation Principles.

**Events of Default:** Consistent with Documentation Principles.

**Documentation Principles:** Subject to then-existing market conditions, definitive documentation for the Credit Facilities shall be based on that certain Credit Agreement dated as of October 10, 2007, as amended (the "TCEH Credit Agreement") by and among Texas Competitive Electric Holdings, the lenders party thereto and Citibank, N.A. as administrative agent (as adjusted pursuant to the terms above, the "Documentation Principles").

## IV.    Senior Notes:

**Principal Amount:** Up to an amount, if any, such that the Total Net Leverage Ratio on the Closing Date would not exceed 5.50 to 1.00.

**Coupon:** Subject to the then-existing market conditions, up to 8.5%.

**Maturity:** Subject to the then-existing market conditions and

|  | Borrower's desire to stagger maturities, 5-10 years. |
|---|---|
| **Amortization:** | None. |
| **Ranking/Collateral:** | The Senior Notes will be senior obligations *pari passu* with other senior notes of the Issuer.  Depending upon current market conditions at the time of issuance, (i) the Senior Notes may be issued without subsidiary guarantees or may be issued with guarantees from the Guarantors and (ii) all or one or more tranches of the Senior Notes may be secured by a pari passu or junior lien on the Collateral. |
| **Optional Redemption:** | Subject to then-existing market conditions. |
| **Covenants:** | Subject to then-existing market conditions. |
| **Events of Default:** | Subject to then-existing market conditions. |
| **Registration Rights:** | Subject to the then-existing market conditions. |