# EXHIBIT O

**Tax Matters Agreement**

**Exhibit I**

**Form of Tax Matters Agreement**

FORM OF

TAX MATTERS AGREEMENT

BY AND AMONG

ENERGY FUTURE HOLDINGS CORP.,

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

AND

[REORGANIZED TCEH]

DATED AS OF [THE EFFECTIVE DATE]

<u>Table of Contents</u>

<u>Page</u>

ARTICLE I Definitions ...................................................................................................... 3

    Section 1.01   General ............................................................................................. 3
    Section 1.02   Construction.................................................................................... 10
    Section 1.03   References to Time ......................................................................... 11

ARTICLE II Preparation, Filing, and Payment of Taxes Shown Due on Tax Returns................ 11

    Section 2.01   Tax Returns.................................................................................... 11
    Section 2.02   Tax Return Procedures.................................................................... 11
    Section 2.03   Straddle Period Tax Allocation........................................................ 13
    Section 2.04   Allocation of Taxes ........................................................................ 13
    Section 2.05   Allocation of Separation-Related Taxes. .......................................... 15
    Section 2.06   Audits/Redeterminations................................................................ 15
    Section 2.07   Expenses ....................................................................................... 15
    Section 2.08   Timing of Payments ....................................................................... 16

ARTICLE III Indemnification ........................................................................................... 16

    Section 3.01   Indemnification by the EFH Parties.................................................. 16
    Section 3.02   Indemnification by Reorganized TCEH ............................................ 16
    Section 3.03   Characterization of and Adjustments to Payments ............................. 16
    Section 3.04   Timing of Indemnification Payments ................................................ 16
    Section 3.05   Exclusive Remedy ......................................................................... 17
    Section 3.06   No Duplicative Payment ................................................................. 17

ARTICLE IV Refunds, Timing Differences, and Tax Attributes............................................. 17

    Section 4.01   Refunds ........................................................................................ 17
    Section 4.02   Timing Differences ........................................................................ 17

ARTICLE V Tax Proceedings ............................................................................................ 18

    Section 5.01   Notification of Tax Proceedings ...................................................... 18
    Section 5.02   Tax Proceeding Procedures............................................................. 18

ARTICLE VI Intended Tax Treatment................................................................................. 19

    Section 6.01   Restrictions Relating to the Distribution............................................ 19

ARTICLE VII Cooperation ............................................................................................... 20

    Section 7.01   General Cooperation ...................................................................... 20
    Section 7.02   Retention of Records...................................................................... 21
    Section 7.03   Failure to Perform ......................................................................... 21

ARTICLE VIII Miscellaneous............................................................................................ 21

Section 8.01    Governing law ........................................................................... 21
Section 8.02    Dispute Resolution .................................................................... 22
Section 8.03    Tax Sharing Agreements ........................................................... 22
Section 8.04    Interest on Late Payments ........................................................ 22
Section 8.05    Survival of Covenants ............................................................... 22
Section 8.06    Severability ............................................................................... 22
Section 8.07    Entire Agreement ...................................................................... 23
Section 8.08    Assignment ............................................................................... 23
Section 8.09    No Third Party Beneficiaries ................................................... 23
Section 8.10    Affiliates ................................................................................... 23
Section 8.11    Amendments; Waivers .............................................................. 23
Section 8.12    Interpretation ............................................................................ 23
Section 8.13    Counterparts .............................................................................. 24
Section 8.14    Confidentiality .......................................................................... 24
Section 8.15    Waiver of Jury Trial .................................................................. 24
Section 8.16    Jurisdiction; Service of Process ............................................... 24
Section 8.17    Notices ...................................................................................... 25
Section 8.18    Headings .................................................................................... 28
Section 8.19    Effectiveness ............................................................................. 28
Section 8.20    Further Assurances .................................................................... 28

## FORM OF
## TAX MATTERS AGREEMENT

This **TAX MATTERS AGREEMENT** (this "Agreement"), dated as of [the Effective Date] (the "Effective Date"), is entered into by and among Energy Future Holdings Corp., a Texas Corporation ("EFH"), Energy Future Intermediate Holding Company LLC, a Delaware Limited Liability Company ("EFIH" and, together with EFH and each other Person that executes a joinder pursuant to Section 8.20, the "EFH Parties") and [Reorganized TCEH], a Delaware limited liability company and an indirect wholly owned Subsidiary of EFH ("Reorganized TCEH" and, together with the EFH Parties, the "Parties").

RECITALS[1]

**WHEREAS**, on April 29, 2014 EFH and certain entities in which it holds an equity interest (collectively, the "Debtors") commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "Chapter 11 Cases");

**WHEREAS**, the Bankruptcy Court has approved the restructuring of the Debtors pursuant to a confirmed Chapter 11 plan of reorganization (the "Plan");

**WHEREAS**, pursuant to the Plan, Texas Competitive Electric Holdings Company LLC ("TCEH"), a Delaware limited liability company and a wholly owned, indirect subsidiary of EFH, (a) has formed Reorganized TCEH as a new subsidiary of TCEH on or before the Effective Date and (b) incorporated [the Preferred Stock Entity], a Delaware corporation (the "Preferred Stock Entity") as a new subsidiary of TCEH immediately after the Contribution (as defined below);

**WHEREAS**, pursuant to the Plan, on the Effective Date, except for liabilities assumed by Reorganized TCEH pursuant to the Plan, all other Claims (as defined in the Plan) against the TCEH Debtors (as defined in the Plan) will be canceled, and each Holder (as defined in the Plan) of an Allowed Claim (as defined in the Plan) against a TCEH Debtor will have the right to receive its recovery in accordance with the terms of the Plan, and TCEH shall assume the obligations of its subsidiaries that are TCEH Debtors to make distributions pursuant to and in accordance with the Plan that are to be made after the Effective Date;

**WHEREAS**, pursuant to the Plan, immediately following such cancelation, pursuant to the Separation Agreement (as defined in the Plan), (a) TCEH will transfer all of TCEH's interests in its subsidiaries (excluding the stock of TCEH Finance, Inc. ("TCEH Finance")) to Reorganized TCEH; and (b) the EFH Debtors will transfer (i) the equity interests in the Reorganized EFH Shared Services Debtors (or with the consent of TCEH and the TCEH

---

[1]  Note to Draft: Recitals and other descriptive provisions to be appropriately revised/conformed to reflect the Plan, as amended.

Supporting First Lien Creditors (as defined in the Plan), the assets and liabilities of the Reorganized EFH Shared Services Debtors related to the TCEH Debtors' operations) and (ii) with the consent of TCEH and the TCEH Supporting First Lien Creditors, certain other assets, liabilities, and equity interests related to the TCEH Debtors' operations (including the equity interests of non-Debtor EFH Properties Company or the lease for the Debtors' corporate headquarters at "Energy Plaza" held by EFH Properties Company (but not including any cash on hand at EFH Properties Company, which shall be transferred to Reorganized EFH)), in exchange for which TCEH shall receive (i) 100% of the Reorganized TCEH membership interests and (ii) the net Cash proceeds of the Reorganized TCEH Debt (as defined in the Plan), subject to preserving the Intended Tax Treatment (as defined below) (together, the "Contribution");

WHEREAS, pursuant to the Plan, immediately following the Contribution but before the Reorganized TCEH Conversion (as defined below), and consistent with the procedures in Exhibit G of the Plan Support Agreement: (a) Reorganized TCEH will contribute the equity in the Contributed TCEH Debtors (as defined in the Plan), or, potentially, certain assets or joint interests in certain assets, to the Preferred Stock Entity (such contribution to the Preferred Stock Entity of such equity and, potentially such assets, in an amount that is expected to result in the Basis Step-Up (as defined in the Plan)) in exchange for (i) the Preferred Stock Entity's common stock and (ii) the Reorganized TCEH Sub Preferred Stock (as defined in the Plan); (b) immediately thereafter, and pursuant to a prearranged and binding agreement, Reorganized TCEH will sell all of the Reorganized TCEH Sub Preferred Stock to one or more third party investors in exchange for Cash (as defined in the Plan), *provided, however*, that Holders of TCEH First Lien Claims (as defined in the Plan) shall not be permitted to purchase the Reorganized TCEH Sub Preferred Stock; and (c) Reorganized TCEH will distribute such Cash to TCEH to fund recoveries under the Plan (together, the "Preferred Stock Sale")

WHEREAS, pursuant to the Plan, immediately following the Preferred Stock Sale, Reorganized TCEH shall convert from a Delaware limited liability company into a Delaware corporation (the "Reorganized TCEH Conversion");

WHEREAS, pursuant to the Plan, immediately following the Reorganized TCEH Conversion, TCEH will make a Pro Rata (as defined in the Plan) distribution of the Reorganized TCEH Common Stock and the net Cash proceeds of the New Reorganized TCEH Debt and the Preferred Stock Sale, if any, received in the Contribution to Holders of Allowed TCEH First Lien Claims (the "Distribution");

WHEREAS, each of EFCH, TCEH, TCEH Finance, and the Subsidiaries of EFH identified in Annex 1 of the Agreement and Plan of Merger, dated as of August 9, 2015, by and among Hunt Ovation I, L.L.C. ("Parent"), Hunt Ovation II, L.L.C., EFIH, and EFH (the "Merger Agreement") other than the Spin-Off Entities (as defined in the Merger Agreement, will be dissolved and liquidated in accordance with the Plan and applicable law and EFH's direct and indirect equity interests in each of its other Subsidiaries (other than EFIH and the Oncor Entities) will be either (as mutually agreed by EFH and Parent, each acting reasonably) (a) cancelled or abandoned pursuant to the Plan or (b) acquired by Parent with such Subsidiaries being discharged and released, to the fullest extent permitted under applicable law, pursuant to the Plan;

**WHEREAS**, pursuant to the Plan and the Merger Agreement, EFH will merge with and into Parent following the Distribution (and other interim transactions) (the "Merger"), with Parent surviving;

**WHEREAS**, it is intended that, for U.S. federal income tax purposes, (a) the Contribution, the Reorganized TCEH Conversion and the Distribution will qualify as a "reorganization" within the meaning of Sections 368(a)(1)(G), 355, and 356 of the Code, (b) the contribution described in clause (a) of the definition of the Preferred Stock Sale will be treated as a taxable sale of the assets of the Preferred Stock Entity pursuant to Section 1001 of the Code resulting in the Basis Step-Up (together with clause (a), the "Intended Tax Treatment"), and (c) the Merger will qualify as a reorganization under the provisions of Section 368(a) of the Code;

**WHEREAS**, the Parties wish to (a) provide for the payment of Tax liabilities and entitlement to refunds thereof, allocate responsibility for, and cooperation in, the filing and defense of Tax Returns, and provide for certain other matters relating to Taxes and (b) set forth certain covenants and indemnities relating to the preservation of the Intended Tax Treatment; and

**WHEREAS**, this Agreement has been approved by the Bankruptcy Court and will be effective upon the Distribution.  In the event of any conflict between this Agreement and the Plan, the Plan shall govern.

**NOW, THEREFORE**, in consideration of these premises, and of the representations, warranties, covenants, and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

ARTICLE I

Definitions

Section 1.01    General.  As used in this Agreement, the following terms shall have the following meanings.

"Accounting Firm" has the meaning set forth in Section 8.02.

"Additional Preferred Stock Sale Tax" means an amount (but not less than zero) equal to the regular Income Tax liability (and any corollary state and local Tax liability) (excluding any alternative minimum Tax) of the EFH Group in its taxable year in which the Preferred Stock Sale is consummated and attributable to the Preferred Stock Sale, calculated by determining the excess of (i) the EFH Group tax liability (determined, for the avoidance of doubt, by taking into account the gain on the Preferred Stock Sale as Finally Determined) over (ii) the EFH Group tax liability assuming the Preferred Stock Sale did not occur; provided, that for purposes of such calculation, it shall be assumed that (a) the "consolidated year" (within the meaning of Section 1503(e)(2)(B) of the Code) ended on the Effective Date, (b) the EFH Group recognized no income, gain, loss or deduction as a result of transactions occurring outside the ordinary course of business on the Effective Date after the Preferred Stock Sale (other than Deferred Intercompany and ELA Items (if any) and items directly resulting from other transactions

3

expressly contemplated by the Plan), and (c) the Agreed Tax Attributes shall be as reported on the EFH Group's Tax Returns as originally filed, but adjusted to take into account (i) all Finally Determined adjustments to items of income, loss, credit or other Tax-related attribute attributable to or arising from any business contributed to, or otherwise held on the Effective Date by, any Reorganized TCEH Entity (other than EFH Properties Company) (including, for the avoidance of doubt, any adjustments to (x) any interest expense and discharge of indebtedness income with respect to indebtedness of any such entity, TCEH or any Subsidiary of TCEH (other than TCEH Finance), (y) Deferred Intercompany and ELA Items (if any) and (z) that portion of any Section 108(i) Items which relates to the indebtedness of TCEH or any Subsidiary of TCEH (other than TCEH Finance)) and (ii) all Finally Determined adjustments to items of income, loss, credit or other Tax-related attribute attributable to any business retained by any Reorganized EFH Entity or EFH Properties Company (including, for the avoidance of doubt, any adjustments to (x) any interest expense and discharge of indebtedness income with respect to indebtedness of any such entity and (y) that portion of any Section 108(i) Items which does not relate to the indebtedness of TCEH or any Subsidiary of TCEH (other than TCEH Finance)) (but, in the case of this clause (c)(ii), only to the extent that the aggregate (net) of all adjustments described in this clause (c)(ii) results in an increase to the Agreed Tax Attributes).

"Affiliate" means, with respect to any Person, any other Person, directly or indirectly, controlling, controlled by, or under common control with, such Person; *provided that*, notwithstanding the foregoing, Affiliates of EFH shall be deemed to exclude the Reorganized TCEH Entities following the Distribution.

"Agreed Tax Attributes" means 100% of the aggregate amount of net losses, net operating losses, and net capital losses (but only to the extent such net capital losses are deductible under applicable tax law against gain recognized on the Preferred Stock Sale) (in each case, including carryovers), available to the EFH Group as of the Effective Date (determined (a) as if the "consolidated year" (within the meaning of Section 1503(e)(2)(B) of the Code) of the EFH Group ended on the Effective Date and (b) without regard to any income, gain, loss or deduction generated as a result of the Preferred Stock Sale or transactions occurring outside the ordinary course of business on the Effective Date after the Preferred Stock Sale (other than any Deferred Intercompany and ELA Items (if any) and other transactions expressly contemplated by the Plan and the other Definitive Restructuring Documents (as defined in the Plan Support Agreement)), such amount to be determined in accordance with Exhibit G of the Plan Support Agreement .

"Agreement" has the meaning set forth in the Preamble.

"Bankruptcy Code" has the meaning set forth in the Recitals.

"Bankruptcy Court" has the meaning set forth in the Recitals.

"Basis Step-Up" means the increase in the U.S. federal income tax basis in the assets transferred or deemed transferred to the Preferred Stock Entity pursuant to the Preferred Stock Sale.

"Chapter 11 Cases" has the meaning set forth in the Recitals.

4

"Code" means the Internal Revenue Code of 1986, as amended.

"Contribution" has the meaning set forth in the Recitals.

"Covered Transaction" means the Contribution and Distribution, the Preferred Stock Sale, and any other transaction contemplated by the Plan or the Transaction Agreements.

"Debtors" has the meaning set forth in the Recitals.

"Deferred Intercompany and ELA Items" means intercompany items (as such term is defined in Treasury Regulations Section 1.1502-13(b)(2)) and excess loss account (as such term is defined in Treasury Regulations Section 1.1502-19(a)), in each case, of any Subsidiary of TCEH (other than TCEH Finance) that are accelerated into income as a result of the Distribution pursuant to Treasury Regulations Section 1.1502-13(d) or Section 1.1502-19.

"Distribution" has the meaning set forth in the Recitals.

"Due Date" means (a) with respect to a Tax Return, the date (taking into account all valid extensions) on which such Tax Return is required to be filed under applicable law and (b) with respect to a payment of Taxes, the date on which such payment is required to be made to avoid the incurrence of interest, penalties, and/or additions to Tax.

"Effective Date" has the meaning set forth in the Recitals.

"EFH" has the meaning set forth in the Preamble and, for the avoidance of doubt, all references to EFH shall include Parent following the Merger.

"EFH Breach" means a breach of one or more covenants in Article VI by any Reorganized EFH Entity or any of its Affiliates.

"EFH Group" has the meaning set forth in the Plan.

"EFH Parties" has the meaning set forth in the Preamble.

"EFH Shared Services Debtors" means, collectively:  (a) EFH Corporate Services Company; (b) Dallas Power and Light Company, Inc.; (c) EFH CG Holdings Company LP; (d) EFH CG Management Company LLC; (e) Lone Star Energy Company, Inc.; (f) Lone Star Pipeline Company, Inc.; (g) Southwestern Electric Service Company, Inc.; (h) Texas Electric Service Company, Inc.; (i) Texas Energy Industries Company, Inc.; (j) Texas Power and Light Company, Inc.; (k) Texas Utilities Company, Inc.; (l) Texas Utilities Electric Company, Inc.; and (m) TXU Electric Company, Inc.

"EFH Taxes" means (a) any Taxes of the EFH Group for periods (and portion of a Straddle Period) ending on or before the Effective Date that are not specifically included within the definition of Reorganized TCEH Taxes, including, without duplication, (i) any Taxes attributable to or arising from the ownership or operation of any business retained by any Reorganized EFH Entity or EFH Properties Company (including, for the avoidance of doubt, Taxes arising from any adjustment to interest expense and discharge of indebtedness income

with respect to indebtedness of any such entity), in each case, as determined pursuant to <u>Sections 2.03</u> and <u>2.04</u>, (ii) Taxes of the EFH Group other than Reorganized TCEH Taxes, (iii) Income Taxes imposed on a Reorganized TCEH Entity attributable to a Tax-Free Transaction Failure and allocated to the EFH Parties pursuant to <u>Sections 2.05(a)</u> or <u>(b)</u>, (iv) Taxes attributable to the Preferred Stock Sale other than TCEH Preferred Stock Sale Tax, (v) Transfer Taxes allocated to the EFH Parties pursuant to <u>Section 2.04(d)(i)</u>, and (vi) Taxes resulting from any action by any Reorganized EFH Entity outside of the ordinary course of business on the Effective Date after the Distribution, except as a result of any action that is expressly contemplated by the Plan or the Transaction Agreements and (b) any Taxes imposed on any Reorganized EFH Entity for periods (or portion of a Straddle Period) beginning after the Effective Date.

"<u>EFIH</u>" has the meaning set forth in the Preamble.

"<u>Final Determination</u>" means the final resolution of liability for any Tax for any taxable period, by or as a result of (a) a final decision, judgment, decree or other order by any court of competent jurisdiction that can no longer be appealed, (b) a final settlement with the IRS, a closing agreement or accepted offer in compromise under Sections 7121 or 7122 of the Code, or a comparable agreement under the laws of other jurisdictions, (c) any allowance of a Refund in respect of an overpayment of Tax, but only after the expiration of all periods during which such Refund may be recovered by the jurisdiction imposing the Tax or (d) any other final resolution, including by reason of the expiration of the applicable statute of limitations.

"<u>Income Taxes</u>" means any Taxes in whole or in part based upon, measured by, or calculated with respect to net income or profits, net worth or net receipts (including any alternative minimum Tax and the Texas Margin Tax).  For the avoidance of doubt, Income Taxes do not include sales, use, real or personal property, or transfer or similar Taxes.

"<u>Indemnified Party</u>" means, with respect to a matter, a Person that is entitled to seek indemnification under this Agreement with respect to such matter.

"<u>Indemnifying Party</u>" means, with respect to a matter, a Person that is obligated to provide indemnification under this Agreement with respect to such matter.

"<u>Intended Tax Treatment</u>" has the meaning set forth in the Recitals.

"<u>IRS</u>" means the U.S. Internal Revenue Service or any successor thereto, including its agents, representatives, and attorneys acting in their official capacity.

"<u>IRS Submissions</u>" means all submissions to the IRS in connection with requests for the Private Letter Ruling.

"<u>Merger</u>" has the meaning set forth in the Recitals.

"<u>Merger Agreement</u>" has the meaning set forth in the Recitals.

"<u>Non-Income Taxes</u>" means any Taxes other than Income Taxes.

"<u>Notified Action</u>" has the meaning set forth in <u>Section 6.01(c)</u>.

"Opinion" means an opinion (including an Unqualified Tax Opinion) received by a Party with respect to certain Tax aspects of the Covered Transactions.

"Parent" has the meaning set forth in the Recitals.

"Parties" has the meaning set forth in the Preamble.

"Person" or "person" means a natural person, corporation, company, joint venture, individual business trust, trust association, partnership, limited partnership, limited liability company, association, unincorporated organization or other entity, including a governmental authority.

"Plan" has the meaning set forth in the Recitals.

"Plan Support Agreement" means that certain Plan Support Agreement, dated as of August 9, 2015, by and among the Debtors and the other parties thereto.

"Post-Distribution Period" means any taxable period (or portion thereof) beginning after the Effective Date, including for the avoidance of doubt, the portion of any Straddle Period beginning after the Effective Date.

"Preferred Stock" has the meaning set forth in the Recitals.

"Preferred Stock Entity" has the meaning set forth in the Recitals.

"Preferred Stock Sale" has the meaning set forth in the Recitals.

"Private Letter Ruling" means a private letter ruling issued by the IRS addressing the qualification of the Contribution, the Reorganized TCEH Conversion, and the Distribution as a "reorganization" within the meaning of Sections 368(a)(1)(G), 355 and 356 of the Internal Revenue Code and certain other matters, together with any amendments or supplements thereto (including any supplemental ruling obtained by a Party pursuant to Section 6.01(c)).

"Refund" means any refund (or credit in lieu thereof) of Taxes (including any overpayment of Taxes that can be refunded or, alternatively, applied to other Taxes payable), including any interest paid on or with respect to such refund of Taxes.

"Reorganized EFH Entity" means the EFH Parties and any entity that is a Subsidiary of EFH immediately after the Distribution (including, for the avoidance of doubt, EFCH, TCEH and TCEH Finance).

"Reorganized EFH Shared Services Debtors" means the EFH Shared Services Debtors as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

"Reorganized TCEH" has the meaning set forth in the Preamble and, for the avoidance of doubt, all references to Reorganized TCEH shall include Reorganized TCEH following the Contribution.

7

"Reorganized TCEH Breach" means a breach of one or more covenants in Article VI by any Reorganized TCEH Entity or any of its Affiliates.

"Reorganized TCEH Debt" has the meaning set forth in Section 8.05.

"Reorganized TCEH Entity" means Reorganized TCEH or any entity that is a Subsidiary of Reorganized TCEH immediately after the Distribution (which shall include, for the avoidance of doubt, the Reorganized EFH Shared Services Debtors and EFH Properties Company, to the extent the equity interests in such entities are transferred pursuant to the Contribution).

"Reorganized TCEH Taxes" means any (a) Income Taxes imposed on EFH and its Subsidiaries attributable to a Tax-Free Transaction Failure and allocated to Reorganized TCEH pursuant to Section 2.05(c), (b) any Taxes for periods (and the portion of any Straddle Period) ending on or before the Effective Date attributable to or arising from the ownership or operation of any business contributed to, or otherwise held on the Effective Date by, any Reorganized TCEH Entity (other than EFH Properties Company) (including, for the avoidance of doubt, any Taxes resulting from any adjustments to interest expense and discharge of indebtedness income with respect to indebtedness of any such entity, TCEH or any Subsidiary of TCEH (other than TCEH Finance)), as determined pursuant to Sections 2.03 and 2.04, in each case, other than any Taxes resulting from (i) a Tax-Free Transaction Failure, (ii) the Preferred Stock Sale or (iii) any Specified Tax Items, (c) Taxes imposed on any Reorganized TCEH Entity for periods (or portion of a Straddle Period) beginning after the Effective Date, (d) Transfer Taxes allocated to Reorganized TCEH pursuant to Section 2.04(d)(i), (e) TCEH Preferred Stock Sale Tax, and (f) Taxes resulting from any action by any Reorganized TCEH Entity outside of the ordinary course of business on the Effective Date after the Distribution, except as a result of any action that is expressly contemplated by the Plan or the Transaction Agreements.

"Restriction Period" has the meaning set forth in Section 6.01(b).

"Section 108(i) Items" means items of income or gain or other Tax items resulting from the acceleration (pursuant to the Plan Support Agreement) of all discharge of indebtedness income of the EFH Group that was previously deferred under Section 108(i) of the Code.

"Specified Tax Items" means Section 108(i) Items and Deferred Intercompany and ELA Items (if any).

"Straddle Period" means any taxable period that begins on or before and ends after the Effective Date.

"Subsidiary" means, with respect to any Person, any other Person of which at least a majority of the securities or other ownership interests having by their terms ordinary voting power to elect a majority of the board of directors or other persons performing similar functions is directly or indirectly owned or controlled by such Person and/or by one or more of its Subsidiaries; provided, that notwithstanding the foregoing, the Subsidiaries of EFH shall be deemed to exclude Reorganized TCEH and all Subsidiaries thereof.

"Tax" or "Taxes" means any and all U.S. federal, state or local, or foreign, income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall

8

profits, environmental, customs duties, capital stock, franchise, profits, withholding, social security (or similar), unemployment, disability, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever (including any assessment, duty, fee or other charge in the nature of or in lieu of any such tax) and any interest, penalty, or addition thereto, whether disputed or not.

"Tax Attributes" means net operating losses, capital losses, alternative minimum tax credits, investment tax credit carryovers, earnings and profits, foreign tax credit carryovers, overall foreign losses, previously taxed income, separate limitation losses, and any other losses, deductions, credits or other comparable items that could reduce a Tax liability for a past or future taxable period.

"Tax Benefit" means any decrease in Tax payments actually required to be made to a Taxing Authority (or any increase in any Refund otherwise receivable from any Taxing Authority) including any decrease in Tax payments (or increase in any Refund) that actually results from an increase in Tax Attributes (computed on a "with" or "without" basis).

"Tax Cost" means any increase in Tax payments actually required to be made to a Taxing Authority (or any reduction in any Refund otherwise receivable from any Taxing Authority), including any increase in Tax payments (or reduction in any Refund) that actually results from a reduction in Tax Attributes (computed on a "with or without" basis).

"Tax-Free Transaction Failure" means (a) the failure of the Contribution and Distribution to qualify for clause (a) of the definition of the Intended Tax Treatment, and (b) the imposition of any Income Taxes on EFH under Section 355(d) or Section 355(e) of the Code with respect to the Distribution.

"Tax Item" means any item of income, gain, loss, deduction, credit, recapture of credit or any other item which increases, decreases or otherwise impacts Taxes paid or payable.

"Tax Materials" means (a) the Private Letter Ruling, (b) any Opinion, (c) the IRS Submissions, (d) any representation letter from a Party or any Affiliate thereof supporting an Opinion, and (e) any other materials delivered or deliverable by a Party or any Affiliate thereof in connection with the rendering of an Opinion or the issuance by the IRS of the Private Letter Ruling.

"Tax Matter" has the meaning set forth in Section 7.01.

"Tax Proceeding" means any audit, assessment of Taxes, pre-filing agreement, other examination by any Taxing Authority, proceeding, appeal of a proceeding or litigation relating to Taxes, whether administrative or judicial, including proceedings relating to competent authority determinations.

"Tax Return" means any return, report, certificate, form or similar statement or document (including any related or supporting information or schedule attached thereto and any information return or declaration of estimated Tax) supplied to, filed with or required to be supplied to or filed with a Taxing Authority in connection with the payment, determination,

assessment or collection of any Tax or the administration of any laws relating to any Tax, and any amended Tax return or claim for Refund.

"Taxing Authority" means any governmental authority or any subdivision, agency, commission or entity thereof or any quasi-governmental or private body having jurisdiction over the assessment, determination, collection or imposition of any Tax (including the IRS and the Office of the Texas Comptroller of Public Accounts).

"TCEH" has the meaning set forth in the Recitals.

"TCEH Finance" has the meaning set forth in the Recitals.

"TCEH Preferred Stock Sale Tax" means (i) 50% of the alternative minimum Tax (and any corollary state and local Taxes) that results from the limitation on the utilization of the Agreed Tax Attributes to offset the gain attributable to the Preferred Stock Sale under Section 56(d)(1)(A) of the Code and (ii) the Additional Preferred Stock Sale Tax (if any); provided, that in the event of a Tax-Free Transaction Failure (other than as a result of a Reorganized TCEH Breach), the TCEH Preferred Stock Sale Tax shall be zero.

"Texas Margin Tax" means any tax payable pursuant to Section 171.001 et seq. of the Texas Tax Code, as amended.

"Transaction Agreements" has the meaning set forth in the Plan.

"Transfer Taxes" means any transfer, stamp, documentary, sale, use, registration, value-added or other similar Taxes imposed with respect to the Contribution, the Reorganized TCEH Conversion, the Distribution, the Preferred Stock Sale, the Merger or any other transaction contemplated by the Plan.

"Treasury Regulations" means the proposed, final, and temporary income Tax regulations promulgated under the Code, as such regulations may be amended from time to time (including corresponding provisions of succeeding regulations).

"Unqualified Tax Opinion" means a "will" opinion, without substantive qualifications, of a nationally recognized law or accounting firm, which firm is reasonably acceptable to the EFH Parties and Reorganized TCEH, to the effect that a transaction or action will not (i) affect the Intended Tax Treatment and (ii) negate any of the other rulings provided in the Private Letter Ruling. Each of the EFH Parties and Reorganized TCEH acknowledges that Paul, Weiss, Rifkind, Wharton & Garrison LLP, Kirkland & Ellis LLP, Thompson & Knight LLP, and Baker Botts L.L.P. are reasonably acceptable to such entity.

Section 1.02   Construction.  When a reference is made in this Agreement to an Article, a Section, an Exhibit, the Preamble or the Recitals, such reference shall be to an Article, a Section, an Exhibit, the Preamble or the Recitals of this Agreement, respectively, unless otherwise indicated.  Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation."  The words "hereof," "herein," and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement.  The term

"or" is not exclusive.  Capitalized terms not defined herein have the meaning assigned to them in the Merger Agreement. All terms defined in this Agreement shall have the defined meanings when used in any certificate or other document made or delivered pursuant hereto unless otherwise defined herein.  The definitions contained in this Agreement are applicable to the singular as well as the plural forms of such terms and to the masculine as well as to the feminine and neuter genders of such terms.  Unless otherwise specified, any agreement, instrument or statute defined or referred to herein or in any agreement or instrument that is referred to herein means such agreement, instrument or statute as from time to time amended, modified or supplemented, including (in the case of agreements or instruments) by waiver or consent and (in the case of statutes) by succession of comparable successor statutes, and including all attachments thereto and instruments incorporated therein.  References to a person are also to its permitted successors and assigns.

Section 1.03    References to Time.  All references in this Agreement to times of the day shall be to New York City time.

ARTICLE II

Preparation, Filing, and Payment of Taxes Shown Due on Tax Returns

Section 2.01    Tax Returns.

(a)    *Tax Returns Required to be Filed by EFH*.  Consistent with Exhibit H to the Plan Support Agreement, EFH shall prepare and file (or cause to be prepared and filed) each Tax Return required to be filed by a Reorganized EFH Entity (including, for the avoidance of doubt, the U.S. federal income Tax Return of the EFH Group and all state income and franchise Tax Returns including members of the EFH Group for all periods ending on or before the Effective Date) and shall pay, or cause such Reorganized EFH Entity to pay, all Taxes shown to be due and payable on each such Tax Return; *provided that* Reorganized TCEH shall reimburse EFH for any such Taxes that are Reorganized TCEH Taxes.

(b)    *Reorganized TCEH Entity Tax Returns*.  Reorganized TCEH shall prepare and file (or cause to be prepared and filed) each Tax Return required to be filed by a Reorganized TCEH Entity after the Effective Date and shall pay, or cause be paid, all Taxes shown to be due and payable on such Tax Return; *provided that*, the EFH Parties shall jointly and severally reimburse Reorganized TCEH for any such Taxes that are EFH Taxes.

Section 2.02    Tax Return Procedures.

(a)    *Manner of Tax Return Preparation*.  Unless otherwise required by a Taxing Authority or by applicable law, the Parties shall prepare and file all Tax Returns, and take all other actions, in a manner consistent with this Agreement, the Tax Materials, and past practice.  All Tax Returns shall be filed on a timely basis (taking into account applicable extensions) by the Party responsible for filing such Tax Returns under this Agreement.

(b)    *Right to Review Certain Returns Prepared by EFH*.  In the case of any Tax Return described in Section 2.01(a), (i) the portion (if any) of such Tax Return that relates to Reorganized TCEH Taxes or would reasonably be expected to adversely affect the Tax position

11

of any Reorganized TCEH Entity shall (to the extent permitted by law) be prepared in a manner consistent with past practice and the Tax Materials and (ii) EFH shall provide a draft of such Tax Return to Reorganized TCEH for its review and comment at least thirty (30) days prior to the Due Date for such Tax Return or, in the case of any such Tax Return filed on a monthly basis or property Tax Return, ten (10) days. EFH shall consider in good faith any reasonable comment received from Reorganized TCEH at least three (3) days prior to the Due Date for such Tax Return. In the event that neither past practice nor the Tax Materials are applicable to a particular item or matter, EFH shall determine the reporting of such item or matter in good faith in consultation with Reorganized TCEH. The Parties shall negotiate in good faith to resolve all disputed issues. Any disputes that the Parties are unable to resolve shall be resolved by the Accounting Firm pursuant to Section 8.02. In the event that any dispute is not resolved (whether pursuant to good faith negotiations among the Parties or by the Accounting Firm) prior to the Due Date for the filing of any Tax Return, such Tax Return shall be timely filed as prepared by EFH and such Tax Return shall be amended as necessary to reflect the resolution of such dispute in a manner consistent with such resolution. For the avoidance of doubt, the EFH Parties shall be jointly and severally responsible for any interest, penalties or additions to Tax resulting from the late filing of any Tax Return described in Section 2.01(a), except to the extent that such late filing is primarily caused by the failure of any Reorganized TCEH Entity to provide relevant information necessary for the preparation and filing of such Tax Return.

(c)       *Right to Review Certain Returns Prepared by Reorganized TCEH.* In the case of any Tax Return described in Section 2.01(b) that would reasonably be expected to adversely affect the Tax position of any Reorganized EFH Entity, (i) such Tax Return shall (to the extent permitted by law) be prepared in a manner consistent with past practice and the Tax Materials and (ii) Reorganized TCEH shall provide a draft of such Tax Return to EFH for its review and comment at least thirty (30) days prior to the Due Date for such Tax Return, or in the case of any such Tax Return filed on a monthly basis or property Tax Return, ten (10) days. Reorganized TCEH shall consider in good faith any reasonable comment received from EFH at least three (3) days prior to the Due Date for such Tax Return. In the event that neither past practice nor the Tax Materials are applicable to a particular item or matter, Reorganized TCEH shall determine the reporting of such item or matter in good faith in consultation with EFH. The Parties shall negotiate in good faith to resolve all disputed issues. Any disputes that the Parties are unable to resolve shall be resolved by the Accounting Firm pursuant to Section 8.02. In the event that any dispute is not resolved (whether pursuant to good faith negotiations among the Parties or by the Accounting Firm) prior to the Due Date for the filing of any Tax Return, such Tax Return shall be timely filed as prepared by Reorganized TCEH and such Tax Return shall be amended as necessary to reflect the resolution of such dispute in a manner consistent with such resolution. For the avoidance of doubt, Reorganized TCEH shall be responsible for any interest, penalties or additions to Tax resulting from the late filing of any Tax Return described in Section 2.01(b) except to the extent that such late filing is primarily caused by the failure of any Reorganized EFH Entity to provide relevant information necessary for the preparation and filing of such Tax Return.

(d)       *Tax Reporting.* Unless otherwise required by law, the EFH Parties and Reorganized TCEH, as applicable, shall file the appropriate information and statements, as required by Treasury Regulations Sections 1.355-5(a) and 1.368-3, with the IRS, and shall retain

the appropriate information relating to the Contribution and the Distribution as described in Treasury Regulations Sections 1.355-5(d) and 1.368-3(d).

(e)    *Amendments*.  Any amendment of any Tax Return described in <u>Section 2.01</u> of any Reorganized TCEH Entity shall be subject to the same procedures required for the preparation of such type of Tax Return of such Reorganized TCEH Entity pursuant to this <u>Section 2.02</u>.  Any amendment of any Tax Return described in <u>Section 2.01</u> of any Reorganized EFH Entity shall be subject to the same procedures required for the preparation of such type of Tax Return of such Reorganized EFH Entity pursuant to this <u>Section 2.02</u>.

Section 2.03    <u>Straddle Period Tax Allocation</u>.  To the extent permitted by law, the EFH Parties and Reorganized TCEH shall elect to close the taxable year of each Reorganized TCEH Entity as of the close of the Effective Date.  In the case of any Straddle Period, the amount of any Income Taxes attributable to the portion of the Straddle Period ending on, or beginning after, the Effective Date shall be made by means of a closing of the books and records of such Reorganized TCEH Entity as of the close of the Effective Date; *provided that* in the case of Non-Income Taxes that are periodic Taxes (e.g., property Taxes) and exemptions, allowances, and deductions that are calculated on an annual basis (such as depreciation deductions), such Taxes, exemptions, allowances, and deductions shall be allocated between the portion of the Straddle Period ending at the end of the Effective Date and the portion beginning after the Effective Date based upon the ratio of (a) the number of days in the relevant portion of the Straddle Period to (b) the number of days in the entire Straddle Period; *provided, however*, that in allocating any such exemptions, allowances, or deductions (or increase in such amounts) between the two periods that comprise a Straddle Period, any such items that relate to an asset or property that was sold, acquired or improved during the Straddle Period shall be allocated on a daily basis solely among the days in the Straddle Period during which such asset was owned or such improvement existed; *provided further*, that Taxes that are properly allocable (based on, among other relevant factors, factors set forth in Treasury Regulations Section 1.1502-76(b)(1)(ii)(B)) to the portion of the Effective Date after the Distribution, shall be allocable to the portion of the Straddle Period beginning after the Effective Date.

Section 2.04    <u>Allocation of Taxes</u>.

(a)    *Income Taxes*.  Subject to Section 2.04(b), Income Taxes (other than Taxes resulting from (x) a Tax-Free Transaction Failure, (y) the Preferred Stock Sale or (z) except in cases where there has been a Tax-Free Transaction Failure, any Specified Tax Items) shall be allocated in accordance with past practices and as follows:

(i)    In the case of U.S. federal regular Income Taxes, in proportion to the separate taxable income (calculated in accordance with Treasury Regulations Section 1.1552-1(a)(1) and determined without regard to any gain attributable to the Preferred Stock Sale) attributable to any business retained by any Reorganized EFH Entity or EFH Properties Company (including, for the avoidance of doubt, any interest expense and discharge of indebtedness income with respect to indebtedness of any such entity), on the one hand, and any business contributed to (or otherwise held on the Effective Date by) any Reorganized TCEH Entity (other than EFH Properties Company) (including, for the avoidance of doubt, any interest expense and discharge of indebtedness income with

13

respect to indebtedness of any such entity, TCEH or any Subsidiary of TCEH (other than TCEH Finance)), on the other hand; and

> (ii)    In the case of Texas Margin Tax, in proportion to the separate taxable margins (calculated in a manner consistent with Treasury Regulations Section 1.1552-1(a)(1) and determined without regard to any gain attributable to the Preferred Stock Sale) attributable to any business retained by, any Reorganized EFH Entity or EFH Properties Company (including, for the avoidance of doubt, any interest expense and discharge of indebtedness income with respect to indebtedness of any such entity), on the one hand, and any business contributed to (or otherwise held on the Effective Date by) any Reorganized TCEH Entity (other than EFH Properties Company) (including, for the avoidance of doubt, any interest expense and discharge of indebtedness income with respect to indebtedness of any such entity, TCEH or any Subsidiary of TCEH (other than TCEH Finance)), on the other hand.

(b)    *Alternative Minimum Taxes*. Alternative minimum Taxes (other than Taxes resulting from (x) a Tax-Free Transaction Failure, (y) the Preferred Stock Sale or (z) except in cases where there has been a Tax-Free Transaction Failure, any Specified Tax Items) shall be allocated between the EFH Parties, on the one hand, and Reorganized TCEH, on the other hand, in proportion to the respective separate amounts of alternative minimum tax each of the Reorganized EFH Entities and EFH Properties Company, on the one hand, and the Reorganized TCEH Entities (other than EFH Properties Company), on the other hand, would have if each such group separately determined its alternative minimum tax based on items attributable to any business retained by any Reorganized EFH Entity or EFH Properties Company, on the one hand, and any business contributed to (or otherwise held on the Effective Date by) any Reorganized TCEH Entity (other than EFH Properties Company), on the other hand.

(c)    *Non-Income Taxes*. Non-Income Taxes shall be allocated between the EFH Parties, on the one hand, and Reorganized TCEH, on the other hand, based on the applicable items attributable to or arising from any business retained by any Reorganized EFH Entity or EFH Properties Company, on the one hand, and any business contributed to (or otherwise held on the Effective Date by) any Reorganized TCEH Entity (other than EFH Properties Company), on the other hand, that contribute to such Taxes (e.g., sales Taxes and value added Taxes shall be allocated to the EFH Parties to the extent arising from taxable sales made by any business retained by any Reorganized EFH Entity or EFH Properties Company).  In the event that any Non-Income Tax is not attributable to (and does not arise from) any items relating to any business (e.g., capital Taxes imposed based on the authorized stock), such Non-Income Taxes shall be allocated between the EFH Parties, on the one hand, and Reorganized TCEH, on the other hand, in proportion to the net taxable income of any business retained by any Reorganized EFH Entity or EFH Properties Company, on the one hand, and any business contributed to (or otherwise held on the Effective Date by) any Reorganized TCEH Entity (other than EFH Properties Company), on the other hand.

(d)    *Other Taxes*.

(i)     Transfer Taxes, if any, shall be allocated fifty percent (50%) to the EFH Parties and fifty percent (50%) to Reorganized TCEH.

(ii)    Income Taxes attributable to a Tax-Free Transaction Failure shall be allocated as set forth in <u>Section 2.05</u>.

(iii)   TCEH Preferred Stock Sale Tax shall be allocated to Reorganized TCEH.

(iv)    Except in cases where there has been a Tax-Free Transaction Failure, Taxes resulting from any Specified Tax Items shall be allocated to the EFH Parties.

(e)     *Allocation of Tax Attributes*. Tax Attributes, if any, remaining after the Distribution (other than net operating losses) shall be allocated in accordance with the Private Letter Ruling or, if not addressed in the Private Letter Ruling, between the Reorganized EFH Entities, on the one hand, and the Reorganized TCEH Entities, on the other hand, in accordance with the Code and Treasury Regulations, including Treasury Regulations Section 1.1502-76 (and any applicable state, local and foreign Laws). The allocation of such Tax Attributes shall be determined by treating the Reorganized TCEH Entities as one consolidated group and the Reorganized EFH Entities as a separate and distinct consolidated group. Any disputes shall be resolved by the Accounting Firm in accordance with <u>Section 8.02</u>. The EFH Parties and Reorganized TCEH hereby agree to compute all Taxes consistently with the determination of the allocation of Tax Attributes pursuant to this <u>Section 2.04(e)</u> unless otherwise required by a Final Determination.

Section 2.05    Allocation of Separation-Related Taxes.

(a)     *No-Fault*. Income Taxes attributable to a Tax-Free Transaction Failure, to the extent not allocated pursuant to <u>Sections 2.05(b)</u> or <u>(c)</u>, shall be allocated to the EFH Parties.

(b)     *EFH Breach*. Income Taxes attributable solely to a Tax-Free Transaction Failure as a result of an EFH Breach shall be allocated to the EFH Parties.

(c)     *Reorganized TCEH Breach*. Incomes Taxes attributable solely to a Tax-Free Transaction Failure as a result of Reorganized TCEH Breach shall be allocated to Reorganized TCEH.

Section 2.06    <u>Audits/Redeterminations</u>.   Any redetermined Taxes or Tax Attributes resulting from an audit shall be allocated between the EFH Parties, on the one hand, and Reorganized TCEH, on the other hand, in the same manner as they would have been allocated had the redetermined amounts been known at the time the original Tax liability was computed.

Section 2.07    <u>Expenses</u>.   Except as provided in <u>Section 8.02</u> in respect of the Accounting Firm, each Party shall bear its own expenses incurred in connection with this <u>Article II</u>.

Section 2.08   Timing of Payments.   Any reimbursement of Taxes under Section 2.01 shall be made upon the later of (a) two (2) business days before the Due Date of such payment of such Taxes and (b) ten (10) business days after the party required to make such reimbursement has received notice from the party entitled to such reimbursement. For the avoidance of doubt, a party may provide notice of reimbursement of Taxes prior to the time such Taxes were paid, and such notice may represent a reasonable estimate (provided that the amount of reimbursement shall be based on the actual Tax liability and not on such reasonable estimate).

ARTICLE III

Indemnification

Section 3.01   Indemnification by the EFH Parties.   The EFH Parties, on a joint and several basis, shall pay (or cause to be paid), and shall indemnify and hold each Reorganized TCEH Entity harmless from and against, without duplication, all EFH Taxes and all losses or damages arising out of, resulting from or relating to any breach by any Reorganized EFH Entity of any EFH Party representation, warranty, covenant or agreement in this Agreement.

Section 3.02   Indemnification by Reorganized TCEH.   Reorganized TCEH shall pay (or cause to be paid), and shall indemnify and hold each Reorganized EFH Entity harmless from and against, without duplication, all Reorganized TCEH Taxes and all losses or damages arising out of, resulting from or relating to any breach by any Reorganized TCEH Entity of any Reorganized TCEH representation, warranty, covenant or agreement in this Agreement.

Section 3.03   Characterization of and Adjustments to Payments.

(a)   In the absence of a Final Determination to the contrary, for all Tax purposes, the EFH Parties and Reorganized TCEH shall treat or cause to be treated any payment required by this Agreement (other than any payment treated for Tax purposes as interest) as either a contribution by EFH to Reorganized TCEH or a distribution by Reorganized TCEH to EFH, as the case may be, occurring immediately prior to the Effective Date.

(b)   Any indemnity payment pursuant to this Agreement shall be (A) increased to include (i) all reasonable accounting, legal, and other professional fees and court costs and damages incurred by the Indemnified Party in connection with such indemnity payment and (ii) any Tax Cost resulting from the receipt of (or entitlement to) such indemnity payment and (B) decreased to account for any Tax Benefit that the Indemnified Party actually realizes by way of a Refund or a decrease in Taxes reported on a filed Tax Return (in or with respect to a taxable year that ends on or before December 31, 2021) in connection with the incurrence or the payment by the Indemnified Party of such fees or costs or indemnifiable amounts determined using a "with and without" methodology (treating any deductions attributable to such fees or costs or indemnifiable amounts as the last items claimed for any taxable year, including after the utilization of any available net operating loss carryovers).

Section 3.04   Timing of Indemnification Payments.   Indemnification payments in respect of any liabilities for which an Indemnified Party is entitled to indemnification pursuant to this Article III shall be paid by the Indemnifying Party to the Indemnified Party within ten (10)

16

days after written notification thereof by the Indemnified Party, including reasonably satisfactory documentation setting forth the basis for, and calculation of, the amount of such indemnification payment.

Section 3.05    <u>Exclusive Remedy</u>.    Anything to the contrary in this Agreement notwithstanding, the EFH Parties and Reorganized TCEH hereby agree that the sole and exclusive monetary remedy of a party for any breach or inaccuracy of any representation, warranty, covenant or agreement contained in <u>Section 6.01</u> shall be the indemnification rights set forth in this <u>Article III</u>.

Section 3.06    <u>No Duplicative Payment</u>.    Notwithstanding anything to the contrary in this Agreement, it is intended that the provisions of this Agreement will not result in a duplicative payment of any amount required to be paid under any other Transaction Agreement, and this Agreement shall be construed accordingly.

ARTICLE IV

<u>Refunds, Timing Differences, and Tax Attributes</u>

Section 4.01    <u>Refunds</u>.

(a)    Except as provided in <u>Section 4.02</u>, the EFH Parties shall be entitled to all Refunds of Taxes for which an EFH Party is responsible pursuant to <u>Article III</u>, and Reorganized TCEH shall be entitled to all Refunds of Taxes for which Reorganized TCEH is responsible pursuant to <u>Article III</u>.    A Party receiving a Refund to which the other Party is entitled pursuant to this Agreement shall pay the amount to which such other Party is entitled (less any Tax or other reasonable out-of-pocket costs incurred by the first Party in receiving such Refund) within ten (10) days after the receipt of the Refund.

(b)    To the extent that the amount of any Refund under this <u>Section 4.01</u> is later reduced by a Taxing Authority or in a Tax Proceeding, such reduction shall be allocated to the Party to which such Refund was allocated pursuant to this <u>Section 4.01</u> and an appropriate adjusting payment shall be made.

Section 4.02    <u>Timing Differences</u>.    If pursuant to a Final Determination any Tax Attribute (including those allocated pursuant to <u>Section 2.04(e)</u>) is made allowable to a Reorganized TCEH Entity as a result of an adjustment to any Taxes for which an EFH Party is responsible hereunder (other than Taxes attributable to a Tax-Free Transaction Failure) and such Tax Attribute would not have arisen or been allowable but for such adjustment, or if pursuant to a Final Determination any Tax Attribute is made allowable to a Reorganized EFH Entity as a result of an adjustment to any Taxes for which Reorganized TCEH is responsible hereunder and such Tax Attribute would not have arisen or been allowable but for such adjustment, Reorganized TCEH or the EFH Parties (on a joint a several basis), as the case may be, shall make a payment to either the applicable EFH Party or Reorganized TCEH, as appropriate, within thirty (30) days after such Party (or its Affiliates) actually realizes a Tax benefit by way of a Refund or a decrease in Taxes reported on a filed Tax Return (in or with respect to a taxable year that ends on or before December 31, 2021) that is attributable to such Tax Attribute, determined

17

using a "with and without" methodology (treating any deductions or amortization attributable to such Tax Attributes as the last items claimed for any taxable year, including after the utilization of any available net operating loss carryovers), *provided that* no payment shall be made under this Section unless Reorganized TCEH or the applicable EFH Party, as the case may be, has previously paid the Tax adjustment or indemnified the other Party for such Tax adjustment.  In the event of any overlap between Section 3.03 and this Section 4.02, this Section 4.02 shall apply and Section 3.03 shall not apply.

ARTICLE V

Tax Proceedings

Section 5.01    Notification of Tax Proceedings.    Within ten (10) days after an Indemnified Party becomes aware of the commencement of a Tax Proceeding that may give rise to an indemnity payment pursuant to Article III, such Indemnified Party shall notify the Indemnifying Party in writing of such Tax Proceeding, and thereafter shall promptly forward or make available to the Indemnifying Party copies of notices and communications relating to such Tax Proceeding.  The failure of the Indemnified Party to notify the Indemnifying Party in writing of the commencement of any such Tax Proceeding within such ten (10) day period or promptly forward any further notices or communications shall not relieve the Indemnifying Party of any obligation which it may have to the Indemnified Party under this Agreement except to the extent (and only to the extent) that the Indemnifying Party is actually materially prejudiced by such failure.

Section 5.02    Tax Proceeding Procedures.

(a)    EFH.    EFH shall be entitled to contest, compromise, and settle any adjustment that is proposed, asserted or assessed pursuant to any Tax Proceeding with respect to any Tax Return it is responsible for preparing pursuant to Article II; *provided that* to the extent that such Tax Proceeding relates to Reorganized TCEH Taxes or would reasonably be expected to materially adversely affect the Tax position of any Reorganized TCEH Entity for any Post-Distribution Period, EFH shall (i) keep Reorganized TCEH informed in a timely manner of the material actions proposed to be taken by EFH with respect to such Tax Proceeding, (ii) permit Reorganized TCEH at its own expense to participate in the aspects of such Tax Proceeding that relate to Reorganized TCEH Taxes, and (iii) not settle any aspect of such Tax Proceeding that relates to Reorganized TCEH Taxes without the prior written consent of Reorganized TCEH, which shall not be unreasonably withheld, delayed or conditioned. Notwithstanding the foregoing, Reorganized TCEH shall have the right to control any Tax Proceeding that relates primarily to Taxes for which Reorganized TCEH has an indemnification obligation pursuant to Section 3.02.

(b)    Reorganized TCEH.    Except as otherwise provided in Section 5.02(a), Reorganized TCEH shall be entitled to contest, compromise, and settle any adjustment that is proposed, asserted or assessed pursuant to any Tax Proceeding with respect to any Tax Return it is responsible for preparing pursuant to Article II; *provided that* to the extent that such Tax Proceeding relates to EFH Taxes or would reasonably be expected to materially adversely affect the Tax position of any Reorganized EFH Entity, Reorganized TCEH shall (i) keep EFH

informed in a timely manner of the material actions proposed to be taken by Reorganized TCEH with respect to such Tax Proceeding, (ii) permit EFH at its own expense to participate in the aspects of such Tax Proceeding that relate to EFH Taxes, and (iii) not settle any aspect of such Tax Proceeding that relates to EFH Taxes without the prior written consent of EFH, which shall not be unreasonably withheld, delayed or conditioned. Notwithstanding the foregoing, EFH shall have the right to control any Tax Proceeding that relates primarily to Taxes for which EFH has an indemnification obligation pursuant to Section 3.01.

ARTICLE VI

Intended Tax Treatment

Section 6.01    Restrictions Relating to the Distribution.

(a)    *General*.  Following the Distribution, (i) the EFH Parties will not (and will cause each other Reorganized EFH Entity not to) take any action (or refrain from taking any action) which is inconsistent with the facts presented and the representations made prior to the Effective Date in the Tax Materials and (ii) Reorganized TCEH will not (and will cause each other Reorganized TCEH Entity not to) take any action (or refrain from taking any action) which is inconsistent with the facts presented and the representations made prior to the Effective Date in the Tax Materials. Each of the EFH Parties and Reorganized TCEH covenants and agrees that it will not take, and will cause its respective Affiliates to refrain from taking, any position on any Tax Return that is inconsistent with the Intended Tax Treatment, except as required by a Final Determination.

(b)    *Restrictions*.  Without derogating from the generality of Section 6.01(a), following the Distribution and prior to the first day following the second anniversary of the Effective Date (the "Restriction Period"), each EFH Party and Reorganized TCEH shall, and except with respect to clause (iii) of this Section 6.01(b), shall cause each of its respective Subsidiaries set forth on Exhibit A to:

(i)    continue the active conduct of each trade or business (for purposes of Section 355(b) of the Code and the Treasury Regulations thereunder) (A) that it was engaged in immediately prior to the Distribution (taking into account Section 355(b)(3) of the Code), (B) that was being relied upon for purposes of satisfying the requirements of Section 355(b) of the Code and the Treasury Regulations thereunder and (C) the substantial assets of which are identified on Exhibit B;

(ii)    continue to hold certain assets identified on Exhibit B and held at the time of the Distribution;

(iii)    not dissolve or liquidate or take any action that is a liquidation for U.S. federal income tax purposes;

(iv)    not merge or consolidate with any other Person with such other Person surviving the merger or consolidation in a transaction that does not qualify as a reorganization under Section 368(a) of the Code;

19

(v)     not redeem or otherwise repurchase (directly or indirectly through an Affiliate) any of its equity other than pursuant to open market stock repurchase programs meeting the requirements of Section 4.05(1)(b) of Rev. Proc. 96-30, 1996-1 C.B. 696; and

(vi)     not directly or indirectly acquire any of the Preferred Stock.

(c)     *Certain Exceptions*.  Notwithstanding the restrictions imposed by Section 6.01(b), during the Restriction Period, the EFH Parties and Reorganized TCEH may proceed with any of the actions or transactions described therein, if:

(i)     such action or transaction is described in (or is otherwise consistent with) the facts in the Private Letter Ruling;

(ii)     a supplemental private letter ruling is received from the IRS in form and substance reasonably satisfactory to EFH and Reorganized TCEH to the effect that such action or transaction will not affect the Intended Tax Treatment of any applicable transaction;

(iii)     EFH or Reorganized TCEH, as the case may be, obtains an Unqualified Tax Opinion with respect to such action or transaction at least thirty (30) days prior to effecting such action or transaction;

(iv)     such action is the issuing of stock or options to employees under a compensation plan adopted after the Distribution; or

(v)     such action by the EFH Parties and/or their Affiliates is approved in writing by Reorganized TCEH and such action by Reorganized TCEH and/or its Affiliates is approved in writing by EFH.

If the EFH Parties, on the one hand, or Reorganized TCEH, on the other, notifies the other Party that it desires to take one of the actions described in Section 6.01(b) (a "Notified Action"), the EFH Parties and Reorganized TCEH shall cooperate in obtaining a supplemental private letter ruling from the IRS or an Unqualified Tax Opinion for the purpose of permitting the EFH Parties or Reorganized TCEH to take the Notified Action.

ARTICLE VII

Cooperation

Section 7.01     General Cooperation.  The Parties shall each cooperate fully (and each shall cause its respective Subsidiaries to cooperate fully) with all reasonable requests in writing or via e-mail from another Party, or from an agent, representative or advisor to such Party, in connection with the preparation and filing of Tax Returns, claims for Refunds, Tax Proceedings, Tax ruling requests, and calculations of amounts required to be paid pursuant to this Agreement, in each case, related or attributable to or arising in connection with Taxes of any of the Parties or their respective Subsidiaries covered by this Agreement and the establishment of any reserve required in connection with any financial reporting (a "Tax Matter").  Such cooperation shall

20

include the provision of any information reasonably necessary or helpful in connection with a Tax Matter and shall include at each Party's own cost:

>          (i)      the provision, in hard copy and electronic forms, of any Tax Returns of the Parties and their respective Subsidiaries, books, records (including information regarding ownership and Tax basis of property), documentation, and other information relating to such Tax Returns, including accompanying schedules, related work papers, and documents relating to rulings or other determinations by Taxing Authorities;

>          (ii)     the execution of any document (including any power of attorney) reasonably requested by another Party in connection with any Tax Proceedings of any of the Parties or their respective Subsidiaries, or the filing of a Tax Return or a Refund claim of the Parties or any of their respective Subsidiaries; and

>          (iii)    the use of the Party's reasonable best efforts to obtain any documentation in connection with a Tax Matter.

Each Party shall make its employees, advisors, and facilities available, without charge, on a reasonable and mutually convenient basis in connection with the foregoing matters in a manner that does not interfere with the ordinary business operations of such Party.

Section 7.02    Retention of Records.    The EFH Parties and Reorganized TCEH shall retain or cause to be retained all Tax Returns, schedules, and work papers, and all material records or other documents relating thereto in their possession, including all such electronic records, and shall maintain all hardware necessary to retrieve such electronic records, in all cases until sixty (60) days after the expiration of the applicable statute of limitations (including any waivers or extensions thereof) of the taxable periods to which such Tax Returns and other documents relate or until the expiration of any additional period that any Party reasonably requests, in writing, with respect to specific material records and documents.  A Party intending to destroy any material records or documents shall provide the other Party with reasonable advance notice and the opportunity to copy or take possession of such records and documents.  The Parties will notify each other in writing of any waivers or extensions of the applicable statute of limitations that may affect the period for which the foregoing records or other documents must be retained.

Section 7.03    Failure to Perform.    If a Party materially fails to comply with any of its obligations set forth in Section 7.01 or Section 7.02 upon reasonable request and notice by the other Party, and such failure results in the imposition of additional Taxes, the non-performing Party shall be liable in full for such additional Taxes notwithstanding anything to the contrary in this Agreement.

ARTICLE VIII

Miscellaneous

Section 8.01    Governing law.    This Agreement and all issues and questions concerning the construction, validity, enforcement, and interpretation of this Agreement (and all Schedules

21

and Exhibits) shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. In furtherance of the foregoing, the internal laws of the State of Delaware shall control the interpretation and construction of this Agreement (and all Schedules and Exhibits), even though under that jurisdiction's choice of law or conflict of law analysis, the substantive law of some other jurisdiction would ordinarily apply.

Section 8.02    Dispute Resolution.  In the event of any dispute among the Parties as to any matter covered by Section 2.02 and Section 2.04, the Parties shall appoint a nationally recognized independent public accounting firm (the "Accounting Firm") to resolve such dispute. In this regard, the Accounting Firm shall make determinations with respect to the disputed items based solely on representations made by the EFH Parties and Reorganized TCEH and their respective representatives, and not by independent review, and shall function only as an expert and not as an arbitrator and shall be required to make a determination in favor of one Party only. The Parties shall require the Accounting Firm to resolve all disputes no later than thirty (30) days after the submission of such dispute to the Accounting Firm and agree that all decisions by the Accounting Firm with respect thereto shall be final and conclusive and binding on the Parties. The Accounting Firm shall resolve all disputes in a manner consistent with this Agreement. The Parties shall require the Accounting Firm to render all determinations in writing and to set forth, in reasonable detail, the basis for such determination.  The fees and expenses of the Accounting Firm shall be borne equally by the Parties.  For the avoidance of doubt, any dispute among the Parties as to any matter not covered by Section 2.02 or Section 2.04 shall be governed by the provisions set forth in Section 8.16.

Section 8.03    Tax Sharing Agreements.  All Tax sharing, indemnification, and similar agreements, written or unwritten, as between a Reorganized EFH Entity, on the one hand, and a Reorganized TCEH Entity, on the other (other than this Agreement and any other agreement for which Taxes is not the principal subject matter), shall be or shall have been terminated (and, to the extent provided under the Plan, settled) no later than the Effective Date and, after the Effective Date, no Reorganized EFH Entity or Reorganized TCEH Entity shall have any further rights or obligations under any such Tax sharing, indemnification or similar agreement, except as provided in the Plan.

Section 8.04    Interest on Late Payments.  With respect to any payment among the Parties pursuant to this Agreement not made by the due date set forth in this Agreement for such payment, the outstanding amount will accrue interest at a rate per annum equal to the rate in effect for underpayments under Section 6621 of the Code from such due date to and including the payment date.

Section 8.05    Survival of Covenants.  Except as otherwise contemplated by this Agreement, the covenants and agreements contained herein to be performed following the Distribution shall survive the Distribution in accordance with their respective terms.

Section 8.06    Severability.  If any provision of this Agreement or the application of any such provision to any Person or circumstance shall be declared judicially to be invalid, unenforceable or void, such decision shall not have the effect of invalidating or voiding the

remainder of this Agreement, it being the intent and agreement of the Parties that this Agreement shall be deemed amended by modifying such provision to the extent necessary to render it valid, legal, and enforceable to the maximum extent permitted while preserving its intent or, if such modification is not possible, by substituting therefor another provision that is valid, legal, and enforceable and that achieves the original intent of the Parties.

Section 8.07    Entire Agreement.    This Agreement, the Exhibits, the other Transaction Agreements, the Plan and the other documents referred to herein shall constitute the entire agreement among the Parties with respect to the subject matter hereof and shall supersede all previous negotiations, commitments, and writings with respect to such subject matter.  Except as otherwise expressly provided herein, in the case of any conflict between the terms of this Agreement and the terms of any other agreement, the terms of this Agreement shall control.

Section 8.08    Assignment.    Neither this Agreement nor any of the rights, benefits or obligations hereunder may be assigned by any of the Parties (whether by operation of law or otherwise) without the prior written consent of the other Parties, and any purported assignment without such consent shall be null and void.  Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of, and be enforceable by the Parties and their respective successors and permitted assigns.

Section 8.09    No Third Party Beneficiaries.    Nothing in this Agreement, express or implied, is intended to or shall confer upon any Person (other than the Parties and their respective successors and permitted assigns) any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement, and, except as provided in Article III relating to certain indemnitees, no Person shall be deemed a third party beneficiary under or by reason of this Agreement.

Section 8.10    Affiliates.    Each EFH Party shall cause to be performed, and hereby guarantees the performance of, all actions, agreements, and obligations set forth herein to be performed by an Affiliate of such EFH Party, and Reorganized TCEH shall cause to be performed, and hereby guarantees the performance of, all actions, agreements, and obligations set forth herein to be performed by an Affiliate of Reorganized TCEH.

Section 8.11    Amendments; Waivers.    This Agreement may not be amended except by an instrument in writing signed by each of the Parties.  No failure or delay by any Party in exercising any right hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right hereunder.  Any agreement on the part of any Party to any such waiver shall be valid only if set forth in an instrument in writing signed on behalf of such Party.

Section 8.12    Interpretation.    The Parties have participated jointly in the negotiation and drafting of this Agreement, and in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provisions of this Agreement.

Section 8.13   <u>Counterparts</u>.   This Agreement may be executed in one or more counterparts each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile or portable document format (PDF) shall be as effective as delivery of a manually executed counterpart of any such Agreement.

Section 8.14   <u>Confidentiality</u>.   Each Party shall hold and cause its directors, officers, employees, advisors, and consultants to hold in strict confidence, unless compelled to disclose by judicial or administrative process or, in the opinion of its counsel, by other requirements of law, all information (other than any such information relating solely to the business or affairs of such party) concerning the other Party furnished it by such other Party or its representatives pursuant to this Agreement (except to the extent that such information can be shown to have been (a) in the public domain through no fault of such Party or (b) later lawfully acquired from other sources not under a duty of confidentiality by the party to which it was furnished), and no Party shall release or disclose such information to any other Person, except its directors, officers, employees, auditors, attorneys, financial advisors, bankers or other consultants who shall be advised of and agree to be bound by the provisions of this <u>Section 8.14</u>.  Each Party shall be deemed to have satisfied its obligation to hold confidential information concerning or supplied by the other Party if it exercises the same care as it takes to preserve confidentiality for its own similar information.  Except as required by law or with the prior written consent of the other Party, all Tax Returns, documents, schedules, work papers and similar items and all information contained therein, and any other information that is obtained by a Party or any of its Affiliates pursuant to this Agreement, shall be kept confidential by such Party and its Affiliates and representatives, shall not be disclosed to any other Person, and shall be used only for the purposes provided herein.  If a Party or any of its Affiliates is required by law to disclose any such information, such Party shall give written notice to the other Party prior to making such disclosure.

Section 8.15   <u>Waiver of Jury Trial</u>.   AS A SPECIFICALLY BARGAINED INDUCEMENT FOR EACH PARTY TO ENTER INTO THIS AGREEMENT (WITH EACH PARTY HAVING HAD OPPORTUNITY TO CONSULT COUNSEL), EACH PARTY EXPRESSLY AND IRREVOCABLY WAIVES THE RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING UNDER THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THE TRANSACTIONS CONTEMPLATED HEREBY OR ANY OTHER TRANSACTION AGREEMENT, REGARDLESS OF WHICH PARTY INITIATES SUCH ACTION OR PROCEEDING, AND ANY ACTION OR PROCEEDING UNDER THIS AGREEMENT OR ANY ACTION OR PROCEEDING ARISING OUT OF THE TRANSACTIONS CONTEMPLATED HEREBY OR ANY OTHER TRANSACTION AGREEMENT SHALL BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

Section 8.16   <u>Jurisdiction; Service of Process</u>.   Any action with respect to this Agreement and the rights and obligations arising hereunder, or for recognition and enforcement of any judgment in respect of this Agreement and the rights and obligations arising hereunder brought by a Party or its successors or assigns, in each case, shall be brought and determined exclusively in the Bankruptcy Court (or, if the Bankruptcy Court declines to accept jurisdiction over a particular matter, then the Chancery Court of the State of Delaware, and if the Chancery

Court of the State of Delaware declines jurisdiction, then any state or federal court sitting in Delaware). Each Party hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any Action with respect to this Agreement (a) any claim that is not personally subject to the jurisdiction of the above named courts for any reason other than the failure to serve in accordance with this <u>Section 8.16</u>, (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise), and (c) to the fullest extent permitted by applicable law, any claim that (i) the Action in such court is brought in an inconvenient forum, (ii) the venue of such Action is improper or (iii) this Agreement, or the subject matter hereof, may not be enforced in or by such courts. Each Party further agrees that no Party to this Agreement shall be required to obtain, furnish or post any bond or similar instrument in connection with or as a condition to obtaining any remedy referred to in this <u>Section 8.16</u> and each Party waives any objection to the imposition of such relief or any right it may have to require the obtaining, furnishing or posting of any such bond or similar instrument. The Parties hereby agree that mailing of process or other papers in connection with any such action or proceeding in the manner provided in <u>Section 8.17</u>, or in such other manner as may be permitted by law, shall be valid and sufficient service thereof and hereby waive any objections to service accomplished in the manner herein provided. NOTWITHSTANDING THIS <u>Section 8.16</u>, ANY DISPUTE REGARDING <u>SECTION 2.02</u> OR <u>SECTION 2.04</u> SHALL BE RESOLVED IN ACCORDANCE WITH <u>SECTION 8.02</u>; PROVIDED THAT THE TERMS OF <u>SECTION 8.02</u> MAY BE ENFORCED BY EITHER PARTY IN ACCORDANCE WITH THE TERMS OF THIS <u>SECTION 8.16</u>.

Section 8.17   <u>Notices</u>.   All notices, requests, claims, demands, and other communications to be given or delivered under or by the provisions of this Agreement shall be in writing and shall be deemed given only (a) when delivered personally to the recipient, (b) one (1) Business Day after being sent to the recipient by reputable overnight courier service (charges prepaid), *provided that* confirmation of delivery is received, (c) upon machine-generated acknowledgment of receipt after transmittal by facsimile or (d) five (5) days after being mailed to the recipient by certified or registered mail (return receipt requested and postage prepaid). Such notices, demands, and other communications shall be sent to the Parties at the following addresses (or at such address for a Party as will be specified by like notice):

<u>If to any EFH Party</u>:

Energy Future Holdings Corp., et al.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201
Attention:     General Counsel
E-mail:        stacey.dore@energyfutureholdings.com
               awright@energyfutureholdings.com

<u>with a copy (which shall not constitute notice) to, until the Merger becomes effective</u>:

Kirkland & Ellis LLP
600 Travis St., Suite 3300
Houston, Texas 77002
Attention:      Andrew Calder
                Amber Meek
E-mail:         andrew.calder@kirkland.com
                amber.meek@kirkland.com


and

Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Attention:      James Sprayregen
                Marc Kieselstein
                Chad Husnick
                Steven Serajeddini
E-mail:         jsprayregen@kirkland.com
                mkieselstein@kirkland.com
                chusnick@kirkland.com
                steven.serajedinni@kirkland.com


and

Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022
Attention:      Edward Sassower
                Stephen Hessler
                Brian Schartz
E-mail:         edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                bschartz@kirkland.com


with a copy (which shall not constitute notice) to, when and after the Merger
becomes effective:

Hunt Consolidated, Inc.
1900 North Akard Street
Dallas, Texas 75201
Attention:      David Hernandez
E-mail:         DHernandez@huntconsolidated.com

and

Baker Botts L.L.P.
2001 Ross Avenue, Suite 600

26

Dallas, Texas 75201
Attention:     Geoffrey L. Newton
               Luckey McDowell
               Preston Bernheisel
E-mail:        geoffrey.newton@bakerbotts.com
               luckey.mcdowell@bakerbotts.com
               preston.bernhisel@bakerbotts.com

and

White & Case LLP
Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
Attention:     Thomas E. Lauria
E-mail:        tlauria@whitecase.com

and

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Attention:     Gregory Pryor
E-mail:        gpryor@whitecase.com

If to Reorganized TCEH, after the Distribution:

[Reorganized TCEH]
[Energy Plaza
1601 Bryan Street
Dallas, Texas 75201]

with a copy (which shall not constitute notice) to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attention:     Alan W. Kornberg
               Brian S. Hermann
               Jacob A. Adlerstein
E-mail:        akornberg@paulweiss.com
               bhermann@paulweiss.com
               jadlerstein@paulweiss.com

Any Party to this Agreement may notify any other Party of any changes to the address or any of the other details specified in this paragraph; *provided that* such notification shall only be effective on the date specified in such notice or five (5) Business Days after the notice is given,

whichever is later. Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given shall be deemed to be receipt of the notice as of the date of such rejection, refusal or inability to deliver. Any notice to any EFH Party will be deemed notice to all the Reorganized EFH Entities, and any notice to Reorganized TCEH will be deemed notice to all the Reorganized TCEH Entities.

Section 8.18    Headings.   The headings and captions of the Articles and Sections used in this Agreement and the table of contents to this Agreement are for reference and convenience purposes of the Parties only, and will be given no substantive or interpretive effect whatsoever.

Section 8.19    Effectiveness.    This Agreement shall become effective upon the Distribution.

Section 8.20    Further Assurances.   The EFH Parties shall cause each other Person that is or becomes a Subsidiary of EFH that is not "ring-fenced" to execute a joinder to this Agreement (a) to become an EFH Party (effective as of the date such Person becomes a Subsidiary of EFH or ceases to be "ring-fenced") and (b) to be bound by the obligations of the EFH Parties under this Agreement on a joint and several basis.

*[The remainder of this page is intentionally left blank.]*