# EXHIBIT P

**Transition Services Agreement**

# TRANSITION SERVICES AGREEMENT[1]

This **TRANSITION SERVICES AGREEMENT** (as hereinafter amended, restated or modified from time to time in accordance with the terms hereof, this "Agreement") is made and entered into, as of this __ day of _____, 2016, by and between Energy Future Holding Corp., a Texas corporation (and any entity successor thereto, including, upon consummation of the Merger (as defined below), OV1 (as defined below), the "Company"), and **[Texas Competitive Electric Holdings Company Inc.]**, a Delaware corporation (including, if the context so requires, its predecessors, "Reorganized TCEH"). Each of Company and Reorganized TCEH is referred to herein as a "Party" and are collectively referred to herein as the "Parties." Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Merger Agreement (as defined below).

**WITNESSETH:**

**WHEREAS**, on April 29, 2014 (the "Petition Date"), the Company and certain of its Subsidiaries (collectively, the "Debtors"), and Texas Competitive Electric Holdings Company LLC ("TCEH"), a Delaware limited liability company, a subsidiary of the Company and the predecessor to Reorganized TCEH, commenced voluntary cases under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 et seq. in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are jointly administered for procedural purposes only under Case No. 14-10979 (collectively, together with any proceedings relating thereto, the "Chapter 11 Cases");

**WHEREAS**, on August 9, 2015, the Company, Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), Ovation Acquisition I, L.L.C., a Delaware limited liability company subsequently converted to [Ovation Acquisition I, Inc.], a Delaware corporation ("OV1"), and Ovation Acquisition II, L.L.C., a Delaware limited liability company ("OV2" and, together with OV1, the "Purchasers"), entered into that certain Purchase Agreement and Agreement and Plan of Merger (the "Merger Agreement"), which agreement provides for, among other things, the merger of the Company with and into OV1 (the "Merger"), with OV1 being the surviving company and the successor to the Company;

**WHEREAS**, on _____, 2015, the Bankruptcy Court entered an order approving and confirming the restructuring of the Debtors pursuant to a Chapter 11 plan of reorganization (the "Plan of Reorganization") that contemplates, among other things, the consummation of the Merger and the other transactions described in the Merger Agreement;

**WHEREAS**, pursuant to the Plan of Reorganization, (a) TCEH formed Reorganized TCEH; (b) TCEH transferred, on the date hereof, all of the TCEH Assets in exchange for (i) 100% of the newly-issued equity interests of Reorganized TCEH and (ii) the cash proceeds of new Reorganized TCEH debt (such transfer, the "TCEH Contribution"), as well as the assumption by Reorganized TCEH of the TCEH Liabilities; (c) immediately following the TCEH Contribution, Reorganized TCEH transferred certain of its assets to New Holdco in exchange for 100% of New Holdco's equity; (d) immediately following the transfer described in clause (c), Reorganized TCEH completed the Preferred Stock Sale; and (e) immediately following the TCEH Contribution and the Preferred Stock Sale, Reorganized TCEH converted into a Delaware corporation pursuant to applicable Law, with the name set forth in the preamble to this Agreement;

---

[1] Note to Draft: A separate Transition Services Agreement will be prepared for OEDC once this draft has come to rest.

**WHEREAS**, pursuant to the Plan of Reorganization, the Company contributed the equity securities of EFH Corporate Services Company, a Texas corporation ("EFH Corporate Services"), and its Subsidiaries to Reorganized TCEH, as well as certain other assets, liabilities and equity interests related to the TCEH Debtors' operations, all as provided in the Plan of Reorganization, to Reorganized TCEH (the "EFH Contribution");

**WHEREAS**, pursuant to the Plan of Reorganization and as a result of the EFH Contribution, the employees of EFH Corporate Services have become employees of Reorganized TCEH or one or more of its Subsidiaries;

**WHEREAS**, pursuant to the Plan of Reorganization, contemporaneously with the execution of this Agreement (i) the Company and EFIH will be reorganized and (ii) the First Closing Date Transactions contemplated by the Merger Agreement, including the Merger, will be consummated by the reorganized Company, reorganized EFIH and the Purchasers;

**WHEREAS**, the Company and its Subsidiaries (which for purposes of this Agreement shall include Oncor Electric Delivery Holdings Company LLC and Oncor AssetCo and their respective Subsidiaries) desire the performance of the Transition Services (as defined below) by Reorganized TCEH and/or its Subsidiaries;

**WHEREAS**, Reorganized TCEH is willing to provide, and to cause its Subsidiaries to provide, the Transition Services to the Company and its Subsidiaries upon the terms and subject to the conditions set forth herein; and

**WHEREAS**, this Agreement is being executed and delivered in accordance with Section 6.21 of the Merger Agreement and the applicable provisions of the Plan of Reorganization.

**NOW**, **THEREFORE**, in consideration of the premises, the covenants and agreements set forth herein, the mutual benefits to be gained by the performance thereof and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereby agree as follows:

### ARTICLE 1 - SERVICES

1.1   Transition Services.

(a)   During the Term (as defined below), solely in connection with the transition of the Transition Services from Reorganized TCEH and its Subsidiaries to the Company and its Subsidiaries, Reorganized TCEH hereby agrees to provide, or cause to be provided (whether through one or more of its Subsidiaries or as permitted pursuant to Section 1.2), to the Company and its Subsidiaries upon the terms and subject to the conditions set forth in this Agreement (i) the services described on Annex A attached hereto (the "Service Schedule"), (ii) as reasonably requested by the Company, any other service historically provided to the Company and/or its Subsidiaries during the period from April 29, 2014 through the date hereof by EFH Corporate Services and/or its Subsidiaries or (iii) if applicable, other services that may be agreed upon by the Parties in writing after the date hereof ("Additional Services" and, together with the services in clause (i) and (ii), the "Transition Services").  In the event that the Parties identify and agree upon Additional Services to be provided under this Agreement, the Parties shall execute an amendment to this Agreement that provides for the substitution of the relevant Service Schedule, or additions or supplements to the relevant Service Schedule, in order to describe such Additional Services and other specific terms and conditions applicable thereto.

(b)   Notwithstanding the foregoing, during the Term, the Parties agree, subject to Article 6 hereof, that the Transition Services include, to the extent applicable, the transitioning of information of the Company and its Subsidiaries that they reasonably require to operate their businesses (including historical books and records and electronic and other data related to the business of the Company and its Subsidiaries) to the Company and its Subsidiaries.

(c)   In no event shall Reorganized TCEH or its Affiliates be required to (i) lend any funds to the Company or its Affiliates or (ii) make any payments or disbursements on behalf of the Company, except to the extent the Company has previously delivered to Reorganized TCEH sufficient funds to make any such payment or disbursement.

(d)   Unless otherwise expressly required under the terms of any relevant Service Schedule hereto or the Separation Agreement, or otherwise agreed to by the Parties in writing, in providing the Transition Services, Reorganized TCEH or its Affiliates shall not be obligated to: (i) expend funds and other resources beyond levels that would be customary and reasonable for any other nationally recognized service provider to perform services that are similar to the relevant Transition Services; (ii) maintain the employment of any specific employee or subcontractor; (iii) purchase, lease or license any additional (measured as of the even date hereof) equipment or materials (expressly excluding any renewal or extension of any leases or licenses required for Reorganized TCEH to perform the relevant Transition Services during the Term); or (iv) pay any of the Company's costs related to its or any of its Affiliates' receipt of the Transition Services.

(e)   The Parties acknowledge the transitional nature of the Transition Services and agree that, subject to the provisions of Section 1.4, Reorganized TCEH may make changes from time-to-time in the personnel performing the Transition Services if such Reorganized TCEH is making similar changes in performing similar services for itself and/or its Affiliates; *provided* that Reorganized TCEH must provide the Company with at least thirty (30) days prior written notice of such changes.

1.2   Personnel; Third-Party Providers.

(a)   Reorganized TCEH hereby agrees, except as otherwise provided in this Section 1.2, it will not delegate its responsibilities under this Agreement to any unaffiliated third Person (a "Third-Party Provider") without the Company's express prior written consent (such consent not to be unreasonably withheld, conditioned, or delayed). Notwithstanding the foregoing, the Parties acknowledge and agree that the Transition Services that have historically been provided and supported by Third-Party Providers[2] may continue to be so provided and supported without the need for the Company to provide further consent.

(b)   In the event a Third-Party Provider requires credit support solely in connection with the provision of Transition Services, the Company shall provide reasonable credit support to Reorganized TCEH or such Third Party Provider with respect thereto.

(c)   No employees or representatives of Reorganized TCEH or a Third-Party Provider shall be deemed to be employees or representatives of the Company. In performing the Transition Services, such employees and representatives of Reorganized TCEH or a Third-Party Provider shall be under the direction, control and supervision of Reorganized TCEH or the Third-Party Provider, as applicable, and, subject to compliance with the requirements set forth in the Service Schedule.

---

[2]   Note to Draft: In connection with the determination of the Transition Services, the Parties will discuss and identify the Third-Party Providers that will continue to provide services.

3

Reorganized TCEH or the Third-Party Provider, as applicable, shall be solely responsible for exercising all authority with respect to, and shall bear all liabilities arising from, the employment (including termination of employment), assignment and compensation of such employees or representatives (including the payment of all salary and benefits and all premiums and remittances with respect to employees used to provide any Transition Services hereunder).

(d) If a Third-Party Provider provides Transition Services in accordance with this Agreement, such Third-Party Provider shall be subject to service standards and confidentiality provisions at least equivalent to those set forth herein and that Reorganized TCEH shall remain primarily responsible for the performance by such Third-Party Provider of all of its obligations hereunder with respect to the Transition Services provided by such Third-Party Provider so that such performance is in accordance with the terms and conditions hereof.

(e) No Third-Party Provider shall have any obligation to purchase, lease or license or renew a lease or license applicable to any facility, equipment or software or to pay any costs related to the transfer or conversion of the data of the Company or any of its Affiliates to any alternative provider of any Transition Services.

1.3     Third Party Consents.

(a) The Parties acknowledge and agree that it may be necessary to obtain from third parties certain consents, waivers, permits, licenses or sublicenses ("Consents") in order for (i) Reorganized TECH to use third-party applications, Intellectual Property, systems, networks and similar services and functions in the provision of Transition Services and/or (ii) the Company to receive Transition Services.

(b) The Parties will cooperate and use their respective commercially reasonable efforts to obtain the Consents; *provided, however*, that the failure to obtain any such Consent shall not relieve Reorganized TCEH of its obligation to provide the relevant Transition Service unless (A) the provision of such Transition Service is prohibited by applicable Law or (B) such Consent cannot be obtained in a timely manner after using commercially reasonable efforts. In either case of clauses (A) or (B) in the preceding sentence, Reorganized TCEH shall promptly notify the Company thereof and the Parties will use their commercially reasonable efforts to implement an alternative means of continuing the provision of the applicable Transition Service for which the Consent is required, in accordance with the service standards described in Section 1.4. Each Party shall use commercially reasonable efforts to mitigate the effects (including the cost) of such alternative means.

1.4     Level of Service and Limitations.

(a) During the Term, Reorganized TCEH shall perform, or cause to be performed, the Transition Services (i) in a professional and workmanlike manner at a quality substantially equivalent (including with regard to type, skill, care, quantity, scope, timeliness and diligence) as provided by EFH Corporate Services and/or any of its Subsidiaries in the ordinary course of business during the twelve (12) month period prior to the Petition Date (or, to the extent new services commenced following the Petition Date, during the twelve (12) month period prior to the date hereof) and (ii) in compliance with all applicable Laws, in all material respects.

(b) During the Term, the Company shall (i) use commercially reasonable efforts to terminate its need to receive the Transition Services as soon as reasonably practicable after the date hereof and (ii) allow representatives of Reorganized TCEH reasonable access to its employees, facilities, assets, advisors, systems and information as reasonably requested by Reorganized TCEH for purposes of

4

rendering the Transition Services under this Agreement; *provided*, that no such access shall unreasonably interfere with the ongoing operations of the Company and its Subsidiaries.

(c) In connection with its provision of the Transition Services under this Agreement, Reorganized TCEH shall be permitted to rely on any written information or data provided by the Company to Reorganized TCEH, except to the extent that Reorganized TCEH has actual knowledge that such information or data is inaccurate.

(d) Notwithstanding anything to the contrary contained herein, Reorganized TCEH shall not be obligated to (and shall not be obligated to cause any Third Party Provider to) provide any Transition Services if the provision of such Transition Services would (i) violate any Law or any agreement or license to which the Parties are subject or (ii) result in the disclosure of information subject to any applicable privileges (including the attorney-client or similar privilege); *provided, however*, that the Parties shall use commercially reasonable best efforts to obtain or cause to be obtained such agreements, waivers and licenses necessary to provide such Transition Services in accordance with Section 1.3; and *provided, further*, that neither Company nor Reorganized TCEH (nor any of their respective Affiliates) shall be required to pay any fees or make other payments or incur any obligations (unless the recipient agrees to pay such fees or make such other payments or incur such obligations) to obtain any such agreements, waivers or licenses.

(e) During the Term, each Party agrees to use commercially reasonable efforts to cooperate with the other Party in all matters relating to the provision and receipt of the Transition Services and to effect an orderly transition of the Transition Services. This Agreement is a purely commercial transaction between the Parties and nothing stated in this Agreement shall operate to create any special or fiduciary duty between the Parties.

1.5   Project Managers. Reorganized TCEH and the Company shall each appoint one or more individuals to act as project managers (each, a "Project Manager") to (i) serve as the primary contact for any issues arising out of the performance of this Agreement or any portion of the Transition Services and (ii) be primarily responsible for administering the orderly provision or receipt, as applicable, of the Transition Services (or applicable portion thereof) on its behalf. The initial Project Managers, as well as their respective addresses for notices and other communications, are set forth in the Service Schedule. Each Party agrees to provide reasonable access (in person, by telephone or electronically via e-mail) during normal business hours to its Project Manager for problem resolution. Either Party may replace its Project Manager at any time by providing notice in accordance with Section 7.5, such replacement to be effective as of the date of the other Party's receipt of such notice.

### ARTICLE 2 - TERM AND TERMINATION

2.1   Term. The term of this Agreement shall commence on the date first written above and shall continue until the earlier of (i) the date that is two (2) years from the date of this Agreement and (ii) the termination of all Transition Services pursuant to Section 2.2 or Section 2.3 (the "Term"). At the end of the Term all rights and obligations under this Agreement shall cease, except (a) the rights and obligations that are expressly stated to survive termination pursuant to Section 2.4 and (b) rights and obligations that have accrued prior to such termination, including the obligation to pay any amounts that have become due and payable prior to such termination.

2.2   Discontinuation of Services. During the Term, the Company may terminate any particular Transition Service and eliminate it from the scope of the Transition Services provided under this Agreement upon at least thirty (30) days' (or such other amount of time as mutually agreed in writing between the Parties) prior written notice to Reorganized TCEH, and following such termination the

5

Company shall only be liable to Reorganized TCEH for the Fees owed to Reorganized TCEH in connection with, and attributable to, the provision of such discontinued Transition Services to the extent attributable to the period on and before such discontinuation. During the Term, the Parties shall cooperate as reasonably required to effectuate an orderly and systematic transfer to the Company, or any such Person at the request of the Company, of all of the duties and obligations previously performed by Reorganized TCEH under this Agreement that the Company desires to continue following the Term.

    2.3    Early Termination.

    (a)    Notwithstanding anything in this Agreement to the contrary, this Agreement or any particular Transition Service may be terminated prior to the expiration of the Term as follows:

    (i)    with respect to any particular Transition Service, by the Company pursuant to Section 2.2;

    (ii)    by mutual written consent of the Company and Reorganized TCEH; or

    (iii)    by the Company, on the one hand, or Reorganized TCEH, on the other hand, if the other Party is in material breach of any of its covenants or obligations set forth in this Agreement and fails to cure such breach as promptly as reasonably practicable but in any event within fifteen (15) Business Days (or five (5) Business Days with respect to any failure to make a required payment under the Agreement that is not subject to a dispute pursuant to Section 3.3) after receipt of written notice thereof from the other Party (which notice must specify, in reasonable detail, the nature of such breach).

    2.4    Survival. The termination of this Agreement with respect to any particular Transition Service pursuant to Section 2.2 or Section 2.3 shall not affect the provisions of this Agreement and the Service Schedule with respect to a Transition Service not terminated. Neither the termination of this Agreement with respect to any particular Transition Service pursuant to Section 2.2 or Section 2.3 nor the expiration of the Term shall affect (i) the liability of a Party for a breach of this Agreement prior to the termination or expiration hereof, (ii) the Parties' obligations set forth in this Section 2.4, Article 5, Article 6 and Article 7, which shall survive any termination or expiration of this Agreement and (iii) any rights or obligations arising out of or in connection with this Agreement that have vested, matured or accrued prior to such termination or expiration, including, the right of Reorganized TCEH to receive any and all amounts owed to Reorganized TCEH hereunder to the extent attributable to the period on and before such termination or expiration.

### ARTICLE 3 - COMPENSATION

    3.1    Fees. In consideration for the provision of the Transition Services, the Company shall pay to Reorganized TCEH the fees described in the Service Schedule with respect to each Transition Service provided during the Term (the "Fees").

    3.2    Invoices. Within ten (10) Business Days after the end of each calendar month, Reorganized TCEH (on behalf of itself and each of its Subsidiaries providing Transition Services) shall submit an invoice (each, an "Invoice") to the Company setting forth (i) a reasonably detailed description of the Transition Services provided by Reorganized TCEH and its Subsidiaries during such calendar month and (ii) reasonable documentation and supporting detail of the Fees owing for such Transition

Services (including any third-party invoices related thereto), which documentation shall include a schedule of daily service time for each Service Provider (as defined in the Service Schedule).

    3.3      Time of Payment; Disputes; Interest; No Deductions.

(a)      The Company shall pay, or cause to be paid, all undisputed amounts due under this Agreement within thirty (30) days after receipt of the applicable Invoice. Such payment shall be made in immediately available funds by bank wire transfer to an account designated by Reorganized TCEH.

(b)      The Company shall promptly (and in no event later than thirty (30) days following receipt of any Invoice) notify Reorganized TCEH of any good faith objection of the Company with regard to such Invoice and the failure to so object shall be definitive evidence of the acceptance of such Invoice. If requested by the Company, Reorganized TCEH shall promptly furnish reasonable documentation to substantiate the amounts invoiced, including listing the date(s), time(s) and amount(s) of the Transition Services in question. Following any good faith invoice objection, the Company and Reorganized TCEH shall cooperate in good faith and use commercially reasonable efforts to resolve any remaining dispute expeditiously, without prejudice to either Party's rights under Section 7.3 or Section 7.8. The Company shall pay all disputed amounts in accordance with the resolution of such disputed amount within five (5) Business Days after such resolution.

(c)      If the Company has not paid any undisputed amounts within thirty (30) days after receipt of the applicable Invoice with respect thereto, such undisputed amounts shall accrue interest at the lesser of (i) the maximum rate allowed by applicable Law, and (ii) the prime rate published in *The Wall Street Journal* plus 4% per annum, and the Company shall pay Reorganized TCEH such accrued interest. Notwithstanding the foregoing, the failure of the Company to pay any material undisputed amounts within thirty (30) days after receipt of the applicable Invoice with respect thereto shall also constitute a material breach of this Agreement.

    3.4      Taxes.

(a)      All Fees shall be exclusive of any goods and services taxes, value added taxes or similar taxes on the performance or delivery of Transition Services (collectively "Sales Taxes").

(b)      To the extent that Reorganized TCEH is obligated to collect and remit any Sales Tax in respect of the Transition Services herein provided, the Company shall pay the amount of such Sales Taxes to Reorganized TCEH in addition to the Fees otherwise payable hereunder. Any amount required to be paid under this Section 3.4(b) and not paid by the due date for payment shall be subject to the late charges specified in Section 3.3(c).

(c)      Subject to Section 3.4(a), Reorganized TCEH shall be responsible for and shall pay all taxes, assessments or other charges against it in connection with the Transition Services, including taxes on Reorganized TCEH's income or profits thereon and all taxes imposed on or assessed or levied against or on account of salaries or other compensation or other benefits or amounts paid or provided to Reorganized TCEH's employees or subcontractors. Reorganized TCEH accepts full and exclusive liability for and shall indemnify, defend and hold the Company harmless from and against any and all claims arising out of income or payroll taxes or withholding taxes assessed or levied in respect of the provision of Transition Services hereunder by any governmental authority.

(d)      Reorganized TCEH shall not be reimbursed for any (i) real or personal property taxes on property it owns or leases, (ii) franchise, margin, privilege or similar taxes on its business, (iii) payroll or employment taxes of its employees (including income tax, social security taxes, unemployment

7

compensation, workers' compensation tax, other employment taxes or withholdings), (iv) taxes based on its income or gross receipts or (v) withholding taxes. Should there be any withholding tax required for payment made hereunder, the Company shall have the right to withhold such amount from money due to Reorganized TCEH under this Agreement for payment of taxes, assessment or other charges. Such payment by the Company shall relieve Reorganized TCEH of further obligation with respect to any amount withheld and Reorganized TCEH shall assist the Company by submitting the necessary documents to support the application for the Company to recover such amount later, if applicable.

(e) Within thirty (30) days after receiving notification of the commencement of any Sales Tax, VAT or other similar tax audit by a tax authority which involves the provision of any Transition Services or access to any facilities provided hereunder, the Party receiving such notice shall notify the other Party of such audit. Thereafter, the Party receiving such notice shall control all proceedings taken in connection with such Sales Tax or VAT or other similar tax audit and shall take reasonable steps to keep the other party informed of the progress of any such audit; *provided, however*, that where the other Party is liable to pay an amount in respect of such Sales Tax, VAT or other similar tax pursuant to this Section 3.4, the controlling Party shall not settle or otherwise compromise such audit without the other Party's consent (which consent shall not be unreasonably withheld or delayed). The other Party shall have the right (but not the duty) to participate in any proceeding to contest Sales Tax, VAT or other similar liability, and shall have the right to retain tax advisers or counsel at its own expense.

(f) Subject to applicable Law, the Parties shall use commercially reasonable efforts to cooperate with each other in connection with obtaining any available reduction of, or exemption from, any taxes due in respect of the provision of Transition Services to the extent possible.

## ARTICLE 4 - FORCE MAJEURE

4.1    Force Majeure.

(a) If any Party is rendered unable, wholly or in part, by Force Majeure (as defined below) to carry out its obligations under this Agreement, other than obligations to make monetary payments, that Party shall give the non-affected Party prompt written notice of the cause and extent of the Force Majeure, the date of commencement thereof and the means proposed to be adopted to remedy or abate such Force Majeure, following which the affected Party shall be excused from performance of its obligations under this Agreement solely to the extent, and for the period, that such performance is prevented by such Force Majeure. The affected Party shall use commercially reasonable diligence to remove or remediate the Force Majeure as quickly as possible and shall use commercially reasonable efforts to develop a mutually satisfactory solution to such Force Majeure with the non-affected Party. If any Transition Service is interrupted or suspended due to an event of Force Majeure, (i) the Company shall be entitled to an equitable reduction of Fees payable for the affected Transition Services and (ii) the Company shall have the right to immediately terminate the affected Transition Service and/or any Transition Service linked to the affected Transition Service.

(b) The requirement that the affected Party use commercially reasonable diligence to remove or remediate the Force Majeure as quickly as possible shall not require the settlement of strikes, lockouts or other work stoppage by the affected Party in a manner that it determines is not in its best interest.

(c) The term "Force Majeure" shall mean any act of God, strike, lockout or other work stoppage, act of the public enemy, war, blockade, terrorism, public riot, lightning, fire, storm, flood, explosion, governmental action, or other circumstance that is beyond the reasonable control of the

affected Party and which did not arise from the fraud, bad faith, intentional or willful misconduct or gross negligence of the affected Party.

## ARTICLE 5 - INDEMNIFICATION AND DISCLAIMER

5.1     <u>The Company's Indemnity</u>. THE COMPANY HEREBY AGREES TO INDEMNIFY, HOLD HARMLESS AND DEFEND REORGANIZED TCEH AND REORGANIZED TCEH'S SUBSIDIARIES AND ITS AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, CONTRACTORS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE "<u>TCEH GROUP</u>") FROM AND AGAINST ANY AND ALL LOSSES ARISING OUT OF OR RELATED TO ANY THIRD-PARTY ACTION IN RESPECT OF (I) THE PERFORMANCE OF THE TRANSITION SERVICES IN ACCORDANCE WITH THIS AGREEMENT OR (II) FRAUD, GROSS NEGLIGENCE, OR INTENTIONAL OR WILLFUL MISCONDUCT OF ANY MEMBER OF THE COMPANY GROUP (AS DEFINED BELOW) IN CONNECTION WITH THE TRANSITION SERVICES, EXCEPT TO THE EXTENT CAUSED BY, OR ARISING OUT OF THE FRAUD, GROSS NEGLIGENCE, OR INTENTIONAL OR WILLFUL MISCONDUCT OF, OR MATERIAL BREACH OF THIS AGREEMENT BY, ANY MEMBER OF THE TCEH GROUP.

5.2     <u>Reorganized TCEH's Indemnity</u>. REORGANIZED TCEH HEREBY AGREES TO INDEMNIFY, HOLD HARMLESS AND DEFEND THE COMPANY AND THE COMPANY'S AFFILIATES AND ITS AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, CONTRACTORS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE "<u>COMPANY GROUP</u>") FROM AND AGAINST ANY AND ALL LOSSES ARISING OUT OF OR RELATED TO ANY THIRD-PARTY ACTION IN RESPECT OF THE FRAUD, GROSS NEGLIGENCE, OR INTENTIONAL OR WILLFUL MISCONDUCT OF ANY MEMBER OF THE TCEH GROUP IN PROVIDING THE TRANSITION SERVICES, EXCEPT TO THE EXTENT CAUSED BY OR ARISING OUT OF THE FRAUD, GROSS NEGLIGENCE, OR INTENTIONAL OR WILLFUL MISCONDUCT OF, OR MATERIAL BREACH OF THIS AGREEMENT BY, ANY MEMBER OF THE COMPANY GROUP.

5.3     <u>Limited Liability of Reorganized TCEH</u>. REORGANIZED TCEH SHALL NOT HAVE ANY LIABILITY TO ANY MEMBER OF THE COMPANY GROUP, IN CONTRACT, TORT OR OTHERWISE, FOR OR IN CONNECTION WITH (A) ANY TRANSITION SERVICES PROVIDED OR TO BE PROVIDED OR ANY ACCESS TO ANY FACILITIES PROVIDED OR TO BE PROVIDED BY REORGANIZED TCEH PURSUANT TO THIS AGREEMENT OR (B) ANY ACTIONS OR INACTIONS OF ANY COMPANY GROUP MEMBER IN CONNECTION WITH ANY SUCH SERVICES OR ACCESS TO ANY SUCH FACILITIES REFERRED TO IN THE IMMEDIATELY PRECEDING CLAUSE (A), IN EACH CASE, EXCEPT TO THE EXTENT THAT ANY MEMBER OF THE COMPANY GROUP SUFFERS A LOSS THAT RESULTS FROM REORGANIZED TCEH'S FRAUD, GROSS NEGLIGENCE, OR INTENTIONAL OR WILLFUL MISCONDUCT IN CONNECTION WITH ANY SUCH SERVICES OR ACCESS TO ANY SUCH FACILITIES.

5.4     <u>Enforceability</u>. NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, IF <u>SECTION 5.1</u>, <u>SECTION 5.2</u> OR ANY OTHER PROVISION HEREIN MODIFYING <u>SECTION 5.1</u> OR <u>SECTION 5.2</u> CONTAINS AN INDEMNITY OBLIGATION THAT IS UNENFORCEABLE UNDER APPLICABLE LAW, THEN THIS <u>ARTICLE 5</u> WILL BE MODIFIED, READ, CONSTRUED AND ENFORCED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, AND ANY OBLIGATION THAT IS ENFORCEABLE WILL REMAIN IN FULL FORCE AND EFFECT AND BE BINDING ON THE PARTIES.

    5.5    Determination of Losses; Limitation of Losses.

    (a)    NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, IN NO EVENT SHALL ANY PARTY BE LIABLE FOR, AND "LOSSES" SHALL BE DEEMED NOT TO INCLUDE, CONSEQUENTIAL, INCIDENTAL, EXEMPLARY, SPECIAL, INDIRECT OR PUNITIVE DAMAGES (INCLUDING LOST PROFITS, LOSS OF PRODUCTION, DIMINUTION IN VALUE OR OTHER DAMAGES ATTRIBUTABLE TO BUSINESS INTERRUPTION) ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT OR THE TRANSITION SERVICES, EXCEPT, IN EACH CASE, TO THE EXTENT SUCH DAMAGES ARE PAYABLE TO A THIRD PARTY.

    (b)    FOR PURPOSES OF THIS AGREEMENT, THE TERM "LOSSES" MEANS ACTIONS, CHARGES, DAMAGES, FINES, PENALTIES, DEFICIENCIES, JUDGMENTS, INJUNCTIONS, ORDERS, LOSSES, LIABILITIES, AMOUNTS PAID IN SETTLEMENT, OBLIGATIONS, LIENS, COSTS AND REASONABLE EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES AND EXPENSES, INTEREST, COURT COSTS AND OTHER COSTS OF SUIT, LITIGATION OR OTHER PROCEEDINGS OF ANY KIND OR OF ANY CLAIM, DEFAULT OR ASSESSMENT).

    (c)    NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE PARTIES AGREE AND ACKNOWLEDGE THAT, OTHER THAN WITH RESPECT TO CLAIMS FOR FRAUD, GROSS NEGLIGENCE, INTENTIONAL OR WILLFUL MISCONDUCT, IN NO EVENT SHALL THE AGGREGATE LIABILITY OF ANY PARTY FOR ANY CLAIMS MADE IN RESPECT OF THIS AGREEMENT (OTHER THAN CLAIMS FOR FEES DUE TO REORGANIZED TCEH) EXCEED $500,000.

    (d)    NEITHER PARTY SHALL CONSENT TO THE ENTRY OF ANY JUDGMENT OR ENTER INTO ANY SETTLEMENT OF ANY CLAIM TO THE EXTENT INDEMNIFIABLE UNDER THIS AGREEMENT WITHOUT THE PRIOR WRITTEN CONSENT OF THE OTHER PARTY, WHICH CONSENT SHALL NOT BE UNREASONABLY WITHHELD, CONDITIONED OR DELAYED.

    5.6    Acknowledgement of the Parties; Conspicuousness. Each Party agrees that it shall not contest the validity or enforceability of any provision of this Agreement on the basis that the Party had no notice or knowledge of such provisions or that such provisions are not "conspicuous." The Parties acknowledge and agree that the provisions contained in this Agreement that are set out in "ALL CAPS" satisfy the "express negligence rule" (to the extent applicable) and any other requirement at law or in equity that provisions contained in a contract be conspicuously marked or highlighted.

## ARTICLE 6 - CONFIDENTIALITY

    6.1    Confidential Information.

    (a)    For purposes of this Agreement, "Business Information" means all confidential or proprietary business, financial or technical data, documents, plans, intellectual property and other information, in whatever form, relating to the operations, businesses or assets of a Party or its Affiliates (the "Discloser") that is disclosed to, or received by, the other Party (the "Recipient") in connection with the services or arrangements contemplated by this Agreement. Each Recipient shall, and shall cause its Affiliates, directors, officers, employees, and contractors and its and their Representatives to, hold the Business Information of the Discloser in confidence and not to use or disclose such Business Information, except as reasonably required for the purposes of this Agreement or otherwise expressly permitted

hereunder. Each Party (as the Recipient) shall use no less than the same degree of care that it uses to protect its own confidential information of similar sensitivity to protect the Business Information of the other Party, but in no event less than a commercially reasonable degree of care. The restrictions of this Article 6 shall not apply to Business Information that:

(i) is or becomes generally available to the public other than as a result of a violation of this Section 6.1 by the Recipient or its Affiliates, directors, officers, employees, or contractors or its or their Representatives;

(ii) is developed by the Recipient or its Affiliates, directors, officers, employees, or contractors or its or their Representatives without the use of or reference to any of the Discloser's Business Information;

(iii) is rightfully obtained by the Recipient or its Affiliates, directors, officers, employees, or contractors or its or their Representatives from a third-party source which such Person reasonably believes was not subject to any legal, contractual or fiduciary duty to the Discloser; or

(iv) is identified in writing by the Discloser as no longer proprietary or confidential.

(b) Nothing herein shall prevent a Recipient or its Affiliates, directors, officers, employees, or contractors or its or their Representatives from disclosing Business Information (i) as required by applicable Law or upon the order of any court or administrative agency, (ii) upon the request or demand of, or pursuant to any regulation of, any regulatory agency or authority (including any self-regulatory agency, stock exchange or quotation system), (iii) to the extent reasonably required in connection with the exercise of any remedy hereunder in connection with the conduct or defense of any Action, (iv) to its Affiliates, directors, officers, employees, or contractors or its or their Representatives as necessary to perform the Transition Services pursuant to the terms of this Agreement, *provided* that such Persons are informed of the confidential nature of the Business Information, and the Recipient shall be liable to the Discloser for the use or disclosure thereof by such Person in violation of the terms hereof; *provided further* that if Recipient or its Affiliates, directors, officers, employees, or contractors or its or their Representatives is requested or required pursuant to clause (i) or (ii) to disclose any Business Information of the Discloser, such Recipient shall notify the Discloser promptly in writing, to the extent permitted by applicable Law, of such requirement so that the Discloser may seek a protective order or other appropriate remedy or waive compliance with this Article 6, and the Recipient or its Affiliates, directors, officers, employees, or contractors or its or their Representatives (as applicable) shall disclose only that portion of such Business Information which it believes in its reasonable judgment is legally required to be disclosed and shall use its commercially reasonable efforts to obtain assurances that confidential treatment shall be accorded such Business Information.

6.2    Length of Confidentiality Obligation. Each Party agrees to maintain and protect the confidentiality of the Business Information of the other Party as set forth in this Article 6 during the Term and for two (2) years after the expiration of the Term.

**ARTICLE 7 - MISCELLANEOUS**

7.1    Waiver of Compliance. Any failure of Reorganized TCEH, on the one hand, or the Company, on the other hand, to comply with an obligation, covenant, agreement or condition contained in this Agreement may be expressly waived in writing by the non-failing Party, but such waiver or failure to

11

insist upon strict compliance shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

7.2     Waiver of Jury Trial. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY WHICH MAY ARISE UNDER THIS AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE EACH SUCH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (i) NO REPRESENTATIVE OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER, (ii) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (iii) EACH PARTY MAKES THIS WAIVER VOLUNTARILY, AND (iv) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 7.2.

7.3     Governing Law and Venue. THIS AGREEMENT, TOGETHER WITH ANY CLAIM, DISPUTE, REMEDY OR LEGAL PROCEEDING ARISING FROM OR RELATING TO THIS AGREEMENT OR ANY RELIEF OR REMEDIES SOUGHT BY THE PARTIES HERETO, AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER, SHALL BE CONSTRUED, PERFORMED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT GIVING EFFECT TO ITS PRINCIPLES OR RULES OF CONFLICT OF LAWS TO THE EXTENT SUCH PRINCIPLES OR RULES WOULD REQUIRE OR PERMIT THE APPLICATION OF THE LAWS OF ANOTHER JURISDICTION. Each of the Parties hereto (i) submits to the exclusive jurisdiction of the Bankruptcy Court (or, if the Bankruptcy Court declines to accept jurisdiction over a particular matter, then the Chancery Court of the State of Delaware, and if the Chancery Court of the State of Delaware declines jurisdiction, then any state or federal court sitting in Delaware) in any action or proceeding arising out of or relating to this Agreement, (ii) agrees that all claims in respect of such action or proceeding may be heard and determined in any such court and (iii) agrees not to bring any action or proceeding arising out of or relating to this Agreement (whether on the basis of a claim sounding in contract, tort or otherwise) in any other court. Each of the Parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive (subject to any appeals therefrom) and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. Each of the Parties hereto hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby in any Delaware or federal court in accordance with the provisions of this Section 7.3. Each of the Parties hereto hereby irrevocably waives, to the fullest extent permitted by Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each of the Parties hereto hereby irrevocably and unconditionally consents to service of process in the manner provided for notices in Section 7.5. Nothing in this Agreement will affect the right of any party to this Agreement to serve process in any other manner permitted by Law.

7.4     Counterparts. This Agreement may be executed in any number of counterparts (including by electronic means), each such counterpart being deemed to be an original instrument, and all such counterparts taken together constituting one and the same agreement.

7.5     Notices. Any notice, request, instruction or other document to be given hereunder by any party to the others shall be in writing and delivered personally or sent by registered or certified mail, postage prepaid, by email or overnight courier:

**If to the Company:**

[Ovation Acquisition I], Inc.
1900 North Akard Street
Dallas, Texas 75201
Attention: David Hernandez
Email: DHernandez@huntconsolidated.com

with copies (which shall not constitute notice) to:

Baker Botts L.L.P.
2001 Ross Ave., Suite 600
Dallas, Texas 75201

| | |
|---|---|
| Attention: | Geoffrey L. Newton |
| | Luckey McDowell |
| | Preston Bernhisel |
| Email: | geoffrey.newton@bakerbotts.com |
| | luckey.mcdowell@bakerbotts.com |
| | preston.bernhisel@bakerbotts.com |

**If to Reorganized TCEH**:
[●]
[●]
[●]
[●]
Attention:     [●]
Email:         [●]

or to such other persons or addresses as may be designated in writing by the party to receive such notice as provided above. Any notice, request, instruction or other document given as provided above shall be deemed given to the receiving party upon actual receipt, if delivered personally; three (3) business days after deposit in the mail, if sent by registered or certified mail; upon receipt if sent by email and received by 5:00 pm (Eastern Time), on a business day (otherwise the next business day) (*provided* that if given by email such notice, request, instruction or other document shall be followed up within one (1) business day by dispatch pursuant to one of the other methods described herein); or on the next business day after deposit with an overnight courier, if sent by an overnight courier.

7.6     Modification or Amendment. Subject to the provisions of applicable Law, the Parties may only modify or amend this Agreement by written agreement executed and delivered by duly authorized officers of the respective Parties.

7.7     No Third Party Beneficiaries. The Parties hereby agree that their respective covenants and agreements set forth herein are solely for the benefit of the other Parties hereto and their permitted successors and assigns, in accordance with and subject to the terms of this Agreement, and this Agreement is not intended to, and does not, confer upon any Person other than the Parties hereto and their

permitted successors and assigns any rights or remedies hereunder, including the right to rely upon the representations and warranties set forth herein.

7.8    Specific Performance. The Parties agree that irreparable damage may occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached. Accordingly, subject to the limitations set forth in this Section 7.8, each of the Parties shall be entitled to enforce specifically the terms and provisions of this Agreement and to obtain an injunction, injunctions or any form of equitable relief to prevent or remedy breaches of this Agreement. Each Party hereby waives any requirement for the security or posting of any bond in connection with any such equitable remedy.

7.9    No Transfer. The Parties acknowledge and agree that nothing in this Agreement is intended to transfer any right, title, or interest in and to any tangible, intangible, real or personal property (including any and all intellectual property rights). Notwithstanding any materials, deliverables, or other products that may be created or developed by Reorganized TCEH or its Affiliates from the date hereof through the expiration or termination of the Term with respect to Transition Services, Reorganized TCEH does not hereby convey, nor does the Company or any of its Affiliates hereby obtain, any right, title, or interest in or to any of Reorganized TCEH's or any of its Affiliates' equipment, materials, deliverables, products, or any other rights or property used to provide the Transition Services. All data, files, property or other materials and information that are supplied by the Company or any of its Affiliates in connection with this Agreement shall remain the Company's or such Affiliate's property, respectively, and Reorganized TCEH shall not have any rights or interests with respect thereto.

7.10    Intellectual Property Rights

(a)    Except as otherwise expressly provided in this Section 7.10, each of Reorganized TCEH and the Company and their respective Affiliates shall retain all right, title and interest in and to their respective intellectual property and any and all improvements, modifications and derivative works thereof.  No license or right, express or implied, is granted under this Agreement by Reorganized TCEH, the Company or their respective Affiliates in or to their respective intellectual property, except that, solely to the extent required for the provision or receipt of the Transition Services in accordance with this Agreement, each of Reorganized TCEH and the Company, for itself and on behalf of their respective Affiliates, hereby grants to the other (and their respective Affiliates) a non-exclusive, revocable, non-transferable license during the Term to such intellectual property that is provided by the granting party to the other party ("Licensee") in connection with this Agreement, but only to the extent and for the duration necessary for the Licensee to provide or receive the applicable Transition Services as permitted by this Agreement. Upon the expiration of such time, or the earlier termination of such Transition Service in accordance with this Agreement, the license to the relevant intellectual property will terminate; *provided*, *however*, that all licenses granted hereunder shall terminate immediately upon the expiration or earlier termination of this Agreement in accordance with the terms hereof.  The foregoing license is subject to any licenses granted by others with respect to intellectual property not owned by Reorganized TCEH, the Company or their respective Affiliates.

(b)    Subject to the limited license granted in Section 7.10(a), in the event that any intellectual property is created by Reorganized TCEH (or a Third-Party Provider, if applicable) in the performance of the Transition Services or provision of access to the facilities, all right, title and interest throughout the world in and to all such intellectual property shall vest solely in Reorganized TCEH (or such Third-Party Provider, if applicable) unconditionally and immediately upon such intellectual property having been developed, written or produced.

14

(c) Except as otherwise expressly provided in this Agreement, none of Reorganized TCEH (or its Affiliates) and the Company (or its Affiliates) shall have any rights or licenses with respect to any intellectual property (including software), hardware or facility of the other Party. All rights and licenses not expressly granted in this Agreement or in any other Transaction Agreement are expressly reserved by the relevant Party. Each of Reorganized TCEH and the Company shall from time to time execute any documents and take any other actions reasonably requested by the other party to effectuate the intent of this Section 7.10.

7.11 No Assumption; Other Agreements. Nothing herein shall be deemed to (a) constitute the assumption by Reorganized TCEH or any of its Affiliates, or the agreement to assume, any duties, obligations or liabilities of the Company or its Affiliates whatsoever; or (b) alter, amend or otherwise modify any obligation of the Parties under the Separation Agreement, the Tax Matters Agreement or any other Transaction Agreement.

7.12 Severability. The provisions of this Agreement shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability, nor shall such invalidity or unenforceability affect the validity or enforceability of such provision, or the application thereof, in any other jurisdiction.

7.13 Interpretation; Construction.

(a) Headings herein are for convenience of reference only, do not constitute part of this Agreement and shall not be deemed to limit or otherwise affect any of the provisions hereof. Where a reference in this Agreement is made to a section, annex or schedule, such reference shall be to a section of or annex or schedule to this Agreement unless otherwise indicated. Such annexes and schedules are an integral part of this Agreement and shall be treated as if fully set forth herein. Whenever the words "include," "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation." The words "hereof," "hereto," "hereby," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not any particular provision of this Agreement.

(b) The Parties have participated jointly in negotiating and drafting this Agreement. In the event that an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties, and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

7.14 Assignment. This Agreement shall not be assignable without the prior written consent of the non-assigning Parties hereto. Any purported assignment in violation of this Agreement is void.

7.15 Entire Agreement. This Agreement (which includes the Service Schedule) constitutes the entire agreement, and supersedes all other prior agreements, understandings, representations and warranties both written and oral, between the Parties, with respect to the subject matter hereof.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their respective duly authorized representatives as of the date and year first set forth above.

                                            **[TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY INC.]**

By: _____
Name:
Title:

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
Name:
Title:

Agreed to and Acknowledged By:

**[OVATION ACQUISITION I, INC.]**

By:_____
Name:
Title:

**Annex A**

**Service Schedule**

**Fees**

The Company shall pay to Reorganized TCEH the hourly rates set forth below per documented hour of service for each employee, consultant or contractor of Reorganized TCEH or any of its subsidiaries or any Third-Party Provider (each, a "Service Provider") within such category that performs any Transition Service during the Term.[3]

| Service Provider Category | Hourly Rate |
|---|---|
| [Category 1] | $[●] |
| [Category 2] | $[●] |
| [Category 3] | $[●] |
| [Category 4] | $[●] |
| [Category 5] | $[●] |

**Transition Services**

| Service Category | Description[4] |
|---|---|
| Business Services Administration | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to benefits, payroll, taxes, and other general business functions. |
| Corporate Controller | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to the tasks of a corporate controller, including external auditing, outsourced accounting services, and other accounting-related functions. |
| Corporate Secretary | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to historical corporate records, and other general administrative functions. |

---

[3] Note to Draft: Prior to execution, Parties to discuss and agree upon the Service Provider Categories and Hourly Rates based on 100% of actual reasonable, documented fees, costs and expenses incurred by Reorganized TCEH and its subsidiaries (including, in each case, the fully-burdened base salary, wages, bonuses and benefits of such Service Provider) with respect to such Service Provider.

[4] Note to Draft: Prior to execution, Parties to discuss and agree upon more detailed workplans with respect to the Transition Services. The Service Categories and Descriptions herein are just an estimate of the types of Transition Services that may be needed and are subject in all respects to further discussion between the Parties.

| **Service Category** | **Description[4]** |
|---|---|
| Corporate Tax | Service Category shall include the administration, maintenance, reporting, analysis, consulting, and other activities relating to tax returns, external audits, tax payments, and other tax-related accounting functions. |
| Human Resources | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to benefits, records, compliance, and other HR-related functions. |
| Information Technology | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to Company information technology systems, including general oversight, facilities, application and infrastructure services, and other functions. |
| Internal Audit and SOX Compliance | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to internal audits and SOX compliance, including administration of a key control system, management of officer certifications, and other internal compliance functions. |
| Legal Services | Service Category shall include support for the administration, maintenance, reporting, analysis, and other activities relating to litigation management, compliance with respect to all applicable Laws, general corporate transactions, employee benefits and labor law, and other legal functions. |
| Treasury | Service Category shall include the administration, maintenance, reporting, analysis, and other activities relating to treasury operations, liquidity management, risk management relating to insurance, trust and pension funds and other treasury-related functions. |

**Project Managers**

    <u>For the Company</u>
    [●]
    [●]
    [●]
    [●]
    Telephone:
    Email:

    <u>For Reorganized TCEH</u>
    [●]
    [●]
    [●]
    [●]
    Telephone:
    Email: