# **EXHIBIT T**

## **Rights Offering Procedures**

# RIGHTS OFFERING PROCEDURES

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., et al.,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) ) | |

**RIGHTS OFFERING PROCEDURES**

On September 22, 2015, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the Order (A) Approving the Disclosure Statement; (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents [Docket No. 6131] (the "Disclosure Statement Order") that, among other things, (a) approved the adequacy of the Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 6124] (as amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") filed in connection with the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 6122] (as amended from time to time and including all exhibits thereto, the "Plan") and (b) authorized the above-captioned debtors and debtors in possession (the "Debtors") to solicit acceptances of the Plan from holders of Impaired Claims who are (or may be) entitled to receive distributions under the Plan.[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable. Copies of the Plan and the Disclosure Statement may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

1. **Introduction**

    Pursuant to the Plan, Ovation Acquisition I, L.L.C., a Delaware limited liability company ("New EFH") will distribute, without any payment of Cash or other consideration, to holders of record of Rights Offering Allowed Claims on a record date, after the Confirmation Date, to be determined by New EFH (the "Rights Offering Record Date"), rights ("Rights") to purchase shares of New EFH common stock, par value $0.01 per share ("New EFH Common Stock") as part of a rights offering (the "Rights Offering"). Subject to the terms and conditions specified in the Plan and in these Rights Offering Procedures, each Right will entitle the holder thereof (each, a "Rights Holder") to purchase one share of New EFH Common Stock at a purchase price (the "Exercise Price") to be determined in accordance with the Plan. Notwithstanding the foregoing, New EFH may choose, in respect of Rights Offering Allowed Claims held by investors through The Depository Trust Company ("DTC"), to provide that Rights in respect of such claims may be exercised at any time during the Exercise Period (as defined below) by the person who is the holder of record of such claim on the date of exercise, in lieu of a distribution of Rights to holders of such claims on the Rights Offering Record Date (a "DTC Exercise and Blocking").

2. **Amount of the Rights Offering**

    The total purchase price of all shares of New EFH Common Stock offered for purchase in the Rights Offering will be $5,787,250,000. Holders (the "First Lien Holders") of Rights Offering Allowed Claims that are Allowed TCEH First Lien Secured Claims (the "First Lien Claims") will receive, in aggregate, Rights (the "First Lien Rights") to purchase up to $700,000,000 of New EFH Common Stock (the "First Lien Rights Offering"). Holders (the "Second Lien/Unsecured Holders") of all other Rights Offering Allowed Claims (the "Second Lien/Unsecured Claims") will receive, in aggregate, Rights (the "Second Lien/Unsecured Rights") to purchase up to $5,087,250,000 of New EFH Common Stock (the "Second Lien/Unsecured Rights Offering"); provided, that as set forth in the Plan each Holder of an Allowed General Unsecured Claim Against the TCEH Debtors Other Than EFCH may elect to receive Cash in an amount equal to its pro rata share of the Cash-Out Election Pool in lieu of any other recovery provided under the Plan, and any Rights that would have otherwise been distributed to a Holder of an Allowed General Unsecured Claim Against the TCEH Debtors Other Than EFCH that makes a Cash-Out Election shall be assigned pro rata to First Lien Holders (the "Assigned Rights"). The Assigned Rights will be issued in connection with the Second Lien/Unsecured Rights Offering. The First Lien Rights Offering and the Second Lien/Unsecured Rights Offering will be conducted substantially concurrently and at the same Exercise Price. In addition to the shares of New EFH Common Stock to be issued upon exercise of the Rights, certain investors have agreed to subscribe for and purchase $1,762,750,000 of New EFH Common Stock and an additional $250,000,000 of securities that are exchangeable into shares of New EFH Common Stock, each at the same price per share as the Exercise Price in the Rights Offering.

Each First Lien Holder will receive its pro rata share of Rights being distributed in the First Lien Rights Offering and Assigned Rights based on the ratio of the First Lien Claims it holds to the total amount of First Lien Claims. Each Second Lien/Unsecured Holder will receive its pro rata share of Rights being distributed in the Second Lien/Unsecured Rights Offering based on the ratio of the Second Lien/Unsecured Claims it holds to the total amount of Second Lien/Unsecured Claims.

In the event that the Minority Buy-Out does not occur prior to the Effective Date of the Plan then the amounts described in this section with respect to the Second Lien/Unsecured Rights Offering will be subject to adjustment as described below.

**3. Registration**

Except to the extent described below, the Rights Offering, including the issuance of Rights and the offer and sale of the New EFH Common Stock to be issued upon the exercise of the Rights, will be registered with the U.S. Securities and Exchange Commission (the "SEC") pursuant to a registration statement (the "Rights Offering Registration Statement"). As described in greater detail below, certain Rights Holders may elect to pay their exercise price by way of a Qualifying Letter of Credit (as described below), and New EFH may elect to conduct the Rights Offering to these parties pursuant to a private placement pursuant to Section 4(a)(2) of the Securities Act of 1933, as amended (the "Securities Act"). Any portion of the Rights Offering conducted as a private placement is referred to as the "Private Rights Offering", and the portion of the Rights Offering registered with the SEC pursuant to the Rights Offering Registration Statement is referred to as the "Public Rights Offering".

**4. Timing**

No later than 20 Business Days (or such later Business Day agreed to by the Debtors and New EFH in order to comply with applicable securities laws) after the later of (a) the Confirmation Date of the Plan and (b) the date that the SEC declares the Rights Offering Registration Statement to be effective, New EFH will commence the Rights Offering by distributing to the holders of record of Rights Offering Allowed Claims as of the Rights Offering Record Date:

- Rights,
- a Subscription Form with Payment Instructions (as defined below) and
- (to the Rights Holders in the Public Rights Offering) a copy of the Prospectus that is a part of the Rights Offering Registration Statement;

provided, that (a) New EFH may require holders who hold their Rights Offering Allowed Claims through DTC to affirmatively elect to remove their Rights Offering Allowed Claims from trading through the systems of the DTC in order to receive or exercise their Rights, and (b) New EFH may elect to allow for a DTC Exercise and Blocking in respect of such claims.

3

A Rights Holder may exercise its Rights at any time during a period (the "Exercise Period") beginning on the date the Rights are distributed by New EFH (the "Distribution Date") and ending at 4:00 p.m. eastern time on a date selected by New EFH and communicated to the Rights Holders at the time it distributes the Rights and Subscription Form (the "Expiration Time"); provided, that such date shall not be earlier than 20 days after the Rights Offering Record Date; provided, further, that New EFH may extend the Expiration Time to a new date and time specified in a notice provided to the Rights Holders and EFH Corp. no later than 9:00 a.m. eastern time on the Business Day immediately following the then scheduled Expiration Time, which notice may be provided by filing such information with the SEC, posting a press release on one or more major business news wire services, or by any other means reasonably designed for broad dissemination; provided, further, that if the Expiration Time is later than the date that is 60 days after the Distribution Date, such date shall be determined by New EFH with the prior written consent of EFH Corp. and EFIH, acting together, such consent not to be unreasonably withheld. The Debtors or New EFH will file a notice of such extension with the Bankruptcy Court substantially contemporaneously with the release of such notice to Rights Holders. The Expiration Time shall be at least 30 days prior to the Effective Date.

**5. Backstop**

Pursuant to a Backstop Agreement, dated as of August 9, 2015, between New EFH, a group of investors set forth on Schedule 1 thereto (the "Backstop Investors") and certain other parties thereto (as amended, the "Backstop Agreement"), the Backstop Investors have agreed to purchase any shares of New EFH Common Stock that are offered in the Second Lien/Unsecured Rights Offering but remain unpurchased after the Expiration Time. The purchase price per share to the Backstop Investors for any shares of New EFH Common Stock purchased thereby would be the same as the Exercise Price. The commitment of the Backstop Investors does not apply to the First Lien Rights Offering.

**6. Transfer of Rights**

The First Lien Rights will be transferable by the holders thereof during the period beginning on the Distribution Date and ending on the date such rights are exercised or expire, to the extent permitted by law. After the date it is exercised, a First Lien Right will no longer exist as a separate security, and the Rights Holder that exercises the First Lien Right will hold the right to receive the underlying EFH Common Stock on the Effective Date.

The Second Lien/Unsecured Rights will be transferable by the holders thereof during the period beginning on the Distribution Date and ending on the Effective Date to the extent permitted by law; provided that, in respect of the Second Lien/Unsecured Rights only, Rights Holders must abide by the following restrictions on transfer of their Second Lien/Unsecured Rights and Rights Offering Allowed Claims. Any transfer of a Second Lien/Unsecured Right must be accompanied by a contemporaneous transfer to the party acquiring the Second Lien/Unsecured Right of a Requisite Amount of Claims (as defined below). Any attempted transfer of a Second Lien/Unsecured Right that is not

4

accompanied by a contemporaneous transfer of a Requisite Amount of Claims will be null and void, New EFH will not treat any purported transferee as the holder of any Second Lien/Unsecured Right, and New EFH reserves the right to cancel any Second Lien/Unsecured Right purported to be so transferred, without compensation to the Rights Holder.  Further, each exercising Rights Holder in the Second Lien/Unsecured Rights Offering will be required to certify at exercise that it holds the Requisite Amount of Claims for the Second Lien/Unsecured Rights it is exercising (as described below).  **Accordingly, after the Record Date, Rights Holders in the Second Lien/Unsecured Rights Offering should not transfer Second Lien/Unsecured Rights or Rights Offering Allowed Claims unless they are traded together to the same purchaser in contemporaneous transactions.**  In order to enforce the requirement that Second Lien/Unsecured Rights and Rights Offering Allowed Claims trade together, New EFH may require holders of Rights Offering Allowed Claims whose claims trade using the systems of the DTC to affirmatively elect to remove their claims from trading on the DTC in order to receive and/or exercise Rights.  Thereafter, those claims and the associated Rights would then trade only through a register maintained by the Subscription Agent.  "Requisite Amount of Claims" means for any given Second Lien/Unsecured Right, the amount of Rights Offering Allowed Claims that would entitle the holder thereof to receive one such Right on the Record Date.  There is no similar requirement in respect of First Lien Rights, although holders of First Lien Claims will be subject to the foregoing restrictions in respect of any Second Lien/Unsecured Rights they receive.

Although the Rights and Claims are transferable during the entire Exercise Period, any transfer must be made sufficiently in advance of the Expiration Time to comply with settlement procedures applicable to sales of securities.  If a trading market develops in respect of the Rights, it may not be conducted in accordance with normal settlement procedures and trades effected in Rights may not be settled within three trading days after the trade date.  A trade in Rights will need to be settled prior to the Expiration Time.  Otherwise, the buyer may receive such Rights after they have expired, which means they could not be exercised and would be of no value.

Rights Holders are also cautioned that the tradability of Rights may require filings with or approvals from state and local securities regulators, and any such approvals or the failure to obtain such approvals may result in additional restrictions on trading of the Rights.

**7.  No Withdrawal After Exercise**

Once a Rights Holder has validly exercised its Rights, that exercise may not be withdrawn or revoked, except as permitted in the Rights Offering Registration Statement; provided, that if there are changes to the Plan after such exercise that the Bankruptcy Court determines are materially adverse to Rights Holders, and the Bankruptcy Court either requires a resolicitation of votes under Section 1126 of the Bankruptcy Code or an opportunity to change previously cast acceptances or rejections of the Plan, then each Rights Holder that has exercised Rights (an "Exercising Holder") will be given the opportunity for a limited period to withdraw its exercise and (a) to the extent such Rights Holder has paid its Aggregate Exercise Price (as defined below) in cash, have such funds

returned to it from the Escrow Account (as defined below) without interest or (b) to the extent such Rights Holder has paid its Aggregate Exercise Price using a Qualifying Letter of Credit (as defined below), have the Qualifying Letter of Credit released from the Escrow Account and/or, if withdrawing only in part, to either reduce the amount of such Qualifying Letter of Credit or replace it with a Qualifying Letter of Credit reflecting the new Aggregate Exercise Price.

**8. Exercise of Rights**

To exercise its Rights a Rights Holder must: (a) return a validly completed Subscription Form to the third party subscription agent described below (the "Subscription Agent") so that the Subscription Form is actually received by the Subscription Agent on or before the Expiration Time and (b) pay to the Escrow Agent, in the manner set forth below, on or before the Expiration Time an amount equal to the Exercise Price multiplied by the number of shares of New EFH Common Stock such Rights Holder has elected to purchase (such amount, the "Aggregate Exercise Price") in accordance with the payment instructions set forth on the Subscription Form. If a Rights Holder owns securities that are held through the DTC and chooses to exercise its Rights, it must (a) send the Subscription Form to its bank or brokerage firm (or otherwise follow its voting nominee's instructions), with enough time for its exercise to be effected through DTC's Automated Subscription Offer Program ("ASOP"), and (b) if New EFH so elects to require in connection with a DTC Exercise and Blocking, instruct the DTC, through its Automated Tender Offer Program ("ATOP") to implement a blocking number in respect of such claims so that they would instead trade through a register maintained by the Subscription Agent. In each case, whether submitted directly or through DTC, a Rights Holder's Subscription Form (or ASOP instruction through DTC, if applicable) must actually be received by the Subscription Agent on or before the Expiration Time. Payment of the Aggregate Exercise Price must actually be received by the Escrow Agent on or before the Expiration Time. In addition, to exercise its Rights a Rights Holder must represent, warrant, and affirm that (a) such Rights Holder is making its own investment decision, which is not being made in conjunction with the investment decision of any other person to acquire a predetermined percentage of the shares of EFH or New EFH and (b) such Rights Holder will not own, in the aggregate, 50% or more of the New EFH Common Stock. Further, if a Rights Holder is receiving Rights in the Private Rights Offering, such Rights Holder must provide customary representations and warrantees demonstrating its qualification to participate in a private placement of securities, including that such Rights Holder is an Accredited Investor, as defined in Regulation D under the Securities Act.

**If the Subscription Agent for any reason does not receive from a Rights Holder (1) either (a) a valid ASOP instruction via DTC or (b) a validly completed Subscription Form and, if applicable, instruction through the DTC's ATOP system, on or prior to the Expiration Time and (2) the Aggregate Exercise Price by the deadline and in the manner set forth above and in Paragraph 9 below, such Rights Holder shall be deemed to have relinquished and waived its right to participate in the Rights Offering, subject to possible waiver in accordance with "Disputes, Waivers, and Extensions" below. New EFH shall not be obligated to honor any**

6

**purported exercise of Rights received by the Subscription Agent after the Expiration Time, regardless of when the documents relating to such exercise were sent.**

9. **Payment of Exercise Price**

The Subscription Form shall include written instructions (the "Payment Instructions") relating to the payment of the Aggregate Exercise Price for each Rights Holder that exercises Rights. The Payment Instructions shall include, for each Rights Holder exercising Rights, (i) wire transfer instructions for the payment of the Aggregate Exercise Price and (ii) the deadline by which payment of the Aggregate Exercise Price must be made, which deadline shall be the Expiration Time; provided, that each of (a) the Backstop Investors, (b) any holder of First Lien Claims that (together with any other holder of First Lien Claims that is a direct or indirect Subsidiary or Affiliate of, or investment fund, fund or account that is advised, managed or controlled by, such holder or its Affiliates) is entitled to exercise Rights having an Aggregate Exercise Price of at least $50,000,000 and that is a party to the Plan Support Agreement, and (c) any other Rights Holder granted the right to do so at the sole discretion of New EFH (each of the foregoing, an "Eligible LC Holder") may elect to pay all or a portion of its Aggregate Exercise Price by delivering to the Escrow Agent a Qualifying Letter of Credit. A "Qualifying Letter of Credit" means an irrevocable standby letter of credit (without contingency or conditions) issued by an Eligible Financial Institution that names the Escrow Agent as the sole beneficiary thereof. An "Eligible Financial Institution" means a financial institution having a long-term senior unsecured indebtedness rating of at least "A-" by Standard & Poor's Ratings Services or Fitch Ratings Inc. or at least "A3" by Moody's Investors Service, Inc. The offering to Eligible LC Holders that elect to pay any portion of their Aggregate Exercise Price though a Qualifying Letter of Credit shall be part of the Public Rights Offering unless New EFH shall determine otherwise. An Eligible LC Holder must elect whether to pay its Aggregate Exercise Price in cash or through a Qualifying Letter of Credit no later than ten days prior to the initial filing of the Rights Offering Registration Statement or on such later date as may be determined by New EFH; provided, that if no such timely election is made by any such Eligible LC Holder, such holder will be deemed to have elected to pay cash. Once an Eligible LC Holder has elected to pay its Aggregate Exercise Price through a Qualifying Letter of Credit, it may instead pay in cash, provided that if the offering to such Eligible LC Holder was a part of the Private Rights Offering, then, at the election of New EFH, the offering to such Eligible LC Holder shall remain part of the Private Rights Offering.

10. **Rights Offering Funds**

The payments of the Aggregate Exercise Price (whether made in cash or through delivery of a Qualifying Letter of Credit by Eligible LC Holders) made by all exercising Rights Holders in connection with the Rights Offering (the "Rights Offering Funds") shall be deposited and held in escrow pending the Effective Date in a trust account or accounts administered by an Escrow Agent to be appointed by New EFH (collectively, the "Escrow Account"), which (a) shall not constitute property of New EFH or of the Debtors or the Debtors' estates until the Effective Date, (b) shall be separate and apart

from the Escrow Agent's general operating funds and any other funds subject to any lien or any cash collateral arrangements, (c) will be maintained for the purpose of holding the funds for administration of the Rights Offering until the Effective Date and for the payment of any Transaction Fees (as provided below), and (d) shall be subject to an escrow agreement by and among New EFH, EFH Corp., EFIH, and the Escrow Agent on terms reasonably acceptable to New EFH, EFH Corp., and EFIH.  The Escrow Agent shall not use the Rights Offering Funds for any purpose other than to release the funds as directed by New EFH on the Effective Date and the payment of Transaction Fees and shall not encumber or permit the Rights Offering Funds to be encumbered by any lien or similar encumbrance; provided, that the Rights Offering Funds shall only be released to New EFH or any of its affiliates upon the occurrence of the Effective Date, subject to the terms of the following paragraph, Section 7 and Section 11.

New EFH may become obligated under the Merger and Purchase Agreement or other Transaction Agreements to pay certain fees and expenses in connection with the transactions contemplated under the Merger and Purchase Agreement (including approximately $27,500,000 to the Lenders under the Fee Letter (each as defined in the Merger and Purchase Agreement)) prior to Effective Date (collectively, "Transaction Fees").  For the purpose of ensuring that each Exercising Holder pays its proportionate share of any Transaction Fees, the escrow agreement governing the Escrow Account shall provide that the Escrow Agent shall establish from the amount funded into the Escrow Account a reserve in the amount of $44,800,000 (the "Expense Reserve"), from which any Transaction Fees shall be paid.  Consequently, if any of the Transaction Fees become due and payable, each Exercising Holder and Backstop Investor shall be responsible for their respective proportionate shares of such Transaction Fees and New EFH may give written instruction to the Escrow Agent to release such proportionate share of the Transaction Fees from the Expense Reserve for the purpose of paying the Exercising Holders' and Backstop Investors' proportionate shares of such Transaction Fees.  In connection with any amount to be so released, New EFH shall instruct the Escrow Agent to draw an appropriate amount from each Qualifying Letter of Credit delivered to the Escrow Agent and to allocate such amount to the Expense Reserve in order to give effect to the foregoing.  If the Effective Date does not occur, the funds in the Expense Reserve shall be released to Exercising Holders only when all claims for payment of any Transaction Fees that may be payable by New EFH have been fully resolved.

**11. Subsequent Adjustments**

If, after the Expiration Time, the amount of New EFH Common Stock in the Second Lien/Unsecured Rights Offering is decreased, whether as a result of the Minority Buy-Out not occurring or occurring only in part, or due to other actions following the Rights Offering Record Date, the Second Lien/Unsecured Rights exercised by each properly exercising Rights Holder shall be reduced on a pro rata basis.  To the extent a holder of Second Lien/Unsecured Rights has paid its Aggregate Exercise Price (as defined below) in cash the difference between the Aggregate Exercise Price actually paid by such exercising Rights Holder and the Aggregate Exercise Price that such Rights Holder is required to pay after giving effect to the reduction, if any, shall be refunded, without interest, on or as soon as reasonably practicable after the date of such adjustment.

8

To the extent a holder of Second Lien/Unsecured Rights has paid its Aggregate Exercise Price using a Qualifying Letter of Credit, such Rights Holder may either reduce the amount of such Qualifying Letter of Credit or replace it with a Qualifying Letter of Credit reflecting the new Aggregate Exercise Price**.**

**12. Required Certification**

The Subscription Form for the Second Lien/Unsecured Rights Offering will include a certification (the "Claims Certification") from each Rights Holder that it holds at the time of its exercise of Second Lien/Unsecured Rights, has held since the time it acquired the Second Lien/Unsecured Rights it is exercising, and will continue to hold thereafter through the Effective Date, the Requisite Amount of Claims for each Second Lien/Unsecured Right it is exercising.  **Any Rights Holder that seeks to exercise its Second Lien/Unsecured Rights and does not properly complete the Claims Certification will be deemed to have not properly completed its Subscription Form and to have not exercised its Second Lien/Unsecured Rights**.  If after any exercise of **Rights, New EFH becomes aware that the Claims Certification provided by a Rights Holder was false (including because such Rights Holder failed to continue to hold the Requisite Amount of Claims because it transferred Rights Offering Allowed Claims after exercising its Second Lien/Unsecured Rights), New EFH may cause such Rights Holder to forfeit both its right to receive shares of New EFH Common Stock on the Effective Date and the Aggregate Exercise Price paid by it in connection with the exercise of Second Lien/Unsecured Rights, and New EFH shall have the right to offer and sell the shares of New EFH Common Stock represented by such Second Lien/Unsecured Rights on such Rights Holder's behalf to any Person or Persons in New EFH's sole discretion**.  If New EFH sells such New EFH Common Stock it shall remit the proceeds of such sale, net of any fees and expenses, to the Rights Holder whose Second Lien/Unsecured Rights represented such New EFH Common Stock; provided, that such payment shall not exceed the Aggregate Exercise Price paid in respect of such shares.  New EFH shall be under no obligation to offer and sell such New EFH Common Stock or to address any shortfall between the proceeds of such sale and the Aggregate Exercise Price paid by such Rights Holder.  New EFH may, in its sole discretion, alter the Claims Certification and take other actions to the extent necessary to allow for trading together of Rights that have been exercised ("Exercised Rights") and a Requisite Amount of Claims during the period between the exercise of any Rights and the Effective Date.  In such event, the Exercised Rights and associated Requisite Amount of Claims would only trade together in contemporaneous transactions to the same purchaser.  In addition, in respect of a DTC Exercise and Blocking, New EFH may elect to not require such a certification in connection with the exercise of such Rights.

**13. Closing and Delivery of New EFH Common Stock**

The New EFH Common Stock acquired pursuant to a valid exercise of Rights shall be distributed to Rights Holders on or as soon as reasonably practicable after the Effective Date in accordance with the distribution provisions contained in the Rights Offering Registration Statement.  Each such share of New EFH Common Stock shall be

9

fully paid and non-assessable and New EFH shall use commercially reasonable efforts to cause such shares to be listed on the same exchange or exchanges, if any, as other shares of the New EFH Common Stock.

### 14. Trading of New EFH Common Stock

The New EFH Common Stock issued pursuant to the Public Rights Offering will be issued pursuant to the Rights Offering Registration Statement and will be freely tradable (subject to the restrictions on New EFH Common Stock held by affiliates of New EFH, as described below). The New EFH Common Stock issued pursuant to the Private Rights Offering (the "Private Securities") will be issued without registration under the Securities Act in reliance upon the exemption provided in section 4(a)(2) and/or Regulation D of the Securities Act. As such, the Private Securities will be "restricted securities", as defined in Rule 144 under the Securities Act ("Rule 144"), and may not be transferred or sold except pursuant to an effective registration statement under the Securities Act or a valid exemption from the registration requirements of the Securities Act. Shares of New EFH Common Stock, whether or not Private Securities, that are held by affiliates of the Company, as defined under the Securities Act, will be considered "control securities" under the Securities Act and will be subject to the volume and manner of sale requirements of Rule 144.

### 15. Miscellaneous

*Disputes, Waivers, and Extensions*

Any and all disputes concerning the timeliness, viability, form, and eligibility of any exercise of Rights shall be addressed by New EFH in its sole discretion, reasonably exercised in good faith, which determinations shall be final and binding. A Rights Holder shall be deemed not to have complied with subscription instructions, and such Rights Holder's Subscription Form shall be deemed not duly executed and completed unless and until all defects and irregularities have been waived or cured within such time as New EFH determines in its discretion, reasonably exercised in good faith. New EFH reserves the right, but is under no obligation, to give notice to any Rights Holder regarding any defect or irregularity in connection with any purported exercise of Rights by such Rights Holder and New EFH may, but is under no obligation to, permit such defect or irregularity to be cured within such time as it may determine in good faith. None of the Debtors, New EFH, the Subscription Agent, the Backstop Investors or any of their respective advisors or agents shall incur any liability for failure to give such notification.

*Modifications*

Subject to the final two paragraphs of Section 3.1 of the Plan Support Agreement, New EFH, with the prior written consent of EFH Corp. and EFIH (such consent not to be unreasonably withheld, conditioned or delayed), may modify these Rights Offering Procedures or adopt such additional detailed procedures consistent with the provisions of these Rights Offering Procedures to more efficiently administer the exercise of the Rights; provided, that the Debtors shall provide prompt written notice of

any material modification to these Rights Offering Procedures made by New EFH after the commencement of the Rights Offering by a filing with the Bankruptcy Court or by issuing a press release. The Rights Offering Registration Statement will contain a detailed description of the procedures for the Public Rights Offering, and in the event of any discrepancy between the information contained herein and the information contained in the Rights Offering Registration Statement, the information contained in the Rights Offering Registration Statement shall control.

### *Waiver and Release*

Each Rights Holder that participates in the Rights Offering shall be deemed, by virtue of such participation, to have waived and released as of the Effective Date, to the fullest extent permitted under applicable law, all rights, claims or causes of action against the Debtors, New EFH, the Backstop Investors and each of their respective subsidiaries, affiliates, advisors and agents, the Subscription Agent and the Escrow Agent arising out of or related to the receipt, delivery, disbursements, calculations, transmission or segregation of cash, Rights or New EFH Common Stock solely in connection with the Rights Offering, except to the extent such claims arise out of gross negligence or willful misconduct by any such party. Notwithstanding the foregoing, for the avoidance of doubt, neither the Debtors, nor New EFH nor the Backstop Investors are waiving any claims that they may have pursuant to the Transaction Agreements or otherwise in connection with New EFH Common Stock.

### *Rights Offering Conditioned Upon Confirmation of the Plan; Reservation of Rights*

Notwithstanding anything to the contrary herein and in the Rights Offering Registration Statement, all exercises of Rights and the receipt of New EFH Common Stock in respect thereof are subject to and conditioned upon the confirmation of the Plan and the occurrence of the Effective Date. Notwithstanding anything contained herein, the Disclosure Statement, the Plan or the Rights Offering Registration Statement to the contrary, New EFH reserves the right to modify these Rights Offering Procedures (in accordance with the section under the heading "Modifications") in order to comply with applicable law.

**16. Subscription Agent**

Questions relating to these procedures, properly completing the Subscription Form or any of the requirements for exercising Rights or otherwise participate in the Rights Offering, should be directed to the Subscription Agent at:

Epiq Bankruptcy Solutions, LLC

[To be provided in final Rights Offering Procedures]