**Exhibit C**



Alvarez & Marsal North America, LLC
2100 Ross Avenue, 21st Floor
Dallas, TX 75201
Phone: +1 214 438 1000
Fax: +1 214 438 1001

January 30, 2013

Stacey Doré, Esq.
Senior Vice President and General Counsel
Energy Future Holdings Corporation
Energy Plaza
1601 Bryan Street
Dallas, TX 75201

Dear Ms. Doré:

This letter confirms and sets forth the terms and conditions of the engagement between Alvarez & Marsal North America, LLC ("A&M") and Energy Future Competitive Holdings Company (together with its subsidiaries and affiliates and its assigns and successors jointly and severally, the "Company"), including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and A&M (the "Agreement").

1.    Description of Services

(a) A&M shall provide consulting services to the Company at the direction of the Company's Chief Executive Officer, Chief Financial Officer and General Counsel (the "Responsible Officers") in connection with their efforts in seeking to improve the Company's financial performance, reporting directly to them, and assist the Company in an assessment of its longer term strategic alternatives. It is anticipated that A&M's activities shall include the following:

(i)    assistance in preparation of a revised cash flow forecast, if necessary, and presentation of such plan and forecast to the Company's Board of Directors (the "Board") and, if necessary, its creditors;

(ii)   assistance in financing issues including assistance in preparation of reports and liaison with creditors;

(iii)  report to the Board as desired or directed by the Responsible Officer(s); and

(iv)   other activities as are approved by you, the Responsible Officers or the Board and agreed to by A&M.

www.alvarezandmarsal.com

Stacey Dore, Esq.
January 30, 2013
Page 2

In rendering its services to the Company, A&M will report directly to the Responsible Officers and will make recommendations to and consult with the Responsible Officers and other senior officers of the Company as the Board or Responsible Officers direct.

(b) In connection with the services to be provided hereunder, from time to time A&M may utilize the services of employees of its affiliates and subsidiaries. Such affiliates are wholly owned by A&M's parent company and employees.

(c) A&M understands that external and internal counsel to the Company ("Counsel"), will utilize A&M's consulting services and work product to assist Counsel in formulating and rendering legal advice to the Company. A&M also understands that it is Counsel's intention and the position of Counsel that certain of A&M's work will be covered by the attorney work-product privilege and other applicable privileges. Although Company and Counsel are solely responsible for managing the recognition, establishment and maintenance (including waiver) of these privileges, A&M shall cooperate with the Company's reasonable written instructions regarding same. Accordingly, it is agreed that all working papers and other documents prepared for or received from, the Company or Counsel by A&M pursuant to this engagement, and all communications with Counsel and the Company in connection therewith, will be maintained and labeled by A&M as confidential and privileged material in accordance with the terms hereof.

2.   <u>Information Provided by the Company and Forward Looking Statements</u>

The Company shall use all reasonable efforts to: (i) provide A&M with access to management and other representatives of the Company; and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that A&M reasonably requests in connection with the services to be provided to the Company. A&M shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and information that is furnished by or on behalf of the Company and otherwise reviewed by A&M in connection with the services performed for the Company. The Company acknowledges and agrees that A&M is not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. A&M is under no obligation to update data submitted to it or to review any other areas unless specifically requested by the Board or the Responsible Officers to do so.

You understand that the services to be rendered by A&M may include the preparation of projections and other forward-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ



Case 14-10979-CSS    Doc 661-3    Filed 05/21/14    Page 4 of 15

Stacey Dore, Esq.
January 30, 2013
Page 3

from those projections.  In addition, A&M will be relying on information provided by the Company in the preparation of those projections and other forward-looking statements.

3.      Limitation of Duties

A&M makes no representation or guarantee that, inter alia, (i) an appropriate restructuring proposal or strategic alternative can be formulated for the Company, (ii) any restructuring proposal or strategic alternative presented to the Company's management or the Board or Responsible Officers will be more successful than all other possible restructuring proposals or strategic alternatives, (iii) restructuring is the best course of action for the Company or (iv) if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents.  Further, A&M does not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction.  A&M shall be responsible for assistance with the implementation only of any restructuring proposal or strategic alternative approved by the Board or Responsible Officers and only to the extent and in the manner authorized by and directed by the Board or Responsible Officers and agreed to by A&M.

4.      Compensation

(a) A&M will receive fees based on the following hourly rates:

| Managing Directors | $675-875 |
| Directors | $475-675 |
| Analysts/Associates | $275-475 |

Such rates shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

(b) In addition, A&M will be reimbursed for its reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging, duplicating, messenger and telephone charges.  All fees and expenses will be billed and payable on a monthly basis or, at A&M's discretion, more frequently.

(c) The Company shall promptly remit to A&M a retainer in the amount of $500,000, which shall be credited against any amounts due at the termination of this engagement and returned upon the satisfaction of all obligations hereunder.



Stacey Dore, Esq.
January 30, 2013
Page 4

5.    <u>Term</u>

(a) This Agreement will apply from the commencement of the services referred to in Section 1 and may be terminated with immediate effect by either party without cause by written notice to the other party.

(b) A&M normally does not withdraw from an engagement unless the Company misrepresents or fails to disclose material facts, fails to pay fees or expenses, or makes it unethical or unreasonably difficult for A&M to continue performance of the engagement, or other just cause exists.

(c) On termination of the Agreement, any fees and expenses due to A&M shall be remitted promptly (i.e. fees and expenses that accrued prior to but are invoiced subsequent to such termination).

(d) The provisions of this Agreement that give the parties rights or obligations beyond its termination shall survive and continue to bind the parties.

6.    <u>Relationship of the Parties</u>

The parties intend that an independent contractor relationship will be created by this engagement letter. Neither A&M nor any of its personnel or agents is to be considered an employee or agent of the Company and the personnel and agents of A&M are not entitled to any of the benefits that the Company provides for the Company employees. The Company acknowledges and agrees that A&M's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.

7.    <u>No Third Party Beneficiary</u>

The Company acknowledges that all advice (written or oral) provided by A&M to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its Board and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without A&M's prior approval (which shall not be unreasonably withheld), except as required by law.



Stacey Dore, Esq.
January 30, 2013
Page 5

8.   Conflicts

A&M is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because A&M and its affiliates and subsidiaries comprise a consulting firm (the "Firm") that serves clients on a global basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the services under this Agreement from providing services in matters unrelated to the subject of this Agreement to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company's, provided the Firm makes appropriate arrangements to ensure that the confidentiality of information is maintained. The Company acknowledges and agrees that the services being provided hereunder are being provided on behalf of each of them and each of them hereby waives any and all conflicts of interest that may arise on account of the services being provided on behalf of any other Company, except that the Company does not waive conflicts of interest arising out of A&M's proposed representation of other entities in any matter that is identical to or related to the matters covered by this Agreement. Each Company represents that it has taken all corporate action necessary and is authorized to waive such potential conflicts of interest.

9.   Confidentiality / Non-Solicitation

A&M shall keep as confidential all information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision. The Company, on behalf of itself and its subsidiaries and affiliates and any person which may acquire all or substantially all of its assets agrees that, until one (1) year subsequent to the termination of this engagement, it will not solicit or recruit, hire or otherwise engage as an independent contractor any employee of A&M or any of its affiliates who worked on this engagement while employed by A&M or its affiliates ("Solicited Person"). Should the Company or any of its subsidiaries or affiliates or any person who acquires all or substantially all of its assets extend an offer of employment to or otherwise engaged as an independent contractor any Solicited Person and should such offer be accepted, A&M shall be entitled to a fee from the party extending such offer equal to the Solicited Person's hourly client billing rate at the time of the offer multiplied by 4,000 hours for a Managing Director, 3,000 hours for a Senior Director and 2,000 hours for any other A&M employee. The Company acknowledges and agrees that this fee fairly represents the loss that A&M will suffer if



76

Stacey Dore, Esq.
January 30, 2013
Page 6

the Company breaches this provision.  The fee shall be payable at the time of the Solicited Person's acceptance of employment or engagement.  A&M agrees that such fee shall act as liquidated damages and that such fee shall be its exclusive remedy under this letter agreement related to such matter.

10.    <u>Indemnification and Limitations on Liability</u>

The attached indemnification and limitation on liability agreement is incorporated herein by reference and shall be executed upon the acceptance of this Agreement.  Termination of this engagement shall not affect these indemnification and limitation on liability provisions, which shall remain in full force and effect.

11.    <u>Miscellaneous</u>

This Agreement (together with the attached indemnity provisions), including, without limitation, the construction and interpretation of thereof and all claims, controversies and disputes arising under or relating thereto, shall be governed and construed in accordance with the laws of the State of New York, without regard to principles of conflict of law that would defer to the laws of another jurisdiction.  The Company and A&M agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of A&M hereunder. The Company and A&M agree, to the extent permitted by applicable law, that any litigation arising out of this Agreement shall be filed exclusively in the federal courts of the Northern District of Texas (Dallas Division); to submit to the personal jurisdiction of the federal Courts in the Northern District of Texas (Dallas Division); and to waive any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within the State of Texas for any litigation arising in connection with this Agreement.

This Agreement shall be binding upon A&M and the Company, their respective heirs, successors, and assignees, and any heir, successor, or assignee of a substantial portion of A&M's or the Company's respective businesses and/or assets, including any Chapter 11 Trustee.  This Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the Company and A&M.

[signature page to follow]



Stacey Dore, Esq.
January 30, 2013
Page 7

If the foregoing is acceptable to you, kindly sign where indicated below to acknowledge your agreement with its terms.

Very truly yours,

Alvarez & Marsal North America, LLC

By: _____
Jeffery J. Stegenga
Title:   Managing Director

Accepted and agreed:

Energy Future Competitive Holdings Company

By: _____
Stacey Dore, Esq.
Senior Vice President & General Counsel

Stacey Dore, Esq.
January 30, 2013
Page 8

## INDEMNIFICATION AND LIMITATION ON LIABILITY AGREEMENT

This indemnification and limitation on liability agreement is made part of an agreement, dated January 30, 2013 (which together with any renewals, modifications or extensions thereof, is herein referred to as the "Agreement") by and between Alvarez & Marsal North America, LLC ("A&M") and Energy Future Competitive Holdings Company (the "Company"), for services to be rendered to the Company and its subsidiaries by A&M.

A.     The Company agrees to indemnify and hold harmless each of A&M, its affiliates and their respective shareholders, members, managers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the reasonable and customary costs for counsel or others (including employees of A&M, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to (a) any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct or (b) to any claim by the Company against A&M as to A&M's breach of A&M's express obligations under the Agreement or (c) to any claim by A&M against the Company which related dispute was first initiated by A&M.  The Company also agrees that (a) no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of A&M, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct and (b) in no event will any Indemnified Party have any liability to the Company for special, consequential, incidental or exemplary damages or loss (nor any lost profits, savings or business opportunity). The Company further agrees that it will not, without the prior consent of an Indemnified Party (which consent shall not be withheld unreasonably), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.     These indemnification provisions shall be in addition to any liability which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the



Stacey Dore, Esq.
January 30, 2013
Page 9

Agreement or A&M's and its personnel's role under the Agreement, A&M or any Indemnified Party is required to produce any of its personnel (including former employees) for examination, deposition or other written, recorded or oral presentation, or A&M or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.      If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company within 14 calendar days of receiving notice of such action, proceeding, or investigation,; provided, however, that any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations hereunder, except to the extent that such failure shall have actually prejudiced the defense of such action.  The Company shall be entitled to assume the defense of any action, proceeding, or investigation, at the Company's expense, with counsel reasonably satisfactory to the Indemnified Party; provided, however, that if, in the written opinion of an outside lawyer representing the Indemnified Party, there is an actual or potential conflict of interest on any material issue between the Company and the Indemnified Party, then the Indemnified Party shall be entitled to use separate counsel of its own choice, and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.    Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts advanced or incurred by the Company under this Indemnification Agreement if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense.  The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.      In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable



80

Stacey Dore, Esq.
January 30, 2013
Page 10

for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and A&M seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which A&M would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.  The Company will also promptly pay the Indemnified Parties for any expenses reasonably incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of A&M's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

Energy Future Competitive Holdings Company    Alvarez & Marsal North America, LLC

By: _____          By: _____
Name: Stacey Dore                    Name: JEFFERY J. STEGENGA
Title: GC                            Title: MANAGING DIRECTOR

81

*Execution Version*
*Confidential*

## AMENDMENT TO ENGAGEMENT LETTER

**THIS AMENDMENT TO ENGAGEMENT LETTER** is made as of December 31, 2013, by and among Alvarez & Marsal North America, LLC ("<u>A&M</u>"), on the one hand, and Energy Future Holdings Corp. ("<u>EFH</u>"), Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>"), Energy Future Competitive Holdings Company LLC ("<u>EFCH</u>"), and Texas Competitive Electric Holdings Company LLC ("<u>TCEH</u>") (collectively, the "<u>Company Parties</u>"), on the other hand and amends that certain engagement letter entered into by and between EFCH, on the one hand, and A&M, on the other hand, dated as of January 30, 2013 (together with the indemnification and limitation on liability agreement attached to and incorporated by reference therein (the "Indemnification Agreement), the "<u>Engagement Letter</u>"). Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Engagement Letter.

**WHEREAS**, A&M and the Company Parties desire to amend the Engagement Letter as set forth in this letter agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.     <u>Amendment to the Engagement Letter</u>. The definition of "Company" set forth in the first paragraph of the Engagement Letter and the first paragraph of the Indemnification Agreement are hereby modified to mean:

>       "Energy Future Holdings Corp. and its direct and indirect subsidiaries, other than Oncor Holdings LLC and its subsidiaries (collectively, "Oncor")."

2.     <u>Joint & Several Liability</u>. Each of the Company Parties hereby acknowledges and agrees that they are each jointly and severally liable to A&M and its affiliates for all of the Company's representations, warranties, covenants, liabilities and obligations set forth in the Agreement (including but not limited to the indemnification and limitation on liability agreement attached to and incorporated by reference in the Agreement). Any beneficiary of this agreement may seek to enforce any of its rights and remedies hereunder against any or all of the Company Parties in any order at any time in its sole discretion.

3.     <u>Ratification</u>. Each of the Company Parties agrees to all of the terms and conditions applicable to the Company set forth in the Engagement Letter and Indemnification Agreement as if they executed the same. Except as specifically provided for in this letter agreement, no changes, amendments, or other modifications have been made on or prior to the date hereof or are being made to the terms of the Engagement Letter or the rights and obligations of the parties thereunder, all of which are hereby ratified and confirmed and remain in full force and effect.

KE 28994489.1

82

3.     <u>Effect of Amendment</u>.  This letter agreement shall be effective as of December 31, 2013.  Following the effective date, whenever the Engagement Letter is referred to in any agreements, documents, correspondence, and instruments, such reference shall be deemed to be in the Engagement Letter as amended by this letter agreement.

*[Signature pages follow.]*

KE 28994489.1

Please confirm your agreement with the foregoing by signing and returning one copy of this letter to the undersigned, whereupon this letter agreement shall become a binding agreement between you and each of the Company Parties.

Very truly yours,

**ENERGY FUTURE HOLDING CORP.**

By:
Name:    Stacey Doré
Title:    Executive Vice President and General Counsel

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC**

By:
Name:    Stacey Doré
Title:    Executive Vice President and General Counsel

**TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC**

By:
Name:    Stacey Doré
Title:    Executive Vice President and General Counsel

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By:
Name:    Stacey Doré
Title:    Executive Vice President and General Counsel

*Signature Page to Amendment to Engagement Letter*

Accepted and agreed as of the
date first written above:

**ALVAREZ & MARSAL NORTH AMERICA, LLC**

By: _____
Name: ~~JEFFREY J. STEGENGA~~
Title: ~~MANAGING DIRECTOR~~

*Signature Page to Amendment to Engagement Letter*

85