**<u>EXHIBIT E</u>**

**Addendum to Alcoa Proofs of Claim**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Main Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | |
| Debtors Against Which Claims Are Held: | Chapter 11 |
| ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC; ENERGY FUTURE HOLDINGS CORP.; LUMINANT GENERATION COMPANY LLC; LUMINANT HOLDING COMPANY LLC; LUMINANT MINING COMPANY LLC; SANDOW POWER COMPANY LLC; TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC. | Case Nos. 14-11005 (CSS); 14-10979 (CSS); 14-11032 (CSS); 14-11037 (CSS); 14-11042 (CSS); 14-11033 (CSS); 14-10978 (CSS) |

## ADDENDUM TO PROOFS OF CLAIM OF ALCOA INC.

1.       Alcoa Inc. ("Alcoa") hereby files this addendum (the "Addendum") to its proofs of claim (the "Claims") in the bankruptcy cases of each of the above-captioned debtors and debtors-in-possession (the "Debtors"), pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"):

- Energy Future Competitive Holdings Company, LLC, Case No. 14-11005 (CSS) ("EFHC");

- Energy Future Holdings Corp., Case No. 14-10979 (CSS) ("EFH");

- Luminant Generation Company LLC, Case No. 14-11032 (CSS) ("Luminant Generation");

- Luminant Holding Company LLC, Case No. 14-11037 (CSS) ("LHC");

- Luminant Mining Company LLC, Case No. 14-11042 (CSS) ("Luminant Mining");

- Sandow Power Company LLC, Case No. 14-11033 (CSS) ("Sandow Power"); and

- Texas Competitive Electric Holdings Company LLC, Case No. 14-10978 ("TCEH," and together with EFHC, EFH. Luminant Generation, LHC, Luminant Mining, and Sandow Power, collectively, the "Luminant Entities").

Alcoa's Claims, including, without limitation, each of the values identified herein have been calculated to the best of Alcoa's knowledge as of the date of this filing and as qualified in every respect as set forth in greater detail in this Addendum.

2.     Alcoa files the Claims in connection with the October 27, 2014, claims bar date (the "Bar Date") established in these cases by the Bankruptcy Court's August 18, 2014, *Order (a) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (b) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (c) Approving Notice Thereof* (the "Bar Date Order") [Main Case ECF No. 1866]. Alcoa reserves the right to supplement, amend, or correct the claim characterization, claim population, and each claim value and/or placeholder reported herein.

## A.     BACKGROUND

3.     In 1951, Alcoa began its decades-long relationship with the Luminant Entities (and their predecessors) to fuel, maintain, and operate a power plant located on an Alcoa smelting facility in Rockdale, Texas (the "Rockdale Facility"). Over the years, the parties entered into dozens of agreements, amendments and supplements, regarding the operation of power generation units at the Rockdale Facility (the "Alcoa/Luminant Agreements"). Generally, pursuant to the Alcoa/Luminant Agreements, Luminant Mining was contracted by Alcoa to mine lignite coal, which would then be provided and/or sold to Luminant Generation and Sandow

- 2 -

Power. Luminant Generation and Sandow Power would then use the lignite coal to generate electricity at two units (known as "Unit 4" and "Unit 5"), which are part of the Rockdale Facility.

4.       The parties originally entered into two contracts in 1951, under which certain of the Luminant Entities operated three of Alcoa's power plants until the late 1980's. In 1976, the parties entered into an agreement related to the operation of Unit 4 (the "Unit 4 Agreement"), pursuant to which certain of the Luminant Entities agreed to build, own and operate the Unit 4 power plant, and Alcoa agreed to purchase from Luminant, on a cost-plus basis, a set amount of "firm" power (from any source) and supply certain of the Luminant Entities with an amount of lignite coal sufficient to operate Unit 4.

5.       In addition to the Unit 4 Agreement, there are myriad other agreements the parties have entered into (not counting amendments and side letters). By way of example, some of the other Alcoa/Luminant Agreements consist of agreements related to, *inter alia*, mining, lignite royalty payments, leases, power generation, asset purchase, and common facilities arrangements, which include (without limitation):

- Ground Lease, dated August 31, 2007, between Alcoa and Luminant Mining.

- Amended and Restated Common Facilities Agreement, dated August 10, 2012, between Alcoa, Luminant Generation, and Sandow Power.

- Sandow Building 200 Lease, dated January 31, 2009, between Alcoa and Sandow Power.

- Agreement Regarding Ownership of Lignite Interest, dated August 15, 2007, between Alcoa and Sandow Power.

- Lignite Mining Lease, dated August 31, 2007.

- Premises Lease by and among Alcoa Luminant Generation Sandow Power Company dated as of June 30, 2009.

- 3 -

McKool 1023839v2

- Purchase and Sale Agreement, dated August 31, 2007, between Alcoa and TXU Mining Company, LP regarding the purchase of the Three Oaks Mine, and related documents all of same date, including:

  o Promissory Note in the amount of $65,295,149, from TXU Mining Company, LP to Alcoa.

  o Security Agreement between TXU Mining Company, LP and Alcoa.

  o Premises Lease between Alcoa (as Landlord) and TXU Mining Company, LP.

  o Ground Lease between Alcoa (as Landlord) and TXU Mining Company, LP.

  o Bill of Sale, Assignment and Assumption Agreement between Alcoa and TXU Mining Company, LP.

  o Sublease Agreement between Alcoa and TXU Mining Company, LP subleasing Alcoa's rights under the Texas Railroad Commission Surface Mining and Reclamation Division, Permit No. 48.

  o Ground Lease between Alcoa (as Landlord) and TXU Mining Company, LP.

  o Ground Lease between Alcoa (as Landlord) and TXU Mining Company, LP.

  o Contract Mining Agreement between TXU Mining Company, LP, Alcoa, and TXU Sandow Development Company LP.

  o Amended and Restated Sandow Unit 5 Agreement between TXU Sandow Development Company LP, TXU Generation Company LP and Alcoa.

  o Lignite Inventory Agreement between Alcoa, TXU Sandow Development Company LP, and TXU Mining Company LP.

- Letter Agreement dated August 10, 2012, between Alcoa and Luminant Generation Company LLC, regarding access to and use of Alcoa parking areas at Rockdale and the Bechtel Laydown Area.

- Settlement and Release Agreement dated August 10, 2012 between Luminant Generation Company LLC, Sandow Power Company LLC, Luminant Mining Company LLC, and Alcoa.

- Common Facilities Agreement by and between Alcoa Inc. and Luminant Generation Company LLC effective as of June 30, 2009.

- Amended and Restated Sandow Unit Five Agreement by and among TXU Sandow, TXU Generation Company LP dated August 31, 2007.

- 4 -

- Power Purchase Agreement by and between TXU Generation and Alcoa effective as of August 28, 2007.

- Power Contract by and between Alcoa and Texas Power and Light Company dated August 29, 1951.

- Operating Contract by and between Alcoa and Texas Power and Light Company dated August 29, 1951.

- Agreement for Maintenance by and between Alcoa and Texas Utilities Electric Company effective as of August 13, 1990.

- Coal Lease between Alcoa (as lessor) and Alcoa (as lessee) effective as of April 15, 2005 and later assigned to the Luminant Entities.

- Various Indemnity Agreements.

6.      These are just a sample of the number of agreements the parties have entered into over the years, and Alcoa reserves the right to amend and/or supplement the extent of the universe of the Alcoa/Luminant Agreements and Alcoa's claims thereunder.  Accordingly, Alcoa reserves the right to update/supplement its Claims (and this Addendum).[1]

## B.      ALCOA'S CLAIMS AND GROUNDS FOR THE LUMINANT ENTITIES' LIABILITY

7.      Alcoa and the Luminant Entities had (and continue to have) a complex contractual relationship based on the myriad Alcoa/Luminant Agreements, described above, regarding the operation of the Rockdale Facility.  That relationship is the basis for the various categories of Alcoa's liquidated and unliquidated Claims.  While Alcoa continues to investigate its claims against the Luminant Entities, Alcoa's Claims identified to date broadly fall into the following categories:  (i) allowed Setoff Stipulation claims; (ii) breach claims; (iii) rejection damages claims; and (iv) other miscellaneous claims.

---

[1] Because the Alcoa/Luminant Agreements are voluminous and contain confidential/commercially sensitive information, they are not attached hereto.  Alcoa will make the Alcoa/Luminant Agreements available to parties-in-interest upon reasonable request and in Alcoa's discretion, subject to a confidentiality agreement satisfactory to Alcoa.

### i.    Allowed Setoff Stipulation Claims

8.    Prior to the Petition Date, the Luminant Entities and Alcoa regularly netted and setoff amounts owing by and among the Luminant Entities and Alcoa under certain of the Alcoa/Luminant Agreements.  After months of negotiation, Alcoa and the Luminant Entities reached an agreement on the parties' pre-petition and post-petition setoff rights.  This agreement is the subject of a stipulation (the "Setoff Stipulation"), which was approved by order of the Bankruptcy Court on September 12, 2014.[2]  Under the Setoff Stipulation, the Luminant Entities and Alcoa netted, among other things, all agreed mutual pre-petition amounts the parties owed to each other.[3]  This resulted in Alcoa making a consolidated net payment to the Luminant Entities on October 3, 2014, $4,963,998.87 of which payment resolved the parties' agreed-upon mutual, pre-petition claim amounts.[4]

9.    Because all setoffs approved in the Setoff Stipulation were mutual between Alcoa and each of the Luminant Entities, Alcoa was left with an unsecured, pre-petition, liquidated claim of $16,495.60 against Sandow Power.  Accordingly, the Setoff Stipulation provides for Alcoa to have an allowed, liquidated, unsecured claim against Sandow Power in that amount (the "Allowed Alcoa/SPC Unsecured Claim").[5]  Although the Setoff Stipulation provides that "Alcoa

---

[2] *Order Approving the Stipulation by and among Luminant Generation Company, LLC, Luminant Mining Company, LLC, Sandow Power Company, LLC, and Alcoa Inc.* (the Setoff Stipulation Order") [Main Case ECF No. 2002]. The Setoff Stipulation Order (which incorporates the Setoff Stipulation as Exhibit A) is attached to this Addendum as Exhibit 1.

[3] Setoff Stipulation § 2.01.

[4] *Id.* at § 2.06(a).  Setoff Stipulation § 2.08 reserves certain other pre-petition claims among the parties and nothing herein constitutes a waiver of any of Alcoa's rights reserved in Setoff Stipulation § 2.08.

[5] *Id.* at § 2.01(c)(ii).  Alcoa also believes any claims it may have had against the Luminant Entities for, *inter alia*, the delivery of coal and/or power under Bankruptcy Code § 503(b)(9) have also been resolved by the Setoff Stipulation, but Alcoa reserves all of its rights as set forth herein and in Setoff Stipulation § 2.08, which is incorporated by reference as if fully set forth herein.

shall not be required to file a proof of claim in the Bankruptcy Cases of [Sandow Power] or any of its affiliates for the Allowed Alcoa/SPC Unsecured Claim,"[6] Alcoa nevertheless asserts the Allowed Alcoa/SPC Unsecured Claim herein out of an abundance of caution.[7]

### ii.    Claims under the Alcoa/Luminant Agreements

10.    Although the Setoff Stipulation resolved certain of Alcoa's liquidated unsecured claims related to, *inter alia*, unpaid power, royalties, and lease payments against the Luminant Entities, Alcoa has additional unliquidated claims against the Luminant Entities under the Alcoa/Luminant Agreements.  Specifically, investigations continue as to the Luminant Entities' performance under the Alcoa/Luminant Agreements.  For example, Alcoa has identified (and is continuing to investigate) claims against the Luminant Entities resulting from the performance of their obligations (including obligations to manage the Rockdale Facility) under the Alcoa/Luminant Agreements and/or their failure to use appropriate diligence in operating Unit 4 in an efficient and economical manner, as required under the Alcoa/Luminant Agreements.

11.    To the extent that the Luminant Entities have granted an interest to a third party in Unit 4, such grant constitutes a breach of the Unit 4 Agreement and/or other of the Alcoa/Luminant Agreements.  Alcoa continues to investigate the Luminant Entities' conduct related to the Rockdale Facility, including any of the Luminant Entities' breaches of the Alcoa/Luminant Agreements.  Accordingly, Alcoa reserves its right to amend and/or supplement its Claims during the course of its investigations, as appropriate.

---

[6] *Id.*

[7] The Setoff Stipulation also provides that "Alcoa shall be granted an allowed administrative expense claim for valid and undisputed postpetition net payables" owed to Alcoa pursuant to the Setoff Stipulation if payments are not made as contemplated under the Setoff Stipulation.  Setoff Stipulation § 2.09.  Nothing in this Addendum should be construed as a waiver of Alcoa's rights under Setoff Stipulation § 2.09.

- 7 -

12.    Further, to the extent any of the Luminant Entities attempt to assume any of the Alcoa/Luminant Agreements under Bankruptcy Code § 365(b), Alcoa reserves the rights to assert claims for any and all pre- and/or post-petition breaches of the Alcoa/Luminant Agreements as cure claims entitled to be paid as administrative expenses under Bankruptcy Code § 365(b)(1)(A).    But because the Debtors have not assumed any of the Alcoa/Luminant Agreements to date, any assessment of cure claims is premature and Alcoa's cure claims are unliquidated.

### iii.    Rejection Damages Claims

13.    Several of the Alcoa/Luminant Agreements may be executory contracts that the Debtors may seek to reject under Bankruptcy Code § 365(a).    To the extent the Debtors receive Bankruptcy Court approval to reject any of the Alcoa/Luminant Agreements under Bankruptcy Code § 365(a), such rejection constitutes a breach as "immediately before the date of the filing of the petition."[8]    Bankruptcy Code § 365(g)(1).    Because the Debtors have not rejected any of the Alcoa/Luminant Agreements to date, any assessment of pre- and/or post-petition rejection damages is premature and Alcoa's Claims for rejection damages are unliquidated.    Nevertheless, Alcoa reserves the right to amend its Claims if damages are identified from any rejection of the Alcoa/Luminant Agreements.    Alcoa further reserves its right under Bankruptcy Rule 3002(c)(4) to file claims for such rejection damages within such time as the Bankruptcy Court may fix.

---

[8] Because the Bar Date Order may require Alcoa to file a proof of claim by the Bar Date with respect to "all types of claims that arose *or are deemed to have arisen* before the Petition Date," Alcoa asserts unliquidated claims for rejection and any other pre-petition damages against the Luminant Entities, though none of the Alcoa/Luminant Agreements have been rejected by Bankruptcy Court order as of the date the Claims were filed.    Bar Date Order ¶ 2 (emphasis added).

- 8 -

### iv.    Other Miscellaneous Claims

14.    Alcoa and the Luminant Entities engaged in a wide variety of transactions both among themselves and with third parties resulting in unliquidated claims against the Luminant Entities. Some of these transactions are subject to contracts and/or circumstances, howsoever arising, that may result in a counterparty (i) seeking to set off an amount the counterparty owes to Alcoa or (ii) asserting a lien or other right over assets in or to which Alcoa has a proprietary claim and/or interest—including, without limitation, mechanics', materialman's, and/or construction and similar liens arising under operation of law or otherwise ("Operational Liens") against property the Luminant Entities lease from Alcoa.[9]  To the extent that a setoff against Alcoa or a lien against Alcoa property is successfully asserted, Alcoa will be subrogated to such counterparty's rights against the Luminant Entities or otherwise have a claim against the Luminant Entities in connection with such setoff or lien claim.

15.    In addition, various Alcoa/Luminant Agreements (or portions thereof) may constitute contracts coming under the purview of the "safe harbor" provisions of the Bankruptcy Code.[10]  To the extent the Alcoa/Luminant Agreements (or any portions thereof) constitute safe-harbor contracts, Alcoa may be entitled to set off, liquidate, terminate, and/or accelerate them. Accordingly, Alcoa reserves its rights to amend its Claims to reflect any exercise of its pre-petition rights to liquidate, terminate, or accelerate any of the Alcoa/Luminant Agreements (or

---

[9] To date, Alcoa is aware of the following alleged Operational Lien claims against Alcoa Property:  (i) Lien Claim of Ranger Excavating, Inc., in the amount of $292,598.58 for work on Unit 5 for Sandow Power; and (ii) Lien Claim of Automatic Systems, Inc., in the amount of $1,638,207.08 for work done on Alcoa property for Luminant Mining. Alcoa reserves its right to amend and/or supplement its Claims for Operational Lien claims against Alcoa Property of which it may become aware and/or may arise in the future.

[10] *See, e.g.,* Bankruptcy Code §§ 556 and 559-561.

- 9 -

portions thereof) that are commodities contracts under Bankruptcy Code §§ 556 and 559-561 or otherwise.

16.     Certain of the Alcoa/Luminant Agreements also contain indemnification and/or contribution provisions or are themselves indemnification agreements under which the Luminant Entities are obligated to indemnify Alcoa in the event certain conditions precedent occur.  While Alcoa is not currently aware of any such claims, Alcoa reserves its right to amend its Claims should it become aware of such claims in the future.

17.     Alcoa hereby also asserts a claim for interest and other costs including but not limited to attorneys' fees and/or other professional fees on the constituent parts of the Claims where appropriate, and expressly reserves the right to amend the Claims accordingly.

C.     **RESERVATION OF RIGHTS**

18.     Alcoa's Claims are filed with full reservation of rights, including the right to assert additional, supplementary, and/or amended proofs of claim based on events, information, and/or documents obtained from the Debtors (including the Luminant Entities) or otherwise through discovery or otherwise, and with full reservation of the rights and/or claims of Alcoa against any party other than the Luminant Entities, including but not limited to affiliates/subsidiaries of the Luminant Entities.

19.     Moreover, Alcoa preserves all rights to assert additional claims, for damages or otherwise, that Alcoa may have, whether known or unknown, against the Luminant Entities, including without limitation any and all claims under U.S. or other applicable law, and Alcoa further expressly reserves the right to amend its Claims in order to base its claims on other legal and factual grounds, whether based in contract, tort, or otherwise.

- 10 -

20.     Alcoa reserves all rights to update, revise and supplement the Claims with specific facts and other data supporting its Claims and rights under the Alcoa/Luminant Agreements or otherwise, including with respect to, but not limited to, the Claims described herein.  Alcoa does not waive any right to amounts due for its Claims asserted herein by not stating a specific amount due for any such claims at this time, and Alcoa expressly reserves all rights under the Bankruptcy Code, including, without limitation, Bankruptcy Code § 502(j), and other applicable law.

21.     Any agreement(s) that are referred to in Alcoa's Claims remain subject to Alcoa's continuing review and references thereto are accordingly subject to revision.

22.     Alcoa does not waive any right or rights of action that Alcoa has or may have against the Luminant Entities' and/or any of the other Debtors' estates or any other entity.  Alcoa reserves any and all rights it has or may have with respect to any other agreements that may exist between Alcoa and the Luminant Entities and/or other of the Debtors, including without limitation, any rights of setoff, recoupment, netting, contribution, subrogation, and common law indemnification.  Nothing herein shall be deemed a waiver by Alcoa of any of its rights and remedies in connection with such agreements, if any.

23.     By filing its Claims, Alcoa does not submit itself to the jurisdiction of the Bankruptcy Court or any other court or tribunal for any purpose with respect to its Claims.  Alcoa does not waive its rights to have final orders entered by the U.S. District Court for the District of Delaware if it is determined that the Bankruptcy Court does not have authority to enter final orders with respect to the Claims.  Alcoa does not waive or release its rights to (i) move to withdraw the reference or (ii) request a jury trial with respect to the subject matter of

- 11 -

Alcoa's Claims, any objection thereto, or other proceeding that may be commenced in this case against or otherwise involving Alcoa.

24.    By filing its Claims, Alcoa does not waive any of its rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether an affiliate of the Luminant Entities, or an assignee, guarantor, or otherwise. Alcoa reserves all rights to assert (i) any claim, defense, offset or other right against any party, including, but not limited to, the Luminant Entities or any of their affiliates and (ii) any claims, defenses, offsets or other rights available to it under U.S. or any other jurisdiction's law in the event the Luminant Entities and/or any of the other Debtors asserts counterclaims or affirmative claims against Alcoa in the Bankruptcy Court or elsewhere.

25.    Alcoa's Claims are not intended to be and shall not be construed as (i) an election of remedies, (ii) a waiver of any defaults, or (iii) a waiver or limitation of any rights, remedies, claims or interests of Alcoa.

26.    Alcoa reserves the right to replace, amend or supplement its Claims at any time and in any respect, including, without limitation, for the purpose of (i) setting forth or changing the basis of the Claims described herein and (ii) providing further description or evidence of such Claims.  In the event that any order of the Bankruptcy Court is entered that effects (i) a recharacterization or subordination of claims, including without limitation, these Claims or (ii) any other similar remedy, the rights of Alcoa to file additional proofs of claim or amended proofs of claim against the Luminant Entities, any of their subsidiaries/affiliates, and/or any of the other Debtors is specifically reserved.  Alcoa's Claims are submitted without prejudice to any of Alcoa's rights in all respects.

- 12 -

McKool 1023839v2

27.    Alcoa is still investigating the Alcoa/Luminant Agreements (and any other agreements that may exist between Alcoa and any of the Debtors) and reserves all its rights, claims, and defenses with respect to any proposed assumption, assignment, and/or rejection thereof, including, without limitation, Alcoa's rights to assert that all or a subset of the Alcoa/Luminant Agreements (i) may not be assumed under Bankruptcy Code §§ 365(c) and/or 365(e); (ii) are integrated and/or severable; (iii) may be liquidated, terminated, and/or accelerated under Bankruptcy Code §§ 556 and 559-561or otherwise; and (iv) are non-executory and cannot be assumed/assigned.

28.    Alcoa also reserves all other rights, including, without limitation, Alcoa's rights to object to the rejection, assumption, assignment, and/or vesting in any of the Debtors (as reorganized) of any of the Alcoa/Luminant Agreements for any reason, to move to compel the rejection of any of the Alcoa/Luminant Agreements, and to move to lift the automatic stay to permit Alcoa to effect any of its rights under the Alcoa/Luminant Agreements or applicable law.

**D.    NOTICES**

29.    Notices regarding Alcoa's Claims should be sent to:

Peter S. Goodman, Esq.
Michael R. Carney, Esq.
MCKOOL SMITH, P.C.
One Bryant Park, 47th Floor
New York, New York 10036
Telephone:  (212) 402-9400
Facsimile:  (212) 402-9444
Email:  pgoodman@mckoolsmith.com
        mcarney@mckoolsmith.com

Thomas F. Seligson, Esq.
Counsel
ALCOA INC.
390 Park Avenue
New York, New York 10022
Telephone:  212-836-2771
Facsimile:  212-836-2807
Email:  Thomas.Seligson@alcoa.com

- 13 -

EPIQ SYSTEMS
Inbound Date & Time: 10/23/2014 11:41:39 AM
Recepient        Persaud, Tony
Client Code      EFH
Logged By        N. Tirado

EPIQ2844

# MCKOOL SMITH

One Bryant Park, 47th Floor
New York, NY 10036

Energy Future Holdings Corp. Claims
Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, NY   10017