# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | )     Chapter 11 |
| *Debtors.* | )     Case No. 14-10979 (CSS) |
| | )     (Jointly Administered) |

## LIMITED OBJECTION OF MARATHON ASSET MANAGEMENT, LP TO CONFIRMATION OF DEBTORS' FIFTH AMENDED PLAN OF REORGANIZATION

WILMER CUTLER PICKERING HALE AND DORR LLP

George W. Shuster, Jr.
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile: 212-230-8888
George.Shuster@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
Facsimile: 617-526-5000
Benjamin.Loveland@wilmerhale.com


LANDIS RATH & COBB LLP

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com


*Counsel for Marathon Asset Management, LP*    Dated: October 23, 2015

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT BACKGROUND ................................................................................... 5

    A.    The Marathon Action ................................................................................ 5

    B.    The Delaware Trust Action ...................................................................... 6

    C.    The Fifth Amended Plan ........................................................................... 8

        1.    Treatment of the Marathon Action ............................................. 8

        2.    Treatment of the Delaware Trust Action .................................. 13

ARGUMENT ........................................................................................................... 15

    A.    Comity Requires That This Court Not Moot or Prejudge the Marathon Action ... 15

    B.    The Current Plan Is Unconfirmable Under Section 1129(a) ................................. 18

        1.    The Plan is unconfirmable because it does not respect Marathon's priority rights as required by sections 1129(a)(1) and 510(a) ........................................................................... 18

        2.    The Plan is unconfirmable to the extent it seeks to bind Marathon nonconsensually to third-party releases ........................... 21

CONCLUSION ........................................................................................................ 27

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Bank of N.Y. v. Becker (In re Lower Bucks Hosp.)*,
    488 B.R. 303 (E.D. Pa. 2013), *aff'd,* 571 F. App'x 139 (3d Cir. 2014) ...........................23

*Del. Trust Co. v. Wilmington Trust, N.A.*,
    534 B.R. 500 (S.D.N.Y. 2015) ......................................................................................7

*Gillman v. Continental Airlines (In re Continental Airlines)*,
    203 F.3d 203 (3d Cir. 2000) ..............................................................22, 25, 26

*HSBC Bank USA v. Branch (In re Bank of New England Corp.)*,
    364 F.3d 355 (1st Cir. 2004).......................................................................19

*In re Best Prods. Co.*,
    168 B.R. 35 (Bankr. S.D.N.Y. 1994)...........................................................19

*In re Boomgarden*,
    780 F.2d 657 (7th Cir. 1985) ......................................................................17

*In re Freedom Rings LLC*,
    No. 05-14268, (Bankr. D. Del. Apr. 20, 2006)..............................................23

*In re Genesis Health Ventures, Inc.*,
    266 B.R. 591 (Bankr. D. Del. 2001).....................................................22, 25, 26

*In re Global Indus. Techs.*,
    645 F.3d 201 (3d Cir. 2011) .......................................................................25

*In re Hayes Lemmerz Int'l Inc.*,
    No. 09-11655, 2009 Bankr. LEXIS 4751 (Bankr. D. Del. Nov. 3, 2009)........................25

*In re MPM Silicones, LLC*,
    No. 14-22503 (RDD), 2014 WL 4436335 (Bankr. S.D.N.Y. Sept. 9, 2014),
    *aff'd sub nom. U.S. Bank N.A. v. Wilmington Sav. Fund Soc'y (In re MPM
    Silicones, LLC)*, 531 B.R. 321 (S.D.N.Y. 2015), *appeal filed*, No. 15-1771
    (2d Cir. June 1, 2015) ..............................................................................19

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000) ...................................................................5, 19

*In re TCI 2 Holdings LLC*,
    428 B.R. 117 (Bankr. D.N.J. 2010) ...............................................................19

- ii -

*In re Zenith Elecs. Corp.*,
    241 B.R. 92 (Bankr. D. Del. 1999) ................................................................. 22

*Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund Ltd. (In re
    Ion Media Networks)*,
    419 B.R. 585 (Bankr. S.D.N.Y. 2009) ............................................................ 20

*NAACP, Jefferson Cty. Branch v Brock*,
    619 F. Supp. 846 (D.D.C. 1985) ................................................................. 15-16

*Official Comm. of Unsecured Creditors of Temtecho, Inc. v. CIBC Wood Gundy
    Ventures, Inc. (In re Temtecho, Inc.)*,
    No. 97-00077, 1998 WL 887256 (Bankr. D. Del. Dec. 18, 1998) .................... 17

*Schauss v. Metals Depository Corp.*,
    757 F.2d 649 (5th Cir. 1985) ....................................................................... 15-16

*SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
    530 F.3d 230 (3d Cir. 2008) ............................................................................ 18

*Smith v. SEC*,
    129 F.3d 356 (6th Cir. 1997) ........................................................................... 16

*Turney v. F.D.I.C.*,
    18 F.3d 865 (10th Cir. 1994) ........................................................................... 17

## STATUTES, RULES, AND REGULATIONS

11 U.S.C. § 510 ....................................................................................................... 19

11 U.S.C. § 1129 ..................................................................................................... 18

Fed. R. Bankr. P. 7001 ....................................................................................... 17-18

Marathon Asset Management, LP, on behalf of one or more managed funds and/or accounts ("Marathon"), a first-lien deposit letter of credit lender to TCEH, respectfully submits this limited objection (this "Objection") to confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6122] (the "Plan").[1]

## PRELIMINARY STATEMENT

Marathon's objection to the Plan is narrow, and, as discussed below, easily remedied. Specific elements of the Plan seek unnecessarily and impermissibly to dictate the outcome of a pending state-law contract dispute among creditors, commenced by Marathon in the Supreme Court of the State of New York, County of New York (the "Marathon Action" and the "New York State Court").[2] Through this Objection, Marathon seeks only to preserve the contractual intercreditor priority rights, whatever they may be, of itself and other "deposit letter of credit" TCEH first-lien lenders as against their co-TCEH first-lien lenders under the TCEH First Lien Intercreditor Agreement, as asserted in the Marathon Action.[3] The Plan cannot and need not override those intra-lender rights.

Obvious from the existence of the Marathon Action, which was commenced in May 2015, there is a dispute among TCEH First Lien Lenders as to whether the "deposit letter of credit" TCEH First Lien Lenders have a priority over other TCEH First Lien Lenders in respect of a certain letter of credit collateral account and its proceeds. That

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Plan. To the extent that there are further amended versions of the Plan that do not resolve the issues herein in a manner satisfactory to Marathon, this Objection serves as an objection to those versions also.

[2] *See Marathon Asset Management, LP v. Wilmington Trust, N.A.*, No. 651669/2015 (N.Y. Sup. Ct.). A copy of the complaint commencing the Marathon Action is attached hereto as Exhibit A, and, to the extent necessary, the statements of Marathon therein are incorporated herein.

[3] The first-lien lenders to TCEH are referred to collectively herein as the "TCEH First Lien Lenders."

dispute must be litigated to determine if, and to what extent, such alleged priority rights exist. Marathon believes that dispute should be resolved in the New York State Court where it was filed, consistent with the jurisdictional provisions of the TCEH First Lien Intercreditor Agreement. The other TCEH First Lien Lenders believe that dispute should be resolved in federal court. That issue, concerning remand and venue, has been fully briefed for months, and the parties are awaiting a decision from Judge Torres in the U.S. District Court for the Southern District of New York (the "New York Federal Court") as to where that dispute should be heard.[4] All of that is unremarkable.

What is remarkable, however, is that the Plan purports to extinguish the TCEH First Lien Lender intercreditor dispute without addressing it squarely, and purports effectively to moot the Marathon Action without ever litigating the merits. Provisions added to the Plan by amendment, presumably at the behest of the other TCEH First Lien Lenders, effectively provide that Marathon loses the Marathon Action on the merits, without providing Marathon due process in any court.

The Plan cannot accomplish that, and it is unconfirmable for attempting to do so. *First*, the Plan cannot and should not divest the New York Federal Court of its statutory obligation to decide where the Marathon Action will be heard, or divest the court chosen by the New York Federal Court of its jurisdiction over the merits of the Marathon Action. Nor can the Plan strip Marathon of its right to due process to have the Marathon Action resolved on its merits. *Second*, the manner in which the Plan seeks to extinguish the Marathon Action renders it unconfirmable under section 1129 of the Bankruptcy Code.

---

[4] *See Marathon Asset Management, LP v. Wilmington Trust, N.A.*, No. 15-cv-04727 (S.D.N.Y.)

The Plan cannot unilaterally rewrite, or dictate a particular interpretation of, the TCEH First Lien Intercreditor Agreement.

Section 1129(a)(1) of the Bankruptcy Code requires the Plan to comply with section 510(a) of the Bankruptcy Code, which in turn requires the Plan to respect the TCEH First Lien Intercreditor Agreement to the extent that agreement is enforceable under nonbankruptcy law. Thus, to the extent the priority rights of Marathon and the other "deposit letter of credit" TCEH First Lien Lenders exist, the Plan cannot redefine them or take them away. In addition, sections 1129(a)(1) and (3) of the Bankruptcy Code render impermissible the intercreditor releases in the Plan to the extent they seek to bind Marathon without its consent.[5]  These releases (and other provisions of the Plan that have the same effect) purport to immunize the TCEH First Lien Lenders from the intercreditor claims of Marathon and the other "deposit letter of credit" TCEH First Lien Lenders, which claims are being pursued in the Marathon Action. These provisions are entirely unrelated to the Plan or the confirmation process, are not necessary to the Debtors' reorganization and, to the extent applied to Marathon, violate controlling Third Circuit authority.

Critically, the resolution of the priority dispute in the Marathon Action need not affect distributions under the Plan to the TCEH First Lien Lenders or otherwise impede the Plan confirmation process. Marathon has no objection to the bulk of the Plan, or even to the general provisions of the Plan providing for distributions to the TCEH First Lien Lenders. Indeed, if Marathon's co-lenders prevail in the Marathon Action, the

---

[5]  Marathon, on its TCEH First Lien Secured Claims ballots, has opted out of the third-party releases and abstained from voting on the Plan. But (as described further below) the Plan is at best unclear as to whether this opt-out will be fully honored and, if so, whether the opt-out effectively voids the releases and similar provisions purporting to bar Marathon's third-party claims against the other TCEH First Lien Lenders.

distributions received by the TCEH First Lien Lenders would be retained by all such lenders, with no later adjustments among them. But if Marathon prevails in the Marathon Action, establishing priority rights of "deposit letter of credit" TCEH First Lien Lenders as against other TCEH First Lien Lenders, then Marathon and the other "deposit letter of credit" TCEH First Lien Lenders would be entitled to recover *from the other TCEH First Lien Lenders* (and not from the Debtors) the value of any distributions they received inconsistent with that priority.

The solution here is not complex. Assuming there is no desire to delay confirmation of the Plan to await litigation of the Marathon Action (and Marathon has no such desire), the Plan could be revised to leave the Marathon Action alone. The Marathon Action would proceed in whichever court the New York Federal Court decides is appropriate, and any rights as among the TCEH First Lien Lenders would be adjusted as appropriate at the conclusion of that litigation. Indeed, this is how the Plan treats a separate, currently pending intercreditor dispute involving the same TCEH First Lien Intercreditor Agreement implicated in the Marathon Action. Marathon is comfortable with that sort of "pass through" treatment. To the extent the Debtors are unwilling to afford the same treatment to the Marathon Action as they have to the other pending intercreditor dispute, the Court, as an alternative to denying confirmation outright, can and should strike from the Plan the offending provisions that seek to extinguish Marathon's rights. But Marathon cannot permit, and the Court cannot confirm, a Plan

that eliminates the Marathon Action, and dictates the results of that action, without ever reaching its merits.[6]

## RELEVANT BACKGROUND

### A.    The Marathon Action

Marathon commenced the Marathon Action against Wilmington Trust, N.A., as TCEH First Lien Agent, on May 14, 2015, in the New York State Court.  In the Marathon Action, Marathon seeks a declaration affirming its contractual priority right to payment under the $1.25 billion letter of credit subfacility within the $24.5 billion credit facility extended to TCEH under the TCEH First Lien Credit Agreement.[7]  Specifically, Marathon asserts in its detailed 21-page complaint (the "Marathon Complaint") that TCEH First Lien Lenders who are holders of Deposit L/C Loans (as defined in the TCEH First Lien Credit Agreement), which are a subset of all TCEH First Lien Lenders, have a priority right to payment as compared to other TCEH First Lien Lenders that do not hold Deposit L/C Loans.  The rights asserted by Marathon in the Marathon Action stem from the TCEH First Lien Intercreditor Agreement and the TCEH First Lien Credit Agreement.

---

[6]    Notably, even if the Plan were confirmed in its current form, over Marathon's objections, Marathon would have a right of appeal, and that appeal would not become equitably moot by the confirmation and consummation of the Plan.  *See In re PWS Holding Corp.*, 228 F.3d 224, 236 (3d Cir. 2000) (holding that an appeal of a plan confirmation order was not equitably moot, and could proceed, because if successful the challenged third-party releases could be stricken from the plan without undoing other portions of it).  For the same reasons that the Plan need not address Marathon's intra-lender claims— because they are purely intercreditor claims that do not affect the Debtors—the releases of Marathon's claims against the other TCEH First Lien Lenders could be stricken following an appeal of any order approving such releases.

[7]    Marathon also seeks in the Marathon Complaint a declaration that the TCEH First Lien Agent must preserve any distributions received under the Plan until Marathon receives all amounts owed to it on account of its priority rights.

With Marathon's consent, certain TCEH First Lien Lenders intervened as defendants in the Marathon Action (the "Intervenor Defendants").[8] On June 17, 2015, the Intervenor Defendants filed a Notice of Removal, removing the Marathon Action to the New York Federal Court.

Marathon filed a motion to remand the Marathon Action to the New York State Court, which the Intervenor Defendants have opposed, and the Intervenor Defendants filed a motion to transfer venue to this Court (via the U.S. District Court for the District of Delaware (the "Delaware District Court")), which Marathon has opposed. Both motions have been fully briefed since August, and supplemental letters have been filed by both sides to inform the New York Federal Court of the Plan and the disposition of the other pending intercreditor dispute concerning the same TCEH First Lien Intercreditor Agreement (further described below). The Debtors have not taken a position on the remand and venue issues. Oral argument has been requested, but not yet granted or denied. The parties are awaiting decision on the pending issues by the New York Federal Court.

## B.    The Delaware Trust Action

It makes sense to pause here and describe, for purposes of comparison, a different intercreditor action pending in respect of the same TCEH First Lien Intercreditor Agreement involved in the Marathon Action. Separate from the Marathon Action, on March 13, 2015, Delaware Trust Company, which serves as the TCEH First Lien Notes Trustee, commenced an action against the TCEH First Lien Agent in the New York State Court, seeking to resolve an intercreditor dispute concerning its rights under the TCEH

---

[8]    The Intervenor Defendants are: Angelo Gordon & Co., LP, Apollo Advisors VII, L.P., and Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P.

First Lien Intercreditor Agreement and this Court's cash collateral order (the "Delaware Trust Action").[9] As with the Marathon Action, the defendants, including intervening TCEH First Lien Lenders and other holders of TCEH First Lien Secured Claims, removed the Delaware Trust Action to the New York Federal Court and moved to transfer venue to this Court.[10] On July 23, 2015, Judge Engelmayer concluded that the Delaware Trust Action was sufficiently connected with TCEH's chapter 11 case that this Court has jurisdiction and is the proper forum for resolutions of those disputes. *See Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500 (S.D.N.Y. 2015). Thereafter, as this Court is aware, the parties began briefing the merits of the underlying issue in this Court. Marathon has informed the New York Federal Court, and maintains, that the Marathon Action is distinguishable from the Delaware Trust Action, that the claims in the Marathon Action do not "arise in" or "relate to" TCEH's chapter 11 case, and that this Court therefore lacks jurisdiction.

As described in more detail in the briefing before the New York Federal Court in the Marathon Action, the Delaware Trust Action involved a dispute over adequate protection payments, which, by their nature, can exist only in the bankruptcy context. The dispute in the Marathon Action, on the other hand, is purely an issue of contractual interpretation of intra-lender rights under New York state law—the governing law of the TCEH First Lien Intercreditor Agreement—which would have needed to be resolved regardless of whether any bankruptcy of TCEH had ever occurred. As noted above, Judge Torres has not issued a decision on the pending remand and venue matters in the Marathon Action.

---

[9]   *See Delaware Trust Co. v. Wilmington Trust, N.A.*, No. 650792/2015 (N.Y. Sup. Ct.)
[10]  *See Delaware Trust Co. v. Wilmington Trust, N.A.*, No. 15-cv-2883 (S.D.N.Y.)

C.      **The Fifth Amended Plan**

    1.      **Treatment of the Marathon Action**

Marathon has consistently taken the position that the relief sought in the Marathon

Action has no bearing on distributions under the Plan (indeed, the Marathon Complaint

requests no alteration to the Plan's distribution scheme), and that Marathon could instead

pursue its claims against the other TCEH First Lien Lenders after confirmation.[11]  In

essence, Marathon believes that non-debtors' rights, among themselves, under an

intercreditor agreement can and must be sorted out separate and apart from a debtor's

chapter 11 plan.  As it informed the New York Federal Court in the Marathon Action,

Marathon was not required under earlier iterations of the Plan to address its intra-lender

claims as part of the plan confirmation process.  Those claims would have been preserved

after confirmation as between Marathon and the other TCEH First Lien Lenders.  But

after Marathon made its position clear through its filings in the New York Federal Court,

the Debtors (with the support of, and likely at the insistence of, the TCEH First Lien

Lenders, who seem not to want to address the Marathon Action on the merits) amended

the Plan in an effort to preclude an independent adjudication of the issues between

Marathon and the other TCEH First Lien Lenders.

---

[11]      *See, e.g.,* Letter from George W. Shuster, Jr. to Judge Torres dated September 22, 2015 [D.I. 37] at 2 ("From the outset, Marathon has contended that: (1) Marathon need not object to any plan of reorganization filed by TCEH because the Bankruptcy Court lacks jurisdiction over the claims in this Action, and Marathon should retain its rights under the intercreditor agreement on which this Action is based regardless of what any such plan purports to do to those rights, and (2) even if Marathon were to object [to] any TCEH plan, Marathon need not address the issues raised in this Action or the distributions to be made under the plan—instead, Marathon could reserve its rights to an adjudication of its claims in this Action outside the plan confirmation process."); Compl. [D.I. 1-1] ¶ 12 n.1; Mem. of Law in Supp. of Pl.'s Mot. to Remand and for Abstention [D.I. 15] at 5-6; Letter from George W. Shuster, Jr. to Judge Torres dated July 6, 2015 [D.I. 18] at 2; Pl.'s Mem. of Law in Further Supp. of Mot. to Remand and for Abstention and in Opp'n to Mot. to Transfer Venue [D.I. 30] at 3, 4, 6 n.3, 9, 13; Letter from George W. Shuster, Jr. to Judge Torres dated August 13, 2015 [D.I. 36] at 1, 3.  All citations in this footnote are to the Marathon Action docket in the New York Federal Court.  For convenience, the documents referenced in this footnote are attached hereto as Exhibit B.

On August 10, 2015, the Debtors filed their Third Amended Plan. Unlike earlier versions of the Plan, the Third Amended Plan for the first time sought to extinguish Marathon's intercreditor claims. Indeed, the Third Amended Plan went so far as to "deem amended" the TCEH First Lien Intercreditor Agreement so that the "deemed amended" contract would expressly divest both Marathon and Delaware Trust of their rights to pursue their respective claims under the TCEH First Lien Intercreditor Agreement. *See* Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 5244] § III.B.28 ("upon the Effective Date, the TCEH First Lien Intercreditor Agreement shall be deemed amended to reflect that Holders of TCEH First Lien Secured Claims shall have no existing and future rights, claims, or entitlements to receive from the Debtors or from other Holders of TCEH First Lien Secured Claims any recovery on account of such Claims other than the rights provided to such Holders under the Plan"). The TCEH First Lien Lenders supported the Third Amended Plan pursuant to a Plan Support Agreement dated August 9, 2015. *See* Plan Support Agreement ("PSA"), Ex. 1 to Ex. A of PSA Motion [D.I. 5248-2].

Apparently even the Debtors thought that "deeming amended" a contract between non-debtors was going too far, so they "took back" that amendment in further revisions to the Plan. On September 18, 2015, the Debtors filed their Fourth Amended Plan, introducing the provisions to which Marathon objects herein. *See* Blackline of Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6108]. With respect to the treatment of the Marathon Action, there are no material differences between the Fourth Amended Plan

- 9 -

and the Fifth Amended Plan filed on September 21, 2015. The TCEH First Lien Lenders supported the Fourth Amended Plan, and support the Fifth Amended Plan, pursuant to a Plan Support Agreement dated September 11, 2015. *See* Plan Support Agreement, Ex. A to PSA Order [D.I. 6097-1].

The Fifth Amended Plan seeks to extinguish Marathon's claims in the Marathon Action through a combination of provisions. Article III.B.28 of the Plan—governing distributions to holders TCEH First Lien Secured Claims—provides that all such holders shall receive their "Pro Rata share" of certain distributions under the Plan. *See* Plan § III.B.28. Standing alone, Marathon believes this distribution mechanism would not preclude Marathon from pursuing its claims against the other TCEH First Lien Lenders after confirmation. If the other TCEH First Lien Lenders received a "pro rata" distribution that was inconsistent with the priority rights of Marathon and the other "deposit letter of credit" TCEH First Lien Lenders under the TCEH First Lien Intercreditor Agreement, the "deposit letter of credit" TCEH First Lien Lenders could, with no effect on the Debtors, seek a true-up from those other lenders after Plan distributions were made.

However, additional sections of the Plan, which are customized to target the Marathon Action (and are highly unusual), indicate an intent to preclude Marathon from doing exactly that. First, Article III.G of the Plan provides:

> The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan **take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto** . . .

Plan § III.G (emphasis added).  As described herein, this statement is simply

untrue.  The Plan does not respect the relative priority rights of Marathon vis-à-vis

the other TCEH First Lien Lenders.  Indeed, the opposite is true—the Plan

declares that the priority rights asserted by Marathon under the TCEH First Lien

Intercreditor Agreement do not exist, or are extinguished.  Article III.G of the

Plan goes a step further by seeking to divest all parties to the TCEH First Lien

Intercreditor Agreement of future rights thereunder, even if those rights have no

effect on the Debtors or their chapter 11 cases.  Specifically, the Plan provides:

> Notwithstanding the foregoing, **this Plan gives effect to**
> **the TCEH First Lien Intercreditor Agreement** and no
> additional changes to the allowance, classification,
> treatment, or distributions shall be made as a result of the
> TCEH First Lien Intercreditor Agreement . . .

Plan § III.G (emphasis added).  Similarly, Article IV.I of the Plan provides that:

> all notes, instruments, certificates, agreements, indentures,
> mortgages, security documents, and other documents
> evidencing Claims or Interests, including . . . TCEH First
> Lien Secured Claims . . .  **shall be deemed canceled,**
> **surrendered, and discharged** . . . .

Plan § IV.I (emphasis added).

In effect, the Plan purports to interpret the TCEH First Lien Intercreditor

Agreement by stating that the Plan effectuates the operation of the TCEH First Lien

Intercreditor Agreement under applicable nonbankruptcy law—without recognizing that

there is pending litigation regarding the operation of the TCEH First Lien Intercreditor

Agreement under applicable nonbankruptcy law.  And then, apparently for good measure,

the Plan purports to "deem canceled, surrendered, and discharged" the TCEH First Lien Intercreditor Agreement.

In a further effort to disenfranchise Marathon, Article VIII.D of the Plan provides that each Releasing Party—which includes TCEH First Lien Lenders like Marathon—is deemed to have released each Released Party—which includes the other TCEH First Lien Lenders—"from any and all Claims and Causes of Action . . . based on or relating to, or in any manner arising from . . . the TCEH First Lien Intercreditor Agreement. . . ." Plan § VIII.D.  The Plan's injunction provision then enjoins the Releasing Parties from asserting any released claim against a Released Party.  *See* Plan § VIII.F.  Again, this language seeks to preclude Marathon from pursuing its valid contractual dispute against the non-debtor TCEH First Lien Lenders following confirmation.  It purports to bar the Marathon Action from proceeding without ever allowing any court to hear the Marathon Action on the merits.  While the form of Ballot for TCEH First Lien Claims Voting (the "Ballot") purports to allow a holder of TCEH First Lien Claims like Marathon to "opt-out" of the releases, the Ballot further provides that such an election shall be effective "only if the Court determines that you have the right to opt-out of the releases."  *See* Sample Form of Ballot, Ex. 2-A to Order Approving Disclosure Statement, at 4 [D.I. 6131-1].  And even if Marathon's "opt-out" of the express third-party releases contained in Article VIII.D is fully honored, the other provisions of the Plan purporting to extinguish Marathon's intercreditor claims constitute *de facto* releases of the same claims of Marathon against the third party TCEH First Lien Lenders.

Notably, none of these Plan provisions, and no other filing by the Debtors or any defendant or intervening party in the Marathon Action, contains any explanation of *why*

- 12 -

Marathon should lose the Marathon Action, or *why* the assertions in the Marathon Complaint are incorrect. The merits of the intercreditor issue have not been joined. Rather, these several provisions of the Plan simply seek to dictate, by preemptive collateral attack, the outcome of the Marathon Action preferred by the TCEH First Lien Lenders.

### 2.    Treatment of the Delaware Trust Action

Notwithstanding the Plan's treatment of the Marathon Action, the Delaware Trust Action has been expressly carved out of the Plan. Delaware Trust's rights to pursue its claims—whether before or after confirmation—have been preserved.[12] Specifically, Article III.B.28 of the Plan provides that distributions to holders of TCEH First Lien Secured Claims will be adjusted after confirmation of the Plan based on the outcome of the adjudication of the claims in the Delaware Trust Action, or, if not resolved by the effective date of the Plan,[13] that TCEH must establish a reserve to be distributed based on the ultimate adjudication of those claims. *See* Plan § III.B.28. In either event, it is clear that Delaware Trust's contractual claims are being preserved in a manner that Marathon's contractual claims under the same TCEH First Lien Intercreditor Agreement are not.[14]

The Plan also contains an exception to Article IV.I—which otherwise provides for the cancelation of the TCEH First Lien Intercreditor Agreement—providing that:

> the TCEH First Lien Intercreditor Agreement, the TCEH
> Credit Agreement, and the TCEH First Lien Note Indenture

---

[12]    The parties to the Delaware Trust Action have implemented a briefing schedule that seeks to resolve the dispute before confirmation, but in any event, pre-confirmation resolution is not required by the terms of the Plan.

[13]    As the Court is aware, a schedule for briefing the merits of the Delaware Trust Action was established on September 22, 2015, and briefing is continuing, with hundreds of pages of briefs having been filed to date.

[14]    Marathon inquired whether the Debtors would treat the Marathon Action similarly and, although they have not yet formally explained their position on the merits of Marathon's claims, the Debtors have stated that they will not preserve in the Plan whatever intercreditor rights Marathon may have.

> remain in effect **solely to the extent necessary to preserve
> the TCEH First Lien Creditor Allocation Disputes** and
> any claims or Causes of Action by the TCEH First Lien
> Notes Trustee, TCEH First Lien Agent, or Holders of
> TCEH First Lien Claims against other Holders of TCEH
> First Lien Claims, the TCEH First Lien Agent, or the
> TCEH First Lien Notes Trustee arising in connection with
> the TCEH First Lien Creditor Allocation Disputes.

Plan § IV.I (emphasis added).[15]  Reading these words alone, one might get the impression

that the Debtors are carving out from the Plan all "TCEH first lien creditor allocation

disputes."  But the definition of TCEH First Lien Creditor Allocation Disputes *expressly*

*excludes* the Marathon Action as one of the "TCEH first lien creditor allocation disputes"

that will survive the Plan:

> For the avoidance of doubt, the TCEH First Lien Creditor
> Allocation Disputes *shall not include the claims or Causes
> of Action asserted by Marathon Asset Management, LP in*
> the [Marathon Action] . . .

*See* Plan § 1.A.371 (emphasis added).  There is no doubt that Marathon alone is being

singled out for disparate treatment.

The clear implication behind the Plan's disparate treatment of the Marathon

Action and the Delaware Trust Action is that the Plan seeks to extinguish Marathon's

claims and abrogate Marathon's  rights asserted in the Marathon Action, without

addressing the merits of Marathon's claims, while the claims under the same TCEH First

Lien Intercreditor Agreement in the Delaware Trust Action are preserved following

confirmation for litigation on their merits.  For the reasons described herein, this

---

[15]     The Plan also provides an exception to Article III.G, stating that: "any such changes provided for
or otherwise consistent with the TCEH First Lien Creditor Plan Distribution Allocation Order as
contemplated by Article III.B.28 of the Plan" will be permissible notwithstanding the bar on modifications
to distributions under the Plan.  Plan § III.G.  The third-party releases in Article VIII.D of the Plan also
expressly preserve claims relating to the Delaware Trust Action.

transparent attempt by the TCEH First Lien Lenders to extinguish Marathon's rights is

unnecessary and impermissible and, absent sufficient protections to preserve Marathon's

claims against the TCEH First Lien Lenders, renders the Plan unconfirmable.

## ARGUMENT

The Plan as it relates to the Marathon Action is unconfirmable for two reasons.

*First*, the Plan seeks to divest the New York Federal Court of jurisdiction and to deprive

Marathon of its opportunity to have its claims heard on the merits by any court. *Second*,

the Plan fails to satisfy the requirements of section 1129(a) of the Bankruptcy Code

because (a) it does not respect Marathon's rights under the TCEH First Lien Intercreditor

Agreement as required by section 510(a) of the Bankruptcy Code, and (b) the third-party

intercreditor releases (both express and implied) are unnecessary and unfair as applied to

Marathon, thereby failing to meet the standard set for such releases in this Circuit.

## A.    Comity Requires That This Court Not Moot or Prejudge the Marathon Action

Proper respect for the jurisdiction of other courts and principles of due process are

best served by permitting the Marathon Action to continue in whatever court the New

York Federal Court determines appropriate in ruling on the currently pending motions to

remand and for transfer of venue.

First, including in the Plan provisions that prejudge any resolution of the

Marathon Action on the merits usurps from the New York Federal Court its authority to

determine the appropriate forum for the litigation—something that court is currently in

the process of doing. "[T]he important principle of comity between federal courts is

advanced where courts of coordinate rank are respectful of each other's orders, as well as

careful to avoid hindering each other's proceedings." *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985); *NAACP, Jefferson Cty. Branch v. Brock*, 619 F. Supp. 846, 853 (D.D.C. 1985). There must be "clear justification before a federal court may interfere with the jurisdiction of another federal court." *Smith v. SEC*, 129 F.3d 356, 362 (6th Cir. 1997).[16]

Here, there is no sound reason to ignore longstanding principles of comity by cutting short the New York Federal Court's consideration of the Marathon Action. Indeed, the opposite is true. To confirm the Plan as currently drafted would be for this Court effectively to assert jurisdiction over the Marathon Action. Doing so would undermine and end-run the required statutory procedure for establishing bankruptcy court jurisdiction over the Marathon Action—removal pursuant to 28 U.S.C. § 1452. Proceedings concerning the removal or remand of the Marathon Action are underway in the New York Federal Court, and the Plan cannot short-circuit that process.

In addition, allowing the Plan to dictate the result of the Marathon Action would divest the appropriate court—whether it be the New York Federal Court, the New York State Court, the Delaware District Court, or this Court—of its jurisdiction to adjudicate the merits of the Marathon Action. Again, there is no justification for this extraordinary outcome. Indeed, the Plan's attempt to extinguish the Marathon Action by fiat is at odds with the Intervenor Defendants' own position in the Marathon Action—that the merits of the Marathon Action should be transferred to and heard by this Court.

---

[16] There is also an issue of "coordinate rank" yet to be raised in the Marathon Action, because the threshold remand and removal issues have not yet been resolved. Even if the Intervenor Defendants' prevailed on their motion to transfer venue to the Delaware District Court, it is not a foregone conclusion that the Marathon Action would end up before this Court. For the same reasons that Marathon has argued that the Marathon Action belongs in the New York State Court (*i.e.*, it is unrelated to the Debtors' chapter 11 cases), Marathon reserves the right to seek withdrawal of the reference pursuant to 28 U.S.C. § 157(d), which, if ordered, would rest the action with the Delaware District Court, at least for final adjudication.

Second, even if the Court could address the issue without implicating comity and jurisdictional concerns, it should not undertake to do so. Confirming the Plan as drafted would disregard Marathon's rights to due process. *See Official Comm. of Unsecured Creditors of Temtecho, Inc. v. CIBC Wood Gundy Ventures, Inc. (In re Temtecho, Inc.)*, No. 97-00077, 1998 WL 887256, at *18 (Bankr. D. Del. Dec. 18, 1998) ("In bankruptcy proceedings, both debtors and creditors have a constitutional right to be heard on their claims, and the denial of that right to them [is] the denial of due process, which is never harmless error.") (quoting *In re Boomgarden*, 780 F.2d 657, 660-61 (7th Cir. 1985)) (internal quotation marks omitted). Marathon's rights under the TCEH First Lien Intercreditor Agreement cannot simply be wiped out without confronting Marathon's case as to what its entitlements really are. *See id.* ("due process requires notice and an opportunity to be heard at a meaningful time in a meaningful manner.") (citing *Turney v. F.D.I.C.*, 18 F.3d 865, 868 (10th Cir. 1994)). Neither the Debtors nor anyone else, in the Plan or elsewhere, has responded to the Marathon Action in any way other than to suggest that the Marathon Action be declared moot. While certain of the other TCEH First Lien Lenders have argued strenuously that the Marathon Action belongs in this Court, those other TCEH First Lien Lenders have not made any attempt to join the merits of the dispute in this Court (or in any court). The other TCEH First Lien Lenders participated in the drafting of a Plan that deems, with purportedly preclusive effect, that the other TCEH First Lien Lenders' interpretation of the TCEH First Lien Intercreditor Agreement, which renders Marathon's rights a nullity, shall be the correct one. *See* Plan § III.G.[17]

---

[17]    Under Federal Rule of Bankruptcy Procedure 7001, an adversary proceeding is required in order

**B.      The Current Plan Is Unconfirmable Under Section 1129(a)**

Separate from the jurisdictional and procedural issues surrounding the current

status of the Marathon Action, the Plan is unconfirmable under section 1129(a) of the

Bankruptcy Code. This Court may "confirm [the] plan only if . . . (1) [it] complies with

the applicable provisions of this title [and] . . . (3) has been proposed in good faith and

not by any means forbidden by law." 11 U.S.C. § 1129(a)(1), (3). The Plan fails on both

counts. First, contravening the requirement that a chapter 11 plan abide by all applicable

provisions of the Bankruptcy Code, the Plan, through its treatment of Marathon's priority

rights under the TCEH First Lien Intercreditor Agreement, disregards section 510(a) of

the Code, which mandates that these types of agreements be given the same effect in

bankruptcy as outside of bankruptcy. Second, to the extent applied to Marathon and the

circumstances here, the Plan's third-party releases of all potential claims against the

TCEH First Lien Lenders are plainly incompatible with the limitations that courts in this

Circuit place on nonconsensual third-party releases.

**1.      The Plan is unconfirmable because it does not respect Marathon's priority
rights as required by sections 1129(a)(1) and 510(a)**

The Plan as drafted fails to respect Marathon's rights under the TCEH First Lien

Intercreditor Agreement, and therefore is unconfirmable in its current form. Section

---

to obtain the relief sought by the Plan with respect to the Marathon Action. *See* Fed. R. Bankr. P. 7001(9) (requiring an adversary proceeding for declaratory judgments regarding subordination, which is effectively what the Debtors and the TCEH First Lien Lenders seek—a counter-declaration to the declaration sought by Marathon in the Marathon Action); 7001(10) (requiring an adversary proceeding to adjudicate claims in a removed action, which the Marathon Action would be if properly before this Court). Even if Marathon's claims in the Marathon Action were properly before this Court (they are not), resolution of those claims through the Plan, rather than through an adversary proceeding, would deprive Marathon of due process. *See SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*, 530 F.3d 230, 242 (3d Cir. 2008) ("[W]here the Rules require an adversary proceeding-which entails a fundamentally different, and heightened, level of procedural protections-to resolve a particular issue, a creditor has the due process right not to have that issue resolved without one.").

1129(a)(1) requires the Plan to comply with all applicable provisions of the Bankruptcy Code—including section 510(a). *In re MPM Silicones, LLC*, No. 14-22503 (RDD), 2014 WL 4436335, at *2 (Bankr. S.D.N.Y. Sept. 9, 2014), *aff'd sub nom. U.S. Bank N.A. v. Wilmington Sav. Fund Soc'y (In re MPM Silicones, LLC),* 531 B.R. 321 (S.D.N.Y. 2015), *appeal filed,* No. 15-1771 (2d Cir. June 1, 2015). Section 510(a), in turn, permits creditors to enforce subordination agreements in bankruptcy to the same extent that they could enforce them outside of bankruptcy. 11 U.S.C. § 510(a); *see PWS Holding*, 228 F.3d at 243; *see also In re Best Prods. Co.*, 168 B.R. 35, 62 (Bankr. S.D.N.Y. 1994) ("[P]ursuant to sections 510(a) and 1129(a)(1) of the Bankruptcy Code, [a debtor is] mandated to enforce [] subordination agreements unless the parties in whose favor they [run] agree[] otherwise or unless the subordination agreements [are] unenforceable under applicable nonbankruptcy law."); *In re TCI 2 Holdings LLC*, 428 B.R. 117, 141 (Bankr. D.N.J. 2010) ("Section 1129(a)(1) requires a plan to conform to the provisions of Title 11, including § 510(a), which makes subordination agreements enforceable in bankruptcy to the same extent such agreements are enforceable outside of bankruptcy.").

The TCEH First Lien Intercreditor Agreement, clearly on its face, constitutes a subordination agreement within the meaning of section 510(a). *See PWS Holding*, 228 F.3d at 244 (recognizing an intercreditor agreement as a subordination agreement subject to section 510(a)); *HSBC Bank USA v. Branch (In re Bank of New England Corp.)*, 364 F.3d 355, 361 (1st Cir. 2004) ("Subordination agreements are essentially inter-creditor arrangements"). Yet the Plan, by providing that all holders of TCEH First Lien Secured Claims shall receive a "Pro Rata share" of distributions, regardless of what the TCEH First Lien Intercreditor Agreement says or means, goes out of its way to negate the TCEH

- 19 -

First Lien Intercreditor Agreement.  Section 1129(a)(1) forbids this.  *See Ion Media Networks, Inc. v. Cyrus Select Opportunities Master Fund Ltd. (In re Ion Media Networks)*, 419 B.R. 585, 595 (Bankr. S.D.N.Y. 2009) ("The Intercreditor Agreement is an enforceable contract under section 510(a), and the Court will not disturb the bargained-for rights and restrictions governing the second lien debt . . . . creditor expectations should be appropriately fulfilled").

To be sure, the Debtors will argue that there is no section 510(a) issue under the Plan, because, they will argue, Marathon has no priority rights under the TCEH First Lien Intercreditor Agreement, and therefore the Plan need not respect any such rights.  But a debtor cannot simply write down its preferred interpretation of a subordination agreement among creditors, declare that this interpretation is correct, and wave away any objection to that interpretation via confirmation.  Section 510(a) is not intended to invite the Debtors *to interpret unilaterally* the meaning of the TCEH First Lien Intercreditor Agreement, but rather is intended to do the opposite—*to leave intra-lender rights under such an agreement alone*, to be enforced by the lenders against each other as necessary and appropriate under nonbankruptcy law in the appropriate forum.[18]

Notably, the Plan could have been drafted to state that, notwithstanding the Plan's proposed pro rata distributions to the TCEH First Lien Lenders, any rights as among the TCEH First Lien Lenders under the TCEH First Lien Intercreditor Agreement that are required to be preserved under section 510(a) are preserved.  But instead, the Debtors' position apparently is that (i) *the Plan complies* with the TCEH First Lien Intercreditor

---

[18]     Again, it is notable that the Plan's attempted treatment of the Marathon Action is at odds even with the Intervenor Defendants' proposed treatment of the Marathon Action.

Agreement because (ii) *the Plan states that the Plan complies* with the TCEH First Lien

Intercreditor Agreement.  That position is as incredible as it is circular.

**2.      The Plan is unconfirmable to the extent it seeks to bind Marathon nonconsensually to third-party releases**

Separate from the failure to respect the terms of the TCEH First Lien Intercreditor

Agreement as required by sections 1129(a)(1) and 510(a), the Plan is unconfirmable to

the extent the third-party releases (and *de facto* third-party releases) contained therein

seek to apply nonconsensually to Marathon.[19]

Marathon acknowledges that the Ballot purports to allow a holder of TCEH First

Lien Secured Claims like Marathon to "opt-out" of the express third-party releases

contained in Article VIII.D of the Plan, and Marathon has done so (and hereby does so).

However, it is not clear whether, and under what circumstances, such an election not to

be bound by the releases will be honored.  *See* Form of Ballot at 4 (stating that "You may

check the box below to elect not to grant the release contained in Article III.D of the Plan

only if the Court determines that you have the right to opt-out of the releases . . .").

Accordingly, Marathon objects to the releases contained in Article VIII.D to the extent

they seek to bind Marathon without its consent, in violation of controlling Third Circuit

authority.

Critically, even to the extent Marathon's election not to be bound by the releases

contained in Article VIII.D of the Plan is fully honored in all respects, the other

provisions of the Plan that are the subject of this Objection—those provisions that purport

to dictate the outcome of the Marathon Action without affording Marathon an

---

[19]      To be clear, Marathon does not object to, and this Objection does not address, the releases of claims against *the Debtors* pursuant to Article VIII.C of the Plan.

opportunity to be heard on the merits—constitute *de facto* releases of Marathon's claims against the other TCEH First Lien Lenders. And absent a vote to accept the Plan, which Marathon has not submitted, those provisions cannot result in the release by Marathon of such claims. For this reason also, the Plan is unconfirmable.

Marathon anticipates that the United States Trustee, and perhaps other parties, will address in an objection to the Plan whether, and under what circumstances, nonconsensual third-party releases are permissible in the Third Circuit. Accordingly, so as not to burden the Court with duplicative briefing, Marathon will not exhaustively detail the applicable standards here, but rather will review the standards at a high level.

To the extent nonconsensual third-party releases are permissible at all under Third Circuit authority—and some courts have held they are not, *see, e.g., In re Zenith Elecs. Corp.*, 241 B.R. 92 (Bankr. D. Del. 1999)—the bar for approval is high. In *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000), the Third Circuit, without expressly approving the concept of nonconsensual third-party releases, described the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and specific factual findings to support these conclusions." 203 F.3d at 214. The Third Circuit observed that fairness requires a showing that sufficient consideration is given to creditors whose claims are to be released. *Id.* at 213-214; *see also In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607-08 (Bankr. D. Del. 2001). The Third Circuit also noted that the success of the plan must be based on the releases, and that there must be an identity of interest between the debtor and the nondebtors receiving the releases. *See Continental*, 203 F.3d at 216-17 ("We conclude that granting permanent injunctions to protect non-debtor parties on the basis of

theoretical identity of interest alone would turn bankruptcy principles on their head. Nothing in the Bankruptcy Code can be construed to establish such extraordinary protection for non-debtor parties.").

Where a release is specific as to certain claims, like the claims in the Marathon Action, these showings must be made as to those claims specifically. This Court has previously held that: "In order to meet the burden of establishing that the third party releases are fair an[d] necessary to the reorganization . . . the Plan proponents must establish by a preponderance of the evidence that . . . there is *material, specific and identifiable consideration flowing from the release[e]s to the releasors*, either directly or through the Plan, that is a fair exchange for the releases being granted . . ." Hr'g Tr. at 115:13-19, *In re Freedom Rings LLC*, No. 05-14268, (Bankr. D. Del. Apr. 20, 2006), D.I. 385 (emphasis added); *see also, Bank of N.Y. v. Becker (In re Lower Bucks Hosp.)*, 488 B.R. 303, 325 (E.D. Pa. 2013) (release unfair where "[indenture trustee] included the . . . provision to shield itself from liability . . . to . . . Bondholders" but "[t]here is no indication that [indenture trustee] itself gave any consideration or compensation to the Bondholders."), *aff'd*, 571 F. App'x 139 (3d Cir. 2014). A general showing that creditors participating in a chapter 11 plan process preferred to receive releases of third-party claims cannot suffice. The Plan's third-party releases cannot meet any of these criteria.

It is patently unfair for releases to target one plaintiff in a singular intercreditor action in another court, and to take away that plaintiff's right as against third parties without even giving it the opportunity to have its complaint answered by the applicable defendants, particularly where neither the Debtors nor the releasing party derives any benefit from such releases. Marathon, as a putative releasing party, unquestionably is not

- 23 -

receiving consideration from the other TCEH First Lien Lenders, the proposed released parties, that would constitute a fair exchange for the releases contained in Article VIII.D of the Plan. Indeed, Marathon is itself a TCEH First Lien Lender and will receive a distribution at least equal to what the other TCEH First Lien Lenders receive under the Plan. Thus, there is no scenario where the other TCEH First Lien Lenders could be viewed as providing consideration to Marathon or other "deposit letter of credit" TCEH First Lien Lenders in their capacities as such. Instead, the other TCEH First Lien Lenders are *actively seeking to deprive* Marathon and such other "deposit letter of credit" TCEH First Lien Lenders of the ability to pursue independent claims it has against them, even though those claims bear no relation to the Debtors' chapter 11 cases. This is the epitome of unfairness. Moreover, this unfairness to Marathon is magnified by comparison of the Marathon Action to the Delaware Trust Action—favored lenders are allowed to keep their claims against nondebtors, while disfavored lenders are stripped of their claims against nondebtors under the same contract.

The purpose of the Plan releases as applied to Marathon is not in any respect to aid the reorganization or otherwise to assist in the striking of a deal that might permit the Debtors to emerge from bankruptcy. Nor can the Debtors or the other TCEH First Lien Lenders demonstrate any identity of interest between the Debtors and the TCEH First Lien Lenders in respect of the claims at issue in the Marathon Action. They cannot do so because the Marathon Action is an intra-class dispute within a group, the TCEH First Lien Lenders, that is supportive of the Plan and of the collective distributions that the group will receive under the Plan. There can be no conceivable effect on the Debtors because Marathon does not seek to disrupt the distributions that will go to that group of

- 24 -

lenders.  Accordingly, the releases are not designed to protect the Debtors from any

potential liability on Marathon's claims.  Rather, the releases of claims in the Marathon

Action are aimed at depriving Marathon (and only Marathon, the singular plaintiff in the

Marathon Action) of *any* forum to have heard its contract claims against other TCEH

First Lien Lenders.  The releases simply give effect to the preference of other TCEH First

Lien Lenders not to address the Marathon Action on the merits.

For similar reasons, Debtors have failed to show—and could not possibly show—

that the release of Marathon's claims is "necessary to the . . . reorganization," especially

given the Third Circuit's demand for "specific factual findings" in support of that

criterion.  *Continental*, 203 F.3d at 214.

The findings necessary to justify a nonconsensual third-party release are entirely

absent here.  *See In re Global Indus. Techs.*, 645 F.3d 201, 206 (3d Cir. 2011) ("For the

Plan to be approved . . . with the . . . Injunction[], the debtors needed to show . . . the

silica-related liability was sufficiently onerous to jeopardize the debtors' reorganization if

not resolved via the Silica Injunction and APG Silica Trust."); *Genesis*, 266 B.R at 607-

08 (in a "marginal" case where it was "uncertain" that the plan could not have gone ahead

without the third-party release, the release must be stricken); *In re Hayes Lemmerz Int'l

Inc.*, No. 09-11655, 2009 Bankr. LEXIS 4751, at *23-25 (Bankr. D. Del. Nov. 3, 2009)

(making findings of fact in confirming a plan that "[a]bsent the value of the [releases] . . .

there would be no recovery to . . . junior Class of Claims" and "such releases are integral

components of the Plan and absent such releases it is unlikely that the Debtors would be

able to confirm a Plan.").  Indeed, no evidentiary support at all has been submitted with

respect to the releases.  As in *Continental*, there is  "nothing in the record to even imply

that the success of the [ ] Debtors' reorganization bore any relationship to the release . . . far from being the tail wagging the dog, we find it difficult to conceive that Plaintiffs' lawsuits were anything more than a flea." *Continental*, 203 F.3d at 215.

Moreover, any evidence that is subsequently submitted on this topic must be specific to the Marathon Action—generic evidence about the Plan as a whole cannot suffice. *See Genesis*, 266 B.R. at 607 & n.16 (distinguishing between validity of release of different claims). And while Marathon does not bear the burden of proof and does not intend to submit affirmative evidence on the point, Marathon reserves its rights to controvert any such evidence that is submitted at the confirmation hearing or otherwise. Even if other TCEH First Lien Lenders were to state that their support for the Plan is dependent upon the releases of the claims at issue in the Marathon Action, as Marathon expects they might, that type of self-serving assertion should be discounted when evaluating the Plan's compliance with the standards for approval of nonconsensual third-party releases. Again, it is thoroughly implausible to imagine any evidence could possibly demonstrate that the release of Marathon's claims against other TCEH First Lien Secured Claim Holders is essential for Plan confirmation. Marathon is not seeking to hold back any distributions being made under the Plan or to create any reserves from distributions. Marathon only wants to be able, following confirmation of the Plan, to assert its state-law contract rights against its co-lenders, if and as such rights might exist.

Finally, as discussed in connection with the "fairness" point above, the Debtors' contrasting treatment of the Delaware Trust Action in the Plan shows that the Plan need not extinguish actions among lenders under the TCEH First Lien Intercreditor Agreement. The Plan does *not* release the claims of Delaware Trust, and the rights

among creditors in that action are preserved under the Plan.  There can be no articulation, other than mere preference of the TCEH First Lien Lenders, of why the Debtors are treating the one intercreditor action under the TCEH First Lien Intercreditor Agreement in a way diametrically opposed to their treatment of the other action.

To the extent the Plan seeks to bind Marathon to the releases contained in Article VIII.D (and the companion injunction in Article VIII.F) without its consent (which it is expressly withholding), the Plan is unconfirmable.  Even if Marathon's opt-out of the express releases in Article VIII.D is respected, the Plan is unconfirmable because the provisions seeking to divest Marathon of its rights to pursue its purely intercreditor claims against the third-party TCEH First Lien Lenders constitute, individually and collectively, *de facto* third-party releases, and as described herein the Debtors have not (and cannot) satisfy the applicable standards for such releases.

## CONCLUSION

For the foregoing reasons, the Plan is unconfirmable as presently drafted.  Rather than delaying confirmation of the Plan, the Court can and should easily remedy these narrow—yet fatal—defects in the Plan by excising those specific provisions that seek to negate Marathon's priority rights under the TCEH First Lien Intercreditor Agreement, and by permitting Marathon to proceed with its ligation in the New York Federal Court (or any court to which the Marathon Action travels from there).  Absent such modifications, the Plan cannot be confirmed.

Dated:  October 23, 2015

LANDIS RATH & COBB LLP

/s/ Matthew B. McGuire
Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450
landis@lrclaw.com
mcguire@lrclaw.com

WILMER CUTLER PICKERING HALE AND DORR LLP

George W. Shuster, Jr.
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile:  212-230-8888
George.Shuster@wilmerhale.com

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Telephone:  617-526-6000
Facsimile: 617-526-5000
Benjamin.Loveland@wilmerhale.com

*Counsel for Marathon Asset Management, LP*