# **<u>EXHIBIT B</u>**

**Letter from George W. Shuster, Jr. to Judge Torres
dated September 22, 2015 [D.I. 37]**

WILMERHALE

**George W. Shuster Jr.**

+1 212 937 7232
george.shuster@wilmerhale.com

**BY ECF**

September 22, 2015

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Marathon Asset Management, LP v. Wilmington Trust, N.A.*,
              Case No. 1:15-cv-04727 (AT)(AJP)

Dear Judge Torres:

I submit this letter for my client Marathon Asset Management, LP, on behalf of one or more managed funds and/or accounts, the plaintiff in the above-referenced action ("Marathon" and the "Action").

The purpose of this letter is to alert the Court to the September 18, 2015 filing, in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), of the Fourth Amended Plan of Reorganization of Texas Competitive Electric Holding LLC's ("TCEH") and its affiliated debtors (the "Fourth Amended Plan"), a copy of which is attached hereto as Exhibit A. Certain provisions introduced for the first time in the Fourth Amended Plan contradict the Intervenor Defendants' arguments that this Action is so intertwined with TCEH's bankruptcy case, and with the TCEH chapter 11 plan of reorganization confirmation process specifically, that the Bankruptcy Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1334.[1]

The Intervenor Defendants' principal argument that the Bankruptcy Court has jurisdiction over this Action is that it "arises in" or is "related to" TCEH's bankruptcy case because it will supposedly affect distributions under, and therefore must be determined in connection with, TCEH's plan of reorganization. *See, e.g.*, Rosenberg Letter dated June 30, 2015 [ECF No. 17] at 1-2; Intervenor Defs. Mem. [ECF No. 26] at 4-6, 10. Indeed, when TCEH filed its Third Amended Plan containing amendments that purported to dictate the outcome of this Action, the Intervenor Defendants notified the Court by letter dated August 12, 2015 [ECF No. 35] (the "August 12 Letter").[2] Consistent with their position from day one, the Intervenor Defendants argued in the August 12 Letter that, in light of the amendments contained in the Third Amended Plan: "this dispute is nearly certain to be duplicative of plan confirmation litigation," and that

---

[1]      The "Intervenor Defendants" are: Angelo Gordon & Co., LP, Apollo Advisors VII, L.P., and Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P.
[2]      As described in my August 13, 2015 letter to the Court [ECF No. 36] (the "August 13 Letter"), Marathon believes that these amendments were a deliberate, but ineffectual, attempt to manufacture jurisdiction over this Action.

WILMERHALE

September 22, 2015
Page 2

"the issues raised in this matter will be fully subsumed in plan confirmation proceedings, making proceedings outside the bankruptcy court duplicative and wasteful." August 12 Letter at 2.

From the outset, Marathon has contended that: (1) Marathon need not object to any plan of reorganization filed by TCEH because the Bankruptcy Court lacks jurisdiction over the claims in this Action, and Marathon should retain its rights under the intercreditor agreement on which this Action is based regardless of what any such plan purports to do to those rights, and (2) even if Marathon were to object any TCEH plan, Marathon need not address the issues raised in this Action or the distributions to be made under the plan—instead, Marathon could reserve its rights to an adjudication of its claims in this Action outside the plan confirmation process. *See, e.g.,* August 13 Letter at 3.

The filing of the Fourth Amended Plan affirms the correctness of Marathon's position, underscores why remand is appropriate, and belies the Intervenor Defendants' argument that the Bankruptcy Court has jurisdiction over this Action.

The Fourth Amended Plan carves out of the TCEH chapter 11 plan confirmation process an intercreditor dispute between Delaware Trust Company, the indenture trustee for the TCEH first lien notes, and the first lien lenders that are defendants in this action. This carved–out action is the same intercreditor dispute that the Intervenor Defendants called to this Court's attention in their letter dated July 27, 2015 [ECF No. 29] (the "July 27 Letter") as supporting jurisdiction over this Action (the "Delaware Trust Action"). Specifically, the Fourth Amended Plan provides that distributions to TCEH first lien creditors will be adjusted after confirmation of the Fourth Amended Plan based on the outcome of the adjudication of the claims in the Delaware Trust Action, or, if not resolved by the effective date of the Fourth Amended Plan, that TCEH must establish a reserve to be distributed based on the ultimate adjudication of the claims in the Delaware Trust Action. In either event, it is clear that the claims in the Delaware Trust Action need not be resolved before confirmation of the Fourth Amended Plan. *See* Fourth Amended Plan at 56.

Like in this Action, the defendant in the Delaware Trust Action (who happens to be the same defendant in this Action) took the position in that case that the intercreditor dispute could have "profound implications for the Delaware Bankruptcy Proceedings, including how billions of dollars in distributions are allocated," and that it affected the "core administrative functions of the bankruptcy court, including potentially impacting and resolving distributions from a TCEH plan of reorganization." *See* Defs. Mem. [Case No. 1:15-CV-2883 (PAE)(FM), ECF No. 58] at 1, 12. A separate group of first lien lenders argued that the resolution of that dispute was "a critical step toward the resolution of the Debtors' Chapter 11 cases and only the Bankruptcy Court is positioned to provide the necessary priority disposition, particularly given the December 2015 timeline for plan confirmation." *See* Intervenor Defs. Mem. [Case No. 1:15-CV-2883 (PAE)(FM), ECF No. 59] at 3. As described by the Intervenor Defendants in the July 27 Letter,

WILMERHALE

September 22, 2015
Page 3

based on these arguments, Judge Engelmayer held that the Bankruptcy Court had jurisdiction over the claims in the Delaware Trust Action because they could "set[] the table for a determination regarding plan distributions" and "may well affect[] broader confirmation issues in this bankruptcy. *See Del. Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 513, 516-17 (S.D.N.Y. 2015) (internal quotation marks omitted).

Notwithstanding the statements by the parties in the Delaware Trust Action, and Judge Engelmayer's holding, that the resolution of the claims in the Delaware Trust Action was inextricably intertwined with the TCEH plan confirmation process, the Fourth Amended Plan expressly removes resolution of those claims from the confirmation process and allows them to be adjudicated another day—apparently with the agreement and consent of at least some of the Intervenor Defendants.  This treatment directly undermines the reasons why the Delaware Trust Action was removed and transferred to the Bankruptcy Court.  Notably, while the Intervenor Defendants were quick to alert this Court of TCEH's Third Amended Plan, because provisions were inserted into that plan purporting to support their position on remand and venue transfer in this Action, the Intervenor Defendants have not alerted this Court of TCEH's Fourth Amended Plan, because that plan contains provisions that contradict their positions on remand and venue transfer in this Action.

Critically, the remand and venue issues are far easier to decide for this Action than for the Delaware Trust Action.  Here, Marathon has never sought to affect distributions under TCEH's plan or otherwise alter the plan confirmation process.  Indeed, Marathon has consistently taken the opposite position.  *See* Pl. Mem. [ECF. No. 30] at 13-14.  Nevertheless, if the Delaware Trust Action, which was, according to Judge Engelmayer, intertwined with the plan confirmation process, can be adjudicated outside of that process, this Action absolutely can be. Indeed, Marathon's August 13 Letter stated exactly that—that this Action must and would survive confirmation of any chapter 11 plan of TCEH.  The Fourth Amended Plan's treatment of the Delaware Trust Action further demonstrates that resolution of this Action is severable from, and not essential to, the core bankruptcy function of plan confirmation.  Accordingly, the Intervenor Defendants' central premise for Bankruptcy Court jurisdiction is incorrect.

Equally important, these developments establish that the Intervenor Defendants' attempts to resolve this Action through the confirmation process are nothing more than gamesmanship and forum shopping. Because this dispute was commenced, and is amenable to resolution, outside of the bankruptcy confirmation process, the Intervenor Defendants should not be permitted to include provisions in the plan as a jurisdictional hook to remove this Action to the Bankruptcy Court.

WILMERHALE

September 22, 2015
Page 4

As Marathon has argued previously, the Court should conclude that no bankruptcy jurisdiction exists over this Action (because this Action neither arises under nor is related to the TCEH bankruptcy). To the extent the Court disagrees with Marathon, the Court should nevertheless abstain or equitably remand the Action, as appropriate.

Regards,

/s/ George W. Shuster, Jr.

George W. Shuster, Jr.

cc:      All Counsel of Record

**Memorandum of Law in Support of
Plaintiff's Motion to Remand and for Abstention [D.I. 15]**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| MARATHON ASSET MANAGEMENT, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| WILMINGTON TRUST, N.A., as | ) | |
| Administrative and Collateral Agent, | ) | Case No. 15-cv-04727 (AT)(AJP) |
| | ) | |
| Defendant, | ) | |
| | ) | |
| ANGELO GORDON & CO., LP, APOLLO | ) | |
| ADVISORS VII, L.P., BROOKFIELD ASSET | ) | |
| MANAGEMENT PRIVATE | ) | |
| INSTITUTIONAL CAPITAL ADVISER | ) | |
| (CANADA), L.P., | ) | |
| | ) | |
| Intervenor Defendants | ) | |

_____)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO REMAND AND FOR ABSTENTION

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................1

BACKGROUND ..........................................................................................2

ARGUMENT ...............................................................................................4

I.        THE COURT LACKS JURISDICTION OVER THIS ACTION. ...................................4

        A.      Marathon's Claims Do Not "Arise Under" The Bankruptcy Code. ........................5

        B.      Marathon's Claims Do Not "Arise In" TCEH's Bankruptcy Case.........................5

        C.      Marathon's Claims Are Not "Related To" TCEH's Bankruptcy Case...................8

II.      EVEN IF "RELATED TO" JURISDICTION EXISTED, THE COURT SHOULD
ABSTAIN FROM HEARING, OR EQUITABLY REMAND, THE ACTION TO
THE STATE COURT ........................................................................................9

CONCLUSION...............................................................................................11

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Baker v. Simpson*,
    613 F.3d 346 (2d Cir. 2010)......................................................................................5

*Bank of Am., N.A. v. Lightstone Holdings, LLC (In re Extended Stay Inc.)*,
    418 B.R. 49 (Bankr. S.D.N.Y. 2009), *aff'd in part, rev'd in part on other
    grounds sub nom. Five Mile Capital II SPE ESH LLC v. Cerberus Capital
    Mgmt. (In re Extended Stay Inc.)*, 435 B.R. 139 (S.D.N.Y. 2010) ................................6, 8

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995)...................................................................................................8

*Gen. Elec. Capital Corp. v. Pro-Fac Coop., Inc.*,
    No. 01 CIV 10215 (LTS), 2002 WL 1300054 (S.D.N.Y. June 11, 2002)........................8

*Gordon v. Shirley Duke Assocs. (In re Shirley Duke Assocs.)*,
    611 F.2d 15 (2d Cir. 1979)......................................................................................6, 8

*In re Fairfield Sentry Ltd.*,
    458 B.R. 665 (S.D.N.Y. 2011)....................................................................................5

*Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*,
    475 B.R. 9 (S.D.N.Y. 2012).......................................................................................5

*Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co.
    LLC)*,
    Nos. 98 B 46167 JLG, 98 B 46168 JLG, 98/9155A, 1999 WL 58581
    (Bankr. S.D.N.Y. Jan. 25, 1999)................................................................................6

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
    639 F.3d 572 (2d Cir. 2011)......................................................................................9

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
    980 F.2d 110 (2d Cir. 1992)......................................................................................8

*Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*,
    144 B.R. 951 (S.D.N.Y. 1992)..................................................................................10

*Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*,
    68 F.3d 26 (2d Cir. 1995).......................................................................................6-7

*Rockefeller Ctr. Props. v. Lindy's Operating, Inc.*,
    No. 95 Civ. 5142 (PKL), 1995 U.S. Dist. LEXIS 15297 (S.D.N.Y. Oct. 17,
    1995) .......................................................................................................................8

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*,
    No. 12 Civ. 1397(LTS)(HBP), 2012 WL 4794450 (S.D.N.Y Oct. 9, 2012) ....................10

*United States v. Town of N. Hempstead*,
    610 F.2d 1025 (2d Cir. 1979)................................................................................................9

## STATUTES

28 U.S.C. § 1334(b) ........................................................................................................2, 4, 9

28 U.S.C. § 1334(c)(1)........................................................................................................2, 10

28 U.S.C. § 1334(c)(2)..........................................................................................................2, 9

28 U.S.C. § 1447(c) ...............................................................................................................9

28 U.S.C. § 1452(b) ...........................................................................................................2, 10

Marathon Asset Management, LP, on behalf of one or more managed funds and/or accounts ("Marathon"), respectfully submits this memorandum of law in support of its motion to remand this action to the Supreme Court of the State of New York, County of New York (the "State Court"), where it was commenced.[1]

## PRELIMINARY STATEMENT

This action is a state law contract dispute among lenders. Notwithstanding the Intervenor Defendants' attempt to characterize Marathon's claims in this action as related to the bankruptcy case of the lenders' borrower, Texas Competitive Electric Holdings Company's ("TCEH"), the resolution of this action neither depends upon nor affects TCEH or any aspect of its bankruptcy. Marathon's claims in this action do not seek to affect the amount payable by TCEH to its creditors (including the group of First Lien Lenders (defined below) of which Marathon is a part) under TCEH's proposed chapter 11 plan or otherwise. Rather, this action seeks to determine the relative rights of those individual First Lien Lenders as to whatever amount TCEH pays to them collectively. Through this action, Marathon seeks only to preserve its contractual priority rights—vis-à-vis the other First Lien Lenders only—to whatever amount ultimately is paid by TCEH on account of the first lien credit facility.

No matter what the outcome of this action, TCEH will not be required to pay more or less to any creditor in its bankruptcy. Marathon's claims in this action can have no conceivable effect on TCEH's bankruptcy estate or the amount available for distribution to TCEH's creditors, and are not "related to" TCEH's bankruptcy case. Nor do its claims derive from or rely in any way on the Bankruptcy Code. Indeed, the Complaint does not make reference to a single

---

[1]     Capitalized terms used but not defined herein shall have the meanings given to them in the Notice of Removal ("Removal Notice") filed by Angelo Gordon & Co., LP, Apollo Advisors, L.P., and Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P. (collectively, the "Intervenor Defendants"). A copy of Marathon's Complaint is attached as Exhibit A to the Removal Notice.

Bankruptcy Code section.  To the contrary, Marathon's claims exist independent of TCEH's

bankruptcy.  They are state law claims based on contract rights among creditors, governing how

amounts owed by TCEH to the First Lien Lenders collectively will be divided among those

lenders after they are paid by TCEH.  Accordingly, the Court lacks jurisdiction over Marathon's

claims under 28 U.S.C. § 1334(b), and this action should be remanded to the State Court.

Even if a tenuous basis for "related to" jurisdiction existed under 28 U.S.C. § 1334(b)—

and Marathon maintains it does not—28 U.S.C. § 1334(c)(2) mandates abstention because the

Intervenor Defendants have not asserted any other basis for original federal jurisdiction over

Marathon's claims.  Alternatively, the Court should permissively abstain pursuant to 28 U.S.C. §

1334(c)(1) or remand this action to the State Court on equitable grounds pursuant to 28 U.S.C. §

1452(b).   In all events, this action properly belongs in New York state court, and should not be

dragged into federal court simply because a non-party to the action happens to be in bankruptcy.

## BACKGROUND

In this action, Marathon seeks a declaration affirming its contractual rights to payment

under a $1.25 billion letter of credit subfacility (the "Deposit L/C Loan Facility") within a $24.5

billion credit facility under which TCEH is the borrower.  *See* Compl. ¶ 1.  The defendant,

Wilmington Trust, N.A., as Administrative Agent and Collateral Agent ("Wilmington"), serves

as the agent for Marathon and the other lenders under the Deposit L/C Loan Facility (the

"Deposit L/C Loan Facility Lenders") and the other lenders under the larger credit facility (the

"First Lien Lenders"), some of whom have intervened.  *See id.* ¶ 2.  The credit facility is

governed by a Credit Agreement by and among TCEH and its affiliates, the First Lien Lenders,

the Defendant as Administrative and Collateral Agent, and certain other parties thereto (the

"Credit Agreement").  *See id.* ¶ 6.  The Credit Agreement and all other applicable agreements are

expressly governed by New York law and contain provisions under which all parties consent to the jurisdiction of the New York state courts.

Marathon and the other Deposit L/C Loan Facility Lenders under the separate $1.25 billion Deposit L/C Loan Facility have a priority secured interest in, and rights to, cash attributable to letters of credit issued under that facility. *See* Compl. ¶ 5. The proceeds of the Deposit L/C Loan Facility that were advanced by the Deposit L/C Loan Facility Lenders were deposited into a segregated account established by TCEH as security for the Deposit L/C Loan Facility ("Deposit L/C Loan Collateral Account"), such that the account initially contained $1.25 billion in cash. *See id.* ¶ 7. Under the Credit Agreement and a related security agreement (the "Security Agreement"), TCEH granted a security interest in the Deposit L/C Loan Collateral Account and its cash and proceeds to all of the Deposit L/C Loan Facility Lenders and all of the other First Lien Lenders and agent parties to the Credit Agreement to secure TCEH's obligations to those parties. *See id.* However, Marathon and the other Deposit L/C Loan Facility Lenders were granted a priority right in the Deposit L/C Loan Collateral Account, above the rights of the First Lien Lenders who made other types of loans under the Credit Agreement but who did not make loans under the Deposit L/C Loan Facility and whose cash was not used to fund the Deposit L/C Loan Collateral Account. *See id.*

The Intercreditor Agreement among TCEH and its affiliates, the First Lien Lenders, the Defendant as Administrative and Collateral Agent, and certain other parties thereto (the "Intercreditor Agreement") gives effect to that priority right by providing that any funds in the Deposit L/C Loan Collateral Account shall be distributed to the Deposit L/C Loan Facility Lenders before being distributed ratably to other First Lien Lenders. *See* Compl. ¶¶ 6, 8. This priority "waterfall" guarantees the Deposit L/C Loan Facility Lenders not just a lien on the

3

Deposit L/C Loan Collateral Account and its cash and proceeds, but a priority right to specific cash in and proceeds of that account.  *See id.* ¶ 8.  The First Lien Lenders that are not Deposit L/C Loan Facility Lenders do not share in that priority right.  *See id.*  Nevertheless, the non-Deposit L/C Loan Facility Lenders have refused to recognize Marathon's rights.  *See id.* ¶ 9.

Accordingly, Marathon has brought this action to determine and preserve its priority rights in the Deposit L/C Loan Collateral Account—as between the Deposit L/C Loan Facility Lenders and the other First Lien Lenders—upon any distribution by TCEH to the First Lien Lenders collectively.  Such a determination respecting the priority rights of Marathon and the other Deposit L/C Loan Facility Lenders will not affect the amount payable by the TCEH to the First Lien Lenders collectively (or to any other creditors) or otherwise burden the administration of the TCEH estate.

## ARGUMENT

### I.     THE COURT LACKS JURISDICTION OVER THIS ACTION.

The Intervenor Defendants' Removal Notice is premised on the faulty notion that this Court has jurisdiction over Marathon's claims pursuant to 28 U.S.C. § 1334.  Section 1334(b) provides that this Court has original jurisdiction over "all civil proceedings arising under [the Bankruptcy Code], or arising in or related to cases under [the Bankruptcy Code]."  28 U.S.C. § 1334(b).  But Marathon's claims in this action do not "arise under" the Bankruptcy Code or "arise in" or "relate to" TCEH's bankruptcy case.  The only connection of this action to bankruptcy is the fact that TCEH is in bankruptcy.  If that fact alone were sufficient to support federal court jurisdiction, then every contract dispute between non-debtor parties to a contract would be subject to federal court jurisdiction, notwithstanding a lack of federal subject matter and a lack of diversity, if the debtor happened to also be a party to the contract—even where the contract dispute could not affect the debtor.  That extremely broad view is inconsistent with

4

federal law and would upend basic principles of federal jurisdiction.  Therefore, this action must
be remanded to the State Court.

### A.  Marathon's Claims Do Not "Arise Under" The Bankruptcy Code.

"Arising under" jurisdiction exists when a plaintiff's causes of action are "created by [the
Bankruptcy Code]," meaning "any matter under which a claim is made under a provision of
[T]itle 11."  *Kraken Invs. Ltd. v. Jacobs (In re Salander-O'Reilly Galleries, LLC)*, 475 B.R. 9, 27
(S.D.N.Y. 2012).  None of the claims Marathon asserts in this action is created by, requires
consideration or resolution of, or relies in any way on, the Bankruptcy Code.  And the Intervenor
Defendants do not attempt to explain their basis for arguing that they do.  Indeed, there is not a
single reference to the Bankruptcy Code in Marathon's Complaint.  Instead, Marathon's claims
are purely contractual.  The fact that TCEH, which is not a defendant in this action, is in
bankruptcy does not somehow transform Marathon's state law contract claims against non-
debtor parties into claims that "arise under" the Bankruptcy Code.  Therefore, the Court lacks
jurisdiction on the basis that Marathon's claims "arise under" the Bankruptcy Code.  *See In re
Fairfield Sentry Ltd.*, 458 B.R. 665, 675 (S.D.N.Y. 2011) (no "arising under" jurisdiction existed
when "[n]either the causes of action nor substantive rights claimed in these cases are created by
the Bankruptcy Code.").

### B.  Marathon's Claims Do Not "Arise In" TCEH's Bankruptcy Case.

"Arising in" jurisdiction "covers claims that 'are not based on any right expressly created
by [the Bankruptcy Code], but nevertheless, would have no existence outside of the
bankruptcy.'"  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  Neither the defendant,
Wilmington, nor the Intervenor Defendants are debtors in any bankruptcy case.  Marathon's
claims are separate and independent from, and do not owe their existence to, TCEH's bankruptcy
case.  Marathon's claims do not seek to alter the amount of the distribution from TCEH to the

First Lien Lenders on account of the debt owed under the first lien credit facility (or any amounts owed to other creditors). They merely seek to determine how that amount will be divided up among the First Lien Lenders after it leaves TCEH's estate. Thus, this action is purely an intercreditor dispute that depends on the interpretation of contracts (the Credit Agreement, Security Agreement, and Intercreditor Agreement) governed by New York state law and is not the type of action that could arise only in a bankruptcy case. *See Bank of Am., N.A. v. Lightstone Holdings, LLC (In re Extended Stay Inc.)*, 418 B.R. 49, 58 (Bankr. S.D.N.Y. 2009) (holding that claims "brought by a non-debtor against a non-debtor involving guarantees are not claims that by their nature could arise only in the context of a bankruptcy case. To the contrary, claims against non-debtor guarantors routinely are brought and adjudicated in state court."), *aff'd in part, rev'd in part on other grounds sub nom. Five Mile Capital II SPE ESH LLC v. Cerberus Capital Mgmt. (In re Extended Stay Inc.)*, 435 B.R. 139 (S.D.N.Y. 2010); *Gordon v. Shirley Duke Assocs. (In re Shirley Duke Assocs.)*, 611 F.2d 15, 18 (2d Cir. 1979) ("As a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property . . ."); *Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co. LLC)*, Nos. 98 B 46167 JLG, 98 B 46168 JLG, 98/9155A, 1999 WL 58581, at *4 (Bankr. S.D.N.Y. Jan. 25, 1999) (recognizing the general proposition that "disputes between third parties whose resolution can have no conceivable effect upon the debtor, its estate or creditors are not 'core' proceedings.").

This action is readily distinguishable from the *Best Products* case cited by the Intervenor Defendants. *See* Removal Notice ¶¶ 13-14. As an initial matter, the claims at issue in *Best Products* required the court to interpret section 510 of the Bankruptcy Code (governing the enforceability of subordination agreements) and thus implicated "arising under" jurisdiction. *See*

*Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26, 31 (2d Cir. 1995). In concluding that it had jurisdiction, the Second Circuit observed that "[d]etermination of the priority rights of various creditors to assets of the Debtor was necessary to administer the estate and was not merely a dispute between two creditors." *Id.* at 32. But the dispute in *Best Products* was between two classes of creditors with different lien statuses, and the outcome would eliminate the recovery of one class. *See id.* at 28-29. In addition, the debtor was involved in the dispute. *See id.* at 32. Here, Marathon is not seeking to alter the distribution scheme as between different classes of creditors as in *Best Products*. Therefore, Marathon's claims will not affect the administration of the estate. Whatever amount is to be distributed by TCEH to the First Lien Lenders can be paid to the First Lien Lenders. Marathon's claims seek only to determine how those funds are divided among the First Lien Lenders after such distribution. That determination would need to be made in connection with any distribution from the segregated Deposit L/C Loan Collateral Account which is at the center of this action, whether or not any bankruptcy of TCEH were pending.

Notwithstanding the Intervenor Defendants' efforts to establish jurisdiction where none exists by parroting back Marathon's statement that the dispute "has come to a head since TCEH and certain of its affiliates filed chapter 11 bankruptcy proceedings last year," Removal Notice ¶ 14, Marathon's claims existed before the TCEH bankruptcy, when Marathon first brought these issues to the attention of other parties to this action. The fact that Marathon wants to resolve these issues now is a function of the other First Lien Lenders' unwillingness to pursue a consensual resolution, not a result of the bankruptcy filing (which was pending for a year before Marathon filed its complaint). And, even if the TCEH bankruptcy were an incentive for Marathon to litigate these issues with its non-debtor counterparties, that alone cannot cause

Marathon's claims to "arise in" the TCEH bankruptcy. *See Extended Stay*, 418 B.R. at 58

(concluding that lender's guaranty claims did not "arise in" the debtor-borrower's bankruptcy

case even though the debtors' bankruptcy triggered the liability under the guaranty). Marathon's

claims do not depend on TCEH's bankruptcy for their existence.

> ### C.     Marathon's Claims Are Not "Related To" TCEH's Bankruptcy Case.

It is well-settled that a court has "related to" bankruptcy jurisdiction over cases where the

outcome "might have any 'conceivable effect' on [a bankruptcy] estate." *Publicker Indus. Inc. v.*

*United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992) (internal

citations omitted). "A proceeding between non-debtors has a 'conceivable effect' on the

bankruptcy estate where the dispute would 'affect how much property is available for

distribution to the creditors of a bankruptcy estate or the allocation of property among such

creditors, or if the outcome could alter the debtor's rights and liabilities.'" *Gen. Elec. Capital*

*Corp. v. Pro-Fac Coop., Inc.*, No. 01 CIV 10215 (LTS), 2002 WL 1300054, at *2 (S.D.N.Y.

June 11, 2002). This is a broad test, but not one without limits. *See Celotex Corp. v. Edwards*,

514 U.S. 300, 308 (1995) ("'related to' jurisdiction cannot be limitless."). It is clear that no

federal jurisdiction over a state court action exists on the basis of a bankruptcy where there is no

effect of the state court action on the debtor or its relationships with its other creditors. *See*

*Gordon* 611 F.2d at 18. As described above, Marathon's claims would not affect how much

property is available for distribution to creditors, alter the distribution among classes of creditors,

or alter the debtor's rights or liabilities in any way.

The *Rockefeller Center* case cited by the Intervenor Defendants is inapposite. That case

involved an action *by the Debtor* to recover property that would augment the estate. *See*

*Rockefeller Ctr. Props. v. Lindy's Operating, Inc.*, No. 95 Civ. 5142 (PKL), 1995 U.S. Dist.

LEXIS 15297, at *3 (S.D.N.Y. Oct. 17, 1995). Conversely, this action is a dispute between third

parties that has no effect on property of TCEH's estate or on creditor recoveries; it deals only with internecine rights among the First Lien Lenders.  No result of this action would place more money in TCEH's coffers, nor would it require TCEH to pay even a dollar more than it would otherwise pay as a result of its bankruptcy.  While the Intervenor Defendants may prefer that this case be adjudicated in a different forum, subject matter jurisdiction cannot "arise from the circumstance that the exercise of such judicial power is desirable or expedient."  *United States v. Town of N. Hempstead*, 610 F.2d 1025, 1029 (2d Cir. 1979).

## II.   EVEN IF "RELATED TO" JURISDICTION EXISTED, THE COURT SHOULD ABSTAIN FROM HEARING, OR EQUITABLY REMAND, THE ACTION TO THE STATE COURT

Even if the Court were to determine that it had "related to" jurisdiction over Marathon's claims, it must abstain from exercising such jurisdiction under 28 U.S.C. § 1334(c)(2), which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Marathon's motion, made within the 30 days provided under 28 U.S.C. § 1447(c), is timely.  In addition, the only asserted basis for federal subject matter jurisdiction is 28 U.S.C. § 1334(b).  *See* Removal Notice ¶ 4.

Marathon commenced this action in the State Court, where it can be "timely adjudicated."  In *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011), the Second Circuit identified four factors to be evaluated in connection with the timeliness inquiry under 28 U.S.C. § 1334(c)(2): "(1) the backlog of the state court's calendar

relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate."  Here, there is no suggestion that the State Court could not adjudicate this action in a timely manner.  And the State Court is the more appropriate forum for resolving a contract dispute under New York State law.  Finally, the resolution of Marathon's claims will not prolong the administration of the TCEH estate or affect TCEH's bankruptcy case in any way because, as described above, the claims will not affect the amount payable by TCEH to the First Lien Lenders.  Indeed, the TCEH bankruptcy could be completely resolved, and all value to be distributed to the First Lien Lenders could be distributed, and this action could continue thereafter to determine the proper allocation of that value among the First Lien Lenders.  Therefore the mandatory abstention criteria are easily satisfied.

Alternatively, the Court should permissively abstain under 28 U.S.C. § 1334(c)(1) or remand this action on equitable grounds under 28 U.S.C. § 1452(b).  The factors to be considered in determining whether to permissively abstain or equitably remand are: "(1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court."  *See Rednel Tower, Ltd. v. Riverside Nursing Home (In re Riverside Nursing Home)*, 144 B.R. 951, 956 (S.D.N.Y. 1992); *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397(LTS)(HBP), 2012 WL 4794450, at *4 (S.D.N.Y Oct. 9, 2012).  On balance, for the same reasons described above, these factors support permissive abstention or equitable remand.

# CONCLUSION

For the foregoing reasons, this action should be remanded to the State Court.

Dated:  June 29, 2015

WILMER CUTLER PICKERING
HALE AND DORR LLP


By:  /s/ George W. Shuster, Jr.
George W. Shuster, Jr.
Christopher J. Bouchoux
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

*Counsel for Marathon Asset Management, LP*

**Letter from George W. Shuster, Jr. to Judge Torres
dated July 6, 2015 [D.I. 18]**

WILMERHALE

George W. Shuster Jr.

+1 212 937 7232
george.shuster@wilmerhale.com

**BY ECF**

July 6, 2015

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *Marathon Asset Management, LP v. Wilmington Trust, N.A.*,
               **Case No. 1:15-cv-04727 (AT)(AJP)**

Dear Judge Torres:

I am responding for my client Marathon Asset Management, LP, on behalf of one or more
managed funds and/or accounts, the plaintiff in the above-referenced action ("Marathon" and the
"Action"), to the letter to the Court dated June 30, 2015 [ECF No. 17] (the "June 30 Letter"),
from Jonathan Rosenberg of O'Melveny & Myers LLP for his clients Angelo Gordon & Co., LP,
Apollo Advisors VII, L.P., and Brookfield Asset Management Private Institutional Capital
Adviser (Canada), L.P., the intervenor defendants in the Action (collectively the "Intervenor
Defendants").

Mr. Rosenberg's letter purports only to seek a pre-motion conference and a scheduling order in
this Action. But, his letter also includes detailed argument on his clients' anticipated motion to
transfer venue of the Action. Marathon believes that the inclusion of this level of argument goes
beyond what is called for in this Court's Individual Practices for Civil Cases and is therefore
inappropriate. In any event, the position of the Intervenor Defendants as to the proper venue for
this Action is misguided and incorrect.

More important for initial purposes, however, Marathon believes the Court should focus on the
pending motion of Marathon to remand this Action to New York state court [ECF Nos. 14-15],
where this Action was filed and rightfully belongs, or to abstain from hearing this Action.
Marathon believes that the Court's decision on the pending remand and abstention issues will
moot any consideration of venue transfer by this Court. *See, e.g., Bank of N.Y. v. Bank of Am.*,
861 F. Supp. 225, 227-28 (S.D.N.Y. 1994) ("Because the removal statute only allows removal of
actions within the Court's original jurisdiction, . . . and because fundamental principles of
American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction
. . . plaintiffs' contention [as to lack of federal subject matter jurisdiction on a motion to remand]
must be examined before any other matter.").

Thus, while Marathon does not oppose the filing of a venue transfer motion by the Intervenor
Defendants or the briefing schedule proposed by Mr. Rosenberg, Marathon does not believe the

WILMERHALE

July 6, 2015
Page 2

filing, briefing, or consideration of a venue transfer motion is necessary at this time. Moreover, Marathon believes that, even if the venue motion is filed and briefed, it should not be considered until after the pending remand and abstention issues have been decided. *See, e.g., Gibraltar Trading Corp. v. PMC Specialties Grp., Inc.*, 851 F. Supp. 2d 437, 440-41 (E.D.N.Y. 2011) (considering first and granting plaintiff's motion to remand action for lack of subject matter jurisdiction and denying as moot defendant's motion to transfer venue).

As to the specific allegations set forth in Mr. Rosenberg's letter, Marathon will wait until the appropriate opportunity, in the context of its briefs, to oppose those allegations fully. For present purposes, Marathon wishes only to state that it does plan to oppose venue transfer (for, among other reasons, many of the reasons set forth in its pending motion to remand or abstain), and to correct several obvious errors in Mr. Rosenberg's allegations.

First, Mr. Rosenberg attempts to create the impression for the Court, without any admissible evidence, that Marathon is, through this Action, "seek[ing] to dictate" the outcome of the chapter 11 bankruptcy proceedings of Texas Competitive Electric Holdings Co. LLC ("TCEH"). June 30 Letter, at 1. Marathon seeks no such thing. This Action is about the interpretation of the rights as among lenders under a New York law contract. Marathon is not attempting to determine or change any obligation of TCEH to any lender or other entity, and the Action will not in any way interfere with the progress or outcome of the TCEH bankruptcy proceedings. If the TCEH bankruptcy case were to run its course and distributions were to be made by TCEH to Marathon and the Intervenor Defendants, as well as to their co-lenders, notwithstanding the pendency of this Action, the relief requested by Marathon in this Action could still be granted, through a reallocation of those distributions among the TCEH lenders. Neither TCEH nor any of its other creditors would be affected. Marathon was quite clear in its complaint in the Action (the "Complaint" or "Compl.") that the proposed chapter 11 plan of TCEH was irrelevant to this Action (*see* Complaint, at 5 n.1), and that remains the case today. *See also* Memorandum of Law in Support of Plaintiff's Motion to Remand and for Abstention [ECF No. 15], at 7.

Second, Mr. Rosenberg alleges: "Marathon concedes that this action will only ripen in the context of confirmation of a plan of reorganization that addresses the rights of the First Lien Creditors." June 30 Letter, at 1-2. Marathon concedes no such thing. In the very paragraph of its Complaint cited by Mr. Rosenberg for his erroneous statement, Marathon explained that this Action is ripe now, because the other lenders to TCEH have refused to recognize the priority rights that Marathon asserts in this Action. *See* Compl. ¶ 47. How Mr. Rosenberg could misconstrue that explanation as a concession by Marathon that this Action is not yet ripe, and that this Action will only ripen in connection with confirmation of a chapter 11 plan for TCEH, is beyond our comprehension.

Third, Mr. Rosenberg attempts to create the impression for the Court, without any admissible evidence, that the Delaware bankruptcy court is already familiar with the issues raised in this

WILMERHALE

July 6, 2015
Page 3

Action, and that all of the parties to this Action are already involved in proceedings in the
Delaware bankruptcy court to which the issues in this Action may be neatly appended. *See* June
30 Letter, at 3-4. That impression is false. While Marathon has had some limited involvement
in the TCEH bankruptcy proceedings in Delaware, those proceedings involve tens of billions of
dollars in debt, seemingly limitless lists of parties in interest, scores of lawyers, and many debtor
entities beyond TCEH. This Action, by contrast, concerns a limited set of lenders under a single
New York law credit agreement pursuant to which loans were made to just one debtor entity,
TCEH. Judge Sontchi in Delaware has not even come close to examining the granular New
York contract issues raised in this Action. All of the parties to this Action are sophisticated
financial institutions, and they and their counsel have locations in New York. Surely the correct
facts for the analysis of proper venue will develop as necessary and appropriate, if and when the
Intervenor Defendants' anticipated venue motion proceeds, but the unfounded allegations in Mr.
Rosenberg's letter should not color this Court's initial consideration of this Action.

Regards,

/s/ George W. Shuster, Jr.

George W. Shuster, Jr.

cc:     All Counsel of Record

**Plaintiff's Memorandum of Law in Further Support of Motion to Remand
and for Abstention and in Opposition to Motion to Transfer Venue [D.I. 30]**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| | ) |
| MARATHON ASSET MANAGEMENT, LP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -v- | ) |
| | ) |
| WILMINGTON TRUST, N.A., as | ) |
| Administrative and Collateral Agent, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| ANGELO GORDON & CO., LP, APOLLO | ) |
| ADVISORS VII, L.P., BROOKFIELD ASSET | ) |
| MANAGEMENT PRIVATE | ) |
| INSTITUTIONAL CAPITAL ADVISER | ) |
| (CANADA), L.P., | ) |
| | ) |
| Intervenor Defendants | ) |

Case No. 15-cv-04727 (AT)(AJP)

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO REMAND AND FOR ABSTENTION
AND IN OPPOSITION TO MOTION TO TRANSFER VENUE**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF ADDITIONAL FACTS ..........................................................5

ARGUMENT ........................................................................................................6

I.      THE COURT SHOULD REMAND THIS ACTION TO STATE COURT BECAUSE
        THE COURT LACKS JURISDICTION OVER THIS ACTION. .....................................6

        A.      Marathon's Claims Do Not "Arise In" TCEH's Bankruptcy Case.........................8

                1.      This Action Does Not Involve a Core Bankruptcy Function......................8

                2.      This Action Is Not Unique to, or Uniquely Affected By, TCEH's
                        Bankruptcy Case. ....................................................................14

                3.      Marathon Could Maintain This Action Irrespective of TCEH's
                        Bankruptcy. ...........................................................................15

        B.      Marathon's Claims Are Not "Related To" TCEH's Bankruptcy Case.................16

II.     EVEN IF JURISDICTION EXISTED, THE COURT SHOULD NEVERTHELESS
        REMAND THIS ACTION TO THE STATE COURT ...................................................17

        A.      Mandatory Abstention Is Warranted Under 28 U.S.C. §1334(c). .......................17

        B.      The Court Should Permissively Abstain From Exercising Jurisdiction Over, or
                Equitably Remand, this Action. ...............................................................18

III.    THE INTERVENOR DEFENDANTS' MOTION TO TRANSFER SHOULD BE
        DENIED...................................................................................................19

        A.      Transfer Will Not Further the Interests of Justice. ...................................20

        B.      Transfer Will Not Favor Convenience.....................................................21

CONCLUSION....................................................................................................22

# TABLE OF AUTHORITIES

Page(s)

## CASES

*APA Excelsior III L.P. v. Premiere Techs.*, 49 F. Supp. 2d 664 (S.D.N.Y. 1999) ........................21

*Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690 (S.D.N.Y.
2009) ...............................................................................................................................20

*Baker v. Simpson*, 613 F.3d 346 (2d Cir. 2010).............................................................................8

*Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225 (S.D.N.Y. 1994)................................................19

*Blockbuster, Inc. v. Galeno*, 472 F.3d 53 (2d Cir. 2006)...............................................................7

*Boyer v. Simon (In re Fort Wayne Telesat Inc.)*, 403 B.R. 590 (Bankr. N.D. Ind.
2009) ...............................................................................................................................17

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,* No. 11 CIV.
7511, 2012 WL 698134 (S.D.N.Y. Mar. 5, 2012)..........................................................20

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987)....................................................................7-8

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995) .........................................................................16

*Chase Manhattan Bank, N.A. v. Francini*, No. 91 Civ. 2515 (MBM), 1991 WL
161359 (S.D.N.Y. Aug. 16, 1991)..................................................................................22

*Del. Trust Co. v. Wilmington Trust, N.A.*, No. 15 Civ. 2883 (PAE), 2015 WL
4503521 (S.D.N.Y. July 23, 2015) ............................................................... *passim*

*Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51 (Bankr. S.D.N.Y.
2006) ...............................................................................................................................16

*First Fed. Sav. Bank v. Tazzia*, 696 F. Supp. 904 (S.D.N.Y. 1988) .............................................20

*G.M. Crocetti, Inc. v. Trataros Constr., Inc. (In re G.M. Crocetti, Inc.)*, No. 08
Civ. 6239 (DLC), 2008 WL 4601278 (S.D.N.Y. Oct. 15, 2008).....................................8

*Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567 (2004) ..................................................7

*Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank, N.A.*, No. 08
Civ. 5723 (NRB), 2009 WL 1834596 (S.D.N.Y. June 16, 2009).....................................14

*In re Best Mfg. Grp. LLC*, No. 06-17415 (DHS), 2007 WL 2746834 (Bankr.
D.N.J. Sept. 17, 2007).....................................................................................................11

*JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 409 B.R. 649 (Bankr. S.D.N.Y. 2009).............................................15

*KPMG Consulting, Inc. v. LSQ II, LLC*, No. 01 Civ. 11422, 2002 WL 1543907 (S.D.N.Y. July 12, 2002) ...........................................................................................22

*Linardos v. Fortuna*, 157 F.3d 945 (2d Cir. 1998) ...............................................................7

*Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158 (S.D.N.Y. 2013) ......................................................................................................................19

*Luciano v. Maggio*, 139 B.R. 572 (E.D.N.Y. 1992) ...........................................................21

*Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co., LLC)*, No. 98/9155A, 1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999) .......................11

*Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436 (2d Cir. 2005).....................................11, 12

*Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R.746 (S.D.N.Y. 2004)..........................................................................................21

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095 (2d Cir. 1993)..........................................................................................14

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013).......................................7

*Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26 (2d Cir. 1995).........................................................................................10, 11

*Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12 Civ. 1397 (LTS)(HBP), 2012 WL 4794450 (S.D.N.Y. Oct. 9, 2012) ...........................................................................7

*Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822 (S.D.N.Y. 2002)..............................................................19

*Stern v. Marshall*, 131 S. Ct. 2594 (2011) ......................................................................21

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)..................................................22

*United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631 (2d Cir. 1999) ...............................8, 10, 16

*Whitney Lane Holdings, LLC v. Don Realty, LLC*, No. 08-CV-775, 2010 WL 1257879 (N.D.N.Y. Mar. 26, 2010)..........................................................................6

*Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 354 (E.D.N.Y. 2014)................................7

*ZBD Constructors, Inc. v. Billings Generation, Inc.*, No. 09 Civ. 6997 (NRB),
 2011 WL 1327144 (S.D.N.Y. Mar. 25, 2011), *aff'd,* 472 F. App'x 83 (2d
 Cir. 2012) ...........................................................................................................14

## STATUTES

11 U.S.C. § 361 ......................................................................................................12

11 U.S.C. § 363 ......................................................................................................12

11 U.S.C. § 364 ......................................................................................................12

28 U.S.C. § 157 ................................................................................................4-5, 14

28 U.S.C. § 1334 ............................................................................................ *passim*

28 U.S.C. § 1404(a) ..........................................................................................19, 20

28 U.S.C. § 1412 ...............................................................................................19, 21

28 U.S.C. § 1452(b) ............................................................................................4, 18

Plaintiff Marathon Asset Management, LP, on behalf of one or more managed funds and/or accounts ("Marathon"), respectfully submits this memorandum of law (a) in further support of its motion [ECF No. 14] (the "Remand Motion") to remand this action to the Supreme Court of the State of New York, County of New York (the "State Court"), and (b) in opposition to the Intervenor Defendants' motion [ECF No. 28] (the "Transfer Motion") to transfer this action to the U.S. District Court for the District of Delaware (the "Delaware District Court") and the memorandum of law in support thereof and in support of their objection to the Remand Motion [ECF No. 26] (the "Intervenors' Br.").[1]

## PRELIMINARY STATEMENT

This is a state law contract dispute, commenced in State Court to determine relative rights among co-lenders, with an existence and meaning wholly independent from the bankruptcy of their borrower. For that reason, this action must be remanded to the State Court where it began, and no removal or venue transfer is permissible.

This litigation could have been brought before any bankruptcy was filed, and could be sustained after any bankruptcy is concluded—Marathon would be entitled to relief in this action irrespective of whether a bankruptcy case is pending. Marathon commenced this action only against the agent for its co-lenders, and only to resolve a discrete letter of credit issue among those co-lenders under a pre-petition contract. That contract is governed by New York law and contains a New York forum selection clause. It does not require the interpretation of any bankruptcy court order or any issues unique to bankruptcy, including any issue relating to confirmation of any chapter 11 plan. No bankruptcy debtor is a party to this litigation. No

---

[1]    Capitalized terms used but not defined herein shall have the meanings given to them in Marathon's memorandum of law in support of the Remand Motion [ECF No. 15] ("Remand Br.").

possible outcome of this litigation would increase or decrease any liability of any bankruptcy debtor. This litigation is truly decoupled from any bankruptcy.

There is simply no reason to force this litigation, through the narrow window for federal bankruptcy jurisdiction, into bankruptcy court. This litigation does not fit through that window, and forcing it through would deprive Marathon of its right to have this litigation proceed in State Court.

Lacking any independent basis for federal jurisdiction (*i.e.*, diversity or federal question), the Intervenor Defendants argue that this ordinary contract dispute falls within the limited confines of the Court's bankruptcy-related jurisdiction under 28 U.S.C. § 1334(b). Under their approach, TCEH's bankruptcy case would effectively act as a vacuum, sucking up every potential state court action between entities that happen to be creditors of the same debtor, even if the action would not affect the debtor or its other creditors. But that is not the law. The happenstance that a third party to a contract is in bankruptcy cannot automatically give rise to federal bankruptcy jurisdiction over all such disputes. For federal jurisdiction to be properly exercised in a case like this—a dispute solely between creditors—the dispute must *arise in* a debtor's bankruptcy case. This action does not.

In their letter to the Court dated July 27, 2015 [ECF No. 29], the Intervenor Defendants take the position that their similar arguments in a different case, *Del. Trust Co. v. Wilmington Trust, N.A.*, No. 15 Civ. 2883 (PAE), 2015 WL 4503521 (S.D.N.Y. July 23, 2015), should control the outcome of Marathon's Remand Motion. But the present case is vastly different in both substance and context from the dispute in *Delaware Trust* over which the Court held it has jurisdiction. Critically, the *Delaware Trust* dispute concerned the interpretation of rights under a cash collateral order entered by the bankruptcy court, relating to "adequate protection" payments

that only exist in bankruptcy.  By their nature, the issues in that action could have arisen only during the course of a bankruptcy case.  That is not true of this action.  Indeed, not one of the four independent reasons that led Judge Engelmayer to conclude that the dispute in *Delaware Trust* arose in the debtor's bankruptcy case applies to this action.

In furtherance of their efforts to manufacture jurisdiction over this dispute where none exists, the Intervenor Defendants draw unfounded, hypothetical connections between this action and TCEH's bankruptcy case.  They engage in speculation about events that have not occurred and may never transpire.  As an example of their hyperbolic statements, the Intervenor Defendants, in the first sentence of their brief, claim that this action will "affect how more than $24 billion of First Lien Debt will be treated in TCEH's Bankruptcy Proceedings."  Intervenors' Br. at 1.  That is false based on the face of Marathon's Complaint.  For one thing, the present dispute relates only to the $1.25 billion Deposit L/C Loan Facility—a subfacility of the larger first lien credit facility—and so could not possibly affect the treatment of the broader facility (and the dispute is further narrowed to a possibly smaller cash collateral amount within that subfacility—as identified in the Complaint, the Undrawn Overage Amount).  And in any event, Marathon does not seek to alter distributions—to the First Lien Lenders or otherwise—under TCEH's proposed chapter 11 plan.

In addition, the Intervenor Defendants base their argument on facts that do not exist today.  They state that Marathon will object to TCEH's proposed chapter 11 plan on grounds similar to those at issue in this litigation.  But no such objection has been filed.  Whether Marathon might in the future object on some basis to a complex proposed reorganization plan of TCEH and its affiliated debtors cannot have any bearing on whether Marathon is entitled today to enforce its contractual rights against its co-lenders in the State Court where they all agreed

3

such enforcement would occur.[2]  The present questions of remand, abstention, and venue facing this Court must be decided on the actual facts in existence today, not on an imagined future conjured by the Intervenor Defendants.

Even if the Court were to conclude that federal jurisdiction exists, abstention and remand are warranted pursuant to 28 U.S.C. §§ 1334(c) and 1452(b).  The federal statutory scheme is established to require federal courts to abstain from hearing state court actions where federal jurisdiction is based only on the action being "related to" a bankruptcy.  While Marathon believes even "related to" jurisdiction is lacking here, such jurisdiction, if it existed, would still result in this action being remanded to State Court.  Only if this action "arises under" the Bankruptcy Code or "arises in" the TCEH bankruptcy case—conclusions that are miles away from the facts of this action—could this action possibly remain in federal court.  And even then, the Court would have (and should exercise) the discretion to remand this action to State Court.

Finally, for efficiency as well as proper order, the Court should address the issue of venue transfer only if (and after) the Court were to determine it has, and will exercise, jurisdiction over this action.  Even if the Court does determine to exercise jurisdiction over this dispute, the Intervenor Defendants have not shown cause to transfer the case to Delaware, and this action should remain in New York.  There is little need to recite all of the New York connections of this action: It involves a contract governed by New York law, containing the parties' consent to New York jurisdiction, and parties with New York offices, and New York counsel.  Moreover, the Court should not presume that denying remand and abstention and ordering venue transfer would firmly place this action in the Delaware Bankruptcy Court.  If the Court were to take those actions, Marathon reserves the right to seek withdrawal of the reference of this action under 28

---

[2] Moreover, so long as Marathon's independent rights against its agent and co-lenders are preserved, the currently proposed TCEH chapter 11 plan raises no issue for Marathon in the context of the claims brought in this action.

U.S.C. § 157(d), which, if ordered, would rest this action in the Delaware District Court—not the court overseeing the TCEH bankruptcy.

**STATEMENT OF ADDITIONAL FACTS**

Marathon requests two forms of declaratory relief in its Complaint: (1) a declaration that its priority rights vis-à-vis other First Lien Lenders are preserved (Compl. ¶ 55), and (2) a declaration that Wilmington, as collateral and administrative agent, must preserve any value received relating to the amount in which Marathon has priority interest until Marathon receives its share of such value (*Id.* ¶ 56). Marathon requested relief against only Wilmington, as collateral and administrative agent. *See* Compl. ¶ 14.

Marathon's rights asserted in the Complaint are governed by the Intercreditor Agreement, which is governed by New York law. *See* Compl. ¶ 18. The Intercreditor Agreement contains the parties' express consent that any disputes may be adjudicated in the New York courts. *Id.* ¶ 15. By the Intercreditor Agreement, each First Lien Creditor consented to "any legal action or proceeding relating to [the] Agreement" being brought in the State Court, and waived "any objection that it may now or hereafter have to the venue of any such action or proceeding" brought in the State Court and agreed "not to claim or plead" that such action was brought in an inconvenient forum. *Id.*

TCEH and its affiliates are currently debtors in a chapter 11 case pending before the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). While TCEH and its affiliated debtors have proposed two chapter 11 plans of reorganization (collectively, the "Plan"), no Plan has been confirmed, and it remains wholly uncertain whether the Plan in its current form or any other form will be confirmed. Indeed, according to TCEH and its affiliated debtors, negotiations are still ongoing and "certain critical issues" must be resolved for the Plan to move forward as currently envisioned. Declaration of George W. Shuster, Jr., dated July 29, 2015

5

("Shuster Decl."), Exhibit A (Debtors' Statement Regarding Plan Negotiations) ¶ 1. TCEH

acknowledges the possibility that parties may reach an impasse in such negotiations. *Id.* ¶ 3.

## ARGUMENT

**I.     THE COURT SHOULD REMAND THIS ACTION TO STATE COURT BECAUSE THE COURT LACKS JURISDICTION OVER THIS ACTION.**

The Intervenor Defendants cannot and do not attempt to sustain federal court jurisdiction

on the usual bases of diversity or a federal question. Rather, they have removed this action, and

are opposing remand, only on the basis of alleged federal bankruptcy jurisdiction under 28

U.S.C. § 1334(b). There are only three limited categories of federal bankruptcy jurisdiction

under the statute. *See Whitney Lane Holdings, LLC v. Don Realty, LLC*, No. 08-CV-775

(GKS/RFT), 2010 WL 1257879, at *3 (N.D.N.Y. Mar. 26, 2010) ("[Section] 1334(b) grants

jurisdiction to district courts over civil proceedings on the basis of an ongoing bankruptcy case in

three limited situations."). To fall within the ambit of Section 1334(b), a case must "arise under"

the Bankruptcy Code, "arise in" a case under the Bankruptcy Code, or be "related to" a case

under the Bankruptcy Code. If an action does not fall within any of these three categories, the

federal courts do not have jurisdiction. Although they initially asserted in their Notice of

Removal that this action "arises under" the Bankruptcy Code, the Intervenor Defendants appear

to have abandoned that argument. Indeed, because the Complaint does not contain a single

reference to any Bankruptcy Code section, it could not arise under the Bankruptcy Code. So

only two possibilities remain for this Court to have jurisdiction—whether this action is one that

"arises in" the TCEH bankruptcy case or is "related to" that case. It is neither.[3]

---

[3] Crucially, while federal bankruptcy jurisdiction would exist if this action either "arises in" or is "related to" the TCEH bankruptcy, the results of each of those conclusions could be quite different. As described in more detail below, if this action "arises in" the TCEH bankruptcy case (and it does not), the Court could still remand this action to State Court, and if this action is only "related to" the TCEH bankruptcy case, the Court must remand this action to State Court.

The party seeking removal bears the burden of establishing that the U.S. District Court has jurisdiction. *See, e.g., Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998) ("It is . . . hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction."). In addition, removal statutes are strictly construed, and the Court must construe all facts in favor of the plaintiff. *See Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12 Civ. 1397 (LTS)(HBP), 2012 WL 4794450, at *2 (S.D.N.Y. Oct. 9, 2012) ("On a motion for remand, the court must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff. Moreover, removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns.") (internal quotation marks, citation, and alterations omitted); *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013) (noting that the Supreme Court has directed federal courts "to construe removal statutes strictly and resolve doubts in favor of remand").

The determination of federal court jurisdiction must be made based on the facts as they exist at the outset of the litigation. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (stating that the "jurisdiction of the court depends upon the state of things at the time of the action brought."); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56-57 (2d Cir. 2006) (holding that jurisdictional facts are "evaluate[d] . . . on the basis of the pleadings, viewed at the time when [the] defendant files the notice of removal."). "The proper question for the Court in considering whether removal was proper is not whether, given certain hypothetical scenarios, a plaintiff *could have* crafted an action that could have been brought pursuant to the Court's original subject matter jurisdiction." *Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 354 (E.D.N.Y. 2014) (emphasis in original); *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392

n.7 (1987) ("Of course, the party who brings a suit is master to decide what law he will rely upon.... Jurisdiction may not be sustained on a theory that the plaintiff has not advanced.... The plaintiff may by the allegations of his complaint determine the status with respect to removability of a case.") (citations and alterations omitted).

### A.    Marathon's Claims Do Not "Arise In" TCEH's Bankruptcy Case.

"[A]rising in" jurisdiction "covers claims that 'are not based on any right expressly created by [the Bankruptcy Code], but nevertheless, would have no existence outside of the bankruptcy.'"  *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).  Such disputes are often referred to as "core."  The existence of a pre-petition contract dispute, which by its nature exists outside of bankruptcy, "weighs against a finding of core status" that would give rise to jurisdiction.  *G.M. Crocetti, Inc. v. Trataros Constr., Inc. (In re G.M. Crocetti, Inc.)*, No. 08 Civ. 6239 (DLC), 2008 WL 4601278, at *4 (S.D.N.Y. Oct. 15, 2008).  To determine if a pre-petition contract dispute is core, a court must evaluate "the degree to which the proceeding is independent of the reorganization."  *United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999).  The court evaluates the degree of connectedness by looking at whether "(1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings . . . or (2) the proceedings directly affect a core bankruptcy function."  *Id.*  This action neither involves a core bankruptcy function nor is unique to the bankruptcy.  To the contrary, it is entirely independent of TCEH's bankruptcy case.

### 1.    This Action Does Not Involve a Core Bankruptcy Function.

The Intervenor Defendants try to characterize this dispute as one that would directly affect the core bankruptcy function of fixing the order of priority of creditor claims.  As described above, Marathon has not sued TCEH, the debtor, and is not asking for any relief that

would affect property of TCEH's estate.  Indeed, notwithstanding the Intervenor Defendants'
attempt to paint a different picture, none of the relief actually requested by Marathon necessitates
any change to TCEH's Plan or the distributions to be made thereunder.  There is no dispute over
whether and what amount of value TCEH will distribute to the First Lien Lenders.

Marathon seeks relief only against Wilmington, as its contractual administrative and
collateral agent (and as a result of their intervention, the Intervenor Defendants), in the form of a
declaration that Marathon has priority rights in whatever value is ultimately distributed to the
First Lien Lenders on account of the Undrawn Overage Amount after it leaves TCEH's estate.  It
seeks to establish the proper allocation as among the First Lien Lenders of amounts distributed
by TCEH if and when they are paid.  Thus, the present dispute affects only the First Lien
Lenders—secured creditors who are in contractual privity with one another and hold the same
liens on the same pool of collateral.  No matter what the outcome of this dispute may be, there
will be no change from the perspective of TCEH's bankruptcy estate or of other creditors.   No
resolution of this action will change the amount, character, or timing of Plan distributions.
Indeed, nothing in Marathon's Complaint requests any such change.

Instead, if Marathon prevailed in this action, it would retain rights to seek from the other
First Lien Lenders the value of its priority rights to the Undrawn Overage Amount to the extent it
did not receive such value under the Plan.  For this reason, this action will not hold up
distributions under the Plan.  Even if the distributions under the Plan are made in stock, the stock
itself, or at least the value of that stock, can still be reallocated among the First Lien Lenders, at
any time after any distribution and after any confirmation of any Plan, without any effect on the
bankruptcy estate.

In this regard, the present dispute is distinct from *Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co., Inc.)*, 68 F.3d 26 (2d Cir. 1995), cited by the Intervenor Defendants. Because the dispute in that case was between different classes of creditors with different lien statuses, the court determined that it would necessarily affect how distributions were made under the debtor's plan. *See id.* at 31. Put differently, the resolution of the dispute in *Best Products* would have required the debtor to do something—to adjust its plan to distribute money to one creditor and not another. Indeed, the dispute over which the court concluded jurisdiction was proper had already been resolved as part of the plan confirmation process, and the *Best Products* court was effectively deciding whether to undo confirmation of that plan on appeal. *See id.* at 33. Here, that is not true. The Plan can remain unaffected by this action.

The Intervenor Defendants also rely heavily on *In re U.S. Lines, Inc.*, for the proposition that a contractual dispute between non-debtors affects the core functions of a bankruptcy. But the dispute in *U.S. Lines* was unique. At issue were the debtor's rights in insurance policies that the court described as potentially the most important asset of the estate. *See U.S. Lines*, 197 F.3d at 638. The failure to have resolved the dispute could have result in inequitable distributions to creditors (and indeed no distributions to some creditors for whom the insurance policies were the only asset available to satisfy their claims). *See id.* at 639. On this basis, the court found that it directly affected the allocation of assets among creditors. *See id.* Here, there is no such effect. No one disputes that the full deposit letter of credit collateral value at issue in this action belongs to the First Lien Lenders—the only dispute is who among First Lien Lenders may keep how much of the value that may be distributed to them.

Moreover, in both *U.S. Lines* and *Best Products*, the debtor was actively involved in the dispute, which courts have found meaningful in determining the extent to which an action

between non-debtors affects the debtor's bankruptcy case. *See Best Prods.*, 68 F.3d at 32; *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448 (2d Cir. 2005); *In re Best Mfg. Grp. LLC*, No. 06-17415 (DHS), 2007 WL 2746834, at *4 (Bankr. D.N.J. Sept. 17, 2007). Here, TCEH must be indifferent to the resolution of this purely intercreditor dispute, because it will have no effect on the estate. Indeed, while TCEH is well aware of this action, TCEH has not sought to intervene in this action or alter its Plan as a result of the pendency of this dispute.

The present dispute more closely resembles the dispute in *Mt. McKinley*, where the court held: "Based on the pre-petition nature of the [contracts], plaintiffs' attempt to adjudicate the rights of non-debtors only, and the tangential and speculative effect that resolution of the [] claims would have on the bankruptcy proceeding . . . we conclude that these claims are not core to the bankruptcy proceeding." 399 F.3d at 450. At issue in *Mt. McKinley* were the rights of two non-debtors to pre-petition insurance policies. The court noted that the pre-petition nature of the policies suggested that the dispute was not core. *See id.* at 448. It further noted, as a factor militating against a finding of core status, that the debtors were not involved in the dispute. *See id.* Moreover, the parties were not seeking to adjudicate the relative rights of the debtor and non-debtor. *See id.* at 449. Even though the resolution of the dispute could have reduced the proceeds available to the debtor, the court found that was too attenuated and therefore the had no direct effect on a core bankruptcy function. *See id.*; *see also In re Best Mfg. Grp. LLC*, 2007 WL 2746834, at *6 (holding that distribution of proceeds neither affects the administration of the bankruptcy case nor the priority of claims); *Marine Midland Bank v. Zurich Ins. Co. (In re Olympia & York Maiden Lane Co., LLC)*, No. 98/9155A, 1999 WL 58581, at *4 (Bankr. S.D.N.Y. Jan. 25, 1999). Like in *Mt. McKinley*, the dispute here is between two non-debtors, under a pre-petition contract. It does not seek to adjust the relative rights of the debtor and its

creditors—only rights among creditors.  Indeed, the present dispute is a much easier case than *Mt. McKinley* because its resolution will not possibly reduce the amount available to (or distributable by) the debtor.  Accordingly, it will not directly affect any core bankruptcy function in a manner that gives rise to jurisdiction.

This dispute is significantly different than the action at issue Judge Engelmayer's recent *Delaware Trust* decision.  There, the parties were fighting over "adequate protection" payments required under a cash collateral order in the debtor's bankruptcy case.  Adequate protection is a creature of the Bankruptcy Code required expressly by the statute.  *See* 11 U.S.C. §§ 361, 363, 364; *Del. Trust*, 2015 WL 4503521, at *10 ("The Bankruptcy Code prohibits the debtor from spending cash collateral without the consent of all secured creditors . . . In order to obtain such consent from creditors, debtors often need to make adequate protection payments.").  The issue related to various parties' rights to past and future adequate protection payments and involved a determination of the proper method for calculating postpetition interest that would constitute adequate protection.  Judge Engelmayer identified four independent reasons why the dispute arose in the debtor's bankruptcy case such that the exercise of federal court jurisdiction was proper.  First, he held that the dispute could not have arisen outside of the bankruptcy case because the need for adequate protection and the concept of cash collateral are uniquely bankruptcy concepts.  *See id.* at *11 ("Given this dispute's origins and nature, it could *only* have arisen during, and in connection with, ongoing bankruptcy proceedings.") (emphasis in original).  As another reason, he held that determining the method of calculating postpetition interest could implicate Bankruptcy Code provisions.  *See id.* at *14.  Here, the parties' rights are not borne of any uniquely bankruptcy concepts and do not implicate any Bankruptcy Code provisions.

As a third reason, Judge Engelmayer also noted that the dispute would affect the

distribution of property of the estate.  *See id.* at *12.  The dispute in this case will not affect

estate property because Marathon is not seeking to alter distributions under the Plan in the same

manner that the plaintiff in *Delaware Trust* sought to do.  The Intervenor Defendants

disingenuously seek to characterize a single footnote in the introduction to Marathon's complaint

as a concession by Marathon that this action affects the core bankruptcy function of overseeing

distributions by TCEH under its Plan.  *See* July 27, 2015 Letter from Jonathan Rosenberg to the

Court [ECF No. 29] at 2.  Marathon has in fact consistently taken the opposite position.  As the

Intervenor Defendants' themselves acknowledge, while Marathon has identified the Plan as

inconsistent with its rights, it has not requested any change in the distributions under the Plan.

Marathon takes the position that its rights against the Defendants and Intervenor Defendants in

this action may be enforced without regard to whether those rights are reflected in any Plan,

including if any distributions are made that disregard Marathon's priority rights.  *See*

Intervenors' Br. at 9-10.  The Intervenor Defendants persist in this mischaracterization

notwithstanding Marathon's express statements to the contrary and the plain language of the

Complaint.  *See* July 6, 2015 Letter from George W. Shuster, Jr. to the Court [ECF No. 18] at 2;

*see also* Compl. ¶ 12, n.1.  The resolution of this dispute does not "set[] the table for

determination" regarding plan distributions as it did in *Delaware Trust.  See Del. Trust,* 2015

WL 4503521, at *13.

Finally, as the fourth basis for federal jurisdiction, Judge Engelmayer held that the

dispute in *Delaware Trust* was integral to the bankruptcy case.  The parties had raised it at the

outset of the bankruptcy case, conceded that it would be a continuing issue throughout the

bankruptcy proceedings, and described it as a "precursor to how distributions might be made

under the plan." *Id.* at *13.  In reaching his decision, Judge Engelmayer noted that the context of the dispute showed that it arose from and was bound up with the bankruptcy and the plan confirmation process.  *See id.* at *14.  The context of this dispute—it concerns an issue that predated the bankruptcy and will survive the bankruptcy—demonstrates the opposite.

For the same reasons, this dispute does not implicate "matters concerning the administration of the estate" under 28 U.S.C. § 157(b)(2)(A).  The Second Circuit has cautioned that an overly broad reading of this catch-all function that renders core any matter concerning estate administration would undermine the Constitutional limitations on federal bankruptcy court jurisdiction.  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1097, 1102 (2d Cir. 1993).  Because the resolution of this dispute will not affect plan distributions or impede any core bankruptcy function, it cannot affect the administration of the estate.

### 2.     This Action Is Not Unique to, or Uniquely Affected By, TCEH's Bankruptcy Case.

This action, a dispute between non-debtors under a state law contract, is not unique to TCEH's bankruptcy case.  Disputes of this nature routinely arise outside of bankruptcy.  *See, e.g., ZBD Constructors, Inc. v. Billings Generation, Inc.*, No. 09 Civ. 6997 (NRB), 2011 WL 1327144 (S.D.N.Y. Mar. 25, 2011) (intercreditor dispute over entitlement to funds without any bankruptcy proceeding pending*); Highland Park CDO I Grantor Trust, Series A v. Wells Fargo Bank, N.A.*, No. 08 Civ. 5723 (NRB), 2009 WL 1834596 (S.D.N.Y. June 16, 2009) (same).

The Intervenor Defendants assert that this action is unique to the bankruptcy because the only basis for success would be Marathon gaining an advantage in the bankruptcy, specifically, to alter distributions under, or defeat confirmation of, the Plan.  But the intercreditor issue at stake here is independent from the Plan and not a major element of the overall restructuring of

14

TCEH and its affiliated debtors. As discussed above, this dispute need not be decided in the Plan context. Because remedies can be awarded as between Marathon and the other First Lien Lenders even after Plan confirmation, the resolution of this dispute will not have significant, or indeed any, implications for TCEH, the Plan confirmation process, or its emergence from bankruptcy. In this regard, the present action is wholly distinguishable from the dispute in *JP Morgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC (In re Charter Commc'ns)*, 409 B.R. 649 (Bankr. S.D.N.Y. 2009), where the court determined that the only potential effect of the lawsuit *against the debtor* could be to defeat plan confirmation. In *Charter Communications*, there was no other relief that could be granted outside the plan context. *See Charter Commc'ns*, 409 B.R. at 660. That is not true of this action, where TCEH is not even a party. Relief can be awarded to Marathon that is independent of anything that transpires in TCEH's bankruptcy case. This also distinguishes the case from *Delaware Trust*, where the dispute necessarily involved future amounts to be allocated *under the Plan*. Moreover, claims that the present action could have any effect on the Plan confirmation process, even if they did have merit, are at this point mere speculation, because it is uncertain whether TCEH will be able to move forward with its current plan or some other formulation entirely. Again, jurisdiction must be evaluated based on the facts as they currently exist, not on the basis of speculation as to what may occur in the future.

### 3. Marathon Could Maintain This Action Irrespective of TCEH's Bankruptcy.

This action does not depend on TCEH's bankruptcy for its existence. To the contrary, Marathon could have commenced this action to determine its rights before TCEH filed its bankruptcy case, and Marathon will pursue this action after the conclusion of TCEH's bankruptcy case to the extent it is not previously resolved. The coincidence that Marathon

commenced this action during the pendency of TCEH's bankruptcy case does not mean it could not exist but for the bankruptcy. In fact, the opposite is true. As described above, the issue in *Delaware Trust* concerned the uniquely bankruptcy concepts of cash collateral and adequate protection. No such bankruptcy concepts are implicated here. And even if this action could only have been brought as a result of events occurring during TCEH's bankruptcy (which Marathon disputes), that alone is insufficient to confer jurisdiction over the dispute. *See In re U.S. Lines*, 197 F.3d at 638 ("[A] dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition.").

### B. Marathon's Claims Are Not "Related To" TCEH's Bankruptcy Case.

This action is not "related to" TCEH's bankruptcy case because the outcome of this action could have no "conceivable effect" on the administration of the bankruptcy estate. An action is "related to" a bankruptcy case if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" and "in any way impact[] upon the handling and administration of the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.6 (1995). But a bankruptcy court's related to jurisdiction "cannot be limitless." *Id.* at 308. Related to jurisdiction "is not present where the 'related' controversy is too tangential to the bankruptcy case. The court must anticipate whether the resolution of the dispute could conceivably effect the estate's administration. Relatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy case, is so only remotely." *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 60-61 (Bankr. S.D.N.Y. 2006) (citations and alterations omitted).

For the reasons described above, this action will not affect TCEH's rights or affect the administration of its bankruptcy case. As requested by Marathon—and the scope of relief requested by Marathon is the key and only measure relevant here—this action seeks only to

adjudicate rights among non-debtors under a state law contract to funds that may be disbursed by

TCEH—after such disbursement occurs.  Any potential effect on TCEH's estate (and Marathon

contends there is none) would be too tangential to give rise to jurisdiction.  Notwithstanding the

Intervenor Defendants' repeated mischaracterizations to the contrary, Marathon is not seeking to

change any allocation of funds under the Plan or affect confirmation issues like in *Delaware*

*Trust*.  Similarly, the resolution of this dispute will not alter the effect of the Plan from the

perspective of other creditors.  *See Boyer v. Simon (In re Fort Wayne Telesat Inc.)*, 403 B.R. 590,

596 (Bankr. N.D. Ind. 2009) ("When considering related to jurisdiction over controversies to

which neither the estate nor the trustee is a party, it is the effect upon *other* creditors that

matter[s].") (emphasis in original).

It simply does not make sense for the Court to exercise jurisdiction here.  The purpose of

federal bankruptcy jurisdiction is for the bankruptcy courts to be able to resolve matters that

could affect the debtor or its estate, increase or decrease the amount of the debtor's assets or

liabilities, or impede the plan confirmation process.[4]  The resolution of this dispute in the State

Court would do none of those things.  For these reasons, the Intervenor Defendants have failed to

meet their burden to establish federal bankruptcy jurisdiction over this action.  Thus, the Court

should grant Marathon's motion to remand this action to the State Court.

## II.     EVEN IF JURISDICTION EXISTED, THE COURT SHOULD NEVERTHELESS REMAND THIS ACTION TO THE STATE COURT.

### A.     Mandatory Abstention Is Warranted Under 28 U.S.C. §1334(c).

Even if the Court were to determine that it had "related to" jurisdiction over Marathon's

claims, it must abstain from exercising that jurisdiction.  In contesting abstention, the Intervenor

---

[4] As noted above, this Court should not presume an exercise of federal court jurisdiction by the Bankruptcy Court because Marathon reserves the right to seek withdrawal of the reference and to have this action adjudicated by the District Court.

Defendants focus only on the ability of the State Court to timely adjudicate the dispute. Their arguments are misguided for several reasons. First, they presuppose that the resolution of this dispute will affect how TCEH distributes reorganized equity under its Plan. As described above, it will not. So resolution of this dispute is not a prerequisite to Plan confirmation and in fact, this action would survive the Plan.

Second, there is no guaranty the Plan will go forward on the timeline allotted. It may stretch beyond the three to eight month timeline trumpeted by the Intervenor Defendants. Indeed, TCEH has acknowledged that "critical issues" remain to be worked out before the Plan can be confirmed as currently envisioned. *See* Shuster Decl., Ex. A ¶ 1.

Third, the Intervenor Defendants ignore the existence of Rule 9 of Section 202.70(g) of Section (g) of the Uniform Rules for the Supreme Court and County Courts of New York. Under Rule 9, the parties would be able to use accelerated adjudication procedures to significantly shorten the length of this dispute by, among other things, curtailing the use of discovery and requiring the waiver of certain rights. This furthers the ability of the State Court Commercial Division (where this action was commenced), which is already faster than the noncommercial sections of the State Court, to more swiftly resolve this action.

### B. The Court Should Permissively Abstain From Exercising Jurisdiction Over, or Equitably Remand, this Action.

Even if the Court were to conclude that remand is not required, and that mandatory abstention does not apply, it should nevertheless remand on the basis of permissive abstention under 28 U.S.C. § 1334(c)(1) or equitably remand this action under 28 U.S.C. § 1452(b). Any relationship between this action and TCEH's bankruptcy case is too attenuated to warrant the exercise of jurisdiction. The relevant factors militate in favor of abstention and remand to the State Court. *See* Removal Br. at 10 (summarizing factors to be considered). As described above,

adjudication of this dispute in State Court will not delay or affect the administration of TCEH's bankruptcy case. In addition, this action raises purely state law claims, does not involve core matters and is at best only remotely related to the bankruptcy proceeding, and involves only non-debtors. Thus, there is no reason for it to remain in federal court.

## III.    THE INTERVENOR DEFENDANTS' MOTION TO TRANSFER SHOULD BE DENIED.

The Court should decide the remand issues first because a decision by this Court remanding this action to State Court would moot any consideration of venue transfer by this Court. *See, e.g., Bank of N.Y. v. Bank of Am.*, 861 F. Supp. 225, 227-28 (S.D.N.Y. 1994) ("Because the removal statute only allows removal of actions within the Court's original jurisdiction, . . . and because fundamental principles of American jurisprudence forbid the Court from acting in the absence of subject matter jurisdiction . . . plaintiffs' contention [as to lack of federal subject matter jurisdiction on a motion to remand] must be examined before any other matter.") (internal citations omitted); *Lothian Cassidy, LLC v. Lothian Expl. & Dev. II, L.P.*, 487 B.R. 158, 161 (S.D.N.Y. 2013) (addressing remand motion first, and then transfer motion). Nevertheless, if the Court declines to remand this action, the Intervenor Defendants have failed to explain why this Court should transfer this action to the Delaware District Court pursuant to either 28 U.S.C. § 1412 or 28 U.S.C. § 1404(a).

As an initial matter, 28 U.S.C. § 1412 only applies to "core" proceedings. *See, e.g., Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC)*, 285 B.R. 822, 835 (S.D.N.Y. 2002) (noting that 28 U.S.C. § 1412 applies only to core proceedings). For the reasons discussed above, this action is not a "core" bankruptcy proceeding and, therefore, Section 1412 does not apply. In any event, courts generally consider the same factors under Section 1412 or 1404(a). *See Del. Trust*, 2015 WL 4503521,

at *15.  "The goals of § 1404 are to prevent waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Id.* Generally, "a plaintiff's choice of forum . . . will not be disturbed except upon a clear-cut showing that convenience and justice for all parties demands that the litigation proceed elsewhere." *First Fed. Sav. Bank v. Tazzia*, 696 F. Supp. 904, 910 (S.D.N.Y. 1988) (internal quotations omitted).  This is a burden they have not met.  Therefore, even if this Court determines that it has (and will exercise) jurisdiction over this dispute, the Transfer Motion should be denied.

"The power to transfer a case should be exercised cautiously, and a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weights in his favor."  *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,* No. 11 CIV. 7511, 2012 WL 698134, at *3 (S.D.N.Y. Mar. 5, 2012).  Further, under § 1404(a), the movants have the burden of showing that transfer is warranted by "clear and convincing" evidence.  *See Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y.  2009).  The Intervenor Defendants have failed to show that transfer is in the interests of justice, or that it is more convenient for the parties.

### A.    Transfer Will Not Further the Interests of Justice.

Transferring this action to Delaware will not promote judicial economy and will not serve the interests of justice.  Even if the Court finds that this dispute is a "related to" proceeding within the meaning of 28 U.S.C. § 1334(b), it is not actually intertwined with any issue in TCEH's bankruptcy case.  There is no competing litigation or request to affect the Plan confirmation process.  And while the Intervenor Defendants claim that the Bankruptcy Court already has relevant knowledge regarding this dispute, they can point to no consideration by the Bankruptcy Court of the issues raised in this action.  Thus, the policy that favors centralized

20

litigation of bankruptcy proceedings is irrelevant to this action. *See APA Excelsior III L.P. v. Premiere Techs.*, 49 F. Supp. 2d 664, 668 (S.D.N.Y. 1999) (noting that transfer is favored where is there is pending *related* litigation in the transferee court).

Additionally, the parties to the Intercreditor Agreement chose New York as their preferred forum for litigation. Their selection is entitled to deference and weighs against transfer, because of the "'strong presumption in favor of the plaintiff's choice of forum.'" *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 306 B.R. 746, 750 (S.D.N.Y. 2004); *Luciano v. Maggio*, 139 B.R. 572, 577 (E.D.N.Y. 1992) (noting the "presumption in favor of plaintiff's choice of forum" carries weight even in the context of a motion to transfer pursuant to § 1412).

Moreover, the Intervenor Defendants' arguments focus on transferring the case to the Bankruptcy Court. But it is not a foregone conclusion that it will stay there even if it is transferred. Marathon reserves the right to seek withdrawal of the reference to the Delaware District Court. Even if the Court were to determine that this action is statutorily "core," that is not conclusive of the Bankruptcy Court's constitutional authority to enter final judgment. *See Stern v. Marshall*, 131 S. Ct. 2594, 2608 (2011). None of the reasons articulated by the Intervenor Defendants—to the extent they have any merit in the first place—would apply to the Delaware District Court adjudicating this dispute.

### B. Transfer Will Not Favor Convenience.

Consideration of the convenience of the parties does not favor transfer. First, the parties foreclosed any argument that New York would be inconvenient when they consented in the Intercreditor Agreement to actions being brought in New York. Second, this action, as discussed at length above, is simply not related to TCEH's bankruptcy case.

A discussion of convenience in the context of venue transfer requires consideration of a forum selection clause. *See KPMG Consulting, Inc. v. LSQ II, LLC*, No. 01 Civ. 11422, 2002 WL 1543907, at *3 (S.D.N.Y. July 12, 2002) ("the presence of a forum selection clause [is] a '[s]ignificant factor that figures centrally in the district court's calculus.'") (*quoting Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). The Intervenor Defendants' contentions that the Delaware Bankruptcy Court would be more convenient ignore the simple fact that the parties to the Intercreditor Agreement waived "any objection that [they] may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agree[d] not to plead or claim the same." Compl. ¶ 15. After the Intervenor Defendants agreed that New York is a proper forum for litigation, it cannot be a surprise to the Intervenor Defendants that Marathon chose New York state court for the filing of its Complaint. *See Chase Manhattan Bank, N.A. v. Francini*, No. 91 Civ. 2515 (MBM), 1991 WL 161359, at *5 (S.D.N.Y. Aug. 16, 1991) (denying the transfer motion and noting that inasmuch as "defendants 'irrevocably submit[ted] to the non-exclusive jurisdiction of any New York State or Federal court sitting in The City of New York . . . over any suit, action or proceeding arising out of or relating to this guaranty,'" they "c[ould] hardly claim surprise or injustice").

The Intervenor Defendants have failed to show that any interest of justice or convenience will be served by transfer of venue. Accordingly, the Transfer Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Court should grant the Remand Motion, deny the Transfer Motion, and grant Marathon such other and further relief as is just and proper.

Dated:  July 29, 2015

WILMER CUTLER PICKERING
 HALE AND DORR LLP


By:  /s/ George W. Shuster, Jr.
George W. Shuster, Jr.
Christopher J. Bouchoux
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800

Benjamin W. Loveland
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

*Counsel for Marathon Asset Management, LP*

**Letter from George W. Shuster, Jr. to Judge Torres
dated August 13, 2015 [D.I. 36]**

WILMERHALE

**George W. Shuster Jr.**

+1 212 937 7232
george.shuster@wilmerhale.com

**BY ECF**

August 13, 2015

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:**    *Marathon Asset Management, LP v. Wilmington Trust, N.A.,*
            **Case No. 1:15-cv-04727 (AT)(AJP)**

Dear Judge Torres:

I am responding for my client Marathon Asset Management, LP, on behalf of one or more managed funds and/or accounts, the plaintiff in the above-referenced action ("Marathon" and the "Action"), to the letter to the Court dated August 12, 2015 [ECF No. 35] (the "August 12 Letter"), from Jonathan Rosenberg of O'Melveny & Myers LLP for his clients Angelo Gordon & Co., LP, Apollo Advisors VII, L.P., and Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P., the intervenor defendants in the Action (collectively the "Intervenor Defendants").  The August 12 Letter and this letter relate to Marathon's motion to remand this Action to New York state court [ECF No. 14] and related filings.

As a preliminary matter, we would prefer not to have to address the Court in letters such as this, when briefing of the jurisdiction and venue dispute in this Action is complete and pending a decision by the Court on Marathon's request for oral argument, but we feel the August 12 Letter in particular requires us to reply for Marathon.

The August 12 Letter purports to describe provisions included in the Third Amended Plan of Reorganization (the "Plan") proposed by Texas Competitive Electric Holdings LLC ("TCEH"). The Intervenor Defendants allege that the Plan establishes bankruptcy jurisdiction over this Action pursuant to 28 U.S.C. § 1334.  However, the August 12 Letter actually confirms the opposite.

In its initial brief, the Intervenor Defendants emphatically stated that Marathon would object to confirmation of the prior TCEH chapter 11 plan, and that, because of that anticipated objection, this Court should not remand this Action to the New York state court, but rather should transfer this Action to Delaware so that it could be subsumed within the TCEH bankruptcy case.  See Intervenor Defs. Mem. at 4, 10 [ECF No. 26].  In its response, Marathon made clear that it would not be required to object to confirmation of the prior TCEH plan, because TCEH's prior plan did not and could not foreclose a stand-alone suit by Marathon against its co-lenders pursuant to a contract among those parties, where the suit would not have any effect on TCEH or its other

August 13, 2015
Page 2

creditors.  *See* Marathon Reply at 3, 4 n.3, 9, 13 [ECF. No. 30].  In obvious reply to Marathon's brief—and in an effective admission that Marathon's position was correct—the amended Plan tries to force Marathon to object to confirmation of the Plan, by stating that upon Plan confirmation, the contract among Marathon and its co-lenders would be "deemed amended" to eviscerate Marathon's rights.  Thus, the amended Plan tries to set a "jurisdictional trap" for Marathon—purporting to give Marathon the Hobson's choice of objecting in the bankruptcy court and thereby potentially consenting to bankruptcy court jurisdiction, or sitting out the bankruptcy process and potentially losing its rights by purported estoppel.  Not only is this trap an underhanded and untoward method of trying to litigate the pending jurisdiction and venue dispute in this Action, it is also ineffectual.  It is axiomatic that a court without jurisdiction cannot obtain jurisdiction solely because an entity (here, TCEH) files a pleading (that is essentially what the Plan is at this stage) purporting to establish that jurisdiction, or attempting to trap another entity into consenting to jurisdiction.  The truth remains now as it always has— Marathon should retain its rights against its co-lenders under the contract among them regardless of what the Plan or its confirmation purports to do, because the bankruptcy court lacks jurisdiction to impair those rights.

The plaintiff is the master of its complaint, and jurisdiction is measured by the face of the complaint at the time it is filed.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 390 (1987) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."); *Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., LLC*, 357 F. Supp. 2d 529, 535 (E.D.N.Y. 2004)  ("It is well-established that the well-pleaded complaint rule applies both to federal question jurisdiction under 28 U.S.C. § 1331, and to bankruptcy jurisdiction under 28 U.S.C. § 1334"); *Yangming Marine Transp. Corp. v. Electri-Flex Co.*, 682 F. Supp. 368, 370 (N.D. Ill. 1987) ("There is no bankruptcy exception to the well-pleaded complaint rule. The relatedness, if any, of this case to a bankruptcy is visible only from the answer.").  As described in its memoranda of law in support of its motion to remand [ECF Nos. 15, 30], Marathon's complaint is a pure state-law contract dispute that does not seek to alter distributions under the Plan or affect the TCEH bankruptcy case in any way.  In an effort to force this Action into bankruptcy court, TCEH and the other Plan proponents expanded the language regarding the Plan's treatment of TCEH first lien claims so that it now seeks to preclude the independent adjudication of issues between Marathon and the other first lien lenders (all non-debtors).  These issues have no bearing on the distribution of amounts due to the first lien lenders under the Plan, and indeed that distribution mechanism remains unchanged even under the current Plan.  In all events, extrinsic factors created by gamesmanship cannot affect the Court's jurisdictional analysis.

Courts are vigilant against attempts to manufacture jurisdiction.  For example, a defendant cannot create jurisdiction by asserting defenses and counterclaims that implicate federal court jurisdiction.  *See Prop. Clerk, New York City Police Dep't v. Fyfe*, 197 F. Supp. 2d 39, 41

WILMERHALE

August 13, 2015
Page 3

(S.D.N.Y. 2002) ("[L]ike a defense, a counterclaim is insufficient to create removal jurisdiction under the well-pleaded complaint rule."). And federal statute prohibits the improper or collusive joinder of parties for purposes of invoking federal jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1359; *see also Airlines Reporting Corp. v. S and N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995) ("We give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction, the reasons for which we have made abundantly clear: 'such devices, unless controlled, can provide a simple means of expanding federal diversity jurisdiction far beyond [its] purpose.'") (internal citations and quotations omitted). The driving principle behind these rules applies equally here, a party, through its unilateral acts, cannot create jurisdiction. Accordingly, the Court should not consider the amendments to the Plan in evaluating whether it has jurisdiction over this Action.

While the propriety of the Plan amendments from a bankruptcy perspective is not an issue before this Court, the amendments, even if considered by the Court, cannot affect the Court's jurisdiction over the complaint. The new provisions cited by the Intervenor Defendants are severable from the issues raised in this Action, the amount to be distributed to the TCEH first lien lenders under the Plan, or anything else that resembles a core function of the bankruptcy court. Marathon does not believe the provisions cited by the Intervenor Defendants are essential to the reorganization. Indeed, on information and belief, the defendant and the Intervenor Defendants were parties to a restructuring support agreement early in TCEH's bankruptcy proceedings and supported a prior iteration of the Plan that contained no such language.

Because their first strategy of stating that Marathon would object to the prior TCEH chapter 11 plan proved impotent, the Intervenor Defendants have now attempted to argue that Marathon is forced Marathon to object to the amended Plan. *See* August 12 Letter, at 2 ("Marathon will have to object to the plan, and that objection will necessarily raise the issues raised here . . ."). Importantly, no objection has yet been filed, no deadline for objection has come, and jurisdiction must be measured on the status of things as they exist today, not on hypotheticals. Moreover, the nature of Marathon's objection need not necessarily address the issues raised in this Action or the distributions to be made under the Plan. Marathon may simply seek to reserve its rights in this Action rather than adjudicate the merits of this Action through the Plan confirmation process. An objection on that basis would be insufficient to give rise to "arising in" jurisdiction even if it were filed at some point in the future.

Notably, even if the Court were to determine that bankruptcy jurisdiction exists over this Action, such jurisdiction would not rise to the level of "arising-in" jurisdiction because, even considering the Plan amendments, this Action does not seek to affect a core bankruptcy function. Therefore, such a determination would not alter the conclusion for which Marathon has argued in its briefs—the Court must still abstain pursuant to 28 U.S.C. § 1334(c)(2). And even if the Court were to conclude that this Action is subject to "arising in" jurisdiction, the Court should exercise its discretion to equitably remand or abstain pursuant to 28 U.S.C. § 1334(c)(1) or 28 U.S.C. §

WILMERHALE

August 13, 2015
Page 4

1452(b) based on the attempted actions to create jurisdiction and the resulting prejudice to Marathon.

Finally and crucially, the Plan proponents' attempt at gerrymandering itself proves that jurisdiction does not in fact exist based on the face of Marathon's complaint. If it did, the Plan proponents would not be trying to amend the Plan to avoid it. *See Sealink Funding Ltd. v. Bear Stearns & Co.*, No. 12 Civ. 1397 (LTS), 2012 WL 4794450, at *2 (S.D.N.Y. Oct. 9, 2012) ("On a motion for remand, the court must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff."). Indeed, the modified language, which was not included in any previous iteration of the Plan (iterations in which the Intervenor Defendants had a hand), only appeared in the Plan after Marathon's remand motion was fully briefed. Marathon suspects, and should be allowed discovery to confirm prior to any determination by the Court that takes the Plan amendments into account, that the Intervenor Defendants were among the key Plan proponents involved in the Plan amendments they point to in the August 12 Letter. Marathon believes that such discovery would expose the Intervenor Defendants' underhanded strategy to create bankruptcy jurisdiction, having realized they are on the losing end of the pending jurisdiction and venue disputes.

Regards,

/s/ George W. Shuster, Jr.

George W. Shuster, Jr.

cc:    All Counsel of Record