IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., ET AL., | § § | Case No. 14-10979 (CSS) |
| Debtors. | § § § | (Jointly Administered) |

**LIMITED OBJECTION OF TEX-LA ELECTRIC COOPERATIVE OF TEXAS, INC. AND THE UNITED STATES OF AMERICA, ACTING BY AND THROUGH THE ADMINISTRATOR OF THE RURAL UTILITIES SERVICE, SUCCESSOR TO THE RURAL ELECTRIFICATION ADMINISTRATION, TO THE FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND RESERVATION OF RIGHTS**

Tex-La Electric Cooperative of Texas, Inc. ("Tex-La" or the "Cooperative") and the United States of America, acting by and through the Administrator of the Rural Utilities Service, successor to the Rural Electrification Administration (the "RUS" or the "Government"), file this joint limited objection (the "Objection") to the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Doc. No. 6122] (as may be subsequently amended, supplemented or modified, the "Plan"), filed by the Debtors (as defined in the Plan), and in support of its Objection would respectfully show the following:

### I. JURISDICTION

1. The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. Matters concerning confirmation of a chapter 11 plan are core proceedings pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. § 1408.

## II. BACKGROUND

2.  The Debtors commenced these chapter 11 cases (the "Cases") by filing voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on April 29, 2013 (the "Petition Date"). By an order dated June 6, 2014, this Court granted authority for the Debtors' to use Cash Collateral on certain conditions more fully described in the *Final Order (a) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (b) Granting Adequate Protection, and (c) Modifying the Automatic Stay* [Doc. No. 885] (as extended by stipulation or further order of the Court, the "Cash Collateral Order"). Under the Cash Collateral Order, Paragraph 5(d), the Debtors have paid the "Tex-La Adequate Protection Payments" defined to be "current payments of principal and interest . . . at the non-default rate provided under the Tex-La Documents, notwithstanding any acceleration provided for as a result of a chapter 11 bankruptcy filing or otherwise."

3.  As further described in Paragraph F(iii) of the Cash Collateral Order, certain Debtors are indebted to Tex-La. In 1980, Tex-La acquired a 2.17% (50MW) undivided ownership interest in the Comanche Peak nuclear power project (the "Comanche Peak Assets") from Texas Utilities Electric Company ("TXU"), one of the Debtors' predecessors.[1] Delays in construction and project cost overruns resulted in litigation between the Debtors' predecessors, Tex-La and other minority owners. In 1990, Tex-La signed agreements that, among other things, settled the litigation. Pursuant to the settlement agreement, TXU purchased all of Tex-La's interest in the Comanche Peak Assets including the related transmission facilities.

---

[1] For simplicity, and to provide background for the Court, Tex-La describes the various TXU entities involved in the transaction, collectively as the Debtors. All capitalized terms used but not defined in this Objection shall have the meaning ascribed to them in the Plan or Cash Collateral Order.

4.  In order to facilitate the settlement, including the purchase by the Debtors of the Comanche Peak Assets, Tex-La transferred its interest in the project to the Debtors pursuant to a Special Warranty Deed with a Vendor's Lien and Bill of Sale, and the Debtors, Tex-La and RUS entered into that certain Assumption Agreement, dated February 1, 1990, (the "Assumption Agreement"), whereby the Debtors assumed $174,721,065 of Tex-La's aggregate indebtedness to the Federal Financing Bank ("FFB") and the Rural Electric Cooperative Grantor Trust. To secure the transaction, the Debtors' predecessor also granted liens and securities interests to Tex-La and RUS pursuant to a Deed of Trust and Security Agreement to Secure Assumption dated February 1, 1990, filed as a deed of trust in Hood, Somervell, Johnson and Tarrant counties, Texas, and also filed in the Office of the Secretary of State of Texas on February 2, 1990 as Utility Security Instrument Number 90-00025780 (collectively, as amended, the "Deed of Trust"), which created properly perfected, enforceable, first and prior, continuing liens and security interests on the real and other property comprising a 2.17% undivided ownership interest in the Comanche Peak electricity generation and transmission assets, and a 6.02% undivided ownership interest in the 51.5 mile 345 kV Comanche Peak-Cleburne-Everman transmission facilities (collectively, the "Tex-La Collateral").

5.  Under the terms of the Assumption Agreement and Deed of Trust,[2] the Debtors are required to make scheduled payments directly to FFB and the Trustee for the Grantor Trust Notes for its portion of the Comanche Peak debt that the Debtors assumed from Tex-La. Absent acceleration, the maturity dates for such obligations are to occur into 2019 and 2021. The Assumption Agreement also provides, among other things, that Tex-La remains primarily liable to FFB and the Trustee for the Grantor Trust Notes, and that the Debtors are required to

---

[2] The Assumption Agreement provides that it "shall be construed and enforced in accordance with, and governed by, the laws of the State of Texas."

reimburse Tex-La for any costs, including prepayment premiums, incurred by Tex-La as the result of the Debtors' early payment of their Assumption Agreement obligations.[3]

6. Additionally, and as recited in the Assumption Agreement, Debtor Energy Future Holdings Corp.'s predecessor executed a Guaranty Agreement, dated February 1, 1990 (the "Guaranty Agreement"), further securing the obligations thereunder to Tex-La and RUS through the grant of a chattel paper security interest to Tex-La and RUS.

7. The Plan classifies Tex-La's Secured Claim[4] arising from the Tex-La Documents under Class C1 – "Other Secured Claims Against the TCEH Debtors." Under the terms of the Plan, Tex-La's Class C1 Secured Claim is deemed Unimpaired, and the Debtors propose to satisfy such Claim by: (i) payment in full in Cash; (ii) delivery of collateral securing such claim and payment of interest as required under section 506(b) of the Bankruptcy Code; (iii) reinstatement of the Claim; or (iv) such other treatment as may render the Claim as Unimpaired under the Plan.

8. Upon information and belief, the Plan classifies RUS's secured claim under the Guaranty Agreement under Class A12 – "Tex-La Guaranty Claims." Under the terms of the Plan, claims in Class A12 are deemed Unimpaired, and the Debtors propose that the Holders of such claims receive treatment, up to the Allowed Amount of their claim, on account of such claim under Class C1 as Allowed Other Secured Claims Against the TCEH Debtors.

---

[3] The Debtors are also liable for any attorney fees and costs incurred in enforcing the Assumption Agreement, even if there were no early payment.

[4] The approved Disclosure Statement contains a footnote stating: Tex-La Electric Cooperative of Texas, Inc. and the RUS each filed three proofs of claim on the Claims Register [Proofs of Claim No. 7794, 7795, 7796, 7807, 7808, and 7809], asserting $60,810,367.58 and certain other unliquidated amounts against Energy Future Holdings Corp., Luminant Generation Company LLC, and Energy Future Competitive Holdings Company LLC on account of such principal balances and other asserted outstanding amounts. The Debtors, Tex-La Electric Cooperative of Texas, Inc., and the RUS reserve all rights related to such filed Proofs of Claim.

## III. LIMITED OBJECTION

9. Tex-La and the RUS do not oppose confirmation of the Debtors' Plan,[5] provided that the satisfaction of Tex-La's Class C1 Secured Claim (and RUS's claims) remain wholly consistent with the terms of the Assumption Agreement, Deed of Trust, Guaranty Agreement, and applicable law such that Tex-La's rights remain truly Unimpaired. To the extent the Debtors propose to satisfy Tex-La's Class C1 Secured Claim by early payment in Cash, such payment must include all payments required by the Assumption Agreement, including, without limitation, reimbursement for any costs and premiums caused by such early payment. Accordingly, Tex-La (and RUS) expressly reserves all rights under the Assumption Agreement, the Deed of Trust, the Guaranty Agreement, the underlying debt instruments, the Cash Collateral Order, and any and all other orders and agreements and Tex-La Documents (together with any and all related documents, the "Tex-La Documents"), as necessary to ensure that Tex-La's and RUS's rights and remedies are truly Unimpaired under the Plan.

10. Although it is possible that the Debtors may seek allowance of the Tex-La and RUS Claims pre-confirmation, it is far more likely that the Tex-La Claims will be resolved post-confirmation. Tex-La and RUS specifically object to any estoppel or preclusive effect that any party may raise post-confirmation regarding the Allowance of Tex-La or RUS Claims.

11. Therefore, Tex-La and RUS respectfully request that any confirmation order (and Plan): (a) not preclude or limit Tex-La's or RUS's rights to seek (and receive) all claimed amounts that may be due under the Tex-La Documents or their respective claims, and (b) include language expressly preserving Tex-La's and RUS's rights post-confirmation to seek and receive all claimed amounts as an Allowed Claim, including, without limitation, prepayment premiums,

---

[5] The Government reserves its rights to file other objections to confirmation of the Plan and to independently pursue or resolve each such objection.

and attorney fees and costs. Such relief is consistent with the reservation of rights contained in the approved Disclosure Statement.[6]

## IV. PRAYER

WHEREFORE, Tex-La and RUS respectfully request that the Court enter orders consistent with this limited Objection, including an order confirming the Plan consistent with Tex-La's and RUS rights reserved herein, and such other and further relief as may be just and proper.

---

[6] *See, fn. 4, infra.*

Dated: October 23, 2015

MANION GAYNOR & MANNING LLP

By: _____
Marc J. Phillips (Del. Bar No. 4445)
1007 North Orange Street, 10th Floor,
Wilmington, DE 19801
Telephone: (302) 504-6803
Facsimile: (302) 657-2104
Email: MPhillips@mgmlaw.com

and

DYKEMA COX SMITH

Jeffrey R. Fine (TX Bar No. 07008410)
Alison R. Ashmore (TX Bar No. 24059400)
Aaron M. Kaufman (TX Bar No. 24060067)
1717 Main Street, Suite 4200
Dallas, Texas 75201
Telephone: (214) 462-6400
Facsimile: (214) 462-6401
Email: jfine@dykema.com

***Counsel for Tex-La Electric Cooperative Of Texas, Inc.***

and

BENJAMIN C. MIZER
Principal Deputy Assistant
Attorney General
CHARLES M. OBERLY, III
United States Attorney
/s/ Matthew J. Troy
TRACY J. WHITAKER
MATTHEW J. TROY
GA State Bar No. 717258
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
(202) 514-9038 (o)
(202) 307-0494 (f)

***Counsel for the Rural Utilities Service***

7