IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., et al.,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>)<br>) **Plan Hearing: November 3, 2015 at 11:00 AM**<br>) **Objection Date: October 23, 2015**<br>)<br>) Related Docket Nos. 6123, 6222 & 6544 |

**ORACLE'S LIMITED OBJECTION AND RESERVATION OF RIGHTS REGARDING (I) THE FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL*., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE; AND (II) NOTICE OF (A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED BY THE DEBTORS PURSUANT TO THE PLAN; (B) CURE AMOUNTS, IF ANY; AND (C) RELATED <u>PROCEDURES IN CONNECTION THEREWITH</u>**

Oracle America, Inc., successor in interest to Datalogix, Inc. ("Oracle"), a creditor and contract counter-party in the above-captioned jointly administered Chapter 11 cases, submits this Limited Objection and Reservation of Rights (the "Limited Objection") regarding the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code ("Plan") and the Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtors Pursuant to the Plan; (B) Cure Amounts, if Any; and (c) Related Procedures in Connection Therewith ("Assumption Notice") filed by Energy Future Holdings Corp., *et al*. ("Debtors").

    **I.**    <u>**INTRODUCTION**</u>

    1.    By the Plan, the Plan Supplement (defined below), and the Assumption Notice, the Debtors seek Bankruptcy Court authority to, among other things, assume certain executory contracts between the Debtors and Oracle and potentially authorize the shared use of the benefits of those contracts.

2. Oracle does not consent to the proposed assumption or shared use, for the following reasons.

3. First, the Plan Supplement and the Assumption Notice do not adequately describe the contracts the Debtors seek to assume, and Oracle therefore cannot ascertain how its agreements are to be treated by the Plan.

4. Second, based on the limited information provided by the Plan Supplement and the Assumption Notice, Oracle is unable to determine the accuracy of the cure amounts proposed by the Debtors.

5. Third, the Debtors have failed to provide adequate assurance of future performance under the Oracle contracts.

6. Finally, through the "Transition Services Agreement" contemplated by the Plan, the Debtors may seek authority to share use of Oracle licenses and support services between the Debtors, Reorganized Debtors (as that term is defined in the Plan), and/or other newly formed entities, which shared use is not authorized by the Oracle contracts.

7. Accordingly, Oracle requests that the Court deny confirmation of the Plan and approval of the Assumption Notice to the extent they seek authority for the Debtors to assume any Oracle agreements or to allow shared use of Oracle licenses and services.

**II.     FACTUAL BACKGROUND**

8. The above-captioned case was filed on April 29, 2014, and a final order directing joint administration was entered on June 5, 2014.

9. The Debtors filed the Plan on September 21, 2015. The Plan sets forth procedures for the assumption and rejection of executory contracts.

10. Pursuant to Article V, Section A of the Plan, all executory contracts not previously assumed or rejected will be deemed assumed by the Plan Effective Date.

11. No Oracle contracts have been previously assumed or rejected, nor are any Oracle contracts the subject of any pending motion to reject.

12. On October 14, 2015 the Debtors served on Oracle an individualized Assumption Notice.

13. Exhibit "A" to the Assumption Notice identified one Oracle contract described as follows**:**

| Debtor(s) | Description of Contract | Counterparty | Cure Defaults |
|---|---|---|---|
| TXU Energy Retail Company LLC | Services Agreement Dated 02/03/2014 | Datalogix, Inc. | TXU Energy Retail Company LLC - $0.00 |

The agreement listed above is referred to herein as the "Datalogix Agreement."[1]

14. On October 20, 2015, the Debtors filed their Plan Supplement for the Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*., Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan Supplement").

15. Exhibit "D" to the Plan Supplement provides a list of executory contracts and unexpired leases to be rejected by the Reorganized Debtors on the Effective Date ("Rejected Contract List"). No Oracle contracts are identified on the Rejected Contract List.

16. Exhibit "C" to the Plan Supplement provides a list of executory contracts and unexpired leases to be assumed by the Reorganized Debtors on the Effective Date ("Assumed Contract List").

17. The Assumed Contract List identifies the follow Oracle contracts:

---

[1] As of the date of filing this Limited Objection, the undersigned counsel has not received any other individualized Assumption Notices.

| Debtor(s) | Description of Contract | Counterparty | Cure Defaults |
|---|---|---|---|
| TXU Energy Retail Company LLC | Services Agreement Dated 02/03/2014 | Datalogix, Inc. | TXU Energy Retail Company LLC - $0.00 |
| Luminant Energy Company LLC | Services Agreement Dated 2/28/2008 | Oracle USA, Inc. | Luminant Energy Company LLC – $0.00 |
| EFH Corporate Services Company | Software License and Support Agreement Dated 02/10/1997 | Oracle Corporation | EFH Corporate Services Company - $0.00 |
| EFH Corporate Services Company, Luminant Energy Company LLC | Software License and Support Agreement dated 03/06/2014 | Oracle America, Inc. | EFH Corporate Services Company - $0.00 |

The agreements listed above, including the Datalogix Agreement, are referred to herein collectively as the "Oracle Agreements."

18. The Plan also contemplates a Transition Services Agreement ("TSA") which is defined by the Plan as:

> the transition services agreement to be entered into between Reorganized TCEH and Reorganized EFH, in form and substance reasonably acceptable to each of the parties thereto, the Plan Sponsors, and the TCEH Supporting First Lien Creditors, as applicable, addressing the Shared Services and any other transition services reasonably necessary to the continued operation of Reorganized EFIH and/or Reorganized EFH (or EFH Corp., as applicable), which shall be included in the Plan Supplement.

Plan Art. I, § A, sub 421.

19. A draft TSA between "Energy Future Holding Corp." and "Texas Competitive Electric Holdings Company Inc." is attached to the Plan Supplement as Exhibit "P."

20. The scope of the anticipated transition services, as described in Section 1.1 and Annex A of the draft TSA, is not entirely clear, and the TSA allows the parties to agree upon additional services to be provided at a later date.

21. However, the TSA clearly anticipates the use of the Debtors' computer systems, including licensed software provided to the Debtors by third parties, as part of the transition services. *See* TSA §§ 1.1(b), 1.2(e), 1.3(a), etc.

22. The TSA further acknowledges that third party consent may be necessary to give the parties the right to continue using licensed third party software:

> The Parties acknowledge and agree that it may be necessary to obtain from third parties certain consents, waivers, permits, licenses or sublicenses ("Consents") in order for (i) Reorganized TECH to use third-party applications, Intellectual Property, systems, networks and similar services and functions in the provision of Transition Services and/or (ii) the Company to receive Transition Services.

TSA, § 1.3(a).

### III. ARGUMENT

#### A. The Debtors May Not Assume The Oracle Agreements Absent Oracle's Consent Because They Pertain To Licenses Of Intellectual Property.

23. Section 365(c)(1) of the Bankruptcy Code provides, in relevant part:

> The trustee may not assume or assign any executory contract ... of the debtor ... if (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor ..., whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and (B) such party does not consent to such assumption or assignment.

24. Federal law makes non-exclusive patent licenses non-assignable absent consent of the licensor. *In re Catapult Entertainment, Inc.,* 165 F.3d 747 (9th Cir. 1999), *cert. dismissed*, 528 U.S. 924 (1999). *See, In re Access Beyond Technologies, Inc.,* 237 B.R. 32, 48-49 (Bankr. D. Del 1999) *(citing In re: West Elec., Inc.) 852 F. 2d 79 (3d Cir. 1988); In re ANC Rental Corporation, Inc.,* 277 B.R. 226, 235 (Bankr. D. Del. 2002); *In re Golden Books Family Entertainment, Inc.,* 269 B.R. 311, 316 (Bankr. D. Del. 2001))**;** *see also In re Trump Entm't Resorts, Inc.*, 526 B.R. 116, 126 (Bankr. D. Del. 2015) ("Non-exclusive patent and copyright

licenses create only personal and not property rights in the licensed intellectual property and so are not assignable.").

25. Where applicable law prohibits the assignment of an executory contract to a non-debtor third party, then under section 365(c)(1), a debtor may not assume the contract absent consent of the non-debtor contract counterparty. *In re West Electronics, Inc.*, 852 F.2d 79, 82 (3d Cir. 1988).

26. The Oracle Agreements are integrated agreements for the licensing of non-exclusive, patented software.

27. Accordingly, if the Debtors seek to assume any Oracle Agreements pursuant to the Plan, the Debtors must first obtain Oracle's consent.

28. At this time, for the reasons discussed herein, Oracle does not consent to any proposed assignment or transfer of the Oracle Agreements or the licensed software that is subject to the Oracle Agreements.

29. The Debtors' request to assume the Oracle Agreements pursuant to the Plan should therefore be denied.

**B.    The Debtors Have Not Adequately Identified The Oracle Agreements To Be Assumed.**

30. The contract descriptions provided in the Plan Supplement and the Assumption Notice are inadequate for Oracle to ensure that it is evaluating the same agreements the Debtors seek to assume.

31. The descriptions of the contracts identified by the Debtors on the Assumed Contract List are too vague for Oracle to definitively determine the universe of agreements the Debtors will be assuming.

32. In the event there are additional agreements between the Debtors and Oracle not identified in either the Rejected Contract List or the Assumed Contract List, those agreements will be swept up by the default assumption provision of the Plan.

33. Oracle therefore requests that, with respect to each contract the Debtors seek to assume, the Debtors specify (a) the contract name; (b) the identification number; (c) the date, if not already provided; (d) any associated support or support renewals; and (e) the governing license agreement.

34. This information will enable Oracle to identify the contract at issue, evaluate whether the contract is in default, and, if so, establish the appropriate cure amount.

**C.     The Debtors Have Failed to Provide Sufficient Information to Allow Oracle to Determine The Correct Cure Amount.**

35. Before assuming any executory contract, the Debtors must cure (or provide adequate assurance of a prompt cure of) any default under the subject contracts. 11 U.S.C. § 365(b)(1).

36. As discussed above, the Debtors have failed to describe the agreements they seek to assume with sufficient particularity for Oracle to identify the universe of agreements at issue, and thereby confirm the corresponding cure amount.

37. Therefore, Oracle reserves its right to be heard further regarding the cure amount after the contracts the Debtors seek to assume are identified with enough specificity to allow Oracle to determine the correct cure amount.

**D.     The Assumptions Provided for in the Plan and the Assumption Notice as to the Oracle Agreements Should be Denied in the Absence of Adequate Assurance.**

38. Section 365(b) of the Bankruptcy Code sets forth specific prerequisites that must be met before a trustee/debtor can assume an executory contract, including (a) curing (or

providing adequate assurance of a prompt cure of) any defaults under the subject contracts, and (b) providing adequate assurance of future performance under the contract. Absent the foregoing, the executory contracts may not be assumed.

39. At this time, for the reasons identified, Oracle is unable to determine whether Debtors have complied, or will comply, with the requirements of section 365(b)(1).

### E. Simultaneous Use Of The Oracle Agreements By The Debtors, The Reorganized Debtors, And Any Other New Entity Is Not Authorized.

40. The Plan contemplates that, "On the Effective Date, Reorganized TCEH and Reorganized EFH or their respective subsidiaries will enter into the Transitional Services Agreement." Plan, Art. IV § B.4.

41. Oracle's contracts do not permit shared simultaneous access and use of Oracle's software, or unauthorized splitting of licenses.

42. Therefore, to the extent that the Debtors, the Reorganized Debtors, and/or any other new entity created by virtue of the Plan contemplate shared use of Oracle's license or support agreements, Oracle objects.

43. Oracle reserves its right to be heard on the transitional use contemplated by the Debtors until after the Oracle Agreements are identified by the Debtors with greater specificity and the Debtors clarify the scope of any transitional use purportedly authorized by the TSA.

### IV. CONCLUSION

44. For the reasons set forth above, Oracle respectfully requests that the Court deny the Debtors' request to confirm the Plan and approve the Assumption Notice to the extent they authorize the assumption of any Oracle Agreements or authorize shared use of any Oracle Agreements. Oracle reserves its right to be heard on all issues set forth herein.

Dated: October 23, 2015  Respectfully submitted,
Wilmington, Delaware  **MARGOLIS EDELSTEIN**

/s/ James E. Huggett
James E. Huggett, Esq. (#3956)
300 Delaware Avenue, Suite 800
Wilmington, Delaware  19801
Telephone: (302) 888-1112
E-mail: jhuggett@margolisedelstein.com

Amish R. Doshi, Esq.
**MAGNOZZI & KYE, LLP**
23 Green Street, Suite 302
Huntington, New York 11743
E-Mail: adoshi@magnozzikye.com
Tel: (631) 923-2858

Shawn M. Christianson, Esq.
Valerie Bantner Peo, Esq.
**BUCHALTER NEMER P.C.**
333 Market Street, 25th Floor
San Francisco, California 94105-2126
Telephone:  (415) 227-0900

Deborah Miller, Esq.
Lillian Park, Esq.
**ORACLE AMERICA, INC.**
500 Oracle Parkway
Redwood City, California  94065
Telephone:      (650) 506-5200

*Attorneys for Oracle America, Inc.*