## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: November 6, 2015 at 4:00 p.m.** |
| | ) | **Hearing Date: November 25, 2015 at 10:00 a.m.** |

## OBJECTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, TO PROOFS OF CLAIM 7475, 7480, 7481, AND 6874-6943 FILED BY AMERICAN STOCK TRANSFER & TRUST CO. AS INDENTURE TRUSTEE FOR THE EFH LBO NOTES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this partial objection (this "Objection") to the proofs of claim[2] (the "EFH LBO Note Claims")

filed by American Stock Transfer & Trust Company, LLC (the "EFH LBO Notes Trustee"), as

indenture trustee for the unsecured 10.875% Senior Notes due 2017 (the "EFH LBO Cash-Pay

Notes") and 11.25%/12.00% Senior Toggle Notes due 2017 (the "EFH LBO Toggle Notes" and,

together with the EFH Cash-Pay Notes, the "EFH LBO Notes") issued by Energy Future

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The EFH LBO Notes Trustee filed Proof of Claim No. 7475 against EFH Corp., the issuer of the EFH LBO Notes (attached with its addendum as **Exhibit 1**). The EFH LBO Notes Trustee also filed Proof of Claim No. 7480 (attached with its addendum as **Exhibit 2**) against Energy Future Competitive Holdings Company LLC ("EFCH") and Proof of Claim No. 7481 (attached with its addendum as **Exhibit 3**) against Energy Future Intermediate Holding Company LLC ("EFIH"), each as guarantors under the EFH LBO Notes.

The Trustee has also filed Proofs of Claim against each Debtor other than EFH Corp. to preserve alleged rights arising out of intercompany transfers (Proofs of Claim Nos. 6874-6943), an example of which is attached hereto with its addendum as **Exhibit 4** and the remainder of which are available on the website of the Debtors' claims and noticing agent set forth above or upon written request of Debtors' counsel.

Holdings Corp. ("EFH Corp.") to the extent the EFH LBO Note Claims (a) assert an entitlement to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts, (ii) postpetition interest (including default interest and interest on overdue interest payments), and (iii) unamortized original issue discount ("OID"); and (b) assert claims against the Debtors other than EFH Corp., as issuer, and EFCH and EFIH, as guarantors.    In support of the Objection, the Debtors respectfully state as follows:

## Preliminary Statement

The Debtors object to the EFH LBO Note Claims on the following bases.

*First*, the Debtors object to the EFH LBO Note Claims to the extent that they seek allowance of a claim for a make-whole premium, redemption premium, no-call damages, or similar amounts. The make-whole clauses under the Indenture governing the EFH LBO Notes expire by their terms beginning November 1, 2015. This is two days before the hearing on confirmation of the Plan, under which the allowed amounts under the EFH LBO Notes are to be repaid in full in cash.[3] There is therefore no way that a make-whole premium can be due under the EFH LBO Notes even if repayment under the Plan would otherwise qualify as an "optional redemption"—which, in any event, it would not.

Even if the make-whole clauses did not expire at the end of this month, the Indenture contains an automatic acceleration clause at section 6.02 that is materially identical to the language in the EFIH 10% First Lien Indenture.[4] For the reasons the Court has already stated in

---

[3] The proposed *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, D.I. 6122, hereinafter the "Plan."

[4] The "EFIH 10% First Lien Indenture" and the "EFIH 10% First Lien Notes" are the indenture and notes, respectively, at issue in the adversary proceeding No. 14-50363 and addressed in the Court's Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) and Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304 (July 8, 2015).

its March 26, 2015, summary judgment decision, the holders of EFH LBO Notes are not entitled to a make-whole premium. *See* Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) ("Summary Judgment Decision").

**Second**, the Debtors also object to the EFH LBO Note Claims because they seek postpetition interest at the rate specified in the Indenture, postpetition interest at the default rate, and interest accruing on unpaid interest due as of the Petition Date. All three of these measures of postpetition interest are disallowed under section 502(b)(2) of the Bankruptcy Code as unmatured interest. Although courts have generally recognized an exception to this rule when the debtor is solvent, the majority view, and the more persuasive view, is that postpetition interest should be awarded only at the federal judgment rate, not at the contract rate. Accordingly, the EFH LBO Note Claims for postpetition interest in excess of the federal judgment rate should be disallowed.

**Third**, the Debtors object to the EFH LBO Note Claims because they seek OID that had not amortized as of the Petition Date. This unamortized OID should be disallowed as unmatured contract interest.

**Fourth**, the Debtors object to the EFH LBO Note Claims to the extent they assert claims against Debtors other than EFH Corp., as issuer, and EFCH and EFIH, as guarantors, the three of which are the only obligors or guarantors under the EFH LBO Notes, because the EFH LBO Notes Trustee has failed to provide prima facie evidence to support such claims.

In further support of this Objection, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Objection are section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### The Parties

4.      EFH Corp. is a corporation organized under the laws of the State of Texas.  EFIH and EFCH are its direct wholly-owned subsidiaries and limited liability companies organized under the laws of the State of Delaware.  The other Debtors are affiliates of EFH Corp., EFIH, and EFCH.  On April 29, 2014 (the "Petition Date"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for protection under chapter 11 of the United States Bankruptcy Code.

5.      The EFH LBO Notes Trustee serves as the trustee pursuant to that certain Indenture governing the issuance of the 10.875% Senior Notes due 2017 and 11.25%/12.00% Senior Toggle Notes due 2017, dated as of October 31, 2007, as amended and supplemented by the Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated

as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, the Fourth

Supplemental Indenture, dated as of October 18, 2011, and the Fifth Supplemental Indenture,

dated as of April 15, 2013, by and among EFH Corp., as issuer, EFCH and EFIH, as guarantors,

and the Bank of New York, the predecessor to the EFH LBO Notes Trustee (collectively, as

supplemented, the "Indenture").

## Background

6.    The Debtors are operating their businesses and managing their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court

has entered a final order for joint administration of these chapter 11 cases (D.I. 849). Further

information regarding the Debtors' business operations and capital structure is set forth in the

declaration of Paul Keglevic in support of the Debtors' first day motions (D.I. 98) and in the

Disclosure Statement for the Plan (D.I. 6124).

7.    The Debtors filed the Plan on September 21, 2015, and the Court has set the

confirmation hearing to begin on November 3, 2015, and to continue on subsequent dates until

completed (D.I. 5771).

## Proofs of Claim

8.    On October 24, 2014, the EFH LBO Notes Trustee filed Proof of Claim No. 7475

against EFH Corp., as issuer, and Proofs of Claims Nos. 7480 and 7481, against EFCH and

EFIH, respectively, as guarantors, with supporting addenda attached thereto.[5]  Copies of these

EFH LBO Note Claims are attached as **Exhibits 1-3**, respectively.  The EFH LBO Note Claims

seek a minimum of approximately $63,736,412.57 "plus additional amounts due" against each of

EFH Corp., EFCH, and EFIH.  (Ex. 1, at 1; Ex. 2, at 1; Ex. 3, at 1.)  The addenda to the EFH

_____

[5] The addenda attached to these Proofs of Claim contain materially identical classifications of claims against the Debtors.

LBO Note Claims state, in relevant part, that the EFH LBO Notes Trustee seeks $60,181,978.00 in principal and $3,554,434.57 in prepetition accrued interest. (Ex. 1, at 2; Ex. 2, at 2; Ex. 3, at 2.)

9.     Moreover, each of the addenda asserts an entitlement to a make-whole premium and postpetition interest. *Id.* at 2-4.    Regarding a make-whole premium, the EFH LBO Note Claims seek:

> iii.    Other Charges (UNLIQUIDATED).    All other interest, charges, make whole amounts, Applicable Premium (as defined in the Indenture), penalties, premiums, and advances which may be due or become due under the Notes and the Indenture . . . .

(Ex. 1, at 3; Ex. 2, at 3; Ex. 3, at 3.)

10.     The EFH LBO Note Claims seek the following measures of postpetition interest:

> i.    Interest (UNLIQUIDATED).    The amount of interest accruing on the Notes from the Petition Date to the date of payment of the Notes, at the rates and in the manner set forth in the Notes and in the Indenture;
>
> ii.    Other Interest (UNLIQUIDATED).    The default rate of interest, the amount of interest accruing on past-due installments of interest, all from and after the Petition Date to the date of payment of such interest, at the rates and in the manner set forth in the Notes and in the Indenture . . . .

(Ex. 1, at 3; Ex. 2, at 3; Ex. 3, at 3.)

### Relief Requested

11.     By this Objection and pursuant to Bankruptcy Rule 3007, the Debtors request that the Court enter an order under Section 502 of the Bankruptcy Code, disallowing the EFH LBO Note Claims to the extent they (a) assert an entitlement to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts, (ii) postpetition interest (including default interest and interest on overdue interest payments), and (iii) unamortized original issue discount ("OID"); and (b) assert claims against the Debtors other than EFH Corp., as issuer, and EFCH and EFIH, as guarantors.  This Objection does not affect any other part of the EFH LBO Note

Claims, but EFH Corp. reserves its rights to file any future objections to the amounts remaining under the EFH LBO Note Claims (the "Remaining Claims") and to otherwise contest the Remaining Claims.

### The EFH LBO Note Claims

**A.    The Governing Indenture.**

12.    On October 31, 2007, EFH Corp., EFCH, EFIH, and The Bank of New York executed the Indenture pursuant to which EFH Corp. issued the EFH LBO Notes outstanding as of the Petition Date.

13.    The Indenture is governed by, and construed in accordance with, the laws of the State of New York. *See* Indenture § 12.08.

14.    The Indenture provides for the payment of an "Applicable Premium" upon an optional redemption of the Notes "[a]t any time ***prior to November 1, 2012.***" Indenture § 3.07(a)-(b) (emphasis added). The Indenture defines "Applicable Premium" by a formula that discounts future interest payments, subject to a floor. Indenture § 1.01. As of the filing date of this Objection, EFH Corp. has not repaid the EFH LBO Notes.

15.    The Indenture also provides that after November 1, 2012, EFH Corp. may voluntarily "redeem" the notes at certain "redemption prices" ("Optional Redemption Price"). (*See* Indenture § 3.07(f)-(g).) But if the EFH LBO Notes are optionally redeemed on or after November 1, 2015, the Optional Redemption Price is 100% of the outstanding principal on the Notes. *Id.*

16.    Specifically, sections 3.07(f) and (g) of the Indenture provide as follows:

> (f) Senior Cash Pay Notes Optional Redemption. From and after November 1, 2012 the Issuer may redeem Senior Cash Pay Notes, in whole or in part at the redemption prices (***expressed as percentages of principal amount*** of the Senior Cash Pay Notes to be redeemed) set forth below, plus accrued and unpaid interest and Additional Interest, if any, to

the Redemption Date, subject to the right of Holders of Senior Cash Pay Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on *November 1* of each of the years indicated below:

| Year | Percentage |
|---|---|
| 2012 | 105.438% |
| 2013 | 103.625% |
| 2014 | 101.813% |
| ***2015 and thereafter*** | ***100.000%*** |

(g) <u>Senior Toggle Notes Optional Redemption</u>. From and after November 1, 2012, the Issuer may redeem Senior Toggle Notes, in whole or in part at the redemption prices (***expressed as percentages of principal amount*** of the Senior Toggle Notes to be redeemed) set forth below, plus accrued and unpaid interest and Additional Interest, if any, to the Redemption Date, subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on *November 1* of each of the years indicated below:

| Year | Percentage |
|---|---|
| 2012 | 105.625% |
| 2013 | 103.750% |
| 2014 | 101.875% |
| ***2015 and thereafter*** | ***100.000%*** |

*Id.* (emphasis added).

17.    Moreover, like the EFIH 10% First Lien Indenture,[6] section 6.01(a) of the Indenture defines "Event of Default" and includes at subsections (6) and (7) certain definitions of an Event of Default that relate to insolvency and bankruptcy, including the filing of a bankruptcy petition. (*See* Indenture § 6.01(a)(6)(i) (defining an event of default to include EFH Corp.'s "commenc[ing] proceedings to be adjudicated bankrupt or insolvent").)

---

[6] The "EFIH 10% First Lien Indenture" and the "EFIH 10% First Lien Notes" are the indenture and notes, respectively, at issue in the adversary proceeding No. 14-50363 and addressed in the Court's Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) and Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304 (July 8, 2015).

18.     Also like the EFIH 10% First Lien Indenture, section 6.02 of the Indenture defines "Acceleration" and specifies:

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all outstanding Senior Notes shall be due and payable immediately without further action or notice.[7]

19.     Notably, section 6.02 does not expressly require the payment of a makewhole premium or other redemption premium.   It does not reference the detailed, 90-plus-word makewhole formula—the "Applicable Premium"—found elsewhere in the Indenture, nor does it reference the "redemption price" that the Indenture sets forth in detailed tables in section 3.07.  It does not even contain the word "premium," "penalty," or "damages."   And it does not mention any of the clauses in section 3.07, which is the only provision in the Indenture that provides for an Applicable Premium or other redemption premium.

20.     The Indenture also provides for postpetition interest:

> The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to the then applicable interest rate on the Senior Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Interest, if any (without regard to any applicable grace period) at the same rate to the extent lawful.

(Indenture § 4.01.)

**B.     The Court's March 26, 2015 Summary Judgment Decision.**

21.     The Court issued its Summary Judgment Decision in the adversary proceeding regarding the EFIH 10% First Lien Notes on March 26, 2015.  That Decision held, in relevant part, that "[t]he plain language of the [EFIH First Lien] Indenture does not require payment of an Applicable Premium upon a repayment of the Notes, following an acceleration under section

---

[7] This language in the EFH LBO Notes Indenture is identical to that in the EFIH 10% First Lien Indenture except that the EFH LBO Notes Indenture refers to "Senior Notes" rather than just "Notes."

6.02 of the Indenture, arising from a default for the commencement of 'proceeding to be adjudicated bankrupt or insolvent' under section 6.01(a)(6)(i) of the Indenture." (Summary Judgment Decision ¶ 8(a).)

22.    As stated above, the applicable language in Section 6.02 of the EFIH 10% First Lien Notes Indenture is materially identical to Section 6.02 of the EFH LBO Notes Indenture.

### C.    The Plan of Reorganization.

23.    The Plan proposes to pay "the principal amount outstanding, plus accrued but unpaid prepetition interest," on the EFH LBO Note Claims against EFH Corp.    Plan, Art. III.B.6.[8]  The Plan does not propose to pay any claim for a make-whole premium or other redemption premium on the EFH LBO Notes.  *Id.*, Art. III.B.6.  Additionally, the Plan proposes to pay "accrued postpetition interest at the Federal Judgment Rate."  *Id.*  The Plan does not provide for any other postpetition interest.  *See id.*[9]

### Objection

24.    A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper."  *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and 1107(a).  Section 502(b) provides that the Court shall allow claims except to the extent: "(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or

---

[8] The Plan specifies substantially the same treatment of both the primary claims against EFH Corp. and the guarantee claims against EFIH under the EFH LBO Note Claims, provided that no holder shall receive more than a single satisfaction of their allowed claims. *Id.*, Art. III.B.20.  The guarantee claims against EFCH will receive no recovery. *Id.*, Art. III.B.31.  This Objection generally refers to the treatment of the primary claims against EFH Corp.

[9] The Plan does, however, provide for a reserve for payment of interest on the EFH LBO Notes at their respective contract rates, except to the extent such claims are allowed by Final Order (as defined in the Plan) or disallowed by the Court, in each case on or before the Plan's effective date. Plan, Art. VII.K.

applicable law for a reason other than because such claim is contingent or unmatured; [or] (2)

such claim is for unmatured interest." 11 U.S.C. § 502(b)(1), (2).

25.     The burden of proof for determining the validity of claims rests on different

parties at different stages of the objection process.  As explained by the United States Court of

Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court
> under 11 U.S.C.A. § 502(a) rests on different parties at different
> times.  Initially, the claimant must allege facts sufficient to support
> the claim.  If the averments in his filed claim meet this standard of
> sufficiency, it is '*prima facie*' valid [citations omitted].  In other
> words, a claim that alleges facts sufficient to support legal liability
> to the claimant satisfies the claimants' initial obligation to go
> forward.  The burden of going forward then shifts to the objector to
> produce evidence sufficient to negate the *prima facie* validity of
> the filed claim. . . .  In practice, the objector must produce evidence
> which, if believed, would refute at least one of the allegations that
> is essential to the claim's legal sufficiency.  If the objector
> produces sufficient evidence to negate one or more of the sworn
> facts in the proof of claim, the burden reverts to the claimant to
> prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted).  Once the

*prima facie* validity of a Claim is rebutted, "it is for the claimant to prove his claim, not for the

objector to disprove it." *In re Kahn,* 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

### A.     No Make-Whole Premium Is Owed

26.     The make-whole and other redemption clauses under the Indenture have expired

by the passage of time, such that even if there were an optional redemption, no make-whole or

other redemption premium would be due.  Even if this were not the case, the plain terms of the

Indenture do not provide for a make-whole or other redemption premium after acceleration of the

EFH LBO Notes.

1.      **Both the Applicable Premium and Optional Redemption Clauses of the Indenture Have Expired by Their Terms.**

27.     Unlike various other series of EFH Corp. and EFIH debt, the clauses of the Indenture providing for make-whole premiums or other redemption premiums in the event of an optional redemption of the EFH LBO Notes have lapsed by their terms. New York law requires that the Court not look "outside the four corners of a complete document to determine what the parties intended." (*Id.* at ¶ 42 (citing *W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990); *R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002)).)

28.     The Indenture expressly states that the "Applicable Premium" is only due if the EFH LBO Notes are optionally redeemed before November 1, 2012. Indenture § 3.07(a)-(b) (providing for payment of the "Applicable Premium" only "prior to November 1, 2012"). On or after November 1, 2015, the Indenture expressly states that EFH Corp. may optionally redeem the EFH LBO notes at a redemption price equal to 100% of the principal amount—that is, at par. *Id.* § 3.07(f)-(g) (providing for a redemption price of "100.000% . . . expressed as a percentage of principal amount . . . beginning on November 1" of 2015).

29.     In no conceivable circumstance will the EFH LBO Notes be repaid before November 1, 2015. Thus, even if repayment of the EFH LBO Notes under the Plan were an optional redemption—which, as set forth below, it is not—no make-whole or other redemption premium would be due on the EFH LBO Notes by the plain terms of the Indenture.

2.      **The Indenture's Plain Text Controls and Demonstrates That Neither an Applicable Premium Nor an Optional Redemption Price Would Be Owed Even if the Relevant Clauses Had Not Expired.**

30.     Even if the Indenture's relevant clauses had not lapsed, the Indenture, like the EFIH 10% First Lien Indenture, unambiguously does not provide for payment of a make-whole

premium or other redemption premium upon automatic acceleration.  (Summary Judgment Decision ¶ 42.)

31.    Separate from the expiration of the applicable deadlines, neither the Applicable Premium nor the Optional Redemption Price is owed because the repayment of the EFH LBO Notes will not be an optional redemption.  The Indenture provides that an "Event of Default" occurs if EFH Corp. "commences proceedings to be adjudicated bankrupt or insolvent." (Indenture § 6.01(a)(6)(i).)  The Debtors filed for chapter 11 protection on April 29, 2014, unquestionably triggering an Event of Default.  Under the plain language of the Indenture, this bankruptcy-induced Event of Default automatically accelerated the EFH LBO Notes' maturity date to the Petition Date.  As section 6.02 of the Indenture provides, "in the case of an Event of Default arising" as a result of the Debtors' bankruptcy filing, the EFH LBO Notes "*shall be due and payable immediately without further action or notice*" (emphasis added).

32.    Moreover, for EFH Corp. to optionally redeem the debt, it must provide the holders of the EFH LBO Notes with "at least 30 days but not more than 60 days" notice. (Indenture § 3.03.)  This stands in contrast to the automatic acceleration the parties specifically negotiated, which contemplates no notice at all:  upon the Debtors' bankruptcy filing, the EFH LBO Notes became "due and payable immediately without further action or notice."  (Indenture § 6.02.)  The Debtors have never delivered any kind of optional redemption notice to the EFH LBO Notes Trustee.

33.    The parties to the Indenture could have expressly referenced the Applicable Premium or Optional Redemption Price as being payable in the event of an automatic acceleration, but they chose not to do so.  Instead, the parties to the Indenture negotiated and included a detailed formula for calculating a possible "Applicable Premium," (Indenture § 1.01),

and a specific schedule for the payment of an Optional Redemption Price, (Indenture § 3.07(f), (g)). And, by the express terms of those provisions, the Applicable Premium or the Optional Redemption Price is owed only upon an optional redemption voluntarily made by EFH Corp., which did not and will not occur here. Indeed, nothing in the Indenture suggests that either the Applicable Premium or the Optional Redemption Price is owed in any circumstance outside of an optional redemption voluntarily made by EFH under section 3.07.

34.     In short, repayment of automatically accelerated debt under the Indenture is neither optional nor voluntary and therefore does not implicate section 3.07 of the Indenture and does ***not*** trigger an Applicable Premium or the Optional Redemption Price.

**3.     This Court's March 26, 2015 Summary Judgment Decision Mandates the Same Result.**

35.     The Indenture is identical in every material way to the EFIH 10% First Lien Indenture, and the Court's Summary Judgment Decision and reasoning should apply here to reach the same result—that no make-whole or other redemption premium is owed after a bankruptcy-caused automatic acceleration.

36.     The Indenture contains an acceleration clause at section 6.02 that is materially identical to same provision in the EFIH 10% First Lien Indenture. (*See* Summary Judgment Decision ¶ 45.)[10] Just like the EFIH First Lien Indenture, there is no reference in section 6.02 to the defined term, Applicable Premium, nor is there any reference to "redemption price," nor is section 3.07 incorporated into section 6.02. (*See id.* at ¶ 46.)

37.     As this Court held, "[b]ecause the Indenture does not specify that the Applicable Premium is owed after automatic acceleration, the Applicable Premium is not owed." (*See id.* at

---

[10] The *only* difference is that the EFH LBO Notes Indenture references "Senior Notes," while the EFIH 10% First Lien Indenture refers simply to "Notes." The difference has no legal significance for the purposes of this Objection.

¶ 51.) So too with the Optional Redemption Prices in sections 3.07(f) and (g) of the Indenture; because section 6.02 does not expressly provide for paying these additional amounts, they are not owed. The acceleration clause in the Indenture therefore is not specific enough to require paying either the Applicable Premium or the Optional Redemption Price.

38.     The EFH LBO Note Claims should also be denied to the extent they seek to recover on account of "damages" or "causes of action" for "no call" damages or violation of the so-called "perfect tender rule." No such claim can be sustained for the reasons provided in the Court's Summary Judgment Decision, which denied identical claims based on identical or materially identical contract language. *See* Summary Judgment Decision ¶ 8.

**B.    The EFH Unsecured Noteholders Are Not Entitled To Postpetition Interest.**

39.     The EFH LBO Note Claims also seek "interest accruing on the Notes from the Petition Date to the date of payment of the Notes, at the rates and in the manner set forth in the Notes and in the Indenture." (Ex. 1, at 3; Ex. 2, at 3; Ex. 3, at 3.)

40.     Section 502(b)(2) of the Bankruptcy Code disallows claims for interest on unsecured debt that comes due on or after the Petition Date. Thus, the general rule is that unsecured creditors are not entitled to postpetition interest. *In re Wash. Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011), *vacated in unrelated part*, No. 08-12229, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012). Courts, however, have created an exception to this general rule where debtors are solvent. *Id.* at 241.

41.     The only relevant statutory basis for awarding postpetition interest to an unsecured creditor is through section 726(a)(5). Under the "best interests of creditors" requirement for confirmation of a chapter 11 plan, a creditor must receive at least as much as it would were the debtor being liquidated in chapter 7. *See* 11 U.S.C. § 1129(a)(7); *see Wash. Mut.*, 461 B.R. at 241. Unsecured creditors in chapter 7 are entitled to interest "at the legal rate"

before shareholders receive any distribution. *Id.* (citing 11 U.S.C. § 726(a)(5), (6)). As a result, when a debtor is solvent—*i.e.*, "before shareholders receive any distribution"—courts have held that postpetition interest can be awarded on unsecured debts at "the legal rate." *Id.* at 241.

42.     "[T]he better view is that the federal judgment rate is the appropriate rate to be applied under section 726(a)(5), rather than the contract rate."[11] *Wash. Mut.*, 461 B.R. at 242. A majority of courts that have considered the issue have agreed with this view. *See, e.g., Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234-36 (9th Cir. 2002); *In re W.R. Grace & Co.*, 475 B.R. 34, 200 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) ("The majority approach taken by most courts today is the federal judgment rate approach."); *see also* 6 *Collier on Bankruptcy* ¶ 726.02[5] (16th ed. 2015).

43.     The majority view is also the best view of section 726(a)(5) for a number of reasons. ***First***, the statute provides for interest at "*the* legal rate," not *a* legal rate. The definite article "the" in a statute is a term of limitation referring to a particular item whereas "a" is an indefinite article that generalizes its object. *See Cardelucci*, 285 F.3d at 1234. Here, the word "the" denotes that Congress intended for a single uniform rate of interest to apply. *See Wash. Mut.*, 461 B.R. at 242; 6 *Collier* ¶ 726.02[5]. Further, if the Code intended for bankruptcy courts to apply *any* legal rate, then surely Congress would not have to caution bankruptcy courts to apply only "legal" rates and to avoid applying illegal ones. *See In re Dow Corning Corp.*, 237 B.R. 380, 404-05 (Bankr. E.D. Mich. 1999) ("*Dow I*").[12] If such caution were necessary, the rest of the Code would need to contain similar admonishments. *Id.* at 405.

---

[11]  Specifically, the federal judgment rate of interest is the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System the week immediately before the Petition Date, compounded annually. *See* 28 U.S.C. § 1961.

[12]  In *Dow I* the bankruptcy court held that, in a solvent debtor chapter 11 case, section 1129(a)(7), via section 726(a)(5), required paying unsecured creditors the federal judgment rate of interest. In *In re Dow Corning Corp.*, 244 B.R. 678, 687-93, 696 (Bankr. E.D. Mich. 1999) ("*Dow II*"), the bankruptcy

44.     *Second*, based on both dictionary definitions and 100 years of case law, one court has persuasively explained that the "legal rate of interest" means "a rate of interest fixed by statute." *See Dow I*, 237 B.R. at 400-02. "[H]ad Congress intended contract rates to apply, it presumably would have used language other than 'the legal rate,' a term that typically refers to a statutory rate." 6 *Collier* ¶ 726.02[5]. For example, Congress could have, but did not, simply provide for "interest" to be paid, or it could have incorporated the concept of an "agreement" as it did when it provided for secured creditors to receive postpetition interest under section 506(b). *See In re Godsey*, 134 B.R. 865, 866 (Bankr. M.D. Tenn. 1991). In fact, in drafting the applicable Code provision, Congress struck draft language that provided generically for "interest on claims allowed" and inserted the more specific "interest at the legal rate." *Cardelucci*, 285 F.3d at 1234. Congress's decision to strike the version of this provision suggesting *any* interest rate in favor of the current version, which points to a specific interest rate, is further evidence that Congress did not intend for the contract rate of interest to apply. *Id.*

45.     *Third*, legal policy supports holding that the best interpretation of "the legal rate" is the federal judgment rate. Applying a single, federal rate to claims, entitlement to which is a matter of federal law, promotes uniformity among federal courts and within federal law.[13]

---

court also ruled that in solvent debtor chapter 11 cases courts should consider the contract rate of interest when applying the absolute priority rule under § 1129(b), and award postpetition interest at the contract rate, but not the default rate. The Sixth Circuit in *In re Dow Corning Corp.*, 456 F.3d 668, 677-80 (6th Cir. 2006) ("*Dow III*") affirmed this reasoning, but remanded for an assessment whether awarding the default rate of interest was equitable under the circumstances of that case. EFIH respectfully disagrees with *Dow II* and *Dow III*.

[13] At least one other bankruptcy court in Delaware has stated that the federal judgment rate approach is generally the correct approach, citing *Washington Mutual* and *W.R. Grace*. Hr'g Tr. at 21:8:16, 37:1-9, *In re AgFeed USA, LLC*, No. 13-11761 (Bankr. D. Del. Nov. 4, 2014) (Shannon, J.) (Doc. 1557) ("I believe that the federal judgment rate is, in fact, controlling here. While there may be flexibility or a measure of discretion as the Case Law teaches, I do not see a specific reason in a case such as this to deviate from that. Particularly, when I am talking about the determination of impairment, I believe that consistent treatment is particularly important.").

*Cardelucci*, 284 F.3d at 1235.  Further, postpetition interest is analogous to an award of post-judgment interest. *Id.*; *In re Chiapetta*, 159 B.R. 152, 161 (Bankr. E.D. Pa. 1993) ("[A] claim is like a judgment entered at the time of the bankruptcy filing . . . ."); *In re Melenyzer*, 143 B.R. 829, 833 (Bankr. W.D. Tex. 1992) (same).  And federal courts award post-judgment interest as a matter of federal procedural law, even if the cause of action arises under state law. *Norman v. Elkin*, 726 F. Supp. 2d 464, 479 (D. Del. 2010) ("Federal courts sitting in diversity must apply federal law, rather than state law, in determining post-judgment interest.").  Courts have also explained that a single, uniform rate will promote fairness among creditors because certain creditors will not, by happenstance of state law or contract rights, receive a "disproportionate share of any remaining assets to the detriment of other unsecured creditors." *Cardelucci*, 285 F.3d at 1235-36.  Additionally, applying one uniform rate is judicially efficient and reduces the administrative burden on courts and parties, who avoid having to use different interest rates to calculate postpetition interest owed potentially to multiple unsecured creditors. *Id.* at 1236.  In sum, the best textual reading of "the legal rate" is the federal judgment rate.

46.    Accordingly, the holders of EFH LBO Notes are not entitled to interest in any amount greater than the federal judgment rate.  Thus, the EFH LBO Note Claims should be partially disallowed to the extent they seek interest greater than the federal judgment rate.

### C.    The Unamortized Original Issue Discount on the EFH LBO Notes Should Be Disallowed.

47.    The EFH LBO Note Claims also seek the full amount of their principal. (Ex. 1-3.)  The EFH LBO Toggle Notes, however, were purchased for cash at a discount from face value when first issued in October 2007.[14]  This creates original issue discount, or OID, equal to the difference between the issue price and the face value.  Although that OID amortizes

---

[14] The EFH LBO Toggle Notes were issued at 97.815% of par.

over the life of the notes, the bulk of the EFH LBO Notes' OID remained unamortized as of the Petition Date—approximately $284,213 using the constant-yield amortization method.

48.    As the Third Circuit explained, "courts have treated . . . any such unamortized original issue discounts as claims for unmatured interest within the meaning of § 502(b)(2)." *In re Oakwood Homes Corp.*, 449 F.3d 588, 607 (3d Cir. 2006). Indeed, courts have universally held that unamortized OID, created when the notes were issued for cash, should be disallowed as unmatured interest on unsecured debt. *See, e.g.*, *In re Chateaugay Corp.*, 961 F.2d 378, 380-81 (2d Cir. 1992); *In re Pengo Indus., Inc.*, 962 F.2d 543, 545-46 (5th Cir. 1992); *In re ICH Corp.*, 230 B.R. 88, 92 (N.D. Tex. 1999); *In re Solutia Inc.*, 379 B.R. 473, 486 (Bankr. S.D.N.Y. 2007); *In re Pub. Serv. Co. of New Hampshire*, 114 B.R. 800, 803 (Bankr. D.N.H. 1990).

49.    As set forth above, the EFH LBO Notes are not entitled to postpetition interest in any amount in excess of the federal judgment rate. Thus, the Court should disallow the unamortized OID on the EFH LBO Notes, calculated using the constant-yield method, as unmatured interest.

**D.    The EFH LBO Note Claims Against Debtors Other Than EFH Corp., EFIH, and EFCH Should Be Disallowed.**

50.    In addition to its claims against EFH Corp., the EFH LBO Notes Trustee also filed Proofs of Claim against each Debtor other than EFH Corp. "in order to provide notice and preserve all claims, causes of action, rights and remedies . . . that it may have as a creditor against [the] Debtors . . . arising out of any intercompany transfers, . . . including without limitation all preferential transfers, fraudulent transfers, and *quantum meruit* and unjust enrichment claims." Proofs of Claim Nos. 6874-6943.

51.    But EFH Corp., as issuer, and EFCH and EFIH, as guarantors, are the only obligors under the EFH LBO Notes. And the EFH LBO Notes Trustee has not alleged any facts

sufficient to support claims against Debtors that are not parties to the Indenture or against EFCH and EFIH in any capacity other than as guarantors. Thus, the EFH LBO Notes Trustee has failed to meet its burden to establish *prima facie* evidence of these claims. *See, e.g.*, *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d. Cir. 1992) (affirming claim disallowance due to creditor's failure to make a *prima facie* case). The Court should thus disallow the EFH LBO Note Claims against Debtors other than EFH Corp., as issuer, and EFCH and EFIH, as guarantors.

### Conclusion

52.    For the foregoing reasons, the Debtors respectfully request that the Court enter an order disallowing the EFH LBO Note Claims to the extent provided in this Objection.

### Reservation of Rights

53.    Nothing contained in this Objection or any actions taken by EFH Corp. or the other Debtors is intended or should be construed as: (a) an admission as to the validity of any portion of the EFH LBO Note Claims; (b) a waiver of any Debtor's rights to dispute the EFH LBO Note Claims on any grounds; (c) a promise or requirement to pay the EFH LBO Note Claims; (d) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (e) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (f) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (g) an admission that any contract or lease is integrated with any other contract or lease.

### Notice

54.    The Debtors shall provide notice of this Objection on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH

intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for

the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

55.     No prior request for the precise relief sought in this Objection has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

Dated: October 23, 2015
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession