provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Senior Cash Pay Notes or portion of Senior Cash Pay Notes selected for redemption, except for the unredeemed portion of any Senior Cash Pay Notes being redeemed in part. Also, the Issuer need not exchange or register the transfer of any Senior Cash Pay Notes for a period of 15 days before a selection of Senior Cash Pay Notes to be redeemed.

(10)     *PERSONS DEEMED OWNERS.* The registered Holder of a Senior Cash Pay Note may be treated as its owner for all purposes.

(11)     *AMENDMENT, SUPPLEMENT AND WAIVER.* The Indenture, the Guarantees or the Senior Cash Pay Notes may be amended or supplemented as provided in the Indenture.

(12)     *DEFAULTS AND REMEDIES.* The Events of Default relating to the Senior Notes are defined in Section 6.01 of the Indenture. If any Event of Default occurs and is continuing, the Trustee or the Holders of at least 30% in aggregate principal amount of the then outstanding Senior Notes may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Senior Notes to be due and payable immediately. Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Senior Notes will become due and payable immediately without further action or notice. Holders may not enforce the Indenture, the Senior Notes or the Guarantees except as provided in the Indenture. Subject to certain limitations, Holders of a majority in aggregate principal amount of the then outstanding Senior Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders of the Senior Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, Additional Interest, if any, or interest) if it determines that withholding notice is in their interest. The Holders of a majority in aggregate principal amount of the then outstanding Senior Notes by notice to the Trustee may on behalf of the Holders of all of the Senior Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal of, premium, if any, Additional Interest, if any, or interest on, any of the Senior Notes held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five (5) Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

(13)     *AUTHENTICATION.* This Senior Cash Pay Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

(14)     *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.* In addition to the rights provided to Holders of Senior Cash Pay Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the Registration Rights Agreement, dated as of October 31, 2007, among the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest, if any (as defined in the Registration Rights Agreement).

(15)     *GOVERNING LAW.* THE INDENTURE, THE SENIOR CASH PAY NOTES AND ANY GUARANTEE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(16)    *CUSIP/ISIN NUMBERS.*  Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Senior Cash Pay Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders.  No representation is made as to the accuracy of such numbers either as printed on the Senior Cash Pay Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture and/or the Registration Rights Agreement.  Requests may be made to the Issuer at the following address:

c/o Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.: (214) 812-6032
Attention: General Counsel
or
Facsimile No.:  (214) 812-4097
Attention: Treasurer

## ASSIGNMENT FORM

To assign this Senior Cash Pay Note, fill in the form below:

(I) or (we) assign and transfer this Senior Cash Pay Note to: _____
(Insert assignee's legal name)

_____
(Insert assignee's Soc. Sec. or tax I.D. no.)

_____

_____

_____
(Print or type assignee's name, address and zip code)

and irrevocably appoint _____
to transfer this Senior Cash Pay Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your Signature _____
(Sign exactly as your name appears on the<br>face of this Senior Cash Pay Note)

Signature Guarantee*:_____

\* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Senior Cash Pay Note purchased by the Issuer pursuant to Section 4.10 or 4.14 of the Indenture, check the appropriate box below:

☐ Section 4.10          ☐ Section 4.14

If you want to elect to have only part of this Senior Cash Pay Note purchased by the Issuer pursuant to Section 4.10 or Section 4.14 of the Indenture, state the amount you elect to have purchased:

$_____

Date: _____

Your Signature: _____

(Sign exactly as your name appears on the face of this Senior Cash Pay Note)

Tax Identification No.: _____

Signature Guarantee*: _____

\*      Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE[1]

The initial outstanding principal amount of this Global Note is $ _____ . The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following each decrease or increase | Signature of authorized officer of Trustee or Custodian |
|---|---|---|---|---|

---

[1]    This schedule should be included only if the Senior Cash Pay Note is issued in global form.

EXHIBIT A-2

[Face of Senior Toggle Note]

*[Insert the Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Private Placement Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Regulation S Temporary Global Note Legend, if applicable pursuant to the provisions of the Indenture]*

*[Insert the Tax Legend, if applicable pursuant to the provisions of the Indenture]*

CUSIP [        ]
ISIN [        ][1]

[RULE 144A] [REGULATION S] GLOBAL NOTE

11.250%/12.000% Senior Toggle Notes due 2017

No.___                                                                                              [$_____]

## ENERGY FUTURE HOLDINGS CORP.

promises to pay to CEDE & CO. or registered assigns, the principal sum [set forth on the Schedule of Exchanges of Interests in the Global Note attached hereto] [of _____ United States Dollars] on November 1, 2017.

Interest Payment Dates:  May 1 and November 1

Record Dates:  April 15 and October 15

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____, 20__

ENERGY FUTURE HOLDINGS CORP.

By: _____
     Name:
     Title:

This is one of the Senior Toggle Notes referred to in the within-mentioned Indenture:

THE BANK OF NEW YORK, as Trustee

---

[1]   Rule 144A Note CUSIP: 292680 AB1
Rule 144A Note ISIN: US292680AB15
Regulation S Note CUSIP: U29191 AB6
Regulation S Note ISIN: USU29191AB65

By: _____
   Authorized Signatory

[Back of Senior Toggle Note]

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

(1)    *INTEREST.* Energy Future Holdings Corp., a Texas corporation (the "Issuer"), promises to pay interest on the principal amount of this Senior Toggle Note at a rate per annum set forth below from October 31, 2007 until maturity and shall pay Additional Interest, if any, payable pursuant to the Registration Rights Agreement referred to below. The Issuer will pay interest and Additional Interest, if any, semi-annually in arrears on May 1 and November 1 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "Interest Payment Date") without interest accruing on the amount then so payable from such day that is not a Business Day until such Business Day. Interest on the Senior Toggle Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance. The Issuer will pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at the interest rate on the Senior Toggle Notes; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Interest, if any, (without regard to any applicable grace periods) from time to time on demand at the interest rate on the Senior Toggle Notes. Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

Cash Interest on the Senior Toggle Notes will accrue at a rate of 11.250% per annum and be payable in cash. PIK Interest on the Senior Toggle Notes will accrue at a rate of 12.000% per annum and be payable (x) with respect to Senior Toggle Notes represented by one or more global notes registered in the name of, or held by, The Depository Trust Company ("DTC") or its nominee on the relevant Record Date, by increasing the principal amount of the outstanding global Senior Toggle Note by an amount equal to the amount of PIK Interest for the applicable interest period (rounded up to the nearest $1,000) (or, if necessary, pursuant to the requirements of DTC or otherwise, to authenticate new global Senior Toggle Notes executed by the Issuer with such increased principal amounts) and (y) with respect to Senior Toggle Notes represented by certificated notes, by issuing PIK Notes in certificated form in an aggregate principal amount equal to the amount of PIK Interest for the applicable period (rounded up to the nearest whole dollar), and the Trustee will, at the request of the Issuer, authenticate and deliver such PIK Notes in certificated form for original issuance to the Holders on the relevant Record Date, as shown by the records of the register of Holders. In the event that the Issuer elects to pay Partial PIK Interest for any interest period, each Holder will be entitled to receive Cash Interest in respect of 50% of the principal amount of the Senior Toggle Notes held by such Holder on the relevant Record Date and PIK Interest in respect of 50% of the principal amount of the Senior Toggle Notes held by such Holder on the relevant Record Date. Following an increase in the principal amount of the outstanding global Senior Toggle Notes as a result of a PIK Payment, the global Senior Toggle Notes will bear interest on such increased principal amount from and after the date of such PIK Payment. Any PIK Notes issued in certificated form will be dated as of the applicable Interest Payment Date and will bear interest from and after such date. All Senior Toggle Notes issued pursuant to a PIK Payment will mature on November 1, 2017 and will be governed by, and subject to the terms, provisions and conditions of, the Indenture and shall have the same rights and benefits as the Senior Toggle Notes issued on the Issue Date. Any certificated PIK Notes will be issued with the description PIK on the face of such PIK Note.

At the end of any "accrual period" (as defined in Section 1272(a)(5) of the Code) ending after the fifth anniversary of the Issue Date (each, an "Optional Interest Repayment Date"), the Issuer may pay in cash, without duplication, all accrued and unpaid interest, if any, and all accrued but unpaid "original issue discount" (as defined in Section 1273(a)(1) of the Code) on the Senior Toggle Notes then outstanding up to the Optional Interest Repayment Amount (each such redemption, an "Optional Interest

Repayment"). The "Optional Interest Repayment Amount" shall mean, as of each Optional Interest Repayment Date, the excess, if any, of (a) the aggregate amount of accrued and unpaid interest and all accrued and unpaid "original issue discount" (as defined in Section 1273(a)(1) of the Code) with respect to the applicable Senior Toggle Note, over (b) an amount equal to the product of (i) the "issue price" (as defined in Sections 1273(b) and 1274(a) of the Code) of the applicable Senior Toggle Note multiplied by (ii) the "yield to maturity" (as defined in the Treasury Regulation Section 1.1272-1(b)(1)(i)) of such Senior Toggle Note, minus (c) $50,000,000.

On May 1, 2017, the Issuer shall repay in full in U.S. Dollars an amount of Senior Toggle Notes equal to $50,000,000. Prepayments of Senior Toggle Notes made pursuant to the preceding sentence shall be made on a pro rata basis based on the aggregate principal amount of Senior Toggle Notes outstanding.

(2)     *METHOD OF PAYMENT.* For any interest payment period after the initial interest payment period and prior to November 1, 2012, the Issuer may, at its option elect to pay interest on the Senior Toggle Notes:

(i)     entirely in cash ("Cash Interest");

(ii)    entirely by increasing the principal amount of the outstanding Senior Toggle Notes or by issuing PIK Notes ("PIK Interest"); or

(iii)   on 50% of the outstanding principal amount of the Senior Toggle Notes in cash and on 50% of the outstanding principal amount by increasing the principal amount of the outstanding Senior Toggle Notes or by issuing PIK Notes ("Partial PIK Interest").

The Issuer must elect the form of interest payment with respect to each interest period by delivering a notice to the Trustee prior to the beginning of such interest period. The Trustee shall promptly deliver a corresponding notice to the Holder of this Senior Toggle Note. In the absence of such an election for any interest period, interest on this Senior Toggle Note shall be payable according to the election for the previous interest period. Interest for the first interest payment period commencing on the Issue Date shall be payable entirely in cash. After November 1, 2012, the Issuer will make all interest payments on this Senior Toggle Note entirely in cash. Notwithstanding anything to the contrary, the payment of accrued interest in connection with any redemption of Senior Toggle Notes as described under Sections 3.07, 4.10 and 4.14 of the Indenture shall be made solely in cash.

The Issuer will pay Cash Interest on the Senior Toggle Notes and Additional Interest, if any, to the Persons who are registered Holders of Senior Toggle Notes at the close of business on the April 15 or October 15 (whether or not a Business Day), as the case may be, next preceding the Interest Payment Date, even if such Senior Toggle Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Payments of Cash Interest and Additional Interest, if any, may be made by check mailed to the Holders at their addresses set forth in the register of Holders; provided that payment by wire transfer of immediately available funds will be required with respect to principal of and interest, premium and Additional Interest, if any, on all Global Notes and all other Senior Toggle Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent. Such payment shall be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

(3)    *PAYING AGENT AND REGISTRAR.* Initially, The Bank of New York, the Trustee under the Indenture, will act as Paying Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer or any of its Subsidiaries may act in any such capacity.

(4)    *INDENTURE.* The Issuer issued the Senior Toggle Notes under an Indenture, dated as of October 31, 2007 (the "Indenture"), among the Issuer, the Guarantors named therein and the Trustee. This Senior Toggle Note is one of a duly authorized issue of notes of the Issuer designated as its 11.250%/12.000% Senior Toggle Notes due 2017. The Issuer shall be entitled to issue Additional Senior Toggle Notes pursuant to Sections 2.01 and 4.09 of the Indenture. The Senior Cash Pay Notes (including any Exchange Notes issued in exchange therefor) and the Senior Toggle Notes issued under the Indenture (including any Exchange Notes issued in exchange therefor) (collectively, referred to herein as the "Senior Notes") are separate series of Senior Notes, but shall be treated as a single class of securities under the Indenture, unless otherwise specified in the Indenture. The terms of the Senior Toggle Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"). The Senior Toggle Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms. To the extent any provision of this Senior Toggle Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

(5)    *OPTIONAL REDEMPTION.*

(a)  Except as set forth below, the Issuer shall not be entitled to redeem the Senior Toggle Notes at its option prior to November 1, 2012.

(b)  At any time prior to November 1, 2012, the Issuer may redeem all or a part of the Senior Toggle Notes, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Senior Toggle Notes or otherwise in accordance with the procedures of DTC, at a redemption price equal to 100% of the principal amount of the Senior Toggle Notes redeemed plus the Applicable Premium, plus accrued and unpaid interest and Additional Interest, if any, to the date of redemption (the "Redemption Date"), subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(c)  From and after November 1, 2012, the Issuer may redeem the Senior Toggle Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Senior Toggle Notes or otherwise in accordance with the procedures of DTC, at the redemption prices (expressed as percentages of principal amount of the Senior Toggle Notes to be redeemed) set forth below, plus accrued and unpaid interest and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on November 1 of each of the years indicated below:

| Year | Percentage |
|------|-----------|
| 2012 | 105.625% |
| 2013 | 103.750% |
| 2014 | 101.875% |
| 2015 and thereafter | 100.000% |

(d)  Prior to November 1, 2010, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of all Senior Toggle Notes at a redemption price equal to 111.250% of the aggregate principal amount thereof, plus accrued and unpaid interest, and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Senior

Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of one or more Equity Offerings; provided that at least 50% of the sum of the original aggregate principal amount of the Initial Senior Toggle Notes and any Additional Senior Toggle Notes issued under the Indenture after the Issue Date remain outstanding immediately after the occurrence of each such redemptions; provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the related Equity Offering.

(e)  If the Issuer redeems less than all of the outstanding Senior Toggle Notes, the Trustee shall select the Senior Toggle Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

(f)  Any redemption pursuant to this paragraph 5 shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

(6)  *MANDATORY REDEMPTION.*  Except as set forth under "Interest," the Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Senior Toggle Notes.

(7)  *NOTICE OF REDEMPTION.*  Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed more than 60 days prior to a Redemption Date if the notice is issued in connection with Article 8 or Article 11 of the Indenture) to each Holder whose Senior Toggle Notes are to be redeemed at its registered address or otherwise in accordance with the procedures of DTC. Senior Toggle Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the Senior Toggle Notes held by a Holder are to be redeemed. On and after the Redemption Date interest ceases to accrue on Senior Toggle Notes or portions thereof called for redemption.

(8)  *OFFERS TO REPURCHASE.*

(a)  If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to purchase all or any part (equal to $2,000 or an integral multiple of $1,000 in excess thereof) of each Holder's Senior Toggle Notes at a price in cash equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest and Additional Interest, if any, to the date of purchase (the "Change of Control Payment"), subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date. The Change of Control Offer shall be made in accordance with Section 4.14 of the Indenture.

(b)  If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale, within ten Business Days of each date that the aggregate amount of Excess Proceeds exceeds $200.0 million, the Issuer shall make an offer to all Holders of the Senior Notes, and, if required or permitted by the terms of any Senior Indebtedness, to the holders of such Senior Indebtedness (an "Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Senior Notes, and such Senior Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture. To the extent that the aggregate amount of Senior Notes, and such Senior Indebtedness tendered pursuant to an Asset Sale Offer

is less than the Excess Proceeds, the Issuer may use any remaining Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture. If the aggregate principal amount of Senior Notes or Senior Indebtedness surrendered by such holders thereof exceeds the amount of Excess Proceeds, the Trustee shall select the Senior Notes and such Senior Indebtedness to be purchased on a pro rata basis based on the accreted value or principal amount of the Senior Notes or such Senior Indebtedness tendered.

(c)     The Issuer may, at its option, make an Asset Sale Offer using proceeds from any Asset Sale at any time after consummation of such Asset Sale; provided that such Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million. Upon consummation of such Asset Sale Offer, any Net Proceeds not required to be used to purchase Senior Notes shall not be deemed Excess Proceeds.

(9)     *DENOMINATIONS, TRANSFER, EXCHANGE.* The Senior Toggle Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof. The transfer of Senior Toggle Notes may be registered and Senior Toggle Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Senior Toggle Notes or portion of Senior Toggle Notes selected for redemption, except for the unredeemed portion of any Senior Toggle Notes being redeemed in part. Also, the Issuer need not exchange or register the transfer of any Senior Toggle Notes for a period of 15 days before a selection of Senior Toggle Notes to be redeemed.

(10)     *PERSONS DEEMED OWNERS.* The registered Holder of a Senior Toggle Note may be treated as its owner for all purposes.

(11)     *AMENDMENT, SUPPLEMENT AND WAIVER.* The Indenture, the Guarantees or the Senior Toggle Notes may be amended or supplemented as provided in the Indenture.

(12)     *DEFAULTS AND REMEDIES.* The Events of Default relating to the Senior Notes are defined in Section 6.01 of the Indenture. If any Event of Default occurs and is continuing, the Trustee or the Holders of at least 30% in aggregate principal amount of the then outstanding Senior Notes may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Senior Notes to be due and payable immediately. Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Senior Notes will become due and payable immediately without further action or notice. Holders may not enforce the Indenture, the Senior Notes or the Guarantees except as provided in the Indenture. Subject to certain limitations, Holders of a majority in aggregate principal amount of the then outstanding Senior Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders of the Senior Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, Additional Interest, if any, or interest) if it determines that withholding notice is in their interest. The Holders of a majority in aggregate principal amount of the then outstanding Senior Notes by notice to the Trustee may on behalf of the Holders of all of the Senior Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal of, premium, if any, Additional Interest, if any, or interest on, any of the Senior Notes held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five (5) Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

(13)    *AUTHENTICATION.* This Senior Toggle Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

(14)    *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.* In addition to the rights provided to Holders of Senior Toggle Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the Registration Rights Agreement, dated as of October 31, 2007, among the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest (as defined in the Registration Rights Agreement).

(15)    *GOVERNING LAW.* THE INDENTURE, THE SENIOR TOGGLE NOTES AND ANY GUARANTEE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(16)    *CUSIP/ISIN NUMBERS.* Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Senior Toggle Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Senior Toggle Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture and/or the Registration Rights Agreement. Requests may be made to the Issuer at the following address:

> c/o Energy Future Holdings Corp.
> Energy Plaza
> 1601 Bryan Street
> Dallas, Texas 75201-3411
> Facsimile No.: (214) 812-6032
> Attention: General Counsel
> or
> Facsimile No.: (214) 812-4097
> Attention: Treasurer

## ASSIGNMENT FORM

To assign this Senior Toggle Note, fill in the form below:

(I) or (we) assign and transfer this Senior Toggle Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's Soc. Sec. or tax I.D. no.)

_____

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint _____
to transfer this Senior Toggle Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your Signature _____

(Sign exactly as your name appears on the<br>face of this Senior Toggle Note)

Signature Guarantee*: _____

* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Senior Toggle Note purchased by the Issuer pursuant to Section 4.10 or 4.14 of the Indenture, check the appropriate box below:

☐ Section 4.10          ☐ Section 4.14

If you want to elect to have only part of this Senior Toggle Note purchased by the Issuer pursuant to Section 4.10 or Section 4.14 of the Indenture, state the amount you elect to have purchased:

$_____

Date: _____

Your Signature: _____

(Sign exactly as your name appears on the face of this Senior Toggle Note)

Tax Identification No.: _____

Signature Guarantee*: _____

\*      Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE[1]

The initial outstanding principal amount of this Global Note is $ _____ . The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following each decrease or increase | Signature of authorized officer of Trustee or Custodian |
| --- | --- | --- | --- | --- |

---

[1]    This schedule should be included only if the Senior Toggle Note is issued in global form.

EXHIBIT B

## FORM OF CERTIFICATE OF TRANSFER

Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Attention: General Counsel / Treasurer
Facsimile No.:  (214) 812-6032
                      (214) 812-4097

The Bank of New York
Corporate Trust Division
101 Barclay Street-8W
New York, New York 10286
Facsimile No.: (212) 815-5704
Attention: EFHC Trustee

Re: [10.875% Senior Notes due 2017]
[11.250%/12.000% Senior Toggle Notes due 2017]

Reference is hereby made to the Indenture, dated as of October 31, 2007 (the "Indenture"), among Energy Future Holdings Corp., the Guarantors named therein and the Trustee. Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

_____ (the "Transferor") owns and proposes to transfer the Senior Note[s] or interest in such Senior Note[s] specified in Annex A hereto, in the principal amount of $_____ in such Senior Note[s] or interests (the "Transfer"), to _____ (the "Transferee"), as further specified in Annex A hereto. In connection with the Transfer, the Transferor hereby certifies that:

[CHECK ALL THAT APPLY]

1.    ☐ **Check if Transferee will take delivery of a beneficial interest in the 144A Global Note or a Definitive Note pursuant to Rule 144A**. The Transfer is being effected pursuant to and in accordance with Rule 144A under the United States Securities Act of 1933, as amended (the "Securities Act"), and, accordingly, the Transferor hereby further certifies that the beneficial interest or Definitive Note is being transferred to a Person that the Transferor reasonably believes is purchasing the beneficial interest or Definitive Note for its own account, or for one or more accounts with respect to which such Person exercises sole investment discretion, and such Person and each such account is a "qualified institutional buyer" within the meaning of Rule 144A in a transaction meeting the requirements of Rule 144A and such Transfer is in compliance with any applicable blue sky securities laws of any state of the United States.

2.    ☐ **Check if Transferee will take delivery of a beneficial interest in the Regulation S Global Note or a Definitive Note pursuant to Regulation S**. The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and, accordingly, the Transferor hereby further certifies that (i) the Transfer is not being made to a person in the United States and (x) at the time the buy order was originated, the Transferee was outside the United States or such Transferor and any Person acting on its behalf reasonably believed and believes that the

Transferee was outside the United States or (y) the transaction was executed in, on or through the facilities of a designated offshore securities market and neither such Transferor nor any Person acting on its behalf knows that the transaction was prearranged with a buyer in the United States, (ii) no directed selling efforts have been made in contravention of the requirements of Rule 903(b) or Rule 904(b) of Regulation S under the Securities Act, (iii) the transaction is not part of a plan or scheme to evade the registration requirements of the Securities Act and (iv) if the proposed transfer is being made prior to the expiration of the Restricted Period, the transfer is not being made to a U.S. Person or for the account or benefit of a U.S. Person (other than an Initial Purchaser). Upon consummation of the proposed transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will be subject to the restrictions on Transfer enumerated in the Indenture and the Securities Act.

3.    ☐  **Check and complete if Transferee will take delivery of a beneficial interest in the Definitive Note pursuant to any provision of the Securities Act other than Rule 144A or Regulation S**. The Transfer is being effected in compliance with the transfer restrictions applicable to beneficial interests in Restricted Global Notes and Restricted Definitive Notes and pursuant to and in accordance with the Securities Act and any applicable blue sky securities laws of any state of the United States, and accordingly the Transferor hereby further certifies that (check one):

(a)    [ ] such Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act;

**OR**

(b)    [ ] such Transfer is being effected to the Issuer or a subsidiary thereof;

**OR**

(c)    [ ] such Transfer is being effected pursuant to an effective registration statement under the Securities Act and in compliance with the prospectus delivery requirements of the Securities Act.

4.    ☐  **Check if Transferee will take delivery of a beneficial interest in an Unrestricted Global Note or of an Unrestricted Definitive Note**.

(a)    ☐  **Check if Transfer is Pursuant to Rule 144**. (i) The Transfer is being effected pursuant to and in accordance with Rule 144 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any state of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will no longer be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes, on Restricted Definitive Notes and in the Indenture.

(b)    ☐  **Check if Transfer is Pursuant to Regulation S**. (i) The Transfer is being effected pursuant to and in accordance with Rule 903 or Rule 904 under the Securities Act and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any state of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will no longer be

subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes, on Restricted Definitive Notes and in the Indenture.

(c)    ☐  **Check if Transfer is Pursuant to Other Exemption.**  (i) The Transfer is being effected pursuant to and in compliance with an exemption from the registration requirements of the Securities Act other than Rule 144, Rule 903 or Rule 904 and in compliance with the transfer restrictions contained in the Indenture and any applicable blue sky securities laws of any State of the United States and (ii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act. Upon consummation of the proposed Transfer in accordance with the terms of the Indenture, the transferred beneficial interest or Definitive Note will not be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Global Notes or Restricted Definitive Notes and in the Indenture.

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer.

[Insert Name of Transferor]

By: _____

Name:
Title:

Dated: _____

## ANNEX A TO CERTIFICATE OF TRANSFER

1.      The Transferor owns and proposes to transfer the following:

### [CHECK ONE OF (a) OR (b)]

(a)     ☐ a beneficial interest in the:

     (i)      ☐ 144A Global Note (CUSIP [          ] [          ]), or

     (ii)     ☐ Regulation S Global Note (CUSIP [          ] [          ]), or

(b)     ☐ a Restricted Definitive Note.

2.      After the Transfer the Transferee will hold:

### [CHECK ONE]

(a)     ☐ a beneficial interest in the:

     (i)      ☐ 144A Global Note (CUSIP [          ] [          ]), or

     (ii)     ☐ Regulation S Global Note (CUSIP [          ] [          ]), or

     (iii)    ☐ Unrestricted Global Note (CUSIP [          ] [          ]);

or

(b)     ☐ a Restricted Definitive Note; or

(c)     ☐ an Unrestricted Definitive Note, in accordance with the terms of the Indenture.

EXHIBIT C

## FORM OF CERTIFICATE OF EXCHANGE

Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Attention: General Counsel / Treasurer
Facsimile No.:    (214) 812-6032
                  (214) 812-4097

The Bank of New York
Corporate Trust Division
101 Barclay Street-8W
New York, New York 10286
Facsimile No.:  (212) 815-5704
Attention: EFHC Trustee

Re:  [10.875% Senior Notes due 2017]
     [11.250%/12.000 Senior Toggle Notes due 2017]

Reference is hereby made to the Indenture, dated as of October 31, 2007 (the "Indenture"), among Energy Future Holdings Corp., the Guarantors named therein and the Trustee. Capitalized terms used but not defined herein shall have the meanings given to them in the Indenture.

_____ (the "Owner") owns and proposes to exchange the Senior Note[s] or interest in such Senior Note[s] specified herein, in the principal amount of $_____ in such Senior Note[s] or interests (the "Exchange"). In connection with the Exchange, the Owner hereby certifies that:

1.  **Exchange of Restricted Definitive Notes or Beneficial Interests in a Restricted Global Note for Unrestricted Definitive Notes or Beneficial Interests in an Unrestricted Global Note**

(a)    ☐ **Check if Exchange is from beneficial interest in a Restricted Global Note to beneficial interest in an Unrestricted Global Note**. In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for a beneficial interest in an Unrestricted Global Note in an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Global Notes and pursuant to and in accordance with the United States Securities Act of 1933, as amended (the "Securities Act"), (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest in an Unrestricted Global Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(b)    ☐ **Check if Exchange is from beneficial interest in a Restricted Global Note to Unrestricted Definitive Note**. In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for an Unrestricted Definitive Note, the Owner hereby certifies (i) the Definitive Note is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Notes and

pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Definitive Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(c) ☐ **Check if Exchange is from Restricted Definitive Note to beneficial interest in an Unrestricted Global Note**. In connection with the Owner's Exchange of a Restricted Definitive Note for a beneficial interest in an Unrestricted Global Note, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the beneficial interest is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

(d) ☐ **Check if Exchange is from Restricted Definitive Note to Unrestricted Definitive Note**. In connection with the Owner's Exchange of a Restricted Definitive Note for an Unrestricted Definitive Note, the Owner hereby certifies (i) the Unrestricted Definitive Note is being acquired for the Owner's own account without transfer, (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to Restricted Definitive Notes and pursuant to and in accordance with the Securities Act, (iii) the restrictions on transfer contained in the Indenture and the Private Placement Legend are not required in order to maintain compliance with the Securities Act and (iv) the Unrestricted Definitive Note is being acquired in compliance with any applicable blue sky securities laws of any state of the United States.

2. **Exchange of Restricted Definitive Notes or Beneficial Interests in Restricted Global Notes for Restricted Definitive Notes or Beneficial Interests in Restricted Global Notes**

(a) ☐ **Check if Exchange is from beneficial interest in a Restricted Global Note to Restricted Definitive Note**. In connection with the Exchange of the Owner's beneficial interest in a Restricted Global Note for a Restricted Definitive Note with an equal principal amount, the Owner hereby certifies that the Restricted Definitive Note is being acquired for the Owner's own account without transfer. Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the Restricted Definitive Note issued will continue to be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the Restricted Definitive Note and in the Indenture and the Securities Act.

(b) ☐ **Check if Exchange is from Restricted Definitive Note to beneficial interest in a Restricted Global Note**. In connection with the Exchange of the Owner's Restricted Definitive Note for a beneficial interest in the [CHECK ONE] ☐ 144A Global Note ☐ Regulation S Global Note, with an equal principal amount, the Owner hereby certifies (i) the beneficial interest is being acquired for the Owner's own account without transfer and (ii) such Exchange has been effected in compliance with the transfer restrictions applicable to the Restricted Global Notes and pursuant to and in accordance with the Securities Act, and in compliance with any applicable blue sky securities laws of any state of the United States. Upon consummation of the proposed Exchange in accordance with the terms of the Indenture, the beneficial interest issued will be subject to the restrictions on transfer enumerated in the Private Placement Legend printed on the relevant Restricted Global Note and in the Indenture and the Securities Act.

This certificate and the statements contained herein are made for your benefit and the benefit of the Issuer and are dated _____.

[Insert Name of Transferor]

By: _____
       Name:
       Title:

Dated: _____

EXHIBIT D

## [FORM OF SUPPLEMENTAL INDENTURE

## TO BE DELIVERED BY SUBSEQUENT GUARANTORS]

Supplemental Indenture (this "<u>Supplemental Indenture</u>"), dated as of _____, among _____ (the "<u>Guaranteeing Subsidiary</u>"), a subsidiary of Energy Future Holdings Corp., a Texas corporation (the "<u>Issuer</u>"), and The Bank of New York, as trustee (the "<u>Trustee</u>").

### W I T N E S S E T H

WHEREAS, each of the Issuer and the Guarantors (as defined in the Indenture referred to below) has heretofore executed and delivered to the Trustee an Indenture (the "<u>Indenture</u>"), dated as of October 31, 2007, providing for the issuance of an unlimited aggregate principal amount of 10.875% Senior Notes due 2017 and 11.250%/12.000% Senior Toggle Notes due 2017 (together, the "<u>Senior Notes</u>");

WHEREAS, the Indenture provides that under certain circumstances the Guaranteeing Subsidiary shall execute and deliver to the Trustee a supplemental indenture pursuant to which the Guaranteeing Subsidiary shall unconditionally guarantee all of the Issuer's Obligations under the Senior Notes and the Indenture on the terms and conditions set forth herein and under the Indenture (the "<u>Guarantee</u>"); and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

1.      CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2.      AGREEMENT TO GUARANTEE. The Guaranteeing Subsidiary hereby agrees as follows:

(a)     Along with all Guarantors named in the Indenture, to jointly and severally unconditionally guarantee to each Holder of a Senior Note authenticated and delivered by the Trustee and to the Trustee and its successors and assigns, irrespective of the validity and enforceability of the Indenture, the Senior Notes or the obligations of the Issuer hereunder or thereunder, that:

(i)     the principal of and interest, premium and Additional Interest, if any, on the Senior Notes will be promptly paid in full when due, whether at maturity, by acceleration, redemption or otherwise, and interest on the overdue principal of and interest on the Senior Notes, if any, if lawful, and all other obligations of the Issuer to the Holders or the Trustee hereunder or thereunder will be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and

(ii)    in case of any extension of time of payment or renewal of any Senior Notes or any of such other obligations, that same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at stated maturity, by acceleration or otherwise. Failing payment when due of any amount so guaranteed or any performance so guaranteed for whatever reason, the Guarantors and the Guaranteeing Subsidiary shall be jointly and severally obligated to pay the same immediately. This is a guarantee of payment and not a guarantee of collection.

(b)    The obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Senior Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder of the Senior Notes with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(c)    The following is hereby waived: diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever.

(d)    Except as set forth in Section 5 hereto, this Guarantee shall not be discharged except by complete performance of the obligations contained in the Senior Notes, the Indenture and this Supplemental Indenture, and the Guaranteeing Subsidiary accepts all obligations of a Guarantor under the Indenture.

(e)    If any Holder or the Trustee is required by any court or otherwise to return to the Issuer, the Guarantors (including the Guaranteeing Subsidiary), or any custodian, trustee, liquidator or other similar official acting in relation to either the Issuer or the Guarantors, any amount paid either to the Trustee or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect.

(f)    The Guaranteeing Subsidiary shall not be entitled to any right of subrogation in relation to the Holders in respect of any obligations guaranteed hereby until payment in full of all obligations guaranteed hereby.

(g)    As between the Guaranteeing Subsidiary, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Guarantee, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the obligations guaranteed hereby, and (y) in the event of any declaration of acceleration of such obligations as provided in Article 6 of the Indenture, such obligations (whether or not due and payable) shall forthwith become due and payable by the Guaranteeing Subsidiary for the purpose of this Guarantee.

(h)    The Guaranteeing Subsidiary shall have the right to seek contribution from any non-paying Guarantor so long as the exercise of such right does not impair the rights of the Holders under this Guarantee.

(i)    Pursuant to Section 10.02 of the Indenture, after giving effect to all other contingent and fixed liabilities that are relevant under any applicable Bankruptcy or fraudulent conveyance laws, and after giving effect to any collections from, rights to receive contribution

from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under Article 10 of the Indenture, this new Guarantee shall be limited to the maximum amount permissible such that the obligations of such Guaranteeing Subsidiary under this Guarantee will not constitute a fraudulent transfer or conveyance.

(j)      This Guarantee shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation, reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Senior Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Senior Notes and Guarantee, whether as a "voidable preference", "fraudulent transfer" or otherwise, all as though such payment or performance had not been made. In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Senior Note shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(k)      In case any provision of this Guarantee shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(l)      This Guarantee shall be a general senior unsecured obligation of such Guaranteeing Subsidiary, ranking equally in right of payment with all existing and future Senior Indebtedness of the Guaranteeing Subsidiary, will be effectively subordinated to all Secured Indebtedness of such Guaranteeing Subsidiary to the extent of the value of the collateral securing such indebtedness. The Guarantees will be senior in right of payment to all existing and future Subordinated Indebtedness of each Guarantor. The Senior Notes will be structurally subordinated to Indebtedness and other liabilities of Subsidiaries of the Issuer that do not Guarantee the Senior Notes, if any.

(m)     Each payment to be made by the Guaranteeing Subsidiary in respect of this Guarantee shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

3.      EXECUTION AND DELIVERY.    The Guaranteeing Subsidiary agrees that the Guarantee shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantee on the Senior Notes.

4.      Merger, Consolidation or Sale of All or Substantially All Assets.

(a)      Except as otherwise provided in Section 5.01(c) of the Indenture, the Guaranteeing Subsidiary may not consolidate or merge with or into or wind up into (whether or not the Issuer or Guaranteeing Subsidiary is the surviving corporation), or sell, assign, transfer, lease, convey or otherwise dispose of all or substantially all of its properties or assets, in one or more related transactions, to any Person unless:

(i)    (A)    the Guaranteeing Subsidiary is the surviving corporation or the Person formed by or surviving any such consolidation or merger (if other than the Guaranteeing Subsidiary) or to which such sale, assignment, transfer, lease, conveyance or other disposition will have been made is a corporation, partnership, limited

partnership, limited liability partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of the Guaranteeing Subsidiary, as the case may be, or the laws of the United States, any state thereof, the District of Columbia, or any territory thereof (the Guaranteeing Subsidiary or such Person, as the case may be, being herein called the "Successor Person");

(B)    the Successor Person, if other than the Guaranteeing Subsidiary, expressly assumes all the obligations of the Guaranteeing Subsidiary under the Indenture and the Registration Rights Agreement and the Guaranteeing Subsidiary's related Guarantee pursuant to supplemental indentures or other documents or instruments in form reasonably satisfactory to the Trustee;

(C)    immediately after such transaction, no Default exists; and

(D)    the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger or transfer and such supplemental indentures, if any, comply with the Indenture; or

(ii)    the transaction is made in compliance with Section 4.10 of the Indenture;

(b)    Subject to certain limitations described in the Indenture, the Successor Person will succeed to, and be substituted for, the Guaranteeing Subsidiary under the Indenture and the Guaranteeing Subsidiary's Guarantee. Notwithstanding the foregoing, the Guaranteeing Subsidiary may (i) merge into or transfer all or part of its properties and assets to another Guarantor or the Issuer, (ii) merge with an Affiliate of the Issuer solely for the purpose of reincorporating the Guaranteeing Subsidiary in the United States, any state thereof, the District of Columbia or any territory thereof or (iii) convert into a corporation, partnership, limited partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of such Guarantor.

5.    RELEASES. The Guarantee of the Guaranteeing Subsidiary shall be automatically and unconditionally released and discharged, and no further action by the Guaranteeing Subsidiary, the Issuer or the Trustee is required for the release of the Guaranteeing Subsidiary's Guarantee, upon:

(1)    (A) any sale, exchange or transfer (by merger or otherwise) of the Capital Stock of the Guaranteeing Subsidiary (including any sale, exchange or transfer), after which the Guaranteeing Subsidiary is no longer a Restricted Subsidiary or all or substantially all the assets of the Guaranteeing Subsidiary which sale, exchange or transfer is made in compliance with the applicable provisions of the Indenture;

(B)    the release or discharge of the guarantee by the Guaranteeing Subsidiary of the guarantee which resulted in the creation of the Guarantee, except a discharge or release by or as a result of payment under such guarantee;

(C)    the proper designation of the Guaranteeing Subsidiary as an Unrestricted Subsidiary in compliance with Section 4.08 hereof; or

(D)    the Issuer exercising its Legal Defeasance option or Covenant Defeasance option in accordance with Article 8 of the Indenture or the Issuer's obligations under the Indenture being discharged in accordance with the terms of the Indenture; and

(2)    the Guaranteeing Subsidiary delivering to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for in the Indenture relating to such transaction have been complied with.

6.    NO RECOURSE AGAINST OTHERS.  No director, officer, employee, incorporator or stockholder of the Guaranteeing Subsidiary shall have any liability for any obligations of the Issuer or the Guarantors (including the Guaranteeing Subsidiary) under the Senior Notes, any Guarantees, the Indenture or this Supplemental Indenture or for any claim based on, in respect of, or by reason of, such obligations or their creation.  Each Holder by accepting Senior Notes waives and releases all such liability.  The waiver and release are part of the consideration for issuance of the Senior Notes.

7.    GOVERNING LAW.    THIS SUPPLEMENTAL INDENTURE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

8.    COUNTERPARTS.    The parties may sign any number of copies of this Supplemental Indenture.  Each signed copy shall be an original, but all of them together represent the same agreement.

9.    EFFECT OF HEADINGS.  The Section headings herein are for convenience only and shall not affect the construction hereof.

10.    THE TRUSTEE.  The Trustee shall not be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the Guaranteeing Subsidiary.

11.    SUBROGATION.  The Guaranteeing Subsidiary shall be subrogated to all rights of Holders of Senior Notes against the Issuer in respect of any amounts paid by the Guaranteeing Subsidiary pursuant to the provisions of Section 2 hereof and Section 10.01 of the Indenture; provided that if an Event of Default has occurred and is continuing, the Guaranteeing Subsidiary shall not be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Senior Notes shall have been paid in full.

12.    BENEFITS ACKNOWLEDGED.    The Guaranteeing Subsidiary's Guarantee is subject to the terms and conditions set forth in the Indenture.  The Guaranteeing Subsidiary acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by the Indenture and this Supplemental Indenture and that the guarantee and waivers made by it pursuant to this Guarantee are knowingly made in contemplation of such benefits.

13.    SUCCESSORS.    All agreements of the Guaranteeing Subsidiary in this Supplemental Indenture shall bind its Successors, except as otherwise provided in Section 2(k) hereof or elsewhere in this Supplemental Indenture.  All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

ENERGY FUTURE HOLDINGS CORP.

By: _____

Name:
Title:

[NAMES OF GUARANTORS]

By: _____

Name:
Title:

THE BANK OF NEW YORK, as Trustee

By: _____

Name:
Title:

[GUARANTEEING SUBSIDIARY]

By: _____

Name:
Title:

## SUPPLEMENTAL INDENTURE

Supplemental Indenture (this "Supplemental Indenture"), dated as of July 8, 2008, between Energy Future Intermediate Holding Company LLC (formerly known as InfrastruX Energy Services BPL LLC), a Delaware limited liability company (the "New Guaranteeing Subsidiary"), a subsidiary of Energy Future Holdings Corp. (the "Issuer"), and The Bank of New York Mellon (formerly known as The Bank of New York), as trustee (the "Trustee").

## WITNESSETH

WHEREAS, each of the Issuer and the Guarantors (as defined in the Indenture referred to below) has heretofore executed and delivered to the Trustee an Indenture (the "Indenture"), dated as of October 31, 2007, providing for the issuance of an unlimited aggregate principal amount of 10.875% Senior Notes due 2017 and 11.250%/12.000% Senior Toggle Notes due 2017 (together, the "Senior Notes");

WHEREAS, Energy Future Intermediate Holding Company LLC, a Delaware limited liability company (the "Old Guarantor"), was merged with and into the New Guaranteeing Subsidiary, which successor entity, pursuant to Section 5.01(c)(1)(B) of the Indenture, has assumed all of the obligations of the Old Guarantor under the Indenture and the Old Guarantor's related Guarantee;

WHEREAS, the Indenture provides that under certain circumstances the New Guaranteeing Subsidiary shall execute and deliver to the Trustee a supplemental indenture pursuant to which the New Guaranteeing Subsidiary shall unconditionally guarantee all of the Issuer's Obligations under the Senior Notes and the Indenture on the terms and conditions set forth herein and under the Indenture (the "Guarantee"); and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

1.     CAPITALIZED TERMS.  Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2.     ASSUMPTION OF THE INDENTURE AND THE GUARANTEE.  The New Guaranteeing Subsidiary, as the successor entity in the above-referenced merger, hereby assumes the Old Guarantor's obligations under the Indenture and the Guarantee.

3.     AGREEMENT TO GUARANTEE.  The New Guaranteeing Subsidiary hereby agrees as follows:

(a)     Along with all Guarantors named in the Indenture, to jointly and severally unconditionally guarantee to each Holder of a Senior Note authenticated and delivered by the Trustee and to the Trustee and its successors and assigns, irrespective of the validity and enforceability of the Indenture, the Senior Notes or the obligations of the Issuer hereunder or thereunder, that:

(i)     the principal of and interest, premium and Additional Interest, if any, on the Senior Notes will be promptly paid in full when due, whether at maturity, by acceleration, redemption or otherwise, and interest on the overdue principal of and interest on the Senior Notes, if any, if lawful, and all other obligations of the Issuer to the Holders or the Trustee hereunder or thereunder will be promptly paid in full or performed, all in accordance with the terms hereof and thereof; and

(ii)    in case of any extension of time of payment or renewal of any Senior Notes or any of such other obligations, that same will be promptly paid in full when due or performed in accordance with the terms of the extension or renewal, whether at stated maturity, by acceleration or otherwise. Failing payment when due of any amount so guaranteed or any performance so guaranteed for whatever reason, the Guarantors and the New Guaranteeing Subsidiary shall be jointly and severally obligated to pay the same immediately. This is a guarantee of payment and not a guarantee of collection.

(b)     The obligations hereunder shall be unconditional, irrespective of the validity, regularity or enforceability of the Senior Notes or the Indenture, the absence of any action to enforce the same, any waiver or consent by any Holder of the Senior Notes with respect to any provisions hereof or thereof, the recovery of any judgment against the Issuer, any action to enforce the same or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor.

(c)     The following is hereby waived:  diligence, presentment, demand of payment, filing of claims with a court in the event of insolvency or bankruptcy of the Issuer, any right to require a proceeding first against the Issuer, protest, notice and all demands whatsoever.

(d)     Except as set forth in Section 6 hereto, this Guarantee shall not be discharged except by complete performance of the obligations contained in the Senior Notes, the Indenture and this Supplemental Indenture, and the New Guaranteeing Subsidiary accepts all obligations of a Guarantor under the Indenture.

(e)     If any Holder or the Trustee is required by any court or otherwise to return to the Issuer, the Guarantors (including the New Guaranteeing Subsidiary), or any custodian, trustee, liquidator or other similar official acting in relation to either the Issuer or the Guarantors, any amount paid either to the Trustee or such Holder, this Guarantee, to the extent theretofore discharged, shall be reinstated in full force and effect.

(f)     The New Guaranteeing Subsidiary shall not be entitled to any right of subrogation in relation to the Holders in respect of any obligations guaranteed hereby until payment in full of all obligations guaranteed hereby.

(g)     As between the New Guaranteeing Subsidiary, on the one hand, and the Holders and the Trustee, on the other hand, (x) the maturity of the obligations guaranteed hereby may be accelerated as provided in Article 6 of the Indenture for the purposes of this Guarantee, notwithstanding any stay, injunction or other prohibition preventing such acceleration in respect of the obligations guaranteed hereby, and (y) in the event of any declaration of acceleration of such obligations as provided in Article 6 of the Indenture, such obligations (whether or not due and payable) shall forthwith become due and payable by the New Guaranteeing Subsidiary for the purpose of this Guarantee.

2

(h)    The New Guaranteeing Subsidiary shall have the right to seek contribution from any non-paying Guarantor so long as the exercise of such right does not impair the rights of the Holders under this Guarantee.

(i)    Pursuant to Section 10.02 of the Indenture, after giving effect to all other contingent and fixed liabilities that are relevant under any applicable Bankruptcy or fraudulent conveyance laws, and after giving effect to any collections from, rights to receive contribution from or payments made by or on behalf of any other Guarantor in respect of the obligations of such other Guarantor under Article 10 of the Indenture, this new Guarantee shall be limited to the maximum amount permissible such that the obligations of such New Guaranteeing Subsidiary under this Guarantee will not constitute a fraudulent transfer or conveyance.

(j)    This Guarantee shall remain in full force and effect and continue to be effective should any petition be filed by or against the Issuer for liquidation, reorganization, should the Issuer become insolvent or make an assignment for the benefit of creditors or should a receiver or trustee be appointed for all or any significant part of the Issuer's assets, and shall, to the fullest extent permitted by law, continue to be effective or be reinstated, as the case may be, if at any time payment and performance of the Senior Notes are, pursuant to applicable law, rescinded or reduced in amount, or must otherwise be restored or returned by any obligee on the Senior Notes and Guarantee, whether as a "voidable preference", "fraudulent transfer" or otherwise, all as though such payment or performance had not been made. In the event that any payment or any part thereof, is rescinded, reduced, restored or returned, the Senior Note shall, to the fullest extent permitted by law, be reinstated and deemed reduced only by such amount paid and not so rescinded, reduced, restored or returned.

(k)    In case any provision of this Guarantee shall be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(l)    This Guarantee shall be a general senior unsecured obligation of such New Guaranteeing Subsidiary, ranking equally in right of payment with all existing and future Senior Indebtedness of the New Guaranteeing Subsidiary, will be effectively subordinated to all Secured Indebtedness of such New Guaranteeing Subsidiary to the extent of the value of the collateral securing such indebtedness. The Guarantees will be senior in right of payment to all existing and future Subordinated Indebtedness of each Guarantor. The Senior Notes will be structurally subordinated to Indebtedness and other liabilities of Subsidiaries of the Issuer that do not Guarantee the Senior Notes, if any.

(m)    Each payment to be made by the New Guaranteeing Subsidiary in respect of this Guarantee shall be made without set-off, counterclaim, reduction or diminution of any kind or nature.

4.    EXECUTION AND DELIVERY.    The New Guaranteeing Subsidiary agrees that the Guarantee shall remain in full force and effect notwithstanding the absence of the endorsement of any notation of such Guarantee on the Senior Notes.

5.    MERGER, CONSOLIDATION OR SALE OF ALL OR SUBSTANTIALLY ALL ASSETS.

(a)    Except as otherwise provided in Section 5.01(c) of the Indenture, the New Guaranteeing Subsidiary may not consolidate or merge with or into or wind up into (whether or not the Issuer or New Guaranteeing Subsidiary is the surviving corporation), or sell,

3

assign, transfer, lease, convey or otherwise dispose of all or substantially all of its properties or assets, in one or more related transactions, to any Person unless:

        (i)     (A)     the New Guaranteeing Subsidiary is the surviving corporation or the Person formed by or surviving any such consolidation or merger (if other than the New Guaranteeing Subsidiary) or to which such sale, assignment, transfer, lease, conveyance or other disposition will have been made is a corporation, partnership, limited partnership, limited liability partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of the New Guaranteeing Subsidiary, as the case may be, or the laws of the United States, any state thereof, the District of Columbia, or any territory thereof (the New Guaranteeing Subsidiary or such Person, as the case may be, being herein called the "Successor Person");

        (B)     the Successor Person, if other than the New Guaranteeing Subsidiary, expressly assumes all the obligations of the New Guaranteeing Subsidiary under the Indenture and the Registration Rights Agreement and the New Guaranteeing Subsidiary's related Guarantee pursuant to supplemental indentures or other documents or instruments in form reasonably satisfactory to the Trustee;

        (C)     immediately after such transaction, no Default exists; and

        (D)     the Issuer shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger or transfer and such supplemental indentures, if any, comply with the Indenture; or

Indenture;

        (ii)     the transaction is made in compliance with Section 4.10 of the Indenture;

        (b)     Subject to certain limitations described in the Indenture, the Successor Person will succeed to, and be substituted for, the New Guaranteeing Subsidiary under the Indenture and the New Guaranteeing Subsidiary's Guarantee. Notwithstanding the foregoing, the New Guaranteeing Subsidiary may (i) merge into or transfer all or part of its properties and assets to another Guarantor or the Issuer, (ii) merge with an Affiliate of the Issuer solely for the purpose of reincorporating the New Guaranteeing Subsidiary in the United States, any state thereof, the District of Columbia or any territory thereof or (iii) convert into a corporation, partnership, limited partnership, limited liability corporation or trust organized or existing under the laws of the jurisdiction of organization of such Guarantor.

        6.     RELEASES. The Guarantee of the New Guaranteeing Subsidiary shall be automatically and unconditionally released and discharged, and no further action by the New Guaranteeing Subsidiary, the Issuer or the Trustee is required for the release of the New Guaranteeing Subsidiary's Guarantee, upon:

        (1)     (A) any sale, exchange or transfer (by merger or otherwise) of the Capital Stock of the New Guaranteeing Subsidiary (including any sale, exchange or transfer), after which the New Guaranteeing Subsidiary is no longer a Restricted Subsidiary or all or

substantially all the assets of the New Guaranteeing Subsidiary which sale, exchange or transfer is made in compliance with the applicable provisions of the Indenture;

        (B)    the release or discharge of the guarantee by the New Guaranteeing Subsidiary of the guarantee which resulted in the creation of the Guarantee, except a discharge or release by or as a result of payment under such guarantee;

        (C)    the proper designation of the New Guaranteeing Subsidiary as an Unrestricted Subsidiary in compliance with Section 4.08 of the Indenture; or

        (D)    the Issuer exercising its Legal Defeasance option or Covenant Defeasance option in accordance with Article 8 of the Indenture or the Issuer's obligations under the Indenture being discharged in accordance with the terms of the Indenture; and

        (2)    the New Guaranteeing Subsidiary delivering to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that all conditions precedent provided for in the Indenture relating to such transaction have been complied with.

        7.    NO RECOURSE AGAINST OTHERS. No director, officer, employee, incorporator or stockholder of the New Guaranteeing Subsidiary shall have any liability for any obligations of the Issuer or the Guarantors (including the New Guaranteeing Subsidiary) under the Senior Notes, any Guarantees, the Indenture or this Supplemental Indenture or for any claim based on, in respect of, or by reason of, such obligations or their creation. Each Holder by accepting Senior Notes waives and releases all such liability. The waiver and release are part of the consideration for issuance of the Senior Notes.

        8.    GOVERNING LAW.    THIS SUPPLEMENTAL INDENTURE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

        9.    COUNTERPARTS.    The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

        10.    EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

        11.    THE TRUSTEE. The Trustee shall not be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the New Guaranteeing Subsidiary.

        12.    SUBROGATION. The New Guaranteeing Subsidiary shall be subrogated to all rights of Holders of Senior Notes against the Issuer in respect of any amounts paid by the New Guaranteeing Subsidiary pursuant to the provisions of Section 3 hereof and Section 10.01 of the Indenture; provided that if an Event of Default has occurred and is continuing, the New Guaranteeing Subsidiary shall not be entitled to enforce or receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by the Issuer under the Indenture or the Senior Notes shall have been paid in full.

        13.    BENEFITS ACKNOWLEDGED. The New Guaranteeing Subsidiary's Guarantee is subject to the terms and conditions set forth in the Indenture. The New Guaranteeing Subsidiary

5

acknowledges that it will receive direct and indirect benefits from the financing arrangements contemplated by the Indenture and this Supplemental Indenture and that the guarantee and waivers made by it pursuant to this Guarantee are knowingly made in contemplation of such benefits.

14.    SUCCESSORS.  All agreements of the New Guaranteeing Subsidiary in this Supplemental Indenture shall bind its Successors, except as otherwise provided in Section 3(k) hereof or elsewhere in this Supplemental Indenture.  All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

6

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

THE BANK OF NEW YORK MELLON (FORMERLY KNOWN AS THE BANK OF NEW YORK), as Trustee

By: _____

    Name:  **REMO J. REALE**
    Title:  **VICE PRESIDENT**

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC (FORMERLY KNOWN AS INFRASTRUX ENERGY SERVICES BPL LLC)

By: _____

    Name:
    Title:

*[Signature Page To Supplemental Indenture]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed, all as of the date first above written.

THE BANK OF NEW YORK MELLON (FORMERLY KNOWN AS THE BANK OF NEW YORK), as Trustee

By: _____
      Name:
      Title:

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC (FORMERLY KNOWN AS INFRASTRUX ENERGY SERVICES BPL LLC)

By: _____
      Name:
      Title:

*[Signature Page To Supplemental Indenture]*

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 04:49 PM 07/08/2008*
*FILED 04:34 PM 07/08/2008*
*SRV 080765493 - 4174740 FILE*

**CERTIFICATE OF MERGER**
**OF**
**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**
**WITH AND INTO**
**INFRASTRUX ENERGY SERVICES BPL LLC**

Pursuant to Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby execute the following Certificate of Merger:

1. The names of the entities participating in the merger and their respective jurisdictions of formation are as follows:

| Name of Entity | Type of Entity | State |
|---|---|---|
| InfrastruX Energy Services BPL LLC | limited liability company | Delaware |
| Energy Future Intermediate Holding Company LLC | limited liability company | Delaware |

2. InfrastruX Energy Services BPL LLC will be the surviving entity (the "Survivor"), with its name being amended to be "Energy Future Intermediate Holding Company LLC."

3. The merger will amend the Certificate of Formation of the Survivor to change its name to "Energy Future Intermediate Holding Company LLC." The merger will terminate the Certificate of Formation of the other party.

4. An Agreement and Plan of Merger (the "Plan of Merger") has been approved and executed by each of the parties to the merger. The executed Plan of Merger is on file at 1601 Bryan St., Dallas, Texas 75201, the principal place of business of the Survivor. A copy of the Plan of Merger will be furnished by the Survivor, on written request and without cost, to any member of the parties to the merger.

5. The Plan of Merger was duly authorized by all actions required by the laws under which the parties thereto were formed and by their governing documents.

IN WITNESS WHEREOF, the parties hereto have executed this Certificate of Merger as of __July 8__, 2008.

INFRASTRUX ENERGY SERVICES BPL LLC

By: _____
    Jared S. Richardson
    Secretary

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

By: _____
    Anthony R. Horton
    Treasurer

**CERTIFICATE OF MERGER**
**OF**
**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**
**WITH AND INTO**
**INFRASTRUX ENERGY SERVICES BPL LLC**

Pursuant to Section 18-209 of the Delaware Limited Liability Company Act, the undersigned hereby execute the following Certificate of Merger:

1. The names of the entities participating in the merger and their respective jurisdictions of formation are as follows:

| Name of Entity | Type of Entity | State |
|---|---|---|
| InfrastruX Energy Services BPL LLC | limited liability company | Delaware |
| Energy Future Intermediate Holding Company LLC | limited liability company | Delaware |

2. InfrastruX Energy Services BPL LLC will be the surviving entity (the "Survivor"), with its name being amended to be "Energy Future Intermediate Holding Company LLC."

3. The merger will amend the Certificate of Formation of the Survivor to change its name to "Energy Future Intermediate Holding Company LLC." The merger will terminate the Certificate of Formation of the other party.

4. An Agreement and Plan of Merger (the "Plan of Merger") has been approved and executed by each of the parties to the merger. The executed Plan of Merger is on file at 1601 Bryan St., Dallas, Texas 75201, the principal place of business of the Survivor. A copy of the Plan of Merger will be furnished by the Survivor, on written request and without cost, to any member of the parties to the merger.

5. The Plan of Merger was duly authorized by all actions required by the laws under which the parties thereto were formed and by their governing documents.

IN WITNESS WHEREOF, the parties hereto have executed this Certificate of Merger as of July 8 , 2008.

INFRASTRUX ENERGY SERVICES BPL LLC

By: _Jared S. Richardson_
    Jared S. Richardson
    Secretary

ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

By: _____
    Anthony R. Horton
    Treasurer

OFFICER'S CERTIFICATE
OF
ENERGY FUTURE HOLDINGS CORP.

The undersigned Anthony R. Horton, Senior Vice President, Treasurer and Assistant Secretary of ENERGY FUTURE HOLDINGS CORP., a Texas corporation, (the "Issuer"), and the parent of Energy Future Intermediate Holding Company LLC (formerly known as InfrastruX Energy Services BPL LLC), a Delaware limited liability company (the "New Guaranteeing Subsidiary"), in his capacity as such, does hereby certify as follows:

1.      This Certificate is delivered to The Bank of New York Mellon (formerly known as The Bank of New York), as trustee (the "Trustee") pursuant to Sections 5.01(c), 9.01, 10.03, 12.04 and 12.05 of the indenture (the "Indenture"), dated as of October 31, 2007, as supplemented by the Supplemental Indenture (the "Supplemental Indenture"), dated as of July X, 2008, between the New Guaranteeing Subsidiary and the Trustee, providing for the issuance of an unlimited aggregate principal amount of 10.875% Senior Notes due 2017 and 11.250%/12.000% Senior Toggle Notes due 2017 (together, the "Senior Notes") by the Issuer.

2.      The undersigned has read (a) the covenants contained in the Indenture relating to the execution and delivery of the Supplemental Indenture, (b) the provisions of the Indenture setting forth conditions precedent to the execution and delivery of the Supplemental Indenture and (c) the definitions contained in the Indenture relating to the covenants and conditions referred to in clauses (a) and (b) above.

3.      The undersigned has examined the appropriate documentation and made such further investigation as he deemed necessary as a basis for the opinions hereinafter expressed.

4.      In the opinion of the undersigned, such examination is sufficient to enable him to express an informed opinion as to whether or not the covenants and conditions precedent referred to above have been complied with.

5.      The undersigned is of the opinion that the conditions precedent contained in the Indenture to the execution and delivery by the Trustee of the Supplemental Indenture have been complied with and the Supplemental Indenture is authorized or permitted by the Indenture and complies with the provisions thereof.

6.      The undersigned is of the opinion that the merger (the "Merger") of Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("Energy Future Intermediate Holding"), and an existing subsidiary guarantor of the Senior Notes, with and into the New Guaranteeing Subsidiary, with the New Guaranteeing Subsidiary surviving the Merger, complies with the Indenture.

7.      The undersigned is of the opinion that immediately after the Merger, no Default (as defined in the Indenture) will exist.

IN WITNESS WHEREOF, I have hereunto signed my name this 2H day of July, 2008.

Name: Anthony R. Horton
Title:   Senior Vice President, Treasurer
        and Assistant Secretary

SIMPSON THACHER & BARTLETT LLP

425 LEXINGTON AVENUE
NEW YORK, N.Y. 10017-3954
(212) 455-2000

FACSIMILE (212) 455-2502

DIRECT DIAL NUMBER

E-MAIL ADDRESS

July 8, 2008

The Bank of New York Mellon
(formerly known as The Bank of New York),
as Trustee
101 Barclay Street – 8W
New York, New York 10286

Ladies and Gentlemen:

We have acted as counsel to Energy Future Intermediate Holding Company LLC
(formerly known as InfrastruX Energy Services BPL LLC), a Delaware limited liability
company (the "New Guaranteeing Subsidiary"), a subsidiary of Energy Future Holdings Corp., a
Texas corporation (the "Issuer"), in connection with the execution of the Supplemental Indenture
(the "Supplemental Indenture"), dated as of July 8, 2008, between the New Guaranteeing
Subsidiary and The Bank of New York Mellon (formerly known as The Bank of New York), as
trustee (the "Trustee"), supplementing the Indenture (the "Indenture"), dated as of October 31,
2007, among the Issuer, the Trustee and the Guarantors party thereto, providing for the issuance
of an unlimited aggregate principal amount of the Issuer's 10.875% Senior Notes due 2017 and
11.250%/12.000% Senior Toggle Notes due 2017 (together, the "Senior Notes") and the issuance
by the New Guaranteeing Subsidiary of its guarantee of the Senior Notes (the "Guarantee")
pursuant to the provisions of the Indenture and the Supplemental Indenture. This opinion is
being delivered pursuant to Section 5.01(c) and Section 12.05 of the Indenture.

LOS ANGELES     PALO ALTO     WASHINGTON, D.C.     BEIJING     HONG KONG     LONDON     TOKYO

SIMPSON THACHER & BARTLETT LLP

- 2 -                                                                                          July 8, 2008

We have examined the Indenture, the Supplemental Indenture, the Guarantee whose terms are set forth in the Indenture and the Supplemental Indenture and the Officer's Certificate of the Issuer, dated as of July 8, 2008, relating to the Supplemental Indenture. In addition, we have examined, and have relied as to matters of fact upon, the documents delivered to you in connection with the execution of the Supplemental Indenture and upon originals, or duplicates or certified or conformed copies, of such corporate records, agreements, documents and other instruments and such certificates or comparable documents of public officials and of officers and representatives of the Issuer and the New Guaranteeing Subsidiary and have made such other investigations as we have deemed relevant and necessary in connection with the opinions hereinafter set forth.

In such examination, we have assumed the genuineness of all signatures, the legal capacity of natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as duplicates or certified or conformed copies and the authenticity of the originals of such latter documents.

Based upon the foregoing, and subject to the qualifications, assumptions and limitations stated herein, we are of the opinion that:

1.      All conditions precedent contained in the Indenture to the execution and delivery of the Supplemental Indenture have been complied with and the Supplemental Indenture is authorized or permitted by the Indenture and complies with the provisions thereof.

2.      The Supplemental Indenture has been duly authorized, executed and delivered by the New Guaranteeing Subsidiary and, assuming that the Supplemental Indenture is the valid and legally binding obligation of the Trustee, the Supplemental Indenture constitutes a valid and legally binding obligation of the New Guaranteeing

SIMPSON THACHER & BARTLETT LLP

- 3 -                                                                July 8, 2008

Subsidiary, enforceable against the New Guaranteeing Subsidiary in accordance with its terms.

3.     The Merger (the "Merger") of Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("Energy Future Intermediate Holding"), and an existing subsidiary guarantor of the Senior Notes, with and into the New Guaranteeing Subsidiary, with the New Guaranteeing Subsidiary surviving the Merger, complies with the Indenture.

Our opinion set forth in paragraph 2 above is subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, (ii) general equitable principles (whether considered in a proceeding in equity or at law) and (iii) an implied covenant of good faith and fair dealing. In addition, we express no opinion as to the validity, legally binding effect or enforceability of the severability provisions contained in Section 2(k) of the Supplemental Indenture.

We do not express any opinion herein concerning any law other than the law of the State of New York, the federal law of the United States and the Delaware Limited Liability Company Act.

This opinion letter is rendered to you in connection with the above-described transaction. This opinion letter may not be relied upon by you for any other purpose, or relied upon by, or furnished to, any other person, firm or corporation without our prior written consent.

Very truly yours,

*Simpson Thacher & Bartlett LLP*

SIMPSON THACHER & BARTLETT LLP

## SECOND SUPPLEMENTAL INDENTURE

Second Supplemental Indenture (this "Supplemental Indenture"), dated as of August 3, 2009, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York Mellon), as Trustee (the "Trustee").

### W I T N E S S E T H

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of July 8, 2008 (collectively, the "Indenture"), providing for the issuance of 10.875% Senior Notes due 2017 (the "Senior Cash Pay Notes") and 11.250%/12.000% Senior Toggle Notes due 2017 (together with any increases in the aggregate principal amount thereof, or any Related PIK Notes with respect thereto, in each case in connection with any PIK Payment with respect thereto, and together with the Senior Cash Pay Notes, the "Senior Notes");

WHEREAS, Section 9.01(11) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture, at any time after the Issue Date, without the consent of any Holder to conform the text of the Indenture to any provision of the "Description of the Notes" section of the Offering Memorandum to the extent such provision in such "Description of the Notes" section was intended to be a verbatim recitation of a provision of the Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. AMENDMENT TO THE INDENTURE. Section 9.02 of the Indenture is amended by deleting the text of clause (2) in its entirety and inserting in lieu thereof the following text:

"(2)     reduce the principal of or change the fixed final maturity of any such Senior Note or alter or waive the provisions with respect to the redemption of such Senior Notes (other than provisions relating to Section 3.09, Section 4.10 and Section 4.14 hereof);".

3.      GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

4.      FULL FORCE AND EFFECT. Except as expressly amended hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Senior Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the Indenture, whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

5.      INDENTURE REMAINS IN FULL FORCE AND EFFECT. Except as supplemented or amended hereby, all provisions in the Indenture shall remain in full force and effect.

6.      INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together.

7.      CONFIRMATION AND PRESERVATION OF INDENTURE. The Indenture as supplemented or amended by this Supplemental Indenture is in all respects confirmed and preserved.

8.      BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and thereto and their successors hereunder and thereunder and the Holders of the Senior Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Senior Notes.

9.      SUCCESSORS. All agreements of the Issuer and the Guarantors in this Supplemental Indenture shall bind their respective successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

10.      THE TRUSTEE. The Trustee shall not be responsible in any manner for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which are made by the Issuer and the Guarantors.

11.      COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12.      EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

13.    SEVERABILITY.  If any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Supplemental Indenture or the Indenture shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
Name: Paul M. Keglevic
Title: Executive VP and CFO

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

By: _____
Name: Paul M. Keglevic
Title: Executive VP and CFO

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: _____
Name: Paul M. Keglevic
Title: Executive VP and CFO

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: _____
Name: Julie Hoffman-Ramos
Title: Senior Associate

EX-99.1 2 dex991.htm THIRD SUPPLEMENTAL INDENTURE DATED JULY 29, 2010

Exhibit 99.1

### THIRD SUPPLEMENTAL INDENTURE

Third Supplemental Indenture (this "Supplemental Indenture"), dated as of July 29, 2010, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as Trustee (the "Trustee").

### W I T N E S S E T H

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, and the Second Supplemental Indenture, dated as of August 3, 2009 (collectively, the "Indenture"), providing for the issuance of the Issuer's 10.875% Senior Notes due 2017 (the "Senior Cash Pay Notes") and the Issuer's 11.250%/12.000% Senior Toggle Notes due 2017 (together with any increases in the aggregate principal amount thereof, or any Related PIK Notes with respect thereto, in each case in connection with any PIK Payment with respect thereto, and together with the Senior Cash Pay Notes, the "Senior Notes");

WHEREAS, Section 9.02 of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture with the consent of Holders of at least a majority in aggregate principal amount of the Senior Notes then outstanding voting as a single class;

WHEREAS, the Issuer has solicited consents upon the terms and subject to the conditions set forth in the preliminary prospectus dated July 16, 2010 (as the same may be amended or supplemented from time to time, the "Prospectus"), and in the related Consent and Letter of Transmittal, from each Holder of Senior Notes to the amendments to the Indenture set forth in Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight of this Supplemental Indenture (the "Proposed Amendments");

WHEREAS, the Issuer has received the consents from Holders of not less than a majority in aggregate principal amount of the outstanding Senior Notes to effect the Proposed Amendments;

WHEREAS, the Issuer has delivered to the Trustee an Officer's Certificate as well as an Opinion of Counsel to the effect that the execution and delivery of this Supplemental Indenture by the Issuer is authorized or permitted under the Indenture and that all conditions precedent provided for in the Indenture to the execution and delivery of this Supplemental Indenture to be complied with by the Issuer have been complied with;

WHEREAS, the Issuer has been authorized by resolution of its Board of Directors to enter into this Supplemental Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture by the Issuer and to make this Supplemental Indenture valid and binding on the Issuer have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.02 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

### ARTICLE ONE

SECTION 1.01. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

### ARTICLE TWO

SECTION 2.01. AMENDMENT TO THE TABLE OF CONTENTS. The Table of Contents of the Indenture is amended by deleting the titles to Sections 4.05, 4.06, 4.08, 4.09, 4.10, 4.11, 4.12, 4.13, 4.14 and 4.15 and inserting in lieu thereof the phrase "[intentionally omitted]".

### ARTICLE THREE

SECTION 3.01. AMENDMENT TO CERTAIN PROVISIONS IN ARTICLE ONE. The following definitions shall be added to Section 1.01 of the Indenture in the appropriate alphabetical location:

""**Permitted Asset Transfer**" means (1) the direct or indirect sale, assignment, transfer, conveyance or other disposition (including by way of merger, wind-up or consolidation) or spin-off by dividend of the Equity Interests of Energy Future Intermediate Holding such that Energy Future Intermediate Holding is no longer a Subsidiary of the Issuer (including without limitation a merger of Energy Future Intermediate Holding with and into the Issuer) or (2) the sale, assignment, transfer, conveyance or other disposition (other than by way of merger, wind-up or consolidation) of all of the Equity Interests of, and other Investments in, Oncor Holdings or another Oncor Subsidiary or successor to Oncor Holdings or an Oncor Subsidiary held by Energy Future Intermediate Holding to a Person (other than an Oncor Subsidiary) that shall continue to hold such Equity Interests and other Investments."

""**TCEH Transfer**" means the sale, transfer, disposition or spin-off (including by way of merger, wind-up or consolidation) of (a) the membership interests or other common Equity Interests of Energy Future Competitive Holdings, TCEH or another Restricted Subsidiary of the Issuer that holds all or substantially all of the assets of TCEH and its Subsidiaries such that Energy Future Competitive Holdings, TCEH or such Restricted Subsidiary ceases to be a Subsidiary of the Issuer or (b) all or substantially all of the assets of TCEH and its Subsidiaries, in each case other than any such transfer to another Restricted Subsidiary."

-2-

## ARTICLE FOUR

SECTION 4.01. AMENDMENT AND ELIMINATION OF CERTAIN PROVISIONS IN ARTICLE FOUR.

(a) Section 4.03 (Reports and Other Information) of the Indenture is amended by deleting the text of such section in its entirety and substituting in lieu thereof the following text: "Notwithstanding that the Issuer may not be subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act or otherwise report on an annual and quarterly basis on forms provided for such annual and quarterly reporting pursuant to rules and regulations promulgated by the SEC, the Issuer shall comply with the reporting obligations set forth under Section 314(a) of the Trust Indenture Act."

(b) Section 4.05 (Taxes) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(c) Section 4.06 (Stay, Extension and Usury Laws) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(d) Section 4.07 (Limitation on Restricted Payments) of the Indenture is amended by deleting the text of such section in its entirety and substituting in lieu thereof the following text: "The Issuer shall not, and shall not permit any of its Restricted Subsidiaries to, pay any cash dividend or make any cash distribution on, or in respect of, the Issuer's Capital Stock or purchase for cash or otherwise acquire for cash any Capital Stock of the Issuer or any direct or indirect parent of the Issuer for the purpose of paying any cash dividend or making any cash distribution to, or acquiring Capital Stock of any direct or indirect parent of the Issuer for cash from, the Investors, or guarantee any Indebtedness of any Affiliate of the Issuer for the purpose of paying such dividend, making such distribution or so acquiring such Capital Stock to or from the Investors unless at the time and after giving effect to such payment, the Consolidated Leverage Ratio of the Issuer would be equal to or less than 7.00 to 1.00."

(e) Section 4.08 (Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(f) Section 4.09 (Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(g) Section 4.10 (Asset Sales) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(h) Section 4.11 (Transactions with Affiliates) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(i) Section 4.12 (Liens) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

-3-

(j) Section 4.13 (Corporate Existence) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(k) Section 4.14 (Offer to Repurchase upon Change of Control) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(l) Section 4.15 (Limitation on Guarantees of Indebtedness by Restricted Subsidiaries) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE FIVE

SECTION 5.01. AMENDMENT OF CERTAIN PROVISIONS IN ARTICLE FIVE.

(a) Section 5.01 (Merger, Consolidation, or Sale of All or Substantially All Assets) of the Indenture is amended by deleting the text of clauses (a)(3), (a)(4), (a)(6), (c)(1)(C), (c)(1)(D) and (c)(2) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(b) Section 5.01 of the Indenture is further amended by adding the following new clause (e) to Section 5.01:

"(e) It shall be understood that for purposes of the first sentence of Section 5.01(a) and the first sentence of Section 5.01 (c) only, (i) a Permitted Asset Transfer shall not constitute the sale, assignment, transfer, lease, conveyance or disposal of all or substantially all of the assets of the Issuer and, accordingly, the Issuer or any of its Subsidiaries may consummate a Permitted Asset Transfer without being subject to the requirements of this Section 5.01 and (ii) a TCEH Transfer shall constitute the sale, assignment, transfer, lease, conveyance or disposal of all or substantially all of the assets of the Issuer and, accordingly, if the Issuer or any of its Subsidiaries consummates a TCEH Transfer, it must comply with the requirements of this Section 5.01."

## ARTICLE SIX

SECTION 6.01. AMENDMENT OF CERTAIN PROVISIONS IN ARTICLE SIX. Section 6.01 (Events of Default) of the Indenture is amended by deleting the text of clauses (a)(3), (a)(4) and (a)(5) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE SEVEN

SECTION 7.01. AMENDMENT OF CERTAIN PROVISIONS IN ARTICLE EIGHT. Section 8.04 (Conditions to Legal or Covenant Defeasance) of the Indenture is amended by deleting the text of clauses (2), (3), (4), (5), (6), (7) and (8) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

-4-

## ARTICLE EIGHT

SECTION 8.01. AMENDMENT OF CERTAIN PROVISIONS IN THE SENIOR NOTES. Paragraph 8 of each Senior Note is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE NINE

SECTION 9.01. REFERENCES TO DELETED OR AMENDED PROVISIONS. Subject to Section 10.01 hereof, all references in the Indenture and any Senior Note, as amended by Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight hereof, to any of the provisions deleted and eliminated or modified as provided herein, or to terms defined in such provisions, shall also be deemed deleted and eliminated or modified, as the case may be, in accordance with the terms of this Supplemental Indenture.

SECTION 9.02. AMENDMENT OF DEFINITIONS. Subject to Section 10.01 hereof, the Indenture and each Senior Note are hereby amended by deleting any definitions from the Indenture and each Senior Note with respect to which all references would be eliminated as a result of amendments to the Indenture and the Senior Notes pursuant to Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight; *provided however*, that, for the avoidance of doubt, all definitions with respect to which any reference remains in the Indenture and/or any Senior Note after giving effect to the amendments to the Indenture and the Senior Notes pursuant to Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight shall not be deleted.

## ARTICLE TEN

SECTION 10.01. EFFECTIVENESS OF SUPPLEMENTAL INDENTURE. This Supplemental Indenture shall be effective upon its execution and delivery by the parties hereto. The Amendments set forth in Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven and Article Eight hereof will not become operative until immediately prior to the acceptance for exchange of Senior Notes in accordance with the terms and conditions set forth in the Prospectus.

SECTION 10.02. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

SECTION 10.03. FULL FORCE AND EFFECT. Except as expressly supplemented or amended hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors and the Trustee and every Holder of Senior Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the Indenture, whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

-5-

SECTION 10.04. INDENTURE REMAINS IN FULL FORCE AND EFFECT. Except as supplemented or amended hereby, all provisions in the Indenture shall remain in full force and effect.

SECTION 10.05. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together.

SECTION 10.06. CONFIRMATION AND PRESERVATION OF INDENTURE. The Indenture as supplemented or amended by this Supplemental Indenture is in all respects confirmed and preserved.

SECTION 10.07. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and thereto and their successors hereunder and thereunder and the Holders of the Senior Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Senior Notes.

SECTION 10.08. SUCCESSORS. All agreements of the Issuer and the Guarantors in this Supplemental Indenture shall bind their respective successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

SECTION 10.09. THE TRUSTEE. The Trustee shall not be responsible in any manner for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which are made by the Issuer and the Guarantors.

SECTION 10.10. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

SECTION 10.11. EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

SECTION 10.12. SEVERABILITY. If any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Supplemental Indenture or the Indenture shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-6-

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: /s/ Anthony R. Horton
   Name: Anthony R. Horton
   Title: Senior Vice President & Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

By: /s/ Anthony R. Horton
   Name: Anthony R. Horton
   Title: Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: /s/ Anthony R. Horton
   Name: Anthony R. Horton
   Title: Senior Vice President & Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: /s/ Kashif Asgha
   Name: Kashif Asgha
   Title: Senior Associate

[Signature Page to Third Supplemental Indenture]

EXECUTION VERSION

**FOURTH SUPPLEMENTAL INDENTURE**

Fourth Supplemental Indenture (this "Supplemental Indenture"), dated as of October 18, 2011, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A. (as successor to The Bank of New York), as Trustee (the "Trustee").

## WITNESSETH

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of October 31, 2007, as supplemented by the Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, and the Third Supplemental Indenture dated as of July 29, 2010 (collectively, the "Indenture"), providing for the issuance of the Issuer's 10.875% Senior Notes due 2017 (the "Senior Cash Pay Notes") and the Issuer's 11.250%/12.000% Senior Toggle Notes due 2017 (the "Initial Senior Toggle Notes" and, together with any increases in the aggregate principal amount thereof, or any Related PIK Notes with respect thereto, in each case in connection with any PIK Payment with respect thereto, and together with the Senior Cash Pay Notes, the "Initial Senior Notes");

WHEREAS, on October 31, 2007, the Issuer issued and sold the Initial Senior Notes;

WHEREAS, the Issuer desires to issue $53,096,000 aggregate principal amount of Additional Senior Toggle Notes on the date hereof (the "Additional Senior Toggle Notes");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Senior Toggle Notes by the Issuer, which Additional Senior Toggle Notes shall be consolidated with and form a single class with the Initial Senior Toggle Notes;

WHEREAS, Section 9.01 of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Senior Toggle Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture by the Issuer and the Guarantors and to make this Supplemental Indenture valid and binding on the Issuer and the Guarantors have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Additional Senior Toggle Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. ADDITIONAL SENIOR NOTES. Pursuant to this Supplemental Indenture, the Additional Senior Toggle Notes are hereby designated as "Additional Senior Toggle Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $53,096,000, which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Senior Notes. The Additional Senior Toggle Notes issued hereunder shall be treated as a single class with the Initial Senior Notes and the Initial Senior Toggle Notes for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Senior Notes" and "Senior Toggle Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the Additional Senior Toggle Notes. The Additional Senior Toggle Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of Exhibit A hereto. The terms and provisions of the Additional Senior Toggle Notes set forth in Exhibit A hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. GUARANTEES. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the Additional Senior Toggle Notes as set forth in Article 10 of the Indenture.

4. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

5. RATIFICATION, CONFIRMATION AND PRESERVATION OF INDENTURE. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the Additional Senior Toggle Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Senior Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

6. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the Additional Senior Toggle Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Additional Senior Toggle Notes.

-2-

8. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 10.06 of the Indenture.

9. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

10. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

11. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

12. SEVERABILITY. In case any provision in this Supplemental Indenture or the Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
    Name:
    Title:

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**, as Guarantor

By: _____
    Name:
    Title

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**, as Guarantor

By: _____
    Name:
    Title:

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee

By: _____
    Name:
    Title:

[Signature Page to Fourth Supplemental Indenture]

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
    Name:
    Title:

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**, as Guarantor

By: _____
    Name:
    Title

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**, as Guarantor

By: _____
    Name:
    Title:

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee

By: _____
    Name:  **Julie Hoffman-Ramos**
    Title:    **Vice President**

EXHIBIT A

[Form of Face of Senior Toggle Note]

THIS GLOBAL NOTE IS HELD BY THE DEPOSITARY (AS DEFINED IN THE INDENTURE GOVERNING THIS SENIOR NOTE) OR ITS NOMINEE IN CUSTODY FOR THE BENEFIT OF THE BENEFICIAL OWNERS HEREOF, AND IS NOT TRANSFERABLE TO ANY PERSON UNDER ANY CIRCUMSTANCES EXCEPT THAT (I) THE TRUSTEE MAY MAKE SUCH NOTATIONS HEREON AS MAY BE REQUIRED PURSUANT TO SECTION 2.06(h) OF THE INDENTURE, (II) THIS GLOBAL NOTE MAY BE EXCHANGED IN WHOLE BUT NOT IN PART PURSUANT TO SECTION 2.06(a) OF THE INDENTURE, (III) THIS GLOBAL NOTE MAY BE DELIVERED TO THE TRUSTEE FOR CANCELLATION PURSUANT TO SECTION 2.11 OF THE INDENTURE AND (IV) THIS GLOBAL NOTE MAY BE TRANSFERRED TO A SUCCESSOR DEPOSITARY WITH THE PRIOR WRITTEN CONSENT OF THE ISSUER.

UNLESS AND UNTIL IT IS EXCHANGED IN WHOLE OR IN PART FOR SENIOR NOTES IN DEFINITIVE FORM, THIS SENIOR NOTE MAY NOT BE TRANSFERRED EXCEPT AS A WHOLE BY THE DEPOSITARY TO A NOMINEE OF THE DEPOSITARY OR BY A NOMINEE OF THE DEPOSITARY TO THE DEPOSITARY OR ANOTHER NOMINEE OF THE DEPOSITARY OR BY THE DEPOSITARY OR ANY SUCH NOMINEE TO A SUCCESSOR DEPOSITARY OR A NOMINEE OF SUCH SUCCESSOR DEPOSITARY. UNLESS THIS CERTIFICATE IS PRESENTED BY AN AUTHORIZED REPRESENTATIVE OF THE DEPOSITORY TRUST COMPANY (55 WATER STREET, NEW YORK, NEW YORK) ("DTC") TO THE ISSUER OR ITS AGENT FOR REGISTRATION OF TRANSFER, EXCHANGE OR PAYMENT, AND ANY CERTIFICATE ISSUED IS REGISTERED IN THE NAME OF CEDE & CO. OR SUCH OTHER NAME AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC (AND ANY PAYMENT IS MADE TO CEDE & CO. OR SUCH OTHER ENTITY AS MAY BE REQUESTED BY AN AUTHORIZED REPRESENTATIVE OF DTC), ANY TRANSFER, PLEDGE OR OTHER USE HEREOF FOR VALUE OR OTHERWISE BY OR TO ANY PERSON IS WRONGFUL INASMUCH AS THE REGISTERED OWNER HEREOF, CEDE & CO., HAS AN INTEREST HEREIN.

THIS NOTE IS ISSUED WITH ORIGINAL ISSUE DISCOUNT FOR PURPOSES OF SECTION 1271 ET SEQ. OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED. A HOLDER MAY OBTAIN THE ISSUE PRICE, AMOUNT OF ORIGINAL ISSUE DISCOUNT, ISSUE DATE AND YIELD TO MATURITY FOR SUCH NOTES BY SUBMITTING A WRITTEN REQUEST FOR SUCH INFORMATION TO THE COMPANY AT THE FOLLOWING ADDRESS:   ENERGY FUTURE HOLDINGS CORP., 1601 BRYAN STREET, DALLAS, TEXAS 75201-3411, ATTENTION: GENERAL COUNSEL.

CUSIP 292690AJ4<br>
ISIN US292680AJ41

## GLOBAL NOTE

11.250%/12.000% Senior Toggle Notes due 2017

No. 001

### ENERGY FUTURE HOLDINGS CORP.

promises to pay to CEDE & CO. or registered assigns, the principal sum set forth on the

Schedule of Exchanges of Interests in the Global Note attached hereto on November 1, 2017.

Interest Payment Dates:  May 1 and November 1

Record Dates:  April 15 and October 15

IN WITNESS HEREOF, the Issuer has caused this instrument to be duly executed.

Dated: _____, _____

ENERGY FUTURE HOLDINGS CORP.

By: _____
Name:
Title:

This is one of the Senior Toggle Notes referred to in the within-mentioned Indenture:

THE BANK OF NEW YORK MELLON
TRUST COMPANY, N.A., as Trustee

By: _____
Authorized Signatory

Dated: _____, _____

A-3

[Back of Senior Toggle Note]

This Note is one of a duly authorized series of Notes of the Issuer designated as the "11.250%/12.000% Senior Toggle Notes due 2017" (the "Senior Toggle Notes"), originally issued in an aggregate principal amount of $2,500,000,000 on October 31, 2007 under the Indenture referred to below.

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

(1)    *INTEREST.*  Energy Future Holdings Corp., a Texas corporation (the "Issuer"), promises to pay interest on the principal amount of this Senior Toggle Note at a rate per annum set forth below from October 31, 2007 until maturity. The Issuer will pay interest semi-annually in arrears on May 1 and November 1 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "Interest Payment Date") without interest accruing on the amount then so payable from such day that is not a Business Day until such Business Day. Interest on the Senior Toggle Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from the date of issuance, which is October 18, 2011. The Issuer will pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at the interest rate on the Senior Toggle Notes; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest (without regard to any applicable grace periods) from time to time on demand at the interest rate on the Senior Toggle Notes. Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

Cash Interest on the Senior Toggle Notes will accrue at a rate of 11.250% per annum and be payable in cash. PIK Interest on the Senior Toggle Notes will accrue at a rate of 12.000% per annum and be payable (x) with respect to Senior Toggle Notes represented by one or more global notes registered in the name of, or held by, The Depository Trust Company ("DTC") or its nominee on the relevant Record Date, by increasing the principal amount of the outstanding global Senior Toggle Note by an amount equal to the amount of PIK Interest for the applicable interest period (rounded up to the nearest $1,000) (or, if necessary, pursuant to the requirements of DTC or otherwise, to authenticate new global Senior Toggle Notes executed by the Issuer with such increased principal amounts) and (y) with respect to Senior Toggle Notes represented by certificated notes, by issuing PIK Notes in certificated form in an aggregate principal amount equal to the amount of PIK Interest for the applicable period (rounded up to the nearest whole dollar), and the Trustee will, at the request of the Issuer, authenticate and deliver such PIK Notes in certificated form for original issuance to the Holders on the relevant Record Date, as shown by the records of the register of Holders. In the event that the Issuer elects to pay Partial PIK Interest for any interest period, each Holder will be entitled to receive Cash Interest in respect of 50% of the principal amount of the Senior Toggle Notes held by such Holder on the relevant Record Date and PIK Interest in respect of 50% of the principal amount of the Senior Toggle Notes held by such Holder on the relevant Record Date. Following an increase in the principal amount of the outstanding global Senior Toggle Notes as a result of a PIK Payment, the global Senior Toggle Notes will bear interest on such increased principal amount from and after the date of such PIK Payment. Any PIK Notes issued in certificated form will be dated as of the

A-4

applicable Interest Payment Date and will bear interest from and after such date. All Senior Toggle Notes issued pursuant to a PIK Payment will mature on November 1, 2017 and will be governed by, and subject to the terms, provisions and conditions of, the Indenture and shall have the same rights and benefits as the Senior Toggle Notes issued on the Issue Date. Any certificated PIK Notes will be issued with the description PIK on the face of such PIK Note.

At the end of any "accrual period" (as defined in Section 1272(a)(5) of the Code) ending after the fifth anniversary of the Issue Date (each, an "Optional Interest Repayment Date"), the Issuer may pay in cash, without duplication, all accrued and unpaid interest, if any, and all accrued but unpaid "original issue discount" (as defined in Section 1273(a)(1) of the Code) on the Senior Toggle Notes then outstanding up to the Optional Interest Repayment Amount (each such redemption, an "Optional Interest Repayment"). The "Optional Interest Repayment Amount" shall mean, as of each Optional Interest Repayment Date, the excess, if any, of (a) the aggregate amount of accrued and unpaid interest and all accrued and unpaid "original issue discount" (as defined in Section 1273(a)(1) of the Code) with respect to the applicable Senior Toggle Note, over (b) an amount equal to the product of (i) the "issue price" (as defined in Sections 1273(b) and 1274(a) of the Code) of the applicable Senior Toggle Note multiplied by (ii) the "yield to maturity" (as defined in the Treasury Regulation Section 1.1272-1(b)(1)(i)) of such Senior Toggle Note, minus (c) $50,000,000.

On May 1, 2017, the Issuer shall repay in full in U.S. Dollars an amount of Senior Toggle Notes equal to $50,000,000. Prepayments of Senior Toggle Notes made pursuant to the preceding sentence shall be made on a pro rata basis based on the aggregate principal amount of Senior Toggle Notes outstanding.

(2)    *METHOD OF PAYMENT.*  For any interest payment period after the interest payment period ended on May 1, 2008 and prior to November 1, 2012, the Issuer may, at its option, elect to pay interest on the Senior Toggle Notes:

(i)    entirely in cash ("Cash Interest");

(ii)    entirely by increasing the principal amount of the outstanding Senior Toggle Notes or by issuing PIK Notes ("PIK Interest"); or

(iii)    on 50% of the outstanding principal amount of the Senior Toggle Notes in cash and on 50% of the outstanding principal amount by increasing the principal amount of the outstanding Senior Toggle Notes or by issuing PIK Notes ("Partial PIK Interest").

The Issuer must elect the form of interest payment with respect to each interest period by delivering a notice to the Trustee prior to the beginning of such interest period; provided that the Issuer shall have been deemed to have timely provided such notice for the interest period ending on November 1, 2011, electing to pay interest on the Senior Toggle Notes entirely by increasing the principal amount of the outstanding Senior Toggle Notes or by issuing PIK Notes. The Trustee shall promptly deliver a corresponding notice to the Holder of this Senior Toggle Note. In the absence of such an election for any interest period, interest on this Senior Toggle Note shall be payable according to the election for the previous interest period. After November 1, 2012, the Issuer will make all interest payments on this Senior Toggle Note entirely in cash.

A-5

Notwithstanding anything to the contrary, the payment of accrued interest in connection with any redemption of Senior Toggle Notes as described under Section 3.07 of the Indenture shall be made solely in cash.

The Issuer will pay Cash Interest on the Senior Toggle Notes to the Persons who are registered Holders of Senior Toggle Notes at the close of business on the April 15 or October 15 (whether or not a Business Day), as the case may be, next preceding the Interest Payment Date, even if such Senior Toggle Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Payments of Cash Interest may be made by check mailed to the Holders at their addresses set forth in the register of Holders; provided that payment by wire transfer of immediately available funds will be required with respect to principal of and interest and premium, if any, on, all Global Notes and all other Senior Toggle Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent. Such payment shall be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

(3)    *PAYING AGENT AND REGISTRAR.* Initially, The Bank of New York Mellon Trust Company N.A., the Trustee under the Indenture, will act as Paying Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer or any of its Subsidiaries may act in any such capacity.

(4)    *INDENTURE.* The Issuer issued the Senior Toggle Notes under an Indenture, dated as of October 31, 2007 (as supplemented by the Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, and the Fourth Supplemental Indenture, dated as of October 18, 2011, the "Indenture"), among the Issuer, the Guarantors named therein and the Trustee. This Senior Toggle Note is one of a duly authorized issue of notes of the Issuer designated as its 11.250%/12.000% Senior Toggle Notes due 2017. The Issuer shall be entitled to issue Additional Senior Toggle Notes pursuant to Section 2.01 of the Indenture. The Senior Cash Pay Notes (including any Exchange Notes issued in exchange therefor) and the Senior Toggle Notes issued under the Indenture (including any Exchange Notes issued in exchange therefor) (collectively, referred to herein as the "Senior Notes") are separate series of Senior Notes, but shall be treated as a single class of securities under the Indenture, unless otherwise specified in the Indenture. The terms of the Senior Toggle Notes include those stated in the Indenture and those made part of the Indenture by reference to the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"). The Senior Toggle Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms. To the extent any provision of this Senior Toggle Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

(5)    *OPTIONAL REDEMPTION.*

(a) Except as set forth below, the Issuer shall not be entitled to redeem the Senior Toggle Notes at its option prior to November 1, 2012.

A-6

(b) At any time prior to November 1, 2012, the Issuer may redeem all or a part of the Senior Toggle Notes, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Senior Toggle Notes or otherwise in accordance with the procedures of DTC, at a redemption price equal to 100% of the principal amount of the Senior Toggle Notes redeemed plus the Applicable Premium, plus accrued and unpaid interest, if any, to the date of redemption (the "Redemption Date"), subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(c) From and after November 1, 2012, the Issuer may redeem the Senior Toggle Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Senior Toggle Notes or otherwise in accordance with the procedures of DTC, at the redemption prices (expressed as percentages of principal amount of the Senior Toggle Notes to be redeemed) set forth below, plus accrued and unpaid interest, if any, to the applicable Redemption Date, subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on November 1 of each of the years indicated below:

| Year | Percentage |
|---|---|
| 2012 | 105.625% |
| 2013 | 103.750% |
| 2014 | 101.875% |
| 2015 and thereafter | 100.000% |

(d) Prior to November 1, 2010, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of all Senior Toggle Notes at a redemption price equal to 111.250% of the aggregate principal amount thereof, plus accrued and unpaid interest, if any, to the applicable Redemption Date, subject to the right of Holders of Senior Toggle Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of one or more Equity Offerings; provided that at least 50% of the sum of the original aggregate principal amount of the Initial Senior Toggle Notes and any Additional Senior Toggle Notes issued under the Indenture after the Issue Date remain outstanding immediately after the occurrence of each such redemption; provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the related Equity Offering.

(e) If the Issuer redeems less than all of the outstanding Senior Toggle Notes, the Trustee shall select the Senior Toggle Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

(f) Any redemption pursuant to this paragraph 5 shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

A-7

(6)   *MANDATORY REDEMPTION.* Except as set forth under "Interest," the Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Senior Toggle Notes.

(7)   *NOTICE OF REDEMPTION.* Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed more than 60 days prior to a Redemption Date if the notice is issued in connection with Article 8 or Article 11 of the Indenture) to each Holder whose Senior Toggle Notes are to be redeemed at its registered address or otherwise in accordance with the procedures of DTC. Senior Toggle Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the Senior Toggle Notes held by a Holder are to be redeemed. On and after the Redemption Date interest ceases to accrue on Senior Toggle Notes or portions thereof called for redemption.

(8)   [Intentionally omitted]

(9)   *DENOMINATIONS, TRANSFER, EXCHANGE.* The Senior Toggle Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof. The transfer of Senior Toggle Notes may be registered and Senior Toggle Notes may be exchanged as provided in the Indenture. The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture. The Issuer need not exchange or register the transfer of any Senior Toggle Notes or portion of Senior Toggle Notes selected for redemption, except for the unredeemed portion of any Senior Toggle Notes being redeemed in part. Also, the Issuer need not exchange or register the transfer of any Senior Toggle Notes for a period of 15 days before a selection of Senior Toggle Notes to be redeemed.

(10)   *PERSONS DEEMED OWNERS.* The registered Holder of a Senior Toggle Note may be treated as its owner for all purposes.

(11)   *AMENDMENT, SUPPLEMENT AND WAIVER.* The Indenture, the Guarantees or the Senior Toggle Notes may be amended or supplemented as provided in the Indenture.

(12)   *DEFAULTS AND REMEDIES.* The Events of Default relating to the Senior Notes are defined in Section 6.01 of the Indenture. If any Event of Default occurs and is continuing, the Trustee or the Holders of at least 30% in aggregate principal amount of the then outstanding Senior Notes may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Senior Notes to be due and payable immediately. Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Senior Notes will become due and payable immediately without further action or notice. Holders may not enforce the Indenture, the Senior Notes or the Guarantees except as provided in the Indenture. Subject to certain limitations, Holders of a majority in aggregate principal amount of the then outstanding Senior Notes may direct the Trustee in its exercise of any trust or power. The Trustee may withhold from Holders of the Senior Notes notice of any continuing Default (except a Default relating to the payment of

principal, premium, if any, or interest) if it determines that withholding notice is in their interest. The Holders of a majority in aggregate principal amount of the then outstanding Senior Notes by notice to the Trustee may on behalf of the Holders of all of the Senior Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal of, premium, if any, or interest on, any of the Senior Notes held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five (5) Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

(13)    *AUTHENTICATION.*  This Senior Toggle Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

(14)    [Reserved]

(15)    *GOVERNING LAW.*  THE INDENTURE, THE SENIOR TOGGLE NOTES AND ANY GUARANTEE WILL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(16)    *CUSIP/ISIN NUMBERS.*  Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Senior Toggle Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Senior Toggle Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture. Requests may be made to the Issuer at the following address:

c/o Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.: (214) 812-6032
Attention: General Counsel
or
Facsimile No.: (214) 812-4097
Attention: Treasurer

A-9

## ASSIGNMENT FORM

To assign this Senior Toggle Note, fill in the form below:

(I) or (we) assign and transfer this Senior Toggle Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's Soc. Sec. or tax I.D. no.)

_____

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint

_____ to transfer this

Senior Toggle Note on the books of the Issuer.  The agent may substitute another to act for him.

Date: _____

Your Signature _____

(Sign exactly as your name appears on the
face of this Senior Toggle Note)

Signature Guarantee*:_____

\* Participant in a recognized Signature Guarantee Medallion Program (or other signature
guarantor acceptable to the Trustee).

A-10

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE

The initial outstanding principal amount of this Global Note is $53,096,000. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following each decrease or increase | Signature of authorized officer of Trustee or Custodian |
| --- | --- | --- | --- | --- |

027141-0016-11400-Active.12570639

## FIFTH SUPPLEMENTAL INDENTURE

Fifth Supplemental Indenture (this "Supplemental Indenture"), dated as of April 15, 2013, among Energy Future Holdings Corp. (formerly EFH2 Corp.), a Texas corporation (the "Company"), the Guarantors named on the signature page hereto and The Bank of New York Mellon Trust Company, N.A., a national banking association (successor as trustee to The Bank of New York Mellon (formerly known as The Bank of New York), a New York banking corporation), as Trustee (the "Trustee").

## WITNESSETH

WHEREAS, each of Energy Future Holdings Corp., a Texas corporation (the "Predecessor"), and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of October 31, 2007, as supplemented and amended by the Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010 and the Fourth Supplemental Indenture, dated as of October 18, 2011 (as so supplemented and amended, the "Indenture"), providing for the issuance of the Predecessor's 10.875% Senior Notes due 2017 (the "Senior Cash Pay Notes") and 11.250%/12.000% Senior Toggle Notes due 2017 (the "Senior Toggle Notes" and, together with any increase in the aggregate principal amount thereof, or any Related PIK Notes with respect thereto, in each case in connection with any PIK Payment with respect thereto, and together with the Senior Cash Pay Notes, the "Senior Notes");

WHEREAS, the Predecessor has contributed all of the capital stock of Energy Future Competitive Holdings Company to the Company, which contribution did not constitute the transfer of all or substantially all of the properties or assets of the Predecessor;

WHEREAS, on the date hereof, simultaneously with the effectiveness of this Supplemental Indenture, the Predecessor shall have merged with and into the Company, with the Company continuing its existence under the laws of the State of Texas, and the merger shall have become effective under the laws of the State of Texas;

WHEREAS, Section 5.01(a) of the Indenture provides, among other things, that the Predecessor shall not merge with or into any Person unless (1) the Successor Company (as defined in the Indenture), if other than the Predecessor, expressly assumes (i) all the obligations of the Predecessor under the Senior Notes and the Indenture pursuant to supplemental indentures or other documents or instruments in form reasonably satisfactory to the Trustee and (ii) the Registration Rights Agreement (as defined in the Indenture) and (2) each Guarantor shall have by supplemental indenture confirmed that its Guarantee shall apply to such Person's obligations under the Indenture, the Senior Notes and the Registration Rights Agreement;

WHEREAS, Section 5.02 of the Indenture provides that, upon any merger in accordance with Section 5.01 of the Indenture (other than as otherwise provided in Section 5.02), the successor corporation into or with which the Predecessor is merged shall succeed to, and be substituted for (so that from and after the date of such merger, the provisions of the Indenture referring to the "Issuer" shall refer instead to the successor corporation and not to the

Predecessor), and may exercise every right and power of, the Predecessor under the Indenture with the same effect as if such successor Person had been named as the "Issuer" in the Indenture;

WHEREAS, Section 9.01 of the Indenture provides that, without the consent of any Holders, the Company, the Guarantors and the Trustee may amend or supplement the Indenture, the Senior Notes or the Guarantees, at any time after the Issue Date, to comply with Section 5.01 of the Indenture or to provide for the assumption of the Predecessor's obligations to the Holders;

WHEREAS, the Company desires and has requested that the Trustee join in execution of this Supplemental Indenture for the purpose of evidencing such succession and assumption;

WHEREAS, each of the Company and the Guarantors has been duly authorized to enter into this Supplemental Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture a valid and binding instrument enforceable in accordance with its terms have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Senior Notes as follows:

### ARTICLE ONE

SECTION 1.01. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

### ARTICLE TWO

SECTION 2.01. REPRESENTATIONS OF THE COMPANY. The Company represents and warrants to the Trustee as follows:

(a) It is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas.

(b) The execution, delivery and performance by it of this Supplemental Indenture have been authorized and approved by all necessary corporate action on its part.

### ARTICLE THREE

SECTION 3.01. ASSUMPTIONS AND AGREEMENTS OF SUCCESSOR.

(a) In accordance with Section 5.01(a) of the Indenture, the Company hereby expressly assumes (i) all the obligations of the Predecessor under the Senior Notes and the Indenture and (ii) the Registration Rights Agreement.

(b) In accordance with Section 5.02 of the Indenture, the Company shall succeed to, and be substituted for (so that from and after the date of this Supplemental Indenture, the provisions of the Indenture referring to the "Issuer" shall refer instead to the Company and not to the Predecessor), and may exercise every right and power of, the Predecessor under the Indenture with the same effect as if the Company had been named the "Issuer" in the Indenture.

## ARTICLE FOUR

SECTION 4.01. CONFIRMATION OF GUARANTEES BY GUARANTORS. Each Guarantor hereby confirms that its Guarantee shall apply to the Company's obligations under the Indenture, the Senior Notes and the Registration Rights Agreement.

## ARTICLE FIVE

SECTION 5.01. EFFECTIVENESS OF SUPPLEMENTAL INDENTURE. This Supplemental Indenture shall be effective upon its execution and delivery by the parties hereto.

SECTION 5.02. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

SECTION 5.03. FULL FORCE AND EFFECT. Except as expressly supplemented hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Upon the execution and delivery of this Supplemental Indenture by the Company, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Company, the Guarantors, the Trustee and every Holder of Senior Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the Indenture, whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

SECTION 5.04. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together.

SECTION 5.05. CONFIRMATION AND PRESERVATION OF INDENTURE. The Indenture as supplemented by this Supplemental Indenture is in all respects confirmed and preserved.

SECTION 5.06. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and thereto and their successors hereunder and thereunder and the Holders of the Senior Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Senior Notes.

SECTION 5.07. SUCCESSORS. All agreements of the Company in this Supplemental Indenture shall bind its successors. All agreements of the Guarantors in this Supplemental Indenture shall bind their respective successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

SECTION 5.08. THE TRUSTEE. The Trustee shall not be responsible in any manner for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which are made by the Company or the Guarantors.

SECTION 5.09. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

SECTION 5.10. EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

SECTION 5.11. SEVERABILITY. If any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Supplemental Indenture or the Indenture shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____

Name: Anthony R. Horton
Title: Senior Vice President, Treasurer and
Assistant Secretary

**ENERGY FUTURE INTERMEDIATE HOLDING
COMPANY LLC**

By: _____

Name: Anthony R. Horton
Title: Senior Vice President and Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS
COMPANY LLC**

By: _____

Name: Anthony R. Horton
Title: Treasurer

**THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.**, as Trustee

By: _____

Name: Julie Hoffman-Ramos
Title: Vice-President

[Signature Page to EFH LBO Notes Fifth Supplemental Indenture]

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____

    Name: Anthony R. Horton
    Title: Senior Vice President, Treasurer and
    Assistant Secretary

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: _____

    Name: Anthony R. Horton
    Title: Senior Vice President and Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC**

By: _____

    Name: Anthony R. Horton
    Title: Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: _____

    Name: Julie Hoffman-Ramos
    Title: Vice-President

[Signature Page to EFH LBO Notes Fifth Supplemental Indenture]


**NIXON PEABODY**

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

**Erik Schneider**
*Associate*
T 617-345-1112
eschneider@nixonpeabody.com

100 Summer Street
Boston, MA  02110-2131
617-345-1000

October 22, 2014

### *VIA OVERNIGHT COURIER*

Energy Future Holdings Corp Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, New York 10017

### RE: *In re Energy Future Holdings Corp., et. al.* **(14-10979)(CSS) – Proofs of Claim for American Stock Transfer & Trust Company, LLC, as Indenture Trustee**

Dear Sir or Madame:

I have enclosed **eight (8) original proofs of claim** to be filed in the above referenced bankruptcy cases and eight (8) copies to be time-stamped and returned to me as follows:

| Case Number | Name of Debtor | Claimant |
|---|---|---|
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 5.55% Notes Due 2014 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 6.50% Notes Due 2024 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 6.55% Notes Due 2034 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 9.75% Notes Due 2019 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.00% Notes Due 2020 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.875% and 11.25/12.00% Notes Due 2017 |
| 14-11008 | Energy Future Intermediate Holding Company LLC | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.875% and 11.25/12.00% Notes Due 2017 |
| 14-11005 | Energy Future Competitive Holdings Company LLC | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.875% and 11.25/12.00% Notes Due 2017 |

From: (617) 345-1112    Origin ID: LWMA    **FedEx** Express    
Erik Schneider
Nixon Peabody, LLP
100 Summer Street

Boston, MA 02110



J142214092303uv

SHIP TO: (617) 345-1112    **BILL SENDER**
co Epiq Bankruptcy Solutions, LLC
Energy Future Holdings Corp Claims
757 Third Avenue, 3rd Floor

NEW YORK, NY 10017

Ship Date: 22OCT14
ActWgt: 10.0 LB    Dims: 15 X 12 X 10 IN
CAD: 101115893/INET3550

Delivery Address Bar Code

Ref #    CM/070802/000003/4691
Invoice #
PO #
Dept #

**THU - 23 OCT AA**
**STANDARD OVERNIGHT**

TRK#    7715 9053 3433
0201

**06 OGSA**

10017
NY-US
**EWR**





522G1/DF64/8AC9

/templates/components/dotcom_label_contents/Foldinstr/en/Folding_instructions.html loading...
/templates/components/dotcom_label_contents/WarningsOriginalLabel/en/Folding_warning.html loading .
/templates/components/dotcom_label_contents/TnCDom/us/en/TC_dom.html loading..

