## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: November 6, 2015 at 4:00 p.m.**<br>**Hearing Date: November 25, 2015 at 10:00 a.m.** |

### OBJECTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, TO PROOFS OF CLAIM 7476, 7482, AND 6734-6873 FILED BY AMERICAN STOCK TRANSFER & TRUST CO. AS INDENTURE TRUSTEE FOR THE EFH UNEXCHANGED NOTES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this partial objection (this "Objection") to the proofs of claim[2] (the "EFH Unexchanged Note

Claims") filed by American Stock Transfer & Trust Company, LLC (the "EFH Unexchanged

Notes Trustee"), as indenture trustee for the unsecured 9.75% Senior Notes due 2019 (the "EFH

9.75% Notes") and 10.00% Senior Notes due 2020 (the "EFH 10.00% Notes," and, collectively

with the EFH 9.75% Notes, the "EFH Unexchanged Notes") issued by Energy Future Holdings

Corp. ("EFH Corp.") to the extent the EFH Unexchanged Note Claims (a) assert an entitlement

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The EFH Unexchanged Notes Trustee filed Proof of Claim No. 7476, for the EFH 10.00% Notes (attached with its addendum as **Exhibit 1**), and Proof of Claim No. 7482, for the EFH 9.75% Notes (attached with its addendum as **Exhibit 2**), against EFH Corp.

The Trustee has also filed Proofs of Claim against each Debtor other than EFH Corp. to preserve alleged rights arising out of intercompany transfers (Proofs of Claim Nos. 6734-6873), an example of which is attached hereto with its addendum as **Exhibit 3** and the remainder of which are available on the website of the Debtors' claims and noticing agent set forth above or upon written request of Debtors' counsel.

to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts or (ii) postpetition interest (including default interest and interest on overdue interest payments); and (b) assert claims against the Debtors other than EFH Corp. In support of the Objection, the Debtors respectfully state as follows:

### Preliminary Statement

The Debtors object to the EFH Unexchanged Note Claims on the following bases.

*First*, the Debtors object to the EFH Unexchanged Note Claims to the extent that they seek allowance of a claim for a make-whole premium, redemption premium, no-call damages, or similar amounts. The Indentures contain an automatic acceleration clause at section 6.02 that is materially identical to the language in the EFIH 10% First Lien Indenture.[3] For the reasons the Court has already stated in its March 26, 2015, summary judgment decision, the holders of EFH Unexchanged Notes are not entitled to a make-whole premium. *See* Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) ("Summary Judgment Decision").

*Second*, the Debtors also object to the EFH Unexchanged Note Claims because they seek postpetition interest at the rate specified in the Indentures, postpetition interest at the default rate, and interest accruing on unpaid interest due as of the Petition Date. All three of these measures of postpetition interest are disallowed under section 502(b)(2) of the Bankruptcy Code as unmatured interest. Although courts have generally recognized an exception to this rule when the debtor is solvent, the Plan does not provide for any distribution on account of equity interests

---

[3] The "EFIH 10% First Lien Indenture" and the "EFIH 10% First Lien Notes" are the indenture and notes, respectively, at issue in the adversary proceeding No. 14-50363 and addressed in the Court's Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) and Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304 (July 8, 2015).

in EFH Corp. EFH Corp. therefore is not solvent within the meaning of the solvent-debtor exception. Even if the solvent-debtor exception were to apply in this instance, the majority view, and the more persuasive view, is that postpetition interest should be awarded only at the federal judgment rate, not at the contract rate. Accordingly, the EFH Unexchanged Note Claims for postpetition interest in excess of the federal judgment rate should be disallowed.

*Third*, the Debtors object to the EFH Unexchanged Note Claims to the extent they assert claims against Debtors other than EFH Corp., which is the only obligor under the EFH Unexchanged Notes, because the EFH Unexchanged Notes Trustee has failed to provide prima facie evidence to support such claims.

In further support of this Objection, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by the Court in connection with this Objection to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Objection are section 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and rules 3001, 3003, and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### The Parties

4.      EFH Corp. is a corporation organized under the laws of the State of Texas.  The other Debtors are affiliates of EFH Corp.  On April 29, 2014 (the "Petition Date"), the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for protection under chapter 11 of the United States Bankruptcy Code.

5.      The EFH Unexchanged Notes Trustee serves as the trustee pursuant to (a) that certain Indenture governing the issuance of 9.75% EFH Senior Notes due 2019, dated as of November 16, 2009, as amended and supplemented by the Supplemental Indenture, dated as of January 25, 2013, and the Second Supplemental Indenture, dated as of April 15, 2013, by and among EFH Corp., as issuer, and the Bank of New York Mellon Trust Company, N.A., the predecessor to the EFH Unsecured Notes Trustee (the "EFH 9.75% Notes Indenture"); and (b) that certain Indenture governing the issuance of 10.00% EFH Senior Notes due 2020, dated as of January 12, 2010, as amended and supplemented by the Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010 the Eighth Supplemental Indenture, dated as of January 25, 2013, and the Ninth Supplemental Indenture, dated as of April 15, 2013 by and among EFH Corp., as issuer, and the Bank of New York Mellon Trust Company, N.A., the predecessor to the EFH Unsecured Notes Trustee (the "EFH 10.00% Notes Indenture" and, collectively with the EFH 9.75% Notes Indenture, the "Indentures").

**Background**

6.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases (D.I. 849). Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions (D.I. 98) and in the Disclosure Statement for the Plan (D.I. 6124).

7.      The Debtors filed the Plan on September 21, 2015, and the Court has set the confirmation hearing to begin on November 3, 2015, and to continue on subsequent dates until completed (D.I. 5771).

**Proofs of Claim**

8.      On October 24, 2014, the EFH Unexchanged Notes Trustee filed Proofs of Claim Nos. 7476 and 7482 against EFH Corp., with supporting addenda attached thereto.[4]  Copies of these EFH Unexchanged Note Claims are attached as **Exhibits 1-2**, respectively.   The EFH Unexchanged Note Claims seek a minimum of approximately $5,783,542.50 "plus additional amounts due" against EFH Corp.   (Ex. 1, at 1-2; Ex. 2, at 1-2.)   The addenda to the EFH Unexchanged Note Claims state, in relevant part, that the EFH Unexchanged Notes Trustee seeks $5,559,000.00 in principal and $224,542.50 in prepetition accrued interest. *Id.*

9.      Moreover, each of the addenda asserts an entitlement to a make-whole premium and postpetition interest. *Id.* at 2-4.   Regarding a make-whole premium, the EFH Unexchanged Note Claims seek:

---

[4] The addendum attached to the Proof of Claim for the EFH 9.75% Notes specifies the categories of claims as set forth below.   Due to an apparent clerical error, the addendum attached to the Proof of Claim for the EFH 10.00% Notes is missing the relevant pages.   This Objection assumes the missing pages are materially the same as the applicable pages in the Proof of Claim for the EFH 9.75% Notes.

      iii.     <u>Other Charges (UNLIQUIDATED).</u>  All other interest, charges, make whole amounts, penalties, Applicable Premium (as defined in the Indenture), premiums, and advances which may be due or become due under the Notes and the Indenture . . .

(Ex. 1, at 3; Ex. 2, at 3.)

    10.    The EFH Unexchanged Note Claims seek the following measures of postpetition interest:

      i.     <u>Interest (UNLIQUIDATED)</u>.  The amount of interest accruing on the Notes from the Petition Date to the date of payment of the Notes, at the rates and in the manner set forth in the Notes and in the Indenture;

      ii.     <u>Other Interest (UNLIQUIDATED)</u>.  The default rate of interest, the amount of interest accruing on past-due installments of interest, all from and after the Petition Date to the date of payment of such interest, at the rates and in the manner set forth in the Notes and in the Indenture . . . .

(Ex. 1, at 2-3; Ex. 2, at 2-3.)

**<u>Relief Requested</u>**

    11.    By this Objection and pursuant to Bankruptcy Rule 3007, the Debtors request that the Court enter an order under Section 502 of the Bankruptcy Code, disallowing the EFH Unexchanged Note Claims to the extent they (a) assert an entitlement to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts or (ii) postpetition interest (including default interest and interest on overdue interest payments); and (b) assert claims against the Debtors other than EFH Corp. This Objection does not affect any other part of the EFH Unexchanged Note Claims, but EFH Corp. reserves its rights to file any future objections to the amounts remaining under the EFH Unexchanged Note Claims (the "Remaining Claims") and to otherwise contest the Remaining Claims.

### The EFH Unexchanged Note Claims

**A.     The Governing Indentures.**

12.     On November 16, 2009, EFH Corp. and The Bank of New York executed the Indenture pursuant to which EFH Corp. issued the EFH 9.75% Notes outstanding as of the Petition Date.   On January 12, 2010, EFH Corp. and the Bank of New York executed the Indenture pursuant to which EFH Corp. issued the EFH 10.00% Notes outstanding as of the Petition Date.

13.     The Indentures are governed by, and construed in accordance with, the laws of the State of New York. *See* Indentures § 13.08.

14.     The Indentures provide for the payment of an "Applicable Premium" upon an optional redemption of the EFH 9.75% Notes "[a]t any time prior to October 15, 2014" and an optional redemption of the EFH 10.00% Notes "[a]t any time prior to January 15, 2015." Indentures § 3.07(a).   The Indentures define "Applicable Premium" by a formula that discounts future interest payments, subject to a floor.   Indentures § 1.01.    As of the filing date of this Objection, EFH Corp. has not repaid the EFH Unexchanged Notes.

15.     The EFH Unexchanged Notes also provide that from and after the dates specified in section 3.07(a), set forth above, EFH Corp. may voluntarily "redeem" the notes at certain "redemption prices," specified as a percentage of principal amount ("Optional Redemption Price").   Indentures § 3.07(d).   The Optional Redemption Price on both the EFH 9.75% Notes and the EFH 10.00% Notes is in each case above 100% through 2016.

16.     Like the EFIH 10% First Lien Indenture,[5] section 6.01(a) of the Indentures defines "Event of Default" and includes at subsections (6) and (7) certain definitions of an Event

---

[5] The "EFIH 10% First Lien Indenture" and the "EFIH 10% First Lien Notes" are the indenture and notes, respectively, at issue in the adversary proceeding No. 14-50363 and addressed in the Court's

of Default that relate to insolvency and bankruptcy, including the filing of a bankruptcy petition. (*See* Indentures § 6.01(a)(6)(i) (defining an event of default to include EFH Corp.'s "commenc[ing] proceedings to be adjudicated bankrupt or insolvent").)

17.    Also like the EFIH 10% First Lien Indenture, section 6.02 of the Indentures defines "Acceleration" and specifies:

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all outstanding Notes shall be due and payable immediately without further action or notice.[6]

18.    Notably, section 6.02 does not expressly require the payment of a makewhole premium. It does not reference the detailed, 90-plus-word makewhole formula—the "Applicable Premium"—found elsewhere in the Indentures, nor does it reference the "redemption price" that the Indentures set forth in section 3.07. It does not even contain the word "premium," "penalty," or "damages." And it does not mention any of the clauses in section 3.07, which is the only provision in the Indentures that provides for an Applicable Premium.

19.    The Indentures also provide for postpetition interest:

> The Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to the then applicable interest rate on the Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest (without regard to any applicable grace period) at the same rate to the extent lawful.

(Indentures § 4.01.)

---

Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015) and Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304 (July 8, 2015).

[6] This language in the EFH Unexchanged Notes Indentures is identical to that in the EFIH 10% First Lien Indenture.

**B.      The Court's March 26, 2015 Summary Judgment Decision.**

20.      The Court issued its Summary Judgment Decision in the adversary proceeding regarding the EFIH 10% First Lien Notes on March 26, 2015. That Decision held, in relevant part, that "[t]he plain language of the [EFIH First Lien] Indenture does not require payment of an Applicable Premium upon a repayment of the Notes, following an acceleration under section 6.02 of the Indentures, arising from a default for the commencement of 'proceeding to be adjudicated bankrupt or insolvent' under section 6.01(a)(6)(i) of the Indenture." (Summary Judgment Decision ¶¶ 8(a).)

21.      As stated above, the applicable language in Section 6.02 of the EFIH 10% First Lien Notes Indenture is identical to Section 6.02 of the EFH Unexchanged Notes Indentures.

**C.      The Plan of Reorganization.**

22.      The Plan proposes to pay "the principal amount outstanding, plus accrued but unpaid prepetition interest," on the EFH Unexchanged Note Claims against EFH Corp. Plan, Art. III.B.5. The Plan does not propose to pay any claim for a make-whole premium on the EFH Unexchanged Notes. *Id.* Additionally, the Plan proposes to pay "accrued postpetition interest at the Federal Judgment Rate." *Id.* The Plan does not provide for any other postpetition interest. *See id.*[7]

<u>**Objection**</u>

23.      A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper." *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.)*, 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and

---

[7] The Plan does, however, provide for a reserve for payment of interest on the EFH Unexchanged Notes at their respective contract rates, except to the extent such claims are allowed by Final Order (as defined in the Plan) or disallowed by the Court, in each case on or before the Plan's effective date. Plan, Art. VII.K.

1107(a).  Section 502(b) provides that the Court shall allow claims except to the extent: "(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; [or] (2) such claim is for unmatured interest."  11 U.S.C. § 502(b)(1), (2).

24.    The burden of proof for determining the validity of claims rests on different parties at different stages of the objection process.  As explained by the United States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times.  Initially, the claimant must allege facts sufficient to support the claim.  If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid [citations omitted].  In other words, a claim that alleges facts sufficient to support legal liability to the claimant satisfies the claimants' initial obligation to go forward.  The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. . . .  In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.   If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted).  Once the *prima facie* validity of a Claim is rebutted, "it is for the claimant to prove his claim, not for the objector to disprove it."  *In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).

## A.    No Make-Whole Premium Is Owed

25.    The plain terms of the Indentures do not provide for a make-whole or other redemption premium after acceleration of the EFH Unexchanged Notes.

1.    **The Indentures' Plain Text Controls and Demonstrates That Neither an Applicable Premium Nor an Optional Redemption Price Is Owed.**

26.    The Indentures, like the EFIH 10% First Lien Indenture, are unambiguous. (Summary Judgment Decision ¶ 42.)  New York law requires that the Court not look "outside the four corners of a complete document to determine what the parties intended." (*Id.* at ¶ 42 (citing *W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990); *R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002)).)

27.    Neither the Applicable Premium nor the Optional Redemption Price is owed because the repayment of the EFH Unexchanged Notes will not be an optional redemption.  The Indentures provide that an "Event of Default" occurs if EFH "commences proceedings to be adjudicated bankrupt or insolvent."    (Indentures § 6.01(a)(6)(i).)    The Debtors filed for chapter 11 protection on April 29, 2014, unquestionably triggering an Event of Default.  Under the plain language of the Indentures, this bankruptcy-induced Event of Default automatically accelerated the EFH Unexchanged Notes' maturity date to the Petition Date.  As section 6.02 of the Indentures provides, "in the case of an Event of Default arising" as a result of the Debtors' bankruptcy filing, the EFH Unexchanged Notes "***shall be due and payable immediately without further action or notice***" (emphasis added).

28.    Moreover, for EFH Corp. to optionally redeem the debt, it must provide the holders of the EFH Unexchanged Notes with "at least 30 days but not more than 60 days" notice. (Indentures § 3.03.)  This stands in contrast to the automatic acceleration the parties specifically negotiated, which contemplates no notice at all:  upon the Debtors' bankruptcy filing, the EFH Unexchanged Notes became "due and payable immediately without further action or notice." (Indentures § 6.02.)  The Debtors have never delivered any kind of optional redemption notice to the EFH Unexchanged Notes Trustee.

29.    The parties to the Indentures could have expressly referenced the Applicable Premium or Optional Redemption Price as being payable in the event of an automatic acceleration, but they chose not to do so.  Instead, the parties to the Indentures negotiated and included a detailed formula for calculating a possible "Applicable Premium," (Indentures § 1.01), and a specific schedule for the payment of an Optional Redemption Price, (Indentures § 3.07(d)).  And, by the express terms of those provisions, the Applicable Premium or the Optional Redemption Price is owed only upon an optional redemption voluntarily made by EFH Corp., which did not and will not occur here.  Indeed, nothing in the Indentures suggests that either the Applicable Premium or the Optional Redemption Price is owed in any circumstance outside of an optional redemption voluntarily made by EFH Corp. under section 3.07.

30.    In short, repayment of automatically accelerated debt under the Indentures is neither optional nor voluntary and therefore does not implicate section 3.07 of the Indentures and does *not* trigger an Applicable Premium or the Optional Redemption Price.

### 2.    This Court's March 26, 2015 Summary Judgment Decision Mandates the Same Result.

31.    The Indentures are identical in every material way to the EFIH 10% First Lien Indenture, and the Court's Summary Judgment Decision and reasoning should apply here to reach the same result—that no make-whole or other redemption premium is owed after a bankruptcy-caused automatic acceleration.

32.    The Indentures contain an acceleration clause at section 6.02 that is identical to the same provision in the EFIH 10% First Lien Indenture.  (*See* Summary Judgment Decision ¶ 45.)  Just like the EFIH First Lien Indenture, there is no reference in section 6.02 to the defined term, Applicable Premium, nor is there any reference to "redemption price," nor is section 3.07 incorporated into section 6.02.  (*See id.* at ¶ 46.)

33.    As this Court held, "[b]ecause the Indenture does not specify that the Applicable Premium is owed after automatic acceleration, the Applicable Premium is not owed." (*See id.* at ¶ 51.) So too with the Optional Redemption Prices in sections 3.07(d) of the Indentures; because section 6.02 does not expressly provide for paying these additional amounts, they are not owed. The acceleration clause in the Indentures therefore is not specific enough to require paying either the Applicable Premium or the Optional Redemption Price.

34.    The EFH Unexchanged Note Claims should also be denied to the extent they seek to recover on account of "damages" or "causes of action" for "no call" damages or violation of the so-called "perfect tender rule." No such claim can be sustained for the reasons provided in the Court's Summary Judgment Decision, which denied identical claims based on identical or materially identical contract language. *See* Summary Judgment Decision ¶ 8.

**B.    The EFH Unsecured Noteholders Are Not Entitled To Postpetition Interest.**

35.    The EFH Unexchanged Note Claims also seek "interest accruing on the Notes from the Petition Date to the date of payment of the Notes, at the rates and in the manner set forth in the Notes and in the Indenture." (Ex. 1, at 2-3; Ex. 2, at 2-3.)

36.    Section 502(b)(2) of the Bankruptcy Code disallows claims for interest on unsecured debt that comes due on or after the Petition Date. Thus, the general rule is that unsecured creditors are not entitled to postpetition interest. *In re Wash. Mut., Inc.*, 461 B.R. 200, 241 (Bankr. D. Del. 2011), *vacated in unrelated part*, No. 08-12229, 2012 WL 1563880 (Bankr. D. Del. Feb. 24, 2012). Courts, however, have created an exception to this general rule where debtors are solvent. *Id.* at 241.

37.    The only relevant statutory basis for awarding postpetition interest to an unsecured creditor is through section 726(a)(5). Under the "best interests of creditors" requirement for confirmation of a chapter 11 plan, a creditor must receive at least as much as it

would were the debtor being liquidated in chapter 7. *See* 11 U.S.C. § 1129(a)(7); *see Wash.*

*Mut.*, 461 B.R. at 241. Unsecured creditors in chapter 7 are entitled to interest "at the legal rate"

before shareholders receive any distribution. *Id.* (citing 11 U.S.C. § 726(a)(5), (6)). As a result,

when a debtor is solvent—*i.e.*, "before shareholders receive any distribution"—courts have held

that postpetition interest can be awarded on unsecured debts at "the legal rate." *Id.* at 241.

38.    Here, shareholders of EFH Corp. will not receive any distribution under the Plan.

EFH Corp. therefore is not solvent for the purposes of this exception because the implied

chapter 7 "waterfall" under section 726(a) for distribution of value would never reach equity.

39.    But even if EFH Corp. is "solvent" (it is not) and the Court were to apply the

solvent-debtor exception, "the better view is that the federal judgment rate is the appropriate rate

to be applied under section 726(a)(5), rather than the contract rate."[8] *Wash. Mut.*, 461 B.R. at

242. A majority of courts that have considered the issue have agreed with this view. *See, e.g.,*

*Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234-36 (9th Cir. 2002); *In re W.R.*

*Grace & Co.*, 475 B.R. 34, 200 (D. Del. 2012), *aff'd*, 729 F.3d 332 (3d Cir. 2013) ("The majority

approach taken by most courts today is the federal judgment rate approach."); *see also* 6 *Collier*

*on Bankruptcy* ¶ 726.02[5] (16th ed. 2015).

40.    The majority view is also the best view of section 726(a)(5) for a number of

reasons. ***First***, the statute provides for interest at "*the* legal rate," not *a* legal rate. The definite

article "the" in a statute is a term of limitation referring to a particular item whereas "a" is an

indefinite article that generalizes its object. *See Cardelucci*, 285 F.3d at 1234. Here, the word

"the" denotes that Congress intended for a single uniform rate of interest to apply. *See Wash.*

---

[8] Specifically, the federal judgment rate of interest is the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System the week immediately before the Petition Date, compounded annually. *See* 28 U.S.C. § 1961.

*Mut.*, 461 B.R. at 242; 6 *Collier* ¶ 726.02[5].  Further, if the Code intended for bankruptcy courts

to apply *any* legal rate, then surely Congress would not have to caution bankruptcy courts to

apply only "legal" rates and to avoid applying illegal ones.  *See In re Dow Corning Corp.*, 237

B.R. 380, 404-05 (Bankr. E.D. Mich. 1999) ("*Dow I*").[9]  If such caution were necessary, the rest

of the Code would need to contain similar admonishments.  *Id.* at 405.

41.     ***Second***, based on both dictionary definitions and 100 years of case law, one court

has persuasively explained that the "legal rate of interest" means "a rate of interest fixed by

statute."  *See Dow I*, 237 B.R. at 400-02.  "[H]ad Congress intended contract rates to apply, it

presumably would have used language other than 'the legal rate,' a term that typically refers to a

statutory rate."  6 *Collier* ¶ 726.02[5].  For example, Congress could have, but did not, simply

provide for "interest" to be paid, or it could have incorporated the concept of an "agreement" as

it did when it provided for secured creditors to receive postpetition interest under section 506(b).

*See In re Godsey*, 134 B.R. 865, 866 (Bankr. M.D. Tenn. 1991).  In fact, in drafting the

applicable Code provision, Congress struck draft language that provided generically for "interest

on claims allowed" and inserted the more specific "interest at the legal rate."  *Cardelucci*, 285

F.3d at 1234.  Congress's decision to strike the version of this provision suggesting *any* interest

rate in favor of the current version, which points to a specific interest rate, is further evidence

that Congress did not intend for the contract rate of interest to apply.  *Id.*

---

[9] In *Dow I* the bankruptcy court held that, in a solvent debtor chapter 11 case, section 1129(a)(7), via section 726(a)(5), required paying unsecured creditors the federal judgment rate of interest.  In *In re Dow Corning Corp.*, 244 B.R. 678, 687-93, 696 (Bankr. E.D. Mich. 1999) ("*Dow II*"), the bankruptcy court also ruled that in solvent debtor chapter 11 cases courts should consider the contract rate of interest when applying the absolute priority rule under § 1129(b), and award postpetition interest at the contract rate, but not the default rate.  The Sixth Circuit in *In re Dow Corning Corp.*, 456 F.3d 668, 677-80 (6th Cir. 2006) ("*Dow III*") affirmed this reasoning, but remanded for an assessment whether awarding the default rate of interest was equitable under the circumstances of that case.  EFIH respectfully disagrees with *Dow II* and *Dow III*.

42.     *Third*, legal policy supports holding that the best interpretation of "the legal rate" is the federal judgment rate.  Applying a single, federal rate to claims, entitlement to which is a matter of federal law, promotes uniformity among federal courts and within federal law.[10] *Cardelucci*, 284 F.3d at 1235.  Further, postpetition interest is analogous to an award of post-judgment interest.  *Id.*; *In re Chiapetta*, 159 B.R. 152, 161 (Bankr. E.D. Pa. 1993) ("[A] claim is like a judgment entered at the time of the bankruptcy filing . . . ."); *In re Melenyzer*, 143 B.R. 829, 833 (Bankr. W.D. Tex. 1992) (same).  And federal courts award post-judgment interest as a matter of federal procedural law, even if the cause of action arises under state law.  *Norman v. Elkin*, 726 F. Supp. 2d 464, 479 (D. Del. 2010) ("Federal courts sitting in diversity must apply federal law, rather than state law, in determining post-judgment interest.").  Courts have also explained that a single, uniform rate will promote fairness among creditors because certain creditors will not, by happenstance of state law or contract rights, receive a "disproportionate share of any remaining assets to the detriment of other unsecured creditors."  *Cardelucci*, 285 F.3d at 1235-36.  Additionally, applying one uniform rate is judicially efficient and reduces the administrative burden on courts and parties, who avoid having to use different interest rates to calculate postpetition interest owed potentially to multiple unsecured creditors.  *Id.* at 1236.  In sum, the best textual reading of "the legal rate" is the federal judgment rate.

43.     Accordingly, the holders of EFH Unexchanged Notes are not entitled to interest in any amount greater than the federal judgment rate.  Thus, the EFH Unexchanged Note Claims

---

[10] At least one other bankruptcy court in Delaware has stated that the federal judgment rate approach is generally the correct approach, citing *Washington Mutual* and *W.R. Grace*. Hr'g Tr. at 21:8:16, 37:1-9, *In re AgFeed USA, LLC*, No. 13-11761 (Bankr. D. Del. Nov. 4, 2014) (Shannon, J.) (Doc. 1557) ("I believe that the federal judgment rate is, in fact, controlling here. While there may be flexibility or a measure of discretion as the Case Law teaches, I do not see a specific reason in a case such as this to deviate from that. Particularly, when I am talking about the determination of impairment, I believe that consistent treatment is particularly important.").

should be partially disallowed to the extent they seek interest greater than the federal judgment rate.

**C.      The EFH Unexchanged Note Claims Against Debtors Other Than EFH Corp. Should Be Disallowed.**

44.      In addition to its claims against EFH Corp., the EFH Unexchanged Notes Trustee also filed Proofs of Claim against each Debtor other than EFH Corp. "in order to provide notice and preserve all claims, causes of action, rights and remedies . . . that it may have as a creditor against [the] Debtors . . . arising out of any intercompany transfers, . . . including without limitation all preferential transfers, fraudulent transfers, and *quantum meruit* and unjust enrichment claims." Proofs of Claim Nos. 6734-6873.

45.      But EFH Corp. is the only obligor under the EFH Unexchanged Notes. And the EFH Unexchanged Notes Trustee has not alleged any facts sufficient to support claims against Debtors that are not parties to the Indentures. Thus, the EFH Unexchanged Notes Trustee has failed to meet its burden to establish *prima facie* evidence of these claims. *See, e.g.*, *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173-74 (3d. Cir. 1992) (affirming claim disallowance due to creditor's failure to make a *prima facie* case). The Court should thus disallow the EFH Unexchanged Note Claims against Debtors other than EFH Corp.

## Conclusion

46.      For the foregoing reasons, the Debtors respectfully request that the Court enter an order disallowing the EFH Unexchanged Note Claims to the extent provided in this Objection.

## Reservation of Rights

47.      Nothing contained in this Objection or any actions taken by EFH Corp. or the other Debtors is intended or should be construed as:  (a) an admission as to the validity of any portion of the EFH Unexchanged Note Claims; (b) a waiver of any Debtor's rights to dispute the

EFH Unexchanged Note Claims on any grounds; (c) a promise or requirement to pay the EFH Unexchanged Note Claims; (d) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (e) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (f) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (g) an admission that any contract or lease is integrated with any other contract or lease.

### Notice

48.    The Debtors shall provide notice of this Objection on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75%

EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:  (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

49.     No prior request for the precise relief sought in this Objection has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

Dated: October 23, 2015
   Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:         collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:         edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:         james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession