**[Form of Reverse of Note]**

This Note is one of a duly authorized series of Notes of the Issuer designated as the "10.000% Senior Secured Notes due 2020" (the "Notes"), originally issued in an aggregate principal amount of $500,000,000 on January 12, 2010, and, as a result of the further issuance of $34,000,000 aggregate principal amount of Notes on March 16, 2010 and a further issuance of $10,609,000 aggregate principal amount of Notes on April 13, 2010, now issued in an aggregate principal amount of $544,609,000, under the Indenture referred to below.

Capitalized terms used herein shall have the meanings assigned to them in the Indenture referred to below unless otherwise indicated.

(1)    *INTEREST.* Energy Future Holdings Corp., a Texas corporation (the "Issuer"), promises to pay interest on the principal amount of this Note at 10.000% per annum from January 12, 2010 until maturity and shall pay Additional Interest, if any, payable pursuant to the Registration Rights Agreement referred to below. The Issuer will pay interest and Additional Interest, if any, semi-annually in arrears on January 15 and July 15 of each year, or if any such day is not a Business Day, on the next succeeding Business Day (each, an "Interest Payment Date") without interest accruing on the amount then so payable from such day that is not a Business Day until such Business Day. Interest on the Notes will accrue from the most recent date to which interest has been paid or, if no interest has been paid, from and including January 12, 2010. The Issuer will pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal and premium, if any, from time to time on demand at the interest rate on the Notes; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest and Additional Interest, if any (without regard to any applicable grace periods) from time to time on demand at the interest rate on the Notes. Interest will be computed on the basis of a 360-day year comprised of twelve 30-day months.

(2)    *METHOD OF PAYMENT.* The Issuer will pay interest on the Notes and Additional Interest, if any, to the Persons who are registered Holders of Notes at the close of business on the January 1 or July 1 (whether or not a Business Day), as the case may be, next preceding the Interest Payment Date, even if such Notes are canceled after such Record Date and on or before such Interest Payment Date, except as provided in Section 2.12 of the Indenture with respect to defaulted interest. Payment of interest and Additional Interest, if any, may be made by check mailed to the Holders at their addresses set forth in the register of Holders; provided that payment by wire transfer of immediately available funds will be required with respect to principal, premium, if any, and interest and Additional Interest, if any, on, all Global Notes and all other Notes the Holders of which shall have provided wire transfer instructions to the Issuer or the Paying Agent. Such payment shall be in such coin or currency of the United States of America as at the time of payment is legal tender for payment of public and private debts.

(3)    *PAYING AGENT AND REGISTRAR.* Initially, The Bank of New York Mellon Trust Company, N.A., the Trustee under the Indenture, will act as Paying Agent and Registrar. The Issuer may change any Paying Agent or Registrar without notice to the Holders. The Issuer or any of its Subsidiaries may act in any such capacity.

(4)    *INDENTURE.* The Issuer issued the Notes under an Indenture, dated as of January 12, 2010 (the "Original Indenture"), as supplemented by the First Supplemental Indenture, dated as of March 16, 2010, and the Second Supplemental Indenture, dated as of April 13, 2010 (together with the Original Indenture as it may be amended or supplemented from time to time in accordance with its terms, the "Indenture"), among the Issuer, the Guarantors named therein and the Trustee. The Issuer shall be entitled to issue Additional Notes pursuant to Sections 2.01, 4.09 and 4.12 of the Indenture. The terms of the Notes include those stated in the Indenture and those made part of the Indenture by reference to the

Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"). The Notes are subject to all such terms, and Holders are referred to the Indenture and such Act for a statement of such terms. To the extent any provision of this Note conflicts with the express provisions of the Indenture, the provisions of the Indenture shall govern and be controlling.

(5)    *OPTIONAL REDEMPTION.*

(a)    Except as set forth below, the Issuer will not be entitled to redeem Notes at its option prior to January 15, 2015.

(b)    At any time prior to January 15, 2015, the Issuer may redeem all or a part of the Notes, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Notes or otherwise in accordance with procedures of DTC, at a redemption price equal to 100% of the principal amount of the Notes redeemed plus the Applicable Premium, plus accrued and unpaid interest, and Additional Interest, if any, to the date of redemption (the "Redemption Date"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

(c)    From and after January 15, 2015, the Issuer may redeem the Notes, in whole or in part, upon not less than 30 nor more than 60 days' prior notice mailed by first class mail to the registered address of each Holder of Notes or otherwise in accordance with procedures of DTC, at the redemption prices (expressed as percentages of principal amount of the Notes to be redeemed) set forth below, plus accrued and unpaid interest and Additional Interest, if any, to the applicable Redemption Date, subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, if redeemed during the twelve-month period beginning on January 15 of each of the years indicated below:

| Year | Percentage |
|------|-----------|
| 2015 | 105.000% |
| 2016 | 103.333% |
| 2017 | 101.667% |
| 2018 and thereafter | 100.000% |

(d)    Prior to January 15, 2013, the Issuer may, at its option, on one or more occasions, redeem up to 35% of the aggregate principal amount of all Notes at a redemption price equal to 110.000% of the aggregate principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the Redemption Date, subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date, with the net cash proceeds of one or more Equity Offerings; provided that at least 50% of the sum of the original aggregate principal amount of Initial Notes and any Additional Notes issued under the Indenture after the Issue Date remains outstanding immediately after the occurrence of each such redemption; provided further that each such redemption occurs within 90 days of the date of closing of each such Equity Offering. Notice of any redemption upon any Equity Offerings may be given prior to the redemption thereof, and any such redemption or notice may, at the Issuer's discretion, be subject to one or more conditions precedent, including, but not limited to, completion of the related Equity Offering.

(e)    If the Issuer redeems less than all of the outstanding Notes, the Trustee shall select the Notes to be redeemed in the manner described under Section 3.02 of the Indenture.

A-4

(f)    Any redemption pursuant to this paragraph (5) shall be made pursuant to the provisions of Sections 3.01 through 3.06 of the Indenture.

(6)    *MANDATORY REDEMPTION.*    The Issuer shall not be required to make mandatory redemption or sinking fund payments with respect to the Notes.

(7)    *NOTICE OF REDEMPTION.*    Subject to Section 3.03 of the Indenture, notice of redemption will be mailed by first-class mail at least 30 days but not more than 60 days before the Redemption Date (except that redemption notices may be mailed more than 60 days prior to a Redemption Date if the notice is issued in connection with Article 8 or Article 12 of the Indenture) to each Holder whose Notes are to be redeemed at its registered address or otherwise in accordance with the procedures of DTC. Notes in denominations larger than $2,000 may be redeemed in part but only in whole multiples of $1,000 in excess thereof, unless all of the Notes held by a Holder are to be redeemed. On and after the Redemption Date interest ceases to accrue on Notes or portions thereof called for redemption.

(8)    *OFFERS TO REPURCHASE.*

(a)    If a Change of Control occurs, the Issuer shall make an offer (a "Change of Control Offer") to each Holder to purchase all or any part (equal to $2,000 or an integral multiple of $1,000 in excess thereof) of each Holder's Notes at a purchase price equal to 101% of the aggregate principal amount thereof plus accrued and unpaid interest and Additional Interest, if any, to the date of purchase (the "Change of Control Payment"), subject to the right of Holders of Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date. The Change of Control Offer shall be made in accordance with Section 4.14 of the Indenture.

(b)    If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale (other than an Asset Sale of Collateral or other Oncor-related Assets), within 10 Business Days of each date that the aggregate amount of Excess Proceeds exceeds $200.0 million, the Issuer and/or any of its Restricted Subsidiaries shall make an offer to all Holders of the Notes, and if required or permitted by the terms of any Senior Indebtedness, to the holders of such Senior Indebtedness (an "Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such Senior Indebtedness that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture. To the extent that the aggregate amount of Notes, and such Senior Indebtedness tendered pursuant to an Asset Sale Offer is less than the Excess Proceeds, the Issuer and/or any of its Restricted Subsidiaries may use any remaining Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture. If the aggregate principal amount of Notes or such Senior Indebtedness surrendered by such holders thereof exceeds the amount of Excess Proceeds, the Notes and such Senior Indebtedness will be purchased on a pro rata basis based on the accreted value or principal amount of the Notes or such Senior Indebtedness tendered.

(c)    The Issuer and/or any of its Restricted Subsidiaries may, at its/their option, make an Asset Sale Offer using proceeds from any Asset Sale at any time after consummation of such Asset Sale (other than an Asset Sale of Collateral or other Oncor-related Assets); provided that such Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million. Upon consummation of such Asset Sale Offer, any Net Proceeds not required to be used to purchase Notes shall not be deemed Excess Proceeds.

(d)    If the Issuer or any of its Restricted Subsidiaries consummates an Asset Sale of Collateral or other Oncor-related Assets, within 10 Business Days of each date that the aggregate amount of Collateral Excess Proceeds exceeds $200.0 million, the Issuer and/or any of its Restricted Subsidiaries

shall make an offer to all Holders of the Notes and, if required or permitted by the terms of any Parity Lien Debt, to the holders of such Parity Lien Debt (a "Collateral Asset Sale Offer"), to purchase the maximum aggregate principal amount of the Notes and such Parity Lien Debt that is a minimum of $2,000 or an integral multiple of $1,000 in excess thereof that may be purchased out of the Collateral Excess Proceeds at an offer price in cash in an amount equal to 100% of the principal amount thereof, plus accrued and unpaid interest and Additional Interest, if any, to the date fixed for the closing of such offer, in accordance with the procedures set forth in the Indenture.  To the extent that the aggregate amount of Notes and such Parity Lien Debt tendered pursuant to a Collateral Asset Sale Offer is less than the Collateral Excess Proceeds, the Issuer and/or any of its Restricted Subsidiaries may use any remaining Collateral Excess Proceeds for general corporate purposes, subject to other covenants contained in the Indenture and the terms of such Parity Lien Debt.  If the aggregate principal amount of Notes or the Parity Lien Debt surrendered by such holders thereof exceeds the amount of Collateral Excess Proceeds, the Notes and such Parity Lien Debt will be purchased on a pro rata basis based on the accreted value or principal amount of the Notes or such Parity Lien Debt tendered.

(e)     The Issuer and/or any of its Restricted Subsidiaries may, at its/their option, make a Collateral Asset Sale Offer using proceeds from any Asset Sale of Collateral or other Oncor-related Assets at any time after consummation of such Asset Sale; *provided* that such Collateral Asset Sale Offer shall be in an aggregate amount of not less than $25.0 million.  Upon consummation of such Collateral Asset Sale Offer, any Net Proceeds not required to be used to purchase Notes shall not be deemed Collateral Excess Proceeds and the Issuer and its Restricted Subsidiaries may use any remaining Net Proceeds for general corporate purposes, subject to the other covenants contained in the Indenture.

(9)     *DENOMINATIONS, TRANSFER, EXCHANGE.*  The Notes are in registered form without coupons in denominations of $2,000 and integral multiples of $1,000 in excess thereof.  The transfer of Notes may be registered and Notes may be exchanged as provided in the Indenture.  The Registrar and the Trustee may require a Holder, among other things, to furnish appropriate endorsements and transfer documents and the Issuer may require a Holder to pay any taxes and fees required by law or permitted by the Indenture.  The Issuer need not exchange or register the transfer of any Notes or portion of Notes selected for redemption, except for the unredeemed portion of any Notes being redeemed in part.  Also, the Issuer need not exchange or register the transfer of any Notes for a period of 15 days before a selection of Notes to be redeemed.

(10)     *PERSONS DEEMED OWNERS.*  The registered Holder of a Note may be treated as its owner for all purposes.

(11)     *AMENDMENT, SUPPLEMENT AND WAIVER.*  The Indenture, the Guarantees or the Notes may be amended or supplemented as provided in the Indenture.

(12)     *DEFAULTS AND REMEDIES.*  The Events of Default relating to the Notes are defined in Section 6.01 of the Indenture.  If any Event of Default occurs and is continuing, the Trustee or the Holders of at least 30% in aggregate principal amount of the then outstanding Notes may declare the principal, premium, if any, interest and any other monetary obligations on all the then outstanding Notes to be due and payable immediately.  Notwithstanding the foregoing, in the case of an Event of Default arising from certain events of bankruptcy or insolvency, all outstanding Notes will become due and payable immediately without further action or notice.  Holders may not enforce the Indenture, the Notes or the Guarantees except as provided in the Indenture.  Subject to certain limitations, Holders of a majority in aggregate principal amount of the then outstanding Notes may direct the Trustee in its exercise of any trust or power.  The Trustee may withhold from Holders of the Notes notice of any continuing Default (except a Default relating to the payment of principal, premium, if any, interest or Additional Interest, if any) if it determines that withholding notice is in their interest.  The Holders of a

majority in aggregate principal amount of the then outstanding Notes by notice to the Trustee may on behalf of the Holders of all of the Notes waive any existing Default or and its consequences under the Indenture except a continuing Default in payment of the principal, premium, if any, interest or Additional Interest, if any, on, any of the Notes held by a non-consenting Holder. The Issuer and each Guarantor (to the extent that such Guarantor is so required under the Trust Indenture Act) is required to deliver to the Trustee annually a statement regarding compliance with the Indenture, and the Issuer is required within five Business Days after becoming aware of any Default, to deliver to the Trustee a statement specifying such Default and what action the Issuer proposes to take with respect thereto.

(13)    *AUTHENTICATION.* This Note shall not be entitled to any benefit under the Indenture or be valid or obligatory for any purpose until authenticated by the manual signature of the Trustee.

(14)    *ADDITIONAL RIGHTS OF HOLDERS OF RESTRICTED GLOBAL NOTES AND RESTRICTED DEFINITIVE NOTES.* In addition to the rights provided to Holders of Notes under the Indenture, Holders of Restricted Global Notes and Restricted Definitive Notes shall have all the rights set forth in the registration rights letter agreement, dated as of April 13, 2010, among the Issuer, the Guarantors named therein and the other parties named on the signature pages thereof (the "Registration Rights Agreement"), including the right to receive Additional Interest, if any (as defined in the Registration Rights Agreement).

(15)    *GOVERNING LAW.* THE INDENTURE, THE NOTES AND THE GUARANTEES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

(16)    *CUSIP/ISIN NUMBERS.* Pursuant to a recommendation promulgated by the Committee on Uniform Security Identification Procedures, the Issuer has caused CUSIP/ISIN numbers to be printed on the Notes and the Trustee may use CUSIP/ISIN numbers in notices of redemption as a convenience to Holders. No representation is made as to the accuracy of such numbers either as printed on the Notes or as contained in any notice of redemption and reliance may be placed only on the other identification numbers placed thereon.

The Issuer will furnish to any Holder upon written request and without charge a copy of the Indenture, the Registration Rights Agreement and/or the Security Documents. Requests may be made to the Issuer at the following address:

Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201-3411
Facsimile No.: (214) 812-6032
Attention: General Counsel
And
Facsimile No.:  (214) 812-4097
Attention: Treasurer

## ASSIGNMENT FORM

To assign this Note, fill in the form below:

(I) or (we) assign and transfer this Note to: _____

(Insert assignee's legal name)

_____

(Insert assignee's Soc. Sec. or tax I.D. no.)

_____

_____

_____

_____

(Print or type assignee's name, address and zip code)

and irrevocably appoint _____
to transfer this Note on the books of the Issuer. The agent may substitute another to act for him.

Date: _____

Your Signature _____

(Sign exactly as your name appears on the<br>face of this Note)

Signature Guarantee*:_____

\* Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

## OPTION OF HOLDER TO ELECT PURCHASE

If you want to elect to have this Note purchased by the Issuer pursuant to Section 4.10(d), 4.10(h) or 4.14 of the Indenture, check the appropriate box below:

☐ Section 4.10(d)          ☐ Section 4.10(h)          ☐ Section 4.14

If you want to elect to have only part of this Note purchased by the Issuer pursuant to Section 4.10(d), 4.10(h) or Section 4.14 of the Indenture, state the amount you elect to have purchased:

$_____

Date: _____          Your Signature: _____
                               (Sign exactly as your name appears on the face of this Note)

                               Tax Identification No.: _____

Signature Guarantee*: _____

\*      Participant in a recognized Signature Guarantee Medallion Program (or other signature guarantor acceptable to the Trustee).

027141-0016-11635-Active.11994027

## SCHEDULE OF EXCHANGES OF INTERESTS IN THE GLOBAL NOTE

The initial outstanding principal amount of this Global Note is $10,609,000. The following exchanges of a part of this Global Note for an interest in another Global Note or for a Definitive Note, or exchanges of a part of another Global or Definitive Note for an interest in this Global Note, have been made:

| Date of Exchange | Amount of decrease in Principal Amount | Amount of increase in Principal Amount of this Global Note | Principal Amount of this Global Note following each decrease or increase | Signature of authorized officer of Trustee or Custodian |
| --- | --- | --- | --- | --- |

027141-0016-11635-Active.11994027

Exhibit 4(b)

## THIRD SUPPLEMENTAL INDENTURE

Third Supplemental Indenture (this "Supplemental Indenture"), dated as of April 14, 2010, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A., as Trustee (the "Trustee").

## WITNESSETH

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010 (the "Original Indenture"), providing for the issuance of $500,000,000 in aggregate principal amount of 10.000% Senior Secured Notes due 2020 on the Issue Date (the "Initial Notes"), a First Supplemental Indenture, dated as of March 16, 2010 (the "First Supplemental Indenture"), providing for the issuance of $34,000,000 in aggregate principal amount of Additional Notes on March 16, 2010 (the "March Additional Notes"), a Second Supplemental Indenture, dated as of April 13, 2010 (the "Second Supplemental Indenture"), providing for the issuance of $10,609,000 in aggregate principal amount of Additional Notes on April 13, 2010 (the "First April Additional Notes") and an unlimited aggregate principal amount of Additional Notes subsequent to the Issue Date;

WHEREAS, on January 12, 2010, the Company issued and sold the Initial Notes;

WHEREAS, the Company desires to issue $55,041,000 aggregate principal amount of Additional Notes on the date hereof (the "New Additional Notes");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Notes by the Issuer, which Additional Notes shall be consolidated with and form a single class with the Initial Notes, the March Additional Notes and the First April Additional Notes;

WHEREAS, Section 9.01(9) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the New Additional Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. New Additional Notes. Pursuant to this Supplemental Indenture, the New Additional Notes are hereby designated as "Additional Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $55,041,000, which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Notes, the March Additional Notes and the First April Additional Notes. The New Additional Notes issued hereunder shall be treated as a single class with the Initial Notes, the March Additional Notes and the First April Additional Notes for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the New Additional Notes. The New Additional Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of _Exhibit A_ hereto. The terms and provisions of the New Additional Notes set forth in _Exhibit A_ hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. Guarantees. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the New Additional Notes as set forth in Article 11 of the Indenture.

4. Governing Law. This Supplemental Indenture shall be governed by, and construed in accordance with, the laws of the State of New York.

5. Ratification, Confirmation and Preservation of Indenture. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the New Additional Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

6. Indenture and Supplemental Indenture Construed Together. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. Benefits of Supplemental Indenture. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the New Additional Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the New Additional Notes.

-2-

8. CONFLICT WITH TRUST INDENTURE ACT. If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control. If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

9. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 of the Indenture.

10. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

11. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

13. SEVERABILITY. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-3-

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By:     /s/ Anthony R. Horton

         Name:      Anthony R. Horton
         Title:       Senior Vice President and
                     Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY,** as Guarantor

By:     /s/ Anthony R. Horton

         Name:      Anthony R. Horton
         Title:       Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC,** as Guarantor

By:     /s/ Anthony R. Horton

         Name:      Anthony R. Horton
         Title:       Senior Vice President and
                     Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By:     /s/ Rafael Martinez

         Name:      Rafael Martinez
         Title:       Senior Associate

[Signature Page to Third Supplemental Indenture]

Exhibit 4(e)

## FOURTH SUPPLEMENTAL INDENTURE

Fourth Supplemental Indenture (this "Supplemental Indenture"), dated as of May 21, 2010, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A., as Trustee (the "Trustee").

## WITNESSETH

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010 (the "Original Indenture"), providing for the issuance of $500,000,000 in aggregate principal amount of 10.000% Senior Secured Notes due 2020 on the Issue Date (the "Initial Notes"), a First Supplemental Indenture, dated as of March 16, 2010 (the "First Supplemental Indenture"), providing for the issuance of $34,000,000 in aggregate principal amount of Additional Notes on March 16, 2010 (the "March Additional Notes"), a Second Supplemental Indenture, dated as of April 13, 2010 (the "Second Supplemental Indenture"), providing for the issuance of $10,609,000 in aggregate principal amount of Additional Notes on April 13, 2010 (the "First April Additional Notes"), a Third Supplemental Indenture, dated as of April 14, 2010 (the "Third Supplemental Indenture"), providing for the issuance of $55,041,000 in aggregate principal amount of Additional Notes on April 14, 2010 (the "Second April Additional Notes") and an unlimited aggregate principal amount of Additional Notes subsequent to the Issue Date;

WHEREAS, on January 12, 2010, the Company issued and sold the Initial Notes;

WHEREAS, the Company desires to issue $6,444,000 aggregate principal amount of Additional Notes on the date hereof (the "New Additional Notes");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Notes by the Issuer, which Additional Notes shall be consolidated with and form a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes and the Second April Additional Notes;

WHEREAS, Section 9.01(9) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the New Additional Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. NEW ADDITIONAL NOTES. Pursuant to this Supplemental Indenture, the New Additional Notes are hereby designated as "Additional Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $6,444,000, which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Notes, the March Additional Notes, the First April Additional Notes and the Second April Additional Notes. The New Additional Notes issued hereunder shall be treated as a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes and the Second April Additional Notes for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the New Additional Notes. The New Additional Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of _Exhibit A_ hereto. The terms and provisions of the New Additional Notes set forth in _Exhibit A_ hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. GUARANTEES. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the New Additional Notes as set forth in Article 11 of the Indenture.

4. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

5. RATIFICATION, CONFIRMATION AND PRESERVATION OF INDENTURE. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the New Additional Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

6. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the New Additional Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the New Additional Notes.

-2-

8. CONFLICT WITH TRUST INDENTURE ACT. If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control. If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

9. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 of the Indenture.

10. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

11. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

13. SEVERABILITY. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-3-

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: /s/ Anthony R. Horton

Name:     Anthony R. Horton
Title:      Senior Vice President and Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**, as Guarantor

By: /s/ Anthony R. Horton

Name:     Anthony R. Horton
Title:      Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC,** as Guarantor

By: /s/ Anthony R. Horton

Name:     Anthony R. Horton
Title:      Senior Vice President and Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: /s/ Julie Hoffman-Ramos

Name:     Julie Hoffman-Ramos
Title:      Senior Associate

[Signature Page to Fourth Supplemental Indenture]

Exhibit 4(d)

### FIFTH SUPPLEMENTAL INDENTURE

Fifth Supplemental Indenture (this "Supplemental Indenture"), dated as of July 2, 2010, among Energy Future Holdings Corp., a Texas corporation (the "Issuer "), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A., as Trustee (the "Trustee").

### WITNESSETH

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010 (the " Original Indenture "), providing for the issuance of $500,000,000 in aggregate principal amount of 10.000% Senior Secured Notes due 2020 on the Issue Date (the " Initial Notes "), a First Supplemental Indenture, dated as of March 16, 2010 (the " First Supplemental Indenture "), providing for the issuance of $34,000,000 in aggregate principal amount of Additional Notes on March 16, 2010 (the " March Additional Notes "), a Second Supplemental Indenture, dated as of April 13, 2010 (the " Second Supplemental Indenture "), providing for the issuance of $10,609,000 in aggregate principal amount of Additional Notes on April 13, 2010 (the " First April Additional Notes "), a Third Supplemental Indenture, dated as of April 14, 2010 (the " Third Supplemental Indenture "), providing for the issuance of $55,041,000 in aggregate principal amount of Additional Notes on April 14, 2010 (the " Second April Additional Notes "), a Fourth Supplemental Indenture, dated as of May 21, 2010 (the " Fourth Supplemental Indenture "), providing for the issuance of $6,444,000 in aggregate principal amount of Additional Notes on May 21, 2010 (the " May Additional Notes ") and an unlimited aggregate principal amount of Additional Notes subsequent to the Issue Date;

WHEREAS, on January 12, 2010, the Company issued and sold the Initial Notes;

WHEREAS, the Company desires to issue $411,562,000 aggregate principal amount of Additional Notes on the date hereof (the "New Additional Notes ");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Notes by the Issuer, which Additional Notes shall be consolidated with and form a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes and the May Additional Notes;

WHEREAS, Section 9.01(9) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the New Additional Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. NEW ADDITIONAL NOTES. Pursuant to this Supplemental Indenture, the New Additional Notes are hereby designated as "Additional Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $411,562,000, which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes and the May Additional Notes. The New Additional Notes issued hereunder shall be treated as a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes and the May Additional Notes for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the New Additional Notes. The New Additional Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of _Exhibit A_ hereto. The terms and provisions of the New Additional Notes set forth in _Exhibit A_ hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. GUARANTEES. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the New Additional Notes as set forth in Article 11 of the Indenture.

4. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

5. RATIFICATION, CONFIRMATION AND PRESERVATION OF INDENTURE. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the New Additional Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

-2-

6. INDENTUREAND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. BENEFITSOF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the New Additional Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the New Additional Notes.

8. CONFLICTWITH TRUST INDENTURE ACT. If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control. If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

9. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 of the Indenture.

10. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

11. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

13. SEVERABILITY. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-3-

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: /s/ Anthony R. Horton

    Name:      Anthony R. Horton
    Title:       Senior Vice President and
                   Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY , as Guarantor**

By: /s/ Anthony R. Horton

    Name:      Anthony R. Horton
    Title:       Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC, as Guarantor**

By: /s/ Anthony R. Horton

    Name:      Anthony R. Horton
    Title:       Senior Vice President and
                   Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Trustee**

By: /s/ Julie Hoffman-Ramos

    Name:      Julie Hoffman-Ramos
    Title:       Senior Associate

[Signature Page to Fifth Supplemental Indenture]

Exhibit 4(e)

### SIXTH SUPPLEMENTAL INDENTURE

Sixth Supplemental Indenture (this "Supplemental Indenture"), dated as of July 6, 2010, among Energy Future Holdings Corp., a Texas corporation (the " Issuer "), the Guarantors named on the signature pages hereto (the " Guarantors ") and The Bank of New York Mellon Trust Company, N.A., as Trustee (the " Trustee ").

### WITNESSETH

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010 (the " Original Indenture "), providing for the issuance of $500,000,000 in aggregate principal amount of 10.000% Senior Secured Notes due 2020 on the Issue Date (the " Initial Notes "), a First Supplemental Indenture, dated as of March 16, 2010 (the " First Supplemental Indenture "), providing for the issuance of $34,000,000 in aggregate principal amount of Additional Notes on March 16, 2010 (the " March Additional Notes "), a Second Supplemental Indenture, dated as of April 13, 2010 (the " Second Supplemental Indenture "), providing for the issuance of $10,609,000 in aggregate principal amount of Additional Notes on April 13, 2010 (the " First April Additional Notes "), a Third Supplemental Indenture, dated as of April 14, 2010 (the " Third Supplemental Indenture "), providing for the issuance of $55,041,000 in aggregate principal amount of Additional Notes on April 14, 2010 (the " Second April Additional Notes "), a Fourth Supplemental Indenture, dated as of May 21, 2010 (the " Fourth Supplemental Indenture "), providing for the issuance of $6,444,000 in aggregate principal amount of Additional Notes on May 21, 2010 (the " May Additional Notes "), a Fifth Supplemental Indenture, dated as of July 2, 2010 (the " Fifth Supplemental Indenture "), providing for the issuance of $411,562,000 in aggregate principal amount of Additional Notes on July 2, 2010 (the " First July Additional Notes ") and an unlimited aggregate principal amount of Additional Notes subsequent to the Issue Date;

WHEREAS, on January 12, 2010, the Company issued and sold the Initial Notes;

WHEREAS, the Company desires to issue $8,351,000 aggregate principal amount of Additional Notes on the date hereof (the "New Additional Notes ");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Notes by the Issuer, which Additional Notes shall be consolidated with and form a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes, the May Additional Notes and the First July Additional Notes;

WHEREAS, Section 9.01(9) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the New Additional Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. NEW ADDITIONAL NOTES. Pursuant to this Supplemental Indenture, the New Additional Notes are hereby designated as "Additional Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $8,351,000, which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes, the May Additional Notes and the First July Additional Notes. The New Additional Notes issued hereunder shall be treated as a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes, the May Additional Notes and the First July Additional Notes for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the New Additional Notes. The New Additional Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of _Exhibit A hereto. The terms and provisions of the New Additional Notes set forth in _Exhibit A_ hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. GUARANTEES. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the New Additional Notes as set forth in Article 11 of the Indenture.

4. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURESHALLBEGOVERNEDBY, ANDCONSTRUEDINACCORDANCE WITH , THE LAWS OF THE STATE OF NEW YORK .

5. RATIFICATION, CONFIRMATIONAND PRESERVATIONOF INDENTURE. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the New Additional Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

-2-

6. INDENTUREAND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. BENEFITSOF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the New Additional Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the New Additional Notes.

8. CONFLICTWITH TRUST INDENTURE ACT. If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control. If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

9. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 of the Indenture.

10. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

11. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

13. SEVERABILITY. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-3-

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _/s/ Anthony R. Horton_

Name:     Anthony R. Horton

Title:     Senior Vice President and Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**, as Guarantor

By: _/s/ Anthony R. Horton_

Name:     Anthony R. Horton

Title:     Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**, as Guarantor

By: _/s/ Anthony R. Horton_

Name:     Anthony R. Horton

Title:     Senior Vice President and Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee

By: _/s/ Julie Hoffman-Ramos_

Name:     Julie Hoffman-Ramos

Title:     Senior Associate

[Signature Page to Sixth Supplemental Indenture]

Exhibit 4(f)

### SEVENTH SUPPLEMENTAL INDENTURE

Seventh Supplemental Indenture (this "Supplemental Indenture"), dated as of July 7, 2010, among Energy Future Holdings Corp., a Texas corporation (the "Issuer"), the Guarantors named on the signature pages hereto (the "Guarantors") and The Bank of New York Mellon Trust Company, N.A., as Trustee (the "Trustee").

### WITNESSETH

WHEREAS, each of the Issuer and the Guarantors has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010 (the "Original Indenture"), providing for the issuance of $500,000,000 in aggregate principal amount of 10.000% Senior Secured Notes due 2020 on the Issue Date (the "Initial Notes"), a First Supplemental Indenture, dated as of March 16, 2010 (the "First Supplemental Indenture"), providing for the issuance of $34,000,000 in aggregate principal amount of Additional Notes on March 16, 2010 (the "March Additional Notes"), a Second Supplemental Indenture, dated as of April 13, 2010 (the "Second Supplemental Indenture"), providing for the issuance of $10,609,000 in aggregate principal amount of Additional Notes on April 13, 2010 (the "First April Additional Notes"), a Third Supplemental Indenture, dated as of April 14, 2010 (the "Third Supplemental Indenture"), providing for the issuance of $55,041,000 in aggregate principal amount of Additional Notes on April 14, 2010 (the "Second April Additional Notes"), a Fourth Supplemental Indenture, dated as of May 21, 2010 (the "Fourth Supplemental Indenture"), providing for the issuance of $6,444,000 in aggregate principal amount of Additional Notes on May 21, 2010 (the "May Additional Notes"), a Fifth Supplemental Indenture, dated as of July 2, 2010 (the "Fifth Supplemental Indenture"), providing for the issuance of $411,562,000 in aggregate principal amount of Additional Notes on July 2, 2010 (the "First July Additional Notes"), a Sixth Supplemental Indenture, dated as of July 6, 2010 (the "Sixth Supplemental Indenture"), providing for the issuance of $8,351,000 in aggregate principal amount of Additional Notes on July 6, 2010 (the "Second July Additional Notes") and an unlimited aggregate principal amount of Additional Notes subsequent to the Issue Date;

WHEREAS, on January 12, 2010, the Company issued and sold the Initial Notes;

WHEREAS, the Company desires to issue $33,535,000 aggregate principal amount of Additional Notes on the date hereof (the "New Additional Notes");

WHEREAS, Section 2.01(d) of the Indenture provides for the issuance from time to time of Additional Notes by the Issuer, which Additional Notes shall be consolidated with and form a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes, the May Additional Notes, the First July Additional Notes and the Second July Additional Notes;

WHEREAS, Section 9.01(9) of the Indenture provides that the Issuer, the Guarantors and the Trustee may amend or supplement the Indenture at any time after the Issue Date without the consent of any Holder to provide for the issuance of Additional Notes;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture valid and binding have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the New Additional Notes as follows:

1. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

2. NEW ADDITIONAL NOTES. Pursuant to this Supplemental Indenture, the New Additional Notes are hereby designated as "Additional Notes" under the Indenture, and are being originally issued by the Issuer on the date hereof in an aggregate principal amount of $33,535,000, which shall increase the aggregate principal amount of, and shall be consolidated and form a single series with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes, the May Additional Notes, the First July Additional Notes and the Second July Additional Notes. The New Additional Notes issued hereunder shall be treated as a single class with the Initial Notes, the March Additional Notes, the First April Additional Notes, the Second April Additional Notes, the May Additional Notes, the First July Additional Notes and the Second July Additional Notes for all purposes under the Indenture, including, without limitation, for purposes of waivers, amendments, redemptions and offers to purchase. Unless the context requires otherwise, references to "Notes" for all purposes under the Indenture, as supplemented by this Supplemental Indenture, shall include the New Additional Notes. The New Additional Notes shall be issued in global form in minimum denominations of $2,000 and integral multiples of $1,000 in excess thereof in substantially the form of _Exhibit A_ hereto. The terms and provisions of the New Additional Notes set forth in _Exhibit A_ hereto shall constitute and are expressly made a part of this Supplemental Indenture.

3. GUARANTEES. The Guarantors hereby confirm, jointly and severally, that their respective Guarantees as Guarantors under the Indenture shall apply to the obligations of the Issuer under the New Additional Notes as set forth in Article 11 of the Indenture.

4. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH , THE LAWS OF THE S TATE OF N EW Y ORK .

5. RATIFICATION, CONFIRMATION AND PRESERVATION OF INDENTURE. Except as expressly supplemented hereby, the Indenture continues in full force and effect and is in all respects confirmed, ratified and preserved and the provisions thereof shall be applicable to the New Additional Notes and this Supplemental Indenture. Upon the execution and delivery of this Supplemental Indenture by the Issuer, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Issuer, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be

bound hereby. Any and all references to the "Indenture," whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

6. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together for all purposes.

7. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and their successors hereunder, and the Holders of the New Additional Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the New Additional Notes.

8. CONFLICT WITH TRUST INDENTURE ACT. If any provision of this Supplemental Indenture limits, qualifies or conflicts with any provision of the Trust Indenture Act that is required under the Trust Indenture Act to be part of and govern any provision of this Supplemental Indenture, the provision of the Trust Indenture Act shall control. If any provision of this Supplemental Indenture modifies or excludes any provision of the Trust Indenture Act that may be so modified or excluded, the provision of the Trust Indenture Act shall be deemed to apply to the Indenture as so modified or to be excluded by this Supplemental Indenture, as the case may be.

9. SUCCESSORS. All agreements of the Issuer in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors. All agreements of each Guarantor in this Supplemental Indenture shall bind its successors, except as otherwise provided in Section 11.06 of the Indenture.

10. THE TRUSTEE. The Trustee makes no representations as to the validity or sufficiency of this Supplemental Indenture. The statements and recitals herein are deemed to be those of the Issuer and the Guarantors, as applicable, and not of the Trustee.

11. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

12. HEADINGS, ETC. The headings of the Sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part of this Supplemental Indenture and shall in no way modify or restrict any of the terms or provisions hereof.

13. SEVERABILITY. In case any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

-3-

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed and attested, all as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By:    /s/ Paul M. Keglevic

    Name:    Paul M. Keglevic
    Title:    Executive Vice President
        and Chief Financial
        Officer

**ENERGY FUTURE COMPETITIVE HOLDINGS
COMPANY , as Guarantor**

By:    /s/ Paul M. Keglevic

    Name:    Paul M. Keglevic
    Title:    Executive Vice President
        and Chief Financial
        Officer

**ENERGY FUTURE INTERMEDIATE HOLDING
COMPANY LLC, as Guarantor**

By:    /s/ Paul M. Keglevic

    Name:    Paul M. Keglevic
    Title:    Executive Vice President
        and Chief Financial
        Officer

**THE BANK OF NEW YORK MELLON TRUST COMPANY,
N.A ., as Trustee**

By:    /s/ Julie Hoffman-Ramos

    Name:    Julie Hoffman-Ramos
    Title:    Senior Associate

[Signature Page to Seventh Supplemental Indenture]

## EIGHTH SUPPLEMENTAL INDENTURE

Eighth Supplemental Indenture (this "Supplemental Indenture"), dated as of January 25, 2013, among Energy Future Holdings Corp., a Texas corporation (the "Company"), Energy Future Intermediate Holding Company LLC, a Delaware limited liability company ("EFIH"), Energy Future Competitive Holdings Company, a Texas corporation (together with EFIH, the "Guarantors"), and The Bank of New York Mellon Trust Company, N.A., a national banking association, as Trustee (the "Trustee").

## WITNESSETH

WHEREAS, the Company and the Guarantors have heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010, as supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010 and the Seventh Supplemental Indenture, dated as of July 7, 2010 (as so supplemented, the "Indenture"), providing for the issuance of the Company's 10.000% Senior Secured Notes due 2020 (the "Notes");

WHEREAS, Section 9.02 of the Indenture provides that, (i) with the consent of the Holders of at least a majority in aggregate principal amount of the Notes then outstanding voting as a single class, the Company, the Guarantors and the Trustee may amend or supplement the Indenture and the Notes, and (ii) with the consent of the Holders of at least 66⅔% in aggregate principal amount of the Notes then outstanding voting as a single class, the Company, the Guarantors and the Trustee may amend or supplement the Security Documents relating to the Notes and the provisions of the Indenture to modify such documents to release all or substantially all of the Collateral securing the Notes;

WHEREAS, the Company has solicited consents upon the terms and subject to the conditions set forth in the offering memorandum and consent solicitation statement dated December 21, 2012 (the "Offering Memorandum") and in the related Consent and Letter of Transmittal from each Holder of the Notes to the amendments to the Indenture set forth below in Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven, Article Eight, Article Nine, Article Ten, Article Eleven and Article Twelve of this Supplemental Indenture (the "Proposed Amendments");

WHEREAS, the Company has received the consents from Holders of approximately 99.71% in aggregate principal amount of the outstanding Notes to the Proposed Amendments;

WHEREAS, the Company has delivered to the Trustee an Officer's Certificate as well as an Opinion of Counsel to the effect that the execution of this Supplemental Indenture is authorized or permitted under the Indenture and that all conditions precedent and covenants provided for in the Indenture relating to the execution and delivery of this Supplemental Indenture have been satisfied and complied with;

WHEREAS, the Board of Directors of the Company has authorized the execution of this Supplemental Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture by the Company and the Guarantors and to make this Supplemental Indenture valid and binding on the Company and the Guarantors have been complied with or have been done or performed; and

WHEREAS, pursuant to Sections 9.02 and 9.06 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Notes as follows:

## ARTICLE ONE

SECTION 1.01. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

## ARTICLE TWO

SECTION 2.01. AMENDMENT TO THE TABLE OF CONTENTS. The Table of Contents of the Indenture is amended by deleting the titles to Sections 4.05, 4.06, 4.07, 4.08, 4.09, 4.10, 4.11, 4.12, 4.13, 4.14, 4.15, 4.16, 4.17, 4.18, 4.19, 4.20, 4.21, 10.01, 10.02, 10.03, 10.04, 10.05, 10.06, 10.07, 10.08, 10.09, 10.10, 10.11, 10.12 and 10.13 and Exhibits E and F and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE THREE

SECTION 3.01. AMENDMENT TO CERTAIN PROVISIONS IN ARTICLE 1. Section 1.01 of the Indenture is amended by deleting the definition of "Unrestricted Subsidiary" in its entirety and inserting in lieu thereof the following text:

"["Unrestricted Subsidiary" means:

(1) each of the Oncor Subsidiaries, Comanche Peak Nuclear Power Company, Nuclear Energy Future Holdings LLC, Nuclear Energy Future Holdings II LLC, EFCH and EFIH;

(2) any Subsidiary of the Issuer which at the time of determination is an Unrestricted Subsidiary (as designated or identified by the Issuer); and

(3) any Subsidiary of an Unrestricted Subsidiary.

-2-

The Issuer may designate any Subsidiary of the Issuer (including any existing Subsidiary and any newly acquired or newly formed Subsidiary) to be an Unrestricted Subsidiary."

## ARTICLE FOUR

SECTION 4.01. AMENDMENT TO AND ELIMINATION OF CERTAIN PROVISIONS IN ARTICLE 4.

(a) Section 4.03 (Reports and Other Information) of the Indenture is amended by deleting the text of that section in its entirety and inserting in lieu thereof the following text:

"Notwithstanding that the Issuer may not be subject to the reporting requirements of Section 13 or 15(d) of the Exchange Act or otherwise report on an annual and quarterly basis on forms provided for such annual and quarterly reporting pursuant to rules and regulations promulgated by the SEC, the Issuer shall comply with the reporting obligations set forth under Section 314(a) of the Trust Indenture Act."

(b) Section 4.05 (Taxes) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(c) Section 4.06 (Stay, Extension and Usury Laws) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(d) Section 4.07 (Limitation on Restricted Payments) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(e) Section 4.08 (Dividend and Other Payment Restrictions Affecting Restricted Subsidiaries) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(f) Section 4.09 (Limitation on Incurrence of Indebtedness and Issuance of Disqualified Stock and Preferred Stock) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(g) Section 4.10 (Asset Sales) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(h) Section 4.11 (Transactions with Affiliates) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(i) Section 4.12 (Liens) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(j) Section 4.13 (Corporate Existence) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(k) Section 4.14 (Offer to Repurchase upon Change of Control) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(l) Section 4.15 (Limitation on Guarantees of Indebtedness by Restricted Subsidiaries) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(m) Section 4.16 (Restrictions on Permitted Asset Transfers) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(n) Section 4.17 (Restrictions on TCEH Transfers) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(o) Section 4.18 (Restrictions on Certain Investments in Oncor Subsidiaries and the Collateral) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(p) Section 4.19 (After-Acquired Property) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(q) Section 4.20 (Impairment of Security Interest) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(r) Section 4.21 (Further Assurances) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE FIVE

SECTION 5.01. AMENDMENT TO AND ELIMINATION OF CERTAIN PROVISIONS IN ARTICLE 5. Section 5.01(Merger, Consolidation or Sale of All or Substantially All Assets) of the Indenture is amended by:

(a) deleting the text of clauses (3), (4) and (6) (including the proviso and the following text that appear after clause (6): "provided, that for the purposes of this Section 5.01 only, neither (A) the first to occur of a Permitted Asset Transfer or a TCEH Transfer (excluding a Permitted Asset Transfer consisting of a merger of EFIH with and into the Issuer for the purpose of determining the first to occur of a Permitted Asset Transfer or a TCEH Transfer) nor (B) a transaction meeting the requirements of the proviso to clause (3) under the definition of "Change of Control" shall be deemed to be a sale, assignment, transfer, conveyance or other disposition of all or substantially all of the properties or assets of the Issuer and its Subsidiaries under this Indenture. For the avoidance of doubt, (1) the Issuer may therefore consummate the first to occur of a Permitted Asset Transfer made in accordance with Section 4.16 hereof and a TCEH Transfer made in accordance with Section 4.17 hereof, in either case, without complying with this Section 5.01 (excluding a Permitted Asset Transfer consisting of a merger of EFIH with and into the Issuer for the purpose of determining the first to occur of a Permitted Asset Transfer

or a TCEH Transfer), (2) the Issuer or any of its Restricted Subsidiaries may consummate a transaction meeting the requirements of the proviso to clause (3) under the definition of "Change of Control" without complying with this Section 5.01 and (3) the determination in the preceding proviso shall not affect the determination of what constitutes all or substantially all the assets of the Issuer and its Subsidiaries under any other agreement to which the Issuer is a party.") of Section 5.01(a) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]";

(b) adding the following new sentence at the end of subsection (a): "It shall be understood that for purposes of the first sentence of this Section 5.01(a) only, (i) a Permitted Asset Transfer shall not constitute the consolidation, merger, wind-up, sale, assignment, transfer, lease conveyance or other disposal of all or substantially all of the properties and assets of the Issuer and, accordingly, the Issuer may consummate a Permitted Asset Transfer without being subject to the requirements of this Section 5.01 and (ii) a TCEH Transfer shall constitute the consolidation, merger, wind-up, sale, assignment, transfer, lease conveyance or other disposal of all or substantially all of the properties and assets of the Issuer and, accordingly, if the Issuer consummates a TCEH Transfer, it must comply with the requirements of this Section 5.01.";

(c) deleting the words "made in accordance with Section 4.16 hereof" where they appear in subsection (c);

(d) deleting the text of subsection (d) in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]"; and

(e) deleting the words "made in accordance with Section 4.16 hereof" where they appear in subsection (e).

## ARTICLE SIX

SECTION 6.01. AMENDMENT TO AND ELIMINATION OF CERTAIN PROVISIONS IN ARTICLE 6. Section 6.01 (Events of Default) of the Indenture is amended by:

(a) deleting the text of clauses (3), (4), (5), (8) and (9) of Section 6.01(a) in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]"; and

(b) deleting the words "or any Significant Subsidiary (or any group of Restricted Subsidiaries that together would constitute a Significant Subsidiary)" in each instance where they appear in clauses (6) and (7) of Section 6.01(a).

## ARTICLE SEVEN

SECTION 7.01. AMENDMENT TO AND ELIMINATION OF CERTAIN PROVISIONS IN ARTICLE 8. Section 8.04 (Conditions to Legal or Covenant Defeasance) of the Indenture is amended by deleting clauses (2), (3), (4), (5), (6), (7) and (8) of such Section 8.04 in their entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE EIGHT

SECTION 8.01. ELIMINATION OF ARTICLE 10.

(a) Section 10.01 (Equal and Ratable Sharing of Collateral by Holders of Parity Lien Debt) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(b) Section 10.02 (Ranking of Parity Liens) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(c) Section 10.03 (Relative Rights) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(d) Section 10.04 (Security Documents) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(e) Section 10.05 (Recording and Opinions) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(f) Section 10.06 (Release of Collateral) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(g) Section 10.07 (Authorization of Actions to Be Taken by the Trustee Under the Security Documents) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(h) Section 10.08 (Authorization of Receipt of Funds by the Trustee under the Pledge Agreement) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(i) Section 10.09 (Lien Sharing and Priority Confirmation) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(j) Section 10.10 (Voting) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(k) Section 10.11 (Limitation on Duty of Trustee in Respect of Collateral; Indemnification) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(l) Section 10.12 (Asset Sale Cash Collateral Account) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

(m) Section 10.13 (Collateral Trustee a Third Party Beneficiary) of the Indenture is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE NINE

SECTION 9.01. AMENDMENT TO CERTAIN PROVISIONS IN ARTICLE 11. Section 11.06 (Release of Guarantees) of the Indenture is amended by:

(a) deleting the words ", except that the Guarantee by EFIH shall only be released and discharged as provided in Section 4.16 hereof" where they appear in Section 11.06(a)(1);

(b) deleting the text of Section 11.06(a)(3) in its entirety and inserting in lieu thereof the following text: "the designation or identification of any Restricted Subsidiary that is a Guarantor as an "Unrestricted Subsidiary.";

(c) deleting the text of Section 11.06(b) in its entirety and inserting in lieu thereof the following text: "The Guarantee by EFIH shall automatically be released in connection with a Permitted Asset Transfer, unless such Guarantee has been previously released."; and

(d) deleting the text of Section 11.06(c) in its entirety and inserting in lieu thereof the following text: "The Guarantee by EFCH shall be automatically released in connection with a Permitted Asset Transfer, unless such Guarantee has been previously released."

## ARTICLE TEN

SECTION 10.01. ELIMINATION OF CERTAIN PROVISIONS IN THE NOTES. Paragraph 8 (Offers to Repurchase) of each Note is amended by deleting it in its entirety and inserting in lieu thereof the phrase "[intentionally omitted]".

## ARTICLE ELEVEN

SECTION 11.01. ELIMINATION OF CERTAIN EXHIBITS.

(a) Exhibit E (Form of Permitted Transfer Supplemental Indenture) to the Indenture is deleted in its entirety.

(b) Exhibit F (Form of TCEH Transfer Supplemental Indenture) to the Indenture is deleted in its entirety.

## ARTICLE TWELVE

SECTION 12.01. REFERENCES TO DELETED OR AMENDED PROVISIONS. Subject to Section 13.01 hereof, all references in the Indenture and any Note, as amended by Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven, Article Eight, Article Nine, Article Ten and Article Eleven hereof, to any of the provisions deleted and eliminated or modified as provided herein, or to terms defined in such provisions, shall also be deemed deleted

and eliminated or modified, as the case may be, in accordance with the terms of this Supplemental Indenture. Effective as of the date hereof, none of the Company, the Trustee or other parties to or beneficiaries of the Indenture shall have any rights, obligations or liabilities under such deleted Sections or subsections and such deleted Sections or subsections shall not be considered in determining whether an Event of Default has occurred or whether the Company has observed, performed or complied with the provisions of the Indenture or any Note.

SECTION 12.02. AMENDMENT TO DEFINITIONS. Subject to Section 13.01 hereof, the Indenture is hereby amended by deleting any definitions from the Indenture and any Note with respect to which references would be eliminated as a result of amendments to the Indenture pursuant to Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven, Article Eight, Article Nine, Article Ten and Article Eleven hereof.

## ARTICLE THIRTEEN

SECTION 13.01. EFFECTIVENESS OF SUPPLEMENTAL INDENTURE.

(a) This Supplemental Indenture shall be effective upon its execution and delivery by the parties hereto. The Proposed Amendments set forth in Article Two, Article Three, Article Four, Article Five, Article Six, Article Seven, Article Eight, Article Nine, Article Ten, Article Eleven and Article Twelve will not become operative until immediately prior to the acceptance for exchange of Notes in accordance with the terms and conditions set forth in the Offering Memorandum.

SECTION 13.02. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

SECTION 13.03. FULL Force AND EFFECT. Except as expressly amended hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Upon the execution and delivery of this Supplemental Indenture by the Company, the Guarantors and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Company, the Guarantors, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the Indenture, whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

SECTION 13.04. INDENTURE REMAINS IN FULL FORCE AND EFFECT. Except as supplemented or amended hereby, all provisions in the Indenture shall remain in full force and effect.

SECTION 13.05. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together.

SECTION 13.06. CONFIRMATION AND PRESERVATION OF INDENTURE. The Indenture as supplemented or amended by this Supplemental Indenture is in all respects confirmed and preserved.

SECTION 13.07. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and thereto and their successors hereunder and thereunder and the Holders of the Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Notes.

SECTION 13.08. SUCCESSORS. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

SECTION 13.09. THE TRUSTEE. The Trustee shall not be responsible in any manner for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which are made by the Company.

SECTION 13.10. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

SECTION 13.11. EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

SECTION 13.12. SEVERABILITY. If any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Supplemental Indenture or the Indenture shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
　　Name: Anthony R. Horton
　　Title: Senior Vice President and Treasurer

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: _____
　　Name: Anthony R. Horton
　　Title: Senior Vice President and Treasurer

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

By: _____
　　Name: Anthony R. Horton
　　Title: Treasurer

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee

By: _____
　　Name:
　　Title:

[Signature Page to EFH 10.000% Notes Eighth Supplemental Indenture]

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
     Name:
     Title:

**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

By: _____
     Name:
     Title:

**ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY**

By: _____
     Name:
     Title:

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,** as Trustee

By: _____
     Name: Julie Hoffman-Ramos
     Title: Vice President

**EXECUTION COPY**

## NINTH SUPPLEMENTAL INDENTURE

Ninth Supplemental Indenture (this "Supplemental Indenture"), dated as of April 15, 2013, between Energy Future Holdings Corp. (formerly EFH2 Corp.), a Texas corporation (the "Company"), and The Bank of New York Mellon Trust Company, N.A., a national banking association, as Trustee (the "Trustee").

## W I T N E S S E T H

WHEREAS, Energy Future Holdings Corp., a Texas corporation (the "Predecessor"), has heretofore executed and delivered to the Trustee an Indenture, dated as of January 12, 2010, as supplemented and amended by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010, and the Eighth Supplemental Indenture, dated as of January 25, 2013 (as so supplemented and amended, the "Indenture"), providing for the issuance of the Predecessor's 10.000% Senior Secured Notes due 2020 (the "Notes");

WHEREAS, the Predecessor has contributed all of the capital stock of Energy Future Competitive Holdings Company to the Company, which contribution did not constitute the transfer of all or substantially all of the properties or assets of the Predecessor;

WHEREAS, on the date hereof, simultaneously with the effectiveness of this Supplemental Indenture, the Predecessor shall have merged with and into the Company, with the Company continuing its existence under the laws of the State of Texas, and the merger shall have become effective under the laws of the State of Texas;

WHEREAS, Section 5.01(a) of the Indenture provides, among other things, that the Predecessor shall not merge with or into any Person unless the Successor Company (as defined in the Indenture), if other than the Predecessor, expressly assumes (i) all the obligations of the Predecessor under the Notes, the Indenture and the Security Documents, to the extent the Predecessor is a party thereto, pursuant to a supplemental indenture or other document or instrument in form reasonably satisfactory to the Trustee and (ii) the Registration Rights Agreement (as defined in the Indenture);

WHEREAS, Section 5.02 of the Indenture provides that, upon any merger in accordance with Section 5.01 of the Indenture (other than as otherwise provided in Section 5.02), the successor corporation into or with which the Predecessor is merged shall succeed to, and be substituted for (so that from and after the date of such merger, the provisions of the Indenture referring to the "Issuer" shall refer instead to the successor corporation and not to the Predecessor), and may exercise every right and power of, the Predecessor under the Indenture with the same effect as if such successor Person had been named as the "Issuer" in the Indenture;

WHEREAS, Section 9.01 of the Indenture provides that, without the consent of any Holders, the Company and the Trustee may amend or supplement the Indenture, the Notes or any Security Document, at any time after the Issue Date, to comply with Section 5.01 of the Indenture or to provide for the assumption of the Predecessor's obligations to the Holders;

WHEREAS, the Company desires and has requested that the Trustee join in execution of this Supplemental Indenture for the purpose of evidencing such succession and assumption;

WHEREAS, the Company has been duly authorized to enter into this Supplemental Indenture;

WHEREAS, all conditions necessary to authorize the execution and delivery of this Supplemental Indenture and to make this Supplemental Indenture a valid and binding instrument enforceable in accordance with its terms have been complied with or have been done or performed; and

WHEREAS, pursuant to Section 9.01 of the Indenture, the Trustee is authorized to execute and deliver this Supplemental Indenture.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties mutually covenant and agree for the equal and ratable benefit of the Holders of the Notes as follows:

ARTICLE ONE

SECTION 1.01. CAPITALIZED TERMS. Capitalized terms used herein without definition shall have the meanings assigned to them in the Indenture.

ARTICLE TWO

SECTION 2.01. REPRESENTATIONS OF THE COMPANY. The Company represents and warrants to the Trustee as follows:

(a) It is a corporation duly organized, validly existing and in good standing under the laws of the State of Texas.

(b) The execution, delivery and performance by it of this Supplemental Indenture have been authorized and approved by all necessary corporate action on its part.

ARTICLE THREE

SECTION 3.01. ASSUMPTIONS AND AGREEMENTS OF SUCCESSOR.

(a) In accordance with Section 5.01(a) of the Indenture, the Company hereby expressly assumes (i) all the obligations of the Predecessor under the Notes, the Indenture and the Security Documents, to the extent the Predecessor is a party thereto and (ii) the Registration Rights Agreement.

-2-

(b) In accordance with Section 5.02 of the Indenture, the Company shall succeed to, and be substituted for (so that from and after the date of this Supplemental Indenture, the provisions of the Indenture referring to the "Issuer" shall refer instead to the Company and not to the Predecessor), and may exercise every right and power of, the Predecessor under the Indenture with the same effect as if the Company had been named the "Issuer" in the Indenture.

## ARTICLE FOUR

SECTION 4.01. EFFECTIVENESS OF SUPPLEMENTAL INDENTURE. This Supplemental Indenture shall be effective upon its execution and delivery by the parties hereto.

SECTION 4.02. GOVERNING LAW. THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK.

SECTION 4.03. FULL FORCE AND EFFECT. Except as expressly supplemented hereby, the Indenture is in all respects ratified and confirmed and all the terms, conditions and provisions thereof shall remain in full force and effect. Upon the execution and delivery of this Supplemental Indenture by the Company and the Trustee, this Supplemental Indenture shall form a part of the Indenture for all purposes, and the Company, the Trustee and every Holder of Notes heretofore or hereafter authenticated and delivered shall be bound hereby. Any and all references to the Indenture, whether within the Indenture or in any notice, certificate or other instrument or document, shall be deemed to include a reference to this Supplemental Indenture (whether or not made), unless the context shall otherwise require.

SECTION 4.04. INDENTURE AND SUPPLEMENTAL INDENTURE CONSTRUED TOGETHER. This Supplemental Indenture is an indenture supplemental to the Indenture, and the Indenture and this Supplemental Indenture shall henceforth be read and construed together.

SECTION 4.05. CONFIRMATION AND PRESERVATION OF INDENTURE. The Indenture as supplemented by this Supplemental Indenture is in all respects confirmed and preserved.

SECTION 4.06. BENEFITS OF SUPPLEMENTAL INDENTURE. Nothing in this Supplemental Indenture, express or implied, shall give to any Person other than the parties hereto and thereto and their successors hereunder and thereunder and the Holders of the Notes, any benefit of any legal or equitable right, remedy or claim under the Indenture, this Supplemental Indenture or the Notes.

SECTION 4.07. SUCCESSORS. All agreements of the Company in this Supplemental Indenture shall bind its successors. All agreements of the Trustee in this Supplemental Indenture shall bind its successors.

SECTION 4.08. THE TRUSTEE. The Trustee shall not be responsible in any manner for or in respect of the validity or sufficiency of this Supplemental Indenture or for or in respect of the recitals contained herein, all of which are made by the Company.

-3-

SECTION 4.09. COUNTERPARTS. The parties may sign any number of copies of this Supplemental Indenture. Each signed copy shall be an original, but all of them together represent the same agreement.

SECTION 4.10. EFFECT OF HEADINGS. The Section headings herein are for convenience only and shall not affect the construction hereof.

SECTION 4.11. SEVERABILITY. If any provision in this Supplemental Indenture shall be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Supplemental Indenture or the Indenture shall not in any way be affected or impaired thereby.

*[Remainder of Page Left Intentionally Blank]*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
    Name: Anthony R. Horton
    Title: Senior Vice President, Treasurer and
    Assistant Secretary


**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee


By: _____
    Name: Julie Hoffman-Ramos
    Title: Vice-President

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the date first above written.

**ENERGY FUTURE HOLDINGS CORP.**

By: _____
   Name: Anthony R. Horton
   Title: Senior Vice President, Treasurer and
   Assistant Secretary

**THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**, as Trustee

By: _____
   Name: Julie Hoffman-Ramos
   Title: Vice-President



**NIXON PEABODY**

NIXON PEABODY LLP
ATTORNEYS AT LAW

NIXONPEABODY.COM
@NIXONPEABODYLLP

**Erik Schneider**
*Associate*
T 617-345-1112
eschneider@nixonpeabody.com

100 Summer Street
Boston, MA 02110-2131
617-345-1000

October 22, 2014

*VIA OVERNIGHT COURIER*

Energy Future Holdings Corp Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
757 Third Avenue, 3rd Floor
New York, New York 10017

**RE:** *In re Energy Future Holdings Corp., et. al.* **(14-10979)(CSS) – Proofs of Claim for American Stock Transfer & Trust Company, LLC, as Indenture Trustee**

Dear Sir or Madame:

I have enclosed **eight (8) original proofs of claim** to be filed in the above referenced bankruptcy cases and eight (8) copies to be time-stamped and returned to me as follows:

| Case Number | Name of Debtor | Claimant |
|---|---|---|
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 5.55% Notes Due 2014 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 6.50% Notes Due 2024 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 6.55% Notes Due 2034 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 9.75% Notes Due 2019 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.00% Notes Due 2020 |
| 14-10979 | Energy Future Holdings Corp. | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.875% and 11.25/12.00% Notes Due 2017 |
| 14-11008 | Energy Future Intermediate Holding Company LLC | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.875% and 11.25/12.00% Notes Due 2017 |
| 14-11005 | Energy Future Competitive Holdings Company LLC | American Stock Transfer & Trust Company, LLC as Indenture Trustee for the 10.875% and 11.25/12.00% Notes Due 2017 |

From: (617) 345-1112
Erik Schneider
Nixon Peabody, LLP
100 Summer Street
Boston, MA 02110

Origin ID: LWMA



J142214092303uw

Ship Date: 22OCT14
ActWgt: 10.0 LB
CAD: 101115893/INET3550

Dims: 15 X 12 X 10 IN

Delivery Address Bar Code

SHIP TO: (617) 345-1112        BILL SENDER
co Epiq Bankruptcy Solutions, LLC
Energy Future Holdings Corp Claims
757 Third Avenue, 3rd Floor

NEW YORK, NY 10017

Ref # CM/070802/000003/4691
Invoice #
PO #
Dept #

THU - 23 OCT AA
STANDARD OVERNIGHT

TRK# 7715 9053 3433
0201

06 OGSA

10017
NY-US
EWR



522G1/DF64/6AC9

/templates/components/dotcom_label_contents/FoldInstr/en/Folding_instructions.html loading...
/templates/components/dotcom_label_contents/WarningsOriginalLabel/en/Folding_warning.html loading ..
/templates/components/dotcom_label_contents/TnCDom/us/en/TC_dom.html loading..



FedEx
TRK# 7715 9053 3433
0201

FRI - 24 OCT AA
STANDARD OVERNIGHT

06 OGSA

10017
NY-US
EWR

FID 671379 230CT14 BVYA 522C1/DF64/65DD