**Exhibit F**

**Transcript of September 28, 2015 Deposition of Stacey Doré excerpts**

                UNITED STATES BANKRUPTCY COURT

                  FOR THE DISTRICT OF DELAWARE

    ---------------------------------------x

    In Re:

    Energy Future Holdings Corporation,

    et al.,

                                    Debtors.


    Chapter 11

    Case No. 14-10979

    Jointly Administered

    ---------------------------------------x


                 DEPOSITION OF STACEY DORÉ

                      New York, New York

                      September 28, 2015



    Reported by:

    MARY F. BOWMAN, RPR, CRR

    JOB NO. 98268

Page 26

1  S. Doré

20 Q. You anticipated my next question.
21  So the plan does not provide for
22 the allowance of any EFIH first lien
23 make-whole claims, right?
24 A. Correct.

Page 27

1  S. Doré

17 Q. And so there is no provision for
18 payment of any EFIH first lien make-whole
19 claim, right? Whether allowed -- whether
20 deemed allowed on appeal or not, right?
21 A. That is correct.

Page 28

1  S. Doré

3 Q. Let me ask you to turn to the
4 definition of allowed. That's on page 5,
5 Ms. Doré. It is Section 1A, as in apple,
6 item 13.
7  As I read this definition, and I
8 want to make sure I'm not misunderstanding
9 it as the debtors intended, there is no
10 provision in the definition of allowed, for
11 a claim to be allowed over the objection of
12 the debtors because an appellate court
13 concludes that the claim is valid, right?
14 A. I think the issue we're talking
15 about today would be in 13C, a claim or
16 interest that is allowed. An allowed claim
17 means a claim or interest that is allowed
18 pursuant to the plan, which we know the
19 make-whole is not allowed pursuant to the
20 plan. In any stipulation that is approved
21 by the Bankruptcy Court. There is no such
22 stipulation. Or pursuant to any contract,
23 instrument, indenture or other agreement
24 entered into or assumed in connection
25 herewith. And I don't believe that

Page 29

1  S. Doré
2 applies. So I believe you are correct.

Page 38

1        S. Doré

Page 39

1        S. Doré

Page 40

1        S. Doré

10    Q.  The plan provides for no payment
11  of the EFIH first lien make-whole claim, no
12  ifs, no ands, no buts, right?
13    A.  That's true.

Page 41

1        S. Doré

REDACTED

Page 50

1      S. Doré

Page 51

1      S. Doré

Page 52

1      S. Doré

24     Q.   Does the fifth amended plan
25     provide for the allowance of the EFIH first

Page 53

1      S. Doré
2      lien make-whole claims if "otherwise
3      allowed in any amount by final order"?
4          A.   No.

Page 58
1        S. Doré

Page 59
1        S. Doré

Page 60
1        S. Doré

Page 61
1        S. Doré

3   Under the plan, without the
4   consent of the EFIH first lien
5   noteholders or the EFIH first lien
6   trustee, the plan provides for the
7   release of their claims against the
8   EFIH second lien trustee and the EFIH
9   second lien noteholders, right?
10  A.   I believe that's correct.

16

Page 70

1          S. Doré

Page 71

1          S. Doré

Page 72

1          S. Doré

Page 73

1          S. Doré

5      First, I take it that the
6   statement Mr. Husnick read into the record
7   you are telling me accurately reflects the
8   debtor's position.
9      A.  It does.

18      Q.  And I think what you just told me
19   is that there are two conditions.  First,
20   the appellate court must decide that the --
21   must determine that the make-whole claim is
22   an allowed claim, right?
23      A.  Yes.
24      Q.  And, second, it must decide that
25   it must be paid by either reorganized EFIH

19

Page 74

S. Doré

or new EFH.

If both of those conditions are met, then the allowed claim will become an obligation of reorganized EFIH or new EFH, right?

A. Correct.

Q. What happens if an appellate court simply says the first of those two. Judge Sontchi erred. The claim was a valid claim.

In that circumstance, does the plan -- what treatment does the plan provide for the EFIH first lien make-whole claim?

A. Again, I can't -- you know, typically an appellate court in particular is going to issue a very lengthy analysis and opinion and, without knowing exactly what that opinion is, I can't tell you what would happen exactly because my -- my guess is, if, in your hypothetical, the Court just said it is an allowed claim and didn't go to the next step of saying and it must be paid by either reorganized EFIH or new

Page 75

S. Doré

EFH, the parties at that point would argue about, you know, what that means in the opinion. Your clients would argue that was implied and perhaps the reorganized EFIH would argue something different, and I don't know what the answer would be.

Q. And certainly, under the plan, the debtors reserve the right in that circumstance to argue that the make-whole claim need not be paid by reorganized EFIH or reorganized EFH, right?

MR. McGAAN: Object to the form.

A. The debtors have reserved all of our appellate rights.

Q. Including the appellate -- the right to argue that confirmation of the plan renders the appeal by the EFH first liens equitably moot, right?

A. Yes.

The debtors are reserving the

Page 76

S. Doré

right to argue that confirmation of the plan and the effectiveness of the plan will render the appeal by the EFIH first liens of the denial of their make-whole claim equitably moot, right?

A. Yes.

Didn't Mr. Husnick simply say a tautology?

A. No.

Q. He said -- well, let me try to translate it in my words, and tell me why I have it wrong.

If an appellate court says that it's an obligation of reorganized EFIH, then it's an obligation of reorganized EFIH. Isn't that what he said?

A. That is what he said.

Q. How is that not a tautology?

A. It may or may not be a tautology, but it's the truth. If the appellate court

Page 77

S. Doré

says that it's an obligation of the reorganized companies, then it is.

I take it they reserve the right to argue that allowing and requiring payment of the EFIH first lien make-whole claim would be contrary to the terms of the plan. Right?

A. Again, we reserve all of our appellate rights. If that's an argument

REDACTED

Page 78

1                   S. Doré
2   that could be made on appeal, we reserve
3   the right to make it.

Page 79

1                   S. Doré

Page 80

1                   S. Doré

Page 81

1                   S. Doré

TSG Reporting - Worldwide     877-702-9580

Page 82

1          S. Doré

13    Q.  So I take it the debtors are
14  reserving the right to argue, following
15  confirmation of a plan in an appeal, that
16  the appellate court should not allow the
17  make-whole claim and require reorganized
18  EFH or reorganized EFIH to pay it because
19  doing so would be contrary to the terms of
20  a confirmed plan.
21    A.  We are reserving the right to
22  argue that.

Page 83

1          S. Doré

Page 84

1          S. Doré

Page 85

1          S. Doré

23    Q.  Today the EFIH first liens have a
24  lien on all substantially all of EFIH's
25  assets, right?

Page 86

1              S. Doré
2     A.  Yes.
3     Q.  And those assets include the 80
4  percent interest in Oncor, right?
5     A.  Yes.

Page 87

1              S. Doré

Page 88

1              S. Doré

4     Q.  With respect to treatment under
5  the plan, does the plan provide for the
6  liens of the EFIH first liens to remain in
7  place?  Yes or no?
8     A.  Well, I don't know for sure, but
9  you pointed me to a provision that said all
10 the claims are discharged at the effective
11 date, so I would assume, whether it is Op
12 Co, Prop Co or anybody else, there is no
13 more liens after the effective date.  But
14 I'm not positive about that.

Page 89

1              S. Doré

23

Page 94

1          S. Doré

Page 95

1          S. Doré

11     My question is, is there any
12  provision in the plan, with respect to
13  the treatment of the EFIH first liens,
14  for payment of that $86.2 million?
15     MR. McGAAN:  Object to the
16  assumed premise of the question; not
17  your math if you are asking her to do
18  the math.
19     But answer if you know.
20     A.   You have now raised in my mind
21  the question of whether make-whole is
22  considered principal or not, and I guess
23  that would determine the answer to your
24  question.  I don't think that it is, but
25  somebody could tell me I'm wrong about

Page 96

1          S. Doré
2   that.

Page 97

1          S. Doré

25

REDACTED

Page 110

1        S. Doré

11   nothing in the plan itself provides for any
12   recovery for make-whole claims that are
13   allowed after the effective date, correct?
14        A.   That's correct.

Page 111

1        S. Doré

Page 112

1        S. Doré

Page 113

1        S. Doré

TSG Reporting - Worldwide     877-702-9580

Page 114

1              S. Doré

Page 115

1              S. Doré

Page 116

1              S. Doré

15      Q.  OK.  So, to be clear, nothing in
16   the plan as it currently exists provides
17   that new EFH or new EFIH might be liable
18   for make-whole claims that are allowed on
19   appeal after the effective date?
20      A.  That's correct.

Page 117

1              S. Doré

Page 118

1        S. Doré

3    Q.  My question is, is it the
4    debtor's intention in the plan to foreclose
5    the ability of the secured noteholders to
6    obtain relief from the reorganized
7    companies on appeal?
8    A.  Our intention is to preserve all
9    of our appellate rights, including the
10   right to assert equitable mootness.

Page 119

1        S. Doré

Page 120

1        S. Doré

Page 121

1        S. Doré

Page 122

1    S. Doré

Page 123

1    S. Doré

21    Q.  So the issue that Judge Sontchi
22    is going to be addressing is a plan that
23    does not provide for any recovery for
24    make-whole claims that are allowed after
25    the effective date, on appeal after the

Page 124

1        S. Doré
2    effective date, right?
3        A.  It just doesn't speak to the
4    issue of the -- it doesn't allow for
5    make-whole claims, period, before or after
6    the effective date.  There are no
7    make-whole claims allowed in the plan.

15       Q.  The debtors have no plan -- no
16    intention to amend the plan to make it
17    clear that claim -- make-whole claims
18    allowed on appeal after the effective date
19    would become obligations of the reorganized
20    entities, correct?
21       A.  We do not have a current
22    intention to do that amendment, that is
23    correct.

Page 125

1    S. Doré

|  |  |
|---|---|
| Page 126 | Page 127 |
| 1    S. Doré | 1    S. Doré |
|  | 2  to issue orders that would be binding on |
|  | 3  the reorganized company? |
|  | 4      MR. McGAAN: Object. |
|  | 5  Mischaracterizes the testimony. |
|  | 6      MR. HOROWITZ: I really want to |
|  | 7  know what the testimony is. |
|  | 8    Q.  Is that what it means? |
|  | 9    A.  Yes. |
| 24   Q.  So it tells us that the debtors |  |
| 25  recognize the power of the Court of Appeals |  |
| Page 128 | Page 129 |
| 1    S. Doré | 1    S. Doré |