## Exhibit G

**Transcript of October 1, 2015 Deposition of Paul Keglevic excerpts**

REDACTED

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 1

2          UNITED STATES BANKRUPTCY COURT

3            FOR THE DISTRICT OF DELAWARE

4    -------------------------------------x

5    In Re:

6    Energy Future Holdings Corporation,

7    et al.,

8                          Debtors.

9

10   Chapter 11

11   Case No. 14-10979

12   Jointly Administered

13   -------------------------------------x

14

15

16            DEPOSITION OF PAUL KEGLEVIC

17               New York, New York

18                October 1, 2015

19

20   ***This transcript contains a portion that

21     has been designated Highly Confidential***

22

23

24   Reported by: MARY F. BOWMAN, RPR, CRR

25   JOB NO: 98276

REDACTED

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 14

1          Keglevic

5          Assuming the plan is confirmed
6   and gets consummated, will there continue
7   to be a separate EFIH as a legal entity
8   from EFH?
9          MR. McKANE:  Objection, form.
10     A.   I don't believe so.
11     Q.   So they will be merged together?
12     A.   Yes.
13     Q.   And the surviving entity I
14  believe in the plan is referred to as "new
15  EFH"?
16     A.   Yes.  Or "reorganized EFH," yes.
17     Q.   And it will be the successor to
18  both what is now EFIH and what is also EFH?
19          MR. McKANE:  Calls for a legal
20  conclusion.  Objection to form.
21          MR. SHORE:  Form.
22     Q.   To the best of your
23  understanding?
24     A.   Generally speaking, yes.

Page 15

1          Keglevic

Page 16

1          Keglevic

21     Q.   As of today, my clients have a
22  first lien subject to the DIP on EFIH's
23  ownership in Oncor.  Right?
24          MR. SHORE:  Objection to form.
25     Q.   To the best of your knowledge?

Page 17

1          Keglevic
2     A.   They have a first lien position I
3   think associated with the stock.

5 (Pages 14 to 17)

REDACTED

CONTAINS HIGHLY CONFIDENTIAL PORTION

---

Page 18

1               Keglevic

8       Q.   Do the debtors expect that new
9    EFH will be able to pay the full amount of
10   the make-whole claim of the EFIH first
11   liens if an appellate court following the
12   effective date determines that that claim
13   is valid and reverses the bankruptcy court?
14       A.   Yes.
15       Q.   Any material doubts that the
16   debtors have about that?
17       A.   None.

---

Page 19

1               Keglevic

ate?  Is
25       your answer -- let me -- it is

---

Page 20

1               Keglevic

3        Assume that after the effective
4    date, an appellate court enters an order
5    allowing the claim of the EFIH first liens
6    to the make-whole, the EFIH second liens to
7    the make-whole, and the EFIH PIKs to the
8    make-whole.  Do the debtors believe that
9    reorganized EFH will be able to satisfy all
10   of those claims in full?
11       A.   Yes.
12           MR. SHORE:  Object to the form.
13       Q.   Is there any material doubt that
14   the debtors have about that?
15       A.   No.

---

Page 21

1               Keglevic

---

6 (Pages 18 to 21)

REDACTED

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 38

1                    Keglevic

Page 39

1                    Keglevic

Page 40

1                    Keglevic

Page 41

1                    Keglevic

16       Q.   Assume for a moment that my
17    clients would also claim that they are
18    entitled to interest on that sum running
19    from the date of the repayment of the
20    principal of the notes through whatever
21    date that is.  Assume that the second liens
22    would make the same claim, assume the PIKs
23    would make the same claim.
24          Does that assumption change in
25    any way the debtors' view that if an

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 42

Keglevic

1
2  appellate court following the effective
3  date reverses the bankruptcy court and
4  holds that all the make-whole claims,
5  principal plus interest thereon, are due,
6  that the -- that reorganized EFH will be
7  able to pay that sum?
8         MR. SHORE:  Objection.
9         MR. McKANE:  Object to the form.
10     A.   Can you tell me what interest
11  rate they are going to claim?
12     Q.   Our notes are at 10 percent, and
13  I think there is a little tranche of
14  bump-up because of the failure to register
15  them.  So as to part of it, 10 and a half,
16  and as to part of it, 10 percent.
17         Assume that the second liens
18  would claim whatever interest rate is
19  accruing on their notes as provided in the
20  notes, and assume the same for the PIKs.
21     A.   The -- no, those --
22         MR. SHORE:  Objection to form.
23     A.   I would not think the additional
24  accrued interest would fundamentally change
25  the reality that there is still a very --

Page 43

Keglevic

1
2  it is a very small amount in relation to
3  the amount of the 8 and a half billion
4  dollars equity that this entity would be
5  worth.
6     Q.   I just want to get a clear
7  record.  When you say, "It is a very small
8  amount in relation to the amount of the 8
9  and a half billion dollars of equity that
10  this entity would be worth," what is the
11  "it" in that sentence?
12     A.   The -- your hypothetical was we
13  lose 100 percent of all the make-whole
14  cases, and the finding is also that there
15  would be interest on top of those amounts.
16  Rough numbers, in my mind, those
17  make-wholes are about a billion dollars in
18  total, and adding interest for a period of
19  time, I can do the math, on a billion
20  dollars at 10 percent, that's 100 million a
21  year, so say a billion two.
22         If I was the chief financial
23  officer, which I will not be, by the way,
24  of reorganized EFH, and I had a company
25  worth 8 and a half billion dollars, and I

Page 44

Keglevic

1
2  had a claim for 1.2 billion dollars, I
3  would not -- if my alternative being pay it
4  or file for bankruptcy, I would find a way
5  for my 8 and a half billion dollars to pay
6  the amount and not flush the remaining
7  7.3 billion dollars of equity value in the
8  estate.
9         That's why the debtor is not
10  concerned with the proposition.
11     Q.   I think this may just be a way of
12  changing the language, and I don't mean to
13  prolong this.  Is it fair to say that the
14  debtors believe that even if all of the
15  make-wholes are allowed, including
16  interest, that the plan of reorganization
17  is feasible?
18         MR. SHORE:  Objection to form.
19         MR. McKANE:  Objection to form.
20     A.   I do feel on the record, since
21  I've been I think very cooperative in
22  taking all the hypotheticals, that number
23  one, the debtors don't think it is likely
24  that that scenario will take place.
25     Q.   I understand that.

Page 45

Keglevic

1
2     A.   That being said, if the
3  worst-case scenario were to happen, as you
4  have described it, we still believe that
5  those amounts have sufficient equity
6  coverage to assure their payment.
7     Q.   And you took -- I don't mean this
8  in a critical way -- I will use the word
9  "umbrage," when I referred to "reorganized
10  debtors."  I take it, it is the expectation
11  of the debtors that if this plan is
12  confirmed and goes effective, new EFH will
13  not have to refile for bankruptcy?
14     A.   That is absolutely our
15  assumption.
16     Q.   Well, it is more than an
17  assumption.  It is the belief based on
18  analysis, right?
19     A.   Based on the preponderance of the
20  evidence, we believe it is highly unlikely
21  that they would have to file for
22  bankruptcy.
23     Q.   And is that also your belief,
24  that it would be highly unlikely that
25  reorganized EFH would have to file for

12 (Pages 42 to 45)

REDACTED
CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 46

```
1                Keglevic
2     bankruptcy, does that remain the debtors'
3     belief if the make-whole claims, the
4     make-whole rulings are all reversed on
5     appeal?
6          MR. SHORE:  Objection to form.
7       A.   Yes.
```

Page 47

```
1                Keglevic
```

Page 48

```
1                Keglevic
```

Page 49

```
1                Keglevic
21          Q.   And you testified, just to keep
22     it as simple as possible, that the debtors
23     have done an analysis and are confident
24     that the new company will be able to pay
25     any liabilities that are allowed on appeal
```

TSG Reporting - Worldwide - 877-702-9580

REDACTED

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 50

```
 1              Keglevic
 2    after the effective date; is that accurate?
 3    Is that fair to say?
 4        MR. SHORE:  Objection to form.
 5        MR. McKANE:  Objection to form.
 6        Go ahead.
 7      A.   Certainly with respect to the
 8    make-wholes, including potential accrued
 9    interest, given the equity capitalization,
10    we believe that the reorganized EFH would
11    have the financial ability to make those
12    payments.
```

Page 51

```
 1              Keglevic
```

Page 52

```
 1              Keglevic
```

Page 53

```
 1              Keglevic
```

CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 58

1                    Keglevic

Page 59

1                    Keglevic

Page 60

1                    Keglevic

Page 61

1                    Keglevic

                    Assume that after the
13    effective date, the EFIH first liens win on
14    appeal their make-whole and interest
15    thereon.  The EFIH second liens win their
16    make-whole and interest thereon.  The EFH
17    PIKs win their make-whole and interest
18    thereon.  The EFH bonds win their
19    make-whole and interest thereon.  And after
20    the effective date, there is a
21    determination that the EFIH PIKs are
22    entitled to interest at their contract
23    rate, rather than at the federal judgment
24    rate.
25         Does it remain the debtors'

TSG Reporting - Worldwide - 877-702-9580

REDACTED
CONTAINS HIGHLY CONFIDENTIAL PORTION

Page 62

1              Keglevic
2    belief --
3          MR. McKANE:  With no risk
4      probability discounting for the
5      amounts?
6      Q.   With no risk probability
7    discounting for the amounts.  I will adopt
8    your counsel's qualification.
9          Does it remain the debtors'
10   belief that reorganized EFH would be able
11   to satisfy all of those liabilities after
12   the effective date?
13         MR. SHORE:  Objection to form.
14     A.   It does.

Page 63

1              Keglevic

Page 64

1              Keglevic

Page 65

1              Keglevic

17 (Pages 62 to 65)