**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., et al.,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Re: Docket No. 6122<br><br>Hearing Date:  November 3, 2015 at 11:00 a.m.<br>Objection Deadline: October 23, 2015. |

**EFH INDENTURE TRUSTEE'S OBJECTION AND PRETRIAL BRIEF FOR PHASE I TRIAL REGARDING CONFIRMATION OF FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ET AL.**

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.

Table of Contents

Page

I. PRELIMINARY STATEMENT ........................................................................... 1

II. BACKGROUND............................................................................................... 4

    A.    AST's Retention and Role as Indenture Trustee for the EFH Notes ..................... 4

          (i)    Proofs of Claim filed by EFH Indenture Trustee Against EFH
                Corp. .......................................................................................... 4

    B.    Debtors' Plan and Proposed Unimpairment of Claims Held by EFH
        Noteholders ................................................................................................... 6

III. OBJECTIONS TO CONFIRMATION OF THE PLAN ....................................... 7

    A.    The Plan Cannot be Confirmed Because EFH Noteholders Are Impaired............ 8

          (i)    Law on Unimpairment Under Section 1124 of the Bankruptcy
                Code .......................................................................................... 9

    B.    Case Law Regarding Solvent Debtors Also Requires That the EFH
        Indenture Trustee's Claims be Allowed if They Are to be Unimpaired .............. 10

          (i)    EFH Corp. Is Solvent .................................................................. 14

    C.    The Plan Must Include Provisions for Payment of the Makewholes In
        Order to Render Class A4 Unimpaired and Satisfy Condition Precedent 9 ........ 16

          (i)    The EFH Legacy Q/R Notes Clearly Require Payment of the
                Redemption Price by Their Terms ................................................ 17

          (ii)   Unlike Other Indentures In These Cases the EFH Legacy Series
                Q/R Notes Did Not Accelerate by Their Terms........................... 19

          (iii)  The Fixed "Stated Maturity" Dates Were Not Automatically
                Advanced by the Filing of the Petition ..................................... 20

          (iv)  The Redemption Price Is Not Unmatured Interest.................................. 24

          (v)   The Makewhole Claims Should Also Independently be Allowed
                Under the Case Law Regarding Solvent Debtors ..................................... 24

    D.    There Has Been No Objection to the EFH Unexchanged Notes'
        Makewhole Claims ....................................................................................... 25

    E.    The Plan Impairs the EFH Indenture Trustee's Claims by Failing to
        Provide an Adequate Reserve or Other Satisfactory Provision for Payment
         of Contract Rate Postpetition Interest and Other Related Amounts ................... 25

          (i)    The Quality of the Postpetition Interest Reserve Impairs EFH
                Noteholders .............................................................................. 26

          (ii)   Postpetition Interest Should be Allowed at the Contract Rate.................. 27

    F.    The Plan's Treatment of the EFH Indenture Trustee's Claims as
        Unimpaired Mandates Compliance With Section 1124 and Therefore
         Honoring the Contractual Provisions Providing for the Payment of the
         Fees and Expenses of the EFH Indenture Trustee and its Advisors ................... 30

(i)    Controlling Supreme Court Precedent Requires Payment of the EFH Indenture Trustee Fees and Expenses as Part of the EFH Indenture Trustee's Unsecured Claims ...................................................... 30

(ii)    Each Indenture Provides That the EFH Indenture Trustee Fees and Expenses Shall be Treated as Administrative Expenses .......................... 33

(iii)    The EFH Indenture Trustee Fees and Expenses Must be Allowed as Actual and Necessary Costs of Preserving the Debtor's Estate Under Section 503(b)(1)(a) of the Bankruptcy Code Because the TIA Requires that the Debtors have a Trustee in Place ............................ 34

(iv)    To Comply with the TIA, EFH Corp. Must Have an Indenture Trustee in Place ........................................................................................ 37

(v)    Failing to Classify the EFH Indenture Trustee Fees and Expenses as Administrative Claims Violates Section 1122(a) ................................. 38

G.    The Allowance of the TCEH Settlement Claim In the Settlement Agreement Impairs EFH Corp. Creditors ............................................................. 39

H.    Any Potential for Equitable Mootness of any Appeals Impairs the EFH Noteholders ......................................................................................................... 40

I.    The Plan Fails to Satisfy the Requirements of Confirmation Set Forth in Section 1129 ......................................................................................................... 40

(i)    The Plan Violates Section 1129(a)(3) Because It Was Not Validly Authorized ....................................................................................................... 40

(ii)    The Plan Violates Section 1129(a)(3) Because Releases Under the Plan are Forbidden ....................................................................................... 41

(iii)    The Plan Fails the "Best-Interest-of-Creditors" Test Under Section 1129(a)(7) ....................................................................................................... 42

(iv)    The Plan is Not Feasible Under Section 1129(a)(11) ............................... 43

(v)    The EFH Notes Cannot be Cancelled Until All Claims Underlying the EFH Notes are Ultimately Adjudicated (and if Allowed, Paid) ......... 44

J.    Reservation of Rights Regarding Post-Emergence Documents........................... 45

IV. RESERVATION OF RIGHTS ........................................................................................... 45

V. CONCLUSION ................................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
    85 F.3d 970 (2d Cir. 1996)...............................................................................38, 37

*BOKF v. Caesars Entm't Corp.*,
    2015 U.S. Dist. LEXIS 113794 (S.D.N.Y. Aug. 27, 2015).....................................38

*Cohen v. De La Cruz*,
    523 U.S. 213 (1998).................................................................................................28

*Consol. Rock Prods. Co. v. Dubois*,
    312 U.S. 510 (1941).................................................................................................28

*CSC Trust Co. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future
    Holdings Corp.)*,
    513 B.R. 651 (Bankr. D. Del. 2014) .......................................................................11

*Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*,
    679 F.2d 264 (1st Cir. 1982)........................................................................12, 13, 14

*Dewsnup v. Timm*,
    502 U.S. 410 (1992).................................................................................................28

*Empire Trust Co. v. Equitable Office Bldg. Corp.*,
    167 F.2d 346 (2d Cir. 1948).....................................................................................28

*Gencarelli v. Gencarelli*,
    501 F.3d 1 (1st Cir. 2007)..................................................................................10, 25

*In Matter of H.L.S. Energy Co., Inc.*,
    151 F.3d 434 (5th Cir. 1998) ..................................................................................37

*In re Am. Coastal Energy*,
    399 B.R. 805 (Bankr. S.D. Tex. 2009) ...................................................................36

*In re Buttes Gas & Oil Co.*,
    112 B.R. 191 (Bankr. S.D. Tex. 1989) ...................................................................34

*In re Chemtura Corp.*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010)..............................................12, 17, 19, 20

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*,
    791 F.2d 524 (7th Cir. 1986) ..................................................................................11

*In re CMC Heartland Partners*,
   966 F.2d 1143 (7th Cir. 1992) ............................................................36

*In re Cybergenics Corp.*,
   226 F.3d 237 (3d Cir. 2000)...............................................................11

*In re Dow Corning Corp.*,
   244 B.R. 678 (Bankr. E.D. Mich. 1999) ("<u>Dow II</u>") .............................13

*In re Dow Corning Corp.*,
   456 F.3d 668 (6th Cir. 2006) .............................................11, 12, 13, 14

*In re Energy Future Holdings Corp.*,
   527 B.R. 178 (Bankr. D. Del. 2015) .....................................................21

*In re Exide Techs.*,
   303 B.R. 48 (Bankr. D. Del. 2003) .........................................................7

*In re Fast*,
   318 B.R. 183 (Bankr. D. Colo. 2004) ...................................................14

*In re Fed.-Mogul Global Inc.*,
   684 F.3d 355 (3d Cir. 2012)................................................................28

*In re GSC, Inc.*,
   453 B.R. 132 (Bankr. S.D.N.Y. 2011).............................................10, 34

*In re Hayes Lemmerz Int'l, Inc.*,
   340 B.R. 461 (Bankr. D. Del. 2006) .....................................................36

*In re Integrated Telecom Express, Inc.*,
   384 F.3d 108 (3d Cir. 2004).................................................................11

*In re LHD Realty Corp.*,
   726 F.2d 327 (7th Cir. 1984) ..............................................................22

*In re Los Angeles Dodgers LLC*,
   465 B.R. 18 (D. Del. 2011)..................................................................12

*In re NNN 3500 Maple 26*,
   LLC, 2014 Bankr. LEXIS 1533 (Bankr. N.D. Tex. Apr. 10, 2014) .......10

*In re Payless Cashways, Inc.*,
   287 B.R. 482 (Bankr. W.D. Mo. 2002)..................................................22

*In re Premier Entm't Biloxi LLC*,
   445 B.R. 582 (Bankr. S.D. Miss. 2010)...........................................12, 21

*In re Sch. Specialty, Inc.*,
  No. 13-10125, 2013 WL 1838513 (Bankr. D. Del. Apr. 22, 2013)....................................19, 24

*In re Seda France, Inc.*,
  No. 10-12948- CAG, 2011 WL 3022563 (Bankr. W.D. Tex. July 22, 2011) ........................31

*In re Skyler Ridge*,
  80 B.R. 500 (Bankr. C.D. Cal. 1987)....................................................................................22

*In re Smurfit-Stone Container Corp.*,
  425 BR 735 (Bankr. D. Del. 2010) .......................................................................................35

*In re Southland Corp.*,
  160 F.3d 1054 (5th Cir. 1998) ..............................................................................................29

*In re Swartville, LLC*,
  2012 Bankr. LEXIS 3809 (Bankr. E.D.N.C. Aug. 17, 2012) ................................................41

*In re Taddeo*,
  685 F.2d 24 (2d Cir. 1982).....................................................................................................10

*In re Terry Ltd. P'ship*,
  27 F.3d 241 (7th Cir. 1994) ...................................................................................................29

*In re Trico Marine Servs., Inc.*,
  450 B.R. 474 (Bankr. D. Del. 2011) ......................................................................................24

*In re Wash. Mut., Inc.*,
  442 B.R. 314 (Bankr. D. Del. 2011) ...................................................................................7, 43

*Irving Tanning Co. v. Me. Superintendent of Ins.*,
  496 B.R. 644 (B.A.P. 1st Cir. 2013) ......................................................................................40

*Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Corp.*,
  2015 U.S. Dist. LEXIS 81395 (S.D.N.Y. June 23, 2015) ......................................................38

*N.L.R.B. v. Bildisco and Bildisco*,
  465 U.S. 513 (1984)...............................................................................................................36

*Ogle v. Fid. & Deposit Co.*,
  586 F.3d 143 (2d Cir. 2009)...................................................................................................31

*Ruskin v. Griffiths*,
  269 F.2d 827 (2d Cir. 1959)...................................................................................................12

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*,
  549 U.S. 443 (2007)........................................................................................................ passim

## OTHER CASES

*Arthur v. Burkich,*
    131 A.D.2d 105, 520 N.Y.S.2d 638 (N.Y. App. Div. 1987) ...................................................24

*Findings of Fact and Conclusions of Law Regarding Cross Motions for Summary
    Judgment,*
    Adv. No. 14-50363 (the "First Lien Makewhole Ruling") [March 26, 2015; Docket
    No. 3984] .........................................................................................................................19

## FEDERAL STATUTES

11 U.S.C. § 502(a) ...............................................................................................................25, 26

11 U.S.C. § 502(b) ...............................................................................................................30, 31

11 U.S.C. § 1124............................................................................................................... passim

11 U.S.C. § 1126(f)..................................................................................................................8, 42

15 U.S.C. §§ 77aaa-77bbbb (the "TIA") ..................................................................................37

28 U.S.C. § 959(b) ...................................................................................................................37

## RULES

Fed. R. Bankr. P. 3007(a) ........................................................................................................33

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures (the "Indentures") for certain notes (the "EFH Notes" and the holders thereof, the "EFH Noteholders") issued by Energy Future Holdings Corp. ("EFH Corp.") (as described in Exhibit 1 attached hereto), by its undersigned counsel, hereby objects (the "Objection") to confirmation of the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 6122] (the "Plan").[2]  In opposition to confirmation of the Plan and as its pretrial brief in connection with "Phase I" of the confirmation trial, the EFH Indenture Trustee respectfully states as follows:[3]

## I.
## PRELIMINARY STATEMENT

1.      For the great bulk of its objections to the Plan, the EFH Indenture Trustee relies upon and incorporates by reference the arguments of the EFH Official Committee.  Among other things, the EFH Official Committee submissions establish, and trial will confirm, that the Debtors cannot meet their burden of proving that the Plan is feasible because they cannot establish that the Settlement Agreement should be approved and that the excruciatingly complex regulatory and financial transactions set forth in the Plan are likely to close.

2.      But the EFH Indenture Trustee finds itself compelled to object, as well, on additional grounds because of certain highly unorthodox provisions in the Plan.

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

[3]      Pursuant to the Court's oral ruling on September 28, 2015, issues related to reinstatement will not be addressed in this Objection.  The EFH Indenture Trustee will file a separate brief on issues related to reinstatement in connection with "Phase II" of the confirmation trial scheduled to commence on November 30, 2015.  All rights with respect to arguments concerning reinstatement are reserved.

3.      The Debtors have objected to the EFH Indenture Trustee's Makewhole Claims, and claims regarding postpetition contract-rate interest and fees and expenses. In virtually any other bankruptcy case, disputes regarding those claims could be taken up as part of a post-confirmation claim objection process and would not need to be resolved as part of the Plan confirmation trial. Here, however, the Debtors have uniquely thrust those claims into the center ring of the confirmation process by flatly refusing to pay, or in some instances failing to adequately reserve for, such claims. Yet, inconsistent with that refusal, the Plan purports to treat the EFH Indenture Trustee's claims as unimpaired.

4.      In any other case, the stark gamble of staking a confirmation on the validity of such claims would be avoided by providing an adequate reserve to pay disputed amounts in the event the claimant proved to be entitled to the amounts. Here, however, there is no reserve at all for the Makewhole Claims, and an inadequate or questionable reserve (if any) as to the other claims. Even more pointedly, the Debtors have expressly conditioned consummation of the Plan on the EFH Indenture Trustee's Makewhole Claims being "Disallowed Makewhole Claims." *See* Condition Precedent 9 to the Effective Date. Plan at Art. IX.B.9. Furthermore, the evidence (including deposition testimony and the terms of the Plan Support Agreement) is that the Plan Sponsors are adamant in their refusal to pay those Makewhole Claims.[4] Accordingly, because the EFH Indenture Trustee is entitled to the claimed makewholes and other amounts (as this brief and evidence at trial will show) the Debtors <u>cannot</u> meet their burdens of showing (a) that the

---

[4]     Pursuant to the Plan Support Agreement [Docket No. 5248-2], the Investor Parties, Consenting Interest Holders, Consenting TCEH Creditor Parties, and the TCEH Official Committee (as those capitalized terms are defined in the Plan Support Agreement) all agreed to "refrain from supporting the allowance or payment of any make-whole claim on account of the prepayment, repayment, or other redemption of any debt incurred by EFH or EFIH . . . ." Plan Support Agreement, at §§ 4.1(d); 4.2(d). Accordingly, major T-side creditors are contractually bound to oppose payment of the EFH Indenture Trustee's Makewhole Claims. *See also e.g,.* Hr' Tr. 35:21-25 (Sep. 28, 2015) (comments of T. Lauria) "we have always required from an investment standpoint that the makewholes have to be disallowed or not paid and we recognize that there's a risk around that issue from an appellate perspective."

EFH Indenture Trustee's claims are unimpaired and (b) that the Plan is feasible insofar as the likelihood of satisfying Condition Precedent 9 to consummation.

5.      This Objection and Pre-Trial Brief will, therefore, of necessity, address arguments (and to a certain degree, evidence) that – if the Plan provided for adequate reserves – would, in most any other bankruptcy, be more appropriate in the claim-objection process.

6.      It is also notable, and perhaps unique, that at the eleventh hour and without proper EFH Corp. board consideration or approval, the Debtors slipped in an alternative provision purportedly allowing the Debtors to "reinstate" the EFH Legacy Series Q Claims and EFH Legacy Series R Claims at Reorganized TCEH at their discretion and subject to various approvals.  In accordance with the Court's September 28, 2015 ruling, issues related to reinstatement will be addressed in connection with Phase II of the confirmation hearing. The EFH Indenture Trustee will submit further briefing related to reinstatement at a later date. Although discovery relating to Phase II has not been completed, the EFH Indenture Trustee believes that Phase II of the confirmation hearing will demonstrate that the Debtors' reinstatement option is not permissible and does not render the EFH Noteholders unimpaired under section 1124.  Accordingly, the last-minute reinstatement option does not absolve the EFH Indenture Trustee (or the Court) of its need to fully address and recognize that the Plan impairs the EFH Indenture Trustee's claims, is not feasible, and cannot be confirmed for the reasons explained below.

## II.
## BACKGROUND

**A.** **AST's Retention and Role as Indenture Trustee for the EFH Notes**

7.      AST serves as the successor indenture trustee under the Indentures for the EFH Notes issued by EFH Corp.  The combined aggregate outstanding principal amount of the EFH Notes is approximately $1.9 billion.  Approximately $1.2 billion of that debt is held by EFIH.

8.      In March 2014, EFH Corp. approached AST and informed it that in light of EFH Corp.'s imminent bankruptcy filing it needed a successor trustee qualified under the Trust Indenture Act of 1939 (the "<u>TIA</u>") and the Indentures to replace The Bank of New York Mellon Trust Company, N.A. ("<u>BNY</u>") as the indenture trustee for the EFH Notes.  On April 11, 2014, EFH Corp., BNY and AST entered into three separate agreements under which BNY resigned as the indenture trustee for the EFH Notes and AST accepted appointment as the EFH Indenture Trustee.  Since that date AST has performed as required under the Indentures, its agreements with EFH Corp., the TIA and other applicable law.

(i)      *Proofs of Claim filed by EFH Indenture Trustee Against EFH Corp.*

9.      On October 24, 2014, the EFH Indenture Trustee timely filed proofs of claim 7475, 7476, 7477, 7478, 7479 and 7482 (the "<u>EFH POCs</u>") against EFH Corp. for claims arising under the Indentures and applicable law for amounts due as of the Petition Date, including amounts that were contingent and unliquidated.  The chart below summarizes the approximate amounts asserted under the EFH POCs, excluding amounts attributable to notes owned by EFH and EFIH:[5]

---

[5]      The amounts set forth in the chart are detailed in the *Expert Report of Jack F. Williams* and, with respect to the EFH Legacy Notes, include only the principal, interest and make whole amounts attributable to those EFH Legacy Notes the EFH Indenture Trustee believes to be held by non-Debtors.  Accordingly, the chart does not include approximately $1,282 million of EFH Legacy Notes held by EFIH.  *See* Disclosure Statement, II.C.2.(b)(I), n.46 at *52 ("EFIH holds (a) approximately $281 million of the 5.55% Notes; (b) approximately $545 million of the 6.50% Notes ; and (c) approximately $456 million of the 6.55% Notes").

| Issuance Sorted by Plan Class | Principal due at April 28, 2014 | Accrued Interest Through April 28, 2014 | Postpetition Interest At Contract Rate Assuming Emergence on March 31, 2016 | Makewholes Assuming Emergence on March 31, 2016 |
|---|---|---|---|---|
| **Class A4** | | | | |
| Series P | $90,323,000 | $2,283,667 | $10,301,961 | N/A |
| Series Q | $200,414,000 | $5,934,481 | $27,070,580 | $63,411,306 |
| Series R | $291,297,000 | $8,691,979 | $39,672,291 | $154,254,661 |
| **Class A5** | | | | |
| 9.75% Senior Notes | $2,458,000 | $129,147 | $524,037 | $39,943 |
| 10.00% Senior Notes | $3,101,000 | $89,584 | $661,557 | $103,263 |
| **Class A6[6]** | | | | |
| 10.875% EFH LBO Senior Unsecured Notes | $33,259,000 | $1,788,364 | $7,933,446 | N/A |
| 11.250%/12.000% EFH LBO Senior Toggle Notes | $26,922,978 | $1,497,591 | $7,156,236 | N/A |
| **TOTAL** | **$647,774,978** | **$20,414,813** | **$93,320,108** | **$217,809,173** |

In addition, the chart does not include approximately $564 million of EFH Legacy Notes that are held by EFH Corp. *See* EFH Corp.'s Form 10-K for the Fiscal Year Ended December 31, 2014, filed on April 30, 2014, at *56) ("As of December 31, 2013, total debt acquired includes [. . .] $564 million of EFH Corp. debt held by EFH Corp."). Though held by EFH Corp. and EFIH these Notes have not been canceled and, thus, remain outstanding. *See* EFH Corp.'s Form 10-K for the Fiscal Year Ended December 31, 2014, filed on April 30, 2014, at *56.  Finally, the table does not include any fees and expenses of AST or its advisors.

[6]    The 10.875% EFH LBO Senior Unsecured Notes and 11.250%/12.000% EFH LBO Senior Toggle Notes are guaranteed on an unsecured basis by EFCH and EFIH.  Class B5 (EFH LBO Note Guaranty Claims) consists of EFH LBO Note Guaranty Claims, which consist of any Claim against EFIH derived from or based upon the EFH LBO Notes. *See e.g.* proofs of claim number 7481.

B.    **Debtors' Plan and Proposed Unimpairment of Claims Held by EFH Noteholders**

10.    On September 21, 2015, the Debtors filed the Plan and the Disclosure Statement. Claims arising under the EFH Notes are classified in Classes A4, A5, A6, and B5 (the "EFH Notes Classes"). The Debtors assert that each of the EFH Notes Classes is "Unimpaired." Plan, at Article III.B.4; 5; 6; 20. Accordingly, the EFH Noteholders were not solicited to vote on the Plan and they did not receive the level of disclosure afforded to parties entitled to vote.[7] *See* Disclosure Statement Order [Docket No. 6131], at ¶ 14.

11.    With respect to Claims in Class A4 (EFH Legacy Note Claims), Class A5 (EFH Unexchanged Note Claims), Class A6 (EFH LBO Note Primary Claims) and Class B5 (LBO Note Guaranty Claims), the Plan provides that such claims be "Allowed," but only in an amount equal to the sum of:

- the principal amount outstanding;
- accrued but unpaid prepetition interest under the applicable indenture; and
- accrued postpetition interest at the Federal Judgment Rate, but not including, for the avoidance of doubt, any Makewhole Claims.

Plan, at Article III.B.4; 5; 6; 20. Each Allowed Claim (excluding claims for makewhole, contract rate interest and fees and expenses) in Class A5, A6 and B5 would be paid "in full in Cash." *See id.* (emphasis added).

12.    In contrast, the EFH Legacy Series Q Claims and EFH Legacy R Claims in Class A4 (excluding claims for makewhole, contract rate interest and fees and expenses) could be paid in full in Cash or:

> *at the election of the Debtors*, with the agreement of the Plan Sponsors and the TCEH Supporting First Lien Creditors, on or before the Effective Date, Reinstatement of such Claims, *which*

---

[7]    For example, the Disclosure Statement did not include a liquidation analysis for EFH Corp.

> *shall include assumption of such Claims by Reorganized*
> *TCEH…*

*See* Plan, at Article B.4.(c)(ii) (emphasis added).

13.     At the time of the entry of the Disclosure Statement Order, the Plan itself served as the Debtors' objection (the "First Claim Objection") to the EFH LBO Note Claims and the EFH Legacy Note Claims.  Article VII.A of the Plan provides that:

> Except as specifically provided as Allowed Claims pursuant to Article III.B of the Plan or otherwise objected to by the Debtors in the Chapter 11 Cases, the Plan shall serve as the Debtors' objection to all other EFIH First Lien Note Claims, EFIH Second Lien Note Claims, EFIH Unsecured Note Claims. . .  EFH LBO Note Claims, and EFH Legacy Note Claims under the respective indentures. If the Bankruptcy Court sustains the Debtors' objection to these Claims, the Confirmation Order will disallow such Claims against the Debtors. The Holders of such Claims may respond to the Debtors' objection to such Claims by filing an objection to the Plan.

14.     On October 7, 2015, the Debtors filed the Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for EFH Legacy Notes [Docket No. 6463] (the "Second Claim Objection").

## III.
## OBJECTIONS TO CONFIRMATION OF THE PLAN

15.     The Debtors bear the "burden of proving that the Plan complies with all of the requirements of the Bankruptcy Code for confirmation." *In re Wash. Mut., Inc.,* 442 B.R. 314, 328 (Bankr. D. Del. 2011)(denying confirmation because plan proponents did not meet their burden); s*ee also In re Exide Techs*., 303 B.R. 48, 58 (Bankr. D. Del. 2003)(denying confirmation of plan and stating that "plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a) . . .").

A.      **The Plan Cannot be Confirmed Because EFH Noteholders Are Impaired**

16.      As discussed below, a claimant is impaired if the plan alters their legal, equitable or contractual rights.  11 U.S.C. § 1124.  A finding that a class of claims is unimpaired deprives that class of important procedural and substantive rights, such as the right to vote on a plan.  *See e.g.,* 11 U.S.C. § 1126(f) ("[A] class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.").

17.      Here, pursuant to the Plan and the Plan Support Agreement, the Debtors are both unwilling and unable to honor all of the legal, equitable and contractual obligations owed to the EFH Noteholders.  The proposed treatment of the claims in Class A4, A5, A6 and B6 is an attack on two separate, unambiguous contractual rights in the Indentures.  Specifically, the claims in the EFH Notes Classes are impaired because:

- *First*, the Plan itself seeks to deny payment of any Makewhole Claim and in fact requires that these contract rights to such amounts be disallowed; and

- *Second*, the Plan does not clearly provide for payment of the fees and expenses of the EFH Indenture Trustee and its advisors (the "EFH Indenture Trustee Fees and Expenses") as provided for in the Indentures and as required by applicable law, and no reserve or other provision is made for the payment of such amounts.

The Debtors' failure to provide for the payment of such obligations if this Court or an appellate court finds that those claims should be allowed and paid precludes a finding that the claims in Class A4, A5, A6 and B6 are unimpaired.  Furthermore, as discussed below, the Debtors will have the burden to prove at trial that the proposed Postpetition Interest Reserve will be sufficient to satisfy any currently disputed interest claims of the EFH Indenture Trustee that may be eventually allowed by this Court or an appellate court, or to work with the EFH Indenture Trustee and modify the plan to provide for a satisfactory reserve.

(i)    ***Law on Unimpairment Under Section 1124 of the Bankruptcy Code***

18.    Bankruptcy Code section 1124 provides that "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan"

(1) ***leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest***; or

(2) . . .

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365 (b)(2) of this title or of a kind that section 365 (b)(2) expressly does not require to be cured;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law;

(D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and

(E) ***does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest***.

11 U.S.C. § 1124 (emphasis added).  Controlling precedent in this circuit requires that the Court presume that the EFH Noteholders are impaired "so as to enable a creditor to vote on acceptance of the plan."  *Solow v. PPI Enters.(U.S.) (In re PPI Enters.(U.S.)),* 324 F.3d 197, 203 (3d Cir. 2003)."The burden is placed on the debtor to demonstrate the plan leaves the creditor's rights unaltered."  *Id.*

19.    "Any alteration to the claimant's legal, equitable, or contractual rights under a plan would make that claim impaired." *In re GSC, Inc.,* 453 B.R. 132, 177 (Bankr. S.D.N.Y. 2011). "If the debtor's Chapter 11 reorganization plan does not leave the creditor's rights entirely 'unaltered,' the creditor's claim will be labeled as impaired under § 1124(1) of the Bankruptcy Code." *PPI Enterprises (U.S.), Inc*., 324 F.3d at 202; *see also In re Taddeo*, 685 F.2d 24, 28 (2d Cir. 1982)("Congress define[d] impairment in the broadest possible terms."). Congress has broadly defined impairment and carved out narrow exceptions set forth in section 1124. *See In re NNN 3500 Maple 26*, LLC, 2014 Bankr. LEXIS 1533, at *13 (Bankr. N.D. Tex. Apr. 10, 2014)(finding that substantial change in the nature of the borrower on the loan documents resulting in impairment of creditor).

20.    Here, the Court must find that the EFH Noteholders are impaired because the Plan itself objects to and implements the deprivation of the payments due under otherwise enforceable contract terms.[8]

**B.    Case Law Regarding Solvent Debtors Also Requires That the EFH Indenture Trustee's Claims be Allowed if They Are to be Unimpaired**

21.    Separate and apart from any analysis that the claims of the EFH Indenture Trustee should be allowed in full under section 1124, in solvent debtor cases, "the bankruptcy rule is that where there is a contractual provision, valid under state law, the bankruptcy court will enforce the contractual provision." *Gencarelli v. Gencarelli*, 501 F.3d 1, 7 (1st Cir. 2007) (quoting *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp*., 679 F.2d 264, 269 (1st Cir. 1982)).

---

[8]    *Cf. PPI Enters. (U.S.)*, 324 F.3d at 203(finding that Bankruptcy Code section 502(b)(6) - rather than a plan - expressly modified a landlord's rights.) In contrast, in this case the Debtors will not be able to point to clear language in the Bankruptcy Code altering the applicable contract rights of the EFH Noteholders.

22.     On August 5, 2014, this Court issued an opinion in *CSC Trust Co. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future Holdings Corp.)*, 513 B.R. 651 (Bankr. D. Del. 2014) where the indenture trustee for the 10% Senior Secured Notes due 2020 sought a declaratory judgment that the EFIH Debtors are obligated to pay a $665.2 million redemption premium.  The Court granted the indenture trustee's request for discovery from the EFIH Debtors as to their value and solvency because there remained "a possibility that the Court will require the solvency information in the future in order to properly address the payment of makewhole premiums if the indentures are found to provide for such premiums."  *Id.* at 665. The Court explained, "**when a debtor is solvent, certain contractual terms, such as the payment of a makewhole premium, can be enforced under state law, and the . . . Debtors may not rely on the Bankruptcy Code to 'deny payment of a redemption premium otherwise required' by the terms of the indenture**."  *Id.* at 660 (emphasis added).

23.     Other courts, including the Third Circuit, agree.  *See e.g., In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 112 (3d Cir. 2004)(holding that "solvent" debtor could not use the Bankruptcy Code to limit its state-law contract obligations); *In re Cybergenics Corp*., 226 F.3d 237, 244 (3d Cir. 2000)(stating that the Bankruptcy Code "limit[s] a debtor's exercise of avoidance powers to circumstances in which such actions would in fact benefit the creditors, not the debtors themselves"); *In re Dow Corning Corp.,* 456 F.3d 668, 678-79 (6th Cir. 2006) ("[W]hen a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights."); *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 791 F.2d 524, 528 (7th Cir. 1986)(finding that where debtor is solvent, "the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights"); *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959)(stating that where debtor is solvent, it is

"the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act"); *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 32-33 (D. Del. 2011)(stating that where debtor is solvent, "the equities strongly favor holding the debtor to his contractual obligations so long as those obligations are legally enforceable under applicable non-bankruptcy law"); *In re Chemtura Corp*., 439 B.R. 561, 605 (Bankr. S.D.N.Y. 2010)("With a solvent debtor, . . . the allowance of claims under a make-whole provision . . . should be an issue of state law alone"); *In re Premier Entm't Biloxi LLC,* 445 B.R. 582, 636 (Bankr. S.D. Miss. 2010)("[W]hen a debtor is solvent, bankruptcy courts generally will enforce the debtor's contractual obligations to the extent they are valid under applicable state law").

24.     As the Sixth Circuit explained in Official Comm. of Unsecured Creditors v. Dow Chem. Corp. (In re Dow Corning Corp.), 456 F.3d 668, 679 (6th Cir. 2006) ("Dow III"):

> "[I]n solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing whatever pre-petition rights a given creditor has against the debtor. . . ."

*Id.*; *see also Cont'l Inv. Corp.,* 679 F. 2d at 269 ("Where the debtor is solvent, the bankruptcy rule is that where there is a contractual provision, valid under state law, providing for interest on unpaid installments of interest, the bankruptcy court will enforce the contractual provision with respect to both installments due before and . . . after the petition was filed.").

25.     One of the rationales behind requiring solvent debtors to honor all valid contractual rights is that in the solvent debtor context, the requirements under section 1129(b) necessary to satisfy the "fair and equitable" test also "include" the requirement that the rights provided in a contract – including, for example, the right to interest at the contract rate (and specifically, postpetition interest) – must be preserved.  *See, e.g., Dow III*, 456 F.3d at 679.; *In re Dow Corning Corp*., 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999) ("Dow II")(concluding that

"fixing the pendency interest rate at that which applies to federal judgments is not 'fair and equitable.'").

26.     Although section 1129(b)(2) of the Bankruptcy Code itemizes a number of specific requirements in order for a plan to be considered "fair and equitable," that section makes clear that those specific items are not an exhaustive list.  It states: "[f]or the purposes of this subsection, the condition that a plan be fair and equitable with respect to a class **includes** the following requirements . . . ." 11 U.S.C. § 1129(b)(2)(emphasis added).  Section 101(3) of the Bankruptcy Code provides that the term "includes" is "not limiting".  11 U.S.C. § 101(3).

27.     This requirement of enforcing pre-petition contract rights in order for a plan to be "fair and equitable" is partly a consequence of the "absolute priority" rule, which is codified in section 1129(b)(2)(B)(i) and (ii), and requires that:

> (B)  With respect to a class of unsecured claims –
>
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property . . .

28.     Accordingly, courts have determined that the "fair and equitable" and absolute priority requirements preclude shareholders of a solvent debtor from receiving any distributions unless the senior creditor receives interest at the contract rate.  *See Debentureholders Protective Comm. of Continental Inv. Corp. v. Continental Inv. Corp.,* 679 F.2d 264, 270 (1st Cir. 1982).  Because of those requirements in section 1129, when "a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely to enforce the contractual rights of the parties, and the

role that equitable principals play in the allocation of competing interests is significantly reduced." *Dow III*, 456 F.3d at 679.

29.     Indeed, as the Sixth Circuit instructed:

> Despite the equitable nature of bankruptcy proceedings, the bankruptcy judge does not have "free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness." Rather, absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights.

*Id.* (internal citations omitted).  Other courts agree with the Sixth Circuit in *Dow III* and the logic of the First Circuit in *Cont'l Inv. Corp.* in requiring that pre-petition contract rights be fully honored for a plan to be considered "fair and equitable."  *See e.g. Allegheny Int'l, Inc.*, 118 B.R. 282, 314-15 (Bankr. W.D. Pa. 1990)("the contractual provision for interest applies postpetition where the estate proves to be solvent"); *In re Fast,* 318 B.R. 183, 191-92 (Bankr. D. Colo. 2004) (contract rate postpetition interest awarded to unsecured creditor under "fair and equitable" test).

30.     Here, the evidence will show that EFH Corp. is solvent or was rendered solvent by the chapter 11 process and thus all contractually provided for amounts must be paid for the EFH Indenture Trustee's claims to be treated as unimpaired.

(i)     ***EFH Corp. Is Solvent***

31.     The Plan proposed by the Debtors purports to treat all unsecured creditors of EFH Corp. as unimpaired and confers substantial benefits to equity holders in the form of releases. Solvency of EFH Corp. on the likely Effective Date is so obvious that the Disclosure Statement did not even include a liquidation analysis for EFH Corp.  The Disclosure Statement stated that:

> The Debtors did not perform a liquidation analysis for the EFH Debtors or the EFIH Debtors because all Allowed Claims asserted by Holders of Claims against the EFH Debtors and the EFIH Debtors are being paid in full under the Plan, and Holders of Claims are not permitted to receive more than a 100% recovery under a plan of reorganization or a liquidation under chapter 7 of the Bankruptcy Code. Accordingly, Holders of Claims against the

14

> EFH Debtors and the EFIH Debtors are receiving at least as much
> under the Plan as they would receive in a hypothetical liquidation
> under chapter 7 of the Bankruptcy Code.

*See* Disclosure Statement, at p. 168.

32.     Yet, amazingly, in their Second Claim Objection, the Debtors elected to contest that EFH Corp. is solvent today and will be solvent at the closing.  *See Second Claim Objection*, at 3 ("[T]he Debtors' proposed plan of reorganization does not provide for any distribution on account of equity interests in EFH Corp.  EFH Corp. therefore is not solvent within the meaning of the solvent-debtor exception."); *id.* at ¶ 45 (arguing that "shareholders of EFH Corp. will not receive any distribution under the Plan.  EFH Corp. therefore is not solvent for the purposes of this exception because the implied chapter 7 'waterfall' under section 726(a) for distribution of value would never reach equity.").

33.     The EFH Indenture Trustee believes that the solvency of EFH Corp. has already been conceded by the Debtors and their allies in countless ways and that the solvency of EFH Corp. will be established at trial by way of admissions and evidence including:

(i)     The filing of the Plan treating all unsecured creditors at EFH Corp., as unimpaired;

(ii)    The repeated testimony that all E-side creditors would be paid in full and in cash;

(iii)   The testimony of various directors and officers;

(iv)    The fact that the Court permitted a Disclosure Statement to go out without a liquidation analysis for EFH Corp. and that the Disclosure Statement does not contain any assertion that EFH Corp. is insolvent;

(v)     The fact that the Debtors have not designated any expert to allege that EFH Corp. is insolvent; and

(vi)    The testimony of Mr. David Y. Ying of Evercore Partners, the Debtors' investment banker and financial advisor, regarding the value generated in these cases by the Debtors' mastery of the REIT conversion "technology". Ying Dep. 153:2-22.

34.    The issue here is not whether EFH Corp. was solvent on the Petition Date, or even in the years leading up to the Petition Date.  The only question is whether EFH Corp. will be solvent at the time of the closing of the contemplated Plan transactions – the date that the Plan provides that the Debtors will redeem the EFH Notes.

**C.    The Plan Must Include Provisions for Payment of the Makewholes**
**In Order to Render Class A4 Unimpaired and Satisfy Condition Precedent 9**

35.    The current language of the Plan requires that all Makewhole Claims must be disallowed in order for the Effective Date of the Plan to occur, and no provision of the Plan provides for the payment of those claims if they are allowed.  As set forth herein, the EFH Indenture Trustee's Makewhole Claims should be allowed.  Therefore, the Plan will not be consummated unless (a) Condition Precedent 9 is waived, (b) the Plan is amended to provide a mechanism for payment of the Makewholes or (c) the Debtors establish at the Phase II trial that they can and will reinstate.  Of course, if the Plan is amended to provide an adequate reserve satisfactory to the EFH Indenture Trustee for the payment of the Makewholes and related amounts, the allowance of the Makewholes may be resolved subsequent to confirmation as part of the claims objection process.

36.    Subsections (i) through (v) below address the reasons why the Makewhole Claims of the EFH Indenture Trustee must be allowed.  If this were a normal case, the following in-depth arguments on claim allowance would not be required since the Plan would have included a reserve for payment of the disputed Makewhole Claims and the Plan would not have included Condition Precedent 9.  In light of the fact that the Debtors bear the burden of proving that claims are not impaired, it is the Debtors who bear the burden of proving, in connection with confirmation, that the disputed claims are not due or that if due they can be satisfied.

(i)    ***The EFH Legacy Q/R Notes Clearly Require Payment of the Redemption Price by Their Terms***

37.    The allowed amount of the EFH Indenture Trustee's Makewhole Claims should include the full Redemption Price as determined in the EFH Legacy Q/R Indentures and Notes. Courts follow a two-step analysis to determine whether a party is entitled to payment of a prepayment premium, makewhole or a Redemption Price.  The first issue is whether the payment is triggered under the applicable contract.  The second issue is whether the payment is not disallowed under the Bankruptcy Code.  *See e.g., Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449-52 (2007); *In re Chemtura Corp.*, 439 B.R. 561, 600 (Bankr. S.D.N.Y. 2010).  Because the notes issued under the EFH Legacy Series Q and EFH Legacy Series R Indentures clearly require payment of the Redemption Price upon early payment as provided for in the Plan, and there is no provision of the Bankruptcy Code that disallows those required payments, the Makewhole Claims should be allowed.

38.    As detailed below, each EFH Legacy Q/R Note provides that a redemption of the EFH Legacy Q/R Notes prior to their "Stated Maturity" requires payment of the Redemption Price.

39.    The EFH Legacy Q/R Indentures were issued in 2004 before the leveraged buy out.  Section 401 of each of the EFH Legacy Q/R Indentures provides:

> Securities of any series, or any Tranche thereof, which are redeemable before their Stated Maturity shall be redeemable in accordance with their terms and (except as otherwise specified as contemplated by Section 301 for Securities of such series or Tranche) in accordance with this Article.

The officer's certificate related to the issuance of each EFH Series Q/R Note provides:

> The Notes will be redeemable at the option of the Company prior to the Stated Maturity of the principal thereof as provided in the form [of Note] thereof set forth in Exhibit B hereto.

Each EFH Legacy Q/R Note provides that:

The Securities of this series will be redeemable at the option of the Company prior to the Stated Maturity (each a "Redemption Date"), in whole or in part, at any time. The Company will give notice of its intent to redeem such Securities of this series at least 30 days but no more than 60 days prior to the Redemption Date. If the Company redeems all or any part of the Securities of this series, it will pay a Redemption Price (the "Redemption Price") equal to the greater of

(1) 100% of the principal amount of the Securities of this series being redeemed, and

(2) the sum of the present values of the remaining scheduled payments of principal and interest (excluding any portion of any such interest accrued to the Redemption Date) on the Securities of this series being redeemed, discounted to the Redemption Date on a semi-annual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate plus 35 basis points, plus, in each case, accrued interest on those Securities of this series to the Redemption Date….

Upon payment of the Redemption Price, on and after the Redemption Date interest will cease to accrue on the Securities of this series or portions thereof called for redemption.

Section 101 of each EFH Legacy Q/R Indenture defines the following term:

"Stated Maturity," when used with respect to any obligation or any installment of principal thereof or interest thereon, means the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension).

40.    The stated maturity dates of the EFH Legacy Q/R Notes are November 15, 2024, and November 15, 2034, for Series Q and R, respectively.

41.    The EFH Indenture Trustee has not made any "declaration of acceleration" as specified in Section 802 of the EFH Legacy Q/R Indentures.  To the knowledge of the EFH Indenture Trustee, no EFH Legacy Q/R Holders have made any "declaration of acceleration" as specified in Section 802 of the EFH Legacy Q/R Indentures.  *See also* Paul Keglevic Dep. (Oct. 1, 2015) 250:25-251:1-12.

42.    The Redemption Price is a contractually provided calculation of liquidated damages for the early redemption of the EFH Legacy Q/R Notes.

43.    Under the Plan, the Debtors propose to pay the principal, accrued but unpaid prepetition interest, and accrued postpetition interest at the Federal Judgment Rate owed on the EFH Legacy Q/R Notes in full on the Effective Date.  *See* Plan, at Art. III.B.4 and VI.A.  The Plan provides that on the Effective Date all notes and indentures and other documents evidencing the EFH Legacy Q/R Notes claims "shall be deemed canceled, surrendered, and discharged without need for any further action or approval of the Bankruptcy Court."  *See* Plan, at Art. IV.I.

44.    Payment and cancellation of the EFH Legacy Q/R Notes, combined with discharge of the Indentures as part of this Plan is clearly a redemption of the Notes under the Indenture.  Numerous cases, including a decision by this Court, addressing makewhole provisions support that repayment of notes prior to a stated date, regardless of an intervening bankruptcy petition, triggers an obligation by the issuer to pay a makewhole premium when the applicable indenture so provides.  *See*, *e.g.*, *Findings of Fact and Conclusions of Law Regarding Cross Motions for Summary Judgment*, Adv. No. 14-50363 (the "First Lien Makewhole Ruling") [March 26, 2015; Docket No. 3984]; *In re Sch. Specialty, Inc*., No. 13-10125, 2013 WL 1838513, at *2-3 (Bankr. D. Del. Apr. 22, 2013); *In re Chemtura Corp.*, 439 B.R. 561 (Bankr. S.D.N.Y. 2010).

> (ii)    ***Unlike Other Indentures In These Cases the EFH Legacy Series Q/R Notes Did Not Accelerate by Their Terms***

45.    Under section 802 of each EFH Legacy Q/R Indenture, the EFH Legacy Q/R Notes could only be accelerated if either the EFH Indenture Trustee or the Holders of not less than 33% in principal amount of a particular series of EFH Legacy Q/R Notes sent a written notice to EFH Corp., and declared the principal amount of such series to be due and payable

19

immediately.  *See* Indenture Sec. 802.  That has not happened.  There has been no acceleration of

the EFH Legacy Q/R Notes.

46.    In this respect, the terms of the EFH Legacy Q/R Indentures and Notes are

fundamentally different from the terms of any other debt documents already reviewed by this

Court in connection with prior makewhole disputes in these cases.

(iii)    ***The Fixed "Stated Maturity" Dates Were Not Automatically Advanced by the Filing of the Petition***

47.    In addition, the Stated Maturity dates of the EFH Legacy Q/R Notes were

unaffected by the filing of EFH Corp.'s petition.  The definition of Stated Maturity provides that

it is "the date on which the principal of such obligation or such installment of principal or

interest is stated to be due and payable (*without regard to any provision for redemption,

prepayment, acceleration, purchase or extension*)."  *See* EFH Legacy Q/R Indentures, Section

101 (emphasis added); *see, e.g., In re Chemtura Corp.*, 439 B.R. 561, 601 (Bankr. S.D.N.Y.

2010)(finding that the bondholders had the better argument because the notes at issue provided

for a  "Maturity Date" defined as a date certain, the right to accelerate did not change that

contractual definition, and the contract provided for the makewhole becoming due if the notes

were paid before the "Maturity Date" as so defined).

48.    The filing of a petition under the Bankruptcy Code is sometimes said to act as an

automatic acceleration <u>for purposes of filing a proof of claim</u>.  However, that does not alter the

parties' rights under the contract, and does not defeat a lender's right to a redemption premium

under the applicable contract.  This Court has already ruled as much in the First Lien Makewhole

Ruling.  There, based on the plain language of the First Lien Indenture, the Court held that in the

absence of a ***contractual*** acceleration, EFIH's refinancing would be an "Optional Redemption"

20

and the "Applicable Premium" **would be due and owing** to the First Lien Noteholders.  *See* First

Lien Makewhole Ruling.

49.    As this Court ruled:

> if the Court were to lift the automatic stay, *nunc pro tunc* to a date
> on or before the repayment of the Notes on June 19, 2014, to allow
> the Trustee to waive the default and decelerate the Notes **then
> EFIH's refinancing would be an Optional Redemption** under
> section 3.07 of the Indenture **and the Applicable Premium would
> be due and owing** to the non-settling Noteholders.

First Lien Makewhole Ruling, at ¶ 68 (emphasis added).  That ruling is squarely contrary to any

notion that automatic acceleration under the Bankruptcy Code (which perforce is present in

every bankruptcy) — as opposed to automatic contractual acceleration pursuant to certain other

indentures' very different contract language — forecloses allowing claims for makewhole

amounts universally.

50.    Indeed, if acceleration for purposes of filing a proof of claim were acceleration for

all purposes, then prepayment and makewhole payments would never be enforceable in

bankruptcy.  If that were so, then this Court would not have needed to interpret the contractual

acceleration clause in the EFIH First Lien Indenture in its ruling on the EFIH first lien

makewhole claim.  *See In re Energy Future Holdings Corp*., 527 B.R. 178, 191 (Bankr. D. Del.

2015).  If the Court applies the same analysis to the EFH Legacy Q/R Indentures, based on the

plain language of the contracts and the undisputed fact that there has been no notice of

acceleration, the EFH Legacy Q/R Holders are entitled to makewhole payments in connection

with any voluntary redemption such as that contemplated under the Plan.

51.    Moreover, this aspect of the First Lien Makewhole Ruling is fully in keeping with

numerous courts that have considered this issue.  *See*, *e.g.*, *Biloxi*, 445 B.R. at 630, 631, 632

("The automatic acceleration of a debt under the Bankruptcy Code allows a lender to file a proof

of claim for the unmatured principal amount of the debt under §502 without violating the

automatic stay, but such acceleration is relatively limited and does not change the maturity date

of the debt.")(internal citations omitted); *see also In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr.

C.D. Cal. 1987)("[A]utomatic acceleration of a debt upon the filing of a bankruptcy case is not

the kind of acceleration that eliminated the right to prepayment premium"); *In re Payless*

*Cashways, Inc.*, 287 B.R. 482, 488 (Bankr. W.D. Mo. 2002)(lender was not entitled to default

interest because the court found that "the filing of the bankruptcy petition in this case did not per

se accelerate the Loans.  Oaktree took no affirmative action to accelerate as it was required to do

by federal bankruptcy law, and the law of New York").

52.     As the Seventh Circuit made clear in *In re LHD Realty Corp*., 726 F.2d 327 (7th

Cir. 1984), the correct path for a lender who wishes to preserve a right to a redemption premium

in the shadow of a bankruptcy filing is <u>not</u> to accelerate, and if the debtor repays the loan (as the

Plan here provides) enforce the premium.  Specifically, the Seventh Circuit stated that:

> [I]f the lender wishes to preserve its right to a premium, it must forebear
> from exercising its acceleration option and await the trustee's or the debtor's
> decision.  Should the trustee or the debtor then decide to repay the loan, the
> lender would presumably be able to enforce an otherwise valid prepayment
> premium.

*Id*. at 332.  That ruling (and all of the others previously discussed) would be nonsensical if, as the

Debtors here wrongly assert, filing a petition universally advanced the due date.

53.     In contrast to the EFH Legacy Q/R Notes, some <u>other contracts</u> with very

different language <u>provide contractually</u> for acceleration, automatically, upon a default due to a

bankruptcy filing.  Indeed, that is what the Court was referring to in paragraph 56 of the First

Lien EFIH Makewhole Ruling when it said: "When the EFIH Debtors filed for bankruptcy, the

Notes automatically accelerated and became due and payable immediately."  That was so only

because under the very different contract language in that indenture, the parties had agreed to a provision that resulted in acceleration with no other required action upon a default due to bankruptcy.  It is more than a little disingenuous for the Debtors to twist that language out of its context as they have done in the Second Claim Objection and proffer it as support for their version of universal automatic acceleration.

54.    The Debtors have only at the last minute asserted in their objection, for the first time, the newfound position that the EFH Legacy Notes were automatically accelerated in the event of bankruptcy. These statements are a stark about-face from their oft-repeated and publicly-filed representations exactly to the contrary.  In SEC filings and other investor materials, the Debtors expressly represented that, with respect to the EFH Legacy Q/R Notes: "There is no automatic acceleration, even in the event of bankruptcy, insolvency or reorganization of EFH Corp." *E.g*. Form 424B3 - Prospectus of Energy Future Holdings Corp., Dated April 4, 2012; Preliminary Offering Memorandum of TXU Corp.; Offering Memorandum of TXU Corp. dated November 22, 2004.  Either the Debtors' public filings were misleading on this glaringly material matter, or they should be held to their prior representations and not be heard now to argue the very opposite of what they represented and led investors to believe.

55.    Separate and apart from the foregoing general considerations, here, due to the special language of the EFH Legacy Q/R Indentures, even if filing the petition were said to automatically accelerate the EFH Legacy Q/R Notes, that would still not undermine the EFH Legacy Q/R Holders' entitlement to payment of the Redemption Price.  Unlike other indentures, the amount owed in the case of a full payment prior to the "Stated Maturity" is the Redemption Price – and "Stated Maturity" does not change on account of any acceleration, whether contractual or otherwise.

(iv)    ***The Redemption Price Is Not Unmatured Interest***

56.    The exception under section 502(b)(2) of the Bankruptcy Code disallowing claims for unmatured interest does not apply because the Redemption Price is not unmatured interest. *In re Trico Marine Servs., Inc*., 450 B.R. 474 (Bankr. D. Del. 2011) (claim for makewhole is liquidated damages); *In re School Specialty, Inc*., No. 13-10125, 2013 WL 1838513 (Bankr. D. Del. 2013) (claim for makewhole is liquidated damages).

57.    Here it is clear that the lenders and borrowers agreed upon two alternative payment structures: one, payment of interest at a given rate periodically over time and eventually principal; the other, a higher total dollar amount if they elected to make a single early payment. The second alternative does not include periodic payments over time.  Moreover, under New York law, absent such a contractually agreed-upon alternative, any early payment would violate the "perfect tender rule" and would entitle the lender to damages.  *See e.g., Arthur v. Burkich*, 131 A.D.2d 105, 106, 520 N.Y.S.2d 638 (N.Y. App. Div. 1987) (providing that under perfect tender rule, a borrower "has no right to pay off his obligation prior to its stated maturity date in the absence of a prepayment clause.").  The agreed-upon alternative thus functions as a liquidated damages provision.  As the cases cited above recognize, liquidated damages are not considered interest.[9]

(v)    ***The Makewhole Claims Should Also Independently be Allowed Under the Case Law Regarding Solvent Debtors***

58.    As demonstrated above, the EFH Indenture Trustee's Makewhole Claims under the EFH Legacy Q/R Indentures should be allowed under the two-step analysis. But <u>independent</u>

---

[9]    If for some reason it were determined that the makewholes are not to be enforced, EFH Noteholders are entitled to an alternative remedy by way of restitution.  Having negotiated interest and other terms for notes that include a makewhole, the noteholders conferred a benefit on the borrowers.  Retention of that benefit, while repudiating an essential term of the agreement, would be unjust.  *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 49(1), 49(3), 50(2), 52(1), 52(2).

of that analysis, the makewhole must also be fully allowed (and if not, the EFH Legacy Q/R

Note Claims are not unimpaired) because this is a case involving a solvent debtor.

59.     It is expected that the evidence at trial will demonstrate that EFH Corp. is solvent.

As discussed more fully above, in solvent debtor cases, "the bankruptcy rule is that where there

is a contractual provision, valid under state law, the bankruptcy court will enforce the contractual

provision."  *Gencarelli*, 501 F.3d at 7 (quoting *Cont'l Inv. Corp.*, 679 F.2d at 269).  *See* the

discussion of solvent debtor cases in Section III(B), *supra*.  Pursuant to this case law, the EFH

Legacy Q/R Claims should be allowed.

**D.      There Has Been No Objection to the EFH Unexchanged Notes' Makewhole Claims**

60.     While the EFH Legacy Q/R Notes discussed above are unique in these cases in

that they do not contain an acceleration clause, they are not the only notes for which Makewhole

Claims asserted by the EFH Indenture Trustee.  As detailed above, the EFH Indenture Trustee

has asserted $143,206 in Makewhole Claims arising under the 9.75% Senior Notes Indenture and

10.00% Senior Notes Indenture.  Those Claims have not been objected to in the Plan, the Second

Claim Objection or otherwise.  Those Claims are deemed allowed.  *See* 11 U.S.C. § 502(a) ("A

claim . . . is deemed allowed, unless a party in interest, . . .  objects.").  Accordingly, those

noteholders are entitled to vote and the Plan may not be confirmed unless it is amended to

provide for payment of those amounts.

**E.      The Plan Impairs the EFH Indenture Trustee's Claims by Failing to Provide an
         Adequate Reserve or Other Satisfactory Provision for Payment of Contract Rate
         Postpetition Interest and Other Related Amounts**

61.     Under Art. VII.K of the Plan, "Claims for postpetition interest with respect to . . .

EFH Legacy Note Claims, EFH LBO Note Claims, and EFH Unexchanged Note Claims shall be

Allowed under the Plan at the Federal Judgment Rate as set forth in Article III.B of the Plan."

Under the Plan, Federal Judgment Rate is defined as 0.11% compounded annually. *Id.* at Art.

III.A.182.  In contrast, each Indenture provides for a significantly higher contract rate of interest:

| Indenture | Interest Rate Per Annum |
|---|---|
| Series P | 5.55% |
| Series Q | 6.50% |
| Series R | 6.55% |
| 9.75% Senior Notes | 9.75% |
| 10.00% Senior Notes | 10.00% |
| 10.875% EFH LBO Senior Unsecured Notes | 10.875% |
| 11.250%/12.000% EFH LBO Senior Toggle | Cash Interest at 11.250% PIK Interest at 12.00% |

62.     The Debtors' attempt to pay postpetition interest only at the substantially lower

Federal Judgment Rate is flatly inconsistent with the agreed-upon contract rates in the

Indentures.  Plainly, to provide for interest only at some rate less than the rate set forth in the

contract does not "leave unaltered" the "contractual rights" of the holders.  It is, therefore, clear

that the Debtors may only satisfy section 1124(1)'s requirement that contract rights be

"unaltered" as a precondition to treating the claims as unimpaired by establishing a fully

satisfactory reserve.

> (i)     ***The Quality of the Postpetition Interest Reserve Impairs EFH
> Noteholders***

63.     Under Art. VII.K of the Plan, "Any such Claims for postpetition interest in excess

[of the Federal Judgment Rate] shall be Disputed Postpetition Interest Claims. Unless the

Disputed Postpetition Interest Claims are either Allowed by Final Order or disallowed by the

Bankruptcy Court on or before the Effective Date, Reorganized EFH will establish the

Postpetition Interest Reserve on the Effective Date."   The "Postpetition Interest Reserve" is

defined as a

> reserve in the amount of the difference between interest accrued on
> EFIH Unsecured Note Claims, EFH Legacy Note Claims, EFH
> LBO Note Claims, and EFH Unexchanged Note Claims from the

> Petition Date through the Effective Date at the Federal Judgment
> Rate, and interest accrued on such Claims from the Petition Date
> through the Effective Date at the applicable non-default contract
> rate, but not including interest on interest, or such other amount
> ordered by the Bankruptcy Court.

Plan, at Art.III.A.266.  Very little information is provided about the Postpetition Interest Reserve

except that it "is expected to be held in a single segregated cash account, controlled by,

and in the name of, New EFH, and governed by the terms of the Plan and the Confirmation

Order."  Disclosure Statement, at 14.  The details for this fund are not sufficient and the security

of payment is not clear.  The EFH Indenture Trustee proposes that the Plan be modified to

provide greater detail regarding the reserve and proposes that escrow arrangements be

established to provide certain payment.

66.    Unless an adequate reserve is established to truly leave the EFH Indenture

Trustee's legal, equitable and contractual rights to interest unaltered through the trial and appeal

process, then the Debtors will not have met their burden to establish that the EFH Noteholders

are unimpaired under section 1124.

> (ii)    *Postpetition Interest Should be Allowed at the Contract Rate*

65.    Given that the Debtors elected to treat the EFH Indenture Trustee's claims as

unimpaired under the Plan, there is no basis in the Bankruptcy Code to limit the interest rate to

the Federal Judgment Rate.  The governing standard for claims that are treated as unimpaired is

under section 1124(1), which makes no reference to section 726(a)(5) and, to the contrary,

mandates that the "legal, equitable and contractual rights" must not be altered.

66.    In a chapter 11 case, the only reference to section 726(a)(5) is indirectly through

application of section 1129(a)(7), which indicates – by express statutory language – that the

threshold requirements of chapter 7 are to be taken as a <u>floor</u>, <u>not a ceiling</u>.  The amount to be

received under section 1129(a)(7) must be "**not less than**" the creditor would receive in chapter 7. "Not less than" does not mean "equal to".

67.     The rule that postpetition interest must be allowed at the contract rate in solvent-debtor cases is compelled by Supreme Court precedent, legislative history, statutory language and pre-Code practice.  In *Consol. Rock Prods. Co. v. Dubois*, 312 U.S. 510, 527-29 (1941), the Supreme Court ruled that in the case of a solvent debtor, absolute priority is violated when equity receives value before bondholders are paid in full, which includes contract rate of interest.  *Id*.; *see also Empire Trust Co. v. Equitable Office Bldg. Corp.,* 167 F.2d 346, 347 (2d Cir. 1948). The Supreme Court has repeatedly emphasized that there must be a strong presumption that pre-Code practice must be enforced, absent clear statutory language indicating to the contrary.  *See Cohen v. De La Cruz*, 523 U.S. 213, (1998)("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure . . . .") (internal citations omitted); *Dewsnup v. Timm*, 502 U.S. 410, 410 (1992) (stating that the Court is "reluctant to accept arguments that would interpret the Bankruptcy Code, however vague the particular language under consideration might be, to effect a major change in pre- Code practice that is not the subject of at least some discussion in the legislative history."); *see also In re Fed.- Mogul Global Inc.*, 684 F.3d 355, 375 (3d Cir. 2012) ("Courts will not presume a departure from pre-Code bankruptcy practice in the absence of clear congressional intent.").  Here, there is no clear statutory language or legislative intent to depart from the pre-Code practice of requiring payment of postpetition interest at the contract rate.

68.     Although it is expected that the trial evidence will demonstrate that EFH Corp. is solvent, the "fair and equitable" standard in section 1129(b) will nonetheless also mandate use of the contract rate for postpetition interest even if solvency is not shown.  As *Dow III* makes clear,

in that event the same statutory language and legislative history considerations point to a review

of the equities for determining the proper interest rate. *Dow III*, 456 B.R. at 678-79 (stating that

in the case of an insolvent debtor "bankruptcy courts have concluded that default interest need

not be awarded in every instance for a plan to pass muster under § 1129(b)(1). Instead,

bankruptcy courts analyze whether § 1129(b) requires the payment of default interest on a case-

by-case basis."); *see also In re Terry Ltd. P'ship,* 27 F.3d 241, 243 (7th Cir. 1994)(holding that

when the debtor is insolvent, default interest may be awarded based on the facts and equities of

each specific case); *In re Southland Corp.*, 160 F.3d 1054, 1059-60 (5th Cir. 1998)(holding that

in the case of an insolvent debtor, "default interest rate is generally allowed, unless the higher

rate would produce an inequitable result.").

69.     For much the same reason as demonstrated above, the "fair and equitable"

standard is not limited by the Federal Judgment Rate even in a non-solvency case. That is

especially so here, where under the Plan (which asserts that all E-side creditors are unimpaired)

there is no other competing class of creditors that is likely to be harmed by the award of contract

rate interest.

70.     Finally, section 502(b)'s disallowance of unmatured interest does not hold sway

in this case. Here the Plan provides for the payment of at least some postpetition interest. The

only contested issue is the proper rate. In effect, the Debtors have waived the stark position that

all unmatured interest should be disallowed. For the Debtors to insist that all unmatured interest

must be disallowed would be inconsistent with the Plan's provision for some postpetition

interest.[10]

---

[10]     It should also be noted that the Debtors have objected to other less material aspects of the claims such as original issue discount ("OID") and interest on interest. Those will be addressed in response to the Debtors' claim objections.

71.    Moreover, the solvent-debtor cases firmly establish entitlement to postpetition

interest despite section 502(b), as more fully discussed in part III(B), *supra*.

**F.    The Plan's Treatment of the EFH Indenture Trustee's Claims as Unimpaired Mandates Compliance With Section 1124 and Therefore Honoring the Contractual Provisions Providing for the Payment of the Fees and Expenses of the <u>EFH Indenture Trustee and its Advisors</u>**

(i)    *Controlling Supreme Court Precedent Requires Payment of the EFH Indenture Trustee Fees and Expenses as Part of the EFH Indenture Trustee's Unsecured Claims*

72.    Another form of contractual impairment inflicted on the EFH Noteholders by the

Plan results from the Debtors' refusal to pay, and objection to, the EFH Indenture Trustee Fees

and Expenses as contractually provided for under each Indenture.  Each Indenture provides that

the Debtors shall satisfy the reasonable fees and expenses of the EFH Indenture Trustee and its

professionals.[11]  By way of example, section 907(b) of the EFH Legacy Series R Indenture

provides that EFH Corp. shall "reimburse the Trustee upon its request for all reasonable

expenses, disbursements, and advances reasonably incurred or made by the Trustee in

accordance with any provision of this Indenture (including the reasonable compensation and the

expenses and disbursements of its agents and counsel) . . . ."  As discussed above in the context

of makewholes, in order for the Plan to leave the EFH Noteholders unimpaired, the Plan must

honor the terms of the Indentures unless compliance is explicitly excused by the plain language

of the Bankruptcy Code.

73.    Here, the Debtors have objected to allowance of the EFH Indenture Trustee Fees

and Expenses and the Plan does not provide for a reserve or other clear means of payment when

those claims are allowed.  The Supreme Court in *Travelers Cas. & Sur. Co. of Am. v. PG&E*,

---

[11]    The chart attached hereto as <u>Exhibit 2</u> sets forth the fee-payment provisions in each Indenture.

549 U.S. 443, 448 (2007) plainly stated that "an otherwise enforceable contract allocating

attorney's fees (i.e., one that is enforceable under substantive, nonbankruptcy law) is allowable in

bankruptcy except where the Bankruptcy Code provides otherwise."[12]  Indeed, a creditor's

"entitlements in bankruptcy arise in the first instance from the underlying substantive law

creating the debtor's obligations, subject to any qualifying or contrary provisions of the

Bankruptcy Code." *Id.* at 444 (quoting *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20

(2000)).  This "principle requires bankruptcy courts to consult state law in determining the

validity of most claims." *Id.*  Thus, claims that are "enforceable under applicable state law will

be allowed in bankruptcy unless they are **expressly disallowed**." *Id.* at 452 (citing 11 U.S.C. §

502(b) (emphasis added).

74.    Further, each Indenture provides that EFH Corp. shall indemnify the EFH

Indenture Trustee for all costs and expenses associated with serving as trustee.[13]  For example,

section 907(c) of EFH Legacy Series R Indenture provides that EFH Corp. shall:

> indemnify the Trustee for, and hold it harmless from and against,
> any loss, liability or expense reasonably incurred by it arising out
> of or in connection with the acceptance  or administration of the
> trust or trusts hereunder or the performance of its duties hereunder,
> . . . .

75.    Moreover, in these cases, the Debtors have already admitted that an indenture

trustee is entitled to reimbursement of its expenses, including attorney's fees, in accordance with

---

[12]    In opposition to the EFH Indenture Trustee Fees and Expenses, the Debtors cite to *In re Seda France, Inc.*, No. 10-12948- CAG, 2011 WL 3022563 (Bankr. W.D. Tex. July 22, 2011), a Texas bankruptcy court case that is not controlling on this Court.  The more persuasive post-*Travelers* analysis is provided by the Second Circuit Court of Appeals, which stated that an "unsecured claim for postpetition fees, authorized by a valid pre-petition contract, is allowable under section 502(b) and is deemed to have arisen pre-petition. . . [C]laims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed." *Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 147 (2d Cir. 2009).  In all events, the failure to pay contractual fees and expenses in a solvent debtor case such as this one would not be "fair and equitable" under section 1129.

[13]    The chart attached hereto as <u>Exhibit 3</u> sets forth the indemnification provisions in each Indenture.

the terms of the indentures.  *See Debtors' Objection to Motion for Order Authorizing Payment and Reimbursement of Certain Fees and Expenses of UMB Bank, N.A. as the EFIH Unsecured Indenture Trustee* [Docket No. 5909], at 4 n.5 ("An indenture trustee is entitled to reimbursement of its expenses, including attorney's fees, in accordance with the terms of the indenture if it fulfills its duties.")(internal citations omitted).  That is consistent with the holding of the Supreme Court in *Travelers.* Accordingly, in accordance with *Travelers*, the fees and expenses must be included as a part of the claims and so long as the plan fails to provide for the payment of those amounts, they are impaired.

76.      Having established that the Indentures and controlling precedent unambiguously provide for the payment of the expenses of the EFH Indenture Trustee and its advisors, the next question is how such fees and expenses should be paid.  The EFH Indenture Trustee Fees and Expenses must be treated as administrative expenses under section 503(b)(1) as actual and necessary expenses because:

- each Indenture requires that the fees and expenses of the EFH Indenture Trustee and its advisors incurred in connection with rendering services in a bankruptcy case shall be treated as administrative expenses; therefore, the Debtors can only meet their burden to show that the EFH Noteholders are unimpaired by paying the EFH Indenture Trustee Fees and Expenses in accordance with the contract; and

- the services provided by the EFH Indenture Trustee were actual and necessary to preserving the estate.

77.      The EFH Indenture Trustee Fees and Expenses **must** be paid as administrative expenses under section 503(b) in order for the EFH Noteholders to be rendered unimpaired.  **For the avoidance of doubt, at this time, the EFH Indenture Trustee is not seeking a finding that it is entitled to a claim for "substantial contribution," but all such rights are reserved.**

(ii)    ***Each Indenture Provides That the EFH Indenture Trustee Fees and Expenses Shall be Treated as Administrative Expenses***

78.    As shown on the chart attached as <u>Exhibit 4</u>, each Indenture (the applicable "contract" under section 1124) requires that the fees and expenses of the EFH Indenture Trustee and its advisors incurred in connection with rendering services in a bankruptcy case shall be treated as administrative expenses.  For example, the Series R Indenture provides that:

> when the Trustee incurs expense or renders services in connection with an Event of Default specified in Section 801(d) or Section 801(e), the expenses (including the reasonable charges and expenses of its counsel) and the compensation for the services are intended to constitute expenses of administration under any applicable Federal or State bankruptcy, insolvency or other similar law.[14]

79.    Not only does the Plan fail to classify the fees and expenses of the EFH Indenture Trustee and its advisors as administrative expenses, the Debtors have actually objected to the allowance of such fees and expenses as unsecured claims and are presumably asking the Court not to follow *Travelers*.  *See* Disclosure Statement, at 125 ("The filing and notice of filing of the Plan, in accordance with Fed. R. Bankr. P. 3007(a), shall serve as the Debtors' objection to the Alleged Unsecured Trustee Fees and Expenses Claims [of the EFH Indenture Trustee] . . . .").  By denying payment of those fees and expenses through the Plan objection, the Debtors are altering the legal and contractual rights of the EFH Noteholders under the Indentures in violation of section 1124.  The EFH Indenture Trustee Fees and Expenses must be paid as administrative expenses in order for the claims to be unimpaired under section 1124.

80.    The Debtors may argue that courts have held that a "contractual right to reimbursement and compensation under the Indenture does not result in an automatic entitlement

---

[14]    "Event of Default" is defined as, among other things, the commencement by the company of a voluntary proceeding under federal bankruptcy law.

to compensation under § 503." *See e.g. In re Buttes Gas & Oil Co.*, 112 B.R. 191, 196 (Bankr.

S.D. Tex. 1989)(citing *In re Revere Copper & Brass, Inc.*, 60 Bankr. 892 (Bankr. S.D.N.Y.

1986).  However, those courts were not confronted with the issue here where the Debtors have

purported to leave a claimant unimpaired, thus invoking the requirements under section 1124 that

the legal, equitable and contractual rights of the claimant be left unaltered.  For example, in *In re*

*GSC, Inc.*, 453 B.R. 132, 177-78 (Bankr. S.D.N.Y. 2011), the court was confronted with an

analogous issue in connection with evaluating the treatment of the balance of a claim following a

credit bid and stated that:

> Although the credit bid is for the full amount of the claim*, no amount was sought for professional fees or any other expenses that would otherwise be recoverable under the Prepetition Credit Agreement.* A plan that disposes of the secured creditor's claim in full through a credit bid *but still excludes certain rights the party would otherwise be entitled to alters the "legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."* Simply because a secured creditor exercised its right to fully satisfy its claim through a credit bid would not seem to result in a creditor being found to be unimpaired. . . . it seems that *the likely result would be that the Prepetition Lenders' claims would be impaired under section 1124 since the concept of "impaired" under section 1124 is viewed as broader than the notion of the claim being satisfied.*

*Id.* (emphasis added).  Accordingly, in order to render the claims of the EFH Noteholders

unimpaired, the Debtors must honor the legal and contractual rights of the EFH Noteholders

under the Indentures to payment of the EFH Indenture Trustee Fees and Expenses as

administrative expenses under section 503(b).[15]

(iii)    ***The EFH Indenture Trustee Fees and Expenses Must be Allowed as Actual and Necessary Costs of Preserving the Debtor's Estate Under***

---

[15]    The EFH Indenture Trustee asserted a claim in each EFH POC for fees and expenses under section 503(b) and the applicable section of each Indenture.

*Section 503(b)(1)(a) of the Bankruptcy Code Because the TIA Requires
that the Debtors have a Trustee in Place*

81.    If the Court determines that the fees and expenses of the EFH Indenture Trustee

and its advisors should not be paid as part of the contractual compliance required for the Court to

find that the EFH Notes Classes are unimpaired, then the EFH Indenture Trustee submits that

such fees and expenses still warrant allowance as administrative expenses under section

503(b)(1)(A) of the Bankruptcy Code.[16]  As detailed below and as will be demonstrated at trial,

applicable law and practical necessities require that the Debtors have an indenture trustee in

place during the chapter 11 cases.  In recognition of that fact, the Debtors, on the eve of

bankruptcy, contracted with the Indenture Trustee for the required indenture trustee services.

Payment of the EFH Indenture Trustee Fees and Expenses is part of the contractually agreed

upon price for these services.  Further, when determining the reasonable value of services for

purposes of calculating an administrative expense claim, "there is a presumption that the contract

rate is reasonable."  *In re Smurfit-Stone Container Corp.*, 425 BR 735, 741 (Bankr. D. Del.

2010).

82.    Section 503(b)(1)(A) provides that: "there shall be allowed administrative

expenses, . . . including—(1)(A) the actual, necessary costs and expenses of preserving the

estate. . . ."  11 U.S.C. § 503(b)(1)(A).  In the Third Circuit, for a claim in its entirety to be

entitled to priority under section 503(b)(1)(A) "the debt must arise from a transaction with the

debtor-in-possession. . . . [and] the consideration supporting the claimant's right to payment

[must be] beneficial to the debtor-in-possession in the operation of the business."  *See e.g.*, *In re*

---

[16]    As noted, for the avoidance of doubt, the EFH Indenture Trustee is not <u>at this time</u> prosecuting a substantial
contribution claim under section 503(b)(3)(D) of the Bankruptcy Code.  All such rights are, however,
reserved.

*Hayes Lemmerz Int'l, Inc*., 340 B.R. 461, 472 (Bankr. D. Del. 2006)(granting administrative expense).

83.     It is also "well settled that expenses incurred by the debtor-in-possession in attempting to rehabilitate the business during reorganization are within the ambit of § 503." *In re Jartran*, Inc., 732 F.2d 584, 586 (7th Cir. 1984)(citing *Reading v. Brown*, 391 U.S. 471, 483 (1968)(providing expansive interpretation of what is an "actual, necessary cost" entitled to priority, and stating that "actual and necessary costs should include costs ordinarily incident to operation of a business, and not be limited to costs without which rehabilitation would be impossible.").

84.     Courts recognize that the meaning of "preserving the estate" under section 503 of the Code includes complying with federal and state laws.  *See In re Am. Coastal Energy,* 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009)("A bankruptcy petition is not a grant of immunity. Bankrupt debtors are no different from any citizen in that they must comply with state and federal laws.")(citing *Midlantic Nat. Bank v. N.J. Dept. of Envtl. Prot*., 474 U.S. 494, 502, (1986)("Congress has repeatedly expressed its legislative determination that the trustee is not to have carte blanche to ignore nonbankruptcy law."); *see also N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 534 (1984)(stating that a "debtor-in-possession is not relieved of all obligations under the National Labor Relations Act simply by filing a petition for bankruptcy."); *In re CMC Heartland Partners*, 966 F.2d 1143, 1146 (7th Cir. 1992)("Having been a debtor in bankruptcy does not authorize a firm to operate a nuisance today, or otherwise excuse it from complying with laws of general application.").  Indeed, debtors are statutorily mandated to comply with state law.  *See* 28 U.S.C. § 959(b).  In *Matter of H.L.S. Energy Co., Inc.,* 151 F.3d 434, 436 (5th Cir. 1998), the Fifth Circuit Court of Appeals held that postpetition plugging and abandonment

obligations with respect to oil wells are generally entitled to administrative priority. The Fifth

Circuit reasoned that debtors must operate a bankruptcy estate in accordance with state law and

held that expenses incurred to bring a debtor in compliance with state law are actual and

necessary costs. *See id.*

85.    Here, the EFH Indenture Trustee Fees and Expenses satisfy the test to qualify as

an administrative expense. First, the fees of the EFH Indenture Trustee and its counsel arise

under the Indentures to which Debtor-EFH Corp. is a party. EFH Corp. contracted for the

services provided by the EFH Indenture Trustee. Thus, the debt arises from a transaction with a

debtor in possession. Indeed, EFH Corp. induced AST to succeed BNY as indenture trustee for

the EFH Notes days before the bankruptcy filing. Second, there is no doubt that the services

provided by the EFH Indenture Trustee and its counsel are beneficial and absolutely necessary to

the Debtors in the operation of their business because they are provided for in the Indentures, and

a functioning and qualified indenture trustee is statutorily required under the Trust Indenture Act

of 1939, codified at 15 U.S.C. §§ 77aaa-77bbbb (the "TIA").

       (iv)    ***To Comply with the TIA, EFH Corp. Must Have an Indenture Trustee
           in Place***

86.    The entire thrust of the Trust Indenture Act of 1939 was to require that issuers of

indentures being offered to the public provide an independent and qualified trustee for the

purpose of protecting the interests of the public and investors. Congress expressly found "that

the national public interest and the interest of investors in notes, bonds, debentures, . . . which are

offered to the public, are adversely affected – (1) when the obligor fails to provide a trustee to

protect and enforce the rights and to represent the interest of such investors…" Trust Indenture

Act of 1939 (TIA) section 302, 15 U.S.C. § 77bbb(a). *See, e.g.*, *Bluebird Partners, L.P. v. First

Fid. Bank, N.A.,* 85 F.3d 970, 974 (2d Cir. 1996)(citing 15 U.S.C. § 77bbb(a)); *see also*

*Marblegate Asset Mgmt., LLC v. Educ. Mgmt. Corp.,* 2015 U.S. Dist. LEXIS 81395 (S.D.N.Y.

June 23, 2015); *BOKF v. Caesars Entm't Corp*., 2015 U.S. Dist. LEXIS 113794 (S.D.N.Y. Aug.

27, 2015).  Notably, no provision of the Bankruptcy Code alters the TIA nor does any

Bankruptcy Code provision relieve a debtor with publicly issued debt of the obligation to comply

with the TIA.  A debtor's compliance with the TIA is similar to a debtor's ongoing obligation to

comply with securities laws and environmental laws – unless the Bankruptcy Code explicitly

excuses compliance, the Debtors must comply.

87.       Furthermore, even if applicable law did not require that EFH Corp. have an

indenture trustee in place, under the circumstances of these particular chapter 11 cases, the fees

of the EFH Indenture Trustee and its counsel are actual and necessary costs incurred in

connection with services provided to preserve the Debtors' estates.  Article IV.I of the Debtors'

own Plan contemplates the continued existence of a functioning EFH Indenture Trustee to make

distributions under the Plan.  Moreover, under the reinstatement option, the continued services of

the EFH Indenture Trustee will necessarily be required.  In fact, the Debtors could only propose

the reinstatement option if the EFH Indenture Trustee continued performing its duties under the

Indentures during the pendency of these chapter 11 cases.  Thus, the continued services of the

EFH Indenture Trustee are actual and necessary to the restructuring proposed by the Debtors.

(v)      ***Failing to Classify the EFH Indenture Trustee Fees and Expenses as
Administrative Claims Violates Section 1122(a)***

88.       By failing to classify the EFH Indenture Trustee Fees and Expenses as

Administrative Claims under the Plan, the Debtors have also violated section 1122(a) of the

Bankruptcy Code, which states that "a plan may place a claim or an interest in a particular class

only if such claim or interest is substantially similar to the other claims or interests of such

38

class." Since the EFH Indenture Trustee Fees and Expenses are entitled to administrative expense treatment, they should be classified as Administrative Claims.

89.     To reiterate, however, to the extent the Court finds that the EFH Indenture Trustee' Fees and Expenses should not be allowed as administrative expenses, they should at a minimum be allowed as part of the Indenture Trustee's unsecured claims under the Supreme Court's ruling in *Travelers*, as well as under the solvent debtor cases discussed above in Section III(B), as a contractual entitlement that the Court should enforce. The Plan's failure to provide for payment in full of such unsecured claims impairs the claims under section 1124.

**G.     The Allowance of the TCEH Settlement Claim In the
        Settlement Agreement Impairs EFH Corp. Creditors**

90.     Under the Plan, TCEH is granted a "settlement" unsecured claim against EFH Corp. in the Allowed amount of $700 million. Plan, at Art.I.A.399 and Art. IV.B.15. The TCEH Settlement Claim will be deemed satisfied upon Consummation. Plan, at Art. IV.B.15. However, if the Plan is not consummated, the TCEH First Lien Creditors will receive the entirety of the TCEH Settlement Claim in the allowed, non-priority amount of $700 million. Settlement Agreement, at § 2.1(b). While this allowed claim is provided for in the Settlement Agreement, for all practical purposes, that Settlement Agreement is, or should have been, integrated into the Plan. Indeed, one of the conditions precedent to confirmation of the Plan is that the Settlement Agreement is approved. Plan, at Art. IX.A.1. Furthermore, the evidence will show that all parties believe that the Settlement Agreement and Plan operate as an integrated whole. Accordingly, the TCEH Settlement Claim impairs EFH Noteholders because it locks in a $700 million payment on account of unfiled, unscheduled and unproven claims against EFH Corp.

**H.**    **Any Potential for Equitable Mootness of any Appeals Impairs the EFH Noteholders**

91.    In the Disclosure Statement, the Debtors repeatedly state that they reserved their right to raise any arguments in any appeal, "including any arguments as to whether such appeals are equitably moot." *See e.g.,* Disclosure Statement, at 16, 117.  One of the legal and equitable rights that the EFH Noteholders are entitled to in any Plan that treats them as unimpaired, however, is the right to appeal any adverse rulings by the Court and to still be paid the full allowable amount of their claims.  As described above, the Debtors have not established an adequate reserve for any portion of the EFH Indenture Trustee's makewhole or fees and expenses claims that they dispute.  Nor have they established a mechanism for those claims to be paid if they are allowed by this Court or an appellate court.  For instance, if this Court were to deny the allowance of the EFH Indenture Trustee's Makewhole Claims but the District Court or Third Circuit were to allow those claims following an appeal, there is no procedure in the Plan for those claims to be paid.  The EFH Indenture Trustee would have won a pyrrhic legal victory but would have no adequate remedy for payment.  Here, where the Debtors seek to preserve the right to argue that any appeals are moot, and where provision for payment of any disputed claim is not made, the claims of the EFH Noteholders are impaired.[17]

**I.**    **The Plan Fails to Satisfy the Requirements of Confirmation
Set Forth in Section 1129**

(i)    ***The Plan Violates Section 1129(a)(3) Because It Was Not Validly
Authorized***

92.    Section 1129(a)(3) provides that a plan can only be approved if it is proposed in good faith and "not by any means forbidden by law."  Courts have interpreted that provision to mean that the proposal of the plan is not by any means forbidden by law. *See e.g., Irving*

---

[17]    Notably, unless the Debtors waive their right to assert the equitable mootness argument in connection with any appeal, the EFH Noteholders will be impaired.

*Tanning Co. v. Me. Superintendent of Ins.,* 496 B.R. 644, 660 (B.A.P. 1st Cir. 2013); *see also In re Swartville, LLC,* 2012 Bankr. LEXIS 3809, at *15 (Bankr. E.D.N.C. Aug. 17, 2012).

93.    Here, discovery has revealed that, in contravention of a prior board resolution, neither the EFH Corp. board nor the TCEH board held any meetings to discuss, and never acted to approve, the inclusion of the Reinstatement Option in the Plan.  That change is material and should have been approved by EFH Corp.'s board.  Thus, the current version of the Plan was proposed without proper corporate authority in violation of EFH Corp.'s bylaws and applicable Texas law, the state where EFH Corp. in incorporated.[18]

(ii)    ***The Plan Violates Section 1129(a)(3) Because Releases Under the Plan are Forbidden***

94.    The Plan contains two types of improper releases.  First, Article VIII.C. of the Plan provides for broad releases of each Released Party "by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Director[] Settlement" (the "<u>Debtor Releases</u>").  "Released Party" includes, among others, the Debtors' current and former equity holders, officers, directors, and managers, including the Sponsors and the Disinterested Directors, and holders of TCEH debt.  *See* Plan, at Art.I.A.284.  Second, Article VIII.D. of the Plan provides for inappropriate third party releases pursuant to which each Releasing Party is deemed to have released and discharged each Released Party—including, among others, the Debtors' officers and directors and the Sponsors—from any and all Causes of Action (the "<u>Third Party Releases</u>" and together with the Debtor Releases, the

---

[18]    *See* Tex. Business Organizations Code § 21.401 (providing that "board of directors of a corporation shall: (1) exercise or authorize the exercise of the powers of the corporation; and (2) direct the management of the business and affairs of the corporation.").

"Releases"). "Releasing Party" includes, among others, holders of EFH Legacy Note Claims, EFH Unexchanged Note Claims and EFH LBO Note Primary Claims, without regard to whether these holders vote in favor of the Plan, and all Holders of Claims and Interests that are deemed to accept the Plan, who vote to accept the Plan or who abstain from voting on the Plan and do not opt out of the Releases. *See* Plan, at Art.I.A.285.

95.     As discussed in the EFH Official Committee Objection[19] and the EFH Official Committee Supplemental Objection,[20] which objections the EFH Indenture Trustee has joined, the releases are not permissible under the circumstances, the EFH Indenture Trustee objects to such releases, and it shall not be deemed to have agreed to them or be forced to accept them, notwithstanding any language appearing on any ballot or in the Disclosure Statement.

(iii)    ***The Plan Fails the "Best-Interest-of-Creditors" Test Under Section 1129(a)(7)***

96.     As argued above, contrary to the Debtors' assertion, the EFH Noteholders in Class A4, A5, A6 and B6 are, in fact, impaired by the Plan and cannot be presumed to have accepted the Plan. *Cf.* 11 U.S.C. § 1126(f) ("Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.").

---

[19]    *Trial Brief and Omnibus Objection of the EFH Official Committee to (i) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (ii) Confirmation Of the Fifth Amended Joint Plan Of Reorganization Of Energy Future Holdings Corp., Et Al., Pursuant to Chapter 11 Of the Bankruptcy Code* (the "EFH Official Committee Objection").

[20]    *Sponsor and Asbestos Supplement to Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Into And Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan OF Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of The Bankruptcy Code* (the "EFH Official Committee Supplemental Objection").

97.     As a result, in order to confirm the Plan, the Debtors must demonstrate that the Plan satisfies the best-interest-of-creditors test under section 1129(a)(7) as to Class A4, A5, A6 and B6.  Under section 1129(a)(7), holders of allowed claims must either (a) accept the plan of reorganization, or (b) receive or retain under the plan property of a value, as of the plan's assumed effective date, that is not less than the value such non-accepting holders would receive or retain if the debtors were to be liquidated under chapter 7 of the Bankruptcy Code on such date.  The Debtors bear the burden of proof in establishing by a preponderance of evidence that its plan meets the best interest of creditors test.  *See In re Wash. Mut., Inc*., 442 B.R. 314, 328 (Bankr. D. Del. 2011)(citing *In re Adelphia Commc'ns Corp.,* 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007) (finding that the plan proponent has the burden of proof in establishing by a preponderance of evidence that its plan meets the best interest of creditors test).

98.     Here, the EFH Noteholders were not solicited.  However, even if it is presumed that the EFH Noteholders were to reject the Plan, the Debtors cannot carry their burden with respect to the "best-interest of creditors" test because the Debtors asserted that all creditors of EFH Corp. were unimpaired and did not provide a liquidation analysis for EFH Corp.  See Disclosure Statement, at p. 168.  Since the EFH Noteholders are actually impaired, they are not receiving a 100% recovery and the Debtors have presented no evidence that EFH Noteholders are receiving more under the Plan than they would under chapter 7.  Accordingly, the Plan cannot be confirmed.

(iv)     *The Plan is Not Feasible Under Section 1129(a)(11)*

99.     The Debtors cannot satisfy section 1129(a)(11) of the Bankruptcy Code, which requires that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

43

100.    Here, the Plan is not feasible (i) for the reasons stated in the EFH Official Committee Objection and the EFH Official Committee Supplemental Objection, which the EFH Indenture Trustee has joined, and (ii) because the EFH Indenture Trustee's Makewhole Claims must be allowed.  Therefore, Condition Precedent 9 cannot be satisfied and the Plan cannot be consummated.  *See* Plan, at Art. IX.D.  Moreover, there is no indication that the Debtors are willing to waive that condition or that the Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH Supporting Second Lien Creditors and the TCEH Committee will consent to such waiver.  *See* Plan, at Art. III.B.4(c)(ii).  Finally, as will be shown at the Phase II trial, the Reinstatement Option is not permissible because (i) it appears that the Supplements relied on for reinstatement are void under the TIA, (ii) the plain language of the Supplements do not permit reinstatement at Reorganized TCEH in these circumstances, and (iii) reinstatement at Reorganized TCEH is not feasible.  The Court should not confirm a plan that cannot be consummated.

(v)    ***The EFH Notes Cannot be Cancelled Until All Claims Underlying the EFH Notes are Ultimately Adjudicated (and if Allowed, Paid)***

101.    Under Article IV.I. of the Plan, the Debtors propose that all of the EFH Notes "shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court . . . ."  The EFH Indenture Trustee objects to the cancellation of the EFH Notes until all of the proofs of claim asserting claims under the EFH Notes are fully adjudicated or resolved, all payments have been made, and all potential future indemnification claims are resolved.

**J.      Reservation of Rights Regarding Post-Emergence Documents**

102.    The Debtors filed the Plan Supplement on October 20, 2015.  The EFH Indenture

Trustee's review of those documents is ongoing and accordingly all rights to object to

confirmation based on their content are reserved.

**IV.**
**RESERVATION OF RIGHTS**

103.    The EFH Indenture Trustee reserves its right to amend this Objection or interpose

additional objections in response to (i) further amendments to the Plan or (ii) evidence that may

be introduced at the confirmation hearing.

**V.**
**CONCLUSION**

104.    Based on the foregoing, the EFH Indenture Trustee respectfully requests the Court

(i) deny confirmation of the Plan and (ii) grant such other and further relief as is just and proper.

Dated: Wilmington, DE
      October 23, 2015

**CROSS & SIMON, LLC**

By: */s/Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
gskelly@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust
Company, LLC, as Indenture Trustee*