PRIVILEGED AND CONFIDENTIAL

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>Energy Future Holdings Corp., *et al.,*[1]<br><br>                           Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Objection Deadline: 10/23/2015<br>Hearing:  11/3/2015 @ 9:30<br><br>**Re: Docket Nos.  4142, 5078,<br>      5197, 5244, 6107 and 6122** |

**TRIAL BRIEF AND OMNIBUS OBJECTION[2] OF FENICLE AND FAHY
TO (I) MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, TO
APPROVE A SETTLEMENT OF LITIGATION CLAIMS AND AUTHORIZE
THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE
SETTLEMENT AGREEMENT AND (II) CONFIRMATION OF THE FIFTH
AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.***

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas  75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on a final basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] In addition to the objections contained herein, Fenicle and Fahy also hereby adopt all pertinent arguments made by The EFH Official Committee in its' (A) Trial Brief and Omnibus Objection to (i) Motion of Energy Future Holdings Corp., Et al., To Approve A Settlement of Litigation Claims and Authorize The Debtors to Enter Into and Perform Under The Settlement Agreement And (ii) Confirmation of The Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of The Bankruptcy Code, and (B) Supplemental Objection of the EFH Official Committee To The Motion of Energy Future Holdings Corp., Et al., To Approve a Settlement of Litigation Claims and Authorize the Debtors To Enter Into And Perform Under The Settlement Agreement.

PRIVILEGED AND CONFIDENTIAL

# **Table of Contents**

INTRODUCTION ........................................................................................................................1

SUMMARY OF ARGUMENT ....................................................................................................1

PROCEDURAL HISTORY ..........................................................................................................5

GROUNDS FOR THE OBJECTION ..........................................................................................12

   A. The Plan Fails to Comply with 11 U.S.C. § 524(g) .............................................................12

   B. The Debtors Have No Evidence of Fairness to Individual E-side Debtors ..........................16

   C. The Plan Fails to Comply with 11 U.S.C. § 1123(a)(4) .......................................................17

   D. The Plan is Not Feasible ......................................................................................................19

   E. The Plan Does Not Afford Adequate Due Process ...............................................................20

REQUEST FOR RELIEF .............................................................................................................27

PRIVILEGED AND CONFIDENTIAL

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amatex Corp.*, 755 F.3d 1034, 1042-43 ........................................................................ 13

*American Capital Equipment, LLC*, 688 F.3d 145, 154, 155 (3rd Cir. 2012) ............................. 13

*Chemetron*, 72 F.3d 341 (3d Cir. 1995) ........................................................................ 25

*Chrysler LLC*, 576 F.3d 108, 125-26 (2d Cir. 2009), *cert. granted, judgment vacated on other grounds*, 558 U.S. 1087, *and judgment vacated on other grounds*, 592 F.3d 370 (2d Cir. 2010) ........................................................................ 23

*Corestates Bank, N.A. v. United Chem. Techs.,* 202 B.R. 33, 48 (E.D. Pa. 1996) .................... 18

*Combustion Engineering, Inc.*, 391 F.3rd 190, 234-35, 234-37 (3rd Cir. 2004) ........................ 12

*Energy Future Holdings Corp., et al.*, 522 B.R. 520, 537 (Bankr. D. Del. 2015) ............... 3, 6, 14

*Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp.)*, 184 B.R. 910, 918 (Bankr. W.D. Tex. 1995*), vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998) ........................................................................ 23

*Fed.-Mogul Global, Inc.*, 330 B.R. 133, 158 (D. Del. 2005) ................................................. 3

Fishman & Swanson, *supra* note 7, at 318 ........................................................................ 21

*Flintkote Co.*, 486 B.R. 99, 124 (Bankr. D. Del. 2012) aff'd sub nom. *In re Flintkote Co.*, 526 B.R. 515 (D. Del. 2014) ........................................................................ 12

*Indianapolis Downs, LLC*, 486 B.R. 286, 303-04 (Bankr. D. Del. 2013) ................................ 14

*Jones v. Chemetron Corp.*, 212 F.3d 199, 209-210 (3d Cir. 2000) ................................ 24, 25, 26

*Master Mortgage Inv. Fund Inc.,* 168 B.R. 930, 937 (Bankr.W.D. Mo. 1994) ........................ 14

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ................................ 20

*New Century TRS Holdings, Inc.*, 407 B.R. 576, 592 (D. Del. 2009) ................................ 18

*New York v. New York, N.H. & H. R. Co.*, 344 U.S. 293, 297 (1953) ................................ 20

*ONE2ONE COMMUNICATIONS, LLC*, 2013 WL 3864056 (3rd Cir. 2013) ................................ 15

PRIVILEGED AND CONFIDENTIAL

*Placid Oil Co.,* 753 F.3d 151 (5th Cir. 2014) ....................................................................... 24, 25

*PWS Holding Corp.*, 228 F.3d 224, 246 (3d. Cir. 2000) .............................................................. 14

*Specialty Prods. Holding Corp.*, Case No. 10-11780, 2013 WL 2177694 (Bankr. D. Del.
    May 20, 2013) ................................................................................................................................ 3

*Trans World Airlines, Inc.*, 322 F.3d 283, 289-90 (3rd Cir. 2002) ............................................... 23

*Tulsa Prof. Collection Services, Inc. v. Pope,* 485 U.S. 478, 489-90 (1988) ............................... 20

*Washington Mutual, Inc.*, 442 B.R. 314, 330, 351-52 (Bankr. D. Del. 2011) ............................. 14

*Zenith Electronics Corp.*, 241 B.R. 92, 110 (Bankr. D. Del 1999) .............................................. 14

*Zenith Electronics Corp.*, 250 B.R. 207, 214 (D. Del. 2000) *subsequently aff'd sub nom.*
    *Nordhoff Investments, Inc. v. Zenith Electronics Corp.*, 258 F.3d 180 (3d Cir. 2001) ........... 15

**Statutes**

11 U.S.C. § 101(5) ........................................................................................................................ 2

11 U.S.C. § 363(f) ............................................................................................................. 21, 22, 23

11 U.S.C. § 524(g) ........................................................................................... 2, 3, 8, 12, 13, 14, 15

11 U.S.C. §§ 1107(a) and 1108 ...................................................................................................... 5

11 U.S.C. § 1123(a)(4) ............................................................................................................ 17, 18

11 U.S.C. § 1129(a)(11) ............................................................................................................... 19

11 U.S.C. § 1141(c) ..................................................................................................................... 23

11 U.S.C. § 1141(d)(1)(A) ............................................................. 13, 14, 15, 16, 21, 22, 23, 24

28 U.S.C. § 157(b)(2)(B) ............................................................................................................. 20

**Other Authorities**

David Gray Carlson, *Successor Liability in Bankruptcy: Some Unifying Themes of
    Intertemporal Creditor Priorities Created by Running Covenants, Products Liability,
    and Toxic-Waste Cleanup,* 50 LAW & CONTEMP. PROBS. No. 2, at 119, Spring 1987. ............ 21

PRIVILEGED AND CONFIDENTIAL

Ralph Brubaker, *Successor Liability and Bankruptcy Sales: Free and Clear of What?*, 23
 BANKR. L. LETTER 2 (June 2003); Robert M. Fishman & Matthew A. Swanson, *What
 is Your "Interest" in Section 363(f)?*, NORTON ANN. SURVEY OF BANKR. L. 315 (2008) ........ 21

George W. Kuney, *Misinterpreting Bankruptcy Code § 363(f) and Undermining the
 Chapter 11 Plan Process*, 76 Am. Bankr. L.J. 235 (2002) ...................................................... 21

PRIVILEGED AND CONFIDENTIAL

TO THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE:

## INTRODUCTION

Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy (respectively, "Fenicle" and "Fahy"), both members of the EFH Official Committee of Unsecured Creditors ("Committee")[3] hereby submit this trial brief and omnibus objection (this "Objection") to (a) the motion (the "Settlement Motion") of EFH and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order approving the amended and restated settlement agreement (as may be further modified, amended or supplemented from time to time, the "Settlement Agreement"), dated as of September 10, 2015, by and among the Debtors and the other parties thereto and (b) confirmation of the *Fifth Joint Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (as may be further modified, amended or supplemented from time to time, the "Plan"),[4] and respectfully represent as follows:

## SUMMARY OF ARGUMENT

1.      The Debtors' Plan is unconfirmable because, with respect to the four separate bankruptcies of EECI, Inc. (Case No. 14-10992), EEC Holdings (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14- 11039), and LSGT SACROC, Inc. (Case No. 14-11012), (collectively, the "Asbestos Debtors"), the Plan fails to comply with 11

---

[3] In this Objection, Fenicle and Fahy are acting in their own respective individual capacity and not as members of the Committee.

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the [Plan or the Settlement Agreement], as applicable.

PRIVILEGED AND CONFIDENTIAL

U.S.C. § 524(g), which governs treatment of future asbestos claims under a chapter 11 plan of reorganization.

2.      Amongst the Asbestos Debtors, EECI is in fact purely an asbestos company which was in the business of collecting asbestos lawsuits to pass on to insurance carriers with a tender for defense and indemnity.  EECI's predecessor, Ebasco, went into business 100 years ago, and by the 1930s was a major user of asbestos insulation and related products in its international power plant design, construction, maintenance, and repair business, which continued under a series of different ownerships through the 1980s.[5]

3.      In its wake, Ebasco has thus left a worldwide legacy of deadly asbestos in place, and ultimately giving rise to:

a) claims[6] against the Debtors that are based upon an asbestos-related illness or injury that became manifest and that arose (or is deemed to have arisen) prior to the Petition Date and that are not property damage claims or claims for contractual or common law indemnification or contribution, ("Manifested Asbestos Claims"), as well as

---

[5] Debtors were in the business (and/or are successors to entities that had been in the business of) building power plants that generated electricity. Both nuclear and electric power generation produces extreme amounts of heat as a result of burning or boiling. The presence of this heat necessitated the installation of insulation throughout power plants including in the walls, wires, pipes, boilers, and generators. Historically, power plants were depositories of asbestos and asbestos-laden materials and products. Insulators, pipefitters, electricians, welders and other laborers often worked in close quarters and either handled asbestos or drilled or cut into it, releasing toxic asbestos fibers. Cutting into asbestos insulation would make fibers airborne, where they could be easily inhaled. In addition to its presence throughout the plant and equipment, workers responsible for building and maintaining the plants and equipment would wear insulated clothing or gear to do their jobs. For years, these pants, coats, aprons, mitts, and masks contained asbestos. In short, asbestos exposure was virtually unavoidable in power plants built prior to 1980. To the extent that asbestos located in power plants was remediated after 1980, exposures causing personal injuries could also have occurred.

[6] As used herein: (a) the term "claim" has the meaning given to it in section 101(5) of the Bankruptcy Code.

PRIVILEGED AND CONFIDENTIAL

b) claims of yet unmanifested asbestos-related illness or injury against the Debtors that arose (or is deemed to have arisen) prior to the Petition Date based on exposure (or the exposure of a family member) to asbestos, whether or not such Asbestos Claims have accrued a valid cause of action under nonbankruptcy law, and that are not property damage claims or claims for contractual or common law indemnification ("Unmanifested Asbestos Claims").[7]

4.       A plan that proposes to resolve Unmanifested Asbestos Claims[8] must comply with the requirements of 11 U.S.C. § 524(g), providing the protections contemplated by that section.  The defects of the Plan, particularly with respect to the future claimants whose rights the Debtors seek to address in their reorganization, cannot be overcome by creditor voting results and are not subject to specific factual disputes.

5.       Defects in the Plan, particularly with respect to the Unmanifested Asbestos Claimants, whose rights the Debtors seek to address in their reorganization, cannot be overcome by creditor voting results and are not subject to specific factual disputes.

6.       The Debtors Plan unfairly victimizes the Unmanifested Asbestos Claims by depriving them of any recovery before they are in a position to know of their diseases

---

[7]  Defined terms as used in the January 7, 2015, Opinion granting the Debtors' request to establish a bar date for Unmanifested Claimants (the "Bar Date Opinion"), 522 B.R. 520 (Bankr. D. Del. 2015).

[8]  Generally accepted epidemiology instructs that asbestos claims will continue to manifest through 2049 or 2050. See, e.g., *In re Fed.-Mogul Global, Inc.*, 330 B.R. 133, 158 (D. Del. 2005) (court found expert's methodology of estimation of future claims, which forecasted through 2049, more reliable (related expert report can be found at 2004 WL 3569872)); *In re Specialty Prods. Holding Corp.*, Case No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) (court adopted expert methodology for estimation which forecasted claims through 2050). As a result, in every case in which asbestos claims have been estimated, the value of the unmanifested, future claims vastly outweighs the value of the present claims, often by a multiple of 4 to 5 times.

PRIVILEGED AND CONFIDENTIAL

and injuries caused by the Debtors, while also subjecting them to an injunction, releases and exculpations without consent

7.     The Asbestos Debtors are solvent, yet moribund, entities which hold nearly $1 billion ($1,000,000,000.00) in intercompany claims. The disclosed combined liabilities of the Asbestos Debtors are approximately $14 million ($14,000,000.00).[9] Attached hereto, as **Exhibit A** (Filed Under Temporary Seal – Subject to Energy Future Holdings Protective Order), is the *Confidential* Map of Intercompany Balances from EEC Holdings to EFH which shows the accounts receivable from 2008 to April, 2014.

8.     The Plan is inadequate because the Debtors fail to address the assets or the extent of liabilities residing with the Asbestos Debtors, for which other EFH companies likely share responsibility as a result of corporate conduct over the 40 years since Ebasco was acquired. The Plan fails to provide necessary information concerning the separate financial history and current status of the Asbestos Debtors, the nature and extent of intercompany claims against others for use of their funds over the years, and the nature and extent of insurance coverage available to the Asbestos Debtors. These are fatal omissions and prevent creditors from carefully evaluating the appropriateness of any plan of reorganization.

9.     The Plan unfairly provides for unimpaired status of Manifested Asbestos Claims against the EFH Debtors arising from liabilities based on asbestos exposure such as the claims of Fenicle and Fahy, while denying such treatment to the Unmanifested

---

[9] In his deposition, Paul Keglevic ("Keglevic"), Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., stated that the subsidiary companies are not insolvent and estimated the total liabilities of the subsidiary companies (EECI, which is under EEC, which is under LSGT) to be about 14 million dollars, with estimated post-employment benefits and asbestos totaling around 50 million dollars. Paul Keglevic Deposition Transcript, p. 316: 12-19; p.317: 2-25; and p.327, 21-25, October 1, 2015.

PRIVILEGED AND CONFIDENTIAL

Asbestos Claimants whose claims will certainly arise after the Effective Date from asbestos exposure.

## PROCEDURAL HISTORY

10.     On April 29, 2014, each of the 70 debtor entities filed voluntary petitions with the court under Chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.     Included among these cases are the separate bankruptcies of EECI, Inc. (Case No. 14-10992), EEC Holdings (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012), previously referred to as the Asbestos Debtors.

12.     The Debtors scheduled 392 asbestos-related cases, including approximately 121 cases being defended (20 of which are related to the Debtors' electricity generation activities) and approximately 270 cases where the Debtors have rejected indemnification demands.  The Debtors believe that litigation and settlement expenses incurred in connection with asbestos claims against the Debtors are not material. The Debtors estimate that their asbestos expenses average up to $3 million annually. [10]

13.     On July 23, 2014, the Debtors filed a motion seeking a bar date for prepetition claims (the "Bar Date Motion"). [D.I. 1682].  Included in the Bar Date Motion

---

[10] Tr. Hr'g Aug. 13, 2014 71:14-16 (D.I. 1945). Compare Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions at ¶ 21 (estimating $36 billion in assets, $49 billion in liabilities, including funded indebtedness, and $5.9 billion in consolidated annual revenues for the year ending December 31, 2013).

PRIVILEGED AND CONFIDENTIAL

was a request to set a bar date for Unmanifested Asbestos Claims.  Thereafter, certain asbestos personal injury law firms filed an objection to the Bar Date Motion.[11]

14.     Subsequently, the Office of the United States Trustee announced that it would solicit asbestos claimants to determine whether an asbestos claims committee should be formed.[12]  Thereafter, on October 27, 2014, the United States Trustee formed a statutory committee of unsecured creditors whereon two of the five members are asbestos claimants (the "E-side Committee").[13]

15.     On January 7, 2015, this Court issued an opinion granting the Debtors' request to establish a bar date for Unmanifested Claimants (the "Bar Date Opinion"), 522 B.R. 520 (Bankr. D. Del. 2015). As the court explained in the Bar Date Opinion, unmanifested claimants are "persons that were exposed to asbestos pre-petition but have not yet manifested any signs of illness. These are claimants that do not know that they have an asbestos related injury. Indeed, they are *unknown* to themselves, let alone the Debtor." *Id*. at 537 (emphasis in original).

16.     On July 22, 2015, Charlotte Liberda and Curtis Liberda (together, "Liberdas") filed a motion for entry of an order appointing a legal representative to

---

[11]  D.I. 1796. The objectors were Gori Julian & Associates, P.C., Simmons Hanley Conroy, Paul Reich & Meyers, P.C., Kazan McClain, Satterley & Greenwood, a Professional Law Corporation, and Early, Lucarelli, Sweeney & Meisenkothen (collectively referred to herein as the "PI Law Firms"). The PI Law Firms represent over 125 asbestos claimants.

[12]  The United States Trustee had previously appointed a committee of unsecured creditors (the "T-side Committee"). See D.I. 420. The T-side Committee is composed of creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), EFCH's direct subsidiary, Texas Competitive Holdings Company LLC ("TCEH"), TCEH's direct and indirect subsidiaries, and EFH Corporate Services Company. This committee represents the interests of the unsecured creditors of the aforementioned debtors and no others. None of the members of the T-side Committee, however, are asbestos claimants.

[13]  D.I. 2570. The E-side Committee is composed of creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI. This committee represents the interests of the unsecured creditors of these aforementioned debtors and no others.

PRIVILEGED AND CONFIDENTIAL

represent future asbestos claimants on all issues before this Court, including unmanifested asbestos claimants on all issues before this Court, (the "Motion to Appoint"). [D.I. 5072].[14]  Fenicle and Fahy filed a joinder to the Motion to Appoint with the court on July 31, 2015. [D.I. 5191]. On August 11, 2015, the court entered an Order denying the Motion to Appoint. [D.I. 5265].

17.    The Debtors, including the Asbestos Debtors, have proposed their Plan, by which they seek to resolve all pending asbestos-related liabilities, including liability to claimants that have been exposed to asbestos for which one or more of the Debtors are responsible, but <u>who have not yet developed an illness related to this asbestos exposure</u>.[15]

18.    In connection with their efforts to confirm their Plan, the Debtors filed their Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 6124]  (the "Disclosure Statement").

19.    On August 17, 2015, Fenicle and Fahy filed their joinder to the E-Side Committee's Objection to the Disclosure Statement [Docket No. 5361] and argued that the Debtors' plan was patently unconfirmable because the Plan would eliminate liability to individuals exposed to asbestos but with no current asbestos related illness without

---

[14] August Liberda, the father of Charlotte and Curtis Liberda, died of mesothelioma after working for 47 years as a maintenance electrician at an Alcoa plant where he was exposed to asbestos for which EBASCO, a predecessor of one of the Debtors, is liable. Charlotte and Curtis were exposed to the asbestos their father brought home on his work clothes.  As a result, they may manifest asbestos disease in the future for which one of the Debtors may be liable.  As such, Charlotte and Curtis Liberda are unmanifested claimants as previously identified by this Court in its January 7, 2015 opinion on the Debtors' motion to set a bar date [D.I. 3183].

[15] Asbestos-related diseases typically manifest after a lengthy latency period, often decades following occupational or other exposure to asbestos.

providing those individuals with the protections set forth in 11 U.S.C. § 524(g) of the Bankruptcy Code.

20.    On September 22, 2015, the court entered an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents. [Docket No. 6131].

21.    In the Plan, Class A3 is defined as "Legacy General Unsecured Claims Against the EFH Debtors" and includes "*Holders of any Allowed Claims against the EFH Debtors derived from or based upon liabilities based on asbestos* or qualified post-employment benefits relating to discontinued operations of the EFH Debtors." (Emphasis added).[16]

22.    The Plan provides that all claims based upon asbestos liabilities relating to discontinued operations of the Asbestos Debtors will be unimpaired under the Plan, by receiving, "at the option of the applicable EFH Debtor(s), either: (i) payment in full in Cash; (ii) Reinstatement of such Claim; or (iii) other treatment rendering such Claim Unimpaired."  (Amended Plan, II.B.3. (b) (emphasis added).)  The Plan does not provide any information regarding the "other treatment."

23.    Fenicle and Fahy will each file timely Proof of Claims against the Debtors.   Both claims to be filed by Fenicle and Fahy will be unliquidated general unsecured claims arising from exposure to asbestos.  Mrs. Shirley Fenicle, as successor-

---

[16] The Plan Treatment for Class A3 Claims provides that "each Holder shall receive, at the option of the applicable EFH Debtor(s) with the consent of the Plan Sponsors (such consent not to be unreasonably withheld), either: (a) payment in full in Cash; (b) Reinstatement of such Claim; or (c) other treatment rendering such Claim Unimpaired. Unimpaired; deemed to accept.

PRIVILEGED AND CONFIDENTIAL

in-interest to the Estate of George Fenicle, her husband, will assert a claim for her husband's death from exposure to asbestos.[17]  David William Fahy will assert a claim for damages resulting from his asbestos-caused mesothelioma.  They each will, of course, also file unmanifested claims against all four asbestos Debtors and EFH.[18]

24.     Shockingly, in the context of settlement of intercompany claims, the Disinterested Directors were not even aware of the existence of EECI or related entities on behalf of which claims were being resolved.  The deposition transcript of Billie Ida Williamson ("Williamson"), Independent EFH Director (charged with approving the sponsor settlement), taken on September 30, 2015, reads as follows:

> "Q.    Have you ever heard of a company called EECI?
> A.     No.
>
> Q.    Have you ever heard of a company called EEC Holdings, Inc.?
> A.     No.
>
> Q.    Have you ever heard of a company called LSGT Sacroc, S-A-C-R-O-C, Inc.?
> A.     No, sir.
>
> Q.    Have you ever heard of a company called Humphries and Glass Co. Limited of the UK?
> A.     No, sir.
>
> Q.    Have you ever heard of a company called LSGT Gas Company, Inc.?
> A.     No, sir."

---

[17] Mrs. Shirley Fenicle was appointed to the Committee in a representative capacity only, but she is also a potential unmanifested future claimant as she lived with her husband during his Ebasco exposure and was exposed to asbestos on a take-home basis, as was her son. They are both at risk of developing asbestos-related disease, and should they do so in the future, would have exactly the kind of claim that Debtors' Plan now seeks to preclude.  In addition, should Mrs. Fenicle herself become sick and suffer a terminal illness, her son as well as her daughter would then have cognizable claims for her wrongful death, and thus they too are potential future unmanifested claimants. This is the typical context in which asbestos claims arise and are asserted.

[18] Fahy is a manifested claimant in light of his mesothelioma diagnosis, but his family members will have an unmanifested asbestos claim- either because of take home exposure or as potential heirs with wrongful death claims if Mr. Fahy dies of mesothelioma.

PRIVILEGED AND CONFIDENTIAL

(See Glueckstein Declaration, Ex. __ [Williamson II Deposition Transcript p. 217:4-19] to the Supplement to Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et. al., to Approve a Settlement of Litigation Claims and Authorized the Debtors to Enter into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et. al., Pursuant to Chapter 11 of the Bankruptcy Code Regarding Insider Releases ("Glueckstein Declaration")).

25.     Donald L. Evans, a "Disinterested Director" on the Board of Directors for EFH, also testified that he was unaware of EECI and several other non-operating, legacy liability entities.  (Glueckstein Declaration [Evans Deposition Transcript p 358:12-25]).

26.     The Disinterested Directors also failed to consider the separate financial condition of EECI and other E-side entities claims were being compromised and released. Ms. Williamson testified the board only "review[ed] the consolidated financial statements for Energy Future holdings Corporation . . .  So if it is an intercompany account, those items would be eliminated in consolidation in those consolidated financial statements." (Glueckstein Declaration [Williamson II Deposition Transcript at 219:25-220:8]).

27.     As a result, Ms. Williamson was unaware that the Debtors' Statements and Schedules reflect an $84 million intercompany receivable.  That receivable was based on money upstreamed to LSGT Sacroc, and ultimately to EFH.  [cite to Alix materials] Indeed, Ms. Williamson had no information on the specific intercompany obligations that were being settled by EECI. (Glueckstein Declaration [Williamson II Deposition Transcript p. 222:9-21]).

PRIVILEGED AND CONFIDENTIAL

28.    Similarly, the Disinterested Directors were unaware of the nature of EECI's liabilities.

29.    EECI, Ebasco Services, Inc., EFH and certain other subsidiaries of EFH have a long history of asbestos litigation.  These entities were in the business (and/or are successors to entities that had been in the business) of building power plants and electricity generation.  As set forth in the Direct Notice to the Asbestos Bar Date [D.I. 5171-3]: " EFH owned, operated, maintained, or built power plants across the United States and in other countries where asbestos was present.  Workers at these power plants (and family members and others who came into contact with these workers) may have been exposed to asbestos." [D.I. 5171-3].

30.    However, the Disinterested Directors were unaware where liabilities for asbestos claims are recorded in the corporate structure (Glueckstein Declaration [Williamson II Deposition Transcript p. 223:2-15]).

31.    The Debtors have estimated their asbestos liability at approximately $14 million. [Keglevic Deposition Transcript, p. 316: 12-19; and p. 317: 2-25, October 1, 2015].

32.    The Schedules and Statement reflect no intercompany claims against EECI. [D.I. 1269].

33.    Because EECI has intercompany claims, does not have intercompany obligations, and, according to the Debtors, is solvent and can fully pay its obligations, EECI obtains no benefit from the Intersilo Settlement.

GROUNDS FOR THE OBJECTION

**A.      The Plan Fails to Comply with 11 U.S.C. § 524(g).**

34.      The Debtors' proposed Plan is unconfirmable because, with respect to the four Asbestos Debtors, the Plan fails to comply with 11 U.S.C. § 524(g), which governs treatment of future asbestos claims under a chapter 11 plan of reorganization.  In part, because of long latency periods of certain asbestos-related illnesses, "Congress enacted §524(g) to protect the due process rights of the exposed yet unimpaired. The purpose of § 524(g) is to provide those whose illnesses manifest post-petition, regardless of pre- or post-petition exposure, with a fund for recovery equivalent to what currently ill claimants will be paid. Section 524(g) thus removes the risk that the size of payment in compensation for injuries will depend on how quickly a victim gets sick or manifests an injury." *In re Flintkote Co.*, 486 B.R. 99, 124 (Bankr. D. Del. 2012) aff'd sub nom. *In re Flintkote Co.*, 526 B.R. 515 (D. Del. 2014).

35.      In *In re Combustion Engineering, Inc.*, 391 F.3rd 190 (3rd Cir. 2004), the Third Circuit found that a plan that proposes to resolve unmanifested asbestos claims must comply with the requirements of 11 U.S.C. § 524(g), providing the protections contemplated by that section.  See Combustion Engineering, 391 F.3d at 234-35. The Debtors' Plan fails to do so.

36.      As explained in *Combustion Engineering*, this type of debtor cannot reorganize except in compliance with 11 U.S.C. § 524(g).  See *Combustion Engineering*, 391 F.3d 190 at 234-37.  This is particularly the case given that the Debtors seek to address and resolve "Future Claims" within the chapter 11 plan.  *Combustion Engineering* sets out in a definitive and unambiguous way how an asbestos bankruptcy

12

PRIVILEGED AND CONFIDENTIAL

must proceed in the Third Circuit.  Moreover, the Third Circuit, in *In re Amatex Corp.*, 755 F.3d 1034, 1042-43, makes clear that future asbestos claimants are entitled to their own legal representative in a chapter 11 reorganization based on the fact that they have a stake in the outcome of the case.  As the Third Circuit explained, "[b]ecause of the adverse interests of the other parties, it would appear that future claimants require their own representative." *Id*. at 1043.

37.    Despite the Third Circuit's clear directive, the Debtors' Plan ignores the requirements of section 524(g), rendering the Plan unconfirmable.  These circumstances warranted the Court's rejection of the associated Disclosure Statement prior to undertaking the costly plan solicitation process.  See *In re American Capital Equipment, LLC*, 688 F.3d 145, 154 (3rd Cir. 2012) ("a bankruptcy court may address the issue of plan confirmation where it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable.")  The Third Circuit, in *American Capital*, explained that a "plan is patently unconfirmable where (1) confirmation "defects [cannot] be overcome by creditor voting results" and (2) those defects "concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id*. at 154-55.

38.    Here, the defects of the Plan, particularly with respect to the future claimants whose rights the Debtors seek to address in their reorganization, cannot be overcome by creditor voting results and are not subject to specific factual disputes.  Specifically, although the Plan purports to provide protective treatment of future claims of individuals who have been exposed to the Debtors' asbestos, but have not manifested

PRIVILEGED AND CONFIDENTIAL

any illness ("Future Claims"), the Bankruptcy Court has essentially foreclosed the ability

of such claimants to bring claims following manifestation of their illnesses unless those

claimants file proofs of claim by December 14, 2015 (the "Bar Date"). *In re Energy*

*Future Holdings Corp*., et al., Case No. 14-10979, D. I. 5171 ("Bar Date Order").

39.     Those claimants who are unaware of both their latent illness and the

pending Bar Date, are simply cut off from any recovery under the Plan and without the

protections of section 524(g) are subject to the broad injunctions set forth in Article

VIII.F. of the Plan.   Accordingly, these are exactly the type of claim that must be

addressed in accord with the unique protections of section 524(g).  This is confirmed by

the Debtors' notice of the Bar Date, which states:

> If you do not file a claim now, you will lose your right to bring an asbestos injury
> claim against the Debtors and receive money, even if you develop an asbestos-
> related illness in the future. This means you will not be able to have a say in the
> voting and share in money provided for asbestos claimants under any bankruptcy
> plan of reorganization in EFH's bankruptcy cases.

*See* Bar Date Order. These flaws are exacerbated by the overly-broad releases and

exculpations given to non-debtors under Article VIII. D. and E. of the Plan, which fail to

satisfy the standards established by the courts in this circuit. *See In re Zenith Elecs.*

*Corp*., 241 B.R. 92, 110 (Bankr. D. Del. 1999)(quoting *In Re Master Mortgage Inv. Fund*

*Inc.,* 168 B.R. 930, 937 (Bankr.W.D. Mo. 1994); *See also In Re Indianapolis Downs,*

*LLC*, 486 B.R. 286, 303-04 (Bankr. D. Del. 2013); *In re Washington Mutual, Inc*., 442

B.R. 314, 351-52 (Bankr. D. Del. 2011).[19]

---

[19] The releases and exculpations are particularly overreaching with regards to the Unmanifested Asbestos
Claimants, who, even if they are aware of their status as claimholders, have no ability to opt out.  At the
very least, claims for gross negligence and willful misconduct should be preserved under controlling
precedent. *See In re Washington Mut., Inc*., 442 B.R. at 330, (citing *In re PWS Holding Corp*., 228 F.3d
224, 246 (3d. Cir. 2000).

PRIVILEGED AND CONFIDENTIAL

40.     Because the Plan does not implement the protections of 11 U.S.C. § 524(g), the Plan's proposed treatment of these claimants is facially improper, rendering the Plan unconfirmable and mandating rejection of the Disclosure Statement.

41.     Despite the evidence of well-settled law in the Third Circuit providing protections for holders of future asbestos claims and demands, the Debtors hope to use their bankruptcy to victimize unmanifested asbestos victims for a second time, depriving them of any recovery before they are in a position to know of their diseases and injuries caused by the Debtor.  If the Plan is confirmed and consummated before an appeal of plan confirmation can be heard, these unknowing asbestos victims will be too late to make their case.  Although courts often recognize that an appellant that fails to seek a stay pending appeal does so at his or her own peril, *See, In re Zenith Electronics Corp*., 250 B.R. 207, 214 (D. Del. 2000) *subsequently aff'd sub nom. Nordhoff Investments, Inc. v. Zenith Electronics Corp.*, 258 F.3d 180 (3d Cir. 2001) ("The failure to seek or obtain a stay is ordinarily a factor that weighs in favor of dismissal for equitable mootness."), these unmanifested and unknown victims are clearly not in a position to seek such a stay.[20]  Accordingly, if they belatedly seek relief from confirmation of a consummated plan, it is nearly certain that they will be told that their efforts are untimely and that any appeal is equitably moot.

---

[20] The Debtors' strategy appears to be to proceed with confirmation of the Plan, go effective as soon as possible, and effectively moot Fenicle and Fahy's appeal on the bar date on grounds of equitable mootness, because Debtors know that Fenicle and Fahy could never post the bond needed to obtain a stay pending the appeal. See, however, the recent decision of the United States Court of Appeals for the Third Circuit in *In re One2One Communications, LLC,* wherein the Third Circuit radically altered the ability of debtors to escape appeals of confirmed plans for reorganization. *In re ONE2ONE COMMUNICATIONS, LLC,* 2013 WL 3864056 (3rd Cir. 2013).

PRIVILEGED AND CONFIDENTIAL

**B.**       **The Debtors Have No Evidence of Fairness to Individual E-side Debtors.**

42.      The Settlement Agreement releases claims by over 70 Debtors (against what may be hundreds of released parties) without evidence that the Intersilo Settlement is fair and equitable with respect to the individual estates of each Debtor.  With respect to the E-side Debtors and their direct or indirect Debtor subsidiaries, the Intersilo Settlement necessarily fails in the absence of such evidence.

43.      EECI and Ebasco Services, Inc. ("Ebasco") are two examples.  EECI and Ebasco were in the business (and/or are successors to entities that had been in the business) of building "power plants across the United States and in other countries where asbestos was present.  Workers at these power plants (and family members and others who came into contact with these workers) may have been exposed to asbestos."  Direct Notice to the Asbestos Bar Date [D.I. xxx].  EECI and Ebasco have been involved in asbestos litigation for years.  They have no material assets *other* than intercompany claims, litigation claims against non-Debtors and potential insurance assets.  In light of the nexus of intercompany claims between EECI, Ebasco and other Debtors, the Debtors always have paid legacy asbestos liabilities from general corporate resources.  The Debtors propose to assume or pay legacy asbestos liabilities in the Plan, as they have in all previously proposed plans of reorganization relating to the E-side Debtors.

44.      There has been no assertion that any party to the Settlement Agreement has a claim against EECI and Ebasco.  Yet, in the Settlement Agreement, EECI and Ebasco release all claims "from the beginning of the world" against the other Debtors and all other parties to the Settlement Agreement, leaving EECI and Ebasco without recourse

PRIVILEGED AND CONFIDENTIAL

to other Debtors for the legacy asbestos liabilities these other Debtors have always satisfied in the past in the ordinary course.

45.     The inclusion of EECI and Ebasco may be mere oversight.  (Glueckstein Declaration [Williamson II Deposition Transcript p. 217:4-19]  (Q.  "Have you heard of a company called EECI?" A. "No.")).  However, it indicates a serious substantive defect as well.  The Settlement Agreement cannot be approved as to EECI, Ebasco or any other E-side Debtors—outside of a plan of reorganization that resolves all claims against such E-side Debtors—unless there is specific identification and evidence of the claims by and against the applicable entity being released and a showing that the Settlement Agreement is fair and equitable.  The Debtors have made such a showing with respect to none of the E-side Debtors.

## C.     The Plan Fails to Comply With 11 U.S.C. § 1123(a)(4).

46.     The Plan provides for unimpaired status of claims against the EFH Debtors arising from liabilities based on asbestos exposure such as Fenicle, as Estate Representative, and Fahy, while denying such treatment for Mrs. Fenicle, her children, and to the other Unmanifested Asbestos Claimants whose claims will arise from asbestos exposure.  In order to be confirmed, however, a plan of reorganization must provide claims within the same class with the same treatment, absent consent of holders of certain claims to less favorable treatment.  Specifically, a plan must

> provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.

11 U.S.C. § 1123(a)(4).

PRIVILEGED AND CONFIDENTIAL

47.    A creditor who is the direct object of unfair treatment may assert unfair discrimination in opposing confirmation of a plan of reorganization.  *Corestates Bank, N.A. v. United Chem. Techs.,* 202 B.R. 33, 48 (E.D. Pa. 1996).

> [I]f claims within the same class are not receiving the same treatment, and the holders of those claims being treated less fairly have not consented to the discrimination, the plan is not confirmable.

*In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 592 (D. Del. 2009) (reversing bankruptcy court's order overruling objections to confirmation, finding that plan unfairly discriminated in favor of certain creditors without the consent of other creditors in the same class).

48.    The district court in *New Century* found that the bankruptcy court erred in finding that the plan of reorganization complied with 11 U.S.C. § 1123(a)(4) where some claims in class HC3b of the plan of reorganization were to be paid 100% of the determined distribution amount and other claims  in class HC3b were to be paid 130% of the determined distribution amount.  *Id.*  The district court reversed the bankruptcy court's order confirming the plan because it was clear that "the plan treats the 100% claims in that class less favorably that the 130% claims" without the holders' consent.  *Id.*

49.    The Plan thereby assures recovery to certain favored creditors within the class, and therefore fails to provide the same treatment to all of the claims in Class A3. The Unmanifested Asbestos Claimants are the direct object of unfair treatment and have not consented to being treated less favorably than the holders of the A3 Claims. Accordingly, the Plan discriminates unfairly and is not confirmable.

**D.      The Plan is Not Feasible.**

50.      The plain text of section 1129(a)(11) requires a determination that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  As set forth in greater detail by the EFH Official Committee in its' (A) Trial Brief and Omnibus Objection to (i) Motion of Energy Future Holdings Corp., Et al., To Approve A Settlement of Litigation Claims and Authorize The Debtors to Enter Into and Perform Under The Settlement Agreement And (ii) Confirmation of The Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of The Bankruptcy Code, the Plan is likely to be followed by the need for further financial reorganization not proposed in the Plan, resulting in the Plan's failure to satisfy the feasibility requirements for confirmation.

51.      It is entirely unclear how the Debtors can possibly address the feasibility requirement of their Plan as it relates to Manifested Asbestos Claimants and Unmanifested Asbestos Claimants.  Among other things, the deadline to file claims for those holders affected by this Court's prior orders will not pass for another six weeks following the commencement of the Confirmation Hearing.  These claims are not liquidated and can result in a significant liability for the Debtors that will not be determined over a fixed period of time making forecasting impossible.

52.      To the extent the Debtors seek to use the Bankruptcy Court to estimate and then cap the potential recovery of the claims of Manifested Asbestos Claimants and

PRIVILEGED AND CONFIDENTIAL

Unmanifested Asbestos Claimants, such treatment would violate the jurisdictional limits of the Bankruptcy Court.

53.     The claims of Manifested Asbestos Claimants and Unmanifested Asbestos Claimants fall within the rubric of personal injury actions.  Such actions are beyond the jurisdiction of the bankruptcy courts to adjudicate.  See 28 U.S.C. § 157(b)(2)(B).  The Debtors are prohibited from using their "catch all" proposed treatment of the asbestos creditors as a means to circumvent the clear limitations on this Court's jurisdiction.

**E.     The Plan Does Not Afford Adequate Due Process.**

54.     The requirements of procedural due process were stated by the Supreme Court in the famous case of *Mullane v. Central Hanover Bank & Trust Co.*: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[21] The foundational application of this principle underlying due process in the context of bankruptcy claims was clearly announced by the Supreme Court in *City of New York v. New York, N.H. & H. R. Co.*: "The statutory command for notice embodies a basic principle of justice—that a reasonable opportunity to be heard must precede judicial denial of a party's claimed rights."[22] In that case, the Court held that a *known* creditor (as the City of New York was) must be given actual notice in order to be bound to the bankruptcy proceedings. A known creditor is one who is either actually known to the debtor or one whose identity is "reasonably ascertainable."[23]

---

[21] 339 U.S. 306, 314 (1950).
[22] 344 U.S. 293, 297 (1953).
[23] *Tulsa Prof. Collection Services, Inc. v. Pope,* 485 U.S. 478, 489-90 (1988).

PRIVILEGED AND CONFIDENTIAL

55.    The due process issue only comes into play if the claimant would have a successor liability claim outside of bankruptcy, and if as a statutory matter the relevant Bankruptcy Code provision appears to immunize the purchaser from that claim, either because it is an "interest" subject to the "free and clear" sale power of § 363(f) or because it is a pre-confirmation "claim" subject to discharge by plan confirmation under § 1141(d)(1)(A).  In that scenario, the due process question would be whether the claimant had been given constitutionally sufficient notice and an opportunity to be heard regarding the potential elimination of his successor liability claim against the purchaser and the correlative limitation of his recovery to a possible distribution in the bankruptcy case. Given that in the standard case the claimant was unknown and indeed possibly unknowable at the time the purported bankruptcy elimination of his claim was being effected, the constitutional notice issue is problematic indeed.

56.    These "stray future claim" successor liability cases raise at least three sets of distinct issues.[24] The courts, unfortunately, do not always adequately distinguish these issues, which unsurprisingly leads to confusion. First is whether the state law requisites of successor liability have been satisfied at all. Outside of bankruptcy, not every sale exposes the purchaser to liability as a successor to the seller for claims based at least in part on pre-sale activities. Indeed, the general rule is exactly the opposite: no successor liability, unless a specified exception applies.[25] If the purchaser would not be subject to

---

[24] For an early but excellent discussion and analysis of successor liability outside and inside bankruptcy, see David Gray Carlson, *Successor Liability in Bankruptcy: Some Unifying Themes of Intertemporal Creditor Priorities Created by Running Covenants, Products Liability, and Toxic-Waste Cleanup,* 50 LAW & CONTEMP. PROBS. No. 2, at 119, Spring 1987. *See also* Ralph Brubaker, *Successor Liability and Bankruptcy Sales: Free and Clear of What?*, 23 BANKR. L. LETTER 2 (June 2003); Robert M. Fishman & Matthew A. Swanson, *What is Your "Interest" in Section 363(f)?*, NORTON ANN. SURVEY OF BANKR. L. 315 (2008); George W. Kuney, *Misinterpreting Bankruptcy Code § 363(f) and Undermining the Chapter 11 Plan Process*, 76 AM. BANKR. L.J. 235 (2002).

[25] *See* Fishman & Swanson, *supra* note 7, at 318.

PRIVILEGED AND CONFIDENTIAL

successor liability outside of bankruptcy, surely they would enjoy similar freedom in a bankruptcy sale.  Assuming, though, that a successor liability claim would potentially exist pursuant to the sale if affected outside of bankruptcy does not resolve the bankruptcy outcome, but instead merely sets the stage for the particular bankruptcy manifestations of the overarching problem.

57.     The second issue involves the interpretation and application of the relevant statutory provisions of the Bankruptcy Code, regarding whether the Code on its face purports to bar the assertion of the successor liability claim against the purchaser. Which specific statute applies depends on the bankruptcy mechanism by which the successor seeks to assert immunity from successor liability claims. If the immunity is derived from a so-called "free and clear" sale under § 363(f), the statutory question is whether the successor liability claim is an "interest in such property," which is important because by statute § 363(f) only purports to authorize sales free and clear of such "interests."  If successor liability is not such an interest, then nothing about the § 363 sale can wipe it away.  If, however, the asserted immunity follows from the discharge of claims pursuant to a confirmed plan of reorganization under § 1141(d)(1)(A), as it does here, the statutory question is whether the claimant had a "claim" (and thus the debtor owed a "debt") that

PRIVILEGED AND CONFIDENTIAL

arose before the date of confirmation, and which is therefore potentially dischargeable in the bankruptcy case.[26]

58.    "Claim" status also would determine whether the injured party had a right to participate in the bankruptcy distribution. If not, then as a statutory matter there is no "discharge" at all in the bankruptcy case, which then might leave the claimant free to pursue its successor liability claim unhindered by the bankruptcy.

59.    The final issue is whether the constitutional demands of procedural due process are satisfied. The due process issue only comes into play if the claimant would have a successor liability claim outside of bankruptcy, and if as a statutory matter the relevant Bankruptcy Code provision appears to immunize the purchaser from that claim, either because it is an "interest" subject to the "free and clear" sale power of § 363(f) or because it is a pre-confirmation "claim" subject to discharge by plan confirmation under § 1141(d)(1)(A).    In that scenario, the due process question would be whether the claimant had been given constitutionally sufficient notice and an opportunity to be heard regarding the potential elimination of his successor liability claim against the purchaser and the correlative limitation of his recovery to a possible distribution in the bankruptcy

---

[26] The Bankruptcy Code sets forth two separate mechanisms for transferring assets out of a bankruptcy estate.    Section 363(f) authorizes the debtor to transfer property "free and clear of any interest in such property" if certain specified conditions are met.    Section 1141(c) states that the "property dealt with by the plan is free and clear of all claims and interests."    On its face, § 363(f) offers more limited relief by only authorizing transfers free of "interests in property," whereas § 1141(c) applies both to "claims" and "interests," and for many years, courts generally recognized this distinction.    See, e.g., *Fairchild Aircraft Corp. v. Cambell (In re Fairchild Aircraft Corp*.), 184 B.R. 910, 918 (Bankr. W.D. Tex. 1995*), vacated on other grounds*, 220 B.R. 909 (Bankr. W.D. Tex. 1998) (holding that § 363(f) only applied to in rem interests).    More recently, however, courts have begun to ignore (or "harmonize," if you wish) these statutory distinctions, holding that § 363(f) covers various "claims" that arose from the property as well as interests.    *See, e.g., In re Chrysler LLC*, 576 F.3d 108, 125-26 (2d Cir. 2009), *cert. granted, judgment vacated on other grounds*, 558 U.S. 1087, *and judgment vacated on other ground*s, 592 F.3d 370 (2d Cir. 2010) (holding § 363(f) bars product liability claims); *In re Trans World Airlines, Inc*., 322 F.3d 283, 289-90 (3rd Cir. 2002) (holding § 363(f) bars claims arising from employment discrimination and sex discrimination settlement).

case. Given that in the standard case the claimant was unknown and indeed possibly unknowable at the time the purported bankruptcy elimination of his claim was being effected, the constitutional notice issue is problematic indeed.

60.     Standing in stark contrast to the Fifth Circuit's decision in *Placid Oil*[27] is the decision of the Third Circuit in *Jones v. Chemetron Corp.*[28] Chemetron had operated a manufacturing facility in Ohio that utilized depleted uranium, and after demolishing that facility it placed the rubble in a landfill, which apparently was contaminated due to radiation exposure. As early as 1980, it was well known in the community and a hot topic in the local press that the landfill was a possible health hazard, and unsuccessful cleanup efforts continued for most of the 1980s. In February 1988, Chemetron filed chapter 11, and the bankruptcy court fixed a claims bar date for May 31, 1988.  Chemetron's plan was confirmed in July 1990. Like *Placid Oil*, no fund was set aside in the plan for future claims, no future claims representative was appointed, and all claimants who did not file by the bar date were to be forever discharged. In March 1992, almost four years after the bar date and two years after plan confirmation, 21 plaintiffs sued Chemetron for injuries allegedly suffered from exposure to the toxic site.

61.     The first time the case went up on appeal to the Third Circuit, the court held that the plaintiffs were "unknown creditors" under the proper "reasonably ascertainable" standard, and that publication notice was sufficient, but then also

---

[27]  In *In re Placid Oil Co.*, 753 F.3d. 151 (5th Cir. 2014),  the Fifth Circuit held that the heirs of a woman who first manifested the symptoms of mesothelioma fifteen years after the bar date in the chapter 11 case were barred from recovering either in the bankruptcy case (because the victim had not filed a claim, as she had no idea she was injured), or against the post-confirmation successor because her "claim" had been discharged under § 1141(d)(1)(A) by confirmation of the plan. The court further held that such a bar satisfied due process since publication notice sufficed for her as an unknown creditor.  The Bar Date Order entered by the Bankruptcy Court was predicated on the rationale in *In re Placid Oil Co*.

[28] 212 F.3d 199 (3d Cir. 2000).

PRIVILEGED AND CONFIDENTIAL

remanded for consideration of excusable neglect in delaying filing claims.[29] On remand, the lower courts found no excusable neglect, and the case went back up to the Third Circuit. For 20 of the 21 plaintiffs, the Third Circuit affirmed and held that the plaintiffs' claims were barred and that they had not established excusable neglect.[30] Importantly, these 20 plaintiffs all knew of the significant health risks posed by the contaminated site, and had suffered injuries *before* the claims bar date, but had not adequately investigated their possible claims. For claimants with such *manifested* injuries prior to the bar date, the court's holding is perfectly sensible.

62.    But things were different for plaintiff Ivan Schaffer. Why? Ivan was *not born* until August 27, 1992, four years after the bar date and more than two years after plan confirmation.   Just as in *Placid Oil*, the confirmed chapter 11 plan made no provision for future claims such as those held by Ivan, nor was a future claims representative appointed to represent his and similar interests. Obviously it was impossible for the-as-yet-unborn-Ivan to timely file a proof of claim, and the Third Circuit found it inappropriate to expect his mother to act on behalf of an as-yet-unconceived child. In that setting, the Third Circuit held flatly that it violated constitutional due process to discharge Ivan's claim.[31]   According to the Third Circuit, "[u]nder fundamental notions of procedural due process, a claimant who has no appropriate notice of a bankruptcy reorganization cannot have his claim extinguished in a settlement pursuant thereto."[32] Ivan, the court stated, "had no notice of or participation in the Chemetron reorganization plan," and "[n]o effort was made during the course of the

---

[29] 72 F.3d 341 (3d Cir. 1995).
[30] 212 F.3d 199, 209 (3d Cir. 2000).
[31] *Id.* at 209-210.
[32] *Id.*

PRIVILEGED AND CONFIDENTIAL

bankruptcy proceeding to have a representative appointed to receive notice for and represent the interests of future claimants."[33] Thus, Ivan's claim was not discharged.

63.    Notably, even though one could make a cogent argument that Ivan did not have a bankruptcy claim at all since he had not yet been born at the time of the bankruptcy, the Third Circuit did not decide on that basis, but instead decided Ivan's rights solely on due process grounds.  *Chemetron* is good authority for invoking due process as a defense to discharge for any "claimant who has no appropriate notice of a bankruptcy reorganization," and that anyone who is classified as a "future claimant" is entitled to such notice, either individually *or* to a present class representative. The court suggests that appointing a class representative to receive notice might have been enough. So too due process might have been satisfied if provision were made for a fund reserved for future claimants. But neither was done. Nor is there any reason to think that only unborn persons can qualify as future claimants.

64.    Thus, under *Chemetron*, we submit, that any "unmanifested claimant," even one a member of the "quick" at the time of the bankruptcy, who has no reason to think or even suspect that she has a claim, cannot constitutionally be discharged if the bankruptcy case makes no provision for distribution to or representation of that claimant.

65.    These due process concerns are exacerbated by the awkward timing of the Bar Date relative to the confirmation hearing, wherein the confirmation of the Debtors' Plan will be have transpired long before the Bar Date of December 14, 2015.  The Bar Date notice did not include notice of the confirmation hearing so those who file proof of claims in the last few weeks have lost the right to object and modify the Plan.

---

[33] *Id.* at 210.

PRIVILEGED AND CONFIDENTIAL

### REQUEST FOR RELIEF

For all of the foregoing reasons, Fenicle and Fahy respectfully request that the Court deny approval of the Settlement Motion and confirmation of the Plan and grant such other and further appropriate relief.

Dated: Wilmington, DE
      October 23, 2015

                          Respectfully submitted:

By:    */s/ Daniel K. Hogan*
        Daniel K. Hogan (DE Bar # 2814)
        **HOGAN♦McDANIEL**
        1311 Delaware Avenue
        Wilmington, Delaware  19806
        Telephone:  (302) 656-7540
        Facsimile: (302) 656-7599
        dkhogan@dkhogan.com
        -and-

        Steven Kazan (CA Bar # 46855)
        Kazan McClain Satterley & Greenwood
        A Professional Law Corporation
        Jack London Market
        55 Harrison Street, Suite 400
        Oakland, CA 94607
        Telephone: (510) 302-1000
        Facsimile: (510) 835-4913

        -and-

        Ethan Early (CT Juris # 417930)
        Early Lucarelli Sweeney & Strauss
        265 Church Street, 11th Floor
        New Haven, CT 06508-1866
        Telephone: (203) 777-7799
        Facsimile: (203) 785-1671

        *Counsel for Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy*

27