**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | : | Case No. 14-10979 (CSS) |
| Debtors. | : | (Jointly Administered) |
| | : | **Related to Docket No. 6122** |

**EFIH SECOND LIEN TRUSTEE'S**
**OBJECTION TO DEBTORS' PLAN OF REORGANIZATION**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

A. The EFIH Second Lien Note Claims ..... 3

B. Plan Treatment of EFIH Second lien Note Claims ..... 5

C. Plan Impairment of Other Rights ..... 6

OBJECTION ..... 8

I. The Plan Impairs the EFIH Second Lien Note Claims ..... 8

A. The Plan Disallows Claims Incurred Post-Effective Date ..... 10

i. Post-Effective Date Fees, Expenses, and Indemnification ..... 10

ii. Post-Effective Date Interest and Unpaid Principal. ..... 12

iii. The Purported Plan-Based "Claims Objection" ..... 13

B. The Plan Impairs Litigation Rights ..... 16

C. The Plan Releases the Liens and Discharges the Obligations under the EFIH Second Lien Note Claims before Satisfaction in Full. ..... 19

D. The Confirmation Order must provide that Reorganized EFIH Will Have the Ability to Pay all EFIH Second Lien Note Claims ..... 22

II. Reservation of Rights Regarding Distribution Mechanics ..... 24

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allegheny Int'l Inc.*,
954 F.2d 167 (3d Cir. 1992)....................15

*In re American Solar King Corp.*,
90 B.R. 808 (Bankr.W.D.Tex.1988)....................9

*In re Chateaugay Corp.*,
10 F.3d 944 (2d Cir. 1993)....................19, 20

*In re Dynamic Brokers, Inc.*,
293 B.R. 489 (B.A.P. 9th Cir. 2003)....................16

*In re Greenwood Point, LP*,
445 B.R. 885 (S.D. Ind. 2011)....................21

*In re Holt*,
153 B.R. 215 (Bankr. N.D. Ill. 1993)....................16

*In re L & J Anaheim Associates*,
995 F.2d 940 (9th Cir. 1993)....................8

*In re Motors Liquidation Co.*,
447 B.R. 198 (Bankr. S.D.N.Y. 2011)....................18

*In re Oakwood Homes Corp.*,
329 B.R. 19 (D. Del. 2005)....................16

*In re Simmons*,
765 F.2d 547 (5th Cir. 1985)....................16

*In re Texas Rangers Baseball Partners*,
434 B.R. 393 (Bankr. N.D. Tex. 2010)....................11

*Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*,
324 F.3d 197 (3d. Cir. 2003)....................8, 9

*In re Veenstra*,
1993 WL 195395 (Bankr. D. Idaho May 28, 1993)....................16

*In re Whatley*,
155 B.R. 775 (Bankr. D. Colo. 1993)....................20

**Statutes**

11 U.S.C. § 1124(1) ....................................................................................................................8

28 U.S.C. § 158(a)(1) ................................................................................................................16

**Other Authorities**

Fed. R. Bankr. P. 3001(f)...........................................................................................................15

Fed. R. Bankr. P. 9013...............................................................................................................15

Fed. R. Bankr. P. 9014(a) ..........................................................................................................15

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacity as indenture trustee (the "**EFIH Second Lien Trustee**") for the EFIH Second Lien notes (the "**EFIH Second Lien Notes**" and the holders thereof, the "**EFIH Second Lien Noteholders**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011 (together with all supplements, amendments, and exhibits, the "**Indenture**") hereby submit this objection (the "**Objection**") to the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**") [Dkt. No. 6122].[1] In support of this Objection, the EFIH Second Lien Trustee respectfully submits the following:

**PRELIMINARY STATEMENT**

1. From the day the current REIT Plan structure was first disclosed to the Court, the Debtors and their T-side Plan supporters have continuously told the Court about the virtue of the REIT Plan: that it would render all E-side creditors irrelevant because they would be paid in full and unimpaired. But while the Debtors and the Plan supporters continue to talk the talk of unimpairment, they have failed to walk the walk and propose a plan that actually unimpairs the EFIH Second Lien Note Claims. Instead, ignoring the Court's admonition to not be too cute with respect to unimpairment, the Debtors and Plan supporters seek to take advantage of the benefits of the EFIH Second Lien Noteholders' unsolicited acceptance of the Plan through deemed unimpairment, while simultaneously using the Plan to strip holders of valid rights underlying their claims.

2. As an initial matter, while the Plan purports to pay the EFIH Second Lien Note Claims "in full," in reality, the Plan only pays select portions of those claims and expressly

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan and Disclosure Statement [Docket No. 6124].

disallows others. Specifically, the Plan disallows post-Effective Date fees, expenses, and indemnification claims of the EFIH Second Lien Trustee by releasing and discharging those claims on the Effective Date, notwithstanding that the EFIH Second Lien Note Indenture contains no such limitation on these continuing obligations.

3. Similarly, the Plan expressly disallows any claims for interest that accrues post-Effective Date. The EFIH Second Lien Indenture, however, provides for payment of interest until all payments are made to the holders in full. As discussed in detail below, there may be certain circumstances – including as a result of the intercreditor litigation between the EFIH First Lien Trustee and the EFIH Second Lien Trustee (the "**Intercreditor Litigation**") – where holders may not receive the requisite payments on the Effective Date. Thus, under the EFIH Second Lien Indenture, interest may continue to accrue post-Effective Date, and the Plan must provide for payment of such amounts.[2]

4. Moreover, to truly unimpair the EFIH Second Lien Note Claims, aside from actually paying such claims in full, the Plan must also leave all of the claim's "legal, equitable, and contractual rights" completely unaltered. But, as currently drafted, the Plan severely impairs the legal, equitable, and contractual rights of the EFIH Second Lien Noteholders. *First*, the Debtors attempt to use the Plan to eliminate the EFIH Second Lien Trustee's (and the noteholders') right to fully litigate their Makewhole Claims by providing that the claims are disallowed regardless of whether the claims are ultimately allowed after the Effective Date. *Second*, the Plan further provides for the release of liens and discharge of obligations underlying

[2] Besides the fact that the Plan itself is fatally flawed as a result of the disallowance of these portions of the EFIH Second Lien Note Claims, the process by which the Debtors seek this disallowance is equally flawed and must be stricken in its entirety. It is not appropriate for the Debtors to seek disallowance of certain (unspecified) portions of the claims simply by "deeming" the Plan to constitute an objection to those claims. Indeed, this procedure runs contrary to the Bankruptcy Code, the Bankruptcy Rules, and the Debtors' own established claims objection procedures.

the EFIH Second Lien Note Claims – without establishing a reserve for those claims and despite the fact that obligations remain outstanding. This is a significant alteration of the rights afforded by the EFIH Second Lien Indenture, which provides that the liens cannot be discharged until all obligations are satisfied in full.

5. Any one of these grounds is sufficient to establish that the EFIH Second Lien Note Claims are impaired. Because the Debtors chose not to solicit the votes of holders of the EFIH Second Lien Note Claims, they are faced with what should be an easy choice: either modify the Plan to actually unimpair the EFIH Second Lien Note Claims, or prosecute a patently unconfirmable Plan.

6. While the Plan's impairment of the EFIH Second Lien Note Claims is significant, as set forth in **Exhibit 1**, the modifications required to unimpair those claims are not. The Plan and Confirmation Order simply need to provide that (i) all allowed EFIH Second Lien Note Claims – regardless of when they are incurred or when they are allowed – will be paid, and (ii) all legal, equitable, and contractual rights, including the right to fully litigate the makewhole claims (including full appellate review) and the liens securing the EFIH Second Lien Note Claims, will remain unaltered and in place until all obligations are satisfied in full.

7. Absent these modifications, the Plan cannot be confirmed.

## BACKGROUND

### A. The EFIH Second Lien Note Claims

8. The EFIH Second Lien Note Claims consist of four primary components: (i) principal, (ii) interest, (iii) Makewhole Claims, and (iv) fees, expenses and indemnification claims of the EFIH Second Lien Trustee.

9. Each component of the EFIH Second Lien Note Claims is grounded in the EFIH Second Lien Indenture:

- *Principal/Interest*. Pursuant to section 4.01 of the EFIH Second Lien Indenture, "[t]he Issuer shall pay or cause to be paid the principal of and premium, if any, and interest (including Additional Interest, if any) on the Notes on the dates and in the manner provided in the Notes." Moreover, that section also provides that "[t]he Issuer shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue principal at the rate equal to the then applicable interest Rate on the Notes to the extent lawful; it shall pay interest (including post-petition interest in any proceeding under any Bankruptcy Law) on overdue installments of interest (including Additional Interest, if any) (without regard to any applicable grace period) at the same rate to the extent lawful." *See* EFIH Second Lien Note Indenture § 4.01.

- *Makewhole Claims*. The basis for the EFIH Second Lien Makewhole Claims is set forth in detail in the pleadings submitted by the EFIH Second Lien Trustee in the adversary proceeding litigating those claims. In short, the basis for the EFIH Second Lien Makewhole Claims is set forth in sections 6.02 and 3.07 of the EFIH Second Lien Indenture. *See generally* Adv. Pro. No. 14-50405 (CSS) [Adv. Dkt. Nos. 1, 37, 47].

- *Fees, Expenses, Indemnification*. Section 7.07 of the EFIH Second Lien Note Indenture provides that (i) "[t]he Issuer and the Guarantors, jointly and severally, shall pay to the Trustee from time to time such compensation for its acceptance of this Indenture and services hereunder," (ii) "[t]he Issuer and the Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances, and expenses incurred," and (iii) "[t]he Issuer and the Guarantors, jointly and severally, shall indemnify the Trustee for, and hold the Trustee harmless against any and all loss, damage, claims, liability, or expense (including attorneys' fees)." *See* EFIH Second Lien Note Indenture § 7.07. Section 7.07 also provides that "the obligations of the Issuer under this Section 7.07 shall survive the satisfaction and discharge of this Indenture." *Id.*

10. In addition, pursuant to section 12.01 of the EFIH Second Lien Note Indenture, the Debtors' obligations under that Indenture cannot be discharged until (i) all notes have become due and payable, (ii) no default with respect to the indenture or the notes has occurred and is continuing, (iii) the Issuer has paid or caused to be paid all sums payable by it under the Indenture, and (iv) the Issuer has delivered irrevocable instructions to the EFIH Second Lien

Trustee to apply the money towards the payment of the notes. *See* EFIH Second Lien Note Indenture § 12.01(2).

11. The EFIH Second Lien Note Indenture also provides that:

> If the Trustee or Paying Agent is unable to apply any money or Government Securities in accordance with section 12.01 hereof by reason of ***any legal proceeding*** or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Issuer's and any Guarantor's obligations under this Indenture and the Notes ***shall be revived and reinstated as though no deposit had occurred*** pursuant to Section 12.01 hereof . . . .

*See* EFIH Second Lien Note Indenture § 12.02 (emphasis added). In short, if the EFIH Second Lien Trustee cannot make payments to the holders of the EFIH Second Lien Notes due to the pendency of a legal proceeding, the obligations under the Indenture cannot be released or discharged.

**B. <u>Plan Treatment of EFIH Second lien Note Claims</u>**

12. Article III.B.19(b) and (c) of the Plan provides for the following treatment of the EFIH Second Lien Note Claims:

> (b) *Allowance*: As Class B4 Claims, the EFIH Second Lien Note Claims are Allowed in an amount equal to the sum of: (i) the principal amount outstanding, plus accrued but unpaid prepetition interest, under the EFIH Second Lien Note Indenture; (ii) accrued but unpaid postpetition interest (including any Additional Interest or interest on interest) on such principal at the non-default contract rate set forth in the EFIH Second Lien Note Indenture through the Effective Date; and (iii) all reasonable and documented fees, expenses, and indemnification claims owed under the EFIH Second Lien Indenture, but not including, for the avoidance of doubt, any Makewhole Claims.
>
> (c) *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class B4 agrees to a less favorable treatment of its Allowed Claim, ***in full and final satisfaction, settlement, release, and discharge of*** and in exchange for each Allowed Claim in Class B4, each such Holder shall receive, up to the Allowed amount of its Claim, ***payment in full in Cash***.

13. Though the Plan provides for payment of the Allowed EFIH Second Lien Note Claims in full, certain of the EFIH Second Lien Note Claims are expressly disallowed. The Plan treatment of the various components of the EFIH Second Lien Note Claims can be summarized as follows:

| *Claim* | *Plan Treatment* |
|---|---|
| Principal | Paid in full, in cash (Art. III.B.19(b), (c)) |
| Accrued/Unpaid Prepetition Interest | Paid in full, in cash (Art. III.B.19(b), (c)) |
| Pre-Effective Date Postpetition Interest | Paid in full, in cash (Art. III.B.19(b), (c)) |
| Post-Effective Date Postpetition Interest | **Disallowed** (Art. III.B.19(b); Art. VI.A) |
| EFIH Second Lien Makewhole Claims | **Disallowed as of Effective Date; no means to collect if allowed post-Effective Date** (Art. III.B.19(b); Art. IX.B) |
| Pre-Effective Date Fees, Expenses, Indemnification Claims | Paid in full, in cash (Art. III.B.19(b), (c)) |
| Post-Effective Date Fees, Expenses, Indemnification Claims | **Disallowed** (Art. III.B.19(c), Art. IV.I, Art. VIII.A) |

14. Notwithstanding the disallowance of various portions of the EFIH Second Lien Note Claims, the Plan purports to provide this less-than-full payment as payment in full of all amounts under the EFIH Second Lien Note Claims.

**C. <u>Plan Impairment of Other Rights</u>**

15. The Plan's impact on the EFIH Second Lien Notes goes beyond the treatment of the claims themselves and also alters the rights of the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders.

16. *First*, the Debtors are using the Plan to usurp the EFIH Second Lien Trustee's litigation and appellate rights. With respect to the EFIH Second Lien Makewhole Claims specifically, the Plan treatment section provides that the Makewhole Claims are disallowed. *See* Plan Art. III.B.19(b). Further, it is a condition to the Effective Date that these claims be

disallowed by the Bankruptcy Court. *See* Plan Art. IX.B (a).[3] The Makewhole Claims would still be "disallowed" under the Plan, with no means for means for payment, even if an appellate court ultimately allows the Makewhole Claims post-Effective Date. As a result, the Plan undercuts – if not attempts to eliminate – the EFIH Second Lien Trustee's rights to a thorough litigation of these claims.

17. *Second*, the Plan also provides for (i) the cancellation and discharge of the security documents evidencing the EFIH Second Lien Note Claims on the Effective Date (*see* Art. IV.I)[4]; (ii) the discharge and release of the EFIH Second Lien Note Claims on the Effective Date (*see* Art. VIII.A); (iii) the release of all claims held by the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders against the Debtors (Art. VIII.D); and (iv) the release of all liens underlying the EFIH Second Lien Note Claims on the Effective Date and concurrently with distributions (*see* Art. VIII.B). Pursuant to the Plan, this release and discharge is effective on the Effective Date, notwithstanding the fact that certain obligations under the EFIH Second Lien Note Claims may remain outstanding on and after the Effective Date.

[3] The Disclosure Statement provides that in the event the Makewhole Claims are allowed pre-Effective Date, the necessary parties will either need to waive this condition or withdraw the Plan entirely.

[4] While Article IV.I provides that the cancelled indentures shall continue for certain limited purposes (including allowing the Indenture Trustees to make and holders to receive distributions, the exercise of charging liens, and the ability appear in the chapter 11 cases), this section expressly provides that allowing the continuance of the indenture for these limited purposes does *not* affect the discharge of Claims or result in any expense or liability to the Debtors or Reorganized Debtors.

# OBJECTION[5]

## I. The Plan Impairs the EFIH Second Lien Note Claims

18. The Debtors seek Plan confirmation as to the EFIH Second Lien Notes on the grounds that the EFIH Second Lien Notes are "Unimpaired" and therefore deemed to accept the Plan. As a result, the Debtors did not solicit the votes of the holders of the EFIH Second Lien Notes on the Plan. In light of the Debtors' decision, the Court cannot confirm the Plan if the EFIH Second Lien Notes are in fact impaired. *See* Hr'g Tr. at 47:11-13 (Sept. 21, 2015) ("[COURT:] Whether they are in fact impaired and they're not voting that would be fatal to confirmation."). Importantly, the Debtors bear the burden of proof of establishing that a class of claims is unimpaired. *See, e.g.*, *Solow v. PPI Enters. (U.S.), Inc. (In re PPI Enters. (U.S.), Inc.)*, 324 F.3d 197, 203 (3d. Cir. 2003).

19. The requirements for unimpairment are governed by section 1124 of the Bankruptcy Code. Under section 1124(1), a claim is impaired unless the plan "leaves unaltered the legal, equitable, and contractual rights to which such a claim or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). The Bankruptcy Code creates a "presumption of impairment" so as to favor creditor voting on a plan. *See PPI Enters.*, 324 F.3d at 203. Moreover, impairment is defined "in the broadest possible terms." *In re L & J Anaheim Assocs.*, 995 F.2d 940, 942 (9th Cir. 1993) (citation omitted). "If the debtor's Chapter 11 reorganization plan does not leave the creditor's rights *entirely* 'unaltered,' the creditor's claim will be labeled as impaired." *PPI Enters.*, 324 F.3d at 202 (emphasis added); *see also L&J Anaheim Assocs.*,

---

[5] On October 20, 2015, the Debtors filed copies of the twenty-one (21) documents comprising the Plan Supplement. The EFIH Second Lien Trustee is still in the process of reviewing the Plan Supplement documents, and reserves all rights to amend this objection or file a supplemental objection to any portion of the Plan Supplement, including to those documents that provide for exit financing free and clear of any liens or claims. To the extent modifications are made to the Plan to unimpair the EFIH Second Lien Note Claims as discussed herein and in **Exhibit 1**, corresponding changes will likewise need to be made to certain of the Plan Supplement documents.

995 F.2d at 943 (creditor was "impaired," regardless of whether plan may have actually resulted in enhancement of creditor's position, where plan altered contractual rights and left creditor unable to invoke substantive remedies or procedural mechanisms available under loan agreements).

20. The Third Circuit's opinion in *In re PPI Enterprises* is instructive. There, the debtors proposed a plan that capped a landlord's claim under section 502(b)(6) of the Bankruptcy Code. Because the debtors' plan proposed to pay such capped claim in full, the plan deemed the landlord unimpaired. The landlord objected, arguing that he was, in fact, impaired because he was not being paid the full amount of his underlying claim (i.e., the uncapped amount). Relying on *In re American Solar King Corp.*, 90 B.R. 808 (Bankr.W.D.Tex.1988), the Court found that the landlord's statutorily capped claim was actually unimpaired under the plan. *In re PPI Enters.*, 324 F.3d at 203. In so holding, the Third Circuit expressly distinguished circumstances where it was the Bankruptcy Code (or other statute) that imposed the limitations or alterations on a creditors rights or claims, from circumstances where it was the plan that imposed those alterations or impairments. *Id.* The Court reasoned that, where the Bankruptcy Code itself imposed a cap on claims (i.e., a statutory cap on a landlord's rejection damages claims) the Bankruptcy Code's alteration of that claim was not impairment under 1124. *Id.* By contrast, alterations or impairments of a creditors' legal, equitable, or contractual rights that are imposed not by statute, but only by the plan, are impairments within the meaning of section 1124. *See id.* ("Impairment results from what the *plan* does, not what the statute does.") (emphasis in original).

21. Here, as described in more detail below, it is unquestionably the provisions of the Plan – not the Bankruptcy Code or any statutory equivalent – that impair the rights and claims of the EFIH Second Lien Noteholders and the EFIH Second Lien Trustee. Because the Debtors

decided not to solicit the votes of the EFIH Second Lien Noteholders, they have the burden of rebutting the presumption of impairment. However, given the treatment being imposed by the Plan, the Debtors simply cannot satisfy their burden; the EFIH Second Lien Note Claims are impaired, and the Plan, absent modification, cannot be confirmed.

**A. The Plan Disallows Claims Incurred Post-Effective Date**

22. The EFIH Second Lien Note Indenture clearly provides for payment of (i) fees, expenses, and indemnification claims of the EFIH Second Lien Trustee, and (ii) interest on the EFIH Second Lien Note Claims until all obligations under the EFIH Second Lien Notes have been satisfied in full. Nowhere in the EFIH Second Lien Note Indenture is there any limitation on these claims based on the occurrence of certain events (the Effective Date) after the commencement of a bankruptcy proceeding. Nevertheless, Article III.B.19(b) of the Plan only provides for the allowance of claims for fees, expenses, and indemnification claims of the EFIH Second Lien Trustee through the Effective Date. *See* Chart, *supra* ¶ 13. Because this undercuts the holders' and the EFIH Second Lien Trustee's rights to payment on post-Effective Date claims under the EFIH Second Lien Indenture, it is clear that the Debtors are using the Plan to impair the EFIH Second Lien Note Claims. *See, e.g., In re Texas Rangers Baseball Partners*, 434 B.R. 393, 410 (Bankr. N.D. Tex. 2010) ("[I]n order for the Plan to be confirmed without the acceptance of the Lenders or satisfaction of Code § 1129(b)(1), the treatment of the Lenders must be modified to allow them to exercise their rights under their loan documents following the effective date."). Each of these impairments is discussed in turn.

*i. Post-Effective Date Fees, Expenses, and Indemnification*

23. Pursuant to Article III.B.19(b) of the Plan, the fees, expenses, and indemnification claims of the EFIH Second Lien Trustee are allowed. As discussed below, however, the Plan releases all EFIH Second Lien Note Claims as of the Effective Date. The Disclosure Statement,

moreover, only provides a means for seeking reimbursement of such fees, expenses and indemnification claims incurred through the Effective Date. *See* Disclosure Statement at 123. Thus, the Plan provides no means for payment of fees, expenses, and indemnification claims incurred post-Effective Date, which impairs the rights of the EFIH Second Lien Trustee.[6]

24. There is nothing in the EFIH Second Lien Note Indenture that creates a time limitation on fees, expenses, and indemnification claims of the EFIH Second Lien Trustee based on when they are incurred. In fact, the EFIH Second Lien Note Indenture specifically states that claims for fees, expenses, and indemnification survive the satisfaction and discharge of the indenture. *See* EFIH Second Lien Note Indenture § 7.07. Moreover, the need for payment of the EFIH Second Lien Indenture Trustee's fees, expenses, and indemnification claims is not a theoretical concern. The EFIH Second Lien Trustee will almost certainly be involved in litigation concerning the EFIH Second Lien Note Claims that will continue post-Effective Date. In addition to the litigation over the EFIH Second Lien Makewhole Claims, there is pending Intercreditor Litigation between the EFIH First Lien Trustee and the EFIH Second Lien Trustee. Because the EFIH Second Lien Trustee will need to be involved in any such litigations, it will continue to accrue claims for post-Effective Date fees and expenses, and for indemnification. *See* EFIH Second Lien Note Indenture § 7.07.[7]

25. In addition to fees and expenses, the EFIH Second Lien Trustee may have a significant indemnification claim against the Debtors arising from the Intercreditor Litigation.

[6] The Plan does not separately classify the claims of the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders. It must be noted, however, that because the EFIH Second Lien Trustee can assert its charging lien against distributions, any impairment of the rights of the EFIH Second Lien Trustee is an impairment of the rights of the EFIH Second Lien Noteholders.

[7] Moreover, pursuant to section 7.02(f) of the EFIH Second Lien Note Indenture, the EFIH Second Lien Trustee is not required to "expend or risk its own funds or otherwise incur any liability, financial or otherwise, in the performance of any of its duties [under the Indenture], or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or indemnity satisfactory to it against such risk or liability is not assured." EFIH Second Lien Note Indenture § 7.02(f).

As with the fees and expenses claims of the EFIH Second Lien Trustee, the EFIH Second Lien Note Indenture provides for payment of these indemnification claims without regard to when they are incurred. *Id.*

26. Although Article IV.I of the Plan – which cancels and discharges the EFIH Second Lien Note Indenture on the Effective Date – provides that the indenture may survive for certain limited purposes, the payment of fees, expenses, and indemnification of the EFIH Second Lien Trustee is not one of them. To the contrary, this section of the Plan provides that Reorganized EFIH will *not* be liable for any continued expense or liability post-Effective Date. Because this provision seeks to eliminate the right to payment on these claims incurred post-Effective Date in direct contravention of the EFIH Second Lien Indenture, this is, by definition, impairment.

*ii.* *Post-Effective Date Interest and Unpaid Principal*

27. The Allowed EFIH Second Lien Note Claims under Article III.B.19(b) of the Plan only include claims for postpetition interest *through the Effective Date*.[8] The EFIH Second Lien Indenture, however, provides that interest will continue accruing on the EFIH Second Lien Notes unless and until all principal is paid in full in accordance with the EFIH Second Lien Notes. *See* EFIH Second Lien Note Indenture §§ 2.08; 4.01. The EFIH Second Lien Note Indenture does not contain a "plan effective date" expiration on the accrual of interest.

28. As noted above, it is virtually certain that the Intercreditor Litigation will not be finally resolved prior to the Effective Date. In the exercise of its duties and in compliance with the EFIH Second Lien Indenture, the EFIH Second Lien Trustee may be required to hold back a portion of the principal on the EFIH Second Lien Notes pending the resolution of the

[8] The Plan also seeks to cut-off all rights to post-Effective Date interest in the event there are any delays in distributions pursuant to Article VI.A.

Intercreditor Litigation (absent certain necessary protections). Under these circumstances, interest will continue to accrue at the contract rate on the principal portion of the EFIH Second Lien Note Claims that cannot be distributed.[9] *See* EFIH Second Lien Note Indenture § 12.01. In addition, to the extent the EFIH Second Lien Makewhole Claims are allowed, interest will have accrued on these claims at the contract rate. The failure of the Plan to provide for payment of these claims impairs the EFIH Second Lien Note Claims. The Plan must therefore be modified to provide that such post-Effective Date interest, if any, will be paid to render the EFIH Second Lien Note Claims unimpaired.

29. In addition, to the extent the EFIH Second Lien Trustee or the EFIH Second Lien Noteholders are ultimately required to turn over any distributions to the EFIH First Lien Trustee as a result of the Intercreditor Litigation, the EFIH Second Lien Noteholders will not have received payment in full of their principal and will continue to have a claim against the Debtors for such amounts. However, because the Plan seeks to cut off the right of the EFIH Second Lien Noteholders to collect any amounts after the Effective Date, the EFIH Second Lien Notes are further impaired.

*iii.* *The Purported Plan-Based Claims Objection*

30. Not only does the Plan fail to provide for the payment or satisfaction of the obligations under the EFIH Second Lien Note Claims in full, the mechanism by which the Debtors are seeking to avoid full payment of these claims is seriously misguided. Specifically, Article VII.A of the Plan provides:

> Except as specifically provided as Allowed Claims pursuant to Article III.B of the Plan or otherwise objected to by the Debtors in the Chapter 11 Cases, ***the Plan shall serve as the Debtors' objection to all other . . . EFIH Second Lien Note***

[9] Moreover, the EFIH Second Lien Trustee may also need to exercise its charging lien from distributions to advance such costs for fees and expenses (as permitted under the EFIH Second Lien Indenture).

> ***Claims . . . under the respective indentures***. If the Bankruptcy Court sustains the Debtors' objection to these Claims, the Confirmation Order will disallow such Claims against the Debtors. The Holders of such Claims may respond to the Debtors' objection to such Claims by filing an objection to the Plan.

31. Thus, the proposed Plan is supposed to constitute a "deemed objection" to any portion of the EFIH Second Lien Note Claims that are not Allowed or subject to a separate objection. As noted above, the Allowed portion of the EFIH Second Lien Note Claims under the Plan does *not* include any post-Effective Date fees, expenses, or indemnification claims, nor does it include any post-Effective Date interest or unpaid principal.[10]

32. To the extent the Debtors wish to object to portions of the EFIH Second Lien Notes Claims, this Plan provision is procedurally and substantively improper. The EFIH Second Lien Trustee timely filed proofs of claim, which constitute prima facie evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f). Having satisfied the initial burden with respect to the EFIH Second Lien Note Claims, "[t]he burden of going forward then shifts to the objector *to produce evidence sufficient to negate the* prima facie *validity of the filed claim.*" *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). "In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* at 173-74.[11]

33. The "objection" described by the Plan is not an objection at all. The Debtors have not actually articulated any objection to any portion of the EFIH Second Lien Note Claims. The lone statement in the Plan that the Debtors object to certain unspecified claims is, by definition,

---

[10] The EFIH Second Lien Trustee assumes that this "deemed objection" Plan provision is not an objection to fees, expenses and indemnification claims incurred through the Effective Date (as the Disclosure Statement describes a separate process for submission of unpaid invoices for such amounts and resolution of any disputes on the reasonableness of such amounts) and reserves all rights to the extent the Debtors intend to contest any pre-Effective Date fees, expenses and indemnification claims at the Confirmation Hearing.

[11] Having cited these standards in their own claim objections, the Debtors are well aware of the burden they bear in objecting to claims. *See* EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes, ¶31 [Dkt. No. 4964].

insufficient to overcome the prima facie validity of these claims. And even if the Plan could somehow be construed as a motion contesting these claims under Bankruptcy Rule 9014, such a motion must "set forth the relief or order sought" and "state with particularity the grounds therefor." Fed. R. Bankr. P. 9013; *see also* Fed. R. Bankr. P. 9014(a). The Plan "objection" does not meet these requirements.

34. In addition, this provision also runs afoul of the Debtors' own claims procedure motion, which states that when a claimant is served with a claims objection, the Debtors will provide "the basis for the Debtors' objection to such Claimant's Proof of Claim." [Docket No. 2849, at ¶21]. Through the Plan, the Debtors seek to circumvent their established process by requiring the EFIH Second Lien Trustee to respond to a claims objection in their confirmation objection, without having any information as to exactly what the Debtors are objecting to and why the Debtors are objecting to these claims. The Debtors' confirmation reply will then (for the first time) state the basis for their objection, leaving the EFIH Second Lien Trustee with no opportunity to respond to the claims objection on a substantive basis. The Court should not sanction such a prejudicial process.

35. Moreover, plan confirmation (which will already be hotly contested) is not the appropriate time to litigate the substance of particular aspects of the EFIH Second Lien Note Claims. In fact, certain courts have denied a debtor's attempt to fold in claims objections into plans. *See In re Dynamic Brokers, Inc.*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("[T]here is no rule that authorizes an objection to claim to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007."); *In re Holt*, 153 B.R. 215, 216 (Bankr. N.D. Ill. 1993) ("The terms of a plan cannot be used to deviate from established proof of claim procedures to determine the amount of a claim."); *In re Veenstra*, 1993 WL 195395, at *1

(Bankr. D. Idaho May 28, 1993) (plan could not substitute for claim determination process, at least not without "reserve"); *In re Simmons*, 765 F.2d 547, 553 (5th Cir. 1985) (noting, in a chapter 13 case, that "[t]he Code and the Rules do not envision the use of a plan as a means for objecting to proofs of claims"). Accordingly, this provision of the Plan should be stricken in its entirety.

36. To the extent the Court is willing to entertain this supposed claims objection, the EFIH Second Lien Trustee reserves all rights to file a supplemental confirmation objection responding to any substantive issues with the EFIH Second Lien Note Claims set forth in the Debtors' confirmation reply.

**B. The Plan Impairs Litigation Rights**

37. The legal right to appeal a bankruptcy court decision is well established. *See*, *e.g.*, 28 U.S.C. § 158(a)(1) (giving district court jurisdiction to hear appeals from final judgments, orders, or decrees by the bankruptcy court); *In re Oakwood Homes Corp.*, 329 B.R. 19, 21 (D. Del. 2005) (discussing creditors' right to appeal bankruptcy court ruling on allowance of claims). The Plan, however, does not preserve the rights of the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders to fully litigate the Makewhole Claims to a final judgment. Indeed, the Plan provides no means for payment of the EFIH Second Lien Makewhole Claims even if they are ultimately allowed either by the Bankruptcy Court or on appeal.[12] By doing so, the Plan purports to render any decision in the litigation over the Makewhole Claims irrelevant: regardless of whether they are allowed by the bankruptcy or appellate court, the Plan expressly provides that such claims will not be paid. As a result, the rights of the EFIH Second Lien Noteholders to fully litigate those claims at the bankruptcy court

[12] The Debtors have also made it clear that, in the event the disallowance of the Makewhole Claims is appealed, they intend to seek to use the confirmation and consummation of the Plan to dismiss any such appeal as equitably moot.

and appellate levels, as well as their rights to payment on those claims if allowed, are clearly impaired.[13]

38. The Debtors are well aware of this issue. In response to identical concerns raised by the EFIH Second Lien Trustee at the Disclosure Statement hearing, the Debtors made the following statement on the record:

> If (a), the bankruptcy court has disallowed the make-whole claims prior to the effective date, and (b), subject to all appellate rights, including the right to assert equitable mootness, any of those make-whole claims are subsequently determined by an appellate court to be allowed claims that must be paid by either reorganized EFIH or new EFH, then such allowed claims will become obligations of reorganized EFIH or new EFH, as applicable.

*Hr'g Tr.* Sept. 21, 2015 at 16:14-16:21. This statement, however, completely sidesteps the issue: all the Debtors conceded is that if an appellate court says Reorganized EFIH is obligated to pay the EFIH Second Lien Makewhole Claims, Reorganized EFIH will be so obligated.[14] This is beyond self-evident. What this statement does not address is that, by not providing for the payment of subsequently allowed Makewhole Claims, the Plan enables the Debtors to argue before an appellate court that they should not be required to make these payments. To truly unimpair the EFIH Second Lien Makewhole Claims, the Plan must unequivocally provide that, in the event the EFIH Second Lien Makewhole Claims are ultimately allowed by the Bankruptcy

[13] In this regard, the Plan's definition of "Allowed" is also flawed, as it fails to provide for claims that are contested but ultimately allowed by the Bankruptcy Court or any appellate court. See Plan Art. I.A.13 (defining "Allowed" claims as those that are either (a) not subject to an objection, (b) scheduled by the Debtors, or (c) allowed pursuant to the Plan, in any stipulation with the Debtors approved by the Bankruptcy Court or pursuant to a contract assumed by the Debtors).

[14] The Debtors' general counsel, Stacy Doré, did not dispute this point. "Q. He said -- well, let me try to translate it in my words, and tell me why I have it wrong. If an appellate court says that it's an obligation of reorganized EFIH, then it's an obligation of reorganized EFIH. Isn't that what he said? A. That is what he said. Q. How is that not a tautology? A. It may or may not be a tautology, but it's the truth. If the appellate court says it's an obligation of the reorganized companies, then it is." Doré Dep. Tr. at 76:15 – 77:3 (discussing the Debtors' statements on the record at the Disclosure Statement hearing about the payment of the makewhole claims under the Plan). The relevant portions of the Doré deposition transcript are attached hereto as **Exhibit 2**.

Court or any appellate court, those claims will be paid by the Debtors and/or Reorganized EFIH.[15] To date, the Debtors have refused to include this requisite language in the Plan.[16]

39. Interestingly, the Debtors recognized the inability to unimpair the EFIH Second Lien Note Claims without resolving the EFIH Second Lien Makewhole Claims. In March 2015, the Debtors informed their boards of directors that any unimpairment of the EFIH Second Lien Note Claims must be premised upon the finalization or resolution of the EFIH Second Lien Makewhole Claims. *See* Presentation to the Boards of Directors and Managers of Energy Future Holdings Corp., Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC, TCEH Finance, Inc., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc. (Mar. 20, 2015), EFH05547436, at 24.[17] If there was no such finality or resolution, "the Debtors must assume that these claims are impaired." *Id.*

40. The Debtors failed to heed their own advice. As the Plan is currently drafted, it neither pays the EFIH Second Lien Note Claims in full nor does it leave holders' rights to payment of ultimately allowed claims unaltered. To resolve this issue, the Plan must be amended to provide that in the event the EFIH Second Lien Makewhole Claims are allowed by any court, they will be paid by the Debtors or Reorganized EFIH, as applicable. Without this modification, the EFIH Second Lien Note Claims are impaired and the Plan is unconfirmable.

[15] *See In re Motors Liquidation Co.*, 447 B.R. 198, 215 (Bankr. S.D.N.Y. 2011) ("Section 1123(a)(4) requires . . . that if claims are disputed and not yet allowed (but have the potential to be allowed), reasonable measures must be taken to ensure that the required same treatment is received if and when they're allowed.").

[16] "Q. So the issue that Judge Sontchi is going to be addressing is a plan that does not provide for any recovery for make-whole claims that are allowed after the effective date, on appeal after the effective date, right? A. It just doesn't speak to the issue of the -- it doesn't allow for make-whole claims, period, before or after the effective date. **There are no make-whole claims allowed in the plan.** Q. And the debtors have no current plan -- I hate to use the word plan twice in this context, but have no current plan to further amend what is currently the fifth amended plan, right? A. Not that I'm aware of at this time. **Q. The debtors have no plan – no intention to amend the plan to make it clear that claim -- make-whole claims allowed on appeal after the effective date would become obligations of the reorganized entities, correct? A. We do not have a current intention to do that amendment, that is correct**." *See* Doré Dep. Tr. at 123:21 – 124:23 (emphasis added).

[17] A copy of the relevant excerpt of this exhibit is attached here to as **Exhibit 3.**

41. In an attempt to rebut the EFIH Second Lien Trustee's impairment arguments in connection with the Disclosure Statement, the Debtors argued that "the trustees do not have an existing right to have the Plan or the Court preemptively fashion an appellate remedy" for the EFIH Second Lien Makewhole Claims. *See* Debtors' Disclosure Statement Reply at ¶24. But this argument misses the point – the EFIH Second Lien Trustee is not asking this Court to preemptively fashion an appellate remedy, it is simply stating that, to the extent the Plan intends to leave the EFIH Second Lien Note Claims unimpaired, it must leave *all* legal, equitable, and contractual rights unaltered. Indeed, the case on which the Debtors' rely for this argument is both instructive and consistent with the advice the Debtors' provided to their boards of directors. *See In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993). In *Chateaugay*, the Plan actually provided a reserve for all timely-filed, disputed and pending claims in any classes categorized as unimpaired. This "assure[d] that a claimant who has already been placed in an unimpaired class, but whose status in that class is subject to an ongoing dispute (due to an objection, for example, by the estate or by an unsecured creditor), will not lose its already established priority and its ability to collect in full merely because another of the Plan's provisions denies payment of disputed claims on the effective date." *Id.* at 960. The contesting creditor (who sought a reserve for disputed claims pending appeal) was actually an *impaired* creditor for whom the same considerations did not apply. *See id.* at 960-61.[18]

**C. The Plan Releases the Liens and Discharges the Obligations under the EFIH Second Lien Note Claims before Satisfaction in Full.**

42. Exacerbating each of the above-mentioned impairments of the EFIH Second Lien Note Claims, the Plan purports to cancel the EFIH Second Lien Notes, discharge all claims

[18] The remaining case cited by the Debtors in their Disclosure Statement Reply dealt with the ability to seek a stay pending appeal and did not address issues relating to impairment or unimpairment of claims. *See In re Whatley*, 155 B.R. 775 (Bankr. D. Colo. 1993) (creditor whose claim was disallowed in full sought a stay pending appeal).

relating to the EFIH Second Lien Notes and release the liens held by the EFIH Second Lien Trustee and EFIH Second Lien Noteholders on the Effective Date. But as noted above, section 12.01 of the EFIH Second Lien Note Indenture provides that the indenture cannot be cancelled until, among other things, "the Issuer has paid or caused to be paid all sums payable by it under [the] Indenture." *See* EFIH Second Lien Note Indenture § 12.01. As discussed above, as many as four obligations may remain outstanding on the EFIH Second Lien Note Claims as of the Effective Date: (i) the EFIH Second Lien Makewhole Claims (whether pending before the Bankruptcy Court or on appeal), (ii) claims for post-Effective Date fees, expenses, and indemnification of the EFIH Second Lien Trustee, (iii) claims for post-Effective Date interest on the EFIH Second Lien Notes, and (iv) to the extent not fully and finally paid to holders, claims for unpaid principal and interest.

43. Accordingly, the Plan cannot release or discharge the liens securing the EFIH Second Lien Note Claims unless and until all obligations have been satisfied – including, for example, by establishing a sufficient cash reserve and otherwise protecting the holders' and the trustee's rights under those claims. Because the Plan purports to release such lien, this automatically impairs the EFIH Second Lien Note Claims. *See In re Greenwood Point, LP*, 445 B.R. 885, 907 (S.D. Ind. 2011) ("The proposed loss of the Marion County Treasurer's valid lien rights prior to payment in full of its claim under the Plan is an additional, and significant, impairment under Section 1124.").

44. With respect to the EFIH Second Lien Makewhole Claims in particular, the Debtors have already acknowledged their inability to prematurely release and discharge the liens and claims of the EFIH Second Lien Notes without establishing a reserve for those claims. *See* Presentation to the Boards of Directors and Managers of Energy Future Holdings Corp., Energy

Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC, TCEH Finance, Inc., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc. (Jan. 30, 2015), EFH05546954, at EFH05546966 ("If the EFIH second lien class votes to reject, to the extent the Court does not rule on the claims or they are under appeal as of the Effective Date, the Debtors will escrow the disputed amounts to obtain a lien release.").[19] Thus, the Plan must either establish a reserve for the EFIH Second Lien Makewhole Claims or preserve the claims and liens until a final determination is made on their allowance.

45. The Plan likewise cannot release the liens or discharge or release the claims for post-Effective Date interest, unpaid principal, or fees, expenses and indemnification claims for the EFIH Second Lien Trustee without directly violating the rights afforded under the EFIH Second Lien Indenture.

46. Specifically with respect to the accrual of post-Effective Date interest and potential for unpaid principal due to the pendency of the Intercreditor Litigation discussed above, Section 12.02 of the Indenture provides that, if the EFIH Second Lien Trustee cannot make payments to the holders "by reason of any legal proceeding" (e.g., the Intercreditor Litigation), then "the Notes shall be revived and reinstated" as if no payments had been made under 12.01. *See* EFIH Second Lien Note Indenture § 12.02. In any event, section 12.01 of the EFIH Second Lien Note Indenture provides that the indenture cannot be cancelled until "the Issuer has delivered irrevocable instructions to the Trustee to apply the deposited money towards the payment of the Notes." *See id.* § 12.01(D). The Plan's release and discharge of these claims violates the Indenture, and puts the EFIH Second Lien Trustee in an untenable position where, if it makes a distribution to holders, it is left without any recourse or indemnification under the Indenture (because the Plan purports to discharge such rights) in the event of an adverse ruling in

[19] A copy of the relevant excerpt of this exhibit is attached here to as **Exhibit 4**.

the Intercreditor Litigation. This is impairment, and absent modification, the Plan cannot be confirmed.

47. Finally, the Plan purports to deem the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders – having been deemed to accept the Plan as "unimpaired" creditors – to have released all claims and causes of action against the Debtors as of the Effective Date. This, however, essentially effects a release of all post-Effective Date claims arising under the EFIH Second Lien Notes Indenture, as well as the EFIH Second Lien Makewhole Claims (which are "disallowed" under the Plan notwithstanding any subsequent allowance). Such a release directly impairs the EFIH Second Lien Note Claims and the rights of the holders of those claims. Moreover, the release of *all* claims as of the Effective Date could likewise be used to enjoin the continued prosecution of the EFIH Second Lien Makewhole Claims on appeal; as discussed above, obstructing the holders' right to a full litigation of the EFIH Second Lien Makewhole Claims is an impairment of those claims.[20]

**D. The Confirmation Order Must Find that Reorganized EFIH Will Have the Ability to Pay all EFIH Second Lien Note Claims**

48. In addition to the Plan modifications outlined in **Exhibit 1**, the Confirmation Order must also include a finding that the Reorganized Debtors will have the ability to pay any and all portions of the EFIH Second Lien Note Claims allowed post-Effective Date.

49. Such a finding is not controversial. As noted above and as set forth on the record at the hearing on the Disclosure Statement, to the extent a court finds that the Reorganized Debtors are liable for the EFIH Second Lien Makewhole Claims, the Reorganized Debtors will be liable for those claims. *See Hr'g Tr.* Sept. 21, 2015 at 16:14-16:21. In addition, the Debtors'

[20] The Plan or Confirmation Order should also clarify that, to the extent an EFIH Second Lien Noteholder holds additional claims in a voting class in another part of the capital structure, any acceptance of the Plan or consent to the releases by such holder shall not be deemed a consent to the release of their claims in their capacity as an EFIH Second Lien Noteholder.

Chief Financial Officer, Mr. Paul Keglevic, testified that the Debtors have conducted an analysis and are confident that the Reorganized Company will have the ability to pay any liabilities that are allowed on appeal post-Effective Date. *See* Keglevic Dep. Tr. at 49:21-50:12.[21]

50. The importance of such a provision to the EFIH Second Lien Trustee goes not only to the impairment of the EFIH Second Lien Notes under the Plan, but the feasibility of the Plan itself.[22] The Debtors have made clear that they intend to seek to dismiss any appeal of an adverse ruling on the EFIH Second Lien Makewhole Claim as equitably moot. As discussed above, the Debtors' attempts to impair the EFIH Second Lien Trustee's rights to appeal are, themselves, an impairment of the claims. But regardless, neither the EFIH Second Lien Trustee nor the holders of the EFIH Second Lien Notes should have to run the risk of the Debtors taking another "cute" position on appeal, and arguing that such payments would upend or be inconsistent with a confirmed Plan. The proposed finding prevents the Debtors from taking such a position on appeal. Moreover, the required finding also ensures that, in accordance with the Debtors' burden of establishing the Plan's feasibility, Reorganized EFIH will have sufficient assets to satisfy its liabilities once they are ultimately allowed. Certainly, were the EFIH Second Lien Noteholders only granted the right to recover against a potentially assetless entity post-

[21] "Q. And you testified, just to keep it as simple as possible, that the debtors have done an analysis and are confident that the new company will be able to pay any liabilities that are allowed on appeal after the effective date; is that accurate? Is that fair to say? MR. SHORE: Objection to form. MR. McKANE: Objection to form. Go ahead. A. Certainly with respect to the make-wholes, including potential accrued interest, given the equity capitalization, we believe that the reorganized EFH would have the financial ability to make those payments." *See* Keglevic Dep. Tr. at 49:21-50:12. The relevant portions of the Keglevic deposition transcript are attached hereto as **Exhibit 5**.

[22] The Court noted that, in connection with satisfying the condition precedent to effectiveness that all Makewhole Claims will be disallowed for purposes of feasibility, if a Makewhole Claim is ultimately allowed the Debtors will need to determine whether the Plan will fail or whether they will pay those claims. To the extent the Debtors find themselves in that position and determine to pay those claims, they will need to establish that they will be able to afford to pay any Allowed Makewhole Claims. *See* Hr'g Tr. at 128:17-129:14 (Oct. 15, 2015) ("I certainly will need some evidence that indicates what would happen were I – what would the financial effect be on the plan and the feasibility of the plan if I were to rule that the money was due [on the Makewhole Claims] . . . .").

Effective Date, their claims would not be "paid in full, in cash." Nor would their legal, equitable, or contractual rights be left unaltered.

## II. Reservation of Rights Regarding Distribution Mechanics

51. Article VI.B of the Plan provides that all distribution under the Plan will be made by the Disbursing Agent, which is defined as the "Reorganized Debtors or the Entity or Entities authorized to make or facilitate distributions under the Plan as selected by the Debtors or the Reorganized Debtors, as applicable, in consultation with the Plan Sponsors and the TCEH Supporting First Lien Creditors." Plan Art. I.A.71. However, Article IV.I of the Plan (Cancellation of Securities) alludes to the possibility of the Indenture Trustees making distributions under the Plan. The Plan should be amended to clarify that the appropriate method of distribution for the EFIH Second Lien Notes will be determined with the consent of the EFIH Second Lien Trustee to ensure compliance with the EFIH Second Lien Note Indenture as well as any obligations in light of ongoing litigations.[23]

## CONCLUSION

WHEREFORE, for the reasons stated above, the EFIH Second Lien Trustee respectfully requests that the Court either (i) order the Debtors to modify the Plan to incorporate all amendments set forth on **Exhibit 1**, or (ii) absent such modifications, deny approval of the Plan and grant such other relief as is just and proper.

[23] In addition, section 6.12 of the EFIH Second Lien Note Indenture provides that any custodian in a bankruptcy must make the payments directly to the EFIH Second Lien Trustee unless the EFIH Second Lien Trustee consents to the custodian making such payments directly to the holders. *See* EFIH Second Lien Note Indenture § 6.12.

Dated: October 23, 2015

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Laura Davis Jones
Laura Davis Jones (Bar No. 2436)
Robert J. Feinstein (NY Bar No. RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
Email: ljones@ pszjlaw.com
rfeinstein@ pszjlaw.com

*- and -*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Email: tmayer@kramerlevin.com
ghorowitz@kramerlevin.com
jbrody@kramerlevin.com

*- and -*

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-1114
Facsimile: (212) 904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*