**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., et al., | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos.: 6122** |

**OBJECTION OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE**
**FOR THE PCRB CLAIMS, TO CONFIRMATION OF THE FIFTH AMENDED JOINT**
**PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,**
**PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Bank of New York Mellon ("<u>BNYM</u>"), in its capacity as the PCRB Trustee,[1] objects

to confirmation of the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings*

*Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6122) (the "<u>Plan</u>").  In

support of the objection, BNYM respectfully states as follows.

**I.    PRELIMINARY STATEMENT**

1.    The holders of the PCRB Claims are creditors of the TCEH estate.  As creditors

of the TCEH estate, the holders of PCRB Claims are entitled to share in the recovery of

distributions on account of claims owned by TCEH's estate.  The Plan and the Settlement

Agreement, however, seek to strip the holders of PCRB Claims of any share in the proceeds of

the TCEH estate's $2 billion in claims against the holders of TCEH First Lien Claims.

2.    Although section 1123(a)(4) of the Bankruptcy Code requires the "same

treatment" for creditors in the same class, the Plan proposes to treat holders of PCRB Claims far

worse than the holders of other claims in Class C4 TCEH Unsecured Debt Claims.  Specifically,

all of the other Class C4 creditors – defined as holders of the "TCEH First Lien Deficiency

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code.*

Recipient Claims" – will share in distributions on account of the waiver of the TCEH First Lien

Claims.  The holders of PCRB Claims are the only Class C4 creditors excluded from sharing in

such distributions.  If treated *pari passu,* the holders of PCRB Claims could receive

approximately $30 million to $200 million (depending on the reorganized enterprise value of

EFH) more than is currently provided in the Plan.

3.      The exclusion of the PCRB Claims from the distribution on account of the

"waiver" of the TCEH First Lien Deficiency Claims results in a 50% to 55% discount in the

distribution on account of the PCRB Claims.  The discount is not based upon any analysis of the

TCEH estate's causes of action compared to the TCEH subsidiaries' causes of action against the

holders of the TCEH First Lien Claims or any principled analysis whatsoever.  Indeed, none of

the Debtors, Hugh Sawyer (the TCEH Disinterested Manager), Eric Mendelsohn (the TCEH

Disinterested Manager's financial advisor), David Ying (the Debtors' financial advisor), or Eric

Siegert (the TCEH Unsecured Ad Hoc Group's financial advisor) conducted *any* analysis of the

appropriateness of the 50% to 55% discount on the distribution to holders of PCRB Claims.

Rather, in direct contravention of section 1123(a)(4) of the Bankruptcy Code, the Plan routes the

entire proceeds on account of the "waiver" of the TCEH First Lien Deficiency Claims to all

Class C4 creditors other than the holders of PCRB Claims.

4.      The disparate treatment of the PCRB Claims violates section 1123(a)(4) of the

Bankruptcy Code, which requires the "same treatment" for all creditors in Class C4.  The

violation of section 1123(a)(4) of the Bankruptcy Code renders the Plan unconfirmable under

section 1129(a)(1) and (2) of the Bankruptcy Code.

5.      Although the Debtors favored *pari passu* treatment of the PCRB Claims, the

TCEH Unsecured Ad Hoc Group demanded the disparate treatment of the PCRB Claims in an

effort to increase the distribution on account of the TCEH Unsecured Note Claims at the expense of the holders of the PCRB Claims. The TCEH Unsecured Ad Hoc Group's scheme to increase their recoveries, and the Debtors' acquiescence to that scheme, demonstrates a lack of good faith. The Debtors cannot meet their burden that the Plan was proposed in good faith under section 1129(a)(3) of the Bankruptcy Code.

6.      The Debtors, however, wisely required a provision in the Plan (and the Settlement Agreement) that permits this Court to require *pari passu* treatment of the PCRB Claims and still confirm the Plan. In other words, the Court can sustain this objection to the disparate treatment of the PCRB Claims, require *pari passu* treatment of the PCRB Claims, and confirm the Plan.

7.      In addition, the PCRB Claims should be allowed in the amount of $881,529,669.00, as opposed to the $881,496,233 set forth in the plan.

8.      The Plan also violates sections 503 and 1129(a)(4) of the Bankruptcy Code with respect to the proposed payment of fees and expense.

## II.    FACTUAL BACKGROUND

### A.    The Debtors' Bankruptcy Cases

9.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. These chapter 11 cases are jointly administered.

### B.    The PCRB Claims

10.     BNYM serves as the PCRB Trustee with respect to multiple series of pollution control revenue bonds or pollution control bonds. As of the Petition Date, the PCRB Claims totaled in excess of $881 million (excluding "company-owned" PCRB Claims).

11.     The PCRB Trustee timely filed unsecured proofs of claim against TCEH relating to the PCRB Claims in the aggregate amount of $1.087 billion (excluding company-owned PCRB Claims), including principal, plus interest and fees.

12.      The PCRB Claims are unsecured obligations of TCEH.

**C.      TCEH's Claims Against EFH and the Holders of the TCEH First
Lien Claims**

        **1.      TCEH's Proposed $700 Million Inter-Debtor Claim Against EFH**

13.      The TCEH estate holds inter-Debtor claims in excess of $3 billion against EFH. *See* Transcript of Deposition of Hugh E. Sawyer (Sept. 24, 2015) ("<u>Sawyer Tr.</u>") at 544:5-24.

14.      The TCEH estate's inter-Debtor claims against EFH are resolved pursuant to the Settlement Agreement.

15.      The terms of the settlement of the inter-Debtor claims in the Settlement Agreement largely track the terms of the Disinterested Director Settlement. *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform under the Settlement Agreement* (D.I. 5249) ("<u>Motion</u>") at p. 21, ¶ 51. Specifically, on March 16, 2015, Hugh Sawyer, the TCEH Disinterested Manager, made a demand on the EFH entities for a $1.2 billion inter-Debtor claim. *See* Sawyer Tr. at 600:9-21. After negotiation, the TCEH estate's claims against EFH were resolved pursuant to the Disinterested Director Settlement. Under the terms of the Disinterested Director Settlement, EFH, EFIH, and the TCEH Debtors agreed to release inter-Debtor claims in exchange for, among other things, an allowed $700 million general unsecured claim by TCEH against EFH. Motion at p. 18, ¶ 44.

16.      Under the Plan and Settlement Agreement, TCEH (*not* its subsidiaries) will have an allowed $700 million claim against EFH (the "<u>TCEH Settlement Claim</u>"). *See* Plan, Art. I.A.399, Art. IV.B.15; Settlement Agreement at § 2.1(b); Motion at pp. 18-19, ¶ 44; p. 21 n.15; p. 93, ¶ 225. The TCEH subsidiaries will not have *any* claim against EFH under the Plan or Settlement Agreement.

17.    Without explanation, the Settlement Agreement treats the proceeds of the TCEH

Settlement Claim as the prepetition collateral of the holders of the TCEH First Lien Claims,

notwithstanding that the settled claims include avoidance actions and commercial tort claims.

*See* Settlement Agreement at § 2.1(c).  At his deposition, Hugh Sawyer was unable to explain

why the proceeds of the TCEH Settlement Claim are treated as the prepetition collateral of

holders of the TCEH First Lien Claims.  *See* Sawyer Tr. at 643:16-23 and 644:3-9.

18.    The Plan also provides that the TCEH Settlement Claim is deemed satisfied upon

consummation.  *See* Plan, Art. IV.B.15.

### 2.    TCEH's Claims Against the Holders of the TCEH First Lien Claims

19.    The TCEH estate also holds claims in excess of $2 billion against the holders of

the TCEH First Lien Claims.  *See* Sawyer Tr. at 660:16-21, 663:24-664:11, and 664:12-665:6.

20.    The TCEH estate's claims against holders of the TCEH First Lien Claims also

were resolved pursuant to the Plan and Settlement Agreement.  *See* Motion at p. 21, ¶ 52; Sawyer

Tr. at 656:10-15.

21.    Specifically, the Plan and Settlement Agreement provides for the release of the

TCEH estate's $2 billion "2011 amend and extend" claim and its $340 million 2013 "revolver

extension" claim against the holders of the TCEH First Lien Claims in exchange for the "fixing"

of the First Lien Deficiency Claims at $8 billion to $9.5 billion.  *See* Plan, Art. III.B.29; Sawyer

Tr. at 660:16-21, 663:24-664:11, and 664:12-665:6.

### D.    Initial Plans Provide *Pari Passu* Treatment for the PCRB Claims

22.    On April 14, 2015, the Debtors filed the *Joint Plan of Reorganization of Energy

Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 4142) (the

"Original Plan").  On July 23, 2015, the Debtors filed the *Amended Joint Plan of Reorganization

of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I.

5078) (the "First Amended Plan").  On August 3, 2015, the Debtors filed the *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5197) (the "Second Amended Plan").

23.    The Original Plan, the First Amended Plan, and the Second Amended Plan treated the PCRB Claims *pari passu* with the holders of the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, and General Unsecured Claim Against the TCEH Debtors Other Than EFCH, with a full (not "limited") waiver of the TCEH First Lien Deficiency Claims. *See* Original Plan, Art. III.B.28 and 29 (regarding treatment of Classes C4 and C5); First Amended Plan, Art. III.B.30 and 31 (same); Second Amended Plan, Art. III.B.30 and 31 (same).

**E.    The TCEH Unsecured Ad Hoc Group Demands the Disparate Treatment of the PCRB Claims in the Settlement Agreement and the Subsequent Amended Plans**

24.    On August 9, 2015, the Debtors and the various other parties thereto, including the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group, entered into the Settlement Agreement.

25.    As part of the Plan and Settlement Agreement, the TCEH Unsecured Ad Hoc Group insisted on the disparate treatment of the PCRB Claims.  *See* Disclosure Statement, Art. V.E.29, p. 131 ("The TCEH Unsecured Ad Hoc Group was not willing to treat the PCRB Claims *pari passu*"); Sawyer Tr. at 678:25-679:19; Transcript of Deposition of David Ying (Oct. 19, 2015) ("Ying Tr.") at 155:19-22, 155:24-156:2.

26.    The Debtors initially maintained their position that the PCRB Claims should be treated *pari passu* with other unsecured creditors of TCEH.  *See* Sawyer Tr. at 678:5-21 (stating that "[m]y recollection is that the debtors took the position that the unsecured creditors at the TCEH level should be treated *pari passu* with the other unsecured creditors").

27. 

28.

29.     Consistent with the TCEH Unsecured Ad Hoc Group's demands, the Settlement

Agreement provides that the holders of the TCEH First Lien Deficiency Claims will "waive" any

recovery thereon for the benefit of the holders of TCEH Deficiency Recipient Claims, which is

defined to include all Class C4 creditors other than holders of PCRB Claims.  The Allowed

TCEH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, and Allowed General

Unsecured Claims Against the TCEH Debtors Other Than EFCH constitute the TCEH

Deficiency Recipient Claims.  *See* Plan, Art. I.A.346, p. 32 and Art. IV.B.15, p. 64.

30.     The holders of TCEH Deficiency Recipient Claims also will receive additional distributions of Rights and Reorganized EFH Common Stock on account of the waiver of the TCEH First Lien Deficiency Claims.  *See* Plan, Art. IV.B.15, p. 64.

31.     As a result of being excluded from the TCEH Deficiency Recipient Claims, the PCRB Claims will receive a 50% to 55% discount in the distribution that they would otherwise receive if treated *pari passu.*

32.     On August 10, 2015, the Debtors filed the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5244) (the "Third Amended Plan"), which embodies the disparate treatment of the PCRB Claims set forth in the Settlement Agreement, and the *Disclosure Statement for the Third Amended Plan* (D.I. 5246).

33.     The subsequent chapter 11 plans filed by the Debtors also contain the disparate treatment of the PCRB Claims that was reflected first in the Third Amended Plan.[2]

34.     On September 21, 2015, the Debtors filed the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6122) (the "Plan"), which is the latest chapter 11 plan filed by the Debtors, and the *Disclosure Statement for the Plan* (D.I. 6124) (the "Disclosure Statement").

35.     The Plan classifies the PCRB Claims in Class C4 among the "TCEH Unsecured Debt Claims," which consists of (a) the PCRB Claims, (b) the TCEH First Lien Deficiency Claims, (b) the TCEH Second Lien Note Claims, and (c) the TCEH Unsecured Note Claims. Plan, Art. I.A.404, p. 36.

---

[2] On September 18, 2015, the Debtors filed the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6017) and the *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6110).

36.    With respect to the Class C4 TCEH Unsecured Debt Claims, the Plan provides, in

full and final satisfaction, settlement, release, and discharge of and in exchange for such claims,

each holder of a Class C4 TCEH Unsecured Debt Claim shall receive a pro rata share of:

- the Rights to purchase $5,087,250,000 . . . in the aggregate of New EFH Common Stock pursuant to the Rights Offering and on and subject to the occurrence of the Effective Date, the New EFH Common Stock purchased pursuant to the exercise of the Rights; and

- the Reorganized EFH Common Stock, which shall be converted to approximately 2% of New EFH Common Stock . . . .

*See* Plan, Art. III.B.29, pp. 57-58; Disclosure Statement, Art. V.E.29, p. 129.

37.    As with the Third Amended Plan, the Plan incorporates the disparate treatment of

the PCRB Claims set forth in the Settlement Agreement, thereby discounting by 50% to 55% the

distribution on account of the PCRB Claims.  *See* Plan, Art. III.B.29, pp. 57-58, Art. IV.B.15, p.

64; Disclosure Statement, Art. I.F, p. 24 n.14.

**F.    The Proposed 50% to 55% Discount Imposed on the PCRB Claims Is Arbitrary and Untethered to A Principled Analysis of the Claims Against the Holders of the TCEH First Lien Claims**

38.    Assuming (a) a range of Reorganized EFH enterprise values from $19 billion to

$24 billion and (b) a TCEH First Lien Deficiency Claims of $8.1 billion to $9.5 billion, the

Debtors' most recent Disclosure Statement provides a range of potential distributions on account

of PCRB Claims from 2.9% to 20.7%.  *See* Disclosure Statement, Art. I.F, p. 23.  The potential

distributions set forth in the Disclosure Statement (for the holders of the PCRB Claims and for

other TCEH unsecured creditors) are summarized as follows:

| Range of Illustrative Estimated Recoveries | | | | | | |
|---|---|---|---|---|---|---|
| **Illustrative Reorganized EFH Enterprise Value:** | **$19.0bn** | **$20.0bn** | **$21.0bn** | **$22.0bn** | **$23.0bn** | **$24.0bn** |
| $9.5bn Allowed TCEH First Lien Deficiency Claims | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.1% | 29.7% | 37.3% | 44.9% |
| Allowed PCRB Claims | 2.9% | 6.1% | 9.3% | 12.5% | 15.8% | 19.0% |
| $8.1bn Allowed TCEH First Lien Deficiency Claims | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.0% | 29.5% | 37.1% | 44.7% |
| Allowed PCRB Claims | 3.1% | 6.6% | 10.1% | 13.6% | 17.1% | 20.7% |

39.     A 2.9% recovery on $881.496 million in outstanding non-company owned PCRB Claims would total $25.56 million. If the PCRB Claims received a *pari passu* distribution with the other T-side unsecured creditors, the distribution on account of the PCRB Claims could be approximately 6.4%, or $54.62 million. Thus, the holders of PCRB Claims would receive approximately an additional $30 million in value if the PCRB Claims shared *pari passu* in the distribution on account of the TCEH First Lien Deficiency Claims. The effect of the disparate treatment of the PCRB Claims increases dramatically to approximately $200 million as the Reorganized EFH enterprise value increases from $19 billion to $24 billion.

40.     The proposed 50% to 55% discount in the distribution to holders of PCRB Claims is arbitrary. It is not based on a principled analysis of the TCEH's claims against the holders of the TCEH First Lien Claims as compared to the TCEH subsidiaries' claims against the holders of the TCEH First Lien Claims. The proposed 50% to 55% discount is simply a function of the amount of the TCEH First Lien Deficiency Claims. In other words, the 50% to 55% discount is

determined solely by the amount of distributions on account of the TCEH First Lien Deficiency Claims ($8.1 billion or $9.5 billion).

41.     The Debtors presented Hugh Sawyer, the TCEH Disinterested Manager, as their Rule 30(b)(6) designee with respect to the deposition notice served by BNYM (D.I. 5828). Sawyer did not perform an analysis to support the 50% to 55% discount in the distribution on account of the PCRB Claims.  *See* Sawyer Tr. at, *e.g.*, 682:24-683:8.  In fact, Sawyer did not even analyze the financial impact on the holders of PCRB Claims resulting from the proposed exclusion of the PCRB Claims from participation in the "waiver" of the TCEH First Lien Deficiency Claims.  *See* Sawyer Tr. at 681:8-682:13.

42.     Searching for an explanation, Sawyer generally asserted that the TCEH subsidiaries' ownership of the operating assets provided a basis for the disparate treatment of the PCRB Claims.  Sawyer, however, did not explain (nor could he) how the value of the TCEH subsidiaries' operating assets was relevant when addressing the waiver of a *deficiency* claim, which by definition assumes that all of the TCEH subsidiaries' assets are fully-encumbered and of no value to unsecured creditors.[3]  In any event, Sawyer did not analyze the distribution to the TCEH creditors compared to the distribution to the TCEH subsidiaries' creditors.  *See* Sawyer Tr. at 688:9-13.

43.     **In short, Sawyer admitted that he did not do any analysis to determine whether the distribution discount on the PCRB Claims was appropriate:**

> **Q.     Did you ever do any analysis to determine whether the discount on the distribution that the PCRB claims are receiving was appropriate?**
>
> **A.     No.**

---

[3] The TCEH subsidiaries' operating assets were not part of the negotiations relating to the $700 million TCEH Settlement Claim.  *See* Sawyer Tr. at 651:24-652:3, 652:6-8, 653:18-20, 653:22-25, and 654:15-20.

*See* Sawyer Tr. at 688:9-13; *see also* Sawyer Tr. at 681:8-682:13.

44.    Notwithstanding that he was the Debtors' Rule 30(b)(6) designee, Sawyer's lack of analysis was matched by his lack of understanding of the relevant facts.  TCEH's claims against the holders of the TCEH First Lien Claims were settled for the "waiver" of the TCEH First Lien Deficiency Claims and the alleged fixing of that claim at $8 billion.  *See* Sawyer Tr. at 657:2-21).  However, Sawyer did not know the amount of TCEH's claims that were to be released in the Settlement Agreement.  *See* Sawyer Tr. at 656:10-657:15.

45.    Sawyer also did not analyze whether trade creditors of TCEH alone should be entitled to share in the "waiver" while the PCRB Claims were excluded from sharing in the "waiver" as creditors of TCEH alone.  *See* Sawyer Tr. at 675:5-13, 676:8-15.

46.    Eric Mendelsohn of Greenhill, the TCEH Disinterested Manager's financial advisor, also did not recall preparing any analysis regarding the proposed 50% to 55% discount in the distribution on account of the PCRB Claims or the appropriateness thereof.  *See* Transcript of Deposition of Eric R. Mendelsohn (Oct. 21, 2015) ("Mendelsohn Tr.") at 251:5-8, 251:15-22, 252:3-6, 252:8-12, 252:14-20, 252:24-25, 253:19-254:2, 254:7, 254:8-11, 254:13-17, 254:22.

47.    David Ying of Evercore, the Debtors' financial advisor, also did not recall preparing any such analysis.  *See* Ying Tr. at 155:6-18, 156:23-157:5, 157:12-25, 158:2-7.

48.     Eric Siegert of Houlihan Lokey, the TCEH Unsecured Ad Hoc Group's financial advisor, also did not recall preparing any such analysis.  *See* Transcript of Deposition of Eric Siegert (Oct. 7, 2015) ("Siegert Tr.") at 143:24-144:9, 144:11.

G.    **The Plan and Settlement Agreement Expressly Contain Provisions Allowing the Court to Order *Pari Passu* Treatment of the PCRB Claims While Approving the Settlement Agreement and the Plan**

49.    The Debtors, implicitly acknowledging that this Court would not countenance the disparate treatment of the PCRB Claims, wisely included provisions in the Plan and the Settlement Agreement that would allow Court approval of the Plan and Settlement Agreement to proceed upon the Court's ruling that the PCRB Claims are entitled to share *pari passu* in the waiver of the TCEH First Lien Deficiency Claims.  *See* Plan, Art. IV.B.15, p. 64 ("for the purposes of this Plan and the settlements and compromises incorporated herein or contemplated hereby, and *unless otherwise ordered by the Bankruptcy Court* . . . (a) Holders of Allowed TCEH First Lien Deficiency Claims will waive or be deemed to have waived . . . any recovery or distribution on account of . . . such Allowed TCEH First Lien Deficiency . . . for the benefit of Holders of Allowed TCEH Deficiency Recipient Claims"); Settlement Agreement at § 2.2(b) ("if the Bankruptcy Court . . . determines that the Limited Waiver cannot be for the benefit of only the Beneficiary-Claimants, . . . then the Limited Waiver shall be for the benefit of the Beneficiary-Claimants *and such other holders of Allowed Unsecured Claims* against the TCEH Debtors *as ordered by such court*") (emphasis added).

50.    

51.    Therefore, the Court can require that the PCRB Claims share *pari passu* in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims and then

approve the Settlement Agreement and confirm the Plan thereby insuring a successful

reorganization that is fair to all creditors, including the holders of the PCRB Claims.

## III.    OBJECTIONS

### A.    Section 1129(a) of the Bankruptcy Code in General.

52.    A bankruptcy court may only confirm a plan of reorganization if it meets all

requirements of section 1129 of the Bankruptcy Code.  *See* 11 U.S.C. § 1129.  "The Code

imposes an independent duty upon the court to determine whether a plan satisfies each element

of section 1129, regardless of the absence of valid objections to confirmation."  *In re Lernout &*

*Hauspie Speech Prods, N.V.*, 301 B.R. 651, 656 (Bankr. D. Del. 2003), *aff'd,* 308 B.R. 672 (D.

Del. 2004); *accord In re Flintkote Co.*, 486 B.R. 99, 122 (Bankr. D. Del. 2012).

53.    The plan proponent bears the burden of establishing, by a preponderance of the

evidence, each confirmation requirement of section 1129 of the Bankruptcy Code.  *See In re PTL*

*Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *2 (Bankr. D. Del. Nov. 10, 2011);

*In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003).

54.    The requirements in section 1129(a) of the Bankruptcy Code include, among

things, that (i) "[t]he plan complies with the applicable provisions of this title", 11 U.S.C.

§ 1129(a)(1), (ii) "[t]he proponent of the plan complies with the applicable provisions of this

title", 11 U.S.C. § 1129(a)(2), and (iii) "[t]he plan has been proposed in good faith and not by

any means forbidden by law", 11 U.S.C. § 1129(a)(3).

55.    As discussed below, the Plan and the Debtors do not comply with section

1123(a)(4) of the Bankruptcy Code and the Plan was not proposed in good faith.  Thus,

the Debtors fail to meet their burden of proof with respect to the mandatory confirmation

requirements.  *See* 11 U.S.C. § 1129(a)(1), (a)(2), and (a)(3).

56.    Therefore, this Court either must (i) deny confirmation of the Plan or (ii) confirm the Plan upon the condition that the holders of the PCRB Claims share *pari passu* with the other Class C4 creditors, including with respect to the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.

57.    The Plan also violates sections 503 and 1129(a)(4) of the Bankruptcy Code with respect to the proposed lack of oversight of fees and expenses.

**B.    The Disparate Treatment of the PCRB Claims as Compared to Other Class C4 Creditors Violates Section 1123(a)(4) of the Bankruptcy Code.  Thus, the Plan Cannot Be Confirmed, Unless the PCRB Claims Are Treated *Pari Passu*.**

**1.    The Plan Violates Section 1123(a)(4) of the Bankruptcy Code, Unless this Court Orders *Pari Passu* Treatment of PCRB Claims.**

58.    "'Equality of distribution among creditors is a central policy of the Bankruptcy Code.'"  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)); *see also In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) ("equality of distribution among creditors is a central policy of the Bankruptcy Code that is furthered by several different Code provisions").  Several provisions of the Bankruptcy Code "are designed to ensure equality of distribution from the time the bankruptcy petition is filed." *Combustion Eng'g*, 391 F.3d at 239.

59.    In furtherance of this central policy of equality of distribution, section 1122 of the Bankruptcy Code provides that a debtor can only put "substantially similar" claims in the same class.  *See* 11 U.S.C. § 1122(a).  Likewise, section 1123(a)(4) of the Bankruptcy Code provides that a "plan must 'provide the **same treatment** for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.'"  *Schroeder v. New Century Liquidating Trust (In re New Century*

*TRS Holdings, Inc.)*, 407 B.R. 576, 592 (D. Del. 2009) (quoting 11 U.S.C. § 1123(a)(4)) (emphasis added).

60.     Courts must enforce section 1123(a)(4) of the Bankruptcy Code according to its plain language. *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters*, 530 U.S. 1, 6 (2000)).

61.     "Although neither the Code nor the legislative history precisely defines the standards of equal treatment, courts have interpreted the same treatment requirement to mean that all claimants in a class must have the **same opportunity** for recovery." *W.R. Grace & Co.*, 729 F.3d at 327 (internal citations and quotations omitted) (emphasis added); *see also Del. Trust Co. v. Energy Future Intermediate Holdings, LLC (In re Energy Future Holding Corp.)*, 527 B.R. 157, 168 (D. Del. 2015) (quoting *W.R. Grace*).

62.     In short, "if claims within the same class are not receiving the same treatment, and the holders of those claims being treated less favorably have not consented to the discrimination, the plan is not confirmable." *Schroeder*, 407 B.R. at 592.

63.     The Plan unabashedly treats the PCRB Claims in a dramatically less favorable manner than the other Class C4 TCEH Unsecured Debt Claims in violation of section 1123(a)(4) of the Bankruptcy Code.  As provided in Art. III.B.29 of the Plan, the Class C4 TCEH Unsecured Debt Claims will receive a pro rata share of (i) the Rights to purchase New EFH Common Stock pursuant to the Rights Offering and (ii) the Reorganized EFH Common Stock. *See* Art. III.B.29, pp. 57-58.

64.     In addition to the treatment set forth in Art. III.B.29, holders of TCEH Deficiency Recipient Claims (which do not include the PCRB Claims) also will receive on account of their Class C4 TCEH Unsecured Debt Claims the benefit of the waiver of the First Lien Deficiency

Claims pursuant to Art. IV.B.15 of the Plan.  *See* Plan, Art. III.B.29, pp. 57-58, Art. IV.B.15, p. 64.  The holders of the TCEH First Lien Deficiency Claims purport to "waive" any recovery on account of their Class C4 TCEH Unsecured Debt Claims for the benefit of the holders of the TCEH Deficiency Recipient Claims, which do not include the PCRBs.  *See* Plan, Art.IV.B.15, p. 64; Settlement Agreement at § 2.2(b); Disclosure Statement, Art. V.E.29, pp. 129-30.

65.     The Debtors acknowledge that holders of the PCRB Claims are not receiving *pari passu* treatment with respect to the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.  *See* Disclosure Statement, Art. V.E.29, p. 131 ("Holders of PCRB Claims do not receive any share of the recoveries on the TCEH First Lien Deficiency Claim."); Art. I.C.2(c), p. 13 ("if the Court finds that the PCRBs must share *pari passu* with other Holders of TCEH Unsecured Debt Claims" and "[i]n the event the PCRBs were to receive *pari passu* treatment under the Plan").

66.     Although the TCEH estate holds billions of dollars in causes of action against the holders of the TCEH First Lien Claims, the Plan purports to deny the holders of the PCRB Claims *any* share in the proceeds (*i.e.*, the distribution on account of the deficiency "waiver") of the release of such causes of action while all other Class C4 creditors are entitle to share in those proceeds.  The net effect of that disparate treatment – to which the holders of the PCRB Claims have not consented – is a distribution that is approximately $30 million to $200 million less than the distribution on account of the PCRB Claims if treated *pari passu* with the other Class C4 claims.

67.     As a result of Art. IV.B.15 of the Plan, the PCRB Claims do not recover *pari passu* with the other Class C4 TCEH Unsecured Debt Claims, *unless* this Court orders otherwise.  Thus, the Plan violates section 1123(a)(4) of the Bankruptcy Code, unless this Court accepts the

invitation in the Plan to order that the PCRB Claims be treated *pari passu* with respect to distributions on account of the TCEH First Lien Deficiency Claims.  *See Schroeder*, 407 B.R. at 592 (section 1123(a)(4) violated where plan provided a 100% distribution to some claims in a given class and 130% to other claims in that same class, because the holders of the claims proposed to receive 130% had relinquished claims in an entirely different class).

68.    In summary, the Plan violates section 1123(a)(4) of the Bankruptcy Code by failing to provide the "same treatment" for holders of the PCRB Claims – regardless of any alleged reasons for such treatment.

69.    Although the reason for failing to provide the "same treatment" for holders of the PCRB Claims is irrelevant under section 1123(a)(4) of the Bankruptcy Code, the PCRB Trustee will discredit the reasons set forth by Plan supporters below.

### 2.    The Existence of Claims against Other Debtors is Irrelevant to the Treatment of the PCRB Claims in Class C4.

70.    The Debtors attempt to justify the disparate treatment of the PCRB Claims on the grounds that the PCRB Claims only have claims against TCEH, while other Class C4 creditors also have claims against TCEH's subsidiaries.  *See* Disclosure Statement, Art. V.E.29, p. 131. This alleged justification lacks merit.  First of all, the fact that the subsidiaries hold the operating assets is irrelevant because the disparity in distribution is based upon the TCEH First Lien Deficiency Claims.  *By definition*, the assertion of a deficiency claims means that there is *no equity* for Class C4 creditors in TCEH subsidiaries' operating assets.

71.    Secondly, none of the Debtors, Sawyer, Mendelsohn, Ying, or Siegert conducted an analysis to determine the value of the claims against the holders of the TCEH First Lien Claims held by TCEH as compared to such claims held by TCEH's subsidiaries.  *See* Sawyer Tr. at 682:24-683:8; Mendelsohn Tr. at 254:8-11, 254:13; Ying Tr. at 157:20-158:7; Siegert Tr. at

143:24-144:9, 144:11.  Indeed, there is no analysis supporting any discount on the distribution to holders of PCRB Claims, let alone a 50% to 55% discount.

72.     Thirdly, Class C5 General Unsecured Claims Against the TCEH Debtors Other Than EFCH includes creditors with trade claims against TCEH alone.  Those creditors (unlike holders of the PCRB Claims) are entitled to share in the distribution on account of the waiver of the First Lien Deficiency Claims even though holders of the PCRB Claims, which also have claims against TCEH alone, are precluded from sharing in such distribution.  *See* Plan, Art. I.A.346, p. 32.  Thus, this alleged justification is pretextual at best.

73.     Fourthly, that certain holders of TCEH Deficiency Recipient Claims may hold claims against other Debtors does not constitute consent on behalf of the holders of PCRB Claims to disparate treatment of their Class C4 TCEH Unsecured Debt Claims.  The district court's decision in *Schroeder*, 407 B.R. 576, is on point.  The question raised on appeal was whether the plan provided unequal treatment to holders of claims in class HC3b by providing a 100% distribution on some claims in class HC3b (the "100% claims") and a 130% distribution on other claims in class HC3b whose holders had relinquished their claims in class HC10b (the "130% claims").  *Id.* at 592.  The bankruptcy court concluded that the plan discriminated with consent, reasoning that the holders of the 130% claims, instead of insisting on receiving 100% of the determined distribution for their HC3b claims and 100% of the determined distribution for their HC10b claims (a total distribution of 200%), consented to a less favorable treatment in the form of receiving 0% on their HC10b claims and 130% on their HC3b claims (a total distribution of 130%).  *Id.*

74.     The district court *reversed* the bankruptcy court's conclusion.  *Id.*  The consent to less favorable treatment of claims in class HC10b only excused the disparate treatment of claims

in that class.  *Id.*  Such consent was irrelevant to the disparate treatment of claims in class HC3b.

*Id.*  The treatment of claims in class HC3b was an entirely separate matter, and it was clear that

the plan treated the 100% claims in that class less favorably than the 130% claims without the

holders of the 100% claims' consent.  *Id.*  Thus, the bankruptcy court erred in finding that the

plan was in compliance with section 1123(a)(4) of the Bankruptcy Code.  *Id.*  The district

court cautioned that while it "appreciates the complexity of dealing with the tangle of debtor

entities, . . . there are limits to what equity alone can accomplish."  *Id.* at 592 n.34.

75.     The instant case is similar.  The Plan provides a distribution on account of PCRB

Claims that is significantly less than the distribution on account of other Class C4 Claims.  The

fact that the holders of TCEH Deficiency Recipient Claims consent to such treatment is

irrelevant.  The holders of PCRB Claims do not consent.  Regardless of the alleged reason (and

there is no valid one), the Plan indisputably fails to provide the "same treatment" or "same

opportunity" for recovery to creditors in Class C4.

76.     Fifthly, the Plan supporters argue that holders of PCRB Claims benefit from the

Settlement Agreement because the deficiency claim against TCEH would be much larger if

TCEH's assets alone were considered.  This argument, however, is both inconsistent with the

Plan as filed and applicable law.

77.     *All* TCEH Unsecured Debt Claims are classified *together* in Class C4.  Thus, the

TCEH First Lien Deficiency Claims must be determined based upon all of the TCEH Debtors'

assets.

78.     In addition, although (absent state law to the contrary) a secured creditor may

assert the full amount of its claim against each estate, whether a creditor is oversecured or

undersecured is determined based on all of the debtors' assets.  *See In re Residential Capital,*

*LLC*, 501 B.R. 549, 598 (Bankr. S.D.N.Y. 2013) ("There is a surprising dearth of case law explicitly addressing the issue of valuing the extent of a creditor's security in multi-debtor cases. The statute likewise does not provide much guidance. The Court agrees with the JSNs that they are entitled to aggregate their collateral across debtor entities. Any other reading of the statute would lead to inequitable and illogical results."); *Id.* at 600 ("It is not surprising that the [d]ebtors cite no case authority in support of their argument. The argument is clearly inconsistent with the code and cannot withstand modest scrutiny.") (citing Hearing Transcript at 12:19-13:3, *In re Revolution Dairy, LLC*, No. 13-20770 (Bankr. D. Utah, Apr. 23, 2013), ECF No. 206)).

### 3. Withdrawal of the Standing Motions Does Not Justify the Unequal Treatment of the PCRB Claims.

79.    The Debtors have asserted that the preferential treatment of the TCEH Deficiency Recipient Claims is justifiable on the grounds that the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group are withdrawing the Standing Motions with respect to claims against the holders of the TCEH First Lien Claims.[4]   *See* Motion at p. 110, ¶ 243.  In so arguing, the Debtors insinuate that the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group should be entitled to a greater distribution on account of the settlement of causes of action that are – and always have been – property of TCEH's bankruptcy estate.  That argument is baseless.

80.    There is no dispute that the claims against the holders of TCEH First Lien Claims belong to the TCEH Debtors, not the TCEH Unsecured Ad Hoc Group.  *See generally In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (causes of action are property of the bankruptcy estate); *Jevic Holding Corp. v. CIT Group/Business Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173, 188 (3d Cir. 2015) (Scirica, J., dissenting) (cause of action is property of the estate); TCEH Unsecured Ad Hoc Group Standing Motion, pp. 1-2 (TCEH Unsecured Ad Hoc Group

---

[4] The Standing Motions were not granted.  They are pending.  *See* Disclosure Statement, Art. IV.J, p. 91.

"brings this Motion for entry of an order granting standing and authority to commence, prosecute, and settle certain causes of action *on behalf of the TCEH Debtors* relating to the First Lien Debt") (emphasis added); *see also* TCEH Committee Standing Motion, p. 36.

81.     Proceeds of TCEH's causes of action also are property of TCEH's estate. *See Jevic Holding Corp.*, 787 F.3d at 188 (Scirica, J., dissenting) (citing *Bd of Trs. Of Teamsters Local 863 v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002); 11 U.S.C. § 541(a)(6)). Thus, the distributions on account of the TCEH First Lien Deficiency Claims are property of the TCEH estate because its claims are settled in exchange for those distributions.

82.     Holders of the PCRB Claims are entitled to share *pari passu* in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims. *See In re Nationwide Sports Distributors*, *Inc.*, 227 B.R. 455, 465 (E.D. Pa. 1998) (rejecting a proposed settlement of estate causes of action for the disproportionate benefit of the creditors that negotiated the settlement agreement); *Young v. Higbee Co.*, 324 U.S. 204 (1945) (shareholders who withdrew their appeal from a confirmation order in return for compensation — paid from non-estate property by insiders of the debtor —larger than the plan provided to other shareholders breached their duty of good faith to other shareholders).

83.     Contending that the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group's filing of a Standing Motion is a basis for the disparate treatment of the PCRB Claims also is belied by the facts. None of the indenture trustee for the holders of the TCEH Second Lien Note Claims, the holders of the TCEH Second Lien Note Claims, or the Class C5 General Unsecured Claims Against the TCEH Debtors Other Than EFCH filed a motion for derivative standing to assert claims on behalf of the estates of TCEH and its subsidiaries. Yet, each of

those creditor groups will share in the distribution on account of the waiver of the TCEH First

Lien Deficiency Claims.

84.     *Every* creditor of TCEH's bankruptcy estate, including holders of the PCRB

Claims, is entitled to share in the distribution on account of the waiver of the TCEH First Lien

Deficiency Claims.  The fact that the Plan attempts to preclude the holders of PCRB Claims from

participating in such distribution is both unfair and in violation of section 1123(a)(4) of the

Bankruptcy Code.

### C.     The Plan Is Not Proposed in Good Faith.

85.     A plan must be "proposed with honesty, good intentions and a basis for expecting

that a reorganization can be effected with results consistent with the objectives and purposes of

the Bankruptcy Code . . . with the most important feature being an inquiry into the fundamental

fairness of the plan."  *In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004); *see also*

*Stonington Partners, Inc. v. Official Comm. of Unsecured Creditors (In re Lernout & Hauspie*

*Speech Products, N.V.)*, 308 B.R. 672, 675 (D. Del. 2004).

86.     A plan is proposed in good faith when the plan (i) fosters a result consistent with

the Bankruptcy Code's objectives, (ii) has been proposed with honesty and good intentions and

with a basis for expecting that reorganization can be effected, and (iii) is fundamentally fair in

dealing with creditors.  *See In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013).

87.     The requirement that a plan be proposed in good faith must be viewed in light of

the totality of the circumstances.  This standard speaks more to process than the content of the

plan.  *See In re 20 Bayard Views, LLC*, 445 B.R. 83, 96 (Bankr. E.D.N.Y. 2011).

88.     The circumstances surrounding the negotiation of the Plan evidence a lack of

good faith in the formulation of the Plan.  As detailed above, the Debtors took the position that

the PCRB Claims should be treated *pari passu* with other unsecured creditors of TCEH.  *See*

Sawyer Tr. at 678:5-21.  Indeed, the earlier versions of a chapter 11 plan provided that the PCRB Claims would receive treatment *pari passu* with the other holders of C4 TCEH Unsecured Debt Claims with a full (not "limited") waiver of the TCEH First Lien Deficiency Claims.

89.     The TCEH Unsecured Ad Hoc Group was unwilling to treat the PCRB Claims *pari passu* with other unsecured creditors of TCEH.  Disclosure Statement, Art. V.E.29, p. 131; *see also* Sawyer Tr. at 678:17-690:4.  ████████████████████████

████████████████████████████████████████

████████████████████████████████

90.     In order to control the vote of Class C4 TCEH Unsecured Debt Claims, the Plan funders needed the consent of the TCEH Second Lien Note Claims.  Accordingly, the TCEH Unsecured Ad Hoc Group proposed that holders of TCEH Second Lien Note Claims be entitled to share in the waiver of the First Lien Deficiency Claims with the TCEH Unsecured Note Claims.  As the PCRB Claims are a minority of the Class C4 Claims, the TCEH Unsecured Ad Hoc Group did not need the votes of the PCRB Claims. Therefore, the TCEH Unsecured Ad Hoc Group excluded the PCRB Claims from sharing in the distribution on account of the waiver of the First Lien Deficiency Claim while increasing their distribution on account of the TCEH Unsecured Note Claims.

91.     In short, the TCEH Unsecured Ad Hoc Group provided a greater distribution for holders of the TCEH Unsecured Note Claims and the TCEH Second Lien Note Claims to garner the votes of such holders.  "Section 1123(a)(4) prevents a plan proponent from rigging the vote of a particular class by providing for more favorable treatment to a claim that by virtue of its amount controls whether or not the class accepts the plan." *Dugan v. PBGC (In re Rhodes, Inc.)*, 382 B.R. 550, 556 (Bankr. N.D. Ga. 2008).  Thus, the Plan was not proposed in good faith and is

prohibited by law because the Debtors (by adopting the TCEH Unsecured Ad Hoc Group's scheme) violated section 1123(a)(4) by offering more consideration to Class C4 members whose votes were necessary and sufficient to control the Class C4 vote.

92.     The TCEH Unsecured Ad Hoc Group also needed to secure the vote of unsecured creditors in Class C5 General Unsecured Claims Against the TCEH Debtors Other than EFCH. Accordingly, the TCEH Unsecured Ad Hoc Group ultimately proposed that holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH be entitled to share in the distribution on account of deficiency waiver.  Thus, all Class C4 creditors (other than holders of PCRB Claims) and all Class C5 creditors (even trade creditors with claims *solely* against TCEH) are entitled to share in the waiver of the First Lien Deficiency Claims – while the PCRB Claims alone are excluded from sharing in the deficiency waiver.

93.     The TCEH Unsecured Ad Hoc Group devised a scheme that increased their share of the TCEH Debtors' estates at the expense of the PCRB Claims.  *See generally In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 240 (Bankr. D. N.J. 2000) ("Of course, the classification and treatment of classes of claims is always subject to the good faith requirements of § 1129(a)(3).").   Thus, the Plan was not proposed in good faith.

     **D.**     **The Plan May Be Confirmed If this Court Accepts the Invitation in the Plan to Require the *Pari Passu* Treatment of the PCRB Claims.**

94.     The Plan *can* be confirmed *if* the Court orders that holders of the PCRB Claims must share *pari passu* in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.  The Debtors wisely included provisions that would allow the Settlement Agreement and Plan to proceed if the Court rules that the PCRB Claims are entitled to share *pari passu* in the distribution on account of the TCEH First Lien Deficiency Claims waiver.  *See* Settlement Agreement at § 2.2(b); Plan, Art. IV.B.15, p. 64.

95.     Therefore, this Court either must (i) deny confirmation of the Plan or (ii) confirm the Plan upon the condition that the holders of the PCRB Claims share *pari passu* with the other Class C4 creditors, including with respect to the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.

### E.     The Allowed Amount of the PCRB Claims Should Be $881,529,669.00.

96.     The PCRB Trustee timely filed unsecured proofs of claim relating to the PCRB Claims (excluding the Repurchased PCRBs), including principal, plus interest, fees, and expenses.  The Plan provides that the PCRB Claims are allowed in the amount of $881,496,233. *See* Plan, Art. III.B.29(b), p. 57.  However, such allowed amount fails to include the fees and expenses that required to be paid under the indentures relating to the PCRB Claims.  The PCRB Claims should be allowed in the Amount of $881,529,669.00, which is calculated as follows:

| Pre-Petition BNYM Fees | $25,020.00 |
| Pre-Petition Reed Smith Fees | $8,416.00 |
| Principal | $855,110,000.00 |
| Interest | $26,386,233.00 |
| **Total Claim** | **$881,529,669.00** |

### F.     The Plan Provides for the Improper Payment of Professional Fees and Expenses.

97.     Art. IV.R of the Plan provides for the payment of the fees and expenses of various professionals, including those retained by the TCEH Unsecured Ad Hoc Group, without further notice to or action, order, or approval of the Bankruptcy Court.  Thus, the Plan violates sections 1129(a)(4) and 503(b) of the Bankruptcy Code.  *See* 11 U.S.C. § 1129(a)(4) (plan must provide that "[a]ny payment . . . to be made . . . for services or for costs and expenses . . . has been approved by, or is subject to the approval of, the court as reasonable").

**G.      The Stay Pending Appeal Should Not Be Waived.**

98.      Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e).  The stay should not be waived.

99.      The purpose of a stay pending appeal is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented.  An objecting party should have time to appeal and seek a stay to avoid arguments that the appeal may well be moot. *But see In re One2One Commc'ns, LLC*, No. 13-3410, 2015 WL 4430302 (3d Cir. July 21, 2015) (questioning equitable mootness doctrine).

100.      Absent *pari passu* treatment of the PCRB Claims, BNYM intends to appeal any order approving the Plan and seek a stay.  The fourteen-day stay of Bankruptcy Rule 3020(e), to the extent applicable, is necessary to preserve the right of BNYM to seek a stay of any order approving the Plan pending appeal.  The Debtors cannot demonstrate that there is a need to consummate the Plan within the 14-day period nor can the Debtors show that the interests of holders of PCRB Claims are sufficiently protected.

101.      Therefore, the stay should not be waived.

**IV.      RESERVATION OF RIGHTS**

102.      BNYM reserves its rights to supplement the objections set forth herein and to support objections asserted by other parties in interest.

## V.    CONCLUSION

For the foregoing reasons, BNYM respectfully requests that the Court enter an Order

(a)(i) denying confirmation of the Plan or (ii) confirming the Plan *only if* the holders of PCRB

Claims share *pari passu* with the TCEH Deficiency Recipient Claims in the distributions on

account of the "waiver" of the TCEH First Lien Deficiency Claims, and (b) granting such further

relief to BNYM as is appropriate.

Dated:  October 23, 2015                                     Respectfully submitted,
Wilmington, Delaware

                                                            REED SMITH LLP

                                    By:     */s/ Kurt F. Gwynne*
                                            Kurt F. Gwynne (No. 3951)
                                            1201 Market Street, Suite 1500
                                            Wilmington, DE 19801
                                            Telephone: (302) 778-7500
                                            Facsimile: (302) 778-7575
                                            Email:  kgwynne@reedsmith.com

                                            Sarah K. Kam (*pro hac vice*)
                                            599 Lexington Avenue
                                            New York, NY 10022
                                            Telephone: (212) 549-0284
                                            Facsimile: (212) 521-5450
                                            Email: skam@reedsmith.com

                                            Counsel to The Bank of New York Mellon,
                                            in its capacity as the PCRB Trustee