**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| | ) Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) **Re: D.I. 5249** |
| | ) <u>Hearing Date</u>: November 3, 2015 |
| | ) <u>Objection Deadline</u>: October 23, 2015 |

**OBJECTION OF UMB BANK, N.A., TO THE MOTION OF ENERGY
FUTURE HOLDINGS CORP., *ET AL.*, TO APPROVE A SETTLEMENT OF
LITIGATION CLAIMS AND AUTHORIZE THE DEBTORS TO ENTER
<u>INTO AND PERFORM UNDER THE SETTLEMENT AGREEMENT</u>**

UMB Bank, N.A., as Indenture Trustee (the "<u>Trustee</u>") for the unsecured 11.25%/12.25%

Senior Toggle Notes Due 2018 (the "<u>PIK Notes</u>" and such holders, the "<u>PIK Noteholders</u>") and

the 9.75% Senior Notes due 2019 (the "<u>Unexchanged Senior Notes</u>" and, together with the PIK

Notes, the "<u>EFIH Unsecured Notes</u>" and such holders, the "<u>EFIH Unsecured Noteholders</u>"), by

and through its undersigned counsel, files this objection (the "<u>Objection</u>") to the *Motion of*

*Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and*

*Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249]

(the "<u>Settlement Motion</u>," and such settlement, the "<u>Settlement</u>").

**<u>PRELIMINARY STATEMENT</u>**[1]

1.      By the Settlement Motion, the Debtors inappropriately seek approval of broad

releases from EFIH to other Debtors and third parties, including the Debtors' directors and

officers and the Sponsors, prior to—and independent of—the consummation of any plan of

---

[1]     Capitalized terms used but not defined in the Preliminary Statement shall have the meaning ascribed to such
terms below.  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in
the Settlement Motion or the Plan (as defined herein), as applicable.

reorganization.  In doing so, the Debtors have materially altered the fundamental premise upon which EFIH agreed to the Disinterested Director Settlement and stripped EFIH of important protections in an alternative plan scenario.  The Debtors' request for approval of EFIH's releases ***prior to*** consummation of a plan of reorganization should be denied.

2.        Throughout the Settlement Motion, the Debtors rely on the fact that the inter-Debtor portion of the Settlement incorporates the Disinterested Director Settlement that was negotiated by each estate's independent fiduciary, presumably at arm's length.  Settlement Mot. ¶¶ 44, 51, 226.  In documents contemporaneous to the approval of the Disinterested Director Settlement, including a pleading filed in support of such settlement, EFIH, through its sole independent manager Charles H. Cremens, made its rationale for agreeing to the Disinterested Director Settlement clear:  the Disinterested Director Settlement was premised on (i) a plan of reorganization, (ii) providing payment in full to EFIH creditors, and (iii) EFIH and Mr. Cremens retaining a "fiduciary out" to terminate the Disinterested Director Settlement if the plan incorporating its releases would no longer provide for payment in full to EFIH creditors.

3.        While the Debtors are currently proposing a Plan that purports to pay EFIH creditors in full,[2] and the Trustee is hopeful that the Debtors will ultimately consummate a plan that truly pays EFIH creditors in full, it is uncertain whether that Plan, or any alternative plan providing for payment in full to EFIH creditors, will ever be confirmed or consummated.  By making EFIH's releases in the Settlement effective as of approval of the Settlement, however, the Debtors have stripped away EFIH's fiduciary out to terminate the Disinterested Director Settlement if a future plan does not provide for payment in full to EFIH creditors.  Instead, the Settlement proposes that EFIH release valuable claims now—including an undisputed nearly

---

[2]    As discussed in detail in the Trustee's confirmation objection, filed concurrently with this Objection, the Plan, as currently proposed, impairs EFIH Unsecured Noteholders.

$1.3 billion claim against EFH related to EFIH's ownership of EFH Legacy Notes—with no certainty of the value ultimately available to EFIH creditors.

4.      Similarly, by making releases from EFIH to the Debtors' directors and officers and the Sponsors effective upon approval of the Settlement rather than the consummation of a plan of reorganization, the Debtors are also stripping EFIH of important protections, and potentially valuable claims, in the event that future case developments are adverse to EFIH and its creditors.

5.      Thus, the Settlement—in its current form—is not in the best interests of EFIH's estate, and should be denied.  For the avoidance of doubt, the Trustee does not object to EFIH's releases in the Settlement if such releases were not effective until the consummation of a plan of reorganization paying EFIH creditors in full, and if EFIH retained its fiduciary out in the event that such a plan could not be consummated.

6.      Finally, if the Court were inclined to approve the Settlement, the release provisions should be amended or unequivocally clarified to provide clear releases of the Oncor Entities (as defined below) to achieve the Debtors' stated goal of resolving all potential litigation affecting the estates.

## **BACKGROUND**

### A.      **Procedural History**

7.      On April 29, 2014, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

8.      On April 14, 2015, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al.*, *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 4142] (the "Original Plan") and the disclosure statement related thereto [D.I. 4143].  On July 23, 2015, they filed the *Debtors' Amended Joint Chapter 11 Plan of Reorganization* [D.I. 5078] and the

*Amended Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization* [D.I. 5080]. The Debtors have since filed a series of amended plans and disclosure statements.

9. On August 10, 2015, the Debtors filed a number of agreements related to the implementation of the Plan (collectively, the "Plan Documents"), including the *Motion of Energy Future Holdings Corp., et al., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248] (the "PSA Motion") and the Settlement Motion, attaching the Settlement. On September 18, 2015, the Court entered an Order approving the PSA Motion [D.I. 6097]. The Settlement Motion will be heard in connection with the confirmation hearing, scheduled to commence on November 3, 2015.

10. On September 21, 2015, the Court held a hearing to consider approval of the Disclosure Statement (defined below). Also on September 21, 2015, the Debtors filed the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (as amended from time to time, the "Plan"), as well as the related disclosure statement [D.I. 6124] (as may be amended from time to time, the "Disclosure Statement"). On September 22, 2015, the Court entered the *Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. 6131].

B.    **The Intercompany Settlement[3]**

1.    **The Disinterested Director Settlement**

11.    The Original Plan filed on April 14, 2015 incorporated the terms of a global settlement of prepetition intercompany claims, causes of action, and disputes (the "Disinterested Director Settlement") negotiated by the respective disinterested directors and managers of debtors Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC ("EFIH"), and Energy Future Competitive Holdings Company and Texas Competitive Electric Holdings Company LLC (collectively, "TCEH," and the disinterested directors and managers of EFH, EFIH, and TCEH are, collectively, the "Disinterested Directors").  Pursuant to the Disinterested Director Settlement, upon the effective date of the Original Plan, EFH, EFIH, and TCEH agreed to release all prepetition intercompany claims and causes of action amongst the Debtors in exchange for TCEH receiving an allowed unsecured non-priority claim of $700 million against EFH and other consideration, including the potential for TCEH to receive up to $805 million in distributable value from EFH, depending on the amount of distributable value ultimately available at EFH.  *See* EFIH_DD00004865.

12.    For its part, EFIH agreed to release any prepetition intercompany claims that it possessed as part of a plan of reorganization that paid EFIH creditors in full.  Such intercompany claims include, but are not limited to, approximately $1.282 billion of EFH Legacy Notes held by EFIH (the "Legacy Note Claim").  *See* Settlement Mot. at ¶ 223.  Importantly, Charles H. Cremens, the sole independent manager of the Board of Managers of EFIH, retained the ability to exercise a "fiduciary out" and terminate the Disinterested Director Settlement—and thus not release EFIH's intercompany claims, including the Legacy Note Claim—if the Debtors' plan of

---

[3]    The Trustee will establish the facts referenced in this section during the evidentiary hearing commencing November 3, 2015 to consider the Settlement Motion and confirmation of the Plan (the "Confirmation Hearing").  Documents cited in this section will be submitted as exhibits during the Confirmation Hearing.

reorganization incorporating the terms of the Disinterested Director Settlement ultimately would not pay EFIH creditors in full.

13.    On March 30, 2015, when approving the Disinterested Director Settlement for EFIH, Mr. Cremens made clear that his determination that the Disinterested Director Settlement was in the best interests of EFIH, its creditors, and other parties in interest was conditioned on "the total consideration available to the creditors of [EFIH] under the proposed chapter 11 plan [being] adequate to satisfy all allowed claims against [EFIH]."  EFIH_DD0028049.  Moreover, on April 3, 2015, the Disinterested Directors issued a Joint Statement of Summary of Settlement of Intercompany Claims, detailing the terms of the Disinterested Director Settlement (the "April 3 Joint Statement").  *See* EFIH_DD00004865.   In the April 3 Joint Statement, the Disinterested Directors made clear that (i) the Disinterested Director Settlement would be "subject to Bankruptcy Court approval . . . as part of a joint plan of reorganization" for the Debtors; (ii) such "plan of reorganization to be filed will provide for the spin-off of TCEH in a tax-free transaction (with a partial step-up in tax basis), and the tax-free reorganization of EFH and EFIH . . ."; and (iii) Mr. Cremens, as the disinterested manager of EFIH, would retain a "fiduciary out" to terminate the Disinterested Director Settlement until such settlement was approved as part of a plan of reorganization.  *Id.*

14.    On April 14, 2015, EFIH further articulated Mr. Cremens' reasoning for agreeing to release EFIH's intercompany claims, including the nearly $1.3 billion Legacy Note Claim, in a filing in support of the Disinterested Director Settlement, when the terms of such settlement were first disclosed in the Original Plan.  *See Energy Future Intermediate Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan* [D.I. 4146] ("EFIH Statement").  There, EFIH reiterated that the Disinterested Director Settlement "was based on Mr. Cremens'

view that EFIH will have adequate value to satisfy all allowed claims against it," and that "the [Disinterested Director] Settlement reserves to Mr. Cremens, as the sole Disinterested Manager of EFIH, a "fiduciary out" and a right to modify or withdraw the Plan if instead EFIH does not ultimately have adequate value to satisfy all allowed claims." *Id.* at ¶ 15.

15.     Indeed, at the time of entry into the Disinterested Director Settlement, it could have *only* made sense for Mr. Cremens to support the Disinterested Director Settlement *if* EFIH's releases were conditioned on payment in full to EFIH creditors with a "fiduciary out" if a plan of reorganization would not pay EFIH creditors in full.  The Disinterested Director Settlement provided that EFIH would release, among other things, the undisputed Legacy Note Claim.  *See* EFIH Statement ¶ 11.  While the Legacy Note Claim would have some value to EFIH if a plan of reorganization did not otherwise provide adequate value to pay EFIH creditors in full, the Legacy Note Claim provides no additional value to EFIH if its creditors were paid in full because, as EFIH stated, if EFIH creditors are already being paid in full, any additional recovery on account of the Legacy Note Claim would be distributed back to EFH as the equity interest holder in EFIH.  *Id*.

16.     On the other hand, any intercompany claims and causes of action which could be asserted against EFIH were not strong and were *de minimis*.  First, as initially stated in the EFIH Statement, and reiterated by the Debtors in the Settlement Motion, the "bulk of intercompany claims between EFIH and EFH run in favor of EFIH, including not only avoiding power claims associated with the Liability Management Program, but also" the Legacy Note Claim.  *Id.*; *see also* Settlement Mot. ¶ 229.  In fact, during the negotiations of the Disinterested Director Settlement, EFH does not appear to have ever presented any claims or causes of action against EFIH, *see, e.g.,* EFIH Statement, Ex. B (attaching presentation of alleged TCEH claims against

EFIH, but not attaching or discussing any such presentation of claims from EFH), and the Settlement Motion does not identify any material claims by EFH against EFIH, *see* Settlement Mot. ¶ 42 (listing claims by TCEH against other Debtors, claims by EFIH and EFH against TCEH, and claims by EFIH against EFH).

17.     Second, while TCEH asserted certain claims against EFIH, those claims had little, if any, value.  Indeed, while TCEH's opening settlement proposal on March 16, 2015 included a demand for a $200 million claim against EFIH, as those negotiations progressed, by March 25, 2015, TCEH dropped that demand and made no request for a claim against, or payment from, EFIH.  *See* Disclosure Statement § V.H.2.  Hugh Sawyer, the Disinterested Director of TCEH, has testified that he did not seek any claim against EFIH because he felt that EFIH had defenses to TCEH's intercompany claims.  *See* Transcript of Deposition of Hugh E. Sawyer ("Sawyer Dep. Tr."), dated September 24, 2015, at 614:15-615:4.  Indeed, as the Debtors state in the Settlement Motion, the negotiations focused on the value of TCEH's claims against EFH versus the value of EFH's claims against TCEH.  Settlement Mot. ¶¶ 228-29.

18.     Thus, on April 14, 2015, the terms of the Disinterested Director Settlement were included in the Original Plan, which provided for a tax-free spin-off of TCEH and a tax-free reorganization of EFIH and EFH.  *See* Original Plan; EFIH_DD00004865.  The intercompany releases included in the Disinterested Director Settlement would not become effective unless and until the Original Plan became effective.  *See* Original Plan at Art. VIII.C (Debtors provide releases as of the effective date).  Each of the Disinterested Directors retained a fiduciary out to terminate the Original Plan if they determined that the terms of the Disinterested Director Settlement were no longer in the best interests of their estates.  EFIH_DD00004865.  Thus, in a scenario where the Original Plan failed or otherwise did not provide adequate value for payment

in full of EFIH creditors, Mr. Cremens had the ability to terminate the Disinterested Director Settlement and retain the Legacy Note Claim for EFIH.

### 2.    The Settlement and Settlement Motion

19.    On August 9, 2015, the Debtors entered into the Settlement (subject to Court approval) with the Settlement Parties.  Settlement Mot. at ¶ 46.  On August 10, 2015, the Debtors filed the Settlement Motion, seeking approval of the Settlement pursuant to Section 9019 and separate from approval of the Plan.

20.    The Settlement (i) incorporates (in large part) the terms of the Disinterested Directors Settlement of intercompany claims, (ii) resolves certain claims held by the Debtors' estates against the Holders of TCEH First Lien Claims, and (iii) settles certain intercreditor claims asserted by creditors in the TCEH estates.  Settlement Mot. ¶ 47.

21.    Similar to the Disinterested Director Settlement, under the terms of the Settlement, EFH, EFIH, and TCEH agreed to release all prepetition intercompany claims and causes of action in exchange for an allowed $700 million general unsecured claim by TCEH against EFH.  *See* Settlement Motion ¶ 225.  Of import to EFIH creditors, the Settlement provides that EFIH will release claims held against other Debtors (the "EFIH Inter-Debtor Claims" and the "EFIH Inter-Debtor Releases").  This includes, but is not limited to, a release of the following claims by EFIH against EFH:

- EFIH's nearly $1.3 billion undisputed Legacy Note Claim;

- Dividends from EFIH to EFH that EFH used to repay the TCEH Intercompany Notes in February 2012 and January 2013; and

- Dividends of EFH Notes from EFIH to EFH in December 2012 and January 2013.

*See* Settlement Mot. ¶ 42.

9

22.    Importantly, and unlike the Disinterested Director Settlement, the inter-Debtor releases will be binding and effective upon approval of the Settlement Motion regardless of whether the Plan is confirmed or ultimately consummated.  Thus, once the Settlement is approved, Mr. Cremens no longer retains a fiduciary out for EFIH, and EFIH will forever release its Legacy Note Claim regardless of whether the current Plan is confirmed or consummated and regardless of whether any future alternative plan proposes to pay EFIH creditors in full.  *See* Transcript of Deposition of Charles Cremens, dated October 1, 2015 ("Cremens Dep. Tr."), at 107:25-108:5 ("Q: Has your fiduciary out changed in any way in connection with the settlement agreement that is presently before the court?  A: Yes, there isn't a specific fiduciary out if it gets approved.").

23.    While the Disinterested Directors approved the Settlement, it does not appear that the Disinterested Directors or their advisors negotiated any changes between the Disinterested Director Settlement and the Settlement.  *See* Sawyer Dep. Tr. at 742:15-25, 744:6-11, 744:17-745:15, 747:13-748:12.

24.    Additionally, the Settlement provides, among other things, that EFIH will release all claims against the equity Sponsors (as that term is defined in the Settlement) (the "Sponsor Releases") and the Debtors' directors and officers (the "D&O Releases," and together with the EFIH Inter-Debtor Releases and the Sponsor Releases, the "Pre-Plan Releases").  Settlement §§ 2.3, 2.4.

### 3.    The Downside to EFIH if Settlement Approved Independent of Consummation of a Plan Providing for Payment in Full to EFIH Creditors

25.    In the event that the Plan is confirmed, but ultimately not consummated, EFIH and its creditors face risk and uncertainty.  Indeed, in such a scenario, it is unknown whether an alternative restructuring will provide for payment in full to EFIH creditors.  Cremens Dep. Tr. at

10

124:13-23 ("Q:  Okay.  Is it your understanding that if the current plan failed, there is no certainty that EFIH creditors will be paid in full on their allowed claims?  A:  Depends on what the alternative transaction will be.  Q:  Right.  My point, sir, is simply it's possible that in an alternative transaction, they would get paid less than full on allowed claims, right?  A:  It's possible.").  The possibility of the Plan being confirmed but not becoming effective is not an idle threat.  As the Debtors advised their joint boards of directors, including Mr. Cremens, in connection with the Plan, "[t]here is significant risk that the Merger [encompassed in the current Plan] will not close" if certain "out-of-market conditions" are not satisfied.  EFH06002843 at 12.

26.    If the Plan is confirmed, but not consummated, one of the risks to EFIH and its creditors is the possibility of a taxable deconsolidation.  As the Debtors also advised their joint boards of directors, including Mr. Cremens, when approving the Plan and Settlement, if the Plan is not confirmed or consummated, "the TCEH first liens are entitled to seek approval of a taxable transaction or plan (i.e., a taxable separation of TCEH from EFH), including a transaction or plan that might be separate from the EFH-EFIH plan."  EFH06002898 at 11; *see also* Cremens Dep. Tr. 111:11-112:4 ("The ability for someone to bring a taxable transaction as an alternative plan to the board and to EFH as well is certainly there.").

27.    The consequences of a potential deconsolidation are not yet known, but could be value-destructive for EFIH and EFH.  The Debtors have previously disclosed the potential consequences of a taxable transaction or plan in their *Omnibus Tax Memorandum* [D.I. 2296] (the "Debtors' Tax Memorandum").  The Debtors estimated that a deconsolidation scenario resulting from a taxable sale of TCEH or its assets "would likely create a tax liability for EFH (and a bankruptcy claim for the IRS) of potentially $7 billion or more," and that such tax liability could become a liability of EFIH either (i) through a claim by EFH against EFIH pursuant to the

Competitive TSA (as defined in the Debtors' Tax Memorandum) or (ii) as a result of a so-called "check-the-box" election by EFH.  Debtors' Tax Memorandum at 17-20.

28.     More recently, expert testimony suggests that based on the implied market value of TCEH today, a deconsolidation of TCEH will not generate a tax liability at EFH that could potentially be asserted as a liability of EFIH.  *See* Expert Report of Michael Henkin; Transcript of Deposition of David Ying, dated October 19, 2015 ("Ying Dep. Tr.") at 110:19-111:11.  Even if true, however, a deconsolidation of TCEH from EFH would be value destructive to EFIH and EFH because it would foreclose the ability of EFIH and EFH to reorganize in a tax-efficient manner (*i.e.* through a REIT conversion).  *Id.* at 111:12:113:4 (explaining consequences of deconsolidation of TCEH from EFH even if no tax is generated).

29.     Thus, if the Plan is approved and not consummated, it is possible that, as a result of a deconsolidation or otherwise, EFIH will lack sufficient value to pay its creditors in full.

30.     Despite understanding that the current construct would cause him to lose his "fiduciary out," Mr. Cremens, as the disinterested manager of EFIH, approved the Debtors seeking approval of the Settlement in the Settlement Motion, and thus releasing the EFIH Inter-Debtor Claims, including the Legacy Note Claim, with no guarantee that EFIH creditors will ultimately be paid in full.  *See* Cremens Dep. Tr. at 107:25-108:5.  This represents a major concession compared to his position articulated at the time of the Disinterested Director Settlement.   In exchange for this concession, Mr. Cremens and his advisors did not obtain—or even ask for—any protections to EFIH and its creditors, including (i) a release of claims EFH could potentially assert against EFIH under the Competitive TSA in the event of a taxable transaction or plan, (ii) an agreement from EFH not to make a "check-the-box" election against the interests of EFIH in the event of a taxable transaction or plan, or (iii) any agreement from

TCEH or its constituencies not to pursue a taxable transaction or plan (for any amount of time) if the current Plan is not consummated for any reason. Cremens Dep. Tr. at 112:5-14, 113:7-18, 133:14-20; *see also* Transcript of Deposition of Donald Evans, dated September 25, 2015 ("Evans Dep. Tr."), at 338:24-339:9.

## OBJECTION

31.     While the Trustee does not object to the terms of the Settlement in a scenario where EFIH creditors are paid in full, it does object to the currently-proposed *timing* of the Pre-Plan Releases.  As currently structured, EFIH will grant the EFIH Inter-Debtor Releases, the D&O Releases, and the Sponsor Releases upon Court approval of the Settlement Agreement, with no requirement (or assurance) that this Plan in its current form, or any other plan that proposes to pay EFIH creditors in full, is ever consummated.[4]  *See* Proposed Settlement Order ¶ 2.  As discussed below, if the Plan is not consummated and any modified or alternative plan does not pay EFIH creditors in full, then the release of some or all of the EFIH Inter-Debtor Claims and claims against the Debtors' directors and officers and the Sponsors may not be appropriate and could, in fact, be detrimental to the EFIH estates and their creditors.  For example, there is no basis for EFIH to release the Legacy Note Claim unless EFIH creditors are paid in full.

32.     Thus, by providing for the Pre-Plan Releases prior to the consummation of the Plan, or independent of any plan paying EFIH creditors in full, the Settlement is not in the best

---

[4]    As set forth in the Trustee's objection to confirmation of the Plan, filed concurrently with this Objection, the EFIH Unsecured Noteholders are impaired pursuant to the terms of the Plan.  The Debtors have taken the position that the Plan contemplates payment in full in cash of the EFIH Unsecured Noteholders' Allowed Claims against the EFIH Debtors, and solely for purposes of the arguments set forth in the Objection, the Trustee will treat the Plan as providing for payment in full to the EFIH Unsecured Noteholders.  Nothing herein shall be deemed to be an admission by the Trustee that, under the current terms of the Plan, the EFIH Unsecured Noteholders are truly being paid "in full" and are unimpaired under Section 1124(1), and the Trustee reserves all rights with respect thereto.

interests of the EFIH estate and does not satisfy the business judgment standard, let alone the heightened scrutiny required for insider transactions. Accordingly, the Settlement should not be approved unless the Pre-Plan Releases are modified such that the EFIH Inter-Debtor Claims and claims against the Debtors' directors and officers and the Sponsors are not released until the Plan Effective Date.

33.     Moreover, despite the Debtors' representations that the Settlement provides for full disarmament of all potential litigation affecting the estates, including potential claims by TCEH and its debtor subsidiaries (collectively, the "TCEH Debtors") against Oncor Electric Delivery Company LLC ("Oncor") and Oncor Electric Delivery Holdings Company LLC ("Oncor Holdings" and together with Oncor, the "Oncor Entities"), the Settlement does not appear to release all such claims. Thus, at a minimum, if the Court is inclined to approve the Settlement, the Settlement releases should be modified to clearly release all TCEH Debtor claims against the Oncor Entities.

**I.     The Pre-Plan Releases Encompassed in the Settlement Should Not Be Granted Prior to the Effective Date of a Plan that Pays EFIH Creditors in Full**

**A.     The Disinterested Director Settlement Was Premised on Payment in Full to EFIH Creditors and a Fiduciary Out That Will No Longer Exist Upon Approval of the Settlement**

34.     The Disinterested Director Settlement, as originally agreed to, contemplated certain protections, including a fiduciary out, that do not exist in the Settlement Agreement. On March 30, 2015, Mr. Cremens determined that the Disinterested Director Settlement was in the best interests of EFIH and its constituencies "as long as the total consideration available to the creditors of [EFIH] under the proposed chapter 11 plan [is] adequate to satisfy all allowed claims against [EFIH]." EFIH_DD0028049. In support of the Disinterested Director Settlement, EFIH highlighted payment in full to EFIH creditors and the fact that if the total consideration available

to EFIH was not sufficient to pay EFIH's creditors in full, the Disinterested Director Settlement "reserve[d] to Mr. Cremens, as the sole Disinterested Manager of EFIH, a 'fiduciary out' and a right to modify or withdraw the Plan if instead EFIH does not ultimately have adequate value to satisfy all allowed claims." EFIH Statement ¶ 16. Thus, Mr. Cremens' approval of the Disinterested Director Settlement was premised on retaining protection for EFIH—specifically a "fiduciary out" and EFIH's right to withdraw from the Disinterested Director Settlement—if claims against EFIH were not paid in full under a plan.

35.     Because the Settlement provides that the EFIH Inter-Debtor Claims will be released upon approval of the Settlement Motion, Mr. Cremens' "fiduciary out" is rendered useless and effectively eliminated.

### B.      If the Plan is Not Consummated, EFIH Creditors May Not Be Paid in Full

36.     While the Plan purports to provide for payment in full to EFIH creditors, it is not yet known whether the Plan, even if confirmed, will be consummated. In the event that it is not consummated, it is uncertain whether an alternative plan will provide for payment in full to EFIH creditors. In fact, despite the "disarmament" and "drag" features of the Plan and related documents, it remains possible that a future reorganization will involve a taxable deconsolidation of TCEH with adverse consequences to EFIH and its creditors. *See supra*, ¶¶ 25-30. Under the Plan Support Agreement, there is nothing to prevent a taxable deconsolidation from occurring if the Plan is not consummated. In fact, the Plan Support Agreement specifically provides that if the Plan fails, the Consenting TCEH First Lien Creditors (as defined in the Plan Support Agreement) are not required to support a tax free spin and are free to support a taxable deconsolidation. *See* Plan Support Agreement [D.I. 6097-1] at § 5.4; *see also* EFH06002898 at 11.

C.      **The EFIH Inter-Debtor Claims Should Not be Released Prior to Consummation of a Plan that Pays EFIH Creditors in Full**

37.      For the avoidance of doubt, if, as the Disinterested Director Settlement originally proposed, the release of the EFIH Inter-Debtor Claims is conditioned on a plan—whether the current Plan or otherwise—providing for payment "in full" to EFIH creditors, the Trustee would not object to the Settlement.  It is improper, however, for EFIH to release the EFIH Inter-Debtor Claims prior to the effective date of a plan providing for payment in full to EFIH creditors.

38.      The Debtors contend that the Settlement is based upon the Disinterested Director Settlement, and rely on the negotiations of the Disinterested Director Settlement as evidence that the Settlement was negotiated at arm's length and is reasonable.  Settlement Mot. ¶ 226.  As discussed above, and as will be established at the Confirmation Hearing, however, Mr. Cremens, as the sole independent manager of EFIH, agreed to the Disinterested Director Settlement with the understanding that EFIH creditors would be paid in full and that he would retain a fiduciary out if that were no longer the case.  *See supra* ¶¶ 11-18.  Despite the Debtors' representation that the Settlement incorporates the Disinterested Director Settlement, from the perspective of EFIH and its creditors, the settlement of intercompany claims included in the Settlement has been modified materially and adversely to EFIH as a result of the timing of the release of the EFIH Inter-Debtor Claims and resulting lack of any guarantee that EFIH creditors will be paid in full, or any fiduciary out if EFIH creditors will not be paid in full.  These facts belie the Debtors' assertion that the Settlement is the product of arm's length negotiations.  *See In re Nortel Networks, Inc.,* 522 B.R. 491, 510 (Bankr. D. Del. 2014) (noting that in considering settlements under Section 9019, courts consider the extent to which the settlement is truly the product of arm's length bargaining and not of fraud and collusion).

39.     Once the EFIH Inter-Debtor Releases are effective, EFIH loses potentially valuable claims, including its nearly $1.3 billion Legacy Note Claim, that could provide value to EFIH creditors or be used to otherwise protect EFIH's interests in a downside scenario where EFIH may lack sufficient value to pay its creditors in full, whether a result of a taxable deconsolidation or otherwise.   The Settlement, if approved in its current form, would immediately release all EFIH Inter-Debtors Claims against EFH, and deprive the EFIH Debtors of these valid, enforceable, inter-Debtor claims that could be used to protect itself and its creditors in a taxable deconsolidation scenario.

**D.     EFIH Should Not Provide the D&O Releases and the Sponsor Releases Independent of Plan Consummation**

40.     Similarly, EFIH's releases of all claims against the Debtors' directors and officers and the Sponsors should not be effective absent a consummated plan of reorganization acceptable to EFIH.  In the event of an alternative plan that does not provide for payment in full to EFIH creditors, such claims should otherwise remain available to EFIH to protect its interests and/or increase the value of its estate.

**II.     The Settlement Does Not Satisfy the *Martin* Factors**

41.     The Settlement proposes that EFIH release its EFIH Inter-Debtor Claims, including nearly $1.3 billion Legacy Note Claim against EFH, regardless of whether EFIH creditors are ultimately paid in full.  As such, the Settlement does not satisfy the Third Circuit's test for approval of a settlement, regardless of whether it is considered under the heightened entire fairness standard or the business judgment rule.  There is no reasonable basis for EFIH to release the EFIH Inter-Debtor Claims, including the Legacy Note Claim, prior to consummation of a plan providing for payment in full to EFIH creditors.

### A.    Legal Standard

42.    Before approving a settlement pursuant to Rule 9019, a bankruptcy court must determine that it is "fair, equitable, and in the best interests of the estate."  *See HSBC Bank USA, N.A. v. Fane* (*In re MF Global Inc.*), 466 B.R. 244, 247 (Bankr. S.D.N.Y. 2012); *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *In re Nutraquest, Inc.*, 434 F.3d 639, 644, 646 (3d Cir. 2006); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993, *aff'd*, 17 F.3d 600 (2d Cir. 1994).  In considering the propriety of a settlement, courts in the Third Circuit consider the following four factors (the "*Martin* Factors"):    (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation, and the expense, inconvenience, and delay accompanying it; and (4) the paramount interest of the creditors.  *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996).  It is the Debtors' burden to demonstrate by a preponderance of the evidence that the Settlement satisfies the *Martin* Factors.  *See In re Capmark Financial Grp. Inc.*, 438 B.R. 471, 509 (Bankr. D. Del. 2010).  As the *Martin* Factors suggest, the reasonableness of a proposed settlement depends in important part on the context in which it is negotiated.  Where, as here, a settlement resolves claims between and among debtors, the Court should consider whether the settlement is in the best interests of the estate of each debtor agreeing to settle claims.

43.    Moreover, settlements among insiders should be subject to a higher standard of review.  Because the Settlement settles inter-Debtor claims, it falls outside the realm of the business judgment rule.  *See Liquidation Trust of Hechinger Inv. Co. of Del., Inc. v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.)*, 327 B.R. 537, 549 (D. Del. 2005); *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 237 (Bankr. N.D. Tex 2009) ("[W]hen a transaction is proposed between a debtor and its insiders, the court cannot simply rely on the debtor's business judgment to ensure creditors and the debtor's estate are being properly cared for.").  Instead, under

18

Delaware law, the entire fairness standard should apply.  Under the entire fairness standard, the Debtors must establish "to the court's satisfaction that the transaction was the product of both fair dealing and fair price . . . .  Not even an honest belief that the transaction was entirely fair will be sufficient to establish entire fairness.  Rather*, the transaction itself must be objectively fair, independent of the board's beliefs*."  *Id.* (emphasis added).  Courts in other jurisdictions have interpreted the entire fairness standard to require the Debtors to demonstrate to the court not only that the "process and price of a proposed transaction … are fair," but also that the Debtors' "fiduciary duties were properly taken into consideration."  *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010) (*citing In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), which applied Delaware law in distinguishing when the business judgment properly applies).

      **B.**     **Analysis of the *Martin* Factors**

          **1.**     **The Settlement Does Not Satisfy the First *Martin* Factor Because EFIH's Legacy Note Claim is Undisputed**

     44.    The first *Martin* Factor asks the Court to consider the probability of success in litigation.  *Martin*, 91 F.3d at 393.  The Debtors argue that the Settlement meets this factor because it "resolves a broad range of complex claims among the Debtors" which are all "subject to significant defenses and therefore uncertain."  Settlement Mot. ¶ 227.

     45.    There is nothing uncertain or complex, however, about EFIH's nearly $1.3 billion Legacy Note Claims at EFH.  Pursuant to the Plan, all other EFH Legacy Note Claims are allowed.  Plan at Art. III.B.4.  Absent waiver of this claim in the Settlement, there appears to be no dispute that EFIH would have a legal entitlement to recover on the Legacy Note Claim. Indeed, while the Debtors spend more than 60 pages of the Settlement Motion providing a

detailed description of the various settled claims, including arguments in favor and against nearly all claims, their description of the Legacy Notes Claim is just two sentences, as follows:

> As of the Petition Date, EFIH held approximately $1.282 billion of EFH Legacy Notes.   As part of the Disinterested Director Settlement, EFIH waived any recovery on account of these holdings, to the benefit of all EFH creditors.

Settlement Mot. ¶ 223.  Unlike nearly all other claims discussed in the Settlement Motion, the Debtors provide no basis for disputing EFIH's Legacy Note Claim, *id.*, and the discovery record reflects no such basis.

46.     Thus, with respect to the Legacy Note Claim, EFIH's probability of success in litigation is very high, if not guaranteed.

47.     Moreover, EFIH's probability of success on any claims against it by EFH or TCEH is likewise high.  As the Debtors acknowledge, inter-Debtor claims between EFIH and EFH "run in favor of EFIH."  Settlement Mot. ¶ 229; *see also* EFIH Statement ¶ 11.  And, as has been established in discovery and will be established at the Confirmation Hearing, during negotiation of the Disinterested Director Settlement, TCEH did not pursue a demand for payment from EFIH because it determined that EFIH had defenses to TCEH's intercompany claims.  Sawyer Dep. Tr. at 614:15-615:4.  Thus, the parties' negotiations focused on the consideration that EFH would pay TCEH for release of TCEH's claims against EFH.  Settlement Mot. ¶ 229.

### 2.    The Settlement Does Not Satisfy the Second *Martin* Factor Because EFIH Can Collect on the Legacy Note Claim, at Least in Part

48.     The second *Martin* Factor considers the likely difficulties of collection.  *Martin*, 91 F.3d at 393.  With respect to EFIH's releases of its claims against EFH, the Debtors argue that "[a]ny recovery by EFIH from EFH . . . would be either circular or uncertain" because:

> If EFH's holdings of EFIH membership interests have value (because EFIH is able to satisfy all claims against it), then the recovery would be circular, because any additional value infused

20

> into EFIH would accrue to the benefit of EFH as EFIH's owner.  If, on the other hand, the EFIH membership interests have no value (because EFIH is unable to satisfy all claims against it), then EFIH would have an unsecured claim against EFH that would be funded, if at all, from some portion of EFH's cash.

Settlement Mot. ¶ 229.  The Debtors further argue that any such recovery would be "unlikely to compensate for the litigation expense required to pursue the Inter-Debtor Claims." *Id.*

49.    With respect to the Legacy Note Claim, however, the Debtors arguments do not hold water.  While it may be unlikely that an insolvent EFIH would recover the full amount of the Legacy Note Claim, the Debtors do not dispute that EFIH's Legacy Note Claim would be entitled to share in EFH's cash available to EFH creditors.  As discussed above, EFIH's Legacy Note Claim is not subject to any serious dispute, so there would not be litigation expense to compare the potential recovery against.  Moreover, there is a possibility that the Legacy Note Claim would have value to EFIH vis-à-vis EFH if the Plan is not consummated and a taxable deconsolidation occurs generating a tax liability at EFH or an alternative plan otherwise does not provide for payment in full to EFIH creditors.  *See* Evans Dep. Tr. at 338:5-16 ("Q: And that, the waiver of that 1.3 billion dollar claim that EFIH has at EFH, would that become relevant, sir, in a scenario where the present plan does not go effective?  A:  It could.  Q:  And why could it?  A: Well, because all of a sudden, then maybe EFIH is not being paid in full, and so if they are not being paid in full, then they are going to, there they would be looking for other sources of cash.").

50.    On the other hand, if EFIH creditors are not paid in full and there really were no funds to recover at EFH, then EFIH's release of the Legacy Note Claim would not benefit EFH's other creditors, who would receive no recovery regardless.

21

3.    **The Settlement Does Not Satisfy the Third *Martin* Factor Because There Will Be No Litigation in Connection with the Legacy Note Claim**

51.    The third *Martin* Factor considers the complexity of the litigation, and the expense, inconvenience, and delay accompanying it.  *Martin*, 91 F.3d at 393.  The Debtors argue that litigation of the various inter-Debtor claims "would have an uncertain and potentially lengthy duration and would cost the estate tens, if not hundreds, of millions of dollars in attorneys' and other professional fees alone."  Settlement Mot. ¶ 235.

52.    As discussed above in connection with the first *Martin* Factor, however, unlike the various litigation claims resolved between EFH and TCEH, there is no serious dispute over EFIH's Legacy Note Claim, and there would likely be no litigation at all associated with such claim, let alone any litigation involving "[c]omplicated factual and legal questions" and "[e]xtensive expert work," or that would "materially delay the Debtors' emergence from bankruptcy."  *See* Settlement Mot. ¶¶ 235-36.

4.    **The Settlement Does Not Satisfy the Fourth *Martin* Factor Because Release of the Legacy Note Claim is Not in the Paramount Interest of EFIH Creditors Absent Payment in Full**

53.    Lastly, the fourth *Martin* Factor considers the paramount interest of creditors. *Martin*, 91 F.3d at 393.  The focus of this factor is not upon the fairness of the Settlement to those who signed the agreement, but to those who are affected by the agreement, including in this case, the EFIH Unsecured Noteholders.  *See In re Nortel Networks, Inc.*, 522 B.R. at 512-13.

54.    The Debtors argue that the Settlement is in the paramount interest of their creditors because, among other things, it resolves "litigation that would likely remove millions of dollars from the Debtors' estates that could otherwise be used to satisfy creditor claims," "provides certainty to creditors and hastens the Debtors' emergence from bankruptcy," and "also

benefits the E-Side creditors, by facilitating the Plan, which would result in all allowed E-Side creditor claims being paid in full in cash."  Settlement Mot. ¶¶ 238-39, 241.

55.      The timing of the proposed release of the Legacy Note Claim is most important in considering the paramount interest of EFIH's creditors.[5]  As discussed above, the Legacy Note Claim does not appear subject to any serious dispute or litigation, and there is nothing uncertain about it.  But if the release of that claim was conditioned on payment in full to EFIH creditors—as it was when agreed to in the Disinterested Director Settlement—then the Trustee would have no objection.  True payment in full is in the paramount interest of EFIH's creditors.

56.      By providing for the release of EFIH's undisputed Legacy Note Claim before it is known whether EFIH creditors will be paid in full, however, the Settlement is not in the paramount interest of EFIH creditors.  As discussed above, in a downside scenario where the Plan is not consummated and EFIH no longer has adequate value to pay all EFIH creditor claims in full, EFIH would have given up an undisputed nearly $1.3 billion claim that would likely be entitled to some recovery or could be used to protect EFIH's interest if a deconsolidation tax were ultimately triggered.  Thus, the timing of the Pre-Plan Releases is not in the best interests of the holders of EFIH or its creditors.

**III.    Despite the Debtors' Representations to the Contrary, the Settlement Does Not Appear to Release the Oncor Entities from Potential Claims**

57.      In the Settlement Motion, the Debtors state that the settlement of various inter-Debtor claims resolves various claims against the Oncor Entities.  *See, e.g.,* Settlement Mot. ¶ 42.  While the Oncor Entities would receive a release under the Plan, *see* Plan at Art. I.A.284

---

[5]      In addition, while the Debtors state that the Settlement provides tremendous benefits to the Debtors, the Settlement Motion does not quantify the benefits to be received by the EFIH Debtors in exchange for the Pre-Plan Releases.  Unlike *In re Capmark Financial Grp. Inc*., 438 B.R. 471 (Bankr. D. Del. 2010), where the debtors provided evidence of the likely costs to litigate the claims that were being settled, here, the Debtors do not include a quantified amount of what it would cost to specifically litigate the EFIH Inter-Debtor Claims, including the Legacy Note Claim.

(definition of "Released Parties" includes Oncor); Art. VIII.C (Debtors' releases to Released Parties), it does not appear that the Oncor Entities receive releases from the TCEH Debtors under the Settlement.  Because EFIH's primary asset is its direct and indirect ownership interests in the Oncor Entities, *see* Settlement Mot. n.6, any claims asserted by TCEH Debtors against the Oncor Entities would be to the detriment of EFIH.  Thus, if the Court were inclined to approve the Settlement purportedly of all claims between and among Debtors, and allow for releases prior to the effective date of a plan, such releases should be modified to clearly include a release of any claims by the TCEH Debtors against the Oncor Entities.

58.     Section 2.1(a) of the Settlement provides for release of "all Non-EFH Debtor Intercompany Claims, all Non-EFIH Debtor Intercompany Claims, and all Non-TCEH Debtor Intercompany Claims arising from the beginning of the world through the Settlement Effective Date."  Settlement § 2.1(a).  The defined terms "Non-EFH Debtor Intercompany Claims," "Non-EFIH Debtor Intercompany Claims," and "Non-TCEH Debtor Intercompany Claims" refer to claims against EFH Debtors, EFIH Debtors, and TCEH Debtors, respectively.  *Id.* § 1.  Neither of those defined terms includes the Oncor Entities, which are not debtors.  *Id.*

59.     Section 2.3(e) of the Settlement, on the other hand, appears to provide for a partial release of the Oncor Entities.  In that section, the Settling Interest Holders (defined as the Sponsors and Sponsor Managers) provides releases to, among others, the Debtors and their subsidiaries.  Settlement § 2.3(e).  Although not clearly stated in the Settlement, because the Oncor Entities are direct and/or indirect subsidiaries of the Debtors, section 2.3 appears to provide for a release of the Oncor Entities by the Settling Interest Holders.  *Id.*

60.     A release of the Oncor Entities by the Settling Interest Holders, however, is insufficient to provide for a full disarmament of potential claims against the Oncor Entities.  For

example, the Settlement Motion describes various potential claims against one or both of the Oncor Entities by the TCEH Debtors.  *See* Settlement Mot. ¶ 42.  While the Trustee believes potential claims by the TCEH Debtors against the Oncor Entities are ultimately meritless, if the Settlement is to provide for a full resolution of litigation potentially affecting the estates, then the releases should be modified to, at a minimum, provide for a release of any claims by the TCEH Debtors against the Oncor Entities.

## CONCLUSION

**WHEREFORE**, for the reasons set forth in this Objection, the Trustee respectfully requests that the Court deny the Settlement Motion unless (i) the Pre-Plan Releases are modified to be effective only upon the Effective Date of the Plan and (ii) the releases in the Settlement are modified to provide for a release of any claims by the TCEH Debtors against the Oncor Entities. The Trustee also requests such other and further relief as this Court deems just and proper.

*[Remainder of page intentionally left blank.]*

Dated:  October 23, 2015
Wilmington, Delaware

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone: (212) 872-1000

Scott L. Alberino (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone: (202) 887-4000

By: ___/s/ Raymond H. Lemisch_____
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Raymond H. Lemisch (No. 4204)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189

**FOLEY & LARDNER LLP**
Harold L. Kaplan (admitted *pro hac vice*)
Mark F. Hebbeln (admitted *pro hac vice*)
Lars A. Peterson (admitted *pro hac vice*)
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500

Barry G. Felder (admitted *pro hac vice*)
Jonathan H. Friedman (admitted *pro hac vice*)
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474

*Co-Counsel for UMB BANK, N.A., as Trustee*