**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., et al.,¹<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Re: Docket No. 5249<br><br>Hearing Date: November 3, 2015 at 11:00 a.m.<br>Objection Deadline: October 23, 2015. |

**EFH INDENTURE TRUSTEE'S OBJECTION TO MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., TO APPROVE A SETTLEMENT OF LITIGATION CLAIMS AND AUTHORIZE THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE SETTLEMENT AGREEMENT**

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures (the "Indentures") for certain notes (the "EFH Notes" and the holders thereof, the "EFH Noteholders") issued by EFH Future Holdings Corp. ("EFH Corp.") (as described in Exhibit 1 attached hereto), by its undersigned counsel, hereby objects (the "Objection") to the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [Docket No. 5249] (the "Settlement Motion").² In opposition to approval of the Settlement Motion, the EFH Indenture Trustee joins and incorporates by reference those

---

¹ The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein.

² Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Settlement Motion.

arguments applicable to the Settlement Motion made in the *Trial Brief and Omnibus Objection of the EFH Official Committee To (I) Motion Of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* and the *Supplement to Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation Of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code Regarding Insider Releases*. Background on the EFH Indenture Trustee's role in these chapter 11 cases is contained in the *EFH Indenture Trustee's Objection and Pretrial Brief for Phase I Trial In Connection With Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.*

## **OBJECTION**

1.     The EFH Indenture Trustee further objects to the Settlement Motion on the grounds that the motion improperly relies on Bankruptcy Rule 9019 as the substantive "authority" for Court approval of the proposed settlements. *See* Settlement Motion, at ¶ 74. Bankruptcy Rule 9019 does not establish statutory grounds for a settlement in a bankruptcy case; it simply provides that "after notice and a hearing, the court may approve a compromise or settlement" — it does not establish any substantive rights or the standard that should be applied. FED. R. BANKR. P. 9019(a). Bankruptcy Rule 9019, like all other Bankruptcy Rules, only governs procedure - not substance. Under the Rules Enabling Act, 28 U.S.C. § 2075, the

Supreme Court can only prescribe Bankruptcy Rules governing "practice and procedure" and such "rules shall not abridge, enlarge, or modify any substantive right." *See* 28 U.S.C. § 2075 ("The Supreme Court shall have the power to prescribe by general rules, the forms of process, writs, pleadings, and motions, and the practice and procedure in cases under title 11. Such rules shall not abridge, enlarge, or modify any substantive right ...."); *see generally* Lawrence P. King, THE HISTORY AND DEVELOPMENT OF THE BANKRUPTCY RULES, 70 Am. Bankr. L.J. 217, 218 (1996)*;* Alan N. Resnick, THE BANKRUPTCY RULEMAKING PROCESS, 70 Am. Bankr. L.J. 245, 246-47 (1996).  In the case of a conflict between a Bankruptcy Rule and the Bankruptcy Code, the Bankruptcy Code must prevail.  *See e.g. United States v. Towers (In re Pacific Atlantic Trading Co.),* 33 F.3d 1064, 1066 (9th Cir. 1994) ("Any conflict between the Bankruptcy Code and the Bankruptcy Rules must be settled in favor of the Code."); *In re Barnes*, 308 B.R. 77, 81 (Bankr. D. Colo. 2004) ("The Bankruptcy Rules cannot override substantive provisions provided in the Bankruptcy Code . . . .").

2. Here, the Debtors' failure to cite any language in the Bankruptcy Code permitting approval of the Settlement Agreement is not surprising.  There is no statutory authority in the Bankruptcy Code itself authorizing the Debtors to settle a myriad of claims, including (i) unfiled inter-Debtor claims, (ii) claims against the TCEH First Lien Creditors, and (iii) claims against the Sponsors and against the Debtors' directors and officers outside the context of a plan of reorganization and without affording creditors an opportunity to vote on the Settlement Agreement.  *Cf.* 11 U.S.C. § 1129(b)(3)(A)(providing for settlements in plans).  By relying on Bankruptcy Rule 9019 to seek approval of a complex and potentially distribution determinative settlement outside of a plan, the Debtors have, in effect, overridden the substantive provisions of section 1129(b)(3)(A) permitting creditors to vote on settlement agreements that affect them.

3. Here the proposed Settlement Agreement and Plan operate in unison to grant TECH an Allowed $700 million unsecured "settlement" claim against EFH Corp. in the allowed amount of $700 million. Plan, at Art.I.A.399 and Art.IV.B.15. The TCEH Settlement Claim will be deemed satisfied upon Consummation. Plan, at Art. IV.B.15. However, if the Settlement Motion is approved, but the Plan is not consummated, the TCEH First Lien Creditors will still receive – outside of a plan - the entirety of the TCEH Settlement Claim in the allowed, non-priority amount of $700 million, which they will be able to assert against EFH Corp. to the detriment of all other unsecured creditors of EFH Corp. *See* Settlement Agreement, at § 2.1(b).

4. By seeking approval of the Settlement Agreement separate and apart from the Plan, the Debtors have stripped affected EFH Corp. creditors of their right to vote on the Settlement Agreement and their rights as creditors who would certainly be impaired if the settlement had been incorporated into the Plan. In *In re Exide Techs.*, 303 B.R. 48, 67-68 (Bankr. D. Del. 2003), Judge Carey stated that the following factors should be considered when considering a settlement in the context of a plan under section 1129(b)(3)(A):

(1) The balance between the likelihood of plaintiff's or defendant's success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures.

(2) The prospect of complex and protracted litigation if the settlement is not approved.

(3) **The proportion of the class members who do not object or who affirmatively support the Settlement Agreement.**

(4) The competency and experience of counsel who support the settlement.

(5) **The relative benefits to be received by individuals or groups within the class**.

(6) The nature and breadth of releases to be obtained by the directors and officers as a result of a settlement.

> (7) The extent to which the settlement is truly the product of "arms-length" bargaining, and not of fraud or collusion.

*Id.* (emphasis added).[3] Here, the EFH Committee, as a fiduciary to all EFH Corp. creditors, has objected to the Settlement Agreement. The EFH Indenture Trustee, as representative for holders of the largest unsecured notes against EFH Corp. has also objected. If the Debtors had proposed the Settlement Agreement in the Plan pursuant to section 1129(b)(3)(A), then those votes against the Settlement Agreement would weigh in favor of denying approval of the settlement. However, by seeking approval of the Settlement Agreement pursuant to Bankruptcy Rule 9019(a), the Debtors seek to disenfranchise the creditors most directly affected by the Settlement Agreement. This is a situation where a *procedural rule* is being used to strip creditors of a *substantive right* to accept or reject a settlement agreement in the context of a plan. This violates the Rules Enabling Act and there is no reason why the views of creditors on a settlement should be tossed aside when a settlement is proposed outside of a plan. To do so would result in different standards being applied to settlements depending on the Debtors' machinations. A uniform standard should be applied, especially where the settlement results in a $700 million claim against a debtor's estate that may significantly dilute distributions to creditors if the Plan fails.

5. Here, it is all the more appropriate to permit EFH Corp. creditors to vote on the Settlement Agreement because the Settlement Agreement is part and parcel of the Debtors' Plan. *See* Plan, at Art. IX.A.1. (making approval of Settlement Motion a condition precedent to confirmation.)

---

[3] Of course, if the relief sought in the Settlement Motion was sought in connection with a plan, instead of by way of a stand-alone motion, EFH Corp. creditors would also receive the benefits of the other provisions of section 1129.

6. The Debtors should not be permitted to seek approval of the Settlement Agreement outside the context of a plan and in the absence of a creditor vote.

## RESERVATION OF RIGHTS

7. The EFH Indenture Trustee reserves its right to amend this Objection or interpose additional objections in response to (i) further amendments to the Settlement Agreement or (ii) evidence that may be introduced at the hearing on the Settlement Agreement.

## CONCLUSION

**WHEREFORE**, the EFH Indenture Trustee respectfully requests that the Court (i) deny approval of the Settlement Agreement, and (ii) grant such other and further relief as is just.

Dated: Wilmington, DE
October 23, 2015

**CROSS & SIMON, LLC**

By: */s/ Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee*

**Exhibit 1**

**Indentures**

1. Indenture dated as of November 1, 2004, between Energy Future Holdings Corp. ("EFH"), as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of July 1, 2010, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series P Indenture").

2. Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series Q Indenture").

3. Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series R Indenture").

4. Indenture dated as of November 16, 2009, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Supplemental Indenture, dated as of January 25, 2013, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "9.75% Senior Notes Indenture").

5. Indenture dated as of January 12, 2010, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010, the Eighth Supplemental Indenture, dated as of January 25, 2013, and the Ninth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.00% Senior Notes Indenture").

6. Indenture dated as of October 31, 2007, among EFH, as issuer, the Guarantors party thereto and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, the Fourth Supplemental Indenture, dated as of October 18, 2011, and the Fifth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.875% Senior Notes and 11.250%/12.000% Senior Toggle Notes Indenture", and collectively with the Series P Indenture, the Series Q Indenture, the Series R Indenture, the 9.75% Senior Notes Indenture, and the 10.00% Senior Notes Indenture, the "Indentures").