# EXHIBIT 3

# Excerpts from 5/28/14 Keglevic Dep. Tr.

Page 152

1  IN THE UNITED STATES BANKRUPTCY COURT
2  FOR THE DISTRICT OF DELAWARE
3  Chapter 11
   Case No. 14-10979 (CSS)
4  Jointly Administered
   on an Interim Basis
5  -----------------------------------x
   In re:
6
   ENERGY FUTURE HOLDINGS CORPORATION,
7  et al.,
8          Debtors.
   -----------------------------------x
9          May 28, 2014
10         10:17 a.m.
11         VOLUME II
12
13     Videotaped Rule 26, Rule 30 and Rule
14 30(b)(6) Deposition of PAUL KEGLEVIC, pursuant
15 to Notice, at the offices of WHITE & CASE,
16 LLP, 1155 Avenue of the Americas, New York,
17 New York, before Frank J. Bas, a Registered
18 Professional Reporter, Certified Realtime
19 Reporter and Notary Public within and for the
20 State of New York.
21
22
23
24
25

Page 153

1  A P P E A R A N C E S:
2
3  BROWN RUDNICK LLP
4  Attorneys for Wilmington Savings Fund Society,
5  FSB, solely in its capacity as Successor
6  Indenture Trustee for the Second Liens
7     Seven Times Square
8     New York, New York 10036
9  BY:  AARON LAUCHHEIMER, ESQ.
10      alauchheimer@brownrudnick.com
11
12 PAUL WEISS RIFKIND WHARTON & GARRISON, LLP
13 Attorneys for Ad Hoc Committee of TCEH First
14 Lien Creditors
15    1285 Avenue of the Americas
16    New York, New York 10019-6064
17 BY:  JONATHAN D. KANDELSHEIN, ESQ.
18      jkandelshein@paulweiss.com
19
20 SEWARD & KISSEL LLP
21 Attorneys for Wilmington Trust, N.A.
22    One Battery Park Plaza
23    New York, New York 10004
24 BY:  MARK D. KOTWICK, ESQ.
25      kotwick@sewkis.com

Page 154

1  A P P E A R A N C E S (CONTINUED):
2
3  WHITE & CASE LLP
4  Attorneys for the Ad Hoc Group of TCEH
5  Unsecured Noteholders
6     1155 Avenue of the Americas
7     New York, New York 10036-2787
8  BY:  J. CHRISTOPHER SHORE, ESQ.
9       cshore@whitecase.com
10      DANIELLE M. AUDETTE, ESQ.
11      daudette@whitecase.com
12      PRIYA SRINIVASAN, ESQ.
13      psrinivasan@whitecase.com
14
15
16 O'MELVENY & MYERS LLP
17 Attorneys for Apollo
18    Times Square Tower
19    7 Times Square
20    New York, New York 10036
21 BY:  DANIEL S. SHAMAH, ESQ.
22      dshamah@omm.com
23
24
25

Page 155

1  A P P E A R A N C E S (CONTINUED):
2
3  MORRISON & FOERSTER LLP
4  Attorneys for the Official Committee of
5  Unsecured Creditors
6     250 West 55th Street
7     New York, New York 10019-9601
8  BY:  KAYVAN B. SADEGHI, ESQ.
9       ksadeghi@mofo.com
10      WILLIAM HILDBOLD, ESQ.
11      whildbold@mofo.com
12
13
14 AKIN GUMP STRAUSS HAUER & FELD LLP
15 Attorneys for the Ad Hoc Committee of
16 EFIH Unsecured Noteholders and the Second
17 Lien Debt Holders
18    One Bryant Park
19    Bank of America Tower
20    New York, New York 10036-6745
21 BY:  CHRISTOPHER W. CARTY, ESQ.
22      ccarty@akingump.com
23
24
25

Page 272

1  Q.   It's just a sale of assets as
2  approved by the Court.
3        Did you understand that one of
4  your options heading into bankruptcy to deal
5  with the first lien lenders was to just say
6  we'll sell the assets, you can credit bid and
7  take them?
8        MR. McKANE:  Objection to form.
9  A.   Yes.  I knew that was something
10 that we could have agreed to do with them.
11 Q.   Okay.  And did you also
12 understand that one of the things you could
13 have agreed to do was to seek to have the
14 automatic stay modified, let them take their
15 assets through a state court foreclosure in
16 Texas, or whatever jurisdiction they needed to
17 bring it in order to take possession of the
18 assets?
19 A.   I wasn't familiar with the
20 foreclosure option, but, you know, we were
21 more focused on the 363 sale option.
22 Q.   Okay.  With respect to
23 unencumbered assets, under the scenario in
24 which you allow for a DIP, and you give them
25 adequate protection liens, what was before

Page 273

1  unencumbered now becomes a liened asset,
2  correct?
3  A.   Correct.
4  Q.   Under the scenario of a 363
5  sale, do you have any understanding as to how
6  the unliened assets could become liened?
7  A.   I do not.
8  Q.   All right.
9        So if -- let's just state the
10 unliened -- or the unencumbered assets have a
11 value of $1 billion.  All right?  Just as a
12 hypothetical.
13       If the unliened assets have a
14 value of $1 billion why would the debtors
15 encumber them in order to operate and maintain
16 the assets for the lenders rather than just
17 turn it over in a 363 sale?
18       MR. McKANE:  Objection to form.
19 A.   Well, our primary reason for
20 not agreeing to the sale of the assets,
21 especially with respect to the impact on the
22 unencumbered assets, would have been that a
23 tax would have been created through a 363 sale
24 of a substantial amount, say $3-1/2 billion,
25 and that is assuming an enterprise value of

Page 274

1  $17-1/2 billion, a tax basis of 7-1/2, a tax
2  of 10, times 35 percent tax rate.  That's how
3  I am coming up with that number.
4  Q.   Okay.
5  A.   That tax, TCEH is a disregarded
6  entity, and of course the first lien creditors
7  had originally argued that that tax would be
8  stranded at EFH.
9        One of the things we were
10 cognizant of is in lieu of stranding -- that
11 EFH, if confronted with that situation, had
12 the right to make TCEH a regarded entity by
13 effectively a procedure called "check the
14 box," which would have made TCEH a taxpayer,
15 and in fact that claim would have been a
16 joint-and-several claim against EFH and TCEH,
17 and therefore the IRS could have gotten any of
18 the -- in your situation, a billion dollars
19 unencumbered assets, they would have had a
20 claim for that unencumbered amount.
21       They couldn't get in front of
22 the first lien, which is why it was appealing
23 to the first lien, but from an unsecured
24 creditor standpoint, likely, in my opinion, it
25 would have wiped out any opportunity for

Page 275

1  recovery of the unsecured creditors.
2        And then also would have left
3  whatever was then not satisfied as a liability
4  to be settled up at EFH.
5  Q.   All right.  So let me pick that
6  apart.
7        First of all, you say it was
8  the primary reason.  What were any other
9  reasons why the debtors, TCEH debtors, refused
10 to grant liens on unencumbered stuff and just
11 turn the assets over -- the liened assets over
12 to the lenders in a 363 sale?
13 A.   That was --
14       MR. McKANE:  Objection to form.
15 A.   -- the reason I recall.
16 Q.   Okay.  So as you sit here today
17 can you recall any other reason?
18 A.   No.  That was -- that's a
19 pretty substantial reason.
20 Q.   Okay.  When you said they --
21 "they," EFH, had the right to "check the box,"
22 what was your understanding as to where that
23 right emanated from?
24 A.   Just as a consolidated
25 taxpayer.