# EXHIBIT 4

# Excerpts from 9/30/15 Williamson Dep. Tr.

Page 1

```
 1
 2         UNITED STATES BANKRUPTCY COURT
 3           FOR THE DISTRICT OF DELAWARE
 4  -------------------------------------x
 5  In Re:
 6  Energy Future Holdings Corporation,
 7  et al.,
 8                    Debtors.
 9
10  Chapter 11
11  Case No. 14-10979
12  Jointly Administered
13  -------------------------------------x
14
15
16       DEPOSITION OF BILLIE IDA WILLIAMSON
17             New York, New York
18             September 30, 2015
19
20
21
22  Reported by:
23  MARY F. BOWMAN, RPR, CRR
24  JOB NO. 98290
25
```

Page 2

```
 1
 2
 3
 4
 5
 6
 7        September 30, 2015
 8           9:04 a.m.
 9
10        Deposition of BILLIE IDA
11  WILLIAMSON, held at the offices of Kirkland
12  & Ellis LLP, 601 Lexington Avenue, New
13  York, New York, before Mary F. Bowman, a
14  Registered Professional Reporter, Certified
15  Realtime Reporter, and Notary Public of the
16  State of New Jersey.
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1
 2             APPEARANCES:
 3  PROSKAUER ROSE
 4  Attorneys for the EFH Disinterested Directors
 5  and the Witness
 6     2049 Century Park East
 7     Los Angeles, CA   90067
 8  BY:  MICHAEL FIRESTEIN, ESQ.
 9       MARK THOMAS, ESQ.
10
11  SULLIVAN & CROMWELL
12  Attorneys for E-side Official Creditors
13     125 Broad Street
14     New York, NY 10004
15  BY:  BRIAN GLUECKSTEIN, ESQ.
16       CHIANSAN MA, ESQ.
17
18  KIRKLAND & ELLIS
19  Attorneys for the Debtors
20     300 North LaSalle
21     Chicago, IL   60654
22  BY:  BRENTON ROGERS, ESQ.
23       HOLLY TROGDON, ESQ
24       HOWARD KAPLAN, ESQ.
25
```

Page 4

```
 1
 2             APPEARANCES:
 3  MONTGOMERY McCRACKEN WALKER & RHOADS
 4  Attorneys for EFH Committee
 5     123 South Broad Street
 6     Philadelphia, PA 19109
 7  BY:  MARK SHEPPARD, ESQ.
 8       MICHAEL BRIAN HAYES, ESQ.
 9
10  SHEARMAN & STERLING
11  Attorneys for EFIH, First Lien DIP Agent
12     599 Lexington Avenue
13     New York, NY 10022
14  BY:  FAY TELONI, ESQ.
15
16
17
18
19
20
21
22
23
24
25
```

Page 69

1      Williamson
2   A.   Yes. This was a significant item
3   that we discussed. If the -- if TCEH is
4   spun off in a taxable transaction, they get
5   a step up in basis on their assets, which,
6   from a future tax standpoint, reduces the
7   tax that are paid because of depreciation
8   deductions and that sort of thing.
9        However, if it is a tax-free
10  spin, they do not get that same kind of
11  step up.
12  Q.   So is it -- am I correct that
13  part of the negotiations centered around
14  this step-up matter and the ability to do a
15  tax-free reorganization?
16  A.   Yes.
17  Q.   And I think you said that was a
18  significant matter?
19  A.   We spent a lot of time discussing
20  it, yes.
21  Q.   Was the resolution of the step-up
22  matter a significant component of the terms
23  of the settlement that you ultimately
24  agreed to?
25  A.   It was in the settlement that we

Page 70

1      Williamson
2   agreed to, yes.
3   Q.   Did you have an understanding at
4   the time of these negotiations of the
5   circumstances where a taxable
6   deconsolidation of the T-side would lead to
7   tax liabilities at EFH?
8   A.   Yes.
9   Q.   As we sit here today, do you have
10  an understanding of what the circumstances
11  are where that liability could be
12  triggered?
13  A.   Yes. If there are taxable
14  transactions, that liability is triggered
15  at the EFH estate.
16  Q.   At the time you reached the
17  settlement in March, had you seen an
18  analysis of the magnitude of the potential
19  liability at EFH?
20  A.   Of the tax on a taxable
21  transaction?
22  Q.   On a taxable transaction by the
23  T-side.
24  A.   We had actually talked about at a
25  board meeting that if we had done double

Page 71

1      Williamson
2   deconsolidation, that the tax liability
3   could be as high as 6 billion dollars.
4   Q.   And did you have an understanding
5   as to whether or not the amount of tax
6   liability would vary based on the value of
7   the T-side debtor assets?
8   A.   I -- yes. That -- but that
9   value, you know, of those assets is
10  determined by the Court, and I'm not -- not
11  by the Court. It is determined -- in a
12  taxable transaction, where you have the
13  step up in basis, the IRS helps you
14  determine that, and so, you know, we also
15  had -- I don't know what those assets would
16  be valued at, at that point in time, but
17  yes, that's how you determine -- if it is a
18  taxable transaction, you have to determine
19  what it is you get for those assets, and
20  then what the basis of those assets are,
21  and whatever the difference of that is, is
22  what is taxed.
23  Q.   In the discussions that you had
24  that led to the as much as 6 billion dollar
25  number, was there discussion about how net

Page 72

1      Williamson
2   operating losses could offset some of that
3   liability?
4   A.   Certainly.
5   Q.   So am I correct then that it is
6   your understanding that at the time you
7   entered into the settlement, you had the
8   understanding that the amount of tax
9   liability is a product of T-side assets
10  offset by net operating loss?
11  A.   Can you restate that? I don't
12  believe it's correct, but I want to make
13  sure.
14  Q.   Let's back up.
15  A.   OK.
16  Q.   At any point after -- at any
17  point after agreeing to settlement in
18  March, did you review an evaluation of the
19  T-side assets in connection with an
20  analysis of a potential taxable transaction
21  on the T-side?
22  A.   I'm sorry, could you restate the
23  question, please?
24  Q.   At any point after agreeing to
25  the settlement in March, did you -- do you