# EXHIBIT 5

# Excerpts from 10/19/15 Ying Dep. Tr.

Page 1

```
 1              DAVID YING
 2  UNITED STATES BANKRUPTCY COURT
 3  FOR THE DISTRICT OF DELAWARE
    ---------------------------------------------x
 4  In Re:
 5  Energy Future Holdings Corporation, et al.,
 6             Debtors.
 7  Chapter 11
 8  Case No. 14-10979
 9  Jointly Administered
10  ---------------------------------------------x
11          DEPOSITION OF DAVID YING
12             New York, New York
13              October 19, 2015
14
15
16
17
18
19
20
21
22
23  Reported by:
24  KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25  JOB NO. 99137
```

Page 2

```
 1              DAVID YING
 2          October 19, 2015
 3
 4      Deposition of DAVID YING, held
 5  at Kirkland & Ellis LLP, 601 Lexington
 6  Avenue, New York, New York, before Kathy
 7  S. Klepfer, a Registered Professional
 8  Reporter, Registered Merit Reporter,
 9  Certified Realtime Reporter, Certified
10  Livenote Reporter, and Notary Public of
11  the State of New York.
```

Page 3

```
 1              DAVID YING
 2        A P P E A R A N C E S:
 3
 4  SULLIVAN & CROMWELL
 5  Attorneys for E-side Official Creditors
 6      125 Broad Street
 7      New York, New York  10004
 8  BY:  JOHN HARDIMAN, ESQ.
 9       JOHN LIOLOS, ESQ.
10
11  KIRKLAND & ELLIS
12  Attorneys for the Debtors
13      300 North LaSalle
14      Chicago, Illinois  60654
15  BY:  BRENTON ROGERS, ESQ.
16      601 Lexington Avenue
17      New York, New York  10022
18  BY:  JUSTIN SOWA, ESQ.
```

Page 4

```
 1              DAVID YING
 2      A P P E A R A N C E S:  (Cont'd.)
 3
 4  KRAMER LEVIN NAFTALIS & FRANKEL
 5  Attorneys for EFIH 2nd Lien Note Trustee
 6      1177 Avenue of the Americas
 7      New York, New York  10036
 8  BY:  P. BRADLEY O'NEILL, ESQ.
 9
10  MONTGOMERY McCRACKEN WALKER & RHOADS
11  Attorneys for EFH Committee
12      123 South Broad Street
13      Philadelphia, Pennsylvania  19109
14  BY:  LATHROP NELSON, III, ESQ.
15
16
17  SHEARMAN & STERLING
18  Attorneys for EFIH, First Lien DIP Agent
19      599 Lexington Avenue
20      New York, New York  10022
21  BY:  FOTEINI TELONI, ESQ.
```

Page 109

1    DAVID YING
2  testimony is that you agree there are no
3  reasonable assurances the merger will close, but
4  it's the best you believe that the company could
5  do under the circumstances?
6       MR. ROGERS:  Objection to form.
7    A.   And to elaborate on that response, I
8  believe there are very meritorious and good
9  reasons to pursue the closing of this
10 transaction.
11   Q.   But if you could answer my question,
12 which is, is it fair to say that your testimony
13 is that you agree there are no reasonable
14 assurances the merger will close, but it's the
15 best you believe the company could do under the
16 circumstances?
17      MR. ROGERS:  Objection to form and
18   asked and answered.
19   Q.   Is that fair to say?
20   A.   Yes, it is.
21   Q.   Going to Opinion 5, and that has --
22   A.   I'm sorry, I lost the page.
23   Q.   I'm sorry, it's page 6, paragraph 15.
24   A.   Thank you.
25   Q.   And that has to do with the interest

Page 110

1    DAVID YING
2  rate paid by EFH to TCEH in connection with the
3  intercompany promissory notes.
4       Do you agree with that opinion by Mr.
5  Henkin?
6       MR. ROGERS:  Objection to the form.
7    Beyond the scope.
8    A.   Actually, I don't recall reading that
9  section at all carefully.
10   Q.   And is this an issue that you have
11 analyzed at all, whether or not the interest
12 rate paid by EFH to TCEH in connection with the
13 intercompany notes was reasonable or not?
14   A.   I'm well-aware of the question.  I'm
15 well-aware that the company thinks the rates
16 were appropriate.  I'm well-aware that others
17 have asserted over the past several years that
18 it's not.  I don't have an opinion.
19   Q.   And finally, the last opinion, which
20 is, "Based on the implied market value of TCEH
21 today" -- and this is Opinion 6, paragraph 16 --
22 "there will be no tax liability EFH upon a
23 disposition of TCEH in a transaction utilizing
24 EFH's NOLs."
25      Do you agree with that opinion --

Page 111

1    DAVID YING
2       MR. ROGERS:  Objection to form.
3    Beyond the scope.
4    Q.   -- of Mr. Henkin?
5    A.   Well, I think if the question is
6  narrowly defined as if TCEH were to separate
7  from EFH in a taxable fashion, would EFH have
8  sufficient tax attributes to shelter the taxable
9  gain that would occur, based on our current
10 valuation of TCEH and its tax basis, I believe
11 the answer to that question is yes.
12      I would, however, wish to point out
13 and qualify the conclusions that one might draw
14 from that statement, and the qualification is
15 that if TCEH were to taxably deconsolidate from
16 EFH, there would not be a tax due upon that
17 taxable de-consolidation.
18      However, EFH would no longer have the
19 ability to, in a tax-efficient fashion, convert
20 to a REIT, and I think that's an important
21 consideration that the EFH UCC and all of the
22 creditors in the company should understand.
23 With the presumption that conversion to a REIT
24 is an attractive alternative, a taxable
25 de-consolidation eliminates any possibility of

Page 112

1    DAVID YING
2  doing that.
3    Q.   And why does it eliminate any
4  possibility of doing that?
5    A.   Well, this is based on conversations
6  with the company, who obviously has the benefit
7  of tax advice.  The problem of -- or, one of the
8  things that a company has to do when it converts
9  from a C Corp. to a REIT is that they have to
10 declare a purging dividend equal to all excess
11 of earnings and profits sitting inside the
12 company, and since this company has been around
13 a long time, it has a very substantial amount of
14 earnings and profits.
15      Again, I don't know the exact figure,
16 but I've heard from the company that their rough
17 calculation is that E&P could be as much as $20
18 billion.  Part of the private letter ruling and
19 the discussion with the IRS has been that, as
20 part of the tax-free spin of TCEH, the IRS will
21 allow the allocation of EFH's earnings and
22 profits to be largely allocated to TCEH prior to
23 the spin, and therefore, when EFH elects to
24 convert to a REIT post the TCEH spin, they will
25 have very modest earnings and profits, and