# EXHIBIT 6

# Excerpts from 10/21/15 Henkin Dep. Tr.

Page 1

```
 1            MICHAEL HENKIN
 2     UNITED STATES BANKRUPTCY COURT
 3     FOR THE DISTRICT OF DELAWARE
       --------------------------------------------x
 4     In Re:
 5     Energy Future Holdings Corporation, et al.,
 6              Debtors.
 7     Chapter 11
 8     Case No. 14-10979
 9     Jointly Administered
10     --------------------------------------------x
11          DEPOSITION OF MICHAEL HENKIN
12             New York, New York
13              October 21, 2015
14
15
16
17
18
19
20
21
22
23     Reported by:
24     KATHY S. KLEPFER, RMR, RPR, CRR, CLR
25     JOB NO. 99258
```

Page 2

```
 1            MICHAEL HENKIN
 2          October 21, 2015
 3
 4      Deposition of MICHAEL HENKIN, held
 5  at Kirkland & Ellis, LLP, 601 Lexington
 6  Avenue, New York, New York, before Kathy
 7  S. Klepfer, a Registered Professional
 8  Reporter, Registered Merit Reporter,
 9  Certified Realtime Reporter, Certified
10  Livenote Reporter, and Notary Public of
11  the State of New York.
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1            MICHAEL HENKIN
 2          A P P E A R A N C E S:
 3
 4  SULLIVAN & CROMWELL
 5  Attorneys for E-side Official Creditors
 6       125 Broad Street
 7       New York, New York  10004
 8  BY:  JOHN HARDIMAN, ESQ.
 9       NICHOLAS MENILLO, ESQ.
10
11  KIRKLAND & ELLIS
12  Attorneys for the Debtors
13       300 North LaSalle
14       Chicago, Illinois  60654
15  BY:  JEFFREY LULA, ESQ.
16       MARK McKANE, ESQ.
17
18  MUNGER TOLLES & OLSON
19  Attorneys for the TCH Debtors
20       355 South Grand Avenue
21       Los Angeles, California  90071
22  BY:  BRADLEY SCHNEIDER, ESQ.
23       KEVIN ALLRED, ESQ.
24       THOMAS WALPER, ESQ.
25       ALEX TEREPKA, ESQ.
```

Page 4

```
 1            MICHAEL HENKIN
 2
 3      A P P E A R A N C E S:  (Cont'd.)
 4
 5  PAUL WEISS RIFKIND WHARTON & GARRISON
 6  Attorneys for Ad Hoc Committee of TCEH First Lien
 7  Creditors
 8       1285 Avenue of the Americas
 9       New York, New York  10019
10  BY:  KIMBERLY FRANCIS, ESQ.
11
12  NIXON PEABODY
13  Attorneys for American Stock Transfer as Indenture
14  Trustee at EFH
15       100 Summer Street
16       Boston, Massachusetts  02110
17  BY:  PAUL WILLIAMSON, ESQ.
18       RICHARD PEDONE, ESQ. (Telephonically)
19
20  AKIN GUMP STRAUSS HAUER & FELD
21  Attorneys for UMB Bank, As Indenture Trustee for the
22  Unsecured 11.25 Percent/12.25 Percent Senior Toggle
23  Notes Due 2018
24       One Bryant Park
         New York, New York  10036
25  BY:  RICHARD WILLIAMS, JR., ESQ.
```

Page 265

1    MICHAEL HENKIN
2    A.   It may trigger a tax if there is not
3    enough tax attributes to shield the potential
4    gain.
5    Q.   Right.  So let me just break it down.
6         EFH is a taxpayer, right?
7    A.   That is correct.  They own the stock
8    of TCEH.
9    Q.   TCEH is a disregarded entity for tax
10   purposes, right?
11   A.   That's correct.
12   Q.   In determining whether EFH owes a tax
13   liability for a transaction of TCEH, you have to
14   evaluate what the cost basis is of the TCEH
15   assets and what the value is for TCEH at the
16   time of the transaction closing, right?
17   A.   I think that's correct.
18   Q.   All right.  And if the value of EFH at
19   the time the transaction closes is greater than
20   the cost basis, there is a tax owed if it's a
21   taxable transaction, right?
22   A.   Unless there are tax attributes that
23   would reduce the potential gain, that is
24   correct.
25   Q.   Let me take it in steps.

Page 266

1    MICHAEL HENKIN
2         There is a tax that would be
3    triggered, and then the question would be is a
4    cash tax actually going to be paid or could it
5    be offset with tax attributes?
6    A.   Okay.
7    Q.   Right?
8    A.   That's fair.
9    Q.   Is that fair?
10   A.   That's fair.
11   Q.   And EFH owns those tax attributes,
12   right?
13   A.   Yes.
14   Q.   And upon emergence, what happens to
15   EFH's NOLs?
16   A.   I believe that, under the plan,
17   they're going -- some of them are going to be
18   utilized for a partial step-up under the current
19   plan.
20   Q.   Let's step back away from this plan,
21   right?  As a restructuring professional, you
22   know that NOLs are a valuable tax attribute,
23   right?
24   A.   Yes.
25   Q.   And you know that in a restructuring,

Page 267

1    MICHAEL HENKIN
2    almost all NOLs cannot be utilized by the new
3    reorganized entity?
4    A.   There are limitations put on the NOLs
5    after you go through a Chapter 11 restructuring,
6    yes.
7    Q.   Significant limitations; these are IRS
8    limitations on what NOLs can be used, right?
9         MR. HARDIMAN:  Object to the form.
10   A.   Yes.
11   Q.   And you know as a restructuring
12   professional that -- in this case, have you
13   evaluated, you know, how many of EFH's NOLs, if
14   any, could survive a restructuring?
15   A.   I have not looked at that issue of the
16   post-reorganized entity's utilization of NOLs.
17   Q.   Okay.  Is that relevant at all to your
18   evaluation as to whether EFH should use their
19   NOLs to shield taxes of EFH -- of TCEH?  Excuse
20   me.
21   A.   It might have some relevance if you
22   were trying to evaluate what the alternatives of
23   paying the tax is and taking that value into
24   some reorganized entity, yes.
25   Q.   Right.  So, in other words, if it's

Page 268

1    MICHAEL HENKIN
2    use it or lose it, right, it may not matter as
3    much to EFH to convey those tax attributes to
4    TCEH if they can get something else in return?
5    A.   That's correct.
6    Q.   And in a taxable scenario, we don't
7    know the amount of tax that would be triggered
8    by a TCEH taxable sale until at least a point in
9    time where they emerge, right?
10   A.   With any precision, that's correct.
11   Q.   And in fact, the IRS doesn't limit
12   itself to how the new securities trade
13   immediately post-emergence, correct?
14        MR. HARDIMAN:  Object to the form.
15   A.   I've had some experience with the IRS
16   where they do a retrospective analysis and look
17   at some of the values that may have occurred
18   either prior to or right after the date of
19   emergence, yes.
20   Q.   So let me present a scenario, and
21   based on your experience, you tell me whether
22   this is accurate.
23        If TCEH is anticipated to emerge at
24   $12 billion enterprise value, but immediately
25   thereafter the securities of TCEH trade as if