# EXHIBIT 10

## Excerpts from EFH06002898

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

Presentation to the Boards of Directors and Managers of Energy Future Holdings Corp., Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC, TCEH Finance, Inc., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc.

# Approval of Amended Plan and Merger Transaction Documents

August 9, 2015

Energy Future Holdings

 Luminant



Highly Confidential

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

# Table of Contents

I.   Situation Overview

II.  Summary of the Merger Plan Transactions

III. Resolution of Open Issues

IV.  Financial Analyses of the Merger Transaction

V.   Other Plan Filing Materials

    A.   Valuation, Projections, and Liquidation Analysis

    B.   Communications

VI.  Recommendation

Appendix A:  Summary of Definitive Documents

Appendix B:  Previous Merger Transaction Board Materials

EFH06002899

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

# I.    Situation Overview

Highly Confidential

EFH06002900

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

## Situation Overview

- At the quarterly joint meeting on July 30, the Boards reviewed and discussed extensive materials describing and analyzing the Hunt/TCEH unsecured consortium's proposed merger transaction and the related plan support and disarmament proposal.

- This included a detailed discussion of the mechanics and financing, the definitive documents, and the risks and benefits of the transaction taken together with the plan support and disarmament proposal.  It also included a discussion of material open issues.

- Subject to the Boards' approval, the Debtors have resolved these material open issues and substantially finalized the definitive documentation. This presentation summarizes the transaction, provides a financial analysis of the transaction, and describes the resolution of open issues.

- For the reasons discussed further below, the CROs, K&E, Evercore, and the DDAs recommend that **Redacted For Privilege**

# Redacted For Privilege

3

Highly Confidential

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

# II. Summary of the Merger Plan Transactions

4

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

## Merger Transaction: Overview

- Under a merger agreement and related definitive documents, an investor group led by Hunt Consolidated, Inc. ("Hunt") and members of the TCEH unsecured group (collectively with Hunt, the "Investors") contemplates raising up to approximately $5.5 billion of debt financing and $7.1 billion of new-money equity financing to:

  - repay all EFH and EFIH claims in full in cash under a plan of reorganization (including postpetition interest if the Court, after litigation, allows the claims, but conditioned on disallowance of makewholes);

  - acquire reorganized EFH (including its 80% interest in Oncor) through a merger (the "Merger") and convert the surviving company into a REIT; and

  - acquire the Oncor minority interest.

- In exchange for, among other things, the "disarmament" construct described below, the documents governing the Merger and the equity financing are drafted with sufficient conditionality to effectively create an option for the Investors to close the transaction by an initial outside date of April 30, 2016 (subject to certain extensions up to 120 days as discussed further below).



- Redacted For Privilege
  Redacted For Privilege The Debtors have waived all remedies (including money damages and specific performance) under the merger agreement.

5

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Merger Transaction: Other Terms

- The Merger transaction has the following other key features and provisions.

- **Rights Offering and Direct Investment.** Of the $7.1 billion of equity financing for the Merger, $5.087 billion would take the form of a backstopped rights offering to TCEH unsecured creditors, and the other $2.013 would take the form of a direct equity investment by the Investors. An incremental $700 million of rights would be offered to TCEH first lien creditors, which would reduce debt financing or be used for other cash needs to the extent the rights are exercised.

- **REIT Conversion.** The Merger contemplates that new EFH would elect to be treated as a real estate investment trust ("REIT") under federal tax law. EFH and EFIH would agree to use reasonable best efforts to assist the Investors with obtaining the PUCT approvals and IRS rulings required to implement a REIT structure.

- **Minority Investor Drag.** EFH and EFIH would also agree to assist the Investors in acquiring the 20% minority interest in Oncor held by Texas Transmission, Inc. ("TTI") through a contractual "drag-along" provision. As discussed further below, after a 30-day negotiation period, the merger agreement will require the Debtors to file an enforcement action against TTI under certain circumstances.

6

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Merger Transaction:  Other Terms (cont'd)

▪ **Board Resignation**.  As is typical in a sale of a company, the merger agreement contemplates that all of the directors and officers of the purchased company (i.e., EFH and EFIH) will resign at closing.  We understand that the consortium expects to elect 13 new directors (two from Hunt, one from Hunt co-investors, and 10 from the Investor group) to govern new EFH.

▪ **Drop Dead Date**. The merger agreement, and the obligation of the PSA parties to support the Merger plan, terminates by April 30, 2016, subject to the following extensions:

- This date automatically extends to June 30, 2016, if all PUCT approvals have been obtained by April 30, 2016;

- If PUCT approval has not been obtained but all other conditions have been satisfied, the Investors also have the option to extend the date to May 31, 2016, which reduces the TCEH unsecured creditors guaranteed $550 million backup plan recovery to $500 million, and again to June 30, 2016, which reduces the recovery to $450 million; and

- If certain T-side regulatory approvals have not been obtained (including NRC and FERC approvals) but all other conditions have been met, the date may be extended to August 31, 2016.

7

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

# Merger Transaction:  Other Terms (cont'd)

- **Oncor Side Letter.** Oncor and Oncor Holdings are continuing to negotiate a side letter agreement with the Investors that obligates Oncor to cooperate in certain aspects of the Merger. The merger agreement will become terminable if the Oncor side letter is not executed within 15 business days after signing.

- **PSA and Settlement Agreement.**   The merger agreement becomes terminable if an order approving the plan support agreement is not entered before September 30, 2015, but only before entry of such order.   Entry of an order approving the settlement agreement is a condition to closing.

3

EFH06002906

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## TCEH Tax-Free Spinoff

- Under the plan, reorganized TCEH will be spun off to the TCEH first lien creditors.

- Reorganized TCEH will become a public company likely listed on the NYSE comprised of:

- TXU Energy;

- Luminant; and

- EFH Corporate Services.

- Reorganized TCEH will be 100% owned by existing TCEH first lien creditors (along with reorganized TCEH management).

- The TCEH spinoff, which will occur in connection with and immediately before the EFH merger, will be structured in a manner intended to be treated as a tax-free reorganization.

- The corporate governance of reorganized TCEH (including board and management composition) are not yet spelled out in the amended plan and will be discussed with the TCEH first lien creditors in the coming months.

9

EFH06002907

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

## Disarmament

- Under the disarmament construct, the TCEH first lien, unsecured, and second lien groups and the TCEH creditors' committee would agree to the release of inter-Debtor and legacy claims, including claims against the TCEH first lien creditors, the sponsors, EFH and EFIH and their affiliates, and D&Os.  Upon Court approval, this disarmament would remain effective whether or not the Merger closes.

- **Disarmament.**  This disarmament is embodied in two agreements.

  - **Contractual Disarmament.**  Under the plan support agreement, the parties would commit to support the inclusion of these releases in the plan or an alternative plan, and to refrain from litigating such claims or the standing motions in the meantime.  Such plan releases would only become effective when the plan becomes effective, i.e., upon closing of the Merger plan or alternative transaction.

  - **Full Disarmament.**  Under the settlement agreement, the parties would agree to a broad set of mutual releases to be included in a settlement order, which would become effective upon entry.  **Redacted For Privilege**
    **Redacted For Privilege**

- **Required Alternative Plan Terms.**  Under any alternative plan, the TCEH unsecured creditors are generally entitled to a $550 million cash payment as the recovery on their claims against the TCEH Debtors, paid from the TCEH Debtors' estates as a carveout from the TCEH first lien collateral, but none of any recovery on the TCEH settlement claim.

10

EFH06002908

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Alternative Plan Drag

- In addition to disarmament, the TCEH junior creditors and committee have agreed to support and not object to an alternative plan if the Merger does not close, so long as the TCEH unsecured creditors receive the $550 million cash payment (subject to certain adjustments), paid from the TCEH Debtors' estate as a carveout from the TCEH first lien collateral.

- **Entities Entitled to File Alternative Plan.** This alternative plan could be filed by the Debtors, the TCEH first liens, or both after termination of the obligation under the PSA to support the Merger plan.

- **Drag.** So long as the cash payment is part of the alternative plan, the TCEH juniors are required to refrain from objecting to either plan, and to vote the same way the TCEH first liens vote.

- **Taxable Transaction.**

- Through this construct, the TCEH first liens are entitled to seek approval of a taxable transaction or plan (i.e., a taxable separation of TCEH from EFH), including a transaction or plan that might be separate from the EFH-EFIH plan.

- Importantly, the Debtors reserve all rights to oppose any such transaction or plan, and the consenting equity holders reserve all rights to oppose such transaction or plan to the extent that it generates an unpaid cash tax liability to the Debtors, as determined by the consenting equity holders in their reasonable discretion.

11

EFH06002909

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

# PSA and Settlement Agreement:  Potential Outcomes



**PSA Hearing**
*By September 2015*

PSA approved

PSA denied

**Confirmation and Settlement Hearing**
*By January 2016*

Settlement approved
Confirmation approved

Settlement approved
Confirmation denied
or Merger not consummated

Settlement denied

**Full Disarmament + Merger Plan**
- Releases in Court's settlement order become effective upon entry
- Debtors pursue effectiveness of Merger transaction (including regulatory approvals)
- If the Merger is not consummated, full disarmament remains, and the Debtors may file an alternative plan, as set forth below

**Full Disarmament + Alternative Plan**
- Releases in Court's settlement order become effective upon entry
- Alternative plan potentially filed by Debtors, TCEH first liens, or both
- All parties to the PSA agree to support the Debtors' 90-day confirmation schedule for an alternative plan, including if the PSA terminates
- The merger agreement becomes terminable if confirmation is denied

**Contractual Disarmament + Alternative Plan**
- Alternative plan potentially filed by Debtors, TCEH first liens, or both
- Contractual disarmament under PSA persists
- Releases not effective until effectiveness of alternative plan
- All parties to the PSA agree to support the Debtors' 90-day confirmation schedule for an alternative plan, including if the PSA terminates
- The merger agreement becomes terminable if the settlement is not approved

**No Disarmament + No Alternative Plan Drag**
- No disarmament or other agreed or approved releases
- No obligation of TCEH junior creditors to support alternative plan
- Potential for continued legacy and inter-Debtor litigation
- Releases would have to be negotiated/litigated in connection with confirmation of new plan
- All parties to the PSA agree to support the Debtors' 90-day confirmation schedule for an alternative plan, including if the PSA terminates. But likely puts at risk ability to hold January confirmation

All parties to the PSA agree to support the Debtors' 90-day confirmation schedule for an alternative plan, including if the PSA terminates.

Upon PSA approval, the Debtors receive the benefit of "**contractual disarmament**," which means the PSA parties agree to:
- refrain from litigating legacy and inter-Debtor claims and adjourn the related standing motions; and
- support the inclusion of full releases in both the merger plan and alternative plan.

The Debtors begin receiving the benefit of this standstill upon signing of the PSA, but the PSA becomes terminable if not approved by September 30, 2015.

The Debtors' existing exclusivity period through December 29, 2015, remains in effect in all circumstances.

12

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

# PSA and Settlement Agreement:  Benefits and Costs

- All parties to the PSA agree to support the Debtors' 90-day confirmation schedule for an alternative plan, including if the PSA terminates. The Debtors and EFH/EFIH creditors obtain the benefit of a cash collateral extension until the plan is consummated or, if the PSA or primary support obligation terminates, until 60-days after termination.
- **Upon approval of PSA (by September 2015)**, the parties receive:

| Debtors | TCEH Firsts | TCEH Unsecureds | EFH/EFIH Creditors | Sponsors |
|---|---|---|---|---|
| • **Contractual disarmament**—agreement of PSA parties to refrain from litigating legacy claims and inter-Debtor claims and support releases in plan or alternative plan<br>• Potential REIT conversion that provides the **opportunity to repay all E-side creditors in full in cash** and has the consent of the Debtors' most vocal stakeholders | • **Contractual disarmament**—agreement of PSA parties to refrain from litigating claims against TCEH firsts and support TCEH first lien releases in Merger plan or alternative plan<br>• Entitlement to **100% of any recovery under $700 million** TCEH settlement claim under alternative plan to the extent the Court allows the claim | • **Support for merger plan**—opportunity to seek confirmation of merger plan and approval of the PUCT and IRS rulings for the REIT conversion<br>• **Agreed $550 million** required minimum recovery under alternative plan (subject to certain reductions) | • **Contractual disarmament**—agreement of PSA parties to refrain from litigating inter-Debtor claims against the E-side and support releases in plan or alternative plan<br>• **Opportunity to receive payment in full in cash** of all allowed claims if the Merger is consummated | • **Contractual disarmament**—agreement of PSA parties to refrain from litigating claims against sponsors and support sponsor releases in Merger plan or alternative plan |

- **Upon approval of settlement agreement (by January 2016)**, the parties receive:

| Debtors | TCEH Firsts | TCEH Unsecureds | EFH/EFIH Creditors | Sponsors |
|---|---|---|---|---|
| • **Full disarmament**—releases of inter-Debtor and legacy claims under Court order | • **Full disarmament**—releases of claims against TCEH first liens under Court order<br>• **Allowance of $700 million** TCEH settlement claim | • **Carveout** from TCEH first lien collateral for $550 million required minimum recovery under alternative plan<br>  • **Reimbursement** of professional fees (max. $45 million for fees incurred through 6/30) | • **Full disarmament**—releases of inter-Debtor and legacy claims against the E-side under Court order | • **Full disarmament**—releases of claims against sponsors under Court order<br>• **Reimbursement** of professional fees up to $15 million upon effectiveness of the plan |

13

EFH06002911

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

# Milestones and Termination Dates

**Primary Plan Support Obligation Milestones**
The failure of any of these three milestones results in the termination of the PSA parties'
obligation to *support the Merger*. It does not result in termination of the PSA itself:
the obligations of the PSA parties with respect to *the alternative plan* persists.

**11/15/2015**
*Disclosure Statement
Ruling Milestone*
- Subject to 30-day extension
  by Investors with consent of
  TCEH creditors' committee
- Extension results in $50 million
  reduction in $550 million
  required minimum treatment

**1/15/2016**
*Confirmation Ruling Milestone*
- Subject to automatic 30-day
  extension if disclosure statement
  milestone extended
- Otherwise, subject to 30-day extension
  by the Investors with the committee's
  consent and $50 million reduction

**4/30/2016**
*Merger Initial Outside Date*
- Subject to two 30-day PUCT regulatory
  extensions with $50 million reduction
  each
- Subject to August 31, 2016 extension if all
  conditions other than certain T-side
  regulatory conditions (including NRC and
  FERC approvals) are satisfied

**8/31/2015**
*Signature Thresholds*
- PSA becomes terminable if not signed by this date by: (a) at least
  50.1% by amount of TCEH first lien and second lien noteholders,
  (b) at least 66.67% by amount of TCEH unsecured noteholders, and
  (c) the TCEH first lien agent
- After earlier of entry of PSA approval order or disclosure statement
  order, PSA no longer terminable on this basis

**9/30/2015**
*PSA Approval Order*
PSA becomes terminable
before entry of PSA approval
order if order not entered
by this date

**Regulatory Approvals**
Oncor must file the E-side
regulatory approval applications
within 45 days after the Debtors
sign the merger agreement.
Regulatory approvals could take
between 6 to 9 months after filing
of the applications, which may
cause expiration of the outside
date.

**PSA Termination Events**
Unlike the milestones set forth above, failure to meet these deadlines results in the PSA becoming
terminable, including the parties' obligations to support the Merger plan, an alternative plan, or any
releases. The PSA also becomes terminable before the earlier of entry of PSA approval order or disclosure
statement order if the Oncor side letter is not executed by the earlier of 15 business days after signing or
the disclosure statement hearing.

14

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Existing and Illustrative Hearing Dates

- To implement the approvals required by the PSA milestones, the Debtors have scheduled or intend to request the following Court dates.  This schedule may face significant E-side creditor opposition, is subject to the Court's availability, and may ultimately be lengthened.

| Date | Hearing |
|------|---------|
| August 11, 2015 | • Existing omnibus hearing<br>• Debtors to **provide an update** regarding transaction and settlement |
| August 18, 2015 | • Existing hearing date<br>• Request Court **approval of the following schedule** |
| September 17, 2015 | • Projected new hearing date for:<br>  • **disclosure statement approval**; and<br>  • **PSA approval** |
| Late October - November | • Projected new hearing dates for:<br>  • **global settlement approval**; and<br>  • **confirmation of Merger plan** |

15

Highly Confidential

EFH06002913

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

## Bankruptcy Court Approval Risks

- The Court could decline to approve the Merger, the settlement, and their related components, including confirmation of the plan.  Other risks, including regulatory, tax, and termination risk, were discussed in detail at the July 30 Board meeting and are summarized at the conclusion of this presentation.

- **Settlement Order.**  Regarding the settlement, parties may object to the releases contained in the settlement agreement and order.  In particular, the EFH creditors' committee has at times sought standing to prosecute certain of the Debtor claims that would be released under the settlement order.  Redacted For Privilege

# Redacted For Privilege

- **Merger Plan.**  With respect to confirmation of the plan, parties may argue, among other things, that the Merger does not satisfy the "feasibility" requirement of confirmation, in particular due to the REIT conditionality and large cash commitment associated with the transaction.  **Redacted For Privilege**
**Redacted For Privilege**

16

EFH06002914

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

## Bankruptcy Court Approval Risks (cont'd)

- **Stakeholder Support.**

- The Merger has the support of key T-side stakeholders, including the TCEH first lien group, the TCEH second lien group, the TCEH unsecured group, and the TCEH creditors' committee.  In particular, TCEH first lien group's support is critical to confirmation of a plan.

- Although E-side stakeholders may oppose the transaction, the fact that the transaction would pay them in full in cash, and that they have consistently been unable to agree on an alternative, should mitigate their opposition.

- Stakeholders that may oppose the transaction include, among others:
  - the EFH creditors' committee;
  - the EFIH unsecured group;
  - Fidelity; and
  - non-settling TCEH creditors.

17

EFH06002915

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

# III.  Resolution of Open Issues

Highly Confidential

EFH06002916

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Resolution of Open Issues

| Provision | Original Issue | Resolution |
|---|---|---|
| Disarmament | **Debtor Position:**  Because the Merger is effectively structured as an option, and the Investors may pass on that option, the Debtors sought to ensure that there is an alternative path.  To that end, the Debtors original position was that there should be an automatic "toggle" to a pre-confirmed alternative plan.   The Debtors ultimately took the position that there should be complete and permanent disarmament.<br><br>**Creditor Position:**  The TCEH junior creditors have long resisted both the toggle and disarmament. | As discussed above and at previous Board meetings, the parties agreed to contractual disarmament at the PSA phase, and full disarmament at the settlement agreement approval phase. |
| Severability | **Creditor Position:**  The creditors sought to have two settlement agreements:  one settling claims against the TCEH first liens and one settling the other claims (i.e., inter-Debtor claims and claims against the sponsors and D&Os).  The creditors took the position that the settlement agreements and plan/PSA should not be conditioned on one another.<br><br>**Debtor Position:**  The Debtors' original position was that there should be one settlement agreement and that the plan, PSA, and settlement agreement should be conditioned on approval of each of the other documents. | The PSA is not conditioned on entry of the settlement order, but the plan is.  Moreover, there is only one settlement agreement, not two. |

19

Highly Confidential

EFH06002917

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Resolution of Open Issues (cont'd)

| Provision | Original Issue | Resolution |
|---|---|---|
| Dual Plan / Confirmation Schedule | **Debtor Position:**   The Debtors originally took the position that the Debtors should not be required to remove the "standalone scenario" from the dual-path plan until approval of the disclosure statement.<br><br>**Creditor Position:**  The creditors' position was that the standalone scenario should be removed at signing. | The compromise was that the Debtors would remove the standalone scenario from the dual-path plan at signing, but all parties to the PSA agree to support the Debtors' 90-day confirmation schedule for an alternative plan, including if the PSA terminates. |
| Head Start | **Debtor Position:**  The Debtors originally sought to include a provision in the PSA that would allow them to file (rather than only enter into agreements with respect to) an alternative plan before termination of the obligation to support the Merger plan.<br><br>**Creditor Position:**  The TCEH first liens viewed this as an attempt at additional exclusivity and a nonstarter.  The TCEH unsecureds likewise believed it likely to interfere with regulatory approval and therefore a nonstarter. | The PSA does not contain a head start construct, which the Debtors traded for other favorable provisions. |
| PCRBs | **Creditor Position:**  The TCEH junior creditors requested that the benefit of the TCEH first lien deficiency claim waiver would go to all TCEH unsecured creditors other than the PCRBs.<br><br>**Debtor Position:**  The Debtors resisted the exclusion of the PCRBs from the benefit of the waiver. | The compromise is that, although the plan provides for the deficiency waiver, it is qualified: "unless otherwise ordered by the Bankruptcy Court."  This means that, if the Court declines to approve exclusion of the PCRBs from the waiver, the Debtors need not negotiate an amendment to the plan with the PSA parties. |

20

Highly Confidential

EFH06002918

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

# Resolution of Open Issues (cont'd)

| Provision | Original Issue | Resolution |
|---|---|---|
| **Professional Fees** | **Creditor Position:** The creditor parties have sought reimbursement of fees on a monthly basis, and the TCEH unsecured group sought an initial one-time payment of $35 million from EFH whether or not the Merger closes.<br><br>**Debtor Position:** Although fee provisions are standard in restructuring documents, the Debtors heavily negotiated these provisions. | Although the fee provisions are complex, fees generally will be paid once upon entry of the settlement order (i.e., amounts incurred through that date), and the remainder upon effectiveness of the plan (i.e., amounts incurred from entry of the settlement order through the plan effective date).<br><br>Under the settlement agreement, TCEH will pay the fees of (a) the members of the TCEH first lien group (which TCEH already does under the cash collateral order) and, (b) limited to $45 million with respect to fees incurred through June 30, 2015, the TCEH unsecured and second lien trustees and ad hoc groups (but not the individual members of such groups). Upon effectiveness of the plan, EFH will reimburse TCEH for these fees and pay up to $15 million to Texas Energy Future Holdings Limited Partnership for reimbursement of professional fees and expenses.<br><br>The plan provides that the EFH Debtors will pay, on the plan effective date, the reasonable fees and expenses of the Investors and the TCEH unsecured and second lien trustees and ad hoc groups incurred through the plan effective date.<br><br>The fees of Hunt and the Investors related to the Merger and financing transaction will be paid through the merger and backstop agreement. The Investors have agreed to pay the costs of any TTI enforcement action, and the Debtors are not obligated to reimburse the Investors' fees related to the Oncor restructuring or minority drag-along. |

23

Highly Confidential

EFH06002919

Highly Confidential / Attorney Work Product / Attorney-Client Privileged

## Resolution of Open Issues (cont'd)

| Provision | Original Issue | Resolution |
|---|---|---|
| **"Sore-Loser" Provision** | **Debtor Position:** Hunt should be obligated under the transaction documents not to obstruct an alternative transaction if the Merger does not close.<br><br>**Hunt Position:** Hunt resisted the inclusion of this provision. | The transaction documents contain a heavily-negotiated sore-loser provision that obligates Hunt not to obstruct an alternative transaction, including in the PUCT or bankruptcy court, primarily in the case that EFH/EFIH terminate the Merger after June 30, 2016 pursuant to the drop-dead date provisions or if PUCT approval is not obtained because the Investors refuse conditions imposed by the PUCT.  The provision is subject to carve outs with respect to Hunt's duties to InfraREIT and Sharyland. |
| **TTI Enforcement Action** | **Creditor Position:** The merger agreement would require the Debtors to sue TTI to compel it to sell its minority interest, and the Investors would control the litigation.<br><br>**Debtor Position:** There should be no suit requirement, and the Debtors should control any litigation. | The merger agreement requires the Debtors to file the TTI enforcement action if TTI does not accept the Investors' offer after a 30-day negotiation period, but the Debtors control the litigation with active Investor participation.  The Debtors will support any intervention request by the Investors. |
| **Oncor Side Letter** | Oncor and Oncor Holdings are negotiating a side letter agreement with the Investors that obligates Oncor to cooperate in certain aspects of the Merger.  Material open issues remain regarding the agreement.  Hunt originally maintained that it would not sign any transaction documents until the side letter was complete. | The parties have agreed to sign the documents without the Oncor side letter.  The PSA will terminate if the Oncor side letter is not executed by the earlier of the disclosure statement hearing or 15 business days after signing of the PSA. |

22

*Highly Confidential / Attorney Work Product / Attorney-Client Privileged*

# IV.  Financial Analyses of the Merger Transaction

23

EFH06002921