# EXHIBIT 12

# Excerpts from 9/10/15 Keglevic Dep. Tr.

```
                                              Page 1
 1
 2      UNITED STATES BANKRUPTCY COURT
 3        FOR THE DISTRICT OF DELAWARE
 4   -------------------------------------x
     In Re:
 5
     Energy Future Holdings Corporation, et al.,
 6
               Debtors.
 7
     Chapter 11
 8   Case No. 14-10979
     Jointly Administered
 9
     -------------------------------------x
10
11
12         CONFIDENTIAL
13       DEPOSITION OF PAUL KEGLEVIC
14          New York, New York
15        Thursday, September 10, 2015
16
17
18
19
20
21
22
23
24   Reported by:
     FRANCIS X. FREDERICK, CSR, RPR, RMR
25   JOB NO. 97460
```

```
                                              Page 2
 1
 2
 3
 4
 5         September 10, 2015
 6            10:00 a.m.
 7
 8         CONFIDENTIAL deposition of PAUL
 9   KEGLEVIC, held at the offices of Kirkland
10   & Ellis, 601 Lexington Avenue, New York,
11   New York, pursuant to Notice, before
12   Francis X. Frederick, a Certified
13   Shorthand Reporter, Registered Merit
14   Reporter and Notary Public of the States
15   of New York and New Jersey.
16
17
18
19
20
21
22
23
24
25
```

```
                                              Page 3
 1
 2   A P P E A R A N C E S:
 3
 4      SULLIVAN & CROMWELL
 5      Attorneys for EFH/EFIH Official Committee
 6         125 Broad Street
 7         New York, New York  10004
 8      BY:  BRIAN GLUECKSTEIN, ESQ.
 9           VERONICA IP, ESQ.
10
11      KIRKLAND & ELLIS
12      Attorneys for the Debtor
13         300 North LaSalle
14         Chicago, Illinois 60654
15      BY:  MARK McKANE, ESQ.
16           HOWARD KAPLAN, ESQ.
17           MARC KIESELSTEIN, ESQ.
18           CHAD HUSNICK, ESQ.
19           STEVEN SERAJEDDINI, ESQ.
20
21
22
23
24
25
```

```
                                              Page 4
 1
 2   A P P E A R A N C E S:  (Cont'd.)
 3
 4      NIXON PEABODY
 5      Attorneys for American Stock Transfer as
 6      EFH Indenture Trustee
 7         100 Summer Street
 8         Boston, Massachusetts  02110
 9      BY:  RICHARD PEDONE, ESQ.
10
11      VENABLE
12      Attorneys for PIMCO
13         1270 Avenue of the Americas
14         New York, New York  10020
15      BY:  JEFFREY SABIN, ESQ.
16
17      SHEARMAN & STERLING
18      Attorneys for EFIH DIP Agent, Deutsche
19         599 Lexington Avenue
20         New York, New York  10022
21      BY:  NED SCHODEK, ESQ.
22
23
24
25
```

Page 25

1     P. KEGLEVIC - CONFIDENTIAL
2  correct?
3        MR. McKANE:  Note my objection.
4     You misstated his testimony.  Maybe not
5     intentionally, but you did.
6     A.   If I could say what I heard and
7  then I'll let counsel decide if this corrects
8  the issue or there's another one he heard.
9     Q.   That's fine.  Feel free to --
10    A.   We do have -- I think the way you
11 stated it -- I'll just state it the way I'm
12 comfortable with which is we do have the
13 ability to pursue other plans.  The other
14 plans must contain the alternative
15 restructuring terms.  I think you said we
16 don't have the ability to pursue other plans
17 and we have alternative restructuring terms.
18 But I think that's an important distinction
19 because, you know, we think there's a lot of
20 value in the alternative restructuring
21 approach.  To keep T side disarmament and to
22 have the drag right we think are very
23 important and we think incorporation to those
24 in an alternative plan will meet our
25 objectives ultimately of getting a fresh start

Page 26

1     P. KEGLEVIC - CONFIDENTIAL
2  and getting the exit from bankruptcy even
3  under an alternative approach in an efficient
4  and effective manner.
5     Q.   Mr. Keglevic, in agreeing in the
6  PSA to pursue the current plan, why in the
7  debtors' business judgment did you determine
8  to sign the PSA to pursue this plan as opposed
9  to an alternative plan?
10    A.   Well, we considered alternatives.
11 And we believe that this to be the best path
12 for us.  If you recall, when we filed with the
13 court our plan of restructuring, we had the
14 opportunity to get bids from outside third
15 parties for the company for the encore -- for
16 the east side of the house.  Based on the
17 results of those bids, we did not believe --
18 and I don't know whether in this forum we can
19 talk about numbers or not, but the bids were
20 not sufficient and caused us concerns about
21 impairment to the E side of the house that we
22 did not believe that those would have been --
23 the debt path would have been one and, in
24 fact, we got input from this that the E side
25 creditors would support.

Page 27

1     P. KEGLEVIC - CONFIDENTIAL
2        Secondly, we worked diligently and
3  often -- in fact, the last meeting I recall
4  was in this room -- with the EFHI SECOND
5  LIENS, the EFHI PIK and the EFH Fidelity
6  constituents to work on a -- what we are
7  calling an E side plan and they were unable to
8  come to an agreement on any plan that we could
9  pursue.  Obviously, we would have then, if
10 they -- we had an E side plan agreed to, we
11 would have to get TCEH and -- or at least the
12 first liens hopefully on board with that type
13 of a plan.  And there were dialogue between
14 the TCH First and the Fidelity group and the
15 EFIH group.  There was also dialogue between
16 the TCH unsecured group and the plan that we
17 ultimately adopted and the EFH Fidelity group
18 and the EFIH PIK group.
19       So everyone was talking with
20 everyone, but the bid procedures came up with
21 an adequate amount and we were concerned about
22 impairment and support.  The E side was unable
23 to come up with a plan that there was any
24 consensus on.  And, therefore, this plan gave
25 us the most consensus and as we've said

Page 28

1     P. KEGLEVIC - CONFIDENTIAL
2  consensus we believe is very valuable and
3  important in this case.  And not only did it
4  give us consensus, it gave the opportunity to
5  pay the E side in par, which none of the other
6  plans in any of the constructs that we pursued
7  did.  So even the E side plan itself was not
8  ever formulated in a way that it would be a
9  par plan based on the dialogues that we had.
10       So it gave the best result to the
11 E side and obviously this plan has consensus
12 of the T side.  So when you put those together
13 and the benefits I talked before, we thought
14 this was a fairly easy choice, one of the
15 easiest choices we had in this case as to why
16 we pursued this one.
17    Q.   And so at the time you made the
18 decision to pursue this plan, as I understand
19 your testimony, Mr. Keglevic, you believed
20 there was no other plan available to the
21 estates that was actionable at all; is that
22 correct?
23    A.   Yeah.  There was no -- there were
24 plans proposed that were single creditor
25 plans.