UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

In re:                                  :
                                        :    Chapter 11
ENERGY FUTURE HOLDINGS                  :
CORP., et al.,                          :    Case No. 14-10979(CSS)
                                        :
       Debtors.                         :    (Joint Administration
_____:         Requested)

United States Bankruptcy Court

824 North Market Street

Wilmington, Delaware

October 26, 2015

10:00 AM - 11:59 AM

B E F O R E :

HON CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE

ECR OPERATOR:  LESLIE MURIN

1  HEARING re Interim Fee Applications
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Sonya Ledanski Hyde

```
 1  A P P E A R A N C E S :
 2
 3  GODFREY & KAHN, S.C,
 4       Attorneys for Fee Committee
 5
 6  BY:   KATHERINE STADLER
 7        BRADY WILLIAMSON
 8
 9  GITLIN & CO., LLC
10       Chair, Fee committee
11
12  BY:   RICHARD GITLIN
13
14  GOLDMAN & SPENCE
15       Attorneys for Fee Committee
16
17  BY:   STEPHEN A. SPENCE
18
19  OFFICE OF THE UNITED STATES TRUSTEE
20       U.S. Trustee
21
22  BY:   RICHARD L. SCHEPACARTER
23
24
25
```

```
 1  KIRKLAND & ELLIS
 2       Attorneys for debtor
 3
 4  BY:   CHAD J. HUSNICK
 5
 6  O'KELLY ERNST & BIELLI, LLC.
 7       Attorneys for EFH Corp.
 8
 9  BY:   DAVID M KLAUDER
10
11  POTTER ANDERSON & CORROON LLP
12       Attorneys for Deutsche Bank
13
14  BY:   R. STEPHEN MCNEILL
15
16  MORRISON & FOERSTER
17       Attorneys for TCEH Committee
18
19  BY:   TODD GOREN
20
21  RICHARDS, LAYTON & FINGER
22       Attorneys for Debtor
23
24  BY:   DANIEL J. DEFRANCHESCI
25       JASON A. MADRON
```

```
 1   POLSINELLI
 2        Attorneys for TCEH Committee
 3
 4   BY:   JUSTIN EDELSON
 5
 6   KLEHR HARRISON
 7        Attorneys for UMB Bank, N.A.
 8
 9   BY:   RAYMOND HOWARD LEMISCH
10
11   APPEARING TELEPHONICALLY:
12   SCOTT L. ALBERINO
13   ARLENE R. ALVES
14   CAMILLE BENT
15   MATTHEW G. BOUSLOG
16   KENT COLLIER
17   STACEY DORE
18   MEGGIE GILSTRAP
19   MARK F. HEBBEIN
20   NATASHA HWANGPO
21   HAROLD KAPLAN
22   MATTHEW W. KINSKEY
23   STUART KOVENSKY
24   ALEXA J. KRANZLEY
25   DEMETRA L. LIGGINS
```

1  PAMELA S. MORIN
2  RICHARD PEDONE
3  ABID QURESHI
4  NATALIE D. RAMSEY
5  RACHAEL RINGER
6  TODD ROSEN
7  NED S. SCHODEK
8  ANDREA B. SCHWARTZ
9  AMER TIWANA
10 TAMARA VAN HEEL
11 RYAN A. WAGNER
12 THOMAS WALPER
13 BRADY C. WILLIAMSON
14 APARNA YENAMANDRA
15 PETER YOUNG
16
17
18
19
20
21
22
23
24
25

1                P R O C E E D I N G S

2             CLERK:  All rise.

3             THE COURT:  Please be seated.  I apologize for the
4    delay.  It's Monday morning.  Doing the best I can.

5             MR. SPENCE:  Understood, Your Honor.  Stephen A.
6    Spence of Phillips, Goldman & Spence.  I'm local counsel
7    here for fee committee.  Katherine Stadler, counsel together
8    with me, will be handling this morning's hearing.

9             THE COURT:  Okay.  Thank you. Good morning

10            MS. STADLER:  Thank you, Judge.  Good morning.
11   We're here today seeking the Court's approval of 30 interim
12   fee applications, primarily for professional services
13   rendered between January 1st and April 30th of this year.
14   That's the third interim fee period of the case.

15            The fees total roughly 86 million.  The expenses
16   total roughly 4.7 million.  With the adjustments outlined in
17   the status report filed last week, the fee committee has
18   concluded that the fees requested are reasonable and
19   necessary as those terms are used in the Bankruptcy Code and
20   authorities interpreting it.

21            The fee committee therefore respectfully asks the
22   Court to approve the third interim fees as adjusted and
23   outlined on Exhibit 8 to the Summary Report.  With that,
24   Your Honor, I'm happy to address any questions you may have
25   about the fee committee process and its report.

1                THE COURT:  I don't have any questions.  First of
2    all, I continue to thank the fee committee for its service,
3    well, to everyone, but particularly for its service to the
4    Court.  I mean, it's a staggering amount of fees to try to
5    get your head around.  And I know you're working very, very
6    hard.
7                And the reductions, I think, are -- they're not
8    huge, which is good, because it means professionals are
9    acting accordingly.  It's also going in the right direction,
10   down, which means people are adjusting their billing
11   practices and behavior to stay in compliance with the
12   criteria the fee committee's put in place.  So, that's
13   really good to see.
14               I did actually have a question about some missing
15   or -- what you might call missing fee applications, and just
16   wonder what -- if you know why.  They're all for the debtors
17   that I noticed, which was -- I didn't see a fee application
18   for Sidley, Richards, or Epiq.  Is there any explanation for
19   what --
20               MS. STADLER:  I can address those, yes.
21               THE COURT:  Thank you.
22               MS. STADLER:  Sidley & Austin has a second and
23   third interim fee application on file.  Those were filed
24   after the Court approved Sidley's first interim fee
25   application.

1               THE COURT:  Right.

2               MS. STADLER:  Back in June.  The fee committee

3    reviewed both the second and third interim fee applications

4    of Sidley and issued letter reports to Sidley on those.

5    Some of the issues raised in the letter report caused Sidley

6    to ask for some time to process internally and revert to the

7    fee committee with a substantive response.  And that was not

8    forthcoming prior to this hearing.

9               As a result Sidley agreed to have their second and

10   third interim applications taken off the agenda for today,

11   and gave the fee committee an extension of time to object to

12   the fee application should it be necessary.

13              THE COURT:  Okay.

14              MS. STADLER:  It's our hope that that application

15   will be resolved consensually in the very near future.

16              Jason Madron is here, and I think he can probably

17   address Richards Layton better than I can.  So, I'll let him

18   do that, if that's okay.

19              THE COURT:  OF course.

20              MS. STADLER:  The other one you mentioned was

21   Epiq.  Epiq has, of course, the retained professional fees,

22   and then it has some administrative fees that it applies for

23   separately.  It has generally lagged in its application time

24   for the portion of the fees that are governed by the fee

25   committee, or subject to the fee committee review.

1           THE COURT:  Right.

2           MS. STADLER:  And in this particular instance,

3   their second interim fee application, which was filed, did

4   not come with supporting data.  The fee committee has some

5   specific criteria for the submission of electronic data,

6   which allows us to evaluate all of the fees efficiently.

7   And Epiq was late in submitting its electronic data.

8           And therefore, that one wasn't ready for reporting

9   to the committee and then reporting to the Court for this

10  fee period.  We hope to get them caught up in the next fee

11  period as well.

12          THE COURT:  Well, I think they -- that puts them

13  two periods behind.

14          MS. STADLER:  Correct.

15          THE COURT:  All right.  Part of me says that's

16  their money they're leaving on the table, so I don't really

17  care.  And part of me says I'd like people to continue to

18  sort of stay up so we're not -- so I don't have practices

19  that have been going on for a year that suddenly become

20  problematic.  So, please encourage them to stay on target.

21          MS. STADLER:  We will do so.

22          THE COURT:  Get caught up for when we're back here

23  again in four months or so.  Okay.  Mr. Madron, you want to

24  -- I'm not sure I've gotten one from Richards at all.

25          MR. MADRON:  Good morning, Your Honor.  For the

1    record, Jason Madron of Richards, Layton & Finger.

2              Your Honor, with respect to our fees, as Your

3    Honor may recall, our firm's retention was slightly delayed

4    behind some of the other professionals.  Most of the

5    debtors' Court professionals, including Kirkland, were

6    retained in September of 2014.  Our retention followed

7    roughly a month or so later.  So, it really was the genesis

8    of us being a little bit behind the entire fee application

9    process.

10             With respect to monthly fee applications, we are

11   current through July of 2015.  I anticipate that we'll

12   likely be filing our August monthly fee application in the

13   coming several days.

14             With respect to the interim fee applications, our

15   first interim fee period -- excuse me, Your Honor.  Our

16   first interim period fee application, I believe, was filed

17   on June the 2nd of 2015.  We did receive a comprehensive

18   report back from the fee committee through fee committee's

19   counsel in July.  We are in the process of preparing written

20   responses to that comprehensive report, and I anticipate

21   that we'll get that out in the near term.

22             Our second interim period fee application was

23   filed earlier this month.  And we have yet to engage the fee

24   committee.  We haven't received any feedback, certainly not

25   to the fee committee's discredit, but we just haven't

1  received any feedback from them yet with respect to that.
2  But that was filed.
3           Our third interim period fee application is in
4  process.  And I anticipate that that will be filed in the
5  coming week or two.
6           With respect to the first interim application,
7  Your Honor, that we owe the fee committee responses to, we
8  did receive feedback from Mr. Schepacarter's office
9  concerning compliance with the large case guidelines,
10 effective November 2013, and we're pleased to inform the
11 Court that we were generally compliant with those
12 guidelines.  I believe there was only one minor issue that
13 Mr. Schepacarter's office identified.  And we have rectified
14 that, in connection with our second filing that was made
15 earlier this month.
16          So, we are making progress.  I anticipate that the
17 next fee hearing, which I believe the fee committee
18 anticipates scheduling for February of 2016, that we will be
19 before Your Honor with at least our first, second, and third
20 interim applications at that time.
21          THE COURT:  Okay.  Thank you.
22          MR. MADRON:  Thank you, Your Honor.
23          THE COURT:  Are there any others, other than the
24 ones that I identified, that aren't on the consensual fee
25 order but are still sort of working their way through the

1  system?
2            MS. STADLER:  Yes.  FTI, which is a T-side
3  creditors committee financial advisor.
4            THE COURT:  Mm hmm.
5            MS. STADLER:  You may recall that that first
6  interim application of FTI was not heard and approved until
7  late in the process.  As a result, we agreed with FTI to
8  hold off on the analysis of its subsequent interim fee
9  applications.  So, we have a report prepared for them.  And
10 we'll hope to get them caught up in the next fee period as
11 well.
12           THE COURT:  Right.  So, what's on here is -- I
13 have a note here.  Yeah, what's on here for today is their
14 second period?
15           MS. STADLER:  That's correct.
16           THE COURT:  Okay, but not their third.  All right.
17 Anyone else?  Good.  Silence is golden.  I like that.
18           MS. STADLER:  Oh, one just occurred to me, Judge,
19 that I forgot to mention and you didn't raise.  Charles
20 River Associates is a consultant for the T-side committee as
21 well.  They submitted a fee application; I don't think
22 they're frequent Bankruptcy Court participants.  And have --
23 we have had issues getting supporting data from them as
24 well.
25           So, that one is substantially delayed.  We have

1    been in touch with that professional, we have been in touch
2    with the committee's professionals, in an effort to try to
3    shake that data loose, but, to date, to no avail.
4              THE COURT:  Okay.  Are they getting paid on a
5    monthly basis?
6              MS. STADLER:  I believe so, yes.
7              THE COURT:  Yeah.  Okay.  Well, people need to,
8    you know, stay on target with the interim process as well.
9    Again, I don't want too much lagging, especially if it's an
10   issue of lack of detail, because it may be appropriate, if
11   they're not forthcoming with the lack -- because of lack of
12   detail, to stop paying them on a monthly basis.  We need to
13   make sure people are in compliance, even on a monthly basis,
14   with the requirements.
15             So, hopefully that will resolve itself.  But if it
16   doesn't, let me know.  And I may take action to remove them
17   from the monthly list.
18             MS. STADLER:  Okay.  Thank you, Judge.
19             THE COURT:  All right. I have no further
20   questions.  Does anyone wish to be heard?
21             MS. STADLER:  I believe Mr. Husnick has some
22   comments to make on behalf of the debtor.  No?
23             MR. HUSNICK:  After Your Honor rules.
24             THE COURT:  Oh, okay.
25             MR. HUSNICK:  (indiscernible)

1           MS. STADLER:  Oh, sorry.  Thank you.
2           THE COURT:  Do you have an order anyone wants to
3    hand up?
4           MS. STADLER:  I do.  May I approach?
5           THE COURT:  Yes.  I see we've tapped the $200
6    million mark, so.  A lot to do in this case.
7           There was -- in connection with the fee
8    committee's applications, which I looked at, obviously,
9    separately and in more detail, frankly, than the others,
10   since there's no fee committee looking at the fee committee,
11   I -- they were appropriate.  I had no issue with them.
12          There were two -- and I'm not going to reduce this
13   in any way, but, for Godfrey & Kahn, there were two meal
14   expenses where the number of people dining wasn't specified,
15   which, you know, we like you to do, please.  So just keep an
16   eye on that going forward.  We have now spent -- me
17   discussing it -- more money than was involved by having the
18   professionals listen to that.  So, it certainly wasn't
19   anything significant.  But keep an eye on that.
20          But I had no issues with the fee committee
21   professional numbers, and glad to see that they are costing
22   a good deal less than they're saving the estate.  So, it's a
23   positive situation.  That's it for that.  Mr. Husnick?
24          MR. HUSNICK:  Thank you, Your Honor.  And I'll
25   just take a moment to thank the Court, the fee committee,

1     and the U.S. Trustee, as always, engaged in constructive

2     dialogue with -- certainly with the debtors' professionals

3     regarding the fees, and allowed for -- excuse me -- an

4     uncontested hearing this morning.

5                 Your Honor, before we adjourn, I wanted to give

6     the Court a brief update on the status of the settlement

7     negotiations that you heard about briefly last week.  Your

8     Honor, you heard from Mr. Shore that the plan sponsors had

9     reached an agreement with certain holders of the EFIH picks

10    on the terms of a settlement agreement that would resolve

11    those holders' post-petition interest in make-whole claims.

12                Mr. McGaan informed Your Honor that the debtors

13    were still reviewing the papers, and that the terms of the

14    deal, you know -- and the terms of the deal that had been

15    announced that morning.  That afternoon, the TCH ad hoc

16    group did file a notice of settlement on the docket that

17    publicly disclose the terms that Mr. Shore had summarized

18    for the Court that morning.

19                Since that time, the debtors and their advisors

20    have been working with the parties in interest to understand

21    the deal and negotiate documentation of that deal.  We have

22    made significant progress, but are not yet finished with

23    those discussions.  As such, I wanted to just inform Your

24    Honor we will keep Chambers apprised, real time, of

25    developments over the next 24 to 36 hours on the settlement

```
 1   front.
 2              THE COURT:  All right.  Thank you.  Just so we're
 3   clear, we're going forward with the argument on those issues
 4   -- well, on the post-petition interest issue, on the 28th.
 5              MR. HUSNICK:  Yes. Your Honor.
 6              THE COURT:  And it's my continued intention to
 7   rule, unless told otherwise, on the make-whole claims and
 8   the post-petition interest issue before we start
 9   confirmation next week.
10              MR. HUSNICK:  Understood, Your Honor.  That's
11   correct.
12              THE COURT:  Okay.  Very good.  Thank you.
13   Anything else?
14              MR. HUSNICK:  That's it.  Thank you.
15              THE COURT:  All right.  Thank you.  We're
16   adjourned.  See you on Wednesday.
17   MR. MADRON:   Thank you.
18                          * * * * *
19
20
21
22
23
24
25
```

Page 18

1         C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya Ledanski Hyde
     Digitally signed by Sonya Ledanski Hyde
     DN: cn=Sonya Ledanski Hyde, o, ou, email=digital1@veritext.com, c=US
     Date: 2015.10.26 14:51:53 -04'00'

7

8    Sonya Ledanski Hyde

...

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 26, 2015