EXHIBIT A

http://www.salesforce.com/company/msa.jsp

# Master Subscription Agreement

THIS MASTER SUBSCRIPTION AGREEMENT ("AGREEMENT") GOVERNS YOUR 30-DAY FREE TRIAL OF THE SERVICES.

IF YOU PURCHASE OUR SERVICES, THIS AGREEMENT WILL ALSO GOVERN YOUR PURCHASE AND ONGOING USE OF THOSE SERVICES.

BY ACCEPTING THIS AGREEMENT, EITHER BY CLICKING A BOX INDICATING YOUR ACCEPTANCE OR BY EXECUTING AN ORDER FORM THAT REFERENCES THIS AGREEMENT, YOU AGREE TO THE TERMS OF THIS AGREEMENT. IF YOU ARE ENTERING INTO THIS AGREEMENT ON BEHALF OF A COMPANY OR OTHER LEGAL ENTITY, YOU REPRESENT THAT YOU HAVE THE AUTHORITY TO BIND SUCH ENTITY AND ITS AFFILIATES TO THESE TERMS AND CONDITIONS, IN WHICH CASE THE TERMS "YOU" OR "YOUR" SHALL REFER TO SUCH ENTITY AND ITS AFFILIATES. IF YOU DO NOT HAVE SUCH AUTHORITY, OR IF YOU DO NOT AGREE WITH THESE TERMS AND CONDITIONS, YOU MUST NOT ACCEPT THIS AGREEMENT AND MAY NOT USE THE SERVICES.

You may not access the Services if You are Our direct competitor, except with Our prior written consent. In addition, You may not access the Services for purposes of monitoring their availability, performance or functionality, or for any other benchmarking or competitive purposes.

This Agreement was last updated on January 31, 2009. It is effective between You and Us as of the date of You accepting this Agreement.

**Table of Contents**

1. Definitions
2. 30-Day Free Trial
3. Purchased Services
4. Use of the Services
5. Third-Party Providers
6. Fees and Payment for Purchased Services
7. Proprietary Rights
8. Confidentiality
9. Warranties and Disclaimers
10. Mutual Indemnification
11. Limitation of Liability
12. Term and Termination
13. Who You Are Contracting With, Notices, Governing Law and Jurisdiction
14. General Provisions

## 1. DEFINITIONS

"**Affiliate**" means any entity which directly or indirectly controls, is controlled by, or is under common control with the subject entity. "Control," for purposes of this definition, means direct or indirect ownership or control of more than 50% of the voting interests of the subject entity.

"**AppExchange**" means the online directory of applications that interoperate with the Services, located at http://www.salesforce.com/appexchange or at any successor websites.

"**Malicious Code**" means viruses, worms, time bombs, Trojan horses and other harmful or malicious code, files, scripts, agents or programs.

"**Order Form**" means the ordering documents for purchases hereunder, including addenda thereto, that are entered into between You and Us from time to time. Order Forms shall be deemed incorporated herein by reference.

"**Purchased Services**" means Services that You or Your Affiliates purchase under an Order Form, as distinguished from those provided pursuant to a 30-day free trial.

"**Services**" means the online, Web-based applications and platform provided by Us via http://www.salesforce.com and/or other designated websites as described in the User Guide, that are ordered by You as part of a 30-day free trial or under an Order Form, including associated offline components but excluding Third Party Applications.

"**Third-Party Applications**" means online, Web-based applications and offline software products that are provided by third parties, interoperate with the Services, and are identified as third-party applications, including but not limited to those listed on the AppExchange.

"**User Guide**" means the online user guide for the Services, accessible via http://www.salesforce.com, as updated from time to time. You acknowledge that You have had the opportunity to review the User Guide during the 30-day free trial described in Section 2 (30-Day Free Trial) below.

"**Users**" means individuals who are authorized by You to use the Services, for whom subscriptions to a Service have been purchased, and who have been supplied user identifications and passwords by You (or by Us at Your request). Users may include but are not limited to Your employees, consultants, contractors and agents; or third parties with which You transact business.

"**We**," "**Us**" or "**Our**" means the salesforce.com company described in Section 13 (Who You Are Contracting With, Notices, Governing Law and Jurisdiction).

"**You**" or "**Your**" means the company or other legal entity for which you are accepting this Agreement, and Affiliates of that company or entity. "**Your Data**" means all electronic data or information submitted by You to the Purchased Services.

Back to Top

## 2. 30-DAY FREE TRIAL

We will make one or more Services available to You on a trial basis free of charge until the earlier of (a) the thirtieth day after Your acceptance of this Agreement or (b) the start date of any Purchased Services ordered by You. Additional trial terms and conditions may appear on the trial registration web page.  Any such additional terms and conditions are incorporated into this Agreement by reference and are legally binding.

**ANY DATA YOU ENTER INTO THE SERVICES, AND ANY CUSTOMIZATIONS MADE TO THE SERVICES BY OR FOR YOU, DURING YOUR 30-DAY FREE TRIAL WILL BE PERMANENTLY LOST UNLESS YOU PURCHASE A SUBSCRIPTION TO THE SAME SERVICES AS THOSE COVERED BY THE TRIAL, PURCHASE UPGRADED SERVICES, OR EXPORT SUCH DATA, BEFORE THE END OF THE 30-DAY TRIAL PERIOD. YOU CANNOT TRANSFER DATA ENTERED OR CUSTOMIZATIONS MADE DURING THE 30-DAY FREE TRIAL TO A SERVICE THAT WOULD BE A**

**DOWNGRADE FROM THAT COVERED BY THE TRIAL (E.G., FROM ENTERPRISE EDITION TO PROFESSIONAL EDITION OR FROM PROFESSIONAL EDITION TO GROUP EDITION); THEREFORE, IF YOU PURCHASE A SERVICE THAT WOULD BE A DOWNGRADE FROM THAT COVERED BY THE TRIAL, YOU MUST EXPORT YOUR DATA BEFORE THE END OF THE 30-DAY TRIAL PERIOD OR YOUR DATA WILL BE PERMANENTLY LOST.**

NOTWITHSTANDING SECTION 9 (WARRANTIES AND DISCLAIMERS), DURING THE 30-DAY FREE TRIAL THE SERVICES ARE PROVIDED "AS-IS" WITHOUT ANY WARRANTY.

Please review the User Guide during the trial period so that You become familiar with the features and functions of the Services before You make Your purchase.

Back to Top

## 3. PURCHASED SERVICES

**3.1. Provision of Purchased Services.** Provision of Purchased Services. We shall make the Purchased Services available to You pursuant to this Agreement and the relevant Order Forms during a subscription term. You agree that Your purchases hereunder are neither contingent on the delivery of any future functionality or features nor dependent on any oral or written public comments made by Us regarding future functionality or features.

**3.2. User Subscriptions.** Unless otherwise specified in the applicable Order Form, (i) Services are purchased as User subscriptions and may be accessed by no more than the specified number of Users, (ii) additional User subscriptions may be added during the subscription term at the same pricing as that for the pre-existing subscriptions, prorated for the remainder of the subscription term in effect at the time the additional User subscriptions are added, and (iii) the added User subscriptions shall terminate on the same date as the pre-existing subscriptions. User subscriptions are for designated Users and cannot be shared or used by more than one User but may be reassigned to new Users replacing former Users who no longer require ongoing use of the Services.

Back to Top

## 4. USE OF THE SERVICES

**4.1 Our Responsibilities.** We shall: (i) provide to You basic support for the Purchased Services at no additional charge, and/or upgraded support if purchased separately, (ii) use commercially reasonable efforts to make the Purchased Services available 24 hours a day, 7 days a week, except for: (a) planned downtime (of which We shall give at least 8 hours notice via the Purchased Services and which We shall schedule to the extent practicable during the weekend hours from 6:00 p.m. Pacific time Friday to 3:00 a.m. Pacific time Monday), or (b) any unavailability caused by circumstances beyond Our reasonable control, including without limitation, acts of God, acts of government, flood, fire, earthquakes, civil unrest, acts of terror, strikes or other labor problems (other than those involving Our employees), or Internet service provider failures or delays, and (iii) provide the Purchased Services only in accordance with applicable laws and government regulations.

**4.2. Your Responsibilities.** You shall (i) be responsible for Users' compliance with this Agreement, (ii) be solely responsible for the accuracy, quality, integrity and legality of Your Data and of the means by which You acquired Your Data, (iii) use commercially reasonable efforts to prevent unauthorized access to or use of the Services, and notify Us promptly of any such unauthorized access or use, and (iv) use the Services only in accordance with the User Guide and applicable laws and government regulations. You shall not (a) make the Services available to anyone other than Users, (b) sell, resell, rent or lease the

Services, (c) use the Services to store or transmit infringing, libelous, or otherwise unlawful or tortious material, or to store or transmit material in violation of third-party privacy rights, (d) use the Services to store or transmit Malicious Code, (e) interfere with or disrupt the integrity or performance of the Services or third-party data contained therein, or (f) attempt to gain unauthorized access to the Services or their related systems or networks.

**4.3. Usage Limitations.** Services may be subject to other limitations, such as, for example, limits on disk storage space, on the number of calls You are permitted to make against Our application programming interface, and, for Services that enable You to provide public websites, on the number of page views by visitors to those websites. Any such limitations are specified in the User Guide. The Services provide real-time information to enable You to monitor Your compliance with such limitations.

Back to Top

## 5. THIRD-PARTY PROVIDERS

**5.1. Acquisition of Third-Party Products and Services.** We may offer Third-Party Applications for sale under Order Forms. Any other acquisition by You of third-party products or services, including but not limited to Third-Party Applications and implementation, customization and other consulting services, and any exchange of data between You and any third-party provider, is solely between You and the applicable third-party provider. We do not warrant or support third-party products or services, whether or not they are designated by Us as "certified" or otherwise, except as specified in an Order Form. No purchase of third-party products or services is required to use the Services.

**5.2. Third-Party Applications and Your Data.** If You install or enable Third-Party Applications for use with Services, You acknowledge that We may allow providers of those Third-Party Applications to access Your Data as required for the interoperation of such Third-Party Applications with the Services. We shall not be responsible for any disclosure, modification or deletion of Your Data resulting from any such access by Third-Party Application providers. The Services shall allow You to restrict such access by restricting Users from installing or enabling such Third-Party Applications for use with the Services.

**5.3. Google Services. Service features that interoperate with Google services depend on the continuing availability of the Google API and program for use with the Services.  If Google Inc. ceases to make the Google API or program available on reasonable terms for the Services, We may cease providing such Service features without entitling You to any refund, credit, or other compensation.**

Back to Top

## 6. FEES AND PAYMENT FOR PURCHASED SERVICES

**6.1. User Fees.** You shall pay all fees specified in all Order Forms hereunder. Except as otherwise specified herein or in an Order Form, (i) fees are quoted and payable in United States dollars (ii) fees are based on services purchased and not actual usage, (iii) payment obligations are non-cancelable and fees paid are non-refundable, and (iv) the number of User subscriptions purchased cannot be decreased during the relevant subscription term stated on the Order Form. User subscription fees are based on monthly periods that begin on the subscription start date and each monthly anniversary thereof; therefore, fees for User subscriptions added in the middle of a monthly period will be charged for that full monthly period and the monthly periods remaining in the subscription term.

**6.2. Invoicing and Payment.** You will provide Us with valid and updated credit card information, or with a valid purchase order or alternative document reasonably acceptable to Us.  If You provide credit

card information to Us, You authorize Us to charge such credit for all Services listed in the Order Form for the initial subscription term and any renewal subscription term(s) as set forth in Section 12.2 (Term of Purchased User Subscriptions).  Such charges shall be made in advance, either annually or in accordance with any different billing frequency stated in the applicable Order Form. If the Order Form specifies that payment will be by a method other than a credit card, We will invoice You in advance and otherwise in accordance with the relevant Order Form. Unless otherwise stated in the Order Form, invoiced charges are due net 30 days from the invoice date. You are responsible for maintaining complete and accurate billing and contact information in the Services.

**6.3. Overdue Charges.** If any charges are not received from You by the due date, then at Our discretion, (a) such charges may accrue late interest at the rate of 1.5% of the outstanding balance per month, or the maximum rate permitted by law, whichever is lower, from the date such payment was due until the date paid, and/or (b) We may condition future subscription renewals and Order Forms on payment terms shorter than those specified in Section 6.2 (Invoicing and Payment).

**6.4. Suspension of Service and Acceleration.** If any amount owing by You under this or any other agreement for Our services is 30 or more days overdue (or 10 or more days overdue in the case of amounts You have authorized Us to charge to Your credit card), We may, without limiting Our other rights and remedies, accelerate Your unpaid fee obligations under such agreements so that all such obligations become immediately due and payable, and suspend Our services to You until such amounts are paid in full.

**6.5. Payment Disputes.** We shall not exercise Our rights under Section 6.3 (Overdue Charges) or 6.4 (Suspension of Service and Acceleration) if the applicable charges are under reasonable and good-faith dispute and You are cooperating diligently to resolve the dispute.

**6.6. Taxes.** Unless otherwise stated, Our fees do not include any taxes, levies, duties or similar governmental assessments of any nature, including but not limited to value-added, sales, use or withholding taxes, assessable by any local, state, provincial, federal or foreign jurisdiction (collectively, "**Taxes**"). You are responsible for paying all Taxes associated with Your purchases hereunder. If We have the legal obligation to pay or collect Taxes for which You are responsible under this paragraph, the appropriate amount shall be invoiced to and paid by You, unless You provide Us with a valid tax exemption certificate authorized by the appropriate taxing authority. For clarity, We are solely responsible for taxes assessable against it based on Our income, property and employees.

Back to Top

# 7. PROPRIETARY RIGHTS

**7.1. Reservation of Rights.** Subject to the limited rights expressly granted hereunder, We reserve all rights, title and interest in and to the Services, including all related intellectual property rights. No rights are granted to You hereunder other than as expressly set forth herein.

**7.2. Restrictions.** You shall not (i) permit any third party to access the Services except as permitted herein or in an Order Form, (ii) create derivate works based on the Services, (iii) copy, frame or mirror any part or content of the Services, other than copying or framing on Your own intranets or otherwise for Your own internal business purposes, (iv) reverse engineer the Services, or (v) access the Services in order to (a) build a competitive product or service, or (b) copy any features, functions or graphics of the Services.

**7.3. Ownership of Your Data.** As between Us and You, You exclusively own all rights, title and interest in and to all of Your Data.

**7.4. Suggestions.** We shall have a royalty-free, worldwide, transferable, sublicenseable, irrevocable, perpetual license to use or incorporate into the Services any suggestions, enhancement requests, recommendations or other feedback provided by You, including Users, relating to the operation of the Services.

**7.5. Federal Government End Use Provisions.** We provide the Services, including related software and technology, for ultimate federal government end use solely in accordance with the following: Government technical data and software rights related to the Services include only those rights customarily provided to the public as defined in this Agreement. This customary commercial license is provided in accordance with FAR 12.211 (Technical Data) and FAR 12.212 (Software) and, for Department of Defense transactions, DFAR 252.227-7015 (Technical Data – Commercial Items) and DFAR 227.7202-3 (Rights in Commercial Computer Software or Computer Software Documentation). If a government agency has a need for rights not conveyed under these terms, it must negotiate with Us to determine if there are acceptable terms for transferring such rights, and a mutually acceptable written addendum specifically conveying such rights must be included in any applicable contract or agreement.

Back to Top

## 8. CONFIDENTIALITY

**8.1. Definition of Confidential Information.** As used herein, " **Confidential Information**" means all confidential information disclosed by a party (" **Disclosing Party**") to the other party (" **Receiving Party**"), whether orally or in writing, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure. Your Confidential Information shall include Your Data; Our Confidential Information shall include the Services; and Confidential Information of each party shall include the terms and conditions of this Agreement and all Order Forms, as well as business and marketing plans, technology and technical information, product plans and designs, and business processes disclosed by such party. However, Confidential Information (other than Your Data) shall not include any information that (i) is or becomes generally known to the public without breach of any obligation owed to the Disclosing Party, (ii) was known to the Receiving Party prior to its disclosure by the Disclosing Party without breach of any obligation owed to the Disclosing Party, (iii) is received from a third party without breach of any obligation owed to the Disclosing Party, or (iv) was independently developed by the Receiving Party.

**8.2. Protection of Confidential Information.** Except as otherwise permitted in writing by the Disclosing Party, (i) the Receiving Party shall use the same degree of care that it uses to protect the confidentiality of its own confidential information of like kind (but in no event less than reasonable care) not to disclose or use any Confidential Information of the Disclosing Party for any purpose outside the scope of this Agreement, and (ii) the Receiving Party shall limit access to Confidential Information of the Disclosing Party to those of its employees, contractors and agents who need such access for purposes consistent with this Agreement and who have signed confidentiality agreements with the Receiving Party containing protections no less stringent than those herein.

**8.3. Protection of Your Data.** Without limiting the above, We shall maintain appropriate administrative, physical, and technical safeguards for protection of the security, confidentiality and integrity of Your Data. We shall not (a) modify Your Data, (b) disclose Your Data except as compelled by law in accordance with Section 8.4 (Compelled Disclosure) or as expressly permitted in writing by You, or (c) access Your Data except to provide the Services or prevent or address service or technical problems, or at Your request in connection with customer support matters.

**8.4. Compelled Disclosure.** The Receiving Party may disclose Confidential Information of the Disclosing Party if it is compelled by law to do so, provided the Receiving Party gives the Disclosing Party

prior notice of such compelled disclosure (to the extent legally permitted) and reasonable assistance, at the Disclosing Party's cost, if the Disclosing Party wishes to contest the disclosure. If the Receiving Party is compelled by law to disclose the Disclosing Party's Confidential Information as part of a civil proceeding to which the Disclosing Party is a party, and the Disclosing Party is not contesting the disclosure, the Disclosing Party will reimburse the Receiving Party for its reasonable cost of compiling and providing secure access to such Confidential Information.

Back to Top

## 9. WARRANTIES AND DISCLAIMERS

**9.1. Our Warranties.** We warrant that (i) the Services shall perform materially in accordance with the User Guide, and (ii) subject to Section 5.3 (Google Services), the functionality of the Services will not be materially decreased during a subscription term. For any breach of either such warranty, Your exclusive remedy shall be as provided in Section 12.3 (Termination for Cause) and Section 12.4 (Refund or Payment upon Termination) below.

**9.2. Mutual Warranties.** Each party represents and warrants that (i) it has the legal power to enter into this Agreement, and (ii) it will not transmit to the other party any Malicious Code (except for Malicious Code previously transmitted to the warranting party by the other party).

**9.3. Disclaimer.** EXCEPT AS EXPRESSLY PROVIDED HEREIN, NEITHER PARTY MAKES ANY WARRANTIES OF ANY KIND, WHETHER EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND EACH PARTY SPECIFICALLY DISCLAIMS ALL IMPLIED WARRANTIES, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW.

Back to Top

## 10. MUTUAL INDEMNIFICATION

**10.1. Indemnification by Us.** We shall defend You against any claim, demand, suit, or proceeding ("**Claim**") made or brought against You by a third party alleging that the use of the Services as permitted hereunder infringes or misappropriates the intellectual property rights of a third party, and shall indemnify You for any damages finally awarded against, and for reasonable attorney's fees incurred by, You in connection with any such Claim; provided, that You (a) promptly give Us written notice of the Claim; (b) give Us sole control of the defense and settlement of the Claim (provided that We may not settle any Claim unless the settlement unconditionally releases You of all liability); and (c) provide to Us all reasonable assistance, at Our expense.

**10.2. Indemnification by You.** You shall defend Us against any Claim made or brought against Us by a third party alleging that Your Data, or Your use of the Services in violation of this Agreement, infringes or misappropriates the intellectual property rights of a third party or violates applicable law, and shall indemnify Us for any damages finally awarded against, and for reasonable attorney's fees incurred by, Us in connection with any such Claim; provided, that We (a) promptly give You written notice of the Claim; (b) give You sole control of the defense and settlement of the Claim (provided that You may not settle any Claim unless the settlement unconditionally release Us of all liability); and (c) provide to You all reasonable assistance, at Our expense.

**10.3. Exclusive Remedy.** This Section 10 (Mutual Indemnification) states the indemnifying party's sole liability to, and the indemnified party's exclusive remedy against, the other party for any type of Claim described in this Section.

Back to Top

## 11. LIMITATION OF LIABILITY

**11.1. Limitation of Liability.** IN NO EVENT SHALL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, EXCEED THE TOTAL AMOUNT PAID BY YOU HEREUNDER OR, WITH RESPECT TO ANY SINGLE INCIDENT, THE LESSER OF $500,000 OR THE AMOUNT PAID BY YOU HEREUNDER IN THE 12 MONTHS PRECEDING THE INCIDENT. THE FOREGOING SHALL NOT LIMIT YOUR PAYMENT OBLIGATIONS UNDER SECTION 6 (FEES AND PAYMENT FOR PURCHASED SERVICES).

**11.2. Exclusion of Consequential and Related Damages.** IN NO EVENT SHALL EITHER PARTY HAVE ANY LIABILITY TO THE OTHER PARTY FOR ANY LOST PROFITS OR REVENUES OR FOR ANY INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, COVER OR PUNITIVE DAMAGES HOWEVER CAUSED, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, AND WHETHER OR NOT THE PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE FOREGOING DISCLAIMER SHALL NOT APPLY TO THE EXTENT PROHIBITED BY APPLICABLE LAW.

Back to Top

## 12. TERM AND TERMINATION

**12.1. Term of Agreement.** This Agreement commences on the date You accept it and continues until all User subscriptions granted in accordance with this Agreement have expired or been terminated. If You elect to use the Services for a 30-day free trial period and do not purchase a subscription before the end of that period, this Agreement will terminate at the end of the 30-day free trial period.

**12.2. Term of Purchased User Subscriptions.** User subscriptions purchased by You commence on the start date specified in the applicable Order Form and continue for the subscription term specified therein. **Except as otherwise specified in the applicable Order Form, all User subscriptions shall automatically renew for additional periods equal to the expiring subscription term or one year (whichever is shorter), unless either party gives the other notice of non-renewal at least 30 days before the end of the relevant subscription term. The per-unit pricing during any such renewal term shall be the same as that during the prior term unless We have given You written notice of a pricing increase at least 30 days before the end of such prior term, in which case the pricing increase shall be effective upon renewal and thereafter.  Any such pricing increase shall not exceed 7% over the pricing for the relevant Services in the immediately prior subscription term, unless the pricing in such prior term was designated in the relevant Order Form as promotional or one-time.**

**12.3. Termination for Cause.** A party may terminate this Agreement for cause: (i) upon 30 days written notice to the other party of a material breach if such breach remains uncured at the expiration of such period, or (ii) if the other party becomes the subject of a petition in bankruptcy or any other proceeding relating to insolvency, receivership, liquidation or assignment for the benefit of creditors.

**12.4. Refund or Payment upon Termination.** Upon any termination for cause by You, We shall refund You any prepaid fees covering the remainder of the term of all subscriptions after the effective date of termination. Upon any termination for cause by Us, You shall pay any unpaid fees covering the remainder of the term of all Order Forms after the effective date of termination. In no event shall any termination relieve You of the obligation to pay any fees payable to Us for the period prior to the effective date of termination.

**12.5. Return of Your Data.** Upon request by You made within 30 days after the effective date of termination of a Purchased Services subscription, We will make available to You for download a file of Your Data in comma separated value (.csv) format along with attachments in their native format. After such 30-day period, We shall have no obligation to maintain or provide any of Your Data and shall thereafter, unless legally prohibited, delete all of Your Data in Our systems or otherwise in Our possession or under Our control.

**12.6. Surviving Provisions.** Section 6 (Fees and Payment for Purchased Services), 7 (Proprietary Rights), 8 (Confidentiality), 9.3 (Disclaimer), 10 (Mutual Indemnification), 11 (Limitation of Liability), 12.4 (Refund or Payment upon Termination), 12.5 (Return of Your Data), 13 (Who You Are Contracting With, Notices, Governing Law and Jurisdiction) and 14 (General Provisions) shall survive any termination or expiration of this Agreement.

Back to Top

## 13. WHO YOU ARE CONTRACTING WITH, NOTICES, GOVERNING LAW AND JURISDICTION

**13.1. General.** Who You are contracting with under this Agreement, who You should direct notices to under this Agreement, what law will apply in any lawsuit arising out of or in connection with this Agreement, and which courts can adjudicate any such lawsuit, depend on where You are domiciled.

| If You are domiciled in: | You are contracting with: | Notices should be addressed to: | The governing law is: | The courts having exclusive jurisdiction are: |
|---|---|---|---|---|
| A Country in North, South or Central America or the Caribbean | Salesforce.com, inc., The Landmark @ One Market, Suite 300, San Francisco, California, 94105, U.S.A. | VP, Worldwide Sales Operations Fax: +1-415-901-7040 | California and controlling United States federal law | San Francisco, California, U.S.A. |
| A Country in Europe, the Middle East or Africa | salesforce.com Sàrl, Rue St-Louis 2, Morges, 1110, Switzerland | Director, EMEA Sales Operations Fax +41-21-6953701 | Switzerland | Switzerland |
| Japan | Salesforce.com Kabushiki Kaisha, Ebisu Business Tower 18F 1-19-19 Ebisu, Shibuya-ku, Tokyo, 150-0013, Japan | Director, Japan Sales Operations Fax +81-3-5793-8302 | Japan | Tokyo, Japan |
| A Country in Asia or the Pacific region, other than Japan | Salesforce.com Singapore Pte Ltd, 9 Temasek Boulevard #40-01, Suntec Tower 2, Singapore, 038989 | Director, APAC Sales Operations Fax +65 6302 5777 | Singapore | Singapore |

**13.2. Manner of Giving Notice.** Except as otherwise specified in this Agreement, all notices, permissions and approvals hereunder shall be in writing and shall be deemed to have been given upon: (i) personal delivery, (ii) the second business day after mailing, (iii) the second business day after sending by confirmed facsimile, or (iv) the first business day after sending by email (provided email shall not be sufficient for notices of termination or an indemnifiable claim). Notices to You shall be addressed to the system administrator designated by You for Your relevant Services account, and in the case of billing-related notices, to the relevant billing contact designated by You.

**13.3. Agreement to Governing Law and Jurisdiction.** Each party agrees to the applicable governing law above without regard to choice or conflicts of law rules, and to the exclusive jurisdiction of the applicable courts above.

**13.4. Waiver of Jury Trial.** Each party hereby waives any right to jury trial in connection with any action or litigation in any way arising out of or related to this Agreement.

Back to Top

## 14. GENERAL PROVISIONS

**14.1. Export Compliance.** Each party shall comply with the export laws and regulations of the United States and other applicable jurisdictions in providing and using the Services. Without limiting the foregoing, (i) each party represents that it is not named on any U.S. government list of persons or entities prohibited from receiving exports, and (ii) You shall not permit Users to access or use Services in violation of any U.S. export embargo, prohibition or restriction.

**14.2. Relationship of the Parties.** The parties are independent contractors. This Agreement does not create a partnership, franchise, joint venture, agency, fiduciary or employment relationship between the parties.

**14.3. No Third-Party Beneficiaries.** There are no third-party beneficiaries to this Agreement.

**14.4. Waiver and Cumulative Remedies.** No failure or delay by either party in exercising any right under this Agreement shall constitute a waiver of that right. Other than as expressly stated herein, the remedies provided herein are in addition to, and not exclusive of, any other remedies of a party at law or in equity.

**14.5. Severability.** If any provision of this Agreement is held by a court of competent jurisdiction to be contrary to law, the provision shall be modified by the court and interpreted so as best to accomplish the objectives of the original provision to the fullest extent permitted by law, and the remaining provisions of this Agreement shall remain in effect.

**14.6. Attorney Fees.** You shall pay on demand all of Our reasonable attorney fees and other costs incurred by Us to collect any fees or charges due Us under this Agreement following Your breach of Section 6.2 (Invoicing and Payment)

**14.7. Assignment.** Neither party may assign any of its rights or obligations hereunder, whether by operation of law or otherwise, without the prior written consent of the other party (not to be unreasonably withheld). Notwithstanding the foregoing, either party may assign this Agreement in its entirety (including all Order Forms), without consent of the other party, to its Affiliate or in connection with a merger, acquisition, corporate reorganization, or sale of all or substantially all of its assets not involving a direct competitor of the other party. A party's sole remedy for any purported assignment by

the other party in breach of this paragraph shall be, at the non-assigning party's election, termination of this Agreement upon written notice to the assigning party. In the event of such a termination, We shall refund to You any prepaid fees covering the remainder of the term of all subscriptions after the effective date of termination. Subject to the foregoing, this Agreement shall bind and inure to the benefit of the parties, their respective successors and permitted assigns.

**14.8. Entire Agreement.** This Agreement, including all exhibits and addenda hereto and all Order Forms, constitutes the entire agreement between the parties and supersedes all prior and contemporaneous agreements, proposals or representations, written or oral, concerning its subject matter. No modification, amendment, or waiver of any provision of this Agreement shall be effective unless in writing and either signed or accepted electronically by the party against whom the modification, amendment or waiver is to be asserted. However, to the extent of any conflict or inconsistency between the provisions in the body of this Agreement and any exhibit or addendum hereto or any Order Form, the terms of such exhibit, addendum or Order Form shall prevail. Notwithstanding any language to the contrary therein, no terms or conditions stated in Your purchase order or other order documentation (excluding Order Forms) shall be incorporated into or form any part of this Agreement, and all such terms or conditions shall be null and void.

Back to Top