# ReedSmith

Reed Smith LLP
1201 North Market Street
Suite 1500
Wilmington, DE 19801-1163
Tel +1 302 778 7500
Fax +1 302 778 7575
reedsmith.com

**Kurt F. Gwynne**
Direct Phone: +1 302 778 7550
Email: kgwynne@reedsmith.com

October 27, 2015

**Via ECF and Hand Delivery**

Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District
of Delaware
824 N. Market Street, 5th Floor
Wilmington, DE 19801

**Re: Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS)**

Dear Judge Sontchi:

We are counsel to The Bank of New York Mellon ("BNYM"), in its capacity, as the PCRB Trustee. We write to respectfully request that the Court promptly address a discovery dispute in connection with the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement (D.I. 5249) ("Settlement Agreement"), and confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 6122) (the "Fifth Amended Plan").[1] The dispute concerns a deposition notice served upon BNYM by the TCEH Unsecured Ad Hoc Group on October 25, 2015 (D.I. 6651) (the "Deposition Notice"). A copy of the Deposition Notice is attached as **Exhibit A**.[2]

The Deposition Notice lists the following topics for the proposed deposition of BNYM:

1. All factual allegations in the Plan Objection, including in paragraphs 1-3, 5, 31, 37-40, 63, 66, 79, and 88-93.[3]

2. All factual allegations in the Settlement Objection, including in paragraphs 1, 3, 13, 22, 26, 33-35, 53-56, 86-90, and 94-96.[4]

3. All testimony and evidence which BNY[M] intends to present or rely on at the Plan Confirmation Hearing.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Fifth Amended Plan.

[2] Counsel for the TCEH Unsecured Ad Hoc Group agreed that the Deposition Notice should not have included The Bank of New York Mellon Trust Company, N.A., the EFCH 2037 Notes Trustee.

[3] The Plan Objection is attached as **Exhibit B**.

[4] The Settlement Objection is attached as **Exhibit C**.

ABU DHABI ♦ ATHENS ♦ BEIJING ♦ CENTURY CITY ♦ CHICAGO ♦ DUBAI ♦ FRANKFURT ♦ HONG KONG ♦ HOUSTON ♦ KAZAKHSTAN ♦ LONDON ♦ LOS ANGELES ♦ MUNICH ♦ NEW YORK ♦ NORTHERN VIRGINIA
PARIS ♦ PHILADELPHIA ♦ PITTSBURGH ♦ PRINCETON ♦ RICHMOND ♦ SAN FRANCISCO ♦ SHANGHAI ♦ SILICON VALLEY ♦ SINGAPORE ♦ WASHINGTON, D.C. ♦ WILMINGTON

US_ACTIVE-124188656.3-KFGWYNNE 10/27/2015 2:22 PM

Judge Christopher S. Sontchi  
October 27, 2015  
Page 2

**ReedSmith**

As discussed further below, the TCEH Unsecured Ad Hoc Group seeks to depose BNYM with respect to matters that are; (i) legal issues or (ii) factual assertions based upon (a) the text of the Plan and Disclosure Statement, (b) documents proposed by the Debtors (or other Participating Parties) in the Repository, or (c) the testimony of Hugh Sawyer (the TCEH Disinterested Manager) or the Participating Parties' financial advisors. BNYM is not a source of factual information relevant to the contested issues regarding confirmation of the Fifth Amended Plan.

**Paragraphs 1-2, and 63** of the Plan Objection provide that, under section 1123(a)(4) of the Bankruptcy Code, the holders of PCRB Claims are entitled to the "same treatment" as other Class C4 creditors. The Plan, however, singles out the holders of PCRB Claims for disparate treatment. Specifically, all of the other Class C4 creditors will share in distributions on account of the waiver of the TCEH First Lien Claims. If treated *pari passu*, the holders of PCRB Claims could receive approximately $30 million to $200 million (depending on the reorganized enterprise value of EFH) more than is currently provided in the Plan.

> These paragraphs involve a legal issue under Section 1123(a)(4). The factual assertions come from the language of the Fifth Amended Plan and the percentages in the chart in footnote 3 of the Disclosure Statement (which chart is set forth in para. 38 below).

**Paragraphs 3, 31, 37, 40, and 66** of the Plan Objection provide that the exclusion of the PCRB Claims from the distribution on account of the "waiver" of the TCEH First Lien Deficiency Claims results in a 50% to 55% discount in the distribution on account of the PCRB Claims and that the discount is not upon any analysis of the TCEH estate's causes of action compared to the TCEH subsidiaries' causes of action against the holders of the TCEH First Lien Claims or any principled analysis whatsoever.

> This 50% to 55% discount is based upon the chart in footnote 3 of the Disclosure Statement. The "math" for the discount is set forth in paragraph 39 of the BNYM Plan Objection (which is set forth below). The statement that the discount is not based on any analysis is based upon the depositions of Sawyer, Mendelsohn, Ying, and Siegert, as set forth above.

**Paragraphs 5, 88, 89, and 93** of the Plan Objection provide that, as reflected in the Debtors' prior drafts of a chapter 11 plan, the Debtors favored *pari passu* treatment of the PCRB Claims. The TCEH Unsecured Ad Hoc Group, however, was unwilling to treat the PCRB Claims *pari passu* and demanded the disparate treatment of the PCRB Claims in an effort to increase the distribution on account of the TCEH Unsecured Notes Claims at the expense of the holders of the PCRB Claims, thereby demonstrating a lack of good faith under section 1129(a)(3) of the Bankruptcy Code.

> These paragraphs are based upon deposition statements of Hugh Sawyer and the following documents (as set forth in paragraphs 27 and 28 of the BNYM Plan Objection): *See* EFH05953250-EFH05953254, EFH05953379-EFH05953382, EFH05953383-EFH05953384, and EFH06002918.

Judge Christopher S. Sontchi                                                                ReedSmith
October 27, 2015
Page 3

**Paragraph 38** of the Plan Objection describes the potential distributions from 2.9% to 20.7% as set forth in the following table that is included in footnote 3 of the Disclosure Statement, Art. I.F, p

| Range of Illustrative Estimated Recoveries | | | | | | |
|---|---|---|---|---|---|---|
| Illustrative Reorganized EFH Enterprise Value: | $19.0bn | $20.0bn | $21.0bn | $22.0bn | $23.0bn | $24.0bn |
| **$9.5bn Allowed TCEH First Lien Deficiency Claims** | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.1% | 29.7% | 37.3% | 44.9% |
| Allowed PCRB Claims | 2.9% | 6.1% | 9.3% | 12.5% | 15.8% | 19.0% |
| **$8.1bn Allowed TCEH First Lien Deficiency Claims** | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.0% | 29.5% | 37.1% | 44.7% |
| Allowed PCRB Claims | 3.1% | 6.6% | 10.1% | 13.6% | 17.1% | 20.7% |

**Paragraph 39** of the Plan Objection provides that a 2.9% recovery on $881.496 million in outstanding non-company owned PCRB Claims would total $25.56 million.

Paragraph 39 is simply math based on the chart (referenced above) from the Disclosure Statement.

**Paragraphs 90-92** of the Plan Objection state that the TCEH Unsecured Ad Hoc Group needed the vote of; (a) the TCEH Second Lien Note Claims to control the vote of Class C4 TCEH Unsecured Debt Claims and (b) unsecured creditors in Class C5 General Unsecured Claims Against the TCEH Debtors Other than EFCH to control the vote of Class C5. Thus, paragraphs 90-92 assert that the TCEH Unsecured Ad Hoc Group sought to exclude only the PCRB Claims from sharing in the distributions on account of the "limited waiver" of the TCEH First Lien Deficiency Claims. These paragraphs also state that "Section 1123(a)(4) prevents a plan proponent from rigging the vote of a particular class by providing for more favorable treatment to a claim that by virtue of its amount controls whether or not the class accepts the plan." *Dugan v. PBGC (In re Rhodes, Inc.)*, 382 B.R. 550, 556 (Bankr. N.D. Ga. 2008).

Paragraphs 90-92 are based upon the application of section 1126(c) of the Bankruptcy Code (regarding the amount of claims in a class that are needed to accept a plan) to the Allowed Amount of the creditor claims referenced above as set forth in the Fifth Amended Plan.

All of the Plan Objection paragraphs referenced in the Deposition Notice are based upon some combination of (i) legal arguments under applicable law, (ii) documents produced by the Debtors (or other Participating Parties) available in the Repository, and (iii) testimony of Hugh Sawyer (the TCEH Disinterested Manager) and financial advisors as set forth in the BNYM Objection. No BNYM employee or representative is the source of any fact supporting the allegations in those paragraphs of the BNYM Plan Objection. Indeed, the Plan Objection is based upon the disparate treatment of the PCRB Claims, which the documents from the Repository and the testimony of Hugh Sawyer establish was demanded by the TCEH Unsecured Ad Hoc Group.

The Deposition Notice also seeks to examine BNYM regarding "[a]ll testimony and evidence which BNY[M] intends to present or rely on at the Plan Confirmation Hearing." All such testimony will come from the witnesses identified by other parties, including Hugh Sawyer (the TCEH Disinterested Director) and the Participating Parties' financial advisors. BNYM does not intend to present the testimony of any BNYM representative because no such representative has relevant factual information regarding the treatment of the PCRB Claims.

The Deposition Notice is not reasonably calculated to lead to the discovery of admissible evidence because BNYM representatives do not have personal knowledge of the documents produced by the Debtors (or other Participating Parties) and available in the Repository. *See* Fed.R.Civ.P. 26(b)(1).

This Court previously precluded BNYM from deposing a member of the TCEH Unsecured Ad Hoc Group even though that group was the architect of the disparate treatment of the PCRB Claims, executed the Settlement Agreement providing for the disparate treatment of the PCRB Claims, and executed a plan support agreement relating to the Fifth Amended Plan, which incorporated the disparate treatment proposed by the TCEH Unsecured Ad Hoc Group. This Court concluded that the benefits of such deposition outweighed the costs thereof.

The cost and expense to BNYM associated with the Deposition Notice greatly exceed any benefit to the TCEH Unsecured Ad Hoc Group from deposing BNYM. Unlike the TCEH Unsecured Ad Hoc Group, BNYM was not the architect of the disparate treatment of the PCRB Claims. BNYM is not a party to the Settlement Agreement or a plan support agreement. BNYM does not have any personal knowledge of the facts relating to the disparate treatment of the PCRB Claims under the Fifth Amended Plan or the Settlement Agreement.

Rule 26, as amended, will provide that discovery must be "proportional to the needs of the case," "the parties' resources," "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." For the reasons set forth above, the cost, expense and burden on BNYM outweigh the benefit (if any) to the TCEH Unsecured Ad Hoc Group from deposing BNYM.

Judge Christopher S. Sontchi
October 27, 2015
Page 5

**ReedSmith**

For the foregoing reasons, the Court should enter a protective order precluding or quashing the Deposition Notice.

I understand that J. Christopher Shore, Esquire (counsel for the TCEH Unsecured Ad Hoc Group) will respond to this letter at the pretrial conference tomorrow (Wed., October 28, 2015), although he reserves his right to file a written response.

I am available at Your Honor's convenience to discuss the foregoing.

Respectfully submitted,

Kurt F. Gwynne

cc: All Participating Parties (via E-mail)
All counsel of record (via ECF)