# EXHIBIT B

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., et al., | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos.: 6122 |

**OBJECTION OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE FOR THE PCRB CLAIMS, TO CONFIRMATION OF THE FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Bank of New York Mellon ("BNYM"), in its capacity as the PCRB Trustee,[1] objects to confirmation of the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6122) (the "Plan"). In support of the objection, BNYM respectfully states as follows.

## I. PRELIMINARY STATEMENT

1. The holders of the PCRB Claims are creditors of the TCEH estate. As creditors of the TCEH estate, the holders of PCRB Claims are entitled to share in the recovery of distributions on account of claims owned by TCEH's estate. The Plan and the Settlement Agreement, however, seek to strip the holders of PCRB Claims of any share in the proceeds of the TCEH estate's $2 billion in claims against the holders of TCEH First Lien Claims.

2. Although section 1123(a)(4) of the Bankruptcy Code requires the "same treatment" for creditors in the same class, the Plan proposes to treat holders of PCRB Claims far worse than the holders of other claims in Class C4 TCEH Unsecured Debt Claims. Specifically, all of the other Class C4 creditors – defined as holders of the "TCEH First Lien Deficiency

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code.*

Recipient Claims" – will share in distributions on account of the waiver of the TCEH First Lien Claims. The holders of PCRB Claims are the only Class C4 creditors excluded from sharing in such distributions. If treated *pari passu,* the holders of PCRB Claims could receive approximately $30 million to $200 million (depending on the reorganized enterprise value of EFH) more than is currently provided in the Plan.

3. The exclusion of the PCRB Claims from the distribution on account of the "waiver" of the TCEH First Lien Deficiency Claims results in a 50% to 55% discount in the distribution on account of the PCRB Claims. The discount is not based upon any analysis of the TCEH estate's causes of action compared to the TCEH subsidiaries' causes of action against the holders of the TCEH First Lien Claims or any principled analysis whatsoever. Indeed, none of the Debtors, Hugh Sawyer (the TCEH Disinterested Manager), Eric Mendelsohn (the TCEH Disinterested Manager's financial advisor), David Ying (the Debtors' financial advisor), or Eric Siegert (the TCEH Unsecured Ad Hoc Group's financial advisor) conducted *any* analysis of the appropriateness of the 50% to 55% discount on the distribution to holders of PCRB Claims. Rather, in direct contravention of section 1123(a)(4) of the Bankruptcy Code, the Plan routes the entire proceeds on account of the "waiver" of the TCEH First Lien Deficiency Claims to all Class C4 creditors other than the holders of PCRB Claims.

4. The disparate treatment of the PCRB Claims violates section 1123(a)(4) of the Bankruptcy Code, which requires the "same treatment" for all creditors in Class C4. The violation of section 1123(a)(4) of the Bankruptcy Code renders the Plan unconfirmable under section 1129(a)(1) and (2) of the Bankruptcy Code.

5. Although the Debtors favored *pari passu* treatment of the PCRB Claims, the TCEH Unsecured Ad Hoc Group demanded the disparate treatment of the PCRB Claims in an

effort to increase the distribution on account of the TCEH Unsecured Note Claims at the expense of the holders of the PCRB Claims. The TCEH Unsecured Ad Hoc Group's scheme to increase their recoveries, and the Debtors' acquiescence to that scheme, demonstrates a lack of good faith. The Debtors cannot meet their burden that the Plan was proposed in good faith under section 1129(a)(3) of the Bankruptcy Code.

6. The Debtors, however, wisely required a provision in the Plan (and the Settlement Agreement) that permits this Court to require *pari passu* treatment of the PCRB Claims and still confirm the Plan. In other words, the Court can sustain this objection to the disparate treatment of the PCRB Claims, require *pari passu* treatment of the PCRB Claims, and confirm the Plan.

7. In addition, the PCRB Claims should be allowed in the amount of $881,529,669.00, as opposed to the $881,496,233 set forth in the plan.

8. The Plan also violates sections 503 and 1129(a)(4) of the Bankruptcy Code with respect to the proposed payment of fees and expense.

## II.    FACTUAL BACKGROUND

### A.    The Debtors' Bankruptcy Cases

9. On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. These chapter 11 cases are jointly administered.

### B.    The PCRB Claims

10. BNYM serves as the PCRB Trustee with respect to multiple series of pollution control revenue bonds or pollution control bonds. As of the Petition Date, the PCRB Claims totaled in excess of $881 million (excluding "company-owned" PCRB Claims).

11. The PCRB Trustee timely filed unsecured proofs of claim against TCEH relating to the PCRB Claims in the aggregate amount of $1.087 billion (excluding company-owned PCRB Claims), including principal, plus interest and fees.

12.    The PCRB Claims are unsecured obligations of TCEH.

**C.    TCEH's Claims Against EFH and the Holders of the TCEH First Lien Claims**

**1.    TCEH's Proposed $700 Million Inter-Debtor Claim Against EFH**

13.    The TCEH estate holds inter-Debtor claims in excess of $3 billion against EFH. *See* Transcript of Deposition of Hugh E. Sawyer (Sept. 24, 2015) ("Sawyer Tr.") at 544:5-24.

14.    The TCEH estate's inter-Debtor claims against EFH are resolved pursuant to the Settlement Agreement.

15.    The terms of the settlement of the inter-Debtor claims in the Settlement Agreement largely track the terms of the Disinterested Director Settlement. *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform under the Settlement Agreement* (D.I. 5249) ("Motion") at p. 21, ¶ 51. Specifically, on March 16, 2015, Hugh Sawyer, the TCEH Disinterested Manager, made a demand on the EFH entities for a $1.2 billion inter-Debtor claim. *See* Sawyer Tr. at 600:9-21. After negotiation, the TCEH estate's claims against EFH were resolved pursuant to the Disinterested Director Settlement. Under the terms of the Disinterested Director Settlement, EFH, EFIH, and the TCEH Debtors agreed to release inter-Debtor claims in exchange for, among other things, an allowed $700 million general unsecured claim by TCEH against EFH. Motion at p. 18, ¶ 44.

16.    Under the Plan and Settlement Agreement, TCEH (*not* its subsidiaries) will have an allowed $700 million claim against EFH (the "TCEH Settlement Claim"). *See* Plan, Art. I.A.399, Art. IV.B.15; Settlement Agreement at § 2.1(b); Motion at pp. 18-19, ¶ 44; p. 21 n.15; p. 93, ¶ 225. The TCEH subsidiaries will not have *any* claim against EFH under the Plan or Settlement Agreement.

17. Without explanation, the Settlement Agreement treats the proceeds of the TCEH Settlement Claim as the prepetition collateral of the holders of the TCEH First Lien Claims, notwithstanding that the settled claims include avoidance actions and commercial tort claims. *See* Settlement Agreement at § 2.1(c). At his deposition, Hugh Sawyer was unable to explain why the proceeds of the TCEH Settlement Claim are treated as the prepetition collateral of holders of the TCEH First Lien Claims. *See* Sawyer Tr. at 643:16-23 and 644:3-9.

18. The Plan also provides that the TCEH Settlement Claim is deemed satisfied upon consummation. *See* Plan, Art. IV.B.15.

### 2. TCEH's Claims Against the Holders of the TCEH First Lien Claims

19. The TCEH estate also holds claims in excess of $2 billion against the holders of the TCEH First Lien Claims. *See* Sawyer Tr. at 660:16-21, 663:24-664:11, and 664:12-665:6.

20. The TCEH estate's claims against holders of the TCEH First Lien Claims also were resolved pursuant to the Plan and Settlement Agreement. *See* Motion at p. 21, ¶ 52; Sawyer Tr. at 656:10-15.

21. Specifically, the Plan and Settlement Agreement provides for the release of the TCEH estate's $2 billion "2011 amend and extend" claim and its $340 million 2013 "revolver extension" claim against the holders of the TCEH First Lien Claims in exchange for the "fixing" of the First Lien Deficiency Claims at $8 billion to $9.5 billion. *See* Plan, Art. III.B.29; Sawyer Tr. at 660:16-21, 663:24-664:11, and 664:12-665:6.

### D. Initial Plans Provide *Pari Passu* Treatment for the PCRB Claims

22. On April 14, 2015, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 4142) (the "Original Plan"). On July 23, 2015, the Debtors filed the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I.

5078) (the "First Amended Plan"). On August 3, 2015, the Debtors filed the *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5197) (the "Second Amended Plan").

23.    The Original Plan, the First Amended Plan, and the Second Amended Plan treated the PCRB Claims *pari passu* with the holders of the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, and General Unsecured Claim Against the TCEH Debtors Other Than EFCH, with a full (not "limited") waiver of the TCEH First Lien Deficiency Claims. *See* Original Plan, Art. III.B.28 and 29 (regarding treatment of Classes C4 and C5); First Amended Plan, Art. III.B.30 and 31 (same); Second Amended Plan, Art. III.B.30 and 31 (same).

### E.    The TCEH Unsecured Ad Hoc Group Demands the Disparate Treatment of the PCRB Claims in the Settlement Agreement and the Subsequent Amended Plans

24.    On August 9, 2015, the Debtors and the various other parties thereto, including the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group, entered into the Settlement Agreement.

25.    As part of the Plan and Settlement Agreement, the TCEH Unsecured Ad Hoc Group insisted on the disparate treatment of the PCRB Claims. *See* Disclosure Statement, Art. V.E.29, p. 131 ("The TCEH Unsecured Ad Hoc Group was not willing to treat the PCRB Claims *pari passu*"); Sawyer Tr. at 678:25-679:19; Transcript of Deposition of David Ying (Oct. 19, 2015) ("Ying Tr.") at 155:19-22, 155:24-156:2.

26.    The Debtors initially maintained their position that the PCRB Claims should be treated *pari passu* with other unsecured creditors of TCEH. *See* Sawyer Tr. at 678:5-21 (stating that "[m]y recollection is that the debtors took the position that the unsecured creditors at the TCEH level should be treated *pari passu* with the other unsecured creditors").



27.

28.

29.     Consistent with the TCEH Unsecured Ad Hoc Group's demands, the Settlement Agreement provides that the holders of the TCEH First Lien Deficiency Claims will "waive" any recovery thereon for the benefit of the holders of TCEH Deficiency Recipient Claims, which is defined to include all Class C4 creditors other than holders of PCRB Claims. The Allowed TCEH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH constitute the TCEH Deficiency Recipient Claims. *See* Plan, Art. I.A.346, p. 32 and Art. IV.B.15, p. 64.

30. The holders of TCEH Deficiency Recipient Claims also will receive additional distributions of Rights and Reorganized EFH Common Stock on account of the waiver of the TCEH First Lien Deficiency Claims. *See* Plan, Art. IV.B.15, p. 64.

31. As a result of being excluded from the TCEH Deficiency Recipient Claims, the PCRB Claims will receive a 50% to 55% discount in the distribution that they would otherwise receive if treated *pari passu*.

32. On August 10, 2015, the Debtors filed the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 5244) (the "Third Amended Plan"), which embodies the disparate treatment of the PCRB Claims set forth in the Settlement Agreement, and the *Disclosure Statement for the Third Amended Plan* (D.I. 5246).

33. The subsequent chapter 11 plans filed by the Debtors also contain the disparate treatment of the PCRB Claims that was reflected first in the Third Amended Plan.[2]

34. On September 21, 2015, the Debtors filed the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6122) (the "Plan"), which is the latest chapter 11 plan filed by the Debtors, and the *Disclosure Statement for the Plan* (D.I. 6124) (the "Disclosure Statement").

35. The Plan classifies the PCRB Claims in Class C4 among the "TCEH Unsecured Debt Claims," which consists of (a) the PCRB Claims, (b) the TCEH First Lien Deficiency Claims, (b) the TCEH Second Lien Note Claims, and (c) the TCEH Unsecured Note Claims. Plan, Art. I.A.404, p. 36.

---

[2] On September 18, 2015, the Debtors filed the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6017) and the *Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 6110).

36. With respect to the Class C4 TCEH Unsecured Debt Claims, the Plan provides, in full and final satisfaction, settlement, release, and discharge of and in exchange for such claims, each holder of a Class C4 TCEH Unsecured Debt Claim shall receive a pro rata share of:

- the Rights to purchase $5,087,250,000 . . . in the aggregate of New EFH Common Stock pursuant to the Rights Offering and on and subject to the occurrence of the Effective Date, the New EFH Common Stock purchased pursuant to the exercise of the Rights; and

- the Reorganized EFH Common Stock, which shall be converted to approximately 2% of New EFH Common Stock . . . .

*See* Plan, Art. III.B.29, pp. 57-58; Disclosure Statement, Art. V.E.29, p. 129.

37. As with the Third Amended Plan, the Plan incorporates the disparate treatment of the PCRB Claims set forth in the Settlement Agreement, thereby discounting by 50% to 55% the distribution on account of the PCRB Claims. *See* Plan, Art. III.B.29, pp. 57-58, Art. IV.B.15, p. 64; Disclosure Statement, Art. I.F, p. 24 n.14.

**F.    The Proposed 50% to 55% Discount Imposed on the PCRB Claims Is Arbitrary and Untethered to A Principled Analysis of the Claims Against the Holders of the TCEH First Lien Claims**

38. Assuming (a) a range of Reorganized EFH enterprise values from $19 billion to $24 billion and (b) a TCEH First Lien Deficiency Claims of $8.1 billion to $9.5 billion, the Debtors' most recent Disclosure Statement provides a range of potential distributions on account of PCRB Claims from 2.9% to 20.7%. *See* Disclosure Statement, Art. I.F, p. 23. The potential distributions set forth in the Disclosure Statement (for the holders of the PCRB Claims and for other TCEH unsecured creditors) are summarized as follows:

| Range of Illustrative Estimated Recoveries | | | | | | |
|---|---|---|---|---|---|---|
| **Illustrative Reorganized EFH Enterprise Value:** | $19.0bn | $20.0bn | $21.0bn | $22.0bn | $23.0bn | $24.0bn |
| $9.5bn Allowed TCEH First Lien Deficiency Claims | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.1% | 29.7% | 37.3% | 44.9% |
| Allowed PCRB Claims | 2.9% | 6.1% | 9.3% | 12.5% | 15.8% | 19.0% |
| $8.1bn Allowed TCEH First Lien Deficiency Claims | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.0% | 29.5% | 37.1% | 44.7% |
| Allowed PCRB Claims | 3.1% | 6.6% | 10.1% | 13.6% | 17.1% | 20.7% |

39. A 2.9% recovery on $881.496 million in outstanding non-company owned PCRB Claims would total $25.56 million. If the PCRB Claims received a *pari passu* distribution with the other T-side unsecured creditors, the distribution on account of the PCRB Claims could be approximately 6.4%, or $54.62 million. Thus, the holders of PCRB Claims would receive approximately an additional $30 million in value if the PCRB Claims shared *pari passu* in the distribution on account of the TCEH First Lien Deficiency Claims. The effect of the disparate treatment of the PCRB Claims increases dramatically to approximately $200 million as the Reorganized EFH enterprise value increases from $19 billion to $24 billion.

40. The proposed 50% to 55% discount in the distribution to holders of PCRB Claims is arbitrary. It is not based on a principled analysis of the TCEH's claims against the holders of the TCEH First Lien Claims as compared to the TCEH subsidiaries' claims against the holders of the TCEH First Lien Claims. The proposed 50% to 55% discount is simply a function of the amount of the TCEH First Lien Deficiency Claims. In other words, the 50% to 55% discount is

- 10 -

determined solely by the amount of distributions on account of the TCEH First Lien Deficiency Claims ($8.1 billion or $9.5 billion).

41.     The Debtors presented Hugh Sawyer, the TCEH Disinterested Manager, as their Rule 30(b)(6) designee with respect to the deposition notice served by BNYM (D.I. 5828). Sawyer did not perform an analysis to support the 50% to 55% discount in the distribution on account of the PCRB Claims. *See* Sawyer Tr. at, *e.g.*, 682:24-683:8. In fact, Sawyer did not even analyze the financial impact on the holders of PCRB Claims resulting from the proposed exclusion of the PCRB Claims from participation in the "waiver" of the TCEH First Lien Deficiency Claims. *See* Sawyer Tr. at 681:8-682:13.

42.     Searching for an explanation, Sawyer generally asserted that the TCEH subsidiaries' ownership of the operating assets provided a basis for the disparate treatment of the PCRB Claims. Sawyer, however, did not explain (nor could he) how the value of the TCEH subsidiaries' operating assets was relevant when addressing the waiver of a *deficiency* claim, which by definition assumes that all of the TCEH subsidiaries' assets are fully-encumbered and of no value to unsecured creditors.[3] In any event, Sawyer did not analyze the distribution to the TCEH creditors compared to the distribution to the TCEH subsidiaries' creditors. *See* Sawyer Tr. at 688:9-13.

43.     **In short, Sawyer admitted that he did not do any analysis to determine whether the distribution discount on the PCRB Claims was appropriate:**

>   **Q.    Did you ever do any analysis to determine whether the discount on the distribution that the PCRB claims are receiving was appropriate?**
>
>   **A.    No.**

---

[3] The TCEH subsidiaries' operating assets were not part of the negotiations relating to the $700 million TCEH Settlement Claim. *See* Sawyer Tr. at 651:24-652:3, 652:6-8, 653:18-20, 653:22-25, and 654:15-20.

*See* Sawyer Tr. at 688:9-13; *see also* Sawyer Tr. at 681:8-682:13.

44.     Notwithstanding that he was the Debtors' Rule 30(b)(6) designee, Sawyer's lack of analysis was matched by his lack of understanding of the relevant facts. TCEH's claims against the holders of the TCEH First Lien Claims were settled for the "waiver" of the TCEH First Lien Deficiency Claims and the alleged fixing of that claim at $8 billion. *See* Sawyer Tr. at 657:2-21). However, Sawyer did not know the amount of TCEH's claims that were to be released in the Settlement Agreement. *See* Sawyer Tr. at 656:10-657:15.

45.     Sawyer also did not analyze whether trade creditors of TCEH alone should be entitled to share in the "waiver" while the PCRB Claims were excluded from sharing in the "waiver" as creditors of TCEH alone. *See* Sawyer Tr. at 675:5-13, 676:8-15.

46.     Eric Mendelsohn of Greenhill, the TCEH Disinterested Manager's financial advisor, also did not recall preparing any analysis regarding the proposed 50% to 55% discount in the distribution on account of the PCRB Claims or the appropriateness thereof. *See* Transcript of Deposition of Eric R. Mendelsohn (Oct. 21, 2015) ("Mendelsohn Tr.") at 251:5-8, 251:15-22, 252:3-6, 252:8-12, 252:14-20, 252:24-25, 253:19-254:2, 254:7, 254:8-11, 254:13-17, 254:22.

47.     David Ying of Evercore, the Debtors' financial advisor, also did not recall preparing any such analysis. *See* Ying Tr. at 155:6-18, 156:23-157:5, 157:12-25, 158:2-7.

48.     Eric Siegert of Houlihan Lokey, the TCEH Unsecured Ad Hoc Group's financial advisor, also did not recall preparing any such analysis. *See* Transcript of Deposition of Eric Siegert (Oct. 7, 2015) ("Siegert Tr.") at 143:24-144:9, 144:11.

G.  **The Plan and Settlement Agreement Expressly Contain Provisions Allowing the Court to Order *Pari Passu* Treatment of the PCRB Claims While Approving the Settlement Agreement and the Plan**

49. The Debtors, implicitly acknowledging that this Court would not countenance the disparate treatment of the PCRB Claims, wisely included provisions in the Plan and the Settlement Agreement that would allow Court approval of the Plan and Settlement Agreement to proceed upon the Court's ruling that the PCRB Claims are entitled to share *pari passu* in the waiver of the TCEH First Lien Deficiency Claims. *See* Plan, Art. IV.B.15, p. 64 ("for the purposes of this Plan and the settlements and compromises incorporated herein or contemplated hereby, and *unless otherwise ordered by the Bankruptcy Court* . . . (a) Holders of Allowed TCEH First Lien Deficiency Claims will waive or be deemed to have waived . . . any recovery or distribution on account of . . . such Allowed TCEH First Lien Deficiency . . . for the benefit of Holders of Allowed TCEH Deficiency Recipient Claims"); Settlement Agreement at § 2.2(b) ("if the Bankruptcy Court . . . determines that the Limited Waiver cannot be for the benefit of only the Beneficiary-Claimants, . . . then the Limited Waiver shall be for the benefit of the Beneficiary-Claimants *and such other holders of Allowed Unsecured Claims* against the TCEH Debtors *as ordered by such court*") (emphasis added).

50. 

51. Therefore, the Court can require that the PCRB Claims share *pari passu* in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims and then

approve the Settlement Agreement and confirm the Plan thereby insuring a successful reorganization that is fair to all creditors, including the holders of the PCRB Claims.

### III. OBJECTIONS

#### A. Section 1129(a) of the Bankruptcy Code in General.

52. A bankruptcy court may only confirm a plan of reorganization if it meets all requirements of section 1129 of the Bankruptcy Code. *See* 11 U.S.C. § 1129. "The Code imposes an independent duty upon the court to determine whether a plan satisfies each element of section 1129, regardless of the absence of valid objections to confirmation." *In re Lernout & Hauspie Speech Prods, N.V.*, 301 B.R. 651, 656 (Bankr. D. Del. 2003), *aff'd*, 308 B.R. 672 (D. Del. 2004); *accord In re Flintkote Co.*, 486 B.R. 99, 122 (Bankr. D. Del. 2012).

53. The plan proponent bears the burden of establishing, by a preponderance of the evidence, each confirmation requirement of section 1129 of the Bankruptcy Code. *See In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *2 (Bankr. D. Del. Nov. 10, 2011); *In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003).

54. The requirements in section 1129(a) of the Bankruptcy Code include, among things, that (i) "[t]he plan complies with the applicable provisions of this title", 11 U.S.C. § 1129(a)(1), (ii) "[t]he proponent of the plan complies with the applicable provisions of this title", 11 U.S.C. § 1129(a)(2), and (iii) "[t]he plan has been proposed in good faith and not by any means forbidden by law", 11 U.S.C. § 1129(a)(3).

55. As discussed below, the Plan and the Debtors do not comply with section 1123(a)(4) of the Bankruptcy Code and the Plan was not proposed in good faith. Thus, the Debtors fail to meet their burden of proof with respect to the mandatory confirmation requirements. *See* 11 U.S.C. § 1129(a)(1), (a)(2), and (a)(3).