56. Therefore, this Court either must (i) deny confirmation of the Plan or (ii) confirm the Plan upon the condition that the holders of the PCRB Claims share *pari passu* with the other Class C4 creditors, including with respect to the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.

57. The Plan also violates sections 503 and 1129(a)(4) of the Bankruptcy Code with respect to the proposed lack of oversight of fees and expenses.

    **B.**    **The Disparate Treatment of the PCRB Claims as Compared to Other Class C4 Creditors Violates Section 1123(a)(4) of the Bankruptcy Code. Thus, the Plan Cannot Be Confirmed, Unless the PCRB Claims Are Treated *Pari Passu*.**

        **1.**    **The Plan Violates Section 1123(a)(4) of the Bankruptcy Code, Unless this Court Orders *Pari Passu* Treatment of PCRB Claims.**

58. "'Equality of distribution among creditors is a central policy of the Bankruptcy Code.'" *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 239 (3d Cir. 2004) (quoting *Begier v. IRS*, 496 U.S. 53, 58 (1990)); *see also In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3d Cir. 2013) ("equality of distribution among creditors is a central policy of the Bankruptcy Code that is furthered by several different Code provisions"). Several provisions of the Bankruptcy Code "are designed to ensure equality of distribution from the time the bankruptcy petition is filed." *Combustion Eng'g*, 391 F.3d at 239.

59. In furtherance of this central policy of equality of distribution, section 1122 of the Bankruptcy Code provides that a debtor can only put "substantially similar" claims in the same class. *See* 11 U.S.C. § 1122(a). Likewise, section 1123(a)(4) of the Bankruptcy Code provides that a "plan must 'provide the **same treatment** for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.'" *Schroeder v. New Century Liquidating Trust (In re New Century*

*TRS Holdings, Inc.)*, 407 B.R. 576, 592 (D. Del. 2009) (quoting 11 U.S.C. § 1123(a)(4)) (emphasis added).

60. Courts must enforce section 1123(a)(4) of the Bankruptcy Code according to its plain language. *Id.* (citing *Hartford Underwriters Ins. Co. v. Union Planters*, 530 U.S. 1, 6 (2000)).

61. "Although neither the Code nor the legislative history precisely defines the standards of equal treatment, courts have interpreted the same treatment requirement to mean that all claimants in a class must have the **same opportunity** for recovery." *W.R. Grace & Co.*, 729 F.3d at 327 (internal citations and quotations omitted) (emphasis added); *see also Del. Trust Co. v. Energy Future Intermediate Holdings, LLC (In re Energy Future Holding Corp.)*, 527 B.R. 157, 168 (D. Del. 2015) (quoting *W.R. Grace*).

62. In short, "if claims within the same class are not receiving the same treatment, and the holders of those claims being treated less favorably have not consented to the discrimination, the plan is not confirmable." *Schroeder*, 407 B.R. at 592.

63. The Plan unabashedly treats the PCRB Claims in a dramatically less favorable manner than the other Class C4 TCEH Unsecured Debt Claims in violation of section 1123(a)(4) of the Bankruptcy Code. As provided in Art. III.B.29 of the Plan, the Class C4 TCEH Unsecured Debt Claims will receive a pro rata share of (i) the Rights to purchase New EFH Common Stock pursuant to the Rights Offering and (ii) the Reorganized EFH Common Stock. *See* Art. III.B.29, pp. 57-58.

64. In addition to the treatment set forth in Art. III.B.29, holders of TCEH Deficiency Recipient Claims (which do not include the PCRB Claims) also will receive on account of their Class C4 TCEH Unsecured Debt Claims the benefit of the waiver of the First Lien Deficiency

Claims pursuant to Art. IV.B.15 of the Plan. *See* Plan, Art. III.B.29, pp. 57-58, Art. IV.B.15, p. 64. The holders of the TCEH First Lien Deficiency Claims purport to "waive" any recovery on account of their Class C4 TCEH Unsecured Debt Claims for the benefit of the holders of the TCEH Deficiency Recipient Claims, which do not include the PCRBs. *See* Plan, Art.IV.B.15, p. 64; Settlement Agreement at § 2.2(b); Disclosure Statement, Art. V.E.29, pp. 129-30.

65. The Debtors acknowledge that holders of the PCRB Claims are not receiving *pari passu* treatment with respect to the distribution on account of the waiver of the TCEH First Lien Deficiency Claims. *See* Disclosure Statement, Art. V.E.29, p. 131 ("Holders of PCRB Claims do not receive any share of the recoveries on the TCEH First Lien Deficiency Claim."); Art. I.C.2(c), p. 13 ("if the Court finds that the PCRBs must share *pari passu* with other Holders of TCEH Unsecured Debt Claims" and "[i]n the event the PCRBs were to receive *pari passu* treatment under the Plan").

66. Although the TCEH estate holds billions of dollars in causes of action against the holders of the TCEH First Lien Claims, the Plan purports to deny the holders of the PCRB Claims *any* share in the proceeds (*i.e.*, the distribution on account of the deficiency "waiver") of the release of such causes of action while all other Class C4 creditors are entitle to share in those proceeds. The net effect of that disparate treatment – to which the holders of the PCRB Claims have not consented – is a distribution that is approximately $30 million to $200 million less than the distribution on account of the PCRB Claims if treated *pari passu* with the other Class C4 claims.

67. As a result of Art. IV.B.15 of the Plan, the PCRB Claims do not recover *pari passu* with the other Class C4 TCEH Unsecured Debt Claims, *unless* this Court orders otherwise. Thus, the Plan violates section 1123(a)(4) of the Bankruptcy Code, unless this Court accepts the

invitation in the Plan to order that the PCRB Claims be treated *pari passu* with respect to distributions on account of the TCEH First Lien Deficiency Claims. *See Schroeder*, 407 B.R. at 592 (section 1123(a)(4) violated where plan provided a 100% distribution to some claims in a given class and 130% to other claims in that same class, because the holders of the claims proposed to receive 130% had relinquished claims in an entirely different class).

68. In summary, the Plan violates section 1123(a)(4) of the Bankruptcy Code by failing to provide the "same treatment" for holders of the PCRB Claims – regardless of any alleged reasons for such treatment.

69. Although the reason for failing to provide the "same treatment" for holders of the PCRB Claims is irrelevant under section 1123(a)(4) of the Bankruptcy Code, the PCRB Trustee will discredit the reasons set forth by Plan supporters below.

### 2. The Existence of Claims against Other Debtors is Irrelevant to the Treatment of the PCRB Claims in Class C4.

70. The Debtors attempt to justify the disparate treatment of the PCRB Claims on the grounds that the PCRB Claims only have claims against TCEH, while other Class C4 creditors also have claims against TCEH's subsidiaries. *See* Disclosure Statement, Art. V.E.29, p. 131. This alleged justification lacks merit. First of all, the fact that the subsidiaries hold the operating assets is irrelevant because the disparity in distribution is based upon the TCEH First Lien Deficiency Claims. *By definition*, the assertion of a deficiency claims means that there is *no equity* for Class C4 creditors in TCEH subsidiaries' operating assets.

71. Secondly, none of the Debtors, Sawyer, Mendelsohn, Ying, or Siegert conducted an analysis to determine the value of the claims against the holders of the TCEH First Lien Claims held by TCEH as compared to such claims held by TCEH's subsidiaries. *See* Sawyer Tr. at 682:24-683:8; Mendelsohn Tr. at 254:8-11, 254:13; Ying Tr. at 157:20-158:7; Siegert Tr. at

143:24-144:9, 144:11. Indeed, there is no analysis supporting any discount on the distribution to holders of PCRB Claims, let alone a 50% to 55% discount.

72. Thirdly, Class C5 General Unsecured Claims Against the TCEH Debtors Other Than EFCH includes creditors with trade claims against TCEH alone. Those creditors (unlike holders of the PCRB Claims) are entitled to share in the distribution on account of the waiver of the First Lien Deficiency Claims even though holders of the PCRB Claims, which also have claims against TCEH alone, are precluded from sharing in such distribution. *See* Plan, Art. I.A.346, p. 32. Thus, this alleged justification is pretextual at best.

73. Fourthly, that certain holders of TCEH Deficiency Recipient Claims may hold claims against other Debtors does not constitute consent on behalf of the holders of PCRB Claims to disparate treatment of their Class C4 TCEH Unsecured Debt Claims. The district court's decision in *Schroeder*, 407 B.R. 576, is on point. The question raised on appeal was whether the plan provided unequal treatment to holders of claims in class HC3b by providing a 100% distribution on some claims in class HC3b (the "100% claims") and a 130% distribution on other claims in class HC3b whose holders had relinquished their claims in class HC10b (the "130% claims"). *Id.* at 592. The bankruptcy court concluded that the plan discriminated with consent, reasoning that the holders of the 130% claims, instead of insisting on receiving 100% of the determined distribution for their HC3b claims and 100% of the determined distribution for their HC10b claims (a total distribution of 200%), consented to a less favorable treatment in the form of receiving 0% on their HC10b claims and 130% on their HC3b claims (a total distribution of 130%). *Id.*

74. The district court *reversed* the bankruptcy court's conclusion. *Id.* The consent to less favorable treatment of claims in class HC10b only excused the disparate treatment of claims

in that class. *Id.* Such consent was irrelevant to the disparate treatment of claims in class HC3b. *Id.* The treatment of claims in class HC3b was an entirely separate matter, and it was clear that the plan treated the 100% claims in that class less favorably than the 130% claims without the holders of the 100% claims' consent. *Id.* Thus, the bankruptcy court erred in finding that the plan was in compliance with section 1123(a)(4) of the Bankruptcy Code. *Id.* The district court cautioned that while it "appreciates the complexity of dealing with the tangle of debtor entities, . . . there are limits to what equity alone can accomplish." *Id.* at 592 n.34.

75. The instant case is similar. The Plan provides a distribution on account of PCRB Claims that is significantly less than the distribution on account of other Class C4 Claims. The fact that the holders of TCEH Deficiency Recipient Claims consent to such treatment is irrelevant. The holders of PCRB Claims do not consent. Regardless of the alleged reason (and there is no valid one), the Plan indisputably fails to provide the "same treatment" or "same opportunity" for recovery to creditors in Class C4.

76. Fifthly, the Plan supporters argue that holders of PCRB Claims benefit from the Settlement Agreement because the deficiency claim against TCEH would be much larger if TCEH's assets alone were considered. This argument, however, is both inconsistent with the Plan as filed and applicable law.

77. *All* TCEH Unsecured Debt Claims are classified *together* in Class C4. Thus, the TCEH First Lien Deficiency Claims must be determined based upon all of the TCEH Debtors' assets.

78. In addition, although (absent state law to the contrary) a secured creditor may assert the full amount of its claim against each estate, whether a creditor is oversecured or undersecured is determined based on all of the debtors' assets. *See In re Residential Capital,*

*LLC*, 501 B.R. 549, 598 (Bankr. S.D.N.Y. 2013) ("There is a surprising dearth of case law explicitly addressing the issue of valuing the extent of a creditor's security in multi-debtor cases. The statute likewise does not provide much guidance. The Court agrees with the JSNs that they are entitled to aggregate their collateral across debtor entities. Any other reading of the statute would lead to inequitable and illogical results."); *Id.* at 600 ("It is not surprising that the [d]ebtors cite no case authority in support of their argument. The argument is clearly inconsistent with the code and cannot withstand modest scrutiny.") (citing Hearing Transcript at 12:19-13:3, *In re Revolution Dairy, LLC*, No. 13-20770 (Bankr. D. Utah, Apr. 23, 2013), ECF No. 206)).

### 3. Withdrawal of the Standing Motions Does Not Justify the Unequal Treatment of the PCRB Claims.

79. The Debtors have asserted that the preferential treatment of the TCEH Deficiency Recipient Claims is justifiable on the grounds that the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group are withdrawing the Standing Motions with respect to claims against the holders of the TCEH First Lien Claims.[4] *See* Motion at p. 110, ¶ 243. In so arguing, the Debtors insinuate that the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group should be entitled to a greater distribution on account of the settlement of causes of action that are – and always have been – property of TCEH's bankruptcy estate. That argument is baseless.

80. There is no dispute that the claims against the holders of TCEH First Lien Claims belong to the TCEH Debtors, not the TCEH Unsecured Ad Hoc Group. *See generally In re Emoral, Inc.*, 740 F.3d 875, 879 (3d Cir. 2014) (causes of action are property of the bankruptcy estate); *Jevic Holding Corp. v. CIT Group/Business Credit Inc. (In re Jevic Holding Corp.)*, 787 F.3d 173, 188 (3d Cir. 2015) (Scirica, J., dissenting) (cause of action is property of the estate); TCEH Unsecured Ad Hoc Group Standing Motion, pp. 1-2 (TCEH Unsecured Ad Hoc Group

---

[4] The Standing Motions were not granted. They are pending. *See* Disclosure Statement, Art. IV.J, p. 91.

"brings this Motion for entry of an order granting standing and authority to commence, prosecute, and settle certain causes of action *on behalf of the TCEH Debtors* relating to the First Lien Debt") (emphasis added); *see also* TCEH Committee Standing Motion, p. 36.

81. Proceeds of TCEH's causes of action also are property of TCEH's estate. *See Jevic Holding Corp.*, 787 F.3d at 188 (Scirica, J., dissenting) (citing *Bd of Trs. Of Teamsters Local 863 v. Foodtown, Inc.*, 296 F.3d 164, 169 (3d Cir. 2002); 11 U.S.C. § 541(a)(6)). Thus, the distributions on account of the TCEH First Lien Deficiency Claims are property of the TCEH estate because its claims are settled in exchange for those distributions.

82. Holders of the PCRB Claims are entitled to share *pari passu* in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims. *See In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 465 (E.D. Pa. 1998) (rejecting a proposed settlement of estate causes of action for the disproportionate benefit of the creditors that negotiated the settlement agreement); *Young v. Higbee Co.*, 324 U.S. 204 (1945) (shareholders who withdrew their appeal from a confirmation order in return for compensation — paid from non-estate property by insiders of the debtor —larger than the plan provided to other shareholders breached their duty of good faith to other shareholders).

83. Contending that the TCEH Official Committee and the TCEH Unsecured Ad Hoc Group's filing of a Standing Motion is a basis for the disparate treatment of the PCRB Claims also is belied by the facts. None of the indenture trustee for the holders of the TCEH Second Lien Note Claims, the holders of the TCEH Second Lien Note Claims, or the Class C5 General Unsecured Claims Against the TCEH Debtors Other Than EFCH filed a motion for derivative standing to assert claims on behalf of the estates of TCEH and its subsidiaries. Yet, each of

those creditor groups will share in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.

84.  *Every* creditor of TCEH's bankruptcy estate, including holders of the PCRB Claims, is entitled to share in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims. The fact that the Plan attempts to preclude the holders of PCRB Claims from participating in such distribution is both unfair and in violation of section 1123(a)(4) of the Bankruptcy Code.

### C. The Plan Is Not Proposed in Good Faith.

85.  A plan must be "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code . . . with the most important feature being an inquiry into the fundamental fairness of the plan." *In re ACandS, Inc.*, 311 B.R. 36, 43 (Bankr. D. Del. 2004); *see also Stonington Partners, Inc. v. Official Comm. of Unsecured Creditors (In re Lernout & Hauspie Speech Products, N.V.)*, 308 B.R. 672, 675 (D. Del. 2004).

86.  A plan is proposed in good faith when the plan (i) fosters a result consistent with the Bankruptcy Code's objectives, (ii) has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected, and (iii) is fundamentally fair in dealing with creditors. *See In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013).

87.  The requirement that a plan be proposed in good faith must be viewed in light of the totality of the circumstances. This standard speaks more to process than the content of the plan. *See In re 20 Bayard Views, LLC*, 445 B.R. 83, 96 (Bankr. E.D.N.Y. 2011).

88.  The circumstances surrounding the negotiation of the Plan evidence a lack of good faith in the formulation of the Plan. As detailed above, the Debtors took the position that the PCRB Claims should be treated *pari passu* with other unsecured creditors of TCEH. *See*

Sawyer Tr. at 678:5-21. Indeed, the earlier versions of a chapter 11 plan provided that the PCRB Claims would receive treatment *pari passu* with the other holders of C4 TCEH Unsecured Debt Claims with a full (not "limited") waiver of the TCEH First Lien Deficiency Claims.

89. The TCEH Unsecured Ad Hoc Group was unwilling to treat the PCRB Claims *pari passu* with other unsecured creditors of TCEH. Disclosure Statement, Art. V.E.29, p. 131; *see also* Sawyer Tr. at 678:17-690:4. ████████████████████████████████████████████████████████████████████████████████████████

90. In order to control the vote of Class C4 TCEH Unsecured Debt Claims, the Plan funders needed the consent of the TCEH Second Lien Note Claims. Accordingly, the TCEH Unsecured Ad Hoc Group proposed that holders of TCEH Second Lien Note Claims be entitled to share in the waiver of the First Lien Deficiency Claims with the TCEH Unsecured Note Claims. As the PCRB Claims are a minority of the Class C4 Claims, the TCEH Unsecured Ad Hoc Group did not need the votes of the PCRB Claims. Therefore, the TCEH Unsecured Ad Hoc Group excluded the PCRB Claims from sharing in the distribution on account of the waiver of the First Lien Deficiency Claim while increasing their distribution on account of the TCEH Unsecured Note Claims.

91. In short, the TCEH Unsecured Ad Hoc Group provided a greater distribution for holders of the TCEH Unsecured Note Claims and the TCEH Second Lien Note Claims to garner the votes of such holders. "Section 1123(a)(4) prevents a plan proponent from rigging the vote of a particular class by providing for more favorable treatment to a claim that by virtue of its amount controls whether or not the class accepts the plan." *Dugan v. PBGC (In re Rhodes, Inc.)*, 382 B.R. 550, 556 (Bankr. N.D. Ga. 2008). Thus, the Plan was not proposed in good faith and is

prohibited by law because the Debtors (by adopting the TCEH Unsecured Ad Hoc Group's scheme) violated section 1123(a)(4) by offering more consideration to Class C4 members whose votes were necessary and sufficient to control the Class C4 vote.

92.    The TCEH Unsecured Ad Hoc Group also needed to secure the vote of unsecured creditors in Class C5 General Unsecured Claims Against the TCEH Debtors Other than EFCH. Accordingly, the TCEH Unsecured Ad Hoc Group ultimately proposed that holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH be entitled to share in the distribution on account of deficiency waiver. Thus, all Class C4 creditors (other than holders of PCRB Claims) and all Class C5 creditors (even trade creditors with claims *solely* against TCEH) are entitled to share in the waiver of the First Lien Deficiency Claims – while the PCRB Claims alone are excluded from sharing in the deficiency waiver.

93.    The TCEH Unsecured Ad Hoc Group devised a scheme that increased their share of the TCEH Debtors' estates at the expense of the PCRB Claims. *See generally In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 240 (Bankr. D. N.J. 2000) ("Of course, the classification and treatment of classes of claims is always subject to the good faith requirements of § 1129(a)(3)."). Thus, the Plan was not proposed in good faith.

**D.    The Plan May Be Confirmed If this Court Accepts the Invitation in the Plan to Require the *Pari Passu* Treatment of the PCRB Claims.**

94.    The Plan *can* be confirmed *if* the Court orders that holders of the PCRB Claims must share *pari passu* in the distribution on account of the waiver of the TCEH First Lien Deficiency Claims. The Debtors wisely included provisions that would allow the Settlement Agreement and Plan to proceed if the Court rules that the PCRB Claims are entitled to share *pari passu* in the distribution on account of the TCEH First Lien Deficiency Claims waiver. *See* Settlement Agreement at § 2.2(b); Plan, Art. IV.B.15, p. 64.

95. Therefore, this Court either must (i) deny confirmation of the Plan or (ii) confirm the Plan upon the condition that the holders of the PCRB Claims share *pari passu* with the other Class C4 creditors, including with respect to the distribution on account of the waiver of the TCEH First Lien Deficiency Claims.

### E. The Allowed Amount of the PCRB Claims Should Be $881,529,669.00.

96. The PCRB Trustee timely filed unsecured proofs of claim relating to the PCRB Claims (excluding the Repurchased PCRBs), including principal, plus interest, fees, and expenses. The Plan provides that the PCRB Claims are allowed in the amount of $881,496,233. *See* Plan, Art. III.B.29(b), p. 57. However, such allowed amount fails to include the fees and expenses that required to be paid under the indentures relating to the PCRB Claims. The PCRB Claims should be allowed in the Amount of $881,529,669.00, which is calculated as follows:

| Pre-Petition BNYM Fees | $25,020.00 |
| Pre-Petition Reed Smith Fees | $8,416.00 |
| Principal | $855,110,000.00 |
| Interest | $26,386,233.00 |
| **Total Claim** | **$881,529,669.00** |

### F. The Plan Provides for the Improper Payment of Professional Fees and Expenses.

97. Art. IV.R of the Plan provides for the payment of the fees and expenses of various professionals, including those retained by the TCEH Unsecured Ad Hoc Group, without further notice to or action, order, or approval of the Bankruptcy Court. Thus, the Plan violates sections 1129(a)(4) and 503(b) of the Bankruptcy Code. *See* 11 U.S.C. § 1129(a)(4) (plan must provide that "[a]ny payment . . . to be made . . . for services or for costs and expenses . . . has been approved by, or is subject to the approval of, the court as reasonable").

### G. The Stay Pending Appeal Should Not Be Waived.

98. Bankruptcy Rule 3020(e) provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). The stay should not be waived.

99. The purpose of a stay pending appeal is to provide sufficient time for an objecting party to request a stay pending appeal before the order can be implemented. An objecting party should have time to appeal and seek a stay to avoid arguments that the appeal may well be moot. *But see In re One2One Commc'ns, LLC*, No. 13-3410, 2015 WL 4430302 (3d Cir. July 21, 2015) (questioning equitable mootness doctrine).

100. Absent *pari passu* treatment of the PCRB Claims, BNYM intends to appeal any order approving the Plan and seek a stay. The fourteen-day stay of Bankruptcy Rule 3020(e), to the extent applicable, is necessary to preserve the right of BNYM to seek a stay of any order approving the Plan pending appeal. The Debtors cannot demonstrate that there is a need to consummate the Plan within the 14-day period nor can the Debtors show that the interests of holders of PCRB Claims are sufficiently protected.

101. Therefore, the stay should not be waived.

### IV. RESERVATION OF RIGHTS

102. BNYM reserves its rights to supplement the objections set forth herein and to support objections asserted by other parties in interest.

## V. CONCLUSION

For the foregoing reasons, BNYM respectfully requests that the Court enter an Order (a)(i) denying confirmation of the Plan or (ii) confirming the Plan *only if* the holders of PCRB Claims share *pari passu* with the TCEH Deficiency Recipient Claims in the distributions on account of the "waiver" of the TCEH First Lien Deficiency Claims, and (b) granting such further relief to BNYM as is appropriate.

Dated: October 23, 2015
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne (No. 3951)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com

Sarah K. Kam (*pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 549-0284
Facsimile: (212) 521-5450
Email: skam@reedsmith.com

Counsel to The Bank of New York Mellon, in its capacity as the PCRB Trustee