# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

555 California Street
San Francisco, California 94104

Christopher W. Keegan
To Call Writer Directly:
(415) 439-1882
chris.keegan@kirkland.com

(415) 439-1400

www.kirkland.com

Facsimile:
(415) 439-1500

October 27, 2015

**By ECF and Hand Delivery**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
824 North Market Street, 5th Floor
Wilmington, Delaware 19801

Re:   *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.*, D.I. 5789, *In re Energy Future Holdings, Corp., et. al.* (Case 14-10979).

Dear Judge Sontchi:

I write on behalf of the Debtors to provide an update on the status of the dispute with Alcoa Inc. ("Alcoa") and the issues raised in the September 9, 2015 conference with the Court. Since that time, the parties have made significant progress, exchanging multiple draft schedules, holding at least five meet and confers, and reaching agreement on dates for a proposed scheduling order tied to the February 9, 2015 trial date. The Parties are prepared to move forward with discovery and the Debtors continue to be prepared to produce documents to Alcoa in response to their discovery requests.

However, there is one primary dispute that the Debtors and Alcoa have not been able to resolve: whether two of Alcoa's business people should have access to the Debtors' Highly Confidential information. In addition, the Debtors ask for guidance on a reasonable limitation on the number of fact depositions for this dispute. The Debtors do not raise these issues with the Court lightly—they have engaged in extensive, good-faith negotiations concerning all matters associated with discovery scheduling and the terms of a proposed Confidentiality Agreement and Stipulated Protective Order specific to the Motion to Assume the Alcoa Contracts. The Debtors have been able to reach agreement with Alcoa on all but these two issues.

Beijing    Chicago    Hong Kong    Houston    London    Los Angeles    Munich    New York    Palo Alto    Shanghai    Washington, D.C.

RLF1 13204515v.1

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 27, 2015
Page 2

For the reasons set forth below, the Debtors ask for the Court's attention. We believe the Court can resolve both of these disputes on the papers, but will be available at the Court's convenience if it believes a hearing is appropriate.

I. **This Dispute Should Be Governed By The Standard Protective Order In Place In These Bankruptcy Cases.**

Alcoa refuses to agree to the standard *Confidentiality Agreement and Stipulated Protective Order* [D.I. 1833] ("Protective Order")—entered into by every other party to these chapter 11 cases—which, as explained below, provides for the modified attorneys' eyes only treatment of Highly Confidential documents. Instead, Alcoa believes two of its business personnel at the Rockdale facilities should have access to the Debtors' Highly Confidential material. While Alcoa disputes whether its business people should have access to the Highly Confidential documents, it does ***not*** have any dispute regarding materials marked "Confidential." Accordingly, the Debtors have for more than eight weeks attempted to provide Alcoa with a set of documents bearing this lesser confidentiality designation. Despite the Debtors' multiple attempts, Alcoa has refused to accept *any* of the Debtors' discovery materials. Alcoa's unwillingness to treat any documents as "Confidential" has unnecessarily delayed discovery in these cases.

The standard Protective Order has two tiers of confidentiality and limits disclosure of "Highly Confidential" material to outside counsel, retained advisors and experts, persons who received or authored the materials, witnesses (when used for witness preparation and only if necessary), litigation support personnel, court reporters and related entities, representatives of the Court, and certain governmental authorities. *See* Protective Order ¶ 13(a)-(i). The "Confidential" tier allows additional disclosure of materials to the parties and is not in dispute here. *See id.* ¶ 12. The Protective Order was entered in these cases on August 13, 2014 and has proven effective in establishing the ground rules for the production of millions of pages of discovery materials, including sensitive commercial and proprietary business information. There is no reason to deviate from the Protective Order approved by this Court and relied upon in these chapter 11 cases.

In the course of this litigation, the Debtors intend to produce sensitive business analyses of the Alcoa Contracts. These documents contain the Debtors' financial projections, assessment of market conditions, operating assumptions, and other competitively sensitive details including the Debtors' forward power curves. Alcoa has also asked the Debtors to produce analyses implicating the impacts of federal environmental regulations on operations with Alcoa, as well as documents setting forth the business rationale for undertaking capital expenditures at the relevant electricity generation facilities. Certain of these documents constitute highly sensitive commercial information because they divulge the internal process and sensitive assumptions by

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
October 27, 2015
Page 3

which the Debtors make decisions about administering a complex commercial relationship with a sophisticated counterparty like Alcoa.

Disclosing these materials to the Alcoa employees in charge of managing these contracts creates an unavoidable risk of Alcoa obtaining an unfair business advantage in its future relations with the Debtors. This is why courts have routinely held that where contract counterparties exchange sensitive materials relating to their business operations in the course of litigation, those materials must be shielded from disclosure to the operations and business personnel who can use that information to gain undue commercial advantage in the business relationship.

For instance, in *Suture Exp., Inc. v. Cardinal Health, 200, LLC*, where a plaintiff in an antitrust and unfair competition suit sought to have a member of its board of directors access highly confidential information, the court considered whether or not that individual "would be virtually unable to compartmentalize the information [at issue] and not use the information to seek to gain an unfair competitive advantage." No. 12-2760, 2013 WL 6909158, at *7 (D. Kan. Dec. 31, 2013). The court entered a protective order barring access to this sensitive information, finding that the individual's status as a board member created "a significant opportunity for the inadvertent disclosure of 'Highly Confidential' information." *Id.* at *7-8; *accord Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 546 F. Supp. 2d 951, 953-54 (S.D. Cal. 2008) (holding that in-house attorney was barred from reviewing "Highly Confidential" discovery materials upon finding that attorney was "engaged in competitive decision-making"); *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) (refusing party's request to allow company president access to "Highly Confidential" materials). In this case, if Alcoa personnel gain access to the Debtors' business analysis of the Alcoa Contracts and other sensitive materials, they can and will use this information to their advantage in a contractual relationship that is set to continue for more than two decades.

Moreover, the Protective Order includes a procedure to allow a party to challenge the designation of Highly Confidential discovery materials. *See* Protective Order ¶ 28. To date, Alcoa has refused to accept documents the Debtors offered to produce two months ago. But if, after reviewing the Debtors' document production, Alcoa disagrees with the Debtors' confidentiality designations, the Protective Order provides for efficient resolution of that dispute. The Debtors see no need to abandon—in a vacuum—a confidentiality framework that has functioned effectively in these chapter 11 cases for over fourteen months.

The Debtors are aware of no legitimate reason why counsel for Alcoa needs to disclose Highly Confidential materials to its business personnel to prepare its case. While these individuals may be familiar with the facts and claims at issue, they are in no way *uniquely* qualified to assist Alcoa in reviewing the Debtors' discovery. *See Suture Express*, 2013 WL 6909158, at *8 (denying plaintiff's board member access to Highly Confidential documents and finding that his ability to aid counsel did "not appear to rise to the level of being uniquely

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 27, 2015
Page 4

qualified that would impair Plaintiff's ability to effectively proceed with th[e] litigation"). Instead, consistent with the practice of the other parties to these chapter 11 cases, Alcoa's counsel may engage any number of financial and energy industry experts to review the Debtors' most sensitive documents. Under the Protective Order, these professionals will have access to Highly Confidential material and will be able to assist Alcoa in its trial preparation.

## II.    The Debtors Request Guidance on a Limit on Fact Depositions.

In order to efficiently manage this dispute and focus the parties on the core issues in the litigation, the Debtors request the Court's guidance on a reasonable limit on fact depositions. The Debtors recently proposed to Alcoa that each side be able to take four six-hour fact depositions and one Rule 30(b)(6) deposition of up to twelve hours. The Debtors believe these limits, which do not apply to depositions of experts, will enable the parties to effectively and efficiently proceed to trial. They are also consistent with the presumptive limit on depositions in full-scale lawsuits. *See* Fed. R. Civ. P. 30(a)(2) (requiring leave for "more than 10 depositions being taken"); Fed. R. Bankr. P. 7030 ("Rule 30 Fed. R. Civ. P. applies in adversary proceedings.").

As its counsel represented during the September 9, 2015 telephonic scheduling conference, Alcoa is not challenging the Debtors' decision to assume the relevant contracts as part of its chapter 11 restructuring; rather, Alcoa is focused on alleged cure claims it may have in connection with the assumption of those contracts. Given this narrow focus, the Debtors believe that thirty-six hours of deposition time across multiple witnesses is sufficient to allow a full investigation into the merits of alleged cure claims. To the extent unforeseen issues arise during the course of litigation necessitating that the parties revisit these limits, the Debtors have proposed that additional depositions will be permitted upon a showing of good cause.

While Alcoa may argue that setting a limit is premature, the Debtors do not agree. Alcoa is already deeply familiar with the issues and people relevant to this dispute. Business personnel from the Debtors and Alcoa have for years held monthly meetings regarding the Alcoa Contracts. The parties had a three-week trial in 2010 involving essentially the same types of claims that Alcoa filed in this Court in October 2014. The Debtors provided responses more than eight weeks ago to Alcoa's interrogatories regarding potential witnesses. As a result, it is reasonable for Alcoa to have a view as to how many—and which—depositions are necessary.

Finally, under the parties' proposed scheduling order, depositions are set to begin in just a few weeks. In order to coordinate schedules over the holiday period and prepare witnesses for testimony, Alcoa must soon identify the witnesses it seeks to depose. It is no burden for Alcoa to agree today to reasonable limitations on the number and scope of depositions.

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
October 27, 2015
Page 5

      The Debtors therefore respectfully request that the Court (1) refuse Alcoa's demand to allow employee access to the Debtors' Highly Confidential information, and (2) provide the parties with guidance on a limited number of depositions for this dispute.

      Sincerely,

      */s/ Christopher W. Keegan*

      Christopher W. Keegan

CWK/rt