**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>**Re: Docket No. 6463**<br><br>**Hearing Date:  November 25, 2015 at 10:00 a.m.**<br>**Objection Deadline: October 28, 2015 at 4:00 p.m**. |

**RESPONSE OF EFH LEGACY NOTES TRUSTEE TO OBJECTION OF ENERGY
FUTURE HOLDINGS CORP. TO PROOFS OF CLAIM 6524-6733, 7477, 7478 AND 7479
FILED BY AMERICAN STOCK TRANSFER & TRUST CO. LLC AS
<u>INDENTURE TRUSTEE FOR EFH LEGACY NOTES</u>**

---

[1]     The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein.

Table of Contents

Page

I. PRELIMINARY STATEMENT ........................................................................................... 1

II. BACKGROUND ................................................................................................................ 3

    A.    Execution of the Indentures and Issuance of the EFH Legacy Notes .................... 3

    B.    AST's Retention and Role as Indenture Trustee for the EFH Legacy Notes ......... 4

    C.    Proofs of Claim Filed by the EFH Legacy Notes Trustee on Account of Claims Arising Under the EFH Legacy Notes ................................................................... 4

    D.    The Debtors' Plan and Objections to the EFH Legacy Note Claims ..................... 5

III. RESPONSE ....................................................................................................................... 7

    A.    Introduction and Discussion of Impact of Solvency on EFH Legacy Proofs of Claim ................................................................................................................... 7

        (i)    The Debtors Have Conceded That EFH Corp. is Solvent .............. 8

        (ii)    The Debtors Have Not Carried Their Burden to Establish Insolvency as a Defense to the Allowance of the EFH Legacy Proofs of Claim ................................................................................ 9

        (iii)    Case Law Regarding Solvent Debtors Requires That the EFH Legacy Notes Trustee's Claims be Allowed ................................. 10

    B.    The Makewhole Claims Must be Allowed Regardless of the Solvency of EFH Corp. ................................................................................................................... 13

        (i)    The Relevant Makewhole Provisions of the EFH Legacy Indentures and Notes ..................................................................... 14

        (ii)    The EFH Legacy Q/R Holders are Contractually Entitled to Payment of the Makewhole Amounts and There Was No Automatic Acceleration Upon the Filing ...................................... 16

            (a)    Unlike Other Indentures In These Cases, the EFH Legacy Q/R Notes Did Not Accelerate By Their Terms ............... 16

            (b)    The Debtor Has Admitted in Public Filings and Documents Sent to Investors That There Is No Automatic Acceleration — Even in Bankruptcy — and Should Be Held to Those Admissions ................................................................... 17

            (c)    The Fixed "Stated Maturity" Dates Were Not Automatically Advanced By the Filing of the Petition or Operation of the Bankruptcy Code ................................... 18

        (iii)    The Redemption Price Is Not Unmatured Interest ........................ 23

        (iv)    Payment and Cancellation of the EFH Legacy Notes Constitutes Redemption ................................................................................... 26

        (v)    The Makewhole Claims Should Also Independently Be Allowed Under the Case Law Regarding Solvent Debtors ......................... 27

    C.    EFH Legacy Noteholders Are Entitled to Post-petition Interest at the Contract Rate ................................................................................................................... 27

        (i)    The Solvent Debtor Cases Require Payment of Interest at the Contract Rate ................................................................................ 28

Table of Contents (continued)

Page

    (ii)    Section 726(a)(5) Does Not Mandate Use of the Federal Judgment Rate in Chapter 11 Cases ............................................................. 29

    (iii)    Section 1129(b)(1) Mandates Contract Rate Interest in Order for the Plan to be Fair and Equitable Even if This is Not a Solvent Debtor Case.................................................................................. 32

    (iv)    The Plan's Treatment of the EFH Legacy Note Claims as Unimpaired Mandates Compliance With Section 1124 and Therefore Payment of Contract Rate Interest ............................... 33

D.    Controlling Supreme Court Precedent Requires Payment of EFH Legacy Notes Trustee Fees and Expenses as Part of EFH Legacy Notes Trustee's Unsecured Claim.................................................................................................................. 33

    (i)    Reservation of Rights With Respect to Allowance of EFH Legacy Notes Trustee Fees and Expenses as Administrative Expenses.... 35

E.    The EFH Legacy Notes Trustee Claims Should be Allowed to the Extent They Include Amounts for Unamortized Original Issue Discount ................................ 36

F.    The EFH Legacy Proofs of Claim Are Not Overstated ........................................ 37

G.    The EFH Legacy Noteholders are Entitled to Restitution Based on Unjust Enrichment as an Alternative Theory of Recovery................................................ 37

IV. RESERVATION OF RIGHTS .............................................................................................. 38

V. CONCLUSION ..................................................................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Butner v. U.S.*,
440 U.S. 48 (1979)............................................................................................22

*Cohen v. De La Cruz*,
523 U.S. 213 (1998)..........................................................................................28

*Consol. Rock Prods. Co. v. Dubois*,
312 U.S. 510 (1941)..........................................................................................28

*Continental Sec. Corp. v. Shenandoah Nursing Home P'shp*,
188 B.R. 205 (W.D. Va. 1995) .........................................................................23

*CSC Trust Co. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future
Holdings Corp.),*
513 B.R. 651 (Bankr. D. Del. 2014) .............................................................10, 11

*Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp.*,
679 F.2d 264 (1st Cir. 1982).....................................................................11, 12, 13

*Dewsnup v. Timm*,
502 U.S. 410 (1992)..........................................................................................28

*Empire Trust Co. v. Equitable Office Bldg. Corp.*,
167 F.2d 346 (2d Cir. 1948)..............................................................................28

*Erie v. Tompkins*,
304 U.S. 64 (1938)............................................................................................31

*Gencarelli v. Gencarelli*,
501 F.3d 1 (1st Cir. 2007).............................................................................10, 27

*HSBC Bank USA v. Calpine Corp.*,
2010 U.S. Dist. LEXIS 96792 (S.D.N.Y. Sept. 14, 2010)...............................22, 23

*In re 360 Inns, Ltd.*,
76 B.R. 573 (Bankr. N.D. Tex. 1987)...............................................................24

*In re 431 Ponce de Leon, LLC*,
515 B.R. 660 (Bankr. N.D. Ga. Aug. 11, 2014) ...............................................30

*In re Allegheny Int'l Inc.*,
954 F.2d 167 (3d Cir. 1992)............................................................................9, 13

*In re AMR Corp.*,
    730 F.3d 88 (2d Cir. 2013)....................................................................................22

*In re Beguelin,*
    220 B.R. 94 (9th Cir. B.A.P. 1998)........................................................................30

*In re Chemtura Corp.*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ........................................................... *passim*

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,*
    791 F.2d 524 (7th Cir. 1986) ................................................................................11

*In re Combustion Engineering, Inc.,*
    391 F.3d 190 (3d Cir. 2004). Bankruptcy ..............................................................22

*In re Coram Healthcare Corp.*,
    315 B.R. 321 (Bankr. D. Del. 2004) ................................................................30, 31

*In re Cybergenics Corp.*,
    226 F.3d 237 (3d Cir. 2000).................................................................................11

*In re Dow Corning Corp.*,
    244 B.R. 678 (Bankr. E.D. Mich. 1999) ..................................................12, 28, 30

*In re Dow Corning Corp.,*
    456 F.3d 668 (6th Cir. 2006) ....................................................................... *passim*

*In re Elec. Mach. Enters.,*
    371 B.R. 549 (Bankr. M.D. Fla. 2007) ..................................................................34

*In re Energy Future Holdings Corp.*,
    527 B.R. 178 (Bankr. D. Del. 2015) ......................................................................20

*In re Fast*,
    318 B.R. 183 (Bankr. D. Colo. 2004) ..............................................................13, 30

*In re Fed.-Mogul Global Inc.,*
    684 F.3d 355 (3d Cir. 2012)..................................................................................28

*In re Integrated Telecom Express, Inc.,*
    384 F.3d 108 (3d Cir. 2004)..................................................................................11

*In re LHD Realty Corp.,*
    726 F.2d 327 (7th Cir. 1984) ................................................................................21

*In re Los Angeles Dodgers LLC,*
    465 B.R. 18 (D. Del. 2011)...................................................................................11

*In re Oakwood Homes Corp.*,
  449 F.3d 588 (3d Cir. 2006)...........................................................................19

*In re Payless Cashways, Inc.*,
  287 B.R. 482 (Bankr. W.D. Mo. 2002)...........................................................20

*In re Premier Entm't Biloxi, LLC*,
  445 B.R. 582 (Bankr. S.D. Miss. 2010).............................................11, 20, 36

*In re Ridgewood Apartments*,
  174 B.R. 712 (Bankr. S.D. Ohio 1994)...........................................................23

*In re Sch. Specialty, Inc.*,
  2013 Bankr. LEXIS 1897 (Bankr. D. Del. Apr. 22, 2013) .......................23, 26

*In re Schoeneberg*,
  156 B.R. 963 (Bankr. W.D. Tex 1993).............................................................30

*In re Seda France, Inc.*,
  2011 WL 3022563 (Bankr. W.D. Tex. July 22, 2011) ...................................34

*In re Skyler Ridge*,
  80 B.R. 500 (Bankr. C.D. Cal. 1987)..................................................20, 23, 25

*In re Solutia Inc.*,
  379 B.R. 473 (Bankr. S.D.N.Y. 2007).............................................................22

*In re Southland Corp.*,
  160 F.3d 1054 (5th Cir. 1998) ........................................................................32

*In re Terry Ltd. P'ship*,
  27 F.3d 241 (7th Cir. 1994) ............................................................................32

*In re Trico Marine Servs., Inc.*, 450 B.R. 474 (Bankr. D. Del 2011) ...................23, 24

*Noonan v. Fremont Fin. (In re Lappin Elec. Co.)*,
  245 B.R. 326 (Bankr. E.D. Wis. 2000).............................................................24

*Ogle v. Fid. & Deposit Co.*,
  586 F.3d 143 (2d Cir. 2009)............................................................................35

*Onink v. Cardelucci (In re Cardelucci)*,
  285 F.3d 1231 (9th Cir. 2002) ........................................................................30

*Paloian v. LaSalle Bank N.A (In re Doctors Hosp. of Hyde Park, Inc.)*,
  508 B.R. 697 (Bankr. N.D. Ill. 2014) .......................................................24, 25

*Ruskin v. Griffiths*,
  269 F.2d 827 (2d Cir. 1959).............................................................................11

*Travelers Cas. & Sur. Co. of Am. v. PG&E*,
    549 U.S. 443 (2007) .............................................................................................. *passim*

**STATE CASES**

*Arthur v. Burkich*,
    131 A.D.2d 105 (N.Y. App. Div. 1987) ............................................................... 25

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) ........................................................................................... 37

*Miller v. Schloss*,
    218 N.Y. 400 (1916) ............................................................................................. 37

**FEDERAL STATUTES**

11 U.S.C. § 101(3) ...................................................................................................... 12

11 U.S.C. § 502(b) .............................................................................................. *passim*

11 U.S.C. § 726(a)(5) .......................................................................................... *passim*

11 U.S.C. § 1129(a)(3) ............................................................................................... 18

11 U.S.C. § 1129(a)(7) ........................................................................................ *passim*

11 U.S.C. § 1129(b) ............................................................................................ *passim*

**OTHER AUTHORITIES**

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT (2011) .......................... 37, 38

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The

Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Legacy Notes

Trustee") under the indentures (the "Indentures") for certain notes (the "EFH Legacy Notes" and

the holders thereof, the "EFH Legacy Noteholders") issued by Energy Future Holdings Corp.

("EFH Corp.") (as described in Exhibit 1 attached hereto), by its undersigned counsel, hereby

responds (the "Response") to the *Objection of EFH Corp. to Proofs of Claim 6524-6733, 7477,*

*7478 and 7479 filed by American Stock Transfer and Trust Co., LLC as Indenture Trustee for*

*EFH Legacy Notes* [Docket No. 6463] (the "Second Claim Objection").[2]  In response to the

Second Claim Objection, the EFH Legacy Notes Trustee respectfully states as follows:

## I.
## PRELIMINARY STATEMENT

1.      Under the Plan, the Debtors propose that the "allowed" amount of the claims filed

by the EFH Legacy Notes Trustee be limited to (i) the principal amount outstanding, (ii) accrued

but unpaid prepetition interest under the applicable indenture, and (iii) accrued post-petition

interest at the Federal Judgment Rate, but not including any Makewhole Claims.  *See* Plan, at

Article III.B.4.  If the Plan is confirmed in its current form, the non-Debtor EFH Legacy

Noteholders would receive the following amounts:

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Second Claim Objection, the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 6122] (the "Plan") or the *EFH Indenture Trustee's Objection and Pretrial Brief for Phase I Trial Regarding Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.* [Docket No. 6609] (the "Plan Objection"), as applicable.

| Legacy Issuance | Principal due at April 28, 2014 | Accrued Interest Through April 28, 2014 | Post-petition Interest At Federal Judgment Rate Assuming Emergence on March 31, 2016 |
|---|---|---|---|
| Series P | $90,323,000 | $2,283,667 | $196,252 |
| Series Q | $200,414,000 | $5,934,481 | $437,294 |
| Series R | $291,297,000 | $8,691,979 | $635,737 |
| **TOTAL:** | **$582,034,000** | **$16,910,127** | **$1,269,283** |

2.      As set forth in the EFH Legacy Note Trustee's Plan Objection and below, contrary to the assertions in the Second Claim Objection, the allowed claims of the EFH Legacy Noteholders should also include makewhole claims, contract rate post-petition interest and the fees and expenses of the EFH Legacy Notes Trustee and its advisors.

3.      <u>First</u>, as explained below, the makewhole claims must be allowed because EFH Corp.'s bankruptcy filing did not result in an acceleration of the debt (pursuant to the indenture or otherwise).  The makewhole claims are liquidated damages, not unmatured interest subject to disallowance under section 502(b)(2).  Furthermore, because EFH Corp. is solvent, all amounts due under the EFH Legacy Notes Indentures, including makewholes, must be paid.

4.      <u>Second</u>, post-petition interest on the EFH Legacy Notes must be allowed at the contract rate because no provision of the Bankruptcy Code specifically disallows contract rate interest, and the evidence will show that EFH Corp. is solvent.  In the Second Claim Objection, the Debtors attempt to negate the validity of the EFH Legacy Noteholders' claims by stating in a conclusory manner that EFH Corp. is insolvent.  However, in connection with those bald assertions, the Debtors present no evidence of insolvency and therefore they have not carried their burden to overcome the validity of the EFH Legacy Noteholders' claims for post-petition interest at the contract rate.  In addition, as demonstrated below, the claim for contract rate post-petition interest should be allowed regardless of whether EFH Corp. is solvent.

5.      Third, the fees and expenses of the EFH Legacy Notes Trustee are plainly

allowable under the Supreme Court's decision in *Travelers Cas. & Sur. Co. of Am. v. PG&E*,

549 U.S. 443 (2007) as part of the EFH Legacy Notes Trustee's unsecured claim.  In addition,

those fees and expenses are also allowable as administrative expenses because EFH Corp.

required the services of an indenture trustee during these cases to comply with the Trust

Indenture Act of 1939 ("TIA").

## II.
## BACKGROUND

### A.      Execution of the Indentures and Issuance of the EFH Legacy Notes

6.      On November 1, 2004, TXU Corp. (the predecessor to EFH Corp.) and The Bank

of New York ("BNY"), as trustee, executed:

- the Indenture (for Unsecured Debt Securities Series P), dated as of November 1, 2004;
- the Indenture (for Unsecured Debt Securities Series Q), dated as of November 1, 2004; and
- the Indenture (for Unsecured Debt Securities Series P), dated as of November 1, 2004.

*See* Second Claim Objection, at Exs. 1 to 3.

7.      On November 26, 2004, pursuant to the authority granted in the Board Resolution

of TXU Corp., Anthony Horton, the Senior Vice President and Treasurer of TXU Corp., signed

officer certificates specifying the terms of the EFH Legacy Notes to be issued.  *See id.*  The EFH

Legacy Notes were sold at the following percentages of par to investors: Series P - 99.798%;

Series Q - 99.572%; and Series R - 99.496%.  *See* Second Claim Objection, at p. 23 n.15.

8.      Prior to the Petition Date, the Debtors entered into a series of exchanges and

repurchases of the EFH Legacy Notes, including those under the Liability Management Program

described in the Disclosure Statement.  *See* Disclosure Statement, at Section III.G.1.a.  As a

result of these exchanges and repurchases, EFIH holds approximately $1,282 million of

aggregate face amount of EFH Legacy Notes, and EFH Corp. holds approximately $564 million

of aggregate face amount of EFH Legacy Notes.  *See id.* at p. 4, 51-52; Energy Future Holdings

Corp. Annual Report (Form 10-K) (April 30, 2014).  These EFH Legacy Notes have not been

canceled and, thus, remain outstanding.   As of the Petition Date, the following principal

amounts were outstanding:

- $928,564,000 aggregate principal amount of Series P Notes;
- $750,000,000 aggregate principal amount of Series Q Notes; and
- $750,000,000 aggregate principal amount of Series R Notes.

*See* Tripartite Agreement (defined below).

**B.    AST's Retention and Role as Indenture Trustee for the EFH Legacy Notes**

9.     In March 2014, EFH Corp. approached AST and informed it that in light of EFH

Corp.'s imminent bankruptcy filing it needed a successor trustee qualified under the TIA and the

EFH Legacy Notes Indentures to replace BNY as the indenture trustee for the EFH Legacy

Notes.

10.    On April 11, 2014, EFH Corp., BNY and AST entered into an Agreement of

Resignation, Appointment and Acceptance (the "Tripartite Agreement") pursuant to which BNY

resigned as the indenture trustee under the EFH Legacy Notes Indentures and AST accepted

appointment as the EFH Legacy Notes Trustee.  Since that date, AST has performed as required

under the Indentures, its agreements with EFH Corp., the TIA and other applicable law.

**C.    Proofs of Claim Filed by the EFH Legacy Notes Trustee
on Account of Claims Arising Under the EFH Legacy Notes**

11.    On October 24, 2014, the EFH Legacy Notes Trustee filed proofs of claim 7477,

7478, and 7479 (the "EFH Legacy Proofs of Claim") against EFH Corp. for direct claims arising

under the EFH Legacy Notes Indentures and applicable law for amounts due, including amounts

that were contingent and unliquidated.[3]  The chart below summarizes the approximate amount

asserted under the EFH Legacy Proofs of Claim, excluding amounts attributable to EFH Legacy

Notes held by EFH and EFIH:[4]

| Legacy Issuance | Principal due at April 28, 2014 | Accrued Interest Through April 28, 2014 | Post-petition Interest At Contract Rate Assuming Emergence on March 31, 2016 | Makewholes Assuming Emergence on March 31, 2016 |
|---|---|---|---|---|
| Series P | $90,323,000 | $2,283,667 | $10,301,961 | N/A |
| Series Q | $200,414,000 | $5,934,481 | $27,070,580 | $63,411,306 |
| Series R | $291,297,000 | $8,691,979 | $39,672,291 | $154,254,661 |
| **TOTAL:** | **$582,034,000** | **$16,910,127** | **$77,044,832** | **$217,665,967** |

D.    **The Debtors' Plan and Objections to the EFH Legacy Note Claims**

---

[3]     At the claims bar date, the EFH Legacy Notes Trustee also filed proofs of claim 6524 to 6733 (the "Legacy Notes Transfer POCs") to protect its rights as a creditor of EFH Corp. against Debtors other than EFH Corp. which may have made fraudulent conveyances to affiliates prior to the Petition Date.  Those claims may or may not be resolved through the Plan and Settlement Agreement.  Therefore, substantive litigation of those claims should not be pursued at this time.  The EFH Legacy Notes Trustee reserves all its rights with respect to the claims and causes of action asserted in the Legacy Notes Transfer POCs.  The EFH Legacy Notes Trustee also notes that the Second Claim Objection, which was filed solely on behalf of EFH Corp., is fatally deficient as to the Legacy Notes Transfer POCs.  Each Debtor against which a claim was filed must object and allege that it did not receive fraudulent transfers from EFH Corp.  Here, the issues that the claimant faces are further complicated by the fact that many intercompany claims have not been scheduled as required by the Bankruptcy Code.

[4]     The amounts set forth in the chart are detailed in the *Expert Report of Jack F. Williams* and only include the principal, interest and makewhole amounts attributable to those EFH Legacy Notes the EFH Indenture Trustee believes to be held by non-Debtors.  Accordingly, the chart does not include approximately $1,282 million of EFH Legacy Notes held by EFIH.  *See* Disclosure Statement, II.C.2.(b)(I), n.46 at *52 ("EFIH holds (a) approximately $281 million of the 5.55% Notes; (b) approximately $545 million of the 6.50% Notes ; and (c) approximately $456 million of the 6.55% Notes").  In addition, the chart does not include approximately $564 million of EFH Legacy Notes that are held by EFH Corp.  *See* EFH Corp.'s Annual Report (Form 10-K) (April 30, 2014) at *56) ("As of December 31, 2013, total debt acquired includes [. . .] $564 million of EFH Corp. debt held by EFH Corp").  Though held by EFH Corp. and EFIH these EFH Legacy Notes have not been canceled and, thus, remain outstanding.  *See id.*  Finally, the table does not include any fees and expenses of the EFH Legacy Notes Trustee or its advisors.

12.    On September 21, 2015, the Debtors filed the Plan and Disclosure Statement.  The

Plan purported to serve as the Debtors' objection to the EFH Legacy Note Claims.  Article VII.A

of the Plan provides that:

> Except as specifically provided as Allowed Claims pursuant to
> Article III.B of the Plan or otherwise objected to by the Debtors in
> the Chapter 11 Cases, the Plan shall serve as the Debtors' objection
> to all other . . . EFH LBO Note Claims, and EFH Legacy Note
> Claims under the respective indentures.  If the Bankruptcy Court
> sustains the Debtors' objection to these Claims, the Confirmation
> Order will disallow such Claims against the Debtors.  The Holders
> of such Claims may respond to the Debtors' objection to such
> Claims by filing an objection to the Plan.

13.    In response to the objection in the Plan, on October 7, 2015 —15 days after entry

of the Disclosure Statement Order approving solicitation — the EFH Legacy Notes Trustee filed

the *EFH Legacy Series Q/R Trustee's Memorandum of Law In Support of Motion for Partial*

*Summary Judgment: (I) In Response to Debtors' Objection to Makewhole Claims; and (II)*

*Regarding Condition Precedent 9 to Effectiveness of Plan* [Docket No. 6387] (the "Summary

Judgment Motion") seeking a determination from the Court that (i) the allowed amounts of the

EFH Legacy Notes Trustee's makewhole claims should include the full Redemption Price as

determined in the EFH Legacy Notes Indentures and Notes, and (ii) Condition Precedent

Number 9 cannot be satisfied.[5]

14.    On October 12, 2015, the EFH Legacy Notes Trustee served the Debtors and

other parties in interest with the *Expert Report of Professor Jack F. Williams*, dated October 12,

2015 (the "Williams Report").

---

[5]    Responses to the Summary Judgment Motion were due by October 22, 2015 at 4:00 p.m.  *See* Docket No.
6386.  As of the date hereof, no responses to the Summary Judgment Motion have been filed.  In the
Second Claim Objection, the Debtors requested that the Court toll the deadline to respond to the Summary
Judgment Motion.  *See* Second Claim Objection, at 1, n.2.  No such ruling was issued by the Court.

15.     On October 14, 2015 — a week after the filing of the Summary Judgment Motion — EFH Corp. filed the Second Claim Objection.

16.     On October 23, the EFH Legacy Notes Trustee filed its Plan Objection.  On the same day, the Debtors filed the (i) *Objection of Energy Future Holdings Corp., et al., to Proofs of Claim 7475, 7480, 7481, and 6874-6943 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH LBO Notes* [Docket No. 6596] (the "Third Claim Objection") and (ii) *Objection of Energy Future Holdings Corp., et al., to Proofs of Claim 7476, 7482, and 6734-6873 Filed By American Stock Transfer & Trust Co. As Indenture Trustee for the EFH Unexchanged Notes* [Docket No. 6599] (the "Fourth Claim Objection").  The Third Claim Objection and the Fourth Claim Objection seek disallowance of the claims arising under the EFH LBO Notes and the EFH Unexchanged Notes on many of the same grounds set forth in the Second Claim Objection.  Responses to the Third Claim Objection and the Fourth Claim Objection are due by November 6, 2015 and the EFH Legacy Notes Trustee will respond appropriately.

## III.
## RESPONSE

### A.     Introduction and Discussion of Impact of Solvency on EFH Legacy Proofs of Claim

17.     The Debtors object to certain amounts sought in the EFH Legacy Proofs of Claim on the grounds that EFH Corp. is insolvent.  As discussed below, the allowance of the portions of the EFH Legacy Proofs of Claim related to makewholes, contract rate post-petition interest, and fees and expenses are <u>not</u> contingent on solvency; however, solvency is an alternative theory under which those claims should be allowed.  The EFH Legacy Notes Trustee submits that the Debtors have already conceded that EFH Corp. is solvent.

7

**(i)      The Debtors Have Conceded That EFH Corp. is Solvent**

18.      EFH Corp. has already conceded its solvency in numerous ways by, for example:

(i)      filing the Plan which treats all unsecured creditors of EFH Corp. as unimpaired;

(ii)     offering repeated testimony that all E-side creditors would be paid in full and in cash;

(iii)    admissions of various directors and officers;

(iv)     requesting that the Court order that the Disclosure Statement be approved without a liquidation analysis for EFH Corp. and failing to disclose in the Disclosure Statement that EFH Corp. is insolvent — perhaps the most material fact any Disclosure Statement should include;

(v)      failing to designate any expert at confirmation to opine that EFH Corp. is insolvent; and

(vi)     offering the testimony of Mr. David Y. Ying of Evercore Partners, the Debtors' investment banker and financial advisor, regarding the value generated in these cases by the Debtors' mastery of the REIT conversion "technology". Ying Dep. 153:2-22.

19.      Typically, at this late stage in a chapter 11 case, a debtor could point to a

liquidation analysis as evidence of insolvency.  However, solvency of EFH Corp. on the likely

Effective Date of the Plan is so obvious that the Debtors did not even include a liquidation

analysis for EFH Corp. in the Disclosure Statement, which stated that:

> The Debtors did not perform a liquidation analysis for the EFH Debtors or the EFIH Debtors because all Allowed Claims asserted by Holders of Claims against the EFH Debtors and the EFIH Debtors are being paid in full under the Plan, and Holders of Claims are not permitted to receive more than a 100% recovery under a plan of reorganization or a liquidation under chapter 7 of the Bankruptcy Code.  Accordingly, Holders of Claims against the EFH Debtors and the EFIH Debtors are receiving at least as much under the Plan as they would receive in a hypothetical liquidation under chapter 7 of the Bankruptcy Code.

*See* Disclosure Statement, at p. 168.

8

20.    The EFH Legacy Notes Trustee submits that the solvency of EFH Corp. has been conceded and litigation over solvency is not necessary.  Nonetheless, in the Second Claim Objection, the Debtors objected to the EFH Legacy Proofs of Claim on the grounds that EFH Corp is insolvent:

a)    "[T]he Debtors' proposed plan of reorganization does not provide for any distribution on account of equity interests in EFH Corp. EFH Corp. therefore is not solvent within the meaning of the solvent-debtor exception."  *See* Second Claim Objection, at 3.

b)    "Here, shareholders of EFH Corp. will not receive any distribution under the Plan. EFH Corp. therefore is not solvent for the purposes of this exception because the implied chapter 7 "waterfall" under section 726(a) for distribution of value would never reach equity."  *Id.* at ¶ 45.

21.    The Debtors have not provided any evidence of EFH Corp.'s insolvency.  Rather, the Debtors rely on conclusory statements that insolvency is established by the purported fact that the Plan does not provide for any distributions to EFH. Corp. equity holders.  To the contrary, the Plan proposed by the Debtors actually ***supports*** a finding that EFH Corp. is ***solvent***. The Plan purports to treat all unsecured creditors of EFH Corp. as unimpaired and confers substantial benefits to equity holders.  The structure of the Plan, combined with the testimony of the Debtors' representatives, establish that EFH Corp. is solvent.

**(ii)    The Debtors Have Not Carried Their Burden to Establish Insolvency as a Defense to the Allowance of the EFH Legacy Proofs of Claim**

22.    In the Third Circuit, after the filing of the EFH Legacy Proofs of Claim, the burden shifted to the Debtors to "produce evidence sufficient to negate the *prima facie* validity of the filed claim . . . ."  *In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d Cir. 1992).  While the Debtors asserted insolvency as a defense, they have not carried their burden of showing insolvency to negate the *prima facie* validity of the EFH Legacy Proofs of Claim.  The evidence will show that EFH Corp. is solvent or was rendered solvent by virtue of the so-called REIT

Technology during the chapter 11 process, and, thus the EFH Legacy Proofs of Claim must be allowed as set forth herein and in the Williams Report.

23.    Finally, in light of the foregoing facts, the Debtors should be estopped from asserting that EFH Corp. is insolvent.  In the alternative, the Court should order that the Debtors immediately produce a liquidation analysis for EFH Corp., which should have been included in the Disclosure Statement if the Debtors intended to contest solvency in connection with the claims allowance process.

### (iii)    Case Law Regarding Solvent Debtors Requires That the EFH Legacy Notes Trustee's Claims be Allowed

24.    Courts have held that in cases where a debtor is solvent, "the bankruptcy rule is that where there is a *contractual* provision, valid under state law, . . . the bankruptcy court will enforce the contractual provision." *Gencarelli v. Gencarelli,* 501 F.3d 1, 7 (1st Cir. 2007) (quoting *Debentureholders Protective Comm. of Cont'l Inv. Corp. v. Cont'l Inv. Corp*., 679 F.2d 264, 269 (1st Cir. 1982)).

25.    On August 5, 2014, this Court issued an opinion in *CSC Trust Co. v. Energy Future Intermediate Holdings Co. LLC (In re Energy Future Holdings Corp.),* 513 B.R. 651 (Bankr. D. Del. 2014) where the indenture trustee for the 10% Senior Secured Notes due 2020 sought a declaratory judgment that the EFIH Debtors are obligated to pay a $665.2 million redemption premium.  The Court granted the indenture trustee's request for discovery from the EFIH Debtors as to their value and solvency because there remained "a possibility that the Court will require the solvency information in the future in order to properly address the payment of makewhole premiums if the indentures are found to provide for such premiums." *Id.* at 665. The Court explained, "when a debtor is solvent, certain contractual terms, such as the payment of a makewhole premium, can be enforced under state law, and the . . . Debtors may not rely on the

Bankruptcy Code to 'deny payment of a redemption premium otherwise required' by the terms

of the indenture." *Id.* at 660 (emphasis added).  Other courts, including the Third Circuit, agree.[6]

26.    As the Sixth Circuit explained in *Official Comm. of Unsecured Creditors v. Dow*

*Chem. Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 679 (6th Cir. 2006) ("<u>Dow III</u>"):

> "[I]n solvent debtor cases, rather than considering equitable
> principles, courts have generally confined themselves to
> determining and enforcing whatever pre-petition rights a given
> creditor has against the debtor. . . ."

*Id.; see also Cont'l Inv. Corp*., 679 F. 2d at 269 ("Where the debtor is *solvent*, the bankruptcy

rule is that where there is a *contractual* provision, valid under state law, providing for interest on

unpaid instalments [sic] of interest, the bankruptcy court will enforce the contractual provision

with respect to both instalments [sic] due before and . . . after the petition was filed").

27.    One of the rationales behind requiring solvent debtors to honor all valid

contractual rights is that in the solvent debtor context, the requirements under section 1129(b)

necessary to satisfy the "fair and equitable" test also "include" the requirement that the rights

provided in a contract – including, for example, the right to interest at the contract rate (and

---

[6]    *See e.g., In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 112 (3d Cir. 2004)(holding that "solvent" debtor could not use the Bankruptcy Code to limit its state-law contract obligations); *In re Cybergenics Corp*., 226 F.3d 237, 244 (3d Cir. 2000)(stating that the Bankruptcy Code "limit[s] a debtor's exercise of avoidance powers to circumstances in which such actions would in fact benefit the creditors, not the debtors themselves"); *In re Dow Corning Corp.,* 456 F.3d 668, 678-79 (6th Cir. 2006) ("[W]hen a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights"); *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 791 F.2d 524, 528 (7th Cir. 1986)(finding that where debtor is solvent, "the task for the bankruptcy court is simply to enforce creditors' rights according to the tenor of the contracts that created those rights"); *Ruskin v. Griffiths*, 269 F.2d 827, 832 (2d Cir. 1959)(stating that where debtor is solvent, it is "the opposite of equity to allow the debtor to escape the expressly-bargained-for result of its act"); *In re Los Angeles Dodgers LLC*, 465 B.R. 18, 32-33 (D. Del. 2011)(stating that where debtor is solvent, "the equities strongly favor holding the debtor to his contractual obligations so long as those obligations are legally enforceable under applicable non-bankruptcy law"); *In re Chemtura Corp.*, 439 B.R. 561, 605 (Bankr. S.D.N.Y. 2010)("With a solvent debtor, . . . the allowance of claims under a make-whole provision . . . should be an issue of state law alone"); *U.S. Bank Nat'l Ass'n (In re Premier Entm't Biloxi, LLC)*,445 B.R. 582, 636 (Bankr. S.D. Miss. 2010)("[W]hen a debtor is solvent, bankruptcy courts generally will enforce the debtor's contractual obligations to the extent they are valid under applicable state law").

specifically, post-petition interest) – must be preserved.  *See, e.g., Dow III*, 456 F.3d at 679; *In re*

*Dow Corning Corp.*, 244 B.R. 678, 696 (Bankr. E.D. Mich. 1999) ("<u>Dow II</u>")(concluding that

"fixing the pendency interest rate at that which applies to federal judgments is not 'fair and

equitable.'").

28.    Although section 1129(b)(2) of the Bankruptcy Code itemizes a number of

specific requirements in order for a plan to be considered "fair and equitable," that section makes

clear that those specific items are not an exhaustive list.  It states: "[f]or the purposes of this

subsection, the condition that a plan be fair and equitable with respect to a class ***includes*** the

following requirements . . . ." 11 U.S.C. § 1129(b)(2)(emphasis added).  Section 101(3) of the

Bankruptcy Code provides that the term "includes" is "not limiting."  11 U.S.C. § 101(3).

29.    This requirement of enforcing prepetition contract rights in order for a plan to be

"fair and equitable" is partly a consequence of the "absolute priority" rule, which is codified in

section 1129(b)(2)(B)(i) and (ii), and requires that:

> (B)  With respect to a class of unsecured claims –
>
> (i) the plan provides that each holder of a claim of such class
> receive or retain on account of such claim property of a value, as of
> the effective date of the plan, equal to the allowed amount of such
> claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of
> such class will not receive or retain under the plan on account of
> such junior claim or interest any property . . . .

30.    Accordingly, courts have determined that the "fair and equitable" and absolute

priority requirements preclude shareholders of a solvent debtor from receiving any distributions

unless the senior creditor receives all their contractual entitlements, such as interest at the

contract rate.  *See Cont'l Inv. Corp.*, 679 F.2d at 270.  Because of those requirements in section

1129, when "a debtor is solvent, then, the presumption is that a bankruptcy court's role is merely

to enforce the contractual rights of the parties, and the role that equitable principles play in the allocation of competing interests is significantly reduced." *Dow III*, 456 F.3d at 679.

31.    Indeed, as the Sixth Circuit instructed:

> Despite the equitable nature of bankruptcy proceedings, the bankruptcy judge does not have "free-floating discretion to redistribute rights in accordance with his personal views of justice and fairness." Rather, absent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights.

*Id.* (internal citations omitted).  Other courts agree with the Sixth Circuit in *Dow III* and the logic of the First Circuit in *Cont'l Inv. Corp*. in requiring that prepetition contract rights be fully honored for a plan to be considered "fair and equitable."  *See e.g.*, *In re Allegheny Int'l, Inc*., 118 B.R. 282, 314-15 (Bankr. W.D. Pa. 1990)("[T]he contractual provision for interest applies post-petition where the estate proves to be solvent"); *In re Fast*, 318 B.R. 183, 191-92 (Bankr. D. Colo. 2004) (contract rate post-petition interest awarded to unsecured creditor under "fair and equitable" test).

**B.    The Makewhole Claims Must be Allowed Regardless of the Solvency of EFH Corp.**

32.    The first portion of the EFH Legacy Proofs of Claim which the Debtors seek to disallow is the claims for makewholes.  The Debtors object to allowance of the Makewhole Claims on the grounds that:

> The plain terms of the Indentures do not provide for a make-whole premium after acceleration of the Legacy Notes and, even if such a premium were owed, section 502(b)(2) disallows one here, where the plain language of the Indentures demonstrates that this make-whole premium is unmatured interest and not liquidated damages, unlike other make-whole premiums due upon default and automatic acceleration.

*See* Second Claim Objection, at ¶ 28.  Each of the Debtors' arguments fails and the Makewhole Claims must be allowed.

33.      Courts follow a two-step analysis to determine whether a party is entitled to payment of a prepayment premium, makewhole or Redemption Price.  The first issue is whether the payment is triggered under the applicable contract.  The second issue is whether the payment is not disallowed under the Bankruptcy Code.  *See e.g., Travelers*, 549 U.S. at 449-52; *In re Chemtura Corp.,* 439 B.R. 561, 600 (Bankr. S.D.N.Y. 2010).  Because the Notes issued under the EFH Legacy Series Q and EFH Legacy Series R Indentures clearly require payment of the Redemption Price upon early payment pursuant to the Plan, and there is no provision of the Bankruptcy Code that disallows that required payment, the Makewhole Claims should be allowed.

**(i)      The Relevant Makewhole Provisions of the EFH Legacy Indentures and Notes**

34.      The clear language of each EFH Legacy Note provides that a redemption of the EFH Legacy Notes prior to their "Stated Maturity" requires payment of the Redemption Price. Section 401 of each of the EFH Legacy Notes Indentures provides:

> Securities of any series, or any Tranche thereof, which are redeemable before their Stated Maturity shall be redeemable in accordance with their terms and (except as otherwise specified as contemplated by Section 301 for Securities of such series or Tranche) in accordance with this Article.

35.      The officer's certificate related to the issuance of each EFH Legacy Note provides:

> The Notes will be redeemable at the option of the Company prior to the Stated Maturity of the principal thereof as provided in the form [of Note] thereof set forth in Exhibit B hereto.

36.      Each EFH Legacy Note provides that:

> The Securities of this series will be redeemable at the option of the Company prior to the Stated Maturity (each a "Redemption Date"), in whole or in part, at any time. The Company will give notice of its intent to redeem such Securities of this series at least 30 days

14

but no more than 60 days prior to the Redemption Date. If the Company redeems all or any part of the Securities of this series, it will pay a Redemption Price (the "Redemption Price") equal to the greater of

> (1) 100% of the principal amount of the Securities of this series being redeemed, and

> (2) the sum of the present values of the remaining scheduled payments of principal and interest (excluding any portion of any such interest accrued to the Redemption Date) on the Securities of this series being redeemed, discounted to the Redemption Date on a semi-annual basis (assuming a 360-day year consisting of twelve 30-day months) at the Treasury Rate plus 35 basis points, plus, in each case, accrued interest on those Securities of this series to the Redemption Date….

> Upon payment of the Redemption Price, on and after the Redemption Date interest will cease to accrue on the Securities of this series or portions thereof called for redemption.

37.    Thus, the Redemption Price is a contractually provided calculation of liquidated damages for the early redemption of the EFH Legacy Notes.  Further, section 101 of each EFH Legacy Notes Indenture defines the following terms:

> "Stated Maturity," when used with respect to any obligation or any installment of principal thereof or interest thereon, means the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provisions for redemption, prepayment, acceleration, purchase or extension).

38.    The stated maturity dates of the EFH Legacy Notes are November 15, 2024, and November 15, 2034, for Series Q and R, respectively.

39.    Under Section 802 of each EFH Legacy Notes Indenture, the EFH Legacy Notes could only be accelerated if either the EFH Legacy Notes Trustee or the Holders of not less than 33% in principal amount of a particular series of EFH Legacy Notes sent a written notice to EFH Corp., and declared the principal amount of such series to be due and payable immediately.  *See*

Second Claim Objection, at Exs. 1 to 3 (Indenture Sec. 802).  The EFH Legacy Notes Trustee

has not made any "declaration of acceleration" as specified in Section 802 of the EFH Legacy

Notes Indentures.  To the knowledge of the EFH Legacy Notes Trustee, no EFH Legacy

Noteholder has made any "declaration of acceleration" as specified in Section 802 of the EFH

Legacy Notes Indentures.  *See also* Paul Keglevic Dep. 250:25-251:1-12 (Oct. 1, 2015).  The

Second Claim Objection does not allege that either the EFH Legacy Notes Trustee or any EFH

Legacy Noteholder made any "declaration of acceleration" as specified in Section 802 of the

EFH Legacy Notes Indentures.

> **(ii)    The EFH Legacy Q/R Holders are Contractually Entitled to Payment of the Makewhole Amounts and There Was No Automatic Acceleration Upon the Filing**

40.    The Debtors' main argument as to why the Makewhole Claims of the EFH

Legacy Noteholders should be disallowed is the Debtors' assertion that the EFH Legacy Notes

automatically accelerated as a result of the chapter 11 filing and repayment after an acceleration

cannot be an optional redemption:

> EFH Corp.'s chapter 11 filing accelerated all of its debts, including
> the Legacy Notes, at which point they became immediately due
> and payable . . . . repayment after acceleration is not voluntary
> because acceleration moves the "stated maturity" up to the
> acceleration date, which here is the Petition Date.  After
> acceleration, the debts are "mature," meaning due and payable
> immediately, and repayment cannot be a prepayment" or an
> "optional redemption."  Accordingly, repaying the Legacy Notes
> after the bankruptcy petition date cannot be an optional
> redemption.

*See* Second Claim Objection, at ¶¶ 32-33 (internal citations omitted).  However, the Debtors'

argument fails because there was no automatic acceleration.

> **(a)    *Unlike Other Indentures In These Cases, the EFH Legacy Q/R Notes Did Not Accelerate By Their Terms***

16

41.     The Debtors cite to the Court's prior decision in the *Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment*, Adv. Pro. No. 14-50363, [Docket No. 245; Mar. 26, 2015] (the "First Lien Makewhole Ruling") to support their proposition that repayment after acceleration is not voluntary because acceleration moves the "stated maturity" up to the acceleration date, which here is the Petition Date."  Second Claim Objection, at ¶ 33.

42.     The First Lien Makewhole Ruling is inapposite because the EFH Legacy Q/R Indentures and the EFH Legacy Q/R Notes are fundamentally different from other debt instruments that the Court has examined in these cases.  Under section 802 of each EFH Legacy Q/R Indenture, the EFH Legacy Q/R Notes could ***only be accelerated*** if either the EFH Legacy Notes Trustee or the Holders of not less than 33% in principal amount of a particular series of EFH Legacy Q/R Notes sent a written notice to EFH Corp. and declared the principal amount of such series to be due and payable immediately.  *See* EFH Legacy Q/R Indentures, Sec. 802.  That has not happened and there has been no contractual acceleration of the EFH Legacy Q/R Notes.[7] Nor, as discussed below, has there been any other form of acceleration.

> **(b)     *The Debtor Has Admitted in Public Filings and Documents Sent to Investors That There Is No Automatic Acceleration — Even in Bankruptcy — and Should Be Held to Those Admissions***

43.     In the Offering Memorandum of TXU Corp. dated November 22, 2004 for the Series Q and Series R Legacy Notes, the predecessor to EFH Corp. represented regarding those notes and indentures: "***There is no automatic acceleration, even in the event of bankruptcy, insolvency or reorganization of TXU Corp.***"  *See* Exhibit 2 (Relevant excerpts of Offering Memorandum, dated Nov. 22, 2004, at 23)(emphasis added).  EFH Corp. itself later made the

---

[7]     The EFH Legacy Notes Trustee is not claiming any makewhole amounts under the Series P Notes, which matured by their terms on November 15, 2014.

same representation in its publicly-filed Prospectus of Energy Future Holdings Corp. dated April 4, 2012, regarding the Series Q and Series R Legacy Notes, where EFH Corp. expressly represented: "***There is no automatic acceleration, even in the event of bankruptcy, insolvency or reorganization of EFH Corp***." *See* <u>Exhibit 3</u> (Relevant excerpts of Form 424B3 Prospectus of Energy Future Holdings Corp., dated April 4, 2012, at 189)(emphasis added).

44.     It is evident that this disclosure regarding the absence of automatic acceleration was material to investors such as the EFH Legacy Noteholders.

45.     It is remarkable for EFH Corp. to now suddenly disavow its prior material representations regarding core terms of the indentures and how they operate in the context of bankruptcy. Such a stark about-face should not be countenanced, particularly where it acts to the detriment of the very note holders and other investors who relied on those representations, and who indeed would be harmed in precisely the circumstances (bankruptcy) about which they had been given those assurances.

46.     Thus, EFH Corp. has unequivocally ***admitted*** regarding the EFH Legacy Series Q/R Notes that "there is no automatic acceleration, even in the event of bankruptcy, insolvency or reorganization of EFH Corp." The Debtor should be held to that admission. To do otherwise would be deeply inequitable to the EFH Legacy Noteholders who relied on the Debtors' representation. It would also contravene the requirements under section 1129(a)(3) that a plan must be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3).

**(c)     *The Fixed "Stated Maturity" Dates Were Not Automatically Advanced By the Filing of the Petition or Operation of the Bankruptcy Code***

47.     Even if the Debtors' material representations and admissions were to be overlooked, however, their assertion that "there is no automatic acceleration, even in the event of

18

bankruptcy, insolvency or reorganization of EFH Corp." is nonetheless quite correct.  Put simply, the Stated Maturity of the EFH Legacy Q/R Notes was unaffected by the filing of EFH Corp.'s petition.

48.    The definition of Stated Maturity provides that it is "the date on which the principal of such obligation or such installment of principal or interest is stated to be due and payable (without regard to any provision for redemption, prepayment, acceleration, purchase or extension)."  *See* EFH Legacy Q/R Indentures, Section 101; *see also Chemtura,* 439 B.R. at 601 (finding that the bondholders had the better argument because the notes at issues provided for a "Maturity Date" defined as a date certain, the right to accelerate did not change that contractual definition, and the contract provided for the makewhole becoming due if the notes were paid before the "Maturity Date" as so defined).

49.    The Third Circuit has stated that the "general rule of both the Bankruptcy Code and § 502(b) . . .  is acceleration to the date of filing of the bankruptcy petition*, for the purpose of filing a claim*."  *In re Oakwood Homes Corp.*, 449 F.3d 588, 602 (3d Cir. 2006)(emphasis added).  However, that does not alter the parties' rights under the contract, and does not defeat a lender's right to a redemption premium under the applicable contract.  This Court has already ruled as much in the First Lien Makewhole Ruling.  There, based on the plain language of the EFIH First Lien 2017 Note Indenture and the EFIH First Lien 2020 Note Indenture (together, the "EFIH First Lien Indentures"), the Court held that in the absence of a *contractual* acceleration, EFIH's refinancing would be an "Optional Redemption" and the "Applicable Premium" *would be due and owing* to the First Lien Noteholders.  *See* First Lien Makewhole Ruling, at ¶ 68

50.    As this Court ruled:

> [I]f the Court were to lift the automatic stay, *nunc pro tunc* to a date on or before the repayment of the Notes on June 19, 2014, to

19

> allow the Trustee to waive the default and decelerate the Notes
> **then EFIH's refinancing would be an Optional Redemption**
> under section 3.07 of the Indenture **and the Applicable Premium**
> **would be due and owing** to the non-settling Noteholders.

*Id.* (emphasis added).  That ruling is squarely contrary to any notion that some automatic acceleration for the purposes of filing proofs of claim under the Bankruptcy Code (which perforce is present in every bankruptcy) forecloses allowing claims for makewhole amounts universally.

51.     Indeed, if acceleration for purposes of filing a proof of claim were acceleration for all purposes, then prepayment and makewhole payments would never be enforceable in bankruptcy, and there would be no need for courts to review the automatic acceleration found in the very different contract language found in indentures.  And if that were so, then this Court would not have needed to interpret the contractual acceleration clause in the EFIH First Lien Indentures in its ruling on the makewhole claim under the EFIH First Lien Indentures.  *See In re Energy Future Holdings Corp*., 527 B.R. 178, 191 (Bankr. D. Del. 2015).  If the Court applies the same analysis to the EFH Legacy Q/R Indentures, based on the plain language of the contracts and the undisputed fact that there has been no notice of acceleration, the EFH Legacy Q/R Holders are entitled to makewhole payments in connection with any voluntary redemption such as that contemplated under the Plan where the EFH Legacy Notes would be repaid and cancelled.

52.     Moreover, this aspect of the First Lien Makewhole Ruling is fully in keeping with numerous courts that have considered this issue.  *See, e.g., U.S. Bank Nat'l Ass'n (In re Premier Entm't Biloxi, LLC)*, 445 B.R. 582, 631-32 (Bankr. S.D. Miss. 2010)("The automatic acceleration of a debt under the Bankruptcy Code allows a lender to file a proof of claim for the unmatured principal amount of the debt under §502 without violating the automatic stay, but such

acceleration is relatively limited and does not change the maturity date of the debt.") (internal

citations omitted); *see also In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987)

("[A]utomatic acceleration of a debt upon the filing of a bankruptcy case is not the kind of

acceleration that eliminated the right to prepayment premium"); *In re Payless Cashways, Inc.,*

287 B.R. 482, 488 (Bankr. W.D. Mo. 2002) (lender was not entitled to default interest because

the court found that "the filing of the bankruptcy petition in this case did not *per se* accelerate the

loans.  Oaktree took no affirmative action to accelerate as it was required to do by federal

bankruptcy law, and the law of New York").

53.    As the Seventh Circuit made clear in *In re LHD Realty Corp.,* 726 F.2d 327 (7th

Cir. 1984), the correct path for a lender who wishes to preserve a right to a redemption premium

in the shadow of a bankruptcy filing is not to accelerate, and if the debtor repays the loan (as the

Plan here provides), enforce the premium.  Specifically, the Seventh Circuit stated that:

> [I]f the lender wishes to preserve its right to a premium, it must
> forebear from exercising its acceleration option and await the
> trustee's or the debtor's decision.  Should the trustee or the debtor
> then decide to repay the loan, the lender would presumably be able
> to enforce an otherwise valid prepayment premium.

*Id.* at 332.  That ruling (and the others previously discussed) would be nonsensical if, as the

Debtors here wrongly assert, filing a petition always advanced the due date.

54.    In contrast to the EFH Legacy Q/R Notes, some other contracts with very

different language provide contractually for automatic acceleration upon a default due to a

bankruptcy filing.  Indeed, that is what the Court was referring to in paragraph 56 of the First

Lien EFIH Makewhole ruling when it said: "When the EFIH Debtors filed for bankruptcy, the

Notes automatically accelerated and became due and payable immediately."  That was so only

because under the very different contract language there, the parties had agreed to a provision

that resulted in acceleration with no other required action upon a default due to bankruptcy.  It is

more than a little disingenuous for the Debtors to twist that language in the First Lien

Makewhole Ruling out of its context and proffer it as support for their version of automatic

acceleration of even fixed Stated Maturity dates, contrary to the language of these indentures.

55.     In decisions denying makewhole claims, the courts have consistently relied on

contractual acceleration, and thus, the courts did "not need to look beyond the controlling

language of the operative contract." *In re AMR Corp*., 730 F.3d 88, 99 n.14 (2d Cir. 2013).[8]

56.     Here, as in all other areas of bankruptcy law, the general rule governs in the

absence of specific statutory language contained in the Bankruptcy Code altering a party's rights.

*See e.g., In re Combustion Engineering, Inc.,* 391 F.3d 190, 237 n.49 (3d Cir. 2004).  Bankruptcy

courts must look to state law to determine the allowed amount of claims.  *Butner v. U.S.*, 440

U.S. 48, 54 (1979) (stating that state law governs the substance of claims).  Here, no provision of

the Bankruptcy Code alters application of New York law to the EFH Legacy Q/R Indentures and

Notes.

57.     Separate and apart from the foregoing general considerations, here, due to the

special language of the EFH Legacy Q/R Indentures, even if filing the petition were said to

automatically accelerate the EFH Legacy Q/R Notes, that would still not undermine the EFH

Legacy Q/R Holders' entitlement to payment of the Redemption Price.  Unlike other indentures,

the amount owed in the case of a full payment prior to the "Stated Maturity" is the Redemption

Price – and "Stated Maturity" does not change on account of any acceleration, whether

contractual or otherwise.

---

[8]     *See also HSBC Bank USA v. Calpine Corp*., 2010 U.S. Dist. LEXIS 96792, *10 (S.D.N.Y. Sept. 14, 2010)("According to the terms of the notes, a voluntary bankruptcy filing constitutes an event of default that accelerates and matures"); *In re Solutia Inc.,* 379 B.R. 473, 478 (Bankr. S.D.N.Y. 2007) ("Section 6.02 of the Original Indenture provides that if an event of default [for bankruptcy] occurs the principal . . . shall become immediately due and payable").

### (iii)    The Redemption Price Is Not Unmatured Interest

58.    The Debtors also object to allowance of the Makewhole Claims on the grounds that such claims are unmatured interest that should be disallowed under section 502(b)(2), which provides that the court shall allow a claim except to the extent that "such claim is for unmatured interest . . . ." 11 U.S.C. § 502(b)(2).

59.    The Debtors' argument fails because the Redemption Price is not unmatured interest.  Courts in Delaware consider makewholes as liquidated damages and, as Judge Shannon noted, "[r]esearch reveals that the ***substantial majority of courts*** considering this issue have concluded that make-whole or prepayment obligations are in the nature of liquidated damages rather than unmatured interest, whereas courts taking a contrary approach are distinctly in the minority**.** " *In re Trico Marine Servs., Inc*., 450 B.R. 474 (Bankr. D. Del 2011)(emphasis added); *see also In re Sch. Specialty, Inc.,* 2013 Bankr. LEXIS 1897, *18 (Bankr. D. Del. Apr. 22, 2013)(claim for makewhole is liquidated damages).  The cases cited by the Debtors in support of their argument that makewholes are unmatured interest are in the distinct minority.[9]

60.    The language of section 502(b)(2) does not apply to liquidated damages.  *See e.g., Skyler Ridge,* 80 B.R. at 508 ("However, the Court does not interpret [section 502(b)(2)] to apply to a liquidated damages provision, ***even where the damages are for unearned interest***.")(emphasis added).  The Debtors, in an attempt to overcome the language of section 502(b)(2) and the overwhelming majority view that makewhole payments are liquidated

---

[9]        In addition to being in the minority, the cases cited by the Debtors are distinguishable.  *See Calpine,* 2010 U.S. Dist. LEXIS 96792, *17(finding that claimant did not have valid claims under state law for the prepayment premiums); *In re Ridgewood Apartments*, 174 B.R. 712, 720 (Bankr. S.D. Ohio 1994)(determining that no prepayment was due because the "Plan being considered does not contemplate prepayment under the terms of the original Note").  In *Continental Sec. Corp. v. Shenandoah Nursing Home P'shp,* 188 B.R. 205, 214 (W.D. Va. 1995), there "was never a dispute over whether . . . . claim would be allowed. Thus, § 502 is not controlling."  Therefore, the language cited by the Debtors is pure *dicta.*

damages, would read a more limited exception into section 502(b)(2) under which makewholes

are not unmatured interest only where they mature prior to the petition date.  *See* Second Claim

Objection, at ¶ 40.  No such requirement exists and the case law does not support the Debtors'

argument.

61.    The Debtors cite to *Paloian v. LaSalle Bank N.A (In re Doctors Hosp. of Hyde*

*Park, Inc.),* 508 B.R. 697, 706 (Bankr. N.D. Ill. 2014), a bankruptcy court case from Illinois, for

the proposition that a makewhole or prepayment premium must mature prior to the petition date

to be carved out from section 502(b)(2).  That case is not controlling in this district and in *Trico*

*Marine*, 450 B.R. at 477-78, Judge Shannon determined that a makewhole was ***not*** unmatured

interest even though it became due ***post-petition***.  The issue in *Trico Marine* was that under the

terms of the indenture, a makewhole was due when the debtor elected to redeem the obligations

under the indenture.  The indenture trustee claimed it was entitled to a makewhole that accrued

upon the debtor's election to redeem the obligation using the proceeds of a ***post-petition*** sale.  *Id.*

Nothing in *Trico* dealt with an automatic acceleration provision or prepetition maturity – and

thus *Trico* is analogous with the situation before the Court.[10]

62.    Even in a situation where makewholes could be considered unmatured interest,

the court in *In re 360 Inns, Ltd*., 76 B.R. 573, 576 (Bankr. N.D. Tex. 1987) held that "the

prepayment penalty was not unmatured interest as contemplated in § 502(b)(2), inasmuch as the

prepayment penalty was activated and matured once the plan of reorganization proposed to

prepay UNUM's debt."  *Id.*  Here, by proposing to repay the EFH Legacy Noteholders in full, the

makewhole was activated and is not subject to section 502(b)(2).

---

[10]    The cases cited by Judge Shannon in *Trico Marine* in connection with his finding that makewholes are liquidated damages similarly do not hinge on a finding that an automatic acceleration clause caused a debt to mature prior to the petition date.  *See e.g., Noonan v. Fremont Fin. (In re Lappin Elec. Co.),* 245 B.R. 326 (Bankr. E.D. Wis. 2000).

63.     In any event and regardless of the applicability of section 502(b)(2), the makewholes should be allowed because EFH Corp. is solvent and the contractual right to the makewholes should be enforced in solvent debtor cases.  *See Dow III*, 456 F.3d at 679.  As noted in *Hyde Park*, a case cited by the Debtors, section 502(b)(2) should not be applied in a solvent debtor case because the rule against allowing unmatured interest "'is designed for cases where there is not enough money to pay all the creditors — so that there is a question whether one creditor should get interest while another doesn't even recover principal.'"  *Paloian*, 508 B.R. at 705 (quoting *In re Chicago, Milwaukee, St. Paul & Pac. R. Co.,* 791 F.2d 524, 529 (7th Cir. 1986)).  Here, all E-side creditors are to be paid in full.  In addition, the EFH Legacy Notes are to be treated as "unimpaired," as are all other notes *pari passu* or structurally senior to the EFH Legacy Notes.  Therefore, there is no reason to disallow unmatured interest.

64.     Moreover, it is clear that the EFH Legacy Q/R Noteholders agreed upon two alternative payment structures: one, payment of interest at a given rate periodically over time and eventually principal; the other, a higher total dollar amount due in a single payment.  The second alternative does not include periodic payments over time.  Moreover, under New York law, absent such an agreed-upon alternative, an early payment would violate the "perfect tender rule" and would entitle the lender to damages.  *See e.g., Arthur v. Burkich*, 131 A.D.2d 105, 106 (N.Y. App. Div. 1987) (providing that under perfect tender rule, a borrower "has no right to pay off his obligation prior to its stated maturity date in the absence of a prepayment clause").  The agreed-upon alternative thus functions as a liquidated damages provision.  As a policy matter, courts consider "it proper for a lender to enter into a loan agreement that protects it from loss of interest through premature repayment of a loan. Otherwise, a lender that has priced a loan based upon the expectation of a long-term commitment to the contractual interest rate can be frustrated by a

refinancing after the filing of a bankruptcy case at a time of lower interest rates." *Skyler Ridge*, 80 B.R. at 508. As the cases cited above recognize, a liquidated damages provision is not considered interest.

      **(iv)    Payment and Cancellation of the EFH Legacy Notes Constitutes Redemption**

     65.    The Debtors argue that in order for EFH Corp. to redeem the EFH Legacy Notes, it must provide EFH Legacy Noteholders with "at least 30 days but no more than 60 days" notice. Second Claim Objection, at ¶ 36. The Debtors allege they have not sent any such notice. The Debtors' argument, if followed, would permit form to trump substance.

     66.    Under the Plan, the Debtors propose to pay the principal, accrued but unpaid prepetition interest, and accrued post-petition interest at the Federal Judgment Rate owed on the EFH Legacy Q/R Notes in full on the Effective Date. *See* Plan, at Art. III.B.4 and VI.A. The Plan provides that on the Effective Date all notes and indentures and other documents evidencing the EFH Legacy Q/R Notes claims "shall be deemed canceled, surrendered, and discharged without need for any further action or approval of the Bankruptcy Court." *See* Plan, at Art. IV.I.

     67.    Payment and cancellation of the EFH Legacy Q/R Notes, combined with discharge of the Indentures as part of the Plan is clearly a redemption of the Notes under the Indentures. Numerous cases, including a decision by this Court, addressing makewhole provisions support that repayment of notes prior to a stated date, regardless of an intervening bankruptcy petition, triggers an obligation by the issuer to pay a makewhole premium when the applicable indenture so provides. *See, e.g.,* First Lien Makewhole Ruling; *Sch. Specialty, Inc.,* No. 13-10125, 2013 Bankr. LEXIS 1897, *19, 2013 WL 1838513, at *2-3; *Chemtura,* 439 B.R. at 606.

(v)     **The Makewhole Claims Should Also Independently Be Allowed Under the Case Law Regarding Solvent Debtors**

68.     As demonstrated above, the EFH Legacy Notes Trustee's Makewhole Claims under the EFH Legacy Q/R Indentures should be allowed under the two-step analysis.  But separate and apart from that analysis, the makewholes must also be fully allowed because this is a case involving a solvent debtor.

69.     It is expected that the evidence at trial (including admissions of the Debtors) will demonstrate that EFH Corp. is solvent.  As discussed more fully above, in solvent debtor cases, "'the bankruptcy rule is that where there is a contractual provision, valid under state law, . . . the bankruptcy court will enforce the contractual provision.'"  *Gencarelli*, 501 F.3d at 7 (quoting *Cont'l Inv. Corp.*, 679 F.2d at 269) (ellipses in original).  Pursuant to this case law, the Makewhole Claims should be allowed.

**C.     EFH Legacy Noteholders Are Entitled to Post-petition Interest at the Contract Rate**

70.     The Debtors next seek to disallow the portions of the EFH Legacy Proofs of Claim relating to post-petition interest that exceeds the Federal Judgment Rate.   Under the Plan, Federal Judgment Rate is defined as 0.11% compounded annually.  Plan, at Art. III.A.182.  In contrast, each EFH Legacy Notes Indenture provides for a significantly higher contract rate of interest:

| Legacy Notes Indenture | Interest Rate Per Annum |
| --- | --- |
| Series P | 5.55% |
| Series Q | 6.50% |
| Series R | 6.55% |

71.     The claims of the EFH Legacy Noteholders for post-petition interest must be allowed at the contract rate because (i) no section of the Bankruptcy Code disallows contract rate interest and (ii) EFH Corp. is solvent.

### (i)    The Solvent Debtor Cases Require Payment of Interest at the Contract Rate

72.    Numerous courts have concluded that, in the solvent debtor context, the "requirements" under section 1129(b) necessary to satisfy the "fair and equitable" test also "include" the requirement that the rights provided in a contract – including the right to interest at the contract rate (and specifically, post-petition interest) – must be preserved.  *See e.g., Dow III*, 456 F.3d at 679 ("[I]n solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing whatever prepetition rights a given creditor has against the debtor"); *Dow II*, 244 B.R. at 696 (concluding that "fixing the pendency interest rate at that which applies to federal judgments is not 'fair and equitable.'").

73.    The rule that post-petition interest must be allowed at the contract rate in solvent-debtor cases is compelled by Supreme Court precedent, legislative history, statutory language and pre-Code practice.  In *Consol. Rock Prods. Co. v. Dubois*, 312 U.S. 510, 527-29 (1941), the Supreme Court ruled that in the case of a solvent debtor, absolute priority is violated when equity receives value before bondholders are paid in full, which includes contract rate of interest.  *Id.*; *see also Empire Trust Co. v. Equitable Office Bldg. Corp.,* 167 F.2d 346, 347 (2d Cir. 1948). The Supreme Court has repeatedly emphasized that there must be a strong presumption that pre-Code practice must be enforced, absent clear statutory language indicating to the contrary.  *See Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998)("We . . . will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure. . . .") (internal citations omitted); *Dewsnup v. Timm*, 502 U.S. 410, 419 (1992) (stating that the Court is "reluctant to accept arguments that would interpret the Bankruptcy Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history"); *see*

*also In re Fed.-Mogul Global Inc.*, 684 F.3d 355, 375 (3d Cir. 2012) ("Courts will not presume a departure from pre-Code bankruptcy practice in the absence of clear congressional intent"). Here, there is no clear statutory language or legislative intent to depart from the pre-Code practice of requiring payment of post-petition interest at the contract rate.

### (ii)    Section 726(a)(5) Does Not Mandate Use of the Federal Judgment Rate in Chapter 11 Cases

74.    The Debtors incorrectly assert that the Federal Judgment Rate is required to be used for post-petition interest and cite to section 726(a)(5), which is found in chapter 7 of the Bankruptcy Code.  Section 726(a)(5) specifically provides that if all allowed claims against an estate are paid in full, the debtor must pay "interest at the legal rate from the date of the filing of the petition . . . ." 11 U.S.C. § 726(a)(5).  The Bankruptcy Code does not define "legal rate." The Debtors' argument that "legal rate" equals Federal Judgment Rate fundamentally overlooks that these are chapter 11 cases.  Section 726 describes how assets will be distributed in a chapter 7 case and section 725(a)(5) only becomes applicable in the chapter 11 context by operation of the best-interest-of-creditors test under section 1129(a)(7).  That section provides that a court shall confirm a plan only if each holder of an impaired claim or interest either accepts the plan or will "retain under the plan . . . property of a value, as of the effective date of the plan, that is ***not less than*** the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date."  11 U.S.C. § 1129(a)(7) (emphasis added).

75.    Why that is so important, and why it fatally undermines the Debtors' position, is that section 1129(a)(7) plainly invokes chapter 7's threshold requirements ***as a floor, not a ceiling***.  Thus, as a matter of express statutory language, the "legal rate" that is referred to in section 726(a)(5) is not a "cap" under section 1129(a)(7).  The question, then, becomes what source the Court should use as a guide in determining what rate, including rates above the

chapter 7 floor, satisfies chapter 11's "not less than" requirements under section 1129(a)(7).  In that regard, the case law finding that the contract rate is mandated in order to be "fair and equitable" under section 1129(b) is determinative.

76.     Moreover, whether the "statutory rate" means the Federal Judgment Rate or another rate is much debated.  Many cases support interpreting the "legal rate" in section 726(a)(5) as referring to the contract rate.  *See In re Fast,* 318 B.R. at 192 (awarding unsecured creditor of chapter 7 debtor post-petition interest at contract rate); *In re Schoeneberg*, 156 B.R. 963, 972 (Bankr. W.D. Tex 1993) (holding that the best interest test in section 1129(a)(7) requires that a creditor receive post-petition interest at the contract rate pursuant to section 726(a)(5)); *but see Onink v. Cardelucci (In re Cardelucci),* 285 F.3d 1231, 1234 (9th Cir. 2002) (applying Federal Judgment Rate); *In re Beguelin,* 220 B.R. 94, 100 (9th Cir. B.A.P. 1998) (same); *In re 431 Ponce de Leon, LLC*, 515 B.R. 660, 675 (Bankr. N.D. Ga. 2014) (same).

77.     Cases that have examined the "not less than" language in section 1129(a)(7) have agreed that those words provide a floor, not a ceiling, on the post-petition interest rate to be applied.  *See Dow II*, 244 B.R. at 686 ("But what must be remembered is that by its own terms, the best-interests test simply establishes a minimum payment requirement").  In *In re Coram Healthcare Corp.*, 315 B.R. 321, 345 (Bankr. D. Del. 2004), Judge Walrath held that unsecured noteholders were "entitled to post-petition interest on their unsecured claims." *Id.*  The court further went on to state that nothing in "section 1129(b) requires the use of the federal judgment rate for post-petition interest to be paid under a chapter 11 plan of reorganization." *Id.* at 346. Judge Walrath ultimately applied equitable notions in *Coram* to find it "grossly unfair" under the peculiar facts of that case to provide default interest where the note holders were responsible for

delaying the case. *Id.* at 346-347. No such equitable considerations exist here to deny the EFH Legacy Noteholders post-petition interest at the contract rate.

78.    Judge Walrath's later 2011 decision in *Washington Mutual Inc.,* 461 B.R. 200, 242 (Bankr. D. Del. 2011) (ruling that post-judgment interest should be limited to the Federal Judgment Rate) is not persuasive for several reasons. First, unlike her earlier decision in *Coram*, the *Washington Mutual* decision does not address the key "not less than" language in section 1129(a)(7). Second, the court reasoned that where Congress wanted to refer to contract interest, it did so, such as in section 506(b), and failure to refer to contract interest in section 726(a)(5) by contrast has a negative implication. *Id.* at 242. But section 506(b) does <u>not</u> refer to contract interest. Third, the argument that post-petition interest is "procedural" and thus "dictated by federal law" is flawed. *Washington Mutual*, 461 B.R. at 242-43. Approval of a plan is not actually a judgment, nor does *Erie v. Tompkins*, 304 U.S. 64 (1938) apply. Fourth, Judge Walrath also justified using the federal judgment rate on grounds that it promoted "fairness among creditors". *Washington Mutual*, 461 B.R. at 243. However, if anything, "fairness among creditors" points equally to the conclusion that the Sixth Circuit and other courts have reached under the "fair and equitable" standard — fairness requires taking into account bargained-for obligations. *See e.g., Dow III*, 456 F.3d at 679 ("[A]bsent compelling equitable considerations, when a debtor is solvent, it is the role of the bankruptcy court to enforce the creditors' contractual rights"). Fifth, Judge Walrath also based her decision on "administrative efficiency" that supposedly flows from using a single rate. *Washington Mutual*, 461 B.R. at 243. However, that is much less weighty in any large, complex bankruptcy. *Id*. Applying different contract rates requires no more calculations than applying a single rate, and sophisticated parties and experts can readily handle the incremental math.

**(iii)    Section 1129(b)(1) Mandates Contract Rate Interest in Order for the Plan to be Fair and Equitable Even if This is Not a Solvent Debtor Case**

79.    Although it is expected that the trial evidence will demonstrate that EFH Corp. is solvent, the "fair and equitable" standard in section 1129(b) nonetheless mandates use of the contract rate for post-petition interest even if solvency is not shown.  As *Dow III* makes clear, in that event the same statutory language and legislative history considerations point to a review of the equities for determining the proper interest rate.  *Dow III*, 456 B.R. at 678-79 (stating that in the case of insolvent debtor "bankruptcy courts have concluded that default interest need not be awarded in every instance for a plan to pass muster under § 1129(b)(1).  Instead, bankruptcy courts analyze whether § 1129(b) requires the payment of default interest on a case-by-case basis"); *see also In re Terry Ltd. P'ship,* 27 F.3d 241, 243 (7th Cir. 1994) (holding that when the debtor is insolvent, default interest may be awarded based on the facts and equities of each specific case); *In re Southland Corp.*, 160 F.3d 1054, 1059-60 (5th Cir. 1998)(holding that in the case of an insolvent debtor, "default interest rate is generally allowed, unless the higher rate would produce an inequitable result") (quotation omitted)..

80.    For much the same reasons as demonstrated above, the "fair and equitable" standard is not limited by the Federal Judgment Rate even in a non-solvency case.  That is especially so here, where under the Plan (which asserts that all E-side creditors are unimpaired) there is no other competing class of creditors that is likely to be harmed by the award of contract rate interest.

81.    To reiterate, in a chapter 11 case, the only reference to section 726(a)(5) is indirectly through application of section 1129(a)(7), which indicates – by express statutory language – that the threshold requirements of chapter 7 are to be taken as a floor, not a ceiling.

32

The amount to be received under section 1129(a)(7) must be "not less than" the creditor would receive in chapter 7.  "Not less than" does not mean "equal to."

    **(iv)    The Plan's Treatment of the EFH Legacy Note Claims as Unimpaired Mandates Compliance With Section 1124 and Therefore Payment of Contract Rate Interest**

    82.    Given that the Debtors elected to treat the EFH Notes Claims as unimpaired under the Plan, there is no basis in the Bankruptcy Code to limit the interest rate to the Federal Judgment Rate. The governing standard for claims that are treated as unimpaired is under section 1124(1), which makes no reference to section 726(a)(5) and, to the contrary, mandates that the "legal, equitable and contractual rights" must not be altered.  Accordingly, 1124(1) requires payment of the EFH Legacy Noteholders' post-petition interest at the contract rate.

**D.    Controlling Supreme Court Precedent Requires Payment of EFH Legacy Notes Trustee Fees and Expenses as Part of EFH Legacy Notes Trustee's Unsecured Claim**

    83.    The Debtors have also objected to the fees and expenses of the EFH Legacy Notes Trustee and its advisors (the "EFH Legacy Notes Trustee Fees and Expenses") in the Plan and the Second Claim Objection on the grounds that section 506(b) precludes unsecured creditors from recovering professional fees provided under an indenture.  The Debtors' position violates clear Supreme Court Precedent.

    84.    Each EFH Legacy Notes Indenture provides that the Debtors shall satisfy the reasonable fees and expenses of the EFH Indenture Trustee and its professionals.[11]  For example, section 907(b) of the EFH Legacy Series R Indenture provides that EFH Corp. shall

> reimburse the Trustee upon its request for all reasonable expenses, disbursements, and advances reasonably incurred or made by the Trustee in accordance with any provision of this Indenture

---

[11]    The chart attached as Exhibit 2 to the Plan Objection sets forth the fee-payment provisions in each EFH Legacy Notes Indenture.

> (including the reasonable compensation and the expenses and
> disbursements of its agents and counsel) . . . .

85.      The Supreme Court in *Travelers*, 549 U.S. at 448,  plainly stated that "an

otherwise enforceable contract allocating attorney's fees (i.e., one that is enforceable under

substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code

provides otherwise."  Indeed, a creditor's "'entitlements in bankruptcy arise in the first instance

from the underlying substantive law creating the debtor's obligations, subject to any qualifying or

contrary provisions of the Bankruptcy Code.'"  *Id*. at 444 (quoting *Raleigh v. Illinois Dept. of

Revenue*, 530 U.S. 15, 20 (2000)).  This "principle requires bankruptcy courts to consult state

law in determining the validity of most claims."  *Id.*  Thus, claims that are "enforceable under

applicable state law will be allowed in bankruptcy unless they are expressly disallowed."  *Id.* at

452 (citing 11 U.S.C. § 502(b)).   Nothing in the Bankruptcy Code expressly disallows the EFH

Legacy Notes Trustee Fees and Expenses and the Debtors have not questioned the validity of the

fee provisions in the EFH Legacy Notes Indentures.

86.      Further, each EFH Legacy Notes Indenture provides that EFH Corp. shall

indemnify the EFH Legacy Notes Trustee for all costs and expenses associated with serving as

trustee.   For example, section 907(c) of EFH Legacy Series R Indenture provides that EFH

Corp. shall:

> indemnify the Trustee for, and hold it harmless from and against,
> any loss, liability or expense reasonably incurred by it arising out
> of or in connection with the acceptance  or administration of the
> trust or trusts hereunder or the performance of its duties hereunder,
> . . . .

87.      In these cases, the Debtors have already admitted that an indenture trustee is

entitled to reimbursement of its expenses, including attorney's fees, in accordance with the terms

of the indentures.  *See Debtors' Objection to Motion for Order Authorizing Payment and*

34

*Reimbursement of Certain Fees and Expenses of UMB Bank, N.A. as the EFIH Unsecured Indenture Trustee* [Docket No. 5909], at 4 n.5 ("An indenture trustee is entitled to reimbursement of its expenses, including attorney's fees, in accordance with the terms of the indenture if it fulfills its duties.")(internal citations omitted).  That is consistent with the holding of the Supreme Court in *Travelers*.  Accordingly, in accordance with *Travelers*, the EFH Legacy Notes Trustee Fees and Expenses must be allowed.

88.    The Debtors argue that *Travelers* is not controlling here and cite to *In re Seda France, Inc.*, No. 10-12948- CAG, 2011 Bankr. LEXIS 2874, 2011 WL 3022563 (Bankr. W.D. Tex. July 22, 2011) and *In re Elec. Mach. Enters.,* 371 B.R. 549 (Bankr. M.D. Fla. 2007), a Texas bankruptcy court case and a Florida bankruptcy case, respectively, that are not precedential in this Circuit.  Second Claim Objection, at p. 25 n. 16.  The more persuasive post-*Travelers* analysis is provided by the Second Circuit Court of Appeals, which stated that an "unsecured claim for post-petition fees, authorized by a valid prepetition contract, is allowable under section 502(b) and is deemed to have arisen prepetition. . . '[C]laims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed.'"  *Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 147 (2d Cir. 2009) (quoting *Travelers*, 549 U.S. at 452).  .  In all events, the failure to pay contractual fees and expenses in a solvent debtor case such as this one would not be "fair and equitable" under section 1129.  In addition, where the EFH Legacy Note Claim are treated as unimpaired under the Plan, failure to pay contractual fees and expenses does not comply with the requirements of section 1124(1).

**(i)    Reservation of Rights With Respect to Allowance of EFH Legacy Notes Trustee Fees and Expenses as Administrative Expenses**

89.    Although the EFH Legacy Notes Trustee believes that the EFH Legacy Notes Trustee Fees and Expenses are allowable as unsecured claims under *Travelers*, the EFH Legacy

Notes Trustee has separately asserted that the EFH Legacy Notes Trustee Fees and Expenses are entitled to be treated as administrative expenses under section 503(b)(1)(A) as actual and necessary expenses to preserve EFH Corp.'s estate.  *See* Plan Objection, at ¶¶ 72-89.  The EFH Legacy Notes Trustee reserves all its rights with respect to arguing that the EFH Legacy Notes Trustee Fees and Expenses are administrative expenses.

90.     Further, the EFH Legacy Notes Trustee is ***not*** seeking a finding at this time that it is entitled to a claim for "substantial contribution," under section 503(b)(3)(D).  The Debtors' objection to allowance of the EFH Legacy Notes Trustee Fees and Expenses under section 503(b)(3)(D) is premature and the EFH Legacy Notes Trustee reserves all its rights to pursue a claim for "substantial contribution."

**E.     The EFH Legacy Notes Trustee Claims Should be Allowed to the Extent They Include Amounts for Unamortized Original Issue Discount**

91.     The Debtors have objected to the portions of the EFH Legacy Proofs of Claim related to OID on the grounds that such claims are unmatured interest under section 502(b)(2).  However, courts have held that unmatured interest should be allowed when a debtor's estate is solvent.  *See e.g.*, *Dow III*, 456 F.3d at 679 ("[I]n solvent debtor cases, rather than considering equitable principles, courts have generally confined themselves to determining and enforcing whatever prepetition rights a given creditors has against the debtor . . . "); *Biloxi,* 445 B.R. at 644 ("Absent the solvency of a debtor and application of the "best interests of creditors" test, however, § 502(b) prohibits payment of any unmatured interest to unsecured creditors").  The

EFH Legacy Noteholders' contractual entitlement to OID should be allowed since EFH Corp. is

solvent and the EFH Legacy Note Claims are treated as unimpaired under the Plan.[12]

**F.**    <u>**The EFH Legacy Proofs of Claim Are Not Overstated**</u>

92.    The Debtors also object to the EFH Legacy Proofs of Claim to the extent such

claims are overstated.  However, the analysis in the Second Claim Objection of the amounts

owed under each EFH Legacy Notes Indenture fails to take into account amounts held by EFH

Corp. or EFIH.  The Debtors stated that: "Pursuant to a pending settlement agreement among

EFH Corp. EFIH and various other parties, EFIH shall waive and release all Legacy Note claims

it holds against EFH Corp."  Second Claim Objection, at p. 6-7 n.8.  However, until canceled,

amounts held by EFIH and EFH Corp. remain outstanding and due and are properly part of the

EFH Legacy Proofs of Claim.

**G.**    <u>**The EFH Legacy Noteholders are Entitled to Restitution Based on Unjust Enrichment as an Alternative Theory of Recovery**</u>

93.    If the Court determines that the provisions in the EFH Legacy Notes Indentures

providing for makewholes, contract rate of post-petition interest and payment of fees and

expenses are not enforceable, then the EFH Legacy Noteholders are entitled to recovery based on

an alternative remedy of restitution for unjust enrichment.

94.    Unjust enrichment is premised on "the equitable principle that a person shall not

be allowed to enrich himself unjustly at the expense of another."  *Miller v. Schloss*, 218 N.Y.

400, 407, (1916).  "A person who is unjustly enriched at the expense of another is subject to

liability in restitution."  RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1

(2011).  Under New York Law, in order to recover on a claim for unjust enrichment a plaintiff

---

[12]    In the Second Claim Objection, the Debtors allege that OID totals approximately $1.86 million.  Their calculations do not appear to be accurate and the figures are only provided in the aggregate.

must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011)(internal quotations omitted). Here, all three elements will be met if the Debtors are allowed to repay the EFH Legacy Notes early without paying makewholes, contract rate of post-petition interest, payment of fees and expenses, and other contractual entitlements.

95.     First, the Debtors are enriched by not having to pay those amounts to which they are contractually required to pay under the EFH Legacy Notes Indentures. Second, that enrichment comes at the expense of the EFH Legacy Noteholders, who are entitled to makewholes, contract rate of post-petition interest, and payment of fees and expenses under the EFH Legacy Notes Indentures. Third, it would be against equity and good conscience to allow the Debtors to avoid their obligations and keep for themselves the benefit of the bargain they agreed to give to the EFH Legacy Noteholders. The Debtors and EFH Legacy Noteholders negotiated interest rates, makewholes, and other contractual terms that conferred a benefit on the borrowers. Retention of those benefit, while repudiating an essential term of the agreement, would be unjust. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §§ 49(1), 49(3), 50(2), 52(1), 52(2).

## IV.
## RESERVATION OF RIGHTS

96.     The EFH Indenture Trustee reserves its right to amend this Response or interpose additional arguments in response to evidence that may be introduced at the confirmation hearing or the hearing on the Second Claim Objection.

## V.
## <u>CONCLUSION</u>

97.     Based on the foregoing, the EFH Legacy Notes Trustee respectfully requests the

Court (i) deny the First and Second Claim Objections, (ii) allow the EFH Legacy Note Claims in

the amounts set forth above and in the Williams Report inclusive of makewhole claims, post-

petition interest at the contract rate and the EFH Legacy Notes Trustee Fees and Expenses, and

(iii) grant such other and further relief as is just and proper.

Dated: Wilmington, DE
       October 28, 2015

**CROSS & SIMON, LLC**

By: */s/ Christopher P. Simon*
Christopher P. Simon (Del. Bar No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust*
*Company, LLC, as Indenture Trustee*