# McKool Smith

Peter S. Goodman
Direct Dial: 212-402-9408
Email: pgoodman@mckoolsmith.com

One Bryant Park
47th Floor
New York, NY 10036

Telephone: (212) 402-9400
Facsimile: (212) 402-9444

October 28, 2015

**VIA HAND DELIVERY AND ECF**

Hon. Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 Market Street, 5th Floor
Wilmington, DE 19801

      RE:    *In re Energy Future Holdings Corp.*, et al., Main Case No. 14-10979 (CSS) (Bankr. D. Del.)

Dear Judge Sontchi:

      I write on behalf of Alcoa Inc. ("Alcoa") in response to the letter dated October 27, 2015, from the Kirkland & Ellis firm (the "October 27 Letter"), counsel to the Debtors and Debtors in Possession in the above referenced chapter 11 cases (the "Debtors"), concerning 1) a protective order issue between Alcoa and the Debtors concerning the Debtors' refusal to permit two uniquely qualified business people at Alcoa (which is not a competitor of the Debtors) to review critical documents relevant to Alcoa's breach of contract claim, which the Debtors have dubiously labeled "Highly Confidential" and off limits without proper basis; and 2) a newly minted fact witness deposition limitation issue raised by the Debtors at the eleventh hour seeking to prematurely limit fact witnesses for deposition prior to any document production.

      At the CourtCall status conference on September 9, 2015, the Court, *inter alia*, ruled that the trial on the Debtors' Motion to Assume the Rockdale Contracts[1] with Alcoa and on Alcoa's cure claim would not commence on October 2 as requested by Debtors. The Court asked the parties to try to reach agreement on a trial commencement date to try to reach agreement on a protective order and on a schedule for discovery and other pre-trial matters based on the agreed trial commencement date, and to revert to the Court regarding any issues the parties were unable to resolve by agreement.

      The parties are still negotiating a scheduling order (tied to a trial commencement date of February 9, 2016, as advised by the Court's staff); and have reached agreement on the terms of a protective order with one exception concerning restricted access to certain documents to be

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in Alcoa's August 31, 2015, letter to the Court [D.I. 5807] and its September 9, 2015 letter to the Court [D.I. 5891].

**McKool Smith**
A Professional Corporation • Attorneys
Austin | Dallas | Houston | Los Angeles | Marshall | New York | Silicon Valley | Washington, DC

IF "" = "1" "Error! Unknown document property name.

Hon. Christopher S. Sontchi
October 28, 2015
Page 2

produced by the Debtors. The Debtors propose to designate some documents and other discovery material as "Highly Confidential" ("HC"), which, in the Debtors' proposed protective order, is defined to mean material "that is of such a nature that a risk of *competitive injury* would be created if such material were disclosed to persons other than those identified" in the protective order. The Debtors insist that the persons so identified, i.e., to whom HC documents may be disclosed, include *only* Alcoa's outside counsel and experts and four specifically identified inside counsel; and that *no* Alcoa business employees (i.e., non-attorneys) may have access to HC documents. Alcoa proposed several compromises that successively narrowed the scope of access by Alcoa business employees,[2] all of which the Debtors rejected, including the final proposed compromise that access be permitted for only two specifically identified uniquely qualified Alcoa business employees, Tommy Hodges ("Hodges") and William Smith ("Smith").

Alcoa is willing to enter into a protective order containing the Debtors' proposed "risk of competitive injury" test for HC designations, and access to HC documents by the four Alcoa inside counsel but not by Alcoa business employees other than Hodges and Smith.[3] But Alcoa will not enter into a protective order that forbids disclosure of HC documents to Hodges and Smith. Because of this impasse, the parties will not be able to enter into a protective order and, without a protective order, discovery will be stymied.

It appears from their October 27 Letter that the Debtors' proposed solution to this impasse is an order from the Court forbidding Alcoa from disclosing HC documents to all Alcoa business employees, including Hodges and Smith. For many reasons as set forth below, however, such an order would be inappropriate, prejudicial to Alcoa, and contrary to the facts and the federal rules. In contrast, a ruling by the Court that it will not enter such an order is in accordance with the facts and rules and will resolve the impasse so that the parties can move forward without prejudice to any of them.

Under FRCP 26(c) (which applies to this matter by virtue of Bankruptcy Rules 7026 and 9014), as the party seeking a protective order to prevent access to HC documents by Hodges and Smith, <u>the Debtors have the burden of showing "good cause"</u> for such an order:

> Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show *good cause* by demonstrating a *particular need* for protection.

*Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986) (emphasis added), *cert. denied*, 484 U.S. 976 (1987).

> Good cause is established on a showing that disclosure will work a *clearly defined* and *serious injury* to the party seeking closure. The injury must be shown *with specificity*. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing. The burden of justifying the confidentiality of *each and every* document sought to be covered by a protective order remains on the party

---

[2] See, e.g., Alcoa's September 9, 2015, letter to the Court [D.I. 5891], at page 3.
[3] Alcoa is willing to do this solely as a compromise to resolve the impasse so that the parties can move forward. As shown below, however, Alcoa believes there is no basis for forbidding access by *any* Alcoa employee to documents designated as HC based on the "risk to competitive injury" test.

IF "" = "1" "Error! Unknown document property name.

seeking the order.

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786-87 (3rd Cir. 1994) (emphasis added) (citations and internal quotes omitted).

Contrary to Rule 26(c), the Debtors do not now and have never before articulated any "specific" or "particular need" or "articulated reasoning" or any "clearly defined" injury to justify its insistence that no Alcoa business employees have access to HC documents. Instead they have offered only "broad allegations," conclusory assertions and factually inapplicable rationales.

For example, the Debtors contend that Alcoa should accept the Debtors' proposed protective order, including the restricted access to HC documents, because indentured trustees, *ad hoc* creditor committees and similar creditors in the bankruptcy had accepted that protective order.[4] This contention falls far short of the good cause requirement, first because those other parties' acceptance of that protective order was a *condition* to their participating in discovery related to confirmation pursuant to the Court's confirmation scheduling order.[5] Alcoa and the Debtors, however, are *not* participating in discovery under the confirmation scheduling order, but instead under a separate schedule and other terms to which Alcoa and the Debtors agreed by stipulations that expressly provide that the Court's confirmation scheduling order does not apply.[6] Second, those indentured trustees, *ad hoc* committees, and other parties have no reason for their employees to have access to the HC documents, as their outside attorneys and financial advisors—which do have access under the protective order—are fully handling those parties' interests and responsibilities as creditors without the need for the trustees etc. to review any documents. Moreover, many of those creditors trade in the debt of the Debtors and thus have reasons of their own—avoidance of restrictions on trading—to make sure they have no access to the Debtors' HC documents. In contrast, as shown below, Alcoa has a compelling need for at least Hodges and Smith to have access to HC documents and is not trading the Debtors' securities.

More significantly, it is plain that the Debtors' own definitional test for designating documents as HC—a "risk of *competitive* injury"—does not and cannot apply to disclosure of such documents to *any* Alcoa business employees. The simple reason for this is that <u>Alcoa and Luminant are not competitors, i.e., they are not rivals in the same market</u>. Luminant sells electric power in Texas. Alcoa does not sell electric power in Texas; it sells aluminum and aluminum products. Because Alcoa and the Debtors are not competitors, it is plain that disclosure of HC documents to Alcoa business employees cannot possibly create any risk of a competitive injury to the Debtors.

When Alcoa confronted the Debtors with this obvious flaw in their argument, they did not deny it. Instead, the Debtors claimed that the "competitive injury" in the test is intended to refer to Luminant's competition with Alcoa *with respect to the Rockdale Contracts themselves*. The Debtors offered no support for this bizarre construction, nor could they. That their

---

[4] October 27 Letter at page 2; 8/13/14 Confidentiality Agreement and Stipulated Protective Order [D.I. 1833].
[5] 7/2/15 Order [D.I. 4916], at para 3, as amended by the 8/27/2015 Order [D.I. 5771], at para 3, approved by the Court granting the Debtors' 8/11/15 motion to amend [D.I. 5269].
[6] 5/6/15 Order approving Alcoa and Debtors' Stipulation [D.I. 4412]; 8/7/15 Stipulation [D.I. 5243].

IF "" = "1" "Error! Unknown document property name.

construction is false becomes obvious by considering possible competing interpretations of the Rockdale Contracts at issue or competing claims under them. Under the Debtors' construction, no business employee of the opposing party could have access to Debtors' documents concerning such interpretations or claims, a result that patently protects no legitimate interest, but is instead just an artifice to stymie the opposition's discovery and ability to litigate. Moreover, the Debtors' proposed protective order provides no support, as it does not define "competitive injury" or "competitor." The case law also provides no support for the Debtors' argument. In a similar situation, a California federal district court held that "competitor" has its ordinary meaning, i.e., a rival in the same market as another, as noted above:

> The protective order in this case does not define "competitor." One court in this circuit has explained that, "in the traditional sense," competitors are "persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival." ... Another court in this circuit has similarly defined "competitor" to mean "a rival" or "one selling or buying goods or services in the same market as another."

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, No. 12-cv-05847-WHO, 2015 U.S. Dist. LEXIS 49740, *31-32 (N.D. Cal. April 15, 2015) (citations omitted).

In the October 27 Letter, the Debtors attempt to pull the wool over the Court's eyes by contending that, where "contract counterparties exchange sensitive materials," the courts "routinely" shield those materials from disclosure to personnel who can use it to "gain undue commercial advantage in the business relationship."[7] The Debtors cite no authority to support this contention. The cases the Debtors do cite are inapposite and of no help to their argument. These cases occur in the context of antitrust and patent infringement litigation—not breach of contract, as is Alcoa's cure claim here—among competitors in the same industry. They do not involve parties like Alcoa and Luminant who are not competitors. Further, in each case, the party seeking access to HC information attempted to make such information available to apex individuals in the corporate structure who make competitive decisions that create a competitive disadvantage to the other party *vis-à-vis* the party accessing the HC information.

For example, in *Suture Exp., Inc. v. Cardinal Health, 200 LLC*, No. 12-2760, 2013 U.S. Dist. LEXIS 181550 (D. Kan. Dec. 31, 2013), the plaintiff in an antitrust case sought to permit access to HC documents of the Defendants by a member of its board of directors who also was the co-founder of a private equity firm owning interests in companies in direct competition with the defendants. As the court stated, "Plaintiff ... specializes in the distribution of sutures and endo products .... Defendants also distribute sutures and endo products .... Defendants are business competitors of Plaintiff." *Id.* at *2. In addition, the board member's position with the private equity firm creates a "risk of inadvertent disclosure because he presumably oversees and manages the business affairs of other companies, potentially Defendants' competitors in the healthcare industry." *Id.* at *22. In *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 546 F. Supp. 2d 951 (S.D. Calif. 2008), a patent infringement case, the issue was also whether an individual, Slavitt, who was involved in "competitive decision-making; that is, advising on decisions about pricing or design made in light of similar or corresponding information about a

---

[7] *See* October 27 Letter at 3.

IF "" = "1" "Error! Unknown document property name.

competitor" should have access to HC information. *Id.* at 953 (citation and quotation marks omitted). The court held that Slavitt did engage in such competitive decision-making, because, among other things he performed duties for the defendant's parent, AVX, which was a direct competitor of the plaintiff Presidio, i.e., "[Slavitt] drafts and reviews contracts for AVX for competitive bids that could compete with Presidio." *Id.* at 954. But as discussed, Alcoa is not Luminant's business competitor. Likewise, in *Tailored Lighting, Inc. v. Osram Sylvania Prods., Inc.*, 236 F.R.D. 146 (W.D.N.Y. 2006), another patent infringement case, the issue was whether an inventor of the patent at issue could have access to the HC information of the defendant, where the plaintiff's president and patent "inventor licenses the patent to a direct competitor" of the defendant. *Id.* at 149.

The facts of the cases the Debtors cite differ materially and significantly from the facts here: Alcoa and Luminant are not competitors and are not litigants in an antitrust or patent infringement case; and because Alcoa and Luminant are not competitors, Smith and Hodges are not competitive decision-makers with respect to competition with Luminant and Luminant's competitors. They are certainly not competitive decision-makers to any extent on the level of the individuals at issue in the cases cited in the October 27 Letter. For the same reason, there is no risk of Smith and Hodges making inadvertent disclosures of HC information to Luminant's competitors, as they have no involvement with Luminant's competitors. Alcoa seeks to have Hodges and Smith granted access to HC information because they are uniquely qualified among Alcoa employees and consultants to understand the meaning and significance of the HC information (see below); and *not* to gain any sort of "competitive edge" in an industry (power generation) in which Alcoa does not participate. Plainly, there is no merit whatsoever to the Debtors' claim that providing access to HC documents by Smith and Hodges "creates an unavoidable risk of Alcoa obtaining an unfair business advantage."[8]

Equally unavailing is the Debtors' third rationale for no access, namely that the HC designated documents are "sensitive" because they contain Luminant's "sensitive business analyses of the Alcoa [Rockdale] contracts," and "financial *projections*," including future prices and revenues, "assessment of market conditions, operating assumptions," "forward power curves," and the "business rationale for undertaking capital expenditures at the relevant electric generation facilities."[9] Sensitive or not, such projections, etc., do not trigger the Debtors' risk of competitive injury test because, as shown above, Alcoa and the Debtors are not competitors. Moreover, unlike the typical interests protectable under Rule 26(c), such as trade secrets that are only incidental to the dispute between the parties, here, Luminant's projections etc. are at the very heart of the dispute, and likely are key facts supporting Alcoa's cure claim.

The cure claim arises from agreements between Alcoa and debtor Luminant Generation LLC relating to the operation of the Unit 4 power plant, under which Alcoa pays for electricity by paying for certain operational expenses and capital costs related to power generation. The agreements limit the type and amount of such costs that Luminant can pass on to Alcoa by requiring Luminant to use "due diligence" to operate Unit 4 in "an efficient and economical manner." Alcoa's cure claim is that Luminant has incurred substantial expenditures that no prudent power plant operator would have made, has improperly passed those costs onto Alcoa in

---

[8] *See* October 27 Letter at 3.
[9] *See* October 27 Letter at 2.

IF "" = "1" "Error! Unknown document property name.

breach of the agreements' express obligations, and apparently intends to keep doing so. One of the bases for the claim that the expenditures were imprudent is that, at the time they were incurred, it was certainly foreseeable and likely foreseen by Luminant that, based on power price "*projections*," "assessment of marketing conditions," "forward power curves," etc.—i.e., all the so-called "sensitive" information the Debtors claim is off limits (see above)--those expenditures would not have been recovered from *future revenues* Luminant would have received from power sales.

Thus, through the guise of protection against the risk of a (non-existent) competitive injury, Luminant is actually seeking to prevent Alcoa's business people from accessing and reviewing documents reflecting Luminant's projections, assessments etc., i.e., the very documents that will establish that Luminant knew the expenditures were not recoverable and therefore improper.

Access to those documents and other cure claim-related documents by Alcoa's business people, particularly Smith and Hodges, is vitally important, because of the complexity of the Rockdale operations, the Alcoa/Luminant contractual relationship, and the economics of the contracts and the power market. The significance of key documents will not be evident to any but those with significant knowledge and experience in such matters. And no one is more knowledgeable and experienced than Smith and Hodges.

William Smith has been employed at Alcoa (Primary Metals Division) since 2007. He is currently the controller of the Rockdale Energy and US GPP Capital Projects, positions he has held since 2012. He is a Certified Public Accountant. Smith has considerable experience in the power generation and related industries. Indeed, prior to his employment at Alcoa, Smith spent twenty years working for Luminant's predecessor (TXU) and gained considerable experience with the Rockdale contracts in that capacity. Smith also worked in public accounting for five years, concentrating in the energy sector.

As controller at the Rockdale Facility, Smith's responsibilities include the accurate and timely recording of the Rockdale, Texas financial activity between Alcoa and Luminant. Smith is regularly in touch with Luminant and is the sole person responsible for calculating the amounts the parties owe to each other each month under the Rockdale Facility Agreements. In the entire Alcoa organization, Smith is the person most knowledgeable about the energy sales, prices, and projection related to the Rockdale Contracts.

While Smith is the individual at Alcoa with the most knowledge about the accounting and the numbers underlying the Rockdale Facility Agreements, Tommy Hodges is the person most knowledgeable at Alcoa with respect to the day-to-day management and operations related to the Rockdale Facility Agreements. Hodges is a Registered Professional Engineer (Texas) and has worked at Alcoa (Primary Metals Division) since 1978.

Currently, Hodges is Rockdale Energy Manager—Rockdale Operations, a position he has held since 2007. His duties include managing the Rockdale Facility Agreements as they relate to Units 4 and 5, as well as coordinating the Luminant/Alcoa relationship. He also manages the common facilities and over 55 thousand acres of Alcoa property. As such, Hodges has considerable contact with Luminant regarding the operations on the Rockdale Facility, and no

other individual at Alcoa has the knowledge Hodges has with respect to how the Rockdale Facility contracts work from an operational perspective.

Plainly, Alcoa has a compelling need for Smith and Hodges to have access to, and review the HC documents, as those two are the most qualified to understand and determine the significance and impact of such documents; they are truly uniquely qualified among Alcoa employees and consultants to make those determinations.

To summarize, the Debtors cannot meet the Rule 26(c) good cause requirement for a protective order that would prevent access to the HC documents by Alcoa business employees. For that reason alone, the Court should decline to enter such a protective order. In addition, Alcoa has a compelling need for its business people, particularly Tommy Hodges and William Smith, to have access to those documents. In the spirit of compromise, Alcoa is willing to enter into a protective order in which Hodges, Smith and the four specifically named Alcoa inside counsel, but not other Alcoa employees, may have access to HC documents.

Furthermore, the issue of providing confidential documents has nothing to do with Smith and Hodges access to highly confidential documents.

Finally, after seven weeks of negotiations on the scheduling and the protective order, the Debtors only recently for the first time raised with Alcoa a limitation on the number of fact witnesses each side will be permitted to call at trial at four. There is no basis for this limitation, and this issue is premature and need not be addressed now. Alcoa cannot determine the number of fact witnesses it may need to call at trial because Alcoa has not received any documents from the Debtors on account of the HC issue that is the subject of this letter. Alcoa proposes that, instead of having the Court determine an issue that is not ripe, the parties negotiate in good faith to determine the maximum number of fact witness each side will be permitted to call after having a chance to review relevant documents. If the parties cannot come to an agreement after negotiating in good faith, only then does it make sense to revert to the Court to resolve any dispute regarding the number of fact witnesses.

Very truly yours,

/s/ Peter S. Goodman

Peter S. Goodman

IF "" = "1" "Error! Unknown document property name.