## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 6737** |

## DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE TO LIMIT THE EXPERT REPORT AND TESTIMONY OF MARK RULE

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS**
**INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT .................................................................................... 1

BACKGROUND .......................................................................................................... 3

LEGAL STANDARD................................................................................................... 4

ARGUMENT ............................................................................................................... 7

I.    Rule's Opinions Are Irrelevant to Any Fraudulent Transfer Analysis. ............... 7

    A.    Rule's Opinions Regarding the Solvency of "Consolidated EFH" Are
        Irrelevant to EFH's Solvency for Fraudulent Transfer Purposes........................... 7

    B.    Rule Has No Opinion as to EFH's Solvency as of the Date of Any
        Transfer. .................................................................................................................... 8

II.   Rule's Reliance on Valuation Materials Cherry-Picked by His Counsel Renders
    His Analysis Incomplete and Inaccurate................................................................. 9

    A.    Rule Has Not Conducted His Own Independent Valuation or Solvency
        Analysis..................................................................................................................... 9

    B.    Rule Did Not Consider Materials That Contradict His Opinions, Because
        His Counsel Did Not Provide Them. ..................................................................... 10

III.  Rule's Solvency Opinions Regarding EFH and the E Side Are Biased and
    Methodologically Flawed. .................................................................................... 10

IV.   Rule Inappropriately Accounts for Speculative Litigation Outcomes Regarding
    Makewhole Claims and Intercompany Claims in His Post-December 2012 E-Side
    Solvency Analysis................................................................................................. 11

V.    Rule Improperly Opines on the Debtors' *Scienter* with respect to the Pre-Petition
    Solvency of EFH................................................................................................... 12

CONCLUSION.......................................................................................................... 13

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ammons v. Aramark Uniform Servs., Inc.*,
 368 F.3d 809 (7th Cir. 2004) ................................................................................ 6

*Calhoun v. Yamaha Motor Corp.*,
 350 F.3d 316 (3d Cir. 2003) ................................................................................. 6

*Cantor v. Perelman*,
 No. CIVA 97-586 KAJ, 2006 WL 3462596 (D. Del. Nov. 30, 2006) .................................. 4, 5

*Crawford v. George & Lynch, Inc.*,
 No. CV 10-949-GMS-SRF, 2013 WL 6504361 (D. Del. Dec. 9, 2013) .............................. 5, 13

*Daubert* v. *Merrell Dow Pharms., Inc.,*
 509 U.S. 579 (1993) ........................................................................... 4, 5, 6, 8

*General Elec. Co. v. Joiner*,
 522 U.S. 136 (1997) ............................................................................. 6

*In re Am. Classic Voyages Co.*,
 367 B.R. 500 (Bankr. D. Del. 2007) ................................................................ 7

*In re Opus E., LLC*,
 528 B.R. 30 (Bankr. D. Del. 2015) ................................................................. 6

*In re Paoli R.R. Yard PCB Litig.*,
 35 F.3d 717 (3rd Cir. 1994)........................................................................ 10

*In re TMI Litig.*,
 193 F.3d 613 (3d Cir. 1999)..................................................................... 6, 9

*In re W.R. Grace & Co.*,
 355 B.R. 462 (Bankr. D. Del. 2006) ............................................................... 4

*Kumho Tire Co.* v. *Carmichael,*
 526 U.S. 137 (1999) ............................................................................. 4

*Oddi v. Ford Motor Co.*,
 234 F.3d 136 (3d Cir. 2000)..................................................................... 4, 6

*Pineda v. Ford Motor Co.*,
 520 F.3d 237 (3d Cir. 2008)...................................................................... 5

*Weisgram v. Marley Co.*,
  528 U.S. 440 (2000) ........................................................................................................... 4

**Statutes**

11 U.S.C. § 548 ................................................................................................................... 7, 8

**Rules**

Fed. R. Evid. 104(a) ........................................................................................................... 4

Fed. R. Evid. 602 ............................................................................................................... 4

Fed. R. Evid. 701 ............................................................................................................... 4

Fed. R. Evid. 702 ........................................................................................................... 4, 5, 6

## PRELIMINARY STATEMENT[2]

The EFH Committee proffers the report and testimony of Mark F. Rule in support of its objections to the Debtors' Fifth Amended Plan of Reorganization, filed September 21, 2015 (the "Plan") and the Amended & Restated Settlement Agreement, filed September 17, 2015 (the "Settlement Agreement").    Rule's primary opinions relate to the solvency of EFH from December 2008 through December 2012, and between December 2012 and the bankruptcy petition date.  (*See* Ex. A, Expert Report of Mark Rule, dated Oct. 12, 2015 ("Rule Rep.") at 5.)

The EFH Committee offers Rule's solvency opinions apparently to bolster its argument that EFH has litigation claims against the T Side and the equity sponsors based on legacy transactions.[3]  (*See, e.g.*, EFH Committee Objection ¶ 134 [D.I. 6627].)  Rule, however, does not opine on EFH's solvency in connection with the 2007 LBO.  Instead, Rule opines only on EFH's balance sheet solvency between 2008 and 2012.    The solvency opinions Rule offers are irrelevant, baseless, and methodologically flawed.    Rule's critical errors fall into five main categories.

***First,*** Rule's opinions are not relevant to any issue in dispute because they will not assist the Court in determining the solvency of EFH as a legal entity as of the date of any fraudulent transfer.    Rule's "Consolidated EFH" opinion is especially misleading and unhelpful.    As this Court well knows, EFH has two debt "silos," the "E Side" and the "T Side."    Because EFH does not guarantee any of the T-Side debt (a fact Rule did not know when he offered his opinions), it is inappropriate and misleading to consolidate T-Side debt with E-Side debt in determining EFH's solvency.    But that is exactly what Rule does in his "Consolidated EFH" analysis, an

---

[2]    Capitalized terms used, but not otherwise defined in this Preliminary Statement, shall be ascribed the same meanings given to them elsewhere in this Memorandum of Law.

[3]    As laid out in the Debtors' reply in support of their Settlement Agreement Motion, this Court need not hold a "mini-trial" on the merits of any settled claims.    That there are litigable claims, even if true, does not mean that such claims should not be settled.

approach that results in the T Side's alleged insolvency dragging down EFH's own equity value. That conclusion is patently counterfactual and would only mislead the Court regarding solvency.

Moreover, although for fraudulent transfer purposes solvency must be assessed as of the date of the transfer, Rule has no opinion as to EFH's solvency as of the date of any particular transfer. Instead, his opinions are limited to particular dates in December of the years 2008 through 2012, and vague speculation about EFH's solvency between December 2012 and the bankruptcy petition date.

**Second,** Rule conducted no valuation or solvency analysis of his own, as he would have liked to do. Instead, he relied on a haphazard review of materials hand-selected by his counsel. Rule's testimony reflects that his counsel withheld materials that contradict his opinion and that he would have wanted to review in developing his opinions. An expert may not simply ignore information contrary to his opinion, but that is exactly what Rule did.

**Third,** Rule's opinions relating to the solvency of EFH and the E Side (excluding the T Side) are the result of a gerrymandered calculation. In assessing E-Side solvency, Rule improperly accounts for intercompany debt, specifically EFH notes held by EFIH. Given that, by Rule's own calculations, EFIH was at all times a solvent, wholly owned subsidiary of EFH, this debt could have been dividended to EFH and cancelled at any time (as in fact occurred with respect to some $6 billion of debt in 2013); therefore, it should have no impact on EFH's or the E Side's solvency. Instead, Rule accounts for that debt in a way that improperly decreases EFH's equity value by including it in his calculations both as an asset at *fair* value and a liability at *par* value. Rule's analysis thus substantially understates the equity value of EFH and the E Side.

**Fourth,** Rule's opinions regarding the post-December 2012 solvency of EFH and the E Side are founded on false assumptions provided by counsel about makewhole claims and the

claims resolved in the Settlement Agreement. They also overlook key facts—including the dividend and cancellation of more than $6 billion of EFH debt held by EFIH, which Rule knew nothing about before rendering his opinions—that would have a material impact on Rule's analysis. Rule's post-December 2012 solvency opinions are therefore unreliable.

*Fifth,* Rule purports to opine on the Debtors' *scienter* with regard to the pre-petition solvency of EFH. The Debtors' state of mind is not a proper subject of expert testimony. Even if it were, Rule is not qualified to opine on this issue, and his opinions are not based on objective, reliable information and methodology.

For all the reasons summarized above and described in greater detail below, the Court should exclude the solvency opinions in Rule's report and his anticipated testimony regarding those opinions.

## BACKGROUND

On October 12, 2015, the Official Committee of Unsecured Creditors of EFH Corp., EFIH, EFIH Finance Inc., and EECI, Inc. (the "EFH Committee") produced to the Debtors the expert report of Mark Rule. The Debtors and other parties in interest deposed Rule on October 22, 2015.

Rule is a Director in the Financial Advisory Services practice of AlixPartners, LLP, a business advisory firm, and is a Chartered Financial Analyst. (*See* Rule Rep. at 4.) Rule's firm, AlixPartners, does not render formal solvency opinions. (*See* Ex. B, Transcript of Mark Rule Deposition, dated Oct. 22, 2015 ("Rule Tr.") at 36:23-37:3.) Nevertheless, Rule generally holds himself out as an expert on valuation and solvency. He has never been qualified by a court as an expert in any field. (*See* Rule Tr. 12:5-10.)

Rule is being proffered by the EFH Committee on, among other things, issues related to EFH's solvency at various points in time from the end of 2008 to the Petition Date. He offers four opinions on solvency:

1.  "Consolidated EFH Corp. was insolvent between December 31, 2008 and December 31, 2012";

2.  "There is no indication that Consolidated EFH Corp. became solvent during the period from December 31, 2012 through the Petition Date";

3.  "EFH Corp. and the E-Side were insolvent between December 31, 2008 and December 31, 2012"; and

4.  "There is no indication that EFH Corp. or the E-Side became solvent during the period from December 31, 2012 through the Petition Date."

For the reasons set forth below, these opinions and Rule's anticipated testimony regarding those opinions should be excluded.[4]

## LEGAL STANDARD

The test for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence is an "exacting" one. *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000). The Supreme Court has made clear that under Rule 702, courts must serve as "gatekeep[er]s" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" before admitting or considering the testimony for any purpose. *Daubert* v. *Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 597 (1993); *see also Kumho Tire Co.* v. *Carmichael,* 526 U.S. 137, 148-51 (1999). This Court's role as "gatekeeper" is no less important in a bench trial setting. *See Cantor v. Perelman*, No. CIVA 97-586, 2006 WL 3462596, at *3 (D. Del. Nov. 30, 2006) (granting motion to exclude in bench trial).

The proponent of the expert testimony bears the burden of showing by a preponderance of the evidence that proffered expert testimony is admissible. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000); *In re W.R. Grace & Co.*, 355 B.R. 462, 471-72 (Bankr. D. Del. 2006). "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or

---

[4] Rule's testimony should also be excluded under Federal Rules of Evidence 104(a), 602 and 701.

specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). In short, the Court must enforce "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

To be admissible, the expert testimony must relate to a contested issue. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591; *see also Schneider v. Fried*, 320 F.3d at 404 (stating expert testimony "must be relevant for the purposes of the case and must assist the trier of fact").[5] In other words, the expert's testimony must "fit the issues in the case." *Schneider v. Fried*, 320 F.3d at 404. As the Supreme Court explained in *Daubert*, "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. at 591-92. Moreover, "[n]either expert testimony on the legal standards applicable to the case, nor testimony on factual matters involving common sense, assists the trier of fact." *Crawford v. George & Lynch, Inc.*, No. CV 10-949, 2013 WL 6504361, at *2-3 (D. Del. Dec. 9, 2013) (excluding expert report that "constitutes an impermissible legal conclusion because retaliation is a legal concept, and because [the expert] reaches a conclusion as to whether [plaintiff's] subjective belief about the legal concept was reasonable"); *see also Cantor v. Perelman*, 2006 WL 3462596 at *3 ("Despite the outstanding qualifications of both Justice Walsh and Professor Hamermesh, I will not be assisted in my role as fact finder in this bench trial by hearing the law explained from the witness stand.").

An admissible expert opinion must also be based on a reliable methodology. Courts consider several factors in conducting a reliability analysis:

---

[5]     Internal citations and quotations omitted unless otherwise noted.

(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*In re Opus E., LLC*, 528 B.R. 30, 58-59 (Bankr. D. Del. 2015) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)) .

At bottom, an expert's opinion must be based on more than "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999); *see also Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 323 (3d Cir. 2003) ("As for his proffered testimony on the specific substance of such warnings, particularly the age requirement, Bruton offered no support for his beliefs.  His proffered opinions on these matters were unreliable, and the District Court properly restricted such testimony."); *see also Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (upholding exclusion of expert opinion that "was nothing more than speculation").  Rather, the opinion must have "good grounds" and must be "the product of reliable principles and methods," which are "reliably" applied "to the facts of the case." Fed. R. Evid. 702 & Advisory Committee Note (2000); *Daubert*, 509 U.S. at 590; *Oddi*, 234 F.3d at 156.  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Oddi*, 234 F.3d at 158 ("Noettl's *ipse dixit* does not withstand *Daubert*'s scrutiny.").

<u>ARGUMENT</u>

## I.     Rule's Opinions Are Irrelevant to Any Fraudulent Transfer Analysis.

### A.     Rule's Opinions Regarding the Solvency of "Consolidated EFH" Are Irrelevant to EFH's Solvency for Fraudulent Transfer Purposes.

Rule's opinion regarding the solvency of "Consolidated EFH" from December 2008 through December 2012 is misleading.  In calculating solvency, Rule conducts a purported balance sheet analysis in which he simply consolidates and subtracts the debt of both the E Side ***and*** the T Side from EFH's enterprise value.  (Rule Rep. at 13-15; Rule Tr. 62:22-63:10; 128:3-6.)  As a result, to the extent that TCEH was insolvent, this methodology treats TCEH as a ***liability*** of EFH.  Rule points to no basis for this consolidation.

To the contrary, Rule admits that if EFH did not guarantee TCEH debt, the equity value of TCEH in EFH's hands may not go below zero in a balance sheet analysis.  (Rule Tr. 67:24-68:14.) In fact, as is well known, EFH ***does not*** guarantee TCEH's debt and ***is not*** otherwise responsible for TCEH's liabilities.  (*See* <u>Ex. C</u>, Ying Rebuttal Report, dated Oct. 27, 2015 ("<u>Ying Reb. Rep.</u>") at 3 ("Because EFH and EFIH are not guarantors of T-side debt obligations, including the negative equity value on the T-side in a Consolidated EFH calculation, as Rule does, is not a correct measure of EFH solvency"); <u>Ex. D</u>, Transcript of Deposition of David Ying, dated Oct. 19, 2015 at 128:4-12.)  It appears that in rendering his "Consolidated EFH" opinion, Rule simply did not know this basic fact. (Rule Tr. 65:23-66:2; 66:14-25.)  As a result, Rule's "Consolidated EFH" opinion fails to apply what he himself admits is the appropriate methodology to determine EFH's balance sheet solvency.

For the purposes of a fraudulent transfer analysis, "the entity that made the transfer would be the focus of the [solvency] analysis."  (Rule Tr. 63:17-24.)  *See also* 11 U.S.C. § 548.  *Cf. In re Am. Classic Voyages Co.*, 367 B.R. 500, 503 n.5 (Bankr. D. Del. 2007) *aff'd*, 384 B.R. 62 (D. Del. 2008) ("The Court would normally be required to first identify who the transferor is, since it

is that entity's solvency which is relevant to the preference analysis."). Rule's opinions as to the solvency of "Consolidated EFH" have nothing to do with the question of whether EFH, the legal entity, was solvent at any particular time. Rule himself admits that if EFH did not guarantee TCEH's debt, only his E-Side analysis is relevant. (*See* Rule Tr. 146:12-16, 22-25 (in order to determine the solvency of EFH, the Court "would look at, and should still look at, [] the E-Side [solvency] analysis" that Rule performed).)

"Expert evidence can be both powerful and quite misleading," and, to be admissible, it must help the trier of fact "to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591, 595. Rule's opinions regarding the solvency of "Consolidated EFH" do not meet this standard and should be excluded as irrelevant.

### B.    Rule Has No Opinion as to EFH's Solvency as of the Date of Any Transfer.

Under 11 U.S.C. § 548(a)(1)(B)(ii)(I), a transfer made by a debtor is avoidable if the debtor "was insolvent ***on the date that such transfer was made*** or such obligation was incurred, or became insolvent as a result of such transfer or obligation." 11 U.S.C. § 548 (emphasis added). Rule conducts no such tailored analyses, because he has not assessed EFH's solvency as of the date of any particular transfer. (Rule Tr. 84:23-85:10.)

Instead, he conducts a balance sheet analysis as of year-end 2008 through 2012. For the days in between, and for any date between 2012 and the Petition Date, Rule can only guess that "Consolidated EFH" and the E Side were insolvent. (*See* Rule Rep. at 13-23, 14 Fig. 2, 21 Fig. 5.) Thus, any opinion regarding "Consolidated EFH's" and the E Side's solvency as of every other date in between—i.e., the dates of the transfers at issue in the EFH Committee's Objection—should be excluded.

II.    **Rule's Reliance on Valuation Materials Cherry-Picked by His Counsel Renders His Analysis Incomplete and Inaccurate.**

      A.    **Rule Has Not Conducted His Own Independent Valuation or Solvency Analysis.**

In rendering his solvency opinions, Rule did not conduct his own independent valuation of EFH. (Rule Tr. 20:6-21.) Instead, Rule relied on his team and counsel to provide him with valuation materials prepared by the company and its equity sponsors. (*See* Rule Tr. 45:10-24.) The only materials counsel provided are those listed in Rule's reliance materials and certain documents from the EFH data room relating to SG&A allocations. (Rule Tr. 10:2-11; 46:11-21.) In the end, the valuation inputs for Rule's solvency opinions derive exclusively from selected Duff & Phelps valuation reports, which Rule admits were not prepared to assess solvency. (Rule Rep. at 9; *see also id.* at 10.) Rule admits that, without analyzing the underlying projections supporting the Duff & Phelps valuations, he had no basis to perform his own valuation. (*See* Rule Tr. 47:12-48:2.)

Rule's assessment of post-2012 solvency fares even worse, as he had no valuation materials to rely on. (Rule Rep. at 18.) Rule admits that his rough guesswork regarding post-December 2012 solvency does not pass muster: "Given the limited available information and in light of the purposes of the present analyses, I have not performed a full valuation and solvency analysis of Consolidated EFH Corp. after December 2012." (Rule Rep. at 18; *see also id* at 22-23 (same language for E-Side analysis)). What little information Rule ***does*** consider in connection with his post-December 2012 solvency opinions is based on cherry-picked materials and fabricated assumptions, as discussed in **Section IV**, below. An expert opinion "must be based on the methods and procedures of science rather than subjective belief or speculation." *In re TMI Litig.*, 193 F.3d at 670. Rule's opinions regarding post-December 2012 fail this test.

**B.      Rule Did Not Consider Materials That Contradict His Opinions, Because His Counsel Did Not Provide Them.**

Worse, although Rule asked his counsel for all valuations performed by the company and its equity sponsors, (Rule Tr. 47:8-11), it appears that his counsel withheld materials contradicting his opinion.  For instance, when confronted with a December 2012 valuation performed by Duff & Phelps reflecting a positive net equity value of $800 million for EFH, Rule testified that he had never seen it before.  (*See* Rule Tr. 101:19-102:3; 104:3-8).    Rule candidly acknowledged that the document his lawyers withheld "would be something that I would take into consideration to evaluate" in rendering the opinions in his report.  (Rule Tr. 105:7-21.)

Similarly, Rule admits that he did not review any quarterly valuation reports prepared by KKR or TPG in the course of rendering the opinions in his report, and that such reports would be "something I would want to consider."  (Rule Tr. 136:20-137:7.)  Neither did Rule speak to any employee of EFH or perform an independent valuation analysis.  (*See* Rule Tr. 102:9-103:9; 104:3-8; 135:18-21 ("I haven't talked to anybody at EFH, no."); Rule Rep. at 18, 22-23.)

Where an expert "picks and chooses" materials advantageous only to his side's claims, the expert's opinions are not based on "good grounds" and are inadmissible under Daubert.  *See, e.g.*, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 755-56, 76l-62 (3rd Cir. 1994) (expert's reliance on only plaintiff-slanted, self-reported symptoms without consideration of alternative cause equates to an "unreliable source of information").  Rule has engaged in precisely this kind of biased and flawed analysis to support all of his solvency opinions, which should be excluded.

**III.      Rule's Solvency Opinions Regarding EFH and the E Side Are Biased and Methodologically Flawed.**

Rule's EFH and E-Side solvency analysis concerns treat EFH debt held by EFIH improperly.  Even under Rule's own analysis, EFIH was at all times a solvent, wholly owned subsidiary of EFH.  (*See* Rule Rep. at 21, Fig. 5; Rule Tr. 116:4-6.)  As such, EFH had unfettered authority to require

EFIH to dividend any such debt to EFH for cancellation.  (*See* Rule Tr. 116:7-14 (conceding there were no restrictions on EFH's ability to force EFIH to dividend the EFH debt held by EFIH for cancellation).)  Indeed, EFIH dividended more than $6 billion of EFH debt to EFH in 2013, and that debt was subsequently cancelled.  (Rule Tr. 122:6-122:22.)

Accordingly, EFH debt held by EFIH should have no impact on EFH's or the E Side's solvency, and the proper way to treat it in a balance sheet analysis is to ignore it.  (Ying Reb. Rep. at 4 ("Because EFIH is solvent without attributing any value to EFH debt held by EFIH, it is not appropriate to include that debt as an asset of EFIH and a liability of EFH").)  But that is not how Rule treated it.  In calculating the purported insolvency of the E Side (i.e., EFH and EFIH), Rule accounts for EFH debt held at the EFIH level as an EFIH asset at ***fair market value***, but an EFH liability at ***par value***.  (*See* Rule Tr. 107:5-15.)  As a result of this treatment, because EFH's debt was trading below par at all relevant times, EFIH's holdings of EFH debt substantially decrease the equity value of the entire E Side, including EFH, under Rule's calculations. (*See* Rule Tr. 114:9-25; 116:25-117:10 (agreeing that his treatment of EFH debt held by EFIH impaired the equity value of EFH by approximately $1 billion).)

Rule's flawed treatment of intercompany debt distorts his calculation of EFH and E-Side solvency from December 2008 through December 2012, and should be excluded.

## IV.    Rule Inappropriately Accounts for Speculative Litigation Outcomes Regarding Makewhole Claims and Intercompany Claims in His Post-December 2012 E-Side Solvency Analysis.

Rule's opinions regarding the post-December 2012 solvency of EFH and the E-Side rest on assumptions regarding certain makewhole claims and the claims resolved in the Settlement Agreement.  (Rule Rep. at 22.)  These assumptions were provided by Rule's lawyers and are false.

As Rule testified, the standard for including contingent liabilities in a solvency analysis is that you can "reasonably estimate their probability of occurrence such that it's reasonable to include a

solvency analysis." (Rule Tr. 155:1-156:3.) Yet Rule admits he has no knowledge of how the makewhole claims were allegedly triggered on E-Side debt, whether they would be triggered by a change in control, their magnitude, or their likelihood of success. (*See* Rule Tr. 156:4-8; 156:20-25; 157:9-158:9.)

Likewise, Rule speculates that accounting for the TCEH settlement claim reflected in the Settlement Agreement would affect E-Side solvency. (Rule Rep. at 22.) But Rule admittedly has performed no analysis regarding which of the intercompany claims underlying the TCEH settlement claim might have existed in the 2008 to 2012 period. (*See* Rule Tr. 159:4-11; 159:16-160:4.) Nor has he attempted to quantify the effect of the TCEH settlement claim on E-Side solvency. (*Id.*)

Moreover, in assessing post-2012 solvency, Rule overlooks key facts that would tend to indicate solvency under his analysis, such as the dividend and cancellation of over $6 billion of EFH debt held by EFIH, which Rule knew nothing about before rendering his opinions, (*see* Rule Tr. 120:8-11), and which would have a material impact on Rule's analysis, (*see* Rule Tr. 120:12-21; 122:6-22; 123:12-17).

Rule's post-December 2012 solvency opinions are therefore unreliable and should be excluded.

## V.    Rule Improperly Opines on the Debtors' *Scienter* with respect to the Pre-Petition Solvency of EFH.

Rule's characterizations of the Debtors' and the equity sponsors' *scienter* related to their solvency as of certain dates in the December 2008 through December 2012 period are inadmissible legal opinions. Specifically, Rule concludes, (1) "Similarly, in October 2011, in a board of directors' presentation, EFH Corp. management recognized that Consolidated EFH Corp. was insolvent," (Rule Rep. at 16), (2) "[certain] statements by EFH Corp. management and its equity sponsors demonstrate that they understood Consolidated EFH Corp. was insolvent

from early 2009 through early 2012 which further confirms my analysis in Figure 2," (*id.* at 17), and (3) "This is consistent with the 2011 analysis of EFH management, which recognized that Consolidated EFH Corp. would remain insolvent through at least 2017," (*id.* at 19).

This district has held that "[n]either expert testimony on the legal standards applicable to the case, nor testimony on factual matters involving common sense, assists the trier of fact." *Crawford*, 2013 WL 6504361, at *2 (D. Del. Dec. 9, 2013) (excluding expert report that "constitutes an impermissible legal conclusion because retaliation is a legal concept, and because [the expert] reaches a conclusion as to whether [plaintiff's] subjective belief about the legal concept was reasonable"). Opinions regarding the Debtors' and equity sponsors' prepetition state of mind are not helpful to a fact-finder and are not the proper subject of expert testimony. Even if they were, Rule is not qualified to opine on the Debtors' mental state—he has not interviewed any of the Debtors' representatives, (Rule Tr. 135:18-21), and, as discussed in **Section II** above, his opinions are not based on objective, reliable information and methodology. Accordingly, Rule's characterizations of the Debtors' state of mind regarding the prepetition solvency of EFH should be excluded.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request entry of an order precluding the EFH Committee from offering any of the solvency opinions expressed on pages 5 through 23 of the expert report of Mark Rule, or any testimony related to those opinions.

*[Remainder of page intentionally left blank.]*

Dated: October 28, 2015
      Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession