# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Bankruptcy Case No. 14-10979 (CSS) (Jointly Administered) |
| *Debtors.* | ) ) ) | **Re: D.I. 6742** |

## DEBTORS' MEMORANDUM IN SUPPORT OF ITS MOTION *IN LIMINE* TO LIMIT THE EXPERT REPORT AND TESTIMONY OF MICHAEL HENKIN

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# <u>TABLE OF CONTENTS</u>

Page(s)

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 3

LEGAL STANDARD............................................................................................... 4

ARGUMENT .......................................................................................................... 6

I.      Henkin's "Reasonable Assurance" Opinion Should Be Excluded As An
Inadmissible And Unhelpful Attempt To Summarize The Factual Record....................... 6

II.     Henkin's Opinion On The Implied Value Of TCEH Should Be Excluded As
Unreliable And Irrelevant Because He Uses The Wrong Valuation Date......................... 9

III.    Henkin's Opinion That The Merger Agreement Is Akin To An "Option" Should
Be Excluded Because Inaccurately Labeling Contractual Terms Does Not Assist
The Court. ................................................................................................... 11

IV.    Henkin's Opinion On The Plan's Atypical Remedies Should Be Excluded
Because The Comparison Is Irrelevant And Will Not Assist The Court.......................... 12

CONCLUSION...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Ammons v. Aramark Uniform Servs., Inc.,*
  368 F.3d 809 (7th Cir. 2004) ................................................................. 6

*Calhoun v. Yamaha Motor Corp.,*
  350 F.3d 316 (3d Cir. 2003) ................................................................. 6

*Cantor v. Perelman,*
  No. CIVA 97-586 KAJ, 2006 WL 3462596 (D. Del. Nov. 30, 2006) ....................................... 4

*Crawford v. George & Lynch, Inc.,*
  No. CV 10-949-GMS-SRF, 2013 WL 6504361 (D. Del. Dec. 9, 2013) ........................ 5, 11, 12

*Daubert v. Merrell Dow Pharms., Inc.*
  509 U.S. 579 (1993) ................................................................. 4, 5

*General Elec. Co. v. Joiner,*
  522 U.S. 136 (1997) ................................................................. 6

*In re Nellson Nutraceutical, Inc.,*
  356 B.R. 364 (Bankr. D. Del. 2006) ................................................................. 9, 10

*In re TMI Litig.,*
  193 F.3d 613 (3d Cir. 1999) ................................................................. 5, 6

*In re W.R. Grace & Co.,*
  355 B.R. 462 (Bankr. D. Del. 2006) ................................................................. 4, 13

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999) ................................................................. 4

*Oddi v. Ford Motor Co.,*
  234 F.3d 136 (3d Cir. 2000) ................................................................. 4, 5, 6

*Pineda v. Ford Motor Co.,*
  520 F.3d 237 (3d Cir. 2008) ................................................................. 5, 7

*Reedy v. CSX Transp., Inc.,*
  No. CIV.A. 06-758, 2007 WL 1469047 (W.D. Pa. May 18, 2007) ................................ 5, 11, 12

*S.E.C. v. Lipson,*
  46 F. Supp. 2d 758 (N.D. Ill. 1998) ................................................................. 6, 8

*Schneider v. Fried*,
   320 F.3d 396 (3d Cir. 2003) ........................................................................................ 5, 12, 14

*Scully v. US WATS, Inc.*,
   238 F.3d 497 (3d Cir. 2001) ................................................................................................... 11

*Simpson v. Betteroads Asphalt Corp.*,
   No. CIVIL 2011-056, 2013 WL 2255472 (D.V.I. May 18, 2013) ............................................ 8

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ................................................................................................................ 4

*ZF Meritor, LLC v. Eaton Corp.*,
   696 F.3d 254 (3d Cir. 2012) ............................................................................................ 5, 10

**Statutes**

11 U.S.C. § 1129(a)(11) ................................................................................................................ 13

**Rules**

Fed. R. Evid. 702 ................................................................................................................ 4, 5, 9, 12

## PRELIMINARY STATEMENT[2]

1.      The EFH Committee has retained Michael Henkin to support their opposition to the Plan and the proposed Settlement Agreement.  If permitted to testify, Henkin would function as little more than a highly-paid lay witness, offering opinions that stretch far beyond his areas of expertise, require no special expertise, or add no value to the contested issues before the Court.

2.      None of Henkin's opinions will help the Court evaluate the EFH Committee's objections, including whether the Plan is feasible.  Henkin has not performed any quantitative or qualitative assessment of whether the Debtors and purchasers will meet the closing conditions or whether the merger transaction will close.  Henkin has not calculated the likelihood of the Debtors achieving the necessary regulatory approvals and tax rulings by, for example, comparing them to similar applications in the industry, and he has done nothing to evaluate the reasonableness of the Debtors' approach to meet the milestones in the Merger Agreement.  Nor does Henkin offer any opinion that the Board of Directors failed to exercise its business judgment in approving the Plan and associated Merger Agreement.

3.      Four of Henkin's opinions best exemplify these shortcomings and should be excluded:

4.      **First**, Henkin opines that there is "no reasonable assurance" that the Merger Agreement will close.  The basis for his opinion consists of nothing more than a compilation of undisputed closing conditions in the Merger Agreement and Plan Support Agreement, and Henkin's subjective belief that those conditions are "significant."  Henkin performs no analysis and can offer no opinion on the likelihood that any of the "significant" conditions will or will not be satisfied.  To the contrary, Henkin acknowledged that his only contribution is "just compiling them and

---

[2] Capitalized terms used, but not otherwise defined in this Preliminary Statement, shall be ascribed the same meanings given to them elsewhere in this Memorandum.

highlighting them to the court." Henkin's service as a "human highlighter" requires no expertise, and would do nothing to assist the Court in understanding the facts.

5.        **Second**, Henkin opines that EFH's net operating losses ("<u>NOLs</u>") are sufficient to offset any taxes due upon a taxable disposition of Texas Competitive Electric Holdings Company LLC ("<u>TCEH</u>"), thus reducing the benefit of a tax-free spinoff of TCEH.  But Henkin's opinion is premised upon the implied value of TCEH, which he calculated through a "simplistic" approach based on trading values of certain TCEH debt issuances as of *October 8, 2015*.  As Henkin candidly concedes, that is the wrong date.  For purposes of assessing the relative benefit of a tax-free spin, what matters is the value of TCEH as of the date of emergence, not the value nearly a month ago. Henkin's valuation of TCEH is therefore both unreliable and irrelevant.

6.        **Third**, Henkin opines that the purchasers' rights under the Merger Agreement are akin to an "option" because it provides "the Purchasers have the **exclusive right**, but not the obligation, to invest and complete the transaction."  Yet, as Henkin has conceded, the fiduciary out provision in the Merger Agreement renders the purchasers' right **non-exclusive**:  they must compete with any superior offer submitted to the Debtors.  So the Merger Agreement does not fit Henkin's own definition of "option."  Henkin's opinion is nothing more than an incorrect characterization of contractual terms that the Court can read and assess on its own.

7.        **Fourth**, Henkin opines that the lack of traditional remedies in the Merger Agreement is atypical compared to other large M&A deals.  The lack of traditional remedies is not a contested issue in the case, and Henkin's opinion is therefore irrelevant.  The question for the Court is whether the Plan is feasible.  Henkin, who disregards the Plan's unique disarmament and drag approach because it does not fall neatly into his categorization of traditional remedies, cannot answer that

question because he has not performed any expert analysis on the probability that the transaction will close.

8.      For all the reasons summarized above and described in more detail below, the Court should exclude the report and anticipated testimony of Henkin on these four opinions.

## BACKGROUND

9.      The official committee of unsecured creditors (the "EFH Committee") of Energy Future Holdings Corp. ("EFH"), Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc. have objected to (a) the motion EFH and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order approving the amended and restated settlement agreement ("Settlement Agreement"), dated as of September 10, 2015, and (b) confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6122] (the "Plan").  The EFH Committee's Trial Brief and Omnibus Objection was filed on October 23, 2015 [D.I. 6627] (the "EFH Committee Objection").

10.     On October 12, 2015, the EFH Committee produced to the Debtors the expert report of Michael Henkin.  The Debtors and others deposed Henkin on October 21, 2015.  The EFH Committee has relied on Henkin's expert opinions to support the EFH Committee Objection.

11.     Henkin is a Senior Managing Director and Co-Head of the Restructuring Advisory Group at Guggenheim Securities, LLC.  (Expert Report of Michael Henkin, dated October 12, 2015 ("Henkin Rep.") (Ex. A) ¶ 1.)  Henkin holds himself out as an expert in general investment banking and specifically in financings and sale processes.  (Excerpts of Transcript of the Deposition of Michael Henkin ("Henkin Tr.") (Ex. B) at 90:15-20.)

12.     The Debtors move to exclude four of Henkin's expert opinions as inadmissible:

1)  "There are no reasonable assurances that the Merger will close."  (Henkin Rep. ¶ 14; *see also* Henkin Tr. at 85:24 - 86:5.)

2)  "Based on the implied market value of TCEH [as of October 8, 2015], there will be no tax liability to EFH upon a disposition of TCEH in a transaction utilizing EFH's NOLs."  (Henkin Rep. ¶ 16; Henkin Tr. at 256:14-16.)

3)  "The agreement by the Purchasers to buy Oncor as a REIT is akin to an option."  (Henkin Rep. ¶ 12.)

4)  "The lack of remedies in the Merger and Purchase Agreement is inconsistent with both large utility M&A transactions and large bankruptcy sale transactions."  (*Id.* ¶ 11.)

13.     As described fully below, each of these four opinions suffers from fundamental flaws rendering them inadmissible.

## LEGAL STANDARD

14.     The test for admissibility of expert testimony under Rule 702 is an "exacting" one. *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).   The Supreme Court has made clear that under Rule 702, courts must serve as "gatekeep[ers]" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" before admitting or considering the testimony for any purpose.  *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 589, 597 (1993); *see also Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148-51 (1999).  The proponent of the expert testimony bears the burden of showing by a preponderance of the evidence that proffered expert testimony is both relevant and reliable.  *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000); *In re W.R. Grace & Co.*, 355 B.R. 462, 471-72 (Bankr. D. Del. 2006).  Further, the Court's role as "gatekeeper" is no less important in a bench trial setting.  *See Cantor v. Perelman*, No. CIVA 97-586 KAJ, 2006 WL 3462596, at *3 (D. Del. Nov. 30, 2006) (granting motion to exclude in bench trial).

15.     "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific,

technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008). The Third Circuit has provided additional instruction on the Court's gatekeeping function, requiring it to enforce "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).

16.    To be reliable, an expert's opinion must have "good grounds" and cannot be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). "An expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 294 (3d Cir. 2012) (quotations and citation omitted). Moreover, the expert's opinions must be "the product of reliable principles and methods" that are "reliably" applied "to the facts of the case." Fed. R. Evid. 702 & Advisory Committee Note (2000); *Daubert*, 509 U.S. at 590; *Oddi*, 234 F.3d at 156.

17.    Rule 702 requires that the expert testimony "fit the issues in the case." *Schneider*, 320 F.3d at 404. In other words, the expert's testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Id.* The "fit" requirement "goes primarily to relevance," *Daubert*, 509 U.S. at 591, and this district has held that "testimony on factual matters involving common sense" does not assist the trier of fact, *Crawford v. George & Lynch, Inc.*, No. CV 10-949-GMS-SRF, 2013 WL 6504361, at *2 (D. Del. Dec. 9, 2013). Additionally, under *Daubert*, "helpfulness" requires that expert testimony "not be used merely to repeat or summarize" what the Court "independently has the ability to understand." *Reedy v. CSX Transp., Inc.*, No. CIV.A. 06-758, 2007 WL 1469047, at *3 (W.D. Pa. May 18, 2007) (internal quotation marks and citation omitted).

18.    At bottom, an expert's testimony must be more than subjective belief or unsupported speculation.  *See In re TMI Litig.*, 193 F.3d at 670; *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 323 (3d Cir. 2003) (upholding limitation of testimony as the expert "offered no support for his beliefs"); *see also Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 816 (7th Cir. 2004) (upholding exclusion of expert opinion that "was nothing more than speculation").   And the Supreme Court has reasoned that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997); *Oddi*, 234 F.3d at 158 ("Noettl's *ipse dixit* does not withstand *Daubert*'s scrutiny.").

<strong><u>ARGUMENT</u></strong>

**I.    Henkin's "Reasonable Assurance" Opinion Should Be Excluded As An Inadmissible And Unhelpful Attempt To Summarize The Factual Record.**

19.    Henkin's opinion that "[t]here are no reasonable assurances that the Merger will close" should be excluded because Henkin's methodology consists of nothing more than highlighting contract terms that the Court can read on its own.  (Henkin Rep. ¶ 14.)  Henkin does not provide ***any*** analysis or evaluation of the likelihood that any condition to closing will occur, let alone any reliable analysis.  *See S.E.C. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand.").

20.    There is no definition of "reasonable assurance" in Henkin's expert report. (Henkin Tr. at 232:25 - 234:5.)  Asked for a definition at his deposition, Henkin testified that reasonable assurance means "a reasonable likelihood that the merger will close."  (*Id*. at 225:17-21.)  He also testified that this is a test based on what Henkin "think[s] the buyer is going to do." (*Id*. at 225:22 - 226:9.)  Henkin was not aware of any industry treatise or peer-reviewed approach

6

to evaluating whether there is a "reasonable assurance" that a merger will close.  (*Id*. at 232:6-8, 234:3-7.)

21.    Nevertheless, Henkin opined that the Merger Agreement is not reasonably likely to close due to the "conditionality inherent in the merger and purchase agreement," which he describes as "significant."  (*Id*. at 224:21-22, 254:22 - 255:2.)  The Debtors have never denied that the Merger Agreement is subject to certain conditions.  To the contrary, as Henkin admits, **all** of the conditions that he identified are plain terms of the Merger Agreement or Plan Support Agreement.  All Henkin does is "highlight" these contractual conditions for the Court:

> Q.    So, to be fair, all the conditions that you're identifying, right, are terms in the agreement, right?
>
> A.    Yes.
>
> Q.    They're evidenced clearly in the agreement?
>
> A.    Yes, some of them are in the merger and purchase agreement, some of them are in the PSA, but they're in the combination of agreements that form the basis of the purchase of Oncor.
>
> Q.    Right.  So all of the conditions that you identify that comprise the conditionality on which you are rendering your opinion are plainly stated in the merger agreement or the plan support agreement, right?
>
> A.    I think that's right, yes.
>
> Q.    ***And you're just compiling them and highlighting them to the court?***
>
> A.    ***Yes***, that there is significant number of conditions and the deal is highly conditional.  I think I quote the debtors in some of the report as well that the debtors say it's highly conditional, too.

(*Id*. at 257:2-25 (emphasis added).)[3]

22.    Because of regulatory requirements for the Debtors' businesses, there would be conditionality to **any** deal involving Oncor.  Henkin's opinion that such regulatory requirements and other conditions exist does not require any expertise.  *See Pineda*, 520 F.3d at 244 ("[T]he

---

[3] Henkin's attempt to sweep in the Debtors' board presentations on the conditionality point does nothing to salvage his opinion.  Henkin admits that the board presentations were only used as "reinforcement of my observation" that "there is a lot of conditionality in the deal."  (*Id*. at 258:12-19.)

expert must testify about matters requiring scientific, technical or specialized knowledge."). The Court does not need Henkin's help "compiling" and "highlighting" basic terms in the key contracts in this case, and his testimony should be excluded on that basis. *See Simpson v. Betteroads Asphalt Corp.*, No. CIVIL 2011-056, 2013 WL 2255472, at *2 (D.V.I. May 18, 2013) (excluding expert's opinion on "Requirements of the Contract," which is only "summarizing and excerpting contractual provisions," because a summary of "'facts' of the case does not require scientific, technical, or other specialized knowledge.'" (citation omitted)).

23.     Despite characterizing the conditions of the deal as "significant," Henkin did nothing to evaluate the likelihood that any of the identified conditions would be satisfied. In particular:

- Henkin has no opinion on the Debtors obtaining the necessary regulatory approvals (Henkin Tr. at 255:2 - 256:8);[4]

- Henkin has no opinion on the likelihood that the debtors will obtain necessary tax rulings (*id*. at 256:9-16);

- Henkin performed no analysis on the likelihood that the debtors will obtain the necessary make-whole rulings (*id*. at 256:17-21); and

- Henkin has no opinion on whether the Debtors will achieve the necessary milestones in the Merger Agreement in time, (*id*. at 256:22-25).

24.     At bottom, Henkin's opinion that there is "no reasonable assurance" that the Merger Agreement will close is merely attorney argument disguised as expert testimony, and it should be excluded. *See Lipson*, 46 F. Supp. 2d at 763; *Simpson*, 2013 WL 2255472, at *2.

---

[4] For good measure, Henkin testified that he is not providing an opinion on the likelihood of the Debtors receiving an acceptable PLR ruling form the IRS (Henkin Tr. at 97:24 - 98:4), the likelihood the Debtors will receive an acceptable change of control ruling from the Public Utility Commission of Texas (*id*. at 98:5-9), or the likelihood that the Debtors will receive a ruling approving the chain of control from the Nuclear Regulatory Commission (*id*. at 98:10-20). To the extent that changes in market conditions could affect conditionality, Henkin admitted that he has done no analysis on whether the "financial condition of Oncor could change," whether "the economic conditions in Texas could change," or whether the overall United States economy could change between signing and closing the deal. (*Id*. at 252:11 - 254:17.)

## II. Henkin's Opinion On The Implied Value Of TCEH Should Be Excluded As Unreliable And Irrelevant Because He Uses The Wrong Valuation Date.

25. Henkin's next opinion is that "[b]ased on the implied market value of TCEH [as of October 8, 2015], there will be no tax liability to EFH upon a disposition of TCEH in a transaction utilizing EFH's NOLs." (Henkin Rep. ¶ 16; Henkin Tr. at 256:14-16.) The EFH Committee relies on this opinion to undercut the proposed Settlement Agreement. (EFH Committee Objection at 36-38.) But Henkin uses an admittedly "simplistic" valuation method and the wrong date for the valuation. This opinion should be excluded because it is speculative, unreliable, and will not assist the Court. *See In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 373 (Bankr. D. Del. 2006) (Sontchi, J.) (expert's opinion is inadmissible and not relevant if it is "fundamentally unsupported" because it "relies on altered facts and speculation, or fails to consider relevant facts in reaching a conclusion").

26. A foundation of this opinion was Henkin's calculation of the implied market value of TCEH at $9.8 billion as of October 8, 2015. (Henkin Tr. at 259:5-16, 206:15-18.) Far from a formal valuation report, Henkin's analysis, based on the trading value of certain debt securities, is admittedly a "fairly simplistic" method. (*Id*. at 272:1-5.) Henkin even referred to this as a "representative number" rather than an actual valuation. (*Id*. at 272:2-5.) This back-of-the-envelope approach to valuation is problematic because it ignores confounding issues that may affect the securities, such as intercreditor disputes or a thinly traded market. Henkin did not attempt to perform a more rigorous discounted cash flow or comparable company valuation. This leaves his "simplistic" valuation as insufficiently reliable to be helpful to the Court. *See* Fed. R. Evid. 702 & Advisory Committee Note (2000) (expert's opinion must be "the product of reliable principles and methods").

27.     Even if the Court were to accept his "simplistic" valuation, Henkin's entire opinion is irrelevant and inadmissible because he applies the wrong date to his valuation.  *See In re Nellson Nutraceutical, Inc.*, 356 B.R. at 373.  As an initial point, Henkin has no formal training in tax, nor has he ever been accepted as an expert in tax.  (Henkin Tr. at 98:21 - 99:1.)  And, as Henkin admits, the relevant date for determining distributions under a plan, whether it involves a taxable sale or tax-free spin of TCEH, is the date of emergence.  (*Id*. at 261:21-24 ("[Q.] The relevant date for determining distributions under the plan is the date of emergence, correct?  A. Correct."); *see also id*. at 268:6-10.)  As Henkin agreed, the date of EFH's emergence is currently unknown— although it is probably six to nine months in the future.  (*Id*. at 261:25 - 262:7.)  In the prior six to nine months, as Henkin admitted, TCEH has had an implied value swing of almost $5 billion.  (*Id*. at 262:12-15.)

28.     Henkin makes no attempt to predict TCEH's value as of the date of emergence.  Indeed, he readily admits that "it's very difficult to predict the future value of a company."  (*Id*. at 260:23 - 261:4.)  He further testified that "I don't have a good prediction as to the future value of the TCEH securities"—which are the basis of his implied valuation.  (*Id*. at 260:15-22.)

29.     Implicit in Henkin's analysis is the assumption that the value of TCEH on October 8, 2015 is a suitable proxy for the value of TCEH on the date of emergence.  Yet Henkin has done nothing to support this assumption, leaving the opinion speculative and inadmissible.  *See ZF Meritor*, 696 F.3d at 294 ("An expert's opinion should be excluded when it is based on assumptions which are speculative and not supported by the record." (quotations and citation omitted)).

30.     Henkin's simplistic valuation as of October 8, 2015 offers nothing to this Court.  Any assumption that this value would be indicative of the value of TCEH on the date of emergence would be overly speculative.  *See id.*; *see also Scully v. US WATS, Inc.*, 238 F.3d 497, 513 (3d Cir. 2001)

("[V]agaries of the stock market render [future] valuation of the security interest more speculative."). This opinion should be excluded.

### III.    Henkin's Opinion That The Merger Agreement Is Akin To An "Option" Should Be Excluded Because Inaccurately Labeling Contractual Terms Does Not Assist The Court.

31.    Henkin's next opinion is that "[t]he agreement by the Purchasers to buy Oncor as a REIT is akin to an option." (Henkin Rep. ¶ 12.)  The EFH Committee relies on this opinion to critique the feasibility of the Plan.  (EFH Committee Objection, at 105.)  Yet the Merger Agreement does not fit Henkin's own definition of an "option," and this opinion simply attaches a label to the terms of the Merger Agreement.  Therefore, this opinion should be excluded because it will not assist the Court.  *See Reedy*, 2007 WL 1469047, at *3 ("Expert testimony may not be used merely to repeat or summarize what the jury independently has the ability to understand." (internal marks omitted)); s*ee Crawford v. George & Lynch, Inc.*, No. CV 10-949-GMS-SRF, 2013 WL 6504361, at *2 (D. Del. Dec. 9, 2013) ("testimony on factual matters involving common sense" does not assist the trier of fact).

32.    Henkin's opinion is that the Merger Agreement "provides the Purchasers with a 'real' option in which the Purchasers have the ***exclusive right***, but not the obligation, to invest and complete the transaction."  (Henkin Rep. ¶ 50 (emphasis added); *see also* Henkin Tr. at 172:19 - 173:4.)  Henkin also compares it to an American-style call option because "it provides the Purchasers and Plan Sponsors with the ***exclusive right***, but not the obligation, to fund the Merger and 'exercise' the option on or before the First Closing date."  (Henkin Rep. ¶ 49 (emphasis added).)

33.    Henkin's characterization of the purchasers' rights under the Merger Agreement is misleading.   As Henkin acknowledges, the Merger Agreement has a fiduciary out provision. (Henkin Tr. at 174:14 - 175:4; *see also* Merger Agreement §8.3(e) [Ex. B to D.I. 6097-1].)  A fiduciary out provision allows the Debtors to terminate the deal if it would be inconsistent with their

fiduciary duties, potentially including a scenario where a superior third-party offer arrives.    The

purchasers' right is therefore ***not*** exclusive.    And Henkin's own definition of "option" presupposes

exclusivity.[5]    Yet, up until the point of closing, the purchasers are competing with any and all parties

that want to present a superior offer to the Debtors—consistent with the fiduciary out provision.

34.    Accordingly, Henkin's opinion is flawed because the fiduciary out provision belies

his "option" characterization.    Moreover, the Court is capable of reading the Merger Agreement and

understanding the relevant provisions.    There is no need for an expert to explain these provisions to

the Court, especially where the goal is to (inaccurately) label those terms.    *See Reedy*, 2007 WL

1469047, at \*3; *Crawford*, 2013 WL 6504361, at \*2.

**IV.    Henkin's Opinion On The Plan's Atypical Remedies Should Be Excluded Because The Comparison Is Irrelevant And Will Not Assist The Court.**

35.    Finally, Henkin's opinion that the "lack of remedies in the Merger and Purchase

Agreement is inconsistent with both large utility M&A transactions and large bankruptcy sale

transactions" should also be excluded.    (Henkin Rep. ¶ 11.)    Whether the Plan provides for an

atypical approach to remedies—by favoring disarmament and drag over traditional remedies—is not

a disputed issue.    And it does nothing to prove the EFH Committee's objection that the Plan is

infeasible.    Accordingly, the opinion is disconnected from the issues in this matter and will not assist

the Court.    *See Schneider*, 320 F.3d at 404 (Rule 702 requires that the expert testimony must "fit the

issues in the case.").

36.    Henkin's team compiled a list of 36 M&A deals over the prior five years that were

either in the power and utility industry or were Chapter 11 bankruptcy sales.    (Henkin Rep. at 19.)

---

[5] In his deposition, Henkin tried to walk back the exclusivity point by claiming that "real-world options could be non-exclusive."    (Henkin Tr. at 175:16-17.)    But, as cited above, Henkin's report expressly states that an option requires an exclusive right.    At the deposition, Henkin admitted that in the securities world, options are exclusive. (*Id.* at 175:5-11.)    He agreed it is "very rare to have a non-exclusive option because ***it doesn't have that much value***." (*Id.* at 176:2-3 (emphasis added).)    And he could not identify a single example of a non-exclusive option. (*Id.* at 176:20-23.)

He then tallied whether certain traditional remedies existed in the agreements, such as a reverse termination fee, liquidated damages, or specific performance.  The end result is that Henkin opines that the current Plan "contradicts customary practices" as to these traditional, contractual remedies. (*Id.* ¶ 42; *see also* Henkin Tr. at 103:9-12.)

37.     This analysis is flawed and misleading.  Henkin fails to include key variables in his analysis of other M&A transactions, such as whether the buyer is a strategic, financial, or club purchaser, whether there is a fiduciary out provision, the length of the holding period, or whether the specific performance provision is limited or full.  (*See id.* at 113:9-21; 116:15-23, 121:19-25, 129:21 - 130:7, 177:11-21.)  He also downplays that these remedies are only available if all of the closing conditions are otherwise met.  This leaves his analysis shallow because it lacks the granularity needed to truly compare the remedies between deals.  In addition, he also wholly ignores the effect of disarmament and drag on the deal.  (*Id.* at 188:18- 189:4, 198:10-22.)

38.     Regardless, Henkin's analysis is irrelevant.  Even ignoring the methodological flaws in Henkin's comparison analysis, there is no link between the feasibility of a so-called "customary" M&A deal and the current Plan.   To be feasible, the plan must not be "likely to be followed" by an unplanned liquidation or further financial reorganization. 11 U.S.C. § 1129(a)(11); *In re W.R. Grace & Co.*, 475 B.R. 34, 109-10 (D. Del. 2012) (success of the plan need only be "reasonably likely" not "guaranteed").  The size and complexity of the EFH bankruptcy—along with the intricate regulatory requirements—present unique challenges that may not invite a "customary" approach to achieve a feasible deal.  The relevance of Henkin's opinion relies on the implicit assumption that the ***only way*** to achieve a feasible Plan is to follow the approach of other large M&A deals.  That is not the case.

39.     Indeed, Henkin acknowledges that the Debtors chose disarmament and drag over a $200 million reverse termination fee—one of Henkin's "customary" remedies.  (Henkin Tr. at

180:15-22.)  Tellingly, Henkin's limited approach betrays his analysis.  Despite contrasting the Plan to other "customary" deals, Henkin refuses to opine on whether the board of directors used sound business judgment in accepting this deal.  (*Id*. at 162:25 - 163:3 ("I wasn't opining on the business judgment of the board[.]"))  In other words, Henkin calls this an atypical deal but refuses to call it a bad deal.

40.    Henkin's opinion therefore provides a superficial survey of customary remedies in the M&A landscape, but does not tie to the feasibility of this Plan.  The Court should exclude this opinion because it is not relevant and not helpful.  *See Schneider*, 320 F.3d at 404.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request entry of an order precluding the EFH Committee from offering the expert report from, or testimony of, Michael Henkin on the four opinions identified above.

[*Remainder of page intentionally left blank.*]

Dated: October 29, 2015        */s/ Jason M. Madron*
      Wilmington, Delaware    **RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:        (302) 651-7700
Facsimile:        (302) 651-7701
Email:            collins@rlf.com
                 defranceschi@rlf.com
                 madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:        (212) 446-4800
Facsimile:        (212) 446-4900
Email:            edward.sassower@kirkland.com
                 stephen.hessler@kirkland.com
                 brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:        (312) 862-2000
Facsimile:        (312) 862-2200
Email:            james.sprayregen@kirkland.com
                 marc.kieselstein@kirkland.com
                 chad.husnick@kirkland.com
                 steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession