# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 ) ) Case No. 14-10979 (CSS) ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) (Jointly Administered) ) |
| Debtors. | ) **Re: D.I. 6699** ) **Hearing Date: October 30, 2015 at 3:00 p.m.** ) **Objection Deadline: October 30, 2015 at 12:00 p.m.** |

## RESPONSE OF UMB BANK, N.A., TO THE AMENDED NOTICE OF SETTLEMENT OF EFIH PIK NOTE CLAIMS WITH CERTAIN EFIH PIK NOTEHOLDERS

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "PIK Notes" and such holders, the "PIK Noteholders") and the 9.75% Senior Notes due 2019 (the "Unexchanged Senior Notes" and, together with the PIK Notes, the "EFIH Unsecured Notes" and such holders, the "EFIH Unsecured Noteholders"), by and through its undersigned counsel, files this response (the "Response") to the *Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6699] (the "Notice of PPI Claims Settlement," and such settlement, the "PPI Claims Settlement").

## PRELIMINARY STATEMENT[1]

1. The PPI Claims Settlement between the Debtors and the Settling PIK Noteholders does not resolve the Debtors' objection to the PIK Claim for all PIK Noteholders. Instead, the settlement before the Court merely fixes the allowed amount of the Settling PIK Noteholders' prepetition and postpetition claims in exchange for the Settling PIK Noteholders (holding a little more than 50% of the outstanding PIK Notes) directing the Trustee to cease all litigation in

---

[1] Capitalized terms used but not defined in the Preliminary Statement shall have the meaning ascribed to such terms below. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Notice of PPI Claims Settlement or the Plan (as defined herein), as applicable.

connection with Plan confirmation and with seeking the allowance and payment of disputed postpetition interest and Makewhole Claims. The decision of the Debtors and Plan Sponsors to not pursue a class-wide settlement was deliberate. The settlement was negotiated with a subset of PIK Noteholders (which include Avenue, GSO, Hunt and Goldman Sachs – who also are the Plan Sponsors) and did not purport to benefit or bind the entire class of PIK Noteholders. Consequently, if the Trustee accepted the direction to stand down from all ongoing claim allowance and confirmation litigation relating to the Plan, the Debtors and Plan Sponsors would then argue that Non-Settling PIK Noteholders are barred from continuing litigation of the claim allowance and confirmation-related disputes given their failure to make individual appearances in these cases and join in the Trustee's previously-filed pleadings. This would have the effect, among other things, of permitting the Settling PIK Noteholders to receive up to 60% of their postpetition interest at the rate set forth in the Indenture and leave the Non-Settling PIK Noteholders at risk of receiving postpetition interest at the Federal Judgment Rate. This cunning settlement violates fundamental notions of fairness and due process given the stage of these proceedings.

2.   Predictably, the PPI Claims Settlement has exposed the Trustee to threats of legal action from both Settling PIK Noteholders and Non-Settling PIK Noteholders. While the Trustee has no objection to the Settling PIK Noteholders' acceptance of the principal economic terms of the PPI Claims Settlement, by conditioning the entire settlement on the Trustee standing down from defending and prosecuting the pending Trustee Objections, the Trustee is being forced to choose between (i) not complying with the direction from the Settling PIK Noteholders (which might give the Debtors the right to terminate the PPI Claims Settlement) or (ii) complying with the direction to stand down and unduly prejudicing the rights of Non-Settling PIK Noteholders

who would be denied the right to enforce their contractual rights in these cases. The Trustee has advised the Debtors, the Plan Sponsors and representatives of the Settling and Non-Settling PIK Noteholders that it is supportive of a settlement and stands ready to finalize an acceptable form of direction subject to ensuring that the Non-Settling PIK Noteholders are not prejudiced in protecting their legal rights which, to date, have been defended by the Trustee on behalf of all PIK Noteholders.

3.     The Court should not approve the PPI Claims Settlement as currently structured if the Debtors or Plan Sponsors intend to ask this Court to deprive the remaining 49% or so of PIK Noteholders of their right to due process. This form of settlement is improper under the Bankruptcy Code and should not be sanctioned by this Court. Attached as <u>Exhibit A</u> is a revised Proposed Order which the Trustee submits reconciles the competing interests of all parties by (i) allowing the PPI Claims Settlement to be approved for Settling PIK Noteholders, (ii) ensuring that Non-Settling PIK Noteholders are not prejudiced by the Trustee's acceptance of the direction letter, and (iii) conditioning modification of the Trustee's charging lien rights on the Trustee's acceptance of an appropriate form of direction letter, a process which the Trustee believes can be accomplished in short order once the revised Proposed Order is entered.[2]

## RELEVANT BACKGROUND

4.     On July 23, 2015, the Debtors filed the Debtors' Amended Joint Chapter 11 Plan of Reorganization [D.I. 5078] and the Amended Disclosure Statement for the Amended Joint

---

[2] The Trustee takes the position that an appropriate form of direction letter will need to be negotiated between the Trustee and the Settling PIK Noteholders, which should include more substantial indemnification protections than what is currently set forth in the Direction Letter. The Trustee remains ready and willing to commence this process with the Settling PIK Noteholders.

Chapter 11 Plan of Reorganization [D.I. 5080]. Pursuant to the Scheduling Order,[3] the deadline for "Participating Parties"[4] (of which the Trustee is one) to file objections to the Plan was October 23, 2015. *See* Scheduling Order ¶ 2. On October 23, 2015, the Trustee filed its objection to confirmation of the Debtors' Plan raising issues related to, among other things, the so-called "unimpaired" treatment of the EFIH Unsecured Noteholders under the Plan [D.I. 6640] (the "Trustee Plan Objection"). Concurrently therewith, the Trustee filed an objection [D.I. 6641] (the "Trustee Settlement Objection") to the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* (such settlement, the "Settlement Agreement") [D.I. 5249].

5.  In addition, the Trustee has been involved in litigation concerning the PIK Noteholders' entitlement to postpetition interest at the rate provided for under the indenture governing the PIK Notes (the "Indenture") since December 16, 2014, when the EFIH Debtors improperly commenced a declaratory judgment action against the Trustee. Since then, the Trustee has filed numerous pleadings with this Court supporting the PIK Noteholders' right to postposition interest at the contract rate (collectively, the "Trustee PPI Pleadings"). Similarly, the Trustee has represented the PIK Noteholders' entitlement to certain "makewhole" payments and/or "applicable premiums," including the optional redemption premium currently being litigated before the Court (collectively with the Trustee PPI Pleadings, the Trustee Plan Objection and the Trustee Settlement Objection, the "Trustee Objections").

---

[3] "Scheduling Order" is defined as the *Amended Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization* [D.I. 5771], as revised by the *Notice of Revised Agreed Amendments to the Amended Order (A) Revising Certain Hearing Dates and Deadlines, and (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization* [D.I. 6476].

[4] As defined in the Scheduling Order.

4

## I.      DESCRIPTION OF PPI CLAIMS SETTLEMENT

6.      On October 20, 2015, the Ad Hoc Group of TCEH Unsecured Noteholders filed the *Notice of Proposed Settlement of EFIH PIK Note Claims of GSO Capital Partners LP and Avenue Capital Management II, L.P.* [D.I. 6530] (the "Settlement Notice"). The terms of the settlement set forth in the Settlement Notice were not yet approved by the Debtors. On October 27, 2015, the Debtors filed the Notice of PPI Claims Settlement, which included as exhibits (i) that certain stipulation, dated as October 27, 2015 (the "Stipulation"), between the EFIH Debtors and the settling PIK Noteholders (the "Settling PIK Noteholders"), (ii) a proposed *Order Approving Settlement of Certain EFIH PIK Noteholder Claims and Authorizing Debtors to Enter Into and Perform Under Stipulation* (the "Proposed Order"), and (iii) the certain direction letter dated October 27, 2015 to the Trustee (the "Direction Letter").[5]

7.      The PPI Claims Settlement purports to settle the postpetition interest issue with respect to the Settling PIK Noteholders by allowing and paying the claims of the Settling PIK Noteholders' in the following amounts: "(a) the principal amount outstanding of EFIH PIK Notes held by the Settling EFIH PIK Noteholders, plus accrued but unpaid prepetition interest at the non-default contract rate set forth in the Indenture; and (b) 57.5% of accrued but unpaid postpetition interest at the non-default contract rate set forth in the EFIH PIK Notes Indenture through the [Effective Date], but not including for the avoidance of doubt any Makewhole Claims." Stipulation § 2.1. In addition, the Settling PIK Noteholders will receive a "consent fee equal to 2.5% of unpaid postpetition interest rate accrued at the non-default contact rate set forth

---

[5] The Direction Letter purports to direct the Trustee to: (i) execute and become a party to the Plan Support Agreement as contemplated under Section 4.1(g) thereof; (ii) not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement; and (iii) refrain from supporting and not pursue with respect to the [PIK] Notes payment of postpetition interest or any Makewhole Claims, in each case other than as expressly contemplated under the Plan Support Agreement." Direction Letter, 3 (such actions, the "Actions").

in the EFIH PIK Notes Indenture through the [Effective Date]...." (the "Consent Fee"). Stipulation § 2.2. The PPI Claims Settlement only guarantees the Consent Fee to the Initial EFIH PIK Settling Noteholders (as defined in the Stipulation). *See id.*[6] There is no guarantee that any other PIK Noteholders will be invited to participate in the PPI Claims Settlement. In fact, though the PPI Claims Settlement does not expressly prohibit participation of other PIK Noteholders, nothing in the PPI Claims Settlement requires the EFIH Debtors to offer the terms of the PPI Claims Settlement to non-settling PIK Noteholders (the "Non-Settling PIK Noteholders").

## II. THE PPI CLAIMS SETTLEMENT MODIFIES THE ALLOWANCE PROVISIONS IN THE PLAN AND THE CHARGING LIEN

8. Article III.B.21 of the Plan explicitly provides language that the EFIH Unsecured Note Claims are Allowed in an "amount equal to the sum of (i) the principal amount outstanding in the amount of $1,568,249,000; (ii) accrued but unpaid prepetition interest in the amount of $81,115,347; and (iii) accrued postpetition interest on the principal amount outstanding as of the Petition Date at the Federal Judgment Rate or such other rate as determined by Final Order, but not including, for the avoidance of doubt, any Makewhole Claims." *See* Plan Art. III.B.21. By the terms of the Plan, postpetition interest at the contract rate is not Allowed.

9. The PPI Claims Settlement modifies the provision in the Plan allowing the Claim of the PIK Noteholders (the "PIK Claim") by allowing the postpetition interest portion of the the PIK Claim—for the Settling PIK Noteholders only—at 57.5% of accrued but unpaid postpetition interest through the Effective Date at the non-default contract rate set forth in the Indenture. *See* Stipulation § 2.1.

---

[6] The Stipulation notes that the Consent Fee will be available to the Initial EFIH PIK Settling Noteholders and "*in the EFIH Debtors' discretion, with (during the Plan Support Effective Period) the consent of the Required Investor Parties, other Settling EFIH PIK Noteholders.*" Stipulation § 2.2 (emphasis added).

6

10. Furthermore, Section 7.07 of the Indenture provides: "To secure the payment obligations of the Issuer and the Guarantors . . . *the Trustee shall have a Lien* prior to the Notes on all money or property held or collected by the Trustee, except that held in trust to pay principal and interest on particular Notes." Indenture § 7.07 (emphasis) (the "Charging Lien"); *see also* Indenture § 6.12.

11. The PPI Claims Settlement also seeks to modify the Charging Lien such that the Settling PIK Noteholders will not be liable for their pro rata portion of the Charging Lien *after* entry of an order approving the PPI Claims Settlement to the extent the Trustee incurs fees and expenses in connection with seeking the allowance or payment of postpetition interest or any Makewhole Claims. *See* Proposed Order ¶ 4.

## RESPONSE

### I. THE SETTLEMENT IS IMPROPER BECAUSE THE DEBTORS AND PLAN SPONSORS ARE REQUIRING THE TRUSTEE TO COMPLY IMMEDIATELY WITH THE DIRECTION LETTER WHICH IS UNDULY PREJUDICIAL TO NON-SETTLING PIK NOTEHOLDERS AND MAY EXPOSE THE TRUSTEE TO PERSONAL LIABILITY

12. The PPI Claims Settlement and related documents (including the Stipulation and Direction Letter) improperly attempt to preclude the Non-Settling PIK Noteholders from engaging in the Actions—including litigating the Trustee PPI Pleadings and prosecuting the Trustee Plan Objection and the Trustee Settlement Objection. *See supra* note 5. Not only does the Direction Letter purport to require the Trustee to refrain from engaging in the Actions on behalf of the Non-Settling PIK Noteholders, but the Debtors and Plan Sponsors have suggested that the Non-Settling PIK Noteholders may be barred from prosecuting for themselves the Trustee Plan Objection and the Trustee Settlement Objection which the Trustee filed on behalf of each EFIH Unsecured Noteholder. Hr'g Tr. at 73:18-20, 74:7-9, Oct. 28, 2015 ("There is one objection to the treatment of the federal judgment rate. That is by the indenture trustee, not by

any other holder. . . . All we can do and all Your Honor has done with a confirmation and with scheduling steps and keeping a date on track is deal with people who have filed objections."). This posture prejudices the Non-Settling PIK Noteholders who have relied on the Trustee to enforce and defend the legal rights of the PIK Noteholders in these cases.

13. The Court, when asked whether the Non-Settling PIK Noteholders would lose their right to object to the Plan in the event the Trustee followed the Direction Letter, noted that the answer would depend, in part, on the terms of the Indenture. Hr'g Tr. 84:11-17, Oct. 28, 2015. The Court then stated: "Assuming that minority, what are now minority holders are not contractually prevented from objecting and can make a case that they've been relying on instructions being given to the trustee to carry the water, I would be open to an argument that would allow them to file an objection." *See* Hr'g Tr. at 84:11-23, Oct. 28, 2015.

14. At a minimum, if the PPI Claims Settlement is approved, the Trustee submits that there must be some process by which the rights of the Non-Settling PIK Noteholders to object to the Plan and Settlement Agreement and argue for makewhole payments and postpetition interest at the contract rate are preserved. Any other result would be unduly prejudicial to the Non-Settling PIK Noteholders, who may be precluded from objecting to, among other things, the Plan's provision of postpetition interest at the Federal Judgment Rate if the Debtors successfully argue that pospetition interest at the contract rate is barred.

### A. *The Indenture Does Not Preclude the Non-Settling PIK Noteholders from Pursuing the Objections*

15. The Indenture provisions were clearly crafted to protect the rights of all PIK Noteholders to receive payment of principal and interest on the PIK Notes. The "non-impairment" section of the Indenture makes clear that the rights of individual PIK Noteholders to receive, and to bring suit or enforce, payment of principle, interest and premiums under the PIK

8

Notes cannot be impaired without the consent of each individual holder. Section 6.07 of the Indenture provides, in relevant part, as follows:

> [T]he right of any Holder of a Note to receive payment of principal of and premium, if any, and interest (including Additional Interest, if any) on the Note, on or after the respective due dates expressed in the Note . . . or to bring suit for the enforcement of any such payment on or after such respective dates, shall not be impaired or affected without the consent of such Holder.

Indenture § 6.07. The Trustee is aware of no authority under which these rights can be limited or curtailed by the Settling PIK Noteholders. Moreover, this unqualified right of the PIK Noteholders is a recognized exception to the "no action" clause of the Indenture.[7]

16. Furthermore, the Indenture cannot be used by the Settling PIK Noteholders to prejudice the rights of the Non-Settling PIK Noteholders. Section 6.06 of the Indenture states that a PIK Noteholder "may not use this Indenture to prejudice the rights of another Holder of a Note or to obtain a preference or priority over another Holder of a Note." Indenture § 6.06. Moreover, the Trustee is not obligated to comply with a direction that is unduly prejudicial to other PIK Noteholders; specifically, the Trustee "may refuse to follow any direction that conflicts with . . . this Indenture or that the Trustee determines is unduly prejudicial to the rights of any other Holder of a Note . . . ." Indenture § 6.05. Consequently, the applicable Indenture provisions were clearly crafted to protect the rights of all PIK Noteholders to receive payment of principal and interest on the PIK Notes, and no reasonable argument exists that the "no action" clause (or any other provision of the Indenture) precludes the Non-Settling PIK Noteholders from pursuing the Trustee Objections.

---

[7] Section 6.06, the "no action" clause, of the Indenture provides, among other things, that *"[s]ubject to Section 6.07 hereof,* no Holder of a Note may pursue any remedy with respect to this Indenture or the Notes unless such holder provides notice of an event of default to the Trustee, at least 30% of the holders request the Trustee to pursue the remedy and offer security or indemnity to the Trustee, and the Trustee has not complied with such request within 60 days." Indenture § 6.06.

9

### B. *The Non-Settling PIK Noteholders Have Standing Under the Bankruptcy Code to Prosecute the Trustee Objections*

17. Bankruptcy Code section ("Section") 1109(b) provides that a "party in interest, including . . . a creditor . . . or any indenture trustee[] may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). This would be true even if the "no action" clause in the Indenture prevented the Non-Settling PIK Noteholders from pursuing the Trustee Objections (which here, as discussed above, it does not). For example, in *Kurak v. Dura Automotive Systems, Inc. ("In re Dura Automotive Systems, Inc.")*, Judge Carey held that notwithstanding any "no action" clause in an indenture, noteholders had a right to be heard under Section 1109(b) regarding whether their treatment under the debtor's plan of reorganization violated their rights under their indenture. 379 B.R. 257, 264 (Bankr. D. Del. 2007). As such, any Non-Settling PIK Noteholder, as a creditor of the EFIH Debtors, has a clear right to raise, appear, and be heard on any issue in these cases, including at confirmation.

18. In this case, the Debtors and the Plan Sponsors have suggested that the Non-Settling PIK Noteholders may be barred from pursuing the Trustee Plan Objection and the Trustee Settlement Objection, as well as pursuing the Non-Settling PIK Noteholders' right to their Makewhole Claim and postpetition interest at the contract rate in the Trustee PPI Pleadings, since the Non-Settling PIK Noteholders did not file their own pleadings on these issues. However, the Non-Settling PIK Noteholders had no reason to suspect—until the PPI Claims Settlement was proposed—that they might be precluded from relying on the Trustee to prosecute the Trustee Objections that were filed on account of the PIK Claims. The Court can, and should, exercise its equitable powers in this case to permit the Non-Settling PIK Noteholders to pursue the Trustee Objections in the Trustee's stead. In fact, the Scheduling Order provides that the dates set forth therein "are subject to further amendment by the Court upon agreement of the

10

Participating Parties, which shall not be unreasonably withheld, or for good cause shown." Scheduling Order ¶ 7. As discussed below, good cause exists to permit the Non-Settling PIK Noteholders to prosecute the Trustee Objections.

19. In other cases in which the circumstances and equities dictated, courts have permitted creditors to raise "untimely" objections. *See, e.g., In re Goody's Family Clothing, Inc.*, 443 B.R. 5, 15-18 (Bankr. D. Del. 2010) (considering whether a creditor's failure to timely object to a motion to approve cure amounts was due to excusable neglect such that the court could consider the objection); *In re Richard Buick, Inc.*, 126 B.R. 840, 850 (Bankr. E.D. Pa. 1991) (considering, in the court's discretion, creditor's untimely confirmation objection, and ultimately withholding confirmation on the basis of one such objection). The circumstances here also support a finding from this Court that the Non-Settling PIK Noteholders should be permitted to prosecute the Trustee Objections.

20. First, allowing the Non-Settling PIK Noteholders to pursue the Trustee Plan and Settlement Objections will not prejudice the Debtors in any way. Non-Settling PIK Noteholders would simply adopt the objections already set forth in the Trustee Objections, which were filed on time and which the Debtors have been preparing to respond to (or, in the case of the Trustee PPI Pleadings, have already responded to and argued before this Court). Second, for similar reasons, there would be no delay in any judicial proceedings as the Non-Settling PIK Noteholders would be addressing issues that have been previously briefed and would have been addressed during the Confirmation Hearing (or otherwise) if the Trustee had not received and/or followed the Direction Letter.

21. Third, the Non-Settling PIK Noteholders' failure to file their own objection was for reasons *entirely beyond their control*: the Direction Letter, directing the Trustee to sign up to

the PSA and refrain from taking the Actions (including pursuing the Trustee Plan Objection), was not filed until October 27, 2015, five days *after* the Plan objection deadline had passed and well after the postpetition interest issue had been fully briefed. Up until October 27, the Non-Settling PIK Noteholders had no reason to believe that the Trustee could not, and would not, prosecute the Trustee Objections on their behalf.

22. Lastly, the Non-Settling PIK Noteholders have acted in good faith. Prior to the passing of the Plan objection deadline, the Non-Settling PIK Noteholders had no reason to believe that the Trustee could not represent their interests. Accordingly, the Non-Settling PIK Noteholders' reliance on the Trustee to prosecute the Trustee Plan and Settlement Objections does not demonstrate a lack of good faith. Consequently, the Court should permit the Non-Settling PIK Noteholders to argue the same objections raised in the Trustee Objections and to continue to litigate all issues related thereto (with respect to, *i.e.*, Plan confirmation, Settlement Agreement, postpetition interest, and the Makewhole Claim).

23. In light of the circumstances surrounding the Non-Settling PIK Noteholders' "failure" to file their own objections to Plan confirmation, the Settlement Agreement and prosecute the postpetition interest issue, it would be inequitable to deprive the Non-Settling PIK Noteholders of the right to prosecute the Trustee Objections.

## II. THE PPI CLAIMS SETTLEMENT IS NOT BEING MADE AVAILABLE TO ALL EFIH UNSECURED NOTEHOLDERS

24. The decision of the Debtors and Plan Sponsors to not pursue a class-wide settlement was deliberate. The settlement was negotiated behind the scenes with a subset of PIK Noteholders—the significant majority of which are also Plan Sponsors—and a smattering of other PIK Noteholders sufficient to push the Settling PIK Noteholders over the threshold of 50% of the outstanding aggregate principal amount of the PIK Notes. The Debtors then sought

approval of the PPI Claims Settlement with less than twenty-one days' notice to the Trustee and the Non-Settling PIK Noteholders. As discussed herein, the practical effect of the PPI Claims Settlement (when viewed together with the position that the Debtors and Plan Sponsors are taking regarding the Trustee's, and the Non-Settling PIK Noteholders', right to prosecute the Trustee Objections) is that the Non-Settling PIK Noteholders may be relegated to accept the Plan's provision of postpetition interest at the Federal Judgment Rate. While this Court has, in these chapter 11 cases, approved settlements with creditors, those settlements have been made available to all similarly situated creditors.[8] Here, this is not the case. Accordingly, the Trustee submits that the PPI Claims Settlement is discriminatory to the Non-Settling PIK Noteholders.[9]

### III. THE PPI CLAIMS SETTLEMENT IMPROPERLY MODIFIES THE RIGHTS OF THE TRUSTEE AND THE NON-SETTLING PIK NOTEHOLDERS UNDER THE INDENTURE

25. The PPI Claims Settlement, by its terms, seeks entry of an order that unilaterally, and impermissibly, alters the terms of the Indenture. Pursuant to Paragraph 4 of the Proposed Order, the Trustee would be required to make "*[n]otwithstanding anything contained in the EFIH PIK Notes Indenture* . . .[d]istributions consistent in all respects with [the] EFIH PIK

---

[8] For example, in connection with that certain Restructuring Support Agreement dated as of April 29, 2014 (the "RSA"), the Debtors sought to settle the claims of the EFIH First Lien Notes for a redemption premium arising under the applicable indentures (the "First Lien Settlement"). *See Motion of Energy Future Holdings Corp., et al., for Entry of Orders Approving Certain EFIH Settlements and the Oncor TSA Amendment* [D.I. 472]. The First Lien Settlement was offered to *all holders* of EFIH First Lien Notes, rather than a select few of the holders. *Debtors' Reply to Objection of CSC Trust Co. of Del., As Indenture Trustee, to the EFIH Debtors' Motion to Approve Proposed First Lien Settlement* ¶ 8 [D.I. 737]. In addition to filing a motion (that was later followed by robust briefing and an evidentiary hearing) requesting approval of the settlement, the Debtors had also publicly filed a *Notice of Initiation of Opt-In Period for the Proposed EFIH First Lien Settlement* [D.I. 363], which notified holders of EFIH First Lien Notes of the Debtors' offering the opportunity to participate in the First Lien Settlement.

[9] In addition, the PPI Claims Settlement is an improper Plan modification. There is no doubt that the PPI Claims Settlement is inextricably linked to the current Plan that is before the Court for confirmation. The Stipulation explicitly provides that the PPI Claims Settlement will terminate automatically on the Plan Support Termination Date (as defined in the PSA). *See* Stipulation § 4.1. The Debtors have stated as much on the record: "I want to make it clear that this settlement is in the context of the merger plan only [and] does not apply in an alternative plan scenario. . . ." Hr'g Tr. at 62:4-5, 9, Oct. 28, 2015. The Trustee reserves the right, on behalf of the Non-Settling PIK Noteholders, to argue that the PPI Claims Settlement, if approved, constitutes impermissible disparate treatment under the Plan pursuant to Section 1123(a)(4).

Settlement Order and the Stipulation" irrespective of what the Indenture may require." Proposed Order ¶ 4. Among the more egregious modifications that the Debtors seek, the Proposed Order purports to (i) direct the Trustee to make distributions to the Settling PIK Noteholders outside the "waterfall" priority scheme of section 6.13 of the Indenture and (ii) modify the Charging Lien granted to the Trustee as provided for in sections 6.12 and 7.07 of the Indenture.

26. It would be entirely improper for this Court to effectively modify the terms of the Indenture as a result of approving a "settlement agreement." Here, in order to preserve the parties' rights and the status quo, the Court must be careful not to alter the terms of the Indenture. The parties have agreed upon their own terms and conditions and "the courts cannot change them and must not permit them to be violated or disregarded." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (reversing a district court decision extending cure period set forth in indenture beyond what was allowed by the language of the indenture) (citation omitted). This Court itself has previously recognized as much. *See In re RNI Wind Down Corp.*, No. 06-10110 (CSS), 2007 WL 949647, at *9 (Bankr. D. Del. March 29, 2007) ("[T]he Court... lacks authority to modify the terms of a private contract, including an indenture, except as provided by applicable law....").[10]

27. Similarly, the modifications sought to the Indenture are not permitted "majority amendments" envisioned by the Indenture. Section 7.07 of the Indenture grants *to the Trustee* the Charging Lien – "a Lien prior to the Notes on all money or property held or collected by the

---

[10] *See also In re Nutritional Sourcing Corp.*, 398 B.R. 816, 836-37 (Bankr. D. Del. 2008) (rejecting a proposed 9019 settlement that would alter a particular creditor's rights without that creditor's participation or consent in the negotiations: "I cannot hold that a settlement was fair and equitable under Rule 9019 when those parties whose rights were severely adversely impacted were not afforded meaningful participation in the negotiations."); *Topwater Exclusive Fund III, LLC v. SageCrest II, LLC (In re Sagecrest II, LLC)*, No. 3:10cv978 (SRU), 2011 U.S. Dist. LEXIS 3517, *13 n.2 (D. Conn. Jan. 14, 2011) ("28 U.S.C. § 2075 ... provides that acts taken pursuant to the Federal Rules of Bankruptcy Procedure, such as approving a settlement under Rule 9019, shall not abridge, enlarge, or modify any substantive right, including rights protected by valid contracts . . . ." (internal citations omitted)).

Trustee . . . ." Indenture § 7.07. In essence, the Charging Lien requires that any money the Trustee collects is required to be distributed *first* to the Trustee and its agents and counsel for amounts due under the Charging Lien, and *only then* to the PIK Noteholders for amounts due and unpaid on the PIK Notes for principal, premium and interest "*ratably, without preference or priority of any kind* . . . ." *Id.* at § 6.13 (emphasis added). It is the Trustee's decision whether to modify or waive its right to apply the Charging Lien. The Settling PIK Noteholders cannot make this modification without the Trustee's consent.

## RESERVATION OF RIGHTS

28.     For the avoidance of doubt, nothing in the Proposed Order, and any revisions or amendments thereto, should be interpreted as (i) applying to or limiting the rights of the EFIH Unexchanged Noteholders arising under that certain indenture dated November 16, 2009 (as amended, modified or supplemented, the "Unexchanged Senior Notes Indenture"), or limiting the ability of the Trustee to enforce any rights arising under the Unexchanged Senior Notes Indenture, (ii) limiting the right of the Trustee to require certain additional documentation, clarifications and indemnification in relation to the Direction Letter or (iii) limiting the Trustee's right to seek payment of Trustee fees and expenses allocable to the Non-Settling PIK Noteholders. The Trustee reserves all rights to pursue any and all objections, claims and causes of action on behalf of the EFIH Unexchanged Noteholders.

## CONCLUSION

**WHEREFORE**, for the reasons set forth in this Response, the Trustee respectfully requests that (i) should the Court approve the PPI Claims Settlement, such approval be subject to the modifications described above and reflected in the revised Proposed Order attached hereto as Exhibit A and (ii) that the Court grant such other and further relief as this Court deems just and proper.

*[Remainder of page intentionally left blank.]*

Dated: October 30, 2015
Wilmington, Delaware

| | |
|---|---|
| **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Ira S. Dizengoff (admitted *pro hac vice*)<br>Abid Qureshi (admitted *pro hac vice*)<br>One Bryant Park<br>New York, NY 10036<br>Telephone: (212) 872-1000<br><br>Scott L. Alberino (admitted *pro hac vice*)<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 887-4000 | By: __/s/ Raymond H. Lemisch__<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Raymond H. Lemisch (No. 4204)<br>919 Market Street, Suite 1000<br>Wilmington, DE 19801<br>Telephone: (302) 426-1189<br><br>**FOLEY & LARDNER LLP**<br>Harold L. Kaplan (admitted *pro hac vice*)<br>Mark F. Hebbeln (admitted *pro hac vice*)<br>Lars A. Peterson (admitted *pro hac vice*)<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: (312) 832-4500<br><br>Barry G. Felder (admitted *pro hac vice*)<br>Jonathan H. Friedman (admitted *pro hac vice*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 682-7474 |

*Co-Counsel for UMB BANK, N.A., as Trustee*