**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: D.I. 6627, 6643 |
| | ) Hearing: Nov. 3, 2015, at 11:00 a.m. EST |

**REPLY OF THE DISINTERESTED DIRECTORS OF DEBTOR ENERGY FUTURE HOLDINGS CORP. TO TRIAL BRIEF, OMNIBUS OBJECTION AND SUPPLEMENT TO OBJECTION OF THE EFH OFFICIAL COMMITTEE TO (I) MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, TO APPROVE A SETTLEMENT OF LITIGATION CLAIMS AND AUTHORIZE THE DEBTORS TO ENTER INTO AND PERFORM UNDER THE SETTLEMENT AGREEMENT AND (II) CONFIRMATION OF THE FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Donald L. Evans and Billie I. Williamson, the disinterested directors (together, the "EFH Disinterested Directors") of the board of directors of debtor Energy Future Holdings Corp. ("EFH Corp."), by and through counsel, hereby submit this reply (this "Reply") to the *Trial Brief and Omnibus Objection of the EFH Official Committee to (i) Motion of Energy Future Holdings Corp.,* et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (ii) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6627] (the "Objection") and the *Supplement to the Trial Brief and*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors (each a "Debtor" and, collectively, the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Omnibus Objection of the EFH Official Committee to (i) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (ii) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code Regarding S/D/O Releases* [D.I. 6643] (the "Supplemental Objection").

**Preliminary Statement**

1. The EFH Committee[2] dedicates nearly seventy pages of its 132-page Objection to impugning the credibility and integrity of the EFH Disinterested Directors by alleging, without supporting facts and in spite of contradictory facts, that they: (a) had a "limited role" in achieving the comprehensive prepetition inter-Debtor claims settlement (the "Inter-Debtor Settlement") reached by the EFH Disinterested Directors and the disinterested managers of EFIH and TCEH[3] and memorialized in the Settlement Agreement[4]; (b) failed to consider alternatives to the Inter-Debtor Settlement; (c) were unfit to negotiate the Inter-Debtor Settlement; (d) too quickly reached the Inter-Debtor Settlement; and (e) were self-interested in obtaining releases for all of the EFH Corp. directors, officers and the sponsors. The EFH Committee's allegations concerning the EFH Disinterested Directors are wrong and contrary to the overwhelming weight of the evidence. The settlements embodied in the Settlement Agreement and the Plan,[5]

---

[2] The official committee of unsecured creditors of EFH Corp., Energy Future Intermediate Holding Company LLC ("EFIH"), EFIH Finance Inc. and EECI, Inc.

[3] Texas Competitive Electric Holdings Company LLC.

[4] Exhibit 1 to Exhibit A of the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249] (the "Settlement Motion").

[5] *The Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122].

2

representing the culmination of exhaustive, good-faith, fully-informed, arm's-length negotiations, are reasonable and in the best interests of EFH Corp.'s estate and its creditors.

2. Throughout the Objection, the EFH Committee selectively and misleadingly "cites" to snippets of the EFH Disinterested Directors' deposition testimony and relies upon those incorrect, incomplete and out-of-context "citations," while intentionally ignoring plain, clear and unambiguous deposition testimony that controverts its theories. The EFH Committee premises many of its far-fetched conjectures on revisionist history that flouts the evidence.

3. The entirety of the EFH Disinterested Directors' deposition transcripts and the arguments set forth in the Settlement Motion *do* demonstrate that the EFH Disinterested Directors made fully-informed and independent judgments, using their business experience and business judgment, after obtaining, considering and weighing the input and advice of their legal and financial advisors, about the claims compromised under the Inter-Debtor Settlement and appropriately determined that the Inter-Debtor Settlement is in the best interests of EFH Corp.'s estate and its creditors. The testimony will do the same. The Inter-Debtor Settlement, together with the other settlements and releases set forth in the Settlement Agreement, achieve at least three critically important goals for EFH Corp.: (a) binding EFIH to the terms of the Inter-Debtor Settlement even if an alternative restructuring must be pursued – irrespective of whether EFIH is insolvent at that time – resulting in EFIH's irrevocable release of EFIH's $1.28 billion legacy note claims, and potential dividend avoidance action claims, against EFH Corp.; (b) avoiding litigation risk, along with years of delay and tens if not hundreds of millions of dollars in litigation costs, on up to $2.5 billion in claims (exclusive of an asserted $20 billion LBO avoidance action claim[6]) asserted by TCEH against EFH Corp., thereby preserving EFH Corp.'s

---

[6] The EFH Committee, at paragraphs 90, 113 and 144 of the Objection, argues that the LBO claims were illusory, had no value attributed to them and would be barred by a four-year look-back period. The evidence is clear that the

cash for distribution to its creditors in any alternative restructuring; and (c) preserving in any alternative restructuring the inter-creditor and inter-Debtor agreements negotiated by the parties to the Settlement Agreement (which parties include the creditors that thoroughly and exhaustively researched and specifically identified, in standing motions and litigation letters, all of the claims now being settled and released).

4.    Although the EFH Committee complains about the Plan – *which represents the only opportunity for EFH Corp.'s creditors to be paid in full* – it has never offered an alternative plan supported by a single E-side creditor.  And it has had plenty of time since its October 2014 appointment to do so.  The EFH Committee alleges that the DD Settlement (defined below) and the Settlement Agreement were the product of "stealth" negotiations.  Apparently, the EFH Committee has spent the last year of this case with its head in the sand.   The EFH Committee could have, but failed to, propose its own settlement or plan term sheet (with one exception noted below) at various critical junctures in the case, including after: (a) the December 2014 retention of professionals to advise the Disinterested Directors and disinterested managers on inter-Debtor claims, transactions and conflicts; (b) the February 11, 2015 distribution by the co-CROs of a plan term sheet that reflected a claim by TCEH against EFH Corp. in the amount of $TBD; (c) the March 9, 2015 distribution by the co-CROs of a plan term sheet that reflected a claim by TCEH against EFH Corp. in the amount of $450 million; (d) the April 3, 2015 publication of the settlement reached among and between the EFH Disinterested Directors and the disinterested managers of EFIH and TCEH which provided, among other things, a claim by TCEH against

---

LBO claims were enumerated in TCEH's presentations setting forth its claims against EFH Corp., were considered by the Disinterested Directors, may be subject to an extended look-back period (the EFH Committee's conflicts counsel, at footnote 17 of the Supplemental Objection states that: ". . . there are viable theories of recovery that may be advanced which will extend the applicable statute of limitations beyond four years.") and were very much "in play."  The EFH Committee apparently believes that a four-year statute of limitations applies to some avoidance actions but not to others.  This proves there is inherent risk with respect to the LBO claims.

4

EFH in the base amount of $700 million and independent fiduciary outs for the Disinterested Directors, the disinterested manager of EFIH and the disinterested manager of TCEH (the "DD Settlement"); (e) the April 14, 2015 filing of the Debtors' joint plan that incorporated the DD Settlement and global releases of directors, officers and sponsors;[7] (f) the amended plans filed on July 23, 2015 and August 3, 2015, which also incorporated the DD Settlement and global releases of directors, officers and sponsors; and (g) the August 10, 2015 filing of the Third Amended Plan, the Plan Support Agreement[8] and the Settlement Motion. The public progression of this proceeding belies any credible allegations that the EFH Committee was unaware of what the EFH Disinterested Directors were investigating. The EFH Committee has failed to propose any alternative plan notwithstanding that the EFH Committee has known since the April 3 announcement of the DD Settlement that the EFH Disinterested Directors have a fiduciary out under the DD Settlement until the approval of the Settlement Agreement and EFH Corp. has a fiduciary out under the Plan Support Agreement and the Merger Agreement.[9] Quite simply, EFH Corp. has no other alternatives, the EFH Committee has provided no alternatives, and the Plan, Settlement Agreement and Plan Support Agreement transaction as a whole (which the EFH Committee contends at paragraphs 161 through 165 of the Objection is how it should be evaluated) are, far and away, the best alternatives available to EFH Corp., now or at any time prior. The EFH Committee's theories, speculations and objections are unfounded and should be overruled.

---

[7] The prepetition restructuring support agreement and every plan term sheet ever provided by an E-side creditor or group, including the EFH Committee, has included global releases of the Debtors' directors, officers and sponsors.

[8] The Amended and Restated Plan Support Agreement, which is attached as Exhibit A to the *Order Authorizing the Debtors to Enter Into and Perform Under Plan Support Agreement* [D.I. 6097] ("PSA Order"); attached as Exhibit B to the PSA Order is the "Merger Agreement."

[9] The *only* plan proposal that the EFH Committee ever made (in February 2015) included global releases and a transfer of value from EFH Corp. to TCEH, of which features the EFH Committee now complains.

5

**Reply**

I. **The Objection Is Replete with (A) Citations to Testimony from the EFH Disinterested Directors Taken Out of Context or Contradicted by Other Plain, Clear and Unambiguous Deposition Testimony and (B) Revisionist History and Unsupportable Assumptions and Conclusions.**

5. The EFH Committee's 132-page Objection misleadingly "cites" to snippets of the EFH Disinterested Directors' deposition testimony in an attempt to concoct the EFH Committee's story, but the story is a work of fiction, untethered from the evidence, facts or logic.

   A. **Incorrect, Incomplete and Out-of-Context References to the EFH Disinterested Directors' Deposition Testimony.**

6. The EFH Committee's story is spun with testimony of the EFH Disinterested Directors that is incorrect, taken completely out of context or expressly contradicted by other plain, clear and unambiguous deposition testimony. Attached as **Exhibit 1** and **Exhibit 2** hereto are illustrative, nonexhaustive, examples of such incorrect, incomplete and out-of-context references to Mr. Evans' and Ms. Williamson's deposition testimony.[10]

7. Merely by way of illustration, the following are just a few of the many arguments made by the EFH Committee that rely upon incorrect, incomplete or out of context "cites" to EFH Disinterested Directors deposition testimony:

   a. **The Objection concludes that lack of a litigation plan or budget means that the EFH Disinterested Directors did not consider litigation as an alternative.**

8. Although the EFH Disinterested Directors expressed a preference for a global settlement, litigation was of course the alternative and always an option that was "on the table." Ex. 1 (Evans Depo. Tr. at 181:25-182:3, 182:19-22, 202:20-21); Ex. 2 (Williamson II Depo. Tr.

---

[10] **Exhibits 1 and 2** set forth the propositions for which the EFH Committee cited the testimony, followed by the actual testimony cited and the additional testimony that reflects why the cited references are improper, incorrect, incomplete or out of context.

6

at 48:7-11). The fact that the EFH Disinterested Directors did not create or request a budget for litigation certainly does not prove that litigation was not considered. The EFH Disinterested Directors were well aware of the massive amounts of time and expense being incurred by estate-compensated professionals (among others) investigating inter-Debtor claims and litigating make-whole claims. The first make-whole litigation that was commenced in May 2014 is now – seventeen months later – in its infancy in a U.S. District Court appeal. The EFH Committee's claim that massive inter-Debtor litigation could be "quickly resolved" is belied by the litigation history of this very proceeding.

      b. **The Objection concludes that since EFH Disinterested Directors did not personally talk to EFH Committee members and all of the E-side creditors, then the EFH Disinterested Directors were not aware of or did not consider E-side creditors views on the inter-Debtor claims**.

9.      The EFH Committee implies that the EFH Disinterested Directors did not know the E-side creditors' views before reaching the DD Settlement. The implication is unfounded as both Mr. Evans and Ms. Williamson testified that they did in fact have discussions with E-side creditors (specifically, Fidelity and certain EFIH PIK creditors). Ex. 1 (Evans Depo. Tr. at 133:19-134:7). The EFH Disinterested Directors continuously were advised by Proskauer Rose LLP ("Proskauer"), counsel to EFH Corp. with respect to Conflict Matters (defined below), and SOLIC Capital Advisors, LLC ("SOLIC"), financial advisor to EFH Corp. with respect to Conflict Matters (defined below), who, in turn, were in regular contact with advisors to the E-side creditors.[11] Lawyers report to, and receive direction from, their clients. Whether the EFH Disinterested Directors *themselves* met with creditors – which they did – is irrelevant. Creditor

---

[11] Schedule B attached to Exhibit 1 of the *Statement of the Disinterested Directors of Debtor Energy Future Holdings Corp. Regarding Proposed Settlement of Conflict Matter as Part of Proposed Plan of Reorganization* [D.I. 4147] (the "Settlement Statement") sets forth an illustrative, nonexhaustive list of meetings and conference calls engaged in by the EFH Disinterested Directors, Proskauer and SOLIC, including a number of calls with counsel for the EFH Committee and other creditor representatives.

7

input was sought (by both the EFH Disinterested Directors and their professionals), obtained, reviewed, discussed and considered.

> c. **The Objection concludes that the EFH Disinterested Directors did not personally participate in negotiations regarding the Settlement Agreement**.

10.     The Inter-Debtor Settlement incorporates the DD Settlement, except for three modifications that are beneficial to EFH Corp.[12]  The EFH Committee incorrectly claims that the EFH Disinterested Directors were unaware of those modifications and that the Inter-Debtor Settlement was approved "without changes." (Objection ¶¶ 77, 154, 183.)  The EFH Committee further asserts that the DD Settlement eliminated the possibility of a TCEH taxable transaction.  This assertion is wrong.  Although the DD Settlement and related April plan were premised upon a tax-free spin of TCEH, the tax-free spin was not agreed upon by the TCEH creditors and those creditors were free to seek to lift the automatic stay or to terminate exclusivity to pursue a taxable deconsolidation of TCEH.   The EFH Committee argues that the EFH Disinterested Directors did not understand that the Settlement Agreement does not forbid a taxable TCEH plan in an alternative restructuring.  This assertion also is wrong.  Ms. Williamson testified that she always understood that the TCEH first liens could pursue a taxable deal after the Debtors' exclusivity period expired.  Ex. 2 (Williamson II Depo. Tr. at 109:17-23).

> d. **The EFH Committee concludes that the "minimal role" of the EFH Disinterested Directors with respect to conflict matters means that "Conflicted Insiders" controlled the case**.

11.     The EFH Committee is wrong yet again.  EFH Corp.'s board resolutions, cited in the applications to retain Proskauer and SOLIC, provide that any matter on which an actual

---

[12]  The Inter-Debtor Settlement (a) caps the TCEH claim against EFH Corp. at $700 million instead of $805 million, (b) releases claims through the effective date of the Settlement Agreement instead of through the Debtors' petition date and (c) eliminates any potential return to the sponsors.

8

conflict exists between one Debtor, on the one hand, *and any other Debtor*, on the other hand, are "Conflict Matters."  The EFH Committee cites to Ms. Williamson's testimony for the proposition that the EFH Disinterested Directors determined only two subjects to be Conflict Matters – intercompany claims and bidding procedures (Objection ¶ 64).  Ms. Williamson's *actual* testimony was that "without the minutes[13] in front of [her]" she could not recall *additional* Conflict Matters.  Ex. 2 (Williamson II Depo. Tr. at 34:21-35:12).  Ms. Williamson's testimony makes clear that the EFH Disinterested Directors' professionals reviewed and commented upon every version of the Settlement Agreement, the Plan Support Agreement, the Plan and the Merger Agreement and held regular calls with the EFH Disinterested Directors, the co-CROs, the advisors for the disinterested managers and the Debtors' other professionals.  Ms. Williamson's entire testimony makes clear that she and Mr. Evans did not play a "minimal role" in the Debtors' cases and that the EFH Disinterested Directors reviewed, and ultimately approved, every filed plan and all related documents insofar as they related to Conflict Matters.  Ex. 2 (Williamson II Depo. Tr. at 35:7-12).

> e. **The EFH Committee concludes that the EFH Disinterested Directors' interest in having the sponsor, director and officer releases in the Settlement Agreement proves that there was a back room conspiracy to force those releases upon the EFH Disinterested Directors**.

12. The EFH Disinterested Directors' testimony is replete with reasons why the releases memorialized in the Settlement Agreement and the Plan were important to EFH Corp.'s estate (e.g., Ex. 1 (Evans Depo. Tr. at 145:14-146:5); Ex. 2 (Williamson II Depo. Tr. at 116:21-117:3)).  The EFIH PIK creditors and Fidelity agreed to global releases in the prepetition restructuring support agreement.  Every plan term sheet provided by every E-side creditor,

---

[13] Referring to minutes of EFH Disinterested Directors meetings that were produced to the EFH Committee and that specified additional Conflict Matters.

including the EFH Committee, included global releases.   No prepetition litigation was filed against the sponsors or the EFH Corp. directors or officers.  The EFH Disinterested Directors also testified that EFH Corp. hired Sidley Austin LLP in 2013 to investigate potential claims regarding the sponsors and the LBO.   It is a strange world indeed where "controlling owners" would allow their "controlled" board to hire a well-known law firm to investigate the "controlling owners."  The EFH Committee also intentionally does not disclose to the Court that the sponsor releases were approved by a special committee of the EFH Corp. board that did not include any sponsor-affiliated directors.  Finally, the logical extension of the EFH Committee's flawed argument is that no corporate chapter 11 debtor could ever propose a plan that provides for director releases.  The "controlled" puppet theory is pure fantasy.[14]

### B. Revisionist History and Unsupportable Assumptions and Conclusions.

13.    The EFH Committee's lack of credibility persists with its revisionist history and unsupportable assumptions and conclusions.  The following illustrate but a few of the inaccuracies and flawed assumptions and conclusions set forth in the Objection:

    a.    Incredibly, the EFH Committee alleges that the *Debtors* provided TCEH with a "veto" and "consent right" over the Oncor sale process. (Objection ¶¶ 31, 32, 33, 199.)  Apparently, the EFH Committee feigns ignorance of the Court's November 3, 2014 ruling, which ordered that the disinterested manager of TCEH had to approve Oncor bidding procedures, the choice of a stalking horse bidder and the choice of a winning bidder.  Hr'g Tr. Nov. 3, 2014, at 18:24 – 19:2.  The Court's ruling was incorporated into the Court-approved bid procedures order [D.I. 3295].  The premise of the EFH

---

[14]  No EFH Corp. constituent or stakeholder ever has identified specific, enumerated, material, valuable, colorable claims against EFH Corp.'s sponsors, directors or officers and the Objection and Supplemental Objection still fail to specifically enumerate any such claims.

10

Committee's argument – that "the Debtors intentionally gave the TCEH disinterested manager a veto/consent right so that the bid process could be tilted in favor of the TCEH creditors" – is patently false and the EFH Committee knows it.

    b.    The EFH Committee "takes as a premise that all EFIH creditors will be paid in full." (Objection fn. 4.) This flawed premise is astonishing in light of the result of the Oncor sale process, a result that is well known to the EFH Committee.[15] It is inconceivable that the EFH Committee could base its Objection on the *assumption* that EFIH's release of EFH Corp. from $1.28 billion of EFH legacy note claims is irrelevant and that EFH Corp. bears no risk from those $1.28 billion of claims. Put simply, given (i) the facts known to the EFH Committee, (ii) the result of the Oncor sale process, (iii) the reasonable inferences to be drawn from those facts and (iv) the failure of the EFH Committee to ask its experts to value Oncor, the "premise" that EFIH claims unquestionably will be paid in full in an alternative restructuring scenario is false, fanciful and intentionally misleading. The EFH Disinterested Directors, being fully informed of all facts and acutely cognizant of the result of the Oncor sale process, elected in August to reaffirm the DD Settlement and include it in the Settlement Agreement.

    c.    The EFH Committee argues that the E-side Debtors could have been reorganized "yesterday." (Objection ¶ 7.) The EFH Committee has had more than a year to propose a confirmable plan. It has utterly failed to do so. The E-side creditors, including the EFIH PIKs and Fidelity, likewise have failed to coalesce around a confirmable, consensual plan. When creditors demand huge premiums to par recoveries, there usually are not enough oxen to gore to achieve a consensual restructuring.

---

[15] The EFH Committee was "under the tent" throughout the Oncor sale process, including reviewing the proposed bidder list (but not objecting to it or adding names to it), participating in bi-weekly sale process status calls and receiving real-time drafts of all bid documents.

11

   d.  The EFH Committee claims that "[t]he Debtors [are] . . . prioritizing their desire for peace over maximizing distributable value." (Objection ¶ 23.) This claim lacks evidentiary support and flies in the face of the undisputed facts. Where is the EFH Committee's plan that "maximizes distributable value?" The EFH Committee knows that the high bid in the Oncor sale process would not have paid *undisputed* EFIH claims in full. Apparently, the EFH Committee prefers that directors, officers and management spend their limited time "managing" litigation, as opposed to managing a business, its employees, its customers, its vendors and its reorganization. The Committee's motive is set forth in paragraph 4 of the Objection – the Committee covets "litigation by an estate trust."

   e.  The EFH Committee criticizes the EFH Corp. board for agreeing "to a nine-month commitment[16] where the estate has no enforceable rights." (Objection ¶ 11.) The EFH Committee knows, but does not disclose, that EFH Corp. has the right: (i) to solicit "Alternative Restructuring" (as defined in the Plan Support Agreement) proposals; (ii) to terminate the Plan Support Agreement and Merger Agreement by exercising its fiduciary out; and (iii) to accept and negotiate inbound transaction proposals that do not constitute "Alternative Restructuring" proposals. These rights are meaningful and enforceable.

   f.  The EFH Committee suggests that a taxable deconsolidation of TCEH, on account of TCEH's value and EFH Corp.'s significant net operating losses, would not result in any taxes owed to the Internal Revenue Service. (Objection ¶ 35.) What the

---

[16] The EFH Committee, at paragraph 147 and throughout the Objection, misleadingly describes the merger transaction proposed under the Plan as an "exclusive option" or an "exclusive right." Where the Debtors maintain a fiduciary out – as is the case here – exclusivity does not exist.

12

EFH Committee knows – or should know – is that the value-maximizing REIT transaction contemplated under the Plan is dependent on a T-side tax-free spin,[17] and the stakeholders' determination of TCEH's value[18] is not binding on the Internal Revenue Service, which later could decide to impose a tax on EFH Corp.[19]  If the EFH Committee and its professionals truly believe that EFH Corp. bears no risk from a taxable TCEH transaction, they can "put their money where their mouth is" and provide written opinions and indemnification to the EFH Corp. estate for any TCEH taxable transaction.

II. **What the EFH Disinterested Directors' Deposition Transcripts and the Settlement Motion do Reflect Is that the EFH Disinterested Directors Made-Fully Informed and Independent Judgments About the Inter-Debtor Settlement and the Claims Compromised Thereunder.**

   A. **The Process for Settling the Inter-Debtor Claims.**

14. By resolutions duly adopted by the EFH Corp. board of directors on November 7, 2014, as supplemented by resolutions duly adopted by the EFH Corp. board on December 9, 2014 (collectively, the "Resolutions"), the EFH Corp. board delegated to the EFH Disinterested Directors the authority to review and act upon Conflict Matters.  The Resolutions authorized the EFH Disinterested Directors to engage professionals to advise and represent EFH Corp. in connection with Conflict Matters.  Thereafter, EFH Corp. engaged Proskauer and SOLIC.

---

[17] A taxable sale of TCEH will make the REIT effectively impossible, as under a taxable sale (through technical operation of tax rules), a newly-formed REIT will be required to make a massive cash distribution (with cash that is likely not available).

[18] The value of TCEH is highly uncertain and will not be known until after the effective date of any plan. A rebound in energy prices, including coal, oil and natural gas, could significantly impact the value of TCEH.

[19] The Internal Revenue Service is not bound by an expert's estimate of the value and likely will determine value for tax purposes based on the value implied by TCEH security trading after the effective date.  If that amount were higher than the amount of EFH Corp.'s available net operating losses, a taxable sale could generate potentially significant tax liabilities for EFH Corp.

15. Beginning almost immediately after they were hired in November 2014, Proskauer and SOLIC, at the direction of the EFH Disinterested Directors, began conducting extensive diligence on inter-Debtor transactions and relationships. This diligence included searching and reviewing voluminous documents, reviewing work product prepared by the Debtors' advisors and creditor professionals, conducting multiple interviews of the Debtors' personnel with knowledge of the facts relating to potential claims and having numerous meetings with professionals representing the EFIH PIKs, Fidelity, the EFH Committee, other creditor representatives and representatives of the EFIH and TCEH disinterested managers. Throughout the process, Proskauer regularly consulted with the EFH Disinterested Directors on its diligence and analysis, supplementing each EFH Disinterested Director's own knowledge and experience, including knowledge and experience gained from serving on the board of EFH Corp. and on a special committee of non-sponsor directors of the board.

16. As a result of this extensive diligence, advisors to the EFH Disinterested Directors and the disinterested managers of EFIH and TCEH (collectively, the "<u>Disinterested Director Advisors</u>") identified the inter-Debtor claims to be resolved, either through settlement or, if necessary, through litigation.

17. Beginning in February and continuing through the end of March 2015, the EFH Disinterested Directors, disinterested managers of EFIH and TCEH and Disinterested Director Advisors conducted both in-person and telephonic negotiations concerning a potential settlement of the inter-Debtor claims. Certain negotiations were conducted directly among the EFH Disinterested Directors and disinterested managers of EFIH and TCEH, while others were conducted among the Disinterested Director Advisors, under the direction and supervision of the EFH Disinterested Directors and disinterested managers of EFIH and TCEH. *See supra* fn. 11.

18. In the course of these negotiations, the EFH Disinterested Directors and disinterested managers of EFIH and TCEH exchanged presentations advocating each Debtor's views on the strengths and weaknesses of the various inter-Debtor claims. Throughout the process, the EFH Disinterested Directors frequently conferred with Proskauer on the merits and risks of the various inter-Debtor claims.

19. These exhaustive, arm's-length negotiations culminated in the DD Settlement, which was the predicate to the Inter-Debtor Settlement.

**B.    The Merits of the Inter-Debtor Settlement.**

20. In ultimately agreeing to the terms of the Inter-Debtor Settlement in August 2015 and in deciding not to exercise their fiduciary out under the DD Settlement, the EFH Disinterested Directors were extremely focused on certain key issues with respect to the inter-Debtor claims, issues that the EFH Committee disregards: (a) EFIH holds $1.28 billion in principal amount of EFH legacy notes and, under the proposed Inter-Debtor Settlement, EFIH's note claims against EFH Corp. are released; (b) the Inter-Debtor Settlement avoids litigation risk on up to $2.5 billion in claims (exclusive of over $20 billion of LBO avoidance action claims) asserted by TCEH against EFH Corp.; and (c) EFH Corp. maintains cash that it will need in connection with any alternative restructuring. All EFIH and TCEH claims (ranging from $2.9 billion to $5.4 billion exclusive of the $20 billion LBO claim) were compromised for a single unsecured claim of $700 million by TCEH against EFH Corp. and the TCEH creditors who investigated and articulated TCEH's claims both support the Inter-Debtor Settlement and agreed that the settled claim would be deemed prepetition collateral of the TCEH first-lien lenders.

21. If the Court approves the Settlement Agreement but the Plan is not consummated, in any alternative restructuring scenario, it is more likely than not that Oncor will have materially

15

decreased in value[20] and the only asset EFH Corp. will have to satisfy creditor claims will be its unencumbered cash. The EFH Committee incredibly assumes that, for all purposes and at all times, "all EFIH creditors will be paid in full." (Objection fn.4.) That assumption ignores what the EFH Disinterested Directors understand to be true: in an alternative transaction scenario, where the high bid received during the Oncor sale process is the best evidence of Oncor's "C-corp." market value, EFIH will not have sufficient funds to pay its claims in full; accordingly, EFH Corp. creditors will be at risk of substantial dilution from the EFIH $1.28 billion legacy note claims. Having those note claims released upon approval of the Settlement Agreement in exchange for a single $700 million claim and the elimination of all fees, costs, risks and distractions associated with complex and lengthy litigation, constitutes a downside insurance policy for EFH Corp.'s creditors, while the Plan provides the upside opportunity for full payment. The proposed Settlement Agreement and Plan satisfy the business judgment test and any stricter standards the EFH Committee claims apply (which they do not).

22.    Apparently, the EFH Committee would prefer to litigate, without regard to litigation expenses, the risk of loss on claims and the extraordinary burn rate of the Debtors' cases generally (which, in the absence of the Inter-Debtor Settlement, would no doubt continue to accrue). Why? So a litigation trust can be formed that will prosecute claims and resolve disputed claims (such as disputed asbestos claims held by EFH Committee members). This is the alternative to the Plan posited by the EFH Committee. That alternative is not in the best interests of EFH Corp.'s estate and its creditors.

---

[20] The EFH Committee, at paragraph 198 of the Objection, concedes that the value of Oncor is "volatile." In the face of a failed merger transaction, the only inference that one can draw is that the value of Oncor has declined. Such an inference cannot be reconciled with the EFH Committee's blind assumption that under any scenario "all EFIH creditors will be paid in full."

23. The Plan presents an opportunity for EFH Corp.'s creditors to be paid in full. This objective was at the forefront of the EFH Disinterested Directors' minds in voting to approve the Plan. The global settlement memorialized in the Settlement Agreement is a critical step to confirmation of the Plan and, in the event that the Plan is not confirmed or does not become effective, the global settlement becomes even more critical because it: (a) protects the EFH Corp. estate against the undisputed claims of EFIH and the litigation claims of TCEH; (b) protects EFH Corp.'s cash; (c) significantly streamlines an alternative path to exit; and (d) preserves the peace negotiated by the parties to the Settlement Agreement.

24. For all of the reasons set forth above, the EFH Disinterested Directors respectfully request that the Court overrule all objections raised by the EFH Committee and approve the Settlement Agreement and confirm the Plan.

[*Remainder of page intentionally left blank.*]

| | |
|---|---|
| Wilmington, Delaware<br>Dated:  October 30, 2015 | **BIELLI & KLAUDER, LLC**<br><br>*/s/  David M. Klauder*<br>David M. Klauder (No. 5769)<br>Cory P. Stephenson (No. 6097)<br>1204 N. King Street<br>Wilmington, DE 19801<br>Telephone:    (302) 803-4600<br>Facsimile:    (302) 397-2557<br>Email:    dklauder@bk-legal.com<br>    cstephenson@bk-legal.com<br><br>-and-<br><br>**PROSKAUER ROSE LLP**<br><br>Jeff J. Marwil (admitted *pro hac vice*)<br>Mark K. Thomas (admitted *pro hac vice*)<br>Peter J. Young (admitted *pro hac vice*)<br>Three First National Plaza<br>70 W. Madison Street, Suite 3800<br>Chicago, IL 60602<br>Telephone:    (312) 962-3550<br>Facsimile:    (312) 962-3551<br>Email:    jmarwil@proskauer.com<br>    mthomas@proskauer.com<br>    pyoung@proskauer.com<br><br>*Co-Counsel to Debtor*<br>*Energy Future Holdings Corp.* |