**Exhibit 1**

[Evans' Deposition Cites]

**SELECT CITES TO DEPOSITION TRANSCRIPT OF DONALD EVANS**

| Brief Cite | Quote/Proposition in the Brief | Complete Cite(s) | Full/Rebuttal/Clarified Cites |
|---|---|---|---|
| Depo Tr. 182:16-183:5[1] | ¶ 68: "No steps were taken to prepare for litigation: no claim-by-claim litigation budget was created nor requested; no litigation plan was prepared; no consideration was given to commencing litigation to resolve any of the large but spurious claims; and no consideration was given to resolving some but not all of the intersilo claims that would be settled pursuant to the Intersilo Settlement. | Depo Tr.180:20-181:5, 181:25-182:22 | "No, I don't recall -- I mean what I do recall is, we never talked about litigation. We always talked about the expense, the time, the disruption, the more uncertainty in the whole process, delay it, you know, when do we ever get -- when do we ever emerge, do we have any money left when it is all over to pay somebody, pay the EFH creditors. It just didn't seem like a logical strategy or a logical tactic even." <br><br> Also Depo Tr. 181:25-182:22: <br><br> "I just never in my mind felt like litigation was a good option. Now, you don't rule it out. You sit down and see if you can negotiate and come to what you think is a fair and reasonable settlement, and if you can sit down and have what you think is a fair and reasonable settlement, then that part of this period is spending years in the courthouse. The only thing advisors here and elsewhere say – I won't say what they said about it. I would say my own interpretation was, it was years of litigations, and it was conceivably 100 million, 200 million dollars, on top of all the other expenses we were spending just to prosecute the petition or the reorganization. So clearly to me it was, sit down and try and negotiate, but not take the litigation option off the table. I never took it off the table. |
| Depo Tr. 194:13-21 | ¶ 69: "With a clear intention to do nothing but settle, the EFH Disinterested Directors purportedly relied on advice of EFH independent counsel regarding the merits of the underlying claims, but any such advice or analysis remains | Depo Tr. 192:17-25, 202:18-21, 181:6-20, 205:8-13, 206:9-209:2 | "I went through the deck that had been prepared by Proskauer, claim by claim. I went through the deck that had been prepared by Munger claim by claim. I sat down with counsel of the company and went through this, went through them claim by claim. I listened to a presentation from Kirkland & Ellis, Kirkland & Ellis, claim by claim." |

---

[1] The E Committee erroneously cited to the non-revised final transcript of Mr. Evans. The citations contained in the Debtors' rebuttal column above cite to the final revised transcript.

| Brief Cite | Quote/Proposition in the Brief | Complete Cite(s) | Full/Rebuttal/Clarified Cites |
|---|---|---|---|
| | undisclosed due to privilege assertions. | | Also Depo Tr. 202:18-21:<br><br>"I was perfectly prepared to move on without the settlement. Whatever that meant. Did it mean beginning to file litigation? Maybe. I don't know."<br><br>Also Depo Tr. 181:6-20:<br><br>"Q. Did you ever request such an analysis be prepared by your advisors as to costs of litigation of particular intercompany claims?<br><br>A. I don't – you know, I did not request it. I did not request it, and I think that we would have had a robust discussion around it if they thought it was a wise course to consider, but we spent most of our time – before we actually sat down for the negotiation, we spent most of our time, I spent most of my time trying to assess the risk of the claims, high risk, lower risk, whatever. That's what I was spending my time."<br><br>Also Depo Tr. 205:8-13:<br><br>"I think it is also fair to say that valid legal arguments in some of these were higher than other in terms of risk. So in my mind, I kind of risk-weighted them, which ones carry more risks than others."<br><br>Also Depo Tr. 206:9-209:2:<br><br>"Q. You said one or more stuck out as serious claims. Can you identify which one or more stood out to you in that department as serious claims?<br><br>A. Number 1 stood out to me.<br><br>Q. The intercompany tax claim? |

| Brief Cite | Quote/Proposition in the Brief | Complete Cite(s) | Full/Rebuttal/Clarified Cites |
|---|---|---|---|
| | | | A. Yes, 754 million dollars. The reason it stood out to me was because we had asked – the company put numbers in SEC filings that indicated that the T-side of the argument was correct.<br><br>Now, we had a lot of counterarguments to that, and thought that would stand – I mean I thought, we had an OK chance in court to even reverse it. No, no, you owe us money. But I must admit, I'm not a lawyer, but I was pretty -- it got my attention that it was in an SEC filing that was out there in the public domain. That got my attention.<br><br>So I just viewed it as high risk, OK, and I viewed number 3 as high risk as well. That's – that's the one where the TCEH was claiming that the interest rate that you are paying us is not high enough. And that was a 600 to 700 million dollar kind of claim. And I just viewed it as somewhat higher risk, knowing what the interest rate market has been and looking at the interest, just business judgment, I guess I would say.<br><br>Number 7, I didn't – which is the LBO claim, you know, that falls into the old category of – I mean it is 21 billion dollars. It is very low risk. I thought we had some really strong powerful persuasive arguments that would prevail. To me, it kind of falls in the category, you go in the courtroom, anything can happen. You never know.<br><br>That's pointing out a few of them. I think the –I think the shared services, wherever that is –<br><br>MR. FIRESTEIN: Number 6.<br><br>A. 6. Sponsor fees and shared services, I thought that one had a fair amount of risk to it also, because they had brought in, or we had brought in an outside advisor to look at how the service, shared services and sponsor fees had been allocated over the last however many years, and the outside advisors, you know, came up with a |

3

| Brief Cite | Quote/Proposition in the Brief | Complete Cite(s) | Full/Rebuttal/Clarified Cites |
|---|---|---|---|
| | | | number of 260 million dollars that had been overpaid by TCEH. I looked at that, and that has got some high risk.<br><br>So those are a few of them. I mean preferential tax payment, that's an avoidance kind of claim. That was a settlement with the IRS from 1999 to 2002 or '3 or something. That was like 80 dollars. It was an avoidance-type claim.<br><br>Amend and extend, maybe, I didn't probably put quite as much risk weight on that, but it was pretty small, too. It was 80 million dollars. It wasn't that big." |

4