**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re )<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] )<br><br>*Debtors.* ) | Chapter 11<br>Bankruptcy Case No. 14-10979 (CSS)<br>(Jointly Administered) |

**DEBTORS' OPPOSITION TO EFH COMMITTEE'S MOTION
*IN LIMINE* TO EXCLUDE EVIDENCE OF THE PURCHASERS' SUBJECTIVE
INTENT TO CLOSE THE TRANSACTION CONTEMPLATED IN THE PLAN**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS
INTERNATIONAL LLP**
Edward A. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc C. Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

ARGUMENT........................................................................................................................... 4

I.      THE DEBTORS DO NOT INTEND TO OFFER EVIDENCE OF THE
        "PURCHASERS' SUBJECTIVE INTENT TO CLOSE" THE TRANSACTION. ........... 4

II.     THE EFH COMMITTEE'S ESTOPPEL ARGUMENT DOES NOT APPLY TO
        THE DEBTORS........................................................................................................... 5

CONCLUSION........................................................................................................................ 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Brice Rd. devs., L.L.C.*,
   392 B.R. 274 (B.A.P. 6th Cir. 2008)...........................................................................................5

*EEOC v. Carolina Freight Carriers Corp.*,
   723 F. Supp. 734 (S.D. Fla. 1989) .............................................................................................6

*Gilliland v. Hergert*,
   No. 2:05-CV-01059, 2008 WL 2682587 (W.D. Pa. July 1, 2008) ............................................6

*SEC v. Grossman*,
   887 F. Supp. 649 (S.D.N.Y. 1995).............................................................................................6

**Statutes**

11 U.S.C. § 1129(a)(11)...................................................................................................................4

**Other Authorities**

*Subjective*, BLACK'S LAW DICTIONARY (10th ed. 2014)..................................................................4

## PRELIMINARY STATEMENT[2]

The EFH Committee has filed a motion seeking to preclude evidence on the "subjective intent of the Purchasers" to "close the transaction contemplated in the Plan."  The Debtors do not intend to offer any evidence of that topic.  The Debtors' witnesses only intend to provide their *own* assessment of the feasibility of the transaction—based on their knowledge, their beliefs, and their understanding of the objective record evidence.  Consequently, the narrow scope of the Motion should not apply to the Debtors.

Nevertheless, the Debtors respond to this Motion because the scope of the exclusion request is unclear.  First, it would be inappropriate for the EFH Committee to limit evidence of the ***Debtors' views*** on the objective evidence regarding the likelihood of completing a successful transaction.  Second, the Motion is based solely on an estoppel theory against the Purchasers, but it does not identify a single discovery request directed to the Debtors, given that the Debtors ***have*** complied with discovery about their subjective intent as well as objective evidence about the closing of the transaction.  As a result, even if this Court were inclined to limit some evidence based on the Motion, it should not limit any evidence on the Debtors' subjective intent or beliefs.

Finally, it must be emphasized that the ***EFH Committee*** is contesting the Plan's feasibility and was the party that put feasibility at issue in these chapter 11 cases.  That the Committee would argue the Debtors' Plan (and the transaction contemplated therein) is not feasible and then seek to exclude the plan supporters' evidence in rebuttal violates basic concepts of adversarial fairness.  The Court should not countenance such tactics.

---

[2]        Capitalized terms used, but not otherwise defined in this Preliminary Statement, shall be ascribed the same meanings given to them elsewhere in this Memorandum of Law.

For these reasons, and as described in more detail below, the Court should deny the EFH Committee's motion *in limine* to the extent it would preclude the Debtors' witnesses from testifying about subjective intent or beliefs.

## BACKGROUND

1.      The EFH Committee has objected to (a) the motion by Energy Future Holdings, Corp. and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order approving the amended and restated settlement agreement (as may be further modified, amended or supplemented from time to time, the "Settlement Agreement"), dated as of September 10, 2015, by and among the Debtors and the other parties thereto and (b) confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6122].

2.      On October 28, 2015, the EFH Committee filed a motion *in limine* ("Motion") to exclude evidence of the purchasing parties' subjective intent to close the transaction contemplated in the Debtors' Fifth Amended Plan of Reorganization ("Plan").  The Motion does not explicitly request to limit testimony or evidence regarding intent or beliefs of the Debtors.

3.      The Debtors have made several witnesses available for deposition, including Paul Keglevic, Executive Vice President and Chief Financial Officer of the Debtors, Stacey Doré, Executive Vice President and General Counsel, Hugh Sawyer, Disinterested Director on the Board of Texas Energy Future Holdings Company LLC ("TCEH"), Billie Williamson, Disinterested Director on the Board of EFH, Donald Evans, Disinterested Director on the Board of EFH, and others.

4.      In response to questions from the EFH Committee, these individuals testified why, based on all relevant circumstances, they expect the transaction contemplated in the Plan will close.  Paul Keglevic, for example, "considered a lot of factors" in determining that the

transaction "has a more likely than not chance of closing." (October 1, 2015 P. Keglevic Dep. Tr. ("Keglevic Tr.") at 165:11-12, 22-23.) Those factors include "the financial sophistication [and] the reputation of the counterparties," the fact that "assets of this size in a regulated company don't come up for marketing very often," Texas' "business climate, economic climate, and regulatory climate," and "the equity commitments and the size of the commitments across the group of the initial investors and backstop parties." (*Id.* at 165:23-25, 166:9-24.) Mr. Keglevic ultimately concluded that, in his opinion, "the time and expense and reputational risk of not executing this deal is pretty high" for the purchasers. (*Id.* at 167:6-8.)

5.    Ms. Doré likewise offered her own assessment, stating that she believes the deal is likely to close because otherwise the purchasers "are giving up any potential upside value from . . . owning Oncor and putting it into a REIT." (September 28, 2015 S. Doré Dep. Tr. ("Doré Tr.") at 323:5-10.) Ms. Doré also noted that in assessing the likelihood that the transaction would close she also considered "the incentives of the counterparties," "the relationships of the various parties that they had with regulators," "the legal merits and risks of certain positions," and the "financial wherewithal of the parties who were making investments." (*Id.* at 313:18-25.)

6.    The disinterested director of TCEH also believes "it is likely [the deal] will close." (September 24, 2015 H. Sawyer Dep. Tr. ("Sawyer Tr.") at 735:8-9; *see also* September 30, 2015 B. Williamson Dep. Tr. ("Williamson Tr.") at 138:12-13 ("[T]here is a high probability that this deal will close."); September 25, 2015 D. Evans Dep. Tr. ("Evans Tr.") at 262:10) ("I would say we are optimistic [that the transaction will close.]").) In support of this view, Mr. Sawyer noted that "the T-side estates have invested time and energy and money" and that Oncor was "a very valuable company." (Sawyer Tr. at 735:11-15.) Billie Williamson also offered reasons for her belief that the transaction will be consummated: "the Hunt organization is a very

major player in the utilities space" and "a sophisticated financial investor [that] certainly understand[s] how to do M&A transactions," is "well-regarded by the PUC in Texas," and "already has converted an acquisition to a REIT." (Williamson Tr. at 138:18-139:9; 139:19-24.) Furthermore, the "other investors are all sophisticated financial investors" who ███████████ ████████████████████████████████████████████████████████████ (*Id.* at 139:10-18.) Donald Evans is similarly "optimistic" that the deal will close because of "the quality of the sponsors of the plan to purchase" and the fact that "there has been a REIT of these types of assets approved already by the Hunts themselves." (Evans Tr. at 261:19-25.) These statements reflect the Debtors' *own* reasons why they believe the transaction will close. They do *not* purport to reflect the views of any of the purchasing parties, and they should not be excluded.

## ARGUMENT

I.    **THE DEBTORS DO NOT INTEND TO OFFER EVIDENCE OF THE "PURCHASERS' SUBJECTIVE INTENT TO CLOSE" THE TRANSACTION.**

7.    The Debtors do not intend to present evidence on the subjective intent of the Purchasers. That statement alone may be enough to moot this Motion as to the Debtors because the EFH Committee's Motion only seeks to exclude "[e]vidence relating to the subjective intent of the Purchasers to close the transaction contemplated in the REIT Plan[.]" Motion at 6; *see also Subjective*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("subjective" refers to an "*individual's* perceptions, feelings, or intentions.") (emphasis added).

8.    To be sure, the Debtors will present evidence of their beliefs regarding the likelihood that the parties will execute the transaction contemplated in the Plan. Such evidence will bear directly on the question of plan feasibility. The Bankruptcy Code requires plan supporters to offer evidence of feasibility. *See* 11 U.S.C. § 1129(a)(11). While demonstrating feasibility may require only "a relatively low threshold of proof," 11 U.S.C. §1129(a)(11) nevertheless still demands

4

evidence to "support[] a finding of feasibility," *In re Brice Rd. devs., L.L.C.*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008).  The Debtors must clearly be afforded the opportunity to put on witnesses to explain why Plan consummation is feasible from their perspective.

9.      Presumably acknowledging that it would be ridiculous to contend otherwise, the EFH Committee appears to argue only that the Debtors should be precluded from offering evidence of subjective intent of the third party Purchasers.  Given that the testimony the Debtors intend to offer— as described above—falls outside the scope of the EFH Committee's Motion, the Motion should be denied as moot and none of the Debtors' testimony should be precluded.

## II.      THE EFH COMMITTEE'S ESTOPPEL ARGUMENT DOES NOT APPLY TO THE DEBTORS.

10.     The sole legal argument for the EFH Committee's Motion is one of estoppel, and it does not apply to the Debtors.  The EFH Committee argues that the *Purchasers* "refused to produce" certain documents on the Purchasers' subjective intent, and their successful defense of that position in this Court should preclude the Purchasers from offering evidence on this topic at the confirmation hearing.  (Motion ¶¶ 4-5.)  But the Debtors did not refuse to respond to the Committee's discovery requests, and tellingly, the Motion does not argue otherwise.  Thus, principles of estoppel cannot bar the Debtors from offering evidence on Plan feasibility.

11.     Because the EFH Committee cannot point to any relevant discovery requests that the Debtors have refused to answer, it is left to argue that a single statement made by the Debtors regarding a motion to which the Debtors were not even a party is the equivalent of a refusal to provide discovery materials.  (*See* Motion ¶ 5.)  On September 11, 2015, in a telephonic hearing on the disputed discovery requests the EFH Committee had served on the Purchasers, Mark McKane, counsel for the Debtors, made a brief statement that the discovery being sought was cumulative:

> Your Honor, we just briefly [rise] in support of the respondents here in part because not only do we agree with the position that they have taken but we wanted to highlight, you know, when evaluating the need for this discovery, we ask the Court to consider how cumulative this truly is when you build it on top of everything that the debtors have already provided, you know, that allows the Court and all the objectors to evaluate what negotiations actually occurred. And so it's only for that cumulative nature of all of this that we wanted to emphasize this morning. Thank you, Your Honor.

(September 11, 2015 Hearing Tr. at 26:10-21.) This one quotation is the sole piece of evidence that the EFH Committee relies on for its estoppel argument against the Debtors. (Motion ¶ 5.) It is not enough.

12.     The EFH Committee's own case law shows that estoppel applies only to the party who refused the discovery. *Gilliland v. Hergert*, No. 2:05-CV-01059, 2008 WL 2682587, at *2 (W.D. Pa. July 1, 2008) ("***Defendant*** stonewalled this specific discovery by claiming it to be irrelevant and ***he*** will have to live with the consequences of having taken that position" (emphasis added)); *EEOC v. Carolina Freight Carriers Corp.*, 723 F. Supp. 734, 747 (S.D. Fla. 1989) (finding defendant was estopped from introducing certain evidence after defendant opposed discovery requests); *SEC v. Grossman*, 887 F. Supp. 649, 660 (S.D.N.Y. 1995) (barring defendant from offering evidence after defendant declined to provide relevant discovery). The EFH Committee provides no citation—nor could it—that a single comment about cumulative evidence during a hearing about another parties' discovery dispute warrants estoppel.

13.     The Debtors have produced hundreds of thousands of documents and made multiple witnesses available for deposition over many days in order to confirm this Plan. The Court should therefore find that Debtors are decidedly not estopped from offering testimony about their own subjective beliefs about, and objective evidence on, feasibility.

## <u>CONCLUSION</u>

The EFH Committee's motion *in limine* to exclude evidence of the subjective intent of the purchasing parties regarding the transaction contemplated in the Debtors' Plan should be denied to the extent it would limit the Debtors' proposed evidence.

[*Remainder of page intentionally left blank.*]

Wilmington, Delaware
Dated:  October 30, 2015

/s/ Jason M. Madron
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
                defranceschi@rlf.com
                madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
                stephen.hessler@kirkland.com
                brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
                marc.kieselstein@kirkland.com
                chad.husnick@kirkland.com
                steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession