## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | ) |
|  | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Bankruptcy Case No. 14-10979 (CSS) |
| *Debtors.* | ) (Jointly Administered) |
|  | ) |

## DEBTORS' OPPOSITION TO EFH COMMITTEE'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF CONSULTATION WITH COUNSEL OFFERED TO SUPPORT REASONABLENESS OF SETTLEMENT

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS**
**INTERNATIONAL LLP**
Edward A. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc C. Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT..............................................................................................................................4

I.    THE DEBTORS FOLLOWED THIS COURT'S GUIDANCE IN *CAPMARK*. ................4

II.    THE EFH COMMITTEE'S "SWORD AND SHIELD" ARGUMENT FAILS. .................5

CONCLUSION...........................................................................................................................8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dutch Branch of Streamserve*, 2009 WL 2705932......................................................................6, 7

*In re Capmark Fin. Grp. Inc.*,
   No. 09-13684-CSS, Hearing Transcript (Oct. 14, 2010) (Sontchi, J.)..................................1, 4

*In re Residential Capital, LLC*,
   491 B.R. 63 (Bankr. S.D.N.Y. 2013)........................................................................................7

*In re Teleglobe Comm'ns Corp. (Teleglobe II)*,
   392 B.R. 561, 585-86 (Bankr. D. Del. 2008 .......................................................................6, 7

The above captioned debtors and debtors in possession in these chapter 11 cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby respond and object to the *EFH Committee's Motion and Memorandum of Law in Support of Its Motion* In Limine *to Exclude Evidence of Consultation With Counsel Offered to Support Reasonableness of Settlement* [D.I. 6741] (the "Motion"), dated October 29, 2015, as follows.

## PRELIMINARY STATEMENT

1.    The EFH Committee filed a Motion to preclude the Debtors "from offering evidence relating to the fact that the Debtors consulted with counsel in support of the Settlement Motion."  This request comes on the eve of trial, without any prior motion to compel privileged discussions or arguments of selective disclosure.  This broad and overreaching request—that the Debtors and their Disinterested Directors be precluded from referencing that they consulted with counsel with regard to *any issue* associated with the Settlement Motion—is unsupported by law, impractical, unequitable, and cannot be countenanced.

2.    As this Court previously held in *In re Capmark*, evidence that a debtor's management and board of directors relied on legal advice to evaluate and settle claims is admissible without abusing or waiving the attorney-client privilege, so long as the substance of that advice is not disclosed. (*See* Ex. A, *In re Capmark Fin. Grp. Inc.*, No. 09-13684-CSS, Hearing Tr. ("*Capmark* Hearing Tr.") 152:9-154:3 (Oct. 14, 2010) (Sontchi, J.) [D.I. 1925].) That is precisely the situation here.  Like the debtors in *Capmark*, the Debtors have been careful not to put privileged *advice* at issue in these cases, while thoroughly documenting the *process* by which the Settlement Agreement was reached.

3.    The EFH Committee's arguments—which rely primarily on their own mischaracterization of the Debtors' invocation of the attorney-client privilege at depositions—are without merit, and their Motion should be denied.

1

**BACKGROUND**

4.      The Debtors filed the *Motion of Energy Future Holdings Corp.,* et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249] (the "Settlement Motion") on August 10, 2015.   The Debtors filed the *Amended & Restated Settlement Agreement* [D.I. 6085] (the "Settlement Agreement") on September 17, 2015.  The Settlement Agreement incorporates in part with some modifications an earlier settlement of the intercompany claims between the Debtors' estates (the "Disinterested Directors' Settlement") between and among the Debtors' disinterest directors and managers (the "Disinterested Directors"), and independent legal counsel and advisors (the "Disinterested Director Advisors").

5.      The Disinterested Directors engaged in an extensive and robust process to reach the Disinterested Directors' Settlement.   Beginning almost a year ago—in mid-November 2014—following their retention by the Disinterested Directors, the Disinterested Directors Advisors conducted extensive diligence on inter-Debtor transactions and relationships, which resulted in the identification of inter-Debtor claims to be resolved, either through settlement or litigation.  *See* Settlement Motion ¶ 42.  Between mid-February and the end of March 2015, the Disinterested Directors and Disinterested Director Advisors conducted in-person and telephonic negotiations concerning a potential settlement of the inter-Debtor claims.

6.      As part of those negotiations, the Disinterested Directors exchanged detailed presentations advocating each Debtor's view on the strengths and weaknesses of the various inter-Debtor claims.   These exchanges were not only shared between the various Debtors and with the creditors, but they have also been attached to filings as exhibits.  *See Energy Future Competitive Holdings and Texas Competitive Electric Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan*, Exs. B, C, D [D.I. 4145-2; 4145-3; 4145-4];

*Energy Future Intermediate Holdings Company LLC's Statement in Support of Intercompany Settlement in the Plan*, Ex. B [D.I. 4146-2] (collectively, the "<u>Disinterested Directors Presentations</u>").  These presentations exchanged between EFH, EFIH, and TCEH regarding intercompany claims against each other are not privileged.

7.    Ultimately, as a result of several months of diligence and negotiations, the Disinterested Directors reached their Settlement.  The fact that the Disinterested Directors frequently consulted with and relied on their respective Disinterested Director Advisors, including counsel, to assess the Disinterested Directors' Settlement has already been publicly disclosed repeatedly, including as part of the Settlement Motion.  (*See* Settlement Motion ¶ 43.)

8.    At a number of depositions, counsel for the EFH Committee attempted to elicit the substance of conversations that the Disinterested Directors shared with their independent counsel.  Hugh Sawyer, Disinterested Director for the TCEH Debtors, was questioned extensively about the attorney work product that his independent counsel had prepared in anticipation of litigating the intra-Debtor claims, and Mr. Sawyer was properly instructed not to divulge privileged advice.  (*See* September 24, 2015 H. Sawyer Dep. Tr. ("<u>Sawyer Tr.</u>") at 779:13-781:15.)  Donald Evans, Disinterested Director for EFH, was asked directly about whether he had discussed certain topics with his counsel, and he also was properly instructed not to disclose the substance of those discussions.  (*See* September 25, 2015 D. Evans Dep. Tr. ("<u>Evans Tr.</u>") at 194:23-196:12.)  Chuck Cremens, Disinterested Director for EFIH, was questioned about "who said what to who at each meeting at which the [Plan Settlement Agreement] was discussed," and was instructed not to disclose the substance of conversations with counsel.  (September 15, 2015 C. Cremens Dep. Tr. ("<u>Cremens Tr.</u>") at 87:25-88:10.)

9.      On October 19, 2015, the EFH Committee filed the Motion seeking the entry of an order excluding the introduction into evidence of the fact that the Disinterested Directors consulted with their Advisors in support of the Settlement Motion.

**ARGUMENT**

10.      The EFH Committee's Motion lacks any cognizable basis and should be denied. The Debtors should not be precluded from offering the simple fact that they consulted with counsel as evidence of the reasonableness of the Settlement Agreement or the Debtors' exercise of business judgment in entering the Settlement Agreement.

## I.      THE DEBTORS FOLLOWED THIS COURT'S GUIDANCE IN *CAPMARK*.

11.      As this Court has previously ruled, evidence that a debtor's management and board of directors relied on legal advice to evaluate and settle claims is admissible without abusing or waiving the attorney-client privilege, so long as the substance of that advice is not disclosed.. (*See* Ex. A, *Capmark* Hearing Tr. 152:9-154:3.)  A nearly identical situation presents itself here.  The Court should follow its previous ruling and deny the EFH Committee's Motion.

12.      At a settlement hearing in *In re Capmark Fin. Group. Inc.*, the official committee of unsecured creditors made the same argument the EFH Committee asserts: that Capmark should be precluded from introducing evidence that Capmark's management and board of directors relied on the advice of counsel in entering into the settlement because the Committee had not been provided the substantive legal analysis in question.  (*See id.* at 152:9-25.)  The Court overruled that objection where the witness: (1) disclosed the fact that legal advice was discussed; (2) described the process of gathering that advice; (3) detailed its thoroughness; and (4) never revealed the substance of the advice.  (*See id.* at 153:1-12; 22-154:3.)

13.      The Debtors have closely followed the Court's *Capmark* guidance.  As the EFH Committee itself acknowledges, EFH management and the Disinterested Directors limited their

deposition testimony to the fact that they had consulted with counsel and the Disinterested Director Advisors without disclosing the substance of that advice. (*See* Motion ¶¶ 5-8.) That the Disinterested Directors consulted with their independent counsel in assessing the Disinterested Directors' Settlement is an obvious and uncontroversial fact, and the Debtors have never revealed the substance of privileged advice. The Court should deny the Motion.

## II.    THE EFH COMMITTEE'S "SWORD AND SHIELD" ARGUMENT FAILS.

14.    Moreover, the Debtors have not used privilege as a sword and a shield: instead, they have maintained privilege over *advice* while producing documents and testimony detailing the *process* of reaching the Disinterested Directors' Settlement. The EFH Committee wants the Court to believe that the Debtors have "refused to provide any disclosure" regarding how the Disinterested Directors reached a global settlement of the intra-Debtor claims "under the guise of attorney-client privilege," while relying exclusively on the Disinterested Director Advisors' advice as the sole evidence of the Disinterested Directors' Settlement's reasonableness. (Motion ¶ 10.) The record flatly contradicts that assertion.

15.    *First*, the Debtors will establish that the Disinterested Directors' Settlement is reasonable in part by presenting evidence of the robust *process* by which the Disinterested Directors and the Disinterested Director Advisors reached a global settlement of the intra-Debtor claims, which consisted of months of intensive investigations and then arms'-length negotiations between multiple parties. But the EFH Committee wants it both ways: it has simultaneously challenged the reasonableness of the Disinterested Directors' Settlement and moved to exclude the Debtors' evidence of reasonableness. That the Disinterested Directors consulted with counsel as part of these negotiations is one facet of the multi-layered, contentious process that resulted in the Disinterested Directors' Settlement. That fact should not be excluded.

16.     *Second*, the Debtors are not relying on the attorney-client privilege as a shield to prevent the EFH Committee from gaining insight into the Disinterested Directors' negotiations. The EFH Committee has the presentations shared between the Disinterested Director Advisors that precisely outline the potential value of the intra-Debtor claims, the complex issues underlying those claims, and the risks involved in litigating those claims.  (*See generally*, Disinterested Directors Presentations [D.I. 4145-2; 4145-3; 4145-4; 4146-2].)   Further, the attorney-client privilege has been primarily invoked on this subject when the EFH Committee attempted to elicit testimony regarding privileged conversations between the Disinterested Directors and their counsel.  (*See* Sawyer Tr. 779:13-781:15; Evans Tr. 194:23-196:12; Cremens Tr. 87:25-88:10.)

17.     *Third*, taken to its logical conclusion, the EFH Committee's position would mandate that in order to present evidence of the "fact" that the Disinterested Directors consulted with the Disinterested Director Advisors in determining whether to approve the Disinterested Director Settlement, the Debtors would have to waive privilege and disclose the content of those conversations.  That is not the law.  Courts in the Third Circuit have consistently found that testifying witnesses may refer to advice received from counsel without waiving the attorney-client privilege, implicitly finding that such disclosure is not an abuse of the attorney-client privilege, and the fact that conversations were shared with counsel is not privileged.  *See, e.g.*, *In re Teleglobe Commc'ns Corp. (Teleglobe II)*, 392 B.R. 561, 585-86 (Bankr. D. Del. 2008) (declining to find that privilege had been waived, where defendants' chief legal officer described facts implicating her legal advice); *Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, No. CIV 08-343, 2009 WL 2705932, at *1 (D. Del. Aug. 26, 2009) (holding that witness's

responses go to the fact of conversation with counsel and not the substance of the conversation, thereby preserving privilege).

18.     Relying heavily on *In re Residential Capital, LLC*, 491 B.R. 63 (Bankr. S.D.N.Y. 2013), the EFH Committee argues that the Debtors are "cherry-picking" reliance on counsel evidence.  (*See* Motion ¶¶ 13-16.)  That case presented completely different circumstances than those here.  The debtors in that case "engaged in selective disclosure of legal advice by providing a Limited Waiver to the legal advice given to the [board of directors] . . . while continuing to assert attorney-client privilege to bar discovery of documents or deposition testimony on the same subject matter," thereby "purposely and consistently adopt[ing] the strategy of selective (and extremely limited) disclosure."  *In re Residential Capital*, 491 B.R. at 69-70.

19.      The Debtors have not adopted any such strategy of waiving privilege on a limited and inconsistent basis here—the Debtors have consistently invoked attorney-client privilege to protect the substance of all communications between the Disinterested Directors and their Advisors, while disclosing the history of negotiations between the Disinterested Directors.  (*See generally* Disinterested Directors Presentations [D.I. 4145-2; 4145-3; 4145-4; 4146-2].)

20.     Neither the disclosure of the fact that the Disinterested Directors consulted with their Advisors in assessing the Disinterested Directors' Settlement nor the Disinterested Director Presentations themselves are privileged.  *See, e.g.*, *In re Teleglobe Commc'ns*, 392 B.R. at 585-86; *Dutch Branch of Streamserve*, 2009 WL 2705932, at *1.  The exchange of presentations between EFH, EFIH, and TCEH as part of settlement negotiations is not a waiver of the attorney-client privilege (selective or otherwise).  The EFH Committee's argument is the equivalent of declaring a privilege waiver and demanding an adversary's confidential memorandum to their client whenever the adversary makes a settlement demand.  This is not and cannot be the law.

21.    Accordingly, there is no factual or legal basis for the EFH Committee to argue that the Debtors have "cherry-picked" their evidence, when they have—by the EFH Committee's own admission—consistently refused to disclose the substance of the Disinterested Directors' conversations with their counsel, in terms of both documents and depositions, while thoroughly documenting the arms'-length negotiation that resulted in the Settlement Agreement.  (*See* Motion ¶¶ 5-8.)

## <u>CONCLUSION</u>

WHEREFORE, the Debtors respectfully request that the Court grant the requested relief, sustain the Debtors' objection to the Motion, and permit the Debtors to offer the fact that they relied on counsel into evidence.

[*Remainder of page intentionally left blank.*]

Dated:  October 30, 2015
       Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
William A. Romanowicz (No. 5794)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile:  (302) 651-7701
Email:      collins@rlf.com
           defranceschi@rlf.com
           madron@ rlf.com
           romanowicz@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward A. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
Email:      edward.sassower@kirkland.com
           stephen.hessler@kirland.com
           brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc C. Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:  (312) 862-2000
Facsimile:  (312) 862-2200
Email:      james.sprayregen@kirkland.com
           marc.kieselstein@kirkland.com
           chad.husnick@kirland.com
           steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession