**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re )<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] )<br><br>     *Debtors.* ) | Chapter 11<br>Bankruptcy Case No. 14-10979 (CSS)<br>(Jointly Administered) |

## DEBTORS' OPPOSITION TO EFH COMMITTEE'S MOTION
## *IN LIMINE* TO EXCLUDE EVIDENCE CONCERNING THE VALUE OF ONCOR

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (*pro hac vice*)
Stephen E. Hessler (*pro hac vice*)
Brian E. Schartz (*pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

James H.M. Sprayregen, P.C. (*pro hac vice*)
Marc Kieselstein, P.C. (*pro hac vice*)
Chad J. Husnick (*pro hac vice*)
Steven N. Serajeddini (*pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.      THE DEBTORS ARE NOT TENDERING A WITNESS TO PROVIDE A
        FORMAL VALUATION OF ONCOR. ............................................................................. 3

II.     THE OBJECTORS OPENED THE DOOR TO TESTIMONY REGARDING
        THE DEBTORS' UNDERSTANDING OF ONCOR'S VALUE WHEN
        APPROVING THE PLAN. ............................................................................................... 4

CONCLUSION ...................................................................................................................... 6

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Motors Liquidation Co.*,
    482 B.R. 485 (Bankr. S.D.N.Y. 2012) .......................................................................................3

*In re Winstar Commc'ns, Inc.*,
    348 B.R. 234 (Bankr. D. Del. 2005) .......................................................................................3

**Statutes**

*Chapter 11 of the Bankruptcy Code* ..............................................................................................2

**Other Authorities**

Black's Law Dictionary 1587 (8th Ed. 2004) .................................................................................3

## PRELIMINARY STATEMENT[2]

The EFH Committee's Motion attacks a strawman—the possibility that the Debtors will present formal expert opinion of Oncor's value, which the Debtors and the Court agree is irrelevant to confirmation of the Debtors' Plan—in an attempt to preclude the Debtors from presenting evidence to rebut their objections. While the Debtors have no intention of presenting an expert opinion on Oncor's value, the Objectors opened the door to feasibility testimony generally when they attacked the Plan on the basis that the Merger has no reasonable assurances of closing: *first* the Objectors offered expert opinions that the Purchasers' decision to close would be based on the value of Oncor at emergence—a value on which their experts purport to opine—*then* the Objectors elicited deposition testimony from the Debtors' and the TCEH Ad Hoc Group's financial advisors as to Oncor's value. Having received answers they do not like, the EFH Committee now moves to prevent the Debtors from relying on ***any*** evidence of Oncor's value in rebutting the Objectors' feasibility attacks, while failing to acknowledge the evidence of value they themselves intend to present. The EFH Committee cannot have it both ways. The Motion should be denied.

## BACKGROUND

1.      The EFH Committee and others (collectively, the "Objectors") have objected to (a) the motion by Energy Future Holdings, Corp. and its affiliated debtors and debtors in possession (collectively, the "Debtors") for an order approving the amended and restated settlement agreement (as may be further modified, amended or supplemented from time to time, the "Settlement Agreement"), dated as of September 10, 2015, by and among the Debtors and the other parties

---

[2]      Capitalized terms used, but not otherwise defined in this Preliminary Statement, shall be ascribed the same meanings given to them elsewhere in this Memorandum of Law.

thereto and (b) confirmation of the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (the "Plan").

2.       In support of their objection, the EFH Committee served the Expert Report of Michael Henkin on October 12, 2015.  Among other things, Henkin's report included opinions related to the value of Oncor at emergence.  (*See* Expert Report of Michael Henkin ¶ 55 [D.I. 6743-1].)  Also on October 12, 2015, the Debtors served the Expert Report of David Ying.  Ying's report did not opine on the value of Oncor at emergence, aside from as-imputed by the purchase price.

3.       On both September 23, 2015, and again on October 19, 2015, the Objectors took the expert deposition of Evercore's David Ying.  The EFH Committee asked Ying several questions regarding the post-emergence value of Oncor.  (*See* October 19, 2015 D. Ying Dep. Tr. at 78:2-5 ("Why didn't you provide a valuation . . . of Oncor post-emergence . . . ?"); *id.* at 81:13-15 ("Q. Have you been asked by the company to do a valuation of Oncor at the time of emergence?  A. No.").)  Anticipating the Debtors' rebuttal to the Objectors feasibility arguments, the Objectors sought to elicit testimony from Ying regarding Oncor's value.  Ying testified that the value of Oncor was in the range indicated by the Debtors' Disclosure Statement:

> Q. Have you offered any views on that valuation to the Debtors at any point? A. We have looked at the trading prices for the claims that the T-unsecureds have as well as the T-second liens, and based on that trading price and the terms of the merger agreement, we have imputed a valuation for Oncor as a REIT pro forma for the closing of the merger. That number currently, I think the last time we looked, was a little north of $20 billion.

(September 23, 2015 D. Ying Dep. Tr. at 88:4-14.)

4.       On October 7, 2015, the Objectors elicited ███████████ from the TCEH Ad Hoc Group's financial advisor, Eric Siegert, who ████████████████████████████ ██████████████████████ (October 7, 2015 E. Siegert Dep. Tr. ("Siegert Tr.") at 100:3-19.)

5.     On October 28, 2015, the EFH Committee filed a motion *in limine* ("Motion") to exclude evidence relating to the value of Oncor Electric Delivery Holdings Company LLC ("Oncor"), other than that contained in the Plan or the Disclosure Statement.

## ARGUMENT

### I.    THE DEBTORS ARE NOT TENDERING A WITNESS TO PROVIDE A FORMAL VALUATION OF ONCOR.

6.     The EFH Committee accuses the Debtors and Purchasers of colluding to "secure an expedited hearing . . . by arguing that the future value of Oncor at effectiveness is irrelevant to the Plan, and subsequently try[ing] to backdoor evidence of that future value" at the confirmation hearing.   (Motion ¶ 12.)   This accusation is entirely unfounded.   The Court has already recognized that, because the E-Side creditors will be unimpaired under the Plan, the value of Oncor is irrelevant.  (August 25, 2015 Hearing Tr. at 70:18-21 ("I can't imagine a circumstance in which valuation of Oncor is relevant to the plan that's before the Court. Why is enterprise value relevant? You're getting paid in full, you're unimpaired.").)   The Plan anticipates that Oncor will be sold in a negotiated, arms-length transaction.   The purchase price is the best indication of Oncor's value, and the Debtors have no intention—and no need—to assert otherwise.  *In re Motors Liquidation Co.*, 482 B.R. 485, 494 (Bankr. S.D.N.Y. 2012) (defining fair market value as the "price that a seller is willing to accept and a buyer is willing to pay in the open market and in an arm's-length transaction.") (quoting Black's Law Dictionary 1587 (8th Ed. 2004)); *In re Winstar Commc'ns, Inc.*, 348 B.R. 234, 274 (Bankr. D. Del. 2005) (same).

7.     The EFH Committee's motion seeks a plainly pretextual ruling barring the Debtors from presenting a formal expert opinion of Oncor's value that the Debtors have no intention of offering.  The EFH Committee's proposed order, however, would also act to prevent

the Debtors from offering critical testimony in response to arguments *raised by the Objectors* about Oncor's value.

## II. THE OBJECTORS OPENED THE DOOR TO TESTIMONY REGARDING THE DEBTORS' UNDERSTANDING OF ONCOR'S VALUE WHEN APPROVING THE PLAN.

8.      Through their objections and experts, the Objectors raised the issue of Oncor's value when they challenged the Plan's feasibility and the business judgment and good faith of EFH's Directors in approving the Plan.  Specifically, the Objectors contend that Oncor's value at the time of closing will determine in large part whether or not the Purchasers will close the merger transaction.  (*See, e.g.*, EFH Committee Objection ¶ 243 ("Whether the Purchasers close, the transaction will depend on the value of Oncor at the time of the proposed closing . . . . Rational economic decision-making would suggest that if the value of Oncor is higher than the contractual purchase price, the Purchasers will have an incentive to close . . . , while if the value of Oncor is lower than the contractual price, they likely will exercise their cost-free option to abandon the Plan."); Expert Report of Michael Henkin ¶ 50 ("[T]he final decision by the Purchasers as to whether or not to acquire Oncor has not taken place and will not occur until the transaction needs to be funded."); *see also* Motion ¶ 4 n.3 ("The EFH Committee respectfully maintains that the likelihood of closing depends on the value of Oncor in the future.").)

9.      Indeed, the Objectors themselves first brought up secondary indications of the value of Oncor.  (*See* Expert Report of Michael Henkin ¶ 51 ("In this case, it is only when the Purchasers' decision to acquire Oncor can no longer be deferred that the real option expires and the decision at that point compares in present value the benefit of the assets to their costs, as in standard DCF analysis." (internal quotations omitted)); *id.* ¶ 55 ("The Purchasers' view of the fair market value of Oncor at that point in time will be informed significantly by the market trading values of the rights to acquire New EFH").)  The Objectors have also argued that the

4

Directors' approval of the Merger violated their fiduciary duties. (EFH Committee Objection ¶ 147.) The Debtors must be able to respond to these attacks, but the Motion seeks to bar them from doing so.

10. Because the Objectors opened the door to secondary measures of Oncor's value, the Debtors too may rely on evidence of the Debtors' understanding—when approving the Plan—of Oncor's cash flows, trading multiples, and general indicia of value to counter the Objectors' assertions that the Plan is unlikely to close. Indeed, such calculations were bases for the Directors' approval of the Plan: in deciding to approve the Plan and related transactions, EFH's Directors relied on Evercore's evaluation of the potential increase in Oncor's value that could be achieved through a REIT conversion. (*See* Ex. A, Feb. 26, 2015 Presentation to Board: Restructuring Update, at 39-50 [EFH05547187 at EFH05547226-237] ("Valuation Process Update"); Ex. B Feb. 26, 2015 Minutes of Joint Board Meeting at 2 [EFH05551550 at EFH05551551] ████████████████████████

████████████████████████████████████████████████████

████████.) In part because the February presentation showed that Oncor's valuation as a REIT could be sufficient to unimpair the E-Side creditors, the Debtors' Directors considered REIT-based plan proposals and later exercised their sound business judgment by approving the merger plan.

11. Further, the TCEH Ad Hoc Group's financial advisor, Eric Siegert, independently ████████████████████████████████████████████████ (*See* Siegert Tr. at 59:13-16 ████████████████████████████████████████ ████████████████████████████████████.) This conclusion ████████████████ ████████████████████████████████████

12. The Objectors cannot, through the Motion, seek to prevent the Debtors from providing evidence and testimony on this narrow evidentiary point that the Objectors themselves

put into play, and which they assert to prevent confirmation on the Plan.  While the Debtors have no need for a formal valuation of Oncor, they may present evidence necessary to support the feasibility of the Plan and the good faith and business judgment of their Directors.

## CONCLUSION

The EFH Committee's motion *in limine* to exclude evidence concerning the value of Oncor should be denied to the extent it would restrict the Debtors from presenting evidence to rebut the objections.

[*Remainder of page intentionally left blank.*]

Wilmington, Delaware
Dated:  October 30, 2015

/s/  Jason M. Madron

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                      defranceschi@rlf.com
                      madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            edward.sassower@kirkland.com
                      stephen.hessler@kirkland.com
                      brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                      marc.kieselstein@kirkland.com
                      chad.husnick@kirkland.com
                      steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession