**UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | Re: D.I. 6737 |

# EFH COMMITTEE'S OPPOSITION TO THE DEBTORS' MOTION *IN LIMINE* TO LIMIT THE EXPERT REPORT AND TESTIMONY OF MARK RULE

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...................................................................................................................................2

I.  MR. RULE'S USE OF DUFF & PHELPS' CONTEMPORANEOUS VALUATIONS WAS APPROPRIATE AND THE MATERIALS UPON WHICH MR. RULE RELIED WERE NOT "CHERRY PICKED." .................................. 3

II. MR. RULE'S OPINIONS REGARDING THE INSOLVENCY OF "CONSOLIDATED EFH" ARE RELEVANT. ............................................................... 7

III. MR. RULE'S E-SIDE SOLVENCY ANALYSIS WAS METHODOLOGICALLY SOUND. .................................................................................. 10

IV. THE DEBTORS' MISCONSTRUE MR. RULE'S POST-2012 SOLVENCY ANALYSIS. ........................................................................................ 10

V.  MR. RULE IS NOT OPINING ON THE DEBTORS' *SCIENTER*. ............................... 11

CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

*Floorgraphics, Inc.* v. *News Am. Mktg. In-Store Servs., Inc.*,
  546 F. Supp. 2d 155 (D.N.J. 2008) ......................................................................... 3

*In re Brutsche*,
  No. 11-11-13326 SA, 2012 WL 526047 (Bankr. D. N.M. Feb. 16, 2012) ............... 5

*In re Commercial Fin. Servs., Inc.*,
  350 B.R. 520 (Bankr. N.D. Okla. 2005) ................................................................ 2

*In re Jacoby Airplane Crash Litig.*,
  No. CIV. 99-6073 (HAA), 2007 WL 2746833 (D.N.J. Sept. 19, 2007) ............ 3, 10

*In re Nellson Nutraceutical, Inc.*,
  356 B.R. 364 (Bankr. D. Del. 2006) ....................................................................... 2

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ...................................................................................... 6

*In re TMI Litig.*,
  193 F.3d 613 (3d Cir. 1999) .................................................................................... 2

*Matter of Cont'l Airlines, Inc.*,
  125 B.R. 415 (Bankr. D. Del. 1991) ....................................................................... 9

*Perez* v. *First Bankers Trust Servs., Inc.*,
  Civ. Act. No. 12-4450 (MAS) (DEA), 2015 WL 5722843 (D.N.J. Sept. 29, 2015) ........... 5, 7

*Pineda* v. *Ford Motor Co.*,
  520 F.3d 237 (3d Cir. 2008) ................................................................................ 1, 2

*U.S.* v. *Williams*,
  235 F. App'x 925 (3d Cir. 2007) ............................................................................. 2

*United States* v. *Lee*,
  339 F. App'x 153 (3d Cir. 2009) ............................................................................. 5

*Walker* v. *Gordon*,
  46 F. App'x 691 (3d Cir. 2002) ............................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9019 ..................................................................................................... 1

Fed. R. Evid. 702 ........................................................................................................ 2, 6

S&C Draft of October 26, 2015
PRIVILEGED AND CONFIDENTIAL
ATTORNEY WORK PRODUCT

The official committee of unsecured creditors of Energy Future Holdings Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc. (the "**EFH Committee**") hereby submits this opposition to the Debtors' *Motion* in Limine *to Limit the Expert Report and Testimony of Mark Rule* [D.I. 6737] and the Debtors' *Memorandum of Law in Support of Motion* in Limine *to Limit the Expert Report and Testimony of Mark Rule* [D.I. 6738] (the "**Motion**").

## PRELIMINARY STATEMENT

1.      The Debtors' motion to exclude the solvency portions of the expert report and testimony of Mark F. Rule, CFA, disregards relevant legal standards and misconstrues Mr. Rule's testimony.[2] In large measure, the Debtors' argument is that — according to the Debtors' expert — Mr. Rule's solvency opinions are incorrect or directed to the wrong issues. That position is not a basis to exclude Mr. Rule's testimony but, at most, goes to the weight the Court ultimately will give to the testimony. Similarly, the Debtors' argument that the evidence on which Mr. Rule relied was "cherry picked" — suggesting that he needed to review the millions of pages of documents in the record to present a solvency analysis for use in a plan confirmation and Bankruptcy Rule 9019 hearing — is wrong. Mr. Rule properly relied on contemporaneous third-party valuation opinions performed for the Debtors by Duff & Phelps. Finally, the Debtors mischaracterize Mr. Rule's analysis by asserting that he is offering opinions on issues such as "the Debtors' *scienter*," which he is not. The Motion should be denied.

---

[2]   Mr. Rule offers additional opinions regarding corporate service allocations and exchanges and repurchases of TCEH debt (Expert Report of Mark F. Rule at 24-30), which the Debtors do not challenge.

**ARGUMENT**

2. "The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact." *Pineda* v. *Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). "Relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* (citing Fed. R. Evid. 401)).

3. Likewise, "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Id.* (citing *Kannankeril* v. *Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). Thus, while the Court acts as a "gatekeeper" to ensure that expert opinions meet a standard for reliability, the Third Circuit has "cautioned that the standard for determining reliability 'is not that high.'" *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)), *amended on other grounds*, 199 F.3d 158 (3d Cir. 2000). "'The grounds for the expert's opinion merely have to be good, they do not have to be perfect.'" *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 373 (Bankr. D. Del. 2006) (Sontchi, J.) (quoting *TMI*, 193 F.3d at 665).

4. In particular, "an analysis is not unreliable simply because one can envision a contrary conclusion if different methodological paths are taken or alternative assumptions are made." *In re Commercial Fin. Servs., Inc.*, 350 B.R. 520, 535, 559 (Bankr. N.D. Okla. 2005) (finding that an accountant's testimony, though some or all of her conclusions might ultimately be rejected at trial, was admissible because it was "probative and not palpably irrelevant or unreliable . . . and will assist the Court in resolving factual issues"); *see also U.S.* v. *Williams*, 235 F. App'x 925, 928 (3d Cir. 2007) (unpublished) ("The requirement of reliability is lower than the standard of correctness. A judge can find an expert opinion reliable if it is based on 'good grounds' or methods and procedures of science rather than on subjective belief or

-2-

unsupported speculation." (quoting *Daubert* v. *Merrell Dow Pharm. Inc.*, 509 U.S. 579, 590 (1993))).

5.  An expert's opinion is inadmissible on relevance grounds only if it is "so fundamentally unsupported because the expert fully relies on altered facts and speculation, or fails to consider relevant facts in reaching a conclusion." *In re Nellson Nutraceutical, Inc.*, 356 B.R. at 373.

6.  Where the parties have different positions on the underlying facts "[a]n expert is, nonetheless, permitted to base his opinion on a particular version of disputed facts and the weight to be accorded to that opinion is for the [factfinder]." *Walker* v. *Gordon*, 46 F. App'x 691, 695-96 (3d Cir. 2002) (unpublished).

7.  An expert analysis is not unreliable or irrelevant simply because the opposing party or expert disagrees with one or more of the expert's assumptions. *See Floorgraphics, Inc.* v. *News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 174 (D.N.J. 2008). "[D]isagreement goes to the weight of the evidence, rather than its admissibility." *In re Jacoby Airplane Crash Litig.*, No. CIV. 99-6073 (HAA), 2007 WL 2746833, at *12 (D.N.J. Sept. 19, 2007).

I.  **MR. RULE'S USE OF DUFF & PHELPS' CONTEMPORANEOUS VALUATIONS WAS APPROPRIATE AND THE MATERIALS UPON WHICH MR. RULE RELIED WERE NOT "CHERRY PICKED."**

8.  The Debtors criticize Mr. Rule's use of the contemporaneous asset valuations of Duff & Phelps LLC — a well-known firm employed by the Debtors — as the basis for his solvency analysis and argue that these valuation materials were "cherry-picked." (Debtors' Mem. Supp. Mot. *in Limine* Limit Expert Report & Test. Mark Rule at 9-10 ("**Mem.**").)  This criticism does not withstand scrutiny and is not a valid basis for exclusion.  Mr. Rule's analysis began with the most relevant documents available:  contemporaneous financial

-3-

reports from the Debtors' own financial advisor that went to EFH's Board of Directors throughout the relevant period. (*See* Expert Report of Mark F. Rule at p. 7-9 (listing Duff & Phelps equity valuation analyses prepared on behalf of the company).)

9. As Mr. Rule's report explains, these contemporaneous Duff & Phelps valuations provide a reliable starting point for a solvency analysis. The Duff & Phelps valuations were not documents prepared by parties with a vested interest in a litigation outcome. As Mr. Rule notes, these reports were used by the Debtors for a variety of standard corporate purposes, including the determination of option strike prices, share issuance pricing, computing option expense, federal income tax and goodwill impairment testing. (Expert Report of Mark F. Rule at 9.)

10. Moreover, while the Duff & Phelps valuation reports that Mr. Rule used are not themselves solvency analyses, as the Debtors note (*see* Mem. at 9), that is beside the point. Mr. Rule's analysis does not simply adopt the Duff & Phelps reports. Instead, based on his review and analysis (explained in his report), Mr. Rule concluded that the Duff & Phelps reports constituted a "reasonable contemporaneous starting point" that could be used with necessary adjustments for solvency analyses. (Expert Report of Mark F. Rule at 10-13.) Mr. Rule determined that the Duff & Phelps' reports addressed:

> the key aspects under the Bankruptcy Code for valuing assets for a solvency analysis including: 1) determining the appropriate premise of value (Duff & Phelps used a going-concern premise) and 2) estimating the fair value of the assets (fair value and fair market value standard according to Duff & Phelps). Furthermore, in estimating the fair value of the assets, Duff & Phelps applied generally accepted valuation approaches used to estimate fair value, namely the income approach (Duff & Phelps utilized a DCF analysis) and the market approach (Duff & Phelps utilized a comparable companies market multiples analysis).

(Expert Report of Mark F. Rule at 10-11.)

-4-

11. In explaining his solvency analysis, Mr. Rule also described how he had relied on the Duff & Phelps reports (*e.g.*, "[T]he first step in the Balance Sheet Test is determining the valuation premise. Duff & Phelps valued Consolidated EFH as a going concern. I agree with this premise for purposes of this report."), and where he had departed from Duff & Phelps (*e.g.*, not using a control premium). (Expert Report of Mark F. Rule at 13.)

12. The only basis the Debtors offer for challenging Mr. Rule's reliance on Duff & Phelps prior work is to suggest that Mr. Rule's analysis was, therefore, not "independent." (*See* Mem. at 9.) The Debtors' argument that Mr. Rule's opinions should be excluded because they are not "independent" of the Duff & Phelps reports (Mem. at 9), misunderstands the nature and purpose of the analysis. As Rule testified at deposition (in the section cited by Debtors), what he did was:

> rel[y] upon the contemporaneous valuations done by Duff & Phelps after I analyzed them and became comfortable that they were a reasonable starting point for my solvency analysis.

(Oct. 22, 2015 Rule Depo. Tr. at 20:12-16). There is nothing improper about an expert relying on contemporaneous documents in formulating his opinions, *see Perez* v. *First Bankers Trust Servs., Inc.*, Civ. Act. No. 12-4450 (MAS) (DEA), 2015 WL 5722843, at *3 (D.N.J. Sept. 29, 2015) (finding that reliance on contemporaneous valuations did not impact admissibility of expert report), and Debtors point to no law suggesting otherwise. Likewise, the Debtors do not challenge Mr. Rule's qualifications to perform his solvency evaluation — he is abundantly qualified, as set forth in his report (*see* Expert Report of Mark F. Rule at 4)[3] — and simply fail to

---

[3] Mr. Rule has over 15 years of experience providing operational, financial, valuation, litigation, bankruptcy and other consulting services to clients in diverse industries, including substantial experience in valuation and solvency. Additionally, he holds an MBA from the University of Chicago and is a Chartered Financial Analyst. (*See* Expert Report of Mark F. Rule at 4, Ex. 1.) In the "background" section of their motion the Debtors note that Mr. Rule has not previously testified as an expert (Mem. at 3), but that, of course, is not a basis for exclusion. *See United States* v. *Lee*, 339 F. App'x 153, 159 (3d Cir. 2009) ("That this was [the witness's] first

acknowledge that Mr. Rule and his team spent hundreds of hours performing the analysis that went into his report (Oct. 22, 2015 Rule Depo. Tr. at 15:18-24).

13. Doing an analysis based on previous contemporaneous work was reasonable and appropriate in this case for two further reasons: (1) the available record does not include the sort of underlying contemporaneous projections and back-up necessary to perform a full "ground up" solvency analysis (*see* Oct. 22, 2015 Rule Depo. Tr. at 21:18-22:9); and (2) Mr. Rule's assignment was to conduct an examination of solvency for the limited purpose of use at the Confirmation Hearing. (Expert Report of Mark F. Rule at 1.)

14. Finally, the Debtors' citations to various documents — out of a database of over a million Legacy Discovery documents produced in this bankruptcy proceeding — to suggest that materials "contradicting" his opinions were "withheld" from him is baseless. Mr. Rule's methodology did not require a complete review of the record; he relied on the most relevant contemporaneous valuations available — the Debtors' own.[4] Tellingly, the Debtors do not suggest that the Duff & Phelps reports (that they commissioned) were in any way unreliable or wrong as a matter of substance. If the documents the expert relied upon were not unreliable, the fact that the expert did not examine everything else in the record is not a basis for exclusion. *See* Fed. R. Evid. 702 (an expert witness must base testimony on "sufficient facts or data," not all available). Moreover, the documents the Debtors cite do not call into question Mr. Rule's

---

time testifying as an expert does not undermine [his extensive] qualifications."); *In re Brutsche*, No. 11-11-13326 SA, 2012 WL 526047, at *7 n.15 (Bankr. D. N.M. Feb. 16, 2012) ("Debtor's attorney (probably in jest) suggested [the witness] was not qualified because this was the first time he had testified as an expert . . . . The Court rules that everyone starts somewhere.")

[4] The circumstances here, where Mr. Rule relied upon the Debtors' own contemporaneous Board-reviewed financial data is in no way comparable to that of the expert physician in the only case on this issue cited by Debtors, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 761-12 (3d Cir. 1994) (Mem. at 10), in which the expert relied upon only the plaintiff's self-reported symptoms in connection with a lung cancer diagnosis.

analysis and are, at most, fodder for cross examination:  for example, the Debtors cite a 2012 "draft for discussion" Duff & Phelps report and certain valuations performed by the Sponsors, but do not explain how these documents are more reliable or meaningful than the Duff & Phelps valuations or otherwise undermine Mr. Rule's analysis.  (*See* Mem. at 10.)

## II. MR. RULE'S OPINIONS REGARDING THE INSOLVENCY OF "CONSOLIDATED EFH" ARE RELEVANT.

15. Citing their own expert's (untimely) rebuttal opinion, the Debtors also argue that "[b]ecause EFH and EFIH are not guarantors of T-Side debt obligations, including the negative equity value on the T-Side in a Consolidated EFH calculation, as Rule does" is not appropriate for a fraudulent transfer analysis.  (Mem. at 7 (quoting Rebuttal Report of David Ying at 3).)[5]  The Debtors' argument is without merit.

16. *First*, as the Debtors try to gloss over, Mr. Rule conducted *two* analyses, one of "consolidated" EFH looking at the assets and liabilities of both the "E-Side" and the "T-Side" (Expert Report of Mark F. Rule at 7-19) and a second looking at solely the "E-Side" (*Id.* at 19-23).  Thus, to the extent that Mr. Rule's testimony provides a foundation for a fraudulent transfer analysis premised on the insolvency of EFH, as the Debtors suggest,  Mr. Rule's E-Side analysis addresses this objection.

17. *Second*, the Debtors' speculation as to how Mr. Rule's testimony might be relevant is entirely unrelated to the actual opinions being offered.  Contrary to the implication of

---

[5] The Amended Scheduling Order [D.I. 5771] did not contemplate service of rebuttal reports.  After the Debtors stated that they intended to put in rebuttal testimony to Mr. Rule's report, served on October 12, through Mr. Ying, the EFH Committee sought to obtain any such rebuttal report before Mr. Ying's deposition.  At the time, the Debtors refused to supply a rebuttal report and stated that Mr. Ying would be prepared to explain any rebuttal opinions at deposition.  Mr. Ying was then deposed on October 19, and questioned about his rebuttal opinions (without a report) at that time.  It was only on October 27, eight days *after* Mr. Ying's deposition, and the day after expert discovery closed, that the Debtors served his purported rebuttal report.  This late disclosure was improper and the EFH Committee reserves the right to move to exclude any testimony based on this untimely rebuttal report to the extent it is offered at trial.

-7-

the Debtors' argument, Mr. Rule is not providing a "fraudulent transfer analysis" to which he contends his "consolidated EFH" opinion is relevant. (*See* Mem. at 7-8.) Rather, he is providing an analysis of EFH solvency during 2008 through the Petition Date in the same manner that EFH evaluated its solvency at that time. (*See* Expert Report of Mark F. Rule at 13-24.)

18.  This solvency analysis of "consolidated EFH"—as opposed to Rule's separate "E-Side" only analysis—is relevant, *inter alia*, because throughout the course of this bankruptcy proceeding, the "T-Side" debtors have consistently failed to recognize a key point (which they now appear to concede in their motion): that EFH has two independent debt "silos." (Mem. at 1.)[6] Indeed, the T-Side Debtors have consistently taken the contrary position — that their consent is required for emergence and that they are entitled to a large "inter-silo" payment from the E-Side.[7] Even in their motion to exclude Mr. Rule's testimony, the Debtors carefully phrase their objection by stating that Mr. Rule's approach results in "the T-Side's *alleged* insolvency dragging down EFH's own equity value" (Mem. at 2 (emphasis supplied)), without conceding that the T-Side was insolvent. Thus, to the extent the T-Side debtors continue to advance this position at the hearing, the solvency of both sides taken together may be relevant to several issues including the treatment of the T-Side's claimed entitlement to inter-silo payments.

19.  The Debtors also fail to mention that they consistently evaluated and publicly reported their own solvency and financial performance on a consolidated basis both at the time of the LBO and repeatedly throughout the time period covered by Mr. Rule's report.

---

[6] The Debtors also complain that "Rule, however, does not opine on EFH's solvency in connection with the 2007 LBO." (Mem. at 1.) It is difficult to understand this criticism; the objections of the EFH Committee to the approval of the Settlement and confirmation of the Plan are not dependent on such an opinion, and the fact that Mr. Rule does not offer this opinion has nothing to do with the admissibility of his testimony.

[7] (*See generally* Trial Brief and Omnibus Objection of the EFH Official Committee [D.I. 6647] at 21-22, 46-47, 51-54, 58.)

Likewise, the EFH Board, including the Sponsor Directors, analyzed the company's solvency during the relevant period on a consolidated basis.  At a Board Strategy Session in October 2011, for example, the Board ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████

20.     The Debtors also argue that Mr. Rule's solvency analyses are irrelevant because he analyzed solvency at year end for each year, rather than "as of every other date in between." (Mem. at 8.)  This argument is specious.  Mr. Rule properly analyzed solvency at year end for each of the years from 2008 and 2012, based on year-end valuation and financial information, and, based on this analysis, properly concluded that "consolidated EFH" and the "E-Side" were each "insolvent from December 2008 *through* December 2012." (Expert Report of Mark F. Rule at 14 (emphasis added).)  There is no basis for the Debtors' speculation that EFH became solvent on certain days in between year ends and no legal requirement that a separate solvency analysis be conducted for every single day.  *See also Matter of Cont'l Airlines, Inc.*, 125 B.R. 415, 417 (Bankr. D. Del. 1991) (noting that solvency analysis is "at best an inexact science" that may sometimes be "close to impossible as a practical matter").[8]

---

[8]  In his analysis, Mr. Rule also looked at two interim period Duff & Phelps valuations and noted that they would not alter his conclusion. (Expert Report of Mark F. Rule at 10 n.23.)

### III. MR. RULE'S E-SIDE SOLVENCY ANALYSIS WAS METHODOLOGICALLY SOUND.

21. Like its criticism of Mr. Rule's analysis of "consolidated EFH," the Debtors' assertions that Mr. Rule's E-Side solvency analysis is deficient are based on the differing view of the Debtors' expert, rather than an appropriate challenge to Mr. Rule's methodology. (*See* Mem. at 7.) The Debtors quote their expert for the proposition that "[b]ecause EFIH is solvent without attributing any value to EFH debt held by EFIH, it is not appropriate to include that debt as an asset of EFIH and a liability of EFH." (*Id.* at 11.) That opinion of Debtors' expert, however, is unsupported by any citation to the law or other authority. In fact, as Mr. Rule explains in his analysis, a solvency analysis generally requires that debt instruments be treated at face value for purposes of assessing liabilities and at fair value for purposes of assessing assets. (Expert Report of Mark F. Rule at 9.) Because the debt at issue consisted of marketable securities, with EFH holding the liability and EFIH, a different legal entity, holding the asset, Mr. Rule determined that it should be treated consistent with the usual rule. (*See* Oct. 22, 2015 Rule Depo. Tr. at 115:2-117:21.) That the Debtors' expert, Mr. Ying, took a different view, is not a basis for exclusion of Mr. Rule's opinion. *See In re Jacoby Airplane Crash Litig.*, No. CIV. 99-6073 (HAA), 2007 WL 2746833, at *12.

### IV. THE DEBTORS' MISCONSTRUE MR. RULE'S POST-2012 SOLVENCY ANALYSIS.

22. The Debtors seek to exclude Mr. Rule's post-2012 analysis on the ground that it is supposedly based on incorrect assumptions and "overlooks key facts." (Mem. at 12.) Here, again, the Debtors fail to support their argument and mischaracterize Mr. Rule's opinions.

23. Because Duff & Phelps valuation reports were not available for the period after December 2012, Mr. Rule did not seek to conduct the same solvency analysis during that time period that he had for 2008-2012. (*See* Expert Report of Mark F. Rule at 18-19, 22-23.)

-10-

Instead, having already reached conclusions on insolvency for the 2008-2012 period (and knowing that the Debtors, in fact, filed for bankruptcy in April 2014), Mr. Rule "reviewed and analyzed the publicly available information . . . to assess if there is any indication that the E-Side became solvent after December 2012." (*Id.* at 22; *see also id.* at 18 (same for consolidated EFH).) In doing that analysis, he weighed both factors indicating increasing solvency (*e.g.*, increased EBITDA at Oncor) and factors indicating that insolvency continued (*e.g.*, potential off-balance sheet liabilities). (*Id.* at 22.) He also examined the trading price of EFH debt during this period. (*Id.* at 22-23.) Based on this analysis, he concluded that the information he reviewed did not indicate that Consolidated EFH or the E-Side had become solvent during this period.[9] (*Id.*) The Debtors' disagreement with this analysis is not a proper ground for exclusion.

## V.     MR. RULE IS NOT OPINING ON THE DEBTORS' *SCIENTER.*

24.     The Debtors' final argument — that Mr. Rule improperly opines on the Debtors' *scienter* (Mem. at 12-13) — is groundless. Mr. Rule is not offering an opinion on the *scienter* of any party. Instead, in addition to his primary solvency analysis, Mr. Rule has referred to additional documents produced in discovery indicating that the Debtors and Sponsors at times stated or implied that EFH was insolvent. (*See* Expert Report of Mark F. Rule at 15-17.) That Mr. Rule has characterized these documents as, for example, "the 2011 analysis of EFH management" (*see* Mem. at 13) is not an opinion regarding *scienter*.

---

[9]  Mr. Rule examined the trading prices of EFH debt from 2008 through 2012 as well. The trading prices of EFH debt from 2008 through 2012 support his opinions regarding insolvency. (*See* Expert Report of Mark F. Rule at 18.)

**CONCLUSION**

For the foregoing reasons, the EFH Committee respectfully requests that the Court deny the Debtors' *Motion* in Limine *to Limit the Expert Report and Testimony of Mark Rule*.

| | |
|---|---|
| Dated:  Wilmington, Delaware<br>October 30, 2015 | **SULLIVAN & CROMWELL LLP**<br><br>*s/    Brian D. Glueckstein*<br>Andrew G. Dietderich<br>Brian D. Glueckstein<br>John L. Hardiman<br>Alexa J. Kranzley<br>125 Broad Street<br>New York, New York  10004<br>Telephone:     (212) 558-4000<br>Facsimile:      (212) 558-3588<br>E-mail:           dietdericha@sullcrom.com<br>                       gluecksteinb@sullcrom.com<br>                       hardimanj@sullcrom.com<br>                       kranzleya@sullcrom.com<br><br>– and –<br><br>**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**<br><br>Natalie D. Ramsey (DE Bar No. 5378)<br>Sidney S. Liebesman (DE Bar No. 3702)<br>Mark Sheppard (admitted Pro Hac Vice)<br>Mark A. Fink (DE Bar No. 3946)<br>1105 North Market Street, 15th Floor<br>Wilmington, DE  19801<br>Telephone:     (302) 504-7800<br>Facsimile:      (302) 504 -7820<br>E-mail:           nramsey@mmwr.com<br>                       sliebesman@mmwr.com<br>                       msheppard@mmwr.com<br>                       mfink@mmwr.com<br><br>*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc.* |