**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
|  | **Re: D.I. 6742** |

**EFH COMMITTEE'S OPPOSITION TO THE DEBTORS' MOTION *IN LIMINE* TO LIMIT THE EXPERT REPORT AND TESTIMONY OF MICHAEL HENKIN**

---

[1]    The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .................................................................................................................. 3

   I.    MR. HENKIN'S OPINIONS REGARDING THE MERGER AGREEMENT
        ARE RELEVANT AND ADMISSIBLE EXPERT TESTIMONY.................................. 4

      A.   Mr. Henkin's Opinion Concerning the Lack of Remedies and the
          Effective Optionality of the Transaction in the Plan is Reliable and Relevant. ............. 5

      B.   Mr. Henkin's Opinion Concerning Conditionality is Reliable and Relevant. ................ 9

      C.   Mr. Henkin's Opinion that There Are No Reasonable Assurances that
          the Merger Will Close is Reliable and Relevant. ......................................................... 10

   II.   MR. HENKIN'S VALUATION OF TCEH USED THE DEBTORS' OWN
        PRIOR METHODOLOGY ███████████████████████████
        ███████████████████████ ....................................................................... 11

CONCLUSION............................................................................................................... 12

SC1:3979296.1B

# TABLE OF AUTHORITIES

**CASES**

*Bazemore* v. *Friday*,
478 U.S. 385 (1986)................................................................................................6

*Carnegie Mellon Univ.* v. *Marvell Tech. Grp.*,
No. CIV.A. 09-290, 2012 WL 6562221 (W.D. Pa. Dec. 15, 2012).......................12

*In re Commercial Fin. Servs., Inc.*,
350 B.R. 520 (Bankr. N.D. Okla. 2005) .............................................................4, 9

*Daubert* v. *Merrell Dow Pham. Inc.*,
509 U.S. 579 (1993)................................................................................................4

*Floorgraphics, Inc.* v. *News Am. Mktg. In-Store Servs., Inc.*,
546 F. Supp. 2d 155 (D.N.J. 2008) ........................................................................4

*Holbrook* v. *Lykes Bros. S.S. Co.*,
80 F.3d 777 (3d Cir. 1996)....................................................................................12

*In re Jacoby Airplane Crash Litig.*,
No. CIV. 99-6073 (HAA), 2007 WL 2746833 (D.N.J. Sept. 19, 2007)...............2, 4

*Kannankeril* v. *Terminix Int'l, Inc.*,
128 F.3d 802 (3d Cir. 1997)....................................................................................3

*Kumho Tire Co.* v. *Carmichael*,
526 U.S. 137 (1999)............................................................................................9, 11

*In re Linerboard Antitrust Litig.*,
497 F. Supp. 2d 666 (E.D. Pa. 2007) .....................................................................6

*In re Nellson Nutraceutical, Inc.*,
356 B.R. 364 (Bankr. D. Del. 2006) .......................................................................4

*In re Paoli R.R. Yard PCB Litig.*,
35 F.3d 717 (3d Cir. 1994).......................................................................................3

*Pineda* v. *Ford Motor Co.*,
520 F.3d 237 (3d Cir. 2008)............................................................................3, 7, 12

*In re Premier Int'l Holdings, Inc.*,
No. 09-12019 (CSS), 2010 WL 2745964 (Bankr. D. Del. Apr. 29, 2010) ..............8

*Simpson* v. *Betteroads Asphalt Corp.*,
No. CIVIL 2011-056, 2013 WL 2255472 (D.V.I. May 18, 2013) .........................10

SC1:3979296.1B

-ii-

*In re TMI Litig.*,
     193 F.3d 613 (3d Cir. 1999)......................................................................................3, 4

*Total Control, Inc.* v. *Danaher Corp.*,
     338 F. Supp. 2d 566 (E.D. Pa. 2004) ...................................................................11

*U.S.* v. *Williams*,
     235 F. App'x 925 (3d Cir. 2007) ............................................................................4

*Wells Fargo & Co.* v. *United States*,
     91 Fed. Cl. 35 (2010) ...........................................................................................11

## OTHER AUTHORITIES

Aswath Damodaran, *Real Options, Acquisition Valuation and Value
     Enhancement*, at 10 (2012) ...................................................................................8

Fed. R. Evid. 401 ...........................................................................................................3

Fed. R. Evid. 702 ..........................................................................................7, 9, 11, 12

SC1:3979296.1B

The official committee of unsecured creditors of Energy Future Holdings

Corporation ("**EFH**"), Energy Future Intermediate Holding Company LLC, EFIH Finance Inc.,

and EECI, Inc. (the "**EFH Committee**") hereby submits this opposition to the *Debtors' Motion*

in Limine *to Limit the Expert Report and Testimony of Michael Henkin* [D.I. 6742] and the

*Debtors' Memorandum in Support of Its Motion* in Limine *to Limit the Expert Report and*

*Testimony of Michael Henkin* [D.I. 6743] (the "**Motion**").

PRELIMINARY STATEMENT

1.       In their motion to exclude certain of Mr. Henkin's expert opinions, the

Debtors mischaracterize his testimony and analysis and misapprehend the law.  The Debtors seek

to exclude four opinions (of six) that Mr. Henkin offers on the grounds that Mr. Henkin is, the

Debtors' assert, not providing expert testimony or that his opinions are "unhelpful" or

"irrelevant."[2]  In fact, Mr. Henkin's opinions are grounded in his extensive experience and

expertise as an investment banker (*see generally* Expert Report of Michael Henkin at 1-2, App.

A), and apply methodologies that the Debtors' own expert investment banker has used and

agreed are valid.  The Debtors' motion to exclude Mr. Henkin's testimony is without merit.

2.       The Debtors seek to exclude three (of four) of Mr. Henkin's opinions

relating to his analysis of the nature and structure of the merger agreement underlying the Plan

(the "**Merger Agreement**").  In challenging these opinions, however—in particular, Mr.

---

[2]       The Debtors do not dispute the admissibility of Mr. Henkin's third opinion, that the "Purchasers and Plan Sponsors can be expected to make their decision to close the merger based on whether the perceived value of the new EFH Common Stock exceeds the sum of: (A) the purchase price plus (B) additional payments to be received by certain Plan Sponsors in the event the merger does not close." (*See* Debtors' Mem. Supp. Mot. in Limine Limit Expert Report & Test. Michael Henkin; Expert Report of Michael Henkin at 24-27.) Nor do they challenge his fifth opinion, that "the interest rate paid by EFH to TCEH in connection with the intercompany promissory notes originally issued in October 2007 and repaid in full in 2013 was reasonable and represented reasonably equivalent value in exchange for the advancing of credit during that period." (*See* Mem.; Expert Report of Michael Henkin at 31-44.)

Henkin's "Opinion 4" that there are "no reasonable assurances" that the transaction will close—the Debtors fail to recognize that that the opinions build upon each other.  First, Mr. Henkin analyzed comparable transactions to inform his "Opinion 1," that the transaction proposed in the Plan fails to provide seller remedies that are typically essential in—and present in virtually all—deals of this type.  Second, Mr. Henkin analyzed the deal structure, incentives, and conditions to closing to determine in his "Opinion 2" that the transaction proposed in the Plan is "akin to an option" and reflects a "significant" degree of conditionality.  Third, in his "Opinion 3" (which the Debtors do not contest), Mr. Henkin analyzed the financial considerations that will influence whether the purchasing consortium under the Plan (the "**Purchasers**") will close the transaction.  Finally, relying on those analyses and the information provided to the Debtors' board of directors (the "**Board**") regarding the proposed transaction, Mr. Henkin opines that in his professional judgment there are no reasonable assurances that the transaction described in the Plan will close.  All of this—looking at comparable market transactions, analyzing the deal structure and terms, considering the information available and the likelihood that the transaction will be consummated—is precisely the analysis that any investment banker would undertake when evaluating a proposed transaction.  While the Debtors may disagree with parts of Mr. Henkin's analysis, at best, those "disagreement[s] go[] to the weight of the evidence, rather than its admissibility."  *See In re Jacoby Airplane Crash Litig.*, No. CIV. 99-6073 (HAA), 2007 WL 2746833, at *12 (D.N.J. Sept. 19, 2007).  The Court should deny the Debtors' Motion with respect to Mr. Henkin's opinions concerning the Merger Agreement.

3.      The Debtors' Motion also takes issue with Mr. Henkin's methodology in estimating the value of TCEH, which underlies his "Opinion 6" that there will be no tax liability to EFH upon a disposition of TCEH in a transaction utilizing EFH's Net Operating Losses

("**NOLs**").  However, the methodology that Debtors now criticize as "insufficiently reliable to be helpful to the Court" is the exact same methodology that Debtors' used as the basis for the Debtors' prior statements to this Court on this issue.  (*See* [D.I. 98], Ex. E at 1 n.2.)  Mr. Henkin's analysis effectively updates the Debtors' own (outdated) calculations based on the circumstances existing at present (*i.e.*, using the numbers available as of October 8, 2015, four days before Mr. Henkin's report was submitted).  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## ARGUMENT

4.      "The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact."  *Pineda* v. *Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).  "Relevant evidence" means "'evidence having *any* tendency to make the existence of *any* fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"  *Id.* (quoting Fed. R. Evid. 401).

5.      Likewise, "'Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility.'"  *Id.* (quoting *Kannankeril* v. *Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)).  Thus, while the Court acts as a "gatekeeper" to ensure that expert opinions meet a standard for reliability, the Third Circuit has "cautioned that the standard for determining reliability 'is not that high.'"  *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)), *amended on other grounds*, 199 F.3d 158 (3d Cir. 2000).  "'The grounds for the expert's opinion merely have to be good, they do not

SC1:3979296.1B

have to be perfect.'" *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 373 (Bankr. D. Del. 2006) (Sontchi, J.) (quoting *TMI*, 193 F.3d at 665).

6.      In particular, "an analysis is not unreliable simply because one can envision a contrary conclusion if different methodological paths are taken or alternative assumptions are made." *In re Commercial Fin. Servs., Inc.*, 350 B.R. 520, 535 (Bankr. N.D. Okla. 2005) (finding that an accountant's testimony, though some or all of her conclusions might ultimately be rejected at trial, was admissible because it was "probative and not palpably irrelevant or unreliable . . . and will assist the Court in resolving factual issues"); *see also U.S.* v. *Williams*, 235 F. App'x 925, 928 (3d Cir. 2007) (unpublished) ("The requirement of reliability is lower than the standard of correctness.  A judge can find an expert opinion reliable if it is based on 'good grounds' or methods and procedures of science rather than on subjective belief or unsupported speculation" (quoting *Daubert* v. *Merrell Dow Pham. Inc.*, 509 U.S. 579, 590 (1993))).  An expert's opinion is inadmissible on relevance grounds only if it is "so fundamentally unsupported because the expert fully relies on altered facts and speculation, or fails to consider relevant facts in reaching a conclusion." *In re Nellson*, 356 B.R. at 373.

7.      Nor is an expert's analysis unreliable or irrelevant simply because the opposing party or expert disagrees with one or more of the expert's assumptions.  *See Floorgraphics, Inc.* v. *News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 174 (D.N.J. 2008). "[D]isagreement goes to the weight of the evidence, rather than its admissibility." *In re Jacoby*, 2007 WL 2746833, at *12.

## I.      MR. HENKIN'S OPINIONS REGARDING THE MERGER AGREEMENT ARE RELEVANT AND ADMISSIBLE EXPERT TESTIMONY.

8.      Mr. Henkin offers four related opinions regarding the Merger Agreement.  The Debtors attempt to challenge in isolation Mr. Henkin's fourth opinion that there are no

-4-

reasonable assurances that the merger will close as simply "highlighting" record evidence, but that opinion is a product of both his expert analysis of the record evidence and the analyses underlying his first three opinions.  (*See* Expert Report of Michael Henkin at 30-31 ("Based on my assessment of the factors and the risks outlined in the Board Presentations in support of the Merger and Purchase Agreement, *as well as the analyses set forth in Opinions I-III*, above, it is my opinion that there are no reasonable assurances that the Merger will close." (emphasis added)).).  In particular, Mr. Henkin's analyses include:  (1) Mr. Henkin's determination that the proposed transaction is inconsistent with industry norms because it excludes seller remedies found in comparable large utility M&A transactions and large bankruptcy sale transactions (based on a detailed survey and analysis Mr. Henkin and his team conducted, and which the Debtors' investment banker agreed was appropriate); (2) his assessment that based on multiple uncertainties and contingencies there is a "significant" degree of conditionality imbedded in the transaction; and (3) the nature of the Board's considerations regarding the likelihood of closing. Mr. Henkin is qualified to testify on these subjects—the Debtors do not challenge Mr. Henkin's qualifications as an investment banker to offer his opinions concerning the Merger Agreement[3]—and each of those opinions is reliable and relevant.

> A.    Mr. Henkin's Opinion Concerning the Lack of Remedies and the Effective Optionality of the Transaction in the Plan is Reliable and Relevant.

9.    Mr. Henkin conducted a broad-based survey and analysis of recent merger agreements for large utility M&A transactions and large bankruptcy sale transactions, and also reviewed and evaluated relevant published literature.  That analysis furnishes important context for understanding what terms are expected in comparable transactions.  It brings into sharp relief

---

[3]    Notably, Mr. Henkin has been qualified as an expert by bankruptcy courts in numerous prior cases.  (*See* Expert Report of Michael Henkin at 2.)

SC1:3979296.1B

the absence of seller remedies in the transaction contemplated by the Plan.  A comparative

review of this type is precisely the sort of analysis that an investment banker would perform, and

Mr. Henkin applied the same level of "intellectual rigor" that other practitioners in his field

would to this analysis.

10.     The Debtors' attempt to call the "granularity" of Mr. Henkin's methodology into

question falls flat.  The Debtors contend that the analysis failed to account for various details in

the 35 benchmark transactions in Mr. Henkin's survey.  Notably, their own expert Mr. Ying, the

Debtors' financial advisor and an investment banker, agreed at his deposition that "the factual

comparable company sets that [Mr. Henkin] looked at were – are appropriate."  (Oct. 19, 2015

Ying Depo. Tr. at 95:12-15.)  In any event, the notion that expert analysis should be excluded for

failure to account for "all measurable variables thought to have an effect"  is "plainly incorrect."

*Bazemore* v. *Friday*, 478 U.S. 385, 400 (1986).  "Normally, failure to include variables will

affect the analysis' probativeness, not its admissibility."  *In re Linerboard Antitrust Litig.*, 497 F.

Supp. 2d 666, 678 (E.D. Pa. 2007).  This is especially true here, where the analysis is a survey of

comparable transactions showing that, unlike every other recent deal, this Merger Agreement

provides the seller with no specific performance[4] or monetary remedies.  Moreover, no survey

examining particular transaction features (here, seller remedies) would seek to explain every

detail of every provision in the underlying transactions; doing so would be to miss the forest for

the trees.

11.     The Debtors' contention that Mr. Henkin's comparative analysis is irrelevant—

based on their assertion that this transaction is so large and complex that it "does not invite a

---

[4]     The distinction pressed by the Debtors between "full" and "limited" specific performance (Mem. ¶ 37) is
irrelevant because the Merger Agreement has no specific performance remedy at all for the sellers.

SC1:3979296.1B

'customary' approach" (Mem. ¶ 38)—also provides no basis to exclude his testimony at trial.  As the results of Mr. Henkin's comparative analysis show, merger remedies (or here, the lack thereof) are highly relevant to the analysis of the structure of the proposed merger transaction and its feasibility.  The Debtors are free to attempt to establish at trial that the existence of such remedies is somehow not an important factor affecting the feasibility of this proposed transaction, but they have offered no basis on which to *exclude* Mr. Henkin's testimony under Rule 702's "liberal policy of admissibility," *Pineda*, 520 F.3d at 243, given the relevance of this testimony to the objections of the EFH Committee.

12.    Moreover, the Debtors simply misconstrue Mr. Henkin's analysis when they state that it "wholly ignores the effect of disarmament and drag on the deal."  (Mem. ¶ 37.)  Mr. Henkin explained in his report and at his deposition that, given the way the Settlement and Plan have been structured, disarmament can be considered neither a remedy to the seller nor an incentive for the buyer, because it will occur whether or not the deal closes, so long as the Settlement is approved.  (*See* Expert Report of Michael Henkin at 24 ("[T]he Settlement Agreement will have no economic bearing on whether the Purchasers will consummate the Merger at closing."); Oct. 21, 2015 Henkin Depo. Tr. at 198:18-22.)  And as Mr. Henkin also explained, he did not attempt to value the "drag" right because it is not a remedy designed to ensure the merger transaction set forth in the Plan will close and, in any event, is "very difficult" to convert into a dollar value because it would require drawing a "direct correlation between . . . a shortening of the case and having the drag right."  (Oct. 21, 2015 Henkin Depo.

Tr. at 189:9-22.)  Notably, none of the Debtors' experts have offered a valuation of the drag right

or explained how it assures the proposed merger will close.[5]

13.    The Debtors further argue that Mr. Henkin's analysis of the structure of the

Merger Agreement as "akin" to an option is "belie[d]" by the fiduciary out provision, and that

his "Opinion 2" thus would not assist the Court.[6]  Again, that is wrong.  The existence of a

fiduciary out does nothing to affect the reliability of Mr. Henkin's opinion regarding the

optionality of the transaction:  the Purchasers in this transaction still have the option to close or

not to close, and they have the exclusive right to do so (*i.e.*, they are the only parties that can

close the transaction on the table).  Indeed, the existence of a fiduciary out merely adds more

uncertainty to the transaction.  Moreover, as explained by the sources cited in Mr. Henkin's

report, a real option's "exclusivity" exists on a spectrum.  *See* Aswath Damodaran, *Real Options,*

*Acquisition Valuation and Value Enhancement*, at 10 (2012) ("[Real options] become less

valuable as the barriers to competition become less steep.").  (*See also* Henkin Depo. Tr. at

175:16-17).  The option is still an option even if it is not "exclusive" in every way, and the

possibility of a topping bid does not change the fact that the Merger Agreement permits the

Purchasers to choose unilaterally not to close.  Indeed, as set forth in Mr. Henkin's report,

numerous presentations to the Board described the Merger Agreement as granting an option.

(Expert Report of Michael Henkin at 28-30.)

---

[5]    The Debtors bear the burden of proof of establishing the feasibility of the Plan.  *See In re Premier Int'l Holdings, Inc.*, No. 09-12019 (CSS), 2010 WL 2745964, at *4 (Bankr. D. Del. Apr. 29, 2010).

[6]    The Debtors' motion disregards that Mr. Henkin described the structure of the Merger Agreement as "akin" to an option.  Their claim that he has not demonstrated that the agreement *is* an unconditionally exclusive option is little more than a failed attempt at "gotcha" that has nothing to do with the substance of Mr. Henkin's analysis.

SC1:3979296.1B

      B.      Mr. Henkin's Opinion Concerning Conditionality is Reliable and Relevant.

14.     The Debtors' Motion itself highlights the correctness of Mr. Henkin's view that there is a great deal of conditionality in the deal.  (*See* Mem. ¶ 23.)  Some of the conditions to closing include:  "(a) regulatory and tax approvals; (b) the availability of debt and equity financing; (c) that no Plan Support Termination Event has occurred (as defined in the Plan Support Agreement); (d) Bankruptcy Court approval of the Settlement Agreement; (e) no allowed make-whole claims against EFH or EFIH and (f) achievement of certain deal milestones and deadlines."  (Expert Report of Michael Henkin at 15.)  The purpose of Mr. Henkin's analysis was not to place a numerical probability figure on each of these conditions to derive a precise quantitative likelihood of closing—which would be a fool's errand—but to explain how, overall, this transaction has many hurdles to completion, some of which are especially concerning because of the high degree of complexity and relative novelty of converting a large regulated energy company into a REIT.  Notably, although the Debtors are proponents of the Plan, none of their experts provide a numerical probability that the transaction will close.  Nothing in Rule 702 requires Mr. Henkin to do so, as long as his methodology "characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.* v. *Carmichael*, 526 U.S. 137, 152 (1999); *see also In re Commercial Fin. Servs., Inc.*, 350 B.R. at 535 ("[A]n analysis is not unreliable simply because one can envision a contrary conclusion if different methodological paths are taken or alternative assumptions are made.").  Mr. Henkin applied his substantial expertise and experience as an investment banker in analyzing the magnitude and number of conditions in this deal to inform his expert opinions.

SC1:3979296.1B

C.    Mr. Henkin's Opinion that There Are No Reasonable Assurances that the Merger Will Close is Reliable and Relevant.

15.    The Debtors contend that Mr. Henkin's opinion that there are no reasonable assurances that the transaction contemplated by the Plan will close should be excluded because he is relying upon statements in the record, which the Debtors' characterize as "merely attorney argument." (Mem. ¶ 24.)  The Debtors' position is incorrect.

16.    Mr. Henkin has done far more than the "summary" of contractual provisions that was excluded in *Simpson* v. *Betteroads Asphalt Corp.*, No. CIVIL 2011-056, 2013 WL 2255472, at *2 (D.V.I. May 18, 2013), cited by the Debtors.  As noted, Mr. Henkin's opinion regarding the lack of reasonable assurances that the merger transaction will close was based on and informed by his three previous opinions regarding the lack of remedies, optionality, and conditionality.  To perform these analyses, he has called upon the "specialized knowledge" that he has gained through his many years of experience in complex M&A and restructuring transactions like the one contemplated by the Plan.  That is the same kind of analysis Mr. Henkin has performed throughout his career to advise clients, including boards of directors, about transaction feasibility and the likelihood that a deal will close.

17.    In addition to his own independent analysis of the transaction, Mr. Henkin also considered the actual advice given to the Board in the form of PowerPoint presentations.  (*See* Expert Report of Michael Henkin at 27-31.)  These presentations were created by advisors to the Board—restructuring professionals like Mr. Henkin—and are the same types of presentations that Mr. Henkin would give as a financial advisor when advising a board of directors of the likelihood that a transaction will close.  In reviewing the presentations, based on his expertise and experience combined with all the other analyses contained in his report, he concluded that the Board was never "provided with a basis to conclude that there were reasonable assurances

-10-

that the Merger would close." (*Id.* at 30.) Considering all of the analysis described above, he

formed the opinion that there are no reasonable assurances that the transaction contemplated by

the Plan will close. *See also Total Control, Inc.* v. *Danaher Corp.*, 338 F. Supp. 2d 566, 570

(E.D. Pa. 2004) ("[E]xpert testimony is admissible if it will simply assist the trier of fact to

understand the facts already in the record.").

18.     Even if the Debtors believe they have arguments that go to the *weight* of Mr.

Henkin's opinions, those opinions still will assist the Court by providing precisely the sort of

"technical or specialized knowledge"—in this case, that of an investment banker—that Rule 702

describes. *See Wells Fargo & Co.* v. *United States*, 91 Fed. Cl. 35, 74 (2010) (finding "helpful

to the analysis of the relevant issues" expert testimony evaluating the likelihood that certain

"tax-exempt entities would be likely to exercise their fixed purchase options").

## II.     MR. HENKIN'S VALUATION OF TCEH USED THE DEBTORS' OWN PRIOR METHODOLOGY ███████████████████████ ████████████████████████████

19.     In asking this Court to exclude Mr. Henkin's opinion that there will be no tax

liability to EFH upon a disposition of TCEH in a transaction utilizing EFH's NOLs, the Debtors

contend that Mr. Henkin's methodology for valuing TCEH was overly "simplistic" and

"speculative." The Debtors fail to mention, however, that their own advisors used precisely the

same methodology in advising the Debtors, and that the Debtors relied on a valuation using that

methodology in submissions to this Court. (*See* [D.I. 98], Ex. E at 1 n.2.) Mr. Henkin updated

the prior valuation that the Debtors and their advisors had performed to account for the relevant

changes in market conditions since that time. The Debtors have failed to show that, by using the

same methodology to update the Debtors' much older valuation, Mr. Henkin has failed to apply

"the same level of intellectual rigor that characterizes the practice of an expert in the relevant

field." *Kumho Tire*, 526 U.S. at 152.

20.     Moreover, the Debtors' challenge to Mr. Henkin's opinion on TCEH's implied

value is particularly strange ███████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████[7] And while all agree that it is *possible* that the actual valuation of

TCEH will be different at emergence, Mr. Henkin's current value is still relevant to this Court's

consideration of the issues in this matter. ████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████

## CONCLUSION

For the foregoing reasons, the EFH Committee respectfully requests that the

Court deny the Debtors' *Motion* in Limine *to Limit the Expert Report and Testimony of Michael

Henkin* [D.I. 6742].

---

[7]     To the extent that the Debtors imply that Mr. Henkin lacks the requisite qualifications to offer this opinion because he is not a tax expert (*see* Mem. ¶ 27), they are wrong.  Mr. Henkin's opinion is not a "tax" opinion, but an analysis of value relating to an input in a tax analysis the Debtors have performed.  There is no dispute about the "tax" aspect of Mr. Henkin's opinion.  Moreover, "'it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate.'" *Carnegie Mellon Univ.* v. *Marvell Tech. Grp.*, No. CIV.A. 09-290, 2012 WL 6562221, at *11 (W.D. Pa. Dec. 15, 2012) (quoting *Holbrook* v. *Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996)); *see also Pineda*, 520 F.3d at 245 (reversing the district court and holding that expert should have been qualified under Rule 702 even if he was not the "best qualified" expert or possessed the precise "specialization" that the district court deemed appropriate).

SC1:3979296.1B

Dated:  Wilmington, Delaware
        October 30, 2015

**SULLIVAN & CROMWELL LLP**

*s/    Brian D. Glueckstein*
Andrew G. Dietderich
Brian D. Glueckstein
John L. Hardiman
Alexa J. Kranzley
125 Broad Street
New York, New York  10004
Telephone:    (212) 558-4000
Facsimile:    (212) 558-3588
E-mail:        dietdericha@sullcrom.com
              gluecksteinb@sullcrom.com
              hardimanj@sullcrom.com
              kranzleya@sullcrom.com

– and –

**MONTGOMERY McCRACKEN WALKER & RHOADS, LLP**

Natalie D. Ramsey (DE Bar No. 5378)
Sidney S. Liebesman (DE Bar No. 3702)
Mark Sheppard (admitted *Pro Hac Vice*)
Mark A. Fink (DE Bar No. 3946)
1105 North Market Street, 15th Floor
Wilmington, DE  19801
Telephone: (302) 504-7800
Facsimile: (302) 504-7820
E-mail:        nramsey@mmwr.com
              sliebesman@mmwr.com
              msheppard@mmwr.com
              mfink@mmwr.com

*Counsel for The Official Committee of Unsecured Creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company LLC, EFIH Finance Inc., and EECI, Inc.*

-13-