**EXHIBIT 8**

**Excerpts from 10/1/15 Cremens Dep. Tr.**

```
                                                                1
 1              CHARLES CREMENS

 2        UNITED STATES BANKRUPTCY COURT

 3        FOR THE DISTRICT OF DELAWARE

 4   ------------------------------------x

 5   In Re:

 6   Energy Future Holdings Corporation,

 7   et al.,

 8                Debtors.

 9   Chapter 11

10   Case No. 14-10979

11   Jointly Administered

12   ------------------------------------x

13

14        DEPOSITION OF CHARLES CREMENS

15             New York, New York

16              October 1, 2015

17

18

19

20

21

22

23

24   Reported by: KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO: 98292
```

1                    CHARLES CREMENS

2     there was nothing -- you may not pursue them if

3     you're solvent because you have already cleared

4     everybody, but as it relates to the claims, we

5     saw no claims that we should be pursuing.

6         Q.    So then you did not conduct that

7     analysis, then, right; if, in the event EFIH was

8     insolvent, whether or not EFIH would have claims

9     against directors an officers?

10              MR. BROAD:   Object to form.

11        A.    We conducted the analysis on a broader

12    level.  Whether or not there were claims that we

13    should be pursuing against sponsors, the

14    conclusion was there weren't claims for EFH --

15    EFIH to be pursuing against the sponsors, all

16    things considered.

17              Ultimately, it became even more -- it

18    was reviewed numerous times, including the most

19    recent settlement agreement.

20        Q.    And so why do you think releases

21    against insiders are in the best interests of

22    the EFIH estate?

23              MR. GANTER:   Object to form.

24        A.    It is an opportunity to clear the

25    decks of the potential litigation, so having --

1                CHARLES CREMENS

2    you can't leave one potential party, like a

3    sponsor -- like sponsors, that would become a

4    bulls-eye for litigation opportunity, out of the

5    mix in disarmament.  So, in order to have a full

6    disarmament, it was important for us to have

7    broad mutual releases and have all parties in so

8    that nobody was going to be chasing the sponsors

9    later.

10       Q.    Mr. Cremens, do you recall having any

11   discussions at the board level about -- at any

12   point about having more than one settlement

13   agreement?

14       A.    Yes, we had talked about it, and the

15   discussions evolved, depending upon when we were

16   talking about the plans.  So that's something

17   that, you know, we ultimately included the

18   settlement discussion -- the settlement in the

19   plan back in April that then evolved to not be

20   in the plan but become a separate document

21   later.  It became more beneficial for us to keep

22   it as a separate document.

23       Q.    Right, but I believe you mentioned

24   earlier that the settlement agreement consists

25   of, I think, at least three separate components.