**EXHIBIT 9**

**Excerpts from 10/2/15 MacDougall Dep. Tr.**

```
                                                                    1
 1      MacDOUGALL - 10/2/15 - HIGHLY CONFIDENTIAL

 2             UNITED STATES BANKRUPTCY COURT

 3             FOR THE DISTRICT OF DELAWARE

 4

 5   ----------------------------

 6   In Re:

 7   Energy Future Holdings Corporation,

 8   et al.,

 9                   Debtors.

10

11   Chapter 11

12   Case No. 14-10979

13   Jointly Administered

14   -----------------------------

15

16

17       DEPOSITION OF MICHAEL MacDOUGALL

18              Austin, Texas

19              October 2, 2015

20

21          HIGHLY CONFIDENTIAL

22

23

24   Reported by:   Susan S. Klinger, RMR-CRR, CSR

25   Job No. 98385
```

1    MacDOUGALL - 10/2/15 - HIGHLY CONFIDENTIAL
2        Q.    If the releases to the sponsors were
3    removed from the settlement agreement, would
4    you approve the settlement agreement, as a
5    director of EFH?
6        A.    No, I would not.
7        Q.    Why?
8        A.    I think absent the releases, the
9    transaction will not come to pass.  So there is
10   no reason to approving something that is not
11   going to come to pass.
12       Q.    Absent the releases to the sponsors?
13       A.    Correct.  So you would be asking the
14   board to approve something with a low
15   likelihood of ever being consummated or
16   confirmed, which seems like a bad idea for the
17   board.
18       Q.    Why do you think there would be a
19   low likelihood of confirmation if the releases
20   to the sponsors alone were extracted from the
21   settlement agreement?
22            MR. KLEINHAUS:  Objection to form.
23       A.    There are several key items that the
24   sponsors are giving up in exchange for their
25   releases.  And without those items that are

1     MacDOUGALL - 10/2/15 - HIGHLY CONFIDENTIAL

2  being given up, my own view is that the other

3  parties to the settlement agreement would not

4  want to continue as supporting parties of the

5  settlement agreement.

6     Q.   What are the sponsors giving up in

7  connection with the settlement?

8     A.   We're giving up several things.  Do

9  you just want to talk to the ones that relate

10 to why the transaction didn't close, or do you

11 want to talk about all of them?

12    Q.   All of them.

13    A.   So, one, we would be giving up our

14 claims, which I would say today as a sponsor

15 group are worth a little -- closer to $100

16 million under the management fee agreement.

17 Two, the sponsor would be giving up their

18 indemnification from EFH, which I think as you

19 know, in a scenario -- in my view, a low

20 likelihood scenario if there were to be claims,

21 those could have potentially large values

22 because the claims being bandied about are

23 potentially large claims.

24         Third, we are giving up, probably

25 most important, all of our future economic

1    MacDOUGALL - 10/2/15 - HIGHLY CONFIDENTIAL
2    interest in the company.  And we have seen
3    strategic buyers with interest in the company
4    that suggest meaningful equity value to EFH.
5    And we would be giving up our ability to -- to
6    take tax deductions related to losses on our
7    $8.3 billion investment.  And if we were to
8    take those losses prior to the confirmation, my
9    understanding is they would utilize the -- the
10   NOLs that are available inside of EFH today.
11   And absent the existence of those NOLs, I do
12   not believe the TCH creditors can effect their
13   tax-free separation of TCH and thus, I think
14   they would no longer support the transaction.
15            I think additionally, the TCH
16   parties in the transaction would no longer
17   support it without having the sponsors'
18   economic interests, because they would view
19   that they could do the work up until the last
20   day and be topped by a strategic bidder, and
21   that value would go to the sponsors and it
22   would not go to them.  So I think they wouldn't
23   continue to spend the time and money and effort
24   knowing the chance of being topped with no
25   compensation for being topped.

117

1      MacDOUGALL - 10/2/15 - HIGHLY CONFIDENTIAL

2              So basically, I think the sponsors

3      provide the preservation of the NOLs, several

4      billion dollars of NOLs, which are the key to

5      the spend.  And they provide the TCH creditors,

6      who are putting up billions of dollars and lots

7      of time and money, assurances that they will be

8      able to effect the transaction and not be left

9      with nothing at the end of the day.

10         Q.    Do you have an understanding of

11     whether the NOLs are considered assets of the

12     debtors' estate?

13             MR. KLEINHAUS:  Objection.

14         A.    I don't have any idea.

15         Q.    Is it your understanding that TPG

16     can simply take the tax deduction for its loss

17     affecting the EFH's NOLs without approval of

18     the court?

19             MR. KLEINHAUS:  Objection.

20         A.    I don't have any specific

21     understanding as to what TPG can do.  I

22     understand there is an entity in which the

23     sponsors are invested which could take that

24     deduction if they wanted to.  And once that

25     deduction is taken, that would eliminate the