IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Docket Nos. 6817 & 6820** |

**JOINDER OF THE AD HOC COMMITTEE OF TCEH FIRST LIEN
CREDITORS TO (I) DEBTORS' OMNIBUS REPLY TO PLAN CONFIRMATION
OBJECTIONS, AND (II) OMNIBUS REPLY IN SUPPORT OF MOTION OF
ENERGY FUTURE HOLDINGS CORP., *ET AL.*, TO APPROVE A SETTLEMENT
OF LITIGATION CLAIMS AND AUTHORIZE THE DEBTORS TO ENTER
INTO AND PERFORM UNDER THE SETTLEMENT AGREEMENT**

The ad hoc committee of certain unaffiliated holders of first lien senior secured claims against the TCEH Debtors (the "Ad Hoc Committee of TCEH First Lien Creditors"),[2] by and through its undersigned counsel, hereby joins (the "Joinder") in the (I) *Debtors' Omnibus Reply to Plan Confirmation Objections* [Docket No. 6817] and (II) *Omnibus Reply in Support of Motion of Energy Future Holdings,* et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform under the Settlement Agreement* [Docket No.

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   The members of the Ad Hoc Committee of TCEH First Lien Creditors hold or manage, in the aggregate, approximately $14.2 billion of the first lien secured claims against Texas Competitive Electric Holdings Company LLC and certain of its subsidiaries (collectively, the "TCEH Debtors"). *See Fifth Supplemental Verified Statement of the Ad Hoc Committee of TCEH First Lien Creditors Pursuant to Bankruptcy Rule 2019* [Docket No. 6529].

6820] (together, the "Replies").³  In support of this Joinder, the Ad Hoc Committee of TCEH First Lien Creditors respectfully states as follows:

## JOINDER

1.  Eighteen months after the commencement of these cases, the Debtors and their key economic stakeholders stand on the precipice of accomplishing what only recently seemed like an impossible feat:  (i) a consensual T-side restructuring that is overwhelmingly supported by creditors holding billions of dollars of claims; and (ii) a complete recapitalization of the E-side, funded with the proceeds of more than *$12 billion* of new debt and equity capital commitments, that will render each and every EFH and EFIH creditor unimpaired.  This remarkable outcome, in part a product of the Court-ordered mediation process, bears the hallmarks of a successful chapter 11 restructuring—hard-fought, arm's-length negotiations that yield value-maximizing transactions and broad creditor support.  For the reasons set forth in the Replies, confirmation of the Plan and approval of the Settlement Agreement are unquestionably in the best interests of all of the Debtors' estates and should be approved by the Court.

2.  It may be tempting to overlook the significant level of creditor consensus and support for the current Plan and Settlement Agreement amidst the number (and length) of objections that the Court received last week.  After nearly two years of creditor dysfunction on the E-side, driven by a small number of holders' repeated inability to reconcile their intractable value allocation disputes, the threat of an unimpairment plan has seemingly generated the first semblance of E-side cohesion.  But a close inspection of the objections reveals that the actual issues before the Court are quite narrow, and the number of objectors with legitimate concerns remarkably small.

---

³ Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the Replies.

3. There are four tranches of E-side creditors: (i) the EFIH first lien creditors; (ii) the EFIH second lien creditors; (iii) the EFIH unsecured creditors; and (iv) the EFH unsecured creditors. The two senior most creditor groups are, based on any reasonable valuation metric, substantially oversecured. Their objections to the Plan have nothing to do with its merits and everything to do with inflating their allowed claims. A failure of this Plan—or any plan of reorganization that could be confirmed today instead of one that must be considered tomorrow—would mean success for the EFIH first and second lien creditors, for the simple reason that the ensuing delay enhances their perceived leverage in settlement negotiations and, with respect to the EFIH second lien creditors, facilitates their continued accrual of above-market postpetition interest (allowing them to effectively "earn their makewhole" through delay, notwithstanding this Court's determination that such claims are not otherwise due and owing). Such creditors' objections to the Plan are the latest iteration of the same gamesmanship they have deployed at every turn of these cases and, for the reasons set forth in the Replies, should be overruled.

4. The third group of E-Side creditors—the EFIH PIK unsecured noteholders—initially objected to the Plan and Settlement Agreement, but a majority of those holders (representing a significant portion of the total EFH/EFIH unsecured claim pool) now support confirmation of the Plan and approval of the Settlement Agreement. *See Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [Docket No. 6699]. Which leaves the EFH unsecured creditors—who are owed approximately $600 million, or ***less than 2% of the Debtors' total prepetition funded indebtedness***—as the most vocal agitator against the Plan and Settlement Agreement.

5. The EFH Committee and EFH Indenture Trustee spill an inordinate amount of ink impugning the process that resulted in, and the substance of, the restructuring transactions and

3

related litigation settlements that lie at the heart of the Plan and Settlement Agreement.[4] These creditors effectively ask this Court to empower them with a line-item veto, allowing them to retain those elements of the Plan and the Settlement Agreement that are critical to their own recoveries (most notably, the TCEH first lien creditors' willingness to support a tax-free restructuring and the Plan Sponsors' significant financial commitments) while excising the portions of this integrated transaction that conflict with their narrow parochial interests. This piece-meal attack ignores the fundamental nature of the numerous integrated settlements and compromises embedded in the Settlement Agreement and, for the reasons set forth in the Replies, should be rejected by the Court.

6.    Notably absent from the EFH creditors' nearly 200 pages of briefing is the answer to one critical question—what viable restructuring alternative would they instead have the Debtors now pursue? Their silence on that question is not surprising. Despite the parties' best efforts over the past eighteen months, no such alternative exists. The Plan comes on the heels of no fewer than three failed E-side restructuring attempts. The Oncor sale process failed to generate a single attractive bid, let alone one that would pay E-side creditors in full; and, despite the EFH Committee's assertions that the Debtors' interest in Oncor "should have been—and still can be—sold or reorganized in the best interests of the E-side creditors," EFH Committee Obj. at ¶ 2, no potential acquirer has come forward with an offer superior to the Plan currently on the table. In the weeks leading up to the filing of the current Plan, the Debtors openly expressed their intent to pursue an E-side creditor equitization plan sponsored by Fidelity and certain EFIH second lien creditors. *See, e.g.*, Transcript of Hearing re Scheduling Conference at 17:8-19:13

---

[4]    Notably, neither party objects to the TCEH first lien/junior creditor settlement. Indeed, with the exception of the PCRB Trustee, no party in these chapter 11 cases has objected to the TCEH intercreditor settlement, and even the PCRB Trustee does not take issue with the settlement terms as between the TCEH first lien creditors, on the one hand, and all TCEH unsecured creditors, on the other, but rather focuses entirely on the allocation of the settlement benefits among TCEH unsecured creditors.

(June 25, 2015). But, as has happened on countless occasions in these cases, the promise of an E-side creditor equitization plan was never realized, and no viable E-side restructuring alternative has emerged since.

7. Interestingly, and presumably in light of the dearth of any viable E-side alternative to the Plan, the EFH Committee has now embraced a taxable deconsolidation of the TCEH Debtors, premised on its belief that EFH would not owe any cash taxes as a result of such a transaction based on the current fair market value of the TCEH Debtors' assets. While this support for a taxable deconsolidation may be heartening to hear, the Ad Hoc Committee of TCEH First Lien Creditors does not subscribe to the EFH Committee's valuation methodologies or conclusions and reserves all rights in that regard. Nevertheless, even assuming *arguendo* that the EFH Committee was right, and a taxable deconsolidation of TCEH would not trigger a current cash tax liability at EFH, even the EFH Committee's own constituents acknowledge that such a transaction would effectively prevent any future EFH REIT conversion, and thereby preclude what is likely today the value maximizing form of restructuring for the E-side Debtors.

8. The TCEH first lien creditors' commitment to support a tax-free restructuring in the current Plan—and the corresponding relinquishment of their right to immediately (upon the expiration of exclusivity) pursue a taxable transaction—is a necessary and critical component to unlocking the REIT, and thereby the potential to create **billions of dollars** of incremental value for the benefit of the EFH and EFIH estates. Of course, there is a risk that this Plan may not be consummated, a REIT conversion may never take place, and a future plan may not incorporate a tax-free separation of TCEH, but those possibilities do not detract from the significant value that the TCEH first lien creditors are bestowing on the E-side Debtors today through their commitment to support a tax-free restructuring under the current Plan. Without such

commitment, the REIT conversion would not occur, and without the REIT conversion, EFH's unsecured creditors would be forced to cease their incessant quest for recoveries far in excess of par and instead consider the very real risk of significant impairment (even before taking into account liabilities that may be triggered upon a taxable deconsolidation).  Thus, if any creditor constituency is benefitting from the "option" (to borrow the EFH Committee's favorite phrase) made possible by the Plan and Settlement Agreement, it is the EFH unsecured creditors, and their objections to the Plan and Settlement Agreement, especially when considered in light of EFH's lack of viable alternatives, ring hollow and should be overruled by the Court.

## **RESERVATION OF RIGHTS**

9.     The Ad Hoc Committee of TCEH First Lien Creditors reserves the right to (a) amend or supplement this Joinder and otherwise take any additional or further action with respect to the Plan or the Settlement Motion or the matters addressed therein, and (b) be heard before this Court with respect to the Plan and the Settlement Motion.


*[remainder of page intentionally left blank]*

WHEREFORE, the Ad Hoc Committee of TCEH First Lien Creditors respectfully requests that this Court overrule the objections to Plan confirmation and approval of the Settlement Motion and grant such other relief as it deems just and proper.

Dated: October 30, 2015
      Wilmington, Delaware

/s/ Ryan M. Bartley
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew L. Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Ad Hoc Committee of TCEH First Lien Creditors*