# EXHIBIT 1

                                                                    **Page 1**

 1  UNITED STATES BANKRUPTCY COURT
 2  DISTRICT OF DELAWARE
 3
 4
 5  In re:                              :
                                        :   Chapter 11
 6  ENERGY FUTURE HOLDINGS              :
    CORP., et al.,                      :   Case No. 14-10979(CSS)
 7                                      :
            Debtors.                    :   (Jointly Administration
 8  _____        :   Requested)
    CSC TRUST COMPANY OF DELAWARE,:
 9  as INDENTURE TRUSTEE,               :
                                        :
10          Plaintiff,                  :
                                        :
11      v.                              :   Adv. Proc. No. 14-50363
                                        :   (CSS)
12  ENERGY FUTURE INTERMEDIATE          :
    HOLDING COMPANY LLC and EFIH        :
13  FINANCE INC.,                       :
                                        :
14          Defendants.                 :
    _____       :
15
16
17
18                          United States Bankruptcy Court
19                          824 North Market Street
20                          Wilmington, Delaware
21                          August 13, 2014
22                          9:37 AM - 12:48 PM
23
24
25

**Page 2**

1  B E F O R E :
2  HON CHRISTOPHER S. SONTCHI
3  U.S. BANKRUPTCY JUDGE
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  ECR OPERATOR:   AL LUGANO

1           Let me try to maybe tie together those two
2  presentations and address the two real objections, which is
3  tight response dates for third-party respondents to the 2004
4  requests and sequences of discovery between taking it from
5  the debtors first and then going to the respondents or going
6  to the respondents -- third-party respondents at the same
7  time.
8           In order to address that let's go back to the
9  start of this motion.  It was filed as an emergency motion
10 because there was an RSA on file which described a plan in
11 which the estates, all the debtors' estates, were going to
12 release all the other co-debtor estates, were going to
13 release management, were going to release the TCH first, the
14 EFH sponsors, Fidelity, the PICs, and everybody else for no
15 consideration.
16          We've pressed incessantly since then, both before
17 the RSA was terminated and after, to get disclosure on those
18 assets.  We've coordinated with the committee since they got
19 involved.  We participated in all the calls.  We've turned
20 the documents as quickly as we can.  We've negotiated with
21 everybody to get to the day where at least we have a
22 framework for which we can do what we wanted as we said in
23 the beginning which is to investigate the assets.
24          At the same time there has been some disclosure
25 going on both to the data room and in public filings, which

1   has disclosed that there are real assets of the TCH debtors

2   which we're going to be relieved for no consideration, and

3   most notably we have the scheduled intercompany claims which

4   have come out, all of which would have been released under

5   that plan for no consideration.

6          The objectors point to the fact that the RSA has

7   been terminated and say essentially what's the rush, why

8   can't we have more time to respond to documents?  Why can't

9   you go to the debtors first and then come to us?

10          They're correct to say the RSA has been

11   terminated, but what you heard today, and I think this

12   brings into what Mr. Weisfelner was saying, the debtors are

13   going to come back with a different metric or velocity no

14   longer do we have a plan that's fragile and needs to be put

15   together, but rather we have a wasting asset that needs to

16   be sold.  And we're going back to the point where there is

17   going to be a proposed timeline with velocity in this case.

18          I'm not going to say anything more than from the

19   first moment we heard this the notion of going out and

20   marketing the EFH post-reorganization equity, we objected to

21   it, we don't think it's right, and I'll save my reasons for

22   later.  But case velocity and disclosure slow play create

23   attention that the protocol is designed to deal with.

24          Ultimately the TCH debtors' assets are going to

25   have to be identified, whether in the schedules or through a