# EXHIBIT 6

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| ENERGY FUTURE HOLDINGS | : | |
| CORP., et al., | : | Case No. 14-10979(CSS) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ______________________________ | : | |
| ENERGY FUTURE INTERMEDIATE | : | |
| HOLDING COMPANY LLC and EFIH | : | |
| FINANCE INC., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Adversary Proceeding |
| v. | : | No. 14-51002(CSS) |
| | : | |
| UMB BANK, N.A., as INDENTURE | : | |
| TRUSTEE, | : | |
| | : | |
| Defendant. | : | |
| ______________________________ | : | |

United States Bankruptcy Court

824 North Market Street

Wilmington, Delaware

April 14, 2015
10:39 AM

B E F O R E :

HON CHRISTOPHER S. SONTCHI

U.S. BANKRUPTCY JUDGE

ECR OPERATOR: LESLIE MURIN

HEARING re Motion of Pallas Realty Advisors, Inc. for Entry of an Order Extending the Deadline to File Proof of Claim, or Alternatively Allowing Late-Filed Proof of Claim [D.I. 2602; filed October 28, 2014]

HEARING re Motion of energy Future Holdings Corp., et al., for Entry of an Order Authorizing Luminant Generation Company LLC to Reject a Water Contract with Tarrant Regional Water District, Effective Nunc pro Tunc to the Petition Date [D.I. 2662; filed October 30, 2014]

HEARING re Debtors' First Omnibus (Non-Substantive) Objection to (Amended and Superseded, Exact duplicate, and Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 2808; filed November 18, 2014]

HEARING re Debtors' Third Omnibus (Non-Substantive) Objection to (No Supporting Documentation) Customer Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 2992; filed December 12, 2014]

HEARING re Debtors' Fourth Omnibus (Substantive) Objection to Certain Substantive Duplicate and No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 2994; filed December 12, 2014]

HEARING re Debtors' Sixth Omnibus (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 3212; filed January 9, 2015]

HEARING re Debtors' Seventh Omnibus (Substantive) Objection to Certain No Liability Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, Local Bankruptcy Rule 3007-1 filed by DeAnna & Gerald Edwards [D.I. 3388; filed January 28, 2015]

HEARING re Debtors' Eighth Omnibus (Non-Substantive)

Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 3381; filed January 27, 2015]

HEARING re Debtors' Tenth Omnibus (Substantive) Objection to (Certain No Liability) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 3473; filed February 6, 2015]

HEARING re Motion for Summary Judgment filed by Mary LaCour [D.I. 3750; filed March 2, 2015]

HEARING re Motion to Compel the Production of Documents [D.I. 3752; filed March 2, 2015]

HEARING re Debtors' Twelfth Omnibus (Non-Substantive) Objection to (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 3896; filed March 13, 2015]

HEARING re Application of Energy Future Holdings Corp., et al., for an Order Authorizing the Debtors to Retain and

Employ Enoch Kever PLLC as Special Counsel for Certain Regulatory and Legislative Matters, Effective Nunc Pro Tunc to March 1, 2015 [D.I. 3960; filed March 24, 2015]

HEARING re Application of the EFH Official Committee for an Order (A) Authorizing the Retention and Employment of Kinsella Media, LLC as Asbestos Noticing Expert to the EFH Official Committee Nunc Pro Tunc to March 27, 2015 and (B) Waiving Certain Information Requirements Pursuant to Local Rule 2016-2(h) [D.I. 4056; filed April 3, 2015]

HEARING re Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for payment Under Section 503(b)9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof [D.I. 1682; filed July 23, 2014]

HEARING re Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest

Payments and Disallowance of Claims (Redacted)[D.I 3593, filed February 19, 2015]

HEARING re Motion of the Ad Hoc Group of TCEH Unsecured Noteholders for Entry of an Order Granting Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims (Sealed)[D.I. 3596; filed February 19, 2015]

HEARING re Motion of the EFH Official Committee for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Luminant Debtors' Estate [D.I. 3605; filed February 19, 2015]

HEARING re Motion to Intervene filed by Amber Lambert, Timmy K. Thale, Jonathon Rich, and Wayne Albright [D.I. 3898; filed March 13, 2015]

HEARING re Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory Contract with Cloud Peak Energy Resources LLC, Effective Nunc Pro Tunc to March 24, 2015 [D.I. 3961; filed March 24, 2015]

HEARING re Motion of Energy Future Holdings Corp., et al., for Entry of an Order Authorizing Luminant Energy Company LLC to Reject a Certain Executory Contract with Forest Creek Wind Farm, LLC, Effective Nunc Pro Tunc to March 24, 2015 [D.I. 3963; filed March 24, 2015]

HEARING re Adversary Complaint for Declaratory Judgment of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. [D.I. 3039/Adv. D.I. 1; filed December 16, 2014]

Transcribed by: Dawn South, Melissa A. Looney, and Pamela A. Skaw

everyone in the capital structure.

Success has many parents and the efforts over the last weekend really have been monumental in getting the stipulation done, but there's a long way to go and we hope that this being the first step does lead to a new effort in this case to have a consensual plan that gets confirmed somewhere along the timeline, whether it's on November 18th or not too vague to say right now, but we are pointed in the right direction.

Thank you.

THE COURT: Thank you.

MR. WEISFELNER: Good morning, Your Honor, Ed Weisfelner, Brown Rudnick on behalf of WSFS, the second lien indenture trustee.

Your Honor, I think today is fairly remarkable in the sense that there does appear to be a consensus among (indiscernible) true for the T side now it is true to the E side, and the consensus that we've reached is that we all hate the plans that they filed. So in that regard the debtor has succeeded in bringing all the creditors together on the same page.

Your Honor, 700- or $805 million going over from the E side to the T side we believe is woefully insufficient. The allocation between the first liens and the junior T side creditors that was suggested in the plan

promising the ability to structure a REIT transaction, which will require a significant amount of debt and equity financing we think is feasible and quite possible, I want to make sure that as we continue to keep open our optionality we not crash into each other. We'll come back to Your Honor I promise in the event that this we think there are obstacles being purposefully or mistakenly put into our path.

Thank you.

THE COURT: You're welcome. Mr. Shore, good morning.

MR. SHORE: Good morning, Your Honor, Chris Shore from White & Case, on behalf of the ad hoc group. I'm looking forward to using to telestrator at some point.

You know, two things -- I'll start here with two things I've learned over the past 23 years. Anniversaries are important and sometimes the past is not always the past.

We are a year into the case now, and I think it's instructive to look back for a moment, because it does inform everybody as to what we mean with a new plan on file.

Because the committee wasn't here on the first days I gave Mr. Miller my first day deck that debtors' counsel worked through with Your Honor, and in that deck and in the presentation the Court was enthusiastically told about the tremendous consensus around the RSA, about the

RSA's value maximizing transaction, and the clear path that the debtors had to an exit in February 2015. As we sit here today thank goodness TCEH and the TCEH debtors avoided that.

First that RSA had a release of all interdebtor claims and would have abandoned at least $805 million of value that there are in those claims. That's the out of the box proposal by the DDAs and the DDs and whatever they are about where they think an appropriate deal is.

Also in that RSA, given where we are today, the E side creditors would have been grossly overpaid thereby devaluing the TCEH claims into the E side. Not only in the form of overpayments of the make-wholes, but that convertible DIP structure which would have given all of the upside in any kind of Oncor transaction to a group of creditors who had a fixed dollar amount of claims.

Without irony the debtors and now the new slate of spokes people for the debtors have come forward with the same promise of a consensual plan to exit that they filed last night, except that this time there's tremendous dissent across the capital structure. I don't think any creditor or creditor body has said anything positive about the plan or the proposed settlement, and different than the RSA that was filled and talked about last year at this time we're looking at a 2016 exist at best under the proposed plan that just got filed.

The merits of a plan for another -- the merits of the plan are for another day and I'm not going say much except suffice it to say that other people have said in our view Mr. Sawyer is still on the wrong planet with the settlement that he has cut. He's missing key points, he is again agreeing to release estate claims for no consideration. The only debtor who is getting anything is TCEH, and he's way out in front of his creditor body.

In fact if you read that presentation or the series of presentations that are filed it's hard to match up the presentations with the dollar figure that was agreed to except in one key respect. Where the debtors have been in these cases and their independence is not necessarily focusing on what is a value maximizing transaction, but what is a transaction that has a realistic possibility of getting done over the objections of people within the exclusive periods were the debtors to file a plan?

I will say this about the doggedness with which the debtors and their slates of professionals and people who act on their behalf had pursued a plan within exclusivity. We do not believe it was Congress's intend in shortening the exclusive periods to put debtors in a position where they make a talismanic approach to filing any plan whatsoever within the exclusive periods under all circumstances in all cases and no matter what the creditors think. On the

contrary in our view Congress intended that what would happen in the different cases is that the creditors would be given an opportunity to speak.

It's not that hard to propose a plan that distributes value in a way that nobody accepts with a blide (ph) statement if you don't like it you fix it, and with respect to the ad hoc group almost alone in these cases you can fix it without any estate funding.  We know how to fight that, we will fight that, but let's move away from the plan that just got filed.

It's springtime again, I stand up here and start talking about another Mr. Lauria plan that he's out there working on.

We've talked about throughout the case the importance of setting the table right and we are at an interesting time in the case.  Currently there may be ten players around the table talking about what kind of plan would work, and unlike before when the table was set wrong everybody is looking around the table at everybody else's knife contemplating the consequences of not getting on board a deal, wondering whether they're the one who is going to end up with nine knives in their back, a typical New York dinner party during election session.  But that's the way a table gets set and gets people to engage, and it's taken a year to get there.  It required diligence into claims, it

required the filing of a complaint -- or a proposed complaint against the first liens, it required engaging on T side, E side claims, it required the prospect that if we couldn't get it done it was going to take a long time to get it done. The table is set.

I told the Court months ago that if he got the opportunity Mr. Lauria would cook up a deal, and he's at it. It's gone through several important iterations over the past several months, but currently the construct is an $11 billion debt and equity raise that makes the E side irrelevant, everybody gets what their legal entitlement is as determined by the Court, and gets everybody out in months, not years.

So importantly we want to get that done. Let's simplify the debate without relitigating the bidding procedure issues. The contemplation of the bidding procedures motion was always that the debtors would let the purchaser do what they wanted with the assets even if that meant flipping into a REIT.

The premise of an alternative plan is to create more distributable value by getting a REIT done within the Chapter 11 and capture that ecreted (ph) value for the creditors of the existing debtors and not third-party bidders. And since that concept was raised we've heard the typical debtor responses over time. Too much execution

risk. Too big. Where's your committed financing? We have a bird in the hand that we just can't leave aside. It's going to be the largest distressed M&A ever. It's going to be the largest utility REIT ever. Everybody coming forward with explanations as to why it can't be done.

I'll say this, if everybody is living where they say they live right now around that table a deal can get done and the manifestation of that is the stipulation that was filed late last night where everybody is agreeing in principal to a two-month time out to focus not on fighting each other, but rather on working for a massive plan which creates huge amounts of distributable value and will allow these cases to exit in months, not years.

The key is here unlike some other debtors in some other cases, including cases in front of Your Honor, these debtors have said now, okay, we will support you in trying to get that plan done. We take that at face value and look forward to devoting all or time to doing that.

As the Court knows though from here to a real RSA with tremendous creditor support throughout the capital structure it's a delicate, difficult process of removing hurdles and avoiding new issues, and it requires a debtor team that actually means it when it says we are committing to make this work and that they do so with the same enthusiasm that they exuded on the first days of these

cases.

To be clear we're not here, we may need to be back, we may have to start the process of in chambers conferences with Your Honor to talk about where the deal is, but we're grateful that the case is now a year in on its anniversary finally getting back to the level playing field that we talked about on the first day.

THE COURT: Thank you.

MR. SERAJEDDINI: Good morning, Your Honor.

THE COURT: Good morning.

MR. SERAJEDDINI: Steven Serajeddini of Kirkland & Ellis on behalf of the debtors.

Your Honor, the next item on today's agenda --

THE COURT: No, we're going to take -- sorry, I didn't know you were where you were heading.

MR. SERAJEDDINI: Oh.

THE COURT: We're taking a break.

MR. SERAJEDDINI: Oh.

(Recessed at 12:03 p.m.; reconvened at 12:23 p.m.)

THE COURT: Please be seated. She really pelts that doesn't she? Before she had kids, she was so quiet.

All right. Let's continue.

MR. SERAJEDDINI: Good morning, again, Your Honor. Steven Serajeddini of Kirkland and Ellis on behalf of the debtors. Your Honor, the next item on today's agenda is the