# EXHIBIT 14

```
                                                              Page 1
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3
 4   In re:                           :
                                      :    Chapter 11
 5   ENERGY FUTURE HOLDINGS           :
     CORP., et al.,                   :    Case No. 14-10979(CSS)
 6                                    :
             Debtors.                 :    (Jointly Administration
 7   _____  :    Requested)
 8
 9
10                                    United States Bankruptcy Court
11                                    824 North Market Street
12                                    Wilmington, Delaware
13
14                                    May 28, 2015
15                                    4:09 PM - 4:36 PM
16   B E F O R E :
17   HON CHRISTOPHER S. SONTCHI
18   U.S. BANKRUPTCY JUDGE
19
20
21
22
23
24
25   ECR OPERATOR:   LESLIE MURIN
```

**Page 2**

1  HEARING re Discovery Dispute
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25  Transcribed by:  Sonya Ledanski Hyde

1    I understand it, the only people on the phone are the

2    debtors, White & Case -- or Kirkland & Ellis, White & Case,

3    and the T-side committee.  Is anybody else on the phone?

4            THE COURT:  No, we have a list of five pages.

5            MR. MCGANN:  Your Honor?

6            THE COURT:  No need to speak.  We have at least

7    five pages of people on the phone, Mr. Shore.

8            MR. SHORE:  Okay.  Look, here's my problem.  The -

9    - you know, Mr. McGann wants to start out and accuse us of

10   trying to create problems.  We're in a terrible position

11   here, because what we're trying to do is get to the bottom

12   of a discussion that apparently -- well, admittedly occurred

13   between Mr. Keglevic and our potential plan sponsor on the

14   REIT side regarding our plan and why that party should stop

15   negotiating with us because of concerns about whether we

16   would ever fund and concerns about whether the debtors would

17   ever solicit a plan that they did with us, as a means to

18   force that party to become part of the debtors' plan.  In

19   other words, "Stop negotiating with them.  You better turn

20   your attention to us if you want to see the assets anytime

21   soon."

22           We found out about that conversation on Thursday.

23   Calls were immediately made to the debtors on Friday.  They

24   -- or Thursday night.  They said they would check into it.

25   They said a conversation had occurred, that there was a,

1   quote, "misunderstanding," and that it would be cleared up.
2           All I've been asking for is, if there are
3   documents relating to that, I want to see them.  And I want
4   Mr. Keglevic, who's their scheduled witness for the hearing
5   on Monday, prior to the hearing, to do exactly what Mr.
6   McGann -- to testify exactly as Mr. McGann said, that the
7   conversation was a misunderstanding, he never said that, he
8   didn't mean that, that's not the case.  It would resolve the
9   problem.
10          The debtors instead, after saying, "It was a
11  miscommunication; we'll clear it up," then took the position
12  that they would not produce him for a deposition and that he
13  was still going to appear.  They -- I don't think there's
14  any dispute, now that we've had our call, the discovery
15  sought is narrow.  We think it is relevant.
16          We laid out the authorities in our exclusivity
17  objection that a debtor can't -- it is not a level playing
18  field right now.  The debtor has the keys.  And if it
19  doesn't want to solicit a plan between now and their
20  requested extension through October and then into December,
21  anybody who wants to negotiate on an alternate plan is
22  benched for that period of time.  And it forces people to
23  negotiate on the debtor's plan, which is what both Congress
24  and the Third Circuit have said debtors should be using
25  exclusivity for.

1             The -- we had never received any written objection

2    to the discovery.  But Mr. McGann laid out some objections

3    in his letter to the Court and just now.  With respect to

4    the discovery, it's coming at a late date.  We just learned

5    of the conversations.  I don't know what else we can do.  If

6    he had the conversations this week, he had the conversations

7    this week.  It's not irrelevant, for the reasons I said.

8             It's not confidential.  The debtors -- I don't

9    know why they did it, but they chose to do it -- attached a

10   communication to the Court and filed on the docket an email

11   a month ago between Mr. Lauria and Mr. Kieselstein on the

12   Toggle issue, which is a plan negotiation, a nascent one at

13   that point, that was going on.  So, I don't know how the

14   debtors can claim that they had communications with somebody

15   else that that doesn't -- about our plan; that remains

16   confidential while ours doesn't.

17            And it's not prejudicial.  To be clear, we are not

18   a competing bidder.  The proposed plan would be to end the

19   auction because the E side gets taken out in full.  We --

20   the debtors know we're not a competing bidder.  We're not

21   trying to get involved in the bidding process.  We think

22   that -- for the reasons we said, we think the bidding

23   process is before, and we don't need to get into it.  The

24   bidding process is probably more divisive than anything

25   else.

1                But the one thing we're trying to get to the
2       bottom to -- and, quite frankly, a last-minute request for a
3       conference with the Court to quash the deposition of
4       somebody who is going to be in town on Sunday and is
5       available for a deposition on Sunday to clear the air and
6       state on the record that there was -- that he did not say
7       what was reported he said, and that of course the debtors
8       are, as Mr. McGann said, free to all comers.
9                Okay.  But we think it is relevant, and we think,
10      given, you know, the narrowing that's gone on, it is
11      appropriate discovery.
12               THE COURT:  Mr. --
13               MR. MCGANN:  May I respond, Your Honor?
14               THE COURT:  Yeah, Mr. McGann?
15               MR. MCGANN:  Okay, thank you, Your Honor.  Mr.
16      Kieselstein's on the phone.  This contretemps was raised by
17      Mr. Lauria with Mr. Kieselstein on May 19th, and Mr.
18      Kieselstein responded that night, not that there was a
19      misunderstanding, but that whatever was relayed to the ad
20      hoc group is something that was never said.  There's no
21      misunderstanding on Mr. Keglevic's part at all.
22               But this is -- because it's narrow, because Mr.
23      Keglevic's going to be in Wilmington -- he's a declarant on
24      the status of the case, as Your Honor may or may not have
25      seen by this point, but he submitted a declaration in