# EXHIBIT 17

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3   In re:                        :

                                  :    Chapter 11

4   ENERGY FUTURE HOLDINGS        :

    CORP., et al.,                :    Case No. 14-10979(CSS)

5                                 :

            debtors.              :    (Joint Administration

6   _____:    Requested)

7

8

9                              United States Bankruptcy Court

10                             824 North Market Street

11                             Wilmington, Delaware

12

13                             August 11, 2015

14                             9:45 AM – 1:23 PM

15  B E F O R E :

16  HON CHRISTOPHER S. SONTCHI

17  U.S. BANKRUPTCY JUDGE

18

19

20

21

22

23

24

25  ECR OPERATOR:  DANA MOORE

1    HEARING re Motion of Energy Future Holdings Corp., et al.,

2    for Entry of an Order Authorizing Luminant Generation

3    Company LLC to Reject a Water Contract with Tarrant Regional

4    Water District, Effective Nunc Pro Tunc to the Petition Date

5    [D.I. 2662; filed October 30, 2014]

6

7    HEARING re debtors' First Omnibus (Non-Substantive)

8    Objection to (Amended and Superseded, Exact Duplicate, and

9    Insufficient Documentation) Claims Pursuant to Section

10   502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

11   and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 2808; filed

12   November 18, 2014]

13

14   HEARING re debtors' Third Omnibus (Non-Substantive)

15   Objection to (No Supporting Documentation) Customer Claims

16   Pursuant to Section 502(b) of the Bankruptcy Code,

17   Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy

18   Rule 30071 [D.I. 2992; filed December 12, 2014]

19

20   HEARING re debtors' Fourth Omnibus (Substantive) Objection

21   to Certain Substantive Duplicate and No Liability Claims

22   Pursuant to Section 502(b) of the Bankruptcy Code,

23   Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy

24   Rule 30071 [D.I. 2994; filed December 12, 2014]

25

1   HEARING re debtors' Sixth Omnibus (Non-Substantive)

2   Objection to (Insufficient Documentation) Claims Pursuant to

3   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

4   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

5   3212; filed January 9, 2015]

6

7   HEARING re debtors' Seventh Omnibus (Substantive) Objection

8   to Certain No Liability Claims Pursuant to Section 502(b) of

9   the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,

10  and Local Bankruptcy Rule 3007-1 [D.I. 3218; filed January

11  9, 2015]

12

13  HEARING re debtors' Eighth Omnibus (Non-Substantive)

14  Objection to (Insufficient Documentation) Claims Pursuant to

15  Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

16  3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

17  3381; filed January 27, 2015]

18

19  HEARING re debtors' Tenth Omnibus (Substantive) Objection to

20  (Certain No Liability) Claims Pursuant to Section 502(b) of

21  the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,

22  and Local Bankruptcy Rule 3007-1 [D.I. 3473; filed February

23  6, 2015]

24

25

1    HEARING re Motion of the Official Committee of Unsecured

2    Creditors for Entry of an Order Granting Exclusive Standing

3    and Authority to Commence, Prosecute, and Settle Certain

4    Claims for Declaratory Judgment, Avoidance and Recovery of

5    Liens, Security Interests, Obligations, Fees, and Interest

6    Payments, and Disallowance of Claims (Redacted) [D.I. 3593;

7    filed February 19, 2015]

8

9    HEARING re Motion of the Ad Hoc Group of TCEH Unsecured

10   Noteholders for Entry of an Order Granting Standing and

11   Authority to Commence, Prosecute, and Settle Certain Claims

12   for Declaratory Judgment, Avoidance and Recovery of Liens,

13   Security Interests, Obligations, Fees, and Interest

14   Payments, and Disallowance of Claims (Sealed) [D.I. 3596;

15   filed February 19, 2015]

16

17   HEARING re Motion of the EFH Official Committee for Entry of

18   an Order Granting Derivative Standing and Authority to

19   Prosecute and Settle Claims on Behalf of the Luminant

20   debtors' Estates [D.I. 3605; filed February 19, 2015]

21

22

23

24

25

Page 5

1   HEARING re debtors' Twelfth Omnibus (Non-Substantive)

2   Objection to (Insufficient Documentation) Claims Pursuant to

3   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

4   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

5   3896; filed March 13, 2015]

6

7   HEARING re Motion of Energy Future Holdings Corp., et al.,

8   for Entry of an Order Authorizing Luminant Energy Company

9   LLC to Reject a Certain Executory Contract with Cloud Peak

10   Energy Resources LLC, Effective Nunc Pro Tunc to March 24,

11   2015 [D.I. 3961; filed March 24, 2015]

12

13   HEARING re debtors' Thirteenth Omnibus (Non-Substantive)

14   Objection to (Insufficient Documentation) Claims Pursuant to

15   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

16   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

17   4003; filed March 27, 2015]

18

19   HEARING re debtors' Fourteenth Omnibus (Substantive)

20   Objection to (Certain Substantive Duplicate, No Liability,

21   and No Claim Asserted) Claims Pursuant to Section 502(b) of

22   the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007,

23   and Local Bankruptcy Rule 3007-1 [D.I. 4050; filed April 2,

24   2015]

25

```
                                                        Page 6
 1    HEARING re debtors' Fifteenth Omnibus (Non-Substantive)

 2    Objection to (Insufficient Documentation) Claims Pursuant to

 3    Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

 4    3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

 5    4052; filed April 2, 2015]

 6

 7    HEARING re Motion of the EFH Official Committee for Entry of

 8    an Order Directing Disclosure of Oncor Bid Information to

 9    the EFH Official Committee [D.I. 4260; filed April 23, 2015]

10

11    HEARING re Motion for Order Authorizing Payment and

12    Reimbursement of Certain Fees and Expenses of UMB Bank,

13    N.A., as the EFIH Unsecured Indenture Trustee [D.I. 4438;

14    filed May 8, 2015]

15

16    HEARING re debtors' Sixteenth Omnibus (Non-Substantive)

17    Objection to (Insufficient Documentation, Amended, and Wrong

18    debtor) Claims Pursuant to Section 502(b) of the Bankruptcy

19    Code, Bankruptcy Rules 3001, 3003, and 3007, and Local

20    Bankruptcy Rule 3007-1 [D.I. 4782; filed June 16, 2015]

21

22

23

24

25
```

1    HEARING re debtors' Seventeenth Omnibus (Substantive)

2    Objection to (Substantive Duplicate, No Liability, and No

3    Claim Asserted) Claims Pursuant to Section 502(b) of the

4    Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and

5    Local Bankruptcy Rule 3007-1 [D.I. 4784; filed June 16,

6    2015]

7

8    HEARING re debtors' Eighteenth Omnibus (Substantive)

9    Objection to Certain Improperly Asserted Claims Pursuant to

10   Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

11   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

12   4786; filed June 16, 2015]

13

14   HEARING re Motion Not to Reinstate Appeal filed by the

15   Tremble Parties [D.I. 4967; filed July 10, 2015]

16

17   HEARING re Motion of Energy Future Holdings Corp., et al.,

18   for Entry of an Order Authorizing Certain debtors to Enter

19   into Limited Non-Proprietary Hedging and Trading

20   Arrangements Subject to the debtors' Risk Management

21   Guidelines [D.I. 5065; filed July 21, 2015]

22

23

24

25

Page 8

1    HEARING re Motion of Energy Future Holdings Corp., et al.,

2    for Entry of an Order Confirming that no Automatic Stay is

3    in Effect or, in the Alternative, Modifying the Automatic

4    Stay to the Extent Necessary to Permit Luminant Mining

5    Company LLC and Energy Future Holdings Corp. to Proceed with

6    Certain Litigation [D.I. 5067; filed July 21, 2015]

7

8    HEARING re debtors' Nineteenth Omnibus (Non-Substantive)

9    Objection to (Insufficient Documentation, Amended, and Wrong

10   debtor) Claims Pursuant to Section 502(b) of the Bankruptcy

11   Code, Bankruptcy Rules 3001, 3003, and 3007, and Local

12   Bankruptcy Rule 3007-1 [D.I. 4970; filed July 10, 2015]

13

14   HEARING re debtors' Twentieth Omnibus (Substantive)

15   Objection to (Substantive Duplicate and No Liability) Claims

16   Pursuant to Section 502(b) of the Bankruptcy Code,

17   Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy

18   Rule 3007-1 [D.I. 4972; filed July 10, 2015]

19

20   HEARING re debtors' Twenty-First Omnibus (Substantive)

21   Objection to (Certain Improperly Asserted) Claims Pursuant

22   to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules

23   3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I.

24   4974; filed July 10, 2015]

25

1    HEARING re Twenty-Second Omnibus (Non-Substantive) Objection

2    to Claims (Wrong debtor) Pursuant to Section 502(b) of the

3    Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and

4    Local Bankruptcy Rule 3007-1 [D.I. 4976; filed July 10,

5    2015]

6

7    HEARING re Twenty-Third Omnibus (Substantive) Objection to

8    (Certain Improperly Asserted) Claims Pursuant to Section

9    502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

10   and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 4978; filed

11   July 10, 2015]

12

13   HEARING re EFIH debtors' Partial Objection to Proof of Claim

14   No. 6347 Filed by the Indenture Trustee for the EFIH

15   Unsecured Notes [D.I. 4964; filed July 9, 2015]

16

17   HEARING re Motion of Charlotte Liberda and Curtis Liberda to

18   Appoint Legal Representative [D.I. 5072; filed July 22,

19   2015]

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1   there a settlement agreement milestone as well or is that

2   identical to the confirmation?

3          MR. SASSOWER:  I don't believe there's a separate

4   settlement milestone but the confirmation is conditioned on

5   the settlement agreement.  So the settlement agreement has

6   to be approved on or before confirmation.

7          THE COURT:  Okay.  All right.  I would certainly -

8   - oh, and I did receive and read the letters that were

9   presented to the court.  I guess they were filed -- yeah,

10  they were written yesterday but I received them and read

11  them this morning, so I'm up to date on that.  Certainly

12  open the podium to anyone who wants to be heard in

13  connection with Mr. Sassower's update.

14         MR. SASSOWER:  Thank you, Your Honor.

15         THE COURT:  Mr. Lauria, good morning.

16         MR. LAURIA:  Good morning, Your Honor.  Tom Lauria

17  with White & Case.  We represent the ad hoc group of TCH

18  unsecured note holders.

19         The first thing I want to do is thank the Court

20  for making an expedited confirmation schedule available.

21  This deal is premised on ability to move quickly to

22  confirmation and without that schedule we never would have

23  gotten to the point we are at today.  And we will not get to

24  the finish line if we're not able to maintain that pace.

25         I think the speed and pace is really important to

1    the transaction that we've negotiated.  With that

2    opportunity at hand and with the able and steady assistance

3    of the Court appointed mediator of Mr. Peter Borowitz, we

4    have succeeded in building a broad consensus around a value

5    maximizing transaction that we believe will pave the way for

6    the debtors to exit Chapter 11 in the first half of 2016 if

7    all requisite approvals are obtained.  And that also

8    includes an insurance policy if we don't get there.

9          After over a year of contentious litigation -- and

10   I have to say it sure seems longer than that -- regarding

11   how the business of the EFH debtors would be reorganized and

12   how value would be allocated among the company's

13   approximately $42 billion of debt, we've forged an agreement

14   with the company and all of the other TCEH creditor groups

15   that have been active in the case regarding the terms of the

16   plan which was filed with the Court early yesterday morning.

17         The plan embraces three fundamental principles of

18   Chapter 11 reorganization: consensus, unimpairment and put

19   your money where your mouth is.  The merchant generation

20   business owned by TCEH will be transferred to its first lien

21   creditors in satisfaction of their approximately $25 billion

22   in debt.  This reflects near complete consensus of all T-

23   side stakeholder groups.

24         At the same time, all of the allowed claims

25   against EFH and EFIH will be paid in cash in full.  By

Page 32

1    unimpairing them, we have taken the ballot out of their

2    hands in the hope of achieving a quick and efficient march

3    to confirmation.  This outcome is being sponsored by a group

4    of investors who, as promised, are providing $12.1 billion

5    of new debt and equity capital, $7.1 billion in equity and

6    $5.5 billion of debt availability.  We expect only to use $5

7    billion in connection with closing the transaction.

8            The group is comprised of members of the ad hoc

9    group including Anchorage, BlackRock, Arrowgrass, Balyasny,

10   Deutsche Bank, Cyrus and BHR.  TCEH unsecured notes

11   including Centerbridge, GSO and Taconic and Hunt

12   Consolidated and certain of its investors including Avenue

13   and the Texas Teachers' Pension.  These are the folks who

14   are putting their money where their mouth is.

15           We're not here to argue about valuation.  We're

16   here to pay the price to get out of jail.  To use my

17   partner, Mr. Shore's metaphor about the airplane with two

18   classes, one fighting over lobster and caviar and the other

19   hoping for chips, the folks in coach have gotten together

20   and agreed to buy the first class meal at full price.

21           The plan reflects a truly remarkable turn in these

22   cases.  When they were commenced the May 2014, it looked

23   like everyone would be impaired in some way and that

24   fighting between and within the two silos would be endless

25   and that billions of dollars of T-side unsecured claims were

1   at risk of a take-not in recovery.  Now we have a plan that

2   pays the E-side in full, gives the T-first their collateral

3   and provides a meaningful recovery to T-unsecureds.  To that

4   point, the T-unsecureds will receive outright 2% of the

5   equity and reorganized EFH and the rights to purchase

6   approximately $5.1 billion of new EFH common equity and the

7   rights are fully backstopped by members of the investor

8   group.  I think the Court knows -- I know sometimes people

9   say that and it isn't what the Court knows.

10          THE COURT:  Or what it remembers is more

11   difficult.

12          MR. LAURIA:  The road to this juncture has been

13   long and bumpy and anything but predictable.  We urged from

14   the beginning that the states mandated that no stone go

15   unturned.  And in truth, we never knew this particular stone

16   existed, much less what we would find under it.

17          In addition to speed, the deal is premised on the

18   ability to use the value that the parties believe will be

19   unlocked by converting EFH into a real estate investment

20   trust and transferring the T-side assets to TCH firsts in a

21   tax-free transaction.  These elements add materially to the

22   complexity of the exit but they also provide the currency

23   that makes the deal work.

24          Importantly, because of that complexity, the

25   parties have also negotiated a settlement agreement that

1    acts as an insurance policy, one that we all hope never to

2    use in the event that the deal doesn't consummate.

3            This was a tough, hard-fought deal made between

4    significantly impaired constituencies with conflicting

5    interests.  It was made and broken and remade multiple times

6    before bringing it to the court.  As we go forward, we need

7    to guard it from further breakage, particularly from those

8    stakeholders who this deal will pay in full.

9            We support completely the schedule that debtor's

10   counsel described on the record.  We think it's very

11   important to use the 18th as a checkpoint to see where we

12   are.  The 18th -- what we have before the court, the first

13   milestone is a disclosure statement hearing.  And just out

14   of curiosity, we had our office pull out of the new

15   disclosure statement all of the amended, new language, all

16   of the new language and it's 15 pages.  It's 15 pages that

17   are going to be reviewed and commented on and presumably

18   objected to by people who don't vote on a plan.

19           In fact, there's precedent for those people not

20   even getting a disclosure statement, just a summary.  But I

21   expect that when we get back to court on the 18th, the

22   objections that we're going to have are going to be

23   principally filed by those parties who already, from the

24   letter that was submitted, seemed dead set on doing nothing

25   but achieving delay, which will put them at risk more than

1     anybody else in this courtroom because at some point, at

2     some point if the peace isn't kept, if the deal isn't

3     maintained, you're going to have a foreclosure on the T-

4     side.

5             And when that happens, you have billions of

6     dollars of taxes being realized by those folks that will

7     diminish, if not eliminate, their potential recovery.  This

8     deal insulates them and protects them from that outcome.

9     Thank you, Your Honor.

10            THE COURT:  You're welcome.

11            MR. KORNBERG:  Good morning, Your Honor.  Alan

12    Kornberg of Paul Weiss, Rifkind Wharton & Garrison.  We're

13    the ad hoc committee of TCEH first lien creditors.  Your

14    Honor, it is a red letter day when you have significant

15    creditor support at all levels of the T-side capital

16    structure for a plan and related settlement and you have us

17    all, as the Court observes, sitting on the debtor's side of

18    the aisle.  If approved, the plan that's before the Court

19    will maximize creditor recoveries.

20            You've already heard how it will pay in full in

21    cash all allowed E-side claims and there is the related

22    settlement.  We described it as durable.  Mr. Sassower

23    described it as disarmament.  Mr. Laurie described it as an

24    insurance policy.  It is all of the above.  That settlement

25    would resolve for all time contentious, complicated issues