# EXHIBIT 13

## 10/2/15 Ashby Dep. Tr. Excerpts

### (Filed Partially Under Seal)

```
                                                           1
 1           KEVIN MICHAEL ASHBY

 2         UNITED STATES BANKRUPTCY COURT

 3         FOR THE DISTRICT OF DELAWARE

 4    -------------------------------------x

 5    In Re:

 6    Energy Future Holdings Corporation,

 7    et al.,

 8                   Debtors.

 9    Chapter 11

10    Case No. 14-10979

11    Jointly Administered

12    -------------------------------------x

13

14         DEPOSITION OF KEVIN MICHAEL ASHBY

15              New York, New York

16                October 2, 2015

17

18

19

20

21

22

23    Reported by:

24    KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25    JOB NO. 98293
```

95

1       KEVIN MICHAEL ASHBY

2       A.    I think -- I think there's definitely

3   an argument to have that viewpoint that it would

4   apply to pre-2010 years.

5       Q.    And is that your viewpoint?

6             MR. CONNOR:  Same objection.

7       A.    Again, I think, under any conclusion,

8   it may have the same results, right?

9       Q.    So you're saying that your view is

10  whether the agreement applies to pre-2010 tax

11  years or not doesn't matter because it's going

12  to lead to the same result either way, is that

13  what you're saying?

14            MR. CONNOR:  Same objection.

15      A.    Yes, that was my belief.  When I --

16  again, the objective was not to change the way

17  it had been done in the past.

18      Q.    Okay.  So your view, the way you might

19  approach it would be whether I -- you know, tell

20  me if this is fair -- whether I apply the

21  language of this agreement or just go by

22  whatever the practice was before 2010, it's

23  going to lead to the same result in terms of

24  which tax sharing obligations are allocated to

25  who?

Ashby, Kevin 2015-10-02

1      KEVIN MICHAEL ASHBY

2      Q.   Okay.  This particular payable you
3   discovered when it was listed on the schedule
4   had an affiliate code that directed it to be
5   paid to EFH?
6      A.   Yes.  Prior to that point, we, you
7   know, Corporate Tax was viewing this as a net
8   payable up, right?  Not necessarily parsing out
9   or concerned with how it parsed out at levels
10  below.
11     Q.   So how did the fact that it was
12  directed to EFH, how did that change things?
13     A.   Again, our understanding was that that
14  wouldn't necessarily be the outcome, that it
15  likely shouldn't be pointing to EFH.
16     Q.   And who should it be pointed to
17  instead?
18     A.   You know, I would say it would be
19  pointed to TCEH within the registrant.
20     ==Q.   So normal practice and the expectation==
21  ==was that that payable would have gone up to==
22  ==TCEH, the parent, TCEH?==
23     ==A.   Correct.==
24     Q.   So do you think that that scheduling
25  of it that way was an error?