**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>Re: Dkt. Nos. 5249, 6122, 6705<br><br>Hearing Date: Nov. 3, 2015 at 11:00 a.m. ET |

**STATEMENT OF LAW DEBENTURE TRUST COMPANY OF NEW YORK, AS
INDENTURE TRUSTEE: (A) IN SUPPORT OF CONFIRMATION OF THE
FIFTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY
FUTURE HOLDINGS CORP., ET AL., PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE, AND (B) IN SUPPORT OF APPROVAL OF THE
MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., TO APPROVE A
SETTLEMENT OF LITIGATION CLAIMS AND AUTHORIZE THE DEBTORS
TO ENTER INTO AND PERFORM UNDER THE SETTLEMENT
AGREEMENT, AND (C) IN RESPONSE TO THE UNITED STATES TRUSTEE'S
OBJECTION TO THE PLAN AND A RELATED SETTLEMENT AGREEMENT**

Law Debenture Trust Company of New York ("Law Debenture"), as successor

indenture trustee under that certain Indenture, dated as of October 31, 2007 (the "Indenture"),

among Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc. (together,

the "Issuers"), certain guarantors that are affiliates of the Issuers ("Guarantors"), and The Bank

of New York Mellon Trust Company, N.A., pursuant to which (i) $2,045,956,000 aggregate

principal amount of the Issuers' 10.25% Senior Notes due 2015, (ii) $1,441,957,000 aggregate

principal amount of the Issuers' 10.25% Senior Notes due 2015, Series B and (iii)

$1,749,645,671 aggregate principal amount of the Issuers' 10.50%/11.25% Senior Toggle Notes

---

[1] The last four digits of Energy Future Holdings Corp.'s taxpayer identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. A complete list of the Debtors and the last four digits of their federal tax identification numbers is available at http://www.efhcaseinfo.com.

due 2016 (collectively, the "TCEH Unsecured Notes") were issued and are outstanding as of the

date hereof, by and through its attorneys, Patterson Belknap Webb & Tyler LLP and Morris

James LLP, files this statement ("Statement") (A) in support of confirmation of the *Fifth*

*Amended Joint Plan of Reorganization of Energy Futures Holdings Corp., et al., Pursuant to*

*Chapter 11 of the Bankruptcy Code*, dated September 21, 2015 (Dkt. No. 6122) (as modified,

amended, or supplemented from time to time, the "Plan"), (B) in support of approval of the

*Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims*

*and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreemen*t, dated

August 10, 2015 (Dkt. No. 5249), and (C) in response to the *Objection of the United States*

*Trustee to the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et*

*al, Pursuant to Chapter 11 of the Bankruptcy Code and the Motion of Energy Future Holdings*

*Corp., et al, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter*

*Into and Perform Under the Settlement Agreement*, dated October 27, 2015 (Dkt. No. 6705)

("UST Objection").  Law Debenture respectfully states as follows:

### STATEMENT IN SUPPORT OF CONFIRMATION OF THE PLAN AND APPROVAL OF THE SETTLEMENT AGREEMENT

1.      Law Debenture has worked diligently with the Debtors, the TCEH

Committee, and the holders of the TCEH Unsecured Notes to develop the Plan and the related

Settlement Agreement (as defined in the Plan).  If the Plan is confirmed, E-side creditors will be

paid in full; T-side creditors will recover more than under any other plausible transaction; and

years of costly litigation will be avoided.  Therefore, Law Debenture supports confirmation of

the Plan and approval of the Settlement Agreement, and joins: (a) the *Debtors' Memorandum of*

*Law in Support of Confirmation of Joint Plan of Reorganization*, dated October 23, 2015 (Dkt.

No. 6647), (b) the *Debtors' Omnibus Reply to Plan Confirmation Objections*, dated October 30,

2015 (Dkt. No. 6817) (the "Debtors' Reply"), (c) the *Reply of the TCEH Committee in Support of Confirmation of Joint Plan of Reorganization*, dated October 30, 2015 (Dkt. No. 6801) (the "Committee Reply"), and (d) the *Ad Hoc Group of TCEH Unsecured Noteholders' and the Backstop Purchasers' (i) Joinder in the Debtors' Omnibus Reply to Settlement Motion Objections; (ii) Joinder in the Debtors' Reply to Plan Confirmation Objections; and (iii) Reply in Further Support of the Debtors' Settlement Motion and Confirmation of the Plan*, dated October 30, 2015 (Dkt. No. 6822) (the "Ad Hoc Reply").

<u>**RESPONSE TO THE UST OBJECTION**</u>

2.      The Indenture and applicable non-bankruptcy law require Law Debenture to act with prudence on behalf of the holders of the TCEH Unsecured Notes following an event of default, a role that that the drafters of the Bankruptcy Code clearly expected indenture trustees would perform.  (*See* Section A, below.)  The Indenture and applicable non-bankruptcy law provide for the Issuers to pay Law Debenture's reasonable fees and expenses, an obligation that is secured by a charging lien on any distributions to holders of the TCEH Unsecured Notes.  (*See* Section B, below.)  Recognizing this, Article IV.R of the Plan and Section 2.7 of the Settlement Agreement provide for payment of the fees and expenses (including professional fees) of certain parties, including Law Debenture.  The US Trustee objects on the grounds that "section 503 [is] is the sole source of authority to pay post-petition professional fees on an administrative basis." UST Objection, ¶ 33.  The UST Objection ignores other applicable sections of the Bankruptcy Code and Rules – including section 1129(a)(4) and Rule 9019 – which permit the payments contemplated by the Plan and Settlement Agreement.  For the reasons set forth below, Law Debenture respectfully submits that the UST Objection should be overruled.  (*See* Sections C and D, below.)

8138892

A.    **The Indenture, the Bankruptcy Code and Applicable Non-Bankruptcy Law All Contemplate and Require an Active Role for Indenture Trustees in Bankruptcy Cases.**

3.    Law Debenture serves as the indenture trustee for holders of more than $5 billion of TCEH Unsecured Notes. In accordance with the Indenture and applicable non-bankruptcy law, Law Debenture has been active in the Debtors' bankruptcy cases on behalf of those holders.

4.    Section 315(c) of the Trust Indenture Act of 1939 ("TIA") imposes "prudent man" duties upon indenture trustees (such as Law Debenture):

> The indenture trustee shall exercise in case of default (as such term is defined in such indenture) such of the rights and powers vested in it by such indenture, and to use the same degree of care and skill in their exercise, as a prudent man would exercise or use under the circumstances in the conduct of his own affairs.

15 U.S.C. § 77ooo. The Indenture imposes upon Law Debenture a nearly identical contractual obligation to act as a "prudent person" when the Issuers default on the TCEH Unsecured Notes. If an event of default has occurred and is continuing, "the Trustee shall exercise such rights and powers vested in it by this Indenture, and use the same degree of care and skill in its exercise, as a prudent person would exercise or under the circumstances in the conduct of such person's own affairs." Indenture § 7.01. And the Indenture is governed by New York Law, *see* Indenture § 12.08, which also requires indenture trustees to act prudently following an event of default. *See, e.g.*, *Beck v. Manufacturers Hanover Trust Co.*, 218 A.D.2d 1, 13 (N.Y. App. Div. 1st Dep't 1995)("The trustee must in the post-default context act prudently, but only in the exercise of those rights and powers granted in the indenture. [. . .] The trustee is not required to act beyond his contractually conferred rights and powers, but must, as prudence dictates, exercise those

singularly-conferred prerogatives in order to secure the basic purpose of any trust indenture, the repayment of the underlying obligation.").

5.      Congress has recognized the important public policy goals underpinning the TIA:

> [T]he national public interest and the interest of investors in notes, bonds, debentures, evidences of indebtedness, and certificates of interest or participation therein, which are offered to the public, are adversely affected − ... when the trustee does not have adequate rights and powers, or adequate duties and responsibilities, in connection with matters relating to the protection and enforcement of the rights of such investors; ... [and] when the trustee does not have resources commensurate with its responsibilities[.]

15 U.S.C. § 77bbb(a) & (a)(2).  The Third Circuit has long acknowledged that the "intention of Congress, in passing the Trust Indenture Act" was "to increase the protection of investors" in bonds. *In re Pittsburgh & L. E. R. Co. Sec. & Antitrust Litig.*, 543 F.2d 1058, 1067 (3d Cir. 1976).

6.      Finally, the Bankruptcy Code and its legislative history contemplate an active role for indenture trustees in bankruptcy cases.  The Bankruptcy Code has many references to indenture trustees.  *See*, *e.g.*, 11 U.S.C. § 101(29) (defining "indenture trustee"), 11 U.S.C. § 303(b)(1) (indenture trustee may be a petitioning creditor in an involuntary case), 11 U.S.C. § 343 (indenture trustee may examine the debtor at Section 341 meeting), 11 U.S.C. § 501(a) (indenture trustee may file a proof of claim), 11 U.S.C. § 1109(b) (indenture trustee may appear and be heard in a case under title 11), 11 U.S.C. § 1106(a)(4) (indenture trustee required to be furnished with statement of any investigation conducted by a chapter 11 trustee or examiner), 11 U.S.C. § 1121(c) (indenture trustee may file a plan).  Moreover, the Legislative Statements contained within the revision notes to chapter 11 make clear Congress's recognition that, "[g]iven the high standard of care to which indenture trustees are bound, [indenture trustees] are invariably active and sophisticated participants in efforts to rehabilitate corporate debtors in

distress."  11 U.S.C. prec. § 1101.

7.    Law Debenture's active role in these cases met the "high standard of care" to which it is held.  Law Debenture filed proofs of claim against each Issuer and Guarantor, reviewed pleadings, and participated in legacy discovery and discovery concerning the Plan. Law Debenture attended hearings and filed pleadings on issues pertaining to the holders of the TCEH Unsecured Notes.  And Law Debenture worked closely with the Debtors, the TCEH Committee, and representatives of holders of the TCEH Unsecured Notes to formulate the Plan and related settlement documents.  Law Debenture also serves as Co-Chair of the TCEH Committee.  Law Debenture's significant work has benefited the holders of the TCEH Unsecured Notes and the Debtors' estates.

**B.    Law Debenture is Entitled to Payment of its Fees and Expenses in Accordance with the Terms of the Indenture.**

8.    The Indenture establishes that Law Debenture is entitled to payment of the fees and expenses it incurred in performing its duties.  First, in Section 7.07 of the Indenture, the Issuers, and the Guarantors agreed to pay Law Debenture compensation for all services rendered in its role as trustee under the Indenture.  The Issuers and the Guarantors also agreed to reimburse Law Debenture for all reasonable expenses, disbursements, and advances incurred or made by it, including the reasonable compensation and the expenses and disbursements of its agents and counsel.  Indenture § 7.07 ("The Issuer and Guarantors, jointly and severally, shall reimburse the Trustee promptly upon request for all reasonable disbursements, advances and expenses incurred or made by it in addition to the compensation for its services.  Such expenses shall include the reasonable compensation, disbursements and expenses of the [Law

Debenture's] agents and counsel.").[2]  The Indenture also provides that, if Law Debenture incurs

expenses or renders services after an Event of Default specified in Section 6.01(a)(6) or (7),

which define Event of Default to include, *inter alia*, the bankruptcy of the Issuers, such expenses

"are intended to constitute expenses of administration under any Bankruptcy Law."  Indenture

§ 7.07.

9.    As an added assurance that the Issuer will comply with its obligations to

compensate the indenture trustee, the Indenture grants a "charging lien" to Law Debenture to

secure repayment of its fees and expenses.  *See* Indenture, § 7.07 ("[T]o secure the payment

obligations of the Issuer and the Guarantors in this Section 7.07, the Trustee shall have a Lien

prior to the Notes on all money or property held or collected by the Trustee [. . . ].  Such Lien

shall survive the satisfaction and discharge of this Indenture.").  Law Debenture's claim against

the Issuers and Guarantors (*i.e.*, the Debtors) for its unpaid fees and expenses, including the fees

and expenses of its professionals, is thus afforded the enhanced protection of a first priority lien

on any distributions to holders of the TCEH Unsecured Notes.

10.    The UST Objection does not and cannot dispute any of this.  Instead, the

UST Objection opposes a common-sense mechanism that the Debtors have proposed (as have

many debtors before them) to satisfy Law Debenture's claim without the need for Law

Debenture to resort to its charging lien:  payment in cash to Law Debenture.[3]  As discussed

---

[2] The Issuers and the Guarantors also agreed to indemnify Law Debenture for any loss, damage, claim, liability, or expense (including agents' and attorneys' fees) incurred by it in connection with the acceptance or administration of the trust.  Indenture § 7.07.  This indemnification includes the costs and expenses of enforcing the Indenture against the Issuers or any of the Guarantors or defending itself against any claim in connection with the performance of its powers or duties under the Indenture.  *Id.*

[3] The provision is especially sensible in this case.  Enforcement of the charging lien against a possibly illiquid security (*i.e.*, the New EFH Common Stock to be distributed to unsecured creditors of the TCEH Debtors), with potential restrictions regarding the time and manner of resale, could inject uncertainty and delay into the process of relaying distributions to beneficial noteholders.  This underscores the prudence of a provision that achieves the exact same result – satisfaction of Law Debenture's unpaid fees and

below, this arrangement does not violate the Bankruptcy Code and, therefore, it is entirely

appropriate for the Debtors to include it in the Plan. *See* 11 U.S.C. § 1123(b)(6).

C.    **Section IV.R of the Plan is Consistent with the Bankruptcy Code.**

11.    Article IV.R of the Plan provides, in pertinent part, that "[t]he EFH

Debtors shall pay in cash in full on the Effective Date, the reasonable and documented fees and

expenses (including professional and other advisory fees and expenses) incurred through the

Effective Date of the TCEH Unsecured Notes Trustee." Plan, Art. IV.R.  As set forth above, this

provision comports with the Indenture, the TIA, and the Bankruptcy Code.  Indeed, courts in this

district often confirm plans of reorganization that provide for payment of indenture trustee fees.

*See, e.g.,* Order Confirming Fourth Amended Plan of Reorganization, *In re Exide Techs.*, No. 13-

11482 (KJC) (Bankr. D. Del. March 27, 2015), ECF No. 3423; Fourth Amended Plan of

Reorganization § 2.5, *id.*, ECF No. 3243-2 (providing, in plan of reorganization, for debtor to

pay fees and expenses incurred by the subordinated notes trustee); *see also* Order Confirming

Seventh Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11, *In re Washington*

*Mut., Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. Feb. 24, 2012), ECF No. 9759.

12.    Even so, the US Trustee insists that payment of the professional fees

incurred by Law Debenture must satisfy section 503(b) of the Bankruptcy Code.  This is a straw

man.  Article IV.R of the Plan does not rely on, and Law Debenture has not sought payment of

its fees and expenses pursuant to, section 503(b) of the Bankruptcy Code.[4]  Nevertheless, relying

---

expenses – without the potential delay or transaction costs attendant to an exercise of the charging lien.
This may explain why all parties with an economic stake in distributions – the parties whose cash will be
used to make the payments in question – actively *support* this Court's approval of Article IV.R of the
Plan and Section 2.7 of the Settlement Agreement.  *See* Ad Hoc Reply, ¶¶ 60-66; Debtors' Reply, ¶¶ 155-
159; Committee Reply, ¶ 34.

[4] Importantly, Law Debenture *could* seek payment of its fees and expenses pursuant to section 503(b)(1)
of the Bankruptcy Code because, as noted above, the Indenture provides that such fees and expenses are
intended to constitute expenses of administration and because Law Debenture's efforts conferred a clear

on the 2014 decision of the Southern District of New York in *Davis v. Elliot Mgmt. Corp. (In re*
*Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014) ("*Lehman II*"), the US Trustee
asserts that section 503(b) is the "sole source of authority to pay post-petition professional fees
on an administrative basis."  UST Objection, ¶ 33.

13.    The proposed plan in *Lehman* included a provision "for payment of the
legal expenses of individual members of an official committee."  *In re Lehman Bros. Holdings,*
*Inc.*, 487 B.R. 181, 185 (Bankr. S.D.N.Y. 2013) ("*Lehman I*").  The US Trustee objected on the
same grounds as it is objecting here, *i.e.*, that payment of an indenture trustee's fees under a plan
must be scrutinized under section 503(b) of the Bankruptcy Code in all cases.  The Bankruptcy
Court rejected this argument:

> The flaw in the UST's argument is the embedded assumption that the
> administrative claim formulation of Section 503(b) functions as a trump card
> that extends across the Bankruptcy Code to block the formulation of a plan
> that proposes independent grounds for granting comparable payment rights.
> There is no basis for such a contention. Moreover, the objection of the UST
> discounts both the enormous leeway granted to the architects of plans under
> Section 1123(b)(6) of the Bankruptcy Code (providing that a plan may include
> any other appropriate provision not inconsistent with the applicable provisions
> of this title) and the authority and discretion of the bankruptcy court to
> approve payments in connection with a plan as being reasonable under
> Section 1129(a)(4).

*Lehman I*, at 186.  The District Court reversed, concluding that even though "the Bankruptcy
Code does not explicitly forbid payments professional fees that are not administrative expenses,
no such explicit prohibition is necessary."  *Lehman II*, 508 B.R. at 293.[5]  The District Court also
rejected in a footnote the possibility that the fees at issue could be paid pursuant to section

---

benefit on the estates.  But the Court does not need to reach this issue.  Instead, the Court can conclude, as
others in this district have already, that a plan may provide for the payment of the fees and expenses of an
indenture trustee so long as they are "reasonable."  *See* ¶¶ 15-16.

[5] The District Court's acknowledgment that the Bankruptcy Code does not forbid the payments could
have ended the inquiry, because section 1123(b)(6) of the Bankruptcy Code authorizes the inclusion in a
plan of "any other appropriate provision not inconsistent with the applicable provisions of this title."

1129(a)(4) because that section "is partly focused on ensuring disclosure of payments made in connection with the plan" and "necessarily addresses payments other than those governed by § 503(b)." *Id.* at 294. This analysis imagines limitations on section 1129(a)(4) that are not found anywhere in that section and ignores that disclosure related to a plan is governed by section 1125. Law Debenture respectfully submits that the Bankruptcy Court's analysis in *Lehman I* is more persuasive than the District Court's analysis in *Lehman II* because it gives effect to and harmonizes all of the relevant sections of the Bankruptcy Code.

14.     Significantly, *Lehman* focused on an indenture trustee's requests for reimbursement of the fees and expenses for serving on an official creditors' committee. While Law Debenture has served on the TCEH Committee in these cases, the fees and expenses for which it will request reimbursement pursuant to the Plan were incurred largely in its capacity as an individual creditor. For the reasons explained above, this Court should not follow *Lehman II*. To *expand* the holding in that case as advocated by the US Trustee – to require compliance with section 503(b)'s "substantial contribution" requirement for all indenture trustee fees – would require this Court to conclude that the Bankruptcy Code, while contemplating an active and vital role for indenture trustees in bankruptcy cases, only permits an issuer to comply with its statutory and contractual obligations to compensate trustees for those efforts if they make a "substantial contribution" to the case, an exacting standard that does not correlate to, and could even be at odds with, an indenture trustee's duties that are expressly delineated in the TIA and all standard indenture documents.

15.     In any event, a Bankruptcy Court in Delaware is not bound by the decision of a District Court in New York. Law Debenture submits that section 1129(a)(4) of the Bankruptcy Code provides a valid and independent basis to approve Article IV.R of the Plan.

The US Trustee appears to acknowledge this, but argues that "Article IV.R violates [Section 1129(a)(4)] because it purports to give the reorganized Debtors (and not the Court) sole discretion to determine whether a particular fee is reasonable, it provides no disclosure whatsoever of the actual fees to be paid, and there is consequently no basis on which this Court can make the reasonableness finding required by section 1129(a)(4)."  UST Objection, ¶ 35. This argument ignores the text of section 1129(a)(4), which provides that "[a]ny payment made or to be made by . . . by the debtor . . . under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, *or is subject to the approval of*, the court as reasonable."  11 U.S.C. § 1129(a)(4) (emphasis added).

16.     Thus, Law Debenture's fees and expenses can be paid under the Plan and the Bankruptcy Code if the fees and expenses are "reasonable" and "subject to the approval of the Court."  Pursuant to the Plan, Law Debenture will seek reimbursement from the Debtors.  If the Debtors and Law Debenture disagree over the reasonableness of any of the requested fees and expenses, the disputed portion would be subject to Court approval.  *See, e.g.*, Plan, Art. XI(16) (retaining this Court's jurisdiction to "adjudicate any and all disputes arising from or relating to distributions under the Plan").  And, as the Debtors correctly note, the reasonableness inquiry takes on considerably less significance where, as here, the fees are effectively paid by a non-debtor party.  *See* Debtors' Reply, ¶ 158.  Article IV.R of the Plan is thus entirely consistent with the Bankruptcy Code, the Indenture, and the TIA.

**D.     Section 2.7 of the Settlement Agreement Reflects a Reasonable and Valid Exercise of the Debtors' Business Judgment.**

17.     Section 2.7 of the Settlement Agreement provides an independent basis for the Court to approve the payment of Law Debenture's fees and expenses.  It is well-established

in the Third Circuit and elsewhere that "settlements are favored in bankruptcy," and, therefore, "it would make sense for the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure to leave bankruptcy courts more flexibility in approving settlements than in confirming plans of reorganization." *In re Jevic Holding Corp.*, 787 F.3d 173, 184 (3d Cir. 2015). *See also In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 619-620 (Bankr. D. Del. 2001) ("Settlements are favored in bankruptcy because they serve to minimize litigation, provide a means for efficient resolution of disputes, and help to expedite the administration of the bankruptcy estate. In determining whether or not to approve a settlement, the court must consider whether the settlement is 'fair and equitable' and in the 'best interests of the estate.' In the normal course, the court will defer to the trustee's judgment so long as there is a legitimate business justification.").

18.     The US Trustee argues that, "[e]ven if the third-party fee provisions of the Settlement Agreement were considered in isolation from the Plan, the result would be no different. Nothing in the Bankruptcy Rule 9019 authorizes courts to create categories of administrative expenses not subject to section 503, and section 105(a) cannot be used to override the prohibitions of another section of the Code." UST Objection, ¶ 34, n.10. But, as the Ad Hoc Reply correctly notes, this statement is at odds with cases in which Courts have approved payment of professional fees as part of a global settlement. *See* Ad Hoc Reply, ¶ 64 (collecting cases).

19.     The Debtors' decision to provide for payment of fees and expenses of certain parties that negotiated and developed the Settlement Agreement was a valid exercise of their business judgment. As noted above, the charging lien assures payment of Law Debenture's fees and expenses. Section 2.7 of the Settlement Agreement – like Article IV.R of the Plan –

8138892

streamlines the process so that distributions can be made to creditors seamlessly, while protecting Law Debenture's valid and enforceable claim for fees and expenses.  This is precisely the kind of "legitimate business justification" that warrants approval under the flexible standards of Bankruptcy Rule 9019.

## <u>RESERVATION OF RIGHTS</u>

20.     Law Debenture reserves all rights with respect to its fees and expenses, including the right to exercise its charging lien in satisfaction of any fees and expenses that are not paid pursuant to the Plan, the Settlement Agreement, or otherwise.  Law Debenture further reserves the right to supplement this Statement, to submit additional briefing on any issue, and to appear and be heard at the hearing to consider confirmation of the Plan and approval of the Settlement Agreement.

[*Remainder of page intentionally left blank*]

## CONCLUSION

For the reasons set forth in this Statement, Law Debenture respectfully requests that the Court confirm the Plan, approve the Settlement Agreement, and deny the UST Objection.

Dated:      October 30, 2015                    **MORRIS JAMES LLP**

/s/ Stephen M. Miller
Stephen M. Miller (DE Bar No. 2610)
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
Telephone:  (302) 888-6800
Facsimile:   (302) 571-1750
Email: smiller@morrisjames.com

- and -

Daniel A. Lowenthal
Brian P. Guiney
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Telephone:  (212) 336-2000
Facsimile:   (212) 336-2222
Email: dalowenthal@pbwt.com
        bguiney@pbwt.com

*Attorneys for Law Debenture Trust Company of
New York, as Indenture Trustee*

8138892