# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re )<br>)<br>ENERGY FUTURE HOLDINGS CORP., )<br>*et al.*, )<br>)<br>            *Debtors.* ) | Chapter 11<br>Bankruptcy Case No. 14-10979 (CSS)<br>(Jointly Administered) |
| COMPUTERSHARE TRUST COMPANY, )<br>N.A. and COMPUTERSHARE TRUST )<br>COMPANY OF CANADA, as )<br>INDENTURE TRUSTEE )<br>)<br>            *Plaintiff,* )<br>    v. )<br>)<br>ENERGY FUTURE INTERMEDIATE )<br>HOLDING COMPANY LLC and )<br>EFIH FINANCE INC. )<br>)<br>            *Defendants.* ) | Adversary Proceeding<br>No. 14-50405 (CSS) |

## MEMORANDUM OPINION[1]

Computershare Trust Company N.A. and Computershare Trust Company of Canada are the indenture trustee (together, the "Second Lien Trustee") for the 11% Senior Secured Second Lien Notes due 2021 and 11.75% Senior Secured Second Lien Notes due 2022.[2] Pursuant to the Indenture dated April 25, 2011 and the First Supplemental Indenture

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052. The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. § 157 and 1334. This is a core proceeding pursuant to 11 U.S.C. 157(b)(2). Venue is proper pursuant to 28 U.S.C. § 1408 and 1409. This Court has the judicial power to enter a final order.

[2] Respectively, the "2021 Notes" and "2022 Notes." Together, the "Second Lien Notes."

dated February 6, 2012,[3] Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "EFIH") issued $406,392,000 of 2021 Second Lien Notes and $1.750 billion of 2022 Second Lien Notes. Pursuant to the Second Lien Indenture and the Bankruptcy Code, the Second Lien Trustee timely filed Proofs of Claim No. 7486 and 7487.

On April 29, 2014,[4] Energy Future Holdings Corp. and a number of its affiliates and subsidiaries, including EFIH,[5] filed for bankruptcy in the District of Delaware. Nine months after filing, EFIH sought Court approval to use its remaining DIP financing to pay $750 million of principal and accrued interest under the Second Lien Notes.[6] The Court approved the Partial Paydown, and the Second Lien Notes were partially paid on March 11, 2015. Through the Amended Complaint, the Second Lien Trustee asserts a claim on behalf of the holders of the Second Lien Notes against EFIH for EFIH's failure to pay the "Applicable Premium," which the Second Lien Trustee claims became due when EFIH made the Partial Paydown. The Second Lien Trustee also seeks a number of declarations; in particular, the Second Lien Trustee asks the Court to rule that any future paydown of the Second Lien Notes prior to their Call Dates will give rise to a secured claim for the Applicable Premium.

---

[3] Together and with all supplements, amendments, and exhibits, the "Second Lien Indenture."

[4] The "Petition Date."

[5] Collectively, the "Debtors."

[6] The "Partial Paydown."

**BACKGROUND**

The Debtors filed for bankruptcy on the Petition Date, citing both liquidity concerns and a need to restructure their ongoing operations. EFIH is a subsidiary holding company of the lead debtor, Energy Future Holdings Corp. EFIH's primary asset is its equity interests in Oncor Electric Delivery Holdings Company, LLC,[7] which, through its subsidiaries, operates the largest electrical distribution and transmission system in Texas. The equity in Oncor is also the sole source of collateral for the Second Lien Notes.

Before filing, EFIH had already sought and begun negotiations with a DIP lender and sought approval for DIP financing in its first day filings and motions.[8] EFIH planned to use the DIP financing to pay in whole the First Lien Noteholders, and contemplated that a second round of DIP financing would be used to pay the Second Lien Noteholders. On May 13, 2014, the First Lien Trustee filed an objection to the DIP Motion and on May 14, 2015, filed an adversary proceeding in this Court. The First Lien Trustee argued, in part, that "(i) an Optional Redemption would occur when the Notes were repaid, (ii) the EFIH intentionally defaulted by filing bankruptcy in order to avoid paying the Applicable Premium and (iii) the repayment would be a breach of the Noteholders' right to rescind the Notes' acceleration."[9] On June 16, 2014, the Second Lien Trustee filed this adversary action, seeking declaratory judgment on the same issues in regards to the Second Lien

---

[7] Together, with its direct and indirect subsidiaries, "Oncor."

[8] The "DIP Motion."

[9] *Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, 527 B.R. 178, 182 (Bankr. D. Del. 2015) ("*EFH I*").

Notes. After the parties entered into certain agreements preserving their rights for judicial relief, the Court approved both the DIP Motion and the paydown of the First Lien Notes.

EFIH later decided not to pursue a second round of DIP Financing. Instead, EFIH filed a motion on February 12, 2015, requesting the Court's approval to use a substantial portion of the remaining DIP financing to pay down the Second Lien Notes. The Second Lien Trustee timely objected and, after the parties agreed to certain reservations of rights and remedies, the Court approved the Partial Paydown on March 10, 2015. On April 13, 2015, the Second Lien Trustee filed its Amended Complaint in this adversary proceeding. On July 17, 2015, EFIH filed a motion seeking summary judgment on Counts I-VII and IX-X of the Amended Complaint. On August 13, 2015, the Second Lien Trustee filed its opposition to EFIH's motion and a cross-motion seeking summary judgment on Counts I-VII, IX-X and XII of the Amended Complaint.

## THE FIRST LIEN MAKE-WHOLE PROCEEDINGS

Meanwhile, the First Lien Trustee's adversary action against EFIH proceeded at full steam. EFIH and the First Lien Trustee filed cross-motions for summary judgment on February 13, 2015. After a hearing on March 16, 2015—and review of the First Lien Indenture and governing law—the Court issued its findings of fact and conclusions of

law on March 26, 2015 and denied the First Lien Trustee's motion for summary judgment while granting, in part, EFIH's cross-motion for summary judgment.[10]

In so doing, the Court found that (i) EFIH's bankruptcy filing was not an intentional default under the First Lien Indenture, (ii) EFIH's bankruptcy filing caused an automatic acceleration of its Obligations under the First Lien Indenture and (iii) under the plain language of the First Lien Indenture, EFIH's repayment of the First Lien Notes did not meet the conditions necessary for an Applicable Premium to become due.[11] The Court further held that the First Lien Trustee's attempt to waive EFIH's default and rescind the acceleration of the First Lien Notes would violate the automatic stay.[12] After additional briefing and a hearing, the Court found that cause did not exist to lift the automatic stay *nunc pro tunc* to allow the First Lien Trustee to waive EFIH's default and decelerate the First Lien Notes.[13]

Except as noted below, the relevant provisions of the Second Lien Indenture and the First Lien Indenture are substantially identical. Under New York law, if a document or writing is complete, the Court need not look "outside the four corners" of the document in determining the parties' intent.[14] The Court therefore incorporates its prior

---

[10] *Id.* at 202.

[11] *Id* at 183-84.

[12] *Id.*

[13] *Delaware Trust Co. v. Energy Future Intermediate Holding Co. LLC (In re Energy Future Holdings Corp.)*, 533 B.R. 106, 110-11 (Bankr. D. Del. 2015) ("*EFH II*").

[14] *W.W.W. Assoc., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990); *see also R/S Assocs. v. N.Y. Job Dev. Auth.*, 771 N.E.2d 240, 242 (N.Y. 2002) (applying same principle).

interpretation of the First Lien Indenture [15] to the Second Lien Indenture under examination here, except as to § 6.02 of the Indenture, in which the Second Lien Trustee has identified a textual difference between the First Lien Indenture and the Second Lien Indenture.

## DISCUSSION

### A. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 is made applicable to these adversary proceedings by Federal Rule of Bankruptcy Procedure 7056 and directs that summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[16] Summary judgment is designed "to avoid trial or extensive discovery if facts are settled and the dispute turns on an issue of law."[17]

Neither party before the Court has raised a genuine dispute of a material fact or expressed a need for more discovery. The questions before the Court are purely legal in nature. Summary judgment is therefore appropriate at this stage.[18]

---

[15] *EFH I* at 186-87.

[16] Fed. R. Civ. P. 56(a); *see also In re Delta Mills, Inc.*, 404 B.R. 95, 103 (Bankr. D. Del. 2009).

[17] *Delta Mills*, 404 B.R. at 104.

[18] *Niagara Frontier Transit Metro Sys., Inc. v. Cnty. of Erie*, 212 A.D.2d 1027 (1995) ("Where the contract is unambiguous on its face, it should be construed as a matter of law and summary judgment is appropriate."); *Green Mach. Corp. v. Zurich Am. Ins. Grp.*, No. CIV. A. 99-3048, 2001 WL 1003217, at *6 (E.D. Pa. Aug. 24, 2001) ("Whether a contract provision is ambiguous is a question of law for the court."), *aff'd sub nom. Green Mach. Corp. v. Zurich-Am. Ins. Grp.*, 313 F.3d 837 (3d Cir. 2002).

## B. Contract Interpretation Under New York Law

Under New York law, which governs the Second Lien Indenture,[19] the Court need not look "outside the four corners" of a complete document to determine what the parties intended.[20] Here, neither party has alleged that the Second Lien Indenture is an incomplete document, so it is not necessary to resort to extrinsic evidence to interpret it. Moreover, neither party contends that any term in the Second Lien Indenture is ambiguous—instead, each party relies on its own "plain reading" in reaching competing results. A contract is not ambiguous merely because the parties offer different constructions of the same term.[21] The Court finds that the Second Lien Indenture is not ambiguous.

Having reached the conclusion that the Second Lien Indenture is unambiguous, the Court relies on long-recognized canons of interpretation to determine its meaning. First, "[t]he best evidence of what parties to a written agreement intend is what they say in their writing."[22] Second, should there be an inconsistency between a specific and general

---

[19] Second Lien Indenture at § 13.08 "Governing Law," attached as Exhibit A to the Amended Complaint.

[20] *W.W.W. Assoc.*, 566 N.E.2d at 642.

[21] *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993).

[22] *Schron v. Troutman Sanders LLP*, 986 N.E.2d 430, 433 (N.Y. 2013) (internal quotation marks and citation omitted).

provision of a contract, the specific controls.[23]  Third, "[a] reading of the contract should not render any portion meaningless."[24]

### C. The Parties' Positions

The Second Lien Trustee argues that the inclusion of the phrase "premium, if any," in § 6.02 of the Second Lien Indenture can only be interpreted as requiring the payment of a make-whole premium upon acceleration.  Because this phrase was not in § 6.02 of the First Lien Indenture, the Second Lien Trustee argues, the Court's interpretation of the First Lien Indenture is not applicable here.

In response, EFIH argues that the "premium, if any" language cannot reasonably be read as requiring a make-whole upon acceleration.  EFIH further asserts that even if this were a reasonable interpretation, New York law and precedent both require a provision providing for a make-whole payment be in express, specific language and  that the phrase "premium, if any" cannot be considered express and specific enough to meet this burden.

### D. Make-Whole and Prepayment Premiums

As a general rule regarding make-whole or prepayment premiums, "a lender is not entitled to prepayment consideration after a default unless the parties' agreement expressly requires it.  This is because prepayment provisions generally address the consideration to be paid when the borrower voluntarily prepays the debt, but after a

---

[23] *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956); *Waldman v. New Phone Dimensions, Inc.*, 487 N.Y.S.2d 29, 31 (N.Y. App. Div. 1985).

[24] *See Beal Sav. Bank v. Sommer*, 865 N.E. 2d 1210, 1213 (N.Y. 2007) (quotation marks and citations omitted); *Barrow v. Lawrence United Corp.*, 538 N.Y.S.2d 363, 365 (N.Y. App. Div. 1989) ("Contracts are also to be interpreted to avoid inconsistencies and to give meaning to all of its terms.").

8

default the borrower's repayment is neither voluntary nor in the nature of a prepayment."[25] However, parties may agree that "even after default and acceleration, or where the borrower's prepayment is otherwise involuntary, an amount that is equivalent to prepayment consideration may nevertheless be due."[26] However, the parties' agreement *must* be express and the terms of their agreement *must* define the parameters of the borrower's obligation to make a make-whole or prepayment premium in the event of default and/or acceleration.[27] If the language is explicit,

> [c]ourts review prepayment consideration terms that are triggered by default and acceleration under the standards applicable to liquidated damages. That is, courts consider whether the amount due is an unenforceable penalty.[28]

---

[25] *In re S. Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011) *aff'd sub nom. U.S. Bank Nat. Ass'n v. S. Side House, LLC*, No. 11-CV-4135 ARR, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) (citations omitted). *See also Energy Future Holdings Corp.*, 527 B.R. at 192 ("Under New York law, an indenture must contain express language requiring payment of a prepayment premium upon acceleration; otherwise, it is not owed."); and *MSCI 2007-IQ16 Retail 9654, LLC v. Dragul*, No. 1:14-CV-287, 2015 WL 1468435, at *3 (S.D. Ohio Mar. 30, 2015) ("Upon default and the acceleration of the loan, the maturity date advances and any subsequent payment is no longer considered a voluntary prepayment. The lender forfeits the collection of a prepayment premium in such a scenario unless the parties' agreement contains a 'clear and unambiguous' clause requiring payment of the prepayment premium upon default and acceleration. This general rule created the problem that a borrower might actually intentionally default to acquire the right to prepay without penalty, so lenders began including provisions in loan documents to ensure the prepayment penalty would be enforceable after default.") (citations omitted)).

[26] *S. Side House*, 451 B.R. at 269 (citations omitted).

[27] *Id.* at 270.

[28] *Id.* (holding mortgage lender's claim for a post-default, post-acceleration prepayment premium, pursuant to "escape" clause in mortgage documents that prohibited debtor from evading prepayment fee by tendering full amount of debt post-foreclosure, had to be disallowed; because the debtor, in proposing to pay mortgage debt over time in plan of reorganization, was not tendering full amount of debt, and was not attempting to prepay this accelerated debt.).

As the Second Circuit has explained, a prepayment premium is enforceable "where (1) actual damages may be difficult to determine and (2) the sum stipulated is not 'plainly disproportionate' to the possible loss."[29]

### E. The Applicable Premium is Not Due Under the Terms of the Second Lien Indenture.

Pursuant to the terms of the Second Lien Indenture, the Court must determine whether an Applicable Premium is due. As the Second Lien Notes were automatically accelerated as a result of the Debtors' bankruptcy filings, the Partial Payment of the Second Lien Notes was not an optional redemption nor will any future payment be an optional redemption. As this Court stated in relation to the First Lien Notes, which is also applicable herein:

> When the EFIH Debtors filed for bankruptcy, the Notes automatically accelerated and became due and payable immediately. Under New York law, a borrower's repayment after acceleration is not considered voluntary. This is because acceleration moves the maturity date from the original maturity date to the acceleration date and that date becomes the new maturity date. Prepayment can only occur prior to the maturity date, and acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity. Once the maturity date is accelerated to the present, it is no longer possible to prepay the debt before maturity. Acceleration therefore does not trigger the Trustee's right to prepayment consideration under the Optional Redemption provision. Thus, the Trustee's claim that the EFIH Debtors' repayment was an optional redemption must fail.[30]

---

[29] *United Merchants and Mfrs., Inc. v. Equitable Life Assurance Society of the US (In re United Merchants & Mfrs., Inc.)*, 674 F.2d 134, 142 (2d Cir. 1982).

[30] *EFH I* at 195 (citations and quotations marks omitted).

There is nothing in the Second Lien Indenture that would lead the Court to a different conclusion. The Partial Paydown was not "optional" as the Second Lien Notes were accelerated under the terms of section 6.02 of the Second Lien Indenture. According to the terms of the Second Lien Indenture, the Applicable Premium is not due. Thus, even if the Court found that the language "if any" (as discussed *infra*) refers back to sections 3.07(a) and 3.07(d) of the Second Lien Indenture, there would be no premium due pursuant to the terms of the Second Lien Indenture.[31]

### F. Second Lien Indenture Language: "Premium, If Any"

As stated above, the Applicable Premium has not been triggered under the terms of the Second Lien Indenture. However, the Second Lien Trustee asserts that language in the acceleration provision provides for payment of a make-whole premium (in addition to principal, interest, etc.) upon automatic acceleration. The Second Lien Trustee asserts that the acceleration clause language in the Second Lien Indenture differs from the First

---

[31] *See In re MPM Silicones, LLC*, No. 14-22503-RDD, 2014 WL 4436335, at *3 (Bankr. S.D.N.Y. Sept. 9, 2014) *aff'd*, 531 B.R. 321 (S.D.N.Y. 2015) (hereinafter, "*Momentive*").

At oral argument, the Second Lien Trustee presented an argument that appears to differ subtly but significantly from its primary argument in the briefing. Rather than assert that § 6.02 causes the make-whole premium to become due upon acceleration, the Second Lien Trustee appears to be rehashing the primary argument made by the First Lien Lenders in their attempt to receive a make-whole premium: namely, that even though § 6.02 accelerated the First Lien Notes, the Partial Paydown still constituted a "redemption" under § 3.07. The Second Lien Trustee argues that the change of language in § 6.02, namely the presence of the phrase "premium, if any," makes this argument more credible than it was when the Court considered and rejected it during the First Lien proceedings.

The Second Lien Trustee's assertion is incorrect. As EFIH's counsel summarized, it appears the Second Lien Trustee is asking the Court to embrace a new principle of law: that "unless acceleration clearly extinguishes the prepayment provision, that provision continues in full force post-acceleration." As the Court found in the previous preceding, however, the plain language of § 3.07 is that only prepayment creates an obligation in EFIH to pay an "Applicable Premium." Because § 6.02 accelerated the Second Lien Notes when EFIH declared bankruptcy, therefore, the Partial Paydown did not constitute a prepayment.

11

Lien Indenture – and these additional 9 words create the obligation to pay the make-whole upon acceleration. As compared to the acceleration clause in the First Lien Indenture, the Second Lien Indenture states, in part (differing language is bolded):

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of **and premium, if any**, interest (including Additional Interest, if any) **and any other monetary obligations** on the outstanding Notes shall be due and payable immediately without further action or notice.[32]

Thus, the Court must determine whether these additional 9 words create the obligation to pay a make-whole premium after acceleration.

The Bankruptcy Court for the Southern District of New York examined virtually identical language in *Momentive*.[33] The language in the Momentive's indenture was as follows: "'If an Event of Default specified in Section 6.01(f) or (g) with respect to MPM [which includes the debtors' bankruptcy] occurs, the principal of, premium, if any, and interest on all the Notes shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holders.'"[34] In *Momentive*, Judge Drain held:

> [I]t is "well-settled law," that, unless the parties have clearly and specifically provided for payment of a make-whole (in this case the Applicable Premium), notwithstanding the acceleration or advancement of the original maturity date of the notes, a make-whole will not be owed. Such language is

---

[32] Second Lien Indenture § 6.02 (emphasis added).

[33] 2014 WL 4436335, *supra*.

[34] *Id.* at *13.

>lacking in the relevant sections of the first and 1.5 lien indentures and notes; therefore, they do not create a claim for Applicable Premium following the automatic acceleration of the debt pursuant to Section 6.02 of the indentures.[35]

Thus, the *Momentive* court held that the "premium, if any" to be paid upon prepayment was not specific enough to meet the specificity requirement of New York law in order for the make-whole or prepayment claim to be payable post-acceleration.[36] Judge Drain continued to state that even if the "if any" language referred back to the actual provisions of the indenture that provides for a specific premium, those premium provisions do not sufficiently provide for payment after acceleration under New York law.[37]

The *Momentive* court stated that there are only two ways to receive a make-whole upon acceleration under New York law: (i) explicit recognition that the make-whole would be payable notwithstanding the acceleration, or (ii) a provision that requires the borrower to pay a make-whole whenever debt is repaid prior to the *original* maturity.[38] As discussed *infra*, the relevant language in this case is identical to that in *Momentive* and does not explicitly provide for payment of the premiums notwithstanding acceleration nor does it provide for payment of the make-whole any time prior to the original due date.

---

[35] *Id.* at *14 (citations omitted).

[36] *Id.* at *15.

[37] *Id.*

[38] *Id.*

The District Court for the Southern District of New York affirmed the bankruptcy court's holding in *Momentive* holding that the language "premium, if any" was not sufficient to create an "unambiguous right to a make-whole payment."[39] This Court fully endorses and adopts the holding in the *Momentive* cases.

The Second Lien Trustee attempts to distinguish *Momentive* because Judge Drain likened "if any" to other belt-and-suspenders catch-all provisions in other New York cases, where the role of "catch-all" in the Second Lien Indenture is played by the "and any other monetary obligations" provision – thus, according to the Second Lien Trustee, the phrase "premium, if any" in this case refers to the applicability of the call premium for payments made after the maturity date. This distinction fails for several reasons: (i) the Second Lien Indenture is not specific or explicit about the payment of any premium upon automatic acceleration; and (ii) "if any" means that the premium may not be due at all.

The Second Lien Trustee also advances the argument that "premium, if any" must be "specific" because the Second Lien Indenture would not contain two "catch all" provisions. However, legal documents such as the Second Lien Indenture often contain redundant language and "mere redundancy of words is not so unusual as to justify the court in giving an interpretation to the contract which its words do not import."[40]

---

[39] *U.S Bank N.A. v. Wilmington Savings Fund Society (In re MPM Silicones, LLC)*, 531 B.R. 321, 336 (S.D.N.Y. 2015).

[40] *Casler v. Connecticut Mut. Life Ins. Co.*, 22 N.Y. 427, 432 (1860).

In another example similar to *Momentive*, in *In re Solutia Inc.*, the bankruptcy court found the language of "premium, if any" insufficient and lacking in "explicitness that would be expected in a typical post-acceleration yield-maintenance clause."[41] Similarly, in *In re AMR Corp.*, the bankruptcy court held that it "reads 'if any' to mean that payment of the Make–Whole Amount is not automatic and there are some circumstances under which a Make–Whole Amount will not be payable."[42]

These cases should be compared to *Northwestern Mutual* and *United Merchants*, wherein the courts held that the contractual language was explicit. In *Northwestern Mutual Life Ins. Co. v. Uniondale Realty Associates*, the court reviewed the following language in the loan agreement (referred to below as the "Note"):

> "Borrower shall have the right, upon thirty (30) days advance written notice, beginning December 15, 2003 of paying this note in full with a *prepayment fee*. This fee represents consideration to Lender for loss of yield and reinvestment costs. The fee shall be the greater of *Yield Maintenance* or 2% of the outstanding principal balance of this note on the date of prepayment. In the event of a prepayment of this note following (i) the occurrence of an Event of Default . . . followed by the acceleration of the whole indebtedness evidenced by this note . . . such prepayment will constitute an evasion of the prepayment terms . . . and be deemed to be a voluntary prepayment . . . and such payment will, therefore, .

---

[41] *In re Solutia Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007).

[42] *U.S. Bank Trust N.A. v. American Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 303 (Bankr. S.D.N.Y.) *aff'd*, 730 F.3d 88 (2d Cir. 2013) *cert. denied sub nom. U.S. Bank Trust Nat. Ass'n v. AMR Corp.*, 134 S. Ct. 1888, 188 L. Ed. 2d 913 (2014).

<200b><200b><200b><200b><200b><200b><200b><200b>
<200b><200b><200b><200b><200b><200b><200b><200b>
<200b>
<200b>
<200b>
<200b>
<200b>
<200b>
<200b>
<200b>

> . . . include the prepayment fee required under the prepayment in full privilege recited above . . ."[43]

The *Northwestern Mutual* court held: "When a clear and unambiguous clause which calls for payment of the prepayment premium or a sum equal thereto, at any time after default and acceleration is included in the loan agreement, such clause is analyzed as liquidated damages and is generally enforceable."[44] The *Northwestern Mutual* court found that the critical language in the subject clause is "in the event of prepayment" and "evasion."[45] The *Northwestern Mutual* court held:

> the subject clause eliminates the need to prove that prepayment after acceleration is an intentional avoidance of the premium, as prepayment after acceleration is "deemed" voluntary and an avoidance. *The clause does not, however, contain language indicating prepayment application in foreclosure, redemption or any other payment.* If the word "prepayment" in the subject clause was intended to include "redemption" in the context of foreclosure, it would be expressly included, as was done in the aforementioned examples.[46]

Thus, the court ultimately found that the prepayment premium was only relevant after an attempt at prepayment after a default and acceleration but prior to commencement of a foreclosure action; thus in *Northwestern Mutual*, as it was a foreclosure action, the prepayment premium was not recoverable.[47] Thus, even though

---

[43] *Nw. Mut. Life Ins. Co. v. Uniondale Realty Associates*, 816 N.Y.S.2d 831, 833-34 (Sup. Ct. 2006) (*quoting* the Note at issue in the case; emphasis supplied in Note).

[44] *Id.* at 836 (citations omitted).

[45] *Id.* at 839.

[46] *Id.* (emphasis added).

[47] *Id.* at 839-40.

16

the language in *Northwestern Mutual* was more specific than the Second Lien Indenture language, the *Northwestern Mutual* court ultimately held that the language lack specificity in a foreclosure context and, therefore, did not allow the premium.

Similarly, in *In re United Merchants and Manufacturers, Inc.*, the default provision in the note at issue stated:

> then, at the option of the holder of any Note, exercised by written notice to (UM&M), the principal of such Note shall forthwith become due and payable, together with the interest accrued thereon, and, to the extent permitted by law, an *amount equal to the pre-payment charge that would be payable if (UM&M) were pre-paying such Note at the time pursuant to P 8.2 hereof*.[48]

The Second Circuit held that this liquidated damages provision in the agreement was valid under New York law as it was a loan agreement between sophisticated parties for a large sum of money and the amount stipulated was "not plainly disproportionate to the possible loss." [49]  Again, however, as distinguished from this case, the contractual language was specific regarding the amount of the pre-payment charge and specifically referring to the calculation thereof in the note.  Here, the Second Lien Indenture states "premium, if any" without any additional language referring to the amount of such premium or what type of premium being sought.

The Second Lien Indenture does not provide specifically for a payment of a premium upon acceleration, nor does it refer back to specific sections of the Second Lien Indenture.

---

[48] *United Merchants and Mfrs*, 674 F.2d at 140 (emphasis added; footnote and citations omitted).

[49] *Id.* at 143 (internal quotation marked omitted).

As such, and for the reasons set forth in *Momentive*, the Court finds that the Second Lien Indenture's acceleration clause is unambiguous, insufficient and lacking in explicitness regarding whether a make-whole premium is due upon an event of default. Thus, after acceleration, the Second Lien Trustee does not have a valid claim for the Applicable Premium.

### G. Conclusion

For the reasons set forth above the Court will grant summary judgment for EFIH on Counts I-IV and IX-X of the Amended Complaint. Counts V-VII of the Amended Complaint are identical in form and substance to claims brought by the First Lien Trustee on which the Court found summary judgment for EFIH.[50] Because the Second Lien Trustee has failed to raise any material disputes of fact that would differentiate its claims from the First Lien Trustee's claims, the Court hereby incorporates and applies its previous ruling[51] and will grant summary judgment in favor of EFIH on Counts V-VII of the Amended Complaint. The question of the Trustee's fees and expenses and "interest on interest" were not the subject of EFIH's motion and therefore Counts VIII, XI and XII of the Amended Complaint survive summary judgment. The Court will deny the Second Lien Trustee's motion for summary judgment in its entirety.

---

[50] *EFH I* at 196-200.

[51] *Id*.

An order will be issued.

BY THE COURT:

_____
Christopher S. Sontchi
United States Bankruptcy Court

Dated: October 29, 2015