## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
|  | **Hearing Date: November 25, 2015 at 10:00 a.m.** |
|  | **Objection Deadline: November 18, 2015 at 4:00 p.m.** |

### DEBTORS' MOTION FOR ENTRY OF
### AN ORDER (A) REQUIRING CERTAIN ENTITIES
### TO PROVIDE INFORMATION PURSUANT TO BANKRUPTCY RULE 2004,
### (B) PROVIDING REQUIREMENTS FOR THE PURCHASE OF CERTAIN
### CLAIMS AGAINST THE DEBTORS, AND (C) ESTABLISHING NOTIFICATION
### AND HEARING PROCEDURES FOR RELIEF FROM THE REQUIREMENTS
### ON THE PURCHASE OF CERTAIN CLAIMS AGAINST THE DEBTORS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for the entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Order"), (a) requiring certain entities that will own equity in certain reorganized

Debtors to provide information necessary to prepare and obtain approval of required regulatory

applications, (b) providing requirements for the purchase of certain claims against the Debtors

that will receive equity in certain reorganized Debtors, and (c) establishing notification and

hearing procedures for relief from the requirements on the purchase of certain claims against the

Debtors.  In support of this Motion, the Debtors submit the *Declaration of Andrew M. Wright in*

*Support of the Debtors' Motion for Entry of an Order (A) Requiring Certain Entities to Provide*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Information Pursuant to Bankruptcy Rule 2004, (B) Providing Requirements for the Purchase of Certain Claims Against the Debtors, and (C) Establishing Notification and Hearing Procedures for Relief from the Requirements on the Purchase of Certain Claims Against the Debtors*, filed contemporaneously herewith.  In further support of this Motion, the Debtors respectfully state as follows.

## Jurisdiction

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested in this Motion are sections 105(a) and 362(a) of title 11 of the United States Code (the "Bankruptcy Code") and rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.      By this Motion, the Debtors request entry of the Order:  (a) requiring Holders[2] of Allowed TCEH First Lien Secured Claims to provide the Equity Holder Information (as defined

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

below) necessary to prepare and obtain approval of the Applications (as defined below), including Applications to be filed with (i) the United States Nuclear Regulatory Commission (the "NRC") with respect to subsidiaries of reorganized TCEH ("Reorganized TCEH"), (ii) the Federal Energy Regulatory Commission (the "FERC") with respect to Oncor Electric Delivery Company LLC ("Oncor") and Luminant Generation Company LLC ("Luminant Generation"), and (iii) the Public Utility Commission of Texas (the "PUC") if, due to any common ownership, by a Holder of Allowed TCEH First Lien Secured Claims, of sufficient voting securities of Reorganized TCEH and sufficient voting securities of any other Texas Power Generation Company ("PGC"), such a filing is required under Texas law; and (b) establishing the Trading Requirements (as defined below) and related Trading Procedures (as defined below) with respect to the purchase of Allowed TCEH First Lien Secured Claims upon entry of the Order through the effective date of the Plan (as defined below).

## Background

5.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered an order for joint administration of these chapter 11 cases. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and Corporate Services (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH

Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions (the "First Day Declaration") [D.I. 98].

## I.    The Plan.

6.    The Debtors filed the Plan[3] on September 21, 2015 after months of negotiations with stakeholders regarding a consensual, value-maximizing plan of reorganization.   As described more fully in the Plan and the Disclosure Statement,[4] the Plan is premised upon two primary transactions:   (a) a merger and investment structure, in which certain investors (including existing TCEH creditor constituencies) will provide a new-money capital contribution to EFH Corp. (to be used to unimpair all Allowed Claims against EFH Corp. and EFIH (excluding Makewhole Claims)) in exchange for equity in the surviving merger entity (collectively, the "Merger"); and (b) a tax-free Spin-Off of Reorganized TCEH (the "Spin-Off"). As a result of the Merger and Spin-Off, certain Holders of Claims will receive equity in certain of the reorganized Debtors, including Reorganized TCEH.

### A.    Reorganized TCEH Common Stock.

7.    Under the Plan, as part of the Spin-Off and in partial satisfaction of such Claims, TCEH will distribute the new shares of common stock of Reorganized TCEH (the "Reorganized TCEH Common Stock") to Holders of Allowed TCEH First Lien Secured Claims (such Claims, the "New TCEH Equity Claims").

---

[3] *See Fifth Amended Joint Plan of Reorganization of Energy Future Holdings,* et al*., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6123] (as may be amended from time to time, the "Plan").

[4] *See Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings,* et al*., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6125] (as may be amended from time to time, the "Disclosure Statement").

## II.    Regulatory Oversight of the Debtors.

8.    The Debtors and their affiliates operate in highly regulated subsectors of the broader energy industry, including nuclear and non-nuclear power generation, and are subject to oversight by several regulatory agencies (each, a "Regulatory Agency"), including, without limitation, the NRC, FERC, and PUC.

9.    In addition to ensuring compliance with the applicable regulatory regime, each Regulatory Agency has certain approval rights with respect to a transfer, sale, merger, reorganization, or other transaction that results in a "change in control" over any entity that holds or has the ability to exercise control over the license, certificate, operations, assets, or other item that is subject to regulation (each such entity, a "Regulated Entity").  Importantly, the Regulatory Agencies generally view an indirect change of control as a jurisdictional change in control over a Regulated Entity for which consent or approval is required.  The PUC also has approval rights regarding a merger, consolidation, or affiliation of an existing Texas PGC with another Texas PGC under Texas Utilities Code Section 39.158.

10.    Debtor Luminant Generation is a Regulated Entity subject to regulation by the NRC.  In addition, certain other TCEH Debtors are Regulated Entities subject to regulation by the PUC (as a PGC) and to a certain extent (due to the FERC's ability to review the overall transaction), the FERC.

11.    As part of the application process to approve a proposed change in control (an "Application"), each Regulatory Agency requires the applicant to disclose the identity of proposed holders that are expected to have the ability to exercise control or substantial influence over a Regulated Entity (such a holder, a "Substantial Equity Holder").  Generally, for purposes of each Application, an entity may qualify as a potential Substantial Equity Holder if such entity is expected to exercise *de facto* or *de jure* control over a Regulated Entity.

12.    Pursuant to the Merger, the Debtors and certain other parties to the Merger and Purchase Agreement agreed to file (a) the FERC Application as soon as reasonably practicable, and in no event later than September 23, 2015 (45 days after the signing date of the Merger and Purchase Agreement), and (b) the NRC Application as soon as reasonably practicable.  The FERC Application was filed on September 30, 2015 and the NRC Application will be filed as soon as reasonably practicable.  Additionally, a separate filing at the PUC regarding Luminant Generation could be required if holders of sufficient voting securities in Reorganized TCEH are also holders of sufficient voting securities in another Texas PGC.

13.    Once an Application is submitted, the applicant or Regulatory Agency generally issues a public notice or other communication (a "Public Notice"), which provides the public with notice of the proposed change in control and certain other relevant information.  After the Application is submitted, the formal application review period (a "Review Period") commences. The Regulatory Agencies require applicants to ensure that pending Applications remain updated and accurate throughout the Review Period.  If, for example, there is a significant change in the identity or expected ownership percentage of a Substantial Equity Holder, the contents of the Application might no longer be complete or accurate, and the Regulatory Agency might require or expect an amendment to the Application or the filing of updated information.  An amendment might trigger the issuance of a subsequent Public Notice and/or even require a new Application and a restart of the Review Period.

14.    On the effective date of the Plan (the "Effective Date"), Reorganized TCEH will replace EFH Corp. as the ultimate parent company of Luminant Generation.

15.    Securing approval or consent from each of the NRC, FERC, and PUC (if applicable, for purposes of the subject of this Motion) for the transactions contemplated under

the Plan is a condition precedent to consummation of the Plan.  As discussed below, the following Regulatory Agencies (a) require that the Applications disclose certain potential Substantial Equity Holder information and (b) have approval or consent rights over one or more of the transactions contemplated by the Plan.

### A.    U.S. Nuclear Regulatory Commission.

16.    The NRC is a federal regulatory agency that oversees commercial nuclear generating facilities throughout the United States, including those controlled by TCEH through its wholly-owned Debtor indirect subsidiary Luminant Generation.  Luminant Generation's nuclear generation operations consist of two licensed units at the Comanche Peak Nuclear Power Plant site located in Somervell County, Texas.

17.    Beyond ensuring compliance with the requirements necessary to safely operate a nuclear facility, the NRC also regulates the ownership and control of licensed nuclear facilities and the nuclear materials they possess and use.  Control over an NRC license may not be transferred directly or indirectly before the NRC gives its prior written consent.[5]  The NRC's precedents define "control" broadly: "Control of a license is in the hands of the person or persons who are empowered to decide when and how that license will be used.  That control is to be found in the person or persons who, because of ownership or authority explicitly delegated by the owners, possess the power to determine corporate policy and thus the direction of the

---

[5] Section 184 of the Atomic Energy Act of 1954, as amended (the "AEA") states, in part: "No license granted hereunder and no right to utilize or produce special nuclear material granted hereby shall be transferred, assigned or in any manner disposed of, either voluntarily or involuntarily, directly or indirectly, through transfer of control of any license to any person, unless the [NRC] shall, after securing full information, find that the transfer is in accordance with the provisions of this Act, and shall give its consent in writing."  *See also* NRC implementing regulations at 10 CFR 50.80.

activities under the license."[6]  Although NRC precedents have suggested that control of more than 50% of the voting stock of a licensee or its parent is indicative of control, the NRC has specifically declined to establish a lower "safe harbor" limit, instead looking at multiple factors on a case-by-case basis.[7]

18.      In a case like this one, where at the Effective Date the ownership and operating NRC licenses currently held by Luminant Generation will be transferred to two newly-formed companies ("Operating Company LLC" and "Comanche Peak LLC"), each a wholly-owned subsidiary of a newly organized entity (Reorganized TCEH) that will have new equity owners and a newly established board of directors, the prospective owner is required to submit an Application to the NRC before such transfers can be consummated.  Before issuing an order granting its approval to such Application, NRC will publish notice of the Application in the Federal Register, providing interested members of the public an opportunity to provide comment and to request a hearing.[8]  The Review Period for an NRC Application varies, but can be expected to take several months.

19.      The Holders of Allowed TCEH First Lien Secured Claims will receive Reorganized TCEH Common Stock, and certain Holders of such Claims may be new Substantial Equity Holders in Reorganized TCEH, the to-be indirect parent company of each of Operating

---

[6] The term "control" is not defined in the applicable statute, but it has been interpreted broadly. For example, the Atomic Safety and Licensing Board has stated that the applicable statute "not only broadly prohibits all manner of transfers, assignments, and disposals of NRC licenses, but also all manner of actions that have the effect of, in any way, directly or indirectly, transferring actual or potential control over a license without the agency's knowledge and express written consent."  *Safety Light Corp.* (Bloomsburg Site Decommissioning and License Renewal Denials), LBP-95-9, 41 NRC 412, 451 (1995).

[7] *See* Final Standard Review Plan on Foreign Ownership, Control or Domination, 64 *Federal Register* 52355, 552358, Sept. 28, 1999 (NRC 1999 Policy Statement).

[8] Section 189 of the AEA provides an opportunity to request a hearing to any person whose interest may be affected by the granting, suspending, revoking or amending of a materials license.

Company LLC and Comanche Peak LLC.  Through the Application, the Debtors, including Luminant Generation, will seek an order approving the Application and confirming that the proposed transferees are acceptable to the NRC.[9]  The NRC requires that such Application be complete and accurate in all material respects.

20.     The identity of the Holders of Allowed TCEH First Lien Secured Claims, and the amount of such Claims, will be material to the NRC's review of the Application.  The NRC uses the information to, among other things, assess compliance with the statutory prohibition on foreign ownership, control, or domination of the licensee.[10]  The NRC will need information regarding Reorganized TCEH shareholders and the composition of the Reorganized TCEH board of directors to establish that Reorganized TCEH is not subject to foreign ownership control or domination.  The identification of whom and to what extent such Holders, as new Substantial Equity Holders, will exercise indirect "control" over the proposed transferees as of the Effective Date is material to the NRC's analysis.  The Debtors intend to identify to the NRC all Holders of Allowed TCEH First Lien Secured Claims that may potentially own a material amount of Reorganized TCEH Common Stock.

**B.      Federal Energy Regulatory Commission.**

21.     The FERC oversees the change in control over a "public utility," which includes Oncor.  The ultimate control over power generation facilities owned by Luminant Generation, while subject to certain FERC immunities and blanket regulatory authorizations, must also be described and disclosed in the FERC Application submitted by Oncor.  The FERC generally

---

[9] The NRC Application defines "transferee" as "an entity that proposes to purchase or otherwise gain control of an NRC-licensed operation."

[10] *See* Section 103 of the AEA, 42 U.S.C. 2133(d), 10 CFR 50.33(d), and NRC 1999 Policy Statement.

utilizes a "control" threshold of 10% of the controlling equity interests in the Regulated Entity. The FERC Application imposes limitations on material changes to the identity and expected ownership interests of Substantial Equity Holders during the Review Period, which is approximately 60 to 120 days.  The FERC standard for approval of a change in control focuses on whether the transfer is in the public interest, taking into account the effect on competition, rates, regulations, and whether the transaction would result in cross-subsidization by or involving captive ratepayers.  Because the restructuring transactions contemplated under the Plan will result in a change in control over each of Oncor and Luminant Generation, which are both Regulated Entities subject to FERC oversight, the Debtors need to collect and disclose relevant Equity Holder Information in the FERC Application.

C.      **Public Utility Commission of Texas**

22.     The PUC has approval rights regarding a merger, consolidation, or affiliation of an existing Texas PGC with another Texas PGC under Texas Utilities Code Section 39.158. Accordingly, the Debtors must evaluate whether any of the holders of Reorganized TCEH voting securities are also holders of the voting securities of any existing Texas PGC.  If a holder of Reorganized TCEH voting securities holds sufficient voting securities of both Reorganized TCEH and another existing Texas PGC such that the two entities would be considered to be affiliates, then PUC approval must be obtained under Texas Utilities Code Section 39.158 by filing an application for approval at least 120 before closing.  The PUC is required to approve the transaction if the combined installed generation capacity of the affiliated entities in the relevant power region (in this case, the Electric Reliability Council of Texas ("ERCOT") region) is equal to or less than 20 percent of the total installed generation capacity in that power region.  In general, two entities may be considered affiliated under relevant Texas law if they are subject to

common ownership of five percent or more of their voting securities.  Accordingly, to determine whether PUC approval of an "affiliation" of two PGCs is required, the Debtors need information to evaluate whether any potential holder of voting securities in Reorganized TCEH is also a holder of voting securities in any other Texas PGC.

### III.    Disclosure of Equity Holder Information.

23.    The Applications should disclose the identity of all proposed Substantial Equity Holders in the applicable Regulated Entities, as well as each holder's expected ownership percentage as of the Effective Date.  As discussed, applicants must ensure that pending Applications remain updated and accurate throughout each Review Period.  Certain amendments to the Applications, including with respect to a change in the identity or the expected ownership percentage of a Substantial Equity Holder, might result in the issuance of another Public Notice or, if the change is especially significant, require a new Application.  In short, a change in potential Substantial Equity Holders during the application could restart the clock on the applicable Review Period, causing significant delay and potentially impairing the Debtors' ability to consummate the transactions contemplated by the Plan.

24.    The Debtors' proposed transactions as described in the Plan will result in the extinguishment or cancellation of the current voting and equity securities in TCEH. Accordingly, the Debtors are seeking Equity Holder Information for the new Substantial Equity Holders that will own Reorganized TCEH Common Stock.

25.    Therefore, it is imperative that potential Substantial Equity Holders disclose the Equity Holder Information to the Debtors.  To that end, the Debtors have been working to identify, based on presently available information, those creditors that are potential Substantial

Equity Holders, and to compile and prepare the disclosure of the Equity Holder Information in each of the Applications.[11]

26.    To the extent the Debtors have not been able to obtain the Equity Holder Information from potential Substantial Equity Holders, either because such potential holder was not responsive to the Debtors' request or because the Debtors were not aware of a creditor's status as a holder, the Debtors request that the Court require all Holders of Allowed TCEH First Lien Secured Claims, other than TCEH First Lien Ad Hoc Committee Members and their Related Parties (as defined below),[12] to the extent such Holder, together with any direct or indirect subsidiary or Affiliate of, or beneficial holder, investment fund, fund, or account that is advised, managed, or controlled by, such Holder or its Affiliates (such parties, generally, "Related Parties"), holds "disclosable economic interests" (as defined by Bankruptcy Rule 2019(a)(1)) with respect to Allowed TCEH First Lien Secured Claims that represent, in the aggregate, five percent (5%) or greater of all Allowed TCEH First Lien Secured Claims, to provide to counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Emily E. Geier, Esq., within seven (7) days of the entry of the Order (the "Disclosure Date"),  the  following  information  to  be  included  in  the  Applications (the "Equity Holder Information"):

> a.    name, address, and citizenship of the Holder of the Allowed TCEH First Lien Secured Claims;

---

[11]  The Debtors either have or will separately collect any necessary information from (a) Holders of TCEH Unsecured Debt Claims and (b) parties to the Merger that are not Holders of Claims. The Debtors do not seek through this Motion any relief with respect to such parties.

[12]  The Debtors do not seek the Equity Holder Information from members of the Ad Hoc Committee of TCEH First Lien Creditors (the "TCEH First Lien Ad Hoc Committee" and such members, the "TCEH First Lien Ad Hoc Committee Members") or their Related Parties.  While the TCEH First Lien Ad Hoc Committee Members and their Related Parties are not subject to the requirements to provide the Equity Holder Information pursuant to this Motion, such parties will continue to fully cooperate with the Debtors in providing all requested information related to the Applications in a timely manner.

b.     the amount of such Allowed TCEH First Lien Secured Claims held by such Holder;

c.     whether the holder has a controlling or voting equity interest in any other public utility or PGC subject to the regulation of the PUC or the FERC, and the number of such interests and/or the percentage ownership in such other entities, such information to be supplied in the manner reasonably directed by the Debtors; and

d.     any other information that is required to be disclosed in a relevant Application, including any information bearing upon the eligibility or suitability of a Holder with respect to control of a Regulated Entity.

27.     The Debtors shall serve a copy of the Order on all known Holders of Allowed TCEH First Lien Secured Claims, along with a cover letter, substantially in the form attached hereto as **Exhibit 1** to **Exhibit A**, explaining the contents of the Order and requesting that such holder provide the Equity Holder Information.

28.     The Debtors shall keep any Equity Holder Information submitted by a potential Substantial Equity Holder confidential, except as material to the Application or requested by the applicable Regulatory Agency as necessary for the approval of such Application. To the extent so provided to Regulatory Agency, the Debtors shall submit only such portion of such Equity Holder Information that is reasonably necessary to be disclosed to the Regulatory Agency. Any such Equity Holder Information shall be submitted to the Regulatory Agency as confidential commercial information and the Debtors shall use their reasonable efforts to assist such potential Substantial Equity Holder in obtaining confidential commercial treatment of such information by the Regulatory Agency.

**IV.    Regulatory Trading Requirements and Notification and Hearing Procedures.**

29.     To ensure that the Applications are approved as expeditiously as possible without repeated amendments and additional Review Periods, the Debtors request that the Court require

RLF1 13266481v.1

notification of, and in some cases, restriction of, the purchase of Allowed TCEH First Lien Secured Claims above certain holdings thresholds (the "Trading Requirements").[13]

30.     To ensure compliance with the Trading Requirements, the Debtors request that the Court establish certain notification and hearing procedures to seek relief from the requirements on the purchase of Allowed TCEH First Lien Secured Claims from the date of entry of the Order and through the Effective Date.  Specifically, the Debtors request that the Court establish the following procedures (the "Trading Procedures"):

    a.    Pre-Acquisition Notice:  From the date of entry of the Order and through the Effective Date, five (5) business days prior to any transfer of any Allowed TCEH First Lien Secured Claim that would result in an entity or its Related Parties becoming a holder of twenty-five  percent (25%) or greater of all allowed TCEH First Lien Secured Claims, such entity or Related Party shall file with the Court, and serve on counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Emily E. Geier, Esq., advance written notice of the intended transfer in the form attached as **Exhibit 2** to the Order attached hereto as **Exhibit A** (each, a "Pre-Acquisition Notice"), which Pre-Acquisition Notice may, but shall not be required to, include a statement as to why the proposed acquisition would not adversely affect an Application.

    b.    Objection Procedures:  The Debtors shall have three (3) business days after receipt of a Pre-Acquisition Notice to file with the Court and serve on the entity filing the Pre-Acquisition Notice an objection to the proposed transfer on the grounds that such transfer may, in the Debtors' reasonable discretion, materially and adversely affect an Application.  If an objection is filed, such entity shall not proceed with the proposed transaction (or if such entity does proceed with the proposed transaction, such transaction shall not be effective) unless and until (i) the objection is withdrawn, overruled, or otherwise resolved, or (ii) the proposed transaction is approved by a final and non-appealable order of the Bankruptcy Court determining that the proposed acquisition will not materially and adversely affect the Application.  If no objection to a Pre-Acquisition Notice is filed within such 3-day period or if an objection to a Pre-Acquisition Notice is filed and later withdrawn, the transaction may proceed solely as set forth in the Pre-Acquisition Notice.  In addition, any

---

[13] Due to separate agreements and restrictions with the Holders of TCEH Unsecured Debt Claims, the Debtors in this Motion do not seek any relief with respect to Holders of TCEH Unsecured Debt Claims regarding Trading Requirements, Trading Procedures, or related relief.

such entity shall have the right at any time to seek a ruling by the Court that the Debtors' objection that a proposed transfer will materially and adversely affect the Application was either not reasonable or not made in good faith.  Any further transactions within the scope of this paragraph that would result in such entity or its Related Parties acquiring additional allowed TCEH First Lien Secured Claims that represent (5%) or greater of all allowed TCEH First Lien Secured Claims must comply with the same noticing and 3-day objection procedures.

c.      Post-Acquisition Notice: From the date of entry of the Order and through the Effective Date, Holders of Allowed TCEH First Lien Secured Claims shall file with the Court, and serve on counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn:  Emily E. Geier, Esq., written notice in the form attached as **Exhibit 3** to the Order attached hereto as **Exhibit A**: (a) no later than five (5) business days after any Holder and its Related Parties (other than the TCEH Ad Hoc Committee Members and their Related Parties) becomes a Holder that, together with its Related Parties, holds "disclosable economic interests" (as defined by Bankruptcy Rule 2019(a)(1)) with respect to Allowed TCEH First Lien Secured Claims that represent, in the aggregate, five percent (5%) or greater of all Allowed TCEH First Lien Secured Claims; (b) no later than five (5) business days after any Holder and its Related Parties becomes a holder of ten percent (10%) or greater of all Allowed TCEH First Lien Secured Claims (other than TCEH Ad Hoc Committee Members and their Related Parties who have already disclosed such ownership); (c) no later than five (5) business days after any Holder and its Related Parties becomes a holder of fifteen percent (15%) or greater of all Allowed TCEH First Lien Secured Claims and (d) no later than five (5) business days after any Holder and its Related Parties becomes a holder of twenty percent (20%) or greater of all Allowed TCEH First Lien Secured Claims.

31.      The Debtors further request that any transfer of Allowed TCEH First Lien Secured Claims made in violation of these Trading Procedures shall be deemed void *ab initio*; *provided, however,* that the Debtors may waive any and all requirements, stays, and notification procedures contained in this Motion or in any order entered with respect hereto.

32.      To ensure that all beneficial holders are aware of the Trading Requirements and Trading Procedures, all registered holders of Allowed TCEH First Lien Secured Claims should be required to serve the Order on any holder for whose benefit such registered holder holds such Allowed TCEH First Lien Secured Claims in excess of 2% of the Allowed TCEH First Lien

Secured Claims as of the date of entry of the Order.  Any entity or broker or agent acting on such

entity's behalf who sells in excess of 2% of the Allowed TCEH First Lien Secured Claims to

another entity (through one transaction or series of related transactions) should be required to

serve a copy of the Order on such purchaser of such Allowed TCEH First Lien Secured Claims

or any broker or agent acting on such purchaser's behalf upon entry of the Order through the

Effective Date.

**Basis for Relief**

**I.      Disclosure of Equity Holder Information is Justified.**

33.      The Debtors request that the Court exercise its broad authority under Bankruptcy

Rule 2004 to order Substantial Equity Holders to identify themselves and provide to the Debtors,

by the Disclosure Date, the Equity Holder Information.  It is well-settled that Rule 2004

"provides courts with the authority to order examinations with respect to the financial matters of

debtors as well as other matters affecting the administration of the estate."  *In re Hughes*, 281

B.R. 224, 226 (Bankr. S.D.N.Y. 2002).  "The understanding generally accepted today is that the

scope of a Rule 2004 examination is very broad."  *Id.* (quoting *In re Drexel Burnham Lambert

Group, Inc.*, 123 B.R. 702, 711 (Bankr. S.D.N.Y. 1991)).  Indeed, "the scope of examination

allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil

Procedure and may be in the nature of a 'fishing expedition.'"  *Id.* (quoting *In re Ionosphere

Clubs, Inc.*, 156 B.R. 414, 432 S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994)).  In ruling on a

Rule 2004 information request, "section 105(a) of the Bankruptcy Code 'sets out the power of

the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy

Code.'"  *Id.* (quoting *In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986)).

16

34.    The Debtors submit that their request is justified given their pressing need for the Equity Holder Information and the narrow range of information sought—information which falls well within the broad scope of Bankruptcy Rule 2004.

35.    The Plan, if consummated, will require the consent or approval of the NRC, FERC, and, relevant to the subject matter of this Motion, potentially the PUC.   Seeking Regulatory Agency approval requires full disclosure of proposed Substantial Equity Holders of these Regulated Entities.   It necessarily follows that the Debtors' successful emergence from bankruptcy with the Regulatory Agencies' approval of the Applications depends, in part, on the Debtors' ability to compile the Equity Holder Information.   The only way for the Debtors to verify, with certainty, that the Applications are complete and accurate is through the disclosure of Equity Holder Information by *all* potential Substantial Equity Holders.

36.    Consequently, given the broad scope of Rule 2004 examinations generally, the narrowly tailored and critically important requests set forth herein easily merit approval.   *See, e.g., Hughes*, 281 B.R. at 226; *Drexel Burnham Lambert Group,* 123 B.R. at 711.

**II.     The Trading Requirements are in the Best Interests of the Debtors' Estates.**

37.    The Trading Requirements, as set forth in this Motion, are in the best interests of the Debtors' estates, allowing the Debtors to comply with regulatory requirements controlling the Debtors' timely emergence from bankruptcy while preserving the rights of Holders of Allowed TCEH First Lien Secured Claims to trade their claims, albeit through a more highly monitored process.   *First*, the Trading Requirements are necessary for the Debtors to avoid incurring unnecessary additional costs, thereby diminishing the value of the Debtors' estates since any change in the identity of the potential Substantial Equity Holders may prolong the Review Periods.   The Trading Requirements will ensure that the Applications can be approved as expeditiously as possible, thus facilitating a timely consummation of the Plan.

38.     *Second*, the Trading Requirements are appropriate under these circumstances. The Trading Requirements are narrowly tailored and do not bar all trading of Allowed TCEH First Lien Secured Claims against the Debtors, but only those that would alter the identity or ownership interests of Substantial Equity Holders that must be disclosed in an Application or give rise to a substantial amendment or modification in an Application.

39.     *Third*, by this Motion, the Debtors are providing all interested parties with advance notice of the proposed Trading Requirements, which will only go into effect upon entry of the Order, thereby satisfying due process with respect to the Trading Requirements. The Trading Requirements are within the ambit of the Court's authority under section 105(a) of the Bankruptcy Code, which provides that: "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . ." 11 U.S.C. § 105(a). The Trading Requirements are, therefore, necessary and appropriate to ensure that the Plan can become effective as soon as possible.

## III.    The Trading Procedures are in the Best Interests of the Debtors and their Estates.

40.     The Trading Procedures are both fair and necessary to ensure the expeditious approval of the Applications and the Debtors' emergence from bankruptcy. Implementation of the Trading Requirements and the Trading Procedures is consistent with section 362(a)(3), which permits the court to impose measures intended to protect and preserve property of the estate. *See In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr. S.D.N.Y. 1989) ("Section 362(a)(3) . . . is designed to afford additional protection permitting the bankruptcy process to work by enabling a debtor to keep estate property intact during the process[.]"), *aff'd*, 119 B.R. 430 (S.D.N.Y. 1990), *aff'd*, 928 F.2d 565 (2nd Cir. 1991). For example, in *Prudential Lines*, the court enjoined a parent corporation from taking a worthless stock deduction with respect to its wholly owned subsidiary, which was in bankruptcy, on the grounds that allowing the parent to take such a

deduction would destroy its debtor-subsidiary's net-operating losses, which were deemed to be property of the estate.  The court held that, because of the effect that it would have on the debtor's ability to use its net-operating losses, the taking of a worthless stock deduction is an exercise of control over a debtor's net-operating losses.  *Id.* at 842.  Therefore, such action was properly subject to the automatic stay of section 362 of the Bankruptcy Code.  *Id.* at 843; *see also In re Enron Corp.*, No. 01-16034 (Bankr. S.D.N.Y. Apr. 25, 2003) [D.I. 10436] (debtors' net-operating loss carryforwards "are property of the Debtors' estates and are protected by the automatic stay prescribed in section 362 of the Bankruptcy Code"); *In re Southeast Banking Corp.*, No. 91-14561, 1994 WL 1893513, at *2 (Bankr. S.D. Fla. July 21, 1994) (debtor's interest in its net-operating losses "constitutes property of the estate within the scope of 11 U.S.C. § 541(a)(1) and is entitled to the protection of the automatic stay imposed pursuant to 11 U.S.C. § 362(a)(3)").

41.    In fact, bankruptcy courts have routinely approved trading procedures similar to these and have imposed claims trading requirements in cases where debtors have sought to protect their estate against the possible delay in regulatory approval of a change in control transaction.  *See, e.g., In re Broadview Networks Holdings, Inc.*, No. 12-13581 (Bankr. S.D.N.Y. Sept. 19, 2012) (requiring senior secured noteholders that hold 10% and/or $25 million interest in notes to follow certain trading procedures); *In re Terrestar Networks, Inc.*, 10-15446 (Bankr. S.D.N.Y. Nov. 23, 2010) (requiring all potential Equity Holders to follow certain trading procedures); *In re DBSD. N. Am., Inc.*, No. 09-13061 (Bankr. S.D.N.Y. Dec. 11, 2009) (requiring senior secured noteholders that hold $75 million in notes to follow certain trading procedures); *In re Dana Corp.*, No. 06-10354 (Bankr. S.D.N.Y. August 9, 2009) (approving notification and trading procedures for any Entity holding or who would come to hold a 4.75% or greater interest

in debtor over the objection of certain parties in interest); *In re Adelphia Commc'ns Corp.*, Case No. 02-41729 (Bankr. S.D.N.Y September 27, 2002) (approving notification and hearing procedures for trading in equity interests); *In re Casual Male Corp.*, No. 01-41404 (Bankr. S.D.N.Y. May 18, 2001) (enjoining transfers of common stock and convertible notes that would result in transferee's holdings increasing to or beyond 4.99%).

42.     Any transfer of Allowed TCEH First Lien Secured Claims through the Effective Date could potentially impair or delay the Debtors' ability to consummate the Plan.  As discussed above, any substantial change in the proposed ownership of Reorganized TCEH could necessitate an amendment to an Application, and may require an additional Public Notice and Review Period before an Application may be approved.  These delays could cause the Debtors to incur unnecessary additional costs, diminishing the value of the Debtors' estates and jeopardizing the Debtors' ability to timely consummate the Plan.

43.     Finally, the Trading Procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing all interested parties with a notice and an opportunity to respond to an objection to a proposed transaction.  *See, e.g.*, *In re Colo. Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (find that Bankruptcy Rule 9014 merely requires "reasonable notice and *opportunity* for hearing") (emphasis in original).  In addition, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwanted administrative expenses.

### Notice

44.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor

agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:   (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for

the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) the Securities and Exchange Commission; (t) the Internal Revenue Service; (u) the Office of the United States Attorney for the District of Delaware; (v) the Office of the Texas Attorney General on behalf of the PUC; (w) counsel to the Electric Reliability Council of Texas; (x) those parties that have requested notice pursuant to Bankruptcy Rule 2002; (y) the NRC; and (z) the FERC.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

45.     No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  November 4, 2015                         */s/ Jason M. Madron*
         Wilmington, Delaware         **RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          collins@rlf.com
               defranceschi@rlf.com
               madron@rlf.com
-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          edward.sassower@kirkland.com
               stephen.hessler@kirkland.com
               brian.schartz@kirkland.com
-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          james.sprayregen@kirkland.com
               marc.kieselstein@kirkland.com
               chad.husnick@kirkland.com
               steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*