## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979(CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 6871** |

## DECLARATION OF ANDREW M. WRIGHT IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) REQUIRING CERTAIN ENTITIES TO PROVIDE INFORMATION PURSUANT TO BANKRUPTCY RULE 2004, (B) PROVIDING REQUIREMENTS FOR THE PURCHASE OF CERTAIN CLAIMS AGAINST THE DEBTORS, AND (C) ESTABLISHING NOTIFICATION AND HEARING PROCEDURES FOR RELIEF FROM THE REQUIREMENTS ON THE PURCHASE OF CERTAIN CLAIMS AGAINST THE DEBTORS

I, Andrew M. Wright, being duly sworn, state the following under penalty of perjury:

1.      I am the Vice President and Deputy General Counsel of EFH Corporate Services Company, a wholly-owned direct subsidiary of Energy Future Holdings Corp. ("EFH Corp."), located at 1601 Bryan Street, Dallas, TX 75201.

2.      I submit this declaration (the "Declaration") in support of the *Motion for Entry of an Order (A) Requiring Certain Entities to Provide Information Pursuant to Bankruptcy Rule 2004, (B) Providing Requirements for the Purchase of Certain Claims Against the Debtors, and (C) Establishing Notification and Hearing Procedures for Relief from the Requirements on the*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Purchase of Certain Claims Against the Debtors* [D.I. 6871] (the "<u>Motion</u>").[2]  Except as

otherwise noted, I have personal knowledge of the matters set forth herein.

**I.       Regulatory Oversight of the Debtors.**

1.       The Debtors and their affiliates operate in highly regulated subsectors of the

broader energy industry, including nuclear and non-nuclear power generation, and are subject to

oversight by several regulatory agencies (each, a "<u>Regulatory Agency</u>"), including, without

limitation, the Nuclear Regulatory Commission ("<u>NRC</u>"), Federal Energy Regulatory

Commission ("<u>FERC</u>"), and Public Utility Commission of Texas ("<u>PUCT</u>").

2.       In addition to ensuring compliance with the applicable regulatory regime, each

Regulatory Agency has certain approval rights with respect to a transfer, sale, merger,

reorganization, or other transaction that results in a "change in control" over any entity that holds

or has the ability to exercise control over the license, certificate, operations, assets, or other item

that is subject to regulation (each such entity, a "<u>Regulated Entity</u>").  Importantly, the Regulatory

Agencies generally view an indirect change of control as a jurisdictional change in control over a

Regulated Entity for which consent or approval is required.  The PUC also has approval rights

regarding a merger, consolidation, or affiliation of an existing Texas Power Generation Company

("<u>PGC</u>") with another Texas PGC under Texas Utilities Code Section 39.158.

3.       Debtor Luminant Generation Company LLC ("<u>Luminant Generation</u>") is a

Regulated Entity subject to regulation by the NRC.  In addition, certain other TCEH Debtors are

Regulated Entities subject to regulation by the PUC (as a PGC) and to a certain extent (due to the

FERC's ability to review the overall transaction), the FERC.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

4.      As part of the application process to approve a proposed change in control (an "Application"), each Regulatory Agency requires the applicant to disclose the identity of proposed holders that are expected to have the ability to exercise control or substantial influence over a Regulated Entity (such a holder, a "Substantial Equity Holder").  Generally, for purposes of each Application, an entity may qualify as a potential Substantial Equity Holder if such entity is expected to exercise *de facto* or *de jure* control over a Regulated Entity.

5.      Pursuant to the Merger, the Debtors and certain other parties to the Merger and Purchase Agreement agreed to file (a) the FERC Application as soon as reasonably practicable, and in no event later than September 23, 2015 (45 days after the signing date of the Merger and Purchase Agreement), and (b) the NRC Application as soon as reasonably practicable.  The FERC Application was filed on September 30, 2015 and the NRC Application will be filed as soon as reasonably practicable.  Additionally, a separate filing at the PUC regarding Luminant Generation could be required if holders of sufficient voting securities in Reorganized TCEH are also holders of sufficient voting securities in another Texas PGC.

6.      Once an Application is submitted, the applicant or Regulatory Agency generally issues a public notice or other communication (a "Public Notice"), which provides the public with notice of the proposed change in control and certain other relevant information.  After the Application is submitted, the formal application review period (a "Review Period") commences. The Regulatory Agencies require applicants to ensure that pending Applications remain updated and accurate throughout the Review Period.  If, for example, there is a significant change in the identity or expected ownership percentage of a Substantial Equity Holder, the contents of the Application might no longer be complete or accurate, and the Regulatory Agency might require or expect an amendment to the Application or the filing of updated information.  An amendment

might trigger the issuance of a subsequent Public Notice and/or even require a new Application and a restart of the Review Period.

7.      On the Effective Date, Reorganized TCEH will replace EFH Corp. as the ultimate parent company of Luminant Generation.

8.      Securing approval or consent from each of the NRC, FERC, and PUC (if applicable, for purposes of the subject of this Motion) for the transactions contemplated under the Plan is a condition precedent to consummation of the Plan.  As discussed below, the following Regulatory Agencies (a) require that the Applications disclose certain potential Substantial Equity Holder information and (b) have approval or consent rights over one or more of the transactions contemplated by the Plan.

**A.      U.S. Nuclear Regulatory Commission.**

9.      The NRC is a federal regulatory agency that oversees commercial nuclear generating facilities throughout the United States, including those controlled by TCEH through its wholly-owned Debtor indirect subsidiary Luminant Generation.  Luminant Generation's nuclear generation operations consist of two licensed units at the Comanche Peak Nuclear Power Plant site located in Somervell County, Texas.

10.      Beyond ensuring compliance with the requirements necessary to safely operate a nuclear facility, the NRC also regulates the ownership and control of licensed nuclear facilities and the nuclear materials they possess and use.  Control over an NRC license may not be transferred directly or indirectly before the NRC gives its prior written consent.

11.      In a case like this one, where at the Effective Date the ownership and operating NRC licenses currently held by Luminant Generation will be transferred to two newly-formed companies ("Operating Company LLC" and "Comanche Peak LLC"), each a wholly-owned subsidiary of a newly organized entity (Reorganized TCEH) that will have new equity owners

and a newly established board of directors, the prospective owner is required to submit an Application to the NRC before such transfers can be consummated.  Before issuing an order granting its approval to such Application, NRC will publish notice of the Application in the Federal Register, providing interested members of the public an opportunity to provide comment and to request a hearing.  The Review Period for an NRC Application varies, but can be expected to take several months.

12.     The Holders of Allowed TCEH First Lien Secured Claims will receive Reorganized TCEH Common Stock, and certain Holders of such Claims may be new Substantial Equity Holders in Reorganized TCEH, the to-be indirect parent company of each of Operating Company LLC and Comanche Peak LLC.  Through the Application, the Debtors, including Luminant Generation, will seek an order from the NRC approving the Application and stating that the proposed transferees are acceptable to the NRC.  The NRC requires that such Application be complete and accurate in all material respects.

13.     The Debtors intend to identify to the NRC all Holders of Allowed TCEH First Lien Secured Claims that may potentially own a material amount of Reorganized TCEH Common Stock.

### B.     Federal Energy Regulatory Commission.

14.     The FERC oversees the change in control over a "public utility," which includes Oncor.  The ultimate control over power generation facilities owned by Luminant Generation, while subject to certain FERC immunities and blanket regulatory authorizations, must also be described and disclosed in the FERC Application submitted by Oncor.  The FERC generally utilizes a "control" threshold of 10% of the controlling equity interests in the Regulated Entity. The FERC Application imposes limitations on material changes to the identity and expected ownership interests of Substantial Equity Holders during the Review Period, which is

approximately 60 to 120 days.  Because the restructuring transactions contemplated under the Plan will result in a change in control over each of Oncor and Luminant Generation, which are both Regulated Entities subject to FERC oversight, the Debtors need to collect and disclose relevant Equity Holder Information in the FERC Application.

       **C.**       **Public Utility Commission of Texas**

       15.      The PUC has approval rights regarding a merger, consolidation, or affiliation of an existing Texas PGC with another Texas PGC under Texas Utilities Code Section 39.158. Accordingly, the Debtors must evaluate whether any of the holders of Reorganized TCEH voting securities are also holders of the voting securities of any existing Texas PGC.  If a holder of Reorganized TCEH voting securities holds sufficient voting securities of both Reorganized TCEH and another existing Texas PGC such that the two entities would be considered to be affiliates, then PUC approval must be obtained under Texas Utilities Code Section 39.158 by filing an application for approval at least 120 before closing.  The PUC is required to approve the transaction if the combined installed generation capacity of the affiliated entities in the relevant power region (in this case, the Electric Reliability Council of Texas ("ERCOT") region) is equal to or less than 20 percent of the total installed generation capacity in that power region.  In general, two entities may be considered affiliated under relevant Texas law if they are subject to common ownership of five percent or more of their voting securities.  Accordingly, to determine whether PUC approval of an "affiliation" of two PGCs is required, the Debtors need information to evaluate whether any potential holder of voting securities in Reorganized TCEH is also a holder of voting securities in any other Texas PGC.

**II.**      **Disclosure of Equity Holder Information.**

       16.      Applicants must ensure that pending Applications remain updated and accurate throughout each Review Period.  Certain amendments to the Applications, including with respect

to a change in the identity or the expected ownership percentage of a Substantial Equity Holder, might result in the issuance of another Public Notice or, if the change is especially significant, require a new Application.  In short, a change in potential Substantial Equity Holders during the application could restart the clock on the applicable Review Period, causing significant delay and potentially impairing the Debtors' ability to consummate the transactions contemplated by the Plan.

17.    The Debtors' proposed transactions as described in the Plan will result in the extinguishment or cancellation of the current voting and equity securities in TCEH. Accordingly, the Debtors are seeking Equity Holder Information for the new Substantial Equity Holders that will own Reorganized TCEH Common Stock.

18.    Therefore, it is imperative that potential Substantial Equity Holders disclose the Equity Holder Information to the Debtors.  To that end, the Debtors have been working to identify, based on presently available information, those creditors that are potential Substantial Equity Holders, and to compile and prepare the disclosure of the Equity Holder Information in each of the Applications.

19.    Any transfer of Allowed TCEH First Lien Secured Claims through the Effective Date could potentially impair or delay the Debtors' ability to consummate the Plan.  As discussed above, any substantial change in the proposed ownership of Reorganized TCEH could necessitate an amendment to an Application, and may require an additional Public Notice and Review Period before an Application may be approved.  These delays could cause the Debtors to incur unnecessary additional costs, diminishing the value of the Debtors' estates and jeopardizing the Debtors' ability to timely consummate the Plan.

*[Remainder of page intentionally left blank.]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  November 4, 2015                     Respectfully submitted,

                                                        */s/ Andrew M. Wright*
                                                        Andrew M. Wright
                                                        Vice President and Deputy General
                                                        Counsel of EFH Corporate Services
                                                        Company