**Exhibit 2**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>Honorable Christopher Sontchi |

**TRIAL DIRECT TESTIMONY DECLARATION OF ERIC R. MENDELSOHN**

This trial direct testimony of Eric R. Mendelsohn is submitted by Debtors Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC ("TCEH" and, collectively, with their debtor subsidiaries, the "TCEH Debtors") acting at the direction of Hugh E. Sawyer, the disinterested member of the board of managers (the "Disinterested Manager") of each of EFCH and TCEH, in support of the Motion of Energy Future Holdings Corp. et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform under the Settlement Agreement [D.I. 5249] (the "Settlement Motion"), and in connection with the hearing on confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6122] (the "Plan"). It is anticipated that this written testimony will be supplemented by live direct testimony of Mr. Mendelsohn highlighting and expanding upon certain aspects of this testimony, and responding to certain points made by objectors to the Settlement Motion and/or the Plan.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION AND SUMMARY ...................................................................1

    A.      Scope of Engagement .................................................................................1

    B.      Scope of Testimony ....................................................................................1

    C.      Qualifications .............................................................................................2

II.     OVERVIEW OF THE TCEH INTERCOMPANY NOTES ................................3

    A.      Overview of EFH Corporate Structure ......................................................3

    B.      Background on the TCEH Intercompany Notes .........................................4

III.    OPINION ............................................................................................................10

    A.      Summary ...................................................................................................10

    B.      Opinion Support .......................................................................................10

        1.      Overview .......................................................................................10

        2.      Changes in EFH Creditworthiness over Time ...........................11

        3.      Yields of Third Party EFH Unsecured Notes are Best Proxy for EFH Credit Risk ...........................................................................14

            a.      Comparable Credit Risk ...................................................15

            b.      Comparable Maturities ....................................................16

            c.      EFH Money Pool Rate ......................................................18

        4.      Discrepancy between Interest on TCEH Intercompany Notes and Third-Party Yields .......................................................................19

        5.      Yields on EFIH Notes Issued to Repay TCEH Intercompany Notes Also Indicate Interest Discrepancy ...........................................21

    C.      Methodology In Calculating Interest Discrepancy ..................................21

    D.      Mr. Henkin's Corporate Demand Note Comparison is Inappropriate ...................28

        1.      The TCEH Intercompany Notes Demand Feature Is Not Functional ........28

        2.      The Corporate Demand Notes Cited by Mr. Henkin Are Not Analogous ...................................................................................30

    E.      Conclusion ...............................................................................................33

## I.    INTRODUCTION AND SUMMARY

I, ERIC R. MENDELSOHN, hereby declare under penalty of perjury as follows:

1.    I submit this declaration as direct testimony at the hearing in this proceeding with respect to the Settlement Motion and Plan Confirmation, on behalf of the TCEH Debtors.  I understand that I may supplement this declaration with live testimony at the hearing.

### A.    Scope of Engagement

2.    Since November 2014, Greenhill & Co., LLC ("Greenhill") has served as financial advisor to the TCEH Debtors and, in that capacity, has been reporting to and taking direction from the Disinterested Manager. For additional detail on Greenhill's engagement, please see the *Amended and Restated Order Authorizing Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC to Retain and Employ Greenhill & Co., LLC as Independent Financial Advisor Effective Nunc Pro Tunc to November 17, 2014,* dated March 3, 2015 [D.I. 3728] (the "Retention Order").

### B.    Scope of Testimony

3.    With respect to the Settlement Motion and Plan Confirmation hearing, I was asked by the TCEH Debtors to prepare, and I did prepare, an expert report dated October 12, 2015, setting forth my opinions relating to the interest paid to TCEH by EFH under the TCEH Intercompany Notes (as defined herein).  I understand that my opinions relate to a potential claim by TCEH against EFH, regarding interest paid under the TCEH Intercompany Notes, which is among the claims being settled pursuant to the settlement agreement and addressed in the Settlement Motion.  I was also asked by the TCEH Debtors to comment on opinions expressed in the report of an expert retained by the Official Committee of Unsecured Creditors of EFH Corp. (the "EFH Official Committee"), Michael Henkin, regarding the TCEH Intercompany Notes.  I expressed those views at my deposition and I provide those views herein.

C.    **Qualifications**

4.    I am a Managing Director of Greenhill.  Greenhill is a leading independent investment bank that provides advice on significant mergers, acquisitions, restructurings, financings and capital raisings to corporations, debtors, partnerships, institutions, governments and creditor constituents.  Greenhill operates globally, with fifteen offices located in major markets around the world.

5.    I have over twenty years of experience in a wide range of corporate finance activities including debt and equity financings, out-of-court and in-court restructurings and mergers and acquisitions.  I have extensive experience in evaluating, and providing advice on, the yields and terms of a variety of fixed income instruments.  I have been employed by Greenhill in the firm's Financing Advisory and Restructuring Group since 2012.  Prior to joining the Firm, I served as a Managing Director and a founding member of the Restructuring Group at Lazard Frères. Prior to joining Lazard in 1999, I worked in the Restructuring Group at BT Alex Brown that ultimately moved to Lazard. Prior to BT Alex Brown, I was a Fixed Income Research Analyst at CS First Boston for two years where I authored numerous research reports for institutional investors on the relative value, yield and pricing of corporate bond investments. In this role, I also assisted CS First Boston's Capital Markets Group in the pricing of new corporate debt issues. In addition, I have lectured on financing, valuation and other restructuring issues at various industry symposiums.  I have represented companies or stakeholders in over 40 restructuring transactions encompassing over $150 billion of obligations, executed approximately $6.5 billion of debt and equity financings and advised with respect to an additional $30 billion of debt and equity financings.

6.    I am licensed by the NASD and NYSE with Series 24 General Securities Principal, Series 7 General Securities and Series 63 State Law licenses.  I have an M.B.A. in

Finance from The Wharton School of the University of Pennsylvania and a B.A. in Economics with High Honors from Middlebury College.

## II.    OVERVIEW OF THE TCEH INTERCOMPANY NOTES

### A.    Overview of EFH Corporate Structure

7.    EFH is the parent company of: (1) EFCH and its direct and indirect debtor and non-debtor subsidiaries, including TCEH; (2) EFIH and its direct and indirect debtor and non-debtor subsidiaries, including non-debtor Oncor Holdings, which is 100% owned by EFIH, Oncor Electric, which is approximately 80% owned by Oncor Holdings, and certain subsidiaries of Oncor Holdings and Oncor Electric; and (3) certain other direct and indirect debtor and non-debtor subsidiaries.  The chart below is a simplified representation of EFH's corporate structure.[1]

---

[1] *See* Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp. [D.I. 6124] (the "Disclosure Statement")



**Chart (i): EFH Organizational Structure**[1]

B.    <u>Background on the TCEH Intercompany Notes</u>

8.    In October 2007, on the same day that the LBO[2] closed, EFH issued two promissory notes to TCEH.  One note evidenced EFH's borrowing of funds from TCEH to cover selling, general and administrative expenses (the "**SG&A Note**"); the other note evidenced EFH's borrowing of funds from TCEH to pay principal and interest expenses on EFH's debt (the "**P&I Note**" and, together with the SG&A Note, the "**TCEH Intercompany Notes**").

9.    The TCEH Intercompany Notes were unsecured obligations of EFH and initially were not guaranteed by any EFH subsidiaries. The TCEH Intercompany Notes stated they were subject to repayment on demand and had no stated maturity. The TCEH Intercompany Notes were priced at one-month LIBOR plus 500 basis points.  At the time of issuance in 2007, one-month LIBOR was approximately 5%,[3] meaning the initial interest rate on the TCEH

---

[2] EFH was acquired by a group of private equity funds in 2007 in a leveraged buyout (the "LBO").

[3] Per Bloomberg data.

Intercompany Notes was approximately 10%. The principal balance of the notes varied over time.[4]

10.    The initial P&I Note ("P&I Note I") was repaid in full and voided in November 2008 using proceeds from the sale of EFH's minority interest in Oncor.  A new P&I Note was issued by EFH in respect of additional borrowings from TCEH in May 2009 with added guarantees from EFCH and EFIH ("P&I Note II").[4]

11.    In April 2011, the first SG&A Note ("SG&A Note I") was amended to include EFCH and EFIH guarantees, to fix the face amount at $232 million and to add an EFIH secured debt capacity covenant (the amended note, "SG&A Note II" and collectively with SG&A Note I, the "**SG&A Note**"). P&I Note II was also concurrently amended to introduce a borrowing limit and an EFIH secured debt capacity covenant (the amended note, "P&I Note III" and collectively with P&I Note I and P&I Note II, the "**P&I Note**").[4] Table (i) below gives further detail on the TCEH Intercompany Notes' terms and conditions and changes over time.

---

[4] *See* TCEH Intercompany Notes Agreements (DX898 (P&I Note dated Oct. 10, 2007); DX899 (SG&A Note dated Oct. 10, 2007); DX607 (P&I Note dated May 1, 2009); DX608 at EFH04677802-805 (P&I Note dated April 7, 2011); DX608 at EFH04677797-800 (SG&A Note dated April 7, 2011)); *see also* Schedules of TCEH Intercompany Notes Borrowings (DX 605, 664).

| Table (i): Key Terms and Conditions over Time[5] | | | | | |
|---|---|---|---|---|---|
| | **P&I Notes** | | | **SG&A Notes** | |
| | **P&I Note I** | **P&I Note II** | **P&I Note III** | **SG&A Note I** | **SG&A Note II** |
| **Date Issued / Amended** | ▪ October 10, 2007 | ▪ May 1, 2009 | ▪ April 7, 2011 | ▪ October 10, 2007 | ▪ April 7, 2011 |
| **Lender** | ▪ TCEH | ▪ TCEH | ▪ TCEH | ▪ TCEH | ▪ TCEH |
| **Obligor** | ▪ EFH Corp. | ▪ EFH Corp. | ▪ EFH Corp. | ▪ EFH Corp. | ▪ EFH Corp. |
| **Guarantor(s)** | ▪ None | ▪ EFIH<br>▪ EFCH | ▪ EFIH<br>▪ EFCH | ▪ None | ▪ EFIH<br>▪ EFCH |
| **Amount** | ▪ Unlimited | ▪ Unlimited | ▪ Up to $2.0 billion | ▪ Unlimited | ▪ ~$232mm |
| **Interest** | ▪ 1M Libor + 500 bps<br>▪ Due and payable monthly[6] | ▪ 1M Libor + 500 bps<br>▪ Due and payable monthly[6] | ▪ 1M Libor + 500 bps<br>▪ Due and payable monthly[6] | ▪ 1M Libor + 500 bps<br>▪ Due and payable monthly[6] | ▪ 1M Libor + 500 bps<br>▪ Due and payable monthly[6] |
| **Optional Prepayment** | ▪ Any time in part or in full without premium or penalty | ▪ Any time in part or in full without premium or penalty | ▪ Any time in part or in full without premium or penalty | ▪ Any time in part or in full without premium or penalty | ▪ Any time in part or in full without premium or penalty |
| **Mandatory Prepayment** | ▪ Proceeds of sale of Oncor assets or stock[7] | ▪ Proceeds of sale of Oncor assets or stock[7] | ▪ Proceeds of sale of Oncor assets or stock[7] | ▪ Proceeds of sale of Oncor assets or stock[7] | ▪ Proceeds of sale of Oncor assets or stock[7] |
| **Maturity** | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity |
| **Remedy if not Repaid** | ▪ Interest rate increases to maximum lawful rate in Texas | ▪ Interest rate increases to maximum lawful rate in Texas | ▪ Interest rate increases to maximum lawful rate in Texas<br>▪ Set-off of amounts due against other Obligor's obligations | ▪ Interest rate increases to maximum lawful rate in Texas | ▪ Interest rate increases to maximum lawful rate in Texas<br>▪ Set-off of amounts due against other Obligor's obligations |
| **Covenants** | ▪ None | ▪ None | ▪ Maintain EFIH Second Lien debt capacity | ▪ None | ▪ Maintain EFIH Second Lien debt capacity |

---

[5] This table is a brief summary of the Notes for descriptive purposes only.

[6] Interest calculated based on each day's outstanding balance.

[7] As contemplated in, and to the extent required by, Section 10.6 of the 2007 Credit Agreement. *See* DX897 (TCEH Credit Agreement dated Oct. 10, 2007 at EFH01725218-19).

12.     From the date of issuance of the TCEH Intercompany Notes, there have been approximately 560 instances in which EFH increased the balance of the SG&A Note and approximately 135 instances in which EFH increased the balance of the P&I Note.[8]  At times, the balance on the TCEH Intercompany Notes reached amounts in excess of $1 billion. EFH made approximately 30 repayments on the SG&A Note and approximately 70 repayments on the P&I Note (approximately 65 of these repayments were before December 2008) before fully repaying the principal balances outstanding in January 2013.  In April 2011, EFH repaid $770 million of borrowings under the SG&A Note. In February and August 2012, EFIH issued new secured debt to raise $2 billion in the aggregate—$1.15 billion in February and $850 million in August 2012. Following each debt issuance, EFIH issued dividends to EFH— $950 million in February 2012 and $680 million in January 2013, the proceeds of which EFH used to repay $1.65 billion in the aggregate principal on the TCEH Intercompany Notes. Please see chart (ii) for the TCEH Intercompany Notes amounts outstanding over time.

---

[8]   Schedules of TCEH Intercompany Notes Borrowings. (DX605, 664). In the case of the P&I Note, these increases include approximately 50 instances in which cash interest due and payable was deferred and accrued to the amount outstanding on account of both the P&I Note and the SG&A Note.



13.     Over the 5.2 years that the TCEH Intercompany Notes were outstanding, EFH paid TCEH a total of approximately $295 million in interest payments. The average interest rate observed for the TCEH Intercompany Notes was approximately 5.9% over the life of the TCEH Intercompany Notes. Please see Chart (iii) for detail on the interest payments and Chart (iv) for a depiction of the actual interest rate observed on the TCEH Intercompany Notes.

---

[9] Based on Schedules of TCEH Intercompany Notes Borrowings. (DX605, 664).

**Chart (iii): Annual and Cumulative Interest Payments[9]**

($ in millions)



**Chart (iv): TCEH Intercompany Interest Rate over Time[10]**



---

[10] Based on Schedules of TCEH Intercompany Notes Borrowings. (DX605, 664).

III.    **OPINION**

A.    **Summary**

14.    As I will describe in detail below, I have analyzed the interest rates and terms of the TCEH Intercompany Notes in relation to EFH's credit risk and have compared the rates on the TCEH Intercompany Notes to those that I believe a third-party investor would likely require as compensation in return for similar risk exposure. I believe the comparative analysis I employ is a widely accepted methodology that is commonly used in the assessment of fixed income instruments.

15.    In my opinion, and as explained in more detail herein, the interest that EFH paid on the TCEH Intercompany Notes undercompensated TCEH in the range of approximately $425 million to $834 million in incremental interest.  The analysis leading to that conclusion is as follows:

B.    **Opinion Support**

1.    **Overview**

16.    Over the time period that EFH was borrowing funds from TCEH under the TCEH Intercompany Notes, EFH's credit risk increased substantially, as evidenced by ratings agency downgrades and an increase in the observed yields in the market on comparable third-party EFH notes.  However, during that period, the spread that TCEH received from EFH on the TCEH Intercompany Notes (5% above LIBOR) remained unchanged, and the resulting actual interest rate paid to TCEH decreased significantly due to significant declines in LIBOR interest rates.  In short, the credit risk increased, but the compensation to TCEH for its exposure to EFH credit risk actually decreased.

17.    In estimating what would have been an appropriate interest rate for TCEH's loans to EFH, in my judgment, the best available proxies are contemporaneous yields

observed in the market for comparable third-party EFH notes, specifically those with similar credit support and structural characteristics. Those third party notes are described in the following sections of my testimony.

### 2. Changes in EFH Creditworthiness over Time

18. As reflected in EFH's SEC filings, there is significant evidence of the deterioration of EFH's creditworthiness over the time period that EFH was borrowing funds from TCEH under the TCEH Intercompany Notes. For example, EFH wrote down approximately $8 billion of goodwill at year-end 2008 and an additional $4 billion of goodwill in 2010, resulting in negative $3.5 billion and negative $5.9 billion of book equity in 2008 and 2010, respectively.[11,12]

19. In addition, the S&P and Moody's assessments of EFH's credit profile also reflect the decline of EFH's creditworthiness. At the time of the LBO closing in October 2007, S&P assigned EFH an issuer credit rating of B– while Moody's assigned EFH a corporate family rating of B2. By the time EFH had repaid the TCEH Intercompany Notes in January 2013, S&P and Moody's ratings had declined to CCC and Caa3, respectively. Additionally, over the life of the TCEH Intercompany Notes, both ratings agencies maintained almost entirely negative credit outlooks on EFH and downgraded both the issuer as well as specific security ratings from time to time. Charts (v), (vi), and (vii) outline the changes in credit ratings over the life of the TCEH Intercompany Notes.

---

[11] Per EFH Form 10-K filed on March 3, 2009.
[12] Per EFH Form 10-K filed on February 18, 2011.



**Chart (v): EFH Credit Profile: Issuer / Corporate Family Credit Ratings**[13]



**Chart (vi):  EFH Credit Profile: 10.875% 2017 Senior Notes**[13]



**Chart (vii):  EFH Credit Profile: 5.55% Series P 2014 Notes**[13]

---

[13]  Retrieved from S&P, Moody's and Bloomberg.  Excludes short-term ratings changes in connection with exchange offers or similar corporate actions.

20.     Another indicator of the increase of EFH credit risk over the life of the TCEH Intercompany Notes is the discounted levels at which its unsecured third-party notes traded over the same period.   Between October 10, 2007 and January 30, 2013, EFH's third-party notes traded at an average discount to par value of between approximately 19% and approximately 51%.   Please see table (ii) and chart (viii) for further detail on pricing and discount levels for EFH's unsecured notes over time.

**Chart (viii):  Trading Levels for EFH Unsecured Notes over Time[14]**



11.25% / 12.00% Senior Toggle Notes (EFCH/EFIH Guarantee)
5.55% Fixed Series P Senior Notes (Unguaranteed)
6.50% Fixed Series Q Senior Notes (Unguaranteed)
6.55% Fixed Series R Senior Notes (Unguaranteed)
10.875% Fixed Senior Notes (EFCH/EFIH Guarantee)

---

[14] Per AdvantageData.

| Table (ii):  Average Prices and Discounts for EFH Unsecured Notes over Time[15] | | |
|---|---|---|
| **Tranche** | **Average Price** | **Average Discount to Par** |
| **Unsecured LBO Notes** | | |
| 10.875% Fixed Senior Notes | 80.95 | *19.05%* |
| 11.25% / 12.00% Senior Toggle Notes | 73.51 | *26.49%* |
| | | |
| **Unsecured Legacy Notes** | | |
| 5.55% Fixed Series P Senior Notes | 68.91 | *31.09%* |
| 6.50% Fixed Series Q Senior Notes | 50.69 | *49.31%* |
| 6.55% Fixed Series R Senior Notes | 49.50 | *50.50%* |

### 3.      Yields of Third Party EFH Unsecured Notes are Best Proxy for EFH Credit Risk

21.      The TCEH Intercompany Notes were debt instruments that (i) were issued on a related party basis, where the borrower controlled the lender, (ii) allowed for continuous borrowing, (iii) were issued by an entity with below investment grade credit (i.e., EFH), (iv) were unsecured obligations, (v) did not have a stated maturity and were originally expected to be outstanding for approximately 7 to 10 years, (vi) contained no maintenance financial performance covenants or representations or warranties, and (vii) did not require interest to be paid in cash.

22.      Generally, interest rates on fixed income instruments are a function of the instrument's key terms and reflect credit risk, security, maturity and other terms.  While I am not aware of any market instrument that has the exact same terms as the TCEH Intercompany Notes, I believe that third-party yields on certain comparable EFH notes are the best proxy.  Based upon my experience, comparing the relative risk, yields and terms of similar debt instruments is broadly used in the corporate fixed income market to determine whether a certain debt instrument exhibits an appropriate yield.

---

[15] Per AdvantageData.

a.    Comparable Credit Risk

23.    The TCEH Intercompany Notes bore unsecured EFH (and at times EFIH) credit risk, were originally expected to be outstanding for approximately 7 to 10 years and were not fully repaid for 5.2 years.[16]  Based on these fundamental facts, I believe the most relevant proxies for estimating the appropriate interest rate for the unsecured TCEH Intercompany Notes are EFH's 10.875% 2017 Senior Notes for TCEH Intercompany Notes with EFIH and EFCH guarantees and EFH's 5.55% Series P 2014 Notes for TCEH Intercompany Notes with no guarantees (together, "**Third Party EFH Unsecured Notes**").  Table (iii) below provides an overview of the terms of the Third Party EFH Unsecured Notes.

| Table (iii): Overview of Third Party EFH Unsecured Notes[17] | | | |
|---|---|---|---|
| | **Guaranteed Notes** | | |
| | **TCEH Intercompany Notes** | | **Third Party Note Proxy** |
| | **SG&A Note II** | **P&I Note II** | **P&I Note III** | **10.875% Fixed Senior Notes** |
| **Obligor** | ▪ EFH | ▪ EFH | ▪ EFH | ▪ EFH |
| **Guarantor(s)** | ▪ EFIH & EFCH | ▪ EFIH & EFCH | ▪ EFIH & EFCH | ▪ EFIH & EFCH |
| **Collateral** | ▪ None | ▪ None | ▪ None | ▪ None |
| **Maturity** | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ November 2017 |

---

[16]  An EFIH and EFCH guarantee was added to the P&I Note in May 2009 and the SG&A Note in April 2011. (DX607 (P&I Note dated May 1, 2009); DX608 at EFH04677797-800 (SG&A Note dated April 7, 2011)). The TCEH Intercompany Notes remained unsecured. *See id.*

[17]  Please see the TCEH Intercompany Notes agreements for a full description of the terms and conditions. (See footnote 4 above). Also please see the agreements for the 5.55% Fixed Series P Notes due 2014 and the 10.875% Fixed Senior Notes due 2017 for a full description of their terms and conditions. (See DX900 (Senior Notes due 2017); PEO 1.4.11.2.4.2.1 (Senior Notes due 2014)).

| | Unguaranteed Notes | | |
|---|---|---|---|
| | TCEH Intercompany Notes | | Third Party Note Proxy |
| | P&I Note I | SG&A Note I | 5.55% Fixed Series P Notes |
| Obligor | ▪ EFH | ▪ EFH | ▪ EFH |
| Guarantor(s) | ▪ None | ▪ None | ▪ None |
| Collateral | ▪ None | ▪ None | ▪ None |
| Maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ Notes read "on demand"<br>▪ No stated maturity | ▪ November 2014 |

24.     I considered using the yields of other third-party EFH notes in my calculations, but I believe these instruments were inferior proxies because the alternative notes had significantly longer maturities (and, I would note, higher yields that would translate into a higher estimate of underpayments to TCEH than I am opining).

b.     Comparable Maturities

25.     While the nominal maturities of the Third Party EFH Unsecured Notes are different than the TCEH Intercompany Notes, which have no stated maturity and state that they are payable upon demand, I believe that, as a practical matter, the purported "demand" feature was not functional, and the maturities are comparable to the Third Party EFH Unsecured Notes, for the following reasons:

- The lender, TCEH, was controlled by the borrower, its ultimate parent EFH, and the Notes were signed by the same individual for both the borrower and the lender; [18]

- TCEH never in fact demanded repayment from EFH, its parent;

---

[18]  EFH is the parent company of EFCH and its direct and indirect debtor and non-debtor subsidiaries, including TCEH.

- TCEH did not adjust the interest rate spreads over time, even though EFH's credit risk increased and the effective interest rate on the notes declined substantially;

- TCEH continued to loan to EFH under the TCEH Intercompany Notes program as EFH's credit risk increased (in the aggregate, approximately 700 drawdowns), even though under the terms of the notes, TCEH was not obligated to agree to new advances;

- TCEH continued to make loans even though the market yields on EFH's third-party notes were at times multiples of the effective interest rate on the TCEH Intercompany Notes;

- In implementing the TCEH Intercompany Notes, it is my understanding that EFH viewed the facility as a 7-to-10-year program, and indeed looked to the yields on EFH's public notes due in 2014 and 2017 in considering the initial interest rate on the TCEH Intercompany Notes[19]. In addition, EFH considered 7-year CDS spreads in pricing the TCEH Intercompany Notes in October 2007.  The TCEH Intercompany Notes program ultimately lasted for 5.2 years;

- Based on my review of EFH's public filings, I believe that for most of the period when the TCEH Intercompany Notes were outstanding, EFH did not have sufficient cash resources to repay the EFH Intercompany Notes "on demand;"[20]

---

[19] This is consistent with (a) how EFH discussed the notes in its February 2011 Lender Presentation, (DX517), and (b) what I was told by the Company in an early 2015 diligence presentation.  Mr. Horton's declaration confirms these points as well. (*See* Horton Declaration ¶ 80 (Oct. 30, 2015)).

[20] I arrive at this conclusion based on my review of quarter-end and year-end financial information from EFH's publicly filed 10-Ks and 10-Qs from 2007 to 2013.  *See also* DX647, which is a copy of EFH's Current Report dated January 31, 2012 (stating that EFH did not have sufficient cash to repay the balances due on the TCEH Intercompany Notes).

- As a practical matter, if TCEH had demanded repayment, EFH likely would have been forced to borrow from higher cost third-party sources assuming it would have access to market financing. This is, in fact, precisely what happened when the TCEH Intercompany Notes were ultimately repaid.

26.     Taking into consideration the above-described factors, I view the practical maturity of the TCEH Intercompany Notes as comparable to those of the Third Party EFH Unsecured Notes.  In light of this consideration, and the common obligors and guarantors (EFH and at times EFIH), I believe that the Third Party EFH Unsecured Notes are the most relevant proxy for estimating the appropriate interest rates for the TCEH Intercompany Notes.

c.      EFH Money Pool Rate

27.     I also considered the EFH Money Pool Rate as an alternative potential benchmark rate for the TCEH Intercompany Notes.  I understand that the EFH Money Pool interest rate was established in 2007 and was based on the interest rate on EFH's 10.875% LBO Senior Notes. [21, 22]  In the absence of third-party yields, the EFH Money Pool Rate could serve as an alternative benchmark rate. However, given the availability of unsecured EFH credit risk benchmarks (both on a guaranteed and unguaranteed basis) and based on the reasons noted above, I continue to believe that third-party yields are the best proxy.

---

[21] The EFH money pool was a cash management system in which some entities within the EFH corporate family participated. TCEH did not participate in the EFH money pool. Net lenders to the EFH money pool, which included EFIH but not the TCEH Debtors, were paid interest of 10.875%, based on the interest rate for EFH's 10.875% LBO Senior Notes. (*See* Horton Declaration ¶ 81; DX943 (EFH System Money Pool Policy dated Dec. 31, 2011)).

[22] K&E Cash Management Presentation, June 2013.

4.    **Discrepancy between Interest on TCEH Intercompany Notes and Third-Party Yields**

28.    As EFH's creditworthiness declined, third-party rates observed in the market increased significantly, yet the actual interest rate paid to TCEH decreased due to a significant decline in LIBOR. By early 2009, the difference between the yield on the Third Party EFH Unsecured Notes and the TCEH Intercompany Notes had reached more than 10% (using EFH's 2017 senior notes as a benchmark). From November 2007 to January 2013, TCEH received average annual interest of 5.9% on the TCEH Intercompany Notes relative to average yields to maturity on Third Party EFH Unsecured Notes of 15.8%[23] / 17.2%[24] over the same time period. Please see the charts and table below for a graphical depiction of the discrepancy between the interest rates of the TCEH Intercompany Notes and the yields of the Third Party EFH Unsecured Notes.

---

[23] Average yield to maturity of 10.875% Senior Notes due November 2017 (unsecured, EFIH / EFCH guarantee).
[24] Average yield to maturity of 5.55% Series P Senior Notes due November 2014 (unsecured, no guarantee).



**Chart (ix): Third-Party Yields and TCEH Intercompany Notes Interest Rates, Nov-07 to Jan-13[25]**

| | TCEH Intercompany Notes: 1M Libor + 5.00% | Third Party Yields | |
| | | EFH 10.875% 2017 Notes | EFH 5.55% 2014 Notes |
|---|---|---|---|
| High | 10.246% | 25.339% | 46.642% |
| Low | 5.185% | 9.749% | 9.049% |
| **Average** | **5.867%** | **15.816%** | **17.155%** |

---

[25] TCEH Intercompany Notes interest rates per Schedule of TCEH Intercompany Notes Borrowings. Third-party yields per Advantage Data.

5.      **Yields on EFIH Notes Issued to Repay TCEH Intercompany Notes Also Indicate Interest Discrepancy**

29.      In February and August 2012, EFIH issued an aggregate of $1.75 billion of 11.75% Senior Secured Second Lien Notes and $250 million of 6.875% Senior Secured First Lien Notes (together, the "**EFIH Notes**"), dividending $1.63 billion of the proceeds to EFH to repay the TCEH Intercompany Notes. The 11.75% Senior Secured Second Lien Notes were issued at a price of 98.535, implying a yield on date of issuance of 12.0%; the 6.875% Senior Secured First Lien Notes were issued at par. The weighted average yield of the offerings was approximately 11.2%.

30.      As previously discussed, certain of the TCEH Intercompany Notes had no guarantees from EFIH, while other TCEH Intercompany Notes benefited from an *unsecured* guarantee from EFIH. The $1.75 billion of borrowings used to repay the TCEH Intercompany Notes involved a stronger credit position than the TCEH Intercompany Notes, due to the replacement borrowings' second lien collateral.  Nevertheless, even with this enhanced credit position, the replacement borrowings were issued with an effective yield – 12% – which was substantially higher than the rate EFH was paying to TCEH on the TCEH Intercompany Notes.

C.      **Methodology In Calculating Interest Discrepancy**

31.      To estimate the appropriate interest rates in relation to the risk of lending to EFH, I calculated new daily interest payments[26] based on the actual TCEH Intercompany Notes amounts outstanding and assumed benchmark rates based on the yields of the Third Party EFH Unsecured Notes. In preparing these calculations, I estimated the market rate of interest by applying the yield to maturity of unsecured, unguaranteed EFH public debt (5.55% Series P

---

[26] My analyses assumed that the benchmark interest rates were reset on a daily basis.

Senior Notes due November 2013) to the P&I Note and SG&A Note borrowings during the period that each note was not guaranteed; and the yield to maturity of unsecured, guaranteed EFH public debt (10.875% Senior Notes due November 2017) to borrowing during periods when the notes were guaranteed by EFIH.[27] For informational purposes, I also used the EFH Money Pool rate as an alternative proxy.

32.    After gathering the data necessary for the potential benchmark interest rates, I calculated the difference between the actual interest payments TCEH received with respect to the TCEH Intercompany Notes and the interest payments TCEH would have received with respect to the TCEH Intercompany Notes assuming the applicable benchmark rate. The difference is the "**Interest Differential.**" Please see the tables below for further detail on my calculations and an illustrative example of the daily calculation on January 1, 2012.

---

[27] Yields obtained from Advantage Data.

| Table (iv): Daily Interest Differential Calculation |
|:---:|
| **Illustrative Formula** |



| Daily Interest Differential Calculation on January 1, 2012 [28] |
|:---:|

$$\left[\$1{,}592{,}371{,}742 \times \frac{(16.91\%)}{360}\right] - \left[\$1{,}592{,}371{,}742 \times \frac{(0.30\% + 5.00\%)}{360}\right] =$$

$$\$748{,}061 - \$234{,}225 = \mathbf{\$513{,}836}$$

Applying this methodology over the life of the TCEH Intercompany Notes yields the results in the following table.

| Table (v): Summary Interest Differential Calculation [29] | | | | |
|:---:|:---:|:---:|:---:|:---:|

($ in millions)

| Year | Actual Interest Payments | Average Balance Outstanding | Yields on Third Party EFH Unsecured Notes | |
|:---:|:---:|:---:|:---:|:---:|
| | | | Nominal Interest Payment Assuming Yields on Third Party EFH Unsecured Notes | Interest Differential |
| 2007 | $0 | $24 | $0 | ($0) |
| 2008 | 32 | 410 | 56 | 24 |
| 2009 | 50 | 935 | 166 | 115 |
| 2010 | 85 | 1,588 | 287 | 202 |
| 2011 | 82 | 1,542 | 256 | 175 |
| 2012 | 42 | 789 | 126 | 84 |
| 2013 | 3 | 698 | 8 | 5 |
| **Total** | **$295** | **$1,022** | **$899** | **$605** |

---

[28] Benchmark rate assumed as yields on Third Party EFH Unsecured Notes.
[29] Period considered in table is "Since inception / LBO."

33.     When calculating the Interest Differential, I did not increase each day's actual principal amounts outstanding by my estimate of prior accrued Interest Differentials. Had I modified the principal balances to reflect this, my total estimate of interest undercompensation would have increased due to additional interest accruing on previous periods' Interest Differentials.

34.     As instructed by counsel to the TCEH Debtors, Munger, Tolles & Olson LLP ("MTO"), I considered three time periods for my calculations of the Interest Differential.

i.      Since Inception / LBO.  This period begins when the first funds from the TCEH Intercompany Notes were withdrawn by EFH on November 15, 2007 (the "Withdrawal Date") and ends when the entire balance of the TCEH Intercompany notes was repaid on January 30, 2013 (the "Repayment Date").

ii.     Since January 1, 2009.  This period begins on January 1, 2009, following EFH's $8 billion goodwill impairment at the end of EFH's 2008 fiscal year.  This period ends at the Repayment Date.

iii.    Since April 29, 2010.  This period begins on April 29, 2010, four years prior to the date on which EFH filed for reorganization under Chapter 11 of the U.S. Bankruptcy Code on April 29, 2014 (the "Petition Date").  This period ends at the Repayment Date.

35.     Next, I accounted for time value of money. I have compounded the Interest Differential on a monthly basis, beginning at the first date of the respective time period considered and ending on the Petition Date. As instructed by MTO, the compounding of the Interest Differential was calculated using a rate of 9%, equivalent to the New York pre-judgment

interest rate.[30]    For each day, the compounded interest differential equals the nominal interest differential from that day compounded, on a monthly basis, using a rate of 9.0%.  The sum of the all of the compounded interest differentials equals the total compounded interest differential. Please see below for further detail on my compounding methodology and an illustrative example of the calculation on January 1, 2012.

| Table (vi): Compounded Interest Differential Calculation |
|---|
| **Illustrative Formula[31]** |

$$Compounded\ Interest\ Differential_t =$$

$$(Interest\ Differential_t) \times \left(1 + \frac{Pre\text{-}judgment\ rate}{12}\right)^{[(Filing\ Date - t)/30]}$$

| **Compounded Interest Differential Calculation for January 1, 2012[32,33]** |
|---|

$$Compounded\ Interest\ Differential_{1/1/2012} =$$

$$\left(Interest\ Differential_{1/1/2012}\right) \times \left(1 + \frac{9.00\%}{12}\right)^{[(4/29/\ 2014 - 1/1/2012)/30]}$$

$$(\$513,836) \times \left(1 + \frac{9.00\%}{12}\right)^{28.3} = \$634,833$$

36.    Based on the methodology described herein, the below tables and charts summarize the results.

---

[30] *See* New York CPLR §§ 5001, 5004.  The 9% rate was selected at the request of MTO.

[31] Formula represents the interest differential on day *t* compounded until April 29, 2014. The calculation of the total amount of compounded interest differential equals the sum of the compounded differentials on days t, *t+1, t+2, t+3…* through January 30, 2013.

[32] Benchmark rate assumed as yields on Third Party EFH Unsecured Notes.

[33] Time period assumed as "Since Inception / LBO".

**Table (vii): Interest Differential Range Based on Third-Party Yields**

($ in millions)

| | Time Period Considered | | |
|---|---|---|---|
| | Since April 29, 2010 | Since January 1, 2009 | Since Inception / LBO |
| **Interest Differential** | $425 | $580 | $605 |
| **Including Pre-judgment Rate through April 2014**[34] | $557 | $794 | $834 |

**Chart (xi): Summary Interest Differential Calculations**

**Yields on Third Party EFH Unsecured Notes**



37.    While I believe that yields on the Third Party EFH Unsecured Notes are the best proxy for estimating the appropriate interest rate for the risk of lending to EFH, I also considered EFH's Money Pool Rate of 10.875% as an alternative benchmark rate for informational purposes.    The tables below provide an overview of the range of Interest Differentials estimated using the EFH Money Pool Rate as the benchmark rate.

---

[34]  Assumes unpaid interest is compounded on a monthly basis at a rate of 9.0%, equivalent to the New York pre-judgment interest rate.

| Table (viii): Summary Interest Differential Calculation[35] | | | | |
|---|---|---|---|---|

($ in millions)

| | | | EFH Money Pool Rate | |
|---|---|---|---|---|
| Year | Actual Interest Payments | Average Balance Outstanding | Nominal Interest Payment Assuming EFH Money Pool Rate | Interest Differential |
| 2007 | $0 | $24 | $0 | $0 |
| 2008 | 32 | 410 | 45 | 13 |
| 2009 | 50 | 935 | 103 | 53 |
| 2010 | 85 | 1,588 | 175 | 90 |
| 2011 | 82 | 1,542 | 170 | 88 |
| 2012 | 42 | 789 | 87 | 45 |
| 2013 | 3 | 698 | 6 | 3 |
| Total | $295 | $1,022 | $587 | $293 |

| Table (ix): Interest Differential Based on EFH Money Pool Rate | | |
|---|---|---|

($ in millions)

| | Time Period Considered | | |
|---|---|---|---|
| | Since April 29, 2010 | Since January 1, 2009 | Since Inception / LBO |
| Interest Differential | $201 | $279 | $293 |
| Including Pre-judgment Rate through April 2014[36] | $262 | $380 | $402 |

---

[35]  Period considered in table is "since inception / LBO."

[36]  Assumes interest differential is compounded on a monthly basis at a rate of 9.0%, equivalent to the New York pre-judgment interest rate.



### D. Mr. Henkin's Corporate Demand Note Comparison is Inappropriate

#### 1. The TCEH Intercompany Notes Demand Feature Is Not Functional

38.    The EFH Official Committee has designated an expert witness, Mr. Michael Henkin, who opines in part regarding the adequacy of the interest paid on the TCEH Intercompany Notes.  Mr. Henkin reaches his conclusion that the interest paid was adequate largely based on the "demand" feature in the TCEH Intercompany Notes and his comparison of the TCEH Intercompany Notes to certain "Corporate Demand Notes" issued by a small number of third parties.    Indeed, Mr. Henkin stated at his deposition that "most of the criticisms around [Mr. Mendelsohn's] analysis of the comparable notes" would be eliminated if the demand feature were removed from the intercompany notes and a term of seven to ten years was inserted.[37]

39.    For the following reasons, I am of the view that Mr. Henkin's reliance on the demand feature for his analysis is misplaced, as I believe that the "demand" feature of the

---

[37] 10/21/15 Henkin Dep. Tr.  at 77:15-18.

TCEH Intercompany Notes was not functional under the circumstances.  As a result, it is much more reasonable to evaluate the TCEH Intercompany Notes based on a longer maturity, rather than treating them as if they had a short maturity and were subject to demand for payment at any moment.

40.    First, the loan is from a subsidiary, TCEH, to its ultimate parent, EFH, and accordingly, the borrower controls the lender.  Indeed the same person, Mr. Horton, signed the notes for both the borrower and the lender.  Thus, the exercise of the "demand" feature would involve a subsidiary demanding that its parent repay the note.  This is unlikely to happen, absent other external factors, if the parent views such repayment as against its interests.

41.    Second, the lack of a functional demand feature is confirmed by the fact that a demand was never made and, instead, hundreds of new loans were extended to EFH under the TCEH Intercompany Notes, despite the fact that EFH's credit risk had increased and the effective interest rate on the TCEH Intercompany Notes declined significantly.  I believe that a third-party lender with a functional demand feature would be extremely unlikely to behave as TCEH did in this respect.

42.    Third, the demand feature was not functional because, based on my review of EFH's public filings, I believe that for most of the period when the TCEH Intercompany Notes were outstanding, EFH did not have sufficient cash resources to repay the TCEH Intercompany Notes "on demand." [38]   At most times over the 5.2 year period, in order to repay the TCEH Intercompany Notes, EFH would likely have needed to seek additional external credit at

---

[38] I arrive at this conclusion based on my review of quarter-end and year-end financial information from EFH's publicly filed 10-Ks and 10-Qs from 2007 to 2013.  See also DX647, which is a copy of EFH's Current Report dated January 31, 2012 (stating that EFH did not have sufficient cash to repay the balances due on the TCEH Intercompany Notes).

substantially higher rates of interest. This is in fact what happened when EFH ultimately repaid the outstanding balance in January 2013.

43.    Fourth, EFH contemplated at the time that the TCEH Intercompany Notes were issued that the facility would be outstanding for approximately 7 to 10 years. This was described to me by company personnel in an early 2015 due diligence meeting, and it is reflected in a February 2011 company presentation to lenders.[39]

44.    Fifth, I believe that it is extremely unlikely that EFH's private equity owners, who invested over $8 billion of equity into EFH, would subject EFH's access to its primary source of external liquidity (the TCEH Intercompany Notes) to a single third party investor who truly had the independent right to demand repayment at any time, thereby exposing the owners' substantial equity investment to daily risk of a liquidity crisis.

45.    For all of these reasons, I conclude that the "demand" feature of the TCEH Intercompany Notes was not functional and a longer comparative maturity period is appropriate.

## 2.    The Corporate Demand Notes Cited by Mr. Henkin Are Not Analogous

46.    Mr. Henkin defends the interest rates on the TCEH Intercompany Notes by comparing them to a handful of "Corporate Demand Notes" that were issued by other corporations with substantially different credit profiles than EFH. I do not believe that those notes are comparable to, or an appropriate proxy for, the TCEH Intercompany Notes.

47.    First, the Corporate Demand Notes mentioned by Mr. Henkin were loans between third parties, i.e., the lender was not controlled by the borrower. Thus, the "demand" feature had far more potential to be exercised.    Evidence would suggest that the "demand" features were in fact exercised as demonstrated by the significant declines in Ford Motor Credit

---

[39] *See* DX517 (February 2011 Lender Presentation); *see also* Horton Declaration ¶ 80.

(-63%) and Ally Financial (-80%) demand notes outstanding from 2007 to 2008 as their credit profiles deteriorated.[40]   Conversely, the "demand" feature in the TCEH Intercompany Notes was never exercised and the total balance continued to grow through its peak in April 2011.

48.     Second, the Corporate Demand Notes cited by Mr. Henkin functioned quite differently from the TCEH Intercompany Notes.  As Mr. Henkin describes in his report, Corporate Demand Notes are marketed to retail / consumer investors who were given checkbooks from which they could write against (i.e., make demands on) the balance of the loans.  Hence, the Corporate Demand Notes programs function more like undiversified money market accounts or high-yielding checking accounts without FDIC insurance. I believe that each Corporate Demand Note program of size likely involved a large number of retail investors, and therefore, unlike in the case of EFH, the Corporate Demand Note issuers' access to liquidity was generally not dependent on the actions of a single investor.

49.     Third, all of the issuers of the Corporate Demand Notes as cited by Mr. Henkin are investment grade borrowers, with the exception of Ford Motor Credit (over certain periods of time) and Ally Financial.  All of those borrowers – including Ford Motor Credit – had access to substantial alternative sources of liquidity and did not rely on a Corporate Demand Note program as their primary or sole source of liquidity.

50.     Fourth, the Ford Motor Credit example cited by Mr. Henkin is not comparable to EFH.  Among the key differences are the following:  (1) although not investment grade, Ford had roughly $17 to 28 billion of available liquidity to cover potential demands on the

---

[40]   Per Ford Motor Credit Company 10-K filed for the year 2008 and Ally Financial 10-K filed
    for the year 2008.

notes between years 2007 and 2012[41]; (2) Ford received up to roughly $21 billion in government financial support at certain points in time between 2007 and 2012[41]; (3) Ford had a positive book equity of roughly $9 to 13 billion over this same period[41]; by contrast, the EFH Official Committee's other expert, Mr. Rule, asserts that EFH was insolvent through at least most of the pertinent period; (4) Ford Motor Credit's "balance sheet is inherently liquid because of the short-term nature of our finance receivables, investment in operating leases, and cash"[42] versus EFH's principal assets which are illiquid equity stakes in operating companies, and (5) when Ford's credit quality deteriorated in 2007-08, the balance outstanding on its notes shrank dramatically, from $5.4 billion to $2 billion[43], showing that the demand feature in fact functioned; whereas the balance outstanding under the TCEH Intercompany Notes actually grew through April 2011 although EFH's credit profile had deteriorated.   For all of these reasons, the Ford Credit Corporation demand notes are not a reasonable proxy for the TCEH Intercompany Notes.

51.    In addition, there is no indication that TCEH and EFH ever viewed any of the Corporate Demand Notes cited by Mr. Henkin as a proxy in considering the appropriate interest rate for the TCEH Intercompany Notes.  Indeed, Mr. Henkin acknowledged at deposition that he was not aware of anyone other than himself who had ever drawn a comparison between the TCEH Intercompany Notes and the Corporate Demand Notes.[44]

---

[41]  Per Ford Motor Credit Company 10-K filed for the years 2012, 2011, 2010, 2009, 2008 and 2007. Liquidity defined as liquidity available for use per Ford Motor Credit Company's filings.

[42] *See* page 31 of Ford Motor Credit Company's 2011 10-K.

[43] *See* DX639, which is a copy of Ford Motor Credit Company LLC's Annual Report for the fiscal year ended December 31, 2008, at Note 10.

[44]  In addition, I am informed that Mr. Horton, the person who signed the TCEH Intercompany Notes on behalf of both the borrower and the lender, is testifying that he does not view the TCEH Intercompany Notes as comparable with corporate demand notes programs issued by other companies. *See* Horton Declaration ¶ 88.

52.    For all of these reasons, I believe that the Corporate Demand Notes are not an appropriate proxy for the TCEH Intercompany Notes, and are not a reasonable basis to defend the interest paid to TCEH.

53.    Mr. Henkin's report also makes reference to an intercompany note from EFH to TCEH as a defense of the interest rate on the TCEH Intercompany Notes.  The terms of a loan to TCEH should reflect TCEH's credit risk and thus is not an appropriate proxy for the TCEH Intercompany Notes which are exposed to EFH credit risk.

**E.**    **Conclusion**

54.    Based upon the analyses set forth herein, I conclude that the interest paid on the TCEH Intercompany Notes undercompensated TCEH in the range of approximately $425 million to $834 million in incremental interest.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___ day of November, 2015, at New York, New York.

Eric R. Mendelsohn