**<u>Exhibit C</u>**

**Direction Letter**

November [__], 2015

UMB Bank, N.A.,
as Trustee under the Indenture referred to below
2 South Broadway, Suite 600
St. Louis, Missouri 63102
Facsimile No.: (314) 612-8499
Attention: Ms. Laura Roberson

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Facsimile No.: (312) 832-4700
Attention: Harold L. Kaplan, Esquire, and Mark. F. Hebbeln, Esquire

Energy Future Intermediate Holding Company LLC
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel
and
Facsimile No.: (214) 812-4097
Attention: Treasurer

EFIH Finance Inc.
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Facsimile No.: (212) 446-6460
Attention: Edward O. Sassower, P.C.
and
300 North LaSalle
Chicago, Illinois 60654
Facsimile No. (312) 862-2200
Attention: Marc Kieselstein, P.C.

Re: <u>Direction to Trustee</u>
Ladies and Gentlemen:

  Reference is made to (i) the Indenture, dated as of December 5, 2012, as amended supplemented by the First Supplemental Indenture, dated as of December 19, 2012, the Second Supplemental Indenture, dated as of January 23, 2013, and the Third Supplemental Indenture, dated as of January 30, 2013 (collectively, as further modified, supplemented and/or amended and in effect on the date hereof, the "**Indenture**"), by and among Energy Future Intermediate Holding Company LLC ("**EFIH**") and EFIH Finance Inc. (together with EFIH, the "**Issuers**"), and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee, pursuant to which the Issuers issued the 11.25%/12/25% senior toggle notes due 2018 (the "**Notes**"), and (ii) the Agreement of Resignation, Appointment and Acceptance, dated as of March 26, 2014, by and among the Issuers, The Bank of New York Mellon Trust Company, N.A., and UMB Bank, N.A., as successor indenture trustee (the "**Trustee**"). Reference is also made to (i) the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**"), filed at docket number 6122 in the Issuers' chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and jointly administered under the caption <u>In re Energy Future Holdings Corp., et al.</u>, Case No. 14-10979 (CSS) the ("**Bankruptcy Cases**"); (ii) that certain Amended & Restated Plan Support Agreement, dated as of September 11, 2015, attached hereto as **Exhibit B** to **Exhibit 1** (as amended from time to time, including by amendment dated October 27, 2015, the "**Plan Support Agreement**"), by and among the Debtors, the Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, the Consenting EFIH PIK Noteholders and certain other Entities signatory thereto; (iii) the Objection of UMB Bank, N.A., to Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al. Pursuant to Chapter 11 of the Bankruptcy Code filed at docket number 6640 (the "**Plan Objection**"); (iv) the Objection of UMB Bank, N.A., to the Motion of Energy Future Holdings Corp., et al. to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement filed at docket number 6641 (the "**Settlement Agreement Objection**"); and (v) the "Direction to Trustee" dated October 27, 2015 and delivered by the undersigned to the Trustee (the "**October 27 Direction**"). Capitalized terms used but not defined herein shall have the meanings provided in the Plan, the Plan Support Agreement, or the Indenture, as applicable. This letter (the "**Direction Letter**") supersedes in its entirety the October 27 Direction.

  Further reference is made to (i) Section 6.01 of the Indenture, which provides that the commencement of the Bankruptcy Cases constitutes an Event of Default thereunder, (ii) Section 6.03 of the Indenture, which provides that, if an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or the Indenture and (iii) Section 6.05 of the Indenture, which

provides that the Required Holders (as defined in the Indenture) of at least a majority in aggregate principal amount of Notes may direct the time, method and place by which the Trustee pursues any remedies available to the Trustee or of exercising any trust or power conferred on the Trustee.

Each of the undersigned parties (each, a "**Holder**" and collectively, the "**Holders**") hereby represents and warrants that it is the beneficial owner of the aggregate principal amount of Notes set forth opposite such Holder's name on its signature page hereto (the "**Represented Holdings**") and agrees to provide the Trustee with verification of such Holders' aggregate principal amount of Notes by medallion stamp or such other means acceptable to the Trustee by a date no later than November 16, 2015 (the "**Holdings Verification**"). As of the date hereof, such Holders, collectively, hold a majority of the aggregate principal amount of the Notes presently outstanding (after deducting the aggregate principal amount of the Notes, if any, owned by the Issuer or any Affiliate of the Issuer pursuant to Section 2.09 of the Indenture) and, accordingly, such Notes constitute the "Required Debt" under the Indenture and such Holders constitute the "Required Holders" under the Indenture for the purposes hereunder.

The Holders hereby notify the Trustee and the Issuers and hereby direct that the Trustee shall, immediately and only upon receipt of (i) this direction by a majority in aggregate principal amount of the outstanding Notes and (ii) entry of an order of the Bankruptcy Court, not subject to any stay, consistent with the form attached hereto as Exhibit [2], and notwithstanding any prior direction by the Holders or any other holders of the Notes to the contrary, (x) dismiss, without prejudice, the Plan Objection and the Settlement Agreement Objection (collectively, the "**Objections**"); *provided, however*, upon receipt of the Holdings Verification from each Holder, the Trustee shall dismiss, with prejudice, the Objections, (y) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, confirmation, approval, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, and (z) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims. Notwithstanding anything to the contrary herein or in the October 27 Direction, and for the avoidance of doubt, the Trustee may participate as a nominal party to any appeal of the Bankruptcy Court's rulings dated October 30, 2015 [D.I. 6781, 6782] solely for the purpose of preserving appellate jurisdiction, with such costs to be borne solely by the Non-Settling EFIH PIK Noteholders; provided, however, that all other rights of all parties with respect to any such litigation or appeals are reserved. For the avoidance of any doubt, if the Holdings Verifications are not received by November 16, 2015, the Trustee will no longer be bound by the directions set forth in clauses (y)-(z) above.

Each Holder hereby directs, consents to and shall not oppose (i) the Trustee's receipt of distributions under the Plan and the use of such distributions to pay for the Trustee's fees, costs and expenses as contemplated under Sections 6.12, 6.13 and 7.07 of

the Indenture (the "**Charging Lien**") and (ii) the Trustee's establishment of one or more reserves in an aggregate amount not to exceed $10 million (to be determined by the Trustee in the exercise of its reasonable discretion) (the "**Reserve**") to secure, in part, the Holders' accrued and contingent Indemnification Obligations (defined below) hereunder, to be funded by the exercise of the Charging Lien against distributions to the Holders on a pro rata basis; *provided that* the Trustee agrees not to apply the Charging Lien to any undersigned Holder's aggregate principal amount of Notes for any fees, costs and expenses incurred in connection with litigation relating to pursuing allowance, liquidation, or payment of postpetition interest, Makewhole Claims or Subsequent PIK Claim Objections (as defined below) that arise after the date on which the *Order Approving Settlement of Certain EFIH PIK Noteholder Claims and Authorizing Debtors to Enter Into and Perform Under Stipulation* is entered by the Bankruptcy Court, unless the Plan is not consummated. For the avoidance of doubt, nothing herein shall be construed as limiting the Trustee's rights under Sections 6.12, 6.13 and 7.07 of the Indenture, other than as expressly set forth in the preceding proviso, including the payment of any fees, costs and expenses of the Trustee incurred in connection with seeking allowance or payment of postpetition interest claims or Makewhole Claims prior to the aforementioned date. The Reserve shall remain in place for a period of 3 years following the later of (a) the effective date of the Direction Letter and (b) entry of a final order from the Bankruptcy Court approving the Stipulation (the "**Expiration Date**"); *provided, however*, that if, at the time of the Expiration Date, there is pending or threatened litigation for which the Indemnified Parties are entitled to indemnification pursuant to the terms hereto, the Reserve shall remain in place until such litigation is no longer pending or, with respect to threatened litigation, any time limitation with respect to initiating such litigation has expired; *provided further, however*, that if, prior to the Expiration Date, any and all pending litigation for which the Indemnified Parties are entitled to indemnification pursuant to the terms herein is dismissed or withdrawn and there is no threatened litigation, the Trustee agrees to release the Reserve. Upon the Expiration Date or other applicable expiration or release of the Reserve as referenced above, the Trustee shall promptly distribute to such Holders their pro rata share (defined below) of any funds remaining in the Reserve.

By execution of this letter, each Holder hereby agrees to (i) indemnify and hold harmless the Trustee and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "**Indemnified Parties**"), from and against any and all losses, claims, damages or liabilities (or actions in respect thereof) (collectively, the "**Losses**"), severally on a pro rata basis based on the Holders' pro rata share, arising out of or related to the actions taken pursuant to and to implement the directions in this letter (including but not limited to (a) the Trustee's withdrawal with prejudice of the Plan Objection and the Settlement Agreement Objection, (b) the Trustee refraining from directly or indirectly, or encouraging any other entity to directly or indirectly, objecting to, delaying, impeding, or taking any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the

EFIH PIK Note Claims Settlement, and (c) the Trustee refraining from supporting and not pursuing with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims), and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action), arising out of or related to this letter (collectively, the "**Indemnification Obligations**"). For purposes hereunder, the term "**pro rata share**" means a fraction, the numerator of which shall be the principal balance of such Holder's aggregate holdings of the Notes as of the date of any such determination; and the denominator of which shall be the total principal balance of all Holders' aggregate holdings of the Notes as of such date. The foregoing indemnity is in all events secondary to any funds held by the Trustee on account of principal or interest owed to the Holders (other than the Reserve) that are available to pay or satisfy the Losses. For the avoidance of doubt, the Trustee is not required to apply the Reserve funds to satisfy the Indemnification Obligations prior to seeking reimbursement and/or payment from the Holders for any Losses. The Indemnification Obligations of each Holder shall survive (i) the revocation or termination of this Direction Letter and (ii) irrespective of whether (a) such Holder withdraws from the Stipulation, (b) the Stipulation is terminated or (c) the Plan is not consummated.

Promptly upon receipt by an Indemnified Party of notice of any demand, claim, or commencement or threatened commencement of any action, suit, proceeding, or investigation which might constitute a Loss for which indemnity is given hereunder, the Trustee shall notify the Holders, via overnight courier or equivalent service, and shall provide to the Holders copies of all documents received by the Trustee in connection therewith. Upon such notice, in addition to the Indemnified Party's right to defend itself, the Holders may defend against the asserted Losses by counsel of the Trustee's choosing who is reasonably acceptable to the affected Indemnified Party and a majority in principal amount of the Holders.

Nothing herein shall in any way affect, limit, or impair the rights of the Trustee under the Indenture, the Notes or any related documents. If the indemnity set forth herein shall, in the reasonable opinion of the Trustee, become insufficient or impaired, the Trustee shall have the right to request additional indemnities or to cease (or not commence) to do the acts indemnified against until such insufficiency or impairment is cured.

Each Holder agrees that, for so long as this letter remains in full force and effect it may not, at any time, sell, transfer, assign or otherwise dispose some or all of its Notes, or any option thereon or any right or interest (voting or otherwise) in any of the Notes (each a "Transfer") and any such Transfer shall be void *ab initio* and of no force and effect unless and until such transferee, assignee or buyer agrees in writing at the time of such Transfer to be bound by this letter in its entirety without revision with respect to all such

transferred Notes (and any and all obligations associated therewith, including, but not limited to, the indemnification) and executes and delivers a joinder in the form of Exhibit C hereto to the Trustee. Notwithstanding anything to the contrary herein, a Holder may Transfer its Notes to or in connection with any repurchase transaction, reverse repurchase transaction, or any swap or other derivative transaction without satisfying the requirements set forth in this paragraph only if, in connection with such Transfer, the Holder (or a wholly-owned subsidiary controlled by it) retains the contractual right to exercise any voting right or other direction that may be made on account of such Notes, and such Holder exercises (or causes its wholly-owned subsidiary controlled by it to exercise) such rights so that the transferee thereof does not otherwise take any action inconsistent with such Holder's obligations under this Direction Letter.

Each Holder hereby represents and warrants that (x) this letter has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity; and (y) it has independently reviewed this letter and not relied on any information from the Trustee.

Each Holder further hereby represents, warrants and certifies that, as of the date hereof, such Holder (i) either (A) is the beneficial owner of, or (B) has investment or voting discretion (with the power and authority to bind the beneficial owner(s)) with respect to, the principal amount of Notes set forth below its signature hereto, and (ii) has full power and authority to act on behalf of, vote, direct the Trustee as to, and consent to matters concerning, such Notes.

Each Holder (i) acknowledges and consents to the Trustee's release of any of its current advisors to represent Non-Settling EFIH PIK Noteholders and (ii) agrees that it will not direct Trustee to stand down on any future objections to the Non-Settling EFIH PIK Noteholders' claims brought by the Debtors or other parties in interest (the "**Subsequent PIK Claim Objections**").

This letter shall be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof that would require application of the laws of another jurisdiction.

No alteration, amendment or modification of this letter shall be effective or binding upon any party unless in writing and duly executed by Holders constituting the "Required Holders" under the Indenture. This letter (including the indemnity set forth herein) and any direction made pursuant hereto shall be binding upon any successor or assign of the Holders.

This letter may be executed by each Holder in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single instrument.

IN WITNESS WHEREOF, each of the undersigned Holders has caused this letter to be executed and delivered as of the date first above written.

[HOLDER]

By: _____
Name:
Title:

Aggregate principal amount of Notes held:
$_____

**[Medallion Stamp]**

**[Insert Holder Contact Information]**

# EXHIBIT 1

[Plan Support Agreement]