EXHIBIT A

DEFINITIONS AND INSTRUCTIONS

Unless otherwise indicated, the use of the name or identity of any person, business organization, or other entity shall specifically include all past and present employees, officers, directors, partners, agents, representatives, and attorneys of that person, organization, or entity, its affiliates, and its predecessors and successors in interest.

All definitions and rules of construction contained in the Federal Rules of Civil Procedure and the Federal Rules of Evidence are incorporated herein by reference, and are given their broadest meaning.

Unless otherwise set forth herein, all capitalized but undefined terms shall have the meaning ascribed to such terms in the Debtors' Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 6122], as it may be amended, modified or supplemented (the "Plan").

A. The term "Document" is used in its broadest sense and shall mean and include, but without limitation, each original, and if the original is not available, each duplicate of any material from which information can be read, obtained, translated or deciphered, whether typed, handwritten, printed or otherwise, or any photograph, photostat, microfilm or other reproduction thereof, including without limitation, letters, memoranda, handwritten notes, ledgers, journals, business or financial records of any kind, personal diaries, calendars, travel records, telephone logs, telephone bills for long distance calls, photographs, reports, diagrams, illustrations, or any other tangible repositories of information, including that stored in a computer or similar device and/or preserved on backup tapes or other archival media, e-mail, voice mail, magnetically and optically recorded documents, archival copies of magnetically or optically recorded documents,

documents that have been logically deleted but not physically erased, actual media (whether magnetic, optical, or other) that have been used to record or store data.  This includes data and media stored and maintained by responding party and by employees and agents or responding party (*e.g.*, on personal computers and email accounts). This also includes each document which is in whole or in part a duplicate or copy of another document, but which is not in every respect identical to the original from which it was copied or duplicated shall be a separate original document, regardless of the nature of the difference (*i.e.*, whether the difference is because the duplicate identifies margin notes, comments or deletions not appearing on the original).

      B.  The terms "Person and "Individual" mean any natural person or persons.

      C.  "2009 Prospectus" shall mean the Prospectus filed pursuant to Rule 424(b)(3), dated November 10, 2009, by EFH Corp., EFIH, and EFIH Finance Inc. for an Offer to Exchange certain Outstanding Notes for up to $1.35 Billion of 9.75% Senior Secured Notes due 2019 of Energy Future Holdings Corp. and up to $1.65 Billion of 9.75% Senior Secured Notes due 2019 of Energy Future Intermediate Holding Company LLC and EFIH Finance Inc.

      D.  "2012 Exchange" shall mean the private debt transaction on or about December 5, 2012, whereby certain funds and accounts managed by institutional investors tendered EFH Legacy Series R Notes and EFH Legacy Series Q Notes in exchange for a new 11.25%/12.25% Senior PIK Toggle Notes Due 2018 issued by EFIH, as further described in EFH Corp.'s Form 8-k filed December 5, 2012.

      E.  "Communication" shall mean every manner or means of disclosure, transfer, or exchange of information, including, but not limited to, any of the following:  (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone

call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

F. "Condition Precedent #9" shall mean the condition precedent to the Effective Date of the Plan that the EFH Indenture Trustee's Makewhole Claims be "Disallowed Makewhole Claims" provided in the Plan at Art. IX.B.9.

G. "EFH Indenture 2012 Supplement" shall mean the EFH Legacy Series Q First Supplemental Indenture, EFH Legacy Series R First Supplemental Indenture or any other supplement delivered in 2012 to any EFH Legacy Note Indenture.

H. "EFH Note Indentures" shall mean the EFH Legacy Note Indentures, the EFH LBO Note Indentures, the EFH 2019 Note Indenture and the EFH 2020 Note Indenture.

I. "Person" or "persons" shall mean all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

J. "Reinstatement" shall mean the potential reinstatement of, and assumption by Reorganized TCEH, of the EFH Legacy Series Q Notes and the EFH Legacy Series R Notes.

K. "Trust Indenture Act" means the Trust Indenture Act of 1939 (15 U.S.C. §§ 77aaa-77aaaa).

L. "You" or "your" shall refer to any person to whom these requests have been addressed and all of their current and former affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on the Person's behalf for any purpose whatsoever.

M. The terms "relating to" and "concerning" each mean, in addition to their usual and customary meanings, concerning, relating to, discussing, mentioning, evidencing, embodying, constituting, effecting, referring to, assessing, recording, analyzing, describing, evaluating, memorializing, about, regarding, touching upon, listing, or reflecting the matter specified in the request.

N. The use of the singular form of any word includes the plural and vice versa.

## DEPOSITION TOPICS

### A. The EFH Indenture Trust 2012 Supplements

TOPIC NO. 1:

All reasons that EFH Corp. sought approval of the EFH Indenture 2012 Supplements.

TOPIC NO. 2:

All reasons why the approval of the EFH Indenture 2012 Supplements was sought in connection with the 2012 Exchange.

TOPIC NO. 3:

All reasons that EFH Corp. or any other Debtor sought any amendment to or inclusion of provisions in any EFH Note Indenture, during the period January 1, 2008 to the present to permit EFH Corp. to transfer any assets, including without limitation any amendments or provisions seeking to (i) allow for any "Permitted Asset Transfer" or to include the concept of a "TCEH Transfer" as defined in such EFH Note Indenture or any supplement indenture thereto and (ii) remove or delete any provision or language regarding EFH Corp.'s covenants, defaults, or events of default in any EFH Note Indenture.

TOPIC NO. 4:

The proposed amendments to the EFH Legacy Note Indentures (including without limitation addition of provisions regarding "TCEH Transfer" and "Permitted Asset Transfer", and elimination of covenants and certain provisions regarding defaults) as described in the November 10, 2009 Prospectus, including the reasons for the proposed amendments, any analysis regarding the proposed amendments, and the outcome of the solicitation for consents described in the 2009 Prospectus.

TOPIC NO. 5:

All facts that the Debtors will rely on to establish the enforceability of any EFH Indenture 2012 Supplement including, without limitation, withstanding any challenge that approval of any EFH Indenture 2012 Supplement required unanimous consent under the Trust Indenture Act.

TOPIC NO. 6:

Any analysis or review of the requisite holder consent necessary to amend the EFH Legacy Note Indentures in the manner set forth in the EFH Indenture 2012 Supplement, including through the 2012 Exchange.

TOPIC NO. 7:

The terms of the EFH Indenture 2012 Supplement, including the Debtors' reasons for seeking to amend the EFH Legacy Note Indentures in 2012.

TOPIC NO. 8:

The process undertaken by the Debtors to obtain approval of the EFH Indenture 2012 Supplement, including any communications with holders of EFH Legacy Notes or their agents in advance of soliciting their consent or in connection with the 2012 Exchange.

TOPIC NO. 9:

The preparation, negotiation, execution or distribution of the EFH Indenture 2012 Supplement, including, without limitation, any ballot or other requests for approval or consent delivered in connection with any such EFH Indenture Supplement, the identity of all those whose consent was sought, the identity of those who consented, the identity of those who refused to consent and any communications regarding their reasons for refusing to consent, and for each of the foregoing the amount of debt that they held.

TOPIC NO. 10:

Any proposal to modify any EFH Note Indenture after January 1, 2008, including without limitation the EFH Legacy Note Indenture, in connection with any potential: (i) "Permitted Asset Transfer" or a "TCEH Transfer" as defined in such EFH Note Indenture or any supplement indenture thereto and (ii) removal or deletion any provision or language regarding EFH Corp.'s covenants, defaults, or events of default in any EFH Note Indenture.

TOPIC NO. 11:

Any communications with holders of EFH Legacy Notes, ratings agencies, or media outlets concerning the EFH Indenture 2012 Supplement and/or the exchange offer solicited in connection with the EFH Indenture 2012 Supplement.

TOPIC NO. 12:

The searches undertaken and other steps taken to locate documents responsive to EFH Committee's Second Discovery Requests to Debtors as to requests for documents numbered 38-41.

### B. Reinstatement of the Legacy Series Notes

TOPIC NO. 13:

The anticipated corporate and capital structure of Reorganized TCEH, including the ownership interests and governance rights of any direct and indirect equity holders,

TOPIC NO. 14:

The sequence of each transaction contemplated under the Plan in connection with the separation of the Debtors and the contemplated Reinstatement, including without limitation each step described in the Debtors' submissions to the Internal Revenue Service.

TOPIC NO. 15:

Why, and which of, the restructuring transactions contemplated by the Plan constitute a "TCEH Transfer" as defined in the EFH Indenture 2012 Supplements.

TOPIC NO. 16

The ability of Reorganized TCEH to satisfy its obligations under the EFH Legacy Series Q Notes and the EFH Legacy Series R Notes if they become obligations with Reorganized TCEH pursuant to the Plan.

TOPIC NO. 17:

The impact on the capital structure of Reorganized TCEH after the contemplated Reinstatement, including, *e.g.*, compliance with covenants pertaining to leverage or total funded indebtedness in any existing or future credit facilities, and options for future refinancings.

TOPIC NO. 18:

Any analysis or estimate of projected impact on the feasibility of the Plan resulting from the potential Reinstatement.

TOPIC NO. 19:

Any analysis or discussion of the potential Reinstatement provided to the board of directors (or managers, as applicable) of EFH Corp., TCEH, or Reorganized TCEH.

TOPIC NO. 20:

Any approval by the board of directors (or managers, as applicable) of EFH Corp., TCEH, or Reorganized TCEH of the provisions in the Plan providing for the potential Reinstatement.

TOPIC NO. 21:

How the Debtors and any other party whose consent is required will determine whether to reinstate, or to permit the Reinstatement.

TOPIC NO. 22:

The terms of any agreements between and among the Debtors (including, Reorganized EFH, New EFH, and OV2) and the holders of any TCEH First Lien Claim to facilitate the potential Reinstatement.

TOPIC NO. 23:

The terms of any agreements between and among any parties to facilitate the potential Reinstatement.

TOPIC NO. 24:

The content of submissions made by the Debtors to the Internal Revenue Service regarding the transactions contemplated under the Plan and whether any such submissions contained information describing in detail the potential Reinstatement and the potentially applicable requirements contained on the reverse side of each of the EFH Legacy Series Q Notes and the EFH Legacy Series R Notes attached hereto as Exhibit B and Exhibit C, respectively.

TOPIC NO. 25:

4846-6476-8809.10

The content of submissions made by the Debtors to the Texas PUCT regarding the transactions contemplated under the Plan and whether any such submissions contained information describing in detail the potential Reinstatement and the potentially applicable requirements contained on the reverse side of each of the EFH Legacy Series Q Notes and the EFH Legacy Series R Notes attached hereto as Exhibit B and Exhibit C, respectively.

TOPIC NO. 26:

Whether, in connection with reinstatement, EFH Corp., New EFH, OV2 or any other entity will execute a guarantee as provided for on the reverse side of each of the EFH Legacy Series Q Notes and the EFH Legacy Series R Notes, and if not, the reasons that they do not believe that they are obligated to execute such a guarantee.

TOPIC NO. 27:

The Debtors' post-confirmation planning and projections for Reorganized TCEH for potential volatility in energy and fuel markets, including, but not limited to, the Reorganized TCEH's capacity and plans to manage such risks through the use of hedging transactions and other derivative products.

TOPIC NO. 28:

The Debtors' post-confirmation planning and projections for managing potential volatility in interest rates, including, but not limited to, the use of hedging transactions and other derivative products.

TOPIC NO. 29:

All communications related to any potential waiver of Condition Precedent # 9.

| | |
|---|---|
| Dated: Wilmington, DE<br>November 10, 2015 | **CROSS & SIMON, LLC**<br><br>By: /s/ *Christopher P. Simon*<br>Christopher P. Simon (Del. Bar No. 3697)<br>1105 North Market Street, Suite 901<br>Wilmington, Delaware 19801<br>Telephone: (302) 777-4200<br>Facsimile: (302) 777-4224<br>csimon@crosslaw.com<br><br>- and –<br><br>**NIXON PEABODY LLP**<br>Amanda D. Darwin<br>Richard C. Pedone<br>Erik Schneider<br>100 Summer Street<br>Boston, Massachusetts 02110<br>Telephone: (617) 345-1000<br>Facsimile: (617) 345-1300<br>adarwin@nixonpeabody.com<br>rpedone@nixonpeabody.com<br><br>-and-<br><br>Christopher J. Fong<br>437 Madison Avenue<br>New York, NY 10022<br>Telephone: 212-940-3724<br>Facsimile: 855-900-8613<br>cfong@nixonpeabody.com<br><br>*Co-Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee* |

12