**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | Objection Deadline: December 7, 2015 at 4:00 p.m. |

**SUMMARY COVER SHEET TO THE FOURTH INTERIM FEE APPLICATION
OF THOMPSON & KNIGHT LLP, SPECIAL TAX COUNSEL
FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE
PERIOD FROM MAY 1 THROUGH AND INCLUDING AUGUST 31, 2015**

In accordance with the Local Bankruptcy Rules for the United States Bankruptcy Court District of Delaware (the "Local Bankruptcy Rules"), Thompson & Knight LLP ("T&K"), attorneys for the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Fee Application")[2] for the period from May 1 to August 31, 2015 (the "Fee Period").

T&K submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "Interim Compensation Order")[3] and the *Stipulation and Order Appointing a Fee Committee* (the "Fee Committee Order").[4]

### General Information

| | |
|---|---|
| Name of Applicant: | Thompson & Knight LLP |
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2]   Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

[3]   Dkt. No. 2066.

[4]   Dkt. No. 1896.

| | |
|---|---|
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain T&K [D.I. 2061]: | September 16, 2014, *nunc pro tunc* to April 29, 2014 |

### Summary of Fees and Expenses Sought in the Fee Application

| | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | May 1, 2015 through August 31, 2015 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: | n/a |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $780,000.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $776.99 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $780,777.49 |

### Rate Increases Applicable to the Fee Period

| | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $720,543.00 |

### Summary of Past Requests for Compensation and Prior Payments

| | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $2,260,812.65[5] |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $20,126.17[6] |

---

[5]    This amount includes the fees requested by T&K in the (i) First Interim Fee Application [D.I. 2789] ($575,740.50), (ii) the Second Interim Fee Application [D.I. 3849] ($489,517.00), (iii) the Third Interim Fee Application [D.I. 5188] ($571,554.75) and (iv) 80% of the fees incurred and requested in the Monthly Fee Statements for May 2015 [D.I. 5097] ($137,076.00), June 2015 [D.I. 5271] ($123,735.20), July 2015 [D.I. 5818] ($186,445.60) and August 2015 [D.I. 6672] ($176,743.60).

[6]    This amount includes the expenses requested by T&K in the (i) First Interim Fee Application [D.I. 2789] ($8,518.75), (ii) the Second Interim Fee Application [D.I. 3849] ($1,639.59), (iii) the Third Interim Fee Application [D.I. 5188] ($9,190.84)  and (iv) 100% of the expenses incurred and requested in the Monthly Fee

| | |
|---|---|
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $2,034,725.67[7] |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $18,712.91[8] |
| Total Allowed Compensation Paid to Date: | $1,872,850.72 |
| Total Allowed Expenses Paid to Date: | $18,258.67 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $633,702.40 |
| Expenses Sought In This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $475.99 |

---

Statements for May 2015 [D.I. 5097] ($298.65), June 2015 [D.I. 5271] ($93.24), July 2015 [D.I. 5818] ($84.10) and August 2015 [D.I. 6672] ($301.00).

[7] This amount includes the fees requested by T&K in the (i) First Interim Fee Application ($575,740.50) [D.I. 2789], which amount was approved on December 29, 2014 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses* [D.I. 3148] (the "First Interim Order"), less the $696.50 reduction in fees requested by the Fee Committee; (ii) Second Interim Fee Application ($489,517.00) [D.I. 3849], which amount was approved on June 24, 2015 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses During the First and Second Interim Fee Periods* [D.I. 4843] (the "Second Interim Order"), less the $39,234.13 reduction in fees requested by the Fee Committee; and (iii) Third Interim Fee Application ($571,554.75) [D.I. 5188], which amount was approved on October 26, 2015 by the *Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses During the Second and Third Interim Fee Periods* [D.I. 6667] (the "Third Interim Order"), less the $9,412.75 reduction in fees requested by the Fee Committee and (iv) 80% of the fees incurred and requested in the Monthly Fee Statements for May 2015 ($137,076.00) [D.I. 5097], June 2015 ($123,735.20) [D.I. 5271], July 2015 ($186,445.60) [D.I. 5818]. No objections were filed against Monthly Fee Statements for January 2015, February 2015, March 2015, April 2015, May 2015, June 2015, or July 2015. Accordingly, Richard, Layton & Finger, P.A. filed Certificates of No Objection confirming same. *See* D.I. 5509, 5847, or 6214.

[8] This amount includes all expenses requested by T&K in the (i) First Interim Fee Application ($8,518.75) [D.I. 2789], which amount was approved by the First Interim Order, less the $167.92 reduction in expenses requested by the Fee Committee; (ii) Second Interim Fee Application ($1,639.59) [D.I. 3849], less the $725.45 reduction in expenses requested by the Fee Committee; (iii) Third Interim Fee Application ($9,190.84) [D.I. 5188], which amount was approved by the Third Interim Order, less the $218.89 reduction in expenses requested by the Fee Committee; and (iv) 100% of the expenses incurred and requested in the Monthly Fee Statements for May 2015 ($298.65) [D.I. 5097], June 2015 ($93.24) [D.I. 5271] and July 2015 ($84.10) [D.I. 5818].

Dallas, Texas
DATED: November 12, 2015.

/s/ Mary A. McNulty

Mary A. McNulty
Thompson & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:    (214) 969-1700
Facsimile:    (214) 969-1751
Email: mary.mcnulty@tklaw.com

*Special Tax Counsel to the Debtors
and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) Objection Deadline: December 7, 2015 at 4:00 p.m. |

**FOURTH INTERIM FEE APPLICATION OF THOMPSON & KNIGHT LLP,**
**SPECIAL TAX COUNSEL FOR THE DEBTORS AND DEBTORS- IN-POSSESSION,**
**FOR THE PERIOD FROM MAY 1 THROUGH AND INCLUDING AUGUST 31, 2015**

Thompson & Knight LLP ("T&K"), special tax counsel for debtors and debtors-in-possession (collectively, the "Debtors"), submits its fourth interim fee application (this "Fee Application") for allowance of compensation for professional services provided in the amount of $780,000.50 and reimbursement of actual and necessary expenses in the amount of $776.99 that T&K incurred for the period from May 1 through and including August 31, 2015 (the "Fee Period"). In support of this Fee Application, T&K submits the declaration of Mary McNulty, a partner at T&K, (the "McNulty Declaration"), which is attached as **Exhibit A** and incorporated by reference.

**Jurisdiction**

1.    The United States Bankruptcy Court for the District of Delaware (this "Court") has subject matter jurisdiction over this Fee Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

3.      The bases for the relief requested herein are Sections 330 and 331 of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2016-1 and Rule 2016-2 of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* (the "Interim Compensation Order")[2] and the *Stipulation and Order Appointing a Fee Committee* (the "Fee Committee Order").[3]

## Background

4.      On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. On June 5, 2014, the Court entered an order[4] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases (these "Chapter 11 Cases" or this "Case") pursuant to Bankruptcy Rule 1015(b). No entity has requested the appointment of a trustee or examiner in these Cases. On May 13, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to Section 1102 of the Bankruptcy Code (the "Committee").[5]

5.      A description of the Debtors' businesses, the reasons for commencing these Cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First*

---

[2]    Dkt. No. 2066.

[3]    Dkt. No. 1896.

[4]    Dkt. No. 849.

[5]    Dkt. No. 420.

*Day Motions*, filed on April 29, 2014[6] and incorporated herein by reference.

6.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals employed in these cases.

7.      Given the size and complexity of these Chapter 11 Cases, the U.S. Trustee, the Debtors, and the Committee agreed to recommend that the Court appoint a fee committee to review and report, as appropriate, on interim and final fee applications filed by all of the Debtors' retained professionals in accordance with 11 U.S.C. §§ 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, this Court entered the Fee Committee Order, appointing the Fee Committee and establishing procedures governing the Fee Committee's review of the Debtors' retained professionals' applications for compensation and the resolution of any concerns raised during such review.  On October 3, 2014, the Fee Committee distributed to those professionals retained in these Chapter 11 Cases an initial memorandum regarding guidelines for expense reimbursements, and on October 7, 2014, December 1, 2014, February 18, 2015, March 9, 2015, and June 9, 2015 the Fee Committee distributed additional memorandums regarding the fee review process (together, the "Fee Committee Guidelines").  T&K believes that the relief requested herein complies with the Fee Committee Guidelines.

### Preliminary Statement

8.      During the Fee Period, T&K represented the Debtors professionally and diligently, advising them on a variety of complex tax matters and issues, as a result of which the Debtors took action to maximize the value of their estates for the benefit of all parties-in-interest.

---

[6]    Dkt. No. 98

9.      Specifically, T&K rendered services to the Debtors as requested and appropriate in furtherance of the Debtor's restructuring efforts.   T&K was instrumental in working with the Internal Revenue Service (the "IRS") to finalize the settlement of Debtors' 2003-2006 tax years. As a result of TK's efforts, the IRS filed proofs of claim for Debtors' 2003-2006 tax years equal to approximately $244 million based on the settlements reached with IRS Appeals, rather than the multi-billion adjustments proposed by the IRS audit team.   By resolving the numerous tax adjustments before the bar date, T&K removed a potential obstacle to the speedy confirmation of Debtors' plan of reorganization.   T&K continued to work with the IRS and finalized the 2003-2006 settlement in August and began working with the IRS on the related interest computations. Additionally, T&K has played a key role in developing a structure and seeking a private letter ruling from the IRS that would allow the Debtors to reorganize under Chapter 11 in a tax efficient manner with a partial basis step-up rather than in a fully taxable transaction that could trigger a $7 billion tax liability and cause the Debtors to liquidate under Chapter 7.   T&K has also played a key role in evaluating the structures and tax consequences of potential bids for Debtors' interest in Oncor and the conversion of Oncor to a real estate investment trust ("REIT").

### Retention of T&K

10.      On May 29, 2014, the Debtors filed their *Application for Order Authorizing Employment of Thompson & Knight* (the "TK Employment Application").   On September 16, 2014, this Court entered the *Order Authorizing the Debtors to Retain and Employ Thompson & Knight LLP as Special Tax Counsel for Certain Tax-Related Matters, Effective Nunc Pro Tunc to the Petition Date* (the "TK Retention Order"),[7] attached as **Exhibit B** and incorporated by

---

[7]   Dkt. No. 2061

reference.  The TK Retention Order authorizes the Debtors to compensate and reimburse T&K in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order.  The TK Retention Order also authorizes the Debtors to compensate T&K at T&K's hourly rates charged for services of this type and to reimburse T&K for T&K's actual and necessary out-of-pocket expenses incurred, subject to Court approval.  The particular terms of T&K's engagement are detailed in the engagement letters by and between T&K and the Debtors and attached as **Exhibit C** (the "TK Engagement Letters").

11.    The TK Retention Order authorizes T&K to provide the legal services and advice in connection with various tax issues relating to (a) the Debtors' debt restructuring, (b) IRS tax controversies, (c) Texas tax issues, and (d) other tax matters as needed throughout the Debtors' chapter 11 cases (collectively, the "Tax Issues").

12.    To comply with the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Fee Guidelines") promulgated by the Office of the United States Trustee, T&K submitted to the Debtors budget and staffing plans for the Fee Period, attached as **Exhibit D**.[8]

### Disinterestedness of T&K

13.    To the best of the Debtors' knowledge and as disclosed in the *Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective* Nunc Pro Tunc *to the Petition*

---

[8]    Based on communications with the Debtors, TK did not submit monthly budgets for September 2014 and October 2014 *ex ante*. Rather, the attached budgets for September and October were prepared subsequently.

*Date* (the "Original T&K Declaration"),[9] the *Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective* Nunc Pro Tunc *to the Petition Date* (the "Supplemental TK Declaration"),[10] and the *Second Supplemental Declaration of Mary McNulty in Support of the Application of Energy Future Holdings, et al., for Entry of an Order Authorizing Energy Future Holdings Corp. to Retain and Employ Thompson & Knight LLP as Special Counsel for Certain Tax-Related Matters Effective* Nunc Pro Tunc *to the Petition Date* (the "Second Supplemental TK Declaration")[11] (a) T&K is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as required by Section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates; and (b) T&K has no connection to the Debtors, their creditors, or other parties-in-interest, except as may be disclosed in the T&K Declaration and the Supplemental TK Declaration.[12]

14.     T&K may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors in these Chapter 11 Cases.  In the Original T&K Declaration, the Supplemental TK Declaration, and the Second Supplemental Declaration (collectively, the "T&K Declarations"), T&K disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts.  T&K will continue to update the T&K Declarations, as appropriate, if T&K

---

[9]     Dkt. No. 653-3

[10]    Dkt. No. 2044

[11]    Dkt. No. 3459

[12]    Although T&K has been retained by the Debtors as special counsel pursuant to Section 327(e) of the Bankruptcy Code and is therefore not subject to the same disinterestedness standard as professionals retained pursuant to Section 327(a), to the best of T&K's knowledge, T&K satisfies the Section 327(a) disinterestedness standard.

becomes aware of relevant and material new information.

15.     T&K performed the services for which it is seeking compensation on behalf of the Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

## Payments During Fee Period

16.     Except to the extent previously disclosed, T&K has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these Chapter 11 Cases.

17.     Pursuant to Bankruptcy Rule 2016(b), T&K has not shared, nor has T&K agreed to share (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of T&K or (b) any compensation another person or party has received or may receive.

## Summary of Compliance with Interim Compensation Order

18.     This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

19.     T&K seeks interim compensation for professional services rendered to the Debtors during the Fee Period in the amount of  $780,000.50 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $776.99.  During the Fee Period, T&K attorneys and paraprofessionals expended a total of 1,330.70 hours for which compensation is requested. The following table reflects the outstanding fees and expenses for the Fee Period:

| MONTH | FEES | EXPENSES | PAYMENTS | OUTSTANDING BALANCE |
|---|---|---|---|---|
| May 205 | $171,345.00 | $298.65 | $137,374.65 | $34,269.00 |
| June 2015 | $154,669.00 | $93.24 | $123,828.44 | $30,933.80 |
| July 2015 | $233,057.00 | $84.10 | $186,529.70 | $46,611.40 |
| August 2015 | $220,929.50 | $301.00 | $0.00 | $221,230.50 |
| TOTALS | $780,000.50 | $776.99 | $447,732.79 | $333,044.70 |

| FEES AND EXPENSES – INTERIM FEE PERIOD | | | |
|---|---|---|---|
| MATTER | FEES | EXPENSES | TOTAL |
| 2003-2006 Tax Years | $21,321.00 | $0.00 | $21,321.00 |
| Document Retention | $880.00 | $0.00 | $880.00 |
| Debt Restructuring Advice | $757,799.50 | $776.99 | $758,576.49 |
| TOTAL | $780,000.50 | $776.99 | $780,777.49 |

20.    To date, T&K has received $447,732.79  under the Interim Compensation Order or the Fee Committee Order for the Fourth Interim Period.  T&K has submitted a consolidated monthly fee statement for May, June, July and August seeking payment of (a) 80% of the fees incurred by the Debtors for reasonable and necessary professional services provided by T&K; and (b) 100% of the actual and necessary costs and expenses incurred by T&K in connection with the services provided to the Debtors.

21.    Accordingly, by this Fee Application, and to the extent not already paid by the time of the hearing on this Fee Application, T&K seeks payment of all amounts, including the remaining $156,000.10,[13] which represents the 20% holdback on fees incurred during the Fee Period.

---

[13]    The 20% holdback on fees for May through August 2015 is calculated as follows:
        Total Fees $780,000.50 – 80% of Total Fees $624,000.40 = $156,000.10

### Fees and Expenses Incurred During Fee Period

**A.    Customary Billing Disclosures.**

22.    T&K's hourly rates are set at a level designed to compensate T&K fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  The hourly rates and corresponding rate structure utilized by T&K in these Chapter 11 Cases are equivalent to or less than the hourly rates and corresponding rate structure used by T&K for other tax matters, whether in court or otherwise, regardless of whether a fee application is required.  Other than as herein provided, no other agreements, promises, caps or limitations exist.  Time entries are in one-tenth increments.  The time entries do not involve value billing for a particular project, service, or a set fee for a particular task.  For the convenience of the Court and all parties-in-interest, attached as **Exhibit E** is a summary of fees, including the number of hours, hourly rates, and total value of services expended by partners, associates, and paraprofessionals performing services as special counsel to the Debtors during the Fee Period.  Also attached as **Exhibit J** is a summary of the blended hourly rate for all T&K domestic timekeepers (including partners, associates, and paraprofessionals) who billed to non-bankruptcy matters during the 12-month period beginning on September 1, 2014 and ending on August 31, 2015.

**B.    Fees Incurred During Fee Period.**

23.    In the ordinary course of T&K's practice, T&K maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties-in-interest, attached as **Exhibit E** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

> (a)    the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

     (b)     each attorney's year of bar admission and area of practice concentration;

     (c)     the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

     (d)     the hourly billing rate for each attorney and each paraprofessional at T&K's current billing rates;

     (e)     the hourly billing rate for each attorney and each paraprofessional as disclosed in the second interim application;

     (f)     the number of rate increases since the inception of the case; and

     (g)     a calculation of total compensation requested using the rates disclosed in the second interim application.

**C.**     **Expenses Incurred During Fee Period**.

24.     In the ordinary course of T&K's practice, T&K maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.    T&K currently charges $0.10 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, T&K charged no more than $0.10 per page for standard black and white and $0.50 per page for standard color duplication services in these chapter 11 cases.  T&K does not charge its clients for incoming facsimile transmissions.

25.     For the convenience of the Court and all parties-in-interest, attached as **Exhibit F** is a summary of the total amount of reimbursement sought with respect to each category of expenses for which T&K is seeking reimbursement during the Fee Period.

**Summary of Legal Services Rendered During the Fee Period**

26.     As discussed above, during the Fee Period, T&K provided extensive and important tax and other legal services to the Debtors in connection with these Chapter 11 Cases. The fees and expenses requested in this Application reflect T&K's extensive time and effort expended in addressing issues related to corporate tax, the resolution of Debtors' 2003-2006

federal income tax years, document retention, and debt restructuring tax issues.

27.    To provide a meaningful summary of T&K's services provided on behalf of the Debtors and their estates, T&K has established, in accordance with its internal billing procedures, certain subject matters categories (each, a "Matter Category") in connection with these chapter 11 cases.  The following is a summary of the fees and hours billed for each Matter Category in the Fee Period and a summary of the most significant professional services provided by T&K during the Fee Period.[14]  This summary is organized in accordance with T&K's internal system of matter numbers.   The detailed descriptions demonstrate that T&K was heavily involved in performing services for the Debtors.  A schedule setting forth a description of the Matter Categories utilized in this case, the number of hours expended by T&K partners, associates and paraprofessionals by matter, and the aggregate fees and expenses associated with each matter is attached as **Exhibit G**.  Additionally, T&K's detailed invoices reflecting the time providing professional services to the Debtors and their estates are attached as **Exhibit H**, and T&K's records of expenses incurred during the Fee Period in the rendition of professional services to the Debtors and their estates are attached as **Exhibit I**.

28.    This Matter Category includes time spent by T&K attorneys providing services to finalize the settlement of Debtors' 2003-2006 federal income tax years, including:

(a)    discussing the status of closing the case and review by the Joint Committee of Taxation;

(b)    responding to questions from the Appeals Team Case Leader regarding tax computations, the carryback from 2007, and closing documents;

(c)    analyzing the procedures to close the case, including reviewing final closing documents, terminating the indefinite statute of limitations, and obtaining the approval of the bankruptcy court;

---

[14]    In certain instances T&K may have billed the same amount of fees, but different amount of hours to different matter categories.  This difference is the result of different staffing of each such matter category.

(d)        updating the Appeals Team Case Leader and IRS management about developments in the Debtors' bankruptcy case; and

(e)        preparing interest netting requests and interest computations.

As a result of TK's efforts, the IRS filed proofs of claim for Debtors' 2003-2006 tax years equal to approximately $244 million based on the settlements reached with IRS Appeals, rather than the multi-billion adjustments proposed by the IRS audit team.  By resolving the numerous tax adjustments before the deadline for proofs of claim (the "Bar Date"), T&K removed a potential obstacle to the speedy confirmation of Debtors' plan of reorganization.  T&K finalized the 2003-2006 settlement with the IRS in August and began working with the IRS on the related interest computations.

### 2003-2006 Tax Years [Task Code B240]

Total Fees:    $21,321.00
Total Hours:  27

29.    This Matter Category includes time spent by T&K attorneys and paraprofessionals providing services related to document retention procedures, including analyzing applicable document retention requirements under federal and Texas law for different categories of records and advising regarding appropriate retention periods.

### Document Retention [Task Code B210]

Total Fees:    $880.00
Total Hours:  3.2

30.    This Matter Category includes time spent by T&K attorneys and paraprofessionals providing services related to the Debtors' debt restructuring, including case administration, fee and employment applications, and tax issues, as more fully detailed and itemized below.

### Debt Restructuring Advice [Task Codes B160, B161, B162, and B240]

Total Fees:    $757,799.50
Total Hours:  1,300.5

31.    A portion of the services rendered during the Fee Period in this Matter Category

includes time spent in connection with T&K's retention.

### (a)    Employment Applications [Task Code B160]

Total Fees:    $6,290.00
Total Hours:  21.2

During the Fee Period, T&K attorneys and paraprofessionals cleared additional conflicts and

prepared updated professional disclosures for filing with the Court.    Each of T&K's

professionals and paraprofessionals performing services in this task-code category was keenly

aware of the importance of performing such service in the most efficient manner to minimize

expenses to the Debtors' estates.

32.    A portion of the services rendered during the Fee Period in this Matter Category

related to the drafting and negotiating of the monthly budget and staffing plans.    Specifically,

T&K attorneys and paraprofessionals spent time: discussing four budget and staffing plans with

the Debtors; drafting four proposed budget and staffing plans; and reviewing and revising the

proposed budget and staffing plans with other T&K professionals and the Debtors.

### (b)    Budget and Staffing Plans [Task Code B161]

Total Fees:    $5,892.50
Total Hours:  8.8

33.    A portion of the services rendered during the Fee Period in this Matter Category

related to the drafting of the monthly and interim Fee Applications.

(c)    **Fee Applications [Task Code B162]**

Total Fees:    $21,595.50
Total Hours:    66.8

Specifically, T&K attorneys and paraprofessionals spent time:

    i.     preparing and distributing T&K's monthly fee statements and interim fee applications in accordance with the Interim Compensation Order;

    ii.     reviewing all time entries to ensure compliance with the Interim Compensation Order and applicable provisions of the Bankruptcy Code, and to make necessary redactions to preserve the confidentiality of the work performed for the Debtors; and

    iii.     preparing fee reconciliation schedules.

34.    Most of the services rendered during the Fee Period in this Matter Category related to related to Tax Issues associated with the Debtors' restructuring.

(d)    **Tax Issues [Task Code B240]**

Total Fees:    $724,021.50
Total Hours:    1,203.7

T&K has played a key role in developing a structure and seeking a private letter ruling from the IRS that would allow the Debtors to reorganize under Chapter 11 in a tax efficient manner with a partial basis step-up rather than in a fully taxable transaction that could trigger a $7 billion tax liability and cause the Debtors to liquidate under Chapter 7. Additionally, T&K has played a key role in evaluating the structures and tax consequences of potential bids for Debtors' interest in Oncor and the conversion of Oncor to a REIT. Specifically, T&K attorneys spent time:

    i.     analyzing the federal and state tax issues associated with various restructuring proposals and evaluating the impact on the pending IRS ruling request;

    ii.     reviewing and commenting on term sheets, bids, transaction documents (including the Tax Matters Agreement), tax due diligence, press releases, Forms 8-K, and board slides regarding various restructuring proposals;

    iii.     participating in periodic restructuring update calls;

iv.    responding to questions from the IRS Chief Counsel's Office on the private letter ruling request, preparing additional submissions regarding the impact of other restructuring and bid proposals on the ruling request, and preparing a supplemental ruling request on the REIT structure;

v.    analyzing the impact of the IRS 10-year limitations period for collections on the fraudulent transfer lookback period;

vi.    advising on the tax sharing agreement and disclosures of IRS settlements in court-filed documents;

vii.    reviewing and commenting on the IRS revenue agent's report, closing documents, and interest computations for the 2008-2009 income tax years and on the related filings with the bankruptcy court;

viii.    reviewing and commenting on tax portions of Disclosure Statement and Restructuring Support Agreement;

ix.    analyzing federal and state tax issues relating to legal entity structure simplification and preparing related slides;

x.    advising regarding amended Texas franchise tax returns following closing of IRS audits, including reporting position for mark to market turn gain; and

xi.    advising regarding issues relating to 2014 federal income tax return and prompt determination request.

T&K's national reputation, prior success in obtaining a private letter ruling in 2013 that certain restructuring by Debtors' would not trigger a potential multi-billion tax liability, and long-standing relationships with the IRS National Office and Chief Counsel's Office have been key in facilitating discussions with the IRS regarding Debtors' potential $7 billion tax liability and its efforts to obtain assurance from the IRS that its restructuring proposals will not trigger such liability.

## **Actual and Necessary Expenses Incurred by T&K**

35.    As set forth in **Exhibit I** and as summarized in **Exhibit F**, T&K has incurred a total of $776.99 in expenses on the Debtors' behalf during the Fee Period.  These charges are intended to reimburse T&K's direct operating costs, which are not incorporated into the T&K

hourly billing rates.  T&K charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit I** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

**TK's Requested Compensation and Reimbursement Should be Allowed**

36.    As explained below, T&K respectfully submits that the services for which it seeks compensation in this Fee Application were, at the time provided, necessary for and beneficial to the Debtors and their estates and were provided to protect and preserve the Debtors' estates. T&K believes that it performed the services for the Debtors economically, effectively, and efficiently, and the results obtained benefited not only the Debtors, but also the Debtor's estates and constituents.  T&K further submits the requested compensation is reasonable in light of the nature, extent, and value of the services to the Debtors, their estates, and all parties-in-interest. Accordingly, T&K respectfully submits that approval of the requested compensation is warranted and should be approved.

**A.    Reasonable and Necessary Fees Incurred in Providing Services to the Debtors**

37.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.  Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, extent, and the value of such services, taking into account all relevant factors, including—
>
> (a) the time spent on such services;
>
> (b) the rates charged for such services;
>
> (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> (e) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

38.     As analyzed below, T&K submits that the elements governing awards of compensation justify the allowance requested.

### a. The Time and Labor Required

39.     During the Fee Period, 1,330.7 recorded hours have been expended by T&K's partners, associates, and paraprofessionals in providing the requested professionals services. T&K has made every effort to coordinate its efforts with those of the Debtors' bankruptcy counsel so as to avoid any duplication of efforts. The number of hours spent by T&K is commensurate with the defined tasks T&K has performed and continues to perform on the matters described herein.

### b. The Rates Charged for Such Services

40.     During the Fee Period, T&K's hourly billing rates for attorneys ranged from $330 to $995. The hourly rates and corresponding rate structure utilized by T&K in these Chapter 11 Cases are equivalent to the hourly rates and corresponding rate structure used by T&K for

restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex corporate, securities, and litigation matters, whether in court or otherwise, regardless of whether a fee application is required. T&K strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

41.     Moreover, T&K's hourly rates are set at a level designed to compensate T&K fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

### c.  The Necessity of the Services and the Benefit of the Estate

42.     As detailed above, the services T&K provided to the Debtors have conferred substantial benefit on the Debtors' estates. T&K services to the Debtors have also served the desired goal of allowing for continuity of service in these non-bankruptcy matters. In providing these essential non-bankruptcy services, T&K has allowed the Debtors' bankruptcy counsel to focus on issues more closely related to the reorganization of the Debtors' estates.

### d.  The Complexity, Importance Nature of, and the Time Spent on Tasks

43.     T&K represents and can demonstrate to the this Court that the services were performed in a reasonable amount of time, given the complexity of issues involved and the many and varied legal issues facing the Debtors. T&K's detailed and thorough time records demonstrate that the time expended on various tasks was necessary and appropriate to the vigorous representation of the Debtors. From the earliest stages of T&K's involvement, attempts

were made to limit the hours worked and to avoid duplication of effort and other unnecessary costs.  On occasion, T&K attorneys provided services on the Debtors' behalf under severe time constraints.  Moreover, during the Fee Period, T&K attorneys were required to perform services for the Debtors to the preclusion of other firm matters and clients.

### e. The Experience, Reputation and Ability of the Attorneys Providing Services

44.    T&K's services have been provided in a highly efficient manner by attorneys who have achieved a high degree of expertise in the tax field.  The attorneys in T&K's tax department frequently receive recognition for their skills and achievements.  T&K's highly professional and expert group of attorneys has ensured that the representation of the Debtors has progressed in an efficient and expeditious manner.

45.    Additionally, due to the fact and circumstances of these Chapter 11 Cases, attorneys and paraprofessionals from T&K's Restructuring Group were involved in T&K's representation of the Debtors.  T&K has a prominent practice in this area and enjoys a national and international reputation for its expertise.  Overall, T&K brings to these Chapter 11 Cases a particularly high level of skill and knowledge, which inured benefit to the Debtors and their estates.

### f. Customary Compensation

46.    T&K relies on this Court's experience and knowledge with respect to the compensation awards in similar cases.  Given that frame of reference, T&K submits that, in light of the circumstances of this Case and the substantial benefit derived from T&K's assistance, the requested compensation is fair and reasonable.

47.    Based on the Section 330 and 331 factors, the results that T&K has achieved to date more than justify the allowance in full of T&K's compensation and reimbursement request.

**B.      Reasonable and Necessary Expenses Incurred in Providing Services to the Debtors.**

48.      T&K requests reimbursement of $776.99 for reasonable and necessary out-of-pocket expenses incurred on the Debtors' behalf during the Fee Period, as itemized on **Exhibit F** and **Exhibit I.**

49.      T&K's normal billing rates do not take expenses into consideration.  Rather, T&K bills each expense to the client.  T&K does not include the amortization of the costs of any investment, equipment, or capital outlay in the charges for its services.

50.      Any services billed by a third-party vendor, with the exception of certain computerized research charges, are charged to the Debtors in the precise amount billed to and paid by the T&K.  Like many large firms, T&K has negotiated a special arrangement with computerized research companies under which T&K pays a flat rate monthly fee for computerized research services.  Consistent with its general policy of billing out-of-pocket expenses to clients for which the use of such services is required, T&K separately charges each client for computerized research.  To account for such charges while passing through T&K's cost savings resulting from its special arrangements, T&K charges those clients for whom such services are required at a reduced rate that is less than the rate charged by the computerized research companies to the general public for such services.  These charges are intended to cover T&K's direct costs for computerized research.

51.      T&K has made reasonable efforts to minimize its disbursements in these Chapter 11 Cases.  Each of the expenses incurred by T&K in providing professional services to the Debtor was necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors and their estates.

**Conclusion**

52.      In sum, T&K respectfully submits that the professional services provided by T&K on the Debtors' behalf and their estates during these Chapter 11 Cases were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by T&K, the nature and extent of T&K's services provided, the value of T&K's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.   Accordingly, T&K respectfully submits that approval of the compensation sought herein is warranted and should be approved.

**Reservation of Rights and Notice**

53.      Some professional time expended or expenses incurred during the Fee Period may not be reflected in this Fee Application.   T&K reserves the right to include such amounts in future fee applications.   Additionally, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Committee; (e) the Fee Committee (collectively, the "Notice Parties").

54.      Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on T&K and the Notice Parties so that it is **actually received** on or before **December 3, 2015 at 4:00 p.m. (prevailing Eastern Time)** and (b) any member of the Fee Committee that wishes to object to the Fee Application must comply with the procedures set forth in the Fee Committee Order  and if such member wishes to object to the Fee Application after complying with such procedures, such member must file its objection with this Court, with a copy to Chambers and serve it on T&K and the Notice Parties.

## No Prior Request

55.     No previous application for the relief sought herein has been made to this or any

other Court.

## Prayer

**WHEREFORE**, T&K respectfully requests that the Court enter an order (a) awarding

T&K interim compensation for professional and paraprofessional services provided during the

Fee Period in the amount of $780,000.50, and reimbursement of actual, reasonable and necessary

expenses incurred in the Fee Period in the amount of $776.99, in the total amount of

$780,777.49; (b) authorizing and directing the Debtors to remit payment to T&K for such fees

and expenses; and (c) granting such other relief as this Court may deem proper, both at law and

in equity.

DATED:  November 12, 2015.

Respectfully submitted,

THOMPSON & KNIGHT LLP

By:    _/s/ Mary A. McNulty_
Mary A. McNulty
Texas Bar No. 13839680
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone:  214/969-1700
Facsimile: 214/969-1751
Mary.McNulty@tklaw.com