# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS | : | Case No. 14-10979 (CSS) |
| CORP., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | **Hearing Date: November 19, 2015 at 10:00 a.m.** |
| | : | **Objections Due: November 18, 2015 by 12:00 p.m.** |

### UNITED STATES TRUSTEE'S OBJECTION TO THE SETTLEMENT BETWEEN THE DEBTORS AND FIDELITY MANAGEMENT & RESEARCH COMPANY (D.I. 6976, 6989)

Andrew R. Vara, the Acting United States Trustee for Region 3 (the "U.S. Trustee"), hereby objects to the Settlement between the Debtors and Fidelity Management & Research Company (the "Fidelity Settlement") (D.I. 6976, 6989).[1]

### PRELIMINARY STATEMENT

The U.S. Trustee has a pending objection to the payment of approximately $49.75 million to several non-estate retained professionals under the Plan and the Settlement Agreement. For similar reasons, the U.S. Trustee objects to the November 12, 2015 settlement between and among the Debtor Parties[2] and Fidelity Management & Research Company which requires EFH to pay Fidelity's unpaid fees and expenses up to $12 million on the Plan's Effective Date, as well

---

[1] Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the referenced or cited document or pleading.

[2] The "Debtor Parties" under the Fidelity Settlement and attendant Stipulation are Energy Future Holdings Corp., Energy Future Intermediate Holdings Company, LLC and EFIH Finance, Inc.

as to pay the unpaid fees and expenses of the EFH Notes Trustee[3] under the Amended & Restated Plan Support Agreement.

For the reasons set forth below, the Court should not approve the portions of the Fidelity Settlement dealing with the payment of professional fees and expenses until the Court considers the Plan and Settlement Agreement's related issues.

## JURISDICTION

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the "U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this objection.

## FACTUAL BACKGROUND

4. On April 29, 2014, the Debtors commenced these Chapter 11 cases.

5. On August 10, 2015, the Debtors filed the Motion to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement

---

[3] Under the Amended & Restated Plan Support Agreement, American Stock Transfer & Trust Company, LLC is the EFH Notes Trustee.

2

Agreement (D.I. 5249). Thereafter, on September 17, 2015, the Debtors filed a Revised Settlement Agreement (D.I. 6085) (the "Settlement Agreement"). On September 21, 2015, the Debtors filed the current Plan (the "Plan"). (D.I. 6122).

6. On October 27, 2015, the U.S. Trustee filed his objection to both the Plan and the Settlement Agreement (the "U.S. Trustee Objection") (D.I. 6705),[4] including an objection to the payment of certain fees and expenses under Article IV, Section R of the Plan and Section 2.7(a) of the Settlement Agreement. *See* U.S. Trustee Objection at ¶¶ 30-36.

7. On November 12, 2015, the Debtors filed the Notice of the Fidelity Settlement which filing included a Stipulation (the "Fidelity Stipulation") and an Amended & Restated Plan Support Agreement ("Amended PSA") (D.I. 6976). On the same date, the Debtors filed a revised Notice of Settlement attaching a revised version of the proposed order approving the Fidelity Settlement. (D.I. 6989).

8. Paragraph 2.4 of the Fidelity Stipulation provides that as part of the Fidelity Settlement, EFH shall pay on the Effective Date of the Plan all reasonable and documented unpaid fees and expenses incurred by Fidelity in connection with these Chapter 11 Cases in an amount not to exceed $12 million. Fidelity Stipulation at ¶ 2.4.

9. In addition, the Fidelity Settlement includes the Amended PSA which now provides, that in the event that the EFH Notes Trustee becomes a Party to the Amended PSA, on the Effective Date, EFH shall pay the reasonable and documented out-of-pocket fees, expenses and reimbursements of the EFH Notes Trustee. *See* Amended & Restated Plan Support Agreement at Section 10(v).

---

[4] To the extent applicable, the U.S. Trustee adopts, incorporates and sets forth herein his Objection to the Plan and Settlement Agreement (D.I. 6705).

3

**LAW AND ANALYSIS**

A.  **The Stipulation and Amended PSA Provide for the Payment of Non-Estate Retained Professionals without Adequate Disclosure or Legal Justification**

10. As set forth in the U.S. Trustee's Objection, both Article IV, Section R of the Plan and Section 2.7(a) of the Settlement Agreement obligate the Debtors to pay an undisclosed amount of fees, "[w]ithout further notice to or action, order, or approval of the Bankruptcy Court," to undisclosed professionals retained by multiple parties in connection with the bankruptcy cases. *See* U.S. Trustee Objection at ¶¶ 30-36.

11. Likewise, Section 2.4 of the Fidelity Stipulation provides for EFH to pay Fidelity's fees and expenses while Section 10(v) of the Amended PSA requires that EFH pay the fees and expenses of the EFH Notes Trustee when the EFH Notes Trustee signs-on to the Amended PSA.

12. Once again, the Debtors fail to provide sufficient information to allow anyone, including the U.S. Trustee, the Court, or other interested parties, to evaluate the propriety of these payments now seemingly authorized and agreed-to under the Fidelity Stipulation and Amended PSA. These payment provisions seek to evade the procedural and substantive requirements imposed by the Bankruptcy Code and lack sufficient information and disclosure.

13. In particular, it appears that the proposed payments to Fidelity and the EFH Notes Trustee, and presumably their undisclosed third-party professionals, relate to fee payments to professionals whose compensation is specifically governed by sections 503(b)(3)(D) and (4) of the Bankruptcy Code, which includes the professionals of indenture trustees and individual creditors. *See* 11 U.S.C. § 503(b)(3)(D).

14. Section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court that any compensation paid to an attorney or accountant is "reasonable." *See* 11 U.S.C. § 503(b)(4). Moreover, a party's right to payment under section 503(b) is not automatic but "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir.1999). As was stated by the U.S. Trustee previously with respect to the Plan and Settlement Agreement, it is also unclear here whether the payment provisions of the Fidelity Settlement will limit payment to professionals who can and will satisfy section 503(b). The Fidelity Settlement does not provide parties-in-interest with any effective opportunity to review or contest whether those requirements have been met.

15. The fact that these payments of professional fees are proposed as part of a settlement agreement (and presumably the Plan[5]) does not relieve the third-party professionals of their obligation to comply with the requirements of section 503, which is the "sole source" of authority to pay post-petition professional fees on an administrative basis. *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014). In *Lehman*, the court roundly rejected an attempt by certain committee members to circumvent

---

[5] The payments to both Fidelity and the EFH Notes Trustee under the Fidelity Settlement both reference the Effective Date of the Plan, so it appears that these provisions of the Fidelity Settlement dovetail with and are dependent upon confirmation of the Plan (D.I. 6122). Moreover, to the extent that such payments are somehow tied-into the Plan, as was stated in the U.S. Trustee Objection, even apart from section 503(b), these payments cannot be approved because they would also violate section 1129(a)(4) of the Code. *See* U.S. Trustee Objection at ¶ 35.

section 503(b)(4) by seeking payment under a "permissive" plan provision which purported to pay third-party professional fees without regard to whether they could be authorized under section 503. As the court explained, plans pay only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments [of] professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and expenses . . . Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief," since it would allow plan proponents to distribute the estate's assets without regard to the Bankruptcy Code's priority scheme. *Id.*

16. The *Lehman* court's reasoning applies with equal force here. Like the fees at issue in *Lehman*, the third-party professional fees "are either administrative expenses or not." *Id.* Because the third-party professionals seek to enjoy the benefits of administrative priority under section 503—the sole possible source of statutory authorization permitting them to be paid by the Debtors in full on the Effective Date—they must also comply with the disclosure obligations and substantive limitations imposed by that section.[6]

---

[6] Even if the third-party fee provisions of the Fidelity Settlement were considered in isolation from the Plan, the result would be no different. Nothing in Bankruptcy Rule 9019 authorizes courts to create categories of administrative expenses not subject to section 503, and section 105(a) cannot be used to override the prohibitions of another section of the Code. *See In re Combustion Engineering, Inc.,* 391 F.3d 190, 236 (3rd Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself"); *see also Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citations omitted).

B.     **The Fidelity Stipulation and Amended PSA Should Not be Heard Separately from the U.S. Trustee's Objection to the Payment of Certain Fees and Expenses Under the Plan and the Settlement Agreement**

17.     The Fidelity Stipulation and Amended PSA pose objectionable legal issues identical to those that the U.S. Trustee has raised in the Plan and related documents. For the sake of judicial economy and to avoid prejudice to all parties in interest on those issues, the Court should postpone hearing and ruling on the Fidelity Settlement until it has considered the U.S. Trustee's objection to confirmation.

18.     Because of the similarity of the issues involved, there is a chance that ruling on the Fidelity Settlement prior to the confirmation hearing will have preclusive effects that prevent a full record from being developed on the confirmation issues. Critically, the determination by the Court on the ability to pay one party's fees and expenses in a manner that the U.S. Trustee asserts contravenes the Code, could necessarily decide the common issues of law arising under the Plan and Settlement Agreement. *See In re Continental Airlines, Inc.*, 279 F.3d 226, 332 (3d Cir. 2002) (defining claim and issue preclusion).

19.     The doctrines may be implicated here as they were in *Continental*, because the Court will be asked to rule on "an issue that was unambiguously identified, properly presented and ably and vigorously argued by extremely able counsel of all parties." *Id.* at 233.

20.     The Court and parties in interest, as well as judicial economy, may be best served by hearing these related issues contemporaneously at the confirmation hearing, rather than taking on the issues in a piecemeal fashion. Hearing both issues simultaneously will preserve all parties' rights, rather than creating a situation where one side is able to use the doctrines of claim and issue preclusion as a sword based on a ruling on the Fidelity Settlement.

**CONCLUSION**

21.     Accordingly, the U.S. Trustee submits that the Court should consider the Fidelity Settlement contemporaneously with confirmation of the Plan and approval of the other settlement agreements, at which time the Court should deny the payment of certain fees and expenses for the reasons set forth above.[7]

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order denying approval of the Stipulation, the Fidelity Settlement consistent with this objection, or deferring consideration of the Stipulation and Fidelity Settlement at this time and granting such other relief as this Court deems appropriate, fair and just.

Dated:  November 17, 2015
           Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

By:  */s/ Richard L. Schepacarter*
        Richard L. Schepacarter
        Timothy J. Fox
        Trial Attorneys
        United States Department of Justice
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 King Street, Room 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491
        (302) 573-6497 (Fax)

---

[7] The U.S. Trustee leaves the Debtors to their burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery and cross-examine any and all witnesses in support of the requested relief