## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| ENERGY FUTURE | ) Bankruptcy Case No. 14-10979 (CSS) |
| HOLDINGS CORP., *et al.*, | ) |
| | ) (Jointly Administered) |
| *Debtors.* | ) |
| | ) |
| COMPUTERSHARE TRUST COMPANY, | ) |
| N.A. and COMPUTERSHARE TRUST | ) |
| COMPANY OF CANADA, as INDENTURE | ) |
| TRUSTEE, | ) |
| | ) |
| *Appellant*, | ) |
| | ) Adversary Proceeding |
| v. | ) No. 14-50405 (CSS) |
| | ) |
| ENERGY FUTURE INTERMEDIATE | ) |
| HOLDING COMPANY LLC and EFIH | ) |
| FINANCE INC., | ) |
| | ) |
| *Appellees.* | ) |

## REQUEST FOR CERTIFICATION OF DIRECT APPEAL TO
## THE COURT OF APPEALS UNDER 28 U.S.C. § 158(d)(2)

Appellant Computershare Trust Company, N.A. and Computershare Trust Company of Canada, as indenture trustee (the "**Second Lien Trustee**", and the holders thereof, the "**Second Lien Noteholders**") for the second lien notes (the "**Second Lien Notes**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (together, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011 (together with all supplements, amendments, and exhibits, the "**Second Lien Indenture**") request certification for direct appeal to the Third Circuit Court of Appeals from the following Orders of the Bankruptcy Court (attached as **Exhibits A-C**):

- Order Denying Motion of Second Lien Indenture Trustee for Limited Relief from the Automatic Stay, dated October 20, 2015 [No. 14-10979, D.I. 6531]

- Amended Memorandum Opinion, dated October 29, 2015 [No. 14-10979, D.I. 6752; No. 14-50405, D.I. 64]

- Corrected Order, dated October 29, 2015 [No. 14-10979, D.I. 6753; No. 14-50405, D.I. 65]

## PRELIMINARY STATEMENT

These appeals arise out of the Chapter 11 cases of Energy Future Holdings Corp. ("**EFH**") and its subsidiaries (including EFIH, the "**Debtors**"), among the largest bankruptcy proceedings in history.   Despite a proposed reorganization plan that contemplates payment, in full in cash, of all allowed claims against the Debtors, the Bankruptcy Court's Orders have denied the Second Lien Noteholders their claim to a "make-whole" payment on account of the early redemption of their notes to which they would otherwise be entitled under their contract and applicable state law.

The appeal of those orders presents a classic situation warranting certification for direct appeal to the Third Circuit. The enforceability of make-wholes in bankruptcy is a commonly presented and hotly contested issue that would benefit from appellate guidance.  This case is

  
inevitably headed to the Third Circuit in any event.  Waylaying it for months in the District Court would merely postpone authoritative review, expending additional judicial resources and saddling the estate with months of needless delay (and both sides' attorneys fees).  This seemed sufficiently obvious that we expected to obtain the Debtors to consent to certification and avoid this equally needless motion practice.  The Debtors have declined to do so.

Multiple issues will be presented for appellate review.  In parallel proceedings involving the make-whole claims of the First and Second Lien Noteholders, the Bankruptcy Court held that, under the Indentures, the Chapter 11 filing accelerated the maturity of the Notes, eliminating the make-whole.  While recognizing that the Noteholders had the contractual right to rescind acceleration, the Court held that the automatic stay under 11 U.S.C. § 362 prevented the Noteholders from exercising that right and would eliminate the otherwise viable state law claim unless cause could be demonstrated to lift the stay *nunc pro tunc*.    Ultimately, the Court held that no cause existed, even though it presumed that the EFIH Debtors were solvent and able to pay all claims (including the make-wholes) in full.

This appeal presents each of the four circumstances in which certification is independently mandated under 28 U.S.C. § 158(d)(2):  *First*, the Orders involve questions of law – interpretation of statutory provisions governing the allowance of claims and the automatic stay, as well as contract interpretation of common indenture terms – on which there is no controlling decision.  *Second*, many of those questions have been addressed in conflicting, non-binding decisions.  *Third*, the Orders involve a matter of public importance because make-whole issues arise frequently in corporate reorganization cases and carry broad implications for the credit markets.  *Finally*, a direct appeal will expedite the final resolution of this bankruptcy case.  For each of these reasons, certification for direct appeal to the Third Circuit should be granted.

2

# BACKGROUND[1]

## I.    THE FIRST AND SECOND LIEN NOTES AND INDENTURES

On April 29, 2014, the Debtors filed Chapter 11 petitions.  Pursuant to the Second Lien Indenture, the Debtors issued $406,392,000 of 11% Second Lien Notes (the 2021 Notes) and $1.75 billion of 11.750% Second Lien Notes (the 2022 Notes).  *See* Ex. D, Second Lien Indenture.  These proceedings have also concerned the EFIH Debtors' First Lien debt, issued pursuant to the First Lien Indenture, which primarily consists of Notes earning interest at approximately 10% annually due in 2020.

The Second Lien Indenture (like the First Lien Indenture) provides that the EFIH Debtors may not redeem the Second Lien Notes prior to the stated maturity date except in certain circumstances specified in the Second Lien Indenture and unless the Debtors pay a premium to the holders.  Article 6 of the Second Lien Indenture governs events of default and acceleration of the Second Lien Notes.  It also provides holders with various remedies in the event of a default, including automatic acceleration of the Second Lien Notes if the Debtors default by filing for bankruptcy.  Section 6.01(a)(6) includes filing for bankruptcy as an event of default.  Section 6.02 provides that:

> In the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of **and premium, if any**,

---

[1] A certification request under 28 U.S.C. § 158(d)(2) must be filed in the court where the matter is pending, and only that court may certify a direct appeal.  *See* Fed. R. Bankr. P. 8006(d).  A matter is pending in the bankruptcy court for 30 days after the first notice of appeal is filed and in the district court thereafter.  *See* Fed. R. Bankr. P. 8006(b).  Because Appellant filed its Notices of Appeal on November 2, 2015, this request is filed in the Bankruptcy Court.  We recognize that the Bankruptcy Court is well-familiar with the facts and procedural history set forth herein, which is included in the event that the Bankruptcy Court does not rule on the motion before December 2, 2015, and jurisdiction accordingly passes to the District Court.

> interest (including Additional Interest, if any) **and any other monetary obligations** on the outstanding Notes shall be due and payable immediately without further action or notice.

Second Lien Indenture § 6.02 (emphasis added).  This provision expressly contemplates that the right to a make-whole premium may continue to exist even after an Event of Default caused by, among other things, a bankruptcy filing.  Section 6.02 also gives the Second Lien Noteholders the right to waive existing defaults and "rescind any acceleration with respect to the Notes and its consequences (so long as such rescission would not conflict with any judgment of a court of competent jurisdiction)."  Second Lien Indenture § 6.02.  The First Lien Indenture contains a similar provision.

Section 6.02 permits the Second Lien Noteholders to rescind the automatic acceleration of the Second Lien Notes.  In accordance with section 6.02, a majority of Second Lien Noteholders delivered a notice, effective October 6, 2014, to the Second Lien Trustee that rescinded any existing acceleration of the Second Lien Notes.  *See* Ex. E, Second Lien Noteholders' Notice of Rescission.  The notice expressly stated that in the event that the automatic stay was found to apply, deceleration was conditioned on the entry of an order lifting the stay.  *Id*.

## II.    THE FIRST LIEN MAKE-WHOLE PROCEEDINGS

On May 15, 2014, the First Lien Trustee filed an action (No. 14-50363, D.I. 1) for a declaratory judgment that the Debtors' refinancing of the Notes would require them to pay the make-whole or other damages.  The First Lien Trustee also moved for an order that noteholders could rescind acceleration without violating the automatic stay or seeking relief from the stay, and the Noteholders sent a notice of rescission, conditioned on relief from the stay (to the extent required).  The Bankruptcy Court bifurcated the litigation, saving solvency-related issues for

Phase Two if it determined in Phase One that the Noteholders were entitled to a "Redemption Claim" under applicable non-bankruptcy law. No. 14-50363, D.I. 128, at 2-3.

On March 26, 2015, the Court issued its Decision in the First Lien Notes adversary proceeding. Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment (No. 14-50363, D.I. 245) ("1L S.J. Findings"). The Court denied the First Lien Trustee's motion for summary judgment and granted in part and denied in part the Debtors' motion for summary judgment. *Id.* at 4. The Court found that the "plain language of the Indenture does not require payment of an Applicable Premium upon a repayment of the Notes, following an acceleration under section 6.02 of the Indenture" and that the "Debtors' filing of bankruptcy . . . was not an intentional default under the Indenture." *Id.* The Court further found that the First Lien Trustee's attempt to waive the default and decelerate the Notes was barred by the automatic stay, but that if the Court were to lift the automatic stay, *nunc pro tunc*, to a date on or before repayment of the notes, the EFIH Debtors' refinancing would be an Optional Redemption and the Applicable Premium would be due. *Id.* at 4-5. The Court held that a genuine disputed issue of material fact existed "as to whether the Trustee can establish cause to lift the automatic stay, *nunc pro tunc*." *Id.* at 5.

Following trial, the Bankruptcy Court held that cause did not exist to lift the stay. Findings of Fact and Conclusions of Law (No. 14-50363, D.I. 304) ("**1L Post-Trial Findings**"), at ¶ 13. Assessing the relevant factors of identifying and balancing hardships to the estate and parties and the probability of success, the Court held that (1) lifting the stay would harm EFIH and its estate because, even if it were solvent and able to pay the make-whole and all other creditors in full, paying the make-whole could reduce recoveries to the EFIH Debtors and their equity holder (*id.* at ¶ 52); (2) the harm to the Noteholders in maintaining the stay – loss of the

make-whole – did not outweigh the harm to EFIH's estate if the stay were lifted (*id.* at ¶¶ 58, 64, 70-72); and (3) the Trustee had demonstrated a likelihood of success on the merits because the make whole would be due if rescission were permitted (*id.* at ¶ 85).    Nevertheless, the Court concluded that cause did not exist to lift the stay.    *Id.* at ¶¶ 86-87.    Accordingly, the Court granted final judgment in favor of EFIH.

## III.    THE SECOND LIEN MAKE-WHOLE PROCEEDINGS

On June 16, 2014, the Second Lien Trustee initiated the instant adversary proceeding. *See* Complaint (No. 14-50405, D.I. 1).    On March 10, 2015, with Court approval, the EFIH Debtors repaid $445,454,162.31 of the outstanding Second Lien Notes.    Order (No. 14-10979, D.I. 3855).    On April 13, 2015, the Second Lien Trustee filed an Amended Complaint with twelve counts for damages and declaratory relief.    No. 14-50405, D.I. 37.    The Second Lien Trustee and the EFIH Debtors subsequently cross-moved for partial summary judgment.    *See* No. 14-50405, D.I. 42; No. 14-50405, D.I. 47.

In addition, the Second Lien Trustee moved to lift the automatic stay.    No. 14-10979, D.I. 5321.    The Second Lien Trustee acknowledged as law of the case the Court's findings to date with respect to the First Lien Trustee, while preserving its appeal rights as to those issues.    *Id.* at 2.    On October 20, 2015, the Bankruptcy Court denied the Second Lien Trustee's Motion for Limited Relief from the Automatic Stay.    *See* Order Denying Motion of Second Lien Indenture Trustee for Limited Relief from the Automatic Stay, No. 14-10979, D.I. 6531.    No opinion accompanied this order.

On October 29, 2015, following oral argument, the Bankruptcy Court issued a Corrected Order and Amended Memorandum Opinion denying the Second Lien Trustee's Motion for Partial Summary Judgment in its entirety and granting partial summary judgment for the EFIH

6

Debtors.    (Claims concerning fees, expenses, and interest on interest survived summary judgment.)  *See* Corrected Order (No. 14-10979, D.I. 6753; No. 14-50405, D.I. 65); Amended Memorandum Opinion (No. 14-10979, D.I. 6752; No. 14-50405, D.I. 64) ("**2L S.J. Opinion**"). With respect to issues relevant to both proceedings, the Court adopted and applied  its findings as to the First Lien Noteholders.  *Id.* at 18.  The Court reaffirmed its holding that "a lender is not entitled to prepayment consideration after a default unless the parties' agreement expressly requires it."  *Id.* at 8.

The Court also addressed and rejected the Second Lien Trustee's additional arguments based on language included in the Second Lien but not the First Lien Indenture ("and premium, if any," and "and any other monetary obligations").    Relying principally on *In re MPM Silicones, LLC*, 2014 WL 4436335 (Bankr. S.D.N.Y. 2014) ("*Momentive*"), the Court held that the "Second Lien Indenture does not provide specifically for a payment of a premium upon acceleration, nor does it refer back to specific sections of the Second Lien Indenture."  *Id.* at 10-14, 17.  The Second Lien Trustee has appealed these decisions and now moves to certify this case for direct appeal to the Third Circuit Court of Appeals.  *See* Notices of Appeal (No. 14-50405, D.I. 67; No. 14-10979, D.I. 6841; No. 14-10979, D.I. 6842).

## ARGUMENT

Section 158(d)(2) provides that an appeal must be certified for direct appeal to the court of appeals if the following criteria are met:

> (i)      the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
>
> (ii)      the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

(iii)   an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

28 U.S.C. §158(d)(2)(A). "If the bankruptcy court [or] the district court . . .  determines that a circumstance specified in clause (i), (ii), *or* (iii) . . . exists . . . then the . . . court . . . shall make the certification." *Id.* §158(d)(2)(B) (emphasis added). "Certification . . . is mandatory in the presence of any of the circumstances enumerated" in §158(d)(2)(B).  Certification of Amended Order For Direct Appeal, at 2, *In re Downey Fin. Corp.*, No. 10-53731, D.I. 177 (Bankr. D. Del. Jan. 13, 2014) (Sontchi, J.) (attached as <u>Exhibit F</u>) [hereinafter "***Downey* Certification**"].

Each of the criteria are satisfied here.  Recognizing this, courts have certified direct appeals in similar circumstances.  *See In re AMR Corp.*, 730 F.3d 88, 91, 97 (2d Cir. 2013) (accepting certification of Chapter 11 make-whole contract dispute given "the public importance of the matter and the lack of controlling . . . law in relation to questions it presents"); *Downey* Certification at 2 (certifying contract-interpretation question), *aff'd*, 593 F. App'x 123 (3d Cir. 2015) (accepting certification).

## IV.   The Orders Involve Questions Of Law As To Which There Is No Controlling Third Circuit or Supreme Court Precedent

### A.   There Is No Controlling Decision On Whether Refinancing Notes In Bankruptcy Triggers a Make-whole Under the Common Indenture Language At Issue

The Bankruptcy Court's decisions turn on questions of law regarding the interpretation of standard contract terms in bond indentures, including whether a provision requiring the obligor to pay a make-whole if it "redeems" the notes before a date certain is triggered when the obligor, in a bankruptcy, opts to refinance and pay off the notes before that date, or whether a separate provision automatically accelerating the maturity of the notes upon the bankruptcy filing eliminates the debtor's obligation to pay the make-whole even if followed by a voluntary

8

redemption.  *See* 2L S.J. Opinion, at 8-10.  In rejecting the Second Lien Trustee's claim for a make-whole, the Bankruptcy Court held that, following an automatic acceleration in bankruptcy, "New York law and precedent both require a provision providing for a make-whole payment be in express, specific language and that the phrase 'premium, if any' cannot be considered express and specific enough to meet this burden."  *Id.* at 8.

No controlling Third Circuit (or District of Delaware) decision mandated this outcome, and the Court cited none in its Opinion.  *See id.* at 11-17.  The general issue has been addressed only by a single New York trial court, addressing different contractual language, without any record of appellate review.  *Nw. Mut. Life Ins. Co. v. Uniondale Realty Associates*, 816 N.Y.S.2d 831, 833-38 (Sup. Ct. 2006) (holding that "[w]hen a clear and unambiguous clause which calls for payment of the prepayment premium or a sum equal thereto, at any time after default and acceleration is included in the loan agreement, such clause is analyzed as liquidated damages and is generally enforceable," but that the specific language at issue was not enforceable in that instance).  This issue has never been addressed by the New York Court of Appeals or the intermediate appellate courts in New York.  This case may well be appropriate for Third Circuit certification to the New York Court of Appeals.  *See, e.g.*, *In re Southeast Banking Corp.*, 179 F.3d 1307 (11th Cir. 1999) (certifying question to New York Court of Appeals regarding applicability of rule of explicitness to subordination agreements under New York law).

We respectfully submit that the New York Court of Appeals could very well reach a different result from that reached by the Bankruptcy Court.  Under the New York rule of explicitness, parties wishing to enter into contractual arrangements contrary to public policy must do so in the clearest possible terms.  *See In re Southeast Banking Corp.*, 710 N.E.2d 1083, 1086-88 (N.Y. 1999) (requiring "specific language in a subordination agreement to alert a junior

9

creditor to assumption of risk and burden of allowing the payment of a senior creditor's post-petition interest demand"). That reasoning does not support the Court's holding here, because there is no public policy against allowing make-wholes in bankruptcy. To the contrary, the New York rule of perfect tender supports a strong presumption in *favor* of the noteholders' right to receive their bargained-for stream of income over a fixed period of time, and holds that a borrower "has no right to pay off his obligation prior to its stated maturity date in the absence of a prepayment clause." *Matter of Arthur v. Burkich*, 131 A.D.2d 105, 106 (N.Y. App. Div. 1987); *In re Solutia Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007).[2]

Given the lack of controlling authority, the uncertainty in the law, and the critical importance of resolving these issues, this appeal should be certified to the Third Circuit to resolve the issue. *See Downey* Certification at 2 (certifying contract-interpretation question), *aff'd*, 593 F. App'x 123 (3d Cir. 2015); *AMR Corp.*, 730 F.3d 88 at 91, 97 (direct appeal of make-whole contract dispute).

**B.    There Is No Controlling Decision On Whether A Creditor's Contingent Claim Is Allowed Under Section 502(b)(1) Where The Automatic Stay Prohibits The Creditor From "Fixing" The Contingency**

The Bankruptcy Court also held that the Indenture would require payment of the make-whole if the Noteholders could exercise their right to rescind acceleration, but that the automatic stay prevented rescission and the Noteholders therefore had no claim for the make-whole.  1L

---

[2] Given the strong presumption under New York law that the EFIH Debtors remain obligated to perform to maturity or pay the specified make-whole premium provided for under the Second Lien Indenture, and given the Second Lien Trustee's right to have the terms of the Indenture performed in accordance with the rule of perfect tender in time, any proposed "rule" of explicitness in this setting should be the exact opposite of what the Debtors contend: it should require an explicit statement if the Debtors' obligation to pay a make-whole upon early redemption is intended to be permanently erased by automatic acceleration.

10

S.J. Findings, at ¶¶ 67, 69, 90, 92-93.  The Orders under appeal therefore involve a question of statutory interpretation: whether the automatic stay, even if it bars a creditor from rescinding acceleration, also denies the creditor its claim for the amount it would be owed under its contract if it were allowed to rescind.

The Bankruptcy Code provides that the court "shall allow" a claim "except to the extent that such claim is unenforceable . . . under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."  11 U.S.C. section 502(b)(1).  The Code defines a "claim" as any "right to payment, whether or not such right is ... contingent [or] unmatured."  11 U.S.C. § 101(5).  "A 'contingent' claim under the Code refers to obligations that will become due upon the happening of a future event[.]"  *Ogle v. Fidelity & Deposit Co.*, 586 F.3d 143, 146 (2d Cir. 2009).  Accordingly, while a creditor's "right to successfully collect [a claim] may be contingent" on the exercise of its state-law right, and the exercise of that right may be contingent on obtaining relief from the stay, "the contingent nature of the right to payment does not change the fact that the right to payment exists . . . and thereby constitutes a 'claim.'"  *In re Rodriguez*, 629 F.3d 136, 142 (3d Cir. 2010).

The Orders, therefore, present the legal question of whether a creditor's claim is "allowed" under § 502(b) where the claim would be enforceable under state law but for the fact that the creditor's right to payment is contingent on its exercising a right (here, rescinding acceleration) that is held to be stayed under §362.  A Third Circuit panel has answered that question contrary to the Bankruptcy Court's holding, albeit in an unpublished opinion.  *See In re Stephan*, 588 F. App'x 143 (3d Cir. 2014) (unpublished).  In *Stephan*, the Third Circuit rejected the argument that "by virtue of the automatic stay, [the creditor's] right to payment no longer exists."  *Id.* at 144.  There, as here, the creditor's state-law right to payment was contingent on its

11

exercising its state-law rights (to foreclose, which state law required before the creditor could recover its deficiency claim). And there, as the Bankruptcy Court held here, the automatic stay prevented the creditor from exercising those rights. The Third Circuit nonetheless affirmed allowance of the creditor's claim, explaining that the creditor had a "contingent right to payment." Because "the only reason [the claim] is unenforceable [under state law] is that it is 'contingent or unmatured,'" section 502 required that it be allowed. *Id.* at 143-44 (quoting §502(b)(1)). To hold otherwise, "would turn the automatic stay into a device that eliminates all contingent claims, a result that is in tension with the Bankruptcy Code's 'broadest available definition of claim.'" *Id.* (quoting *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)). While *Stephan* is designated as non-precedential, its existence demonstrates that there is a substantial legal issue presented here warranting review by the Court of Appeals. *See* Internal Operating Procedure 5.7 (3d Cir.).

### C.  There Is No Controlling Decision On The Relative Significance Of The Debtor's Solvency In Determining Whether Cause Exists To Lift The Automatic Stay

The Bankruptcy Court has determined that "cause" does not exist under 11 U.S.C. § 362(d) to grant the Noteholders relief from the stay to enforce their right to rescind acceleration because the harm to the Noteholders from maintaining the stay did not outweigh the harm to the Debtors and their estates from lifting the stay. Post-Trial Findings, at ¶¶ 58-77; 1L S.J. Findings, at ¶¶ 74-75. The Bankruptcy Court reached that decision even though it presumed that the Debtors were solvent, and therefore that lifting the stay would not reduce creditor recoveries but rather potentially affect only the Debtors' equity holder – which under the "absolute priority rule" would not be entitled to any payment under a plan of reorganization unless all creditors were paid in full. *See* 11 U.S.C. § 1129(b).

This appeal therefore presents a question of law regarding the significance of solvency in determining whether "cause" exists under the totality of the circumstances to lift the stay to permit a creditor to enforce a valid contract claim for what it is owed under state law, where lifting the stay will not reduce the recoveries of the debtor's other creditors.    Another Third Circuit non-precedential opinion has addressed this question, affirming an order lifting the stay where the debtor was solvent.  *In re Armstrong World Indus.*, No. 00-4471, Mem. Order at 2-3 (D. Del. Dec. 10, 2001) (attached as <u>Exhibit G</u>) (lifting stay to permit creditors to prosecute lawsuit against debtor and its insurers in another court based on findings that "[t]he Debtor is a solvent, going concern" and "there would be minimal, if any, impact on the Debtor's resources available to pay other pre and post petition claimants"), *aff'd*, 106 F. App'x 785 (3d Cir. 2004) (unpublished).

The Bankruptcy Court observed that no decision has held that a debtor's solvency alone is, as a matter of law, cause to lift the automatic stay.  *See* 1L S.J. Findings, at ¶ 74; Post-Trial Findings, at ¶ 53.  But the Court did not cite any decision denying relief from the stay where the court presumed or found that the debtor was solvent, and the case law strongly supports the proposition that relief from the stay should be granted where the debtor is solvent and no other creditor would be affected by paying a claim.  *See, e.g.*, *In re Texaco, Inc.*, 81 B.R. 804, 805-06 (Bankr. S.D.N.Y. 1988); *Claughton v. Mixson*, 33 F.3d 4, 5-6 & nn.2, 4 (4th Cir. 1994); *In re Premier Auto. Servs., Inc.*, 343 B.R. 501, 521 (Bankr. D. Md. 2006), *aff'd*, 492 F.3d 274 (4th Cir. 2007); *In re Novak*, 103 B.R. 403, 413-15 (Bankr. E.D.N.Y. 1989).

**III. The Orders Involve Legal Questions Requiring Resolution Of Conflicting Decisions**

**A.**     **There Are Conflicting Decisions On Whether A Refinancing Of Notes In Bankruptcy Triggers A Make-whole, or Similar Damages, Under The Common Indenture Language at Issue Here**

The Summary Judgment Opinion reflects the considerable uncertainty in the law regarding the enforceability of make-whole provisions in bankruptcy.  The Bankruptcy Court has relied on *Momentive* (in which the contract included the language "premium, if any," but, critically, did not include the language "and any other monetary obligations") for the proposition that the language in this case was not specific enough to provide entitlement to a make-whole. 2L S.J. Opinion, at 12-15; 2014 WL 4436335; *In re MPM Silicones*, *LLC*, 531 B.R. 321, 336 (S.D.N.Y. 2015).   The Court also relied on *In re United Merchants and Manufactures, Inc.*, where a liquidated damages clause was found to be valid, and distinguished it from the present facts because "the contractual language was specific regarding the amount of the pre-payment charge and specifically referring to the calculation thereof in the note."  2L S.J. Opinion, at 15-17 (citing 674 F.2d 134, 140 (2d Cir. 1982)).

However, there are conflicting decisions concerning when language is specific enough to establish entitlement to a make-whole following automatic acceleration in bankruptcy.  Some courts construing substantially identical language under New York law have held that even after automatic acceleration a debtor may trigger entitlement to a make-whole if it causes an optional early "redemption" by refinancing its notes.  *See In re Chemtura Corp.*, 439 B.R. 561, 596, 598, 600-01 (S.D.N.Y. 2010) (approving settlement to pay bondholders' make-whole claims in part, because "the bondholders would have substantially the better argument" that "there was . . . a trigger of the Make-Whole" under the "plain meaning" of the indenture, which based entitlement to make-whole on payment before a date certain; while bankruptcy accelerated the notes under the indenture, "the right to accelerate . . . did not change that" date); *infra pp.* 8-10.  Moreover, as

14

discussed above at pages 8-10, the premise that make-whole language needs to be explicit at all (or, rather, whether there should be a presumption of enforceability pursuant to the rule of perfect tender) is subject to conflicting arguments under New York law.  On both sets of issues, the Bankruptcy Court's opinions implicate legal questions governed by conflicting decisions that would be aided by clear and prompt resolution by the Third Circuit Court of Appeals.

B.      **There Are Conflicting Decisions on Whether the Automatic Stay Can Bar the Allowance of an Otherwise Valid Claim**

As noted above, in a non-precedential decision, the Third Circuit has held that a claim that otherwise would be valid under state law must be allowed in bankruptcy even if the automatic stay bars the creditor from "fixing" a contingency required to "perfect" the claim.  *In re Stephan*, 588 F. App'x 143 (3d Cir. 2014).  The Bankruptcy Court's contrary decision on appeal here cannot be reconciled with *Stephan*.  Therefore, this appeal will require the Third Circuit to resolve conflicting decisions and determine if its opinion in *Stephan* is correct.

C.      **There Are Conflicting Decisions On the Relative Significance of the Debtor's Solvency In Determining Whether Cause Exists To Lift The Automatic Stay**

The Orders involve an additional question of law that is the subject of conflicting decisions concerning the relative significance of a debtor's solvency in determining whether "cause" exists to lift the stay under § 362(d)(1) (*see* Post-Trial Findings, at ¶¶ 58-77; 1L S.J. Findings, at ¶¶ 74-75).  As noted above at pages 12-13, a series of decisions have lifted the stay to permit a creditor to enforce its rights under state law to payment of a valid claim where the debtor was solvent.  *See Texaco*, 81 B.R. at 805-06 (lifting stay to permit noteholders to enforce a right under the indenture that would increase the amount the debtors were required to pay the noteholders because "the debtors . . . have consistently maintained that they are solvent" and "propose[] to pay all unsecured creditors in full" and hence there would be no "prejudice [to]

15

other creditors"); *Claughton*, 33 F.3d at 5-6 & n.2, 4 (affirming order lifting the stay under § 362(d)(1) to permit creditor to enforce judgment against debtor because the "the debtor is solvent" and therefore "the court's decision did not harm the rights of the bankruptcy estate's creditors because the bankruptcy estate retained sufficient assets to pay in full all of the debtor's creditors pursuant to a plan of reorganization").

To be sure, other decisions involving make-whole disputes have denied relief from the stay to permit noteholders to rescind acceleration. *See AMR Corp.*, 730 F.3d at 112; *MPM Silicones*, 2014 WL 4436335, at *23; 1L S.J. Findings, at ¶ 75. Unlike here, neither of the courts presumed that the debtor was solvent. To the contrary, both decisions emphasized that lifting the stay and allowing the make-whole claim would harm the debtor's "creditors," *see AMR Corp.*, 730 F.3d at 112; *MPM Silicones*, 2014 WL 4436335, at *23 – a consideration not present where the debtor is solvent. The Bankruptcy Court here determined, however, that the "analysis [in those decisions] does not depend solely on whether the estate is insolvent" (1L S.J. Findings, at ¶ 75), suggesting that lifting of the stay could be denied even in solvent cases. The Bankruptcy Court's reading of those cases creates a potential conflict in the law that needs to be resolved.

## V.    The Orders Involve Matters of Public Importance

Enforcement of make-wholes in bankruptcy is a matter of significant importance. Such provisions are designed to give issuers the flexibility to refinance their debt and take advantage of lower interest rates, while protecting the noteholders' benefit of their bargain.[3] These provisions are common in publicly traded bonds and are frequently in dispute when issuers enter

---

[3] *See* Fabozzi, *The Handbook of Fixed Income Securities* 9-12, 137, 321-23 (7th ed.); S.V. Mann and Eric Powers, *What is the Cost of a Make-whole Call Provision?*, 1 J. Of Bond Trading & Mgmt 315 (2003); Richard S. Wilson & Frank J. Fabozzi, Corporate Bonds Structures & Analysis 116-17 (1996).

DOCS_DE:203300.1 23731/001

bankruptcy.  All of the Debtors' indentures included them, and the Debtors are also litigating this issue with the First Lien Noteholders and the EFIH Unsecured PIK Noteholders.  The amounts at stake are often substantial (as they are here), and the construction of this type of common indenture language has broad implications for the high-yield financing markets.

The issue of whether make-whole protections are enforceable in bankruptcy is thus a recurring issue that has public importance beyond the parties to this case.  *See Downey* Certification at 2 (certifying direct appeal having "public importance . . . because . . . certification . . . will help to bring clarity not only to other courts considering similar issues . . . but also to commercial entities seeking to enter, or who already are party to, tax sharing arrangements"); *AMR Corp.*, 730 F.3d at 91, 97 (hearing direct appeal of make-whole dispute "in light of the public importance of the matter"); *In re Amaravathi Ltd. P'ship*, 2009 WL 2342749, at *1 (S.D. Tex. July 29, 2009) (certifying direct appeal because "many loan agreements include provisions . . . similar to the one in the Loan Documents in the case on appeal").  Beyond the make-whole issue, the effect of a debtor's solvency on the lift-stay analysis has broader importance for other bankruptcy cases involving solvent debtors and for commercial expectations in the marketplace.

## VI.    Direct Appeal Will Materially Advance The Progress Of The Cases

This Court should certify this appeal because it will materially advance the progress of this and related litigation in these bankruptcy cases.  Given the amounts at stake, "it is highly likely that the question[s] presented ultimately will be taken to the Third Circuit, and that this case will not be resolved until the Third Circuit has addressed the issue."  *Downey* Certification at 2.  Direct appeals reduce the "time and cost factors attendant to the . . . appellate system" that the statute was designed to minimize.  *See* H.R. Rep. No. 109-31, at 14849 (2005), *reprinted in*

17

2005 U.S.C.C.A.N. 88, 206; *Weber v. U.S. Trustee*, 484 F.3d 154, 158, 161 (2d Cir. 2007) (certification proper "where a prompt, determinative ruling might avoid needless litigation"); *In re MPF Holding U.S. LLC*, 444 B.R. 719, 727 (Bankr. S.D. Tex. 2011).  And while the issues are not identical, the prompt resolution of this appeal should advance the conclusion of EFIH's make-whole disputes with its other noteholders.

## CONCLUSION

For the reasons set forth in above, this case should be certified for direct appeal to the Court of Appeals.

Dated: November 17, 2015          PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Robert J. Feinstein (NY Bar No. RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
          rfeinstein@pszjlaw.com

*- and -*

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000
Email: tmayer@kramerlevin.com
          ghorowitz@kramerlevin.com
          jbrody@kramerlevin.com

*- and –*

18

BRYAN CAVE LLP
Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: 212-541-1114
Facsimile: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*