**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 6918, 6989** |

**DEBTORS' OMNIBUS REPLY TO**
**OBJECTIONS TO POSTPETITION INTEREST SETTLEMENTS**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") file this reply (this "<u>Reply</u>") to objections (the "<u>Objections</u>" and, the parties asserting such Objections, the "<u>Objectors</u>") to entry of (a) the proposed order (the "<u>EFIH PIK Settlement Order</u>") approving the settlement of disputed EFIH PIK note claims (the "<u>EFIH PIK Settlement</u>") with certain EFIH PIK noteholders (the "<u>Settling EFIH PIK Noteholders</u>") (D.I. 6918)[2] and (b) the proposed order (the "<u>Fidelity Settlement Order</u>" and, together with the EFIH PIK Settlement Order, the "<u>Settlement Orders</u>") approving the settlement of disputed EFH and EFIH note claims (the "<u>Fidelity Settlement</u>" and, together with the EFIH PIK Settlement,

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] York Capital Management Global Advisors, LLC ("<u>York</u>") and P. Schoenfeld Asset Management L.P. ("<u>PSAM</u>") (D.I. 6770) filed an Objection to the EFIH PIK Settlement and was joined by certain other non-settling EFIH PIK noteholders (D.I. 6887) and NextEra Energy, Inc. (D.I. 6898). The EFH creditors' committee filed a statement and reservation of rights (D.I. 6769). The indenture trustee for the EFIH PIK Notes (the "<u>EFIH PIK Trustee</u>") also filed a response, which has been resolved (D.I. 6771). The Objection originally filed by the EFH creditors' committee (D.I. 6688), joined by Shirley Fenicle, *et al.* (D.I. 6703), is moot, and the Objection filed by the PCRB trustee (D.I. 6711) has been resolved.

the "Settlements") held by Fidelity Management & Research Company or certain of its affiliates ("Fidelity") (D.I. 6989).[3]  In response to the Objections, the Debtors respectfully state as follows.

## Preliminary Statement

1.      The Settlements should be approved.  They resolve claim allowance disputes between the Debtors and a majority of EFIH PIK noteholders and between the Debtors and Fidelity.  And they reduce the exposure to EFH and EFIH disputed debt claims to a fraction of the amount otherwise asserted.  Moreover, the "cost" of the Settlements will paid by the Plan Sponsors upon closing of the Merger.  No E-side creditor pays anything.  If the Merger does not close, the Settlements go away.  They affect no E-side creditor's recovery whatsoever.

2.      There is an important benefit of the Settlements which the Objections all ignore. In connection with the Settlements, the largest E-side creditors have also agreed to support the Debtors' proposed Plan.  This means that the overwhelming majority—approximately 98% by amount—of the Debtors' $42 billion capital structure, both T-side and E-side, are now in agreement or otherwise not contesting the Plan.  The Objectors' goal in upsetting this broad consensus is purely parochial and not in the best interests of the Debtors' stakeholders generally.

3.      Contrary to the Objectors' assertions, the law is clear.  Principles of "unfair discrimination" or "unequal treatment" do not apply to claim settlements.  Debtors may settle with different parties the same disputed claims at different amounts or with some holders but not others.  *In re Energy Future Holding Corp.*, 527 B.R. 157, 167 (D. Del. 2015).  Critically, the

---

[3] The following parties filed Objections to the Fidelity Settlement:  (a) the United States Trustee (the "U.S. Trustee") (D.I. 7015); (b) Contrarian Capital Management, LLC, as a holder of EFH legacy notes ("Contrarian") (D.I. 7031); and (c) the indenture trustee for the EFH notes (the "EFH Indenture Trustee") (D.I. 7032).  The EFH creditors' committee filed a reservation of rights as to the Fidelity Settlement (D.I. 7033).

two principal Objectors here—York and PSAM—are sophisticated institutional investors who declined the settlement to "roll the dice" on the Court's postpetition interest ruling.

4.    Having passed on the settlement, they should not be permitted to prevent others from accepting it.  The law gives them no support.  There is no rule that any settlement offer in bankruptcy must be made on a classwide basis.  There is no Bankruptcy Code provision that requires massive securities offerings or heavily-contested classwide fairness hearings every time a debtor wants to settle the contingent claims of a creditor.   Requiring as much would create perverse incentives for holdouts and defeat the strong bankruptcy policy in favor of settlements by making them infeasible in large chapter 11 cases.

5.    Moreover, the Settlements do not alter the rights of any noteholders, but rather fully preserve them.  The EFIH PIK Settlement Order—negotiated, agreed to, and supported by the EFIH PIK Trustee—ensures only that the Settling EFIH PIK Noteholders receive the settlement amounts and are not charged for the costs of the ongoing litigation by non-settling noteholders.  To the extent this modifies the indenture (if the terms of that document are even relevant), this is a permissible modification, at the direction of a majority of EFIH PIK noteholders and with the consent of the EFIH PIK Trustee, under the terms of the documents themselves.[4]  It does *not* alter any other noteholders' rights to payment of principal and interest. To the contrary, the EFIH PIK Settlement Order carefully preserves those parties' rights to litigate and appeal their disputed claims.

6.    Lastly, the U.S. Trustee's Objection to the fee and expense provisions of the Fidelity Settlement ignores the critical fact that the applicable fees will be paid only if the

---

[4] It is unclear that technical compliance with an indenture is relevant to approval of a claim settlement where the settlement does not materially affect the rights of non-settling holders.  In any event, as discussed elsewhere in this Reply, the indenture is not being modified, and, even if it were, such modification would be permissible under the indenture.

Merger closes and all E-side creditors are paid in full.  The Debtors therefore respectfully request that the Court overrule the Objections and approve the Settlements.

**Argument**

**I.      Debtors May Settle with a Subset of Noteholders.**

7.      Entering into a disputed claim settlement with a subset of noteholders is entirely permissible.  Indeed, this Court and the district court have rejected unequal treatment arguments similar to those asserted by the Objectors.  They fare no better here.

8.      The equal treatment provision of the Bankruptcy Code is a confirmation requirement that does not apply to claim settlements.  It states that "a *plan* shall . . . provide the same treatment for each claim or interest of a particular class."   11 U.S.C. § 1123(a)(4) (emphasis added).   As the district court held earlier in this case, "[b]y its express terms, 11 U.S.C. § 1123(a)(4) applies only to plan confirmations."  *In re Energy Future Holding Corp.*, 527 B.R. 157, 167 (D. Del. 2015).

9.      Numerous other courts have similarly held.  *See In re Dana Corp.*, 412 B.R. 53, 62 (S.D.N.Y. 2008) ("The language of 11 U.S.C. § 1123 is addressed to a bankruptcy plan . . . ."); *In re Journal Register Co.*, 407 B.R. 520, 533 (Bankr. S.D.N.Y. 2009) ("[T]he question under § 1123(a)(4) is whether the payment that creates the difference is provided 'under the Plan.'"); *In re Columbia Gas Sys., Inc.*, No. 91-803, 1995 WL 404892, at *2 (Bankr. D. Del. June 16, 1995) ("[The non-settling party] retains its rights to seek the full amount of its filed proof of claim, which in each case is higher than any settlement offer. As to the treatment of claims within the same class, that is a confirmation issue."); *see also In re New Century TRS Holdings, Inc.*, 407 B.R. 576, 592 (D. Del. 2009) (holding that section 1123(a)(4) is to be enforced "according to its plain language").

4

10.    Here, the Settlements happen to coincide with the confirmation hearing, but they could have occurred before or after that hearing.  The Settlements are no more a confirmation issue than any other claim settlement to which section 1123(a)(4) does not apply.   Not surprisingly, the Objectors cite no opinions to the contrary.

11.    But even if the Settlements were contained in the Plan and section 1123(a)(4) and its animating policy were to apply, the Settlements would still not constitute unequal treatment. This is because the Settlements have nothing to do with the *treatment* of claims under the Plan. In all relevant instances, the Plan provides for payment in full in cash or reinstatement of allowed E-side claims, including the EFIH PIK notes and EFH legacy notes.   The Settlements memorialize an agreement to the *allowance* of disputed claims, resolving the Debtors' objection to them.  As the district court in this case explained in a similar context, "[p]arties settle claims for various reasons, such as to avoid litigation risk and expense, and the fact that similar claimants decide to settle claims for different amounts does not indicate unequal treatment." *Energy Future Holding*, 527 B.R. at 168; *see also Dana Corp.*, 412 B.R. at 62 ("[T]he fact that some claimants have settled while others have not does not, by itself, indicate unequal treatment."); *In re Washington Mut., Inc.*, 442 B.R. 314, 355 (Bankr. D. Del. 2011) ("Providing different treatment to a creditor who agrees to settle instead of litigating is permitted by section 1123(a)(4).").   Here, the parties to the Settlements chose to settle and forego their rights to contest claim amounts, whereas the Objectors retain these rights.

12.    Despite these holdings, the Objectors contend that unequal treatment arises from the fact that the Plan Sponsors did not formally offer the Settlements to all EFIH noteholders. But York and PSAM, together holding over a third by amount of the EFIH PIK notes (D.I. 6888), were offered and outright refused the Settlement.  They are holdouts—holdouts that,

5

on the eve of the Court's postpetition interest ruling, elected to take their chances.  They now assert that the gamble was meant to be riskless:  best case, 100% of the contract rate; worst case, 60%.  This is not the law.  Indeed, under the prepetition RSA, these same parties supported the EFIH first lien settlements that gave rise to the district court's opinion on this issue.

13.    As to the small minority of noteholders that were not in direct discussions with the Plan Sponsors and that did not expressly reject the Settlements, sufficient notice of the Settlements was provided, especially given the Court's rapidly approaching postpetition interest ruling.  The Debtors filed the objection to the EFIH PIK note claims on July 9, 2015, putting all EFIH PIK noteholders on notice that they might receive postpetition interest at no more than the federal judgment rate (D.I. 4964).  The Debtors filed the Plan providing for postpetition interest on all EFH and EFIH unsecured note claims at no greater than the federal judgment rate on August 10 (D.I. 5244) and separate claims objections for the EFH notes followed in October (D.I. 6463, 6596, 6599).  Moreover, on October 15, the Plan Sponsors announced in open court that they had reached an agreement with the Settling EFIH PIK Noteholders as to their postpetition interest claims and that they were in discussions with Fidelity (Hr'g Tr. Oct. 15, 2015, at 147-48).  On October 20, the Plan Sponsors announced the economic terms of the EFIH PIK Settlement (Hr'g Tr. Oct. 20, 2015, at 71-73), and filed a notice of the terms on the docket (D.I. 6530).  As the Court stated on the record on more than one occasion, it intended to rule on the postpetition interest issue before the confirmation hearing started on November 3, and it did so on October 30 (D.I. 6782).

RLF1 13402236v.1

14.     With one exception, the Objectors do not allege—because they cannot—that any party was turned away during this period after requesting to participate in the Settlements.[5]  And the notion that the Debtors or the Plan Sponsors were required to carry out a tender offer or some other formal offering mechanism during the window between settlement with the anchor tenant (October 15) and the Court's ruling (October 30) is not realistic.   That requirement would discourage settlements before rulings, which would be contrary to clear Third Circuit policy.  *See In re Jevic Holding Corp.*, 787 F.3d 173, 184 (3d Cir. 2015) ("[S]ettlements are favored in bankruptcy.").   Under the circumstances, the process undertaken by the Debtors and the Plan Sponsors was entirely appropriate.

15.     The Fidelity Settlement is no different.  Fidelity agreed to settle all of its claims against EFH Corp. (*i.e.*, its claims under the EFH legacy notes) at the minimum amounts set forth in the Plan:  postpetition interest at the federal judgment rate and no makewhole premium.  Before the Court issued its ruling on October 30, Fidelity had agreed in principle to settle its postpetition interest claims under the EFH LBO notes, which are guaranteed by EFIH and therefore *pari passu* with the EFIH PIK notes, on the same terms as the Settling EFIH PIK Noteholders.  Fidelity is simply another party that agreed to settle its unsecured note claims against EFIH before the Court's ruling.

16.     As to Contrarian's unequal treatment assertions, again, section 1123(a)(4)'s unequal treatment requirement does not apply outside of a plan.  But, even if it did, the question is whether the *claim* receives equal treatment, not the claimant.  *See In re Eisenbarth*, 77 B.R. 228, 235-36 (Bankr. D.N.D. 1987) ("The focus on a particular claim should not be the

---

[5] The exception is Contrarian's assertion that it sought to participate in the EFH legacy notes settlement but was not permitted to do so—an odd assertion, given that Fidelity settled its EFH legacy note claims for the amounts presently set forth in the Plan.

claimholder, but rather the legal nature of the claim."). The fact that Fidelity independently negotiated this equity commitment and fee reimbursement with the Plan Sponsors has nothing to with the treatment of EFH legacy notes, under the Plan or otherwise. In sum, neither the Fidelity Settlement nor the EFIH PIK Settlement involve improper unequal treatment.

## II.    The Settlements Do Not Impermissibly Alter the Rights of Non-Settling Noteholders.

17.    The Settlements do not impermissibly alter the rights of non-settling noteholders. The EFIH PIK Settlement Order was negotiated, agreed to, and supported by the EFIH PIK Trustee at the direction of a majority of EFIH PIK noteholders. The primary aim of the order is to ensure that the EFIH PIK Trustee distributes funds in accordance with the EFIH PIK Settlement, which has no effect on distributions to non-settling holders. The Settling EFIH PIK Noteholders and the Trustee also agreed that the Trustee would not exercise its charging lien against distributions to the Settling EFIH PIK Noteholders for fees and expenses incurred litigating the disputed amounts after entry of the EFIH PIK Settlement Order.

18.    These provisions are reasonable and entirely fair. For one, they do not modify the preexisting terms of the indenture. Given that a majority of EFIH PIK noteholders are directing the EFIH PIK Trustee to stand down from this litigation, it follows that the EFIH PIK Trustee would no longer charge professional fees and expenses for that litigation on a go-forward basis. As to the waterfall, directing that the EFIH PIK Trustee distribute to the Settling EFIH PIK Noteholders the 60% of alleged postpetition contract interest that they bargained for, to be funded by the Plan Sponsors, does not "alter[] the *pro rata* sharing provisions" of the indenture. York and PSAM Objection ¶ 7. It is a separate distribution on account of the compromise of disputed claims: claims that York and PSAM have elected to retain and continue to litigate. Otherwise, the alleged alterations relate to the notion that the minority's litigation rights might be

8

waived, but the EFIH PIK Settlement Order now expressly preserves those rights. And absent some actual modification, the fact that the EFIH PIK Settlement Order "explicitly override[s]" the indenture is irrelevant and, in any case, is the status quo: the provisions of court orders control over the provisions of private contracts. *Id.* ¶ 5. The Objectors thus point to nothing in the EFIH PIK indenture that is actually being modified.

19.     Moreover, even if the provisions of the EFIH PIK Settlement Order were to constitute modifications to the indenture and the indenture were relevant, the indenture permits them. It allows the Debtors and the indenture trustee to "supplement this Indenture with the consent of the Required Holders of at least a majority in aggregate principle amount outstanding." EFIH PIK Indenture § 9.02. The indenture lists certain types of amendments that may only be undertaken with unanimous consent, none of which is implicated by the modest provisions of the EFIH PIK Settlement Order. *See id.* Most importantly, the EFIH PIK Settlement Order does not alter the rights of the non-settling noteholders to seek payment of principal or interest. To the contrary, the order expressly preserves the rights of non-settling holders to argue an equitable entitlement to postpetition interest consistent with this Court's postpetition interest ruling and to pursue appeals of that ruling. EFIH PIK Settlement Order ¶ 8. It also expressly waives any argument that the non-settling noteholders lack standing to do so. *Id.*[6]

20.     The cases cited by York and PSAM to the effect that a Rule 9019 settlement should not impair third-party rights are therefore inapposite: the Settlements do not alter the

---

[6] To facilitate approval of the Settlements, the EFIH PIK Settlement Order reflects the Debtors' consent to the non-settling noteholders participating in argument for an equitable award of postpetition interest. This is a significant concession by the Debtors in light of the complete failure of the non-settling noteholders to file responses to the claim objections. *See* Hr'g Tr. Nov. 2, 2015, at 23-26 ("I am not going to allow anyone to substitute in for the indenture trustee.").

RLF1 13402236v.1

rights of non-settling holders. Indeed, none of those cases involved a settlement of note claims by a majority of holders under the indenture. *See In re SportStuff, Inc.*, 430 B.R. 170 (B.A.P. 8th Cir. 2010) (settlement with insurer could not release insurance policies held by third parties); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 644 (Bankr. S.D.N.Y. 2012) (approving a settlement that preserved litigation rights of non-settling parties); *In re Devon Capital Mgmt., Inc.*, 261 B.R. 619, 626 (Bankr. W.D. Pa. 2001) (approving settlement other than certain nonconsensual third-party releases); *In re Mavrode*, 205 B.R. 716, 721 (Bankr. D.N.J. 1997) (noting no harm to creditors given that settlement was funded by outside source).

21.    Nor does the Trust Indenture Act in any way prohibit the Settlements. Section 316(b) of the Trust Indenture Act states that "the right of any holder of any indenture security to receive payment of the principal of and interest on such indenture security, or to institute suit for the enforcement of any such payment . . . , shall not be impaired or affected without the consent of such holder." 15 U.S.C. § 77ppp(b). But, again, the EFIH PIK Settlement Order expressly preserves the rights of non-settling holders to seek payment of principal and interest. The Trust Indenture Act is thus not implicated by the EFIH PIK Settlement.

22.    Similar arguments apply to the Fidelity Settlement Order. The Fidelity Settlement Order and the accompanying stipulation simply provide that Fidelity agrees to compromise its EFH LBO and legacy note claims at the amounts specified in the stipulation. *See* Fidelity Settlement Order § 2-3 (D.I. 6989-1); Stipulation § 2 (D.I. 6989-1). Neither the order nor the stipulation purports to be binding on the EFH Indenture Trustee or any EFH noteholder, including Contrarian. Rather, the rights of such non-settling holders to litigate their claims are fully preserved.

23.     The EFH Indenture Trustee is mistaken to the extent it asserts that the Court cannot approve a settlement between the Debtors and the majority holder of EFH notes.  Fidelity has the inviolable right to settle its own claims for principle and interest to the same extent that it has a right to institute suit for such amounts.  *See* Trust Indenture Act § 316(b), 15 U.S.C. § 77ppp(b).  The ratable distribution provisions of the indentures pertain to amounts "due and payable."  EFH Legacy Notes Indentures §806; EFH LBO Notes Indenture § 6.13.  But the very issue being settled here is a dispute as to what amounts are due and payable under applicable law.   This Court has inherent authority to resolve that dispute, binding only on Fidelity and the applicable Debtors.  *See* Fed. R. Bankr. Proc. 9019 (providing that "the court may approve a compromise or settlement"); *In re Jevic Holding Corp.*, 787 F.3d 173, 184 (3d Cir. 2015) ("[S]ettlements are favored in bankruptcy.").  Contrary to EFH Indenture Trustee's assertion, this in no way prejudices the non-settling holders, which can continue to assert that the full alleged amount of those non-settled claims are due and payable under applicable law.

24.     The one case the EFH Indenture Trustee cites to support its incredibly broad assertion of authority to control its holders economic decision making is an entirely inapposite automatic-stay opinion that involved a dispute between a contract creditor, an official committee, and a debtor.  *See In re Quad Sys. Corp.*, No. 00-35667F, 2001 WL 1843379 (E.D. Pa. Mar. 20, 2001).  The EFH Indenture Trustee should not be permitted to obstruct a landmark compromise in these chapter 11 cases—which does not affect the actual economic and legal entitlements of any party other than Fidelity—based on incorrect and overbroad interpretations of indentures.[7]

---

[7] As to the EFH Indenture Trustee's assertions regarding adequate notice, the Court has already ruled on the issue.  *See* Hr'g Tr. Nov. 13, 2015, at 12 ("I have decided, thinking about it over the evening, to schedule the Fidelity settlement for the 19th.").

III.    **The Fee and Expense Provisions of the Fidelity Settlement Are Appropriate.**

25.    The Fidelity Settlement provides that, if the Plan becomes effective, EFH Corp. will pay the reasonable and documented fees and expenses of Fidelity, up to $12 million, and of the EFH Indenture Trustee, only if the Trustee signs the PSA.  *See* Stipulation § 2.4 (D.I. 6989-1); Amended PSA § 10(v) (D.I. 6976-3).  Because they are payable only if the Merger closes, these fees would be funded entirely by the Plan Sponsors.  Otherwise, the Settlements do not provide for payment of professional fees and expenses.

26.    Contrary to the U.S. Trustee's assertions, this arrangement is entirely reasonable, consistent with chapter 11 practice, and permitted by the Bankruptcy Code.   Critically, these fees will be funded by a third party and paid only if all allowed EFH and EFIH claims are repaid in full in cash.  In this context, the U.S. Trustee's reliance on the administrative claim provisions of the Bankruptcy Code is misplaced:  the Settlements do not contemplate allowance of any claims that would take priority over other creditors.  This is in contrast to the principal case relied on by the U.S. Trustee, where creditors were seeking allowed administrative fee claims that would have primed other creditors.  *See In re Lehman Bros. Holdings Inc.*, 508 B.R. 283, 288 (S.D.N.Y. 2014) (involving "a provision in the reorganization plan . . . that allowed the Individual Members' reasonable professional fee expenses as 'Administrative Expense Claims'").  The Court can approve the Fidelity Settlement on the straightforward basis that it does not, in substance, provide for payment of fees from estate assets, and therefore nothing in the Bankruptcy Code prohibits its fee provisions.

27.    Even where section 503(b) does apply, courts in this district often approve the payment of fees in connection with postpetition commitments.  *See, e.g.*, *In re Indianapolis Downs, LLC*, 486 B.R. 286, 301 (Bankr. D. Del. 2013).  Similarly, courts have approved the

12

payment of professional fees and expenses in connection with settlement agreements.[8]  Here, Fidelity has agreed to commit $500 million in equity capital to the Merger, which will reduce the amount of long-term exit financing and the Plan Sponsors' costs of closing.  Similarly, if the EFH Indenture Trustee signs the PSA, it will have committed to support the Plan and related transactions.  These commitments would support approval of the Fidelity Settlement's fee provisions even if they had arisen in a more typical context where they were actually being funded by the estates.[9]

28.    Nonetheless, the U.S. Trustee proposes that the Court delay approval of the Settlements until it after addresses the U.S. Trustee's objection to the Plan.  But the Settlement itself greatly narrows substantive confirmation issues and garners the support of the largest EFH stakeholder for the Plan.  The suggestion that the Court should forego these benefits by delaying approval of this Settlement—for the sole reason that a non-debtor has agreed to pay the professional fees of certain parties only if all other E-side creditors are paid in full—only

---

[8] *See e.g.*, *In re Delta Air Lines, Inc.*, Case No. 05-17923, Order Approving Settlements Between the Debtors and Section 1114 Retiree Committees to Modify Retiree Benefits at 10 (Bankr. S.D.N.Y. Oct. 19, 2006, Dkt. No. 3428) ("Delta agrees to pay the reasonable expenses of the 1114 Non-Pilot Committee, including its expenses in connection with its prior newsletters to Retirees, and its subsequent reasonable efforts to communicate the agreement reflected in this Term Sheet with Retirees"); *In re Calpine Corp.*, Case No. 05- 60200, Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Bankruptcy Rule 9019(a) to Approve a Settlement with the Calpine Canadian Debtors at ¶ 26 (Bankr. S.D.N.Y, Dkt. No. 5422, July 26, 2007) (approving allowance of an unsecured claim, which included a component for "Reasonable Costs" of an ad hoc committee of bondholders and an indenture trustee).

[9] Section 1129(a)(4) of the Bankruptcy Code is likewise inapplicable.  As the U.S. Trustee recognizes, that provision only applies to confirmation of a plan.  11 U.S.C. § 1129(a) ("[T]he court shall confirm a *plan* only if the following requirements are met . . . ." (emphasis added)).  Here, the fees in question are payable in connection with claim settlements and third-party commitments.  The U.S. Trustee's assertion that the fees are in essence payable under the Plan because they are tied to the Plan effective date once again cuts the other way, only highlighting that the fees are funded by the Plan Sponsors and do not affect EFH Corp.'s creditors.  Even where section 1129(a)(4) is applicable, courts have recognized that payment of fees by a third party is an important consideration in the fact-specific inquiry it contemplates.  *See In re Cajun Elec. Power Coop., Inc.*, 150 F.3d 503, 517 (5th Cir. 1998).

underscores the fundamental flaw in this Objection.   The Court should overrule the U.S. Trustee's Objection.

## **Conclusion**

29.     For the foregoing reasons, the Debtors respectfully request that the Court overrule the Objections and enter the Settlement Orders.

[*Remainder of page intentionally left blank.*]

14

Dated: November 18, 2015
Wilmington, Delaware

_/s/ Jason M. Madron_

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        collins@rlf.com
              defranceschi@rlf.com
              madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted _pro hac vice_)
Stephen E. Hessler (admitted _pro hac vice_)
Brian E. Schartz (admitted _pro hac vice_)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:        edward.sassower@kirkland.com
              stephen.hessler@kirkland.com
              brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted _pro hac vice_)
Marc Kieselstein, P.C. (admitted _pro hac vice_)
Chad J. Husnick (admitted _pro hac vice_)
Steven N. Serajeddini (admitted _pro hac vice_)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        james.sprayregen@kirkland.com
              marc.kieselstein@kirkland.com
              chad.husnick@kirkland.com
              steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession