**Exhibit A**

**Agreement**

**EXECUTION VERSION**

## SETTLEMENT & SUPPORT AGREEMENT

This SETTLEMENT & SUPPORT AGREEMENT (this "**Agreement**")[1] is made and entered into as of November 23, 2015 (the "**Settlement Effective Date**"), by and among the following parties:

(a) (i) Energy Future Holdings Corp., a Texas corporation ("**EFH**"); (ii) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company; (iii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; (iv) EECI, Inc., a Nevada corporation and an indirect, wholly-owned subsidiary of EFH, (v) EEC Holdings, Inc., a Nevada corporation and an indirect, wholly-owned subsidiary of EFH, (vi) LSGT Gas Company LLC, a Texas limited liability company and an indirect, wholly-owned subsidiary of EFH, and (vii) LSGT SACROC, Inc., a Texas corporation and an indirect, wholly-owned subsidiary of EFH (the entities in clauses (i)–(vii), collectively, the "**EFH Debtors**"); and (viii) Texas Competitive Electric Holdings Company LLC ("**TCEH**," and collectively with the EFH Debtors, the "**Debtors**"), a Delaware limited liability company and an indirect, wholly-owned subsidiary of EFH;

(b) the statutory committee of unsecured creditors of EFH, EFIH, EFIH Finance, and EECI, Inc. (the "**EFH Committee**");

(c) American Stock Transfer & Trust Company, LLC, in its capacity as successor trustee under the EFH Note Indentures (as defined below) (the "**EFH Notes Trustee**");

(d) the undersigned Consenting TCEH First Lien Creditors (as such term is defined in the PSA), solely in their capacities as beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders of TCEH First Lien Claims (as defined in the PSA) and not with respect to any other Debtor Claims/Interests (as defined in the PSA) held by such entities;

(e) the Plan Sponsors (as such term is defined in the Plan); and

(f) the TCEH Committee (as such term is defined in the Plan).

Each Debtor, the EFH Committee, the EFH Notes Trustee, each Consenting TCEH First Lien Creditor, the Plan Sponsors, and the TCEH Committee are referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**."

**WHEREAS**, on April 11, 2014, the EFH Notes Trustee succeeded The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A. as indenture trustee under (a) that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series P Indenture**") dated as of November 1, 2004, by and among EFH, as issuer, and the EFH Notes

---

[1] Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein or if otherwise provided, the PSA, as defined below.

Trustee, providing for the issuance of 5.55% Series P Notes due November 15, 2014 (the "**EFH Legacy Series P Notes**"); (b) that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series Q Indenture**") dated as of November 1, 2004, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 6.50% Series Q Notes due November 15, 2024 (the "**EFH Legacy Series Q Notes**"); (c) that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series R Indenture**" and together with the EFH Legacy Series P Indenture and EFH Legacy Series Q Indenture, the "**EFH Legacy Note Indentures**") dated as of November 1, 2004, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 6.55% Series R Notes due November 15, 2034 (the "**EFH Legacy Series R Notes**" and together with the EFH Legacy Series P Notes and the EFH Legacy Series Q Notes, the "**EFH Legacy Notes**"); (d) that certain indenture (as amended and/or supplemented, the "**EFH LBO Note Indenture**") dated as of October 31, 2007, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 10.875% senior notes due November 1, 2017 (the "**EFH LBO Senior Notes**") and 11.25%/12.00% toggle notes due November 1, 2017 (the "**EFH LBO Toggle Notes**," and together with the EFH LBO Senior Notes, the "**EFH LBO Notes**"); (e) that certain indenture (as amended and/or supplemented, the "**EFH 2019 Note Indenture**") dated as of November 16, 2009, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 9.75% unsecured notes due October 15, 2019 (the "**EFH 2019 Notes**"); and (f) that certain indenture (as amended and/or supplemented, the "**EFH 2020 Note Indenture**," and together with the EFH 2019 Note Indenture, the "**EFH Unexchanged Note Indentures**," and together with the EFH LBO Note Indentures and the EFH Legacy Note Indentures, the "**EFH Note Indentures**") dated as of January 12, 2010, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 10.00% unsecured notes due January 15, 2020 (the "**EFH 2020 Notes**," and together with the EFH 2019 Notes, the "**EFH Unexchanged Notes**");

**WHEREAS**, on April 29, 2014 (the "**Petition Date**") the Debtors and certain of their affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, the EFH Committee was appointed in the Chapter 11 Cases by the U.S. Trustee on October 27, 2014;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Settlement Agreement* (the "**Settlement Agreement**") setting forth the terms and conditions on which such parties agreed to settle certain alleged claims and litigation among them, which Settlement Agreement is not inconsistent with the terms of this Agreement;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Plan Support Agreement* (as subsequently amended, the "**PSA**") setting forth the terms and conditions on which such parties will pursue the approval and consummation of the Plan and the Restructuring Transactions;

2

**WHEREAS**, on September 21, 2015, the Debtors filed in the Chapter 11 Cases the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (the "**Plan**," and as amended from time to time in accordance herewith, the "**Amended Plan**"), which provides that EFH Legacy Note Claims, EFH LBO Note Claims (both primary claims at EFH and guaranty claims at the EFIH Debtors), and EFH Unexchanged Note Claims shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest at the Federal Judgment Rate, but not including any Makewhole Claims;

**WHEREAS**, the Plan serves as the Debtors' objection to all other claims asserted and amounts alleged to be owed with respect to the EFH Legacy Notes and the EFH LBO Notes;

**WHEREAS**, on October 7, 2015, the EFH Notes Trustee filed a motion for partial summary judgment [D.I. 6386] (the "**Motion for Partial Summary Judgment**") in response to the Debtors' objection with respect to Makewhole Claims on the EFH Legacy Series Q Notes and EFH Legacy Series R Notes arguing that payment of Makewhole Claims is compelled as a matter of law by the applicable indentures and governing law;

**WHEREAS**, on October 14, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Legacy Notes* [D.I. 6463] (the "**EFH Legacy Note Claims Objection**"), objecting to the EFH Legacy Note Claims to the extent they, among other things, assert an entitlement to (a) make-whole premiums, (b) postpetition interest (including default interest and interest on overdue interest payments), (c) unamortized original issue discount, (d) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date, and (e) fees and expenses, including any right to indemnification from EFH or any other Debtor;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp., et al.*, *to Proofs of Claim 7475, 7480, 7481 and 6874-6943 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH LBO Notes* [D.I. 6596] (the "**EFH LBO Note Claims Objection**"), objecting to the EFH LBO Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, and (b) assert claims against the Debtors other than EFH, as issuer, and Energy Future Competitive Holdings Company LLC and EFIH, as guarantors;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp., et al., to Proofs of Claim 7476, 7482, and 6734-6873 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Unexchanged Notes* [D.I. 6599] (the "**EFH Unexchanged Note Claims Objection**," and collectively with the EFH Legacy Note Claims Objection and the EFH LBO Note Claims Objection, the "**Claims Objections**"), objecting to the EFH Unexchanged Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) redemption premiums, (iii) no-call

3

damages, or (iv) postpetition interest (including default interest and interest on overdue interest payments) and (b) assert claims against the Debtors other than against EFH;

**WHEREAS**, on October 23, 2015, the EFH Notes Trustee filed (a) the *EFH Indenture Trustee's Objection and Pretrial Brief for Phase I Trial Regarding Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.* [D.I. 6609] and (b) the *EFH Indenture Trustee's Objection to Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 6646] (together, the "**EFH Notes Trustee Objections**");

**WHEREAS**, on October 23, 2015, the EFH Committee filed the *Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6627] and the *Supplement to Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6643] (collectively, the "**EFH Committee Objection**");

**WHEREAS**, on October 28, 2015, the EFH Notes Trustee filed the *Response of EFH Legacy Notes Trustee to Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. LLC as Indenture Trustee for EFH Legacy Notes* [D.I. 6718], arguing that the EFH Legacy Note Claims Objection and EFH LBO Note Claims Objection should be overruled;

**WHEREAS**, on November 12, 2015, funds and accounts advised or sub-advised by Fidelity Management & Research Company or one of its affiliates (collectively, "**Fidelity**") holding approximately 73% of the EFH Legacy Notes and approximately 75% of the EFH LBO Notes instructed the EFH Notes Trustee to withdraw its objection to the Settlement Agreement and the Plan as it relates to all EFH Legacy Notes and EFH LBO Notes (the "**Fidelity Instruction**"), and certain other large holders of EFH Legacy Notes and EFH LBO Notes are in individual settlement discussions with the Debtors;

**WHEREAS**, notwithstanding the Fidelity Instruction, the EFH Committee has informed the other Parties that it intends to prosecute the EFH Committee Objection (a) to the Plan in the absence of the provisions of this Agreement relating to the allowed claims of holders of unsecured claims who are not in direct negotiations with the Debtors and (b) to the Settlement Agreement in the absence of the subordination provisions of this Agreement for the benefit of the holders of general unsecured claims in those classes to which the Fidelity Instruction does not relate; and

**WHEREAS**, the Debtors, the EFH Committee, and the EFH Notes Trustee and certain other parties in interest in the Chapter 11 Cases have been engaged in good faith negotiations

4

with each other regarding the disputes with respect to the Plan, the Settlement Agreement, the EFH Legacy Notes, the EFH LBO Notes, and the EFH Unexchanged Notes, and the Parties have reached agreement with each other with respect to such disputes on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.**     **Effective Date of Agreement**.

This Agreement shall become effective and binding on each of the Parties upon the entry by the Bankruptcy Court of an order approving this Agreement (the "**Approval Order**").

**Section 2.**     **Settlement of EFH Disputed Claims**.

(a)     With respect to the Claims Objections, the EFH Notes Trustee agrees that, other than as may be provided to any non-settling holders of EFH Legacy Notes, EFH LBO Notes, or EFH Unexchanged Notes, no Makewhole Claims shall be paid under the Amended Plan; *provided*, that the EFH Notes Trustee shall retain the right to assert any entitlement to the Makewhole Claims following a Plan Support Termination Date. Upon the Plan Support Termination Date, the EFH Notes Trustee shall use its reasonable efforts to coordinate to the greatest extent possible with the holders of the EFH Legacy Note Claims in connection with the assertion of any claims on account of the EFH Legacy Notes.

(b)     The EFH Notes Trustee retains the right to seek administrative expense status with respect to any claims for indemnity, fees, or expenses under the EFH Note Indentures.

(c)     Subject to confirmation and consummation of the Amended Plan:

(i)     (A) each holder of Claims derived from or based upon the EFH Unexchanged Notes (the "**EFH Unexchanged Note Claims**") and (B) each holder of Claims derived from or based upon the EFH Legacy Notes (the "**EFH Legacy Note Claims**") and the EFH LBO Notes (the "**EFH LBO Note Claims**") (together with any affiliate or funds under common or affiliated management) who holds less than $10 million in aggregate principal amount of EFH Legacy Note Claims and EFH LBO Note Claims as of November 20, 2015, shall have included as part of its Allowed Claims under the Amended Plan accrued but unpaid postpetition interest on the principal amount of EFH Unexchanged Notes, EFH Legacy Notes, or EFH LBO Notes (as applicable) at the non-default contract rate set forth in the applicable indenture; *provided*, *however*, that the aggregate principal amount of all EFH Unexchanged Notes, EFH Legacy Notes, and EFH LBO Notes that will receive such treatment under the Amended Plan as a result of this Agreement shall not exceed $40 million;

(ii)     the Debtors shall not elect to Reinstate any of the EFH Legacy Note Claims under the Amended Plan;

5

(iii) any EFH Legacy Note Claims, EFH LBO Note Claims, or EFH Unexchanged Note Claims held by Fidelity will be afforded treatment under the Amended Plan as set forth in that certain *Stipulation*, dated November 12, 2015, by and among Fidelity, EFH, EFIH, and EFIH Finance (the "**Fidelity Stipulation**");

(iv) the EFH Notes Trustee and its professionals shall be included in the release provisions of the Amended Plan;

(v) the Amended Plan shall provide that, subject to the Bankruptcy Code and all applicable law, Reorganized EFH will pay in full as part of the EFH Notes Trustee's Allowed Claim any indemnification claims of the EFH Notes Trustee payable under any of the EFH Legacy Note Indentures, the EFH LBO Note Indenture, or the EFH Unexchanged Note Indentures, whether asserted or accruing before or after the Effective Date. In connection with any amounts claimed to be due and allowable the EFH Notes Trustee shall submit statements in the first instance to Reorganized EFH which shall either pay such amounts within thirty days of submission of a statement or object to payment and describe the reasons that such payment obligation is disputed, in which case the EFH Notes Trustee shall request that the Court make a determination with regard to whether or not the amounts claimed are due and properly included in the EFH Notes Trustee's Allowed Claim, and all Parties shall cooperate to have such dispute determined on an expedited basis; and

(vi) the Amended Plan shall provide that (A) the reasonable and documented fees and expenses of the EFH Notes Trustee (including those of its counsel, agents, and advisors) incurred through the Amended Plan's Effective Date, in an amount not to exceed $5.5 million, shall be paid on the Amended Plan's Effective Date; and (B) for fees and expenses in excess of such amount, any rights of the EFH Notes Trustee to priority of payment and/or to exercise charging liens pursuant to the applicable EFH Note Indenture are preserved.

(d) Except as provided in the preceding subsection (c)(i), the rights, if any, to obtain payment of postpetition interest and Makewhole Claims to the extent permitted or required under the Bankruptcy Code, if any, of any holders of EFH Legacy Notes Claims or EFH LBO Note Claims that have not entered into a settlement with the Debtors providing otherwise, shall not be affected by the Amended Plan or this Agreement, and such non-settling holders shall have the right to be heard with respect to such rights, subject to (A) any subsequent settlement with the Debtors providing otherwise or (B) any Final Order of the Bankruptcy Court disposing of such matters; *provided*, that the Parties, as applicable, will use reasonable efforts to cooperate to put in place procedures for such non-settling holders of EFH Legacy Note Claims and EFH LBO Note Claims to prosecute such claims directly.

(e) The Debtors shall request and use their reasonable efforts to obtain, but shall have no obligation to obtain, a finding in (A) the order approving the Fidelity Stipulation, (B) the Approval Order, and (C) the Confirmation Order providing that the EFH Notes Trustee (Y) has acted prudently and in good faith in its actions in the Chapter 11 Cases and (Z) has fully and properly performed and discharged all of its duties under each of the EFH Note Indentures, at law and in equity.

6

(f)     The Confirmation Order shall be consistent with this Agreement and will include provisions directing the Depository Trust Company, participants, and any intermediaries to fully cooperate and facilitate in making the distributions contemplated herein.

(g)     The Amended Plan and the Confirmation Order shall be in form and substance satisfactory to the EFH Committee and the EFH Notes Trustee, solely with respect to consistency with this Agreement.

**Section 3.     Plan Obligations**.

(a)     Upon entry of the Approval Order, the EFH Committee and the EFH Notes Trustee shall (i) support, and shall not object to, litigate against, or otherwise impair, hinder, or delay the Debtors' pursuit of confirmation and consummation of the Amended Plan or approval of any related transactions, documents, or settlements in the Chapter 11 Cases, including pursuant to the Settlement Agreement and any other claim settlements, in each case as pending on the docket of the Chapter 11 Cases as of the date hereof, and (ii) hold in abeyance any and all discovery requests, appeals, or objections related to the foregoing or any matters related to the allowance or disallowance of fees, expenses, or claims, including Makewhole Claims, in each of cases (i) and (ii) except as otherwise contemplated by this Agreement.

(b)     The Debtors and the Plan Sponsors shall agree not to amend the Amended Plan, the Settlement Agreement, or any related transactions, documents, or settlement in a manner inconsistent with the terms hereof without the prior consent of the EFH Committee and the EFH Notes Trustee or order of the Bankruptcy Court.

(c)     The rights to seek payment of postpetition interest and Makewhole Claims to the extent permitted or required under the Bankruptcy Code, if any, of any holders of EFIH Unsecured Note Claims that have not entered into a settlement with the Debtors providing otherwise, shall not be affected by the Amended Plan, subject to (i) any subsequent settlement with the Debtors providing otherwise or (ii) any Final Order of the Bankruptcy Court providing otherwise.  The terms of any subsequent settlement related to postpetition interest or Makewhole Claims between the Debtors and any one or more holders of EFIH Unsecured Note Claims approved by the Bankruptcy Court after November 20, 2015, shall be made available to all holders of EFIH Unsecured Note Claims pursuant to such procedures as the Debtors and the EFH Committee shall agree.

(d)     The Debtors shall amend the Plan to include the EFH Committee and its professionals in the Amended Plan's release and exculpation provisions.

(e)     The Plan shall be amended to clarify or otherwise provide that: (i) Legacy General Unsecured Claims Against the EFH Debtors filed on or before any applicable bar date (the "**Applicable Legacy General Unsecured Claims**") shall be Reinstated; *provided*, *however*, that in the case of any Applicable Legacy General Unsecured Claim that is also asserted, whether in a Proof of Claim or otherwise, as a Claim against the TCEH Debtors, such Claim against the TCEH Debtors may be treated, estimated, and discharged in accordance with the Amended Plan and applicable law; (ii) the respective Claims

7

of EFH, LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. against one or more of EFH, LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. (the "**Legacy Intercompany Claims**") shall be Reinstated against the applicable Debtors; and (iii) the Interests in LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. shall be Reinstated.  All rights and defenses with respect to any appeal of the order approving the asbestos bar date are preserved, including rights, if any, to appeal such order, and the Debtors' defenses to such appeal, including that any such appeal is time-barred.

(f) The Debtors shall use commercially reasonable efforts to provide the EFH Committee and counsel to the Consenting TCEH First Lien Creditors with EFH's projected cash balances on the effective date of the Amended Plan or an Alternative Restructuring, as applicable, when and as such projections are updated from time to time and such other readily available information concerning cash balances at EFH as the EFH Committee or counsel to the Consenting TCEH First Lien Creditors may reasonably request.

**Section 4.    Contractual Claim Subordination**.

Subject to entry of the Approval Order and the order approving the Settlement Agreement, EFH, TCEH (as holder of the Settlement Intercompany Claim), and the Consenting TCEH First Lien Creditors hereby agree with the EFH Committee, for the benefit of holders of Beneficiary Claims (as defined below), as follows:

(a) TCEH shall segregate and receive and hold in trust any recovery, proceeds, or distributions of any kind or character, whether in cash, property, or securities, on account of the Settlement Intercompany Claim for the benefit of the applicable holders of Beneficiary Claims, and shall assign and turn over the same to the holders of Beneficiary Claims on a pro rata basis until the applicable holders of Beneficiary Claims have received, after taking into account any other recoveries or distributions received (or to be received substantially concurrently) by such holders on account of such Claims, the lesser of either (i) payment in full of the Allowed amount of such Claims or (ii) their pro rata share of the amount specified below for the applicable class of Beneficiary Claims (the "**Contractual Subordination**"), after which all remaining recoveries, proceeds, or distributions on account of the Settlement Intercompany Claim shall be retained by TCEH and distributed to holders of TCEH First Lien Secured Claims;

(b) "**Beneficiary Claims**" means (i) unpaid principal and prepetition interest on account of Allowed EFH Unexchanged Note Claims, in an amount not to exceed, in the aggregate, $5.8 million, (ii) Allowed EFH Non-Qualified Benefit Claims, in an amount not to exceed, in the aggregate, $30 million, and (iii) Allowed General Unsecured Claims Against EFH Corp., in an amount not to exceed, in the aggregate, $2 million; *provided*, *however*, that any of the foregoing Claims shall cease to constitute "Beneficiary Claims" if they are in a Class that is solicited to vote on a plan of reorganization for any of the EFH Debtors in accordance with section 1125 of the Bankruptcy Code and such Class fails to accept or reject such plan of reorganization in a manner consistent with the direction, if any, of the Required TCEH First Lien Creditors, as reflected in a written notice delivered to counsel for the EFH Committee at least two (2) business days in advance of the hearing to approve the applicable

8

disclosure statement (the "**Voting Indication**"); *provided*, *however*, that the Required TCEH First Lien Creditors may modify or amend the Voting Indication at any time prior to the date that is fifteen (15) business days before the applicable voting deadline for such plan of reorganization by delivering written notice of such modification or amendment to counsel to the EFH Committee; and

(c)    all Parties shall take such commercially reasonable actions as may be necessary from time to time to give effect to the Contractual Subordination agreed between TCEH and the EFH Committee for the benefit of the Beneficiary Claims.  Notwithstanding Section 4(b), in the event that any element of the Contractual Subordination is found by the Bankruptcy Court (or other court of competent jurisdiction) to be unenforceable or would otherwise render an Alternative Plan unconfirmable, TCEH shall take (and the Consenting TCEH First Lien Creditors hereby consent and approve TCEH taking) such other commercially reasonable actions as may be appropriate to put the holders of Beneficiary Claims in the same economic position to the fullest extent permitted by applicable law.

**Section 5.**    **TCEH Cash Payment**

The Parties agree that the TCEH Cash Payment (as defined in the Settlement Agreement and the PSA) shall be reduced by 25% of the amount, if any, that Holders of Eligible Claims receive on account of the Contractual Subordination.  The Parties, as applicable, shall use their commercially reasonable efforts to amend the PSA and the Settlement Agreement as soon as reasonably practicable to effectuate this modification (such amendments, the "**Conforming Amendments**").

**Section 6.**    **Alternative Restructuring Support Obligations**.

(a)    Subject to entry of the Approval Order, the Debtors and the Consenting TCEH First Lien Creditors agree not to propose an Alternative Restructuring for the EFH Debtors unless such Alternative Restructuring provides that (i) Applicable Legacy General Unsecured Claims are Reinstated; *provided*, *however*, that in the case of any Applicable Legacy General Unsecured Claim that is also asserted, whether in a Proof of Claim or otherwise, as a Claim against the TCEH Debtors, such Claim against the TCEH Debtors may be treated, estimated, and discharged in accordance with such Alternative Restructuring and applicable law, and (ii) Legacy Intercompany Claims are Reinstated or retained at an appropriate entity owning, directly or indirectly, at least 80% of the business of Oncor (and the order approving the Settlement Agreement shall provide that such claims are not released); *provided*, *however*, that, for the avoidance of doubt, this Section 6(a) shall not apply to any Alternative Restructuring that is not for the EFH Debtors (including any Alternative Restructuring that is only for the TCEH Debtors) and shall not limit, impair or prejudice the rights of the Consenting TCEH First Lien Creditors to propose or support any Alternative Restructuring for only the TCEH Debtors; *provided*, *further*, *however*, the Debtors may terminate their obligations under this Section 6(a) upon five (5) business days' written notice to the other parties if the board of directors, board of managers, or such similar governing body of any Debtor determines in good faith after consultation with its outside financial advisors and outside legal counsel, and based on the advice of such counsel, that proceeding with this obligation would be inconsistent with its applicable fiduciary duties.

(b) Subject to entry of the Approval Order, except as otherwise required by order of the Bankruptcy Court, the EFH Committee (i) shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and (ii) shall not object to, litigate against, or otherwise impair, hinder, or delay, the confirmation and consummation of any Alternative Restructuring (or other plan or restructuring transaction) or approval of any implementing transactions, documents, or settlements, that:

A. Reinstates Applicable Legacy General Unsecured Claims and Legacy Intercompany Claims as contemplated in Section 6(a) above;

B. incorporates the Contractual Subordination and treats the Settlement Intercompany Claim and Beneficiary Claims in a manner that is consistent with this Agreement; and

C. includes customary release and exculpation provisions for the EFH Committee.

(c) The EFH Committee shall have the right to consult with the Debtors and counsel to the Consenting TCEH First Lien Creditors with respect to tax matters under an Alternative Restructuring.

(d) For the avoidance of doubt, the Parties acknowledge that an Alternative Restructuring for the TCEH Debtors may include a taxable deconsolidation, and nothing herein or in any related stipulation, settlement agreement or support agreement shall limit, impair, hinder or prejudice the rights of the Consenting TCEH First Lien Creditors to pursue, or the Debtors' or the EFH Committee's rights to oppose (in the case of the EFH Committee, subject to its obligations under this Section 6), confirmation and consummation of an Alternative Restructuring that includes a taxable deconsolidation of the TCEH Debtors.

**Section 7.    Termination**.

(a) This Agreement shall be automatically terminated with respect to all Parties (i) upon termination of the PSA by EFH or EFIH, (ii) if the Court denies approval of the Settlement Agreement, (iii) if the Court does not enter the Approval Order on or before November 25, 2015; (iv) if the Conforming Amendments are not executed by the required parties prior to December 2, 2015, or (v) with the mutual agreement of all of the Parties, *provided* that the agreement of the Consenting TCEH First Lien Creditors shall be deemed given upon receipt of the agreement of the Required TCEH First Lien Creditors (as such term is defined in the PSA).

(b) Upon termination of this Agreement in accordance with Section 7 hereof: (i) this Agreement shall be of no further force and effect; (ii) each Party shall be released from its commitments, undertakings, and agreements under this Agreement and shall have the rights that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement; *provided*, *however*, solely with respect to a termination pursuant to Section 7(a)(i), the respective rights and obligations of each Debtor, the EFH Committee, each Consenting TCEH First Lien Creditor, each Plan Sponsor, and the TCEH Official Committee under

Section 4, Section 5, Section 6, and Section 7 shall survive any termination of this Agreement; *provided*, *further*, that the EFH Notes Trustee shall have no continuing obligation under this Agreement upon termination pursuant to Section 7; and (iii) the Debtors, the EFH Committee and the EFH Notes Trustee shall agree in good faith on a schedule for litigation or resolution of any remaining objections to the Amended Plan, the Claims Objections, or the Settlement Agreement, if applicable, such that no Party is materially prejudiced by any suspension of litigation activity during the term hereof.

**Section 8.     Miscellaneous**.

(a)     Complete Agreement. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto.

(b)     Governing Law; Jurisdiction; Waiver of Jury Trial. This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof. Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement, including any claims with respect to the reasonableness of the EFH Note Trustee's fees and expenses, in the United States Bankruptcy Court for the District of Delaware (the "**Chosen Court**"), and solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory). Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 8(b).

(c)     Execution of Agreement. This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

(d)     Interpretation and Rules of Construction. This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties

were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

(e) <u>Settlement Discussions</u>. This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties. Nothing herein shall be deemed an admission of any kind. To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

(f) <u>Successors and Assigns; No Third Party Beneficiaries</u>. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable. TCEH's obligations with respect to Contractual Subordination are for the benefit of the holders of Beneficiary Claims and are intended to be vested and irrevocable absent order of the Court. Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

(g) <u>Notices</u>. All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

if to the Debtors, to:

> Energy Future Holdings Corp., et al.
> Energy Plaza
> 1601 Bryan Street
> Dallas, Texas 75201
> Attention: General Counsel
> E-mail addresses:   stacey.dore@energyfutureholdings.com
>                     andrew.wright@energyfutureholdings.com

> with copies (which shall not constitute notice) to:

> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention: Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
> E-mail addresses:   esassower@kirkland.com
>                     shessler@kirkland.com
>                     bschartz@kirkland.com

> and

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad J. Husnick and Steven N. Serajeddini
E-mail addresses:   jsprayregen@kirkland.com
　　　　　　　　　marc.kieselstein@kirkland.com
　　　　　　　　　chusnick@kirkland.com
　　　　　　　　　steven.serajeddini@kirkland.com;

and

Cravath, Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Attention:  Philip A. Gelston
Email address:   pgelston@cravath.com

and

Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Attention:  Richard Levin
Email address:   rlevin@jenner.com

and

Proskauer Rose LLP
Three First National Plaza
70 West Madison Street, Suite 3800
Chicago, IL 60602
Attention:  Mark Thomas, Jeff Marwil, and Peter Young
Email addresses:   jmarwil@proskauer.com
　　　　　　　　　mthomas@proskauer.com
　　　　　　　　　pyoung@proskauer.com

and

Munger, Tolles & Olson LLP
335 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Attention:  Thomas B. Walper and Seth Goldman

13

    Email addresses: thomas.walper@mto.com
            seth.goldman@mto.com

if to the EFH Notes Trustee, to:

  American Stock Transfer & Trust Company, LLC
  6201 15th Avenue
  Brooklyn, NY 11219
  Attention:  Erica J. Goodstein
  Email address: egoodstein@amstock.com

  with copies (which shall not constitute notice) to:

  Nixon Peabody LLP
  100 Summer Street
  Boston, MA 02110
  Attention:  Amanda D. Darwin and Richard C. Pedone
  E-mail addresses: adarwin@nixonpeabody.com
          rpedone@nixonpeabody.com

if to the EFH Committee, to:

  Sullivan & Cromwell LLP
  125 Broad Street
  New York, NY 10004
  Attention:  Andrew G. Dietderich and Brian D. Glueckstein
  E-mail addresses: dietdericha@sullcrom.com
          gluecksteinb@sullcrom.com

If to a Consenting TCEH First Lien Creditor, to:

  Paul, Weiss, Rifkind, Wharton & Garrison LLP
  1285 Avenue of the Americas
  New York, New York 10019
  Attention:  Alan W. Kornberg, Brian S. Hermann, and Jacob A. Adlerstein
  E-mail addresses: akornberg@paulweiss.com
          bhermann@paulweiss.com
          jadlerstein@paulweiss.com

If to the Plan Sponsors, to:

  White & Case LLP
  1155 Avenue of the Americas
  New York, New York 10036
  Attention:  Gregory Pryor and J. Christopher Shore
  E-mail address: gpryor@whitecase.com

14

        cshore@whitecase.com

  and

White & Case LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4900
Miami, Florida 33131
Attention: Thomas E Lauria and Matthew C. Brown
E-mail addresses:   tlauria@whitecase.com
                     mbrown@whitecase.com

  and

Baker Botts L.L.P.
2001 Ross Avenue, Suite 600
Dallas Texas 75201
Attention: Geoffrey L. Newton, C. Luckey McDowell, and Preston J. Bernhisel
E-mail addresses:   geoffrey.newton@bakerbotts.com
                     luckey.mcdowell@bakerbotts.com
                     preston.bernhisel@baketbotts.com

If to the TCEH Committee:

Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019-9601
Attention: Brett Miller, James M. Peck, Lorenzo Marinuzzi, and Todd M. Goren
E-mail addresses:   brettmiller@mofo.com
                     jpeck@mofo.com
                     lmarinuzzi@mofo.com
                     tgoren@mofo.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

      (h)    <u>Amendments</u>.  This Agreement may not be modified or amended in any way except in writing with the agreement of each of the Parties; *provided* that the agreement of the Consenting TCEH First Lien Creditors shall be deemed given upon the receipt of the agreement of the Required TCEH First Lien Creditors.

      (i)    <u>Non-Severability of Agreement</u>.  This Agreement is to be construed as a whole, and all provisions of it are to be read and construed together.  Notwithstanding anything in this Agreement or the order approving it to the contrary, and in light of the integrated nature

of the settlements and compromises embodied in this Agreement and the order approving it, in the event that (i) a court of competent jurisdiction enters a final order ruling that any of the material provisions of this Agreement or the order approving it are void, invalid, illegal, or unenforceable in any material respect, or (ii) any of the provisions of this Agreement or the order approving it are reversed, vacated, overturned, voided, or unwound in any material respect, then in each case, the entirety of this Agreement (other than Section 4, Section 5, Section 6(a), this Section 8(i), and any other provision of this Agreement necessary to give meaning to those Sections, *provided* that, for the avoidance of doubt, the Debtors reserve the right to terminate their obligations under Section 6(a) in such event) shall be void ab initio and of no force and effect and, during any subsequent proceeding, the Parties shall not assert claim preclusion, issue preclusion, estoppel or any similar defense in respect of rights and claims of the Parties that were the subject of this Agreement prior to this Agreement being of no force or effect.

(j)     No Reliance.  Each of the Parties (A) is a sophisticated party with respect to the matters that are the subject of this Agreement, (B) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (C) has adequate information concerning the matters that are the subject of this Agreement, and (D) has independently and without reliance upon any other Party hereto, or any of their affiliates, or any officer, employee, agent or representative thereof, and based on such information as such Party has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that the Parties have relied upon each other Party's express representations, warranties and covenants in this Agreement, which each of the Parties enters, or as to which each Party acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

[Signature Pages Follow]