**Exhibit A**

**Subsequent PIK Stipulation**

## STIPULATION

This STIPULATION (this "**Stipulation**")[1] is made and entered into as of November 24, 2015 (the "**Stipulation Effective Date**"), by and among the following parties:

(a) (i) Energy Future Holdings Corp., a Texas corporation ("**EFH**"); (ii) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company; and (iii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; and

(b) The undersigned beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders (the "**Subsequent Settling EFIH PIK Noteholders**") that hold claims (the "**EFIH PIK Note Claims**") against the EFIH Debtors arising out of the 11.25%/12.25% senior toggle notes due December 1, 2018 (the "**EFIH PIK Notes**"), issued pursuant to that certain Indenture (as amended and/or supplemented, the "**EFIH PIK Notes Indenture**") dated as of December 5, 2012, by and among, *inter alia*, the EFIH Debtors, as issuers, and UMB Bank, N.A., as successor indenture trustee to The Bank of New York Mellon Trust Company, N.A. (the "**EFIH PIK Notes Trustee**").

EFH, EFIH, EFIH Finance and the Subsequent Settling EFIH PIK Noteholders are each referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**."

**WHEREAS**, on April 29, 2014 (the "**Petition Date**"), EFH, the EFIH Debtors, and certain of their affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, certain Subsequent Settling EFIH PIK Noteholders also hold (i) claims (the "**EFH LBO Note Claims**") against EFH arising out of (a) the 10.875% senior notes due November 1, 2017 (the "**EFH LBO Senior Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH LBO Note Indenture**") dated as of October 31, 2007 by and among EFH, as issuer, and American Stock Transfer & Trust Company, LLC, as indenture trustee (the "**EFH Notes Trustee**"), and (b) the 11.25%/12.00% toggle notes due November 1, 2017 (the "**EFH LBO Toggle Notes**" and together with the EFH LBO Senior Notes, the "**EFH LBO Notes**") issued pursuant to the EFH LBO Note Indenture; (ii) claims (the "**EFH Legacy Note Claims**") against EFH arising out of (a) the 5.55% Series P Notes due November 15, 2014 (the "**EFH Legacy Series P Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series P Indenture**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee, (b) the 6.50%

---

[1] Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein, the PSA, as defined below, each in effect as of the Stipulation Effective Date, as defined below.

Series Q Notes due November 15, 2024 (the "**EFH Legacy Series Q Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series Q Indenture**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee, and (c) the 6.55% Series R Notes due November 15, 2034 (the "**EFH Legacy Series R Notes**" and together with the EFH Legacy Series P Notes and the EFH Legacy Series Q Notes, the "**EFH Legacy Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series R Indenture**" and together with the EFH Legacy Series P Indenture and EFH Legacy Series Q Indenture, the "**EFH Legacy Note Indentures**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee; (iii) claims (the "**EFH Unexchanged Note Claims**") against EFH arising out of (a) the 9.75% senior notes due October 15, 2019 (the "**EFH 9.75% Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH 9.75% Notes Indenture**") dated as of November 16, 2009 by and among EFH, as issuer, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to American Stock Transfer & Trust Company, N.A., and (b) the 10.00% senior notes due January 15, 2020 (the "**EFH 10.00% Notes**" and together with the EFH 9.75% Notes, the "**EFH Unexchanged Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH 10.00% Indenture**" and together with the EFH 9.75% Notes Indenture, the "**EFH Unexchanged Notes Indentures**") dated as of January 12, 2010 by and among EFH, as issuer, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to American Stock Transfer & Trust Company, LLC; and (iv) claims (the "**EFIH Second Lien Note Claims**") against the EFIH Debtors arising out of the 11.00% senior secured second lien notes due October 1, 2021 and 11.75% senior secured second lien notes due March 1, 2022 (the "**EFIH Second Lien Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFIH Second Lien Note Indenture**") dated as of April 25, 2011 by and among the EFIH Debtors, as issuers, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to Computershare Trust Company, N.A. and Computershare Trust Company of Canada (the "**EFIH Second Lien Notes Trustee**");

**WHEREAS**, on June 16, 2014 the EFIH Second Lien Notes Trustee filed an adversary complaint against the EFIH Debtors, commencing the adversary proceeding captioned Computershare Trust Company, N.A. and Computershare Trust *Company of Canada v. Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc.*, Adv. Pro. No. 14-50405 (CSS) (Bankr. D. Del.), seeking a declaration that the EFIH Debtors are obligated to pay makewhole claims in connection with the EFIH Second Lien Notes, along with other contested amounts relating to indemnification obligations, professional fees and interest;

**WHEREAS**, on or about October 23, 2014, the EFIH PIK Notes Trustee filed proof of claim 6347 (the "**EFIH PIK Proof of Claim**") in the Chapter 11 Cases on behalf of itself and all holders of EFIH PIK Notes, whereby it asserted claims for, among other things, all "principal, premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums" and "interest ... arising from and after" the Petition Date;

**WHEREAS**, on or about October 24, 2014, the EFH Notes Trustee filed proofs of claim 6524-6943, 7475, 7476, 7477, 7478, 7479, 7480, 7481 and 7482 in the Chapter 11 Cases on behalf of itself and all holders of EFH LBO Notes, EFH Legacy Notes and EFH Unexchanged Notes, whereby it asserted claims for, among other things, principal, prepetition

2

interest, postpetition interest at the default rate set forth in the EFH LBO Note Indenture, the EFH Legacy Note Indentures and the EFH Unexchanged Notes Indentures, interest on interest, makewhole and other applicable premiums and penalties, and certain fees and expenses;

**WHEREAS**, on or about October 24, 2014, the EFIH Second Lien Notes Trustee filed proofs of claim 7486 and 7487 in the Chapter 11 Cases on behalf of itself and all holders of EFIH Second Lien Notes, whereby it asserted claims for, among other things, principal, prepetition interest, postpetition interest, and certain fees and expenses, and reserved its right to assert claims for any premiums, postpetition interest including "Additional Interest," and interest on overdue interest;

**WHEREAS**, on April 13, 2015, the EFIH Second Lien Notes Trustee filed the *Amended Complaint for Damages and Declaratory Relief* in the EFIH Second Lien Adversary Proceeding [Adv. D.I. 37], seeking, among other things, damages for a makewhole premium in connection with the Debtors' partial pay down of the EFIH Second Lien Notes on March 11, 2015;

**WHEREAS**, on July 9, 2015, the EFIH Debtors filed the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [D.I. 4964] (the "**EFIH PIK Claim Objection**"), whereby the EFIH Debtors objected to the EFIH PIK Proof of Claim to the extent it seeks payment of (i) an Applicable Premium under section 3.07(a) of the EFIH PIK Notes Indenture, (ii) an Optional Redemption Price under section 3.07(d) of the EFIH PIK Notes Indenture, or (iii) unmatured interest;

**WHEREAS**, on August 10, 2015, the Debtors filed the *Motion of Energy Future Holdings Corp.,* et al. *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 5249] whereby the Debtors seek approval of that certain *Amended & Restated Settlement Agreement* (as amended from time to time, the "**Settlement Agreement**") setting forth the terms and conditions on which the Debtors and certain other parties thereto agreed to settle certain alleged claims and litigation among them;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Plan Support Agreement* (as amended from time to time, the "**PSA**") setting forth the terms and conditions on which such parties will pursue the approval and consummation of the Plan and the Restructuring Transactions;

**WHEREAS**, on September 21, 2015, the Debtors filed in the Chapter 11 Cases the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (as may be amended from time to time, and including the amendments set forth on Exhibit A to that *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, LP to Confirmation of Debtors' Fifth Amended Plan of Reorganization* [D.I. 6932], the "**Plan**"), which provides that (i) EFIH PIK Note Claims shall be allowed in an amount equal to outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest on the principal amount outstanding as of the Petition Date at the Federal Judgment Rate, but excluding any Makewhole Claims; (ii) EFH Legacy Note Claims and EFH LBO Note Claims (both primary

3

claims at EFH and guaranty claims at the EFIH Debtors) shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest at the Federal Judgment Rate, but not including any Makewhole Claims; and (iii) EFIH Second Lien Note Claims shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, accrued postpetition interest (including Additional Interest and interest on interest) on such principal at the non-default contract rate set forth in the EFIH Second Lien Note Indenture through the Effective Date, and all reasonable and documented fees, expenses and indemnification claims owed under the EFIH Second Lien Note Indenture, but not including any Makewhole Claims;

**WHEREAS**, the Plan serves as the Debtors' objection to all other claims asserted and amounts alleged to be owed with respect to the EFH LBO Notes, EFH Legacy Notes and EFIH Second Lien Notes;

**WHEREAS**, on October 7, 2015, the EFH Notes Trustee filed a motion for partial summary judgment [D.I. 6386] in response to the Debtors' objection with respect to Makewhole Claims on the EFH Legacy Series Q Notes and EFH Legacy Series R Notes arguing that payment of Makewhole Claims is compelled as a matter of law by the applicable indentures and governing law;

**WHEREAS**, on October 14, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Legacy Notes* (the "**EFH Legacy Note Claims Objection**") [D.I. 6463], objecting to the EFH Legacy Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, (iv) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date, and (v) fees and expenses, including any right to indemnification from EFH or any other Debtor;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. Et Al., to Proofs of Claim 7475, 7480, 7481 and 6874-6943 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH LBO Notes* [D.I. 6596] (the "**EFH LBO Note Claims Objection**"), objecting to the EFH LBO Notes to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, and (b) assert claims against the Debtors other than EFH, as issuer, and Energy Future Competitive Holdings Company LLC and EFIH, as guarantors;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. Et Al., to Proofs of Claim 7476, 7482, and 6734-6873 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Unexchanged Notes* (the "**EFH Unexchanged Notes Claims Objection**") [D.I. 6599], objecting to the EFH Unexchanged Notes to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts, or (ii) postpetition

interest (including default interest and interest on overdue interest payments); and (b) assert claims against the Debtors other than EFH;

**WHEREAS**, on October 28, 2015, the EFH Notes Trustee filed the *Response of EFH Legacy Notes Trustee to Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. LLC as Indenture Trustee for EFH Legacy Notes* [D.I. 6718], arguing that the EFH Legacy Note Claims Objection and EFH LBO Note Claims Objection should be overruled;

**WHEREAS**, on October 27, 2015, the EFIH Debtors reached an agreement with certain holders of EFIH PIK Notes, as set forth in the *Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6699], and the *Second Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6918];

**WHEREAS**, on October 30, 2015, the Bankruptcy Court entered (i) an order sustaining the EFIH PIK Claim Objection [D.I. 6783] (the "**Partial Claim Objection Order**"), (ii) a Memorandum Opinion disallowing the portion of the EFIH PIK Note Claims seeking an amount for prepayment penalties, make-whole premiums and/or call premiums [D.I. 6781] (the "**Call Premium Memorandum Opinion**"), and (iii) a Memorandum Opinion addressing the EFIH PIK Noteholders' entitlement to post-petition interest [D.I. 6782] (the "**PPI Memorandum Opinion**").

**WHEREAS**, on November 12, 2015, (i) the EFIH PIK Notes Trustee filed a notice of appeal [D.I. 6970] from the Partial Claim Objection Order, and (ii) York Capital Management Global Advisors, LLC, P. Schoenfeld Asset Management L.P., Polygon Convertible Opportunity Master Fund, Polygon Distressed Opportunities Master Fund, Mudrick Capital Management, L.P., and Marathon Asset Management, LP (collectively, the "**Minority PIK Noteholders**"), on behalf of funds and accounts that they each manage or advise, represented by Gellert Scali Busenkell & Brown, LLC and Kaye Scholer LLP, filed a notice of appeal (and separate exhibits) from the Partial Claim Objection Order [D.I. 6972 and 6975].

**WHEREAS**, on November 12, 2015, (i) the EFIH PIK Notes Trustee filed a Motion to Amend or Alter the Partial Claim Objection Order [D.I. 6968] (the "**EFIH PIK Notes Trustee Motion to Amend**"), requesting that the Court enter separate orders in connection with the Call Premium Memorandum Opinion and the PPI Memorandum Opinion, and (ii) the Minority PIK Noteholders filed a Motion to Amend or Alter the Partial Claim Objection Order [D.I. 6973] (the "**Minority PIK Noteholders Motion to Amend**", and together with the EFIH PIK Notes Trustee Motion to Amend**,** the "**Motions to Amend**"), requesting that the Court enter separate orders in connection with the Call Premium Memorandum Opinion and the PPI Memorandum Opinion. In connection therewith, on November 13, 2015 and November 17, 2015, respectively, the Bankruptcy Court entered orders [D.I. 6985 and 7017] setting November 25, 2015 as the date in which the Bankruptcy Court will consider the Motions to Amend.

**WHEREAS**, on November 12, 2015, EFH and the EFIH Debtors reached an agreement with certain funds and accounts advised or sub-advised by Fidelity Management & Research

5

Company or one of its affiliates, as set forth in the *Notice of Settlement Between Debtors and Fidelity Management & Research Company* [D.I. 6976];

**WHEREAS**, EFH, the EFIH Debtors, the Subsequent Settling EFIH PIK Noteholders, and certain other parties in interest in the Chapter 11 Cases have been engaged in good faith negotiations with each other regarding the disputes with respect to the EFIH PIK Note Claims, EFH Legacy Note Claims, EFH LBO Note Claims and EFIH Second Lien Note Claims and the Parties have reached agreement with each other with respect to such disputes on the terms and conditions set forth in this Stipulation.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.     Effective Date of Stipulation**.

This Stipulation shall be immediately effective and binding on each Party, other than EFH and the EFIH Debtors, upon the execution and delivery to the other Parties of a signature page to this Stipulation; *provided, however*, that this Stipulation shall become effective and binding with respect to EFH and the EFIH Debtors upon entry by the Bankruptcy Court of an order approving this Stipulation (the "**EFIH PIK Noteholder Settlement Order**").

**Section 2.     Settlement of Claims**.

2.1     Notwithstanding anything to the contrary in the Plan, the EFIH PIK Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFIH PIK Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture through the Effective Date of the Plan, but not including any Makewhole Claims.

2.2     The EFH Legacy Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of the EFH Legacy Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest at the non-default contract rate (including any PIK Interest, Additional Interest and interest on interest, as applicable)set forth in the EFH Legacy Note Indentures, and (b) postpetition interest at the Federal Judgment Rate through the Effective Date of the Plan, but not including any Makewhole Claims.

2.3     Notwithstanding anything to the contrary in the Plan, the EFH LBO Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFH LBO Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture, and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture through the Effective Date of the Plan, but not including any Makewhole Claims. The Subsequent Settling EFIH PIK Noteholders will only be entitled to a single recovery with respect to the EFH LBO Notes and related guarantees.

2.4     Notwithstanding anything to the contrary in the Plan, the EFH Unexchanged Notes held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFH Unexchanged Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures through the Effective Date of the Plan, but not including any Makewhole Claims.

2.5     The EFIH Second Lien Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFIH Second Lien Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest thereon, including any Additional Interest and interest on interest, as applicable, at the applicable non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, and (b) accrued but unpaid postpetition interest, including any Additional Interest and interest on interest, as applicable, on such principal at the non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, through the Effective Date of the Plan, but not including any Makewhole Claims.

2.6     All Allowed EFH Legacy Note Claims, Allowed EFH LBO Note Claims, Allowed EFH Unexchanged Note Claims and Allowed EFIH Second Lien Note Claims held by the Subsequent Settling EFIH PIK Noteholders shall be paid in Cash on the Effective Date of the Plan. The Debtors will not exercise the option in Article III, Section B(4)(c) of the Plan to

reinstate EFH Legacy Series Q Claims and EFH Legacy Series R Claims held by the Subsequent Settling EFIH PIK Noteholders. The commitments in this Section 2 shall apply only in connection with consummation of the Plan and shall not bind the Debtors or any other party in connection with any other restructuring transaction, including, without limitation, any Alternative Restructuring.

**Section 3.    Commitments of the Subsequent Settling EFIH PIK Noteholders With Respect to the Plan and the Settlement Agreement**

3.1    Each Subsequent Settling EFIH PIK Noteholder:

(a)    shall (i) use commercially reasonable efforts to assist the Debtors in obtaining entry of the order approving the Settlement Agreement and the Confirmation Order and consummation of the Plan as soon as reasonably practicable in accordance and consistent with the Bankruptcy Code, this Stipulation, and the EFIH PIK Noteholder Settlement Order, and within the time frames contemplated in the PSA, and (ii) execute and deliver any other agreements reasonably required to effectuate and consummate the Plan and Restructuring Transactions;

(b)    shall not directly or indirectly, or encourage any other entity to directly or indirectly, (i) object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of the Plan and Restructuring Transactions and the Settlement Agreement; (ii) propose, file, support, vote for, or take any other action in furtherance of any restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors other than the Plan, including, for the avoidance of doubt, making or supporting any filings with the Bankruptcy Court or any regulatory agency, including the Public Utility Commission of Texas (the "**PUCT**") and the United States Nuclear Regulatory Commission (the "**NRC**"), or making or supporting any press release, press report or comparable public statement, or filing with respect to any restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors other than the Plan; or (iii) exercise any right or remedy for the enforcement, collection, or recovery of any claim against the Debtors or any direct or indirect subsidiaries of the Debtors that are not Debtors other than as expressly permitted by the Plan, the Merger Agreement, and the Settlement Agreement; *provided*, *however*, that notwithstanding the foregoing, each Party may, during and after the Plan Support Effective Period, (I) solicit from (other than within the meaning of 11 U.S.C. § 1125), and negotiate with the Debtors and/or their other stakeholders, facilitate, and document the other terms of an Alternative Restructuring, (II) solicit from (other than within the meaning of 11 U.S.C. § 1125) and negotiate with the Debtors and/or their other stakeholders, facilitate, and document the terms of another plan or other restructuring transaction that contains the Required Alternative Terms, and (III) solicit from and enter into an agreement or agreements with the Debtors and/or their other stakeholders regarding support for and/or financing of such Alternative Restructuring or other restructuring so long as entering into such agreement or agreements does not violate such Party's commitments and obligations under this Stipulation; *provided*, *however*, that each Party shall use commercially reasonable efforts (x) to keep confidential any solicitation, negotiation, facilitation, and documentation by such Party of an Alternative Restructuring and (y) to enter into a confidentiality agreement with any counterparty to any agreement regarding support for and/or financing of an Alternative Restructuring, which

8

confidentiality agreement provides that the existence and material terms of such Alternative Restructuring shall be kept confidential and shall not be publicly disclosed, except in each case to the extent required by applicable law or pursuant to such confidentiality agreements (including any "cleansing" provisions set forth in such confidentiality agreements) as determined by such Party in its sole and absolute discretion, and the Parties each waive any right to challenge such a determination made by any other Party;

(c)  shall take no action in opposition of or otherwise inconsistent with the terms of the Settlement Agreement, whether or not approved by the Bankruptcy Court;

(d)  if it is a holder of EFH Legacy Notes or EFH LBO Notes, will direct the EFH Notes Trustee, in its capacity as indenture trustee for the EFH Legacy Notes and EFH LBO Notes, to (i) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Settlement Agreement, the EFIH PIK Note Claims Settlement, and the Fidelity Claims Settlement, and (ii) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of postpetition interest (except as contemplated in the PSA and this Stipulation) or any Makewhole Claims or any other Claims inconsistent with the PSA and this Stipulation; *provided*, that, such Subsequent Settling EFIH PIK Noteholders shall not be required to provide any indemnity or otherwise incur any liability to the EFH Notes Trustee or any other party in connection with such direction; and

(e)  if it holds EFIH Second Lien Notes and holders of 50.10% or more of the aggregate principal amount of outstanding EFIH Second Lien Notes are or become parties to the PSA and/or this Stipulation (with the holdings of parties to both agreements aggregated), will direct the EFIH Second Lien Notes Trustee and will in good faith attempt to cause the EFIH Second Lien Notes Trustee, in its capacity as indenture trustee for the EFIH Second Lien Notes, to (i) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Settlement Agreement, the EFIH PIK Note Claims Settlement, and the Fidelity Claims Settlement, and (iii) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of any Makewhole Claims; *provided*, that, such Subsequent Settling EFIH PIK Noteholders shall not be required to provide any indemnity or otherwise incur any liability to the EFIH Second Lien Notes Trustee or any other party in connection with such direction.

3.2  No Subsequent Settling EFIH PIK Noteholder shall sell, use, pledge, assign, transfer, or otherwise dispose of (each, a "**Transfer**") any ownership (including any beneficial ownership)[2] in its respective Debtor Claims/Interests, general partnership interests in Texas Holdings, or interests in TEF (but not including, for the avoidance of doubt, limited partnership

---

[2]  As used herein, the term "**beneficial ownership**" means the direct or indirect economic ownership of, and/or the power, whether by contract or otherwise, to direct the exercise of voting rights and the disposition of, the Debtor Claims/Interests or the right to acquire such Debtor Claims/Interests.

9

interests in Texas Holdings) (the "**Supporting Claims/Interests**"), unless all of the following requirements are satisfied (a transfer that satisfies such requirements, a "**Permitted Transfer**," and such transferee, a "**Permitted Transferee**"):

(a) the intended transferee executes and delivers to counsel to the other Parties on the terms set forth below an executed joinder agreement before such Transfer is effective; and

(b) the intended transferee, the intended transferee's affiliates, and/or any unaffiliated third-party in which the intended transferee has a direct or indirect beneficial ownership, or any group of persons acting pursuant to a plan or arrangement as described in Treasury Regulation Section 1.355-6(c)(4), will not, after giving effect to such Transfer, and assuming the Plan and the other Restructuring Transactions were to be consummated immediately upon such Transfer, have beneficial ownership of, in the aggregate, fifty percent (50%) or more of the Reorganized TCEH Common Stock or the Reorganized EFH Common Stock.

Notwithstanding the foregoing, so long as a Transfer by a Subsequent Settling EFIH PIK Noteholder (i) is to an Investor Party, Consenting Interest Holder or Consenting Creditor Party under the PSA that is not in breach of any of those parties' obligations under the PSA and remains a party to the PSA, and (ii) would comply with Section 3.2(b), above, then such Transfer shall be a Permitted Transfer, and such transferee a Permitted Transferee, without the requirement of executing and delivering a joinder agreement. Any Transfer made in violation of this Section 3.2 shall be void *ab initio*.

Notwithstanding anything to the contrary in this Section 3.2, (i) a Qualified Marketmaker[3] that acquires any of the Supporting Claims/Interests with the purpose and intent of acting as a Qualified Marketmaker for such Supporting Claims/Interests, shall not be required to execute and deliver a joinder agreement or otherwise agree to be bound by the terms and conditions set forth in this Section 3 if such Qualified Marketmaker Transfers such Supporting Claims/Interests (by purchase, sale, assignment, participation, or otherwise) as soon as reasonably practicable, and in no event later than twenty (20) Business Days of its acquisition, to a Permitted Transferee and the Transfer otherwise is a Permitted Transfer (including, for the avoidance of doubt, the requirement that such transferee execute a joinder agreement in accordance with Section 3.2(a)); and (ii) to the extent any Party is acting solely in its capacity as a Qualified Marketmaker, it may Transfer any ownership interests in the Supporting Claims/Interests that it acquires from a holder of such Supporting Claims/Interests that is not a Party to a transferee that is not a Party at the time of such Transfer without the requirement that such transferee be or become a signatory to this Stipulation or execute a joinder agreement.

---

[3] As used herein, the term "**Qualified Marketmaker**" means an entity that (a) holds itself out to the public or the applicable private markets as standing ready in the ordinary course of business to purchase from customers and sell to customers Supporting Claims/Interests (or enter with customers into long and short positions in Supporting Claims/Interests), in its capacity as a dealer or market maker in Supporting Claims/Interests and (b) is, in fact, regularly in the business of making a market in claims against issuers or borrowers (including debt securities or other debt).

10

**Section 4.      Other Commitments of the Parties**

4.1     The Subsequent Settling EFIH PIK Noteholders shall be permitted to continue to seek the relief requested in the Motions to Amend.  Consistent with the terms of the Letter of Direction to the EFIH PIK Notes Trustee from the Subsequent Settling EFIH PIK Noteholders executed substantially contemporaneous herewith, the other Parties to this Stipulation shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede or take any action or inaction to interfere with the prosecution of the Motions to Amend by the Subsequent Settling EFIH PIK Noteholders and/or the EFIH PIK Notes Trustee.

4.2     Upon the Bankruptcy Court's approval of the Motions to Amend, the Subsequent Settling EFIH PIK Noteholders shall be permitted to file notices of appeal with respect to the PPI Memorandum Opinion and the Call Premium Memorandum Opinion (together, the "**Appeals**").  The other Parties to this Stipulation shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede or take any action or inaction to interfere with the filing of notices of appeal (the "**Subsequent Notices of Appeal**") by the Subsequent Settling EFIH PIK Noteholders and/or the EFIH PIK Notes Trustee in connection with the Appeals.

4.3     Promptly after the filing the Subsequent Notices of Appeal, the Subsequent Settling EFIH PIK Noteholders shall take all reasonable actions necessary to obtain the suspension of the Appeals and, upon consummation of the Plan, dismiss such Appeals with prejudice.  Upon the occurrence of the Plan Support Termination Date, the Parties agree that the Appeals may proceed.

4.4     The Subsequent Settling EFIH PIK Noteholders that are parties in the adversary proceeding captioned Avenue Capital Management II LP, et al., v. Fidelity Investments, Adv. Pro. No. 14-50797 (CSS) (Bankr. D. Del.) (the "**Fidelity Call Litigation**"), will take all commercially reasonable actions to dismiss with prejudice the Fidelity Call Litigation, including any and all pending appeals related thereto.

4.5     EFH and the EFIH Debtors shall not amend the Plan, the PSA, or the Settlement Agreement, through the Confirmation Order or otherwise, in a manner that is materially inconsistent with this Stipulation or the EFIH PIK Noteholder Settlement Order.  EFH and the EFIH Debtors shall use commercially reasonable efforts to not directly or indirectly, or encourage any other entity to directly or indirectly, (i) object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of this Stipulation or the EFIH PIK Noteholder Settlement Order, or (ii) propose, file, support, vote for, or take any other action in furtherance of any transaction, restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors that is materially inconsistent with this Stipulation or the EFIH PIK Noteholder Settlement Order.

**Section 5.      Termination**.

5.1     This Stipulation shall be automatically terminated with respect to all Parties upon the occurrence of any of the following events: (a) termination of the PSA by EFH or EFIH, (b) the Plan Support Termination Date, as defined and set forth in Section 11 of the PSA, or (c) upon

the failure of the Bankruptcy Court to enter the EFIH PIK Noteholder Settlement Order by no later than December 31, 2015, which EFIH PIK Noteholder Settlement Order shall be in form and substance reasonably acceptable to the Debtors, the Subsequent Settling EFIH PIK Noteholders, and the Plan Sponsors.

5.2     Upon termination of this Stipulation with respect to a Party in accordance with Section 5.1 hereof: (a) this Stipulation shall be of no further force and effect with respect to such Party; (b) such Party subject to such termination shall be released from its commitments, undertakings, and agreements under this Stipulation and shall have the rights that it would have had, had it not entered into this Stipulation, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Stipulation; and (c) the remaining Parties to this Stipulation, if any, shall be released from any commitments, undertaking, and agreements owed to such terminated Party under this Stipulation (including Section 2 hereof).

**Section 6.     Miscellaneous**.

6.1     Complete Agreement.

This Stipulation constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto.

6.2     Governing Law; Jurisdiction; Waiver of Jury Trial.

(a)     This Stipulation shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Stipulation in the United States Bankruptcy Court for the District of Delaware (the "**Chosen Court**"), and solely in connection with claims arising under this Stipulation: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

(b)     Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Stipulation or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Stipulation by, among other things, the mutual waivers and certifications in this Section 6.2.

12

6.3   Execution of Stipulation.

This Stipulation may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Stipulation on behalf of a Party has been duly authorized and empowered to execute and deliver this Stipulation on behalf of such Party.

6.4   Interpretation and Rules of Construction.

This Stipulation is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Stipulation, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Stipulation and continue to be represented by counsel. In addition, this Stipulation shall be interpreted in accordance with section 102 of the Bankruptcy Code.

6.5   Settlement Discussions.

This Stipulation and the transactions contemplated herein are part of a proposed settlement among the Parties.  Nothing herein shall be deemed an admission of any kind.  To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Stipulation and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Stipulation.

6.6   Successors and Assigns; No Third Party Beneficiaries.

This Stipulation is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  Except as otherwise explicitly set forth herein, nothing in this Stipulation is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

6.7   Notices.

All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

(a)   if to EFH or the EFIH Debtors, to:

Energy Future Holdings Corp., et al.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201

>Attention: General Counsel
>E-mail addresses:    stacey.dore@energyfutureholdings.com
>                     andrew.wright@energyfutureholdings.com
>
>with copies (which shall not constitute notice) to:
>
>Kirkland & Ellis LLP
>601 Lexington Avenue
>New York, New York 10022
>Attention: Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
>E-mail addresses:    esassower@kirkland.com
>                     shessler@kirkland.com
>                     bschartz@kirkland.com
>
>and
>
>Kirkland & Ellis LLP
>300 North LaSalle Street
>Chicago, IL 60654
>Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad J. Husnick and Steven N. Serajeddini
>E-mail addresses:    jsprayregen@kirkland.com
>                     marc.kieselstein@kirkland.com
>                     chusnick@kirkland.com
>                     steven.serajeddini@kirkland.com;
>
>and
>
>Cravath, Swaine and Moore LLP
>Worldwide Plaza
>825 Eighth Avenue
>New York, NY 10019
>Attention:  Philip A. Gelston
>Email address:    pgelston@cravath.com
>
>and
>
>Jenner & Block LLP
>919 Third Avenue
>New York, NY 10022
>Attention:  Richard Levin
>Email address:    rlevin@jenner.com

(b)    if to a Subsequent Settling EFIH PIK Noteholder, to:

>Kaye Scholer LLP
>250 West 55th Street

14

    New York, New York 10019
    Attention: Scott D. Talmadge
    E-mail addresses: scott.talmadge@kayescholer.com

 (c)  if to the EFIH PIK Notes Trustee

    Akin Gump Strauss Hauer & Feld LLP
    One Bryant Park
    New York, New York 10036
    Attention:  Scott L. Alberino, Ira S. Dizengoff
    E-mail addresses: salberino@akingump.com
         idizengoff@akingump.com

    and

    Foley & Lardner LLP
    321 North Clark Street, Suite 2800
    Chicago, Illinois 60654-5313
    Attention: Harold L. Kaplan and Mark. F. Hebbeln
    E-mail addresses: HKaplan@foley.com
         MHebbeln@foley.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

6.8  <u>Severability and Construction</u>.

   If any provision of this Stipulation shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Stipulation for each Party remain valid, binding, and enforceable.

   IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above..

[Signature Pages Follow]

15