## Exhibit D

**Direction Letter**

November 24, 2015

UMB Bank, N.A.,
as Trustee under the Indenture referred to below
2 South Broadway, Suite 600
St. Louis, Missouri 63102
Facsimile No.: (314) 612-8499
Attention: Ms. Laura Roberson

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Facsimile No.: (312) 832-4700
Attention: Harold L. Kaplan, Esquire, and Mark. F. Hebbeln, Esquire

Energy Future Intermediate Holding Company LLC
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel
and
Facsimile No.: (214) 812-4097
Attention: Treasurer

EFIH Finance Inc.
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Facsimile No.: (212) 446-6460
Attention: Edward O. Sassower, P.C.
and
300 North LaSalle
Chicago, Illinois 60654
Facsimile No. (312) 862-2200
Attention: Marc Kieselstein, P.C.

Re: <u>Direction to Trustee</u>

Ladies and Gentlemen:

Reference is made to (i) the Indenture, dated as of December 5, 2012, as amended supplemented by the First Supplemental Indenture, dated as of December 19, 2012, the Second Supplemental Indenture, dated as of January 23, 2013, and the Third Supplemental Indenture, dated as of January 30, 2013 (collectively, as further modified, supplemented and/or amended and in effect on the date hereof, the "**Indenture**"), by and among Energy Future Intermediate Holding Company LLC ("**EFIH**") and EFIH Finance Inc. (together with EFIH, the "**Issuers**"), and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee, pursuant to which the Issuers issued the 11.25%/12/25% senior toggle notes due 2018 (the "**Notes**"), and (ii) the Agreement of Resignation, Appointment and Acceptance, dated as of March 26, 2014, by and among the Issuers, The Bank of New York Mellon Trust Company, N.A., and UMB Bank, N.A., as successor indenture trustee (the "**Trustee**"). Reference is also made to (i) the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (as amended from time to time, the "**Plan**"), filed at docket number 6122 in the Issuers' chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and jointly administered under the caption <u>In re Energy Future Holdings Corp., et al.</u>, Case No. 14-10979 (CSS) the ("**Bankruptcy Cases**"), (ii) that certain Amended & Restated Plan Support Agreement, dated as of September 11, 2015 (as amended from time to time, including by amendments dated October 27, 2015 and November 12, 2015, the "**Plan Support Agreement**") by and among the Debtors, the Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, the Consenting EFIH PIK Noteholders and certain other Entities signatory thereto, (iii) the *Objection of UMB Bank, N.A., to Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al. *Pursuant to Chapter 11 of the Bankruptcy Code* filed at docket number 6640 (the "**Plan Objection**"), (iv) the *Objection of UMB Bank, N.A., to the Motion of Energy Future Holdings Corp.,* et al. *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* filed at docket number 6641 (the "**Settlement Agreement Objection**"), (v) the *Notice of Appeal* filed by the Trustee at docket number 6970 from the *Order Sustaining the EFIH Debtors' Partial Objection to Proof of Claim No. 6347; and* (vi) the *Motion to Amend or Alter the Partial Claim Objection Orde*r (the "**Motion to Amend**") filed by the Trustee at docket number 6968, requesting that the Bankruptcy Court enter separate orders (the "**Separate Orders**") in connection with the Bankruptcy Court's opinions regarding (a) the amount for prepayment penalties, make-whole premiums and/or call premiums [D.I. 6781] (the "**Call Premium Memorandum Opinion**"), and (b) the EFIH PIK Noteholders' entitlement to post-petition interest [D.I. 6782] (the "**PPI Memorandum Opinion**"), upon the entry of which the Trustee will file separate notices of appeal (the "**Notices of Appeal**," and the appeals commenced upon the filing of the

Notices of Appeal, the "**Appeals**," and together with the Motion to Amend and all actions of the Trustee in connection with the Notices of Appeal and the Motion to Amend, the "**Appellate Process**"), and (vii) the "Direction to Trustee" dated November 9, 2015 and delivered by certain of the undersigned to the Trustee (the "**November 9 Letter**"). Capitalized terms used but not defined in this letter (the "**Direction Letter**") shall have the meanings provided in the Plan, the PIK Settlement Order (defined below), or the Indenture, as applicable.

Further reference is made to (i) Section 6.01 of the Indenture, which provides that the commencement of the Bankruptcy Cases constitutes an Event of Default thereunder, (ii) Section 6.03 of the Indenture, which provides that, if an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or the Indenture and (iii) Section 6.05 of the Indenture, which provides that the Required Holders (as defined in the Indenture) of at least a majority in aggregate principal amount of Notes may direct the time, method and place by which the Trustee pursues any remedies available to the Trustee or of exercising any trust or power conferred on the Trustee.

Each of the undersigned parties (each, a "**Holder**" and collectively, the "**Holders**") hereby represents and warrants that it is the beneficial owner of the aggregate principal amount of Notes set forth opposite such Holder's name on its signature page hereto (the "**Represented Holdings**") and agrees to provide the Trustee with verification of such Holders' aggregate principal amount of Notes by medallion stamp or such other means acceptable to the Trustee as soon as reasonably practical (the "**Holdings Verification**"). As of the date hereof, such Holders, collectively, hold a majority of the aggregate principal amount of the Notes presently outstanding (after deducting the aggregate principal amount of the Notes, if any, owned by the Issuer or any Affiliate of the Issuer pursuant to Section 2.09 of the Indenture) and, accordingly, such Notes constitute the "Required Debt" under the Indenture and such Holders constitute the "Required Holders" under the Indenture for the purposes hereunder.

Pursuant to the November 9 Letter, certain of the Holders notified the Trustee and the Issuers and directed the Trustee immediately to, upon receipt of (i) the November 9 Letter by a majority in aggregate principal amount of the outstanding Notes and (ii) entry of an order of the Bankruptcy Court, not subject to any stay, consistent with the form attached to the November 9 Letter, and notwithstanding any prior direction by the Holders or any other holders of the Notes to the contrary, (x) dismiss, without prejudice, the Plan Objection and the Settlement Agreement Objection (collectively, the "**Objections**") (and upon receipt of the Holdings Verification from each Holder, dismiss such Objections with prejudice), (y) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, confirmation, approval, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, and (z) during the Plan Support Effective Period, refrain from supporting and

not pursue with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims, with the proviso that, notwithstanding anything to the contrary in the November 9 Letter or in the October 27 Direction (as defined in the November 9 Letter), the Trustee may participate as a nominal party in the Appeals, solely for the purpose of preserving appellate jurisdiction, with such costs other than in respect of the Appellate Process and the Appellate Suspension Process as defined below, to be borne solely by the Non-Settling EFIH PIK Noteholders, provided, however, the rights of all parties with respect to any such litigation or Appeals are reserved (the "**November 9 Direction**"). The undersigned Holders direct the Trustee to, upon (i) receipt of this letter by the Trustee from the Required Holders (as defined in the Indenture), and (ii) entry by the Bankruptcy Court of the *Order Approving Settlement of Certain EFIH PIK Noteholder Claims and Authorizing Debtors to Enter Into and Perform Under Stipulations* (the "**PIK Settlement Order**"), substantially in the form attached hereto as Exhibit 1, which shall not be subject to any stay, and notwithstanding any prior direction by the Holders or any other holders of the Notes to the contrary, (a) comply with the November 9 Direction (subject to any modifications set forth herein) and (b) promptly following the Trustee's filing of the Notices of Appeal, to take all actions reasonably necessary to suspend the Appeals and, upon consummation of the Plan, dismiss the Appeals with prejudice (the "**Appellate Suspension Process**"). The undersigned Holders who provided the November 9 Direction also direct that to the extent of any inconsistency between the November 9 Letter and this Direction Letter, this Direction Letter shall prevail and supersede the November 9 Letter.

Each Holder hereby directs, consents to and shall not oppose the Trustee's receipt of distributions under the Plan and the use of such distributions to pay for the Trustee's fees, costs and expenses as contemplated under Sections 6.12, 6.13 and 7.07 of the Indenture (the "**Charging Lien**"); *provided that*, except with respect to the Appellate Process and the Appellate Suspension Process, the Trustee agrees not to apply the Charging Lien to any undersigned Holder's aggregate principal amount of Notes for any fees, costs and expenses incurred in connection with litigation relating to pursuing allowance, liquidation, or payment of postpetition interest, Makewhole Claims or Subsequent PIK Claim Objections (as defined below) that arise after the date on which the PIK Settlement Order is entered by the Bankruptcy Court, unless the Plan is not consummated. For the avoidance of doubt, nothing herein shall be construed as limiting the Trustee's rights under Sections 6.12, 6.13 and 7.07 of the Indenture, other than as expressly set forth in the preceding proviso, including the payment of any fees, costs and expenses of the Trustee incurred in connection with seeking allowance or payment of postpetition interest claims or Makewhole Claims prior to the aforementioned date. Each Holder hereby further directs that, unless the Plan is not consummated, the Trustee shall not seek payment by or recovery from the Issuers or their bankruptcy estates with respect to any fees or expenses of the Trustee that may be recovered from money or property held or collected by the Trustee under Sections 6.12, 6.13 and 7.07 of the Indenture with respect to the Notes held by the Holders; *provided, however*, nothing here shall limit or impair the right of the Trustee to seek payment by or recovery from the Issuers or their bankruptcy estates with respect to any fees or expenses of the Trustee with respect to the

Notes held by the Non-Settling EFIH PIK Noteholders.  The Trustee has informed the Holders that pursuit by the Trustee of payment of such fees and expenses by the Issuers and their bankruptcy estates shall be conditioned on the Trustee's receipt of an indemnification and fee reimbursement agreement from the Non-Settling EFIH PIK Noteholders holding a majority in principal amount of the EFIH PIK Notes held by all Non-Settling EFIH PIK Noteholders satisfactory in form and substance to the Trustee.

By execution of this letter, and without limiting the indemnification provided to the Trustee under the November 9 Letter, each Holder hereby agrees to (i) indemnify and hold harmless the Trustee and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "**Indemnified Parties**"), from and against any and all losses, claims, damages or liabilities (or actions in respect thereof) (collectively, the "**Losses**"), severally on a pro rata basis based on the Holders' pro rata share, arising out of or related to and to implement the directions in this letter (including but not limited to (a) the Trustee's withdrawal with prejudice of the Plan Objection and the Settlement Agreement Objection, (b) the Trustee refraining from directly or indirectly, or encouraging any other entity to directly or indirectly, objecting to, delaying, impeding, or taking any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, (c) the Trustee refraining from supporting and not pursuing with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims, (d) the Trustee's actions in connection with the Appellate Process and Appellate Suspension Process, and (e) the Trustee's actions arising out of, related to or in connection with the settlement set forth in the Stipulation and PIK Settlement Order), and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action), arising out of or related to this letter (collectively, the "**Indemnification Obligations**").  For purposes hereunder, the term "**pro rata share**" means a fraction, the numerator of which shall be the principal balance of such Holder's aggregate holdings of the Notes as of the date of any such determination; and the denominator of which shall be the total principal balance of all Holders' aggregate holdings of the Notes as of such date.  The foregoing indemnity is in all events secondary to any funds held by the Trustee on account of principal or interest owed to the Holders that are available to pay or satisfy the Losses.  The Indemnification Obligations of each Holder shall survive (i) the revocation or termination of this Direction Letter and (ii) irrespective of whether (a) such Holder withdraws from the Stipulation, (b) the Stipulation is terminated or (c) the Plan is not consummated.

Promptly upon receipt by an Indemnified Party of notice of any demand, claim, or commencement or threatened commencement of any action, suit, proceeding, or

investigation which might constitute a Loss for which indemnity is given hereunder, the Trustee shall notify the Holders, via overnight courier or equivalent service, and shall provide to the Holders copies of all documents received by the Trustee in connection therewith. Upon such notice, in addition to the Indemnified Party's right to defend itself, the Holders may defend against the asserted Losses by counsel of the Trustee's choosing who is reasonably acceptable to the affected Indemnified Party and a majority in principal amount of the Holders.

Nothing herein shall in any way affect, limit, or impair the rights of the Trustee under the Indenture, the Notes or any related documents.  If the indemnity set forth herein shall, in the reasonable opinion of the Trustee, become insufficient or impaired, the Trustee shall have the right to request additional indemnities or to cease (or not commence) to do the acts indemnified against until such insufficiency or impairment is cured.

Each Holder agrees that, for so long as this letter remains in full force and effect it may not, at any time, sell, transfer, assign or otherwise dispose some or all of its Notes, or any option thereon or any right or interest (voting or otherwise) in any of the Notes (each a "**Transfer**") and any such Transfer shall be void *ab initio* and of no force and effect unless and until such transferee, assignee or buyer agrees in writing at the time of such Transfer to be bound by this letter in its entirety without revision with respect to all such transferred Notes (and any and all obligations associated therewith, including, but not limited to, the indemnification) and executes and delivers a joinder to the Trustee. Notwithstanding anything to the contrary herein, a Holder may Transfer its Notes to or in connection with any repurchase transaction, reverse repurchase transaction, or any swap or other derivative transaction without satisfying the requirements set forth in this paragraph only if, in connection with such Transfer, the Holder (or a wholly-owned subsidiary controlled by it) retains the contractual right to exercise any voting right or other direction that may be made on account of such Notes, and such Holder exercises (or causes its wholly-owned subsidiary controlled by it to exercise) such rights so that the transferee thereof does not otherwise take any action inconsistent with such Holder's obligations under this Direction Letter.

Each Holder hereby represents and warrants that (x) this letter has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity; and (y) it has independently reviewed this letter and not relied on any information from the Trustee.

Each Holder further hereby represents, warrants and certifies that, as of the date hereof, such Holder (i) either (A) is the beneficial owner of, or (B) has investment or voting discretion (with the power and authority to bind the beneficial owner(s)) with respect to, the principal amount of Notes set forth below its signature hereto, and (ii) has full power and authority to act on behalf of, vote, direct the Trustee as to, and consent to matters concerning, such Notes.

Each Holder agrees that it will not direct Trustee to stand down on any future objections to the Non-Settling EFIH PIK Noteholders' claims brought by the Debtors or other parties in interest (the "**Subsequent PIK Claim Objections**").  The Trustee has informed the Holders that the Trustee's participation in defending any Subsequent PIK Claim Objections shall be conditioned on the Trustee's receipt of an indemnification and fee reimbursement agreement from the Non-Settling EFIH PIK Noteholders holding a majority in principal amount of the EFIH PIK Notes held by all Non-Settling EFIH PIK Noteholders satisfactory in form and substance to the Trustee.

This letter shall be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof that would require application of the laws of another jurisdiction.

No alteration, amendment or modification of this letter shall be effective or binding upon any party unless in writing and duly executed by Holders constituting the "Required Holders" under the Indenture. This letter (including the indemnity set forth herein) and any direction made pursuant hereto shall be binding upon any successor or assign of the Holders.

This letter may be executed by each Holder in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single instrument.

IN WITNESS WHEREOF, each of the undersigned Holders has caused this letter to be executed and delivered as of the date first above written.

**EXHIBIT 1**

**PIK SETTLEMENT ORDER**