## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) Bankruptcy Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., | ) (Jointly Administered) |
| *et al.*,[1] | ) |
| | ) |
| *Debtors.* | ) **Re: D.I. 7026** |
| | ) |
| COMPUTERSHARE TRUST COMPANY, | ) |
| N.A. and COMPUTERSHARE TRUST | ) |
| COMPANY OF CANADA, as INDENTURE | ) |
| TRUSTEE | ) Adversary Proceeding |
| | ) No. 14-50405 (CSS) |
| *Appellant*, | ) |
| | ) |
| v. | ) |
| | ) **Re: Adv. D.I. 75** |
| ENERGY FUTURE INTERMEDIATE | ) |
| HOLDING COMPANY LLC *et. al.*, | ) |
| | ) |
| *Appellees.* | ) |

## EFIH DEBTORS' OPPOSITION TO
## THE SECOND LIEN TRUSTEE'S MOTION FOR DIRECT APPEAL

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C.
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

James H.M. Sprayregen, P.C.
Andrew R. McGaan
Marc Kieselstein, P.C.
Chad J. Husnick
Steven N. Serajeddini
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Co-Counsel to the Debtors and Debtors in Possession*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 2

STATEMENT OF FACTS ........................................................................................... 3

    A.    First Lien Summary Judgment and Stay Decisions. ............................ 3

    B.    Second Lien Decisions On Appeal. .................................................... 4

ARGUMENT ............................................................................................................... 5

I.      None Of The Issues On Appeal Merit Certification To Create A Controlling Decision Of Law ................................................................... 5

    A.    Interpretations Of State Law Are Not Appropriate For Direct Appeal. ............... 6

    B.    Automatic Stay Law Is Clear And Was Applied To The Particular Facts Of This Case. .......................................................... 9

        1.    The Trustee Misunderstands This Court's Ruling. ................................. 10

        2.    Solvency's "Relative Significance" Is Already Established.................... 11

II.    There Are No Conflicts To Resolve From Within This Circuit. ........................... 14

    A.    No Decision Conflicts With This Court's Opinions. ......................................... 15

    B.    Any "Conflicting Decisions" Must Be From Within This Circuit.................... 17

III.   Issues That Only Affect Parties To This Bankruptcy Are Not Matters Of Public Importance. ............................................................... 17

IV.   Direct Appeal Will Not Advance The Underlying Chapter 11 Reorganization. .................................................................................. 19

CONCLUSION........................................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Home Mortgage*,
    408 B.R. 42, 44 (D. Del. 2009) ...................................................................................18

*Claughton v. Mixson*,
    33 F.3d 4 (4th Cir. 1994) ...................................................................................13, 16

*DIRECTV Inc. v. Seijas*,
    508 F.3d 123 (3d Cir. 2007)..............................................................................7

*Faulkner v. Kornman*,
    No. MISC. 10-301, 2012 WL 293230 (Bankr. S.D. Tex. Jan. 30, 2012) ...................20

*HSBC Bank USA, N.A. v. Calpine Corp.*,
    No. 07-3088, 2010 WL 3835200 (S.D.N.Y. Sept. 15, 2010) .....................................15

*In re 15375 Mem'l Corp.*,
    No. 06-10859, 2008 WL 2698678 (D. Del. July 3, 2008) ...........................................7

*In re AMR Corp.*,
    730 F.3d 88 (2d Cir. 2013)............................................................................................8

*In re AMR Corp*,
    Adv. Nos. 12-01932, 12-01946, Dkt. No. 6907 (Bankr. S.D.N.Y. Feb.
    28, 2013) ............................................................................................................9

*In re Armstrong World Indus.*,
    106 F. App'x 785 (3d Cir. 2004) .............................................................................13

*In re Chemtura*,
    439 B.R. 561 (Bankr. S.D.N.Y. 2010) ..........................................................................7

*In re City of Detroit, Mich.*,
    504 B.R. 191 (Bankr. E.D. Mich. 2013) .....................................................................18

*In re DBSI, Inc.*,
    407 B.R. 159 (Bankr. D. Del. 2009) ...........................................................................14

*In re Downey Fin. Corp.*,
    428 B.R. 595 (Bankr. D. Del. 2010) ......................................................................9, 10

*In re Gen. Motors Corp.*,
    409 B.R. 24 (Bankr. S.D.N.Y. 2009)......................................................................17, 18

*In re Johns-Manville Corp.*,
    449 B.R. 31 (S.D.N.Y. 2011)................................................................................18, 20

*In re Lehman Bros. Inc.*,
    No. 13-5381, 2013 WL 5272937 (S.D.N.Y. Sept. 18, 2013) ......................................20

*In re MPF Holding U.S. LLC*,
    444 B.R. 719 (Bankr. S.D. Tex. 2011) ...............................................................12, 20

*In re MPM*,
    531 B.R. 321 (S.D.N.Y. 2015).............................................................................8, 11

*In re MPM Silicones, LLC*,
    No. 14-22503-RDD, 2014 WL 4436355 (Bankr. S.D.N.Y. Sept. 9,
    2014) *aff'd*, 531 B.R. 321 (S.D.N.Y. 2015)................................................................15

*In re Nortel*,
    No. 09-10138, 2010 WL 1172642 (Bankr. D. Del. Mar. 18, 2010) ...........................17

*In re Novak*,
    103 B.R. 403 (Bankr. E.D.N.Y. 1989)..................................................................13, 16

*In re Premier Auto. Servs., Inc.*,
    343 B.R. 501 (Bankr. D. Md. 2006),
    *aff'd*, 492 F.3d 274 (4th Cir. 2007)..............................................................13, 15, 16

*In re Premier Auto. Servs., Inc.*,
    No. 05-20168, 2006 WL 4711334 (Bankr. D. Md. June 14, 2006)..............................12

*In re Premier Entm't Biloxi LLC*,
    445 B.R. 582 (Bankr. S.D. Miss. 2010).....................................................................15

*In re Rodriguez*,
    513 B.R. 767 (Bankr. S.D. Fla. 2014)........................................................................20

*In re Solutia Inc.*,
    379 B.R. 473 (Bankr. S.D.N.Y. 2007)........................................................................15

*In re Southeast Banking Corp.*,
    710 N.E.2d 1083 (N.Y. 1999)......................................................................................8

*In re Stephan*,
    588 F. App'x 143 (3d Cir. 2014) (unpublished) .........................................................16

*In re Texaco, Inc.*,
   81 B.R. 804 (Bankr. S.D.N.Y 1988) ....................................................................13, 16

*In re Tribune Co.*,
   477 B.R. 465 (Bankr. D. Del. 2012) ...........................................................................7

*In re W.T. Grant Co.*,
   699 F.2d 599 (2d Cir. 1983)......................................................................................15

*In re Wilson*,
   116 F.3d 87 (3d Cir. 1997)...................................................................................9, 11

*Mark IV Indus., Inc. v. New Mexico Env't Dep't*,
   452 B.R. 385 (S.D.N.Y. 2011)..................................................................................19

*Reorganized Debtors ex rel. Goody's Family Clothing, Inc. v. Blue Dog*
   *Props. Trust (In re Goody's Family Clothing Inc.)*,
   No. 09-409, 2009 WL 2355705 (D. Del. July 31, 2009) ...........................................17

*Ritchie Capital Mgmt., L.L.C. v. Stoebner*,
   No. 12-3038, 2013 WL 2455981 (D. Minn. June 6, 2013).........................................20

*Weber v. United States*,
   484 F.3d 154 (2d Cir. 2007).............................................................................6, 10, 20

*WestLB AG v. Kelley*,
   514 B.R. 287 (D. Minn. 2014) ...........................................................................10, 17

**Statutes**

11 U.S.C. § 109 .......................................................................................................12

11 U.S.C. § 301 .......................................................................................................12

11 U.S.C. § 362 ....................................................................................................9, 12

28 U.S.C. § 158 ................................................................................................. *passim*

**Rules**

Federal Rule of Bankruptcy Code § 1110(a) .....................................................................8

Federal Rule of Bankruptcy Procedure 8006(b) ...............................................................4

**Other Authorities**

1 *Collier on Bankruptcy* ¶ 5.06 (16th ed. 2015) .......................................................6, 17, 18

iv

## INTRODUCTION

This appeal presents no unusually important issues that would justify invoking Congress's limited exception to the customary appeals process in bankruptcy cases.

This Court denied the Second Lien Trustee's claim for an Applicable Premium, as it denied the First Lien Trustee's claim, based on the terms of the Indenture as interpreted by governing New York law, not bankruptcy law. Additionally, this Court denied the Second Lien Trustee's motion to lift the automatic stay based on the Court's prior decision finding no "cause" to lift the automatic stay. Congress created direct appeals from bankruptcy cases so that the Courts of Appeals could resolve vague, ambiguous, or otherwise unclear points of *bankruptcy* law, especially in cases where important public interests are at stake. These two decisions—one applying state law and one applying a well-established statutory test to the facts of this case—do not present issues of doctrinal or public importance meriting a direct appeal.

The Second Lien Trustee nonetheless seeks to short circuit the established process because, it argues, its appeal is "inevitably headed" to the Third Circuit. This argument has no basis in law or logic. There is no evidence that Congress provided for direct appeals where litigants expressed determination to pursue their appeals as far as possible. Nor would such a rule make sense. *Every* litigant seeking a direct appeal necessarily desires Circuit review. The Second Lien Trustee's view of the world would also burden the Courts of Appeals with even more bankruptcy appeals.

Instead, Congress specified limited circumstances in which direct appeals can be certified in 28 U.S.C. § 158(d)(2). The Second Lien Trustee ambitiously asserts that this appeal satisfies all four grounds for certifying a direct appeal, arguing no fewer than nine reasons why this Court should short-circuit the customary appeals process. The Second Lien Trustee has not met its burden on any of these arguments, and the Motion should be denied.

## SUMMARY OF ARGUMENT

1.       ***No controlling decision***.  *First*, the Second Lien Trustee seeks a direct appeal to the Third Circuit so that it can then, in turn, seek certification to New York's highest court.[2] Congress created direct appeals in bankruptcy cases so that courts of appeals could clarify applicable bankruptcy law, not state law issues of contract interpretation.  Here, an expedited decision on this state law issue will not provide further doctrinal clarity because all of the cases on this issue are contrary to the Second Lien Trustee's position.  Further still, the Trustee's convoluted attempt to remake New York law should be rejected, both because the Second Lien Trustee failed to raise this argument in its summary judgment briefing, and because the argument is incorrect.  (Part I.A.)  *Second*, the Trustee argues two different reasons why the Third Circuit should augment its law on the automatic stay.  There is no absence of controlling law on lift stay motions, nor did the Trustee argue there was.  Merely disagreeing with this Court's fact-intensive ruling, or failing to understand that ruling, cannot justify expediting the appeals process in an effort to ***change*** controlling law.  (Part I.B.)

2.       ***Matter of public importance***.  This is a private dispute over the interpretation of a contract and the application of established law to the facts.  The Trustee has not cited and has not provided any evidence that financial markets or the broader public would benefit from an expedited ruling on the specific contract language and clear findings of fact at issue in this appeal.  (Part II.)

3.       ***Resolving conflicting decisions***.  The decisions on appeal do not conflict with any other decision from any other court.  There is no conflict to resolve.  (Part III.A.)  Additionally, even if a conflict did exist, the Third Circuit only has the power to resolve intra-circuit conflicts,

---

[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the EFIH Debtors' Memorandum in Support of their Motion for Partial Summary Judgment, No. 14-50405, Adv. D.I. 42 (July 17, 2015).

not alleged conflicts with courts in different circuits.  The Trustee's citation to cases outside of the Third Circuit cannot create a relevant conflict meriting direct appeal.  (Part III.B.)

      4.    ***Materially advance the progress of the case***.  The Trustee misunderstands this standard.  The standard is whether a direct appeal will benefit the overall reorganization, and here, the chapter 11 reorganization will continue on its current path and expected timing irrespective of any decision in this appeal.  (Part IV.)

**STATEMENT OF FACTS**

    A.    **First Lien Summary Judgment and Stay Decisions.**

Most of the issues now on appeal from this adversary proceeding were addressed in two lengthy opinions in the First Lien adversary proceeding (Adv. No. 14-50363).  There, the Court granted summary judgment for the EFIH Debtors and denied the First Lien Trustee's claim for an Applicable Premium.  1L Summ. J. Decision ¶¶ 8, 89-93.[3]  This Court held that once EFIH filed for bankruptcy, the entire outstanding debt was accelerated automatically under the terms of the First Lien Indenture.  *Id.* at ¶ 45.  The First Lien Indenture did not provide for an Applicable Premium, or any other premium, after default automatic and acceleration.  *Id.* at ¶¶ 46-51.  No Optional Redemption occurred under Indenture section 3.07 because the provision for Optional Redemption is inapplicable to mandatory repayment after automatic acceleration.  *Id.* at ¶¶ 52-56.

The Court declined, however, to grant summary judgment on the First Lien Trustee's motion to lift the automatic stay.  The Court ruled that the automatic stay is not automatically lifted when a debtor is solvent.  *Id.* at ¶ 74.  Rather, solvency may in certain cases be a relevant

---

[3] Citations to "1L Summ. J. Decision" refer to Findings of Fact and Conclusions of Law Regarding Cross-Motions for Summary Judgment, No. 14-50363, Adv. D.I. 245 (Mar. 26, 2015).

3

consideration to the lift stay analysis. *Id.* ¶ 74; 1L Stay Decision ¶ 53[4]. From April 20-22, 2015, this Court held an evidentiary hearing regarding whether "cause" existed to lift the automatic stay retroactively and thereby provide the First Lien Noteholders with a claim to a make-whole premium. 1L Stay Decision ¶ 12. On July 8, 2015, this Court issued findings of fact and conclusions of law holding that, based on the governing and undisputed standard, cause does not exist to lift the automatic stay. *Id.* at ¶¶ 13, 87-89. On July 17, 2015, the First Lien Trustee appealed both decisions. No oral argument has been scheduled.

The First Lien Trustee requested that the district court certify its appeal directly to the Third Circuit. First Lien Request, No. 15-620 (D.I. 6). The district court criticized the First Lien Trustee for filing that motion one day after this Court lost jurisdiction to rule on a certification motion under Federal Rule of Bankruptcy Procedure 8006(b). Order, No. 15-620 (D.I. 8). The First Lien Trustee's direct appeal motion was fully briefed on September 4, 2015, but the district court has not ruled, evincing little concern that these issues urgently require the Third Circuit's attention. The district court, however, did approve a briefing schedule, and merits briefing on the appeal in that court is nearly complete.

### B.   Second Lien Decisions On Appeal.

The Second Lien Trustee also seeks an Applicable Premium, but acknowledges that the Court's March 26, 2015 decision precludes most of its potential avenues of relief. Mem. in Support of Summ. J. 1 (D.I. 51-1). The Second Lien Trustee nonetheless argued that, because the language of the Second Lien Indenture's acceleration provision is slightly different, the Court should award the Applicable Premium. *Id.* at 8-13. On October 28, 2015, this Court disagreed, holding that the language of the Second Lien Indenture also does not provide for an Applicable

---

[4] Citations to "1L Stay Decision" refers to the Court's Findings of Fact and Conclusions of Law, No. 14-50363, Adv. D.I. 304 (July 8, 2015), in the adversary proceeding regarding the First Lien Trustee.

Premium upon automatic acceleration after a bankruptcy event of default.  Mem. Op. 10-18 (D.I. 64).  The Court issued a corrected opinion on October 29, 2015, but none of the corrections affect the reasoning or the rulings at issue here.  Mem. Op. (D.I. 65) ("<u>Summ. J. Decision</u>").

The Second Lien Trustee also filed a protective motion to lift the automatic stay.  Mot. (D.I. 5321) ("<u>Stay Motion</u>").  The argument section of the Stay Motion contained a single sentence that adopted the grounds for relief asserted by the First Lien Trustee, which this Court had already rejected, and asserted no other grounds for relief.  *Id.* at 6.  On October 20, 2015, the Court denied the Stay Motion.

On November 2, 2015, the Second Lien Trustee appealed both the Second Lien Summary Judgment Decision and this Court's ruling on the Stay Motion.  That appeal was docketed in the U.S. District Court for the District of Delaware on November 4, 2015 (No. 15-1014).  On November 17, 2015, the Second Lien Trustee filed this request for direct appeal to the Third Circuit under 28 U.S.C. § 158(d)(2).  Request for Certification (D.I. 75) ("<u>Motion</u>").  As with the Second Lien Trustee's summary judgment and stay arguments, the Second Lien Trustee's Motion largely repeats the First Lien Trustee's request for certification pending before the district court.  *Compare* Motion *with* First Lien Request (No. 15-620, D.I. 7).

This Court directed the EFIH Debtors to respond to the Second Lien Trustee's Motion by noon Eastern Time on November 24, 2015.

## ARGUMENT

**I.      None Of The Issues On Appeal Merits Certification To "Create" A Controlling Decision Of Law.**

The Second Lien Trustee's Motion declares, unsurprisingly, that the Third Circuit has not issued a precedential opinion resolving each narrowly drawn and sometimes fact-dependent question resolved by this Court.  Although little appears to have been written describing the

contours of this aspect of the certification standard, there is no indication Congress intended for certification to always be appropriate where any minor issue in an appeal—among many other potential issues—is not foreclosed by controlling Third Circuit or Supreme Court precedent. That approach would qualify essentially all appeals for certification, which cannot be the intent of a narrow statutory exception.  For this reason, to meet the no-controlling-decision standard, an appeal logically must present legal issues of sufficient importance to bypass the required statutory appeals process and seek a definitive pronouncement from the Third Circuit.  *See* 1 *Collier on Bankruptcy* ¶ 5.06[4][a] (16th ed. 2015) ("[T]he language of section 158(d)(2)(A)(i) may be read as imposing a more generalized requirement that resolution of the question will have a broader benefit.").  None of the issues in this appeal does.

### A.     Interpretations Of State Law Are Not Appropriate For Direct Appeal.

The Second Lien Trustee seeks to bypass the district court and go straight to the Third Circuit . . . to then ask the Third Circuit to certify an established issue of New York (not federal) law to the New York Court of Appeals.  Mot. 8-10.[5]  This unusual request should be rejected for three independent reasons.

*First*, direct appeal was not intended for disputes over state law.  Congress provided for the possibility of direct appeals in bankruptcy cases, in part, due to "widespread unhappiness at the paucity of settled ***bankruptcy-law*** precedent."  *Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007) (emphasis added).  There can be little doubt that the Second Lien Trustee's attempt to traverse a circuitous route to the New York Court of Appeals has little to do with bankruptcy law.  "Interpretation of [an] Indenture requires application of state law and is not appropriate for

---

[5] Citations to "Mot." refer to the Motion.

direct appeal to the Third Circuit." *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012); *see* Summ. J. Decision 7-8, 10-11 (applying New York law).

*Second*, even if interpreting the Second Lien Indenture were appropriate for certification, no "controlling decision" is needed. As the Court explained, under the plain terms of the contract, no Applicable Premium is owed. Summ. J. Decision 10-11; *see also* 1L Summ. J. Decision ¶¶ 45-57. The Court's interpretation is soundly grounded in the text of this specific contract, and mere disagreement with a bankruptcy court's decision cannot meet the standard for direct appeal. *In re 15375 Mem'l Corp.*, No. 06-10859, 2008 WL 2698678, at *2 (D. Del. July 3, 2008) (denying direct appeal where an appellant "voices nothing more than a disagreement with the disposition of this case by the bankruptcy court"). Further, ***none*** of the cases the Second Lien Trustee cites holds that the Indenture provides for a make-whole premium.[6] *See* 1L Summ. J. Decision ¶¶ 50-51. A direct appeal seeking further clarity is therefore both inappropriate and unnecessary.

*Third*, the Second Lien Trustee's principal argument for direct certification is that New York law should be different. Mot. 9-10. This wishful thinking is based on two different misconceptions. The Second Lien Trustee argues that courts have wrongly believed that New York's well-settled rule of explicitness is rooted in "public policy." Mot. at 9.[7] It is difficult to see how quibbling over the rationale behind New York's rule of explicitness helps the Trustee satisfy the certification standard. Even so, the quibble is wrong. The Second Lien Trustee cites

---

[6] The only case that even entertained the Second Lien Trustee's argument is *In re Chemtura*, 439 B.R. 561, 601 (Bankr. S.D.N.Y. 2010), which merely approved a proposed settlement of a make-whole claim as falling within "the lowest point in the range of reasonableness."

[7] This argument has not been preserved. The Second Lien Trustee did not raise this point on summary judgment and has therefore waived it. *See* Mem. in Support of Summ. J. 1 (D.I. 51-1); Summ. J. Decision 11 n.31 (describing this argument as "appear[ing] to differ subtly but significantly from [the] primary argument in the briefing"); *DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal." (citation omitted)).

a single case discussing public policy, but having nothing to do with the rule of explicitness for prepayment premiums. *Id.* (citing *In re Southeast Banking Corp.*, 710 N.E.2d 1083, 1086-88 (N.Y. 1999)). It is unsurprising then that the "reasoning [of *Southeast Banking*] does not support the Court's holding here" because that case has nothing to do with this one. *See* Mot. 10. Vague "public policy" prescriptions are not the basis for the rule of explicitness regarding make-whole premiums. As this Court has explained, New York law requires lending agreements expressly to provide for make-whole premiums, which compensate lenders for early repayment of their principal, because a debt cannot be *pre*paid after default and acceleration. Summ. J. Decision 8-9. This commonsense rule of explicitness resolves the tension, if any, between a premium due for prepayment and a compulsory repayment after default and acceleration.

Worse, the Second Lien Trustee asks this Court to reject New York's rule of explicitness based on "the strong presumption in favor of the perfect tender rule." Mot. 10. As this Court has held, the perfect tender rule is subject to modification, as it was in the First Lien Indenture, a ruling the Second Lien Trustee did ***not*** re-argue in its summary judgment motion. 1L Summ. J. Decision ¶¶ 82-84; Mem. in Support of Summ. J. (D.I. 51-1) (stating the March 26, 2015, 1L Summ. J. Decision "represents the law of the case"). The court in *Momentive* agreed, holding that "the existence of the make-whole provision modified the perfect tender rule such that the common law remedy is unavailable." *In re MPM*, 531 B.R. 321, 338 n.13 (S.D.N.Y. 2015). Any alleged "presumption" in favor of the perfect tender rule therefore lends no "support" to the Second Lien Trustee's efforts to re-make New York law.

Nor does the Second Lien Trustee's citation to *In re AMR Corp.*, 730 F.3d 88, 91, 97 (2d Cir. 2013), support its cause. There, the appeal presented a question of *bankruptcy* law—whether an election under Section 1110(a) of the Bankruptcy Code constituted a "deceleration"

of debts—not present in this case.  *See In re AMR Corp*, Adv. Nos. 12-01932, 12-01946, Dkt. No. 6907 (Bankr. S.D.N.Y. Feb. 28, 2013).  Further, the bankruptcy court noted that the issue presented in the appeal would have a significant effect on the successful and timely restructuring of one of the nation's leading airlines.  *Id.*  That is not the case here, where the Debtors' restructuring does not hang on the makewhole dispute and the sixth amended plan of reorganization shortly to be on file assures appellants that reorganized EFH will pay them, if ordered after appeal.

This Court's certification decision in *Downey* also does not help the Second Lien Trustee. There, this Court described a lack of clarity over how bankruptcy law resolved tax refund ownership in bankruptcy courts, a clear issue of federal law.  *See* Mot., Ex. F at 2-3.  Here, by contrast, the Second Lien Trustee expressly seeks certification so that it may then seek certification to New York's highest for a ruling on state law issues.

This Court should decline the Second Lien Trustee's invitation to certify this case for direct appeal based on its novel views of New York law, which find no support in case law and provide no basis to "create" new or different controlling law.

### B.    Automatic Stay Law Is Clear And Was Applied To The Particular Facts Of This Case.

After a three-day evidentiary hearing, this Court applied the well-established standard for lifting the automatic stay under 11 U.S.C. § 362(d)(1), denying the First Lien Trustee's motion. The ruling explained that "[c]ourts are to determine 'cause' based on the totality of the circumstances in each particular case."  1L Stay Decision ¶ 52 (citing *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997)).  It then stated that courts generally consider three factors: (1) whether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the automatic stay; (2) whether the hardship to the non-bankrupt party by maintenance of the

automatic stay considerably outweighs the hardship to the debtor; and (3) the probability of the creditor prevailing on the merits. 1L Stay Decision ¶ 52 (citing *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010)). This Court further explained that solvency is a "relevant consideration in determining whether cause exists to lift the automatic stay" but "is not the sole factor." 1L Stay Decision ¶ 53.

This is an accurate statement of the law. The Second Lien Trustee does not contend that the Court misstated it or that the law should be changed. The Court then held that that no cause existed to lift the automatic stay on the particular facts of this case. *Id.* ¶¶ 13, 88-89. "As many courts have noted, cases that depend on dense layers of factual findings—as this one certainly does—are generally not suitable for immediate appeal under § 158(d)(2)." *WestLB AG v. Kelley*, 514 B.R. 287, 294 (D. Minn. 2014). Instead, "Congress believed direct appeal would be most appropriate where we are called upon to resolve a question of law not heavily dependent on the particular facts of a case . . . ." *Weber*, 484 F.3d at 158. Against this backdrop, the Second Lien Trustee claims that two aspects of this Court's ruling mandate a direct appeal.

### 1.    The Trustee Misunderstands This Court's Ruling.

The Second Lien Trustee argues there is no controlling law on the question of whether the automatic stay can "den[y]" its claim to a make-whole premium. Mot. 10-12. This assertion wrongly presumes that the Indenture's rescission clause is "absolute" and free of all the effects of bankruptcy law. Not so. As the Court held, the rescission clause was not written on a blank slate. "The Trustee and Noteholders here . . . negotiated contract terms that expressly contemplated that a bankruptcy filing by the Issuer (EFIH) was one of many possibilities. The Trustee and Noteholders cannot now argue that the application of the automatic stay, a prominent Code provision that applies in all chapter 11 cases was unexpected." 1L Stay Decision ¶ 84. Quoting *Momentive*, which addressed nearly identical contract language, this

Court ruled that "[t]he potential for an automatic stay and the effect of the Code's automatic acceleration of the Notes upon the filing of a bankruptcy case is a part of the bargain to which the parties agreed."  1L Stay Decision ¶ 83 (quoting *MPM*, 531 B.R. at 338 n.12)).  The sophisticated parties who negotiated the Indenture therefore understood that the automatic stay was part and parcel of the Noteholders' state law right to rescind acceleration, particularly where the Indenture's acceleration provision made explicit reference to bankruptcy as a potential outcome.

The Second Lien Trustee's discussion of how the Bankruptcy Code allows or disallows claims is therefore irrelevant.  Mot. 11.  The Code did not disallow the Second Lien Trustee's claim.  The parties' contract language did not give rise to a claim in the first instance.  As this Court explained, an "indenture might provide for payment of a make-whole claim in a manner that does not implicate the automatic stay."  *See* 1L Stay Decision ¶ 88.  But the First Lien Indenture, like the Second Lien Indenture, did not.  *Id.*  "Under the facts of this case, . . . the Trustee must obtain relief from the automatic stay for the Applicable Premium to be due and owing . . . and there is insufficient cause for the Court to lift the stay."  *Id.*

## 2.    Solvency's "Relative Significance" Is Already Established.

The Second Lien Trustee also claims to seek a controlling decision on just how important solvency is to the question of whether to lift the automatic stay.  Mot. 11-12.  But there already is controlling law on this question.  As this Court explained in its First Lien Stay Decision, solvency is a "relevant consideration in determining whether cause exists to lift the automatic stay" but "is not the sole factor."  1L Stay Decision ¶ 53.  The Second Lien Trustee does not dispute that the lift-stay standard is, as this Court correctly held, "based on the totality of the circumstances in each particular case."  Mot. 13 (quoting *In re Wilson* 116 F.3d 87, 90 (3d Cir. 1997)).  And this Court applied this standard when it held that cause did not exist to lift the

11

automatic stay.  1L Stay Decision ¶¶ 52-53, 87.  Perhaps the Second Lien Trustee disagrees with the way the Court weighed the relevant factors in the First Lien Stay Decision, but "[s]imply disputing the application of . . . [other] cases to the facts in the case at bar does not satisfy subsection [158(d)(2)(A)](i)."  *In re MPF Holding U.S. LLC*, 444 B.R. 719, 726 (Bankr. S.D. Tex. 2011); *see also Mem'l Corp.*, 2008 WL 2698678, at *2 (denying direct appeal where an appellant "voices nothing more than a disagreement with the disposition of this case by the bankruptcy court").  It is hard to understand what additional clarity the Third Circuit could provide to a totality of the circumstances test.

Rather than seeking a controlling decision on the "relative significance of the debtors' solvency," the Second Lien Trustee appears to reargue, as the First Lien Trustee has unsuccessfully argued and is now rearguing on appeal, that the automatic stay should be automatically lifted whenever a debtor is solvent.  Mot. 12-13.  But in the solvent-debtor cases the Trustee cites, courts weighed the relevant circumstances, as the Court did here, before deciding whether to lift the stay.  *See* Mot. 12.  None of the Second Lien Trustee's cited cases holds that solvency provides a *per se* basis to lift the automatic stay.  1L Summ. J. Decision ¶ 74.  Further, if this were the law (and it is not), the stay would always be lifted for solvent debtors, 1L Stay Decision ¶ 61, yet the automatic stay protects solvent and insolvent debtors alike, *see* 11 U.S.C. §§ 109, 301 (placing no restrictions on solvent entities from becoming debtors); *id.* at § 362 (same for the automatic stay).  In any event, the Trustee's mere disagreement with this Court's findings of fact and application of the stay standard is not a sufficient basis to grant a direct appeal.

None of the lift-stay cases cited by the Trustee compel that illogical result.  In *Premier Automotive* the court expressly found that the debtor filed in bad faith.  *In re Premier Auto.*

*Servs., Inc.*, No. 05-20168, 2006 WL 4711334, at *7 (Bankr. D. Md. June 14, 2006), *amending* 343 B.R. 501 (Bankr. D. Md. 2006).  In *Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir. 1994), the Fourth Circuit held that "the debtor's decision to file bankruptcy appears to be just another tactical move to delay further Mixson's recovery" on a judgment awarding her a share of marital property.  The Trustee also cites *In re Novak*, 103 B.R. 403 (Bankr. E.D.N.Y. 1989), where the court held that "[e]ntering into the Court's decision to lift the stay are the doubts it entertains as to the Novaks' good faith in filing under Chapter 12."  *Id.* at 413.  The Trustee has not alleged and cannot show that the EFIH Debtors filed for bankruptcy protection in bad faith.  In fact, this Court ruled that EFIH did not file with the intent to avoid the Applicable Premium, and the Trustee does not challenge that holding here.  1L Summ. J. Decision ¶¶ 58-61.

*Texaco* also does not stand for the proposition that the stay automatically should be lifted where the debtor is solvent, nor that the stay should be lifted to ***increase*** a creditor's claim.  *See In re Texaco, Inc.*, 81 B.R. 804 (Bankr. S.D.N.Y 1988).  There, the bankruptcy court permitted the creditor to serve an acceleration notice (not a deceleration notice) for notes that did not contain an automatic acceleration provision.  *Id.* at 805.  The lending agreement permitted the debtor to lower the interest rate under certain circumstances.  *Id.*  The purpose of the notice was to "lock in" a higher interest rate in effect at the time of the petition to prevent the debtor from reducing the interest rate by the normal operation of the contract.  *Id.*  The court did so based on its discretionary assessment, not a legal conclusion, that the debtor's attempt to lower the interest rate, post-petition, was an "aggressive action."  *Id.* at 806.

The Second Lien Trustee also cites *Armstrong*, but that opinion similarly provides no indication that solvency is a *per se* basis to lift the automatic stay.  Mot. 13 (citing *In re Armstrong World Indus.*, 106 F. App'x 785 (3d Cir. 2004).  The short district court order

attached to the Motion states without discussion that no undue prejudice would occur to the debtor there.  Mot. Ex. G at A11.  The Third Circuit's affirmance provides no further discussion. *Armstrong*, 106 F. App'x at 787.  *Armstrong* and the other cases cited therefore provide little basis to establish a new *per se* rule that the automatic stay should always be lifted when a debtor is solvent.

Finally, the Second Lien Trustee's assertion that "no other creditor would be affected by paying" the Applicable Premium is belied by the unchallenged factual record.  Mot. 13.  EFIH is wholly-owned by EFH, another major debtor in these cases.  1L Stay Decision ¶ 65.  EFH in turn has creditors who, under the current proposed plan of reorganization, will be receiving a distribution of assets in the form of payment in full in cash or reinstatement.  *See* Fifth Amended Plan, No. 14-10979, D.I. 6122, Art. III.B.  Under this same plan, the ultimate shareholders of EFH will receive nothing.  *Id.* at Art. III.B.15.  Therefore, in this complex and interdependent case, there is no return to any ultimate equity holder, only a return to other creditors.  It is simply common sense (and not substantive consolidation) that higher claim amounts at EFIH make reorganization of EFIH, EFH, and all other Debtors more difficult, given a finite amount of money available to satisfy all claims at issue in these jointly administered cases.  1L Stay Decision ¶ 65.  One of the purposes of the automatic stay is to "avoid interference with the orderly . . . rehabilitation of the debtor."  *In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009).  As this Court found, the risk to the ongoing plan of reorganization redounds directly to the detriment of EFIH's restructuring efforts.  1L Stay Decision ¶ 65.

## II.    There Are No Conflicts To Resolve From Within This Circuit.

Direct appeal to the Third Circuit is not necessary to resolve any conflicting decisions. *See* 28 U.S.C. § 158(d)(2)(A)(ii).  This is true for two reasons:  no decision conflicts with this

Court's decision, and, even if a conflict did exist, decisions from courts in other Circuits are not relevant to this standard.

### A.    No Decision Conflicts With This Court's Opinions.

The Trustee asserts that three aspects of this Court's decisions conflict with decisions of other courts, though none actually does. *First*, none of the make-whole decisions from different circuits conflicts with the decision here. *Momentive*, *Solutia*, *Calpine*, and *Premier*, each found that language identical or nearly identical the Second Lien Indenture was not sufficient to trigger a make-whole premium. These cases all squarely contradict the Trustee's position, and do not conflict with this Court's decision.[8] The only allegedly conflicting case the Second Lien Trustee cites is *Chemtura*, but that case has an expressly narrow application because it merely approved a settlement of a make-whole. The *Chemtura* court recognized that it "need not conduct an independent investigation into the reasonableness of the settlement but must only 'canvass the issues and see whether the settlement falls below the lowest point in range of reasonableness.'" *Chemtura*, 439 B.R. at 594 (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)). Further, *Chemtura* did not even address the crucial language of the acceleration provision, *Chemtura* 439 B.R. at 601, which is the operative and essential language under governing New York law, 1L Summ. J. Decision ¶¶ 45-48. The Second Lien Trustee's assertion that "considerable uncertainty in the law regarding the enforceability of make-whole provisions in bankruptcy," Mot. 14, is therefore entirely unsupported. There is no uncertainty at all.

*Second*, the automatic stay did not bar the Trustee's claim. *See* Mot. 15. As discussed above, these sophisticated parties contracted for a right to rescind the automatic acceleration

---

[8] *See* 1L Summ. J. Decision ¶ 50-51 (discussing *In re MPM Silicones, LLC*, No. 14-22503-RDD, 2014 WL 4436335, at *13-14 (Bankr. S.D.N.Y. Sept. 9, 2014) *aff'd*, 531 B.R. 321 (S.D.N.Y. 2015); *HSBC Bank USA, N.A. v. Calpine Corp.*, No. 07-3088, 2010 WL 3835200, at *4-*5 (S.D.N.Y. Sept. 15, 2010); *In re Solutia Inc.*, 379 B.R. at 488; *In re Premier Entm't Biloxi LLC*, 445 B.R. 582, 626-32 (Bankr. S.D. Miss. 2010)).

resulting from a bankruptcy-caused default with the understanding that the automatic stay would prevent the Noteholders from exercising this right. These sophisticated Noteholders therefore knew, or should have known, that the only way to rescind acceleration in bankruptcy was to successfully lift the automatic stay. The need to lift the stay was part and parcel of their claim, and as this Court held, no cause existed to lift the automatic stay. Further the Second Lien Trustee cites no case where the automatic stay was lifted to permit rescission in bankruptcy. *In re Stephan*, 588 F. App'x 143 (3d Cir. 2014) (unpublished) addresses the more common scenario of foreclosure proceedings, not the right to rescind acceleration, and accordingly this Court had no reason to "reconcile" that inapposite case with its decision. *See* Mot. 15.

*Third*, the Second Lien Trustee asserts that a "*potential* conflict" may exist between the Court's stay decision and stay decisions from courts in other circuits. Mot. 16 (emphasis added). None does. The Second Lien Trustee invokes the same four cases that the First Lien Trustee has previously cited, where courts assessed the totality of the circumstances, including the debtor's solvency, and determined on the facts of those cases that the stay should be lifted.[9] In other words, courts in those cases applied a discretionary standard, and based on the facts of those cases—none of which included an alleged right to rescind acceleration in bankruptcy—the courts reached different results.

This is not a legal conflict. None of those cases applied a conflicting legal standard. None of these cases stands for the proposition that the automatic stay should always be lifted where a debtor is solvent. 1L Summ. J. Decision ¶ 74 ("These cases do not stand for the proposition that a debtor's solvency is, as a matter of law, cause to lift the automatic stay."). And none of these cases conflicts with this Court's decision—nor do they even threaten a

---

[9] *See* Mot. 12-13, 15 (citing *In re Texaco, Inc.*, 81 B.R. 804, 805-06 (Bankr. S.D.N.Y. 1988); *Claughton v. Mixson*, 33 F.3d 4, 5-6 & nn.2, 4 (4th Cir. 1994); *In re Premier Auto. Servs., Inc.*, 343 B.R. 501, 521 (Bankr. D. Md. 2006), *aff'd*, 492 F.3d 274 (4th Cir. 2007); *In re Novak*, 103 B.R. 403, 413-15 (Bankr. E.D.N.Y. 1989)).

"potential conflict"—based on a differing assessment of "the relative significance" of solvency. *See* Mot. 16.  Accordingly, no legal conflict exists between this Court's decision and these other allegedly conflicting cases.

### B.  Any "Conflicting Decisions" Must Be From Within This Circuit.

The Trustee incorrectly assumes, without citation, that any "conflicting decision" from any court is sufficient to mandate direct appeal.  *See* Mot. 14-16.  This is the wrong standard. "When § 158(d)(2) refers to 'conflicting decisions,' it means conflicting decisions *within the same circuit*."  *WestLB AG v. Kelley*, 514 B.R. 287, 294 (D. Minn. 2014) (emphasis in original); *see also In re Gen. Motors Corp.*, 409 B.R. at 29 ("[D]ecisions from *outside* the Circuit are not a basis for § 158(d)(2) review."  (emphasis in original)); 1 *Collier on Bankruptcy* ¶ 5.06[4][c] (16th ed. 2015) (stating that the conflicting decisions "would have to exist within the particular circuit.").  This makes perfect sense.  The Third Circuit cannot resolve a conflict (if there were any, which there are not) between a decision from this Court and decisions from courts in another circuit.  The Trustee's citation to make-whole decisions, Mot. 16-17, and stay decisions, Mot. 12, from courts in other circuits are not relevant to whether a conflict exists that a direct appeal could expeditiously resolve.

### III.  Issues That Only Affect Parties To This Bankruptcy Are Not Matters Of Public Importance.

This is a dispute between creditors on the one hand, and EFIH on the other hand—not "a matter of *public* importance."  *See* 28 U.S.C.§ 158(d)(2)(A)(i) (emphasis added).  "An appeal that impacts only the parties, and not the public at large is not 'a matter of public importance.'" *In re Nortel*, No. 09-10138, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010) (citing *Reorganized Debtors ex rel. Goody's Family Clothing, Inc. v. Blue Dog Props. Trust (In re Goody's Family Clothing Inc.)*, No. 09-409, 2009 WL 2355705, at *2 (D. Del. July 31, 2009)).

"The bar for certification under [the public importance] standard should be set high." 1 *Collier on Bankruptcy* ¶ 5.06[4][b] (16th ed. 2015). An appeal is "of public importance" only when the appeal "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *Am. Home Mortgage*, 408 B.R. 42, 44 (D. Del. 2009); *see also In re City of Detroit, Mich.*, 504 B.R. 191 (Bankr. E.D. Mich. 2013) (finding that the question whether the City of Detroit was eligible to be a debtor under Chapter 9 is a "matter of public importance" and certifying direct appeal).

Although this dispute concerns a significant amount of money, it is a dispute between EFIH and a limited number of creditors over the interpretation of a contract under New York law and the application of the established lift-stay standard to the facts of this case. At most, this dispute may also affect the First Lien Noteholders, who have already appealed this Court's ruling on their Notes and have themselves sought direct appeal from the district court. But even where "the amount of settlement is plainly substantial and the number of potential claims is large," certification will be denied when the issues are ultimately a matter of "private contract dispute." *In re Johns-Manville Corp.*, 449 B.R. 31, 33-34 (S.D.N.Y. 2011); *see also In re Gen. Motors Corp.*, 409 B.R. 24, 28–29 (Bankr. S.D.N.Y. 2009) (denying certification where an issue was "undoubtedly . . . important to the individual litigants" but not to the public at large).

The Second Lien Trustee nonetheless asserts that this is a "recurring issue" and therefore a matter of public importance. Mot. 17. Although make-whole provisions are common, the Trustee cites no evidence, and this Court found none, that the specific language in *this* make-whole provision is pervasive in the high-yield debt market. Further, the First Lien Trustee's testifying experts admitted that none of them bothered to canvas or review indenture *acceleration* provisions. 1L Stay Decision ¶ 81. Even if this language were pervasive, a number

18

of cases have uniformly determined that it does not provide for a make-whole premium after automatic acceleration.  1L Summ. J. Decision ¶¶ 50-51.  Surely high-yield financing markets are already aware of the need to draft indentures with more specificity if private parties intend to achieve different results.  An expedited decision on this same issue, regardless of the result, will not provide new guidance to the financing industry, much less the public at large.[10]

The Second Lien Trustee also re-asserts that the "effect of a debtor's solvency on the lift-stay analysis" must be decided on an expedited basis—this time because it is allegedly a matter of public importance.  Mot. 15.  As explained above, there are no new questions to be decided here.  The standard is clear—solvency is a factor to be considered as part of that balancing standard, which is precisely what this Court did here.  1L Stay Decision ¶ 53; 1L Summ. J. Decision ¶ 74.  The Second Lien Trustee's desire to seek a decision changing the law in its favor does not merit expedited appeal.  Because the Second Lien Trustee "does not explain how the resolution of the issues on appeal would advance the development of the law to an unusual degree, or impact the public at large . . . direct appeal is not appropriate on the basis that this appeal involves a matter of public importance."  *Mark IV Indus., Inc. v. New Mexico Env't Dep't,* 452 B.R. 385, 390 (S.D.N.Y. 2011).

## IV.    Direct Appeal Will Not Advance The Underlying Chapter 11 Reorganization.

Finally, the Second Lien Trustee asserts the truism that this specific litigation will be resolved faster if it can bypass the district court.  Mot. 17 (citing 28 U.S.C. § 158(d)(2)(A)(iii)).  This is not the governing standard, however.  "This argument would apply to almost every case

---

[10] The Second Lien Trustee states that "the enforceability of make-wholes in bankruptcy is a commonly presented and hotly contested issue."  Mot. 1.  This obscures the essential issue on appeal:  whether the Noteholders have a right to a make-whole provision under the terms of the Indenture itself.  Make-whole protections have been found to be enforceable in bankruptcy when contracts provide for them.  1L Summ. J. Decision ¶ 48 (citing examples of cases where contracts provided for make-whole protections after default and acceleration).  Whether a make-whole premium is owed is an issue of state law, not bankruptcy.

or proceeding where both sides are determined to fully pursue all appeals of right." *Faulkner v. Kornman*, No. MISC. 10-301, 2012 WL 293230, at *4 (Bankr. S.D. Tex. Jan. 30, 2012). "If the mere expectation of advancement to a circuit court was sufficient to establish material advancement, Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review process altogether." *In re Lehman Bros. Inc.*, No. 13-5381, 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013). Tautologically, "the argument that immediate appeal now, as opposed to appeal later, is more expeditious could be made in nearly all cases." *Ritchie Capital Mgmt., L.L.C. v. Stoebner*, No. 12-3038, 2013 WL 2455981, at *4 (D. Minn. June 6, 2013). "If valid, the argument would eliminate appeals to the District Court, contrary to the statement by the Court of Appeals that the normal appellate process should proceed so that the Court of Appeals is provided with the views of the District Court to aid in the fair decision of the appeal." *Johns-Manville*, 449 B.R. at 34 (discussing *Weber*, 484 F.3d at 160). The Second Lien Trustee therefore cannot be right that this appeal should take an exceptional route directly to the Third Circuit merely because the appeal "inevitably" will end up there.

Instead, certification may be appropriate where a debtor received its Chapter 7 discharge over a year and a half earlier. *In re Rodriguez*, 513 B.R. 767, 770 (Bankr. S.D. Fla. 2014). The Second Lien Trustee cites cases, however, where the parties agreed to a certification, *In re MPF Holding*, 444 B.R. at 727-28, or where certification was denied, *Weber*, 484 F.3d at 161. This chapter 11 reorganization will proceed irrespective of this appeal. This isolated piece of litigation arising from within the broader proceedings will not alter the timing or course of the reorganization, nor has the Trustee shown that it will.

## CONCLUSION

For the foregoing reasons, the Second Lien Trustee's Request For Certification Of Direct Appeal To the Court of Appeals Under 28 U.S.C. § 158(d)(2) should be denied.

Dated: November 24, 2015      _____*/s/ Jason M. Madron*_____
          Wilmington, Delaware      **RICHARDS, LAYTON & FINGER, P.A.**
                                    Mark D. Collins (No. 2981)
                                    Daniel J. DeFranceschi (No. 2732)
                                    Jason M. Madron (No. 4431)
                                    920 North King Street
                                    Wilmington, Delaware 19801
                                    Telephone:     (302) 651-7700
                                    Facsimile:     (302) 651-7701
                                    Email:         collins@rlf.com
                                                   defranceschi@rlf.com
                                                   madron@rlf.com

                                    -and-

                                    **KIRKLAND & ELLIS LLP**
                                    **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                    Edward O. Sassower, P.C. (admitted *pro hac vice*)
                                    601 Lexington Avenue
                                    New York, New York 10022-4611
                                    Telephone:     (212) 446-4800
                                    Facsimile:     (212) 446-4900
                                    Email:         edward.sassower@kirkland.com

                                    -and-

                                    James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
                                    Andrew R. McGaan (admitted *pro hac vice*)
                                    Marc Kieselstein, P.C. (admitted *pro hac vice*)
                                    Chad J. Husnick (admitted *pro hac vice*)
                                    Steven N. Serajeddini  (admitted *pro hac vice*)
                                    300 North LaSalle
                                    Chicago, Illinois 60654
                                    Telephone:     (312) 862-2000
                                    Facsimile:     (312) 862-2200
                                    Email:         james.sprayregen@kirkland.com
                                                   amcgaan@kirkland.com
                                                   marc.kieselstein@kirkland.com
                                                   chad.husnick@kirkland.com
                                                   steven.serajeddini@kirkland.com

                                    Co-Counsel to the Debtors and Debtors in Possession