**<u>Exhibit A</u>**

**EFIH PIK Settlement Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER APPROVING SETTLEMENT OF CERTAIN EFIH PIK
NOTEHOLDER CLAIMS AND AUTHORIZING DEBTORS TO
ENTER INTO AND PERFORM UNDER STIPULATIONS**

Upon (a) the *Second Amended Notice of Settlement of EFIH PIK Note Claims With Certain EFIH PIK Noteholders* [D.I. 6918] filed by of the above-captioned debtors and debtors in possession (the "Debtors") and the Debtors' request (the "Initial PIK Requested Relief") that this Court enter an order (this "EFIH PIK Settlement Order"), (i) approving the Stipulation, attached hereto as Exhibit 1 (the "Initial PIK Stipulation"), by and among (A) the Debtors and (B) certain beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders (collectively, the "Initial Settling EFIH PIK Noteholders") of the 11.25%/12.25% senior toggle notes due December 1, 2018 (the "EFIH PIK Notes"), issued pursuant to that certain Indenture (as supplemented and/or amended, the "EFIH PIK Notes Indenture") dated as of December 5, 2012, by and among, *inter alia*, the EFIH Debtors, as issuers, and UMB Bank, N.A., as successor indenture trustee to The Bank of New York Mellon Trust Company, N.A. (the "EFIH PIK Notes Trustee"); and (ii) authorizing the Debtors and the EFIH PIK Notes Trustee, as applicable, to take any and all actions reasonably

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

necessary to consummate, and to perform any and all obligations contemplated by the Initial PIK Stipulation, and (b) the *Third Amended Notice of Settlement of EFIH PIK Note Claims With Certain EFIH PIK Noteholders* [D.I. 7117] filed by the Debtors and the Debtors' request (the "Subsequent PIK Requested Relief" and together with the Initial PIK Requested Relief, the "Requested Relief") that this Court (i) approve the Stipulation, attached hereto as Exhibit 2 (the "Subsequent PIK Stipulation" and together with the Initial PIK Stipulation, the "Stipulations"),[2] by and among (A) the Debtors and (B) certain beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders of the EFIH PIK Notes (collectively, the "Subsequent Settling EFIH PIK Noteholders" and together with the Initial Settling EFIH PIK Noteholders, the "Settling EFIH PIK Noteholders"); and (ii) authorizing the Debtors and the EFIH PIK Notes Trustee, as applicable, to take any and all actions reasonably necessary to consummate, and to perform any and all obligations contemplated by the Subsequent PIK Stipulation; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Requested Relief is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Requested Relief and the opportunity for a hearing on the Requested Relief under the circumstances; and the Court having reviewed the Stipulations and having heard the statements in support of the Requested Relief at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Requested Relief

---

[2]    All capitalized terms used but not otherwise defined in this EFIH PIK Settlement Order shall have the meanings ascribed to them in the Stipulations.

and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Requested Relief is **GRANTED** as set forth herein, and any objections to the Requested Relief not previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby overruled with prejudice.

2.      Pursuant to Fed. R. Bankr. P. 9019(a), the Stipulations, true and correct copies of which are attached hereto as Exhibit 1 and Exhibit 2, and the settlements and compromises set forth therein are hereby approved in their entirety, and all of the terms of the Stipulations are incorporated herein by reference and upon entry of this EFIH PIK Settlement Order are fully binding, effective, and enforceable as to each of the parties to the Stipulations, and this EFIH PIK Settlement Order shall be final, binding and effective on all parties in interest in the Debtors' Chapter 11 Cases (including any subsequently appointed chapter 11 or chapter 7 trustee).

3.      The EFIH PIK Note Claims held by the Initial Settling EFIH PIK Noteholders shall be Allowed for purposes of the Plan and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFIH PIK Notes held by the Initial Settling EFIH PIK Noteholders, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all set forth in the EFIH PIK Notes Indenture; and (b) 57.5% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture through

the Effective Date of the Plan, but not including for the avoidance of doubt any Makewhole Claims. The Initial Settling EFIH PIK Noteholders who executed the Initial PIK Stipulation and that certain direction of holders of a majority of the aggregate principal amount of the EFIH PIK Notes dated November 9, 2015 (the "November 9th Direction Letter"), a copy of which is attached hereto as Exhibit 3 (excluding exhibits thereto), shall receive upon consummation of the Plan a consent fee equal to 2.5% of unpaid postpetition interest accrued at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture through the effective date of the Plan with respect to the EFIH PIK Notes held by such Initial Settling EFIH PIK Noteholders as of October 30, 2015.

4.    The EFIH PIK Note Claims held by the Subsequent Settling EFIH PIK Noteholders as of the date the Subsequent Settling EFIH PIK Noteholders execute the Subsequent PIK Stipulation ("Subsequent PIK Stipulation Execution Date") shall be Allowed for purposes of the Plan and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFIH PIK Notes held by the Subsequent Settling EFIH PIK Noteholders, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all set forth in the EFIH PIK Notes Indenture through the Effective Date of the Plan, but not including any Makewhole Claims.

5.      The EFH Legacy Note Claims held by the Subsequent Settling EFIH PIK Noteholders as of the Subsequent PIK Stipulation Execution Date shall be Allowed for purposes of the Plan and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of the EFH Legacy Notes held by the Subsequent Settling EFIH PIK Noteholders, plus accrued but unpaid prepetition interest at the non-default contract rate (including any PIK Interest, Additional Interest and interest on interest, as applicable) set forth in the EFH Legacy Note Indentures, and (b) postpetition interest at the Federal Judgment Rate through the Effective Date of the Plan, but not including any Makewhole Claims.

6.      The EFH LBO Note Claims held by the Subsequent Settling EFIH PIK Noteholders as of the Subsequent PIK Stipulation Execution Date shall be Allowed for purposes of the Plan and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFH LBO Notes held by the Subsequent Settling EFIH PIK Noteholders, plus accrued but unpaid prepetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture, and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture through the Effective Date of the Plan, but not including any Makewhole Claims.  The Subsequent Settling EFIH PIK Noteholders will only be entitled to a single recovery with respect to the EFH LBO Notes and related guarantees.

7.      The EFH Unexchanged Notes held by the Subsequent Settling EFIH PIK Noteholders as of the Subsequent PIK Stipulation Execution Date shall be Allowed for purposes

of the Plan and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFH Unexchanged Notes held by the Subsequent Settling EFIH PIK Noteholders, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures through the Effective Date of the Plan, but not including any Makewhole Claims.

8.      The EFIH Second Lien Note Claims held by the Subsequent Settling EFIH PIK Noteholders as of the Subsequent PIK Stipulation Execution Date shall be Allowed for purposes of the Plan and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFIH Second Lien Notes held by the Subsequent Settling EFIH PIK Noteholders, plus accrued but unpaid prepetition interest thereon, including any Additional Interest and interest on interest, as applicable, at the applicable non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, and (b) accrued but unpaid postpetition interest, including any Additional Interest and interest on interest, as applicable, on such principal at the non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all

related agreements, as applicable, through the Effective Date of the Plan, but not including any

Makewhole Claims.

9.      The parties to the Stipulations are authorized to execute, deliver, implement, and

fully perform any and all obligations, instruments, documents, and papers and to take any and all

actions reasonably necessary or appropriate to consummate, complete, execute, and implement

the Stipulations in accordance with the terms and conditions thereof, and the Debtors (with,

during the Plan Support Effective Period, the consent of the Required Investor Parties) are

authorized, without further order of the Court, to settle and compromise the EFIH PIK Note

Claims of holders who are not Settling EFIH PIK Noteholders (the "Non-Settling EFIH PIK

Noteholders") as of the date of this order, claims of holders of EFH Legacy Notes ("EFH Legacy

Noteholders"), claims of holders of EFH LBO Notes ("EFH LBO Noteholders"), claims of

holders of EFH Unexchanged Notes ("EFH Unexchanged Noteholders"), and claims of holders

of the 9.75% Senior Notes due 2019 (the "EFIH Unexchanged Noteholders") on terms that are

the same or less favorable to such Non-Settling EFIH PIK Noteholders, EFH Legacy

Noteholders, EFH LBO Noteholders, EFH Unexchanged Noteholders, and EFIH Unexchanged

Noteholders than those set forth in the Stipulations.

10.      Notwithstanding anything contained in the EFIH PIK Notes Indenture or the

Plan, all distributions to the Settling EFIH PIK Noteholders pursuant to the Plan shall be made

directly to the EFIH PIK Notes Trustee, and the EFIH PIK Notes Trustee shall make all

distributions to the Settling EFIH PIK Noteholders with respect to the EFIH PIK Notes under

the Plan, and it shall make such distributions consistent in all respects with this EFIH PIK

Settlement Order, the Stipulations, the November 9th Direction Letter, that certain direction of

holders of a majority of the aggregate principal amount of the EFIH PIK Notes dated November

24, 2015 (the "November 24th Direction Letter" and, together with the November 9th Direction Letters, the "Direction Letters"), a copy of which is attached hereto as Exhibit 4 (excluding exhibits thereto), and all money or property held or collected by the EFIH PIK Notes Trustee with respect to the EFIH PIK Notes held by the Settling EFIH PIK Noteholders shall be held in trust to pay principal and interest on those particular EFIH PIK Notes in accordance with this EFIH PIK Settlement Order, the Stipulations, the Plan and the Direction Letters, provided, however, subject to paragraph 11 of this EFIH PIK Settlement Order, nothing in this EFIH PIK Settlement Order shall impair, waive or extinguish any rights of the EFIH PIK Notes Trustee to use any such money or property held or collected with respect to the EFIH PIK Notes held by the Settling EFIH PIK Noteholders to secure the payment of, or to pay, the obligations of the Debtors to the EFIH PIK Notes Trustee under Sections 6.12, 6.13 and 7.07 of the EFIH PIK Notes Indenture; provided further, however, that, unless the Plan is not consummated, the EFIH PIK Notes Trustee shall not seek payment by or recovery from the Debtors or their estates with respect to any fees or expenses of the EFIH PIK Notes Trustee that may be recovered from money or property held or collected by the EFIH PIK Notes Trustee under Sections 6.12, 6.13 and 7.07 of the EFIH PIK Notes Indenture with respect to the EFIH PIK Notes held by the Settling EFIH PIK Noteholders. Nothing contained in this EFIH PIK Settlement Order shall limit or impair the right of the Trustee to seek payment by or recovery from the Debtors or their estates with respect to any fees or expenses of the EFIH PIK Notes Trustee with respect to the EFIH PIK Notes held by the Non-Settling EFIH PIK Noteholders.

11.    In accordance with the Direction Letters, all money or property held or collected by the EFIH PIK Notes Trustee with respect to the EFIH PIK Notes held by the Settling EFIH PIK Noteholders shall not be used to secure the payment of, or to pay, the fees and expenses of

the EFIH PIK Notes Trustee under Sections 6.12, 6.13 and 7.07 of the EFIH PIK Notes Indenture (the "Charging Lien") incurred or arising on or after entry of this EFIH PIK Settlement Order in connection with seeking the allowance or payment of postpetition interest, any Makewhole Claims or any Subsequent PIK Claim Objections (as defined herein); provided that the foregoing paragraph shall not apply (i) to any EFIH PIK Notes held by a Settling EFIH PIK Noteholder with respect to which the applicable Stipulation is terminated, or (ii) in the event the Plan is not consummated.

12.    The EFIH PIK Notes Trustee and the Settling EFIH PIK Noteholders are authorized to comply with the terms of the Direction Letters (subject to the provisions therein), and upon entry of this EFIH PIK Settlement Order and satisfaction of the conditions in the Direction Letters, the EFIH PIK Notes Trustee shall dismiss, upon the terms set forth in the Direction Letters, its objections to the Plan, the *Motion of Energy Future Holdings Corp.,* et al*., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [Docket No. 5249] (the "Global Settlement Motion") and the EFIH PIK Note Claims Settlement. Notwithstanding any other provision herein or in the Direction Letters, the EFIH PIK Notes Trustee waives any and all right to appeal, seek reconsideration of, or otherwise challenge the Court's ruling made at the hearing held before the Court on November 2, 2015 denying the request of the EFIH PIK Notes Trustee to permit Non-Settling EFIH PIK Noteholders to be substituted for the EFIH PIK Notes Trustee with respect to its objections to the Plan and the Global Settlement Motion.

13.    Notwithstanding any other provision herein or in the Stipulations, the Debtors and the Plan Sponsors (a) waive any and all right to argue that Non-Settling EFIH PIK Noteholders lack standing to (i) raise and pursue appeals and proceedings related thereto (the

"Appeals") of this Court's decisions dated October 30, 2015 [D.I. 6781, 6782] with respect to the allowance or payment of postpetition interest or Makewhole Claims, and (ii) be heard in any proceeding in this Court relating to the Non-Settling EFIH PIK Noteholders' entitlement, if any, to postpetition interest on equitable bases (which, if litigated, shall be litigated separate and apart from confirmation of the Plan and approval of the Global Settlement Motion) as set forth in the Court's opinion dated October 30, 2015 [D.I. 6782]; (b) acknowledge that the EFIH PIK Notes Trustee may participate as a nominal party to any proceeding referenced in (a)(i) above solely for purposes of preserving appellate jurisdiction, with such costs (other than in respect of Appellate Suspension Costs (as defined in the November 24th Direction Letter)) to be borne solely by the Non-Settling EFIH PIK Noteholders; provided, however, that all other rights of all parties with respect to any such litigation or Appeals referenced in this paragraph are reserved. In addition, the Settling EFIH PIK Noteholders agree that they will not direct the EFIH PIK Notes Trustee to stand down on any future objections to the Non-Settling EFIH PIK Noteholders' claims brought by the Debtors or other parties interest (the "Subsequent PIK Claim Objections").

14.    This EFIH PIK Settlement Order is without prejudice to the rights of UMB Bank, N.A. (the "EFIH Unexchanged Notes Trustee"), as successor indenture trustee to The Bank of New York Mellon Trust Company, N.A. under the indenture (the "EFIH Unexchanged Notes Indenture") for the 9.75% Senior Notes due 2019 (the "EFIH Unexchanged Notes"); provided, however, that based on the agreement of the Debtors and the Plan Sponsors that claims arising out of the EFIH Unexchanged Notes shall be allowed on terms that are the same or no less favorable than the claims of the Non-Settling EFIH PIK Noteholders with respect to the EFIH PIK Notes, the EFIH Unexchanged Notes Trustee shall not initiate or pursue any litigation with

respect to the EFIH Unexchanged Notes or the EFIH Unexchanged Notes Indenture unless the Plan is not consummated.

15.    The relief set forth in this paragraph shall be subject to entry of (i) an order of this Court approving the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 5249], including approval of the payment of fees and expenses as set forth thereunder and (ii) a further order of this Court approving the Charging Lien Advance, which order shall be in form and substance reasonably acceptable to the Debtors, the EFIH PIK Notes Trustee, and (during the Plan Support Effective Period) the Plan Sponsors.  In consideration of the Stipulations and entry of the EFIH PIK Settlement Order and subject to further Court order approving the Charging Lien Advance, the EFIH Debtors shall advance to the EFIH PIK Notes Trustee funds in an amount sufficient to cover the Charging Lien obligations of the Holders of the EFIH PIK Notes, as set forth in Sections 6.12, 6.13 and 7.07 of the EFIH PIK Notes Indenture, through and including the date of the entry of this EFIH PIK Settlement Order (the "**Charging Lien Advance**").  The Charging Lien Advance shall be treated as a permanent dollar-for-dollar satisfaction and reduction of the amount owed with respect to Allowed EFIH PIK Note Claims on a ratable basis for all purposes in these cases, including under the Plan, an Alternative Restructuring, or any other chapter 11 plan; *provided, however*, for the avoidance of doubt, (i) if the Plan is consummated, interest shall continue to accrue at the rates agreed to by the Settling EFIH PIK Noteholders and, for the non-Settling EFIH PIK Noteholders, as ordered by the Court, on the full outstanding obligations owed in respect of the EFIH PIK Notes, as calculated pursuant to the terms of the EFIH PIK Notes Indenture, notwithstanding application of the Charging Lien Advance and (ii) if the Plan is not consummated, all parties' rights are

reserved regarding the characterization of the Charging Lien Advance as payment of principal, interest, or fees; *provided further, however*, upon entry of an order approving any future plan of reorganization or liquidation of EFIH that provides a recovery to the Holders of such Allowed EFIH PIK Note Claims that is less than the amount of the Charging Lien Advance, the EFIH PIK Notes Trustee and each immediate transferee of the proceeds of the Charging Lien Advance shall be severally liable for that portion of the Charging Lien Advance ultimately retained by the EFIH PIK Notes Trustee or transferred to such immediate transferee and must refund, as soon as reasonably practicable, any such difference in amounts (or in the case of any immediate transferees their pro rata share of such difference in amounts based on actual amounts transferred to such transferees) to EFIH.  In the event the Plan is not consummated, the EFIH PIK Notes Trustee shall have the right to seek payment from the EFIH estate on account of any fees or expenses of the EFIH PIK Notes Trustee with respect to the EFIH PIK Notes and shall distribute any such amounts received up to the amount of the Charging Lien Advance to Holders of the EFIH PIK Notes.  The Debtors, the Plan Sponsors, and the Settling EFIH PIK Noteholders acknowledge, consent and shall not object to the EFIH Debtors' advance of funds in an amount sufficient to cover the Charging Lien Advance as set forth above.

16.    The EFIH PIK Notes Trustee is authorized and directed to make distributions under the Plan to the Settling EFIH PIK Noteholders in accordance with the Stipulations, the Plan, this EFIH PIK Settlement Order, the Direction Letter and any other related documents or agreements.

17.    The EFH Notes Trustee and EFH Unexchanged Notes Trustee are authorized and directed to make distributions under the Plan to the Subsequent Settling EFIH PIK Noteholders

in accordance with the Subsequent PIK Stipulation, the Plan, this EFIH PIK Settlement Order, and any other related documents or agreements.

18.    The EFIH PIK Notes Trustee shall not have or incur any liability for, and is released and exculpated from any cause of action or any claim related to any act or omission in connection with, relating to, arising out of, or required under, the Stipulations, this EFIH PIK Settlement Order, and any other related documents or agreements.

19.    This EFIH PIK Settlement Order shall bind the Debtors, the Settling EFIH PIK Noteholders, their respective successors, assigns, heirs, executors, administrators, and representatives, including any transferee of the Settling EFIH PIK Noteholders.

20.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this EFIH PIK Settlement Order shall be effective and enforceable immediately upon entry.

21.    In the event of any inconsistencies between this EFIH PIK Settlement Order and the Stipulations or Direction Letters, this EFIH PIK Settlement Order shall govern in all respects. EFH and the EFIH Debtors shall not amend the Plan, the PSA, or the Settlement Agreement in a manner that is materially inconsistent with the Stipulations or this EFIH PIK Settlement Order.

22.    The Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this EFIH PIK Settlement Order.

23.    The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of this EFIH PIK Settlement Order.

Dated: _____, 2015          _____

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

**EXHIBIT 1**

**Initial PIK Stipulation**

## **STIPULATION**

This STIPULATION (this "**Stipulation**")[1] is made and entered into as of October 27, 2015 (the "**Stipulation Effective Date**"), by and among the following parties:

(a) (i) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company; and (ii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; and

(b) GSO Capital Partners LP, solely on behalf of the undersigned funds and accounts it manages or advises (collectively, "**GSO**"), Avenue Capital Management II, L.P. ("**Avenue**," and together with GSO, the "**Initial EFIH PIK Settling Noteholders**"), and the other undersigned beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders (collectively with the Initial EFIH PIK Settling Noteholders, the "**Settling EFIH PIK Noteholders**") that hold claims (the "**EFIH PIK Note Claims**") against the EFIH Debtors arising out of the 11.25%/12.25% senior toggle notes due December 1, 2018 (the "**EFIH PIK Notes**"), issued pursuant to that certain Indenture (as amended and/or supplemented, the "**EFIH PIK Notes Indenture**") dated as of December 5, 2012, by and among, *inter alia*, the EFIH Debtors, as issuers, and UMB Bank, N.A., as successor indenture trustee to The Bank of New York Mellon Trust Company, N.A. (the "**EFIH PIK Notes Trustee**").

Each EFIH Debtor and each Settling EFIH PIK Noteholder is referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**."

**WHEREAS**, on April 29, 2014 (the "**Petition Date**"), Energy Future Holdings Corp. ("**EFH**"), the EFIH Debtors, and certain of their affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, on or about October 23, 2014, the EFIH PIK Notes Trustee filed proof of claim 6347 (the "**EFIH PIK Proof of Claim**") in the Chapter 11 Cases on behalf of itself and all holders of EFIH PIK Notes, whereby it asserted claims for, among other things, all "principal, premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums" and "interest ... arising from and after" the Petition Date;

**WHEREAS**, on July 9, 2015, the EFIH Debtors filed the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [D.I. 4964] (the "**EFIH PIK Claim Objection**"), whereby the EFIH Debtors objected to the EFIH PIK Proof of Claim to the extent it seeks payment of (i) an Applicable Premium under

---

[1]    Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein, the PSA, as defined below.

section 3.07(a) of the EFIH PIK Notes Indenture, (ii) an Optional Redemption Price under section 3.07(d) of the EFIH PIK Notes Indenture, or (iii) unmatured interest;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Plan Support Agreement* (the "**PSA**") setting forth the terms and conditions on which such parties will pursue the approval and consummation of the Plan and the Restructuring Transactions;

**WHEREAS**, on September 21, 2015, the Debtors filed in the Chapter 11 Cases the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (as may be amended from time to time, the "**Plan**"), which provides that the EFIH PIK Note Claims shall be allowed in an amount equal to outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest on the principal amount outstanding as of the Petition Date at the Federal Judgment Rate, but excluding any Makewhole Claims; and

**WHEREAS**, the EFIH Debtors, the Settling EFIH PIK Noteholders, and certain other parties in interest in the Chapter 11 Cases have been engaged in good faith negotiations with each other regarding the disputes with respect to the EFIH PIK Note Claims, and the Parties have reached agreement with each other with respect to such disputes on the terms and conditions set forth in this Stipulation.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.      Effective Date of Stipulation**.

This Stipulation shall be immediately effective and binding on each Party, other than the EFIH Debtors, upon the execution and delivery to the other Parties of a signature page to this Stipulation and entry by such Party into the PSA; *provided, however*, that this Stipulation shall become effective and binding with respect to the EFIH Debtors upon entry by the Bankruptcy Court of an order approving this Stipulation.

**Section 2.      Settlement of EFIH PIK Note Claims**.

2.1      Notwithstanding anything to the contrary in the Plan, the EFIH PIK Note Claims held by the Settling EFIH PIK Noteholders shall be Allowed in an amount equal to the sum of: (a) the principal amount outstanding of EFIH PIK Notes held by the Settling EFIH PIK Noteholders, plus accrued but unpaid prepetiton interest at the non-default contract rate set forth in the EFIH PIK Notes Indenture; and (b) 57.5% of accrued but unpaid postpetition interest at the non-default contract rate set forth in the EFIH PIK Notes Indenture through the effective date of a chapter 11 plan for EFIH, but not including for the avoidance of doubt any Makewhole Claims.

2.2      (a) the Initial EFIH PIK Settling Noteholders and (b) in the EFIH Debtors' discretion, with (during the Plan Support Effective Period) the consent of the Required Investor Parties, other Settling EFIH PIK Noteholders shall receive a consent fee equal to 2.5% of unpaid

postpetition interest accrued at the non-default contract rate set forth in the EFIH PIK Notes Indenture through the effective date of a chapter 11 plan for EFIH with respect to the EFIH PIK Notes held by such Settling EFIH PIK Noteholder, which consent fee shall be (y) earned upon the last to occur of the effectiveness of this Stipulation as to such Settling EFIH PIK Noteholder and the date the Bankruptcy Court enters an order approving this Stipulation and (z) payable upon the effective date of a chapter 11 plan for EFIH, unless such Settling EFIH PIK Noteholder has terminated this Stipulation under section 4.1 hereof.

**Section 3.    Other Commitments of the Settling EFIH PIK Noteholders**.

If Fidelity Management & Research Company ("**Fidelity**") executes and becomes a party to the PSA, then upon or as soon as reasonably practicable after such execution of the PSA by Fidelity, the Settling EFIH PIK Noteholders that are parties in the adversary proceeding captioned *Avenue Capital Management II LP, et al., v. Fidelity Investments*, Adv. Pro. No. 14-50797 (CSS) (Bankr. D. Del.) (the "**Fidelity Call Litigation**"), will take all commercially reasonable actions to dismiss with prejudice the Fidelity Call Litigation, including any and all pending appeals related thereto.

**Section 4.    Termination**.

4.1    This Stipulation shall be automatically terminated with respect to all Parties upon the occurrence of any of the following events: (a) termination of the PSA by EFIH or (b) the Plan Support Termination Date, as defined and set forth in Section 11 of the PSA.  This Stipulation shall be automatically terminated with respect to a Settling EFIH PIK Noteholder upon a termination of the PSA with respect to such Settling EFIH PIK Noteholder.

4.2    Upon termination of this Stipulation with respect to a Party in accordance with Section 4.1 hereof: (a) this Stipulation shall be of no further force and effect with respect to such Party; (b) each Party subject to such termination shall be released from its commitments, undertakings, and agreements under this Stipulation and shall have the rights that it would have had, had it not entered into this Stipulation, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Stipulation; and (c) the remaining Parties to this Stipulation, if any, shall be released from any commitments, undertaking, and agreements owed to such terminated Party under this Stipulation (including Section 2.2 hereof); *provided*, *howeve*r, for the avoidance of doubt, if the Fidelity Call Litigation has been dismissed with prejudice, no Settling EFIH PIK Noteholder shall take any action to revive or otherwise pursue the claims and causes of action asserted in such Fidelity Call Litigation.

**Section 5.    Miscellaneous**.

5.1    Complete Agreement.

This Stipulation constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto; *provided*, for the avoidance of doubt, the Parties' agreements pursuant to the PSA shall not be affected by the Parties' entry into this Stipulation.

3

5.2     Governing Law; Jurisdiction; Waiver of Jury Trial.

(i)     This Stipulation shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Stipulation in the United States Bankruptcy Court for the District of Delaware (the "**Chosen Court**"), and solely in connection with claims arising under this Stipulation: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

(j)     Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Stipulation or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Stipulation by, among other things, the mutual waivers and certifications in this Section 5.2.

5.3     Execution of Stipulation.

This Stipulation may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Each individual executing this Stipulation on behalf of a Party has been duly authorized and empowered to execute and deliver this Stipulation on behalf of such Party.

5.4     Interpretation and Rules of Construction.

This Stipulation is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Stipulation, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Stipulation and continue to be represented by counsel. In addition, this Stipulation shall be interpreted in accordance with section 102 of the Bankruptcy Code.

5.5     Settlement Discussions.

This Stipulation and the transactions contemplated herein are part of a proposed settlement among the Parties.  Nothing herein shall be deemed an admission of any kind.  To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Stipulation and all negotiations relating thereto shall not

be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Stipulation.

5.6     Successors and Assigns; No Third Party Beneficiaries.

This Stipulation is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  Except as otherwise explicitly set forth herein, nothing in this Stipulation is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

5.7     Notices.

All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

(a)     if to the EFIH Debtors, to:

Energy Future Holdings Corp., et al.
Energy Plaza
1601 Bryan Street
Dallas, Texas 75201
Attention: General Counsel
E-mail addresses:    stacey.dore@energyfutureholdings.com
                     andrew.wright@energyfutureholdings.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention: Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
E-mail addresses:    esassower@kirkland.com
                     shessler@kirkland.com
                     bschartz@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad J. Husnick and Steven N. Serajeddini
E-mail addresses:    jsprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chusnick@kirkland.com

steven.serajeddini@kirkland.com;

and

Cravath, Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Attention:  Philip A. Gelston
Email address:        pgelston@cravath.com

and

Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Attention:  Richard Levin
Email address:        rlevin@jenner.com

(b)      if to a Settling EFIH PIK Noteholder, to:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
Bank of America Tower
New York, New York 10036
Attention: Ira S. Dizengoff and Scott L. Alberino
E-mail addresses:    idizengoff@akingump.com
                              salberino@akingump.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

5.8      <u>Severability and Construction</u>.

If any provision of this Stipulation shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Stipulation for each Party remain valid, binding, and enforceable.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

[Signature Pages Follow]

[*Signature Pages Redacted*]

**EXHIBIT 2**

**Subsequent PIK Stipulation**

## STIPULATION

This STIPULATION (this "**Stipulation**")[1] is made and entered into as of November 24, 2015 (the "**Stipulation Effective Date**"), by and among the following parties:

(a) (i) Energy Future Holdings Corp., a Texas corporation ("**EFH**"); (ii) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company; and (iii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; and

(b) The undersigned beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders (the "**Subsequent Settling EFIH PIK Noteholders**") that hold claims (the "**EFIH PIK Note Claims**") against the EFIH Debtors arising out of the 11.25%/12.25% senior toggle notes due December 1, 2018 (the "**EFIH PIK Notes**"), issued pursuant to that certain Indenture (as amended and/or supplemented, the "**EFIH PIK Notes Indenture**") dated as of December 5, 2012, by and among, *inter alia*, the EFIH Debtors, as issuers, and UMB Bank, N.A., as successor indenture trustee to The Bank of New York Mellon Trust Company, N.A. (the "**EFIH PIK Notes Trustee**").

EFH, EFIH, EFIH Finance and the Subsequent Settling EFIH PIK Noteholders are each referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**."

**WHEREAS**, on April 29, 2014 (the "**Petition Date**"), EFH, the EFIH Debtors, and certain of their affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, certain Subsequent Settling EFIH PIK Noteholders also hold (i) claims (the "**EFH LBO Note Claims**") against EFH arising out of (a) the 10.875% senior notes due November 1, 2017 (the "**EFH LBO Senior Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH LBO Note Indenture**") dated as of October 31, 2007 by and among EFH, as issuer, and American Stock Transfer & Trust Company, LLC, as indenture trustee (the "**EFH Notes Trustee**"), and (b) the 11.25%/12.00% toggle notes due November 1, 2017 (the "**EFH LBO Toggle Notes**" and together with the EFH LBO Senior Notes, the "**EFH LBO Notes**") issued pursuant to the EFH LBO Note Indenture; (ii) claims (the "**EFH Legacy Note Claims**") against EFH arising out of (a) the 5.55% Series P Notes due November 15, 2014 (the "**EFH Legacy Series P Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series P Indenture**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee, (b) the 6.50%

---

[1]   Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein, the PSA, as defined below, each in effect as of the Stipulation Effective Date, as defined below.

Series Q Notes due November 15, 2024 (the "**EFH Legacy Series Q Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series Q Indenture**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee, and (c) the 6.55% Series R Notes due November 15, 2034 (the "**EFH Legacy Series R Notes**" and together with the EFH Legacy Series P Notes and the EFH Legacy Series Q Notes, the "**EFH Legacy Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series R Indenture**" and together with the EFH Legacy Series P Indenture and EFH Legacy Series Q Indenture, the "**EFH Legacy Note Indentures**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee; (iii) claims (the "**EFH Unexchanged Note Claims**") against EFH arising out of (a) the 9.75% senior notes due October 15, 2019 (the "**EFH 9.75% Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH 9.75% Notes Indenture**") dated as of November 16, 2009 by and among EFH, as issuer, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to American Stock Transfer & Trust Company, N.A., and (b) the 10.00% senior notes due January 15, 2020 (the "**EFH 10.00% Notes**" and together with the EFH 9.75% Notes, the "**EFH Unexchanged Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH 10.00% Indenture**" and together with the EFH 9.75% Notes Indenture, the "**EFH Unexchanged Notes Indentures**") dated as of January 12, 2010 by and among EFH, as issuer, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to American Stock Transfer & Trust Company, LLC; and (iv) claims (the "**EFIH Second Lien Note Claims**") against the EFIH Debtors arising out of the 11.00% senior secured second lien notes due October 1, 2021 and 11.75% senior secured second lien notes due March 1, 2022 (the "**EFIH Second Lien Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFIH Second Lien Note Indenture**") dated as of April 25, 2011 by and among the EFIH Debtors, as issuers, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to Computershare Trust Company, N.A. and Computershare Trust Company of Canada (the "**EFIH Second Lien Notes Trustee**");

**WHEREAS**, on June 16, 2014 the EFIH Second Lien Notes Trustee filed an adversary complaint against the EFIH Debtors, commencing the adversary proceeding captioned Computershare Trust Company, N.A. and Computershare Trust *Company of Canada v. Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc.*, Adv. Pro. No. 14-50405 (CSS) (Bankr. D. Del.), seeking a declaration that the EFIH Debtors are obligated to pay makewhole claims in connection with the EFIH Second Lien Notes, along with other contested amounts relating to indemnification obligations, professional fees and interest;

**WHEREAS**, on or about October 23, 2014, the EFIH PIK Notes Trustee filed proof of claim 6347 (the "**EFIH PIK Proof of Claim**") in the Chapter 11 Cases on behalf of itself and all holders of EFIH PIK Notes, whereby it asserted claims for, among other things, all "principal, premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums" and "interest ... arising from and after" the Petition Date;

**WHEREAS**, on or about October 24, 2014, the EFH Notes Trustee filed proofs of claim 6524-6943, 7475, 7476, 7477, 7478, 7479, 7480, 7481 and 7482 in the Chapter 11 Cases on behalf of itself and all holders of EFH LBO Notes, EFH Legacy Notes and EFH Unexchanged Notes, whereby it asserted claims for, among other things, principal, prepetition

interest, postpetition interest at the default rate set forth in the EFH LBO Note Indenture, the EFH Legacy Note Indentures and the EFH Unexchanged Notes Indentures, interest on interest, makewhole and other applicable premiums and penalties, and certain fees and expenses;

**WHEREAS**, on or about October 24, 2014, the EFIH Second Lien Notes Trustee filed proofs of claim 7486 and 7487 in the Chapter 11 Cases on behalf of itself and all holders of EFIH Second Lien Notes, whereby it asserted claims for, among other things, principal, prepetition interest, postpetition interest, and certain fees and expenses, and reserved its right to assert claims for any premiums, postpetition interest including "Additional Interest," and interest on overdue interest;

**WHEREAS**, on April 13, 2015, the EFIH Second Lien Notes Trustee filed the *Amended Complaint for Damages and Declaratory Relief* in the EFIH Second Lien Adversary Proceeding [Adv. D.I. 37], seeking, among other things, damages for a makewhole premium in connection with the Debtors' partial pay down of the EFIH Second Lien Notes on March 11, 2015;

**WHEREAS**, on July 9, 2015, the EFIH Debtors filed the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [D.I. 4964] (the "**EFIH PIK Claim Objection**"), whereby the EFIH Debtors objected to the EFIH PIK Proof of Claim to the extent it seeks payment of (i) an Applicable Premium under section 3.07(a) of the EFIH PIK Notes Indenture, (ii) an Optional Redemption Price under section 3.07(d) of the EFIH PIK Notes Indenture, or (iii) unmatured interest;

**WHEREAS**, on August 10, 2015, the Debtors filed the *Motion of Energy Future Holdings Corp.,* et al. *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 5249] whereby the Debtors seek approval of that certain *Amended & Restated Settlement Agreement* (as amended from time to time, the "**Settlement Agreement**") setting forth the terms and conditions on which the Debtors and certain other parties thereto agreed to settle certain alleged claims and litigation among them;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Plan Support Agreement* (as amended from time to time, the "**PSA**") setting forth the terms and conditions on which such parties will pursue the approval and consummation of the Plan and the Restructuring Transactions;

**WHEREAS**, on September 21, 2015, the Debtors filed in the Chapter 11 Cases the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (as may be amended from time to time, and including the amendments set forth on Exhibit A to that *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, LP to Confirmation of Debtors' Fifth Amended Plan of Reorganization* [D.I. 6932], the "**Plan**"), which provides that (i) EFIH PIK Note Claims shall be allowed in an amount equal to outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest on the principal amount outstanding as of the Petition Date at the Federal Judgment Rate, but excluding any Makewhole Claims; (ii) EFH Legacy Note Claims and EFH LBO Note Claims (both primary

claims at EFH and guaranty claims at the EFIH Debtors) shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest at the Federal Judgment Rate, but not including any Makewhole Claims; and (iii) EFIH Second Lien Note Claims shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, accrued postpetition interest (including Additional Interest and interest on interest) on such principal at the non-default contract rate set forth in the EFIH Second Lien Note Indenture through the Effective Date, and all reasonable and documented fees, expenses and indemnification claims owed under the EFIH Second Lien Note Indenture, but not including any Makewhole Claims;

**WHEREAS**, the Plan serves as the Debtors' objection to all other claims asserted and amounts alleged to be owed with respect to the EFH LBO Notes, EFH Legacy Notes and EFIH Second Lien Notes;

**WHEREAS**, on October 7, 2015, the EFH Notes Trustee filed a motion for partial summary judgment [D.I. 6386] in response to the Debtors' objection with respect to Makewhole Claims on the EFH Legacy Series Q Notes and EFH Legacy Series R Notes arguing that payment of Makewhole Claims is compelled as a matter of law by the applicable indentures and governing law;

**WHEREAS**, on October 14, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Legacy Notes* (the "**EFH Legacy Note Claims Objection**") [D.I. 6463], objecting to the EFH Legacy Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, (iv) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date, and (v) fees and expenses, including any right to indemnification from EFH or any other Debtor;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. Et Al., to Proofs of Claim 7475, 7480, 7481 and 6874-6943 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH LBO Notes* [D.I. 6596] (the "**EFH LBO Note Claims Objection**"), objecting to the EFH LBO Notes to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, and (b) assert claims against the Debtors other than EFH, as issuer, and Energy Future Competitive Holdings Company LLC and EFIH, as guarantors;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. Et Al., to Proofs of Claim 7476, 7482, and 6734-6873 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Unexchanged Notes* (the "**EFH Unexchanged Notes Claims Objection**") [D.I. 6599], objecting to the EFH Unexchanged Notes to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts, or (ii) postpetition

interest (including default interest and interest on overdue interest payments); and (b) assert claims against the Debtors other than EFH;

**WHEREAS**, on October 28, 2015, the EFH Notes Trustee filed the *Response of EFH Legacy Notes Trustee to Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. LLC as Indenture Trustee for EFH Legacy Notes* [D.I. 6718], arguing that the EFH Legacy Note Claims Objection and EFH LBO Note Claims Objection should be overruled;

**WHEREAS**, on October 27, 2015, the EFIH Debtors reached an agreement with certain holders of EFIH PIK Notes, as set forth in the *Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6699], and the *Second Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6918];

**WHEREAS**, on October 30, 2015, the Bankruptcy Court entered (i) an order sustaining the EFIH PIK Claim Objection [D.I. 6783] (the "**Partial Claim Objection Order**"), (ii) a Memorandum Opinion disallowing the portion of the EFIH PIK Note Claims seeking an amount for prepayment penalties, make-whole premiums and/or call premiums [D.I. 6781] (the "**Call Premium Memorandum Opinion**"), and (iii) a Memorandum Opinion addressing the EFIH PIK Noteholders' entitlement to post-petition interest [D.I. 6782] (the "**PPI Memorandum Opinion**").

**WHEREAS**, on November 12, 2015, (i) the EFIH PIK Notes Trustee filed a notice of appeal [D.I. 6970] from the Partial Claim Objection Order, and (ii) York Capital Management Global Advisors, LLC, P. Schoenfeld Asset Management L.P., Polygon Convertible Opportunity Master Fund, Polygon Distressed Opportunities Master Fund, Mudrick Capital Management, L.P., and Marathon Asset Management, LP (collectively, the "**Minority PIK Noteholders**"), on behalf of funds and accounts that they each manage or advise, represented by Gellert Scali Busenkell & Brown, LLC and Kaye Scholer LLP, filed a notice of appeal (and separate exhibits) from the Partial Claim Objection Order [D.I. 6972 and 6975].

**WHEREAS**, on November 12, 2015, (i) the EFIH PIK Notes Trustee filed a Motion to Amend or Alter the Partial Claim Objection Order [D.I. 6968] (the "**EFIH PIK Notes Trustee Motion to Amend**"), requesting that the Court enter separate orders in connection with the Call Premium Memorandum Opinion and the PPI Memorandum Opinion, and (ii) the Minority PIK Noteholders filed a Motion to Amend or Alter the Partial Claim Objection Order [D.I. 6973] (the "**Minority PIK Noteholders Motion to Amend**", and together with the EFIH PIK Notes Trustee Motion to Amend**, the "**Motions to Amend**"), requesting that the Court enter separate orders in connection with the Call Premium Memorandum Opinion and the PPI Memorandum Opinion.  In connection therewith, on November 13, 2015 and November 17, 2015, respectively, the Bankruptcy Court entered orders [D.I. 6985 and 7017] setting November 25, 2015 as the date in which the Bankruptcy Court will consider the Motions to Amend.

**WHEREAS**, on November 12, 2015, EFH and the EFIH Debtors reached an agreement with certain funds and accounts advised or sub-advised by Fidelity Management & Research

Company or one of its affiliates, as set forth in the *Notice of Settlement Between Debtors and Fidelity Management & Research Company* [D.I. 6976];

**WHEREAS**, EFH, the EFIH Debtors, the Subsequent Settling EFIH PIK Noteholders, and certain other parties in interest in the Chapter 11 Cases have been engaged in good faith negotiations with each other regarding the disputes with respect to the EFIH PIK Note Claims, EFH Legacy Note Claims, EFH LBO Note Claims and EFIH Second Lien Note Claims and the Parties have reached agreement with each other with respect to such disputes on the terms and conditions set forth in this Stipulation.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.    Effective Date of Stipulation**.

This Stipulation shall be immediately effective and binding on each Party, other than EFH and the EFIH Debtors, upon the execution and delivery to the other Parties of a signature page to this Stipulation; *provided, however*, that this Stipulation shall become effective and binding with respect to EFH and the EFIH Debtors upon entry by the Bankruptcy Court of an order approving this Stipulation (the "**EFIH PIK Noteholder Settlement Order**").

**Section 2.    Settlement of Claims**.

2.1    Notwithstanding anything to the contrary in the Plan, the EFIH PIK Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFIH PIK Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture through the Effective Date of the Plan, but not including any Makewhole Claims.

2.2    The EFH Legacy Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of the EFH Legacy Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest at the non-default contract rate (including any PIK Interest, Additional Interest and interest on interest, as applicable)set forth in the EFH Legacy Note Indentures, and (b) postpetition interest at the Federal Judgment Rate through the Effective Date of the Plan, but not including any Makewhole Claims.

6

2.3    Notwithstanding anything to the contrary in the Plan, the EFH LBO Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFH LBO Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture, and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture through the Effective Date of the Plan, but not including any Makewhole Claims. The Subsequent Settling EFIH PIK Noteholders will only be entitled to a single recovery with respect to the EFH LBO Notes and related guarantees.

2.4    Notwithstanding anything to the contrary in the Plan, the EFH Unexchanged Notes held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFH Unexchanged Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures through the Effective Date of the Plan, but not including any Makewhole Claims.

2.5    The EFIH Second Lien Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFIH Second Lien Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest thereon, including any Additional Interest and interest on interest, as applicable, at the applicable non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, and (b) accrued but unpaid postpetition interest, including any Additional Interest and interest on interest, as applicable, on such principal at the non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, through the Effective Date of the Plan, but not including any Makewhole Claims.

2.6    All Allowed EFH Legacy Note Claims, Allowed EFH LBO Note Claims, Allowed EFH Unexchanged Note Claims and Allowed EFIH Second Lien Note Claims held by the Subsequent Settling EFIH PIK Noteholders shall be paid in Cash on the Effective Date of the Plan.  The Debtors will not exercise the option in Article III, Section B(4)(c) of the Plan to

reinstate EFH Legacy Series Q Claims and EFH Legacy Series R Claims held by the Subsequent Settling EFIH PIK Noteholders.  The commitments in this Section 2 shall apply only in connection with consummation of the Plan and shall not bind the Debtors or any other party in connection with any other restructuring transaction, including, without limitation, any Alternative Restructuring.

**Section 3.      Commitments of the Subsequent Settling EFIH PIK Noteholders With Respect to the Plan and the Settlement Agreement**

3.1      Each Subsequent Settling EFIH PIK Noteholder:

(a)      shall (i) use commercially reasonable efforts to assist the Debtors in obtaining entry of the order approving the Settlement Agreement and the Confirmation Order and consummation of the Plan as soon as reasonably practicable in accordance and consistent with the Bankruptcy Code, this Stipulation, and the EFIH PIK Noteholder Settlement Order, and within the time frames contemplated in the PSA, and (ii) execute and deliver any other agreements reasonably required to effectuate and consummate the Plan and Restructuring Transactions;

(b)      shall not directly or indirectly, or encourage any other entity to directly or indirectly, (i) object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of the Plan and Restructuring Transactions and the Settlement Agreement; (ii) propose, file, support, vote for, or take any other action in furtherance of any restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors other than the Plan, including, for the avoidance of doubt, making or supporting any filings with the Bankruptcy Court or any regulatory agency, including the Public Utility Commission of Texas (the "**PUCT**") and the United States Nuclear Regulatory Commission (the "**NRC**"), or making or supporting any press release, press report or comparable public statement, or filing with respect to any restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors other than the Plan; or (iii) exercise any right or remedy for the enforcement, collection, or recovery of any claim against the Debtors or any direct or indirect subsidiaries of the Debtors that are not Debtors other than as expressly permitted by the Plan, the Merger Agreement, and the Settlement Agreement; *provided*, *however*, that notwithstanding the foregoing, each Party may, during and after the Plan Support Effective Period, (I) solicit from (other than within the meaning of 11 U.S.C. § 1125), and negotiate with the Debtors and/or their other stakeholders, facilitate, and document the other terms of an Alternative Restructuring, (II) solicit from (other than within the meaning of 11 U.S.C. § 1125) and negotiate with the Debtors and/or their other stakeholders, facilitate, and document the terms of another plan or other restructuring transaction that contains the Required Alternative Terms, and (III) solicit from and enter into an agreement or agreements with the Debtors and/or their other stakeholders regarding support for and/or financing of such Alternative Restructuring or other restructuring so long as entering into such agreement or agreements does not violate such Party's commitments and obligations under this Stipulation; *provided*, *however*, that each Party shall use commercially reasonable efforts (x) to keep confidential any solicitation, negotiation, facilitation, and documentation by such Party of an Alternative Restructuring and (y) to enter into a confidentiality agreement with any counterparty to any agreement regarding support for and/or financing of an Alternative Restructuring, which

confidentiality agreement provides that the existence and material terms of such Alternative Restructuring shall be kept confidential and shall not be publicly disclosed, except in each case to the extent required by applicable law or pursuant to such confidentiality agreements (including any "cleansing" provisions set forth in such confidentiality agreements) as determined by such Party in its sole and absolute discretion, and the Parties each waive any right to challenge such a determination made by any other Party;

(c)    shall take no action in opposition of or otherwise inconsistent with the terms of the Settlement Agreement, whether or not approved by the Bankruptcy Court;

(d)    if it is a holder of EFH Legacy Notes or EFH LBO Notes, will direct the EFH Notes Trustee, in its capacity as indenture trustee for the EFH Legacy Notes and EFH LBO Notes, to (i) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Settlement Agreement, the EFIH PIK Note Claims Settlement, and the Fidelity Claims Settlement, and (ii) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of postpetition interest (except as contemplated in the PSA and this Stipulation) or any Makewhole Claims or any other Claims inconsistent with the PSA and this Stipulation; *provided*, that, such Subsequent Settling EFIH PIK Noteholders shall not be required to provide any indemnity or otherwise incur any liability to the EFH Notes Trustee or any other party in connection with such direction; and

(e)    if it holds EFIH Second Lien Notes and holders of 50.10% or more of the aggregate principal amount of outstanding EFIH Second Lien Notes are or become parties to the PSA and/or this Stipulation (with the holdings of parties to both agreements aggregated), will direct the EFIH Second Lien Notes Trustee and will in good faith attempt to cause the EFIH Second Lien Notes Trustee, in its capacity as indenture trustee for the EFIH Second Lien Notes, to (i) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Settlement Agreement, the EFIH PIK Note Claims Settlement, and the Fidelity Claims Settlement, and (iii) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of any Makewhole Claims; *provided*, that, such Subsequent Settling EFIH PIK Noteholders shall not be required to provide any indemnity or otherwise incur any liability to the EFIH Second Lien Notes Trustee or any other party in connection with such direction.

3.2    No Subsequent Settling EFIH PIK Noteholder shall sell, use, pledge, assign, transfer, or otherwise dispose of (each, a "**Transfer**") any ownership (including any beneficial ownership)[2] in its respective Debtor Claims/Interests, general partnership interests in Texas Holdings, or interests in TEF (but not including, for the avoidance of doubt, limited partnership

---

[2]    As used herein, the term "**beneficial ownership**" means the direct or indirect economic ownership of, and/or the power, whether by contract or otherwise, to direct the exercise of voting rights and the disposition of, the Debtor Claims/Interests or the right to acquire such Debtor Claims/Interests.

interests in Texas Holdings) (the "**Supporting Claims/Interests**"), unless all of the following requirements are satisfied (a transfer that satisfies such requirements, a "**Permitted Transfer**," and such transferee, a "**Permitted Transferee**"):

(a)    the intended transferee executes and delivers to counsel to the other Parties on the terms set forth below an executed joinder agreement before such Transfer is effective; and

(b)    the intended transferee, the intended transferee's affiliates, and/or any unaffiliated third-party in which the intended transferee has a direct or indirect beneficial ownership, or any group of persons acting pursuant to a plan or arrangement as described in Treasury Regulation Section 1.355-6(c)(4), will not, after giving effect to such Transfer, and assuming the Plan and the other Restructuring Transactions were to be consummated immediately upon such Transfer, have beneficial ownership of, in the aggregate, fifty percent (50%) or more of the Reorganized TCEH Common Stock or the Reorganized EFH Common Stock.

Notwithstanding the foregoing, so long as a Transfer by a Subsequent Settling EFIH PIK Noteholder (i) is to an Investor Party, Consenting Interest Holder or Consenting Creditor Party under the PSA that is not in breach of any of those parties' obligations under the PSA and remains a party to the PSA, and (ii) would comply with Section 3.2(b), above, then such Transfer shall be a Permitted Transfer, and such transferee a Permitted Transferee, without the requirement of executing and delivering a joinder agreement.  Any Transfer made in violation of this Section 3.2 shall be void *ab initio*.

Notwithstanding anything to the contrary in this Section 3.2, (i) a Qualified Marketmaker[3] that acquires any of the Supporting Claims/Interests with the purpose and intent of acting as a Qualified Marketmaker for such Supporting Claims/Interests, shall not be required to execute and deliver a joinder agreement or otherwise agree to be bound by the terms and conditions set forth in this Section 3 if such Qualified Marketmaker Transfers such Supporting Claims/Interests (by purchase, sale, assignment, participation, or otherwise) as soon as reasonably practicable, and in no event later than twenty (20) Business Days of its acquisition, to a Permitted Transferee and the Transfer otherwise is a Permitted Transfer (including, for the avoidance of doubt, the requirement that such transferee execute a joinder agreement in accordance with Section 3.2(a)); and (ii) to the extent any Party is acting solely in its capacity as a Qualified Marketmaker, it may Transfer any ownership interests in the Supporting Claims/Interests that it acquires from a holder of such Supporting Claims/Interests that is not a Party to a transferee that is not a Party at the time of such Transfer without the requirement that such transferee be or become a signatory to this Stipulation or execute a joinder agreement.

---

[3]    As used herein, the term "**Qualified Marketmaker**" means an entity that (a) holds itself out to the public or the applicable private markets as standing ready in the ordinary course of business to purchase from customers and sell to customers Supporting Claims/Interests (or enter with customers into long and short positions in Supporting Claims/Interests), in its capacity as a dealer or market maker in Supporting Claims/Interests and (b) is, in fact, regularly in the business of making a market in claims against issuers or borrowers (including debt securities or other debt).

**Section 4.      Other Commitments of the Parties**

4.1      The Subsequent Settling EFIH PIK Noteholders shall be permitted to continue to seek the relief requested in the Motions to Amend.  Consistent with the terms of the Letter of Direction to the EFIH PIK Notes Trustee from the Subsequent Settling EFIH PIK Noteholders executed substantially contemporaneously herewith, the other Parties to this Stipulation shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede or take any action or inaction to interfere with the prosecution of the Motions to Amend by the Subsequent Settling EFIH PIK Noteholders and/or the EFIH PIK Notes Trustee.

4.2      Upon the Bankruptcy Court's approval of the Motions to Amend, the Subsequent Settling EFIH PIK Noteholders shall be permitted to file notices of appeal with respect to the PPI Memorandum Opinion and the Call Premium Memorandum Opinion (together, the "**Appeals**").  The other Parties to this Stipulation shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay or take any action or inaction to interfere with the filing of notices of appeal (the "**Subsequent Notices of Appeal**") by the Subsequent Settling EFIH PIK Noteholders and/or the EFIH PIK Notes Trustee in connection with the Appeals.

4.3      Promptly after the filing the Subsequent Notices of Appeal, the Subsequent Settling EFIH PIK Noteholders shall take all reasonable actions necessary to obtain the suspension of the Appeals and, upon consummation of the Plan, dismiss such Appeals with prejudice.  Upon the occurrence of the Plan Support Termination Date, the Parties agree that the Appeals may proceed.

4.4      The Subsequent Settling EFIH PIK Noteholders that are parties in the adversary proceeding captioned Avenue Capital Management II LP, et al., v. Fidelity Investments, Adv. Pro. No. 14-50797 (CSS) (Bankr. D. Del.) (the "**Fidelity Call Litigation**"), will take all commercially reasonable actions to dismiss with prejudice the Fidelity Call Litigation, including any and all pending appeals related thereto.

4.5      EFH and the EFIH Debtors shall not amend the Plan, the PSA, or the Settlement Agreement, through the Confirmation Order or otherwise, in a manner that is materially inconsistent with this Stipulation or the EFIH PIK Noteholder Settlement Order.  EFH and the EFIH Debtors shall use commercially reasonable efforts to not directly or indirectly, or encourage any other entity to directly or indirectly, (i) object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of this Stipulation or the EFIH PIK Noteholder Settlement Order, or (ii) propose, file, support, vote for, or take any other action in furtherance of any transaction, restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors that is materially inconsistent with this Stipulation or the EFIH PIK Noteholder Settlement Order.

**Section 5.      Termination**.

5.1      This Stipulation shall be automatically terminated with respect to all Parties upon the occurrence of any of the following events: (a) termination of the PSA by EFH or EFIH, (b) the Plan Support Termination Date, as defined and set forth in Section 11 of the PSA, or (c) upon

the failure of the Bankruptcy Court to enter the EFIH PIK Noteholder Settlement Order by no later than December 31, 2015, which EFIH PIK Noteholder Settlement Order shall be in form and substance reasonably acceptable to the Debtors, the Subsequent Settling EFIH PIK Noteholders, and the Plan Sponsors.

5.2      Upon termination of this Stipulation with respect to a Party in accordance with Section 5.1 hereof: (a) this Stipulation shall be of no further force and effect with respect to such Party; (b) such Party subject to such termination shall be released from its commitments, undertakings, and agreements under this Stipulation and shall have the rights that it would have had, had it not entered into this Stipulation, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Stipulation; and (c) the remaining Parties to this Stipulation, if any, shall be released from any commitments, undertaking, and agreements owed to such terminated Party under this Stipulation (including Section 2 hereof).

**Section 6.      Miscellaneous**.

6.1      Complete Agreement.

        This Stipulation constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto.

6.2      Governing Law; Jurisdiction; Waiver of Jury Trial.

        (a)      This Stipulation shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Stipulation in the United States Bankruptcy Court for the District of Delaware (the "**Chosen Court**"), and solely in connection with claims arising under this Stipulation: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

        (b)      Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Stipulation or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Stipulation by, among other things, the mutual waivers and certifications in this Section 6.2.

6.3     Execution of Stipulation.

This Stipulation may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Stipulation on behalf of a Party has been duly authorized and empowered to execute and deliver this Stipulation on behalf of such Party.

6.4     Interpretation and Rules of Construction.

This Stipulation is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Stipulation, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Stipulation and continue to be represented by counsel. In addition, this Stipulation shall be interpreted in accordance with section 102 of the Bankruptcy Code.

6.5     Settlement Discussions.

This Stipulation and the transactions contemplated herein are part of a proposed settlement among the Parties.  Nothing herein shall be deemed an admission of any kind.  To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Stipulation and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Stipulation.

6.6     Successors and Assigns; No Third Party Beneficiaries.

This Stipulation is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  Except as otherwise explicitly set forth herein, nothing in this Stipulation is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

6.7     Notices.

All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

        (a)     if to EFH or the EFIH Debtors, to:

                Energy Future Holdings Corp., et al.
                Energy Plaza
                1601 Bryan Street
                Dallas, Texas 75201

13

Attention: General Counsel
E-mail addresses:    stacey.dore@energyfutureholdings.com
                     andrew.wright@energyfutureholdings.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention: Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
E-mail addresses:    esassower@kirkland.com
                     shessler@kirkland.com
                     bschartz@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad J.
Husnick and Steven N. Serajeddini
E-mail addresses:    jsprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chusnick@kirkland.com
                     steven.serajeddini@kirkland.com;

and

Cravath, Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Attention:  Philip A. Gelston
Email address:      pgelston@cravath.com

and

Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Attention:  Richard Levin
Email address:      rlevin@jenner.com

(b)    if to a Subsequent Settling EFIH PIK Noteholder, to:

Kaye Scholer LLP
250 West 55th Street

New York, New York 10019
Attention: Scott D. Talmadge
E-mail addresses:    scott.talmadge@kayescholer.com

(c)    if to the EFIH PIK Notes Trustee

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attention:  Scott L. Alberino, Ira S. Dizengoff
E-mail addresses:    salberino@akingump.com
                     idizengoff@akingump.com

and

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Attention: Harold L. Kaplan and Mark. F. Hebbeln
E-mail addresses:    HKaplan@foley.com
                     MHebbeln@foley.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

6.8    Severability and Construction.

If any provision of this Stipulation shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Stipulation for each Party remain valid, binding, and enforceable.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above..

[Signature Pages Follow]

15

[*Signature Pages Redacted*]

**EXHIBIT 3**

**November 9th Direction Letter**

November 9, 2015

UMB Bank, N.A.,
as Trustee under the Indenture referred to below
2 South Broadway, Suite 600
St. Louis, Missouri 63102
Facsimile No.: (314) 612-8499
Attention: Ms. Laura Roberson

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Facsimile No.: (312) 832-4700
Attention: Harold L. Kaplan, Esquire, and Mark. F. Hebbeln, Esquire

Energy Future Intermediate Holding Company LLC
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel
and
Facsimile No.: (214) 812-4097
Attention: Treasurer

EFIH Finance Inc.
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Facsimile No.: (212) 446-6460
Attention: Edward O. Sassower, P.C.
and
300 North LaSalle
Chicago, Illinois 60654
Facsimile No. (312) 862-2200
Attention: Marc Kieselstein, P.C.

Re: Direction to Trustee

Ladies and Gentlemen:

Reference is made to (i) the Indenture, dated as of December 5, 2012, as amended supplemented by the First Supplemental Indenture, dated as of December 19, 2012, the Second Supplemental Indenture, dated as of January 23, 2013, and the Third Supplemental Indenture, dated as of January 30, 2013 (collectively, as further modified, supplemented and/or amended and in effect on the date hereof, the "**Indenture**"), by and among Energy Future Intermediate Holding Company LLC ("**EFIH**") and EFIH Finance Inc. (together with EFIH, the "**Issuers**"), and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee, pursuant to which the Issuers issued the 11.25%/12/25% senior toggle notes due 2018 (the "**Notes**"), and (ii) the Agreement of Resignation, Appointment and Acceptance, dated as of March 26, 2014, by and among the Issuers, The Bank of New York Mellon Trust Company, N.A., and UMB Bank, N.A., as successor indenture trustee (the "**Trustee**"). Reference is also made to (i) the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**"), filed at docket number 6122 in the Issuers' chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and jointly administered under the caption In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) the ("**Bankruptcy Cases**"); (ii) that certain Amended & Restated Plan Support Agreement, dated as of September 11, 2015, attached hereto as **Exhibit B** to **Exhibit 1** (as amended from time to time, including by amendment dated October 27, 2015, the "**Plan Support Agreement**"), by and among the Debtors, the Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, the Consenting EFIH PIK Noteholders and certain other Entities signatory thereto; (iii) the Objection of UMB Bank, N.A., to Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al. Pursuant to Chapter 11 of the Bankruptcy Code filed at docket number 6640 (the "**Plan Objection**"); (iv) the Objection of UMB Bank, N.A., to the Motion of Energy Future Holdings Corp., et al. to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement filed at docket number 6641 (the "**Settlement Agreement Objection**"); and (v) the "Direction to Trustee" dated October 27, 2015 and delivered by the undersigned to the Trustee (the "**October 27 Direction**"). Capitalized terms used but not defined herein shall have the meanings provided in the Plan, the Plan Support Agreement, or the Indenture, as applicable. This letter (the "**Direction Letter**") supersedes in its entirety the October 27 Direction.

Further reference is made to (i) Section 6.01 of the Indenture, which provides that the commencement of the Bankruptcy Cases constitutes an Event of Default thereunder, (ii) Section 6.03 of the Indenture, which provides that, if an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or the Indenture and (iii) Section 6.05 of the Indenture, which provides that the Required Holders (as defined in the Indenture) of at least a majority in

2

aggregate principal amount of Notes may direct the time, method and place by which the Trustee pursues any remedies available to the Trustee or of exercising any trust or power conferred on the Trustee.

Each of the undersigned parties (each, a "**Holder**" and collectively, the "**Holders**") hereby represents and warrants that it is the beneficial owner of the aggregate principal amount of Notes set forth opposite such Holder's name on its signature page hereto (the "**Represented Holdings**") and agrees to provide the Trustee with verification of such Holders' aggregate principal amount of Notes by medallion stamp or such other means acceptable to the Trustee by a date no later than November 16, 2015 (the "**Holdings Verification**"). As of the date hereof, such Holders, collectively, hold a majority of the aggregate principal amount of the Notes presently outstanding (after deducting the aggregate principal amount of the Notes, if any, owned by the Issuer or any Affiliate of the Issuer pursuant to Section 2.09 of the Indenture) and, accordingly, such Notes constitute the "Required Debt" under the Indenture and such Holders constitute the "Required Holders" under the Indenture for the purposes hereunder.

The Holders hereby notify the Trustee and the Issuers and hereby direct that the Trustee shall, immediately and only upon receipt of (i) this direction by a majority in aggregate principal amount of the outstanding Notes and (ii) entry of an order of the Bankruptcy Court, not subject to any stay, consistent with the form attached hereto as Exhibit [2], and notwithstanding any prior direction by the Holders or any other holders of the Notes to the contrary, (x) dismiss, without prejudice, the Plan Objection and the Settlement Agreement Objection (collectively, the "**Objections**"); *provided, however*, upon receipt of the Holdings Verification from each Holder , the Trustee shall dismiss, with prejudice, the Objections, (y) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, confirmation, approval, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, and (z) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims. Notwithstanding anything to the contrary herein or in the October 27 Direction, and for the avoidance of doubt, the Trustee may participate as a nominal party to any appeal of the Bankruptcy Court's rulings dated October 30, 2015 [D.I. 6781, 6782] solely for the purpose of preserving appellate jurisdiction, with such costs to be borne solely by the Non-Settling EFIH PIK Noteholders; provided, however, that all other rights of all parties with respect to any such litigation or appeals are reserved.  For the avoidance of any doubt, if the Holdings Verifications are not received by November 16, 2015, the Trustee will no longer be bound by the directions set forth in clauses (y)-(z) above.

Each Holder hereby directs, consents to and shall not oppose (i) the Trustee's receipt of distributions under the Plan and the use of such distributions to pay for the Trustee's fees, costs and expenses as contemplated under Sections 6.12, 6.13 and 7.07 of the Indenture (the "**Charging Lien**") and (ii) the Trustee's establishment of one or more

reserves in an aggregate amount not to exceed $10 million (to be determined by the Trustee in the exercise of its reasonable discretion) (the "**Reserve**") to secure, in part, the Holders' accrued and contingent Indemnification Obligations (defined below) hereunder, to be funded by the exercise of the Charging Lien against distributions to the Holders on a pro rata basis; *provided that* the Trustee agrees not to apply the Charging Lien to any undersigned Holder's aggregate principal amount of Notes for any fees, costs and expenses incurred in connection with litigation relating to pursuing allowance, liquidation, or payment of postpetition interest, Makewhole Claims or Subsequent PIK Claim Objections (as defined below) that arise after the date on which the *Order Approving Settlement of Certain EFIH PIK Noteholder Claims and Authorizing Debtors to Enter Into and Perform Under Stipulation* is entered by the Bankruptcy Court, unless the Plan is not consummated.  For the avoidance of doubt, nothing herein shall be construed as limiting the Trustee's rights under Sections 6.12, 6.13 and 7.07 of the Indenture, other than as expressly set forth in the preceding proviso, including the payment of any fees, costs and expenses of the Trustee incurred in connection with seeking allowance or payment of postpetition interest claims or Makewhole Claims prior to the aforementioned date.  The Reserve shall remain in place for a period of 3 years following the later of (a) the effective date of the Direction Letter and (b) entry of a final order from the Bankruptcy Court approving the Stipulation (the "**Expiration Date**"); *provided, however,* that if, at the time of the Expiration Date, there is pending or threatened litigation for which the Indemnified Parties are entitled to indemnification pursuant to the terms hereto, the Reserve shall remain in place until such litigation is no longer pending or, with respect to threatened litigation, any time limitation with respect to initiating such litigation has expired; *provided further, however,* that if, before the Expiration Date, any and all pending litigation for which the Indemnified Parties are entitled to indemnification pursuant to the terms herein is dismissed or withdrawn and there is no threatened litigation, the Trustee agrees to release the Reserve.  Upon the Expiration Date or other applicable expiration or release of the Reserve on account of pending or threatened litigation (as referenced above), the Trustee shall promptly distribute to such Holders their pro rata share (defined below) of any funds remaining in the Reserve.

By execution of this letter, each Holder hereby agrees to (i) indemnify and hold harmless the Trustee and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "**Indemnified Parties**"), from and against any and all losses, claims, damages or liabilities (or actions in respect thereof) (collectively, the "**Losses**"), severally on a pro rata basis based on the Holders' pro rata share, arising out of or related to the actions taken pursuant to and to implement the directions in this letter (including but not limited to (a) the Trustee's withdrawal with prejudice of the Plan Objection and the Settlement Agreement Objection, (b) the Trustee refraining from directly or indirectly, or encouraging any other entity to directly or indirectly, objecting to, delaying, impeding, or taking any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, and (c) the Trustee refraining from supporting and

4

not pursuing with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims), and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action), arising out of or related to this letter (collectively, the "**Indemnification Obligations**"). For purposes hereunder, the term "**pro rata share**" means a fraction, the numerator of which shall be the principal balance of such Holder's aggregate holdings of the Notes as of the date of any such determination; and the denominator of which shall be the total principal balance of all Holders' aggregate holdings of the Notes as of such date.  The foregoing indemnity is in all events secondary to any funds held by the Trustee on account of principal or interest owed to the Holders (other than the Reserve) that are available to pay or satisfy the Losses.  For the avoidance of doubt, the Trustee is not required to apply the Reserve funds to satisfy the Indemnification Obligations prior to seeking reimbursement and/or payment from the Holders for any Losses.    The Indemnification Obligations of each Holder shall survive (i) the revocation or termination of this Direction Letter and (ii) irrespective of whether (a) such Holder withdraws from the Stipulation, (b) the Stipulation is terminated or (c) the Plan is not consummated.

Promptly upon receipt by an Indemnified Party of notice of any demand, claim, or commencement or threatened commencement of any action, suit, proceeding, or investigation which might constitute a Loss for which indemnity is given hereunder, the Trustee shall notify the Holders, via overnight courier or equivalent service, and shall provide to the Holders copies of all documents received by the Trustee in connection therewith. Upon such notice, in addition to the Indemnified Party's right to defend itself, the Holders may defend against the asserted Losses by counsel of the Trustee's choosing who is reasonably acceptable to the affected Indemnified Party and a majority in principal amount of the Holders.

Nothing herein shall in any way affect, limit, or impair the rights of the Trustee under the Indenture, the Notes or any related documents.  If the indemnity set forth herein shall, in the reasonable opinion of the Trustee, become insufficient or impaired, the Trustee shall have the right to request additional indemnities or to cease (or not commence) to do the acts indemnified against until such insufficiency or impairment is cured.

Each Holder agrees that, for so long as this letter remains in full force and effect it may not, at any time, sell, transfer, assign or otherwise dispose some or all of its Notes, or any option thereon or any right or interest (voting or otherwise) in any of the Notes (each a "Transfer") and any such Transfer shall be void *ab initio* and of no force and effect unless and until such transferee, assignee or buyer agrees in writing at the time of such Transfer to be bound by this letter in its entirety without revision with respect to all such transferred Notes (and any and all obligations associated therewith, including, but not limited to, the indemnification) and executes and delivers a joinder in the form of

5

Exhibit C hereto to the Trustee.  Notwithstanding anything to the contrary herein, a Holder may Transfer its Notes to or in connection with any repurchase transaction, reverse repurchase transaction, or any swap or other derivative transaction without satisfying the requirements set forth in this paragraph only if, in connection with such Transfer, the Holder (or a wholly-owned subsidiary controlled by it) retains the contractual right to exercise any voting right or other direction that may be made on account of such Notes, and such Holder exercises (or causes its wholly-owned subsidiary controlled by it to exercise) such rights so that the transferee thereof does not otherwise take any action inconsistent with such Holder's obligations under this Direction Letter.

Each Holder hereby represents and warrants that (x) this letter has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity; and (y) it has independently reviewed this letter and not relied on any information from the Trustee.

Each Holder further hereby represents, warrants and certifies that, as of the date hereof, such Holder (i) either (A) is the beneficial owner of, or (B) has investment or voting discretion (with the power and authority to bind the beneficial owner(s)) with respect to, the principal amount of Notes set forth below its signature hereto, and (ii) has full power and authority to act on behalf of, vote, direct the Trustee as to, and consent to matters concerning, such Notes.

Each Holder (i) acknowledges and consents to the Trustee's release of any of its current advisors to represent Non-Settling EFIH PIK Noteholders and (ii) agrees that it will not direct Trustee to stand down on any future objections to the Non-Settling EFIH PIK Noteholders' claims brought by the Debtors or other parties in interest (the "**Subsequent PIK Claim Objections**").

This letter shall be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof that would require application of the laws of another jurisdiction.

No alteration, amendment or modification of this letter shall be effective or binding upon any party unless in writing and duly executed by Holders constituting the "Required Holders" under the Indenture. This letter (including the indemnity set forth herein) and any direction made pursuant hereto shall be binding upon any successor or assign of the Holders.

This letter may be executed by each Holder in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single instrument.

IN WITNESS WHEREOF, each of the undersigned Holders has caused this letter to be executed and delivered as of the date first above written.

[*Signature Pages Redacted*]

[*Exhibits Excluded*]

**EXHIBIT 4**

**November 24th Direction Letter**

November 24, 2015

UMB Bank, N.A.,
as Trustee under the Indenture referred to below
2 South Broadway, Suite 600
St. Louis, Missouri 63102
Facsimile No.: (314) 612-8499
Attention: Ms. Laura Roberson

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Facsimile No.: (312) 832-4700
Attention: Harold L. Kaplan, Esquire, and Mark. F. Hebbeln, Esquire

Energy Future Intermediate Holding Company LLC
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel
and
Facsimile No.: (214) 812-4097
Attention: Treasurer

EFIH Finance Inc.
Energy Plaza
1601 Bryan Street
Dallas, Texas 7501-3411
Facsimile No.: (214) 812-6032
Attention General Counsel

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Facsimile No.: (212) 446-6460
Attention: Edward O. Sassower, P.C.
and
300 North LaSalle
Chicago, Illinois 60654
Facsimile No. (312) 862-2200
Attention: Marc Kieselstein, P.C.

Re: <u>Direction to Trustee</u>

Ladies and Gentlemen:

      Reference is made to (i) the Indenture, dated as of December 5, 2012, as amended supplemented by the First Supplemental Indenture, dated as of December 19, 2012, the Second Supplemental Indenture, dated as of January 23, 2013, and the Third Supplemental Indenture, dated as of January 30, 2013 (collectively, as further modified, supplemented and/or amended and in effect on the date hereof, the "**Indenture**"), by and among Energy Future Intermediate Holding Company LLC ("**EFIH**") and EFIH Finance Inc. (together with EFIH, the "**Issuers**"), and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee, pursuant to which the Issuers issued the 11.25%/12/25% senior toggle notes due 2018 (the "**Notes**"), and (ii) the Agreement of Resignation, Appointment and Acceptance, dated as of March 26, 2014, by and among the Issuers, The Bank of New York Mellon Trust Company, N.A., and UMB Bank, N.A., as successor indenture trustee (the "**Trustee**"). Reference is also made to (i) the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (as amended from time to time, the "**Plan**"), filed at docket number 6122 in the Issuers' chapter 11 cases pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") and jointly administered under the caption <u>In re Energy Future Holdings Corp., et al.</u>, Case No. 14-10979 (CSS) the ("**Bankruptcy Cases**"), (ii) that certain Amended & Restated Plan Support Agreement, dated as of September 11, 2015 (as amended from time to time, including by amendments dated October 27, 2015 and November 12, 2015, the "**Plan Support Agreement**") by and among the Debtors, the Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, the Consenting EFIH PIK Noteholders and certain other Entities signatory thereto, (iii) the *Objection of UMB Bank, N.A., to Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al. *Pursuant to Chapter 11 of the Bankruptcy Code* filed at docket number 6640 (the "**Plan Objection**"), (iv) the *Objection of UMB Bank, N.A., to the Motion of Energy Future Holdings Corp.*, et al. *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* filed at docket number 6641 (the "**Settlement Agreement Objection**"), (v) the *Notice of Appeal* filed by the Trustee at docket number 6970 from the *Order Sustaining the EFIH Debtors' Partial Objection to Proof of Claim No. 6347*; and (vi) the *Motion to Amend or Alter the Partial Claim Objection Orde*r (the "**Motion to Amend**") filed by the Trustee at docket number 6968, requesting that the Bankruptcy Court enter separate orders (the "**Separate Orders**") in connection with the Bankruptcy Court's opinions regarding (a) the amount for prepayment penalties, make-whole premiums and/or call premiums [D.I. 6781] (the "**Call Premium Memorandum Opinion**"), and (b) the EFIH PIK Noteholders' entitlement to post-petition interest [D.I. 6782] (the "**PPI Memorandum Opinion**"), upon the entry of which the Trustee will file separate notices of appeal (the "**Notices of Appeal**," and the appeals commenced upon the filing of the Notices of Appeal, the "**Appeals**," and together with the Motion to Amend and all

2

actions of the Trustee in connection with the Notices of Appeal and the Motion to Amend, the "**Appellate Process**"), and (vii) the "Direction to Trustee" dated November 9, 2015 and delivered by certain of the undersigned to the Trustee (the "**November 9 Letter**").  Capitalized terms used but not defined in this letter (the "**Direction Letter**") shall have the meanings provided in the Plan, the PIK Settlement Order (defined below), or the Indenture, as applicable.

Further reference is made to (i) Section 6.01 of the Indenture, which provides that the commencement of the Bankruptcy Cases constitutes an Event of Default thereunder, (ii) Section 6.03 of the Indenture, which provides that, if an Event of Default occurs and is continuing, the Trustee may pursue any available remedy to collect the payment of principal, premium, if any, and interest on the Notes or to enforce the performance of any provision of the Notes or the Indenture and (iii) Section 6.05 of the Indenture, which provides that the Required Holders (as defined in the Indenture) of at least a majority in aggregate principal amount of Notes may direct the time, method and place by which the Trustee pursues any remedies available to the Trustee or of exercising any trust or power conferred on the Trustee.

Each of the undersigned parties (each, a "**Holder**" and collectively, the "**Holders**") hereby represents and warrants that it is the beneficial owner of the aggregate principal amount of Notes set forth opposite such Holder's name on its signature page hereto (the "**Represented Holdings**") and agrees to provide the Trustee with verification of such Holders' aggregate principal amount of Notes by medallion stamp or such other means acceptable to the Trustee as soon as reasonably practical (the "**Holdings Verification**"). As of the date hereof, such Holders, collectively, hold a majority of the aggregate principal amount of the Notes presently outstanding (after deducting the aggregate principal amount of the Notes, if any, owned by the Issuer or any Affiliate of the Issuer pursuant to Section 2.09 of the Indenture) and, accordingly, such Notes constitute the "Required Debt" under the Indenture and such Holders constitute the "Required Holders" under the Indenture for the purposes hereunder.

Pursuant to the November 9 Letter, certain of the Holders notified the Trustee and the Issuers and directed the Trustee immediately to, upon receipt of (i) the November 9 Letter by a majority in aggregate principal amount of the outstanding Notes and (ii) entry of an order of the Bankruptcy Court, not subject to any stay, consistent with the form attached to the November 9 Letter, and notwithstanding any prior direction by the Holders or any other holders of the Notes to the contrary, (x) dismiss, without prejudice, the Plan Objection and the Settlement Agreement Objection (collectively, the "**Objections**") (and upon receipt of the Holdings Verification from each Holder, dismiss such Objections with prejudice), (y) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, confirmation, approval, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, and (z) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of postpetition interest (except as

contemplated herein) or any Makewhole Claims, with the proviso that, notwithstanding anything to the contrary in the November 9 Letter or in the October 27 Direction (as defined in the November 9 Letter), the Trustee may participate as a nominal party in the Appeals, solely for the purpose of preserving appellate jurisdiction, with such costs other than in respect of the Appellate Process and the Appellate Suspension Process as defined below, to be borne solely by the Non-Settling EFIH PIK Noteholders, provided, however, the rights of all parties with respect to any such litigation or Appeals are reserved (the "**November 9 Direction**"). The undersigned Holders direct the Trustee to, upon (i) receipt of this letter by the Trustee from the Required Holders (as defined in the Indenture), and (ii) entry by the Bankruptcy Court of the *Order Approving Settlement of Certain EFIH PIK Noteholder Claims and Authorizing Debtors to Enter Into and Perform Under Stipulations* (the "**PIK Settlement Order**"), substantially in the form attached hereto as Exhibit 1, which shall not be subject to any stay, and notwithstanding any prior direction by the Holders or any other holders of the Notes to the contrary, (a) comply with the November 9 Direction (subject to any modifications set forth herein) and (b) promptly following the Trustee's filing of the Notices of Appeal, to take all actions reasonably necessary to suspend the Appeals and, upon consummation of the Plan, dismiss the Appeals with prejudice (the "**Appellate Suspension Process**"). The undersigned Holders who provided the November 9 Direction also direct that to the extent of any inconsistency between the November 9 Letter and this Direction Letter, this Direction Letter shall prevail and supersede the November 9 Letter.

Each Holder hereby directs, consents to and shall not oppose the Trustee's receipt of distributions under the Plan and the use of such distributions to pay for the Trustee's fees, costs and expenses as contemplated under Sections 6.12, 6.13 and 7.07 of the Indenture (the "**Charging Lien**"); *provided that*, except with respect to the Appellate Process and the Appellate Suspension Process, the Trustee agrees not to apply the Charging Lien to any undersigned Holder's aggregate principal amount of Notes for any fees, costs and expenses incurred in connection with litigation relating to pursuing allowance, liquidation, or payment of postpetition interest, Makewhole Claims or Subsequent PIK Claim Objections (as defined below) that arise after the date on which the PIK Settlement Order is entered by the Bankruptcy Court, unless the Plan is not consummated. For the avoidance of doubt, nothing herein shall be construed as limiting the Trustee's rights under Sections 6.12, 6.13 and 7.07 of the Indenture, other than as expressly set forth in the preceding proviso, including the payment of any fees, costs and expenses of the Trustee incurred in connection with seeking allowance or payment of postpetition interest claims or Makewhole Claims prior to the aforementioned date. Each Holder hereby further directs that, unless the Plan is not consummated, the Trustee shall not seek payment by or recovery from the Issuers or their bankruptcy estates with respect to any fees or expenses of the Trustee that may be recovered from money or property held or collected by the Trustee under Sections 6.12, 6.13 and 7.07 of the Indenture with respect to the Notes held by the Holders; *provided, however*, nothing here shall limit or impair the right of the Trustee to seek payment by or recovery from the Issuers or their bankruptcy estates with respect to any fees or expenses of the Trustee with respect to the Notes held by the Non-Settling EFIH PIK Noteholders. The Trustee has informed the Holders that pursuit by the Trustee of payment of such fees and expenses by the Issuers

and their bankruptcy estates shall be conditioned on the Trustee's receipt of an indemnification and fee reimbursement agreement from the Non-Settling EFIH PIK Noteholders holding a majority in principal amount of the EFIH PIK Notes held by all Non-Settling EFIH PIK Noteholders satisfactory in form and substance to the Trustee.

By execution of this letter, and without limiting the indemnification provided to the Trustee under the November 9 Letter, each Holder hereby agrees to (i) indemnify and hold harmless the Trustee and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "**Indemnified Parties**"), from and against any and all losses, claims, damages or liabilities (or actions in respect thereof) (collectively, the "**Losses**"), severally on a pro rata basis based on the Holders' pro rata share, arising out of or related to the actions taken pursuant to and to implement the directions in this letter (including but not limited to (a) the Trustee's withdrawal with prejudice of the Plan Objection and the Settlement Agreement Objection, (b) the Trustee refraining from directly or indirectly, or encouraging any other entity to directly or indirectly, objecting to, delaying, impeding, or taking any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Claims Settlement, and the EFIH PIK Note Claims Settlement, (c) the Trustee refraining from supporting and not pursuing with respect to such notes payment of postpetition interest (except as contemplated herein) or any Makewhole Claims, (d) the Trustee's actions in connection with the Appellate Process and Appellate Suspension Process, and (e) the Trustee's actions arising out of, related to or in connection with the settlement set forth in the Stipulation and PIK Settlement Order), and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action), arising out of or related to this letter (collectively, the "**Indemnification Obligations**"). For purposes hereunder, the term "**pro rata share**" means a fraction, the numerator of which shall be the principal balance of such Holder's aggregate holdings of the Notes as of the date of any such determination; and the denominator of which shall be the total principal balance of all Holders' aggregate holdings of the Notes as of such date. The foregoing indemnity is in all events secondary to any funds held by the Trustee on account of principal or interest owed to the Holders that are available to pay or satisfy the Losses. The Indemnification Obligations of each Holder shall survive (i) the revocation or termination of this Direction Letter and (ii) irrespective of whether (a) such Holder withdraws from the Stipulation, (b) the Stipulation is terminated or (c) the Plan is not consummated.

Promptly upon receipt by an Indemnified Party of notice of any demand, claim, or commencement or threatened commencement of any action, suit, proceeding, or investigation which might constitute a Loss for which indemnity is given hereunder, the Trustee shall notify the Holders, via overnight courier or equivalent service, and shall provide to the Holders copies of all documents received by the Trustee in connection

therewith. Upon such notice, in addition to the Indemnified Party's right to defend itself, the Holders may defend against the asserted Losses by counsel of the Trustee's choosing who is reasonably acceptable to the affected Indemnified Party and a majority in principal amount of the Holders.

Nothing herein shall in any way affect, limit, or impair the rights of the Trustee under the Indenture, the Notes or any related documents. If the indemnity set forth herein shall, in the reasonable opinion of the Trustee, become insufficient or impaired, the Trustee shall have the right to request additional indemnities or to cease (or not commence) to do the acts indemnified against until such insufficiency or impairment is cured.

Each Holder agrees that, for so long as this letter remains in full force and effect it may not, at any time, sell, transfer, assign or otherwise dispose some or all of its Notes, or any option thereon or any right or interest (voting or otherwise) in any of the Notes (each a "**Transfer**") and any such Transfer shall be void *ab initio* and of no force and effect unless and until such transferee, assignee or buyer agrees in writing at the time of such Transfer to be bound by this letter in its entirety without revision with respect to all such transferred Notes (and any and all obligations associated therewith, including, but not limited to, the indemnification) and executes and delivers a joinder to the Trustee. Notwithstanding anything to the contrary herein, a Holder may Transfer its Notes to or in connection with any repurchase transaction, reverse repurchase transaction, or any swap or other derivative transaction without satisfying the requirements set forth in this paragraph only if, in connection with such Transfer, the Holder (or a wholly-owned subsidiary controlled by it) retains the contractual right to exercise any voting right or other direction that may be made on account of such Notes, and such Holder exercises (or causes its wholly-owned subsidiary controlled by it to exercise) such rights so that the transferee thereof does not otherwise take any action inconsistent with such Holder's obligations under this Direction Letter.

Each Holder hereby represents and warrants that (x) this letter has been duly authorized, executed and delivered and constitutes its legal, valid and binding obligations enforceable in accordance with their terms, except as such enforceability may be limited by (i) bankruptcy, insolvency or other similar laws affecting creditors' rights generally and (ii) general principles of equity; and (y) it has independently reviewed this letter and not relied on any information from the Trustee.

Each Holder further hereby represents, warrants and certifies that, as of the date hereof, such Holder (i) either (A) is the beneficial owner of, or (B) has investment or voting discretion (with the power and authority to bind the beneficial owner(s)) with respect to, the principal amount of Notes set forth below its signature hereto, and (ii) has full power and authority to act on behalf of, vote, direct the Trustee as to, and consent to matters concerning, such Notes.

Each Holder agrees that it will not direct Trustee to stand down on any future objections to the Non-Settling EFIH PIK Noteholders' claims brought by the Debtors or

6

other parties in interest (the "**Subsequent PIK Claim Objections**").  The Trustee has informed the Holders that the Trustee's participation in defending any Subsequent PIK Claim Objections shall be conditioned on the Trustee's receipt of an indemnification and fee reimbursement agreement from the Non-Settling EFIH PIK Noteholders holding a majority in principal amount of the EFIH PIK Notes held by all Non-Settling EFIH PIK Noteholders satisfactory in form and substance to the Trustee.

This letter shall be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the conflict of laws principles thereof that would require application of the laws of another jurisdiction.

No alteration, amendment or modification of this letter shall be effective or binding upon any party unless in writing and duly executed by Holders constituting the "Required Holders" under the Indenture. This letter (including the indemnity set forth herein) and any direction made pursuant hereto shall be binding upon any successor or assign of the Holders.

This letter may be executed by each Holder in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single instrument.

IN WITNESS WHEREOF, each of the undersigned Holders has caused this letter to be executed and delivered as of the date first above written.

[*Signature Pages Redacted*]

[*Exhibit Excluded*]