## Exhibit A

**Committee Settlement Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**ORDER APPROVING SETTLEMENT AMONG DEBTORS,
EFH COMMITTEE, EFH NOTES TRUSTEE, AND CERTAIN OTHER PARTIES**

Upon the *Amended Notice of Settlement Among the Debtors, the EFH Committee, and the EFH Notes Trustee* [D.I. ____] filed by the above-captioned debtors and debtors in possession (the "Debtors") and the Debtors' request (the "Requested Relief") that this court enter an order (this "Settlement Order"), (a) approving the Settlement & Support Agreement, attached hereto as Exhibit 1 (the "Agreement"),[2] by and among (i) the Debtors, (ii) the EFH Committee, (iii) the EFH Notes Trustee, (iv) the Consenting TCEH First Lien Creditors, (v) the Plan Sponsors, and (vi) the TCEH Committee; and (b) authorizing the Debtors to take any and all actions reasonably necessary to consummate, and to perform any and all obligations contemplated by the Agreement; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the Requested Relief is in the best interests of the Debtors' estates, their creditors, and other parties in interest;

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement and, if not defined therein, the Plan.

and the Court having found that the Debtors provided appropriate notice of the Requested Relief and the opportunity for a hearing on the Requested Relief under the circumstances; and the Court having reviewed the Agreement and having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Requested Relief and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Requested Relief is **GRANTED** as set forth herein, and any objections to the Requested Relief not previously withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled with prejudice, except as set forth in paragraph 9 of this Settlement Order.

2.      The Parties have been engaged in extensive arm's-length negotiations with each other in good faith, and as a result of such negotiations, the Parties have resolved to enter into the Agreement.

3.      Pursuant to Fed. R. Bankr. P. 9019(a), the Agreement, a true and correct copy of which is attached hereto as Exhibit 1, and the settlement and compromises set forth therein are hereby approved in their entirety.  All of the terms of the Agreement are incorporated herein by reference and upon entry of this Settlement Order are fully binding, effective, and enforceable as to each of the Parties to the Agreement, their respective successors, assigns, heirs, executors, administrators, and representatives, including, for the avoidance of doubt, any transferee of any Party.  This Settlement Order shall be final, binding, and effective on all parties in interest in the Debtors' Chapter 11 Cases (including any subsequently appointed chapter 11 or chapter 7 trustee).

4.      The EFH Notes Trustee Objections, the EFH Committee Objection, as well as the EFH Committee's objections to the Debtors' proposed settlements with certain holders of Claims derived from or based upon the EFIH Senior Toggle Notes (as defined in the Plan) and Fidelity pending in the Chapter 11 Cases, are hereby deemed resolved and withdrawn pending the Effective Date.

5.      The limitations on the activities of the EFH Committee under the Agreement are hereby approved, and the EFH Committee shall use reasonable efforts to minimize its participation in the Chapter 11 Cases in accordance with the Agreement.  The EFH Committee has acted prudently, in good faith, and in compliance with its applicable fiduciary duties in agreeing to such limitations on its activities and shall have no liability to any person for any act or omission arising out of or related to the Agreement or performance by the EFH Committee of its obligations thereunder; *provided*, *however*, that the foregoing shall not prevent any Party to the Agreement from seeking relief from the Court to direct performance by the EFH Committee of its commitments under the Agreement.

6.      TCEH is hereby authorized and directed to perform its obligations under the Agreement, including, without limitation, with respect to the Contractual Subordination of the Settlement Intercompany Claim.  Other than as provided in the Settlement Agreement, TCEH shall not sell, assign, or transfer its right, title, and interest in the Settlement Intercompany Claim unless the purchaser, assignee, or transferee executes a joinder to the Agreement in a form reasonably acceptable to the Parties.  Subject to further order of the Court, any other purported sale, assignment, or transfer of TCEH's right, title, and interest in the Settlement Intercompany Claim shall be void and without effect.

7.      Upon the later of entry of this Settlement Order and entry of the *Order Approving Settlement of Certain EFIH PIK Noteholder Claims and Authorizing Debtors to Enter Into and Perform Under Stipulations* (the "EFIH PIK Settlement Order"), all holders of EFIH PIK Note Claims or EFIH Unexchanged Note Claims (each as defined in the Plan) who have not previously entered into settlements with the Debtors with respect to their EFIH PIK Note Claims as of such date (the "Non-Settling EFIH PIK Noteholders") shall receive reasonable notice indicating that they have been deemed "Subsequent Settling EFIH PIK Noteholders" under the EFIH PIK Settlement Order (or, with respect to holders of EFIH Unexchanged Note Claims, that such Claims will be Allowed for purposes of the Plan in equivalent amounts) and shall be (i) bound by the Subsequent PIK Stipulation[3] (as defined in the EFIH PIK Settlement Order) and the EFIH PIK Settlement Order and (ii) entitled to Allowance of their EFIH PIK Note Claims or EFIH Unexchanged Note Claims (as applicable) to the same extent that the EFIH PIK Note Claims of the Subsequent Settling EFIH PIK Noteholders are Allowed under the Subsequent PIK Stipulation; *provided*, *however*, that such Non-Settling EFIH PIK Noteholders shall not be bound by either the Subsequent PIK Stipulation or this EFIH PIK Settlement Order in their capacity as Holders of any Claims other than EFIH PIK Note Claims or EFIH Unexchanged Note Claims; *provided*, *further*, *however*, that such Non-Settling EFIH PIK Noteholders shall not be bound by Section 3.2 of the Subsequent PIK Stipulation in any capacity, but any transferee of such a Non-Settling EFIH PIK Noteholder shall be bound by the Subsequent PIK Stipulation and this EFIH PIK Settlement Order to the same extent as the transferring Non-Settling EFIH PIK Noteholder; *provided*, *further*, *however*, that such Non-Settling EFIH PIK Noteholders may elect to opt out of the Subsequent PIK Stipulation and designation as Subsequent Settling EFIH PIK

---

[3]    A copy of the Subsequent PIK Stipulation is attached hereto as Exhibit 2.

Noteholders (or, with respect to holders of EFIH Unexchanged Note Claims, allowance of their Claims in equivalent amounts), and reserve all rights related thereto, by delivering a notice of such election, on or before thirty (30) calendar days after entry of this Settlement Order, to (a) counsel to the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Chad J. Husnick      (chusnick@kirkland.com)      and      Steven      N.      Serajeddini (steven.serajeddini@kirkland.com); (b) counsel to the ad hoc group of TCEH unsecured noteholders, White & Case LLP, Southeast Financial Center, 200 South Biscayne Boulevard, Suite 4900, Miami, Florida 33131, Attn: Thomas E Lauria (tlauria@whitecase.com) and Matthew C. Brown (mbrown@whitecase.com); and (c) counsel to the EFIH PIK Note Trustee, Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, Bank of America Tower, New York, New York 10036, Attn: Ira S. Dizengoff (idizengoff@akingump.com) and Scott L. Alberino (salberino@akingump.com).

8.      The EFH Notes Trustee has acted prudently and in good faith in the Chapter 11 Cases, has, as of the date hereof, fully and properly performed and discharged all of its duties under the EFH Note Indentures, and shall have no (nor incur any) liability for, and is released and exculpated from any cause of action or any claim related to any act or omission in connection with, relating to, arising out of, or required under, the Agreement, this Settlement Order, or any other related documents or agreements; *provided*, *however*, that the foregoing shall not release or exculpate the EFH Notes Trustee from liability for any act or omission that is inconsistent with the EFH Notes Trustee's obligations, commitments, or undertakings under the Agreement.

9.      Notwithstanding anything to the contrary in this Settlement Order or the Agreement, this Settlement Order shall not constitute this Court's approval of any amounts

payable by the Debtors or their estates on account of professional fees and expenses incurred by the EFH Notes Trustee, which amounts, if any, shall be Allowed or otherwise authorized and paid by the Debtors or their estates only in connection with the Plan (including through the charging lien under EFH Notes Indenture) or further order of the Court.

10.     The parties to the Agreement are authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers and to take any and all actions reasonably necessary or appropriate to consummate, complete, execute, and implement the Agreement in accordance with the terms and conditions thereof.

11.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014, or otherwise, the terms and conditions of this Settlement Order shall be effective and enforceable immediately upon entry.

12.     In the event of any inconsistencies between this Settlement Order and the Agreement, this Settlement Order shall govern in all respects.

13.     The Debtors are hereby authorized and empowered to take all actions necessary to implement the relief granted in this Settlement Order.

14.     The Court shall retain jurisdiction over any matter or disputes arising from or relating to the interpretation, implementation or enforcement of the Agreement and this Settlement Order.

Dated: _____, 2015

_____
The Honorable Christopher S. Sontchi
United States Bankruptcy Judge

**EXHIBIT 1**

**Agreement**

EXECUTION VERSION

## SETTLEMENT & SUPPORT AGREEMENT

This SETTLEMENT & SUPPORT AGREEMENT (this "**Agreement**")[1] is made and entered into as of November 23, 2015 (the "**Settlement Effective Date**"), by and among the following parties:

(a) (i) Energy Future Holdings Corp., a Texas corporation ("**EFH**"); (ii) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company; (iii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; (iv) EECI, Inc., a Nevada corporation and an indirect, wholly-owned subsidiary of EFH, (v) EEC Holdings, Inc., a Nevada corporation and an indirect, wholly-owned subsidiary of EFH, (vi) LSGT Gas Company LLC, a Texas limited liability company and an indirect, wholly-owned subsidiary of EFH, and (vii) LSGT SACROC, Inc., a Texas corporation and an indirect, wholly-owned subsidiary of EFH (the entities in clauses (i)–(vii), collectively, the "**EFH Debtors**"); and (viii) Texas Competitive Electric Holdings Company LLC ("**TCEH**," and collectively with the EFH Debtors, the "**Debtors**"), a Delaware limited liability company and an indirect, wholly-owned subsidiary of EFH;

(b) the statutory committee of unsecured creditors of EFH, EFIH, EFIH Finance, and EECI, Inc. (the "**EFH Committee**");

(c) American Stock Transfer & Trust Company, LLC, in its capacity as successor trustee under the EFH Note Indentures (as defined below) (the "**EFH Notes Trustee**");

(d) the undersigned Consenting TCEH First Lien Creditors (as such term is defined in the PSA), solely in their capacities as beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders of TCEH First Lien Claims (as defined in the PSA) and not with respect to any other Debtor Claims/Interests (as defined in the PSA) held by such entities;

(e) the Plan Sponsors (as such term is defined in the Plan); and

(f) the TCEH Committee (as such term is defined in the Plan).

Each Debtor, the EFH Committee, the EFH Notes Trustee, each Consenting TCEH First Lien Creditor, the Plan Sponsors, and the TCEH Committee are referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**."

**WHEREAS**, on April 11, 2014, the EFH Notes Trustee succeeded The Bank of New York Mellon and The Bank of New York Mellon Trust Company, N.A. as indenture trustee under (a) that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series P Indenture**") dated as of November 1, 2004, by and among EFH, as issuer, and the EFH Notes

---

[1]    Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein or if otherwise provided, the PSA, as defined below.

Trustee, providing for the issuance of 5.55% Series P Notes due November 15, 2014 (the "**EFH Legacy Series P Notes**"); (b) that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series Q Indenture**") dated as of November 1, 2004, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 6.50% Series Q Notes due November 15, 2024 (the "**EFH Legacy Series Q Notes**"); (c) that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series R Indenture**" and together with the EFH Legacy Series P Indenture and EFH Legacy Series Q Indenture, the "**EFH Legacy Note Indentures**") dated as of November 1, 2004, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 6.55% Series R Notes due November 15, 2034 (the "**EFH Legacy Series R Notes**" and together with the EFH Legacy Series P Notes and the EFH Legacy Series Q Notes, the "**EFH Legacy Notes**"); (d) that certain indenture (as amended and/or supplemented, the "**EFH LBO Note Indenture**") dated as of October 31, 2007, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 10.875% senior notes due November 1, 2017 (the "**EFH LBO Senior Notes**") and 11.25%/12.00% toggle notes due November 1, 2017 (the "**EFH LBO Toggle Notes**," and together with the EFH LBO Senior Notes, the "**EFH LBO Notes**"); (e) that certain indenture (as amended and/or supplemented, the "**EFH 2019 Note Indenture**") dated as of November 16, 2009, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 9.75% unsecured notes due October 15, 2019 (the "**EFH 2019 Notes**"); and (f) that certain indenture (as amended and/or supplemented, the "**EFH 2020 Note Indenture**," and together with the EFH 2019 Note Indenture, the "**EFH Unexchanged Note Indentures**," and together with the EFH LBO Note Indentures and the EFH Legacy Note Indentures, the "**EFH Note Indentures**") dated as of January 12, 2010, by and among EFH, as issuer, and the EFH Notes Trustee, providing for the issuance of 10.00% unsecured notes due January 15, 2020 (the "**EFH 2020 Notes**," and together with the EFH 2019 Notes, the "**EFH Unexchanged Notes**");

**WHEREAS**, on April 29, 2014 (the "**Petition Date**") the Debtors and certain of their affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, the EFH Committee was appointed in the Chapter 11 Cases by the U.S. Trustee on October 27, 2014;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Settlement Agreement* (the "**Settlement Agreement**") setting forth the terms and conditions on which such parties agreed to settle certain alleged claims and litigation among them, which Settlement Agreement is not inconsistent with the terms of this Agreement;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Plan Support Agreement* (as subsequently amended, the "**PSA**") setting forth the terms and conditions on which such parties will pursue the approval and consummation of the Plan and the Restructuring Transactions;

**WHEREAS**, on September 21, 2015, the Debtors filed in the Chapter 11 Cases the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (the "**Plan**," and as amended from time to time in accordance herewith, the "**Amended Plan**"), which provides that EFH Legacy Note Claims, EFH LBO Note Claims (both primary claims at EFH and guaranty claims at the EFIH Debtors), and EFH Unexchanged Note Claims shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest at the Federal Judgment Rate, but not including any Makewhole Claims;

**WHEREAS**, the Plan serves as the Debtors' objection to all other claims asserted and amounts alleged to be owed with respect to the EFH Legacy Notes and the EFH LBO Notes;

**WHEREAS**, on October 7, 2015, the EFH Notes Trustee filed a motion for partial summary judgment [D.I. 6386] (the "**Motion for Partial Summary Judgment**") in response to the Debtors' objection with respect to Makewhole Claims on the EFH Legacy Series Q Notes and EFH Legacy Series R Notes arguing that payment of Makewhole Claims is compelled as a matter of law by the applicable indentures and governing law;

**WHEREAS**, on October 14, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Legacy Notes* [D.I. 6463] (the "**EFH Legacy Note Claims Objection**"), objecting to the EFH Legacy Note Claims to the extent they, among other things, assert an entitlement to (a) make-whole premiums, (b) postpetition interest (including default interest and interest on overdue interest payments), (c) unamortized original issue discount, (d) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date, and (e) fees and expenses, including any right to indemnification from EFH or any other Debtor;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp., et al.*, *to Proofs of Claim 7475, 7480, 7481 and 6874-6943 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH LBO Notes* [D.I. 6596] (the "**EFH LBO Note Claims Objection**"), objecting to the EFH LBO Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, and (b) assert claims against the Debtors other than EFH, as issuer, and Energy Future Competitive Holdings Company LLC and EFIH, as guarantors;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp., et al., to Proofs of Claim 7476, 7482, and 6734-6873 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Unexchanged Notes* [D.I. 6599] (the "**EFH Unexchanged Note Claims Objection**," and collectively with the EFH Legacy Note Claims Objection and the EFH LBO Note Claims Objection, the "**Claims Objections**"), objecting to the EFH Unexchanged Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) redemption premiums, (iii) no-call

damages, or (iv) postpetition interest (including default interest and interest on overdue interest payments) and (b) assert claims against the Debtors other than against EFH;

**WHEREAS**, on October 23, 2015, the EFH Notes Trustee filed (a) the *EFH Indenture Trustee's Objection and Pretrial Brief for Phase I Trial Regarding Confirmation of Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al.* [D.I. 6609] and (b) the *EFH Indenture Trustee's Objection to Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 6646] (together, the "**EFH Notes Trustee Objections**");

**WHEREAS**, on October 23, 2015, the EFH Committee filed the *Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6627] and the *Supplement to Trial Brief and Omnibus Objection of the EFH Official Committee to (I) Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6643] (collectively, the "**EFH Committee Objection**");

**WHEREAS**, on October 28, 2015, the EFH Notes Trustee filed the *Response of EFH Legacy Notes Trustee to Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. LLC as Indenture Trustee for EFH Legacy Notes* [D.I. 6718], arguing that the EFH Legacy Note Claims Objection and EFH LBO Note Claims Objection should be overruled;

**WHEREAS**, on November 12, 2015, funds and accounts advised or sub-advised by Fidelity Management & Research Company or one of its affiliates (collectively, "**Fidelity**") holding approximately 73% of the EFH Legacy Notes and approximately 75% of the EFH LBO Notes instructed the EFH Notes Trustee to withdraw its objection to the Settlement Agreement and the Plan as it relates to all EFH Legacy Notes and EFH LBO Notes (the "**Fidelity Instruction**"), and certain other large holders of EFH Legacy Notes and EFH LBO Notes are in individual settlement discussions with the Debtors;

**WHEREAS**, notwithstanding the Fidelity Instruction, the EFH Committee has informed the other Parties that it intends to prosecute the EFH Committee Objection (a) to the Plan in the absence of the provisions of this Agreement relating to the allowed claims of holders of unsecured claims who are not in direct negotiations with the Debtors and (b) to the Settlement Agreement in the absence of the subordination provisions of this Agreement for the benefit of the holders of general unsecured claims in those classes to which the Fidelity Instruction does not relate; and

**WHEREAS**, the Debtors, the EFH Committee, and the EFH Notes Trustee and certain other parties in interest in the Chapter 11 Cases have been engaged in good faith negotiations

4

with each other regarding the disputes with respect to the Plan, the Settlement Agreement, the EFH Legacy Notes, the EFH LBO Notes, and the EFH Unexchanged Notes, and the Parties have reached agreement with each other with respect to such disputes on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.    Effective Date of Agreement**.

This Agreement shall become effective and binding on each of the Parties upon the entry by the Bankruptcy Court of an order approving this Agreement (the "**Approval Order**").

**Section 2.    Settlement of EFH Disputed Claims**.

(a)    With respect to the Claims Objections, the EFH Notes Trustee agrees that, other than as may be provided to any non-settling holders of EFH Legacy Notes, EFH LBO Notes, or EFH Unexchanged Notes, no Makewhole Claims shall be paid under the Amended Plan; *provided*, that the EFH Notes Trustee shall retain the right to assert any entitlement to the Makewhole Claims following a Plan Support Termination Date.  Upon the Plan Support Termination Date, the EFH Notes Trustee shall use its reasonable efforts to coordinate to the greatest extent possible with the holders of the EFH Legacy Note Claims in connection with the assertion of any claims on account of the EFH Legacy Notes.

(b)    The EFH Notes Trustee retains the right to seek administrative expense status with respect to any claims for indemnity, fees, or expenses under the EFH Note Indentures.

(c)    Subject to confirmation and consummation of the Amended Plan:

(i)    (A) each holder of Claims derived from or based upon the EFH Unexchanged Notes (the "**EFH Unexchanged Note Claims**") and (B) each holder of Claims derived from or based upon the EFH Legacy Notes (the "**EFH Legacy Note Claims**") and the EFH LBO Notes (the "**EFH LBO Note Claims**") (together with any affiliate or funds under common or affiliated management) who holds less than $10 million in aggregate principal amount of EFH Legacy Note Claims and EFH LBO Note Claims as of November 20, 2015, shall have included as part of its Allowed Claims under the Amended Plan accrued but unpaid postpetition interest on the principal amount of EFH Unexchanged Notes, EFH Legacy Notes, or EFH LBO Notes (as applicable) at the non-default contract rate set forth in the applicable indenture; *provided*, *however*, that the aggregate principal amount of all EFH Unexchanged Notes, EFH Legacy Notes, and EFH LBO Notes that will receive such treatment under the Amended Plan as a result of this Agreement shall not exceed $40 million;

(ii)    the Debtors shall not elect to Reinstate any of the EFH Legacy Note Claims under the Amended Plan;

(iii)     any EFH Legacy Note Claims, EFH LBO Note Claims, or EFH Unexchanged Note Claims held by Fidelity will be afforded treatment under the Amended Plan as set forth in that certain *Stipulation*, dated November 12, 2015, by and among Fidelity, EFH, EFIH, and EFIH Finance (the "**Fidelity Stipulation**");

(iv)     the EFH Notes Trustee and its professionals shall be included in the release provisions of the Amended Plan;

(v)     the Amended Plan shall provide that, subject to the Bankruptcy Code and all applicable law, Reorganized EFH will pay in full as part of the EFH Notes Trustee's Allowed Claim any indemnification claims of the EFH Notes Trustee payable under any of the EFH Legacy Note Indentures, the EFH LBO Note Indenture, or the EFH Unexchanged Note Indentures, whether asserted or accruing before or after the Effective Date.  In connection with any amounts claimed to be due and allowable the EFH Notes Trustee shall submit statements in the first instance to Reorganized EFH which shall either pay such amounts within thirty days of submission of a statement or object to payment and describe the reasons that such payment obligation is disputed, in which case the EFH Notes Trustee shall request that the Court make a determination with regard to whether or not the amounts claimed are due and properly included in the EFH Notes Trustee's Allowed Claim, and all Parties shall cooperate to have such dispute determined on an expedited basis; and

(vi)     the Amended Plan shall provide that (A) the reasonable and documented fees and expenses of the EFH Notes Trustee (including those of its counsel, agents, and advisors) incurred through the Amended Plan's Effective Date, in an amount not to exceed $5.5 million, shall be paid on the Amended Plan's Effective Date; and (B) for fees and expenses in excess of such amount, any rights of the EFH Notes Trustee to priority of payment and/or to exercise charging liens pursuant to the applicable EFH Note Indenture are preserved.

(d)     Except as provided in the preceding subsection (c)(i), the rights, if any, to obtain payment of postpetition interest and Makewhole Claims to the extent permitted or required under the Bankruptcy Code, if any, of any holders of EFH Legacy Notes Claims or EFH LBO Note Claims that have not entered into a settlement with the Debtors providing otherwise, shall not be affected by the Amended Plan or this Agreement, and such non-settling holders shall have the right to be heard with respect to such rights, subject to (A) any subsequent settlement with the Debtors providing otherwise or (B) any Final Order of the Bankruptcy Court disposing of such matters;  *provided*, that the Parties, as applicable, will use reasonable efforts to cooperate to put in place procedures for such non-settling holders of EFH Legacy Note Claims and EFH LBO Note Claims to prosecute such claims directly.

(e)     The Debtors shall request and use their reasonable efforts to obtain, but shall have no obligation to obtain, a finding in (A) the order approving the Fidelity Stipulation, (B) the Approval Order, and (C) the Confirmation Order providing that the EFH Notes Trustee (Y) has acted prudently and in good faith in its actions in the Chapter 11 Cases and (Z) has fully and properly performed and discharged all of its duties under each of the EFH Note Indentures, at law and in equity.

(f)    The Confirmation Order shall be consistent with this Agreement and will include provisions directing the Depository Trust Company, participants, and any intermediaries to fully cooperate and facilitate in making the distributions contemplated herein.

(g)    The Amended Plan and the Confirmation Order shall be in form and substance satisfactory to the EFH Committee and the EFH Notes Trustee, solely with respect to consistency with this Agreement.

**Section 3.**    **Plan Obligations**.

(a)    Upon entry of the Approval Order, the EFH Committee and the EFH Notes Trustee shall (i) support, and shall not object to, litigate against, or otherwise impair, hinder, or delay the Debtors' pursuit of confirmation and consummation of the Amended Plan or approval of any related transactions, documents, or settlements in the Chapter 11 Cases, including pursuant to the Settlement Agreement and any other claim settlements, in each case as pending on the docket of the Chapter 11 Cases as of the date hereof, and (ii) hold in abeyance any and all discovery requests, appeals, or objections related to the foregoing or any matters related to the allowance or disallowance of fees, expenses, or claims, including Makewhole Claims, in each of cases (i) and (ii) except as otherwise contemplated by this Agreement.

(b)    The Debtors and the Plan Sponsors shall agree not to amend the Amended Plan, the Settlement Agreement, or any related transactions, documents, or settlement in a manner inconsistent with the terms hereof without the prior consent of the EFH Committee and the EFH Notes Trustee or order of the Bankruptcy Court.

(c)    The rights to seek payment of postpetition interest and Makewhole Claims to the extent permitted or required under the Bankruptcy Code, if any, of any holders of EFIH Unsecured Note Claims that have not entered into a settlement with the Debtors providing otherwise, shall not be affected by the Amended Plan, subject to (i) any subsequent settlement with the Debtors providing otherwise or (ii) any Final Order of the Bankruptcy Court providing otherwise.  The terms of any subsequent settlement related to postpetition interest or Makewhole Claims between the Debtors and any one or more holders of EFIH Unsecured Note Claims approved by the Bankruptcy Court after November 20, 2015, shall be made available to all holders of EFIH Unsecured Note Claims pursuant to such procedures as the Debtors and the EFH Committee shall agree.

(d)    The Debtors shall amend the Plan to include the EFH Committee and its professionals in the Amended Plan's release and exculpation provisions.

(e)    The Plan shall be amended to clarify or otherwise provide that: (i) Legacy General Unsecured Claims Against the EFH Debtors filed on or before any applicable bar date (the "**Applicable Legacy General Unsecured Claims**") shall be Reinstated; *provided*, *however*, that in the case of any Applicable Legacy General Unsecured Claim that is also asserted, whether in a Proof of Claim or otherwise, as a Claim against the TCEH Debtors, such Claim against the TCEH Debtors may be treated, estimated, and discharged in accordance with the Amended Plan and applicable law; (ii) the respective Claims

of EFH, LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. against one or more of EFH, LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. (the "**Legacy Intercompany Claims**") shall be Reinstated against the applicable Debtors; and (iii) the Interests in LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. shall be Reinstated.  All rights and defenses with respect to any appeal of the order approving the asbestos bar date are preserved, including rights, if any, to appeal such order, and the Debtors' defenses to such appeal, including that any such appeal is time-barred.

(f)    The Debtors shall use commercially reasonable efforts to provide the EFH Committee and counsel to the Consenting TCEH First Lien Creditors with EFH's projected cash balances on the effective date of the Amended Plan or an Alternative Restructuring, as applicable, when and as such projections are updated from time to time and such other readily available information concerning cash balances at EFH as the EFH Committee or counsel to the Consenting TCEH First Lien Creditors may reasonably request.

**Section 4.    Contractual Claim Subordination.**

Subject to entry of the Approval Order and the order approving the Settlement Agreement, EFH, TCEH (as holder of the Settlement Intercompany Claim), and the Consenting TCEH First Lien Creditors hereby agree with the EFH Committee, for the benefit of holders of Beneficiary Claims (as defined below), as follows:

(a)    TCEH shall segregate and receive and hold in trust any recovery, proceeds, or distributions of any kind or character, whether in cash, property, or securities, on account of the Settlement Intercompany Claim for the benefit of the applicable holders of Beneficiary Claims, and shall assign and turn over the same to the holders of Beneficiary Claims on a pro rata basis until the applicable holders of Beneficiary Claims have received, after taking into account any other recoveries or distributions received (or to be received substantially concurrently) by such holders on account of such Claims, the lesser of either (i) payment in full of the Allowed amount of such Claims or (ii) their pro rata share of the amount specified below for the applicable class of Beneficiary Claims (the "**Contractual Subordination**"), after which all remaining recoveries, proceeds, or distributions on account of the Settlement Intercompany Claim shall be retained by TCEH and distributed to holders of TCEH First Lien Secured Claims;

(b)    "**Beneficiary Claims**" means (i) unpaid principal and prepetition interest on account of Allowed EFH Unexchanged Note Claims, in an amount not to exceed, in the aggregate, $5.8 million, (ii) Allowed EFH Non-Qualified Benefit Claims, in an amount not to exceed, in the aggregate, $30 million, and (iii) Allowed General Unsecured Claims Against EFH Corp., in an amount not to exceed, in the aggregate, $2 million; *provided*, *however*, that any of the foregoing Claims shall cease to constitute "Beneficiary Claims" if they are in a Class that is solicited to vote on a plan of reorganization for any of the EFH Debtors in accordance with section 1125 of the Bankruptcy Code and such Class fails to accept or reject such plan of reorganization in a manner consistent with the direction, if any, of the Required TCEH First Lien Creditors, as reflected in a written notice delivered to counsel for the EFH Committee at least two (2) business days in advance of the hearing to approve the applicable

disclosure statement (the "**Voting Indication**"); *provided*, *however*, that the Required TCEH First Lien Creditors may modify or amend the Voting Indication at any time prior to the date that is fifteen (15) business days before the applicable voting deadline for such plan of reorganization by delivering written notice of such modification or amendment to counsel to the EFH Committee; and

(c)     all Parties shall take such commercially reasonable actions as may be necessary from time to time to give effect to the Contractual Subordination agreed between TCEH and the EFH Committee for the benefit of the Beneficiary Claims.  Notwithstanding Section 4(b), in the event that any element of the Contractual Subordination is found by the Bankruptcy Court (or other court of competent jurisdiction) to be unenforceable or would otherwise render an Alternative Plan unconfirmable, TCEH shall take (and the Consenting TCEH First Lien Creditors hereby consent and approve TCEH taking) such other commercially reasonable actions as may be appropriate to put the holders of Beneficiary Claims in the same economic position to the fullest extent permitted by applicable law.

**Section 5.     TCEH Cash Payment**

The Parties agree that the TCEH Cash Payment (as defined in the Settlement Agreement and the PSA) shall be reduced by 25% of the amount, if any, that Holders of Eligible Claims receive on account of the Contractual Subordination.  The Parties, as applicable, shall use their commercially reasonable efforts to amend the PSA and the Settlement Agreement as soon as reasonably practicable to effectuate this modification (such amendments, the "**Conforming Amendments**").

**Section 6.     Alternative Restructuring Support Obligations**.

(a)     Subject to entry of the Approval Order, the Debtors and the Consenting TCEH First Lien Creditors agree not to propose an Alternative Restructuring for the EFH Debtors unless such Alternative Restructuring provides that (i) Applicable Legacy General Unsecured Claims are Reinstated; *provided*, *however*, that in the case of any Applicable Legacy General Unsecured Claim that is also asserted, whether in a Proof of Claim or otherwise, as a Claim against the TCEH Debtors, such Claim against the TCEH Debtors may be treated, estimated, and discharged in accordance with such Alternative Restructuring and applicable law, and (ii) Legacy Intercompany Claims are Reinstated or retained at an appropriate entity owning, directly or indirectly, at least 80% of the business of Oncor (and the order approving the Settlement Agreement shall provide that such claims are not released); *provided*, *however*, that, for the avoidance of doubt, this Section 6(a) shall not apply to any Alternative Restructuring that is not for the EFH Debtors (including any Alternative Restructuring that is only for the TCEH Debtors) and shall not limit, impair or prejudice the rights of the Consenting TCEH First Lien Creditors to propose or support any Alternative Restructuring for only the TCEH Debtors; *provided*, *further*, *however*, the Debtors may terminate their obligations under this Section 6(a) upon five (5) business days' written notice to the other parties if the board of directors, board of managers, or such similar governing body of any Debtor determines in good faith after consultation with its outside financial advisors and outside legal counsel, and based on the advice of such counsel, that proceeding with this obligation would be inconsistent with its applicable fiduciary duties.

(b)      Subject to entry of the Approval Order, except as otherwise required by order of the Bankruptcy Court, the EFH Committee (i) shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and (ii) shall not object to, litigate against, or otherwise impair, hinder, or delay, the confirmation and consummation of any Alternative Restructuring (or other plan or restructuring transaction) or approval of any implementing transactions, documents, or settlements, that:

A.      Reinstates Applicable Legacy General Unsecured Claims and Legacy Intercompany Claims as contemplated in Section 6(a) above;

B.      incorporates the Contractual Subordination and treats the Settlement Intercompany Claim and Beneficiary Claims in a manner that is consistent with this Agreement; and

C.      includes customary release and exculpation provisions for the EFH Committee.

(c)      The EFH Committee shall have the right to consult with the Debtors and counsel to the Consenting TCEH First Lien Creditors with respect to tax matters under an Alternative Restructuring.

(d)      For the avoidance of doubt, the Parties acknowledge that an Alternative Restructuring for the TCEH Debtors may include a taxable deconsolidation, and nothing herein or in any related stipulation, settlement agreement or support agreement shall limit, impair, hinder or prejudice the rights of the Consenting TCEH First Lien Creditors to pursue, or the Debtors' or the EFH Committee's rights to oppose (in the case of the EFH Committee, subject to its obligations under this Section 6), confirmation and consummation of an Alternative Restructuring that includes a taxable deconsolidation of the TCEH Debtors.

**Section 7.      Termination**.

(a)      This Agreement shall be automatically terminated with respect to all Parties (i) upon termination of the PSA by EFH or EFIH, (ii) if the Court denies approval of the Settlement Agreement, (iii) if the Court does not enter the Approval Order on or before November 25, 2015; (iv) if the Conforming Amendments are not executed by the required parties prior to December 2, 2015, or (v) with the mutual agreement of all of the Parties, *provided* that the agreement of the Consenting TCEH First Lien Creditors shall be deemed given upon receipt of the agreement of the Required TCEH First Lien Creditors (as such term is defined in the PSA).

(b)      Upon termination of this Agreement in accordance with Section 7 hereof: (i) this Agreement shall be of no further force and effect; (ii) each Party shall be released from its commitments, undertakings, and agreements under this Agreement and shall have the rights that it would have had, had it not entered into this Agreement, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Agreement; *provided*, *however*, solely with respect to a termination pursuant to Section 7(a)(i), the respective rights and obligations of each Debtor, the EFH Committee, each Consenting TCEH First Lien Creditor, each Plan Sponsor, and the TCEH Official Committee under

10

Section 4, Section 5, Section 6, and Section 7 shall survive any termination of this Agreement; *provided*, *further*, that the EFH Notes Trustee shall have no continuing obligation under this Agreement upon termination pursuant to Section 7; and (iii) the Debtors, the EFH Committee and the EFH Notes Trustee shall agree in good faith on a schedule for litigation or resolution of any remaining objections to the Amended Plan, the Claims Objections, or the Settlement Agreement, if applicable, such that no Party is materially prejudiced by any suspension of litigation activity during the term hereof.

**Section 8.    Miscellaneous**.

   (a)    Complete Agreement. This Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto.

   (b)    Governing Law; Jurisdiction; Waiver of Jury Trial.  This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement, including any claims with respect to the reasonableness of the EFH Note Trustee's fees and expenses, in the United States Bankruptcy Court for the District of Delaware (the "**Chosen Court**"), and solely in connection with claims arising under this Agreement: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding. Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Agreement or the transactions contemplated hereby (whether based on contract, tort, or any other theory). Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 8(b).

   (c)    Execution of Agreement. This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.  Each individual executing this Agreement on behalf of a Party has been duly authorized and empowered to execute and deliver this Agreement on behalf of such Party.

   (d)    Interpretation and Rules of Construction.  This Agreement is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties

were each represented by counsel during the negotiations and drafting of this Agreement and continue to be represented by counsel. In addition, this Agreement shall be interpreted in accordance with section 102 of the Bankruptcy Code.

(e)    <u>Settlement Discussions</u>.    This Agreement and the transactions contemplated herein are part of a proposed settlement among the Parties. Nothing herein shall be deemed an admission of any kind. To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Agreement and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Agreement.

(f)    <u>Successors and Assigns; No Third Party Beneficiaries</u>. This Agreement is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.    TCEH's obligations with respect to Contractual Subordination are for the benefit of the holders of Beneficiary Claims and are intended to be vested and irrevocable absent order of the Court. Except as otherwise explicitly set forth herein, nothing in this Agreement is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

(g)    <u>Notices</u>. All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

if to the Debtors, to:

> Energy Future Holdings Corp., et al.
> Energy Plaza
> 1601 Bryan Street
> Dallas, Texas 75201
> Attention: General Counsel
> E-mail addresses:    stacey.dore@energyfutureholdings.com
>                      andrew.wright@energyfutureholdings.com

> with copies (which shall not constitute notice) to:

> Kirkland & Ellis LLP
> 601 Lexington Avenue
> New York, New York 10022
> Attention: Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
> E-mail addresses:    esassower@kirkland.com
>                      shessler@kirkland.com
>                      bschartz@kirkland.com

> and

12

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad
J. Husnick and Steven N. Serajeddini
E-mail addresses:    jsprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chusnick@kirkland.com
                     steven.serajeddini@kirkland.com;

and

Cravath, Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Attention:  Philip A. Gelston
Email address:       pgelston@cravath.com

and

Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Attention:  Richard Levin
Email address:       rlevin@jenner.com

and

Proskauer Rose LLP
Three First National Plaza
70 West Madison Street, Suite 3800
Chicago, IL 60602
Attention:  Mark Thomas, Jeff Marwil, and Peter Young
Email addresses:     jmarwil@proskauer.com
                     mthomas@proskauer.com
                     pyoung@proskauer.com

and

Munger, Tolles & Olson LLP
335 South Grand Avenue, 35th Floor
Los Angeles, CA 90071
Attention:  Thomas B. Walper and Seth Goldman

13

Email addresses:    thomas.walper@mto.com

                      seth.goldman@mto.com

if to the EFH Notes Trustee, to:

American Stock Transfer & Trust Company, LLC
6201 15th Avenue
Brooklyn, NY 11219
Attention: Erica J. Goodstein
Email address:    egoodstein@amstock.com

with copies (which shall not constitute notice) to:

Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Attention: Amanda D. Darwin and Richard C. Pedone
E-mail addresses:    adarwin@nixonpeabody.com
                        rpedone@nixonpeabody.com

if to the EFH Committee, to:

Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004
Attention: Andrew G. Dietderich and Brian D. Glueckstein
E-mail addresses:    dietdericha@sullcrom.com
                        gluecksteinb@sullcrom.com

If to a Consenting TCEH First Lien Creditor, to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attention: Alan W. Kornberg, Brian S. Hermann, and Jacob A. Adlerstein
E-mail addresses:    akornberg@paulweiss.com
                        bhermann@paulweiss.com
                        jadlerstein@paulweiss.com

If to the Plan Sponsors, to:

White & Case LLP
1155 Avenue of the Americas
New York, New York 10036
Attention: Gregory Pryor and J. Christopher Shore
E-mail address:    gpryor@whitecase.com

14

cshore@whitecase.com

and

White & Case LLP
Southeast Financial Center
200 S. Biscayne Blvd., Suite 4900
Miami, Florida 33131
Attention:  Thomas E Lauria and Matthew C. Brown
E-mail addresses:        tlauria@whitecase.com
                        mbrown@whitecase.com

and

Baker Botts L.L.P.
2001 Ross Avenue, Suite 600
Dallas Texas 75201
Attention:  Geoffrey L. Newton, C. Luckey McDowell, and Preston J. Bernhisel
E-mail addresses:        geoffrey.newton@bakerbotts.com
                        luckey.mcdowell@bakerbotts.com
                        preston.bernhisel@baketbotts.com

If to the TCEH Committee:

Morrison & Foerster LLP
250 West 55th Street
New York, New York 10019-9601
Attention: Brett Miller, James M. Peck, Lorenzo Marinuzzi, and Todd M. Goren
E-mail addresses:        brettmiller@mofo.com
                        jpeck@mofo.com
                        lmarinuzzi@mofo.com
                        tgoren@mofo.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

(h)     Amendments.  This Agreement may not be modified or amended in any way except in writing with the agreement of each of the Parties; *provided* that the agreement of the Consenting TCEH First Lien Creditors shall be deemed given upon the receipt of the agreement of the Required TCEH First Lien Creditors.

(i)     Non-Severability of Agreement.  This Agreement is to be construed as a whole, and all provisions of it are to be read and construed together.  Notwithstanding anything in this Agreement or the order approving it to the contrary, and in light of the integrated nature

15

of the settlements and compromises embodied in this Agreement and the order approving it, in the event that (i) a court of competent jurisdiction enters a final order ruling that any of the material provisions of this Agreement or the order approving it are void, invalid, illegal, or unenforceable in any material respect, or (ii) any of the provisions of this Agreement or the order approving it are reversed, vacated, overturned, voided, or unwound in any material respect, then in each case, the entirety of this Agreement (other than Section 4, Section 5, Section 6(a), this Section 8(i), and any other provision of this Agreement necessary to give meaning to those Sections, *provided* that, for the avoidance of doubt, the Debtors reserve the right to terminate their obligations under Section 6(a) in such event) shall be void ab initio and of no force and effect and, during any subsequent proceeding, the Parties shall not assert claim preclusion, issue preclusion, estoppel or any similar defense in respect of rights and claims of the Parties that were the subject of this Agreement prior to this Agreement being of no force or effect.

(j)      No Reliance.   Each of the Parties (A) is a sophisticated party with respect to the matters that are the subject of this Agreement, (B) has had the opportunity to be represented and advised by legal counsel in connection with this Agreement, (C) has adequate information concerning the matters that are the subject of this Agreement, and (D) has independently and without reliance upon any other Party hereto, or any of their affiliates, or any officer, employee, agent or representative thereof, and based on such information as such Party has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that the Parties have relied upon each other Party's express representations, warranties and covenants in this Agreement, which each of the Parties enters, or as to which each Party acknowledges and agrees, voluntarily and of its own choice and not under coercion or duress

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above.

[Signature Pages Follow]

16

# EXHIBIT 2

## Subsequent PIK Stipulation

## STIPULATION

This STIPULATION (this "**Stipulation**")[1] is made and entered into as of November 24, 2015 (the "**Stipulation Effective Date**"), by and among the following parties:

(a) (i) Energy Future Holdings Corp., a Texas corporation ("**EFH**"); (ii) Energy Future Intermediate Holding Company LLC ("**EFIH**"), a Delaware limited liability company; and (iii) EFIH Finance Inc. ("**EFIH Finance**," and together with EFIH, the "**EFIH Debtors**"), a Delaware corporation and a direct, wholly-owned subsidiary of EFIH; and

(b) The undersigned beneficial holders or investment advisors or managers for such beneficial holders or discretionary accounts of such beneficial holders (the "**Subsequent Settling EFIH PIK Noteholders**") that hold claims (the "**EFIH PIK Note Claims**") against the EFIH Debtors arising out of the 11.25%/12.25% senior toggle notes due December 1, 2018 (the "**EFIH PIK Notes**"), issued pursuant to that certain Indenture (as amended and/or supplemented, the "**EFIH PIK Notes Indenture**") dated as of December 5, 2012, by and among, *inter alia*, the EFIH Debtors, as issuers, and UMB Bank, N.A., as successor indenture trustee to The Bank of New York Mellon Trust Company, N.A. (the "**EFIH PIK Notes Trustee**").

EFH, EFIH, EFIH Finance and the Subsequent Settling EFIH PIK Noteholders are each referred to herein as a "**Party**" and are collectively referred to herein as the "**Parties**."

**WHEREAS**, on April 29, 2014 (the "**Petition Date**"), EFH, the EFIH Debtors, and certain of their affiliates commenced chapter 11 cases in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), which chapter 11 cases are being jointly administered and are captioned In re Energy Future Holdings Corp., et al., Case No. 14-10979 (CSS) (the "**Chapter 11 Cases**");

**WHEREAS**, certain Subsequent Settling EFIH PIK Noteholders also hold (i) claims (the "**EFH LBO Note Claims**") against EFH arising out of (a) the 10.875% senior notes due November 1, 2017 (the "**EFH LBO Senior Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH LBO Note Indenture**") dated as of October 31, 2007 by and among EFH, as issuer, and American Stock Transfer & Trust Company, LLC, as indenture trustee (the "**EFH Notes Trustee**"), and (b) the 11.25%/12.00% toggle notes due November 1, 2017 (the "**EFH LBO Toggle Notes**" and together with the EFH LBO Senior Notes, the "**EFH LBO Notes**") issued pursuant to the EFH LBO Note Indenture; (ii) claims (the "**EFH Legacy Note Claims**") against EFH arising out of (a) the 5.55% Series P Notes due November 15, 2014 (the "**EFH Legacy Series P Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series P Indenture**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee, (b) the 6.50%

---

[1] Unless otherwise indicated, capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan, as defined below, and, if not defined therein, the PSA, as defined below, each in effect as of the Stipulation Effective Date, as defined below.

Series Q Notes due November 15, 2024 (the "**EFH Legacy Series Q Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series Q Indenture**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee, and (c) the 6.55% Series R Notes due November 15, 2034 (the "**EFH Legacy Series R Notes**" and together with the EFH Legacy Series P Notes and the EFH Legacy Series Q Notes, the "**EFH Legacy Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH Legacy Series R Indenture**" and together with the EFH Legacy Series P Indenture and EFH Legacy Series Q Indenture, the "**EFH Legacy Note Indentures**") dated as of November 1, 2004 by and among EFH, as issuer, and the EFH Notes Trustee; (iii) claims (the "**EFH Unexchanged Note Claims**") against EFH arising out of (a) the 9.75% senior notes due October 15, 2019 (the "**EFH 9.75% Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH 9.75% Notes Indenture**") dated as of November 16, 2009 by and among EFH, as issuer, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to American Stock Transfer & Trust Company, N.A., and (b) the 10.00% senior notes due January 15, 2020 (the "**EFH 10.00% Notes**" and together with the EFH 9.75% Notes, the "**EFH Unexchanged Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFH 10.00% Indenture**" and together with the EFH 9.75% Notes Indenture, the "**EFH Unexchanged Notes Indentures**") dated as of January 12, 2010 by and among EFH, as issuer, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to American Stock Transfer & Trust Company, LLC; and (iv) claims (the "**EFIH Second Lien Note Claims**") against the EFIH Debtors arising out of the 11.00% senior secured second lien notes due October 1, 2021 and 11.75% senior secured second lien notes due March 1, 2022 (the "**EFIH Second Lien Notes**") issued pursuant to that certain indenture (as amended and/or supplemented, the "**EFIH Second Lien Note Indenture**") dated as of April 25, 2011 by and among the EFIH Debtors, as issuers, and The Bank of New York Mellon Trust Company, N.A., as predecessor indenture trustee to Computershare Trust Company, N.A. and Computershare Trust Company of Canada (the "**EFIH Second Lien Notes Trustee**");

**WHEREAS**, on June 16, 2014 the EFIH Second Lien Notes Trustee filed an adversary complaint against the EFIH Debtors, commencing the adversary proceeding captioned Computershare Trust Company, N.A. and Computershare Trust *Company of Canada v. Energy Future Intermediate Holding Company LLC and EFIH Finance, Inc.*, Adv. Pro. No. 14-50405 (CSS) (Bankr. D. Del.), seeking a declaration that the EFIH Debtors are obligated to pay makewhole claims in connection with the EFIH Second Lien Notes, along with other contested amounts relating to indemnification obligations, professional fees and interest;

**WHEREAS**, on or about October 23, 2014, the EFIH PIK Notes Trustee filed proof of claim 6347 (the "**EFIH PIK Proof of Claim**") in the Chapter 11 Cases on behalf of itself and all holders of EFIH PIK Notes, whereby it asserted claims for, among other things, all "principal, premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums" and "interest ... arising from and after" the Petition Date;

**WHEREAS**, on or about October 24, 2014, the EFH Notes Trustee filed proofs of claim 6524-6943, 7475, 7476, 7477, 7478, 7479, 7480, 7481 and 7482 in the Chapter 11 Cases on behalf of itself and all holders of EFH LBO Notes, EFH Legacy Notes and EFH Unexchanged Notes, whereby it asserted claims for, among other things, principal, prepetition

interest, postpetition interest at the default rate set forth in the EFH LBO Note Indenture, the EFH Legacy Note Indentures and the EFH Unexchanged Notes Indentures, interest on interest, makewhole and other applicable premiums and penalties, and certain fees and expenses;

**WHEREAS**, on or about October 24, 2014, the EFIH Second Lien Notes Trustee filed proofs of claim 7486 and 7487 in the Chapter 11 Cases on behalf of itself and all holders of EFIH Second Lien Notes, whereby it asserted claims for, among other things, principal, prepetition interest, postpetition interest, and certain fees and expenses, and reserved its right to assert claims for any premiums, postpetition interest including "Additional Interest," and interest on overdue interest;

**WHEREAS**, on April 13, 2015, the EFIH Second Lien Notes Trustee filed the *Amended Complaint for Damages and Declaratory Relief* in the EFIH Second Lien Adversary Proceeding [Adv. D.I. 37], seeking, among other things, damages for a makewhole premium in connection with the Debtors' partial pay down of the EFIH Second Lien Notes on March 11, 2015;

**WHEREAS**, on July 9, 2015, the EFIH Debtors filed the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* [D.I. 4964] (the "**EFIH PIK Claim Objection**"), whereby the EFIH Debtors objected to the EFIH PIK Proof of Claim to the extent it seeks payment of (i) an Applicable Premium under section 3.07(a) of the EFIH PIK Notes Indenture, (ii) an Optional Redemption Price under section 3.07(d) of the EFIH PIK Notes Indenture, or (iii) unmatured interest;

**WHEREAS**, on August 10, 2015, the Debtors filed the *Motion of Energy Future Holdings Corp.,* et al. *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 5249] whereby the Debtors seek approval of that certain *Amended & Restated Settlement Agreement* (as amended from time to time, the "**Settlement Agreement**") setting forth the terms and conditions on which the Debtors and certain other parties thereto agreed to settle certain alleged claims and litigation among them;

**WHEREAS**, on September 11, 2015, the Debtors and certain other parties entered into that certain *Amended & Restated Plan Support Agreement* (as amended from time to time, the "**PSA**") setting forth the terms and conditions on which such parties will pursue the approval and consummation of the Plan and the Restructuring Transactions;

**WHEREAS**, on September 21, 2015, the Debtors filed in the Chapter 11 Cases the *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (as may be amended from time to time, and including the amendments set forth on Exhibit A to that *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, LP to Confirmation of Debtors' Fifth Amended Plan of Reorganization* [D.I. 6932], the "**Plan**"), which provides that (i) EFIH PIK Note Claims shall be allowed in an amount equal to outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest on the principal amount outstanding as of the Petition Date at the Federal Judgment Rate, but excluding any Makewhole Claims; (ii) EFH Legacy Note Claims and EFH LBO Note Claims (both primary

3

claims at EFH and guaranty claims at the EFIH Debtors) shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, and accrued postpetition interest at the Federal Judgment Rate, but not including any Makewhole Claims; and (iii) EFIH Second Lien Note Claims shall be allowed in an amount equal to the sum of outstanding principal, accrued but unpaid prepetition interest, accrued postpetition interest (including Additional Interest and interest on interest) on such principal at the non-default contract rate set forth in the EFIH Second Lien Note Indenture through the Effective Date, and all reasonable and documented fees, expenses and indemnification claims owed under the EFIH Second Lien Note Indenture, but not including any Makewhole Claims;

**WHEREAS**, the Plan serves as the Debtors' objection to all other claims asserted and amounts alleged to be owed with respect to the EFH LBO Notes, EFH Legacy Notes and EFIH Second Lien Notes;

**WHEREAS**, on October 7, 2015, the EFH Notes Trustee filed a motion for partial summary judgment [D.I. 6386] in response to the Debtors' objection with respect to Makewhole Claims on the EFH Legacy Series Q Notes and EFH Legacy Series R Notes arguing that payment of Makewhole Claims is compelled as a matter of law by the applicable indentures and governing law;

**WHEREAS**, on October 14, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Legacy Notes* (the "**EFH Legacy Note Claims Objection**") [D.I. 6463], objecting to the EFH Legacy Note Claims to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, (iv) alleged contractual damages in excess of the unpaid principal balance and prepetition interest and other amounts owing under the terms of the Legacy Notes that were accrued and unpaid as of the Petition Date, and (v) fees and expenses, including any right to indemnification from EFH or any other Debtor;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. Et Al., to Proofs of Claim 7475, 7480, 7481 and 6874-6943 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH LBO Notes* [D.I. 6596] (the "**EFH LBO Note Claims Objection**"), objecting to the EFH LBO Notes to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, (ii) postpetition interest (including default interest and interest on overdue interest payments), (iii) unamortized original issue discount, and (b) assert claims against the Debtors other than EFH, as issuer, and Energy Future Competitive Holdings Company LLC and EFIH, as guarantors;

**WHEREAS**, on October 23, 2015, the Debtors filed the *Objection of Energy Future Holdings Corp. Et Al., to Proofs of Claim 7476, 7482, and 6734-6873 Filed by American Stock Transfer & Trust Co. as Indenture Trustee for the EFH Unexchanged Notes* (the "**EFH Unexchanged Notes Claims Objection**") [D.I. 6599], objecting to the EFH Unexchanged Notes to the extent they, among other things, (a) assert an entitlement to (i) make-whole premiums, redemption premiums, no-call damages, or similar amounts, or (ii) postpetition

interest (including default interest and interest on overdue interest payments); and (b) assert claims against the Debtors other than EFH;

**WHEREAS**, on October 28, 2015, the EFH Notes Trustee filed the *Response of EFH Legacy Notes Trustee to Objection of Energy Future Holdings Corp. to Proofs of Claim 6524-6733, 7477, 7478 and 7479 Filed by American Stock Transfer & Trust Co. LLC as Indenture Trustee for EFH Legacy Notes* [D.I. 6718], arguing that the EFH Legacy Note Claims Objection and EFH LBO Note Claims Objection should be overruled;

**WHEREAS**, on October 27, 2015, the EFIH Debtors reached an agreement with certain holders of EFIH PIK Notes, as set forth in the *Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6699], and the *Second Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6918];

**WHEREAS**, on October 30, 2015, the Bankruptcy Court entered (i) an order sustaining the EFIH PIK Claim Objection [D.I. 6783] (the "**Partial Claim Objection Order**"), (ii) a Memorandum Opinion disallowing the portion of the EFIH PIK Note Claims seeking an amount for prepayment penalties, make-whole premiums and/or call premiums [D.I. 6781] (the "**Call Premium Memorandum Opinion**"), and (iii) a Memorandum Opinion addressing the EFIH PIK Noteholders' entitlement to post-petition interest [D.I. 6782] (the "**PPI Memorandum Opinion**").

**WHEREAS**, on November 12, 2015, (i) the EFIH PIK Notes Trustee filed a notice of appeal [D.I. 6970] from the Partial Claim Objection Order, and (ii) York Capital Management Global Advisors, LLC, P. Schoenfeld Asset Management L.P., Polygon Convertible Opportunity Master Fund, Polygon Distressed Opportunities Master Fund, Mudrick Capital Management, L.P., and Marathon Asset Management, LP (collectively, the "**Minority PIK Noteholders**"), on behalf of funds and accounts that they each manage or advise, represented by Gellert Scali Busenkell & Brown, LLC and Kaye Scholer LLP, filed a notice of appeal (and separate exhibits) from the Partial Claim Objection Order [D.I. 6972 and 6975].

**WHEREAS**, on November 12, 2015, (i) the EFIH PIK Notes Trustee filed a Motion to Amend or Alter the Partial Claim Objection Order [D.I. 6968] (the "**EFIH PIK Notes Trustee Motion to Amend**"), requesting that the Court enter separate orders in connection with the Call Premium Memorandum Opinion and the PPI Memorandum Opinion, and (ii) the Minority PIK Noteholders filed a Motion to Amend or Alter the Partial Claim Objection Order [D.I. 6973] (the "**Minority PIK Noteholders Motion to Amend**", and together with the EFIH PIK Notes Trustee Motion to Amend**, the** "**Motions to Amend**"), requesting that the Court enter separate orders in connection with the Call Premium Memorandum Opinion and the PPI Memorandum Opinion.  In connection therewith, on November 13, 2015 and November 17, 2015, respectively, the Bankruptcy Court entered orders [D.I. 6985 and 7017] setting November 25, 2015 as the date in which the Bankruptcy Court will consider the Motions to Amend.

**WHEREAS**, on November 12, 2015, EFH and the EFIH Debtors reached an agreement with certain funds and accounts advised or sub-advised by Fidelity Management & Research

Company or one of its affiliates, as set forth in the *Notice of Settlement Between Debtors and Fidelity Management & Research Company* [D.I. 6976];

**WHEREAS**, EFH, the EFIH Debtors, the Subsequent Settling EFIH PIK Noteholders, and certain parties in interest in the Chapter 11 Cases have been engaged in good faith negotiations with each other regarding the disputes with respect to the EFIH PIK Note Claims, EFH Legacy Note Claims, EFH LBO Note Claims and EFIH Second Lien Note Claims and the Parties have reached agreement with each other with respect to such disputes on the terms and conditions set forth in this Stipulation.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Party, intending to be legally bound, agrees as follows:

**Section 1.    Effective Date of Stipulation**.

This Stipulation shall be immediately effective and binding on each Party, other than EFH and the EFIH Debtors, upon the execution and delivery to the other Parties of a signature page to this Stipulation; *provided, however*, that this Stipulation shall become effective and binding with respect to EFH and the EFIH Debtors upon entry by the Bankruptcy Court of an order approving this Stipulation (the "**EFIH PIK Noteholder Settlement Order**").

**Section 2.    Settlement of Claims**.

2.1    Notwithstanding anything to the contrary in the Plan, the EFIH PIK Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFIH PIK Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 12.75% per annum and compounded), all as set forth in the EFIH PIK Notes Indenture through the Effective Date of the Plan, but not including any Makewhole Claims.

2.2    The EFH Legacy Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of the EFH Legacy Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest at the non-default contract rate (including any PIK Interest, Additional Interest and interest on interest, as applicable) set forth in the EFH Legacy Note Indentures, and (b) postpetition interest at the Federal Judgment Rate through the Effective Date of the Plan, but not including any Makewhole Claims.

6

2.3     Notwithstanding anything to the contrary in the Plan, the EFH LBO Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFH LBO Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture, and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 10.875% per annum or 11.25% per annum, as applicable, and compounded), all as set forth in the EFH LBO Note Indenture through the Effective Date of the Plan, but not including any Makewhole Claims. The Subsequent Settling EFIH PIK Noteholders will only be entitled to a single recovery with respect to the EFH LBO Notes and related guarantees.

2.4     Notwithstanding anything to the contrary in the Plan, the EFH Unexchanged Notes held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of: (a) the principal amount outstanding of EFH Unexchanged Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetiton interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures; and (b) 40% of accrued but unpaid postpetition interest at the non-default contract rate, including any PIK Interest, Additional Interest and interest on interest, as applicable (i.e., 9.75% per annum and compounded), all as set forth in the EFH Unexchanged Notes Indentures through the Effective Date of the Plan, but not including any Makewhole Claims.

2.5     The EFIH Second Lien Note Claims held by a Subsequent Settling EFIH PIK Noteholder as of the date a Subsequent Settling EFIH PIK Noteholder executes this Stipulation shall be Allowed and not subject to objection by any party in interest in an amount equal to the sum of (a) the principal amount outstanding of EFIH Second Lien Notes held by a Subsequent Settling EFIH PIK Noteholder, plus accrued but unpaid prepetition interest thereon, including any Additional Interest and interest on interest, as applicable, at the applicable non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, and (b) accrued but unpaid postpetition interest, including any Additional Interest and interest on interest, as applicable, on such principal at the non-default contract rate (i.e., 11.00% per annum or 12.25% per annum, as applicable, and compounded), all as set forth in, and calculated in accordance with, the EFIH Second Lien Note Indenture and all related agreements, as applicable, through the Effective Date of the Plan, but not including any Makewhole Claims.

2.6     All Allowed EFH Legacy Note Claims, Allowed EFH LBO Note Claims, Allowed EFH Unexchanged Note Claims and Allowed EFIH Second Lien Note Claims held by the Subsequent Settling EFIH PIK Noteholders shall be paid in Cash on the Effective Date of the Plan. The Debtors will not exercise the option in Article III, Section B(4)(c) of the Plan to

reinstate EFH Legacy Series Q Claims and EFH Legacy Series R Claims held by the Subsequent Settling EFIH PIK Noteholders.  The commitments in this Section 2 shall apply only in connection with consummation of the Plan and shall not bind the Debtors or any other party in connection with any other restructuring transaction, including, without limitation, any Alternative Restructuring.

**Section 3.**    **Commitments of the Subsequent Settling EFIH PIK Noteholders With Respect to the Plan and the Settlement Agreement**

3.1    Each Subsequent Settling EFIH PIK Noteholder:

(a)    shall (i) use commercially reasonable efforts to assist the Debtors in obtaining entry of the order approving the Settlement Agreement and the Confirmation Order and consummation of the Plan as soon as reasonably practicable in accordance and consistent with the Bankruptcy Code, this Stipulation, and the EFIH PIK Noteholder Settlement Order, and within the time frames contemplated in the PSA, and (ii) execute and deliver any other agreements reasonably required to effectuate and consummate the Plan and Restructuring Transactions;

(b)    shall not directly or indirectly, or encourage any other entity to directly or indirectly, (i) object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of the Plan and Restructuring Transactions and the Settlement Agreement; (ii) propose, file, support, vote for, or take any other action in furtherance of any restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors other than the Plan, including, for the avoidance of doubt, making or supporting any filings with the Bankruptcy Court or any regulatory agency, including the Public Utility Commission of Texas (the "**PUCT**") and the United States Nuclear Regulatory Commission (the "**NRC**"), or making or supporting any press release, press report or comparable public statement, or filing with respect to any restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors other than the Plan; or (iii) exercise any right or remedy for the enforcement, collection, or recovery of any claim against the Debtors or any direct or indirect subsidiaries of the Debtors that are not Debtors other than as expressly permitted by the Plan, the Merger Agreement, and the Settlement Agreement; *provided*, *however*, that notwithstanding the foregoing, each Party may, during and after the Plan Support Effective Period, (I) solicit from (other than within the meaning of 11 U.S.C. § 1125), and negotiate with the Debtors and/or their other stakeholders, facilitate, and document the other terms of an Alternative Restructuring, (II) solicit from (other than within the meaning of 11 U.S.C. § 1125) and negotiate with the Debtors and/or their other stakeholders, facilitate, and document the terms of another plan or other restructuring transaction that contains the Required Alternative Terms, and (III) solicit from and enter into an agreement or agreements with the Debtors and/or their other stakeholders regarding support for and/or financing of such Alternative Restructuring or other restructuring so long as entering into such agreement or agreements does not violate such Party's commitments and obligations under this Stipulation; *provided*, *however*, that each Party shall use commercially reasonable efforts (x) to keep confidential any solicitation, negotiation, facilitation, and documentation by such Party of an Alternative Restructuring and (y) to enter into a confidentiality agreement with any counterparty to any agreement regarding support for and/or financing of an Alternative Restructuring, which

confidentiality agreement provides that the existence and material terms of such Alternative Restructuring shall be kept confidential and shall not be publicly disclosed, except in each case to the extent required by applicable law or pursuant to such confidentiality agreements (including any "cleansing" provisions set forth in such confidentiality agreements) as determined by such Party in its sole and absolute discretion, and the Parties each waive any right to challenge such a determination made by any other Party;

(c)     shall take no action in opposition of or otherwise inconsistent with the terms of the Settlement Agreement, whether or not approved by the Bankruptcy Court;

(d)     if it is a holder of EFH Legacy Notes or EFH LBO Notes, will direct the EFH Notes Trustee, in its capacity as indenture trustee for the EFH Legacy Notes and EFH LBO Notes, to (i) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Settlement Agreement, the EFIH PIK Note Claims Settlement, and the Fidelity Claims Settlement, and (ii) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of postpetition interest (except as contemplated in the PSA and this Stipulation) or any Makewhole Claims or any other Claims inconsistent with the PSA and this Stipulation; *provided*, that, such Subsequent Settling EFIH PIK Noteholders shall not be required to provide any indemnity or otherwise incur any liability to the EFH Notes Trustee or any other party in connection with such direction; and

(e)     if it holds EFIH Second Lien Notes and holders of 50.10% or more of the aggregate principal amount of outstanding EFIH Second Lien Notes are or become parties to the PSA and/or this Stipulation (with the holdings of parties to both agreements aggregated), will direct the EFIH Second Lien Notes Trustee and will in good faith attempt to cause the EFIH Second Lien Notes Trustee, in its capacity as indenture trustee for the EFIH Second Lien Notes, to (i) during the Plan Support Effective Period, not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, consummation, or amendment of the Plan, the Restructuring Transactions, the Settlement Agreement, the EFIH PIK Note Claims Settlement, and the Fidelity Claims Settlement, and (iii) during the Plan Support Effective Period, refrain from supporting and not pursue with respect to such notes payment of any Makewhole Claims; *provided*, that, such Subsequent Settling EFIH PIK Noteholders shall not be required to provide any indemnity or otherwise incur any liability to the EFIH Second Lien Notes Trustee or any other party in connection with such direction.

3.2     No Subsequent Settling EFIH PIK Noteholder shall sell, use, pledge, assign, transfer, or otherwise dispose of (each, a "**Transfer**") any ownership (including any beneficial ownership)[2] in its respective Debtor Claims/Interests, general partnership interests in Texas Holdings, or interests in TEF (but not including, for the avoidance of doubt, limited partnership

---

[2]     As used herein, the term "**beneficial ownership**" means the direct or indirect economic ownership of, and/or the power, whether by contract or otherwise, to direct the exercise of voting rights and the disposition of, the Debtor Claims/Interests or the right to acquire such Debtor Claims/Interests.

interests in Texas Holdings) (the "**Supporting Claims/Interests**"), unless all of the following requirements are satisfied (a transfer that satisfies such requirements, a "**Permitted Transfer**," and such transferee, a "**Permitted Transferee**"):

(a)     the intended transferee executes and delivers to counsel to the other Parties on the terms set forth below an executed joinder agreement before such Transfer is effective; and

(b)     the intended transferee, the intended transferee's affiliates, and/or any unaffiliated third-party in which the intended transferee has a direct or indirect beneficial ownership, or any group of persons acting pursuant to a plan or arrangement as described in Treasury Regulation Section 1.355-6(c)(4), will not, after giving effect to such Transfer, and assuming the Plan and the other Restructuring Transactions were to be consummated immediately upon such Transfer, have beneficial ownership of, in the aggregate, fifty percent (50%) or more of the Reorganized TCEH Common Stock or the Reorganized EFH Common Stock.

Notwithstanding the foregoing, so long as a Transfer by a Subsequent Settling EFIH PIK Noteholder (i) is to an Investor Party, Consenting Interest Holder or Consenting Creditor Party under the PSA that is not in breach of any of those parties' obligations under the PSA and remains a party to the PSA, and (ii) would comply with Section 3.2(b), above, then such Transfer shall be a Permitted Transfer, and such transferee a Permitted Transferee, without the requirement of executing and delivering a joinder agreement.  Any Transfer made in violation of this Section 3.2 shall be void *ab initio*.

Notwithstanding anything to the contrary in this Section 3.2, (i) a Qualified Marketmaker[3] that acquires any of the Supporting Claims/Interests with the purpose and intent of acting as a Qualified Marketmaker for such Supporting Claims/Interests, shall not be required to execute and deliver a joinder agreement or otherwise agree to be bound by the terms and conditions set forth in this Section 3 if such Qualified Marketmaker Transfers such Supporting Claims/Interests (by purchase, sale, assignment, participation, or otherwise) as soon as reasonably practicable, and in no event later than twenty (20) Business Days of its acquisition, to a Permitted Transferee and the Transfer otherwise is a Permitted Transfer (including, for the avoidance of doubt, the requirement that such transferee execute a joinder agreement in accordance with Section 3.2(a)); and (ii) to the extent any Party is acting solely in its capacity as a Qualified Marketmaker, it may Transfer any ownership interests in the Supporting Claims/Interests that it acquires from a holder of such Supporting Claims/Interests that is not a Party to a transferee that is not a Party at the time of such Transfer without the requirement that such transferee be or become a signatory to this Stipulation or execute a joinder agreement.

---

[3]     As used herein, the term "**Qualified Marketmaker**" means an entity that (a) holds itself out to the public or the applicable private markets as standing ready in the ordinary course of business to purchase from customers and sell to customers Supporting Claims/Interests (or enter with customers into long and short positions in Supporting Claims/Interests), in its capacity as a dealer or market maker in Supporting Claims/Interests and (b) is, in fact, regularly in the business of making a market in claims against issuers or borrowers (including debt securities or other debt).

**Section 4.       Other Commitments of the Parties**

4.1      The Subsequent Settling EFIH PIK Noteholders shall be permitted to continue to seek the relief requested in the Motions to Amend.  Consistent with the terms of the Letter of Direction to the EFIH PIK Notes Trustee from the Subsequent Settling EFIH PIK Noteholders executed substantially contemporaneously herewith, the other Parties to this Stipulation shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede or take any action or inaction to interfere with the prosecution of the Motions to Amend by the Subsequent Settling EFIH PIK Noteholders and/or the EFIH PIK Notes Trustee.

4.2      Upon the Bankruptcy Court's approval of the Motions to Amend, the Subsequent Settling EFIH PIK Noteholders shall be permitted to file notices of appeal with respect to the PPI Memorandum Opinion and the Call Premium Memorandum Opinion (together, the "**Appeals**").  The other Parties to this Stipulation shall not directly or indirectly, or encourage any other entity to directly or indirectly, object to, delay, impede or take any action or inaction to interfere with the filing of notices of appeal (the "**Subsequent Notices of Appeal**") by the Subsequent Settling EFIH PIK Noteholders and/or the EFIH PIK Notes Trustee in connection with the Appeals.

4.3      Promptly after the filing the Subsequent Notices of Appeal, the Subsequent Settling EFIH PIK Noteholders shall take all reasonable actions necessary to obtain the suspension of the Appeals and, upon consummation of the Plan, dismiss such Appeals with prejudice.  Upon the occurrence of the Plan Support Termination Date, the Parties agree that the Appeals may proceed.

4.4      The Subsequent Settling EFIH PIK Noteholders that are parties in the adversary proceeding captioned Avenue Capital Management II LP, et al., v. Fidelity Investments, Adv. Pro. No. 14-50797 (CSS) (Bankr. D. Del.) (the "**Fidelity Call Litigation**"), will take all commercially reasonable actions to dismiss with prejudice the Fidelity Call Litigation, including any and all pending appeals related thereto.

4.5      EFH and the EFIH Debtors shall not amend the Plan, the PSA, or the Settlement Agreement, through the Confirmation Order or otherwise, in a manner that is materially inconsistent with this Stipulation or the EFIH PIK Noteholder Settlement Order.  EFH and the EFIH Debtors shall use commercially reasonable efforts to not directly or indirectly, or encourage any other entity to directly or indirectly, (i) object to, delay, impede, or take any other action or any inaction to interfere with the acceptance, implementation, or consummation of this Stipulation or the EFIH PIK Noteholder Settlement Order, or (ii) propose, file, support, vote for, or take any other action in furtherance of any transaction, restructuring, workout, plan of arrangement, or plan of reorganization for the Debtors that is materially inconsistent with this Stipulation or the EFIH PIK Noteholder Settlement Order.

**Section 5.       Termination**.

5.1      This Stipulation shall be automatically terminated with respect to all Parties upon the occurrence of any of the following events: (a) termination of the PSA by EFH or EFIH, (b) the Plan Support Termination Date, as defined and set forth in Section 11 of the PSA, or (c) upon

the failure of the Bankruptcy Court to enter the EFIH PIK Noteholder Settlement Order by no later than December 31, 2015, which EFIH PIK Noteholder Settlement Order shall be in form and substance reasonably acceptable to the Debtors, the Subsequent Settling EFIH PIK Noteholders, and the Plan Sponsors.

5.2     Upon termination of this Stipulation with respect to a Party in accordance with Section 5.1 hereof: (a) this Stipulation shall be of no further force and effect with respect to such Party; (b) such Party subject to such termination shall be released from its commitments, undertakings, and agreements under this Stipulation and shall have the rights that it would have had, had it not entered into this Stipulation, and shall be entitled to take all actions that it would have been entitled to take had it not entered into this Stipulation; and (c) the remaining Parties to this Stipulation, if any, shall be released from any commitments, undertaking, and agreements owed to such terminated Party under this Stipulation (including Section 2 hereof).

**Section 6.     Miscellaneous**.

6.1     <u>Complete Agreement</u>.

        This Stipulation constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes and nullifies all prior agreements, oral or written, among the Parties with respect thereto.

6.2     <u>Governing Law; Jurisdiction; Waiver of Jury Trial.</u>

        (a)     This Stipulation shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of Delaware, without giving effect to the conflict of laws principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Stipulation in the United States Bankruptcy Court for the District of Delaware (the "**Chosen Court**"), and solely in connection with claims arising under this Stipulation: (i) irrevocably submits to the exclusive jurisdiction and the authority of the Chosen Court; (ii) waives any objection to laying venue in any such action or proceeding in the Chosen Court; and (iii) waives any objection that the Chosen Court is an inconvenient forum, does not have jurisdiction over any Party hereto, or lacks the constitutional authority to enter final orders in connection with such action or proceeding.

        (b)     Each Party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding arising out of, or relating to, this Stipulation or the transactions contemplated hereby (whether based on contract, tort, or any other theory).  Each Party (i) certifies that no representative, agent, or attorney of any other Party has represented, expressly or otherwise, that such other Party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other Parties have been induced to enter into this Stipulation by, among other things, the mutual waivers and certifications in this Section 6.2.

12

6.3    Execution of Stipulation.

This Stipulation may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement. Each individual executing this Stipulation on behalf of a Party has been duly authorized and empowered to execute and deliver this Stipulation on behalf of such Party.

6.4    Interpretation and Rules of Construction.

This Stipulation is the product of negotiations among the Parties and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Stipulation, or any portion hereof, shall not be effective in regard to the interpretation hereof. The Parties were each represented by counsel during the negotiations and drafting of this Stipulation and continue to be represented by counsel. In addition, this Stipulation shall be interpreted in accordance with section 102 of the Bankruptcy Code.

6.5    Settlement Discussions.

This Stipulation and the transactions contemplated herein are part of a proposed settlement among the Parties.  Nothing herein shall be deemed an admission of any kind.  To the extent provided by Federal Rule of Evidence 408, all applicable mediation privileges, and any applicable state rules of evidence, this Stipulation and all negotiations relating thereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce the terms of this Stipulation.

6.6    Successors and Assigns; No Third Party Beneficiaries.

This Stipulation is intended to bind and inure to the benefit of the Parties and their respective successors and permitted assigns, as applicable.  Except as otherwise explicitly set forth herein, nothing in this Stipulation is intended to benefit or create any right or cause of action in or on behalf of any person other than the Parties hereto (and their affiliated persons and entities who are intended to be beneficiaries of the releases and settlements set forth herein).

6.7    Notices.

All notices hereunder shall be deemed given if in writing and delivered, if sent by electronic mail, courier, or registered or certified mail (return receipt requested) to the following addresses (or at such other addresses as shall be specified by like notice):

      (a)    if to EFH or the EFIH Debtors, to:

           Energy Future Holdings Corp., et al.
           Energy Plaza
           1601 Bryan Street
           Dallas, Texas 75201

13

Attention: General Counsel
E-mail addresses:    stacey.dore@energyfutureholdings.com
                     andrew.wright@energyfutureholdings.com

with copies (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention: Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
E-mail addresses:    esassower@kirkland.com
                     shessler@kirkland.com
                     bschartz@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle Street
Chicago, IL 60654
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad J.
Husnick and Steven N. Serajeddini
E-mail addresses:    jsprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chusnick@kirkland.com
                     steven.serajeddini@kirkland.com;

and

Cravath, Swaine and Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
Attention:  Philip A. Gelston
Email address:       pgelston@cravath.com

and

Jenner & Block LLP
919 Third Avenue
New York, NY 10022
Attention:  Richard Levin
Email address:       rlevin@jenner.com

(b)    if to a Subsequent Settling EFIH PIK Noteholder, to:

Kaye Scholer LLP
250 West 55th Street

New York, New York 10019
Attention: Scott D. Talmadge
E-mail addresses:    scott.talmadge@kayescholer.com

(c)    if to the EFIH PIK Notes Trustee

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York 10036
Attention:  Scott L. Alberino, Ira S. Dizengoff
E-mail addresses:    salberino@akingump.com
                     idizengoff@akingump.com

and

Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, Illinois 60654-5313
Attention: Harold L. Kaplan and Mark. F. Hebbeln
E-mail addresses:    HKaplan@foley.com
                     MHebbeln@foley.com

or such other address as may have been furnished by a Party to each of the other Parties by notice given in accordance with the requirements set forth above. Any notice given by delivery, mail, or courier shall be effective when received.

6.8    <u>Severability and Construction</u>.

If any provision of this Stipulation shall be held by a court of competent jurisdiction to be illegal, invalid, or unenforceable, the remaining provisions shall remain in full force and effect if essential terms and conditions of this Stipulation for each Party remain valid, binding, and enforceable.

IN WITNESS WHEREOF, the Parties have caused this Stipulation to be executed and delivered by their respective duly authorized officers, solely in their respective capacity as officers of the undersigned and not in any other capacity, as of the date first set forth above..

[Signature Pages Follow]

15

[*Signature Pages Redacted*]