## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Energy Future Holdings Corp., *et al.,* | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |

## MOTION FOR APPLICATION OF FED. R. BANKR. P. 7023 TO THIS PROCEEDING AND TO CERTIFY A CLASS PURSUANT TO FRCP RULE 23

Claimants Michael Cunningham (individually "Cunningham"), Joe Arabie (individually "Arabie") and Michelle Ziegelbaum (individually "Ziegelbaum") (hereinafter collectively "Class Claimants") by and through their undersigned counsel, hereby move this court pursuant to section 105 of Title 11 of the United States Code ("Bankruptcy Code"), and Rules 9014 and 7023 of the Federal Rules of Bankruptcy Procedure ("FED. R. BANKR. P." or the "Rules") for the entry of an order exercising this court's discretion to apply FED. R. BANKR. P. 7023 to Class Claimant's "Proof of Unmanifested Asbestos Claim" (hereinafter "class proofs of claim") pursuant FED. R. BANKR. P. 3001.

As stated more fully herein, Class Claimants further move this court for entry of an order certifying the class proofs of claim brought by Claimants on behalf of themselves and class of similarly situated persons.

## STATEMENT OF FACTS

1.      On July 15, 2015 this Court set a bar date of December 14, 2015 as to claimants with asbestos-related harm in the above-captioned action against the Asbestos Debtors.[1] Following *Grossman,* the court directed that such persons found that all employees and contractors who encountered asbestos in the Asbestos Debtor facilities' or encountered asbestos

---

[1] EECI, Inc. (Case No. 14-10992), EEC Holdings (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012) (the "Asbestos Defendants").

by take-home exposure as a household member of such an employee or contractor, and who have not manifested any asbestos-related harm, nonetheless hold "unmanifested asbestos claims" dischargeable in the instant bankruptcy.. *JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.*), 607 F.3d 114 (3d Cir. Del. 2010). Accordingly, the Court not only set a bar date applicable to all asbestos related claims (the "bar date"), but also developed two discrete proof of claim forms applicable to such harms: one for those persons holding manifested asbestos-related claims and another for persons holding unmanifested asbestos-related claims. Class claimants, likely due to the latency period of the diseases[2], are presently free of asbestos-related disease but may manifest such harm in the future. They file the class proofs of unmanifested claim form along with this motion.

      2.      During extensive briefing on the question of a bar date for unmanifested asbestos-related harms the personal injury attorneys committee argued that a channeling injunction pursuant to 524(g) was the most appropriate method of handling unmanifested claims given the due process interest at stake. The court disagreed and instead provided for a notice scheme.

---

[2] It is generally accepted that that Asbestos disease, like other occupationally related cancers, carries a long latency period between exposure and manifestation of the disease. The typical mesothelioma latency period is 20 to 50 years, with a median of approximately 30 to 45 years. Under normal circumstances, the shortest possible latency period is 10 to 15 years, while the longest is more than 50 years. The time period depends on a number of factors such as the duration and intensity of asbestos exposure, as well as the patient's gender and the type of mesothelioma. Because of this long time span, most of those who are diagnosed with Mesothelioma and other asbestos-related disease are in their 60s or 70.  Additionally, generally accepted epidemiology instructs that asbestos claims will continue to manifest through 2049 or 2050. *See, e.g., In re Fed.-Mogul Global, Inc.*, 330 B.R. 133, 158 (D. Del. 2005) (court found expert's methodology of estimation of future claims, which forecasted through 2049, more reliable (related expert report can be found at 2004 WL 3569872)); *In re Specialty Prods. Holding Corp.*, Case No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) (court adopted expert methodology for estimation which forecasted claims through 2050). As a result, in every case in which asbestos claims have been estimated, the value of the unmanifested, future claims vastly outweigh the value of the present claims, often by a multiple of 4 to 5 times.

3.      Class Claimants are all persons who hold unmanifested claims and who did not receive notice of the instant action. They file this motion on behalf of themselves and others similarly situated in order to preserve the rights of their fellow workers and loved ones whom they fear may unwittingly have their rights disposed of on the bar date.

**Claimant Joe Arabie:**

4.      Joe Arabie is currently the Director of Field Education & Research, Texas AFL-CIO, and has held this title since January 1, 2004.  The Arabie Affidavit is attached hereto as Exhibit A. (Arabie Aff. ¶ 4). Prior to 2004, he had worked for the ten years as an Agent for the Heat & Frost Insulators & Allied Workers, Local 22 in Deer Park, Texas. (Arabie Aff. ¶ 5).

5.      For nearly twenty years before that (from approximately January 1972 – December 1990) he was an Insulator with the Heat & Frost Insulators & Allied Workers of Local 22 in Deer Park, Texas and throughout this time, he was employed by Ebasco and other Contractors as an Asbestos Insulator and remembers working in sixteen of the plants listed as covered in this bankruptcy.[3]

6.      Mr. Arabie describes with particularity his job duties and the ways in which he and his co-workers were exposed to asbestos.  That is, as an Insulator he was primarily responsible for the installation and replacement of asbestos used to insulate and regulate, control and maintain the temperature inside and out of machinery and equipment, including but not limited to Steam Pumps; Valves; Boilers (2-3 stories high); Turbines; Steam Lines; Water Lines and Hot Product Lines. He would also help take off whatever external asbestos covered this

---

[3] These plants are: Bay City- South Texas; Baytown-Cedar Bayou; Ft. Bend County-W.A. Parish; Houston-Greens Bayou; Houston-T H Wharton; Houston (Pasadena)-Champion-Deepwater; Houston (Pasadena)- Deepwater; Laporte- Sam Berton; Nolan County-Sweetwater; Point Comfort- Point Comfort; Rosenberg-W.A. Parrish Station; Seadrift-Plant Ct. No. 2; Texas City-P. H. Robinson; Webster-Webster; Wharton County-Wharton; and Wichita Falls-Wichita Falls. (Arabie Aff. ¶ 6)

equipment. (Arabie Aff. ¶ 7).  Except for the Steam, Water and Hot Product Lines, which were solely externally insulated with asbestos, all of the other equipment he worked on was both internally and externally insulated with asbestos.  This meant he was exposed to asbestos when working on both internal and external parts of the equipment. (Arabie Aff. ¶ 8).

7.      Mr. Arabie was also exposed to asbestos-containing dust from the work of other tradesmen performing their jobs in the Plants. He worked alongside people in other trades, in particular, the Millwrights, Carpenters, Painters, Boilermakers, Electricians, Iron Workers, Laborers, Operating Engineers, and Pipefitters who also worked with asbestos. When necessary, he and the other tradesmen would perform daily routine maintenance and repair work on the Steam Pumps; Valves; Boilers; Turbines; Steam Lines; Water Lines and Hot Product Lines. This maintenance would be done all day every day.  (Arabie Aff. ¶¶ 9-10).   Similar exposures occurred during routine maintenance of steam lines and hot production lines.  (Arabie Aff. ¶ 11). That is, for such routine maintenance he and other Insulators would stand over the equipment using putty knives or other tools to chip away the several layers of asbestos external insulation – this could take a few men and a long time depending on how large the valve was. The asbestos-containing dust would fly all around and into their mouths and up their noses. (Arabie Aff. ¶ 12).

8.      Arabie reports that depending on the job he would sometimes be standing in a cloud of asbestos-containing dust for hours. The trades responsible for performing the daily maintenance and repair work, generally the Pipefitters and Millwrights, would come by and scrape out the internal asbestos bonnet and asbestos casing gaskets and also pull out the dry and dusty packing out of the valves. (Arabie Aff. ¶13).

9.      Often while Arabie and his co-workers performed this maintenance, they were bent over the equipment with their faces immersed in a cloud of asbestos-containing dust. The

Insulators would then re-insulate the pump or valve with asbestos. To do this they would take a bag of dry asbestos cement and pour it into buckets of water. As the asbestos cement was poured into the buckets a white cloud of asbestos-containing dust would form above the bucket and he is certain he breathed that asbestos dust too. (Arabie Aff. ¶14).

10.     Other trades would usually perform the routine maintenance and repair work on boilers and turbines which were internally and externally insulated with asbestos. The Insulators were responsible for installation, removal and replacement of asbestos insulation in and around the boilers and turbines. The mechanics would come by to perform their maintenance as well. In order for the mechanics to perform their maintenance the Insulators would have to strip the asbestos off the areas they needed to work.  Putty knives and other tools to remove the asbestos were used. There would be visible asbestos-containing dust in the air and all of the tradesmen present were all breathing in that dust.  (Arabie Aff. ¶ 15). The Mechanics also scraped, brushed scrubbed and used a grinder to clean out the burnt-out asbestos gaskets from the various equipment and replaced them with fresh asbestos gaskets.  (Arabie Aff. ¶16).

11.     Mr. Arabie also describes exposure during yearly shut downs and the fact that significant exposures took place during those times (Arabie Aff. ¶ 17), as well as on those occasions when asbestos-containing dust would fall down on him as Carpenters and Painters sanded down the asbestos-containing joint compound to finish the walls and the ceilings using a pole sander. At such times, the asbestos dust would literally rain down on top of them. The Painters and Carpenters and anyone else in close proximity to them would be breathing in asbestos-containing dust. (Arabie Aff. ¶ 18).

12.     Throughout his time as an Insulator, Mr. Arabie and his co-workers were not provided personal protective equipment other than little paper masks.  Workers were not

provided uniforms.  They would wear their asbestos-laden clothes home. (Arabie Aff. ¶¶19-20). Significantly, Mr. Arabie, who has lived in Texas his entire life and is a leader in the union, did not get notice of the EFH bankruptcy and only heard about it indirectly from Claimant Cunningham. He is also in a position as the Director of Field Education and Research of the AFL-CIO to have heard from other workers that that they had received notice of the bankruptcy and the potential bar date. He heard nothing. He is worried that many people in his position never received notice of the bankruptcy and their right to file a claim by the bar date.

13.    For these reasons, Mr. Arabie, who despite extensive exposure, has not, (or not yet) manifested any asbestos-related diseases, seeks to represent a class of all those similarly situated who are at risk for asbestos-related disease, but who are not yet ill, and who have not been notified of this bar date before they get sick, thus losing their rights. (Arabie Aff. ¶¶ 21-23).

**Claimant Michael Cunningham**

14.    Claimant Michael Cunningham, like Claimant Arabie, has been exposed to asbestos but is not suffering from any asbestos-related diseases. The Cunningham Affidavit is attached hereto as Exhibit B. Mr. Cunningham is the Executive Secretary-Treasurer of the Texas State Building and Construction Trades Council, AFL-CIO since 2005.  Prior to that time he was the Business Manager for about ten years with the same insulator's union as Mr. Arabie: The International Association of Heat & Frost Insulators & Asbestos Workers, Local Union 22, located in Pasadena, Texas.  (Cunningham Aff.  ¶¶ 4-6). Mr. Cunningham worked in one of the plants covered by the EFH bankruptcy (W.A. Parrish Power Plant), and worked as an insulator on the coal side and the gas side of all 8 units. (Cunningham Aff.  ¶¶ 7).

15.    Claimant Cunningham worked to insulate power plants and worked alongside his union brothers, Millwrights, Carpenters, Insulators, Painters, Boilermakers, Electricians, Iron

Workers, Laborers, Operating Engineers, and Pipefitters, all of whom were exposed to asbestos. Mr. Cunningham describes his exposure to asbestos as similar to that of his colleagues in other job titles. Of the 22,000 members in the 60 unions and 16 associated affiliates of the Texas Building and Construction Trades Council, Mr. Cunningham believes that one-quarter of union members, or at least 5,500 union members were similarly exposed and are eligible to file unmanifested asbestos-related harm proofs of claim. (Cunningham Aff. ¶¶ 9-14). Mr. Cunningham did not receive any notice of the EFH bar date, though he is active in the union and he would have expected to receive notice through the union channels, if not the companies' business records. He heard about the case from the General Counsel. Like Mr. Arabie, Mr. Cunningham would have been in a position to hear about the bankruptcy from other members if they received notice but he heard nothing.

16.    Mr. Cunningham can also represent a class of people who have been exposed to asbestos in a plant covered by the bankruptcy proceedings who have not yet manifested any asbestos-related diseases. He also can represent members of the unions affiliated with the Texas Building Trades Council in his capacity as the Executive Secretary of that organization. (Cunningham Aff. ¶¶ 15-20).

**Claimant Zygielbaum**

17.    Claimant Michelle Zygielbaum is a family member of a former contractor who performed work at the Beaver Generating Station at Clatskanie Oregon, listed as one of the power and nuclear plants owned and operated by the Asbestos Debtors (Ziegelbaum Aff. ¶ 4). The Zygielbaum Affidavit is attached hereto as Exhibit C. Claimant Zygielbaum was exposed by take-home exposure to asbestos by laundering and otherwise handling her husband's work clothes (Ziegelbaum Aff. ¶¶ 6, 9-13). Though her husband suffered from mesothelioma as a

result of his occupational exposure to asbestos Ms. Ziegelbaum has not yet manifested an

asbestos-related injury.  (Ziegelbaum Aff. ¶ 7). Her husband did not receive notice of the

unmanifested claims bar date by direct mailing to allow her to file a claim.

18.    Claimants file this claim also on behalf of a nationwide class of the many people

like Claimant Zygielbaum who may have suffered "take home exposure" to asbestos through

their occupationally exposed family members or cohabitants, and who have manifested no

asbestos-related injury at of the bar date.

## ARGUMENT

### I.  THIS COURT SHOULD EXERCISE ITS DISCRETION AND PERMIT CLASS CLAIMANTS TO FILE A CLASS PROOF OF CLAIM ON BEHALF OF THEMSELVES AND SIMILARLY SITUATED PERSONS HOLDING UNMANIFESTED ASBESTOS RELATED INJURIES

#### a.  District Courts In The Third Circuit Have Discretion To Apply Rule 7023 To Proofs Of Claim

19.    By this petition, Claimants seek leave of the court to permit Claimants to file class

proofs of claims on behalf of not only of themselves but also of similarly situated persons who

have not filed individual unmanifested proofs of claim on their own behalf.

20.    For more than two decades, bankruptcy courts across the country, including

within the Third Circuit, have exercised their discretion to permit the filing of class proofs of

claims by applying FED. R. BANKR. P. 7023 to the proof of claims procedure set forth at FED.

R. BANKR. P. 3011. *See In re American Reserve Corp*., 840 F.2d 487, 493 (7th Cir., 1988); *See

also In re Zenith Labs*, 104 B.R. 659, 662 (Bankr. D.N.J. 1989).

21.    "The right to file a proof of claim is governed by 11 U.S.C.S. § 501." *In re

Tarragon Corp.  2010,  Bankr. LEXIS 3410, *1 (Bankr. D.N.J. Sept. 24, 2010).*  While Section

501 is silent on proofs of claims filed on behalf of a class, Bankruptcy Rule 7023, which adopts

Fed. R. Civ. P. Rule 23, expressly permits class actions in bankruptcy "adversary proceedings."
Outside of adversary proceedings, bankruptcy courts permit class proofs of claim pursuant to
FED. R. BANKR. P. 9014 (c), which provides that a "court may at any stage in a particular
matter may direct that one or more of the other rules in Part VII shall apply." Fed R. Bankr. P.
9014 (c). As the Seventh Circuit observed, Bankruptcy Rule 7023 is within Part VII of the Rules,
further stating:

> Filing a proof of claim is a "stage." All disputes in bankruptcy are either adversary
> proceedings or contested matters, so Fed. R. Civ. P. 23 may apply throughout a
> bankruptcy case at the bankruptcy judge's discretion. *In re American Reserve Corp.*, 840
> F.2d at 488.

Consistent with Fed R. Bankr. P. 9014(c) then, the application of Fed R. Bankr. P. 7023 to
proofs of claim is at the discretion of the court. *In re Tarragon Corp.* at *7; *In re American
Reserve Corp.*, 840 F.2d at 493.

22.     On the subject Circuit Courts have been unanimous. Every Circuit Court to
address the question of whether class proofs of claims are permitted has answered in the
affirmative.[4] *Certified Class in the Charter Securities Litigator v. Charter Corp. (In re Charter
Co.*), 876 F2d. 866, 873 (11th Cir. 1989); *Reid v. White Motor Corp.*, 886 F.2d 1462, 1472 (6th
Cir., 1989), *cert. denied*, 494 U.S. 1080 (1990); *In re Birting Fisheries, Inc.*, 92 F.3d 939 (9th
Cir. 1996); *In re Trebol Motors Distributor Corp.*, 220 B.R. 500, 502, (1st Cir. 1998); *Gentry v.
Siegel*, 668 F.3d 83, 91 (4th Cir. Va. 2012).

---

[4] See *Trebol Motors Distrib. Corp. v. Bonilla* (*In re Trebol Motors Distrib. Corp.*), 220 B.R. 500, 502, 1998 Bankr. LEXIS 608, *6, 39 Collier Bankr. Cas. 2d (MB) 1521, 32 Bankr. Ct. Dec. 764 (B.A.P. 1st Cir. 1998) (explaining "The first circuit court to address the issue originally ruled to the contrary, *In re Standard Metals Corp.,* 817 F.2d 625 (10th Cir. 1987), but on rehearing it determined that there had been error below regarding notice requirements and "in view of the disposition of this appeal it is not necessary to consider the class action claims issue." *Sheftelman v. Standard Metals Corp.*, 839 F.2d 1383, 1386 (1987), *cert. dismissed,*488 U.S. 881, 109 S. Ct. 201, 102 L. Ed. 2d 171 (1988).

23.     While the Third Circuit has not considered the question, bankruptcy courts within the Circuit have held that class proofs of claim are permitted at the court's discretion. *In re Zenith Labs*, 104 B.R. at 662 n. 2; *In re Sacred Heart Hospital of Norristown*, 177 B.R. 16 (Bankr. E.D.Pa. 1995); *In re First Interregional Equity Corp.*, 227 B.R. 358, 366 (Bankr. D.N.J. 1998); *In re W. R. Grace & Co.*, 389 B.R. 373, 377, 2008 Bankr. LEXIS 1582, *3, 50 Bankr. Ct. Dec. 16 (Bankr. D. Del. 2008). Similarly, district courts within the Second Circuit apply their discretion under FED. R. BANKR. P. 9014 and permit proofs of claims. *See In re Chateaugay Corp.,* 104 B.R. 626 (Bankr. S.D.N.Y. 1989); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997).

24.     In addition to the near consensus among the Circuits regarding the statutory construction of the Bankruptcy Rules put forth in *In re American Reserve*, district courts in this Circuit have also articulated compelling arguments in support of an interpretation of the Bankruptcy Rules that permits class proofs of claim as being consistent with the legislative intent of the drafters of the Rules.  *In re Zenith Laboratories, Inc.*, 104 B.R.at 664 (holding "the policies underlying the class action and Congress' explicit provision for the application of Fed. R. Civ. P. 23 to bankruptcy proceedings supports the view that the latter cases [*In re American Reserve* and progeny] set forth the better rule.").  Further, such application of "Rule 23 F.R.Civ.P. is consistent with Congress' intention to make bankruptcy proceedings available to the "widest possible range of players." *In re Charter Co.*, 876 F.2d at 870.

> **b.    The Discretionary Factors Within The Scope Of The Court's Review Weigh Strongly In Favor Of Permitting Claimants Here To Proceed With A Class Proofs Of Claim**

25.     In *In re Tarragon Corp,* the court delineated factors courts should consider when determining whether to exercise their discretion to permit a class proofs of claim:

[appropriate bases for exercise of discretion under Rule 9014] properly include, to a greater or lesser degree, prejudice to the debtor or its other creditors, prejudice to putative class members, efficient estate administration, the conduct in the bankruptcy case of the putative class representatives, and the status of proceedings in other courts.  *In re Tarragon Corp.* 2010, *supra,* at*10-11   (internal citation omitted).

26.     As discussed *infra*, Claimants have made the requisite showing that the exercise of the court's discretion is proper here so as to permit the application of Rule 7023 to the proof of claim process.

### i.   Class Claimants' Motion Is Presumptively Timely, Results In No Undue Delay Nor Prejudice To The Debtor, And Is Consistent With The Efficient Administration Of The Estate

27.     When deciding whether a claim is prejudicial to the debtor and efficient as to the administration of the estate, district courts have evaluated or looked to the timeliness of the motion and the filing of the underlying proof of claim which seeks to be certified.  *In re Tarragon Corp.*, *supra*, at *10-11; *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 6–7 (S.D.N.Y. 2005) (a "pervasive theme is avoiding undue delay in the administration of the case."). Here Class Claimants file their class proofs of claim prior to the bar date and their motion seeking certification contemporaneous with the putative class proofs of claim. Accordingly, they are timely and do not implicate delay, far less undue delay.

28.     While the court in deciding whether to permit the application of Rule 7023 to the Claimants' proofs of claim examines timeliness in the exercise of its discretion, district courts have held that Rule 7023 is properly considered when a motion for class certification is filed contemporaneous with the submission of the class proof of claim. *In re Tarragon Corp.*, *supra* at *7 (holding "[t]he question of whether the court shall exercise its discretion to permit class proofs of claim is 'ripe and appropriately considered' at the time of filing of the motion for class certification when timely filed *with* a proof of claim."); *See also In re First Interregional Equity*

*Corp.,* 227 B.R. 358 (Bankr. D.N.J. 1998); *In re Motors Liquidation Co.*, 447 B.R. 150, 157

(Bankr. S.D.N.Y. 2011) ("Fed. R. Civ. P. 23(C)(1) requires that class certification be sought as

soon as practicable after commencement of as a class action.")

29.      The timing of Claimants' filing of the instant motion and class proofs of claim

thus tips in Class Claimants' favor as a discretionary factor as "[p]rejudice occurs when

allowance of a late claim would injure or damage the debtor." *In re Spring Ford Indus*., 2003

Bankr. LEXIS 882, *14, 2003 WL 21785960 (Bankr. E.D. Pa. July 25, 2003).  Here, as there is

no delay, no prejudice to debtor attendant to delay can exist.

30.      Moreover, in timely filing, Class Claimants conducted themselves diligently and

consistent with the efficient administration of the estate, filing their claims and related motion

early in the proceedings. See *In re Tarragon Corp.* at *10 ("As the case in chief moves toward its

conclusion, it is more likely that a delay in resolving the certification issue will interfere with the

administration of the estate."). As distinguished from those proceedings where putative class

claimants had waited a period of several years between filing the proof of claim and seeking

certification to determine the fate of such claims—during which time the proceedings and the

debtors appreciation of their liabilities had significantly advanced without the benefit of such

determination—no such issue exists here. See *In re W. R. Grace & Co*, 389 B.R. at 380

(disallowing claims based on untimely filing well past the bar date.)

31.      The lack of undue delay as to the debtor applies with equal force as to the other

creditors. In sum, because the application of Rule 7023 to the claims process is presumptively

timely, made before the bar date, and would not prejudice the debtor or other creditors, the court

should exercise its discretion in favor of permitting Class Claimant's application.

**ii. Failure To Exercise Its Discretion To Permit Class Proofs Of Claims Would Result In Severe Prejudice To Persons Similarly Situated To Class Claimants**

32.     The strongest single factor warranting the court's exercise of its discretion to permit a class proofs of claim however, is far and away avoiding prejudice to putative class members. As the attached affidavits from Class Claimants attest, each Claimant satisfies the requirement to have been exposed in a plant covered by the bankruptcy or by a family member who was exposed in a plant covered by the bankruptcy. While Claimants Arabie and Cunningham as contractors were presumptively entitled to a direct mailing pursuant to the notice procedures previously established by the Court, or to notice through channels targeted at trade unions, nonetheless they received no notice**.**  (Arabie Aff. ¶ 21; Cunningham Aff. ¶ 18). Similarly, Claimant Zygielbaum is married to a person who suffered from mesothelioma and her status as a family member of such should have made her readily identifiable for the purposes of the mailing requirements in the notice scheme.  Class Claimants can hardly be said to be "unknown unknowns," as their names presumptively appear in business records. The due process rights of Class Claimants and persons similarly situated have been acknowledged by the Court in its July 15, 2015 order as properly requiring direct notification of the bar date.  As such, the prejudice to those who never received any notice who are protected by allowing the filing of class proofs of claim should be paramount.

33.     In the absence of class certification, such persons with unmanifested injuries, deemed "claims" under *Grossman,* will be subject to discharge.  Prejudice, then, to those persons Class Claimants seek to represent would be great:  they would effectively be deprived of due process which the Court had explicitly found in its July 15, 2015 order they were due.  This would amount to depriving thousands of persons who may develop life threatening, fatal and

otherwise painful and debilitating asbestos-related diseases of the right to assert claims against the asbestos debtors when they become ill.

34.      Critically, the availability of relief pursuant *Grossman* should not weigh against the Court exercising its discretion with respect to extending Rule 23 and granting this motion. As this Court has held, the bar date was required as to all claims by the plain language of the statute and on such basis the court determined *a priori* the scope of due process protections which each type of unmanifested claimant is entitled. Should this motion not be granted, those similarly situated to the Class Claimants who did not file individual proofs of claim may nonetheless be entitled to a *post hoc* case-by–case evaluation of their due process rights per *Grossman.* Such an evaluation of thousands of claims, as demonstrated by the numerosity section of this brief *infra*, however would be anathema to the notion of judicial efficiency. Rather, by extending the application of Rule 23 to the proofs of claim process this court may satisfy the requirements of its order in terms of protecting the bar date, while at the same time ensuring the claimants' due process rights are protected *en masse* and averting the judicial nightmare of an avalanche of case-by-case due process analyses brought by individual claimants who but for lack of notice would have filed a proof of claim.

35.      Finally, the case-by-case analysis under *Grossman* also obviates the concern that an opt-out class will provide an end run around the bar date. Any end run made by putative class members' opting out pales in comparison to the "end runs" made by a flood of presumptively discharged individual claimants seeking individualized review of their due process rights per *Grossman*. That is, efficient administration of the estate is enhanced by the court's exercise of its discretion to apply Rule 7023 to allow Class Claimants to file the class proofs of claim.

36.     Further, courts in this Circuit have held that where the debtor is no longer doing business, and "the only practical relief for the unnamed plaintiffs was strictly monetary relief," expungement would cause such "extreme prejudice" to the unnamed class plaintiffs" as to warrant exercising the courts discretion to apply Rule 7023 to avoid such prejudice even where a motion would have significantly delayed the proceedings.  *In re Fleet,* 76 B.R. at 1006, 1007. Here, consistent with *In re Fleet* and distinguishable from *In re Tarragon*, similarly situated persons whom Class Claimants seek to represent likely have not received actual or any notice of the bar date and accordingly would suffer extreme prejudice should this court not permit the unmanifested-injury claimants to proceed as a class.

37.     As all of the discretionary factors weigh in favor of such exercise of the court's discretion, Claimants respectfully requests that this petition be granted.

## II.  APPLYING RULE 7023, THIS COURT SHOULD GRANT CLAIMANTS' MOTION TO PROCEED AS A CLASS, THE REQUISITE SHOWING  UNDER RULE 23 HAVING BEEN MADE TO SECURE CLASS CETRFICATION

38.     Class Claimants file the class proofs of claim on behalf of a nationwide class of thousands, consisting of all persons who have no manifested asbestos-related injury as of the bar date in this action and who were occupationally exposed to asbestos, or through a take home exposure of a family member where the asbestos originated in workplaces or entities owned and controlled by the Asbestos Debtors (the "Unmanifested Asbestos Injury Class"). The scope of the class is coextensive with the scope of persons eligible to file unmanifested asbestos-related disease proofs of claim individually.

39.     Consistent with the Court's prior order Class Claimants move to certify a general class and two subclasses. The general class, represented by all three Class Claimant is comprised of all persons nationwide who were exposed to asbestos from the Asbestos Debtors facilities who

have not yet manifested an asbestos-related injury. Class Claimants Arabie and Cunningham

move to certify a subclass comprised of all general class members who were occupationally

exposed to asbestos at the Asbestos Debtors facilities ("Subclass A"). Class Claimant

Zygielbaum moves to certify a subclass comprised of all general class members who were

exposed by "take home exposure" ("Subclass B") occasioned by handling or otherwise

encountering the asbestos-laden clothing of their family members (i.e. members of Subclass A)

who were occupationally exposed to asbestos at Asbestos Debtors' facilities.

## RULE 23 STANDARD

40.     Where the Bankruptcy court has exercised its discretion to apply Rule 7023 to

proofs of claims, the standard is set forth in Fed.R.Civ.P. 23.

41.     "To obtain class certification, plaintiffs must satisfy all of the requirements of

Rule 23(a) and come within at least one provision of Rule 23(b)." *Georgine v. Amchem Prods.,*

83 F.3d 610, 624 (3d Cir. Pa. 1996) (quoting *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239,

248 (3d Cir.). "All potential classes must initially satisfy four prerequisites to be certified:

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  Fed. R. Civ.

P. 23(a). *Reyes v. Netdeposit,* LLC, 802 F.3d 469, 474 (3d Cir. Pa. 2015). That is, as a threshold

matter, FRCP Rule 23(a) permits a class action where "(1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3)

the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the

class." FRCP Rule 23(a).  Parties seeking class certification must establish by a "preponderance

of the evidence that the requirements of Rule 23(a) have been met." *In re Cmty. Bank of N.*

*Virgina Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d 380, 391 (3d Cir. Pa. 2015).

"Moreover, it is important for a district court to remember that an inability to calculate damages on a class-wide basis will not, on its own, bar certification. A district court errs when it holds a plaintiff seeking class certification to a higher standard of proof than proof by a preponderance of the evidence." *Reyes,* 802 F.3d at 474.

42.     Where Rule 23(a) is met, "additional requirements must then be satisfied depending on whether a plaintiff seeks certification under Rule 23(b)(1), (2), or (3)." *Reyes* 802 F.3d  at 474.

43.     Claimants here proceed under Rule 23(b)(3), the customary vehicle for preserving a right to obtain money damages. That Rule requires a court to consider whether common questions of law or fact predominate and whether the class action mechanism is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b)(3). "The manageability of class litigation is pertinent to those findings. *In re Cmty. Bank of N. Virginia*, F.3d at 392. Further "an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Id*.

     **a.**  **Class Claimants Satisfy The FRCP 23(a) Factors By A Preponderance Of The Evidence**

     **i.**  **Claimants Can Establish Numerosity**

44.     "Numerosity requires a finding that a class representative be appointed only if joinder of all members of the class would be impracticable. *In re First Interregional Equity Corp.,* 227 B.R. 358, 367 (Bankr.D.N.J. 1998); Fed.R.Civ.P. 23; Fed.R.Bankr.P. 9023; *See also In re W. R. Grace & Co.*, 389 B.R. 373, 376-377 (Bankr. D. Del. 2008) (finding numerosity not met where the class would consist of between 1 and 158 persons). "Impracticability does not mean impossibility but only the difficulty or inconvenience of joining all members of the class." *Id.* at 367-68, *quoting Zinberg v. Washington Bancorp, Inc.,* 138 F.R.D. 397, 406 (D.N.J.

1990).  Given the scope of the facilities operated by the Asbestos Defendants that standard is easily met here, as joinder of class members would require joinder of thousands of individual claims.

45.     Class Claimants bring this motion on behalf of thousands of similarly situated persons who were occupationally exposed to asbestos in the Asbestos debtors' facilities who do not yet manifest asbestos-related disease.  Class Claimants' putative class is limited to workers and family members of such workers at Asbestos Debtors' domestic facilities only. As Claimant Cunningham attests, his union alone has upwards of twenty-two thousand members, a quarter of whom he estimates worked in the Asbestos Debtors' facilities.  Family members of such persons identified by Cunningham alone would raise the potential class claimants into five digits just in Texas alone.

46.     As district courts in the Third Circuit have found the numerosity requirement met by less than on thousand class members, Claimants satisfy this element of Rule 23(a).  *Beck v. Maximus, Inc.*, 457 F.3d at 294-295 (finding a proposed class of 776 members satisfied numerosity).

## ii.  **Claimants Can Establish Common Factual And Legal Questions Regarding Whether Asbestos Debtors Negligently Exposed Claimants To Asbestos**

47.     "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013)(internal quotation marks omitted). The bar is not high; courts have acknowledged commonality to be present even when not all members of the plaintiff class suffered an actual injury, *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); when class members did not have identical claims, *In re Prudential Ins.*, 148

F.3d at 311; and, most dramatically, when some members' claims were arguably not even viable, *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305-07 (3d Cir. 2011) (en banc).

48.    "The focus of the commonality inquiry is not on the strength of each class member's claims but instead "on whether the defendant's conduct was common as to all of the class members." *In re Cmty. Bank of N. Virginia*, 795 F.3d at 397 (citations omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) (focusing the commonality inquiry on the defendant's conduct, not "on the conduct of individual class members"); *Neal v. Casey,* 43 F.3d 48, 57 (3d Cir. Pa. 1994) (considering only whether the defendant "engag[ed] in a common course of conduct toward" the class members).  As the Supreme Court elaborated in *Dukes v. Wal-Mart,* "what matters to class certification ... is not the raising of common questions — even in droves — but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (U.S. 2011) (emphasis and ellipsis in original) (internal quotation marks omitted). That is, "commonality is satisfied when there are class wide answers. Commonality considers whether the defendant's conduct was common as to all of the class members and common questions led to common answers such that the alleged misconduct and the harm it caused would be common as to all of the class members" *Reyes,* 802 F.3d at 474.

49.    Here Class Claimants' claims all turn on common answers to questions of whether the Asbestos Debtors exposed the class members to asbestos under circumstances where they are at risk to develop asbestos related disease but are not currently diagnosed with any asbestos related disease. The questions go to the health hazards of asbestos, the Asbestos Debtors' knowledge of those dangers, the Asbestos Debtors' failure to warn class member or mitigate such exposures, the ineffectiveness of safety protocols if any adopted by Asbestos

Debtors and the concert of action or conspiracy in the formation of and adherence to industry

practices. *Sch. Dist. of Lancaster v. Lake Asbestos of Quebec, Ltd. (In re Sch. Asbestos Litig.),*

789 F.2d 1000 (3d Cir. Pa. 1986).  All Class Claimants' claims share the above class-wide

answers to these questions with the similarly situated class of persons whom they seek to

represent. Further, as the Third Circuit held, "Experience shows that in the asbestos litigation

arena redundant evidence is the rule rather than the exception." *Id. at* 1009-1010.

50.     Finally, as the Third Circuit noted*,* a single common question regarding debtors'

behavior is sufficient to meet the commonality requirement. Thus, a class may be certified even

in the presence of "individualized determinations [which] may be necessary to completely

resolve the claims of each putative class member in this case." *In re Cmty. Bank of N. Virgina*

*Mortg. Lending Practices Litig., PNC Bank NA*, 795 F.3d at 399.

### iii.   The Class Claimants  Claims Are Typical of the Class

51.     A class representative will satisfy the "typicality requirements of Rule 23(a)

where she qualifies as "part of the class and possess the same interest and suffer the same injury

as the class members." *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 356 (3d Cir. N.J.

2015).

52.     "To evaluate typicality for purposes of class certification, courts ask whether the

Class Claimants' claims are typical, in common-sense terms, of the class, thus suggesting that

the incentives of the plaintiffs are aligned with those of the class.  *Beck v. Maximus, Inc.*, 457

F.3d 291, 293 (3d Cir. Pa. 2006).  "Factual differences will not render a claim atypical if the

claim arises from the same event or practice or course of conduct that gives rise to the claims of

the class members, and if it is based on the same legal theory. *Baby Neal,* 43 F.3d at 58. Further,

the presence of a unique defense alone does not render a Class Claimant atypical of a class

whom one seeks to represent. *Beck*, 457 F.3d at 294-295. It does so only where such defense is

likely to "to become a major focus of the litigation." *Id.* at 293. Further, "If a court determines

an asserted unique defense has no merit, the defense will not preclude class certification." *Hardy*

*v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994).

53.       Here Plaintiffs Arabie and Cunningham are members of the class occupationally

exposed in plants designated by Asbestos Debtors, and Claimant Zygielbaum is a family member

of those occupationally exposed and thus at risk of asbestos-related disease by take home

exposure. As such, all Class Claimants then may fill out proof of claims and are members of the

putative class. Further the claims raised by Class Claimants that the Asbestos Debtors

negligently--with knowledge of the health hazards posed by asbestos--exposed them to asbestos

and its attendant harm, is a typical legal theory common to every state law which may be

pleaded. Further, Class Claimants stand in the same relation to a legal injury as every other

similarly situated person with the class: that is, each holding a "claim" accrued under *Grossman*,

though they have yet to manifest a physical injury. *In re Sch. Asbestos Litig.*, 789 F.2d at 1000

("The typicality requirement was satisfied because the plaintiffs' theories of liability were

harmonious, and the named plaintiffs stood in a position similar to other members of the class.")

Moreover, as the consensus among occupational health experts is that there is no safe exposure

to asbestos, accordingly, direct-exposure versus take-home exposure to asbestos is of no import

in terms of providing a unique defense to Claimant Zygielbaum, as compared with Class

Representatives Arabie and Cunningham.

### iv. The Class Representatives And Their Attorneys Fairly And Adequately Represent The Interests Of Their Clients

54.       Rule 23 requires that the Class Representatives and Class Counsel fairly and

adequately protect the interests of the class. Specifically, "the adequacy requirement primarily

examines two matters: the interests and incentives of the class representatives, and the experience and performance of class counsel." *In re Cmty. Bank of N. Virginia*, 795 F.3d at 392 (citing *Community Bank I*, 418 F.3d at 303). By such inquiry, the Rule 23(a) adequacy requirement is designed "to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

55.    "As to class counsel, the adequacy requirement assures that counsel possesses adequate experience, will vigorously prosecute the action, and will act at arm's length from the defendant." *In re Cmty. Bank of N. Virginia*, 795 F.3d at 389. As attested in the Mirer Affirmation, Class Counsel is an experienced attorney well versed in bringing class actions in federal court and therefore able to provide vigorous prosecution of such claims against debtors, all of whom to which she is at arms-length. Further, Class counsel may fairly and adequately represent both the general class and the two subclasses, as the subclasses are plainly distinguishable from such subclasses where the Supreme Court has held separate counsel is required.. In both *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Anchem*, *supra,* the Court held each subclass required its own class counsel on account of the fact that the subclasses were divided into holders of further and present injuries, giving rise to a conflict as to whether to preserve funds for future injured parties or provide the greatest recovery possible for those claimants with present injuries from a limited fund that was insufficient to achieve both aims. *See Amchem*, 521 U.S. at 627. Here, separate counsel for each subclass is not required as the subclasses are both comprised of persons whose injuries may manifest only in the future. Accordingly, no conflict among the subclasses exists to warrant separate counsel. *In re Cmty. Bank of N. Virginia*, 795 F.3d at 392 (holding separate counsel is required for subgroups within the class only where "[such subgroups] have interests that are significantly antagonistic to one

22

another."). Accordingly, Class Counsel may adequately and fairly represent the interests of the general class and the two subclasses as a competent attorney whose representation of the class and subclasses implicates no conflicts.

56.    As to the adequacy of Class Claimants' representation of those similarly situated persons, "the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft, 681 F.3d 170, 183 (3d Cir. 2012).* Further,

> "[S]o long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes." (internal quotation marks omitted)). There is thus no fundamental intra-class conflict to prevent class certification, nor is there any derivative conflict of interest that would prevent counsel from fairly and adequately representing the interests of the entire class. *In re Cmty. Bank of N. Virginia*, 795 F.3d at 395.

As distinguished from *Anchem*, here, where all creditors hold claims resulting from unmanifested injuries, as discussed *supra*, no interclass conflict renders Class Claimants inadequate representatives.  That is, Class Claimants and the class they seek to represent all proceed on the same theories and suffer the same legal harm-claims cognizable under *Grossman's* and yet unmanifested. Class claimants seek to protect all those with unmanifested claims like them, who, for reasons of notice or disability, or any other reason, would not file a claim by the bar date of December 14, 2015. Class claimants are in no actual conflict with the putative class members nor can any speculative conflict concocted by debtors to defeat the adequacy requirement.  *See In re Ins. Brokerage Antitrust Litig.,* MDL No. 1663, 2007 U.S. Dist. LEXIS 65037 at *11 (D.N.J. Sept. 4, 2007), *aff'd,* 579 F.3d 241 (3d Cir. 2009) ("[A] conflict will not be sufficient to defeat class action unless that conflict is apparent, imminent, and on an issue at the very heart of the suit." (internal quotation  marks and brackets omitted)); *See also* Alba Conte & Herbert B. Newberg, *Newberg On Class Actions* § 3:58 (5th ed. 2011) ("A conflict must

be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur.").

57.     As demonstrated above, as Class Claimants seek to represent a class of similarly situated persons in a class action seeking common answers to the question of the Asbestos Debtors' negligence, and as Class Claimants raise claims typical of the class they seek to represent, and whom they may represent adequately by their interests as holders of claims of unmanifested injuries, this court should find Rule 23(a) established by a preponderance of the evidence, and turn its attention to Class Claimants' satisfaction of Rule 23(b).

### b.   THE CLAIMANTS CAN ESTABLISH PREDOMINANCE AND SUPERIORITY SUFFCIENT TO SATISFY RULE 23(B)(3)

### i. The Class Members Are Ascertainable

58.     "[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012). This the movant must "show by a preponderance of the evidence." *Carrera v. Bayer Corp.,* 727 F.3d 300, 306, (3d Cir. N.J. 2013) (internal citation omitted).

59.     Specifically, "the ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd v. Aaron's Inc.,* 784 F.3d 154, 158, 2015 U.S. App. LEXIS 6190, *1 (3d Cir. Pa. 2015). "The ascertainability requirement consists of nothing more than these two inquiries. And it does not mean that a plaintiff must be able to identify all class members at class certification--instead, a plaintiff need only show that class members can be identified." *Id.*

60.     Class Claimants bring this action to protect the rights of similarly situated persons who may not have knowledge of the bar date, but whom are entitled to file individual unmanifested proofs of claims. Here the class is defined by the objective criteria set forth in the proof of claim form, in that Class Claimants and persons similarly situated are present or former employees and contractors who worked for an Asbestos Debtor in one of an enumerated number of facilities; and/or family members thereof.

61.     In protecting the due process rights of persons within the scope of the claim form, the Court in its July 15, 2015 order devised a method of direct notice and notice via targeted media outlets. Implicit in both methods of notice is that the putative Class Claimants are readily identifiable and may be readily identified by such methods.  Specifically, the court ordered Debtors to make a reasonable search of its business records for the names and addresses of employees and contractors of Asbestos Debtors. Recently, the Third Circuit found a class ascertainable where the debtor possessed all of the relevant bank records needed to identify the putative class members. In *re Cmty. Bank of N. Virgina*, 795 F.3d 397.  Further, while such method may entail some individualized review, such review is not fatal to a finding of ascertainability.  Indeed, a variation of the method proposed in the court's July 15, 2015 order may be most appropriate to ascertain the individuals within the proposed class where Class Claimants had in fact not successfully received such notice of the bar date from the company but serendipitously and indirectly learned of it from counsel. Notice to the class could be improved by requiring a further individualized search of records and mailings such as to specific skilled trades unions in the states where EFH plants exist, among other things.  This method will ensure sufficient notice to protect these claimants' due process rights without changing the bar date.

**ii.  Class Claimants' Common Questions Predominate Over Questions Individual To Them**

62.    Plaintiffs may further establish predominance for the purposes of satisfying Rule 23(b)(3). Before certifying a Rule 23(b)(3) class, a district court must evaluate whether, *inter alia*, "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  See also *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 313-314 (3d Cir. 1998). This requirement under Rule 23(b) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "The focus of the predominance inquiry is on whether a defendant's conduct was common as to all class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 285 (3d Cir. N.J. 2011).

63.    "Predominance "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804 (2011); *See also Wal-Mart*, 131 S. Ct. at 2552; *Marcus*, 687 F.3d at 60;  *Neale,* 794 F.3d at 370. Specifically, the "predominance requirement focuses on whether essential elements of the class's claims can be proven at trial with common, as opposed to individualized, evidence." *Byrd*, 784 F.3d at 158. "Further, it is often appropriate to discuss Fed. R. Civ. P. 23 commonality and predominance together because [w]here an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement." *Reyes,* 802 F.3d at 474.

64.    Class Claimants identified the common issues *supra*.  The issue which predominates in this putative class action is unlike other class actions which seek to proceed solely on a common legal theory, to obtain relief.  In this case Class Claimants seek to represent a class of those similarly situated who have had exposures to asbestos in plants covered by this

bankruptcy, which put them at risk of developing asbestos-related diseases, but who have not yet become sick, and thus have only unmanifested claims. Some of these persons may never develop any asbestos related disease. but if they do become ill as a result of the exposure to asbestos at an Asbestos Debtors' covered plant they will then have the right and the ability to proceed against the bankruptcy estate on theories of liability applicable to their claims and try to prove that their diseases were caused at least in part by the negligence of the debtor in allowing the exposures to asbestos.

65.    The ability to satisfy the predominance standard is unimpeded by the existence of differing state law standards nor by individualized assessment of the elements of harm or related causation.  As the Third Circuit held in *Sullivan:*

> Variations in the rights and remedies available to injured class members under the various laws of the fifty states do not defeat commonality and predominance for class action purposes. This is so because a finding of commonality does not require that all class members share identical claims, and predominance is not considered deficient merely because claims were subject to the varying laws of fifty states. Predominance under Fed. R. Civ. P. 23(b)(3) cannot be reduced to a mechanical, single-issue test; rather, as long as a sufficient constellation of common issues binds class members together, variations in the sources and application of applicable laws will not foreclose class certification. *Sullivan*, 667 F.3d at 285.

66.    As *Sullivan* further discussed, as is the case here, "[c]ourts are willing to certify nationwide classes where differences in state law fall into a limited number of predictable patterns, and any deviations can be overcome at trial by grouping similar state laws together and applying them as a unit." *Id.*

67.    Similarly, the Third Circuit in finding predominance on a class claim involving bank frauds found that though the individualized assessment of a central element of the individual claim might require "loan by loan analysis" as to the individual's due diligence, the primacy of the inquiry regarding defendants' alleged bad acts, namely "delivery of inaccurate

information" was sufficient to establish predominance. *In re Cmty. Bank of N. Virgina, 795 F.3d at, 408.* Such a holding is consistent with  longstanding precedent in the circuit that "[t]here may be cases in which class resolution of one issue or a small group of them will so advance the litigation that they may fairly be said to predominate.  *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985).

68.     As the Third Circuit recently stated:

> One relevant guidepost that directs the predominance inquiry is that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members. The focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a colorable claim. Rule 23 does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances.
> *Reyes*, 802 F.3d at 474.

69.     Here, Claimants seeks to certify a class based on the common evidence that the Asbestos Debtors' actions resulted in the exposures to asbestos of either Class Claimants and these class members are still facing the risk in the latency period of developing asbestos related diseases.

### iii. A Class Proofs of Claim Is the Superior Method of Proceeding

70.     Rule 23(b)(3) requires that class treatment be "superior to other available methods for fairly and efficiently adjudicating the controversy" and provides a non-exhaustive list of factors to consider in determining superiority, including: the class members' interest in individually controlling the prosecution of separate actions; the extent and nature of any similar litigation already commenced by class members; the desirability of concentrating the litigation in a particular forum; and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks a district court to balance, in

terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Cmty. Bank of N. Virgina,* 795 F.3d 408-409.

71.     Here a class action is vastly superior to claimants proceeding individually. A class action would ensure the broadest due process of those whose claims may be disposed of by the bar date. It also comports with the courts order by remedying the infirm implementation of the notice scheme as demonstrated by the Class Claimants' affidavits. Not only are class proofs of claim superior to individual proofs of claim with respect to due process and the court's order, as established above with regard to the other elements of Rule 23, the common questions of fact and law are best addressed as a class, thus expediting the proceedings and resulting in significant judicial efficiencies.  As discussed *supra*, class action is superior in terms of efficiency with respect to due process as well , obviating the need for case-by-case assessment of claimants challenging the discharge of their claims while also a fair way of protecting the rights of all claimants while providing sufficient notice to Asbestos Debtors.

72.     Looking to the four discretionary factors enumerated in the Rule also warrants a finding of superiority.

73.     With respect to the class members' interest in individually controlling the prosecution of separate actions, here as the claims are brought by persons with unmanifested injuries, no person has a significant interest in individual control of a separate action at this stage. Rather a class mechanism removes what would be burdensome to individual claimants—exerting the effort to protect their rights even while there injuries if any have not manifested.

74.     As to similar litigation, while the number of individual claims filed by the asbestos bar date is not known, Class Claimants know of no other Class proofs of claims being brought, nor any prior class action brought against the Asbestos Debtors.

75.     With respect to the "desirability of concentrating the litigation in a particular forum," just as this court has found it desirable to consolidate the proceedings in the instant forum, by the same logic the concentration of the class proofs of claim is not detrimental to claimants and is further desirable, as permitting for an expedited and streamlined process.

76.     Finally, the class proofs of claims presents no insurmountable challenge to the management of a class action. While "[s]tate-law distinctions may implicate manageability concerns they do not pose an obstacle to certification of a settlement class," *Sullivan*, 667 F.3d 303 nor complete barrier to a litigation class, as clearly evidenced by the certification of nationwide classes under state law. *See In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 530 (3d Cir. Del. 2004) (affirming nationwide class despite state law difference); *See also  Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 924 (3d Cir. 1992) (affirming finding of (b)(3) predominance despite differences in state law); *See also  In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 815*(3d Cir. Pa. 1995).*

77.     Furthermore, persons who are part of this class, who develop asbestos related diseases, that is develop manifested claims, would simply be moved from the persons with unmanifested claims to those with manifested claims and like anyone else who filed an individual proof of unmanifested claim prior to the bar date, would be able to pursue their manifested claim against the bankruptcy estate.

78.     Furthermore Rule 23(d) vests in the Court substantial discretion to enter orders subsequent to the Order Certifying the Class to manage the class. This goes a long way toward managing any issues that do arise.  A class action thus protects such persons' due process rights while conserving judicial resources that would be spent on a time consuming and costly wave of potentially thousands of *Grossman* based due process challenges. Further, by certifying a class

early in the process, this Court may better assess the total asbestos liability and not delay the administration of the case nor subject Asbestos Debtors to unforeseen liability late in the day.

## CONCLUSION

79.     With the majority of circuit case law supporting class proofs of claim, as well as holding that class proofs of claim further class action and bankruptcy policies, the benefits to these bankruptcy proceedings are clear. The Court's allowance of a class proofs of claim, would advance the interests of the debtor and all creditors by assuring timely resolution of the class claims which have significant implications for EFH's reorganization. Accordingly, the Court should exercise its discretion to grant Claimants' motion for class proofs of claim and certify the class.

WHEREFORE, the Class Claimants respectfully request that the Court enter the order substantially in the form attached hereto as **Exhibit D**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: Wilmington, DE
      November 25, 2015

Respectfully submitted:

By:    */s/ Daniel K. Hogan*
    Daniel K. Hogan (DE Bar # 2814)
    **HOGAN♦McDANIEL**
    1311 Delaware Avenue
    Wilmington, Delaware  19806
    Telephone:  (302) 656-7540
    Facsimile: (302) 656-7599
    dkhogan@dkhogan.com
    -and-
    Jeanne Mirer (NY Bar # 4546677)
    Law Offices of Jeanne Mirer
    1700 Broadway, 21st Floor
    New York, NY 10019
    Telephone: (212) 231-2235
    Facsimile: (212) 765-8954
    *Counsel for the Class Claimants*