IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS ) | |
| CORP., et al., ) | Case No. 14-10979 (CSS) |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | Related Docket: 6495, 6499, 6788 and |
| ) | 6792 |
| ) | |
| ) | Hearing Date: December 16, 2015, at 9:30 am (then |
| ) | prevailing Eastern time) |
| ) | Objections Due: December 9, 2015 |

**DOYENNE CONSTRUCTORS LLC'S MOTION TO APPROVE AND/OR FOR LEAVE TO AMEND CLAIMS NOS. 1102-1104**

COMES NOW, Doyenne Constructors LLC ("Doyenne"), by and through counsel, Cohen Seglias Pallas, Greenhall & Furman, P.C., and hereby moves this Court pursuant to FED. R. CIV. P. 15, as made applicable to this Motion by FEDERAL RULE OF BANKRUPTCY PROCEDURE 7015, to approve Doyenne's amended proof of claims, or in the alternative, to grant Doyenne leave to amend claims 1102, 1103 and 1104. In support of the Motion, Doyenne asserts as follows:

**BACKGROUND**

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On April 29, 2014, Energy Future Holdings Corp., and certain affiliates of the above-captioned debtors (collectively the "Debtors"), filed their voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"),

11 U.S.C. § 101 *et seq*.

3. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtors retained possession of their assets and are currently operating as debtors-in-possession.

**DOYENNE AND ITS CLAIMS**

4. At all relevant times, Doyenne was a Certified Woman Business Enterprise providing customers with outage and construction related services. It maintained an office in Mariah Hill, Indiana from which it conducted business.

5. Prior to the April 29, 2014 Petition Date, Doyenne entered into two contracts directly with the Debtors. Both contracts required Doyenne to furnish construction labor, materials and equipment that was otherwise incorporated into the Debtor's real property located within the State of Texas. Those locations include:

a. Debtor Luminant Generation Company, LLC ("Sandow"), at the Sandow Steam Electric Station located in Milam County, Rockdale, Texas ("Sandow Project"). *See* **Exhibit A**.

b. Debtor Luminant Mining Company, LLC ("Kosse")[1] at the Kosse

---

[1] The contract identifies Oak Grove as a contracting party but subsequently defines the contracting party as:

> The term "COMPANY Group" means COMPANY, its parent corporation, Energy Future Holdings Corp., and all subsidiaries and affiliates of Energy Future Holdings Corp., and all officers, directors, shareholders, associates, related firms and entities, employees, servants and agents of both COMPANY and each such subsidiary or affiliate.

*See Exhibit B* at p.2.

The *Debtors' Thirty-Second Omnibus (Non-Substantive) Objection to Insufficient Documentation, Amended, and Wrong Debtor Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 (DK 6495)* asserted that Doyenne identified the wrong Debtor. In response to the Debtor's motion, Doyenne agreed. *See* DK 6788.

Mine facility located 7 miles East on the North side of Highway 7, Limestone County, Kosse, Texas ("Kosse Project"). *See* **Exhibit B**.

6.    As a result of unpaid invoices on the Sandow and Kosse Projects, on June 4, 2014, Doyenne timely filed proof of claims 1102, 1103 and 1104. Copies of those proof of claims forms ("Original POC") appear as **Exhibit C**.[2]

7.    Prior to counsel's involvement, on September 15, 2015, Doyenne filed Amended POC claims ("Amended POC").  Copies of the Amended POC forms appear as **Exhibit D**.[3]  The difference between the Original and Amended POC is reflected below:

|  | Claim 1102 | Claim 1103 | Claim 1104 |
|---|---|---|---|
| Debtor | Luminant Mining Company, LLC | Luminant Generation Company, LLC | Oak Grove Mgmt. Company, LLC |
| Amount | $98,000.00 | $45,000.00 | $8,900.00 |
| Original Claim Characterization | None | None | None |
| Date Filed | 6/4/2014 | 6/4/2014 | 6/4/2014 |
| Amended Claim Characterization | Secured – Texas Constitutional Lien | Secured – Texas Constitutional Lien | Secured – Texas Constitutional Lien |
| Date Amended | 9/11/2015 | 9/11/2015 | 9/11/2015 |
| Debtor's Amended Claim Number[4] | 11613 | 11487 | 11486 |
| Supporting Documentation | Yes | Yes | Yes |

---

[2] The General Bar date was October 27, 2014. *See* DK1866.

[3] Doyenne did not seek leave of the court before filing amendments to any of its claims. Disallowing those amended claims on that basis alone would surely "elevate form over substance." *In re Outdoor Sports Headquarters, Inc.*, 161 B.R. 414, 421 (Bankr. S.D. Ohio 1993) ("The [claimant] did not seek leave to amend the Original Proof of Claim; however, the court will not elevate form over substance. Therefore, notwithstanding the [claimant's] procedural omission, the court will address whether the Amended Proof of Claim should be allowed.") (citations omitted); *see also Pepper v. Litton*, 308 U.S. 295, 305 (1939).

[4] It is unclear why the Debtor assigned new claim numbers to the Amended POC.  For simplicity, however, the Motion refers to Doyenne's claims by the claim number assigned to the Original POC.

8.      When the Original POC claims were filed Doyenne did not characterize them as secured, unsecured, administrative, etc.  Regrettably Doyenne made a mistake.  A mistake that is obvious even upon a cursory review of those claims.  The failure to check off a box in an unfamiliar form, any box, represented middle-aged inadvertence at its zenith.  It was only after consulting Texas counsel in September 2015, that Doyenne both learned of its mistake and that it held a Texas' constitutional lien over work performed for the Debtors.[5]  That mistake was rectified by the Amended POC.

### DOYENNE'S TEXAS CONSTITUTIONAL LIEN

9.      As noted, all of the work and resulting costs relate to contractual work that Doyenne performed for the Debtors at their respective Texas facilities.  As such, Doyenne's claim is secured by the Texas constitution.[6]  Specifically, the Texas Constitution provides:

> LIENS OF MECHANICS, ARTISANS, AND MATERIAL MEN.
> Mechanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor; and the Legislature shall provide by law for the speedy and efficient enforcement of said liens.

TEX. CONST., ART. 16, § 37.

---

[5] On similar facts a District of New Jersey Bankruptcy court found excusable neglect. *In re Brown*, 159 B.R. 710, 716-18 (1993)(allowing a post bar date amendment because the creditor learned that a previously unsecured claim might be secured under state law).

[6] To assert and be protected by Texas' constitutional mechanics lien the party performing construction work must be in privity with the property owner. *First Nat'l Bank of Paris v. Lyon-Gray Lumber Co.*, 194 S.W. 1146 (Tex. Civ. App.–Texarkana 1917), *aff'd*, 110 Tex. 162, 217 S.W. 133 (1919).  As reflected above, Doyenne was in a direct contractual privity with the Debtors on both the Sandow and Kosse projects.

10. Under Texas law, Doyenne's constitutional lien is self-executing and arises simply by virtue of Doyenne's performance of work, pursuant to a direct contract with the debtor, at the Debtor's property. *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 790 (Tex. 1972); *Strang v. Pray*, 35 S.W. 1054, 1055 (1896). This self-executing quality of the Texas constitutional lien translates into automatic protection for Doyenne as a secured lien-holder. *In re A & M Operating Co.,* 182 B.R. 997, 1000 (Bnkr. E.D.Tex. 1995). Indeed, the Supreme Court of Texas long ago acknowledged the Texas Constitution imposed the lien at the moment of the transaction. *Keating Implement and Mach. Co. v. Marshall Elec. Light & Power Co.*, 12 S.W. 489, 490 (1889).

11. Hence, on the Petition Date, Doyenne was a secured creditor pursuant to the Texas constitutional mechanics lien.

**ARGUMENT**

12. FEDERAL RULE OF BANKRUPTCY PROCEDURE 15 provides that amendments to proofs of claim shall be governed by RULE 15 of the FEDERAL RULES OF CIVIL PROCEDURE and "commits the decision to grant or deny leave to amend to the trial court's sound discretion." *In re Trans World Airlines*, 145 F.3d 124, 141 (3d Cir. 1998). RULE 15(c)(1)(C) further provides that an amendment will relate back to the date of the original pleading when the "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

13. The Amended POC clearly satisfies RULE 15(c)'s same-conduct/ transaction/occurrence standard, because the Original and Amended POC are

grounded in the exact same right to payment, the exact same amount and exact same transactions with the Debtors. *Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 10 (1st Cir. 1992).

14. In the exercise of the Court's discretion, case law reflects that leave to amend should be denied in the face of undue delay motivated by bad faith, dilatory motive, prejudice and futility. *Trans World, supra* at 141 (*citing In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1434 (3d Cir. 1997)); *see also Hatzel & Buehler, Inc. v. Station Plaza Assocs.*, 150 B.R. 560, 562 (Bankr. D. Del. 1993); *In re Edison Bros. Stores, Inc.*, 2002 WL 999260, at *3 (Bankr. D. Del.). Absent such, permission to amend shall be freely given when justice so requires because "the purpose of Fed. R. Civ. P. 15 is to avoid the elevation of form over substance and 'to facilitate the amendment of pleadings except where prejudice to the opposing party would result.'" *United States v. Hougham*, 364 U.S. 310, 316 (1960), *reh'g denied* 364 U.S. 938 (1961). Thus, a motion for leave to amend a claim under RULE 7015 should be granted where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. *Trans World, supra*, at 141.

15. To be sure, "[g]enerally, amendments are allowed when the original claim provides notice of the existence, nature, and amount of the claim." *In re Orion Refining Corp.*, 317 B.R. 660, 664 (Bankr. D. Del. 2004).

16. The RULES' fundamental preference to elevate form over substance is consistent with the statutory mandate set out in 11 U.S.C. §§ 501(a) and 502. Together

those sections provide that a "creditor or an indenture trustee may file a proof of claim," and that claim "is deemed allowed" unless an objection is made. 11 U.S.C. § 502(a). If an objection to a claim is made, then the court "shall" determine the amount of such claim and "shall allow such claim" except to the extent that one of the limited grounds for disallowance is established. 11 U.S.C. § 502(b). Noncompliance with RULE 3001, *i.e.*, failing to check a box, is not one of the statutory grounds for disallowance. *In re Heath*, 331 B.R. 424 (9th Cir. BAP 2005).

## THE LACK OF PREJUDICE

17. On a motion for leave to amend, the Third Circuit has held that "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir.1990) (*quoting Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989)). To establish prejudice, "the non-moving party must do more than merely claim prejudice; 'it must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely.' " *Id.* at 652 (*quoting Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing*, 663 F.2d 419, 426 (3d Cir.1981)).

18. These facts, however, present an unusual setting that effectively undermines any prejudice claim. This is not the situation where a creditor seeks leave to amend for the purpose of re-characterizing a claim. *See, e.g., In re Walls & All, Inc.*, 127 B.R. 115, 118 (W.D.Pa.1991) (recognizing that attempts to change to claim status are generally prohibited). Rather the claim was never characterized in the first instance. Hence, the Debtor cannot reasonably claim to be prejudiced by the Amended POC.

Specifically, from the face of the Original POC, the Debtor had no rational basis upon which to conclude the claim was unsecured. Indeed, if any presumption was warranted, it should have been that a creditor providing construction services in Texas had, by automatic operation of state law, a secured claim. Indeed, other creditors performing construction work in Texas for the Debtor asserted similar Texas constitutional liens. *See, e.g.,* DK 888 (Claim No. 2747), DK 1723 (Claim No. 4868). No doubt the Debtors' substantial pre-petition business operations in Texas, including related construction activity on real property owned by it, undoubtedly cultivated institutional understanding and experience with Texas' constitutional mechanics lien.

19. The fact that the Original POC did not characterize Doyenne's claim was, in and of itself, a burning red-flag that the Debtors were neither entitled to ignore nor make any presumption about. Despite that omission Doyenne nonetheless included supporting documentation, including the relevant contracts and invoices with each Original POC. A review of that documentation would have quickly revealed the situs of Doyenne's work. *In re SemCrude, L.P.*, 443 B.R. 472, 478-80 (Bankr. D. Del. 2011) (noting that the Debtors were on notice of the Plaintiff's claim because contract documents were attached to the proof of claim forms). From that revelation follows the epiphany – Texas law was implicated.

20. It is also noteworthy the Debtors' work to cull creditor claims continues in earnest. As of this writing the Debtors already filed no less than 33 omnibus objections attaching a multitude of creditor claims. The result is that, on any given day, the pool of pending creditor claims changes in any number of ways. This fluid setting belies any

argument that amending Doyenne's claims prejudices the Debtors. Against this backdrop, the Debtor's Plan is not yet, as of this writing, confirmed. *Walls, supra,* at 118 (*citing In re Metro Transportation,* 117 B.R. 143, 147 (Bankr.E.D.Pa.1990) for the proposition that an amendment filed after Plan confirmation results in "prejudicial alteration of the amounts recoverable by other creditors of the debtor."). The combination of a fluid claim pool and the lack of a confirmed Plan combine to ameliorate prejudice, if any, that might result to the Debtors from an amendment to Doyenne's claim.

21. Finally, Doyenne's secured claim owes its existence to the Texas constitution which automatically protects qualified entities. This constitutional grant reflects the State of Texas' solicitude to protect, in a unique and powerful way, covered mechanics, artisans and material men. *Lippencott v. York*, 24 S.W. 275, 276 (Tex. 1893). That important state interest should not be wiped away simply because Doyenne neglected to check a box on an unfamiliar form.

*[Remainder of Page Left Intentionally Blank]*

WHEREFORE, Doyenne Constructors LLC respectfully prays that this Honorable Court order that the previously filed Amended Proof of Claims shall supplement the original claims, or in the alternative, to grant Doyenne leave to amend Claims 1102-1104, and that the amended claims are deemed be timely filed, and to grant such other relief as might be warranted by the law, equity or facts.

        **COHEN SEGLIAS PALLAS GREENHALL &**
                    **FURMAN PC**

*/S/ Bernard G. Conaway*
Bernard G. Conaway, Esquire (DE 2856)
The Nemours Building, Suite 1130
1007 North Orange Street
Wilmington, DE 19801
(302) 425-5089
Email: bconaway@cohenseglias.com

*Attorney for Doyenne Constructors LLC*

DATE: November 25, 2015
       Wilmington, DE