IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., et al., | ) ) ) | Case No. 14-10979 (CSS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | **Related D.I. 4964** |

# MEMORANDUM OPINION[1]

Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. (together with EFIH, the "EFIH Debtors") two of the above-captioned debtors and debtors in possession (the "Debtors") have filed the *EFIH Debtors' Partial Objection to Proof of Claim No. 6347 Filed by the Indenture Trustee for the EFIH Unsecured Notes* (the "PIK Claim Objection"). [2] The PIK Claim Objection objects to Claim No. 6347 (the "PIK Claim") filed by UMB Bank, N.A. ("UMB" or "Indenture Trustee"), as indenture trustee for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "PIK Notes" and such holders the "PIK Noteholders"), which seeks a minimum of approximately $1.57 billion in principal "plus interest, fees and other amounts arising in connection with the [PIK] Indenture."[3] Among other things, the PIK Claim seeks an amount related to "premiums,

---

[1] This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bank. P. 7052, which is applicable to this matter by virtue of Fed. R. Bankr. P. 9014. The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 11 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Court has the judicial power to enter a final order.

[2] D.I. 4964.

[3] The PIK Claim was filed in the amount of $1,647,374,288.21 plus interest, fees, expenses and other amounts "arising in connection with the [PIK] Indenture (see addendum)." PIK Claim (attached as Exh. 1 to the PIK Claim Objection). Based on the record in these proceedings it is the Court's understanding that there is

Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums"[4] (collectively, referred to herein as "make-whole premiums" or "premiums"), which is the subject of this Memorandum Opinion.

Through the PIK Claim Objection, the EFIH Debtors object to the portion of the PIK Claim that seeks: (i) payment of the "Applicable Premium" under section 3.07(a) or the Optional Redemption Price under section 3.07(d) of the PIK Indenture; and (ii) post-petition interest at the rate specified in the PIK Indenture. The Court will address the post-petition interest issues in a separate decision. This Memorandum Opinion solely relates to the premiums.

The issue before the Court is whether the language in the PIK Indenture (in bold below) gives rise to a claim for a premium upon automatic acceleration after an event of default.

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of **and premium, if any**, interest (including Additional Interest, if any) **and any other monetary obligations** on the outstanding Notes shall be due and payable immediately without further action or notice.

The Court recently addressed virtually identical language in relation to the First Lien Notes and found no payment was owed.

> When the EFIH Debtors filed for bankruptcy, the Notes automatically accelerated and became due and payable immediately. Under New York law, a borrower's repayment after acceleration is not considered voluntary. This is because acceleration moves the maturity date from the original

---

approximately $1.57 billion in principal, $81 million in pre-petition accrued interest and $109,000 in pre-petition accrued fees and expenses owed under the PIK Notes.

[4] PIK Claim, Addendum to the Proof of Claim of UMB Bank, N.A., as Indenture Trustee for the 11.25%/12.25% Senior Toggle Notes Due 2018 ("PIK Claim Addendum"), ¶ 4.

maturity date to the acceleration date and that date becomes the new maturity date. Prepayment can only occur prior to the maturity date, and acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity. Once the maturity date is accelerated to the present, it is no longer possible to prepay the debt before maturity. Acceleration therefore does not trigger the Trustee's right to prepayment consideration under the Optional Redemption provision. Thus, the Trustee's claim that the EFIH Debtors' repayment was an optional redemption must fail.[5]

The inclusion of the "premium, if any" and "other monetary obligations" language in the PIK Indenture, which was not present in the First Lien Indenture, does not change the analysis. Thus, the Court will sustain the portion of PIK Claim Objection relating to make-whole premiums.

## BACKGROUND

**A.   Prior Litigation Regarding the PIK Notes**

The EFIH Debtors initiated an adversary proceeding seeking declaratory judgment relating to the issues raised in the PIK Claim Objection. Thereafter, an Ad Hoc Committee of PIK Noteholders moved to dismiss the complaint as unripe. On June 15, 2015, the Court issued an opinion and entered an order dismissing the adversary proceeding as unripe and stating that "nothing in this Opinion limits the EFIH Debtors' ability to object to the PIK Claim or to seek to liquidate such claim."[6] The EFIH Debtors subsequently filed the PIK Claim Objection.

---

[5] *Delaware Trust Co. v. Energy Future Intermediate Holding Company LLC (In re Energy Future Holdings Corp.)*, 527 B.R. 178, 195 (Bankr. D. Del. 2015) (citations and quotations marks omitted). Capitalized terms not defined herein shall have the meaning ascribed to them in the Court's opinion.

[6] *Energy Future Intermediate Holding Co. LLC v. UMB Bank, N.A. (In re Energy Future Holdings Corp.)*, 531 B.R. 499, 515 (Bankr. D. Del. 2015).

3

B. **PIK Indenture**

On December 2, 2012, the EFIH Debtors, as issuers, and the PIK Trustee entered into an indenture (the "PIK Indenture", as amended and supplemented) pursuant to which EFIH issued $1,144,770,000 aggregate principal amount PIK Notes. EFIH subsequently issued an additional (i) $159,032,000 aggregate principal amount of PIK Notes under a First Supplemental Indenture dated as of December 19, 2012, (ii) $63,930,000 aggregate principal amount of PIK Notes under a Second Supplemental Indenture dated as of January 29, 2013, and (iii) $24,713,000 aggregate principal amount of PIK Notes under a Third Supplemental Indenture dated as of January 30, 2013.

Pursuant to section 12.08 of the PIK Indenture, the PIK Indenture and the PIK Notes are governed by, and construed in accordance with the laws of the State of New York.[7]

The PIK Notes provide for the payment of an "Applicable Premium" upon optional redemption before December 1, 2014. Section 3.07(a) of the PIK Indenture titled "Optional Redemption" states:

> [P]rior to December 1, 2014, the Issuer may redeem, in whole or in part, the Notes at a redemption price equal to 100% of the principal amount of the Notes redeemed plus the Applicable Premium as of, and accrued and unpaid interest (including Additional Interest, if any) to, the date of the redemption (the "Redemption Date"), subject to the right of the Holders of the Notes of record on the relevant Record Date to receive interest due on the relevant Interest Payment Date.

Section 1.1 of the PIK Indenture defines "Applicable Premium" as:

---

[7] PIK Indenture §12.08.

Case 14-10979-CSS   Doc 6791   Filed 10/30/15   Page 5 of 20

> "Applicable Premium" means, with respect to any Note on any Redemption Date, the greater of:
>
> 1.0% of the principal amount of such Note; and
>
> (2) the excess, if any, of (a) the present value at such Redemption Date of (i) the redemption price of such Note at December 1, 2014 (such redemption price as set forth in the table appearing under Section 3.07(d) hereof), plus (ii) all required interest payments (calculated based on the Cash Interest rate payable on the Notes) due on such Note through December 1, 2014 (excluding accrued and unpaid interest, if any, to the redemption Date), computed using a discount rate equal to the Treasury Rate as of such Redemption Date plus 50 basis points; over (b) the principal amount of such Note.

The PIK Notes also provide that after December 1, 2014, EFIH may voluntarily "redeem" the notes at certain "redemption prices" ("Optional Redemption Price"). Thus if the PIK Notes are redeemed after December 31, 2014 but before maturity, the EFIH Debtors would repay the principal plus an additional pre-payment/make-whole payment.

EFIH has not repaid the PIK Notes. However, the proposed plan before the Court provides that each holder of general unsecured claims against the EFIH Debtors, which includes the PIK Noteholders, will receive "up to the Allowed amount of its Claim, payment in full in Cash or other treatment rendering such Claim unimpaired."

Section 6.01(a) of the PIK Indenture defines "Event of Default" and includes at subsections (6) and (7) certain definitions of an Event of Default that relate to insolvency and bankruptcy, including the filing of a bankruptcy petition (which the Debtors voluntarily filed on April 29, 2014). Section 6.02 of the PIK Indenture defines "Acceleration" and, as noted above, specifies (emphasis added):

5

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of **and premium, if any**, interest (including Additional Interest, if any) **and any other monetary obligations** on the outstanding Notes shall be due and payable immediately without further action or notice.

The PIK Trustee highlights that these bolded phrases are not in the First Lien Indenture. Thus, the PIK Trustee asserts that this Court's prior holding is not applicable to the PIK Noteholders' claim for make-whole premiums and the PIK Claim seeks payment of the Applicable Premium and/or the Optional Redemption Price after acceleration.

## ANALYSIS

### A.   Claims Objection and Burden of Proof

Section 502(b) of the Bankruptcy Code states that the Court shall allow a claim, except to the extent "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured. . . . "

The burden of proof rests on different parties at different stages of the claim objection process:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "*prima facie*" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case. In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If

6

> the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant.[8]

As the EFIH Debtors have rebutted the *prima facie* validity of the PIK Claim, the PIK Trustee must now prove the validity of the PIK Claim by a preponderance of the evidence.

**B.      Parties' Argument**

   *i.      The EFIH Debtors*

The PIK Claim seeks payment of "premiums, the Applicable Premium, pre-payment penalties, make-whole premiums, [and] call premiums."[9] This language seeks the Applicable Premium due upon an optional redemption before December 1, 2014, under section 3.07(a) of the PIK Indenture, and/or seeks the Optional Redemption Price based on an optional redemption after December 1, 2014, under section 3.07(c) of the PIK Indenture.[10]

The EFIH Debtors assert that they do not owe an Applicable Premium because an Applicable Premium is *only* owed if the PIK Notes are optionally redeemed before December 1, 2014. As December 1, 2014, has passed and the PIK Notes have not been repaid in any way, the EFIH Debtors assert that the Applicable Premium cannot be owed. The EFIH Debtors also argue that separate and apart from the expiration of the December

---

[8] *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).

[9] PIK Claim Addendum ¶ 4.

[10] The PIK Indenture provides for other types of premiums; however, these premiums are not at issue for the purposes of this Memorandum Opinion. *See, e.g.,* PIK Indenture §§ 2.06(h)(i)(vi), 4.10(b)(4)(f), 5.02, 12.01, and 12.02.

7

1, 2014 deadline, neither the Applicable Premium nor the Optional Redemption Price is owed because the repayment of the PIK Notes will not be an optional redemption.

The PIK Indenture provides that an "Event of Default" occurs when EFIH "commenc[es] proceedings to be adjudicated bankruptcy or insolvent."[11] The EFIH Debtors filed for chapter 11 protection on April 29, 2014, triggering this Event of Default. The EFIH Debtors assert that, under the plain language of the Indenture, the bankruptcy-induced Event of Default automatically accelerated the PIK Notes' maturity date to the Petition Date. The PIK Indenture provides, "in the case of an Event of Default arising" out of EFIH's bankruptcy filing, "all principal of and premium, if any, interest (including Additional Interest, if any) and any other monetary obligations on the outstanding Notes *shall be due and payable immediately without further action or notice*."[12]

The EFIH Debtors argue that in order to optionally redeem the debt, they must provide the PIK Noteholders with "at least 30 days but not more than 60 days" notice[13] (The EFIH Debtors have not delivered an optional redemption notice to the PIK Trustee). The EFIH Debtors compare this to the automatic acceleration which does not contemplate notice: upon EFIH's bankruptcy filing, "the outstanding Notes shall be due and payable immediately without further action or notice."[14]

---

[11] PIK Indenture § 6.01(a)(6)(i).

[12] PIK Indenture § 6.02 (emphasis added).

[13] PIK Indenture § 3.03.

[14] PIK Indenture §6.02.

8

Case 14-10979-CSS    Doc 6791    Filed 10/30/15    Page 9 of 20

The EFIH Debtors argue that the language differences between the First Lien Indenture and the PIK Indenture do not give rise to a valid claim for an Applicable Premium or an Optional Redemption Price after acceleration.

### ii. *The PIK Trustee*

The PIK Trustee argues that the deliberate insertion of "and premium, if any" immediately following "principal" and before "interest" indicated that such language is not surplusage, but a reference to an adjustment to the principal amount. The PIK Trustee continues that "premium, if any" read together with "any other monetary obligations" must refer to something more specific and could only logically refer to the premiums set forth in section 3.07 of the PIK Indenture. The PIK Trustee also asserts that by using the phrase "premium, if any" rather than the narrower term of "Applicable Premium," the PIK Indenture captures the multiple premiums that could be owed, depending on the time of repayment. Further, the PIK Trustee asserts that "premium, if any" refers to *all* of the premiums in the PIK Indenture. The PIK Trustee continues that the "if any" qualifier contemplates all situations, such as filing for bankruptcy because of the looming maturity date and repayment after the maturity date. The PIK Trustee also asserts that the phrases "premium, if any," as well as, "other monetary obligations" are "catch all" provisions that refer to the applicability of the call premium except when payments are made after the maturity date. Finally, the PIK Trustee attempts to introduce parole evidence that demonstrates (in the PIK Trustee's opinion) that the PIK Indenture

9

(including the differences from the First Lien Indenture) was specifically bargained for to provide different legal entitlements upon acceleration from the First Lien Indenture.

C.     **Contract Interpretation Under New York Law**

In construing a contract under New York law, the Court should look to the language of the contract because "when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."[15] "Where the contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence."[16] Thus, if unambiguous, the contract must be enforced according to its plain terms.[17]

A contract is ambiguous if the terms have more than one meaning "when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business."[18] In instances when the contract is susceptible to more than one meaning the Court may look to parole evidence.[19]

---

[15] *D'Addario & Co. v. Embassy Indus., Inc.*, 980 N.E.2d 940, 943 (2012) (citations and internal quotation marked omitted).

[16] *British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 342 F.3d 78, 82 (2d Cir. 2003) (citations, modifications and internal quotation marks omitted).

[17] *In re MPM Silicones, LLC*, No. 14-22503-RDD, 2014 WL 4436335, at *3 (Bankr. S.D.N.Y. Sept. 9, 2014) *aff'd*, 531 B.R. 321 (S.D.N.Y. 2015) (hereinafter, "*Momentive*").

[18] *British Int'l Ins. Co.*, 342 F.3d at 82 (citations and internal quotation marks omitted); *Evans v. Famous Music Corp.*, 807 N.E.2d 869, 872 (N.Y. 2004).

[19] *Momentive* at *3.

10

"It is also fundamental that every word of the agreement should, to the extent possible, be given a meaning, or, in other words, one of the most basic interpretive canons is that a contract should be construed so that effect is given to all of its provisions and no part will be inoperative or superfluous or of no significance."[20]

The PIK Indenture is unambiguous; therefore, the Court will not consider extrinsic evidence.

### D.   Make-Whole and Prepayment Premiums

As a general rule regarding make-whole or prepayment premiums, "a lender is not entitled to prepayment consideration after a default unless the parties' agreement expressly requires it.  This is because prepayment provisions generally address the consideration to be paid when the borrower voluntarily prepays the debt, but after a default the borrower's repayment is neither voluntary nor in the nature of a prepayment."[21]  However, parties may agree that "even after default and acceleration, or where the borrower's prepayment is otherwise involuntary, an amount that is equivalent

---

[20] *Id.*

[21] *In re S. Side House, LLC*, 451 B.R. 248, 268 (Bankr. E.D.N.Y. 2011) *aff'd sub nom. U.S. Bank Nat. Ass'n v. S. Side House, LLC*, No. 11-CV-4135 ARR, 2012 WL 273119 (E.D.N.Y. Jan. 30, 2012) (citations omitted). *See also Energy Future Holdings Corp.*, 527 B.R. at 192 ("Under New York law, an indenture must contain express language requiring payment of a prepayment premium upon acceleration; otherwise, it is not owed."); and *MSCI 2007-IQ16 Retail 9654, LLC v. Dragul*, No. 1:14-CV-287, 2015 WL 1468435, at *3 (S.D. Ohio Mar. 30, 2015) ("Upon default and the acceleration of the loan, the maturity date advances and any subsequent payment is no longer considered a voluntary prepayment.  The lender forfeits the collection of a prepayment premium in such a scenario unless the parties' agreement contains a 'clear and unambiguous' clause requiring payment of the prepayment premium upon default and acceleration.  This general rule created the problem that a borrower might actually intentionally default to acquire the right to prepay without penalty, so lenders began including provisions in loan documents to ensure the prepayment penalty would be enforceable after default.") (citations omitted)).

to prepayment consideration may nevertheless be due."[22]  However, the parties' agreement *must* be express and the terms of their agreement *must* define the parameters of the borrower's obligation to make a make-whole or prepayment premium in the event of default and/or acceleration.[23]  If the language is explicit,

> [c]ourts review prepayment consideration terms that are triggered by default and acceleration under the standards applicable to liquidated damages. That is, courts consider whether the amount due is an unenforceable penalty.[24]

As the Second Circuit has explained, a prepayment premium is enforceable "where (1) actual damages may be difficult to determine and (2) the sum stipulated is not 'plainly disproportionate' to the possible loss."[25]

### E. Neither an Applicable Premium Nor an Optional Redemption Price is Due Under the Terms of the PIK Indenture.

Pursuant to the terms of the PIK Indenture, the Court must determine whether an Applicable Premium or an Optional Redemption Price is due.  As noted above, the Applicable Premium is only due upon optional redemption before December 1, 2014.  As the PIK Notes were not redeemed prior to December 1, 2014, the PIK Notes are not entitled to an Applicable Premium.

---

[22] *S. Side House*, 451 B.R. at 269 (citations omitted).

[23] *Id.* at 270.

[24] *Id.* (holding mortgage lender's claim for a post-default, post-acceleration prepayment premium, pursuant to "escape" clause in mortgage documents that prohibited debtor from evading prepayment fee by tendering full amount of debt post-foreclosure, had to be disallowed; because the debtor, in proposing to pay mortgage debt over time in plan of reorganization, was not tendering full amount of debt, and was not attempting to prepay this accelerated debt.).

[25] *United Merchants and Mfrs., Inc. v. Equitable Life Assurance Society of the US (In re United Merchants & Mfrs., Inc.)*, 674 F.2d 134, 142 (2d Cir. 1982).

12

The PIK Indenture provides for an Optional Redemption Price (also referred to herein as a "prepayment premium" or a "make-whole premium") if the PIK Notes are redeemed after December 1, 2014, but prior to the maturity date.[26]  As the PIK Notes were automatically accelerated as a result of the EFIH Debtors' bankruptcy filings, repayment of the PIK Notes will not be an optional redemption.  As this Court stated in relation to the First Lien Notes, which is also applicable herein:

> When the EFIH Debtors filed for bankruptcy, the Notes automatically accelerated and became due and payable immediately.  Under New York law, a borrower's repayment after acceleration is not considered voluntary.  This is because acceleration moves the maturity date from the original maturity date to the acceleration date and that date becomes the new maturity date.  Prepayment can only occur prior to the maturity date, and acceleration, by definition, advances the maturity date of the debt so that payment thereafter is not prepayment but instead is payment made after maturity.  Once the maturity date is accelerated to the present, it is no longer possible to prepay the debt before maturity.  Acceleration therefore does not trigger the Trustee's right to prepayment consideration under the Optional Redemption provision.  Thus, the Trustee's claim that the EFIH Debtors' repayment was an optional redemption must fail.[27]

There is nothing in the PIK Indenture that would lead the Court to a different conclusion.  If the EFIH Debtors repay the PIK Notes, such repayment would not be "optional" as the PIK Notes were accelerated under the terms of section 6.02 of the PIK Indenture.  According to the terms of the PIK Indenture, neither the Applicable Premium nor the Optional Redemption Premium is due.  Thus, even if the Court found that the

---

[26] PIK Indenture § 3.07(d).

[27] *Energy Future Holdings Corp.*, 527 B.R. at 195 (citations and quotations marks omitted).

13

language "if any" (as discussed *infra*) refers back to sections 3.07(a) and 3.07(d) of the PIK Indenture, there would be no premium due pursuant to the terms of the PIK Indenture.[28]

### F.    PIK Indenture Language: "Premium, If Any"

As stated above, neither the Applicable Premium nor the Optional Redemption Price have been triggered under the terms of the PIK Indenture.  However, the PIK Trustee asserts that language in the acceleration provision provides for payment of a make-whole premium (in addition to principal, interest, etc.) upon automatic acceleration.  The PIK Trustee asserts that the acceleration clause language in the PIK Indenture differs from the First Lien Indenture – and these additional 9 words create the obligation to pay the make-whole upon acceleration.  As compared to the acceleration clause in the First Lien Indenture, the PIK Indenture states, in part (differing language is bolded):

> [I]n the case of an Event of Default arising under clause (6) or (7) of Section 6.01(a) hereof, all principal of ***and premium, if any***, interest (including Additional Interest, if any) ***and any other monetary obligations*** on the outstanding Notes shall be due and payable immediately without further action or notice.[29]

Thus, the Court must determine whether these additional 9 words create the obligation to pay a make-whole premium after acceleration.

---

[28] *See Momentive* at *15.

[29] PIK Indenture § 6.02 (emphasis added).

14

The Bankruptcy Court for the Southern District of New York examined virtually identical language in *Momentive*.[30] The language in the Momentive's indenture was as follows: "'If an Event of Default specified in Section 6.01(f) or (g) with respect to MPM [which includes the debtors' bankruptcy] occurs, the principal of, premium, if any, and interest on all the Notes shall ipso facto become and be immediately due and payable without any declaration or other act on the part of the Trustee or any Holders.'"[31] In *Momentive*, Judge Drain held:

> [I]t is "well-settled law," that, unless the parties have clearly and specifically provided for payment of a make-whole (in this case the Applicable Premium), notwithstanding the acceleration or advancement of the original maturity date of the notes, a make-whole will not be owed. Such language is lacking in the relevant sections of the first and 1.5 lien indentures and notes; therefore, they do not create a claim for Applicable Premium following the automatic acceleration of the debt pursuant to Section 6.02 of the indentures.[32]

Thus, the *Momentive* court held that the "premium, if any" to be paid upon prepayment was not specific enough to meet the specificity requirement of New York law in order for the make-whole or prepayment claim to be payable post-acceleration.[33] Judge Drain continued to state that even if the "if any" language referred back to the actual provisions of the indenture that provides for a specific premium, those premium provisions do not sufficiently provide for payment after acceleration under New York law.[34]

---

[30] 2014 WL 4436335, *supra*.

[31] *Id.* at *13.

[32] *Id.* at *14 (citations omitted).

[33] *Id.* at *15.

[34] *Id.*

15

The *Momentive* court stated that there are only two ways to receive a make-whole upon acceleration under New York law: (i) explicit recognition that the make-whole would be payable notwithstanding the acceleration, or (ii) a provision that requires the borrower to pay a make-whole whenever debt is repaid prior to the *original* maturity.[35] As discussed *infra*, the relevant language in this case is identical to that in *Momentive* and does not explicitly provide for payment of the premiums notwithstanding acceleration nor does it provide for payment of the make-whole any time prior to the original due date.

The District Court for the Southern District of New York affirmed the bankruptcy court's holding in *Momentive* holding that the language "premium, if any" was not sufficient to create an "unambiguous right to a make-whole payment."[36] This Court fully endorses and adopts the holding in the *Momentive* cases.

The PIK Trustee attempts to distinguish *Momentive* because Judge Drain likened "if any" to other belt-and-suspenders catch-all provisions in other New York cases, where the role of "catch-all" in the PIK Indenture is played by the "and any other monetary obligations" provision – thus, according to the PIK Trustee, the phrase "premium, if any" in this case refers to the applicability of the call premium for payments made after the maturity date. This distinction fails for several reasons: (i) the PIK Indenture is not

---

[35] *Id.*

[36] *U.S Bank N.A. v. Wilmington Savings Fund Society (In re MPM Silicones, LLC)*, 531 B.R. 321, 336 (S.D.N.Y. 2015).

16

specific or explicit about the payment of any premium upon automatic acceleration;[37] and (ii) "if any" means that the premium may not be due at all.

The PIK Trustee also advances the argument that "premium, if any" must be "specific" because the Indenture would not contain two "catch all" provisions. However, legal documents such as the PIK Indenture often contain redundant language and "mere redundancy of words is not so unusual as to justify the court in giving an interpretation to the contract which its words do not import."[38]

In another example similar to *Momentive*, in *In re Solutia Inc.*, the bankruptcy court found the language of "premium, if any" insufficient and lacking in "explicitness that would be expected in a typical post-acceleration yield-maintenance clause."[39] Similarly, in *In re AMR Corp.*, the bankruptcy court held that it "reads 'if any' to mean that payment of the Make–Whole Amount is not automatic and there are some circumstances under which a Make–Whole Amount will not be payable."[40]

These cases should be compared to *Northwestern Mutual* and *United Merchants*, wherein the courts held that the contractual language was explicit. In *Northwestern Mutual Life Ins. Co. v. Uniondale Realty Associates*, the court reviewed the following language in the loan agreement (referred to below as the "Note"):

---

[37] As set forth in note 10, *supra*, there are many different premiums discussed in the PIK Indenture.

[38] *Casler v. Connecticut Mut. Life Ins. Co.*, 22 N.Y. 427, 432 (1860).

[39] *In re Solutia Inc.*, 379 B.R. 473, 488 (Bankr. S.D.N.Y. 2007).

[40] *U.S. Bank Trust N.A. v. American Airlines, Inc. (In re AMR Corp.)*, 485 B.R. 279, 303 (Bankr. S.D.N.Y.) *aff'd*, 730 F.3d 88 (2d Cir. 2013) *cert. denied sub nom. U.S. Bank Trust Nat. Ass'n v. AMR Corp.*, 134 S. Ct. 1888, 188 L. Ed. 2d 913 (2014).

17

> "Borrower shall have the right, upon thirty (30) days advance written notice, beginning December 15, 2003 of paying this note in full with a *prepayment fee*. This fee represents consideration to Lender for loss of yield and reinvestment costs. The fee shall be the greater of *Yield Maintenance* or 2% of the outstanding principal balance of this note on the date of prepayment. In the event of a prepayment of this note following (i) the occurrence of an Event of Default . . . followed by the acceleration of the whole indebtedness evidenced by this note . . . such prepayment will constitute an evasion of the prepayment terms . . . and be deemed to be a voluntary prepayment . . . and such payment will, therefore, . . . include the prepayment fee required under the prepayment in full privilege recited above . . ."[41]

The *Northwestern Mutual* court held: "When a clear and unambiguous clause which calls for payment of the prepayment premium or a sum equal thereto, at any time after default and acceleration is included in the loan agreement, such clause is analyzed as liquidated damages and is generally enforceable."[42] The *Northwestern Mutual* court found that the critical language in the subject clause is "in the event of prepayment" and "evasion."[43]

The *Northwestern Mutual* court held:

> the subject clause eliminates the need to prove that prepayment after acceleration is an intentional avoidance of the premium, as prepayment after acceleration is "deemed" voluntary and an avoidance. *The clause does not, however, contain language indicating prepayment application in foreclosure, redemption or any other payment.* If the word "prepayment" in the subject clause was intended to include "redemption" in the context of foreclosure, it would be expressly included, as was done in the aforementioned examples.[44]

---

[41] *Nw. Mut. Life Ins. Co. v. Uniondale Realty Associates*, 816 N.Y.S.2d 831, 833-34 (Sup. Ct. 2006) (*quoting* the Note at issue in the case; emphasis supplied in Note).

[42] *Id.* at 836 (citations omitted).

[43] *Id.* at 839.

[44] *Id.* (emphasis added).

18

Thus, the court ultimately found that the prepayment premium was only relevant after an attempt at prepayment after a default and acceleration but prior to commencement of a foreclosure action; thus in *Northwestern Mutual*, as it was a foreclosure action, the prepayment premium was not recoverable.[45] Thus, even though the language in *Northwestern Mutual* was more specific than the PIK Indenture language, the *Northwestern Mutual* court ultimately held that the language lack specificity in a foreclosure context and, therefore, did not allow the premium.

Similarly, in *In re United Merchants and Manufacturers, Inc.*, the default provision in the note at issue stated:

> then, at the option of the holder of any Note, exercised by written notice to (UM&M), the principal of such Note shall forthwith become due and payable, together with the interest accrued thereon, and, to the extent permitted by law, an *amount equal to the pre-payment charge that would be payable if (UM&M) were pre-paying such Note at the time pursuant to P 8.2 hereof*.[46]

The Second Circuit held that this liquidated damages provision in the agreement was valid under New York law as it was a loan agreement between sophisticated parties for a large sum of money and the amount stipulated was "not plainly disproportionate to the possible loss."[47] Again, however, as distinguished from this case, the contractual language was specific regarding the amount of the pre-payment charge and specifically referring to the calculation thereof in the note. Here, the PIK Indenture states "premium,

---

[45] *Id.* at 839-40.

[46] *United Merchants and Mfrs*, 674 F.2d at 140 (emphasis added; footnote and citations omitted).

[47] *Id.* at 143 (internal quotation marked omitted).

19

Case 14-10979-CSS    Doc 7459-2    Filed 01/27/15    Page 20 of 20

if any" without any additional language referring to the amount of such premium or what type of premium being sought.

The PIK Indenture does not provide specifically for a payment of a premium upon acceleration, nor does it refer back to specific sections of the Indenture. As such, and for the reasons set forth in *Momentive*, the Court finds that the PIK Indenture's acceleration clause is unambiguous, insufficient and lacking in explicitness regarding whether a make-whole premium is due upon an event of default. Thus, after acceleration, the PIK Trustee does not have a valid claim for either an Applicable Premium nor an Optional Redemption Price.

## CONCLUSION

Thus, as stated above, the Court will sustain the Partial Objection and disallow the portion of the PIK Claim seeking an amount for "premiums, Applicable Premium, pre-payment penalties, make-whole premiums, [and/or] call premiums."[48] An order will be entered.

BY THE COURT:

_____
Christopher S. Sontchi
United States Bankruptcy Court

Dated: October 30, 2015

---

[48] PIK Claim Addendum ¶ 4.