Page 1

1    UNITED STATES BANKRUPTCY COURT

     DISTRICT OF DELAWARE

2

3    In re:                    :

                               :     Chapter 11

4    ENERGY FUTURE HOLDINGS    :

     CORP., et al.,      :     :     Case No. 14-10979(CSS)

5                               :

           Debtors.      :     (Jointly Administered)

6    _____:

7

8

9

10                             United States Bankruptcy Court

11                             824 North Market Street

12                             Wilmington, Delaware

13                             November 25, 2015

14                             10:06 AM - 11:18 AM

15

16

17

18

19

20

21   B E F O R E :

22   HON CHRISTOPHER S. SONTCHI

23   U.S. BANKRUPTCY JUDGE

24

25   ECRO OPERATOR:  BRANDON MCCARTHY

1   HEARING re Settlement Of Certain EFIH PIK Noteholder Claims

2   And Authorizing Debtors To Enter Into And Perform Under

3   Stipulations. (related document(s)[6918]) Signed on

4   11/25/2015. (Attachments: # (1) Exhibit 1 through 4) (JAF)

5

6   HEARING re Settlement Among Debtors, EFH Committee, EFH

7   Notes Trustee, And Certain Other Parties.

8

9   HEARING re Settlement Of Certain EFIH PIK Noteholder Claims

10   And Authorizing Debtors To Enter Into And Perform Under

11   Stipulations.

12

13   HEARING re Settlement Of Claims Held By Fidelity And

14   Authorizing Debtors To Enter Into And Perform Under

15   Stipulation.

16

17   HEARING re Approving Settlement Of Certain EFIH PIK

18   Noteholder Claims And Authorizing Debtors To Enter Into And

19   Perform Under Stipulations.

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

```
 1    A P P E A R A N C E S :

 2

 3    ASHBY & GEDDES PA

 4        Attorney for WSFS Second Lien Indenture Trustee

 5

 6    BY:  WILLIAM BOWDEN

 7

 8    CROSS & SIMON

 9        Attorneys for American Stock Transfer

10

11    BY:  KEVIN MANN

12

13    FOLEY & LARDNER LLP

14        Attorney for UMB Bank, NA as Indenture Trustee

15

16    BY:  HAROLD L. KAPLAN

17

18    FOX ROTHSCHILD LLP

19        Attorney for Counsel to Ad Hoc Group of TCEH Unsecured

20        Noteholders

21

22    BY:  L. JOHN BIRD

23

24

25
```

```
 1   FOX ROTHSCHILD LLP

 2        Attorney to Ad Hoc Committee of EFIH Unsecured

 3        Noteholders and EFIH Second Lien DIP Commitment

 4

 5   BY:  JEFFREY M. SCHLERF

 6

 7   FRIED FRANK

 8        Attorneys for Fidelity

 9

10   BY:  GARY L. KAPLAN

11

12   HOGAN MCDANIEL

13        Attorneys for Fenicle & Fahy

14

15   BY:  DANIEL K HOGAN

16

17   HOGAN MCDANIEL

18        Attorneys for Contrarian Capital Management

19

20   BY:  GARVAN MCDANIEL

21

22   KAYE SCHOLER

23        Attorney for York Capital

24

25   BY:  SCOTT TALMADGE
```

1   KIRKLAND & ELLIS LLP

2         Co-Counsel to the Debtors

3

4   BY:  MARK E. MCKANE

5         CHAD J. HUSNICK

6         MARC KIESELSTEIN

7

8   KLEHR HARRISON HARVEY BRANZBURG LLP

9         Counsel to UMB Bank N.A. Indenture Trustee

10

11  BY:  RAYMOND H. LEMISCH

12

13  KRAMER LEVIN

14        Second Lien Indenture Trustee

15

16  BY:  RACHAEL L. RINGER

17

18  MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP

19        Co-Counsel to the TCEH Debtors

20

21  BY:  DAVID H. PRIMACK

22

23

24

25

Page 6

1    MONTGOMERY, MCCRACKEN, WALKER & RHOADS

2         Co-Counsel to the EFH Creditors' Committee

3

4    BY:  MARK B. SHEPPARD

5

6    MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP

7         Co-Counsel to the EFH Creditors' Committee

8

9    BY:  MARK A. FINK

10

11   MORRIS JAMES LLP

12        Attorney for Law Debenture of New York, Indenture

13        Trustee

14

15   BY:  STEPHEN M. MILLER

16

17   MORRIS NICHOLS ARSHT & TUNNELL LLP

18        Attorneys for Equity Sponsors

19

20   BY:  ANDREW REMMING

21

22

23

24

25

1    NIXON PEABODY LLP

2         Attorneys for AST as EFH Indenture Trustee

3

4    BY:  MORGAN C. NIGHAN

5         RICHARD C. PEDONE

6

7    O'KELLY, ERNST & BIELLI LLP

8         Co-Counsel to Energy Future Holdings Corp.

9

10   BY:  DAVID M. KLAUDER

11

12   PACHULSKI STANG ZIEL & JONES

13        Attorney for Second Lien Indenture Trustee

14

15   BY:  LAURA DAVIS JONES

16

17   PATTERSON BELKNAP

18        Attorney for Law Debenture of New York, Indenture

19        Trustee

20

21   BY:  DANIEL A. LOWENTHAL

22

23

24

25

1    PAUL WEISS RIFKIND WHARTON & GARRISON LLP

2         Counsel to Ad Hoc Committee of TCEH First Lien

3         Creditors

4

5    BY:  JACOB A. ADLERSTEIN

6

7    PAUL WEISS RIFKIND WHARTON & GARRISON LLP

8         Counsel to Ad Hoc Committee of TCEH First Liens

9

10   BY:  BRIAN HERMANN

11

12   POTTER ANDERSON & CORROON LLP

13        Attorney for Deutsche Bank New York

14

15   BY:  R. STEPHEN MCNEILL

16

17   RICHARDS, LAYTON & FINGER, P.A.

18        Co-Counsel to the Debtors

19

20   BY:  DANIEL DEFRANCHESCHI

21

22   RICHARDS, LAYTON & FINGER, P.A.

23        Co-Counsel to the Debtors

24

25   BY:  JASON M. MADRON

1    SEWARD & KISSEL

2         Wilmington Trust as Successor of First Lien

3         Administrative Agent and Collateral Agent

4

5    BY:  MARK D. KOTWICK

6

7    SEWARD & KISSEL LLP

8         Attorney to Wilmington Trust NA-First Lien Agent

9

10   BY:  ARLENE R. ALVES

11

12   SULLIVAN & CROMWELL, LLP

13        Co-Counsel to the EFH Creditors' Committee

14

15   BY:  ANDREW G. DIETDERICH

16

17   SULLIVAN & CROMWELL, LLP

18        Co-Counsel to the EFH Creditors' Committee

19

20   BY:  BRIAN D. GLUECKSTEIN

21

22   U.S. DEPARTMENT OF JUSTICE

23        U.S. Trustee

24

25   BY:  RICHARD L. SCHEPACARTER

1   VENABLE LLP

2        Attorney for PIMCO

3

4   BY:  JAMIE L. EDMONSON

5

6   WACHTELL, LIPTON, ROSEN & KATZ

7        Attorneys for Equity Sponsors

8

9   BY:  EMIL A. KLEINHAUS

10

11  WHITE & CASE LLP

12       Attorney to Ad Hoc Committee of EFIH Unsecured

13       Noteholders and EFIH Second Lien DIP Commitment

14

15  BY:  THOMAS LAURIA

16       J. CHRISTOPHER SHORE

17

18  YOUNG CONAWAY STARGATT & TAYLOR, LLP

19       Counsel to Ad Hoc Group of TCEH Unsecured Noteholders

20

21  BY:  PAULINE K. MORGAN

22

23  APPEARING TELEPHONICALLY:

24  SCOTT L. ALBERINO

25  ABID QURESHI

```
 1   HOWARD A. COHEN
 2   ROBERT K. MALONE
 3   MARK F. HEBBEIN
 4   MATTHEW M. ROOSE
 5   DANIEL FLIMAN
 6   BENJHAMIN D. FEDER
 7   BRANDON ROGERS
 8   APARNA YENAMANDRA
 9   NATALIE D. RAMSEY
10   CHRISTOPHER L. CARTER
11   TODD M. GOREN
12   SETH GOLDMAN
13   THOMAS B. WALPER
14   MARY D. CLULLO
15   ASHLEY F. BARTRAM
16   BRIAN P. GUINEY
17   MARK K. THOMAS
18   PETER J. YOUNG
19   LAUREN BITZIN
20   NED S. SCHODEK
21   ANDREA B. SCHWARTZ
22   JEFFREY S. SABIN
23   ALEXANDER B. LEES
24   PHILIP D. ANKER
25   NII-AMAR AMAMOO
```

1   PEG A. BRICKLEY

2   MABEL BROWN

3   MARK A. CODY

4   KENT COLLIER

5   LOUIS A. CURCIO

6   ALEXANDER DEFELICE

7   ADAM M. DENHOFF

8   STACEY DORÉ

9   BARRY FELDER

10  MARK FLANNAGAN

11  MEGGIE GILSTRAP

12  RICHARD GITLIN

13  MARK W. HANCOCK

14  ANGELA K. HERRING

15  PATRICK HOLOHAN

16  NATASHA HWANGPO

17  MATTHEW W. KINSKEY

18  SETH KLEINMAN

19  TRACY KLESTADT

20  STUART KOVENSKY

21  ARI D. KUNOFSKY

22  PHILIP G. LAROCHE

23  RICHARD G. MASON

24  BRIAN P. MORGAN

25  HAL F. MORRIS

1    TINA MOSS

2    LARS A PETERSON

3    MEREDITH PFISTER

4    ELIZABETH RASSKAZOVA

5    MARC B. ROITMAN

6    DAVID SALMONS

7    FREDRIC SOSNICK

8    RICHARD A. STEIGLITZ

9    AMER TIWANA

10   MATTHEW J. TROY

11   MATTHEW UNDERWOOD

12   KEVIN M. VAN DAM

13   BRADY C. WILLIAMSON

14   JULIA M. WINTERS

15   DAVID ZYLBERBERG

16

17

18

19

20

21

22

23

24

25

 1                      P R O C E E D I N G S

 2           THE COURT:  Give me just a moment.  You may

 3    proceed.

 4           MR. MCKANE:  Good morning, Your Honor, Mark McKane

 5    of Kirkland & Ellis on behalf of the debtors.

 6           Today, Your Honor, I believe the American Stock

 7    Transfer and Trust Company has a series of exhibits that

 8    they would like to introduce as they continue their case in

 9    chief.

10           THE COURT:  Okay.

11           MR. MCKANE:  And then I believe we may have an

12    evidentiary issue with regards to other clients who may have

13    some evidence that they may want to introduce as well that

14    I'm aware of.

15           THE COURT:  Okay.  All right.  Mr. - no?

16           MR. PEDONE:  Your Honor, Ms. Nijha will proffer.

17           THE COURT:  Okay.  Thank you, Mr. Pedone.

18           MR. PEDONE:  Thank you.

19           MS. NIJHA:  Good morning, Your Honor.  Morgan

20    Nijha of Nixon Peabody on behalf of American Stock Transfer,

21    EFH indentured trustee.

22           THE COURT:  Yes.

23           MS. NIJHA:  Today we'd like to move certain

24    exhibits into evidence and I have confirmed debtors counsel.

25    There's no objection to these exhibits except that I'll note

1    our proof of claim in the pleadings are being admitted only

2    for the fact that they were filed and not for the truth of

3    the matters asserted therein.

4            I've spoken with your clerk this morning and was

5    provided copies of our exhibits as well as our exhibit list.

6    I believe that you should have a copy there with you.  If

7    you don't, I have extras.

8            THE COURT:  Is this it?

9            MS. NIJHA:  Great.  So for the record, the

10   exhibits that we'd like to move into evidence are AST 1

11   through 12, AST 15 through 17, AST 19 through 22 and AST 24

12   through 37.

13           THE COURT:  Okay.  Any objection?

14           MR. MCKANE:  No, Your Honor.  With that

15   clarification as to the scope for the pleadings and proofs

16   of claim, we have no objection.

17           THE COURT:  All right.  They're admitted without

18   objection.

19           MS. NIJHA:  Thank you.

20           THE COURT:  And we have hard copies or electronic

21   copies, correct?

22           MS. NIJHA:  Yes, both.

23           THE COURT:  Very good.  Thank you.  Any other

24   evidence by any other party?  Mr. Hogan, good morning.

25           MR. HOGAN:  Good morning, Your Honor.  Daniel

1   Hogan on behalf of Fenicle & Fahy.  I apologize, Your Honor.

2   I was unable to make the pre-meeting.  I had attempted to

3   but I had a scheduling conflict.

4              THE COURT:  Very good.  Not a problem.

5              MR. HOGAN:  Your Honor, so I otherwise just to

6   enter -- to attempt to enter into evidence five SOFAs that

7   are already on the docket that I utilized in my cross

8   examination of Mr. Keglevic.  And those are Docket Entries

9   number 1237, which is the SOFA for EFH Corp, 1247, which is

10  EFH Corp Services Company, and then the four asbestos

11  debtors, as I refer to them, LS, LGST Gas company, which is

12  1272, EEC Holdings, which is 1250, EECI, which is 1269 and

13  then finally LSGT SACROC, Inc, which is 1276.

14             THE COURT:  Any objection?

15             MR. MCKANE:  Your Honor, the debtors have two

16  issues with this, specifically Thursday the 19th Your Honor

17  gave everyone a last and clear opportunity to move evidence

18  in other than EFH Committee and the indentured trustee.

19  This was the opportunity for everyone other than those two

20  entities to put in any evidence, not their last opportunity

21  to do it because they obviously had opportunities before

22  then and hearing none, I believe Your Honor closed the

23  record.

24             If Your Honor were to allow them to make an

25  application at this time, what we would ask is we recognize

1    the SOFA schedules.  Your Honor could take judicial notice

2    of their existence.

3          But, you know, they should not be viewed as an

4    admission by a party opponent in any way.  In other words,

5    they don't come into evidence but they're part of the record

6    that you can take judicial notice of just like any other

7    aspect of the docket and I believe that is consistent with

8    what we circulated to all of the parties in this case, that

9    the docket and the filings on the docket are part of the

10   record for these proceedings but they're not technically in

11   evidence, you know, as -- for consideration.

12          THE COURT:  All right.  Mr. Hogan?

13          MR. HOGAN:  Thank you, Your Honor.  First, to the

14   first point, which is, Your Honor, the way that this

15   confirmation schedule, the actual trial has been promulgated

16   and utilized by the court, we didn't have every witness.  I

17   only cross examined Mr. Keglevic.  I didn't cross examine

18   any other witnesses.

19          And so it was stop and go from our perspective.  I

20   wasn't at every hearing.  I couldn't -- my clients couldn't

21   afford to pay me to be at every hearing.  And so when I did

22   cross examine him, his cross examination, as I recall on the

23   second day of trial closed and then I believe they were

24   going to save it until the next day or the following day to

25   enter the evidence in from his examination and cross

1     examination.  And I was instructed not to attend that

2     hearing.  And so I missed that hearing.

3               But I don't believe that my client should be

4     prejudiced by the fact that I didn't attend every hearing,

5     especially given the way the schedule was set.

6               THE COURT:  Okay.

7               MR. HOGAN:  And so I would ask that that evidence

8     be entered in, please.

9               THE COURT:  Okay.  Can you address the issue about

10    judicial notice versus admission as evidence?

11              MR. HOGAN:  Again, Your Honor, of course you can

12    take judicial notice of it and I don't think that that's

13    going to suffice for the purposes that we would utilize

14    these documents for argument.

15              It's our position that we utilize those documents

16    for cross examination purposes, and as such -- and as well,

17    Your Honor, make note of the fact that they weren't only

18    utilized at cross examination here at trial but they're also

19    utilized on cross examination at the deposition of Mr.

20    Keglevic and they're exhibits to that deposition transcript

21    which I believe has also been entered in as an exhibit.

22              And so one way or another, Your Honor, I believe

23    they have to come in as evidence.

24              THE COURT:  Who signed them?  Do we know who

25    signed these scheduled and SOFAs?

1         MR. MCKANE:  Your Honor, that was Mr. Carter and

2    Mr. Carter obviously was a witness in the case following Mr.

3    Keglevic, so he was obviously -- they obviously could have

4    cross examined Mr. Carter as well.

5         Just a couple points, because I think Mr. Hogan is

6    actually helping kind of resolve the issue, the dep

7    designations for Mr. Keglevic, right, then they've

8    designated testimony from him as it relates to these issues.

9    They've cross examined him as it relates to these issues.

10   The transcript is part of the evidence as well.  So they've

11   got evidence in on these issues and Your Honor can take

12   judicial notice of the SOFAs themselves signed by Mr.

13   Carter.

14        And so we have -- they have a full ability to

15   argue from this.  I don't think they're prejudiced in any

16   way and, in fact, everyone has the ability to argue off of

17   the entire docket as it relates to the filings, just not

18   that they're part of the evidence.  So they're part of the

19   record but not part of the evidence.

20        THE COURT:  All right.  I'm going to allow the

21   late submission of evidence.  Given the personal -- the fact

22   that the -- Mr. Hogan's clients are regular people with

23   limited means and can't afford to participate as more fully

24   as some of the corporate represented entities can and I did

25   close the record last week.  However, I will make a -- with

1    exceptions noted on that record, I will make a limited

2    exception to allow the submission of the documents.

3              In addition, I believe it's appropriate to admit

4    them as evidence as they were not on the docket by the

5    debtors of course but actually signed and under penalty of

6    perjury by corporate representatives.  So I will overrule

7    the objection and will admit into evidence Dockets 1237,

8    1247, 1272, 1250, 1269 and 1276.

9              MR. HOGAN:  Thank you, Your Honor.

10             MR. MCKANE:  All right.  Your Honor, we will then

11   amend the materials that are in the record and submit those

12   at the start of the closing arguments when they're scheduled

13   so you have a full and complete record of what's in the

14   case.

15             THE COURT:  Okay.  Thank you.

16             MR. MCKANE:  Thank you.

17             THE COURT:  I'm sorry, before we move on, does

18   anyone else wish to be heard in connection with evidence?

19             MR. GLUECKSTEIN:  Your Honor, just very briefly.

20             THE COURT:  I was going to say, I'm going to mean

21   it this time when I close the record.

22             MR. GLUECKSTEIN:  Your Honor, this isn't to move

23   any new exhibits.  It's simply to substitute and place on

24   the record that we have agreed to substitute EUCC 453 with a

25   redacted version of that document, which is now EUCC 453R.

1    Thank you, sir.

2              THE COURT:  You're welcome.  All right, the record

3    is closed.  Mr. Husnick.

4              MR. HUSNICK:  Good morning, Your Honor.  Chad

5    Husnick from Kirkland & Ellis on behalf of the debtors.

6    Your Honor, I'd like to begin today just by apologizing to

7    the court, your staff and everyone in the room for my

8    failure to deliver the cancellation of today's hearing.

9    While I understand I did succeed in cancelling the omnibus

10   hearing, I think we're still here today on the day before

11   Thanksgiving, so I apologize for that.  But we do have a lot

12   -- I'm hopeful, a lot to be thankful for at the end of the

13   hearing.

14             Your Honor, we're here to discuss three

15   confirmation and disputed claims-related settlements.  Some

16   of these have been discussed on the record in the past and I

17   believe that EFH committee settlement has not been, so what

18   I would do if Your Honor wouldn't mind is I will go through

19   and summarize each of the three settlements, the principal

20   terms and then I'll zero in on a couple issues that I'd like

21   to build for the record.

22             THE COURT:  Can you move the microphones a little

23   closer?

24             MR. HUSNICK:  Sure.

25             THE COURT:  Thank you.

1              MR. HUSNICK:  Thank you.  So, Your Honor, I'll

2      begin with the EFIH PIK settlement.  Your Honor, the EFIH

3      PIK settlement you've heard quite a bit about in the past.

4      We initially caught a settlement with approximately 52% of

5      the EFIH PIK noteholders.  That was predominantly Avenue and

6      GSO.  The term of that settlement was a settlement of the

7      post-petition interest on the PIK notes and, in effect, was

8      roughly 60% of the recovery was in particularly 57.5% of PPI

9      -- that is post-petition interest -- and 2.5% consent fee,

10     which was basically payment on an additional 2.5% of the

11     post-petition interest.

12             Your Honor, this is a Plan A-only settlement, so

13     it would not be binding upon the debtors or upon the EFIH

14     PIK noteholders in the event that the settlement or that the

15     plan that's currently proposed were either not confirmed or

16     not consummated.

17             Your Honor, the PIK trustee since entering into

18     that settlement has accepted the direction.  The form of

19     that direction was of course filed on the docket and

20     ultimately the subject of significant negotiation with both

21     the EFIH PIK and indenture trustee, the majority noteholders

22     and what you're going to hear in a minute are ultimately the

23     subsequent PIK settling noteholders.

24             Your Honor, the original PIK settlement, as you

25     know, came out weeks in advance of Your Honor's ruling on

1   the post-petition interest issues.  The debtors continue to

2   negotiate with the non-settling PIK noteholders, both

3   informally and formally through a mediation with Judge Gross

4   and I'm happy to report that as a result of those settlement

5   negotiations and the significant back and forth between the

6   parties, the parties were able to reach a settlement with

7   another significant chunk of the non-settling, now settling,

8   PIK noteholders.  That chunk is roughly 40% plus bringing

9   the total of EFIH PIK noteholders supporting the settlement

10  either at $0.60 or at $0.40 to more than 90% of the PIK note

11  issuance.

12          As a result of that, Your Honor, we are standing

13  here today with no objections to either the PIK settlement

14  or the subsequent settlements I'm going to discuss from any

15  of the PIK noteholders or from any of the indentured

16  trustees.

17          Moving on to the Fidelity settlement -- Your

18  Honor, just quickly, that settlement is embodied in a single

19  order but has two stipulations attached to it.  The first

20  stipulation relates to the Avenue and GSO settlement and

21  then the second stipulation -- that's the $0.60 settlement.

22  The second stipulation relates to the remaining noteholders

23  who more recently signed up.  That's the 40% settlement.

24          The Fidelity settlement, Your Honor, we announced

25  on the record.  Mr. Lauria summarized the terms but I'll

1    briefly go back over the again.

2            The first elements of this settlement are what

3    I'll call Plan A elements and it mostly relates to claims

4    settlement -- I'm sorry, this is all a Plan A settlement

5    with Fidelity.  But the claims settlement, they're very

6    similar to the PIK settlement.

7            On this front, the EFH LBO notes that are held by

8    Fidelity will receive the same recovery on post-petition

9    interest that was provided to the initial settling holders

10   in the PIK note issuance.  The reason for that, as Mr.

11   Lauria laid out, is that the deal, a substantial deal and

12   principal had been reached prior to Your Honor's ruling on

13   the post-petition interest issues.  The EFH LBOs

14   notwithstanding, their nomenclature guaranteed by the EFIH

15   subsidiary and, therefore, much like the EFIH PIK notes in

16   terms of their entitlement to post-petition interest.

17           The second element, Your Honor, in terms of claim

18   treatment is resolution of the second lien notes and legacy

19   notes.  On this front, Your Honor, Fidelity has agreed for

20   its holdings of those two issuances to accept the treatment

21   that is provided for in the plan and that is there would be

22   no make whole premium paid and that interest, visa vie the

23   EFH legacy notes, will be at the federal judgment rate and

24   post-petition interest for the EFIH second lien notes, of

25   course, will be at the contract rate given its secured

1   stats.

2           Finally, Your Honor, there are two other elements.

3   The first is that Fidelity and the plan sponsors have agreed

4   that Fidelity will post a $500 million equity capital

5   commitment to support the closing of the merger transaction

6   that has ultimately underlined the plan.

7           And second, Fidelity will receive up to $12

8   million of reasonable and documented fees and expenses on

9   the plan effective date.  Just a brief note on that latter

10  point, Your Honor, and this carries forward for the EFH

11  committee settlement as well, that all fee issues, the

12  approval of professional fees to be paid to, in this

13  instance, the EFH indenture trustee and -- I'm sorry.  In

14  this instance it's Fidelity's advisors in the EFH committee

15  and indentured trustee settlement is going to be for the

16  indentured trustee's advisors.

17          But all fee issues are going to be -- or we're

18  going to ask that we punt those to the confirmation hearing

19  to be heard in connection with the US Trustee's objection to

20  the plan, should we be otherwise unable to resolve that

21  issue in advance of closing argument.

22          This is documented in the orders that we filed

23  with Your Honor last night as a reservation in the two

24  separate orders.

25          Your Honor, based on that, I believe we've

1    resolved the one objection -- or there were two objections

2    filed and I'll address each of them.  One was the US

3    Trustee's objection, which predominantly related to the fee

4    issue.  And as a result of adding that to the order, Your

5    Honor, I believe the US Trustee's objection to the Fidelity

6    settlement is resolved.

7         The second objection we received was from a fund

8    named Contrarian represented by the Kasowitz law firm.  The

9    parties continued to negotiate with Kasowitz law firm and

10   ultimately we were able to reach a deal with that additional

11   chunk of bonds, which I believe is approximately $30 million

12   of EFH legacy bonds.

13        The term of that settlement, which is embodied in

14   the order, is that the parties will support a payment of an

15   additional $1.25 million of additional post-petition

16   interest.  That is over and above the federal judgment rate

17   interest that's being paid on those bonds under the plan and

18   ultimately under the fidelity settlement.

19        That term, because it was a resolving objection to

20   the fidelity settlement is included within the settlement

21   stipulation or the settlement order approving the Fidelity

22   stipulation.  Based on that, Contrarian has agreed to

23   withdraw its objection and support entry of the Fidelity

24   order.

25        Your Honor, again, on that fee payment provision,

1    though, much -- it's very clear in the order that visa vie

2    the US Trustee's objection that will be heard, the actual

3    authority to pay an allowance or otherwise authorize the pay

4    will be heard in connection with confirmation.

5           Your Honor, that leads me to the third and final

6    settlement.  Your Honor, this is the EFH --

7           THE COURT:  Just back up a minute on the Fidelity

8    settlement.  Is -- never mind, I was thinking of something

9    else.  I'm sorry.  Go ahead.

10          MR. HUSNICK:  Okay.

11          THE COURT:  It's a lot to keep track of.

12          MR. HUSNICK:  Apologies, Your Honor, if I'm not

13   being clear.

14          THE COURT:  No, no.  You're fine.

15          MR. HUSNICK:  Your Honor, the third settlement is

16   the settlement with the EFH, EFIH and EECI creditors

17   committee and the EFH indentured trustee.

18          Your Honor, we were pleased to announce on Monday

19   a full -- go ahead.

20          THE COURT:  Can you mute the phone for me?  Is

21   that the phone that we're getting -- okay, thank you.

22          MR. HUSNICK:  Thank you.  Your Honor, we were

23   pleased to file on Monday in advance of noon, unfortunately

24   not Sunday in advance of noon which would allow me to

25   fulfill my promise to cancel the hearing, but we did file

1     after significant negotiations throughout the weekend and

2     from the beginning -- quite frankly, from the beginning of

3     the trial and even before the trial began with the EFH

4     committee and the EFH indentured trustee.

5             And I'm happy to report that as a result of all

6     those efforts, what's comprised in the settlement agreement

7     and what's set forth in the papers is a global resolution of

8     their objections to the plan as well as provisions for what

9     I'll call downside treatment in the unlikely event that Plan

10    A does not close.

11            Your Honor, the Plan A components, so the primary

12    components of this deal consist of a disputed claims

13    settlement in the first instance.  And, again, that is the

14    EFH indenture trustee and the EFH committee have agreed that

15    no make whole claims will be paid on account of the EFH

16    notes in Plan A, other than what has been settled.  But this

17    settlement does not bind the non-settling noteholders.

18    There is roughly 10% or so of holders who have not signed

19    up, because the numbers, now that we have Contrarian,

20    Fidelity, York, who holds bonds both at the EFIH PIK level

21    as well as the EFH legacy note level, we are close to 90% of

22    all bonds on the EFH legacy notes.  But the agreement there

23    is there will be no make wholes paid but the rights of the

24    non-settling holders to pursue such claims are preserved.

25            Your Honor, on the EFH unexchanged notes and the,

1    what I'll call small retail holders, those holders holding

2    less than $10 million of legacy notes or LBO notes -- those

3    are the EFH LBO notes -- the company and the plan sponsors

4    have agreed that there will be paid 100% of post-petition

5    interest at the contract rate on those notes and that's an

6    amount of notes, though, up to approximately $40 million.

7    And having worked with the indentured trustee and knowing

8    who's outstanding in the -- while we don't know the

9    individual holders because most of them are retail holders,

10   we know that those amounts generally under the $10 million

11   are going to be covered within that basket of $40 million

12   and that's the nature of that settlement.

13          Moving on, there will be no reinstatement of the

14   EFH legacy bonds at TCEH.  This is obviously an important

15   focal point for Phase 2 of the confirmation trial.  And as a

16   result of this settlement agreement, Phase 2 of that

17   confirmation trial would be unnecessary.

18          Finally, there will be an agreement to pay up to

19   $5.5 million of reasonable and documented fees and expenses

20   of the EFH trustee.  Any other fees and expenses, of course,

21   the indentured trustee could exercise its charging lien as

22   appropriate to recover those amounts.  But the $5.5 million

23   will be paid over and above the charging or the amounts

24   distributed to the EFH noteholders.

25          Again, that term, in particular approval and

1    authorization to make those payments, is going to be heard

2    in connection with confirmation.

3              Your Honor, that takes me to the second half of

4    the settlement with the committee, which is what I'll call

5    the Plan B or the unlikely alternative scenario.

6              In that alternative situation, what the settlement

7    provides for is limited subordination of the $700 million

8    intercompany claim that would be asserted by TCEH against

9    EFH should Your Honor approve the settlement agreement

10   that's being heard in connection with confirmation.  That is

11   the global intercompany settling agreement.

12             That limited subordination benefits a small bucket

13   of claims at EFH.  First, the EFH unsecured notes, these are

14   -- I'm sorry, the unexchanged notes, so these are a very

15   small set of notes that were not exchanged in prepetition

16   exchange offers to become EFIH noteholders.  Those are the

17   genesis of some of the EFIH debt.

18             What was left behind are predominantly retail bond

19   holders who are unable to participate in the exchange.

20   That's up to $5.8 million, which should include principal

21   plus accrued prepetition interest.

22             The second bucket of claims benefitting from the

23   subordination is the EFH non-qualified pension benefits.

24   Your Honor, here is approximately $30 million of claims will

25   benefit from the subordination in the event of a Plan B

1    scenario.

2            The third bucket, Your Honor, is up to $2 million

3    of general unsecured, in effect, trade claims that are

4    asserted against EFH and those claims would also benefit

5    from -- and that all claims in effect -- well, the goal here

6    was to capture all of the claims that actually fit into

7    these three buckets so no one's left behind on those three

8    buckets.

9            Your Honor, the benefit of the limited

10   subordination does require that as a class, whatever class

11   those claims are in, must vote in favor of the plan or

12   against the plan at the direction of the first lien lenders,

13   the TCEH first lien lenders largely as the beneficiary of

14   that $700 million intercompany claim should the Plan B

15   confirm.  So they will control that vote.  And if the class

16   votes in favor, those buckets of claims benefit from the

17   subordination and, in effect, get paid in full in advance of

18   any recovery on account of the $700 million.

19           Another piece of this is a bit of cost sharing for

20   facilitating the subordination and that is that the TCEH

21   cash payments, that is the $550 million that will be paid to

22   unsecured creditors should the settlement or should Plan A

23   not close, that cash distribution will be reduced by 25% of

24   each dollar that is subordinated at EFH.  So in effect,

25   there's a 25% cost sharing on the subordination.

1           Last but not least, the EFH committee has agreed

2    to take a highly limited role going forward in these cases.

3    This is an effort to try and control costs going forward in

4    a recognition that the predominant pieces of this settlement

5    were to provide alternative downside protection for the

6    stakeholders who are otherwise not represented by large

7    funds who are holding significant chunks of the debt.  And

8    the EFH committee of course will have the right as a

9    fiduciary to do what it needs to do but there's a

10   recognition that the roles should be diminished going

11   forward.

12           Your Honor, I think that sums up the three

13   settlements.  I did want to spend just a few moments, if I

14   may, talking about how the settlements came about and trying

15   to provide Your Honor with a bit of a record in terms of the

16   nature of these settlements and the importance of them to

17   the overall deal.

18           Your Honor, the parties here vigorously

19   represented their clients throughout the Chapter 11 cases

20   but most importantly and most specifically in connection

21   with the confirmation hearing that began on November or

22   December -- no, November 3rd.  We're not in December yet,

23   Chad.

24           The parties obviously put on significant efforts

25   both in terms of their briefing.  Those efforts also began

1    many months before in connection with the litigation

2    regarding post-petition interest, make wholes and other

3    issues in these Chapter 11 cases.

4            Ultimately, what we've reached here was the result

5    of lengthy, arms-length negotiations of in-court, in terms

6    of standing out in the hall and maybe running in and out of

7    court.  And out of court we had a judicial mediation in

8    particular on the EFIH PIK post-petition interest issues.

9    We also did discuss make wholes at some point.  But

10   ultimately the results of that mediation led to multiple

11   rounds of negotiation and documentation that covered the

12   span of two to three weeks.

13           Your Honor, it was -- we were fortunate enough for

14   the trial schedule to be usually two to three days a week,

15   so we had the off days to spend time in negotiating room and

16   the restructuring lawyers who serve very little purpose here

17   in the courtroom spent their time even during the trial

18   negotiating these settlements.

19           And it's the result of the multiple rounds of

20   negotiations and the many, many drafts of these documents in

21   the arms-length and good-faith behavior of all of the

22   parties involved that the debtors were able to reach this

23   settlement agreement.

24           I think it's noteworthy in each of the instances

25   by the bonds that are affected by these settlements and that

1    are affected by the findings contained in the stipulations

2    that the overwhelming majority of the bonds that are

3    affected by these are supporting both the plan and the

4    settlements generally and are actually signatories to these

5    documents.  So let's start with the EFH legacy notes.

6              As I said earlier, I think we had more -- or close

7    to 90% of those legacy notes and those that are not actually

8    signed up to the documents are protected through some of the

9    negotiated resolutions that the committee and the indentured

10   trustee were able to extract, the concessions that they were

11   able to extract both from the plan sponsors, from the TCEH

12   first lien creditors and the debtors.

13             Second, moving down to the EFIH PIK notes, here

14   we're over 90% of those bonds actually signing the

15   documents.  I'm not aware certainly in the EFH legacy note

16   capacity of any major holder that has contacted us despite

17   having notice of ongoing discussions both from what's been

18   filed on the docket and what's been discussed in open court

19   and we certainly haven't been contacted or made aware of any

20   objection to the EFIH PIK note settlement either.

21             Your Honor, one second.  Your Honor, I just would

22   finalize with and I think I mentioned this but the

23   settlement agreements do provide for protection for the

24   unknowns.  And I think that's really the -- was the focus of

25   the negotiation with the EFH committee, the EFH indentured

1    trustee and the EFIH PIK indentured trustee.  What are we

2    doing for those who are not party to this settlement?

3            And in each case, their rights are either reserved

4    or they're getting an opportunity to take advantage of a

5    settlement that was negotiated for by the larger holders.

6    So, Your Honor, based on that record, which for the most

7    part including me running in and out of the court, I think

8    the court can take judicial notice of the fact that the

9    parties were engaged in good faith negotiations and

10   ultimately the results of those good faith negotiations will

11   allow this case hopefully to proceed to a successful

12   resolution within the next few months.

13           THE COURT:  Very good.  Thank you.  Does anyone

14   wish to be heard?  Mr. Schepacarter?

15           MR. SCHEPACARTER:  Thank you, Your Honor.  For the

16   record, Rich Schepacarter for the United States Trustee.  I

17   just wanted to sort of reiterate what Mr. Husnick has said

18   with respect to the -- I won't say the resolution but as he

19   called it, the punting of the US Trustee's objection.

20           The US Trustee has filed an objection in at least

21   one of the settlements, most likely would have objected to

22   another portion of another settlement.  But it's really with

23   respect to the fee issue.  So that issue has been dealt with

24   within the context of the documents that -- actually, the

25   order that's going to be filed and also will be basically

1    considered with respect to those fee issues at the same time

2    as the confirmation is being considered.  So I just wanted

3    to sort of reiterate that, what Mr. Husnick has said, and

4    make sure that the record is clear on that point.

5            THE COURT:  Okay.  Thank you, Mr. Schepacarter.

6    Mr. Dieterich?

7            MR. DIETERICH:  Good morning, Your Honor.  Andy

8    Dieterich for the official committee.  I'll speak for just a

9    few minutes on background because the settlement is an

10   interesting and important event for the committee.

11           It's been a long three-and-a-half months since the

12   deal was announced by the debtors on the T-side and

13   denounced by the entire E-side.  I want to concur Mr.

14   Husnick's remarks that negotiations have been protracted.

15   They've been good faith.  They've been arms-length and we

16   certainly have turned over every stone in terms of issues to

17   think about and address on behalf of the small noteholders.

18           The result is a plan that's changed radically from

19   what was announced.  The REIT opportunity has been

20   recaptured by many of the creditors on the E-side that

21   wanted to participate in it commercially.

22           For the other creditors, they have negotiated

23   individually for the most part with larger creditors their

24   equitable entitlement to PPI and the committee continues to

25   be of the view that the equitable nature of that entitlement

1    is important to keep in mind against any concerns of

2    disparate treatment.

3            The committee has picked up the gauntlet for those

4    creditors that are not represented, which are a large number

5    of creditors even though their claims are not large by the -

6    - measured against the amounts at dispute in the case but

7    actually I would say they constitute a numerical majority of

8    the creditors.

9            For these, the committee has also negotiated

10   favorable allowance in Plan A and we believe that those

11   deals are either more favorable than the deal struck by the

12   ad hoc groups or, you know, put the parties in the same

13   position.  But even then you'll see that the order in front

14   of your court has an opt-out position that allows individual

15   creditors if they really disagree with this to opt out in a

16   certain period of time at least with respect to the PIK

17   class.

18           The -- importantly for the committee, our major

19   focus has been the $700 million intercompany claim and what

20   you might call the downside risk in the case.  We have

21   negotiated stepping back and not objecting to that $700

22   million claim on the condition that it be subordinated for

23   the benefit of the certain classes of creditors.

24           The subordination actually affects every class of

25   EFH creditor with two exceptions.  The first exception is a

1    class of bonds that's guaranteed by EFIH and, therefore, is

2    not in the same economic position as the unsecured EFH

3    creditor.  And the second class are the legacy notes.  And

4    for the legacy notes, Fidelity has instructed that trustee

5    not to object to the settlement and, accordingly, the

6    trustee and the committee have honored that preference.

7            The -- in a way, the insurance policy that was

8    mentioned earlier has been extended to all classes on the E-

9    side, EFH, that Fidelity didn't instruct to stand down.

10            With all of this -- oh, I should mention one other

11    thing, Your Honor, which is the legacy tort claims, the

12    contingent exposure also has protection in the deal that's

13    being proposed because the Debtor has committed, subject to

14    a fiduciary out, to reinstate those and all alternative

15    plans.

16            And so we believe this is the most fair treatment

17    available for those classes as well.  So with that, the

18    committee actually hopes its work in the case is complete.

19    We obviously have fiduciary duties in a monitoring function,

20    but we have been asked to be neutral with respect to

21    completing plan alternatives that respects the deal I just

22    described.

23            And we're happy to be neutral because when you

24    think about the parties that are left on the E-side, they

25    consist of the big ad hoc group of PIK holders, Fidelity and

1    the legacy bonds, and the new unsecured creditor -- if Your

2    Honor approves the settlement -- the T-first lien creditors,

3    you know, derivative of TCEH as unsecured intercompany

4    claim.  And the committee's position is that the best

5    alternative plan is whatever those parties negotiate that

6    protects the classes that we have protected by the

7    settlement.

8              We do reserve the right, if it falls off the

9    rails, to come back to the Court and perhaps seeks a more

10   active role of the committee.  But it is not our intention,

11   it is not an expectation to do that.

12             I should, because this is for us, the big moment

13   in the case, thank our client.  We have five members of the

14   committee.  They include AST, the Trustee.  They have met

15   weekly for almost a year.  Over the last months, they've had

16   many, many meetings -- extra meetings on top of that.

17             They reviewed documents on very short notice.

18   They have learned about utilities and they've learned about

19   REITs.  They balanced competing creditor interests, because

20   it is a diverse committee. They put aside their personal

21   interests, and they've achieved a settlement that has the

22   unanimous support of the committee, which, I think given the

23   diversity of the committee, is pretty important.

24             I also should thank two parties that really have

25   not perhaps had as much attention to the Court as they

1    deserve, were Guggenheim and AlixPartners, who were our co-

2    representatives of the committee.  Their work wasn't as

3    visible to the Court, but they've been incredibly active

4    from the beginning, both in terms of the original leverage

5    to refinance the second lien notes to save some cash at EFH;

6    the pursuit of innumerable plans that didn't work, but laid

7    the foundation, I think, for this settlement; keeping the

8    M&A environment as competitive as we could; teaching the

9    committee about utility and REITs, and putting us in a

10   position to have a very sophisticated view of the business

11   decision that was put in front of the unsecured creditors;

12   supporting the litigation; and finally, helping support the

13   settlement in front of the Court.

14          So with that, the committee and its advisors

15   unanimously support the entry of the settlement, and we

16   expect to come back next week and unanimously support the

17   entry of the settlement agreement and the plan.

18          THE COURT:  Very good.

19          MR. DIETERICH:  Thank you.

20          THE COURT:  Mr. Pedone.

21          MR. PEDONE:  Your Honor, Richard Pedone for

22   American Stock Transfer & Trust Company, its indenture

23   trustee for all of the bonds at EFH Corp.

24          Your Honor, we too support the entry of the

25   settlement.  And I just want to note that AST has acted

1    independently in evaluating the settlement.  It's not

2    entering into the settlement upon the direction of Fidelity.

3    That direction may or may not still be followed to the

4    letter, but we certainly have gotten through working at the

5    settlement and negotiations gotten to the same economic

6    point that resolves all of the issues.

7              And, Your Honor, I note that just as part of the

8    findings that you're being asked to make, they do involve

9    AST's conduct through the case.  The committee is, in fact,

10   here because AST, over significant opposition, moved for the

11   appointment of a committee in these cases, seeing that the

12   economic dynamic might flip and that people may look to take

13   something out of the EFH Corp. and I think that action at

14   that point in the case.

15             And then AST's involvement throughout the case

16   litigating various issues and, obviously, participating as a

17   member of the committee, unquestionably has brought the

18   ultimate treatment, should the plan be confirmed next week,

19   from a point that was unacceptable in the fifth amended plan

20   where reinstatement remained an -- reinstatement on the T-

21   side remained a possibility, to the point where we have a

22   consensual resolution that, in particular for small

23   bondholders, those who have not signed on, are receiving

24   their full contract rate of interest and principal when this

25   plan goes effective.

1              And I think looking at the summary of that, the

2      findings that are requested are appropriate, Your Honor.

3      And thank you.

4              THE COURT:  Good morning.

5              MS. RINGER:  Good morning, Your Honor.  Rachel

6      Ringer from Kramer Levin on behalf of the EFIH second lien

7      trustee.

8              We just wanted to raise one minor mechanical issue

9      for the record.  We spoke about this with the Debtors this

10     morning.  It's not substantive and it has no impact on the

11     Fidelity settlement or the PIK settlement.  But, as you're

12     aware, under both of those settlements, Fidelity and certain

13     of the PIK noteholders are agreeing to waive any recovery on

14     account of their second lien make whole claims.

15             So in the event that there is some recovery on the

16     make whole claims, the trustee needs to be able to determine

17     who is entitled to receive that recovery.  The issue then is

18     if there's any trading in the interim, the trustee just

19     needs to be able to track eventually who should receive that

20     recovery, if there ultimately is one.  So it's an issue the

21     trustee is working on, and we're working with the Debtors.

22     But we just wanted to make Your Honor aware of it for the

23     record and, as I said, it has no impact on either

24     settlement.

25             THE COURT:  Thank you.

1          MS. RINGER:  Thank you.

2          THE COURT:  Mr. Miller.

3          MR. MILLER:  Good morning, Your Honor.  Brett

4   Miller, Morrison & Foerster on behalf of the T-side

5   committee.  While these are E-side settlements primarily,

6   they do bleed over into the T-side has been much of what

7   we've discussed during the course of this case.  And the T-

8   side committee has been working with the other T-side

9   creditors, primarily White & Case, Paul Weiss and Brown

10  Rudnick, together with the debtors, to make sure that even

11  settlements on the E-side don't have a major effect on the

12  T-side recoveries under the plan.

13          As a result of positive negotiations throughout

14  the E-side and working together with the T-side to resolve

15  things consensually, the T-side committee very much supports

16  these settlements, and it does not have any material effect

17  on the T-side settlements under the plan, so we do support

18  the relief request.

19          THE COURT:  Okay, thank you.  Mr. Lauria.

20          MR. LAURIA:  Good morning, Your Honor.  Tom Lauria

21  with White & Case.  I represent the TCEH unsecured ad hoc

22  note group and the plan sponsors.  My partner, Chris Shore,

23  couldn't be here today.  He is mourning the peace that has

24  broken out in this case.  Speaking of the peace that has

25  broken out in this case, the plan as filed and the

1    settlements that have been negotiated are really a big

2    complex structure of one settlement built upon another built

3    upon another built upon another and they're all inter-

4    connected.

5            And I want to make sure that we thank and

6    recognize appropriately on the record, Mr. Borowitz and

7    Judge Gross, both of who played instrumental roles in

8    helping the parties find this peace that exists today in the

9    case.

10            There were a couple of points I wanted to make

11    clear on the record that except for the disputes that remain

12    with respect to the make wholes of the EFIH first lien and

13    second lien debt, all the make whole claims on the E-side

14    have been waived in connection with this plan, which is an

15    extraordinary outcome.  And we have succeeded in resolving

16    disputes regarding $650 million of post-petition interest on

17    terms that facilitate the plan and the transactions

18    contemplate thereby.

19            Obviously, this plan is extraordinarily complex,

20    involves I think precedent-setting transactions and

21    resolutions that, hopefully, we're going to be able to

22    consummate in the first quarter of 2016.  And I guess it's

23    precisely because of the innovation involved here that

24    people have been very concerned about what we've called plan

25    A and plan B, which is really the plan that's before the

1    Court and what happens if this plan gets confirmed, but

2    doesn't consummate.

3            That has made the negotiation of these resolutions

4    today even more difficult than they otherwise would be and

5    further contribution to the difficulty of the negotiations.

6            I think as the Court is aware, there are

7    significant crossholdings going up and down the E-structure

8    and then across to the T-side, and even within the EFH

9    complex and EFIH complex.  So you have parties with complex

10   interests that are not always aligned, even though they

11   might on the surface look as though they should be.

12           Secondly, you have the impact of fees on peoples'

13   recoveries.  Are they going to be borne by the estate, or

14   they going to be borne by the different creditor groups.

15   Third, you have litigation that has existed.  You have the

16   PIK group that sued Fidelity over the call right.  You have

17   litigation between the EFIH firsts and seconds.

18           We haven't resolved that second piece, but the

19   settlements that are before the Court do resolve the first

20   piece and depend on the resolution of that first piece.

21   It's a further ligature between the deals worth.  Although

22   they, on the fact, look as though they are separate; in

23   fact, they all kind of rise and fall together.

24           And the final aspect of this, which was mentioned

25   by Mr. Miller, is the impact on the inter-debtor claims as

1    between the T-side and the E-side.  And quite remarkably,

2    this mess, if you will, which has, I'm sure at times from

3    the Court's perspective, looked like chaos and cats trying

4    to be herded, has somehow gotten to this moment where -- and

5    maybe it's just a moment -- where all the parties are

6    marching in stride.  And because of that and the difficulty

7    that we had in getting here, we would just that the

8    settlements be approved as quickly as possible so that we

9    don't further risk the possibility of going back to the way

10   this case seems to have been by its nature before now.

11             THE COURT:  Okay, thank you.

12             MR. LAURIA:  Thank you.

13             THE COURT:  Okay.  All right, well, I think the

14   record of this case going back a year and a half, and the

15   progress that has been made from the petition date through

16   today when we sit here with settlements that substantially

17   smooth the way towards consensual confirmation and

18   settlement, although there are still outstanding objections

19   that the Court will determine on its merits at the

20   appropriate time, creates an uncontroverted record that the

21   settlements that are in front of the Court today were

22   negotiated in good faith and at arms' length, and that those

23   negotiations were at times, maybe all times, contentious.

24   And the parties that participated and have participated in

25   the settlements were well represented and by able

1     professionals that worked very, very hard to protect and

2     promote their clients' interests.

3          The claims settlements, which in effect are what

4     these are, of claims that are to be allowed under the plan,

5     are supported by the record.  They are eminently reasonable.

6     They resolve contentious litigation and serious litigation

7     risks.  And as Mr. Dietderich pointed out in connection with

8     the unimpaired noteholders seeking post-petition interest,

9     resolve equitable issues as to what that post-petition

10    interest should be.

11         So I am very pleased, with one caveat, to approve

12    the settlements that are in front of the Court, and it's I

13    hope a minor caveat.  More specifically, the -- what was the

14    second amended notice of settlement between the Debtors and

15    Fidelity Management and Research Company, which was filed at

16    Docket 7132, happy to approve that and sign the proposed

17    Order.  What was last filed, which is the fourth amended

18    notice of settlement of the EFIH PIK note claims with

19    certain EFIH PIK noteholders, which was filed at Docket

20    7130, I'm happy to approve that.

21         In connection with the amended notice of

22    settlement among Debtors, EFH committee, EFH notes trustee,

23    plan sponsors, consenting TCEH first lien creditors and TCEH

24    committee, which is at Docket 7131, I have one issue, which

25    I hope is minor.  And that's in page 5, paragraph 8, which

1    is sort of two-part -- well, it's a three-part paragraph.

2    The first part is a finding that the EFH notes trustee has

3    acted prudently and in good faith in the Chapter 11 cases

4    has, as of the date hereof, fully and properly performed and

5    discharged all its dues under the EFIH -- excuse me -- EFH

6    note indentures.  I have no problem making that finding.

7           There's a proviso at the end of that sentence that

8    says that the foregoing shall not release or exculpate the

9    EFH notes trustee from liability for any act or omission

10   that is inconsistent with the EFH note trustees obligations,

11   commitments, or undertakings under the agreement.  That

12   language is tracked in the Fidelity settlement.  Again, I

13   have no problem with that.

14          What I have a problem with is the clause in the

15   middle, which says that the EFH notes trustee shall have no,

16   nor incur any, liability for, and is released and

17   exculpated, from any cause of action or any claim related to

18   any act or omission in connection with, relating to, arising

19   out of, or required under the agreement, this settlement

20   order, or any other related documents or agreements.  I

21   think that goes too far as part of this settlement and based

22   on this record.

23          In particular, I'm not going to exculpate a non-

24   estate fiduciary, and the EFH notes trustee is not a

25   committee.  It's a non-estate fiduciary.  It's a fiduciary

1    to its issuance and participants.  So exculpation is simply

2    unavailable, and I'm concerned with a release in the context

3    of a claims settlement.  So if you want to try to build that

4    release into the plan, you can attempt to do that.  I'll

5    reserve rights on whether that's appropriate or not, but I

6    am concerned with that clause.  And Mr. Pedone, I'm sure you

7    wish to be heard.

8              MR. PEDONE:  Your Honor, we are fine with the

9    removal of the words, "and exculpated."  I would note that

10   the fifth amended plan that went out well over a month ago

11   now, contained the provisions providing for the release of

12   the indentured trustee under the plan itself, and this is a

13   settlement of the plan confirmation objection.

14             And we believe that in that context where all

15   parties are on notice of the content of the plan, which has

16   been heavily litigated, confirmation that is part of the

17   settlement, we will receive the release that was actually in

18   the plan provided for notice is entirely appropriate and can

19   be provided for.

20             The delivery of the release is, in fact, material

21   to my client entering into the settlement, Your Honor,

22   because there were extraordinary negotiations over the

23   indemnity being honored in connection with the resolution

24   and settlement.  And, ultimately, there may be some

25   limitations on that indemnity, which would result in

1    potential impairment.

2              And so we need the finality that comes with that

3    release, and believe it is appropriate in connection with

4    the plan -- but again -- in connection with the settlement.

5    But I understand Your Honor's concerns and I'm quite happy

6    to have the words "and exculpated" removed from the fourth

7    line, and/or exculpated removed from, I guess, the sixth or

8    seventh line, and I'd ask the Court to approve the release

9    language based on the whole record. Thank you.

10             THE COURT:  Okay.  Anyone else.  Mr. Husnick.

11             MR. HUSNICK:  Just in the interest of openness,

12   Your Honor, I think -- and my candor to the Court.

13   Paragraph 18 of the EFIH PIK settlement has this same

14   language.

15             THE COURT:  I looked for that and I couldn't find

16   it.  I thought it was in there somewhere, but --

17             MR. HUSNICK:  Yeah, it is paragraph 18.  I did

18   want to bring it to Your Honor's attention.

19             THE COURT:  All right.  I'll approve those

20   provisions if you strike "and exculpated" from both

21   provisions.  And I should ask Mr. Alberino -- there he is --

22   if that's acceptable to the PIK trustee.

23             MR. ALBERINO:  Scott Alberino from Akin Gump on

24   behalf of UNB, the PIK trustee.  We have no objection, Your

25   Honor.

1          THE COURT:  Okay.  So I think we only need to

2     strike it where it says it's being given, and we don't need

3     to strike it from the proviso that says it's not being

4     given.

5          MR. PEDONE:  That's fine, Your Honor.  Thank you.

6          THE COURT:  Okay, very good.  So with those

7     changes to those two orders, which you can inter-delineate

8     as far as I'm concerned, I'm prepared to approve those

9     settlements and sign the orders.  You want to hand them up?

10          MR. HUSNICK:  May I approach, Your Honor?

11          THE COURT:  Yes.  Ms. Werkheiser, if I could ask

12     you to take these to Ms. Gadson and ask her to get them

13     docketed right away.  All right, I've signed those orders.

14     And just for the record, the language I had discussed was

15     stricken from them.  Thank you very much.  And we will have

16     those docketed as soon as possible before anybody changes

17     their mind.  No one's allowed to leave until they're on the

18     docket.  So yes, so that'll resolve that issue.

19          MR. HUSNICK:  Thank you very much, Your Honor.

20     The next part of the agenda I was going to treat more in the

21     nature of, in light of the settlements, where we're at with

22     confirmation, and give you a brief status update on what's

23     left for closing argument, and then ask Your Honor for

24     direction in terms of how you wanted to handle closing

25     arguments next week.

1          THE COURT:  Okay.

2          MR. HUSNICK:  Your Honor --

3          THE COURT:  Before you do that, I just want to --

4     now that I've signed the order, I just want to again make

5     very sure that there's no additional evidence that needs to

6     be submitted in connection with confirmation or the

7     settlement so the record is clear.  Okay.  I hear no one, so

8     just so the record's clear.  All right.  I'm sorry, Mr.

9     Husnick, to interrupt.

10         MR. HUSNICK:  No worries.  Thank you, Your Honor.

11    In terms of the confirmation hearing, we have now

12    significantly narrowed the remaining objections, and I'll

13    just briefly summarize where we're at.

14         With the United States Trustee, Your Honor, we

15    continue to work with the United States Trustee in a

16    constructive way to try and narrow the issues as much as we

17    possibly can.  I'll stay away from where the negotiations

18    are at right now, but suffice to say, we're in discussions

19    and we'll continue to push that forward.

20         With the asbestos plaintiffs, that is, the Fenicle

21    and Fahy objections, Your Honor, we've shared language with

22    counsel to Fenicle and Fahy related to the reinstatement of

23    the inter-company claims, as well as reinstatement of the

24    interest in the Debtors against whom Fenicle and Fahy have

25    claims.  This is what we said we would do, both in oral

1    testimony from Mr. Keglevic, as well as in our briefs and in

2    the summary charge that we've been filing on the docket.

3              Your Honor, I don't believe that there's any issue

4    with that language, per se.  But what I would say is that I

5    don't believe that resolved -- and I'll let Mr. Hogan

6    explain if he wants -- but I don't think that resolves, in

7    any way, the substantive objections that have been asserted.

8    But it does narrow the issues, I think, to the 524(g) issue

9    that we've discussed in the past and we fully briefed and

10   will be prepare to argue.

11             That leaves, Your Honor, FLSmidth.  FLSmidth is a

12   contract counterparty whose contract -- the sum and

13   substance of the objection was an assertion that (a) the

14   plan supplement wasn't clear whether the contract was being

15   assumed or rejected.  We've made clear that it is being

16   rejected.  And the other related objections are as to the

17   fair and equitable treatment of those claims.

18             In effect, FLSmidth is arguing that their claim

19   should be paid in full in cash.  And that's just now how,

20   unfortunately, how the TCEH plan works.  So we will be

21   prepared to prosecute that and argue that at closing.

22             We have two pro se objections, one from a Mrs.

23   Robinson and another from Ms. -- or Mr. Haker.  The Debtors

24   have reached out to both Mrs. Robinson and Mr. Haker in an

25   attempt to have a discussion.  Unfortunately, we've been

1    unsuccessful in resolving these issues.

2              In particular, we have not been able to reach Mr.

3    Haker, despite our efforts both through the indenture

4    trustee for the issuance that Mr. Haker holds, which is EFIH

5    first lien bond, and through Fidelity, which is the entity

6    where Mr. Haker allegedly has an IRA in which the bonds sit.

7    So we did try multiple avenues to reach out to him.

8              The substance of that objection, Your Honor, is

9    that the plan doesn't provide for payment of principal on

10   the EFIH first lien notes.  The reason for that is because

11   the EFIH first lien notes were paid off in the early days of

12   these Chapter 11 cases, and the remaining dispute is

13   regarding some of the post-petition interest in the make

14   whole.  So that -- I will have to proceed on that one.

15             Ms. Robinson's claim is a claim against EFH.

16   There is a pending objection to that claim, which is why Ms.

17   Robinson didn't receive a ballot.  Her claim, though, is

18   against EFH and will receive the treatment set forth and is

19   otherwise left unimpaired under the plan. So we'll be

20   prepared to proceed on both of those as well.

21             Finally, Your Honor, just a brief note on the

22   Environmental Protection Agency.  I referenced, Your Honor,

23   at the last hearing, that we have reached a deal in

24   principle.  We continue to work on the terms of that

25   settlement and document them.  I have an agreed statement

1   that I can read into the record.  I want to be very careful

2   here given the sensitivities around the Environmental

3   Protection Agency's inner-workings.  So if I can read this

4   statement.

5           THE COURT:  Yes.

6           MR. HUSNICK:  The Debtors, the EPA, EFH Properties

7   Company, and certain other parties continue to work towards

8   a settlement to be memorialized in a stipulation and order

9   that would resolve EPA's claims with respect to the uranium

10  mining activities at certain sites located in McKinley

11  County in the State of New Mexico.

12          Subject to the parties' agreement on the terms of

13  the stipulation, counsel for the United States, on behalf of

14  EPA, expects to recommend the settlement for the required

15  approval of the appropriate authorized government officials.

16  The parties expect to file the stipulation early next week

17  with the Bankruptcy Court, and would like to schedule a

18  hearing to authorize the Debtors to enter into the

19  stipulation on shortened notice in advance of the closing

20  arguments next week.

21          Upon filing the stipulation with the Bankruptcy

22  Court, the EPA's objection to the plan and settlement

23  agreement will be withdrawn, subject to the Court approved

24  entry of an order approving the stipulation and proposed

25  order.

1          Your Honor, importantly, the approved stipulation,

2     once the Debtor is authorized to enter into it, will remain

3     subject to a 30-day public notice and comment period.  And

4     the EPA will have the ability to withdraw from the

5     stipulation as to the claims settlement if the public

6     comments disclose facts or considerations that indicate that

7     the stipulation is not in the public interest.

8          So just summing up, Your Honor, I think all of

9     that verbiage was a long way of asking you if we can have a

10    hearing, perhaps right before closing arguments, and we

11    would anticipate trying to file this on Monday.

12          THE COURT:  Okay.  Thank you.

13          MR. HUSNICK:  Then the last objection was with the

14    EFCH 2037 notes.

15          THE COURT:  Just -- I'm sorry -- to answer your

16    question -- I apologize -- yes, you may have a hearing on

17    the EPA the day of closing argument before moving on to

18    closing arguments.

19          MR. HUSNICK:  Thank you, Your Honor.  The last

20    objection, Your Honor, is the EFH 2037 notes.  Your Honor,

21    they object that note issuance --

22          THE COURT:  EFCH, right?

23          MR. HUSNICK:  EFCH, thank you.  -- represented by

24    Mr. Gwynn's firm, had objected to the plan.  The EFH -- or

25    EFCH 2037 notes trustee has agreed to resolve its objection

1    to the plan, in exchange for a $100,000 payment that will be

2    made under the plan through -- and we're still working out

3    specifically the mechanics, but it'll be memorialized in a

4    plan modification.

5            I misspoke, Your Honor.  It's 125, $125,000.  Your

6    Honor, with that, that is what is left in terms of the

7    objections.  I neglected to say thank you to the Court and

8    to everyone on your staff, and wish you a very happy

9    Thanksgiving and look forward to seeing you again next week.

10           THE COURT:  Thank you.

11           MR. HUSNICK:  Mr. McKane would like to make a

12   statement.

13           THE COURT:  Yes.

14           MR. MCKANE:  Your Honor, there's no statement,

15   although I should road block as well because I am mourning

16   the peace.  With regards to oral argument next week, to the

17   extent as Your Honor considers how you want to proceed,

18   given the narrowness of the sum of the issues that remain,

19   both on the settlement motion front and the confirmation

20   front.  And after conferring with Mr. Husnick, we think it

21   makes sense to get you our proposed orders -- our settlement

22   order and our plan confirmation order -- in advance of oral

23   argument on Wednesday.

24           There will be built-out findings of facts in both

25   of those with record citations in support for them.  And

1    then, from our perspective, it may make sense just to

2    provide and part of closing, an overview of what we think

3    the Debtors and the plan supporters believe the evidence has

4    shown that will support those findings of fact, and then

5    proceed to addressing specifically the remaining objections.

6            This would be probably a much more truncated

7    presentation than had these latest settlements not been

8    approved.  But we knew if we move forward in this more

9    streamlined fashion, we will absolutely support everything

10   that's in the order.  You'll have the order in advance, so

11   that you can be certain you are satisfied with doing so.

12   And then we'd also address the objections.  Thank you, Your

13   Honor.

14           THE COURT:  All right.  Well, that would be

15   excellent if I could have those orders ahead of time.  Well,

16   here's what I was -- here's my proposal, and obviously, it's

17   open to comment.

18           First of all, I will not require or accept any

19   further briefings, so there would be no post-trial briefing.

20   I think the issues are narrow.  I think they have been

21   thoroughly briefed and argued and will be argued at closing.

22   And I feel that I have the information I need to make those

23   decisions.  I think also, especially Mr. Hogan's clients, we

24   can spare them some added expense, and I will obviously

25   address it on the merits.  So there will be no further

1    briefings.

2          I was going to schedule closing argument for

3    Wednesday, December 2nd at 10:00 AM.  We'll hear the EPA

4    first; hopefully, briefly.  And then we move to oral

5    argument.  I was thinking I would set a time limit, just to

6    make sure we finish.  I don't think it's -- we're going to

7    get there.  I don't think it's going to take the time limit

8    I'm going to give, but, you know, I want to make sure people

9    have a fair opportunity.  So I would set a total of three

10   hours for supporters of the plan.  I don't know how many of

11   them are going to want to be heard.  And then an hour and a

12   half for objections, which I think is more than enough time

13   for both sides.

14         I would then plan to make a ruling from the bench

15   on confirmation and the settlement the next day, December

16   3rd at 10:00 AM.  I would urge -- again, not previewing, I

17   have not made up my mind, but it is possible that there are

18   pieces that I might not approve, and there are objections I

19   might sustain.  So if that happens, I think it would be

20   helpful to have from the parties that, you know, who are

21   involved in the deal and involved in the plan and the

22   settlement to have people here present in Court that day who

23   can break out if necessary, negotiate around whatever

24   rulings I might or might not make, and be in a position,

25   hopefully, to resolve those issues.  You could also, after I

1    rule, deal with any open issues in connection with the

2    confirmation order, assuming I confirm the plan, and the

3    settlement order, assuming I approve the settlement.

4            My memory on the settlement, by the way, is that

5    the only outstanding objection is Mr. Hogan's client on the

6    settlement.  Everything else is a plan objection.

7            MR. MCKANE: Yeah, Your Honor, there's a fee

8    payment that the United States -- with respect to the

9    settlement agreement, that you may remember, it's the 49.75.

10           THE COURT:  Yes.

11           MR. MCKANE: And that, I believe, the United States

12   Trustee has an outstanding.

13           THE COURT:  Oh, that's part of the settlement as

14   well.  Yes, of course it is.  I apologize, didn't mean to

15   lose track of that.  Is there any objection to proceeding in

16   that manner?  Okay.  So that's what we'll do.

17           So oral argument December 2nd at 10:00.  I'll have

18   a bench ruling the next morning at 10:00 as well.  And then

19   we're in front -- again, I see you three times next week, so

20   all the fun isn't over -- on Friday in connection with the

21   adversary proceeding.  At that time, I will hear the

22   pretrial on that adversary proceeding.  This is the Texas

23   Transmission, I believe, is the adversary proceeding.

24           MR. MCKANE: That's correct.

25           THE COURT:  I'm also going to hear the Ovation

1    motion to intervene at that time.  I think briefing will be

2    complete, so that's scheduled for Friday, again at 10:00 AM.

3    And, hopefully, that won't take very long, but it'll take

4    what it takes.

5            We can also, if there are any open issues on

6    confirmation order that need to be negotiated, you know,

7    after we recess on the 3rd, we can take those up again on

8    the 4th if necessary while everybody's in one spot and in a

9    position to negotiate face-to-face.  And I think that will

10   do it for what I have planned for you people until the 16th

11   of December, which is an omnibus hearing.  Anything else?

12           MR. MCKANE: Nothing further from the Debtors, Your

13   Honor.

14           THE COURT:  Let me just say that in my experience,

15   both in private practice and on the bench, this has been the

16   most impressive display of professionalism with regard to

17   presentation of a trial on any issue I've ever had.  And

18   that doesn't just -- I'm not just putting that out to the

19   Debtors.  That really goes for all parties -- the E-

20   committee, the EFH indenture trustee, the T-side supporters,

21   the plan proponents.  The presentation of huge amount of

22   evidence was highly professional, highly efficient.  And the

23   treatment with the Court and the Court staff has been

24   nothing but respectful, and you people have been wonderful

25   with understanding our limitations and addressing our

1     concerns.

2              And I know that there is no way that -- I see the

3     tip of the iceberg.  And for the tip of that iceberg to be

4     presented in such a professional and helpful manner means

5     that there is work that is going on behind the scenes by

6     lots of people I never see, by the people I see well late

7     into the night and weekends.  And I just want to let you

8     know that I truly appreciate it, and I truly understand how

9     much work it takes to present something as smoothly as it

10    has been presented.  I'll see exactly how much it took when

11    I get the fee applications.  Ms. Doré will faint, I'm sure,

12    when she gets them.  But I just want to say that I've been

13    highly impressed, and the amount of work that's been done

14    between August 10th -- to get to August 10th was huge, but

15    between August 10th to November 25th, I know was a

16    tremendous amount.

17             So I'll stop talking so you can make your flights

18    and, hopefully, get home to see your family tomorrow.  And I

19    truly appreciate all that, and I will see you on December

20    2nd, and just communicate when you're going to send those

21    confirmation orders next week, as well as the EPA settlement

22    whenever it's put together.

23             Thank you very much.  We're adjourned.  And just

24    so the record's clear, I will issue an order on the second

25    lien's request for certification probably early next week,

1   but prior to December 2nd.

2

3                              *   *   *   *   *

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya

6    Ledanski Hyde

Digitally signed by Sonya Ledanski Hyde
DN: cn=Sonya Ledanski Hyde,
o=Veritext, ou,
email=digital@veritext.com, c=US
Date: 2015.11.30 10:24:00 -05'00'

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  November 30, 2015