# Exhibit A

Page 1

1   UNITED STATES BANKRUPTCY COURT

2   DISTRICT OF DELAWARE

3   In re:                          :

                                    :   Chapter 11

4   ENERGY FUTURE HOLDINGS          :

    CORP., et al.,                  :   Case No. 14-10979(CSS)

5                                   :

            Debtors.                :   (Joint Administration

6   _____ :   Requested)

7

8

9

10                                  United States Bankruptcy Court

11                                  824 North Market Street

12                                  Wilmington, Delaware

13

14                                  October 20, 2015

15                                  10:00 AM - 11:59 AM

16

17  B E F O R E :

18  HON CHRISTOPHER S. SONTCHI

19  U.S. BANKRUPTCY JUDGE

20

21

22

23

24

25  ECR OPERATOR:   LESLIE MURIN

1   HEARING re Notice of Settlement Notice of Proposed

2   Settlement of EFIH PIK Note Claims of GSO Capital Partners

3   LP and Avenue Capital Management II, L.P. Filed by Ad Hoc

4   Group of TCEH Unsecured Noteholders. (Attachments: # (1)

5   Exhibit A # (2) Exhibit B # (3) Exhibit C # (4) Exhibit D #

6   (5) Exhibit E) (Bird, L. John)

7

8   HEARING re Rule 2019 Statement - Fifth Supplemental Verified

9   Statement of the Ad Hoc Committee of TCEH First Lien

10  Creditors Pursuant to Bankruptcy Rule 2019 Filed by Ad Hoc

11  Committee of TCEH First Lien Creditors. (Bartley, Ryan)

12

13  HEARING re Withdrawal of Claim on behalf of Ascend

14  Performance Materials regarding Schedule Nos. 502200780 and

15  503203470. Filed by Epiq Bankruptcy Solutions LLC.

16  (Garabato, Sid)

17

18

19

20

21

22

23

24

25  Transcribed by:  Sonya Ledanski Hyde

1   A P P E A R A N C E S :

2

3   KRAMER LEVIN NAFTALIS & FRANKEL LLP

4        Attorneys for Second Lien Indenture Trustee

5

6   BY:  GREGORY HOROWITZ

7        JOSHUA BRODY

8

9   PACHULSKI STANG ZIEHL & JONES LLP

10        Attorneys for EFIH Second-Lien Noteholders

11

12   BY:  LAURA DAVIS JONES

13

14   KIRKLAND & ELLIS

15        Attorney for Debtors

16

17   BY:  ANDREW MCGAAN

18        RICHARD HOWELL

19

20   VENABLE

21        Attorneys for PIMCO

22

23   BY:  JEFFREY SABIN

24        JAMIE EDMONSON

25

1   MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

2          Attorney for TCEH Debtors

3

4   BY:  DAVID PRIMACK

5

6          Attorney for Citibank DIP Agent

7

8   BY:  HOWARD COHEN

9

10  RICHARDS, LAYTON & FINGER PA

11         Attorney for Debtor

12

13  BY:  DANIEL J. DEFRANCHESCHI

14       JASON M. MADRON

15

16  KLEHR HARRISON HARVEY

17         Attorney for UMB Bank, N.A.

18

19  BY:  RAYMOND HOWARD LEMISCH

20

21  POTTER ANDERSON & CORROON LLP

22         Attorneys for Deutsche Bank

23

24  BY:  R. STEPHEN MCNEILL

25

Page 5

1    MORRIS, JAMES LLP

2        Attorneys for Law Debenture Trust Company

3        of New York, in its capacity as Indenture Trustee

4

5    BY:  STEPHEN M. MILLER

6

7    FOX ROTHSCHILD LLP

8        Attorneys for Ad Hoc Group of TCEH

9        Unsecured Noteholders

10

11   BY:  JEFF SCHLERF

12

13   WHITE CASE LLP

14       Attorneys Ad Hoc Group of TCEH Unsecured Noteholders

15

16   BY:  CHRIS SHORE

17

18   REED SMITH LLP

19       Attorneys for The Bank of New York Mellon

20

21   BY:  EMILY DEVAN

22

23

24

25

1    AKIN GUMP STRAUSS HAUER & FELD LLP

2         Attorneys for Ad Hoc Committee of EFIH

3         Unsecured Noteholders

4

5    BY:  ABID QUERESHI

6         ROBERT J. BOLLER

7

8    ALSO APPEARING TELEPHONICALLY:

9    JACOB A. ADLERSTEIN

10   SCOTT L. ALBERINO

11   ARLENE R. ALVES

12   PHIL ANKER

13   LAUREN BITZIN

14   PEG A. BRICKLEY

15   KEVIN COCO

16   MICHELLE F. KYROUZ

17   MARK TAUB

18   MARK A. CODY

19   TUVIA PERETZ

20   NII-AMAR AMAMOO

21   JOHN B. BRINGARDNER

22   PEG A. BRICKLEY

23   CHRISTOPHER L. CARTER

24   DANIEL A. LOWENTHAL

25   GREGORY TAYLOR

1   ADAM M. DENHOFF

2   XIAOYU GU

3   BRIAN GLUECKSTEIN

4   KENNETH MAIMAN

5   ANDREW M. THAU

6   AMER TIWANA

7   SINA TOUSSI

8   CARL TULLSON

9   MICHAEL TURKEL

10  MATTHEW UNDERWOOD

11  JULIA M. WINTERS

12  APARNA YENAMANDRA

13  STACEY DORE

14  DAVID M. DUNN

15  BARRETT EYNON

16  BARRY FELDER

17  MARK FLANNAGAN

18  MEGGIE GILSTRAP

19  MARK F. HEBBELN

20  NATASHA HWANGPO

21  ANNA KALENCHITS

22  MICHAEL J. WALSH

23  DANIEL ZAZOVE

24  HAROLD KAPLAN

25  MATTHEW W. KINSKEY

1    CHARLES KOSTER

2    STUART KOVENSKY

3    ARI D. KUNOFSKY

4    LARRY A. RAPPAPORT

5    ELIZABETH RASSKAZOVA

6    MARC B. ROITMAN

7    MATTHEW ROOSE

8    NED S. SCHODEK

9    ROBERT MALONE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2               CLERK:  All rise.

3               THE COURT:  Please be seated.  Excuse me.  Good

4      morning.

5               MR. MCGAAN:  Morning, Your Honor.

6               THE COURT:  All right.

7               MR. MCGAAN:  Thank you.  Andrew McGaan for the

8      debtors.  Good morning, Your Honor.  Good morning, counsel.

9      We're here this morning on two different sets of motions.

10     There is the adversary proceeding, as Your Honor knows,

11     filed by the second-lien indenture trustee, seeking certain

12     make-whole, rescission, and interest on applicable premium

13     remedies in that complaint.  And so, there are cross-motions

14     for partial summary judgment filed by the EFIH debtors on

15     the one hand and the second-lien trustee on the other.

16               And then the other dispute we're here on, which

17     overlaps substantially if not completely with that one, is

18     the EFIH debtors' objection to the PIK trustee's claim for

19     make-whole remedies.

20               The debtors' strong belief, Your Honor, is that

21     your March 26, 2015, ruling on the first-lien indenture

22     trustee's claim for a make-whole premium should control the

23     outcome of the dispute we're here to argue about today.

24     Your reasoning applies equally here, and it should compel

25     the same result.

1          The indentures in dispute here are nearly

2     identical to the indenture that Your Honor construed and

3     ruled upon in the first-lien dispute, the only difference

4     being the addition, in Section 6.02, the acceleration

5     clause, of two phrases that don't appear in the first-lien

6     indenture in section 6.02, the parallel provision.  And

7     those phrases are "premium, if any," and, "any other

8     monetary obligation."  So, I'd like to put that up, if I can

9     make this work.

10          While Carlos is putting that up, Your Honor, may I

11    hand you a hard copy of the few slides I have here today?

12          THE COURT:  Sure.  Thank you.

13          MR. MCGAAN:  Okay.  So, I've put up a slide, Your

14    Honor, showing the relevant language from Section 6.02, the

15    acceleration provision, in both the second-lien indenture

16    and in the PIK indenture.  And each refers to the automatic

17    acceleration of the notes under an event of default, under

18    6.01(a)(6) or (7), which refers to insolvency in a

19    bankruptcy filing, which is what puts us here.  And the

20    additional language you can see there, "premium, if any,"

21    and then, "other monetary obligations on the outstanding

22    notes," those are the differences.

23          Now, there's no -- I believe there's no dispute,

24    and what we're not here to argue about today, are -- can you

25    go to Slide Two, please? -- are a number of the rulings and

1    the legal conclusions Your Honor arrived at in your first-

2    lien make-whole opinion back in March.  And we're going to

3    move to the next slide there.

4              Well, while he's doing that, let me move along,

5    Your Honor.  You've got -- it's the second slide in the

6    packet I handed up to you, and counsel have copies.  There

7    are a series of rulings in your summary judgment opinion in

8    the first-lien proceedings that are not in -- that I believe

9    are not in dispute today, based on the papers that have been

10   filed, nor do I think they really can be disputed.

11             The fact that the repayment of the debt here, or

12   the anticipated repayment of it, would not constitute an

13   optional redemption or a voluntary redemption within the

14   meaning of Section 3.07, the optional redemption provisions

15   of these indentures.

16             There's also no debate that -- debate over the

17   legal standard that Your Honor applied in the first-lien

18   proceeding and needs to apply here.  And that is that,

19   absent unambiguous language providing for a make-whole

20   payment following a bankruptcy-induced acceleration, no such

21   payment is due.  That's a finding other cases have made

22   numerous times.  Your Honor found that, in that that was the

23   controlling New York law here.  And I don't read the second-

24   lien trustee or the PIK trustee to be debating that is the

25   controlling legal standard.

1           There's no claim for breach of a no-call provision

2      here, which Your Honor found was not legally cognizable, no

3      claim for breach of perfect tender rule, no claim for

4      rescission damages, no claim that there was an intentional

5      default by the debtors, which Your Honor found there had not

6      been with respect to the filing of the Chapter 11

7      proceeding.

8           So, the only question, I believe, before Your

9      Honor today is whether the addition of these phrases in

10     Section 6.02, the acceleration clause, create the clear,

11     specific, express, contractual entitlement that New York law

12     requires to a Section 3.07 make-whole remedy, and whether,

13     as a result, there is such an obligation in -- where there

14     wasn't such an obligation in the first-lien indenture, is

15     there one here?  And we say emphatically there's not.

16          And all of the interpretive tools available to

17     Your Honor say no.  And I'm going to walk through those in

18     the following groups.  We're going to talk about the plain

19     language, and we're going to talk about the precedent, sort

20     of the second interpretive tool available to Your Honor to

21     try to understand this language.  What have you said about

22     it recently?  What have other courts said about it?  What

23     does New York law say?

24          And then, lastly, I'm going to turn to this debate

25     over the parol evidence.  We believe that's inadmissible.

1    All the parties here agree that the language is unambiguous,

2    and Your Honor can construe it as a matter of law.  We

3    certainly agree with that, and that's been stated in the PIK

4    trustee and second-lien trustee's papers.

5           But they have raised some of the parol evidence

6    about what the drafters may have intended, and we think that

7    emphatically underscores the very argument we're making that

8    there was absolutely no meeting of the minds between the

9    parties, no intent by the EFIH debtors to agree to the

10   entitlement which they're seeking here today through the

11   adversary claim -- that is, to make-whole remedies and

12   rescission remedies and the like after a bankruptcy-induced

13   acceleration.

14          So, let me start with the plain language.  Like I

15   say, everyone agrees that this language is unambiguous.  And

16   Your Honor is free as a legal matter to construe it.  Our

17   position is that the phrase, "premium, if any," is not --

18   and I'm going to quote from paragraph 51 of your first-lien

19   ruling -- is not "the clear and unambiguous language that a

20   make-whole premium is due upon the repayment of the notes

21   following a bankruptcy acceleration."

22          So, like with the first-lien indenture that Your

23   Honor looked closely at, Section 6.02 in the indentures here

24   doesn't mention the applicable premium.  It doesn't mention

25   notes optional redemption.  Both of those phrases appear in

```
1    Section 3.07 of the indentures here.  "Applicable premium"
2    is very carefully defined that both claims were remedy here,
3    whether it's formally the applicable premium or, in the case
4    of the PIKs, the optional redemption price.  Neither of
5    those phrases appear in the 6.02 acceleration clause.
6              6.02 -- the 6.02 clauses in these indentures also
7    do not incorporate or refer to Section 3.07 whatsoever.
8    They easily could have done that.  And, as with the first-
9    lien indenture, they do not.
10             So, I noted that the PIK trustee's brief begins
11   with the following sentence:  "Section 3.07" -- I'm quoting
12   -- "Section 3.07 of the PIK indenture unambiguously provides
13   that the PIK noteholders are entitled to payment of a call
14   premium if, following bankruptcy-triggered acceleration, the
15   EFIH debtors repay or call the PIK notes."
16             Two major problems with that -- and it's
17   surprising they would begin their argument with it.
18   Firstly, there is no mention whatsoever in Section 3.07 of
19   bankruptcy-triggered acceleration, no mention of Section
20   6.02.  So, consistent with Your Honor's reasoning from the
21   first-lien ruling, there is no cross-reference.  There's no
22   incorporation.  3.07, which defines the circumstances under
23   which the trustees in each instance here may be entitled to
24   a call premium, a prepayment premium, and make-whole premium
25   be applicable premium.
```

1          It makes no reference to bankruptcy-triggered

2     acceleration.  So, there's nothing -- there's no --

3     ambiguous or otherwise, there's no reference to it.  And

4     that flies in the face of the reasoning that Your Honor

5     arrived at in the first-lien proceedings when you said, at

6     paragraph 45, "The Court begins its analysis with the most

7     relevant provision, the acceleration provision of Section

8     6.02 of the indenture."

9          So, again, in the indentures here, just like in

10    the first-lien proceedings, Section 6.02 acceleration, no

11    mention of 3.07, no mention of the defined terms or the

12    capitalized terms that provides for a make-whole or an

13    optional redemption price in 3.07.  And vice-versa, 3.07

14    makes no reference to 6.02.

15         There is a debate in the papers over what then

16    does, "premium, if any," mean; in particular, what does the

17    qualifier, "if any," mean?  And we believe that, in plain

18    English, it means what it says, which is that there may be

19    no premium due at all.  And the parties understood that when

20    that language was put in there, based on its plain meaning.

21    "Premium, if any" suggests, in common usage, that there may

22    be none.

23         That's exactly what the Court in the AMR case, the

24    Bankruptcy Court in the Southern District, found when

25    construing the same language.  It said. "'If any' should be

1     interpreted to mean payment is not automatic.  And there are

2     some circumstances under which it will not be payable,"

3     close quote.

4              Judge Drain, in the Momentive decision, which we

5     argued about at length before Your Honor, and which his

6     decision has since been affirmed by the -- in the Southern

7     District, also construed the very same provision, "premium,

8     if any," and bore down on that language, "if any," to ask:

9     what did that mean here?

10             And, in the identical setting, Judge Drain's

11    reasoning was, "Well, 'if any' refers to the Section 3.02

12    applicable premium or make-whole rights."  And, again, the

13    indenture, this -- the organization and setup, down to the

14    paragraph numbering of the indenture in Momentive, is

15    identical to the indentures here and in the first-lien

16    proceeding.

17             He said, "If it refers to Section -- the Section

18    3.02 applicable premium," which is an argument that's being

19    made here; in fact, I think it's the only argument to a

20    make-whole right that the trustees are seeking to create --

21    Judge Drain said, "it refers to events which have not

22    occurred."  So, it cannot trigger a 3.07 prepayment or early

23    redemption premium due within the 6.02 acceleration clause.

24             And those events are that the payment is early --

25    and Your Honor has already held that payment after

1    bankruptcy acceleration, under 6.02, is not "early"; the

2    maturity date's been accelerated.  It's not with the

3    requisite notice.  It's not with the requisite timing.  It

4    is not an early redemption.

5           So, none of that has occurred here.  The "if any"

6    cannot be the way in which a 3.07 make-whole premium is

7    incorporated.  In fact, the phrase, "premium, if any," is

8    very far away, if not the opposite of the kind of clear and

9    unambiguous term requiring the payment of a make-whole upon

10   bankruptcy acceleration that New York law requires.

11          So, when you look at the second lien and the

12   trustee's briefs on this "if any" language, it's interesting

13   that they come up with different arguments over what it must

14   mean, which really reflects, without going any further, that

15   it does not clearly and unambiguously incorporate 3.07.  So,

16   the second-lien trustee argues that, well, it must mean that

17   -- "if any" must mean, well, acceleration might be

18   rescinded, and make-whole might be due, but maybe not, so

19   that's what the "if any" means.

20          Now, there's no textual support for that at all.

21   And it flies in the face of the automatic stay, which would

22   prevent rescission.  So, it's a rather baroque and elaborate

23   way for the drafters to say that that's what they meant by

24   just dropping the "if any" qualifier, instead of meaning

25   there may be none due at all, there may be nothing triggered

1    by the bankruptcy acceleration.

2            The PIK trustee, meanwhile, says, "Oh, no, no, it

3    must mean -- and the only reasonable interpretation is that

4    EFIH might file for bankruptcy on the eve of the maturity

5    date of the PIK notes in 2018, when no call premium would be

6    due, but then, after 2018, in bankruptcy, seek to pay it.

7    And then no premium would be due then."

8            So, this sort of conflicting, confusing gymnastics

9    to find a meaning for "if any" to try to incorporate 3.07

10   into Section 6.02, I think, underscores the fact that it's

11   simply not there.  This is not -- if it were clear and

12   unambiguous, we wouldn't have these kinds of conflicting and

13   confusing interpretations falling over one another to try to

14   explain what's so clear about it.

15           No Court on language like this, or anything

16   similarly vague or similarly broad and non-specific, has

17   ever granted the relief that the parties here are asking for

18   in a bankruptcy-induced acceleration setting.

19           So, what -- echoing, I think, a question Your

20   Honor may recall asking one of the witnesses at the lift

21   stay trial, one of the experts put on by the first-lien

22   trustee to talk about these indentures -- and Your Honor

23   interrupted at one point and said, "Well, why did they write

24   it this way?" And it begs the question:  so, what could have

25   been here?  Is it asking too much for them to be more

1    specific?

2             And, if you look at it that way, I think it

3    further supports the argument we're making here, because how

4    difficult would it have been in Section 6.02 -- we're going

5    to presuppose now that the parties have a meeting of the

6    minds, it is their intent, and they agree that, if there is

7    a bankruptcy-induced acceleration, under 6.02, they

8    absolutely have a right to a make-whole premium or other

9    kind of call premium as defined in Section 3.07 and as

10   calculated as set forth there.  Let's assume that's exactly

11   what they meant.

12            Is this how sophisticated drafters would do it?

13   Absolutely not.  What would they do to be clear so they

14   could come here and get relief from this Court?  They would

15   say something like, quote, "The Applicable Premium is due,"

16   close quote, Capital A, Capital P.  There's only one meaning

17   in the indenture to Applicable Premium.  But it doesn't say

18   that.

19            Or they could have said, "Section 3.07 optional

20   redemption premiums of any kind will be due, or are due,

21   upon a bankruptcy-induced acceleration."  So, there's an

22   argument -- I think the PIK trustee makes this argument

23   that, well, there's different -- there's a call premium if

24   you redeem after -- you voluntarily, optionally redeem after

25   a certain date.  There's something called the applicable

1     premium if you do it before a certain date.  So, you know,

2     there are a couple different premiums in there.

3            And that's too hard to spell out in 6.02, so the

4     lower-case, "premium, if any," clearly, specifically, and

5     explicitly incorporates all of them, when, if that's what

6     the drafters wanted to do, and to conform with New York law,

7     which is no mystery to the people that wrote this indenture

8     and negotiated it -- after all, it calls for the application

9     of New York law -- all they had to do was refer to Section

10    3.07.

11           And now I'm going to turn to cases which show that

12    that's exactly what parties in other settings have done and

13    obtained the relief they're trying to obtain here without

14    doing that, and which is why New York law does not entitle

15    them to the relief they're seeking.

16           Lastly, however, before I turn to the cases, with

17    respect to the plain language issue, there is the argument,

18    "Well, it must be in something.  It has to be in something.

19    So, if you can't point to a premium that that refers to that

20    is triggered by a 6.02 acceleration, then our meaning, the

21    one we just supplied here in hindsight, must be right."  And

22    I think that way oversteps the boundaries of reasonable

23    contract interpretation.

24           We've cited cases -- this is in our reply brief in

25    support of our motion for partial summary judgment in the

1    second-lien adversary.  And this is at pages 12-13, and

2    we've cited a series of cases which show that overlapping,

3    redundant contract terms are very common.

4            And they -- and when they exist as they do here,

5    these catchall provisions, "premium, if any," "other

6    monetary obligations under the notes," what that is a

7    drafter -- what that drafter is saying is, "We're not

8    leaving behind anything we may otherwise be entitled to

9    under these circumstances, whatever it might be, if any."

10   It's a catchall.

11           And the fact that they're redundant or they may

12   overlap is not unusual.  It is not grounds to force into the

13   phrase, "premium, if any," completely unintended meanings

14   that aren't supported by the language in the indenture and

15   are utterly undermined by how that language is construed

16   under New York law.  But it's something lawyers do all the

17   time.  If we could go to the next slide?

18           This is from the proof of claim filed by the PIK

19   trustee in this case, where the -- in its motion papers, or

20   its response, rather, to the claim objection, I should say,

21   the PIK trustee is very clear about the nature of the remedy

22   in -- under Section 3.07 it is seeking: an optional

23   redemption price, because the redemption that the plan --

24   the redemption or the payoff of the notes, I should say, the

25   PIK notes provided for in the plan would occur after

1    December 1, 2014.  So, under Section 3.07, that triggers

2    something called the optional redemption price.

3            Very clear about that, but in the claim, much like

4    6.02 in the indenture, the lawyers have written these

5    redundant and overlapping terms.  And we see this all the

6    time.  And nothing requires the Court or anyone else to

7    assign unique and disjunctive meanings to premiums, the

8    applicable premium, prepayment penalties, make-whole

9    premiums, call premiums.

10           They're saying, "We're not leaving anything behind

11   that we might be entitled to, whatever you might call it."

12   The question is:  are they entitled to it?  And the same

13   thing arises when, I believe, the Court looks at -- the same

14   question arises when you look at, "premium, if any."  Well,

15   are they entitled to a premium, if any, here?

16           No, they're not, because this is not an early or

17   optional redemption.  It is the payoff of these notes, or

18   the anticipated payoff of these notes, after an acceleration

19   in bankruptcy when they're due and payable.  It's neither

20   early; it's neither optional.  Your Honor has ruled that.

21   And so, the 3.07 remedies they're seeking are simply

22   precluded by the language of the indenture, even if it uses

23   some overlapping or redundant terms.

24           Now, I want to turn to the case law.  There are

25   Bankruptcy Court cases -- Your Honor is familiar with them -

Page 23

1    - applying New York law, which reject the remedies they're

2    seeking here on this same or similar language.  And there

3    are New York cases and other cases applying New York law,

4    which approve post-acceleration prepayment penalties where

5    language exists that is specific enough to satisfy the New

6    York standard.  And none of it equates to the kind of

7    generality that we're dealing with here.

8              So, if we can go to the next slide, let me start

9    with a couple of the principal Bankruptcy opinions.  And

10   these are excerpts from bullet points at page 20 of Your

11   Honor's ruling in the first-lien summary judgment

12   proceeding, quoting the indentures that were construed in

13   the Momentive opinion case and in the Solution case, both of

14   which contain the language, "premium, if any," and both of

15   which rejected the remedies that are being sought here on

16   the same basis that we're arguing Your Honor should do it

17   here.  This is not the degree of explicitness or precision

18   that New York law requires.

19             And, in Momentive, the Court spent some time

20   analyzing this and looking at New York law and citing cases

21   like the U.S. Bank National Association versus South Side

22   House, out of the Eastern District in 2012, in which, after

23   acceleration, there was a defined repayment fee that was

24   triggered by the acceleration there.  And it's what the

25   parties here have not done, which is incorporate the

1    prepayment or redemption or call premium or whatever they'd

2    like to call it out of Section 3.07 in 6.02, failed to do

3    that here.

4            And it cites In Re Madison 92nd Street Associates

5    out of the Second District in 2012, which also specifies the

6    nature and measurement of the prepayment that was argued to

7    be due after an acceleration or under an acceleration

8    provision, a degree of specificity that's completely absent

9    here.

10           And then the Court cited a case out of the Eastern

11   District of Pennsylvania, In Re LaGuardia Associates, which

12   also was applying New York law and confronted a situation

13   remarkably similar.  In LaGuardia Associates, there was a

14   note with a prepayment clause.  It was Section 1.02 in that

15   note.  And it contained a no-call period.  Then, after the

16   no-call period, there was a prepayment period.  And if the

17   note was prepaid during that time, there was something due

18   called a yield maintenance charge, a make-whole.

19           And separately, in Section 3.1 of the indenture in

20   LaGuardia Associates, there was a default and acceleration

21   clause.  And it contained language that said, "After a

22   default and acceleration, any prepayment required under the

23   note," very much like the "premium, if any" language in 6.02

24   here.  And why I believe Judge Drain focused on this opinion

25   in his reasoning is because he was facing the same language,

1    as Your Honor knows, in Momentive.

2              And there, in LaGuardia Associates, the Court

3    held, "Well, if Section 3.1 there, the default and

4    acceleration clause -- if it's -- when it's saying, 'any

5    prepayment required under the note,' if it's referring back

6    to the 1.02 prepayment, it is missing conditions and

7    requirements under the prepayment clause" -- in our case

8    here, that would be 3.07, the optional redemption provision

9    -- "conditions that have not occurred."

10             And simply because there was an acceleration of

11   the note due at default doesn't make the reference to any

12   prepayment required under the note, the general language,

13   specific enough under New York law to trigger that payment

14   or to incorporate from the prepayment language -- or,

15   comparably, Section 3.07 here -- incorporate that obligation

16   into the acceleration provision.

17             And that, among other cases, is what helped lead

18   Judge Drain to the conclusion, which Your Honor endorsed in

19   your opinion in March in the first-lien proceedings, that,

20   "premium, if any," that isn't -- in Judge Drain's reasoning,

21   isn't specific enough either under New York law.

22             Now, there's a number of other cases, many of

23   which are cited in Your Honor's opinion.  But I want to call

24   out two in particular.  And if we could go to slide five?

25   This -- these two cases are relied on by both the second-

1    lien trustee and the PIK trustee.  And that's the

2    Northwestern Mutual Life Insurance case out of the Supreme

3    Court of New York in 2006 and the United Merchants case in

4    the Second Circuit in 1982.

5         Let me begin with -- well, let me say at the

6    outset both the trustees rely on these cases to argue that,

7    because of them, somehow the "premium, if any" language in

8    6.02 here is specific enough as a matter of New York law to

9    trigger a Section 3.07 applicable premium or optional

10   redemption price.

11        If you look, however, at United Merchants -- let

12   me begin with the Second Circuit case back from 1982 --

13   there, and I've highlighted the language, and we have this

14   in our brief, of course, Your Honor, there is a specific

15   reference to, "the prepayment charge," which was defined

16   earlier in the note.  In fact, it goes on to refer to it

17   even more specifically.  It's saying, "It would be payable

18   if United Merchants were prepaying such a note at the time

19   pursuant to paragraph 8.2 hereof."

20        So, United Merchants did, in the drafting, what

21   the parties did not do in the indentures here, which would

22   have been very easy to do.  And here in this older case, the

23   parties did that, controlled by New York law, and they were

24   somehow able, with addition of a few words to provide the

25   kind of clarity and specificity that's absent here, achieve

1    the result that the trustees can't achieve here.

2            Northwestern Mutual had a similarly specific-

3    appearing language in its indenture.  And I have quoted it

4    at the top of the slide here.

5            And what's interesting about Northwestern Mutual -

6    - and it bears looking at a little bit more closely -- is

7    that, first of all, it's a New York Trial Court.  So, it's a

8    New York State Court that goes through, rather

9    painstakingly, the history through case law of the

10   development of the requirement that you're applying -- you

11   applied, Your Honor, in the first-lien proceedings and need

12   to apply here, that is, the requirement for specificity

13   under these circumstances.

14           And what's interesting about Northwestern Mutual -

15   - and puzzling, I think, why the trustees would rely on it -

16   - is that the Court found that this language excerpted here

17   is not specific enough.  So, what we had in -- and, by the

18   way, the language we're looking at here, which it found was

19   not specific enough, is far more specific than what's been

20   put in front of Your Honor in Section 6.02 here.

21           So, in Northwestern Mutual, Northwestern

22   foreclosed on some commercial property.  The note contained

23   a prepayment premium clause, and it contained a separate

24   default and acceleration clause, and what's being excerpted

25   here in the slide is from the default and acceleration

1    clause.  So, there was a foreclosure, and evidently the

2    borrower sought to redeem, to pay the outstanding balance

3    due under the note and keep the property.

4         And you see now this is what the default and

5    acceleration clause provides that supported, in the argument

6    of the lender, their entitlement to that prepayment premium,

7    as it's called there.  "In the event of a prepayment, on the

8    occurrence of an event of default, following by the

9    acceleration of the whole indebtedness evidenced by this

10   note" -- so, now we're tracking, in substance, what's

11   happening in Section 6.02 in the indentures here, after a

12   bankruptcy filing.  An event of default is triggered;

13   there's an acceleration by the terms of the note.

14        But here it goes on to say, "Such prepayment will

15   constitute an evasion of prepayment terms, will be deemed to

16   be a voluntary repayment" -- that's language we don't have

17   here.  Again, Your Honor found that payment of the debt

18   accelerated under 6.02 in the first-lien setting is not a

19   voluntary prepayment, because it's been accelerated and it's

20   due and payable immediately, without more.

21        Back to Northwestern Mutual: "Such payment

22   therefore will include the prepayment fee required under the

23   prepayment in full privilege recited above."  Now you have a

24   direct, textual link to what is the comparable early

25   prepayment premium language in these indentures, 3.07.

1          So, what does this much more specific language in

2    Northwestern Mutual do for the Court?  One might suppose,

3    well, it awarded the prepayment note. But it didn't.  It

4    said -- in looking at the entire indenture, it said, "Wait a

5    minute.  This default and acceleration clause in the

6    requirement for the prepayment fee here is there -- in the

7    language of the Court, is intended to, quote, "thwart any

8    attempt by the mortgager intentionally to trigger

9    acceleration in order to secure the benefits of prepayment

10   in a favorable market."

11          The Court said, "This is -- while specific, it's

12   specific in a circumstance where the borrower intentionally

13   defaults or somehow triggers the default in order to evade

14   the prepayment premium."

15          So, the Court's conclusion is that, even though

16   this default and acceleration provision specifically

17   incorporates what's referred to as the prepayment fee or

18   premium elsewhere in the note, quote, "It does not contain

19   language indicating application in foreclosure, redemption,

20   or any other payment. If the word 'prepayment' in the

21   subject clause was intended to include redemption in the

22   context of foreclosure, it would be expressly included."

23          So, there is a capstone statement of the New York

24   law and its requirement of specificity that the indenture

25   here comes nowhere close to achieving.

1          The Court -- the Bankruptcy Court in the Southern

2     District in St. Lucia contrasted with an indenture that

3     contained the, "premium, if any," language, like as was

4     construed in Momentive and as is in front of Your Honor, in

5     citing Northwestern -- this case, Northwestern Mutual. The

6     St. Lucia Court said, "None of these clauses in the St.

7     Lucia indenture have the explicitness that would be expected

8     in a typical post-acceleration yield maintenance clause

9     under New York law."

10          And Momentive, of course, relies on Northwest

11     Mutual Life also in understanding New York law that governs

12     here in finding that the, "premium, if any," language

13     doesn't satisfy the clear and unambiguous or sufficient

14     clarity requirements in New York law.

15          In your opinion -- just to wrap up with the case

16     law, Your Honor, in your opinion, the first-lien -- in the

17     first-lien proceeding, make-whole proceedings, this is at

18     paragraph 48 of your ruling last March, you cite a series of

19     other cases, Parker Plaza, Teachers Insurance, In Re

20     Vanderveer, In Re Chambre Hotel, each of which, as Your

21     Honor pointed out there correctly, have prepayment terms

22     that are much more specifically referred to and do satisfy

23     the New York standard, and all of which contrast fairly

24     dramatically with the lack of specificity in 6.02 here.

25          And so, I mentioned that each of the interpretive

1    tools available to Your Honor point strongly to the

2    conclusion that the addition of this general language does

3    not satisfy New York's specificity requirement.  We talked

4    about the plain language, which doesn't cut it. The

5    precedent dramatically goes the other way.

6            There is no case -- none, they cite none -- which

7    construes language like this -- this language itself,

8    language like it, or language as similarly vague and general

9    that provided prepayment remedies like a make-whole that --

10   upon an acceleration, whether under bankruptcy or otherwise.

11           Now I'm going to talk about the parol evidence

12   briefly for a moment.  As I said at the outset, it should be

13   inadmissible.  It should be inadmissible because the parties

14   agree this language is unambiguous and Your Honor can

15   construe it from the face of the document.  That is New York

16   law, and I believe you cited it to that effect in your prior

17   ruling.

18           But they have pointed out and quoted from

19   testimony taken at deposition from two members of the EFIH

20   finance team, Tony Horton and Chris Moldovan, depositions

21   taken in the first-lien proceedings last December, in an

22   effort to show that EFIH in fact intended the make-whole to

23   be due under these circumstances.

24           So, they -- I'm going to call out one example.

25   Tony Horton, in his deposition from December 9th, 2014, he's

1    asked directly about the, "premium, if any," clause in the

2    second-lien indenture.  And I have the excerpt here.

3           But what's interesting, and I think speaks volumes

4    about the efforts that are being expended here to change the

5    meaning of things, both the second-lien trustee and the PIK

6    trustee's brief quote the following question and only

7    partial answer from Mr. Horton.  And this comes from page

8    334 of his December 9, 2014, deposition.

9           And the question that they quote is, "Okay, so,

10   the debtors were agreeing to this language," referring to,

11   "premium, if any."  "So, the debtors were agreeing to this

12   language, but they thought it had no legal effect, this

13   additional language, right?"  Horton answers, as quoted in

14   the briefs from the trustees, "I don't believe that we added

15   this language with the thought that it had no additional

16   legal form to the document."

17          And they stop there.  And then they argue, "Well,

18   there it is.  The debtors have admitted that it must have

19   some meaning.  And therefore, we have license to supply that

20   meaning in our briefing today."  But that's -- there's a

21   second sentence in Mr. Horton's testimony.  He goes on to

22   say, as they don't quote, "What I believe that we thought

23   was it had no bearing, no implication, no reference to the

24   applicable premium."

25          So, the testimony taken from the debtors, in fact,

1    as we show in our papers, Mr. Horton and Mr. Moldovan were

2    directly involved in the negotiation of the indentures that

3    are not only in dispute here but the predecessor indenture

4    at TCEH that formed part of the basis for the form of

5    indentures that were executed and negotiated with the first-

6    lien, second-lien trustee, and the PIK trustees here.

7            Now, one could say, "Well, that's convenient

8    hindsight, isn't it, when these issues are now squarely

9    brought to bear, for the -- a negotiator to say something

10   like that?"  So, we've also put forward, in -- from the

11   discovery in the first-lien proceeding, and we attached the

12   excerpts again in our papers here, contemporaneous documents

13   from Mr. Horton, from Oaktree representatives who were

14   negotiating with Mr. Horton and Mr. Keglevic, the CFO, in

15   connection with the TCEH indenture at the time that was,

16   again, the predecessor for the indenture that we're debating

17   here today.

18           And it showed that Oaktree sent over a draft -- I

19   don't want to spend a whole lot of time on it; it was

20   attached to our papers -- that referred specifically to the

21   applicable premium being due within Section 6.02 of the

22   bankruptcy acceleration provision, that the applicable

23   premium would be due in these circumstances.  And it was

24   stricken from the indenture.  It did not make its way into

25   the final indenture.

1    So, there was no mystery as to why; we have the

2    emails and the contemporaneous documents from Horton and

3    Keglevic, which show that they aggressively and emphatically

4    said, "There's no way we're agreeing to this."  One of

5    Keglevic's emails from the time said, "There's -- this is

6    not precedent.  This is bad precedent.  We're not going to

7    do that.  We're not going to agree to a make-whole in that

8    circumstance."

9    So, it corroborates Mr. Horton's testimony about

10   what he thought and believed at the time, although that

11   testimony was given just last December.  But his testimony

12   goes on, and then I'll be done with this.  But the next two

13   questions, three questions, he's asked, after he says that

14   he believed the, "premium, if any," language had no bearing,

15   no implication, no reference to the applicable premium, the

16   questioner puts it back to him and says, "So, that's what

17   you mean?" And he says, "Yes, I think that's correct."

18   And then I want to turn to this.  He's asked,

19   "Well, what legal effect do you think the language had?"

20   Answer:  "I can't point to a specific example of what

21   'principal premium, if any,' meant."  Some problems with the

22   transcript here; but that's how it reads.

23   "I know that Armin," referring to a representative

24   of Oaktree with whom they were negotiating at the time -- "I

25   know that Armin and Oaktree asked for it.  So, in my view,

1    it had some economic benefit to them.  What specifically

2    they had in mind I don't know, but I believe they did not

3    believe it was the applicable premium."

4           So, that's an actual follow-up question.  Well,

5    they ask it.  "Why do you believe that they did not believe

6    it was the applicable premium?"  Answer:  "Because they

7    asked specifically for the applicable premium and we

8    refused."

9           So, the parol evidence, which you can jettison

10   entirely because the language of the indenture simply does

11   not satisfy the requirement under New York law to trigger

12   payment of an optional redemption price or a make-whole

13   under 3.07 is sufficient.  But the effort to selectively

14   quote from this parol evidence taken from some of the

15   negotiators turns out, when you look at it more completely

16   and fully, to show the exact opposite.  There is a complete

17   absence of evidence.

18          There's no contrary evidence to this.  They would

19   have shown it to you if there were.  They wouldn't have sort

20   of cut the answer in half.  They would have said, "Look,

21   here's where someone said, 'No, that's exactly what it

22   meant.  That's exactly what we understood."  Not the case at

23   all; just the opposite.

24          So, there's no basis on which to find that the

25   intention or understanding of the parties to these

1    indentures, and specifically with respect to Section 6.02,

2    intended for a make-whole or any other remedy under Section

3    3.07, which, again, governs optional early prepayments,

4    neither of which occurred here, is ripped out of that and

5    stuffed into 6.02.

6            I want to address very briefly, and I'll be done,

7    Your Honor, the -- there was an argument; I'm not sure of

8    its status -- there was an argument the second-lien trustee

9    made that 6.02 -- the automatic acceleration under Section

10   6.02 is invalid as an unenforceable ipso facto clause.

11           And, as I understand the briefing -- and I'm

12   referring to Footnote 11 on pages 13-14 of the second-lien

13   trustee's summary judgment brief -- they're not pressing the

14   point here or expecting Your Honor to reject the argument,

15   maybe they're preserving it, because it's implicitly

16   rejected in the first-lien ruling, where Your Honor held

17   that Section 6.02 in fact validly and automatically

18   accelerated the debt upon the filing of the Chapter 11

19   provision.

20           And with respect to automatic acceleration, the

21   indentures here are absolutely identical.  And so, we've put

22   it in our brief, and I'm not going to belabor it here, but

23   the reliance on the W.R. Grace opinion from the District

24   Court here in Delaware doesn't get them there, doesn't

25   change the law or doesn't change the outcome under the Code,

1    which calls out specifically in certain instances when ipso

2    facto clauses are invalid, none of which apply here.

3             So, I raise it simply because we're going to stand

4    on our papers.  We think there is no ipso facto argument

5    here.  We think Your Honor has at least implicitly rejected

6    the notion that automatic acceleration is invalid because

7    you found it occurred in the first-lien setting.

8             So, the -- can we go to the next slide?  So, we

9    have the language from Momentive, which is essentially --

10   not -- it's almost identical to the language in the

11   indenture here in 6.02, the, "premium, if any," addition.

12   And the conclusion of Momentive that it doesn't satisfy --

13   doesn't overcome or satisfy New York law's requirement.  Go

14   to the next slide.

15            And that's what Your Honor found, not only quoting

16   that and referring to that reasoning in Momentive, but the

17   reasoning that you put forth in paragraph 46 of your first -

18   - the first-lien summary judgment ruling applies with equal

19   force here.  And there's nothing in the plain language of

20   6.02, there's nothing in the legal argument that's been

21   provided to you, that would change this result.

22            And so, we -- the remedies we're seeking, Your

23   Honor, are set forth in our briefing.  And I'll say, just

24   for the record, that what the debtors are asking for with

25   respect to the second-lien trustee's adversary proceeding is

1   judgment in our favor and judgment against the second-lien

2   trustee on Counts 1-7 and 9 and 10 of their adversary

3   complaint.

4           And with respect to the PIK trustee's claim, the

5   relief we're seeking is that the Court grant the EFIH

6   debtors' partial objection to what is claim -- the PIK

7   trustee's Claim Number 6347, and deny their claim to the

8   extent it seeks a make-whole remedy or, in their overlapping

9   and redundant language in their claim, any other remedy

10  under Section 3.07 for a call premium, an optional early

11  payment, or a make-whole or applicable premium.  Thank you.

12          THE COURT:  Thank you.  Mr. Horowitz?

13          MR. HOROWITZ:  Thank you.  Good morning, Your

14  Honor.  Gregory Horowitz from Kramer Levin Naftalis &

15  Frankel on behalf of Computer Share as the EFIH second-lien

16  note trustee.

17          Your Honor, I want to make it clear at the outset

18  there are substantial issues that I agree with Mr. McGaan on

19  and that I don't want to burden the Court's time with.  We

20  do not intend to reargue issues that this Court's already

21  decided in connection with the first-lien make-whole

22  litigation.  And those are many issues.

23          You know that we intervened in that litigation.  I

24  participated, not as much as I felt I should've, but.  And

25  we are continuing to support the firsts on appeal.  And the

1     Court knows that we, with the greatest respect, disagree

2     with your decisions on that -- on the first-lien make-whole

3     claim, as well as the lift-stay motion.  But we understand

4     that they're now the law of the case, and we are not going

5     to waste time rearguing them.

6              To the extent that we did raise issues in our

7     complaint that were addressed by the Court and in our motion

8     to lift stay, which I'm going to address very briefly

9     because I think there was some confusion on that, that was

10    solely for the purpose of ensuring that we have a final

11    appealable order at the end of the day, and can address all

12    of those issues in our own right.

13             To address one issue that Mr. McGaan discussed at

14    the end, the -- our argument about the automatic

15    acceleration clause being an unenforceable ipso facto clause

16    is -- in fact, falls into the category that we recognize was

17    decided by Your Honor in the first-lien litigation.  The

18    W.R. Grace issue was raised in those papers, and we

19    understood Your Honor to have rejected that argument.

20             In our initial brief, in the summary judgment

21    motions and Footnote 11 on page 13, we very briefly set

22    forth our position.  But at the end, we said, "These

23    arguments were resolved in the first-lien make-whole

24    dispute, and therefore we do not dispute them here."  So,

25    that's not an issue we're intending to pursue here.

1           Of course, I hope that reserving rights for appeal

2      will be unnecessary, because I hope, at the end of this

3      argument, Your Honor is going to rule in our favor. But just

4      in case, we're being careful.

5           Similar thoughts, Your Honor, with regard to our

6      motion to lift the stay: we made that motion, but, in our

7      motion, we were very explicit -- it's a very short motion --

8      that we recognized that the issues presented there were

9      identical to the first-lien lift-stay motion, and therefore

10     were resolved by Your Honor's decision there.  And we made

11     it clear we were solely making that motion for purposes of

12     getting an appealable order.  I think that the debtors

13     understand that.

14          And we did ask that it be put on the agenda -- I

15     think there was some miscommunication last night -- solely

16     for the purpose of asking Your Honor to sign -- and we've

17     prepared a one-sentence order denying that motion.  And, if

18     it's okay with Your Honor, I've showed it to the debtors;

19     I'd like to hand that up.

20          THE COURT:  Yes, it's fine.

21          MR. HOROWITZ:  Thank you.

22          THE COURT:  Yeah, I apologize for the confusion.

23     I wasn't quite sure what you were seeking to accomplish by

24     adding it to the agenda.  And unfortunately, by the time I

25     saw it, my staff was gone, I -- in court on another matter.

1    So, communication was less than perfect.  But fine.  And is

2    there any objection to entering this order?

3             MR. MCGAAN:  Andrew McGaan for the debtors.  No,

4    there's not, for the reasons set out in our opposition to

5    it.

6             THE COURT:  Okay.

7             MR. HOROWITZ:  Thank you, Your Honor.  So, Your

8    Honor, thus recognizing what the Court has already decided,

9    I'm going to try, to the fullest extent possible, to confine

10   my argument to the new issues raised by the language in our

11   indenture that differentiates us from the first-lien notes.

12            So, my argument is about nine words, which isn't

13   to mean that it's about nine words long, but I think that I

14   can finish up in much less time than Your Honor reserved for

15   argument today.  I think, at the end of the last hearing, I

16   heard Your Honor say that you had a hard stop at 3:00, and

17   that worried me, because I thought maybe you expected me to

18   take up that much time.

19            THE COURT:  No, no.

20            MR. HOROWITZ:  And I hope you won't be

21   disappointed if I don't.  So, maybe I can reserve any unused

22   time for the confirmation hearing.

23            So, when I say it's about nine words, I mean that

24   it's about the nine words that Mr. McGaan has directed the

25   Court's attention to in Section 6.02 of our indenture that

1    are not in the first-lien indenture, the words, "and

2    premium, if any," and, "and any other monetary obligations."

3          And so, really, the only question before the Court

4    today, the only question that wasn't previously addressed in

5    connection with the make-whole litigation -- I should say

6    with regard -- with the exception of the fee and expense

7    issue that I'll address briefly at the end, Your Honor, the

8    only issue on the make-whole is whether those nine words are

9    sufficient to make clear the parties' intention that, in the

10   event of a redemption in bankruptcy, following the automatic

11   acceleration, a make-whole, which we defined in our brief to

12   mean both the applicable premium and/or the fixed premium

13   that's provided in Section 3.07 of the indenture -- the

14   make-whole would become due and payable as well.

15         So, before looking at the actual words, I want to

16   make two overarching observations that I think are crucial

17   and often overlooked here.  The first is that there is no

18   controlling precedent on this issue.  I recognize that Your

19   Honor's rulings on the first-lien make-whole litigation are

20   now controlling in that they're law of the case here, but,

21   aside from that, there is no controlling law on this issue.

22         And it's -- I've repeatedly heard -- I think Mr.

23   McGaan said it in his argument, and Judge Drain said it on a

24   number of occasions, the assertion that it is well settled

25   under New York law that an indenture must contain express

Page 43

1    language requiring payment of a premium upon acceleration.

2    Otherwise, it is not a -- except for the words, "it is well

3    settled under New York law," that's a quote from Your

4    Honor's opinion on the first-lien make-whole, Your Honor did

5    not say it was well settled.

6            And I appreciate that, because it's not well

7    settled.  In fact, it's startling to realize that, with all

8    the make-whole cases that have been cited by the various

9    parties in these litigations -- and there have been many

10   make-whole cases in Bankruptcy Courts over the last few

11   years, as I think Your Honor's well aware; I'm currently

12   involved in two of them before Your Honor -- there's only a

13   single case actually decided by a New York State Court.

14           That case, Northwestern Mutual Life, was decided

15   by a Supreme Court Justice, you know, the Trial Judge out in

16   Long Island.  And there's no record of appellate review.

17   And that's not in any way to denigrate Justice Parga's

18   careful analysis in Northwestern Mutual, about which I'm

19   going to have more to say in a few minutes.  But it's to

20   make the point that the supposedly well settled principle of

21   New York law has never been articulated by any Appellate

22   Court in this -- in that state.

23           And you contrast that with what happened in the

24   judicial development of the rule of explicitness under New

25   York law, which I suspect Your Honor's familiar with, the

1   rule that, for a junior creditor to subordinate its recovery

2   to a senior creditor's claim for post-petition interest, the

3   intention to do so must be stated in the clearest possible

4   terms.

5          As that issue, under the new Code, was being

6   developed, and the 11th Circuit recognized that that was an

7   issue of New York State law, it took the direct approach of

8   certifying the question to the New York Court of Appeals in

9   Southeast Banking, and got an answer, got an answer from New

10  York that said, "Yes, we agree with Bankruptcy Courts in

11  prior law that New York has a public policy against the

12  senior creditors recovering post-petition interest at the

13  expense of junior creditors.  And, in light of that policy,

14  we're not going to allow it unless the intent to do so was

15  stated in absolutely clear terms."

16         Kind of ironic that, in that situation, with a

17  direct ruling from the New York Court of Appeals, the First

18  Circuit actually held that the New York Court didn't even

19  have the authority to speak on the issue.  But that's not an

20  issue before us today.

21         Here, Your Honor, if the issue -- the make-whole

22  issue, the issue of what does New York law provide with

23  regard to the impact of automatic acceleration provisions

24  and the ability to recover make-wholes upon payment in

25  bankruptcy or in a plan for reorganization, if that reaches

1    the Third Circuit, the Third Circuit has a certification

2    procedure as well.  And perhaps we could finally get a

3    definitive ruling from the New York Court of Appeals.

4           But, again, there's not a single opinion relevant

5    to this issue that's actually binding on this Court.

6    Neither party here has cited any Third Circuit precedent or

7    even District of Delaware precedent on the issue.  In fact,

8    the only Court of Appeals decision cited on the putative

9    principle that -- this putative explicitness principle on

10   New York law is the Second Circuit's decision in AMR.

11          And the Court there actually did not say anything

12   about that notion that you have to explicitly state your

13   desire to allow make-wholes after automatic acceleration.

14   In fact, AMR went off on the fact that -- and I'm quoting

15   the District Court here -- "The indenture stated clearly,

16   explicitly, and unambiguously that the make-whole amount is

17   not due in the event of payment following acceleration."

18          Mr. McGaan pointed to the UMM case in his slides,

19   which is a 1982 Second Circuit case.  But that didn't have

20   anything to do with the issue of whether or not make-wholes

21   are allowable after automatic acceleration.  The only issue

22   the Court was addressing there is whether make-whole -- a

23   make-whole provision is enforceable as a liquidated damages

24   provision.  And it held that it was.

25          So, all of the cases that have been cited,

1    discussed, and relied upon by this Court in its prior

2    decision, including, for example, Judge Drain's decision in

3    Momentive, therefore they only have persuasive value, which

4    isn't to say that they're unimportant, of course.  But it is

5    to say that Your Honor should only follow them if you're

6    convinced the reasoning is sound and, very importantly to

7    what I'm about to say, applicable to the situation currently

8    before the Court.

9           And the other point I want to make about this that

10   I've kind of been making is that it's remarkable and

11   regrettable that there's a dearth of appellate guidance

12   governing make-whole claims.  It's a point that's important

13   to keep in mind as we approach confirmation, because, as

14   Your Honor knows, the debtors are trying, while going on the

15   basis that they're unimpairing the first- and second-lien

16   notes on the PIKs, they're trying to do everything they can

17   to cut off our appeal rights.

18          And I hope it's not presumptuous to me, based on

19   what I've heard Your Honor say, to assert my belief that you

20   would welcome appellate review of the make-whole decisions,

21   that you recognize that these make-whole decisions raise

22   significant issues of law, and that appellate review would

23   provide a valuable contribution to bankruptcy jurisprudence.

24          So, we're going to have much more to say about

25   this at the confirmation hearing, Your Honor.  But, as it

1    currently stands, the debtors have written a plan that

2    provides for no recovery for make-whole claims that are

3    allowed on appeal after the effective date.

4           They've made it clear that they intend to argue to

5    -- on appeals that the Court of Appeals should not hear the

6    appeal because it cannot give relief without upsetting the

7    plan of reorganization.  And as you'll hear, Your Honor, we

8    think that's clearly an impairment.  And we think that it's

9    of crucial importance as we go to confirmation that, on the

10   premise that we're all being unimpaired, that one of our

11   legal rights is the right to hear -- to appeal, and that

12   that has to be preserved.

13          Okay, that brings me to the second overarching

14   observation I want to make about the make-whole issue before

15   us, Your Honor, which is that there is an important

16   distinction that's been overlooked -- largely overlooked in

17   the raft of submissions that's been presented to the Court.

18   And I think, with all due respect, this is reflected in Mr.

19   McGaan's argument.

20          It's the distinction between providing that a

21   make-whole premium, prepayment premium, becomes due upon

22   acceleration, versus contractually making it clear that a

23   make -- that the right to a prepayment premium, the right to

24   a make-whole premium, is unaffected by acceleration, and

25   that a make-whole would become due on a redemption after

1     acceleration.

2               So, it's the difference between a provision that

3     punishes a borrower for filing for bankruptcy by writing a

4     provision that makes the act of filing for bankruptcy itself

5     an immediate trigger for make-whole, versus a provision that

6     merely preserves the rights that the parties had prior to

7     the bankruptcy:  the right of the lender to continue to

8     receive interest, or to receive a payment that's calculated

9     to compensate it for not doing so, and the right of the

10    borrower to pay before the stated maturity date, but only by

11    paying the bargained-for premium.

12              The debtors fail to appreciate that distinction

13    when they argue that, if the parties had intended to provide

14    a make-whole under present circumstances -- you heard Mr.

15    McGaan say this -- it would simply have, instead of using

16    the words, "principal, if any," put in the words,

17    "Applicable Premium," a defined term with initial caps.  So,

18    the provision would read that, upon acceleration, "principal

19    interest and Applicable Premium would become due."

20              They say that would have been the simplest way to

21    accomplish our goals.  And, to be fair, Mr. McGaan observes

22    that we made the point that Applicable Premium was too

23    narrow.  What would have happened if they filed for

24    bankruptcy, say, after May 2016, under one series of the

25    second-lien notes?  After that point, there's no Applicable

1    Premium due.  There is simply a straight 5.5-percent fixed

2    premium due.

3              That's not a defined Applicable Premium, and Mr.

4    McGaan offers some other language.  He says you could say,

5    "principal, interest, and any premium due under Section

6    3.07," or something along those lines.

7              But that would not have been the best way to

8    reflect the parties' intent.  I submit that would have been

9    the worst way, because it would have had punitive

10   consequences for the debtors merely for filing for

11   bankruptcy without making any attempt to redeem the notes,

12   because the very act of acceleration in that situation would

13   have triggered a liability for the full amount of the make-

14   whole calculated as of the petition date.

15             In other words, what -- if you use that language,

16   if we had used that language here, then the second-lien

17   noteholders would have had a right claim for principal and

18   interest, and the make-whole calculated as of the petition

19   date.  Huh.  Large amount; I mean much larger than we're

20   sitting here today talking about, because something like 18

21   months has already passed with interest accruing.

22             They would have had that as of the petition date.

23   And, in order for the debtors to unimpair us right now and

24   pay our claims in full, they would have had to pay us

25   principal, accrued interest as of the petition date, the

1    make-whole claim that had accrued as of the petition date,

2    and post-petition interest on that entire claim, even though

3    the debtors had made no effort to prepay us at that point in

4    time.  But that's exactly what the language would have

5    provided.

6            But in Southside House, the Southside House case

7    in the Eastern District of New York, that's exactly what the

8    lender claimed.  There, the lender declared an acceleration

9    several months before the bankruptcy, filed a Proof of Claim

10   that sought the make-whole calculated as of the petition

11   date, and then went back and amended their Proof of Claim

12   because they realized they misread their language -- that

13   under the language of their agreement, applicable premium

14   should -- the make-whole should've been calculated as of the

15   initial acceleration date.  In other words, by declaring an

16   event of default and accelerating, they triggered the make-

17   whole, the lenders triggered the make-whole even though the

18   borrower had done nothing to try and prepay the notes.

19           Now, alternatively, if the debtors in our

20   situation -- if we'd had the worst applicable premium or any

21   premium under 3.07 it would become due upon acceleration,

22   and the debtors wanted instead to reinstate us and to un-

23   impair us, arguably we would be entitled to post petition

24   interest on the make-whole claim that accrued as of the

25   petition date before we could be unimpaired and reinstated.

1    That's an issue that might come up in Molycorp, just as an

2    example.

3            So, putting applicable premium in the acceleration

4    provision would create a result nobody reasonably would've

5    bargained for and agreed to.  You know, when the debtors

6    assert and when Mr. McGaan asserts that the history shows

7    Oaktree sought to insert applicable premium and the debtors

8    -- then the borrower refused to include that language, he's

9    right.  I agree with him.

10           The record does show that they expressly refused.

11   The evidence shows that they expressly refused to agree to

12   the words "applicable premium" for the reasons I just

13   discussed.  They acted correctly in refusing.  And they were

14   right that that's not market, and they were right that that

15   would be a bad precedent.

16           But, and let me just briefly -- why am I talking

17   about parol evidence.  Mr. McGaan's right.  As often happens

18   in contract disputes, both parties say, "You don't really

19   have to go to parol evidence; the contract's unambiguous and

20   it's unambiguous in our favor." The fact that both parties

21   think the contract's unambiguous but that they think its

22   unambiguous in different ways does not mean that there's no

23   dispute the contract is unambiguous.  In fact, it suggests

24   that there is some ambiguity.

25           Why are we pointing to parol evidence here?  For a

1    very limited purpose, which is for a very limited purpose,

2    which is to show that the language that we're talking about,

3    the nine words were specifically bargained for, and that the

4    debtors -- and Mr. McGaan didn't mention, but Mr. Horton and

5    Mr. Muldavan in those depositions were testifying as the

6    debtor's 30B6 witnesses, so these are official debtor

7    admissions on the issue.

8              Mr. Horton's testimony establishes the debtors

9    recognize that that was specifically borrowed for language,

10   that it had some meaning.  Yes, Mr. Horton testified that he

11   didn't know what Oaktree thought it meant; he testified and

12   I agreed with him for the reasons I just said -- he knew

13   that they didn't think it meant that the debtors would be

14   liable for the applicable premium as a result of

15   acceleration, but he didn't know what else Oaktree might've

16   been thinking.

17             So it would've been incompetent testimony anyway,

18   if he'd testified as to what Oaktree might've been thinking.

19   He just knows that it was specifically bargained for and

20   there must've been a reason for it.

21             So, what does the language mean?  It's my

22   contention that -- it means what rational parties would

23   agree when they discuss this, which is, they would agree

24   that the filing for bankruptcy should not alter the rights

25   of the borrower and the lender.  That bankruptcy simply

1    should not alter the parties' right as to early redemption

2    or early payment of the notes.  We made this point maybe too

3    indirectly in our intervener brief in the first make-whole

4    action.  There we argue that it makes no sense to construe a

5    boilerplate automatic acceleration upon bankruptcy provision

6    as reflecting a deliberate intention by the parties to grant

7    the borrower a free option to pay off the notes without a

8    make-whole in bankruptcy where none had previously existed.

9          And we noted that the case law that's now been

10   cited for the supposedly well-settled proposition of New

11   York law when properly understood really stands for a

12   somewhat different proposition, Your Honor.

13         It stands for the proposition that a lender cannot

14   absent express contract language, simultaneously take action

15   to collect on a loan, simultaneously seek to accelerate and

16   collect before the state of maturity, and also seek a

17   premium because it's being prepaid as a result of its own

18   actions -- I said absent express contract language -- so

19   cite language from the Southside case.  A passage that was

20   also quoted by Judge Drain in Momentive.

21         The actions taken by these lenders in such

22   circumstances demonstrate that they -- and this is a quote,

23   "Preferred, sensibly no doubt, accelerated payment over the

24   opportunity to earn interest from the loan over a period of

25   years.  So where a debtor -- sorry, "where a lender," excuse

Page 54

1     me -- "affirmatively seeks to force early payment, this

2     principle of New York law applies."

3            So, getting back to Northwestern Mutual, the Long

4     Island case, that's the situation that was presented in

5     Northwestern Mutual.  And I think with all due respect, Mr.

6     McGaan, I think, got the facts slightly wrong.  There, the

7     lender did seek to foreclose but there was no effort by the

8     borrower to prepay.

9            The question the Court was addressing there was

10    the interpretation of what's referred to -- I'm certainly

11    not an expert in these -- but referred to as an evasion

12    clause.  A provision that says that if a lender has started

13    foreclosure proceedings and before the foreclosure is

14    completed, the borrower seeks to exercise its right to pay

15    off the loan and take back the property, that that act would

16    be deemed an effort to evade its prepayment obligations and

17    a prepayment premium would be do.

18           And what the Court in Northwestern Mutual

19    concluded was that that provision only applies to efforts by

20    a borrower to prepay before the foreclosure and does not

21    entitle the lender to a prepayment premium upon foreclosure.

22    And the proposition that the Court articulated was you

23    cannot as a lender institute foreclosure proceedings and

24    then say, "In the foreclosure I'm entitled to a prepayment

25    premium" unless that's specifically written.

1          Notably, the Court there held that a premium

2     would've been due if the borrower had sought to pay after

3     the acceleration but prior to the foreclosure.  And,

4     similarly, the Southside House case was another situation

5     where the lender had sought -- I mentioned this before --

6     had instituted foreclosure proceedings and, therefore, the

7     lender had taken affirmative action to try and seek early

8     payment.

9          So, I don't mean, Your Honor, to reargue the first

10    lien make-whole place and I realize that I'm coming

11    perilously close to that line because for purposes of the

12    argument today I have to accept Your Honor's holding in the

13    summary judgment decision on the first lien adversary

14    proceeding that, quote, "Under New York law, an indenture

15    must contain express language requiring payment of a

16    prepayment premium upon acceleration." And elsewhere Your

17    Honor did use the phrase "express language requiring payment

18    of a prepayment premium following acceleration," which is

19    the situation I'm talking about now.

20         Let me go back to the rule of explicitness for a

21    moment.  As I said, there's no New York Appellate law on

22    this issue but in creating the high bar for make-wholes

23    after automatic acceleration, I believe, and I think I

24    suggested this to Your Honor before, that courts like Judge

25    Drain and Momentive, and Your Honor as well, I think, seem

1    to be applying an analogy to the rule of explicitness.  But

2    the rule of explicitness -- the situation in Southeast

3    Banking, where the New York Court of Appeals held that New

4    York shared the Bankruptcy Code policy against collecting

5    post-petition interest at the expense of junior creditors.

6              Here, we and other courts have only been

7    speculating about what the New York Court of Appeals would

8    say about what New York policy is concerning the payment of

9    make-wholes and bankruptcy.  And based at least on

10   Northwestern Mutual, I think there's a good argument that

11   the speculation is well-founded for setting a high bar for

12   lenders who affirmatively seek to compel prepayment while

13   also seeking a prepayment premium.

14             But I don't think there's any reason to

15   believe that New York would have the same prejudice against

16   preserving the rights of lenders to collect prepayment

17   premiums after automatic acceleration.  I think that the

18   actual policy in New York that's reflected under the Rule of

19   Perfect Pender is to generally prefer -- generally presume

20   that lenders are entitled to full performance under the

21   notes.

22             So if there were to be any presumption as to the

23   question of what your courts would require to preserve the

24   right to collect a prepayment premium upon a payment after

25   automatic acceleration in bankruptcy, I think New York

1    courts would very likely rule the other way.  That the

2    presumption should be if the parties intend to give the

3    borrower in that circumstance an option to prepay, they need

4    to say that explicitly.

5          Here, what was said in our venture is that upon

6    acceleration, principal, interest, and premium if any, are

7    due together with any other monetary obligations.  I

8    respectfully submit that the words principal, premium if any

9    are logically read to reflect that if, as a result of the

10   debtor's actions after automatic acceleration a make-whole

11   is triggered, that's part of the claim.

12         We've already noted that applicable premium

13   would've been too narrow.  Excuse me a second.  Let me go at

14   it this way.  In parsing those words, "premium if any" --

15   two parts: The first is the word premium.  I think the

16   debtors have kind of skipped over this.  We've already

17   established those four explicitly bargained for words as a

18   matter of contract interpretation.

19         That word premium must have some meaning.  It must

20   refer to something.  And there's nothing in the indenture

21   that the word premium can reasonably be construed to refer

22   to other than the prepayment premium set forth in Section

23   3.07.  The applicable premium and the fixed premium.  And I

24   don't think the debtors have really offered anything by way

25   of explanation as to what alternatively it could mean.

1           At one point they suggested well, it could refer

2     to the 101 percent tender premium required upon a change of

3     control, but that wouldn't actually be an obligation of the

4     debtor to pay; it would be an obligation of the debtor to

5     make a tender offer.

6           So that's not actually a premium.  It's also

7     implausible in the extreme to believe that the parties

8     negotiating what would happen in the event of a bankruptcy

9     and automatic acceleration would contemplate the possibility

10    that a change of control had been triggered immediately

11    prior to the bankruptcy filing, and then there was a

12    bankruptcy filing.

13          So, the only thing the word premium -- I submit

14    the only thing the word premium could reasonably be

15    interpreted to refer to are the premium 103.07.  Then you

16    get to the words "if any" -- a lot of discussion about what

17    the words "if any" mean.  And there the debtors note that in

18    our papers we only pointed to one possibility for the word

19    "if any", which was we said, well, the accelerating might be

20    rescinded.  But that was only by way of example.  And I

21    don't see any conflict between what we pointed to and what

22    the pix pointed to, which was an alternative example.

23          Another example, Your Honor -- well, I guess the

24    pix example was one that came to my mind, which was when you

25    write the indenture you have no idea when this automatic

1    acceleration might be triggered.  It could well be triggered

2    at any point in the life of the loans, life of the notes,

3    when no premium at all was good.  But the most important,

4    most fundamental thing that the words "if any" reflect is

5    the fact that acceleration itself does not trigger the make-

6    whole under this language.  That trigger only occurs when

7    and if the borrower seeks to prepay.  Prepayment under 3.07

8    -- prepay...I'm using the world prepay loosely -- payment

9    before the state of maturity date is a necessarily trigger

10   to the make-whole under my interpretation of this.  So, "if

11   any" means the premium, if the event comes, payment before

12   the maturity day, that would trigger the make-whole.

13          So, I think -- if you'll just give me a second,

14   Your Honor, I think that basically brings me to the end of

15   my discussion of how to interpret "premium, if any".  In

16   summary, as a matter of basic contract interpretation, you

17   have to give the words some meaning.

18          You can't consider it a catchall, as we observed,

19   because you already have another catchall in there.  "Any

20   other monetary obligation".  It's hard to imagine something

21   that's more classically a catchall.  And it's also hard to

22   believe in light of the parol evidence, making reference to

23   that, that the parties would have negotiated exclusively for

24   the inclusion of a couple of new catchalls.  How would that

25   have had any economic significance?

1          You have to give it some meaning, and the most

2     logical meaning, the meaning that courts with policy and

3     what rational parties at an arm's length would have given it

4     is that the make-whole is triggered when and if the debtor

5     chooses to prepay the notes -- but not triggered by the act

6     of filing itself.

7          Your Honor, in Momentive, Judge Drain did construe

8     the exact same words, "premium, if any".  The only thing I

9     can say to distinguish Momentive is that that indenture did

10    not also have the words "any other monetary obligations",

11    which made it easier to construe "premium, if any" as a

12    catchall.  The only other thing I can say about it with

13    respect is, it's not controlling and I don't think that

14    Judge Drain appropriately took cognizance of this

15    distinction that I'm making.  And I think he was focused on

16    New York law that really addresses what would've happened if

17    you interpreted an indenture to require a make-whole by

18    virtue of the very fact of bankruptcy filing.

19          I want to turn to just one other issue, Your

20    Honor, which is that in our complaint and in our summary

21    judgment motion, we sought summary judgment that the EFIA

22    second lien note claims also include the indentured

23    trustee's fees and expenses under the terms of the

24    indenture.  The debtor's response, and I'm not paraphrasing

25    -- this is actually the heading, is that the indenture says

1    what it say.  But, Your Honor, the debtors -- since the time

2    I think they put in that response maybe -- they amended

3    their plan to acknowledge that the second lien note claims

4    include the indentured trustee's pre-effective date fees and

5    expenses, subject to reasonableness, but expressly cut off

6    the indentured trustee's fee and expense claims post-

7    effective date.

8             That's an anticipatory repudiation of the plain

9    obligation under the indenture.  The fee and expense right

10   is ongoing and it is an impairment issue, we will raise it

11   as an impairment issue, but it is also an anticipatory

12   repudiation and breach of the contract.  And it's a breach

13   of straightforward contract language.

14            The indenture provides them the clearest possible

15   terms, the indenture-trustee's right to fees and expenses;

16   it also provides the debtor's obligations under the

17   indenture cannot be satisfied and discharged so long as

18   there are potential fee and expense claims outstanding and

19   ongoing.

20            So, I think it is ripe for decision now.  I don't

21   see any reason, and I don't think the debtors have offered

22   any reason why judgment should not be entered -- that the

23   debtor is obligated to pay the trustee's reasonable fees and

24   expenses without regard to the effective date.  And I think

25   a holding such as that might help the debtors make the

1   changes that they are inevitably going to have to make to

2   the plan in order to render us unimpaired.  And with that,

3   Your Honor, I pass the podium, unless you have any

4   questions.

5              THE COURT:  I do not.  Can we take a short recess,

6   Mr. Qureshi, before I turn it over to you?

7              MR. QURESHI:  Sure, Your Honor.  I have about a

8   minute but that's fine.  We can do it afterward.

9              THE COURT:  Oh, a minute we can do.

10             MR. QURESHI:  Okay.  Very briefly, Your Honor, for

11  the record, Abid Qureshi, Akin, Gump, Strauss Hauer & Feld

12  on behalf of the PIK note trustee.

13             Your Honor, because our indenture language is in

14  all respects relevant to today's hearing identical to the

15  second lien, I really don't have anything to add to Mr.

16  Horowitz's argument or to the papers, except, Your Honor, to

17  make one brief point.

18             And that is with respect to parol evidence, should

19  Your Honor decide that it is inappropriate in the

20  circumstances here to consider that evidence -- and to be

21  clear, we think Your Honor should consider it -- but I just

22  want to make the point that I don't think the exclusion of

23  that evidence is at all determinative of this issue in the

24  debtor's favor.

25             And for this reason, Your Honor, clearly Your

1    Honor has before the fact that the first lien indenture came

2    first in time.  The second line indenture and the PIK

3    indenture were entered into subsequently.  And we know that

4    the additional nine words that we've been talking about here

5    came later in time.

6              And so, Your Honor, from that can draw the

7    conclusion and indeed must under New York principles of

8    contract interpretation give effect to those nine additional

9    words.

10              So I think it is of significance all by itself and

11   without any parol evidence that there is a first lien

12   indenture that does not have those nine words, and

13   subsequent indentures that add those words.  That's all I

14   have by way of addition, Your Honor.  Thank you.

15              THE COURT:  Thank you.  Mr. McGaan, can we take a

16   break before your reply?

17              MR. MCGAAN:  Yes, sir.

18              THE COURT:  All right, thank you.

19              THE CLERK:  Short recess.

20              [BREAK]

21              MR. MCGAAN: Andrew McGaan for the debtors again,

22   Your Honor.  Thank you.  A few points in response to Mr.

23   Horowitz's argument.

24              As I understand it, he's announced or urged upon

25   the Court a new principle of New York law, which would hold

1    that the parties need to provide in a provision like 602, a

2    default and acceleration provision, explicit language

3    precluding make-whole, yield maintenance, call premium type

4    remedies or it's otherwise enforceable.

5              There's no New York court that has ever said that.

6    AMR, which I believe Mr. Horowitz referred to sort of in

7    connection with that argument but didn't go so far as to say

8    that the court in AMR either below or in the Second Circuit

9    said anything like that, because it didn't.

10             But the indenture there had a "there shall be no

11   make-whole" type language.  But nowhere says that it's a

12   principle of New York law that a make-whole's due if you

13   don't say something like that.  There's no New York lawyer

14   sitting as a judge on any federal bench who's ever announced

15   any principle like that.

16             What's happening here is a basic contest over

17   contract interpretation.  The trustee's asking for a remedy

18   under a contract and you don't have a right under a contract

19   unless you can show that it exists in the contract -- in the

20   language of the deal.  So, in this setting we have

21   acceleration triggered by a bankruptcy filing under the

22   terms of the contract, making the debt due and payable

23   immediately without more.

24             And so the issue for the Court is whether an

25   optional redemption remedy, optional cap O, redemption cap R

1    -- the title of a completely separate provision in the

2    indenture 3.07.  Whether the optional indenture remedy

3    governing what's owed, if there's an early and voluntary

4    payment of the debt, is that payable when the debt's

5    automatically accelerated by the terms of the contract under

6    another provision entirely where prepayment is then neither,

7    as a matter of New York law, early or voluntary?  The answer

8    to that is no.

9           The contact doesn't provide them the remedy.  It's

10   not a question of whether there's a new principle of New

11   York law of explicit rejection of a claim they have file

12   later; the contract on its face doesn't as an initial matter

13   provide that remedy.

14          Now, New York law saws -- and there's no contrary

15   case -- that if you want to collect this make-whole early

16   payment prepayment, whatever one wants to call it remedy in

17   the acceleration setting, you need to do it clearly,

18   explicitly, and specifically.  And the idea that this Court

19   or any of the other bankruptcy courts or district courts

20   that have had to address this problem in bankruptcy or

21   outside of bankruptcy in construing contracts, lending

22   agreements with acceleration clauses can't understand or

23   enforce New York law until the New York Court of Appeals

24   issues an opinion on it is just crazy.

25          That's just not how the law works.  There's

1    numerous -- enumerable issues, I should say, which the New

2    York Court of Appeals may have not rendered an opinion on.

3              The New York...  I grew up in Connecticut across

4    Long Island Sound.  From Nassau I find it humorous to say

5    it's a trial court out in Long Island.  It plays to a

6    prejudice that some people had that I grew up with.

7              But I think the New York courts, whether they're

8    in Long Island or not, are perfectly capable and maybe more

9    expert in interpreting New York law than many other courts.

10   And it is a source that Your Honor has relied on, other

11   federal courts have relied on, and should -- absent a court

12   in New York, a higher court saying the law is different.

13             Now, Mr. Horowitz proposes what struck me as also

14   a new interpretive framework here to try to understand these

15   indentures.  And he says, "Well, the parties agreed..." --

16   this is describing what the essence of the deal is here that

17   was reached in the indenture -- "The parties agreed that the

18   filing of Chapter 11 does not alter the parties' rights

19   under the contract".  I don't know where that comes from.

20   The contract doesn't say that anywhere.

21             But even so, it's a complete red herring.  The

22   parties incorporated, yes, they incorporated in the contract

23   language references to certain contract consequences if

24   there was a Chapter 11 filing.  Mainly, default provisions

25   and acceleration upon default.

1          And specifically with respect to contractual

2     acceleration upon a Chapter 11 filing -- there's a carve out

3     from the rights and remedies with respect to other kinds of

4     acceleration.  Because here, the acceleration is automatic,

5     without more -- without notice, without taking any action.

6     And it makes the debt due and payable immediately.

7          So, when it's paid under those circumstances, it's

8     neither optional nor early, which makes a payment of the

9     kind being proposed in the plan -- so partial payment of the

10    second lien notes has occurred already in this case, a plan

11    now providing for the payment of the rest of their accrued

12    interest and principal.

13         Same with the PIK notes.  It makes that kind of

14    payment, to the extent it's happened in bankruptcy now after

15    the automatic acceleration or will happen, completely

16    incompatible with the option redemption described in Section

17    3.07 and that's where the requirement of explicitness comes

18    from.  They're completely incompatible.

19         There is no way to assume that the parties meant

20    without saying so that under 602 acceleration the optional

21    redemption provisions that provide for payment in a

22    completely different setting apply here.

23         Mr. Horowitz mentioned the United Merchants case,

24    which, I thought he was suggesting that they had cited for a

25    very different proposition than the one they actually do,

1   but in their brief -- this is Page 8 of their summary

2   judgment memorandum -- courts have recognized that

3   sufficiently expressed make-whole provisions are enforceable

4   even after acceleration and even in bankruptcy, citing

5   United Merchants in the Second Circuit in 1982.  And they go

6   on to argue that premium, if any, satisfies that requirement

7   under New York law, of being sufficiently express.

8            So, in that sense, they acknowledge it but, of

9   course, when you look at the language that was in front of

10  the Court in the United Merchants, it doesn't come anywhere

11  close to being that either sufficient or express on any

12  level.

13           I neglected to mention the 12th claim.  When I

14  talk about the remedies that the debtors were seeking, the

15  12th claim -- and Mr. Horowitz brought it up and that's with

16  respect to their claim for fees and expenses.  To clarify:

17  The second lien trustee is seeking summary judgment on Claim

18  Number 12.

19           We are not seeking -- the debtors are not seeking

20  judgment on that here.  We've not filed for summary judgment

21  on it.  We simply ask the Court to deny the request for

22  summary judgment that the second line trustee is seeking.

23  And I thought -- this is the first I've heard about this

24  dispute about whether the, at least in this setting, in the

25  papers here -- about whether fees and expenses are owed

1    post-effectiveness, which now Mr. Horowitz is raising and

2    asking Your Honor to rule on.  That's not...I don't see it

3    and I stand to be corrected -- I don't recall seeing that in

4    their motion, and I'm looking at the short argument they

5    have on it.  And so that would be something utterly new.

6            It also sounds like that would be appropriate to

7    address in the context of confirmation.  Our position is

8    simply this: Yes, the indenture says what it says.  I'm not

9    sure how the Court enters judgment in favor of the trustee

10   on whether in the abstract you're entitled to fees or

11   expenses when we don't know what they are.

12           There may be circumstances when they put in front

13   of the debtors fees and expenses that are simply not

14   recoverable here.

15           So that's what we mean.  Not to be flip.  It says

16   what it says, but let's see what those fees and expenses

17   are.  And if there's going to be new claims that aren't in

18   the summary judgment notion for post effectiveness...  It's

19   the first I've heard of that angle -- we ought to be able to

20   talk them about it and see whether that's something we...  I

21   think we do but it's something that's not in the papers

22   here.

23           And so we just urge Your Honor deny it -- deny it

24   without prejudice.  This is an issue that I think we ought

25   to address when we know the full scope of the fees and

1     expenses they're seeking, so we can see if we have a dispute

2     and to what extent.  That's all I have, Your Honor.

3                THE COURT:  Thank you.

4                MR. HOROWITZ:  I'm only going to reply on our --

5     on the fees and expenses issues, where we're the movant --

6                THE COURT:  Okay.

7                MR. HOROWITZ:  -- because I don't have a reply on

8     the other issues.  Just to clarify, the reason that the

9     post-effective date fees issue wasn't raised in the motion

10    is that it didn't come up until the debtors amended their

11    plan to provide the -- they will pay our fees, subject to

12    reasonableness, up to the effective date, but they're

13    deeming the indenture dissatisfied and discharged as of the

14    effective date and will not allow any fee claims thereafter.

15    I don't think, respectfully, it's an answer to say let's see

16    what their fee claims are, because that the plan proposes --

17    it is an anticipatory repudiation, is we're not even going

18    to look at your fees after the effective date.  Those are

19    disallowed.

20               Your Honor, just to put a point in time, the

21    reason it's important to us is, as you may recall, we're

22    currently in a lawsuit against the first lien indenture

23    trustee.

24               THE COURT:  Yes.

25               MR. HOROWITZ:  The inter-creditor litigation.

1    That's going to continue, and it will almost certainly

2    continue after the effective date.  And it is exactly within

3    the scope, undisputedly within the scope of what's covered

4    by the in-expense provision.

5            I don't think the debtors have any grounds for

6    saying, "After the effective date, we're not paying any of

7    your fees and expenses." Not subject to reasonableness, not

8    "let's see what they are" -- "We're not paying." And that's

9    why I think that's ripe and appropriate.

10           I would welcome a discussion with the debtors.

11   I've never understood the basis for this position.  But

12   until they change their position, I think we're entitled to

13   summary judgment on it.

14           THE COURT:  Okay.  Anything else on this argument?

15           MR. SHORE: Not on this argument but tangentially

16   related, Your Honor.

17           THE COURT:  All right.  I will take the matter

18   under advisement and issue an opinion as soon as possible,

19   and I anticipate without promising to be able to do so

20   before confirmation starts.

21           MR. MCGAAN: Thank you.

22           MR. SHORE: Your Honor, Chris Shore from White &

23   Case on behalf of the ad hoc TCH noteholders.  Following up

24   on an announcement last week regarding a deal with PIK

25   holders.  The signature pages are now in on a deal between

1    the plan sponsors, Avenue and GSO.  Those are two PIK

2    holders who hold, approximately, 42 percent of all PIK

3    claims.  The PSA requires them to support the Fifth Amended

4    plan in their capacity as PIK holders.

5              Under the terms of the deal, the PIK plan

6    treatments stay the same.  There will be a payment of an

7    allowed claim at consummation.  But for plan purposes the

8    allowed claims of the settling holders would include all

9    principal and prepetition interest, plus allowed claims for

10   post-petition interest as follows: 57.5 percent of contract

11   non-default rate post-petition interest plus a consent fee

12   equal to an additional 2.5 percent of the PPI.

13             The settling parties explicitly agree that they're

14   allowed claims will not include anything else, including any

15   right to claim of prepayment premium or make-whole.

16             The settling parties will also be signing an

17   instruction to the PIK trustee to enter into the PSA and

18   stand down, which will become effective if we can get from

19   between 42 up to 50.1 percent of the holders of the notes.

20   The debtors, to be clear, are not onboard yet with that

21   settlement and are not making any offers to anybody, but the

22   deal has been -- and assigned PSAs have been presented to

23   the debtors and the other PSA parties and we hope to have

24   sign off in the near future.

25             We're working with the debtors and the others to

1    get any appropriate approvals and hope to get them done very

2    quickly.  We will be filing a notice of the proposed terms

3    with the Court today, to make clear that I'm not botching it

4    on the terms.  But if approved, and if acceptable to the

5    Court, we'd like to present an order approving the

6    settlement with whatever settling noteholders are ready

7    prior to the Wednesday hearing on PPI, because obviously

8    that will go to the post-petition interest issue.

9              The debtor's making no promises that they'll be

10   able to get any necessary approvals by next Wednesday.  We

11   hope the eight days is enough.  And, if so, we'd like to

12   proceed just by presenting an order.  And that can take off

13   the table any of the settling parties before the Court hears

14   argument on post-petition interests.

15             THE COURT:  All right, well, I'm not going to be

16   in a position to tell you whether I'm going to sign an order

17   until I see papers on an order.  So I can't make any

18   promises.

19             MR. SHORE:  Yes, Your Honor.

20             THE COURT:  And there may be people that object to

21   the timing.

22             MR. SHORE:  Right.  And from our perspective, the

23   settlement falls within the range of what the debtors were

24   requesting in the objection and what they parties have

25   requested in their proof of claim.  So we think we can

1    address the issue of notice and right to be heard at that

2    point.

3            THE COURT:  Okay.

4            MR. SHORE:  Thank you.

5            Mr. MCGAAN:  Andrew McGaan for the debtors, Your

6    Honor.  My restructuring colleagues are being kept apprised

7    on a very real time basis as this is moving quickly, and Mr.

8    Shores says the debtors aren't on board yet.  I think what

9    he means, not that the debtors are opposed -- they're very

10   much in favor of objecting parties resolving differences,

11   their economic differences particularly when they're not

12   using debtors' currency to do so.

13           But we need to see the papers, we need to see the

14   agreements, and we're poised to look at those very, very

15   quickly so as not to slow things down, and be able to take a

16   position as quickly as possible on that.  But it certainly

17   sounds hopeful from a big picture perspective.

18           THE COURT:  All right.  But as I sit here today,

19   we're still going forward on the 28th on argument on the

20   post-petition interest?

21           MR. QUERESHI:  Your Honor, again, Abid Qureshi,

22   Akin Gump, on behalf of the PIK trustee.  Yes.  And to be

23   clear, the PIK trustee is not a party to any of the

24   settlements that Your Honor heard from Mr. Shore.  So, from

25   our perspective, it is full steam ahead on the 20th.

Page 75

1          THE COURT:  Okay.  Very good.  Thank you.

2    Anything else for today?  All right, thank you very much for

3    your arguments.  I truly appreciate them.  We're adjourned.

4

5                            * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 76

1                   C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6

7

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  October 21, 2015

**&**

**&**  3:3,9,14 4:1,10
 4:21 6:1 38:14
 62:11 71:22

**1**

**1**  2:4 22:1
**1-7**  38:2
**1.02**  24:14 25:6
**10**  38:2
**101**  58:2
**103.07.**  58:15
**10:00**  1:15
**11**  1:3 12:6 36:12,18
 39:21 66:18,24 67:2
**11501**  76:23
**11:59**  1:15
**11th**  44:6
**12**  68:18
**12-13**  21:1
**12th**  68:13,15
**13**  39:21
**13-14**  36:12
**14-10979**  1:4
**18**  49:20
**1982**  26:4,12 45:19
 68:5

**2**

**2**  2:5
**2.5**  72:12
**20**  1:14 23:10
**2006**  26:3
**2012**  23:22 24:5
**2014**  22:1 31:25
 32:8
**2015**  1:14 9:21
 76:25
**2016**  48:24
**2018**  18:5,6
**2019**  2:8,10
**20th**  74:25
**21**  76:25
**26**  9:21
**28th**  74:19

**3**

**3**  2:5
**3.02**  16:11,18
**3.07**  11:14 12:12
 14:1,7,11,12,18,22
 15:11,13 16:22 17:6
 18:9 19:9,19 21:22
 22:1,21 24:2 25:8
 25:15 26:9 35:13
 36:3 38:10 42:13
 49:6 50:21 59:7
 67:17
**3.07.**  15:13 17:15
 20:10 28:25 57:23
 65:2
**3.1**  24:19 25:3
**300**  76:22
**30b6**  52:6
**330**  76:21
**334**  32:8
**3:00**  41:16

**4**

**4**  2:5
**42**  72:2,19
**45**  15:6
**46**  37:17
**48**  30:18

**5**

**5**  2:6
**5.5**  49:1
**50.1**  72:19
**502200780**  2:14
**503203470**  2:15
**51**  13:18
**57.5**  72:10

**6**

**6**  10:18
**6.01**  10:18
**6.02**  10:4,6,14 12:10
 13:23 14:5,6,6 15:8
 15:10 16:23 17:1
 18:10 19:4,7 20:3
 20:20 22:4 24:2,23
 26:8 27:20 28:11,18
 30:24 33:21 36:1,9

 36:10,17 37:11,20
 41:25
**6.02.**  14:20 15:14
 36:5
**602**  64:1 67:20
**6347**  38:7

**7**

**7**  10:18

**8**

**8**  68:1
**8.2**  26:19
**824**  1:11

**9**

**9**  32:8 38:2
**92nd**  24:4
**9th**  31:25

**a**

**abid**  6:5 62:11
 74:21
**ability**  44:24
**able**  26:24 69:19
 71:19 73:10 74:15
**absence**  35:17
**absent**  11:19 24:8
 26:25 53:14,18
 66:11
**absolutely**  13:8
 19:8,13 36:21 44:15
**abstract**  69:10
**accelerate**  53:15
**accelerated**  17:2
 28:18,19 36:18
 53:23 65:5
**accelerating**  50:16
 58:19
**acceleration**  10:4
 10:15,17 11:20
 12:10 13:13,21 14:5
 14:14,19 15:2,7,10
 16:23 17:1,10,17
 18:1,18 19:7,21
 20:20 22:18 23:4,23
 23:24 24:7,7,20,22
 25:4,10,16 27:24,25
 28:5,9,13 29:5,9,16

 30:8 31:10 33:22
 36:9,20 37:6 39:15
 42:11 43:1 44:23
 45:13,17,21 47:22
 47:24 48:1,18 49:12
 50:8,15,21 51:3
 52:15 53:5 55:3,16
 55:18,23 56:17,25
 57:6,10 58:9 59:1,5
 64:2,21 65:17,22
 66:25 67:2,4,4,15
 67:20 68:4
**accept**  55:12
**acceptable**  73:4
**accomplish**  40:23
 48:21
**accrued**  49:25 50:1
 50:24 67:11
**accruing**  49:21
**accurate**  76:4
**achieve**  26:25 27:1
**achieving**  29:25
**acknowledge**  61:3
 68:8
**act**  48:4 49:12
 54:15 60:5
**acted**  51:13
**action**  53:4,14 55:7
 67:5
**actions**  53:18,21
 57:10
**actual**  35:4 42:15
 56:18
**ad**  2:3,9,10 5:8,14
 6:2 71:23
**adam**  7:1
**add**  62:15 63:13
**added**  32:14
**adding**  40:24
**addition**  10:4 12:9
 26:24 31:2 37:11
 63:14
**additional**  10:20
 32:13,15 63:4,8
 72:12
**address**  36:6 39:8
 39:11,13 42:7 65:20

69:7,25 74:1
**addressed** 39:7 42:4
**addresses** 60:16
**addressing** 45:22
  54:9
**adjourned** 75:3
**adlerstein** 6:9
**administration** 1:5
**admissions** 52:7
**admitted** 32:18
**adversary** 9:10
  13:11 21:1 37:25
  38:2 55:13
**advisement** 71:18
**affirmative** 55:7
**affirmatively** 54:1
  56:12
**affirmed** 16:6
**afterward** 62:8
**agenda** 40:14,24
**agent** 4:6
**aggressively** 34:3
**agree** 13:1,3,9 19:6
  31:14 34:7 38:18
  44:10 51:9,11 52:23
  52:23 72:13
**agreed** 51:5 52:12
  66:15,17
**agreeing** 32:10,11
  34:4
**agreement** 50:13
**agreements** 65:22
  74:14
**agrees** 13:15
**ahead** 74:25
**akin** 6:1 62:11
  74:22
**al** 1:4
**alberino** 6:10
**allow** 44:14 45:13
  70:14
**allowable** 45:21
**allowed** 47:3 72:7,8
  72:9,14
**alter** 52:24 53:1
  66:18

**alternative** 58:22
**alternatively** 50:19
  57:25
**alves** 6:11
**amamoo** 6:20
**amar** 6:20
**ambiguity** 51:24
**ambiguous** 15:3
**amended** 50:11
  61:2 70:10 72:3
**amer** 7:6
**amount** 45:16 49:13
  49:19
**amr** 15:23 45:10,14
  64:6,8
**analogy** 56:1
**analysis** 15:6 43:18
**analyzing** 23:20
**anderson** 4:21
**andrew** 3:17 7:5 9:7
  41:3 63:21 74:5
**angle** 69:19
**anker** 6:12
**anna** 7:21
**announced** 63:24
  64:14
**announcement**
  71:24
**answer** 32:7 34:20
  35:6,20 44:9,9 65:7
  70:15
**answers** 32:13
**anticipate** 71:19
**anticipated** 11:12
  22:18
**anticipatory** 61:8
  61:11 70:17
**anybody** 72:21
**anyway** 52:17
**aparna** 7:12
**apologize** 40:22
**appeal** 38:25 40:1
  46:17 47:3,6,11
**appealable** 39:11
  40:12
**appeals** 44:8,17
  45:3,8 47:5,5 56:3,7

65:23 66:2
**appear** 10:5 13:25
  14:5
**appearing** 6:8 27:3
**appellate** 43:16,21
  46:11,20,22 55:21
**applicable** 9:12
  13:24 14:1,3,25
  16:12,18 19:15,17
  19:25 22:8 26:9
  32:24 33:21,22
  34:15 35:3,6,7
  38:11 42:12 46:7
  48:17,19,22,25 49:3
  50:13,20 51:3,7,12
  52:14 57:12,23
**application** 20:8
  29:19
**applied** 11:17 27:11
**applies** 9:24 37:18
  54:2,19
**apply** 11:18 27:12
  37:2 67:22
**applying** 23:1,3
  24:12 27:10 56:1
**appreciate** 43:6
  48:12 75:3
**apprised** 74:6
**approach** 44:7
  46:13
**appropriate** 69:6
  71:9 73:1
**appropriately**
  60:14
**approvals** 73:1,10
**approve** 23:4
**approved** 73:4
**approving** 73:5
**approximately** 72:2
**arguably** 50:23
**argue** 9:23 10:24
  26:6 32:17 47:4
  48:13 53:4 68:6
**argued** 16:5 24:6
**argues** 17:16
**arguing** 23:16

**argument** 13:7
  14:17 16:18,19 19:3
  19:22,22 20:17 28:5
  36:7,8,14 37:4,20
  39:14,19 40:3 41:10
  41:12,15 42:23
  47:19 55:12 56:10
  62:16 63:23 64:7
  69:4 71:14,15 73:14
  74:19
**arguments** 17:13
  39:23 75:3
**ari** 8:3
**arises** 22:13,14
**arlene** 6:11
**arm's** 60:3
**armin** 34:23,25
**arrived** 11:1 15:5
**articulated** 43:21
  54:22
**ascend** 2:13
**aside** 42:21
**asked** 32:1 34:13,18
  34:25 35:7
**asking** 18:17,20,25
  37:24 40:16 64:17
  69:2
**assert** 46:19 51:6
**assertion** 42:24
**asserts** 51:6
**assign** 22:7
**assigned** 72:22
**associates** 24:4,11
  24:13,20 25:2
**association** 23:21
**assume** 19:10 67:19
**attached** 33:11,20
**attachments** 2:4
**attempt** 29:8 49:11
**attention** 41:25
**attorney** 3:15 4:2,6
  4:11,17
**attorneys** 3:4,10,21
  4:22 5:2,8,14,19 6:2
**authority** 44:19
**automatic** 10:16
  16:1 17:21 36:9,20

37:6 39:14 42:10
44:23 45:13,21 53:5
55:23 56:17,25
57:10 58:9,25 67:4
67:10
**automatically** 36:17
65:5
**available** 12:16,20
31:1
**avenue** 2:3 72:1
**awarded** 29:3
**aware** 43:11

**b**

**b** 1:17 2:5 6:21 8:6
**back** 11:2 25:5
26:12 28:21 34:16
50:11 54:3,15 55:20
**bad** 34:6 51:15
**balance** 28:2
**bank** 4:17,22 5:19
23:21
**banking** 44:9 56:3
**bankruptcy** 1:1,10
1:19 2:10,15 10:19
11:20 13:12,21
14:14,19 15:1,24
17:1,10 18:1,4,6,18
19:7,21 22:19,25
23:9 28:12 30:1
31:10 33:22 42:10
43:10 44:10,25
46:23 48:3,4,7,24
49:11 50:9 52:24,25
53:5,8 56:4,9,25
58:8,11,12 60:18
64:21 65:19,20,21
67:14 68:4
**bar** 55:22 56:11
**bargained** 48:11
51:5 52:3,19 57:17
**baroque** 17:22
**barrett** 7:15
**barry** 7:16
**bartley** 2:11
**based** 11:9 15:20
46:18 56:9

**basic** 59:16 64:16
**basically** 59:14
**basis** 23:16 33:4
35:24 46:15 71:11
74:7
**bear** 33:9
**bearing** 32:23 34:14
**bears** 27:6
**begins** 14:10 15:6
**begs** 18:24
**behalf** 2:13 38:15
62:12 71:23 74:22
**belabor** 36:22
**belief** 9:20 46:19
**believe** 10:23 11:8
12:8,25 15:17 22:13
24:24 31:16 32:14
32:22 35:2,3,5,5
55:23 56:15 58:7
59:22 64:6
**believed** 34:10,14
**bench** 64:14
**benefit** 35:1
**benefits** 29:9
**best** 49:7
**big** 74:17
**binding** 45:5
**bird** 2:6
**bit** 27:6
**bitzin** 6:13
**board** 74:8
**boilerplate** 53:5
**boller** 6:6
**bore** 16:8
**borrowed** 52:9
**borrower** 28:2
29:12 48:3,10 50:18
51:8 52:25 53:7
54:8,14,20 55:2
57:3 59:7
**botching** 73:3
**boundaries** 20:22
**breach** 12:1,3 61:12
61:12
**break** 63:16,20
**brian** 7:3

**brickley** 6:14,22
**brief** 14:10 20:24
26:14 32:6 36:13,22
39:20 42:11 53:3
62:17 68:1
**briefing** 32:20
36:11 37:23
**briefly** 31:12 36:6
39:8,21 42:7 51:16
62:10
**briefs** 17:12 32:14
**bringardner** 6:21
**brings** 47:13 59:14
**broad** 18:16
**brody** 3:7
**brought** 33:9 68:15
**bullet** 23:10
**burden** 38:19

**c**

**c** 2:5 3:1 9:1 76:1,1
**calculated** 19:10
48:8 49:14,18 50:10
50:14
**call** 12:1 14:13,15
14:24 18:5 19:9,23
22:9,11 24:1,2,15
24:16 25:23 31:24
38:10 64:3 65:16
**called** 19:25 22:2
24:18 28:7
**calls** 20:8 37:1
**cap** 64:25,25
**capable** 66:8
**capacity** 5:3 72:4
**capital** 2:2,3 19:16
19:16
**capitalized** 15:12
**caps** 48:17
**capstone** 29:23
**careful** 40:4 43:18
**carefully** 14:2
**carl** 7:8
**carlos** 10:10
**carpenter** 4:1
**carter** 6:23
**carve** 67:2

**case** 1:4 5:13 14:3
15:23 20:4 21:19
22:24 23:13,13
24:10 25:7 26:2,3
26:12,22 27:9 30:5
30:15 31:6 35:22
39:4 40:4 42:20
43:13,14 45:18,19
50:6 53:9,19 54:4
55:4 65:15 67:10,23
71:23
**cases** 11:21 20:11
20:16,24 21:2 22:25
23:3,3,20 25:17,22
25:25 26:6 30:19
43:8,10 45:25
**catchall** 21:5,10
59:18,19,21 60:12
**catchalls** 59:24
**category** 39:16
**certain** 9:11 19:25
20:1 37:1 66:23
**certainly** 13:3 54:10
71:1 74:16
**certification** 45:1
**certified** 76:3
**certifying** 44:8
**cfo** 33:14
**chambre** 30:20
**change** 32:4 36:25
36:25 37:21 58:2,10
71:12
**changes** 62:1
**chapter** 1:3 12:6
36:18 66:18,24 67:2
**charge** 24:18 26:15
**charles** 8:1
**chooses** 60:5
**chris** 5:16 31:20
71:22
**christopher** 1:18
6:23
**circuit** 26:4,12 44:6
44:18 45:1,1,6,19
64:8 68:5
**circuit's** 45:10

**circumstance** 29:12
  34:8 57:3
**circumstances**
  14:22 16:2 21:9
  27:13 31:23 33:23
  48:14 53:22 62:20
  67:7 69:12
**cite** 30:18 31:6
  53:19
**cited** 20:24 21:2
  24:10 25:23 31:16
  43:8 45:6,8,25
  53:10 67:24
**cites** 24:4
**citibank** 4:6
**citing** 23:20 30:5
  68:4
**claim** 2:13 9:18,22
  12:1,3,3,4 13:11
  21:18,20 22:3 38:4
  38:6,7,7,9 39:3 44:2
  49:17 50:1,2,9,11
  50:24 57:11 65:11
  68:13,15,16,17 72:7
  72:15 73:25
**claimed** 50:8
**claims** 2:2 14:2
  46:12 47:2 49:24
  60:22 61:3,6,18
  69:17 70:14,16 72:3
  72:8,9,14
**clarify** 68:16 70:8
**clarity** 26:25 30:14
**classically** 59:21
**clause** 10:5 12:10
  14:5 16:23 24:14,21
  25:4,7 27:23,24
  28:1,5 29:5,21 30:8
  32:1 36:10 39:15,15
  54:12
**clauses** 14:6 30:6
  37:2 65:22
**clear** 12:10 13:19
  17:8 18:11,14 19:13
  21:21 22:3 30:13
  38:17 40:11 42:9
  44:15 47:4,22 62:21

  72:20 73:3 74:23
**clearest** 44:3 61:14
**clearly** 17:15 20:4
  45:15 47:8 62:25
  65:17
**clerk** 9:2 63:19
**close** 16:3 19:16
  29:25 55:11 68:11
**closely** 13:23 27:6
**coco** 6:15
**code** 36:25 44:5
  56:4
**cody** 6:18
**cognizable** 12:2
**cognizance** 60:14
**cohen** 4:8
**colleagues** 74:6
**collect** 53:15,16
  56:16,24 65:15
**collecting** 56:4
**come** 17:13 19:14
  51:1 68:10 70:10
**comes** 29:25 32:7
  59:11 66:19 67:17
**coming** 55:10
**commercial** 27:22
**committee** 2:9,11
  6:2
**common** 15:21 21:3
**communication**
  41:1
**company** 5:2
**comparable** 28:24
**comparably** 25:15
**compel** 9:24 56:12
**compensate** 48:9
**complaint** 9:13 38:3
  39:7 60:20
**complete** 35:16
  66:21
**completed** 54:14
**completely** 9:17
  21:13 24:8 35:15
  65:1 67:15,18,22
**computer** 38:15
**concerning** 56:8

**concluded** 54:19
**conclusion** 25:18
  29:15 31:2 37:12
  63:7
**conclusions** 11:1
**conditions** 25:6,9
**confine** 41:9
**confirmation** 41:22
  46:13,25 47:9 69:7
  71:20
**conflict** 58:21
**conflicting** 18:8,12
**conform** 20:6
**confronted** 24:12
**confusing** 18:8,13
**confusion** 39:9
  40:22
**connecticut** 66:3
**connection** 33:15
  38:21 42:5 64:7
**consent** 72:11
**consequences** 49:10
  66:23
**consider** 59:18
  62:20,21
**consistent** 14:20
**constitute** 11:12
  28:15
**construe** 13:2,16
  31:15 53:4 60:7,11
**construed** 10:2 16:7
  21:15 23:12 30:4
  57:21
**construes** 31:7
**construing** 15:25
  65:21
**consummation** 72:7
**contact** 65:9
**contain** 23:14 29:18
  42:25 55:15
**contained** 24:15,21
  27:22,23 30:3
**contemplate** 58:9
**contemporaneous**
  33:12 34:2
**contention** 52:22

**contest** 64:16
**context** 29:22 69:7
**continue** 48:7 71:1
  71:2
**continuing** 38:25
**contract** 20:23 21:3
  51:18,23 53:14,18
  57:18 59:16 61:12
  61:13 63:8 64:17,18
  64:18,19,22 65:5,12
  66:19,20,22,23
  72:10
**contract's** 51:19,21
**contracts** 65:21
**contractual** 12:11
  67:1
**contractually** 47:22
**contrary** 35:18
  65:14
**contrast** 30:23
  43:23
**contrasted** 30:2
**contribution** 46:23
**control** 9:22 58:3
  58:10
**controlled** 26:23
**controlling** 11:23
  11:25 42:18,20,21
  60:13
**convenient** 33:7
**convinced** 46:6
**copies** 11:6
**copy** 10:11
**corp** 1:4
**correct** 34:17
**corrected** 69:3
**correctly** 30:21
  51:13
**corroborates** 34:9
**corroon** 4:21
**counsel** 9:8 11:6
**country** 76:21
**counts** 38:2
**couple** 20:2 23:9
  59:24
**course** 26:14 30:10
  40:1 46:4 68:9

**court** 1:1,10 9:3,6
10:12 15:6,23,24
18:15 19:14 22:6,13
22:25 23:19 24:10
25:2 26:3 27:7,8,16
29:2,7,11 30:1,1,6
36:24 38:5,12 39:1
39:7 40:20,22,25
41:6,8,19 42:3
43:13,15,22 44:8,17
44:18 45:3,5,8,11
45:15,22 46:1,8
47:5,17 54:9,18,22
55:1 56:3,7 62:5,9
63:15,18,25 64:5,8
64:24 65:18,23 66:2
66:5,11,12 68:10,21
69:9 70:3,6,24
71:14,17 73:3,5,13
73:15,20 74:3,18
75:1
**court's** 29:15 38:19
38:20 41:25
**courts** 12:22 43:10
44:10 55:24 56:6,23
57:1 60:2 65:19,19
66:7,9,11 68:2
**covered** 71:3
**crazy** 65:24
**create** 12:10 16:20
51:4
**creating** 55:22
**creditor** 44:1 70:25
**creditor's** 44:2
**creditors** 2:10,11
44:12,13 56:5
**cross** 9:13 14:21
**crucial** 42:16 47:9
**css** 1:4
**currency** 74:12
**currently** 43:11
46:7 47:1 70:22
**cut** 31:4 35:20
46:17 61:5

**d**

**d** 2:5 8:3 9:1
**damages** 12:4 45:23
**daniel** 4:13 6:24
7:23
**date** 18:5 19:25
20:1 47:3 48:10
49:14,19,22,25 50:1
50:11,15,25 59:9
61:4,7,24 70:9,12
70:14,18 71:2,6
76:25
**date's** 17:2
**david** 4:4 7:14
**davis** 3:12
**day** 39:11 59:12
**days** 73:11
**deal** 64:20 66:16
71:24,25 72:5,22
**dealing** 23:7
**dearth** 46:11
**debate** 11:16,16
12:24 15:15
**debating** 11:24
33:16
**debenture** 5:2
**debt** 11:11 28:17
36:18 64:22 65:4
67:6
**debt's** 65:4
**debtor** 4:11 52:6
53:25 58:4,4 60:4
61:23
**debtor's** 52:6 57:10
60:24 61:16 62:24
73:9
**debtors** 1:5 3:15 4:2
9:8,14,18,20 12:5
13:9 14:15 32:10,11
32:18,25 37:24 38:6
40:12,18 41:3 46:14
47:1 48:12 49:10,23
50:3,19,22 51:5,7
52:4,8,13 57:16,24
58:17 61:1,21,25
63:21 68:14,19
69:13 70:10 71:5,10

72:20,23,25 73:23
74:5,8,9,12
**december** 22:1
31:21,25 32:8 34:11
**decide** 62:19
**decided** 38:21 39:17
41:8 43:13,14
**decision** 16:4,6
40:10 45:8,10 46:2
46:2 55:13 61:20
**decisions** 39:2
46:20,21
**declared** 50:8
**declaring** 50:15
**deemed** 28:15 54:16
**deeming** 70:13
**default** 10:17 12:5
24:20,22 25:3,11
27:24,25 28:4,8,12
29:5,13,16 50:16
64:2 66:24,25 72:11
**defaults** 29:13
**defined** 14:2 15:11
19:9 23:23 26:15
42:11 48:17 49:3
**defines** 14:22
**definitive** 45:3
**defrancheschi** 4:13
**degree** 23:17 24:8
**delaware** 1:2,12
36:24 45:7
**deliberate** 53:6
**demonstrate** 53:22
**denhoff** 7:1
**denigrate** 43:17
**deny** 38:7 68:21
69:23,23
**denying** 40:17
**deposition** 31:19,25
32:8
**depositions** 31:20
52:5
**described** 67:16
**describing** 66:16
**desire** 45:13
**determinative**
62:23

**deutsch** 4:1
**deutsche** 4:22
**devan** 5:21
**developed** 44:6
**development** 27:10
43:24
**difference** 10:3 48:2
**differences** 10:22
74:10,11
**different** 9:9 17:13
19:23 20:2 51:22
53:12 66:12 67:22
67:25
**differentiates** 41:11
**difficult** 19:4
**dip** 4:6
**direct** 28:24 44:7,17
**directed** 41:24
**directly** 32:1 33:2
**disagree** 39:1
**disallowed** 70:19
**disappointed** 41:21
**discharged** 61:17
70:13
**discovery** 33:11
**discuss** 52:23
**discussed** 39:13
46:1 51:13
**discussion** 58:16
59:15 71:10
**disjunctive** 22:7
**dispute** 9:16,23
10:1,3,23 11:9 33:3
39:24,24 51:23
68:24 70:1
**disputed** 11:10
**disputes** 51:18
**dissatisfied** 70:13
**distinction** 47:16,20
48:12 60:15
**distinguish** 60:9
**district** 1:2 15:24
16:7 23:22 24:5,11
30:2 36:23 45:7,15
50:7 65:19
**document** 31:15
32:16

**documents** 33:12 34:2

**doing** 11:4 20:14 48:9

**dore** 7:13

**doubt** 53:23

**draft** 33:18

**drafter** 21:7,7

**drafters** 13:6 17:23 19:12 20:6

**drafting** 26:20

**drain** 16:4,21 24:24 25:18 42:23 53:20 55:25 60:7,14

**drain's** 16:10 25:20 46:2

**dramatically** 30:24 31:5

**draw** 63:6

**dropping** 17:24

**due** 11:21 13:20 15:19 16:23 17:18 17:25 18:6,7 19:15 19:20,20 22:19 24:7 24:17 25:11 28:3,20 31:23 33:21,23 42:14 45:17 47:18 47:21,25 48:19 49:1 49:2,5 50:21 54:5 55:2 57:7 64:12,22 67:6

**dunn** 7:14

**e**

**e** 1:17,17 2:6 3:1,1 9:1,1 76:1

**earlier** 26:16

**early** 16:22,24 17:1 17:4 22:16,20 28:24 36:3 38:10 53:1,2 54:1 55:7 65:3,7,15 67:8

**earn** 53:24

**easier** 60:11

**easily** 14:8

**eastern** 23:22 24:10 50:7

**easy** 26:22

**echoing** 18:19

**economic** 35:1 59:25 74:11

**ecr** 1:25

**edmonson** 3:24

**effect** 31:16 32:12 34:19 63:8

**effective** 47:3 61:4 61:7,24 70:9,12,14 70:18 71:2,6 72:18

**effectiveness** 69:1 69:18

**effort** 31:22 35:13 50:3 54:7,16

**efforts** 32:4 54:19

**efia** 60:21

**efih** 2:2 3:10 6:2 9:14,18 13:9 14:15 18:4 31:19,22 38:5 38:15

**eight** 73:11

**either** 25:21 64:8 68:11

**elaborate** 17:22

**elizabeth** 8:5

**ellis** 3:14

**emails** 34:2,5

**emily** 5:21

**emphatically** 12:15 13:7 34:3

**endorsed** 25:18

**energy** 1:4

**enforce** 65:23

**enforceable** 45:23 64:4 68:3

**english** 15:18

**ensuring** 39:10

**enter** 72:17

**entered** 61:22 63:3

**entering** 41:2

**enters** 69:9

**entire** 29:4 50:2

**entirely** 35:10 65:6

**entitle** 20:14 54:21

**entitled** 14:13,23 21:8 22:11,12,15

50:23 54:24 56:20 69:10 71:12

**entitlement** 12:11 13:10 28:6

**enumerable** 66:1

**epiq** 2:15

**equal** 37:18 72:12

**equally** 9:24

**equates** 23:6

**essence** 66:16

**essentially** 37:9

**established** 57:17

**establishes** 52:8

**et** 1:4

**evade** 29:13 54:16

**evasion** 28:15 54:11

**eve** 18:4

**event** 10:17 28:7,8 28:12 42:10 45:17 50:16 58:8 59:11

**events** 16:21,24

**evidence** 12:25 13:5 31:11 35:9,14,17,18 51:11,17,19,25 59:22 62:18,20,23 63:11

**evidenced** 28:9

**evidently** 28:1

**exact** 35:16 60:8

**exactly** 15:23 19:10 20:12 35:21,22 50:4 50:7 71:2

**example** 31:24 34:20 46:2 51:2 58:20,22,23,24

**exception** 42:6

**excerpt** 32:2

**excerpted** 27:16,24

**excerpts** 23:10 33:12

**exclusion** 62:22

**exclusively** 59:23

**excuse** 9:3 53:25 57:13

**executed** 33:5

**exercise** 54:14

**exhibit** 2:5,5,5,5,6

**exist** 21:4

**existed** 53:8

**exists** 23:5 64:19

**expected** 30:7 41:17

**expecting** 36:14

**expended** 32:4

**expense** 42:6 44:13 56:5 61:6,9,18 71:4

**expenses** 60:23 61:5 61:15,24 68:16,25 69:11,13,16 70:1,5 71:7

**expert** 54:11 66:9

**experts** 18:21

**explain** 18:14

**explanation** 57:25

**explicit** 40:7 64:2 65:11

**explicitly** 20:5 45:12,16 57:4,17 65:18 72:13

**explicitness** 23:17 30:7 43:24 45:9 55:20 56:1,2 67:17

**express** 12:11 42:25 53:14,18 55:15,17 68:7,11

**expressed** 68:3

**expressly** 29:22 51:10,11 61:5

**extent** 38:8 39:6 41:9 67:14 70:2

**extreme** 58:7

**eynon** 7:15

**f**

**f** 1:17 6:16 7:19 76:1

**face** 15:4 17:21 31:15 65:12

**facing** 24:25

**fact** 11:11 16:19 17:7 18:10 21:11 26:16 31:22 32:25 36:17 39:16 43:7 45:7,14,14 51:20,23 59:5 60:18 63:1

**facto** 36:10 37:2,4 39:15
**facts** 54:6
**fail** 48:12
**failed** 24:2
**fair** 48:21
**fairly** 30:23
**falling** 18:13
**falls** 39:16 73:23
**familiar** 22:25 43:25
**far** 17:8 27:19 64:7
**favor** 38:1 40:3 51:20 62:24 69:9 74:10
**favorable** 29:10
**federal** 64:14 66:11
**fee** 23:23 28:22 29:6 29:17 42:6 61:6,9 61:18 70:14,16 72:11
**fees** 60:23 61:4,15 61:23 68:16,25 69:10,13,16,25 70:5 70:9,11,18 71:7
**feld** 6:1 62:11
**felder** 7:16
**felt** 38:24
**fifth** 2:8 72:3
**file** 18:4 65:11
**filed** 2:3,10,15 9:11 9:14 11:10 21:18 48:23 50:9 68:20
**filing** 10:19 12:6 28:12 36:18 48:3,4 49:10 52:24 58:11 58:12 60:6,18 64:21 66:18,24 67:2 73:2
**final** 33:25 39:10
**finally** 45:2
**finance** 31:20
**find** 18:9 35:24 66:4
**finding** 11:21 30:12
**fine** 40:20 41:1 62:8
**finger** 4:10
**finish** 41:14

**first** 2:9,11 9:21 10:3,5 11:1,8,17 12:14 13:18,22 14:8 14:21 15:5,10 16:15 18:21 23:11 25:19 27:7,11 28:18 30:16 30:17 31:21 33:5,11 36:16 37:7,17,18 38:21 39:2,17,23 40:9 41:11 42:1,17 42:19 43:4 44:17 46:15 53:3 55:9,13 57:15 63:1,2,11 68:23 69:19 70:22
**firstly** 14:18
**firsts** 38:25
**five** 25:24
**fixed** 42:12 49:1 57:23
**flannagan** 7:17
**flies** 15:4 17:21
**flip** 69:15
**focused** 24:24 60:15
**follow** 35:4 46:5
**following** 11:20 12:18 13:21 14:11 14:14 28:8 32:6 42:10 45:17 55:18 71:23
**follows** 72:10
**footnote** 36:12 39:21
**force** 21:12 37:19 54:1
**foreclose** 54:7
**foreclosed** 27:22
**foreclosure** 28:1 29:19,22 54:13,13 54:20,21,23,24 55:3 55:6
**foregoing** 76:3
**form** 32:16 33:4
**formally** 14:3
**formed** 33:4
**forth** 19:10 37:17 37:23 39:22 57:22

**forward** 33:10 74:19
**found** 11:22 12:2,5 15:24 27:16,18 28:17 37:7,15
**founded** 56:11
**four** 57:17
**fox** 5:7
**framework** 66:14
**frankel** 3:3 38:15
**free** 13:16 53:7
**front** 27:20 30:4 68:9 69:12
**full** 28:23 49:13,24 56:20 69:25 74:25
**fullest** 41:9
**fully** 35:16
**fundamental** 59:4
**further** 17:14 19:3
**future** 1:4 72:24

**g**

**g** 9:1
**garabato** 2:16
**general** 25:12 31:2 31:8
**generality** 23:7
**generally** 56:19,19
**getting** 40:12 54:3
**gilstrap** 7:18
**give** 47:6 57:2 59:13 59:17 60:1 63:8
**given** 34:11 60:3
**glueckstein** 7:3
**go** 10:25 21:17 23:8 25:24 37:8,13 47:9 51:19 55:20 57:13 64:7 68:5 73:8
**goals** 48:21
**goes** 26:16 27:8 28:14 31:5 32:21 34:12
**going** 11:2 12:17,18 12:19,24 13:18 17:14 19:4 20:11 31:11,24 34:6,7 36:22 37:3 39:4,8 40:3 41:9 43:19

**forward** 33:10 74:19 *(col 4)*
**good** 9:3,8,8 38:13 56:10 59:3 75:1
**governing** 46:12 65:3
**governs** 30:11 36:3
**grace** 36:23 39:17
**grant** 38:5 53:6
**granted** 18:17
**greatest** 39:1
**gregory** 3:6 6:25 38:14
**grew** 66:3,6
**grounds** 21:12 71:5
**group** 2:4 5:8,14
**groups** 12:18
**gso** 2:2 72:1
**gu** 7:2
**guess** 58:23
**guidance** 46:11
**gump** 6:1 62:11 74:22
**gymnastics** 18:8

**h**

**half** 35:20
**hand** 9:15 10:11 40:19
**handed** 11:6
**happen** 58:8 67:15
**happened** 43:23 48:23 60:16 67:14
**happening** 28:11 64:16
**happens** 51:17
**hard** 10:11 20:3 41:16 59:20,21
**harold** 7:24
**harrison** 4:16
**harvey** 4:16
**hauer** 6:1 62:11
**heading** 60:25
**hear** 47:5,7,11
**heard** 41:16 42:22 46:19 48:14 68:23 69:19 74:1,24

**good** 44:14 46:14,24 62:1 69:17 70:4,17 71:1 73:15,16 74:19

hearing 2:1,8,13 41:15,22 46:25 62:14 73:7
hears 73:13
hebbeln 7:19
held 16:25 25:3 36:16 44:18 45:24 55:1 56:3
help 61:25
helped 25:17
hereof 26:19
herring 66:21
high 55:22 56:11
higher 66:12
highlighted 26:13
hindsight 20:21 33:8
history 27:9 51:6
hoc 2:3,9,10 5:8,14 6:2 71:23
hold 63:25 72:2
holders 71:25 72:2 72:4,8,19
holding 55:12 61:25
holdings 1:4
hon 1:18
honor 9:5,8,10,20 10:2,10,14 11:1,5 11:17,22 12:2,5,9 12:17,20 13:2,16,23 15:4 16:5,25 18:20 18:22 22:20,25 23:16 25:1,18 26:14 27:11,20 28:17 30:4 30:16,21 31:1,14 36:7,14,16 37:5,15 37:23 38:14,17 39:17,19 40:3,5,16 40:18 41:7,8,14,16 42:7 43:4,12 44:21 46:5,14,19,25 47:7 47:15 53:12 55:9,17 55:24,25 58:23 59:14 60:7,20 61:1 62:3,7,10,13,16,19 62:21,25 63:1,6,14 63:22 66:10 69:2,23

70:2,20 71:16,22 73:19 74:6,21,24
honor's 14:20 23:11 25:23 40:10 42:19 43:4,11,25 55:12
hope 40:1,2 41:20 46:18 72:23 73:1,11
hopeful 74:17
horowitz 3:6 38:12 38:13,14 40:21 41:7 41:20 64:6 66:13 67:23 68:15 69:1 70:4,7,25
horowitz's 62:16 63:23
horton 31:20,25 32:7,13 33:1,13,14 34:2 52:4,10
horton's 32:21 34:9 52:8
hotel 30:20
house 23:22 50:6,6 55:4
howard 4:8,19
howell 3:18
huh 49:19
humorous 66:4
hwangpo 7:20
hyde 2:25 76:3,8

i
idea 58:25 65:18
identical 10:2 16:10 16:15 36:21 37:10 40:9 62:14
ii 2:3
imagine 59:20
immediate 48:5
immediately 28:20 58:10 64:23 67:6
impact 44:23
impair 50:23
impairment 47:8 61:10,11
implausible 58:7
implication 32:23 34:15

implicitly 36:15 37:5
importance 47:9
important 46:12 47:15 59:3 70:21
importantly 46:6
inadmissible 12:25 31:13,13
inappropriate 62:19
include 28:22 29:21 51:8 60:22 61:4 72:8,14
included 29:22
including 46:2 72:14
inclusion 59:24
incompatible 67:16 67:18
incompetent 52:17
incorporate 14:7 17:15 18:9 23:25 25:14,15
incorporated 17:7 66:22,22
incorporates 20:5 29:17
incorporation 14:22
indebtedness 28:9
indenture 3:4 5:3 9:11,21 10:2,6,15 10:16 12:14 13:22 14:9,12 15:8 16:13 16:14 19:17 20:7 21:14 22:4,22 24:19 27:3 29:4,24 30:2,7 32:2 33:3,15,16,24 33:25 35:10 37:11 41:11,25 42:1,13,25 45:15 55:14 57:20 58:25 60:9,17,24,25 61:9,14,15,17 62:13 63:1,2,3,12 64:10 65:2,2 66:17 69:8 70:13,22

indentured 60:22 61:4,6
indentures 10:1 11:15 13:23 14:1,6 15:9 16:15 18:22 23:12 26:21 28:11 28:25 33:2,5 36:1 36:21 63:13 66:15
indicating 29:19
indirectly 53:3
induced 11:20 13:12 18:18 19:7,21
inevitably 62:1
initial 39:20 48:17 50:15 65:12
insert 51:7
insolvency 10:18
instance 14:23
instances 37:1
institute 54:23
instituted 55:6
instruction 72:17
insurance 26:2 30:19
intend 38:20 47:4 57:2
intended 13:6 29:7 29:21 31:22 36:2 48:13
intending 39:25
intent 13:9 19:6 44:14 49:8
intention 35:25 42:9 44:3 53:6
intentional 12:4
intentionally 29:8 29:12
inter 70:25
interest 9:12 44:2 44:12 48:8,19 49:5 49:18,21,25 50:2,24 53:24 56:5 57:6 67:12 72:9,10,11 73:8 74:20
interesting 17:12 27:5,14 32:3

**interests** 73:14
**interpret** 59:15
**interpretation** 18:3
20:23 54:10 57:18
59:10,16 63:8 64:17
**interpretations**
18:13
**interpreted** 16:1
58:15 60:17
**interpreting** 66:9
**interpretive** 12:16
12:20 30:25 66:14
**interrupted** 18:23
**intervened** 38:23
**intervener** 53:3
**invalid** 36:10 37:2,6
**involved** 33:2 43:12
**ipso** 36:10 37:1,4
39:15
**ironic** 44:16
**island** 43:16 54:4
66:4,5,8
**issue** 20:17 39:13
39:18,25 42:7,8,18
42:21 44:5,7,19,20
44:21,22,22 45:5,7
45:20,21 47:14 51:1
52:7 55:22 60:19
61:10,11 62:23
64:24 69:24 70:9
71:18 73:8 74:1
**issues** 33:8 38:18,20
38:22 39:6,12 40:8
41:10 46:22 65:24
66:1 70:5,8

**j**

**j** 4:13 6:6 7:22
**jacob** 6:9
**james** 5:1
**jamie** 3:24
**jason** 4:14
**jeff** 5:11
**jeffrey** 3:23
**jettison** 35:9
**john** 2:6 6:21
**joint** 1:5

**jones** 3:9,12
**joshua** 3:7
**judge** 1:19 16:4,10
16:21 24:24 25:18
25:20 42:23 43:15
46:2 53:20 55:24
60:7,14 64:14
**judgment** 9:14 11:7
20:25 23:11 36:13
37:18 38:1,1 39:20
55:13 60:21,21
61:22 68:2,17,20,20
68:22 69:9,18 71:13
**judicial** 43:24
**julia** 7:11
**junior** 44:1,13 56:5
**jurisprudence**
46:23
**justice** 43:15,17

**k**

**kalenchits** 7:21
**kaplan** 7:24
**keep** 28:3 46:13
**keglevic** 33:14 34:3
**keglevic's** 34:5
**kenneth** 7:4
**kept** 74:6
**kevin** 6:15
**kind** 17:8 19:9,20
23:6 26:25 44:16
46:10 57:16 67:9,13
**kinds** 18:12 67:3
**kinskey** 7:25
**kirkland** 3:14
**klehr** 4:16
**knew** 52:12
**know** 20:1 34:23,25
35:2 38:23 43:15
51:5 52:11,15 63:3
66:19 69:11,25
**knows** 9:10 25:1
39:1 46:14 52:19
**koster** 8:1
**kovensky** 8:2
**kramer** 3:3 38:14
**kunofsky** 8:3

**kyrouz** 6:16

**l**

**l** 2:6 6:10,23
**l.p.** 2:3
**lack** 30:24
**laguardia** 24:11,13
24:20 25:2
**language** 10:14,20
11:19 12:19,21 13:1
13:14,15,19 15:20
15:25 16:8 17:12
18:15 20:17 21:14
21:15 22:22 23:2,5
23:14 24:21,23,25
25:12,14 26:7,13
27:3,16,18 28:16,25
29:1,7,19 30:3,12
31:2,4,7,7,8,8,14
32:10,12,13,15
34:14,19 35:10 37:9
37:10,19 38:9 41:10
43:1 49:4,15,16
50:4,12,13 51:8
52:2,9,21 53:14,18
53:19 55:15,17 59:6
61:13 62:13 64:2,11
64:20 66:23 68:9
**large** 49:19
**largely** 47:16
**larger** 49:19
**larry** 8:4
**lastly** 12:24 20:16
**laura** 3:12
**lauren** 6:13
**law** 5:2 11:23 12:11
12:23 13:2 17:10
20:6,9,14 21:16
22:24 23:1,3,18,20
24:12 25:13,21 26:8
26:23 27:9 29:24
30:9,11,14,16 31:16
35:11 36:25 39:4
42:20,21,25 43:3,21
43:25 44:7,11,22
45:10 46:22 53:9,11
54:2 55:14,21 60:16
63:25 64:12 65:7,11

65:14,23,25 66:9,12
68:7
**law's** 37:13
**lawsuit** 70:22
**lawyer** 64:13
**lawyers** 21:16 22:4
**layton** 4:10
**lead** 25:17
**leaving** 21:8 22:10
**ledanski** 2:25 76:3
76:8
**legal** 11:1,17,25
13:16 32:12,16
34:19 37:20 47:11
76:20
**legally** 12:2
**lemisch** 4:19
**lender** 28:6 48:7
50:8,8 52:25 53:13
53:25 54:7,12,21,23
55:5,7
**lenders** 50:17 53:21
56:12,16,20
**lending** 65:21
**length** 16:5 60:3
**leslie** 1:25
**level** 68:12
**levin** 3:3 38:14
**liability** 49:13
**liable** 52:14
**license** 32:19
**lien** 2:9,11 3:4,10
9:11,15,21 10:3,5
10:15 11:2,8,17,24
12:14 13:4,18,22
14:9,21 15:5,10
16:15 17:11,16
18:21 21:1 23:11
25:19 26:1 27:11
28:18 30:16,17
31:21 32:2,5 33:6,6
33:11 36:8,12,16
37:7,18,25 38:1,15
38:21 39:2,17,23
40:9 41:11 42:1,19
43:4 46:15 48:25
49:16 55:10,13

60:22 61:3 62:15
  63:1,11 67:10 68:17
  70:22
**life** 26:2 30:11
  43:14 59:2,2
**lift** 18:20 39:3,8
  40:6,9
**light** 44:13 59:22
**limited** 52:1,1
**line** 55:11 63:2
  68:22
**lines** 49:6
**link** 28:24
**liquidated** 45:23
**litigation** 38:22,23
  39:17 42:5,19 70:25
**litigations** 43:9
**little** 27:6
**llc** 2:15
**llp** 3:3,9 4:1,21 5:1
  5:7,13,18 6:1
**loan** 53:15,24 54:15
**loans** 59:2
**logical** 60:2
**logically** 57:9
**long** 41:13 43:16
  54:3 61:17 66:4,5,8
**look** 17:11 19:2
  22:14 26:11 35:15
  35:20 68:9 70:18
  74:14
**looked** 13:23
**looking** 23:20 27:6
  27:18 29:4 42:15
  69:4
**looks** 22:13
**loosely** 59:8
**lot** 33:19 58:16
**lowenthal** 6:24
**lower** 20:4
**lp** 2:3
**lucia** 30:2,6,7

**m**

**m** 4:14 5:5 7:1,5,11
  7:14
**madison** 24:4

**madron** 4:14
**maiman** 7:4
**maintenance** 24:18
  30:8 64:3
**major** 14:16
**making** 13:7 19:3
  40:11 46:10 47:22
  49:11 59:22 60:15
  64:22 72:21 73:9
**malone** 8:9
**management** 2:3
**marc** 8:6
**march** 9:21 11:2
  25:19 30:18
**mark** 6:17,18 7:17
  7:19
**market** 1:11 29:10
  51:14
**materials** 2:14
**matter** 13:2,16 26:8
  40:25 57:18 59:16
  65:7,12 71:17
**matthew** 7:10,25
  8:7
**maturity** 17:2 18:4
  48:10 53:16 59:9,12
**mcelroy** 4:1
**mcgaan** 3:17 9:5,7
  9:7 10:13 38:18
  39:13 41:3,3,24
  42:23 45:18 48:15
  48:21 49:4 51:6
  52:4 54:6 63:15,17
  63:21,21 71:21 74:5
  74:5
**mcgaan's** 47:19
  51:17
**mcneill** 4:24
**mean** 15:16,17 16:1
  16:9 17:14,16,17
  18:3 34:17 41:13,23
  42:12 49:19 51:22
  52:21 55:9 57:25
  58:17 69:15
**meaning** 11:14
  15:20 17:24 18:9
  19:16 20:20 32:5,19

32:20 52:10 57:19
  59:17 60:1,2,2
**meanings** 21:13
  22:7
**means** 15:18 17:19
  52:22 59:11 74:9
**meant** 17:23 19:11
  34:21 35:22 52:11
  52:13 67:19
**measurement** 24:6
**meeting** 13:8 19:5
**meggie** 7:18
**mellon** 5:19
**members** 31:19
**memorandum** 68:2
**mention** 13:24,24
  14:18,19 15:11,11
  52:4 68:13
**mentioned** 30:25
  55:5 67:23
**merchants** 26:3,11
  26:18,20 67:23 68:5
  68:10
**merely** 48:6 49:10
**michael** 7:9,22
**michelle** 6:16
**might've** 52:15,18
**miller** 5:5
**mind** 35:2 46:13
  58:24
**minds** 13:8 19:6
**mineola** 76:23
**minute** 29:5 62:8,9
**minutes** 43:19
**miscommunication**
  40:15
**misread** 50:12
**missing** 25:6
**moldovan** 31:20
  33:1
**molycorp** 51:1
**moment** 31:12
  55:21
**momentive** 16:4,14
  23:13,19 25:1 30:4
  30:10 37:9,12,16
  46:3 53:20 55:25

60:7,9
**monetary** 10:8,21
  21:6 42:2 57:7
  59:20 60:10
**months** 49:21 50:9
**morning** 9:4,5,8,8,9
  38:13
**morris** 5:1
**mortgager** 29:8
**motion** 20:25 21:19
  39:3,7 40:6,6,7,7,9
  40:11,17 60:21 69:4
  70:9
**motions** 9:9,13
  39:21
**movant** 70:5
**move** 11:3,4
**moving** 74:7
**muldavan** 52:5
**mulvaney** 4:1
**murin** 1:25
**must've** 52:20
**mutual** 26:2 27:2,5
  27:14,21 28:21 29:2
  30:5,11 43:14,18
  54:3,5,18 56:10
**mystery** 20:7 34:1

**n**

**n** 3:1 9:1 76:1
**n.a.** 4:17
**naftalis** 3:3 38:14
**narrow** 48:23 57:13
**nassau** 66:4
**natasha** 7:20
**national** 23:21
**nature** 21:21 24:6
**near** 72:24
**nearly** 10:1
**necessarily** 59:9
**necessary** 73:10
**ned** 8:8
**need** 27:11 57:3
  64:1 65:17 74:13,13
**needs** 11:18
**neglected** 68:13
**negotiated** 20:8
  33:5 59:23

**negotiating** 33:14
34:24 58:8
**negotiation** 33:2
**negotiator** 33:9
**negotiators** 35:15
**neither** 14:4 22:19
22:20 36:4 45:6
65:6 67:8
**never** 43:21 71:11
**new** 5:3,19 11:23
12:11,23 17:10 20:6
20:9,14 21:16 23:1
23:3,3,5,18,20
24:12 25:13,21 26:3
26:8,23 27:7,8
29:23 30:9,11,14,23
31:3,15 35:11 37:13
41:10 42:25 43:3,13
43:21,24 44:5,7,8,9
44:11,17,18,22 45:3
45:10 50:7 53:10
54:2 55:14,21 56:3
56:3,7,8,15,18,25
59:24 60:16 63:7,25
63:25 64:5,12,13
65:7,10,10,14,23,23
66:1,3,7,9,12,14
68:7 69:5,17
**night** 40:15
**nii** 6:20
**nine** 41:12,13,23,24
42:8 52:3 63:4,8,12
**non** 18:16 72:11
**north** 1:11
**northwest** 30:10
**northwestern** 26:2
27:2,5,14,21,21
28:21 29:2 30:5,5
43:14,18 54:3,5,18
56:10
**nos** 2:14
**notably** 55:1
**note** 2:2 24:14,15
24:17,23 25:5,11,12
26:16,18 27:22 28:3
28:10,13 29:3,18
38:16 58:17 60:22

61:3 62:12
**noted** 14:10 53:9
57:12
**noteholders** 2:4
3:10 5:9,14 6:3
14:13 49:17 71:23
73:6
**notes** 10:17,22
13:20,25 14:15 18:5
21:6,24,25 22:17,18
41:11 46:16 48:25
49:11 50:18 53:2,7
56:21 59:2 60:5
67:10,13 72:19
**notice** 2:1,1 17:3
67:5 73:2 74:1
**notion** 37:6 45:12
69:18
**number** 10:25
25:22 38:7 42:24
68:18
**numbering** 16:14
**numerous** 11:22
66:1
**ny** 76:23

### o

**o** 1:17 9:1 64:25
76:1
**oaktree** 33:13,18
34:24,25 51:7 52:11
52:15,18
**object** 73:20
**objecting** 74:10
**objection** 9:18
21:20 38:6 41:2
73:24
**obligated** 61:23
**obligation** 10:8
12:13,14 25:15 58:3
58:4 59:20 61:9
**obligations** 10:21
21:6 42:2 54:16
57:7 60:10 61:16
**observation** 47:14
**observations** 42:16
**observed** 59:18

**observes** 48:21
**obtain** 20:13
**obtained** 20:13
**obviously** 73:7
**occasions** 42:24
**occur** 21:25
**occurred** 16:22
17:5 25:9 36:4 37:7
67:10
**occurrence** 28:8
**occurs** 59:6
**october** 1:14 76:25
**offer** 58:5
**offered** 57:24 61:21
**offers** 49:4 72:21
**official** 52:6
**oh** 18:2 62:9
**okay** 10:13 32:9
40:18 41:6 47:13
62:10 70:6 71:14
74:3 75:1
**old** 76:21
**older** 26:22
**onboard** 72:20
**ongoing** 61:10,19
**operator** 1:25
**opinion** 11:2,7
23:13 24:24 25:19
25:23 30:15,16
36:23 43:4 45:4
65:24 66:2 71:18
**opinions** 23:9
**opportunity** 53:24
**opposed** 74:9
**opposite** 17:8 35:16
35:23
**opposition** 41:4
**option** 53:7 57:3
67:16
**optional** 11:13,14
13:25 14:4 15:13
19:19 21:22 22:2,17
22:20 25:8 26:9
35:12 36:3 38:10
64:25,25 65:2 67:8
67:20

**optionally** 19:24
**order** 29:9,13 39:11
40:12,17 41:2 49:23
62:2 73:5,12,16,17
**organization** 16:13
**ought** 69:19,24
**outcome** 9:23 36:25
**outset** 26:6 31:12
38:17
**outside** 65:21
**outstanding** 10:21
28:2 61:18
**overarching** 42:16
47:13
**overcome** 37:13
**overlap** 21:12
**overlapping** 21:2
22:5,23 38:8
**overlaps** 9:17
**overlooked** 42:17
47:16,16
**oversteps** 20:22
**owed** 65:3 68:25

### p

**p** 3:1,1 9:1 19:16
**pa** 4:10
**pachulski** 3:9
**packet** 11:6
**page** 23:10 32:7
39:21 68:1
**pages** 21:1 36:12
71:25
**paid** 67:7
**painstakingly** 27:9
**papers** 11:9 13:4
15:15 21:19 33:1,12
33:20 37:4 39:18
58:18 62:16 68:25
69:21 73:17 74:13
**paragraph** 13:18
15:6 16:14 26:19
30:18 37:17
**parallel** 10:6
**paraphrasing** 60:24
**parga's** 43:17
**parker** 30:19

parol  12:25 13:5
  31:11 35:9,14 51:17
  51:19,25 59:22
  62:18 63:11
parsing  57:14
part  33:4 57:11
partial  9:14 20:25
  32:7 38:6 67:9
participated  38:24
particular  15:16
  25:24
particularly  74:11
parties  13:1,9 15:19
  18:17 19:5 20:12
  23:25 26:21,23
  31:13 35:25 42:9
  43:9 48:6,13 49:8
  51:18,20 52:22 53:1
  53:6 57:2 58:7
  59:23 60:3 64:1
  66:15,17,18,22
  67:19 72:13,16,23
  73:13,24 74:10
partners  2:2
parts  57:15
party  45:6 74:23
pass  62:3
passage  53:19
passed  49:21
pay  18:6 28:2 48:10
  49:24,24 53:7 54:14
  55:2 58:4 61:23
  70:11
payable  16:2 22:19
  26:17 28:20 42:14
  64:22 65:4 67:6
paying  48:11 71:6,8
payment  11:20,21
  14:13 16:1,24,25
  17:9 25:13 28:17,21
  29:20 35:12 38:11
  43:1 44:24 45:17
  48:8 53:2,23 54:1
  55:8,15,17 56:8,24
  59:8,11 65:4,16
  67:8,9,11,14,21
  72:6

payoff  21:24 22:17
  22:18
peg  6:14,22
penalties  22:8 23:4
pender  56:19
pennsylvania  24:11
people  20:7 66:6
  73:20
percent  49:1 58:2
  72:2,10,12,19
peretz  6:19
perfect  12:3 41:1
  56:19
perfectly  66:8
performance  2:14
  56:20
perilously  55:11
period  24:15,16,16
  53:24
perspective  73:22
  74:17,25
persuasive  46:3
petition  44:2,12
  49:14,18,22,25 50:1
  50:2,10,23,25 56:5
  72:10,11 73:8,14
  74:20
phil  6:12
phrase  13:17 17:7
  21:13 55:17
phrases  10:5,7 12:9
  13:25 14:5
picture  74:17
pik  2:2 9:18 10:16
  11:24 13:3 14:10,12
  14:13,15 18:2,5
  19:22 21:18,21,25
  26:1 32:5 33:6 38:4
  38:6 62:12 63:2
  67:13 71:24 72:1,2
  72:4,5,17 74:22,23
piks  14:4 46:16
pimco  3:21
pix  58:22,24
place  55:10
plain  12:18 13:14
  15:17,20 20:17 31:4

37:19 61:8
plan  21:23,25 44:25
  47:1,7 61:3 62:2
  67:9,10 70:11,16
  72:1,4,5,7
plays  66:5
plaza  30:19
please  9:3 10:25
plus  72:9,11
podium  62:3
point  18:23 20:19
  31:1 34:20 36:14
  43:20 46:9,12 48:22
  48:25 50:3 53:2
  58:1 59:2 62:17,22
  70:20 74:2
pointed  30:21 31:18
  45:18 58:18,21,22
pointing  51:25
points  23:10 63:22
poised  74:14
policy  44:11,13
  56:4,8,18 60:2
position  13:17
  39:22 69:7 71:11,12
  73:16 74:16
possibility  58:9,18
possible  41:9 44:3
  61:14 71:18 74:16
post  23:4 30:8 44:2
  44:12 50:2,23 56:5
  61:6 69:1,18 70:9
  72:10,11 73:8,14
  74:20
potential  61:18
potter  4:21
ppi  72:12 73:7
pre  61:4
precedent  12:19
  31:5 34:6,6 42:18
  45:6,7 51:15
precision  23:17
precluded  22:22
precluding  64:3
predecessor  33:3,16
prefer  56:19

preferred  53:23
prejudice  56:15
  66:6 69:24
premise  47:10
premium  9:12,22
  10:7,20 13:17,20,24
  14:1,3,14,24,24,24
  14:25 15:16,19,21
  16:7,12,18,23 17:6
  17:7 18:5,7 19:8,9
  19:15,17,23 20:1,4
  20:19 21:5,13 22:8
  22:14,15 23:14 24:1
  24:23 25:20 26:7,9
  27:23 28:6,25 29:14
  29:18 30:3,12 32:1
  32:11,24 33:21,23
  34:14,15,21 35:3,6
  35:7 37:11 38:10,11
  42:2,12,12 43:1
  47:21,21,23,24
  48:11,17,19,22 49:1
  49:2,3,5 50:13,20
  50:21 51:3,7,12
  52:14 53:17 54:17
  54:21,25 55:1,16,18
  56:13,24 57:6,8,12
  57:14,15,19,21,22
  57:23,23 58:2,6,13
  58:14,15 59:3,11,15
  60:8,11 64:3 68:6
  72:15
premiums  19:20
  20:2 22:7,9,9 56:17
prepaid  24:17
  53:17
prepared  40:17
prepay  50:3,18 54:8
  54:20 57:3 59:7,8,8
  60:5
prepaying  26:18
prepayment  14:24
  16:22 22:8 23:4
  24:1,6,14,16,22
  25:5,6,7,12,14
  26:15 27:23 28:6,7
  28:14,15,19,22,23

28:25 29:3,6,9,14
29:17,20 30:21 31:9
47:21,23 54:16,17
54:21,24 55:16,18
56:12,13,16,24
57:22 59:7 65:6,16
72:15
**prepayments** 36:3
**prepetition** 72:9
**present** 48:14 73:5
**presented** 40:8
47:17 54:4 72:22
**presenting** 73:12
**preserve** 56:23
**preserved** 47:12
**preserves** 48:6
**preserving** 36:15
56:16
**pressing** 36:13
**presume** 56:19
**presumption** 56:22
57:2
**presumptuous**
46:18
**presuppose** 19:5
**prevent** 17:22
**previously** 42:4
53:8
**price** 14:4 15:13
21:23 22:2 26:10
35:12
**primack** 4:4
**principal** 23:9
34:21 48:16,18 49:5
49:17,25 57:6,8
67:12 72:9
**principle** 43:20
45:9,9 54:2 63:25
64:12,15 65:10
**principles** 63:7
**prior** 31:16 44:11
46:1 48:6 55:3
58:11 73:7
**privilege** 28:23
**problem** 65:20
**problems** 14:16
34:21

**procedure** 45:2
**proceed** 73:12
**proceeding** 9:10
11:18 12:7 16:16
23:12 30:17 33:11
37:25 55:14
**proceedings** 11:8
15:5,10 25:19 27:11
30:17 31:21 54:13
54:23 55:6 76:4
**promises** 73:9,18
**promising** 71:19
**proof** 21:18 50:9,11
73:25
**properly** 53:11
**property** 27:22 28:3
54:15
**proposed** 2:1 67:9
73:2
**proposes** 66:13
70:16
**proposition** 53:10
53:12,13 54:22
67:25
**provide** 26:24 44:22
46:23 48:13 64:1
65:9,13 67:21 70:11
**provided** 21:25
31:9 37:21 42:13
50:5
**provides** 14:12
15:12 28:5 47:2
61:14,16
**providing** 11:19
47:20 67:11
**provision** 10:6,15
12:1 15:7,7 16:7
24:8 25:8,16 29:16
33:22 36:19 45:23
45:24 48:2,4,5,18
51:4 53:5 54:12,19
64:1,2 65:1,6 71:4
**provisions** 11:14
21:5 44:23 66:24
67:21 68:3
**psa** 72:3,17,23

**psas** 72:22
**public** 44:11
**punishes** 48:3
**punitive** 49:9
**purpose** 39:10
40:16 52:1,1
**purposes** 40:11
55:11 72:7
**pursuant** 2:10
26:19
**pursue** 39:25
**put** 10:8,13 15:20
18:21 27:20 33:10
36:21 37:17 40:14
48:16 61:2 69:12
70:20
**putative** 45:8,9
**puts** 10:19 34:16
**putting** 10:10 51:3
**puzzling** 27:15

| q |
| --- |

**qualifier** 15:17
17:24
**quereshi** 6:5 74:21
**question** 12:8 18:19
18:24 22:12,14 32:6
32:9 35:4 42:3,4
44:8 54:9 56:23
65:10
**questioner** 34:16
**questions** 34:13,13
62:4
**quickly** 73:2 74:7
74:15,16
**quite** 40:23
**quote** 13:18 16:3
19:15,16 29:7,18
32:6,9,22 35:14
43:3 53:22 55:14
**quoted** 27:3 31:18
32:13 53:20
**quoting** 14:11 23:12
37:15 45:14
**qureshi** 62:6,7,10
62:11 74:21

| r |
| --- |

**r** 1:17 3:1 4:24 6:11
9:1 64:25 76:1
**raft** 47:17
**raise** 37:3 39:6
46:21 61:10
**raised** 13:5 39:18
41:10 70:9
**raising** 69:1
**range** 73:23
**rappaport** 8:4
**rasskazova** 8:5
**rate** 72:11
**rational** 52:22 60:3
**raymond** 4:19
**reached** 66:17
**reaches** 44:25
**read** 11:23 48:18
57:9
**reads** 34:22
**ready** 73:6
**real** 74:7
**realize** 43:7 55:10
**realized** 50:12
**really** 11:10 17:14
42:3 51:18 53:11
57:24 60:16 62:15
**reargue** 38:20 55:9
**rearguing** 39:5
**reason** 52:20 56:14
61:21,22 62:25 70:8
70:21
**reasonable** 18:3
20:22 61:23
**reasonableness**
61:5 70:12 71:7
**reasonably** 51:4
57:21 58:14
**reasoning** 9:24
14:20 15:4 16:11
24:25 25:20 37:16
37:17 46:6
**reasons** 41:4 51:12
52:12
**recall** 18:20 69:3
70:21

**receive** 48:8,8
**recess** 62:5 63:19
**recited** 28:23
**recognize** 39:16
  42:18 46:21 52:9
**recognized** 40:8
  44:6 68:2
**recognizing** 41:8
**record** 37:24 43:16
  51:10 62:11 76:4
**recover** 44:24
**recoverable** 69:14
**recovering** 44:12
**recovery** 44:1 47:2
**red** 66:21
**redeem** 19:24,24
  28:2 49:11
**redemption** 11:13
  11:13,14 13:25 14:4
  15:13 16:23 17:4
  19:20 21:23,23,24
  22:2,17 24:1 25:8
  26:10 29:19,21
  35:12 42:10 47:25
  53:1 64:25,25 67:16
  67:21
**redundant** 21:3,11
  22:5,23 38:9
**reed** 5:18
**refer** 14:7 20:9
  26:16 57:20,21 58:1
  58:15
**reference** 14:21
  15:1,3,14 25:11
  26:15 32:23 34:15
  59:22
**references** 66:23
**referred** 29:17
  30:22 33:20 54:10
  54:11 64:6
**referring** 25:5
  32:10 34:23 36:12
  37:16
**refers** 10:16,18
  16:11,17,21 20:19
**reflect** 49:8 57:9
  59:4

**reflected** 47:18
  56:18
**reflecting** 53:6
**reflects** 17:14
**refused** 35:8 51:8
  51:10,11
**refusing** 51:13
**regard** 40:5 42:6
  44:23 61:24
**regarding** 2:14
  71:24
**regrettable** 46:11
**reinstate** 50:22
**reinstated** 50:25
**reject** 23:1 36:14
**rejected** 23:15
  36:16 37:5 39:19
**rejection** 65:11
**related** 71:16
**relevant** 10:14 15:7
  45:4 62:14
**reliance** 36:23
**relied** 25:25 46:1
  66:10,11
**relief** 18:17 19:14
  20:13,15 38:5 47:6
**relies** 30:10
**rely** 26:6 27:15
**remarkable** 46:10
**remarkably** 24:13
**remedies** 9:13,19
  13:11,12 22:21 23:1
  23:15 31:9 37:22
  64:4 67:3 68:14
**remedy** 12:12 14:2
  21:21 36:2 38:8,9
  64:17,25 65:2,9,13
  65:16
**render** 62:2
**rendered** 66:2
**reorganization**
  44:25 47:7
**repay** 14:15
**repayment** 11:11
  11:12 13:20 23:23
  28:16

**repeatedly** 42:22
**reply** 20:24 63:16
  70:4,7
**representative**
  34:23
**representatives**
  33:13
**repudiation** 61:8,12
  70:17
**request** 68:21
**requested** 1:6 73:25
**requesting** 73:24
**require** 56:23 60:17
**required** 24:22 25:5
  25:12 28:22 58:2
**requirement** 27:10
  27:12 29:6,24 31:3
  35:11 37:13 67:17
  68:6
**requirements** 25:7
  30:14
**requires** 12:12
  17:10 22:6 23:18
  72:3
**requiring** 17:9 43:1
  55:15,17
**requisite** 17:3,3
**rescinded** 17:18
  58:20
**rescission** 9:12 12:4
  13:12 17:22
**reserve** 41:21
**reserved** 41:14
**reserving** 40:1
**resolved** 39:23
  40:10
**resolving** 74:10
**respect** 12:6 20:17
  36:1,20 37:25 38:4
  39:1 47:18 54:5
  60:13 62:18 67:1,3
  68:16
**respectfully** 57:8
  70:15
**respects** 62:14
**response** 21:20
  60:24 61:2 63:22

**rest** 67:11
**restructuring** 74:6
**result** 9:25 12:13
  27:1 37:21 51:4
  52:14 53:17 57:9
**review** 43:16 46:20
  46:22
**richard** 3:18
**richards** 4:10
**right** 9:6 16:20 19:8
  20:21 32:13 39:12
  47:11,23,23 48:7,9
  49:17,23 51:9,14,14
  51:17 53:1 54:14
  56:24 61:9,15 63:18
  64:18 71:17 72:15
  73:15,22 74:1,18
  75:2
**rights** 16:12 40:1
  46:17 47:11 48:6
  52:24 56:16 66:18
  67:3
**ripe** 61:20 71:9
**ripped** 36:4
**rise** 9:2
**road** 76:21
**robert** 6:6 8:9
**roitman** 8:6
**roose** 8:7
**rothschild** 5:7
**rule** 2:8,10 12:3
  40:3 43:24 44:1
  55:20 56:1,2,18
  57:1 69:2
**ruled** 10:3 22:20
**ruling** 9:21 13:19
  14:21 23:11 30:18
  31:17 36:16 37:18
  44:17 45:3
**rulings** 10:25 11:7
  42:19
**ryan** 2:11

**s**

**s** 1:18 3:1 8:8 9:1
**sabin** 3:23
**satisfied** 61:17

satisfies 68:6
satisfy 23:5 30:13
  30:22 31:3 35:11
  37:12,13
saw 40:25
saws 65:14
saying 21:7 22:10
  25:4 26:17 66:12
  67:20 71:6
says 15:18 18:2
  34:13,16,17 49:4
  54:12 60:25 64:11
  66:15 69:8,8,15,16
  74:8
schedule 2:14
schlerf 5:11
schodek 8:8
scope 69:25 71:3,3
scott 6:10
seated 9:3
second 3:4,10 9:11
  9:15 10:15 11:5,23
  12:20 13:4 17:11,16
  21:1 24:5 25:25
  26:4,12 32:2,5,21
  33:6 36:8,12 37:25
  38:1,15 45:10,19
  46:15 47:13 48:25
  49:16 57:13 59:13
  60:22 61:3 62:15
  63:2 64:8 67:10
  68:5,17,22
section 10:4,6,14
  11:14 12:10,12
  13:23 14:1,7,11,12
  14:18,19 15:7,10
  16:11,17,17 18:10
  19:4,9,19 20:9
  21:22 22:1 24:2,14
  24:19 25:3,15 26:9
  27:20 28:11 33:21
  36:1,2,9,17 38:10
  41:25 42:13 49:5
  57:22 67:16
secure 29:9
see 10:20 22:5 28:4
  58:21 61:21 69:2,16

69:20 70:1,15 71:8
  73:17 74:13,13
seeing 69:3
seek 18:6 53:15,16
  54:7 55:7 56:12
seeking 9:11 13:10
  16:20 20:15 21:22
  22:21 23:2 37:22
  38:5 40:23 56:13
  68:14,17,19,19,22
  70:1
seeks 38:8 54:1,14
  59:7
selectively 35:13
senior 44:2,12
sense 53:4 68:8
sensibly 53:23
sent 33:18
sentence 14:11
  32:21 40:17
separate 27:23 65:1
separately 24:19
series 11:7 21:2
  30:18 48:24
set 19:10 37:23
  39:21 41:4 57:22
sets 9:9
setting 16:10 18:18
  28:18 37:7 56:11
  64:20 65:17 67:22
  68:24
settings 20:12
settled 42:24 43:3,5
  43:7,20 53:10
settlement 2:1,2
  72:21 73:6,23
settlements 74:24
settling 72:8,13,16
  73:6,13
setup 16:13
share 38:15
shared 56:4
shore 5:16 71:15,22
  71:22 73:19,22 74:4
  74:24
shores 74:8

short 40:7 62:5
  63:19 69:4
should've 38:24
  50:14
show 20:11 21:2
  31:22 33:1 34:3
  35:16 51:10 52:2
  64:19
showed 33:18 40:18
showing 10:14
shown 35:19
shows 51:6,11
sid 2:16
side 23:21
sign 40:16 72:24
  73:16
signature 71:25
significance 59:25
  63:10
significant 46:22
signing 72:16
similar 23:2 24:13
  40:5
similarly 18:16,16
  27:2 31:8 55:4
simplest 48:20
simply 18:11 22:21
  25:10 35:10 37:3
  48:15 49:1 52:25
  68:21 69:8,13
simultaneously
  53:14,15
sina 7:7
single 43:13 45:4
sir 63:17
sit 74:18
sitting 49:20 64:14
situation 24:12
  44:16 46:7 49:12
  50:20 54:4 55:4,19
  56:2
skipped 57:16
slide 10:13,25 11:3
  11:5 21:17 23:8
  25:24 27:4,25 37:8
  37:14

slides 10:11 45:18
slightly 54:6
slow 74:15
smith 5:18
solely 39:10 40:11
  40:15
solution 23:13
solutions 2:15 76:20
somewhat 53:12
sontchi 1:18
sonya 2:25 76:3,8
soon 71:18
sophisticated 19:12
sorry 53:25
sort 12:19 18:8
  35:19 64:6
sought 23:15 28:2
  50:10 51:7 55:2,5
  60:21
sound 46:6 66:4
sounds 69:6 74:17
source 66:10
south 23:21
southeast 44:9 56:2
southern 15:24 16:6
  30:1
southside 50:6,6
  53:19 55:4
speak 44:19
speaks 32:3
specific 12:11 18:16
  19:1 23:5 25:13,21
  26:8,14 27:2,17,19
  27:19 29:1,11,12
  34:20
specifically 20:4
  26:17 29:16 30:22
  33:20 35:1,7 36:1
  37:1 52:3,9,19
  54:25 65:18 67:1
specificity 24:8
  26:25 27:12 29:24
  30:24 31:3
specifies 24:5
speculating 56:7
speculation 56:11

spell 20:3
spend 33:19
spent 23:19
sponsors 72:1
squarely 33:8
st 30:2,6,6
stacey 7:13
staff 40:25
stand 37:3 69:3
  72:18
standard 11:17,25
  23:6 30:23
stands 47:1 53:11
  53:13
stang 3:9
start 13:14 23:8
started 54:12
startling 43:7
starts 71:20
state 27:8 43:13,22
  44:7 45:12 53:16
  59:9
stated 13:3 44:3,15
  45:15 48:10
statement 2:8,9
  29:23
states 1:1,10
status 36:8
stay 17:21 18:21
  39:3,8 40:6,9 72:6
steam 74:25
stephen 4:24 5:5
stop 32:17 41:16
straight 49:1
straightforward
  61:13
strauss 6:1 62:11
street 1:11 24:4
stricken 33:24
strong 9:20
strongly 31:1
struck 66:13
stuart 8:2
stuffed 36:5
subject 29:21 61:5
  70:11 71:7

submissions 47:17
submit 49:8 57:8
  58:13
subordinate 44:1
subsequent 63:13
subsequently 63:3
substance 28:10
substantial 38:18
substantially 9:17
sufficient 30:13
  35:13 42:9 68:11
sufficiently 68:3,7
suggested 55:24
  58:1
suggesting 67:24
suggests 15:21
  51:23
suite 76:22
summary 9:14 11:7
  20:25 23:11 36:13
  37:18 39:20 55:13
  59:16 60:20,21 68:1
  68:17,20,22 69:18
  71:13
supplemental 2:8
supplied 20:21
supply 32:19
support 17:20
  20:25 38:25 72:3
supported 21:14
  28:5
supports 19:3
suppose 29:2
supposedly 43:20
  53:10
supreme 26:2 43:15
sure 10:12 36:7
  40:23 62:7 69:9
surprising 14:17
suspect 43:25

**t**

t 76:1,1
table 73:13
take 41:18 53:14
  54:15 62:5 63:15
  71:17 73:12 74:15

taken 31:19,21
  32:25 35:14 53:21
  55:7
talk 12:18,19 18:22
  31:11 68:14 69:20
talked 31:3
talking 49:20 51:16
  52:2 55:19 63:4
tangentially 71:15
taub 6:17
taylor 6:25
tceh 2:4,9,11 4:2
  5:8,14 33:4,15
tch 71:23
teachers 30:19
team 31:20
telephonically 6:8
tell 73:16
tender 12:3 58:2,5
term 17:9 48:17
terms 15:11,12 21:3
  22:5,23 28:13,15
  30:21 44:4,15 60:23
  61:15 64:22 65:5
  72:5 73:2,4
testified 52:10,11
  52:18
testifying 52:5
testimony 31:19
  32:21,25 34:9,11,11
  52:8,17
textual 17:20 28:24
thank 9:7 10:12
  38:11,12,13 40:21
  41:7 63:14,15,18,22
  70:3 71:21 74:4
  75:1,2
thau 7:5
thing 22:13 58:13
  58:14 59:4 60:8,12
things 32:5 74:15
think 11:10 13:6
  16:19 18:10,19 19:2
  19:22 20:22 27:15
  32:3 34:17,19 37:4
  37:5 39:9 40:12,15
  41:13,15 42:16,22

43:11 47:8,8,18
  51:21,21 52:13 54:5
  54:6 55:23,25 56:10
  56:14,17,25 57:15
  57:24 59:13,14
  60:13,15 61:2,20,21
  61:24 62:21,22
  63:10 66:7 69:21,24
  70:15 71:5,9,12
  73:25 74:8
thinking 52:16,18
third 45:1,1,6
thought 32:12,15
  32:22 34:10 41:17
  52:11 67:24 68:23
thoughts 40:5
three 34:13
thwart 29:7
time 21:17 22:6
  23:19 24:17 26:18
  33:15,19 34:5,10,24
  38:19 39:5 40:24
  41:14,18,22 50:4
  61:1 63:2,5 70:20
  74:7
times 11:22
timing 17:3 73:21
title 65:1
tiwana 7:6
today 9:23 10:11,24
  11:9 12:9 13:10
  32:20 33:17 41:15
  42:4 44:20 49:20
  55:12 73:3 74:18
  75:2
today's 62:14
tony 31:20,25
tool 12:20
tools 12:16 31:1
top 27:4
toussi 7:7
tracking 28:10
transcribed 2:25
transcript 34:22
  76:4
treatments 72:6

**trial** 18:21 27:7
  43:15 66:5
**trigger** 16:22 25:13
  26:9 29:8 35:11
  48:5 59:5,6,9,12
**triggered** 14:14,19
  15:1 17:25 20:20
  23:24 28:12 49:13
  50:16,17 57:11
  58:10 59:1,1 60:4,5
  64:21
**triggers** 22:1 29:13
**true** 76:4
**truly** 75:3
**trust** 5:2
**trustee** 3:4 5:3 9:11
  9:15 11:24,24 13:4
  17:16 18:2,22 19:22
  21:19,21 26:1,1
  32:5 33:6 36:8 38:2
  38:16 62:12 68:17
  68:22 69:9 70:23
  72:17 74:22,23
**trustee's** 9:18,22
  13:4 14:10 17:12
  32:6 36:13 37:25
  38:4,7 60:23 61:4,6
  61:15,23 64:17
**trustees** 14:23
  16:20 26:6 27:1,15
  32:14 33:6
**try** 12:21 18:9,13
  41:9 50:18 55:7
  66:14
**trying** 20:13 46:14
  46:16
**tullson** 7:8
**turkel** 7:9
**turn** 12:24 20:11,16
  22:24 34:18 60:19
  62:6
**turns** 35:15
**tuvia** 6:19
**two** 9:9 10:5,25
  14:16 25:24,25
  31:19 34:12 42:16
  43:12 57:15 72:1

**type** 64:3,11
**typical** 30:8

**u**

**u.s.** 1:19 23:21
**umb** 4:17
**umm** 45:18
**un** 50:22
**unaffected** 47:24
**unambiguous** 11:19
  13:1,15,19 17:9
  18:12 30:13 31:14
  51:19,20,21,22,23
**unambiguously**
  14:12 17:15 45:16
**undermined** 21:15
**underscores** 13:7
  18:10
**understand** 12:21
  36:11 39:3 40:13
  63:24 65:22 66:14
**understanding**
  30:11 35:25
**understood** 15:19
  35:22 39:19 53:11
  71:11
**underwood** 7:10
**undisputedly** 71:3
**unenforceable**
  36:10 39:15
**unfortunately**
  40:24
**unimpair** 49:23
**unimpaired** 47:10
  50:25 62:2
**unimpairing** 46:15
**unimportant** 46:4
**unintended** 21:13
**unique** 22:7
**united** 1:1,10 26:3
  26:11,18,20 67:23
  68:5,10
**unnecessary** 40:2
**unsecured** 2:4 5:9
  5:14 6:3
**unused** 41:21
**unusual** 21:12

**upsetting** 47:6
**urge** 69:23
**urged** 63:24
**usage** 15:21
**use** 49:15 55:17
**uses** 22:22
**utterly** 21:15 69:5

**v**

**vague** 18:16 31:8
**validly** 36:17
**valuable** 46:23
**value** 46:3
**vanderveer** 30:20
**various** 43:8
**venable** 3:20
**venture** 57:5
**verified** 2:8
**veritext** 76:20
**versa** 15:13
**versus** 23:21 47:22
  48:5
**vice** 15:13
**view** 34:25
**virtue** 60:18
**volumes** 32:3
**voluntarily** 19:24
**voluntary** 11:13
  28:16,19 65:3,7

**w**

**w** 7:25
**w.r.** 36:23 39:18
**wait** 29:4
**walk** 12:17
**walsh** 7:22
**want** 22:24 25:23
  33:19 34:18 36:6
  38:17,19 42:15 46:9
  47:14 60:19 62:22
  65:15
**wanted** 20:6 50:22
**wants** 65:16
**waste** 39:5
**way** 17:6,23 18:24
  19:2 20:22 27:18
  31:5 33:24 34:4
  43:17 48:20 49:7,9

  57:1,14,24 58:20
  63:14 67:19
**ways** 51:22
**we've** 20:24 21:2
  33:10 36:21 40:16
  57:12,16 63:4 68:20
**wednesday** 73:7,10
**week** 71:24
**welcome** 46:20
  71:10
**went** 45:14 50:11
**whatsoever** 14:7,18
**white** 5:13 71:22
**whole's** 64:12
**wholes** 44:24 45:13
  45:20 55:22 56:9
**wilmington** 1:12
**winters** 7:11
**withdrawal** 2:13
**witnesses** 18:20
  52:6
**word** 29:20 57:15
  57:19,21 58:13,14
  58:18
**words** 26:24 41:12
  41:13,23,24 42:1,8
  42:15 43:2 48:16,16
  49:15 50:15 51:12
  52:3 57:8,14,17
  58:16,17 59:4,17
  60:8,10 63:4,9,12
  63:13
**work** 10:9
**working** 72:25
**works** 65:25
**world** 59:8
**worried** 41:17
**worst** 49:9 50:20
**would've** 51:4
  52:17 55:2 57:13
  60:16
**wrap** 30:15
**write** 18:23 58:25
**writing** 48:3
**written** 22:4 47:1
  54:25

**wrong**   54:6
**wrote**   20:7

### x

**xiaoyu**   7:2

### y

**yeah**   40:22
**years**   43:11 53:25
**yenamandra**   7:12
**yield**   24:18 30:8
  64:3
**york**   5:3,19 11:23
  12:11,23 17:10 20:6
  20:9,14 21:16 23:1
  23:3,3,6,18,20
  24:12 25:13,21 26:3
  26:8,23 27:7,8
  29:23 30:9,11,14,23
  31:15 35:11 37:13
  42:25 43:3,13,21,25
  44:7,8,10,11,17,18
  44:22 45:3,10 50:7
  53:11 54:2 55:14,21
  56:3,4,7,8,15,18,25
  60:16 63:7,25 64:5
  64:12,13 65:7,11,14
  65:23,23 66:2,3,7,9
  66:12 68:7
**york's**   31:3

### z

**zazove**   7:23
**ziehl**   3:9