## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 7185** |

## DEBTORS' OBJECTION TO
## "AMENDED MOTION FOR APPLICATION OF FED. R. BANKR. P. 7023
## TO THIS PROCEEDING AND TO CERTIFY A CLASS PURSUANT TO FRCP 23"

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

PROCEDURAL BACKGROUND .......................................................................... 2

    A.    The Debtors' Asbestos Liabilities .......................................................... 2

    B.    Representation of Asbestos Claimants in these Chapter 11 Cases. ........ 3

    C.    The Court's Asbestos Bar Date Opinion. ............................................... 4

    D.    The Court's Asbestos Notice Order. ...................................................... 5

    E.    The Debtors' Execution of the Notice Plan. .......................................... 7

    F.    The Court Has Already Overruled Two Collateral Attacks Led by Hogan McDaniels on the Bar Date and Notice Plan. ......................................... 9

    G.    The Class Certification Motion and Class Proofs of Claim .................. 11

ARGUMENT ....................................................................................................... 14

I.    The Court Should Exercise its Discretion Under Rule 9014 and Decline to Apply Rule 7023 in this Setting .......................................................... 14

    A.    Class Treatment Would Effect an Inappropriate End Run Around the Asbestos Bar Date and the Notice Plan. ............................................... 15

        1.    The Asbestos Notice Order balances the need for finality with unmanifested asbestos claimants' due process rights. ............... 15

        2.    Using class proofs of claim to circumvent a bar date is impermissible. ....................................................................... 17

    B.    The Typical Benefits of Class Actions Are Absent Here. .................... 19

        1.    A class proof of claim would provide no procedural benefit .................. 20

        2.    A class proof of claim would provide no substantive benefit .................. 22

    C.    Denying Class Certification Will Not Prejudice Claimants. ................. 24

        1.    Asbestos claimants' due process rights are protected. .............. 24

        2.    Any claim of prejudice is belied by the timing of this motion. ................ 25

II.    The Proposed Class Does Not Meet The Requirements For Certification. ............... 26

CONCLUSION ................................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allegheny Int'l, Inc.*,
  94 B.R. 877 (Bankr. W.D. Pa. 1988) ....................................................................14

*In re Am. Reserve Corp.*,
  840 F.2d 487 (7th Cir. 1988) ...............................................................14, 20, 23

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ...............................................................................................30

*In re Cable & Wireless USA, Inc.*,
  338 B.R. 609 (Bankr. D. Del. 2006) ................................................................27

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013) ................................................................................27

*In re Energy Future Holdings Corp.*,
  522 B.R. 520 (Bankr. D. Del. 2015) ..........................................................2, 4, 5

*In re Ephedra Prods. Liability Litig.*,
  329 B.R. 1 (S.D.N.Y. 2005) .......................................................................19, 23, 30

*Gentry v. Siegel*,
  668 F.3d 83 (4th Cir. 2012) ........................................................................24, 28

*Hart v. Nationwide Mut. Fire Ins. Co.*,
  270 F.R.D. 166 (D. Del. 2010) ..........................................................................31

*Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*,
  607 F.3d 114 (3d Cir. 2010) ...............................................................16, 20, 24, 25

*In re Motors Liquidation Co.*,
  447 B.R. 150 (Bankr. S.D.N.Y. 2011) ............................................................30

*In re New Century TRS Holdings, Inc.*,
  465 B.R. 38 (Bankr. D. Del. 2012) ...................................................................27

*Order*, *Energy Future Holdings Corp. v. Fenicle*,
  Case No. 15-265-RGA (Dkt. No. 3) (D. Del. Nov. 9, 2015) ...........................9

*In re Sacred Heart Hosp. of Norristown*,
  177 B.R. 16 (Bankr. E.D. Pa. 1995) ...................................................... *passim*

*In re Smidth & Co.*,
    413 B.R. 161 (Bankr. Del. 2009) ...........................................................................................16

*In re Tarragon Corp.*,
    Case No. 09-10555 (DHS), 2010 Bankr. LEXIS 3410 (Bnkr. D.N.J. Sept. 24,
    2010) ......................................................................................................................................26

*In re W.R. Grace and Co.*,
    389 B.R. 373 (Bankr. D. Del. 2008) ............................................................... *passim*

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ...................................................................................................30

*In re Waterman S.S. Corp.*,
    59 B.R. 724 (Bankr. S.D.N.Y. 1986) .....................................................................................16

*In re Woodward & Lothrop Holdings, Inc.*,
    205 B.R. 365 (Bnkr. S.D.N.Y. 1997) ..............................................................................20, 23

*In re Zenith Labs., Inc.*,
    104 B.R. 659 (D.N.J. 1989) ...........................................................................14, 19, 20, 23

## Statutes

11 U.S.C. § 501 ...............................................................................................................................14

11 U.S.C. § 523(a)(3)(A) ...............................................................................................................16

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this objection (the "Objection") to the *Amended Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP Rule 23* (D.I. 7185) (the "Certification Motion").  In response to the Certification Motion, the Debtors respectfully state as follows:[2]

## PRELIMINARY STATEMENT

1.     The bar date and the associated notice plan for unmanifested asbestos claims against the Debtors were the product of months of litigation and negotiation.  No party appealed the Court's ruling endorsing a bar date for unmanifested asbestos claims, and no party objected to or appealed the Court's order establishing the bar date and endorsing the carefully crafted notice plan, which has since been executed at substantial cost.

2.     Nevertheless, certain personal injury firms purporting to act on behalf of asbestos claimants—including one of the firms behind this motion—have since repeatedly attempted to undermine both the bar date and the comprehensive notice plan.  The Court has rightly rejected each of these attempts as improper collateral attacks on its prior decisions.

3.     The instant motion, which seeks to certify a class of unmanifested asbestos claimants for the sole purpose of filing a "class proof of claim," is yet another in the series of inappropriate collateral attacks.  Were the Court to grant the motion, the bar date effectively would vanish, as individual unmanifested asbestos claimants would no longer be obligated to file proofs of claim before the bar date passed.  Moreover, the substantial expense already incurred to

---

[2]     The exhibits referenced herein are included as exhibits to the *Declaration of Brenton A. Rogers, Esq. in Support of the Debtors' Objection to Amended Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP Rule 23*, filed contemporaneously herewith.

give notice of the bar date would be wasted, and an entirely duplicative and unnecessary notice regime for putative class members would be required.

4.       On the other hand, the classic benefits of a class action—efficiency and compensation for claims that would otherwise lie dormant—are absent here.  And this Court has already ruled that both the bar date and the notice program satisfy all prospective requirements of due process and that any post hoc due process challenges can be handled, if necessary, on a case-by-case basis.  Accordingly, this latest (and belated) attack on the Court's prior rulings should be rejected, and the Court should exercise its discretion and deny the motion.

## PROCEDURAL BACKGROUND

### A.       The Debtors' Asbestos Liabilities.

5.       These chapter 11 cases are not "asbestos" cases.[3]  The Debtors did not manufacture asbestos, did not install asbestos in residential or commercial structures, and did not manufacture products containing asbestos.  The Debtors estimate their annual pay-out on behalf of asbestos claims is less than 0.05% of their consolidated annual revenues.[4]  The Debtors scheduled 392 asbestos-related cases against the Debtors, including approximately 270 cases where the Debtors have rejected indemnification demands.[5]

6.       The alleged asbestos liabilities of Energy Future Holdings Corporation, Energy Future Intermediate Holding Company LLC, EFIH Finance, Inc., and EECI, Inc. (collectively, the "EFH Debtors") arise from certain discontinued operations associated with Ebasco Services, Inc. ("Ebasco") that were contractually assumed by EECI, Inc.  The asbestos claims alleged

---

[3]      *See In re Energy Future Holdings Corp.*, 522 B.R. 520, 537 (Bankr. D. Del. 2015) ("The Debtors did not file these cases as a result of asbestos or tort liability.").

[4]      *Id.*

[5]      *Id.* at 524-25.

2

against the Energy Future Competitive Holdings Company LLC, Texas Competitive Electric Holdings Company LLC ("TCEH"), EFH Corporate Services Company, and certain of TCEH's direct and indirect subsidiaries (collectively, the "TCEH Debtors") arise from alleged asbestos exposure at the TCEH Debtors' power-generating Luminant entities.

7.      Pursuant to the now-confirmed plan of reorganization, the Debtors are reinstating claims against the EFH Debtors relating to pre-petition asbestos exposure.  As the Court noted, "reinstatement…ensures that a reorganized EFH will continue to fund asbestos-related expenses that may arise at the asbestos debtor[s]."[6]

**B.      Representation of Asbestos Claimants in these Chapter 11 Cases.**

8.      There has been no shortage of representation for asbestos claimants in these chapter 11 cases.  In June 2014, the U.S. Trustee appointed an official committee to represent unsecured creditors of certain of the TCEH Debtors (the "TCEH Committee").  In August 2014, the law firms representing asbestos claimants (the "PI Law Firms")[7] urged the U.S. Trustee to appoint a separate asbestos committee, arguing that the TCEH Committee did not represent asbestos claimants, who are mostly creditors of EECI, Inc.  Though the U.S. Trustee declined to appoint a separate asbestos committee, it did appoint a separate official committee (the "EFH Committee") to represent the interests of all unsecured creditors of the EFH Debtors.  The U.S. Trustee appointed two asbestos claimants—Shirley Fenicle, as successor-in-interest to the estate of George Fenicle, and David William Fahy—as two of the five members of the EFH Committee.

---

[6]      *See* 12/3/2015 Hr'g Tr. at 57:12-15.

[7]      The PI Law Firms are Gori Julian & Associates, P.C.; Simmons Hanley Conroy, LLC; Paul Reich & Meyers, P.C.; Kazan McClain, Satterley & Greenwood, a Professional Law Corporation; Early, Lucarelli, Sweeney & Meisenkothen; and Hogan McDaniel.

### C.    The Court's Asbestos Bar Date Opinion.

9.    The bar date process began July 2014—nearly eighteen months ago—when the Debtors sought a bar date for all "claims" against them.[8]   Certain of the PI Law Firms, representing over 125 asbestos claimants, objected to the Debtors' motion, arguing that the bar date "would violate the fundamental due process rights of thousands of potential asbestos claimants."[9]   In particular, the objectors focused on unmanifested asbestos claimants, asserting that "publication does not satisfy the requirements of due process for an entire class of claimants that are so unknown as to be unknown even to themselves."[10]   The Court held two hearings on the matter (August 13, 2014, and October 28, 2014) and ordered additional briefing.[11]

10.    On January 7, 2015, the Court issued a lengthy published opinion, holding that the Court would establish a bar date for unmanifested asbestos claims (the "Asbestos Bar Date Opinion").[12]   The Court observed that "[t]he heart of the issue before the Court is whether the discharge of the Debtors' liability for Unmanifested Claims would be consistent with due process."[13]   After a thorough review of the case law, the Court ruled an appropriate notice

---

[8]    See D.I. 1682, *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof.*

[9]    D.I. 1796, *Corrected Objection of Certain Asbestos Claimants to the Motion of Energy Future Holdings Corp., et al, for Entry of an Order (A) Setting Bar Dates for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (B) Approving the Form of and Manner for Filing Non-Customer Proofs of Claim and Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, and (C) Approving Notice Thereof* at 5.

[10]    D.I. 1983, *Supplemental Brief of the Personal Injury Law Firms in Opposition to the Imposition of a Claims Bar Date Affecting Present and Future Asbestos Personal Injury Claimants* at 1.

[11]    See D.I. 1983, *Supplemental Brief of the Personal Injury Law Firms in Opposition to the Imposition of a Claims Bar Date Affecting Present and Future Asbestos Personal Injury Claimants*; D.I. 1984, *Debtors' Supplemental Brief in Support of Bar Date With Respect to Asbestos Claims.*

[12]    *In re Energy Future Holdings Corp.*, 522 B.R. at 523.

[13]    *Id*. at 528.

4

program may satisfy due process and allow for the discharge of unmanifested asbestos claims.[14] The Court explained that while it "is sympathetic to all asbestos victims, the Court cannot allow this case to be run for the potential victims' convenience or strategic gains," and decided to establish a bar date for all claims against the Debtors, including unmanifested asbestos claims.[15]

11.    No party appealed the Asbestos Bar Date Opinion.

**D.    The Court's Asbestos Notice Order.**

12.    The Asbestos Bar Date Opinion did not set a particular bar date or specify the content or scope of notice required for unmanifested asbestos claims.  Beginning in December 2014, the Debtors engaged the EFH Committee in discussions regarding an asbestos bar date and notice procedures.  The Debtors worked with Hilsoft Notifications ("Hilsoft"), a business unit of Epiq Bankruptcy Solutions, LLC ("Epiq"), to design a comprehensive notice plan.  Hilsoft is a nationally recognized leader in providing notice and has experience in some of the largest, most complex, and most significant cases, including litigation arising from the BP oil spill in the Gulf of Mexico.[16]  Hilsoft also has experience in asbestos-related bankruptcy and non-bankruptcy cases.[17]  The EFH Committee was represented by legal counsel and its own retained asbestos noticing expert, Kinsella Media, LLC.

13.    In the process of crafting the Notice Plan, the Debtors provided to Hilsoft relevant information, including information regarding the Debtors' corporate history, a summary of asbestos claims filed against the Debtors, the location of the Debtors' or Debtors' predecessors'

---

[14]    *Id*. at 27.

[15]    *Id*. at 537-38.

[16]    *See* D.I. 3967, *Declaration of Cameron Azari in Support of the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim.*

[17]    *See id.*

power plants and business operations, the time period of the potential exposure to asbestos, and the occupation types most likely to have been exposed to asbestos-containing material.[18]  From August 2014 through June 2015, the Debtors provided the EFH Committee with voluminous diligence relating to the notice plan, including holding formal diligence calls with the Committee and their noticing expert.  The Debtors were also served with and responded to formal interrogatory requests, and supplemented those responses as required under applicable discovery rules.[19]

14.    On March 11, 2015, the Debtors provided the EFH Committee with a draft of the notice plan and a proposed order setting the asbestos bar date.  The Debtors modified and clarified the notice plan based on feedback from the EFH Committee (as modified and revised, the "Notice Plan").[20]

15.    On July 30, 2015, the Court entered an order approving the Notice Plan (the "Asbestos Notice Order") and setting the bar date for all asbestos-related claims as December 14, 2015, at 5:00 p.m. prevailing Eastern time (the "Asbestos Bar Date").[21]

16.    The Asbestos Notice Order described the components of the Notice Plan:

- Direct mailing to known asbestos claimants with "personalized" proof of claim forms;

- Direct mailing to current and former employees and contractors;

---

[18]    *See* D.I. 3967, *Declaration of Cameron Azari in Support of the Form and Manner of Notice of Bar Date with Respect to Asbestos Proofs of Claim.*

[19]    *See* D.I. 4404, *Notice of Service of "Debtors' Responses and Objections to EFH Official Committee First Set of Interrogatories to Debtors"*; D.I. 4713, *Notice of Service of "Debtors' First Supplemental Responses and Objections to EFH Official Committee First Set of Interrogatories to Debtors".*

[20]    *See* 8/11/2015 Hr'g Tr. at 116:5-6 ("The E-side committee fought hard and long in connection with the details of the notice that went out.").

[21]    *See* D.I. 5171, *Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof.*

- Extensive publication notice in consumer publications, local newspapers, national newspapers, trade publications, and union labor publications (with a total combined circulation of 69,893,892);[22]

- Dedicated website and toll-free number;

- Internet banner advertising and sponsored search listings (resulting in 436,346,154 gross online impressions);[23]

- Informational release to approximately 4,200 print and broadcast media outlets and 5,500 online outlets; and

- Targeted outreach to labor unions.

17.     The Asbestos Notice Order was crafted to eliminate any lingering due process concerns.  For example, the order exempted ten categories of parties from the Asbestos Bar Date. The order carefully explained the substantive requirements for filing proofs of claim, both for manifested and unmanifested claimants.  And the order provided that an asbestos-related proof of claim would not be disallowed on the basis that it was filed against the wrong Debtor.

18.     No party objected to or appealed the Asbestos Notice Order.

**E.     The Debtors' Execution of the Notice Plan.**

19.     Pursuant to the Asbestos Notice Order, the Debtors executed the Notice Plan at a cost of approximately $2.5 million.[24]

20.     The Debtors provided extensive direct notice to former and current employees and contractors of the Debtors and their predecessors.  In an initial mailing on July 30, 2015, the Debtors sent 68,433 asbestos bar date packages to individuals identified in employee and

---

[22]     *See* D.I. 4985-1, Ex. A, Asbestos Claims Bar Date Revised Notice Plan (July 13, 2015), at 19.

[23]     *See* D.I. 4985-1, Ex. A, Asbestos Claims Bar Date Revised Notice Plan (July 13, 2015), at 19.

[24]     12/3/2015 Hr'g Tr. at 62:3-5; *see also Declaration of James Katchadurian in Support of the Debtors' Objection to the Amended Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP 23*, filed contemporaneously herewith ("Katchadurian Decl."), ¶ 3.

contractor records and 2,266 asbestos bar date packages to known asbestos claimants.[25]  The Debtors have since sent supplemental mailings to 3,880 parties.[26]

21.     The Debtors also implemented a comprehensive constructive notice program, using print, online media, and other outlets.  Hilsoft, the Debtors' retained noticing expert, determined, "[t]he combined measureable, media effort will reach approximately 90.1% of men aged 65+ in the U.S. an average of 3.4 times each, 89.4% of adults aged 45+ in the U.S. an average of 3.5 times each, and approximately 85.7% of adults aged 18+ in the U.S. an average of 3.1 times each."[27]

22.     The Debtors' execution of the Notice Plan has been successful.  As of December 8, 2015, claimants have filed approximately 6,900 active asbestos-related claims.[28]  Including online submissions, the Debtors have categorized approximately 6,000 of these claims as unmanifested and 700 of these as manifested; the remaining 200 claims are unspecified.[29]

23.     In addition to the Debtors' comprehensive Notice Plan, information about asbestos claims in these chapter 11 cases, including the Asbestos Bar Date, has been disseminated in other ways.  Indeed, one of the PI Law firms has taken out Google search advertisements linked to the search terms "efh case info," "efh bankruptcy," and "efh

---

[25]   *Id.* at ¶ 4.

[26]   *Id.*

[27]   D.I. 4985-1, Ex. A, Asbestos Claims Bar Date Revised Notice Plan (July 13, 2015), at 7.

[28]   Katchadurian Decl., ¶ 5.

[29]   *Id.*

restructuring."[30]  As of December 7, 2015, upon typing "EFH" into the Google search bar, "EFH

asbestos claims" was the second suggested search.[31]

F.    **The Court Has Already Overruled Two Collateral Attacks Led by Hogan McDaniels on the Bar Date and Notice Plan.**

24.    No party appealed the Asbestos Bar Date Opinion, and no party objected to or

appealed the Asbestos Notice Order.   Accordingly, the Court has twice rejected "collateral

attacks" on the Asbestos Bar Date and Notice Plan by Hogan McDaniels—one of the PI Law

Firms and the attorneys of record on the Class Certification Motion.[32]

25.    First, the Court denied Hogan McDaniels's motion to appoint separate legal

representation for unmanifested asbestos claimants.[33]   As the Court recognized at a hearing on

August 11, 2015, "[t]he fight about the bar date is over.  It was over in January.  No one

appealed…. I'm not going to hear it today, a complaint about my January opinion.  I'm also not

going to hear a complaint about an agreed notice procedure that was put in place with the

approval of the [EFH] Committee."[34]

---

[30]    Ex. 1, Screenshot of "efh case info" Google Search on Dec. 7, 2015; Ex. 2, Screenshot of "efh bankruptcy" Google Search on Dec. 7, 2015; Ex. 3, Screenshot of "efh restructuring" Google Search on Dec. 7, 2015.

[31]    Ex. 4, Screenshot of "efh" Google Search on Dec. 7, 2015.

[32]    Fenicle and Fahy, who are represented by Hogan McDaniels, sought leave to appeal the Court's entry of the order approving the Debtors' disclosure statement.  *See* D.I. 6342, Notice of Interlocutory Appeal.  The district court denied Fenicle and Fahy's motion for leave to appeal.  *See Order*, *Energy Future Holdings Corp. v. Fenicle*, Case No. 15-265-RGA (Dkt. No. 3) (D. Del. Nov. 9, 2015).

Fenicle and Fahy have otherwise been actively involved in these chapter 11 cases.  *See, e.g.*, D.I. 6703, *Joinder of Shirley Fenicle, as Successor-in-Interest to The Estate of George Fenicle, and David William Fahy to the Objection of the EFH Official Committee to Notice of Proposed Settlement of EFIH PIK Note Claims of GSO Capital Partners LP and Avenue Capital Management II, L.P.*

[33]    *See* D.I. 5265, *Order Denying Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative*.

[34]    8/11/2015 Hr'g Tr. at 116:14-23.

26.     Second, on December 3, 2015, the Court overruled the Fenicle and Fahy objection to plan confirmation and the related settlement agreement.[35]  The objection was based in part on an argument that the plan violates the due process rights of unmanifested asbestos claimants.[36] The objection, the Court held, was another "inappropriate collateral attack" on the Asbestos Notice Order.[37]

27.     The Court reiterated that the Notice Plan was "reasonably calculated to provide notice to unmanifested claimants."[38]  The Court "fail[ed] to see a better plan to give notice to these individuals that does not massively increase the cost of giving that notice."[39]

28.     As for the direct notice program, the Court emphasized the Debtors' ability to identify "the vast majority" of potential claimants through employment records, as well as the Debtors' outreach to labor unions.[40]  From this, the Court found that it "can logically infer that at a minimum a substantial majority of potential claimants will receive direct news from the Debtors."[41]

29.     As for constructive notice, the Court explained:  "It is not a new revelation that the Debtors used asbestos insulation in their power plants," as "this entire industry used asbestos

---

[35]     *See* 12/3/2015 Hr'g Tr. at 63:3-7.

[36]     *See* D.I. 6610, *Trial Brief and Omnibus Objection of Fenicle and Fahy to (I) Motion of Energy Future Holdings Corp.,* et al*., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al.

[37]     12/3/2015 Hr'g Tr. at 57:16-22 ("Fenicle and Fahy's fourth and final objection to confirmation is that by barring the claims of unmanifested claims that fail to file a timely proof of claim the bar date and the plan violate due process.  Once again, the proper time and place to raise this objection was to appeal the Court's order setting the bar date.  This objection is inappropriate collateral attack on a final order.")

[38]     *Id.* at 62:4-5.

[39]     *Id.* at 62:5-7.

[40]     *Id.* at 60:7-17.

[41]     *Id.* at 60:17-19.

insulation until the 1980's and therefore 'asbestos exposure was virtually unavoidable.'"[42] Accordingly, the Court reasoned that "[i]ndividuals with long careers at power plants should, by now, be aware of their exposure."[43]

30.     The Court reiterated that neither its rulings nor the Debtors' plan of reorganization foreclose as-applied challenges to the notice procedures, stating:  "It is entirely possible that an unmanifested claimant may bring a claim after the bar date, argue the Debtors' notice scheme was unconstitutional, as applied to her, and be correct in that argument."[44]

31.     The Court also held that appointing a class representative for unmanifested asbestos claimants was unnecessary, because "the primary reason for appointing a class representative"—manifested claimants seeking high payouts to the disadvantage of unmanifested claimants—"is not present here."[45]  The Court reasoned that "all claims are being reinstated and reorganized EFH will be a solvent entity with a predictable rate of return and low risk."[46]  In other words, "[t]he interests of manifested claimants and unmanifested claimants are not adverse here."[47]

**G.     The Class Certification Motion and Class Proofs of Claim.**

32.     Three unmanifested asbestos claimants, Joe Arabie, Michael Cunningham, and Michelle Zygielbaum (collectively, the "Class Claimants"), represented by Hogan McDaniels, now bring yet another collateral attack on the Asbestos Bar Date Opinion and the Notice Plan.

---

[42]   *Id.* at 60:22-61:2.

[43]   *Id.* at 61:5-7.

[44]   *Id.* at 62:16-20.

[45]   *Id.* at 61:12-13.

[46]   *Id.* at 61:22-24.

[47]   *Id.* at 62:9-11.

On November 25, 2015—the day before the Thanksgiving holiday—they filed a motion to certify a class of unmanifested asbestos claimants, solely for the purpose of allowing them to file class proofs of claim.[48]   The motion was amended on December 1, 2015.[49]

33.     The precise definition of the proposed class is unclear, as Class Claimants describe it in several different, inconsistent ways:

- "Class Claimants are all persons who hold unmanifested claims and *who did not receive notice* of the instant action.  They file this motion on behalf of themselves and others similarly situated in order to preserve the rights of their fellow workers and loved ones whom they fear may unwittingly have their rights disposed of on the bar date";[50]

- "By this petition, Claimants seek leave of the court to permit Claimants to file class proofs of claims on behalf of not only of themselves but also of similarly situated persons *who have not filed* individual unmanifested proofs of claim on their own behalf";[51]

- "I am seeking to represent a class of people in the above captioned bankruptcy case who are *members of the unions affiliated with the Texas Building and Construction Trades* who were exposed to asbestos in plants covered by the EFH bankruptcy but who are not yet manifesting any disease associated with asbestos exposure.  Thus I seek to represent members of our organization."[52]

The broadest definition is the one articulated in Paragraph 38 of the Certification Motion:

- "Class Claimants file the class proofs of claim on behalf of a nationwide class of thousands, consisting of all persons who have no manifested asbestos-related injury as of the bar date in this action and who were occupationally exposed to asbestos, or through a take home exposure of a family member where the asbestos originated in workplaces or entities owned and controlled by the Asbestos Debtors (the 'Unmanifested Asbestos Injury Class'). The scope of the class is

---

[48]   D.I. 7151, *Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify A Class Pursuant to FRCP Rule 23*.

[49]   D.I. 7185, Certification Motion.

[50]   D.I. 7185, Certification Motion, ¶ 3 (emphasis added).

[51]   D.I. 7185, Certification Motion, ¶ 19 (emphasis added).

[52]   D.I. 7185-2, Affidavit of Michael Cunningham, ¶ 17 (emphasis added).

coextensive with the scope of ***persons eligible to file*** unmanifested asbestos-related disease proofs of claim individually."[53]

This definition does not distinguish between claimants who received actual or constructive notice of the Asbestos Bar Date and those who did not, nor does it distinguish between claimants who have filed proofs of claim and those who have not.

34.    Each of the Class Claimants, by definition, has received notice of the Asbestos Bar Date.  Michelle Zygielbaum, for example, alleges "take home" asbestos exposure from laundering the work clothes of her husband, Paul Zygielbaum.  The Zygielbaums are not novices to asbestos litigation, including litigation against the Debtors.  In 2004, Paul and Michelle Zygielbaum sued Washington Group International ("WGI"), which is a successor to the buyers of Ebasco, for alleged asbestos-related injuries.[54]   The Debtors indemnified WGI, and the Zygielbaums ultimately dismissed WGI.[55]

35.    Each of the Class Claimants, has also filed a proof of claim.  On December 2, 2015, Epiq received an "Unmanifested Injury Claim Form" from each of the three Class Claimants.[56]  On each of those forms, someone has hand-written "CLASS PROOF OF CLAIM FORM," and each purports to be submitted on behalf of the respective named claimant "and similarly situated persons."[57]

---

[53]    D.I. 7185, Certification Motion, ¶ 38.

[54]    *See* Ex. 5, Complaint, *Zygielbaum v. Asbestos Corp. Ltd., et al.*, Case No. RG04152563 (Cal. Super. Ct., April 28, 2004).

[55]    *See* Ex. 6, Signed Request for Dismissal, *Zygielbaum v. Asbestos Corp. Ltd., et al.*, Case No. RG04152563 (Cal. Super. Ct., November 14, 2007).

[56]    Katchadurian Decl., ¶ 6.

[57]    *Id.*

36.    The motion comes at the eleventh hour of these chapter 11 cases, just 19 days before the Asbestos Bar Date, and eight days before the Court approved the Settlement Agreement and confirmed the Plan.  The motion is noticed for hearing on December 16, 2015,[58] ensuring that the Court cannot rule on it until after the Asbestos Bar Date has passed.

## ARGUMENT

I.    **The Court Should Exercise its Discretion Under Rule 9014 and Decline to Apply Rule 7023 in this Setting.**

37.    Section 501 of the Bankruptcy Code does not expressly allow class proofs of claim.[59]  While the Third Circuit has not yet addressed the propriety of such a device, some courts within the Third Circuit have followed the lead of the Seventh Circuit and held that bankruptcy courts have *discretion* under Rule 9014 to apply Federal Rule of Civil Procedure 23 ("Rule 23") to class proofs of claim.[60]  The circumstances under which such application is appropriate, however, "are narrowly defined."[61]

38.    Assuming without conceding the propriety of allowing class proofs of claim,[62] doing so in this setting would be inappropriate for at least two reasons.  *First*, granting Class Claimants' requested class treatment would effectively eviscerate the Asbestos Bar Date and the associated Notice Plan, which were heavily litigated and were never appealed.  *Second*, such an

---

[58]    *See* D.I. 7151-5, *Notice of "Motion for Application of Fed. R. Bankr. P. 7023 to this Proceeding and to Certify a Class Pursuant to FRCP Rule 23"*.

[59]    *See* 11 U.S.C. § 501.

[60]    *In re Zenith Labs., Inc.*, 104 B.R. 659, 663 (D.N.J. 1989) (citing *In re Am. Reserve Corp.,* 840 F.2d 487, 489 (7th Cir. 1988)).

[61]    *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 19 (Bankr. E.D. Pa. 1995).

[62]    *See, e.g., In re Allegheny Int'l, Inc.*, 94 B.R. 877, 878 (Bankr. W.D. Pa. 1988) (recognizing *Am. Reserve* but declining to permit use of class proof of claim in bankruptcy).

outcome is not justified by the purposes of the class action mechanism, and is not necessary to protect claimants' due process rights.

### A.    Class Treatment Would Effect an Inappropriate End Run Around the Asbestos Bar Date and the Notice Plan.

39.    Because the class the Class Claimants seek to certify includes only unmanifested claimants who as yet have no cause of action against the Debtors, the class can never and will never prosecute any cause of action against the Debtors.  Instead, its entire purpose is necessarily limited to filing a "class proof of claim."

40.    If the Certification Motion were granted, *any* unmanifested claimant could later cite the class proof of claim to avoid the operation of the Asbestos Bar Date, regardless of whether that claimant has filed an individual proof of claim, or whether the claimant can show excusable neglect in failing to do so.  Certifying a class of unmanifested claimants would also require the Debtors to engage in a duplicative and wasteful second round of notice to potential class members.

41.    In short, a class proof of claim in this case would be an inappropriate end-run around the Asbestos Notice Order and the Court's repeated findings that the Asbestos Bar Date and the Notice Plan satisfy due process.  This would be flatly contrary to the very purpose of bar dates, as courts within the Third Circuit have recognized.

> *1.    The Asbestos Notice Order balances the need for finality with unmanifested asbestos claimants' due process rights.*

42.    Bar dates are essential to the efficient administration of a bankruptcy.  A bar date enables the parties to identify claims and estimate the value of claims against the estate, and in doing so serves a fundamental purpose of the Bankruptcy Code—"the prompt and effectual

administration and settlement of the debtor's estate"[63]—by providing "finality and fixing the universe of claims."[64]  Accordingly, as the Court recognized in the Asbestos Bar Date Opinion, a bar date for unmanifested asbestos claims was both required by the Bankruptcy Code[65] and essential to the Debtors' ability to develop a plan of reorganization.[66]

43.    Because bar dates may extinguish otherwise valid claims, however, the due process rights of claimants must be protected.  Thus, the Bankruptcy Code permits discharge of claims in bankruptcy only where claimants were given notice of the bankruptcy.[67]  And the Third Circuit, recognizing the due process concerns raised by extinguishing unmanifested asbestos claims in bankruptcy, has established a seven-factor test to revive extinguished claims where claimants never received notice of the bar date.[68]  Here, to protect the due process rights of unmanifested asbestos claimants, the Asbestos Notice Order approved a notice program that exceeded the requirements of either the Code or of due process.[69]

44.    Through the Asbestos Notice Order, the Court struck a balance between the due process rights of unmanifested claimants and the Debtors' need to ascertain the scope of claims against the estate with finality.  Now, however, a mere 19 days before the bar date, Class Claimants seek to file a proof of claim on behalf of every unmanifested claimant without regard

---

[63]    D.I. 3182, Asbestos Bar Date Opinion at 8 (quoting *In re Smidth & Co.*, 413 B.R. 161, 165 (Bankr. Del. 2009)).

[64]    *Id.* at 9 (quoting *In re Waterman S.S. Corp.*, 59 B.R. 724, 726 (Bankr. S.D.N.Y. 1986)).

[65]    *Id.* at 32.

[66]    *Id*. at 29 ("The Debtors and their constituents must be allowed to assess all of the claims against the Debtors' estates in order to formulate a plan of reorganization.").

[67]    11 U.S.C. § 523(a)(3)(A).

[68]    *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 127-28 (3d Cir. 2010).

[69]    *See* 12/3/2015 H'rg Tr. at 60:1-2 ("And on those factors the Debtors' attempts to give notice are more than sufficient.").

to whether any purported class member filed an individual proof of claim prior to the bar date, or has a reasonable excuse for failing to do so.

> 2.    *Using class proofs of claim to circumvent a bar date is impermissible.*

45.    The bankruptcy court's decision in *In re W.R. Grace & Co.* is directly on point. In that case, two purported classes of property owners who suffered property damage as a result of the debtor's manufacture of asbestos-containing surfacing materials tried to file class proofs of claim in the debtor's chapter 11 proceeding.[70]    The court, noting that the motion "[could] not be decided in a vacuum; i.e., without reference to the bar date," refused to certify the class.[71]

46.    The bankruptcy court concluded that certifying the class "would operate to negate the bar date" by "provid[ing] certain claimants with the opportunity to file late claims despite the bar date and without having to establish excusable neglect . . . , and would nullify the notice program which entailed substantial effort and expense."[72]    The court noted that "actual notice was given to known property damage claimants and publication notice was extensive."[73]

47.    The court further observed that the opt-out nature of the class "would defeat the purpose of certifying a class in the context of this case,"[74] explaining:

> [A] claimant who did not file a timely claim but who would be a member of the class if certified could opt out of the class and then assert an independent late claim, thereby effecting another end run around the bar date.  In that respect, class certification would adversely affect the bankruptcy proceedings by permitting those who missed the bar date and who received at least publication notice to interpose claims into this case, without establishing the excusable neglect

---

[70]    *In re W.R. Grace and Co.*, 389 B.R. 373, 375 (Bankr. D. Del. 2008).

[71]    *Id*. at 379.

[72]    *Id*.

[73]    *Id*.

[74]    *Id*. at 380.

standard expressed in *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[75]

The *Grace* court refused to allow such tactics, and this Court should as well.

48.     Similarly, the bankruptcy court in *In re Sacred Heart* refused to certify a class that would effectively "expand[] the bar date for notified creditors."[76]  The court reasoned that class treatment is not appropriate where "putative unnamed class members have clearly received actual or constructive notice of the bankruptcy case and the bar date."[77]

49.     This Court has already recognized that unmanifested asbestos claimants are overwhelmingly current and former employees or contractors, or family members, all of whom have received actual or constructive notice.[78]  Class Claimants appear to concede as much, arguing that the purported class of unmanifested asbestos claimants is ascertainable through the same procedures the Debtors used to identify recipients of direct notice and to select media outlets for publication notice.[79]  Accordingly, as in *Sacred Heart*, "denial of the implementation of the class proof of claim device appears advisable."[80]

---

[75]    *Id.*

[76]    *In re Sacred Heart*, 177 B.R. at 23.

[77]    *Id.* at 22.

[78]    *See* 12/3/2015 H'rg Tr. at 60:8-10; 20-22 ("[T]he Court can infer that the vast majority of potential claimants are current and former employees and contractors, and their family members. . . .  [I]t would be unreasonable for a significant number of unmanifested claimants not to be aware of their exposure to asbestos at this point in time.").

[79]    D.I. 7185, Certification Motion at ¶ 61 ("Implicit in both methods of notice is that the putative Class Claimants are readily identifiable and may be readily identified by such methods.  Specifically, the court ordered Debtors to make a reasonable search of [their] business records for the names and addresses of employees and contractors of Asbestos Debtors.")

[80]    *In re Sacred Heart*, 177 B.R. at 22.

**B.    The Typical Benefits of Class Actions Are Absent Here.**

50.    Neither do the policy rationales underlying Rule 23 justify eviscerating the Asbestos Bar Date and the Notice Plan.   In general, courts have held that bankruptcy "significantly changes the balance of factors to be considered in determining whether to allow a class action," and, accordingly, "class certification may be less desirable in bankruptcy than in ordinary civil litigation."[81]   Thus, "only compelling reasons for allowing a particular opt-out class claim can justify applying Rule 23" in bankruptcy.[82]

51.    Where the purported class is a "virgin" class, as opposed to a class that was certified pre-petition for the purpose of prosecuting a claim, courts are particularly reluctant to approve use of a class proof of claim.[83]   And in no case the Debtors have found or the Class Claimants have cited has a bankruptcy court certified a class *solely* for the purpose of filing a class proof of claim.

52.    In *American Reserve*, the seminal opinion approving the use of class proofs of claim in certain circumstances, the court identified two advantages inherent to class treatment: (1) procedurally, by consolidating litigation in one forum, class actions provide greater efficiency and ease of administration than prosecuting individual actions; and (2) substantively, class

---

[81]    *In re Ephedra Prods. Liability Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) (internal quotations marks and citation omitted).

[82]    *Id*. at 9; *see also In re Sacred Heart*, 177 B.R. at 22 (contexts in which to allow class proof of claim "should be chosen most sparingly").

[83]    *See In re Sacred Heart*, 177 B.R. at 22 (calling for "rigorous" scrutiny "where the class action . . . [has] not been certified by the nonbankruptcy forum"). Yet, even where the class predates the bankruptcy filing, courts still do not automatically approve the use of a class proof of claim. *See In re Zenith Labs. Inc.*, 104 B.R. at 664 (despite "compelling reasons for certifying the shareholder class" pre-petition, "there may be other factors in the bankruptcy proceeding that make class certification there less compelling").

actions facilitate the prosecution of small claims that would otherwise have lain dormant.[84]
Neither interest is served by use of a class proof of claim here.

> *1.    A class proof of claim would provide no procedural benefit.*

53.    As to the procedural benefits of class actions, courts, including *American Reserve*, have consistently found that the bankruptcy process, which brings all claims under a single proceeding in a single forum, serves the goal of efficiency as well as, if not better than, a class action.[85]

54.    Class Claimants contend that use of a class proof of claim to negate the Asbestos Bar Date for all unmanifested claimants would be more efficient than performing individualized, post-hoc *Grossman's* inquiries to determine whether a particular claimant's failure to file a proof of claim was excusable.[86]  This argument fails for at least three reasons.

55.    **First**, Class Claimants present no evidence that the number of late-filed proofs of claim would be significant.    While the Class Claimants suggest that many unmanifested claimants may file late proofs of claim because they were unaware of the Asbestos Bar Date, this Court has recognized that "at minimum a substantial majority of potential claimants will receive direct news from the Debtors,"[87] and that in light of the Debtors' extensive outreach program, the

---

[84]    *In re Am. Reserve*, 840 F.2d at 489.

[85]    *See, e.g., id.* ("The bankruptcy forum, as a mandatory collective proceeding, serves this purpose without the overlay of the class action."); *In re Zenith*, 104 B.R. at 662 (policy of efficiency "is served through the mechanism of the bankruptcy proceeding itself, independent of the class action rules"); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 376 (Bankr. S.D.N.Y. 1997) ("A bankruptcy proceeding offers the same procedural advantages as the class action because it concentrates all the disputes in one forum.").

[86]    D.I. 7185, Certification Motion, ¶¶ 34-35.

[87]    12/3/2015 H'rg Tr. at 60:17-19.

number of potential claimants who failed to receive any notice at all will be insignificant.[88]

Class Claimants offer only unsupported speculation in response.[89]

56.    Moreover, a potential claimant who fails to file a timely unmanifested asbestos

proof of claim is unlikely to file a late proof of claim unless and until that claimant develops an

asbestos-related disease.  But based on the Debtors' historical experience with asbestos claims, it

is unlikely that an unmanageable number of unmanifested claimants will become sick in the

future.[90]  Even should unmanifested, future asbestos claims outweigh present claims, as Class

Claimants contend,[91] unmanifested claimants have already filed more claims than manifested

claimants by a ratio of over eight to one.[92]  There is thus no reason to believe there exists a large

group of unmanifested claimants who (a) have not already filed a class proof of claim, and

(b) will develop an asbestos-related disease at some point in the future, prompting them to file a

late proof of claim.

57.    *Second*, Class Claimants' argument proves too much, as the efficiency benefits

they allege come at the cost of the Asbestos Bar Date itself.  By Class Claimants' reasoning,

---

[88]    *See id.* at 60:20-22 ("[I]t would be unreasonable for a significant number of unmanifested claimants not to be aware of their exposure to asbestos at this point in time.")

[89]    Specifically, Class Claimants argue that because the named claimants did not receive notice, thousands of other unmanifested claimants likely did not either.  *See* D.I. 7185, Certification Motion, ¶ 12.  This disregards the obvious fact that the named claimants *did* receive some form of notice of the Asbestos Bar Date, as evidenced by their filing of this Certification Motion.

[90]    *See* 12/3/2015 Hr'g Tr. at 57:10-11 ("Since 1992 the Debtors incurred approximately 26.4 million in total asbestos expenses."); D.I. 4983, *Debtors' Reply to the Objection of the EFH Official Committee to the Debtors' Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof*, ¶ 10 (since 1992, 972 asbestos cases have been filed against the Debtors (including a large number in which the Debtors were not directly named as defendants and rather involved rejected indemnity demands), and Debtors have incurred approximately $26.4 million in aggregate asbestos defense expenses).

[91]    D.I. 7185, Certification Motion, ¶ 1 n.2 (contending, without citation, that the value of unmanifested, future claims will be four to five times larger than the value of present claims).

[92]    Katchadurian Decl., ¶ 5 (approximately 6,000 claims filed are categorized as unmanifested claims, while approximately 700 are categorized as manifested).

administration of *any* claims process may be made more "efficient" by freely allowing claims to be asserted after the bar date, without requiring any showing of excusable neglect. While such an approach would indeed obviate the need for retrospective assessment of due process, it would also wipe out any sense of finality in the claims evaluation process, and would make development of a plan of reorganization concordantly more difficult.

58.     ***Third*,** certifying a class of unmanifested asbestos claimants here would generate a tremendous *inefficiency*. Namely, the Debtors would be required to provide notice of the class action to putative class members.[93]  But the Debtors—with the agreement of the EFH Official Committee and the Court's endorsement—have already developed and executed a comprehensive Notice Plan designed to inform unmanifested asbestos claimants of their claims and the Asbestos Bar Date. Those efforts came at substantial cost in judicial and party resources.

59.     Even Class Claimants recognize that the notice required by Rule 23 would require the very same outreach efforts already undertaken by the Debtors under the Notice Plan.[94]  There is no justification for such an unnecessary duplication of effort, which would cut directly against the efficiency benefits of class actions.

2.     *A class proof of claim would provide no substantive benefit.*

60.     The substantive goals of class treatment are likewise poorly served through a class proof of claim here. Class actions in bankruptcy may be warranted where (a) potential claimants will not recognize their entitlement to compensation otherwise; or (b) potential claims would

---

[93]   *See* Fed. R. Civ. P. 23(b)(2)(B).

[94]   *See* D.I, 7185, Certification Motion, ¶ 61 ("Indeed, a variation of the method proposed in the court's July 15, 2015 order may be most appropriate to ascertain the individuals within the proposed class . . . ."). To the extent that Class Claimants propose vague "improvements" to the notice given "to protect [unmanifested asbestos claimants'] due process rights without changing the bar date," *see id.*, that ship has long since sailed. The Court approved the Notice Plan without objection.

otherwise lie dormant because the claims are too small or uncertain to prosecute.[95]   Neither concern justifies a class proof of claim here.

61.   **First,** ever since *American Reserve* courts have recognized that a bankruptcy court may "achieve the principal benefit of the class action device" by providing notice to potential claimants, informing them of the bankruptcy and their right to recovery.[96]   Where, as here, extensive notice pursuant to a heavily negotiated and Court-ordered Notice Plan has already been provided, there is little concern that potential claimants will not recognize their entitlement to compensation.[97]   Class treatment would provide no additional notice benefit.

62.   **Second,** a class proof of claim would not provide any additional assurance that small or uncertain claims would be prosecuted.   In contrast to cases involving pre-petition classes certified by non-bankruptcy courts, the purported class here would not *prosecute* anything other than a class proof of claim.[98]   But class members can easily do that themselves through the simple process the Debtors have established, at virtually no cost.[99]

---

[95]   *See In re Zenith*, 104 B.R. at 662-663; *Am. Reserve*, 840 F.2d at 489.

[96]   *Am. Reserve*, 840 F.2d at 493-494 (noting that the bankruptcy judge could render class treatment unnecessary by ordering the trustee to send notice and a proof of claim form to known claimants).

[97]   *See In re W.R. Grace*, 389 B.R. at 377 (denying class proof of claim where claimants did not show "why the extensive notice procedures already utilized in the case are insufficient or would be substantially enhanced by a class certification and notice process"); *see also In re Ephedra*, 329 B.R. at 9 (bankruptcy notice directed to class members renders class treatment unnecessary).

[98]   Unmanifested claimants have no injuries, and thus no cause of action to prosecute.   Should an unmanifested claimant develop asbestos-related injuries, she would cease to be a member of the unmanifested claimant class.

[99]   *See In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. at 376 (class proof of claim does not serve substantive goals of class action mechanism where "bankruptcy creditor can, with a minimum of effort, file a proof of claim and participate in distributions").

63.    Indeed, the proof is in the pudding, as approximately 6,000 unmanifested asbestos claimants have already filed timely individual proofs of claim.[100]  Experience thus reflects that class treatment here is unnecessary to ensure that unmanifested proofs of claim will be filed.

## C.    Denying Class Certification Will Not Prejudice Claimants.

### 1.    Asbestos claimants' due process rights are protected.

64.    Although class proofs of claim would eviscerate the Asbestos Bar Date and the Notice Plan, at a tremendous cost to Debtors and for no efficiency or substantive benefit, Class Claimants insist that class certification is necessary to "avoid[] prejudice to putative class members."[101]  Not so.

65.    This Court has repeatedly ruled that the Notice Plan prospectively satisfies due process requirements for unmanifested claimants generally.[102]  Class Claimants offer no evidence that the Debtors failed to provide notice consistent with the mandates of the extensive court-approved Notice Plan.  Even if potential claimants did not receive direct notice from the Debtors, the enormous amount of publicity surrounding the Debtors' restructuring, as well as

---

[100]    Katchadurian Decl., ¶ 5; *see also Gentry v. Siegel*, 668 F.3d 83, 94 (4th Cir. 2012) (bankruptcy judge did not abuse discretion in denying class proof of claim where thousands of individual claims had been filed and existing mechanisms for claims processing were operating smoothly).

[101]    D.I. 7185, Certification Motion, ¶ 32.

[102]    *See* D.I. 5171, Asbestos Notice Order at ¶ 19 ("Notice of the Asbestos Bar Date as set forth in this Asbestos Bar Date Order and in the manner set forth herein constitutes adequate and sufficient notice of the Asbestos Bar Date and satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules."); 12/3/2015 Hr'g Tr. at 52:21-24 ("Some of [the *Grossman's*] factors can be analyzed prospectively, and all of them indicate that the Debtors' plan for giving notice to unmanifested claimants comports with due process."); *see id.* at 59:12-62:7, 62:15-63:4; *see* D.I. 5265, *Order Denying Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative*.

advertising by asbestos claimants' law firms, makes it exceedingly unlikely that claimants are unaware of their rights.[103]

66.    Moreover, should all other safeguards fail and some unmanifested claimants remain unaware of the Asbestos Bar Date, their due process concerns may be reviewed on a case-by-case basis.[104]    Here, Class Claimants overreach in making ex ante "due process" demands in an effort to stem an unlikely "avalanche" of later individualized *Grossman's* analyses.[105]    The mere possibility that the Notice Plan may have missed some unmanifested claimants does not warrant approval of a class-wide, open-ended placeholder to protect against due process qualms that do not globally apply to the proposed class, and which may never materialize.

67.    The pending motion is merely one more improper collateral attack on the Asbestos Notice Order.  As with the prior attempts to undermine that order, this one should be rejected.

>    *2.    Any claim of prejudice is belied by the timing of this motion.*

68.    "The most propitious time for filing a motion for class recognition is before the bar date is established, since the bar date is effectively uprooted in part by an extension of the bar date for a favored class of creditors."[106]    In *Sacred Heart*, the court rejected a motion for

---

[103]    *See* ¶¶ 19-23 *supra*; s*ee also Sacred Heart*, 177 B.R. at 24 ("If, as the Movants apparently contend, the Debtor missed several potential claimants, it is doubtful that [Movants' counsel's] own media blitz and mailings missed them.").

[104]    12/3/2015 Hr'g Tr. at 62:15-25 ("Finally, the Court wishes to make clear that the standard of due process here is prospective.  It is entirely possible that an unmanifested claimant may bring a claim after the bar date, argue the Debtors' notice scheme was unconstitutional, as applied to her, and be correct in that argument.  She would have her claim reinstated and the Debtors would then be free to dispute its validity and/or her damages. . . . That determination is irrelevant to whether the Debtor's [sic] notice scheme prospectively satisfies due process.").

[105]    *See* D.I. 7185, Certification Motion, ¶ 34.

[106]    *Sacred Heart*, 177 B.R. at 23.

certification of a class proof of claim "filed only at the eleventh hour, eleven days before the bar date was to run and just prior to the holiday season[.]"[107]

69.     Class Claimants, too, waited until the eve of confirmation, just 19 days before the bar date and with the holiday season approaching, to file their motion for class certification.  The Asbestos Bar Date Opinion was issued on January 7, 2015, the Asbestos Bar Date and notice procedures were set on July 30, 2015, and notice was sent and published promptly thereafter, as counsel to Class Claimants was fully aware.[108]   During that time and through the present, the Debtors and other parties worked tirelessly to negotiate, develop, and confirm a plan of reorganization in one of the largest restructurings in history.  Meanwhile, the Asbestos Notice Order went unchallenged.  In developing the plan, the parties relied on the finality and certainty the Asbestos Bar Date offered with respect to which potential liabilities will survive the reorganization.  Class Claimants may not now unilaterally change the rules.[109]

## II.     The Proposed Class Does Not Meet The Requirements For Certification.

70.     Application of Rule 23 to the asbestos proof of claim process would not only be inappropriate, it would also be futile.  Rule 23 allows members of an ascertainable class to sue as representative parties on behalf of all members only if the prerequisites of numerosity, commonality, typicality, and adequacy of representation are met.[110]   In the case of a 23(b)(3)

---

[107]   *Id.* at 20, 23-24.

[108]   *See* ¶¶ 8, 24-25 *supra* (noting that Claimants' local counsel, Hogan McDaniels, has been involved in these chapter 11 cases, including litigation of the bar date and notice procedures).

[109]   *See In re Tarragon Corp.*, Case No. 09-10555 (DHS), 2010 Bankr. LEXIS 3410, *12-13 (Bankr. D.N.J. Sept. 24, 2010) (rejecting motion for certification of class proof of claim, in part because of unjustifiable delay in bringing motion only after a plan of reorganization had been confirmed with support of all creditor groups and subsequently implemented).

[110]   Fed. R. Civ. P. 23(a).

class action, like the purported action here,[111] the class representative must also demonstrate the superiority of a class action under the circumstances.[112]  The proposed class does not satisfy any of these requirements.

71.    As an initial matter, the proposed class does not lend itself to a traditional Rule 23 analysis, because that rule assumes that a certified class will *prosecute* causes of action on a class basis.  Here, the Class Claimants seek no such thing, and cite no authority for the proposition that a class can be certified for the sole purpose of *filing* a claim.  Just as it would be inappropriate to certify a class for the sole purpose of avoiding the statutes of limitations that would otherwise apply to individual claims, it is inappropriate to do so solely to avoid the Asbestos Bar Date, which would otherwise apply to each unmanifested asbestos claimant.[113]  Rule 23 simply does not contemplate such an inappropriate tactical move.

72.    <u>Ascertainable class</u>.  As discussed above, the Certification Motion articulates several conflicting class definitions.  Thus, the Certification Motion fails to clearly identify an ascertainable class.[114]  To the extent the class is defined to include only unmanifested claimants who were not reached by the Notice Plan, as the Certification Motion suggests in places,[115] then

---

[111]    *See* D.I. 7185, Certification Motion, ¶ 43 ("Claimants here proceed under Rule 23(b)(3)[.]").

[112]    Fed. R. Civ. P. 23(b)(3).

[113]    *See In re Cable & Wireless USA, Inc.*, 338 B.R. 609, 615 (Bankr. D. Del. 2006) ("In bankruptcy, a bar date notice is meant to function as a statute of limitations and effectively exclude such late claims in order to provide the Debtor and its creditors with finality to the claims process and permit the Debtor to make swift distributions under the Plan." ) (internal quotation marks omitted); *In re New Century TRS Holdings, Inc.*, 465 B.R. 38, 53 (Bankr. D. Del. 2012) ("[S]trict enforcement of the bankruptcy bar date is no more unfair than application of a statute of limitations to foreclose a tort claim.") (internal quotation marks omitted).

[114]    *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) ("[A] plaintiff must show, by a preponderance of the evidence, that the class is currently and readily ascertainable based on objective criteria, and a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met.") (internal citation and quotation marks omitted).

[115]    *See, e.g.*, D.I. 7185, Certification Motion, ¶ 3. ("Class Claimants are all persons who hold unmanifested claims and who did not receive notice of the instant action.")

it is by definition *not* ascertainable—there is no reasonable way for the Debtors to identify those unmanifested asbestos claimants who did not receive notice.

73.    <u>Numerosity</u>.    Again, if the proposed class is limited to unmanifested asbestos claimants who did not receive notice, then the Certification Motion fails to establish numerosity. There is no allegation, much less any evidence, that a non-negligible proportion of unmanifested asbestos claimants were missed by the Notice Plan.

74.    Regardless, no matter how broadly the class is defined, "joinder" of all claimants is neither impractical nor inconvenient.[116]  Putative class members may easily submit individual proofs of claim, if they desire to do so, and accepting even large numbers of individual proofs of claim will work no burden on the Court.[117]  The mechanism in place requires just a few minutes of a prospective claimant's attention and provides for online or paper submission.  As testament to the ease and efficacy of this mechanism, the Court has already accepted some 6,000 proofs of claim submitted by unmanifested claimants.

75.    <u>Commonality</u>.    Nor can it be said that there are questions of law or fact common to the class.[118]  Because the sole purpose of the proposed class is to enable a class proof of claim, the only relevant question is whether each of the putative class members is entitled to file a proof of claim.  That question cannot be answered on a class-wide basis.  Whether an individual

---

[116]    *See In re W.R. Grace*, 389 B.R. at 378 (no showing of numerosity where class claimants presented no evidence of "why any remaining claims cannot be timely adjudicated through the . . . case management process already established and working in this case.")

[117]    *See Gentry v. Siegel*, 668 F.3d at 94 ("[T]the court could reasonably conclude that even several thousand claims would better be handled by the well-functioning claims resolution process that the court had already put into place.") (citations omitted).

[118]    Fed. R. Civ. P. 23(a)(2).

claimant was exposed to asbestos by the Debtors can only be determined on a case-by-case basis.[119]

76.      Neither do the purported class members have much in common when it comes to the alleged primary purpose of the Certification Motion: to prevent prejudice to class members. Approximately 6,000 unmanifested asbestos claimants have already filed their own proofs of claim, and would suffer no prejudice at all.  Of those who did not file proofs of claim, many received direct notice, while some did not.  Many received constructive notice, while some may not have.  Some learned of the Asbestos Bar Date through alternative means—as the Class Claimants allegedly did—while others undoubtedly did not.  In short, the purported class members have little in common when it comes to whether their claims would be expunged in the absence of a class proof of claim.

77.      The only common issues to which Class Claimants point are irrelevant to their class proof of claim, including "the health hazards of asbestos, the Asbestos Debtors' knowledge of those dangers, the Asbestos Debtors' failure to warn class member or mitigate such exposures, the ineffectiveness of safety protocols if any adopted by Asbestos Debtors and the concert of action or conspiracy in the formation of and adherence to industry practices."[120]  Whether or not these may be common issues in a class action *prosecuting* asbestos claims, the instant proposed class of unmanifested claimants by definition does not have litigable claims, and Class Claimants seek certification solely for the purpose of filing a class proof of claim.  And, even if Class Claimants did seek to prosecute asbestos claims on behalf of the proposed class, individualized

---

[119]   *See In re W.R. Grace*, 389 B.R. at 379 ("A class action format is not conducive to resolution of issues such as whether a Grace product is in place in any claimant's building or whether a specific state's statute of limitations has run inasmuch as those questions cannot be resolved without reference to each claim or to smaller sets of claims.").

[120]   D.I. 7185, Certification Motion, ¶ 49.

issues would predominate there as well, including the length and nature of their exposure to asbestos, the nature of their symptoms (if any), and any other complicating health factors.[121]

78.    Because there is little commonality among the class members, it follows that common questions do not predominate over the questions affecting only individual members.[122]

79.    Typicality.  Likewise, Class Claimants' claims are not typical of the claims of the putative class.  Most glaringly, the Class Claimants argue that class certification is necessary to avoid prejudice to any unmanifested asbestos claimants who would otherwise remain unaware of the Asbestos Bar Date, yet each of the Class Claimants is very much aware of that deadline.  The Class Claimants cannot be said to speak for claimants who have no notice whatsoever of the Asbestos Bar Date, to the extent any such claimants exist.

80.    Superiority.  Most importantly, as exhaustively discussed above, a class proof of claim is neither substantively nor procedurally superior to proceeding with individual proofs of claims.[123]  FRCP 23(b)(3) identifies four factors used by the court in evaluating superiority.[124] None favors class treatment here.  The first, "the class members' interest in individually

---

[121]  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997) (affirming Third Circuit reversal of certification of a class of asbestos plaintiffs for failure to satisfy 23(b)(3) predominance requirement, and noting that mass tort claims are often not appropriate for class treatment); *In re Motors Liquidation Co.*, 447 B.R. 150, 159-60 (Bankr. S.D.N.Y. 2011) ("Civil actions involving mass torts are often not certified for class action treatment, even in non-bankruptcy plenary litigation, because so many individualized legal and individualized damages inquiries are ultimately required.").

[122]  *See* Fed. R. Civ. P. 23(b)(3); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004) ("We have previously noted that the Rule 23(b)(3) predominance requirement, which is far more demanding, incorporates the Rule 23(a) commonality requirement.").

[123]  *See* ¶¶ 50-63 *supra*; Fed. R. Civ. P. 23(b)(3) (class action only appropriate where court determines "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"); *In re Ephedra*, 329 B.R. at 9 ("However, this superiority of the class action vanishes when the 'other available method' is bankruptcy, which consolidates all claims in one forum and allows claimants to file proofs of claim without counsel and at virtually no cost."); *In re Motors*, 447 B.R. at 163 ("Also, the inherent simplicity of the bankruptcy process tends to make class action treatment not superior, as a general matter and in this case, because an individual claimant would need only to fill out and return a proof of claim form.").

[124]  Fed. R. Civ. P. 23(b)(3)(A)-(D)

controlling the prosecution . . . of separate actions,"[125] does not apply as the purported class will not prosecute any action. That said, given that some 6,000 unmanifested claimants have already individually filed proofs of claim, class members appear perfectly content to file their own proofs of claim. For the same reason, the second factor, "the extent and nature of any litigation . . . already begun by class members" similarly favors denial of class treatment, in light of the roughly 6,000 independent claims.[126] The third factor, "the desirability or undesirability of concentrating the litigation of the claim in the particular forum" has already been accomplished through the bankruptcy process.[127] And, the fourth factor—"the likely difficulties in managing a class action"—is inapplicable given the fact that this class will not prosecute any claims. Nonetheless, as explained at length above, certifying a class would create no additional efficiencies, eviscerate the Asbestos Bar Date, and require wasteful duplicative notice.[128]

81. Accordingly, even if the Court were inclined to apply Rule 23, the Certification Motion should be denied.[129]

**CONCLUSION**

82. For the foregoing reasons, the Court should enter an order denying the Certification Motion.

---

[125] Fed. R. Civ. P. 23(b)(3)(A)

[126] Fed. R. Civ. P. 23(b)(3)(B)

[127] Fed. R. Civ. P. 23(b)(3)(C).

[128] *See* ¶¶ 50-63 *supra*.

[129] In the event the Court is not inclined to reject class certification outright, the Debtors respectfully request an opportunity to test the Rule 23 requirements by taking discovery from Class Claimants. *See Hart v. Nationwide Mut. Fire Ins. Co.*, 270 F.R.D. 166, 168 (D. Del. 2010) ("With regard to pre-certification discovery in putative class actions, typically district courts will allow discovery relevant to determining whether the requirements of Rule 23(a) are satisfied and whether the action is maintainable under one of the categories listed in Rule 23(b).") (quotation omitted).

Dated: December 9, 2015
      Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:       collins@rlf.com
             defranceschi@rlf.com
             madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:       edward.sassower@kirkland.com
             stephen.hessler@kirkland.com
             brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:       james.sprayregen@kirkland.com
             marc.kieselstein@kirkland.com
             chad.husnick@kirkland.com
             steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*