9
9

Prepared by and mail to:

COPY                                                    CONFORMED

Clifford Chance US LLP
200 Park Avenue
New York, New York 10166
Attn: Dawn E. Goldberg, Esq.


TEXAS                                              DALLAS COUNTY,

## DEED OF TRUST, ASSIGNMENT OF LEASES,
### SECURITY AGREEMENT, FINANCING STATEMENT AND FIXTURE FILING

THIS DEED OF TRUST (this "Instrument") entered into as of the 15th day of May, 2003 but effective as of the 19th day of May, 2003 by MARCONI COMMUNICATIONS, INC., a Delaware corporation ("Trustor"), having an address at c/o Marconi Corporation plc, One Bruton Street, London W1J 6AQ United Kingdom, to WARD WILLIFORD ("Trustee"), having an address at 1909 Woodall Rodgers Freeway, Suite 410, Dallas County, Texas 75201, for the use and benefit of THE LAW DEBENTURE TRUST CORPORATION p.l.c., a public limited company organized under the laws of England and Wales, as Security Trustee for the Secured Creditors (as defined in the Intercreditor Agreement) (together with any co-trustee, co-agent or other entity that may be appointed after the date hereof pursuant to clause 16 of the Intercreditor Agreement (as defined below)) ("Beneficiary") under the Security Trust and Intercreditor Deed dated the date hereof and made among Marconi Corporation plc as Issuer; Beneficiary; the persons listed in Schedule 1 thereto as Guarantors; Law Debenture Trust Company of New York as Senior Note Trustee; JPMorgan Chase Bank as Junior Note Trustee; HSBC Bank plc as New Bonding Facility Agent; The Bank of New York as Depositary, Paying Agent and Registrar; the persons listed in Part A Schedule 2 thereto as Intra-Group Creditors; the persons listed in Part B Schedule 2 thereto as Intra-Group Borrowers and the persons listed in Schedule 3 thereto as New Bonding Facility Banks (as amended, modified or supplemented from time to time, the "Intercreditor Agreement"), having an address at Fifth Floor, 100 Wood Street, London EC2V 7EX, United Kingdom. Capitalized terms used herein without definition shall have the respective meanings assigned to such terms in the Intercreditor Agreement.

{02780774.DOCX/}

W I T N E S S E T H:

WHEREAS, Trustor is a United States wholly-owned subsidiary of Marconi Corporation, plc (the "Issuer"), which is the Issuer under the Indentures, the Notes and the New Bonding Facility Agreement;

WHEREAS, as of the date hereof and in favor of Beneficiary, Trustor has entered into a Guarantee of the Senior Notes and Senior Note Indenture, a Guarantee of the Junior Notes and the Junior Note Indenture and a Composite Guarantee of certain other obligations under the Relevant Documents, including the New Bonding Facility Agreement (collectively, the "Guarantees"), pursuant to which Trustor has agreed to guarantee the "Guaranteed Obligations" (as such term is defined in each of the Guarantees) and has agreed to secure the Guaranteed Obligations and other obligations;

WHEREAS, Trustor has received substantial benefit from the Secured Obligations (as defined below) secured hereby, which consist of, among other things, term notes and a revolving bonding

i

facility, made in the aggregate principal amount of up to One Billion Two Hundred Eighty-Four Million Nine Hundred Twenty-Five Thousand and No/100 Dollars (U.S. $1,284,925,000.00) with a maturity date of October 31, 2008; and

WHEREAS, Beneficiary and the Secured Creditors have required that Trustor execute and deliver this Instrument (i) in order to secure the prompt and complete payment, observance and performance of all of the Secured Obligations (as defined below) and (ii) as a condition precedent to Beneficiary and the Secured Creditors entering into the Relevant Documents.

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

GRANTING CLAUSE

To secure the payment and the performance and discharge of the Secured Obligations (as hereinafter defined), and for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and

{02780774.DOCX / }

confessed, Trustor has GRANTED, BARGAINED, SOLD, WARRANTED, MORTGAGED, ASSIGNED, TRANSFERRED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, WARRANT, MORTGAGE, ASSIGN, TRANSFER and CONVEY unto Trustee, in trust for the use and benefit of Beneficiary, with power of sale and right of entry and possession, all of Trustor's present and future estate, right, title and interest in and to the Mortgaged Property (as hereinafter defined) now owned, or hereafter acquired by Trustor, including the following described real estate in Dallas County, Texas (the "State"):

See Exhibit A attached hereto and by this reference made a part hereof which real estate (the "Land"), together with all right, title and interest, if any, which Trustor may now have or hereafter acquire in and to all improvements, buildings and structures thereon of every nature whatsoever, is herein called the "Premises."

TOGETHER WITH all right, title and interest, if any, including any after-acquired right, title and interest, and including any right of use or occupancy, which Trustor may now have or hereafter acquire in and to (a) all easements, rights of way, gores of land or any lands occupied by streets, ways, alleys, passages, sewer rights, air rights, development rights, water courses, water rights and powers, and public places adjoining said Land, and any other interests in property constituting appurtenances to the Premises, or which hereafter shall in any way belong, relate or be appurtenant thereto and (b) all hereditaments, gas, oil, minerals (with the right to extract, sever and remove such gas, oil and minerals), and easements, of every nature whatsoever, located in or on the Premises and all other rights and privileges thereunto belonging or appertaining and all extensions, additions, improvements, betterments, renewals, substitutions and replacements to, or of any rights and interests described in subparagraph (a) above and this subparagraph (b) (hereinafter collectively called the "Property Rights").

TOGETHER WITH all additional lands, estates and development rights hereafter acquired by Trustor for use in connection with and the development of the Land, the Premises or the Property Rights and all additional lands and estates therein which may, from time to time, by supplemental deed of trust or otherwise, be expressly made subject to the lien of this Instrument.

TOGETHER WITH all right, title and interest, if any, including

(02780774.DOCX / )

any after-acquired right, title and interest which Trustor may now or hereafter

acquire in and to fixtures and appurtenances of every nature whatsoever now or

hereafter located in, on or attached to, and used or intended to be used in

2

connection with, or with the operation of, the Premises, including, but not limited to, (a) all apparatus, machinery, and equipment of Trustor; (b) all extensions, additions, improvements, betterments, renewals, substitutions, and

replacements to or of any of the foregoing (the items described in the foregoing

(a) and (b) being the "Fixtures"); and (c) all personal property and equipment

of every nature whatsoever now or hereafter located in or on the Premises, including, but not limited to, (i) all screens, window shades, blinds, wainscoting, storm doors and windows, floor coverings, and awnings of Trustor;

(ii) all apparatus, machinery, equipment and appliances of Trustor not included

as Fixtures; (iii) all items of furniture, furnishings, and personal property of

Trustor; and (iv) all extensions, additions, improvements, betterments, renewals, substitutions, and replacements to or of any of the foregoing (i)-(iii) (the items described in the foregoing (i)-(iv) and any other personal

property referred to in this paragraph being the "Personal Property") and in and

to the proceeds of the Personal Property. It is mutually agreed, intended and declared that the Premises and all of the Property Rights and Fixtures owned by

Trustor (referred to collectively herein as the "Real Property") shall, so far

as permitted by law, be deemed to form a part and parcel of the Land and for the

purpose of this Instrument to be real estate and covered by this Instrument. It

is also agreed that if any of the property herein conveyed is of a nature so that a security interest therein can be perfected under Article 9 of the Uniform

Commercial Code as enacted by the State ("UCC"), this Instrument shall constitute a security agreement, fixture filing and financing statement, and Trustor agrees to execute, deliver and file or refile any financing statement,

continuation statement, or other instruments Beneficiary may require from time

to time to perfect or renew such security interest under the UCC. To the extent

permitted by law, (x) all of the Fixtures are or are to become fixtures on the

Land; and (y) this Instrument shall be effective as a financing statement filed

{02780774.DOCX / }

as a fixture filing with respect to all fixtures included within the Mortgaged
Property and is to be filed for record in the real estate records in the Office
of the County Clerk where the Mortgaged Property (including said Fixtures) is
situated, in accordance with Section 9.502 and other applicable provisions of
the Texas Business and Commercial Code, as amended from time to time. This
Instrument shall also be effective as a financing statement covering minerals or
the like (including oil and gas) and accounts subject to Subsection (e) of
Section 9.103 of the Texas Business and Commerce Code, as amended, and is to be
filed for record in the real estate records of the county where the Mortgaged
Property is situated. The mailing address of Trustor and the address of
Beneficiary from which information concerning the security interest may be
obtained are set forth above. Subject to the terms and conditions of the
Intercreditor Agreement, the remedies for any violation of the covenants, terms
and conditions of the agreements herein contained shall be as prescribed herein
or by general law, or, as to that part of the security in which a security
interest may be perfected under the UCC, by the specific statutory consequences
now or hereafter enacted and specified in the UCC, all at Beneficiary's sole
election.

TOGETHER WITH all the estate, right, title and interest of
Trustor, in and to all (i) judgments, insurance proceeds, unearned premiums,
awards of damages and settlements, and any interest thereon, resulting from
condemnation proceedings or the taking of the Real Property, or any part
thereof, under the power of eminent domain or for any damage (whether caused by
such taking or otherwise) to the Real Property, the Personal Property or any
part thereof, or to any rights appurtenant thereto, and all proceeds of any
sales or other dispositions of the Real Property, the Personal Property or any
part thereof; and (subject to the terms of the Intercreditor Agreement)
Beneficiary is hereby authorized to collect and receive said awards and proceeds
and to give proper receipts and acquittances therefor, and to apply the same as
provided in the Intercreditor Agreement; (ii) contract rights, general
intangibles, actions and rights in action, relating to the Real Property or the
Personal Property, including, without limitation, all rights to insurance
proceeds and unearned premiums arising from or relating to damage to the Real
Property or the Personal Property; and (iii) proceeds, products, replacements,
additions, substitutions, renewals and accessions of and to the Real Property or
the Personal Property. (The rights and interests described in this paragraph
shall hereinafter be collectively called the "Intangibles.")

3

{02780774.DOCX / }

TOGETHER WITH all the rents, issues and profits of the Real Property and all rents, issues, profits, revenues, royalties, bonuses, rights and benefits due, including all rents, revenues, bonus money, royalties, rights and benefits accruing to Trustor under all present and future oil, gas and mineral leases located on any portion of the Mortgaged Property, payable or accruing (including all deposits of money as advance rent, for security or as earnest money or as downpayment for the purchase of all or any part of the Real Property or the Personal Property) (the "Rents") under any and all Leases (as defined below).

As additional security for the Secured Obligations, Trustor does hereby pledge and assign to Beneficiary from and after the date hereof (including any period of redemption), primarily and on a parity with said real estate, and not secondarily, any and all present and future leases, contracts or other agreements relating to the ownership of the Real Property or the Personal Property or to the occupancy of all or any portion of the Real Property and, except to the extent such a transfer or assignment is not permitted by the terms thereof (and a consent to the transfer or assignment has not been obtained), does hereby transfer and assign to Beneficiary all such leases, contracts and agreements (including all Trustor's rights (x) under any contracts for the sale of any portion of the Mortgaged Property (as hereinafter defined) and (y) to all revenues and royalties under any oil, gas and mineral leases relating to the Real Property) (the "Leases"). Trustor further agrees to execute and deliver such assignments of leases or assignments of land sale contracts as Beneficiary may from time to time request solely for the purpose of creating, protecting, perfecting or maintaining an enforceable lien thereon and an enforceable and valid assignment of Leases. Upon the occurrence of a Trigger Event, (i) Trustor agrees, upon demand, to deliver to Beneficiary all of the Leases with such additional assignments thereof as Beneficiary may request and agrees that Beneficiary may assume the management of the Real Property, including taking control of the Leases (provided that such assumption of management shall be done solely to the extent necessary to collect the Rents in the event of a Material Default), and (ii) Trustor hereby authorizes and directs all tenants, purchasers or other persons occupying or otherwise acquiring any interest in any part of the Real Property to pay the Rents due under the Leases to Beneficiary upon request of Beneficiary. Trustor hereby appoints Beneficiary as its true and lawful attorney-in-fact to manage said property and to control the Leases, with full power to bring suit for collection of the Rents and possession of the Real Property (provided that such possession shall be taken solely to the extent necessary to collect such Rents in the event of a Material Default), giving and

{02780774.DOCX / }

granting unto said Beneficiary and unto its agent or attorney full power coupled with an interest and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in the protection of the security hereby conveyed; provided, however, that (i) this power of attorney and assignment of Leases shall not be construed as an obligation upon said Beneficiary to make or cause to be made any repairs that may be needful or necessary, and (ii) Beneficiary agrees that so long as no Trigger Event shall have occurred, Beneficiary shall permit Trustor to perform the aforementioned management responsibilities. Upon Beneficiary's receipt of the Rents, at Beneficiary's option, it may: (i) pay charges for collection hereunder, costs of necessary repairs and other costs requisite and necessary during the continuance of this power of attorney and assignment of Rents, (ii) pay general and special taxes, insurance premiums, and, thereafter, (iii) distribute the balance of the Rents pursuant to the provisions of the Intercreditor Agreement. This power of attorney and assignment of Leases shall be irrevocable until this Instrument shall have been satisfied and released of record and the releasing or reconveyance of this Instrument shall act as a revocation of this power of attorney and assignment of Leases. Subject to Beneficiary's grant to Trustor the collection and use of the Rents set forth above, Beneficiary shall have and hereby expressly reserves the right and privilege (but assumes no obligation) to demand, collect, sue for, receive and recover the Rents, or any part thereof, now existing or hereafter made, and apply the same in accordance with the provisions of the Intercreditor Agreement. Notwithstanding anything to the contrary herein, this power of attorney and assignment of Leases shall be subject and subordinate to Beneficiary's rights set forth in that certain Assignment of Rents dated of even date herewith, and if there is any conflict between

4

the terms of this Instrument and the terms of such Assignment of Rents the terms of such Assignment of Rents shall control. For purposes of this Instrument, a "Trigger Event" shall mean (i) an Enforcement Event or (ii) a "Material Default" which for purposes of this Instrument shall mean any event that is (A) an Insolvency Event which is also an Event of Default or (B) any Event of Default that the Instructing Trustee notifies and instructs Beneficiary to act in response to pursuant to the Intercreditor Agreement. Notwithstanding anything herein, upon an Enforcement Event, Beneficiary shall have the absolute right and option to exercise any and all rights and remedies provided for in this Instrument and available at law or in equity.

{02780774.DOCX /}

All of the property described above, and each item of property herein described, and all other rights of Trustor in and to such items of property, not limited to, but including, the Land, the Premises, the Property Rights, the Fixtures, the Real Property, the Personal Property, the Intangibles, the Rents and the Leases, is herein collectively referred to as the "Mortgaged Property". As used herein, "Secured Obligations" means all present and future indebtedness, liabilities and obligations (for the avoidance of doubt, including any liabilities and obligations that have been cash-collateralized by Trustor), at any time of Trustor under the Relevant Documents (including this Instrument), including any liability in respect of any further advances, if any, made under the Relevant Documents, both actual and contingent (and whether incurred solely or jointly or in any other capacity) together with any of the following matters relating to or arising in respect of those liabilities and obligations: (1) any refinancing, novation, deferral or extension; (2) any obligation relating to any increase in the amount of such obligations; (3) any claim for damages or restitution; and (4) any claim as a result of any recovery by Trustor of a payment or discharge, or non-allowability, on the grounds of preference; and any amounts that would be included in any of the above but for any discharge, non-provability or unenforceability of those amounts in any insolvency or other proceedings (including interest accruing after the commencement of any insolvency or other proceedings).

Nothing herein contained shall be construed as constituting Beneficiary or any of its Delegates and any of the Secured Creditors a mortgagee-in-possession in the absence of the taking of actual possession of the Mortgaged Property by Beneficiary or any of its Delegates or any of the Secured Creditors. Nothing contained in this Instrument shall be construed as imposing on Beneficiary any of the obligations of the lessor under any lease of the Mortgaged Property in the absence of an explicit assumption thereof by Beneficiary. In the exercise of the powers herein granted Beneficiary, no liability shall be asserted or enforced against Beneficiary, all such liability being expressly waived and released by Trustor.

TO HAVE AND TO HOLD the Mortgaged Property, properties, rights and privileges hereby conveyed or assigned, or intended so to be, unto Trustee, its successors and assigns, for the benefit of Beneficiary, its successors and assigns, forever upon the trusts, terms and conditions and for the uses and

{02780774.DOCX /}

purposes herein set forth. The conveyance of the Mortgaged Property provided for herein is made upon this special trust. If the Secured Obligations are paid and performed in full and completely as and when due in accordance with their respective terms, the conveyance provided for herein shall be released upon satisfaction of the conditions set forth in Section 5.3 of the Intercreditor Agreement and shall thereafter be null and void and may be canceled of record at the request and cost of Trustor and title shall revest as provided by law. If, however, a Trigger Event shall have occurred, then Beneficiary shall be entitled to invoke the remedies in the granting clause above in connection with the assignment of Leases and Rents, and if an Enforcement Event shall have occurred, then Beneficiary shall, in addition to all other rights and remedies at law or equity provided, be entitled to invoke the remedies provided for in Section 4.02 below including without limitation the right to foreclose this Instrument by judicial proceedings or, at Beneficiary's election, the right to demand that Trustee foreclose this Instrument

5

through exercise of the power of sale herein granted to Trustee, and upon such demand by Beneficiary, Trustee shall have the right and the duty to foreclose this Instrument as herein provided.

The following provisions shall also constitute an integral part of this Instrument:

## ARTICLE I

## [Reserved]

## ARTICLE II

### COVENANTS OF TRUSTOR

Section 2.01.     [Reserved]

Section 2.02.     Leases Affecting the Real Property. All future lessees under any Lease of the Real Property, or any part thereof, made after the date of recording of this Instrument shall, at Beneficiary's option and without any further documentation, attorn to Beneficiary as lessor if for any reason Beneficiary becomes lessor thereunder, and, thereafter, upon demand, to pay Rent to Beneficiary, and Beneficiary shall not be responsible under such Lease for matters arising prior to Beneficiary becoming lessor thereunder. In respect of each Lease which may be entered into on or after the date hereof, the

{02780774.DOCX / }

lien and estate, as well as the provisions, terms and conditions of each Lease shall in all respects be subordinate and junior to the lien of this Instrument.

Section 2.03.    Further Assurances. Trustor, at its sole cost and expense, shall (i) upon request of Beneficiary promptly correct any defect or error which may be discovered in this Instrument or any financing statement or other document relating hereto solely to the extent necessary to create, effectuate, complete, perfect, continue or preserve the lien of this Instrument on the Mortgaged Property, and (ii) promptly execute, acknowledge, deliver, record and re-record, register and re-register, and file and re-file this Instrument, any amendment to this Instrument and any financing statements or other documents which Beneficiary may request in writing from time to time (all in form and substance reasonably satisfactory to Beneficiary) in order (A) to create, effectuate, complete, perfect, continue or preserve the lien of this Instrument as a first priority lien on the Mortgaged Property, whether now owned or hereafter acquired, subject only to the matters set forth on Exhibit B attached hereto and made a part hereof and except for the Permitted Liens (as defined in the Indentures), or (B) to create, effectuate, complete, perfect, continue, preserve or validate any right, power or privilege granted or intended to be granted to Beneficiary hereunder or otherwise accomplish the purposes of this Instrument. To the extent permitted by law and to the extent that Trustor fails to do so as required hereunder, Trustor hereby authorizes Beneficiary to file financing statements or continuation statements covering the Mortgaged Property.

Section 2.04.    Casualty Proceeds. Trustor hereby assigns to Beneficiary, as additional security, all proceeds or awards of damage resulting from a casualty event or condemnation proceedings or the taking of or injury to the Real Property for public use. All such proceeds or awards paid to Beneficiary hereunder shall be applied in accordance with the Indentures.

Section 2.05.    Inspections. Trustor hereby authorizes Beneficiary, its agents, employees and representatives, upon reasonable prior written notice to Trustor (except in an emergency or following the occurrence of any Trigger Event, in which case notice shall not be required) to visit and inspect the

6

Mortgaged Property or any portion(s) thereof, all at such reasonable times and as often as Beneficiary may reasonably request.

{02780774.DOCX/}

Section 2.06.    Indemnity. Trustor hereby indemnifies Beneficiary or any person designated by it and keep Beneficiary or such person designated by it indemnified against any and all costs, claims and liabilities which it may incur as a result of anything done by it as an attorney-in-fact for Trustor in the proper exercise of any of the powers conferred, or purported to be conferred, thereon by this Instrument unless such cost, claim or liability arises as a result of the negligence or wilful misconduct of Beneficiary or such person designated by it. For clarification purposes, the indemnity set forth in this Section 2.06 shall apply solely in those instances where Beneficiary or a Delegate acts as an attorney-in-fact for Trustor for purposes of this Instrument.

Section 2.07.    After Acquired Property Interests. All right, title and interest of Trustor in and to all of the Mortgaged Property, hereafter acquired by Trustor ("After Acquired Property Interests"), immediately upon such acquisition, without any further mortgage, conveyance, assignment or other act by Trustor, shall become subject to the lien of this Instrument as fully and completely, and with the same effect, as though owned by Trustor on the date hereof and specifically described in the granting clauses hereof. Trustor shall execute and deliver to Beneficiary all such other deeds of trust or mortgages and other agreements as Beneficiary may require for the purpose of expressly and specifically subjecting such After Acquired Property Interests to the lien of this Instrument. Trustor hereby irrevocably authorizes and appoints Beneficiary as the agent and attorney-in-fact of Trustor to execute all such documents and instruments on behalf of Trustor, which appointment shall be irrevocable and coupled with an interest, if Trustor fails or refuses to do so within ten (10) days after written request therefor by Beneficiary.

Section 2.08.    Expenses and Costs. Trustor shall, from time to time and promptly on demand by Beneficiary reimburse to Beneficiary all costs and expenses (including legal fees) on a full indemnity basis incurred by Beneficiary and any Delegate in connection with:

1.    the execution, release and discharge of this Instrument and the security created hereby or intended to be created hereby in respect of the Mortgaged Property and the completion of the transactions and perfection of the security contemplated in this Instrument or forming part of the security created hereby or intended to be created hereby in respect of the Mortgaged Property;

{02780774.DOCX / }

2.       the actual or contemplated exercise, preservation and/or
enforcement of any of the rights, powers and remedies of,
or
the performance of the duties and obligations of,
Beneficiary
or any Delegate, or any amendment or waiver in respect of
this
Instrument;

3.       the foreclosure (whether judicial or by power of sale) of
any
Mortgaged Property; and

4.       the preservation and/or enforcement of the security created
hereby or intended to be created hereby in respect of the
Mortgaged Property,

which shall carry interest from the date of such demand until so reimbursed at
the rate and on the basis as mentioned in Clause 18.4 of the Intercreditor
Agreement.

Section 2.09.        Taxes. Trustor shall pay, promptly on demand of
Beneficiary all stamp, registration, notarial and other similar taxes or fees
paid or payable by Beneficiary in connection with any action taken or
contemplated by or on behalf of Beneficiary for perfecting, maintaining,
enforcing, releasing, cancelling, reassigning or resolving any doubt
concerning,
or for any other purpose in relation

7

to this Instrument, any amendment thereto, any transfer and/or assignment of
the
rights and/or obligations under the same or the security created hereby or
intended to be created hereby in respect of the Mortgaged Property and shall,
from time to time, indemnify Beneficiary promptly on demand against any
liabilities, costs, claims and expenses resulting from any failure to pay by
Trustor or any delay by Trustor in paying any such taxes or fees.

ARTICLE III

BENEFICIARY'S RIGHTS

Section 3.01.        Performance of Trustor's Obligations. Trustor
agrees
that, upon the occurrence of an Enforcement Event, Beneficiary may, but need
not, make any payment or perform any act hereinbefore required of Trustor, in
any form and manner deemed expedient. By way of illustration and not in
limitation of the foregoing, Beneficiary may, but need not, (i) make full or
partial payments of insurance premiums which are unpaid by Trustor,
coordinate
liens or encumbrances, if any, (ii) purchase, discharge, compromise or settle
any tax lien or any other lien, encumbrance, suit, proceeding, title or claim

{02780774.DOCX /}

thereof, or (iii) redeem all or any part of the Premises from any tax or assessment. All moneys paid for any of the purposes herein authorized and all other moneys advanced by Beneficiary to protect the Mortgaged Property and the lien hereof shall be additional Secured Obligations and shall become immediately due and payable without notice and shall bear interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement until paid to Beneficiary in full. In making any payment hereby authorized relating to taxes, assessments or prior or coordinate liens or encumbrances, Beneficiary shall be the sole judge of the legality, validity and priority thereof and of the amount necessary to be paid in satisfaction thereof.

## ARTICLE IV

### REMEDIES & RIGHTS

Section 4.01.      Remedies of Beneficiary; Power of Sale. Upon the occurrence of an Enforcement Event, Beneficiary may, without notice to or demand upon Trustor, declare this Instrument to be in default, and, in addition to all other rights and remedies at law or in equity available to Beneficiary or as otherwise provided for in the Intercreditor Agreement or the Indentures, to the extent permitted by applicable law, the following provisions shall apply:

(a)      Upon the occurrence of an Enforcement Event, it shall thereupon be the duty of Trustee, or his successor or substitute, as hereinafter provided, to enforce this trust at the request of the Beneficiary (which request shall be presumed) and to sell the Mortgaged Property with or without first having taken possession of the same and in whole or in part, as the acting Trustee may elect (all rights to a marshalling of assets of Trustor being expressly waived hereby), in compliance with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code as amended or superceded from time to time. Such sale shall be made to the highest bidder for cash at public auction at the County Courthouse of any County in which the Mortgaged Property is situated, in the area of such courthouse designated for real property foreclosure sales in accordance with applicable law (or in the absence of any such designation, in the area set forth in the notice of sale hereinafter described) on the first Tuesday of any month between the hours of 10:00 A.M. and 4:00 P.M. (commencing no earlier than such time as may be designated in the hereinafter described notice of sale), after giving notice of the time, place and terms of sale and the Mortgaged Property to be sold by (i) the acting Trustee or any person chosen by him filing a copy of the notice

{02780774.DOCX / }

thereof in the office of the County Clerk of each County where the Mortgaged Property is situated and by posting or causing to be posted written or printed notice thereof

8

at least twenty-one (21) days preceding the date of said sale at the County Courthouse door of each County, and (ii) Beneficiary or any person chosen by it, at least twenty-one (21) days preceding the date of said sale, serving written notice of such proposed sale by certified mail on each debtor obligated to pay the Secured Obligations evidenced by the Notes according to the records of Beneficiary. Service of such notice to each debtor shall be completed upon deposit of the notice enclosed in a postpaid wrapper, properly addressed to each debtor at the most recent address as shown by the records of Beneficiary, in a post office or official depository under the care and custody of the United States Postal Service. The affidavit of any person having knowledge of the facts to the effect that such service was completed shall be prima facie evidence of the fact of service. After such sale, the acting Trustee shall make due conveyance with special warranty to the purchaser or purchasers and Trustor binds itself, its heirs, assigns, executors, administrators, successors and legal representatives to warrant and forever defend the title of such purchaser or purchasers, claiming by, through, or under grantor but not otherwise. Any abstract of title to the Mortgaged Property furnished in connection with the loan secured by this Instrument shall be delivered by Trustee and become the property of the purchaser at said sale.

(b)        Upon the occurrence of an Enforcement Event, the Beneficiary shall have the right and option to proceed with foreclosure in satisfaction of such item or items by directing Trustee, or his successor or substitute as hereinafter provided, to proceed as if under a full foreclosure, conducting the sale as herein provided, and without declaring the whole Secured Obligations due, and provided that if sale is made because of an occurrence of an Enforcement Event as hereinabove mentioned, such sale may be made subject to the unmatured part of the Relevant Documents and the Secured Obligations secured hereby, and it is agreed that such sale, if so made, shall not in any manner affect any other obligation or obligations secured hereby, but as to such other obligations this Instrument and the liens created hereby shall remain in full force and effect just as though no sale had been made under the provisions of this Section 4.01(a). It is further agreed that several sales may be made hereunder without exhausting the right of sale for any other breach of any of

the obligations secured hereby, it being the purpose to provide for a foreclosure and sale of the Mortgaged Property for any matured portion of any of the Secured Obligations secured hereby or other items provided for herein without exhausting the power to foreclose and to sell the Mortgaged Property for any other part of the Secured Obligations secured hereby whether matured at the time or subsequently maturing.

(c)     Subject to the terms and provisions of the Intercreditor Agreement, the proceeds from any such sale shall be applied by the acting Trustee as follows:

FIRST:    To the payment of all expenses of conveying, advertising, selling and including a the Mortgaged Property, acting reasonable commission to the Trustee.

SECOND:   To the payment to Beneficiary of all unpaid Secured Obligations, including accrued interest to the date of sale, in such priority and proportions as Beneficiary in its discretion shall deem proper.

THIRD:    The balance, if any, shall be paid to Trustor.

(d)     The acting Trustee hereunder shall have the right to sell the Mortgaged Property in whole or in part and in such parcels and order as he may determine, and the right of sale hereunder shall not be exhausted by one or more sales, but successive sales may be had until all of the Mortgaged Property have been legally sold. In the event any sale hereunder is not completed or is defective in the opinion of Beneficiary, such sale shall not exhaust the power of sale hereunder, and Beneficiary shall have the right to cause a subsequent sale or sales to be made by Trustee or any successor or substitute Trustee. Likewise, Beneficiary may become the purchaser at any such sale if it is the highest bidder, and shall

9

{02780774.DOCX / }

have the right, after paying or accounting for all costs of said sale or sales,

to credit the amount of the bid upon the amount of the Secured Obligations owing, in lieu of cash payment. The purchaser or purchasers at foreclosure shall

have the right to affirm or disaffirm any Lease.

(e)    It shall not be necessary for the acting Trustee to

have constructively in his possession any part of the real or personal property

covered by this Instrument, and the title and right of possession of the Mortgaged Property shall pass to the purchaser or purchasers at any sale hereunder as fully as if the same had been actually present and delivered. Likewise, on foreclosure of this Instrument whether by power of sale herein contained or otherwise, Trustor or any person claiming any part of the Mortgaged

Property by, through or under Trustor, shall not be entitled to a marshalling of

assets or a sale in inverse order of alienation.

(f)    The recitals and statements of fact contained in any

notice or in any conveyance to the purchaser or purchasers at any sale hereunder

shall be prima facie evidence of the truth of such facts, and all prerequisites

and requirements necessary to the validity of any such sale shall be presumed to

have been performed.

(g)    Any sale under the powers granted by this Instrument

shall be a perpetual bar against Trustor, its heirs, successors, assigns and legal representatives.

(h)    In the event of a foreclosure under the powers granted by this Instrument, Trustor, and all other persons in possession of any

part of the Mortgaged Property shall be deemed tenants at will of the purchaser

at such foreclosure sale and shall be liable for a reasonable rental for the use

of the Mortgaged Property; and if any such tenants refuse to surrender possession of the Mortgaged Property upon demand, the purchaser shall be entitled to institute and maintain the statutory action of forcible entry and detainer and procure a writ of possession thereunder, and Trustor expressly waives all damages sustained by reason thereof.

(i)    To the extent Section 51.003 of the Texas Property Code, or any amendment thereto or judicial interpretation thereof, requires that

the "fair market value" of the Mortgaged Property shall be determined as of the

foreclosure date in order to enforce a deficiency against Trustor or any other

{02780774.DOCX / }

party liable for the repayment of the Secured Obligations, the term "fair market value" shall include those matters required by law and shall also include the additional factors as follows:

(i)     The Mortgaged Property is to be valued "AS IS, WHERE IS" and "WITH ALL FAULTS" and there shall be no assumption of restoration of or refurbishment of the Mortgaged Property after the date of foreclosure;

(ii)     There shall be an assumption of a prompt resale of the Mortgaged Property for an all cash sales price by the purchaser at the foreclosure so that no extensive holding period should be factored into the determination of "fair market value" of the Mortgaged Property;

(iii)     An offset to the fair market value of the Mortgaged Property, as determined hereunder, shall be made by deducting from such value the reasonable estimated closing costs relating to the sale of the Mortgaged Property including but not limited to brokerage commissions, title policy expenses, tax prorations, escrow fees, and other common charges which are incurred by a seller of real property similar to the Mortgaged Property; and

10

(iv)     After consideration of the factors required by law and those required above (including the addition of any income to be generated by the Mortgaged Property), an additional discount factor shall be calculated based upon the estimated time it will take to effectuate a sale of the Mortgaged Property so that the "fair market value" as so determined is discounted to be as of the date of the foreclosure of the Mortgaged Property.

Section 4.02.     Application of the Rents or Proceeds from Foreclosure or Sale. The Rents and the proceeds of any sale (whether through a foreclosure proceeding or Beneficiary's exercise of the power of sale) shall be distributed and applied in accordance with the terms of the Intercreditor Agreement. Subject to the terms and provisions of the Intercreditor Agreement, there shall be allowed (and included in the decree for sale in the event of a foreclosure by judicial action) to be paid out of the Rents or the proceeds of such foreclosure proceeding and/or sale:

(a)     Secured Obligations. All of the Secured Obligations and other sums secured hereby which then remain unpaid;

(b)      Other Advances. All other items advanced or paid by Beneficiary pursuant to this Instrument, with interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement from the date of advancement; and

(c)      Costs, Fees and Other Expenses. All court costs, reasonable in-house and outside attorneys' and paralegals' fees and expenses, costs of environmental surveys and guard or other security services, appraiser's fees, advertising costs, notice expenses, expenditures for documentary and expert evidence, stenographer's charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the decree) of procuring all abstracts of title, title searches and examinations, title guarantees, title insurance policies, surveys, and similar data with respect to title which Beneficiary may deem necessary. All such expenses shall become additional Secured Obligations and be immediately due and payable, with interest thereon at the rate set forth in Clause 18.4 of the Intercreditor Agreement, when paid or incurred by Beneficiary or Trustee in connection with any proceedings, including, but not limited to, probate and bankruptcy proceedings, to which Beneficiary or Trustee shall be a party, either as plaintiff, claimant or defendant, by reason of this Instrument or any indebtedness hereby secured or in connection with the preparations for the commencement of any suit for the foreclosure, whether or not actually commenced, or sale under the power of sale herein granted.

Section 4.03.      Cumulative Remedies; Delay or Omission Not a Waiver. Each remedy or right of Beneficiary shall not be exclusive of, but shall be in addition to, every other remedy or right now or hereafter existing at law or in equity. No delay in the exercise or omission to exercise any remedy or right accruing on the occurrence or existence of any Material Default or Enforcement Event shall impair any such remedy or right or be construed to be a waiver of any such Material Default or Enforcement Event or acquiescence therein, nor shall it affect any subsequent Material Default or Enforcement Event of the same or different nature. Every such remedy or right may be exercised concurrently or independently and when and as often as may be deemed expedient by Beneficiary. The acceptance by Beneficiary, any successor administrative agent or any secured party of any payment less than the amount of the Secured Obligation in question shall be deemed to be an acceptance on account only and shall not be construed

(02780774.DOCX / )

as a waiver of any Material Default or Enforcement Event with respect thereto,

and the acceptance by Beneficiary, any successor administrative agent or any secured party of any payment of, or on account of, any Secured Obligation shall

not be deemed to be a waiver of any Material Default or Enforcement Event other

occurrence hereunder or under any Relevant Documents with respect to any other

Secured Obligation. If Beneficiary has proceeded to enforce any remedy or right

hereunder or with respect hereto by foreclosure, sale, entry or otherwise, it may compromise, discontinue or abandon such

11

proceeding for any reason without notice to Trustor or any other party (except

any other agent, the Secured Creditors or the other secured parties to the extent required by any Relevant Documents); and, if any such proceeding shall be

discontinued, abandoned or determined adversely for any reason, Trustor and Beneficiary shall retain and be restored to their former positions and rights hereunder with respect to the Mortgaged Property, subject to the lien hereof except to the extent any such adverse determination specifically provides to the contrary.

Section 4.04.    Beneficiary's Remedies against Multiple Parcels. If more than one property, lot or parcel is covered by this Instrument, and if this Instrument is foreclosed upon, or judgment is entered upon any Secured Obligations, or if Trustee effects a trustee's sale under power of sale, execution may be made upon or Trustee may effect a trustee's sale against any one or more of the properties, lots or parcels and not upon the others, or upon

all of such properties or parcels, either together or separately, and at different times or at the same time, and execution sales or trustee's sale herein granted may likewise be conducted separately or concurrently, in each case at Beneficiary's election.

Section 4.05.    No Merger. In the event of a foreclosure of this Instrument or any other mortgage or deed of trust securing the Secured Obligations, the Secured Obligations then due to the Beneficiary shall not be merged into any decree of foreclosure entered by the court, and Beneficiary may

concurrently or subsequently seek to foreclose one or more other deeds of trust which also secure said Secured Obligations.

Section 4.06.    Waivers by Trustor. To the fullest extent permitted under applicable law, Trustor shall not assert, and hereby irrevocably waives,

{02780774.DOCX/ }

as a waiver of any Material Default or Enforcement Event with respect thereto,

and the acceptance by Beneficiary, any successor administrative agent or any secured party of any payment of, or on account of, any Secured Obligation shall

not be deemed to be a waiver of any Material Default or Enforcement Event other

occurrence hereunder or under any Relevant Documents with respect to any other

Secured Obligation. If Beneficiary has proceeded to enforce any remedy or right

hereunder or with respect hereto by foreclosure, sale, entry or otherwise, it may compromise, discontinue or abandon such

11

proceeding for any reason without notice to Trustor or any other party (except

any other agent, the Secured Creditors or the other secured parties to the extent required by any Relevant Documents); and, if any such proceeding shall be

discontinued, abandoned or determined adversely for any reason, Trustor and Beneficiary shall retain and be restored to their former positions and rights hereunder with respect to the Mortgaged Property, subject to the lien hereof except to the extent any such adverse determination specifically provides to the contrary.

Section 4.04.     Beneficiary's Remedies against Multiple Parcels. If

more than one property, lot or parcel is covered by this Instrument, and if this

Instrument is foreclosed upon, or judgment is entered upon any Secured Obligations, or if Trustee effects a trustee's sale under power of sale, execution may be made upon or Trustee may effect a trustee's sale against any one or more of the properties, lots or parcels and not upon the others, or upon

all of such properties or parcels, either together or separately, and at different times or at the same time, and execution sales or trustee's sale herein granted may likewise be conducted separately or concurrently, in each case at Beneficiary's election.

Section 4.05.     No Merger. In the event of a foreclosure of this Instrument or any other mortgage or deed of trust securing the Secured Obligations, the Secured Obligations then due to the Beneficiary shall not be merged into any decree of foreclosure entered by the court, and Beneficiary may

concurrently or subsequently seek to foreclose one or more other deeds of trust

which also secure said Secured Obligations.

Section 4.06.     Waivers by Trustor. To the fullest extent permitted

under applicable law, Trustor shall not assert, and hereby irrevocably waives,

{02786774.DOCX / }

12

such court or the venue of such court or the convenience of such court as the forum for any such suit, action or proceeding, and (ii) irrevocably consents to

the service of (A) any process in accordance with applicable law in any such suit, action or proceeding, or (B) any notice relating to any sale, or the exercise of any other remedy by Beneficiary hereunder by mailing a copy of such

process or notice by United States registered or certified mail, postage prepaid, return receipt requested to Trustor at its address specified in or pursuant to Section 5.01; such service to be effective in accordance with applicable law.

(b)      Nothing in this Section shall affect the right of Beneficiary to bring any suit, action or proceeding arising out of or relating

to this Instrument, or any other Relevant Documents in any court having jurisdiction under the provisions therein or applicable law or to serve any process, notice of sale or other notice in any manner permitted by this Instrument, the other Relevant Documents or applicable law.

Section 4.03.      Concerning Beneficiary. (a) Beneficiary is authorized

to take all such action as is provided to be taken by it as Beneficiary hereunder and all such other action incidental thereto, subject to the terms and

provisions of the Intercreditor Agreement. As to any matters not expressly provided for herein (including the timing and methods of realization upon the Mortgaged Property), Beneficiary shall, in addition, act or refrain from acting

in accordance with the terms and provisions of the Intercreditor Agreement. Beneficiary shall not be responsible for the existence, genuineness or value of

any of the Mortgaged Property or for the validity, perfection, priority or enforceability of the lien of this Instrument on any of the Mortgaged Property,

whether impaired by operation of law or by reason of any action or omission to

act on its part hereunder. Beneficiary shall have the right, but shall have no

duty, to ascertain or inquire as to the performance or observance of any of the

terms of this Instrument by Trustor.

(b)      Beneficiary may, at any time, delegate by power of attorney or otherwise to any person(s) or entity(ies) the ability to exercise any or all of the rights, powers and discretions vested in it by this Instrument

or appoint any person or entity to act as additional Beneficiary or as co-trustee for the purpose of this Instrument, in accordance with and subject to

the terms of Clause 16 of the Intercreditor Agreement.

{02780774.DOCX / }

(c)      In the event that Beneficiary acts as Trustor's attorney in fact or otherwise as its agent as provided for under this Instrument, Trustor shall ratify and confirm all things done and all documents executed by Beneficiary in the exercise or purported exercise of all or any of such powers or acts.

## ARTICLE V

## MISCELLANEOUS

Section 5.01.      Notices. Except as otherwise provided herein, all communication required or permitted to be given in connection with this Instrument shall be in writing, and shall be given or served in the manner and to the address, and deemed received, as provided in clause 20 of the Intercreditor Agreement. All communications to Trustee shall be sent to Trustee at:

13

if to Trustee:

Ward Williford
c/o First American Title Insurance Company
1909 Woodall Rodgers Freeway, Suite 410
Dallas, Texas 75201
Telecopier No.: (214) 303-0935

Trustee shall, from time to time, have the right to specify as the proper addressee and/or address for the purposes of this Instrument any other party or address in the United States upon giving five (5) days prior written notice in the manner herein prescribed. Trustor's mailing address, as set forth in the opening paragraph hereof or as changed pursuant to the provision hereof, is true and correct.

Section 5.02.      Extension of Payments and Other Modifications. Trustor agrees that, without affecting the liability of any person for payment of the Secured Obligations or affecting the lien of this Instrument upon the Mortgaged Property or any part thereof (other than persons or property explicitly released as a result of the exercise by Beneficiary or Trustee of their rights and privileges hereunder), Beneficiary may (without obligation), at any time and from time to time, on request of Trustor made in accordance with the terms and provisions of the Intercreditor Agreement, without notice to any person liable for payment of any Secured Obligations or to any other person or

{02780774.DOCX / }

entity, extend the time, or agree to alter or amend the terms of payment of such
Secured Obligations; provided, however, that such actions of Beneficiary are
expressly limited by the terms and provisions of the Intercreditor Agreement.
Trustor further agrees that any part of the security herein described may be
released with or without consideration without affecting the remainder of the
Secured Obligations, the remainder of the security or the lien of this
Instrument.

Section 5.03.   Governing Law. Trustor agrees that this Instrument is
to be construed, governed and enforced in accordance with the laws of the
State.
Wherever possible, each provision of this Instrument shall be interpreted in
such manner as to be effective and valid under applicable law, but if any
provision of this Instrument shall be prohibited by or invalid under applicable
law, such provision shall be ineffective only to the extent of such prohibition
or invalidity, without invalidating the remainder of such provision or the
remaining provisions of this Instrument.

Section 5.04.   Satisfaction of Mortgage. Upon satisfaction of the
conditions set forth in Section 5.3 of the Intercreditor Agreement, this
conveyance or lien shall be null and void and, upon demand therefor following
such satisfaction, a satisfaction of mortgage or reconveyance of the Mortgaged
Property and any other documents required to release the lien of this Instrument
shall promptly be provided by Beneficiary to Trustor, at Trustor's sole expense,
without recourse to, or any representation or warranty by, the Beneficiary or
any of its nominees.

Section 5.05.   Successors and Assigns Included in Parties. This
Instrument shall be binding upon Trustor and upon the successors, assigns and
vendees of Trustor and shall inure to the benefit of Beneficiary's successors
and assigns and any principals it represents as agent; all references herein to
Trustor and to Beneficiary or Trustee shall be deemed to include their
successors and assigns and, as to Beneficiary, any principals it represents as
agent. Trustor's successors and assigns shall include, without limitation, a
receiver, trustee or debtor in possession of or for Trustor. Wherever used, the
singular number shall include the plural, the plural shall include the singular,
and the use of any gender shall be applicable to all genders.

14

Section 5.06.   Waiver of Appraisement, Valuation, Stay, Extension
and Redemption Laws. Trustor agrees, to the full extent permitted by law, that

in case of an Enforcement Event, neither Trustor nor anyone claiming through or
under it shall or will set up, claim or seek to take advantage of any appraisement, valuation, stay, or extension laws now or hereafter in force, in
order to prevent or hinder the enforcement or foreclosure of this Instrument or
the absolute sale of the Mortgaged Property or the final and absolute putting into possession thereof, immediately after such sale, of the purchaser thereat,
and Trustor, for itself and all who may at any time claim through or under it,
hereby waives, to the full extent that it may lawfully so do, the benefit of all
such laws, and any and all right to have the assets comprising the Mortgaged Property marshalled upon any foreclosure of the lien hereof and agrees that Trustee, or any court having jurisdiction to foreclose such lien may sell the Mortgaged Property in part or as an entirety. Trustor represents that it has been authorized to, and Trustor does hereby waive to the full extent permitted
by law any and all statutory or other rights of redemption from sale under power
of sale or from sale under any order or decree of foreclosure of this Instrument, on its own behalf and on behalf of each and every person acquiring
any interest in or title to the Mortgaged Property subsequent to the date hereof.

Section 5.07.    Interpretation with Other Documents. Notwithstanding
anything in this Instrument to the contrary, (a) in the event of a conflict or
inconsistency between this Instrument and the provisions of the Intercreditor Agreement, the provisions of the Intercreditor Agreement shall govern, and (b)
the exercise of any right or remedy by Beneficiary under this Instrument shall
be done in accordance with and is subject to the terms and provisions of the Intercreditor Agreement.

Section 5.08.    Future Advances. The parties hereto intend that, in
addition to any other debt or obligation secured hereby, this Instrument shall
secure unpaid balances of loan advances and other extensions of credit made after this Instrument is delivered to the appropriate recording offices of the
State, whether such advances or extensions of credit made are obligatory or otherwise, and such future advances or extensions of credit shall be secured to
the same extent as if such advances or extensions of credit were made on the date hereof, although there may be no advance or extensions of credit made at the time of the execution hereof and although there may be no indebtedness outstanding at the time any advance or extension of credit is made. Such unpaid
balances of loan advances and other extensions of credit may or may not be evidenced by notes executed pursuant to the applicable Relevant Documents.

{02780774.DOCX / }

REVOCATION OF POWER OF ATTORNEY

I, the undersigned KENNNETH ROBERT STEWART JR. AKA KENNETH S STEWART

SS_ _ _ _ _ _-5438 residing at 2028 SANDY LN. IRVING, TEXAS.

Hereby revoke the Power of Attorney dated prior to OCTOBER 12, 2015 and granted to

BUSINESS ENTITIES, ATTORNEYS,: Edison International, TXU and its subsidiaries, ·          Stewart
Information Corp, CT Corp the registered agent of record at Dallas Texas.

I hereby give notice to EVERYONE   and all other interested parties that I withdraw every power and
authority thereby given and declare the above referenced Power of Attorney null and void and of no
further force or effect.

Executed this 12th day of October 20 15

at 5353 Maple Ave #100 Dallas Tx 75225

Signature: Keith SS

in the presence of the undersigned witnesses:

Witness 1.

Name: _____

Address: _____

Signature: _____

Witness 2.

Name: _____

Address: _____

Signature: _____

Acknowledgment

This document was acknowledged before me on this 12th day of Oct 20 15 by

Kenneth R. Stewart (Principal's Full legal name)

Signature of Notary Public Marlene G

Full legal Name Marlene Garza

My commission expires 1-06-19

State of Tx County of Dallas

MARLENE GARZA
Notary Public, State of Texas
My Commission Expires
January 06, 2019

Kenneth J Stewart
Sears                    Director

Made by
? K St.

The Allstate Corp

2005    Kennett $100,000,000 secured       2007              KKR

        Mrs Mejia...         TXU AKA Edison International
                                          Doc  500,000,000  2008
Kennett Stewart                              1.2 Billion $
                                                          HANSEN INDUSTRIES
100,000,000    Bio ... Diesel        Associate Corp (merger) Peoples Bank, City

        Secured by Mrs Mejia              (Merger)

                                    Dallas Freight Liner        Aurora Gas

                                         (Merger)

        3-7-2008 PG&E      Ale Freightliner, ATC, Traders,
                           Stewart Info, Stewart Corp

    1-10-2008 General Electric,
         Edison International                    Kennoco
                                                Lone Star Gas
Chevron/6c

                    ┌──────────────┐
                    │  Allstate    │
                    │  Subsidiary  │          K&K = KK
                    └──────────────┘
                      Trucker

                    K&K Transportation Inc

                      K&K Trucking

                    K&K Concrete

                    K&K Construction

                     K&K Development
                    K&K Realty



f 🐦 in 8+ 🔊

SUBSCRIBE | NEWSLETTERS | ADVERTISE | CONTACT US

## PRODUCTION.

drilling info

FINANCIAL JOURNAL.

HOME     NEWS     MAGAZINE

Search

OIL MARKETS   ENERGY PLAYERS   BUSINESS SOLUTIONS   UPSTREAM   UNCONVENTIONAL OIL & GAS   MIDSTREAM   CAPITAL   ANALYSIS   M&A   MORE

| Exxon Mobil 83.78 -0.81 | CHEVRON 113.47 -0.48 -0.42% | CONOCOPHILLIPS 78.13 -0.92 -1.29% | OCCIDENTAL 82.24 -9.68 -4.80% | APACHE 84.86 -1.38 -2.11% | ANADARKO 83.58 -1.18 -1.18% | CHESAPE. |

HOME   OIL GAS COMPANIES   AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

Previous Article | US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

🖨 Print Article

# AURORA OIL & GAS FILES VOLUNTARY BANKRUPTCY

July 15, 2009

Aurora Oil & Gas Corp. and its subsidiary, Hudson Pipeline & Processing Co. LLC, filed voluntary petitions for relief under Chapter 11 of the US Bankruptcy Code in the US Bankruptcy Court for the Western District of Michigan.

The companies have worked to facilitate a global restructuring transaction, including entering into several amendments and forbearance agreements with BNP Paribas and the lenders under the Senior Secured Credit Facility and D.E. Shaw Laminar Portfolios LLC and the lenders under the Second Lien Term Loan. The Companies have not yet been able to obtain agreement on the terms of such a restructuring and intend to utilize the bankruptcy process to attempt to achieve a consensual restructuring or some other appropriate alternative.

Huron Consulting Group LLC continues to advise Aurora on its restructuring efforts.

Previous Article | US investor convicted in scheme targeting Azerbaijan state oil firm

Next Article | Gastar completes Australian assets sale, plans debt retirement

**RELATED ARTICLES**

### Dejour closes $1.5 million equity offering

08/18/2014

Dejour Energy Inc. has closed the equity financing offering previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 ...

### Gastar Exploration sees base increase to $145M

**TOPIC INDEX**

View Oil & Gas Financial Journal articles by topic, A-Z

## PRODUCTION.



🛢 drillinginfo

Oil & Gas Financial Journal      Look Inside >
Digital Magazine

Current Issue

**OIL & GAS JOBS**

08/14/2014

Gastar Exploration Inc. reported that the borrowing base under its revolving credit facility has been increased to $145 million.

## RSP Permian closes public offering

08/14/2014

RSP Permian Inc. has completed an underwritten public offering by the company and certain of its stockholders of 11,500,000 shares of its common stock at a price to the public of $25.65 per share. &...

## CONSOL closes $250 million of senior notes

08/14/2014

CONSOL Energy Inc. has closed an additional $250 million of its 5.875% senior notes due 2022. CONSOL initially offered and sold $1.6 billion aggregate principal amount of notes of the same series o...

## Dejour secures $1.5 million for Woodrush development

08/12/2014

Dejour Energy Inc. has entered into subscription agreements for an equity financing that will result in gross proceeds of US$1.5 million with three institutional investors to support the company's ...

**Corporate Strategic Research: Optimization Modeling**
exxon mobil
**Country:** United States
(specifically for differential equations) is highly desirable. Knowledge of optimization models in the and industry is a plus. The candidate is expected to have strong communication skills with an ability to interact with a variety of researchers and business partners in different disciplines....

**Asphalt Rail/Barge Scheduler**
BP
**Country:** United States
Job title Asphalt Rail/Barge Scheduler Req ID
Search More Job Listings >>

CLICK HERE
to Subscribe

### MORE OIL & GAS FINANCIAL ARTICLES

**Dejour closes $1.5 million equity offering**
Mon, Aug 18, 2014
Dejour Energy Inc. has closed the equity financing previously announced on Aug. 11, receiving net proceeds of $1.5 million from three institutional investors to support the company's 2014 Woodrush development plan.

**Gastar Exploration sees base increase to $145M**
Thu, Aug 14, 2014
Gastar Exploration Inc. reported that the borrowing base under its revolving credit facility has been increased to $145 million.

**RSP Permian closes public offering**
Thu, Aug 14, 2014
RSP Permian Inc. has completed an underwritten public offering by the company and certain of its stockholders of 11,500,000 shares of its common stock at a price to the public of $25.65 per share.

**CONSOL closes $250 million of senior notes**
Thu, Aug 14, 2014
CONSOL Energy Inc. has closed an additional $250 million of its 5.875% senior notes due 2022. CONSOL initially offered and sold $1.6 billion aggregate principal amount of notes of the same series on April 15.

### MOST POPULAR

Reserve based finance

Fiscal break-even oil prices for major OPEC members

C&J Energy updates on merger with Nabors

Drones in oil and gas

GE signs $1B service agreement for Sabine Pass LNG export terminal

Wood Mackenzie: Global trends to look for in 2015

Top US-based Oilfield Service & Supply Companies

Wrapping Up: Developments at DOE affecting LNG exports in 2014

Enterprise begins open season for proposed pipeline expansion

Energy Players

Allstate County Mutual Insurance Company
1625 N STORY RD #130
IRVING, TX 75061



KENNETH STEWART
2028 SANDY LN
IRVING, TX 75060-5639



IL 00 21 09 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

Insured Full Copy

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08   □

Insured Full Copy

COMMERCIAL AUTO
CA 23 94 03 06

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following exclusion is added to Paragraph **B. Exclusions of Section II — Liability Coverage** in the Business Auto, Motor Carrier and Truckers Coverage Forms and for **'Garage Operations" — Covered "Autos"** in the Garage Coverage Form:

**SILICA OR SILICA-RELATED DUST EXCLUSION FOR COVERED AUTOS EXPOSURE**

This insurance does not apply to:

**1.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**2.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**3.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any "insured" or by any other person or entity.

**B.** **Additional Definitions**

As used in this endorsement:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2005
Insured Full Copy

COMMERCIAL AUTO
CA 99 88 03 06

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TEXAS INDIVIDUAL NAMED INSURED

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

If you are an individual, the policy is changed as follows:

**A. Changes In Liability Coverage**

1. The **Fellow Employee** Exclusion does not apply to "bodily injury" to you or any "family member's" fellow "employees".

2. The following exclusions are added:

   a. Liability Coverage does not apply to you or any "family member" for "bodily injury" to you or any "family member", except to the extent of the minimum limits of Liability Coverage required by the Texas Civil Statutes, Article 6701h, entitled "Texas Motor Vehicle Safety-Responsibility Act".

   b. This insurance does not apply to "loss" due to or as a consequence of a seizure of an "auto" by federal or state law enforcement officers as evidence in a case against you under the Texas Controlled Substances Act or the federal Controlled Substances Act, if you are convicted in such case.

2. **Personal Auto Coverage**

   If any "private passenger auto", "utility type auto" or "miscellaneous type vehicle" you own is a covered "auto" under Liability Coverage:

   a. The following is added to **Who Is An Insured**:

   "Family members" are "insureds" for any covered "private passenger auto", "utility type auto" or "miscellaneous type vehicle" you own and any other "auto" described in Paragraph **A.2.b.** of this endorsement.

   b. Any "auto" you don't own is a covered "auto" while being used by you or by any "family member" except:

      (1) Any "auto" owned by or furnished or available for the regular use of any "family members", except while being used by you.

      (2) Any "auto" furnished or available for your regular use.

      (3) Any "auto" used by you or by any of your "family members" while working in a business of selling, servicing, repairing or parking "autos".

      (4) Any "auto" other than a "private passenger auto", "utility type auto" or "miscellaneous type vehicle" used by you or any of your "family members" while working in any other business or occupation.

   c. The **Pollution** Exclusion and, if forming a part of the policy, the Nuclear Energy Liability Exclusion (Broad Form), does not apply to any covered "private passenger auto", "utility type auto" or "miscellaneous type vehicle".

   d. The **Care, Custody Or Control** Exclusion does not apply to "property damage" to any "private passenger auto", "utility type auto" or "miscellaneous type vehicle" you don't own while being used by you or any "family member" except:

      (1) Any "auto" owned by or furnished or available for the regular use of any "family member";

© ISO Properties, Inc., 2005
Insured Full Copy

COMMERCIAL AUTO
CA 99 44 12 93

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM
BUSINESS AUTO PHYSICAL DAMAGE COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. We will pay, as interest may appear, you and the loss payee named in the policy for "loss" to a covered "auto".

B. The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

C. We may cancel the policy as allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy we will mail you and the loss payee the same advance notice.

D. If we make any payments to the loss payee, we will obtain his or her rights against any other party.

Copyright, Insurance Services Office, Inc.,  1993

Insured Full Copy


For All the Commitments You Make®

General Liability - Occurrence

New Business Declaration

| POLICY NUMBER | COVERAGE PROVIDED BY | FROM - POLICY PERIOD - TO |
|---|---|---|
| B 2072169650 | NATIONAL FIRE INSURANCE OF HARTFORD | 12/19/2003    12/19/2004 |
| | CNA PLAZA | |
| | CHICAGO, ILLINOIS  60685 | |

**INSURED NAME AND ADDRESS**
K & K Construction
2705 Heather Ridge Ct.
ARLINGTON, TX  76006

**AGENCY NUMBER**
032510

**AGENCY NAME AND ADDRESS**
DUNCAN FRASER & BRIDGES INS AGENCY
101 WEST GLADE RD ST
P O BOX 610610
DALLAS, TX  75261
Phone Number: (817)868-7979

**BRANCH NUMBER**
040

**BRANCH NAME AND ADDRESS**
DALLAS BRANCH
PLAZA OF THE AMERICA
600 N PEARL ST STE 1400
DALLAS, TX  75201
Phone Number: (214)220-1300

This policy becomes effective and expires at 12:01 A.M. standard time at your mailing address on the dates shown above.

The Named Insured is a Corporation.

Your policy is composed of this Declarations, with the attached Common Policy Conditions, Coverage Forms, and Endorsements, if any. The Policy Forms and Endorsement Schedule shows all forms applicable to this policy at the time of policy issuance.

The Estimated Policy Premium is        $1,446.00

Your Premium includes the following amount for
Certified Acts of Terrorism Coverage

Audit Period is Annual

In return for the payment of the premium, and subject to all the terms and conditions contained here-in, we agree to provide the insurance as stated.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002. The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1.  The act resulted in aggregate losses in excess of $5 million; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Copyright, ISO Properties, Inc., 2002

INTERLINE
IL 00 03 04 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

INTERLINE
IL 00 21 03 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

- BUSINESSOWNERS POLICY
  COMMERCIAL AUTOMOBILE COVERAGE PART
  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
  FARM COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
- POLLUTION LIABILITY COVERAGE PART
- PROFESSIONAL LIABILITY COVERAGE PART
- OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
- RAILROAD PROTECTIVE LIABILITY COVERAGE PART
- SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage:"

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf

   of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties;

   "Nuclear material" means "source material," "Special nuclear material" or "by-product material;"

   "Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor;"

   "Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its

POLICY NUMBER
B 2072169650

INSURED NAME AND ADDRESS
K Construction
2705 Heather Ridge Ct.
ARLINGTON, TX  76006

## FORMS AND ENDORSEMENTS SCHEDULE

| Form Number | | Form Title |
|---|---|---|
| CG0001 | 10/2001 | Commercial General Liability Coverage Form |
| CG0103 | 03/2002 | Texas Changes |
| CG2170 | 11/2002 | Cap on Losses for Certified Acts of Terrorism |
| CG2279 | 07/1998 | Exclusion - Contractors - Professional Liability |
| CG2639 | 04/1999 | Tx Changes-Employment Related Practices Exclusion |
| G132263A | 08/1998 | Amendatory Endorsement - Pollution Exclusion |
| G132279B | 01/2000 | Limited Pollution Coverage - WorkSites Endorsement |
| G134802B | 06/2001 | Noncontractors Additional Insured Endorsement |
| G136080A | 02/2000 | Amdt of Ins Agree-Known or Continuing Inj or Damg |
| G136107A | 03/2000 | Exclusion - Construction Wrap-Up Program |
| G140317A | 11/2000 | IMPORTANT INFORMATION - Construction Wrap-Up Prog |
| G142562A | 11/2001 | Fungi/Mold/Mildew/Yeast/Microbe Exclusion ltd PD |
| G43316B | 05/1989 | Exclusion - Asbestos |
| G55157B | 02/1988 | Premium Bases |
| IL0003 | 04/1998 | Calculation of Premium |
| IL0017 | 11/1998 | Common Policy Conditions |
| IL0021 | 03/1998 | Nuclear Energy Liab Exclusion Endt (Broad Form) |
| IL0168 | 01/2001 | Texas Changes - Duties |
| IL0275 | 10/2001 | Texas Changes - Cancellation and Nonrenewal |

## *** PLEASE READ THE ENCLOSED IMPORTANT NOTICES CONCERNING YOUR POLICY ***

| Form Number | | Form Title |
|---|---|---|
| G132259A42 | 07/1998 | General Liability Policyholders notice -TX |
| G144233B | 02/2003 | Notice - Offer of Terrorism Disclosure of Premium |
| G44128A | | Imp Info For Insureds Who Hire Subcontractors |
| G53752D42H | | Important Information for Texas Policyholders |

Countersignature

Bernard L. Hengebaugh
Chairman of the Board

Jonthan Kanter
Secretary

P-55170-A (Ed. 01/86)                    INSURED                    Page   3 of   3

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was com-
puted based on rates in effect at the time the policy
was issued. On each renewal, continuation, or anni-
versary of the effective date of this policy, we will
compute the premium in accordance with our rates
and rules then in effect.

Insured Full Copy