IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Hearing Date: February 18, 2016 at 11:00 a.m.** |
| | ) **Objection Deadline: January 19, 2016 at 4:00 p.m.** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF AN ORDER APPROVING THE ASSUMPTION OF
ALL EXECUTORY CONTRACTS BY AND AMONG LUMINANT
GENERATION COMPANY LLC, LUMINANT MINING COMPANY LLC,
SANDOW POWER COMPANY LLC, TEXAS COMPETITIVE ELECTRIC HOLDINGS
COMPANY LLC, AND ALCOA INC. AND APPROVING THE SETTLEMENT
AGREEMENT AND MUTUAL RELEASE IN CONNECTION THEREWITH**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), (a) authorizing Luminant Generation Company LLC ("Luminant Generation"), Luminant Mining Company LLC ("Luminant Mining"), Sandow Power Company LLC ("Sandow Power"), and Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with Luminant Generation, Luminant Mining, and Sandow Power, the "Debtor Parties") to assume all prepetition agreements, arrangements, and/or leases with Alcoa Inc. ("Alcoa") that the Debtors have not previously assumed in these chapter 11 cases pursuant to the Lease Assumption Order, including, but not limited to, the agreements identified on **Exhibit 2**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 13625987v.1

attached to the Order (each such agreement, an "Alcoa Contract" and, collectively, the "Alcoa Contracts"); and (b) approving the Settlement Agreement and Mutual Release, attached as **Exhibit 1** to **Exhibit A** between the Debtor Parties and Alcoa, made and entered into as of the 30th day of December, 2015 (the "Settlement Agreement").  In further support of this Motion, the Debtors respectfully state as follows.

## Preliminary Statement

1. The Debtors filed the Assumption Motion on August 28, 2015. In support of this Motion, the Debtors filed and hereby incorporate by reference and rely upon the previously-filed *Motion of Energy Future Holdings Corp., et al., For Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* (the "Assumption Motion")[2] [D.I. 5789] and accompanying *Declaration of Robert Frenzel, Senior Vice President and Chief Financial Officer of Luminant Holding Company LLC in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* (the "Frenzel Declaration") [D.I. 5790]; the *Declaration of Todd W. Filsinger in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* (the "Filsinger Declaration") [D.I. 5791]; and the *Declaration of*

---

[2] All capitalized terms used herein and not otherwise defined shall have the respective meanings as set forth in the Assumption Motion.

*Alexander G. Davis in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* (the "Davis Declaration" [D.I. 5792] and, together with the Frenzel Declaration and the Filsinger Declaration, the "Supporting Declarations").

2. In response to the Assumption Motion, Alcoa contended—and the Debtors disagreed—that if the Alcoa Contracts were assumed, the Debtor Parties must pay cure claims for past alleged breaches of the Unit 4 Agreement. This dispute is just one of several that have arisen between the parties relating to the Alcoa Contracts, as further described in the Settlement Agreement.

3. Following the Debtors' filing of the Assumption Motion, the Debtor Parties and Alcoa engaged in extensive negotiations to discuss a potential resolution to the disputes between them. After months of arms'-length discussions, the Debtor Parties and Alcoa have reached an agreement, the terms of which are fair, reasonable, and in the best interest of the Debtor Parties' estates. Because the assumption of the Alcoa Contracts will provide a clear and sizable benefit to the Debtor Parties' estates and their creditors, and because the terms of the Settlement Agreement are fair, reasonable, and in the bests interest of the Debtor Parties' estates, the Court should enter an order approving both the assumption of the Alcoa Contracts and approving the terms of the Settlement Agreement in its entirety.

### Jurisdiction and Venue

4. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

5. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The bases for the relief requested in this Motion are section 365 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 9013-1.

### Relief Requested

7. By this Motion, the Debtors seek entry of the Order authorizing the Debtor Parties to (a) assume the Alcoa Contracts in accordance with section 365 of the Bankruptcy Code; and (b) approve the Settlement Agreement, which resolves outstanding claims and settles certain contractual disputes between the parties.

### Background

**I.    General Background of the Restructuring.**

8. On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court did not appoint a trustee. The Office of the United States Trustee

4

for the District of Delaware formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), TCEH, the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

9. After months of negotiations with stakeholders regarding a consensual, value-maximizing plan of reorganization, the Debtors filed the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7187] (the "Sixth Amended Plan") on December 1, 2015, after a ten-day Confirmation Hearing that commenced on November 3, 2015. The Court, having reviewed the submissions of the Debtors, and all pleadings, exhibits, statements, responses, and comments regarding confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these chapter 11 cases; and having heard the statements and arguments made by counsel in respect of confirmation, including at the ten-day confirmation hearing; and having considered all oral representations, live testimony, written direct testimony, designated deposition testimony, exhibits, documents, filings, and other evidence presented at the confirmation hearing, confirmed the Sixth Amended Plan in the *Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285], dated December 9, 2015.

## II. The Alcoa Contracts Provide a Significant Source of Value to the Debtor Parties.

10. The Debtors have asserted that, as detailed in the Assumption Motion, Alcoa and the Debtor Parties are party to long-term contracts regarding the operation, maintenance, fueling, and generation, and supply of electricity at an Alcoa aluminum smelter facility. As further explained in the previously-filed Frenzel Declaration and the Filsinger Declaration, the Debtor Parties anticipate that, given the forward curves of market power prices through December 31, 2016, and projected prices for the life of the contracts thereafter operating Sandow Unit 4, Sandow Unit 5, and the Three Oaks Mine pursuant to the Alcoa Contracts will continue to render a substantial benefit to the Debtor Parties.

## III. The Parties Have Entered Into the Settlement Agreement Which Would Resolve the Disputes Between Them.

11. Since the filing of the Assumption Motion, the Debtor Parties and Alcoa have engaged in extensive negotiations to resolve the pending Disputes (as defined in the Settlement Agreement). The parties have engaged in numerous in-person, telephonic, and electronic communications, and exchanged multiple drafts of the Settlement Agreement. Ultimately, these efforts yielded the terms set forth in the Settlement Agreement, attached as **Exhibit 1** to **Exhibit A**. The Settlement Agreement provides a global settlement to all outstanding Disputes—as well as a mutual release of claims through and including the date on which the Settlement Agreement is executed—and is in the best interests of the Debtors.[3]

---

[3] In the event of any inconsistency between the description and summary set forth in this Motion and the Settlement, the terms of the Settlement Agreement prevail.

**Basis for Relief**

I.  **Assumption of the Alcoa Contracts Will Benefit the Debtor Parties' Estates.**

12. Section 365 of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract." 11 U.S.C. 365(a). In evaluating a debtor's decision to assume or reject an executory contract, courts apply the business judgment test, which asks "whether rejection would benefit the estate." *In re Bildisco*, 682 F.2d 72, 79 (3d Cir. 1982) *aff'd sub nom. N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513 (1984); *see also In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *8 (D. Del. May 20, 2002) ("A debtor satisfies the 'business judgment' test when it determines, in good faith, that assumption of an executory contract will benefit the estate and unsecured creditors [generally]."). The business judgment presumption underlying this inquiry assumes that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Freedman v. Redstone*, 753 F.3d 416, 427 (3d Cir. 2014). Once the debtor demonstrates that its decision with regard to an executory contract will benefit the estate, that decision "must be summarily affirmed unless it is the product of bad faith, or whim or caprice." *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (internal quotation marks omitted) *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task," requiring a showing that the decision was "so far beyond the bounds of reasonable business judgment that its only explanation is bad faith").

13. As detailed in the Frenzel Declaration and the Filsinger Declaration, the Debtors have decided to assume the Alcoa Contracts on an informed basis, in good faith, and in honest belief that doing so is in the best interests of the Debtor Parties. Specifically, the Debtor Parties have estimated the profitability of the Alcoa Contracts by projecting the long-term financial

7

performance of Sandow Unit 4 and mining operations at Three Oaks Mine, assuming in one scenario that the Alcoa Contracts remain in place and assuming in another scenario that the company did not have the benefit of the Alcoa Contracts. The difference in performance under these assumptions yields the value of the Alcoa Contracts to the Debtors: approximately $300 million in additional net present value to the Debtor Parties' estates on account of assuming the Alcoa Contracts rather than rejecting them. This informed conclusion has been validated by the Debtors' independent energy advisor, Mr. Filsinger. The Debtors' decision to assume the Alcoa Contracts is therefore made in good faith.

14.     Moreover, the Debtors believe that the operation of Sandow Unit 4, Sandow Unit 5, and Three Oaks Mine constitutes a significant source of long-term value for the Debtors, made all the more profitable by the terms of the Alcoa Contracts, which currently inure to the benefit of the Debtor Parties' estates. The Debtor Parties project generating significantly more revenue by providing power to Alcoa under the Unit 4 Agreement than they would on the open market.

15.     Furthermore, other Alcoa Contracts benefit the Debtor Parties' estates as well. For example, the operation of Sandow Unit 5 is made possible by the maintenance, access, and use of various vital common facilities, including sources of potable and cooling water, and Luminant Mining is engaged to provide contract mining services at Three Oaks Mine.

16.     The Debtor Parties' business operations at the power generation/smelting facility at Rockdale, Texas, also benefit from the long-term continuity and stability provided by various Alcoa Contracts. Indeed, one of the principal purposes of entering into this multi-decade contractual "cost-plus" relationship was to attain protection against volatility in fuel and power prices, even at the risk of sometimes being "upside down" on the contract. Assumption of the Alcoa Contracts will allow the Debtor Parties and their estates to continue to benefit.

## II. The Settlement Agreement Resolves any Defaults to Be Cured.

17. The Settlement Agreement resolves any existing defaults under the Alcoa Contracts alleged by Alcoa. As stated *supra*, the Debtor Parties have continued operating their power generation and electricity sale businesses in the course of these chapter 11 cases as debtors in possession, and have performed their ongoing post-petition obligations under their agreements with Alcoa, including the Alcoa Contracts. Therefore, section 365(b)—which requires a debtor, upon assumption of a contract where there has been a default by the debtor, to (a) cure the default, (b) compensate for any pecuniary loss arising from the default, and (c) provide adequate assurance of future performance under the contract—is inapplicable. 11 U.S.C. 365(b)(1).

## III. The Court Should Approve the Settlement Agreement in its Entirety.

18. Section 105(a) of the Bankruptcy Code allows a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that, after notice and a hearing, a court may approve a proposed compromise or settlement. Fed. R. Bankr. P. 9019(a). The Third Circuit has emphasized that "[c]ompromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (citation omitted).

19. Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Northwestern Corp.*, No. 03-12872, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the

estate") (citation omitted); *In re Key3Media Group, Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable").

20. In determining whether a settlement is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement. The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also Key3Media Grp. Inc.*, 336 B.R. at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal").

21. "[T]he court does not have to be convinced that the settlement is the best possible compromise," but "the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'" *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006) (citations omitted); *see also In re Energy Corp.*, 886 F.2d 912, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, No. 06-11156 (KJC), 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *In re Key3Media Grp. Inc.*, No. 03-10323 (MFW) 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).[4]

---

[4] Moreover, it is not necessary for the court to conduct a "mini trial" of the facts or the merits of the underlying dispute. *In re Grant Broad. of Phila., Inc.*, 71 B.R. 390, 396 (Bankr. E.D. Pa. 1987). Rather, the court need only consider those facts which are necessary to enable it to evaluate the settlement and to make an informed and independent judgment about the settlement. *In re Pa. Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979) (citation omitted); *In re Energy Co-op., Inc.*, 886 F.2d 921, 924-25 (7th Cir. 1989).

22. Additionally, under section 363(b)(1) of the Bankruptcy Code, a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). If a valid business justification exists for the use or sale of property, there is strong presumption that "in making a business decision the directors . . . acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.*, (*In re Integrated Res., Inc.*), 147 B.R. 548, 567 (Bankr. D. Del. 2008) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Generally, when applying the business judgment standard, courts grant great deference to debtors' business decisions.

### IV. The Settlement Agreement Is Fair, Reasonable, and in the Best Interests of the Estate.

23. The Settlement Agreement is the product of months of arms'-length negotiations between the Debtor Parties, Alcoa, and their respective advisors. The Settlement Agreement allows the Debtor Parties to preserve their business relationship with Alcoa and saves the Debtor Parties' estates the costs of litigating the numerous matters related to the Disputes. The issues at stake are complex and could potentially result in extensive litigation, the outcome of which is not certain. The resolution of these Disputes through litigation would also come at great expense to the Debtor Parties, both in terms of money and time expended, at a critical time when the Debtors are prepared to emerge from these chapter 11 cases and resume the regular operation of their businesses. Accordingly, the Debtors submit that the decision to enter into the Settlement Agreement is well within the range of reasonableness and is a sound exercise of the Debtors' business judgment, and the terms of the Settlement Agreement are fair, reasonable, and in the best interests of the Debtor Parties' estates.

11

RLF1 13625987v.1

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

24. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

25. The Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as

12

indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) counsel to Alcoa. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26. Other than the relief requested in the Assumption Motion, no prior request for the relief sought in this Motion has been made to this or any other court.

RLF1 13625987v.1

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: January 4, 2016
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                      defranceschi@rlf.com
                      madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            edward.sassower@kirkland.com
                      stephen.hessler@kirkland.com
                      brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                      marc.kieselstein@kirkland.com
                      chad.husnick@kirkland.com
                      steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*