## EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 7549** |

### ORDER APPROVING THE ASSUMPTION OF ALL EXECUTORY CONTRACTS BY AND AMONG LUMINANT GENERATION COMPANY LLC, LUMINANT MINING COMPANY LLC, SANDOW POWER COMPANY LLC, TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC, AND ALCOA INC. AND APPROVING THE SETTLEMENT AGREEMENT AND MUTUAL RELEASE IN CONNECTION THEREWITH

Upon the motion, dated January 4, 2016 [D.I. 7549] (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtor Parties to assume the Alcoa Contracts pursuant to the terms of the Settlement Agreement and Mutual Release, made and entered into as of the 30th day of December, 2015 (the "Settlement Agreement"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted as set forth herein.

2.    The Settlement Agreement, attached hereto as **Exhibit 1**, is hereby approved in its entirety.

3.    The Debtor Parties are authorized to assume the Alcoa Contracts, including, but not limited to, those listed on **Exhibit 2** attached hereto, and the Alcoa Contracts are hereby assumed pursuant to the Settlement Agreement.

4.    In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts is authorized to receive, process, honor, and pay all such checks presented for payment and wire transfer requests made by the Debtors related to the Alcoa Contracts.

5.    Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware are satisfied by such notice.

RLF1 13708241v.1

6.      Notwithstanding the possible applicability of rules 6004(h), 7062, 9014 or otherwise of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

Dated: January _____, 2016
      Wilmington, Delaware

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

RLF1 13708241v.1

## EXHIBIT 1 TO EXHIBIT A

**Settlement Agreement and Mutual Release**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this "Agreement") is made and entered into as of the 30th day of December, 2015 (the "Execution Date"), by and among Luminant Generation Company LLC ("Luminant Generation"), Sandow Power Company LLC ("Sandow Power"), Luminant Mining Company LLC ("Luminant Mining"), Energy Future Holdings Corp. ("EFH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and Texas Competitive Electric Holdings Company LLC ("TCEH," and together with Luminant Generation, Sandow Power, Luminant Mining, EFH, EFCH, and all of their respective affiliates, subsidiaries and parent companies, "Luminant"), and Alcoa Inc. ("Alcoa").  The term "Parties," as used in this Agreement, means Luminant and Alcoa.

## RECITALS

WHEREAS, as described in the *Motion of Energy Future Holdings Corp.*, et al., *for Entry of an Order Approving the Assumption of All Executory Contracts By and Among Luminant Generation Company LLC, Luminant Mining Company LLC, Sandow Power Company LLC, Texas Competitive Electric Holdings Company LLC, and Alcoa Inc.* [D.I. 5789] (the "Assumption Motion"), Luminant Generation, Luminant Mining, Sandow Power, and Alcoa are parties to a number of contracts extending back to the 1950s, including, but not limited to, the Sandow Unit Four Agreement, dated August 13, 1976 (as amended and supplemented from time to time, the "Unit 4 Agreement"), whereby Luminant Generation sells and Alcoa purchases approximately 83% of the energy generated by Sandow Unit 4 in Rockdale, Texas ("Unit 4"); the Contract Mining Agreement, dated August 31, 2007 (the "CMA"), whereby Luminant Mining provides mining services to Alcoa and Sandow Power to recover lignite owned by Alcoa and Sandow Power at the Three Oaks Mine located in Elgin, Texas (the "Three Oaks Mine"); and various prior oral agreements and historical practices between Luminant and Alcoa relating to the sale and purchase of clay material (the "Clay Agreements") for use at Sandow Unit 5 in Rockdale, Texas ("Unit 5") (collectively, along with the contracts identified in the Assumption Motion, the "Alcoa Contracts").

WHEREAS, on April 29, 2014, Luminant, its parent entities, and its affiliates (collectively, the "Debtors") filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for protection under chapter 11 of the Bankruptcy Code, Case No. 14-10979 (CSS) (the "Chapter 11 Cases").

WHEREAS, as part of these Chapter 11 Cases, on August 28, 2015, Luminant filed the Assumption Motion [D.I. 5789], moving the Bankruptcy Court for entry of an order authorizing Luminant to assume the Alcoa Contracts with Alcoa, including, but not limited to, the Unit 4 Agreement and the CMA.

WHEREAS, Alcoa contends—and Luminant disagrees—that, before the Alcoa Contracts can be assumed, there is an unspecified cure amount that Luminant must pay for past alleged breaches of the Unit 4 Agreement based on amounts Luminant has charged to Alcoa as of the Execution Date (the "Cure Dispute").

WHEREAS, Alcoa's prepetition claims, including claims under the Alcoa Contracts, are currently recorded on the official claims register as proofs of claim nos. 6185, 6186, 6187, 6188, 6189, 6190, and 6191 (the "Asserted Claims"); and scheduled claims nos. 500500160, 503201260, 597900280, 504202240, 503201960, and 503300530 (together with the Asserted Claims, the "Prepetition Claims").

WHEREAS, historically, Alcoa has made clay available to Sandow Power and/or Luminant Generation for use in its landfills for Unit 5 coal combustion byproducts (which are located on land leased by Sandow Power from Alcoa for purposes of disposing of coal combustion byproducts and other materials (as allowed under applicable permits) from Unit 5). To date, Sandow Power and/or Luminant Generation have purchased approximately 165,000 cubic yards of clay from Alcoa at a price of $2.00 per cubic yard.  Two disputes have arisen between the parties with respect to clay (collectively, the "Clay Availability Issue").  First, Luminant contends, and Alcoa disputes, that Alcoa entered the Leased Premises (as defined in that certain Premises Lease dated August 28, 2007 (the "Lease")) and removed approximately 160,000 cubic yards of clay from the landfill known as the "AX Landfill," in violation of the terms of the Lease.  Luminant further contends, and Alcoa further disputes, that this removal, as well as Alcoa's construction of a splitter dike between the AX Landfill and Alcoa's landfill used for the disposal of coal combustion byproducts and other materials (as allowed under applicable permits) from Unit 4, has necessitated a change in the design of a portion of the AX Landfill such that it is now extending beyond the Leased Premises as defined in the Lease.  Second, Alcoa has notified Sandow Power and Luminant Generation that, as of October 27, 2015, it will no longer sell clay to Sandow Power and/or Luminant Generation, on any terms, until there is a global settlement of outstanding matters between Alcoa and Luminant.

WHEREAS, additional issues exist between the Parties related to the Alcoa Contracts, including: 1) Alcoa's intent to preserve all rights and obligations under Section 17 of the Unit 4 Agreement (the "Change in Law Issue"); 2) Alcoa's write-off of the Unit 4 lignite inventory on its books as of the end of October 2013 and subsequent invoicing to Luminant Generation of the portion Alcoa asserts is Luminant Generation's that was written off (the "Lignite Inventory Write-Off Dispute"); and 3) payments owed under the CMA for mining services rendered by Luminant Mining on Alcoa's behalf (the "CMA Dispute," together with the Cure Dispute, the Lignite Inventory Write-Off Dispute, and the Clay Availability Issue, the "Disputes," which, for the avoidance of doubt, excludes the Change in Law Issue).

WHEREAS, the Parties have asserted claims against one another, including, but not limited to, those arising from and relating to the Disputes with which the other Party disagrees.

WHEREAS, without admission by either Party, each of the Parties understands, acknowledges, and desires that this Agreement constitutes a compromise and settlement of the Alcoa Claims and the Luminant Claims (as such terms are defined below), but excluding the Change in Law Issue as set forth herein.

## AGREEMENT

NOW, THEREFORE in consideration of the representations, acknowledgements promises, recitals, mutual covenants, terms and conditions contained herein, and for good and

valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. **Execution Date and Effective Date**.

    **(a)**    Upon the Execution Date, the provisions of this Agreement shall apply to and be binding on the Parties and shall inure to the benefit of all Parties, their agents, representatives, insurers, attorneys, accountants, advisors, partners, heirs, assigns, and successors and predecessors in interest.

    **(b)**    Within five business days of the Execution Date, Luminant shall file a motion with the Bankruptcy Court requesting approval of this Agreement.  Luminant shall use commercially reasonable efforts to obtain (i) a final non-appealable order of the Bankruptcy Court approving and authorizing the entry into this Agreement and approving the assumption of the Alcoa Contracts in accordance with this Agreement, which order shall be substantially in the form attached hereto as Exhibit A ("Bankruptcy Approval Order") and (ii) the entry of the Bankruptcy Court Approval Order within 30 days of the Execution Date.  If the Bankruptcy Court denies Luminant's motion, the Agreement shall be null and void, and the Parties will revert to the rights and obligations they had before the Agreement was executed.

    **(c)**    The effective date of this Agreement shall be 15 days (the "Effective Date") from the entry of the Bankruptcy Approval Order, assuming there is no timely appeal of the Bankruptcy Approval Order.

    **(d)**    In the event the Bankruptcy Approval Order is timely appealed, the Effective Date shall be the date upon which a final, non-appealable order affirming the Bankruptcy Approval Order is issued by the reviewing court.  Alcoa shall not be bound by the requirements of Section 2.3 during the pendency of any timely appeal, unless and until the Bankruptcy Approval Order is affirmed on appeal, at which time Section 2.3 will become effective against Alcoa.  In the event that the Bankruptcy Approval Order is not ultimately affirmed on appeal, the Agreement shall be null and void, and the Parties will revert to the rights and obligations they had before the Agreement was executed.

    **(e)**    The Parties agree that the Bankruptcy Approval Order, or the final, non-appealable order affirming the Bankruptcy Approval Order, shall be entered *nunc pro tunc* and made effective as of the Execution Date.  For clarity, this Section 1(e) shall not alter the Effective Date of this Agreement as provided in Section 1(c) and Section 1(d).

2. **Settlement Terms.**  Except as expressly provided in Section 2.1(e) below with regard to the Change in Law Issue, the Parties agree to settle the Alcoa Claims and the Luminant Claims, pursuant to the following terms:

2.1    **Releases of Liability**.

    **(a)**    **Release of Luminant**.  Upon the Effective Date, in consideration of the covenants undertaken herein, Alcoa irrevocably and unconditionally releases, acquits, and forever discharges Luminant, and all of Luminant's successors, predecessors, current and prior subsidiary, affiliated and parent companies and entities, and all of its and their officers, directors,

shareholders, partners, limited partners, agents, assigns, employees, representatives, contractors, attorneys, insurers, (all of which and whom are collectively referred to as the "Luminant Releasees"), with respect to and from, any and all claims, demands, additional costs, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, tax assessments, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders and liabilities, of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, which Alcoa now owns or holds, or has at any time heretofore owned or held, or may in the future hold against the Luminant Releasees, or any of them, that arise from the Disputes and have accrued prior to and through the Execution Date (the "Alcoa Claims").

(b)     **Release of Alcoa**.  Upon the Effective Date, in consideration of the covenants undertaken herein, Luminant irrevocably and unconditionally releases, acquits, and forever discharges Alcoa, and all of Alcoa's successors, predecessors, current and prior subsidiary, affiliated and parent companies and entities, and all of its and their officers, directors, shareholders, partners, limited partners, agents, assigns, employees, representatives, contractors, attorneys, insurers, (all of which and whom are collectively referred to as the "Alcoa Releasees"), with respect to and from, any and all claims, demands, additional costs, rights, liens, agreements, contracts, covenants, actions, suits, causes of action, tax assessments, obligations, debts, costs, expenses, attorneys' fees, damages, judgments, orders and liabilities, of whatever kind or nature in law, equity or otherwise, whether now known or unknown, suspected or unsuspected, which Luminant now owns or holds, or has at any time heretofore owned or held, or may in the future hold against the Alcoa Releasees, or any of them, that arise from the Disputes and have accrued prior to and through the Execution Date (the "Luminant Claims").

(c)     **Scope of Releases**.  This Agreement releases, settles and resolves any and all of Luminant's Bankruptcy Code Chapter 5 avoidance claims (including, but not limited to, Bankruptcy Code Sections 544, 547, 548, 549, and 550) relating to or arising under the Alcoa Contracts, and the Alcoa Claims and Luminant Claims; provided, however, for the avoidance of doubt, that matters arising from or relating to the Change in Law Issue are excluded from Sections 2.1(a) and 2.1(b) and are instead addressed in Section 2.1(e).

(d)     **No Impairment**.  The releases set forth in Sections 2.1(a) or 2.1(b) shall not release either Party from any obligations arising under any of the other agreements, obligations, acknowledgments, undertakings, representations, and/or warranties set forth in this Agreement, nor release or be deemed to release rights, actions, causes of action, disputes, or claims other than those expressly identified in Sections 2.1(a) and 2.1(b) above; provided, however, that the releases set forth in Sections 2.1(a) and 2.1(b) do not apply to any claims for any violations of or failure to comply with the terms of this Agreement, and each Party expressly reserves its claims against the other Party for any violations of or failure to comply with the terms of this Agreement.  For the avoidance of doubt, this Agreement does not in any respect amend any of the Alcoa Contracts or any rights and obligations thereunder, including, but not limited to:  (i) either Party's rights or obligations related to indemnification or contribution and (ii) either Party's rights and obligations with respect to amounts incurred, invoiced or owed under the Alcoa Contracts, all of which shall remain in full force and effect.

(e)     **Matters Relating to the Change in Law Issue**.  Alcoa agrees that from the period starting on the earlier to occur of December 31, 2015, or the Effective Date and

extending for one year thereafter (the "Standstill Period"), it shall not pursue a claim that a Change in Law (as that term is defined in the Unit 4 Agreement at Section 17) has occurred. Alcoa agrees that, during the Standstill Period, it shall not provide notice to Luminant Generation pursuant to Section 17(c)(i) of the Unit 4 Agreement that a Change in Law has occurred.  If Alcoa provides any such notice to Luminant during the Standstill Period, such notice will have no force or effect whatsoever on either Party, and Luminant Generation will not be required to respond to such notice as provided for in Section 17(c)(v) of the Unit 4 Agreement.  As consideration for Alcoa's agreement not to pursue a Change in Law claim during the Standstill Period, the Parties agree that all of the Parties' rights, obligations, claims, interests, defenses and arguments relating to a Change in Law or Section 17 of the Unit 4 Agreement are hereby legally and equitably tolled during the Standstill Period and shall not be barred or otherwise impacted by limitations, laches, estoppel, waiver or any other theory on the basis, in whole or in part, of the Standstill Period.  Further, the Parties' rights, obligations, claims, interests, defenses and arguments relating to a Change in Law shall be retained during, and not impaired in any way as a result of, the Standstill Period and shall be preserved as they existed prior to the Standstill Period and treated as if the Standstill Period never occurred, including, without limitation, with respect to any two-year period for a Change in Law, which can include all or any portion of the Standstill Period but otherwise shall not be impacted in any way by the Standstill Period. Neither the assumption of the Alcoa Contracts, the filing of Luminant's Chapter 11 cases, any bar date, the automatic stay, the Plan, nor confirmation order shall bar Alcoa from asserting that a Change in Law has occurred prior to, during or following the Chapter 11 cases and prosecuting a Change in Law.  For avoidance of doubt, Luminant denies that a Change in Law has occurred. Nothing herein releases, waives, or otherwise impairs or prejudices the Parties' right to claim or dispute any claim that a Change in Law has occurred.  Either Party may assert that the two-year period referenced in Section 17 of the Unit 4 Agreement with respect to any claimed Change in Law includes all or any portion of the Standstill Period.  For the avoidance of doubt, except as expressly provided herein, the Parties retain their rights to argue that a Change in Law has not been timely asserted on grounds other than as a result of or based on the existence of the Standstill Period.

**2.2    Clay Availability Issue Resolution**. To resolve the Clay Availability Issue, the Parties agree that: (1) upon mutually agreeing to a date, location and recovery method, Alcoa will make available to Sandow Power and/or Luminant Generation 110,000 cubic yards of clay at no cost; (2) the Leased Premises shall be extended to include the area depicted in the attached Exhibit B by the topographic lines that extend and bulge to the right of the blue vertical line. (and the Parties shall execute any necessary amendments to the Lease to reflect the same); (3) provided that clay supplies are reasonably available at the Rockdale facilities, Alcoa will sell clay to Sandow Power and/or Luminant Generation consistent with historical practices, subject to the mutual agreement of a reasonable price, factoring in transportation costs at an equivalent haul distance, based on then prevailing market conditions and consistent with past pricing, and (4) the Parties acknowledge that, except as expressly provided in this Section 2.2, the provisions of the Lease are not, and shall not be deemed to be modified, amended, waived, deleted, compromised, replaced, novated or otherwise changed in any respect by this Agreement or by any rights and obligations arising under, or any transactions contemplated by this Agreement; and the Lease and all the provisions of the Lease shall continue to be in full force and effect as they existed prior to the execution of this Agreement as if this Agreement had not been entered into.  Luminant estimates that it will require approximately 110,000 cubic yards of clay within

the next two months and, thereafter, an additional 340,000 cubic yards of clay to complete capping work on the landfill known as the "A1 Landfill."

 **2.3** **Alcoa's Future Participation in These Chapter 11 Cases**.  Alcoa agrees to limit its participation in these Chapter 11 cases upon the Execution Date, pursuant to the following terms:

  **(a)** **Limited Participation**.  Alcoa shall support Luminant's pending Assumption Motion [D.I. 5789] as modified by this Agreement, and upon approval of this Agreement will not assert that there are any outstanding cure claims that need to be remedied. Alcoa shall not file any pleadings in opposition to the Assumption Motion.

  Upon the Effective Date of the Agreement, the Asserted Claims will be deemed withdrawn and reflected as such on the official claims register in these Chapter 11 Cases.

  With respect to the Chapter 11 Cases, Alcoa further agrees that it: (1) will withdraw its objection to the confirmation of the Plan; 2) will not file motions, objections, or oppositions to any of the Debtors' motions other than motions that directly and materially affect Alcoa's rights under the Alcoa Contracts; 3) will not make any appearances in any of the proceedings relating to these Chapter 11 Cases, including, but not limited to, confirmation proceedings, other hearings, or depositions; 4) will not file any joinders to any other parties' filings or motion practice; 5) will not propound any discovery on Luminant or the Debtors; and 6) will not affirmatively communicate with any creditors of the Debtors as it relates to the Disputes, to any alleged Change in Law, or the Alcoa Contracts.  Notwithstanding anything to the contrary herein, the Parties shall be entitled to enforce the terms of the Alcoa Contracts.

  **(b)** **Exceptions**.  Notwithstanding the foregoing, Luminant agrees that Alcoa may participate in these Chapter 11 Cases if there is a material change to the Debtors' *Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6122] (the "Plan") or any subsequent proposed plan of reorganization that impacts TCEH or Luminant Generation such that Alcoa's rights are materially affected, or if: (1) these Chapter 11 Cases are converted to proceedings under chapter 7 of the Bankruptcy Code; or (2) a Chapter 11 Trustee is appointed in these Chapter 11 Cases. To the extent that Alcoa believes such a material change has occurred, Alcoa shall provide prompt written notice to Luminant Generation at the address identified in Section 6, but in no case more than three (3) business days after Alcoa becomes aware of such material change. Alcoa shall also be entitled to respond to any motion, pleading or claim asserted against Alcoa in these Chapter 11 Cases and assert any counterclaims and affirmative defenses, including, without limitation, the Alcoa Claims.

 **3.** **Set Off Stipulation**.  Notwithstanding anything herein to the contrary, the terms of the Stipulation by and among Luminant Generation, Luminant Mining, Sandow Power, and Alcoa, dated August 26, 2014 [D.I. 2002-1] (the "Set Off Stipulation"), with respect to payments to be made under the Alcoa Contracts shall remain in full force and effect through the effective date of the Plan.

 **4.** **Mutual Covenant Not to Sue**.

**(a)**      As additional consideration for, and upon execution and delivery of the Agreement, each Party mutually agrees and warrants that it shall not institute any action or suit at law or in equity against the other Party or Parties, nor will any Party institute, prosecute, or in any way aid in the institution of any claim, demand, action, or cause of action against the other Party or Parties for damages, loss or injury, including to person or property or both, known or unknown, arising from the Disputes, but excluding the Change in Law Issue as set forth herein.

**(b)**      Without violating Section 2 and/or Section 4(a) hereof, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement.  This Agreement does not constitute and shall not be construed to waive each Party's right to recover damages for breach of this Agreement, as well as to seek injunctive relief with respect to any breach or threatened breach by the other Party of this Agreement.

**5.**      **Representations and Warranties**.

**(a)**      Each of the Parties acknowledges, agrees, represents and warrants that:

(i)      It has not heretofore assigned or transferred, or purported to assign or transfer, to any person or entity any claim or cause of action released pursuant to Section 2.1 above;

(ii)      It has duly executed and delivered this Agreement and is fully authorized to enter into and perform this Agreement and every term hereof;

(iii)      It has been represented by legal counsel in the negotiation and joint preparation of this Agreement, has received advice from legal counsel in connection with this Agreement and is fully aware of this Agreement's provisions and legal effect.

(iv)      It enters into this Agreement freely, without coercion, and based on its own judgment and not in reliance upon any representations or promises made by the other Parties, apart from those set forth in this Agreement; and

(v)      It is not aware of any other claims, controversies or disputes between the Parties arising prior to and through the Execution Date besides those specifically identified as Disputes in the Recitals and the Change in Law Issue.

**(b)**      Each of the Parties acknowledges the materiality of the foregoing representations and warranties.

**6.**      **Notices**.  Any notice pursuant to the terms and conditions of this Agreement shall be in writing, effective upon receipt, and sent to the following addresses:

Luminant:

>Luminant Generation Company LLC
>1601 Bryan Street
>Dallas, Texas 75201
>Attention: General Counsel

Alcoa:

>Alcoa Inc.
>Rockdale Operations
>PO Box 1491
>Rockdale, Texas 76567
>Attention: Energy Manager

>Alcoa Inc.
>Legal Department
>201 Isabella Street
>Pittsburgh, Pennsylvania 15212
>Attention: General Counsel

**7.**    **No Admission or Acknowledgement**.  No action taken by the Parties, or any of them, either previously or in connection with this Agreement, shall be deemed to be or construed to be (a) an admission of the truth or falsity of any of the claims made and/or raised in connection with such disputed claims or of any question of law or fact or (b) an acknowledgment or admission by any Party of any fault, wrongdoing or liability whatsoever.

**8.**    **Confidentiality and Non-Disparagement**.  The discussions and negotiations related to this Agreement are intended to be confidential to the Parties, and no Party shall publish, reproduce, transmit or disclose any such information or any related documents or correspondence (hereinafter "Confidential Information") to any non-party without the prior written consent of the other Party.  Except as required by applicable law, order, regulation, or stock exchange rule, neither Party shall (and each Party shall cause its affiliates, employees, and other representatives not to) make any public statements or issue any press releases regarding the existence or any terms of this Agreement.

**9.**    **No Other Parties to Benefit**.  This Agreement has been entered into between Luminant and Alcoa solely for the purpose of giving effect to the agreements herein provided between and for the exclusive benefit of Luminant and the Luminant Releasees, and Alcoa and the Alcoa Releasees, and no other person or entity shall have or acquire any rights, benefits, claims, or remedies on account of this Agreement or any of the matters provided for herein.

10.    **Severability**.    With the exception of Section 2 hereof, the invalidity or unenforceability of any portion or provision of this Agreement shall in no way affect the validity or enforceability of any other portion or provision hereof.  With the exception of Section 2 hereof, any invalid or unenforceable portion or provision shall be deemed severed from this Agreement and the balance of this Agreement shall be construed and enforced as if this Agreement did not contain such invalid or unenforceable portion or provision.  If any such provision of this Agreement is so declared invalid, the Parties shall promptly negotiate in good faith a new provision(s) to eliminate such invalidity and restore this Agreement as near as possible to its original intent and effect.

11.    **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, representations, understandings, negotiations, and discussions, whether oral or written, of the Parties, and there are no warranties, representations or agreements between the Parties in connection with the subject matter hereof, except as set forth or referred to herein.  No supplement, modification, waiver, amendment, or termination of this Agreement, or any provision hereof, shall be binding unless executed in writing by the Parties to be bound thereby.  No waiver of any of the provisions of this Agreement shall constitute a waiver of any other provisions, whether or not similar, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided; provided, for the avoidance of doubt, that all of the obligations of the Alcoa Contracts will remain in full force and effect and binding on all Parties.

12.    **Agreement Costs and Expenses**.  The Parties each agree to bear and pay their own costs and expenses, including without limitation, attorneys' fees and experts' fees, incurred in connection with the negotiation and execution of this Agreement.

13.    **Texas Law and Construction of Agreement**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Texas, without giving effect to the conflict of laws principles thereof.  The language of all parts of this Agreement shall, in all cases, be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties on the ground that such Party drafted or caused to be drafted this Agreement or any part thereof.  This Section 13 shall survive the termination of the Agreement.

14.    **Construction of Descriptive Headings**.  The headings in this Agreement are intended for convenient references only, and shall not in any way limit, amplify, or be used in interpreting the terms of this Agreement.  This Agreement shall not be construed against any Party as the drafters of this Agreement.

15.    **Counterpart Execution and Use of Photocopies**.  This Agreement may be executed by signature of each of the Parties, or their authorized representatives, on multiple copies of this Agreement, including copies transmitted by facsimile machine, and upon being so executed by all Parties, shall be effective as if all signatures appeared on the original of this Agreement.

16.    **Authority to Enter Agreement**.  The persons executing this Agreement hereby represent and warrant that they have the authority to bind the entity upon whose behalf the Agreement is executed.

17.    **Amendment**.  No oral or written amendment or modification of this Agreement by any officer, agent, or employee of either Party, either before or after execution of this Agreement, shall be of any force or effect unless such amendment or modification is in writing and is signed by a duly authorized representative of the Party to be bound thereby.

18.    **No Waiver**.  A Party's waiver of any breach or failure to enforce any of the terms, covenants, conditions, or other provisions of this Agreement at any time shall not in any way affect, limit, modify, or waive that Party's right thereafter to enforce or compel strict compliance with every term, covenant, condition, or other provision hereof, any course of dealing or custom of the trade notwithstanding.  All waivers must be in writing and signed on behalf of the applicable Party in accordance with Section 17.

19.    **Attorneys' Fees**.  If any action is brought to enforce the terms of this Agreement, the prevailing party shall be entitled to recover its expenses and costs relating thereto, including its reasonable attorneys' fees.

20.    **Recitals, Acknowledgement & Consent to Terms**.  The Parties acknowledge that the recitals contained hereinabove are true and correct to the best of their knowledge, and are made a part of this Agreement and incorporated by reference.  The Parties acknowledge that they have read this Agreement, understand the promises, recitals, mutual covenants, terms and conditions contained herein, and voluntarily consent to the terms hereof.

21.    **Assignment**.  Each Party understands that this Agreement is personal to the other Party.  Therefore, the Parties shall have no right, power, or authority to assign this Agreement or any portion thereof.  Absent the prior written approval of the other Party, a Party's attempted assignment of any of its rights or obligations hereunder shall be null and void and shall be ineffective to relieve such Party of its responsibility for the obligations assigned or delegated.

22.    **Full and Final Settlement**.  The Parties acknowledge and agree that this Agreement represents the full and final settlement of all claims and causes of action arising from or relating to the Disputes with respect to each of the Parties in accordance with the terms hereof.

23.    **Additional Documents and Acts**.  Each of the Parties agrees to execute or cause its counsel to execute any additional documents and take any further action which may reasonably be required to consummate this Agreement, or otherwise fulfill the obligations of the Parties hereunder, including, but not limited to, the filing of any papers necessary to obtain the Bankruptcy Court's approval of this Agreement.  The Parties acknowledge and agree that, subject to Bankruptcy Court approval of this Agreement, including pursuant to the Settlement Procedures Order, upon the Effective Date, the Debtors and/or the Court-appointed claims agent may amend the claims register to reflect the terms of this Agreement.  The Parties shall bear their own costs and attorneys' fees incurred in connection with any such additional action.

24.    **Successors and Assigns**.  This Agreement is binding upon and shall inure to the benefit of all Parties, their agents, representatives, insurers, attorneys, accountants, advisors, partners, heirs, assigns, and successors and predecessors in interest (including, without limitation, any subsequently appointed Chapter 7 trustee or Chapter 11 trustee appointed in these Chapter 11 Cases).

**25.    Incorporation with Assumption Order**.  This Agreement shall be subject to the entry of the Bankruptcy Approval Order substantially similar to Exhibit A hereto.


IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Execution Date.

**LUMINANT GENERATION COMPANY LLC**

By:_____

Name: Stephanie Zapata Moore

Title: Vice President and General Counsel


**SANDOW POWER COMPANY LLC**

By:_____

Name:  Stephanie Zapata Moore

Title:  Vice President and General Counsel


**LUMINANT MINING COMPANY LLC**

By:_____

Name:  Stephanie Zapata Moore

Title:  Vice President and General Counsel


**ENERGY FUTURE HOLDINGS CORP.**

By:_____

Name:  Daniel Jude Kelly

Title:   Vice President and Associate General Counsel

**ENERGY FUTURE COMPETITIVE
HOLDINGS COMPANY LLC**

By: _____

Name:  Stacey H. Doré

Title:  Executive Vice President and General
Counsel


**TEXAS COMPETITIVE ELECTRIC
HOLDINGS COMPANY LLC**

By: _____

Name:  Stacey H. Doré

Title:  Executive Vice President and General
Counsel


**ALCOA INC.**

By: _____

Name:  Robert S. Bear

Title:  Vice President, Transformation, Global
Primary Products

**EXHIBIT B**



**<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

**ORDER APPROVING THE ASSUMPTION OF ALL EXECUTORY CONTRACTS BY AND AMONG LUMINANT GENERATION COMPANY LLC, LUMINANT MINING COMPANY LLC, SANDOW POWER COMPANY LLC, TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC, AND ALCOA INC. AND APPROVING SETTLEMENT AGREEMENT AND MUTUAL RELEASE IN CONNECTION THEREWITH**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order (this "Order") authorizing the Debtor Parties to assume the Alcoa Contracts pursuant to the terms of the Settlement Agreement and Mutual Release made and entered into as of the 30th day of December, 2015 (the "Settlement and Mutual Release Agreement"); and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Court having found that the

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Debtors provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing, if any, before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      The Settlement and Mutual Release Agreement is hereby approved in its entirety.

3.      The Debtor Parties are authorized to assume the Alcoa Contracts, including, but not limited to, those listed on **Exhibit 1** attached hereto, and the Alcoa Contracts are hereby assumed pursuant the Settlement and Mutual Release Agreement.

4.      In accordance with this Order and any other order of this Court, each of the financial institutions at which the Debtors maintain their accounts is authorized to receive, process, honor, and pay all such checks presented for payment and wire transfer requests made by the Debtors related to the Alcoa Contracts.

5.      Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware are satisfied by such notice.

6.      Notwithstanding the possible applicability of rules 6004(h), 7062, 9014 or otherwise of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

8.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

Wilmington, Delaware
Dated: _____ , 2016

_____
THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 2 TO EXHIBIT A

**Non-Exclusive List of Alcoa Contracts to be Assumed**

| Alcoa Contract[1] | Debtor Party(ies)[2] | Effective Date |
|---|---|---|
| Settlement and Release Agreement | Luminant Generation; Sandow Power; Luminant Mining | August 10, 2012 |
| Amended and Restated Common Facilities Agreement | Luminant Generation; Sandow Power | August 10, 2012 |
| *Alcoa Contracts Related to the Initial Agreements* | | |
| Operating Contract | Luminant Generation | August 29, 1951 |
| Power Contract | Luminant Generation | August 29, 1951 |
| Letter Agreement re Slag Purchase and amendment Letter Agreements re Connection of Power Lines | Luminant Generation | February 20, 1963; June 28, 1967 |
| Letter Agreements re Insurance and Claims | Luminant Generation | November 7, 1985 |
| Letter Agreements re Interchange Energy and Energy Reserve | Luminant Generation | October 7, 1977 |
| Letter Agreements re Operating Fee Repair Costs | Luminant Generation | April 4, 1986 |
| *Alcoa Contracts Related to Three Oaks Mine* | | |
| Contract Mining Agreement | Luminant Mining; Sandow Power | September 1, 2007 |
| Lignite Inventory Agreement | Luminant Mining; Sandow Power | September 1, 2007 |
| Agreement Regarding Ownership of Lignite Interests | Sandow Power | August 15, 2007 |
| Purchase and Sale Agreement | Luminant Mining | August 15, 2007 |
| *Alcoa Contracts Related to Sandow Unit 4* | | |
| Unit 4 Agreement | Luminant Generation | August 13, 1976 |
| Amendment to Contracts | Luminant Generation | June 30, 1997 |
| 2nd Amendment to Contracts | Luminant Generation | May 4, 1998 |
| 3rd Amendment to Contracts | Luminant Generation | November 6, 1998 |
| 4th Amendment to Contracts | Luminant Generation | October 31, 2000 |

---

[1] Each as amended from time to time and together with various related agreements.

[2] For ease of reference, the Debtor Parties are listed here by the successor entity names.

| Alcoa Contract[1] | Debtor Party(ies)[2] | Effective Date |
|---|---|---|
| 5th Amendment to Contracts | Luminant Generation | February 1, 2003 |
| 6th Amendment to Contracts | Luminant Generation | August 22, 2003 |
| 7th Amendment to Contracts | Luminant Generation | January 1, 2004 |
| 8th Amendment to Contracts | Luminant Generation | June 30, 2004 |
| 9th Amendment to Contracts | Luminant Generation | October 27, 2005 |
| 10th Amendment to Contracts | Luminant Generation | February 15, 2007 |
| Supplemental Agreement to Unit 4 Agreement | Luminant Generation | March 2, 1981 |
| Amendment of Supplemental Agreement to Sandow Unit Four Agreement | Luminant Generation | September 6, 1994 |
| Letter of Intent re Amendment to Supplemental Agreement to Unit 4 Agreement | Luminant Generation | September 13, 1994 |
| Agreement for Maintenance | Luminant Generation | August 13, 1990 |
| Emergency Services Agreement | Luminant Generation | August 12, 1977 |
| Compromise Settlement Agreement | Luminant Generation | June 30, 1997 |
| Release Agreement | Luminant Generation | June 30, 1997 |
| Agreement for Back-Up Power and Energy | Luminant Generation | February 4, 1991 |
| Amendment to Agreement for Back-Up Power and Energy | Luminant Generation | September 6, 1994 |
| Confidentiality Agreement | Luminant Generation | April 19, 1993 |
| Agreements Regarding Transition and Separation of Sandow Station Units 1-3 | Luminant Generation | October 8, 1989 |
| Letter Agreement Amending Agreements re Transition and Separation of Units 1-3 and Unit 4 | Luminant Generation | June 30, 1997 |
| Letter Agreement re Parking Areas | Luminant Generation | August 10, 2012 |
| Letter Agreement Amending Supplemental Agreement to Unit 4 Agreement | Luminant Generation | January 20, 1986 |
| Letter Agreements re Fly Ash and Bottom Ash | Luminant Generation | April 27, 1993; May 12, 1993 |
| Letter Agreements re Billings | Luminant Generation | March 30, 1990 |
| Payback Letter Agreement | Luminant Generation | June 11, 1991 |
| Letter Agreements re Financial Issues and Resolution of Various Disputes | Luminant Generation | December 26, 1990 |

2

| Alcoa Contract[1] | Debtor Party(ies)[2] | Effective Date |
|---|---|---|
| *Alcoa Contracts Related to Sandow Unit 5* | | |
| Amended and Restated Unit 5 Agreement | Luminant Generation; Sandow Power | September 1, 2007 |
| Indemnity Agreement | Texas Competitive Electric Holdings Company | February 7, 2006 |

3