## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) ) | (Jointly Administered) **Re: D.I. 7760** |

**DECLARATION OF JOSEPH HO, SENIOR VICE PRESIDENT OF ENTERPRISE RISK MANAGEMENT FOR ENERGY FUTURE HOLDINGS CORP. IN SUPPORT OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER GRANTING A LIMITED WAIVER OF THE 2016 NON-PROPRIETARY TRADING ORDER WITH RESPECT TO CERTAIN NON-PROPRIETARY HEDGING AND TRADING ARRANGEMENTS SUBJECT TO THE DEBTORS' RISK MANAGEMENT GUIDELINES**

Pursuant to 28 U.S.C. § 1746, I, Joseph Ho, declare as follows:

1. I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the Debtors in support of, the *Motion of Energy Future Holdings Corp.*, et al., *for Entry of an Order Granting a Limited Waiver of the 2016 Non-Proprietary Trading Order With Respect to Certain Non-Proprietary Hedging and Trading Arrangements Subject to the Debtors' Risk Management Guidelines* (the "Motion"),[2] filed contemporaneously herewith.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] All capitalized terms used herein have the meaning given to them in the Motion.

2. I am the Senior Vice President of Enterprise Risk Management for EFH Corporate Services Company. I have served in various roles for the Debtors for the past seven years. Through these roles, I have been, and continue to be, responsible for managing enterprise-wide risk assessment and management efforts, including managing market, credit, and operational risks for the Debtors' trading and marketing operations. I have been employed in various finance and risk management positions in the wholesale energy marketing and trading industry for over 20 years, with the predominant amount of that time spent with firms engaged in wholesale electricity and natural gas marketing and trading activities.

3. The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and transactions relating to hedging and trading activities. If called to testify, I would testify to the facts set forth herein.

**I.   Consummation of the Transaction Authorized by the Bidding Procedures Order Requires Limited Relief from the 2016 Non-Proprietary Order**.

4. Pursuant to the Bidding Procedures Order, the TCEH Debtors obtained authority to participate in a competitive bidding process for the acquisition of certain assets, and, if selected as the winning bidder, consummate the Transaction. The TCEH Debtors ultimately emerged as the winning bidder in the auction and executed a purchase agreement with the Seller. The TCEH Debtors are in the process of negotiating the necessary documents required under the TCEH DIP Facility to consummate the Transaction. The Assets to be acquired by the TCEH Debtors in connection with the Transaction will include the Non-Proprietary Transferred Hedging Arrangements.

5. The majority of the Non-Proprietary Transferred Hedging Arrangements are asset-backed hedges that are currently secured on a first lien basis by the Assets. In order to induce the counterparties to the Non-Proprietary Transferred Hedging Arrangements to keep

2

such hedges in place upon consummation of the Transaction, the TCEH Debtors are seeking to secure the Non-Proprietary Transferred Hedging Arrangements by the same collateral securing the TCEH DIP Facility.

6. I understand that under the TCEH DIP Order, the TCEH Debtors cannot enter into the Non-Proprietary Transferred Hedging Arrangements on a first lien basis unless such Arrangements qualify as Secured Hedging Agreements or Secured Commodity Hedging Agreements (each as defined in the TCEH DIP Order). I understand that Secured Hedging Agreements are Non-Proprietary Hedging and Trading Arrangements that are entered into by and between a TCEH Debtor and a Hedge Bank (as defined in the TCEH DIP Order).

7. I believe counterparties to the Non-Proprietary Transferred Hedging Arrangements are likely to be incentivized into continuing to transact under the Non-Proprietary Transferred Hedging Arrangements—without requiring the TCEH Debtors to use cash or a letter of credit as collateral support for such Non-Proprietary Transferred Hedging Arrangements—if such Non-Proprietary Transferred Hedging Arrangements are, as far as possible, collateralized obligations under the TCEH DIP Order.

8. As a result, I believe the relief requested in the Motion is critical to ensuring that the majority of Non-Proprietary Transferred Hedging Arrangements qualify as Secured Hedging Agreements or Secured Commodity Hedging Agreements.

9. I understand that in order to meet the mark-to-market requirement necessary to qualify as Secured Commodity Hedging Agreements, the Non-Proprietary Transferred Hedging Arrangements have to be assigned or novated to a TCEH Debtor upon consummation of the Transaction. In addition, I believe that having the flexibility to assign and/or novate the Non-

Proprietary Transferred Hedging Arrangements to a TCEH Debtor will result in administrative efficiency.

10. The Non-Proprietary Transferred Hedging Arrangements, as Secured Hedging Agreements and Secured Commodity Hedging Agreements, as applicable, include Arrangements that contemplate a tenor beyond 27 months from a particular Reference Date. As a result, without relief from the 2016 Non-Proprietary Order, the TCEH Debtors would not be able to enter into transactions under certain of the Non-Proprietary Transferred Hedging Arrangements. As a result, I believe the TCEH Debtors would not be able to maximize the value associated with consummating the Transaction, as contemplated by the Bidding Procedures Order.

**II. The Non-Proprietary Transferred Hedging Arrangements are Subject to the Approved Limits, Internal Hedging Policy, and Risk Management Guidelines.**

11. The Non-Proprietary Transferred Hedging Arrangements are, and will continue to be, subject to a number of related risk reduction policies, including (a) the Debtors' rigorous Risk Management Guidelines; (b) the Approved Limits; and (c) the Internal Hedging Policy. The Debtors utilize the Risk Management Guidelines, which focus on governance and operational accountabilities surrounding transactions undertaken under the Non-Proprietary Hedging and Trading Arrangements, to ultimately ensure that hedging and trading transactions are closely monitored and in the best interests of all of the Debtors' stakeholders.

12. In addition to the Risk Management Guidelines, the Debtors utilize the Internal Hedging Policy, which is reviewed annually by the Audit Committee and which restricts the TCEH Debtors' ability to enter into Non-Proprietary Hedging and Trading Arrangements that would result in the Hedging and Trading Entities hedging more than 100% (in the aggregate) of the Debtors' projected exposure to certain commodities for a particular calendar year. The Internal Hedging Policy applies to certain commodities (which are contracted for under the Non-

Proprietary Transferred Hedging Arrangements) and imposes hedge limits (*i.e.,* the Approved Limits) with respect to those commodities (*i.e.,* the percent up to which the TCEH Debtors can hedge the Debtors' exposure with respect to such commodities).  In addition, the Approved Limits and the Risk Management Guidelines require the TCEH Debtors to follow certain transaction procedures (and obtain certain internal approvals) before entering into transactions under the Non-Proprietary Transferred Hedging Arrangements. In short, the Non-Proprietary Transferred Hedging Arrangements, like all of the Debtors' Non-Proprietary Hedging and Trading Arrangements, are subject to various risk protocols.

13. I believe that without the relief requested in the Motion, the TCEH Debtors will effectively have to seek termination of the Non-Proprietary Transferred Hedging Arrangements or, solely to the extent agreed to by the counterparties to such hedging arrangements, use cash or a letter of credit in order to provide credit support under such hedges.

14. In conclusion, I believe a limited waiver of the tenor limitations in the 2016 Non Proprietary Order, solely with respect to the Non-Proprietary Transferred Hedging Arrangements, is necessary to allow the Debtors to capitalize on the value of the Non-Proprietary Transferred Hedging Arrangements.

[*Remainder of page intentionally left blank.*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 28, 2016
Wilmington, Delaware

*/s/ Joseph Ho*
Joseph Ho
Senior Vice President, Enterprise Risk Management
EFH Corporate Services Company

RLF1 13805187v.1