# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br>(Jointly Administered)<br><br>Re: Docket No. 7814 |

### TEXAS BIG SPRING, LP'S RESPONSE TO THE DEBTORS' THIRTY-SEVENTH OMNIBUS (SUBSTANTIVE) OBJECTION TO CERTAIN IMPROPERLY ASSERTED CLAIMS PURSUANT TO SECTION 502(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULES 3001, 3003, AND LOCAL BANKRUPTCY RULE 3007-1

Texas Big Spring, LP ("TBS"), by and through its undersigned counsel, files this Response (the "Response") to Debtors' Thirty-Seventh Omnibus (Substantive) Objection to Certain Improperly Asserted Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and Local Bankruptcy Rule 3007-1 [Dkt. 7814] (the "Objection") and states as follows:

## BACKGROUND

1.  On October 27, 2014, TBS filed the Texas Big Spring, LP Proof of Claim, together with the Addendum to Administrative Expense Proof of Claim attached thereto. [Proof of Claim No. 8007] (the "503(b)(9) Claim").[2]

2.  The 503(b)(9) Claim relates to certain goods provided by TBS to Luminant Energy Company, LLC, a Debtor in the above-captioned jointly administered case ("Luminant").

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The 503(b)(9) Claim is incorporated by reference herein. Capitalized terms used but not defined herein shall have the meanings set forth in the 503(b)(9) Claim.

3. On February 9, 2016, the Debtors filed the Objection in which the Debtors object to the priority status of the 503(b)(9) Claim. [*See* Objection, Exhibit 8 to Exhibit A]

4. TBS and Luminant are parties to that certain Renewable Resource Energy Purchase Agreement, dated September 13, 1994, as amended (the "Agreement").

5. Under the Agreement, TBS agreed to sell, and Luminant agreed to purchase at wholesale, the electricity generated at the Texas Big Spring facility, which electricity Luminant would resell and/or redeliver to third parties.

6. Under the Agreement, all energy generated by the facility is delivered to, and taken by, Luminant at the interconnection facilities.  *See* Agreement, § 3.01.

7. The Agreement is governed by Texas law.

### RESPONSE TO OBJECTIONS

8. In the Objection, Luminant, without support, disputes TBS's 503(b)(9) Claim on the alleged basis that the wholesale electricity sold to Luminant within the twenty (20) days prior to bankruptcy, does not qualify for administrative expense treatment because it is not a good.

9. Contrary to the conclusory statement set forth in the Objection, the wholesale electricity sold and delivered to Luminant was a sale of goods under the plain meaning of the UCC for which administrative expense treatment under 11 U.S.C. § 503(b)(9) is warranted.

10. The term "goods" is defined by the Uniform Commercial Code (the "UCC") as "all things (including specifically manufactured goods) which are movable at the time of identification to a contract for sale . . . ."  UCC § 2-105(1).[3]

---

[3] UCC § 2-105(1) provides in full: "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107)."

11. The electricity manufactured by TBS and sold to Luminant is both movable and identifiable. *See e.g., In re Erving Indus., Inc.*, 432 B.R. 354, 369 (Bankr. D. Mass. 2010). As a thing that can be created, measured and owned, the electricity manufactured by TBS and sold to Luminant is tangible and possesses physical properties.

12. Here, the electricity sold by TBS to Luminant moves through the tie lines to the interconnection facilities owned by Luminant. Thereafter, as in the *Erving Industries* case, after being generated and transmitted through the tie lines and interconnection facilities, the electricity manufactured by TBS "moves through a huge network of transmission and distribution systems before ultimately reaching the [Luminant] customer's location." *Id.* Here, the electricity manufactured by TBS was sold to Luminant prior to its ultimate sale to Luminant's retail customers such that title transferred to Luminant before Luminant then delivered the electricity to its customers. *See*, *e.g.* Agreement § 3.01. Following its generation, the quantity of electricity so generated is measured at the meter by Luminant at the interconnection facilities. *See id.* Upon redelivery by Luminant to its customers, such electricity would presumably be metered again at the customer's location. Luminant's meter at the TBS substation provided information electronically of the quantities delivered, which Luminant then would factor in to its other generation decisions in order to serve its retail customers.

13. Accordingly, and consistent with the UCC definition of "goods," electricity is literally moving—and thus movable—at the time it is identified (i.e., measured when received by Luminant at the interconnection facilities before it is scheduled and re-delivered by Luminant to its customers). *See Erving Indus.*, 432 B.R. at 370 ("At the time the electricity is identified to the contract, it is literally moving, and it remains movable for some period of time thereafter" – i.e., subsequent redelivery to customers); *see also In re S. Montana Elec. Generation & Transmission*

*Coop., Inc.,* No. 11-62031-11, 2013 WL 85162 (Bankr. D. Mont. Jan. 8, 2013); *cf. Houston Lighting & Power Co. v. Reynolds,* 765 S.W.2d 784, 785 (Tex. 1988) (finding electricity is a product for purposes of strict products liability under Texas law because it is a "commodity, which, like other goods, can be manufactured, transported and sold") (emphasis added).

14.     "In the ordinary case identification of particular existing goods as goods to which the contract refers is unambiguous and may occur in one of many ways. It is possible, however, for the identification to be tentative or contingent.  In view of the limited effect given to identification by this Article, the general policy is to resolve all doubts in favor of identification." UCC § 2-501, cmt. 2.

15.     Even if there were there some abstract ambiguity as to the identification of the goods, under the UCC, such ambiguity is resolved by looking to the parties' Agreement.  *See* UCC § 2-501(1) (goods are identified "at any time and in any manner explicitly agreed to by the parties" (emphasis added)); *cf. Erving Indus., Inc.*, 432 B.R. at 370.  Here, through their Agreement, TBS and Luminant explicitly agreed that the identification occurred at the point of measurement, specified the interconnection facilities through which the electricity would move from TBS to Luminant, and designated the transfer point from TBS to Luminant—all important indicia of identification.[4]

16.     An additional provision of the UCC also suggests that TBS' sales qualify for § 503(b)(9) treatment, because wholesale sales of electricity also meet the definition of "goods" in UCC § 7-102 related to Documents of Title.  *See* UCC § 7-102 ("'Goods' means all things that are treated as moveable for the purposes of a contract for storage or transportation.")

---

[4] *See* Agreement §§ 3.01 (point of measurement), 1.03 (describing the Interconnection Facilities), 2.03 (requiring TBS to maintain the facilities interconnecting the Renewable Resource Facility to the Point of Interconnection), Ex. 3.01 (identifying the delivery point).

17. TBS acknowledges that there is also authority from this Court holding that delivery of electricity sold pursuant to a retail sale (as opposed to a wholesale sale, as is the case here) is a service rather than a good. *See In re NE Opco, Inc.*, 501 B.R. 233 (Bankr. D. Del. 2013). In that opinion, this Court analyzed decisions of other bankruptcy courts holding that retail electricity is not a good, but is instead a service. *See generally id.* (discussing *In re Pilgrim's Pride Corp.,* 421 B.R. 231 (Bankr. N.D. Tex. 2009); *In re PMC Marketing Corp., 501 B.R. 17 (Bankr. D.P.R. 2013)*, *vacated and remanded,* 517 B.R 386 (B.A.P. 1st Cir. 2014)). Unlike the facts here, which pertains to the sale of electricity pursuant to a <u>wholesale</u> contract, *NE Opco* and the other similar cases were asked only to decide whether retail sales of electricity constituted "goods" for purposes of § 503(b)(9) of the Bankruptcy Code. In numerous other cases, including the more recent *In re Wometco* case, courts have held that electricity sold to debtors under retail sales contracts constituted "goods" for purposes of 11 U.S.C. § 503(b)(9). *See In re Wometco De Puerto Rico Inc. et al.*, No. 15-02264, 2016 WL 155393 (Bankr. D.P.R. Jan. 12, 2016) ("Therefore, pursuant to the express language of the UCC's definition of 'goods,' a thing is a 'good' as long as it is moveable at the time of identification to a contract for sale, regardless of whether it remains moveable for eternity or for an infinitesimal amount of time thereafter. This Court further concludes that because electricity is movable at the time of identification to the contract, the purchased electricity constitutes a good under 11 U.S.C. § 503(b)(9)."); *see also GFI Wisconsin, Inc. v. Reedsburg Util. Comm'n (In re Grede Foundries)*, 440 B.R. 791, 799-800 (W.D. Wis. 2010) ("I conclude that the bankruptcy court ruled correctly that electricity is a 'good' within the meaning of § 503(b)(9) of the Code.").

18. Of the courts that have determined retail electricity to be a service in the context of § 503(b)(9) of the Bankruptcy Code, none has faced the question with regard to wholesale

electricity sales.  TBS therefore respectfully requests this Court to adopt the plain meaning of "identifiable" and "moveable" of § 2-105 the UCC and hold that <u>wholesale</u> electricity is a good, the sales of which are entitled to administrative priority under § 503(b)(9) of the Bankruptcy Code.

19.     In interpreting § 503(b)(9) of the Bankruptcy Code, this Court has determined that because the "term 'goods' and the term 'services' are disjunctively connected throughout the Bankruptcy Code, these terms must be ascribed different meanings ….  Therefore, under the plain meaning of the term 'goods' in both the UCC and the English language and based upon the distinction between 'goods' and 'services' throughout the Bankruptcy Code, a claim for an administrative expense under section 503(b)(9) cannot be a claim for services provided." *In re Goody's Family Clothing Inc.*, 401 B.R. 131, 135 (Bankr. D. Del. 2009).

20.     The generation and wholesale sale of electricity does not fit within the common legal understanding of "services," which Black's Law Dictionary defines as "the being employed to serve another; duty or labor to be rendered by one person to another." *Services*, Black's Law Dictionary (10th ed. 2014).  TBS also respectfully submits that it would be contrary to common understanding to consider the product or output of a manufacturing process, such as the generation of electricity, to be "services" -- the service of selling such product.  Consequently, as the sale of electricity at wholesale is not a service, it should be determined to be the sale of a good.  *See Goody's*, 401 B.R. at 135.

21.     Moreover, it also is instructive of the plain meaning of "good" to look to how electricity is treated from a goods/services standpoint under Texas law (the law of the Agreement).

22. Under Texas' sales and use tax laws, electricity qualifies as "tangible personal property." Tex. Admin. Code § 3.295(b) ("The furnishing of natural gas or <u>electricity</u> is a sale of tangible personal property. All the provisions in the Tax Code, Chapter 151, applying to the sale of tangible personal property, apply to the sale of natural gas or electricity." (emphasis added)); *cf*. Tex. Tax Code § 151.317 (treating natural gas and electricity the same for purposes of the sales and use tax). The Texas definition of "tangible personal property" is quite similar to the UCC's definition of "goods."[5] "'Tangible personal property' means personal property that can be seen, weighed, measured, felt or touched or that is perceptible to the senses in any other manner full definition including unborn young . . . ." *Id*. § 151.009.

23. Under the Texas Tax Code, "tangible personal property" is distinguished from "taxable services." *Id*. § 151.010 (defining "taxable items"). Notably, the sale of electricity or natural gas is <u>not</u> included in the definition of "taxable services." *Id.* § 151.0101 (listing the various services qualifying as taxable services, including (among others) cable television services, telecommunication services, security services, and internet access services).

24. Of greater significance, the definition of "taxable services" under the Texas Tax Code taxable services *does* include "a sale by a transmission and distribution utility as defined in Section 31.002, Utilities Code, <u>of transmission or delivery of service directly to an electricity end-use customer</u> whose consumption of electricity is subject to taxation under this chapter." *Id.* (emphasis added). Again, Texas law distinguishes the sale of electricity (tangible personal property) from the service of transmission and distribution when provided directly by a transmission and distribution utility (taxable service). Such distinction would imply a distinction

---

[5] The UCC defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action. 'Goods' also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the section on goods to be severed from realty (Section 2-107)." UCC § 2-105(1).

between electricity as a commodity (a good) and services provided by a utility related to the electricity.

25.  Moreover, the laws of the state in which this court sits, Delaware, make a similar distinction. For example, Delaware's Public Utility Tax distinguishes between electricity and services: "'Public utility' includes the following commodities and services:" (i) Electricity, (ii) Gas, (iii) Intrastate telephone services, (iv) Cable television communication services, and (v) Direct to home satellite services. 30 Del. C. § 5501(8a); *cf. id.* § 5506(g) ("The gross receipts or tariff charges of a distributor of electricity and electrical service attributable to sales of electricity or electrical services…."), (h) (similarly distinguishing between electricity and electrical services).

26.  For all of the foregoing reasons, the electricity manufactured by TBS and sold to Luminant under the Agreement within the twenty (20) days prior to the Petition Date constitute "goods", and the 503(b)(9) Claim should be allowed in its entirety as an administrative expense under 11 U.S.C. § 503(b)(9).

WHEREFORE, TBS respectfully submits that wholesale sales of electricity qualify as sales of goods and therefore requests that this Court enter an order: (a) allowing in favor of TBS its administrative expenses under §§ 503(b)(9) and 507(a)(2) of the Bankruptcy Code in the total amount of $406,217.13; and (b) granting such other relief as this Court deems just and proper.

Dated:  February 23, 2016
       Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: /s/ J. Cory Falgowski
    J. Cory Falgowski (No. 4546)
    1201 Market Street, Suite 1500
    Wilmington, DE  19801
    Telephone:  (302) 778-7500
    Facsimile:  (302) 778-7575
    E-mail:  jfalgowski@reedsmith.com

-and-

Paul B. Turner, Esquire
REED SMITH LLP
811 Main Street, Suite 1700
Houston, Texas  77002-6110
Telephone:  (713) 469-3800
Facsimile:   (713) 469-3899
Email:  pturner@reedsmith.com

*Counsel for Texas Big Spring, LP*