**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Objection Deadline: March 29, 2016 at 4:00 p.m.** |

**SUMMARY COVER SHEET TO THE FIFTH INTERIM FEE**
**APPLICATION OF MCDERMOTT WILL & EMERY LLP, SPECIAL COUNSEL**
**FOR THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD**
**FROM SEPTEMBER 1, 2015 THROUGH AND INCLUDING OCTOBER 28, 2015**

In accordance with the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), McDermott Will & Emery LLP ("McDermott"), special counsel for the above-captioned debtors and debtors in possession (collectively, the "Debtors") for certain energy-related transactional matters, submits this summary (this "Summary") of fees and expenses sought as actual, reasonable, and necessary in the fee application to which this Summary is attached (the "Fee Application")[2] for the period from September 1, 2015 through October 28, 2015 (the "Fee Period").

McDermott submits the Fee Application as an interim fee application in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order") and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

| General Information |
|---|

| | |
|---|---|
| Name of Applicant: | McDermott Will & Emery LLP |

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined in this Summary shall have the meanings ascribed to such terms in the Fee Application.

| | |
|---|---|
| Authorized to Provide Services to: | Energy Future Holdings Corp., *et al.* |
| Petition Date: | April 29, 2014 |
| Date of Order Authorizing the Debtors to Retain McDermott [D.I. 2062]: | September 16, 2014, *nunc pro tunc* to April 29, 2014 |
| Date of Order Authorizing McDermott's Expanded Retention [D.I. 4999]: | July 15, 2015, *nunc pro tunc* to June 2, 2015 |

## Summary of Fees and Expenses Sought in the Fee Application

| | |
|---|---|
| Period for Which Compensation and Reimbursement is Sought in the Fee Application: | September 1, 2015 through October 28, 2015 |
| Voluntary Fee Waiver and Expense Reduction in this Fee Period: | Reduced fees by $4,714.00 and expenses by $60.39[3] |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary for the Fee Period: | $85,629.50 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable, and Necessary for the Fee Period: | $5,495.09 |
| Total Compensation and Expense Reimbursement Requested for the Fee Period: | $91,124.59 |

## Rate Increases Applicable to the Fee Period

| | |
|---|---|
| Total Amount of Compensation Sought for the Fee Period, Calculated Using Rates as of the Date of Retention: | $80,959.50 |

---

[3] McDermott voluntarily reduced its fees and expenses by the amounts described above and consequently does not seek payment of these fees and expenses in this Fee Application.

**Summary of Past Requests for Compensation and Prior Payments**

| | |
|---|---|
| Total Amount of Compensation Previously Requested Pursuant to the Interim Compensation Order to Date: | $1,323,229.50 |
| Total Amount of Expense Reimbursement Previously Requested Pursuant to the Interim Compensation Order to Date: | $139,657.73 |
| Total Compensation Approved Pursuant to the Interim Compensation Order to Date: | $1,299,298.87 |
| Total Amount of Expense Reimbursement Approved Pursuant to the Interim Compensation Order to Date: | $137,351.91 |
| Total Allowed Compensation Paid to Date: | $1,204,571.91 |
| Total Allowed Expenses Paid to Date: | $146,771.16 |
| Compensation Sought in this Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $-0- |
| Expenses Sought In This Application Already Paid Pursuant to the Interim Compensation Order But Not Yet Allowed: | $-0- |

Dated:  March 7, 2016          /s/ Timothy W. Walsh
        New York, New York     Timothy W. Walsh
                               MCDERMOTT WILL & EMERY LLP
                               340 Madison Avenue
                               New York, New York  10173
                               Telephone:    (212) 547-5400
                               Facsimile:    (212) 547-5444
                               Email:        lcatto@mwe.com

                               *Special Counsel to the Debtors
                               and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |
| | ) | **Objection Deadline: March 29, 2016 at 4:00 p.m.** |
| | ) | |

**FIFTH INTERIM FEE APPLICATION OF**
**MCDERMOTT WILL & EMERY LLP, SPECIAL COUNSEL FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION, FOR THE PERIOD FROM**
**SEPTEMBER 1, 2015 THROUGH AND INCLUDING OCTOBER 28, 2015**

McDermott Will & Emery LLP ("McDermott"), special counsel for the above-captioned debtors and debtors in possession (collectively, the "Debtors") for certain energy-related transactional matters, hereby submits its interim fee application (the "Fee Application") for allowance of compensation for professional services provided in the amount of $85,629.50 and reimbursement of actual and necessary expenses in the amount of $5,495.09 that McDermott incurred for the period from September 1, 2015 through October 28, 2015 (the "Fee Period"). In support of this Fee Application, McDermott submits the declaration of Timothy W. Walsh, a partner at McDermott (the "Walsh Declaration"), which is attached hereto as **Exhibit A** and incorporated by reference. In further support of this Fee Application, McDermott respectfully states as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Jurisdiction

1.      The United States Bankruptcy Court for the Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules"), the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066] (the "Interim Compensation Order"), and the *Stipulation and Order Appointing a Fee Committee* [D.I. 1896] (the "Fee Committee Order").

## Background

4.      On April 29, 2014, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On June 5, 2014, the Court entered an order [D.I. 849] authorizing the joint administration and procedural consolidation of the Debtors' chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No entity has requested the appointment of a trustee or examiner in these chapter 11 cases.  On May 13, 2014, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [D.I. 420].

5.      A description of the Debtors' businesses, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions*, filed on April 29, 2014 [D.I. 98] and incorporated herein by reference.

6.      On September 16, 2014, the Court entered the Interim Compensation Order, which sets forth the procedures for interim compensation and reimbursement of expenses for all professionals in these cases.

7.      Given the size and complexity of these chapter 11 cases, the U.S. Trustee, the Debtors, and the Committee agreed to recommend that the Court appoint a fee committee to review and report, as appropriate, on interim and final fee applications filed by all of the Debtors' retained professionals in accordance with 11 U.S.C. §§ 328, 330, and 331 of the Bankruptcy Code and the Interim Compensation Order (the "Fee Committee").  On August 21, 2014, the Court entered the Fee Committee Order, appointing the Fee Committee and establishing procedures governing the Fee Committee's review of the Debtors' retained professionals' applications for compensation and the resolution of any concerns raised during such review.  On October 3, 2014, the Fee Committee distributed an initial memorandum regarding guidelines for expense reimbursements to those professionals retained in these chapter 11 cases (the "Fee Committee Guidelines").  McDermott reviewed the Fee Committee Guidelines on October 3, 2014.  McDermott believes that the relief requested herein complies with those guidelines.

8.      On October 28, 2014, McDermott filed its first interim fee application [D.I. 2679] the ("First Interim Fee Application"), requesting interim approval and allowance of the fees and

expenses incurred for the period from April 29, 2014 through August 31, 2014 (the "First Interim Compensation Period").  As explained in the Fee Committee's report filed on February 12, 2015 [D.I. 3522], McDermott agreed to reduce its fees to $472,373.37 and expenses to $70,785.46. No party filed an objection to the First Interim Fee Application.  On February 19, 2015, the Court entered an order [D.I. 3597] approving McDermott's fees and expenses for the First Interim Compensation Period on an interim basis.

9.      On February 18, 2015, McDermott filed its second interim fee application [D.I. 3589] the ("Second Interim Fee Application"), requesting interim approval and allowance of the fees and expenses incurred for the period from September 1, 2014 through December 31, 2014 (the "Second Interim Compensation Period").  As explained in the Fee Committee's reports filed on June 16, 2015 and June 19, 2015 [D.I. 4774 and 4807, respectively], McDermott agreed to reduce its fees to $339,264.75 and expenses to $30,524.30.  No party filed an objection to the Second Interim Fee Application.  On June 24, 2015, the Court entered an order [D.I. 4843] approving McDermott's fees and expenses for the Second Interim Compensation Period on an interim basis.

10.     On June 22, 2015, McDermott filed its third interim fee application [D.I. 4821] the ("Third Interim Fee Application"), requesting interim approval and allowance of the fees and expenses incurred for the period from January 1, 2015 through April 30, 2015 (the "Third Interim Compensation Period").  As explained in the Fee Committee's report filed on October 21, 2015 [D.I. 6548], McDermott agreed to reduce its fees to $246,931.00 and expenses to $19,249.11.  No party filed an objection to the Third Interim Fee Application.  On October 26, 2015, the Court entered an order [D.I. 6667] approving McDermott's fees and expenses for the Third Interim Compensation Period on an interim basis.

11.     On October 30, 2015, McDermott filed its fourth interim fee application [D.I. 6800] the ("Fourth Interim Fee Application"), requesting interim approval and allowance of the fees and expenses incurred for the period from May 1, 2015 through August 31, 2015 (the "Fourth Interim Compensation Period").  As explained in the Fee Committee's report filed on February 17, 2016 [D.I. 7873], McDermott agreed to reduce its fees to $240,729.75 and expenses to $16,793.04.  No party filed an objection to the Fourth Interim Fee Application.  On February 18, 2016, the Court entered an order [D.I. 7883] approving McDermott's fees and expenses for the Fourth Interim Compensation Period on an interim basis.

**Preliminary Statement**

12.     During the Fee Period, McDermott represented debtor Energy Future Holdings Corp. ( "EFH Corp.") and debtor Texas Competitive Electric Holdings Company, LLC and its debtor subsidiaries (collectively, the "TCEH Debtors") professionally and diligently, advising them on a variety of complex matters and issues, as a result of which the Debtors took action to maximize the value of their estates for the benefit of all parties in interest.

13.     Specifically, McDermott rendered services to EFH Corp. and the TCEH Debtors as requested and as necessary and appropriate in furtherance of the Debtors' restructuring efforts. The variety and complexity of the issues in these chapter 11 cases and the need to act or respond to issues on an expedited basis in furtherance of EFH Corp.'s, the TCEH Debtors' and the Debtors' needs required the expenditure of substantial time by McDermott personnel from multiple legal disciplines on an as-needed basis.  McDermott diligently and expeditiously represented EFH Corp. and the TCEH Debtors—frequently working with EFH Corp. and the TCEH Debtors' executives and in-house legal team at their Dallas, Texas offices—in connection with their energy-related transactional needs, including, but not limited to, energy trading and

utilities-related transactional issues, claims administration, and issues related to the potential restructuring of Oncor (as defined herein). As a result of McDermott's efforts, EFH Corp. and the TCEH Debtors have been able to, *inter alia*, implement and continue successful trading strategies, successfully negotiate more favorable terms with existing contract counterparties, negotiate new contracts with counterparties, and resolve counterparties' claims arising out of prepetition hedging and trading arrangements.

### The Debtors' Retention of McDermott

14.     On September 16, 2014, the Court entered the *Order Authorizing the Employment and Retention of McDermott Will & Emery LLP as Special Counsel to the Debtors and Debtors in Possession for Certain Energy-Related Transactional Matters Nunc Pro Tunc to the Petition Date* [D.I. 2062] (the "Retention Order"), attached hereto as **Exhibit B** and incorporated by reference. The Retention Order authorizes the Debtors to compensate and reimburse McDermott in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order. The Retention Order also authorizes the Debtors to compensate McDermott at McDermott's hourly rates charged for services of this type and to reimburse McDermott for McDermott's actual and necessary out-of-pocket expenses incurred, subject to application to this Court. The particular terms of McDermott's engagement are detailed in the engagement letter by and between McDermott and Luminant Energy Company LLC, Luminant Holding Company LLC and Luminant Generation Company LLC effective as of September 24, 2013 and attached hereto as **Exhibit C**.

15.     The Retention Order authorizes McDermott to provide legal services and advice with respect to, but not limited to, the following:

    a.      energy trading issues;

    b.      fuel transportation and storage issues;

    c.      power plant operations;

    d.      contract disputes;

    e.      negotiations; and

    f.      claims resolution.

16. On July 15, 2015, the Court entered the *Order Expanding the Retention and Employment of McDermott Will & Emery LLP for Energy-Related and REIT Transactional Matters Effective Nunc Pro Tunc to June 2, 2015* [D.I. 4999] (the "Expanded Retention Order"), attached hereto as **Exhibit D** and incorporated by reference. The Expanded Retention Order authorizes the Debtors to compensate and reimburse McDermott in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Interim Compensation Order. The Expanded Retention Order also authorizes the Debtors to compensate McDermott at McDermott's hourly rates charged for services of this type and to reimburse McDermott for McDermott's actual and necessary out-of-pocket expenses incurred, subject to application to this Court. The particular terms of McDermott's engagement are detailed in the engagement letter by and between McDermott and Energy Future Holdings Corp. ("EFH") attached hereto as **Exhibit E**.

17. The Expanded Retention Order authorizes McDermott to provide legal services and advice with respect to, but not limited to, reviewing and evaluating potential asset, income, and other economic metrics with respect to the potential restructuring of Oncor Electric Delivery Holdings Company LLC and its affiliated companies (collectively, "Oncor") into a property company ("PropCo") and a separate operating company ("OpCo") to enable EFH Corp.'s economic interest in Oncor to be held in a real estate investment trust structure; and apply transfer pricing principles to these economic metrics to develop potential models for rent payments between PropCo and OpCo.

**Disinterestedness of McDermott**

18.    To the best of the Debtors' knowledge and as disclosed in the *Declaration of Iskender H. Catto in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related Transactional Matters, Effective Nunc Pro Tunc to the Petition Date* [D.I. 664] (the "McDermott Declaration"), the *Supplemental Declaration of Iskender H. Catto in Support of the Application of the Debtors for an Order Authorizing the Debtors to Retain and Employ McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related Transactional Matters, Effective Nunc Pro Tunc to the Petition Date* [D.I. 2040] (the "Supplemental McDermott Declaration"), and the *Declaration of Iskender H. Catto in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Expanding the Retention and Employment of McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related and REIT Transactional Matters Effective Nunc Pro Tunc to June 2, 2015* [D.I. 4868] (the "Additional Services Catto Declaration"), (a) McDermott is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) McDermott has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the McDermott Declaration, the Supplemental McDermott Declaration, and the Additional Services Catto Declaration.[2]

19.    McDermott may have in the past represented, may currently represent, and likely in the future will represent parties in interest in connection with matters unrelated to the Debtors

---

[2] Although McDermott has been retained by the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code and is therefore not subject to the same disinterestedness standard as professionals retained pursuant to section 327(a), to the best of the Debtors' knowledge, McDermott satisfies the disinterestedness standard under section 327(a) of the Bankruptcy Code.

in these chapter 11 cases. In the McDermott Declaration, the Supplemental McDermott Declaration, and the Additional Services Catto Declaration, McDermott disclosed its connections to parties in interest that it has been able to ascertain using its reasonable efforts. McDermott will update the McDermott Declaration, the Supplemental McDermott Declaration, and the Additional Services Catto Declaration, as appropriate, if McDermott becomes aware of relevant and material new information.

20.     McDermott performed the services for which it is seeking compensation on behalf of EFH Corp. and the TCEH Debtors and their estates, and not on behalf of any committee, creditor, or other entity.

21.     McDermott has received no payment and no promises for payment from any source other than the Debtors for services provided or to be provided in any capacity whatsoever in connection with these chapter 11 cases.

22.     Pursuant to Bankruptcy Rule 2016(b), McDermott has not shared, nor has McDermott agreed to share, (a) any compensation it has received or may receive with another party or person other than with the partners, counsel, and associates of McDermott or (b) any compensation another person or party has received or may receive.

**Summary of Compliance with Interim Compensation Order and Fee Committee Order**

23.     This Fee Application has been prepared in accordance with the Interim Compensation Order and the Fee Committee Order.

24.     McDermott seeks interim compensation for professional services rendered to the TCEH Debtors during the Fee Period in the amount of $84,067.00 and reimbursement of actual and necessary expenses incurred in connection with providing such services in the amount of $5,495.09. McDermott seeks interim compensation for professional services rendered to EFH

Corp. during the Fee Period in the amount of $1,562.50.  During the Fee Period, McDermott attorneys, paraprofessionals, and other professionals expended a total of 122.00 hours for which compensation is requested.

25.    As of the date hereof, McDermott has received certain payments under the Interim Compensation Order and the Fee Committee Order.  McDermott has submitted Monthly Fee Statements (as defined in the Interim Compensation Order) for the Fee Period for each of September and October 2015, seeking payment of (a) 80% of the fees incurred by EFH Corp. and the TCEH Debtors for reasonable and necessary professional services provided by McDermott, and (b) 100% of the actual and necessary expenses incurred by McDermott in connection with the services provided to EFH Corp. and the TCEH Debtors for each month.  To date, in accordance with the Interim Compensation Order, McDermott has not received payment of fees or expenses for each Fee Period.

26.    Accordingly, by this Fee Application, and to the extent such amounts have not been paid by the time of the hearing on this Fee Application, McDermott seeks payment of all amounts outstanding, totaling $91,124.59, which represents the aggregate amount of unpaid fees and expenses incurred between September 1, 2015 and October 28, 2015.[3]

<div align="center">**Fees and Expenses Incurred During Fee Period**</div>

A.    **Customary Billing Disclosures**.

27.    McDermott's hourly rates are set at a level designed to compensate McDermott fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. The hourly rates and corresponding rate structure utilized by McDermott in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by McDermott for

---

[3] This amount also includes the 20% holdback for the Fee Period.

other restructuring and energy-related matters, whether in court or otherwise, regardless of whether a fee application is required.  The rates and rate structure reflect that such energy-related transactional and restructuring matters typically are national in scope and typically involve great complexity, high stakes, and severe time pressures.  For the convenience of the Court and all parties-in-interest, attached hereto as **Exhibit F** is a summary of blended hourly rates for timekeepers who billed to non-bankruptcy matters and blended hourly rates for timekeepers who billed to the Debtors during the Fee Period.

**B.**      **Fees Incurred During Fee Period**.

28.      In the ordinary course of McDermott's practice, McDermott maintains computerized records of the time expended to render the professional services required by the Debtors and their estates.  For the convenience of the Court and all parties in interest, attached hereto as **Exhibit G** is a summary of fees incurred and hours expended during the Fee Period, setting forth the following information:

- the name of each attorney and paraprofessional for whose work on these chapter 11 cases compensation is sought;

- each attorney's year of bar admission and area of practice concentration;

- the aggregate time expended and fees billed by each attorney and each paraprofessional during the Fee Period;

- the hourly billing rate for each attorney and each paraprofessional at McDermott's current billing rates;

- the hourly billing rate for each attorney and each paraprofessional as disclosed in the Fee Application;

- the number of rate increases since the inception of the case; and

- a calculation of total compensation requested using the rates disclosed in the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related Transactional Matters, Effective Nunc Pro Tunc to the Petition*

*Date* [D.I. 664] (the "<u>McDermott Retention Application</u>") and the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Expanding the Retention and Employment of McDermott Will & Emery LLP as Special Counsel for Certain Energy-Related and REIT Transactional Matters Effective Nunc Pro Tunc to June 2, 2015* [D.I. 4867] (the "<u>Expanded Retention Motion</u>") .

**C.    Expenses Incurred During Fee Period**.

29.    In the ordinary course of McDermott's practice, McDermott maintains a record of expenses incurred in the rendition of the professional services required by the Debtors and their estates and for which reimbursement is sought.  McDermott currently charges $0.20 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Bankruptcy Rules, McDermott charged no more than $0.10 per page for standard duplication services in these chapter 11 cases.  McDermott does not charge its clients for incoming facsimile transmissions.

30.    For the convenience of the Court and all parties in interest, attached hereto as **Exhibit H** is a summary for the Fee Period, setting forth the total amount of reimbursement sought with respect to each category of expenses for which McDermott is seeking reimbursement.

<u>**Proposed Payment Allocation**</u>

31.    In accordance with paragraph 2(b) of the Interim Compensation Order, McDermott proposes the following allocation of the fees and expenses sought in this Application among (a) EFH Corp., and (b) the TCEH Debtors:

| <u>**Collective Benefit Fees**</u>**: $91,124.59**<br><br>**(comprised of $85,629.50 in fees and $5,495.09 in expenses)** ||
|---|---|
| <u>**Debtor(s)**</u> | <u>**Amount Sought to be Paid**</u> |
| EFH Corp. | $1,562.50 |

| TCEH Debtors | $89,562.09 |
| ---: | --- |
| *Grand Total:* | **$91,124.59** |

## Summary of Legal Services Rendered During the Fee Period

32.     As discussed above, during the Fee Period, McDermott provided extensive and important professional services to EFH Corp. and the TCEH Debtors in connection with these chapter 11 cases.  These services were often performed under severe time constraints and were necessary to address a multitude of critical issues both unique to these chapter 11 cases and typically faced by large corporate debtors in similar cases of this magnitude and complexity.

33.     To provide a meaningful summary of McDermott's services provided on behalf of the Debtors and their estates, McDermott has established, in accordance with its internal billing procedures, certain subject task categories (each, a "Task Category") in connection with these chapter 11 cases.

34.     The following is a summary, by Task Category, of the most significant professional services provided by McDermott during the Fee Period.  This summary is organized in accordance with McDermott's internal system of task numbers.  The detailed descriptions demonstrate that McDermott was heavily involved in performing services for EFH Corp. and the TCEH Debtors on a daily basis, often including night and weekend work, to meet the needs of EFH Corp. and the TCEH Debtors' estates in these chapter 11 cases.  A schedule setting forth a description of the Task Categories utilized in this case, the number of hours expended by McDermott partners, associates and paraprofessionals by matter, and the aggregate fees associated with each matter is attached hereto as **Exhibit I**.

35.     **Exhibit J** is McDermott's budget and staffing plan for this Fee Period, which has been approved by the Debtors, and **Exhibit K** is a comparison of hours and fees budgeted for

each task category to which McDermott professionals and paraprofessionals billed time during the Fee Period against the hours and fees for which McDermott seeks compensation for the Fee Period.  In addition, McDermott's computerized records of time expended providing professional services to EFH Corp. and the TCEH Debtors and their estates are attached hereto as **Exhibit L**, and McDermott's records of expenses incurred during the Fee Period in the rendition of professional services to the TCEH Debtors and their estates are attached as **Exhibit M**.

**A.     Applicable to EFH Corp. Debtors.**

**(a)     [EFH] Asset Disposition [Task Code No. B130]**

Total Fees:     $1,562.50
Total Hours:   2.50

36.     This task category includes all work related to McDermott's expanded retention. During the Fee Period, McDermott professionals reviewed and evaluated potential asset, income, and other economic metrics with respect to the potential restructuring of PropCo and OpCo to enable EFH Corp.'s economic interest in Oncor to be held in a REIT structure.  McDermott professionals also applied transfer pricing principles to these economic metrics to develop potential models for rent payments between PropCo and OpCo.

**B.     Applicable to TCEH Debtors**.

**(a)     Fee/Employment Applications [Task Code No. B160]**

Total Fees:     $12,338.00
Total Hours:   23.60

37.     During the Fee Period, McDermott prepared Monthly Fee Statements and its Third Interim Fee Application, taking steps to prevent the disclosure of privileged or otherwise confidential material and ensuring that time entries were documented in accordance with all applicable guidelines.  McDermott had multiple correspondence with the Fee Committee and the Debtors regarding the Fourth Interim Fee Application and certain of its Monthly Fee Statements.

(b)     **Energy Trading [Task Code No. B270]**

Total Fees:     $71,091.00
Total Hours:    94.80

38.     McDermott played a central role in advising the TCEH Debtors with respect to energy trading issues throughout the Fee Period.  For example, in connection therewith, McDermott attorneys regularly participated on conference calls and negotiated with counterparties, reviewed and revised draft fuel, power, liquidation, and trading agreements, advised the TCEH Debtors with respect to safe harbor, termination, and automatic stay issues, negotiated and drafted counterparty liquidation agreements and stipulations resolving counterparty claims, and participated in the drafting and negotiation of the TCEH Debtors' contracts.

39.     Through meetings, telephonic conferences, research, analysis and negotiations, McDermott attorneys have assisted the TCEH Debtors in implementing successful business strategies in their negotiations with counterparties and their trading activities.  McDermott's services during the Fee Period enabled the TCEH Debtors and the Debtors to function as a coordinated group and enabled the TCEH Debtors to implement multiple energy trading strategies as they navigated the various complexities of these chapter 11 cases

(c)     **Hearings  [Task Code No. B340]**

Total Fees:     $638.00
Total Hours:    1.10

40.     This Matter Category includes time spent by McDermott attorneys preparing for and appearing telephonically for the hearing on the Third Interim Fee Application.

**Actual and Necessary Expenses Incurred by McDermott**

41.     As set forth in **Exhibit M** attached hereto, and as summarized in **Exhibit H** attached hereto, McDermott has incurred a total of $5,495.09 in expenses on behalf of the TCEH

Debtors during the Fee Period.  These charges are intended to reimburse McDermott's direct operating costs, which are not incorporated into the McDermott hourly billing rates.  McDermott charges external copying and computer research at the provider's cost without markup.  Only clients who actually use services of the types set forth in **Exhibit H** of this Fee Application are separately charged for such services.  The effect of including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services.

<u>**Reasonable and Necessary Services Provided by McDermott**</u>

**A.     Reasonable and Necessary Fees Incurred in Providing Services to EFH Corp. and the TCEH Debtors.**

42.     The foregoing professional services provided by McDermott on behalf of EFH Corp. and the TCEH Debtors during the Fee Period were reasonable, necessary, and appropriate to the administration of these chapter 11 cases and related matters.

43.     With respect to its energy practice, McDermott's attorneys have experience restructuring trading and marketing activities and negotiating and litigating energy-related claims.  Additionally, they have handled the negotiation of numerous long and short-term power sales agreements, established a revised hedging program, negotiated trading agreements, and addressed a wide variety of commercial transactions and other matters.  They have provided counsel with respect to the commercial operations of power-generating companies and have advised clients in complex and extensive negotiations involving regulatory agencies as well as in connection with the creation and implementation of energy programs, including transmission, storage and purchase enabling agreements, and fuel cost hedging instruments.  Moreover, with respect to McDermott's expanded retention, authorized pursuant to the Expanded Retention Order, McDermott has considerable experience in the energy sector and pricing REIT

transactions.

44.     In addition, due to the facts and circumstances of these chapter 11 cases, attorneys from McDermott's restructuring group were involved with McDermott's representation of the TCEH Debtors.  Overall, McDermott brings to these chapter 11 cases a particularly high level of skill and knowledge, which inured to the benefit of EFH Corp., the TCEH Debtors, the Debtors and all stakeholders.

**B.     Reasonable and Necessary Expenses Incurred in Providing Services to the TCEH Debtors.**

45.     The time constraints imposed by the circumstances of these chapter 11 cases required McDermott attorneys and other employees to devote substantial time during the evenings and on weekends to perform services on behalf of the TCEH Debtors.  Moreover, McDermott attorneys traveled to and worked from the Debtors' offices in Dallas, allowing the McDermott team to participate directly in in-person negotiations, provide on-site, real-time advice on the Debtors' trading floor, and work directly with the Debtors' in-house legal team and executives to develop and implement energy-related strategies vital to the Debtors' restructuring. These services were essential to meet deadlines, respond to daily inquiries from various creditors and other parties in interest on a timely basis, and satisfy the demands of the TCEH Debtors' businesses and ensure the orderly administration of their estates.  Consistent with firm policy, and as further disclosed in the McDermott Retention Application and the Expanded Retention Motion, McDermott attorneys and other McDermott employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs. McDermott's regular practice is not to include components for those charges in overhead when establishing billing rates, but rather to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of legal services.

46.    In addition, due to the location of the Debtors' businesses, co-counsel, creditors, and other parties in interest in relation to McDermott's offices, frequent multi-party telephone conferences involving numerous parties were required.  On many occasions, the exigencies and circumstances of these chapter 11 cases required overnight delivery of documents and other materials.  The disbursements for such services are not included in McDermott's overhead for the purpose of setting billing rates and McDermott has made every effort to minimize its disbursements in these chapter 11 cases.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors in these chapter 11 cases.

47.    Among other things, McDermott makes sure that all overtime meals, travel meals, hotel rates, and airfares are reasonable and appropriate expenses for which to seek reimbursement.  Specifically, McDermott regularly reviews its bills to ensure that the Debtors are only billed for services that were actual and necessary and, where appropriate, prorates expenses.   In that regard, McDermott will waive certain fees and reduce its expenses if necessary.  In the Fee Period, McDermott voluntarily reduced its fees by $4,714.00 and expenses by $60.39.  Consequently, McDermott does not seek payment of such fees or reimbursement of such expenses in the Fee Application.

### McDermott's Requested Compensation and Reimbursement Should be Allowed

48.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 of the Bankruptcy Code to govern the Court's award of such compensation.   Section 330 of the Bankruptcy Code provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement

for actual, necessary expenses."  11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria

for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the
> court should consider the nature, extent, and the value of such services,
> taking into account all relevant factors, including—
>
> (a)    the time spent on such services;
>
> (b)    the rates charged for such services;
>
> (c)    whether the services were necessary to the
> administration of, or beneficial at the time at which
> the service was rendered toward the completion of,
> a case under this title;
>
> (d)    whether the services were performed within a
> reasonable amount of time commensurate with the
> complexity, importance, and nature of the problem,
> issue, or task addressed; and
>
> (e)    whether the compensation is reasonable based on
> the customary compensation charged by
> comparably skilled practitioners in cases other than
> cases under this title.

11 U.S.C. § 330(a)(3).

49.    McDermott respectfully submits that the services for which it seeks compensation

in this Fee Application were, at the time rendered, necessary for and beneficial to EFH Corp. and

the TCEH Debtors and their estates and were rendered to protect and preserve the Debtors'

estates.  McDermott further believes that it performed the services for EFH Corp. and the TCEH

Debtors economically, effectively, and efficiently, and the results obtained benefited not only

EFH Corp. and the TCEH Debtors, but also the Debtors' estates and the Debtors' constituents.

McDermott further submits that the compensation requested herein is reasonable in light of the

nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.

50.    During the Fee Period, 122.00 hours were expended by McDermott's partners,

associates, and other professionals in providing the requested professional services.  McDermott

has made every effort to coordinate its efforts with those of the Debtors' bankruptcy counsel to avoid any duplication of efforts.  The number of hours spent by McDermott is commensurate with the defined tasks McDermott has performed and continues to perform on the matters described herein.

51.     During the Fee Period, McDermott's hourly billing rates for attorneys ranged from $580 to $875.  The hourly rates and corresponding rate structure utilized by McDermott in these chapter 11 cases are equivalent to the hourly rates and corresponding rate structure used by McDermott for restructuring, workout, bankruptcy, insolvency, and comparable matters, and similar complex energy-related transactional matters, whether in court or otherwise, regardless of whether a fee application is required.  McDermott strives to be efficient in the staffing of matters. These rates and the rate structure reflect that such matters are typically national in scope and involve great complexity, high stakes, and severe time pressures—all of which were present in these chapter 11 cases.

52.     Moreover, McDermott's hourly rates are set at a level designed to compensate McDermott fairly for the work of its attorneys and paraprofessionals and to cover certain fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.

53.     As detailed above, the services McDermott provided to EFH Corp. and the TCEH Debtors have conferred substantial benefit on the Debtors' estates.  In providing these services, McDermott has allowed Debtors' bankruptcy counsel to focus on issues more closely related to the reorganization of the Debtors' operations.

54.     McDermott represents and can demonstrate to this Court that the services were

performed in a reasonable amount of time, given the complexity of the issues involved and the many and varied legal issues facing EFH Corp. and the TCEH Debtors.  McDermott's detailed and thorough time records can demonstrate that the time expended on various tasks was necessary and appropriate to the vigorous representation of EFH Corp. and the TCEH Debtors. From the earliest stages of McDermott's involvement, attempts were made to limit the hours worked, and to avoid duplication of services and other unnecessary costs.  McDermott professionals frequently provided services on behalf of EFH Corp. and the TCEH Debtors under severe time constraints.  Moreover, during the Fee Period, McDermott attorneys and professionals were required to perform services on behalf of EFH Corp. and the TCEH Debtors to the preclusion of other firm matters and clients.

55.     McDermott relies on the Court's experience and knowledge with respect to the compensation awards in similar cases.  Given that frame of reference, McDermott submits that, in light of the circumstances of the case and the substantial benefits derived from McDermott's assistance, compensation in the amount requested is fair and reasonable.

56.     In sum, McDermott respectfully submits that the professional services provided by McDermott on behalf of EFH Corp. and the TCEH Debtors and their estates during the Fee Period and in these chapter 11 cases to date were necessary and appropriate given the complexity of these chapter 11 cases, the time expended by McDermott, the nature and extent of McDermott's services provided, the value of McDermott's services, and the cost of comparable services outside of bankruptcy, all of which are relevant factors set forth in section 330 of the Bankruptcy Code.  Accordingly, based on the factors to be considered under sections 330 and 331 of the Bankruptcy Code, the results McDermott has achieved to date more than justify allowance in full of McDermott's compensation and reimbursement request.

## Reservation of Rights and Notice

57.      It is possible that some professional time expended or expenses incurred during the Fee Period are not reflected in the Fee Application.  McDermott reserves the right to include such amounts in future fee applications.  In addition, the Debtors have provided notice of this Fee Application to:  (a) the U.S. Trustee; (b) counsel to the agent of the EFIH First Lien DIP Facility; (c) counsel to the agent of the TCEH DIP Facility; (d) counsel to the Creditors' Committee; and (e) the Fee Committee (collectively, the "Notice Parties").

58.      Pursuant to the Interim Compensation Order and the Fee Committee Order, (a) any Notice Party (other than the Fee Committee) that wishes to object to the Fee Application must file its objection with the Court, with a copy to Chambers and serve it on McDermott and the Notice Parties so that it is **actually** **received** **on or before March 29, 2016 at 4:00 p.m. (Eastern Daylight Time)** and (b) any member of the Fee Committee that wishes to object to the Fee Application must comply with the procedures set forth in the Fee Committee Order and if such member wishes to object to the Fee Application after complying with such procedures, such member must file its objection with the Court, with a copy to Chambers and serve it on McDermott and the Notice Parties.

## No Prior Request

59.      No prior application for the relief requested herein has been made to this or any other Court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, McDermott respectfully requests that the Court enter an order (a) awarding McDermott interim compensation for professional and paraprofessional services provided during the Fee Period in the amount of $85,629.50, and reimbursement of actual, reasonable and necessary expenses incurred in the Fee Period in the amount of $5,495.09; (b) authorizing and directing the Debtors to remit payment to McDermott for such fees and expenses; and (c) granting such other relief as is appropriate under the circumstances.

Date:  March 7, 2016
     New York, New York

<div style="margin-left:40%">

*/s/ Timothy W. Walsh*

Timothy W. Walsh
MCDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York  10173
Telephone:   (212) 547-5400
Facsimile:   (212) 547-5444
Email:   twwalsh@mwe.com

*Special Counsel to the Debtors*
*and Debtors in Possession*

</div>