```
 1   UNITED STATES BANKRUPTCY COURT
 2   DISTRICT OF DELAWARE
 3
 4   In re:                         :
                                    :   Chapter 11
 5   ENERGY FUTURE HOLDINGS CORP.,  :
     et. al.,                       :   Case No. 14-10979
 6                                  :
                  Debtors.          :   (Jointly Administered)
 7   _____:
                                    :
 8   DELAWARE TRUST COMPANY, AS TCEH :
     FIRST LIEN INDENTURE TRUSTEE   :
 9                                  :
                  Plaintiff,        :
10                                  :
        -against-                   :   Adv. Pro. No. 15-51239
11                                  :
     WILMINGTON TRUST, N.A., AS FIRST:
12   LIEN COLLATERAL AGENT AND FIRST :
     LIEN ADMINISTRATIVE            :
13   AGENT,                         :
                                    :
14                                  :
                  Defendants.       :
15      -and-                       :
                                    :
16                                  :
     MORGAN STANLEY CAPITAL GROUP   :
17   INC., J.ARON & COMPANY, AND    :
     TITAN INVESTMENT HOLDINGS LP,  :
18                                  :
                  Intervenors.      :
19   _____:
20
21
22
23
24
25
```

1                    United States Bankruptcy Court

2                    824 North Market Street

3                    Wilmington, Delaware

4

5                    March 24, 2016

6                    3:36 pm - 3:54 pm

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   LESLIE MURIN

1    HEARING re Motion of Delaware Trust Company for

2    Stay Pending Appeal of Allocation Order Pursuant to

3    Bankruptcy Rule 8007 [Adv. D.I. 95] (the "Stay Motion").

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

```
 1   A P P E A R A N C E S :

 2

 3   DANIEL J. DEFRANCESCHI - (TELEPHONICALLY)

 4        Energy Future Holdings Corp.

 5

 6   GIANCLAUDIO FINIZIO - (TELEPHONICALLY)

 7        Delaware Trust Company, as TCEH First Lien

 8

 9   NEIL B. GLASSMAN - (TELEPHONICALLY)

10        Delaware Trust Company, as TCEH First Lien

11

12   MICHAEL S. KIM - (TELEPHONICALLY)

13        Delaware Trust Company, as TCEH First Lien

14

15   JEREMY C. HOLLEMBEAK - (TELEPHONICALLY)

16        Delaware Trust Company, as TCEH First Lien

17

18   BENJAMIN J.A. SAUTER - (TELEPHONICALLY)

19        Delaware Trust Company, as TCEH First Lien

20

21   JOSEPH H. HUSTON - (TELEPHONICALLY)

22        Wilmington Trust, N.A., as First Lien Co

23

24   ALSO PRESENT TELEPHONICALLY:

25   JOSEPH BARSALONA
```

1    MARK A. CODY

2    KENT COLLIER

3    MICHAEL D. DEBAECKE

4    DANIELD DEFRACESCHI

5    DAVID M. FOURNIER

6    R. STEPHEN MCNEILL

7    STEVEN R. SCHWARTZ

8    JESSICA LIOU

9    ASHLEY ALTSCHULER

10   BRADLEY R. ARONSTAM

11   ESBETH BENNETT

12   RONIT BERKOVICH

13   THOMAS CURTIN

14   JUSTIN K. EDELSON

15   MARK ELLENBERG

16   SIMON FRASER

17   NEIL GLASSMAN

18   HOWARD HAWKINS

19   JOSTEPH H. HUSTON, JR.

20   MICHAEL S. KIM

21   MARK D. KOTWICK

22   SEAIN O'NEAL

23   SAL ROMANELLO

24   BENJAMIN SAUTER

25   DANIEL S. SHAMAH

1   DAVID SINGH

2   ASHLEY SITZER

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Good afternoon, counsel.  This is

3    Judge Sontchi.  We are here in the Delaware Trust Company

4    adversary proceeding 15-51239.  We have a lot of people on

5    the phone, so if you are not speaking, I would ask you to go

6    out of your way, please, to make sure you mute your phone.

7    And I guess the thing to do would be to turn it over to

8    Plaintiffs Delaware Trust Company.  It's there motion.

9              MR. HOLLEMBEAK:  Good afternoon, Your Honor.

10   Jeremy Hollembeak from Kobre and Kim LLP, on behalf of

11   Delaware Trust Company as TCEH First Lien Trustee, Plaintiff

12   in this matter.  Your Honor, first of all, let me say thank

13   you for responding so promptly to our emergent request for

14   relief on short notice.

15              As you've seen in the motion and the papers we

16   filed last night, we're seeking a stay.  We filed notice of

17   appeal, and we're seeking a stay pending appeal, but we

18   structured the request and relief of the stays and the

19   appeal as a two-tier request.  And all that we are asking

20   for today is a temporary stay that would bridge us through

21   to a hearing on formal motion papers and responses with

22   respect to whether or not there should be a stay pending

23   appeal.

24              We reached out to the interveners, and they were

25   not interested in discussing any kind of stay pending appeal

1    of any length, but we do not think that this relief should

2    be controversial.  The money at issue is already in an

3    escrow account.  All we're asking is that it stay in that

4    escrow account pending further decision of this Court.

5              Your Honor, there are several issues raised by the

6    -- attempt by the Plaintiff -- excuse me, by the interveners

7    -- to cause the holdback amounts to be distributed.  First

8    of all, we think just by challenging the days -- the order

9    that Your Honor issued less than two weeks ago to be stayed

10   through Monday night -- next Monday night at midnight, and

11   that there shouldn't be any action on that order until this

12   time.

13             I haven't had the chance to review in full the

14   pleading that was filed I think about 30 minutes ago by the

15   interveners.  I'm sure they'll speak to it, but I'd just

16   like to say that the idea that the cash collateral order

17   authorizes amounts to be distributed essentially the minute

18   that an allocation order is entered doesn't hold water.

19             The cash collateral order which was entered a year

20   and a half ago specifically contemplates at the very

21   minimum, and this is setting aside all of the arguments in

22   our papers that the plan really should govern here, but the

23   cash collateral at minimum says that distribution should be

24   covered by the escrow agreement.

25             The escrow agreement, which was attached as an

1    exhibit to our motion, clearly contemplates that no

2    distribution shall be made of the distribution order is

3    stayed.  And we can make all kinds of arguments as to why

4    Your Honor's order isn't actually a distribution order under

5    the escrow agreement.  We can make all kinds of arguments as

6    to why the Debtors, as the party that actually has to

7    instruct the escrow agent to release the funds, would be

8    violating the plain terms of the plan by doing so, but we

9    don't need to do that today.

10          All we need to do is the escrow agreement clearly

11   says no distribution should be made if there's a stay of a

12   distribution order.  We reserve all our rights, but assuming

13   that Your Honor's order was a distribution order, we still

14   are just here asking for a stay that would preclude those

15   distributions to preserve the status quo.

16          We can get -- if Your Honor wishes, we can get

17   into standard or stay pending appeal, but I think we've

18   tried to structure the relief so that those arguments would

19   really -- should really be made when we've all had more time

20   to put our arguments together before Your Honor and come

21   back at a full hearing.

22          We've asked for that hearing to be set on an

23   expedited basis, but even if it was set on an expedited

24   basis, I think we're talking a period of a couple of weeks

25   at maximum.  And so there's absolutely no harm to any of the

1    interveners if they -- even if they were entitled to get

2    their money tomorrow, there would be no harm if this Court

3    granted the limited stay that we're asking for today.  So

4    I'm going to pause there and, and see if the Court has any

5    questions or would like me to continue on into the actual

6    standard for the stay.

7            THE COURT:  I don't have any questions.  You don't

8    have to spend a lot of time on the standard.  I'm very aware

9    of the standard for a stay pending appeal.

10           MR. HOLLEMBEAK:  Thank you, Your Honor.   I -- all

11   I will say on that is that obviously there are several

12   factors, and I think even in the papers that were just

13   submitted by interveners, they admit that it's a sliding

14   scale, that it's not that you have to establish all of them

15   or that they all have to be as strong as the other ones.

16           I think clearly here there is absolutely no harm

17   in a stay being issued, either the temporary stay today, or

18   if we want to get into it, a stay pending full appeal of

19   Your Honor's order.  On the other hand, I -- the interveners

20   go to great length to say this is just about money damages,

21   that if we distribute the funds and the -- Your Honor's

22   orders reverse an appeal, that we could -- that they could

23   easily call back that money.  I don't think that that is

24   actually something that's correct, and in any event, it's

25   not the standard that needs to be met here.

1           If those monies are distributed, it raises all

2    kinds of issues that simply don't need to be litigated in

3    the first place, but it also really undermines the onus of

4    our appellant rights to move forward, at least with respect

5    to the holdback amount.  So we do think that there is

6    irreparable harm to us, to the trustee plaintiff.  We think

7    there's no harm at all to keeping the fund in escrow.

8           Again, this will have no effect on the plan of

9    reorganization should it go effective while any kind of stay

10   is pending.  You know, it's not as if we have the funds and

11   we're refusing to pay them over.  These funds are already in

12   escrow, so the idea that there's any harm there is not true.

13          And then even the likelihood of success, all I

14   want to say is that I think Your Honor and other judges in

15   your district and other districts have clearly recognized

16   that, you know, if we don't have to stand before you today

17   and convince you that the order that you entered less than

18   two weeks ago is wrong and will be definitely overturned on

19   appeal.

20          We obviously have a difference of opinion on

21   issues that Your Honor ruled on, and we were just before you

22   three weeks ago arguing with respect to those.  We think

23   that on every single one of them, there are issues that are

24   a substantial argument, countervailing argument to the

25   holdings that Your Honor found, and we wish to suppress

1    those as it is our right to appeal this order.  So we think

2    that that satisfies the likelihood of success.

3              For all those reasons, we would ask for the, the

4    relief request for a motion, which is the temporary stay,

5    and also our companion motion to shorten.  We ask for a

6    setting of a full hearing on our motion to stay on a

7    shortened basis.  Unless Your Honor has any questions...

8              MR. KIM:  Your Honor, this is Michael Kim also

9    counsel for Delaware Trust.  May I be heard?  I just want to

10   make one additional point in addition to what Mr. Hollembeak

11   just mentioned.

12             THE COURT:  Yes.

13             MR. KIM:  I think as a practical matter, Judge, if

14   this were a situation where the money could just ping-pong

15   back and forth between two creditworthy entities, I could

16   see the argument why the money could be paid and then just

17   claw back.

18             I think that Your Honor knows once any of this

19   money is disbursed, it's going to be logistically very

20   difficult.  Primarily, I think the irreparable harm will be

21   on the Court in terms of trying to identify all the people

22   who received the money and having to adjudicate having to

23   bring it back.

24             As Your Honor knows, the issues that run through

25   the adequate protection payment and the plan distributions

1    that will be on appeal are all linked.  So if on appeal,

2    Your Honor's willing for it to be modified, then all those

3    tests would have to be taken.

4            So I think as a practical matter, the best way to

5    deal with this money is to keep it the way it's been for a

6    substantial period of time until there is a final

7    adjudication.  And then whatever happens, happens.  Thank

8    you, Judge.

9            THE COURT:  You're welcome.  Thank you.  I'll hear

10   from the opponents.

11           MR. ROMANELLO:  Your Honor, Salvatore Romanello on

12   behalf of Titan Investment Holdings, LP.  Your Honor, we

13   apologize for delivering the papers to your chambers and

14   filing them, you know, 30 minutes beforehand.  However, we

15   only received the papers last night around midnight, and we

16   endeavored to have all three firms submit a joint brief so

17   that it would be as easy as possible for Your Honor to read

18   our positions.

19           Your Honor, the plaintiffs here are trying to flip

20   the standard.  They say well, there's no harm to

21   interveners, which we don't agree with, but what they have

22   to show is irreparable harm to that, and Mr. Maloney's going

23   to talk about irreparable harm in a little bit more detail.

24           But the standard is their burden to meet and it's

25   not whether there's harm or not to the defendants.

1           Now, Your Honor, there are arguments in their

2   papers regarding the plan and the language in the plan.

3   Well, the plan is not effective yet.  You know?  And even if

4   it were effective, the position with respect to what the

5   cash collateral order states in terms of distributions on

6   the holdback amounts is comply consistent with the language

7   of the plan.

8           The cash collateral order states that the holdback

9   amount shall be held in the escrow account pending further

10  order of this court or another court of competent

11  jurisdiction approving an allocation of the holdback amount

12  among the prepetition first-lien creditors.  That's exactly

13  what Your Honor will -- Your Honor's order is.

14          And moreover, Your Honor, what the plan says about

15  the, the seeking a holdback amount under the cash collateral

16  order, and this is at section 3(b)28(d) of the proposed

17  plan, which isn't effective yet.  It says nothing in this

18  plan shall preclude any party from seeking enforcement of

19  the TCEH first-lien creditor adequate protection payment

20  compensation order or distribution of the holdback amount as

21  defined in the cash collateral order under the cash

22  collateral order.

23          So, Your Honor, the parties negotiated this over a

24  year and a half ago, and it was clear to all the parties

25  that upon the issuance of an order from Your Honor with

1    respect to the allegation amounts, the funds should be

2    distributed.  Now the Debtors apparently believe that's the

3    case, and apparently the escrow agent believes that's the

4    case because they're -- according to the papers submitted by

5    the plaintiffs, that process is being undertaken.

6           Now, Your Honor, you're very familiar with the

7    standard, but here, it's not only do they have to show a

8    strong likelihood of success on the merits generally, but

9    they have to do it with respect to each of the four issues

10   that Your Honor -- or the conditions that Your Honor went

11   through in your opinion.  And they just can't do it with

12   respect to one, never mind all four.

13          I mean, they have to be right on all four of

14   those.  They have to show a strong likelihood of success on

15   all four.  They can't do that.  We've outlined that in our

16   papers.  I don't think we need to go in depth given the oral

17   argument that we had.  Your Honor, Mr. Maloney on behalf of

18   J. Aron is going to talk about irreparable harm.

19          MR. MALONEY:  Yes, Your Honor.  For the record,

20   Tom Maloney on behalf of J. Aron.  Your Honor, just to put

21   in context what we're talking about what we're talking

22   about, at the moment, there's $9,158,821.10 in this escrow

23   account.

24          When the corporate lawyers having to

25   (indiscernible) requisite payment instructions, which has

1    not yet happened, to the best of my knowledge, and so

2    whether or not this happens today or tomorrow or Monday or

3    Tuesday is really not material.  And so if we can commit

4    that it's not going to happen before Tuesday morning so we

5    don't have to worry about what the escrow agreement means

6    about -- and we used the word stay, I don't think it meant

7    stay under 706.2.

8         But I don't think we need to waste all our brain

9    power on that because I think as a practical matter

10   nothing's happening before Tuesday morning.  But I -- so

11   taking that off the table, I know we can commit that no

12   payment will be made before Tuesday.

13        However, there's no reason for us to convene for

14   formal full briefing and additional argument on $9,158,000.

15   It's going to five institutions.  One is Wilmington Trust

16   which will receive $4,423,624.70; one is J. Aron which would

17   receive $3,600,684.12; one will be for Morgan Stanley which

18   will receive $860,497.68; one will be to Deutsche Bank which

19   will be $229,224.20; and one will bring to Credit Suisse

20   which is $44,770.40.  That's what we're talking about.

21        Given that's what we're talking about, there is no

22   way that they satisfy the Third Circuit's rule of

23   irreparable injury.  Well, there's a sliding scale.  You

24   don't get to the sliding scale until you've met the

25   requisites for two factors, significant likelihood of

1    success on the merits, I mean, greater than 50 percent and

2    irreparable injury.

3            And it's quite clear monetary damages are not

4    irreparable injury unless they -- if there are extraordinary

5    circumstances, such as that they -- a company will go out of

6    business is what the ver -- the (indiscernible).  That's an

7    example where monetary damages could rise to the level of

8    irreparable injury, and irreparable injury is not available

9    when there's a possibility of basically restoring people

10   after the (indiscernible) has taken place.

11           Matter of fact, they have to show it's likely that

12   they could not be put back in place, not that it will be

13   inconvenient to them, but that it's likely that they will

14   not be put back into place.  Getting the money from these

15   five institutions, it's quite likely that they could do that

16   quite easily, which is why in their brief, they don't even

17   argue the standard they need to argue for in order to get

18   relief they request.  They say there's a possibility they

19   will not be made whole.

20           That doesn't cut it, Your Honor, so I think that,

21   that you've technically just said just put this off and

22   spend all of Easter writing more briefs on this, but I see

23   no point to it.  This is -- it's -- this is a frivolous

24   motion they're making.  They don't come close to meeting the

25   standard of irreparable harm.

1            THE COURT:  Thank you.  Anyone else?

2            MR. ELLENBERG:  Your Honor, it's Mark Ellenberg on

3    behalf of Morgan Stanley.  I endorse the comments of Mr.

4    Romanello and Mr. Maloney, and I would only add that I think

5    this motion has already gotten more time and attention than

6    it deserves.

7            THE COURT:  Thank you.

8            MR. KIM:  Your Honor, Michael Kim from Delaware

9    Trust again.  If Your Honor is finished with the other side,

10   I just have one factual comment to make.

11           THE COURT:  Okay.

12           MR. KIM:  I heard Mr. Maloney say that we could

13   just get the money back from these five institutions.  It

14   was my understanding, Judge, that factually, once the money

15   is disbursed, some of these institutions would then in turn

16   disburse to other unnamed entities and people.

17               And I did not understand all five institutions

18   would have confirmed to the Court that they would themselves

19   directly be liable to pay money back for those situations

20   where they're in fact acting as agents to disburse it to

21   others.  So, that's what I was speaking to earlier, Judge,

22   about the logistical complications we would be creating

23   unnecessarily by dispersing the funds before there's a final

24   adjudication by the Court.

25           THE COURT:  Okay, thank you.  Anything else?  All

1    right.  I am going to enter an order temporarily staying

2    this matter and the disbursement until we can have a hearing

3    on the actual motion for disbursement, or excuse me, motion

4    for stay on the merits with an opportunity to have everyone

5    in court and have a full hearing.

6              I think that there is a sufficient argument here

7    on irreparable harm, at least in the short, term to allow

8    the Court to enter a temporary stay, even though these are -

9    - forgetting about this possibility that the funds would be

10   further delivered even if -- even though these are large,

11   well-known, hopefully highly solvent banking institutions,

12   the reality is that once you disburse money, the time,

13   expense, etc., associated with getting it back is not easy

14   and is not insignificant.

15             And a slight delay, after having had over a year

16   and a half of delay, a slight further delay to allow the

17   Court to exercise its obligation to hear the matter under

18   proper circumstances I think is appropriate.  And given that

19   there is some risk of irreparable harm in the nature of

20   disbursing money and having to go through an expensive

21   process to get it back, I think that's enough to merit a

22   short stay to allow us to have any opportunity to hear the

23   matter on its merits.

24             When we get past that issue and talk about the

25   other issues, such as likelihood of success of the merits or

1    the balance of the hardships, I think balance of the

2    hardships weighs particularly strong here.  There really is

3    none to giving everyone a full opportunity to be heard.  So

4    I'm going to enter a temporary stay, obviously without

5    prejudice to the merits of whether I actually enter a stay

6    when we have a hearing to allow us to get to an actual

7    hearing in front of the Court.

8            And it may be that it's not much more substantive

9    than what we just had a discussion about, but I'd be more

10   comfortable from a due process standpoint giving everyone a

11   full entire opportunity to participate and giving me a

12   chance to actually read with some careful consideration

13   briefs and background documents.

14           I would note that I certainly did not read the --

15   what was it? -- 199 pages that was e-filed by the

16   respondents 35 minutes before the hearing.  So it's not even

17   really frankly fair to them for me to make a decision off

18   the cuff not having a full entire opportunity to hear the

19   matter.

20           And I wouldn't have scheduled it for today except

21   for the statement, which I guess I heard sort of refuted

22   today by the defendant -- excuse me, the interveners -- that

23   the funds were going to be distributed tomorrow.  The

24   Court's closed tomorrow in any event.  So that's why I

25   scheduled this for the last minute on virtually no notice to

1    anybody.

2              So I'm not faulting anyone for getting a brief in

3    at the last minute.  I'm simply making the point that the

4    Court's review of it was cursory at best, and there was no

5    reply.  So I would like to schedule this for a proper

6    hearing, and I'll enter a temporary stay to allow that to

7    occur.  And of course now the devil is when -- in the

8    details of when do you have such a hearing.

9              The best I can do is Friday, April 29th, at 10:00

10   a.m.  That actually doesn't require a motion or doesn't

11   require order shortening time in connection with the hearing

12   since that's a full month away.  One, two, three, four, five

13   weeks away.  So the -- I won't enter an order that's

14   shortening time.

15             I'd ask the parties to work together on a schedule

16   that allows for a supplemental objection if desired and a

17   reply, all done in enough time that I get a completed agenda

18   binder with no supplements to follow by the time it's

19   normally due.  Actually, I'm going to ask for the agenda

20   binder to be submitted to chambers early.

21             So I'd ask for it to be submitted on August --

22   excuse me, April 26th, which is a Tuesday, as opposed to the

23   Wednesday, since I'll be out of town one of the intervening

24   days, to give me an opportunity to be prepared for the

25   hearing.  So the briefing obviously would need to be

Page 22

1   completed by no later than Monday to allow the agenda binder

2   to be submitted.  Other than that, I'll allow the parties to

3   work out whatever briefing schedule is appropriate to put it

4   in front of the Court.

5           So the Court will enter a temporary stay through

6   and including April 29th to allow us to have a hearing on

7   the 29th on the request for relief from the -- or excuse me,

8   entry of a stay pending appeal.  Any questions?  It's a

9   quiet crowd.  Okay.  If there's no further statements, we're

10  adjourned.

11          MAN:  Thank you, Your Honor.

12          THE CLERK:  That calendar's filling up again.

13          THE COURT:  That's literally the first day I have.

14

15                      *  *  *  *  *

16

17

18

19

20

21

22

23

24

25

Page 23

1                       C E R T I F I C A T I O N

2

3     I, Sonya Ledanski Hyde, certified that the foregoing

4     transcript is a true and accurate record of the proceedings.

5

6     Sonya

7     Ledanski Hyde

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital1@veritext.com, c=US
Date: 2016.03.25 16:12:42 -04'00'

8     Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20     Veritext Legal Solutions

21     330 Old Country Road

22     Suite 300

23     Mineola, NY 11501

24

25     Date:  March 25, 2016