## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date:  To Be Determined** |
| | ) | **Objection Deadline:  To Be Determined** |

## MOTION OF ENERGY FUTURE
## HOLDINGS CORP. *ET AL.*, FOR
## ENTRY OF AN ORDER (A) APPROVING THE
## DISCLOSURE STATEMENT, (B) ESTABLISHING
## THE VOTING RECORD DATE, VOTING DEADLINE, AND
## OTHER DATES, (C) APPROVING PROCEDURES FOR SOLICITING,
## RECEIVING, AND TABULATING VOTES ON THE PLAN AND
## FOR FILING OBJECTIONS TO THE PLAN, AND (D) APPROVING
## THE MANNER AND FORMS OF NOTICE AND OTHER RELATED DOCUMENTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of order, substantially in the form attached hereto as

**Exhibit A** (the "Order"):    (a) approving the *Disclosure Statement for the Joint Plan of*

*Reorganization of Energy Future Holdings Corp.,* et. al.*, Pursuant to Chapter 11 of the*

*Bankruptcy Code* (as modified, amended or supplemented from time to time, the " Disclosure

Statement"); (b) establishing the voting record date, voting deadline, and other related dates;

(c) approving procedures for soliciting, receiving, and tabulating votes on the *Joint Plan of*

*Reorganization of Energy Future Holdings Corp.,* et. al.*, Pursuant to Chapter 11 of the*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

*Bankruptcy Code* (as modified, amended or supplemented from time to time, the "Plan"); (d) approving the manner and forms of notice and other related documents; and (e) granting other relief relating thereto as set forth herein.[2]   In support of this Motion, the Debtors respectfully state as follows.

### Jurisdiction and Venue

1.        The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.        Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.        The bases for the relief requested herein are sections 105(a), 502, 1123(a), 1124, 1125, 1126, and 1128 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3003, 3016, 3017, 3018, and 3020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2002-1, 3003-1, and 3017-1.

---

[2]    Capitalized terms used but not otherwise defined in this Motion shall have the meaning ascribed to them in the Plan or Disclosure Statement, as appropriate.

**<u>Relief Requested</u>**

4.      By this Motion, the Debtors request entry of the Order granting the following relief with respect to the Plan and Disclosure Statement and such other relief as is just and proper:

(a)      approving the adequacy of the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code;

(b)      approving the Disclosure Statement Hearing Notice (defined herein), substantially in the form attached as **<u>Exhibit 1</u>** to the Order;

(c)      approving the timeline for soliciting votes and voting on the Plan, including:

(1)    the Voting Record Date (defined herein) as **[June 1, 2016]**;

(2)    the Solicitation Deadline (defined herein) as ten days after the Debtors file the final version of the Disclosure Statement with the Court, or as soon as reasonably practicable thereafter;

(3)    the Voting Deadline (defined herein) among other things as **[July 22, 2016], at 4:00 p.m. (prevailing Eastern Time)**;

(d)      approving the materials to be included in the Solicitation Packages, including the following:

(1)    the forms of the Ballots (defined herein) substantially in the forms attached as **<u>Exhibits 2-A - 2-H</u>** to the Order;

(2)    the Cover Letter (defined herein), substantially in the form attached as **<u>Exhibit 3</u>** to the Order; and

(3)    the Confirmation Hearing Notice (defined herein), substantially in the form attached as **<u>Exhibit 4</u>** to the Order;

(e)      approving the Plan Supplement Notice (defined herein) substantially in the form attached as **<u>Exhibit 5</u>** to the Order;

(f)      approving the Non-Voting Status Notices (defined herein), substantially in the forms attached as **<u>Exhibit 6</u>** and **<u>Exhibit 7</u>** to the Order;

3

(g)    approving the Solicitation Procedures (defined herein) substantially in the form attached as **Exhibit 8** to the Order;

(h)    approving the form of notice to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan, substantially in the forms attached as **Exhibit 9** and **Exhibit 10**.

5.      Contemporaneously herewith, the Debtors have filed the *Motion of Energy Future Holdings Corp., et al., For Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement* (the "Scheduling Motion"), which seeks to establish a clear timeline and protocols to govern the confirmation process. Among other dates and deadlines, the Scheduling Motion seeks to establish key dates and deadlines regarding litigation on approval of the Disclosure Statement, including scheduling the hearing to consider the adequacy of the Disclosure Statement (the "Disclosure Statement Hearing") and confirmation of the Plan, including scheduling the hearing to consider confirmation of the Plan.  The relief sought in this motion is intended to dovetail with the order sought pursuant to the Scheduling Motion (the "Scheduling Order").

### Background

6.      On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849].  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and

4

TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13,
2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings
Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc.
(the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information
regarding the Debtors' business operations and capital structure is set forth in the declaration of
Paul Keglevic in support of the Debtors' first day motions [D.I. 98] and the Disclosure
Statement.

7.      On August 9, 2015, the Debtors and certain creditor constituencies executed a
plan support agreement (such parties, the "PSA Parties" and such agreement, the "Plan Support
Agreement").  The Plan Support Agreement contained certain termination events (each a "Plan
Support Termination Event"), the occurrence of which would terminate the PSA Parties'
obligations to support consummation of the Confirmed Plan (as defined below) but would bind
the PSA Parties with respect to certain key terms regarding an Alternative Restructuring (as
defined in the Plan Support Agreement).

8.      On December 9, 2015, the Court entered the *Order (Amended) Confirming the
Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.* et al, *Pursuant to
Chapter 11 of the Bankruptcy Code* [D.I. 7285] (the "Confirmation Order"), confirming the *Sixth
Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to
Chapter 11 of the Bankruptcy Code* [D.I. 7235] (the "Confirmed Plan").

9.      As detailed in the Disclosure Statement, prior to the filing of the Plan, the
Disclosure Statement, and this Motion, a Plan Support Termination Event occurred. The
occurrence of the Plan Support Termination Event immediately rendered the Confirmed Plan and

the Confirmation Order null and void. Consequently, the Debtors filed the Plan and the Disclosure Statement, reflecting, among other terms, the Alternative Restructuring terms.

### The Plan and Disclosure Statement

10.    As described in the Scheduling Motion, the Plan and Disclosure Statement reflect, among other terms, the Alternative Restructuring terms (as agreed upon in the Plan Support Agreement by the PSA Parties).

11.    The Plan and the Disclosure Statement describe in detail the transactions contemplated by the Plan and the recoveries provided for Holders of Claims and Interests.  The Plan contemplates classifying Holders of Claims and Interests into certain Classes of Claims and Interests for all purposes, including with respect to voting on the Plan, pursuant to section 1126 of the Bankruptcy Code.  The following chart includes the Classes of Claims and Interests under the Plan:

| SUMMARY OF STATUS AND VOTING RIGHTS | | | |
|---|---|---|---|
| Class | Claims and Interests | Status | Voting Rights |
| A1 | Other Secured Claims Against the EFH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A2 | Other Priority Claims Against the EFH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A3 | Legacy General Unsecured Claims Against EFH Corp. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A4 | EFH Legacy Note Claims | Impaired | Entitled to Vote |
| A5 | EFH Unexchanged Note Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A6 | EFH LBO Note Primary Claims | Impaired | Entitled to Vote |
| A7 | EFH Swap Claims | Impaired | Entitled to Vote |
| A8 | EFH Non-Qualified Benefit Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A9 | General Unsecured Claims Against EFH Corp. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A10 | General Unsecured Claims Against the EFH Debtors Other Than EFH Corp. | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

| **SUMMARY OF STATUS AND VOTING RIGHTS** |
|---|

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| A11 | Tex-La Guaranty Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| A12 | TCEH Settlement Claim | Impaired | Entitled to Vote |
| A13 | EFH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| A14 | Non-EFH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| A15 | Interests in EFH Debtors Other Than EFH Corp. | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| A16 | Interests in EFH Corp. | Impaired | Not Entitled to Vote (Deemed to Reject) |
| B1 | Other Secured Claims Against the EFIH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| B2 | Other Priority Claims Against the EFIH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| B3 | EFIH First Lien Note Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| B4 | EFIH Second Lien Note Claims | Impaired | Entitled to Vote |
| B5 | EFH LBO Note Guaranty Claims | Impaired | Entitled to Vote |
| B6 | General Unsecured Claims Against the EFIH Debtors | Impaired | Entitled to Vote |
| B7 | EFIH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| B8 | Non-EFIH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| B9 | Interests in EFIH | Impaired | Entitled to Vote |
| B10 | Interests in EFIH Finance | Impaired | Not Entitled to Vote (Deemed to Reject) |
| C1 | Other Secured Claims Against the TCEH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| C2 | Other Priority Claims Against the TCEH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| C3 | TCEH First Lien Secured Claims | Impaired | Entitled to Vote |
| C4 | TCEH Unsecured Debt Claims | Impaired | Entitled to Vote |
| C5 | General Unsecured Claims Against the TCEH Debtors Other Than EFCH | Impaired | Entitled to Vote |
| C6 | General Unsecured Claims Against EFCH | Impaired | Not Entitled to Vote (Deemed to Reject) |
| C7 | TCEH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |

RLF1 14455847v.1

| SUMMARY OF STATUS AND VOTING RIGHTS | | | |
|---|---|---|---|
| **Class** | **Claims and Interests** | **Status** | **Voting Rights** |
| C8 | Non-TCEH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| C9 | Interests in TCEH Debtors Other Than TCEH and EFCH | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| C10 | Interests in TCEH and EFCH | Impaired | Not Entitled to Vote (Deemed to Reject) |

12.     Based on the foregoing (and as discussed in greater detail herein), the Debtors are proposing to solicit votes to accept or reject the Plan from Holders of Claims and Interests in Classes A4, A6, A7, A12, B4, B5, B6, B9, C3, C4, and C5 (collectively, the "Voting Classes"). The Debtors are not proposing to solicit votes from Holders of Claims and Interests in Classes A1, A2, A3, A5, A8, A9, A10, A11, A13, A14, A15, A16, B1, B2, B3, B7, B8, B10, C1, C2, C6, C7, C8, C9, and C10 (collectively, the "Non-Voting Classes").

**Basis for Relief**

## I.     Approval of the Disclosure Statement.

### A.     The Disclosure Statement Contains Adequate Information.

13.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims and interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125 of the Bankruptcy Code states, in relevant part, as follows:

> (a)(1) "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

8

14.     The primary purpose of a disclosure statement is to provide information material to creditors and interest holders determining whether to accept or reject a plan.  *See Century Glove, Inc. v. First Am. Bank of New York*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phx. Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan.").  Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization.  *Century Glove, Inc.*, 860 F.2d at 100.

15.     "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  *See* 11 U.S.C. § 1125(a)(1) ("'adequate information means information of a kind, and in sufficient detail, <u>as far as is reasonably practicable</u> in light of the nature and history of the debtor and the condition of the debtor's books and records") (emphasis supplied); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.3d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *First Am. Bank of New York v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a

particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 (indicating that "the information required will necessarily be governed by the circumstances of the case").

16.    The determination of whether the information provided by the plan proponent is adequate pursuant to section 1125 of the Bankruptcy Code resides within the broad discretion of the bankruptcy court.  *See, e.g.*, *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1157 (5th Cir. 1988); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D. N.J. 2005) (indicating the determination should be made on a case-by-case basis and according to the discretion of the bankruptcy court."); *In re Phx. Petrol., Co.*, 278 B.R. at 393 (suggesting the court has substantial discretion in making such a determination).

17.    Case law under section 1125 of the Bankruptcy Code has produced a list of topics that a court will look for in a proposed disclosure statement when evaluating the adequacy of the disclosures therein.  Such topics include:

(a)    the events precipitating the bankruptcy filing;

(b)    available assets;

(c)    the strategy and direction of the company;

(d)    the sources of the information contained in the disclosure statement;

(e)    the effects of the bankruptcy on the debtor's operations;

(f)    claims asserted against the debtor;

(g)    projected returns to creditors under a chapter 7 liquidation;

(h)    management of the debtor;

(i)    the chapter 11 plan;

(j)    factors informing creditors' decisions regarding acceptance or rejection of the chapter 11 plan;

10

(k)      risks posed to the creditors under the plan;

(l)      previous and potential recovery of preferential or otherwise voidable transfers;

(m)     litigation likely to arise in a nonbankruptcy context; and

(n)      tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).

18.     Disclosure regarding all topics is not necessary in every case.  *See, e.g., In re U.S. Brass Corp.*, 194 B.R. at 424; *In re Phx. Petrol., Co.*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

19.     Here, the Disclosure Statement contains information useful for members of the Voting Classes to make an informed decision as to whether to accept or reject the Plan. Specifically, the <u>Disclosure Statement includes the following sections</u>:

(a)      **Executive Summary**: A statement of the Debtors in support of the Plan, purpose and effect of the Plan and overview of the Classes of Claims and Interests and their respective treatment under the Plan.  *See* Disclosure Statement at Art. I;

(b)      **EFH's Business Operations and Capital Structure**:  An overview of the Debtors' business operations, organizational structure, and capital structure.  *See* Disclosure Statement at Art. II;

(c)      **Events Leading to the Debtors' Financial Difficulties**: An overview of the Debtors' corporate history, response to market conditions, and out-of-court restructuring efforts in response to deteriorating economic conditions.  *See* Disclosure Statement at Art. III;

11

(d)    **Material Events in the Chapter 11 Cases**: An overview of the significant events that have occurred within these Chapter 11 Cases. *See* Disclosure Statement at Art. IV;

(e)    **Summary of the Plan**: Sources for consideration for the Plan distributions, the classification and treatment of Claims and Interests under the Plan, acceptance and rejection of the Plan, means for implementation of the Plan, treatment of Executory Contracts and Unexpired Leases under the Plan, settlement, release, injunction, and related provisions, and the binding nature of the Plan. *See* Disclosure Statement at Art. V;

(f)    **Confirmation of the Plan**: Confirmation procedures and statutory requirements for Confirmation and Consummation of the Plan. *See* Disclosure Statement at Art. VI;

(g)    **Voting Instructions**: A description of the Solicitation Procedures (defined herein) (attached as **Exhibit 8** to the Order). *See* Disclosure Statement at Art. VII;

(h)    **Risk Factors**: Certain risks associated with the Debtors' businesses, as well certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. *See* Disclosure Statement at Art. VIII;

(i)    **Important Securities Law Disclosures**: A description of the applicability of section 1145 of the Bankruptcy Code. *See* Disclosure Statement at Art. IX;

(j)    **Certain United States Federal Income Tax Consequences of the Plan**: A description of certain U.S. federal income tax law consequences of the Plan. *See* Disclosure Statement at Art. X; and

(k)    **Recommendation of the Debtors**: A recommendation by the Debtors that Holders of Claims and Interests in the Voting Classes should vote to accept the Plan. *See* Disclosure Statement at Art. XI; and

Based on the foregoing, the Debtors submit that the Disclosure Statement satisfies all requirements of section 1125 of the Bankruptcy Code and addresses the information set forth above in a manner that provides adequate information to Holders of Claims and Interests entitled to vote to accept or reject the Plan.

12

**B.    The Disclosure Statement Provides Sufficient Notice of Injunction, Exculpation, and Release Provisions in the Plan.**

20.    Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined, and the entities subject to the injunction.  Fed. R. Bankr. P. 3016(c).

21.    Article VIII of the Plan describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  Further, the language in Article VIII of the Plan appears in bold, making it conspicuous to anyone who reads it.  *See* Fed. R. Bankr. P. 3016(c) ("If a plan provides for an injunction . . . the plan and disclosure statement shall describe in specific and conspicuous language (bold, italics, or underline text) all acts to be enjoined and identify the entities that would be subject to the injunction.").  As provided in the Plan and the relevant Ballots, the Holders of Claims or Interests in the Voting Classes have the option to opt-out of the Releases of Holders of Claims and Interests specified in Article VIII.D of the Plan (the "Releases").[3]  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined by the Plan.

**II.    Approval of the Disclosure Statement Hearing Notice.**

22.    Bankruptcy Rule 3017(a) requires that notice of the hearing to consider the proposed disclosure statement be provided to creditors and other parties in interest.  *See* Fed. R. Bankr. P. 3017(a) (providing that after a disclosure statement is filed, it must be mailed with the

---

[3]    Members of Non-Voting Classes who are deemed to accept the Plan are considered "Releasing Parties," who are, therefore, subject to the Releases in Article VIII.D.  Members of Non-Voting Classes who are deemed to reject the Plan are not considered Releasing Parties, and therefore, are not subject to the Releases in Article VIII.D to the extent consent is required.

13

notice of the hearing to consider the disclosure statement and any objections or modifications thereto on no less than 28 days' notice thereof); *see also* Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice by mail of the time for filing objections and the hearing to consider the approval of a disclosure statement).  Additionally, Local Bankruptcy Rule 3017-1(a) provides that, upon the filing of a disclosure statement, the proponent of the plan shall obtain hearing and objection dates from the Court and shall provide notice of those dates in accordance with Bankruptcy Rule 3017.  *See* Del. Bankr. L.R. 3017-1(a) (requiring a hearing date "at least thirty-five (35) days following . . . and the objection deadline . . . at least twenty-eight (28) days from service of the disclosure statement").

23.    Consistent with the date of the Disclosure Statement Hearing established pursuant to the Scheduling Order, the Debtors will serve all known creditors with a copy of a notice in the form attached as **Exhibit 1** to the Order (the "Disclosure Statement Hearing Notice").  The Disclosure Statement Hearing Notice identifies the following:  (a) the date, time, and place of the hearing to consider the Disclosure Statement; (b) the manner in which a copy of the Disclosure Statement (and exhibits thereto, including the Plan) can be obtained; and (c) the deadline and procedures for filing objections to the approval of the Disclosure Statement.  Additionally, the Debtors will distribute copies of the Disclosure Statement, including exhibits, in CD-ROM format to parties on the list of all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Local Bankruptcy Rules (the "2002 List").

## III.    Approval of the Materials and Timeline for Soliciting Votes on the Plan.

### A.    Approval of the Voting Record Date, Solicitation Deadline, and Voting Deadline.

24.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include

holders of stocks, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Local Bankruptcy Rule 3017-1(b) provides that "[t]he plan proponent shall timely file a motion to be heard at a disclosure statement hearing for approval of the voting procedures, including the form of ballots, the voting agent and the manner and time of voting." Del. Bankr. L.R. 3017-1(b). Similarly, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

25. The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) and Local Bankruptcy Rule 3017-1(c) to establish [June 1, 2016] as the date for determining: (a) the Holders of Claims and Interests entitled to receive Solicitation Packages; (b) the Holders of Claims and Interests entitled to vote to accept or reject the Plan; and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the holder of such Claim (the "Voting Record Date").

26. Moreover, the Debtors propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim *only if*: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) and Local Rule 3001-1 have been completed by the Voting Record Date or (b) the transferee files by the Voting Record Date (a) the documentation required by Bankruptcy Rule 3001(e) to

evidence the transfer and (b) a sworn statement of the transferor supporting the validity of the transfer.  If a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote (and the consequences thereof) on the Plan, made by the holder of such Claim as of the Voting Record Date.

27.     Upon Court approval of the Disclosure Statement as containing adequate information as required under section 1125 of the Bankruptcy Code, the Debtors propose to mail or cause to be mailed the Solicitation Packages ten days after the Debtors file the final version of the  Disclosure Statement with the Court, or as soon as reasonably practicable thereafter (the "Solicitation Deadline").

28.     The Debtors request that the Court require that all Holders of Claims and Interests entitled to vote on the Plan complete, execute, and return their customized ballots (the "Ballots" and each a "Ballot") so that their Ballots (or Master Ballots on their behalf) are **actually received** by the Solicitation Agent on or before [July 22, 2016], at 4:00 p.m. (prevailing Eastern Time) (the "Voting Deadline").

29.     The foregoing timing and materials will afford Holders of Claims and Interests entitled to vote on the Plan at least twenty-eight days within which to review and analyze such materials and subsequently make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline consistent with the requirements of the applicable Bankruptcy Rules.  *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed and any other information that the court may direct to certain holders of claims).  Accordingly, the Debtors request that the Court

16

approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Packages to the Holders of Claims and Interests in the Voting Classes.

**B.      Approval of the Form of Ballots.**

30.      In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots.    Although based on Official Form No. 14, the Ballots have been modified to (a) address the particular circumstances of the Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in certain of the Voting Classes.  The proposed Ballots for each Voting Class are attached as **Exhibits 2-A - 2-H** to the Order.

31.      The Debtors respectfully submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

**C.      Approval of the Form of Solicitation Packages and Manner of Their Distribution to Parties Entitled to Vote on the Plan.**

32.      Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of allowed claims and/or equity interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed.  Fed. R. Bankr. P. 3017(d).

33.      In accordance with this requirement, the Debtors propose to send the solicitation materials and documents to be included in the solicitation packages listed below (each, a "Solicitation Package" and, collectively, the "Solicitation Packages") to provide Holders of Claims and Interests in the Voting Classes with the information they need to be able to make informed decisions with respect to acceptance or rejection of the Plan.

34.     Specifically, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Packages to be distributed by first-class U.S. mail to those Holders of Claims and Interests in the Voting Classes.  Each Solicitation Package will include the following materials:

(a)     the relevant Ballot, substantially in the form attached as **Exhibits 2-A - 2-H** to the Order, as applicable, together with detailed voting instructions (as may be modified for particular Classes and with instructions attached thereto) and a pre-addressed, postage prepaid return envelope;

(b)     the letter to be sent by the Debtors to Holders of Claims and Interests entitled to vote on the Plan explaining the solicitation process and urging such parties to vote in favor of the Plan (the "Cover Letter"), substantially in the form attached as **Exhibit 3** to the Order;

(c)     the Disclosure Statement (and exhibits thereto, including the Plan);

(d)     the Order; and

(e)     the Confirmation Hearing Notice (defined below), substantially in the form attached as **Exhibit 4** to the Order; and

(f)     such other materials as the Court may direct.

35.     The Debtors request that they be authorized to distribute the Plan, the Disclosure Statement, and the Order to Holders of Claims and Interests entitled to vote on the Plan in CD-ROM format.  (The Ballots, the Cover Letter, and the Confirmation Hearing Notice will only be provided in paper format.)  Distribution in this manner will translate into significant monetary savings for the Debtors' estates (the Plan, the Disclosure Statement, and the proposed Order, collectively, total over 300 pages) and will reduce both postage costs and production time, as generating CD-ROMs can be accomplished faster than printing documents.  Bankruptcy courts in this district have permitted debtors to transmit solicitation documents in CD-ROM format in other large chapter 11 cases in the interest of saving printing and mailing costs.  *See, e.g.*, *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. Sept. 22, 2015) (authorizing the debtors to transmit solicitation documents in CD-ROM format); *In re Source Home Entm't, LLC*,

18

No. 14-11553 (KG) (Bankr. D. Del. Jan. 12, 2015) (same); *In re FAH Liquidating Corp. f/k/a Fisker Automotive Holdings, Inc.*, No. 13-13087 (KG) (Bankr. D. Del. Dec. 10, 2013) (same); *In re Pipeline Data Inc.*, No. 12-13123 (KJC) (Bankr. D. Del. Aug. 8, 2013) (same); *In re Conexant Sys., Inc.*, No. 13-10367 (MFW) (Bankr. D. Del. Apr. 19, 2013) (same); *In re Neb. Book Co.*, No. 11-12005 (PJW) (Bankr. D. Del. Apr. 12, 2012) (same); *In re Appleseed's Intermediate Holdings, LLC*, No. 11-10160 (KG) (Bankr. D. Del. Mar. 1, 2011) (same).[4]

36.    Additionally, the Debtors will provide (a) complete Solicitation Packages to the U.S. Trustee and counsel to the applicable agents for the Debtors' lenders and (b) the Order (in CD-ROM format) and the Confirmation Hearing Notice to all parties on the 2002 List as of the Voting Record Date.  Any party who receives a CD-ROM, but who would prefer paper format, may contact Epiq Bankruptcy Solutions, LLC ("Epiq" or the "Solicitation Agent") and request paper copies of the corresponding materials previously received in CD-ROM format (to be provided at the Debtors' expense).  The Debtors will not mail Solicitation Packages or other solicitation materials to Holders of Claims and Interests that have already been paid in full during these Chapter 11 Cases or that are authorized to be paid in full in the ordinary course of business pursuant to an order previously entered by this Court.

37.    The proposed Confirmation Hearing Notice informs parties in interest that the Plan and Disclosure Statement, together with all exhibits thereto, may be obtained:  (a) from the Debtors' Solicitation Agent's website at http://www.efhcaseinfo.com under the "Key Documents" section; (b) by telephoning the Debtors' Solicitation Agent at (877) 276-7311; (c) by emailing the Debtors' Solicitation Agent at efhvote@epiqsystems.com; or (d) for a fee via the Bankruptcy Court's website at http://www.deb.uscourts.gov.  The proposed procedure for

---

[4]    Because of the voluminous nature of the orders cited herein, such orders are not attached to the Motion.  Copies of these orders are available upon request to the Debtors' counsel.

providing copies of the Plan and Disclosure Statement complies with the requirements of Bankruptcy Rule 3017(a) and Local Rule 3017-1(c).

38.     The Debtors respectfully request that the Solicitation Agent be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in (a) distributing the Solicitation Package; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims and Interests; (c) responding to inquiries from Holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan.

39.     For Solicitation Packages that will be sent to the Holders of debt securities entitled to vote on the Plan, the Debtors (through the Solicitation Agent) propose to deliver Solicitation Packages to the record holders of such Claims, including, representatives such as brokers, banks, commercial banks, transfer agents, trust companies, dealers, other agents or nominees, or their mailing agents (collectively, the "Nominees").  Each Nominee will receive reasonably sufficient numbers of Solicitation Packages, including sufficient beneficial Ballots (the "Beneficial Holder Ballots"), to distribute to the beneficial holders of the Claims (the "Beneficial Holders") for whom such Nominee acts, and the Debtors shall reimburse Nominees for their reasonable and customary charges in connection with such distribution.

**D.     Approval of the Notice of Confirmation Hearing.**

40.     The Debtors will serve notice of the hearing to consider Confirmation of the Plan (the "Confirmation Hearing Notice"), attached as **Exhibit 4** to the Order, on all known Holders of Claims and Interests and the 2002 List, and other parties in interest (regardless of whether

20

such parties are entitled to vote on the Plan) by the Solicitation Deadline, which will provide all parties in interest more than twenty-eight days' notice of the Plan Objection Deadline (as defined herein) and the Confirmation Hearing. The Confirmation Hearing Notice will include: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) notice of the Voting Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Plan Objection Deadline; and (e) notice of the Confirmation Hearing Date and information related thereto.

41. Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). Therefore, in addition to the foregoing distribution of the Confirmation Hearing Notice, the Debtors will publish the Confirmation Hearing Notice (in a format modified for publication) in: (a) *The Wall Street Journal*, *USA Today*, *The Dallas Morning News*, *Houston Chronicle*, *Corpus Christi Caller Times*, *Fort Worth Star-Telegram*, and *Waco Tribune-Herald,* and (b) on the restructuring website established by Epiq, available at http://www.efhcaseinfo.com, in each case no later than seven days after the Solicitation Deadline (the "Publication Notice"). The Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting Deadline, the Plan Objection Deadline, and the Confirmation Hearing to parties who did not otherwise receive notice thereof by mail. Additionally, service and publication of the Confirmation Hearing Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

21

E.     **Approval of the Plan Supplement Notice.**

42.     On October 21, 2015, the Debtors filed the *Plan Supplement for the Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 6544] and any amendments and modifications thereto, including D.I. 7191 and 7866 (as defined in the Plan, the "Plan Supplement").

43.     The Plan defines "Plan Supplement" as including the compilation of documents and forms of documents, schedules, and exhibits to the Plan that are filed by the Debtors no later than fourteen days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.  *See* Plan at Art. I.A.

44.     The Plan Supplement will include the following materials, if any, and as applicable, in connection with confirmation (each as defined in the Plan): (a) New Organizational Documents; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List (which shall include the Employment Agreements and provide that such Employment Agreements are assigned to Reorganized TCEH on the TCEH Effective Date); (d) a list of retained Causes of Action; (e) the Reorganized TCEH Debtor Management Incentive Plan; (f) the New Employee Agreements/Arrangements; (g) the Reorganized TCEH Registration Rights Agreement; (h) the identity of the members of the New Boards and management for the Reorganized Debtors; (i) the New Reorganized TCEH Debt Documents; (j) the New Reorganized EFIH Debt Documents; (k) the Merger and Purchase Agreement; (l) the Backstop Agreement; (m) the Tax Matters Agreement; (n) the Transition Services Agreement; (o) the Reorganized TCEH Shareholders' Agreement; (p) the New EFH Shareholders' Agreement; (q) the Equity Commitment Letter; (r)

22

the Separation Agreement; (s) the Spin-Off Tax Receivable Agreement or the Taxable Separation Tax Receivable Agreement (or the material terms and conditions thereof) (if any); (t) the Rights Offering Procedures; (u) the New EFH Management Agreement; (v) the Pension Backstop Agreement; and (w) the Taxable Separation Memorandum.

45.    To ensure that all parties on the 2002 List receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send notice of the filing of the Plan Supplement (the " Plan Supplement Notice") in substantially the form attached as **Exhibit 5** to the Order substantially on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.  Because of the voluminous nature of the Plan Supplement, the Debtors will not physically serve the Plan Supplement and the exhibits attached thereto.

### F.    Approval of the Form of Notices to Non-Voting Classes.

46.    As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. As a result, they will not receive Solicitation Packages and, instead, the Debtors propose that such parties receive an appropriate form notifying such holder of its non-voting status (each, a "Non-Voting Status Notice").  Specifically, in lieu of solicitation materials, the Debtors propose to provide the following to Holders of Claims and Interests in Non-Voting Classes, as applicable:

(a)    Unimpaired Claims – Conclusively Presumed to Accept:  Holders of Claims in Classes A1, A2, A3, A5, A8, A9, A10, A11, B1, B2, B3, C1, and C2 are Unimpaired under the Plan and, therefore, are conclusively presumed to have accepted the Plan.  As such, holders of such Claims will receive a notice, substantially in the form attached as **Exhibit 6** to the Order, in lieu of a Solicitation Package.

(b)    Impaired Claims and Interests – Deemed to Reject:  Holders of Claims and Interests in Classes A14, A16, B8, B10, C6, C8, and C10 are receiving no distribution under the Plan and, therefore, are deemed to reject the Plan and will receive a notice, substantially in the form attached as **Exhibit 7** to the Order, in lieu of a Solicitation Package.

(c)    Intercompany Claims and Interests:  The Debtors propose not to provide the Holders of certain Intercompany Claims and Interests

23

(Classes A13, A15, B7, C7, and C9) with a Solicitation Package or any other type of Notice.  Because such Holders are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively, such holders are not entitled to vote to accept or reject the Plan.

47.    The Non-Voting Status Notice will describe, among other things:  (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits thereto), the Order and all other materials in the Solicitation Package (excluding Ballots) from the Solicitation Agent and/or the Court's website via PACER; (b) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (c) notice of the Plan Objection Deadline; and (d) notice of the Confirmation Hearing Date and information related thereto.

48.    The Debtors believe that the mailing of Non-Voting Status Notices in lieu of Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d).  Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to holders of Claims and Interests in the Non-Voting Classes.

49.    The Debtors further request that they not be required to mail Solicitation Packages or other solicitation materials to:  (a) holders of Claims that have already been paid in full during these Chapter 11 Cases or (b) any party to whom the Disclosure Statement Hearing Notice was sent but was subsequently returned as undeliverable.

G.    Approval of Notices to Contract and Lease Counterparties.

50.    Article V.A. of the Plan provides that on the Effective Date, each of the Debtors' Executory Contracts and Unexpired Leases will be deemed assumed as of the Effective Date unless such agreement: (a) was previously assumed or rejected by the Debtors; (b) is identified on the Rejected Executory Contract and Unexpired Lease List included the Plan Supplement; (c) is the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending

24

on the Confirmation Date; or (d) is subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. *See* Plan at Art. V.A. Additionally, Article V.C. of the Plan provides that the Debtors will provide for notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties listed on the Assumed Executory Contracts and Unexpired Lease List. *Id.* at Art. V.C.

51.    To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and any corresponding Cure Claim) pursuant to the Plan, the Debtors will mail a notice to such parties in substantially the form attached as **Exhibit 9** and **Exhibit 10** to the Order, as appropriate, within the time periods specified in the Plan.

**H.    Approval of the Solicitation Procedures.**

52.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c). Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).

53.    Consistent with these requirements, the Debtors propose to use the voting procedures and standard assumptions in tabulating Ballots (the "Solicitation Procedures") as set forth in **Exhibit 8** to the Order. The Debtors respectfully request that the Court approve the

Solicitation Procedures attached as **Exhibit 8** to the Order, which are consistent with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a).  The deadline for parties to object to a proof of claim for voting purposes is [July 22, 2016], as referenced in Article D of the Solicitation Procedures.  The Debtors submit that they have shown good cause for the approval of the Solicitation Procedures set forth herein and, therefore, request that the Court approve the Solicitation Procedures.

### IV.    Approval of Procedures for Filing Objections to the Plan.

54.    Bankruptcy Rules 2002(b) and (d) require no less than twenty-eight days' notice to all holders of claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan.  To satisfy this requirement, the Debtors request in the Scheduling Motion that the Court establish [July 22, 2016], at 4:00 p.m. (prevailing Eastern Time) as the date by which objections to the Plan must be filed with the Court and served so as to be **actually** **received** by the appropriate notice parties (the "Plan Objection Deadline").

55.    The Debtors request that the Court direct the manner in which parties in interest may object to confirmation of the Plan.  Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court."  Fed. R. Bankr. P. 3020(b)(1).  The Confirmation Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

(a)    be in writing;

(b)    conform to the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Court;

(c)    state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

RLF1 14455847v.1

(d)       be filed with the Court (contemporaneously with a proof of service) upon the notice parties so it is **actually received** on or before the Plan Objection Deadline.

56.     The Debtors believe that the Plan Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Court, the Debtors, and other parties in interest reasonable time to consider the objections and proposed modifications prior to the Confirmation Hearing.

### Non-Substantive Modifications

57.     The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Disclosure Statement Hearing Notice, Plan, Confirmation Hearing Notice, Solicitation Procedures, Solicitation Packages, Non-Voting Status Notices, Ballots, Publication Notice, Notice of Assumption, Notice of Rejection, and any and all related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the  Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution.

### Notice

58.     The Debtors shall provide notice of this Motion on May 2, 2015 via overnight mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the

10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities

28

and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States

Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of

the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas;

and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.   The Debtors

submit that, in light of the nature of the relief requested, no other or further notice need be given.

### **Prior Request**

59.    On September 22, 2015, the Court entered an order approving similar relief in

connection with the Confirmed Plan [D.I. 6131].

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and granting such other and further relief as is appropriate under the circumstances.

Dated:  May 1, 2016
      Wilmington, Delaware

_/s/ Jason M. Madron_
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
        defranceschi@rlf.com
        madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted _pro hac vice_)
Stephen E. Hessler (admitted _pro hac vice_)
Brian E. Schartz (admitted _pro hac vice_)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
        stephen.hessler@kirkland.com
        brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted _pro hac vice_)
Marc Kieselstein, P.C. (admitted _pro hac vice_)
Chad J. Husnick (admitted _pro hac vice_)
Steven N. Serajeddini (admitted _pro hac vice_)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
        marc.kieselstein@kirkland.com
        chad.husnick@kirkland.com
        steven.serajeddini@kirkland.com

_Co-Counsel to the Debtors and Debtors in Possession_