**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date (Requested): May 18, 2016 at 2:00 p.m.**<br>**Objection Deadline (Requested): May 13, 2016 at 4:00 p.m.** |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN
ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND
ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION AND THE
APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file

this motion (this "Motion") for entry of an order, substantially in the form attached hereto as

**Exhibit A** (the "Confirmation Scheduling Order"), scheduling certain dates and deadlines and

establishing certain protocols in connection with the confirmation of the Debtors' Joint Plan of

Reorganization (the "New Plan") and approval of the Debtors' related amended disclosure

statement (the "Disclosure Statement"), each of which has been filed contemporaneously with

this Motion.  In support of this Motion, the Debtors respectfully state as follows:

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## PRELIMINARY STATEMENT

1.     After this Court confirmed the Debtors' *Sixth Amended Joint Plan of Reorganization* [D.I. 7187] (the "Confirmed Plan") and approved the settlement of litigation claims [D.I. 7243] (the "Settlement Agreement"), the Debtors worked diligently with interested parties to effectuate the Confirmed Plan.

2.     The Confirmed Plan requires timely and sufficient approval by the Public Utility Commission of Texas ("PUCT") for the transactions contemplated by the Confirmed Plan. The Plan Support Agreement ("PSA") provided that, certain parties, including the ad hoc group of TCEH first lien creditors ("TCEH First Lien Creditors") may terminate the support obligations related to the Confirmed Plan unless all PUCT approvals were obtained by April 30, 2016 ("Plan Support Outside Date"). (PSA § 11(g).)

3.     On March 24, 2016, the PUCT issued an order approving the change of control application submitted by Oncor Electric Delivery Company LLC ("Oncor"), Ovation Acquisition I, LLC and Acquisition II, LLC. The order was subject to significant conditions, including subsequent approval by the PUCT of a component of the transaction as a tariff. In April, the ad hoc group of TCEH unsecured creditors ("TCEH Unsecured Group") confirmed in writing that they would not pay $50 million from the TCEH unsecured creditors' recovery of $550 million in an Alternative Restructuring to extend the Plan Support Outside Date, as the Confirmed Plan permits it to do at its option.

4.     In light of these events, on May 1, 2016, the TCEH First Lien Creditors sent a Plan Support Termination Notice to the Debtors and Required Investor Parties, citing the insufficiency of the PUCT order and the TCEH Unsecured Group's election not to pay to extend the Plan Support Outside Date. Delivery of that Notice triggered a "Plan Support Termination

2

Event" under section 11 of the PSA.  The occurrence of a Plan Support Termination Event rendered the Confirmed Plan and Confirmation Order "null and void" under Article IX.D of the Confirmed Plan and paragraph 147 of the Confirmation Order.

5.      Critically, however, the Debtors and the creditors are not back to square one with a proposed plan of reorganization.  Through the Settlement Agreement and PSA, the Debtors have drastically narrowed the scope of issues to be resolved in confirming a plan in this Alternate Restructuring setting.  And the Debtors together with many of their creditors previously agreed to the parameters of a New Plan.

6.      Specifically, the Court's Order approving the Settlement Agreement [D.I. 7243] (the "Settlement Order") approved the settlement of all legacy litigation.  Those releases remain effective notwithstanding the failure to consummate the transactions contemplated in the Confirmed Plan. Through the PSA, the Debtors and PSA parties resolved substantially *all* contested issues involving T-Side creditors.  All major TCEH creditor groups have agreed to accept the proposed plan treatment.  Thus, virtually no controversy should remain regarding the T-Side Debtors' ability to emerge from bankruptcy.

7.      As for the E-Side Debtors, the potential remaining issues may be limited to (a) valuation issues on the E Side of the Debtors' capital structure, (b) allocation of equity in a reorganized EFH, and (c) whether the New Plan satisfies the Bankruptcy Code's requirements for a plan of reorganization.

8.      In light of the narrow scope of remaining issues, the tremendous time and expense required to continue these proceedings, and the Debtors' desire to emerge from bankruptcy as soon as possible, the Debtors believe an expedited schedule is appropriate and move this Court to approve the proposed Confirmation Scheduling Order.

9.    The proposed schedule includes an expeditious but reasonable period in which to complete Plan discovery—80 days—in keeping with the schedules imposed in many similarly large and complex bankruptcy cases.

10.    The proposed protocols bolster the proposed schedule by imposing sensible limits on the scope and conduct of discovery.  In connection with legacy claims, ad hoc discovery requests, and the prior confirmation proceedings, the Debtors have already engaged in overwhelming amounts of discovery, including production of nearly 1,000,000 documents consisting of over 6,000,000 pages, responding to hundreds of written discovery requests, and dozens of depositions.  Any remaining discovery can and should be narrowly tailored to cover the remaining issues truly relevant to confirmation of the New Plan.

11.    This schedule is also consistent with the PSA in which the parties agreed to support any proposed schedule providing for confirmation of the New Plan within 90 days of its filing.

12.    The Confirmation Scheduling Order should be approved because it provides for judicial control over these confirmation proceedings, maximizes efficiency, and provides for the speedy and efficient disposition of this case with adequate time to prepare for confirmation.[2]

## JURISDICTION

13.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C.

---

[2]    The Debtors will continue to work with their creditors and interested parties to solicit their feedback on the proposed confirmation schedule.  The Debtors will file a revised proposed confirmation schedule as necessary to address the outcome of those continuing discussions.

§ 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the

"Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this

Motion to the extent that it is later determined that the Court, absent consent of the parties,

cannot enter final orders or judgments in connection herewith consistent with Article III of the

United States Constitution.

14.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

15.     The bases for the relief requested in this Motion are sections 1125(b) and 1128(a)

of title 11 of the United States Code (the "Bankruptcy Code"); rules 2002(b) and (d), 3016(b),

3017, 3020(b), and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules"); and Local Bankruptcy Rule 3017-1(a).

## BACKGROUND

16.     On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary

petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses

and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code. The Court has entered a final order for joint administration of these

chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United

States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of

unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas

Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor

subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors'

Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of

Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH

Finance, Inc., and EECI, Inc. (the "<u>EFH Creditors' Committee</u>" and together with the TCEH

Creditors' Committee, the "Creditors' Committees") on October 27, 2014 [D.I. 2570]. Further

information regarding the Debtors' business operations and capital structure is set forth in the

declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

## I.    A PSA TERMINATION EVENT HAS VOIDED THE CONFIRMED PLAN AND CONFIRMATION ORDER.

17.    On December 1, 2015, the Debtors filed their Confirmed Plan. [D.I. 7187].  On

December 7, 2015, the Court entered orders confirming the Confirmed Plan [D.I. 7244] (the

"Confirmation Order"), and the Settlement Order.

18.    The Settlement Order provided for the release of nearly all claims against: (a) the

Debtors, (b) the TCEH First Lien Creditors, (c) the Sponsors, and (d) the Debtors' directors and

officers.  These releases remain effective notwithstanding the termination of the Plan Support

Agreement and non-consummation of the transactions contemplated by the Confirmed Plan.

Thus, having dispensed with time-consuming and expensive litigation, the Settlement Order

preserves the peace negotiated among the settling parties, even where an alternative restructuring

must be pursued.[3]

19.    Pursuant to the PSA [D.I. 6097-1], if the Confirmed Plan was not consummated

(and under certain other circumstances), the parties thereto agreed not to support an alternative

restructuring unless it incorporates the terms of Section 6.1 of the PSA.  (PSA § 6.2.)

---

[3]    Settlement Agreement Recitals ("[T]he Parties have resolved to enter into this Settlement Agreement . . ., which upon entry of the Settlement Order, shall remain binding on all Parties regardless of whether the Plan is confirmed or consummated.").  [D.I. 7243-1].

20.     The PSA also obligates the parties to support a confirmation schedule for any alternative plan that provides for a confirmation hearing of reasonable length concluding on or before 90 days after filing the alternative plan.  (PSA § 10(j).)

21.      The PSA further provides that certain parties, including The TCEH First Lien Creditors, have the right to terminate the support obligations related to the Confirmed Plan unless all PUCT approvals are obtained by Plan Support Outside Date. (PSA § 11(g).)

22.     On March 24, 2016, the Public Utility Commission of Texas ("PUCT") approved the sale to a consortium of investors of EFH's non-debtor indirect subsidiary Oncor Electric Delivery Holdings LLC ("Oncor"). The PUCT's order, however, was subject to numerous conditions, including required, additional PUCT approval treatment of leases between OEDC and Oncor AssetCo as tariffs.  In April, the TCEH Unsecured Group confirmed in writing that they would not pay $50 million from the TCEH unsecured creditors' recovery of $550 million in an Alternative Restructuring to extend the Plan Support Outside Date, as it had the right to do.

23.     In light of these events, on May 1, 2016, the TCEH First Lien Creditors sent a Plan Support Termination Notice to the Debtors and Required Investor Parties, citing the insufficiency of the PUCT order and the TCEH parties' election not the extend the Plan Support Outside Date.  Delivery of the Plan Support Termination Notice to the Debtors and Required Investment Parties triggers a "Plan Support Termination Event" under section 11 of the PSA.

24.     A Plan Support Termination Event eliminates the obligations of the PSA Parties to support "Plan A" and obligates them to pursue "Plan B" which contains certain alternative plan terms.  The occurrence of a Plan Support Termination Event renders the Confirmed Plan and Confirmation Order "null and void" under Article IX.D of the Confirmed Plan and paragraph 147 of the Confirmation Order.

## II.    THE DEBTORS' PROPOSED PLAN IS SUBSTANTIALLY SIMILAR TO THE CONFIRMED PLAN AND THE SAME IN MANY RESPECTS.

25.    With this Motion, the Debtors also filed a Plan and Disclosure Statement.    A comparison between the Confirmed Plan and the New Plan confirms that the issues, if any, for a confirmation hearing on the New Plan should be relatively narrow and manageable.    For example, regarding the allowance and treatment of claims:[4]

| Class | Confirmed Plan | New Plan |
|---|---|---|
| TCEH First Lien Secured Claims | 100% equity of Reorganized TCEH.<br><br>100% of cash on hand at TCEH subject to certain limitations.<br><br>Rights to purchase $700 million of New EFH Common Stock. | 100% equity of Reorganized TCEH.<br><br>100% of cash on hand at TCEH subject to certain limitations.<br><br>100% of the proceeds from the $700 million TCEH settlement claim. |
| General Unsecured Claims Against the TCEH Debtors Other than EFCH | Right to invest in Reorganized EFH.<br><br>Cash out election. | $550 million as provided under the Settlement Agreement in cash, subject to the reductions as set forth in the Settlement Agreement and PSA. |
| EFIH First Lien Note Claims | Paid in full in cash. | Same. |
| EFIH Second Lien Note Claims | Paid in full in cash. | [61.3]% of the Reorganized EFH Equity or paid in full in cash. |
| EFIH Unsecured Claims | Paid in full in cash. | [32.5]% of the Reorganized EFH Common Stock or paid in full in cash. |
| EFH Unsecured Claims | Paid in full in cash. | Pro rata share of the EFH Creditor Recovery Pool or paid in full in cash by Reorganized EFH. |
| TCEH Settlement Claim | Pro rata share of the EFH Creditor Recovery Pool | Same. |

26.    Likewise, the form and structure of restructuring transactions associated with the Confirmed Plan and new Plan are very similar:

---

[4]    The chart is only a summary and is qualified in all respects by the terms of the New Plan.

| Term | Confirmed Plan | New Plan |
|------|----------------|----------|
| Amended Transaction Sequencing | Contemplated simultaneous consummation. | Contemplates a staggered confirmation and consummation, allowing for the "TCEH Plan" to confirm/go effective on or before the "EFH Plan". |
| TCEH Restructuring Transactions | Contemplated a TCEH Tax Free Spin, but allows toggle to a taxable separation if spinoff requirements cannot be satisfied in the necessary time frame. | Same. |
| EFH-EFIH Restructuring Transactions | Contemplated investment from the Hunts and TCEH Unsecureds and conversion to a REIT. | Contemplates a stand-alone reorganization of the E-side based on a C corp. valuation. A REIT conversion, including one as contemplated in the current PUCT docket 45188, remains possible but plan consummation is not conditioned upon it. |
| Equity Investment | Contemplated the Oncor Transaction. | Contemplates an option for creditors to provide new money to cash out the second lien noteholders. |
| Tax Matters | Contemplated a Tax Matters Agreement. | Same. |

27.    Consistent with Section 10(j) of the PSA, in which PSA parties have agreed to support a schedule that enabled the Debtors to complete a confirmation hearing within 90 days of filing an Alternative Plan, the Debtors propose the following confirmation schedule:

a.    **Monday, May 2, 2016**, shall be the date on which Participating Parties[5] may begin serving written discovery requests and all written discovery requests must be served no later than **Monday, May 9, 2016, at 4:00 p.m. (prevailing Eastern Time)**.

b.    **Thursday, June 30, 2016**, shall be the date on which all fact discovery shall be complete.

c.    **Wednesday July 20, 2016**, shall be the date on which all expert discovery shall be complete.

d.    **Friday, July 22, 2016**, shall be the deadline by which any party, including the Participating Parties, must file any objections to the New Plan.

---

[5]    As defined in Paragraph 2 of the Confirmation Scheduling Order.

e. **Friday, July 29, 2016**, shall be the deadline by which the Debtors must file their reply to all timely objections to the New Plan.

f. **Monday, August 1, 2016**, shall be the date of the start of the hearing to approve the New Plan (the "<u>Confirmation Hearing</u>").

## RELIEF REQUESTED

28.  By this Motion, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as **<u>Exhibit A</u>**, (a) scheduling dates and deadlines in connection with the approval of the Disclosure Statement (the "<u>Disclosure Statement Proceedings</u>") and the confirmation of the New Plan (the "<u>Confirmation Proceedings</u>" and, together with the Disclosure Statement Proceedings, the "<u>Proceedings</u>") and (b) establishing certain protocols in connection with the Proceedings (the "<u>Protocols</u>").[6]

## BASIS FOR RELIEF REQUESTED

**III.   THE PROPOSED SCHEDULE AND DISCOVERY PROTOCOL ARE REASONABLE.**

**A.    The proposed schedule provides ample time for discovery.**

1. *The proposed schedule complies with all applicable rules.*

29.  Local Bankruptcy Rule 3017-1 requires a plan proponent to obtain from the Court hearing and objection dates for the approval of the Disclosure Statement and to provide notice of those dates to parties in interest in accordance with Bankruptcy Rules 3017 and 2002.[7]  In addition, Bankruptcy Rules 3017(c) and 3020(b)(1) provide for the Court to fix a time for the hearing on the confirmation of a plan of reorganization and the time by which objections to that

---

[6]  For the avoidance of doubt, the Court shall have the ability to adjust the schedule of the Proceedings if necessary.

[7]  Bankr. D. Del. R. 3017-1(a).

plan are to be filed.[8]   The Debtors' proposed schedule not only satisfies those requirements, it

provides a comprehensive structure for pre-hearing events that is designed to support a

Confirmation Hearing beginning in August 2016.  For example:

- The Bankruptcy Rules and Local Bankruptcy Rules require the deadline for parties to object to the Disclosure Statement to be set at least 28 days after the Disclosure Statement is served.[9]   The proposed schedule sets the objection deadline for 30 days after the Debtors estimate service of the notice of filing the Disclosure Statement to be completed;

- The Local Bankruptcy Rules require the hearing regarding approval of the Disclosure Statement to take place at least 35 days after the Disclosure Statement is served.[10]   The proposed schedule sets the hearing to approve the Disclosure Statement (the "Disclosure Statement Hearing") for no earlier than 45 days after the Debtors estimate service of notice of filing the Disclosure Statement to be completed;[11]

- The Bankruptcy Rules require the deadline for parties to object to the New Plan to be set at least 28 days after the New Plan is served.[12]   The proposed schedule sets the objection deadline for 82 days after the Debtors estimate service of the New Plan; and

- The Bankruptcy Rules require the hearing regarding confirmation of the New Plan to take place at least 28 days after the New Plan is served.[13]   The proposed schedule sets the Confirmation Hearing for 92 days after the Debtors estimate service of the New Plan.[14]

---

[8]   Fed. R. Bankr. P. 3017(c); Fed. R. Bankr. P. 3020(b)(1).

[9]   Fed. R. Bankr. P. 2002(b); Fed. R. Bankr. P. 3017(a); Bankr. D. Del. R. 3017-1(a).

[10]   Bankr. D. Del. R. 3017-1(a).  This Local Bankruptcy Rule extends the notice period required by the Bankruptcy Rules.  *See* Fed. R. Bankr. P. 2002(b) (requiring at least 28 days' notice for the Disclosure Statement hearing); Fed. R. Bankr. P. 3017(a) (same).

[11]   The Debtors estimate service of the notice of filing the Disclosure Statement will be completed by May 1, 2016. The proposed schedule sets the Disclosure Statement objection deadline for June 6, 2016, and the start of the Disclosure Statement hearing for no earlier than June 15, 2016.

[12]   Fed. R. Bankr. P. 2002(b); Fed. R. Bankr. P. 3017(a).

[13]   *Id.*

[14]   The Debtors estimate service of the notice soliciting votes on the New Plan will commence no earlier than July 11, 2016 and will be completed by July 22, 2016.  The proposed schedule sets the objection deadline for July 22, 2016 and the start of the Confirmation Hearing for August 1, 2016.

2.      *The proposed schedule is consistent with Bankruptcy Rules and the schedule previously approved by the Court for the Confirmed Plan.*

30.     The proposed schedule is not only consistent with the Bankruptcy Rules and Local Bankruptcy Rules, it is similar to the one previously approved by the Court and successfully executed by the parties in connection with confirmation of the Debtors' Confirmed Plan.[15]

31.     Parties would have eight days from filing of the New Plan and related Disclosure Statement to serve written Plan discovery.  That time provides ample opportunity for all stakeholders to prepare their discovery requests.  First, as discussed more fully below, given the extensive discovery that has already taken place, the issues on which discovery is still required are substantially narrower than those relating to Debtors' prior proposed plans.  Second, these cases have been pending for nearly two years and many of the stakeholders have been engaged in plan negotiations for even longer than that.  Disputed issues have long been known to all parties, who consequently have had ample time to consider and draft appropriate discovery requests.

**B.      A scheduling order limiting discovery is necessary and appropriate.**

32.     Rule 16(b) of the Federal Rules of Civil Procedure (the "Rules") requires entry of a scheduling order.  Rule 16 applies to adversary proceedings in bankruptcy cases.[16]  Although confirmation of the New Plan is not an adversary proceeding, many of the principles underlying Rule 16 are equally applicable to contested confirmation proceedings.  Specifically, the "rule's purpose is to provide for the judicial control over a case, streamline proceedings, maximize the efficiency of the court system, and actively manage the timetable of case preparation to expedite

---

[15]   *See* D.I. 5771.

[16]   Fed. R. Bankr. P. 7016.

the speedy and efficient disposition of cases."[17]  That purpose is as relevant here as it is in any adversary proceeding.

33.    Rule 16(b)(3) provides that a "scheduling order ***must*** limit the time to . . . complete discovery."[18]  As the Manual for Complex Litigation ("MCL")—a useful resource in cases like these—provides, "[t]he discovery plan should include a schedule for the completion of specified discovery, affording a basis for judicial monitoring of progress. . . . Time limits impose valuable discipline on attorneys, forcing them to be selective and helping to move the case expeditiously."[19]

34.    In addition to time limits, other examples of discovery limits include "limits on quantity," such as "limits on the number and length of depositions, on the number of interrogatories, and on the volume of requests for production."[20]  The Debtors' Protocols put this advice into practice by instituting limits on the number and length of depositions and by eliminating interrogatories altogether.

35.    Among the "Other Practices to Save Time and Expense" propounded by the MCL are "[j]oint discovery requests and responses." MCL § 11.423. "In multiparty cases with no designated lead counsel, judges sometimes require parties with similar positions to submit a combined set of [discovery requests]."[21]  Accordingly, the Debtors' Protocols require coordination of discovery requests, with the Creditors' Committees acting as facilitators and intermediaries between the Debtors and most other parties participating in Plan discovery.

---

[17]    *Paoli v. Stetser*, No. 12-66-GMS-CJB, 2013 WL 2154393, at *2 (D. Del. May 6, 2013) (internal quotation marks and citation omitted).

[18]    Fed. R. Civ. P. 16(b)(3)(A) (emphasis added).

[19]    MCL (Fourth) § 11.422 (2004).

[20]    MCL § 11.422.

[21]    *Id.*

36.     These limitations are especially appropriate in light of the fact that the scope of discovery needed leading up to the Confirmation Hearing will be substantially narrower than the scope of discovery required leading up to confirmation of the Confirmed Plan.  ***First***, because the Settlement Agreement's releases remain in effect notwithstanding the failure of the transactions contemplated in the Confirmed Plan, ***all*** legacy claims have been resolved and will not be at issue at the Confirmation Hearing.  Moreover, the New Plan contemplates the same tax-free spinoff of the T-Side contemplated in the Confirmed Plan.  Thus, virtually no controversy remains regarding T-Side emergence.  ***Second***, the parties have already obtained a staggering amount of discovery related to legacy claims and confirmation of the Confirmed Plan.  Indeed, the Debtors already produced nearly 1,000,000 documents containing over 6,000,000 pages during legacy discovery, ad hoc discovery, and confirmation discovery, and the parties have conducted dozens of depositions, and served hundreds of written discovery requests.  ***Third***, the only issues requiring discovery prior to the Confirmation Hearing are (a) E-Side valuation, (b) allocation of equity in reorganized EFH, and (c) satisfaction of the Bankruptcy Code's requirements for a confirmable plan.

37.     In short, the Debtors' proposed schedule has all the salutary characteristics outlined in Rule 16 and the MCL, and best accounts for the narrow scope of remaining issues while allowing the Court and the Parties to control their limited time and resources, facilitating the Debtors' expeditious emergence from bankruptcy, and affording all stakeholders sufficient opportunity to investigate and be heard on matters truly at issue at the Confirmation Hearing.

**C.     The Court should allow for the contingency of separate Confirmation Hearings for the E-Side and T-Side Debtors.**

38.     The Debtors seek to confirm and consummate the New Plan as to all Debtors in a single Confirmation Hearing.  However, as there are virtually no remaining matters to be tried

regarding the T-Side Debtors' ability to emerge, and given that the bulk of discovery and the issues to be tried at the Confirmation Hearing may focus on a discrete set of matters solely affecting E-Side Debtors, the Debtors believe it may become more practicable and efficient for T-Side Debtors to pursue a path separate from the E-Side Debtors to confirm and consummate the New Plan as to aspects affecting only T-Side Debtors.

39.     Accordingly, Debtors request that this Court account for this contingency in the Confirmation Scheduling Order.

## NOTICE

40.     The Debtors shall provide notice of this Motion on May 2, 2016 via overnight delivery to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and

counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## CERTIFICATION OF COUNSEL PURSUANT TO L.R. 7026-1(c)

41.    Pursuant to Local Rule of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware 7026-1(c), counsel for the Debtors have met and conferred with counsel for the various creditor constituents, and have been unable to reach agreement on the matters set forth in the instant Motion and the form of the Discovery Protocol attached hereto as Exhibit 2, and therefore seek relief from this Court.

WHEREFORE, the Debtors respectfully request that the Court enter the Confirmation Scheduling Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

*[Remainder of page intentionally left blank]*

Dated: May 1, 2016
    Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession