1  UNITED STATES BANKRUPTCY COURT

2  DISTRICT OF DELAWARE

3

4

5  In re:                          :

                                   :    Chapter 11

6                                  :

   ENERGY FUTURE                   :

7  HOLDINGS CORP.                  :    Case No. 14-10979-CSS

                                   :

8        Debtors.                  :    (Jointly Administration

   _____       :    Requested)

9

10

11

12                          United States Bankruptcy Court

13                          824 North Market Street

14                          Wilmington, Delaware

15                          May 10, 2016

16                          3:02 p.m. – 3:28 p.m.

17

18

19

20

21  B E F O R E :

22  HON CHRISTOPHER S. SONTCHI

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO OPERATOR:  LESLIE MURIN

1    HEARING re Status Conference

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  KIRKLAND & ELLIS

4      Attorneys for the Debtor

5

6  BY:  MARK MCKANE (TELEPHONICALLY)

7

8  BAKER BOTTS LLP

9      Attorneys for Ovation Acquisition I & II, L.L.C.

10

11  BY:  VAN BECKWITH (TELEPHONICALLY)

12      TIM O'BRIEN (TELEPHONICALLY)

13

14  WHITE & CASE

15      Attorney for the Ad Hoc Committee of TECH Unsecured

16      Note Holders

17

18  BY:  GREG STARNER (TELEPHONICALLY)

19

20  SKADDEN, ARPS, SLATE, MEAGHER & FLOM

21      Attorney for Defendants, Texas Transmission

22

23  BY:  CARL TULLSON

24

25

1    ALSO PRESENT TELEPHONICALLY:

2    ARLENE R. ALVES

3    ASHLEY F. BARTRAM

4    WARD BENSON

5    PEG A. BRICKLEY

6    MATTHEW BROD

7    CHRISTOPHER L. CARTER

8    MARK A. CODY

9    AMANDA D. DARWIN

10   DANIEL DEFRANCESCHI

11   STACY DORÉ

12   JUSTIN K. EDELSON

13   CATHERINE EISENHUT

14   MARK A. FINK

15   DAVID M. FOURNIER

16   SETH GOLDMAN

17   WARREN HASKEL

18   MARK F. HEBBELN

19   HAROLD KAPLAN

20   DAVID M. KLAUDER

21   VINCENT LAZAR

22   RAYMOND LEMISCH

23   DANIEL A. LOWENTHAL

24   JASON M. MADRON

25   HAL F. MORRIS

1   TINA MOSS

2   DAVID P. PRIMACK

3   MATTHEW M. ROOSE

4   JASON B. SANJANA

5   ANNA TERTERYAN

6   THOMAS WALPER

7   CHRISTOPHER A. WARD

8   ANDY WRIGHT

9   JOSHUA H. APFEL

10  RYAN M. BARTLEY

11  MICHAEL D. DEBAECKE

12  JAMIE L. EDMONSON

13  GIANCLAUDIO FINIZIO

14  BRIAN GLUECKSTEIN

15  THOMAS LAURIA

16  CAROL W. LEVY

17  JASON LIBERI

18  JONATHAN D. MARSHALL

19  MARK A. MCDERMOTT

20  R. STEPHEN MCNEILL

21  GEORGE N. PANAGAKIS

22  RICHARD PEDONE

23  RACHAEL RINGER

24  JEFFREY S. SABIN

25  JEFFREY M. SCHLERF

1   NOAH M. SCHOTTENSTEIN

2   TAMARA VAN HEEL

3   GEORGE ZIMMERMAN

4   JAMES W. BROWN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                   P R O C E E D I N G S

2            THE COURT:  Good afternoon.  This is Judge

3    Sontchi.  While I know that people are highly interested in

4    the Energy Futures case and there have been developments, it

5    boggles my mind why there are four pages' worth of people

6    attending this telephonic hearing that was called in

7    connection with the adversary proceeding where there are

8    three parties.

9            I would say that I don't expect to see any estate

10   professional time appearing on any fee applications other

11   than for the Debtor.  I have no idea why anyone else would

12   be on the phone.  So, at this point I will turn it over to

13   the Debtor.

14           The reason I asked for this call was to discuss

15   the status of the pending summary judgment motions as how

16   they may be affected by the developments of April 30th.  So

17   let me turn it over to the Debtor.

18           MR. MCKANE:  Thank you, Your Honor.  It's Mark

19   McKane of Kirkland & Ellis on behalf of the Debtors.  And

20   with me is Warren Haskel.  Your Honor, do you want to get

21   appearances from the parties to the TTI matter or should I

22   just proceed?

23           THE COURT:  That'd be helpful.  So let me hear

24   from the Debtor TTI and Ovation, whoever is appearing.

25           MR. TULLSON:  Your Honor, this is Carl Tullson

1    with Skadden Arps appearing on behalf of the defendant,

2    Texas Transmission Investments.  I'm here with my colleague,

3    George Panagakis.

4              MR. BECKWITH:  Your Honor, this is Van Beckwith

5    and Tom O'Brien of Baker Botts.  We're here on behalf of

6    Ovation II.  Ovation I is now in dissolution as a result of

7    the termination of the merger agreement.  We are the counsel

8    of record for that as well, but it's appropriate to note

9    that for Your Honor.

10             THE COURT:  Okay.

11             MR. STORNOM:  And this is Greg Stornom of White &

12   Case, also appearing for the Ovation matter -- Ovation

13   party, I should say.  And as noted, Ovation I is in

14   dissolution at this moment.

15             THE COURT:  Okay, Mr. McKane?

16             MR. MCKANE:  Thank you, Your Honor.  Your Honor,

17   as it relates to the status of the TTI drag litigation, Your

18   Honor, we believe that remains a live dispute.  And we

19   recognize that the Court rendered its conclusion on the

20   pending motions on April 5th, when it enabled the party to

21   cancel the trial schedule for the following week, and

22   recognize that the reasoning would be to follow.

23             So, there's no doubt (indiscernible) ruling

24   (indiscernible) the event of April 30th and the dispute was

25   absolutely squarely engaged at that point in time.  Since

1    then, Your Honor, obviously with the termination notice that

2    was sent by the first lien group on the TCA side and,

3    therefore, the Debtor's decision to file its new plan -- we

4    recognize that you had questions about whether there's a

5    change in circumstances.  But the dispute between the

6    parties remain live.

7            TGI's position has not waivered, that EFH's drag

8    rights and its IPO conversion obligations cannot be

9    triggered by a verbal transaction.  And if you look at the

10   crux of what this view was at the summary judgment stage, it

11   was whether a transaction above the Encore Holdings level

12   could trigger those drag rights and result in change of

13   control, and whether that then -- not what would happen in

14   the change of control circumstance, but whether that type of

15   transaction would have those events.

16           And, Your Honor, the plan that is currently on

17   file enables the Debtor to pursue those same transactions.

18   And if you look at Article 4 of the implementation of that

19   plan, it lays out the proposed restructuring transactions in

20   Section B that are in parallel with now the voided plan.

21   Specifically, Article 4-B5, the contemplated potential

22   rights offering.  And B6, contemplating the idea of the

23   conversion plan.  And B9, the minority buyout.  And B10, the

24   potential merger where (indiscernible) EFH mergers with a

25   new EFH.

1            And, Your Honor, beyond just the filing of the

2    plan, there have been third parties who have taken

3    definitive action to move forward with a merger or drag

4    under the new plan.  OV2, who's here today, has made clear

5    both to EFH and the Public Utility Commission of Texas that

6    it wants to proceed with a merger and a (indiscernible)

7    changing control application remains pending with the

8    (indiscernible).  Specifically with a filing on that docket

9    and a hearing on that docket, OV2 advocated for a

10   continuation of those proceedings and the (indiscernible)

11   has not made a definitive ruling yet on it but it has

12   continued forward along that path.

13           Moreover, Your Honor, since the filing of our

14   plan, we, the Debtors, have received at least a one-third

15   party indication of interest regarding a transaction

16   consistent with a plan of reorganization that put that

17   issue, again, the drag rights and the potential for an

18   initial public offering.

19           Your Honor, TTI's refusal has always been that a

20   verbal transaction, something above Encore Holdings, could

21   not trigger the drag right and the resulting impact of a

22   change in control would not alter their rights.  When we

23   pursued the faction initially as a breach of contract

24   action, when OV2 came -- the Ovation party came in as

25   interveners and specifically sought a declaratory judgment.

1   You accepted their role as plaintiff interveners and then

2   both of the plaintiffs, the Debtors and the plaintiff

3   interveners, moved for summary judgment.  They moved on all

4   counts -- the breach of contract counts and the declaratory

5   judgment counts.

6           There is no doubt the declaratory judgment issue

7   remains active and alive between the plaintiffs and the

8   defendants.  And specifically as it relates to a declaratory

9   judgment issue -- we satisfied standing and (indiscernible)

10  requirements when there was a substantial controversy

11  between the party that had (indiscernible) legal interest

12  with submission immediacy and reality to warrant the

13  issuance of a new declaratory judgment.  And that's the case

14  law, Your Honor, that I know you know well.

15          To do that, we had to identify three elements:

16  One, is there a (indiscernible) between the parties?  Two,

17  are the rights and obligations such that they could be

18  conclusively determined by declaratory judgment?  And will

19  that judgment be helpful and useful?

20          Your Honor, if you look at this case, there is no

21  doubt that a ruling on the declaratory judgment issues

22  satisfies all of those elements.  And for those reasons --

23  excuse me, Your Honor...  Let me be specific.  There's no

24  dispute, I believe, between the party that there's adversity

25  between EFH and OV2 on the ability to drag (indiscernible)

1    applications of a change of control on one hand, and TTI on

2    the other.  A declaratory judgment on whether a transaction

3    above the Encore Holdings level such that there be a change

4    in control of EFH would constitute a change of control under

5    the IRA and that would conclusively determine the rights and

6    obligations of the party.  That at a minimum is what we

7    continue to seek.

8         And a declaratory judgment on the change of

9    control definition and the party's other rights and

10   obligations under the IRA undeniably would be useful in the

11   development of this existence plan, which currently

12   contemplated potential drag, the potential new equity build

13   on the (indiscernible) change of control application, and

14   there be a change of control at the EFH level and any

15   (indiscernible).

16        And, Your Honor, even during the stalking horse

17   process there had been potential bidders that had been

18   acquired by the IRA drag right at the top of their diligence

19   list.  That happened when we had the earlier plan on file,

20   that happened even before we put a plan on file, and it

21   happened again -- that we have an inquiry as to the ability

22   to drag TTI out.  Getting a definitive ruling that we can

23   get through a declaratory interpretation of this agreement

24   at a time when we have diversity absolutely is useful to

25   enable the Debtors to move forward as planned and continue

1    to back my value for the estates.  And it is for those

2    reasons that we add that Your Honor issue a ruling

3    consistent with the conclusions that you reached on April

4    5th, and aid the party in moving the restructuring along.

5    Thank you, Your Honor.

6            THE COURT:  You're welcome, Mr. McKane.  Now, let

7    me just ask you a couple questions, if I could.  What I'm

8    struggling with here is, as I sit here today, there is no

9    pending transaction.  And what you're really saying, I

10   think, now is you just want a general ruling that any

11   transaction works.  But the reality is that the transaction

12   in front of me that was briefed on summary judgment -- the

13   briefing was very specific to the actual provisions in the

14   merger agreement that the Debtors were a party to.

15           That's particularly on point in connection with

16   the change of control provisions, which were very much

17   focused on a merger agreement and what's in various deal

18   documents.  And those documents don't exist anymore.  You

19   have no transaction.

20           So, I'm struggling to understand how there's a

21   disconnect -- or I think there's a disconnect between what

22   was originally in front of me, which was a very specific

23   deal with actual merger documents, the language of which

24   directly affect whether or not the drag can be exercised,

25   and of this general idea that any kind of vertical

1    transaction, you need to know now whether a drag would work

2    -- when the details of the transaction are really going to

3    be what determine whether the drag is appropriate.

4              MR. MCKANE:  Your Honor, it's undeniable.  We have

5    terminated the merger agreement.  And we acknowledge that.

6    I think when you look at where we are struggling with TTI is

7    the length of their objection was broader than just the

8    specific merger agreement as filed.  And the position they

9    really took with us was that a transaction above Encore

10   Holdings could not work.  And while that specific merger

11   agreement is no longer viable, the plan that we put forward,

12   the new plan, still contemplates a vertical transaction, one

13   (indiscernible) for the same tax reasons that we've

14   discussed throughout the case.

15             And we have a BCT application pending that does

16   (indiscernible) the same transaction, and the same

17   transaction that was before you remains an option.  The OV2

18   still remains an option as a potential party for putting

19   that structure together and it's actively working, frankly,

20   with other creditors to try to do that.

21             And so ultimately, you know, the dispute in its

22   broadest sense remains viable and remains (indiscernible).

23   The (indiscernible) for a declaration judgment

24   (indiscernible).  It has evolved away from the specific

25   merger agreement because that specific agreement was

1    terminated, but the broader dispute remains.  And,

2    ultimately, Your Honor, I think one of the Debtor's broadest

3    concerns is that going back to square one with TTI when we

4    know that the core dispute remains, it's ultimately I think

5    the worst outcome for the Debtors, and that's something

6    we're very concerned about.

7              THE COURT:  Now, my memory is that the Debtor

8    actually didn't ask for a declaratory judgment; it filed a

9    breach of contract action, and it was Ovation that filed the

10   request for a declaratory judgment.  But Ovation I is in

11   dissolution.  Is Ovation II a party, an intervener?

12             MR. MCKANE:  Your Honor, I won't go into greater

13   detail on that, but OV2 and OV1 are both intervener parties

14   and their declaratory judgment action remains.  Your Honor,

15   I would note that there is New York support for the notion

16   that in the (indiscernible) of the relief that we sought for

17   our breach of contract claim we did seek the (indiscernible)

18   breadth that when a declaratory judgment relief is sought

19   that it's (indiscernible) substantive claims of pleadings, a

20   party can request relief without pleading a (indiscernible)

21   claim for declaratory judgment.

22             In other words, what we sought for in our breach

23   of contract claim was (indiscernible) broad.  We needed as

24   part of that evaluation, Your Honor to interpret the

25   contract.  And, therefore, we were able to see the

1    (indiscernible) relief -- the declaration on the contract --

2    it's hard on a breach of contract claim without separately

3    pleading a declaratory judgment count.  Now, I think that's

4    (indiscernible) because OV2 is still a party and they're

5    here, but I wanted to flag that legal nuance because,

6    frankly, it was something that I wasn't aware of before we

7    looked into the issue after April 30th.

8                THE COURT:  Thank you.  Let me hear from Ovation.

9                MR. BECWKITH:  Your Honor, this is Van Beckwith

10   and Tom (indiscernible) on behalf of OV2.  And, Your Honor,

11   Mr. McKane is right, OV1 is in dissolution as a result of

12   the termination of the merger agreement; but OV2 is alive

13   and well.  And OV2, consistent with the amended claim that

14   was filed, does intend and is exploring all options

15   consistent with that amended plan to continue in its efforts

16   -- that amended plan consistently references a REIT.

17                And consistent with all of that, OV2 has filed a

18   motion for rehearing with the Texas Public Utilities

19   Commission.  They took that up last week and they have reset

20   that again for May 18th for their next hearing date.  OV2

21   will appear there and is hopeful that there will be greater

22   clarity coming from the Texas Public Utilities Commission

23   such that OV2 can continue its efforts with respect to the

24   bankruptcy before Your Honor.

25                And so, in that way, OV2 has filed and did

1    intervene.  Your Honor allowed us to intervene and OV2 did

2    file a declaratory judgment that asked for construction of

3    the contract, which as I understand, is consistent with the

4    case law that the Court does still have the power to

5    construe that contract.

6              THE COURT:  Construe a contract that's no longer a

7    valid contract?

8              MR. BECKWITH:  Well, Your Honor, the underlying

9    contract in many ways relates to the investor rights

10   agreement...

11             THE COURT:  Oh, I see.

12             MR. BECKWITH:  ...between the parties.  And so in

13   that way the Court still has the power to construe that

14   contract, particularly given the Court's ability in the case

15   before it to try to deal with the Debtor's claim.

16             THE COURT:  I can see you're not a party to the

17   investor rights agreement, and the reason you had standing

18   is because you were party to the merger agreement.  And the

19   merger agreement doesn't exist anymore.

20             MR. BECKWITH:  Your Honor, again, Van Beckwith.  I

21   take your point and recognize that this procedurally is not

22   perfect under the case law, but the case law does seem to

23   describe broad powers, of course, with respect to

24   declaratory judgment relief.

25             THE COURT:  When did you say...?  I apologize, I

1    lost track of the dates -- about how you're proceeding with,

2    or what you've asked from the Public Utility Commission.

3              MR. BECKWITH:  Sure.  Again, Van Beckwith.  Your

4    Honor, on behalf of OV2, the Public Utility Commission -- a

5    proper and timely motion for rehearing was filed.  It

6    actually was filed before the termination of the merger

7    agreement.  The Public Utility Commission held a hearing

8    last week and then at the conclusion of that hearing, reset

9    its consideration of that motion for rehearing for May 18,

10   2016, which, if my calendar is right, I think it's next

11   Thursday.

12             THE COURT:  Okay.  All right, thank you.  Anything

13   else, Mr. Beckwith?

14             MR. BECKWITH:  No, Your Honor.

15             THE COURT:  Okay, thank you.  TTI?

16             MR. TULLSON:  Your Honor, this is Carl Tullson

17   again with Skadden Arps, appearing on behalf of TTI.  Your

18   Honor, I would like to note at the outset that I understand

19   the Debtor's desire for an advisory ruling on what a

20   similarly structured transaction may look like under the

21   revised plan, but just to (indiscernible) -- last October,

22   plaintiff DFH and interveners OV1 and OV 2 commenced this

23   adversary proceeding to compel TTI to do two things:  First,

24   to sell the Encore LLC units to OV1, the offer under the

25   required sale notice.  And, two, to cooperate with the so-

1    called ICO conversion plan, which I will note was initially

2    attached as Exhibit B to the audit (indiscernible) merger

3    agreement -- all in connection with OB1's proposed

4    acquisition of the reorganized EFH.

5              As Your Honor no doubt recalls, at the March 21st

6    hearing on the party's (indiscernible) motion for summary

7    judgment as well as TTI's motion for a determination that

8    this is not a court proceeding, counsel for both plaintiffs

9    maintained that OV1 was on the verge of obtaining necessary

10   TCU approval, and that the parties were moving toward

11   switching (indiscernible).

12             On April 5th, Your Honor informed the party of

13   what your rulings will be on the party's respective motion.

14   However, we do not believe that this makes a difference as a

15   legal matter with respect to constitutional (indiscernible)

16   but I would note that the Court has not issued an opinion or

17   order or entered a final judgment.

18             Subsequent of that, leave no room for doubt, there

19   is no longer a live, (indiscernible) case or controversy

20   between the parties.  Other than focusing on the April 30th

21   date, Your Honor, I would focus on May 2nd.  May 2nd is the

22   date on which EFH filed an (indiscernible) the merger had

23   been terminated.  That same day, OV1, the entity that

24   submitted the offer letter that allegedly triggered the drag

25   on the investor rights agreement, notified the PUC that the

1    termination of the merger agreement, quote, "results in the

2    dissolution of OV1."

3              Finally, Your Honor, on May 3rd, OV1 withdrew its

4    (indiscernible) restriction statement.  As a result of the

5    termination of the merger agreement, the dissolution of OV1,

6    and the withdrawal of OV1's Format 11, the (indiscernible)

7    had terminated and abandoned the transactions in which they

8    previously thought to compel TTI to participate in and

9    cooperate with.  Accordingly, as a constitutional matter,

10   there is no longer a live controversy between the parties on

11   either TTI's refusal to sell its Encore LLC units to OV1 on

12   the terms set forth in the required sale notice; or the

13   alleged failure to cooperate with the (indiscernible) IPO

14   conversion.

15             TTI therefore believes that this adversary

16   proceeding should be dismissed as moot. Nevertheless, if the

17   Court determines that the proceeding is not moot, TTI would

18   respectfully request that the Court release its decision

19   order promptly so we could proceed with an appeal.

20             Unless the Court has questions on this point, I

21   have nothing further, Your Honor.

22             MR. MCKANE:  Your Honor, it's Mark McKane.  May I

23   be heard just briefly?

24             THE COURT:  Yes.

25             MR. MCKANE:  Your Honor, you know, ultimately what

1   TTI fails to appreciate is that this is not a static or dead

2   situation where we are not moving forward with a plan of

3   reorganization that raises the same issues.  And ultimately,

4   Your Honor, all I've heard from what they articulated is a

5   failure to appreciate that we are moving forward with a new

6   plan.

7            And so at most, to the extent that Your Honor has

8   concerns about the fact that, yes, there has been a merger

9   agreement that was terminated and we're moving forward with

10  an alternative plan that raises the same issues, it's a

11  timing issue.  And to the extent that Your Honor's concerned

12  that you do not have sufficient granularity as to the form

13  of that transaction, ultimately, Your Honor, while the

14  underlying dispute remains, it may be that the best outcome

15  would be to state a proceeding until such time as we have

16  further focused on the form of a revised plan of

17  reorganization, and then we move forward then.

18           The worst outcome possible would be for this issue

19  to be dismissed and for us to have lost the benefit of all

20  of the litigation work that had gone forward to date,

21  because they really have crystallized the issue and focused

22  the issue between the parties.  And so ultimately, Your

23  Honor, we raise that as an alternative means of addressing

24  the situation.

25           THE COURT:  Okay.  Well, it seems...  What I'm

1   going to ask for is the Debtors, TTI, and I guess Ovation

2   II, OV2, to submit short letter briefs on this issue.  Let

3   me just observe that as I sit here today, it sounds to me

4   that at the very least the cause motions for summary

5   judgment are mooted by the collapse...well, by the

6   termination of the merger agreement.  And the underlying

7   bases for those summary judgment motions are really based on

8   the IRA certainly, but also very much based on the specifics

9   of the merger agreement; the merger agreement that no longer

10  exists.

11          And as I pointed out to Mr. Beckwith and he

12  agreed, of course, OV2 isn't a party to the IRA.  So, that

13  leave us with the Debtors and TTI possibly with the

14  controversy that's not moot over what the IRA says about a

15  vertical transaction, as Mr. McKane put it.  Even one that

16  is not yet crystallized.

17          So, I'm not really sure how I come out on that,

18  and I'm open to argument on the motions for summary

19  judgment.  But as I sit here, my preliminary thoughts are at

20  the very least the motions are moot.  The case itself may

21  survive and it may make sense to stay it pending further

22  developments and allow it to go forward once something has

23  actually crystallized.  I don't know.

24          But I think the way to go -- it's not sufficiently

25  clear to me as I sit here today on the telephone, and I

1    don't want to make a decision that is off the cuff that

2    involves such possibly serious problems, including problems

3    of timing.  So, I'd ask that the parties to the adversary

4    proceeding submit letter briefs.  And I'll let you agree on

5    a schedule.  I think the arguments are sufficiently

6    crystallized that all I need is simultaneous one-time

7    briefing on the issue.  And if you want to set a date that

8    gives you time to prepare something in a careful manner and

9    agree amongst yourselves, that probably makes the most

10   sense.  I don't need to sit here and set a date.

11           This shouldn't take two weeks but two days is

12   probably not enough.  And like all things in life, somewhere

13   in the middle is probably the best place.  But I think it

14   makes some sense to see what the parties have to say in

15   writing.  But those are my preliminary thoughts, for what

16   they're worth, and maybe they can guide the submissions.

17   Any questions about that?

18           MR. TULLSON: (indiscernible) TTI, Your Honor.

19           MR. MCKANE:  Not from the Debtors, Your Honor.

20   We'll work with the parties to get a date set.

21           THE COURT:  All right.  Once you figure that out,

22   just let us know so we can look for it.

23           MR. MCKANE:  Okay, Your Honor.

24           THE COURT:  All right, very good.

25           MR. MCKANE:  Thank you, Your Honor.

1          THE COURT:  Thank you very much.  Everyone have a

2    good day.  We're adjourned.

3          MR. TULLSON:  Thank you, Your Honor.

4                              *  *  *  *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1             C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5

6    Sonya               Digitally signed by Sonya Ledanski
                         Hyde
                         DN: cn=Sonya Ledanski Hyde, o, ou,
     Ledanski Hyde       email=digital1@veritext.com, c=US
7                        Date: 2016.05.11 16:18:27 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 11, 2016