## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re<br><br>Energy Future Holdings Corp., *et al.,*[1]<br><br>                    Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 8358, 8362, and 8380** |

### OBJECTION OF FENICLE AND FAHY TO
### MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
### FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING
### DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN
### CONNECTION WITH THE CONFIRMATION OF DEBTORS' JOINT PLAN OF
### REORGANIZATION AND THE APPROVAL OF DEBTORS' DISCLOSURE
### STATEMENT

Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy (respectively, "Fenicle" and "Fahy"), both members of the EFH Official Committee of Unsecured Creditors ("Committee")[2] hereby file this objection (the "Objection") to the motion (the "Motion") of the above captioned debtor and debtors-in-possession (collectively, the "Debtors") for entry of an order scheduling certain dates and deadlines and establishing certain protocols ( the "Protocols") in connection with the confirmation of the Debtors' new plan of reorganization (the "New Plan") and approval of the Debtors' related amended disclosure statement (the "Disclosure Statement"). In support of its Objection, Fenicle and Fahy respectfully state as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on a final basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] In this Objection, Fenicle and Fahy are acting in their own respective individual capacity and not as members of the Committee.

1.      During the two years of these cases, over the repeated protestations and objections of Fenicle and Fahy, the Debtors have adamantly pursued strategies for a rapid emergence from chapter 11 in a tax-free spin that disengaged the two sides of their capital structure with the support of certain preferred signatories to a prepetition RSA. At its' core, Debtors' strategy was predicated on having this Court compel holders of more than $8 billion in T-side unsecured claims to accept near zero recoveries, to agree to the release of valuable inter-debtor causes of action for no consideration and to permit the supporting creditors to recover billions of dollars in excess of their legal entitlements. Ultimately, those efforts, which were stymied by the Public Utility Commission of Texas ("PUCT")[3], which decided that the transactions contemplated by the Confirmed Plan, carried risks for Oncor that require concessions to compensate electricity purchasers.

2.      Now, the Debtors proposed the New Plan, which will spin off the Debtors' power plants and retail electricity business to first lien creditors of EFH in a tax-free transaction. The first lien creditors would also receive 100% of the proceeds from a $700 million unsecured settlement claim against EFH. Junior creditors of EFH would receive a $550 million cash payment (subject to reduction under certain circumstances). However, unlike the Original Plan, the New Plan allows the T-side confirmation proceedings to advance independently of the E-side confirmation, meaning that the T-side confirmation proceedings are expected to be resolved before any resolution on the E-side is achieved.

3.      Debtors seek to expedite the schedule and to limit the scope and conduct of discovery to issues surrounding the valuation issues on the E Side of the Debtors'

---

[3] Defined term as used in Debtors' Motion for entry of an order scheduling certain dates and deadlines and establishing certain protocols (Docket No. 8358).

capital structure, the allocation of equity in a reorganized EFH, and whether the New Plan satisfies the Bankruptcy Code's requirements for a plan of reorganization. The schedule outlined in the Protocol also purports to impose retroactive deadlines before this Court even hears the Motion. Specifically, although the hearing on the Motion is scheduled for May 23, 2016, the Debtors seek to impose May 9, 2016, as the deadline for serving written discovery requests.[4] Creditors should be able to serve written discovery requests at any time prior to the 30th day before the end of fact discovery concerning the New Plan.

4. The Court should not approve the Protocols in their current form. The Protocols contain many infirmities that are either contrary to the Bankruptcy Rules and/or are unwarranted here. Specifically, the Protocols are inadequate because they do not satisfy the fundamental due process rights of Fenicle and Fahy and because the Protocols ignore general issues of fairness with respect to the four separate bankruptcies of EECI, Inc. (Case No. 14-10992), EEC Holdings (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14- 11039), and LSGT SACROC, Inc. (Case No. 14-11012), (collectively, the "Asbestos Debtors").

5. Amongst the Asbestos Debtors, EECI is in fact purely an asbestos company which was in the business of collecting asbestos lawsuits to pass on to insurance carriers with a tender for defense and indemnity. EECI's predecessor, Ebasco, went into business 100 years ago, and by the 1930s was a major user of asbestos insulation and related products in its international power plant design, construction,

---

[4] Debtors have already amended the New Plan and the Disclosure Statement after the proposed May 9, 2016, deadline. (Docket No. 8380).

maintenance, and repair business, which continued under a series of different ownerships through the 1980s.[5]

6. In its wake, Ebasco has thus left a worldwide legacy of deadly asbestos in place, and ultimately giving rise to:

a) claims[6] against the Debtors that are based upon an asbestos-related illness or injury that became manifest and that arose (or is deemed to have arisen) prior to the Petition Date and that are not property damage claims or claims for contractual or common law indemnification or contribution, ("Manifested Asbestos Claims"), as well as

b) claims of yet unmanifested asbestos-related illness or injury against the Debtors that arose (or is deemed to have arisen) prior to the Petition Date based on exposure (or the exposure of a family member) to asbestos, whether or not such Asbestos Claims have accrued a valid cause of action under non-bankruptcy law, and that are not property damage claims or claims for contractual or common law indemnification ("Unmanifested Asbestos Claims").[7]

---

[5] Debtors were in the business (and/or are successors to entities that had been in the business) of building power plants that generated electricity. Both nuclear and electric power generation produces extreme amounts of heat as a result of burning or boiling. The presence of this heat necessitated the installation of insulation throughout power plants including in the walls, wires, pipes, boilers, and generators. Historically, power plants were depositories of asbestos and asbestos-laden materials and products. Insulators, pipefitters, electricians, welders and other laborers often worked in close quarters and either handled asbestos or drilled or cut into it, releasing toxic asbestos fibers. Cutting into asbestos insulation would make fibers airborne, where they could be easily inhaled. In addition to its presence throughout the plant and equipment, workers responsible for building and maintaining the plants and equipment would wear insulated clothing or gear to do their jobs. For years, these pants, coats, aprons, mitts, and masks contained asbestos. In short, asbestos exposure was virtually unavoidable in power plants built prior to 1980. To the extent that asbestos located in power plants was remediated after 1980, exposures causing personal injuries could also have occurred.

[6] As used herein: (a) the term "claim" has the meaning given to it in section 101(5) of the Bankruptcy Code.

[7] Defined terms as used in the January 7, 2015, Opinion granting the Debtors' request to establish a bar date for Unmanifested Claimants (the "Bar Date Opinion"), 522 B.R. 520 (Bankr. D. Del. 2015).

7. The Asbestos Debtors are solvent, yet moribund, entities which hold nearly $1 billion ($1,000,000,000.00) in intercompany claims. The disclosed combined liabilities of the Asbestos Debtors are approximately $14 million ($14,000,000.00).

8. The Protocols are inadequate because the Debtors fail to address the assets or the extent of liabilities residing with the Asbestos Debtors, for which other EFH companies likely share responsibility as a result of corporate conduct over the 40 years since Ebasco was acquired. The Protocols fail to provide necessary time to ascertain the information concerning the separate financial history and current status of the Asbestos Debtors, the nature and extent of intercompany claims against others for use of their funds over the years, the nature and extent of insurance coverage available to the Asbestos Debtors, as well as the scope of indemnity claims sought to be asserted against the Asbestos Debtors. These are fatal omissions and prevent asbestos creditors from carefully evaluating the appropriateness of any plan of reorganization.

9. The Debtors originally scheduled 392 asbestos-related cases, including approximately 121 cases being defended (20 of which are related to the Debtors' electricity generation activities) and approximately 270 cases where the Debtors have rejected indemnification demands. The Debtors believe that litigation and settlement expenses incurred in connection with asbestos claims against the Debtors are not material. The Debtors have estimated that their asbestos expenses average up to $3 million annually.

10. A comparison between the Confirmed Plan and the New Plan confirms that the treatment of EFH Unsecured Claims (which includes asbestos claims) has changed materially and significantly from the Original Plan to the New Plan. In the

Original Plan, asbestos claims were "Paid in full in cash." According to the proposed New Plan, allowed asbestos claims will be received a " pro rata share of the EFH Creditor Recovery Pool or paid in full in cash by the Reorganized EFH" under the New Plan.

11. In addition to the significant change in treatment of asbestos claims under the New Plan, the Debtors have also recently filed a motion to authorizing the Debtors to establish a supplemental deadline for filing proofs of claim against the Debtors solely as to ninety (90) parties (the "Subsequently Identified Parties") that may not have received the Bar Date Notice, (hereinafter the "Subsequent Bar Date Motion")[8]. Each Subsequently Identified Party is a co-defendant to certain asbestos litigation matters that the Debtors either included in their schedules and statements filed on June 30, 2014, or, in one instance, inadvertently left off those schedules and statements. Debtors also seek authority, without having to seek further leave of the Court, to set a supplemental bar date in the event the Debtors discover any other parties for whom a supplemental bar date is appropriate.

12. If granted, Debtors' Subsequent Bar Date Motion to establish a supplemental deadline for asbestos co-defendants to file proofs of claims, will give rise to additional unscheduled asbestos exposure for the Asbestos Debtors. Additionally, the Subsequently Identified Parties will likely seek to file claims against Debtors predicated in indemnity for the thousands of Unmanifested Asbestos Claims that have been asserted against the Debtors by virtue of the Asbestos Bar Date. No disclosure has been made by

---

[8] See Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Setting a Supplemental Bar Date for Ninety Subsequently Identified Parties, (B) Approving Notice Thereof, and (C) Establishing Related Procedures, (Docket No. 8150).

the Debtors as to the effect that these potential new claims will have on the Asbestos Debtors and their estates.

## CONCLUSION

WHEREFORE, Fenicle and Fahy respectfully requests that the Court (i) deny the Motion; (ii) refrain from entering an order on the Motion at this time; (iii) grant the Motion subject to the changes set out herein; or (iv) grant such other and further relief as the Court may deem just and proper.

Dated: Wilmington, DE
       May 16, 2016

                                        Respectfully submitted:

                        By:   /s/ *Daniel K. Hogan*
                                  Daniel K. Hogan (DE Bar # 2814)
                                  **HOGAN♦McDANIEL**
                                  1311 Delaware Avenue
                                  Wilmington, Delaware  19806
                                  Telephone:  (302) 656-7540
                                  Facsimile: (302) 656-7599
                                  dkhogan@dkhogan.com

                                  -and-

                                  Steven Kazan (CA Bar # 46855)
                                  Kazan McClain Satterley & Greenwood
                                  A Professional Law Corporation
                                  Jack London Market
                                  55 Harrison Street, Suite 400
                                  Oakland, CA 94607
                                  Telephone: (510) 302-1000
                                  Facsimile: (510) 835-4913

                                  -and-

Ethan Early (CT Juris # 417930)
Early Lucarelli Sweeney & Strauss
265 Church Street, 11th Floor
New Haven, CT 06508-1866
Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy*

**Certificate of Service**

I, Daniel K. Hogan, hereby certify that on May 16, 2016, I caused a copy of the foregoing *Objection of Fenicle and Fahy to Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* to be served via Electronic Mail on the Participating Parties (as defined in the *Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization, and (C) Revising Certain Dates in the Disclosure Statement Scheduling Order* [D.I. No 4916]) at the following email address set up by the Debtors to allow for service on all Participating Parties: EFH_DS_Discovery_Service_List@kirkland.com.

Dated: Wilmington, DE
May 16, 2016

/s/ *Daniel K. Hogan*
Daniel K. Hogan (DE Bar # 2814)
**HOGAN♦McDANIEL**
1311 Delaware Avenue
Wilmington, Delaware  19806
Telephone:  (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy*