IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ X
In re:                                : Chapter 11
                                      :
Energy Future Holdings, Inc., *et al.*, : Case No. 14-10979 (CSS)
                                      :
          Debtors.                    : (Jointly Administered)
                                      :
                                      : Ref. No. 8358
------------------------------------------------------------ X

## OBJECTION OF NEXTERA TO MOTION OF ENERGY FUTURE HOLDINGS CORP., ET AL., FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION AND APPROVAL OF DEBTORS' DISCLOSURE STATEMENT

NextEra Energy, Inc. and its wholly-owned subsidiary NextEra Energy Capital Holdings, Inc. (collectively, "NextEra"), files this objection (the "Objection") to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* (the "Debtors' Scheduling Motion").[1] In support of this Objection, NextEra respectfully states as follows:

### Preliminary Statement

1. While meaningful details for the T-Side Debtors' reorganization and emergence from Chapter 11 are set forth in the New Plan and New Disclosure Statement (each as defined below), the Debtors have failed to set forth any terms of any kind with respect to the E-Side Debtors. For that reason, and for the reasons set forth in detail herein, NextEra urges the Court to decouple the E-Side plan from the T-Side plan and enter an order denying the Debtors'

---

[1] Capitalized terms not otherwise defined herein are as defined in the Debtors' Scheduling Motion.

{932.002-W0042194.}

Scheduling Motion as it relates to the E-Side Debtors.

## Background

2. NextEra is a leading clean energy company with consolidated revenue of approximately $17.5 billion, and approximately 14,300 employees in 27 states and Canada as of year-end 2015. NextEra is a creditor and a party-in-interest in these cases and is the beneficial owner of approximately $45.3 million principal amount of EFIH unsecured Senior Toggle Notes.

3. In December 2015, this Court approved the Debtor's Sixth Amended Joint Plan of Reorganization (the "REIT Plan"). The REIT Plan required certain conditions to be satisfied to become effective. Absent the satisfaction of those conditions, necessary parties that supported the REIT Plan could withdraw their support and render the REIT Plan (and the related REIT Confirmation Order) "null and void." *See* Debtors' Scheduling Motion at ¶¶ 17-24.

4. On May 1, 2016, because of the failure of certain conditions to be satisfied, TCEH First Lien Creditors sent a Plan Support Termination Notice to the Debtors and Required Investor Parties. *See* Debtors' Scheduling Order, at ¶23. As a result, the REIT Plan became null and void and the related Merger Agreement was terminated.

5. On May 1, 2016, the Debtors filed a new plan (D.I. 8355, which was subsequently amended by D.I. 8421) (the "New Plan"), a new disclosure statement (D.I. 8356, which was subsequently amended by D.I. 8423) (the "New Disclosure Statement") and the Debtors' Scheduling Motion.

6. The Debtors assert that the New Plan does not return the case parties to "square one" because this Court had previously approved the settlement of legacy litigation and the PSA resolved "substantially all contested issues involving T-Side creditors" and thus "virtually no controversy should remain regarding the T-Side Debtors' ability to emerge from bankruptcy." *See* Debtors' Scheduling Motion at ¶6.

7. With respect to the E-Side Debtors, the Debtors represent that the potential remaining issues on the E Side "may be limited to (a) valuation issues on the E-Side of the Debtors' capital structure, (b) allocation of equity in a reorganized EFH, and (c) whether the New Plan satisfies the Bankruptcy Code's requirements for a plan of reorganization." *See* Debtors' Scheduling Motion at ¶7.

## Objection

8. What the Debtors have filed for the E-Side is not a plan. It is merely an outline of three hypothetical frameworks for a plan. Having lost their exclusive right to file a plan, the three alternatives proposed for the E-Side merely serve as a placeholder. But it is an effort that should not be given any recognition by this Court.

9. This E-side "Plan" contemplates three hypothetical structures, none of which should be considered a plan: (i) a stand-alone reorganization without a new equity contribution, (ii) a transaction involving EFH pursuant to a new-money contribution from yet-to-be-determined investors; or (iii) a REIT conversion. As addressed in more detail below, there is no commitment on the part of any party to finance the plan and there is no agreement among the creditors on valuation for an equity plan. Nor is there even an agreement among creditors about how to divide up the new equity. These unsupported options are wholly insufficient to trigger the beginning of the E-Side confirmation process.

10. Let's examine each of the three options. The first contemplates a stand-alone reorganization without a new equity contribution; however, there is no E-Side valuation suggested, let alone agreed to; no agreement among creditors as to how to divide up the new equity; and no suggested ability to repay the first and second lien creditors. Again, this is not a real plan.

11. The second option, a transaction pursuant a new-money contribution, is also not a real plan. The Debtors do not identify the source of any "new-money", let alone the amount or terms or conditions. No indication is given as to the identity of this hypothetical investor, particularly one that could obtain the necessary financing or regulatory approvals. Again, one would not call this a plan that is worthy of scheduling a disclosure statement hearing or a confirmation date.

12. Finally, the third option, the REIT conversion, fails to address a glaring legal defect. Late last year, Congress eliminated tax-free spinoff treatment for most transactions involving REITs. This change was not applicable to transactions for which – as was the case for the Debtors' REIT Plan – an initial ruling request had already been submitted (as of December 7, 2015) to the Internal Revenue Service. Accordingly, given that the Debtors' REIT Plan has been rendered null and void, any new proposal, including that set forth in the Debtors' New Plan, would not be entitled to tax free treatment. Again, the Debtors fail to explain how the REIT conversion option remains as a viable option in these circumstances.

13. Debtors' Scheduling Motion also fails to provide a time-line or defined approach to address the numerous and substantial separation issues that exist between the T-Side and E-Side Debtors. These matters include, but are not limited to, employee matters such as pension, OPEB and change of control issues, transition services that may be needed between the T-Side and E-Side post-closing and tax matters.

14. With respect to the tax matters, the New Plan contemplates a tax matters agreement will be entered into between T-Side and E-Side Debtors so that the T-Side can obtain a multi-billion dollar tax basis step up, with the related tax obligations to be incurred by the E-Side. There are substantial risks related to the potential for mismatches between the amount of gain taken by the T-Side and the amount of NOLs at EFH. The result would be substantial tax

obligations for the E-Side. Similarly, the New Plan prohibits E-side holders but not T-side holders from taking post-transaction actions that would disqualify the proposed spinoff from tax-free treatment, thereby potentially triggering multiple billions of dollars of taxable gain for EFH, gains far in excess of the existing NOLs. Again, that tax burden would fall on the E-Side. The Debtors' New Plan cannot be scheduled to move forward toward confirmation until such tax matters are resolved.

15. In summary, an outline of a possible path forward must include some degree of detail before it is entitled to move to the next steps in the bankruptcy plan process, By seeking to obtain approval of a detailed schedule and discovery process[2] as set forth in the Debtors' Scheduling Motion, the Debtors have placed the cart before the horse with respect to E-Side creditors. Where there is no true plan, the Court cannot grant a related scheduling motion.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[2] The absurdity of the Debtors' Scheduling Motion is also highlighted in the proposed discovery deadlines, which include a requirement that all written discovery be served by May 9, 2016. As this date has come and gone, it is impossible for anyone to comply with this deadline. *See* Debtors' Scheduling Motion at § 27.

WHEREFORE, for all of the above-stated reasons, NextEra respectfully requests that the Court (i) deny the Scheduling Motion as to the E-Side Debtors; and (ii) grant such other and further relief as this Court deems just and proper.

Dated: May 16, 2016
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/_

Adam G. Landis (No. 3407)
Matthew B. McGuire (No. 4366)
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
       mcguire@lrclaw.com

_- and –_

CHADBOURNE & PARKE LLP
Howard Seife
David M. LeMay
1301 Avenue of the Americas
New York, New York 10019-6022
Telephone: (212) 408-5100
Facsimile:  (212) 541-5369
Email: hseife@chadbourne.com
       dlemay@chadbourne.com

_Counsel to NextEra Energy, Inc._