**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Energy Future Holdings, Inc., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date: May 23, 2016 at 10:00 a.m.** |
| | ) | **Related Documents: 8358** |

**OBJECTION OF CERTAIN FUNDS AND
ACCOUNTS ADVISED OR SUB-ADVISED BY FIDELITY MANAGEMENT
& RESEARCH COMPANY OR ITS AFFILIATES TO MOTION OF ENERGY
FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER
SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND
ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE
CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION AND
THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

_____

Certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates (collectively, "Fidelity") hereby file this objection (the "Objection") to the *Motion of Energy Future Holdings Corp., Et Al., for Entry of an Order Scheduling Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8358] (the "Motion")[2], and respectfully state as follows:

---

1  The last four digits of Energy Future Holding Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://ww.efhcaseinfo.com.

2  Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Motion or the Amended Plan.

1

**PRELIMINARY STATEMENT**

1. Fidelity remains the largest E-Side creditor in these chapter 11 cases and is one of the largest, if not the largest, creditors in these chapter 11 cases overall. Fidelity owns in excess of (i) 34% of the EFIH Second Lien Note Claims; (ii) 73% of the EFH Legacy Note Claims; and (iii) 78% of the EFH LBO Note Claims. Fidelity also holds a significant amount of the EFIH First Lien DIP Loan.

2. Given its substantial claims, Fidelity has every interest and desire to see an expeditious conclusion to these chapter 11 cases. However, undue haste, and arbitrary deadlines and processes, are not in the best interest of Fidelity or any creditor.

3. At this stage, the Debtors have no economic interest in the outcome of the E-Side plan process. The Settlement Agreement has been approved. Releases are in place. The structure of the T-Side restructuring is set and exclusivity has terminated. Under these circumstances, what is needed is a quick but fair resolution of the remaining open issues with respect to the terms of an E-Side restructuring, not an unnecessary sprint to a plan that has no support among the E-Side creditors and that will fail. Obtaining a value-maximizing transaction should be the Debtors' first priority, as it is for Fidelity and other E-Side creditors. Instead of rushing through discovery and plan proceedings, the Debtors should confer with the E-Side creditors and formulate a reasonable, consensual and value-maximizing go-forward process. Accordingly, the Court should deny the Motion.

**OBJECTION**

4. The Debtors have requested entry of an order [DI 8358, 8380] (as amended, the "<u>Order</u>") seeking approval of hearing dates, scheduling discovery deadlines and establishing protocols in connection with confirmation of the Debtors' Joint Plan of Reorganization [DI 8355,

2

8421] (as amended, the "Amended Plan") and approval of the Debtors' related disclosure statement [DI 8356, 8423] (as amended, the "Disclosure Statement") each of which were filed on May 1, 2016. Subsequent to the initial filing of the Amended Plan and Disclosure Statement, on May 11, 2016, the Debtors filed amendments to the Amended Plan and a revised Disclosure Statement.

5. The Motion, Amended Plan and Disclosure Statement were filed just hours after the TCEH First Lien Creditors sent a Plan Support Termination Notice terminating the Plan Support Effective Period under the PSA. Fidelity provided no input on the Amended Plan before it was filed. In fact, during the Plan Support Effective Period, Fidelity had been constrained from discussing with other parties an alternative E-Side restructuring which could be implemented if the Confirmed Plan was abandoned. A protocol for such discussions was negotiated for some time but was agreed upon only days before the TCEH First Lien Creditors sent the Plan Support Termination Notice – too late for any discussions to occur between and among E-Side creditors regarding a path forward.

6. As drafted, the Amended Plan provides two alternate scenarios for an E-Side plan. Under the Investment Scenario, "certain investors" will buy Oncor through a new-money contribution, which cash will be used to fund recoveries for E-Side claims. Under the Standalone Scenario, some or all of the E-Side claims will convert into Reorganized EFH Common Stock. Under the Investment Scenario, the Amended Plan can only be confirmed if the Debtors find a committed investor or investors. And under the Standalone Scenario, the Amended Plan is only confirmable if E-Side creditors – including holders of the EFIH Second Lien Notes – consent to taking Reorganized EFH Common Stock on account of their respective E-Side claims at the Debtors' proposed valuation. Those creditors have all made it very clear

that they will not support the Amended Plan as currently formulated. As such, the Amended Plan has no chance of being confirmed and should not be the starting point for an expensive and time consuming discovery and confirmation process.

A.     **Consideration of the Motion is Premature**

7.     Given the current circumstances and the terms and conditions of the Amended Plan, setting an "expedited schedule" at this time is entirely premature.

8.     First, the Debtors have no economic interest whatsoever in the results of the E-Side plan process. The Settlement Agreement was approved and the Debtors have secured broad releases. All of the value on the E-Side belongs to the E-Side creditors. Moreover, the E-Side restructuring concerns holding companies, not an operating business. Speed, while desirable, is not critical. Whatever plan process is pursued or plan is implemented should be done with the input and guidance of E-Side creditors and in a manner which E-Side creditors believe will produce a value-maximizing transaction. Emerging from chapter 11 quickly is an important goal, but not at the expense of creditor recoveries.

9.     Second, E-Side creditors have no idea what plan the Debtors actually intend to pursue. The Amended Plan has two possible plan scenarios embedded within, and the Debtors could pursue either one of those options. As drafted, the Amended Plan is not confirmable under either scenario. Starting discovery on an unconfirmable plan is a waste of time and estate resources. The Debtors will have to further amend the Amended Plan in order to proceed to a confirmation hearing. When the final plan is actually filed, the factual and expert discovery already underway might very well be irrelevant and new factual and expert discovery may be critically necessary. In fact, it is entirely possible that a consensual plan will emerge, making all discovery irrelevant. It is unreasonable to bind the parties in this case to proposed discovery

4

deadlines and protocols, and force such parties to expend significant time and resources, where the substance of the plan – which should be the focus of the discovery process – is so unclear.

10. <u>Third</u>, in the Motion, the Debtors assert that "[a]s for the E-Side Debtors, the potential remaining issues may be limited to (a) valuation issues on the E Side of the Debtors' capital structure, (b) allocation of equity in a reorganized EFH, and (c) whether the Amended Plan satisfies the Bankruptcy Code's requirements for a plan of reorganization." Motion ¶ 7. While most intercompany issues have been resolved, the issues the Debtors have identified which must still be resolved in order to confirm an E-Side plan – valuation, allocation of equity and whether the plan complies with the Bankruptcy Code – are neither limited nor narrow. Moreover, the Debtors have failed to disclose that important tax issues remain in flux and will require additional time to work out. Setting an "expedited schedule" now, before the parties have had a chance to caucus and seek to narrow the issues, is not in the best interest of the Debtors or their stakeholders.

11. The rush to impose discovery deadlines and a confirmation hearing date is neither necessary nor appropriate at this time. The Confirmed Plan was abandoned just fifteen days ago, and the Debtors no longer have the benefit of exclusivity. Rather than seek to manufacture an exclusivity extension long after it has lapsed, the Debtors should caucus with their constituents and propose a plan process that has the blessing of the parties in interest. Moving forward with the Amended Plan on a non-consensual basis will undoubtedly result in tens of millions of dollars of administrative expenses and waste valuable time and resources – time and resources that could be better spent on discussions regarding a consensual plan or, at the very least, a consensual path forward.

**B.    All Unilaterally Imposed but Unapproved Deadlines Should be Adjusted**

12.    The Debtors seek to unilaterally impose unapproved discovery "deadlines" even before approval of the Motion.  Specifically, the Motion and Order require that "**all** written discovery requests must be served no later than Monday, May 9, 2016 at 4:00 p.m."  Motion ¶ 27 (emphasis added), Order ¶ 7.  The deadline was a mere five business days after the filing of the Motion, the Amended Plan and Disclosure Statement.  Fidelity only learned of the Plan Support Termination Notice upon the filing of the Motion, the Amended Plan and Disclosure Statement.  While absorbing this new information and the terms, conditions and structure of the Amended Plan, Fidelity and all parties in interest were left, pursuant to the Debtors' proposed timeline, with just days to formulate "all" written discovery related to the Amended Plan.  This deadline, while clearly insufficient in terms of length of time, was not approved by the Court.  Rather than set a schedule that would have given all parties in interest sufficient time to absorb the new information and strategize appropriately, the Debtors sought to impose a rushed deadline for written discovery and did so even before this Court had a chance to consider the Motion and assess whether the relief sought was in the best interests of the Debtors.

13.    The Debtors should not be permitted to preclude participation in the discovery process through unilaterally imposed yet unapproved (and unreasonable) deadlines.

**C.    EFH Committee**

14.    The Order requires Participating Parties to work with and through the Creditors' Committees in connection with written discovery and deposition notices.  However, pursuant to the Settlement & Support Agreement by and between, among others, the Debtors, the EFH Committee and the EFH Trustee [DI 7090] (the "Committee Settlement"), "except as otherwise required by order of the Bankruptcy Court, the EFH Committee (i) shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and (ii) shall not object to, litigate against, or

otherwise impair, hinder, or delay, the confirmation and consummation of any Alternative Restructuring" that incorporates specific treatment for certain E-Side creditors.  Committee Settlement §6(b).  Accordingly, given that the EFH Committee has agreed to "stand down," E-Side creditors should not be required to coordinate with and act through the EFH Committee.

**D.** **Reservation of Rights**

15. Fidelity expressly reserves its rights to amend this Objection or raise additional objections when or if the Debtors further amend the Order.

*[Remainder of Page Intentionally Left Blank]*

## CONCLUSION

For the reasons set forth above and in the Objection, Fidelity respectfully requests that this Court deny the Motion and grant such other relief as is just and proper.

Dated: May 16, 2016
       Wilmington, Delaware

CROSS & SIMON, LLC

*/s/ Michael J. Joyce*
Michael J. Joyce (No. 4563)
1105 N. Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19899-1380
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
E-mail: mjoyce@crosslaw.com

-and-

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
Brad Eric Scheler
Gary L. Kaplan
Matthew M. Roose
One New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000
Email: brad.eric.scheler@friedfrank.com
      gary.kaplan@friedfrank.com
      matthew.roose@friedfrank.com

*Counsel to certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates*