**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>          Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Docket Ref. Nos. 8358 and 8380** |

**RESPONSE AND RESERVATION OF RIGHTS  OF THE TCEH FIRST LIEN AD HOC COMMITTEE TO THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION AND APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

The ad hoc committee of certain unaffiliated holders of first lien senior secured claims against the TCEH Debtors[2] (the "TCEH First Lien Ad Hoc Committee"), by and through its undersigned counsel, hereby files this response and reservation of rights in respect of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [Docket No. 8358] (the "Scheduling Motion") and respectfully states as follows:[3]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] As used herein, the term "TCEH Debtors" means, collectively, Texas Competitive Electric Holdings Company LLC ("TCEH"), Energy Future Competitive Holdings Company LLC ("EFCH"), and TCEH's direct and indirect subsidiaries that are debtors and debtors-in-possession in the above-captioned cases.

[3] Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the Scheduling Motion.

**RESPONSE**

1.      The TCEH First Lien Ad Hoc Committee strongly supports approval of the Scheduling Motion as proposed because the relief sought is a linchpin to resolution of these complex chapter 11 cases and TCEH's exit from one of the largest – and most costly – bankruptcies in history.  As the Scheduling Motion makes clear:  "Through the PSA, the Debtors and PSA parties resolved substantially ***all*** contested issues involving T-Side creditors.  All major TCEH creditor groups have agreed to accept the proposed plan treatment.  Thus, virtually no controversy should remain regarding the T-side Debtors' ability to emerge from bankruptcy." Scheduling Motion at ¶ 6.  While the T-Side Debtors have languished in chapter 11 for over two years, their asset value has eroded by billions of dollars.   With substantial consensus achieved among the T-Side Debtors' creditors, the T-Side Debtors should no longer be held hostage to E-Side Debtor issues:  if the E-Side issues cannot be resolved to allow confirmation of an E-Side plan on the timetable outlined in the Scheduling Motion, the T-Side Debtors should be allowed to move on and emerge from chapter 11 at the earliest possible date.

2.      Thus, the proposed Confirmation Scheduling Order reflects a fundamental principle that is essential to maximizing the value of the TCEH Debtors' estates:  confirmation and consummation of a TCEH plan of reorganization should proceed as expeditiously as possible, independent of, and without any delay caused by, resolution of E-Side Debtor issues. For the past two years, the TCEH Debtors' and E-Side Debtors' restructuring efforts have been tethered to one another despite the two silos' distinct operations and capital structures.  Now, however, with a binding agreement among the major TCEH creditor groups in the PSA and Settlement Agreement regarding an Alternative Restructuring, confirmation of a TCEH plan should be swift and uneventful and free of any delay caused by the E-Side or its myriad of diverse stakeholders.  This is precisely the resolution and outcome that the parties negotiated for,

and agreed to, in the PSA, in the event the REIT Plan (defined below) was not consummated. In fact, the PSA specifically contemplated a confirmation schedule for any alternative plan of 90 days, consistent with the proposed Confirmation Scheduling Order. (PSA § 10(j).)

3.     Accordingly, with exclusivity having expired, the TCEH First Lien Ad Hoc Committee was prepared on May 1st (and remains so today) to file a chapter 11 plan for the TCEH Debtors only (the "<u>TCEH-Only Plan</u>"). The TCEH-Only Plan, much like the Debtors' New Plan as it relates to the TCEH Debtors, would provide for (i) an allocation of value among TCEH's creditors in accordance with the Court-approved Settlement Agreement and PSA and (ii) an expeditious separation of TCEH from EFH pursuant to either a tax-free spin (if certain related "spin-off conditions" necessary to protect reorganized TCEH are satisfied by a date certain) or a taxable separation. Unlike the Debtors' New Plan, however, the TCEH-Only Plan would address only the TCEH Debtors, without separate plan provisions addressing the E-Side. Thus, "de-linkage" of the T-Side and E-Side would be final and absolute.

4.     This distinction—between a TCEH-only plan and a plan that also attempts to resolve the E-Side—is critical, most notably as it relates to speed of execution and the preservation of value of the TCEH estates. While confirmation and consummation of any TCEH-Only Plan should proceed quickly and without meaningful conflict or regulatory risk, agreement on an E-Side plan remains fluid and uncertain, with significant litigation still pending and new disputes looming in respect of valuation and distribution issues, as well as a potential for renewed regulatory review. A single confirmation schedule for both the TCEH Debtors and the E-Side Debtors is not only unnecessary given the lack of any real link between the two plans, it would inevitably delay TCEH's emergence, exacerbating the harm to its creditors, who have

already been significantly harmed by the substantial loss of value during these protracted chapter 11 cases.

5.        While a TCEH-Only Plan is the quickest exit from chapter 11 for TCEH creditors, the TCEH First Lien Ad Hoc Committee has worked cooperatively with the Debtors to agree to a path that should make a competing plan process unnecessary.  The results of such efforts are embodied in the proposed Confirmation Scheduling Order, which:   (1) accommodates the Debtors' desire for the TCEH Debtors and E-Side Debtors to begin their march towards confirmation together, with the express agreement that confirmation of the New Plan as to the TCEH Debtors will go forward first and will not be delayed as a result of E-Side issues; and (2) protects TCEH's stakeholders if the Debtors fail to meet certain plan-related milestones by allowing the TCEH First Lien Ad Hoc Committee to effectively step into the TCEH Debtors' shoes to prosecute a TCEH-only plan (with the benefit of any orders previously entered and votes previously cast as they relate to the TCEH Debtors).

6.        Although certain of these provisions are admittedly novel, they are critically important in light of the unique facts and circumstances of these cases.   Given the minimal remaining ties between the TCEH Debtors and the E-Side and the significant progress that has been made on the T-Side with respect to creditor harmony and regulatory approvals relative to the E-Side, linking the TCEH Debtors' emergence to the E-Side's would be arbitrary and prejudicial.  Without arrangements designed to allow the TCEH Debtors to proceed towards confirmation and emergence irrespective of delays from the E-Side, the TCEH First Lien Ad Hoc Committee will file its TCEH-Only Plan and request the Court to put it on the same confirmation track as the Debtors' New Plan, which can be avoided by entry of the proposed Confirmation Scheduling Order.  Accordingly, and for the reasons discussed below, the TCEH

First Lien Ad Hoc Committee submits that approval of the proposed Confirmation Scheduling Order is in the best interests of the Debtors' estates.

**I.      Confirmation of the New Plan as to the TCEH Debtors Should Not be Delayed by E-Side Issues**

7.      Nearly five months ago, this Court confirmed the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al*., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285] (the "REIT Plan").   Confirmation of the REIT Plan was a watershed moment in these cases, as it offered the promise of an outcome that had long eluded the parties:  (i) resolution of all E-Side creditor disputes through payment in full of their allowed claims; (ii) the opportunity for TCEH junior creditors to potentially realize a significant recovery through a new-money investment in Oncor; and (iii) control of TCEH being given to its economic owners, the TCEH first lien creditors.  Though consummation of the REIT Plan was always uncertain, it would have been the preferred outcome for all parties, including the TCEH first lien creditors.

8.      Unfortunately, due to matters beyond the control of parties before this Court, the REIT Plan became infeasible.  While this outcome is unfortunate, it was not unplanned for. Indeed, given the significant uncertainty as to whether the REIT Plan would ultimately be consummated,  TCEH's  largest  stakeholders  negotiated  a  specific  timeline  to  pursue consummation of the REIT Plan and, if those efforts proved unsuccessful, the fundamental terms of an Alternative Restructuring.  The parties' agreement on such matters, developed during the course of mediation and embodied in the previously approved PSA and Settlement Agreement, was critical to the TCEH First Lien Ad Hoc Committee's support for the REIT Plan itself, as they avoid the need for a fresh start.  Rather, creditors holding a majority of secured and unsecured claims against the TCEH Debtors have agreed under the PSA to vote in favor of an

5

Alternative Restructuring that is filed or supported by the TCEH First Lien Ad Hoc Committee provided that it is consistent with the Settlement Agreement. The required terms are as follows: (i) the TCEH junior creditors will receive, in the aggregate, $550 million in cash (subject to reduction under the Settlement Agreement and the PSA); and (ii) the TCEH first lien creditors will receive all of the equity and certain assets of reorganized TCEH.

9.      This significant consensus among TCEH's key stakeholders is in stark contrast to the situation on the E-Side, where creditor harmony has proven elusive and where litigation has raged for the past two years on numerous intercreditor, claim allowance and valuation issues. Remarkably, many of these disputes endured even in the face of the REIT Plan, which proposed to pay all E-Side creditors in full. Now, with the very real prospect of significant E-Side creditor impairment under the New Plan, and the need to allocate such losses across numerous tranches of debt, there is a real risk that the E-Side's confirmation process will be mired in further contentiousness.

10.     In addition, the New Plan provides that control of TCEH will pass to the TCEH first lien creditors, as did the REIT Plan and as would the TCEH-Only Plan, if filed. Accordingly, the T-Side will benefit from the regulatory processes and approvals gained during pursuit of the REIT Plan.   By contrast, because the New Plan provides that the E-Side will have different owners than it would have had were the REIT Plan successfully consummated, the E-Side may be required to start from scratch on many, if not all, of the regulatory approval processes necessary to consummate the New Plan, presenting additional risk of E-Side delay.

11.     TCEH's emergence from chapter 11 should not be held hostage to E-Side delay. While in chapter 11, TCEH has not been able to make necessary changes to its business, including by right-sizing its bloated cost structure or diversifying its fleet of plants.   Such

inability to act plus adverse market conditions have caused TCEH to hemorrhage literally billions of dollars of value, and its financial condition will continue to deteriorate until it emerges from chapter 11 and can begin to implement the vital changes that are necessary for its financial recovery.

12.     Fortunately, at this late date, the TCEH Debtors' path to emergence should be expeditious and straightforward as the parties contemplated and negotiated for an alternative to the REIT Plan months ago.  Virtually all significant T-Side issues have been resolved through the PSA and the Settlement Agreement and TCEH can de-link from the E-Side Debtors' contentious restructuring efforts.   While all parties are hopeful that peace will break out on the E-side, the TCEH Debtors and their creditors should not be forced to underwrite that objective. The proposed Confirmation Scheduling Order avoids that inequitable result by affording the silos the opportunity to commence confirmation together, while ensuring that if E-Side complications arise, the TCEH Debtors' confirmation will proceed first and the timeline for their emergence will not be disrupted.   Such sequencing is necessary and appropriate here and should be approved.

II.     **The Confirmation Scheduling Order Strikes an Appropriate Balance Between Allowing the Continued Pursuit of a Combined-Company Plan While Protecting the Legitimate Interests of TCEH's Stakeholders**

13.     Another significant T-Side protection bargained for in the Scheduling Order relates to the actual prosecution of the New Plan itself.  For example, the Debtors could decide to withdraw, revoke, abandon or otherwise delay prosecution of the New Plan for any number of reasons, or they could amend the New Plan in a manner adverse to TCEH's stakeholders, including in response to issues raised by the E-Side.  This is not a risk that TCEH's creditors should be required to bear at this late date after exclusivity has terminated.  It bears repeating that the TCEH First Lien Ad Hoc Committee only agreed to forego filing its own plan in reliance on

the assurance that TCEH's creditors would not be prejudiced under a combined-company plan by delays caused by the E-Side or a subsequent failure of the Debtors to expeditiously prosecute the New Plan as it relates to the TCEH Debtors.  Without the protections the Confirmation Scheduling Order provides, if the New Plan were to stall, TCEH's creditors could find themselves with no alternative but to then belatedly commence a competing plan process.  The need to start a confirmation process anew would be particularly inequitable in the context of the massive, ongoing losses suffered by T-Side creditors.

14.     To address this somewhat unusual situation, at the Debtors' urging, the TCEH First Lien Ad Hoc Committee negotiated a consensual framework with the Debtors, embodied principally in Paragraph 8 of the proposed Confirmation Scheduling Order, that avoids the need for a competing plan process, while ensuring that TCEH's stakeholders will not be prejudiced by their agreement to forego filing the TCEH-Only Plan on May 1st.  Specifically, Paragraph 8 provides that, upon the occurrence of certain narrowly-tailored milestone events, the TCEH First Lien Ad Hoc Committee may file a notice attaching its TCEH-Only Plan, and assuming that such Plan constitutes an "Alternative Restructuring" under the PSA, the TCEH-Only Plan shall be deemed automatically to (i) have been filed as of May 1, 2016, (ii) have the full benefit of votes previously cast and any prior orders of the Court with respect to the New Plan as they relate to the TCEH Debtors, and (iii) be subject to the same deadlines and timelines set forth in the Confirmation Scheduling Order.

15.     Consistent with this framework, Paragraph 8 also reflects the Debtors' and the TCEH First Lien Ad Hoc Committee's agreement that, for purposes of the Settlement Agreement and PSA, the New Plan does not constitute a "joint plan" that includes both TCEH and EFH, and therefore, pursuant to Section 2.1(d)(ii) of the Settlement Agreement, the Required TCEH First

Lien Creditors (as defined in the Settlement Agreement) will direct the manner in which TCEH votes its $700 million intercompany claim against EFH. This conclusion is consistent with the New Plan—which expressly provides that it constitutes a separate plan of reorganization for each Debtor and envisions separate confirmation and consummation as to each of TCEH and EFH—and ensures that the TCEH first lien creditors are not prejudiced by their agreement to forego prosecuting a TCEH-Only Plan.

16.     These creative solutions address directly the concerns described above and their approval is in the best interests of creditors. Approval will avoid what could ultimately prove to be an unnecessarily complex competing plan process, while protecting the legitimate interests of TCEH's creditors by empowering a TCEH-only stakeholder to prosecute a TCEH-only plan (without unnecessary procedural delay) if the Debtors fail to expeditiously prosecute the New Plan as to TCEH or there are delays caused by the E-Side. Moreover, Paragraph 8 does not prejudice any stakeholder because any plan filed by the TCEH First Lien Ad Hoc Committee would (a) resolve only the claims of TCEH's creditors and (b) include the same substantive treatment for such claims as the Debtors' New Plan in compliance with the Settlement Agreement and PSA. In this way, a plan filed by the TCEH First Lien Ad Hoc Committee would be similar to a request by the Debtors to modify the New Plan as to the TCEH Debtors after solicitation, which would not require further disclosure or resolicitation if it did not materially and adversely affect creditors. *See In re Aleris Intern., Inc.*, No. 09-10478 (BLS), 2010 WL 3492664 at *32 (Bankr. D. Del. May 13, 2010) ("Further disclosure and resolicitation of votes on a modified plan is only required, however, when the modification materially *and* adversely affects parties who previously voted for the plan.") (emphasis in original). The proposed

Confirmation Scheduling Order is thus appropriate as well as necessary to ensure TCEH's prompt emergence from these protracted chapter 11 cases.

## **RESERVATION OF RIGHTS**

17.     As noted above, the proposed Confirmation Scheduling Order reflects a highly-negotiated compromise between the Debtors and the TCEH First Lien Ad Hoc Committee that was critical to the TCEH First Lien Ad Hoc Committee's determination not to file its own chapter 11 plan for the TCEH Debtors on May 1st.  If the Court denies the Scheduling Motion, in whole or in part, or if the TCEH First Lien Ad Hoc Committee otherwise determines that it is necessary or appropriate to file its TCEH-Only Plan (which has already been prepared and is ready to be filed), it reserves the right to request that the proposed Confirmation Scheduling Order be modified to provide that the New Plan and any TCEH-Only Plan should proceed as competing plans for the TCEH Debtors on a parallel confirmation timeline.

*[Remainder of page left intentionally blank]*

Dated: May 16, 2016
Wilmington, Delaware

/s/ Ryan M. Bartley

**YOUNG CONAWAY STARGATT &
TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew L. Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the TCEH First Lien Ad Hoc
Committee*