IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 <br> ) <br> ) Case No. 14-10979 (CSS) <br> ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) (Jointly Administered) <br> ) |
| Debtors. | ) Re: D.I. 8358 <br> ) <u>Hearing Date</u>: May 23, 2016 at 10:00 a.m. (ET) <br> ) <u>Objection Deadline</u>: May 16, 2016 at 4:00 p.m. <br> ) (ET) <br> ) <br> ) |

## OBJECTION OF UMB BANK, N.A. TO MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF THE DEBTORS' JOINT PLAN OF REORGANIZATION AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "PIK Notes" and such holders, the "PIK Noteholders") and the 9.75% Senior Notes due 2019, by and through its undersigned counsel, files this objection (the "Objection") to the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of the Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8358] (the "Scheduling Motion"). In support of this Objection, the Trustee respectfully submits as follows:

### PRELIMINARY STATEMENT[1]

1. The Scheduling Motion should be denied because the relief requested is premature and not in the best interests of E-Side creditors. Just ***three days*** after first

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Scheduling Motion or the New Plan (as defined herein), as applicable.

announcing to the Court and to the public that the Confirmed Plan would not be consummated, the Debtors filed the New Plan along with a Scheduling Motion, seeking entry of an aggressive schedule that would culminate in an early August confirmation hearing. The New Plan, however, provides no concrete end-game for E-Side creditors. Rather, similar to prior iterations of the Debtors' plans, it proposes several hypothetical pathways to exit these chapter 11 cases. Each pathway is complex, will require significant new money, and will require negotiations between creditor constituencies on both the E-Side and the T-Side that have yet to take place.

2. The proposed schedule clearly is designed to expedite confirmation of the T-Side Debtors' plan, which was fully negotiated by the Debtors and hard-wired into the PSA as the "Alternative Restructuring." The New Plan, as it relates to the E-Side estates, however, is merely conceptual and, to the knowledge of the Trustee, has no support from any E-Side unsecured creditors. To the Trustee's knowledge, the Debtors did not even attempt to negotiate an alternative restructuring with E-Side creditor constituencies until the last weeks of April 2016. Even then, the Debtors made no progress given the fact that 3 of the 4 largest E-Side unsecured creditors were contractually prohibited from negotiating an alternative E-Side plan of reorganization until the Merger Agreement was terminated 16 days ago.

3. The Trustee and the PIK Noteholders recognize that time is of the essence and are focused on negotiating a plan of reorganization that is actionable and has creditor support, rather than a mere hypothetical option, which is all the New Plan sets out. To be clear, the Trustee has no interest in unnecessarily delaying the plan confirmation process, but instead seeks to ensure that, before a scheduling order is entered, there is a viable plan that will maximize the likelihood of a consensual, and therefore faster, plan confirmation process.

4. To this end, the Trustee understands that negotiations between the significant E-Side unsecured creditors have restarted. But this exercise is complicated by the fact that an E-Side plan that will be acceptable to the PIK Noteholders—who are now deemed impaired by the Debtors—will require a significant capital raise (in the range of $2-$3 billion) to reduce EFIH secured debt obligations. Potential capital sources will have to evaluate the investment in light of, among other things, recent developments with the Texas Public Utility Commission, the Internal Revenue Service, and Oncor's revised financial projections.[2] It is patently unreasonable for the Debtors (or any of the EFH or EFIH unsecured creditors) to expect to have commitments of this magnitude lined up by the Debtors' requested disclosure statement hearing in mid-June.

5. Further, the Scheduling Motion disregards the fact that the Debtors no longer possess the *exclusive* right to propose a plan of reorganization for any of the Debtors' estates. By prematurely attempting to jump-start the plan confirmation process without a viable plan for the E-Side Debtors, the Debtors are trying to head off competing plans that may interfere with the schedule required by the T-Side creditors. At this stage of these cases, E-Side unsecured creditors are entitled to determine whether it is in their best interests to have the Debtors (i) function as a plan proponent for their estates and (ii) enable the T-Side Debtors to utilize EFH tax attributes. Instead of approving the Scheduling Motion, the Trustee submits that the Court should conduct a status conference in early June 2016 to allow the Debtors and both the E-Side and T-Side creditors to report to the Court on progress concerning the New Plan or other potential plans of reorganization. If the Court is inclined to enter a scheduling order at this time,

---

[2] On May 9, 2015, the Debtors filed revised Oncor financial projections as an exhibit to the Disclosure Statement (as defined below) [D.I. 8423-6]. The revised projections reflect, among other things, bonus depreciation elections for 2016-2019 that were not included in the Oncor financial projections attached to the disclosure statement for the Confirmed Plan [D.I. 6124-6]. By taking bonus depreciation in 2016-2019, Oncor would accelerate tax savings for those years which will result in reduced cash distributions from Oncor to EFH and EFIH during those time periods.

3

however, the proposed Confirmation Scheduling Order is patently unreasonable and should be substantially revised. The proposed deadline to file discovery requests has already lapsed, and the schedule does not provide sufficient time to conduct discovery on the issues that may become relevant, depending on the plan ultimately pursued by the Debtors or other parties.

## **RELEVANT BACKGROUND**

6. The Debtors' exclusive period to file a plan of reorganization expired on October 29, 2015 [D.I. 4634]. Prior to the expiration of the exclusive period, however, the Debtors filed, and on December 7, 2015, the Court entered an order confirming, the *Debtors' Sixth Amended Joint Plan of Reorganization* [D.I. 7187] (the "Confirmed Plan") and approving the settlement of litigation claims [D.I. 7243] (the "Settlement Agreement").[3]

7. At a status conference on April 28, 2016, the Debtors informed the Court and the public that the Confirmed Plan would not be consummated and that the Debtors would "quickly pivot" to an alternative restructuring plan [D.I. 8352].

8. On May 1, 2016, a Plan Support Termination Event occurred pursuant to the PSA. On the same day, without any advance notice to the Trustee, the Debtors filed: (i) a new joint plan of reorganization (as amended, the "New Plan") [D.I. 8355], (ii) a related disclosure statement [D.I. 8356], (iii) the Scheduling Motion, and (iv) a motion seeking approval of the disclosure statement [D.I. 8357].

9. In the Scheduling Motion, the Debtors request that the Court enter an order approving certain deadlines (some that have already passed) in order to facilitate an August 2016 confirmation hearing. On May 9, 2016, the Trustee sent a letter to the Debtors, served on the

---

[3] In connection with seeking confirmation of the Confirmed Plan, on August 10, 2015, the Debtors filed a number of agreements related to the implementation of the Confirmed Plan, including the *Motion of Energy Future Holdings Corp., et al., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248] (the "PSA Motion," and such plan support agreement, the "PSA"). On September 18, 2015, the Court entered an order approving the PSA Motion [D.I. 6097].

4

"discovery" e-mail list, stating that the Trustee would not adhere to the Debtors' unilaterally-imposed discovery deadlines, including a purported deadline to serve discovery by May 9, 2016, prior to the parties having an opportunity to object and be heard on the proposed Scheduling Motion.

10. On May 10, 2016, the Debtors filed an amended version of the New Plan [D.I. 8421] and related disclosure statement (the "Disclosure Statement") [D.I. 8423].

## ARGUMENT

11. By the Scheduling Motion, the Debtors seek entry of a Confirmation Scheduling Order imposing an expedited and compressed 80-day schedule to complete all fact and expert discovery related to the New Plan, leading to a confirmation hearing to begin on August 1, 2016. The Debtors seek this schedule notwithstanding that (i) the New Plan is merely a "placeholder" that is not supported by any E-Side unsecured creditors and is missing significant terms and information (e.g., sources of capital) and (ii) E-Side creditors or other parties in interest may desire to file their own chapter 11 plans.

### I. THE PROPOSED SCHEDULE IS PREMATURE AND SHOULD BE DENIED

12. The Court should deny the Debtors' request to enter a confirmation schedule at this time. There is no compelling reason to proceed with an expedited confirmation discovery schedule when, by the Debtors' own admissions, the proposed treatment for E-Side creditors in the New Plan is far from settled. The New Plan provides for either (i) an "Investment Scenario" whereby certain yet-to-be-identified third parties and/or creditor constituencies would provide new money to be used to satisfy the claims of E-Side creditors or (ii) a "Standalone Scenario" whereby the equity of Reorganized EFH would be distributed to E-Side creditors in a yet-to-be-determined amount. *See* Disclosure Statement at 9.

13. While the Trustee does not object to the imposition of appropriate deadlines to conduct discovery at the proper time, the parties cannot engage in meaningful discovery, or even determine whether and what discovery is necessary, before knowing which plan the Debtors will choose to pursue and the details of such plan. In the "Investment Scenario," the Trustee, among others, will want to analyze, and no doubt have questions regarding, the identity of any third party investor(s) and the amount, terms and conditions of any such investment. In the "Standalone Scenario," at the very least, the value of Reorganized EFH is likely to be hotly contested.

14. Moreover, the Debtors' exclusivity has expired and other constituencies may file their own plans. The Trustee currently is working with the principal E-Side unsecured creditor constituencies on formulating a stand-alone plan of reorganization for the E-Side Debtors which would be premised upon a multi-billion dollar capital raise. As these negotiations may result in such constituencies sponsoring their own plan of reorganization, the most efficient path towards confirmation is a single schedule allowing all plans that may be filed to proceed simultaneously and pursuant to a unified schedule. That is not possible under the proposed Confirmation Scheduling Order.

15. This is not the first time the Debtors have prematurely attempted to impose a plan scheduling order. As the Court recognized in May 2015 after the Debtors filed a similar dual-track plan, it makes little sense to consider a schedule for a plan when the creditor constituencies are best served by negotiating the terms of such plan:

> THE COURT: I'm not at this time going to enter a discovery or scheduling order in connection with confirmation of the plan for several reasons. First, while it has been the case to, I don't even say dual track, multiple track different things going on in this case in the last year, it has been challenging, time-consuming and expensive to perform those tasks.

> We have an opportunity here with mediation and also with active exploration of an alternative transaction, if you will, to I think appropriately focus on those issues more directly and delay, at least for some period of time, this parallel tracking of litigation and discovery, at least as it applies to confirmation.
>
> I think it's appropriate and important to give the mediation full opportunity to succeed, to allow the parties to focus on other transactions to the extent that makes sense. I mean, they may not make sense. They may fall apart. They may never come together. I don't know. But there is some serious work being done in that end and I think it appropriate to allow that to play out a little bit.
>
> Also, we don't have an approved disclosure statement and we're sort [of] putting the cart before the horse here in starting confirmation litigation over a plan where we don't even have a disclosure statement approved.

See 5/4/2015 Hr'g Tr. at 103:10-104:8 [D.I. 4477].

16. Similarly, by proceeding on the Debtors' proposed schedule now, professional fees and costs will ramp up quickly as parties prepare for discovery, litigation, and a potential contested disclosure statement and plan confirmation process. Prudence and efficient use of resources dictate allowing the economic stakeholders a reasonable opportunity to engage in discussions and potentially formulate a restructuring that is consensual among creditors, rather than contested.

## II. THE PROPOSED SCHEDULE IS OTHERWISE UNREASONABLY COMPRESSED

17. Even if the Court were inclined to enter a scheduling order related to the New Plan at this time, the various discovery deadlines contained in the Debtors' proposed Confirmation Scheduling Order are unreasonably and unnecessarily compressed.

18. Among other things, the Debtors proposed that all parties be required to serve any discovery by May 9, 2016—just *8 days* after the first version of the New Plan was filed, *one day prior* to the filing of the amended New Plan, and *two weeks prior* to the hearing on the Scheduling Motion.

19. The Debtors' attempt to impose retroactive discovery deadlines on the parties in these cases, prior to entry of any court-approved scheduling order, is improper. At a minimum, any discovery deadlines must provide the parties with sufficient time to analyze the New Plan and craft appropriate discovery requests. This was not possible by May 9, and it is still not possible to craft meaningful discovery requests today. As discussed above, the scope of appropriate discovery can only be determined once it is clear which path the Debtors choose to pursue for the E-Side. The deadline to submit discovery requests should not expire until a plan choosing a specific pathway forward for the E-Side estates is filed.[4]

20. Moreover, the Debtors' proposed deadlines for the conclusion of fact and expert discovery, June 30, 2016 and July 20, 2016, respectively, are inherently unreasonable because they are driven by the Debtors' retroactive discovery request deadline. The amount of time permitted for fact and expert discovery must take into account the specific facts of whichever plan the Debtors choose to pursue for E-Side creditors and should not be set before they make that choice.

21. The Debtors assert that, in light of prior discovery and resolution of certain plan issues, there are "only" three open issues requiring discovery: (i) E-Side valuation, (ii) allocation of equity in reorganized EFH, and (iii) satisfaction of the Bankruptcy Code's requirements for a confirmable plan. *See* Scheduling Mot. at ¶ 36. Even if the Debtors were correct, these issues are critical and will spur significant discovery and litigation absent consensus among E-Side creditors.

22. These are not, however, the only issues affecting an E-Side restructuring. The New Plan raises additional issues, including whether the T-Side restructures in a taxable

---

[4] If the Court were inclined to enter a scheduling order, the Trustee also requests that it be deemed a "Participating Party" under the terms of the order. *See* Confirmation Scheduling Order at ¶ 2.

transaction or a non-taxable spin-off and the potential tax consequences to the E-Side in either of those scenarios. While the New Plan contemplates a "tax-free spin" of TCEH, the Debtors propose that the T-Side and E-Side will enter into a tax matters agreement, pursuant to which the T-Side would obtain a tax basis step up of billions of dollars while the E-Side would incur any related tax obligations. In that scenario, if the amount of gain taken by the T-Side exceeds the amount of NOLs available at EFH, the E-Side could incur substantial tax liability. Moreover, the New Plan does not prohibit certain actions, either pre-restructuring by the TCEH first lien creditors or post-restructuring by the Reorganized TCEH shareholders, that could require a taxable restructuring of the T-Side, thereby potentially triggering billions of dollars of taxable gain for EFH, potentially far in excess of the existing NOLs.

23. These issues related to potential E-Side tax liability created by the form of the T-Side restructuring could require significant discovery. The value of TCEH may be critical to understanding the amount of gain taken by the T-Side and any potential resulting tax liabilities to the E-Side, and determining such valuation may require significant fact and expert discovery. Moreover, discovery may also be necessary to determine how to allocate appropriately any such tax risk.

24. Finally, although the New Plan contemplates that all of the Debtors will emerge from bankruptcy at the same time, the Debtors request that the Court allow the T-Side Debtors to proceed with confirmation of a T-Side-only plan if an E-Side plan cannot be confirmed on the schedule set forth in the Confirmation Scheduling Order. *See* Confirmation Scheduling Order at ¶ 8; Scheduling Mot. at ¶¶ 38-39. As described above, the T-Side Debtors' exit from bankruptcy, however, will undoubtedly impact the E-Side Debtors, including by potentially exposing the E-Side Debtors to substantial tax liabilities. The Court should not allow confirmation of a T-Side

plan to move forward independent of an E-Side plan absent an undertaking by E-Side and T-Side creditor representatives to resolve such tax matters. Keeping the restructuring of the E-Side Debtors and the T-Side Debtors on the same path, for now, will encourage constituencies on each side to negotiate and search for common ground.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

**WHEREFORE**, for the reasons set forth in this Objection, the Trustee respectfully requests that the Court deny the Scheduling Motion and grant such other and further relief as the Court deems appropriate under the circumstances.

Dated: May 16, 2016
Wilmington, Delaware

| | |
|---|---|
| **AKIN GUMP STRAUSS HAUER & FELD LLP**<br>Ira S. Dizengoff (admitted *pro hac vice*)<br>Abid Qureshi (admitted *pro hac vice*)<br>One Bryant Park<br>New York, NY 10036<br>Telephone:    (212) 872-1000<br>Facsimile:      (212) 872-1002<br>Email:    idizengoff@akingump.com<br>            aqureshi@akingump.com<br><br>Scott L. Alberino (admitted *pro hac vice*)<br>Joanna F. Newdeck (admitted *pro hac vice*)<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>Telephone:    (202) 887-4000<br>Facsimile:      (202) 887-4288<br>Email:    salberino@akingump.com | By:  */s/ Raymond H. Lemisch*<br>**KLEHR HARRISON HARVEY BRANZBURG LLP**<br>Raymond H. Lemisch (No. 4204)<br>919 Market Street, Suite 1000<br>Wilmington, DE 19801<br>Telephone: (302) 426-1189<br>Facsimile: (302) 426-9193<br>E-mail: rlemisch@klehr.com<br><br>**FOLEY & LARDNER LLP**<br>Harold L. Kaplan (admitted *pro hac vice*)<br>Mark F. Hebbeln (admitted *pro hac vice*)<br>Lars A. Peterson (admitted *pro hac vice*)<br>321 North Clark Street, Suite 2800<br>Chicago, IL 60654-5313<br>Telephone: (312) 832-4500<br>Facsimile: (312) 832-4700<br>Email: hkaplan@foley.com<br>mhebbeln@foley.com<br>lapeterson@foley.com<br><br>Barry G. Felder (admitted *pro hac vice*)<br>Jonathan H. Friedman (admitted *pro hac vice*)<br>90 Park Avenue<br>New York, NY 10016<br>Telephone: (212) 682-7474<br>Facsimile: (212) 687-2329<br>E-mail: bgfelder@foley.com<br>jfriedman@foley.com |

*Co-Counsel for UMB BANK, N.A., as Trustee*