**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: D.I. 8358, 8449, 8450, 8451, 8452, 8453, 8454, 8455, 8456, 8457, 8461** |

**DEBTORS' OMNIBUS REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER SCHEDULING CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION OF DEBTORS' JOINT PLAN OF REORGANIZATION AND THE APPROVAL OF DEBTORS' DISCLOSURE STATEMENT**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this omnibus reply (this "Reply") in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8358] (the "Scheduling Motion") and in response to the objections (collectively, the "Objections" and the parties to the Objections, the "Objectors")[2] and statements and responses (the "Statements")[3] related thereto.[4]

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The Objections were filed by (a) The Bank of New York Mellon, in its capacity as the PCRB Trustee, and The Bank of New York Mellon Trust Company, N.A., in its capacity as the EFCH 2037 Notes Trustee [D.I. 8449] (the "BNY Objection"); (b) Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy [D.I. 8450] (the "Fenicle and Fahy Objection"); (c)
(Continued…)

## PRELIMINARY STATEMENT

1. The Objections to the Scheduling Motion offer no significant argument why this Court should refuse to enter the Debtors' Proposed Confirmation Scheduling Order. Instead, the Objections illustrate that, absent entry of a reasonable scheduling order, the Debtors and several key stakeholders who support the New Plan will find themselves stuck in some purgatory while waiting for elusive consensus to emerge from the E-Side creditors—something that has not materialized for several years. As the Court has already seen in this case, a reasonably achievable schedule with real deadlines puts the onus on the Debtors first and foremost but will also encourage creditors to focus on a timely emergence, something that inures to the benefit of one and all. In contrast, the failure to set a schedule now will unnecessarily waste estate resources and postpone the Debtors' eventual emergence from bankruptcy. Entering the proposed schedule is therefore in the best interests of the Debtors and their creditors, and the Scheduling Motion should be granted.

2. The Objections fall into the following categories: (a) statements that the proposed schedule does not provide sufficient time for discovery; (b) assertions that the Court should not

---

Contrarian Capital Management, LLC [D.I. 8451] (the "Contrarian Capital Objection"); (d) NextEra Energy, Inc. [D.I. 8452] (the "NextEra Objection"); (e) Certain Funds and Accounts Advised or Sub-Advised by Fidelity Management & Research Company or its Affiliates [D.I. 8454] (the "Fidelity Objection"); (f) the EFIH Second Lien Indenture Trustee [D.I. 8456] (the "EFIH 2nd Lien Objection"); (g) The American Stock Transfer & Trust Company, LLC, as successor trustee to the Bank of New York Mellon Trust Company, N.A.[D.I. 8457] (the "EFH Indenture Trustee Objection"); and (h) UMB Bank, N.A., as Indenture Trustee [D.I. 8461] (the "UMB Bank Objection").

[3] The Statements were filed by (a) the EFH Official Committee [D.I. 8453] (the "EFH Committee Statement"); and (b) The TCEH First Lien Ad Hoc Committee [D.I. 8455] (the "TCEH First Lien Statement").

[4] Capitalized terms used but not defined herein shall have the meaning set forth in the Scheduling Motion.

enter *any* schedule until disputed matters are resolved and/or until E-Side creditors have had yet more time to pursue alternative restructurings; (c) claims that the New Plan is not sufficiently detailed such that it prevents the parties from meaningfully engaging in discovery; (d) complaints that the May 9, 2016 deadline to serve written discovery is retroactive and inappropriate; and (e) premature arguments that the New Plan is not confirmable or will fail.

3. As to the first category of objections, the Debtors proposed a schedule that is consistent with their obligations to the TCEH First Lien Creditors under the PSA, which this Court approved last year. That schedule affords 93 days to complete discovery, from May 2, 2016 to August 1, 2016, and more than what any applicable rule requires for objecting to the Disclosure Statement and the New Plan. Not only is the schedule consistent with the Bankruptcy Rules, but it more than adequately provides all parties with a full and fair opportunity to investigate the few remaining issues in these cases. And that point is critical. Despite the failure of the Confirmed Plan to consummate, the issues in this case have been enormously truncated. The number of dollars is large but the number of unresolved issues is decidedly not. While the Objectors would have the Court believe that their constituencies have never seen the proposals detailed in the New Plan before, the New Plan builds on years of work and a mountain of existing discovery. The remaining issues regarding E-Side valuation and tax matters are discrete, especially in light of the vast amount of material already available to creditors on these subjects.

4. As to the second and third categories, the history in these cases proves that a confirmation scheduling order will assist the parties in focusing on those issues that are most relevant and ultimately drive consensus and facilitate resolution of disputed issues. Delaying confirmation proceedings for the New Plan while the E-Side creditors attempt to craft alternative

restructurings will undoubtedly drain estate resources and hinder emergence from bankruptcy—to the detriment of all interested parties, including the operating businesses on the T-Side, which employ the vast majority of the Debtors' employees. The Debtors have been in bankruptcy for over two years and their administration of these estates costs hundreds of millions of dollars in professional fees. Allowing E-Side creditors the opportunity to delay will only prolong those expenses and increase the risk of competing plans—a prospect that would greatly increase professional fees.

5. As to the fourth category, the Debtors attach a revised Proposed Confirmation Scheduling Order as **Exhibit A** hereto, mooting concerns regarding retroactive deadlines and adjusting certain other discovery deadlines to address Objector concerns.

6. And as to the fifth category, any assertions that the New Plan is not confirmable or is otherwise infeasible are more appropriately addressed at the Confirmation Hearing, not in connection with the Scheduling Motion, and should therefore be overruled.

7. The Court should not allow the E-Side creditors' consistent inability to achieve consensus to reign supreme. The Proposed Confirmation Scheduling Order provides a path forward and will require the E-Side creditors to confront the choices before them. This Court should overrule the Objections and, as it has in the past, set a confirmation schedule that drives the parties toward emergence from these cases.

## ARGUMENT

### I. THE PROPOSED SCHEDULE IS REASONABLE AND PROVIDES SUFFICIENT TIME FOR PARTICIPATING PARTIES TO ANALYZE THE NARROWED SET OF MATTERS AT ISSUE.

#### A. The Proposed Schedule Adequately Provides Discovery into the Narrowed Set of Issues.

8. Only one T-Side stakeholder, holding claims of $881 million out of a total $7.654 billion of TCEH unsecured debt, objected to the proposed schedule.[5] This is because the Settlement Agreement and PSA resolved nearly every litigable issue on the T-Side, and both survived termination of the Confirmed Plan. As a result, "confirmation of a TCEH Plan should be swift and uneventful,"[6] and discovery will be very narrowly targeted on a limited set of issues, largely expert-focused, and easily accomplished within the deadlines proposed by the Debtors.

9. The few issues remaining in connection with confirmation of the New Plan, as acknowledged by the Objectors, are (a) E-Side valuation; (b) the tax matters agreement and treatment of net operating losses; (c) Bank of New York Mellon's ("BNYM") objection to its treatment with regard to the TCEH First Lien Deficiency Waiver; and (d) whether the Amended Plan satisfies the Bankruptcy Rules' requirements.

10. ***First***, as to valuation, the Debtors already produced massive amounts of discovery in connection with Legacy discovery and confirmation of the Confirmed Plan. At most, the Debtors need only collect material covering the last several months from a subset of previously-

[5] The Bank of New York Mellon's objection is addressed *infra*.

[6] TCEH First Lien Statement ¶ 2.

identified custodians and apply a subset of previously-identified search terms.[7] The Debtors' efforts to collect material relating to E-Side valuation are already in process, and documents are already under review.

11. Moreover, the Debtors have marketed their economic interests in Oncor, the focus of any E-Side valuation analysis, for more than two years, including in connection with pre-petition restructuring efforts and formal post-petition sales processes during the stalking horse and bidding procedures periods. The Debtors' economic interests in Oncor have been some of the most heavily marketed assets in or out of chapter 11 over the past three years and the E-Side creditors' highly-skilled professionals are extremely familiar with Oncor projections. Any additional analysis regarding Oncor's value will build on projections already made available to creditors over the past three years by Oncor management, and updated projections have been provided.

12. As the Objectors concede, the "E-Side restructuring concerns holding companies, not an operating business"[8] or a massive conglomerate of operating entities, rendering required valuation analysis less complex than in other large bankruptcies. Oncor is highly regulated and bears the hallmarks of a regulated utility—steady performance with relatively low levels of volatility. Moreover, the Debtors recognize that valuation issues may depend more heavily on expert testimony and, accordingly, included substantial time for expert reports and depositions in the Proposed Confirmation Scheduling Order.

[7] Tellingly, discovery already served by the EFIH 1st Lien creditors reflects that the main focus of discovery will be valuation.

[8] *See* Fidelity Objection ¶ 8.

13. ***Second***, the disputed tax issues are well-known and should require minimal additional discovery. For example, the parties may analyze treatment of net operating losses and the potential tax basis step up for the T-Side contemplated in the New Plan.[9] These issues are hardly new, yet the Objectors cite the mere existence of unresolved tax matters as a reason to halt confirmation proceedings altogether and not enter *any* confirmation schedule.[10] The more logical approach, as this Court has previously recognized, is to commit the parties to a schedule that brings parties to the negotiating table, facilitates resolution of unresolved issues, and expedites emergence.

14. The Proposed Confirmation Scheduling Order, which allows for 93 days of discovery, furthers those goals while providing ample opportunity for key stakeholders to investigate the limited remaining issues and prepare for the Confirmation Hearing.

**B. The Proposed Confirmation Scheduling Order is Consistent with and More Generous than the Bankruptcy Rules Require.**

15. The proposed schedule also provides 30 days between service of the Disclosure Statement on May 1, 2016 and the deadline for objections to the Disclosure Statement on May 31, 2016, and 45 days between service of the Disclosure Statement on May 1, 2016 and the date of the Disclosure Statement hearing on June 15, 2016. These timeframes exceed the requirements of the Bankruptcy Rules and Local Bankruptcy Rules.[11] The proposed schedule

[9] *See* NextEra Objection ¶ 14.

[10] *See* NextEra Objection ¶ 14; Contrarian Capital Objection ¶ 13; EFIH 2nd Lien Objection ¶ 4.

[11] Fed. R. Bankr. P. 2002(b) (requiring 28 days' notice of the time for filing objections and the hearing to consider approval of the disclosure statement, and for filing objections and the hearing to consider confirmation of a chapter 11 plan); Fed. R. Bankr. P. 3017(a) (requiring at least 28 days' notice to consider the disclosure statement and any objections or modifications thereto); Bankr. D. Del. R. 3017-

(Continued…)

also provides more than adequate time after service of notice of the Confirmation Hearing to object to the New Plan and prepare for the Confirmation Hearing, and complies with all applicable rules.

16. Nonetheless, the Objectors complain now—just as they did each time the Debtors previously moved for a confirmation schedule—that these deadlines are too swift, depriving them of due process and sufficient time for necessary discovery. But as this Court previously recognized in overruling similar objections, even though the requested schedule may be swift, it nonetheless provides more time than required under the Bankruptcy Rules.[12] Further, as the Court is aware, the Debtors have consistently hit their requested discovery deadlines and are prepared to meet their burden to do so now.[13]

17. In addition, several Objectors complain that the proposed deadline to serve written discovery was May 9, 2016, prior to the hearing on the Scheduling Motion. Attached hereto as **Exhibit A** is an amended Proposed Confirmation Scheduling Order pushing that deadline to May 25, 2016, and setting the deadline for Participating Parties to respond and object to June 1, 2016. By this time, the parties will have had weeks to review and analyze the New Plan and Disclosure Statement, and assess discovery needed. Notwithstanding these revised

1(a) (requiring the hearing date to be at least 35 days following service of the disclosure statement and the objection deadline to be at least 28 days from service of the disclosure statement).

[12] *See* 8/25/15 Hr'g Tr. at 148:9-12 ("Also, we need to focus on the fact that we are even with a truncated schedule from what was originally put in place beyond the normal default rules about how much time is usually provided in connection with confirmation . . . .").

[13] 8/25/15 Hr'g Tr. at 152:6-10 ("But the burden of not fulfilling that effort is really going to lie at the feet of the parties who have the burden of responding to all the discovery that's going to be propounded, and that's the debtors and the plan proponents.").

deadlines, the Debtors will still complete fact and expert discovery by June 30, 2016, and August 1, 2016, respectively.

**C. The Proposed Schedule Provides Sufficient Time for Solicitation and Meaningful Opportunity to Consider and Vote on the New Plan.**

18. BNYM asserts that the anticipated solicitation period is "an illusory formality that will deprive creditors of any meaningful opportunity to review the Plan and Disclosure Statement . . . and then vote on and object to the Plan."[14] Not so. For the avoidance of doubt, the Debtors intend to commence solicitation of votes on the New Plan no later than 10 days after approval of the Disclosure Statement. The Debtors have requested a Disclosure Statement Hearing date of June 15, 2016, which means that the Debtors intend to commence solicitation of the approved Disclosure Statement on or about June 27, 2016. The Debtors are also requesting an objection deadline on the New Plan of August 3, 2016— approximately 38 days from the latest date by which solicitation on the Disclosure Statement is projected to commence.[15] Furthermore, the Debtors are requesting the Confirmation Hearing on the New Plan to commence on August 17, 2016 (subject to the Court's availability)—approximately 52 days from the latest date by which solicitation on the Disclosure Statement is projected to commence. This schedule provides *ample* time for parties to receive and evaluate the solicitation materials before voting on the New Plan. Moreover, by the proposed date of the Disclosure Statement Hearing, the Debtors will be positioned to provide more clarity as to which of the possible E-

[14] BNYM Objection ¶ 15.

[15] The Debtors anticipate that the solicitation period reflected in Footnote 14 of the Scheduling Motion will be revised in a forthcoming amended proposed Disclosure Statement order to reflect an August 3, 2016, voting deadline.

Side transaction structures is the preferred path forward, which may serve to inform Holders of E-Side Claims and Interests as they evaluate the solicitation materials.

### D. The Proposed Document Production Deadlines Do Not Unfairly Prejudice Creditors.

19. BNYM additionally complains that the proposed schedule only provides five days between the Debtors' document production deadline and the deadline for the filing of motions to compel.[16] BNYM contends it is unfair to provide the Debtors with forty-four days to review and produce documents while creditors will only have five days to review.

20. Consistent with the Debtors' practice throughout these chapter 11 proceedings, the Debtors will produce documents on a rolling basis, and expect to produce a substantial majority of documents prior to the full completion deadline. Nonetheless, to alleviate BNYM's concerns, the Debtors have adjusted the proposed deadline to file a motion to compel to provide parties with seven days between completion of production and the filing deadline.[17] This seven-day period is the same amount of time allotted in the schedule governing the Confirmed Plan, and provides more than enough time to evaluate the need for and serve any motions to compel.

## II. SETTING A CONFIRMATION SCHEDULE WILL DRIVE NEGOTIATION BETWEEN KEY STAKEHOLDERS.

21. The Objectors also argue against entry of the proposed schedule—in fact, *any* schedule—because they believe discovery should not be taken until the details of the New Plan are fully developed. However, not only are details of the New Plan sufficiently clear, but as the

---

[16] BNYM Objection ¶ 7.

[17] *See* Exhibit A.

history of these chapter 11 proceedings has demonstrated, the implementation of a strict confirmation schedule will be the only thing that drives key stakeholders to consensus.

22. The Objectors understand that the New Plan provides for alternative E-Side scenarios: (a) a standalone scenario in which E-Side claims are converted into Reorganized EFH Common Stock; (b) an investment scenario in which certain investors will buy Oncor through a new-money contribution; and (c) a REIT conversion. Although it is not yet determined which path the Debtors will take, the terms of each path are sufficiently definite, whether agreeable to key stakeholders or not, and warrant entry of the Proposed Confirmation Scheduling Order.

23. Further, none of these scenarios is new or novel to any party in interest. To the extent the Objectors require additional information or wish to propose alternative restructuring proposals or amendments to the New Plan, past experience demonstrates that setting a confirmation schedule will spur action and drive consensus on the New Plan. For example, the Court entered a schedule for confirmation of the Confirmed Plan on July 2, 2015, before the final shape of the Confirmed Plan crystallized. At the time the Debtors sought, and this Court entered, an expedited confirmation schedule in 2015, there were, as here, several alternative plan proposals. While many creditors argued against entry of the expedited schedule, that schedule drove negotiations and led to consensus on the Confirmed Plan. The Debtors request the Proposed Confirmation Scheduling Order to achieve similar consensus.

24. The lack of any schedule threatens to bring this bankruptcy to a complete standstill while creditors independently explore restructuring alternatives in the hope that they lead to a competing plan of reorganization. This hypothetical plan might not qualify as an Alternative Restructuring under the PSA and therefore might not have the same support that the New Plan enjoys. Instead of saving the Debtors time and money, such a distraction would truly

cause these proceedings to regress and postpone, perhaps indefinitely, the Debtors' emergence from bankruptcy.

25. While UMB Bank quotes this Court's ruling from May 4, 2015 declining to set a confirmation schedule on a parallel track with litigation discovery to give mediation a full opportunity,[18] the circumstances the Debtors and their key stakeholders face today are drastically different than in May 2015. Since that time, the Debtors and several creditors entered into the PSA, which compels significant stakeholders to support the New Plan and a schedule providing for confirmation within 90 days of filing of an alternative plan. In addition, this Court approved the Settlement Agreement, which, as discussed in the Scheduling Motion, resolved nearly all claims against the Debtors, TCEH First Lien Creditors, the Sponsors, and the Debtors' directors and officers. Thus, unlike May 2015, the specter of intense, multifaceted litigation occurring parallel to confirmation proceedings is not a risk the parties face at this time.

26. Instead, the parties are focused solely on confirmation, and the Proposed Confirmation Scheduling Order will keep the parties on that path. As UMB Bank admits in its Objection, "[k]eeping the restructuring of the E-Side Debtors and the T-Side Debtors on the same path . . . will encourage constituencies on each side to negotiate and search for common ground."[19] That is exactly what Debtors request in the Scheduling Motion. Entry of the Proposed Confirmation Scheduling Order will not impede restructuring discussions—to the contrary, it will facilitate those discussions by imposing structure and reliable deadlines on the Disclosure Statement and Confirmation Proceedings.

[18] *See* UMB Bank Objection ¶ 15.

[19] UMB Bank Objection ¶ 24.

## III. THE REMAINING SPECIFIC OBJECTIONS SHOULD BE OVERRULED.

### A. Fenicle and Fahy's Objection Should be Overruled Because Treatment of the EFH Asbestos Claimants Has Not Changed.

27. EFH Asbestos Claimants Fenicle and Fahy maintain that the schedule provides insufficient time for discovery because they believe treatment of the EFH Asbestos Claims has changed "materially and significantly from the Original Plan to the New Plan."[20] False. EFH Asbestos Claims are classified in the New Plan as Class A3–Legacy General Unsecured Claims Against the EFH Debtors.[21] The treatment of Class A3 Claims in the New Plan is identical to the treatment in the Confirmed Plan, and both make clear that asbestos-related Class A3 claims will be reinstated.[22]

28. Additionally, the Debtors' pending motion to establish a supplemental bar date does not justify rejecting the Proposed Schedule.[23] The Debtors' proposed supplemental bar date has absolutely nothing to do with the proposed confirmation schedule. The Debtors are simply seeking through the supplemental bar date motion to establish a supplemental bar date for a set of potential claimants who are arguably entitled to but did not receive actual notice of the general bar date. The Court will address Fenicle and Fahy's objections to the supplemental bar date in that context, but the resolution of those objections will have no effect on the treatment of the EFH Asbestos Claims.

---

[20] Fenicle and Fahy Objection ¶ 10.

[21] See Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et. al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 8421] ¶ 223 ("'Legacy General Unsecured Claim Against the EFH Debtors' means any Claim against the EFH Debtors derived from or based upon liabilities based on asbestos or qualified post-employment benefits relating to discontinued operations of the EFH Debtors.").

[22] *Compare id*. at 48-49 *with* Confirmed Plan [D.I. 7244-1] at 48-49.

[23] Fenicle and Fahy Objection ¶¶ 11-12.

29. As Fenicle and Fahy's position is unchanged under the New Plan, Fenicle and Fahy's need for additional discovery is minimal—especially in light of the fact that they previously served discovery, the Debtors responded, and several depositions were held. The Court has previously recognized that the unimpaired EFH Asbestos Claimants do not require the same level of information that an impaired creditor may.[24] To the extent Fenicle and Fahy identify discovery to which they are entitled that has not already been provided, the Debtors' Proposed Schedule provides adequate time to address it.

**B. BNYM is Not Entitled to Duplicative Discovery on Settled Issues.**

30. Likewise, the BNYM objection is discrete and should be overruled. Despite its objection that the Proposed Schedule "robs" it of "a fair opportunity to conduct discovery,"[25] the only specific discovery topic BNYM identifies is "the settled claims, including, without limitation, which TCEH Debtor(s) owned the settled claims and the amount for which each claim was settled."[26] But these topics were the subject of extensive document and deposition discovery last year leading up to this Court's approval of the Settlement Agreement.

31. Indeed, BNYM's recent document requests served on the Debtors and the TCEH Disinterested Director on May 9, 2016 are duplicative of discovery served in connection with confirmation of the Confirmed Plan. For example, BNYM once again asks for correspondence between the Debtors and any PSA Parties regarding treatment of the PCRBs in the Settlement

[24] *See* 9/21/15 Hr'g Tr. (Disclosure Statement) at 58:6-11 ("And again, to the extent these creditors are unimpaired, they're not entitled to vote, they have an interest in the disclosure statement, but it certainly doesn't rise to the level of what someone who is voting yea or nay on a plan might have an interest in. It is a legitimate interest. I think it's adequately taken care of.").

[25] BNYM Objection ¶ 4.

[26] *Id.* ¶ 5.

Agreement or any chapter 11 plan, presentations exchanged by Disinterested Directors as provided in the PSA Motion, correspondence describing the justification for not permitting PCRB Claims to share in the waiver of the TCEH First Lien Deficiency Claims, drafts of the Third Amended Plan, un-redacted standing motions, calculations of the Allowed amount of the TCEH Settlement Claim, and documents describing ownership of the TCEH First Lien Investigation Claims.[27] These materials, to the extent they were properly discoverable, were produced in 2015.

32. Likewise, any new effort by BNYM to take deposition testimony would be equally duplicative of previous discovery. For example, at Hugh Sawyer's September 24, 2015 deposition, BNYM's counsel questioned Mr. Sawyer at length, in questioning covering 96 transcript pages, largely on how the settlement was negotiated and calculated, and on the treatment of the PCRB Claims under the Plan.[28] The intercompany claims settlement was approved and has not changed. And the treatment of the PCRB claims under the New Plan is identical to the treatment under the proposed Plan on which discovery has already been taken, and on which the parties went to trial (before settlement of that issue during trial). There is no need for any further discovery, much less significant discovery, relating to the subjects BNYM raises.

---

[27] *Compare* Request to the Debtors for the Production of Documents Propounded by the Bank of New York Mellon, as Indenture Trustee, and the Bank of New York Mellon Trust Company, N.A., as Indenture Trustee, Request Nos. 1, 3-11 (attached hereto as **Exhibit B**) *with* Request to the Debtors for the Production of Documents Propounded by the Bank of New York Mellon, as Indenture Trustee, and the Bank of New York Mellon Trust Company, N.A., as Indenture Trustee (attached hereto as **Exhibit C**).

[28] *See* 2015-09-24 Sawyer Dep. Tr. at 594-688 (portions of which were submitted as deposition designations at the confirmation hearing for the Confirmed Plan).

33. BNYM nevertheless argues that duplicative discovery should be allowed because "[t]he proceedings relating to confirmation of the New Plan are a different contested matter than the hearing on the prior plan."[29] This is truly a distinction without a difference. This attempted distinction does not entitle BNYM to request the same documents it already received in prior proceedings. To the extent these materials are relevant, they remain available to BNYM.

34. Finally, the issues on which BNYM seeks discovery are settled. The Settlement Agreement was approved, was never appealed, and is unaffected by termination of the Confirmed Plan. Inquiry into the Settlement Agreement at this time is wholly inappropriate, and BNYM should not be allowed to derail confirmation of the New Plan by attempting to relitigate settled matters.[30]

**C. Coordination with The Unsecured Creditors' Committees is Necessary and Appropriate.**

35. BNYM and Fidelity both object to coordinating their requests with other unsecured creditors because neither BNYM nor Fidelity is similarly situated to their respective creditors' committees. BNYM asserts that it appealed the PSA and opposes the New Plan, whereas the TCEH Creditors' Committee signed the PSA and supports the New Plan.[31] Fidelity argues that the EFH Committee has agreed to "stand down" and that, as a result, it should not be required to coordinate discovery with the EFH Committee.[32] Notwithstanding these assertions,

[29] BNYM Objection ¶ 12.

[30] BNYM Objection ¶ 5.

[31] BNYM Objection ¶ 10.

[32] Fidelity Objection ¶ 14.

the rationale underlying the coordination of discovery requests previously used in these chapter 11 proceedings continues to apply.

36. To avoid service of multiple, duplicative document requests and the attendant costs and other burdens imposed upon the Debtors and any non-Debtor producing parties to respond to such requests in connection with the Confirmation Proceedings, the Creditors' Committees should act as facilitators and intermediaries between the Debtors and all other unsecured creditors that are Participating Parties in preparation of Consolidated Requests.

37. Coordination of discovery will undoubtedly save creditors time and money in serving a set of narrowly tailored discovery requests, and will preserve estate resources by reducing the amount of time and money required for Debtors to respond to multiple, duplicative requests.

**D. NextEra's Objections Are Inappropriate and Should Be Overruled.**

38. NextEra's Objection does not address the Proposed Confirmation Scheduling Order, but rather the confirmability of the New Plan. For example, NextEra argues that the Debtors "fail to explain how the REIT conversion option remains as a viable option in these circumstances," and that the Debtors fail to address "employee matters such as pension, OPEB and change of control issues, [and] transition services that may be needed between the T-Side and E-Side post-closing."[33] Contrary to NextEra's assertions, all of the options listed in the New Plan, including a REIT conversion, are viable. In any event, whether the Debtors' New Plan is viable, addresses all disputed issues, or is confirmable under the Bankruptcy Rules, are matters

[33] NextEra Objection ¶¶ 12, 13. Similar objections are asserted by Fidelity and Contrarian Capital. *See* Fidelity Objection ¶ 6 ("the [New] Plan has no chance of being confirmed"); Contrarian Capital Objection ¶ 13 ("significant tax issues infecting the New Plan render it non-confirmable").

properly addressed at the Confirmation Hearing, not in connection with entry of an order setting a case timeline.

**E. The EFH Indenture Trustee's Requests for Production of Documents and Proposed Amendments to the Schedule Are Inappropriate.**

39. While the EFH Indenture Trustee's only objection—that the Plan lacks sufficient detail to permit setting a schedule at this time—is addressed *supra*, the EFH Indenture Trustee takes the additional step of, "in the alternative," asking the Court to order the Debtors to produce within ten days—"without the need for service of written discovery"—a broad set of documents, and also apply numerous new conditions to the Proposed Scheduling Order. This demand is improper, but in any event mooted by the revised Proposed Scheduling Order, which calls for service of written discovery requests no later than May 25, 2016. The EFH Indenture Trustee may serve any requests for production of documents in accordance with the revised Proposed Scheduling Order and the Bankruptcy Rules on or before that date.

*****

WHEREFORE, the Debtors respectfully request that the Court enter the Confirmation Scheduling Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Scheduling Motion and granting such other and further relief as is appropriate under the circumstances.

[*Remainder of page intentionally left blank.*]

Dated: May 18, 2016
Wilmington, Delaware

*/s/ Jason M. Madron*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: collins@rlf.com
defranceschi@rlf.com
madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession