**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al*.,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Docket Ref. Nos. 8358, 8380 and 8455** |

**SUPPLEMENTAL RESPONSE OF THE TCEH FIRST LIEN
AD HOC COMMITTEE TO THE MOTION OF ENERGY FUTURE
HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER SCHEDULING
CERTAIN HEARING DATES AND DEADLINES AND ESTABLISHING
CERTAIN PROTOCOLS IN CONNECTION WITH THE CONFIRMATION
OF DEBTORS' JOINT PLAN OF REORGANIZATION AND APPROVAL
OF DEBTORS' DISCLOSURE STATEMENT AND NOTICE OF
<u>FILING OF FORMS OF TCEH-ONLY PLAN AND DISCLOSURE STATEMENT</u>**

The ad hoc committee of certain unaffiliated holders of first lien senior secured claims against the TCEH Debtors[2] (the "<u>TCEH First Lien Ad Hoc Committee</u>"), by and through its undersigned counsel, hereby files this supplemental response in respect of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Plan of Reorganization and the Approval*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the Debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] As used herein, the term "<u>TCEH Debtors</u>" means, collectively, Texas Competitive Electric Holdings Company LLC ("<u>TCEH</u>"), Energy Future Competitive Holdings Company LLC ("<u>EFCH</u>"), and TCEH's direct and indirect subsidiaries that are debtors and debtors-in-possession in the above-captioned cases.

*of Debtors' Disclosure Statement* [Docket No. 8358] (the "Scheduling Motion") and respectfully states as follows:[3]

## SUPPLEMENTAL RESPONSE

1.      The recently filed responses to the Debtors' motion for entry of a confirmation scheduling order provide a clear window into the significant creditor discord that endures on the E-Side:  stakeholders across nearly every tranche of E-Side debt objected to the Scheduling Motion, offering several distinct perspectives on how the E-Side Debtors should proceed with their restructuring.  Indeed, the only common ground readily apparent from these disparate grievances was a resounding demand for ***further delay***.  Fidelity's objection, in particular, aptly summarizes the E-Side stakeholders' views on this issue, and in doing so, identifies an inherent conflict among the Debtors' estates:  "Moreover, the E-Side restructuring concerns ***holding companies, not an operating business***.  Speed, while desirable, ***is not critical***."[4]  As this Court has heard on numerous occasions, for the TCEH Debtors, which are comprised of massive operating entities that employ thousands of people and generate a significant portion of the electricity required in northern Texas, speed is unquestionably critical.

2.      This lack of any semblance of creditor harmony on the E-Side stands in stark contrast to the consensus that exists among TCEH's largest stakeholders, who engaged in months of good faith negotiations (including pursuant to Court-ordered mediation) to develop a comprehensive restructuring framework for the TCEH Debtors

---

[3]     Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the Scheduling Motion.
[4]     *See Objection of Certain Funds and Accounts Advised or Sub-Advised By Fidelity Management & Research Company or its Affiliates To Motion of Energy Future Holdings Corp., et al., For Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8454], at ¶ 8 (emphasis added).

01:18713418.1

that is supported by substantially all of TCEH's largest creditors (as well as the TCEH official creditors' committee) and has been approved by the Court pursuant to the Settlement Agreement. During this same period, the E-Side stakeholders were unable to generate any level of creditor consensus and now apparently believe that further delay is the solution to their predicament, which is precisely why the TCEH First Lien Ad Hoc Committee has advocated that the Debtors pursue separate plans of reorganization for the TCEH Debtors and E-Side Debtors. As the Debtors acknowledge, and their plan expressly provides, a plan of reorganization for the TCEH Debtors can now be confirmed and consummated separate from the E-Side Debtors. Thus, while the Debtors have embraced "substantive delinkage," procedurally they continue to seek a unified march by all of the Debtors towards emergence, which is not objectionable so long as the E-Side's stakeholders' desire for additional time to develop a creditor-supported restructuring strategy does not jeopardize the TCEH stakeholders' unequivocal need for an expedited timeline to stem the massive loss of value that has occurred at TCEH's operating entities.

3.      To be clear, the TCEH First Lien Ad Hoc Committee continues to support the Scheduling Motion and urges the Court to enter the Confirmation Scheduling Order as proposed. However, in the event that stakeholders fail to embrace the necessary "procedural delinkage" envisioned by the Confirmation Scheduling Order, the TCEH First Lien Ad Hoc Committee, in its response to the Scheduling Motion,[5] reserved the right to (i) file a plan of reorganization addressing only the TCEH Debtors (the "TCEH-Only Plan") and (ii) request that the proposed Confirmation Scheduling Order be

---

[5]     *Response and Reservation of Rights of the TCEH First Lien Ad Hoc Committee to the Motion of Energy Future Holdings Corp. et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and Approval of Debtors' Disclosure Statement* [D.I. 8455] (the "Response").

modified to provide that the New Plan and any TCEH-Only Plan should proceed on a parallel confirmation timeline.  Response at ¶ 17.  Now, in light of the E-Side creditors' incessant demands for further delay, thereby jeopardizing the speed of execution that is critical to TCEH's stakeholders, the TCEH First Lien Ad Hoc Committee is filing, as a precautionary measure, the form of TCEH-Only Plan (and related solicitation materials) that it would seek to prosecute if the scheduling order is not approved.  Accordingly, attached as exhibits to this supplemental response are:  (i) the form of TCEH-Only Plan; and (ii) the form of a TCEH-Only Plan disclosure statement (the "<u>TCEH-Only Disclosure Statement</u>").[6]

4.    The TCEH-Only Plan is, in almost all respects, substantively identical to the Debtors' New Plan as it relates to the TCEH Debtors; TCEH's creditors will receive the same treatment under both plans (consistent with the Settlement Agreement and PSA) and both plans provide for a separation of TCEH from EFH pursuant to either a tax-free spin-off (if certain spin-off conditions are satisfied prior to a date certain) or a taxable separation.  Specifically, the TCEH Plan contemplates that, if the "Spin-Off Conditions" are satisfied by a date certain, TCEH will separate pursuant to a tax-free spin; otherwise, TCEH will separate pursuant to a taxable deconsolidation.  These "Spin-Off Conditions" are largely consistent with the conditions that the Court already approved pursuant to the REIT Plan, and are narrowly tailored to ensure that (1) any tax-free spin is undertaken in a manner consistent with applicable tax rules and regulations and (2) parties do not take certain limited actions after consummation of the tax-free spin that could generate

---

[6]    Should the TCEH First Lien Ad Hoc Committee be compelled to prosecute the TCEH-Only Plan it will submit a proposed scheduling order, substantially consistent with the Debtors' proposed scheduling order as it relates to the TCEH Debtors, which would permit the TCEH-Only Plan to proceed on a parallel confirmation timeline with the Debtors' New Plan.

significant liabilities at Reorganized TCEH, which liabilities would not otherwise be borne by Reorganized TCEH if the restructuring were to be implemented pursuant to a taxable separation, or that could undermine the intended tax treatment of the spin-off. Put simply, the TCEH First Lien Ad Hoc Committee will support a tax-free separation so long as (1) the tax-free separation can be consummated on a similar timeline to a taxable separation and independent of EFH's restructuring efforts and (2) Reorganized TCEH does not become subject to any potential tax liabilities or other tax risks as compared to those present in a taxable separation.  And, if the E-Side creditors or the E-Side debtors ultimately prefer that TCEH restructure pursuant to a taxable deconsolidation, as certain of the responses to the scheduling motion suggest, the TCEH First Lien Ad Hoc Committee would similarly support such a transaction structure, so long as it can be implemented quickly.

5.    The TCEH First Lien Ad Hoc Committee intends to continue to work collaboratively with the Debtors to facilitate and streamline the TCEH Debtors' emergence from chapter 11—whether pursuant to the New Plan or the TCEH-Only Plan. Indeed, if the Confirmation Scheduling Order is approved and TCEH's emergence will not be delayed or otherwise prejudiced by the Debtors' prosecution of a combined-company plan, the TCEH First Lien Ad Hoc Committee would hold the TCEH-Only Plan in abeyance.  But until the timeline and process for prosecuting the Debtors' plan as to the TCEH Debtors are clear, TCEH's stakeholders must have the option of a TCEH-Only Plan that can be prosecuted expeditiously by TCEH's primary stakeholders without the distraction or delay caused by E-Side confirmation issues.

6.      After more than two years in chapter 11, TCEH is on the last leg of its journey to emergence from chapter 11.  The issues that have previously complicated and paralyzed these cases—allegations of significant intercompany and intercreditor litigation claims and complex intercompany tax arrangements—have been largely, if not entirely, resolved, and it is now time for TCEH, free from any delays caused by the E-Side, to conclude these chapter 11 cases by implementing the core restructuring terms that this Court has already approved and which enjoy the support of the requisite TCEH creditors.

[*Remainder of page left intentionally blank*]

01:18713418.1

Dated: May 19, 2016
Wilmington, Delaware

/s/ Ryan M. Bartley                                        .
**YOUNG CONAWAY STARGATT &**
**TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew L. Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON &**
**GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Counsel to the TCEH First Lien Ad Hoc*
*Committee*

01:18713418.1

**<u>EXHIBIT A</u>**

**FORM OF TCEH-ONLY PLAN**

01:18713418.1

**DRAFT – SUBJECT TO REVISION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### [FORM OF] PLAN OF REORGANIZATION
### FOR ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY, *ET AL.*,
### PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York  10022
Telephone:  (212) 373-3000
Facsimile:   (212) 757-3990

Counsel to the TCEH Plan Proponents

Dated:  [May ], 2016

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square, 1000 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810 and the location of its service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ....................................................................................................................... 4
    A.    Defined Terms. ................................................................................................................. 4
    B.    Rules of Interpretation. ................................................................................................. 29
    C.    Computation of Time. ................................................................................................... 30
    D.    Governing Law. ............................................................................................................ 30
    E.    Reference to Monetary Figures. ................................................................................... 30

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS ........................... 30
    A.    Administrative Claims. ................................................................................................. 30
    B.    DIP Claims. .................................................................................................................. 32
    C.    Priority Tax Claims. ..................................................................................................... 33

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................. 33
    A.    Classification of Claims and Interests. ........................................................................ 33
    B.    Class Identification for the TCEH Debtors. ................................................................. 33
    C.    Treatment of Claims and Interests ............................................................................... 34
    D.    Special Provision Governing Unimpaired Claims. ...................................................... 38
    E.    Elimination of Vacant Classes. .................................................................................... 38
    F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ... 38
    G.    Controversy Concerning Impairment. .......................................................................... 38
    H.    Subordinated Claims and Interests. .............................................................................. 38

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE TCEH PLAN ................................................. 39
    A.    General Settlement of Claims and Interests. ................................................................ 39
    B.    Restructuring Transactions. .......................................................................................... 39
    C.    Sources of Consideration for TCEH Plan Distributions ............................................... 42
    D.    Intercompany Account Settlement. .............................................................................. 43
    E.    Competitive Tax Sharing Agreement. .......................................................................... 43
    F.    Corporate Existence. .................................................................................................... 43
    G.    Vesting of Assets in the Reorganized TCEH Debtors .................................................. 44
    H.    Cancelation of Existing Securities and Agreements. .................................................... 44
    I.    Corporate Action. ......................................................................................................... 45
    J.    New Organizational Documents. .................................................................................. 45
    K.    Directors and Officers of the Reorganized TCEH Debtors. ......................................... 45
    L.    Section 1146 Exemption. ............................................................................................. 46
    M.    Director, Officer, Manager, and Employee Liability Insurance. ................................... 46
    N.    Reorganized TCEH Debtor Management Incentive Plan. ............................................ 46
    O.    Employee Obligations. ................................................................................................. 46
    P.    Preservation of Causes of Action. ................................................................................ 47
    Q.    Payment of Certain Fees. ............................................................................................. 47
    R.    Treatment of Certain Claims of the PBGC and Pension Plan. ..................................... 47
    S.    Spin-Off Tax Receivable Agreement. .......................................................................... 48
    T.    Taxable Separation Tax Receivable Agreement ........................................................... 48

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................. 48
    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ................. 48
    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ................... 49
    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ................ 49
    D.    Preexisting Obligations to the TCEH Debtors under Executory Contracts and Unexpired Leases. .......................................................................................................... 49
    E.    Indemnification Obligations. ........................................................................................ 50
    F.    Insurance Policies. ........................................................................................................ 50
    G.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ....... 50

H.      Reservation of Rights. ........................................................................................50
I.       Nonoccurrence of Effective Date. ....................................................................50
J.       Contracts and Leases Entered Into After the Petition Date. .............................51

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ..........................................................51
A.      Timing and Calculation of Amounts to Be Distributed. ...................................51
B.      Disbursing Agent. .............................................................................................51
C.      Rights and Powers of Disbursing Agent. ..........................................................51
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. ...................................52
E.      Manner of Payment. .........................................................................................54
F.      SEC Registration/Exemption. ..........................................................................54
G.      Compliance with Tax Requirements. ................................................................55
H.      No Postpetition or Default Interest on Claims. .................................................55
I.       Setoffs and Recoupment. ..................................................................................55
J.       No Double Payment of Claims. ........................................................................55
K.      Claims Paid or Payable by Third Parties. .........................................................55

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
        DISPUTED CLAIMS.............................................................................................56
A.      Allowance of Claims..........................................................................................56
B.      Claims Administration Responsibilities.............................................................56
C.      Estimation of Claims. ........................................................................................56
D.      Adjustment to Claims without Objection. .........................................................57
E.      Time to File Objections to Claims or Interests..................................................57
F.      Disallowance of Claims. ....................................................................................57
G.      Amendments to Proofs of Claim. ......................................................................57
H.      Reimbursement or Contribution. .......................................................................57
I.       No Distributions Pending Allowance.................................................................58
J.       Distributions After Allowance. .........................................................................58

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............58
A.      Discharge of Claims and Termination of Interests. ..........................................58
**B.**      **Release of Liens.** ...........................................................................................58
**C.**      **Releases by the TCEH Debtors.** .................................................................59
**D.**      **Releases by Holders of Claims and Interests.** ...........................................59
**E.**      **Exculpation.** ..................................................................................................60
**F.**      **Injunction.**......................................................................................................61
G.      Liabilities to, and Rights of, Governmental Units.............................................61
H.      Environmental Law Matters. .............................................................................62
I.       Protections Against Discriminatory Treatment. ................................................62
J.       Recoupment. ......................................................................................................62
K.      Document Retention. .........................................................................................63

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
        THE TCEH PLAN ................................................................................................63
A.      Conditions Precedent to Confirmation. .............................................................63
B.      Conditions Precedent to the Effective Date. .....................................................64
C.      Waiver of Conditions. .......................................................................................66
D.      Effect of Failure of Conditions. ........................................................................66
E.      Certain IRS Matters. .........................................................................................66

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE TCEH PLAN ............67
A.      Modification and Amendments...........................................................................67
B.      Effect of Confirmation on Modifications...........................................................67
C.      Revocation or Withdrawal of TCEH Plan.........................................................67

01:18713421.1

ARTICLE XI. RETENTION OF JURISDICTION ..................................................................................67

ARTICLE XII. MISCELLANEOUS PROVISIONS ...............................................................................69
    A.      Immediate Binding Effect. ...................................................................................69
    B.      Additional Documents. ........................................................................................69
    C.      Payment of Statutory Fees. .................................................................................69
    D.      Statutory Committee and Cessation of Fee and Expense Payment. ....................70
    E.      Reservation of Rights. ........................................................................................70
    F.      Successors and Assigns. ......................................................................................70
    G.      Notices. ...............................................................................................................70
    H.      Term of Injunctions or Stays. .............................................................................71
    I.      Entire Agreement. ...............................................................................................71
    J.      Exhibits. ..............................................................................................................72
    K.      Nonseverability of TCEH Plan Provisions. ........................................................72
    L.      Votes Solicited in Good Faith. ............................................................................72
    M.      Waiver or Estoppel. ............................................................................................72
    N.      Conflicts. .............................................................................................................72

01:18713421.1

**INTRODUCTION**

The TCEH Plan Proponents (as defined herein) propose this plan of reorganization (the "TCEH Plan") for the resolution of the outstanding claims against, and interests in, the TCEH Debtors pursuant to the Bankruptcy Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Article I.A of the TCEH Plan. Holders of Claims and Interests should refer to the TCEH Disclosure Statement for a discussion of the TCEH Debtors' history, businesses, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the TCEH Plan and certain related matters. The TCEH Plan Proponents are the proponents of the TCEH Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE TCEH PLAN ARE ENCOURAGED TO READ THE TCEH PLAN AND THE TCEH DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE TCEH PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in the TCEH Plan, capitalized terms have the meanings set forth below.

1.    "*2005 Oncor Transfer*" means those certain 2005 transactions pursuant to which the equity of Oncor's predecessor, TXU Electric Delivery Company LLC, was dividended from EFCH's predecessor, TXU US Holdings Company, to EFH Corp.'s predecessor, TXU Corp.

2.    "*2007 Acquisition*" means the transactions that occurred in October 2007 in which TEF and Texas Holdings and their direct and indirect equity holders became the direct and indirect equity holders of each of the EFH Debtors, the EFIH Debtors and the TCEH Debtors.

3.    "*2011 Amend and Extend Transactions*" means those certain transactions effectuated by TCEH and EFCH in April 2011, including the TCEH Credit Amendment and the issuance of the TCEH First Lien Notes.

4.    "*2013 Revolver Extension*" means those certain transactions effectuated by TCEH and EFCH in January 2013, including the maturity extension of revolving credit commitments due 2013, the Incremental Amendment Agreement, and the incurrence of the TCEH 2012 Incremental Term Loans.

5.    "*2015 Compensation Order*" means the order entered by the Bankruptcy Court on December 17, 2014 [D.I. 3052], authorizing the EFH Debtors, the EFIH Debtors and the TCEH Debtors to implement their 2015 compensation programs.

6.    "*2016 Compensation Order*" means the order entered by the Bankruptcy Court on February 18, 2016 [D.I. 7883], authorizing the EFH Debtors, the EFIH Debtors and the TCEH Debtors to implement their 2016 compensation programs.

7.    "*503(b)(9) Claim*" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

8.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, other than DIP Claims, including: (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the businesses of the TCEH Debtors; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the

United States Code, 28 U.S.C. §§ 1911–1930; and (d) all Intercompany Claims authorized pursuant to the Cash Management Order.

9. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to General Administrative Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

10. "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

11. "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the TCEH Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the TCEH Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise allowed (i) pursuant to the TCEH Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the TCEH Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order). Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such TCEH Debtor or Reorganized TCEH Debtor, as applicable.

12. "*Approval Order*" means a Final Order (which may be the TCEH Confirmation Order), which shall (i) be in form and substance acceptable to the TCEH Plan Proponents, (ii) authorize and direct EFH Corp., EFIH, and Reorganized TCEH to enter into the Tax Matters Agreement, and (iii) contain terms and conditions consistent with the Tax Matters Agreement Term Sheet.

13. "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the Reorganized TCEH Debtors, including as set forth on the Assumed Executory Contract and Unexpired Lease List.

14. "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the TCEH Plan Proponents, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized TCEH Debtors, which shall be included in the TCEH Plan Supplement.

15. "*AST&T*" means American Stock Transfer & Trust Company, LLC.

16. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time.

17. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the District of Delaware.

18. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

19. "*Bar Date*" means the applicable date established by the Bankruptcy Court by which respective Proofs of Claims and Interests must be Filed.

20. "*Basis Step-Up*" means the net increase in the aggregate U.S. federal income tax basis of the assets transferred or deemed transferred to the Preferred Stock Entity pursuant to the Spin-Off Preferred Stock Sale by the excess of: (i) 100% of the aggregate amount of the net losses, net operating losses, and net capital losses (but only

to the extent such net capital losses are deductible under applicable tax law against gain recognized on the Spin-Off Preferred Stock Sale) (in each case, including carryovers) available to the EFH Group as of the Effective Date (determined (a) as if the "consolidated year" (within the meaning of Section 1503(e)(2)(B) of the Internal Revenue Code) of the EFH Group ended on the Effective Date, and (b) without regard to any income, gain, loss or deduction generated as a result of the Spin-Off Preferred Stock Sale or transactions occurring outside the ordinary course of business on the Effective Date after the Spin-Off Preferred Stock Sale (other than any Deferred Intercompany and ELA Items (if any) and other transactions expressly contemplated by the TCEH Plan and the Definitive Restructuring Documents (as defined in the Plan Support Agreement))), such amount to be agreed on by EFH Corp. and the TCEH Plan Proponents, over (ii) $500 million (or, if the TCEH Plan Proponents so elect, an amount greater than $500 million); *provided*, *however*, that any such Basis Step-Up shall not exceed the built-in gain in the assets subject to the Spin-Off Preferred Stock Sale.

21. "*BNY*" means, collectively: (a) BNYM and (b) BNYMTC.

22. "*BNYM*" means The Bank of New York Mellon.

23. "*BNYMTC*" means The Bank of New York Mellon Trust Company, N.A.

24. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

25. "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the U.S.

26. "*Cash Collateral Order*" means the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D.I. 855].

27. "*Cash Management Order*" means the *Final Order (A) Authorizing the Debtors to (I) Continue Using Their Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority* [D.I. 801].

28. "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

29. "*Chapter 11 Cases*" means, collectively:  (a) when used with reference to a particular EFH Debtor, EFIH Debtor or TCEH Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the EFH Debtors, EFIH Debtors and the TCEH Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for such Debtors in the Bankruptcy Court.

30. "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the TCEH Debtors.

31.    "*Claims and Noticing Agent*" means Epiq Bankruptcy Solutions, LLC, retained as the EFH Debtors', the EFIH Debtors' and TCEH Debtors' notice and claims agent pursuant to the *Order Approving the Retention and Appointment of Epiq Bankruptcy Solutions as the Claims and Noticing Agent for the Debtors* [D.I. 321].

32.    "*Claims Objection Deadline*" means the later of:  (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims or Interests.

33.    "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

34.    "*Class*" means a category of Claims or Interests as set forth in Article III of the TCEH Plan.

35.    "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

36.    "*Collective Professional Fee Claims*" means Professional Fee Claims incurred by a Professional for the collective benefit of two or more of TCEH, EFH Corp., and EFIH.

37.    "*Committee*" means the statutory committee of unsecured creditors of the TCEH Debtors and EFH Corporate Services appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on May 13, 2014, the membership of which may be reconstituted from time to time.

38.    "*Committee Litigation Letters*" means those certain letters, dated as of March 31, 2015 and April 30, 2015, from the Committee identifying alleged Claims and Causes of Action that the Committee may seek standing to pursue.

39.    "*Committee Standing Motion*" means the *Motion Of Official Committee of TCEH Unsecured Creditors for Entry of an Order Granting Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims* [D.I. 3593].

40.    "*Competitive Tax Sharing Agreement*" means that certain Federal and State Income Tax Allocation Agreement Among the Members of the Energy Future Holdings Corp. Consolidated Group (as amended and restated from time to time), dated May 15, 2012, by and among EFH Corp. and certain of its direct and indirect subsidiaries.

41.    "*Confirmation*" means the entry of the TCEH Confirmation Order on the docket of the Chapter 11 Cases.

42.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the TCEH Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

43.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the TCEH Plan pursuant to section 1129 of the Bankruptcy Code.

44.    "*Consummation*" means the occurrence of the Effective Date.

45.    "*Contributed TCEH Debtors*" means those one or more TCEH Debtors (as mutually agreed on by the TCEH Debtors and the TCEH Plan Proponents) whose equity will be contributed by Reorganized TCEH to the Preferred Stock Entity in the Spin-Off Preferred Stock Sale, if any.

46.    "*Contribution*" means, as part of the Spin-Off, immediately following the cancelation of Claims against the TCEH Debtors, the transfer to Reorganized TCEH (a) by TCEH, of all of TCEH's interests in its

subsidiaries (excluding the stock of TCEH Finance) and (b) by the EFH Debtors, of certain assets, liabilities and equity interests related to the TCEH Debtors' operations, as agreed by TCEH, the TCEH Plan Proponents and the EFH Debtors pursuant to the Separation Agreement.

47.    "*EFH/EFIH Committee Settlement*" means, collectively:    (a) the EFH/EFIH Committee Settlement; (b) the settlement approved pursuant to the *Amended Order Approving the Settlement of Claims Held by Fidelity and Authorizing Debtors to Enter Into and Perform Under Stipulation* [D.I. 7181]; and (c) that certain settlement under the *Notice of Proposed Settlement of EFIH PIK Note Claims of GSO Capital Partners LP and Avenue Capital Management, L.P.* [D.I. 6530], dated October 20, 2015, as amended by the *Amended Notice of Settlement of EFIH PIK Note Claims with Certain EFIH PIK Noteholders* [D.I. 6699], filed on October 27, 2015, and as further amended on November 8, 2015 [D.I. 6918], November 23, 2015 [D.I. 7117], and November 24, 2015 [D.I. 7130], and as approved under the *Order Approving Settlement Of Certain EFIH PIK Noteholder Claims And Authorizing Debtors To Enter Into And Perform Under Stipulations* on November 25, 2015 [D.I. 7145].

48.    "*Cure Claim*" means a Claim based upon the TCEH Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the TCEH Debtors pursuant to section 365 of the Bankruptcy Code.

49.    "*Debtor*" means one of the Debtors, in its individual capacity as a debtor and debtor in possession in its respective Chapter 11 Case.

50.    "*Debtor Intercompany Claim*" means a Claim by any TCEH Debtor, any EFH Debtor or any EFIH Debtor against any other TCEH Debtor, EFH Debtor or the EFIH Debtor.

51.    "*Deferred Intercompany and ELA Items*" means intercompany items (as such term is defined in Treasury Regulations Section 1.1502-13(b)(2)) or any excess loss account (as such term is defined in Treasury Regulations Section 1.1502-19(a)), in each case, of any subsidiary of TCEH (other than TCEH Finance) that are accelerated into income as a result of the Distribution pursuant to Treasury Regulations Section 1.1502-13(d) or Section 1.1502-19.

52.    "*DIP Agent*" means Citibank, N.A., or its duly appointed successor, in its capacity as administrative agent and collateral agent for the DIP Facility.

53.    "*DIP Credit Agreement*" means the Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5, 2014, as amended, supplemented, or modified from time to time, among EFCH, TCEH, the banks, financial institutions, and other lenders from time to time party thereto, the DIP Agent, and the other agents and entities party thereto, collectively with the "DIP Documents," as defined in the DIP Order.

54.    "*DIP Claims*" means any Claim derived from or based upon the DIP Credit Agreement or the DIP Order, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges.

55.    "*DIP Contingent Obligations*" means the "Contingent Obligations," as defined in the DIP Credit Agreement, including any and all expense reimbursement obligations of the TCEH Debtors that are contingent as of the Effective Date.

56.    "*DIP Facility*" means the TCEH Debtors' $4.475 billion debtor-in-possession financing facility, as approved on a final basis pursuant to the DIP Order.

57.    "*DIP L/C*" means any letter of credit issued under the DIP Credit Agreement.

58.    "*DIP L/C Issuer*" means the issuer of a DIP L/C.

59.    "*DIP Lenders*" means the DIP Agents, the DIP L/C Issuers, the banks, financial institutions, and other lenders party to the DIP Facility from time to time, and each arranger, bookrunner, syndication agent, manager, and documentation agent under the DIP Facility.

60.     "*DIP Order*" means the *Final Order (A) Approving Postpetition Financing For Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* [D.I. 856].

61.     "*DIP Secured Cash Management Banks*" means the "Secured Cash Management Banks," as defined in the DIP Order.

62.     "*DIP Secured Cash Management Obligations*" means the "Secured Cash Management Obligations," as defined in the DIP Order.

63.     "*DIP Secured Hedge Banks*" means the "Secured Hedge Banks," as defined in the DIP Order.

64.     "*DIP Secured Hedge Obligations*" means the "Secured Hedge Obligations," as defined in the DIP Order.

65.     "*Direct Professional Fee Claims*" means Professional Fee Claims incurred by a Professional for the benefit of only one of the following: (a) the EFH Debtors; (b) the EFIH Debtors; or (c) the TCEH Debtors.

66.     "*Disbursing Agent*" means the Reorganized TCEH Debtors or the Entity or Entities authorized to make or facilitate distributions under the TCEH Plan as selected by the TCEH Plan Proponents.

67.     "*Disinterested Directors and Managers*" means the disinterested directors and managers of EFH Corp., EFIH, and EFCH / TCEH.

68.     "*Disinterested Directors Settlement*" means the settlement negotiated by and among the Disinterested Directors and Managers regarding Debtor Intercompany Claims, as set forth in the REIT Plan.

69.     "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that is not yet Allowed.

70.     "*Distribution*" means, as part of the Spin-Off, and following the Contribution and the Reorganized TCEH Conversion, distribution of (a) the Reorganized TCEH Common Stock, (b) the net Cash proceeds of the New Reorganized TCEH Debt (or at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and the Spin-Off Preferred Stock Sale, if any, (c) the Spin-Off TRA Rights (if any) and (d) proceeds from the TCEH Settlement Claim, if determined as of the Effective Date, in each case, received in the Contribution to Holders of Allowed TCEH First Lien Secured Claims.

71.     "*Distribution Date*" means the Effective Date and any Periodic Distribution Date thereafter.

72.     "*Distribution Record Date*" means other than with respect to any publicly-held securities, the record date for purposes of making distributions under the TCEH Plan on account of Allowed Claims and Allowed Interests (other than DIP Claims), which date shall be the date that is five (5) Business Days after the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.

73.     "*DTC*" means the Depository Trust Company.

74.     "*EFCH*" means Energy Future Competitive Holdings Company LLC, a Delaware limited liability company.

75.     "*EFCH 2037 Note Claim*" means any Claim derived from or based upon the EFCH 2037 Notes.

76.     "*EFCH 2037 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated December 1, 1995, by and between EFCH, successor to TXU US Holdings Company, as issuer, and the EFCH 2037 Notes Trustee.

77.    "*EFCH 2037 Notes*" means, collectively:  (a) the EFCH Fixed 2037 Notes; and (b) the EFCH Floating 2037 Notes.

78.    "*EFCH 2037 Notes Trustee*" means BNYMTC, or any successor thereto, as trustee under the EFCH 2037 Note Indenture.

79.    "*EFCH Fixed 2037 Notes*" means the 8.175% fixed rate notes due January 30, 2037, issued by EFCH pursuant to the EFCH 2037 Note Indenture.

80.    "*EFCH Floating 2037 Notes*" means the 1.245% floating rate notes due January 30, 2037, issued by EFCH pursuant to the EFCH 2037 Note Indenture.

81.    "*Effective Date*" means, with respect to the TCEH Plan, the date after the Confirmation Date selected by the TCEH Plan Proponents on which:  (a) no stay of the TCEH Confirmation Order is in effect; and (b) all conditions precedent specified in Article IX.B have been satisfied or waived (in accordance with Article IX.C).

82.    "*EFH Committee Settlement Escrow*" means an escrow account in an amount equal to $9,450,000 which shall be funded from and reduce the TCEH Cash Payment dollar for dollar; *provided* that such escrow account shall provide that distributions from such account shall be made *first* to Reorganized TCEH in an amount equal to the EFH Committee Settlement Payment Amount, and *second*, to the extent the EFH Committee Settlement Escrow Amount exceeds the EFH Committee Settlement Payment Amount, such excess amounts shall be distributed to the Holders of Allowed Class 4 Claims in a manner consistent with the distribution of the TCEH Cash Payment in accordance with Article III.C.4 of the Plan.

83.    "*EFH Committee Settlement Payment Amount*" means an amount equal to 25% of the TCEH Settlement Claim Turnover Distributions.

84.    "*EFH Corp.*" means Energy Future Holdings Corp., a Texas corporation.

85.    "*EFH Corporate Services*" means EFH Corporate Services Company, a Texas corporation.

86.    "*EFH Debtors*" means, collectively:  (a) EFH Corp.; (b) Brighten Energy LLC; (c) Brighten Holdings LLC; (d) Dallas Power and Light Company, Inc.; (e) Ebasco Services of Canada Limited; (f) EEC Holdings, Inc.; (g) EECI, Inc.; (h) EFH Australia (No. 2) Holdings Company; (i) EFH CG Holdings Company LP; (j) EFH CG Management Company LLC; (k) EFH Corporate Services; (l) EFH Finance (No. 2) Holdings Company; (m) EFH FS Holdings Company; (n) EFH Renewables Company LLC; (o) Generation Development Company LLC; (p) Lone Star Energy Company, Inc.; (q) Lone Star Pipeline Company, Inc.; (r) LSGT Gas Company LLC; (s) LSGT SACROC, Inc.; (t) NCA Development Company LLC; (u) Southwestern Electric Service Company, Inc.; (v) Texas Electric Service Company, Inc.; (w) Texas Energy Industries Company, Inc.; (x) Texas Power and Light Company, Inc.; (y) Texas Utilities Company, Inc.; (z) Texas Utilities Electric Company, Inc.; (aa) TXU Electric Company, Inc.; and (bb) TXU Receivables Company.

87.    "*EFH Group*" means the "affiliated group" (within the meaning of Section 1504(a)(1) of the Internal Revenue Code), and any consolidated, combined, aggregate, or unitary group under state or local law, of which EFH Corp. is the common parent.

88.    "*EFH/EFIH Committee*" means the statutory committee of unsecured creditors of EFH Corp., EFIH, EFIH Finance, and EECI, Inc., appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on October 27, 2014, the membership of which may be reconstituted from time to time.

89.    "*EFH/EFIH Committee Settlement*" means the Settlement & Support Agreement, dated as of November 23, 2015, by and among the EFH Debtors, TCEH, the EFH/EFIH Committee, the EFH Notes Trustee,

the REIT Plan Sponsors, and the TCEH Committee, as approved under the EFH/EFIH Committee Settlement Order.

90.    "*EFH/EFIH Committee Settlement Order*" means the *Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties* [D.I. 7143], entered by the Bankruptcy Court on November 25, 2015.

91.    "*EFH/EFIH Committee Standing Motion*" means the *Motion of the EFH Official Committee for Entry of an Order Granting Derivative Standing and Authority to Prosecute and Settle Claims on Behalf of the Luminant Debtors' Estates* [D.I. 3605].

92.    "*EFH Notes Trustee*" collectively means AST&T, in its capacity as successor trustee to BNYMTC under the EFH Note Indentures.

93.    "*EFIH*" means Energy Future Intermediate Holding Company LLC, a Delaware limited liability company.

94.    "*EFIH Debtors*" means, collectively:  (a) EFIH; and (b) EFIH Finance.

95.    "*EFIH Finance*" means EFIH Finance Inc., a Delaware corporation.

96.    "*EFIH First Lien Approval Order*" means the *Order Approving EFIH First Lien Settlement* [D.I. 858].

97.    "*Employment Agreements*" means the existing employment agreements by and between certain employees of the TCEH Debtors, the EFH Debtors and/or the EFIH Debtors and such Debtors, which, in the event that the EFH Debtors seek to assume and assign such agreements to Reorganized TCEH, shall be assumed by Reorganized TCEH.

98.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

99.    "*Environmental Action*" means the pending case of *United States v. Luminant Generation Company LLC*, et al., 3:13-cv-3236-K (N.D. Tex.).

100.    "*Environmental Law*" means all federal, state and local statutes, regulations, ordinances and similar provisions having the force or effect of law, all judicial and administrative orders, agreements and determinations and all common law concerning pollution or protection of the environment, or environmental impacts on human health and safety, including, without limitation, the Atomic Energy Act; the Comprehensive Environmental Response, Compensation, and Liability Act; the Clean Water Act; the Clean Air Act; the Emergency Planning and Community Right-to-Know Act; the Federal Insecticide, Fungicide, and Rodenticide Act; the Nuclear Waste Policy Act; the Resource Conservation and Recovery Act; the Safe Drinking Water Act; the Surface Mining Control and Reclamation Act; the Toxic Substances Control Act; and any state or local equivalents.

101.    "*EPA Settlement Amount*" means $1,000,000.00, as set forth in the order approving that certain Stipulation and Settlement Agreement, dated as of December 1, 2015, by and among EFH Corp., TCEH, EFCH, the United States on behalf of the U.S. Environmental Protection Agency, certain TCEH First Lien Creditors, the REIT Plan Sponsors and the Committee [D.I. 7204].

102.    "*ERISA*" means the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 as amended, (2006 V. Supp. 2011), and the regulations promulgated thereunder.

103.    "*Estate*" means, as to each TCEH Debtor, the estate created for the applicable TCEH Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

104. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such:  (a) the TCEH Debtors; (b) the Committee and each of its members; and (c) with respect to each of the foregoing, such Entity and its current and former Affiliates, and such Entity's and its current and former Affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), subsidiaries, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

105. "*Executive Severance Policy*" means the Energy Future Holdings Corp. Executive Change in Control Policy, effective as of May 20, 2005, as amended on December 23, 2008 and December 20, 2010, and in effect as of the date of Filing of the TCEH Plan.

106. "*Executory Contract*" means a contract to which one or more of the TCEH Debtors is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

107. "*FCC*" means the Federal Communications Commission.

108. "*Federal Judgment Rate*" means the rate of interest calculated pursuant to the provisions of 28 U.S.C. § 1961, which shall be a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, as of the Petition Date, which rate was 0.11%, compounded annually.

109. "*FERC*" means the Federal Energy Regulatory Commission.

110. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, including with respect to a Proof of Claim or Proof of Interest, the Claims and Noticing Agent.

111. "*Final Order*" means (i) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (ii) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

112. *Fundamental Opinions*" shall include:

(a) the following opinions of nationally recognized tax counsel (who shall be permitted to rely upon reasonable representations, including a representation that the EFH Debtors and the EFIH Debtors have no plan or intention at the time of the Distribution[2] that is inconsistent with the Spin-Off Intended Tax Treatment), in substance reasonably acceptable to the TCEH Plan Proponents, at a "should" level:

---

[2] Capitalized terms in this definition that are not defined herein shall have the meanings given such terms in the request submitted to the IRS for the Private Letter Ruling and all other IRS Submissions; provided, however, that nothing herein shall require the public disclosure of the IRS Submissions.

(i) The Contribution, Reorganized TCEH Conversion, and Distribution meet the requirements of Sections 368(a)(1)(G), 355, and 356 of the Internal Revenue Code.

(ii) EFH should not recognize gain for U.S. federal income tax purposes as a result of the Contribution or the Reorganized TCEH Conversion other than gain recognized pursuant to the transfer of assets to the Preferred Stock Entity and the Spin-Off Preferred Stock Sale.

(iii) EFH should recognize no gain or loss for U.S. federal income tax purposes upon the Distribution.

(b) the following opinions of nationally recognized tax counsel (who shall be permitted to rely upon reasonable representations, including a representation that the EFH Debtors and the EFIH Debtors have no plan or intention at the time of the Distribution that is inconsistent with the Spin-Off Intended Tax Treatment), in substance reasonably acceptable to the TCEH Plan Proponents, at a "will" level:

(i) The TCEH First Lien Debt will not be treated as assumed by Spinco for purposes of Section 357(c) and (d).

(ii) Section 355(g) will not apply to the Reorganized TCEH Spin-Off.

113.   "*Fundamental Rulings*" means, collectively, the following rulings by the IRS:

a) the Reorganized TCEH Spin-Off[3] will satisfy the continuity of business enterprise requirement set forth in Treasury Regulations Section 1.368-1(d);

b) the TCEH First Lien Creditors will be treated as holding a proprietary interest in EFH prior to the Reorganization pursuant to Treasury Regulations Section 1.368-1(e), and the continuity of interest requirement of Treasury Regulations Section 1.368-1(e) will be satisfied with respect to the Reorganization;

c) the TCEH First Lien Debt that is classified as term loans (excluding any term loans issued in 2013) or notes constitutes "securities" of EFH for purposes of Section 355 and Section 368(a)(1)(G);

d) each of the EFH SAG and the Spinco SAG will be engaged in the active conduct of a trade or business (within the meaning of Section 355(b)) immediately after the Reorganized TCEH Spin-Off;

e) the Reorganization will satisfy the continuity of business enterprise requirement set forth in Treasury Regulations Section 1.355-1(b);

f) the TCEH First Lien Creditors, the unsecured TCEH creditors, the unsecured EFH Creditors, and the unsecured EFIH Creditors will be treated as "owners of the enterprise" with respect to EFH for purposes of Treasury Regulations Section 1.355-2(c)(1), and the continuity of interest requirement of Treasury Regulations Section 1.355-2(c)(1) will be satisfied;

g) Section 355(e) will not apply to the Distribution; and

h) EFH Corp. will be respected as the seller of the Preferred Stock Entity's preferred stock for U.S. federal income tax purposes; (ii) for U.S. federal income tax purposes, (x) upon Reorganized

---

3    Capitalized terms in this definition that are not defined herein shall have the meanings given such terms in the request submitted to the IRS for the Private Letter Ruling and all other IRS Submissions; provided, however, that nothing herein shall require the public disclosure of the IRS Submissions.

TCEH's conversion to a corporation under Delaware law, EFH Corp. will be treated as contributing both the common stock of the Preferred Stock Entity and the other assets subject to the Contribution (other than the assets transferred to the Preferred Stock Entity) to Reorganized TCEH in exchange for all of Reorganized TCEH's stock, and such contribution will be treated as occurring immediately after EFH Corp.'s sale of the Preferred Stock Entity's preferred stock, and (y) upon the Distribution, EFH Corp. will be treated as distributing the stock of Reorganized TCEH to the TCEH First Lien Creditors, and such distribution will be treated as occurring immediately after EFH Corp.'s contribution to Reorganized TCEH; and (iii) EFH Corp.'s pre-arranged sale of the Preferred Stock Entity's preferred stock will be taken into account for purposes of the "control immediately after" test under Section 351 of the Internal Revenue Code.

114.    "*General Administrative Claim*" means any Administrative Claim, other than a Professional Fee Claim.

115.    "*General Unsecured Claim Against EFCH*" means any Unsecured Claim against EFCH that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the EFCH 2037 Note Claims, but excluding:  (a) Administrative Claims against EFCH; (b) Priority Tax Claims against EFCH; (c) Intercompany Claims against EFCH; (d) Other Priority Claims against EFCH; and (e) DIP Claims.

116.    "*General Unsecured Claim Against the TCEH Debtors Other Than EFCH*" means any Unsecured Claim against one or more of the TCEH Debtors other than EFCH that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the Legacy General Unsecured Claims Against the TCEH Debtors, but excluding:  (a) TCEH Unsecured Debt Claims; (b) Administrative Claims against the TCEH Debtors Other Than EFCH; (c) Priority Tax Claims against the TCEH Debtors Other Than EFCH; (d) Non-TCEH Debtor Intercompany Claims; (e) Other Priority Claims against the TCEH Debtors Other Than EFCH; and (f) DIP Claims.

117.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

118.    "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

119.    "*HSR Act*" means the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

120.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

121.    "*Incremental Amendment Agreement*" means that certain Incremental Amendment No. 1, dated as January 4, 2013, by and among the Incremental 2012 Term Lenders (as defined therein), EFCH, TCEH, the Credit Parties (as defined therein) party thereto, and Citibank, N.A., as administrative and collateral agent.

122.    "*Indemnification Obligations*" means each of the TCEH Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for their current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the TCEH Debtors, as applicable.

123.    "*Indenture Trustees*" means, collectively:  (a) the EFCH 2037 Notes Trustee; (b) the TCEH First Lien Notes Trustee; (c) the TCEH Second Lien Notes Trustee; (d) the TCEH Unsecured Notes Trustee; (e) the PCRB Trustee; and (f) the TCEH Second Lien Notes Collateral Agent.

124.    "*Insurance Policies*" means any insurance policies, insurance settlement agreements, coverage-in-place agreements, or other agreements relating to the provision of insurance entered into by or issued to or for the benefit of any of the TCEH Debtors or their predecessors.

125.    "*Intercompany Claim*" means a Claim by EFH Corp. or any direct or indirect subsidiary of EFH Corp. against EFH Corp. or any direct or indirect subsidiary of EFH Corp.

126.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any TCEH Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity.

127.    "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [D.I. 2066].

128.    "*Intermediate*" means the new Entity that will be a wholly owned subsidiary of TCEH.

129.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

130.    "*IRS*" means the Internal Revenue Service.

131.    "*IRS Submissions*" means all submissions to the IRS in connection with the Ruling Request.

132.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

133.    "*Legacy General Unsecured Claim Against the TCEH Debtors*" means any Claim against the TCEH Debtors derived from or based upon liabilities based on asbestos or qualified post-employment benefits relating to the TCEH Debtors.

134.    "*Liability Management Program*" means the various transactions, including debt buybacks, new debt issuances, debt exchanges, debt payoffs, intercompany debt forgiveness, dividends, and maturity extensions, by EFH Corp. and its direct and indirect subsidiaries, and restructuring of such Entities' debt obligations completed before the Petition Date, as described in certain of the EFH Debtors' SEC filings.

135.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

136.    "*Litigation Letters*" means, collectively:  (a) the Committee Litigation Letters; and (b) the TCEH Unsecured Group Litigation Letter.

137.    "*Luminant*" means Luminant Holding Company LLC and its direct and indirect Debtor subsidiaries.

138.    "*Luminant Makewhole Settlement*" means those transactions in settlement of Luminant's obligations to Oncor under the Tax and Interest Makewhole Agreements, by which EFIH purchased Luminant's obligations from Oncor in August 2012, and Luminant paid EFIH the same respective amount in September 2012.

139.    "*Management Agreement*" means that certain management agreement, dated as of October 10, 2007, by and among EFH Corp., TEF, Kohlberg Kravis Roberts & Co. L.P., TPG Capital, L.P., Goldman, Sachs & Co., and Lehman Brothers Inc.

140.    "*New Board*" means the Reorganized TCEH Board.

141.    "*New Employee Agreements/Arrangements*" means the agreements or other arrangements entered into on the Effective Date by the 18 members of the TCEH Debtors' and/or the EFH Debtors' management team who are considered "insiders" but who were not party to an Employment Agreement as of the date of the Plan Support Agreement, which shall include the applicable terms set forth in section 10(o) of the Plan Support Agreement and shall otherwise be substantially in the form included in the TCEH Plan Supplement and reasonably acceptable to the TCEH Plan Proponents.

142.    "*New Organizational Documents*" means such certificates or articles of incorporation, by-laws, or other applicable formation documents of each of the Reorganized TCEH Debtors, as applicable, the form of which shall be included in the TCEH Plan Supplement.

143.    "*New Reorganized TCEH Debt*" means the new long-term debt of Reorganized TCEH to be issued on the Effective Date, *provided* that if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, such debt shall be issued prior to the Reorganized TCEH Conversion on the Effective Date.

144.    "*New Reorganized TCEH Debt Documents*" means the documents necessary to effectuate the New Reorganized TCEH Debt, which shall be included in the TCEH Plan Supplement.

145.    "*Non-TCEH Debtor Intercompany Claim*" means any Claim by EFH Corp. or any direct or indirect subsidiary of EFH Corp. (other than a TCEH Debtor) against a TCEH Debtor, including any Claim derived from or based upon the TCEH Credit Agreement, the TCEH First Lien Notes, or TCEH Unsecured Notes held by EFH Corp. and EFIH.

146.    "*NRC*" means the United States Nuclear Regulatory Commission.

147.    "*Nuclear Decommissioning Obligations*" means the TCEH Debtors' funding obligations related to a nuclear decommissioning trust that will be used to fund the decommissioning of the Comanche Peak nuclear power plant, as required by the Department of Energy.

148.    "*Oak Grove Promissory Note*" means that certain Promissory Note, dated December 22, 2010, by and among Oak Grove Power Company LLC, as issuer, and North American Coal Royalty Company, as holder, and John W. Harris, as trustee, with face amount of $7,472,500 due in annual installments through December 22, 2017, which note is secured by all coal, lignite, and other near-surface minerals on and under certain real property in Robertson County, Texas.

149.    "*Oak Grove Promissory Note Claim*" means any Claim derived from or based upon the Oak Grove Promissory Note.

150.    "*Oncor*" means Oncor Holdings and its direct and indirect subsidiaries.

151.    "*Oncor Electric*" means Oncor Electric Delivery Company LLC.

152.    "*Oncor Holdings*" means Oncor Electric Delivery Holdings Company LLC.

153.    "*Opco*" means the new Entity that will be a wholly owned direct subsidiary of Intermediate.

154.    "*Ordinary Course Professional Order*" means the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [D.I. 765].

155.    "*Other Priority Claims*" means any Claim, other than an Administrative Claim, a DIP Claim, or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

156.    "*Other Secured Claim Against the TCEH Debtors*" means any Secured Claim against any of the TCEH Debtors, including the Oak Grove Promissory Note Claims and Tex-La Obligations, but excluding:  (a) TCEH First Lien Secured Claims; and (b) DIP Claims.

157.    "*PBGC*" means the Pension Benefit Guaranty Corporation, a wholly-owned United States government corporation, and an agency of the United States  created by ERISA.

158.    "*PCRB Claim*" means any Claim derived from or based upon the PCRBs, excluding the Repurchased PCRBs.

159.    "*PCRBs*" means the pollution control revenue refunding bonds and pollution control revenue bonds outstanding from time to time, including: (a) 7.70% Fixed Series 1999C due March 1, 2032; (b) 7.70% Fixed Series 1999A due April 1, 2033; (c) 6.30% Fixed Series 2003B due July 1, 2032; (d) 6.75% Fixed Series 2003C due October 1, 2038; (e) 5.40% Fixed Series 2003D due October 1, 2029; (f) 5.40% Fixed Series 1994A due May 1, 2029; (g) 5.00% Fixed Series 2006 due March 1, 2041; (h) 8.25% Fixed Series 2001A Due October 1, 2030; (i) 8/25% Fixed Series 2001D-1 due May 1, 2033; (j) 6.45% Fixed Series 2000A due June 1, 2021; (k) 5.80% Fixed Series 2003A due July 1, 2022; (l) 6.15% Fixed Series 2003B due August 1, 2022; (m) 5.20% Fixed Series 2001C due May 1, 2028; (n) 6.25% Fixed Series 2000A due May 1, 2028; (o) Series 1994B due May 1, 2029 (variable rate); (p) Series 1995A due April 1, 2030 (variable rate); (q) Series 1995B due June 1, 2030 (variable rate); (r) Series 2001B due May 1, 2029 (variable rate); (s) Series 2001C due May 1, 2036 (15% ceiling); (t) Floating Taxable Series 2001I due December 1, 2036; (u) Floating Series 2002A due May 1, 2037; (v) Series 2003A due April 1, 2038 (15% ceiling); (w) Series 1999B due September 1, 2034 (15% ceiling); (x) Floating Series 2001D-2 due May 1, 2033; (y) Series 2001A due May 1, 2022 (15% ceiling); (z) Series 2001B due May 1, 2030 (15% ceiling); and (aa) Series 2001A due May 1, 2027 (variable rate), to which, among others, the PCRB Trustee is party.

160.    "*PCRB Trustee*" means BNYM, as indenture trustee for the PCRBs.

161.    "*Pension Plan*" means the single-employer defined benefit plan insured by the PBGC and covered by Title IV of ERISA, 29 U.S.C. §§ 1301-1461, including the plan sponsored by EFH Corp.

162.    "*Periodic Distribution Date*" means, unless otherwise ordered by the Bankruptcy Court, the first Business Day that is 120 days after the Effective Date, and, for the first year thereafter, the first Business Day that is 120 days after the immediately preceding Periodic Distribution Date. After one year following the Effective Date, the Periodic Distribution Date will occur on the first Business Day that is 180 days after the immediately preceding Periodic Distribution Date, unless and until otherwise ordered by the Bankruptcy Court.

163.    "*Petition Date*" means April 29, 2014, the date on which the EFH Debtors, EFIH Debtors and TCEH Debtors commenced the Chapter 11 Cases.

164.    "*TCEH Plan Proponents*" means the following unaffiliated Holders of TCEH First Lien Claims: (a) Angelo Gordon & Co., L.P.; (b) Apollo Management Holdings L.P.; (c) Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P.; (d) Fortress Credit Opportunities, Advisers LLC; (e) Franklin Advisers, Inc. (f) Franklin Mutual Advisers, LLC; (g) King Street Capital Management, L.P.; (h) Oaktree Capital Management, L.P.; (i) OZ Management LP; and (j) Paulson & Co., Inc.; *provided* that where the consent, waiver, or approval of the TCEH Plan Proponents is required under the TCEH Plan, the term "TCEH Plan Proponents" shall mean at least five unaffiliated TCEH Plan Proponents holding in the aggregate at least 50.1% in aggregate principal amount of the TCEH First Lien Claims held by all of the TCEH Plan Proponents.

165.    "*Plan Support Agreement*" means that certain Plan Support Agreement, dated as of August 9, 2015 (as amended on September 11, 2015, October 27, 2015, and November 12, 2015, and as may be amended, supplemented, or otherwise modified from time to time in accordance therewith), by and among the TCEH Debtors, the EFH Debtors, the EFIH Debtors, the TCEH Plan Proponents, the TCEH First Lien Agent, certain Holders of TCEH Second Lien Note Claims, the Committee, certain holders of TCEH Unsecured Notes Claims, and certain other Entities, including all exhibits and schedules attached thereto.

166.    "*Preferred Stock Entity*" means, as part of the Spin-Off, the new Entity pursuant to which certain assets and liabilities will be transferred as part of the Spin-Off Preferred Stock Sale, it being understood that, if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the Preferred Stock Entity will undertake the Preferred Stock Entity Conversion on the Effective Date.

167.    "*Preferred Stock Entity Conversion*" means, as part of the Spin-Off, the conversion of the Preferred Stock Entity from a Delaware limited liability company to a Delaware corporation on the Effective Date, immediately following the Contribution and immediately prior to the Spin-Off Preferred Stock Sale.

168.    "*Priority Tax Claim*" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

169.    "*Private Letter Ruling*" means a private letter ruling issued by the IRS applied for in connection with the Ruling Request.

170.    "*Pro Rata*" means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Claims or Allowed Interests in that Class, or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Claim or Interest under the TCEH Plan.

171.    "*Professional*" means, solely with respect to the TCEH Debtors, an Entity, excluding those Entities entitled to compensation pursuant to the Ordinary Course Professional Order:  (a) retained  pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.  For the avoidance of doubt, the term "Professional" shall only include such entities in their capacity as advisors to the TCEH Debtors and not in their capacity as advisors to any of the EFH Debtors or EFIH Debtors.

172.    "*Professional Fee Claims*" means, solely with respect to the TCEH Debtors, all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

173.    "*Professional Fee Escrow Account*" means, solely with respect to the TCEH Debtors, an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the TCEH Debtors on the Effective Date, pursuant to Article II.A.2(b) of the TCEH Plan.

174.    "*Professional Fee Reserve Amount*" means, solely with respect to the TCEH Debtors, the total amount of Professional Fee Claims estimated in accordance with Article II.A.2(c) of the TCEH Plan.

175.    "*Proof of Claim*" means a proof of Claim Filed against any of the TCEH Debtors in the Chapter 11 Cases.

176.    "*Proof of Interest*" means a proof of Interest Filed against any of the TCEH Debtors in the Chapter 11 Cases.

177.    "*PUC*" means the Public Utility Commission of Texas.

178.    "*RCT*" means the Railroad Commission of Texas.

179.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

180.    "*REIT Plan*" means the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 7236]

181.    "*REIT Plan Sponsors*" means, the Plan Sponsors, as defined in the REIT Plan.

182.    "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the TCEH Plan Proponents of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized TCEH Debtors pursuant to the TCEH Plan, which shall be included in the TCEH Plan Supplement.

183.   *"Released Parties"* means collectively, and in each case only in its capacity as such:  (a) Holders of TCEH First Lien Claims; (b) Holders of TCEH Second Lien Note Claims; (c) Holders of TCEH Unsecured Note Claims; (d) the DIP Lenders; (e) the TCEH First Lien Agent; (f) the Indenture Trustees; (g) the Committee and each of its members; (h) Holders of General Unsecured Claims Against the TCEH Debtors; (i) Holders of PCRB Claims, (j) TEF; (k) Texas Holdings; (l) funds and accounts managed or advised by Kohlberg Kravis Roberts & Co., L.P., TPG Capital, L.P. or Goldman, Sachs & Co. that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp.; (m) Holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH; (n) Holders of General Unsecured Claims Against EFCH; (o) with respect to each of the TCEH Debtors, the Reorganized TCEH Debtors, and each of the foregoing entities in clauses (a) through (n) such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such; and (p) DTC *provided, however*, that any Holder of a Claim or Interest that opts out of the releases contained in the TCEH Plan shall not be a "Released Party."

184.   *"Releasing Parties"* means collectively, and in each case only in its capacity as such:  (a) Holders of TCEH First Lien Claims; (b) Holders of TCEH Second Lien Note Claims; (c) Holders of TCEH Unsecured Note Claims; (d) the DIP Lenders; (e) the TCEH First Lien Agent; (f) the Indenture Trustees (g) the Committee and each of its members; (h) Holders of General Unsecured Claims Against the TCEH Debtors; (i) Holders of PCRB Claims; (j) TEF; (k) Texas Holdings; (l) funds and accounts managed or advised by Kohlberg Kravis Roberts & Co., L.P., TPG Capital, L.P. or Goldman, Sachs & Co. that hold direct or indirect interests in Texas Holdings, TEF, or EFH Corp.; (m) Holders of General Unsecured Claims Against the TCEH Debtors Other Than EFCH; (n) Holders of General Unsecured Claims Against EFCH; (o) all Holders of Claims and Interests that are deemed to accept the TCEH Plan; (p) all Holders of Claims and Interests who vote to accept the TCEH Plan; (q) all Holders in voting Classes who abstain from voting on the TCEH Plan and who do not opt out of the releases provided by the TCEH Plan; (r) with respect to each of the TCEH Debtors, the Reorganized TCEH Debtors, and each of the foregoing entities in clauses (a) through (q), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

185.   *"Reorganized"* means, as to any TCEH Debtor or TCEH Debtors, such TCEH Debtor(s) as reorganized pursuant to and under the TCEH Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

186.   *"Reorganized TCEH Debtor Management Incentive Plan"* means the management incentive plan to be implemented with respect to Reorganized TCEH on the Effective Date, the terms of which shall be consistent with the Plan Support Agreement and substantially in the form to be included in the TCEH Plan Supplement.

187.   *"Reorganized TCEH Debtors"* means collectively, and each in its capacity as such, the TCEH Debtors, as reorganized pursuant to and under the TCEH Plan or any successor thereto, by merger, consolidation, or otherwise on or after the Effective Date.

188.   *"Reorganized TCEH"* means the new Entity the common stock of which will be distributed to Holders of TCEH First Lien Claims pursuant to the Taxable Separation, *provided* that if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, it shall mean the new Entity pursuant to which certain assets and liabilities will be transferred as part of the Contribution and the stock of which will be distributed as part of the Distribution, it being understood that Reorganized TCEH will undertake the Reorganized TCEH Conversion on the Effective Date.

189.   *"Reorganized TCEH Board"* means the board of directors or managers of Reorganized TCEH on and after the Effective Date to be appointed by the TCEH Plan Proponents and included in the Plan Supplement.

190.     "*Reorganized TCEH Common Stock*" means the 450,000,000 shares of common stock in Reorganized TCEH to be issued and distributed in accordance with the TCEH Plan.

191.     "*Reorganized TCEH Conversion*" means, as part of the Spin-Off, the conversion of Reorganized TCEH from a Delaware limited liability company into a Delaware corporation on the Effective Date, immediately following the Contribution and immediately prior to the Distribution.

192.     "*Reorganized TCEH Registration Rights Agreement*" means the registration rights agreement that shall provide registration rights to certain Holders of Reorganized TCEH Common Stock, the material terms of which shall be included in the TCEH Plan Supplement.

193.     "*Reorganized TCEH Shareholders' Agreement*" means the one or more shareholders' agreements, if any, that will govern certain matters related to the governance of Reorganized TCEH, which shall be included in the TCEH Plan Supplement.

194.     "*Reorganized TCEH Sub Preferred Stock*" means, if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the new contingent-voting preferred stock of the Preferred Stock Entity issued pursuant to the Spin-Off Preferred Stock Sale.

195.     "*Repurchased PCRBs*" means the PCRBs repurchased by TCEH and held in a custody account.

196.     "*Restructuring Transactions*" means those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the TCEH Plan Proponents reasonably determine to be necessary or desirable to implement the Taxable Separation or, if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the Spin-Off, under the TCEH Plan.

197.     "*Ruling Request*" means the request for a private letter ruling from the IRS, as supplemented on September 3, 2015, which would address (a) certain matters related to the qualification of the Contribution, the Reorganized TCEH Conversion, and the Distribution as a "reorganization" within the meaning of Sections 368(a)(1)(G), 355 and 356 of the Internal Revenue Code and (b) certain other matters with respect to the Spin-Off Intended Tax Treatment.

198.     "*Rural Utilities Service*" means the agency of the United States Department of Agriculture tasked with providing public utilities to rural areas in the United States through public-private partnerships.

199.     "*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the TCEH Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

200.     "*SEC*" means the Securities and Exchange Commission.

201.     "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the TCEH Plan or separate order of the Bankruptcy Court as a secured claim.

202.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder.

203.     "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

204.    "*Separation Agreement*" means the separation agreement to be entered into on or before the Effective Date by and among TCEH, Reorganized TCEH, and EFH Corp. in form and substance acceptable to the TCEH Plan Proponents, addressing the transfer by the EFH Debtors of certain assets, liabilities, and equity interests related to the TCEH Debtors' operations, which shall be included in the TCEH Plan Supplement.

205.    "*Settlement*" means the compromise and settlement by and among the parties to the Settlement Agreement, including the EFH Debtors, the EFIH Debtors, the TCEH Debtors and their respective estates, of (i) all Non-EFH Debtor Intercompany Claims (as defined in the Settlement Agreement), (ii) Non-EFIH Debtor Intercompany Claims (as defined in the Settlement Agreement), (iii) all Non-TCEH Debtor Intercompany Claims (as defined in the Settlement Agreement), and the TCEH Settlement Claim, other than ordinary course Debtor Intercompany Claims incurred pursuant to, and in accordance with, Paragraph 10 of the Cash Management Order, (ii) claims and Causes of Action against Holders of TCEH First Lien Claims and the TCEH First Lien Agent, (iii) claims and Causes of Action against the Holders of EFH Interests (as defined therein) and certain related Entities, and (iv) claims and Causes of Action against any of the EFH Debtors, EFIH Debtors, or TCEH Debtors' directors, managers, officers, and other related Entities, as set forth in the Settlement Agreement.

206.    "*Settlement Agreement*" means that certain Settlement Agreement by and among the Debtors and certain Holders of Claims and Interests, as approved in the Settlement Order.

207.    "*Settlement Agreement Professional Fees*" means those "Professional Fees," as such term is defined in the Settlement Order, actually paid pursuant to the Settlement Order.

208.    "*Settlement Order*" means the *Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243].

209.    "*Shared Services*" means those shared services provided to EFH Corp. and its direct and indirect subsidiaries, including by or through EFH Corporate Services and/or pursuant to any service-level agreement or shared services agreements.

210.    "*Spin-Off*" means, if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the transactions required to achieve and preserve the Spin-Off Intended Tax Treatment, including the Contribution, the Reorganized TCEH Conversion, and the Distribution.

211.    "*Spin-Off Conditions*" means (i) entry of the Approval Order by the Bankruptcy Court; (ii) that the Debtors shall have performed their commitments, covenants and other obligations with respect to the "Preferred Stock Sale" as set forth on Exhibit G to the Plan Support Agreement; and (iii) the satisfaction or waiver pursuant to the terms set forth in Article IX.C, of the conditions set forth in Article IX.B.8; *provided* that the condition set forth in Article IX.B.8(f) shall be satisfied or waived by July 28, 2016.

212.    "*Spin-Off Conditions Termination Date*" means the earlier of (a) September 1, 2016; and (b) the date upon which one or more of the Spin-Off Conditions becomes incapable of being satisfied, as determined by the TCEH Plan Proponents in their sole discretion.

213.    "*Spin-Off Intended Tax Treatment*" means (a) the qualification of the Contribution, the Reorganized TCEH Conversion and the Distribution as a "reorganization" within the meaning of Sections 368(a)(1)(G), 355, and 356 of the Internal Revenue Code, and (b) the qualification of the contribution described in clause (a) of the definition of the Spin-Off Preferred Stock Sale as a taxable sale of assets to the Preferred Stock Entity pursuant to Section 1001 of the Internal Revenue Code resulting in the Basis Step-Up.

214.    "*Spin-Off Preferred Stock Sale*" means, as part of the Spin-Off: (a) following the Preferred Stock Entity Conversion, but before the Reorganized TCEH Conversion, the contribution by Reorganized TCEH of the equity in the Contributed TCEH Debtors (or, potentially, certain assets or joint interests in certain assets as agreed upon by EFH Corp. and the TCEH Plan Proponents, in accordance with the Plan Support Agreement, as applicable), to the Preferred Stock Entity (such contribution to the Preferred Stock Entity of such equity and,

potentially such assets, in an amount that is expected to result in the Basis Step-Up) in exchange for the Preferred Stock Entity's (i) common stock and (ii) the Reorganized TCEH Sub Preferred Stock; (b) immediately thereafter, and pursuant to a prearranged and binding agreement, the sale by Reorganized TCEH of all of the Reorganized TCEH Sub Preferred Stock to one or more third party investors in exchange for Cash; *provided*, *however*, that Holders of TCEH First Lien Claims shall not be permitted to purchase the Reorganized TCEH Sub Preferred Stock; and (c) the distribution of such Cash by Reorganized TCEH to TCEH to fund recoveries under the TCEH Plan.

215.    "*Spin-Off Tax Receivable Agreement*" means the tax receivable agreement or similar arrangement, if any, under which Reorganized TCEH (or one or more of its subsidiaries) shall agree to make payments in respect of Reorganized TCEH's (or its subsidiaries') specified tax items, to be entered into, at the TCEH Plan Proponents' request, on the Effective Date immediately before the Spin-Off by Reorganized TCEH (or one or more of its subsidiaries), the material terms and conditions of which shall be (i) as proposed by TCEH Plan Proponents (subject to any modifications as consented to by the TCEH Plan Proponents and the TCEH Debtors, such consent not to be unreasonably withheld, delayed or conditioned) and (ii) included in the TCEH Plan Supplement.

216.    "*Spin-Off TRA Rights*" means the rights to receive payments under (and otherwise share in the benefits of) the Spin-Off Tax Receivable Agreement (if any), whether such rights are structured as a separate instrument issued by Reorganized TCEH (or one or more of its subsidiaries) pursuant to the Spin-Off Tax Receivable Agreement, an equity interest in an entity that is a party to the Spin-Off Tax Receivable Agreement, or otherwise.

217.    "*Standing Motions*" means, collectively:  (a) the Committee Standing Motion; (b) the TCEH Unsecured Group Standing Motion; and (c) the EFH/EFIH Committee Standing Motion.

218.    "*Tax and Interest Makewhole Agreements*" means, collectively:  (a) that certain Tax Make-Whole Agreement, dated as of January 1, 2002, by and among Oncor Electric and TXU Generation Company LP; (b) that certain Interest Make-Whole Agreement, dated as of January 1, 2002, by and among Oncor Electric and TXU Generation Company LP; and (c) that certain Interest Make Whole Agreement, dated as of January 1, 2004, by and among TXU Electric Delivery Company and TXU Generation Company LP.

219.    "*Tax Matters Agreement*" means, (a) if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the tax matters agreement to be entered into on or prior to the Effective Date by and among EFH Corp., EFIH and Reorganized TCEH, effective upon the Distribution and (b) if the Taxable Separation is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the tax matters agreement by and among (x) Reorganized TCEH and (y) EFH Corp. and/or EFIH that such parties may enter into on or prior to the Effective Date; *provided* such agreement shall, in each case, (i) govern the rights and obligations of each party with respect to certain tax matters, (ii) be consistent with the Tax Matters Agreement Term Sheet and (iii) be in form and substance acceptable to the TCEH Plan Proponents.

220.    "*Tax Matters Agreement Term Sheet*" means the term sheet with respect to the Tax Matters Agreement attached hereto as Exhibit B.

221.    "*Tax Sharing Agreements*" means, collectively:  (a) the Competitive Tax Sharing Agreement; and (b) any formal or informal, written or unwritten tax sharing agreement among substantially the same parties that are parties to the Competitive Tax Sharing Agreement.

222.    "*Taxable Separation*" means the transactions required or advisable to cause the TCEH Debtors to directly or indirectly transfer all of its assets to Reorganized TCEH (or one or more of its subsidiaries) in a transaction that will be treated as a taxable sale or exchange pursuant to Section 1001 of the Internal Revenue Code and not (in whole or in part) as a tax-free transaction (under Section 368 of the Internal Revenue Code or otherwise), which may include such steps as (a) the formation of Reorganized TCEH and one or more subsidiaries by a designee of the TCEH Plan Proponents; (b) subject to clause (c), the transfer of TCEH's assets to an indirect subsidiary of Reorganized TCEH in exchange for Claims transferred to such indirect subsidiary; (c) the transfer of a portion of the TCEH Debtors' assets to an indirect subsidiary of Reorganized TCEH in exchange for preferred

stock of Reorganized TCEH (or one or more of its subsidiaries), subject to a pre-existing binding commitment to sell such preferred stock to third-party investors for cash; and/or (d) any other methodology proposed by the TCEH Plan Proponents. The Taxable Separation shall be in form and substance as proposed by the TCEH Plan Proponents and shall be described in more detail in the Taxable Separation Memorandum.

223.    "*Taxable Separation Memorandum*" means the restructuring steps memorandum describing the Taxable Separation, which shall be in form and substance acceptable to the TCEH Plan Proponents and included in the Plan Supplement.

224.    "*Taxable Separation Tax Receivable Agreement*" means the tax receivable agreement or similar arrangement, if any, under which Reorganized TCEH (or one or more of its subsidiaries) shall agree to make payments in respect of Reorganized TCEH's (or its subsidiaries') specified tax items, to be entered into, at the request of the TCEH Plan Proponents, on the Effective Date, the material terms and conditions of which shall be (i) as proposed by the TCEH Plan Proponents and (ii) included in the TCEH Plan Supplement.

225.    "*Taxable Separation TRA Rights*" means the rights to receive payments under (and otherwise share in the benefits of) the Taxable Separation Tax Receivable Agreement (if any), whether such rights are structured as a separate instrument issued by Reorganized TCEH (or one or more of its subsidiaries), an equity interest in an entity that is a party to the Taxable Separation Tax Receivable Agreement, or otherwise.

226.    "*TCEH*" means Texas Competitive Electric Holdings Company LLC, a Delaware limited liability company.

227.    "*TCEH 2012 Incremental Term Loans*" means the TCEH First Lien Claims deemed to have been incurred pursuant to section 1 of the Incremental Amendment Agreement.

228.    "*TCEH 2015 Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, for the TCEH 2015 Notes, dated as of October 31, 2007, by and among TCEH and TCEH Finance, Inc., as the issuers; EFCH and certain TCEH subsidiaries as guarantors; and the TCEH Unsecured Notes Trustee.

229.    "*TCEH 2015 Notes*" means the 10.25% fixed senior notes due November 1, 2015, issued by TCEH and TCEH Finance pursuant to the TCEH 2015 Note Indenture.

230.    "*TCEH Cash Payment*" means $550,000,000.00 less (i) any Settlement Agreement Professional Fees, (ii) (a) the EFH Committee Settlement Payment Amount, if known as of the Effective Date or (b) if the EFH Committee Settlement Payment Amount is not known as of the Effective Date, the EFH Committee Settlement Escrow Amount and (iii) the EPA Settlement Amount.

231.    "*TCEH Confirmation Order*" means the order of the Bankruptcy Court confirming the TCEH Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the TCEH Plan Proponents.

232.    "*TCEH Credit Agreement*" means the Credit Agreement, dated as of October 10, 2007, as amended, by and among TCEH, as borrower, EFCH and certain TCEH subsidiaries, as guarantors, the lending institutions party from time to time thereto, the TCEH First Lien Agent, and the other parties thereto.

233.    "*TCEH Credit Agreement Claim*" means any Claims derived from or based upon the TCEH Credit Agreement, including the term loan, revolver, letter of credit, and commodity collateral posting facilities, and guaranty Claims with respect to EFCH.

234.    "*TCEH Credit Amendment*" means that certain Amendment No. 2 to the TCEH Credit Agreement, dated as of April 7, 2011, among TCEH, as borrower, EFCH, the undersigned lenders party to the TCEH Credit Agreement, Citibank, N.A., as administrative and collateral agent, and Citigroup Global Markets Inc., J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, Goldman Sachs Credit Partners L.P., and Morgan Stanley Senior Funding, Inc., as amendment arrangers.

235. "*TCEH Debtor Intercompany Claim*" means, collectively: (a) any Claim by a TCEH Debtor against another TCEH Debtor; and (b) any Claim derived from or based upon the Repurchased PCRBs.

236. "*TCEH Debtors*" means, collectively: (a) EFCH; (b) TCEH; and (c) TCEH's directly and indirectly owned subsidiaries listed on **Exhibit A** to the TCEH Plan.

237. "*TCEH Deficiency Recipient Claims*" means, collectively: (a) the TCEH Unsecured Note Claims; (b) the TCEH Second Lien Note Claims; and (c) the Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH.

238. "*TCEH Disclosure Statement*" means the *Disclosure Statement for the Plan of Reorganization for Energy Future Competitive Holdings Co, , et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated [insert] 2016 [D.I. __], including all exhibits and schedules thereto, as approved pursuant to the TCEH Disclosure Statement Order.

239. "*TCEH Disclosure Statement Order*" means the *Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [D.I. ___].

240. "*TCEH Finance*" means TCEH Finance, Inc., a Delaware corporation.

241. "*TCEH First Lien Administrative Agent*" means Wilmington Trust, N.A., solely in its capacity as successor administrative agent to Citibank, N.A. under the TCEH Credit Agreement.

242. "*TCEH First Lien Agent*" means, collectively, the TCEH First Lien Administrative Agent and the TCEH First Lien Collateral Agent and, where applicable, the former administrative agent, the former swingline lender, each former revolving letter of credit issuer, each former and current deposit letter of credit issuer, and the former collateral agent under the TCEH Credit Agreement.

243. "*TCEH First Lien Claims*" means, collectively: (a) the TCEH Credit Agreement Claims; (b) the TCEH First Lien Note Claims; (c) the TCEH First Lien Interest Rate Swap Claims; and (d) the TCEH First Lien Commodity Hedge Claims.

244. "*TCEH First Lien Collateral Agent*" means Wilmington Trust, N.A., solely in its capacity as successor collateral agent to Citibank, N.A. under the TCEH First Lien Intercreditor Agreement.

245. "*TCEH First Lien Commodity Hedge Claim*" means any Claim derived from or based upon the TCEH First Lien Commodity Hedges.

246. "*TCEH First Lien Commodity Hedges*" means the commodity hedges entered into by TCEH and secured by a first lien on the same collateral as the TCEH Credit Agreement Claims and the TCEH First Lien Note Claims.

247. "*TCEH First Lien Creditor Adequate Protection Payment Allocation Dispute*" means the issue raised by the TCEH First Lien Notes Trustee and/or certain Holders of TCEH First Lien Note Claims that, pursuant to section 510(a) of the Bankruptcy Code or otherwise pursuant to applicable law, the Adequate Protection Payments (as defined in the Cash Collateral Order) under the Cash Collateral Order must be allocated among the Holders of TCEH First Lien Claims pursuant to the Postpetition Interest Allocation Calculation (as defined in the Cash Collateral Order); *provided*, *however*, that nothing in this definition shall limit any claims or defenses to such issue.

248. "*TCEH First Lien Creditor Adequate Protection Payment Allocation Order*" means a Final Order resolving with prejudice the TCEH First Lien Creditor Adequate Protection Payment Allocation Dispute.

249.   "*TCEH First Lien Creditor Allocation Disputes*" means, collectively:  (a) the TCEH First Lien Creditor Adequate Protection Payment Allocation Dispute; and (b) the TCEH First Lien Creditor Plan Distribution Allocation Dispute.  For the avoidance of doubt, the TCEH First Lien Creditor Allocation Disputes shall not include the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

250.   "*TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute*" means the issues raised in the action captioned Marathon Asset Management, LP, v. Wilmington Trust, N.A., (Index No. 651669/2015), that was originally filed by Marathon Asset Management, LP, Polygon Convertible Opportunity Master Fund, and Polygon Distressed Opportunities Master Fund in New York State Supreme Court on May 14, 2015, or any successor action, adversary proceeding, contested matter, or other litigation proceeding in which any claim or Cause of Action is asserted that the Holders of Deposit L/C Loans (as defined in the TCEH Credit Agreement) have a priority security interest, as compared to other Holders of TCEH First Lien Secured Claims, in certain cash deposited in the Deposit L/C Loan Collateral Account (as defined in the TCEH Credit Agreement); *provided*, *however*, that nothing in this definition shall limit any claims or defenses to such issues.

251.   "*TCEH First Lien Creditor Distributions*" means any and all of the distributions set forth in Article III.C.3 below.

252.   "*TCEH First Lien Creditor Petition Date Allocated Claim Amounts*" means the Allowed amounts of such Claims as of the Petition Date as set forth in the TCEH Plan.

253.   "*TCEH First Lien Creditor Plan Distribution Allocation Dispute*" means the issue raised by the TCEH First Lien Notes Trustee and/or certain Holders of TCEH First Lien Note Claims that, pursuant to section 510(a) of the Bankruptcy Code or otherwise pursuant to applicable law, the TCEH First Lien Creditor Distributions should be allocated among the Holders of TCEH First Lien Claims on a basis other than Pro Rata based upon the Allowed amounts of such Claims as of the Petition Date; *provided*, *however*, that nothing in this definition shall limit any claims or defenses to such issue.

254.   "*TCEH First Lien Creditor Plan Distribution Allocation Order*" means a Final Order resolving with prejudice the TCEH First Lien Creditor Plan Distribution Allocation Dispute, which allocations may be based on the TCEH First Lien Creditor Petition Date Allocated Claim Amounts, the TCEH First Lien Creditor Postpetition Interest Allocated Claim Amounts, or as otherwise provided in such Final Order.

255.   "*TCEH First Lien Creditor Postpetition Interest Allocated Claim Amounts*" means the Allowed amounts of such Claims plus postpetition interest calculated at the rate set forth in each of the applicable governing contracts from the Petition Date until the Effective Date.

256.   "*TCEH First Lien Deficiency Claim*" means any TCEH First Lien Claim that is not a TCEH First Lien Secured Claim.

257.   "*TCEH First Lien Intercreditor Agreement*" means that certain Amended and Restated Collateral Agency and Intercreditor Agreement, dated as of October 10, 2007, as amended and restated from time to time, by and among TCEH, EFCH, the TCEH First Lien Agent, and the other parties thereto.

258.   "*TCEH First Lien Interest Rate Swap Claim*" means any Claim derived from or based upon the TCEH First Lien Interest Rate Swaps.

259.   "*TCEH First Lien Interest Rate Swaps*" means the interest rate swaps entered into by TCEH and secured by a first lien on the same collateral as the TCEH Credit Agreement Claims and the TCEH First Lien Note Claims.

260.   "*TCEH First Lien Note Claim*" means any Claim derived from or based upon the TCEH First Lien Notes, excluding any Claim derived from or based upon the TCEH First Lien Notes held by EFH Corp.

261.    "*TCEH First Lien Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated April 19, 2011, among TCEH and TCEH Finance, as issuers, EFCH and certain of TCEH's subsidiaries, as guarantors, and the TCEH First Lien Notes Trustee.

262.    "*TCEH First Lien Note Intercreditor Action*" means the action captioned *Delaware Trust Company* v. *Wilmington Trust, N.A.* (Index No. 650792/2015), that was originally filed by the TCEH First Lien Notes Trustee in New York State Supreme Court on March 13, 2015, and any successor action, adversary proceeding, contested matter, or other litigation proceeding in which any claim or Cause of Action is asserted that property or assets distributed to Holders of TCEH First Lien Claims should be allocated among such Holders taking into account the accrual of postpetition interest on such claims despite the fact that pursuant to section 502(b) of the Bankruptcy Code interest ceased to accrue against the TCEH Debtors on the TCEH First Lien Claims as of the Petition Date; *provided*, *however*, that nothing in this definition shall limit any claims or defenses to such arguments.

263.    "*TCEH First Lien Notes*" means the 11.50% fixed senior secured notes due October 1, 2020, issued by TCEH and TCEH Finance pursuant to the TCEH First Lien Note Indenture.

264.    "*TCEH First Lien Notes Trustee*" means Delaware Trust Company, as successor trustee to BNY.

265.    "*TCEH First Lien Secured Claim*" means any TCEH First Lien Claim that is Secured.

266.    "*TCEH Intercompany Notes*" means, collectively: (a) that certain intercompany promissory note for principal and interest payments, dated as of October 10, 2007, as amended and restated, by and among EFH Corp., as maker, and TCEH, as payee; (b) that certain intercompany promissory note for SG&A, dated as of October 10, 2007, as amended and restated, by and among EFH Corp., as maker, and TCEH, as payee; and (c) that certain intercompany promissory note, dated as of February 22, 2010, as amended and restated, by and among TCEH, as maker, and EFH Corp., as payee.

267.    "*TCEH Plan*" means this *Plan of Reorganization for Energy Future Competitive Holdings Co.* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code*, including the TCEH Plan Supplement.

268.    "*TCEH Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the TCEH Plan, to be Filed by the TCEH Plan Proponents no later than 14 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement comprised of, among other documents, the following:  (a) the New Organizational Documents; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List (which, in the event the EFH Debtors seek to assume and assign the Employment Agreements to Reorganized TCEH, shall include the Employment Agreements); (d) a list of retained Causes of Action; (e) the Reorganized TCEH Debtor Management Incentive Plan; (f) the New Employee Agreements/Arrangements; (g) the Reorganized TCEH Registration Rights Agreement; (h) the identity of the members of the New Board and management for the Reorganized TCEH Debtors; (i) the New Reorganized TCEH Debt Documents; (j) the Tax Matters Agreement; (k) the Taxable Separation Memorandum; (l) the Transition Services Agreement (if any); (m) the Reorganized TCEH Shareholders' Agreement; (n) the material terms and conditions of the Taxable Separation Tax Receivable Agreement (if any); (o) the material terms and conditions of the Spin-Off Tax Receivable Agreement (if any); and (p) the Separation Agreement (if any).  Any reference to the TCEH Plan Supplement in the TCEH Plan shall include each of the documents identified above as (a) through (p), as applicable.  The documents that comprise the TCEH Plan Supplement shall be:  (1) subject to any consent or consultation rights provided hereunder and thereunder, including as provided in the definitions of the relevant documents; and (2) in form and substance acceptable to the TCEH Plan Proponents.  The TCEH Plan Proponents shall have the right to amend the documents contained in the TCEH Plan Supplement through and including the Effective Date in accordance with Article IX of the TCEH Plan and the applicable document.

269.    "*TCEH Second Lien Consortium*" means that certain Ad Hoc Consortium of Holders of TCEH Second Lien Notes.

Case 14-10979-CSS    Doc 8480    Filed 05/19/16    Page 36 of 158

270.    "*TCEH Second Lien Intercreditor Agreement*" means that certain Second Lien Intercreditor Agreement, dated as of October 6, 2010, as amended and restated from time to time, by and among TCEH, EFCH, the TCEH First Lien Agent, the TCEH Second Lien Notes Trustee, and the other parties thereto.

271.    "*TCEH Second Lien Note Claim*" means any Claim derived from or based upon the TCEH Second Lien Notes.

272.    "*TCEH Second Lien Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated October 6, 2010, by and among TCEH and TCEH Finance, as issuers, EFCH and certain of TCEH's subsidiaries, as guarantors, the TCEH Second Lien Notes Trustee, and the TCEH Second Lien Notes Collateral Agent.

273.    "*TCEH Second Lien Notes*" means the 15.0% fixed senior secured second lien notes and the 15.0% fixed senior secured second lien notes, Series B, due April 1, 2021, issued by TCEH and TCEH Finance pursuant to the TCEH Second Lien Note Indenture.

274.    "*TCEH Second Lien Notes Collateral Agent*" means BNYMTC, as collateral agent.

275.    "*TCEH Second Lien Notes Trustee*" means Wilmington Savings Fund Society, as successor trustee to BNY.

276.    "*TCEH Senior Toggle Notes*" means the 10.50%/11.25% senior toggle notes due November 1, 2016, issued by TCEH and TCEH Finance pursuant to the TCEH Senior Toggle Note Indenture.

277.    "*TCEH Senior Toggle Note Indenture*" means that certain Indenture, as amended or supplemented from time to time, dated December 6, 2007, by and among TCEH and TCEH Finance, Inc., as issuers, EFCH and certain TCEH subsidiaries, as guarantors, and the TCEH Unsecured Notes Trustee.

278.    "*TCEH Settlement Claim*" means the Unsecured Claim of TCEH against EFH Corp., Allowed in the amount of $700 million pursuant to the Settlement Agreement.

279.    "*TCEH Settlement Claim Turnover Distributions*" means the recovery, proceeds or distributions, if any, that TCEH receives on account of the TCEH Settlement Claim and that it is required to assign or otherwise turn over to certain Holders of EFIH Beneficiary Claims (as defined in the REIT Plan) pursuant to the terms and conditions of Section 4 of the EFH/EFIH Committee Settlement. For the avoidance of doubt, the TCEH Settlement Claim Turnover Distributions shall not exceed, in the aggregate, $37.8 million.

280.    "*TCEH Unsecured Ad Hoc Group*" means that certain Ad Hoc Group of TCEH Unsecured Noteholders made up of Holders of TCEH Unsecured Notes.

281.    "*TCEH Unsecured Debt Claims*" means, collectively:  (a) the TCEH First Lien Deficiency Claims; (b) the TCEH Second Lien Note Claims; (c) the TCEH Unsecured Note Claims; and (d) the PCRB Claims.

282.    "*TCEH Unsecured Group Litigation Letter*" means that certain letter, dated as of April 30, 2015, from the TCEH Unsecured Ad Hoc Group to the EFH Debtors, EFIH Debtors and TCEH Debtors identifying Claims and Causes of Action that the TCEH Unsecured Ad Hoc Group may seek standing to pursue.

283.    "*TCEH Unsecured Group Standing Motion*" means the *Motion of the Ad Hoc Group of TCEH Unsecured Noteholders for Entry of an Order Granting Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims* [D.I. 3603].

284.    "*TCEH Unsecured Note Claim*" means any Claim derived from or based upon the TCEH Unsecured Notes, excluding any Claim derived from or based upon the TCEH Unsecured Notes held by EFH Corp. or EFIH.

01:18713421.1

27

285. "*TCEH Unsecured Notes*" means, collectively:  (a) the TCEH 2015 Notes; and (b) the TCEH Senior Toggle Notes.

286. "*TCEH Unsecured Notes Trustee*" means Law Debenture Trust Company of New York, as successor trustee to BNY.

287. "*TEF*" means Texas Energy Future Capital Holdings LLC, a Delaware limited liability company and the general partner of Texas Holdings.

288. "*Terminated Restructuring Support Agreement*" means that certain Restructuring Support and Lock-Up Agreement, dated as of April 29, 2014, by and among EFH Corp, EFIH, EFH Corporate Services, EFIH Finance, the TCEH Debtors, and certain Holders of Claims and Interests, including all exhibits and schedules attached thereto, and terminated as of July 24, 2014 [D.I. 1697].

289. "*Tex-La*" means the Tex-La Electric Cooperative of Texas, Inc.

290. "*Tex-La 2019 Obligations*" means the payment obligations of EFCH under the terms of the Tex-La Assumption Agreement with respect to the 9.58% fixed notes due 2019 issued by Tex-La in the outstanding principal amount of $35 million.

291. "*Tex-La 2021 Obligations*" means the payment obligations of EFCH under the terms of the Tex-La Assumption Agreement with respect to the 8.254% fixed notes due 2021 issued by Tex-La in the outstanding principal amount of $37 million.

292. "*Tex-La Assumption Agreement*" means that certain Assumption Agreement, dated February 1, 1990 by and among EFCH, Tex-La, and the U.S. acting through the Administrator of the Rural Utilities Service, whereby EFCH agreed to assume certain outstanding indebtedness of Tex-La that is guaranteed by the Rural Utilities Service.

293. "*Tex-La Obligations*" means, collectively:  (a) the Tex-La 2019 Obligations; and (b) the Tex-La 2021 Obligations.

294. "*Texas Holdings*" means Texas Energy Future Holdings Limited Partnership, a Texas limited partnership, which holds substantially all of the outstanding Interests in EFH Corp.

295. "*Transaction Agreements*" means, collectively, (a) the New Reorganized TCEH Debt Documents; (b) the Tax Matters Agreement (if any); (c) the Transition Services Agreement (if any); (d) the Taxable Separation Tax Receivable Agreement (if any); (e) the Spin-Off Tax Receivable Agreement (if any); (f) the Separation Agreement (if any) and (g) related agreements.

296. "*Transition Services Agreement*" means the transition services agreement that may be entered into between Reorganized TCEH and EFH, in form and substance acceptable to the TCEH Plan Proponents, addressing the Shared Services and any other transition services reasonably necessary to the continued operation of EFIH and/or EFH (or EFH Corp., as applicable), which shall be included in the TCEH Plan Supplement.

297. "*Unexpired Lease*" means a lease to which one or more of the TCEH Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

298. "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

299. "*U.S.*" means the United States of America.

300. "*U.S. Trustee*" means the Office of the U.S. Trustee for Region 3.

301.    "*Unsecured Claim*" means any Claim that is not a Secured Claim.

B.    *Rules of Interpretation.*

For the purposes of the TCEH Plan:

(1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

(3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented;

(4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

(5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto;

(6) unless otherwise specified, all references herein to exhibits are references to exhibits in the TCEH Plan Supplement;

(7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the TCEH Plan in its entirety rather than to a particular portion of the TCEH Plan;

(8) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the TCEH Plan, the rights and obligations arising pursuant to the TCEH Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules;

(9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the TCEH Plan;

(10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply;

(11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be;

(12) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

(13) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated;

(14) any immaterial effectuating provisions may be interpreted by the TCEH Plan Proponents in such a manner that is consistent with the overall purpose and intent of the TCEH Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and

(15) except as otherwise specifically provided in the TCEH Plan to the contrary, references in the TCEH Plan to the TCEH Debtors or to the Reorganized TCEH Debtors shall mean the TCEH Debtors and the Reorganized TCEH Debtors, as applicable, to the extent the context requires.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the TCEH Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.    *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the TCEH Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the TCEH Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant TCEH Debtor or Reorganized TCEH Debtor, as applicable.

E.    *Reference to Monetary Figures.*

All references in the TCEH Plan to monetary figures shall refer to currency of the U.S., unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

A.    *Administrative Claims.*

1.    General Administrative Claims.

Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the TCEH Plan Proponents agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either:  (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, 60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the TCEH Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except for Claims of Professionals, requests for payment of General Administrative Claims must be Filed and served on the TCEH Plan Proponents and the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, no later than the Administrative Claims Bar Date applicable to the TCEH Debtor against whom the General Administrative Claim is asserted pursuant to the procedures specified in the TCEH Confirmation Order and the notice of the Effective Date.  Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date that do not File and

serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the TCEH Debtors, the Reorganized TCEH Debtors, or their respective property and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for further action by the TCEH Debtors or the Reorganized TCEH Debtors or further order of the Bankruptcy Court. To the extent this Article II.A.1 conflicts with Article XII.C of the TCEH Plan with respect to fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C of the TCEH Plan shall govern.

　　　　2.　　Professional Compensation.

　　　　　　(a)　　Final Fee Applications.

　　　　All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date, must be Filed and served on the TCEH Plan Proponents and the Reorganized TCEH Debtors no later than 45 days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to its full Allowed amount. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims will be paid by the Reorganized TCEH Debtors. For the avoidance of doubt, the TCEH Debtors shall pay all Allowed Collective Professional Fee Claims and Allowed Direct Professional Fee Claims that have been allocated to the TCEH Debtors through the Effective Date; provided, however, that the TCEH Debtors reserve the right to seek reimbursement from the EFH Debtors and/or the EFIH Debtors to the extent that such allocation is modified pursuant to any order entered by the Bankruptcy Court in the EFH Debtors and/or the EFIH Debtors' Chapter 11 Cases. The TCEH Debtors shall not pay, and shall not be obligated to pay, any Allowed Collective Professional Fee Claims or Allowed Direct Professional Fee Claims that are allocated to the EFH Debtors or EFIH Debtors.

　　　　　　(b)　　Professional Fee Escrow Account.

　　　　On the Effective Date, the Reorganized TCEH Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the TCEH Debtors or the Reorganized TCEH Debtors. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized TCEH Debtors from the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized TCEH Debtors, without any further action or order of the Bankruptcy Court.

　　　　　　(c)　　Professional Fee Reserve Amount.

　　　　Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the TCEH Debtors before and as of the Effective Date and shall deliver such estimate to the TCEH Plan Proponents and TCEH Debtors no later than five days before the Effective Date, *provided, however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the TCEH Debtors or Reorganized TCEH Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total amount estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

(d)    Post-Effective Date Fees and Expenses.

Except as otherwise specifically provided in the TCEH Plan, from and after the Effective Date, the TCEH Debtors or Reorganized TCEH Debtors shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the TCEH Plan and Consummation incurred on or after the Effective Date by (i) the TCEH Debtors or Reorganized TCEH Debtors, (ii) the Committee, and (iii) the TCEH Plan Proponents. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the TCEH Debtors or Reorganized TCEH Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however*, that this Article II.B.2(d) shall only apply to the Professionals of the TCEH Debtors or Reorganized TCEH Debtors, as applicable; *provided, further*, that from and after the Effective Date, any fees and expenses otherwise payable by the EFH Debtors or EFIH Debtors under the Interim Compensation Order shall continue to be paid by the EFH Debtors and EFIH Debtors pursuant to the terms set forth therein.

B.    *DIP Claims.*

The DIP Claims shall be Allowed in the full amount due and owing under the DIP Credit Agreement, including all principal, accrued and accruing postpetition interest, costs, fees, and expenses. On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, each Allowed DIP Claim, each such Holder shall receive payment in full in Cash on the Effective Date; *provided* that:

1.    in respect of any DIP L/C that is outstanding on the Effective Date, at the option of Reorganized TCEH, (i) such DIP L/C shall have been canceled (as evidenced by return of the original DIP L/C to the applicable DIP L/C Issuer for cancelation or, if no original was issued, written confirmation from the beneficiary of the DIP L/C to the DIP L/C Issuer, via swift or in the form of a release letter, that such outstanding DIP L/C is no longer in effect), (ii) such DIP L/C shall have been collateralized in Cash in an amount equal to 101% of the undrawn face amount of such DIP L/C, pursuant to documentation in form and substance satisfactory to the applicable DIP L/C Issuer, (iii) a back-to-back letter of credit in an amount equal to 101% of the undrawn face amount of such DIP L/C shall have been provided to the applicable DIP L/C Issuer on terms and from a financial institution acceptable to such DIP L/C Issuer, or (iv) such other treatment shall have been provided with respect to such DIP L/C as Reorganized TCEH and the applicable DIP L/C Issuer shall agree;

2.    in respect of any DIP Secured Hedge Obligation that is outstanding on the Effective Date, at the option of Reorganized TCEH, (i) such DIP Secured Hedge Obligation shall be secured by a first priority Lien on the DIP Collateral on terms and conditions as Reorganized TCEH and the applicable DIP Secured Hedge Bank shall agree, (ii) such DIP Secured Hedge Obligation shall be repaid in full in Cash on the Effective Date, or (iii) such other treatment shall have been provided with respect to such DIP Secured Hedge Obligation as Reorganized TCEH and the applicable DIP Secured Hedge Bank shall agree; and

3.    in respect of any DIP Secured Cash Management Obligation that is outstanding on the Effective Date, at the option of Reorganized TCEH, (i) such DIP Secured Cash Management Obligation shall be secured by a first priority Lien on the DIP Collateral on terms and conditions as Reorganized TCEH and the applicable DIP Secured Cash Management Bank shall agree, (ii) such DIP Secured Cash Management Obligation shall be repaid in full in Cash on the Effective Date, or (iii) such other treatment shall have been provided with respect to such DIP Secured Cash Management Obligation as Reorganized TCEH and the applicable DIP Secured Cash Management Bank shall agree; and

4.    the DIP Contingent Obligations (including any and all expense reimbursement obligations of the TCEH Debtors that are contingent as of the Effective Date) shall survive the Effective Date on an unsecured basis, shall be paid by the applicable Reorganized TCEH Debtors as and when due under the DIP Credit Agreement, and shall not be discharged or released pursuant to the TCEH Plan or the TCEH Confirmation Order.

Contemporaneously with all amounts owing in respect of principal included in the DIP Claims (other than the DIP Secured Hedge Obligations, the DIP Secured Cash Management Obligations, and the DIP Contingent Obligations), interest accrued thereon to the date of payment, and fees, expenses, and non-contingent indemnification obligations then due and payable as required by the DIP Facility and arising before the Effective Date being paid in full in Cash (or, in the case of any outstanding DIP L/C, receiving treatment in accordance with Article II.B of the TCEH Plan):   (a) the commitments under the DIP Facility shall automatically terminate; (b) except with respect to the DIP Contingent Obligations, the DIP Facility shall be deemed canceled; (c) all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Estates arising out of or related to the DIP Facility shall automatically terminate and be released, and all DIP Collateral subject to such mortgages, deeds of trust, Liens, pledges, and other security interests shall be automatically released, in each case without further action by the DIP Lenders; and (d) all guarantees of the TCEH Debtors and Reorganized TCEH Debtors arising out of or related to the DIP Claims shall be automatically discharged and released, in each case without further action by the DIP Lenders or any other Entity.

C.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, DIP Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the TCEH Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

B.      *Class Identification for the TCEH Debtors.*

The TCEH Plan constitutes a separate chapter 11 plan of reorganization for each TCEH Debtor, each of which shall include the classifications set forth below.  Subject to Article III.E of the TCEH Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular TCEH Debtors, such Class applies solely to such TCEH Debtor.

The following chart represents the classification of Claims and Interests for each TCEH Debtor pursuant to the TCEH Plan.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims Against the TCEH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims Against the TCEH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | TCEH First Lien Secured Claims | Impaired | Entitled to Vote |
| Class 4 | TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors | Impaired | Entitled to Vote |

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
|       | Other Than EFCH.     |        |               |
| Class 5 | General Unsecured Claims Against EFCH | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | TCEH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 7 | Non-TCEH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests in TCEH Debtors Other Than TCEH and EFCH | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 9 | Interests in TCEH and EFCH | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.    *Treatment of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any TCEH Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.    Class 1 - Other Secured Claims Against the TCEH Debtors.

   (a)    *Classification*: Class 1 consists of Other Secured Claims Against the TCEH Debtors.

   (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class 1 agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 1, each such Holder shall receive, at the option of the TCEH Plan Proponents, either:

      (i)    payment in full in Cash;

      (ii)    delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

      (iii)    Reinstatement of such Claim; or

      (iv)    other treatment rendering such Claim Unimpaired.

   (c)    *Voting:* Class 1 is Unimpaired under the TCEH Plan. Holders of Claims in Class 1 are conclusively deemed to have accepted the TCEH Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

2.    Class 2 - Other Priority Claims Against the TCEH Debtors.

   (a)    *Classification*: Class 2 consists of Other Priority Claims Against the TCEH Debtors.

   (b)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class 2 agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 2, each such Holder shall receive, at the option of the TCEH Plan Proponents, either:

      (i)    payment in full in Cash; or

      (ii)    other treatment rendering such Claim Unimpaired.

   (c)    *Voting*: Class 2 is Unimpaired under the TCEH Plan. Holders of Claims in Class 2 are

conclusively deemed to have accepted the TCEH Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

3.    Class 3 - TCEH First Lien Secured Claims.

(a)    *Classification*: Class 3 consists of TCEH First Lien Secured Claims.

(b)    *Allowance*: As Class 3 Claims, (i) the TCEH Credit Agreement Claims are Allowed in the amount of $22,863,271,257; (ii) the TCEH First Lien Note Claims are Allowed in the amount of $1,815,965,278; (iii) the TCEH First Lien Swap Claims and TCEH First Lien Commodity Hedge Claims are Allowed in an aggregate amount no less than $1,230,817,606.94; and (iv) any Claims of the TCEH First Lien Administrative Agent, the TCEH First Lien Collateral Agent or the TCEH First Lien Notes Trustee for fees, expenses, or indemnification obligations arising under and pursuant to the TCEH Credit Agreement, the TCEH First Lien Notes Indenture, the TCEH First Lien Interest Rate Swaps, the TCEH First Lien Commodity Hedges, or the TCEH First Lien Intercreditor Agreement, as applicable, are Allowed in an amount to be determined.

(c)    *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class 3 agrees to a less favorable treatment of its Allowed Claim (in a writing executed by such Holder after the Petition Date), in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 3, subject to Article III.C.3(d), each such Holder thereof shall receive its Pro Rata share (which, for the avoidance of doubt, shall be based on the Allowed amounts of such Claims as of the Petition Date as set forth in the TCEH Plan) of:

(i)    *If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2*: (a) 100% of the Reorganized TCEH Common Stock (following the Basis Step-Up), subject to dilution after the Distribution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of (1) the TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and the Spin-Off Preferred Stock Sale, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post-Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Spin-Off TRA Rights; and (d) any proceeds of the TCEH Settlement Claim.

(ii)    *If the Taxable Separation is effectuated pursuant to the terms and conditions set forth in Article IV.B.2*: (a) 100% of the Reorganized TCEH Common Stock, subject to dilution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of (1) the TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and certain stock or securities in connection with the Taxable Separation in each case after funding any Cash distributions required to be made by the TCEH Debtors under the Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post-Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Taxable Separation TRA Rights; and (d) any proceeds of the TCEH Settlement Claim.

(d)     *Allocation:* If a TCEH First Lien Creditor Plan Distribution Allocation Order is entered prior to the Effective Date and such order provides that Holders of Allowed Class 3 Claims shall receive the TCEH First Lien Creditor Distributions on a basis other than Pro Rata, then pursuant to section 510(a) of the Bankruptcy Code, any such TCEH First Lien Creditor Distribution that is subject to such TCEH First Lien Creditor Plan Distribution Allocation Order shall be distributed among the Holders of Allowed Class 3 Claims in accordance with such TCEH First Lien Creditor Plan Distribution Allocation Order; *provided*, *however*, that if a TCEH First Lien Creditor Plan Distribution Allocation Order has not been entered by the Effective Date, then the TCEH Debtors shall establish a reserve (in an amount to be determined by the TCEH Debtors, with the consent of each of the TCEH First Lien Agent, the TCEH Plan Proponents, the TCEH First Lien Notes Trustee, and any other parties to the TCEH First Lien Note Intercreditor Action) solely with respect to any TCEH First Lien Creditor Distributions that remain subject to the TCEH First Lien Creditor Plan Distribution Allocation Dispute, with such reserved amounts to be distributed on a Pro Rata basis after entry of a TCEH First Lien Creditor Plan Distribution Allocation Order, unless and to the extent such order provides that Holders of Allowed Class 3 Claims are entitled to a distribution of any TCEH First Lien Creditor Distributions on a basis other than Pro Rata, in which case, pursuant to section 510(a) of the Bankruptcy Code, any such TCEH First Lien Creditor Distribution that is subject to such TCEH First Lien Creditor Plan Distribution Allocation Order shall be distributed among the Holders of Allowed Class 3 Claims in accordance with such TCEH First Lien Creditor Plan Distribution Allocation Order. Nothing in this Plan shall preclude any party from seeking enforcement of the TCEH First Lien Creditor Adequate Protection Payment Allocation Order or distribution of the Holdback Amount (as defined in the Cash Collateral Order) under the Cash Collateral Order. For the avoidance of doubt, nothing in this TCEH Plan shall (i) require any TCEH Debtor or any other party (including, without limitation, the TCEH First Lien Administrative Agent, the TCEH First Lien Collateral Agent, or any holder of TCEH First Lien Claims), to establish any reserve with respect to any distributions that are subject to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute or (ii) impair, prejudice, release, compromise or waive any claims any Holder of Allowed Class 3 Claims may have against one or more other Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) pursuant to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

(e)     *Voting*: Class 3 is Impaired under the TCEH Plan. Therefore, Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the TCEH Plan.

4.     Class 4 - TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH.

(a)     *Classification*:   Class 4 consists of TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH.

(b)     *Allowance*:   As Class 4 Claims, (i) the TCEH First Lien Deficiency Claims are Allowed in the amount of [$____]; (ii) the TCEH Second Lien Note Claims are Allowed in the amount of $1,648,597,521; (iii) the TCEH Unsecured Note Claims are Allowed in the amount of $5,125,775,323; and (iv) the PCRB Claims are Allowed in the Amount of $881,496,233.

(c)     *Treatment*: Except to the extent that a Holder of an Allowed Claim in Class 4 agrees to a less favorable treatment of its Allowed Claim, and subject to Article IV.B.5 of the TCEH Plan, in full and final satisfaction, settlement, release, and discharge of and in

exchange for each Allowed Claim in Class 4, each such Holder shall receive its Pro Rata share of the TCEH Cash Payment.

(d)  *Voting:*  Class 4 is Impaired under the TCEH Plan.  Therefore, Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the TCEH Plan.

5.  Class 5 - General Unsecured Claims Against EFCH.

(a)  *Classification*: Class 5 consists of General Unsecured Claims Against EFCH.

(b)  *Treatment*:  General Unsecured Claims Against EFCH shall be canceled and released without any distribution on account of such Claims.

(c)  *Voting:*  Class 5 is Impaired under the TCEH Plan.  Holders of Claims in Class 5 are conclusively deemed to have rejected the TCEH Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

6.  Class 6 – TCEH Debtor Intercompany Claims.

(a)  *Classification*:  Class 6 consists of TCEH Debtor Intercompany Claims.

(b)  *Treatment*:  TCEH Debtor Intercompany Claims shall be, at the option of the TCEH Plan Proponents, either:

(i)  Reinstated; or

(ii)  canceled and released without any distribution on account of such Claims;

*provided*, *however*, that TCEH Debtor Intercompany Claims against each of EFCH, TCEH, or TCEH Finance and any TCEH Debtor Intercompany Claim derived from or based upon the Repurchased PCRBs shall be canceled and released without any distribution on account of such Claims.

(c)  *Voting*:  Holders of Claims in Class 6 are conclusively deemed to have accepted or rejected the TCEH Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

7.  Class 7 - Non-TCEH Debtor Intercompany Claims.

(a)  *Classification*:  Class 7 consists of Non-TCEH Debtor Intercompany Claims.

(b)  *Treatment*:  Non-TCEH Debtor Intercompany Claims shall be canceled and released without any distribution on account of such Claims.

(c)  *Voting*:  Class 7 is Impaired under the TCEH Plan.  Holders of Claims in Class 7 are conclusively deemed to have rejected the TCEH Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

8.  Class 8 - Interests in TCEH Debtors Other Than TCEH and EFCH.

(a)  *Classification*:  Class 8 consists of Interests in TCEH Debtors Other Than TCEH and EFCH.

(b)      *Treatment*:  Interests in TCEH Debtors Other Than TCEH and EFCH shall be, at the option of the TCEH Plan Proponents, either:

(i)       Reinstated; or

(ii)      canceled and released without any distribution on account of such Interests.

(c)      *Voting*:  Holders of Interests in Class 8 are conclusively deemed to have accepted or rejected the TCEH Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

9.    Class 9 - Interests in TCEH and EFCH.

(a)      *Classification*:  Class 9 consists of Interests in TCEH and EFCH.

(b)      *Treatment*:  Interests in TCEH and EFCH shall be canceled and released without any distribution on account of such Interests.

(c)      *Voting*:  Class 9 is Impaired under the TCEH Plan.  Holders of Interests in Class 9 are conclusively deemed to have rejected the TCEH Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

D.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the TCEH Plan, nothing under the TCEH Plan shall affect the TCEH Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the TCEH Disclosure Statement Order shall be considered vacant, deemed eliminated from the TCEH Plan for purposes of voting to accept or reject the TCEH Plan, and disregarded for purposes of determining whether the TCEH Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the TCEH Plan by one or more of the Classes entitled to vote pursuant to Article III.C of the TCEH Plan.  The TCEH Plan Proponents shall seek Confirmation of the TCEH Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

G.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

H.      *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the TCEH Plan take into account and conform to the relative priority

and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the TCEH Plan Proponents reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.  Notwithstanding the foregoing, this TCEH Plan gives effect to the TCEH First Lien Intercreditor Agreement and no additional changes to the allowance, classification, treatment, or distributions shall be made as a result of the TCEH First Lien Intercreditor Agreement except for any such changes provided for or otherwise consistent with the TCEH First Lien Creditor Plan Distribution Allocation Order as contemplated by Article III.C.3 of the Plan; *provided*, that notwithstanding the foregoing, nothing herein shall impair, prejudice, release, compromise or waive the rights, claims, Causes of Action, defenses or remedies of any Holder of Allowed Class 3 Claims against any other Holder of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) in connection with the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.  Notwithstanding anything to the contrary herein, the TCEH First Lien Agent and the Holders of Allowed TCEH First Lien Claims shall be deemed to have waived any rights under the TCEH Second Lien Intercreditor Agreement to the extent such rights would, in any way, impair or diminish the recoveries of the Holders of Allowed TCEH Second Lien Note Claims under this TCEH Plan or related documents.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE TCEH PLAN

A.    *General Settlement of Claims and Interests.*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the TCEH Plan, upon the Effective Date, the provisions of the TCEH Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the TCEH Plan.  Subject to Article VI of the TCEH Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

1.    Restructuring Transactions.

On the Effective Date, with the consent of the TCEH Plan Proponents, the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the TCEH Debtors, to the extent provided therein.  The actions to implement the Restructuring Transactions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the TCEH Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the TCEH Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the TCEH Plan.

The TCEH Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize and direct, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the TCEH Plan, including the Restructuring Transactions.

2.    Manner of TCEH Debtors' Separation from EFH Debtors.

The TCEH Debtors shall be separated from the EFH Debtors pursuant to either the Spin-Off or the Taxable Separation.  If (a) the Spin-Off Conditions are satisfied on or before the Spin-Off Conditions Termination Date and (b) the Spin-Off Conditions remain satisfied as of the Effective Date, then the TCEH Debtors will effectuate the Spin-Off on the Effective Date.  In all other circumstances, the TCEH Debtors will effectuate the Taxable Separation on the Effective Date.  For the avoidance of doubt, if the Spin-Off Conditions are not satisfied on or before the Spin-Off Conditions Termination Date for any reason, the TCEH Plan shall automatically be effectuated pursuant to the Taxable Separation.

(a)     Spin-Off:  If applicable, the TCEH Debtors will undertake the Spin-Off, as follows:

(i)     TCEH formed Reorganized TCEH prior to the Effective Date;

(ii)    on the Effective Date, except for liabilities assumed by Reorganized TCEH pursuant to the TCEH Plan, all other Claims against the TCEH Debtors will be canceled, and each Holder of an Allowed Claim against a TCEH Debtor will have the right to receive its recovery in accordance with the terms of the TCEH Plan; and TCEH shall assume the obligations of its subsidiaries that are TCEH Debtors to make distributions pursuant to and in accordance with the TCEH Plan that are to be made after the Effective Date;

(iii)   immediately following such cancelation, TCEH and the EFH Debtors will make the Contribution to Reorganized TCEH, in exchange for which TCEH shall receive 100% of the (i) Reorganized TCEH membership interests and (ii) the net Cash proceeds of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt);

(iv)    immediately following the Contribution, TCEH and Reorganized TCEH shall effectuate the Spin-Off Preferred Stock Sale, including the distribution of the proceeds thereof to TCEH;

(v)     immediately following the Spin-Off Preferred Stock Sale, Reorganized TCEH shall undertake the Reorganized TCEH Conversion; and

(vi)    immediately following the Reorganized TCEH Conversion, TCEH will make the Distribution.

(b)     Taxable Separation:  If applicable, the TCEH Debtors will undertake the Taxable Separation, as set forth in the Taxable Separation Memorandum.

3.     TCEH Basis Step-Up.

If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, pursuant to the Spin-Off Preferred Stock Sale, gain will be triggered in an amount not in excess of, and in order to achieve, the Basis Step-Up.

4.     Transition Services Agreement.

If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, on the Effective Date, Reorganized TCEH and EFH Corp. or their respective subsidiaries will enter into the Transition Services Agreement.

5.     Implementation of the TCEH Settlement.

On the Effective Date, and for the purposes of this TCEH Plan and the settlements and compromises incorporated herein or contemplated hereby, (a) Holders of Allowed TCEH First Lien Deficiency Claims will waive

or be deemed to have waived, and the TCEH First Lien Agent will not take any action to interfere or that is inconsistent with the waiver of, any recovery or distribution on account of (but not voting rights in respect of) such Allowed TCEH First Lien Deficiency Claims (including on account of any recovery or distribution provided for in Article III.C.4) for the benefit of Holders of Allowed TCEH Deficiency Recipient Claims, and (b) all distributions on account of the TCEH Cash Payment that would otherwise have been distributed to, or for the benefit of, Holders of Allowed TCEH First Lien Deficiency Claims pursuant this TCEH Plan will instead be distributed Pro Rata to Holders of Allowed TCEH Deficiency Recipient Claims, such that each Holder of an Allowed TCEH Deficiency Recipient Claim receives a proportion thereof equal to the amount its Allowed TCEH Deficiency Recipient Claim bears to the aggregate amount of all Allowed TCEH Deficiency Recipient Claims. For the avoidance of doubt, under no circumstance will any Holder of an Allowed TCEH First Lien Deficiency Claim receive any portion of the TCEH Cash Payment on account of such Allowed TCEH First Lien Deficiency Claims under the TCEH Plan.

Solely for purposes of allocating the TCEH Cash Payment among the Holders of Allowed TCEH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, Allowed PCRB Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH: (a) the Professional Fees (as defined in the Settlement Order) of the TCEH Unsecured Group (as defined in the Settlement Agreement) and the TCEH Second Lien Group (as defined in the Settlement Agreement) that (i) are actually paid pursuant to Paragraph P of the Settlement Order and (ii) are not subject to or covered by the TCEH Unsecured Notes Trustee's and TCEH Second Lien Notes Trustee's "charging liens," respectively, shall reduce Pro Rata the distributions to all holders of Allowed TCEH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, Allowed PCRB Claims and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH based on the amounts of the respective distributions such Holders would otherwise receive but for such reduction and after taking into account the other provisions of this Article IV.B.5; (b) the Professional Fees (as defined in the Settlement Order) of the TCEH Unsecured Group (as defined in the Settlement Agreement) and TCEH Unsecured Notes Trustee that (i) are actually paid pursuant to Paragraph P of the Settlement Order and (ii) are subject to or covered by the TCEH Unsecured Note Trustee's "charging lien" shall reduce Pro Rata the distributions to Holders of Allowed TCEH Unsecured Notes Claims based on the amounts of their Allowed Claims; and (c) the Professional Fees (as defined in the Settlement Order) of the TCEH Second Lien Group (as defined in the Settlement Agreement) and TCEH Second Lien Notes Trustee that (i) are actually paid pursuant to Paragraph P and (ii) are subject to or covered by the TCEH Second Lien Notes Trustee's "charging lien," shall reduce Pro Rata the distributions to holders of Allowed TCEH Second Lien Note Claims based on the amounts of their Allowed Claims.

6.    Tax Matters Agreement.

If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, EFH Corp., EFIH and Reorganized TCEH shall enter into the Tax Matters Agreement, which agreement shall govern the rights and obligations of each party thereto with respect to certain tax matters, including covenants intended to protect the Spin-Off Intended Tax Treatment and indemnity provisions if either party takes any action that causes the Spin-Off to fail to qualify for the Spin-Off Intended Tax Treatment, as described in the Tax Matters Agreement Term Sheet. If the Taxable Separation is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, (x) Reorganized TCEH and (y) EFH Corp. and/or EFIH may enter into the Tax Matters Agreement, which agreement shall govern the rights and obligations of each party thereto with respect to certain tax matters, as described in the Tax Matters Agreement Term Sheet. After the Effective Date, the Tax Matters Agreement shall not be amended or modified in any manner without the written consent of Reorganized TCEH.

7.    Separation Agreement

On or before the Effective Date, the EFH Debtors, the EFIH Debtors and Reorganized TCEH may enter into the Separation Agreement on terms satisfactory to such parties, which agreement shall address the transfer by the EFH Debtors and EFIH Debtors of certain assets, liabilities, and equity interests related to the TCEH Debtors' operations.

C.    *Sources of Consideration for TCEH Plan Distributions.*

Distributions under the TCEH Plan shall be funded with, as applicable:  (1) Cash on hand at the TCEH Debtors; (2) the New Reorganized TCEH Debt and/or the Cash proceeds thereof; (3) the Cash proceeds of the Spin-Off Preferred Stock Sale or any sale of stock or securities pursuant to the Taxable Separation; (4) the Reorganized TCEH Common Stock; and (5) the Spin-Off TRA Rights (if any) or the Taxable Separation TRA Rights (if any).

Each distribution and issuance referred to in Article VI of the TCEH Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance of certain securities in connection with the TCEH Plan, including the Reorganized TCEH Common Stock will be exempt from SEC registration to the fullest extent permitted by law.

1.    Cash on Hand at the TCEH Debtors.

The TCEH Debtors shall use their Cash on hand to fund distributions to certain Holders of Claims against the TCEH Debtors in accordance with the TCEH Plan.

2.    New Reorganized TCEH Debt.

On the Effective Date, Opco shall enter into the New Reorganized TCEH Debt Documents and incur the New Reorganized TCEH Debt, *provided*, *however*, that if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, Opco shall enter into the New Reorganized TCEH Debt Documents and incur the New Reorganized TCEH Debt before the Reorganized TCEH Conversion.

Confirmation shall constitute approval of the New Reorganized TCEH Debt Documents (including the transactions contemplated thereby, and all actions to be undertaken, undertakings to be made, and obligations to be incurred by Reorganized TCEH in connection therewith), and authorization for Reorganized TCEH to enter into and execute the New Reorganized TCEH Debt Documents, subject to such modifications as Reorganized TCEH may deem to be reasonably necessary to consummate the New Reorganized TCEH Debt Documents.

Opco will distribute the Cash proceeds of the New Reorganized TCEH Debt (or at the TCEH Plan Proponents' election) all or a portion of such New Reorganized TCEH Debt, to TCEH and TCEH shall use such

proceeds (or such New Reorganized TCEH Debt) to fund distributions to certain Holders of Claims against the TCEH Debtors in accordance with the TCEH Plan.

    3.    Reorganized TCEH Common Stock.

Reorganized TCEH shall be authorized to issue 450,000,000 shares of Reorganized TCEH Common Stock, subject to dilution only by the Reorganized TCEH Debtor Management Incentive Plan.  Reorganized TCEH shall issue all securities, instruments, certificates, and other documents required to be issued for the Reorganized TCEH Common Stock in respect of Reorganized TCEH or its subsidiaries.  All of the shares of Reorganized TCEH Common Stock issued pursuant to the TCEH Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Certain Holders of Reorganized TCEH Common Stock will be parties to the Reorganized TCEH Registration Rights Agreement.

    4.    Reorganized TCEH Sub Preferred Stock.

If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the Reorganized TCEH Debtors shall enter into the Spin-Off Preferred Stock Sale.  Under the Spin-Off Preferred Stock Sale, the Preferred Stock Entity will be authorized to issue a certain number of shares of Reorganized TCEH Sub Preferred Stock, the terms of which shall be consistent with the description of the preferred stock contained in the IRS Submissions previously filed by the EFH Debtors and the EFIH Debtors (unless otherwise consented to by the TCEH Plan Proponents). The Preferred Stock Entity shall issue all securities, instruments, certificates, and other documents required to be issued for the Reorganized TCEH Sub Preferred Stock in respect of Reorganized TCEH or its subsidiaries.  All of the shares of Reorganized TCEH Sub Preferred Stock issued pursuant to the TCEH Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Reorganized TCEH will distribute the Cash proceeds from the sale of the Reorganized TCEH Sub Preferred Stock to TCEH prior to the Reorganized TCEH Conversion, and TCEH shall use such proceeds to fund distributions to certain Holders of Allowed Claims against the TCEH Debtors in accordance with the TCEH Plan.

D.    *Intercompany Account Settlement.*

The TCEH Debtors and the Reorganized TCEH Debtors, as applicable, subject to the consent of the TCEH Plan Proponents, as applicable, shall be entitled to transfer funds between and among themselves as they determine to be necessary or advisable to enable the Reorganized TCEH Debtors to satisfy their obligations under the TCEH Plan.

E.    *Competitive Tax Sharing Agreement.*

On the Effective Date, the Competitive Tax Sharing Agreement shall automatically terminate as to the TCEH Debtors and all Claims and Causes of Action arising thereunder or in any way related thereto shall be forever fully discharged, canceled, and released.

F.    *Corporate Existence.*

Except as otherwise provided in the TCEH Plan, each TCEH Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable TCEH Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the TCEH Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the TCEH Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).  The Reorganized TCEH Debtors will

continue to fund the Nuclear Decommissioning Obligations in the ordinary course of business after the Effective Date.

G.    *Vesting of Assets in the Reorganized TCEH Debtors.*

Except as otherwise provided in the TCEH Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the TCEH Debtors pursuant to the TCEH Plan shall vest in each applicable Reorganized TCEH Debtor, free and clear of all Liens, Claims, charges, Interests, or other encumbrances.  Except as otherwise provided in the TCEH Plan, on and after the Effective Date, each of the Reorganized TCEH Debtors may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

H.    *Cancelation of Existing Securities and Agreements.*

Except as otherwise provided in the TCEH Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, TCEH First Lien Secured Claims, EFCH 2037 Note Claims, TCEH Second Lien Note Claims, TCEH Unsecured Note Claims, PCRB Claims, and DIP Claims, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or a Holder to take further action with respect to any note(s) or security and the obligations of the TCEH Debtors or Reorganized TCEH Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the Indenture Trustees, the TCEH First Lien Agent, and the DIP Agent shall be released from all duties thereunder; *provided, however,* that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of: (1) allowing Holders to receive distributions under the TCEH Plan; (2) allowing the Indenture Trustees, the TCEH First Lien Agent, and the DIP Agent to make the distributions in accordance with the TCEH Plan (if any), as applicable; (3) preserving any rights of the DIP Agent, the TCEH First Lien Agent, or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the relevant indenture, the TCEH Credit Agreement, the TCEH First Lien Intercreditor Agreement, or the DIP Credit Agreement, including any rights to priority of payment and/or to exercise charging liens; (4) allowing the Indenture Trustees, TCEH First Lien Agent, and DIP Agent to enforce any obligations owed to each of them under the TCEH Plan; and (5) allowing the Indenture Trustees, TCEH First Lien Agent, and DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided, further, however,* that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the TCEH Confirmation Order, or the TCEH Plan, or result in any expense or liability to the TCEH Debtors or Reorganized TCEH Debtors, as applicable.  For the avoidance of doubt, the TCEH First Lien Intercreditor Agreement, the TCEH Credit Agreement, and the TCEH First Lien Note Indenture remain in effect solely to the extent necessary to preserve the TCEH First Lien Creditor Allocation Disputes and the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, and any (a) claims or Causes of Action by the TCEH First Lien Notes Trustee, TCEH First Lien Agent, or Holders of TCEH First Lien Claims against other Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) claims or Causes of Action by any Holder of Allowed Class 3 Claims against any other Holder of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) in the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute (or any claims, Causes of Action or defenses of any other party to such dispute); *provided, further, however,* that except as expressly set forth in the TCEH Plan, after the Effective Date, the TCEH Debtors and the Reorganized TCEH Debtors shall not be obligated to pay any fees or expenses under either the TCEH First Lien Intercreditor Agreement, the TCEH First Lien Note Indenture, or the TCEH Credit Agreement arising in connection with the TCEH First Lien Creditor Allocation Disputes or the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, and all related Claims shall be released and discharged consistent with Article VIII.A of the TCEH Plan.

I.      *Corporate Action.*

On the Effective Date, all actions contemplated under the TCEH Plan with respect to the applicable TCEH Debtor or Reorganized TCEH Debtor, as applicable, shall be deemed authorized and approved in all respects, including:  (1) implementation of the Restructuring Transactions; (2) selection of the directors and officers for the Reorganized TCEH Debtors; (3) as applicable, adoption of, entry into, and assumption and/or assignment of the New Employee Agreements/Arrangements and the Employment Agreements; (4) adoption of the Reorganized TCEH Debtor Management Incentive Plan; (5) incurrence of the New Reorganized TCEH Debt and distribution of such New Reorganized TCEH Debt or the net proceeds, if any; (6) issuance and distribution of the Reorganized TCEH Common Stock (if any); (7) the Spin-Off Preferred Stock Sale (if any); (8) implementation of the Taxable Separation; (9) issuance and distribution of the common stock of the Preferred Stock Entity (if any); (10) issuance and distribution of the Reorganized TCEH Sub Preferred Stock (if any); and (11) all other actions contemplated under the TCEH Plan (whether to occur before, on, or after the Effective Date).  All matters provided for herein involving the corporate structure of the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, and any corporate action required by the TCEH Debtors or the Reorganized TCEH Debtors in connection with the TCEH Plan shall be deemed to have occurred and shall be in effect as of the Effective Date, without any requirement of further action by the Bankruptcy Court, security holders, directors, managers, or officers of the TCEH Debtors or the Reorganized TCEH Debtors.  On or before the Effective Date, the appropriate officers of the TCEH Debtors or the Reorganized TCEH Debtors shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the TCEH Plan (or necessary or desirable to effect the transactions contemplated under the TCEH Plan) in the name of and on behalf of the Reorganized TCEH Debtors, including the New Reorganized TCEH Debt Documents, the Reorganized TCEH Common Stock, the common stock of the Preferred Stock Entity (if any), the Reorganized TCEH Sub Preferred Stock (if any), and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified.  The authorizations and approvals contemplated by this Article IV.I shall be effective notwithstanding any requirements under non-bankruptcy law.

J.      *New Organizational Documents.*

The New Organizational Documents for Reorganized TCEH or any of its subsidiaries shall be in form and substance acceptable to the TCEH Plan Proponents and included in the Plan Supplement.

On the Effective Date, each of the Reorganized TCEH Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized TCEH Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and their respective New Organizational Documents.

K.      *Directors and Officers of the Reorganized TCEH Debtors.*

As of the Effective Date, the term of the current members of the board of directors of the applicable TCEH Debtors shall expire, and the initial boards of directors, including the New Board, and the officers of each of the Reorganized TCEH Debtors shall be appointed in accordance with the respective New Organizational Documents. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the TCEH Plan Proponents will disclose in the TCEH Plan Supplement the identity and affiliations of any person proposed to serve on the initial board of directors or be an officer of each of the Reorganized TCEH Debtors.  To the extent any such director or officer of the Reorganized TCEH Debtors is an "insider" under the Bankruptcy Code, the TCEH Plan Proponents also will disclose the nature of any compensation to be paid to such director or officer.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents, the New Employee Agreements/Arrangements, the Employment Agreements (if any) and other constituent documents of the Reorganized TCEH Debtors.

L.       *Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the TCEH Plan, including (1) the Restructuring Transactions; (2) the New Reorganized TCEH Debt; (3) the Reorganized TCEH Common Stock; (4) the common stock of the Preferred Stock Entity (if any); (5) the Reorganized TCEH Sub Preferred Stock (if any); (6) the assignment or surrender of any lease or sublease; and (7) the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the TCEH Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the TCEH Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the TCEH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

M.       *Director, Officer, Manager, and Employee Liability Insurance.*

On or before the Effective Date, the TCEH Debtors, on behalf of the Reorganized TCEH Debtors will obtain sufficient liability insurance policy coverage for the six-year period following the Effective Date for the benefit of the TCEH Debtors' current and former directors, managers, officers, and employees on terms no less favorable to the directors, managers, officers, and employees than the TCEH Debtors' existing director, officer, manager, and employee coverage and with an available aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement.  After the Effective Date, none of the TCEH Debtors or the Reorganized TCEH Debtors shall terminate or otherwise reduce the coverage under any director, officer, manager, and employee insurance policies (including the "tail policy") in effect on the Effective Date, with respect to conduct occurring prior thereto, and all officers, directors, managers, and employees of the TCEH Debtors who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

N.       *Reorganized TCEH Debtor Management Incentive Plan.*

The Reorganized TCEH Debtor Management Incentive Plan is hereby approved in its entirety and shall be implemented on the Effective Date by the applicable Reorganized TCEH Debtors without any further action by the New Board or the Bankruptcy Court.

O.        *Employee Obligations.*

Except as otherwise provided in the TCEH Plan or the TCEH Plan Supplement, the Reorganized TCEH Debtors shall honor the TCEH Debtors' written contracts, agreements, policies, programs and plans for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of any of the TCEH Debtors who served in such capacity at any time (including the compensation programs approved by the Bankruptcy Court pursuant to the 2015 Compensation Order and the 2016 Compensation Order).  To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and, to the extent any of the EFH Debtors or EFIH Debtors are the counterparty to such executory contracts and seek to assume and assign such contracts to Reorganized TCEH on the Effective Date, such executory contracts will be assumed by Reorganized TCEH as of the Effective Date.

P.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the TCEH Plan, the Reorganized TCEH Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to their Estates, whether arising before or after the Petition Date, including any actions specifically enumerated in the TCEH Plan Supplement, and the Reorganized TCEH Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than:  (i) the Causes of Action released by the TCEH Debtors pursuant to the releases and exculpations contained in the TCEH Plan, including in Article VIII, which shall be deemed released and waived by the TCEH Debtors and Reorganized TCEH Debtors as of the Effective Date; (ii) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law; and (iii) the Causes of Action released by the TCEH Debtors pursuant to the Settlement Agreement.

The Reorganized TCEH Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized TCEH Debtors.  **No Entity may rely on the absence of a specific reference in the TCEH Plan, the TCEH Plan Supplement or the TCEH Disclosure Statement to any Cause of Action against it as any indication that the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, will not pursue any and all available Causes of Action against it.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled herein or in a Bankruptcy Court order, the Reorganized TCEH Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized TCEH Debtors reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the TCEH Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a TCEH Debtor may hold against any Entity shall vest in the Reorganized TCEH Debtors.  The Reorganized TCEH Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Q.      *Payment of Certain Fees.*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Reorganized TCEH Debtors shall pay on the Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by professionals (a) payable under (1) the DIP Facility and (2) the Cash Collateral Order, including any applicable transaction, success, or similar fees for which the applicable TCEH Debtors have agreed to be obligated, and (b) retained by any of the TCEH Plan Proponents.  Reorganized TCEH shall indemnify (a) the TCEH First Lien Agent for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of its counsel and agents) incurred after the Effective Date solely in connection with the implementation of the TCEH Plan, including but not limited to, making distributions pursuant to and in accordance with the TCEH Plan, and any disputes arising in connection therewith; and (b) any of the TCEH Plan Proponents for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of its counsel and agents) incurred after the Effective Date solely in connection with the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

All amounts distributed and paid pursuant to this Article IV.Q shall not be subject to disgorgement, setoff, recoupment, reduction, or reallocation of any kind.

R.      *Treatment of Certain Claims of the PBGC and Pension Plan.*

Nothing in the Chapter 11 Cases, the TCEH Disclosure Statement, the TCEH Plan, the TCEH Confirmation Order, or any other document filed in the Chapter 11 Cases shall be construed to discharge, release, limit, or relieve any individual from any claim by the PBGC or the Pension Plan for breach of any fiduciary duty under ERISA,

including prohibited transactions, with respect to the Pension Plan, subject to any and all applicable rights and defenses of such parties, which are expressly preserved. The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions of the TCEH Disclosure Statement, TCEH Plan, TCEH Confirmation Order, Bankruptcy Code, or other document filed in the Chapter 11 Cases. For the avoidance of doubt, the Reorganized TCEH Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable law relating to or arising from the Pension Plans.

S.      *Spin-Off Tax Receivable Agreement.*

If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, at the election of the TCEH Plan Proponents, on the Effective Date and before the Distribution, Reorganized TCEH (or one or more of its subsidiaries) shall enter into the Spin-Off Tax Receivable Agreement, under which Reorganized TCEH (or one or more of its subsidiaries) shall agree to make payments in respect of its (or its subsidiaries') specified tax items to or for the benefit of the TCEH First Lien Creditors (or their assigns). In addition, and notwithstanding the foregoing, Reorganized TCEH (or one or more of its subsidiaries) may enter into one or more tax receivable agreements or other similar arrangements after the Effective Date.

T.      *Taxable Separation Tax Receivable Agreement*

If the Taxable Separation is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, at the election of the TCEH Plan Proponents, on the Effective Date, Reorganized TCEH (or one or more of its subsidiaries) shall enter into the Taxable Separation Tax Receivable Agreement, under which Reorganized TCEH (or one or more of its subsidiaries) shall agree to make payments in respect of Reorganized TCEH's (or its subsidiaries') specified tax items to or for the benefit of the TCEH First Lien Creditors (or their assigns). In addition, and notwithstanding the foregoing, Reorganized TCEH (or one or more of its subsidiaries) may enter into one or more tax receivable agreements or other similar arrangements after the Effective Date.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases of the TCEH Debtors, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, will be deemed to be Assumed Executory Contracts or Unexpired Leases, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the TCEH Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date. Entry of the TCEH Confirmation Order by the Bankruptcy Court shall constitute approval of such assignments and/or assumptions and the rejection of the Executory Contracts or Unexpired Leases listed on the Rejected Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized TCEH Debtors in accordance with its terms, except as such terms are modified by the TCEH Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Notwithstanding anything in this Article V.A to the contrary, if the Employment Agreements and the New Employee Agreements/Arrangements are assumed and/or assigned (as applicable) to Reorganized TCEH on the Effective Date, Reorganized TCEH shall be responsible for any cure costs arising from or related to the assumption of such Employment Agreement. Notwithstanding anything to the contrary in the TCEH Plan, the TCEH Plan Supplement, the Executive Severance Policy, or any Employment Agreement, the occurrence of the Effective Date shall be deemed to constitute a "change in control" under the Executive Severance Policy and each Employment

Agreement.  In the event the EFH Debtors seek to assume and assign the Employment Agreements to Reorganized TCEH, on the Effective Date, Reorganized TCEH shall execute a written agreement (in a form reasonably acceptable to the TCEH Plan Proponents) with each employee who is party to such an assumed Employment Agreement acknowledging that the transactions consummated upon the occurrence of the Effective Date shall constitute a "change in control" under such employee's Employment Agreement.  The TCEH Plan Proponents reserve the right to alter, amend, modify, or supplement the schedules of Executory Contracts and Unexpired Leases at any time through and including 45 days after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the TCEH Plan or the TCEH Confirmation Order, if any, must be Filed within 30 days after the later of:  (1) the date of entry of an order of the Bankruptcy Court (including the TCEH Confirmation Order) approving such rejection; and (2) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the TCEH Debtors or the Reorganized TCEH Debtors, the Estates, or their property without the need for any objection by the Reorganized TCEH Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the TCEH Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable TCEH Debtor and shall be treated in accordance with the TCEH Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the TCEH Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized TCEH Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.  At least 14 days before the Confirmation Hearing, the TCEH Plan Proponents will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the TCEH Plan Proponents and the TCEH Debtors at least seven (7) days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  **Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Preexisting Obligations to the TCEH Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the TCEH Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty

or counterparties to the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

E.      *Indemnification Obligations.*

Notwithstanding anything in the TCEH Plan to the contrary, each Indemnification Obligation shall be assumed by the applicable TCEH Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise.  Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

Notwithstanding the foregoing, nothing shall impair the ability of the Reorganized TCEH Debtors to modify indemnification obligations (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date.

F.      *Insurance Policies.*

Each of the TCEH Debtors' Insurance Policies are treated as Executory Contracts under the TCEH Plan. Unless otherwise provided in the TCEH Plan, on the Effective Date, the TCEH Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, and such Insurance Policies shall not be impaired in any way by the TCEH Plan or TCEH Confirmation Order, but rather will remain valid and enforceable in accordance with their terms.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the TCEH Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the TCEH Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the TCEH Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List or the Assumed Executory Contract and Unexpired Lease List, nor anything contained in the TCEH Plan, shall constitute an admission by the TCEH Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized TCEH Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the TCEH Plan Proponents shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

I.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur with respect to a TCEH Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such TCEH Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

J.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any TCEH Debtor will be performed by the applicable TCEH Debtor or the applicable Reorganized TCEH Debtor liable thereunder in the ordinary course of their business.  Subject to Article V.A, any such contracts and leases that have not been rejected as of the date of the Confirmation Date shall survive and remain unaffected by entry of the TCEH Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the TCEH Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the TCEH Plan provides for Allowed Claims and Allowed Interest in the applicable Class.  In the event that any payment or act under the TCEH Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the TCEH Plan.  Except as otherwise provided in the TCEH Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the TCEH Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.  For the avoidance of doubt, distributions to Holders of Allowed Class 3 Claims shall be made in accordance with Article III.C.3 of the TCEH Plan, notwithstanding the pendency of the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

With respect to Holders of Class 4 Claims that are Allowed as of the Effective Date, the amount of the Effective Date distribution will be calculated as if each Disputed Class 4 Claim were an Allowed Class 4 Claim equal to the lesser of (a) the asserted amount of such Claim and (b) the amount estimated by the Bankruptcy Court in accordance with Article VII.C of the TCEH Plan.  On each Periodic Distribution Date, the Disbursing Agent shall make additional Pro Rata distributions to Holders of Allowed Class 4 Claims until such Claims have received the maximum recovery available to Holders of Class 4 Claims under the TCEH Plan.

Before the Effective Date, the TCEH Plan Proponents shall create, in consultation with the TCEH Committee, a list of Disputed Class 4 Claims that shall be Allowed Class 4 Claims as of the Effective Date. Following the creation of such list, the TCEH Plan Proponents shall, as soon as reasonably practicable thereafter submit, to the Bankruptcy Court an order, in form and substance reasonably acceptable to the TCEH Committee, allowing such Claims; *provided*, *however*, that entry of such order shall not in any way impede, delay, or otherwise interfere with the occurrence of the Effective Date.

B.      *Disbursing Agent.*

All distributions under the TCEH Plan shall be made to Holders of Allowed Claims by the Disbursing Agent on the Effective Date, or as soon as reasonably practicable thereafter, in accordance with the TCEH Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of Disbursing Agent.*

1.      Powers of the Disbursing Agent.

The Disbursing Agent shall be empowered to:   (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the TCEH Plan; (b) make all distributions

contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the TCEH Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the TCEH Plan.

        2.     Expenses Incurred On or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized TCEH Debtors.

*D.*     *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

        1.     Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  The record Holder for the TCEH Credit Agreement Claims solely for purposes of the Record Date shall be the TCEH First Lien Administrative Agent.

        2.     Delivery of Distributions in General.

Except as otherwise provided herein, the Reorganized TCEH Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the TCEH Debtors' records as of the date of any such distribution; *provided*, *however*, that the Distribution Record Date shall not apply to publicly-traded Securities.  The manner of such distributions shall be determined at the discretion of the Reorganized TCEH Debtors, and the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Interest Filed by that Holder.

        3.     Delivery of Distributions on DIP Claims.

All distributions on account of DIP Claims shall be made to the DIP Agent, who shall be deemed to be the Holder of such DIP Claims, as applicable, for purposes of distributions to be made hereunder.  As soon as practicable following compliance with the requirements set forth in this Article VI, the DIP Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of DIP Claims in accordance with the terms of the DIP Facility, as applicable, subject to any modifications to such distributions in accordance with the terms of the TCEH Plan; *provided, however*, that the DIP Agent shall retain all rights as administrative agents under the DIP Facility in connection with the delivery of distributions to the DIP Lenders.  The DIP Agent shall not have any liability to any person with respect to distributions made or directed to be made by the DIP Agent.

        4.     Delivery of Distributions on TCEH First Lien Claims.

To the extent that the TCEH First Lien Creditor Plan Distribution Allocation Order provides that any of the TCEH First Lien Creditor Distributions are Collateral (as that term is used in the TCEH First Lien Intercreditor Agreement) or proceeds of Collateral (as that term is used in the TCEH First Lien Intercreditor Agreement), then such distributions shall be made to the TCEH First Lien Collateral Agent for further distribution to the Secured Debt Representatives (as defined in the TCEH First Lien Intercreditor Agreement) pursuant to and in accordance with the Plan and the TCEH First Lien Creditor Plan Distribution Allocation Order, and the Secured Debt Representatives (as defined in the TCEH First Lien Intercreditor Agreement) shall in turn make such distributions to the Holders of Allowed Class 3 Claims pursuant to and in accordance with the Plan and the TCEH First Lien Creditor Plan Distribution Allocation Order.  To the extent that the TCEH First Lien Creditor Plan Distribution Allocation Order provides that any of the TCEH First Lien Creditor Distributions are not Collateral (as that term is used in the TCEH First Lien Intercreditor Agreement) or proceeds of Collateral (as that term is used in the TCEH First Lien

Intercreditor Agreement), then such distributions shall be made to the Secured Debt Representatives (as defined in the TCEH First Lien Intercreditor Agreement) for further distribution directly to the Holders of Allowed Class 3 Claims pursuant to and in accordance with the TCEH Plan.  If the TCEH First Lien Creditor Plan Distribution Allocation Order has not been entered as of the Effective Date, a reserve will be established in the manner described in Article III.C.3.  For the avoidance of doubt, distributions to Holders of Allowed Class 3 Claims shall be made in accordance with Article III.C.3 of the Plan, notwithstanding the pendency of the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.  **THE TCEH FIRST LIEN AGENT AND THE TCEH FIRST LIEN NOTES TRUSTEE SHALL NOT HAVE ANY LIABILITY TO ANY PERSON WITH RESPECT TO DISTRIBUTIONS MADE OR DIRECTED TO BE MADE BY SUCH TCEH FIRST LIEN AGENT OR TCEH FIRST LIEN NOTES TRUSTEE PURSUANT TO AND IN ACCORDANCE WITH THE TCEH PLAN**.

     5.     No Fractional Distributions.

No fractional shares of Reorganized TCEH Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the TCEH Plan on account of an applicable Allowed Claim would otherwise result in the issuance of a number of shares of Reorganized TCEH Common Stock that is not a whole number, the actual distribution of shares of Reorganized TCEH Common Stock shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor.  The total number of authorized shares of Reorganized TCEH Common Stock to be distributed to Holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

     6.     Minimum Distribution.

No Cash payment of less than $50.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

     7.     Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the applicable Distribution Date.  After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized TCEH Debtor(s) automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the claim of any Holder to such property shall be fully discharged, released, and forever barred.

     8.     Delivery of Distributions on PCRB Claims.

All distributions on account of PCRB Claims are subject to the PCRB Trustee's charging lien and priority of payment rights.  Accordingly, before any distribution is made to the Holders of Allowed PCRB Claims pursuant to Article III.C.4 of the TCEH Plan, the Disbursing Agent will distribute (solely from the distribution to Holders of Allowed PCRB Claims, as set forth in Article III.C.4 of the TCEH Plan) to the PCRB Trustee the amount that is necessary to pay in full (in accordance with the amount provided by the PCRB Trustee in a written notice to the Disbursing Agent) (a) the fees and expenses of the PCRB Trustee (including professional and other advisory fees and expenses) that are not otherwise paid under the TCEH Plan and (b)  any reserve for fees and expenses as requested by the PCRB Trustee (including any reserve required in the event of an appeal relating to the PCRB Trustee's fees and expenses otherwise payable under this TCEH Plan).  The Disbursing Agent shall distribute Pro Rata the remainder of any distribution pursuant to Article III.C.4 that is distributable on account of the PCRB Claims to the Holders of the PCRB Claims pursuant to the TCEH Plan.  The Disbursing Agent also shall distribute Pro Rata to the Holders of the PCRB Claims any unused portion of any reserve required by the PCRB Trustee upon the PCRB's release of such reserve to the Disbursing Agent.

E.      *Manner of Payment.*

Unless as otherwise set forth herein, all distributions of Cash and the Reorganized TCEH Common Stock to the Holders of Allowed Claims under the TCEH Plan shall be made by the Disbursing Agent on behalf of the Reorganized TCEH Debtors.  At the option of the Disbursing Agent, any Cash payment to be made under the TCEH Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.  All Cash distributions to be made hereunder to the DIP Agent on account of the DIP Claims shall be made by wire transfer.

F.      *SEC Registration/Exemption.*

Each of the Reorganized TCEH Common Stock, New Reorganized TCEH Debt, Reorganized TCEH Sub Preferred Stock (as applicable), Spin-Off TRA Rights (as applicable), and Taxable Separation TRA Rights (as applicable) are or may be "securities," as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the Reorganized TCEH Common Stock to Holders of Allowed Claims against the TCEH Debtors is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities.  The Reorganized TCEH Common Stock, issued to Holders of Allowed Claims against TCEH, (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized TCEH Debtors as the case may be, as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

The New Reorganized TCEH Debt, the Reorganized TCEH Sub Preferred Stock (as applicable), Spin-Off TRA Rights (as applicable), and Taxable Separation TRA Rights (if applicable) will be issued without registration under the Securities Act in reliance on the exemption from the registration requirements of the Securities Act provided by section 4(a)(2) of the Securities Act (and/or Regulation D promulgated thereunder) and each will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable law.

Should the Reorganized TCEH Debtors elect on or after the Effective Date to reflect any ownership of any of the Reorganized TCEH Common Stock, the New Reorganized TCEH Debt, Reorganized TCEH Sub Preferred Stock (if applicable), Spin-Off TRA Rights (if applicable), and Taxable Separation TRA Rights (if applicable) through the facilities of DTC, the Reorganized TCEH Debtors need not provide any further evidence other than the TCEH Plan or the TCEH Confirmation Order with respect to the treatment of the Reorganized TCEH Common Stock, New Reorganized TCEH Debt, Reorganized TCEH Sub Preferred Stock (if applicable), Spin-Off TRA Rights (if applicable), and Taxable Separation TRA Rights (if applicable) under applicable securities laws.

DTC shall be required to accept and conclusively rely upon the TCEH Plan and TCEH Confirmation Order in lieu of a legal opinion regarding whether any of the Reorganized TCEH Common Stock, New Reorganized TCEH Debt, Reorganized TCEH Sub Preferred Stock (if applicable), Spin-Off TRA Rights (as applicable), and Taxable Separation TRA Rights (if applicable), are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the TCEH Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the TCEH Plan, including, for the avoidance of doubt, whether the Reorganized TCEH Common Stock, New Reorganized TCEH Debt, Reorganized TCEH Sub Preferred Stock (if applicable), Spin-Off TRA Rights (as applicable), and Taxable Separation TRA Rights (if applicable), are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

G.     *Compliance with Tax Requirements.*

In connection with the TCEH Plan, the applicable Reorganized TCEH Debtor(s) shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions pursuant to the TCEH Plan.  Notwithstanding any provision herein to the contrary, the Reorganized TCEH Debtors and the Disbursing Agent, as applicable, shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the TCEH Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements.  The Reorganized TCEH Debtors reserve the right to allocate all distributions made under the TCEH Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

H.     *No Postpetition or Default Interest on Claims.*

Unless otherwise specifically provided for in the TCEH Plan or the TCEH Confirmation Order, and notwithstanding any documents that govern the TCEH Debtors' prepetition funded indebtedness to the contrary, (1) postpetition and/or default interest shall not accrue or be paid on any Claims and (2) no Holder of a Claim shall be entitled to:  (a) interest accruing on or after the Petition Date on any such Claim; or (b) interest at the contract default rate, as applicable.

I.     *Setoffs and Recoupment.*

The TCEH Debtors and Reorganized TCEH Debtors, as applicable, may, but shall not be required to, setoff against or recoup any payments or distributions to be made pursuant to the TCEH Plan in respect of any Claims of any nature whatsoever that the TCEH Debtors or the Reorganized TCEH Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the TCEH Debtors or the Reorganized TCEH Debtors of any such claim it may have against the Holder of such Claim.

J.     *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one TCEH Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one TCEH Debtor may recover distributions from all co-obligor TCEH Debtors' Estates until the Holder has received payment in full on the Allowed Claims.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the TCEH Plan only until payment in full on that Allowed Claim.

K.     *Claims Paid or Payable by Third Parties.*

1.     Claims Paid by Third Parties.

The TCEH Debtors or the Reorganized TCEH Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a TCEH Debtor or a Reorganized TCEH Debtor (other than the Disbursing Agent).  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a TCEH Debtor or a Reorganized TCEH Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Reorganized TCEH Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the TCEH Plan exceeds the amount of such Claim as of the date of any such distribution under the TCEH Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized TCEH Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under the TCEH Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the TCEH Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the TCEH Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies.

Except as otherwise provided in the TCEH Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the TCEH Plan shall constitute or be deemed a waiver of any Cause of Action that the TCEH Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

# ARTICLE VII.
# PROCEDURES FOR RESOLVING CONTINGENT,
# UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims.*

Except as otherwise set forth in the TCEH Plan, after the Effective Date, each of the Reorganized TCEH Debtors shall have and retain any and all rights and defenses such TCEH Debtor had with respect to any Claim immediately before the Effective Date.  This Article VII of the TCEH Plan shall not apply to the DIP Claims, TCEH First Lien Claims, TCEH Second Lien Note Claims, or TCEH Unsecured Note Claims, which Claims shall be Allowed in full and shall not be subject to any avoidance, reductions, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection, or any other challenges under any applicable law or regulation by any person or entity.

B.      *Claims Administration Responsibilities.*

Except as otherwise specifically provided in the TCEH Plan, after the Effective Date, the applicable Reorganized TCEH Debtor(s) shall have the sole authority:  (1) to File, withdraw, or litigate to judgment, objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

Except with respect to Claims and Causes of Action released by the TCEH Debtors pursuant to the releases and exculpations contained in the TCEH Plan, including in Article VIII, if one or more Entities have sought and obtained standing to prosecute a Cause of Action on behalf of one or more of the TCEH Debtors' Estates and such Entities are prosecuting such Causes of Actions as of the Effective Date, then such Entities will have the sole authority, solely with respect to such Causes of Action, to File, withdraw, litigate to judgment, settle, compromise, or take any other actions in respect of such Causes of Action.

C.      *Estimation of Claims.*

Before or after the Effective Date, the TCEH Plan Proponents or the Reorganized TCEH Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such

objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision to the contrary in the TCEH Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the TCEH Plan (including for purposes of distributions), and the relevant Reorganized TCEH Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

D.      *Adjustment to Claims without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized TCEH Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims or Interests.*

Any objections to Claims or Interests shall be Filed on or before the Claims Objection Deadline.

F.      *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the TCEH Debtors has been paid or turned over in full. All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the TCEH Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Entities elect to honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Proofs of Claim.*

On or after the Effective Date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized TCEH Debtors, and any such new or amended Proof of Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date: (1) such Claim has been adjudicated as non-contingent; or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

Case 14-10979-CSS    Doc 8480    Filed 05/19/16    Page 67 of 158

*I.*     *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.A and VII.B of the TCEH Plan, no payment or distribution provided under the TCEH Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

*J.*     *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the TCEH Plan.  Except as otherwise set forth in the TCEH Plan, as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the TCEH Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

*A.*     *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the TCEH Plan or in any contract, instrument, or other agreement or document created pursuant to the TCEH Plan, the distributions, rights, and treatment that are provided in the TCEH Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized TCEH Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the TCEH Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the TCEH Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the TCEH Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the TCEH Plan.  Any default or "event of default" by the TCEH Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The TCEH Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

*B.*     **Release of Liens.**

**Except as otherwise specifically provided in the TCEH Plan or in any contract, instrument, release, or other agreement or document created pursuant to the TCEH Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the TCEH Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the TCEH Debtors elect to Reinstate in accordance with Article III.C.1 of the TCEH Plan (and, with respect to any Allowed Other Secured Claims of the Texas Comptroller which the TCEH Debtors shall Reinstate on the Effective Date), all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security**

01:18713421.1
58

interests shall revert to the Reorganized TCEH Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the TCEH Debtors.

## C.    *Releases by the TCEH Debtors.*

In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the TCEH Debtors, the Reorganized TCEH Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the TCEH Debtors, that the TCEH Debtors, the Reorganized TCEH Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the TCEH Debtors (including the management, ownership or operation thereof), the TCEH Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH First Lien Settlement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the TCEH Plan or the reliance by any Released Party on the TCEH Plan or the TCEH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Terminated Restructuring Support Agreement, the TCEH Disclosure Statement, the TCEH Plan, the Transaction Agreements, the DIP Facility, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the TCEH Plan, including the issuance or distribution of Securities pursuant to the TCEH Plan, or the distribution of property under the TCEH Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the TCEH Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the TCEH Plan Supplement) executed to implement the TCEH Plan or (ii) the TCEH Settlement Claim.

## D.    *Releases by Holders of Claims and Interests.*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each TCEH Debtor, Reorganized TCEH Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the TCEH Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the TCEH Debtors (including the management, ownership or operation thereof), the TCEH Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor

Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH First Lien Settlement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the TCEH Plan or the reliance by any Released Party on the TCEH Plan or the TCEH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Terminated Restructuring Support Agreement, the TCEH Disclosure Statement, the TCEH Plan, the Transaction Agreements, the DIP Facility, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the TCEH Plan, including the issuance or distribution of Securities pursuant to the TCEH Plan, or the distribution of property under the TCEH Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, (ii) any post-Effective Date obligations of any party or Entity under the TCEH Plan, (iii) any Restructuring Transaction, (iv) any document, instrument, or agreement (including those set forth in the TCEH Plan Supplement) executed to implement the TCEH Plan, (v) claims or Causes of Action asserted by any Holder of Allowed Class 3 Claims against one or more Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or (vi) the TCEH Settlement Claim.

E.    *Exculpation.*

Except as otherwise specifically provided in the TCEH Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated Restructuring Support Agreement and related prepetition transactions, the TCEH Disclosure Statement, the TCEH Plan, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the TCEH Plan or the reliance by any Exculpated Party on the TCEH Plan or the TCEH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the TCEH Disclosure Statement, the TCEH Plan, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facility, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the TCEH Plan, including the issuance of Securities pursuant to the TCEH Plan, or the distribution of property under the TCEH Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the TCEH Plan. The Exculpated Parties have, and upon completion of the TCEH Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the TCEH Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the TCEH Plan or such distributions

made pursuant to the TCEH Plan.  For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (ii) claims or Causes of Action asserted by any Holder of Allowed Class 3 Claims against one or more Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

*F.*       *Injunction.*

In addition to any injunction provided in the Settlement Order, except as otherwise expressly provided in the TCEH Plan or for obligations issued or required to be paid pursuant to the TCEH Plan or the TCEH Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to Article VIII.C or Article VIII.D of the TCEH Plan, shall be discharged pursuant to Article VIII.A of the TCEH Plan, or are subject to exculpation pursuant to Article VIII.E of the TCEH Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the TCEH Debtors, the Reorganized TCEH Debtors, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the TCEH Plan.  For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin (a) the TCEH First Lien Creditor Allocation Disputes, or any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or claims or Causes of Action asserted in the Marathon Delaware Action (in accordance with and as that term is defined in the *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, LP to Confirmation of Debtors' Fifth Amended Plan of Reorganization,* dated November 10, 2015 [Docket No. 6932]) by any Holder of Allowed Class 3 Claims against one or more Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

*G.*       *Liabilities to, and Rights of, Governmental Units.*

Nothing in the TCEH Plan or the TCEH Confirmation Order shall release, discharge, or preclude the enforcement of:  (i) any liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date, other than taxes determined under the prompt determination procedure in section 505 of the Bankruptcy Code, to the extent applicable; (iii) any liability to a Governmental Unit on the part of any Entity other than the TCEH Debtors or Reorganized TCEH Debtors; or (iv) any valid right of setoff or recoupment by any Governmental Unit.

H.      *Environmental Law Matters.*

Nothing in the TCEH Plan or the TCEH Confirmation Order shall release, discharge, or preclude the enforcement of (or preclude, release, defeat, or limit the defense under non-bankruptcy law of) : (i) any liability under Environmental Law to a Governmental Unit that is not a Claim; (ii) any Claim under Environmental Law of a Governmental Unit arising on or after the Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of its status as owner or operator of such property after the Effective Date; (iv) any liability to a Governmental Unit on the part of any Entity other than the TCEH Debtors or Reorganized TCEH Debtors; or (v) any valid right of setoff or recoupment by any Governmental Unit.   All parties' rights and defenses under Environmental Law with respect to (i) through (v) above are fully preserved.  For the avoidance of doubt, the United States is not a Releasing Party under the TCEH Plan.

Nothing in the TCEH Plan or the TCEH Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding paragraph.  Nothing in the TCEH Plan or the TCEH Confirmation Order authorizes:  (i) the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law.  The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by the TCEH Confirmation Order or the Plan, or the Bankruptcy Code.

For the avoidance of doubt, all Claims under Environmental Law arising before the Effective Date, including penalty claims for days of violation prior to the Effective Date, shall be subject to Article VIII of the TCEH Plan and treated in accordance with the TCEH Plan in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the TCEH Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the Effective Date.

Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the TCEH Plan or the TCEH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the Effective Date of the TCEH Plan, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such Environmental Action is currently pending; *provided*, *further*, *however*, any judgment for a Claim in the Environmental Action arising before the Effective Date shall be treated in accordance with the TCEH Plan in all respects; *provided*, *further*, *however*, that nothing in the TCEH Plan shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved.  With respect to the Environmental Action, this Article VIII.H does not alter any rights or defenses under non-bankruptcy law arising as a result of any changes of ownership provided in the TCEH Plan or the TCEH Confirmation Order.  The Governmental Units reserve all rights as to whether there are any such rights or defenses.

I.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized TCEH Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized TCEH Debtors, or another Entity with whom the Reorganized TCEH Debtors have been associated, solely because each TCEH Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the TCEH Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, unless such Holder

actually has performed such recoupment and provided notice thereof in writing to the TCEH Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Document Retention.*

On and after the Effective Date, the Reorganized TCEH Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized TCEH Debtors.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE TCEH PLAN**

A.      *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the TCEH Plan:

1.      the Bankruptcy Court shall have entered the TCEH Disclosure Statement Order and the TCEH Confirmation Order in a manner consistent in all material respects with the TCEH Plan and Settlement Order and in form and substance satisfactory to the TCEH Plan Proponents; and

2.      the TCEH Confirmation Order shall, among other things:

(a)      authorize the TCEH Plan Proponents, the TCEH Debtors and the Reorganized TCEH Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the TCEH Plan;

(b)      decree that the provisions of the TCEH Confirmation Order and the TCEH Plan are nonseverable and mutually dependent;

(c)      authorize the TCEH Debtors to consummate either or both of the Spin-Off or the Taxable Separation, in each case subject to satisfaction of all applicable conditions to consummation;

(d)      if the Taxable Separation is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, authorize the TCEH Debtors, the Reorganized TCEH Debtors and the other entities formed pursuant to this TCEH Plan, as applicable/necessary, to:  (i) implement the Restructuring Transactions; (ii) issue and distribute the New Reorganized TCEH Debt and the Reorganized TCEH Common Stock, each pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the TCEH Plan, including Cash, the New Reorganized TCEH Debt, and the Reorganized TCEH Common Stock, and (iv) enter into any agreements, transactions, and sales of property as set forth in the TCEH Plan Supplement;

(e)      if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, authorize the TCEH Debtors, the Reorganized TCEH Debtors and the other entities formed pursuant to this TCEH Plan, as applicable/necessary, to:  (i) implement the Restructuring Transactions; (ii) issue and distribute the New Reorganized TCEH Debt, the Reorganized TCEH Common Stock, the common stock of the Preferred Stock Entity and the Reorganized TCEH Sub Preferred Stock, each pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions

and issuances as required under the TCEH Plan, including Cash, the New Reorganized TCEH Debt, the Reorganized TCEH Common Stock, the common stock of the Preferred Stock Entity and the Reorganized TCEH Sub Preferred Stock; and (iv) enter into any agreements, transactions, and sales of property as set forth in the TCEH Plan Supplement; and

(f)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the TCEH Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the TCEH Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax, and upon entry of the TCEH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

B.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the TCEH Plan:

1.     the TCEH Confirmation Order shall have been duly entered in form and substance acceptable to the TCEH Plan Proponents;

2.     the Settlement Order shall remain in full force and effect;

3.     the final version of the TCEH Plan, the TCEH Plan Supplement, and all of the schedules, documents, and exhibits contained therein (including the New Employee Agreements/Arrangements and the Employment Agreements) shall have been Filed in a manner consistent in all material respects with the TCEH Plan, the Transaction Agreements (as applicable to the TCEH Debtors), the Plan Support Agreement, and the Settlement Order, and shall be in form and substance acceptable to the TCEH Plan Proponents;

4.     all Allowed Professional Fee Claims with respect to the TCEH Debtors approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the TCEH Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;

5.     the TCEH Debtors and/or the TCEH Plan Proponents, as applicable, shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the TCEH Plan and the transactions contemplated thereby, and the RCT shall have approved the substitute bond with respect to the TCEH Debtors' mining reclamation obligations

6.     all conditions to the completion of the transactions contemplated by the Tax Matters Agreement and the Taxable Separation Tax Receivable Agreement or the Spin-Off Tax Receivable Agreement, as applicable, shall have been satisfied or shall have been waived by the party entitled to waive them, and the transactions contemplated by the Transition Services Agreement, the Tax Matters Agreement, the Separation Agreement, and the Taxable Separation Tax Receivable Agreement or Spin-Off Tax Receivable Agreement, as applicable, and the Spin-Off or Taxable Separation, as applicable, shall be completed substantially simultaneously on the Effective Date;

7.     any waiting period applicable to the Taxable Separation or the Spin-Off, as the case may be, under the HSR Act or similar law or statute shall have been terminated or shall have expired;

8.     the TCEH Debtors shall have (or will, concurrently with the occurrence of the Effective Date have) implemented the Restructuring Transactions, in form and manner acceptable to the TCEH Plan Proponents, and consistent in all material respects with the TCEH Plan; and

9.      Solely in the event the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2:

(a)      the Debtors shall have obtained the Fundamental Opinions, and such opinions have not been withdrawn, rescinded, or amended;

(b)       the Approval Order shall have been duly entered and shall remain in full force and effect;

(c)      the facts presented and the representations made in the IRS Submissions are true, correct, and complete in all material respects as of the Effective Date;

(d)      except as otherwise provided in the Plan, the Private Letter Ruling, or the Plan Support Agreement, the EFH Debtors and the EFIH Debtors shall not have taken any action to change the entity classification for U.S. tax purposes of any EFH Debtor, EFIH Debtor or TCEH Debtor entity, by changing their legal form or otherwise, without the consent of the TCEH Plan Proponents; provided, however, that the consent of the TCEH Plan Proponents shall not be required with respect to any such action with respect to any Debtor entity other than TCEH, the EFH Shared Services Debtors (as defined in the REIT Plan), Reorganized TCEH, the Preferred Stock Entity, or any of their respective subsidiaries, if such action does not directly affect the Contribution, the Spin-Off Preferred Stock Sale, the Reorganized TCEH Conversion, or the Distribution and does not prevent or delay EFH Corp. from obtaining the Private Letter Ruling or adversely affect the Spin-Off Intended Tax Treatment;

(e)      (i) no Debtor shall have taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code); and (ii) Texas Holdings shall not have (A) taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code and thereby resulting in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code); (B) knowingly permitted any person (other than Texas Holdings) to own directly, indirectly or constructively (by operation of Section 318 as modified by Section 382(l)(3)(A) of the Internal Revenue Code) 50% or more of the equity interests of EFH Corp. during the three-year period ending on the Effective Date; or (C) changed its taxable year to be other than the calendar year;

(f)      the Private Letter Ruling shall have been obtained no later than July 28, 2016, which shall remain in full force and effect and shall be satisfactory to the TCEH Plan Proponents in their sole discretion; provided, however, that (x) the failure of the Private Letter Ruling to contain any of the following rulings shall not be grounds for concluding the Private Letter Ruling is not satisfactory to the TCEH Plan Proponents: (i) the Contribution, the Reorganized TCEH Conversion and the Distribution qualify as a "reorganization" within the meaning of Section 368(a)(1)(G) of the Code; (ii) the Distribution constitutes a transaction qualifying under Sections 355 and 356 of the Code; and (iii) the Contribution, the Reorganized TCEH Conversion and the Distribution are not used principally as a device for the distribution of earnings and profits of the Company or Reorganized TCEH and (y) the failure of the Private Letter Ruling to include any one or more of the Fundamental Rulings will be grounds for concluding the Private Letter Ruling is not satisfactory; provided, further, however, that (A) a particular ruling that, in the reasonable determination of the TCEH Plan Proponents, covers substantially the same subject matter as any one or more of the Fundamental Rulings shall not be grounds for concluding the Private Letter Ruling is not satisfactory to the TCEH Plan Proponents due to its failure to include such particular Fundamental Ruling; (B) in the event a specific Fundamental Ruling is not given because the IRS communicates that there is no substantial issue with respect to the requested ruling, the absence of such ruling shall not be grounds for concluding the Private Letter Ruling is not satisfactory to the

TCEH Plan Proponents provided that EFH Corp. obtains an opinion of nationally recognized tax counsel, in form and substance acceptable to the TCEH Plan Proponents in their reasonable discretion, at a "will" level with respect to the issue that was the subject of the Fundamental Ruling; or (C) a pre-filing agreement (including an agreement in accordance with Revenue Procedure 2009-14) or closing agreement with the IRS shall be acceptable in lieu of any such specific Fundamental Ruling, provided that such agreement is both (i) binding on the IRS to the same degree as a private letter ruling or is otherwise acceptable to the TCEH Plan Proponents in their reasonable discretion and (ii) contains, in the reasonable determination of the TCEH Plan Proponents, conclusions that are substantially similar, and have substantially the same practical effect, to those contained in the Fundamental Rulings; *provided further*, *however*, that the failure to obtain a ruling that provides that Reorganized TCEH and the Preferred Stock Entity have never been a member of the EFH Group shall not, standing alone, be grounds for concluding the Private Letter Ruling is not satisfactory; *provided further*, *however*, that with respect to any of the rulings described in clauses (b) (section 368 continuity of interest), (d) (active trade or business), and (f) (section 355 continuity of interest) in the definition of "Fundamental Rulings," if such rulings cannot be obtained because insufficient information is available regarding the reorganization of the EFH Debtors and EFIH, but all other conditions to the Effective Date have been satisfied, then the condition to obtain such rulings shall be deemed to be satisfied by the provision of a representation that EFH Corp. has no plan or intention to enter into any transaction that is inconsistent with the Spin-Off Intended Tax Treatment; and

(g)      the TCEH Plan Proponents shall have been given the right to participate with respect to the process of obtaining the Private Letter Ruling, including by (i) commenting on written submissions, (ii) having participation in in-person conferences, (iii) having participation in scheduled, substantive telephone conferences with the IRS and (iv) being updated promptly regarding any unscheduled communications with the IRS, provided, however, that the TCEH Plan Proponents shall work in good faith with counsel for the Debtors to determine the appropriate level of participation by any other persons in any particular meeting or conference.

C.      *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the TCEH Plan Proponents; *provided that*, if the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, then the conditions set forth in Article IX.A.2(c) shall be automatically deemed waived.

D.      *Effect of Failure of Conditions.*

If the Effective Date does not occur before one year following the Confirmation, with respect to a particular Debtor, then, as to such particular Debtor:   (1) the TCEH Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the TCEH Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the TCEH Plan, and any document or agreement executed pursuant to the TCEH Plan, shall be deemed null and void; and (3) nothing contained in the TCEH Plan shall:   (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such TCEH Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such TCEH Debtor or any other Entity.   Notwithstanding the foregoing, for the avoidance of doubt, the Settlement embodied in the Settlement Agreement shall remain in full force and effect and the failure of Confirmation or Consummation to occur with respect to any or all TCEH Debtors shall not affect the Settlement or any provisions of the Settlement Agreement.

E.      *Certain IRS Matters.*

The TCEH Plan provides that, as a condition precedent to the Effective Date, in the event the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, the TCEH Debtors must obtain a Private Letter Ruling containing several Fundamental Rulings.  The U.S. and the TCEH Debtors acknowledge that the IRS may not rule on certain matters, may issue rulings adverse to the TCEH Debtors, or may decline to issue a Private Letter Ruling.

Nothing in the TCEH Plan (or subsequently amended TCEH Plan) or TCEH Confirmation Order shall affect the rights of the IRS or United States to assess or collect a tax arising on or after the Confirmation Date against the Reorganized TCEH Debtors and/or any successor entities as permitted under applicable law.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE TCEH PLAN

A.    *Modification and Amendments.*

The TCEH Plan Proponents reserve the right to modify the TCEH Plan, one or more times, before Confirmation, whether such modification is material or immaterial, including any alterations, amendments, or modifications to the TCEH Plan, and to seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the TCEH Plan Proponents expressly reserve their respective right to alter, amend, or modify the TCEH Plan, one or more times, after Confirmation and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the TCEH Plan, or remedy any defect or omission, or reconcile any inconsistencies in the TCEH Plan, the TCEH Disclosure Statement or the TCEH Confirmation Order, including with respect to such modifications.

B.    *Effect of Confirmation on Modifications.*

Entry of a TCEH Confirmation Order shall mean that all modifications or amendments to the TCEH Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of TCEH Plan.*

The TCEH Plan Proponents reserve the right to revoke or withdraw the TCEH Plan before the Confirmation Date and to File subsequent plans for any reason.  If the TCEH Plan Proponents revoke or withdraw the TCEH Plan, or if Confirmation or Consummation does not occur, then:  (1) the TCEH Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the TCEH Plan (other than the Settlement embodied in the Settlement Agreement), assumption or rejection of Executory Contracts or Unexpired Leases effected under the TCEH Plan, and any document or agreement executed pursuant to the TCEH Plan, shall be deemed null and void; and (3) nothing contained in the TCEH Plan shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such TCEH Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such TCEH Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the TCEH Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the TCEH Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

  1.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

  2.  hear and determine matters related to the DIP Facility and the DIP Order;

3.    decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the TCEH Plan;

4.    resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a TCEH Debtor is party or with respect to which a TCEH Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized TCEH Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the TCEH Plan, any Executory Contracts or Unexpired Leases to the Assumed Executory Contracts and Unexpired Lease List, Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a TCEH Debtor that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.    enter and implement such orders as may be necessary to execute, implement, or consummate the TCEH Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the TCEH Plan or the TCEH Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the TCEH Plan;

8.    enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.    adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions, including the Tax Matters Agreement;

10.  grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

11.  resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the TCEH Plan, the TCEH Disclosure Statement, the TCEH Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the TCEH Plan, the TCEH Disclosure Statement, the TCEH Confirmation Order, or the Restructuring Transactions;

12.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the TCEH Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

13.  resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.K.1 of the TCEH Plan;

14.  enter and implement such orders as are necessary if the TCEH Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.  enter an order or decree concluding or closing the Chapter 11 Cases;

16.  adjudicate any and all disputes arising from or relating to distributions under the TCEH Plan, including the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute;

17.  consider any modifications of the TCEH Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the TCEH Confirmation Order;

18.  hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a TCEH Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

19.  except as otherwise limited herein, recover all assets of the TCEH Debtors and property of the Estates, wherever located;

20.  enforce all orders previously entered by the Bankruptcy Court; and

21.  hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect.*

Subject to Article IX.B of the TCEH Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the TCEH Plan shall be immediately effective and enforceable and deemed binding upon the TCEH Debtors, the Reorganized TCEH Debtors, and any and all Holders of Claims against the TCEH Debtors or Interests in the TCEH Debtors (irrespective of whether such Claims or Interests are deemed to have accepted the TCEH Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the TCEH Plan, each Entity acquiring property under the TCEH Plan, and any and all non-TCEH Debtor parties to Executory Contracts and Unexpired Leases with the TCEH Debtors. Nothing in the TCEH Plan or the TCEH Confirmation Order affects the DIP Lenders' rights or interests provided under the DIP Facility, the DIP Credit Agreement, or the DIP Order, including with respect to (1) any waivers or releases contained therein or (2) the DIP Agent's right to exercise event of default remedies (including after the Confirmation Date and before the Effective Date), until the DIP Claims are satisfied in full.

B.      *Additional Documents.*

On or before the Effective Date, the TCEH Plan Proponents may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the TCEH Plan.  The TCEH Plan Proponents, the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the TCEH Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the TCEH Plan.

C.      *Payment of Statutory Fees.*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized TCEH Debtors (or the Disbursing Agent on behalf of each of the applicable Reorganized TCEH Debtors) for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized TCEH Debtors is converted, dismissed, or closed, whichever occurs first.  All such fees due and payable prior to the Effective Date shall be paid by the TCEH Debtors on the Effective Date. After the Effective Date, the Disbursing Agent or the applicable Reorganized TCEH Debtor shall pay any and all

such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case of the Reorganized TCEH Debtors is converted, dismissed, or closed.

D.    *Statutory Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Committee shall be dissolved; *provided, however*, that, following the Effective Date, the Committee shall continue in existence and have standing and a right to be heard for the following limited purposes:  (i) Claims and/or applications, and any relief related thereto, for compensation by professionals and requests for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; and (ii) appeals of the TCEH Confirmation Order as to which the Committee is a party.  Upon dissolution of the Committee, the members thereof and their respective officers, employees, counsel, advisors, and agents shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.  The Reorganized TCEH Debtors shall no longer be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committees after the Effective Date, except to as to the continued limited purposes identified above or as otherwise provided.

E.    *Reservation of Rights.*

Except as expressly set forth in the TCEH Plan, the TCEH Plan shall have no force or effect unless the Bankruptcy Court shall enter the TCEH Confirmation Order.  None of the Filing of the TCEH Plan, any statement or provision contained in the TCEH Plan, or the taking of any action by any TCEH Plan Proponent or TCEH Debtor with respect to the TCEH Plan, the TCEH Disclosure Statement, or the TCEH Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any TCEH Plan Proponent or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

F.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the TCEH Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    *Notices.*

All notices, requests, and demands to or upon the TCEH Plan Proponents or the TCEH Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

1.    if to the TCEH Plan Proponents, to:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Facsimile: (212) 757-3990
Attention:  Alan W. Kornberg, Brian S. Hermann, and Jacob A. Adlerstein
E-mail addresses:  akornberg@paulweiss.com, bhermann@paulweiss.com, and jadlerstein@paulweiss.com

with copies to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 North King Street
Wilmington, Delaware

01:18713421.1

Facsimile:  (302) 571-1253
Attention:  Pauline K. Morgan, Ryan M. Bartley, Andrew Magaziner
E-mail addresses: pmorgan@ycst.com, rbartley@ycst.com, amagaziner@ycst.com

2.   if to the TCEH Debtors, to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Facsimile:  (212) 446-4900
Attention:  Edward O. Sassower, P.C., Stephen E. Hessler, and Brian E. Schartz
E-mail addresses:  edward.sassower@kirkland.com, stephen.hessler@kirkland.com, and
brian.schartz@kirkland.com

--and--

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Facsimile:  (312) 862-2200
Attention:  James H.M. Sprayregen, P.C., Marc Kieselstein, P.C., Chad J. Husnick, and Steven N.
Serajeddini
E-mail addresses:  james.sprayregen@kirkland.com, marc.kieselstein@kirkland.com,
chad.husnick@kirkland.com, and steven.serajeddini@kirkland.com

--and--

Munger, Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071
Facsimile:  (213) 683-4022
Attention:  Thomas B. Walper and Seth Goldman
E-mail addresses:  thomas.walper@mto.com and seth.goldman@mto.com

After the Effective Date, the Reorganized TCEH Debtors have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized TCEH Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      Term of Injunctions or Stays.

Unless otherwise provided in the TCEH Plan or the TCEH Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the TCEH Plan or the TCEH Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the TCEH Plan or the TCEH Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      Entire Agreement.

Except as otherwise indicated, the TCEH Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the TCEH Plan.

J.      *Exhibits.*

All exhibits and documents included in the TCEH Plan Supplement are incorporated into and are a part of the TCEH Plan as if set forth in full in the TCEH Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the TCEH Plan Proponents' counsel at the address above or by downloading such exhibits and documents from the TCEH Debtors' restructuring website at http://www.efhcaseinfo.com or the Bankruptcy Court's website at www.deb.uscourts.gov.

K.      *Nonseverability of TCEH Plan Provisions.*

If, before Confirmation, any term or provision of the TCEH Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the TCEH Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The TCEH Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the TCEH Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the TCEH Plan and may not be deleted or modified without the TCEH Plan Proponents' consent, as applicable; and (3) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the TCEH Confirmation Order, the TCEH Debtors and the TCEH Plan Proponents will be deemed to have solicited votes on the TCEH Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the TCEH Plan Proponents, the TCEH Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the TCEH Plan and any previous plan, and, therefore, none of such  parties or individuals or the Reorganized TCEH Debtors will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the TCEH Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the TCEH Plan and any previous plan.

M.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the TCEH Plan Proponents, the TCEH Debtors or their respective counsel, or any other Entity, if such agreement was not disclosed in the TCEH Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

N.      *Conflicts.*

Except as set forth in the TCEH Plan, to the extent that any provision of the Disclosure Statement, the TCEH Plan Supplement or any agreement or order (other than the TCEH Confirmation Order) referenced in the TCEH Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the TCEH Plan, the TCEH Plan shall govern and control; *provided*, *however*, with respect to any conflict or inconsistency between the TCEH Plan and the TCEH Confirmation Order, the TCEH Confirmation Order shall govern.

*[Remainder of page intentionally left blank.]*

Dated:  <mark>[May ]</mark>, 2016

Respectfully submitted,

By: _____ [DRAFT]_____
Name:

Prepared by:

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Counsel to the TCEH Plan Proponents*

01:18713421.1

**EXHIBIT A**

**TCEH's Debtor Subsidiaries**

4Change Energy Company
4Change Energy Holdings LLC
Big Brown 3 Power Company LLC
Big Brown Lignite Company LLC
Big Brown Power Company LLC
Collin Power Company LLC
DeCordova Power Company LLC
DeCordova II Power Company LLC
Eagle Mountain Power Company LLC
Generation MT Company LLC
Generation SVC Company
Lake Creek 3 Power Company LLC
Luminant Big Brown Mining Company LLC
Luminant Energy Company LLC
Luminant Energy Trading California Company
Luminant ET Services Company
Luminant Generation Company LLC
Luminant Holding Company LLC
Luminant Mineral Development Company LLC
Luminant Mining Company LLC
Luminant Renewables Company LLC
Martin Lake 4 Power Company LLC
Monticello 4 Power Company LLC
Morgan Creek 7 Power Company LLC
NCA Resources Development Company LLC
Oak Grove Management Company LLC
Oak Grove Mining Company LLC
Oak Grove Power Company LLC
Sandow Power Company LLC
TCEH Finance, Inc.
Tradinghouse 3 & 4 Power Company LLC
Tradinghouse Power Company LLC
TXU Energy Receivables Company LLC
TXU Energy Retail Company LLC
TXU Energy Solutions Company LLC
TXU Retail Services Company
TXU SEM Company
Valley NG Power Company LLC
Valley Power Company LLC

**<u>EXHIBIT B</u>**

**Tax Matters Agreement Term Sheet**

01:18713421.1

**<u>EXHIBIT B</u>**

**FORM OF TCEH-ONLY DISCLOSURE STATEMENT**

**DRAFT – SUBJECT TO REVISION**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## [FORM OF] DISCLOSURE STATEMENT FOR THE PLAN OF REORGANIZATION FOR ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY, ET AL., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York  10022
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square, 1000 North King Street
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

Counsel to the TCEH Plan Proponents

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE TCEH PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE.  ACCEPTANCES OR REJECTIONS OF THE TCEH PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DRAFT TCEH DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

Dated:  [May   ], 2016

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810 and the location of its service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**IMPORTANT INFORMATION REGARDING THIS TCEH DISCLOSURE STATEMENT**

**TCEH DISCLOSURE STATEMENT, DATED [MAY ], 2016**

**SOLICITATION OF VOTES
ON THE PLAN OF REORGANIZATION FOR
ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY, *ET AL.*
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

**From the Holders of Outstanding:**

| Voting Class | Name of Class Under the TCEH Plan |
|---|---|
| **Class 3** | TCEH First Lien Secured Claims |
| **Class 4** | TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH |

**IF YOU ARE IN ONE OF THESE CLASSES, YOU ARE RECEIVING THIS DOCUMENT AND THE ACCOMPANYING MATERIALS BECAUSE YOU ARE ENTITLED TO VOTE ON THE TCEH PLAN.**

**DELIVERY OF BALLOTS**

BALLOTS AND MASTER BALLOTS, AS APPLICABLE, MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [     ], AT THE FOLLOWING ADDRESSES:

**FOR ALL BALLOTS OTHER THAN MASTER BALLOTS**

**VIA FIRST CLASS MAIL:**

EFH BALLOT PROCESSING
C/O EPIQ BANKRUPTCY SOLUTIONS, LLC
P.O. BOX 4422
BEAVERTON, OREGON 97076-4422

**VIA OVERNIGHT COURIER OR HAND DELIVERY:**

EFH BALLOT PROCESSING
C/O EPIQ BANKRUPTCY SOLUTIONS, LLC
10300 SW ALLEN BOULEVARD
BEAVERTON, OREGON 97005

**FOR MASTER BALLOTS**

**VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY:**

EFH BALLOT PROCESSING
C/O EPIQ BANKRUPTCY SOLUTIONS, LLC
777 THIRD AVENUE, 12TH FLOOR
NEW YORK, NEW YORK 10017

IF YOU RECEIVED AN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE ALLOW ENOUGH TIME WHEN YOU RETURN YOUR BALLOT FOR YOUR NOMINEE TO CAST YOUR VOTE ON A MASTER BALLOT BEFORE THE VOTING DEADLINE.

BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.

[IF YOU HAVE ANY QUESTIONS ON THE PROCEDURE FOR VOTING ON THE TCEH PLAN, PLEASE CALL THE TCEH DEBTORS' RESTRUCTURING HOTLINE AT:

(877) 276-7311]

READERS SHOULD NOT CONSTRUE THE CONTENTS OF THIS TCEH DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE AND ARE URGED TO CONSULT WITH THEIR OWN ADVISORS BEFORE CASTING A VOTE WITH RESPECT TO THE TCEH PLAN.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT (THE "TCEH DISCLOSURE STATEMENT") FOR THE PLAN OF REORGANIZATION (THE "TCEH PLAN") FOR ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY AND CERTAIN OF ITS SUBSIDIARIES (THE "TCEH DEBTORS") PROPOSED BY THE TCEH PLAN PROPONENTS (AS DEFINED BELOW) IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE TCEH PLAN, AS MAY BE MODIFIED, AMENDED, AND/OR SUPPLEMENTED FROM TIME TO TIME AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE TCEH PLAN.   NO SOLICITATION OF VOTES TO ACCEPT THE TCEH PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE (THE "BANKRUPTCY CODE").   CERTAIN LANUAGE OR SECTIONS CONTAINED IN THIS TCEH DISCLOSURE STATEMENT REFLECT ONLY THE UNDERSTANDING OR OPINIONS OF THE TCEH PLAN PROPONENTS.

THIS TCEH DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.

THE SECURITIES TO BE ISSUED PURSUANT TO THE TCEH PLAN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT") OR SIMILAR STATE SECURITIES OR "BLUE SKY" LAWS.

THE SECURITIES TO BE ISSUED IN CONNECTION WITH THE TCEH PLAN HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC") OR BY ANY STATE SECURITIES COMMISSION OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY, AND NEITHER THE SEC NOR ANY SUCH AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED IN THIS TCEH DISCLOSURE STATEMENT OR UPON THE MERITS OF THE TCEH PLAN.

SEE SECTION IX OF THE TCEH DISCLOSURE STATEMENT FOR IMPORTANT SECURITIES LAW DISCLOSURES.

CERTAIN INFORMATION CONTAINED HEREIN OR INCORPORATED HEREIN BY REFERENCE WAS PREPARED BY THE TCEH DEBTORS AND/OR PUBLICLY DISCLOSED BY THE TCEH DEBTORS IN THE REIT PLAN DISCLOSURE STATEMENT, THE NEW JOINT PLAN DISCLOSURE STATEMENT OR OTHER PUBLIC FILINGS OR WERE OBTAINED FROM OTHER PUBLICLY AVAILABLE SOURCES.   ALTHOUGH THE TCEH PLAN PROPONENTS AND THEIR FINANCIAL ADVISORS AND REPRESENTATIVES CONDUCTED A REVIEW AND ANALYSIS OF THE TCEH DEBTORS' BUSINESS, ASSETS AND LIABILITIES THEY RELIED UPON THE ACCURACY AND COMPLETENESS OF ALL SUCH INFORMATION FURNISHED TO THEM OR OTHERWISE PUBLICLY FILED BY THE TCEH DEBTORS AND ASSUMED THAT SUCH INFORMATION WAS REASONABLY PREPARED IN GOOD FAITH AND ON A BASIS REFLECTING THE TCEH DEBTORS' MOST ACCURATE CURRENTLY AVAILABLE INFORMATION.   THE TCEH PLAN PROPONENTS AND THEIR ADVISORS AND REPRESENTATIVES DID NOT INDEPENDENTLY VERIFY OR SEEK INDEPENDENT VALUATIONS OR APPRAISALS OF SUCH INFORMATION IN CONNECTION HEREWITH.

THE INCLUSION OF SUCH INFORMATION HEREIN SHOULD NOT BE REGARDED AS AN INDICATION THAT THE TCEH PLAN PROPONENTS OR ANY OF THEIR ADVISORS OR REPRESENTATIVES CONSIDERS SUCH INFORMATION TO BE AN ACCURATE PREDICTION OF FUTURE EVENTS OR A COMPLETE AND ACCURATE REFLECTION OF THE TCEH DEBTORS' CURRENT FINANCIAL CONDITION AND SUCH INFORMATION SHOULD NOT BE RELIED ON AS SUCH.   NEITHER THE TCEH PLAN PROPONENTS NOR ANY OF THEIR ADVISORS OR REPRESENTATIVES ASSUMES ANY RESPONSIBILITY FOR THE REASONABLENESS, COMPLETENESS, ACCURACY OR RELIABILITY OF SUCH INFORMATION AND NONE OF THEM INTENDS TO UPDATE OR OTHERWISE REVISE SUCH INFORMATION TO REFLECT

CIRCUMSTANCES EXISTING AFTER THE DATE WHEN MADE OR TO REFLECT THE OCCURRENCE OF FUTURE EVENTS EVEN IN THE EVENT THAT ANY OR ALL OF THE ASSUMPTIONS ARE SHOWN TO BE IN ERROR.

FURTHER, READERS ARE CAUTIONED THAT ANY FORWARD-LOOKING STATEMENTS IN THIS TCEH DISCLOSURE STATEMENT ARE BASED ON ASSUMPTIONS THAT ARE BELIEVED TO BE REASONABLE, BUT ARE SUBJECT TO A WIDE RANGE OF RISKS, INCLUDING RISKS ASSOCIATED WITH THE FOLLOWING: (I) FUTURE FINANCIAL RESULTS AND LIQUIDITY, INCLUDING THE ABILITY TO FINANCE OPERATIONS IN THE ORDINARY COURSE OF BUSINESS; (II) VARIOUS FACTORS THAT MAY AFFECT THE VALUE OF THE SECURITIES TO BE ISSUED UNDER THE TCEH PLAN; (III) THE RELATIONSHIPS WITH AND PAYMENT TERMS PROVIDED BY TRADE CREDITORS; (IV) ADDITIONAL FINANCING REQUIREMENTS POST-RESTRUCTURING; (V) FUTURE DISPOSITIONS AND ACQUISITIONS; (VI) THE EFFECT OF COMPETITIVE PRODUCTS, SERVICES, OR PROCURING BY COMPETITORS; (VII) CHANGES TO THE COSTS OF COMMODITIES AND RAW MATERIALS; (VIII) THE PROPOSED RESTRUCTURING AND COSTS ASSOCIATED THEREWITH; (IX) THE EFFECT OF CONDITIONS IN THE ENERGY MARKET ON THE TCEH DEBTORS; (X) THE CONFIRMATION AND CONSUMMATION OF THE TCEH PLAN; (XI) CHANGES IN LAWS AND REGULATIONS FROM GOVERNMENT AGENCIES; AND (XII) EACH OF THE OTHER RISKS IDENTIFIED IN THIS TCEH DISCLOSURE STATEMENT. DUE TO THESE UNCERTAINTIES, READERS CANNOT BE ASSURED THAT ANY FORWARD-LOOKING STATEMENTS WILL PROVE TO BE CORRECT. THE TCEH PLAN PROPONENTS ARE UNDER NO OBLIGATION TO (AND EXPRESSLY DISCLAIM ANY OBLIGATION TO) UPDATE OR ALTER ANY FORWARD-LOOKING STATEMENTS WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.

AS TO CONTESTED MATTERS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS TCEH DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAVIER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THE TCEH DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE TCEH DEBTORS, THE TCEH PLAN PROPONENTS OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE TCEH PLAN AS TO THE HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE TCEH DEBTORS IN THESE CHAPTER 11 CASES.

THE STATEMENTS MADE IN THE TCEH DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN AND THE DELIVERY OF THE TCEH DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THE TCEH PLAN PROPONENTS' DISLCOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT, INCLUDING THE DEFINITIONS AND TERMS CONTAINED IN SUCH AGREEMENT.

IF THE TCEH PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AND INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE TCEH PLAN, OR WHO ARE NOT ENTITLED TO VOTE ON THE TCEH PLAN) WILL BE BOUND BY THE TERMS OF THE TCEH PLAN AND THE RESTRUCTURING TRANSACTIONS CONTEMPLATED THEREBY.

THE TCEH PLAN PROPONENTS URGE ALL CREDITORS AND INTEREST HOLDERS TO ACCEPT THE TCEH PLAN.

**THE TERMS OF THE TCEH PLAN GOVERN IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE TCEH PLAN AND THE SUMMARIES CONTAINED IN THIS TCEH DISCLOSURE STATEMENT.**

**THE INFORMATION IN THIS TCEH DISCLOSURE STATEMENT IS BEING PROVIDED SOLELY FOR THE PURPOSES OF VOTING TO ACCEPT OR REJECT THE TCEH PLAN OR OBJECTING TO CONFIRMATION.  NOTHING IN THIS TCEH DISCLOSURE STATEMENT MAY BE USED BY ANY PARTY FOR ANY OTHER PURPOSE.**

**ALL EXHIBITS TO THE TCEH DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS TCEH DISCLOSURE STATEMENT AS IF SET FORTH IN FULL IN THIS TCEH DISCLOSURE STATEMENT.**

**TABLE OF CONTENTS**

Page

I.    Introduction ................................................................................................................................. 1
    A.    Purpose of this TCEH Disclosure Statement and the TCEH Plan ......................... 2
    B.    Overview of the TCEH Debtors .................................................................................. 3
    C.    Overview of the TCEH Plan ....................................................................................... 3
    D.    Summary of Treatment of Claims and Interests and Description of Recoveries Under the
           TCEH Plan .................................................................................................................... 6
    E.    Certain IRS Matters. .................................................................................................... 9
    F.    Voting on the TCEH Plan ............................................................................................ 9
    G.    The TCEH Plan Supplement ..................................................................................... 11

II.    The TCEH Debtors' Business Operations and Capital Structure ...................................... 12

III.    The Events Leading to the TCEH Debtors' Financial Difficulties ..................................... 12

IV.    Material Events in the Chapter 11 Cases ............................................................................. 12
    A.    Other Ongoing Litigation Items .............................................................................. 12

V.    Summary of the TCEH Plan .................................................................................................. 14
    A.    Sources of Consideration for TCEH Plan Distributions ...................................... 14
    B.    Restructuring Transactions ....................................................................................... 15
    C.    Administrative Claims, Priority Tax Claims, DIP Claims, and Statutory Fees ............ 17
    D.    Classification of Claims and Interests .................................................................... 21
    E.    Treatment of Classified Claims and Interests ....................................................... 21
    F.    Other Selected Provisions of the TCEH Plan ........................................................ 25
    A.    Subordinated Claims and Interests ......................................................................... 29
    B.    Effect of Confirmation .............................................................................................. 31
    C.    Settlement, Release, Injunction, and Related Provisions ................................... 33

VI.    Confirmation of the TCEH Plan ........................................................................................... 38
    A.    The Confirmation Hearing ....................................................................................... 38
    B.    Requirements for Confirmation ............................................................................... 38
    C.    Conditions Precedent to Confirmation of the TCEH Plan .................................. 41
    D.    Conditions Precedent to the Effective Date .......................................................... 42
    E.    Waiver of Conditions ................................................................................................ 42
    F.    Effect of Failure of Conditions ............................................................................... 44

VII.    Voting Instructions ................................................................................................................. 46
    A.    Overview ..................................................................................................................... 46
    B.    Holders of Claims and Interests Entitled to Vote on the TCEH Plan ................. 46
    C.    Voting Record Date .................................................................................................... 46
    D.    Voting on the TCEH Plan ......................................................................................... 46
    E.    Ballots Not Counted .................................................................................................. 47

VIII.    Risk Factors ............................................................................................................................. 48
    A.    Business Risk Factors Related to the Business Operations of the TCEH Debtors ......... 48
    B.    Additional Risk Factors ............................................................................................ 48

IX.    Important Securities Laws Disclosures ............................................................................... 54
    A.    Section 1145 of the Bankruptcy Code .................................................................... 54
    B.    Subsequent Transfers of Securities Not Covered by the Section 1145(a) Exemption ......... 55

X.      Certain U.S. Federal Income Tax Consequences of the TCEH Plan.............................................56
        A.      Introduction...........................................................................................................................56
        B.      Certain U.S. Federal Income Tax Consequences if the Taxable Separation is Effectuated. ...........57
        C.      Certain U.S. Federal Income Tax Consequences if the Spin-Off is Effectuated............................58
        D.      Accrued Interest ...................................................................................................................62
        E.      Market Discount....................................................................................................................62
        F.      Limitation on Use of Capital Losses .......................................................................................62
        G.      Withholding and Reporting ....................................................................................................63

## EXHIBITS

**Exhibit A**        List of TCEH Debtors

**Exhibit B**        TCEH Plan of Reorganization

**Exhibit C**        Plan Support Agreement

**Exhibit D**        Corporate Structure of the TCEH Debtors and Certain Non-TCEH Debtor Affiliates

**Exhibit E**        Reorganized TCEH Financial Projections

**Exhibit F**        Reorganized TCEH Valuation Analysis

**Exhibit G**        Liquidation Analysis

**Exhibit H**        TCEH Disclosure Statement Order

---

**THE TCEH PLAN PROPONENTS HEREBY ADOPT AND INCORPORATE EACH EXHIBIT ATTACHED TO THIS TCEH DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.**

# I.    Introduction

This TCEH Disclosure Statement is submitted by the TCEH Plan Proponents pursuant to section 1125 of the Bankruptcy Code in connection with the chapter 11 cases (the "Chapter 11 Cases") of Energy Future Competitive Holdings Company LLC ("EFCH"), its direct subsidiary, Texas Competitive Electric Holdings Company LLC ("TCEH") and certain of TCEH's direct and indirect subsidiaries as listed on **Exhibit A** attached hereto (collectively, the "TCEH Debtors") in respect of the TCEH Creditor TCEH Plan Proponents' Plan of Reorganization for Energy Future Competitive Holdings Company, *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code.  Unless otherwise defined herein, all capitalized terms contained herein have the meanings ascribed to them in the TCEH Plan, a copy of which is attached to this TCEH Disclosure Statement as **Exhibit B** and incorporated into this TCEH Disclosure Statement by reference.[2]

The TCEH Plan Proponents are comprised of the following unaffiliated Holders of TCEH First Lien Claims (the "TCEH Plan Proponents"):[3]  (a) Angelo Gordon & Co., L.P.; (b) Apollo Management Holdings L.P.; (c) Brookfield Asset Management Private Institutional Capital Adviser (Canada), L.P.; (d) Fortress Credit Opportunities, Advisers LLC; (e) Franklin Advisers, Inc. (f) Franklin Mutual Advisers, LLC; (g) King Street Capital Management, L.P.; (h) Oaktree Capital Management, L.P.; (i) OZ Management LP; and (j) Paulson & Co., Inc.

On April 29, 2014, the TCEH Debtors, together with the EFH Debtors and the EFIH Debtors, filed for protection under the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  On August 9, 2015, the TCEH Debtors, the EFH Debtors, the EFIH Debtors and certain of the TCEH Debtors' largest economic stakeholders, including members of the TCEH First Lien Ad Hoc Committee, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors and the TCEH Unsecured Ad Hoc Group, executed that certain Plan Support Agreement (as amended on September 11, 2015 and as may be amended, supplemented, or otherwise modified from time to time in accordance therewith, including all exhibits and schedules attached thereto, the "Plan Support Agreement" a copy of which is attached hereto as **Exhibit C**).  The Plan Support Agreement required, among other things, that the parties thereto support and seek confirmation and consummation of a plan of reorganization that provided for a comprehensive restructuring and recapitalization of the TCEH Debtors, the EFH Debtors and EFIH Debtors that was premised on the acquisition of EFH Corp.'s ("EFH") indirect interest in the non-Debtor entity, Oncor Electric Delivery Company LLC ("Oncor Electric"), by certain of, *inter alia*, the TCEH Debtors' unsecured creditors (collectively, the "Investor Parties").  This Court entered an order authorizing the EFH Debtors, EFIH Debtors and the TCEH Debtors to perform under the Plan Support Agreement on September 18, 2015 [D.I. 6097].

In accordance with the Plan Support Agreement, on September 18, 2015, the TCEH Debtors, EFH Debtors and EFIH Debtors filed the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6107] (as amended, the "REIT Plan"), and on September 18, 2015, filed the accompanying Disclosure Statement for the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.* Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 6110] (as amended, the "REIT Plan Disclosure Statement").  On September 22, 2015, the Bankruptcy Court entered an order approving the REIT Plan Disclosure Statement [D.I. 6131], and on December 9, 2015, the Bankruptcy Court entered an order confirming the REIT Plan [D.I. 7285].

On December 7, 2015, the Bankruptcy Court entered an order approving the terms of a settlement agreement, which contained a compromise and settlement of (a) certain Intercompany Claims; (b) certain Claims and Causes of Actions against Holders of TCEH First Lien Claims and the TCEH First Lien Agent; (c) certain Claims and Causes of Action against the Holders of Interests in EFH Corp. and certain related Entities; and (d) Claims and Causes of Action against any of the TCEH Debtors', EFH Debtors' and EFIH Debtors' directors, managers, and officers, and other related Entities (the "Settlement Agreement") [D.I. 7243].  Pursuant to the Settlement Agreement, TCEH was granted

---

[2]    Additionally, this TCEH Disclosure Statement incorporates the rules of interpretation set forth in Article I.B of the Plan.

[3]    Where the consent, waiver, or approval of the TCEH Plan Proponents is required under the Plan, the term "TCEH Plan Proponents" shall mean at least five unaffiliated TCEH Plan Proponents holding in the aggregate at least 50.1% in aggregate principal amount of TCEH First Lien Claims held by all TCEH Plan Proponents.

an Allowed general unsecured claim against EFH Corp. (the "TCEH Settlement Claim"), in the amount of $700 million, which TCEH Settlement Claim will be subject to treatment in EFH's chapter 11 cases.

Following confirmation of the REIT Plan, the parties worked towards satisfying the conditions precedent to the Effective Date, as set forth in Article IX.B of the REIT Plan. However, the Investor Parties ultimately were unable to consummate their acquisition of Oncor Electric prior to April 30, 2016, which was the Plan Support Outside Date set forth in the Plan Support Agreement. As a result, on May 1, 2016, the Required TCEH First Lien Creditors delivered a Plan Support Termination Notice, thereby triggering the expiration of the Plan Support Effective Period.

Upon the occurrence of the Plan Support Termination Date, which occurred on May 1, 2016, certain parties to the Plan Support Agreement, including the TCEH Plan Proponents, are required, subject to the terms and conditions set forth in the Plan Support Agreement, to only support an Alternative Restructuring (as such term is defined in the Plan Support Agreement). The TCEH Plan and this TCEH Disclosure Statement are consistent with these requirements and satisfy the Required Alternative Terms (as defined in the Plan Support Agreement) as well as the terms set forth in the Court-approved Settlement Agreement (as described below).

Accordingly, this TCEH Disclosure Statement is intended to build upon the REIT Plan Disclosure Statement, which, as described above, was approved by the Bankruptcy Court in connection with the REIT Plan on September 22, 2015, with modifications, as necessary, to reflect the agreed upon Alternative Restructuring Terms. The key elements of the TCEH Plan can be summarized as follows:

- **The TCEH Plan applies *only* to the TCEH Debtors and is not a proposed chapter 11 plan of reorganization for any of the EFH Debtors or the EFIH Debtors.**

- **The TCEH Plan provides that Holders of Allowed Class 3 Claims shall receive, among other things, 100% of the Reorganized TCEH Common Stock (subject to dilution);**

- **The TCEH Plan provides that Holders of Allowed Class 4 Claims shall receive, in the aggregate, a cash distribution equal to $550 million, less any Settlement Agreement Professional Fees, the EFH Committee Settlement Payment, and the EPA Settlement Payment Amount (the "TCEH Cash Payment"); and**

- **The TCEH Plan incorporates a flexible tax structure that allows TCEH to separate from EFH pursuant to either a tax-free spin (subject to satisfaction of the Spin-Off Conditions by the Spin-Off Conditions Termination Date) or a taxable separation.**

**FOR A COMPLETE UNDERSTANDING OF THE TCEH PLAN, YOU SHOULD READ THIS TCEH DISCLOSURE STATEMENT AND THE EXHIBITS HERETO, AND THE TCEH PLAN AND THE EXHIBITS THERETO, IN THEIR ENTIRETY.**

A.    **Purpose of this TCEH Disclosure Statement and the TCEH Plan**.

The TCEH Plan Proponents seek to confirm the TCEH Plan, filed contemporaneously herewith[4] including the TCEH Plan Supplement, to effect a comprehensive restructuring of the TCEH Debtors and their balance sheet

---

[4]    The Plan is attached hereto as **Exhibit B** and incorporated into this Disclosure Statement by reference. Capitalized terms used but not otherwise defined in this Disclosure Statement have the meanings ascribed to such terms in the Plan, and capitalized terms used but not otherwise defined in this Introduction have the meanings ascribed to them in the remainder of this Disclosure Statement or the Plan. Additionally, this Disclosure Statement incorporates the rules of interpretation set forth in Article I.B of the Plan. **The summaries provided in this Disclosure Statement of any documents attached to this Disclosure Statement, including the Plan, the exhibits, and the other materials referenced in the Plan, the Plan Supplement, and any other documents referenced or summarized herein, are qualified in their entirety by reference to the applicable document. In the event of any inconsistency between the discussion in this Disclosure Statement and the documents referenced or summarized herein, the applicable document being referenced or summarized shall govern. In the event of any inconsistencies between any document and the Plan, the Plan shall govern.**

(the "Restructuring").  The Bankruptcy Court approved this TCEH Disclosure Statement, authorized solicitation of votes to accept or reject the TCEH Plan, and scheduled the hearing to confirm the TCEH Plan (the "Confirmation Hearing") to begin at [__:__] (prevailing Eastern Time) on [      ], 2016.  *It is important that Holders of Claims and Interests carefully read this TCEH Disclosure Statement and all of the materials attached to this TCEH Disclosure Statement and incorporated into this TCEH Disclosure Statement by reference to fully understand the business operations of all of the TCEH Debtors and their non-TCEH Debtor affiliates.*

As described in this TCEH Disclosure Statement, the TCEH Plan constitutes a separate plan of reorganization for the TCEH Debtors, and embodies the terms of an Alternative Restructuring, as required pursuant to the terms of the Court-approved Plan Support Agreement and Settlement Agreement.

A bankruptcy court's confirmation of a plan of reorganization binds the debtor, any entity or person acquiring property under the plan, any creditor of or interest holder in a debtor, and any other entities and persons as may be ordered by the bankruptcy court to the terms of the confirmed plan, whether or not such creditor or interest holder is impaired under or has voted to accept the plan or receives or retains any property under the plan, through an order confirming the plan (as defined in the TCEH Plan, the "TCEH Confirmation Order").  Among other things (subject to certain limited exceptions and except as otherwise provided in the TCEH Plan or the TCEH Confirmation Order), the TCEH Confirmation Order will discharge the TCEH Debtors from any Claim (as that term is defined in the TCEH Plan) arising before the Effective Date and substitute the obligations set forth in the TCEH Plan for those pre-bankruptcy Claims.  Under the TCEH Plan, Claims and Interests are divided into groups called "Classes" according to their relative priority and other criteria.

Each of the TCEH Plan Proponents is a proponent of the TCEH Plan within the meaning of section 1129 of the Bankruptcy Code.  The TCEH Plan does not contemplate the substantive consolidation of the TCEH Debtors' estates.  Except to the extent that a Holder of an Allowed Claim agrees to a less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Claim, each Holder of an Allowed Claim or Allowed Interest with regard to each of the TCEH Debtors will receive the same recovery (if any) provided to other Holders of Allowed Claims or Allowed Interests in the applicable Class according to the respective Debtor against which they hold a Claim or Interest.

**Prior to voting on the TCEH Plan, you are encouraged to read this TCEH Disclosure Statement and all documents attached to this TCEH Disclosure Statement in their entirety.  Certain of these risks, uncertainties, and factors are described in Article VIII of this TCEH Disclosure Statement, entitled "Risk Factors," which begins on page 48.**

**B.**     **Overview of the TCEH Debtors**

An overview of the businesses of EFH Corp., TCEH's parent company, and the TCEH Debtors can be found in the REIT Plan Disclosure Statement at Article I.B (Overview of EFH) and in the Disclosure Statement for the New Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.* Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 8356] (the "New Joint Plan Disclosure Statement") at Article I.B.  The TCEH Plan Proponents incorporate by reference such provisions of the REIT Plan Disclosure Statement and New Joint Plan Disclosure Statement as if set forth herein.[5]

**C.**     **Overview of the TCEH Plan.**

    **1.**     ***Overview of the TCEH Plan Toggle.***

The TCEH Plan contemplates a separation of the TCEH Debtors from EFH Corp., which may be effected pursuant to either of two possible structures.  If the Spin-Off Conditions are not satisfied on or before the Spin-Off Conditions Termination Date, Article IV.B.2 of the TCEH Plan provides for a Taxable Separation of TCEH (which will be executed as set forth in the Taxable Separation Memorandum).  Under the Taxable Separation, TCEH will separate from the Debtors and become a standalone reorganized entity, Reorganized TCEH.

---

[5]     The TCEH Plan Proponents make no representation or warranties as to the accuracy of such information.

Alternatively, if the Spin-Off Conditions are satisfied on or before the Spin-Off Conditions Termination Date (as set forth in Article IX.B.9 of the TCEH Plan) and remain satisfied as of the Effective Date, Article IV.B.2 of the TCEH Plan provides that Reorganized TCEH will separate from the EFH Debtors pursuant to a tax-free spin to form a standalone reorganized entity, and certain tax attributes of the EFH Group will be used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets, with the aggregate amount of such step-up expected to be approximately $[      ].

Other significant aspects of the TCEH Plan are summarized below.

**2.       *Distributions to TCEH First Lien Secured Claims (Class 3):***

The TCEH Plan contemplates the following distributions to Holders of Allowed TCEH First Lien Secured Claims:

- If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, the Holders of Allowed TCEH First Lien Secured Claims (Class 3) will, subject to Article III.C.3(c)(ii) of the TCEH Plan, receive (a) 100% of the Reorganized TCEH Common Stock (following the Basis Step-Up), subject to dilution after the Distribution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of the (1) TCEH Debtors' Cash on hand and (2) net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and the Spin-Off Preferred Stock Sale, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post-Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Spin-Off TRA Rights (if any); and (d) any proceeds of the TCEH Settlement Claim.

- If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, and the Taxable Separation is effectuated, the Holders of Allowed TCEH First Lien Secured Claims (Class 3) will, subject to Article III.C.3(c)(i) of the TCEH Plan, receive:  (a) 100% of the Reorganized TCEH Common Stock, subject to dilution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of the (1) TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election all or a portion of such New Reorganized TCEH Debt) and the issuance of certain stock or securities in connection with the Taxable Separation, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the TCEH Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Taxable Separation TRA Rights (if any); and (d) any proceeds of the TCEH Settlement Claim.

**3.       *Distributions to TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH (Class 4):***

Under the TCEH Plan, Class 4 (TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH) will be composed of (a) Holders of Allowed TCEH First Lien Deficiency Claims (in the Allowed amount of $[            ]); (b) Allowed TCEH Second Lien Note Claims (in the Allowed amount of $1,648,597,521); (c) Allowed TCEH Unsecured Note Claims (in the Allowed amount of $5,125,775,323); (d) PCRB Claims (excluding the Repurchased PCRBs) (in the Allowed amount of $881,496,233)[6]; and (e) General Unsecured Claims Against the TCEH Debtors Other than EFCH.  Each Holder of an Allowed Class 4 Claim will receive its Pro Rata share of the TCEH Cash Payment.

---

[6]    TCEH Debtor Intercompany Claims derived from, or based upon, the Repurchased PCRBs will be canceled and released without any distribution on account of such Claims.

4.        *Treatment of Allowed TCEH First Lien Deficiency Claims.*

Pursuant to the TCEH Plan and the Plan Support Agreement, Holders of Allowed TCEH First Lien Deficiency Claims will waive or be deemed to have waived, and the TCEH First Lien Agent will not take any action to interfere or that is inconsistent with the waiver of, any recovery or distribution on account of (but not voting rights in respect of) such Allowed TCEH First Lien Deficiency Claims.

Consequently, (a) Holders of Allowed TCEH First Lien Deficiency Claims will not waive their voting rights in respect of such Allowed TCEH First Lien Deficiency Claims and (b) recovery or distribution on account of Allowed TCEH First Lien Deficiency Claim will instead be distributed, Pro Rata, to Holders of Allowed (i) TCEH Unsecured Note Claims; (ii) TCEH Second Lien Note Claims; and (iii) General Unsecured Claims Against the TCEH Debtors Other Than EFCH (collectively (i) through (iii), the "<u>TCEH Deficiency Recipients</u>"), in a proportion equal to the amount that each such Holder's Allowed TCEH Deficiency Recipient Claim bears to the aggregate amount of all Allowed TCEH Deficiency Recipient Claims.

5.        *The Settlement*

The TCEH Plan implements the terms of the Settlement Agreement, which was approved by the Bankruptcy Court pursuant to the Settlement Order. A summary of the alleged claims that were settled and compromised pursuant to the TCEH Plan can be found in Article V.H.3 of the REIT Plan Disclosure Statement and in Article IV.L of the New Joint Plan Disclosure Statement. The TCEH Plan Proponents incorporate by reference such provisions of the REIT Plan Disclosure Statement and the New Joint Plan Disclosure Statement as if set forth herein.[7]

6.        *The Taxable Separation*

If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, the TCEH Debtors will undertake the Taxable Separation as set forth in the Taxable Separation Memorandum.

7.        *The Spin-Off*

If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, TCEH will, on or prior to the Effective Date form a new subsidiary, Reorganized TCEH. On the Effective Date, except for liabilities assumed by Reorganized TCEH pursuant to the TCEH Plan, all other Claims against the TCEH Debtors will be canceled, and each Holder of an Allowed Claim against a TCEH Debtor will have the right to receive its recovery in accordance with the terms of the TCEH Plan and TCEH shall assume the obligations of its subsidiaries that are TCEH Debtors to make distributions pursuant to and in accordance with the TCEH Plan that are to be made after the Effective Date.

Immediately following such cancellation, TCEH and the EFH Debtors will transfer to Reorganized TCEH (a) by TCEH, of all of TCEH's interests in its subsidiaries (excluding the stock of TCEH Finance) and (b) by the EFH Debtors, of certain assets, liabilities and equity interests related to the TCEH Debtors' operations, as agreed by TCEH, the TCEH Plan Proponents and the EFH Debtors pursuant to the Separation Agreement (the "<u>Contribution</u>") in exchange for which TCEH shall receive 100% of the (i) Reorganized TCEH membership interests and (ii) the net Cash proceeds of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt).

Immediately following the Contribution, TCEH and Reorganized TCEH shall effectuate the Spin-Off Preferred Stock Sale, including the distribution of the proceeds thereof to TCEH. Immediately following the Spin-Off Preferred Stock Sale, Reorganized TCEH shall undertake the Reorganized TCEH Conversion. Immediately following the Reorganized TCEH Conversion, TCEH will distribute the Reorganized TCEH Common Stock and the net Cash proceeds of the New Reorganized TCEH Debt (or at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and the Spin-Off Preferred Stock Sale, if any, received in the Contribution to Holders of Allowed TCEH First Lien Secured Claims.

---

[7]        The TCEH Plan Proponents make no representation or warranties as to the accuracy of such information.

(a)      **TCEH Step-Up in Tax Basis**.

If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, a significant percentage of the tax attributes of the EFH Group will be used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets (as defined in the Plan, the "Basis Step-Up"), subject to an agreed minimum NOL holdback amount as specified in the TCEH Plan and Exhibit I of the Plan Support Agreement.

For more information on the Basis Step-Up and the Spin-Off Preferred Stock Sale, refer to Section X.A of this Disclosure Statement, entitled "Introduction" which begins on page 55.

(b)      **Private Letter Ruling.**

The Spin-Off is conditioned upon EFH Corp (i) the IRS having issued (and not revoked) a Private Letter Ruling (as defined below), satisfactory to the TCEH Plan Proponents in their sole discretion, with all of the Fundamental Rulings no later than July 28, 2016 and (ii) all of the facts presented and the representations made in the IRS Submissions, as supplemented to reflect the terms of the TCEH Plan, being true, correct, and complete in all material respects as of the Effective Date. EFH filed a written request with the IRS dated June 10, 2014 (the "Original Ruling Request") that the IRS issue a private letter ruling (the "Private Letter Ruling") to EFH addressing the qualification of the Contribution, the Reorganized TCEH Conversion, and the Distribution as a "reorganization" within the meaning of Sections 368(a)(1)(G), 355, and 356 of the Internal Revenue Code of 1986 (as amended, the "IRC"), as well as addressing certain other matters.  EFH has subsequently provided supplemental information to the IRS, including a supplemental written request with the IRS dated September 3, 2015 (the "Supplemental Ruling Request" and, together with the Original Ruling Request, the "Ruling Request") that seeks certain additional rulings (including certain of the Fundamental Rulings) and addresses the structural changes to the Plan that have occurred since the Original Ruling Request was submitted.

**D.**     **Summary of Treatment of Claims and Interests and Description of Recoveries Under the TCEH Plan.**

The TCEH Plan organizes the TCEH Debtors' creditor and equity constituencies into Classes.  For each Class, the TCEH Plan describes:  (1) the underlying Claim or Interest; (2) the recovery available to the Holders of Claims or Interests in that Class under the TCEH Plan; (3) whether the Class is Impaired under the TCEH Plan; and (4) the form of consideration, if any, that such Holders will receive on account of their respective Claims or Interests.

Although the Chapter 11 Cases are being jointly administered pursuant to an order of the Bankruptcy Court, the TCEH Debtors are not proposing the substantive consolidation of their respective bankruptcy estates.

The proposed distributions and classifications under the TCEH Plan are based upon a number of factors.

The table below provides a summary of the classification, description, and treatment of Claims and Interests under the TCEH Plan.  This information is provided in summary form below for illustrative purposes only and is qualified in its entirety by reference to the provisions of the TCEH Plan.  For a more detailed description of the treatment of Claims and Interests under the TCEH Plan and the sources of satisfaction for Claims, including the treatment of certain types of Claims that are not separately classified under the TCEH Plan, see Section II of this TCEH Disclosure Statement, entitled "Summary of the TCEH Plan," which begins on page 14.

| Class | Name of Class Under the TCEH Plan | Description of Class | Estimated Percentage Recovery Under the TCEH Plan | TCEH Plan Treatment and Voting Rights |
|---|---|---|---|---|
| | | *Unclassified Non-Voting Claims Against the TCEH Debtors* | | |
| N/A | TCEH DIP Claims | Holders of Claims under the TCEH DIP Facility. | 100% | Each Holder shall receive payment in full in Cash. |

| Class | Name of Class Under the TCEH Plan | Description of Class | Estimated Percentage Recovery Under the TCEH Plan | TCEH Plan Treatment and Voting Rights |
|---|---|---|---|---|
| | | *Classified Claims and Interests of the TCEH Debtors* (EFCH, TCEH, and each of TCEH's direct and indirect TCEH Debtor subsidiaries) | | |
| 1 | Other Secured Claims against the TCEH Debtors | Holders of Allowed Other Secured Claims Against the TCEH Debtors. | 100% | Each Holder shall receive, at the option of the TCEH Plan Proponents, either: (a) payment in full in Cash; (b) delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired. Unimpaired; deemed to accept. |
| 2 | Other Priority Claims against the TCEH Debtors | Holders of any Allowed Other Priority Claims Against the TCEH Debtors, including all Claims, other than Administrative Claims, DIP Claims and Priority Tax Claims, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code. | 100% | Each Holder shall receive, at the option of the TCEH Plan Proponents, either: (a) payment in full in Cash; or (b) other treatment rendering such Claim Unimpaired. Unimpaired; deemed to accept. |
| 3 | TCEH First Lien Secured Claims | Holders of any Allowed TCEH First Lien Secured Claims. | [__%] | Subject to Article III.C.3(c) of the TCEH Plan, each Holder shall receive its Pro Rata share (which, for the avoidance of doubt, shall be based on the Allowed amounts of such Claims as of the Petition Date) of: (i) If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan: (a) 100% of the Reorganized TCEH Common Stock (following the Basis Step-Up), subject to dilution after the Distribution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of the (1) TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and the Spin-Off Preferred Stock Sale, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the TCEH Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post-Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Spin-Off TRA Rights; and (d) any proceeds of the TCEH Settlement Claim. (ii) If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan: (a) 100% of the Reorganized TCEH Common Stock, subject to dilution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of the (1) TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and certain stock or securities in connection with the Taxable Separation, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the |

| Class | Name of Class Under the TCEH Plan | Description of Class | Estimated Percentage Recovery Under the TCEH Plan | TCEH Plan Treatment and Voting Rights |
|---|---|---|---|---|
| | | | | TCEH Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post-Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Taxable Separation TRA Rights; and (d) any proceeds of the TCEH Settlement Claim.<br><br>Impaired; entitled to vote. |
| 4 | TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH | Holders of any Allowed Claims that are: (a) the TCEH First Lien Deficiency Claims; (b) the TCEH Second Lien Note Claims; and (c) the TCEH Unsecured Note Claims; (d) the PCRB Claims; (e) General Unsecured Claims Against the TCEH Debtors other than EFCH. | [_%] | Subject to Article IV. C.4 of the TCEH Plan, each Holder shall receive its Pro Rata share of the TCEH Cash Payment.[8]<br><br>Impaired; entitled to vote. |
| 5 | General Unsecured Claims Against EFCH | Holders of any Allowed Unsecured Claims against EFCH that are not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the EFCH 2037 Note Claims, but excluding: (a) Administrative Claims against EFCH; (b) Priority Tax Claims against EFCH; (c) Intercompany Claims against EFCH; (d) Other Priority Claims against EFCH; and (e) DIP Claims. | 0% | General Unsecured Claims Against EFCH shall be canceled and released without any distribution on account of such Claims.<br><br>Impaired; deemed to reject. |
| 6 | TCEH Debtor Intercompany Claims | Holders of any Claims by (a) a TCEH Debtor against another TCEH Debtor and (b) any Claim derived from or based upon the Repurchased PCRBs. | 0%/100% | TCEH Debtor Intercompany Claims shall be, at the option of the TCEH Plan Proponents, either: (a) Reinstated; or (b) canceled and released without any distribution on account of such Claims; *provided, however,* that TCEH Debtor Intercompany Claims against each of EFCH, TCEH, or TCEH Finance and any TCEH Debtor Intercompany Claim derived from or based upon the Repurchased PCRBs shall be canceled and released without any distribution on account of such Claims.<br><br>Unimpaired/Impaired; deemed to accept or reject. |
| 7 | Non-TCEH Debtor Intercompany Claims | Holders of any Claim by EFH Corp. or any direct or indirect subsidiary of EFH Corp. (other than a TCEH Debtor) against an TCEH Debtor. | 0% | Non-TCEH Debtor Intercompany Claims shall be canceled and released without any distribution on account of such Claims.<br><br>Impaired; deemed to reject. |
| 8 | Interests in TCEH Debtors other than TCEH and EFCH | Holders of Interests in each TCEH Debtor other than Interests in TCEH and EFCH. | 0%/100% | Interests in TCEH Debtors other than TCEH and EFCH shall be, with the consent of the TCEH Plan Proponents, either Reinstated or canceled and released without any distribution on account of such Interests. |

---

[8]    Distributions on account of the TCEH First Lien Deficiency Claims are being waived for the benefit of the TCEH Deficiency Recipients.

| Class | Name of Class Under the TCEH Plan | Description of Class | Estimated Percentage Recovery Under the TCEH Plan | TCEH Plan Treatment and Voting Rights |
|---|---|---|---|---|
| | | | | Unimpaired/Impaired; deemed to accept/reject. |
| 9 | Interests in TCEH and EFCH | Holders of Interests in TCEH and EFCH. | 0% | Interests in TCEH and EFCH shall be canceled and released without any distribution on account of such Interests.<br><br>Impaired; deemed to reject. |

## E.       Certain IRS Matters.

The Plan provides that as a condition precedent to the Effective Date, in the event the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, the TCEH Debtors must obtain a Private Letter Ruling containing several Fundamental Rulings. The TCEH Plan Proponents acknowledge that the IRS may not rule on certain matters, may issue rulings adverse to the Debtors, or may decline to issue a Private Letter Ruling.

Nothing in the TCEH Plan (or subsequently amended TCEH Plan) or Confirmation Order shall affect the rights of the IRS or United States to assess or collect a tax arising on or after the Confirmation Date against the Reorganized TCEH Debtors and/or any successor entities as permitted under applicable law.

## F.       Voting on the TCEH Plan.

Certain procedures will be used to collect and tabulate votes on the TCEH Plan (the "Solicitation Procedures"). The Solicitation Procedures are summarized in Section VII of this TCEH Disclosure Statement, entitled "Voting Instructions," which begins on page 46, and are described in more detail in the Order (a) Approving the TCEH Disclosure Statement, (B) Establishing the TCEH Voting Record Date, TCEH Voting Deadline, and Other Dates; (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the TCEH Plan and for Filing Objections to the TCEH Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents [D.I. ___] (the "TCEH Disclosure Statement Order") (attached hereto as **Exhibit H**), particularly with respect to certain voting procedures applicable to beneficial Holders of Claims under the TCEH First Lien Notes, TCEH Second Lien Notes, TCEH Unsecured Notes, and the PCRBs (the "Beneficial Holders") and their agents (the "Nominees").

Only Holders of Claims in Classes 3 and 4 (the "Voting Classes"), are entitled to vote on the TCEH Plan. Holders of all other Classes of Claims and Interests are deemed to:  (a) accept the TCEH Plan because their Claims or Interests are being paid in full or are otherwise Unimpaired; or (b) reject the TCEH Plan because their Claims or Interests will receive no recovery under the TCEH Plan.

**The Voting Deadline is 4:00 p.m. (prevailing Eastern Time) on [      ], 2016.** To be counted as votes to accept or reject the TCEH Plan, all ballots (each, a "Ballot") and master ballots (each, a "Master Ballot") must be properly pre-validated (if applicable), executed, completed, and delivered (by using the return envelope provided either by first class mail, overnight courier, or personal delivery) such that they are **actually received** on or before the Voting Deadline by Epiq Bankruptcy Solutions, LLC (the "Solicitation Agent") as follows:

**DELIVERY OF BALLOTS**

**BALLOTS AND MASTER BALLOTS, AS APPLICABLE, MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE, WHICH IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [      ], 2016, AT THE FOLLOWING ADDRESSES:**

**<u>FOR ALL BALLOTS OTHER THAN MASTER BALLOTS</u>**

**<u>VIA FIRST CLASS MAIL:</u>**

**EFH BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**P.O. BOX 4422**
**BEAVERTON, OREGON 97076-4422**

**<u>VIA OVERNIGHT COURIER OR HAND DELIVERY:</u>**

**EFH BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**10300 SW ALLEN BOULEVARD**
**BEAVERTON, OREGON 97005**

**<u>FOR MASTER BALLOTS</u>**

**<u>VIA FIRST CLASS MAIL, OVERNIGHT COURIER, OR HAND DELIVERY:</u>**

**EFH BALLOT PROCESSING**
**C/O EPIQ BANKRUPTCY SOLUTIONS, LLC**
**777 THIRD AVENUE, 12TH FLOOR**
**NEW YORK, NEW YORK 10017**

**IF YOU RECEIVED AN ENVELOPE ADDRESSED TO YOUR NOMINEE, PLEASE ALLOW ENOUGH TIME WHEN YOU RETURN YOUR BALLOT FOR YOUR NOMINEE TO CAST YOUR VOTE ON A MASTER BALLOT BEFORE THE VOTING DEADLINE.**

**BALLOTS RECEIVED VIA EMAIL OR FACSIMILE WILL NOT BE COUNTED.**

**[IF YOU HAVE ANY QUESTIONS ON THE PROCEDURE FOR VOTING ON THE TCEH PLAN, PLEASE CALL THE TCEH DEBTORS' RESTRUCTURING HOTLINE AT:**

**(877) 276-7311]**

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE SOLICITATION PROCEDURES WILL <u>NOT</u> BE COUNTED EXCEPT IN THE TCEH PLAN PROPONENTS' SOLE DISCRETION.**

**G.**     **The TCEH Plan Supplement.**

The TCEH Plan Proponents will file certain documents that provide more details about implementation of the TCEH Plan in the TCEH Plan Supplement, which will be filed with the Bankruptcy Court no later than fourteen days before the Confirmation Hearing (or such later date as may be approved by the Bankruptcy Court).  The TCEH Plan Proponents will serve a notice that will inform all parties that the TCEH Plan Supplement was filed, list the information included therein, and explain how copies of the TCEH Plan Supplement may be obtained.  Holders of Claims and Interests that are eligible to vote to accept or reject the TCEH Plan shall not be entitled to change their vote based on the contents of the TCEH Plan Supplement.  The TCEH Plan Supplement will include:

- the New Organizational Documents;

- the Rejected Executory Contract and Unexpired Lease List;

- the Assumed Executory Contract and Unexpired Lease List (which, in the event the EFH Debtors seek to assume and assign the Employment Agreements to Reorganized TCEH, shall include the Employment Agreements);

- a list of retained Causes of Action;

- the Reorganized TCEH Debtor Management Incentive Plan;

- the New Employee Agreements/Arrangements;

- the Reorganized TCEH Registration Rights Agreement;

- the identity of the members of the New Boards and management for the Reorganized TCEH Debtors;

- the New Reorganized TCEH Debt Documents;

- the Tax Matters Agreement;

- the Taxable Separation Memorandum;

- the Transition Services Agreement (if any);

- the Reorganized TCEH Shareholders' Agreement; and

- the material terms and conditions of the Taxable Separation Tax Receivable Agreement (if any), the Spin-Off Tax Receivable Agreement (if any), and the Separation Agreement (if any).

*THE FOREGOING SUMMARY IS ONLY A GENERAL OVERVIEW OF THIS TCEH DISCLOSURE STATEMENT AND THE MATERIAL TERMS OF, AND TRANSACTIONS PROPOSED BY, THE TCEH PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO, AND SHOULD BE READ IN CONJUNCTION WITH, THE MORE DETAILED DISCUSSIONS APPEARING ELSEWHERE IN THIS TCEH DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED TO THIS TCEH DISCLOSURE STATEMENT, INCLUDING THE TCEH PLAN.*

II.        **The TCEH Debtors' Business Operations and Capital Structure**

A description of the TCEH Debtors' corporate structure, business operations and capital structure can be found in the REIT Plan Disclosure Statement in Articles II.A (Overview of EFH's Corporate Structure), II.B. (EFH's Business Operations) and II.C (EFH's Capital Structure) thereof and in Article I.B of the New Joint Plan Disclosure Statement.  The TCEH Plan Proponents incorporate by reference such provisions of the REIT Plan Disclosure Statement and the New Joint Plan Disclosure Statement as if set forth herein.[9]

III.       **The Events Leading to the TCEH Debtors' Financial Difficulties**

A description of the events leading up to the TCEH Debtors' financial difficulties can be found in the REIT Plan Disclosure Statement in Article III thereof and in the New Joint Plan Disclosure Statement in Article III.  The TCEH Plan Proponents incorporate by reference such provisions of the REIT Plan Disclosure Statement and the New Joint Plan Disclosure Statement as if set forth herein.[10]

IV.       **Material Events in the Chapter 11 Cases**

A description of the significant events in the TCEH Debtors' Chapter 11 Cases can be found in the REIT Plan Disclosure Statement in Articles IV.A (Venue), IV.B (Appointment of Official Committees), IV.C (First and Second Day Motions), IV.D (Protocol for Certain Case Matters), IV.E (Retention of Professionals), IV.F (Motions Related to Restructuring Support Agreement, IV.G (Exploring the EFH/EFIH Transaction); IV.H (Retention of Conflicts Matter Advisors); IV.I (Legacy Discovery); IV.J. (TCEH First Lien Investigation); and IV.M (Disclosure Statement Discovery); and IV.P (Other Bankruptcy Motions, Applications, and Filings) thereof and in Article IV of the New Joint Plan Disclosure Statement.  The TCEH Plan Proponents incorporate by reference such provision of the REIT Plan Disclosure Statement and the New Joint Plan Disclosure Statement as if set forth herein.[11]

A.        **Other Ongoing Litigation Items.**

1.        *TCEH First Lien Intercreditor Action.*

On March 13, 2015, the TCEH First Lien Notes Trustee filed a complaint against the TCEH First Lien Agent in the New York Supreme Court Delaware Trust Company v. Wilmington Trust, N.A. (Index No. 650792/2015) (the "TCEH First Lien Intercreditor Action"). This action was subsequently removed to the District Court for the Southern District of New York, and, on July 23, 2015, it was transferred to the Bankruptcy Court. In the TCEH First Lien Intercreditor Action, the TCEH First Lien Notes Trustee asserted that the Cash Collateral Order improperly allocates first lien adequate protection payments among holders of TCEH First Lien Claims in a manner that is not in accordance with the TCEH First Lien Intercreditor Agreement because it fails to take into account the accrual of postpetition interest on the claims (the "Postpetition Interest Allocation Method"). The TCEH First Lien Notes Trustee also asserted that the Postpetition Interest Allocation Method should be utilized to allocated distributions under the REIT Plan. Morgan Stanley Capital Group Inc. ("Morgan Stanley"), J. Aron & Company ("J. Aron"), and Titan Investment Holdings L.P. ("Titan") each intervened in the TCEH First Lien Intercreditor Action. Morgan Stanley and J. Aron filed a joint motion seeking a judgment on the pleadings that the proper method for allocating adequate protection payments and distributions under the REIT Plan made to holders of TCEH First Lien Claims was pro rata based on the amount of claims held by each TCEH First Lien Creditor as of the Petition Date (the "Petition Date Allocation Method"); Titan filed a separate motion for judgment on the pleadings seeking similar relief (such motions, collectively, the "Intervenors' Motions"). The TCEH First Lien Notes Trustee also filed a motion seeking a judgment on the pleadings that the adequate protection payments and distributions under the REIT Plan made to holders of TCEH First Lien Claims should be allocated pursuant to the Postpetition Interest Allocation Method. On March 11, 2016, the Court issued an order granting the Intervenors' Motions holding that the Petition Date Allocation Method should be applied to allocate adequate protection payments and distributions under the REIT Plan made to holders of TCEH First Lien

---

[9]      The TCEH Plan Proponents make no representations or warranties as to the accuracy of such information.

[10]     The TCEH Plan Proponents make no representations or warranties as to the accuracy of such information.

[11]     The TCEH Plan Proponents make no representations or warranties as to the accuracy of such information.

Claims. The TCEH First Lien Notes Trustee has appealed, and the Court has imposed a temporary stay of its ruling as to the portion of the ruling relating to the Cash Collateral Order. The TCEH Debtors reserved this issue in the TCEH Cash Collateral Final Order and continue to escrow disputed amounts of the adequate protection payments, pending a resolution of the dispute.

      **2.**        **TCEH Deposit L/C Holder Action.**

      On May 14, 2015, Marathon Asset Management, L.P., Polygon Convertible Opportunity Master Fund, and Polygon Distressed Opportunities Master Fund, Holders of Deposit L/C Loans debt holder under the TCEH First Lien Credit Agreement (collectively, "Plaintiffs"), filed a declaratory judgment action suit against the TCEH First Lien Agent, in the Supreme Court of the State of New York, which was subsequently brought as an adversary proceeding before the Court (the "TCEH L/C Holder Lawsuit").  In the TCEH L/C Holder Lawsuit, Plaintiffs sought a declaratory judgment (a) finding that Plaintiffs had a priority secured interest in certain cash attributable to letters-of-credit issued under the TCEH L/C, specifically with respect to any "Undrawn Overage Amount" under the Deposit L/C Loan Collateral Account and (b) requiring the TCEH First Lien Agent to preserve any cash or other value corresponding to the Undrawn Overage Amount until distributions were made to Plaintiffs.  On April 12, 2016, the Court issued its ruling [D.I. 8202] granting the motion to dismiss Plaintiffs' complaint.  Plaintiffs have appealed the Court's ruling.

## V. Summary of the TCEH Plan

SECTION V OF THIS TCEH DISCLOSURE STATEMENT IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE KEY TERMS, STRUCTURE, CLASSIFICATION, TREATMENT, AND IMPLEMENTATION OF THE TCEH PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE TCEH PLAN, EXHIBITS TO THE TCEH PLAN, AND THE TCEH PLAN SUPPLEMENT. ALTHOUGH THE STATEMENTS CONTAINED IN THIS TCEH DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE TCEH PLAN AND IN DOCUMENTS REFERRED TO THEREIN, THIS TCEH DISCLOSURE STATEMENT DOES NOT PURPORT TO BE A PRECISE OR COMPLETE STATEMENT OF ALL RELATED TERMS AND PROVISIONS, AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE TCEH PLAN. INSTEAD, REFERENCE IS MADE TO THE TCEH PLAN AND ALL SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS. THE TCEH PLAN ITSELF (INCLUDING ATTACHMENTS AND THE TCEH PLAN SUPPLEMENT) WILL CONTROL THE TREATMENT OF HOLDERS OF CLAIMS AND INTERESTS UNDER THE TCEH PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES BETWEEN THIS SECTION V AND THE TCEH PLAN (INCLUDING ANY ATTACHMENTS TO THE TCEH PLAN) AND THE TCEH PLAN SUPPLEMENT, THE LATTER SHALL GOVERN.

### A. Sources of Consideration for TCEH Plan Distributions.

Distributions under the TCEH Plan shall be funded, as applicable, with: (1) Cash on hand at the TCEH Debtors; (2) the New Reorganized TCEH Debt and/or the Cash proceeds thereof; (3) the Cash proceeds of any sale stock or securities issued in connection with the Taxable Separation or the Spin-Off Preferred Stock Sale, as applicable; (4) the Reorganized TCEH Common Stock; and (5) the Spin-Off TRA Rights (if any) or Taxable Separation TRA Rights (if any).

Each distribution and issuance referred to in Article VI of the TCEH Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance. The issuance of certain securities in connection with the TCEH Plan, including the Reorganized TCEH Common Stock will be exempt from SEC registration to the fullest extent permitted by law.

#### 1. *Cash on Hand at the TCEH Debtors.*

The TCEH Debtors shall use their Cash on hand to fund distributions to certain Holders of Claims against the TCEH Debtors in accordance with the TCEH Plan.

#### 2. *New Reorganized TCEH Debt.*

On the Effective Date, Opco shall enter into the New Reorganized TCEH Debt Documents and incur the New Reorganized TCEH Debt, *provided*, *however*, that if the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, Opco shall enter into the New Reorganized TCEH Debt Documents and incur the New Reorganized TCEH Debt before the Reorganized TCEH Conversion.

Confirmation shall constitute approval of the New Reorganized TCEH Debt Documents (including the transactions contemplated thereby, and all actions to be undertaken, undertakings to be made, and obligations to be incurred by Reorganized TCEH in connection therewith), and authorization for Reorganized TCEH to enter into and execute the New Reorganized TCEH Debt Documents, subject to such modifications as Reorganized TCEH may deem to be reasonably necessary to consummate the New Reorganized TCEH Debt Documents.

Opco will distribute the Cash proceeds of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) to TCEH and TCEH shall use such proceeds (or such New Reorganized TCEH Debt) to fund distributions to certain Holders of Claims against the TCEH Debtors in accordance with the TCEH Plan.

3.        *Reorganized TCEH Common Stock.*

Reorganized TCEH shall be authorized to issue 450,000,000 shares of Reorganized TCEH Common Stock, subject to dilution only by the Reorganized TCEH Debtor Management Incentive Plan.  Reorganized TCEH shall issue all securities, instruments, certificates, and other documents required to be issued for the Reorganized TCEH Common Stock in respect of Reorganized TCEH or its subsidiaries.  All of the shares of Reorganized TCEH Common Stock issued pursuant to the TCEH Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Certain Holders of Reorganized TCEH Common Stock will be parties to the Reorganized TCEH Registration Rights Agreement.

4.        *Reorganized TCEH Sub Preferred Stock.*

If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, the Reorganized TCEH Debtors shall enter into the Spin-Off Preferred Stock Sale.  Under (and in anticipation of) the Spin-Off Preferred Stock Sale, the Preferred Stock Entity will be authorized to issue a certain number of shares of Reorganized TCEH Sub Preferred Stock, the terms of which shall be consistent with the description of the preferred stock contained in the IRS Submissions previously filed by the Debtors (unless otherwise consented to by the TCEH Plan Proponents).  The Preferred Stock Entity shall issue all securities, instruments, certificates, and other documents required to be issued for the Reorganized TCEH Sub Preferred Stock in respect of Reorganized TCEH or its subsidiaries.  All of the shares of Reorganized TCEH Sub Preferred Stock issued pursuant to the TCEH Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Reorganized TCEH will distribute the Cash proceeds from the sale of the Reorganized TCEH Sub Preferred Stock to TCEH prior to the Reorganized TCEH Conversion, and TCEH shall use such proceeds to fund distributions to certain Holders of Allowed Claims against the TCEH Debtors in accordance with the TCEH Plan.

B.    **Restructuring Transactions.**

1.        *Restructuring Transactions.*

On the Effective Date, with the consent of the TCEH Plan Proponents, the Debtors or the Reorganized Debtors, as applicable, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Debtors, to the extent provided therein.  The actions to implement the Restructuring Transactions may include:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the TCEH Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the TCEH Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; and (d) all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the TCEH Plan.

The TCEH Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the TCEH Plan, including the Restructuring Transactions.

2.      *Taxable Separation*

If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, the TCEH Debtors will undertake the Taxable Separation, as set forth in the Taxable Separation Memorandum.

3.      *Spin-Off*

(a)      If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, the TCEH Debtors will undertake the Spin-Off, as follows:

(i)      TCEH formed Reorganized TCEH prior to the Effective Date;

(ii)      on the Effective Date, except for liabilities assumed by Reorganized TCEH pursuant to the TCEH Plan, all other Claims against the TCEH Debtors will be canceled, and each Holder of an Allowed Claim against a TCEH Debtor will have the right to receive its recovery in accordance with the terms of the TCEH Plan; and TCEH shall assume the obligations of its subsidiaries that are TCEH Debtors to make distributions pursuant to and in accordance with the TCEH Plan that are to be made after the Effective Date;

(iii)      immediately following such cancelation, TCEH and the EFH Debtors will make the Contribution to Reorganized TCEH, in exchange for which TCEH shall receive 100% of the (i) Reorganized TCEH membership interests and (ii) the net Cash proceeds of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt);

(iv)      immediately following the Contribution, TCEH and Reorganized TCEH shall effectuate the Spin-Off Preferred Stock Sale, including the distribution of the proceeds thereof to TCEH;

(v)      immediately following the Spin-Off Preferred Stock Sale, Reorganized TCEH shall undertake the Reorganized TCEH Conversion; and

(vi)      immediately following the Reorganized TCEH Conversion, TCEH will make the Distribution.

(b)      *TCEH Basis Step-Up.*

Pursuant to the Spin-Off Preferred Stock Sale, gain will be triggered in an amount not in excess of, and in order to achieve, the Basis Step-Up.

4.      *Transition Services Agreement.*

If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, on the Effective Date, Reorganized TCEH and EFH or their respective subsidiaries will enter into the Transition Services Agreement.

5.      *Tax Matters Agreement.*

If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, EFH Corp., EFIH and Reorganized TCEH shall enter into the Tax Matters Agreement, which agreement shall govern the rights and obligations of each party thereto with respect to certain tax matters, including covenants intended to protect the Spin-Off Intended Tax Treatment and indemnity provisions if either party takes any action that causes the Spin-Off to fail to qualify for the Spin-Off Intended Tax Treatment, as described in the Tax Matters Agreement Term Sheet. If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, (x) Reorganized TCEH and (y) EFH Corp. and/or EFIH may enter into the Tax Matters Agreement, which agreement shall govern the rights and obligations of each party thereto with respect to certain tax matters, as described in the Tax Matters Agreement Term Sheet. After

the Effective Date, the Tax Matters Agreement shall not be amended or modified in any manner without the written consent of Reorganized TCEH.

6.     *Separation Agreement*

If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, on or before the Effective Date, the EFH Debtors, the EFIH Debtors and Reorganized TCEH shall enter into the Separation Agreement, which agreement shall address the transfer by the EFH Debtors and EFIH Debtors of certain assets, liabilities, and equity interests related to the TCEH Debtors' operations.  If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, on or before the Effective Date, the EFH Debtors, the EFIH Debtors and Reorganized TCEH may enter into the Separation Agreement, which agreement shall address the transfer by the EFH Debtors and EFIH Debtors of certain assets, liabilities, and equity interests related to the TCEH Debtors' operations

7.     *Implementation of the TCEH Settlement.*

Consistent with section 2.2(a) of the Settlement Agreement, on the Effective Date, and for the purposes of this TCEH Plan and the settlements and compromises incorporated herein or contemplated hereby, Holders of Allowed TCEH First Lien Deficiency Claims will waive or be deemed to have waived, and the TCEH First Lien Agent will not take any action to interfere or that is inconsistent with the waiver of, any recovery or distribution on account of (but not voting rights in respect of) such Allowed TCEH First Lien Deficiency Claims for the benefit of Holders of Allowed TCEH Deficiency Recipient Claims, and (b) all distributions on account of the TCEH Cash Payment that would otherwise have been distributed to, or for the benefit of, Holders of Allowed TCEH First Lien Deficiency Claims pursuant this TCEH Plan will instead be distributed Pro Rata to Holders of Allowed TCEH Deficiency Recipient Claims, such that each Holder of an Allowed TCEH Deficiency Recipient Claim receives a proportion thereof equal to the amount its Allowed TCEH Deficiency Recipient Claim bears to the aggregate amount of all Allowed TCEH Deficiency Recipient Claims.  For the avoidance of doubt, under no circumstance will any Holder of an Allowed TCEH First Lien Deficiency Claim receive any recovery or distribution on account of such Allowed TCEH First Lien Deficiency Claims under the TCEH Plan (including on account of any recovery or distribution provided for in Article III.C.4).  For purposes of allocating the TCEH Cash Payment among the Holders of Class 4 Allowed Claims, any amounts attributable to the Settlement Agreement Professional Fees shall be allocated among such Holders in a manner consistent with section 2.7 of the Settlement Agreement.

C.     **Administrative Claims, Priority Tax Claims, DIP Claims, and Statutory Fees.**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.

As described below, the projected recovery under the TCEH Plan for holders of General Administrative Claims and Priority Tax Claims is 100%.

Additionally, the TCEH Debtors estimate that the DIP Claims on the Effective Date will include approximately [$____ billion] on account of the TCEH DIP Facility.  As described below, the projected recovery under the TCEH Plan for Holders of DIP Claims is 100%.

1.     *Administrative Claims.*

The TCEH Plan provides that Administrative Claims are Claims for costs and expenses of administration of the TCEH Debtors' estates pursuant to sections 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, other than DIP Claims, including:

- the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the businesses of the TCEH Debtors;

- Allowed Professional Fee Claims, meaning Claims for the compensation of and reimbursement of expenses incurred by Entities (a) retained  pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the

Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code;

- all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930; as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code. Such fees and charges will be paid by each of the applicable Reorganized TCEH Debtors (or the Disbursing Agent on behalf of each of the applicable Reorganized TCEH Debtors) for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized TCEH Debtors is converted, dismissed, or closed, whichever occurs first. All such fees due and payable prior to the Effective Date shall be paid by the TCEH Debtors on the Effective Date. After the Effective Date, the Disbursing Agent or the applicable Reorganized TCEH Debtor shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee, until the earliest of the date on which the applicable Chapter 11 Case of the Reorganized TCEH Debtors is converted, dismissed, or closed; and

- those Administrative Claims authorized pursuant to the Cash Management Order.

Except as specified in Article II of the TCEH Plan, unless the Holder of an Allowed General Administrative Claim and the TCEH Plan Proponents agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either: (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, 60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the TCEH Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except for Claims of Professionals, requests for payment of General Administrative Claims must be Filed and served on the TCEH Plan Proponents and the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, no later than the Administrative Claims Bar Date applicable to the TCEH Debtor against whom the General Administrative Claim is asserted pursuant to the procedures specified in the TCEH Confirmation Order and the notice of the Effective Date. Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the TCEH Debtors, the Reorganized TCEH Debtors, or their respective property and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date. Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for further action by the TCEH Debtors or the Reorganized TCEH Debtors or further order of the Bankruptcy Court. To the extent Article II.A.1 of the TCEH Plan conflicts with Article XII.C. of the TCEH Plan with respect to the fees and expenses payable under section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, Article XII.C. of the TCEH Plan shall govern.

   2.       *Professional Compensation.*

       (a)       **Final Fee Applications.**

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date, must be Filed and served on the Reorganized TCEH Debtors no later than 45 days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to its full Allowed amount. If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee

Claims, remaining unpaid Allowed Professional Fee Claims will be paid by the Reorganized TCEH Debtors. For the avoidance of doubt, the TCEH Debtors shall pay all Allowed Collective Professional Fee Claims and Allowed Direct Professional Fee Claims that have been allocated to the TCEH Debtors through the Effective Date; *provided, however,* that the TCEH Debtors reserve the right to seek reimbursement from the EFH Debtors and/or the EFIH Debtors to the extent that such allocation is modified pursuant to any order entered by the Bankruptcy Court in the EFH Debtors and/or the EFIH Debtors' Chapter 11 Cases. The TCEH Debtors shall not pay, and shall not be obligated to pay, any Allowed Collective Professional Fee Claims or Allowed Direct Professional Fee Claims that are allocated to the EFH or EFIH Debtors.

(b)     **Professional Fee Escrow Account.**

On the Effective Date, the Reorganized TCEH Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the TCEH Debtors or the Reorganized TCEH Debtors. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized TCEH Debtors from the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by a Final Order. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized TCEH Debtors, without any further action or order of the Bankruptcy Court.

(c)     **Professional Fee Reserve Amount.**

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the TCEH Debtors before and as of the Effective Date (excluding 327(e) Professionals, who shall estimate such unpaid fees and expenses before and as of the Confirmation Date) and shall deliver such estimate to the TCEH Debtors no later than five days before the Effective Date, *provided, however,* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the TCEH Debtors or Reorganized TCEH Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total amount estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

(d)     **Post-Effective Date Fees and Expenses.**

Except as otherwise specifically provided in the TCEH Plan, from and after the Effective Date, the TCEH Debtors or Reorganized TCEH Debtors shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the TCEH Plan and Consummation incurred on or after the Effective Date by (i) the TCEH Debtors or Reorganized TCEH Debtors, (ii) the Committee, and (iii) the TCEH Plan Proponents. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the TCEH Debtors or Reorganized TCEH Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however,* that with respect to the 327(e) Professionals and the Ordinary Course Professionals, any requirements to comply with sections 327 through 331, 363, and 1103, or the Ordinary Course Professional Order (other than the 327(e) Professionals' final fee applications for Professional Fees through the Confirmation Date as set forth in Article II.A.2(a) above) as applicable, shall terminate as of the Confirmation Date, and the TCEH Debtors or Reorganized TCEH Debtors may thereafter employ and pay the 327(e) Professionals and Ordinary Course Professionals in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court; *provided, however,* that Article II.B.2(d) of the TCEH Plan shall only apply to the Professionals of the TCEH Debtors or Reorganized TCEH Debtors, as applicable; and *provided, further,* that from and after the Effective Date, any fees and expenses otherwise payable by the EFH Debtors or the EFIH Debtors under the Interim Compensation Order shall continue to be paid by the EFH Debtors and/or the EFIH Debtors pursuant to the terms set forth therein.

3.        *DIP Claims.*

    (a)        **DIP Claims.**

The DIP Claims shall be Allowed in the full amount due and owing under the DIP Credit Agreement, including all principal, accrued and accruing postpetition interest, costs, fees, and expenses.  On the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, each Allowed DIP Claim, each such Holder shall receive payment in full in Cash on the Effective Date; *provided* that:

    (i)        in respect of any DIP L/C that is outstanding on the Effective Date, at the option of Reorganized TCEH, (i) such DIP L/C shall have been canceled (as evidenced by return of the original DIP L/C to the applicable DIP L/C Issuer for cancelation or, if no original was issued, written confirmation from the beneficiary of the DIP L/C to the DIP L/C Issuer, via swift or in the form of a release letter, that such outstanding DIP L/C is no longer in effect), (ii) such DIP L/C shall have been collateralized in Cash in an amount equal to 101% of the undrawn face amount of such DIP L/C, pursuant to documentation in form and substance satisfactory to the applicable DIP L/C Issuer, (iii) a back-to-back letter of credit in an amount equal to 101% of the undrawn face amount of such DIP L/C shall have been provided to the applicable DIP L/C Issuer on terms and from a financial institution acceptable to such DIP L/C Issuer, or (iv) such other treatment shall have been provided with respect to such DIP L/C as Reorganized TCEH and the applicable DIP L/C Issuer shall agree;

    (ii)        in respect of any DIP Secured Hedge Obligation that is outstanding on the Effective Date, at the option of Reorganized TCEH, (i) such DIP Secured Hedge Obligation shall be secured by a first priority Lien on the DIP Collateral on terms and conditions as Reorganized TCEH and the applicable DIP Secured Hedge Bank shall agree, (ii) such DIP Secured Hedge Obligation shall be repaid in full in Cash on the Effective Date, or (iii) such other treatment shall have been provided with respect to such DIP Secured Hedge Obligation as Reorganized TCEH and the applicable DIP Secured Hedge Bank shall agree;

    (iii)        in respect of any DIP Secured Cash Management Obligation that is outstanding on the Effective Date, at the option of Reorganized TCEH, (i) such DIP Secured Cash Management Obligation shall be secured by a first priority Lien on the DIP Collateral on terms and conditions as Reorganized TCEH and the applicable DIP Secured Cash Management Bank shall agree, (ii) such DIP Secured Cash Management Obligation shall be repaid in full in Cash on the Effective Date, or (iii) such other treatment shall have been provided with respect to such DIP Secured Cash Management Obligation as Reorganized TCEH and the applicable DIP Secured Cash Management Bank shall agree; and

    (iv)        the DIP Contingent Obligations (including any and all expense reimbursement obligations of the TCEH Debtors that are contingent as of the Effective Date) shall survive the Effective Date on an unsecured basis, shall be paid by the applicable Reorganized TCEH Debtors as and when due under the DIP Credit Agreement, and shall not be discharged or released pursuant to the TCEH Plan or the TCEH Confirmation Order.

Contemporaneously with all amounts owing in respect of principal included in the DIP Claims (other than the DIP Secured Hedge Obligations, the DIP Secured Cash Management Obligations, and the DIP Contingent Obligations), interest accrued thereon to the date of payment, and fees, expenses, and non-contingent indemnification obligations then due and payable as required by the DIP Facility and arising before the Effective Date being paid in full in Cash (or, in the case of any outstanding DIP L/C, receiving treatment in accordance with Article II.B.1(a) of the TCEH Plan):  (a) the commitments under the DIP Facility shall automatically terminate; (b) except with respect to the DIP Contingent Obligations, the DIP Facility shall be deemed canceled; (c) all mortgages, deeds of trust, Liens, pledges, and other security interests against any property of the Estates arising out of or related to the DIP Facility shall automatically terminate and be released, and all DIP Collateral subject to such mortgages, deeds of trust, Liens, pledges, and other security interests shall be automatically released, in each case without further action by the DIP

Lenders; and (d) all guarantees of the TCEH Debtors and Reorganized TCEH Debtors arising out of or related to the DIP Claims shall be automatically discharged and released, in each case without further action by the DIP Lenders or any other Entity.

**4.      *Priority Tax Claims.***

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**D.      Classification of Claims and Interests.**

Claims and Interests, except for Administrative Claims, DIP Claims, and Priority Tax Claims, are classified in the Classes set forth in Article III of the TCEH Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the TCEH Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

**E.      Class Identification for the TCEH Debtors.**

The TCEH Plan constitutes a separate chapter 11 plan of reorganization for each TCEH Debtor, each of which shall include the classifications set forth below.  Subject to Article III.E of the TCEH Plan, to the extent that a Class contains Claims or Interests only with respect to one or more particular TCEH Debtors, such Class applies solely to such TCEH Debtor.

The following chart represents the classification of Claims and Interests for each TCEH Debtor pursuant to the TCEH Plan.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class 1 | Other Secured Claims Against the TCEH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims Against the TCEH Debtors | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | TCEH First Lien Secured Claims | Impaired | Entitled to Vote |
| Class 4 | TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH. | Impaired | Entitled to Vote |
| Class 5 | General Unsecured Claims Against EFCH | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | TCEH Debtor Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 7 | Non-TCEH Debtor Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Interests in TCEH Debtors Other Than TCEH and EFCH | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| Class 9 | Interests in TCEH and EFCH | Impaired | Not Entitled to Vote (Deemed to Reject) |

**E.      Treatment of Classified Claims and Interests.**

Distributions under the TCEH Plan will be made only to Holders of Allowed Claims or Allowed Interests.  As more fully described in Articles VI and VII of the TCEH Plan, Holders of Disputed Claims or Disputed Interests will

receive no distributions unless and until their Claims or Interests become Allowed. For the avoidance of doubt, parties who hold Allowed Claims and Disputed Claims will receive distributions under the TCEH Plan on account of any Allowed Claims on the Effective Date regardless of whether there is an ongoing litigation or adversary proceeding with respect to any Disputed Claims. Disputed Claims will not receive a distribution or payment under the TCEH Plan until such Disputed Claims become Allowed Claims.

Pursuant to the terms of the TCEH Plan, except for Claims or Interests that are (1) expressly exempted from the discharge provisions of the Bankruptcy Code or (2) specifically identified as being Reinstated, all Claims or Interests that arose prior to Confirmation will be discharged.

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any TCEH Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.    ***Class 1 - Other Secured Claims Against the TCEH Debtors.***

Class 1 consists of Other Secured Claims Against the TCEH Debtors, which consist of any Secured Claim against any of the TCEH Debtors, including the Oak Grove Promissory Note Claims and Tex-La Obligations, but excluding:  (a) TCEH First Lien Secured Claims; and (b) DIP Claims. Additionally, certain of the TCEH Debtors' trade vendors may be able to assert liens against the TCEH Debtors' assets that have arisen by operation of certain State and Federal laws. In certain instances, such liens may be senior in priority to the liens supporting the TCEH First Lien Secured Claims. Certain claims giving rise to such liens were paid in connection with the TCEH Debtors' motion to pay prepetition claims of shippers, warehousemen, and materialmen [D.I. 27], but other trade vendors whose prepetition claims are not paid in full may assert that their claims are supported by such liens.

Except to the extent that a Holder of an Allowed Claim in Class 1 agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 1, each such Holder shall receive, at the option of the TCEH Plan Proponents, either:  (a) payment in full in Cash; (b) delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired.

Class 1 is Unimpaired under the TCEH Plan. Holders of Claims in Class 1 are conclusively deemed to have accepted the TCEH Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

2.    ***Class 2 - Other Priority Claims Against the TCEH Debtors.***

Class 2 consists of Other Priority Claims against the TCEH Debtors, which consist of any Claim, other than an Administrative Claim, a DIP Claim, or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

Except to the extent that a Holder of an Allowed Claim in Class 2 agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 2, each such Holder shall receive, at the option of the TCEH Plan Proponents, either: (a) payment in full in Cash; or (b) other treatment rendering such Claim Unimpaired.

Class 2 is Unimpaired under the TCEH Plan. Holders of Interests in Class 2 are conclusively deemed to have accepted the TCEH Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

3.    ***Class 3 - TCEH First Lien Secured Claims.***

Class 3 consists of TCEH First Lien Secured Claims, which consist of:  (a) the TCEH Credit Agreement Claims; (b) the TCEH First Lien Note Claims; (c) the TCEH First Lien Interest Rate Swap Claims; and (d) the TCEH First Lien Commodity Hedge Claims. The TCEH First Lien Claims are Allowed as follows:  (i) $22,863,271,257 of TCEH Credit Agreement Claims; (ii) $1,815,965,278 of TCEH First Lien Note Claims; (iii) TCEH First Lien Commodity Hedge Claims and TCEH First Lien Swap Claims are Allowed in an aggregate amount of no less than

$[1,230,817,606.94]; and (iv) any Claims of the TCEH First Lien Administrative Agent, the TCEH First Lien Collateral Agent, or the TCEH First Lien Notes Trustee for fees, expenses, or indemnification obligations arising under and pursuant to the TCEH Credit Agreement, the TCEH First Lien Notes Indenture, the TCEH First Lien Interest Rate Swaps, the TCEH First Lien Commodity Hedges, or the TCEH First Lien Intercreditor Agreement, as applicable, are Allowed in an amount to be determined.

Except to the extent that a Holder of an Allowed Claim in Class 3 agrees to a less favorable treatment of its Allowed Claim (in a writing executed by such Holder after the Petition Date), in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 3, subject to Article III.C.3(d), each such Holder thereof shall receive its Pro Rata share (which, for the avoidance of doubt, shall be based on the Allowed amounts of such Claims as of the Petition Date) of:

- *If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan Deadline*:  (a) 100% of the Reorganized TCEH Common Stock, subject to dilution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of the (1) TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and certain stock or securities in connection with the Taxable Separation, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the TCEH Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Taxable Separation TRA Rights (if any); and (d) any proceeds of the TCEH Settlement Claim.

- *If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan*:  (a) 100% of the Reorganized TCEH Common Stock (following the Basis Step-Up), subject to dilution after the Distribution only on account of the Reorganized TCEH Debtor Management Incentive Plan; (b) 100% of the (1) TCEH Debtors' Cash on hand and (2) the net Cash proceeds from the issuance of the New Reorganized TCEH Debt (or, at the TCEH Plan Proponents' election, all or a portion of such New Reorganized TCEH Debt) and the Spin-Off Preferred Stock Sale, in each case after funding any Cash distributions required to be made by the TCEH Debtors under the TCEH Plan, including payment in full of each Allowed TCEH DIP Claim and distributions on account of the TCEH Cash Payment, and providing for adequate post-Effective Date liquidity for TCEH as determined by the TCEH Plan Proponents; (c) the Spin-Off TRA Rights (if any); and (d) any proceeds of the TCEH Settlement Claim.

If a TCEH First Lien Creditor Plan Distribution Allocation Order is entered prior to the Effective Date and such order provides that Holders of Allowed Class 3 Claims shall receive the TCEH First Lien Creditor Distributions on a basis other than Pro Rata, then pursuant to section 510(a) of the Bankruptcy Code, any such TCEH First Lien Creditor Distribution that is subject to such TCEH First Lien Creditor Plan Distribution Allocation Order shall be distributed among the Holders of Allowed Class 3 Claims in accordance with such TCEH First Lien Creditor Plan Distribution Allocation Order; *provided, however*, that if a TCEH First Lien Creditor Plan Distribution Allocation Order has not been entered by the Effective Date, then the TCEH Debtors shall establish a reserve (in an amount to be determined by the TCEH Debtors, with the consent of each of the TCEH First Lien Agent, the TCEH Plan Proponents, the TCEH First Lien Notes Trustee, and any other parties to the TCEH First Lien Note Intercreditor Action) solely with respect to any TCEH First Lien Creditor Distributions that remain subject to the TCEH First Lien Creditor Plan Distribution Allocation Dispute, with such reserved amounts to be distributed on a Pro Rata basis after entry of a TCEH First Lien Creditor Plan Distribution Allocation Order, unless and to the extent such order provides that Holders of Allowed Class 3 Claims are entitled to a distribution of any TCEH First Lien Creditor Distributions on a basis other than Pro Rata, in which case, pursuant to section 510(a) of the Bankruptcy Code, any such TCEH First Lien Creditor Distribution that is subject to such TCEH First Lien Creditor Plan Distribution Allocation Order shall be distributed among the Holders of Allowed Class 3 Claims in accordance with such TCEH First Lien Creditor Plan Distribution Allocation Order.  Nothing in this Plan shall preclude any party from seeking enforcement of the TCEH First Lien Creditor Adequate Protection Payment Allocation Order or distribution of the Holdback Amount (as defined in the Cash Collateral Order) under the Cash Collateral Order.

Class 3 is Impaired under the TCEH Plan.  Therefore, Holders of Allowed Claims in Class 3 are entitled to vote to accept or reject the TCEH Plan.

4. **Class 4 – TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH.**

Class 4 consists of General Unsecured Claims Against the TCEH Debtors Other Than EFCH and TCEH Unsecured Debt Claims, which consist of:  (a) the TCEH First Lien Deficiency Claims; (b) the TCEH Second Lien Note Claims; (c) the TCEH Unsecured Note Claims, and (d) the PCRB Claims.

As Class 4 Claims, (a) the TCEH First Lien Deficiency Claims are, solely for purposes of the TCEH Plan and the settlements and compromises incorporated herein or contemplated hereby, Allowed in the amount of $[          ], (b) the TCEH Second Lien Note Claims are Allowed in the amount of $1,648,597,521; (c) the TCEH Unsecured Note Claims are Allowed in the amount of $5,125,775,323; and (d) the PCRB Claims are Allowed in the amount of $881,496,233.

Except to the extent that a Holder of an Allowed Claim in Class 4 agrees to a less favorable treatment of its Allowed Claim, and subject to Article IV.B.4 of the TCEH Plan, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 4, each such Holder shall receive its Pro Rata share of the TCEH Cash Payment.

Class 4 is Impaired under the TCEH Plan.  Therefore, Holders of Allowed Claims in Class 4 are entitled to vote to accept or reject the TCEH Plan.

5. **Class 5 - General Unsecured Claims Against EFCH.**

Class 5 consists of General Unsecured Claims Against EFCH, which consist of any Unsecured Claim against EFCH that is not otherwise paid in full pursuant to an order of the Bankruptcy Court, including the EFCH 2037 Note Claims, but excluding:  (a) Administrative Claims against EFCH; (b) Priority Tax Claims against EFCH; (c) Intercompany Claims against EFCH; (d) Other Priority Claims against EFCH; and (e) DIP Claims.  General Unsecured Claims Against EFCH shall be canceled and released without any distribution on account of such Claims.

Class 5 is Impaired under the TCEH Plan.  Holders of Claims in Class 5 are conclusively deemed to have rejected the TCEH Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

6. **Class 6 - TCEH Debtor Intercompany Claims.**

Class 6 consists of TCEH Debtor Intercompany Claims, which consist of (a) any Claim by a TCEH Debtor against another TCEH Debtor and (b) any Claim derived from or based upon the Repurchased PCRBs.  TCEH Debtor Intercompany Claims shall be, at the option of the TCEH Plan Proponents, either:  (a) Reinstated; or (b) canceled and released without any distribution on account of such Claims; *provided*, *however*, that TCEH Debtor Intercompany Claims against each of EFCH, TCEH, or TCEH Finance and any TCEH Debtor Intercompany Claim derived from or based upon the Repurchased PCRBs shall be canceled and released without any distribution on account of such Claims

Holders of Claims in Class 6 are conclusively deemed to have accepted or rejected the TCEH Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

7. **Class 7 - Non-TCEH Debtor Intercompany Claims**

Class 7 consists of Non-TCEH Debtor Intercompany Claims, which consist of any Claim by EFH Corp. or any direct or indirect subsidiary of EFH Corp. (other than a TCEH Debtor) against a TCEH Debtor.  Non-TCEH Debtor Intercompany Claims shall be canceled and released without any distribution on account of such Claims.

Class 7 is Impaired under the TCEH Plan.  Holders of Claims in Class 7 are conclusively deemed to have rejected the TCEH Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

**8.**  *Class 8 - Interests in TCEH Debtors Other Than TCEH and EFCH.*

Class 8 consists of Interests in TCEH Debtors Other Than TCEH and EFCH.  Interests in TCEH Debtors Other Than TCEH and EFCH shall be, with the consent of the TCEH Plan Proponents, either Reinstated or canceled and released without any distribution on account of such Interests.

Holders of Interests in Class 8 are conclusively deemed to have accepted or rejected the TCEH Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

**9.**  *Class 9 - Interests in TCEH and EFCH.*

Class 9 consists of Interests in TCEH and EFCH.  Interests in TCEH and EFCH shall be canceled and released without any distribution on account of such Interests.

Class 9 is Impaired under the TCEH Plan.  Holders of Interests in Class 9 are conclusively deemed to have rejected the TCEH Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the TCEH Plan.

**F.**  **Other Selected Provisions of the TCEH Plan.**

Holders of Claims and Interests should read and review the TCEH Plan in its entirety.  The inclusion of the below provisions in this Summary of the TCEH Plan should not be understood to imply that these provisions are more or less material than any other provision in the TCEH Plan.

**1.**  *Payment of Certain Fees.*

**a.**  **Fees and Expenses Payable Under the TCEH Plan and Transaction Documents.**

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Reorganized TCEH Debtors shall pay on the Effective Date any reasonable and documented unpaid fees and expenses incurred on or before the Effective Date by professionals (a) payable under (1) the TCEH DIP Facility, (2) the Cash Collateral Order, including any applicable transaction, success, or similar fees for which the applicable TCEH Debtors have agreed to be obligated, and (b) retained by any of the TCEH Plan Proponents.  Reorganized TCEH shall indemnify the TCEH First Lien Agent and the TCEH Plan Proponents for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of its counsel and agents) incurred after the Effective Date solely in connection with the implementation of the TCEH Plan, including but not limited to, making distributions pursuant to and in accordance with the TCEH Plan, and any disputes arising in connection therewith.

All amounts distributed and paid pursuant to Article IV.Q of the TCEH Plan shall not be subject to disgorgement, setoff, recoupment, reduction, or reallocation of any kind.

**2.**  *Treatment of Certain Claims of the PBGC and Pension Plan.*

Nothing in the Chapter 11 Cases, the TCEH Disclosure Statement, the TCEH Plan, the TCEH Confirmation Order, or any other document filed in the Chapter 11 Cases shall be construed to discharge, release, limit, or relieve any individual from any claim by the PBGC or the Pension Plan for breach of any fiduciary duty under ERISA, including prohibited transactions, with respect to the Pension Plan, subject to any and all applicable rights and defenses of such parties, which are expressly preserved.  The PBGC and the Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duty or related liability by any of the provisions of the TCEH Disclosure Statement, TCEH Plan, TCEH Confirmation Order, Bankruptcy Code, or other document filed in the Chapter 11 Cases.  For the avoidance of doubt, the Reorganized TCEH Debtors shall not be released from any liability or obligation under ERISA, the Internal Revenue Code, and any other applicable law relating to or arising from the Pension Plans.

**3.**  *Taxable Separation Tax Receivable Agreement.*

If the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, at the election of the TCEH Plan Proponents, on the Effective Date, Reorganized TCEH (or one or more of its subsidiaries) shall enter into

the Taxable Separation Tax Receivable Agreement, under which Reorganized TCEH (or one or more of its subsidiaries) shall agree to make payments in respect of Reorganized TCEH's (or its subsidiaries') specified tax items to or for the benefit of the TCEH First Lien Creditors (or their assigns).  In addition, and notwithstanding the foregoing, Reorganized TCEH (or one or more of its subsidiaries) may enter into one or more tax receivable agreements or other similar arrangements after the Effective Date.

      **4.**      ***Spin-Off Tax Receivable Agreement.***

      If the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, at the election of the TCEH Plan Proponents, on the Effective Date and before the Distribution, Reorganized TCEH (or one or more of its subsidiaries) shall enter into the Spin-Off Tax Receivable Agreement, under which Reorganized TCEH (or one or more of its subsidiaries) shall agree to make payments in respect of Reorganized TCEH's (or its subsidiaries') specified tax items to or for the benefit of the TCEH First Lien Creditors (or their assigns).  In addition, and notwithstanding the foregoing, Reorganized TCEH (or one or more of its subsidiaries) may enter into one or more tax receivable agreements or other similar arrangements after the Effective Date.

      **5.**      ***Treatment of Executory Contracts and Unexpired Leases.***

      (a)      **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

      On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases of the TCEH Debtors, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, will be deemed to be Assumed Executory Contracts or Unexpired Leases, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that: (1) previously were assumed or rejected by the TCEH Debtors; (2) are identified on the Rejected Executory Contract and Unexpired Lease List; (3) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.  Entry of the TCEH Confirmation Order by the Bankruptcy Court shall constitute approval of such assignments and/or assumptions and the rejection of the Executory Contracts or Unexpired Leases listed on the Rejected Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to Article V of the TCEH Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized TCEH Debtors in accordance with its terms, except as such terms are modified by the TCEH Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Notwithstanding anything to the contrary in the TCEH Plan, the TCEH Plan Supplement, the Executive Severance Policy, or any Employment Agreement, the occurrence of the Effective Date shall be deemed to constitute a "change in control" under the Executive Severance Policy and each Employment Agreement.  In the event the EFH Debtors seek to assume and assign the Employment Agreements to Reorganized TCEH, on the Effective Date, Reorganized TCEH shall execute a written agreement (in a form reasonably acceptable to the TCEH Plan Proponents) with each employee who is party to such an assumed Employment Agreement acknowledging that the transactions consummated upon the occurrence of the Effective Date shall constitute a "change in control" under such employee's Employment Agreement.  The TCEH Plan Proponents reserve the right to alter, amend, modify, or supplement the schedules of Executory Contracts and Unexpired Leases at any time through and including 45 days after the Effective Date.

      **6.**      ***Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

      Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the TCEH Plan or the TCEH Confirmation Order, if any, must be Filed within 30 days after the later of:  (1) the date of entry of an order of the Bankruptcy Court (including the TCEH Confirmation Order) approving such rejection; and (2) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the TCEH Debtors or the Reorganized TCEH Debtors, the Estates, or their property without the need for any objection by the Reorganized TCEH Debtors or further notice to, or action, order, or approval of the**

**Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the TCEH Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable TCEH Debtor and shall be treated in accordance with the TCEH Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the TCEH Plan.

      (a)      **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized TCEH Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.  At least 14 days before the Confirmation Hearing, the TCEH Plan Proponents will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the TCEH Plan Proponents and the TCEH Debtors at least seven (7) days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  **Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

      (b)      **Preexisting Obligations to the TCEH Debtors under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease pursuant to the TCEH Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

      (c)      **Indemnification Obligations.**

Notwithstanding anything in the TCEH Plan to the contrary, each Indemnification Obligation shall be assumed by the applicable TCEH Debtor, effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code or otherwise.  Each Indemnification Obligation shall remain in full force and effect, shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

Notwithstanding the foregoing, nothing shall impair the ability of Reorganized TCEH Debtors to modify indemnification obligations (whether in the bylaws, certificates, or incorporate or formation, limited liability company agreements, other organizational or formational documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date.

      (d)      **Insurance Policies.**

Each of the TCEH Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts under the TCEH Plan.  Unless otherwise provided in the TCEH Plan,

on the Effective Date, the TCEH Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

(e)    **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the TCEH Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the TCEH Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the TCEH Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

(f)    **Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List or the Assumed Executory Contract and Unexpired Lease List, nor anything contained in the TCEH Plan, shall constitute an admission by the TCEH Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the TCEH Plan Proponents shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

(g)    **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur with respect to a TCEH Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases, with respect to such TCEH Debtor, pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

(h)    **Contracts and Leases Entered Into After the Petition Date.**

Contracts and leases entered into after the Petition Date by any TCEH Debtor will be performed by the applicable TCEH Debtor or the applicable Reorganized TCEH Debtor liable thereunder in the ordinary course of their business.  Subject to Article V.A of the TCEH Plan, any such contracts and leases that have not been rejected as of the date of the Confirmation Date shall survive and remain unaffected by entry of the TCEH Confirmation Order.

**7.    *Special Provision Governing Unimpaired Claims.***

Except as otherwise provided in the TCEH Plan, nothing under the TCEH Plan shall affect the TCEH Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**8.    *Controversy Concerning Impairment.***

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**9.    *Elimination of Vacant Classes.***

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the TCEH Disclosure Statement Order shall be considered vacant, deemed eliminated from the TCEH Plan for

purposes of voting to accept or reject the TCEH Plan, and disregarded for purposes of determining whether the TCEH Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**A.    Subordinated Claims and Interests.**

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the TCEH Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the TCEH Plan Proponents reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto. Notwithstanding the foregoing, this TCEH Plan gives effect to the TCEH First Lien Intercreditor Agreement and no additional changes to the allowance, classification, treatment, or distributions shall be made as a result of the TCEH First Lien Intercreditor Agreement except for any such changes provided for or otherwise consistent with the TCEH First Lien Creditor Plan Distribution Allocation Order as contemplated by Article III.C.3 of the Plan.

**1.    *Directors and Officers of the Reorganized TCEH Debtors.***

As of the Effective Date, the term of the current members of the board of directors of the applicable TCEH Debtors shall expire, and the initial boards of directors, including the New Board, and the officers of each of the Reorganized TCEH Debtors shall be appointed in accordance with the respective New Organizational Documents. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the TCEH Debtors will disclose in the TCEH Plan Supplement the identity and affiliations of any person proposed to serve on the initial board of directors or be an officer of each of the Reorganized TCEH Debtors.  To the extent any such director or officer of the Reorganized TCEH Debtors is an "insider" under the Bankruptcy Code, the TCEH Debtors also will disclose the nature of any compensation to be paid to such director or officer.  Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents, the New Employee Agreements/Arrangements, the Employment Agreements, and other constituent documents of the Reorganized TCEH Debtors.

**2.    *Intercompany Account Settlement.***

The TCEH Debtors and the Reorganized TCEH Debtors, as applicable, subject to the consent of the TCEH Plan Proponents, as applicable (such consent not to be unreasonably withheld), shall be entitled to transfer funds between and among themselves as they determine to be necessary or advisable to enable the Reorganized TCEH Debtors to satisfy their obligations under the TCEH Plan.  Except as set forth herein, any changes in intercompany account balances resulting from such transfers will be accounted for and settled in accordance with the Reorganized TCEH Debtors' historical intercompany account settlement practices and shall not violate the terms of the TCEH Plan.

**3.    *Cancelation of Existing Securities and Agreements.***

Except as otherwise provided in the TCEH Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, TCEH First Lien Claims, EFCH 2037 Note Claims, TCEH Second Lien Note Claims, TCEH Unsecured Note Claims, PCRB Claims, and DIP Claims, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or a Holder to take further action with respect to any note(s) or security and the obligations of the TCEH Debtors or Reorganized TCEH Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the Indenture Trustees, the TCEH First Lien Agent, and the DIP Agent shall be released from all duties thereunder; *provided, however,* that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of:  (1) allowing Holders to receive distributions under the TCEH Plan; (2) allowing the Indenture Trustees, the TCEH First Lien Agent, and the DIP Agent to make the distributions in accordance with the TCEH Plan (if any), as applicable; (3) preserving any rights of the DIP Agent, the TCEH First Lien Agent, or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the relevant indenture, the TCEH Credit Agreement, the TCEH First Lien Intercreditor Agreement, or the DIP Credit Agreement, including any rights to priority of payment and/or to exercise charging liens; (4) allowing the Indenture Trustees and DIP Agent to enforce any

29

obligations owed to each of them under the TCEH Plan; and (5) allowing the Indenture Trustees, TCEH First Lien Agent, and DIP Agent to appear in the Chapter 11 Cases or any proceeding in which they are or may become a party; *provided*, *further*, *however*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the TCEH Confirmation Order, or the TCEH Plan, or result in any expense or liability to the TCEH Debtors or Reorganized TCEH Debtors, as applicable.  For the avoidance of doubt, the TCEH First Lien Intercreditor Agreement, the TCEH Credit Agreement, and the TCEH First Lien Note Indenture remain in effect solely to the extent necessary to preserve the TCEH First Lien Creditor Allocation Disputes and any claims or Causes of Action by the TCEH First Lien Notes Trustee, TCEH First Lien Agent, or Holders of TCEH First Lien Claims against other Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising in connection with the TCEH First Lien Creditor Allocation Disputes; *provided*, *however*, that except as expressly set forth in the TCEH Plan, after the Effective Date, the TCEH Debtors and the Reorganized TCEH Debtors shall not be obligated to pay any fees or expenses under either the TCEH First Lien Intercreditor Agreement, the TCEH First Lien Note Indenture, or the TCEH Credit Agreement arising in connection with the TCEH First Lien Creditor Allocation Disputes, and all related Claims shall be released and discharged consistent with Article VIII.A of the TCEH Plan.

4.      *Reorganized TCEH Debtor Management Incentive Plan.*

The Reorganized TCEH Debtor Management Incentive Plan will be approved pursuant to the TCEH Confirmation Order and implemented on the Effective Date by the applicable Reorganized TCEH Debtors.  As described in section 10(o) of the Plan Support Agreement, the Reorganized TCEH Debtor Management Incentive Plan(s) shall include an $11 million cash pool to be paid after the Effective Date by Reorganized TCEH, to be allocated in the manner set forth in such section 10(o) (the "Additional Payment Pool").  The Reorganized TCEH Debtor Management Incentive Plan(s) will also include an equity-based distribution.  The Additional Payment Pool will be funded by Reorganized TCEH, and to the extent the Reorganized TCEH Debtor Management Incentive Plan(s) consist of an equity-based incentive plan using Reorganized TCEH Common Stock, such equity will be distributed solely by Reorganized TCEH after the Effective Date.  Therefore, the assets of the TCEH Debtors' estates will not be used in connection with the Reorganized TCEH Debtor Management Incentive Plan(s), and, consequently, any such distributions made in connection with the Reorganized TCEH Debtor Management Incentive Plan(s) will not give rise to a potential Administrative Claim under section 503 of the Bankruptcy Code.

5.      *Employee Obligations.*

Except as otherwise provided in the TCEH Plan or the TCEH Plan Supplement, the Reorganized TCEH Debtors shall honor the TCEH Debtors' written contracts, agreements, policies, programs and plans for, among other things, compensation, reimbursement, indemnity, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the directors, officers and employees of any of the TCEH Debtors who served in such capacity at any time (including the compensation programs approved by the Bankruptcy Court pursuant to the 2015 Compensation Order and the 2016 Compensation Order).  To the extent that the above-listed contracts, agreements, policies, programs and plans are executory contracts, pursuant to sections 365 and 1123 of the Bankruptcy Code, each of them will be deemed assumed as of the Effective Date and, to the extent the any of the EFH Debtors or EFIH Debtors are the counterparty to such executory contracts and seek to assume and assign such contracts to Reorganized TCEH on the Effective Date, such executory contracts will be assumed by Reorganized TCEH on the Effective Date.

6.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized TCEH Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized TCEH Debtors, or another Entity with whom the Reorganized TCEH Debtors have been associated, solely because each TCEH Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the TCEH Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### 7.    *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless before the Confirmation Date:  (a) such Claim has been adjudicated as non-contingent; or (b) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## B.    **Effect of Confirmation.**

### 1.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the TCEH Plan, the Reorganized TCEH Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action belonging to their Estates, whether arising before or after the Petition Date, including any actions specifically enumerated in the TCEH Plan Supplement, and the Reorganized TCEH Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than:  (i) the Causes of Action released by the TCEH Debtors pursuant to the releases and exculpations contained in the TCEH Plan, including in Article VIII, which shall be deemed released and waived by the TCEH Debtors and Reorganized TCEH Debtors as of the Effective Date; (ii) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law; and (iii) the Causes of Action released by the TCEH Debtors pursuant to the Settlement Agreement.

The Reorganized TCEH Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized TCEH Debtors.  **No Entity may rely on the absence of a specific reference in the TCEH Plan, the TCEH Plan Supplement or the TCEH Disclosure Statement to any Cause of Action against it as any indication that the TCEH Debtors or the Reorganized TCEH Debtors, as applicable, will not pursue any and all available Causes of Action against it.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled herein or in a Bankruptcy Court order, the Reorganized TCEH Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation.

The Reorganized TCEH Debtors reserve and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the TCEH Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a TCEH Debtor may hold against any Entity shall vest in the Reorganized TCEH Debtors.  The Reorganized TCEH Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

### 2.    *Retention of Jurisdiction by the Bankruptcy Court.*

Notwithstanding the entry of the TCEH Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the TCEH Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

- allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

- hear and determine matters related to the DIP Facility and the DIP Order;

- decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the TCEH Plan;

- resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a TCEH Debtor is party or with respect to which a TCEH Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized TCEH Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the TCEH Plan, any Executory Contracts or Unexpired Leases to the Assumed Executory Contracts and Unexpired Lease List, Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

- adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a TCEH Debtor that may be pending on the Effective Date;

- adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a TCEH Debtor that may be pending on the Effective Date;

- adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

- enter and implement such orders as may be necessary to execute, implement, or consummate the TCEH Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the TCEH Plan or the TCEH Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the TCEH Plan;

- enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

- adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions, including the Tax Matters Agreement;

- grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

- resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the TCEH Plan, the TCEH Disclosure Statement, the TCEH Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the TCEH Plan, the TCEH Disclosure Statement, the TCEH Confirmation Order, or the Restructuring Transactions;

- resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the TCEH Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

- resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.K.1. of the TCEH Plan;

- enter and implement such orders as are necessary if the TCEH Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

- enter an order or decree concluding or closing the Chapter 11 Cases;

- adjudicate any and all disputes arising from or relating to distributions under the TCEH Plan including the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute and the TCEH L/C Holder Lawsuit;

- consider any modifications of the TCEH Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the TCEH Confirmation Order;

- hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a TCEH Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

- except as otherwise limited herein, recover all assets of the TCEH Debtors and property of the Estates, wherever located;

- enforce all orders previously entered by the Bankruptcy Court; and

- hear any other matter not inconsistent with the Bankruptcy Code.

This list of matters over which the Bankruptcy Court will retain exclusive jurisdiction following the Confirmation and Consummation of the TCEH Plan is not exhaustive. For a full list of the matters over which the Bankruptcy Court retains jurisdiction through and after the Effective Date, see Article XI of the TCEH Plan.

**C.    Settlement, Release, Injunction, and Related Provisions.**

     **1.    *Discharge of Claims and Termination of Interests.***

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the TCEH Plan or in any contract, instrument, or other agreement or document created pursuant to the TCEH Plan, the distributions, rights, and treatment that are provided in the TCEH Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized TCEH Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the TCEH Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the TCEH Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the TCEH Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the TCEH Plan.  Any default or "event of default" by the TCEH Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The TCEH Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

2. ***Release of Liens.***

Except as otherwise specifically provided in the TCEH Plan or in any contract, instrument, release, or other agreement or document created pursuant to the TCEH Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the TCEH Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the TCEH Debtors elect to Reinstate in accordance with Article III.C.1 of the TCEH Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized TCEH Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the TCEH Debtors.

3. ***Releases by the TCEH Debtors.***

In addition to any release provided in the Settlement Order, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the TCEH Debtors, the Reorganized TCEH Debtors, and their Estates from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the TCEH Debtors, that the TCEH Debtors, the Reorganized TCEH Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the TCEH Debtors (including the management, ownership or operation thereof), the TCEH Debtors' in-or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the EFIH First Lien Settlement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the TCEH Plan or the reliance by any Released Party on the TCEH Plan or the TCEH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the Terminated Restructuring Support Agreement, the TCEH Disclosure Statement, the TCEH Plan, the Transaction Agreements, the DIP Facility, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the TCEH Plan, including the issuance or distribution of Securities pursuant to the TCEH Plan, or the distribution of property under the TCEH Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the TCEH Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the TCEH Plan Supplement) executed to implement the TCEH Plan or (ii) the TCEH Settlement Claim.

4. ***Releases by Holders of Claims and Interests.***

As of the Effective Date, each Releasing Party is deemed to have released and discharged each TCEH Debtor, Reorganized TCEH Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action identified, claimed, or released in the Standing Motions, the Litigation Letters, or the Disinterested Directors Settlement, as well as all other Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the TCEH Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the TCEH Debtors (including the management, ownership or operation thereof), the TCEH Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends paid), transactions pursuant and/or related to the

Master Separation Agreement dated December 12, 2001, the TCEH Credit Agreement, the TCEH First Lien Notes, the Cash Collateral Order (and any payments or transfers in connection therewith), the TCEH First Lien Intercreditor Agreement, the Liability Management Program, the Tax Sharing Agreements, the 2007 Acquisition, the Management Agreement, the 2009 amendment to the TCEH Credit Agreement, the 2011 Amend and Extend Transactions, the 2005 Oncor Transfer, the 2013 Revolver Extension, the Luminant Makewhole Settlement, the Tax and Interest Makewhole Agreements, the TCEH Intercompany Notes, the Shared Services, any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or Filing of the Terminated Restructuring Support Agreement, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the EFIH First Lien Settlement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the TCEH Plan or the reliance by any Released Party on the TCEH Plan or the TCEH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Terminated Restructuring Support Agreement, the TCEH Disclosure Statement, the TCEH Plan, the Transaction Agreements, the DIP Facility, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the TCEH Plan, including the issuance or distribution of Securities pursuant to the TCEH Plan, or the distribution of property under the TCEH Plan, the Transaction Agreements, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, (ii) any post-Effective Date obligations of any party or Entity under the TCEH Plan, (iii) any Restructuring Transaction, (iv) any document, instrument, or agreement (including those set forth in the TCEH Plan Supplement) executed to implement the TCEH Plan, (v) claims or Causes of Action asserted by any Holder of Allowed Class 3 Claims against one or more Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or (vi) the TCEH Settlement Claim.

5.    *Exculpation.*

Except as otherwise specifically provided in the TCEH Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the Terminated Restructuring Support Agreement and related prepetition transactions, the TCEH Disclosure Statement, the TCEH Plan, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the TCEH Plan or the reliance by any Exculpated Party on the TCEH Plan or the TCEH Confirmation Order in lieu of such legal opinion) created or entered into in connection with the TCEH Disclosure Statement, the TCEH Plan, the Plan Support Agreement, the EFH/EFIH Committee Settlement, the Transaction Agreements, or the DIP Facility, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the TCEH Plan, including the issuance of Securities pursuant to the TCEH Plan, or the distribution of property under the TCEH Plan, the Transaction Agreements, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the TCEH Plan.  The Exculpated Parties have, and upon completion of the TCEH Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the TCEH Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the TCEH Plan or such distributions made pursuant to the TCEH Plan.  For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any (i) claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH

First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (ii) claims or Causes of Action asserted by any Holder of Allowed Class 3 Claims against one or more Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

6.      *Injunction.*

In addition to any injunction provided in the Settlement Order, except as otherwise expressly provided in the TCEH Plan or for obligations issued or required to be paid pursuant to the TCEH Plan or the TCEH Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to **Error! Reference source not found.** or Article VIII.D of the TCEH Plan, shall be discharged pursuant to **Error! Reference source not found.** of the TCEH Plan, or are subject to exculpation pursuant to **Error! Reference source not found.** of the TCEH Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the TCEH Debtors, the Reorganized TCEH Debtors, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the TCEH Plan.  For the avoidance of doubt, notwithstanding anything to the contrary in the foregoing, the injunction set forth above does not enjoin (a) the TCEH First Lien Creditor Allocation Disputes, or any claims or Causes of Action by the Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee against one or more Holders of TCEH First Lien Claims, the TCEH First Lien Agent, or the TCEH First Lien Notes Trustee arising from or in connection with the TCEH First Lien Creditor Allocation Disputes, or (b) the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute, or claims or Causes of Action asserted in the Marathon Delaware Action (in accordance with and as that term is defined in the *Stipulation and Consent Order Regarding Limited Objection of Marathon Asset Management, LP to Confirmation of Debtors' Fifth Amended Plan of Reorganization,* dated November 10, 2015 [Docket No. 6932]) by any Holder of Allowed Class 3 Claims against one or more Holders of Allowed Class 3 Claims (other than the TCEH First Lien Agent, except in the TCEH First Lien Agent's capacity as a nominal defendant to declaratory judgment claims in respect of which no monetary recovery is sought) solely with respect to the TCEH First Lien Creditor Deposit L/C Collateral Allocation Dispute.

7.      **Liabilities to, and Rights of, Governmental Units.**

Nothing in the TCEH Plan or the TCEH Confirmation Order shall release, discharge, or preclude the enforcement of:  (i) any liability to a Governmental Unit that is not a Claim; (ii) any Claim of a Governmental Unit arising on or after the Effective Date; other than taxes determined under the prompt determination procedure in Section 505 of the Bankruptcy Code, to the extent applicable; (iii) any liability to a Governmental Unit on the part of any Entity other than the TCEH Debtors or Reorganized TCEH Debtors; or (iv) any valid right of setoff or recoupment by any Governmental Unit.

8.      **Environmental Law Matters.**

Nothing in the TCEH Plan or the TCEH Confirmation Order shall release, discharge, or preclude the enforcement of, (or preclude, release, defeat, or limit the defense under non-bankruptcy law of) :  (i) any liability under Environmental Law to a Governmental Unit that is not a Claim; (ii) any Claim under Environmental Law of a Governmental Unit arising on or after the Effective Date; (iii) any liability under Environmental Law to a Governmental Unit on the part of any Entity to the extent of such Entity's liability under non-bankruptcy law on account of its status as owner or operator of such property after the Effective Date; (iv) any liability to a Governmental

Unit on the part of any Entity other than the TCEH Debtors or Reorganized TCEH Debtors; or (v) any valid right of setoff or recoupment by any Governmental Unit.  All parties' rights and defenses under Environmental Law with respect to (i) through (v) above are fully preserved.  For the avoidance of doubt, the United States is not a Releasing Party under the TCEH Plan.

Nothing in the TCEH Plan or the TCEH Confirmation Order shall enjoin or otherwise bar any Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding paragraph.  Nothing in the TCEH Plan or the TCEH Confirmation Order authorizes:  (i) the transfer or assignment of any governmental license, permit, registration, authorization, or approval, or (ii) the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under Environmental Law.  The Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by the TCEH Confirmation Order or the TCEH Plan, or the Bankruptcy Code.

For the avoidance of doubt, all Claims under Environmental Law arising before the Effective Date, including penalty claims for days of violation prior to the Effective Date, shall be subject to Article VIII of the TCEH Plan and treated in accordance with the TCEH Plan in all respects and the Bankruptcy Court shall retain jurisdiction as provided in Article XI of the TCEH Plan in relation to the allowance or disallowance of any Claim under Environmental Law arising before the Effective Date.

Without limiting the Bankruptcy Court's jurisdiction as set forth above, nothing in the TCEH Plan or the TCEH Confirmation Order shall divest or limit the jurisdiction of other tribunals over the Environmental Action, and upon the Effective Date of the TCEH Plan, the Environmental Action shall survive the Chapter 11 Cases and may be adjudicated in the court or tribunal in which such Environmental Action is currently pending; *provided*, *further*, *however*, any judgment for a Claim in the Environmental Action arising before the Effective Date shall be treated in accordance with the TCEH Plan in all respects; *provided*, *further*, *however*, that nothing in the TCEH Plan shall preclude, release, defeat, or limit any grounds for asserting or opposing an alleged defense or affirmative defense under non-bankruptcy law in the Environmental Action based on any change in ownership, and all such grounds for asserting or opposing such defenses and affirmative defenses under non-bankruptcy law are expressly preserved.  With respect to the Environmental Action, this Article VIII.H does not alter any rights or defenses under non-bankruptcy law arising as a result of any changes of ownership provided in the TCEH Plan or the TCEH Confirmation Order.  The Governmental Units reserve all rights as to whether there are any such rights or defenses.

## VI.    Confirmation of the TCEH Plan

### A.    The Confirmation Hearing.

The Bankruptcy Court has scheduled the Confirmation Hearing for [          ], 2016 at [__:__] (prevailing Eastern time).  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice.

Objections to Confirmation of the TCEH Plan must be filed and served on the TCEH Plan Proponents and certain other parties by no later than [          ], 2016 at [ : ] (prevailing Eastern Time) in accordance with the notice of the Confirmation Hearing that accompanies this TCEH Disclosure Statement and the TCEH Disclosure Statement Order attached hereto as **Exhibit H** and incorporated herein by reference.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the TCEH Plan should be confirmed in light of both the affirmative requirements of the Bankruptcy Code and any objections, if any, that are timely filed.

Objections to confirmation of the TCEH Plan are governed by Bankruptcy Rule 9014.

### B.    Requirements for Confirmation.

#### 1.    *Requirements of Section 1129(a) of the Bankruptcy Code.*

Among the requirements for Confirmation are the following:  (a) the TCEH Plan is accepted by all impaired Classes of Claims and Interests or, if the TCEH Plan is rejected by an impaired Class, that it "does not discriminate unfairly" and is "fair and equitable" as to such Class; (b) the TCEH Plan is feasible; and (c) the TCEH Plan is in the "best interests" of Holders of Claims and Holders of Interests that are Impaired under its provisions.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the TCEH Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The TCEH Plan Proponents believe that the TCEH Plan satisfies or will satisfy all of the necessary requirements of chapter 11 of the Bankruptcy Code.  Specifically, in addition to other applicable requirements, the TCEH Plan Proponents believe that the TCEH Plan satisfies or will satisfy the applicable Confirmation requirements of section 1129 of the Bankruptcy Code set forth below:

- The TCEH Plan complies with the applicable provisions of the Bankruptcy Code.

- The TCEH Plan Proponents have complied with the applicable provisions of the Bankruptcy Code.

- The TCEH Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or promised under the TCEH Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the TCEH Plan and incident to the Chapter 11 Cases, will be disclosed to the Bankruptcy Court, and any such payment:  (a) made before Confirmation will be reasonable or (b) will be subject to the approval of the Bankruptcy Court as reasonable, if it is to be fixed after Confirmation.

- Either each Holder of an Impaired Claim or Interest will accept the TCEH Plan, or each non-accepting Holder will receive or retain under the TCEH Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that the Holder would receive or retain if the TCEH Debtors were liquidated on that date under chapter 7 of the Bankruptcy Code.

- Except to the extent that the Holder of a particular Claim agrees to a different treatment of its Claim, the TCEH Plan provides that Administrative Claims and Other Priority Claims will be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable.

- At least one Class of Impaired Claims will have accepted the TCEH Plan, determined without including any acceptance of the TCEH Plan by any insider holding a Claim in that Class.

- Confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the TCEH Debtors or any successors thereto under the TCEH Plan.

- All fees of the type described in 28 U.S.C. § 1930, including the fees of the U.S. Trustee, will be paid as of the Effective Date.

Section 1126(c) of the Bankruptcy Code provides that a class of claims has accepted a plan of reorganization if such plan has been accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class.  Section 1126(d) of the Bankruptcy Code provides that a class of interests has accepted a plan of reorganization if such plan has been accepted by holders of such interests that hold at least two-thirds in amount of the allowed interests of such class.

The TCEH Plan Proponents believe that the TCEH Plan will be able to satisfy each of the 1129(a) confirmation requirements and that the TCEH Plan Proponents have complied or will comply with all of the provisions of the Bankruptcy Code, and that the TCEH Plan is being proposed and submitted to the Bankruptcy Court in good faith.

**2.      *Best Interests of Creditors/Liquidation Analysis.***

Pursuant to section 1129(a)(7) of the Bankruptcy Code, often called the "best interests test," holders of allowed claims must either (a) accept the plan of reorganization, or (b) receive or retain under the plan property of a value, as of the plan's assumed effective date, that is not less than the value such non-accepting holders would receive or retain if the debtors were to be liquidated under chapter 7 of the Bankruptcy Code on such date.

If no plan is confirmed, the Chapter 11 Cases may be converted to a case under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected to liquidate the TCEH Debtors' assets for distribution in accordance with the priorities established by chapter 7.  A discussion of the effects that a chapter 7 liquidation would have on the recoveries of holders of Claims and Interests is set forth in the Liquidation Analysis in Article VI.B.2 of the New Joint Plan Disclosure Statement; such discussions to the extent they address the TCEH Debtors are incorporated by reference as if set forth herein.  The TCEH Plan Proponents believe that liquidation under chapter 7 would result in reduced distributions being made to creditors than those provided in the TCEH Plan because (a) the TCEH Debtors' assets would have to be sold or otherwise disposed of in a forced sale situation over a short period of time, (b) additional administrative expenses would be involved in the appointment of a trustee, and (c) additional expenses and claims, some of which would be entitled to priority, would be generated during the liquidation and from the rejection of leases and other executory contracts in connection with a cessation of the TCEH Debtors' operations.

**THE TCEH PLAN PROPONENTS MAKE NO REPRESENTATION OR WARRANTY CONCERNING THE TCEH DEBTORS' LIQUIDATION ANALYSIS OR THE ACCURACY OF THE INFORMATION THEREIN.**

**3.      *Feasibility/Financial Projections.***

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, or any successor to the debtor (unless such liquidation or reorganization is proposed in the plan of reorganization).  Attached as Exhibit E to the New Joint Plan Disclosure Statement were the unaudited pro forma financial statements with regard to Reorganized TCEH for the time period from 2015 to 2020 (the "Reorganized TCEH Financial Projections").  Given the significant similarities between the New Joint Plan and the TCEH Plan in respect of the treatment of TCEH Creditors and the related feasibility issues, the TCEH Plan Proponents submit that the Reorganized TCEH Financial Projections are equally applicable to the TCEH Plan and demonstrate the TCEH Plan's satisfaction of the feasibility requirements of section 1129(a)(11) of the Bankruptcy Code.

4.      *Acceptance by Impaired Classes.*

The Bankruptcy Code requires that, except as described in the following section, each impaired class of claims or interests must accept a plan in order for it to be confirmed. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to the class is not required. A class is "impaired" unless the plan: (a) leaves unaltered the legal, equitable, and contractual rights to which the claim or the interest entitles the holder of the claim or interest; or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of non-insider allowed claims in that class, counting only those claims that actually voted to accept or to reject the plan. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. For a class of impaired interests to accept a plan, section 1126(d) of the Bankruptcy Code requires acceptance by interest holders that hold at least two-thirds in amount of the allowed interests of such class, counting only those interests that actually voted to accept or reject the plan. Thus, a class of interests will have voted to accept the plan only if two-thirds in amount actually voting cast their ballots in favor of acceptance.

5.      *Confirmation Without Acceptance by All Impaired Classes.*

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted the plan, *provided* that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as "cramdown," so long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(a)      **No Unfair Discrimination.**

This test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a proposed plan. The test does not require that the treatment be the same or equivalent, but that the treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. Under certain circumstances, a proposed plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

(b)      **Fair and Equitable Test.**

This test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.

If any Impaired Class of Claims or Interests rejects the TCEH Plan, the TCEH Plan Proponents reserve the right to seek Confirmation of the TCEH Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. Specifically, to the extent that any Impaired Class rejects the TCEH Plan or is deemed to have rejected the TCEH Plan, the TCEH Plan Proponents will request Confirmation of the TCEH Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. The TCEH Plan Proponents reserve the right to alter, amend, modify, revoke, or withdraw the TCEH Plan before Confirmation, including amending or modifying the TCEH Plan to satisfy the requirements of section 1129(b) of the Bankruptcy Code.

The TCEH Plan Proponents submit that if the TCEH Plan Proponents need to "cramdown" the TCEH Plan pursuant to section 1129(b) of the Bankruptcy Code, the TCEH Plan is structured such that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the TCEH Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. The TCEH Plan Proponents believe that the TCEH Plan and the treatment of all Classes of Claims and Interests under the TCEH Plan satisfy the foregoing requirements for cramdown.

Section 1129(b) of the Bankruptcy Code does not apply to Classes 1 and 2 because those Classes are conclusively presumed to accept the TCEH Plan.

With respect to Classes that are entitled to vote and vote to reject the TCEH Plan, the fair and equitable test sets different standards depending upon the type of Claims or Interests in such class:

### (i)    Secured Claims.

The condition that a plan be "fair and equitable" to a non-accepting class of secured claims includes the requirements that:  (A) the holders of such secured claims retain the liens securing such claims to the extent of the allowed amount of the claims, whether the property subject to the liens is retained by the debtor or transferred to another entity under the TCEH Plan; and (B) each holder of a secured claim in the class receives deferred cash payments totaling at least the allowed amount of such claim with a value, as of the Effective Date, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

### (ii)    Unsecured Claims.

The condition that a plan be "fair and equitable" to a non-accepting class of unsecured claims includes the requirement that either:  (A) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the Effective Date, equal to the allowed amount of such claim; or (B) the holder of any claim or any interest that is junior to the claims of such class will not receive or retain any property under the plan on account of such junior claim or junior interest, subject to certain exceptions.

### (iii)    Interests.

The condition that a plan be "fair and equitable" to a non-accepting class of interests, includes the requirements that either:  (A) the plan provides that each holder of an interest in that class receives or retains under the plan on account of that interest property of a value, as of the Effective Date, equal to the greatest of:  (1) the allowed amount of any fixed liquidation preference to which such holder is entitled, (2) any fixed redemption price to which such holder is entitled, or (3) the value of such interest; or (B) if the class does not receive the amount as required under (A) hereof, no class of interests junior to the non-accepting class may receive a distribution under the plan.

**C.    Conditions Precedent to Confirmation of the TCEH Plan.**

It shall be a condition to Confirmation that the following shall have been satisfied or waived pursuant to the provisions of Article IX.C of the TCEH Plan:

1.    the Bankruptcy Court shall have entered the TCEH Disclosure Statement Order and the TCEH Confirmation Order in a manner consistent in all material respects with the TCEH Plan, in form and substance reasonably satisfactory to the TCEH Plan Proponents; and

2.    the TCEH Confirmation Order shall, among other things:

(a)    authorize the TCEH Debtors and the Reorganized TCEH Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the TCEH Plan;

(b)    decree that the provisions of the TCEH Confirmation Order and the TCEH Plan are nonseverable and mutually dependent;

(c)    if the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, authorize the TCEH Debtors, the Reorganized TCEH Debtors and the other entities formed pursuant to this TCEH Plan, as applicable/necessary, to:  (i) implement the Restructuring Transactions; (ii) issue and distribute the New Reorganized TCEH Debt and the Reorganized TCEH Common Stock, each pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or

other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the TCEH Plan, including Cash, the New Reorganized TCEH Debt and the Reorganized TCEH Common Stock and (iv) enter into any agreements, transactions, and sales of property as set forth in the TCEH Plan Supplement;

(d)     if the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan, authorize the TCEH Debtors, the Reorganized TCEH Debtors and the other entities formed pursuant to this TCEH Plan, as applicable/necessary, to:    (i) implement the Restructuring Transactions; (ii) issue and distribute the New Reorganized TCEH Debt, the Reorganized TCEH Common Stock, the common stock of the Preferred Stock Entity and the Reorganized TCEH Sub Preferred Stock, each pursuant to the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code or other exemption from such registration or pursuant to one or more registration statements; (iii) make all distributions and issuances as required under the TCEH Plan, including Cash, the New Reorganized TCEH Debt, the Reorganized TCEH Common Stock, the common stock of the Preferred Stock Entity and the Reorganized TCEH Sub Preferred Stock; and (iv) enter into any agreements, transactions, and sales of property as set forth in the TCEH Plan Supplement; and

(e)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the TCEH Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the TCEH Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax, and upon entry of the TCEH Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

## D.     Conditions Precedent to the Effective Date.

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.C of the TCEH Plan:

1.   the TCEH Confirmation Order shall have been duly entered in form and substance acceptable to the TCEH Plan Proponents;

2.     the Settlement Order shall remain in full force and effect;

3.     the final version of the TCEH Plan, the TCEH Plan Supplement, and all of the schedules, documents, and exhibits contained therein (including the New Employee Agreements/Arrangements and the Employment Agreements) shall have been Filed in a manner consistent in all material respects with the TCEH Plan, the Transaction Agreements (as applicable to the TCEH Debtors), the Plan Support Agreement, and the Settlement Order, and shall be in form and substance acceptable to the TCEH Plan Proponents;

4.     all Allowed Professional Fee Claims with respect to the TCEH Debtors approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the TCEH Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;

5.     the TCEH Debtors and/or the TCEH Plan Proponents, as applicable, shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the TCEH Plan and the transactions contemplated thereby, and the RCT shall have approved the substitute bond with respect to the TCEH Debtors' mining reclamation obligations

6.      all conditions to the completion of the transactions contemplated by the Tax Matters Agreement and the Taxable Separation Tax Receivable Agreement or the Spin-Off Tax Receivable Agreement, as applicable, shall have been satisfied or shall have been waived by the party entitled to waive them, and the transactions contemplated by the Transition Services Agreement, the Tax Matters Agreement, the Separation Agreement, and the Taxable Separation Tax Receivable Agreement or Spin-Off Tax Receivable Agreement, as applicable, and the Spin-Off or Taxable Separation, as applicable, shall be completed substantially simultaneously on the Effective Date;

7.      any waiting period applicable to the Taxable Separation or the Spin-Off, as the case may be, under the HSR Act or similar law or statute shall have been terminated or shall have expired;

8.      the TCEH Debtors shall have (or will, concurrently with the occurrence of the Effective Date have) implemented the Restructuring Transactions, in form and manner acceptable to the TCEH Plan Proponents, and consistent in all material respects with the TCEH Plan; and

9.      Solely in the event the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2:

(a)      the Debtors shall have obtained the Fundamental Opinions, and such opinions have not been withdrawn, rescinded, or amended;

(b)      the Approval Order shall have been duly entered and shall remain in full force and effect;

(c)      the facts presented and the representations made in the IRS Submissions are true, correct, and complete in all material respects as of the Effective Date;

(d)      except as otherwise provided in the TCEH Plan, the Private Letter Ruling, or the Plan Support Agreement, the EFH Debtors and the EFIH Debtors shall not have taken any action to change the entity classification for U.S. tax purposes of any EFH Debtor, EFIH Debtor or TCEH Debtor entity, by changing their legal form or otherwise, without the consent of the TCEH Plan Proponents; provided, however, that the consent of the TCEH Plan Proponents shall not be required with respect to any such action with respect to any Debtor entity other than TCEH, the EFH Shared Services Debtors (as defined in the REIT Plan), Reorganized TCEH, the Preferred Stock Entity, or any of their respective subsidiaries, if such action does not directly affect the Contribution, the Spin-Off Preferred Stock Sale, the Reorganized TCEH Conversion, or the Distribution and does not prevent or delay EFH Corp. from obtaining the Private Letter Ruling or adversely affect the Spin-Off Intended Tax Treatment;

(e)      (i) no Debtor shall have taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code); and (ii) Texas Holdings shall not have (A) taken any action that results in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code (including by treating the equity interests of EFH Corp. as becoming worthless within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code and thereby resulting in an ownership change of EFH Corp. within the meaning of Section 382(g) of the Internal Revenue Code); (B) knowingly permitted any person (other than Texas Holdings) to own directly, indirectly or constructively (by operation of Section 318 as modified by Section 382(l)(3)(A) of the Internal Revenue Code) 50% or more of the equity interests of EFH Corp. during the three-year period ending on the Effective Date; or (C) changed its taxable year to be other than the calendar year;

(f)      the Private Letter Ruling shall have been obtained no later than July 28, 2016, which shall remain in full force and effect and shall be satisfactory to the TCEH Plan Proponents in their sole discretion; *provided*, *however*, that (x) the failure of the Private Letter Ruling to contain any

of the following rulings shall not be grounds for concluding the Private Letter Ruling is not satisfactory to the TCEH Plan Proponents: (i) the Contribution, the Reorganized TCEH Conversion and the Distribution qualify as a "reorganization" within the meaning of Section 368(a)(1)(G) of the Code; (ii) the Distribution constitutes a transaction qualifying under Sections 355 and 356 of the Code; and (iii) the Contribution, the Reorganized TCEH Conversion and the Distribution are not used principally as a device for the distribution of earnings and profits of the Company or Reorganized TCEH and (y) the failure of the Private Letter Ruling to include any one or more of the Fundamental Rulings will be grounds for concluding the Private Letter Ruling is not satisfactory; *provided*, *further*, *however*, that (A) a particular ruling that, in the reasonable determination of the TCEH Plan Proponents, covers substantially the same subject matter as any one or more of the Fundamental Rulings shall not be grounds for concluding the Private Letter Ruling is not satisfactory to the TCEH Plan Proponents due to its failure to include such particular Fundamental Ruling; (B) in the event a specific Fundamental Ruling is not given because the IRS communicates that there is no substantial issue with respect to the requested ruling, the absence of such ruling shall not be grounds for concluding the Private Letter Ruling is not satisfactory to the TCEH Plan Proponents provided that EFH Corp. obtains an opinion of nationally recognized tax counsel, in form and substance acceptable to the TCEH Plan Proponents in their reasonable discretion, at a "will" level with respect to the issue that was the subject of the Fundamental Ruling; or (C) a pre-filing agreement (including an agreement in accordance with Revenue Procedure 2009-14) or closing agreement with the IRS shall be acceptable in lieu of any such specific Fundamental Ruling, provided that such agreement is both (i) binding on the IRS to the same degree as a private letter ruling or is otherwise acceptable to the TCEH Plan Proponents in their reasonable discretion and (ii) contains, in the reasonable determination of the TCEH Plan Proponents, conclusions that are substantially similar, and have substantially the same practical effect, to those contained in the Fundamental Rulings; *provided further*, *however*, that the failure to obtain a ruling that provides that Reorganized TCEH and the Preferred Stock Entity have never been a member of the EFH Group shall not, standing alone, be grounds for concluding the Private Letter Ruling is not satisfactory; *provided further*, *however*, that with respect to any of the rulings described in clauses (b) (section 368 continuity of interest), (d) (active trade or business), and (f) (section 355 continuity of interest) in the definition of "Fundamental Rulings," if such rulings cannot be obtained because insufficient information is available regarding the reorganization of the EFH Debtors and EFIH, but all other conditions to the Effective Date have been satisfied, then the condition to obtain such rulings shall be deemed to be satisfied by the provision of a representation that EFH Corp. has no plan or intention to enter into any transaction that is inconsistent with the Spin-Off Intended Tax Treatment; and

(g)        the TCEH Plan Proponents shall have been given the right to participate with respect to the process of obtaining the Private Letter Ruling, including by (i) commenting on written submissions, (ii) having participation in in-person conferences, (iii) having participation in scheduled, substantive telephone conferences with the IRS and (iv) being updated promptly regarding any unscheduled communications with the IRS, provided, however, that the TCEH Plan Proponents shall work in good faith with counsel for the Debtors to determine the appropriate level of participation by any other persons in any particular meeting or conference.

**E.        Waiver of Conditions.**

The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the TCEH Plan Proponents; provided that, if the Taxable Separation is effectuated pursuant to Article IV.B.2 of the TCEH Plan, then the conditions set forth in Article IX.A.2(d) and Article IX.B.8 of the TCEH Plan shall be automatically deemed waived.

**F.        Effect of Failure of Conditions.**

If the Effective Date does not occur, then:  (1) the TCEH Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the TCEH Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected under the TCEH Plan, and any document or agreement executed pursuant to the TCEH Plan, shall be

deemed null and void; and (3) nothing contained in the TCEH Plan shall:  (a) constitute a waiver or release of any Claims, Interests, or Causes of Action; (b) prejudice in any manner the rights of such TCEH Debtor or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such TCEH Debtor or any other Entity.  Notwithstanding the foregoing, for the avoidance of doubt, the Settlement embodied in the Settlement Agreement shall remain in full force and effect and the failure of Confirmation or Consummation to occur with respect to any or all TCEH Debtors shall not affect the Settlement or any provisions of the Settlement Agreement.

## VII.    Voting Instructions

**A.    Overview.**

The Solicitation Procedures, which are incorporated into this TCEH Disclosure Statement by reference and summarized below, will be used to collect and tabulate votes on the TCEH Plan. Readers should carefully read the information in the TCEH Disclosure Statement Order (attached hereto as **Exhibit H**), particularly with respect to certain voting procedures applicable to Beneficial Holders and their Nominees.

---

**THIS DISCUSSION OF THE SOLICITATION AND VOTING PROCESS AND THE SOLICITATION PROCEDURES IS ONLY A SUMMARY.**

PLEASE REFER TO THE SOLICITATION PROCEDURES, ATTACHED AS AN EXHIBIT TO THE TCEH DISCLOSURE STATEMENT ORDER (ATTACHED HERETO AS **EXHIBIT H**), FOR A MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS. IN THE EVENT OF ANY DISCREPANCY BETWEEN THE SOLICITATION PROCEDURES AND INFORMATION IN THIS SUMMARY, THE SOLICITATION PROCEDURES SHALL GOVERN.

---

**B.    Holders of Claims and Interests Entitled to Vote on the TCEH Plan.**

Under the applicable provisions of the Bankruptcy Code, not all Holders of Claims and Interests are entitled to vote on the TCEH Plan. The TCEH Plan Proponents are soliciting votes to accept or reject the TCEH Plan only from the Voting Classes, composed of Classes 3 and 4. The TCEH Plan Proponents are **not** soliciting votes from Holders of the remaining Classes of Claims and Interests who are deemed to reject the TCEH Plan or are presumed to accept the TCEH Plan because: (1) their Claims are being paid in full; (2) their Claims or Interests are being Reinstated; or (3) they are deemed to reject the TCEH Plan.

**C.    Voting Record Date.**

**The Voting Record Date is [         ], 2016**. The Voting Record Date is the date on which it will be determined which Holders of Claims and Interests in the Voting Classes are entitled to vote to accept or reject the TCEH Plan and whether Claims or Interests have been properly assigned or transferred under Bankruptcy Rule 3001(e) such that an assignee can vote as the Holder of a Claim or Interest.

**D.    Voting on the TCEH Plan.**

The Solicitation Procedures will be used to collect and tabulate votes on the TCEH Plan. The Solicitation Procedures are incorporated into this TCEH Disclosure Statement by reference and attached as an exhibit to the TCEH Disclosure Statement Order, which is attached as **Exhibit H** to this TCEH Disclosure Statement. Readers should carefully read the Solicitation Procedures, particularly with respect to certain voting procedures applicable to Beneficial Holders of Claims and Interests in the Voting Classes.

Only the Voting Classes are entitled to vote on the TCEH Plan. Holders of all other Classes of Claims and Interests are deemed to: (a) accept the TCEH Plan because (i) their Claims are being paid in full or (ii) their Claims or Interests are being Reinstated; or (b) reject the TCEH Plan.

**The Voting Deadline is 4:00 p.m. (prevailing Eastern Time) on [         ], 2016**. To be counted as votes to accept or reject the TCEH Plan, all Ballots and Master Ballots must be properly pre-validated (if applicable), executed, completed, and delivered (either by using the return envelope provided, by first class mail, overnight courier, or personal delivery) such that they are **actually received** on or before the Voting Deadline by the Solicitation Agent as follows:

E.      **Ballots Not Counted.**

**No Ballot will be counted toward Confirmation if, among other things**:  (1) it is illegible or contains insufficient information to permit the identification of the Holder of the Claim or Interest; (2) it was transmitted by facsimile or other electronic means; (3) it was cast by, submitted by, or on behalf of an Entity that does not hold a Claim or Interest in a Voting Class; (4) it was submitted by or on behalf of an Entity not entitled to vote pursuant to the TCEH Plan, the Solicitation Procedures, or any order of the Bankruptcy Court; (5) it was sent to the TCEH Plan Proponents or TCEH Debtors, the TCEH Plan Proponents' agents/representatives (other than the Solicitation Agent), the TCEH Debtors' agents/representatives (other than the Solicitation Agent), an indenture trustee, an administrative agent, the TCEH Plan Proponents' financial or legal advisors, or the TCEH Debtors' financial or legal advisors instead of to the Solicitation Agent; (6) it is unsigned; (7) it was signed by a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation or otherwise acting in a fiduciary or representative capacity without indicating such capacity or submitting proper evidence to act on behalf of the Beneficial Holder, if requested by the TCEH Plan Proponents, the Solicitation Agent, the applicable Nominee or its agent, or the Bankruptcy Court; (8) it is not marked to either accept or reject the TCEH Plan or it is marked both to accept and reject the TCEH Plan; (9) it is received by the Solicitation Agent after the Voting Deadline; (10) it was cast for a Claim or Interest that is subject to dispute pending as of the Record Date (unless temporarily allowed in accordance with the Solicitation Procedures); (11) with respect to Ballots voted by Beneficial Holders, the Ballot was sent to the Solicitation Agent rather than the Beneficial Holder's Nominee without being properly pre-validated; (12) with respect to Ballots voted by Beneficial Holders, the Holder or Nominee or Both simultaneously cast inconsistent Ballots; or (13) it is a Ballot voted by a Beneficial Holder that was not returned to the Beneficial Holder's Nominee in time for the Nominee to include the Ballot in the Master Ballot.

---

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE CONTACT THE SOLICITATION AGENT.  ANY BALLOT RECEIVED AFTER THE VOTING DEADLINE OR OTHERWISE NOT IN COMPLIANCE WITH THE SOLICITATION PROCEDURES WILL NOT BE COUNTED EXCEPT IN THE TCEH PLAN PROPONENTS' SOLE DISCRETION.**

---

## VIII.    Risk Factors

**Before taking any action with respect to the TCEH Plan, Holders of Claims and Interests who are entitled to vote to accept or reject the TCEH Plan should read and consider carefully the risk factors set forth below, as well as the other information set forth in this TCEH Disclosure Statement, the TCEH Plan.  For a complete description of the risk factors affecting the reorganization of the Debtors, please see Articles VIII. A-D and VIII.F of the REIT Plan Disclosure Statement and Article VIII. A-E of the New Joint Plan Disclosure Statement.[12]  The TCEH Plan Proponents incorporate by reference such provisions of the REIT Plan Disclosure Statement and New Joint Plan Disclosure Statement as if set forth herein.   Below are the specific risk factors affecting the TCEH Plan.**

**A.    Business Risk Factors Related to the Business Operations of the TCEH Debtors**

The risks related to the TCEH Debtors' operations are substantially the same as identified by the Debtors in (i) the Section of the REIT Plan Disclosure Statement titled "Risk Factors Related to the Business Operations of the Debtors, and the Reorganized Debtors, and Oncor Electric" (See REIT Plan Disclosure Statement Art. VIII.D) and (ii) the Section of the New Joint Plan Disclosure Statement titled "Risk Factors Related to the Business Operations of the Debtors, and the Reorganized Debtors, and Oncor Electric" (See New Joint Plan Disclosure Statement Art. VIII.D), except that the risks specific to Oncor Electric's business are no longer applicable.  Holders of Claims and Interests should review the risk factors in the REIT Plan Disclosure Statement together with the public filings of the EFH Debtors and their Affiliates, which are available free of charge on the SEC's website at www.sec.gov.

**B.    Additional Risk Factors**

**1.    *If the Taxable Separation is Effectuated, the IRS May Challenge the Taxable Separation Intended Tax Treatment.***

If the Taxable Separation is effectuated, it is possible that the IRS could challenge the intended tax treatment set forth in the definition of "Taxable Separation" as a taxable sale or exchange. Such a challenge, if successful, could reduce Reorganized TCEH's basis in its assets which could result in additional cash tax liabilities for Reorganized TCEH.

**2.    *If the Spin-Off is Effectuated, the IRS May Not Issue the Private Letter Ruling, May Not Rule on All of the Requested Rulings, and May Challenge the Spin-Off Intended Tax Treatment of the TCEH Plan.***

If the TCEH Plan Proponents waive the condition precedent in Article VI.D.8(b) of the TCEH Plan (relating to the receipt of the Private Letter Ruling) and the Spin-Off is effectuated, it is possible that the IRS will not issue the Private Letter Ruling or, if the Private Letter Ruling is issued, it is possible that the IRS may not provide some of the requested rulings.

The IRS may in the future choose to assert that the Spin-Off pursuant to the TCEH Plan gave rise to taxable gain greater than the amount of any tax attributes available to shelter such gain and could seek to assess a tax liability against one or more of the Debtors. The IRS could make such an assertion even if the Private Letter Ruling is issued, because the Private Letter Ruling will not address certain requirements for tax-free treatment under sections 355 and 368(a)(1)(G) of the IRC. Additionally, even if the Private Letter Ruling is issued, the IRS could assert that the Divisive G Reorganization (defined below) is a fully taxable event if it (i) determines that any of the representations, assumptions, or undertakings that were included in the request for the Private Letter Ruling were false or were violated, or (ii) finds that a requirement of law for which no ruling was obtained was not satisfied. Any such resulting tax liability, if asserted and allowed, may be treated as an Administrative Claim against EFH Corp., for which, under certain circumstances, EFH Corp. may seek indemnity from Reorganized TCEH under the Tax Matters Agreement, and any such resulting indemnification obligation could be material.

---

[12]    The TCEH Plan Proponents make no representation or warranties as to the accuracy of such information.

Additionally, the IRS could challenge the validity of the Preferred Stock Sale and/or the valuations relied on in connection therewith. Such a challenge, if successful, could result in cash tax liabilities to EFH Corp. for which, under certain circumstances, EFH Corp. may seek indemnity from Reorganized TCEH under the Tax Matters Agreement, and, by operation of the Tax Matters Agreement, to Reorganized TCEH (if the IRS argued that more gain than desired was triggered), or reduce or eliminate the projected benefit from the Basis Step-Up.

**3.      *If the Spin-Off is Effectuated, the Tax Matters Agreement Will Contain Certain Restrictions on the Reorganized Debtors' Ability to Consummate Certain Transactions.***

If the Spin-Off is effectuated, the Tax Matters Agreement will include limitations on certain actions of Reorganized TCEH to preserve the tax-free nature of the Spin-Off, as well as certain indemnification obligations in the event the Spin-Off fails to be treated as a tax-free transaction as a result of the breach by the Reorganized TCEH of any covenants in the Tax Matters Agreement. In the event any indemnification obligations are triggered, the Reorganized TCEH would likely be negatively affected. Additionally, the covenants and other limitations with respect to the Tax Matters Agreement may limit the ability of the Reorganized TCEH to undertake certain transactions that may otherwise be value-maximizing.

## FORWARD-LOOKING STATEMENTS

This TCEH Disclosure Statement, including the information incorporated into this TCEH Disclosure Statement by reference, contains "forward-looking statements" that are based, at least in part, on estimates and assumptions obtained directly from the REIT Plan Disclosure Statement.    All statements, other than statements of historical facts, that are included in or incorporated by reference into this TCEH Disclosure Statement that address activities, events, or developments that the TCEH Plan Proponents expect or anticipate to occur in the future, including such matters as projections, capital allocation, future capital expenditures, business strategy, competitive strengths, goals, future acquisitions or dispositions, development, or operation of facilities, market and industry developments and the growth of the TCEH Debtors' businesses and operations (often, but not always, through the use of words or phrases such as "intends," "plans," "will likely result," "are expected to," "could," "will continue," "is anticipated," "estimated," "should," "projection," "target," "goal," "objective," and "outlook"), are forward-looking statements. Although the TCEH Plan Proponents believe that in making any such forward-looking statement their expectations are based on reasonable assumptions, any such forward-looking statement involves uncertainties and is qualified in its entirety by reference to the discussion of risk factors under "Risk Factors" contained elsewhere in this Disclosure Schedule and in the sections captioned "Risk Factors" and "Management's Discussion and Analysis of Financial Condition and Results of Operations" in the reports and other filings filed with the SEC by the EFH Debtors and their Affiliates, which are incorporated into this TCEH Disclosure Statement by reference, and the following important factors, among others, that could cause the TCEH Debtors' actual results to differ materially from those projected in such forward-looking statements:

- the TCEH Plan Proponents' ability to receive Bankruptcy Court approval and the required creditors' votes for the approval of the TCEH Plan or any other plan filed by the TCEH Debtors and the TCEH Plan Proponents' ability to consummate the TCEH Plan or any such other plan;

- the effectiveness of the overall restructuring activities pursuant to the Chapter 11 Cases and any additional strategies the TCEH Plan Proponents or the TCEH Debtors employ to address their liquidity and capital resources;

- the terms and conditions of any reorganization plan that is ultimately approved by the Bankruptcy Court;

- the extent to which the Chapter 11 Cases cause customers, suppliers, and others with whom the TCEH Debtors have commercial relationships to lose confidence in them, which may make it more difficult for the TCEH Debtors to obtain and maintain such commercial relationships on competitive terms;

- difficulties the TCEH Debtors may face in retaining and motivating their key employees through the bankruptcy process, and difficulties they may face in attracting new employees;

- the significant time and effort required to be spent by the TCEH Debtors' senior management in dealing with the bankruptcy and restructuring activities rather than focusing exclusively on business operations;

- the TCEH Debtors' ability to remain in compliance with the requirements of the DIP Facility;

- the TCEH Debtors' ability to maintain or obtain sufficient financing sources for their operations during the pendency of the Chapter 11 Cases and their ability to obtain sufficient exit financing to fund the TCEH Plan or any other plan of reorganization;

- limitations on the TCEH Debtors' ability to utilize previously incurred federal net operating losses or alternative minimum tax credits;

- the actions and decisions of creditors, regulators, and other third parties that have an interest in the Chapter 11 Cases that may be inconsistent with, or interfere with, the TCEH Debtors' business and/or plans;

- the duration of the Chapter 11 Cases;

- the actions and decisions of regulatory authorities relative to any reorganization plan;

- the outcome of any current or future litigation regarding whether note holders are entitled to makewhole or redemption premiums, and/or postpetition interest in connection with the treatment of their claims in bankruptcy;

- the outcome of any current or future litigation regarding intercompany claims and derivative claims;

- restrictions on the TCEH Debtors' operations due to the terms of their debt agreements, including the DIP Facilities, and restrictions imposed by the Bankruptcy Court in the Chapter 11 Cases;

- the TCEH Plan Proponents' ability to satisfy any of the conditions to the Restructuring Transactions;

- prevailing governmental policies and regulatory actions, including those of the Texas Legislature, the Governor of Texas, the Congress of the United States of America, the FERC, the NERC, the TRE, the PUCT, ERCOT, the RCT, the NRC, the EPA, the TCEQ, the US Mine Safety and Health Administration and the CFTC, with respect to, among other things:

  - allowed prices;

  - allowed rates of return;

  - permitted capital structure;

  - industry, market, and rate structure;

  - purchased power and recovery of investments;

  - operations of nuclear generation facilities;

  - operations of fossil fueled generation facilities;

  - operations of mines;

  - self-bonding requirements;

50

- acquisitions and disposals of assets and facilities;

- development, construction, and operation of facilities;

- decommissioning costs;

- present or prospective wholesale, and retail competition;

- changes in tax laws and policies;

- changes in and compliance with environmental and safety laws, and policies, including the CSAPR, MATS, and greenhouse gas and other climate change initiatives; and

- clearing over-the-counter derivatives through exchanges and posting of cash collateral therewith;

- legal and administrative proceedings and settlements;

- general industry trends;

- weather conditions, including drought and limitations on access to water, and other natural phenomena, acts of sabotage, wars, or terrorist or cyber security threats or activities;

- economic conditions, including the impact of an economic downturn;

- the TCEH Debtors' ability to collect trade receivables from counterparties;

- the TCEH Debtors' ability to attract and retain profitable customers;

- the TCEH Debtors' ability to profitably serve our customers;

- restrictions on competitive retail pricing;

- changes in wholesale electricity prices or energy commodity prices, including the price of natural gas;

- changes in prices of transportation of natural gas, coal, fuel oil, and other refined products;

- changes in the ability of vendors to provide or deliver commodities as needed;

- changes in market heat rates in the ERCOT electricity market;

- the TCEH Debtors' ability to effectively hedge against unfavorable commodity prices, including the price of natural gas, market heat rates and interest rates;

- population growth or decline, or changes in market supply and/or demand and demographic patterns, particularly in ERCOT;

- changes in business strategy, development plans, or vendor relationships;

- access to adequate transmission facilities to meet changing demands;

- changes in interest rates, commodity prices, rates of inflation, or foreign exchange rates;

- changes in operating expenses, liquidity needs, and capital expenditures;

- inability of various counterparties to meet their financial obligations to the TCEH Debtors and/or their subsidiaries, including failure of counterparties to perform under agreements;

- general industry trends;

- hazards customary to the industry and the possibility that the TCEH Debtors and/or their subsidiaries may not have adequate insurance to cover losses resulting from such hazards;

- changes in technology (including large scale electricity storage) used by and services offered by the TCEH Debtors and/or their subsidiaries;

- changes in electricity transmission that allow additional electricity generation to compete with the TCEH Debtors' generation assets;

- significant changes in relationships with the TCEH Debtors' and/or their subsidiaries' employees, including the availability of qualified personnel, and the potential adverse effects if labor disputes or grievances were to occur;

- changes in assumptions used to estimate costs of providing employee benefits, including medical and dental benefits, pension and other postretirement employee benefits, and future funding requirements related thereto, including joint and several liability exposure under ERISA;

- changes in assumption used to estimate future executive compensation payments;

- significant changes in critical accounting policies material to the TCEH Debtors and/or their subsidiaries;

- commercial bank market and capital market conditions and the potential impact of disruptions in U.S. and international credit markets;

- access to capital, the cost of such capital, and the results of financing and refinancing efforts by the TCEH Debtors and/or their subsidiaries and affiliates, including availability of funds in the capital markets;

- competition for new energy development and other business opportunities;

- inability of various counterparties to meet their obligations with respect to our financial instruments;

- circumstances which may contribute to impairment of goodwill, intangible, or other long-lived assets;

- financial restrictions imposed by agreements governing the TCEH Debtors' debt instruments;

- the TCEH Debtors' or their subsidiaries' ability to generate sufficient cash flow to make interest payments on their debt instruments;

- actions by credit rating agencies;

- changes in law or regulation applicable to market participants in the ERCOT market; and

- ability to effectively execute the TCEH Debtors' operational strategy.

Any forward-looking statement speaks only as of the date on which it is made, and except as may be required by law, the TCEH Plan Proponents undertake no obligation to update any forward-looking statement to reflect events or circumstances after the date on which it is made or to reflect the occurrence of unanticipated events or circumstances.  New factors emerge from time to time, and it is not possible for the TCEH Plan Proponents to predict all of them; nor can the TCEH Plan Proponents assess the impact of each such factor or the extent to which any factor, or combination of factors, may cause results to differ materially from those contained in any forward-looking statement.  As such, you should not unduly rely on such forward-looking statements.

# IX. Important Securities Laws Disclosures

The TCEH Plan provides for the offer, issuance, sale or distribution of Reorganized TCEH Common Stock, the Taxable Separation TRA Rights (if any), the Spin-Off TRA Rights (if any), the New Reorganized TCEH Debt, and the Reorganized TCEH Sub Preferred Stock (as applicable). The TCEH Plan Proponents believe that each of the Reorganized TCEH Common Stock, the Taxable Separation TRA Rights (if any), the Spin-Off TRA Rights (if any), the New Reorganized TCEH Debt, and the Reorganized TCEH Sub Preferred Stock, as applicable, are or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

The TCEH Plan Proponents believe that the offer, issuance, sale, or distribution of the Reorganized TCEH Common Stock to Holders of Allowed TCEH First Lien Claims may be made without registration under the Securities Act in reliance upon the exemption set forth in section 1145(a)(1) of the Bankruptcy Code.

The Reorganized TCEH Common Stock is referred to herein as "1145 Securities."

The New Reorganized TCEH Debt, the Taxable Separation TRA Rights (if any), the Spin-Off TRA Rights (if any), and the Reorganized TCEH Sub Preferred Stock, as applicable, will each be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder and will not be "1145 Securities."

## A. Section 1145 of the Bankruptcy Code

Section 1145(a)(1) of the Bankruptcy Code exempts the offer and sale of securities under a plan of reorganization from registration under section 5 of the Securities Act and state securities laws if three principal requirements are satisfied: (i) the securities must be offered and sold under a plan of reorganization and must be securities of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan; (ii) the recipients of the securities must hold prepetition or administrative expense claims against the debtor or interests in the debtor; and (iii) the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in exchange for such claim or interest and partly for cash or property. Section 1145(a)(2) of the Bankruptcy Code generally exempts from registration under the Securities Act the offer of a security through any warrant, option, right to subscribe, or conversion privilege that was sold in the manner specified in section 1145(a)(1), or the sale of a security upon the exercise of such a warrant, option, right, or privilege. In general, offers and sales of securities made in reliance on the exemption afforded under section 1145(a) of the Bankruptcy Code are deemed to be made in a public offering. Accordingly, the securities issued pursuant to the section 1145 exemption may generally be resold by any holder thereof without registration under the Securities Act pursuant to the exemption provided by section 4(a)(1) thereof, unless the holder is an "underwriter" with respect to such securities, as such term is defined in section 1145(b)(1) of the Bankruptcy Code. In addition, such securities generally may be resold by the recipients thereof without registration under state securities or "blue sky" laws pursuant to various exemptions provided by the respective laws of the individual states.

Section 1145(b)(1) of the Bankruptcy Code defines an "underwriter" for purposes of the Securities Act as one who, subject to certain exceptions, (1) purchases a claim or interest in the debtor with a view to distribution of any security to be received in exchange for such claim, (2) offers to sell securities offered or sold under the plan for the holders of such securities, (3) offers to buy securities issued under the plan from the holders of such securities, if the offer to buy is made with a view to distribution of such securities, and if such offer is under an agreement made in connection with the plan, with the consummation of the plan or with the offer or sale of securities under the plan, or (4) is an "issuer," as used in section 2(a)(11) of the Securities Act, with respect to such securities. The term "issuer," as used in section 2(a)(11) of the Securities Act, includes any person directly or indirectly controlling or controlled by, an issuer of securities, or any person under direct or indirect common control with such issuer.

To the extent that persons deemed to be "underwriters" under section 1145 of the Bankruptcy Code receive 1145 Securities, resales by such persons would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law. Generally, rule 144 of the Securities Act provides that persons who are affiliates of an issuer who resell securities will not be deemed to be underwriters if certain conditions are met. These conditions include that current public information with respect to the issuer be available at the time of sale, limitations as to the amount of securities that may be sold, and manner of sale and notice requirements.

You should confer with your own legal advisors to help determine whether or not you are an "underwriter."

**B.** **Subsequent Transfers of Securities Not Covered by the Section 1145(a) Exemption.**

Securities that are neither issued pursuant to section 1145(a)(1) or section 1145(a)(2) of the Bankruptcy Code nor pursuant to an effective registration statement under the Securities Act will be deemed "restricted securities" and may not be sold, exchanged, assigned, or otherwise transferred unless they are registered, or an exemption from registration applies, under the Securities Act.   Rule 144 of the Securities Act permits the public resale of restricted securities if certain conditions are met, and these conditions vary depending on whether the holder of the restricted securities is an "affiliate" of the issuer, as defined in Rule 144. A non-affiliate who has not been an affiliate of the issuer during the preceding 90 days may resell restricted securities after a six-month holding period unless certain current public information regarding the issuer is not available at the time of sale, in which case the non-affiliate may resell after a one-year holding period. An affiliate may resell restricted securities after a six-month holding period but only if certain current public information regarding the issuer is available at the time of the sale and only if the affiliate also complies with the volume, manner of sale and notice requirements of Rule 144.

PERSONS WHO RECEIVE SECURITIES UNDER THE TCEH PLAN ARE URGED TO CONSULT THEIR OWN LEGAL ADVISOR WITH RESPECT TO THE RESTRICTIONS APPLICABLE UNDER THE FEDERAL OR STATE SECURITIES LAWS AND THE CIRCUMSTANCES UNDER WHICH SECURITIES MAY BE SOLD IN RELIANCE ON SUCH LAWS.

THE FOREGOING SUMMARY DISCUSSION IS GENERAL IN NATURE AND HAS BEEN INCLUDED IN THIS TCEH DISCLOSURE STATEMENT SOLELY FOR INFORMATIONAL PURPOSES. WE MAKE NO REPRESENTATIONS CONCERNING, AND DO NOT PROVIDE, ANY OPINIONS OR ADVICE WITH RESPECT TO THE SECURITIES OR THE BANKRUPTCY MATTERS DESCRIBED IN THIS TCEH DISCLOSURE STATEMENT. IN LIGHT OF THE UNCERTAINTY CONCERNING THE AVAILABILITY OF EXEMPTIONS FROM THE RELEVANT PROVISIONS OF FEDERAL AND STATE SECURITIES LAWS, WE ENCOURAGE EACH HOLDER AND PARTY-IN-INTEREST TO CONSIDER CAREFULLY AND CONSULT WITH ITS OWN LEGAL ADVISORS WITH RESPECT TO ALL SUCH MATTERS. BECAUSE OF THE COMPLEX, SUBJECTIVE NATURE OF THE QUESTION OF WHETHER A SECURITY IS EXEMPT FROM THE REGISTRATION REQUIREMENTS UNDER THE FEDERAL OR STATE SECURITIES LAWS OR WHETHER A PARTICULAR HOLDER MAY BE AN UNDERWRITER, WE MAKE NO REPRESENTATION CONCERNING THE ABILITY OF A PERSON TO DISPOSE OF THE SECURITIES ISSUED UNDER THE TCEH PLAN.

## X.    Certain U.S. Federal Income Tax Consequences of the TCEH Plan

### A.    Introduction.

The following discussion is a summary of certain U.S. federal income tax consequences of the consummation of the TCEH Plan to Reorganized TCEH and to certain U.S. Holders (as defined below) of Claims against the TCEH Debtors that compose Classes entitled to vote on the TCEH Plan.  The following summary does not address the U.S. federal income tax consequences to Holders of Claims not entitled to vote to accept or reject the TCEH Plan.  This summary is based on the IRC, the U.S. Treasury Regulations promulgated thereunder, judicial authorities, published administrative positions of the IRS and other applicable authorities, all as in effect on the date of this TCEH Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect.

For purposes of this discussion, a "U.S. Holder" is a holder that is: (1) an individual citizen or resident of the U.S. for U.S. federal income tax purposes; (2) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the U.S., any state thereof or the District of Columbia; (3) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (4) a trust (a) if a court within the U.S. is able to exercise primary jurisdiction over the trust's administration and one or more U.S. persons have authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. person. For purposes of this discussion, a "Non-U.S. Holder" is any holder that is not a U.S. Holder other than any partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).  This summary does not discuss the U.S. federal income tax consequences of the TCEH Plan to Non-U.S. Holders of Claims against or Interests in the TCEH Debtors.[13]

Pursuant to the Plan, the TCEH Debtors other than EFCH and TCEH will be separated from the EFH Debtors and the EFIH Debtors.  The Plan provides that such separation will occur pursuant to a transaction intended to be fully taxable pursuant to section 1001 of the IRC and if the Spin-Off Condition is satisfied, in a transaction intended generally to constitute a reorganization under sections 368(a)(1)(G) and 355 of the IRC.  The TCEH Plan Proponents also expect EFH Corp. to recognize gain as a result of the Spin-Off Preferred Stock Sale.  As a result of the Spin-Off Preferred Stock Sale, the TCEH Plan Proponents anticipate that there will be a step-up in the tax basis in the assets transferred or deemed transferred to the Preferred Stock Entity (the "Basis Step-Up") that will be determined in accordance with the definition of "Basis Step-Up" in the TCEH Plan.  The Taxable Separation, the Spin-Off and the Spin-Off Preferred Stock Sale are discussed in more detail below.

Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below.  The Debtors have sought the Private Letter Ruling with respect to some, but not all, of the U.S. federal income tax consequences of the Plan to the TCEH Debtors and certain Holders of Claims and Interests.  The following summary assumes that the intended tax treatment of the Plan is respected for U.S. federal income tax purposes.  Although the Private Letter Ruling, if obtained, will bind the IRS with respect to the rulings therein and to the extent the representations made by the TCEH Debtors in connection therewith are true, the IRS could attempt to assert that matters not ruled upon, or inaccurate representations, alter the tax consequences of the restructuring transactions consummated under the TCEH Plan. Moreover, this summary is not binding upon the IRS or the courts. No assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to Reorganized TCEH or to certain Holders in light of their individual circumstances.  This discussion does not address tax issues with respect to such Holders subject to special treatment under the U.S. federal income tax laws (including, for example, banks, governmental authorities or agencies, pass-through entities, subchapter S corporations, dealers and traders in securities, insurance companies, financial institutions, tax-exempt organizations, small business investment companies, non-U.S. Holders, Persons who are related to the TCEH Debtors within the meaning of the IRC, persons using a mark-to-market method of accounting, Holders of Claims who are themselves in bankruptcy, regulated investment companies and those holding, or who will hold, Claims as part of a hedge, straddle, conversion, or other integrated transaction).  No aspect of state, local, estate, gift, or non-U.S. taxation is addressed.  Additionally, the net

---

[13]    Any references in this summary to consequences to "Holders" are references to consequences to "U.S. Holders."

investment income tax imposed by section 1411 of the IRC is also not addressed.  Furthermore, this summary assumes that a Holder of a Claim holds only Claims in a single Class and holds such a Claim as a "capital asset" (within the meaning of section 1221 of the IRC).  This summary also assumes that the various debt and other arrangements to which the TCEH Debtors and Reorganized TCEH Debtors are a party will be respected for federal income tax purposes in accordance with their form.

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder, the tax treatment of a partner (or other owner) generally will depend upon the status of the partner (or other owner) and the activities of the entity and the partner (or other owner).  Partners (or other owners) of partnerships (or other pass through entities) that are Holders are urged to consult their respective tax advisors regarding the U.S. federal income tax consequences of the TCEH Plan.

This summary of certain U.S. federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a holder of a claim or interest.  All holders of claims and interests are urged to consult their own tax advisors for the U.S. federal, state, local, and non-U.S. tax consequences of the plan.

**B.**     **Certain U.S. Federal Income Tax Consequences if the Taxable Separation is Effectuated.**

**1.**     **Certain U.S. Federal Income Tax Consequences of the TCEH Plan to Reorganized TCEH.**

The Plan provides that the assets of the TCEH Debtors will be transferred to Reorganized TCEH in a transaction or transactions intended to be treated as a taxable sale or exchange pursuant to section 1001.

Although the structure of the Taxable Separation has not been fully determined, in order to ensure that the Taxable Separation qualifies as a taxable sale or exchange pursuant to section 1001 of the IRC and not (in whole or in part) as a tax-free transaction (under section 368 of the IRC or otherwise), steps will be taken such as (a) the formation of Reorganized TCEH and one or more subsidiaries by a designee of the TCEH Plan Proponents; (b) subject to clause (c), the transfer of TCEH's assets to an indirect subsidiary of Reorganized TCEH in exchange for Claims transferred to such indirect subsidiary; (c) the transfer of a portion of the TCEH Debtors' assets to an indirect subsidiary of Reorganized TCEH in exchange for preferred stock of Reorganized TCEH (or one or more of its subsidiaries), subject to a preexisting binding commitment to sell such preferred stock to third-party investors for cash; and/or (d) any other reasonable methodology proposed by the TCEH Plan Proponents. The Taxable Separation shall be in form and substance as proposed by the TCEH Plan Proponents and shall be described in more detail in the Taxable Separation Memorandum that will be attached to the Plan Supplement.

**2.**     **Certain U.S. Federal Income Tax Consequences of the TCEH Plan to Holders of Allowed Claims in Classes Entitled to Vote on the TCEH Plan.**

As discussed below, the tax consequences of the TCEH Plan to Holders of Allowed Claims will depend on a variety of factors.

Recoveries under the TCEH Plan are significantly different, and these differences will change the U.S. federal income tax consequences to Holders of certain Claims.

The character of any recognized gain as capital gain or ordinary income will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Claim in such U.S. Holder's hands (including whether the Claim constitutes a capital asset), whether the Claim was purchased at a discount, whether and to what extent the U.S. Holder has previously claimed a bad debt deduction with respect to its Claim, and whether any part of the Holder's recovery is treated as being on account of accrued but unpaid interest.  Accrued interest, market discount and the deductibility of capital losses are discussed below.

(a)     **Consequences to U.S. Holders of Claims.**

Pursuant to the TCEH Plan, in full satisfaction and discharge of their Claims, Holders of Allowed Class 3 Claims will receive their pro rata share of (a) Reorganized TCEH Common Stock; (b) cash; (c) New Reorganized TCEH Debt (if applicable); and (d) Taxable Separation TRA Rights (if any).

(i)    **Consequences to U.S. Holders of TCEH First Lien Secured Claims (Class 3).**

A U.S. Holder of such a Claim should be treated as receiving its distribution under the TCEH Plan in a taxable exchange under section 1001 of the IRC. Accordingly, other than with respect to any amounts received that are attributable to accrued but untaxed interest, a U.S. Holder of such a Claim would recognize gain or loss equal to the difference between (a) the sum of the cash and the fair market value of the "other property" received in exchange for the Claim and (b) such U.S. Holder's adjusted basis, if any, in such a Claim.

Such U.S. Holder should obtain a tax basis in the non-cash consideration received, other than with respect to any amounts received that are attributable to accrued but untaxed interest, equal to the fair market value of the non-cash consideration as of the receipt of such property.

The tax basis of any non-cash consideration treated as received in satisfaction of accrued but untaxed interest should equal the amount of such accrued but untaxed interest, but in no event should such basis exceed the fair market value of the stock received in satisfaction of accrued but untaxed interest.

The holding period of the non-cash consideration should begin on the day following the receipt of such property.

(ii)    **Consequences to U.S. Holders of TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH (Class 4).**

A U.S. Holder of a Class 4 Claim should be treated as receiving its distribution under the TCEH Plan in a taxable exchange under section 1001 of the IRC. Accordingly, other than with respect to any amounts received that are attributable to accrued but untaxed interest, a U.S. Holder of such a Claim would recognize gain or loss equal to the difference between (a) their portion of the TCEH Cash Payment received in exchange for the Claim and (b) such U.S. Holder's adjusted basis, if any, in such a Claim.

**C.    Certain U.S. Federal Income Tax Consequences if the Spin-Off is Effectuated.**

**1.    _Certain U.S. Federal Income Tax Consequences of the TCEH Plan to the TCEH Debtors._**

For U.S. federal income tax purposes, the TCEH Debtors (and certain non-TCEH Debtor affiliates) are members of an affiliated group of corporations (or entities disregarded for federal income tax purposes that are wholly owned by members of such group), of which EFH Corp. is the common parent (the "EFH Group").[14]

TCEH is currently a wholly-owned subsidiary of EFCH, and EFCH is a wholly-owned subsidiary of EFH Corp. For federal income tax purposes, EFCH, TCEH, and the substantial majority of TCEH's direct and indirect subsidiaries are entities that are disregarded from their regarded owner, EFH Corp., for federal income tax purposes. As a consequence, EFH Corp. is treated as holding, for federal income tax purposes, all the assets and liabilities of, EFCH, TCEH, and TCEH's subsidiaries that are also disregarded entities.

(a)    **Reorganized TCEH Spin-Off.**

(i)    **Divisive G Reorganization.**

TCEH has formed Reorganized TCEH as a Delaware limited liability company that is disregarded for federal income tax purposes. Pursuant to the Plan, if the Spin-Off Condition is satisfied, Reorganized TCEH will issue the New Reorganized TCEH Debt, TCEH will transfer all of its interests in its subsidiaries (excluding the stock of TCEH Finance) to Reorganized TCEH in exchange for 100% of (x) the Reorganized TCEH membership interests and (y) the

---

[14]    Additionally, a single [TCEH] Debtor entity, EFH CG Holdings Company LP, is a regarded partnership for federal income tax purposes. Approximately 19.5% of this entity is owned by non-TCEH Debtor Oncor Electric Delivery Company LLC; the remaining interests are owned by various TCEH Debtor entities.

net Cash proceeds of the New Reorganized TCEH Debt (and, to the extent applicable, the New Reorganized TCEH Debt that will be received by Holders of Class 3 Claims), subject to preserving the Spin-Off Intended Tax Treatment, and the EFH Debtors will make the Contribution to Reorganized TCEH.  Following the Contribution and the Spin-Off Preferred Stock Sale (discussed below), Reorganized TCEH will convert to a Delaware corporation pursuant to Delaware's corporate conversion statute (the "Reorganized TCEH Conversion").   For U.S. federal income tax purposes, the incorporation of Reorganized TCEH will be treated as if EFH Corp. contributed the TCEH assets and other assets to Reorganized TCEH (a corporation) in exchange for all of the Reorganized TCEH Common Stock and the assumption of the New Reorganized TCEH Debt and certain other liabilities by Reorganized TCEH.  Immediately following the Reorganized TCEH Conversion, TCEH will make distributions to Allowed TCEH First Lien Secured Claims in accordance with the TCEH Plan (the "Distribution").

The Contribution, Reorganized TCEH Conversion, and Distribution are collectively intended to qualify as a reorganization pursuant to section 368(a)(1)(G) of the IRC with a distribution pursuant to section 355 of the IRC (a "Divisive G Reorganization").  After the Spin-Off, Reorganized TCEH should hold its assets with the same tax basis as EFH Corp. had in such assets, other than with respect to the assets transferred or deemed transferred pursuant to the Spin-Off  Preferred Stock Sale (as discussed below).

In general, the amount of the annual limitation to which a corporation that undergoes an "ownership change" would be subject is equal to the product of (a) the fair market value of the stock of the corporation immediately before the "ownership change" (with certain adjustments) multiplied by (b) the "long-term tax-exempt rate" (which is the highest of the adjusted federal long-term rates in effect for any month in the 3-calendar-month period ending with the calendar month in which the "ownership change" occurs).[15] The section 382 limitation may be increased to the extent that the Debtors recognize certain built-in gains in their assets during the five-year period following the ownership change, or are treated as recognizing built-in gains pursuant to the safe harbors provided in IRS Notice 2003-65. Section 383 of the IRC applies a similar limitation to capital loss carryforwards and tax credits. Any unused limitation may be carried forward, thereby increasing the annual limitation in the subsequent taxable year.

Under section 382(l)(6) of the IRC, the annual limitation will be calculated by reference to the lesser of the value of the debtor corporation's new stock (with certain adjustments) immediately after the ownership change or the value of such debtor corporation's assets (determined without regard to liabilities) immediately before the ownership change. This differs from the ordinary rule that requires the fair market value of a debtor corporation that undergoes an "ownership change" to be determined before the events giving rise to the change.

The application of section 382 of the IRC is somewhat unclear in the context of a Divisive G Reorganization, particularly where the "distributed" corporation (here, Reorganized TCEH) is newly-formed for the purposes of the spin-off transaction. The TCEH Debtors currently anticipate, however, that Reorganized TCEH (after accounting for the Preferred Stock Sale) will have a "net unrealized built-in loss" ("NUBIL") subject to section 382 on the TCEH Effective Date. The amount of this NUBIL should be approximately equal to the difference between the tax basis of Reorganized TCEH's assets less the fair market value of assets directly held by Reorganized TCEH, including the net equity value of any subsidiaries of Reorganized TCEH that are regarded entities for U.S. federal income tax purposes (including the Preferred Stock Entity). Under section 382 of the IRC, depreciation and amortization deductions attributable to the assets that give rise to this NUBIL (generally, here, the assets that are not transferred to the Preferred Stock Entity pursuant to the Spin-Off Preferred Stock Sale) will be subject to the annual limitation (calculated as described above) for a period of five years following the TCEH Effective Date.

### (ii)        Spin-Off Preferred Stock Sale.

To obtain the Basis Step-Up, TCEH has formed the Preferred Stock Entity.  This entity is currently treated as a disregarded entity for U.S. federal income tax purposes, but pursuant to the Reorganized TCEH Conversion, it will convert to a Delaware corporation.   After the Contribution (but before the Reorganized TCEH Conversion), Reorganized TCEH will contribute the equity in the Contributed TCEH Debtors (or, potentially, certain assets or joint interests in certain assets, as agreed upon by the TCEH Plan Proponents and the EFH Debtors and the EFIH Debtors in accordance with the Plan Support Agreement) (collectively, the "Contributed TCEH Assets") to the Preferred Stock

---

[15] The applicable rate is 2.24% for Mat 2016.

Entity in exchange for the Preferred Stock Entity's (a) common stock and (b) the Reorganized TCEH Sub Preferred Stock.[16]

Immediately thereafter, and pursuant to a prearranged and binding agreement, Reorganized TCEH will sell all of the Reorganized TCEH Sub Preferred Stock in exchange for Cash to third party investors, *provided*, *however*, that Holders of TCEH First Lien Claims shall not be permitted to purchase the Reorganized TCEH Sub Preferred Stock. This sale will cause Reorganized TCEH's contribution of the Contributed TCEH Assets to be taxable, because Reorganized TCEH will not have control of the Preferred Stock Entity for purposes of section 351 of the IRC.  The tax basis of such assets should be increased by the amount of the gain recognized by EFH Corp. in the Spin-Off Preferred Stock Sale.

> **2.**     ***Certain U.S. Federal Income Tax Consequences of the TCEH Plan to Holders of Allowed Claims in Classes Entitled to Vote on the TCEH Plan.***

As discussed below, the tax consequences of the TCEH Plan to Holders of Allowed Claims will depend on a variety of factors.

Recoveries under the TCEH Plan are significantly different, and these differences will change the U.S. federal income tax consequences to Holders of certain Claims.

As an initial matter, whether the TCEH Plan is fully or partially taxable to Holders of Allowed Claims will depend on whether the Claims being surrendered and the non-cash consideration in exchange for such Claims, constitute stock or "securities" of the EFH Debtors, EFIH Debtors or TCEH Debtors for U.S. federal income tax purposes.  Whether a Claim that is surrendered and non-cash received pursuant to the TCEH Plan constitute "securities" is determined based on all the facts and circumstances.  Most authorities have held that the length of the term of a debt instrument at initial issuance is an important factor in determining whether such instrument is a security for U.S. federal income tax purposes.  These authorities have indicated that a term of less than five years is evidence that the instrument is not a security, whereas a term of 10 years or more is evidence that it is a security.  There are numerous other factors that could be taken into account in determining whether a debt instrument is a security, including the security for payment, the creditworthiness of the obligor, the subordination or lack thereof with respect to other creditors, the right to vote or otherwise participate in the management of the obligor, convertibility of the instrument into equity of the obligor, whether payments of interest are fixed, variable, or contingent, and whether such payments are made on a current basis or accrued.  The Private Letter Ruling may address whether certain Claims surrendered pursuant to the TCEH Plan constitute "securities."

The character of any recognized gain as capital gain or ordinary income will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Claim in such U.S. Holder's hands (including whether the Claim constitutes a capital asset), whether the Claim was purchased at a discount, whether and to what extent the U.S. Holder has previously claimed a bad debt deduction with respect to its Claim, and whether any part of the Holder's recovery is treated as being on account of accrued but unpaid interest.  Accrued interest, market discount and the deductibility of capital losses are discussed below.

> (a)     **Consequences to U.S. Holders of Claims.**

> (i)     **Consequences to U.S. Holders of TCEH First Lien Secured Claims (Class 3).**

Pursuant to the TCEH Plan, in full satisfaction and discharge of their Claims, Holders of Allowed Class 3 Claims will receive their pro rata share of (a) Reorganized TCEH Common Stock; (b) cash; (c) New Reorganized TCEH Debt (if applicable); and (d) Spin-Off TRA Rights (if any).  The treatment of a U.S. Holder of such a Claim will vary depending on whether a Class 3 Claim is a "security."

---

[16]     The Reorganized TCEH Sub Preferred Stock will have voting rights under certain limited circumstances. Furthermore, depending on how the Spin-Off Tax Receivable Agreement, if requested by the TCEH Plan Proponents is structured, the Preferred Stock Entity may also issue Spin-Off TRA Rights to TCEH pursuant to the Spin-Off Preferred Stock Sale.

(A)       **Treatment if a Class 3 Claim Constitutes a "Security."**

If a Class 3 Claim constitutes a "security," then the exchange of such a Claim for Reorganized TCEH Common Stock generally should be treated as part of the Divisive G Reorganization and distribution under section 355 of the IRC.  Other than with respect to any amounts received that are attributable to accrued but untaxed interest, a U.S. Holder of such a Claim should recognize gain (but not loss), to the extent of the lesser of (a) the amount of gain realized from the exchange (generally equal to the fair market value of all of the consideration, including cash, received minus the Holder's adjusted basis, if any, in the Claim) or (b) the cash and the fair market value of "other property" received in the distribution that is not permitted to be received under sections 355 and 356 of the IRC without the recognition of gain.[17]

With respect to non-cash consideration that is treated as a "stock or security" of the TCEH Debtors, such U.S. Holder should obtain a tax basis in such property, other than any such amounts treated as received in satisfaction of accrued but untaxed interest, equal to (a) the tax basis of the Claim surrendered, less (b) the cash received, plus (c) gain recognized (if any).  The holding period for such non-cash consideration should include the holding period for the surrendered Claims.

With respect to non-cash consideration that is not treated as a "stock or security" of the TCEH Debtors, U.S. Holders should obtain a tax basis in such property, other than any amounts treated as received in satisfaction of accrued but untaxed interest (or original issue discount), equal to the property's fair market value as of the date such property is distributed to the U.S. Holder.  The holding period for any such property should begin on the day following the receipt of such property.

The tax basis of any non-cash consideration treated as received in satisfaction of accrued but untaxed interest should equal the amount of such accrued but untaxed interest, but in no event should such basis exceed the fair market value of the stock received in satisfaction of accrued but untaxed interest.  The holding period for the non-cash consideration treated as received in satisfaction of accrued but untaxed interest should not include the holding period of the debt instrument constituting the surrendered Claim, and should begin on the day following the receipt of such property.

(B)       **Treatment if a Class 3 Claim Does Not Constitute a "Security."**

Certain Class 3 Claims may not constitute "securities."  A U.S. Holder of such a Claim should be treated as receiving its distribution under the TCEH Plan in a taxable exchange under section 1001 of the IRC.  Accordingly, other than with respect to any amounts received that are attributable to accrued but untaxed interest, a U.S. Holder of such a Claim would recognize gain or loss equal to the difference between (a) the sum of the cash and the fair market value of the "other property" received in exchange for the Claim and (b) such U.S. Holder's adjusted basis, if any, in such a Claim.

Such U.S. Holder should obtain a tax basis in the non-cash consideration received, other than with respect to any amounts received that are attributable to accrued but untaxed interest, equal to the fair market value of the non-cash consideration as of the receipt of such property.

The tax basis of any non-cash consideration treated as received in satisfaction of accrued but untaxed interest should equal the amount of such accrued but untaxed interest, but in no event should such basis exceed the fair market value of the stock received in satisfaction of accrued but untaxed interest.

The holding period of the non-cash consideration should begin on the day following the receipt of such property.

---

[17] It is unclear where the Spin-Off TRA Rights, in particular, constitute "securities."  The TCEH Debtors currently intend to take the position that the Spin-Off TRA Rights do not constitute "securities."

(ii)    **Consequences to U.S. Holders of TCEH Unsecured Debt Claims and General Unsecured Claims Against the TCEH Debtors Other Than EFCH (Class 4).**

A U.S. Holder of a Class 4 Claim should be treated as receiving its distribution under the TCEH Plan in a taxable exchange under section 1001 of the IRC.  Accordingly, other than with respect to any amounts received that are attributable to accrued but untaxed interest, a U.S. Holder of such a Claim would recognize gain or loss equal to the difference between (a) their portion of the TCEH Cash Payment received in exchange for the Claim and (b) such U.S. Holder's adjusted basis, if any, in such a Claim.

## D.    Accrued Interest.

To the extent that any amount received by a U.S. Holder of a surrendered Allowed Claim under the TCEH Plan is attributable to accrued but unpaid interest and such amount has not previously been included in the U.S. Holder's gross income under such U.S. Holder's method of accounting, such amount should be taxable to the U.S. Holder as ordinary interest income.  Conversely, a U.S. Holder of a surrendered Allowed Claim may be able to recognize a deductible loss to the extent that any accrued interest on the debt instruments constituting such a Claim was previously included in the U.S. Holder's gross income, but was not paid in full by the TCEH Debtors.

The extent to which the consideration received by a U.S. Holder of a surrendered Allowed Claim will be attributable to accrued interest on the debt instrument constituting the surrendered Allowed Claim is unclear.  U.S. Holders of Claims with accrued interest are urged to consult with their tax advisors regarding the allocation of the consideration.

## E.    Market Discount.

Under the "market discount" provisions of sections 1276 through 1278 of the IRC, some or all of any gain realized by a U.S. Holder exchanging the debt instruments constituting its Allowed Claim may be treated as ordinary income (instead of capital gain), to the extent of the amount of accrued "market discount" on the debt constituting the surrendered Allowed Claim.

In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest," or (b) in the case of a debt instrument issued with "original issue discount," its adjusted issue price, by at least a *de minimis* amount (equal to 0.25% of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, multiplied by the number of remaining whole years to maturity).

Any gain recognized by a U.S. Holder on the taxable disposition (determined as described above) of a debt instrument that it acquired with market discount should be treated as ordinary income to the extent of the market discount that accrued thereon while such debt instrument was considered to be held by the U.S. Holder (unless the U.S. Holder elected to include market discount in income as it accrued).  To the extent that a surrendered debt instrument that had been acquired with market discount is exchanged in a tax-free or other reorganization transaction for other property (as may occur here, if the Spin-Off is effectuated pursuant to Article IV.B.2 of the TCEH Plan any market discount that accrued on such debts but was not recognized by the U.S. Holder may be required to be carried over to the property received therefor and any gain recognized on the subsequent sale, exchange, redemption or other disposition of such property may be treated as ordinary income to the extent of the accrued but unrecognized market discount with respect to the exchanged debt instrument. These rules are complex and the application of the market discount rules to Allowed Claims is uncertain. U.S. Holders of Allowed Claims should consult their own tax advisors regarding the application of the market discount rules to their Claims.

## F.    Limitation on Use of Capital Losses.

A holder of an Allowed Claim who recognizes capital losses as a result of the distributions under the TCEH Plan will be subject to limits on the use of such capital losses. For a non-corporate holder, capital losses may be used to offset any capital gains (without regard to holding periods), and also ordinary income to the extent of the lesser of (a) $3,000 ($1,500 for married individuals filing separate returns) or (b) the excess of the capital losses over the capital

gains. A non-corporate holder may carry over unused capital losses and apply them against future capital gains and a portion of their ordinary income for an unlimited number of years. For corporate holders, capital losses may only be used to offset capital gains. A corporate holder that has more capital losses than may be used in a tax year may carry back unused capital losses to the three years preceding the capital loss year or may carry over unused capital losses for the five years following the capital loss year.

**G.      Withholding and Reporting.**

The TCEH Debtors will withhold all amounts required by law to be withheld from payments made pursuant to the TCEH Plan.  The TCEH Debtors will comply with all applicable reporting requirements of the IRC.  In general, information reporting requirements may apply to distributions or payments made to a Holder of a Claim.  Additionally, backup withholding, currently at a rate of 28%, generally will apply to such payments unless such U.S. Holder provides a properly executed IRS Form W-9 or otherwise establishes an exemption.  Any amounts withheld under the backup withholding rules will be allowed as a credit against such U.S. Holder's federal income tax liability and may entitle such U.S. Holder to a refund from the IRS, provided that the required information is timely provided to the IRS.

In addition, from an information reporting perspective, U.S. Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds.  U.S. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the TCEH Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE TCEH PLAN ARE COMPLEX.  THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF U.S. FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION.  ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE TCEH PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL, OR NON-U.S. TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.

Dated:  [May   ], 2016

Respectfully submitted,


By: _____[DRAFT]_____
Name:

Prepared by:

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990

*Counsel to the TCEH Plan Proponents*