**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> ENERGY FUTURE HOLDINGS CORP., et al., <br><br> Debtors. | Chapter 11 <br><br> Case No. 14-10979 (CSS) <br><br> (Jointly Administered) <br><br> **Re: Docket No. 8423** |

**OBJECTION OF THE BANK OF NEW YORK MELLON, AS INDENTURE TRUSTEE, AND THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS INDENTURE TRUSTEE, TO THE DISCLOSURE STATEMENT FOR THE AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ET AL., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Bank of New York Mellon ("BNYM"), in its capacity as the PCRB Trustee,[1] and The Bank of New York Mellon Trust Company, N.A. ("BNYMTC" and, together with BNYM, "BNY"), in its capacity as the EFCH 2037 Notes Trustee, object to the *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 8423) (as may be further amended or supplemented, the "Disclosure Statement"). In support of the objection, BNY respectfully states as follows.

**I.    PRELIMINARY STATEMENT**

1.    The Disclosure Statement accompanying the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 8421) (as may be further amended or supplemented, the "New Plan") lacks adequate information as required by section 1125(b) of title 11 of the United States Code (the "Bankruptcy Code").

2.    The New Plan classifies holders of PCRB Claims in Class C4 TCEH Unsecured Debt Claims. The New Plan offers holders of PCRB Claims distributions consisting of an

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code.

undisclosed percentage of the TCEH Cash Payment. The Disclosure Statement also contains no clear, direct information concerning (a) the expected amount of the TCEH Cash Payment on account of the PCRB Claims (and the percentage recovery) if holders of the PCRB Claims are not entitled to share in the distributions on account of the TCEH First Lien Deficiency Claims or (b) the expected amount of the TCEH Cash Payment on account of the PCRB Claims (and the percentage recovery) if holders of the PCRB Claims are entitled to share in the distributions on account of the TCEH First Lien Deficiency Claims. The absence of such important information renders the Disclosure Statement inadequate as to the distribution that will be received by holders of PCRB Claims. Holders of PCRB Claims should not have to decide whether to vote to accept or reject the New Plan without such critical information.

3. The New Plan also classifies holders of EFCH 2037 Note Claims in Class C6 General Unsecured Claims Against EFCH. The New Plan provides that holders of EFCH 2037 Note Claims will be cancelled and released without any distribution on account of such claims. Although holders of the EFCH 2037 Note Claims are deemed to reject the Plan, the Disclosure Statement should contain an explanation and analysis of the basis upon which the EFCH 2037 Note Claims have been nullified.

## II.    FACTUAL BACKGROUND

### A.    The PCRBs

4. BNYM serves as the PCRB Trustee with respect to multiple series of pollution control revenue bonds or pollution control bonds (the "PCRBs"). As of the Petition Date, principal amounts outstanding under the PCRBs totaled approximately $875 million in the aggregate, with interest rates generally ranging from 0.29% to 8.25%, and original maturities

ranging from June 1, 2021, to March 1, 2041.  At this time, there are no outstanding letters of credit under the TCEH Credit Agreement.  The PCRBs are unsecured obligations of TCEH.

5. The PCRB Trustee timely filed unsecured proofs of claim relating to the PCRBs (excluding any PCRBs that have been repurchased by TCEH and held in a custody account (the "Repurchased PCRBs")) in the aggregate amount of $1.087 billion, including principal, plus interest and fees.

### B. EFCH 2037 Notes

6. BNYMTC serves as the EFCH 2037 Notes Trustee under that certain indenture, dated as of December 1, 1995, for the EFCH 2037 Notes originally due January 30, 2037, by and among EFCH, as issuer, and BNYMTC, as EFCH 2037 Notes Trustee.  As of the Petition Date, approximately $9 million in principal amount of the EFCH 2037 Notes were outstanding, including approximately $1 million of floating-rate notes and $8 million of 8.175% notes.  The EFCH 2037 Notes are unsecured obligations of EFCH and are subordinate to EFCH's other prepetition funded indebtedness.

7. The EFCH 2037 Notes Trustee's fees and expenses, however, are *not* subordinated.  See EFCH 2037 Notes Indenture at § 1502 ("Nothing in Section 1501 or in this Section 1502 shall apply to claims of, or payments to, the Trustee under or pursuant to Section 907.").

8. The EFCH 2037 Notes Trustee timely filed unsecured proofs of claim relating to the EFCH 2037 Notes in the aggregate amount of $9.0 million, plus interest and fees.

### C. The Debtors' Plans and the Settlement Agreement

9. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtors are operating

their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases.

10. On December 9, 2015, the Bankruptcy Court entered the *Order (Amended) Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "Confirmation Order").

11. On May 1, 2016, a "Plan Support Termination Event" occurred rendering the *Sixth Amended Joint Plan of Reorganization* (the "Confirmed Plan") and the Confirmation Order "null and void" under Article IX.D of the Confirmed Plan and paragraph 147 of the Confirmation Order.

12. On May 1, 2016, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* and an accompanying *Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code,* which was subsequently amended by the New Plan.[2]

### 1. Treatment of the PCRB Claims in Class C4 TCEH Unsecured Debt Claims

13. The New Plan classifies the PCRB Claims[3] in Class C4 TCEH Unsecured Debt Claims. In addition to the PCRB Claims, Class C4 TCEH Unsecured Debt Claims also include (a) the TCEH First Lien Deficiency Claim, (b) the TCEH Second Lien Note Claims, and (c) the TCEH Unsecured Note Claims.

---

[2] Capitalized terms used, but not defined in this section, have the meanings ascribed to such terms, as appropriate, in the New Plan.

[3] The New Plan excludes from Class C4 TCEH Unsecured Debt Claims, the Repurchased PCRBs.

14. With respect to the Class C4 TCEH Unsecured Debt Claims, the New Plan provides, in full and final satisfaction, settlement, release, and discharge of and in exchange for such claims, each holder of a Class C4 TCEH Unsecured Debt Claim shall receive a *pro rata* share of the TCEH Cash Payment. *See* New Plan at p. 63-64; Disclosure Statement at p. 123. The relevant dollar amount of such *pro rata* distributions and the percentage recover on account of the PCRB Claims are blank in the New Plan and Disclosure Statement.

15. The New Plan also incorporates the terms of the Settlement Agreement. The TCEH First Lien Deficiency Claims in an undisclosed amount are classified as Class C4 TCEH Unsecured Debt Claims. As provided in the Settlement Agreement, the holders of the TCEH First Lien Deficiency Claims purport to "waive" any recovery on account of their Class C4 TCEH Unsecured Debt Claims for the benefit of the holders of Allowed TCEH Unsecured Note Claims, Allowed TCEH Second Lien Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH (collectively, the "<u>Beneficiary-Claimants</u>"), not for the benefit of the PCRBs. *See* Disclosure Statement, p. 104; New Plan, p. 70; Settlement Agreement at § 2.2(b). Thus, the New Plan treats the PCRB Claims differently than the other unsecured claims against TCEH.

16. The Settlement Agreement, however, provides that

> (x) if the Bankruptcy Court (or other court of competent jurisdiction) determines that the Limited Waiver cannot be for the benefit of only the Beneficiary-Claimants, or (y) the Required TCEH Unsecured Noteholders, the Required TCEH Second Lien Noteholders, and the TCEH Official Committee each agree, in consultation with the Required TCEH First Lien Creditors, that the Limited Waiver should benefit any non-Beneficiary-Claimants (in whole or in part), then the Limited Waiver shall be for the benefit of the Beneficiary-Claimants and such other holders of Allowed Unsecured Claims against the TCEH Debtors as ordered by such court or agreed to by the Required TCEH Unsecured Noteholders, the Required TCEH Second Lien Noteholders, and the TCEH Official Committee.

*See* Settlement Agreement at § 2.2(b).

### 2. Treatment of the EFCH 2037 Notes Claim in Class C6 General Unsecured Claims Against EFCH

17. The New Plan classifies the EFCH 2037 Notes Claims as Class C6 General Unsecured Claims Against EFCH. Class C6 General Unsecured Claims against EFCH include holders of any Allowed Unsecured Claims against EFCH that are not otherwise paid in full pursuant to an order of the Bankruptcy Code, including the EFCH 2037 Note Claims, but excluding (a) Administrative Claims against EFCH; (b) Priority Tax Claims against EFCH; (c) Intercompany Claims against EFCH; (d) Other Priority Claims against EFCH; and (e) DIP Claims. The EFCH 2037 Note Claims are contractually subordinated to other Claims against EFCH, including EFCH's guarantee of the TCEH First Lien Debt.

18. With respect to the Class C6 General Unsecured Claims Against EFCH, the New Plan provides, without explanation, that such Claims shall be canceled and released without any distribution on account of such Claims. Disclosure Statement, pp. 20-21, 123-124.

19. Notably, the Allowed TCEH Second Lien Note Claims also are subordinate to the TCEH First Lien Debt. The Disclosure Statement, however, does not indicate why the EFCH 2037 Note Claims receive no distribution, including any sharing in the "waived" TCEH First Lien Deficiency Claims while the holders of TCEH Second Lien Note Claims share in the "waiving" of such deficiency claims.

20. The EFCH 2037 Note Claims are impaired and deemed to reject the New Plan with respect to their Class C6 General Unsecured Claims Against EFCH.

### III. OBJECTIONS

#### A. The Disclosure Statement Must Provide Adequate Information

21. Section 1125(b) of the Bankruptcy Code requires that a disclosure statement in solicitation of a plan must contain "adequate information." *See* 11 U.S.C. § 1125(b). Section

1125(a) of the Bankruptcy Code defines "adequate information," in relevant part, as "information of a kind, and in sufficient detail" as "would enable a *hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan*[.]"  11 U.S.C. § 1125(a) (emphasis added).

22.     "Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated."  *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.3d 414, 417 (3d Cir. 1988) (declaring that the importance of such disclosure is "underlaid by the reliance placed upon the disclosure statement by the creditors and the court").

23.     What constitutes adequate information varies from case to case.  *See Oneida Motor Freight, Inc.*, 848 F.3d at 417 ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").  Courts in the Third Circuit refuse to approve disclosure statements that lack information a "reasonable hypothetical investor" would require to make an informed decision about a proposed plan.  *See, e.g., Ryan Operations G.P.,* 81 F.3d at 362; *Oneida Motor Freight*, 848 F.2d at 447-48.

24.     Holders of claims in classes that are deemed to reject a plan are entitled to receive a copy of the disclosure statement.  *See* Fed. R. Bankr. P. 3017(d) ("Upon approval of a disclosure statement--except to the extent that the court orders otherwise with respect to one or more *unimpaired* classes of creditors or equity security holders--the debtor in possession . . . shall mail to all creditors . . . (2) the disclosure statement approved by the court[.]") (emphasis added).

25.     A disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on the plan. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 322 (3d Cir. 2003). In essence, a disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991). Here, the Disclosure Statement fails to do so and, therefore, lacks "adequate information."

**B.     The Disclosure Statement Lacks Adequate Information Regarding Class C4 TCEH Unsecured Debt Claims**

26.     The Disclosure Statement does not quantify in dollars (or as a percentage of the PCRB Claims) the distribution on account of the PCRB Claims under the New Plan. The New Plan offers holders of PCRB Claims distributions consisting of a *pro rata* share of the TCEH Cash Payment, but the Disclosure Statement does not disclose the dollar amount or percentage of such payment. *See* New Plan at pp. 63-64; Disclosure Statement at p. 21.

27.     The Disclosure Statement does not provide any information regarding the reduced distribution (in terms of dollars or percentage recovery) that holders of allowed PCRB Claims would receive as a result of being excluded from the group of "Beneficiary Claimants." The Disclosure Statement also does not provide information regarding the distribution to holders of allowed PCRB Claims if this Court requires (or the PSA Parties agree) that the holders of the PCRB Claims share *pari passu* in the distributions on account of the TCEH First Lien Deficiency Claims. *See* Disclosure Statement at 107.

28.     A prior disclosure statement in these cases provided information regarding the distribution that holders of allowed PCRB Claims would receive if they were excluded from the group of "Beneficiary Claimants" as compared to the distribution the holders of allowed PCRB

Claims would receive if they did share *pari passu* in the distributions on account of the TCEH First Lien Deficiency Claims. For example, the *Disclosure Statement for the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (Docket No. 6124) (the "Prior Disclosure Statement") provided "Allowed Class C4 Claims other than PCRB Claims: 6.8% – 44.9% Allowed PRCB Claims: 2.9% – 20.7%. *See* Prior Disclosure Statement at p. 23.

29. The Prior Disclosure Statement expounded as follows:

> These estimated recovery ranges take into account the waiver of the TCEH First Lien Deficiency Claims set forth in the Plan, the payment of postpetition interest at the Federal Judgment Rate with respect to the Postpetition Interest Claims, and the exercise by Holders of Allowed TCEH First Lien Secured Claims of the Rights to purchase $700 million in the aggregate of New EFH Common Stock pursuant to the Rights Offering, for the illustrative values of the Rights and Reorganized EFH Common Stock at various illustrative enterprise values described in the Letter from the TCEH Committee attached hereto as **Exhibit M**, portions of which have been reproduced below:

| **Range of Illustrative Estimated Recoveries** | | | | | | |
|---|---|---|---|---|---|---|
| **Illustrative Reorganized EFH Enterprise Value:** | **$19.0bn** | **$20.0bn** | **$21.0bn** | **22.0bn** | **23.0bn** | **24.0bn** |
| $9.5bn Allowed TCEH First Lien Deficiency Claims | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.1% | 29.7% | 37.3% | 44.9% |
| Allowed PCRB Claims | 2.9% | 6.1% | 9.3% | 12.5% | 15.8% | 19.0% |
| $8.1bn Allowed TCEH First Lien Deficiency Claims | | | | | | |
| Allowed Class C4/C5 Claims other than PCRB Claims | 6.8% | 14.4% | 22.0% | 29.5% | 37.1% | 44.7% |
| Allowed PCRB Claims | 3.1% | 6.6% | 10.1% | 13.6% | 17.1% | 20.7% |

> These illustrative estimated recoveries contain numerous assumptions that, if altered, could significantly alter the results and do not reflect any discount for the time value of money or take into consideration creditor expectations on their new money investments in connection with the exercise of the Rights. For example, if postpetition interest is paid with respect to the Postpetition Interest Claims at the non-default contract rate rather than the Federal Judgment Rate, recoveries to Holders of Allowed

> Class C4 Claims other than PCRB Claims could be reduced by as much as 4.6% and Holders of Allowed PCRB Claims by as much as 2.1%. Likewise, if the TCEH First Lien Deficiency Claims were waived for the benefit of both the Holders of TCEH Deficiency Recipient Claims and the Holders of PCRB Claims, recoveries to Holders of Allowed Class C4 Claims other than PCRB Claims could be reduced by between .4% and 2.9%, and recoveries to Holders of Allowed PCRB Claims could be increased by between 3.3% and 23.0% on the chart above (i.e., recoveries for all Class C4 and Class C5 creditors could be between 6.4% and 42% based on the illustrative enterprise values above). The Debtors take no position with respect to these estimated illustrative recoveries or the range of illustrative enterprise values of Reorganized EFH, and you should consult your own legal and/or financial advisor(s) for advice regarding this information. These estimated illustrative recoveries and the range of illustrative enterprise values of Reorganized EFH shall not be or be deemed to be an admission or representation as to the value of the Rights or the New EFH Common Stock or the enterprise value of Reorganized EFH.
>
> * * *
>
> The TCEH First Lien Deficiency Claims are being waived for the benefit of the TCEH Deficiency Recipients, which is composed of Holders of TCEH Unsecured Note Claims, TCEH Second Lien Note Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH and does not include Holders of Allowed PCRB Claims. Subject to final agreement on the amount of the Allowed TCEH First Lien Deficiency Claim, it is anticipated that Holders of Allowed PCRB Claims will receive approximately 45.2% of the distribution that they would have otherwise received if the TCEH First Lien Deficiency Claim were waived for the benefit of all Holders of Class C4 Claims, including the Allowed PCRB Claims.

<u>See</u> Prior Disclosure Statement at pp. 23-24, n.13 and n.14.

30. This type of disclosure also should be provided in the current Disclosure Statement. Such information is required for a reasonable "hypothetical investor" to decide whether to accept or reject the New Plan.

    **C.    The Disclosure Statement Lacks Adequate Information Regarding Class C6 General Unsecured Claims Against EFCH**

31. The Disclosure Statement states that the EFCH 2037 Note Claims will be cancelled and released without any distribution on account of such Claims, but does not provide

- 10 -

any meaningful explanation for this disparate treatment.  Significantly, the New Plan treats general unsecured claims against EFCH differently and less favorably than general unsecured claims against the other TCEH Debtors, including the TCEH Second Lien Note Claims, which also are subordinate to the TCEH First Lien Claims.  The Disclosure Statement is inadequate as to the basis for the contrasting treatment of the EFCH 2037 Note Claims.

32. Holders of the EFCH 2037 Note Claims should receive a more meaningful, detailed explanation of the reasons they are receiving no distribution under the New Plan.

## IV. RESERVATION OF RIGHTS

33. BNY reserves its rights with respect to objections to confirmation of the New Plan.

## V. CONCLUSION

For the foregoing reasons, BNY respectfully requests that the Court (a) require that the Disclosure Statement be amended to address the issues raised in this objection, and (b) grant such further relief to BNY as is appropriate.

Dated:  May 31, 2016  
Wilmington, Delaware

Respectfully submitted,

REED SMITH LLP

By: */s/ Kurt F. Gwynne*  
Kurt F. Gwynne (No. 3951)  
1201 Market Street, Suite 1500  
Wilmington, DE 19801  
Telephone: (302) 778-7500  
Facsimile: (302) 778-7575  
Email:  kgwynne@reedsmith.com

Counsel to The Bank of New York Mellon, in its capacity as the PCRB Trustee, and The Bank of New York Mellon Trust Company, N.A., in its capacity as the EFCH 2037 Notes Trustee