**Exhibit B**

# Deloitte.

**Deloitte & Touche LLP**
Certified Public Accountants
1800 North Military Trail
Suite 200
Boca Raton, FL 33431-6368
USA

Tel: +1 561 962 7700
Fax: +1 561 962 7750
www.deloitte.com

May 23, 2016

Mr. John Young
President and Chief Executive Officer
Board of Managers of Texas Competitive Electric Holdings Company LLC
Energy Plaza
1601 Bryan Street
Dallas, TX 75201

Mr. Paul Keglevic
Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer
Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, TX 75201

Mr. Terry Nutt
Senior Vice President, Finance
La Frontera Holdings, LLC
Energy Plaza
1601 Bryan Street
Dallas, TX 75201

Dear Mr. Young, Mr. Keglevic, and Mr. Nutt:

Deloitte & Touche LLP ("D&T" or "we" or "us") is pleased to serve as independent auditors for La Frontera Holdings, LLC (the "Company" or "you" or "your"). Mr. Ivan Meads will be responsible for the services that we perform for the Company hereunder.

The services to be performed by D&T pursuant to this engagement are subject to the terms and conditions set forth herein and in the accompanying appendices. Such terms and conditions shall be effective as of the date of the commencement of such services.

## Audit of Financial Statements

Our engagement is to perform an audit in accordance with auditing standards generally accepted in the United States of America ("generally accepted auditing standards"). The objective of an audit conducted in accordance with generally accepted auditing standards is to express an opinion on whether the Company's financial statements for the year ended December 31, 2015 are presented fairly, in all material respects, in accordance with accounting principles generally accepted in the United States of America ("generally accepted accounting principles").

Appendix A contains a description of the auditor's responsibilities and the scope of an audit in accordance with generally accepted auditing standards.

Member of
**Deloitte Touche Tohmatsu**

**D&T Reports**

We expect to issue a written report upon the completion of our audit. Our ability to express an opinion or to issue any report as a result of this engagement and the wording thereof will, of course, be dependent on the facts and circumstances at the date of our report. If, for any reason, we are unable to complete our audit or are unable to form or have not formed an opinion, we may decline to express an opinion or decline to issue any report as a result of this engagement.  If we are unable to complete our audit, or if any report to be issued by D&T as a result of this engagement requires modification, the reasons for this will be discussed with the Board of Managers of Texas Competitive Electric Holdings Company LLC ("the Board of Managers"), of which the Company is a subsidiary, Energy Future Holdings Corp.'s audit committee (the "Audit Committee"), and the Company's management.

**Management's Responsibilities**

Appendix B describes management's responsibilities.

**Responsibility of Board of Managers**

As independent auditors of the Company, we acknowledge that the Board of Managers is directly responsible for the appointment, compensation, and oversight of our work and, accordingly, except as otherwise specifically noted, we will report directly to the Board of Managers. You have advised us that the services to be performed under this engagement letter, including, where applicable, the use by D&T of affiliates or related entities as subcontractors in connection with this engagement, have been approved by the Board of Managers and the Audit Committee in accordance with the Board of Managers and the Audit Committee's established preapproval policies and procedures.

**Communications with Board of Managers**

Appendix C describes various matters that we are required by generally accepted auditing standards to communicate with the Board of Managers and management.

**Fees**

We anticipate our fee to be approximately $165,000.  In our engagement letter with Energy Future Holdings Corp. dated April 5, 2016, we obtained approval for fees related to these and similar types of transactions expected to be performed with respect to the audit and review services due to the continuation of the Chapter 11 cases.  These services are defined as "Out of Scope" services therein and provide for accounting and financial reporting research and consultation services related to the restructuring and emergence transactions and related financing activities customarily provided by the independent auditor as may be required in large and complex Chapter 11 cases such as that of Energy Future Holding Corp.

D&T will charge the "base audit" hourly rates set forth below for the services performed pursuant to this engagement letter.

| Personnel Classification | Applicable Hourly Rates (base audit) | Applicable Hourly Rates (consultation) |
|---|---|---|
| Partner/Principal/Director | $ 365 | $ 720 |
| Senior Manager | $ 290 | $ 620 |
| Manager | $ 265 | $ 540 |
| Senior Staff | $ 215 | $ 425 |
| Staff | $ 175 | $ 350 |

In addition, engagement-related expenses, including travel, report production, delivery services, and other expenses incurred in providing the services, will be included in the total amount billed.

Our estimated fees are based on certain assumptions, including (1) timely and accurate completion of the requested entity participation schedules and additional supporting information, (2) no inefficiencies during the audit or changes in scope caused by events that are beyond our control, (3) the effectiveness of internal control over financial reporting throughout the period under audit, (4) a minimal level of audit adjustments (recorded or unrecorded), and (5) no changes to the timing or extent of our work plans. We will notify you promptly of any circumstances we encounter that could significantly affect our estimate and discuss with you any additional fees, as necessary.

The fees for this engagement would ordinarily be billed according to an agreed upon schedule. However, prior to the effective date of a plan of reorganization of the Company's parent, the timing of billings will be subject to any applicable orders, rules or procedures of the United States Bankruptcy Court for the District of Delaware.

**Inclusion of D&T Reports or References to D&T in Other Documents or Electronic Sites**

If the Company intends to publish or otherwise reproduce in any document any report issued as a result of this engagement, or otherwise make reference to D&T in a document that contains other information in addition to the audited financial statements (e.g., in a periodic filing with a regulator, in a debt or equity offering circular, or in a private placement memorandum), thereby associating D&T with such document, the Company agrees that its management will provide D&T with a draft of the document to read and obtain our approval for the inclusion or incorporation by reference of any of our reports, or the reference to D&T, in such document before the document is printed and distributed. The inclusion or incorporation by reference of any of our reports in any such document would constitute the reissuance of such reports. The Company also agrees that its management will notify us and obtain our approval prior to including any of our reports on an electronic site.

Our engagement to perform the services described herein does not constitute our agreement to be associated with any such documents published or reproduced by or on behalf of the Company.

Any request by the Company to reissue any report issued as a result of this engagement, to consent to any such report's inclusion or incorporation by reference in an offering or other document, or to agree to any such report's inclusion on an electronic site will be considered based on the facts and circumstances existing at the time of such request. The estimated fees outlined herein do not include any procedures that would need to be performed in connection with any such request. Should D&T agree to perform such procedures, fees for such procedures would be subject to the mutual agreement of the Company and D&T.

\* \* \* \* \*

The parties acknowledge and agree that D&T is being engaged under this engagement letter to provide only the services described herein. Should the Company or the Board of Managers request, and should D&T agree to provide, services (including audit and review services) beyond those described herein, such services will constitute a separate engagement and will be governed by a separate engagement letter.

This engagement letter, including Appendices A through E attached hereto and made a part hereof, constitutes the entire agreement between the parties with respect to this engagement and supersedes any other prior or contemporaneous agreements or understandings between the parties, whether written or oral, relating to this engagement.

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,

*Deloitte & Touche LLP*

Acknowledged and approved on behalf of
the Board of Managers of Texas Competitive Electric Holdings Company LLC:

By: _____

Title: _____

Date: _____


Acknowledged and approved on behalf of
Energy Future Holdings Corp.:

By: _____

Title: _____

Date: _____


Accepted and agreed to by La Frontera Holdings, LLC:

By: _____

Title: _____

Date: _____


  cc: Billie Williamson, EFH Corp. Audit Committee

If the above terms are acceptable and the services described are in accordance with your understanding, please sign the copy of this engagement letter in the space provided and return it to us.

Yours truly,


Acknowledged and approved on behalf of
the Board of Managers of Texas Competitive Electric Holdings Company LLC:

By: _____

Title: Director TCEH

Date: 5/18/16


Acknowledged and approved on behalf of
Energy Future Holdings Corp.:

By: _____

Title: CFO EFH

Date: 5/18/16


Accepted and agreed to by La Frontera Holdings, LLC:

By: _____

Title: Senior Vice President - Finance

Date: 5/18/16


cc: Billie Williamson, EFH Corp. Audit Committee

5

**APPENDIX A**

**AUDITOR'S RESPONSIBILITIES AND SCOPE OF AN AUDIT IN ACCORDANCE WITH GENERALLY ACCEPTED AUDITING STANDARDS**

This Appendix A is part of the engagement letter dated May 18, 2016, between Deloitte & Touche LLP and La Frontera Holdings, LLC and approved by the Board of Managers of Texas Competitive Electric Holdings Company LLC.

**AUDITOR'S RESPONSIBILITIES**

Our responsibilities under generally accepted auditing standards include forming and expressing an opinion about whether the financial statements that have been prepared by management with the oversight of the Board of Managers are presented fairly, in all material respects, in accordance with generally accepted accounting principles. The audit of the financial statements does not relieve management or the Board of Managers of their responsibilities.

**Scope of an Audit**

Generally accepted auditing standards require that we plan and perform the audit to obtain reasonable, rather than absolute, assurance about whether the financial statements as a whole are free from material misstatement, whether caused by fraud or error. However, because of the inherent limitations of an audit, together with the inherent limitations of internal control, an unavoidable risk exists that some material misstatements may not be detected, even though the audit is properly planned and performed in accordance with generally accepted auditing standards. We have no responsibility to plan and perform the audit to obtain reasonable assurance that misstatements, whether caused by fraud or error, that are not material to the financial statements as a whole are detected.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on our judgment, including the assessment of the risks of material misstatement of the financial statements, whether caused by fraud or error. In making those risk assessments, we consider internal control relevant to the Company's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

**APPENDIX B**

**MANAGEMENT'S RESPONSIBILITIES**

This Appendix B is part of the engagement letter dated May 18, 2016, between Deloitte & Touche LLP and La Frontera Holdings, LLC and approved by the Board of Managers of Texas Competitive Electric Holdings Company LLC.

**Financial Statements**

Management is responsible for the preparation, fair presentation, and overall accuracy of the financial statements in accordance with generally accepted accounting principles. In this regard, management has the responsibility for, among other things:

- Selecting and applying the accounting policies

- Designing, implementing, and maintaining effective internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error

- Identifying and ensuring that the Company complies with the laws and regulations applicable to its activities and informing us of all instances of identified or suspected noncompliance with such laws or regulations

- Providing us with (1) access to all information of which management is aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, (2) additional information that we may request from management for the purpose of our audit, and (3) unrestricted access to personnel within the Company from whom we determine it necessary to obtain audit evidence

**Management's Representations**

We will make specific inquiries of the Company's management about the representations embodied in the financial statements. In addition, we will request that management provide us with the written representations the Company is required to provide to its independent auditors under generally accepted auditing standards. The responses to those inquiries and the written representations of management are part of the evidential matter that D&T will rely on in forming its opinion on the Company's financial statements.

**Process for Obtaining Preapproval of Services**

Management is responsible for the coordination of obtaining the preapproval of the Board of Managers and the Audit Committee, in accordance with the Audit Committee's preapproval process, for any services to be provided by D&T to the Company.

**Program and Subscription Services**

D&T makes available to clients and nonclients various educational and informational programs, seminars, tools, and related services, such as live programs, webcasts (including the Dbriefs webcast series), podcasts, websites, database subscriptions (including some that provide access to D&T proprietary information and tools that offer technical support and advice), checklists, research reports, surveys, published books and other materials, applications, local office seminars, Technical Library, CXO conferences, or Deloitte Energy Conferences (collectively, "programs and subscriptions"). D&T may provide these programs and subscriptions free of charge, for a nominal fee, or for a fee at prevailing market rates. In some instances, D&T may include complimentary rooms or meals as part of programs or seminars. Any programs and subscriptions requested by the Company and the related fees (if any) would be subject to the mutual agreement of the Company and D&T and may be described in a separate written agreement. The Company hereby confirms that any use or receipt by the Company of these programs and subscriptions is approved by the Board of Managers and the Audit Committee in accordance with the Board of Managers' and Audit Committee's established preapproval policies and procedures.

**Independence Matters**

In connection with our engagement, D&T, management, and the Board of Managers and the Audit Committee will assume certain roles and responsibilities in an effort to assist D&T in maintaining independence and ensuring compliance with the securities laws and regulations. D&T will communicate to its partners, principals, and employees that the Company is an attest client. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, has policies and procedures in place for the purpose of ensuring that neither the Company nor any such subsidiary or other entity will act to engage D&T or accept from D&T any service that either has not been subjected to their preapproval process or that under SEC or other applicable rules would impair D&T's independence. All potential services are to be discussed with Mr. Meads and Mr. Thomas Kilkenny, the lead client service partner for Texas Competitive Electric Holdings Company LLC.

In connection with the foregoing paragraph, the Company agrees to furnish to D&T and keep D&T updated with respect to a corporate tree that identifies the legal names of the Company's affiliates, as defined in AICPA *Code of Professional Conduct* Interpretation No. 101-18 (e.g., parents, subsidiaries, investors, or investees) ("Company Affiliates"), together with the ownership relationship among such entities. Such information will be maintained in a database accessible by D&T in connection with their compliance with AICPA or other applicable independence rules.

Management will coordinate with D&T to ensure that D&T's independence is not impaired by hiring former or current D&T partners, principals, or professional employees for certain positions. Management of the Company will ensure that the Company, together with its subsidiaries and other entities that comprise the Company for purposes of the consolidated financial statements, also has policies and procedures in place for purposes of ensuring that D&T's independence will not be impaired by hiring a former or current D&T partner, principal, or professional employee in an accounting role or financial reporting oversight role that would cause a violation of securities laws and regulations. Any employment opportunities with the Company for a former or current D&T partner, principal, or professional employee should be discussed with Mr. Meads and approved by the Audit Committee before entering into substantive employment conversations with the former or current D&T partner, principal, or professional employee, if such opportunity relates to serving (1) as chief executive officer, controller, chief financial officer, chief accounting officer, or any equivalent position for the Company or in a

comparable position at a significant subsidiary of the Company; (2) on the board of directors of the Company or Energy Future Holdings Corp.; (3) as a member of the Board of Managers or Audit Committee; or (4) in any other position that would cause a violation of securities laws and regulations.

For purposes of the preceding sections entitled "Independence Matters", "Process for Obtaining Preapproval of Services," and "Program and Subscription Services,", "D&T" shall mean Deloitte & Touche LLP and its subsidiaries; Deloitte Touche Tohmatsu Limited, its member firms, the affiliates of Deloitte & Touche LLP, Deloitte Touche Tohmatsu Limited and its member firms; and, in all cases, any successor or assignee.

**APPENDIX C**

**COMMUNICATIONS WITH THE BOARD OF MANAGERS**

This Appendix C is part of the engagement letter dated May 18, 2016, between Deloitte & Touche LLP and La Frontera Holdings, LLC and approved by the Board of Managers of Texas Competitive Electric Holdings Company LLC.

We are responsible for communicating with the Board of Managers significant matters related to the audit that are, in our professional judgment, relevant to the responsibilities of the Board of Managers in overseeing the financial reporting process.

In connection with the foregoing, we will communicate to the Board of Managers any fraud we identify or suspect that involves (1) management, (2) employees of the Company who have significant roles in internal control, or (3) other employees of the Company when the fraud results in a material misstatement of the financial statements. In addition, we will communicate with the Board of Managers any other matters related to fraud that are, in our professional judgment, relevant to their responsibilities. We will communicate to management any fraud perpetrated by lower-level employees of which we become aware that does not result in a material misstatement of the financial statements; however, we will not communicate such matters to the Board of Managers, unless otherwise directed by the Board of Managers.

We will also communicate to the Board of Managers matters involving the Company's noncompliance with laws and regulations that have come to our attention during the course of our audit, other than when such matters are clearly inconsequential.

We will also communicate in writing to management and the Board of Managers any significant deficiencies or material weaknesses in internal control (as defined in generally accepted auditing standards) that we have identified during the audit, including those that were remediated during the audit.

Generally accepted auditing standards do not require us to design procedures for the purpose of identifying other matters to communicate with the Board of Managers. However, we will communicate to the Board of Managers matters required by AICPA AU-C 260, *The Auditor's Communication with Those Charged with Governance*.

**APPENDIX D**

**GENERAL BUSINESS TERMS**

This Appendix D is part of the engagement letter to which these terms are attached (the engagement letter, including its appendices, the "engagement letter") dated May 18, 2016, between Deloitte & Touche LLP and La Frontera Holdings, LLC and approved by the Board of Managers of Texas Competitive Electric Holdings Company LLC.

1. **Independent Contractor.** D&T is an independent contractor and D&T is not, and will not be considered to be, an agent, partner, fiduciary, or representative of the Company, the Audit Committee or the Board of Managers.

2. **Survival.** The agreements and undertakings of the Company and the Board of Managers contained in the engagement letter will survive the completion or termination of this engagement.

3. **Assignment and Subcontracting**. Except as provided below, no party may assign any of its rights or obligations (including, without limitation, interests or claims) relating to this engagement without the prior written consent of the other parties. The Company and the Board of Managers hereby consent to D&T subcontracting a portion of its services under this engagement to any affiliate or related entity, whether located within or outside of the United States. Professional services performed hereunder by any of D&T's affiliates or related entities shall be invoiced as professional fees, and any related expenses shall be invoiced as expenses, unless otherwise agreed.

4. **Severability.** If any term of the engagement letter is unenforceable, such term shall not affect the other terms, but such unenforceable term shall be deemed modified to the extent necessary to render it enforceable, preserving to the fullest extent permissible the intent of the parties set forth herein.

5. **Force Majeure.** No party shall be deemed to be in breach of the engagement letter as a result of any delays or non-performance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including, without limitation, fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

6. **Confidentiality.** To the extent that, in connection with this engagement, D&T comes into possession of any confidential information of the Company ("Confidential Information"), D&T shall not disclose such Confidential Information to any third party without the Company's consent, using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The Company and the Board of Managers hereby consent to D&T disclosing such Confidential Information (1) as may be required by law or regulation, or to respond to governmental inquiries, provided that D&T will, to the extent permitted by applicable law or regulation, notify the Company of such a disclosure so the Company may seek a protective order or other appropriate remedy and/or waive D&T's compliance with the non-disclosure provisions of this paragraph, and further provided that if, in the absence of such a protective order or other remedy or receipt of such a waiver by the Company, D&T is compelled to disclose such Confidential Information, D&T will only disclose that portion

of such Confidential Information that is required to be disclosed, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; (2) to the extent such Confidential Information (i) is or becomes publicly available other than as the result of a disclosure in breach hereof, (ii) becomes available to D&T on a nonconfidential basis from a source that D&T believes is not prohibited from disclosing such Confidential Information to D&T, (iii) is already known by D&T without any obligation of confidentiality with respect thereto, or (iv) is developed by D&T independently of any disclosures made to D&T hereunder; or (3) to contractors providing administrative, infrastructure, and other support services to D&T and subcontractors providing services in connection with this engagement, in each case, whether located within or outside of the United States, provided that such contractors and subcontractors have agreed to be bound by confidentiality obligations similar to those in this paragraph.

7. **Dispute Resolution.** Any controversy or claim between the parties arising out of or relating to the engagement letter or this engagement (a "Dispute") shall be resolved by mediation or binding arbitration as set forth in the Dispute Resolution Provision attached hereto as Appendix E and made a part hereof.

**APPENDIX E**

**DISPUTE RESOLUTION PROVISION**

This Appendix E is part of the engagement letter dated May 18, 2016, between Deloitte & Touche LLP and La Frontera Holdings, LLC and approved by the Board of Managers of Texas Competitive Electric Holdings Company LLC.

This Dispute Resolution Provision sets forth the dispute resolution process and procedures applicable to the resolution of Disputes and shall apply to the fullest extent of the law, whether in contract, statute, tort (such as *negligence*), or otherwise.

**Mediation:** All Disputes shall be first submitted to nonbinding confidential mediation by written notice to the parties, and shall be treated as compromise and settlement negotiations under the standards set forth in the Federal Rules of Evidence and all applicable state counterparts, together with any applicable statutes protecting the confidentiality of mediations or settlement discussions. If the parties cannot agree on a mediator, the International Institute for Conflict Prevention and Resolution ("CPR"), at the written request of a party, shall designate a mediator.

**Arbitration Procedures:** If a Dispute has not been resolved within 90 days after the effective date of the written notice beginning the mediation process (or such longer period, if the parties so agree in writing), the mediation shall terminate and the Dispute shall be settled by binding arbitration to be held in Dallas, Texas. The arbitration shall be solely between the parties and shall be conducted in accordance with the CPR Rules for Non-Administered Arbitration that are in effect at the time of the commencement of the arbitration, except to the extent modified by this Dispute Resolution Provision (the "Rules").

The arbitration shall be conducted before a panel of three arbitrators. Each of the Company and Deloitte & Touche LLP shall designate one arbitrator in accordance with the "screened" appointment procedure provided in the Rules, and the two party-designated arbitrators shall jointly select the third in accordance with the Rules. No arbitrator may serve on the panel unless he or she has agreed in writing to enforce the terms of the engagement letter (including its appendices) to which this Dispute Resolution Provision is attached and to abide by the terms of this Dispute Resolution Provision. Except with respect to the interpretation and enforcement of these arbitration procedures (which shall be governed by the Federal Arbitration Act), the arbitrators shall apply the laws of the State of Texas (without giving effect to its choice of law principles) in connection with the Dispute. The arbitrators may render a summary disposition relative to all or some of the issues, provided that the responding party has had an adequate opportunity to respond to any such application for such disposition. Discovery shall be permitted in connection with the arbitration to the extent authorized by the arbitrators in accordance with the Rules.

All aspects of the arbitration shall be treated as confidential, as provided in the Rules. Before making any disclosure permitted by the Rules, a party shall give written notice to all other parties and afford such parties a reasonable opportunity to protect their interests. Further, judgment on the arbitrators' award may be entered in any court having jurisdiction.

**Costs:** Each party shall bear its own costs in both the mediation and the arbitration; however, the parties shall share the fees and expenses of both the mediators and the arbitrators equally.