**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) | (Jointly Administered) Hearing Date: June 27, 2016 at 10:00 a.m. Objection Deadline: June 20, 2016 at 4:00 p.m. |

**MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*,
FOR ENTRY OF A SECOND ORDER APPROVING AN INCREASE IN THE
LIMIT ON THE DEBTORS' AUTHORITY TO PAY NON-INSIDER SEVERANCE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order") approving an increase of the Non-Insider Severance Cap (defined herein), to total an amount not to exceed $55 million in the aggregate. In support of this Motion, the Debtors submit the *Declaration of Carrie Kirby, Executive Vice President of Human Resources and Administration of Energy Future Holdings Corp., in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of a Second Order Approving an Increase in the Limit on the Debtors' Authority to Pay Non-Insider Severance* (the "Second Kirby Declaration") and respectfully state as follows.

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court")

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The bases for the relief requested in this Motion are sections 105(a), 363(b) and 503(c) of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Relief Requested**

4. On February 18, 2016 the Debtors filed the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Approving an Increase in the Limit on the Debtors' Authority to Pay Non-Insider Severance and (B) Authorizing the Debtors to Pay Insider Severance in Accordance with the Insider Severance Procedures* [D.I. 7894] (the "Severance Motion") seeking to honor postpetition obligations in accordance with the Severance Program (as herein defined) to non-insiders and insiders, the latter subject to enumerated procedures. On March 9, 2016, the Court approved the *Order (A) Approving an Increase in the Limit on the Debtors' Authority to Pay Non-Insider Severance and (B) Authorizing the Debtors to Pay Insider Severance in Accordance with the Insider Severance Procedures* [D.I. 7981] (the "Severance Order") authorizing an increase of the limit on non-insider severance relief (the

"Non-Insider Severance Cap") to total an amount not to exceed $35 million in the aggregate and authorizing the Debtors to honor obligations to insiders in accordance with the Insider Severance Procedures (as defined in the Severance Order).

5. By this Motion, the Debtors seek limited, additional relief with respect to non-insiders only.[2] Specifically, the Debtors seek entry of a second order approving an increase to the Non-Insider Severance Cap, in an amount not to exceed $55 million in the aggregate.

**Background**

6. On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98].

---

[2] For the avoidance of doubt, the Debtors are not seeking relief with respect to any insiders.

**I.     Non-Insiders Under the Severance Program.**

7.     As described in the Severance Motion with regard to the Debtors' non-insider employees, the Debtors have historically maintained and continue to maintain a severance program on behalf of (a) non-executive, non-union employees, (b) union employees, and (c) certain key management personnel (together, the "Severance Program"),[3] and have historically maintained and continue to maintain a severance plan on behalf of certain key management personnel at the level of vice president and above (the "Executive Severance Plan"). The Debtors continue to honor severance obligations to non-insiders under the approved Severance Program—including the Executive Severance Plan—in accordance with the existing Non-Insider Severance Cap.

8.     In light of the continued depression in the energy industry, causing increased economic pressures on the Debtors' businesses, the Debtors now seek an additional $20 million increase in the Non-Insider Severance Cap, which would provide Debtors the authority to honor up to $55 million in postpetition obligations in the aggregate, to non-insiders under the Severance Program.

9.     The requested increase in the Non-Insider Severance Cap will allow the Debtors the necessary flexibility to effectively run their business and efficiently respond to a challenging

---

[3]   The Severance Program as applicable to non-insiders is further detailed in the *Motion of Energy Future Holdings Corp., et al., for Entry of Interim and Final Order Authorizing (A) the Debtors to (I) Pay Certain Prepetition Compensation and Reimbursable Employee Expenses, (II) Pay and Honor Employee and Retiree Medical and Similar Benefits and (III) Continue Employee and Retiree Benefit Programs, and (B) Modifying the Automatic Stay* (the "Wages Motion") [D.I. 25], the *Declaration of Carrie Kirby, Executive Vice President of Human Resources and Administration of Energy Future Holdings Corp., et al., in Support of the Non-Insider Compensation Programs Motion and the Severance Relief Requested in the Wages Motion* (the "2014 Non-Insider Compensation Kirby Declaration") [D.I. 1231], and Severance Motion. *See also* Tr. of Hr'g, 22:15-20, *In re Energy Future Holdings Corp., et al.*, No. 14 10979 (CSS) (Bankr. D. Del. June 30, 2014) ("Very quickly with respect to severance the debtors initially sought authority to continue their severance programs in ordinary course, and there are three severance programs. One is for rank and file employees, the second is for union employees, . . . and the third is for -- it's called the executive severance plan.").

business climate in a manner that has the best chance of preserving employee morale at a critical time for the businesses.  In exchange for a short term cost, the Debtors' estates will benefit from a long-term cost reduction as the Debtors are able to make difficult but necessary business decisions regarding their workforce without impairing the positive morale the Debtors have worked diligently to maintain since filing these chapter 11 cases, more than two years ago. Moreover, the Debtors will be able to reassure their employees of their value by ensuring that their severance obligations will be honored.

10. ***Drivers For an Increased Non-Insider Severance Cap.***  This second request to increase the Non-Insider Severance Cap is not made lightly.  The request stems from further challenges in the Debtors' business environment, developments in their chapter 11 cases, and follows several weeks of discussions and diligence.  Through the Severance Motion and Severance Order, the Debtors sought—and this Court approved—a $20 million increase in the Non-Insider Severance Cap, for an aggregate amount not to exceed $35 million, that the Debtors believed at the time to be enough to allow the Debtors sufficient flexibility through their emergence from these chapter 11 cases.  However, with a continuously depressed business climate and developments in the Debtors' chapter 11 cases—including the filing of a new plan of reorganization and supporting disclosure statement—that will likely push the Debtors' emergence into the second half of 2016, additional, non-insider severance obligations, which were unforeseen as of the filing of the Severance Motion, have arisen and are anticipated.

11. It is important that the Debtors possess the flexibility and authority to be able to make difficult employment decisions and further streamline their workforce.  The Debtors have experienced a rise in ordinary course severance activity related to the current business climate, and anticipate the possibility of additional severances in the upcoming months.  In addition, the

Debtors have found it necessary and advisable to offer certain employees in targeted parts of the organization severance payments for voluntary departures—which has resulted in total severance payments approaching the current Non-Insider Severance Cap. The Debtors believe that such payments provide an effective tool to maintain a cooperative relationship with their employees while combating a persistently challenging business environment.

12. To date, the Debtors have honored approximately $29.7 million[4]—of the $35 million available under the existing Non-Insider Severance Cap—in postpetition obligations to non-insiders under the Severance Program. Primarily due to the challenging current market and business climate, as well as the changes in these chapter 11 cases, the Debtors seek authority to honor up to $55 million in postpetition obligations to non-insiders under the Severance Program in the aggregate—an increase of $20 million from the existing Non-Insider Severance Cap.

## Basis for Relief

**I. The Debtors Have a Sound Business Purpose for Seeking an Increase in the Non-Insider Severance Cap.**

13. Section 363(b)(1) of the Bankruptcy Code provides that a debtor "may use, sell or lease, other than in the ordinary course of business, property of the estate" if the debtor demonstrates a sound business justification for such uses. *In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012) (noting that it is "well-settled" that a debtor may use its assets outside the ordinary course where such use "represents the sound exercise of business judgment"); *Computer Sales Int'l, Inc. v. Fed. Mogul Global (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003) (bankruptcy court "should approve a debtor's use of assets outside the ordinary course of

---

[4] This includes amounts not yet paid, but attributable to, voluntary departures.

business" upon a showing of "a sound business justification"). Accordingly, once a debtor articulates a valid business justification for the proposed use of estate property, the bankruptcy court shall give great weight to that judgment. *See In re Commercial Mortg. and Fin., Co.*, 414 B.R. 389, 394 (Bankr. N.D. Ill. 2009) (noting that a debtor in possession "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation").

14. In the Third Circuit, courts have authorized transactions outside the ordinary course of business when the transaction has a sound business purpose and is proposed in good faith. See *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008).

15. Here, the Debtors seek an increase in the Non-Insider Severance Cap primarily on account of continued, depressed market conditions and changes in these chapter 11 cases. The Debtors' employees undoubtedly have concerns regarding their future employment, post-employment benefits, and the general stability of the Debtors' ongoing businesses. Such uncertainty may cause current employees to leave their jobs or prevent new employees from seeking employment with the Debtors. Moreover, if the Debtors' current employees leave their jobs, there is no guarantee that the Debtors could attract new employees of comparable quality or experience. Increasing the Non-Insider Severance Cap will allow the Debtors to reassure their remaining employees of their commitment to honor their severance obligations.

**II.  The Increase in the Non-Insider Severance Cap is Justified by the Facts and Circumstances of these Chapter 11 Cases.**

16. In addition to section 363(c) of the Bankruptcy Code, section 503(c)(3) of the

Bankruptcy Code may apply. Section 503(c)(3) provides, in relevant part:

> [T]here shall neither be allowed, nor paid ... transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. §503(c)(3).

17. The relevant inquiry under section 503(c)(3) is whether an increase in the Non-Insider Severance Cap is "justified by the facts and circumstances of the case." *Id.* Many courts have held that this standard is essentially the same as the business judgment standard that is applied under Section 363(b) of the Bankruptcy Code. *See In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ("Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *Dana Corp.*, 358 B.R. at 576; *Global Home Prods.*, 369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the proposed plans are] intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363."); *In re Mesa Air Grp.*, No. 10-10018, 2010 WL 3810899, at *4 (Bankr. S.D.N.Y. Sept. 24, 2010); *In re Nobex Corp.*, No. 05-20050, 2006 WL 4063024, at *2 (Bankr. D. Del. Jan. 19, 2006). Other courts, however, have determined that section 503(c)(3) is intended to give the court a greater role, requiring that the court make its own determination that the transaction will serve the interests of creditors and the debtor's estate. *See In re Pilgrim's Pride Corp.*, 401 B.R. 229 (Bankr. N.D. Tex. 2009).

18. Increasing the Non-Insider Severance Cap will provide direct and long-term benefits to the Debtors' businesses and estates, as the Debtors will be able to lower their overall cost structure in exchange for short term cash outlays and respond to changing conditions in the

market, while also honoring existing obligations under the Severance Program. As a result, the Debtors will avoid irreparable harm to their relationships with remaining employees and further, harm to their businesses. Any delay or disruption in the payments and benefits provided to severed employees is sure to hamper morale and cooperation among remaining employees. Given the current state of the chapter 11 cases, it is imperative that the Debtors and their employees concentrate their energies and focus on confirming an alternative plan of reorganization and emerging from chapter 11. The Debtors therefore require the ability to make difficult business decisions that could impact their employees without sacrificing the goodwill the Debtors have fostered and will require, going forward. Increasing the Non-Insider Severance Cap, thereby funding payments to employees let go on account of the current business and market climate will ensure employee expectations are met and honor the Debtors' employee relationships.

19. The initial $20 million increase on the Non-Insider Severance Cap was formulated after significant diligence by the Debtors' human resources department, taking account of changed economic circumstances and industry prospects. The Debtors have discussed with counsel and advisors and respectfully submit that the amount of the requested second increase is fair and reasonable. The Debtors request additional amounts only to the extent believed necessary and in good faith; the Debtors will continue to come back to the Court for any incremental increases. The Debtors believe that the additional increase in the Non-Insider Severance Cap is essential and will allow the Debtors to minimize unwanted, future employee attrition and preserve workforce morale and confidence in the face of industry decline.

20. The importance of honoring obligations related to severance has been recognized

by courts in this district and others in granting relief similar to the relief requested in this Motion. *See*, *e.g.*, *See*, *e.g.*, *In re Fairfield Residential LLC,* No. 09-14378 (BLS) (Bankr. D. Del. 2010) (authorizing an increase the cap on severance payments from $160,000 to $390,000 in the aggregate); *In re Sharper Image Corporation*, No. 08-10322 (KG) (Bankr. D. Del. 2008) (approving the debtors' amended severance program); *In re Buffets Holdings, Inc.*, No. 08-10832 (CSS) (Bankr. D. Del. 2008) (same); *In re Mervyn's Holdings, LLC*, No. 08-11586 (KG) (Bankr. D. Del. 2008) (approving the amended severance program for non-insider employees in connection with store closings); *In re Calpine Corporation*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. 2005) (authorizing the debtors to add participants to the severance program, increasing the total cost by $100,000).

21.     Accordingly, for these reasons set forth herein, the Debtors seek entry of the Order approving an increase in the Non-Insider Severance Cap to total an amount not to exceed $55 million in the aggregate.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

22.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Reservation of Rights

23.     The Debtors reserve the right to seek future relief with respect to the Severance Program.

### Notice

24.     The Debtors shall provide notice of this Motion on the date hereof via U.S. first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative

agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the

agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Prior Request

25. As described herein, the relief sought in this Motion and the Order seeks a limited modification of the relief granted by the Court pursuant to the Severance Order.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Dated: June 6, 2016
Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:       collins@rlf.com
             defranceschi@rlf.com
             madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:       edward.sassower@kirkland.com
             stephen.hessler@kirkland.com
             brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:       james.sprayregen@kirkland.com
             marc.kieselstein@kirkland.com
             chad.husnick@kirkland.com
             steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession