**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) ) ) | (Jointly Administered) **Re: D.I. 8666** |

**DECLARATION OF CARRIE KIRBY,
EXECUTIVE VICE PRESIDENT OF HUMAN RESOURCES AND
ADMINISTRATION OF ENERGY FUTURE HOLDINGS CORP., IN
SUPPORT OF THE MOTION OF ENERGY FUTURE HOLDINGS CORP.,
*ET AL.*, FOR ENTRY OF A SECOND ORDER APPROVING AN INCREASE IN THE
LIMIT ON THE DEBTORS' AUTHORITY TO PAY NON-INSIDER SEVERANCE**

Pursuant to 28 U.S.C. § 1746, I, Carrie Kirby, declare as follows:

1. I am the Executive Vice President of Human Resources for Energy Future Holdings Corp. ("EFH Corp."). I have been with EFH Corp. since 2006, and have served as Vice President of Human Resources for TXU Energy Retail Company, LLC, and before that as Human Resources Director. I am generally familiar with EFH Corp.'s day-to-day operations, staffing, organizational development, employee activities, employee-related policies and standards, and related information from my review of records, relevant documents, and information supplied to me by EFH Corp.'s human resources and legal team. I am over the age of 18 and duly authorized to execute this declaration (this "Declaration") on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of a Second*

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

*Order Approving an Increase in the Limit on the Debtors' Authority to Pay Non-Insider Severance* [D.I. 8666] (the "Motion") and respectfully state as follows.

2. The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and transactions relating to human resources. If called to testify, I would testify to the facts set forth herein.

**I.    Non-Insiders Under the Severance Program.**

3. The Debtors have historically maintained and continue to maintain a Severance Program[2] on behalf of (a) non-executive, non-union employees, (b) union employees, and (c) certain key management personnel and have historically maintained and continue to maintain the Executive Severance Plan on behalf of certain key management personnel at the level of vice president and above. The Debtors continue to honor severance obligations to non-insiders under the approved Severance Program—including the Executive Severance Plan—in accordance with the existing Non-Insider Severance Cap.

4. In light of the continued depression in the energy industry, causing increased economic pressures on the Debtors' businesses, the Debtors now seek an additional $20 million increase in the Non-Insider Severance Cap, which would provide Debtors the authority to honor up to $55 million in postpetition obligations in the aggregate, to non-insiders under the Severance Program.[3] The requested increase in the Non-Insider Severance Cap will allow the Debtors the necessary flexibility to effectively run their business and efficiently respond to a challenging business climate in a manner that has the best chance of preserving employee morale at a critical time for the businesses. In exchange for a short term cost, the Debtors'

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3]   For the avoidance of doubt, the Debtors are not seeking relief with respect to any insiders.

estates will benefit from a long-term cost reduction as the Debtors are able to make difficult but necessary business decisions regarding their workforce without impairing the positive morale the Debtors have worked diligently to maintain since filing these chapter 11 cases, more than two years ago.  Moreover, the Debtors will be able to reassure their employees of their value by ensuring that severance obligations will be honored.

5. ***Drivers For an Increased Non-Insider Severance Cap.***  The Debtors have experienced a rise in ordinary course severance activity related to the current business climate, and anticipate the possibility of additional severances in the upcoming months.  The Debtors' employees undoubtedly have concerns regarding their future employment, post-employment benefits, and the general stability of the Debtors' ongoing businesses.  Such uncertainty may cause current employees to leave their jobs or prevent new employees from seeking employment with the Debtors.  Moreover, if the Debtors' current employees leave their jobs, there is no guarantee that the Debtors could attract new employees of comparable quality or experience.  In addition, the Debtors have found it necessary and advisable to offer certain employees in targeted parts of the organization severance payments for voluntary departures—which has resulted in total severance payments approaching the current Non-Insider Severance Cap.  The Debtors believe that such payments provide an effective tool to maintain a cooperative relationship with their employees while combating a persistently challenging business environment.

6. Increasing the Non-Insider Severance Cap will provide direct and long-term benefits to the Debtors' businesses and estates, as the Debtors will be able to lower their overall cost structure in exchange for short term cash outlays and respond to changing conditions in the market, while also honoring existing obligations under the Severance Program.  As a result, the

Debtors will avoid irreparable harm to their relationships with remaining employees and further, harm to their businesses. Any delay or disruption in the payments and benefits provided to severed employees is sure to hamper morale and cooperation among remaining employees. Given the current state of the chapter 11 cases, it is imperative that the Debtors and their employees concentrate their energies and focus on confirming an alternative plan of reorganization and emerging from chapter 11. The Debtors therefore require the ability to make difficult business decisions that could impact their employees without sacrificing the goodwill the Debtors have fostered and will require, going forward. Increasing the Non-Insider Severance Cap, thereby funding payments to employees let go on account of the current business and market climate will ensure employee expectations are met and honor the Debtors' employee relationships.

7.  To date, the Debtors have honored approximately $29.7 million[4]—of the $35 million available under the existing Non-Insider Severance Cap—in postpetition obligations to non-insiders under the Severance Program. Primarily due to the challenging current market and business climate, as well as the changes in these chapter 11 cases, the Debtors seek authority to honor up to $55 million in postpetition obligations to non-insiders under the Severance Program in the aggregate—an increase of $20 million from the existing Non-Insider Severance Cap.

8.  This second request to increase the Non-Insider Severance Cap is not made lightly. The request stems from further challenges in the Debtors' business environment, developments in their chapter 11 cases, and follows several weeks of discussions and diligence. Through the Severance Motion and Severance Order, the Debtors sought—and this Court

---

[4]  This includes amounts not yet paid, but attributable to, voluntary departures.

approved—a $20 million increase in the Non-Insider Severance Cap, for an aggregate amount not to exceed $35 million, that the Debtors believed at the time to be enough to allow the Debtors sufficient flexibility through their emergence from these chapter 11 cases.  However, with a continuing depressed business climate and developments in the Debtors' chapter 11 cases—including the filing of a new plan of reorganization and supporting disclosure statement—that will likely push the Debtors' emergence into the second half of 2016, additional, non-insider severance obligations, which were unforeseen as of the filing of the Severance Motion, have arisen and are anticipated.

9. The Debtors have discussed with counsel and advisors and respectfully submit that this second request is fair and reasonable.  The Debtors request additional amounts only to the extent believed necessary and in good faith; the Debtors will continue to come back to the Court for any incremental increases.  The Debtors believe that a second increase in the Non-Insider Severance Cap is essential and will allow the Debtors to minimize unwanted, future employee attrition and preserve workforce morale and confidence in the face of industry decline.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: June 6, 2016

*/s/ Carrie Kirby*
Carrie Kirby
Executive Vice President, Human Resources
Energy Future Holdings Corp.