# EXHIBIT F

## LIQUIDATION ANALYSIS

## I.    Overview

Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), TCEH's major operating units Luminant and TXU Energy, and TCEH's direct and indirect subsidiaries listed on Exhibit A to the Plan (collectively, the "TCEH Debtors"), with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical liquidation analysis (this "Liquidation Analysis") in connection with the Plan and the TCEH Disclosure Statement.[1] This Liquidation Analysis indicates the estimated recoveries that may be obtained by Classes of Claims and Interests pursuant to a hypothetical liquidation under chapter 7 of the Bankruptcy Code upon disposition of the Debtors' assets as an alternative to the Plan.  Accordingly, asset values discussed herein may be different than amounts referred to in the Plan.  The Liquidation Analysis is based upon the assumptions discussed herein.

The Liquidation Analysis has been prepared assuming that the Debtors' converted their cases from chapter 11 cases to chapter 7 cases on December 31, 2016 (the "Liquidation Date").  The book values referenced herein are as of December 31, 2015 (unless otherwise noted), and are assumed to be representative of the Debtors' assets and liabilities as of the Liquidation Date.

The Liquidation Analysis represents an estimate of recovery values and percentages based upon a hypothetical liquidation of the Debtors as if a chapter 7 trustee(s) (the "Trustee") were appointed by the Bankruptcy Court to convert assets into cash. The determination of the hypothetical proceeds from the liquidation of assets is a highly uncertain process involving the extensive use of estimates and assumptions, which, although considered reasonable by the Debtors and the Debtors' advisors, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors. In instances where assumptions and/or methodologies had to be utilized with regard to developing estimates or presenting the treatment of assets and claims that could potentially benefit one Class of Claims as compared to the alternative, an attempt was made to utilize an assumption that was equitable to both Secured Claims as well as Unsecured Claims.

> **NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS OF A LIQUIDATION OF THE DEBTORS WOULD OR WOULD NOT APPROXIMATE THE ASSUMPTIONS REPRESENTED HEREIN. ACTUAL RESULTS COULD VARY MATERIALLY.**

The Liquidation Analysis envisions the orderly liquidation by the Trustee of substantially all of the Debtors' assets (including interests in certain non-Debtor Affiliates) over a six-month period (eight-month period for EFIH Debtors) beginning with the Liquidation Date, followed by a wind-down of the chapter 7 estates over an additional 12-month period (the "Estate Wind-Down").

---

[1]    Capitalized terms used but not otherwise defined in this Liquidation Analysis have the meanings ascribed to such terms in the *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors* (the "TCEH Disclosure Statement") to which the Liquidation Analysis is attached.

The Liquidation Analysis also includes certain estimates for the tax consequences that may be triggered upon the liquidation, deconsolidation, and sale events that may occur as a result of the hypothetical liquidation described herein.  While it is only possible at this point to estimate the taxes that may be triggered upon a hypothetical liquidation, such taxes may be material.

The Liquidation Analysis does not consider the discounting over time of asset values and creditor recoveries, which would likely result in significantly lower recoveries to Holders of Claims and Interests than those estimated recoveries presented in the Liquidation Analysis.

## II.    Purpose of Analysis.

The Liquidation Analysis is required to be included in the TCEH Disclosure Statement for the purpose of evaluating whether the Plan satisfies the best interests of creditors test under section 1129(a)(7) of the Bankruptcy Code.

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired allowed claim or interest must either:

- accept the plan; or

- receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

### A.    Overview of Analytical Approach.

Except where noted, the Liquidation Analysis was developed from the Debtors' consolidating legal entity balance sheets, as of December 31, 2015, and represents the Debtors' current estimates for asset recovery in a liquidation.  Balance sheet amounts presented are intended to be a proxy for actual balances on the date of a hypothetical liquidation with the exception of certain asset and liability balance sheet accounts that are based on forecasted or other alternative balances as of the Liquidation Date where appropriate (the "Liquidation Balances").

Chapter 7 liquidation adjustments include post-conversion operating cash flow, costs of the Estate Wind-Down, retention pay, trustee fees, and professional fees.

The Liquidation Analysis concludes with a presentation of the overall estimated range of recoveries in a liquidation based on the distribution of the net proceeds of the liquidation in accordance with the claims waterfall required under chapter 7 of the Bankruptcy Code (super-priority claims, secured claims, chapter 11 priority/administrative claims, and general unsecured claims in accordance with the classifications of Claims and Interests under the Plan).

### B.    Liquidation Process.

The Debtors' business liquidation would be conducted in a chapter 7 environment with the Trustee managing the bankruptcy estates to maximize recovery in an expedited process.  The Trustee's first step would be to develop a liquidation plan to generate proceeds from the sale of

entity specific assets for distribution to creditors. The three major components of the liquidation are as follows:

- generation of cash proceeds from asset sales;

- costs related to the orderly liquidation of the business; and

- distribution of net proceeds to claimants.

### 1.    Generation of Cash Proceeds from Assets.

The Liquidation Analysis process begins by determining the amounts of proceeds that would be generated from a hypothetical chapter 7 liquidation.  The Trustee would be required to:

- sell or otherwise monetize the assets owned by the Debtors to one or multiple buyers, which may include (a) sales of logical asset groups, (b) sales of major generation facilities with associated assets, (c) sales on a going-concern basis (where possible), or (d) other sales of assets on a piecemeal basis;

- determine the amount of net proceeds generated by the Estates during the period from conversion to sale closing;

- reconcile each Class of Claims asserted against the Estates to determine the amount of Allowed Claims per Class; and

- distribute net cash proceeds generated from the sale of the Estates' assets in accordance with the absolute priority rule.

### 2.    Costs to Liquidate the Business and Administer the Estate Under Chapter 7 (Liquidation Adjustments).

The gross amount of cash available from a liquidation would be the sum of proceeds from the disposition of the Debtors' assets and cash held by the Debtors at the time of the commencement of the chapter 7 cases. This amount would be adjusted by the following amounts:

- post-conversion operating cash flow (whether positive or negative) generated by each operating segment after conversion to chapter 7 and through disposition of estate assets (assumed to be six months for the EFH Debtors and TCEH Debtors, and eight months for the EFIH Debtors);

- costs related to the retention of certain of the Debtors' personnel during the initial six-month monetization period;

- costs required to execute the Estate Wind-Down (assumed to be 12 months); and

- trustee, professional, and other administrative fees.

### 3. Distribution of Net Proceeds to Claimants.

Any available net proceeds would be allocated to Holders of Claims and Interests in strict priority in accordance with section 726 of the Bankruptcy Code:

- Super-Priority Secured Claims - includes outstanding balances owed under TCEH postpetition Debtor-in-Possession ("DIP") financing facilities;

- Secured Claims - includes Claims arising under the Debtors' secured credit facilities;

- Chapter 11 Administrative & Priority Claims - includes Claims for post-petition accounts payable, post-petition accrued expenses, Claims arising under section 503(b)(9) of the Bankruptcy Code, and certain Unsecured Claims entitled to priority under section 507 of the Bankruptcy Code;

- General Unsecured Claims - includes Claims arising under the Debtors' non-secured long-term debt, non-priority debt, including prepetition trade payables, prepetition intercompany trade debt, and various other unsecured liabilities; and

- Interests - includes Interests in the Debtors.

## III. Summary of Estimated Net Proceeds Methodology and Other Assumptions.

### A. Cash.

Cash at the TCEH Debtors is based on cash balance as of December 31, 2015 adjusted for (i) the projected change in cash from December 31, 2015 to December 31, 2016, and (ii) the recoverability of both prepetition and postpetition restricted cash balances currently providing collateral for undrawn letters of credit. Cash at the EFH Debtors and EFIH Debtors based on cash balance as of December 21, 2015 adjusted for the projected change in cash from December 31, 2015 to December 31, 2016. All projected cash and equivalents on hand are considered to be recoverable at 100%.

### B. Accounts Receivable.

Accounts Receivable balances are based on balances as of December 31, 2015. Net accounts receivable amounts reflect estimates for an allowance for doubtful accounts to eliminate accounts receivable that may not be recoverable and certain other adjustments related to the removal of realized commodity receivables balances (see Section III.E below). The Liquidation Analysis assumes that efforts to recover Accounts Receivable will lead to recoveries between 75% and 100%.

### C. Inventory.

Inventory is specific to the TCEH Debtors and based on balances as of December 31, 2015. Given the commodity nature of both the fuel stock (which includes lignite, coal, and oil) and the gas stored underground, these assets are assumed to have higher overall relative recovery

values than materials and supplies inventory, which are expected to have minimal resale value. Inventory is expected to be recoverable at between 37% and 56%.

### D.    Property, Plant, & Equipment.

Property, plant, and equipment at the TCEH Debtors consists primarily of generation plant assets, and are specific to Luminant entities.

The Liquidation Analysis assumes that the Trustee(s) sell or otherwise monetize the assets owned by the Debtors on a single major generation facility and associated assets basis, in logical groups, or on a piecemeal basis, with sales to multiple buyers during a six-month period. The estimated values realized for such assets reflect, among other things, the following factors:

- projected power prices;

- fuel costs, based on fuel types and heat rates for each unit;

- operating and maintenance costs for each unit;

- long-term supply and demand fundamentals for power;

- long-run cost of new power generation; and

- capital and environmental expenditure requirements.

After a review of the assets, the TCEH Debtors and their advisors concluded that the forced sale of the TCEH Debtors' generating portfolio in the compressed timeframe that may likely prevail during a chapter 7 liquidation could result in a valuation discount relative to "fair value." As such, the Liquidation Analysis assumes recoveries of between 84% to 100% for the generation assets.[2]

---

[2] The recovery estimates reflect the potential practical and pragmatic difficulties of: (a) the limitations on the Trustee of operating the Debtors' businesses in a chapter 7 proceeding; (b) the risk of intervention of regulatory authorities in connection with the operation of a project in a chapter 7 proceeding; and (c) the "as is" nature of the sale given the Trustee's limitation and/or inability to provide representations and warranties as well as indemnification provisions in connection with the sale of a project. The Liquidation Analysis does not reflect the practical difficulties, if any, of combining, or separating and re-combining, assets that may be held by multiple Debtors or any limitations on the assumption and assignment of any contracts and leases. Any such difficulty or additional extension of time to monetize these assets resulting from regulatory authority approvals, or other approvals, would likely further decrease the total value the Trustee could obtain for certain of these assets on a nominal basis, time value of money basis, or both. *See, e.g.*, *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Dec. 18, 2103) [Docket No. 1721, Ex. E] ("…the actual transaction value the Debtors obtained after a thorough, arm's length, forced-sale marketing process over the course of three to six months would need to be discounted by approximately 25 percent to 35 percent… This reduction is consistent with discounts applied in other hypothetical Chapter 7 liquidation analyses regarding large Chapter 11 debtors, given a shorter due diligence period and therefore potentially higher assumed risks…"); *In re NRG Energy, Inc.*, No. 03-13024 (PCB) (Bankr. S.D.N.Y Jul. 28, 2003) [Docket No. 510, Ex. B] (applying 25 to 35 percent discount and citing liquidation analyses in other cases).

Property, plant and equipment at the EFH Debtors consists primarily of certain land and building assets, leasehold improvements and IT software. The majority of these assets have already been billed to the TCEH Debtors via the service bill and a right-to-use liability created in accordance with the Shared Services Agreement. The Liquidation Analysis assumes that the asset amounts that have already been billed are removed, leaving a de minimis amount of remaining assets, primarily consisting of leasehold improvements which are not expected to have much value in a liquidation. The Liquidation Analysis assumes recoveries of between 25% to 75% for these remaining assets.

### E.    Commodity and Hedging and Trading Assets.

As of December 31, 2015, there was less than $10 million in non-current commodity contracts outstanding at the TCEH Debtors covering the period beyond December 31, 2016. Given the uncertainty of achieving any forward unrealized mark-to-market positive position of any existing or new commodity contracts, all realized and unrealized commodity asset and liability impacts have been removed from the Liquidation Analysis.

### F.    Intangible Asset Valuations.

Intangible asset valuations at the TCEH Debtors are specific to the TXU Energy Retail Company LLC legal entity as the holder of the intangible property related to the TXU Energy retail business.  Based on the assumed sale of the Debtors' TXU Energy assets on a going-concern basis over a six-month period.  The Liquidation Analysis assumes recoveries of between 85% to 100% for these intangible assets.

Intangible assets at the EFH Debtors consist primarily of IT software licenses. The majority of these assets have already been billed to the TCEH Debtors via the service bill and a right-to-use liability created in accordance with the Shared Services Agreement. The remaining assets are not deemed to have any value in a liquidation.

### G.    Tax Assets and Tax Consequences of a Liquidation.

The estimated recoveries in the Liquidation Analysis are presented for two different scenarios:  (1) where a "check-the-box" election is assumed not to be made by EFH Corp. for each of its direct and indirect subsidiaries that are currently treated as disregarded entities for federal income tax purposes (other than Oncor Electric Delivery Holdings Company LLC and its direct and indirect subsidiaries) and (2) where a "check-the-box" election is assumed to be made by such currently disregarded entities, effective as of December 31, 2016. Such an election would cause such entities to be taxable as corporations (rather than treated as disregarded entities) for federal income tax purposes from and after the effective time of the election. Certain parties would potentially dispute EFH Corp.'s authority to make such a "check-the-box" election for some or all such entities, and the entities for which a "check-the-box" election would be made could vary and would potentially be determined by the Bankruptcy Court.

Entities that are treated as corporations for federal income tax purposes, including entities for which a "check-the-box" election is made, would be liable for the full tax liability of the "affiliated group" (within the meaning of Section 1504(a)(1) of the Internal Revenue Code) of which EFH Corp. is the common parent (the "<u>EFH Group</u>") to the extent such liability arises

when the entity is treated as a corporation, including any tax liability resulting from (1) the liquidation of the Debtors' assets (generally the difference between the tax basis and the sale price of such assets, i.e., "deconsolidation taxes") and (2) cancellation of indebtedness income that is not excluded from the EFH Group's income because of "excess loss accounts" that would be created upon such "check-the-box" election, as discussed below.  Such tax claims would likely be administrative expenses, resulting in significant dilution of recoveries.  In addition, parties may argue that in a liquidation the amount of deconsolidation taxes can be surcharged against the collateral of the Holders of First Lien Secured Claims.  Litigation on this issue would increase professional costs associated with the liquidation and delay distributions and could affect the sale price obtained for the assets, ultimately resulting in lower recoveries in a liquidation.  If parties succeed in surcharging the collateral, recoveries in a liquidation for Holders of First Lien Secured Claims would be significantly reduced.

The Liquidation Analysis includes an illustrative calculation of estimated deconsolidation taxes of approximately $1.36 billion to $1.90 billion. The actual amount of any deconsolidation taxes would vary depending on, among other things, (1) the sale values for the Debtors' assets (including the Debtors' interests in Oncor, as noted below); (2) available NOLs; and (3) the Debtors' applicable state and federal tax rates. Moreover, this illustrative calculation of estimated deconsolidation taxes makes certain assumptions regarding the potential value of Oncor. These assumptions may be revised and may materially change the potential deconsolidation taxes. The Liquidation Analysis will be updated to reflect such changes. Additionally, the Liquidation Analysis does not reflect any position with respect to the amount, validity, or priority of any potential intercompany claims that any Debtor could attempt to assert against the TCEH Debtors in the event of a taxable sale of the TCEH Debtors' assets.

At the time entities become taxable as corporations as a result of a "check-the-box" election, "excess loss accounts" would be created in the stock of some or all such entities in an amount equaling the excess of (1) certain liabilities that are treated as assumed by such entity over (2) the tax basis of such entity's assets.  The existence of such "excess loss accounts" would cause the cancellation of indebtedness income (if any) realized upon the cancellation of such entities' indebtedness (as well as certain other events) to be included in the EFH Group's taxable income to the extent of the excess loss accounts created in such entities' stock, rather than being excluded from the EFH Group's taxable income pursuant to section 108 of the Internal Revenue Code.  The amount of such liability is subject to significant uncertainty and is not included in this Liquidation Analysis, but any such liability would likely be significant.

**H.      Prepaid and Other Assets.**

The Liquidation Analysis assumes recoveries of between 5% and 10% for prepaid and other assets.

**I.      Intercompany Balances Owed.**

Intercompany balances owed amounts are based on (1) the prepetition intercompany balances owed from an EFH Debtor to any of the other EFH Debtors, amounts owed from an EFIH Debtor to any of the other EFIH Debtors, and amounts owed from a TCEH Debtor to any of the other TCEH Debtor for and (2) the postpetition intercompany balances owed between any

of the Debtors, in each case as of July 31, 2015[3], as recorded on the Debtors' books and records. Intercompany balances excludes prepetition intercompany balances allegedly arising under the Tax Sharing Agreement or any prepetition intercompany balances owed between EFH Debtors and EFIH Debtors, between EFH Debtors and TCEH Debtors, or between EFIH Debtors and TCEH Debtors because claims on account of such prepetition intercompany balances are subject to the global settlement of intercompany claims described below in Section III.N. The Liquidation Analysis assumes that efforts to recover intercompany balances will lead to recoveries between 25% and 75%.

### J.      Investments.

The value of investments at the TCEH Debtors was adjusted to remove the Nuclear Decommissioning Trust that will transfer to the new owner of the nuclear facility and can only be used for the benefit of decommissioning the facility. The remaining value primarily consists of the equity interests in two bankruptcy remote trusts holding certain combustion turbine assets supporting the generation asset portfolio.

The value of investments at the EFH Debtors primarily consists of certain investment assets held in various rabbi trust supporting non-qualified benefit plans, including the supplemental employee retirement plan, salary deferral program and split dollar trust.

The value of investments at the EFIH Debtors consists of EFIH's 80% indirect ownership interests in Oncor. The Liquidation Analysis includes a value of this interest estimated by Evercore Group L.L.C. assuming the value realized in a liquidation would be consistent with the value of the interest if it continued to be held by an entity taxed as a "C corporation" under federal tax law. The estimate also assumes that the deposition of the interest would be structured as a taxable sale. The range of enterprise value assumed for Oncor is $[$XX] billion, resulting in net equity value of the indirect ownership interest in Oncor held by EFIH of [$XX] billion after adjusting for Oncor net debt of [$XX] billion, the 20% Oncor minority ownership interest and EFH Corp. pension liability of [$XX] million, which is assumed to be transferred to Oncor in the Liquidation Analysis as a member of the pension control group since it otherwise could not be satisfied by the EFH Debtors in a liquidation.

The Debtors continue to analyze the value of the Reorganized EFH and Reorganized EFIH under the Plan. The Debtors' ultimate determination with respect to such transactions or analyses may provide additional information that informs the estimate of the value of this interest in a liquidation. For the avoidance of doubt, the Debtors reserve the right to amend or otherwise modify this Liquidation Analysis to reflect such new information in a manner that may materially affect this estimated value.

### K.      Summary of Estimated Liquidation Adjustments.

Post-Conversion Cash Flow: For TCEH Debtors, this adjustment is based on estimated cash flow generated (used) by individual operating Debtor entities for the period from conversion to a chapter 7 to the end of the six-month asset monetization period, based on the

---

[3]      Intercompany balances used herein based on balances as of July 31, 2015.

Debtors' Financial Projections.  For the six-month asset monetization period, no adequate protection interest payments are assumed to be paid by any entities.  For EFIH, an eight-month monetization period is assumed, consisting of a two-month sale process followed by a six-month regulatory approval process. Pursuant to a chapter 7 liquidation environment, certain chapter 11 restructuring adjustments are not expected to occur and have also been adjusted from the free cash flow amounts.  For the TCEH Debtors, Post-Conversion Cash Flow amounts are allocated to each legal entity based on the ratable gross liquidation proceeds generated by legal entity.

> Retention Costs: The retention of a substantial portion of the Debtors' employees would be required during the first six-months of the liquidation to complete an orderly sale of certain of the Debtors' assets on a going-concern basis.  Retention costs are estimated to be 10-25% of projected FY 2017 base labor expenses and payroll taxes.  Retention costs are allocated to each legal entity based on the ratable gross liquidation proceeds generated by legal entity.

> Estate Wind-Down Costs: This adjustment is based on assumed support functions that would be required for the wind-down of the Debtors' estates following monetization of going-concern assets. These Estate Wind-Down functions are assumed to occur over a 12-month period following the asset monetization period.  Certain non-essential functions, including administration, external affairs, and corporate development, are assumed to cease upon the conclusion of the asset monetization period and the commencement of the Estate Wind-Down period.  All other support functions are assumed to continue at heavily reduced proportions to normal operating environments; these functions are assumed to continue to be scaled back over the 12-month Estate Wind-Down period.  Certain key employees may be required to be retained by the Debtors' estates, or via a transition services agreement with the buyer(s) of the assets to perform these functions over the 12-month Estate Wind-Down period. Estate Wind-Down costs are allocated to each legal entity based on the ratable gross liquidation proceeds generated by legal entity

> Professional Fees: A rate of 0.5-1.0% of gross liquidation proceeds is assumed for professional fee expenses.  Professional fee rates are based on a review of recent large-case comparable analyses.

> Trustee Fees: Based on section 326 of Bankruptcy Code, Trustee fees are calculated at 1% of all gross liquidation proceeds in excess of $1 million (for convenience the same rate was calculated on amounts under $1 million).

## L.    Estimated Claim Amounts.

In preparing the Liquidation Analysis, as the Debtors' reconciliation of filed proofs of claims is ongoing and uncertain, the Debtors have estimated an amount of Allowed Claims for each Class based upon a review of the Debtors' balance sheets as of December 31, 2015, adjusted as discussed herein.  As a result of this ongoing claims reconciliation process, which is discussed in Section IV.O.6 of the TCEH Disclosure Statement, the Debtors currently expect the amount of Allowed Claims to generally correspond to the amounts set forth on the Debtors' balance sheets, but there can be no assurances that this convergence will occur.  Subject to the following paragraphs, the estimate of all Allowed Claims in the Liquidation Analysis is based on the par value of those Claims on the Debtors' balance sheets.

The Plan contemplates that Holders of TCEH First Lien Claims will waive any recoveries on account of the TCEH First Lien Deficiency Claims for the benefit of holders of Allowed TCEH Second Lien Note Claims, TCEH Unsecured Note Claims, and General Unsecured Claims Against the TCEH Debtors Other than EFCH.  The Liquidation Analysis assumes that Holders of TCEH First Lien Claims will not waive such recoveries outside the context of the Plan and such Claims will be entitled to share in any distributions Pro Rata with Holders of Unsecured Claims.

The Plan also assumes a $0 Allowed Claim on account of the TCEH Debtors' mining reclamation obligations with the Railroad Commission of Texas.  The TCEH Debtors are current on their reclamation obligations and it is assumed that any purchaser of the TCEH Debtors' assets would assume such obligations in order to maintain the TCEH Debtors' mining permits with the Railroad Commission of Texas.

A liquidation also is likely to trigger certain Claims that otherwise would not exist. Examples of these kinds of Claims include various potential employee Claims (for such items as severance and potential WARN Act Claims), Claims related to the rejection of unexpired leases and executory contracts, and other potential Allowed Claims.  These additional Claims could be significant and some will be entitled to priority in payment over General Unsecured Claims. Those priority Claims may need to be paid in full from the liquidation proceeds before any balance would be made available to pay General Unsecured Claims or to make any distribution in respect of Interests.  No adjustment has been made for these potential claims.

Accordingly, the actual amount of Allowed Claims could be materially different from the amount of Allowed Claims estimated in the Liquidation Analysis.  The estimate of the amount of Allowed Claims set forth in the Liquidation Analysis should not be relied upon for any other purpose, including, any determination of the value of any distribution to be made on account of allowed claims under the Plan.

**M.    Cash Collateral Assumptions.**

The amount of Allowed TCEH First Lien Claims assumes that all adequate protection payments made prior to the Assumed Liquidation Date are recharacterized as principal payments in accordance with the provisions of the Cash Collateral Order.

The Liquidation Analysis assumes no superpriority administrative expense claims are Allowed on account of any Diminution in Value (as defined in the Cash Collateral Order) ("Diminution in Value Claims").  If Diminution in Value Claims were Allowed, the recoveries set forth in the Liquidation Analysis for all other Holders of Claims and Interests junior to such Diminution in Value Claims would be reduced.

**N.    Claims Settlement.**

The Liquidation Analysis reflects entry of the *Order Granting the Motion of Energy Future Holdings Corp.*, et al., *to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [D.I. 7242] (the "Settlement Order"), which resolved the intercompany, lien, and other litigation that is discussed in Section V.H.1 of the TCEH Disclosure Statement, and that is embodied in the Plan, which settlement

resulted in, among other things, TCEH receiving a recovery under the TCEH Settlement Claim up to an aggregate total of $700 million.[4]  Pursuant to Section E of the Settlement Order, the Settlement Order is "final, binding, and effective on all parties in interest in the Debtors' Chapter 11 Cases (including any subsequently appointed chapter 11 or chapter 7 trustee or any representative. . .).  Settlement Order, ¶ E.

Consistent with the Settlement Order, the Liquidation Analysis assumes that the Liens of Holders of TCEH First Lien Claims will not be avoided and that the TCEH First Lien Claims will not be equitably subordinated.

## O.    Unencumbered Assets/Avoidance Actions.

At this time, the Liquidation Analysis does not include any estimates for recovery in a liquidation by the Trustee on account of certain Avoidance Actions and other Causes of Action that could be asserted against Holders of TCEH First Lien Claims, or preference actions (other than potential Avoidance Actions that could be asserted against Holders of TCEH First Lien Claims).  Any amounts received in a liquidation on account of Avoidance Actions and other Causes of Action that could be asserted against Holders of TCEH First Lien Claims would be paid first to Holders of Administrative Claims (until paid in full) and then to Holders of Unsecured Claims. The Debtors estimate that there would be approximately $183 million of unencumbered assets that would be available for distribution in a liquidation, all of which amounts would be distributed first to Holders of Administrative Claims.

## IV.    Conclusion.

**BASED ON THIS HYPOTHETICAL LIQUIDATION ANALYSIS VERSUS THE IMPLIED REORGANIZATION VALUE UNDER THE PLAN, THE DEBTORS' PLAN SATISFIES THE REQUIREMENTS OF 1129(A)(7) OF THE BANKRUPTCY CODE.**

Upon application of the above assumptions and estimates, the assumed recoveries for the TCEH Debtors are summarized in the following table.

### TCEH Debtors[5]

The estimated net proceeds available for distribution to Holders of Claims against and Interests in the TCEH Debtors (including the TXU Energy and Luminant operating entities) in a hypothetical liquidation are assumed to have a range of between $9.2 billion and $10.8 billion,

---

[4]    The Plan contemplates that Holders of TCEH First Lien Claims will waive any recoveries on account of the TCEH First Lien Deficiency Claim.  The Liquidation Analysis assumes that Holders of TCEH First Lien Claims will not waive such recoveries outside the context of the Plan and such Claims will be entitled to share in any distributions Pro Rata with Holders of Unsecured Claims.

[5]    For ease of illustration and comparison with the estimated recoveries pursuant to the Plan, the estimated liquidation recoveries and proceeds waterfall are shown by Debtor grouping.  The Liquidation Analysis also demonstrates that the best interests test is satisfied on an entity-by-entity basis by Debtor as will be established to the extent necessary in connection with the Confirmation process.  For the avoidance of doubt, neither the Plan nor the Liquidation Analysis contemplates the substantive consolidation of any of the Debtors' estates.

with a mid-point of $10.1 billion.  Recoveries to Holders of Claims and Interests by Plan Class are included in the table below.  The liquidation proceeds waterfalls for the TCEH Debtors is attached as **Exhibit 1** (scenario where the "check-the-box" is effective for no currently disregarded entities) and **Exhibit 2** (scenario where the "check-the-box" is effective for all currently disregarded entities).

| Class | Name of Class Under Plan | Description of Class | Percentage Recovery Under the Plan | Recovery Under Hypothetical Liquidation - Low | Recovery Under Hypothetical Liquidation – High |
|---|---|---|---|---|---|
| N/A | TCEH DIP Claims | Holders of Claims under the TCEH DIP Facility | 100.0% | 100.0% | 100.0% |
| N/A | Administrative Claims[6] | Holders of Allowed Administrative Claims against any TCEH Debtor | 100.0% | 4.1% ("check-the-box" effective for no currently disregarded entities) | 4.1% ("check-the-box" effective for no currently disregarded entities) |
| | | | | 2.3% ("check-the-box" effective for all currently disregarded entities) | 2.0% ("check-the-box" effective for all currently disregarded entities) |
| N/A | Deconsolidation Tax Claims | Holders of Deconsolidation Tax Claims against any TCEH Debtor | N/A | 0.0% ("check-the-box" effective for no disregarded entities) | 0.0% ("check-the-box" effective for no disregarded entities) |
| | | | | 6.3% ("check-the-box" effective for all disregarded entities) | 5.2% ("check-the-box" effective for all disregarded entities) |
| N/A | Priority Tax Claim | Holders of any Priority Tax Claim against any TCEH Debtor | N/A | N/A | N/A |

---

[6]    At this time, the Liquidation Analysis does not include any estimates for recovery in a liquidation by the Trustee on account of certain Avoidance Actions and other Causes of Action that could be asserted against Holders of TCEH First Lien Claims, or preference actions (other than potential Avoidance Actions that could be asserted against Holders of TCEH First Lien Claims).  Any amounts received in a liquidation on account of Avoidance Actions and other Causes of Action that could be asserted against Holders of TCEH First Lien Claims would be paid first to Holders of Administrative Claims (until paid in full) and then to Holders of Unsecured Claims.  To the extent that deconsolidation taxes are determined to be entitled to priority over Administrative Claims, the recovery on account of Administrative Claims in a liquidation will be decreased.

| Class | Name of Class Under Plan | Description of Class | Percentage Recovery Under the Plan | Recovery Under Hypothetical Liquidation - Low | Recovery Under Hypothetical Liquidation – High |
|---|---|---|---|---|---|
| C1 | Other Secured Claims Against the TCEH Debtors | Holders of Allowed Other Secured Claims Against the TCEH Debtors | 100.0% | 100.0% | 100.0% |
| C2 | Other Priority Claims Against the TCEH Debtors | Holders of any Allowed Other Priority Claims Against the TCEH Debtors | N/A | N/A | N/A |
| C3 | TCEH First Lien Secured Claims[7] | Holders of any Allowed TCEH First Lien Claim that is Secured | 41.4%[8] | 23.9% ("check-the-box" effective for no currently disregarded entities) / 23.8% ("check-the-box" effective for all currently disregarded entities) | 31.1% ("check-the-box" effective for no currently disregarded entities) / 30.9% ("check-the-box" effective for all currently disregarded entities) |
| C4 | TCEH Unsecured Debt Claims | Holders of any Allowed (a) TCEH First Lien Deficiency Claims; (b) TCEH Second Lien Note Claims; (c) TCEH Unsecured Note Claims; and (d) PCRB Claims | 7.0%[9] | 0.0% ("check-the-box" effective for no currently disregarded entities) / 0.0% ("check-the-box" effective for all currently disregarded entities) | 0.1 % ("check-the-box" effective for no currently disregarded entities) / 0.0% ("check-the-box" effective for all currently disregarded entities) |
| C5 | General Unsecured Claims Against the TCEH Debtors Other than EFCH | Holders of Allowed General Unsecured Claims Against the TCEH Debtors Other than EFCH | 7.0%[10] | 0.0% | 0.0% |

---

[7] At this time, the Liquidation Analysis does not include any estimates for recovery in a liquidation by the Trustee on account of certain Avoidance Actions and other Causes of Action that could be asserted against Holders of TCEH First Lien Claims, or preference actions (other than potential Avoidance Actions that could be asserted against Holders of TCEH First Lien Claims). Any recovery on account of such Avoidance Actions and other Causes of Action would be distributed in a liquidation to Holders of Administrative Claims (and may reduce recoveries by Holders of Class C3 TCEH First Lien Secured Claims in a liquidation).

[8] The estimated recovery under the Plan assumes the midpoint of the valuation of Reorganized TCEH set forth in the Valuation Analysis.

[9] These estimated recoveries are before taking into account the waiver of the TCEH First Lien Deficiency Claims as set forth in the Plan.

| Class | Name of Class Under Plan | Description of Class | Percentage Recovery Under the Plan | Recovery Under Hypothetical Liquidation - Low | Recovery Under Hypothetical Liquidation – High |
|---|---|---|---|---|---|
| **C6** | General Unsecured Claims Against EFCH | Holders of Allowed General Unsecured Claims Against EFCH | 7.0% | 0.0% | 0.0% |
| **C7** | TCEH Debtor Intercompany Claims | Claims held by one TCEH Debtor against another TCEH Debtor | N/A | 0.0% | 0.0% |
| **C8** | Non-TCEH Debtor Intercompany Claims | Claims held by any Debtor other than a TCEH Debtor against the TCEH Debtors | N/A | 0.0% | 0.0% |
| **C9** | Interests in TCEH Debtors other than TCEH and EFCH | Interests in each TCEH Debtor other than Interests in TCEH and EFCH | N/A | 0.0% | 0.0% |
| **C10** | Interests in TCEH and EFCH | Interests in TCEH and EFCH | N/A | 0.0% | 0.0% |

## <u>EXHIBIT 1</u>

**TCEH PROCEEDS WATERFALL**

**"CHECK-THE-BOX" IS EFFECTIVE FOR NO CURRENTLY DISREGARDED
ENTITIES**

**Total EFCH Summary**

*($ in millions)*

| Assets | Notes | 12/31/15 Net Book Value | Adjustments | Liquidation Balance | Recovery Estimate % Low | Middle | High | Recovery Estimate $ Low | Middle | High |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Potential Recovery | | |
| **Gross Liquidation Proceeds:** | | | | | | | | | | |
| Cash | [A] | 2,415 | (542) | 1,874 | 100% | 100% | 100% | 1,874 | 1,874 | 1,874 |
| Accounts Receivable | [B] | 533 | (244) | 289 | 75% | 88% | 100% | 217 | 253 | 289 |
| Inventory | [C] | 428 | - | 428 | 37% | 46% | 56% | 158 | 199 | 240 |
| Property, Plant & Equipment | [D] | 9,260 | (4,427) | 4,833 | 84% | 93% | 100% | 4,070 | 4,516 | 4,818 |
| Commodity and Derivative Assets | [E] | 481 | (481) | - | 0% | 0% | 0% | - | - | - |
| Intangibles / Intellectual Property | [F] | 1,328 | 2,230 | 3,558 | 85% | 94% | 100% | 3,019 | 3,342 | 3,558 |
| Other Assets | [G] [H] | 88 | 7 | 95 | 5% | 8% | 10% | 5 | 7 | 9 |
| Intercompany Balances Owed | [I] | 13 | 152 | 165 | 25% | 50% | 75% | 41 | 83 | 124 |
| Investments | [J] | 959 | (909) | 50 | 100% | 100% | 100% | 50 | 50 | 50 |
| **Total Assets** | | 15,506 | (4,213) | 11,293 | 84% | 91% | 97% | 9,434 | 10,324 | 10,962 |
| | | | | | | Rates | | | | |
| **Less: Liquidation Adjustments** | | | | | Low | Middle | High | | | |
| Post-Conversion Cash Flow | [K] | | | | | | | 82 | 82 | 82 |
| Retention Costs | [K] | | | | | | | (122) | (85) | (49) |
| Estate Wind-Down Costs | [K] | | | | | | | (34) | (34) | (34) |
| Professional Fees | [K] | | | | 1.0% | 0.8% | 0.5% | (94) | (77) | (55) |
| Ch. 7 Trustee Fees | [K] | | | | 1.0% | 1.0% | 1.0% | (94) | (103) | (110) |
| **Total Liquidation Adjustments** | | | | | | | | (262) | (217) | (165) |
| **Net Liquidation Proceeds Available for Distribution to Creditors (ex. Certain Unencumbered Assets / Avoidance Actions)** | | | | | | | | 9,172 | 10,107 | 10,797 |

| | Notes | Claims Low | Middle | High | % Recovery Low | Middle | High | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Less: Superpriority Carve-Out Claims** | [L] | 50 | 50 | 50 | 100.0% | 100.0% | 100.0% | 50 | 50 | 50 |
| Remaining Amount Available for Distribution | | | | | | | | 9,122 | 10,057 | 10,747 |
| **Less: RCT Reclamation Support Carve-out** | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Remaining Amount Available for Distribution | | | | | | | | 9,122 | 10,057 | 10,747 |
| **Less: TCEH DIP Claims** | [L] | 3,500 | 3,500 | 3,500 | 100.0% | 100.0% | 100.0% | 3,500 | 3,500 | 3,500 |
| Remaining Amount Available for Distribution | | | | | | | | 5,622 | 6,557 | 7,247 |
| **Less: Class C1 - Other Secured Claims** | [L] | 86 | 86 | 86 | 99.8% | 100.0% | 100.0% | 86 | 86 | 86 |
| Remaining Amount Available for Distribution | | | | | | | | 5,536 | 6,471 | 7,161 |
| Less: TCEH First Lien Settlement Carveout / Unencumbered Asset Adj. | | | | | | | | (168) | (168) | (168) |
| **Less: Class C3 - TCEH First Liens** | [L] [M] [N] | 22,456 | 22,456 | 22,456 | 23.9% | 28.1% | 31.1% | 5,368 | 6,302 | 6,993 |
| Remaining Amount Available for Distribution | | | | | | | | - | - | - |
| Plus: Recovery of Unencumbered Assets | [O] | | | | | | | 183 | 183 | 183 |
| Adjusted Remaining Amount Available for Distribution | | | | | | | | 183 | 183 | 183 |
| **Less: Superpriority Adequate Protection Lien** | [M] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Remaining Amount Available for Distribution | | | | | | | | 183 | 183 | 183 |
| Plus: Recovery on Avoidance Actions | [N] [O] | | | | | | | - | - | - |
| Adjusted Remaining Amount Available for Distribution | | | | | | | | 183 | 183 | 183 |
| **Less: Admin / Priority Claims** | | | | | | | | | | |
| Administrative Claims | [L] | 4,167 | 4,167 | 4,167 | 4.1% | 4.1% | 4.1% | 172 | 172 | 172 |
| Priority Tax Claims | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Priority Tax Claims (Deconsolidation Tax) | [L] [G] | 1,362 | 1,673 | 1,899 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C2 - Other Priority Tax Claims | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Admin / Priority Claims** | | 5,529 | 5,841 | 6,066 | | | | 172 | 172 | 172 |
| Remaining Amount Available for Distribution | | | | | | | | 11 | 11 | 11 |
| Plus: TCEH First Lien Settlement Carveout | | | | | | | | - | - | - |
| Adjusted Remaining Amount Available for Distribution | | | | | | | | 11 | 11 | 11 |
| **Less: General Unsecured Claims** | | | | | | | | | | |
| Class C3 - TCEH First Liens (Deficiency Claim) | [L] [M] [N] | 17,088 | 16,154 | 15,463 | 0.0% | 0.1% | 0.1% | 8 | 8 | 8 |
| Admin / Priority Claims (Deficiency Claim) | [L] | 5,357 | 5,668 | 5,894 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C4 - TCEH Unsecured Debt Claims (Second Lien Debt) | [L] | 1,648 | 1,648 | 1,648 | 0.0% | 0.0% | 0.0% | 1 | 1 | 1 |
| Class C4 - TCEH Unsecured Debt Claims (Unsecured Debt) | [L] | 6,006 | 6,006 | 6,006 | 0.0% | 0.0% | 0.0% | 2 | 2 | 2 |
| Class C5 - TCEH General Unsecured Claims | [L] | 145 | 145 | 145 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C6 - EFCH General Unsecured Claims | [L] | 10 | 10 | 10 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C7 - TCEH Debtors Intercompany Claims | [L] [I] | 18,538 | 18,538 | 18,538 | 0.0% | 0.0% | 0.0% | 0 | 0 | 0 |
| Class C8 - Non-TCEH Debtors Intercompany Claims | [L] [I] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C9 - Interests in TCEH Debtors Other Than TCEH/EFCH | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C10 - Interests in TCEH and EFCH | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total General Unsecured Claims** | | 48,793 | 48,170 | 47,705 | | | | 11 | 11 | 11 |
| Remaining Amount Available for Distribution | | | | | | | | - | - | - |

## __EXHIBIT 2__

**TCEH PROCEEDS WATERFALL**

**"CHECK-THE-BOX" IS EFFECTIVE FOR ALL CURRENTLY DISREGARDED ENTITIES**

*($ in millions)*

| Assets | Notes | 12/31/15 Net Book Value | Adjustments | Liquidation Balance | Recovery Estimate % Low | Recovery Estimate % Middle | Recovery Estimate % High | Recovery Estimate $ Low | Recovery Estimate $ Middle | Recovery Estimate $ High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Gross Liquidation Proceeds:** | | | | | | | | | | |
| Cash | [A] | 2,415 | (542) | 1,874 | 100% | 100% | 100% | 1,874 | 1,874 | 1,874 |
| Accounts Receivable | [B] | 533 | (244) | 289 | 75% | 88% | 100% | 217 | 253 | 289 |
| Inventory | [C] | 428 | - | 428 | 37% | 46% | 56% | 158 | 199 | 240 |
| Property, Plant & Equipment | [D] | 9,260 | (4,427) | 4,833 | 84% | 93% | 100% | 4,070 | 4,516 | 4,818 |
| Commodity and Derivative Assets | [E] | 481 | (481) | - | 0% | 0% | 0% | - | - | - |
| Intangibles / Intellectual Property | [F] | 1,328 | 2,230 | 3,558 | 85% | 94% | 100% | 3,019 | 3,342 | 3,558 |
| Other Assets | [G] [H] | 88 | 7 | 95 | 5% | 8% | 10% | 5 | 7 | 9 |
| Intercompany Balances Owed | [I] | 13 | 77 | 91 | 25% | 50% | 75% | 23 | 45 | 68 |
| Investments | [J] | 959 | (909) | 50 | 100% | 100% | 100% | 50 | 50 | 50 |
| **Total Assets** | | 15,506 | (4,288) | 11,218 | 84% | 92% | 97% | 9,415 | 10,287 | 10,906 |
| | | | | | **Rates** | | | | | |
| | | | | | Low | Middle | High | | | |
| **Less: Liquidation Adjustments** | | | | | | | | | | |
| Post-Conversion Cash Flow | [K] | | | | | | | 82 | 82 | 82 |
| Retention Costs | [K] | | | | | | | (122) | (85) | (49) |
| Estate Wind-Down Costs | [K] | | | | | | | (34) | (34) | (34) |
| Professional Fees | [K] | | | | 1.0% | 0.8% | 0.5% | (94) | (77) | (55) |
| Ch. 7 Trustee Fees | [K] | | | | 1.0% | 1.0% | 1.0% | (94) | (103) | (109) |
| **Total Liquidation Adjustments** | | | | | | | | (262) | (217) | (164) |
| **Net Liquidation Proceeds Available for Distribution to Creditors (ex. Certain Unencumbered Assets / Avoidance Actions)** | | | | | | | | 9,154 | 10,070 | 10,742 |

| | | Claims Low | Claims Middle | Claims High | % Recovery Low | % Recovery Middle | % Recovery High | Low | Middle | High |
|---|---|---|---|---|---|---|---|---|---|---|
| **Less: Superpriority Carve-Out Claims** | [L] | 50 | 50 | 50 | 100.0% | 100.0% | 100.0% | 50 | 50 | 50 |
| Remaining Amount Available for Distribution | | | | | | | | 9,104 | 10,020 | 10,692 |
| **Less: RCT Reclamation Support Carve-out** | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Remaining Amount Available for Distribution | | | | | | | | 9,104 | 10,020 | 10,692 |
| **Less: TCEH DIP Claims** | [L] | 3,500 | 3,500 | 3,500 | 100.0% | 100.0% | 100.0% | 3,500 | 3,500 | 3,500 |
| Remaining Amount Available for Distribution | | | | | | | | 5,604 | 6,520 | 7,192 |
| **Less: Class C1 - Other Secured Claims** | [L] | 86 | 86 | 86 | 99.7% | 99.9% | 100.0% | 86 | 86 | 86 |
| Remaining Amount Available for Distribution | | | | | | | | 5,518 | 6,434 | 7,106 |
| Less: TCEH First Lien Settlement Carveout / Unencumbered Asset Adj. | | | | | | | | (168) | (168) | (168) |
| **Less: Class C3 - TCEH First Liens** | [L] [M] [N] | 22,456 | 22,456 | 22,456 | 23.8% | 27.9% | 30.9% | 5,349 | 6,266 | 6,937 |
| Remaining Amount Available for Distribution | | | | | | | | - | - | - |
| Plus: Recovery of Unencumbered Assets | [O] | | | | | | | 183 | 183 | 183 |
| Adjusted Remaining Amount Available for Distribution | | | | | | | | 183 | 183 | 183 |
| **Less: Superpriority Adequate Protection Lien** | [M] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Remaining Amount Available for Distribution | | | | | | | | 183 | 183 | 183 |
| Plus: Recovery on Avoidance Actions | [N] [O] | | | | | | | - | - | - |
| Adjusted Remaining Amount Available for Distribution | | | | | | | | 183 | 183 | 183 |
| **Less: Admin / Priority Claims** | | | | | | | | | | |
| Administrative Claims | [L] | 4,167 | 4,167 | 4,167 | 2.3% | 2.1% | 2.0% | 97 | 89 | 84 |
| Priority Tax Claims | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Priority Tax Claims (Deconsolidation Tax) | [L] [G] | 1,362 | 1,673 | 1,899 | 6.3% | 5.6% | 5.2% | 86 | 94 | 99 |
| Class C2 - Other Priority Tax Claims | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Admin / Priority Claims** | | 5,529 | 5,841 | 6,066 | | | | 183 | 183 | 183 |
| Remaining Amount Available for Distribution | | | | | | | | - | - | - |
| Plus: TCEH First Lien Settlement Carveout | | | | | | | | - | - | - |
| Adjusted Remaining Amount Available for Distribution | | | | | | | | - | - | - |
| **Less: General Unsecured Claims** | | | | | | | | | | |
| Class C3 - TCEH First Liens (Deficiency Claim) | [L] [M] [N] | 17,107 | 16,190 | 15,519 | 0.0% | 0.0% | 0.0% | - | - | - |
| Admin / Priority Claims (Deficiency Claim) | [L] | 5,346 | 5,658 | 5,883 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C4 - TCEH Unsecured Debt Claims (Second Lien Debt) | [L] | 1,648 | 1,648 | 1,648 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C4 - TCEH Unsecured Debt Claims (Unsecured Debt) | [L] | 6,006 | 6,006 | 6,006 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C5 - TCEH General Unsecured Claims | [L] | 145 | 145 | 145 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C6 - EFCH General Unsecured Claims | [L] | 10 | 10 | 10 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C7 - TCEH Debtors Intercompany Claims | [L] [I] | 18,538 | 18,538 | 18,538 | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C8 - Non-TCEH Debtors Intercompany Claims | [L] [I] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C9 - Interests in TCEH Debtors Other Than TCEH/EFCH | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Class C10 - Interests in TCEH and EFCH | [L] | - | - | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total General Unsecured Claims** | | 48,801 | 48,196 | 47,749 | | | | - | - | - |
| Remaining Amount Available for Distribution | | | | | | | | - | - | - |