# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 855, 1771, 2083, 2704, 2916, 3380, 3857, 4210, 4958, 5248, 5922, 5923, 6097** |

**STIPULATION AND CONSENT ORDER AMENDING
CERTAIN TERMS OF THE FINAL CASH COLLATERAL ORDER**

Texas Competitive Electric Holdings Company LLC ("TCEH"), Energy Future Competitive Holdings Company LLC ("EFCH"), certain of TCEH's direct and indirect subsidiaries that are debtors and debtors-in-possession in the above-captioned cases (collectively with TCEH and EFCH, the "TCEH Debtors"), Wilmington Trust, N.A., as successor collateral agent (the "First Lien Collateral Agent") and successor administrative agent (the "First Lien Administrative Agent") under that certain Credit Agreement dated as of October 10, 2007 (as amended, modified, or supplemented from time to time), Delaware Trust Company (f/k/a CSC Trust Company of Delaware), as successor indenture trustee (the "First Lien Notes Trustee") under that certain Indenture dated April 19, 2011, for the 11.50% senior secured notes due October 1, 2020, and the ad hoc committee of certain unaffiliated holders of, *inter alia*, first lien senior secured claims against the TCEH Debtors (the "TCEH First Lien Ad Hoc Committee") hereby stipulate and agree as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

A.    On April 29, 2014 (the "Petition Date"), each of the TCEH Debtors filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (this "Court") commencing these chapter 11 cases.  These cases are jointly administered and have been consolidated for procedural purposes only.

B.    The TCEH Debtors continue to manage and operate their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these cases.

C.    On the Petition Date, the TCEH Debtors filed a motion [D.I. 73] (the "Existing DIP Motion") seeking entry of interim and final orders authorizing the TCEH Debtors to enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "Existing DIP Credit Agreement").

D.    On June 6, 2014, the Court entered the *Final Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* [D.I. 856] (as amended, restated, supplemented, or otherwise modified from time to time, the "Existing DIP Order"), which authorized the TCEH Debtors to enter into the Existing DIP Credit Agreement and the other related DIP Documents (as defined in the Existing DIP Credit Agreement).

E.    On June 6, 2014, the Court entered the *Final Order (A) Authorizing Use of Cash Collateral for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Adequate Protection, and (C) Modifying the Automatic Stay* [D.I.

855] (as amended, restated, supplemented or otherwise modified from time to time, including D.I. 5922 and D.I. 5923, the "Final Cash Collateral Order").[2]

F. On June 6, 2016, the TCEH Debtors filed the *Motion of Texas Competitive Electric Holdings Company LLC and Certain of Its Debtor Affiliates, for Entry of Orders (I) (A) Authorizing the TCEH Debtors to (X) Enter into the Postpetition Financing Commitment Letter and the Fee Letter (Y) Pay Associated Fees and Expenses, and (B) Granting Related Relief and (II) (A) Approving Postpetition Financing For Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing Refinancing of Secured Post-Petition Debt and (D) Modifying the Automatic Stay* [D.I. 8668] (the "Financing Motion") seeking entry of orders authorizing the TCEH Debtors to (i)(a) enter into the Financing Papers (as defined in the Financing Motion); and (b) pay associated fees and expenses in connection with the Financing Motion; and (ii) in their sole discretion and subject to the Closing Date (as defined in the Refinancing DIP Credit Agreement) enter into that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms and conditions set forth therein, the "Refinancing DIP Credit Agreement"), to obtain secured postpetition financing on a superpriority basis, consisting of (a) a revolving credit facility (the "Revolving Credit Facility") in an aggregate principal amount of up to $750,000,000; (b) a term "B" credit facility (the "Term Loan B Facility") in an aggregate principal amount of up to $2,850,000,000; and (c) a term "C" credit facility (the "Term Loan C Facility" and, collectively with the Revolving Credit Facility and the Term Loan B Facility, the "Refinancing DIP Facility") in an aggregate principal

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Final Cash Collateral Order.

amount of up to $650,000,000 and (ii) irrevocably repay in full, with the proceeds of the Refinancing DIP Facility, all loans and other obligations under the Existing DIP Credit Agreement (such repayment in full, the "Refinancing"). The members of the TCEH First Lien Ad Hoc Committee support approval of the Financing Motion and, subject to the terms of (i) the Refinancing DIP Credit Agreement and (ii) the order authorizing the TCEH Debtors to enter into the Refinancing DIP Credit Agreement, a copy of which is attached as Exhibit B to the Financing Motion (the "Refinancing DIP Order"), consent to the TCEH Debtors' incurrence of the liens and claims under the Refinancing DIP Facility.

**NOW, THEREFORE**, it is hereby ordered, agreed and stipulated that the Final Cash Collateral Order shall be, and hereby is, modified solely as follows (hereinafter, the "Stipulation"):

1. Paragraph 3(a) of the Final Cash Collateral Order shall be deleted and replaced with the following:

> "(a) Specified Period. Subject to the terms and conditions of this Final Order, the TCEH Debtors are authorized to use Cash Collateral for the period (the "Specified Period") from the Petition Date through the date which is the earliest to occur of (i) the expiration of the Remedies Notice Period (as defined herein) or (ii) September 30, 2016."

2. Paragraph 5(c)(ii)(C) of the Final Cash Collateral Order is amended by deleting that section in its entirety and replacing it with the following:

> "the reasonable and documented fees and expenses of a tax advisor, nuclear regulatory counsel, energy consultant and strategic and operational consultant to the TCEH First Lien Ad Hoc Committee,"

3. Paragraph 5(c) of the Final Cash Collateral Order is amended by deleting the word "and" before subclause (iii) thereof, and adding the following after the words "TCEH First Lien Ad Hoc Committee" in subclause (iii)(C):

", and (iv) all reasonable and documented fees and expenses incurred by the professionals retained by any individual member of the TCEH First Lien Ad Hoc Committee that is a TCEH Supporting First Lien Creditor."

4.  Prior to the Closing Date, all references to the terms "Motion," "DIP Order" and "DIP Credit Agreement" in the Final Cash Collateral Order shall continue to refer to the Existing DIP Motion, the Existing DIP Order, and the Existing DIP Credit Agreement, respectively.

5.  Subject to and solely upon the occurrence of the Closing Date:

   5.1  all references to the terms "Motion," "DIP Order" and "DIP Credit Agreement" in the Final Cash Collateral Order (other than references to such terms in Paragraph E of the Final Cash Collateral Order) shall refer to the Financing Motion, the Refinancing DIP Order and Refinancing DIP Credit Agreement, respectively, as they exist as of the date hereof and without regard to any future amendment, restatement, or other modification thereof;

   5.2  the last sentence of Paragraph E of the Final Cash Collateral Order shall be deleted;

   5.3  paragraph 5 of the Final Cash Collateral Order is amended by replacing clause (f) thereof in its entirety with the following:

   "(f) <u>Financial Covenant</u>. For any Test Period (as defined in the DIP Credit Agreement) beginning with the Test Period ending on the last day of the first full fiscal quarter after the Closing Date (as defined in the DIP Credit Agreement) (the "<u>Financial Covenant</u>"), if the sum of (i) the aggregate principal amount of all Revolving Credit Loans (as defined in the DIP Credit Agreement) then outstanding plus (ii) the aggregate Stated Amount (as defined in the DIP Credit Agreement) of all then outstanding Revolving Letters of Credit (as defined in the DIP Credit Agreement) plus the aggregate amount of Unpaid Drawings (as defined in the DIP Credit Agreement) with respect to all then outstanding Revolving Letters of Credit(as defined in the DIP Credit Agreement), but in each case, excluding (a) cash collateralized or backstopped Revolving Letters of Credit (as defined in the DIP Credit Agreement) and (b) up to $100,000,000 of undrawn Revolving Letters of Credit (as defined in the DIP Credit Agreement), exceeds 30% of the Total Revolving Credit Commitment (as defined in the DIP Credit Agreement) then in effect (after including any New Revolving Credit Commitments (as defined in

the DIP Credit Agreement) then in effect), then the ratio of (i) Consolidated Superpriority Secured Net Debt (as defined in the DIP Credit Agreement) to (ii) Consolidated EBITDA (as defined in the DIP Credit Agreement) for the most recent four fiscal quarter period for which financial statements are available shall not exceed 4.25 to 1.00 as of the last day of such Test Period."

5.4    paragraph 11(a) of the Final Cash Collateral Order is amended by replacing the words "the Interim DIP Order, the Final DIP Order" with "the DIP Order";

5.5    paragraph 12 of the Final Cash Collateral Order is amended by replacing the reference to "Left Lead Arrangers" with "Joint Lead Arrangers"; and

5.6    paragraph 14 of the Final Cash Collateral Order is amended by (a) replacing the reference to "$1,100,000,000" with "975,000,000" and (b) replacing the reference to "paragraph 25 of the DIP Order" with "paragraph 27 of the DIP Order."

6.    In all other respects, the Final Cash Collateral Order remains the same and in full force and effect.

7.    This Stipulation shall be, upon approval by the Court, binding on all parties in interest in the above-captioned cases and contains the entire agreement by and between the parties hereto, and all prior understandings or agreements, if any, are merged into this Stipulation.  No representations have been made or relied upon by the parties, except as set forth herein.

[*Remainder of page intentionally left blank.*]

Dated: June 21, 2016
       Wilmington, Delaware

                                       */s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
          defranceschi@rlf.com
          madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com
          stephen.hessler@kirkland.com
          brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
          marc.kieselstein@kirkland.com
          chad.husnick@kirkland.com
          steven.serajeddini@kirkland.com

*Co-Counsel to the TCEH Debtors*

8

    */s/ Michael D. DeBaecke*
**BLANK ROME LLP**
Michael D. DeBaecke (Bar No. 3186)
Stanley B. Tarr (Bar No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:  (302) 425-6400
Facsimile:   (302) 425-6400

-and-

**SEWARD & KISSEL LLP**
John R. Ashmead (admitted *pro hac vice*)
Mark D. Kotwick (admitted *pro hac vice*)
Arlene R. Alves (admitted *pro hac vice*)
One Battery Park Plaza
New York, New York 10004
Telephone:  (212) 574-1200
Facsimile:   (212) 480-8421

*Counsel to the First Lien Collateral Agent*

      */s/ Michael D. DeBaecke*
**BLANK ROME LLP**
Michael D. DeBaecke (Bar No. 3186)
Stanley B. Tarr (Bar No. 5535)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone:     (302) 425-6400
Facsimile:      (302) 425-6400

-and-

**SEWARD & KISSEL LLP**
John R. Ashmead (admitted *pro hac vice*)
Mark D. Kotwick (admitted *pro hac vice*)
Arlene R. Alves (admitted *pro hac vice*)
One Battery Park Plaza
New York, New York 10004
Telephone:     (212) 574-1200
Facsimile:      (212) 480-8421

*Counsel to the First Lien Administrative Agent*

| | |
|---|---|
| | */s/ Tina Moss* |

**BAYARD, P.A.**
Neil B. Glassman (Bar No. 2087)
GianClaudio Finizio (Bar No. 4253)
222 Delaware Avenue, Suite 900
Wilmington, Delaware 19801
Telephone:     (302) 655-5000
Facsimile:      (302) 658-6395

-and-

**PERKINS COIE LLP**
Tina Moss (admitted *pro hac vice*)
30 Rockefeller Plaza, 22nd Floor
New York, New York 10112-0015
Telephone:     (212) 262-6910
Facsimile:      (212) 977-1648

*Counsel to the First Lien Notes Trustee*

11

*/s/ Ryan M. Bartley*
**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone:    (212) 373-3000
Facsimile:    (212) 757-3990

*Counsel to the TCEH First Lien Ad Hoc Committee*

SO ORDERED this _____ day of June, 2016:

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge