**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: <br><br> ENERGY FUTURE HOLDINGS CORP., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 14-10979 (CSS) <br><br> (Jointly Administered) <br><br> **Hearing Date: Requested** <br> **Objection Deadline: Requested** |

**CONTRARIAN CAPITAL MANAGEMENT, LLC'S
MOTION TO COMPEL MEDIATION OF DISPUTES
CONCERNING CERTAIN PLAN CONFIRMATION ISSUES**

Contrarian Capital Management, LLC (as advisors, or affiliates of advisors to holders, or managers of various accounts with investment authority, contractual authority or voting authority, "Contrarian"), by its undersigned counsel, files this motion (the "Motion") for entry of an order directing parties to mediate certain issues related to *Second Amended Joint Plan of Reorganization of Energy Futures Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated June 16, 2016 (as may be further amended, the "New Plan") [D.I. 8747-2].[1]  In support of the Motion, Contrarian respectfully states as follows:

**PRELIMINARY STATEMENT**

As the T-Side confirmation hearing approaches, the disputed issues dividing the E-Side and T-Side estates have not been resolved.  As highlighted at the hearing to consider the T-Side Disclosure Statement, the T-Side plan seeks to use valuable assets owned by EFH for no consideration.  These assets include EFH's tax attributes and shared services to be provided by EFH.

Although Contrarian and Fidelity Management and Research Co. have attempted to start

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the New Plan.

a settlement dialogue – at the purported invitation of the TCEH First Lien group – there have not been any meaningful settlement negotiations to date. Thus, to avoid the time, expense and delay of a hotly contested plan confirmation hearing, Contrarian respectfully submits that the Court should compel the parties to mediate their outstanding disputes. If the mediation process for these disputes proves as successful as previous mediation efforts in these cases, the Court may save significant time and resources.

**JURISDICTION & VENUE**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

**BACKGROUND**

2. On April 29, 2014 (the "Petition Date"), each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition with the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

A. **The Confirmed Plan.**

3. On December 1, 2015, the Debtors filed the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7187] (the "Confirmed Plan").

4. On December 7, 2015, the Court entered an amended order confirming the Confirmed Plan [D.I. 7244], which was amended on December 9, 2015 (as amended, the

"Confirmation Order") [D.I. 7285], and also entered an order (the "Settlement Order") [D.I. 7243], approving the settlement of certain litigation claims (the "Settlement Agreement").[2]

### B. The New Plan.

5. On May 1, 2016, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 355] (the "May 1 Plan") and the *Disclosure Statement for the New Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Co*de [D.I. 8356].

6. On that same day, the Debtors filed the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* (the "Scheduling Motion") [D.I. 8358].

7. On May 10, 2016, the Debtors filed the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 8421] and the *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 8423].

8. On May 23, 2016, the Court held a hearing and approved a scheduling order, providing for separate disclosure statement and plan confirmation schedules for the TCEH Debtors (including the EFH Corporate Services Debtors) and the EFH Debtors.[3]

---

[2]   Among other things, the Settlement Agreement compromised and settled the inter-Debtor claims, several other claims and causes of actions of various creditors of the Debtors, claims and causes of action against holders of interests in EFH Corp. and certain related entities and claims and causes of action against each of the Debtors' current and former directors, managers and officers, and other related entities.

[3]   *See Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of the Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8514] (the "Scheduling Order").

9.      On June 16, 2016, the Debtors filed the New Plan and the *Third Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Futures Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* (as amended or supplemented, from time to time, the "TCEH Disclosure Statement") [D.I. 8747].

10.     As described in the TCEH Disclosure Statement, among other things, the New Plan provides for two alternative restructuring paths for the TCEH Debtors:

- "Under the Spin-Off, TCEH will spin off from the Debtors to form a standalone reorganized entity, Reorganized TCEH, *and certain tax attributes of the EFH Group will be substantially used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets, valued at approximately $1.0 billion*." (emphasis added)

- "If the Spin-Off Condition is not satisfied, then the assets of the TCEH Debtors will be transferred to Reorganized TCEH in a transaction or transactions intended to qualify as a taxable sale or exchange under section 1001."[4]

11.     Under the New Plan, if the TCEH Debtors are reorganized via a tax-free spin,[5] Reorganized TCEH will receive a step-up in tax basis with respect to the TCEH Debtors' assets using net operating losses ("NOLs") owned by EFH.[6] However, given that TCEH is a classified as a disregarded entity for U.S. federal income tax purposes, any income, losses and/or tax attributes in respect of such losses (including NOLs) of a disregarded entity are considered income, losses or attributes of its owner for U.S. federal tax purposes.[7] Accordingly, the EFH Group's NOL is valuable property of EFH, regardless of whether a portion of such NOL arose due to losses incurred by TCEH or another of EFH's disregarded subsidiaries. Under the New

---

[4] TCEH Disclosure Statement, at 9-10.
[5] *Id.*
[6] *Id.*
[7] *See, e.g.*, 26 C.F.R. § 301.7701-2(C)(2).

4

Plan, however, the TCEH Debtors are attempting to substantially use up this asset of EFH, without providing consideration to the EFH Debtors.

12. A disregarded entity may, in some cases, nevertheless be contractually entitled under an intercompany tax sharing agreement to payment for its owner's use of the owner's tax attributes. Pursuant to the Settlement Agreement, however, TCEH released any and all claims it had against EFH Group under the group's Tax Sharing Agreements[8], including any right to payment in respect of EFH's use of its NOL, in exchange for the TCEH Settlement Claim of $700 million. Accordingly, TCEH no longer has any claim to payment for EFH's use of EFH's NOL, and allowing the use of the NOLS without any additional consideration to the EFH Debtors provides the TCEH Debtors with a double recovery in addition to deal that was negotiated under the Settlement Agreement.

13. In addition, without providing the EFH Debtors with any consideration, the New Plan contemplates a transfer of the equity of the EFH Corporate Services Debtors to Reorganized TCEH.[9]

14. On June 17, 2016, the Court entered an order approving the TCEH Disclosure Statement (the "*TCEH Disclosure Statement Order*") [D.I. 8761], and established, among things, the procedures for soliciting of votes on the New Plan and scheduled the hearing to consider confirmation of the New Plan to begin on August 17, 2016.

---

[8] *See* Settlement Agreement § 2.1(c) ("[U]pon the occurrence of the Settlement Effective Date, all Non-EFH Debtor Intercompany Claims, and all Non-EFIH Intercompany Claims, and all Non-TCEH Debtor Intercompany Claims arising from the beginning of the world through the Settlement Effective Date, … as well as all claims and Causes of Action … relating to or arising from disputes with respect to … the Tax Sharing Agreements, … shall be voluntarily and knowingly, unconditionally, absolutely and forever waived, remised, released, settled, acquitted, satisfied, and discharged."

[9] TCEH Disclosure Statement at 181.

**C.     Settlement Efforts To Date.**

15.     Both Contrarian and Fidelity have made settlement proposals to the TCEH First Lien Group.  To date, however, there has not been any meaningful response, nor the promise of one.  Moreover, while the Debtors and their professionals have indicated that they would facilitate dialogue between the creditor groups, their efforts have not borne fruit.

**RELIEF REQUESTED**

16.     Contrarian respectfully requests entry of an order (the "Order") substantially in the form attached hereto as **Exhibit A**, pursuant to Section 105(a) of the Bankruptcy Code, and Rules 9019-3 and 9019-5 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), directing the parties that have been designated a "Participating Party" under the Scheduling Order (each a "Party" and collectively, the "Parties") to mediation to determine the issues related (a) to the use of EFH Corp.'s NOLs and other tax attributes (the "Tax Attribute Issue") in connection with the transactions contemplated in the New Plan,[10] and (b) to the EFH Debtors' proposed transfer to Reorganized TCEH of the equity interests in the Reorganized EFH Shared Services Debtors[11] (the "Contribution", and together with the Tax Attributes Issue, the "Mediation Issues").

17.     Contrarian proposes that the Mediation be governed in accordance with Local Rule 9019-5, as supplemented by the following procedures (collectively, the "Proposed Mediation Procedures"):

>     (i)     **Mandatory Mediation**. The parties shall proceed to mediation regarding the Mediation Issues. The Mediation will be privileged and confidential. Proceedings, discussions, and written materials associated with the Mediation will not be reported into evidence, nor shall anything stated or

---

[10]     *See e.g.*, TCEH Disclosure Statement at 180 ("The Debtors currently project that, as of December 31, 2016 … the EFH Group will have approximately $8.2 billion of NOLs. … the Debtors expect that all of the EFH Group's NOLs will either be used or eliminated at the end of the EFH Group's taxable year in which the Effective Date occurs."

[11]     *Id*. at 181.

        exchanged during the Mediation operate as an admission of liability, wrongdoing, or responsibility.

(ii) **Mediators**. Contrarian shall file a list of proposed mediators from the Court's Register of Mediators within three (3) business days from entry of an order directing mediation. The Court will select the mediator (the "Mediator") from that list. The Mediator selected will serve as the Mediator for the Mediation.

(iii) **Time, Place, and Manner for the Mediations**. Unless otherwise and expressly agreed by the parties to the Mediation or as directed by the Mediator, all Mediations shall take place either in-person or telephonically at a time and location chosen by the Mediator. Each party shall attend the Mediation, either in person or telephonically, by either its principal or by an appointed representative with settlement authority. The Mediator shall establish the deadlines for the submission of materials.

(iv) **Mediator's Report**. Promptly after conclusion of the Mediation, the Mediator shall electronically file a report with the Court indicating whether Mediation resulted in the parties reaching an agreement.

## ARGUMENT

**The Court Is Authorized to Direct Mediation to Determine Mediation Issues Under Section 105(a) of the Bankruptcy Code and Local Rules 9019-3**

18. Local Rule 9019-3(a) states that "[n]otwithstanding any provision of law to the contrary, the Court may refer a dispute pending before it to mediation . . . ." Del. Bankr. L. R. 9019-3(a). Moreover, Local Rule 9019-5 clarifies that the Court's authority to assign a dispute to mediation broadly extends to disputes arising in an "adversary proceeding, contested matter or otherwise in a bankruptcy case." Del. Bankr. L. R. 9019-5(a). Accordingly, the Court possesses the authority to refer the T-Side's use of the EFH Debtors' NOLs and other tax attributes and the Contribution to Meditation.

19. With the Court's input, Contrarian respectfully requests the Court order mediation to proceed on a dual track along with confirmation of the New Plan. Through the Mediation, Contrarian is not seeking to litigate confirmation-related issues outside of the procedures

established by this Court in the Scheduling Order. Instead, Contrarian is seeking to provide a cost-effective and efficient avenue of prosecuting the Mediation Issues through a process that will minimize the burden on this Court, and provide the parties the greatest chance of amicably resolving the issues ahead of Confirmation. Indeed, Contrarian believes that all parties would be well served through the intervention of a neutral mediator to attempt a consensual resolution of the issues.

20.     Contrarian believes that the proposed Mediation will: (a) streamline the resolution of central issues to confirmation of the New Plan; (b) facilitate the prompt and cost-effective resolution of the Mediation Issues; and (c) minimize the Court's administrative burden in connection with a costly and lengthy confirmation process.

21.     Accordingly, Contrarian submit that the Proposed Mediation Procedures are in the best interests of both the Debtor's estates and parties in interests and should be approved.

## **NOTICE**

22.     Contrarian shall provide notice of this Motion to: (a) counsel to the Debtors; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series

P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the TCEH Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor in possession financing facility and counsel thereto; (n) the agent for the EFIH debtor in possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) counsel to certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates; (s) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (t) Oncor Electric Delivery Company LLC and counsel thereto; (u) the Securities and Exchange Commission; (v)

the Internal Revenue Service; (w) the Office of the United States Attorney for the District of Delaware; (x) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (y) counsel to the Electric Reliability Council of Texas; (z) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (aa) the United States Trustee.

23. Contrarian submits that no other or further notice is necessary under the circumstances.

## NO PRIOR MOTION

24. Contrarian has not made any prior motion for the relief sought in this Motion to this Court or any other.

\*\*\*

WHEREFORE, for the reasons set forth herein, Contrarian respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: July 11, 2016
      Wilmington, Delaware

                HOGAN♦MCDANIEL

                By: /s/ *Garvan F. McDaniel*
                Garvan F. McDaniel, Esq.
                1311 Delaware Avenue
                Wilmington, Delaware 19806
                Telephone: (302) 656-7540
                Facsimile: (302) 656-7599
                Email: gfmcdaniel@dkhogan.com

                    – and –

                KASOWITZ, BENSON, TORRES
                   & FRIEDMAN LLP

                David S. Rosner, Esq.
                Andrew K. Glenn, Esq.
                Daniel A. Fliman, Esq.
                1633 Broadway
                New York, New York 10019
                Telephone: (212) 506-1700
                Facsimile: (212) 506-1800
                Email: DRosner@kasowitz.com
                       AGlenn@kasowitz.com
                       DFliman@kasowitz.com

                *Counsel to Contrarian Capital Management, LLC*

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| Debtors. | (Jointly Administered) |

**ORDER DIRECTING PARTIES TO MEDIATE DISPUTES**
**CONCERNING CERTAIN PLAN CONFIRMATION ISSUES**

Upon the motion (the "Motion"),[1] of Capital Management, LLC (as advisors, or affiliates of advisors to holders, or managers of various accounts with investment authority, contractual authority or voting authority, "Contrarian"), for entry of an order directing parties to mediate certain issues related to *Second Amended Joint Plan of Reorganization of Energy Futures Holding Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated June 16, 2016 (as may be further amended, the "New Plan") [D.I. 8747-2], as more fully set forth in the Motion; and upon due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and a hearing having been scheduled and, to the extent necessary, held to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing (if any was held), and all the proceedings had before the Court; and the Court having found and determined that the relief requested is in the best interests of the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

Debtors, their estates and creditors, and any parties in interest; and the legal and factual bases set forth in the Motion and at the Hearing (if any was held) having established just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The issues related (a) to the use of EFH Corp.'s NOLs and other tax attributes (the "Tax Attribute Issue") in connection with the transactions contemplated in the New Plan, and (b) to the EFH Debtors' proposed transfer to Reorganized TCEH of the equity interests in the Reorganized EFH Shared Services Debtors (the "Contribution", and together with the Tax Attributes Issue, the "Mediation Issues"), are hereby referred to Mediation in accordance with Local Rule 9019- 3.

2. Local Rule 9019-5, as supplemented by the following procedures (collectively, the "Proposed Mediation Procedures"):

    (i) **Mandatory Mediation**. The parties shall proceed to mediation regarding the Mediation Issues. The Mediation will be privileged and confidential. Proceedings, discussions, and written materials associated with the Mediation will not be reported into evidence, nor shall anything stated or exchanged during the Mediation operate as an admission of liability, wrongdoing, or responsibility.

    (ii) **Mediators**. Contrarian shall file a list of proposed mediators from the Court's Register of Mediators within three (3) business days from entry of an order directing mediation. The Court will select the mediator (the "Mediator") from that list. The Mediator selected will serve as the Mediator for the Mediation.

    (iii) **Time, Place, and Manner for the Mediations**. Unless otherwise and expressly agreed by the parties to the Mediation or as directed by the Mediator, all Mediations shall take place either in-person or telephonically at a time and location chosen by the Mediator. Each party shall attend the Mediation, either in person or telephonically, by either its principal or by an appointed representative with settlement authority. The Mediator shall establish the deadlines for the submission of materials.

      (iv)    **Mediator's Report**. Promptly after conclusion of the Mediation, the Mediator shall electronically file a report with the Court indicating whether Mediation resulted in the parties reaching an agreement.

3.    The Debtors are authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order in accordance with the Motion

4.    This Court shall retain jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____,2016
Wilmington, Delaware

                                                _____
                                                The Honorable Christopher S. Sontchi
                                                Judge of the United States Bankruptcy Court