# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 8890** |

## DEBTORS' OPPOSITION TO MOTION OF CONTRARIAN CAPITAL MANAGEMENT, LLC TO COMPEL MEDIATION OF DISPUTE CONCERNING CERTAIN PLAN CONFIRMATION ISSUES

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this opposition (this "Opposition") to the *Motion of Contrarian Capital Management, LLC to Compel Mediation of Disputes Concerning Certain Plan Confirmation Issues* (the "Motion to Compel") [D.I. 8890-1], filed by Contrarian Capital Management, LLC ("Contrarian") on July 11, 2016, and request that the Court deny the Motion to Compel. In support of this Opposition, the Debtors respectfully state as follows.

### PRELIMINARY STATEMENT

1.      The Court should deny the Motion to Compel because mediation will neither resolve nor reduce the already narrow set of issues that remain to be addressed at T-Side confirmation. As such, mediation at this time is inappropriate, unnecessary, and an inefficient and wasteful expenditure of resources.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

2.       Currently, there are only a handful of core, disputed issues standing between the T-Side Debtors and confirmation of the New Plan,[2] and mediation will not narrow the issues any further. Earlier in these cases, multiple contentious and complicated issues separated the Debtors from confirmation of a plan of reorganization. But the Settlement Agreement previously approved by the Court and the Amended and Restated Plan Support Agreement ("PSA") entered into by the parties substantially resolved many of those disputes. As a result, only a narrow set of contested issues remain.

3.       Indeed, apart from the specific objection of the PCRBs,[3] there are presently only three core potential objections that parties have raised regarding the New Plan: (i) the use of net operating losses ("NOLs"); (ii) the transfer of EFH Corporate Services to Reorganized TCEH; and (iii) the transfer of EFH Properties Company to Reorganized TCEH. Contrarian seeks to force the parties to mediate the first two of these issues. But the issues are hardly new concepts and, therefore, highly unlikely to be resolved on the eve of trial. Rather, they are core T-Side confirmation issues that should be litigated in accordance with the specific protocols set out in the Scheduling Order.[4]

4.       Despite Contrarian's assertion that mediation could streamline these proceedings, forcing the parties to mediate these issues will only result in an unnecessary expenditure of limited resources. What Contrarian characterizes as a lack of "any meaningful response" to their

---

[2] "New Plan" means the *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8745], filed by the Debtors on June 16, 2016 (as may be amended, modified, or supplemented from time to time).

[3] "PCRBs" means the Bank of New York Mellon Trust Company, N.A., in its capacity as the EFCH 2037 Notes Trustee, and the Bank of New York Mellon, in its capacity as the PCRB Trustee.

[4] "Scheduling Order" means the *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8514], entered on May 24, 2016, as amended [D.I. 8883].

settlement proposals is, in reality, a reflection of how far apart the parties are and only underscores the parties' inability to resolve these issues outside of the T-Side confirmation hearing.

5. While the Debtors do not want to divulge the contents of confidential settlement discussions, the parties have fundamentally different views on the disputed issues, and it is clear to the Debtors that mediation cannot bridge the gap. The Debtors are prepared to meet their burden at the August 17, 2016 confirmation trial, and mediation will only result in wasteful expenditure of resources and potential delay, without yielding any movement on the narrow universe of issues that remains.

## BACKGROUND

6. On April 29, 2014, each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has ordered joint administration of these chapter 11 cases [D.I. 849].

7. After fifteen months of litigation over a wide array of issues, including extensive diligence and discovery regarding legacy and intercompany claims, claims among various T-Side creditors, and claims against the Debtors' directors, officers, and equity owners, the Debtors reached two critical agreements among themselves and certain key parties in interest.

8. First, the PSA, approved by the Court on September 18, 2015,[5] bound its signatories to support the then-pending plan of reorganization (the "Confirmed Plan"), which

---

[5] *Order Authorizing Debtors to Enter Into and Perform Under Plan Support Agreement* [D.I. 6097], entered on September 18, 2015 ("PSA Order"), attaching the PSA at D.I. 6097-1.

was litigated and ultimately confirmed.[6] The PSA further provided for its signatories to move forward with an alternative restructuring if the Confirmed Plan was not consummated. *See* PSA §§ 5, 11.

9. Second, this Court approved the Settlement Agreement, which was litigated and tried in conjunction with the Confirmed Plan.[7] The Settlement Order was not appealed. The Settlement Agreement resolved, among other things, all "Non-EFH Debtor Intercompany Claims, all Non-EFIH Debtor Intercompany Claims, and all Non-TCEH Debtor Intercompany Claims arising from the beginning of the world through the Settlement Effective Date . . . ." Settlement Agreement § 2.1(a).

10. When the Confirmed Plan became null and void, the PSA and Settlement Agreement allowed the parties to quickly pivot to the New Plan on May 1, 2016. The New Plan incorporates many aspects of the Confirmed Plan, including a tax-free spin-off of TCEH with a basis step-up achieved through a "busted 351" transaction.[8]

11. Concurrently therewith, the Debtors filed a motion seeking entry of an order setting the schedule and protocols for confirmation of the New Plan and approval of the related disclosure statement.[9] Contrarian opposed the Scheduling Motion, arguing in part that the

---

[6] *Amended Order Confirming the Sixth Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285], entered on December 9, 2015 (the "Confirmation Order"), attaching the Confirmed Plan at D.I. 7285-1.

[7] *See Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243], entered on December 7, 2015 (the "Settlement Order"), attaching the Settlement Agreement at D.I. 7243-1.

[8] *See Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 8747], dated June 16, 2016, at 179.

[9] *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of*
   (Continued…)

proposed use of NOLs in connection with the TCEH spin-off rendered the New Plan "non-confirmable."[10] Contrarian's objection to the entry of the Debtors' proposed scheduling order did not, however, make any request for Court-ordered mediation.

12. The Court overruled Contrarian's objection and entered the Scheduling Order on May 24, 2016. Unlike the scheduling order that governed the 2015 Plan Confirmation proceedings, the current Scheduling Order does not provide for mediation.[11]

13. Over the past two months, the parties have proceeded under the Scheduling Order to conduct discovery, including producing over 100,000 pages of documents, conducting depositions of four fact witnesses, exchanging expert reports, exchanging preliminary witness and exhibit lists, and preparing for expert and further fact witness depositions.

14. On July 14, 2016, the parties met and conferred in anticipation of the initial pretrial conference and have substantially agreed on numerous procedural and logistical issues for trial, including submission of written directs, opening statements, deposition designations, exhibit processes, use of demonstratives, closing arguments, and treatment of prior testimony. The T-Side confirmation hearing is set to begin on August 17, 2016. Scheduling Order ¶ 7(gg).

**ARGUMENT**

15. The Court should deny the Motion to Compel because (1) the issues remaining for trial are already narrow and appropriately addressed at the T-Side confirmation hearing, (2) the

---

*Debtors Joint Plan of Reorganization and the Approval of Debtors Disclosure Statement* [D.I. 8358], dated May 1, 2016 ("Scheduling Motion").

[10] *Objection of Contrarian Capital Management, LLC to Debtors' Disclosure Statement and Confirmation Scheduling Motion* [D.I. 8451], dated May 16, 2016 ("Contrarian Scheduling Objection") ¶ 13.

[11] *Compare Order (A) Scheduling Certain Hearing Dates and Deadlines, (B) Establishing Certain Protocols in Connection with the Approval of Debtors' Disclosure Statement, and (C) Establishing the Terms Governing Mediation* [D.I. 4497], entered on May 18, 2015 ("2015 Plan Scheduling Order") ¶¶ 9-25 with Scheduling Order.

RLF1 14842502v.1

request for mediation at this time is inappropriate and untimely, and (3) the parties are not remotely close to settlement, and mediation will not narrow or resolve the disputed issues. The parties should proceed to litigate the remaining issues for T-Side confirmation.

## I. The Scope of the Disputed Issues Is Already Narrow, and Appropriately Addressed at the T-Side Confirmation Hearing.

16. Based on the course of litigation in connection with the New Plan, the handful of core issues that have been raised by E-Side creditors with respect to T-Side confirmation are (i) use of NOLs, (ii) the transfer of EFH Corporate Services to Reorganized TCEH, and (iii) the transfer of EFH Properties Company to Reorganized TCEH.

17. These are discrete issues, far narrower than the multitude of controversies facing the parties in advance of trial on the Confirmed Plan and Settlement Agreement, which included disputes over legacy transactions, intercompany claims, claims against the Debtors' directors, officers, and equity owners, and T-Side inter-creditor claims.

18. Although Contrarian claims it "is not seeking to litigate confirmation-related issues outside of the procedures established by this Court in the Scheduling Order," that is precisely what Contrarian seeks to do in asking to "streamline the resolution of central issues to confirmation of the New Plan" through mediation. Motion to Compel ¶¶ 19-20. Indeed, Contrarian acknowledges that the issues it seeks to mediate "are going to be two of the primary issues litigated in connection with confirmation of the New Plan."[12]

19. In short, the scope of the disputed issues is already narrow and appropriately addressed in the context of the T-Side confirmation hearing.

---

[12] *Motion of Contrarian Capital Management, LLC for Order Shortening Notice of Hearing for Motion to Compel Mediation of Disputes Concerning Certain Plan Confirmation Issues* [D.I. 8892], dated July 11, 2016, ¶ 3.

6

## II. The Request for Mediation at this Time Is Inappropriate and Untimely.

20. The Scheduling Order establishes the protocol for proceedings leading to the T-Side confirmation hearing and does not contemplate mediation. In contrast, the 2015 Plan Scheduling Order explicitly provided for plan mediation. *See* 2015 Plan Scheduling Order ¶¶ 9-25. There is good reason for the difference.

21. Mediation was an appropriate device when the parties faced a multitude of broad issues that all parties were still working to understand. Now, however, the current universe of core disputed issues is much narrower and the issues are hardly new ones. Indeed, the parties have spent significant time working to understand and resolve the issues that remain. Mediation will not help narrow the disputed issues further.

22. Moreover, Contrarian easily could have requested that a mediation protocol be included in the Scheduling Order when it first raised its objection to the Debtors' Scheduling Motion two months ago. It did not. Indeed, at the time, all Contrarian wanted was to delay the New Plan proceedings. *See* Contrarian Scheduling Objection ¶ 17. Now, after two months of accelerated discovery and litigation and only weeks away from trial, at a time when the parties need to focus their efforts on trial preparation, Contrarian asks the Court to force the parties to engage in mediation over two of the three already narrow T-Side confirmation issues. Motion to Compel ¶ 16.

23. The governing protocol in the Scheduling Order does not provide for mediation and, at this stage of the proceedings, Contrarian's request to mediate is untimely and inappropriate. Mediation can and should be used when there are numerous issues for trial that can be narrowed or resolved or where the parties are still working to understand and develop their respective views on the issues. That is not the case here. Rather, Contrarian's aim is

7

clear—to derail T-Side confirmation and stall the New Plan proceedings by distracting the parties from the task at hand.

### III. The Parties' Views on the Disputed Issues Are Worlds Apart, and Mediation Will Not Further Narrow or Resolve the Issues for Trial.

24.   Without divulging the details of ongoing settlement negotiations, based on the Debtors' understanding of the distance between the E-Side creditors' and the TCEH First Liens' positions, the Debtors do not believe mediation would be fruitful. Instead, the Debtors submit that proceeding to trial in accordance with the Scheduling Order is the more efficient course to resolve these outstanding issues, either through ongoing discussions that undoubtedly would continue at trial or a ruling following trial.

25.   In short, the parties are worlds apart and mediation will neither narrow nor resolve the remaining issues. As such, Contrarian's desire to force mediation would appear to be less concerned with purported cost-effective and efficient resolution than an attempt to stall the New Plan proceedings and create leverage in the hopes of advancing their position.

### CONCLUSION

26.   For the foregoing reasons, the Court should deny Contrarian's emergency request for mediation.

*[Remainder of page intentionally left blank.]*

Dated: July 18, 2016
Wilmington, Delaware

/s/ *[signature]*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:     (302) 651-7701
Email:           collins@rlf.com
                     defranceschi@rlf.com
                     madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:     (212) 446-4900
Email:           edward.sassower@kirkland.com
                     stephen.hessler@kirkland.com
                     brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:           james.sprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chad.husnick@kirkland.com
                     steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*