**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) ) ) | Case No. 14-10979 (CSS) |
| Debtors. | ) ) | (Jointly Administered) |
|  | ) ) | **Docket Ref. No. 8890** |

**OBJECTION OF THE AD HOC COMMITTEE OF
TCEH FIRST LIEN CREDITORS TO CONTRARIAN CAPITAL
MANAGEMENT LLC'S MOTION TO COMPEL MEDIATION OF
DISPUTES CONCERNING CERTAIN PLAN CONFIRMATION ISSUES**

The ad hoc committee of certain unaffiliated holders of first lien senior secured claims against the TCEH Debtors (the "Ad Hoc Committee of TCEH First Lien Creditors"),[2] by and through its undersigned counsel, hereby submits this objection (the "Objection") to *Contrarian Capital Management LLC's Motion to Compel Mediation of Disputes Concerning Certain Plan Confirmation Issues* (the "Motion") [D.I. 8890].[3] In support of this Objection, the Ad Hoc Committee of TCEH First Lien Creditors respectfully states as follows:

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] The members of the Ad Hoc Committee of TCEH First Lien Creditors hold or manage, in the aggregate, approximately $16.39 billion of first lien secured claims against Texas Competitive Electric Holdings Company LLC and certain of its subsidiaries (collectively, the "TCEH Debtors"). *See Seventh Supplemental Verified Statement of the Ad Hoc Committee of TCEH First Lien Creditors Pursuant to Bankruptcy Rule 2019* [D.I. 8573].

[3] Capitalized terms used and not defined herein shall have the meanings ascribed to such terms in the Motion.

**INTRODUCTION**

1.  The Debtors have been mired in chapter 11 for more than two years. Now, with a confirmation hearing and emergence from bankruptcy in sight for the TCEH Debtors, a single dissenting E-Side creditor has struck upon a new strategy that would potentially delay Confirmation and plunge the TCEH Debtors and their creditors back into the world of E-Side infighting: a motion to compel mediation. While the Ad Hoc Committee of TCEH First Lien Creditors enthusiastically participated in the mediation last year that paved the way for plan confirmation for the TCEH Debtors, now is not the time, and the issues cited by Contrarian are not the proper subject, for mediation.

2.  Contrarian advances three main arguments in support of its request that this Court order the parties to participate in mediation. Each argument is meritless and should be rejected.

3.  *First*, Contrarian previews its confirmation objections, which it dresses up as so-called "Mediation Issues." These objections cannot be sustained. More importantly, they are issues that can, should, and will be resolved at the Confirmation Hearing—not in an unwanted mediation.

4.  *Second*, Contrarian's suggestion that it has submitted a good-faith settlement proposal to the Ad Hoc Committee of TCEH First Lien Creditors is simply not true. Contrarian's so-called "settlement proposal" merely seeks to revise the durable Settlement Agreement that this Court approved last December. Accordingly, Contrarian's proposal in no way justifies, let alone compels, Court-ordered mediation.

5.      *Third*, Contrarian cites to the Bankruptcy Code and Local Rules, which permit this Court to order mediation.  While the Court has the discretion to order mediation, there is simply no reason to do so on the eve of Confirmation when numerous parties believe that participation in any mediation would be distracting, not constructive.  To the contrary, mediation would only impose additional costs on the Debtors and their creditors, and delay the conclusion of these cases—a result this Court has previously rejected.[4]

6.      For these reasons, as well as those set forth below, this Court should deny the Motion in its entirety and allow the TCEH Debtors to proceed to Confirmation in accordance with the timeline set forth in the Scheduling Order [D.I. 8512].

## BACKGROUND

7.      The Debtors filed for chapter 11 relief in April 2014.  Since then, secure in their knowledge that the E-Side, essentially a holding company, would not be harmed by delay, E-Side creditors have fought amongst themselves and pursued various litigations in this and other courts to recover various make-whole and other claims in addition to the amounts actually owed to them.  The T-Side creditors, by contrast, ultimately set aside their differences and worked constructively to build support for a plan that would lead to TCEH's *and* EFH's emergence from chapter 11 (the "Old Plan").  The Old Plan called for concessions by T-Side creditors, including significant financial

---

[4]  *See* Hr'g Tr. 46:11-47:2, June 16, 2016 ("June 16th Tr.") ("I see no reason to stop and delay.  Further delay in this case is costing this estate millions of dollars.  It's been over two years, . . . and I'm not going to stop this bus to allow more negotiation to occur.  There's been more than enough negotiation, there's been more than enough time.  I'm not going [to] stop the T side plan because the E side can't get their act together.  Not going [to] happen.").

concessions by the TCEH First Lien Creditors, in exchange for the TCEH Debtors' emergence from chapter 11 as soon as possible.

8. The Old Plan was the subject of a multi-week hearing last November and December. It was confirmed by this Court in December 2015, along with Court approval of: (i) a durable Settlement Agreement that not only resolved certain intercompany claims between EFH and TCEH, but ensured the survival of the Settlement Agreement to the extent the Old Plan could not be consummated; and (ii) a comprehensive plan support agreement (dated August 9, 2015, as amended from time to time, the "PSA"), which not only required the parties to support and seek confirmation of the Old Plan, but included binding terms for an Alternative Restructuring (defined in the PSA), in the event the Old Plan could not be consummated.

9. Unfortunately, the Old Plan became infeasible due to matters beyond the control of the parties. Almost immediately thereafter, consistent with the PSA, the Debtors proposed the New Plan, which embodies the terms of an Alternative Restructuring. While the Old Plan provided that EFH and TCEH would emerge from chapter 11 simultaneously, the Debtors and the E-Side creditors have not reached consensus on how the E-Side will restructure under the New Plan. The prospect of significant further delay driven by the E-Side's ongoing creditor dysfunction compelled the TCEH Debtors to seek a scheduling order enabling them to proceed with confirmation of the T-Side Plan prior to the E-Side, which this Court approved on May 24, 2016 (as amended, the "Scheduling Order") [D.I. 8512].

## ARGUMENT

10. After nearly four years of failed negotiations and hotly contested litigation, and with the TCEH Debtors' emergence from these epic chapter 11 cases in sight, Contrarian now asks this Court to compel the Debtors and the Ad Hoc Committee of First Lien Creditors to mediate with them. The Court should decline this ill-conceived invitation.

### A. Issues Regarding NOLs And EFH Corporate Services Will Be Resolved At Confirmation And Do Not Require Mediation.

11. Contrarian's central argument in support of mediation is that the New Plan improperly takes EFH's assets and gives them to reorganized TCEH without any consideration. (Mot. at ¶¶ 11-12.) This argument is wholly without merit.

12. Contrarian primarily focuses on the Net Operating Losses ("NOLs") that the New Plan uses to shield certain tax liabilities that result from the separation of EFH and TCEH, and asserts that the NOLs are EFH's assets. (*Id.* at ¶ 11.) This assertion is mistaken.

13. Contrarian appears to acknowledge, as it must, that a substantial portion of the NOLs at issue were generated by TCEH and its subsidiaries due to their losses, not the E-Side's. (*Id.* at ¶ 11 ("regardless of whether a portion of such NOL arose due to losses incurred by TCEH").) The only reason such NOLs reside at EFH is because TCEH is a disregarded entity of EFH for U.S. federal income tax purposes. Accordingly, EFH's use of the NOLs generated by TCEH's activities to offset any gain resulting from the spin-off is proper in all respects.

14. Furthermore, and more fundamentally, EFH is not using its NOL's for TCEH's benefit—EFH is using its NOLs to shield **EFH's** own income. While certain

5

of this income may arise from the separation of the T-Side from EFH, this does not alter the simple fact that EFH (and not TCEH) is liable for any resulting taxes.  Just as disregarded entities are not, from the perspective of the IRS, the legal owners of tax attributes they generate, they are also not liable for federal income taxes.  This is central to the very notion of a disregarded entity and is the construct that EFH itself created when it elected to treat TCEH and substantially all of its subsidiaries as disregarded entities.

15.     The T-Side is unquestionably insolvent and will need to be separated from EFH, either pursuant to the tax-free spin that is currently contemplated under the New Plan or a taxable separation (which is an alternative also contemplated by the New Plan if the tax-free spin cannot be accomplished).  It is unclear which transaction structure Contrarian prefers, but more importantly, Contrarian's opinion on these matters is not the only relevant perspective.  For four years, the TCEH First Lien Creditors have worked tirelessly with the Debtors to consider any potential transaction structure that would permit TCEH to separate from EFH without generating income in excess of EFH's available NOLs.  The TCEH First Lien Creditors remain committed to accomplishing this objective under the New Plan.  However, after more than two years in chapter 11, and after suffering billions of dollars of degradation in value, it is inequitable and unwarranted to require the holders of $25 billion of senior secured claims to indefinitely subordinate their legal rights and interests, and the interests of the T-Side entities' other important stakeholders (including thousands of employees, customers and suppliers), to EFH's creditors.  The TCEH Debtors must emerge from chapter 11 protection as soon as possible to stem the substantial losses they have suffered and take the steps necessary to reposition and revitalize their businesses.

16. In addition to arguments regarding NOLs, Contrarian also contends that the New Plan contemplates the transfer of EFH Corporate Services to the reorganized TCEH Debtors, and that such a "transfer of equity" is "without" any corresponding compensation to the E-Side. (*Id.* at ¶ 13.)  This is simply false:  under the terms of the New Plan, the TCEH Debtors are providing a continuing funding source for EFH Corporate Services' ongoing liabilities and operations.  These are operations that EFH, in large measure, does not utilize, and liabilities that it would never assume.  Without this support from the TCEH Debtors, EFH Corporate Services would likely not be able to confirm a plan that renders its creditors unimpaired; such an outcome would prejudice the hundreds of employees and vendors that rely on the T-Side to fund EFH Corporate Services.  It is thus clear that EFH will not benefit by retaining EFH Corporate Services (and, indeed, EFH Corporate Services' stakeholders will suffer significant prejudice in that circumstance).  Contrarian's argument is merely an attempt to exert perceived negotiating leverage over the TCEH Debtors while leaving the actual stakeholders with an interest in the outcome (those of EFH Corporate Services and the T-Side operating entities) hanging in the balance.

17. While Contrarian is free to advance its incorrect arguments at Confirmation, they in no way compel the conclusion that the TCEH Debtors and the T-Side creditors should, at this late hour, be diverted by a futile mediation concerning them.

**B.   Contrarian's So-Called "Settlement Proposal" Is Little More Than An Attempt To Undo The Settlement Agreement.**

18. Contrarian further suggests that because it and Fidelity have made "settlement proposals" to the Ad Hoc Committee of TCEH First Lien Creditors, such proposals somehow support its request for mediation.  (Mot. at ¶ 15.)  Without divulging

the content of such proposals, they amount to little more than an effort to renegotiate the Settlement Agreement that this Court approved last December. The Ad Hoc Committee of TCEH First Lien Creditors views Contrarian's request as an attempt to extort additional value from TCEH First Lien Creditors by threatening to hold up their long awaited emergence from bankruptcy. The Ad Hoc Committee of TCEH First Lien Creditors has no interest in engaging in such counter-productive discussions.

### C. Mediation Is Not In The Best Interests Of The Debtors Or Their Creditors, Nor Is It Required By The Bankruptcy Code Or The Local Rules.

19. The Ad Hoc Committee of First Lien Creditors does not believe that mediation would serve any useful purpose at this late stage in these cases.

20. While the Local Rules grant this Court discretion to refer the parties to mediation, courts in this District have found that the appointment of a mediator is not appropriate where parties will not be committed to the process. *See, e.g.*, *In re Longview Power, LLC*, Case No. 13-12211 (BLS) (Bankr. D. Del. Jan. 16, 2014) at 15:18-20 (refusing to grant mediation request and observing that "unless there is consensus and commitment to the process on . . . all parts," such a request does not make sense).

21. Nevertheless, Contrarian—without citing a single authority to compel mediation in similar circumstances—argues that mediation would "avoid the time, expense and delay of a hotly contested plan confirmation hearing," while simultaneously suggesting that such mediation should proceed on a "dual track along with confirmation." (Mot. at p. 2, ¶ 19.) This is nonsensical.

22. If the mediation proceeds on a dual track with Confirmation, there will be no administrative or other efficiencies. Quite the contrary. Parties and their

8

advisors would be forced to participate in the mediation while at the same time preparing for the Confirmation Hearing and attending to the tasks necessary to ensure that the TCEH Debtors are ready to emerge from chapter 11.  Such an unwanted mediation will not only result in the Debtors' estates incurring additional costs, it will also cause significant distraction from the Confirmation Hearing—which is, after all, the appropriate time and place for Contrarian to raise its Confirmation objections.

23. On the other hand, if Contrarian's proposed mediation causes the Confirmation Hearing to be postponed or delayed—which is a significant risk—it will inevitably lead to the TCEH Debtors' delayed emergence from chapter 11.  That is precisely the result that this Court, the Debtors, and the TCEH creditors have sought, and are seeking, to avoid.  (June 16th Tr. 46:11-12 ("I see no reason to stop and delay. Further delay in this case is costing this estate millions of dollars."); *id.* 48:9-11 ("Everyone's rights are reserved at confirmation, there's no reason to stop this schedule that has been put in place . . . .").)

## **RESERVATION OF RIGHTS**

The Ad Hoc Committee of TCEH First Lien Creditors reserves the right to (a) amend or supplement this Objection and otherwise take any additional or further action with respect to the Motion or the matters addressed therein, and (b) be heard before this Court with respect to the Motion.

## **CONCLUSION**

For the foregoing reasons, the Ad Hoc Committee of TCEH First Lien Creditors respectfully requests that the Court deny the Motion in its entirety.

Dated: July 18, 2016
Wilmington, Delaware

*/s/ Ryan M. Bartley*

**YOUNG CONAWAY STARGATT & TAYLOR LLP**
Pauline K. Morgan (Bar No. 3650)
Ryan M. Bartley (Bar No. 4985)
Andrew L. Magaziner (Bar No. 5426)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Alan W. Kornberg (admitted *pro hac vice*)
Brian S. Hermann (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
Moses Silverman (admitted *pro hac vice*)
Andrew Ehrlich (admitted *pro hac vice*)
Adam J. Bernstein (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990

*Counsel to the Ad Hoc Committee of TCEH First Lien Creditors*