# **EXHIBIT A**

C0631124C

## SCHEDULE A-37

Following the Parties' execution of this Schedule A-37, **KPMG LLP** ("CONTRACTOR") is authorized to perform the Work as identified on behalf of **EFH CORPORATE SERVICES COMPANY** ("COMPANY") pursuant to the terms and conditions contacting in the Master Services Agreement C0631124C ("the Agreement") dated November 1, 2009 and subsequently amended.

## SCOPE OF WORK AND DELIVERABLES

The Work will be performed in accordance with the specifications and instructions, if any, attached hereto. The Work will be scheduled at the direction of the COMPANY's Contract Coordinator as identified herein.

## SCOPE OF WORK

CONTRACTOR will assist the tax department with tax due diligence and structuring services with respect to COMPANY'S proposed acquisition of stock and/or assets from American Electric Power. The tax due diligence consulting services COMPANY has requested CONTRACTOR to perform in this engagement are described in Appendix 1. These services are limited to those which COMPANY has determined will best meet COMPANY's informational needs.

CONTRACTOR will provide tax consulting services with respect to the matters as listed above. However, CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

Written advice provided to COMPANY under this SOW will be based on facts, representations, assumptions, and other information COMPANY provides to CONTRACTOR, the completeness, accuracy and timeliness of which are critical factors in CONTRACTOR's ability to timely and accurately complete CONTRACTOR's services. Unless COMPANY requests and CONTRACTOR agrees under a separate writing (a newly issued SOW or addendum to this SOW) after CONTRACTOR's advice has been issued in final form to COMPANY, CONTRACTOR will not update CONTRACTOR's advice to take into account COMPANY updating the facts COMPANY provides to CONTRACTOR through COMPANY's discovery of new or additional facts, or COMPANY updating any information that may have formed the basis of any assumptions CONTRACTOR made in developing CONTRACTOR's advice. In rendering advice, CONTRACTOR will consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the advice CONTRACTOR issue to COMPANY.

If matters exceed the scope of this Schedule A-37, CONTRACTOR will issue a separate Schedule A-X or clarifying addendum to confirm the revised scope and related terms. Furthermore, a separate Schedule A-X will be issued for each discrete tax consulting project not specified in this Schedule A-37 (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation. To be of greatest assistance to COMPANY, CONTRACTOR should be advised **in advance** of proposed transactions.

The advice or other information in this document was prepared for the sole benefit of CONTRACTOR's client and may not be relied upon by any other person or organization. CONTRACTOR accepts no responsibility or liability in respect of this document to any person or organization other than CONTRACTOR's client.

To be of greatest assistance to COMPANY, CONTRACTOR should be advised in advance of proposed transactions.

C0631124C

## TAX ADVICE STANDARDS

If CONTRACTOR is considered to be a tax return preparer under Treasury Regulation §301.7701-15, CONTRACTOR will apply elevated standards in providing tax advice. These standards are dependent on certain characteristics of the entity to which CONTRACTOR's services will be directed as follows:

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more reflected in audited financial statements prepared in accordance with U.S. generally accepted accounting principles): CONTRACTOR must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by a tax authority). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, tax practitioners must generally conclude their advice satisfies the "more likely than not" standard; if the taxpayer is advised regarding potential taxpayer penalties, tax practitioners may conclude at a "substantial authority" level.
2. For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity): CONTRACTOR must be able to determine that a return position is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities).
3. If a return position relates to a transaction that is a "principal purpose transaction," CONTRACTOR must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by the taxing authorities) with respect to the position.
4. CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, CONTRACTOR will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. CONTRACTOR will inform COMPANY as soon as possible if, during CONTRACTOR analysis, CONTRACTOR determine circumstances exist that prevent CONTRACTOR from advising COMPANY under these standards.

## DELIVERABLES

Deliverables will be in the format requested by COMPANY depending on the specific tax services that are requested (i.e., oral, e-mail, memorandum, letter, Excel spreadsheet, etc.).

Contract Coordinator: Carla Howard          Phone Number: (214) 812-2384

## WORK SITE

The Work Site will be the following location(s): CONTRACTOR &/or COMPANY offices located in Dallas, TX.

C0631124C

## COMPENSATION, INVOICES, AND PAYMENT

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule A-37, COMPANY will compensate CONTRACTOR as follows.

The fees for this study will be based on the actual time incurred to complete the work at the rates in the table below. Any extension or increase in spend will require an amendment to Schedule A-37. COMPANY will reimburse CONTRACTOR for expenses incurred in connection with the performance of the Services, in accordance with Article 5 "COMPENSATION" of the Agreement and EFH's Reimbursable Expense Policy (as provided in Attachment 5 of the Agreement).

These fees are not dependent on tax or other savings achieved or otherwise based in any way on results obtained.

CONTRACTOR will to notify COMPANY if CONTRACTOR encounters any circumstances that warrant additional time or expense. If such matters exceed the scope of this Schedule A-37, CONTRACTOR will issue an addendum or separate Schedule A to confirm the scope and related terms of any additional engagements.

### PROFESSIONAL AND SUPPORT STAFF FEES SCHEDULE

| Role | Rate |
| --- | --- |
| Partner/Principal | $845 |
| Tax Managing Director | $680 |
| Senior Manager | $660 |
| Manager | $560 |
| Senior Associate | $420 |
| Associate | $260 |

The rates specified in this Schedule A-37 will remain in effect, with respect to and until completion of the Work authorized pursuant to this Schedule A-37.

CONTRACTOR acknowledges that the Bankruptcy Court must approve its fees in order to be compensated. In that regard, CONTRACTOR intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. COMPANY acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from CONTRACTOR's normal billing procedures and, as a result, requires significant effort by CONTRACTOR to comply therewith. As a result, the Company agrees that, subject to Bankruptcy Court approval, CONTRACTOR shall be reimbursed for such professional time incurred.

All invoices shall be sent to:

**Email:**   Ap.invoicing@energyfutureholdings.com
Include location where Work was performed

With a copy to:

Ms. Carla Howard V P Tax
Energy Future Holdings Corp.
1601 Bryan St,
Dallas, TX 75201

C0631124C

## RESERVATION OF RIGHTS

Nothing in this Statement of Work shall constitute or be deemed (a) an allowance or disallowance of any claim, including administrative expense claims under section 503(b) of the Bankruptcy Code, (b) an assumption or rejection of this Statement of Work, any other agreement between the parties, or any other executory contract or unexpired lease under section 365 of the Bankruptcy Code, (c) a waiver of any of the rights of the Buyer to dispute claims asserted against the Buyer in the chapter 11 cases commenced by the Buyer, or (d) change of any priority levels existing in the absence of this Statement of Work.

PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY

__X__ ATTORNEY-CLIENT COMMUNICATION

__X__ ATTORNEY WORK PRODUCT

__X__ TAX ADVISOR

_____ Other: _____

LIST OF ATTACHMENTS
COMPANY and CONTRACTOR agree that the following described attachments, if any, are incorporated herein in their entirety as fully as completely rewritten herein.

1. Appendix 1 - Scope of Tax Due Diligence Assistance Services

Any work performed in connection with this engagement before the execution date of this Schedule A-37 is also governed by the terms of this Schedule A-37.

Work not specified above may be authorized only through a separate Schedule A, or through an amendment or supplement to Schedule A-24B.

KPMG LLP

By: _[signature]_

Name: Emma Preston

Title: Partner

Date: June 2, 2016

EFH CORPORATE SERVICES COMPANY

By: _[signature]_

Name: Carla Howard

Title: SVP Tax & General Tax Counsel

Date: July 21, 2016

C0631124C

## Appendix 1
## Scope of Tax Due Diligence Assistance Services

**The procedures below contemplate an acquisition of stock and/or assets. The procedures ultimately necessary will be determined upon a settled acquisition structure.**

Unless otherwise noted, CONTRACTOR's work will concentrate on the last three taxable years and the most recent available year-to-date financial and tax information.

### Tax Due Diligence

1. Read the Letter of Intent; Target's offering memorandum and financial statements; and COMPANY's draft financial model, and prepare:
   - An initial issues list/focus areas; and
   - A tax information request list.

2. Interview Target management and outside advisors to obtain background information and inquire about Target's:
   - History and legal structure;
   - Tax planning profile/strategies implemented and benefits obtained;
   - Significant transactions (including acquisitions, dispositions, joint ventures, and intercompany transactions) and the tax treatment thereof;
   - Changes in ownership and potential existing limitations on the use of net operating losses, tax credits, or similar tax attributes (this will not constitute a section 382 or net operating loss limitation study or computation);
   - Tax accounting methods utilized;
   - "Listed Transactions" within the meaning of Treasury Regulations section 301.6111-2(b)(2);
   - "Reportable Transactions" within the meaning of Treasury Regulations section 1.6011-4(b);
   - Related party transactions and transfer pricing methods; and
   - Tax compliance and tax examination status.

3. Obtain and read the tax provision and return workpapers (including reserves for uncertain tax positions).

4. Obtain and read U.S. federal, state, and local income tax returns, including:
   - Income/franchise tax returns filed for all open tax years;
   - Prior year estimated taxable income calculations, and calculations used for extension purposes;
   - Current and prior year estimated tax payments;
   - Schedule of tax attributes, including tax losses, tax credits, tax holidays and incentives, and any limitations or restrictions imposed on their utilization;
   - Listed transactions or tax shelters in which Target participated;
   - Prior year tax elections; and
   - State tax allocation and apportionment workpapers and nexus studies.

5. Obtain and read correspondence from federal and state taxing authorities, including completed and pending tax examinations, and inquire regarding current status for the prior five taxable years.

6. Inquire about tax rulings, changes in accounting methods, or closing agreements entered into during the past five years or any pending ruling requests.

C0631124C

7   Inquire about the use of independent contractors, if any, and procedures for classifying workers as independent contractors. Read information available and make inquiries about Target's Form 1099 filings.

8   Inquire about tax opinion letters, correspondence, and memoranda or studies prepared by Target, its outside tax advisor, or its tax counsel regarding tax planning or significant tax exposure items within the last five years.

9   Inquire about tax sharing agreements or other tax arrangements.

10  Inquire about intercompany agreements, transfer pricing, and related party transactions. Obtain and read a schedule of intercompany debt by entity, including accrued or payable withholding taxes.

11  Inquire about corporate (or asset) mergers, acquisitions, divestitures, bankruptcies, and restructurings occurring within the last five years, including dates and types of transactions and tax basis implications of such transactions.

12  Inquire about the non-income tax compliance and examination status, including:
    - Sales and use tax returns filed and compliance procedures;
    - Payroll tax returns filed and compliance procedures;
    - Real and personal property tax filings and compliance procedures;
    - Unclaimed property or escheat compliance, where applicable; and
    - Obtain, read and inquire about the following related to Target's executive compensation:
        - Change of control (Section 280G) provisions and Section 409A compliance of compensation agreements and plans, including employment contracts, stock options, LTIPs, RSUs, phantom plans, deferred bonus plans, etc.; and
        - Section 162(m) compliance and procedures (for public companies).

### Tax Structuring and Other non-Tax Due Diligence Procedures

The following list represents the most common structuring procedures encountered in transactions of this type. At COMPANY's request, CONTRACTOR will assist with one or more of the following. As described above, all structuring services are billed based upon actual time incurred at agreed-upon rates.

13  Read and comment on the financial model.
14  Read and comment on the Purchase Agreement.
15  Read and comment on Funds Flow.
16  Provide advice, consultations, calculations, or other services with respect to:
    - The impact of the acquisition structure;
    - Potential transfer taxes;
    - The cost/benefit of a step-up in the tax basis of the assets (e.g., asset purchase or section 338 election);
    - An estimate of section 382 limitations on the post-closing utilization of net operating losses and similar tax attributes;
    - Tax deductibility of transaction costs, unamortized deferred finance fees, etc.;
    - Interest expense limitations;
    - State and / or local tax incentives/credits;
    - Filing any elections or forms related to the acquisition;
    - Any other related tax advice or assistance with respect to the tax consequences of the proposed transaction or activities post-acquisition.