# **EXHIBIT E**

## **Compensation Supplements**

This Exhibit E includes the following compensation documents:

- Exhibit E(i): Reorganized TCEH Debtors' Management Incentive Plan

- Exhibit E(ii): New Employee Agreements/Arrangements (in the same form as was previously filed with the Bankruptcy Court on October 20, 2015 at D.I. 6544).

RLF1 14947606v.1

**EXHIBIT E(i)**

**Reorganized TCEH Debtors' Management Incentive Plan**

**Reorganized TCEH**

_____, 2015

_____

_____

_____

      Re:    <u>Change in Control Acknowledgement Letter</u>

Dear _____:

      As you know, Energy Future Holdings Corp. and its affiliates are currently undergoing a restructuring, the terms of which are in part provided for in that certain Plan Support Agreement, dated as of August 9, 2015, among the parties set forth therein (the "PSA").  Upon the Effective Date (as defined in the Plan of Reorganization confirmed by the Bankruptcy Court on [DATE], pursuant to the [Order Confirming the Plan of Reorganization][D.I. ###] (the "Plan")), that certain employment agreement among you and [●] (the "Employment Agreement") will be assigned to Reorganized TCEH (as defined in the Plan) (the "Company").  The purpose of this letter agreement is to acknowledge and agree that the transactions being consummated upon the Effective Date will be deemed to constitute a Change in Control (as defined in the Employment Agreement).  This letter agreement will be governed by, and construed under and in accordance with, the internal laws of the State of Texas, without reference to rules relating to conflicts of laws.  This letter agreement constitutes the entire agreement between you and the Company with respect to the subject matter hereof and supersedes any and all prior agreements or understandings between you and the Company with respect to the subject matter hereof, whether written or oral.  This letter agreement may be amended or modified only by a written instrument executed by you and the Company.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

If this letter agreement accurately reflects your understanding as to the terms and conditions of your change in control severance protection with the Company, please sign and date one copy of this letter agreement in the space provided below and return the same to me for the Company's records.

        Sincerely,

        Reorganized TCEH

        By: _____

        Name: _____

        Title: _____

The above terms and conditions accurately reflect our understanding regarding the terms and conditions of my change in control severance protection with the Company, and I hereby confirm my agreement to the same.

Dated: _____, 2015        _____
                                                                    [print name]

**Reorganized TCEH**

_____, 2015

_____

_____

_____

Re:   Change in Control Letter Agreement

Dear _____:

As you know, Energy Future Holdings Corp. ("EFH Corp.") and its affiliates are currently undergoing a restructuring, the terms of which are in part provided for in that certain Plan Support Agreement, dated as of August 9, 2015, by and among the parties set forth therein (the "PSA"). Upon the Effective Date (as defined in the Plan of Reorganization confirmed by the Bankruptcy Court on [DATE] pursuant to the [Order Confirming the Plan of Reorganization] [D.I. ###] (the "Plan")), the Plan effectuated, among other things, a "change in control" under the Executive Change in Control Policy (dated as of May 20, 2005, as amended on December 23, 2008 and December 20, 2010 and as in effect as of the Effective Date, the "CIC Plan") (*see* Plan, Art. V.A.) and the continuation of the CIC Plan at Reorganized TCEH in accordance with its terms (*see* Plan, Art. IV.P.). Upon the Effective Date you will be an employee of Reorganized TCEH and/or certain of its affiliates (as defined in the Plan) (the "Company"), and you will be entitled to severance protection in accordance with the following terms:

1. From and after the Effective Date, you shall continue to be eligible for severance benefits at the same level and upon the same terms and conditions as set forth in the CIC Plan, attached hereto as <u>Exhibit A</u>, including all severance and other benefits set forth in Section 3 of the CIC Plan, subject to the same terms and conditions as are set forth in the CIC Plan.

2. EFH Corp. and Reorganized TCEH acknowledge and agree that the transactions being consummated upon the Effective Date will be deemed to constitute a Change in Control under the CIC Plan (the definition of "Change in Control" in the CIC Plan notwithstanding) for purposes of determining your rights under the CIC Plan.

3. For the sake of clarity, if your employment with the Company and/or its subsidiaries were to be terminated by the Company for a reason other than Cause (as defined in the CIC Plan) or by you for Good Reason (as defined in the CIC Plan), in either case, within 24 months after the Effective Date, you would be entitled to the severance payments and benefits described in Section 3 of the CIC Plan, subject to the terms of the CIC Plan as in effect on the date hereof. If you become entitled to severance payments and benefits described in the CIC Plan, you

will not be entitled to any other severance payments or benefits in connection with such termination.

4. Upon and following execution of this letter agreement, your employment will remain at-will and can be terminated by you or the Company at any time.

5. This letter agreement will be governed by, and construed under and in accordance with, the internal laws of the State of Texas, without reference to rules relating to conflicts of laws; and

6. This letter agreement and the exhibit attached hereto constitute the entire agreement between you and the Company with respect to the subject matter hereof and supersede any and all prior agreements or understandings between you and the Company with respect to the subject matter hereof, whether written or oral. This letter agreement may be amended or modified only by a written instrument executed by you and the Company.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

If this letter agreement accurately reflects your understanding as to the terms and conditions of your change in control severance protection with the Company, please sign and date one copy of this letter agreement in the space provided below and return the same to me for the Company's records.

Sincerely,

Reorganized TCEH

By: _____

Name: _____

Title: _____

The above terms and conditions accurately reflect our understanding regarding the terms and conditions of my change in control severance protection with the Company, and I hereby confirm my agreement to the same.

Dated:_____, 2015        _____
                                                          [print name]

*Change in Control Letter Signature Page*

**EXHIBIT A**

**[attach CIC policy]**

# EXHIBIT E(ii)

## New Employee Agreements/Arrangements

**TERM SHEET REGARDING REORGANIZED TCEH**
**MANAGEMENT INCENTIVE PROGRAM**

General:  Effective upon emergence, Reorganized TCEH (the "Company") will adopt a management equity incentive plan (the "MIP") that will be used to make long-term equity awards to certain key employees, officers, directors, and consultants of the Company as determined by the compensation committee (the "Committee") of the post-emergence Company's Board of Directors (the "Board").

Purpose:  To assist the Company in attracting, retaining, motivating, and rewarding certain key employees, officers, directors, and consultants of the Company and its affiliates post-emergence and promoting the creation of long-term value for stockholders of the Company by closely aligning the interests of such individuals with those of such stockholders.  The MIP will authorize the award of stock-based incentives to eligible persons to encourage such persons to expend maximum effort in the creation of stockholder value.

Share Reserve:  The Company may issue a number of shares pursuant to awards granted under the MIP equal to up to 5% of the common stock of the newly emerged Company determined on a fully diluted basis as of the emergence date.

Administration:  The MIP will be administered by the Committee (or the Board).  The terms of each award (including number of shares subject to the award, exercise price (if applicable), vesting conditions, etc.) will be determined by the Committee (or the Board) in its sole discretion at the time of grant and set forth in an award agreement between the Company and the participant.  The Committee (and the Board) may determine to issue awards at and/or after emergence, in its sole discretion.  The Committee will have broad latitude to take actions that it deems necessary or desirable in the exercise of its authority as plan administrator.  Board and Committee determinations under the plan will be final and binding on participants.

Forms of Award:  The MIP will provide for awards in the form of stock options, restricted stock, restricted stock units, performance-based equity awards, other awards denominated or valued in shares of common stock, and performance-based cash incentive awards, in each case as determined by the Committee at the time of grant.

Vesting:  Awards may vest based on the achievement of service- and/or performance-based vesting conditions or as otherwise determined by the Committee, as determined by the Committee at the time of grant.  The Committee may provide for awards to vest on an accelerated basis in connection with a change in control of the Company and/or certain qualifying terminations of employment (including retirement).

Cash Incentive Awards:  The MIP will include an $11 million cash pool as contemplated by Section 10(o) of the Plan Support Agreement.

Adjustments:  If the Company is recapitalized or if there is a merger, consolidation, share split or exchange, extraordinary dividend or distribution, or other event that affects the common stock, the Committee shall determine the appropriate equitable adjustment to the terms of the MIP (and awards outstanding thereunder) to reflect the event and preserve the intended benefits of participants.

2

<u>Taxes</u>:  At the time of vesting, the Company may require or permit participants to have shares withheld from their awards having a fair market value equal to the applicable income and payroll taxes.