**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF DAVID YING IN SUPPORT
OF THE MOTION OF THE EFH/EFIH DEBTORS
FOR ORDER (A) AUTHORIZING ENTRY INTO MERGER
AGREEMENT, (B) APPROVING TERMINATION FEE, AND (C) AUTHORIZING
ENTRY INTO AND PERFORMANCE UNDER PLAN SUPPORT AGREEMENT**

I, David Ying, declare as follows:

1.  I am a Senior Managing Director of Evercore Group L.L.C. ("Evercore"), a financial advisory and investment banking firm with offices around the world and financial advisor and investment banker to the above-captioned debtors and debtors in possession (the "Debtors"). I submit this declaration (this "Declaration") in support of the *Motion of the EFH/EFIH Debtors for Orders (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into and Performance Under Plan Support Agreement* (the "Motion").[2]

2.  Except where specifically noted, the statements in this Declaration are based on either my personal knowledge, information supplied or verified by the Evercore financial team that I supervise or the Debtors' personnel and third-party advisors, my review of relevant

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

documents, or my opinion based upon my experience and knowledge of the Debtors' operations and financial condition.  If I were called upon to testify, I could and would testify competently to the facts set forth herein.  I am authorized to submit this Declaration on behalf of the EFH/EFIH Debtors.

3. I offer this declaration in support of the EFH/EFIH Debtors' motion requesting authority to enter into the Merger Agreement, pay the Termination Fee, and enter into and perform under the PSA.

**I.     Qualifications.**

4. Evercore is one of the world's leading independent investment banking groups that serves a diverse set of clients around the world over 20 offices in North America, Europe, South America and Asia, including an office located at 55 East 52nd Street, New York, NY 10055.  Evercore has expertise in domestic and cross border restructurings, mergers and acquisitions, debt and equity capital markets transactions, and other financial advisory services.  Evercore has served as an experienced bankruptcy and restructuring advisor to debtors, bondholders, creditors' committees, single creditor classes and secured creditors, shareholders, and boards of directors in a variety of industries.  Evercore is a member of the Financial Industry Regulatory Authority and the Securities Investor Protection Corporation.

5. I specialize in advising both debtors and creditors in financial restructurings and distressed mergers and acquisitions; raising capital for troubled businesses; and representing debtors and creditor constituencies in bankruptcy proceedings.  I joined Evercore in 2005 and am a co-founder and head of the firm's Restructuring and Debt Advisory Group.  I have over 30 years of experience in restructuring advisory, at Smith Barney and Miller Buckfire Ying & Co, in leveraged finance, at Drexel Burnham Lambert and Donaldson, Lufkin & Jenrette, and in

private equity investing, at JLL Partners. I have a B.S. from the Massachusetts Institute of Technology and an M.B.A. from the Wharton School at the University of Pennsylvania.

6. I have advised the Debtors in virtually all financial aspects of their restructuring process since before the Petition Date, including in the Oncor marketing process, together with my colleague William Hiltz. Further information regarding the Oncor marketing process is set forth in the *Declaration of William O. Hiltz in Support of the Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement*, filed substantially contemporaneously herewith (the "Hiltz Declaration").

**II.     Merger Agreement.**

7. As described more fully in the Hiltz Declaration, the EFH/EFIH Debtors entered into the Merger Agreement after an extensive formal and informal marketing process. This marketing process took place in parallel with extensive negotiations with E-side creditors, including with respect to a potential standalone equitization. On the E-side, as soon as it became clear that the Original Plan would terminate, the Debtors moved to rapidly restart negotiations with EFH Corp. and EFIH creditors regarding a potential standalone plan in which reorganized EFH Corp. equity was allocated among existing creditors. To that end, the Debtors submitted a standalone plan proposal to the advisors to various E-side and T-side creditors at the end of April 2016. After years of such negotiations, however, the Debtors were aware of the distinct challenges associated with causing EFH and EFIH creditors to agree to allocations of reorganized EFH Corp. equity.

8. Informed by that experience, the Debtors also refreshed the Oncor marketing process promptly after the Original Plan terminated in April 2016, as discussed in greater detail

in the Hiltz Declaration. Ultimately, the EFH/EFIH Debtors determined to enter into the Merger Agreement, which I believe represents the highest and best available transaction to permit the EFH/EFIH Debtors to emerge from these chapter 11 cases.

9. Specifically, NextEra will repay the EFIH first lien DIP facility as part of its contribution of approximately $9.5 billion—which is primarily cash but also includes stock (initially issued as stock of Reorganized EFH Corp., and later exchanged for stock of NextEra, a highly liquid, publicly-traded security listed on the New York Stock Exchange)—subject to post-closing adjustments. As a result, the EFH/EFIH Debtors project that, assuming among other things a first quarter 2017 emergence, EFIH secured debt will be repaid in full, EFIH unsecured claims will receive an estimated 100% recovery, and creditors of EFH Corp. will receive a recovery based, in part, on the adjusted estimated cash on hand at EFH Corp., plus anticipated additional cash. The mixture of cash and NextEra common stock to be received is subject to allocation methodologies designed to ensure the satisfaction of certain tax requirements related to both the Merger and the spin-off of TCEH.

10. Upon Court approval of the Merger Agreement, EFH Corp. and EFIH are liable for the Termination Fee, in the amount of $275 million, as an allowed administrative expense claim, in the event of a termination of the Merger Agreement. The Termination Fee is $275 million in cash, equal to approximately 1.5% of the transaction's total enterprise value. As discussed in the Hiltz Declaration, the Termination Fee is consistent with fees in comparable utility company transactions. Moreover, I believe the Termination Fee is consistent with fees approved by bankruptcy courts in comparable chapter 11 transactions. In light of the consideration provided by the Merger Agreement, and the firm commitment from a credit-

worthy acquirer that supports it, I believe that the Termination Fee is reasonable under the circumstances.

**III.    PSA.**

11.    The EFH/EFIH Debtors entered into the PSA with NextEra in connection with entry into the Merger Agreement. The PSA embodies the commitments of the EFH/EFIH Debtors and NextEra to support the Amended Plan as to the EFH/EFIH Debtors, subject to the EFH/EFIH Debtors' fiduciary out. The PSA is an integral part of the commitments under the Merger Agreement. Because it enables the transactions contemplated by the Merger Agreement and involves a limited commitment on the part of the EFH/EFIH Debtors, I believe entry into the PSA is in the best interests of the EFH/EFIH Debtors and their estates.

[*Remainder of page intentionally left blank.*]

---

Pursuant to 28 U.S.C. § 1746, I hereby declare that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 3rd day of August, 2016.

                                                                  */s/ David Ying*
                                                                  David Ying
                                                           Senior Managing Director
                                                                 Evercore Group L.L.C.

RLF1 14947691v.1