IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| ENERGY FUTURE HOLDINGS | : | Case No. 14-10979 (CSS) |
| CORP., *et al.*, | : | |
| | : | Jointly Administered |
| | : | |
| Debtors. | : | Hearing Date: August 17, 2016 at 10:00 a.m. |
| | : | Objections Due: August 8, 2016 by 4:00 p.m. |

**THE UNITED STATES TRUSTEE'S LIMITED OBJECTION, RESPONSE AND RESERVATION OF RIGHTS WITH RESPECT TO THE SECOND AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AS IT APPLIES TO THE TCEH DEBTORS AND EFH SHARED SERVICES DEBTORS (D.I. 8745)**

Andrew R. Vara, the Acting United States Trustee for Region 3 (the "U.S. Trustee"), hereby files this Limited Objection, Response and Reservation of Rights ("Limited Objection")[1] to the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and the EFH Shared Services Debtors (the "T-Side Plan") (D.I. 8745).[2]

## PRELIMINARY STATEMENT

The T-Side Plan cannot be approved to the extent that it approves the payment of the reasonable fees and expenses of both the EFH and EFIH Indenture Trustees without those payments being authorized by the Bankruptcy Code and consistent with prior ruling's from this court in these cases.

---

[1] Despite the title of this pleading as a Limited Objection, the U.S. Trustee reserves and any rights, duties and obligations found at law, equity or otherwise in these cases.

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning and context as those capitalized terms included in the referenced, relevant or cited document or pleading.

Absent additional evidence or amendments consistent with these concerns,[3] the Court should deny confirmation of the Plan to the extent of this Limited Objection.

## JURISDICTION

1. Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine this objection.

2. Pursuant to 28 U.S.C. § 586(a)(3), the "U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District. Such oversight is part of the "U.S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the "U.S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the issues raised in this objection.

## FACTUAL BACKGROUND

4. On April 29, 2014, the Debtors commenced these Chapter 11 cases.

5. On April 14, 2015, the Debtors filed their initial plan of reorganization and disclosure statement (collectively, the "Initial Documents") (D.I. 4142 & 4143). On December 1, 2015, and subsequent to several amendments to the Initial Documents, the Debtors filed the

---

[3]  In addition, the U.S. Trustee notes that Article IV, section O of the Plan provides that "The Reorganized Debtor Management Incentive Plan is hereby approved in its entirety and shall be implemented on the Effective Date by the applicable Reorganized Debtors *without any further action by the New Boards* or the Bankruptcy Court." (Emphasis added). This language may be construed as inconsistent with prior rulings and orders of this Court, the Disclosure Statement and with 11 U.S.C. § 503(c). However, in order to resolve any objection and ambiguity, the Debtors have agreed to insert language into the Confirmation Order that, *inter alia*, does not fix or confer any rights to compensation by individual managers of Reorganized TCEH.

2

Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan") (D.I. 7187)[4].

6. On November 3, 2015, the Court commenced the hearing on the confirmation of the Plan in accordance with Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code and after several days of trial, on December 3, 2015, this Court announced its findings and made certain rulings on the record at the December 3, 2016 hearing.

7. On December 9, 2015[5], the Court entered the Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al*, Pursuant to Chapter 11 of the Bankruptcy Code (the "Confirmed Plan") (D.I. 7235, 7285).

8. On or about May 1, 2016, upon information and belief, written notice was delivered to the Debtors and other relevant parties notifying the Debtors and such parties of the occurrence of a Plan Support Termination Event (as defined in the Plan Support Agreement[6]), the delivery of which notice caused the Confirmed Plan to become null and void.

9. On May 1, 2016, the Debtor filed a Joint Plan of Reorganization and Disclosure Statement of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 8355, 8356), and after several amendments, the Debtors filed a Second Amended

---

[4] On December 6, 2015, the Debtors filed a Modified Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 7235).

[5] On December 9, 2015, this Court also entered the Order Granting the Motion of Energy Future Holdings Corp., et al to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform under the Settlement Agreement. (D.I. 7243).

[6] The Order Authoring the Debtors to Enter Into and Perform Under the Plan Support Agreement was entered on September 18, 2015 (D.I. 6097).

Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 8745) (the "T-Side Plan")[7].

10. The New Plan further provides for the payment of certain fees as follows:

> The EFIH Debtors shall pay in Cash the reasonable and documented fees and expenses allowed under the EFIH Unsecured Note Indentures, and the EFH Debtors shall pay in Cash the reasonable and documented fees and expenses allowed under the EFH Notes Indentures; *provided, however*, that such fees and expenses shall be subject to approval by the Fee Committee, with respect to the reasonableness of such documented fees and expenses in their reasonable discretion, and the Bankruptcy Court; *provided further, however*, that such fees and expenses shall be paid on the EFH Effective Date or as soon as reasonably practicable thereafter following Fee Committee and Bankruptcy Court approval thereof.
>
> All amounts distributed and paid pursuant to this Article IV.R shall not be subject to disgorgement, setoff, recoupment, reduction, or reallocation of any kind.

Plan, Article VI. Section R.

11. Article IV. Section R. of the T-Side Plan provides for the payment of the reasonable and documented fees and expenses allowed under the various Note Indentures, which include the professional fees of the EFH Unsecured Notes Indenture Trustee and the EFIH Notes Indenture Trustee. However, the T-Side Plan is silent as to whether Bankruptcy Court approval of such fees and expenses is being sought or required and does not specify the legal justification for such payments.

---

[7] The Disclosure Statement related to the New Plan is the Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors filed on June 16, 2016 (D.I. 8747, 8753) and approved by Court order on June 17, 2016 (D.I. 8761).

## LAW AND ANALYSIS

### A. General Standards

12. In order to obtain confirmation, a plan proponent has the burden to establish compliance with all the requirements of section 1129(a) of the Bankruptcy Code (the "Code"). *See* 11 U.S.C. § 1129(a). The plan proponent bears the burden of proof with respect to each and every element of section 1129(a). *See In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).

### B. The T-Side Plan Provides for the Payment of Non-Estate Retained Professionals Without Adequate Disclosure or Legal Justification

13. Article IV. Section R of the Plan obligates both the EFIH Debtors and the EFH Debtors to pay the respective fees and expenses of the EFIH Notes and EFH Notes Indenture Trustees.

14. However, the Debtors do not provide sufficient legal justification or information concerning the statutory requirements imposed by the Bankruptcy Code for such payment.

15. In particular, the EFIH Notes and EFH Notes Indenture Trustee professional fee payments relate to professionals whose compensation is specifically governed by 11 U.S.C. §§ 503(b)(3)(D), (b)(4) and (b)(5) of the Code. Although such professionals might be eligible to be compensated from the bankruptcy estate, section 503 imposes detailed requirements that must be met before approval and payment, including the timely filing of a request for payment by the professional, *see* 11 U.S.C. § 503(a); notice and a hearing before the court, *see* 11 U.S.C. § 503(b); a showing that such expenses were "actual" and "necessary," *see* 11 U.S.C. § 503(b)(3); a showing that the creditor, unofficial committee, or indenture trustee has made a "substantial contribution" to the bankruptcy case, *see* 11 U.S.C. § 503(b)(3)(D); and a finding by the court

that any compensation paid to an attorney or accountant is "reasonable." *See* 11 U.S.C. § 503(b)(4).

16. Additionally, such party's right to payment under section 503(b) is not automatic but "depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 535 (3d Cir.1999). It is not clear what the legal justification is that support s or authorizes the payment of such fees under the T-Side Plan or whether the subject professionals have to and can satisfy section 503(b).

17. In particular here, these professionals must satisfy the requirement that such indenture trustee, and its professionals, have made a "substantial contribution" to the bankruptcy case.

18. In fact, this Court previously ruled, among other things, that:[8]

> Thus, courts have found that a creditor or ad hoc committee of creditors is entitled to payment of its professional fees and expenses by virtue of making a substantial contribution to the bankruptcy case, see *Davis v. Elliot Management Corp In Re: Lehman Brothers Holding Inc.*, 508 BR 283 of 296 Southern District New York 2014. But the Court must make an independent

---

[8] In *In re Continental Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002), the Third Circuit describes the law on "claim and issue preclusion" which were formerly known as "res judicata and collateral estoppel" in the Circuit. 279 F.3d at 332. The Third Circuit described the concepts as follows:

> Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim.

*Id.* (quoting *New Hampshire v. Maine*, 532 U.S. 742 (2001)). The "two doctrines share the 'dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.'" *Id.* (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). The doctrines may be implicated here as they were in *Continental*, because the Court will be asked to rule on "an issue that was unambiguously identified, properly presented and ably and vigorously argued by extremely able counsel of all parties." 279 F.3d at 233 (3d Cir. 2002).

> determination as to the existence of the substantial contribution and whether the fees and expenses are reasonable. It cannot defer to the Debtor's business judgment.

Transcript of December 3, 2015 Hearing, Tr. 35: 16-25; Tr. 36: 1.[9]

19. The fact that the payments of such professional fees are proposed as part of a chapter 11 plan does not relieve the third-party professionals of their obligation to comply with the requirements of section 503, which is the "sole source" of authority to pay post-petition professional fees on an administrative basis. *Davis v. Elliot Management Corp. (In re Lehman Bros. Holdings Inc.)*, 508 B.R. 283, 290 (S.D.N.Y. 2014). In *Lehman*, the court roundly rejected an attempt by certain committee members to circumvent section 503(b)(4) by seeking payment under a "permissive" plan provision which purported to pay third-party professional fees without regard to whether they could be authorized under section 503. As the court explained, plans pay only claims and administrative expenses:

> Although the Bankruptcy Code does not explicitly forbid payments [of] professional fees that are not administrative expenses, no such explicit prohibition is necessary. Reorganization plans exist to pay claims and expenses . . . Therefore, the Individual Members' professional fee expenses are either administrative expenses or not, and if the latter, they cannot be paid under a plan.

*Id.* at 293. Indeed, the court recognized that any contrary result "could lead to serious mischief," since it would allow plan proponents to distribute the estate's assets without regard to the Bankruptcy Code's priority scheme. *Id.*

---

[9] In addition, see Paragraphs 118, 119 and 122 of the Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code (D.I. 7244); Paragraphs 142 and Sections K, L, M and P of the Order Granting the Motion of Energy Future Holdings Corp., *et al* to Approve a Settlement of Litigation Claims and Authorize The Debtors to Enter into and Perform under the Settlement Agreement (D.I. 7243) and the Transcript of the December 3, 2015 Hearing, Tr. 34: 11-18; Tr. 34: 19-23; Tr. 35: 16-25; Tr. 36: 1; Tr. 36: 7-14; Tr. 37: 15-25; Tr. 38: 1-4; and Tr. 38: 12-21.

20. The *Lehman* court's reasoning applies with equal force here. Like the fees at issue in *Lehman*, the third-party professional fees "are either administrative expenses or not." *Id.* Because the third-party professionals seek to enjoy the benefits of administrative priority under section 503—the sole possible source of statutory authorization permitting them to be paid by the Debtors in full on the Effective Date—they must also comply with the disclosure obligations and substantive limitations imposed by that section.

21. Even apart from section 503(b), Article IV.R of the T-Side Plan cannot be approved because it violates section 1129(a)(4) of the Code.[10] That section provides that a court may approve a chapter 11 plan only if, among other things, the court finds that any payment made by the debtor "for services or for costs and expenses" in connection with the case has either "been approved by, or is subject to the approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). Article IV.R violates this requirements because it purports to provide to other parties (and not the Court) sole discretion to determine whether a particular fee is reasonable, it provides no disclosure whatsoever of the actual fees to be paid, and there is consequently no basis on which this Court can make the reasonableness finding required by section 1129(a)(4).

22. Accordingly, the U.S. Trustee submits that the Court should not approve the confirmation of the T-Side Plan unless Article VI.R of the T-Side Plan and the proposed confirmation order are amended to: (i) require disclosure to the Court, the U.S. Trustee, and other parties in interest of the identities of any professionals receiving payments under that

---

[10] To be clear, the U.S. Trustee does not suggest that section 1129(a)(4) may be used as a substitute for review under section 503(b). *See Lehman*, 508 B.R. at 294 n.9 (rejecting argument that section 1129(a)(4) could be used to authorize fees prohibited by section 503(b)). But even assuming that any of the proposed fees did fall outside the scope of section 503(b), they would nevertheless remain subject to the more general disclosure and court approval requirements of section 1129(a)(4). Under section 105(a) cannot be used to override the prohibitions of another section of the Code. *See In re Combustion Engineering, Inc.*, 391 F.3d 190, 236 (3rd Cir. 2004) ("The general grant of equitable power contained in § 105(a) cannot trump specific provisions of the Bankruptcy Code, and must be exercised within the parameters of the Code itself"); *see also Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("We have long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.") (citations omitted).

section, the amount of the proposed payments, and the legal and factual basis for the reasonableness of such payment; (ii) clarify that professionals subject to section 503(b), including without limitation professionals of creditors and indenture trustees, shall be compensated only to the extent compensation is authorized and actually approved and awarded under that section; and (iii) provide a reasonable opportunity for the United States Trustee and other parties-in-interest to object to such fees on any grounds, including without limitation the professionals' failure to satisfy any part of section 503(b).

## CONCLUSION

23.     As detailed above, the T-Side Plan is not presently confirmable because it seeks approval of certain relief that is contrary to applicable law and controlling precedent.

24.     The U.S. Trustee reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery and cross-examine any and all witnesses in support of the T-Side Plan.

**[Remainder of Page Left Blank Intentionally]**

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court issue an order consistent with this Limited Objection and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: August 8, 2016
      Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**ACTING UNITED STATES TRUSTEE**

By: */s/ Richard L. Schepacarter*
    Richard L. Schepacarter
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Room 2207, Lockbox 35
    Wilmington, DE 19801
    (302) 573-6491
    (302) 573-6497 (Fax)