# **EXHIBIT A**

June 22, 2016 Letter from S. Kazan to M. Esser

# Kazan, McClain, Satterley & Greenwood℠

**A Professional Law Corporation**

Steven Kazan
David M. McClain
Joseph D. Satterley
Gordon D. Greenwood
Philip A. Harley (1947-2009)
Denise Abrams
Justin Bosl
Ted W. Pelletier
Denyse F. Clancy
John L. Langdoc

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, CA 94607
(510) 302-1000 • (510) 835-4913 • www.kazanlaw.com

Of Counsel
Frances C. Schreiberg

Andrea Huston
Petra DeJesus
Ian A. Rivamonte
Matthew L. Thiel
Michael T. Stewart
William F. Ruiz
Mark A. Swanson
Joseph Nicholson
Ryan Harris
Rachel Berkness
Henry A. Steinberg
Simarjit Kaur
Donovan Hunter
Arcelia Hurtado
Denise R. Smith

June 22, 2016

**Via Electronic Mail Only to *michael.esser@kirkland.com***

Michael P. Esser, Esq.
Kirkland & Ellis LLP
555 California Street
San Francisco, CA 94104

Re:   ***In re Energy Future Holdings Corp., et al.***
      **Case No. 14-10979**

Dear Michael:

  This is in response to your letter of June 14. We are of course equally willing to continue the meet-and-confer process with you before we impose upon the court. However, we would like to complete the process in a timely manner; if it proves necessary to go to the court, we would like to do so before depositions begin. We have continued to look at the weekly productions and as yet have found nothing of relevance or importance with respect to the issues we have raised. If you believe that these productions in fact include matters relevant to our concerns, I would appreciate your pointing us to those documents.

  We are beginning to see deposition notices in the T-side confirmation process and understand that someone is supposed to be coordinating the Objectors' side, working with someone at your firm, to organize a schedule and manage the discovery proceedings. If you can tell us who the T-side representative is, that would be very useful. We understand that the same approach is to be undertaken on the E-side. Please let us know who has been charged with the responsibility to coordinate Objector efforts or has volunteered to do so, and who they are working with at your end.

  In particular, we have seen a deposition notice for Anthony R. Horton in connection with the T-side confirmation. We are interested in deposing him as well, and if it is more convenient for your firm and Mr. Horton, we would be willing to try to accomplish that in the context of the T-side deposition, assuming adequate time would be available and assuming we have been provided with the relevant discovery. If you prefer that we wait for E-side discovery, please let us know.

  I also note that we have on calendar for June 28 the deposition of your client's witness or witnesses in connection with a Rule 30(b)(6) notice on a series of separate topics. Obviously,

Michael P. Esser, Esq.
Kirkland & Ellis LLP
June 22, 2016
Page 2

such a deposition is document-intensive, and as yet you have provided no documents. Please let me know whether you believe this deposition should proceed on June 28 or should be postponed, so that I don't make an unnecessary trip to New York. If you wish it to proceed, please provide all responsive documents as soon as possible in advance of the deposition so that we have an opportunity to review them and the deposition can proceed quickly and efficiently.

To aid in a more efficient meet-and-confer process, I will direct my comments to the three groups of requests summarized in paragraph two of your letter. You summarize your objections as based on three reasons. First, you stated that our claims are unimpaired and will be reinstated, so we don't get to vote. I agree that on the face of the current plan, all asbestos claims for which proofs of claim are timely filed will be reinstated and passed through the bankruptcy.[1] Whether such claims are impaired or unimpaired, however, depends on whether there is sufficient money left to pay them in the future. The original plan, which has been withdrawn, would have accomplished the entire reorganization in one process, and, as you may recall, your office pointed out to us that the surviving company would have a fairly liquid equity of $7 billion, which seemed more than adequate when measured against the approximate $1 billion in listed Asbestos Debtor intercompany receivables. By contrast, under the new plan, the T-side plan could be confirmed, the assets dealt with, and relatively little left on the E-side for when we get around to resolving that part of the case. We have sought discovery to clarify the extent to which these receivables will in fact have value. We aim for a discovery process that provides us sufficient information to fully, fairly, and rationally determine the value of the E-side assets and the extent of a possible shortfall at any of the E-side Estates, particularly those of the Asbestos Debtors.

Speaking only with respect to asbestos claims, the potential value of assets available to those claimants depends on what assets survive and what other claims will be made against those assets.

Second, you object that information concerning insurance coverage is not pertinent to any objection we could make at confirmation. This is simply incorrect: the amount of insurance will impact the amount of assets available to compensate asbestos claims. There may be substantial insurance assets available for the satisfaction of asbestos claims that would have no other value to any of the EFH companies. As I have said before, if there is $10 billion in solvent accessible insurance coverage, our work here is pretty much done. However, I assume that if there were a lot of insurance, someone on your side would have invited me to come review that material, be reassured, and then proceed accordingly. In the absence of this information, I can only conclude

---

[1] However, the new plan, like the old plan, purports to discharge asbestos claims, including Unmanifested Claims, for which no proofs of claim were filed by the bar date. As you know, Ms. Fenicle and Mr. Fahy contend that the discharge provisions of the plan violate the due process rights of Unmanifested Claimants.

Michael P. Esser, Esq.
Kirkland & Ellis LLP
June 22, 2016
Page 3

it is likely that the insurance coverage is not very significant and won't help very much. Due diligence on our part requires that we try to run this to ground and know what we're dealing with.

      Similarly, the two 1993 indemnification agreements listed on the first-day SOFA of LSGT Gas Company LLC (Case No. 14-11039, Docket 1272, page 30) could in fact be a substantial drain on assets. We have asked for information about Debtors' experience with these so that, as with the insurance, we can evaluate the potential cost/drain on value associated with those agreements. Interestingly, we have found no evidence that the indemnitees under those agreements have been given notice of this bankruptcy, and if so, whether they timely filed claims. And, we have found no record that the Debtors have listed these contracts as executory contracts that they can seek to disavow and repudiate in the bankruptcy itself. Again, if there are documents bearing on these questions, it would be helpful to you as well as to us if you shared that information.

      Third, you also justify your objections on the grounds that we already have "an extraordinary amount of valuation-related material…" As yet, however, we have essentially no information on the current value of the $990 million in intercompany accounts receivable listed on the first-day SOFAs of the four Asbestos Debtors. I don't believe we have seen any current information showing the present value of those assets, after application of the intercompany cash management pool rules, which, as we understand from deposition testimony, was supposed to be credited with interest on a monthly basis. Even more importantly, we have no way of testing whether those first-day balances were in fact accurate.

      As you already know, we have found enough internal inconsistencies in those first-day SOFAs to suggest to us the very real possibility that those statements were years, if not decades, out of date.

      For that reason, we have requested production of what is undoubtedly a very small volume of financial and corporate records of the four Asbestos Debtors, which appear to have been essentially moribund non-operating shell entities for decades.

      I understand that you have rewritten your objection with respect to Ms. Fenicle and Mr. Fahy having access to insurance documents as members of the Official Committee, and object only to the extent that we already possess the material. We do not possess any of that material, as it was produced on a professionals' eyes-only confidential basis to our committee's counsel. Nor can we identify specifically what material you produced to committee counsel that we want to review; we do not know what materials you produced or what an analysis of those materials showed. We also do not believe that you are correct in your assertion that insurance information was produced only with respect to negotiations surrounding the asbestos bar date. I don't see why insurance would be relevant to the bar date except to the extent that your clients might have concluded that the absence of insurance made it more important that they eliminate

Michael P. Esser, Esq.
Kirkland & Ellis LLP
June 22, 2016
Page 4

as many potential future claims as possible. The list of insurance policies you provided us, without information on the contents of those policies and the extent to which they might have been exhausted is, of course, entirely useless. And, for the record, I object to your insinuation that we intend to use information requested in these proceedings in violation of the protective order issued with respect to discovery in this case. We do not.

      I hope the above provides some food for thought and look forward to a productive meet-and-confer session. I am happy to do so by telephone and would invite you to give me some times during which your team is available. Afternoons tend to be better for me, but I can try and work around your schedule as much as possible. I would appreciate a prompt response with respect to the 30(b)(6) deposition we noticed for June 28 as well as with respect to the issues mentioned regarding Mr. Horton's deposition, which is noticed for next Thursday.

                                  Very truly yours,

                                  / s /

                                Steven Kazan

SK:tr

cc:    Dan Hogan
       Leslie Kelleher
       Ethan Early