IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) <br> ) <br> ENERGY FUTURE HOLDINGS CORP., *et* ) <br> *al.*,[1]  ) <br> ) <br> *Debtors*. ) <br> ) | Chapter 11 <br> Bankruptcy Case No. 14-10979 (CSS) <br> (Jointly Administered) |

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY OF JACK F. WILLIAMS**

Energy Future Holdings Corp. and its affiliated debtors and debtors in possession (collectively, the "Debtors") respectfully request that the Court exclude the testimony of Jack F. Williams ("Williams") from the TCEH Confirmation Hearing

**PRELIMINARY STATEMENT**

Williams' testimony is not helpful to the trier of fact and should be excluded. The declared purpose of his testimony is to value EFH Corporate Services Company ("EFH Corporate Services") in the context of the New Plan, which splits the Debtors into E-Side and T-Side Debtors for confirmation and transfers EFH Corporate Services from the former to the latter. To do so, Williams should have compared the value of EFH Corporate Services in the context of a transfer with the net value to EFH Corp. of retaining it. But Williams does not even attempt that comparison. Instead, he conducts an adjusted balance sheet valuation and assigns a value to EFH Corporate Services without considering the financial impact on EFH Corp. of retaining it.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

This omission is important because it precludes Williams from reliably estimating the avoided cost, if any, to EFH Corp. of transferring EFH Corporate Services. Calculating the value of ownership would have required comparing the benefits to EFH Corp. of retaining EFH Corporate Services with the potential costs, such as taxes, employee salaries, and burdens imposed by the its contractual obligations. Here, Williams does not consider the net value to the E-Side of retaining EFH Corporate Services.

Williams conceded during his deposition that retaining EFH Corporate Services would impose costs on the E-Side, (Transcript of the Deposition of Jack F. Williams, Jul. 28, 2016 ("<u>Williams Dep. Tr.</u>") (Ex. A) at 133:19-134:2), but he entirely fails to account for those costs, or for the net value of retaining EFH Corporate Services, in his valuation. To be helpful to the trier of fact, Williams would have had to consider the potentially-substantial cost to EFH Corp. of retaining EFH Corporate Services, which currently does the vast majority of its work for T-Side entities. Because he did not, his testimony will not be helpful to the trier of fact and should be excluded.

Moreover, Williams also fails to assign a fair market value to EFH Corporate Services, so he does not provide the trier of fact a basis for assessing its value to EFH Corp. in a subsequent transaction. In other words, the trier of fact cannot determine from Williams' testimony what value, if any, the E-Side would get from retaining EFH Corporate Services *or* from selling it.

For the reasons set forth herein, Williams' testimony is not helpful to the trier of fact, and the Debtors respectfully request the Court exclude it.

## **BACKGROUND**

1. The Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code on April 29, 2014. On December 6, 2015, the Debtors filed their *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp. et al. Pursuant to Chapter 11 of the Bankruptcy*

2

*Code* [D.I. 7235] (the "Prior Plan"). The Prior Plan was confirmed on December 9, 2015 [D.I. 7285]. The Prior Plan required certain conditions precedents, including regulatory approvals, to occur before becoming effective. Because a condition precedent did not occur, the Prior Plan was rendered null and void.

2. On May 1, 2016, the Debtors filed (i) the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8355] (the "New Plan"), (ii) the *Disclosure Statement for the New Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8356], and (iii) the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8358].

3. On June 10, 2016, the Debtors filed the *Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8687] and *Second Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8689]. On June 16, 2016, the Debtors filed the *Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 8753].

4. The New Plan contemplates transferring the equity of EFH Corporate Services, which is currently a wholly-owned subsidiary of EFH Corp., to Reorganized TCEH. EFH Corporate Services provides shared services, including accounting services, legal services, human resources,

treasury services, information technology and infrastructure, and business services administration. EFH Corporate Services employs approximately 420 employees who almost exclusively serve TCEH entities (*i.e.*, Luminant and TXU Energy). Approximately ▮% of EFH Corporate Services services and costs are allocated to TCEH; the remaining ▮% are allocated to various E-Side entities. (Expert Rebuttal Report of John Stuart dated July 25, 2016 (Ex. B) at 3); (EFH06365711 (Ex. C)). EFH Corporate Services is intended to be a zero-profit entity. All shared services are billed at cost, and, pursuant to the Interim Transition Services Agreement, the E-Side will continue to receive services previously provided by EFH Corporate Services at cost for a period of time. (Expert Rebuttal Report of John Stuart dated July 25, 2016 (Ex. B) at 3; Transition Services Agreement [D.I. 9100-2].

5. On July 15, 2016, the EFH Indenture Trustee served the Debtors with the Expert Report of Jack Williams. On July 27, 2016, two days after the deadline to serve rebuttal expert reports, the EFH Indenture Trustee served Debtors with a second, "supplemental" Williams report. In his reports, Williams purports to quantify the equity value of EFH Corporate Services using an adjusted balance sheet valuation. He concludes that the equity value of EFH Corporate Services is "at least $▮." (Supplemental Expert Report of Jack Williams (Ex. D) at 3, 14.)

6. But Williams intentionally limited his opinion to the value of EFH Corporate Services in the context of the proposed transaction and refused even to attempt to value the costs associated with EFH Corp.'s continued ownership of EFH Corporate services, including liquidation costs, severance costs, and shutdown costs, (Williams Dep. Tr. at 133:3-134:25). Nor did Williams assess EFH Corporate Service's fair market value. (*Id* at 127:19-24 ("Q: ▮▮▮").)

**ARGUMENT**

7.      The test for admissibility of expert testimony under Rule 702 is an "exacting" one. *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000).  The Supreme Court has made clear that under Rule 702, courts must serve as "gatekeep[ers]" to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand" before admitting or considering the testimony for any purpose. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-51 (1999).  The proponent of the expert testimony bears the burden of showing by a preponderance of the evidence that proffered expert testimony is both relevant and reliable. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145-46 (3d Cir. 2000); *In re W.R. Grace & Co.*, 355 B.R. 462, 471-72 (Bankr. D. Del. 2006).

8.      Rule 702 provides that expert testimony must "help the trier of fact . . . to determine a fact in issue." Fed. R. Evid. 702.  To meet this threshold test of relevance, an expert's opinions must "speak[] clearly and directly to an issue in dispute in the case." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 n.17 (9th Cir. 1995).  "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591.[2]  Such testimony must be excluded under Rule 702 because it fails to meet a basic "precondition to admissibility." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003).  The Third Circuit has provided additional instruction on the Court's gatekeeping function, requiring it to enforce "a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Id.*

---

[2]      Internal citations and quotation marks omitted unless otherwise noted.

9. To be reliable, an expert's opinion must have "good grounds" and cannot be based on "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590; *see also In re TMI Litig.*, 193 F.3d 613, 670 (3d Cir. 1999). Moreover, the expert's opinions "must be the product of reliable principles and methods that are reliably applied to the facts of the case." Fed. R. Evid. 702 & Advisory Committee Note (2000); *Daubert*, 509 U.S. at 590; *Oddi*, 234 F.3d at 156. An expert's opinions must be "derived by the scientific method" and "supported by appropriate validation." *Daubert*, 509 U.S. at 590. An expert's "bald assurance of validity is not enough." *Daubert*, 43 F.3d at 1316; *Oddi*, 234 F.3d at 156 (upholding exclusion of an expert where the proponent "could not establish the existence of [the expert's] methodology and research[,] let alone the adequacy of it"). Even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999).

10. Rule 702 also requires that the expert testimony "fit the issues in the case." *Schneider*, 320 F.3d at 404. In other words, the expert's testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Id.* As the Supreme Court explained in *Daubert*, Rule 702's "helpfulness" standard "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." 509 U.S. at 591-92. The "fit" requirement thus "goes primarily to relevance." *Id.* at 591.

### I. WILLIAMS' TESTIMONY IS NOT HELPFUL TO THE TRIER OF FACT BECAUSE HE DOES NOT CONSIDER THE NET VALUE TO EFH CORP. OF RETAINING EFH CORPORATE SERVICES.

11. The EFH Indenture Trustee cannot meet its burden to show that Williams' testimony is helpful to the trier of fact because Williams does not consider the net value to EFH Corp. of retaining EFH Corporate Services or of selling it to a third party.

12. Either EFH Corporate Services will be transferred from the E-Side to the T-Side, or it will not be. Valuing EFH Corporate Services in the context of the confirmation proceedings therefore requires an assessment of the net loss to EFH Corp. (its equity owner) if EFH Corporate Services is in fact transferred. That in turn requires evidence of the net value to EFH Corp. of *retaining* EFH Corporate Services. Williams fails to consider the value to EFH Corp. of retaining EFH Corporate Services, either for its own use or to sell to a third party; his testimony should be excluded as unhelpful to the trier of fact for that reason alone.

13. This failure is particularly significant because, contrary to Williams' testimony that EFH Corporate Services has $[REDACTED] in net equity, if EFH Corp. retained EFH Corporate Services, EFH Corporate Services could incur significant costs that would eliminate any potential value to EFH Corp. *First*, EFH Corporate Services has 420 employees, [REDACTED] percent of whose time is devoted to the T-Side entities. (EFH06365711 (Ex. C)); Transition Services Agreement [D.I. 9100-2]. If EFH Corp. keeps EFH Corporate Services, it must either retain the employees at substantial and unnecessary cost or conduct layoffs, which could trigger significant severance obligations and obligations under the WARN Act. (Williams Dep. Tr. at 61:10-15, 63:18-25.) *Second*, if EFH Corporate Services is not transferred to the T-Side, it may be forced to liquidate or wind up this debtor. (*Id.* at 108:21-109:10, 156:7-11.) In that case, the E-Side could incur costs associated with the wind-up process, such as professional trustee fees or other wind-down costs. (*Id.* at 109:14-18.) *Third*, if EFH Corporate Services in fact liquidates, the E-Side debtors might be liable for its failure to perform the contractual obligations imposed on it by the shared services agreements or other contracts to which it is a party. (*Id.* at 156:12-157:12.) If any of these costs occur, retaining EFH Corporate Services could be a net loss for EFH Corp.

14. Williams also fails to quantify the fair market value of EFH Corporate Services such that the trier of fact could consider the benefit to the E-Side of retaining EFH Corporate Services through the confirmation proceedings and then selling it to a third party. Because Williams does not attempt that valuation, his testimony would not help the trier of fact determine the key question at issue, Fed. R. Evid. 702, and it is therefore irrelevant and inadmissible under the Federal Rules. *Daubert*, 509 U.S. at 591 (the requirement that testimony fit the issues in the case "goes primarily to relevance.").

## II. WILLIAMS MAY NOT OFFER OPINIONS NOT DISCLOSED IN HIS EXPERT REPORT.

15. Williams may not offer at trial opinions that were not disclosed in his expert reports. The operative scheduling order in this proceeding, *Second Supplement to Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8972] ("Scheduling Order"), specifically provides that any expert reports and disclosures prepared by rebuttal expert witnesses "must satisfy the requirements of Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure." *Id*. at 1(p), (q). Rule 26(a)(2)(B) in turn requires that an expert witness prepare a report that "must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them."

16. Notwithstanding that requirement, the EFH Indenture Trustee seeks to call Williams to testify as to the "value and use of NOLs" and "regarding EFH Properties." (EFH Indenture Trustee's Final Witness List for the TCEH Confirmation Hearing, dated Aug. 5, 2016 (Ex. E) at 3.) Williams did not opine as to either subject in his expert reports. Indeed, during his deposition, Williams specifically denied any intention of offering an opinion as to EFH Properties. (Williams Dep. Tr. at 90:7-10) ("█████████

8

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") (emphasis supplied).  The clear language of the Scheduling Order therefore prohibits Williams from offering opinions on NOLs or on EFH Properties for the first time at trial.

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request entry of an order excluding the testimony of Jack Williams and awarding the Debtors such other and further relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Wilmington, Delaware
Dated:  August 8, 2016          */s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                      defranceschi@rlf.com
                      madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:            edward.sassower@kirkland.com
                      stephen.hessler@kirkland.com
                      brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini  (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:            james.sprayregen@kirkland.com
                      marc.kieselstein@kirkland.com
                      chad.husnick@kirkland.com
                      steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession