**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Jointly Administered |
| | Re: D.I. 9199 |
| Debtors. | Hearing Date:  August 17, 2016 at 10:00 a.m. |
| | Objection Deadline: August 8, 2016 |

**EFH INDENTURE TRUSTEE AND CONTRARIAN CAPITAL
MANAGEMENT, LLC'S OBJECTION TO CONFIRMATION OF THIRD
AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY
FUTURE HOLDINGS CORP., *ET AL.*,
<u>PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................I

TABLE OF AUTHORITIES .................................................................................... IV

I. INTRODUCTION ................................................................................................... 1

II. BACKGROUND..................................................................................................... 3

    **A.**    **The Role of the EFH Indenture Trustee for the EFH Noteholders**.................. 3

    **B.**    **The Prior Confirmed Plan and the December Settlement** ............................... 4

        i)    The December Settlement Did Not Contemplate the EFH 363 Transactions ........................................................................................ 4

        ii)    Termination of the Prior Plan and Limited Relevance of the Plan Support Agreement ...................................................................... 6

    **C.**    **The Current Plan** ................................................................................................ 8

        i)    Proposed Transfer of Equity of EFH Corporate Services and Non-Debtor EFH Properties to Reorganized TCEH ........................... 9

        ii)    Proposed Use and Transfer of EFH Corp.'s Tax Attributes .................... 10

        iii)    July 28, 2016 IRS Private Letter Ruling – Culmination of a Summer of Increasing Optimism ................................................. 12

        iv)    EFH Corp. is the Undisputed Owner of Virtually All NOLs Under Applicable Non-Bankruptcy Law and Under the Terms of the Settlement Agreement ............................................................. 13

III. ARGUMENT ...................................................................................................... 15

    **A.**    **Consummation of the Busted 351, as Contemplated, Involves the Use of Property of EFH Corp.'s Estate to the Detriment of EFH Corp.'s Stakeholders** ................................................................................................... 15

        i)    The Spin-Off Contemplates the Use of Tax Benefits by Reorganized TCEH For Less Than A Fair Equivalent Value.................. 16

        ii)    ██████████████████████████████████ ██████████████████████████ ................................ 17

        iii)    The Spin-Off Results in Alternative Minimum Tax Liability at EFH Corp .............................................................................. 18

    **B.**    **The Debtors Have Manufactured a False Dilemma:  Either Face "Tax Armageddon" or Give Away EFH Corp.'s Valuable Tax Attributes and other Assets** ................................................................................................ 19

i) A Busted 351 is a Distinct Transaction From the Tax Free Spin-Off of TCEH and was Not Pre-Negotiated in the Plan Support Agreement or the December Settlement .................................................. 22

ii) A T-Side Plan That Generates a Stranded Tax Where, as Here, Options Are Available, Would Not Be Feasible ........................................ 22

C. **The EFH 363 Transactions Cannot Be Approved Because the Disinterested Director Decision Making Process Was Flawed** ...................... 24

i) The Facts at Trial Will Show that the Plan Proponents are Not Entitled to Rely on the "Business Judgment Standard" and Plan Proponents Bear the Burden to Prove the EFH 363 Transactions Pass Scrutiny Under the Entire Fairness Standard of Review .................. 25

ii) Brief Overview of Facts Requiring Debtors to Prove the Entire Fairness of EFH 363 Transactions ............................................................ 26

iii) The EFH 363 Transactions Must be Analyzed Under the Entire Fairness Standard ...................................................................................... 28

iv) The Decision Making Process In Approving the Use and Consumption of EFH Corp.'s NOLs and to Approve the EFH 363 Transactions Was Flawed ........................................................................ 31

D. **The Current Plan Does Not Satisfy the Requirements of Bankruptcy Code Section 1129** ........................................................................................ 33

i) The Current Plan Violates Section 1129(a)(3) Because the EFH 363 Transactions Violate Applicable State Law ...................................... 34

(a) The EFH 363 Transactions Are Fraudulent Transfers Under Texas Law ...................................................................................... 34

ii) The Current Plan Violates the Best Interest of Creditors Test ................. 36

iii) The EFH Disinterested Directors and Officers Cannot Be Provided Releases and Exculpations Outside of a Plan for EFH Corp., Especially With Regard to the EFH 363 Transactions ............................ 37

E. **The Current Plan is Not Feasible** ................................................................... 40

F. **The Procedural Posture of the Confirmation Hearing and Approval of the EFH 363 Transactions Violates the Bankruptcy Code and Rules and Prejudices the Rights of EFH Corp.'s Creditors** ..................................... 41

i) The Request for Approval of the EFH 363 Transactions Constitutes a *Sub Rosa* Plan for EFH Corp ............................................. 41

ii) Separate Notice Is Required For Approval Of the EFH 363 Transactions ............................................................................................. 41

iii)    The Bankruptcy Code and Procedural Due Process Do Not Permit Entry of Multiple Confirmation Orders for One Plan in These Circumstances ........................................................................................... 43

**G.    The TCEH Debtors are Not Entitled To A Good Faith Finding  If The EFH 363 Transactions Are Approved** .............................................................. 44

IV. RESERVATION OF RIGHTS ........................................................................................... 45

V. CONCLUSION ................................................................................................................ 45

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.),*
   473 B.R. 525 (Bankr. D. Del. 2012) ........................................................................24

*C & J Clark Am. Inc. v. Carol Ruth Inc. (In re Wingspread Corp.),*
   92 B.R. 87 (Bankr. S.D.N.Y. 1988) .........................................................................30

*Chaput v. Cianci (In re Chaput),*
   2015 Bankr. LEXIS 1370 (Bankr. D.V.I. Apr. 16, 2015).........................................30

*e2 Creditors' Trust v. Farris (In re e2 Commun's, Inc.),*
   320 B.R. 849 (Bankr. N.D. Tex. 2004).....................................................................29

*FDIC v. Brown,*
   812 F. Supp. 722 (S.D. Tex. 1992) ..........................................................................29

*Gearhart Indus. v. Smith Int'l,*
   741 F.2d 707 (5th Cir. 1984) ..............................................................25, 26, 28, 30

*Geddes v. Anaconda Copper Min. Co.,*
   254 U.S. 590 (1921) ..................................................................................................30

*In re Abbotts Dairies,*
   788 F.2d 143 (3d Cir. 1986)......................................................................................45

*In re Bidermann Indus. U.S.A. Inc.,*
   203 B.R. 547 (Bankr. S.D.N.Y. 1997)......................................................................29

*In re Braniff Airways, Inc.,*
   700 F.2d 935 (5th Cir. 1983) ...................................................................................41

*In re CNC Payroll, Inc.,*
   491 B.R. 454 (Bankr. S.D. Tex. 2013) .....................................................................29

*In re Contex Holdings, LLC,*
    *518 B.R. 792 (Bankr. D. Del. 2014)* ......................................................................*14*

*In re Exide Techs.,*
   303 B.R. 48 (Bankr. D. Del. 2003) ...........................................................................34

*In re Foreman Enterprises, Inc.*
   281 B.R. 600 (Bankr. W.D. Penn. 2002) ..................................................................14

*In re General Growth Properties, Inc.*,
No. 09-11977 (Bankr. S.D.N.Y. 2009) ...................................................................44

*In re Genesis Health Ventures, Inc.*,
266 B.R. 591 (Bankr. D. Del. 2001) ......................................................................39

*In re Global Ocean Carriers Ltd.*,
251 B.R. 31 (Bankr. D. Del. 2000) ........................................................................37

*In re Indianapolis Downs, LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ......................................................................38

*In re Inner City Media Corp.*,
No. 11-13967 (SCC) (Bankr. S.D.N.Y. Aug. 19, 2011) .........................................23

*In re Innkeepers USA Trust*,
442 B.R. 227 (Bankr. S.D.N.Y. 2010) ..............................................................30, 31

*In re LCI Holding Company, Inc.*,
No. 12-13319 (KG) (Bankr. D. Del. Dec. 11, 2012*)* ...........................................*23*

*In re Master Mortg. Inv. Fund, Inc.*,
168 B.R. 930 (Bankr. W.D. Mo. 1994) ...............................................................*38*

*In re MSR Resort Golf Course LLC, et al.*,
No. 11-10372 (SHL) (Bankr. S.D.N.Y. Feb. 1, 2011) .........................................*23*

*In re Nickels Midway Pier, LLC*,
2010 WL 2034542 (Bankr. D.N.J. May 21, 2010) ................................................39

*In re Prudential Lines, Inc.*,
107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd* 119 B.R. 430 (S.D.N.Y. 1990), *aff'd* 928
F. 2d 565 (2d Cir. 1991) ........................................................................................13

*In re Spansion, Inc.*,
426 B.R. 114 (Bankr. D. Del. 2010) ......................................................................39

*In re Summit Global Logistics, Inc.*,
2008 Bankr. LEXIS 896 (Bankr. D.N.J. Mar. 26, 2008) ......................................26

*In re Univ. Heights Ass'n*,
2007 Bankr. LEXIS 1200 (Bankr. N.D.N.Y. Jan. 22, 2007) .................................29

*In re Wash. Mut., Inc.*,
442 B.R. 314 (Bankr. D. Del. 2011) ...................................................34, 38, 39, 40

*In re Zenith Elecs. Corp.*,
   241 B.R. 92 (Bankr. D. Del. 1999) ...................................................................26, 33, 34, 38

*Kapila v. United States (In re Taylor)*,
   386 B.R. 361 (Bankr. S.D. Fla. 2008) ...................................................................................36

*Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt.,*
   *L.P. (In re Broadstripe, LLC),*
   444 B.R. 51 (Bankr. D. Del. 2010) ........................................................................................30

*Pepper v. Litton*,
   308 U.S. 295 (1939) .............................................................................................................*30*

*Popperman v. Rest Haven Cemetery, Inc.*,
   *345 S.W.2d 715 (1961)* .........................................................................................................*26*

*Rose v. Commissioner*,
   21 T.C.M. (CCH) 396 (T.C. 1962) ......................................................................................27

*Segal v. Rochelle*,
   382 U.S. 375 (1966)..............................................................................................................13

*Stuart v. Commissioner*,
   144 T.C. 235 (2015) ..............................................................................................................27

*United States v. Evans*,
   513 F. Supp. 2d 825 (W.D. Tex. 2007)..................................................................................35

*United States v. Friend*,
   119 F.2d 969 (7th Cir. 1941) ................................................................................................27

*United States v. Towers (In re Feiler)*,
   230 B.R. 164 (B.A.P. 9th Cir. 1999).....................................................................................35

*Wren Alexander, Invs., L.L.C. v. IRS (In re Wren Alexander Invs., L.L.C.)*,
   2012 U.S. Dist. LEXIS 189240 (W.D. Tex. Mar. 30, 2012) ................................................35

### STATE CASES

*Bowman v. El Paso CGP Co., L.L.C.*,
   431 S.W.3d 781 (Tex. App. Houston 14th Dist. 2014) ........................................................35

*Landon v. S&H Mktg. Group*,
   82 S.W.3d 666 (Tex. App. Eastland 2002)............................................................................26

**FEDERAL STATUTES**

11 U.S.C. § 101 ................................................................................17, 26

11 U.S.C. § 363 ................................................................................ passim

11 U.S.C. § 541(a) ................................................................................13

11 U.S.C. § 541(c)(1)(A) ................................................................................13

11 U.S.C. § 1129(a)(3) ................................................................................26, 33, 34

26 U.S.C. §1366(a)(1)(A) ................................................................................14

*Chapter 11 of the Bankruptcy Code* ................................................................................ passim

§ 1129 of the Bankruptcy Code ................................................................................ passim

§ 368 of the Internal Revenue Code ................................................................................10, 17

§ 355 of the Internal Revenue Code ................................................................................10

§ 356 of the Internal Revenue Code ................................................................................10

§ 1503(e)(2)(B) of the Internal Revenue Code ................................................................................1

IRC § 172(b)(3) ................................................................................36

IRC § 351 ................................................................................22

**STATE STATUTES**

CODE § 21.418(b) ................................................................................29

Tex. Bus. & Com. Code § 24.002 (7) ................................................................................36

TEX. BUS. & COM. CODE § 24.006(a) ................................................................................35, 36

TEX. BUS. & COM. CODE § 24.006(b) ................................................................................36

Texas Uniform Fraudulent Transfer Act ("TUFTA") ................................................................................34, 35, 36

**RULES**

Bankruptcy Rule 6004 ................................................................................42, 43

**OTHER AUTHORITIES**

James E. Vallee, COMMENT: BEYOND REPROACH: MANAGEMENT ENTRENCHMENT
    THROUGH THE TEXAS BUSINESS COMBINATION LAW , 30 Tex. Tech L. Rev. 1283
    (1999) ..................................................................................................................................26

# I.
## INTRODUCTION

American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures for certain notes (the "EFH Notes") issued by Energy Future Holdings Corp. ("EFH Corp.") (as described in Exhibit 1 attached hereto), by its undersigned counsel, hereby objects (the "Objection") to confirmation of the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "Current Plan") as it applies to the TCEH Debtors and EFH Shared Services Debtors.[2] Contrarian Capital Management, LLC (as advisors, or affiliates of advisors to holders, or managers of various accounts with investment authority, contractual authority or voting authority, "Contrarian"), by its undersigned counsel, hereby joins all arguments and positions in full as if a separate pleading had been filed.

As set forth more fully below, the EFH Indenture Trustee requests that the Court find that:

    (i)       the Current Plan contemplates transfers or use of EFH Corp.'s assets to or by Reorganized TCEH without fair equivalent value to EFH Corp.;

    (ii)     the Debtors' officers and directors adopted and remained committed to the Current Plan structure without properly considering alternative structures in the aftermath of the failure to consummate the *Sixth Amended Joint Plan of Reorganization* [D.I. 7187] (the "Terminated Plan");

    (iii)    the Debtors' officers and directors' failure to negotiate a more equitable plan structure evinces a failure to satisfy their fiduciary duties;

---

[2] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Current Plan.

This brief exceeds the page limits defined in Local Rule 7007-2(a)(iv) because the Debtors have agreed to include a provision in the to-be-filed pre-trial order that page limitations will not apply to any objecting or responding party.

(iv)    the Current Plan and requested rulings impermissibly seek to circumvent the procedural safeguards applicable to the sale of assets under Section 363 of the Bankruptcy Code; and

(v)    the Current Plan does not satisfy the plan confirmation requirements set forth in section 1129 of the Bankruptcy Code for numerous reasons, including because the contemplated transfer of EFH Corp. assets will constitute fraudulent transfers.

Specifically, at the hearing on the confirmation of the Current Plan (the "Confirmation Hearing") as it applies to the TCEH Debtors and EFH Shared Services Debtors, this Court is being asked by the Debtors to:

A.    Approve out-of-the-ordinary-course insider transfers and actions (collectively, the "EFH 363 Transactions") **by EFH Corp.,** a debtor whose plan the Court is not being asked to confirm at this time.  These out-of-the-ordinary-course insider transfers include:

    i.    Reorganized TCEH's use of $5.5 - $6 billion[3] of EFH Corp.'s accumulated net operating losses ("NOLs") that will directly increase Reorganized TCEH's value by approximately $1.0 billion,[4] without fair equivalent value to EFH Corp.;

    ii.    EFH Corp.'s cash payment of approximately ▉▉▉▉▉▉ of alternative minimum tax generated by the Spin-Off;[5] and

    iii.    the transfer of the equity of EFH Corporate Services — a wholly-owned subsidiary of EFH Corp. — and other assets to Reorganized TCEH, without fair equivalent value to EFH Corp.; and

    iv.    the transfer of non-debtor EFH Properties Company ("EFH Properties") — another wholly-owned subsidiary of EFH Corp. — to Reorganized TCEH, and the release of a ▉▉▉▉▉ undisputed payable from EFH Properties to EFH Corp., without fair equivalent value to EFH Corp.; and

---

[3]    *See* T-Disclosure Statement at 182.

[4]    *See* T-Disclosure Statement at 10.

[5]    *See* Schneider Decl., Ex. 3, Howard 8/5 Depo at 66:2-7 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

B.    Confirm the Current Plan for the EFH Shared Services Debtors[6] and the TCEH Debtors; and

C.    Approve releases to Billie I. Williamson and Donald Evans, the Disinterested Directors of EFH Corp. (together, the "<u>EFH Disinterested Directors</u>"), outside of the context of a confirmed plan for EFH Corp.

The EFH Indenture Trustee opposes the entry of any order granting the relief outlined above.  In further support of this Objection, the EFH Indenture Trustee respectfully states as follows:

## II.
## BACKGROUND

### A.    The Role of the EFH Indenture Trustee for the EFH Noteholders

1.    The EFH Indenture Trustee serves in such role under the indentures for the EFH Notes issued by EFH Corp.  The combined aggregate outstanding principal amount of the EFH Notes is approximately $1.929 billion.  Approximately $1.282 billion of that debt is held by Energy Future Intermediate Holding Company LLC ("<u>EFIH</u>"), with an approximate balance of $650 million held by third-party investors.

2.    With the EFH/EFIH Committee effectively marginalized by the Committee Settlement, the EFH Indenture Trustee is currently the sole active fiduciary for the remaining noteholders holding claims against EFH Corp.[7]

---

[6]    "<u>EFH Shared Services Debtors</u>" means, collectively: (a) EFH Corporate Services; (b) Dallas Power and Light Company, Inc.; (c) EFH CG Holdings Company LP; (d) EFH CG Management Company LLC; (e) Lone Star Energy Company, Inc.; (f) Lone Star Pipeline Company, Inc.; (g) Southwestern Electric Service Company, Inc.; (h) Texas Electric Service Company, Inc.; (i) Texas Energy Industries Company, Inc.; (j) Texas Power and Light Company, Inc.; (k) Texas Utilities Company, Inc.; (l) Texas Utilities Electric Company, Inc.; (m) TXU Electric Company, Inc.; (n) Brighten Energy LLC; and (o) Brighten Holdings LLC.  *See* Current Plan, at Art. I.A.148.

[7]    *See Settlement and Support Agreement*, dated November 23, 2015 [D.I. 7143-1] (the "<u>Committee Settlement</u>"), approved by the Court on November 25, 2015 pursuant to the *Order Approving Settlement Among Debtors, EFH Committee, EFH Notes Trustee, and Certain Other Parties* [D.I. 7143], at Section 6.(b) (emphasis added).

3

**B.**     **The Prior Confirmed Plan and the December Settlement**

**i)**     **The December Settlement Did Not Contemplate the EFH 363 Transactions**

3.     While transactions substantially similar to the EFH 363 Transactions were included in the Terminated Plan, those transactions were irrelevant to EFH Corp. creditors who were then "unimpaired" and slated to receive payment in full.  Now, however, under the Current Plan, EFH Corp. creditors do not know what their recoveries will be.  Importantly, as discussed below, EFH Corp.'s acquiescence to the EFH 363 Transactions in any plan subsequent to the Terminated Plan was not bargained for in connection with either the December Settlement (as defined herein) or as a "Required Alternative Term" in the Plan Support Agreement.[8]  As this Court is aware, the December Settlement resolved almost all inter-Debtor claims, including all

---

Subject to entry of the Approval Order, except as otherwise required by order of the Bankruptcy Court, the EFH Committee (i) shall use reasonable efforts to minimize its participation in the Chapter 11 Cases and (ii) *shall not object to, litigate against, or otherwise impair, hinder, or delay, the confirmation and consummation of any Alternative Restructuring* (or other plan or restructuring transaction) or approval of any implementing transactions, documents, or settlements, that:

A.     Reinstates Applicable Legacy General Unsecured Claims and Legacy Intercompany Claims as contemplated in Section 6(a) above;

B.     incorporates the Contractual Subordination and treats the Settlement Intercompany Claim and Beneficiary Claims in a manner that is consistent with this Agreement; and

C.     includes customary release and exculpation provisions for the EFH Committee.

[8]     On December 7, 2015, the Court entered the *Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 7243] (the "Settlement Order"), which approved the *Amended and Restated Settlement Agreement* (the "Settlement Agreement", and together with the Settlement Order, the "December Settlement").  Prior to the December Settlement, the Court entered the *Order Authorizing Debtors To Enter Into And Perform Under Plan Support Agreement*, which approved the *Amended and Restated Plan Support Agreement* [D.I. 6097-1] (as may have been amended, supplemented or modified from time to time, the "Plan Support Agreement").

claims under the Competitive Tax Sharing Agreement,[9] through the Settlement Effective Date (December 7, 2015), in consideration for the $700 million TCEH Settlement Claim.[10]

4.        However, the December Settlement did not resolve all material issues in connection with the Current Plan.  Specifically, the December Settlement did not resolve claims, rights, liabilities or any "Causes of Action" (as defined in the Terminated Plan), that arose after the Settlement Effective Date.[11]  As explained more fully below, this means that any claim that TCEH may have had to compel consumption of EFH Corp.'s NOLs so that Reorganized TCEH could obtain the benefit of a tax basis step-up in assets to fair market value, or to receive compensation for the portion of EFH Corp.'s NOLs attributable to losses realized by TCEH, was released in the December Settlement.

5.        Accordingly, as this Court evaluates the decision making process of EFH Corp.'s Disinterested Directors regarding the EFH 363 Transactions in the context of the Current Plan's impact on EFH Corp. creditors, it should bear in mind that no pre-existing contract dictated the outcome of what should have been intense negotiations on the materials terms of such transactions.  Certainly, as of May 1, 2016 and even earlier when contingency planning began, EFH Corp. was under no obligation to:

    i.        allow its NOLs to be consumed for the benefit of TCEH or Reorganized TCEH;

    ii.       hand over the equity in EFH Corporate Services;

    iii.      hand over the equity in EFH Properties and release a ███████ undisputed payable from EFH Properties; or

---

[9]      *See* Settlement Agreement, at § 2.1(a).
[10]     EFH Properties, as a non-debtor subsidiary, was not a party to the December Settlement.

[11]     *See* Settlement Agreement, at § 2.1(a).

iv.       pay, in cash, 50% of the alternative minimum tax realized as part of the Spin-Off.

6.      The central issue for the Confirmation Hearing will be the determination of how and why the officers and directors, and in particular the EFH Disinterested Directors, agreed to those terms, and others, without ensuring fair equivalent value for EFH Corp., its estate and its creditors.

        **ii)**     **Termination of the Prior Plan and Limited Relevance of the Plan Support Agreement**

7.      As the Court is aware, approval of the December Settlement was a condition precedent to confirmation of the Terminated Plan, and the December Settlement was independently approved so that its terms would survive if the Debtors failed to consummate the now Terminated Plan.[12]  The Terminated Plan contemplated the following restructuring transactions:

   i.     All claims against EFH Corp. would be unimpaired and paid in full;

  ii.     TCEH was to be spun-off in a two-step transaction, which included
        a.  a tax-free spin, and
        b.  a so-called "busted 351" transaction, which included consumption of EFH Corp.'s NOLs essentially to pay for a step-up in tax basis of the T-Side's assets; and

 iii.     Oncor was to be converted to a REIT.

8.      The parties' desire to have the December Settlement survive independently of the now Terminated Plan proved prescient.  On May 1, 2016, the Debtors announced that certain first lien creditors of TCEH had delivered a written notice (the "Plan Support Termination Notice") to the Debtors and the other parties to the Plan Support Agreement notifying such parties of the occurrence of a Plan Support Termination Event (as defined in the Plan Support

---

[12]      The Terminated Plan was confirmed on December 9, 2015 [D.I. 7285] (the "Confirmation Order").

Agreement).  The delivery of the Plan Support Termination Notice caused the Terminated Plan

to become null and void.

9.      Under the Plan Support Agreement, the Debtors were required to file a new plan

that satisfied certain "Required Alternative Terms."  The Plan Support Agreement, together with

the December Settlement, set the framework for "a fresh start, free of legacy litigation," within

the confines of an Alternative Restructuring (as defined in the Plan Support Agreement).  *See*

Declaration of Erik Schneider in Support of the Objection ("Schneider Decl."), Ex 6, Keglevic

Written Direct (Terminated Plan) at ¶63 ███████████████████████████████

███████████████████████████████████████████████████

██████████████████████████  However, the specified terms for what would constitute

an Alternative Restructuring did not mandate the same transaction structure or consumption of

EFH Corp.'s tax attributes as contemplated under the Terminated Plan.[13]

10.      As noted, with the limited exception of the Required Alternative Terms, the

termination of the prior plan wiped the slate clean and should have set the stage for the EFH

Disinterested Directors to engage in new negotiation over the consideration EFH Corp. would

receive in exchange for execution of the EFH 363 Transactions.  However, rather than avail

themselves of the opportunity to negotiate a meaningful Alternative Restructuring for the benefit

of all stakeholders, the EFH Disinterested Directors simply pressed forward with what was left

of the old plan's tax-free spin structure without attempting to negotiate new consideration

appropriate in light of dramatically changed circumstances.

---

[13]      The Plan Support Agreement required that a new plan provide for a $550 million TCEH Cash Payment, certain limited waivers, exculpations and releases, the discharge of all non-TCEH Intercompany claims, and Reorganized TCEH Debtors' waiver of certain avoidance actions.

C.      **The Current Plan**

11.      From the perspective of EFH Corp. creditors, the Current Plan filed on June 16,

2016 (and subsequently amended August 5, 2016) deviated sharply from the May 1 and May 10

Plans because its consummation was conditioned on EFH Corp. agreeing to enter into the EFH

363 Transactions. *See Second Amended Joint Plan of Reorganization of Energy Future Holdings

Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code) [Blackline]* [D.I. 8688], at 97-

98.[14]

12.      The *Notice of Filing of Third Amended Joint Plan of Reorganization of Energy

Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199]

makes clear that the Debtors are only requesting confirmation of the Current Plan pursuant to the

Spin-Off, that the Debtors will not submit evidence or argument in support of the Taxable

Separation and that the proposed Confirmation Order will expressly not confirm or otherwise

approve the Current Plan on the basis of the Taxable Separation.

---

[14]      On May 1, 2016, the Debtors filed the *Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8355] (the "May 1 Plan") and the *Disclosure Statement for the New Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8356].

On May 10, 2016, the Debtors subsequently filed the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8421] (the "May 10 Plan") and the *Disclosure Statement for the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8423]. Both the May 1 Plan and the May 10 Plan did not require, or seek, Court approval of any relief with respect to the E-Side Debtors as a condition precedent to the confirmation of a plan as to the TCEH Debtors. *See* May 1 Plan, at Art. XI.; May 10 Plan, at Art. XI.

### i) Proposed Transfer of Equity of EFH Corporate Services and Non-Debtor EFH Properties to Reorganized TCEH

13.    Under the Current Plan, EFH Corp. will transfer to Reorganized TCEH the equity of EFH Corporate Services and EFH Properties.[15]  As the simplified organizational structure below illustrates, EFH Corporate Services and EFH Properties[16] are wholly-owned subsidiaries of EFH Corp. and their assets are not encumbered by any liens:



---

[15]    Current Plan, at Art. I.A.52; 390.

> "Contribution" means, as part of the Spin-Off, immediately following the cancelation of Claims against the TCEH Debtors, the transfer to Reorganized TCEH by TCEH and the EFH Debtors of their applicable portion of the TCEH Assets, in exchange for the consideration described in Article IV.B.2 of the Plan.
>
> ***
>
> "TCEH Assets" means, collectively: (a) all of TCEH's interests in its subsidiaries (excluding the stock of TCEH Finance) and (b) (i) all of the EFH Debtors' equity interests in the EFH Shared Services Debtors, EFH Properties Company, and Basic Resources, Inc. and (ii) the Acquired TCEH Assets and Assumed Liabilities identified in the Separation Agreement.

[16]    EFH Properties is not a debtor under the Bankruptcy Code

14.    Therefore, the equity value of both entities should inure to the benefit of the creditors of EFH Corp.

### ii)    Proposed Use and Transfer of EFH Corp.'s Tax Attributes

15.    The Current Plan provides two alternative restructuring paths for the TCEH Debtors: (a) a tax-free spin-off in conjunction with a "Busted 351" component (the "Spin-Off"); or (b) a taxable transaction (the "Taxable Transaction").  *See* T-Disclosure Statement, at 10.[17]

16.    The Spin-Off will be achieved through a series of separate transactions.[18]  The T-Disclosure Statement summarizes and divides these transactions into two principal steps.  *See* T-Disclosure Statement at 9-10.  First, TCEH will be spun off from the Debtors in a tax-free reorganization pursuant to sections 368(a)(1)(G), 355, and 356 of the Internal Revenue Code of 1986 (as amended, the "IRC"), to form a standalone reorganized entity, Reorganized TCEH, which will principally be owned by the TCEH First Lien Lenders (the "Tax-Free Component"). Second, and separate and distinct from the Tax-Free Component, Reorganized TCEH will transfer certain assets (the "Basis Step-Up Assets") to a new subsidiary, ████████████████[19] which is commonly referred to as "Prefco."[20] Prefco will intentionally fail the requirement for a tax-free transaction under IRC section 351 (the "Busted 351"), thereby triggering approximately $5.5-$6 billion in gain.  The gain is equal to the difference between the fair market value of the

---

[17]    *See Third Amended Disclosure Statement For The Second Amended Joint Plan Of Reorganization Of Energy Future Holdings Corp., et al., Pursuant To Chapter 11 Of The Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* (the "T-Disclosure Statement") [D.I. 8747]. At this time, the Current Plan continues to include a taxable option; however, the Debtors will not submit evidence or argument in support of the Taxable Separation at the Confirmation Hearing.

[18]    *See* Schneider Decl., Ex. 1, Private Letter Ruling at page 10 ████████████████████ ████████████; *see also* Current Plan, at Art. I.A.23; IV.B.3.

[19]    ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████. *See* Schneider Decl., Ex. 1 Private Letter Ruling, ruling #2 at 14.

[20]    Under the Current Plan, Prefco is defined as the "Preferred Stock Entity."

Basis Step-Up Assets and their current tax basis (the "<u>Recognized Gain</u>").  The Busted 351 also

triggers alternative minimum tax at EFH Corp.  The Current Plan contemplates using

approximately $5.5 - $6 billion of EFH Corp.'s NOLs as a form of currency to offset the

Recognized Gain resulting from the sale or exchange of the Basis Step-Up Assets, and to provide

Reorganized TCEH with the benefit of a $5.5 - $6 billion of tax basis of the Basis Step-Up

Assets (which Reorganized TCEH or TCEH can then deduct or depreciate).[21]  The Busted 351 is

not a necessary component of the Tax Free Spin.  The Busted 351 is being done only to provide

the Basis Step-Up.  It is undisputed that the Basis Step-Up will add over $1.0 billion to the net

present enterprise value of Reorganized TCEH.  *See* T-Disclosure Statement, at 183.

Additionally, Reorganized TCEH may also benefit from approximately ███████ built-in tax

---

[21]    Current Plan, at Art. I.A.24; IV.B.3.

> "Basis Step-Up" means the net increase in the aggregate U.S. federal income tax basis of the assets transferred or deemed transferred to the Preferred Stock Entity pursuant to the Spin-Off Preferred Stock Sale equal to the aggregate utilized amount of the net losses, net operating losses, and net capital losses (but only to the extent such net capital losses are deductible under applicable tax law against gain recognized on the Spin-Off Preferred Stock Sale) (in each case, including carryovers) available to the EFH Group as of the TCEH Effective Date(determined (a) as if the "consolidated year" (within the meaning of Section 1503(e)(2)(B) of the Internal Revenue Code) of the EFH Group ended on the TCEH Effective Date, and (b) without regard to any income, gain, loss or deduction generated as a result of the Spin-Off Preferred Stock Sale or transactions occurring outside the ordinary course of business on the TCEH Effective Date after the Spin-Off Preferred Stock Sale (other than any Deferred Intercompany and ELA Items (if any) and other transactions expressly contemplated by the Plan, any plan support agreement, or any definitive documentation related thereto)), such amount to be determined in accordance with the relevant procedures under the Plan Support Agreement, as modified consistent with the Tax Matters Agreement; provided, however, that any such Basis Step-Up shall not exceed the built-in gain in the assets subject to the Spin-Off Preferred Stock Sale.

> ***

> 3. TCEH Basis Step-Up.

> If the Spin-Off is effectuated pursuant to the terms and conditions set forth in Article IV.B.2, pursuant to the Spin-Off Preferred Stock Sale, gain will be triggered in an amount not in excess of, and in order to achieve, the Basis Step-Up.

losses for assets owned by Reorganized TCEH in any future sale of those assets.[22]  *See* T-Disclosure Statement, at 183.

17.  ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

18.    The Spin-Off is predicated on the satisfaction of the Spin-Off Conditions, including the Debtors' receipt of a Private Letter Ruling (as defined and discussed below) containing several "Fundamental Rulings" from the Internal Revenue Service (the "IRS").  *See* Current Plan, at Art. IX.G.  The Debtors were aware that the IRS might not rule on certain matters, might issue rulings adverse to the Debtors, or might decline to issue a Private Letter Ruling.  See Current Plan, at Art. I.A.23; IV.B.3.

### iii)    July 28, 2016 IRS Private Letter Ruling – Culmination of a Summer of Increasing Optimism

19.    More than two years ago, in June 2014, EFH Corp. filed a request with the IRS for a private letter ruling that would support a tax-free spin-off structure, predicated on the Debtors' use of EFH Corp.'s NOLs.  Throughout the spring and summer of 2016, based on their ongoing communications with the IRS, the IRS's information request and follow-up questions to the Debtors' ruling request, the Debtors became increasingly certain that the IRS would in fact issue the ruling that would clear the way for a tax-free spin-off with a Busted 351 transaction.

---

[22]    Calculated as the difference between the fair market value of the assets to be transferred in the tax-free transaction per the ██████████████████████ (*See* Schneider Decl., Ex. 8) at the tax basis of those assets per the Debtors' 2015 10-K at page 65 (*See* Schneider Decl., Ex. 7]).

20.    On July 28, 2016, the IRS issued a private letter ruling (the "Private Letter Ruling"), in which the Debtors received many of the requested rulings, including the Fundamental Rulings.[23]

21.    Importantly, the Private Letter Ruling did not ███████████████████ ███████████████████████████████. Rather, the ruling merely confirmed that the contemplated structure was permissible as presented to the IRS.

iv)    **EFH Corp. is the Undisputed Owner of Virtually All NOLs Under Applicable Non-Bankruptcy Law and Under the Terms of the Settlement Agreement**

22.    It is undisputed that EFH Group's tax attributes, including its NOLs, are property of EFH Corp.'s estate. *See e.g., In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd* 119 B.R. 430 (S.D.N.Y. 1990), *aff'd* 928 F. 2d 565 (2d Cir. 1991). Here, only EFH Corp., for federal income tax purposes, possesses the legal interests in, and the right to control, the disposition and use of the EFH Group's tax attributes, including the NOLs, regardless of how and when the NOLs were generated.[24] TCEH, as a disregarded entity under applicable federal tax law, has no right to or ownership interest in the NOLs under tax law. *See e.g., In re Contex Holdings, LLC* 518 B.R. 792 (Bankr. D. Del. 2014) (CSS) ("A single member limited liability company ('SMLLC') may elect to be classified as an association taxable as a corporation or to be

---

[23]    The Fundamental Rulings are defined in the Plan.

[24]    To determine whether a debtor has an interest in property such that it is property of that debtors' estate, courts look to applicable non-bankruptcy law. Property of the estate includes, among other things, "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Estate property includes all of a debtor's rights and expectancies and is a concept that "has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) ; see also, e.g., 11 U.S.C. § 541(c)(1)(A) (providing that assets become estate property notwithstanding any provision of non-bankruptcy law that would prevent their being liquidated or transferred by the debtor); H.R. REP. No. 95–595, at 175–76 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6136 (making clear that "property of the estate" includes all "contingent interests and future interests, whether or not transferable by the debtor").

disregarded as a separate entity, resulting in pass-through taxation of its sole member.  If the

SMLLC does not elect to be classified as an association, it is treated as a disregarded entity.  As

a disregarded entity, the SMLLC's assets, liabilities, income items, and deduction items will be

treated as owned, owed, received and incurred directly by its owner."); *In re Foreman*

*Enterprises, Inc.* 281 B.R. 600 (Bankr. W.D. Penn. 2002) ("Under the provisions of the Internal

Revenue Code cited previously [*i.e.*, 26 U.S.C. §1366(a)(1)(A)], the NOL and the right to use it

automatically passed through by operation of law to defendants as S corporation shareholders.

Debtor [the S corporation] was merely a 'conduit' through which the NOL and the right to use it

passed to them.").

23.    Disregarded entities, such as TCEH, do not have a legally-cognizable interest in

any federal income tax attribute, such as NOLs, nor any legal entitlement to direct the use of

such tax attributes under federal income tax law.  *See* 26 C.F.R. § 301.7701-2(c)(2)(i) ("a

business entity that has a single owner and is not a corporation under paragraph (b) of this

section is disregarded as an entity separate from its owner").  A disregarded entity's right to

future use of or reimbursement by its owner for use of NOLs economically attributable to losses

of the disregarded entity – if any – is purely contractual.  *See, e.g.*, *Contex Holdings, LLC* 518

B.R. at 805-806.  Here, pre-petition, the TCEH Debtors and EFH Corp. had entered into the

Competitive Tax Sharing Agreement that governed, among other things, the use of and

reimbursement for tax attributes.  However, because TCEH settled all claims and Causes of

Action that TCEH had as of the Settlement Effective Date under the Tax Sharing Agreement,

TCEH no longer has any right to, and cannot make any claims to, EFH Corp.'s NOLs under the

Competitive Tax Sharing Agreement.  *See* Settlement Agreement 2.1(a).  This release was a

material component of the consideration TCEH gave in exchange for receiving its $700 million

14

claim against EFH Corp.  If TCEH wanted to retain rights to make claims under the Tax Sharing Agreement, it should have preserved those rights in the December Settlement.  Accordingly, TCEH gave up any right or claim it had to any NOLs attributable to losses of TCEH prior to the Settlement Effective Date.  As discussed below, re-trading that deal now is patently unfair.[25]

## III.
## ARGUMENT

24.     As set forth more fully below, the Current Plan may not be confirmed because it contemplates the transfer or use of EFH Corp.'s assets — in the form of NOLs and certain equity interests to Reorganized TCEH — and payment or cancelation of TCEH and Reorganized TCEH's post-confirmation liabilities, in each case, without an exchange of fair equivalent value to EFH Corp.  Additionally, the very process by which the Current Plan made its way before the Court is fundamentally flawed in that the Debtors' officers and directors acceded to the Current Plan structure based on the Terminated Plan without proper consideration of their leverage subsequent to termination of the prior plan and in the face of new and significantly different facts and circumstances.

25.     Beyond these clear and significant substantive plan infirmities, the Current Plan and the "one plan/two confirmation hearing" process, impermissibly circumvent the procedural safeguards for the sale or use of assets under section 363 of the Bankruptcy Code and fail to comport with the plan confirmation requirements set forth in section 1129 of the Bankruptcy Code.

### A.     Consummation of the Busted 351, as Contemplated, Involves the Use of Property of EFH Corp.'s Estate to the Detriment of EFH Corp.'s Stakeholders

---

[25]   As Mr. Kornberg of Paul Weiss stated at the hearing on July 20, 2016 "I mean that's exactly right, and it is a durable settlement." (*See* Schneider Decl., 5, 7/20/16 Hr. Tr. at 50:3-4).

### i)    The Spin-Off Contemplates the Use of Tax Benefits by Reorganized TCEH For Less Than A Fair Equivalent Value

26.    First, as explained above, under federal income tax law, because certain of the

Debtors are disregarded entities, all such Debtors' tax attributes, including the NOLs, are assets

that are owned by EFH Corp. as a matter of federal income tax law.  By engaging in the Busted

351 transaction, TCEH is intending to use up such NOLs to achieve a valuable step-up in the

basis of certain assets (the "Basis Step-up Assets"), which will ultimately be held by

Reorganized TCEH.  The increased value of such Basis Step-Up Assets is directly attributable to

an expenditure of EFH Corp.'s NOLs (which, once used, are no longer available to EFH Corp.) -

*i.e.,* EFH Corp.'s NOLs will be "spent" by TCEH in order to achieve a stepped-up basis in such

assets.

27.

28. ████████████████████████████████████████████████
████████████████████████████████████████████, and thus a transfer of the value of EFH Corp.'s NOLs to Reorganized TCEH without receiving reasonably equivalent value in exchange. This transfer impermissibly denies EFH Corp. and its stakeholders the benefit of these valuable tax assets forever, and, indeed, does so before confirmation of an E-Side plan. Therefore, ███████████ is, in effect, a fraudulent transfer of these tax benefits to Reorganized TCEH.

ii) ████████████████████████████████████████
██████████████████████

29. ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████
██  ████████████████████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████
██████████████████████████████████████████████



### iii) The Spin-Off Results in Alternative Minimum Tax Liability at EFH Corp.

32.     Moreover, the Spin-Off also triggers alternative minimum tax ("AMT").  Under the proposed Tax Matters Agreement fifty percent of this AMT will be paid by EFH Corp. in cash.  AMT is determined through a re-calculation of a taxpayer's federal income tax obligations, subject to certain limitation on deductions and credits.  Due to these limitations in the IRC and regulations thereunder, NOLs can only be used to offset 90% of alternative minimum taxable income.  As a result, the Debtors currently estimate that they will incur approximately ██████████ in AMT in the tax year, including the TCEH Effective Date.

33.     As these AMT obligations are a direct result of the Spin-Off and Busted 351, and their payment is necessary for Reorganized TCEH to receive the step-up basis, this payment results in insolvent EFH Corp. paying a tax incurred for the benefit of Reorganized TCEH.

18

**B.**     **The Debtors Have Manufactured a False Dilemma:**
**Either Face "Tax Armageddon" or Give Away EFH Corp.'s Valuable Tax**
**Attributes and other Assets**

34.     A false dilemma involves setting up a false dichotomy that fails to appreciate other alternatives with the effect of unreasonably limiting the spectrum of reasonable options available to a decision maker.  That is precisely the position EFH Corp. and its Disinterested Directors have placed themselves in under the Current Plan.  EFH Corp.'s management and directors have rationalized proceeding with the Busted 351 transaction (without demanding consideration) based on a binary characterization of the restructuring options.  Under this skewed binary world view, EFH Corp. faces a Hobson's choice, that is, either (1) accede to the TCEH First Lien Lenders' demands and give them the maximum amount of basis step-up in the Busted 351 through the uncompensated use of EFH Corp.'s valuable tax attributes and uncompensated sale of the equity in EFH Corporate Services and EFH Properties, or (2) suffer a cataclysmic consequence when the TCEH First Lien Lenders pursue a taxable transaction that will trigger "Tax Armageddon."  The Debtors' deliberations on plan structure limited to only these two choices are fatally flawed because numerous options exist.

35.     In the first instance, as will be demonstrated at trial, the Debtors' binary view is at odds with EFH Corp.'s recognition that a forced taxable transaction is unlikely.  First, the Debtors have successfully worked to persuade the TCEH First Lien Lenders against committing to a taxable transaction.  Although the TCEH First Lien Lenders could seek relief from the automatic stay to foreclose or file a third-party plan, the Debtors and creditors would oppose any such efforts and foreclosing on the mix of assets in which the TCEH First Lien Lenders have a lien (including a nuclear power plant and other electricity generating facilities) would be unprecedented and risky in its own right.

19

36.     Second, the IRS will object to any proposed plan that would result in a tax liability that cannot reasonably be satisfied by the remaining assets of the taxpayer (i.e., a "stranded tax" liability).  Although there are some bankruptcy cases that have permitted either plans or section 363 sales to occur notwithstanding the stranding of tax liabilities, those instances have occurred where no reasonable alternative or transaction existed and a stranded tax was not intended.

37.     That is far from the case here, especially now that the Private Letter Ruling has been issued.  Here, it is and continues to be the case, as evidenced by the Private Letter Ruling, that the T-Side Spin-Off could be structured to be completed tax-free, and Reorganized TCEH could take its assets *without* the Busted 351 transaction, Basis Step-Up or corresponding tax liability and consumption of EFH Corp.'s NOLs.  In addition, in the case of a Taxable Transaction, the IRS may seek to impose (i) transferee liability on TCEH and other disregarded entities; (ii) employ its alter-ego assessment procedures; or (iii) employ any other available vicarious liability theory or other collection device under federal or state law.

38.     Thus, rationalizing the Busted 351 Step Up as a "necessary evil" to placate the demands of the TCEH First Lien Creditors rests on a false dilemma sprung from a negotiating ploy that threatened Taxable Transaction that would be highly unlikely in these circumstances. In the absence of exploration of any alternative possible structures for the transaction other than virtually complete capitulation to the TCEH First Lien Creditor demands, there is no reasonable business justification for the Debtors to agree to a Busted 351 Step-Up as framed in the proposed plan absent a fair equivalent value to EFH Corp.

39.     Third, the Debtors have repeatedly and consistently affirmed that they would not approve the steps necessary for TCEH to reorganize under chapter 11 through a Taxable

Transaction.  Any such plan may result in a substantial stranded tax liability that bounces back to and becomes a liability of Reorganized TCEH, and that would constitute an administrative expense.  Reorganized TCEH might not have sufficient assets to pay such an administrative expense, rendering a plan for a Taxable Transaction non-confirmable.

40.    The Debtors have a range of options available.  First, the Plan Support Agreement and the Settlement Agreement left room for a wide range of restructuring options the Debtors have failed to consider.  Second, even within the confines of the now issued Private Letter Ruling, the Debtors have always had many possible alternative allocations of value ranging from (i) no Busted 351 component and no Basis Step-Up, to (ii) a Busted 351 component that provides a Basis Step-Up (and corresponding expenditure of EFH Corp.'s NOLs) less than the current contemplated Basis Step-Up, and to (iii) the current Busted 351 and current amount of Basis Step-Up.

41.    Furthermore, even assuming EFH Corp. had a business justification to allow Reorganized TCEH to receive some tax benefit through a Busted 351, there is no requirement that Reorganized TCEH receive the maximum amount of basis step up available and thus consume the maximum amount of EFH NOLs.  This summer, as the Debtors grew in confidence and optimism that they would receive the requested tax rulings from the IRS, EFH Corp. had the opportunity to reconsider and to vigorously negotiate the amount of tax benefits the Busted 351 would confer on Reorganized TCEH.[26]  Its directors did not do so.

---

[26]    In addition, the Disinterested Directors should also have revisited the leverage that EFH Corp. had in those negotiations as a result of the option to "check the box" in the event of a Taxable Transaction.  By "checking the box" and thereby converting TCEH to a regarded entity, both EFH Corp. and TCEH would be jointly and severally liable for the gain triggered in a Taxable Transaction.  While this may not solve EFH Corp.'s stranded tax problem, it would disincentivize TCEH and the TCEH First Lien Lenders from pursuing a Taxable Transaction.

i)    **A Busted 351 is a Distinct Transaction From the Tax Free Spin-Off of TCEH and was Not Pre-Negotiated in the Plan Support Agreement or the December Settlement**

42.    The Busted 351 is a separate transaction, independent and distinct from the Tax Free Spin-Off; the Debtors are neither legally nor contractually required to reorganize through a Busted 351.  There is no requirement under the IRC, the Treasury's regulations, the Bankruptcy Code, or under any other applicable law that a Busted 351 must be included as part of the Tax-Free Spin-Off.  On the contrary, the Busted 351 is a highly-structured, tax-motivated transaction intended to trigger taxation in an otherwise tax-free structure, by intentionally "busting" the requirements of section 351 of the IRC.  The sole purpose of the Busted 351 component is to provide Reorganized TCEH with the Basis Step-Up.  Second, the Busted 351 <u>is not</u> a Required TCEH Alternative Term, as defined in the Plan Support Agreement.  The Debtors have always had the option to reorganize without a "Tax Armageddon" and without the Busted 351 component, *i.e.*, reorganize through only a Tax-Free Spin-Off.[27]  Third, now that the favorable Private Letter Ruling has been obtained, a Taxable Transaction is even less attractive for Reorganized TCEH.  All of these factors indicate that a new negotiation of the value of the NOLs should have taken place, certainly no later than when it became clear to EFH Corp.'s Disinterested Directors that the Private Letter Ruling would be obtained and it became much less likely that a significant stranded tax liability may be dropped on the EFH Corp. estates.

ii)    **A T-Side Plan That Generates a Stranded Tax Where, as Here, Options Are Available, Would Not Be Feasible**

----

27



43.    A Taxable Transaction is not feasible and would include significant risk, cost, and drawbacks to the TCEH First Lien Lenders.  Regardless of the precise form of the Taxable Transaction, any transaction, whether as part of a bankruptcy proceeding, or as part of a state law foreclosure action, that results in several billion dollars of stranded tax liabilities will unquestionably result in the fierce opposition by the IRS.[28]  In addition, even if the IRS is unsuccessful in preventing a transaction that results in stranded tax liabilities, it likely will seek to collect such tax from the transferee of the assets or from other credit worthy parties to the transaction.  *See* Schneider Decl., Ex 6, Keglevic Written Direct Keglevic Direct (Terminated Plan) at ¶52 ███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████

44.    Presumably the Debtors will attempt to defend their use of EFH Corp.'s NOLs by arguing that EFH Corp. would have little use for them or could not realize significant value from them.  Contrary to the Debtors' expected position, the NOLs to be consumed as part of the Busted 351 are a valuable asset of EFH Corp. and could be used in numerous different restructuring transactions involving the E-Side Debtors.  For instance, EFIH has a "negative basis" of over $1.7 billion in its partnership interest in Oncor Holding.[29]  Any restructuring that triggers substantial gain calculated by reference to this negative basis, but that could otherwise

---

[28]    *See, e.g., In re LCI Holding Company, Inc.*, No. 12-13319 (KG) (Bankr. D. Del. Dec. 11, 2012) (section 363 sale); *In re Inner City Media Corp.*, No. 11-13967 (SCC) (Bankr. S.D.N.Y. Aug. 19, 2011) (section 363 sale); *In re MSR Resort Golf Course LLC, et al.*, No. 11-10372 (SHL) (Bankr. S.D.N.Y. Feb. 1, 2011) (sale pursuant to a plan of reorganization).

[29]    *See* Debtors' Omnibus Tax Memorandum, [D.I. 2296], filed October 14, 2014 at *8 n6 (". . . EFH has, in effect, a "net" negative basis of approximately $1.7 billion in its Oncor interest. Said differently, if Oncor Holdings sold its interest in Oncor for $1, EFH would recognize gain of approximately $1.7 billion on such sale").

be offset with EFH Corp.'s NOLs, would unquestionably enhance the value of this interest to current and potential future buyers.

**C.**    **The EFH 363 Transactions Cannot Be Approved Because the Disinterested Director Decision Making Process Was Flawed**

45.    With this Objection, the EFH Indenture Trustee challenges EFH Corp.'s request for authority to take certain actions to consummate the Current Plan, as well as numerous decisions that the Disinterested Directors have made since January 1, 2016 related to the Current Plan.  The EFH 363 Transactions cannot be approved because the Disinterested Directors have breached their fiduciary duties by failing to:

  (i)    properly weigh alternatives to the Current Plan;

  (ii)    fully inform themselves of those alternatives and facts related to the leverage they possessed subsequent to the termination of the Plan Support Agreement and prior plan; and

  (iii)    aggressively negotiate for maximum consideration for EFH Corp.'s estate and its creditors in connection with the EFH 363 Transactions.

By failing to recognize their mistakes, stop the plan process and demand a return to the negotiating table in earnest, the Disinterested Directors have breached and continue to breach their fiduciary duties.

46.    Furthermore, the Disinterested Directors are not entitled to rely on the presumptions built into the "business judgment" standard. [30]  As demonstrated below, plan proponents will bear the burden at trial of presenting admissible evidence on the "entire fairness" of the EFH 363 Transactions because:

  a)    The allegedly Disinterested Directors are, in fact, interested; and

---

[30]    *See e.g., Autobacs Strauss, Inc. v. Autobacs Seven Co. (In re Autobacs Strauss, Inc.),* 473 B.R. 525, 561-62 (Bankr. D. Del. 2012) (stating that business judgment rule "creates a presumption in favor of a director-approved transaction" and "to rebut the presumption, the shareholder challenging a board decision must show that the directors breached the duty of . . . loyalty, or due care.")

   b)  The evidence will show that the Disinterested Directors were not fully informed
       when they approved the EFH 363 Transactions.

Here, the evidence will show that the Disinterested Directors acted out of fear of a Tax

Armageddon and failed to consider the evolving facts related to the probability that Tax

Armageddon would not actually occur.  The moment that it became clear that the Private Letter

Ruling would be obtained is analogous to when a poker player is dealt a fourth ace.  At that

point, folding is not an option. Here, it is clear that having been dealt the fourth ace, the

Disinterested Directors failed to re-evaluate their negotiating strategy.  Without an ongoing

assessment of the objective facts related to whether Tax Armageddon would occur, the

Disinterested Directors could not fairly and properly consider whether capitulation to the EFH

363 Transactions was, in fact, the best route for maximizing value and recoveries for EFH Corp.

and its stakeholders.

   i)     **The Facts at Trial Will Show that the Plan Proponents are Not
          Entitled to Rely on the "Business Judgment Standard" and Plan
          Proponents Bear the Burden to Prove the EFH 363 Transactions Pass
          Scrutiny Under the Entire Fairness Standard of Review**

   47.    Courts reviewing section 363 transactions in bankruptcy cases often apply a

"business judgment" standard that by and large tracks state law business judgment analysis.

However, even in bankruptcy and when reviewing section 363 transactions, if the underlying

state corporate governance standards have not been complied with (for example if – as here – the

preconditions for applying the business judgment standard have not been met) a court must use

the more stringent entire fairness test.[31]

---

[31]    James E. Vallee, COMMENT: BEYOND REPROACH: MANAGEMENT ENTRENCHMENT THROUGH THE TEXAS
        BUSINESS COMBINATION LAW , 30 Tex. Tech L. Rev. 1283, 1291 (1999) ("The entire fairness doctrine
        developed as a means for testing the application of the duty of loyalty in corporate transactions. Texas law
        interprets the entire fairness test as placing "the burden of proof . . . on the interested director to show that
        the action under fire is fair to the corporation.") (citing *Gearhart Indus. v. Smith Int'l*, 741 F.2d 707, 720

### ii) Brief Overview of Facts Requiring Debtors to Prove the Entire Fairness of EFH 363 Transactions

48.     Under applicable state law, the EFH 363 Transactions are subject to the entire fairness standard for several reasons.[32]  First, the EFH 363 Transactions are among insiders because the transactions involve at least two affiliates (EFH Corp. and TCEH).[33]  *See Summit Global,* 2008 Bankr. LEXIS 896, at *27.  Second, the Disinterested Directors are "interested" in the transactions.[34]

---

(5th Cir. 1984); *Popperman v. Rest Haven Cemetery, Inc.*, 345 S.W.2d 715, 717 (1961) (discussing the fairness of interested director transactions)).

[32]     In addition, where the court is being asked to authorize certain debtor actions under section 363 in connection with confirmation of a plan, and where a party challenges the debtor's corporate governance and decision making process, section 1129(a)(3) requires that the Court must find adherence with state corporate governance law as a predicate to determining that the requested actions can be authorized under section 363.  *See e.g.,* 11 U.S.C. § 1129(a)(3) ("The court shall confirm a plan only if all of the following requirements are met: (3) The plan has been proposed in good faith and not by any means forbidden by law."); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 108 (Bankr. D. Del. 1999) ("[T]he Plan must not only comply with the provisions of the Code, but must meet the standards for approval of such a transaction under [state] corporate law. We agree that section 1129(a)(3) does incorporate [state] law (as well as any other applicable nonbankruptcy law)."

[33]     The EFH 363 Transactions are between insiders:
- TCEH is, at the relevant times, a wholly owned subsidiary of EFH Corp.
- EFH Corp. and TCEH share a common board of directors.; and
- With limited exceptions, the management of EFH Corp. and TCEH are the same.

Section 101(31)(E) of the Bankruptcy Code defines "insider" to include an "affiliate."  11 U.S.C. § 101(31)(3).  In turn, section 101(2) of the Bankruptcy Code defines "affiliate" as, among other things, a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor".  11 U.S.C. § 101(2)(B).

[34]     Under Texas law, an officer or director is considered "interested" if he: "(1) makes a personal profit from a transaction by dealing with the corporation or usurps a corporate opportunity; (2) buys or sells assets of a corporation; (3) transacts business in his officer's or director's capacity with a second corporation of which he is also an officer or director or is significantly financially associated; or (4) transacts business in his officer's or director's capacity with a family member."  *Landon v. S&H Mktg. Group*, 82 S.W.3d 666, 673 (Tex. App. Eastland 2002).  Transactions involving an interested director are subject to "strict judicial scrutiny" but are not voidable unless they are shown to be unfair to the corporation.  *See Gearhart*, 741 F.2d at, 720.  The burden of proof is on the interested director to show that the challenged transaction is "fair to the corporation."  *Id.*  Here, where the EFH Disinterested Directors have an interest by virtue of the proposed releases and Mr. Evans will realize improved treatment of his employment agreement, the burden of proving the entire fairness of the transactions shifts to the plan proponents where they may not rely on the presumptions built into the business judgment rule.

49.     As discussed herein, both EFH Corp.'s Disinterested Directors have an interest in the EFH 363 Transactions and confirmation of the Current Plan.  EFH Corp's directors and officers, including the Disinterested Directors, are directly interested in the EFH 363 Transaction involving the use and transfer of EFH Corp.'s NOLs.  That is because, in the event there ultimately is a stranded tax at EFH Corp., the IRS may seek to collect the tax from EFH Corp.'s officers and directors.  The IRS' guidelines instructs IRS agents to assert transferee liability against corporate officers.[35]  In the past, the IRS has sought to collect stranded tax from shareholders, officers and directors of the taxpayer.[36]  For that reason, the officers and directors had a strong personal incentive to structure a transaction to avoid a stranded tax and were more likely to accede to the demands by the TCEH First Lien Lenders as to the amount of Basis Step-Up.

50.     In addition, the Disinterested Directors are interested by virtue of the releases they will receive if the Current Plan is approved.  Moreover, under the Current Plan, Mr. Evans' employment agreement and its severance provisions will be addressed.  These interests are sufficient to trigger the requirement that the Court perform the entire fairness analysis before approving the EFH 363 Transactions.

---

[35]     *See also* the IRS' Internal Revenue Manual, which states:

> Examiners are required to consider collectability in every examination. As such, they must be able to identify situations in which the taxpayer has intentionally or inadvertently placed assets out of the legal reach of the IRS. Additionally, they must be able to identify situations in which asset transfers may not be conducted in a "normal business manner" (not at arm's length) because of the close relationship of the parties involved.

IRM Part 4.11.52.2(3) (available at https://www.irs.gov/irm/part4/irm_04-011-052.html).  The Internal Revenue Service specifically mentions corporate officers and transferee liability.  IRM Part 4.11.52.2(4)(C)

[36]     *See, e.g., Stuart v. Commissioner*, 144 T.C. 235 (2015); *United States v. Friend*, 119 F.2d 969 (7th Cir. 1941); *Rose v. Commissioner*, 21 T.C.M. (CCH) 396 (T.C. 1962).

51.     Finally, it is clear that the Disinterested Directors also breached their duty of care by failing to fully inform themselves of the facts.  The Texas state law corporate fiduciary duty of care requires that a director handle his duties with such care as an ordinarily prudent man would use under similar circumstances. In performing this obligation, the director must be diligent and informed and exercise honest and unbiased business judgment in pursuit of corporate interests.  *Gearhart*, 741 F.2d at 719.  The evidence at trial will show that, as contrasted with their approval of the December Settlement and Terminated Plan, the process the EFH Disinterested Directors undertook in connection with their approval of the Current Plan, the Tax Matters Agreement, other Ancillary Agreements, and the allocation of value was wholly inadequate.  Accordingly, these transactions must be independently reviewed by the Court before they can be approved.

52.     It is important to note that the EFH Indenture Trustee is not arguing that heightened scrutiny applies because of any efforts at personal enrichment or nefarious acts on the part of Ms. Williamson or Mr. Evans.  The discovery taken to date has not produced any evidence of improper conduct other than the objective facts that the Disinterested Directors failed to carry out their fiduciary duty to exercise due care as the circumstances evolved.  Rather, whenever a director or officer is interested in a transaction, applicable law requires application of the entire fairness standard to preserve the integrity of the process.  This point is especially critical in the context of the bankruptcy process (where debtors are involved) and to ensure that a debtor's stakeholders are not being disadvantaged by the mere possibility that the debtor's decision makers are not acting objectively.

iii)     **The EFH 363 Transactions Must be Analyzed Under the Entire Fairness Standard**

53.    In a corporate transaction, when a director or officer has an interest in a transaction, the transaction will be void or voidable unless the material facts relating to the interest are disclosed to the board or shareholders, and the transaction is fair to the corporation when the transaction is authorized by them.  *See* TEX. BUS. ORG. CODE § 21.418(b).  In other words, under state law, shareholders can vote to bless a transaction involving interested directors if the interest is disclosed.  By analogy, where a debtor is in bankruptcy, conflicts in the corporate governance process can be cured through creditor ratification pursuant to a plan process.  In that regard, the one plan-two confirmation hearing process deprives EFH Corp. creditors of their rights, since they are not able to vote to accept or reject the Current Plan and EFH 363 Transactions.  The Court must either deny the relief requested or make specific findings on the entire fairness of the EFH 363 Transactions after the plan proponents have met their burden.

54.    The entire fairness standard applies here because any transaction (i) in which an insider stands to benefit from the use or sale of estate property or (ii) where a director breaches a fiduciary duty, is subject to entire fairness review and the business judgment standard does not apply.  *e2 Creditors' Trust v. Farris (In re e2 Commun's, Inc.)*, 320 B.R. 849, 860 (Bankr. N.D. Tex. 2004) (stating that business judgment rule does not apply where director breached fiduciary duty); *In re CNC Payroll, Inc.*, 491 B.R. 454, 461-62 (Bankr. S.D. Tex. 2013)("[N]on-bankruptcy law holds a self-dealing fiduciary to the highest standard. Indeed, the burden of proof is on the fiduciary to demonstrate the fundamental fairness of every self-dealing transaction . . . If a conflict of interest arises, the business judgment rule does not apply.").[37]

---

[37]    *See also FDIC v. Brown*, 812 F. Supp. 722, 726 (S.D. Tex. 1992); *In re Bidermann Indus. U.S.A. Inc.*, 203 B.R. 547 (Bankr. S.D.N.Y. 1997); *In re Univ. Heights Ass'n*, 2007 Bankr. LEXIS 1200, at *13 (Bankr.

55.     Under an "entire fairness" analysis, "courts are concerned with the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration."  *In re Innkeepers USA Trus*t, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010).

56.     To carry their burden to demonstrate the entire fairness of the transactions,  the plan proponents must establish the "inherent fairness from the viewpoint of the corporation and those interested therein."  *Gearhart*, 741 F.2d at 723 (citing *Pepper v. Litton*, 308 U.S. 295, 306-07 (1939); *Geddes v. Anaconda Copper Min. Co*., 254 U.S. 590, 599 (1921)).  One Delaware court has stated that:

> The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." This "fairness" requirement contains both (i) fair dealing and (ii) fair price, examined together as a whole.
>
> "Fair dealing" involves elements such as (i) when the transaction was timed, (ii) how it was initiated, (ill) how it was structured, (iv) how it was negotiated, (v) how it was disclosed to the directors, and (vi) how the approvals of the directors and the stockholders were obtained.
>
> "Fair price" includes such considerations as "economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock."

*See Official Unsecured Creditors' Comm. of Broadstripe, LLC v. Highland Capital Mgmt., L.P. (In re Broadstripe, LLC),* 444 B.R. 51, 106 (Bankr. D. Del. 2010); *see also Chaput v. Cianci (In*

N.D.N.Y. Jan. 22, 2007); *C & J Clark Am. Inc. v. Carol Ruth Inc. (In re Wingspread Corp.*), 92 B.R. 87 (Bankr. S.D.N.Y. 1988).

*re Chaput)*, 2015 Bankr. LEXIS 1370, *8 (Bankr. D.V.I. Apr. 16, 2015) ("The transaction itself must be objectively fair, independent of the fiduciary's belief.").

57.    Here, the Court must independently find that the EFH 363 Transactions are substantively fair.  As part of that analysis, the Court may not defer to the EFH Disinterested Directors' assertions that they exercised their business judgment in approving the EFH 363 Transactions.  While the review and approval by disinterested directors of a transaction can sometime provides a procedural safeguard, that does not apply when the directors are not actually disinterested or where such directors breach fiduciary duties, including the duty to be fully informed.  S*ee, e.g., Innkeepers*, 442 B.R. at 231.  The evidence at trial will demonstrate that the EFH Disinterested Directors were, in fact, interested and breached their duty of care in connection with approving the EFH 363 Transactions.[38]

iv)    **The Decision Making Process In Approving the Use and Consumption of EFH Corp.'s NOLs and to Approve the EFH 363 Transactions Was Flawed**

58.    As a preliminary matter, the EFH Indenture Trustee, potential plan objectors, and now this Court, are all hampered by the fact that the only request for approval of the EFH 363 Transactions was buried in the T-Disclosure Statement:

> The Plan shall be deemed a motion or motions by the applicable EFH Debtors and/or EFIH Debtors seeking authority to enter into, or effectuate, the Required E-Side Agreements and Actions, which will be subject to the applicable standard of review for outside-the-ordinary course transactions under section 363 of the Bankruptcy Code and the burden shall be on the applicable EFH Debtor or EFIH Debtor(s) to satisfy such standard.

T-Disclosure Statement, at 3.

---

[38]    Even if the Court were to analyze the approval of the EFH 363 Transactions under the business judgment standard, evidence at trial will show that the transaction cannot be approved because the directors, including the Disinterested Directors, failed to properly inform themselves, otherwise violated their duty of care and, as discussed above, were interested in the transactions.

59.     Accordingly, in contravention of customary practices and the Local Rules, neither the EFH Indenture Trustee nor this Court have the benefit of knowing the exact nature of the relief sought or the grounds upon which the Debtors base their belief that the relief should be granted.  This is in sharp contrast to the manner in which this Court conducted the hearing on the December Settlement.  There, the requested relief and the grounds for approval – the basis for the Court to defer to the business judgment – were detailed in a 186-page motion, a disclosure statement for each of the debtors seeking the relief, and extensive written statements of the various disinterested directors.  Here, even after discovery seeking to ferret out the basis of the decisions to approve the EFH 363 Transactions, the grounds remain shrouded in instructions not to answer and redacted board presentations.

60.     As noted, at trial, it will be demonstrated that the EFH Disinterested Directors did not satisfy their fiduciary duty to be fully informed about the EFH 363 Transactions because the EFH Disinterested Directors (i) never re-evaluated or even developed EFH Corp.'s negotiating position after termination of the Plan Support Agreement and the prior plan, (ii) never engaged in intense negotiations, and (iii) never revisited the analysis and strategy after the PLR ruling approving a transaction framework that would allow confirmation of plan with a lower step up and lower consumption of EFH Corp.'s NOLs.

61.     In all instances, the EFH Disinterested Directors appear to have been distracted by their sunk costs and investment in moving forward with any deal and their unfounded fear of Tax Armageddon.  For example, Ms. Williamson testified that ███████████████████████ ███████████████████████████████████ (*See, e.g.,* Schneider Decl., Ex. 9, Williamson Depo. Tr. at 168-170).  The fear of Tax Armageddon was not an excuse

to forgo re-visiting negotiations and evaluating the actual probability that Tax Armageddon would occur.

62.     Until the moment that the EFH Disinterested Directors agreed to the terms of the Ancillary Agreements, it appears they gave no thought to the consideration for EFH Corp. creditors that might be obtained in connection with their consent to the EFH 363 Transactions. Furthermore, it is clear that the EFH Disinterested Directors failed to develop and consider alternatives to allowing the consumption of EFH Corp.'s NOLs in the Basis Step-Up plan.  In all instances, the EFH 363 Transactions, including the consumption of EFH Corp.'s NOLs in a Busted 351 were, and continue to be, justified as the best way to avoid a stranded tax, or "Tax Armageddon,"[39] which the EFH Disinterested Directors knew or should have known was not a credible threat.

**D.     The Current Plan Does Not Satisfy the Requirements of
         Bankruptcy Code Section 1129**

63.     Because the EFH 363 Transactions involve the transfer or use of the assets of EFH Corp., those transactions should not be approved outside of a confirmation of an EFH/EFIH plan.  However, if the Court is inclined to consider approving such transactions in connection with the Current Plan, it is clear that the Current Plan runs afoul of section 1129 of the Bankruptcy Code and cannot be approved.  The Debtors bear the "burden of proving that the

---

[39]     In addition, where the court is being asked to authorize certain debtor actions under section 363 in connection with confirmation of a plan, and where a party challenges the debtor's corporate governance and decision making process, section 1129(a)(3) requires that the Court must find adherence with state corporate governance law as a predicate to determining that the requested actions can be authorized under section 363.  *See e.g.,* 11 U.S.C. § 1129(a)(3) ("The court shall confirm a plan only if all of the following requirements are met: (3) The plan has been proposed in good faith and not by any means forbidden by law."); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 108 (Bankr. D. Del. 1999) ("[T]he Plan must not only comply with the provisions of the Code, but must meet the standards for approval of such a transaction under [state] corporate law. We agree that section 1129(a)(3) does incorporate [state] law (as well as any other applicable nonbankruptcy law)."

Plan complies with all of the requirements of the Bankruptcy Code for confirmation." *In re*

*Wash. Mut., Inc.,* 442 B.R. 314, 328 (Bankr. D. Del. 2011)(denying confirmation because plan

proponents did not meet their burden); s*ee also In re Exide Techs*., 303 B.R. 48, 58 (Bankr. D.

Del. 2003)(denying confirmation of plan and stating that "plan proponent bears the burden of

establishing the plan's compliance with each of the requirements set forth in § 1129(a) . . .").

> **i)       The Current Plan Violates Section 1129(a)(3) Because the EFH 363 Transactions Violate Applicable State Law**

64.      Section 1129(a)(3) provides that a plan can only be approved if it is proposed in

good faith and "not by any means forbidden by law."  Section 1129(a)(3) incorporates state and

other applicable non-bankruptcy law and requires that a plan "must not only comply with the

provisions of the Code, but must meet the standards for approval of such a transaction under

[applicable state] corporate law." *In re Zenith Elecs. Corp.,* 241 B.R. 92, 108 (Bankr. D. Del.

1999); *see also Coram*, 271 B.R. at 239-40.

65.      As discussed above, the EFH Disinterested Directors violated their fiduciary

duties in approving the EFH 363 Transactions and the transactions cannot pass muster under

Texas state law regarding corporate governance.

> **(a)      The EFH 363 Transactions Are Fraudulent Transfers Under Texas Law**

66.      The Current Plan also violates section 1129(a)(3) and is "not by any means

forbidden by law" because the EFH 363 Transactions are fraudulent transfers under the Texas

Uniform Fraudulent Transfer Act ("TUFTA"), which provides that:

> (a)  A transfer made or obligation incurred by a debtor is
> fraudulent as to a creditor whose claim arose before the transfer
> was made or the obligation was incurred if the debtor made the
> transfer or incurred the obligation without receiving a reasonably
> equivalent value in exchange for the transfer or obligation and the

> debtor was insolvent at that time or the debtor became insolvent as
> a result of the transfer or obligation.

TEX. BUS. & COM. CODE § 24.006(a). "Section 24.006(a) requires [the] Court to examine whether [the transferor] received reasonably equivalent value when [the transferor] transferred . . . assets to [the transferee]." *United States v. Evans,* 513 F. Supp. 2d 825, 835 (W.D. Tex. 2007). To sustain a fraudulent transfer claim under TUFTA section 24.006(a), the creditor has to prove that (1) its claim against the debtor arose prior to the transfer of the property in question; (2) the property was transferred for less than reasonably equivalent value, and (3) the debtor was insolvent at the time of the transfer, or was rendered insolvent as a result of the transfer. *See Wren Alexander, Invs., L.L.C. v. IRS (In re Wren Alexander Invs., L.L.C.)*, 2012 U.S. Dist. LEXIS 189240, *13 (W.D. Tex. Mar. 30, 2012).

67.     All the elements of TUFTA section 24.006 are present here and EFH Corp.'s proposed transfer of EFH Properties, EFH Corporate Services and EFH Corp.'s NOLs would be fraudulent as to creditors, because, as demonstrated above, and as will be further shown at trial, EFH Corp. will have made the transfers without receiving a reasonably equivalent value at a time when EFH Corp. is insolvent.

68.     Because TUFTA's concept of "value" was adopted from the Bankruptcy Code, cases decided under the Bankruptcy Code are persuasive. *See Bowman*, 431 S.W.3d at 786. Under section 548 of the Bankruptcy Code, courts have repeatedly determined that a debtor's NOLs are property of the estate that can be recovered as a fraudulent transfer.[40]  Here, EFH

---

[40]     *See e.g., United States v. Towers (In re Feiler)*, 230 B.R. 164, 171 (B.A.P. 9th Cir. 1999) (affirming decision of bankruptcy court that "(1) an IRC § 172(b)(3) NOL election was an interest of Debtors in property; (2) the Election constituted a transfer pursuant to § 548 because it disposed of Debtors' right to a current tax refund in exchange for the right to carry forward their NOL; and (3) the transfer was fraudulent because (a) the parties stipulated that it was made within one year of the filing of the bankruptcy petition, Debtors did not receive reasonably equivalent value, and Debtors were insolvent at the time the Election

Corp. will not receive anything of value — let alone reasonably equivalent value — in exchange for its transfer of EFH Properties, EFH Corporate Services and the consumption of EFH Corp's NOLs.

69.    It is quite clear that EFH Corp. is insolvent.  The *Schedules of Assets and Liabilities* for EFH Corp. indicate that it had approximately $5.195 billion in liabilities and $3.520 billion in assets as of the Petition Date.  *See* D.I. 1237, at 10.

70.    The EFH 363 Transactions are also separately avoidable under section 24.006(b) of TUFTA, which provides that a "transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent."  TEX. BUS. & COM. CODE § 24.006(b) (emphasis added).

71.    Here, the EFH 363 Transactions involve transfers to insiders, TCEH and Reorganized TCEH.  The definition of "insider" under TUFTA mirrors the definition in the Bankruptcy Code.  *See* TEX. BUS. & COM. CODE § 24.002 (7)("Insider" includes: . . . (D)  an affiliate, or an insider of an affiliate as if the affiliate were the debtor . . . .); § 24.002 (7)(defining "affiliate").

72.    In sum, if the EFH 363 Transactions were to occur outside of bankruptcy, all the elements for a fraudulent transfer under TUFTA are met.  The Court should not bless a transaction that would be avoidable outside of bankruptcy.

### ii)    The Current Plan Violates the Best Interest of Creditors Test

---

was made, and (b) the United States directly benefitted from the Election because it was not required to pay a $ 247,493 tax refund."); *Kapila v. United States (In re Taylor)*, 386 B.R. 361, 372 (Bankr. S.D. Fla. 2008) (stating that "bankruptcy law permit[s] the trustee as the fiduciary for the bankruptcy estate to recover those tax attributes which existed prepetition for the benefit of the prepetition creditors. Allowing the Trustee to recover as fraudulent the Debtor's transfer of his NOL carryback prevents the gross inequity created by the irrevocability of the NOL carryback waiver).

73.     Section 1129(a)(7), otherwise known as the "best interest of creditors" test, "involves a hypothetical application of chapter 7 to a chapter 11 plan. *In re Global Ocean Carriers Ltd.*, 251 B.R. 31, 46 (Bankr. D. Del. 2000) ("The burden of establishing compliance with section 1129(a)(7) is on the proponent of the plan.") .

74.     The Debtors cannot prove that EFH Corp., as a holder of claims against EFH Corporate Services as well as its sole equity holder, will receive more under the Current Plan as compared to a chapter 7 liquidation of EFH Corporate Services. To date, the Debtors have not provided the Court with a meaningful liquidation analysis of EFH Corporate Services.  Rather, the Debtors' liquidation analysis presumes a taxable liquidation of all Debtors, but not a standalone liquidation of EFH Corporate Services.  Therefore, the Current Plan does not satisfy section 1129(a)(7) of the Bankruptcy Code.

### iii) The EFH Disinterested Directors and Officers Cannot Be Provided Releases and Exculpations Outside of a Plan for EFH Corp., Especially With Regard to the EFH 363 Transactions

75.     The Current Plan with respect to the TCEH Debtors and the EFH Shared Services Debtors is also unconfirmable because it provides officers and directors of EFH Corp.  — including Billie I. Williamson and Donald Evans, the Disinterested Directors of EFH Corp. — with releases and exculpations outside of the context of confirmation of the Current Plan with respect to the EFH Debtors.

76.     Article VII.C. of the Current Plan provides that the Debtors, the Reorganized Debtors, and their Estates shall release and discharge, among others, each Debtors' current and former directors, managers and officer from, as described more specifically in the Current Plan, any and all Claims and Causes of Action, relating to, or in any manner arising from, actions

37

taken in connection with the Debtors' chapter 11 cases, including the EFH 363 Transactions.

*See* Current Plan, at Art.VIII.C. at Art. I.A. 332.

77.     Under Third Circuit law, a plan of reorganization may provide for releases by the

debtor against third parties only under "certain limited circumstances." *In re Zenith Elecs.*

*Corp.*, 241 B.R. 92, 110 (Bankr. D. Del. 1999).  Courts apply a non-exclusive five-factor test to

determine the appropriateness of a debtor's release of non-debtor third parties in a chapter 11

plan:

- an identity of interest between the debtor and the third party, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;

- substantial contribution by the non-debtor of assets to the reorganization;

- the essential nature of the injunction to the reorganization to the extent that, without the injunction, there is little likelihood of success;

- an agreement by a substantial majority of creditors to support the injunction, specifically if the impacted class or classes 'overwhelmingly' votes to accept the plan; and

- provision in the plan for payment of all or substantially all of the claims of the class or classes affected by the injunction.

*Id.* (citing *In re Master Mortg. Inv. Fund, Inc.*, 168 B.R. 930 (Bankr. W.D. Mo. 1994)); *see also*

*In re Indianapolis Downs, LLC*, 486 B.R. 286, 303 (Bankr. D. Del. 2013); *In re Washington*

*Mut., Inc.*, 442 B.R. 314, 346 (Bankr. D. Del. 2011) (same).  None of the five factors are

satisfied and EFH Corp. officers and directors are not entitled to releases in connection with

confirmation of the Current Plan as it applies to the TCEH Debtors.

78.     First, there has been no showing of any identity of interest between the TCEH

Debtors and the EFH Debtors' directors and officers.  Second, no director or officer of EFH

Corp. has made any contribution of assets to the TCEH Debtors' reorganization to warrant a

release.  Third, the releases are not essential to the TCEH Debtors' reorganization.  Fourth, it is

not clear whether any significant EFH Corp. creditor supports the Current Plan and as many of

those creditors, if any, are not entitled to vote on the TCEH Plan (as they are not direct creditors

of those estates) they have not been given the opportunity to either opt-in or out of such

requested releases. Fifth, the Current Plan as it applies to the TCEH Debtors fails to assure

payment of all or substantially all of the claims that will be released by EFH Corp.  Accordingly,

the releases provided to EFH Corp. officers and directors render the Current Plan unconfirmable.

*See generally In re Washington Mut.,* 442 B.R. at 349–50 (holding that there was no basis for the

debtors to grant release to directors and officers because there was no evidence of substantial

contribution); *In re Spansion, Inc.*, 426 B.R. 114, 145 (Bankr. D. Del. 2010) (finding improper

releases of third parties by objecting shareholders who were receiving nothing under the plan); *In*

*re Genesis Health Ventures, Inc.*, 266 B.R. 591, 607–08 (Bankr. D. Del. 2001) (concluding that

the debtor releases of directors and officers were improper because they were not essential to the

reorganization and the directors and officers did not make any contribution of assets to the

reorganization); *In re Nickels Midway Pier, LLC*, Case No. 03-49462 (GMB), 2010 WL

2034542, at *13 (Bankr. D.N.J. May 21, 2010) (finding third party releases impermissible where

no consideration was provided to the releasing parties who had objected).

   79. In addition, each Debtors' current and former directors, managers and officers are

defined as "Exculpated Parties."  *Id.* at Art. I. A. 208.  As such, under Art. VIII.E of the Current

Plan, each current and former director and officer of each Debtor (including the EFH Debtors) is

released and exculpated from, as described more specifically in the Current Plan, any Claims and

Causes of Action, related to any act or omission in connection with, relating to, or in any manner

arising from, actions taken in connection with the Debtors' chapter 11 cases, including without limitation, the EFH 363 Transactions.  Current Plan, at Art. VIII.E.

80.    In addition, the Current Plan provides that the "Exculpated Parties have, and upon completion of the Plan shall be <u>deemed to have, participated in good faith</u> and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.").  *Id.* (emphasis added).

81.    The exculpations provided to EFH Corp. officers and directors under the Current Plan must also be struck.  Courts in Delaware have held that "estate fiduciaries" such as professionals and the debtor's directors and officers "may be exculpated under a plan for their actions in the bankruptcy case except for willful misconduct or gross negligence." *In re Wash. Mut., Inc.*, 442 B.R. 314, 350 (Bankr. D. Del. 2011).  Here, the EFH Corp. directors and officers are not fiduciaries for the TCEH Debtors and should not receive any exculpations in connection with confirmation of the Current Plan with respect to the TCEH Debtors and the EFH Shares Services Debtors.

**E.    <u>The Current Plan is Not Feasible</u>**

82.    The Current Plan is also unconfirmable because it is not feasible. Section 1129(a)(11) of the Bankruptcy Code provides that a plan can only be confirmed if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan."  11 U.S.C. § 1129(a)(11).  In the absence

of an agreed Tax Matters Agreement, the Current Plan is not feasible and a hearing to consider

confirmation of the Current Plan should not be permitted to commence as it will be a waste of

resources.[41]

**F.**     **The Procedural Posture of the Confirmation Hearing and Approval of the EFH 363 Transactions Violates the Bankruptcy Code and Rules and Prejudices the Rights of EFH Corp.'s Creditors**

> **i)**     **The Request for Approval of the EFH 363 Transactions Constitutes a *Sub Rosa* Plan for EFH Corp.**

83.     The Current Plan also cannot be approved because the EFH 363 Transactions

constitute a *sub rosa* plan for EFH Corp. *See  In re Braniff Airways, Inc.,* 700 F.2d 935, 935 (5th

Cir. 1983) ("The debtor and the bankruptcy court should not be able to short circuit the

requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of

the plan *sub rosa* in connection with a sale of assets").  Notably, and as will be demonstrated at

trial, consumption of the NOLs will impede the possibility of a creditor bid for EFH Corp.'s

equity in Oncor because virtually all of the NOLs that would bolster such a bid will be consumed

by Reorganized TCEH.

> **ii)**     **Separate Notice Is Required For Approval Of the EFH 363 Transactions**

84.     The Current Plan for which confirmation is being sought for just the TCEH

Debtors and EFH Shared Services Debtors contemplates the use and/or transfer of a significant

portion of EFH Corp. assets.  The Bankruptcy Code and the Bankruptcy Rules clearly require

that court approval of such use of estate assets must be done by notice and a hearing. Section

363(c)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in

---

[41]     *See* Form of Tax Matters Agreement, Section 2.05(d) n.2 [D.I. 9100].

the ordinary course of business, property of the estate, . . . ." 11 U.S.C. § 363(c)(1).  Bankruptcy

Rule 6004(a) provides that:

> (a) Notice of Proposed Use, Sale, or Lease of Property. Notice of a
> proposed use, sale, or lease of property, other than cash collateral,
> not in the ordinary course of business shall be given pursuant to
> Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in
> accordance with §363(b)(2) of the Code.

See FED. R. BANKR. P. 6004(a).  In every instance that the EFH Indenture Trustee is aware of,

relief of the type sought here has only been granted following a motion by the debtor, or in

connection with confirmation of that debtor's own plan.[42]

85.    No motion has been filed by EFH Corp. seeking approval of the EFH 363

Transactions.  Moreover, the Current Plan does not involve confirmation of a plan for EFH

Corp.'s estate nor are EFH Corp. creditors voting on the Current Plan.  The use of EFH Corp.

assets presumably formed the basis for the following statement from Debtors' counsel at the June

16, 2016 hearing to consider approval of the T-Side Disclosure Statement (the "T-Disclosure

Statement Hearing") indicating there was significant debate over whether to file one or two

plans:

> The debtors thought long and hard about whether we should split
> the plans into two or whether we should keep a joint plan. And I
> can confess, we had an active debate within Kirkland, with our
> clients, and I was on one side and others were on other sides.

---

[42] The T-Disclosure Statement is expressly a disclosure statement solely with respect to the TCEH Debtors,
but also incongruously seeks to have the Current Plan be a deemed motion by EFH Corp.  *Compare* T-
Disclosure Statement at 1 ("The TCEH Debtors seek to confirm the [Plan] as it relates to the TCEH
Debtors and the EFH Shared Services Debtors, filed contemporaneously herewith including the Plan
Supplement as it relates to the TCEH Debtors and the EFH Shared Services Debtors, to effect a
comprehensive restructuring of their respective balance sheets.") *with* T-Disclosure Statement at 3 ("The
Plan shall be deemed a motion or motions by the applicable EFH Debtors and/or EFIH Debtors seeking
authority to enter into, or effectuate, the Required E-Side Agreements and Actions, which will be subject to
the applicable standard of review for outside-the-ordinary course transactions under section 363 of the
Bankruptcy Code and the burden shall be on the applicable EFH Debtor or EFIH Debtor(s) to satisfy such
standard.").

> Ultimately we determined that it was probably the most logical to keep them in a joint plan with two disclosure statements and separate confirmation hearings. ***This is because there are still significant ties between these two estates that must be carefully addressed whether they're one plan or two.***

*See* Schneider Decl., Ex. 4, Hr'g Tr. 20:21-25; 21:1-6 (June 16, 2016; C. Husnick) (emphasis added).

86.    To the extent the T-Disclosure Statement is "deemed" to satisfy the requirements of section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, the Order authorizing EFH Corp. to make those transfers should be separate from the one confirming TCEH's Plan.[43] Those considerations, combined with the bifurcation of confirmation of the Current Plan separate and apart from any set hearing on the plan for EFH Corp., violate the Bankruptcy Code and the Bankruptcy Rules and the Local Rules.[44] Here, the failure of the Debtors to file a separate motion to approve the EFH 363 Transactions appears to have been purposefully designed to curtail the appellate rights of EFH Corp. creditors.

### iii)    The Bankruptcy Code and Procedural Due Process Do Not Permit Entry of Multiple Confirmation Orders for One Plan in These Circumstances

87.    The issue of whether there can be two confirmation orders for one plan is a matter of first impression in this district.  Contrary to the TCEH Debtors' assertion in the *TCEH*

---

[43]    Although the EFH Indenture Trustee is aware that confirmation orders regularly include provisions binding third parties, this situation is different as it implicates two bankruptcy estates that have not been substantively consolidated.  For example if the T-Side had a bankruptcy case pending in the District of Delaware and the E-Side had bankruptcy case pending in the Southern District of New York it cannot be disputed that two separate orders would be required in order to effectuate the contemplated transactions – *i.e.* the Bankruptcy Court for the District of Delaware would have to enter an order confirming the proposed plan and the Bankruptcy Court for the Southern District of New York would have to enter an order authorizing EFH Corp. to transfer its assets outside the ordinary course of business.  The presence of both parties before this Court should not dictate a different result.

[44]    The Current Plan, as a "deemed motion," does not satisfy all applicable requirements of Local Rule 6004-1(b).  Notably, the Current Plan did not "set forth any measures taken to ensure the fairness of the sale process and the proposed transaction."  *See* Local Rule 6004-1(b).

*Debtors Omnibus Reply to Objections to the TCEH Disclosure Statement* [D.I. 8686], the chapter

11 cases of *In re General Growth Properties, Inc.*, No. 09-11977 (Bankr. S.D.N.Y. 2009), are

inapposite.  The chapter 11 plan for the *General Growth* debtors was vastly different than the

Current Plan for the TCEH Debtors and the just-filed plan for the EFH/EFIH Debtors.  In

*General Growth*, the confirmed plan paid all creditors in full and was described as follows:

> The joint plan we're proposing this afternoon covers 190 project-
> level debtors. Under our plan, all creditors will be paid in full, our
> equity will be reinstated. Approximately 15,000 contracts and
> leases will be assumed; none will be rejected. The only impaired
> creditor, with respect to each plan, is our secured lender, and with
> respect to each plan, today, each secured lender has voted to
> approve the plan, and all objections have been resolved.

*In re General Growth Properties, Inc.*, No. 09-11977 (Bankr. S.D.N.Y. 2009) [D.I. 4058], Hr'g

Tr. 17: 9-16 (Dec. 15, 2009).  The *General Growth* plan was not confirmed as to all the debtors

at the same time because at the time of the confirmation hearing, there were ten properties where

the "lenders and/or special servicers" were securing certain additional approvals and that the

debtor's hope was that "additional consents will come in and [we] would be able to come

forward and seek to have those plans confirmed at that time. The same plan structure would

apply." *Id.* at 19:8-11. By contrast, here the restructuring transactions for the EFH/EFIH Debtors

in the just-filed plan is different than the plan structure for the TCEH Debtors and the EFH

Shared Services Debtors in the Current Plan.  Thus, the argument that the "same plan" structure

that applied in *General Growth* is analogous to the Debtors' chapter 11 cases is misplaced.

*General Growth* does not provide binding or persuasive precedent for this Court to enter two

confirmation orders on the same plan.

**G.    The TCEH Debtors are Not Entitled To A Good Faith Finding
        If The EFH 363 Transactions Are Approved**

88.     If the Court were inclined to approve the EFH 363 Transactions, the TCEH

Debtors would nonetheless not be entitled to a good-faith finding under section 363(m) because:

(i) the Debtors have not requested such relief; and (ii) as discussed below, the facts do not

support such a finding.  First, as this Court is aware, the Debtors elected to rely on a hastily

inserted paragraph in the T-Disclosure Statement in lieu of making a motion to request approval

of the EFH 363 Transactions.  This inserted language did not request a finding of good faith

under section 363(m) and one cannot be granted now.  Furthermore, even if the request had been

made by motion, grounds do not exist to support a good faith finding.

89.     The Third Circuit has defined "good faith" as "one who purchases in 'good faith'

and for 'value.'"  *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986).  As discussed above,

Reorganized TCEH will not provide consideration to EFH Corp. in exchange for the EFH 363

Transactions and cannot be found to have provided "value."  In fact, since EFH Corp. will be

forced to pay the 50% alternative minimum tax liability it is paying Reorganized TCEH's taxes.

### IV.
### RESERVATION OF RIGHTS

90.     The EFH Indenture Trustee reserves its right to amend this Objection or interpose

additional objections in response to further amendments to the Current Plan, evidence that may

be introduced at the confirmation hearing, and additional facts and circumstances that may arise

or be revealed by ongoing discovery.

### V.
### CONCLUSION

91.     Based on the foregoing, the EFH Indenture Trustee respectfully requests that the

Court (i) not grant approval under section 363 of the Bankruptcy Code to the EFH 363

Transactions; (ii) deny confirmation of the Current Plan; and (iii) grant such other and further

relief as is just and proper.

Dated: Wilmington, DE                    **CROSS & SIMON, LLC**
August 8, 2016

/s/ *Christopher P. Simon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
gskelly@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee*

Joining all arguments and positions in full as if a separate pleading had been filed

HOGAN♦MCDANIEL

Garvan F. McDaniel, Esq.
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone:  (302) 656-7540
Facsimile:  (302) 656-7599
Email:  gfmcdaniel@dkhogan.com

– and –

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP

David S. Rosner, Esq.
Andrew K. Glenn, Esq.
Daniel A. Fliman, Esq.
1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700
Facsimile:  (212) 506-1800
Email:  DRosner@kasowitz.com
AGlenn@kasowitz.com
DFliman@kasowitz.com

*Counsel* to Contrarian Capital Management, LLC

## EXHIBIT 1

## INDENTURES

1.      Indenture dated as of November 1, 2004, between Energy Future Holdings Corp. ("EFH"), as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of July 1, 2010, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series P Indenture").

2.      Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series Q Indenture").

3.      Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series R Indenture").

4.      Indenture dated as of November 16, 2009, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Supplemental Indenture, dated as of January 25, 2013, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "9.75% Senior Notes Indenture").

5.      Indenture dated as of January 12, 2010, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010, the Eighth Supplemental Indenture, dated as of January 25, 2013, and the Ninth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.00% Senior Notes Indenture").

6.      Indenture dated as of October 31, 2007, among EFH, as issuer, the Guarantors party thereto and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, the Fourth Supplemental Indenture, dated as of October 18, 2011, and the Fifth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.875% Senior Notes and 11.250%/12.000% Senior Toggle Notes Indenture," and collectively with the Series P Indenture, the Series Q Indenture, the Series R Indenture, the 9.75% Senior Notes Indenture, and the 10.00% Senior Notes Indenture, the "Indentures").