# **EXHIBIT 4**

1   was reflected in the objection chart we filed --

2           THE COURT:  Uh-huh.

3           MR. HUSNICK:  -- a couple days ago, that issue,

4   Your Honor, has heard much about, we ultimately settled it

5   in the first confirmation hearing.  Hopefully we can settle

6   it again in this confirmation hearing.  We are working on

7   that, but suffice to say it is a confirmation issue but

8   there's disclosure that can be and was included.

9           The EFH indenture trustee now stands alone in its

10  objection to the disclosure statement.  And I won't spent

11  too much time on this other than to say it's not a voting

12  constituency, it's an incredibly sophisticated constituency

13  with sophisticated counsel, and they really have no standing

14  or place -- even if they had legal standing have no place

15  objecting to a disclosure statement in this case.

16          And as I walk through the issues that they're

17  raising I will explain at each turn why they don't need

18  additional disclosure on this.  It appears to be a ploy for

19  more time, and I'm not sure what more time does in this

20  case.

21          The first objection is one versus two plans.  The

22  debtors thought long and hard about whether we should split

23  the plans into two or whether we should keep a joint plan.

24  And I can confess, we had an active debate within Kirkland,

25  with our clients, and I was on one side and others were on

1   other sides.  Ultimately we determined that it was probably
2   the most logical to keep them in a joint plan with two
3   disclosure statements and separate confirmation hearings.
4   This is because there are still significant ties between
5   these two estates that must be carefully addressed whether
6   they're one plan or two.
7           We recognize that there will need to be
8   negotiations, for example, with the E side and the T side
9   stakeholders regarding language that reserves the rights on
10  particular provisions and how they affect.  That's a natural
11  reality.  If we had two plans we'd be negotiating two sets
12  of language because one constituency be confirmed that the
13  subsequent plan affects their rights.
14          So we're going to have to cross that bridge and we
15  will cross that bridge whether there's one or two plans.
16          But we believe consistency is important and
17  changes can be accomplished, to the extent necessary,
18  through the confirmation orders as is done in many cases.
19          I conclude on this topic by saying it is not
20  contrary to the assertions unprecedented to do thing in this
21  way.  I personally worked on a very complicated case in the
22  Southern District of New York, General Grill (ph)
23  Properties, where there were more than 100 different
24  separate private loans with different borrowers and
25  different collateral, and we ultimately used a single joint