# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>　　　　　Debtors. | CHAPTER 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Hearing Date: August 17, 2016 at 10:00 a.m.<br>Obj. Deadline: August 10, 2016 at 4:00 p.m.<br>Related Docket Nos. 9100, 9188, 9199 |

### OBJECTION OF SAP INDUSTRIES, INC. TO ASSUMPTION AND ASSIGNMENT OF A SOFTWARE LICENSE AGREEMENT WITH TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY, LLC AND PROVISION OF TRANSITION SERVICES BY THE ASSIGNEE TO ENERGY FUTURE HOLDINGS CORP.

SAP Industries, Inc. ("SAP"), by and through its undersigned counsel, objects to the assumption and assignment of a certain software license agreement and the use of SAP's software arising thereunder by the assignee to provide transition services pursuant to the *Third Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "Plan") and schedules thereto. In support of its objection, SAP states as follows:

### INTRODUCTION

1. SAP and Texas Competitive Electric Holdings Company, LLC *f/k/a* TXU Energy Company, LLC ("TCEH") are parties to a certain Software License Agreement, hereinafter

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

defined.

2.  The Debtors have stated that TCEH will assume and assign the Software License Agreement to EFH Corporate Services Company pursuant to the Plan.

3.  SAP objects to assumption and assignment of the Software License Agreement without SAP's consent and assurance of future performance of all contractual obligations under the Software License Agreement by the assignee, including, but not limited to, those provisions related to transition services.[2]

## BACKGROUND

*The SAP Software License Agreement*

4.  On or about June 30, 2006, SAP Public Services, Inc. and TCEH entered into a certain "Software License Agreement." That agreement and any and all related agreements, schedules, appendices, and amendments thereto are referred to herein as the "Software License Agreement."

5.  All rights and obligations of SAP Public Services, Inc. under the Software License Agreement were assigned to SAP Industries, Inc. on or about November 5, 2010.

6.  Pursuant to the terms and conditions of the Software License Agreement, SAP granted TCEH a non-exclusive, site-specific, perpetual license to use certain Software and other Proprietary Information owned by SAP (all capitalized terms not herein defined are used as defined in the Software License Agreement).[3]

---

[2] Counsel for SAP and TCEH have engaged in negotiations regarding SAP's consent to the assignment of the Software License Agreement and the potential provision of certain transition services by the assignee; however, as no resolution has been reached at this time, SAP files this objection to preserve its rights.

[3] Due to the confidential nature of the Software License Agreement, it is not attached to this objection, but may be made available upon the request of the Court or parties in interest.

7.	The Software licensed to TCEH under the Software License Agreement is protected under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq*.

8.	No rights of ownership in the Software were transferred to TCEH or any of its affiliates under the Software License Agreement.  SAP retains ownership of the Software.  *See In re Patient Education Media, Inc.*, 210 B.R. 237, 240 (Bankr. S.D.N.Y. 1997).

9.	The Software License Agreement prohibits TCEH from assigning or transferring any of its rights thereunder absent SAP's consent and the performance of certain conditions:

> In addition, subject to SAP's prior written consent (not to be unreasonably withheld or subject to any assignment or administrative fee), Licensee shall have the right to assign this Agreement (excluding all third-party software, provided that such assignment is not permitted under the applicable third party reselling agreement between such third party and SAP and provided further that SAP cannot convince such third party to consent to such assignment using commercially reasonable efforts) to any entity which acquires all or substantially all of Licensee's operating assets, or into which Licensee is merged or reorganized pursuant to any plan of merger or reorganization, subject to the condition that Licensee provides SAP with: (1) a statement, signed on behalf of the assignee, that such assignee agrees to abide by the terms of this Agreement; (2) evidence, reasonably satisfactory to SAP, of such assignee's corporate authority to enter into this Agreement; and (3) a copy of assignee's most current audited publicly available financial statements (if any), prepared in accordance with generally accepted accounting principals consistently applied, showing that such Assignee has a minimum net worth to allow Assignee to perform its obligations under this Agreement.

Software License Agreement § 10.3(a).

10.	The license grant in the Software License Agreement is limited to Licensee's use for "productive purposes (e.g., to run Licensee's internal business operations and integrate with other applications and systems)" and does not extend to TCEH's (or any permitted assignee's) use of the Software for the benefit of third parties:

3

>The foregoing does not permit Licensee to Use the Software to provide the following services to third parties: business process outsourcing services, service bureau application services, or third party training services.

Software License Agreement § 2.1(a).

11. Notwithstanding the foregoing, however, if the Licensee "sell[s] or otherwise transfer the assets or equity ownership of any Licensee division, Subsidiary, Subsidiary division, or business unit (all jointly hereafter referred to as "Business Unit")," then the Software License Agreement allows for the provision of certain transitional services for a limited duration. *Software License Agreement* § 10.3(b). If the transitional services will be provided for a period exceeding six (6) months, certain conditions apply, including, but not limited to (i) execution of a Subsidiary Use Agreement by such Business Unit, and (ii) payment of an annual fee of $250,000.00:

>If Licensee, as part of any agreement with such Business Unit, is required to provide such services for a period beyond six (6) months, then Licensee shall have the right to so provide such services for up to an additional twelve (12) month period if (a) Licensee notifies SAP in writing of its decision to provide such additional transitional services within the initial six (6) month period after completion of any such transfer; (b) the transferee signs a Subsidiary Use Agreement; (c) Licensee pays all Maintenance Fees for such twelve (12) month period at the time that it notifies SAP in writing of its decision to provide such additional transitional services; and (d) Licensee pays a transfer fee of $250,000.00. Further, if Licensee is required to provide an additional twelve (12) month period of services beyond the twelve (12) month period stated herein, Licensee may do so if (a) Licensee notifies SAP in writing of its decision to provide such additional transitional services within the initial twelve (12) month period after completion of any such transfer; (b) Licensee pays all Maintenance Fees for such twelve (12) month period at the time that it notifies SAP in writing of its decision to provide such additional transitional services; and (c) Licensee pays an additional transfer fee of $250,000.00.

*Software License Agreement* § 10.3(b).

*The Bankruptcy and the Relief Requested by the Plan*

12. On or about April 29, 2014 (the "Petition Date") TCEH and its affiliated debtors (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code").

13. On June 16, 2016, the Debtors filed their *Second Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 8745], as further amended by the *Third Amended Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "Plan").

14. On or about July 28, 2016, the Debtors filed certain documents in connection with the confirmation proceedings related to the Plan [D.I. 9100]. These documents include (i) a "Transition Services Agreement" by and between Energy Future Holdings Corp. ("EFH") and TEX Operations Company LLC ["OpCo"] [D.I. 9100-2], and (ii) a "Separation Agreement" [D.I. 9100-3], by and between EFH, TEX Energy LLC ("SpinCo"), and OpCo, as amended by the "Form of Separation Agreement" included in the Debtors' plan supplement, filed on August 3, 2016 [D.I. 9188-17] (the "Separation Agreement").

15. Pursuant to the Plan, TCEH will form TEX Energy LLC ("SpinCo"), to which TCEH will transfer all of TCEH's interests in its subsidiaries, which will then transfer certain assets to a new corporation in exchange for the equity of that corporation. *Transition Services Agreement* p. 1.

16. EFH will contribute the equity of EFH Corporate Services Company to OpCo, an entity to which "certain other assets liabilities and equity interests related to the TCEH Debtors' operations" will be transferred." *Transition Services Agreement* p.1.

2723718.v1

17. On the effective date of the TCEH Plan, EFH shall and shall cause its subsidiaries which hold "TCEH Assets" to "transfer, convey and deliver" the TCEH Assets "to SpinCo or a member of the SpinCo Group designated by SpinCo." *Separation Agreement* § 2.1(a).

18. The "TCEH Assets" include the Software License Agreement.[4]

19. On August 3, 2016, the Debtors filed their "List of Executory Contracts and Unexpired Leases to be Assumed by Reorganized TCEH Debtors on the TCEH Effective Date" [D.I. 9188-2] (the "Cure Schedule"). In the Cure Schedule, the Debtors state that TCEH will assume and assign the Software License Agreement to EFH Corporate Services Company. *Cure Schedule* Line # 2168.

20. Under the Transition Services Agreement, OpCo—the future parent of EFH Corporate Services Company (or its reorganized counterpart)—will provide certain transition services to EFH until "the earlier of (i) December 31, 2017 or (ii) the closing date of the E-Side Transaction." *Separation Agreement* § 1.1(a), § 2.1.

21. The Service Schedule attached as Annex B to the Transition Services Agreement contains a broad list of services, including business services administration, information technology, and human resources.

---

[4] In the Separation Agreement, TCEH Assets has the meaning ascribed to such term in the Plan, which provides that the TCEH Assets includes the Acquired TCEH Assets. *Separation Agreement* p. 5; *Plan* p. 35. The "Acquired TCEH Assets" means those assets set forth on Schedule 1 to the Separation Agreement. *Separation Agreement* p. 1. Schedule 1 to the Separation Agreement includes the Software License Agreement. *Separation Agreement*, Schedule 1 § 2(d)(iii).

6

**BASIS FOR THE OBJECTION**

I. **THE SOFTWARE LICENSE AGREEMENT CANNOT BE ASSIGNED ABSENT SAP'S CONSENT AND ADEQUATE ASSURANCE OF FUTURE PERFORMANCE.**

22. A nonexclusive license of intellectual property is an executory contract: "Bankruptcy courts have generally treated nonexclusive copyright and patent licenses as executory contracts." *In re Patient Educ. Media*, 210 B.R. at 241; *see also In re Valley Media, Inc.*, 279 B.R. 105, 135 (Bankr. D. Del. 2002)("The Third Circuit follows the general rule that intellectual property licenses, including copyright licenses, are executory contracts within the meaning of 11 U.S.C. § 365(c) under the Countryman test.").

23. Pursuant to 11 U.S.C. § 365(c)(1) and the terms of the Software License Agreement, TCEH cannot assume and/or assume and assign the Software License Agreement absent TCEH obtaining SAP's consent and TCEH's compliance with certain conditions set forth in the Software License Agreement.

24. The Bankruptcy Code also conditions assignment of an executory contract on the provision of adequate assurance of the assignee's future performance. *See* 11 U.S.C. § 365(f)(2); *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001).

25. In addition, the Third Circuit has held that, pursuant to § 365(c)(1) of the Bankruptcy Code, assumption and assignment of a contract are precluded if "applicable law" would render assignment unenforceable absent consent of the non-debtor party. *See In re West Electronics, Inc.*, 852 F.2d 79, 83 (3d Cir. 1998). Under applicable federal copyright law, a non-exclusive license of copyright rights such as the License Agreement is not assignable without permission of the copyright owner. *See In re Valley Media, Inc.,* 279 B.R. at 135-36; *In re*

*Golden Books*, 269 B.R. 311, 318 (Bankr. D. Del. 2001); *In re Sunterra Corp.,* 361 F.3d 257, 262 (4th Cir. 2004); *In re Catapult*, 165 F.3d. 747, 750 (9th Cir. 1999).

26. Pursuant to the Software License Agreement, SAP has conditioned its consent to assumption and/or assignment upon the Debtors' performance of certain conditions precedent including, *inter alia*, a statement by the assignee that it agrees to abide by the terms of the Agreement. *Software License Agreement* § 10.3(a).

27. Thus, pursuant to § 365(c)(1) the Debtors can neither assume nor assign the Software License Agreement without fulfillment of these conditions precedent.

28. At this time, SAP is unable to consent to the assignment of the Software License Agreement as the conditions precedent to such assignment have not yet been fulfilled.

29. Moreover, to date, the Debtors have not provided any information demonstrating adequate assurance EFH Corporate Services Company's future performance of all terms of the Software License Agreement. SAP reserves objects to the assignment absent assurance that EFH Corporate Services Company will perform all of the obligations arising under the Software License Agreement, including those related to transition services, discussed below.

## II. LICENSEE CANNOT PROVIDE TRANSITION SERVICES USING SAP'S SOFTWARE TO EFH ABSENT COMPLIANCE WITH THE TERMS OF THE SOFTWARE LICENSE AGREEMENT

30. The Software License Agreement provides that transitional services may be provided in certain circumstances to a former Business Unit of the Licensee and for a period exceeding six (6) months only upon the performance of certain conditions and payment of applicable fees.

31. "Section 365(f) requires a debtor to assume a contract subject to the benefits and burdens thereunder." *In re Fleming Companies, Inc.*, 499 F.3d 300, 308 (3d Cir. 2007). "The

[debtor] ... may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other." *In re Italian Cook Oil Corp.,* 190 F.2d 994, 997 (3d Cir.1951).

32. If TCEH assumes and assigns the Software License Agreement to EFH Corporate Services Company, the assignee is bound by all terms of the Software License Agreement, including those regarding transition services.

33. Assumption and assignment of the Software License Agreement must be conditioned upon adequate assurance that the future licensee will comply with all obligations of the Software License Agreement, including those related to transition services.

34. The Software License Agreement provides an exception to the general prohibition on Licensee using the Software or providing transition services for the benefit of third parties, which exception is limited to situations where the Licensee sells or otherwise transfers the assets or equity ownership of a Business Unit and agrees to provide transition services to that Business Unit. SAP disputes that the Software License Agreement permits EFH Corporate Services Company to provide transition services to EFH; EFH Corporate Services Company is not selling or transferring the assets of EFH.

35. However, SAP is willing to agree to the provision of such transition services to EFH provided that EFH Corporate Services Company proffers assurances that it and EFH will comply with all of the terms and remit payment of any applicable fees as required by Section 10.3(b) of the Software License Agreement as set forth above.

**WHEREFORE**, SAP requests that this Court enter an order conditioning assumption and assignment of the Software License Agreement upon performance of the conditions to assignment contained therein and adequate assurance of future performance of all terms of the Software License Agreement, including those related to transition services.

Dated: August 10, 2016                                                          **BROWN & CONNERY, LLP**

/s/ Donald K. Ludman
Donald K. Ludman (DE Bar No. 4015)
6 North Broad Street, Suite 100
Woodbury, NJ 08096
(856) 812-8900
(856) 853-9933 (facsimile)
dludman@brownconnery.com

*Attorneys for SAP Industries, Inc.*