WHITE & CASE

August 12, 2016

VIA ECF AND HAND DELIVERY

Honorable Christopher S. Sontchi
United States Bankruptcy Court
for the District of Delaware
824 N. Market Street, 5th Floor
Wilmington, DE 19801

White & Case LLP
1155 Avenue of the Americas
New York, NY 10036-2787
T +1 212 819 8200

whitecase.com

**RE: In re Energy Future Holdings Corp., *et al.*, Case No. 14-10979 (CSS)**

Dear Judge Sontchi:

We write on behalf of certain counsel and advisors (collectively, the "Professionals")[1] to the Ad Hoc Group of TCEH Unsecured Noteholders (the "TCEH Unsecured Group"), Law Debenture Trust Company of New York, as indenture trustee (the "TCEH Unsecured Notes Trustee"), the Ad Hoc Consortium of TCEH Second Lien Noteholders (the "TCEH Second Lien Group"), and Wilmington Savings Fund Society, as indenture trustee (the "TCEH Second Lien Trustee" and, together with the TCEH Unsecured Notes Trustee, the "Indenture Trustees"), to request, in light of the changed circumstances described herein, the Court's guidance regarding the proper scope of the Fee Committee's review of the Professional Fees[2] payable to such Professionals pursuant to the Settlement Agreement.

---

[1] The Professionals include:

White & Case LLP ("White & Case"), counsel to the TCEH Unsecured Group and co-counsel to the TCEH Unsecured Notes Trustee;

Fox Rothschild LLP ("Fox Rothschild"), Delaware co-counsel to White & Case;

PA Consulting Group, energy consultant/expert retained by White & Case;

Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), financial advisor to the TCEH Unsecured Group and the TCEH Unsecured Notes Trustee;

Patterson Belknap Webb & Tyler LLP, co-counsel to the TCEH Unsecured Notes Trustee;

Brown Rudnick LLP ("Brown Rudnick"), counsel to the TCEH Second Lien Group and co-counsel to the TCEH Second Lien Trustee;

Ashby & Geddes, P.A. ("Ashby & Geddes"), Delaware co-counsel to Brown Rudnick;

Concentric Energy Advisors ("Concentric"), energy consultant/expert retained by Brown Rudnick;

Peter J. Solomon Company ("Peter J. Solomon"), financial advisor to the TCEH Second Lien Group and the TCEH Second Lien Trustee; and

Troutman Sanders LLP ("Troutman Sanders"), co-counsel to the TCEH Second Lien Trustee.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in that certain Amended and Restated Settlement Agreement, dated as of September 11, 2015 (the "Settlement Agreement").

August 12, 2016

**WHITE & CASE**

As the Court is aware, the Debtors' *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 7235] (the "REIT Plan") became a nullity on May 1, 2016.  One of the many consequences of that development is that a significant portion of the Professional Fees payable by the Debtors' estates under the Settlement Agreement are not being paid by the Debtors and instead are now covered by the applicable Indenture Trustee's "charging lien" (the "Charging Lien Fees").  Charging Lien Fees will not affect the TCEH Debtors' estates or any creditors not bound as a matter of contract to the terms of applicable indentures.  Accordingly, the Professionals believe that the Fee Committee's review of the Professional Fees should be limited to Professional Fees that are ***not*** Charging Lien Fees.  The Fee Committee, however, has declined the Professionals' request to so limit its review in the absence of voluntary reductions, despite the fact that the Debtors are not paying the Charging Lien Fees.  The Professionals thus seek this Court's intervention to ensure that additional expenses are not incurred by the TCEH Unsecured Group, the TCEH Second Lien Group, and the Indenture Trustees in responding to information requests with respect to Charging Lien Fees, which additional expenses will further diminish noteholders' already diminished recoveries.

**Relevant Background**

On December 9, 2015, the Court entered the *Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 7285], thereby confirming the REIT Plan.  On December 7, 2015, in connection with confirmation of the REIT Plan, the Court entered the *Order Granting the Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter Into and Perform Under the Settlement Agreement* [Dkt. No. 7243].  On May 1, 2016, the REIT Plan was rendered null and void.  The Settlement Agreement, however, remains binding and underpins the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Dkt. No. 9199-1] (the "Alternative Plan").

With respect to the Professional Fees, Section 2.7(a) of the Settlement Agreement provides, in relevant part:

> TCEH shall . . . pay the reasonable and documented out-of-pocket fees, expenses, and reimbursements of . . . (ii)(A) the TCEH Unsecured Group . . . , (B) the TCEH Unsecured Notes Trustee, (C) the TCEH Second Lien Group . . . , (D) the TCEH Second Lien Trustee, and (E) The Bank of New York Mellon Trust Company, N.A., as collateral agent under the TCEH Second Lien Notes Indenture (the foregoing fees, expenses, and reimbursements in clause (ii), collectively, the "**Professional Fees**") . . . .  ***If the Effective Date of the [REIT] Plan does not occur, under any Alternative Restructuring, the TCEH Cash Payment shall be reduced by the amount of the Professional Fees actually paid pursuant to this Section 2.7***.  The Settling TCEH Unsecured Noteholders, Settling TCEH Second Lien Noteholders and TCEH Official Committee agree that, solely for purposes of allocating the TCEH Cash Payment among the holders of Allowed TCEH

August 12, 2016

WHITE & CASE

> Unsecured Note Claims, Allowed TCEH Second Lien Claim, Allowed PCRB Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH:  (x) the Professional Fees of the TCEH Unsecured Group and TCEH Second Lien Group that (1) are actually paid pursuant to this Section 2.7, and (2) are not subject to or covered by the TCEH Unsecured Notes Trustee's and TCEH Second Lien Notes Trustee's "charging liens," respectively, shall reduce pro rata the distributions to all holders of Allowed TCEH Unsecured Note Claims, Allowed TCEH Second Lien Claim, Allowed PCRB Claims, and Allowed General Unsecured Claims Against the TCEH Debtors Other Than EFCH based on the amounts of the respective distributions such holders would otherwise have received but for such reduction and taking into account the effect of the Limited Waiver; (y) *the Professional Fees of the TCEH Unsecured Group and TCEH Unsecured Notes Trustee that (1) are actually paid pursuant to this Section 2.7 and (2) are subject to or covered by the TCEH Unsecured Notes Trustee's "charging lien" shall reduce pro rata the distributions to holders of Allowed TCEH Unsecured Notes Claims based on the amounts of their Allowed Claims; and (z) the Professional Fees of the TCEH Second Lien Group and TCEH Second Lien Notes Trustee that (1) are actually paid pursuant to this Section 2.7 and (2) are subject to or covered by the TCEH Second Lien Notes Trustee's "charging lien," shall reduce pro rata the distributions to holders of Allowed TCEH Second Lien Note Claims* based on the amounts of their Allowed Claims.

Settlement Agreement § 2.7(a) (emphasis added). Thus, pursuant to Section 2.7 of the Settlement Agreement, because the REIT Plan Effective Date will not occur, the Professional Fees will reduce the $550 million[3] TCEH Cash Payment but Charging Lien Fees will only reduce, as a matter of contract between the applicable non-Debtor parties, recoveries to holders of notes issued under their respective indentures.  Creditors entitled to share in the $550 million TCEH Cash Payment that are not bound to the terms of the applicable indentures will not have their recoveries reduced with respect to Charging Lien Fees.

Recognizing that, in light of the REIT Plan being rendered null and void, further review by the Fee Committee of Charging Lien Fees was unnecessary, White & Case, on behalf of the Professionals, sent a letter on June 22, 2016 to counsel for the Fee Committee explaining the foregoing and requesting that the Fee Committee limit its review to Professional Fees that are not Charging Lien Fees.  The Professionals' request was supported by the TCEH Official Committee and was not opposed by the Debtors.  In response to the Professionals' request, counsel for the Fee Committee advised White & Case that the Fee Committee would not limit its review in the absence of voluntary reductions in the amounts of Professional Fees sought.  In the absence of such agreement, the Fee Committee would continue its review of all Professional Fees, including the Charging Lien Fees.

---

[3] The $550 million TCEH Cash Payment is subject to certain reductions not relevant for purposes of this letter.  See Settlement Agreement § 2.2(a).  Solely for ease of reference, the TCEH Cash Payment will be referred to herein as being in the amount of $550 million.

August 12, 2016

WHITE & CASE

### The Fee Committee's Review of Charging Lien Fees Is Unnecessary

The outcome of the Fee Committee's review of the Charging Lien Fees will have no impact on the estates of the TCEH Debtors. Under the Settlement Agreement, the Charging Lien Fees of the Professionals advising the TCEH Unsecured Notes Trustee will be allocated to and deducted from the recoveries of *only* the holders of the TCEH Unsecured Note Claims, in accordance with the applicable indenture. Likewise, the Charging Lien Fees of the Professionals advising the TCEH Second Lien Trustee will be allocated to and deducted from the recoveries of *only* the TCEH Second Lien Note Claims, in accordance with the applicable indenture. In addition, because an indenture trustee with a "charging lien" can withhold from its noteholders' recoveries the amount of the fees and expenses incurred by its retained professionals, the Fee Committee's review and recommendation with respect to Charging Lien Fees will not impact the net recoveries of holders of TCEH Second Lien Note Claims and TCEH Unsecured Note Claims.[4] See In re RNI Wind Down Corp., No. 06-10110(CSS), 2007 Bankr. LEXIS 982, at *34-35 (Bankr. D. Del. Mar. 29, 2007) (holding that the court lacked jurisdiction to intervene in a dispute concerning funds over which the indenture trustee asserted a charging lien). In sum, because the Charging Lien Fees will be allocated only to the noteholders on whose behalf they were incurred, the amount of those Charging Lien Fees will have no impact on the recoveries of holders of claims against the TCEH Debtors *other than* the holders of TCEH Second Lien Note Claims and TCEH Unsecured Note Claims, and the Fee Committee's review of Charging Lien Fees will not affect the net recoveries of holders of TCEH Second Lien Note Claims and TCEH Unsecured Note Claims.

As such, the Fee Committee's continued review of Charging Lien Fees serves no legitimate purpose and instead will result in a reduction to the net recoveries of holders of TCEH Second Lien Note Claims and TCEH Unsecured Note Claims because the Indenture Trustees will continue to incur expenses with respect to their respective Professionals' work in responding to the Fee Committee's information requests regarding Charging Lien Fees.

### The Fee Committee's Review Should be Limited to
### Professional Fees That Are Not Charging Lien Fees

The Professional Fees that are not Charging Lien Fees (the "Non-Covered Fees") amount to, in the case of the Professionals advising the TCEH Unsecured Group, approximately $4.5 million,[5]

---

[4] The Court recognized during its confirmation ruling with respect to the REIT Plan that the payment of fees from a "charging lien" need not be authorized by the Court:

> While it is true that the payment of the professional fees is a negotiated part of the settlement, the parties cannot contract around the bankruptcy code, even under Rule 9019. Importantly, *these claims are not being paid* in connection with an allowed claim such as that of a secured creditor, nor *out of the charging lien asserted by an indentured [sic] trustee from the allowed claim of its noteholders*.

> Rather, the professional fees are being paid to ad hoc committees and creditors and indentured [sic] trustees by the Debtor, TCEH, as an independent allowed administrative expense. As such, it must be authorized by the bankruptcy code.

In re Energy Future Holdings Corp., Case No. 14-10979 (CSS), Tr. of Dec. 3, 2015 Hr'g, at 34:11-23 (emphasis added).

[5] This figure includes approximately $4.5 million of fees and expenses of White & Case, Fox Rothschild, and Houlihan Lokey for the period prior to April 29, 2014, the date on which the Unsecured Note Trustee's "charging lien" began to apply to such Professionals' fees and expenses.

August 12, 2016

WHITE & CASE

and, in the case of the Professionals retained by the TCEH Second Lien Group, approximately $2 million.[6]  Under the Settlement Agreement, the Non-Covered Fees are to be allocated among and deducted from the recoveries of all holders of second lien and general unsecured claims against the TCEH Debtors (including the holders of PCRB Claims and trade and legacy general unsecured claims).  Accordingly, unlike the Charging Lien Fees discussed above, a reduction in the amount of the Non-Covered Fees *will* impact the recoveries of certain other holders of claims against the TCEH Debtors. Recognizing this, the Professionals acknowledge that it is appropriate for the Fee Committee to review the Non-Covered Fees (and communicated that view in the June 22 letter to counsel to the Fee Committee).

### Conclusion

Limiting the scope of the Fee Committee's review of the Professional Fees to the Non-Covered Fees (i) will not alter the relative recoveries of holders of particular categories of second lien and general unsecured claims against the TCEH Debtors (i.e., TCEH Second Lien Note Claims, TCEH Unsecured Note Claims, PCRB Claims, and trade and legacy general unsecured claims), (ii) will avoid potential reduction to the recoveries of holders of TCEH Second Lien Note Claims and TCEH Unsecured Note Claims, (iii) will expedite the Fee Committee's review of the Professional Fees, and (iv) will reduce the burden on the Fee Committee and the Professionals. For these reasons, the Professionals believe that the Fee Committee should limit its review of the Professional Fees to the Non-Covered Fees and ask the Court to intervene to provide guidance and assistance in that regard.

The Professionals are available at the Court's convenience to discuss this matter by telephone conference or otherwise.

Respectfully,

*/s/ J. Christopher Shore*


**J. Christopher Shore**
Partner

**T** +1 212 819 8394
**E** cshore@whitecase.com

---

[6] This figure includes approximately $2 million of fees and expenses of Brown Rudnick, Ashby & Geddes, Concentric, Peter J. Solomon, and Troutman Sanders for the period prior to those Professionals' retention by the TCEH Second Lien Trustee.

August 12, 2016

cc:  Richard A. Gitlin, Esq.
     Brady C. Williamson, Esq.
     Thomas E Lauria, Esq.
     Jeffrey M. Schlerf, Esq.
     Daniel A. Lowenthal, Esq.
     Edward S. Weisfelner, Esq.
     Jeffrey L. Jonas, Esq.
     William P. Bowden, Esq.
     Louis A. Curcio, Esq.
     Todd M. Goren, Esq.
     Chad J. Husnick, Esq.
     Aparna Yenamandra, Esq.