**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., et al.,<br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>Hearing Date: August 17, 2016 at 10:00 a.m.<br><br>**Re: Docket Nos. 9221, 9222 & 9223** |

**EFH INDENTURE TRUSTEE'S OPPOSITION TO DEBTORS'**
**MOTION IN *LIMINE* TO EXCLUDE THE TESTIMONY OF JACK F. WILLIAMS**

**TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*B. Braun Melsungen AG v. Terumo Med. Corp.,*
    749 F. Supp. 2d 210 (D. Del. 2010) ..................................................................................7

*Bitler v. A.O. Smith Corp.,*
    400 F.3d 1227 (10th Cir. 2004) .........................................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ...........................................................................................................6

*Galentine v. The Estate of Stkervetz,*
    273 F. Supp. 2d 538 (D. Del. 2003) ..................................................................................6

*In re Iridium Operating LLC,*
    373 B.R. 283 (Bankr. S.D.N.Y. 2007) ..............................................................................9

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994) .................................................................................................6

*Kannankeril v. Terminix International Inc.,*
    128 F.3d 802 (3d Cir. 1997) ..............................................................................................7

*Oddi v. Ford Motor Co.,*
    234 F.3d 136 (3d Cir.2000) ...............................................................................................7

*Smithkline Beecham Corp. v. E. Applicators, Inc.,*
    No. 99-CV-6552, 2001 WL 1526273 (E.D. Pa. Nov. 29, 2001) .......................................7

*Taylor v. Danek Med., Inc.,*
    No. CIV. A. 95-7232, 1999 WL 310647 (E.D. Pa. May 10, 1999) ...................................7

*U.S. v. McClintock,*
    2006 WL 39241 (E.D. Pa. Jan. 5, 2006) ...........................................................................6

*United States v. Gutierrez de Lopez,*
    761 F.3d 1123 (10th Cir.) *cert. denied sub nom. De Lopez v. United States*, 135 S. Ct.
    768 (2014) ..........................................................................................................................7

*Withrow v. Spears,*
    967 F. Supp. 2d 982 (D. Del. 2013) ..................................................................................7

*Yarchak v. Trek Bicycle Corp.,*
    208 F. Supp. 2d 470 (D.N.J. 2002) ...................................................................................6

**FEDERAL STATUTES**

*Chapter 11 of the Bankruptcy Code*..................................................................................3

Bankruptcy Code § 363 ...................................................................................1, 8, 10

§ 1129(a)(7) of the Bankruptcy Code ..............................................................................8

**OTHER STATUTES**

Texas Uniform Fraudulent Transfer Act...........................................................................9

**RULES**

Fed. R.Evid. 702 ...........................................................................................................6, 7

Fed. R. Civ. P. 30(b)(6)......................................................................................................4

Fed. R. Bankr. P. 7026......................................................................................................5

Fed. R. Civ. P. 26 ..............................................................................................................5

Rule 702(a)........................................................................................................................7

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.    PRELIMINARY STATEMENT ....................................................................................... 1

II.   BACKGROUND ........................................................................................................... 3

III.  ARGUMENT.................................................................................................................. 6

      A.    Professor Williams' Testimony "Fits" this Case Because It Will Help the Trier of Fact Analyze Whether or Not the Debtors Properly Considered Whether to Transfer Corporate Services to the T-Side for No Consideration............................ 8

      B.    Professor Williams Reserves the Right to Testify Regarding Matters Raised by the Debtors' Expert in his Rebuttal Report............................................................ 12

      C.    The Debtors Disingenuously Try to Insinuate that Professor Williams' Supplemental Report Was Tardy ......................................................................... 13

IV.   CONCLUSION............................................................................................................. 13

## I.  PRELIMINARY STATEMENT

American Stock Transfer & Trust Company, LLC ("AST"), as successor trustee to The

Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture

Trustee") under the indentures for certain notes (the "EFH Notes") issued by Energy Future

Holdings Corp. ("EFH Corp.") (as described in Exhibit 1 attached hereto), by its undersigned

counsel, hereby submits this Opposition to Debtors' Motion in *Limine* to Exclude the Testimony

of Jack F. Williams.

Professor Williams' testimony is helpful to the trier of fact because his valuation of EFH

Corporate Services, Inc. ("EFH Corporate Services") assists the Court in determining whether:

(1) under Bankruptcy Code Section 363, EFH Corp.'s directors performed the proper analysis

when they approved the out-of-ordinary-course transfer of certain EFH Corp. assets to

Reorganized TCEH; and (2) whether the contemplated transfer of those assets, which include

EFH Corporate Services, constitutes a fraudulent transfer.

Once the previously confirmed plan was terminated in May, 2016, the EFH Corp. had a

full opportunity, and firm duty, to revisit and negotiate the terms of possible transfers of EFH

Corp.'s assets.  Instead, of properly analyzing the assets, the evidence at trial will show they

merely acceded to a déjà vu spinoff structure that built in a gift of $5.8 Billion in EFH Corp.'s

accumulated net operating losses ("NOLs") and two subsidiaries of EFH Corp., EFH Corporate

Services and EFH Properties Company ("EFH Properties").

As for EFH Corporate Services, which Professor Williams' report and valuation

addresses, it would be critical in those negotiations and approvals for the directors of EFH Corp.

to inform themselves – at a minimum – of the value of the entity, particularly the value it would

have in the context of the Plan and the transfer to TCEH.  As Professor Williams' report explains

and supports, the proper valuation premise is a going concern (as opposed to a liquidation

1

premise) with the appropriate standard for these purposes being a fair valuation.  In reaching his

conclusions, Professor Williams used the Adjusted Balance Sheet method as his approach.

     The Debtors did not perform a valuation of EFH Corporate Services ███████████

██████████████████████, and therefore did not take even the initial step

in analyzing whether it is appropriate to transfer that asset for no monetary consideration.  While

there may be several factors that go into the analysis of deciding whether or not to transfer

certain assets, ████████████████████████The importance of █

████ is underscored by the fact that, ██████████████████████

████████████████████████████████████

██████████████████████████████

███████

     The Debtors argue that Professor Williams' testimony will not be helpful because ████

██████████████████████████ They present the

*ipse dixit* argument that ███████████████████████████

does not "fit" this case.  But their own expert, John Stuart, ██████████████████

██████████████████ The Debtors point out that Professor Williams

██████████████████ However, as the report explains,

███████████████████████████

██████████████████ Again, the Debtors' own expert ████

████████████████████████████

██████

Finally, the Debtors argue that the report is not helpful to the trier of fact because 

The Debtors do not cite to one piece of authority in support of their arguments, and fail to counter the citations provided by Professor Williams in his report which support

## II. <u>BACKGROUND</u>

1.    On August 5, 2016, the Debtors filed the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 9199] (the "<u>Current Plan</u>").

2.    Under the Current Plan, EFH Corp. will transfer to Reorganized TCEH the equity of EFH Corporate Services and EFH Properties.  EFH Corporate Services and EFH Properties are wholly-owned subsidiaries of EFH Corp. and their assets are not encumbered by the liens of the TCEH First Lien Creditors.

3.    The Current Plan also will permit Reorganized TCEH's use of approximately $5.8 billion of EFH Corp.'s NOLs that will directly increase Reorganized TCEH's value by more than $1 billion.

---

1

4833-6126-9558 2

4.      A central issue for the Confirmation Hearing will be determining how and why the officers and directors, and in particular the Disinterested Directors of EFH Corp., dealt with the disposition of the equity interest in EFH Corporate Services and EFH Properties and the decision to utilize EFH Corp.'s NOLs to provide Reorganized TCEH with a tax basis step up worth more than $1 billion.

5.      In order to gain an understanding of these issues, the EFH Indenture Trustee served its First Set of Requests for Production of Documents and Interrogatories to the Debtors on May 27, 2016 (the "Document Requests").

6.      On June 3, 2016, the Debtors served Responses and Objections to the Document Requests and began rolling productions in response to the Document Requests.

7.      On June 15, 2016, the EFH Indenture Trustee served a Notice of Deposition to the Debtors pursuant to Fed. R. Civ. P. 30(b)(6).

8.      The Debtors provided Patrick Williams as a 30(b)(6) deponent on June 30, 2016, to testify regarding EFH Corporate Services and EFH Properties issues.  However, Patrick Williams was unprepared to testify.[2]

9.      During late June and early July, the Debtors and EFH Indenture Trustee held several meet and confer conferences addressing the EFH Indenture Trustee's concern that it still had not

---

[2]      For example, ███████████████████████ In a context other than this, where the Court has made clear that no delay will be tolerated and the Debtors insisted on an accelerated schedule, the Debtors' conduct in failing to timely produce documents and in failing to prepare Patrick Williams, would be grounds for a continuance of trial.

4833-6126-9558 2

received adequate documents, which it had requested on May 27, 2016, to analyze the transfer of several assets, including EFH Corporate Services.

10. In furtherance of those meet and confer conferences, on July 8, 2016, the EFH Indenture Trustee's financial advisor provided a list of documents (all of which had been in the requested Document Requests served on May 27, 2016) that it needed to perform its analysis, but that had not yet been produced.

11. In response to that request, the Debtors made two belated productions of approximately 128 documents on July 12, 2016 and July 13, 2016.

12. Two days later, the EFH Indenture Trustee served copies of the Expert Report of Professor Jack Williams with a cover letter, attached as Exhibit A, hereto which stated: "While we have endeavored to comply with the July 15, 2016 deadline imposed by you, we continue to object to the timing of that deadline . . . as unreasonable. This is particularly problematic for the context of the attached expert report in light of the Debtors' very belated production of key documents and information that had been previously requested."

13. Due to the Debtors' delayed production of key documents, the EFH Indenture Trustee indicated that its Expert Report is "necessarily preliminary and we reserve the right to supplement it, as appropriate." *See* Exhibit A.

14. Additional relevant documents that had been requested on May 27, 2016 continued to be produced on a rolling basis throughout July.

15. The Rebuttal Report of John Stuart was served on July 25, 2016.

16. An informal due diligence call was held with the Debtors' financial advisor on July 26, 2016, at which Professor Williams learned additional information which was germane to his analysis of EFH Corporate Services.

17.  Within only one day of this due diligence call, a Supplemental Report of Professor

Jack Williams was served on July 27, 2016, as required by Federal Rule of Civil Procedure

26(e), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7026.

18.  Professor Williams was deposed on July 28, 2016, and was asked numerous

questions regarding his Supplemental Report and the Rebuttal Report of Debtors' expert John

Stuart.

### III. ARGUMENT

19.  An expert may testify at trial if that expert's specialized knowledge will assist the

trier of fact "to understand the evidence or to determine a fact in issue," subject to three distinct

substantive restrictions on the admission of expert testimony: qualifications, reliability and

fit.  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993);

*Galentine v. The Estate of Stkervetz*, 273 F. Supp. 2d 538 (D. Del. 2003).  The Debtors argue

only that Professor Williams' report should be excluded because it does not meet the "fit"

requirement, and therefore concede that it meets the requirements of qualification and

reliability.  *See* Debtors' Memorandum of Law In Support of Motion *in Limine* to Exclude the

Testimony of Jack F. Williams [D.I. 9222] ("MOL ISO MIL") ¶ ¶10; 14.

20.  The fit component of the *Daubert* test concerns "the proffered connection between

the scientific research or test results to be used and particular disputed factual issues in the case."

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994).  It requires that the testimony

"must in fact assist the jury, by providing it with relevant information, necessary for a reasoned

decision of the case."  *Yarchak v. Trek Bicycle Corp.*, 208 F. Supp. 2d 470, 496 (D.N.J.

2002).  Admissibility under the "fit" analysis depends in part on the proffered connection

between the test result to be offered and the particular factual disputes of the case.  *Galentine* at

542.

21.  The "fit" standard "does not require a plaintiff to 'prove their case twice.'" *U.S. v. McClintock*, 2006 WL 39241, at *6, *7 (E.D. Pa. Jan. 5, 2006) (*quoting Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir.2000)).  Plaintiffs "need not 'demonstrate to the judge by a preponderance of evidence that the assessments of their expert are correct, they have only to demonstrate by a preponderance of the evidence that they are reliable.'" *Id.* (quoting *In re Paoli*, 35 F.3d at 743).  Indeed, the "fit" standard "is not intended to be a high one" and is "not dissimilar to the general standard of relevance" under the federal rules.  *See Smithkline Beecham Corp. v. E. Applicators, Inc.*, No. 99-CV-6552, 2001 WL 1526273, at *4 (E.D. Pa. Nov. 29, 2001) (*quoting United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. Aug.30, 2001)); *see also Withrow v. Spears*, 967 F. Supp. 2d 982, 992 (D. Del. 2013) (("The standard for fit, however, is not a high one; it is met 'when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case.'" (quoting *Meadows v. Anchor Longwall & Rebuild, Inc.,* 306 Fed.Appx. 781, 790 (3d Cir.2009)).

22.  As to the question of aiding the trier of fact, courts consider non-exclusive factors including: (1) whether the testimony is relevant; (2) whether it is within the trier of fact's common knowledge and expertise; and (3) whether it will usurp the role of the trier of fact. "[E]xpert testimony is admissible under Rule 702(a) 'if it will simply help the trier of fact to understand the facts already in the record, even if all it does is put those facts in context,'" and "[d]oubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1136 (10th Cir.) *cert. denied sub nom. De Lopez v. United States*, 135 S. Ct. 768 (2014) (internal citations omitted).

7

23.  A review of applicable case law shows that the rejection of expert testimony is the exception rather than the rule.  *See* Fed. R. Evid. 702 (Committee Notes); *Kannankeril v. Terminix International Inc*., 128 F.3d 802, 806 (3d Cir. 1997); *see also, Bitler v. A.O. Smith Corp.,* 400 F.3d 1227, 1235 (10th Cir. 2004); *Oddi v. Ford Motor Co.,* 234 F.3d 136, 145 (3d Cir. 2000).  Overall, "Rule 702 embodies a 'liberal policy of admissibility.'" *B. Braun Melsungen AG v. Terumo Med. Corp.,* 749 F. Supp. 2d 210, 222 (D. Del. 2010) (quoting *Pineda v. Ford Motor Co*., 520 F.3d 237, 243 (3d Cir. 2008)).

**A.    Professor Williams' Testimony "Fits" this Case Because It Will Help the Trier of Fact Analyze Whether or Not the Debtors Properly Considered Whether to Transfer Corporate Services to the T-Side for No Consideration**

24.  Professor Williams' opinion meets the "fit" requirement because it is relevant and helpful to this Court.  It helps demonstrate that the Debtors failed to ████████████ or consider the value of EFH Corporate Services which should certainly be at least the first step in a discussion of whether to transfer that asset to Reorganized TCEH and the appropriate consideration due in return.  Under Section 363, the Debtors bear the burden of proof that they performed a proper analysis when deciding to transfer certain assets, including EFH Corporate Services.[3]

25.  To determine if an expert's testimony will aid the trier of fact, the first question that must be answered is to what is the expert purporting to testify?  Here, the Debtors simply err in the questions they presume Professor Williams' testimony will aid the trier of fact in answering.  Contrary to the Debtors' assertions, the questions are not about the "E-Side" and the "T-Side".

---

[3] Some confusion seems to emanate from the differing purposes of the valuations of EFH Corporate Services in the Bankruptcy Cases.  Were Professor Williams preparing a valuation with regard to the "best interest of the creditors" test found in section 1129(a)(7) of the Bankruptcy Code, the appropriate premise of value would be a liquidation premise in which liquidation costs may be relevant.  However, Prof. Williams prepared his valuation using a going concern premise to determine if the Debtors' could meet their burden under section 363 of the Bankruptcy Code which evaluates the transaction proposed by the Debtors which is a going concern in which such costs are not relevant.

8

Rather, the questions is: What is the value of **EFH Corp.'s** 100% equity interest in EFH Corporate Services based on the proposed transaction? (███████████████).  The answer to this question is essential to the Court's analysis of whether or not the transfer of its 100% equity interest in EFH Corporate Services to Reorganized TCEH is being made in exchange for adequate consideration.  The explanation of the process that Professor Williams undertook will also aid the Court in its evaluation of the process that the disinterested directors undertook (or failed to undertake).

26.  The Debtors' decision to transfer EFH Corporate Services without an appropriate analysis is but one example of their inadequate corporate governance process.  To perform a proper analysis, EFH Corp. should have determined the value of EFH Corporate Services, but it did not.  Professor Jack Williams did.  His opinion is relevant to help the Court determine whether or not EFH Corp. conducted a proper process and analysis before agreeing to transfer EFH Corporate Services.

27.  Further, the EFH Indenture Trustee will argue that the proposed transfer of EFH Corp.'s equity in EFH Corporate Services valued at ██████████████ in exchange for no value, as that term is defined by the Texas Uniform Fraudulent Transfer Act, at a time that EFH Corp. is insolvent constitutes a constructive fraudulent transfer and itself may constitute a breach of fiduciary duty of the EFH board and thus render the Plan unconfirmable.  Professor Williams' valuation testimony on the value of the interest in the property of EFH Corp. (████ ██████████████████████████████) that the Debtors intend to transfer is relevant to the issues presented and will assist the trier of fact.

28.  Professor Williams explains in his report that ████████████████████ ██████████████████████████████████████████████

9



*See* <u>Exhibit C</u>, Expert Report of Jack Williams, p. 29 ████████ ████ ████ ███████ ████████ ██████ ██ ███████████ ██████████ ██████ ██ ████ █████ ████████████████████ █████████████████████████████████ The Debtors do nothing to address or rebut these arguments or citations in either their expert reports, or their Motion *in Limine*.

29.  The Debtors do not cite one case or piece of authority indicating that Professor Williams' chosen adjusted balance sheet method is somehow improper in this context.  Their argument is pure *ipse dixit*.

30.  The Debtors essentially argue that Professor Williams' report should be excluded because ████████████████████████ is not appropriate for this case.  They argue that the report is not helpful because ████████████████████████████████ ██████████████████████████████████ and does not assess ███████████████████████████████████ *See* MOL ISO MIL ¶ 12.  But this is not the point of Professor Williams' ████████ ████████ █████████████████████████████████████ ██████████████ Further, the Debtors assertion ignores that "the context of the confirmation proceedings" requires a determination regarding the motion pursuant to Bankruptcy Code section 363 contained in the Current Plan regarding certain proposed transfers, including the transfer of EFH Corp.'s equity in EFH Corporate Services.

4833-6126-9558 2

31.  Further, in fact, the Debtors' own expert, John Stuart, ████████████████████████

████████████████████████████████████████████████ *See* July 29, 2016

Deposition of John L. Stuart, <u>Exhibit D</u> ("Stuart Dep."), 43: 3-2; Debtors' Exhibit B, Stuart

Rebuttal Report p. 7 ████████████████████████████████████ When Mr. Stuart was

asked at his deposition, ████████████████████████████████████████

██████████████ he replied; ████████████████████████████████

████████████████████████████████████████████████████

Stuart Dep. 60: 11-14.  The importance of a valuation is further underscored by the fact that,

upon receipt of ████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████

32.  The Debtors essentially argue that Professor Williams' report is defective because he

does not consider ████████████████████████████████████████

████████████████████████████████████ *See* Debtors' MOL ISO MIL ¶¶

12-13.  As Professor Williams explained at his deposition, ████████████████████████

████████████████████████████████████████████████

████████████████████████████ Debtors' Exhibit A, Williams Dep. 64:10-14.

33.  In fact, ████████████████████████████████████████to use an

example offered but never appropriately quantified by the Debtors, is not a concept that is

consistent with the transfer of an asset/business that would be considered as a going concern, like

EFH Corp.'s equity in EFH Corporate Services.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████

34.  Moreover, the Debtors' own expert, Stuart, ████████████████████

█████████████████████████████████████████████████████████████████

███████████████  *See* <u>Exhibit E</u>, Expert Report of John Stuart ("<u>Stuart Report</u>"), p. 90, n.1

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████

35.  The Debtors also argue that Professor Williams ████████████████

███████████████████████████  Debtors' MOL ISO MIL ¶ 14.  In this assertion, the

Debtors ████████████████████████████████████████████████

█████████████████████████████  As noted above, by definition, ███████████████

███████████████████  Thus, Professor Williams performed ████████████████

█████████████████████████████████  Further, the Debtors' own expert ███████

█████████████████████████████████████████████████████████████████

███████████████████████████████████  Additionally, ████████████████

████████████████████████  the Debtors, despite repeated requests, failed to produce

documents sufficient to perform ██████████████  which would require, among other things, █

████████████████████████

**B.**   **<u>Professor Williams Reserves the Right to Testify Regarding Matters Raised by the Debtors' Expert in his Rebuttal Report</u>**

36.  While the EFH Indenture Trustee does not intend to have Professor Williams testify

regarding EFH Properties, he reserves the right to testify regarding matters raised in John

Stuart's rebuttal report, including responding to the criticisms lodged in the Stuart rebuttal report.

The rebuttal report was issued on July 25, 2016, prior to Professor Williams' deposition, and

4833-6126-9558 2

Debtors and other participants had a full opportunity to examine Professor Williams on those rebuttal points, and indeed did so at length.

**C.      The Debtors' Disingenuously Try to Insinuate that Professor Williams' Supplemental Report Was Tardy**

37.    The Court should disregard the Debtors' attempt to characterize Professor Williams' Supplemental report as tardy or inappropriate under the circumstances.  *See* Debtors MOL ISO MIL ¶ 5.  As described above, the timing of the submission of a Supplemental Report was caused by the Debtors' own extreme delay in providing the EFH Indenture Trustee with relevant documents responsive to its discovery requests.  In his initial report and his Supplemental Report, Professor Williams repeatedly explained that he had not received adequate documents or had time to review Debtors' belated rolling productions.  *See* Exhibit C, Williams Report, p. 22. Once those documents were received, supplementation was required by Federal Rule of Civil Procedure 26(e), made applicable to this matter by Federal Rule of Bankruptcy Procedure 7026. Further, the EFH Indenture Trustee expressly reserved the right to submit a supplemental report in its cover letter to the Debtors, attached as Exhibit A.  The Debtors do not claim any prejudice from the submission of the Supplemental Report.  And indeed, they experienced none since the Supplemental Report was provided prior to Professor Williams' deposition and the debtors asked many questions about it.

**IV. CONCLUSION**

Based on the foregoing, the EFH Indenture Trustee respectfully requests that the Court deny Debtor's Motion *in Limine* to exclude the testimony of Jack F. Williams.

13

Dated: Wilmington, DE
          August 12, 2016

**CROSS & SIMON, LLC**

By: /s/ *Christopher P.  Simoon*
Christopher P. Simon (No. 3697)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust
Company, LLC, as Indenture Truste*

4833-6126-9558 2

**EXHIBIT 1**

**INDENTURES**

1.    Indenture dated as of November 1, 2004, between Energy Future Holdings Corp. ("EFH"), as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of July 1, 2010, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series P Indenture").

2.    Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series Q Indenture").

3.    Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series R Indenture").

4.    Indenture dated as of November 16, 2009, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Supplemental Indenture, dated as of January 25, 2013, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "9.75% Senior Notes Indenture").

5.    Indenture dated as of January 12, 2010, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010, the Eighth Supplemental Indenture, dated as of January 25, 2013, and the Ninth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.00% Senior Notes Indenture").

6.    Indenture dated as of October 31, 2007, among EFH, as issuer, the Guarantors party thereto and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, the Fourth Supplemental Indenture, dated as of October 18, 2011, and the Fifth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.875% Senior Notes and 11.250%/12.000% Senior Toggle Notes Indenture", and collectively with the Series P Indenture, the Series Q Indenture, the Series R Indenture, the 9.75% Senior Notes Indenture, and the 10.00% Senior Notes Indenture, the "Indentures"

1