# EXHIBIT B

EFH Indenture Trustee's First Set of RFPs and Interrogatories

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Jointly Administered |
| Debtors. | |

**EFH INDENTURE TRUSTEE'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES TO THE DEBTORS IN CONNECTION WITH CONFIRMATION OF THE DEBTORS' JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., ET AL., PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this proceeding pursuant to Rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with the Confirmation of Debtors' Joint Plan of Reorganization and the Approval of Debtors' Disclosure Statement* [D.I. 8514] (the "Plan Scheduling Order"), American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures for certain notes (as identified on Schedule 1 attached hereto, the "EFH Indentures") issued by Energy Future Holdings Corp. ("EFH Corp."), by its undersigned counsel, hereby demands that EFH Corp. and each of its affiliated debtors as debtors in possession (collectively, the "Debtors") produce all Documents described below in their possession, custody, or control, including in the possession,

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification Numbers is not provided herein. A

custody, or control of any Affiliates of any of the Debtors, in accordance with the definitions and instructions set forth below to the offices of Nixon Peabody LLP, 437 Madison Ave., New York, NY 10022 (Attn: Christopher J. Fong, Esq.).

## **DEFINITIONS**

All terms herein shall have the same meaning as terms defined in the Debtors' Joint Plan of Reorganization (the "New Plan") and Disclosure Statement and exhibits thereto. The definitions set forth below are to be construed in the broadest sense with reference to the Bankruptcy Rules and the Federal Rules of Civil Procedure.

1.      "Affiliate" of any specified Person shall mean any other Person that directly, or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, the Person specified.

2.      "Alternative Restructuring" shall mean the restructuring planned to come into effect if the Confirmed Plain failed.

3.      "AST" shall mean American Stock Transfer & Trust Company, LLC.

4.      "Bankruptcy Code" shall mean Title 11 of the United States Code, and all provisions thereof.

5.       "Chapter 11 Cases" shall mean the Chapter 11 cases, commenced by the Debtors in the United States Bankruptcy Court for the District of Delaware on April 29, 2014, and jointly administered under case number 14-10979.

6.      "Check the box" shall mean, for any entity, an election that would cause such entities to be taxable as corporations (rather than treated as disregarded entities) for federal

---

complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

income tax purposes from and after the effective time of the election, as described in Exhibit I to the Disclosure Statement.

7.      "Communication" shall mean every manner or means of disclosure, transfer, or exchange of information, including, but not limited to, any of the following:  (a) any written letter, memorandum, or other Document of any kind by mail, courier, other delivery services, telecopy, facsimile, telegraph, electronic mail, voicemail, or any other means; (b) any telephone call, whether or not such call was by chance or prearranged, formal or informal; and (c) any conversation or meeting between two or more persons, whether or not such contact was by chance or prearranged, formal or informal.

8.       "Confirmed Plan" shall mean the *Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 5078], as it may be amended, modified or supplemented.

9.      "DCF" shall mean discounted tax flow as described in Exhibit G to the Disclosure Statement.

10.      "Debtors" shall mean, collectively, EFH Corp. and its affiliated entities, as debtors-in-possession, as applicable, which filed voluntary Chapter 11 petitions under the Bankruptcy Code commencing these Chapter 11 Cases, and any of their direct or indirect subsidiaries, Affiliates, divisions, subdivisions, departments, predecessors, successors, partners, principals, officers, directors, attorneys, accountants, agents, employees, representatives, and other persons acting on its behalf, including, but not limited to, K&E, Proskauer Rose LLP and/or Munger, Tolles & Olsen LLP,  and/or Cravath Swaine and Moore, LLP, and/or McElroy, Deutsch, Mulvaney & Carpenter, LLP, and/or Stevens & Lee, PC, and/or O'Kelly Ernst & Bielli,

3

LLC, Alvarez & Marsal North America, LLC as well as any financial or other advisor to the forgoing.

11.    "Document" or "Documents" shall have the meaning prescribed by Rule 7034 of the Federal Rules of Bankruptcy Procedure, including, without limitation, any tangible thing upon which any expression, Communication or representation has been recorded by any means, and includes, but is not limited to, all electronically stored information, Communications, sworn statements, deposition transcripts, affidavits, recordings, photographs, computer data, electronic mail, handwritten notations, correspondence, memoranda, notes, financial calculations, calendars, appointment books, and all other writings and recordings of every kind that are in your actual or constructive possession, custody, or control.

12.    "Evercore" shall mean Evercore Group L.L.C. and/or all of its current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants, accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other person currently or formerly acting or purporting to act on their behalf for any purpose whatsoever.

13.    "Intercompany Agreement" means any and all agreements and contracts that exist between the Debtors, including, without limitation: Federal and State Income Tax Allocation Agreement among the members of the Energy Future Holdings Corp. Consolidated Group, dated May 15, 2013; Amended and Restated Tax Sharing Agreement, dated November 5, 2008, between EFH Corp. and Oncor Electric Delivery Holdings LLC; Integration Confirmation Letter Agreement, dated April 28, 2014 between EFH Corp and Luminant Generation Company LLC; Integration Confirmation Letter Agreement, dated April 28, 2014, between EFH Corp. and TCEH; Termination Agreement, dated April 28, 2014, between EFH Corp. and TCEH;

4848-2277-3297.9

Termination Agreement, dated April 28, 2014, between EFH Corp. and Comanche Peak Nuclear Power Company LLC.

14.     "New Plan" shall mean the Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., [D.I. 8422], as it may be amended, modified or supplemented.

15.     "NOL" shall mean net operating loss.

16.     "OpCo" shall mean operating company.

17.     "Original Disclosure Statement" shall mean the *Amended Disclosure Statement for the Joint Plan of Reorganization of Energy Future Holdings Corp., et al.,* [D.I. 5080].

18.     "Person" or "persons" shall mean all natural persons, corporations, partnerships or other business associations, and all other legal or governmental entities or associations.

19.     "Prepetition Intercompany Claims" shall mean any Claims, causes of action, or disputes among EFH, EFIH, and TCEH or any other Debtor arising before the Petition Date, including avoidance actions under sections 544, 547, and 548 of the Bankruptcy Code.

20.     "PropCo" shall mean property company.

21.     "Schedules and Statements of Financial Affairs" shall mean the Schedules of Assets and Liabilities and the Statements of Financial Affairs prepared by the Debtors for each Debtor in accordance with section 521 of the Bankruptcy Code and Rule 1007 of the Federal Rules of Bankruptcy Procedure and filed with the Bankruptcy Court.

22.     "Settlement" shall mean the proposal in the Plan to settle any Prepetition Intercompany Claims, including allowance of the TCEH Settlement Claim.

23.      "You" or "your" shall refer to any Person to whom these Document requests have been addressed and all of their current and former Affiliates, parents, direct or indirect subsidiaries, members, officers, directors, representatives, employees, agents, consultants,

5

accountants, attorneys, financial advisors, predecessors, successors, assigns, and any other

Person currently or formerly acting or purporting to act on the Person's behalf for any purpose

whatsoever.

24.    The terms "relating to" and "concerning" each mean, in addition to their usual and

customary meanings, concerning, relating to, discussing, mentioning, evidencing, embodying,

constituting, effecting, referring to, assessing, recording, analyzing, describing, evaluating,

memorializing, about, regarding, touching upon, listing, or reflecting the matter specified in the

request.

## **INSTRUCTIONS**

1.    Each request for Documents requires the production of all Documents described

herein, in your possession, custody or control, including, but not limited to, those Documents in

the custody or possession of current or former members, direct or indirect subsidiaries, parents,

Affiliates, divisions, predecessors, successors, officers, directors, agents, employees,

representatives, consultants, or investigators, or your attorneys or their agents, employees,

representatives, or investigators.

2.    All Documents are to be produced as they are kept in the usual course of business

or organized and labeled to correspond to the specific requests set forth below.

3.    In responding to each request, if any Document requested has been amended

(including by an amendment and restatement), or any waiver, consent, supplement, forbearance

or other similar instrument has been entered into in connection with any such Document, furnish

each such amendment, amendment and restatement, waiver, consent, supplement, forbearance, or

other similar instrument.

4.    In responding to each such request, furnish all exhibits, schedules, annexes,

appendices, or any other ancillary Documents related to each Document produced.

6

5.　　　All drafts and non-identical copies of responsive Documents must be produced. Any comment, notation, or other marking shall be sufficient to distinguish Documents that are otherwise similar in appearance and to make them separate Documents for purposes of your response.  Likewise, any draft, preliminary form, or superseded version of any Document is also to be considered in a separate Document.

6.　　　To the extent applicable, furnish executed versions of each Document requested.

7.　　　The file folder or other container in which a Document is kept is deemed to be an integral part of the Document and shall be produced with the Document.

8.　　　Each paragraph and subparagraph hereof and the definitions herein are to be construed independently, and not by or with reference to any paragraph or subparagraph or definition herein for purposes of limiting the scope of any particular request or the subject matter thereof.

9.　　　If any requested Document or thing cannot be produced in full, produce it to the extent possible, indicating what is being withheld and the reason it is being withheld.

10.　　　If you object to any part of a Document request, state the specific basis for the objection and produce Documents responsive to all parts of the request to which you do not object.

11.　　　These Document requests shall be deemed continuing so as to require supplementation if you or your attorneys or agents become aware of, receive or generate additional Documents responsive to these requests after the time of the initial response.

12.　　　If any of the Debtors have produced any requested Document in connection with any prior request and that Document exists in the Data Repository (as that term is used in the *Order Establishing Discovery Procedures in Connection with Legacy Discovery of Energy*

*Future Holdings Corporation, its Affiliates, and Certain Third Parties and Other Related*

*Matters* [D.I. 1832]), identify the production number and the date of production.

13.     The use of the singular form of any word shall include the plural form, and the plural form shall include the singular form.

14.     The use of the present tense of any word includes the past tense, the use of the past tense of any word shall include the present tense, and the use of any verb in any tense shall be construed as including the use of that verb in all other tenses.

15.     "Any" or "each" should be understood to include and encompass "all;" "or" should be understood to include and encompass "and;" and "and" should be understood to include and encompass "or."

16.     The EFH Indenture Trustee reserves the right to amend and supplement these requests for any reason, including without limitation, any material modification made to the New Plan subsequent to the service of these requests.

## INTERROGATORIES

1.     Identify any witness with knowledge of discoverable information regarding the value or any valuation of Oncor, TCEH, EFH Corporate Services and any of its subsidiaries.

2.     Identify any witness with knowledge of discoverable information regarding any efforts to market the equity in, or assets of Oncor.

3.     Identify any witness with knowledge of discoverable information regarding any federal tax matters related to the New Plan.

4.     Identify any witness with knowledge of discoverable information regarding tax matters related to any potential taxable or tax free spin-off of TCEH.

4848-2277-3297.9

5.      Identify any witness with knowledge of discoverable information regarding any tax matters agreement.

6.      Identify any witness with knowledge of discoverable information regarding any matters any Debtor introduce at the hearing of the New Plan or Disclosure Statement.

7.      Identify any witness with knowledge of discoverable information regarding all negotiations related to the New Plan.

8.      Identify any witness with knowledge of discoverable information regarding any intercompany claims arising from December 7, 2015 to present.

9.      Identify any witness with knowledge of discoverable information regarding the liquidation value of any Debtor.

10.      Identify any witness with knowledge of discoverable information regarding cash flow projections for any Debtor

11.      Identify any witness with knowledge of discoverable information regarding feasibility of the New Plan, including any investment or any standalone scenario.

12.      Identify any witness with knowledge of discoverable information regarding all communications with TCEH First Lien Lenders relating to the New Plan and Disclosure Statement or transactions or agreements contemplated thereby.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**I.      Valuation**

**A.      Valuation – Oncor**

1.      All Documents and Communications relating to the value or valuation of Oncor and EFH Corp.'s interest in the equity in Oncor, whether proposed, considered, in draft or final form, including, but not limited to, any (a) DCF, (b) comparable company analyses, and (c) comparable transaction analyses that were considered, and all financial projections, operating

9

assumptions, and supporting calculations or metrics used in connection with any such analyses, including, but not limited to, all business plans, budgets, financial projections, operating assumptions, forecasts, market reports, financial information, information regarding debt capacity, and supporting calculations or metrics that form the basis of any proposed, considered, or estimated valuation.

2.      All Documents and Communications relating to any valuation or valuation of Oncor, whether proposed, considered, in draft or final form, under either the "Investment Scenario" or "Standalone Scenario" (or both), as described in the New Plan, including, but not limited to, all (a) financial projections used; (b) analyses regarding the valuation methodologies selected; and (c) operating assumptions and supporting calculations or metrics relating to any comparable company or other analyses performed in connection with the valuation.

3.      All Documents and Communications relating to any valuation of Oncor, as a REIT, whether proposed, considered, in draft or final form, including, but not limited to, all (a) financial projections used in connection with any contemplated Investment Scenario; (b) analyses regarding the valuation methodologies selected for any potential PropCo and OpCo; and (c) operating assumptions and supporting calculations or metrics relating to any comparable company or other analyses performed in connection with the valuation of any potential PropCo or OpCo.

4.      All Documents and Communications relating to the weighting of any valuation methodologies applied in connection with any valuation of Oncor.

5.      All Documents and Communications relating to the total enterprise value of "Reorganized EFH" and "Reorganized EFIH" as described in the New Plan and Disclosure Statement, including, but not limited to, the allocation of enterprise value or equity value as

between the various Debtor entities, all business plans, budgets, financial projections, operating assumptions, forecasts, market reports, financial information, information regarding debt capacity, and supporting calculations or metrics that form the basis of any proposed, considered, or estimated valuation.

6.      All Documents or Communications that relate to or concern any potential conversion of Oncor (directly or indirectly) to a REIT, either in connection with the Confirmed Plan, in connection with the New Plan, or otherwise.

7.      All Documents submitted to the PUCT in connection with the REIT conversion contemplated by the Confirmed Plan, in each case, the non-public unredacted form.

**B.      Valuation – TCEH**

8.      All Documents and Communications relating to the value or valuation of TCEH, whether proposed, considered, in draft or final form, including, but not limited to, any (a) DCF, (b) comparable company analyses, and (c) comparable transaction analyses that were considered, and all financial projections, operating assumptions, and supporting calculations or metrics used in connection with any such analyses, including, but not limited to, all business plans, budgets, financial projections, operating assumptions, forecasts, market reports, financial information, information regarding debt capacity, and supporting calculations or metrics that form the basis of any proposed, considered, or estimated valuation.

9.      All Documents and Communications relating to the basis of the Reorganized TCEH Valuation Analysis, as set forth in Exhibit G to the Disclosure Statement, including, but not limited to, the (a) "discounted cash flow" ("DCF"), (b) "peer group company," and (c) "tax basis step-up" analyses described in Exhibit G to the Disclosure Statement.

10.     All Documents and Communications relating to Evercore's consideration of the "perpetuity growth method for estimating the terminal value" of TCEH, as disclosed in Exhibit F to the Disclosure Statement, including Evercore's conclusion that "the perpetuity growth method was not applicable for the Reorganized TCEH valuation given the nature of the Reorganized TCEH's business."

11.     All Documents and Communications relating to Evercore's consideration of "certain precedent transactions for businesses similar to that of Reorganized TCEH," as disclosed in Exhibit G to the Disclosure Statement, including those underlying Evercore's conclusion that "precedent transactions analysis was not applicable to the Reorganized TCEH valuation."

12.     All Documents and Communications relating to the financial projections used in the valuation of TCEH, as described in Exhibits E and G to the Disclosure Statement, including all operating assumptions and supporting calculations or metrics relating to the "[(a)] 'Base Case' financial projections provided by the Debtors for the years 2016 through 2022; [(b)] projected Base Case terminal EBITDA prepared by [Filsinger]; [(c)] an 'Environmental Case' prepared by Filsinger, which reflects adjustments to the Base Case terminal EBITDA, among others, for the effect of potential environmental regulations; and [(d)] pro forma tax basis step-up of Reorganized TCEH resulting from the Preferred Stock Sale."

13.     All Documents and Communications relating to the weighting of any valuation methodologies applied in connection with any valuation of Oncor.

14.     All Documents relating to or underlying Evercore's decision to apply "equal weightings" to its DCF and "peer group company" analyses in connection with its valuation of TCEH, as disclosed in Exhibit G to the Disclosure Statement.

12

15.     All Documents relating to all "Base Case" and "Environmental Case" financial projections of TCEH proposed, created, developed, or prepared by Filsinger from the years 2016 through 2022 (and beyond, to the extent they exist).

16.     All Documents relating to or discussing Evercore's decision to assign a 40% and 60% weighting to its "Base Case" and "Environmental Case" projections, respectively, in its DCF valuation analysis of TCEH, as described in Exhibit G to the Disclosure Statement.

17.     All Documents relating to the "estimated value for Reorganized TCEH's tax basis step-up, resulting from the Preferred Stock Sale, of approximately $1.1 billion," as described in Exhibit G to the Disclosure Statement, including all cash flow projections, operating assumptions, and supporting calculations or metrics upon which Debtors relied.

18.     All Documents and Communications relating to any actual or projected costs incurred or payable by Luminant to comply with environmental regulations, including the estimated time by which each power plant operated by Luminant is expected to comply with all environmental regulations.

19.     Documents sufficient to identify the actual or estimated useful life of each power plant operated by Luminant.

20.     All Documents and Communications relating to or used in connection with the preparation of the Debtors' Liquidation Analysis, as set forth in Exhibit I to the Disclosure Statement, including, but not limited to, legal entity balance sheets for each of the Debtors.

21.     All Documents and Communications that relate to or reflect any analyses or calculations of the value of services, licenses and any other benefit TCEH has received from EFH Corporate Services, including, without limitation, since the Petition Date.

13

22.    All Documents and Communications that relate to or reflect any analyses or calculations of value of services, licenses and any other benefit Reorganized TCEH anticipates receiving from EFH Corporate Services.

23.    All Documents that evidence, relate to or concern the consideration paid by TCEH or any subsidiary of TCEH to EFH Corporate Services or any subsidiary of EFH Corporate Services after the Petition Date.

24.    All Documents and Communications that relate to or reflect any analyses or calculations of the replacement cost or expenses Reorganized TCEH might incur to obtain the same value of services, licenses and any other benefit previously provided by EFH Corporate Services, in the event neither the equity of EFH Corporate Services, nor its assets are part of the Contribution contemplated in the New Plan.

**C.    Valuation – EFH Corporate Services and each of its Subsidiaries**

25.    All Documents and Communications concerning the value of EFH Corporate Services and each of its subsidiaries and any of their respective assets and liabilities including, but not limited to any DCF, comparable company analyses, comparable transaction analyses, replacement cost, revenue projections, business plans, draft bills of sale, and schedules of assets to be transferred in connection with the anticipated separation or spin off of EFH Corporate Services from the E-side or any appraisals of the foregoing.

26.    All Documents and Communications concerning the negotiation of the Separation Agreement in connection with the Confirmed Plan, filed as Exhibit L of the Plan Supplement [D.I. 6544].

27.    All Documents and Communications concerning the value (including, fair market value, book value and any valuation analyses) of any of EFH Corporate Services and each of its

14

subsidiaries' real property, including, but not limited to, the approximately 4.8 acres located in

Anderson County, TX, the approximately 6.9 acres located in Kaufman County, TX, and the

improvements at Energy Plaza, 1601 Bryan St, Dallas, TX 75201.

28.     All Documents and Communications concerning the value (including, fair market

value, book value and any valuation analyses) of any of EFH Corporate Services and each of its

subsidiaries' personal property, including, but not limited to, checking, deposit and other

accounts, stock and interests in businesses, accounts receivable, other liquidated debts, licenses,

franchises and other general intangibles, machinery, fixtures, equipment and supplies used in

business,  and any other personal property of any kind not listed in the foregoing.

29.     All Documents and Communications concerning the amount of any accounts

payable by EFH Corporate Services and each of its subsidiaries to EFH Corp.

30.     All Documents related to or concerning the accuracy of the Debtors' Schedules or

Statements of Financial Affairs when filed and as of today, including, without limitation, the

Schedules and Statements of Financial Affairs of EFH Corporate Services and each of its

subsidiaries.

31.     All Documents and Communications concerning the use, sublicense, sublease, by

any of the TCEH Debtors of any of the licenses, software agreement, service agreements, or

other agreements or executor contracts or lease identified on EFH Corporate Services' Schedules

and Statements of Financial Affairs.

32.     All Documents and Communications concerning the statement that "EFH

Corporate Services, a wholly owned subsidiary of EFH Corp., provides a host of vital shared

services to the TCEH Entities (i.e., Luminant and TXU Energy) (Disclosure Statement II.2(b)."

33.     All Documents and Communication with TCEH or the TCEH First Lien Lenders regarding the contemplated transfer of the equity of EFH Corporate Services or certain assets and liabilities of EFH Corporate Services to Reorganized TCEH.

34.     All Documents and Communications regarding EFH Corp.'s valuation of the equity of EFH Corporate Services and each of its subsidiaries or those certain assets and liabilities of EFH Corporate Services and each of its subsidiaries whose transfer to Reorganized TCEH is being contemplated as part of the New Plan.

35.     All Documents and Communications that relate to or concern the decision of the board of EFH Corporate Services and each of its subsidiaries to transfer equity or ownership interests or other assets to Reorganized TCEH as contemplated as part of the New Plan.

36.     All Documents and Communications that relate to or concern the decision of the board of EFH Corp. to transfer the equity or ownership interest in EFH Corporate Services or its subsidiaries to Reorganized TCEH as contemplated as part of the New Plan.

37.     All Documents and Communications concerning the value (including, fair market value, book value and any valuation analyses) of any of EFH CG Holdings Company LP's real property, including, but not limited to, the approximately 2.5 acres of land and improvements at the Mesquite Data Center, 2947 Executive Blvd., Mesquite TX 751491.

38.     All Documents and Communications concerning the fair market and book value of EFH CG Management Company LLC's 21.5% ownership interest in EFH CG Holdings Company LP.

II.     **Oncor Marketing**

39.     All Documents and Communications concerning any effort to market the assets of Oncor or any Debtors' direct or indirect interest in Oncor or otherwise relating to the potential

16

sale of Oncor or any Debtors' direct or indirect interest in Oncor or its assets since December 7, 2015.

40.    All Documents and Communications concerning discussions with any potential purchasers for the sale of Oncor or any Debtors' direct or indirect interest in Oncor including, but not limited to, any investor parties, Hunter Hunt, Ovation Acquisition I, LLC, Hunt Consolidated, Inc., and/or NextEra Energy, or any agent thereof.

41.    All Documents that relate to or concern any effort to market Oncor or any Debtors' direct interest in Oncor prior to December 7, 2015.

## III.    **Federal Tax Matters**

42.    All Communications with the IRS concerning any tax matters relating to the New Plan, the Confirmed Plan, or the terms of the Alternative Restructuring.

43.    All Communications with the IRS concerning any valuation or proposed valuation of TCEH, using any valuation methodology.

44.    All Documents and Communications relating to the "Private Letter Ruling," as described in the New Plan and Disclosure Statement, including, but not limited to, the probability of receiving a Private Letter Ruling with respect to the New Plan.

45.    All Communications with the IRS concerning any valuation or proposed valuation of "Reorganized EFH", using any valuation methodology.

46.    All Communications with the IRS concerning any valuation or proposed valuation of Oncor, using any valuation methodology.

47.    All Communications with the IRS concerning any calculation or estimation of the tax basis in any of the assets of TCEH and its subsidiaries.

48.    All Communications with the IRS concerning any calculation or estimation of the tax basis in any of the assets of EFH, "Reorganized EFH" or any of its subsidiaries.

49.    All Communications concerning EFH's net operating losses (or "NOLs").

## IV.    TCEH Plan Tax Issues

50.    All Documents and Communications concerning comparisons between a taxable scenario and a tax free scenario as contemplated in the New Plan.

51.    All Documents and Communications discussing or otherwise relating to any analyses or considerations concerning a "tax-free spin-off of TCEH," as provided in the New Plan and described in the Disclosure Statement.

52.    All Documents and Communications relating to the feasibility or risks associated with the proposed "tax-free spin-off of TCEH," as provided in the New Plan and described in the Disclosure Statement.

53.    All Documents relating to any actual or proposed valuations that were used in connection with any analysis of the proposed "tax-free spin-off of TCEH," as provided in the New Plan and described in the Disclosure Statement.

54.    All Documents relating to any actual or proposed valuations of TCEH that were used in connection with any analysis of a proposed taxable transaction as provided in the New Plan and described in the Disclosure Statement.

55.    All Documents relating to, supporting, or contradicting the statement in the Disclosure Statement that under the "tax-free spin-off . . . certain tax attributes of the EFH Group will be substantially used to provide Reorganized TCEH with a partial step-up in tax basis in certain of its assets, valued at approximately $1.0 billion."

56.    All Documents and Communications relating to the "TCEH Basis Step-Up," as described in the New Plan, including all Documents and Communications relating to the amount by which the tax basis of TCEH's assets is calculated or estimated to be stepped-up under the

18

Settlement, and Documents sufficient to identify which of TCEH's assets has a tax basis that is calculated or estimated to be stepped-up.

57.     All Documents and Communications relating to the risks associated with the proposed step-up in basis of TCEH's assets in connection with the "tax-free spin-off of TCEH," as provided in the New Plan and described in the Disclosure Statement.

## V.     EFH/EFIH Plan Tax Issues

58.     All Documents and Communications concerning comparisons between a taxable scenario and a tax free scenario and their effect on EFH Corp or "Reorganized EFH".

59.     All Documents and Communications discussing or otherwise relating to any analyses of the effect or considerations to EFH Corp. or "Reorganized EFH" concerning a "tax-free spin-off of TCEH," as provided in the New Plan and described in the Disclosure Statement.

60.     All Documents and Communications relating to the feasibility or risks to EFH Corp. or "Reorganized EFH" associated with the proposed "tax-free spin-off of TCEH," as provided in the New Plan and described in the Disclosure Statement.

61.     All Documents and Communications relating to the value of NOLs to EFH Corp. or "Reorganized EFH".

## VI.     Tax Matters Agreement

62.     All Documents and Communications that relate to or concern any tax matters agreement, between Debtors, whether completed or contemplated.

63.     All Documents and Communications concerning the analysis of use of NOLs in both taxable and tax free transaction scenarios.

64.     All Documents and Communications concerning the analysis of any tax liability, including any alternative minimum tax, in connection with, or on account of, any sale of preferred stock in either a taxable or tax free transaction scenarios.

19

65.     All Documents and Communications concerning the allocation of any tax liability, including any alternative minimum tax, in connection with, or on account of, any sale of preferred stock in either a taxable or a tax free transaction scenarios.

66.     All Documents and Communications concerning whether or not each Debtor will make the "check the box" election.

67.     All Documents and Communications concerning whether any person or entity has authority over the decision regarding whether or not each Debtor will make the "check the box" election.

68.     All Documents and Communications concerning which person or entity has the authority over the decision regarding whether or not each Debtor will make the "check the box" election.

69.     All Documents and Communications regarding analysis of consequences and impact stemming from each Debtor's decision regarding whether or not to make the "check the box" election.

**VII.    Hearing on Confirmation of Plan**

70.     All Documents which any Debtor intends to introduce at the hearing(s) on confirmation of the New Plan or any related Disclosure Statement, or any other hearing, including, without limitation, any Documents related to any assertion that the Debtors may make that confirmation of the New Plan is not likely to be followed by the liquidation or the need for further financial reorganization, of the Debtors.

71.     All Documents which any Debtor intends to introduce at the hearing(s) on confirmation of the New Plan or any related Disclosure Statement, or any other hearing, including, without limitation, any related to any assertion that the Debtors may make that the New Plan has been proposed in good faith and not by any means forbidden by law.

20

72.     All Documents which any Debtor intends to introduce at the hearing(s) on confirmation of the New Plan or any related Disclosure Statement, or any other hearing, including, without limitation, any related to any assertion that the Debtors may make that the New Plan is fair and equitable as to each Class of Claims.

73.     All Documents which any Debtor intends to introduce at the hearing(s) on confirmation of the New Plan or any related Disclosure Statement, or any other hearing, including, without limitation, any related to any assertion that the Debtors may make that the New Plan satisfies the "best interests of creditors test".

74.     All Documents reviewed or considered by any expert that the Debtors will call at trial for any aspect of litigation involved in any plan.

**VIII.   <u>Plan Negotiations</u>**

75.     All Documents and Communications from and after December 7, 2015 concerning the negotiation or development of any plan of reorganization or Restructuring Transaction relating to any Debtor, including, but not limited to, the New Plan and its supporting documentation, including, but not limited to the Transaction Agreements (as defined in the New Plan).

76.     All Documents from and after December 7, 2015 provided to, or received from, any creditor of the Debtors concerning any plan of reorganization or Restructuring Transaction of any Debtor, and all related Communications.

77.     All Documents from and after December 7, 2015 provided to, or received from, any entity holding a direct or indirect interest in Texas Holdings concerning the New Plan of reorganization or Restructuring Transaction of any Debtor, and all related Communications.

78.     All Documents from and after December 7, 2015 concerning the assessment, evaluation, consideration, or analysis of any potential plan of reorganization or Restructuring

21

Transaction of any Debtor, including but not limited to, the New Plan, and all related Communications.

79.     All Documents from and after December 7, 2015 provided to, or received from, any Person related to or in connection with the potential sale of Oncor.

80.     All Documents and Communications related to the Debtors' efforts to market the Debtors' assets since December 7, 2015.

81.     All Documents and Communications concerning each Debtor's approval of the New Plan, including but not limited to, Documents provided to the Disinterested Directors and/or the full boards of directors.

82.     All Documents and Communications relating to the allocation of Reorganized EFH Common Stock and contingent value rights in the Standalone Scenario set forth in the New Plan.

83.     All Documents and Communications relating to the division and distribution of Reorganized EFH Common Stock among classes of creditors under the New Plan, including the percentage of Reorganized EFH Common Stock to be distributed to each class of creditors under the New Plan.

## IX.    Current Inter-Company Claims (Post-Plan)

84.     All Documents and Communications concerning any Intercompany Claim that accrued or arose during the periods from December 7, 2015 to present.

85.     All Documents and Communications concerning the value of the services received by the TCEH Entities from EFH Corporate Services or any of its subsidiaries.

86.     All Documents and Communications concerning the value of any license, lease or sublease received or granted by the TCEH Entities from the EFH Properties Company.

87.    All Documents and Communications concerning liabilities to be assumed by Reorganized TCEH pursuant to the New Plan.

88.    All Documents and Communications concerning intercompany contracts related to services, leases, schedules, or contracts.

## X.    Liquidation Value of Each Debtor

89.    All Documents and Communications concerning the liquidation value of each Debtor.

90.    All Documents and Communications concerning the liquidation value of each assets and estimation of each liability of EFH Corp. and each of its direct and indirect subsidiaries.

## XI.    Cash Flow Projections

91.    All Documents and Communications concerning cash flow projections for each Debtor.

## XII.    Plan Feasibility

92.    All Documents and Communications concerning the TCEH Basis Step-Up, including calculations.

93.    All Documents and Communications concerning the voting rights of Holders of Class A12 Claims.

94.    All Documents and Communications concerning discussions or negotiations regarding the "Investment Scenario."

95.    All Documents and Communications concerning discussions or negotiations regarding the "Standalone Scenario."

96.    All Documents and Communications concerning the treatment of guaranty claims at EFIH.

23

97.    All Documents and Communications concerning the proofs of claim filed by or against any T-side Debtor.

98.    All documents that relate to or concern the merits of any asbestos claims filed, or that may be filed, against any Debtor.

## XIII.    **Information Missing From Plan**

99.    All Documents and Communications concerning what "the transactions" are referred to on page 26 of the Disclosure Statement which states: "The Board of Managers or Directors (as applicable) or the sole member of each of the Debtors has unanimously approved the transactions contemplated by the plan and described in this disclosure statement and recommend that all holders of claims or interest whose votes are being solicited submit ballots to accept the Plan."

100.    All Document and Communication that relate to or reflect the approval by the Board of Managers or Directors (as applicable) or the sole member of each of the Debtors of "the Transactions" disclosed on page 26 of the Disclosure Statement, which states: "The Board of Managers or Directors (as applicable) or the sole member of each of the Debtors has unanimously approved the transactions contemplated by the plan and described in this disclosure statement and recommend that all holders of claims or interest whose votes are being solicited submit ballots to accept the Plan."

101.    All Documents and Communications relating to or reflecting whether, "In general, the overall tax basis of Reorganized TCEH's assets will be higher if the Spin-Off condition is satisfied" as stated on page 9 of the Disclosure Statement.

102.    All Documents and Communications concerning "the agreed minimum NOL holdback amount as specified in the Plan and Exhibit I of the Plan Support Agreement," as described on Page 10 of the New Plan.

103.    All Documents and Communications relating to any decision not to include in the Disclosure Statement the following assertion included in the Original Disclosure Statement: "significant potential tax liability" would "materially reduce creditor recoveries at all of the Estates."

## XIV.    Communications with T-Side First Lien Creditors

104.    All Communications with T-Side First Lien Creditors since December 7, 2015 relating to the New Plan, the Disclosure Statement, or any of the transactions or agreements contemplated by or referenced therein, including, without limitation, "tax-free spin-off of TCEH", "TCEH Basis Step-Up," any taxable transaction, the value and use of NOLs, the separation of TCEH, the terms of the Separation Agreement, the Tax Matters Agreement, the Contribution, EFH Corporate Services and any of its assets, the possibility of a "check the box" election by any of the Debtors.

## XV.    Administrative Expenses Against EFH Corp.

105.    All Documents and Communications concerning what amounts of professional fees any debtor paid on behalf of any T-Side First Lien Creditor?

106.    All Documents and Communications that relate to, concern or evidence EFH Corp.'s ability to pay all Allowed Administrative Claims in full.

107.    All Documents and Communications that relate to, concern or evidence any fees, expenses or other amounts due to the EFH Indenture Trustee.

108.    All Documents and Communications that relate to, concern or evidence any Administrative Claims under section 503(b) of the Bankruptcy Code that may be due or asserted against the estate of EFH Corp., including without limitation, for indemnification, indenture trustee fees and expenses, and claims that may be asserted by other Debtor estates.

4848-2277-3297.9

## XVI.    Board Members

109.    All Documents reviewed or considered by any member of any Debtor's board of directors or board of managers (as applicable), including, but not limited to, those reviewed in connection with:

a.   Obtaining IRS rulings

b.   The Hunts

c.   The Confirmed Plan

d.   Evaluating alternate proposed transaction contemplated by any Plan

e.   Valuation of T-Side

f.   Valuation of EFH Corporate Services and each of its subsidiaries

g.   Any Plan of Reorganization for EFH Corp. and EFIH and the other E-Side Debtors

h.   Any tax matters agreement

110.    All Documents that relate to or concern any Debtor's board of directors' (or board of managers' (as applicable)) agendas, minutes, and schedules.

## XVII.  All other Discovery Served

111.    All Documents produced by any Debtor in response to any discovery request served on any Debtor in connection with the Confirmed Plan, the New Plan or any other contested matter.

112.    All Documents produced by any Participating Party in response to any discovery request served by any Debtor on such Participating Party in connection with the Confirmed Plan, the New Plan or any other contested matter.

Dated: Wilmington, DE
        May 27, 2016

**CROSS & SIMON, LLC**

By: _/s/ Christopher P. Simon_
Christopher P. Simon (Del. Bar No. 3697)
105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –

**NIXON PEABODY LLP**
Amanda D. Darwin
Richard C. Pedone
Erik Schneider
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

_Co-Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee_

4848-2277-3297.9

## SCHEDULE I

### Indentures

1.  Indenture dated as of November 1, 2004, between Energy Future Holdings Corp.("EFH"), as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of July 1, 2010, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series P Indenture").

2.  Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series Q Indenture").

3.  Indenture dated as of November 1, 2004, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Officer's Certificate, dated as of November 26, 2004, the Supplemental Indenture, dated as of December 5, 2012, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "Series R Indenture")

4.  Indenture dated as of November 16, 2009, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the Supplemental Indenture, dated as of January 25, 2013, and the Second Supplemental Indenture, dated as of April 15, 2013 (collectively, the "9.75% Senior Notes Indenture").

5.  Indenture dated as of January 12, 2010, between EFH, as issuer, and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of March 16, 2010, the Second Supplemental Indenture, dated as of April 13, 2010, the Third Supplemental Indenture, dated as of April 14, 2010, the Fourth Supplemental Indenture, dated as of May 21, 2010, the Fifth Supplemental Indenture, dated as of July 2, 2010, the Sixth Supplemental Indenture, dated as of July 6, 2010, the Seventh Supplemental Indenture, dated as of July 7, 2010, the Eighth Supplemental Indenture, dated as of January 25, 2013, and the Ninth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.00% Senior Notes Indenture").

6.  Indenture dated as of October 31, 2007, among EFH, as issuer, the Guarantors party thereto and the Indenture Trustee, as trustee, as amended and supplemented by the First Supplemental Indenture, dated as of July 8, 2008, the Second Supplemental Indenture, dated as of August 3, 2009, the Third Supplemental Indenture, dated as of July 29, 2010, the Fourth Supplemental Indenture, dated as of October 18, 2011, and the Fifth Supplemental Indenture, dated as of April 15, 2013 (collectively, the "10.875% Senior Notes and 11.250%/12.000% Senior Toggle Notes Indenture", and collectively with the Series P Indenture, the Series Q Indenture, the Series R Indenture, the 9.75% Senior Notes Indenture, and the 10.00% Senior Notes Indenture, the "Indentures").

4848-2277-3297.9