

ONE EAST MAIN STREET, SUITE 500 • POST OFFICE BOX 2719
MADISON, WISCONSIN 53701-2719

TEL • 608.257.3911  FAX • 608.257.0609

WWW • GKLAW.COM

August 15, 2016

**BY ECF AND HAND DELIVERY**
Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District
of Delaware
824 North Market Street
5th Floor, Courtroom 6
Wilmington, Delaware 19801

      *In re Energy Future Holdings Corp., et al.,* Case No 14-1097 (CSS)
      Response to White & Case letter

Dear Judge Sontchi:

      Please allow this letter to preliminarily respond to the letter from White & Case dated August 12, 2016 ("White & Case Letter") [D.I. 9269].

      On August 16, 2016, the Court will conduct a long-scheduled omnibus hearing in these matters. A day later begins the confirmation hearing for the new T-Side plan of reorganization filed in the wake of the prior confirmed plan that never became effective. The August 16th omnibus hearing agenda includes uncontested consideration of a small group of Retained Professional fee applications and a single application from a professional for fees and expenses evaluated under 11 U.S.C. § 503(b) pursuant to last year's plan. *See* Notice of Agenda of Matters Scheduled for Hearing on August 16, 2016 at 10:00 A.M. (EDT) [D.I. 9266].

      The Fee Committee filed a report and draft proposed order on those applications on August 11, 2016 [D.I. 9257]. After receiving requested revisions from the 503(b) professional scheduled for fee approval on Tuesday, Morris James, we filed a Notice of Filing of Revised Form of Omnibus Order Awarding Interim Allowance of Compensation for Services Rendered and for Reimbursement of Expenses [D.I. 9270].

      Almost simultaneously with our filing of the amended order, the Court received a letter on behalf of "certain counsel and advisors" asking the Court to suspend or discontinue the fee review process it ordered on December 9, 2015, for some—but, notably, not all—of the professionals that, the Court specifically found, had made a substantial contribution to the confirmation of the initial plan. *See* White & Case Letter. The Fee Committee has not had the opportunity to meet to discuss the White & Case Letter. However, in the short time available,

we write for at least two members of the Committee, including Richard Gitlin, the chairman, to provide the Court with context and some initial observations.

On June 22, 2016, White & Case did indeed send a letter to the Fee Committee, one day before the Fee Committee's scheduled meeting, requesting that the Fee Committee terminate its review of fees pursuant to the December 9, 2015 Order.  The letter stated that the $550 million TCEH Cash Payment triggered by the Settlement Agreement—dated as of September 11, 2015, by and among the Debtors, the Settling Interest Holders, the Settling TCEH First Lien Creditors, the TCEH First Lien Agent, the Settling TCEH Unsecured Noteholders, the Settling TCEH Second Lien Noteholders, and the TCEH Official Committee—in effect "covered" most, but not all, of the professional fees subject to 503(b) reasonableness review, rendering it unnecessary.

The Fee Committee discussed the letter at some length at its June 23, 2016 meeting and concluded, albeit not unanimously, that the review remained necessary.  This was not simply because it was ordered by the Court, but for the sound policy reasons summarized briefly below.  The Fee Committee's counsel first communicated this position to White & Case by phone on June 24, 2016.

Over the next six weeks, the Fee Committee counsel and a White & Case representative discussed differing approaches that might be available to resolve the procedural difference on the "proper scope of the Fee Committee's review."  At the least, the Fee Committee maintained it was not appropriate to alter the Court's December 9, 2015 order without a motion to the Court.  The Fee Committee counsel advised White & Case by e-mail on July 29, 2016, that the Fee Committee intended, at the hearing tomorrow, to provide the Court with an update on the 503(b) process and again invited a continuing dialogue with White & Case.  The next communication from White & Case was the letter filed with the Court late Friday, August 12, 2016.

The policy questions suggested by the White & Case letter are straightforward, and the Court has directly addressed them.  The plan of reorganization proposed the payment of fees and expenses for many of the plan proponents (none of them Retained Professionals) as part of the Settlement Agreement. The professionals were not otherwise eligible for Court-approved compensation under section 330 or, arguably, section 1129(a)(4) or any other Code provision.  Consistent with the Code, however, and the available precedent, *e.g.*, *Davis v. Elliot Mgmt. Corp. (In re Lehman Brothers Holdings, Inc.)*, 508 B.R. 283 (S.D.N.Y. 2014) (Sullivan, J.), they would be eligible for compensation only after a finding that they had made a "substantial contribution" to the plan and a subsequent reasonableness finding.

The Court found that all had made that contribution and directed that the Fee Committee review the fees and expenses in a process that appropriately reflected their status and the lack of notice for compliance with section 330 and the U.S. Trustee and Fee Committee guidelines.  The Fee Committee review for much of this year has followed that direction, and the Court will find that noted in the Report filed last week [D.I. 9257 at p. 4].

The Court was quite clear that the Settlement Agreement did not provide a contractual alternative to Code compliance:

August 15, 2016
Page 3

> While it is true that the payment of the professional fees is a
> negotiated part of the settlement, the parties cannot contract around
> the bankruptcy code, even under Rule 9019.  Importantly, these
> claims are not being paid in connection with an allowed claim such
> as that of a secured creditor, nor out of the charging lien asserted
> by an indentured trustee from the allowed claim of its noteholders.
> Rather, the professional fees are being paid to ad hoc committees
> and creditors and indentured trustees by the Debtor, TCEH, as an
> independent allowed administrative expense. As such, it must be
> authorized by the bankruptcy code.

Tr., December 3, 2015 at p. 32, ll. 11-23.

In hindsight, the White & Case Letter improperly invites the Court to return to a
mechanism for professional compensation that the Court, deliberately, did not find appropriate
during plan confirmation:

> There is an argument to be made that the Court could authorize
> these fees outside of Section 503 and without court review as to
> reasonableness. See, for example, *In Re: Adelphia
> Communications Corp.,* 441 B.R. 6, Bankruptcy Southern District
> of New York.  The Court is not rejecting the reasoning of those
> cases but believes in this case it is appropriate and more prudent to
> require compliance with Section 503 of the bankruptcy code.  In
> this case, the record clearly supports a finding that the parties
> covered by Section 2.7A of the Settlement Agreement have
> provided a substantial contribution to the case justifying the
> payment of their professional reasonable fees and expenses.

Tr., December 3, 2015 at p. 36, ll. 2-14-23.

The approach suggested in the White & Case Letter would render the "substantial
contribution" finding and analysis meaningless and unnecessary when, in fact, the Court found it
essential.

In addition, the parties anticipated that the plan might become "null and void," as the
White & Case Letter characterizes it.  The $550 million payment—not contingent upon the plan
effective date—was a point of extended negotiation.  Inherent in the parties' agreement was the
understanding that, of the $550 million payment, $49.5 million would be allocated to pay the
professional fees of T-side plan supporters.  (Of the roughly $40 million in 503(b) fee requests
submitted for Fee Committee review, approximately half is attributable to White & Case.)
Particularly in hindsight, the Settlement Agreement cannot create a contractual obligation
whether characterized as a "charging lien" or anything else.

August 15, 2016
Page 4

If this position is to be pursued by White & Case—or any other party or professional—it should be pursued through a proper motion, with notice and an opportunity for hearing.  In addition, since this letter requests a hindsight review of the order of this Court on December 9, 2015, the Fee Committee reserves, inter alia, the right to request other changes to that order related to the requested modification.

The policy questions, noted briefly above, require more consideration than two letters—the first filed three days before the hearing and this one filed the day before the hearing.  In any event, Mr. Gitlin and counsel will appear at the August 16 hearing and will be prepared to discuss the two letters and reserve any and all rights found at law, equity, or otherwise.

Very truly yours,

GODFREY & KAHN, S.C.

*/s/ Katherine Stadler*

Katherine Stadler

16018822.2