**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: D.I. 9199, 9224** |
| | ) | **Hearing: Aug. 17, 2016, at 10:00 a.m. EDT** |

**REPLY OF THE DISINTERESTED DIRECTORS OF DEBTOR ENERGY FUTURE HOLDINGS CORP. TO EFH INDENTURE TRUSTEE AND CONTRARIAN CAPITAL MANAGEMENT, LLC'S OBJECTION TO CONFIRMATION OF THIRD AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

Donald L. Evans and Billie I. Williamson, the disinterested directors (together, the "Disinterested Directors") of the board of directors (the "Board of Directors" or the "Board") of debtor Energy Future Holdings Corp. ("EFH Corp."), by and through counsel, hereby submit this reply (the "Reply") to the *EFH Indenture Trustee and Contrarian Capital Management, LLC's Objection to Confirmation of Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9224] (the "Objection").

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors (each a "Debtor" and, collectively, the "Debtors") and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

## Preliminary Statement

1. The EFH Indenture Trustee[2] and the EFH Corp. creditors[3] (sometimes collectively referred to as the "Objectors") complain about the process that led to, and substance of, the Current Plan[4] and the Ancillary Agreements,[5] and yet, more than three months following termination of the Plan Support Agreement[6] and after more than twenty-eight months in chapter 11, the Objectors have failed to propose *any* plan under *any* structure for *any* Debtor, let alone any plan providing for treatment of EFH Corp. creditors, addressing the use of EFH Corp.'s tax attributes or proposing the sale, reorganization or liquidation of EFH Corporate Services Company ("Corporate Services") or EFH Properties Company ("PropCo"). The EFH Indenture Trustee and EFH Corp. creditors are the problem, not the solution. Their abject failure to propose any feasible, actionable, confirmable alternative plan – notwithstanding that EFH Corp's exclusivity period expired long ago – undermines the credibility of the entire Objection. On the

[2] American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A., under the indentures for certain notes issued by EFH Corp.

[3] Including Contrarian Capital Management, LLC ("Contrarian") and certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates (collectively, "Fidelity"), which filed joinders to the Objection.

[4] The *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 9199) (as it may be subsequently modified, supplemented or otherwise amended from time to time) as it applies to the TCEH Debtors (as defined in the Current Plan) and the EFH Shared Services Debtors (as defined in the Current Plan), filed on August 5, 2016 by EFH Corp., Energy Future Intermediate Holding Company LLC ("EFIH"), Texas Competitive Electric Holdings Company LLC ("TCEH") and their affiliated Debtors and Debtors in possession.

[5] The Interim Standalone Transition Services Agreement, also sometimes referred to as the Transition Services Agreement or the Interim Transition Services Agreement (the "TSA"), the Separation Agreement and the Tax Matters Agreement (the "TMA").

[6] That certain Plan Support Agreement, dated as of August 9, 2015 (as amended on September 11, 2015, October 27, 2015, and November 12, 2015, and as may be amended, supplemented, or otherwise modified from time to time in accordance therewith), by and among the Debtors, the Original Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, and certain other Entities, including all exhibits and schedules attached thereto (each capitalized term used in this sentence has the meaning ascribed thereto in the Current Plan).

other hand, the Disinterested Directors, who have been attacked for governance decisions that appropriately were made by the full EFH Corp. Board, have properly identified and pursued the following specific overarching objectives for EFH Corp. (each of which is an integral component of the Current Plan and the Ancillary Agreements): (a) preserve EFH Corp.'s unencumbered cash; (b) use EFH Corp.'s tax attributes to avoid a multi-billion-dollar tax liability assessed against EFH Corp., which is the only "regarded entity" currently liable for taxes; and (c) pursue a robust marketing and sale process for EFH Corp.'s indirect economic interest in Oncor[7] that ultimately will yield the highest or otherwise best bid. Each of these objectives serves to maximize the value of the EFH Corp. estate, and the Current Plan and the Ancillary Agreements that implement it are critical steps in achieving the objectives.

2. Rather than making constructive plan proposals or engaging in good faith, productive settlement discussions, the Objectors obfuscate and misstate the issues. The Objectors know that: (a) the Disinterested Directors are responsible only for "Conflict Matters";[8] and (b) the Current Plan and the Ancillary Agreements (which documents evidence and effectuate the challenged so-called "EFH 363 Transactions"[9]) are <u>not</u> Conflict Matters because the Current Plan and the Ancillary Agreements (as well as the "EFH 363 Transactions") are transactions between EFH Corp., on the one hand, and Reorganized TCEH, controlled by the

[7] Oncor Electric Delivery Company, LLC.

[8] By resolutions duly adopted by the Board on November 7, 2014, as supplemented by resolutions duly adopted by the Board on December 9, 2014, the Board delegated to the Disinterested Directors the authority to review and act upon any matter pertaining to the chapter 11 bankruptcy proceedings on which an actual conflict exists between EFH Corp., on the one hand, and any other Debtor, on the other hand. Declaration of Billie Ida Williamson In Support of Confirmation of the Joint Plan of Reorganization of Energy Future Holdings Corp. *et al*., dated Aug. 15, 2016 ("<u>Williamson Declaration</u>") ¶ 11.

[9] Defined collectively in the Objection as (a) the use of EFH Corp.'s NOLs to provide a step-up in basis for Reorganized TCEH, (b) EFH Corp.'s cash payment of alternative minimum tax generated by the tax-free spin of TCEH and its subsidiaries and (c) EFH Corp.'s transfer to Reorganized TCEH of its equity in Corporate Services Company and PropCo. Objection Art. I.

TCEH first lien creditors (collectively, the "TCEH First Lien Creditors") represented by Paul Weiss, on the other hand.[10] For the same reason, the Current Plan and Ancillary Agreements also are not "insider" transactions under either the Bankruptcy Code or Texas law (*see* Objection fns. 33 and 34). Accordingly, as a corporate governance matter, the Current Plan and Ancillary Agreements were appropriately submitted to, and considered and approved by, the entire EFH Corp. Board. The Disinterested Directors merely approved them "insofar as they relate to Conflict Matters" out of an abundance of caution.[11] Singling out the Disinterested Directors for attack defies logic or reason.

3. In approving the Current Plan and Ancillary Agreements, the undisputed evidence will show that the full EFH Corp. Board and the Disinterested Directors made fully-informed and independent decisions about the Current Plan and the Ancillary Agreements, using their experience and business judgment, after obtaining, considering and weighing the input and advice of the Debtors' management, the Debtors' co-chief restructuring officers (EFH Corp. General Counsel Stacey Doré and EFH Corp. Chief Financial Officer Paul Keglevic; together, the "co-CROs"), independent legal and financial advisors, and the positions taken by NextEra Energy, Inc. and NextEra Energy Capital Holdings, Inc. (together, "NextEra") and other potential E-side bidders.[12] Finally, since neither NextEra nor any other bidder for EFH Corp.'s

[10] The matters regarding which the EFH Indenture Trustee objects are not disputes between or among the Debtors' estates, and, therefore, are not Conflict Matters requiring Disinterested Director processes or protocols. Williamson Declaration ¶ 36.

[11] In dealing with certain matters that are not Conflict Matters, the Disinterested Directors, out of an abundance of caution, review all of the materials presented to the full EFH Corp. Board, as well as materials presented to them by their independent advisors. The Disinterested Directors also have separate meetings with their independent advisors to discuss the materials. Then, if they approve the materials "insofar as they relate to Conflict Matters," they provide the results of their review and recommendation to the full EFH Corp. Board. The full EFH Corp. Board then acts on matters that are not Conflict Matters. Williamson Declaration ¶ 13.

[12] Williamson Declaration ¶¶ 13-14.

indirect economic interest in Oncor has expressed any desire for the equity of Corporate Services or PropCo, or that it would like to retain more of EFH Corp.'s NOLs, the Objectors' argument that "valuable" EFH Corp. property is being transferred or consumed for inadequate consideration carries no weight.[13]

4. The Objection posits that after the IRS Private Letter Ruling (the "PLR") was received on July 28, 2016, EFH Corp. should have renegotiated the Current Plan and the Ancillary Agreements, based upon the unsupported allegation that the TCEH First Lien Creditors never would proceed with a taxable transaction in light of the PLR. The Objection ignores the fact that the consequence of a "stranded tax" arising from a taxable transaction means that EFH Corp., as the only regarded entity, would be solely liable for the multi-billion-dollar tax stemming from a taxable transaction, that every dollar of EFH Corp.'s unencumbered cash likely would be paid to the IRS and that the other Debtors, as disregarded entities, would not be liable for the multi-billion-dollar tax. Consequently, the IRS would collect only the EFH Corp. unencumbered cash and the unpaid balance of the tax claim would be "stranded" at EFH Corp. with no means of satisfaction. Reorganized TCEH would not be liable for any stranded tax, unless the IRS obtained a court order that it never has obtained in any other bankruptcy case. The Objection also ignores the fact that in a taxable transaction Reorganized TCEH would receive a substantially higher tax basis step-up than it would receive in a tax-free transaction without a basis step-up. Finally, the Objectors rely on an unsupported premise that EFH Corp. could use its NOLs in a 2017 transaction if Reorganized TCEH emerged from chapter 11 in 2016 through a tax free spin without a basis step-up. Put simply, there is substantial uncertainty regarding whether EFH Corp. will be able to utilize its NOLs for transactions closing in 2017. If

[13] Williamson Declaration ¶¶ 3, 41, 52 and 53.

there is a TCEH tax-free spin (even without a basis step-up), either the NOLs could disappear by the end of 2016 or use of the NOLs could be markedly limited. And, in particular, any E-side transaction in which EFH Corp. generates gain to use the NOLs may jeopardize the TCEH tax-free spin. In any event, there will be no evidence that the TCEH First Lien Creditors would agree to forego a taxable transaction if EFH had insisted on retaining more of its NOLs or otherwise recut the deal. Indeed, the evidence is to the contrary--that the TCEH First Lien Creditors would have proceeded with filing a standalone taxable plan unless they received the step up in basis. The notion that, after the PLR was issued, EFH Corp. would demand that the TCEH First Lien Creditors renegotiate the Current Plan and Ancillary Agreements to provide EFH Corp. with hundreds of millions of dollars is not a rational, commercial approach under the undisputed facts.

5. The contention in the Objection that no one on behalf of EFH Corp. attempted to negotiate with the TCEH First Lien Creditors for increased concessions or consideration is not supported by the evidence. Months ago, representatives of the Disinterested Directors approached EFH Corp. creditors and their representatives (as well as representatives of the TCEH First Lien Creditors) and suggested ways in which concessions and consideration could be provided by the TCEH First Lien Creditors and the EFH Corp. creditors in exchange for a fully-consensual and accelerated plan confirmation process.[14] The creditors who had “skin in the game” failed to promptly and timely engage in constructive, good faith dialogue on these matters.[15]

[14] Williamson Declaration ¶ 59.

[15] *Id.*

6. The Objection implies that there is another viable, actionable plan alternative whereby EFH Corp. could (a) keep all of its NOLs, (b) force a tax-free spin of TCEH without a basis step-up, (c) reach agreement with the TCEH First Lien Creditors on a TMA (required for any tax-free spin) without a basis step-up and (d) use its NOLs for an E-side transaction that would close in 2017 after a TCEH transaction closed in 2016. To date, no such speculative plan has been proposed by any party in interest in the EFH Corp. case.[16]

7. The EFH Indenture Trustee's theories, speculations and objections are unfounded and the Objection should be overruled.

**Reply**

**I. The Current Plan and Ancillary Agreements are not Conflict Matters and, therefore, do not fall within the scope of authority delegated by the EFH Corp. Board to the Disinterested Directors.**

8. EFH Corp. Board resolutions provide that "Conflict Matters" are those on which an actual conflict exists between EFH Corp., on the one hand, *and any other Debtor*, on the other hand.[17] The Current Plan and the Ancillary Agreements are agreements between EFH Corp., on the one hand, and Reorganized TCEH, controlled by the TCEH First Lien Creditors, on the other hand. Accordingly, they constitute neither Conflict Matters nor "insider" or "affiliate" transactions because there is no common or overlapping ownership of the entities. Because the Current Plan and the Ancillary Agreements are not Conflict Matters, they appropriately were considered and approved by the entire EFH Corp. Board. The actions taken by the Disinterested Directors out of an abundance of caution – i.e. the review, consideration, approval and recommendation to the full EFH Corp. Board of the Current Plan and the Ancillary Agreements

[16] *Id.* ¶¶ 21, 53.

[17] Williamson Declaration ¶ 11.

"insofar as they relate to Conflict Matters" – were not the dispositive EFH Corp. governance decision, the Board's decision was.[18]

9. After mischaracterizing the Current Plan and the Ancillary Agreements as Conflict Matters, and therefore further mischaracterizing them as within the sole purview of the Disinterested Directors, the Objectors malign the Disinterested Directors as "interested" in the transactions at issue and accuse them of acting in their self-interests. The accusations are insulting and wrong.

10. For example, the Objectors suggest that the Disinterested Directors supported the tax-free spin with the basis step-up, as opposed to insisting upon a tax-free spin without a basis step-up, out of concern regarding their potential personal liability to the IRS. Absolutely no evidence supports the theory that the IRS could pierce the corporate veil of EFH Corp. Avoiding a massive tax is, first and foremost, in the best interest of each EFH Corp. creditor. The Objectors conveniently ignore the undisputed fact that in a taxable transaction, the holders of notes issued under the EFH Indenture Trustee's indentures would not receive any distribution because the IRS claim likely would exhaust all of EFH Corp.'s unencumbered cash.[19] And, in any tax-free spin, with or without a basis step-up, there will be no tax on EFH Corp. that the IRS ever would attempt to collect from EFH Corp.'s officers or directors.

11. Likewise, there is no merit to the contention that the full EFH Corp. Board and the Disinterested Directors are "interested" because Reorganized TCEH will assume various EFH Corp. liabilities, including Mr. Evans' employment agreement. Contract assumptions by Reorganized TCEH on the effective date of the Current Plan are not insider transactions between

[18] *Id.* ¶¶ 56-57.

[19] Williamson Declaration ¶ 47.

two related and affiliated entities. The TCEH First Lien Creditors are separately represented. No special independent committee was necessary for the TCEH First Lien Creditors to decide whether to assume EFH Corp. obligations and agreements. Finally, the EFH Corp. estate and creditors benefit from Reorganized TCEH taking an assignment of EFH Corp.'s contracts with Messrs. Young (the EFH Corp. CEO) and Evans (the EFH Corp. Chairman); otherwise, rejection damage claims arising from those contracts would dilute the EFH Corp. cash available for distribution to EFH Corp.'s other creditors.

## II. The Objection wrongly asserts that the full EFH Corp. Board and the Disinterested Directors failed to consider alternatives.

12. The Objectors incorrectly assert that the full EFH Corp. Board and the Disinterested Directors failed to consider alternatives to the Current Plan. The Objectors have not proposed any alternatives[20] and this undisputed fact eviscerates their argument that the Current Plan for TCEH and the current process for EFH Corp. (i.e. the recently-filed plan incorporating the executed NextEra merger agreement under which NextEra assents to the Current Plan, the Ancillary Agreements and the EFH 363 Transactions) do not represent the best, current, feasible and actionable alternative for EFH Corp. and its estate.

13. The Current Plan provides for a tax-free spin of TCEH with a basis step-up for Reorganized TCEH. The TCEH First Lien Creditors had the absolute right to pursue a taxable transaction under the Plan Support Agreement[21] and routinely threatened to do so. A taxable transaction, which any creditor could pursue for any Debtor due to exclusivity expiration, left all tax risk on EFH Corp. as the only regarded entity in the corporate structure; therefore, a tax-free

[20] Williamson Declaration ¶¶ 21, 53.

[21] *Id.* ¶ 21.

transaction indisputably is in the best interests of EFH Corp.'s estate and its creditors.[22] The Objectors assumption that EFH Corp. could use its NOLs for an EFH Corp. plan that closes in 2017, after a 2016 tax-free spin of TCEH without any basis step-up to Reorganized TCEH, lacks any evidentiary or legal support. As noted above, if there is a TCEH tax-free spin (even without a basis step-up), either the NOLs could disappear by the end of 2016 or use of the NOLs could be markedly limited. Moreover, any E-side transaction in which EFH Corp. generates gain to use the NOLs may jeopardize the TCEH tax-free spin; it would be imprudent to proceed with any such proposed transaction without another IRS ruling, which the Debtors do not believe they would get. The evidence will show that the full EFH Corp. Board and the Disinterested Directors considered all options, whether taxable or tax-free,[23] and opted for a feasible path that would maximize the value of the EFH Corp. estate.

14. The same is true with respect to the full EFH Corp. Board and Disinterested Directors' decision to approve the Ancillary Agreements that transfer EFH Corp.'s equity interests in Corporate Services and PropCo to Reorganized TCEH. If EFH Corp. retained its equity interests in Corporate Services and PropCo, it would expose itself to management distraction and economic expense and risk as it tried to sell, reorganize or liquidate those entities.[24] Transferring its equity interests to Reorganized TCEH rids EFH Corp. of all the

[22] Indeed, pursuit of this tax-free approach, even with its consumption of certain EFH Corp. NOLs, is something to which NextEra and other E-side bidders have expressed no objection. In fact, no E-side bidder has expressed any desire for EFH Corp. NOLs. Nothing speaks more loudly about the propriety of this proposed transaction, and the fact that the EFH Corp. NOLs have limited value, than the fact that all potential bidders support it and no potential bidder is demanding preservation of EFH Corp. NOLs. Williamson Declaration ¶ 52.

[23] Williamson Declaration ¶¶ 18, 28.

[24] *Id.* ¶¶ 42, 45-46.

management distraction and economic risk related to those entities.[25] Neither NextEra nor any other bidder nor any EFH Corp. creditor has expressed any interest in acquiring Corporate Services or PropCo.[26] Indeed, it is a condition to the closing of the NextEra deal that EFH Corp. has rid itself of Corporate Services and PropCo so that NextEra is not saddled with those entities. To suggest that the full EFH Corp. Board and the Disinterested Directors breached their duties by failing to consider alternatives is unsubstantiated. And not demanding payment for something that no entity wants to acquire is not a breach of any duty.

15. The full EFH Corp. Board and the Disinterested Directors, in their capacity as members of the EFH Corp. Board, considered all commercial, reasonable and rational options and acted in the best interests of the EFH Corp. estate by approving the Current Plan and the Ancillary Agreements.

## III. The full EFH Corp. Board and the Disinterested Directors adequately pursued the alternatives that were achievable.

16. The Objectors contend that the full EFH Corp. Board and the Disinterested Directors did not "aggressively negotiate for maximum consideration for EFH Corp.'s estate and its creditors in connection with the EFH 363 Transactions." Contrary to this unfounded assertion, the evidence will show that the Current Plan was the result of prudent negotiations, taking into account the risks inherent in potential alternatives.[27] EFH Corp. pursued what was reasonable, rational and achievable. Prudent and reasonable negotiations do not require holding out for the last dollar, when there is no indication there is more on the table and when doing so

---

[25] The contribution of PropCo to Reorganized TCEH also will result in EFH Corp. receiving $14 million of PropCo cash, a result that would be at risk if EFH Corp. retained PropCo. The $158 million intercompany claim reflected in the books and records of PropCo in favor of EFH Corp. cannot be satisfied by PropCo. Williamson Declaration ¶ 46.

[26] Williamson Declaration ¶¶ 41, 45.

[27] *Id.* ¶¶ 28, 29, 36.

might put any recovery for EFH Corp.'s estate at risk. The Objectors' suggestion that the Current Plan and the Ancillary Agreements should have been renegotiated after the PLR was issued would have created downside risk to EFH Corp. creditors with no likely upside reward.

17. The full EFH Corp. Board and the Disinterested Directors reasonably relied on EFH Corp.'s management, the co-CROs, their respective advisors and their business judgment. The notion that the TCEH First Lien Creditors would pay hundreds of millions of dollars for a basis step-up is rebutted squarely by the fact that they have refused to subordinate a single dollar of their $700 million claim against EFH Corp. in exchange for a consensual plan. There simply is no evidence in the record that, given the massive losses the TCEH First Lien Creditors have suffered in this case, they would add to those losses by paying for a tax-free spin. There is no evidence that a more "aggressive" negotiation would have yielded anything greater than what was achieved through the Current Plan.

**IV. The undisputed evidence will show that the full EFH Corp. Board and the Disinterested Directors were properly and adequately informed.**

18. The EFH Indenture Trustee asserts that the process the full EFH Corp. Board and the Disinterested Directors undertook in connection with approval of the Current Plan and Ancillary Agreements was inadequate and the full EFH Corp. Board and the Disinterested Directors somehow were uninformed. The actual evidence overwhelmingly rebuts this assertion.

19. The evidence will show that, beginning in late-February 2016, the full EFH Corp. Board began considering seriously alternatives to the plan confirmed in December 2015 and the full EFH Corp. Board and the Disinterested Directors regularly were updated, at formal Board meetings – not less than a dozen – and otherwise, by members of the Debtors' management team, the co-CROs and EFH Corp.-retained professionals Kirkland & Ellis and Evercore Partners Inc., regarding the status of the restructuring and concurrent discussions with parties

regarding potential alternative transactions.[28] The full EFH Corp. Board and the Disinterested Directors received and reviewed Board materials describing and explaining the potential alternatives.[29] The Disinterested Directors also consulted and had meetings – not less than ten – with their own independent legal and financial advisors, Proskauer Rose LLP and SOLIC Capital Advisors, regarding the same issues.[30] The full EFH Corp. Board and the Disinterested Directors are entitled to rely on the advice and counsel of their legal and financial advisors and they did so.

20. In sum, the full EFH Corp. Board and the Disinterested Directors were fully informed and they competently exercised their business judgment. The fact that a creditor may disagree with the decision reached by the full EFH Corp. Board and the Disinterested Directors does not prove that the decision was uninformed.

21. The objections raised by the EFH Indenture Trustee, including the unjustified attacks on the EFH Corp. Disinterested Directors, lack evidentiary and legal support. For all of the reasons set forth above and in the *Debtors' Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Reorganization as It Applies to the TCEH Debtors and EFH Shared Services Debtors,* the EFH Corp. Disinterested Directors respectfully request that the Court overrule Objection, confirm the Current Plan and approve the Ancillary Agreements.

Wilmington, Delaware
Dated: August 15, 2016

**BIELLI & KLAUDER, LLC**

*<u>/s/ David M. Klauder</u>*
David M. Klauder (No. 5769)
Cory P. Stephenson (No. 6097)
1204 N. King Street
Wilmington, DE 19801

---

[28] Williamson Declaration ¶ 18.

[29] *Id.* ¶¶ 28-29.

[30] Williamson Declaration ¶ 29.

Telephone: (302) 803-4600
Facsimile: (302) 397-2557
Email: dklauder@bk-legal.com
cstephenson@bk-legal.com

-and-

**PROSKAUER ROSE LLP**

Jeff J. Marwil (admitted *pro hac vice*)
Mark K. Thomas (admitted *pro hac vice*)
Peter J. Young (admitted *pro hac vice*)
Three First National Plaza
70 W. Madison Street, Suite 3800
Chicago, IL 60602
Telephone: (312) 962-3550
Facsimile: (312) 962-3551
Email: jmarwil@proskauer.com
mthomas@proskauer.com
pyoung@proskauer.com

*Co-Counsel to Debtor*
*Energy Future Holdings Corp.*