# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

_____

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
| _____ | ) | **Re: D.I. 9199** |

## REPLY OF THE TCEH COMMITTEE IN SUPPORT OF CONFIRMATION OF JOINT PLAN OF REORGANIZATION AS IT APPLIES TO <u>THE TCEH DEBTORS AND EFH SHARED SERVICES DEBTORS</u>

54452624.1

The Official Committee of Unsecured Creditors (the "**TCEH Committee**") of Energy Future Competitive Holdings Company LLC ("**EFCH**"), EFCH's direct subsidiary, Texas Competitive Electric Holdings Company LLC ("**TCEH**"), and their direct and indirect subsidiaries, and EFH Corporate Services Company, by and through its undersigned counsel, hereby files this reply (the "**Reply**") in support of the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (as may be modified, amended or supplemented from time to time, the "**Plan**"),[1] as it applies to the TCEH Debtors and EFH Shared Services Debtors, and respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. The Plan presently before the Court represents the Debtors' second attempt to exit bankruptcy, following the failure to obtain the regulatory rulings necessary for the initial Confirmed Plan (defined below) to go effective within the timeline contemplated under the PSA (defined below). As was the case in the first round of confirmation proceedings nearly a year ago, the vast majority of the objections to the Plan are asserted by E-side creditors even though the E-side creditors stand to receive far better recoveries than T-side creditors. The E-side creditors are barred from demanding additional value on account of potential intercompany claims that were resolved under the global Settlement Agreement (defined below) approved by the Court. Undeterred, the E-side creditors now appear to be attempting to extract additional value from the T-side estates by attacking the Debtors' process and seeking to further delay the T-side plan process.

2. The E-side creditors argue that, notwithstanding the exhaustive analysis performed by the Debtors and numerous other parties in interest in connection with the

---

[1] Capitalized terms not otherwise defined herein shall the meaning given to such terms in the Plan.

development of the PSA, the Confirmed Plan, the Settlement Agreement, and the new Plan, the Debtors *may* have overlooked some other potential restructuring alternative that might have provided additional value to the E-side. The E-side creditors also argue that the Plan, which contemplates the tax-free spin-off of TCEH, will unfairly transfer value from the E-side to the T-side without adequate consideration. For the reasons discussed in the Debtors' reply, the E-side creditors' objections lack merit, and their objections should be overruled.

3. The E-side objectors' arguments against the new Plan lack credulity. There is simply no logical basis to argue that the EFH directors should have gambled that the TCEH first lien creditors would not seek to go forward with a taxable transaction that would potentially trigger billions of dollars of taxes that would be owed by EFH (despite the consistent statements by those creditors to the contrary throughout these cases), all in a futile effort to possibly negotiate a better transaction for the E-side. The EFH directors rightly concluded that gambling with these stakes was not in the best interest of EFH or its stakeholders and negotiated the best possible deal for EFH. The Debtors and other parties in interest have now spent over two years constructing a plan that is feasible, fair, and value maximizing for *both* the E-side and T-side. The Plan provides the E-side creditors with everything to which they are entitled under the Bankruptcy Code, including the means for the E-side to pursue their own value maximizing transaction, which they are now doing. This Plan is the product of exhaustive negotiations that were conducted in good faith and at arms' length. The fact that EFH's creditors may not be made entirely whole (depending on the final outcome of the E-side sale process) despite those extensive efforts does not mean those efforts were inadequate or that the resulting Plan is unfair.

2

4.      It is time for these bankruptcy cases to finally end.[2]  As will be adduced through evidence presented at the confirmation hearing, the Plan satisfies each of the applicable requirements for confirmation under the Bankruptcy Code.  Based on the foregoing, the TCEH Committee believes that the Plan is in the best interests of the unsecured creditors of the TCEH Debtors and EFH Corporate Services, as well as the Debtors' estates, and supports confirmation of the Plan.  Accordingly, the TCEH Committee respectfully requests that the Court overrule each of the objections and confirm the Plan.

## II.    BACKGROUND

5.      On April 29, 2014, the Debtors filed petitions in this Court seeking relief under chapter 11 of the Bankruptcy Code.

6.      On August 10, 2015, the Debtors filed the *Motion of Energy Future Holdings Corp., et al., to Authorize the Debtors to Enter Into and Perform Under the Plan Support Agreement* [D.I. 5248] (the "**PSA Motion**"), seeking authority to enter into and perform under the Plan Support Agreement attached thereto as Exhibit 1 to Exhibit A (as amended, the "**PSA**").  The TCEH Committee is a party to the PSA.

7.      Also on August 10, 2015, the Debtors filed the *Motion of Energy Future Holdings Corp., et al., to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement* [D.I. 5249] (the "**Settlement Motion**"), seeking authority to enter into and perform under the Settlement Agreement attached thereto as Exhibit 1 to Exhibit A (as amended, the "**Settlement Agreement**").  The TCEH Committee is a party to the Settlement Agreement.

---

[2] Notably, even the exit of the TCEH Debtors from bankruptcy will not bring finality to TCEH's unsecured creditors.  Although the Debtors have made tremendous progress on the reconciliation of claims, distributions to holders of Class C4 and C5 claims likely cannot take place until estimation of certain unliquidated claims.  See Plan at Art. VI.A.  The TCEH Committee is working closely with the Debtors with respect to estimation of such claims and discussing potential modifications to the Plan related to continuing the TCEH Committee's oversight of such claims.

8. On September 18, 2015, the Court entered an order granting the PSA Motion [D.I. 6097].

9. On December 7, 2015, the Court entered an order [D.I. 7244] (the "**Confirmation Order**") approving the Debtors' *Sixth Amended Joint Plan of Reorganization* [D.I. 7187] (the "**Confirmed Plan**") and the Settlement Agreement [D.I. 7243].

10. Due to the failure to obtain requisite regulatory approvals with respect to the Confirmed Plan within the timeframe provided under the PSA, on May 1, 2016, the TCEH First Lien Creditors sent a Plan Support Termination Notice to the Debtors and Required Investor Parties, triggering a "Plan Support Termination Event" under section 11 of the PSA. The occurrence of a Plan Support Termination Event rendered the Confirmed Plan and Confirmation Order "null and void" under Article IX.D of the Confirmed Plan and paragraph 147 of the Confirmation Order.

11. Rather than placing the Debtors' estates at square one, the PSA provided certain carefully negotiated parameters that any subsequent plan must contain (subject to applicable "fiduciary outs"). On May 1, 2016, the Debtors filed the Plan and the disclosure statement related to the Plan [D.I. 8356] (as modified, amended or supplemented from time to time, the "**Disclosure Statement**"). The current Plan follows the parameters previously agreed to by the parties to the PSA.

12. On June 17, 2016, the Court entered an order approving the Disclosure Statement and authorizing the Debtors to solicit votes on the Plan [D.I. 8761].

13. On August 3, 2016, the Debtors filed the Plan Supplement [D.I. 9188].

14. On or about August 8, 2016, the following parties (collectively, the "**Objecting Parties**") filed objections (collectively, the "**Objections**") to the Plan[3] (i) Bank of New York Mellon ("**BNYM**") in its capacity as the EFCH 2037 Notes Trustee [D.I. 9210] (the "**EFCH 2037 Notes Trustee Objection**"); (ii) American Stock & Transfer Company, LLC ("**AST**") in its capacity as EFH Notes Indenture Trustee and Contrarian Capital Management, LLC [Docket No. 9224] (the "**EFH Notes Objection**"); (iii) individual asbestos plaintiffs Shirley Fenicle, David William Fahy and John H. Jones [D.I. 9209] (the "**Asbestos Plaintiffs' Objection**"); (iv) certain funds and accounts advised or sub-advised by Fidelity Management & Research Company or its affiliates (joining in the AST Objection) [D.I. 9226] (the "**Fidelity Objection**"); and (v) the Office of the United States Trustee [D.I. 9203].

### III.   REPLY

15. The Committee joins in the Debtors' reply and memorandum of law in support of the Plan filed contemporaneously herewith, and requests that the Court overrule the Objections for the reasons set forth therein and below.

### 1.   Separate Classification and Different Treatment of Claims Held in Classes C4, C5, and C6 Is Appropriate

16. BNYM, on behalf of the EFCH 2037 Notes,[4] has objected to the separate classification and resulting different treatment of the unsecured claims in Class C6. EFCH 2037 Notes Trustee Objection at ¶¶ 22-24 (arguing, among other things, that the Debtors have failed to explain the basis for separate classification of the Class C6 claims). The separate classification of Claims in Class C4 (TCEH Unsecured Debt Claims) and Class C6 (General Unsecured Claims

---

[3] The following list excludes reservations of rights and objections to the proposed assumption or rejection of executory contracts pursuant to the Plan.

[4] Importantly, the Committee was able to help broker of a settlement of BNYM's objections on behalf of the holders of the TCEH Debtors' Pollution Control Revenue Bonds, which the Committee understands will be incorporated into an amended Plan.

5

Against EFCH) is appropriate because, as the evidence presented at trial will show, legitimate business reasons exist to separately classify and treat the TCEH Debtors' other unsecured funded debt claims from the claims of EFCH Noteholders because EFCH has no unencumbered assets that could provide a recovery to unsecured creditors.

17.     The TCEH Committee is unaware of any EFCH assets that are unencumbered by the liens of TCEH's secured creditors based on the schedule of assets and liabilities filed for EFCH [D.I. 1273].  Further, the TCEH Committee investigated potential claims against the TCEH First Lien Lenders and the Prepetition Sponsors on behalf of all TCEH Debtors as well as intercompany claims, and, with respect to certain of those claims, sought standing to assert them on behalf of all TCEH Debtors.[5]  Although those claims were settled under the Settlement Agreement, none of those claims were likely to provide value to EFCH if they were to be successfully litigated.

18.     More specifically, the claims against the TCEH First Lien Creditors primarily sought one of three remedies:  the avoidance of liens; the return of cash paid by TCEH or its subsidiaries from the TCEH money pool; or the reduction of debt.  (Id.)  Because EFCH is merely a holding company and has no operating assets,[6] as a practical matter, no debt obligations could have been enforced against it and therefore the avoidance of liens and reduction of debt would not provide any benefit to EFCH's unsecured creditors.  Further, because EFCH is not a subsidiary of TCEH and did not contribute to the TCEH money pool,[7] it would not be entitled to

---

[5]     See Motion of the Official Committee of Unsecured Creditors for Entry of an Order Granting Exclusive Standing and Authority to Commence, Prosecute, and Settle Certain Claims for Declaratory Judgment, Avoidance and Recovery of Liens, Security Interests, Obligations, Fees, and Interest Payments, and Disallowance of Claims [D.I. 3593] (the "**TCEH Committee Standing Motion**").

[6]     See [D.I. 1273]; Form 10-Q for EFCH for the Quarterly Period Ended June 30, 2015, available at http://www.sec.gov/Archives/edgar/data/1445049/000144504915000009/efch-6302015x10q.htm.

[7]     See, e.g., Motion of Energy Future Holdings Corp., et al., for Entry of an Order (A) Authorizing the Debtors to (I) Continue Using Their Existing Cash Management System, (II) Maintain Existing Bank Accounts and

share in the return of any payments made from the TCEH money pool.  In this respect, EFCH is distinguishable from all other TCEH Debtors, and the separate classification of claims held by its creditors is warranted.  See, e.g., In re Kaiser Aluminum Corp., No. 02-10429 (JKF), 2006 WL 616243, at *5-6 (Bankr. D. Del. Feb. 6, 2006) (permitting classification scheme after consideration of creditors' legal rights), aff'd, 343 B.R. 88 (D. Del. 2006); In re Exide Techs., 303 B.R. 48, 79-80 (Bankr. D. Del. 2003) (stating that there may be a basis for separately classifying creditors of the same priority level); see also In re Mirant Corp., No. 03-46590 DML, 2007 WL 1258932, at *7 (Bankr. N.D. Tex. Apr. 27, 2007) (permitting separate classification because holders of claims had different legal interests in the debtor's estate).  In fact, EFCH's only material asset is its equity interests in TCEH.  Because TCEH claims, which are senior in priority to interests, are not being paid in full, creditors of EFCH are not entitled to any recovery on account of those interests.  See 11 U.S.C. § 1129(b)(2)(B)(ii).  The Court should therefore overrule the EFCH Notes Trustee Objection.

        **B.**    **The Plan Will Provide More Value to Creditors of EFH Corporate Services Than They Would Receive Absent the Transfer to TCEH**

19.    Certain of the Objectors argue that the proposed transfer by EFH of various assets including EFH Corporate Services and non-Debtor EFH Properties Company to TCEH constitutes a fraudulent transfer.  See EFH Notes Objection at ¶¶ 67; Asbestos Plaintiffs' Objection at 10; Fidelity Objection at 1.  As will be demonstrated at the confirmation hearing, the transfer of those entities to TCEH is an inseparable component of a much larger transaction that will benefit both the E-side and T-side estates, by, among other things, avoiding several billions of dollars in potential tax liabilities at EFH that would potentially be triggered if TCEH

---

*Business Forms, and (III) Continue Using Certain Investment Accounts; (B) Authorizing Continued Intercompany Transactions and Netting of Intercompany Claims; and (C) Granting Postpetition Intercompany Claims Administrative Expense Priority* [D.I. 37] at ¶¶ 20, 26.

were separated via a taxable transaction. The value to the EFH estates in mitigating that risk is, in and of itself, substantial consideration in exchange for the transfers.

20. Moreover EFH Corporate Services provides the vast majority of its services to the TCEH Debtors. While the EFH Debtors would have little use for EFH Corporate Services if it was not transferred to TCEH, EFH could incur substantial liabilities as a result of its continued ownership of that entity, including in connection with retaining employees for which it has little need or by incurring significant severance obligations in connection with the termination of those employees. Those potential liabilities would far exceed EFH Corporate Services' assets, making it highly unlikely that creditors of EFH Corporate Services would receive a 100% recovery (as is currently the case under the Plan) and, as a result, it is improbable that EFH would receive any value by retaining EFH Corporate Services. In short, the transfer of EFH Corporate Services to TCEH makes good business sense for both TCEH and for the E-side.

### IV.    CONCLUSION

21. For the reasons set forth herein, the TCEH Committee respectfully requests that the Court overrule the Objections and enter an order confirming the Plan.

*[Remainder of page intentionally left blank]*

Dated: Wilmington, Delaware
      August 15, 2016

**MORRISON & FOERSTER LLP**
Brett H. Miller
Todd M. Goren
Erica J. Richards
250 West 55th Street
New York, New York 10019-9601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
E-mail: brettmiller@mofo.com
          tgoren@mofo.com
          erichards@mofo.com

      -and-

*/s/ Justin K. Edelson*
**POLSINELLI PC**
Christopher A. Ward (Del. Bar No. 3877)
Justin K. Edelson (Del. Bar No. 5002)
Shanti M. Katona (Del. Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
E-mail: cward@polsinelli.com
          jedelson@polsinelli.com
          skatona@polsinelli.com

*Attorneys for the Official Committee
of TCEH Unsecured Creditors*