**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
|  | Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.,*[1] | Jointly Administered |
|  | Re: D.I. 9199, 9224 |
| Debtors. | Hearing Date:  August 17, 2016 at 10:00 a.m. |

**PRETRIAL BRIEF OF EFH INDENTURE TRUSTEE
REGARDING APPLICABLE FRAUDULENT TRANSFER LAW**

**CROSS & SIMON, LLC**
Christopher P. Simon (Del. Bar No. 3697)
105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

**NIXON PEABODY LLP**
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street
Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
gskelly@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee*

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................................ 1

SUMMARY OF ARGUMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    A.    The Burden of Proof ............................................................................................... 2

    B.    The Applicable Fraudulent Transfer Standard ...................................................... 2

    C.    $5.5 - $6 billion of EFH Corp.'s NOLs are Property of EFH Corp.'s Estate
          and Their Consumption In Connection With the Current Plan Constitute
          Fraudulent Transfers .............................................................................................. 4

    D.    EFH Corp.'s Cash Payment of Approximately $10 - $20 Million of the
          AMT Generated by the Spin-Off ........................................................................... 7

    E.    Where, as Here, No Measurable Consideration Will Flow to a Transferor,
          the Court Cannot Find That EFH Corp. Will Receive Reasonably
          Equivalent Value .................................................................................................... 8

    F.    The Proposed Transfers are Not Authorized Under 11 U.S.C.§ 1123 and
          Therefore Violate 11 U.S.C. § 1129(A)(3) .......................................................... 13

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corporation*,
　351 F.Supp.2d 79 (S.D.N.Y. 2004)...........................................................................12

*Gibson v. Martin (In re Russell)*,
　927 F.2d 413 (8th Cir. 1991) ...................................................................................9

*In re Alaska Fur Gallery, Inc.*,
　2011 Bankr. LEXIS 5787 (Bankr. Alaska, April 29, 2011) .............................16, 17

*In re Contex Holdings, LLC*
　518 B.R. 792 (Bankr. D. Del. 2014) (CSS) ..........................................................7, 8

*In re Ear, Nose & Throat Surgeons, Inc.*,
　49 B.R. 316 (Bankr. D.Mass.1985) .......................................................................15

*In re Foreman Enterprises, Inc.*
　281 B.R. 600 (Bankr. W.D. Penn. 2002) ...............................................................7

*In re Hinsley*,
　201 F.3d 638 (5th Cir. 2000) ...............................................................................13

*In re Irving Tanning Co.*,
　496 B.R. 644 (B.A.P. 1st Cir. 2013) .......................................................................5

*In re Knight*,
　473 B.R. 847 (Bankr. N.D. Ga. 2012) ...................................................................13

*In re Neogenix Oncology, Inc.*,
　508 B.R. 345 (Bankr. D. Md. 2014) .......................................................................5

*In re Prudential Lines, Inc.*,
　107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd* 119 B.R. 430 (S.D.N.Y. 1990), *aff'd* 928
　F. 2d 565 (2d Cir. 1991)........................................................................................7

*In re Richards & Conover Steel, Co.*,
　267 B.R. 602 (8th Cir. BAP 2001)........................................................................13

*In re TransTexas Gas Corp.*,
　597 F.3d 298 (5th Cir. 2010) ...............................................................................13

*In re TriGem America Corp.*,
　431 B.R. 855 (Bankr. C.D.Cal. 2010)...................................................................13

*Kapila v. United States (In re Taylor)*,
   386 B.R. 361 (Bankr. S.D. Fla. 2008) .................................................................12

*Klein v. Tabatchnick*,
   610 F.2d 1043 (2d Cir.1979) ...............................................................................15

*Mellon Bank, N.A. v. Metro Communications, Inc.*,
   945 F.2d 635 (3rd Cir. 1991) ........................................................................12, 15

*re Southmark Corp.*,
   138 B.R. 820 (Bankr. N.D.Tex.1992) ...................................................................13

*Rubin v. Manufacturers Hanover Trust Co.*,
   661 F.2d 979 (2d Cir.1981) ...................................................................................15

*Tronox Inc. v. Kerr-McGee Corp. et al (In re Tronox Inc.)*,
   503 B.R. 239 (Bankr. S.D.N.Y. 2013) ....................................................................6

*United States v. Evans*,
   513 F. Supp. 2d 825 (W.D. Tex. 2007) ...................................................................6

*United States v. Towers (In re Feiler)*,
   230 B.R. 164 (B.A.P. 9th Cir. 1999) .....................................................................11

*Wren Alexander, Invs., L.L.C. v. IRS (In re Wren Alexander Invs., L.L.C.)*,
   2012 U.S. Dist. LEXIS 189240 (W.D. Tex. Mar. 30, 2012) ...................................6

STATE CASES

*Bowman v. El Paso CGP Co., L.L.C.*,
   431 S.W.3d 781 (Tex. App. Houston 14th Dist. 2014) ..........................................11

*Janvey v. Golf Channel, Inc.*,
   487 S.W.3d 560 (Tex. Apr. 1, 2016) .....................................................................14

FEDERAL STATUTES

11 U.S.C.§ 1123.............................................................................................16, 17

11 U.S.C. § 1123(a)(5)(b) .....................................................................................16

11 U.S.C. § 1129...............................................................................................4, 17

11 U.S.C. § 1129(a)(3)........................................................................................5, 16

26 U.S.C. § 1366(a)(1)(A) ......................................................................................7

11 U.S.C. § 101(54) ................................................................................................9

11 U.S.C.§ 548.............................................................................................................11, 12

IRC § 172(b)(3).................................................................................................................12

### STATE STATUTES

Delaware's Uniform Fraudulent Transfer Act, Title 6, § 1301 *et seq.*............................................5

TEX. BUS. & COM. CODE § 24.006(a) ...................................................................................3, 6

Texas Uniform Fraudulent Transfer Act ("TUFTA") .............................................................6, 10

### REGULATIONS

26 C.F.R. § 301.7701-2(c)(2)(i)...........................................................................................8

## NATURE AND STAGE OF PROCEEDINGS

The EFH Indenture Trustee,[2] by its undersigned counsel, hereby submits this pretrial brief regarding the applicable fraudulent transfer law in further support of the *EFH Indenture Trustee and Contrarian Capital Management, LLC's Objection to Confirmation of Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9224] (the "Objection") filed on August 8, 2016.

## SUMMARY OF ARGUMENT

1.      As set forth in the Objection and below, the EFH 363 Transfers constitute fraudulent transfers under applicable state law and the relevant provisions of the Bankruptcy Code.  For the EFH 363 Transactions to be approved, and for the Current Plan to comply with 11 U.S.C. § 1129, the Court must determine that EFH Corp. will receive reasonably equivalent value in exchange for those transfers.

2.      The following summarizes the transfers at issue:

- Reorganized TCEH's use of $5.5 - $6 billion of EFH Corp.'s accumulated NOLs that will directly increase Reorganized TCEH's value by more than $1.0 billion, without fair equivalent value to EFH Corp.;

- The release of any claim for contribution arising from the payment of TCEH's joint and several tax liabilities;

- EFH Corp.'s cash payment of approximately $10 - $20 million of alternative minimum tax generated by the Spin-Off without fair equivalent value to EFH Corp.;

- The transfer of the equity of EFH Corporate Services — a wholly-owned subsidiary of EFH Corp. — and other assets to Reorganized TCEH, without fair equivalent value to EFH Corp.; and

- The transfer of non-debtor EFH Properties — another wholly-owned subsidiary of EFH Corp. —  to Reorganized TCEH, and the release of a $158 million

---

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Current Plan or the Objection.

undisputed payable from EFH Properties to EFH Corp. and a disputed payable of approximately $74.3 million without fair equivalent value to EFH Corp.

3.      The details of these transfers are described in the Objection and the facts will be established at trial.  As set forth below, each of these proposed transfers constitutes a transfer for less than reasonably equivalent value and is impermissibleunder applicable fraudulent transfer law.

## ARGUMENT

### A.      The Burden of Proof

A proponent of a chapter 11 plan bears the burden of proof with respect to each confirmation requirement, and must satisfy that burden by a preponderance of the evidence.  *In re Irving Tanning Co.*, 496 B.R. 644 (B.A.P. 1st Cir. 2013); *In re Neogenix Oncology, Inc.*, 508 B.R. 345 (Bankr. D. Md. 2014) (plan proponent bears the burden of establishing that each requirement set forth in statute governing confirmation of chapter 11 plan has been met by a preponderance of the evidence).  Thus the burden of demonstrating, without limitation, that the Current Plan is proposed in good faith and not by any means forbidden by law under 11 U.S.C. § 1129(a)(3) rests squarely with the Debtors.  When, as here, it is clear that the contemplated transactions are fraudulent on their face where no consideration will flow to EFH Corp. as transferor, the Debtors bear the burden of showing that the transfers do not violate state law and 11 U.S.C. § 1129(a)(3).

### B.      The Applicable Fraudulent Transfer Standard

It is undisputed that the Current Plan contemplates the conveyance of property interests of EFH Corp., a Texas corporation.  EFH Corp. will be required to make the transfers and assume obligations at issue under the Current Plan.  Given that, the Court must look to the

controlling fraudulent transfer law of the State of Texas[3] to determine first whether reasonably

equivalent value was paid and then whether the result was insolvency, inadequate capitalization,

or inability to pay debts as they came due.  *Tronox Inc. v. Kerr-McGee Corp. et al, (In re Tronox Inc.)*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013).

The Texas Uniform Fraudulent Transfer Act ("TUFTA") provides in relevant part as

follows:

> (a)  A transfer made or <u>obligation incurred</u> by a debtor is
> fraudulent as to a creditor whose claim arose before the transfer
> was made or the obligation was incurred if the debtor made the
> transfer or incurred the obligation without receiving a reasonably
> equivalent value in exchange for the transfer or obligation and the
> debtor was insolvent at that time or the debtor became insolvent as
> a result of the transfer or obligation.

TEX. BUS. & COM. CODE § 24.006(a) (emphasis supplied).  "Section 24.006(a) requires [the]

Court to examine whether [the transferor] received reasonably equivalent value when [the

transferor] transferred . . . assets to [the transferee]."  *United States v. Evans,* 513 F. Supp. 2d

825, 835 (W.D. Tex. 2007).  To sustain a fraudulent transfer claim under TUFTA section

24.006(a), the creditor has to prove that (1) its claim against the debtor arose prior to the transfer

of the property in question; (2) the property was transferred for less than reasonably equivalent

value, and (3) the debtor was insolvent at the time of the transfer, or was rendered insolvent as a

result of the transfer.  *See Wren Alexander, Invs., L.L.C. v. IRS (In re Wren Alexander Invs., L.L.C.)*, 2012 U.S. Dist. LEXIS 189240, *13 (W.D. Tex. Mar. 30, 2012).

All the elements of TUFTA section 24.006 are present here where the incurring of the tax

obligation and EFH Corp.'s proposed transfers of EFH Properties, EFH Corporate Services and

EFH Corp.'s NOLs would be fraudulent as to EFH Corp.'s creditors, because, as will be further

---

[3]     The result of the Court's analysis would not be materially altered by reference to Delaware's Uniform
Fraudulent Transfer Act, Title 6, § 1301 *et seq.*

shown at trial, EFH Corp. will have made the transfers without receiving reasonably equivalent value at a time when EFH Corp. is insolvent.

In the present case, where there can be no dispute that (i) EFH Corp.is insolvent; (ii) the contemplated transfers are transfers of EFH Corp.'s property;[4] and (iii) the requisite creditors exist, the focus for analyzing the contemplated transfers is whether reasonably equivalent value will be given in exchange for the transfers.

**C.** **$5.5 - $6 billion of EFH Corp.'s NOLs are Property of EFH Corp.'s Estate and Their Consumption In Connection With the Current Plan Constitute Fraudulent Transfers**

Unquestionably, EFH Group's tax attributes, including its NOLs, are property of EFH Corp.'s estate. *See e.g., In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr. S.D.N.Y. 1989), *aff'd* 119 B.R. 430 (S.D.N.Y. 1990), *aff'd* 928 F. 2d 565 (2d Cir. 1991). Here, only EFH Corp., for federal income tax purposes, possesses the legal interests in, and the right to control, the disposition and use of the EFH Group's tax attributes, including the NOLs, regardless of how and when the NOLs were generated.[5] TCEH, as a disregarded entity under applicable federal tax law, has no right to, or ownership interest in, the NOLs under relevant tax law. *See e.g., In re Contex Holdings, LLC* 518 B.R. 792 (Bankr. D. Del. 2014) (CSS); *In re Foreman Enterprises, Inc.* 281 B.R. 600 (Bankr. W.D. Penn. 2002) ("Under the provisions of the Internal Revenue Code cited previously [*i.e.*, 26 U.S.C. §1366(a)(1)(A)], the NOL and the right to use it automatically passed through by operation of law to defendants as S corporation shareholders.

---

[4]    These transfers include not only the NOLs and related tax payments, but the transfer of EFH Corporate Services and EFH Properties which are undeniably property of EFH Corp. under the Bankruptcy Code and applicable state law.

[5]    The current case is therefore distinguished from *In re Marvel Entertainment Group, Inc.*, in which the consumption of the NOLs at issue was undertaken within the context of a consolidated tax group. 273 BR 58 (D Del. 2002).

Debtor [the S corporation] was merely a 'conduit' through which the NOL and the right to use it passed to them.").

Disregarded entities, like TCEH, have neither a legally-cognizable interest in any federal income tax attribute, such as NOLs, nor any legal entitlement to direct the use of such tax attributes under federal income tax law.  *See* 26 C.F.R. § 301.7701-2(c)(2)(i) ("a business entity that has a single owner and is not a corporation under paragraph (b) of this section is disregarded as an entity separate from its owner").  A disregarded entity's right to future use of, or reimbursement by its owner for use of, NOLs economically attributable to losses of the disregarded entity – if any – is purely contractual.  *See, e.g.*, *Contex Holdings, LLC* 518 B.R. at 805-806.

First, as explained above, under federal income tax law, because certain of the Debtors are disregarded entities, all such Debtors' tax attributes, including the NOLs, are assets that are owned by EFH Corp. as a matter of federal income tax law.  By engaging in the Busted 351 transaction, TCEH will generate a joint and several tax obligation that will be satisfied with the NOLs, and will obtain a valuable step-up in the Basis Step-up Assets, which will ultimately be held by Reorganized TCEH.  The increased value of such Basis Step-Up Assets is directly attributable to an expenditure of EFH Corp.'s NOLs (which, once used, are no longer available to EFH Corp.) - *i.e.,* EFH Corp.'s NOLs will be "spent" by TCEH in order to achieve a stepped-up basis in such assets, thus conferring more than $1 billion in benefit on Reorganized TCEH.

Second, the Spin-Off contemplates the Conversion, in which Reorganized TCEH is converted to a Delaware corporation, thereby becoming a federal income taxpayer.  The Conversion will be treated as a contribution by EFH Corp. to Reorganized TCEH of Prefco's equity and, indirectly, the Basis Step-Up Assets.  The Conversion will occur after the gain from

5

the Busted 351 is triggered, and the tax basis of the Basis Step-Up Assets has correspondingly increased to their fair market value, using up EFH Corp.'s NOLs.  Accordingly, the Conversion will be treated for federal income tax purposes as a transfer of such Basis Step-Up Assets (a portion of the value of which is "purchased" through an expenditure of EFH Corp.'s NOLs) by EFH Corp. to Reorganized TCEH.

Thus, under federal income tax law, the Conversion is a transfer (as that term is understood under section 101(54) of the Bankruptcy Code) of the Basis Step-Up Assets, and thus a transfer of the value of EFH Corp.'s NOLs to Reorganized TCEH without receiving reasonably equivalent value in exchange.  *See, e.g., Gibson v. Martin (In re Russell),* 927 F.2d 413 (8th Cir. 1991).  This transfer impermissibly denies EFH Corp. and its stakeholders the benefit of these valuable tax assets forever, and, indeed, does so before confirmation of an E-Side plan. Therefore, the Conversion is, in effect, a fraudulent transfer of these tax benefits to Reorganized TCEH.

Not only does the Conversion result in a transfer of tax benefits, it also results in joint and several liability of Reorganized TCEH for the tax due by the consolidated group.  EFH Corporate Services and EFH Properties are corporations and members of the consolidated group and, as such, are jointly and severally liable under the consolidated group tax regulations.  Under the proposed transactions, there will be a moment in time when both EFH Corp. and Reorganized TCEH will be members of the same consolidated group and jointly and severally liable for the tax until paid in full.[6]  Thereafter, insolvent EFH Corp. will use its solely-owned NOLs to offset the gain to avoid paying a tax jointly and severally owed by Reorganized TCEH.  That tax is

---

[6]     The Debtors sought a ruling from the IRS that Reorganized TCEH would not be characterized as a member of the EFH Tax Group, and thus jointly and severally liable, for any tax.  The IRS ruled that, subject to certain qualifications, Reorganized TCEH "will be treated as a member of the Distributing Group ('EFH Corp') upon the conversion…"

incurred solely to provide a benefit to Reorganized TCEH in the form of a Basis Step-Up in certain of its assets with a net present value of approximately $1 billion.

Texas UFTA condemns constructive fraudulent transfer obligations, as well as constructive fraudulent transfers.  The relevant inquiry is whether EFH Corp. will receive a reasonably equivalent value in exchange for the incurrence of a billion dollar tax obligation as a result of the Tax-Free Spin Off coupled with the Busted Section 351.  Because it will receive no value, as that term is defined and understood under TUFTA section 24.004, it will not receive reasonably equivalent value.  The facts and circumstances surrounding the proposed incurrence of the tax obligation support this conclusion.

Additionally, under such circumstances, EFH Corp. typically would have a claim for contribution or reimbursement against its co-obligor, Reorganized TCEH, under applicable law and principals of equity for its payment of the joint and several tax liabilities.  However, the Current Plan provides for a release of such claims for contribution or reimbursement against Reorganized EFH Properties and EFH Corporate Services.  Because this release is without reasonably equivalent value, the release of EFH Corp.'s claims will be a fraudulent transfer.

**D.**  **EFH Corp.'s Cash Payment of Approximately $10 - $20 Million of the AMT Generated by the Spin-Off**

The Spin-Off also triggers an alternative minimum tax ("AMT").  Under the proposed Tax Matters Agreement, fifty percent of this AMT will be paid by EFH Corp. in cash.  The AMT is determined through a re-calculation of a taxpayer's federal income tax obligations, subject to certain limitation on deductions and credits.  Due to these limitations imposed by the tax code and related regulations, NOLs can only be used to offset ninety percent (90%) of alternative minimum taxable income.  As a result, the Debtors currently estimate that they will incur approximately $14-20 million in AMT in the tax year, including the TCEH Effective Date.

7

These AMT obligations are a direct result of the Spin-Off and Busted 351. The payment of the AMT is necessary for Reorganized TCEH to receive the step-up basis. The result as the Spin-Off is structured is that insolvent EFH Corp. must pay this tax obligation for the benefit of Reorganized TCEH. Clearly the payment of the AMT is a transfer of EFH Corp.'s assets. TEX. BUS. & COM. CODE § 24.002(12). While the AMT will, if approved as part of the Current Plan, provide EFH Corp. with a claim against TCEH for reimbursement of fifty percent (50%) of the tax, it is indisputable that EFH Corp. will first have to pay the AMT.

**E.      Where, as Here, No Measurable Consideration Will Flow to a Transferor, the Court Cannot Find That EFH Corp. Will Receive Reasonably Equivalent Value**

Section 24.004 of TUFTA provides the definition of "value" and "reasonably equivalent value":

> (a)  Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

> (b)  For the purposes of Sections 24.005(a)(2) and 24.006 of this code, a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or execution of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust, or security agreement.

> (c)  A transfer is made for present value if the exchange between the debtor and the transferee is intended by them to be contemporaneous and is in fact substantially contemporaneous.

> (d)  "Reasonably equivalent value" includes without limitation, a transfer or obligation that is within the range of values for which the transferor would have sold the assets in an arm's length transaction.

Because TUFTA's concept of "value" was adopted from the Bankruptcy Code, cases decided under the Bankruptcy Code are persuasive. *See Bowman v. El Paso CGP Co., L.L.C.*, 431 S.W.3d 781, 786 (Tex. App. Houston 14th Dist. 2014). Under section 548 of the

Bankruptcy Code, courts have repeatedly determined that a debtor's NOLs are property of the estate that can be recovered as a fraudulent transfer.  *See e.g., United States v. Towers (In re Feiler)*, 230 B.R. 164, 171 (B.A.P. 9th Cir. 1999) (affirming decision of bankruptcy court that "(1) an IRC § 172(b)(3) NOL election was an interest of Debtors in property; (2) the Election constituted a transfer pursuant to § 548 because it disposed of Debtors' right to a current tax refund in exchange for the right to carry forward their NOL; and (3) the transfer was fraudulent because (a) the parties stipulated that it was made within one year of the filing of the bankruptcy petition, Debtors did not receive reasonably equivalent value, and Debtors were insolvent at the time the Election was made, and (b) the United States directly benefitted from the Election because it was not required to pay a $ 247,493 tax refund."); *Kapila v. United States (In re Taylor)*, 386 B.R. 361, 372 (Bankr. S.D. Fla. 2008) (stating that "bankruptcy law permit[s] the trustee as the fiduciary for the bankruptcy estate to recover those tax attributes which existed prepetition for the benefit of the prepetition creditors.  Allowing the Trustee to recover as fraudulent the Debtor's transfer of his NOL carryback prevents the gross inequity created by the irrevocability of the NOL carryback waiver.

When determining whether the debtor received reasonably equivalent value, the court in *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L. (In re R.M.L.)* stated that the court must undertake two inquiries:  (1) whether the debtor received any value from the transaction in question; and (2) "whether the value was 'reasonably equivalent' to what the debtor gave up."  92 F.3d 139 (3d Cir. 1996).  Thus, reasonably equivalent value suggests a comparison of the property transferred by the debtor (or nature and characteristics of the obligation incurred) with the value actually received by the debtor.[7]

---

[7] "In evaluating the applicability of fraudulent conveyance laws designed to protect creditors' rights, it is essential to view the transaction or transactions in question from the perspective of creditors." *Mellon Bank,*

To decide whether a debtor received "reasonably equivalent value" for an alleged fraudulent transfer, a bankruptcy court must compare the value of what went out with the value of what came in.   *In re Southmark Corp.*, 138 B.R. 820 (Bankr. N.D.Tex.1992).  Whether a debtor received reasonably equivalent value is a three-part test, which considers: 1) whether the debtor received value; 2) whether the value received was in exchange for the property transferred; and 3) whether the value was reasonably equivalent to the value of the property transferred.  *See, e.g. In re Knight*, 473 B.R. 847, 850 (Bankr. N.D. Ga. 2012); *In re Richards & Conover Steel, Co.*, 267 B.R. 602, 612 (8th Cir. BAP 2001).  In any instance, the value received in exchange for the transfer at issue must be measureable.

Here, EFH Corp. will not receive anything of value — let alone reasonably equivalent value — in exchange for its transfer of EFH Properties, EFH Corporate Services and the consumption of EFH Corp's NOLs.   The determination of whether the consideration is fair depends on whether it is of value to the creditor, not the debtor.  *See, e.g., In re TransTexas Gas Corp.*, 597 F.3d 298, 306, (5th Cir. 2010) (measuring reasonably equivalent value by judging the consideration given for a transfer from the standpoint of creditors).

The primary consideration in analyzing the exchange of value for any transfer is the degree to which the transferor's net worth is preserved.  *In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000); *see also, In re TriGem America Corp.*, 431 B.R. 855 (Bankr. C.D.Cal. 2010) (holding that a corporate chapter 11 debtor did not receive reasonably equivalent value for a $250,000 transfer that it made to bondholders of its foreign parent corporation where the underlying

---

*N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 646 (3rd Cir. 1991) ("The purpose of the [fraudulent transfer law] is estate preservation; thus, the question whether the debtor <u>received</u> reasonable value must be determined from the standpoint of the creditors." Emphasis in original).  Further, "whether a transfer is for 'reasonably equivalent value' is largely a question of fact, the determination of which perforce depends on all the circumstances surrounding the transaction."   *American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Securities Corporation*, 351 F.Supp.2d 79, (S.D.N.Y. 2004) (internal quotations and citations omitted) quoting  *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.),* 263 B.R. 406, 466 (S.D.N.Y.2001).

transaction was structured entirely for the parent's benefit and offered only a remote prospect of profit for the debtor transferor, which instead became saddled with another $1,520,000 liability given the absence of some imminent and concrete chance that delay could produce a meaningful solution to the financial problems of the debtor and its parent).

At trial, the Debtors will fail to prove measurable value flows directly to EFH Corp. for the transfer of the NOLs, the payment of the AMT, the transfer of the equity of EFH Corporate Services and the transfer of the equity of EFH Properties and the release of the intercompany claim between EFH Corp. and EFH Properties. Notably, no measurable value is described in the Disclosure Statement and none is recited or referred to in any of the Ancillary Agreements

The Debtors will likely argue that the value to EFH Corp. from the transfer of its NOLs and other assets to fund the Basis Step-Up is the avoiding of the consequences and liabilities that would arise from a hypothetical, future taxable transaction.[8] However, the avoiding of a hypothetical adverse consequence cannot stand as reasonably equivalent value under TUFTA or otherwise. To correctly analyze value in the context of a potentially fraudulent transfer, value must be determined <u>objectively</u> at the time of the transfer in relation to the individual exchange at hand rather than viewed in the context of the debtor's entire enterprise, viewed subjectively from the debtor's perspective, or based on a retrospective or prospective evaluation of the impact it had on the debtor's estate. *Janvey v. Golf Channel, Inc.,* 487 S.W.3d 560 (Tex. Apr. 1, 2016)(court when asked to determine whether expenditures of a Ponzi scheme debtor to purchase television advertising returned reasonably equivalent value to the estate, found that the value of services or goods provided to a debtor does not hinge on whether a debtor utilizes services or

---

[8]    The Debtors argue, for example, that the transfer offered in exchange for the consumption of the NOLs is "the TCEH First Lien Creditors' agreement to refrain from pursuing a Taxable Separation . . . ." *See Debtors' Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Reorganization As it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9298].

goods to further an illegal scheme or to pursue a legitimate business endeavor, but whether the debtor received value, i.e. whether the debtor received consideration with objective, economic value, not merely consideration with some subjective, ephemeral, or emotional value, and whether the value exchanged was reasonably equivalent). Presumably such an impermissible subjective, prospective enterprise-wide analysis is precisely what will be urged by the Debtors in seeking to justify the transfers from EFH Corp. under the Current Plan.

This is not a circumstance in which EFH Corp. is receiving an indirect benefit sufficient to constitute reasonably equivalent value. As a general rule, a debtor receives inadequate consideration when he transfers property for consideration which passes to a third party. *See, e.g., Klein v. Tabatchnick*, 610 F.2d 1043, 1047 (2d Cir.1979); *In re Ear, Nose & Throat Surgeons, Inc.*, 49 B.R. 316, 320 (Bankr. D.Mass.1985). While it is possible, in some circumstances, that a debtor might benefit indirectly as a result of the consideration received by the third party, the test is the measure of the economic benefit that accrues to the debtor. *See, e.g. Mellon Bank, N.A. v. Metro Communications*, 945 F.2d at 646; *Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 993 (2d Cir.1981). Here the Debtors have offered no concrete benefit to EFH Corp. in exchange for the contemplated transfers. The ephemeral benefit of an adverse consequence avoided cannot stand as a measure of reasonably equivalent value.

Presumably the Debtors will also seek to defend their use of EFH Corp.'s NOLs by arguing that EFH Corp. would have little use for, or could not realize significant value from, the NOLs. Contrary to the Debtors' expected position, the NOLs to be consumed as part of the Busted 351 are a valuable asset of EFH Corp. and could potentially be used in numerous different restructuring transactions involving the E-Side Debtors. For instance, EFIH has a

"negative basis" of over $1.7 billion in its partnership interest in Oncor Holding.[9]  Any restructuring that triggers substantial gain calculated by reference to this negative basis, but that could otherwise be offset with EFH Corp.'s NOLs, would unquestionably enhance the value of this interest to current and potential future buyers.  Currently, with the bids for EFH's interest in Oncor not yet due, this outcome cannot be ruled out.

**F.    The Proposed Transfers are Not Authorized Under 11 U.S.C.§ 1123 and Therefore Violate 11 U.S.C. § 1129(A)(3)**

The Current Plan contemplates transfers of a non-debtor's assets which is impermissible under 11 U.S.C. § 1123 that sets out the requirements and limitations of plan content.  While 11 U.S.C. § 1123(a)(5)(b) allows for a debtor's transfer of estate property to a third party under a plan, it does not sanction the transfer of non-estate property.   11 U.S.C. § 1123(a)(5)(b); *see also In re Alaska Fur Gallery, Inc.*, 2011 Bankr. LEXIS 5787 (Bankr. Alaska, April 29, 2011).   In the *Alaska Fur Gallery* case, the bankruptcy court was confronted with a plan that contained provisions similar to the Current Plan before this Court by which the debtor sought to transfer certain real property interest of a non-debtor through its plan.  *See In re Alaska Fur Gallery, Inc.*, 2011 Bankr. LEXIS 5787 * 25.  There the court found that nothing in 11 U.S.C. § 1123 allowed the non-debtor to transfer its assets to the debtor and its creditors under the proposed plan.  *See id*.  The court in *Alaska Fur Gallery* was confronted with the very issue now before this Court in which, pursuant to a plan, the assets of one non-debtor entity were being offered for distribution under a the plan to pay claims of the debtor plan proponent's creditors, leaving the transferor with an inability to meet its creditors' claims.  *See id*.  The court found that the proposed transfer had all the "hallmarks of a fraudulent transfer" under state law and was therefore void.  *See id*.

---

[9]    *See Debtors' Omnibus Tax Memorandum* [D.I. 2296], filed October 14, 2014 at *8 n6 ("EFH has, in effect, a "net" negative basis of approximately $1.7 billion in its Oncor interest. Said differently, if Oncor Holdings sold its interest in Oncor for $1, EFH would recognize gain of approximately $1.7 billion on such sale").

The court then addressed the permissibility of the transfer under the relevant plan confirmation

provisions and reasoned as follows:

> Subsection 1123(a)(5)(B) would permit [the debtor plan proponent] to transfer its
> property to another entity. The [property at issue] is not property of the [debtor
> plan proponents'] estate, however. The fact that the [proposed transferor] is itself
> in chapter 11 does not alter my conclusion. . . . . [The proposed transferor] has
> not filed a plan in accordance with § 1123 seeking to transfer the [non-debtor]
> property to [the debtor plan proponent]. Nor have [the parties] moved for
> consolidation of the two bankruptcy estates. State law precludes this transfer, and
> there is nothing in § 1123 which would permit [the debtor plan proponent] to
> circumvent this. Accordingly, the debtor's fourth amended plan violates §
> 1129(a)(3). *See id.*

The facts and issues before the court in *Alaska Fur Gallery* are similar to those before the

Court under the Current Plan. The Current Plan is predicated on a fraudulent transfer that seeks

to transfer non-estate assets under a plan. As in the *Alaska Fur Gallery* case, the proposed plan

violates state law, 11 U.S.C. § 1123 and 11 U.S.C. § 1129 and cannot be confirmed.

## CONCLUSION

For the reasons set forth in the Objection, and as will be demonstrated at trial, the Court

should deny confirmation of the Current Plan.

Dated: Wilmington, DE    **CROSS & SIMON, LLC**
August 16, 2016

By: <u>Christopher P. Simon</u>
Christopher P. Simon (Del. Bar No. 3697)
105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
Facsimile: (302) 777-4224
csimon@crosslaw.com

- and –


NIXON PEABODY LLP
Amanda D. Darwin
Richard C. Pedone
George J. Skelly
100 Summer Street

14

Boston, Massachusetts 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300
adarwin@nixonpeabody.com
rpedone@nixonpeabody.com
gskelly@nixonpeabody.com

-and-

Christopher J. Fong
437 Madison Avenue
New York, NY 10022
Telephone: 212-940-3724
Facsimile: 855-900-8613
cfong@nixonpeabody.com

*Co- Counsel to American Stock Transfer & Trust
Company, LLC, as Indenture Trustee*