1  Q    And so to the best of your recollection did you
2  participate in the development of this board deck and the
3  presentation of it?
4  A    Yes, I did.
5  Q    And is that true for the other board deck as well that
6  you participated in the development of and the presentation
7  of the August 9th board deck?  That's 134.
8  A    Yes, I did.
9  Q    Thank you, sir.
10           MR. MCKANE:  Your Honor, with that I have no
11  further questions for this witness on direct.  I would so it
12  may be appropriate we would like to move into evidence
13  certain materials and to do that I think we have to have an
14  argument.
15           THE COURT:  Okay.  Let's do that then.
16           MR. MCKANE:  All right.
17           Your Honor, I'll tell you right now the documents
18  that are in dispute are board presentations, the two board
19  presentations that we addressed that's Exhibit 134,
20  Exhibit 321, which is the one from October of 2014, and then
21  the exhibits that were used in the written direct and in the
22  line of presentations, Exhibits 48 and 57.  These are the
23  presentations in July that were made, you know, with regards
24  to the ancillary agreement as well as the presentations in
25  February about the evaluation of alternatives, and then in

1  late April in advance of filing of the board presentation.

2  Your Honor, these are absolutely admissible

3  business records of the board. Developed by the company and

4  their advisors presented to the board.

5  And I cannot say how offensive it is for this

6  debtor to be accused of violating their duty of care. Their

7  entire opening was about how we violated our duty of care by

8  not keeping this board informed, by not telling them what

9  was going on.

10  These are the presentations that reflect the

11  information that was presented to the EFH board, to the TCEH

12  board, to the EFIH board as they evaluated and exercised

13  their business judgment. Under Delaware way and Texas law

14  there is no doubt that these are business records and they

15  are unequivocally admissible. They go to the core of the

16  debtors' defense to this challenge of the exercise of their

17  duty of care.

18  THE COURT: Okay. Mr. Pedone?

19  MR. PEDONE: Your Honor, to be specific Richard

20  Pedone for American Stock Transfer, EFH indenture trustee.

21  I believe that we're arguing over the exception

22  continued Rule 8036, records of regularly conducted

23  activity.

24  The core of that rule is when you take something

25  such as a minute, and we have no objections to the minutes

1  of the meetings which were kept in the regular course coming
2  in.
3          Attached to the minutes, we've heard from the
4  witness, are board decks that were prepared ahead of time by
5  the meetings.  Other witnesses have testified that they
6  participated in connection with preparation of these
7  materials.  Counsel participated in preparation with the
8  board decks.
9          These are not records of what occurred at the
10 meeting, they're presentations.
11         Excuse me for one second.
12         And it's worth looking at what some of these
13 contain.
14         If we were to turn to DX-48, page 11 of 66 we see
15 that there's a discussion of what was contained in
16 Mr. Stewart's expert report.  We're getting statements
17 concerning Mr. Stewart's expert report coming in through
18 something that is supposedly a business record.
19         If you turn further down you see further
20 statements concerning Mr. Stewart's report.
21         In other parts of the presentation we see on page
22 35 of 166 statements concerning what the T-Firsts might do.
23         We see statements at the top of that page
24 concerning what the T-First lenders have in fact done.
25         This is ripe with hearsay and multiple layers of

1    hearsay, and if we simply follow through the foundation laid

2    out for when something needs to be in a business record it's

3    not here.  The witness's statements were they were not

4    prepared at the time.

5              Your Honor, it is their burden to establish it's a

6    business record, they could have proffered testimony as to

7    what part was created at what time, but they haven't.  There

8    are multiple layers in hearsay.

9              Further, Your Honor, many of these board decks

10   that they're seeking to introduce have extensive redactions

11   making the full comprehension of what this declarant, which

12   declarant it was you can't actually tell, said.

13             Finally, none of the declarants, to the extent

14   there are legal conclusions contained in here, clearly won't

15   be available for cross-examination.

16             And, Your Honor, that's the summary of my

17   objection.  Thank you.

18             And again, it's the four decks, and I might add at

19   certain points in some of the board decks there may be build

20   ups of financial information which is based upon business

21   records.  For example, some of the Excel spreadsheets may be

22   summarized.  We have no problems if those particular pieces

23   which are based on documents that we've had available to us

24   come in.  For example, if it's a summary of TCEH's financial

25   performance over time we can work around those issues.  It's

1    the clear out-of-court declarations that we have the issues

2    with.

3            Thank you.

4            MR. MCKANE:  Your Honor, just to be absolutely

5    clear, presentations that are developed on the days leading

6    up to a board meeting and then presented to the board so

7    they can understand the status of what's going on in the

8    case so they can then come to a conclusion and form their

9    business judgment to vote on the ancillary agreements,

10   that's what he's talking about in July.  He's talking about

11   the information that was presented.

12           He can say it's wrong.  He can cross-examine

13   Mr. Keglevic, you know, any of the people at the board

14   meeting, and if they -- you know, maybe we gave them the

15   wrong information, but this is a factual matter is what was

16   presented and it was developed leading up to the board

17   meeting absolutely so it could be presented at the board

18   meeting.

19           And then the minutes reflect what was said at the

20   board meeting.  Right?

21           The notion that this is not a business record is

22   inconceivable to me.

23           THE COURT:  Uh-huh.  I agree with the debtors, I'm

24   ready to rule.

25           MR. PEDONE:  Yeah.  May I make one more comment.

1            Your Honor, I have no problem with these coming in
2    for actually the record of what was presented, it's the
3    truth -- coming in for the truth of the statements contained
4    with them, which includes litigation argument as well.  It's
5    those statements of truth contained within the document, not
6    that there was a presentation of the document at the
7    meeting.
8            MR. MCKANE:  Your Honor, the reason why they come
9    in is this was said.
10           THE COURT:  Yeah.
11           MR. MCKANE:  Not whether it's true or not.  This
12   is what was said.
13           THE COURT:  Yeah, I think -- I mean I think maybe
14   you don't disagree.  I think it is certainly a business
15   record, and to the extent that it is prepared in connection
16   with the debtors' business presentation, review, and
17   discussion at the board meeting.
18           These kind of decks are routinely admitted into
19   evidence if they -- it says -- you know, if the board looked
20   at this, considered it in making its decision I think it's
21   relevant.  Whether any specific statement in there about
22   what the ad hoc committee first lien lenders may have said
23   or didn't say was true or not true I don't think is the
24   point of why you're putting them in.  You're putting them in
25   for purposes of showing that your board exercised its duty

1   of care.  It was given these presentations, it reviewed

2   these presentations in making its decision.

3           So what I'm hearing I think is that there's no

4   disagreement.

5           MR. MCKANE:  I think that's right at this point.

6           MR. PEDONE:  No, Your Honor, the business records

7   section allows the business record to come in for the truth

8   of what is asserted in the record.

9           THE COURT:  All right.

10          MR. PEDONE:  If this is being presented for a non-

11  hearsay purpose then we could get to an agreement on its

12  introduction.  But to the extent it is being offered for the

13  truth as a business record it does not qualify and there was

14  no agreement.  We continue our objection.

15          THE COURT:  All right.  Objection is overruled.

16          MR. PEDONE:  Thank you.

17          THE COURT:  I think it's a business record.

18          MR. MCKANE:  Thank you, Your Honor.

19          And with that I'm just going to make a statement

20  that they've been asked for a representation by counsel as

21  it relates to four Excel files that we're about to move into

22  evidence.  Those are DX-383, 384, 386, and 586.

23          And, Your Honor, I can represent that they were

24  made at or near the time by or from information transmitted

25  by a person at EFH with knowledge, that they were kept in