# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |
|  | ) **Re: Docket No. 9342** |

## DEBTORS' OBJECTION TO EFH INDENTURE TRUSTEE'S MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF THE COURT'S AUGUST 17, 2016 RULING ADMITTING BOARD DECKS INTO EVIDENCE

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 15051945v.1

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    I.    THE COURT SHOULD DENY THE INDENTURE TRUSTEE'S MOTION FOR CLARIFICATION BECAUSE THE COURT'S PRIOR RULING WAS CLEAR. ........................................................................... 4

    II.    THE COURT SHOULD DENY THE INDENTURE TRUSTEE'S ALTERNATIVE MOTION FOR RECONSIDERATION BECAUSE THE COURT'S RULING WAS NOT A MANIFEST ERROR OF LAW. ............ 5

        A.    The Board Presentations are Business Records. ........................................ 5

        B.    The Statements Contained in the Board Presentations Are Admissible. .................................................................................................. 9

CONCLUSION .................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Condus v. Howard Sav. Bank*,
 986 F. Supp. 914 (D.N.J. 1997) ...........................................................................................7, 8

*Harsco Corp. v. Zlotnicki*,
 779 F.2d 906 (3d Cir. 1985) .......................................................................................................5

*In re Hechinger Liquidation Trust*,
 298 B.R. 240 (Bankr. Del. 2003) ...............................................................................................8

*In re Smith Corona Corp.*,
 212 B.R. 59 (Bankr. D. Del. 1997) .............................................................................................5

*Morales v. Lukens, Inc.*,
 593 F. Supp. 1209 (S.D.N.Y. 1984) .........................................................................................10

*Resolution Trust Co. v. KPMG Peat Marwick*,
 No. 92-1373, 1993 WL 211555 (E.D. Pa. June 8, 1993) ...........................................................4

*United States v. Bansal*,
 663 F.3d 634 (3d Cir. 2011) ...................................................................................................5, 6

*United States v. Frazier*,
 53 F.3d 1105 (10th Cir. 1995) ....................................................................................................8

*United States v. Leo*,
 941 F.2d 181 (3d Cir. 1991) .....................................................................................................10

*United States v. Pelullo*,
 964 F.2d 193 (3d Cir. 1992) .......................................................................................................5

**Statutes**

11 U.S.C. § 105(a) ............................................................................................................................1

**Rules**

Fed. R. Bankr. P. 9017 .....................................................................................................................1

Fed. R. Evid. 701(a) .......................................................................................................................10

Fed. R. Evid. 801(c)(2) .....................................................................................................................9

Fed. R. Evid. 803 ..............................................................................................................................1

Fed. R. Evid. 803(6) .........................................................................................................................5

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this response (the "Objection") to the *EFH Indenture Trustee's Motion Pursuant to Bankruptcy Code Section 105(a), Bankruptcy Rule 9017 and Federal Rule of Evidence 803 for Clarification and/or Reconsideration of the Court's August 17, 2016 Ruling Admitting Board Decks into Evidence* [D.I. 9342] (the "Motion").

## INTRODUCTION

1. The Court should deny the EFH Indenture Trustee's (the "Indenture Trustee") Motion for clarification and/or reconsideration. The Indenture Trustee seeks clarification of a crystal clear ruling by this Court: presentations prepared for and presented to the Debtors' Boards of Directors (the "Board Presentations") are admissible under the business records exception to the rule against hearsay. The Indenture Trustee does not object to these Board Presentations because it doubts the veracity of information contained within them—rather, it aims to preclude the Debtors from presenting evidence of the robust governance process that preceded their Plan of Reorganization. Its efforts should be rejected.

2. There is nothing in the Court's order to clarify. The Court directly addressed the Indenture Trustee's hearsay objection to these Board Presentations on the first day of the confirmation hearing, and explicitly overruled the objection.[2] The purpose of a motion for clarification is to resolve ambiguity resulting from a previous order. There is no ambiguity in the Court's ruling.

3. The Court should also deny the Indenture Trustee's alternative Motion for reconsideration because the Court's ruling was undeniably correct. Paul Keglevic, the Debtors' Chief Financial Officer and Co-Chief Restructuring Officer ("co-CRO"), testified that the Board

---

[2] *See* 8/17/16 Hr'g Tr. at 169:15-17 (The Court: "All right. Objection is overruled. . . . I think it's a business record.").

1

Presentations at issue were regularly developed by him and his co-CRO, other members of Management, and the Debtors' advisors for the purpose of updating the Joint Board of Directors on the Debtors' restructuring efforts.[3] The Board Presentations both (1) are business records, and (2) contain (i) *non-hearsay* statements summarizing the TCEH first lien creditors' negotiating posture admitted to show the impact of the statements on the listeners, (ii) compilations of information from the Debtors' business records and other evidence in the record, and (iii) evidence of information considered by the co-CROs in reaching an opinion on how to advise the Board.

4. As the Court is well aware, these restructuring efforts have been ongoing for over four years, have required regular analysis of the business, tax, and regulatory impacts of various plan-of-reorganization proposals, and have become a component of the Debtors' business. Records regularly prepared to update the Joint Board of Directors on these restructuring efforts—such as the Board Presentations at issue—are admissible as the Debtors' business records.

5. To the extent that these Board Presentations contain "layers" of information, the information within the Board Presentations is also admissible. The Indenture Trustee's primary focus—descriptions in the Board Presentations of the TCEH first lien creditors' negotiating posture—are not hearsay, for the reasons noted by the Court during the hearing. Evidence of the TCEH first lien creditors' position is admissible to show how the co-CROs chose to advise the Board, and what the Board reviewed in making its decisions—not for the truth of the TCEH first lien creditors' statements.

---

[3] Ms. Doré, the Debtors' other co-CRO, will testify to those same foundational facts.

2

**BACKGROUND**

6. During the first day of the confirmation hearing for the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9199] (the "Plan"), Mr. Keglevic testified on behalf of the Debtors, and described the development of the Plan and the Debtors' management's frequent updates delivered to the Debtors' Joint Boards of Directors.[4] Mr. Keglevic described his approach toward preparing for Board meetings:

> Ms. Doré and I and our advisors, Evercore and Kirkland, typically put our heads together to come up with an outline, run it by the disinterested director advisors, get agreement, direct our advisors to draft something. The draft was circulated among the disinterested director advisors, Ms. Doré and myself and our advisors for comments, and then we sent out the board materials.[5]

7. During his testimony, Mr. Keglevic identified a number of Board Presentations to the EFH Boards of Directors that he helped prepare during 2016 to provide updates on the restructuring.[6] Among other things, the Board Presentations included detailed financial and tax analyses of alternative plans, summaries of previous and anticipated discussions and negotiations with the key EFH, EFIH, and TCEH creditor groups, the terms of, and approval process for, the Ancillary Agreements, and updates on expected and received rulings from the IRS.

---

[4] *See* 8/17/16 Hr'g Tr. at 83:1-15.

[5] *Id.* at 83:25-84:6.

[6] *See id.* at 84:10-21 (discussing DX103 Feb. 25, 2016 Joint Boards Restructuring Update Presentation [EFH06323715]); *id.* at 143:20-144:1 (discussing DX057 July 22, 2016 Joint Boards Restructuring, Tax, and M&A Update Presentation [EFH06365720]); *id.* at 133:8-20 (discussing DX048 July 27, 2016 Joint Board Materials [EFH06365761]). Mr. Keglevic also identified during his testimony regarding a Board presentation that was given to the Joint Boards of EFH on August 9, 2015, regarding what became the confirmed plan of reorganization, *id.* at 162:7-17 (citing DX134 Aug. 9, 2015 Presentation to the Boards of Directors [EFH06002898]), as well as a Board presentation that was given to the Joint Boards on October 29, 2014. *Id.* at 162:22-25 (citing DX321 Oct. 29, 2014 Joint Boards Restructuring Update Presentation [EFH06125893]). Mr. Keglevic testified that he also participated in the development of these Board Presentations. *Id.* at 162:22-163:8.

8. Counsel for the Indenture Trustee objected to admission of these exhibits, arguing that the Board Presentations were inadmissible hearsay.[7] The Indenture Trustee conceded that some information in the Board presentations, such as financial information, was admissible, but asserted that the presentations themselves were not kept in the regular course of the Debtors' business, and that summaries in the presentations of, for example, the negotiating posture of the TCEH first lien creditors constituted inadmissible hearsay.[8]

9. The Court rejected the Indenture Trustee's argument, held that the Board Presentations constituted business records, and admitted the presentations into evidence.[9] In so ruling, the Court noted that the presentations were "prepared in connection with the Debtors' business presentation, review, and discussion at the Board meeting," and that "[t]hese kinds of decks are routinely admitted into evidence if they—it says—you know, if the Board looked at this, [and] considered it in making its decision."[10]

10. The Indenture Trustee's Motion followed two days later.

## ARGUMENT

### I. THE COURT SHOULD DENY THE INDENTURE TRUSTEE'S MOTION FOR CLARIFICATION BECAUSE THE COURT'S PRIOR RULING WAS CLEAR.

11. The Court should deny the Indenture Trustee's Motion for clarification because there is no need for clarification. "The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Resolution Trust Co. v. KPMG*

---

[7] 8/17/16 Hr'g Tr. at 164:19-165:2.

[8] *Id.* at 164:21-166:17.

[9] *See id.* at 169:15-17 (The Court: "All right. Objection is overruled. . . . I think it's a business record.").

[10] *Id.* at 168:15-20; *see also id.* at 168:24-169:2 ("You're putting them in for purposes of showing that your Board exercised its duty of care. It was given these presentations, it reviewed these presentations in making its decision.").

4

*Peat Marwick*, No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993); *see also In re Smith Corona Corp.*, 212 B.R. 59, 60 (Bankr. D. Del. 1997) (granting a motion for clarification where the court's previous ruling "could be misconstrued or misapplied by the appellate court").

12. Clarification is clearly not needed here. After considering the Indenture Trustee's argument that the Board Presentations were not business records, the Court expressly overruled the objection and admitted the presentations.[11]

## II. THE COURT SHOULD DENY THE INDENTURE TRUSTEE'S ALTERNATIVE MOTION FOR RECONSIDERATION BECAUSE THE COURT'S RULING WAS NOT A MANIFEST ERROR OF LAW.

13. The Indenture Trustee's Motion is alternatively styled as a motion for reconsideration. The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Here, the Court's ruling that the Board Presentations are admissible as business records was not an error of law, much less one that can be described as manifest.

### A. The Board Presentations are Business Records.

14. Federal Rule of Evidence 803(6) creates a hearsay exception for business records that: (1) were made at or near the time of the event the record describes; (2) were made by a person with knowledge of the record's contents; and (3) were kept in the regular course of business. *United States v. Bansal*, 663 F.3d 634, 666 (3d Cir. 2011). Rule 803(6) further provides that the above prerequisites may be established by the testimony of a "custodian or other qualified witness." *United States v. Pelullo*, 964 F.2d 193, 200 (3d Cir. 1992) (quoting Fed. R. Evid. 803(6)).

---

[11] *See id.* at 169:15-17 ("Objection is overruled. . . . I think it's a business record.").

15.     Mr. Keglevic's testimony established these foundational requirements for the Board Presentations.  First, Mr. Keglevic's testimony, and the Board Presentations themselves, demonstrate that they were made "at or near the time of the event[s] the record describes." *Bansal*, 663 F.3d at 666.  While drafted prior to the Board meeting, the presentations are used *at* the meeting, and guide the Board's discussion at those meetings.[12]  They also describe and summarize recent events for the Board's consideration.[13]  These presentations captured ongoing restructuring developments, and were made as these developments were taking place.

16.     Second, Mr. Keglevic's testimony demonstrates that the Board Presentations "[w]ere made by . . . person[s] with knowledge of the record's contents."  *Bansal*, 663 F.3d at 666.  Mr. Keglevic testified that he and Ms. Doré directed the Debtors' advisors to prepare the Board Presentations, drafts of which they reviewed to provide input.[14]  The Debtors' Co-CROs and advisors had knowledge of the contents contained in these presentations.

17.     Finally, Mr. Keglevic's testimony supports that the Board Presentations "[w]ere kept in the regular course of [the Debtors'] business."  *Bansal*, 663 F.3d at 666.  The Debtors have been in bankruptcy for over two years, and spent at least two years prior to their petition date preparing for the possibility of a bankruptcy filing.  The Debtors' Boards have received

---

[12] *See, e.g.*, DX049 July 27, 2016 Minutes of Meeting of Joint Boards [EFH06365754] ("Participants referred to the applicable materials provided in advance of and at the meeting.").  The Indenture Trustee does not oppose admission of the Board minutes. *See* 8/17/16 Hr'g Tr. at 164:25-165:2 ("[W]e have no objections to the minutes of the meetings which were kept in the regular course coming in.").

[13] For example, Mr. Keglevic testified that in January and February of 2016, the Debtors began considering alternative plans of reorganization due to continuing regulatory uncertainty with the confirmed Hunt Plan. 8/17/16 Hr'g Tr. at 82:24-83:8.  The Board presentation for the Joint Board meeting on February 25, 2016 then contemporaneously captured these developments. *See, e.g.*, DX103 Feb. 25, 2016 Joint Boards Restructuring Update Presentation [EFH06323715 at EFH06323718] ("Although the Debtors remain committed to Plan A, the Debtors have begun taking prudent and measured steps toward Plan B discussions.").

[14] *See* 8/17/16 Hr'g Tr. at 83:25-84:6 ("Ms. Doré and I and our advisors, Evercore and Kirkland, typically put our heads together to come up with an outline, . . . direct our advisors to draft something[,] [and then] [t]he draft [i]s circulated among the disinterested director advisors, Ms. Doré and myself and our advisors for comments, and then we sen[d] out the board materials.").

6

hundreds of updates over that time period, and Mr. Keglevic testified that he and other members of Management discussed restructuring updates with the Joint Board of Directors on biweekly calls.[15] The restructuring process has become part of the Debtors' regular course of business—and the restructuring Board Presentations are regularly prepared as part of the Board's oversight of those efforts.[16] That the Debtors' advisors participated in preparing the Board Presentations does not disqualify them from treatment as business records. *See Condus v. Howard Sav. Bank*, 986 F. Supp. 914, 915, 919 (D.N.J. 1997) (holding that a report prepared by an outside consultant for the Governance Committee of a Bank was a business record). Contrary to the Indenture Trustee's arguments, the Board Presentations were not "created expressly for the purpose of litigation." Motion ¶ 17. Rather, the presentations were created to keep the Board informed of the restructuring process and various plan proposals so that the Board could make informed business decisions for the Company.

18. The Indenture Trustee's trial strategy is now clear: the Indenture Trustee simultaneously argues that a heightened scrutiny standard should apply while also seeking to exclude any evidence of the Debtors' thorough decision-making process. The Indenture Trustee's sur-reply brief filed on the eve of trial argues that the Debtors should be held to a heightened standard of scrutiny and required to prove the entire fairness of the transactions proposed by the Debtors' Plan.[17] Assuming this standard applies—which it does not—the information contained in the Board Presentations is critical. The Indenture Trustee has focused nearly its entire case on the Debtors' governance process. It now seeks to exclude evidence of

---

[15] *See* 8/17/16 Hr'g Tr. at 83:1-16.

[16] *See id.* at 168:14-17 (Court: "I think it is certainly a business record . . . to the extent that it is prepared in connection with the debtors' business presentation, review, and discussion at the board meeting.").

[17] *Pretrial Brief of EFH Indenture Trustee Regarding Standard of Review Applicable to Approval of EFH 363 Transactions and Related Corporate Governance Matters* [D.I. 9315].

the Debtors' governance because it dislikes the contents. This plain gamesmanship should not be countenanced.

19.   Moreover, documents prepared to provide governance guidance are different from documents prepared for purposes of litigation, and courts have held that the former category constitutes business records. For example, the court in *Condus* held that reports prepared to assess a bank's credit administration process and the adequacy of the bank's loan loss reserves were business records. 986 F. Supp. at 915. In ruling that the reports were business records, the court reasoned that the bank's governance committee "intended to rely on the [reports] for business purposes independent of anticipated litigation." *Id.* at 919. Specifically, the reports were prepared "for the board's comfort to assure [themselves] that [they] were headed in a direction that was satisfactory." *Id.*[18]

20.   The one case cited by the Indenture Trustee is entirely inapposite. *See* Motion ¶¶ 16-17 (citing *In re Hechinger Liquidation Trust*, 298 B.R. 240 (Bankr. Del. 2003)). There, the proponent of the evidence had an advisor prepare a type of report that the proponent never made or kept in its ordinary course of business and then attempted to introduce the report as a business record. *In re Hechinger Liquidation Trust*, 298 B.R. at 242-43. The court held that such a document plainly failed to meet the definition of a business record. *Id.* Here, the Board Presentations were prepared to inform the Board and help them reach decisions as to significant transactions and agreements related to the Debtors' restructuring, including the evaluation of Plan alternatives, the filing of the Plan, the continued evaluation of the Plan, and the approval of Ancillary Agreements necessary for that Plan. This is the Board's ordinary practice, and the

---

[18]   *See also United States v. Frazier*, 53 F.3d 1105, 1110 (10th Cir. 1995) (holding that a regulatory compliance audit report prepared by an independent contractor was sufficiently trustworthy to be admitted as a business record because, even though there was ongoing litigation, the report "had business significance apart from its use in [the litigation]").

8

Board has considered more than 100 analogous presentations in the last four years. The Board Presentations have a well-established business purpose outside of litigation, and are admissible under the hearsay exception for business records.

### B. The Statements Contained in the Board Presentations Are Admissible.

21. The Indenture Trustee, in addition to challenging the business record status of the Board Presentations, also asserted that the presentations contain "multiple layers of hearsay."[19] As an example, the Indenture Trustee noted that the July 27, 2016 Board presentation contained statements concerning the TCEH first lien creditors negotiating position, specifically, that "[t]he TCEH First Lien Lenders have steadfastly rejected any argument that they should compensate EFH Corp. for this step-up in basis. . . . [And] [t]he TCEH First Lien Lenders would vigorously object to these alternative structures and would likely seek to file a standalone plan with a taxable separation."[20]

22. These statements from the July 27, 2016 Board presentation, and other statements like them, are not hearsay. To constitute hearsay, an out-of-court statement must be "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). Here, the Debtors offer these statements not for the truth of the TCEH first lien creditors' words, but to show that the EFH Boards of Directors considered these positions—whether true or not—in evaluating the terms of an alternative plan.

23. As this Court has repeatedly made clear, evidence of what the Board considered is not hearsay and is admissible. On the first day of the confirmation hearing, the Court ruled that evidence of Mr. Keglevic's understanding of the TCEH first lien creditors' negotiating position

---

[19] 8/17/16 Hr'g Tr. at 165:25-166:1.

[20] DX048 July 27, 2016 Joint Board Materials [EFH06365761 at EFH06365795]; see 8/17/16 Hr'g Tr. at 165:14-24.

did not constitute hearsay, because it was offered to demonstrate the impact on Mr. Keglevic, not the truth of the matter asserted:

> [I]t's not hearsay, okay, because it's not being offered for the truth of the matter about whether or not they actually offered this, et cetera. This goes to Mr. Keglevic's perception of what the status was and it goes to his decision-making ability. Now whether or not it's true or not isn't the issue. It's what he believed to be the case. So it's not hearsay. Overruled.[21]

24. Moreover, as the Debtors' Co-CRO, Mr. Keglevic formed opinions regarding the risks and benefits of different restructuring strategies, and informed the Board of his opinions, in part through the Board Presentations. The negotiating posture of the TCEH first lien creditors is precisely the information on which Mr. Keglevic would rely in developing these opinions. Under Federal Rule of Evidence 701(a), lay opinion testimony must be "rationally based on the perception of the witness." *United States v. Leo*, 941 F.2d 181, 193 (3d Cir. 1991) (finding no abuse of discretion in district court's admission of lay opinion testimony based on a witness's review of business records). Mr. Keglevic's personal discussions with representatives of the TCEH first lien creditors and their advisors form the basis of his opinion—which he shared with the Board through the Board Presentations—that he believed the TCEH first lien lenders would not pay consideration for use of the EFH Group's NOLs and would pursue a taxable transaction, making the statements independently admissible on that basis.

25. Indeed, the Indenture Trustee appears not to disagree.[22] But the Indenture Trustee has nonetheless continued to object, feigning confusion about the purpose for which the Court admitted the presentations. There is no confusion: the presentations are admissible in full as

---

[21] 8/17/16 Hr'g. Tr. at 96:19-97:2; *see also Morales v. Lukens, Inc.*, 593 F. Supp. 1209, 1212 (S.D.N.Y. 1984) ("Testimony of negotiations preceding an agreement generally is not proffered for the truth of the statements made during negotiations, but rather for the fact that the words as such were spoken.") (quotation omitted).

[22] *See* 8/17/16 Hr'g Tr. at 168:1-7 ("I have no problem with these [statements] coming in for actually the record of what was presented . . . .").

10

business records, and the information contained in them is admissible for multiple purposes. The Board Presentations are undoubtedly probative. Now, the Indenture Trustee twists the Federal Rules of Evidence in an effort to exclude the very evidence it insists the Debtors must be required to present to have their Plan confirmed. The Indenture Trustee's efforts should be rejected and the Motion denied.

## CONCLUSION

26.     For the forgoing reasons, the Court should deny the Indenture Trustee's Motion for clarification and/or reconsideration of the Court's August 16, 2016 ruling admitting the Board Presentations into evidence.

[*Remainder of page intentionally left blank*]

11

Dated: August 22, 2016
    Wilmington, Delaware

*/s/ Joseph C. Barsalona II*

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   collins@rlf.com
      defranceschi@rlf.com
      madron@rlf.com
      barsalona@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:   (212) 446-4800
Facsimile:   (212) 446-4900
Email:   edward.sassower@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:   (312) 862-2000
Facsimile:   (312) 862-2200
Email:   james.sprayregen@kirkland.com
      marc.kieselstein@kirkland.com
      chad.husnick@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession