**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>Jointly Administered<br><br>Re: D.I. 9190, 9200, 9201<br><br>Hearing Date:  September 19, 2016 at 10:00 a.m. |

**EFH INDENTURE TRUSTEE'S OBJECTION TO MOTION OF THE EFH/EFIH DEBTORS FOR ORDER (A) AUTHORIZING ENTRY INTO MERGER AGREEMENT, (B) APPROVING TERMINATION FEE, AND (C) AUTHORIZING ENTRY INTO AND PERFORMANCE UNDER PLAN SUPPORT AGREEMENT [D.I. 9190]**

American Stock Transfer & Trust Company, LLC, as successor trustee to The Bank of New York Mellon Trust Company, N.A. (in such capacity, the "EFH Indenture Trustee") under the indentures for certain notes (the "EFH Notes") issued by Energy Future Holdings Corp. ("EFH Corp."), by its undersigned counsel, hereby objects (the "Objection") to the Motion of the above-referenced Debtors seeking an order (A) Authorizing the Entry into the Merger Agreement, (B) Approving the Termination Fee, and (C) Authorizing Entry and Performance Under the Plan Support Agreement (the "Motion") [D.I. 9190] to the extent that: (i) it seeks authority to pay a termination fee; and (ii) the proposed order fails to properly apportion liability of any such fee between the estates.  Specifically, the EFH Indenture Trustee objects to the Motion to the extent it seeks approval and authorization, upon the occurrence of certain

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.

1

termination events described in the Motion and the Merger Agreement, for imposing on EFH Corp. and EFIH liability for a $275,000,000 Termination Fee.

As set forth below, the EFH Indenture Trustee objects to imposing this liability on EFH Corp. and EFIH as both unnecessary and unreasonable under the facts and circumstances of these cases.

By way of further objection, the EFH Indenture Trustee respectfully states as follows:

## BACKGROUND

1. The Merger Agreement and the Plan Support Agreement (the "PSA") each form an integrated component of the Debtors' overall plan and reorganization strategy related to the Debtors' proposed sale of their economic interest in Oncor Electric Delivery Company, LLC ("Oncor") to NextEra Energy, Inc. ("NextEra").

2. As the Debtors acknowledge, the marketing of their assets has been ongoing for more than two years and NextEra has been involved actively in that process for that entire time. Motion, ¶ 4.

3. Upon information and belief, there are several other parties that are extremely interested in a possible purchase of the Oncor assets.

4. The PSA sets forth a number of plan-related milestones that, if unmet, lead to termination of the PSA.  The PSA also contains other express termination events that are not tied to the milestones but that nevertheless provide for termination of the PSA upon notice (collectively with the milestone terminations, the "Termination Events").

5. Under the Merger Agreement, upon the occurrence of certain Termination Events, EFH Corp. and EFIH would become liable within five (5) days of such Termination Event for

payment of the Termination Fee, in the amount of $275 million, as an allowed administrative expense claim.  Specifically, Section 8.5 of the Merger Agreement provides in relevant part:

**Section 8.5 Effect of Termination and Abandonment.**

> (b) If this Agreement is terminated pursuant to this Article VIII and any alternative transaction is consummated (including any transaction or proceeding that permits the E-Side Debtors that are the direct or indirect owners of Oncor Holdings to emerge from the Chapter 11 Cases) pursuant to which neither Parent nor any of its Affiliates will obtain direct or indirect ownership of 100% of Oncor Holdings and Oncor Holdings' approximately 80% equity interest in Oncor, then, subject to the approval of the Bankruptcy Court, **no later than five (5) days** following the consummation of such alternative transaction, the Company and EFIH shall pay to Parent the Termination Fee (as defined below), by wire transfer, as directed by Parent, in immediately available funds;
>
> \* \* \*
>
> The Termination Fee, **to the extent approved by the Bankruptcy Court**, shall **constitute an administrative expense** of the Company and EFIH under the Bankruptcy Code. "Termination Fee" shall mean an amount equal to $275,000,000, inclusive of all expense reimbursements, including reasonable and documented professional fees of Parent and Merger Sub; provided that, in no event shall such claim be senior or *pari passu* with the superpriority administrative claims granted to the secured parties pursuant to the DIP Facility (as in effect on the date hereof).

Merger Agreement, Section 8.5 (emphasis supplied).

## OBJECTION

6. The Debtors are seeking authority to pay of the Termination Fee as an administrative expense.  Merger Agreement, Section 8.5(b).  Approval of the Merger Agreement and payment of the Termination Fee are expressly conditioned on approval by this Court. Merger Agreement, Section 8.5(b).

7. Under the applicable Third Circuit standard, and particularly where the Debtors are seeking payment of the Termination Fee as an administrative expense, the Debtors bear the burden of demonstrating under 11 U.S.C. § 503 that the Termination Fee is necessary to preserve

3

value for the estates. Here, there is no showing that the Termination Fee is necessary to preserve value for the Debtors' estates.

8. The Termination Fee is analogous to bid protections afforded to a qualified and Court-approved stalking horse bidder. While the Third Circuit Court of Appeals has held that bid protections may be permissible as administrative expenses when shown to preserve the value of a debtor's estate, the party supporting the protection must show that such bid protections are *required* to induce an initial bid. *See In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *In re O'Brien Energy Systems, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999)(emphasis added).[2]

9. When, for example, the bidder that is the subject of the proposed protection would have bid anyway, courts have held that the bid protections are not an actual and necessary expense of preserving the estate and are therefore impermissible under § 503(b) of the Bankruptcy Code. *Reliant Energy*, 594 F.3d at 206 ("[A] break-up fee is not 'necessary to preserve the value of the estate' when the bidder would have bid even without the break-up fee.") (citing *O'Brien*, 181 F.3d at 535). Here, other than conclusory statements in the Motion and the Declaration of William O. Hiltz in Support of the Motion (the "Hiltz Declaration") [D.I. 9191], there is no demonstration that the Termination Fee was necessary to induce NextEra to submit its bid. Where, as here, (i) the bidder has been involved for more than two years in negotiations and (ii) there appears to be a real opportunity for a robust auction for the Debtors'

---

[2] The EFH Indenture Trustee notes that the case law cited by the Debtors in the Motion is inapposite. For example, the Debtors cite to Third Circuit cases that address the use of estate property under § 363—i.e. *In re Martin*, 91 F.3d 389 (3rd Cir 1996)—rather than the reasonableness of breakup fees under § 503. The cases the Debtors cite examining the scope of breakup fees—i.e. *In re AMR Corp.*, Bankr. Case No. 11-15463 (SH) (Bankr. SDNY May 10, 2013)—are cases from outside of the Third Circuit. In general, the cases cited by the Debtors are neither on point nor binding on the Court when evaluating the Termination Fee.

assets, the Debtors should be made to demonstrate how acquiescing to payment of a $275,000,000 administrative expense claim preserves value to the estates.

10. In the Motion, the Debtors argue that the Termination Fee represents 1.5% of the total "implied" enterprise value of the transaction of $18.3 billion. Motion, ¶ 41; *see also* of Hiltz Declaration, ¶18; Declaration of David Ying in Support of the Motion, ¶10 [D.I. 9192]. The Debtors urge a finding that the amount of the Termination Fee—purported to be 1.5% of the "implied" enterprise value realized by the transaction with NextEra—is reasonable based on fees awarded by courts in other cases. Motion, ¶ 41. At a minimum, the Debtors bear the burden of supporting the valuation that supports the requested Termination Fee.

11. The Court is not required to defer to the judgment of a debtor-in-possession when analyzing the propriety of a break-up fee or expense reimbursement in a bankruptcy context. *See O'Brien*, 181 F.3d at 535. Under the applicable Third Circuit standard, break-up fees, like the Termination Fee, are only necessary if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited." *Id*. at 537.

12. The EFH Indenture Trustee strongly urges the Court to insure that the Debtors meet their burden before imposing such a significant administrative expense on these estates. To that end, the EFH Indenture Trustee requests that the Debtors meet with the EFH Indenture Trustee and, if appropriate, NextEra to better understand the sale process and the need for the Termination Fee. Where, as here, the role of the Official Committee of Unsecured Creditors has been reduced, there is a heightened need for direct creditor communication between the Debtors and other parties in interest.

13.     The EFH Indenture Trustee looks forward to working with the Debtors and the potential purchaser to resolve this Objection ahead of any hearing on the Motion.

14.     Based on the Motion and supporting affidavits alone, the Termination Fee should not be approved.  The Debtors have not demonstrated sufficiently that such a "bid protection" is necessary to preserve the value of the estate.  To the extent the Court approves the Termination Fee, it should be reduced to cover only actual, necessary documented value provided and expenses incurred, and payment of any such fee should only be authorized at closing of an alternative transaction to another buyer, not within five days of termination of the Merger Agreement as proposed.  Finally, any order that enters must address which estate will be liable for what portion of any potential fee.  EFH Corp. should not bear the full liability for any allowed fee.

[*remainder of page left intentionally blank*]

WHEREFORE, based on the foregoing, the EFH Indenture Trustee respectfully requests that the Court deny the relief requested by the Motion and grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: Wilmington, DE<br>August 25, 2016 | **CROSS & SIMON, LLC**<br><br>By: /s/ *Christopher P. Simon*<br>Christopher P. Simon (Del. Bar No. 3697)<br>1105 North Market Street, Suite 901<br>Wilmington, Delaware 19801<br>Telephone: (302) 777-4200<br>Facsimile: (302) 777-4224<br>csimon@crosslaw.com<br><br>- and –<br><br>NIXON PEABODY LLP<br>Amanda D. Darwin<br>Richard C. Pedone<br>George J. Skelly<br>100 Summer Street<br>Boston, Massachusetts 02110<br>Telephone: (617) 345-1000<br>Facsimile: (617) 345-1300<br>adarwin@nixonpeabody.com<br>rpedone@nixonpeabody.com<br>gskelly@nixonpeabody.com<br><br>-and-<br><br>Christopher J. Fong<br>437 Madison Avenue<br>New York, NY 10022<br>Telephone: 212-940-3724<br>Facsimile: 855-900-8613<br>cfong@nixonpeabody.com<br><br>*Co- Counsel to American Stock Transfer & Trust Company, LLC, as Indenture Trustee* |