## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | Case No. 14-10979 (CSS) |
| Debtors. | Jointly Administered |
|  | **Hearing Date: Sept. 26, 2016 at 10:00 a.m. (ET)**<br>**Obj. Deadline: Sept. 16, 2016 at 4:00 p.m. (ET)** |

## MOTION OF ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC AND EFIH FINANCE, INC. FOR ENTRY OF AN ORDER (A) AUTHORIZING THE EFIH DEBTORS TO ENTER INTO A FIRST AMENDMENT TO THE EFIH DEBTOR-IN-POSSESSION CREDIT AGREEMENT, (B) AUTHORIZING ENTRY INTO AN ENGAGEMENT LETTER, (C) AUTHORIZING PAYMENT OF RELATED FEES AND EXPENSES, (D) AUTHORIZING THE USE OF CASH COLLATERAL, AND (E) MODIFYING THE AUTOMATIC STAY

Energy Future Intermediate Holding Company LLC ("EFIH") and EFIH Finance Inc. (together with EFIH, the "Borrower" or the "EFIH Debtors," and together with the other above-captioned debtors and debtors in possession, the "Debtors"), as debtors and debtors in possession,[2] file this motion (this "Motion")[3] for entry of an order (the "Order") (a) authorizing the EFIH Debtors to enter into the proposed first amendment (attached hereto as **Exhibit 1** to **Exhibit A**, the "Amendment") to that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement (as amended, restated, supplemented, or otherwise modified from time to time,

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] For the avoidance of doubt, only the EFIH Debtors are seeking authority herein.

[3] Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to such terms in the EFIH First Lien Credit Agreement or the Order as applicable. To the extent there exists any inconsistency between this Motion and the provisions of the EFIH First Lien Credit Agreement or the Order, the provisions of the applicable EFIH First Lien Credit Agreement or the Order, as applicable, shall control.

the "EFIH First Lien DIP Credit Agreement,"), dated June 19, 2014, by and among the EFIH

Debtors, as borrowers, the financial institutions from time to time party thereto, as lenders

(collectively, the "EFIH First Lien DIP Lenders"), Deutsche Bank AG New York Branch, as

administrative and collateral agent (in such capacity, the "DIP Agent"), and other agents and

entities from time to time party thereto; (b) authorizing entry into the related engagement letter

(a copy of which is attached hereto as **Exhibit B**, the "Engagement Letter"); (c) authorizing the

EFIH Debtors to pay any fees, premiums, and expenses incurred in connection with the

foregoing and transactions related thereto; (d) authorizing the use of cash collateral; and

(e) modifying the automatic stay.  In support hereof, the EFIH Debtors submit the *Declaration of*

*Chuck McMullan in Support of the Motion of Energy Future Intermediate Holding Company*

*LLC and EFIH Finance, Inc. for Entry of an Order (A) Authorizing the EFIH Debtors to Enter*

*into a First Amendment to the EFIH Debtor-in-Possession Credit Agreement, (B) Authorizing*

*Entry into the Engagement Letter, (C) Authorizing Payment of Related Fees and Expenses,*

*(D) Authorizing the Use of Cash Collateral, and (E) Modifying the Automatic Stay* (attached

hereto as **Exhibit C**, the "McMullan Declaration").  In further support hereof, the Debtors

respectfully state as follows.

**Jurisdiction and Venue**

1.     The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.   This matter is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2), and the EFIH Debtors consent pursuant to rule 9013-1(f) of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Bankruptcy Rules") to the entry of an Order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter Orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested in this Motion are sections 105, 361, 362, 363, 364, 502, 506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 3012, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rules 2002, 4001, and 9014.

**Preliminary Statement**

4.      The EFIH First Lien DIP Credit Agreement and the EFIH Debtors' use of EFIH Cash Collateral (as defined in the EFIH First Lien DIP Motion) expire on December 19, 2016. For the EFIH Debtors to maintain postpetition financing while they complete their chapter 11 reorganization—including a merger transaction, estimated to close in early 2017—the EFIH Debtors seek to (a) extend the maturity of the EFIH First Lien DIP Facility and use of EFIH Cash Collateral by approximately six months, from December 19, 2016 to June 30, 2017; (b) provide the EFIH Debtors the right to extend the EFIH First Lien DIP Facility for an additional six months, from June 30, 2017 to December 30, 2017; and (c) increase the principal amount of the EFIH First Lien DIP Facility by $75 million, from $5,400 million to $5,475 million.  The proposed Amendment provides the necessary extension of time, the option for an additional six-month extension, and an increase in the principal amount on reasonable, market-based terms.  Therefore, the Amendment is a sound exercise of the EFIH Debtors'

3

business judgment and the EFIH Debtors seek Court approval of the Amendment, substantially in the form attached hereto.

### Relief Requested

5.      By this Motion, the EFIH Debtors seek entry of the Order (a) authorizing the EFIH Debtors to enter into the Amendment to the EFIH First Lien DIP Agreement; (b) authorizing entry into the related Engagement Letter; (c) authorizing the EFIH Debtors to pay any fees, premiums, and expenses incurred in connection with the foregoing and transactions related thereto; (d) authorizing the use of cash collateral; and (e) modifying the automatic stay.

### Background

6.      On April 29, 2014 (the "Petition Date"), each of the EFIH Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The EFIH Debtors are operating their businesses and managing their properties as EFIH Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420], and an official committee of unsecured creditors of EFIH, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].  Further information regarding the EFIH Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the EFIH Debtors' first day motions [D.I. 98].

4

7.       ***Existing EFIH First Lien DIP Credit Agreement.***  On April 29, 2014, the EFIH

Debtors filed the *Motion of Energy Future Intermediate Holding Company LLC and EFIH*

*Finance, Inc. for Entry of (I) an Interim Order (A) Approving Certain Fees Related to*

*Postpetition Financing and Granting Such Fees Administrative Expense Priority and*

*(B) Scheduling a Final Hearing; and (II) a Final Order (A) Approving Postpetition Financing,*

*(B) Granting Liens and Providing Superpriority Administrative Expense Claims, (C) Authorizing*

*the Use of Cash Collateral, (D) Authorizing the EFIH First Lien Refinancing, (E) Authorizing*

*Issuance of Roll-Up Debt to the Extent Authorized by the Settlement Motion, (F) Determining the*

*Value of Secured Claims, and (G) Modifying the Automatic Stay* [D.I. 74] (the "EFIH First Lien

DIP Motion").  The EFIH First Lien DIP Motion requested authority for the EFIH Debtors to,

among other things, enter into the EFIH First Lien DIP Credit Agreement, use cash collateral,

and consummate the EFIH First Lien Repayment and the EFIH First Lien Settlement (as defined

in the EFIH First Lien DIP Motion).  On May 1, 2014, the Bankruptcy Court granted the relief

requested, approving certain commitment fees and other relief under the EFIH First Lien DIP

Motion [D.I. 289]; on June 6, 2014, the Bankruptcy Court entered an order approving the EFIH

First Lien DIP Motion on a final basis [D.I. 859].

8.       On February 12, 2015, the EFIH Debtors filed the *Motion of Energy Future*

*Holdings Corp., Energy Future Intermediate Holding Company LLC, and EFIH Finance Inc. for*

*Entry of (A) Order (I) Authorizing Partial Repayment of EFIH Second Lien Notes;*

*(II) Approving EFIH DIP Consent; and (III) Authorizing Consent Fee and (B) Revised EFIH*

*First Lien DIP Order* [D.I. 3527].  On March 10, 2015, the Bankruptcy Court entered an order

approving the EFIH second lien partial repayment and an amended order approving the EFIH

5

First Lien DIP Credit Agreement, revised to permit the EFIH second lien partial repayment (the "Existing DIP Order") [D.I. 3856].

9.      ***Amended and Extended EFIH First Lien DIP Credit Agreement.*** The EFIH First Lien DIP Facility (as defined in the EFIH First Lien Credit Agreement) matures on December 19, 2016. Based on the direction and timing of the EFIH Debtors' chapter 11 cases (the "Cases"), the EFIH Debtors anticipate that they will require debtor-in-possession financing beyond that date.

10.     On August 3, 2016, the EFIH Debtors filed a *Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9190]. Under the Agreement and Plan of Merger by and among NextEra Energy, Inc., EFH Merger Co., LLC, Energy Future Intermediate Holding Company LLC, and Energy Future Holdings Corp. (the "Merger Agreement") and the the joint plan of reorganization (as amended, supplemented, or modified from time to time, the "Plan"), certain regulatory approvals are conditions precedent to close. Moreover, under the plan support agreement (the "PSA"), a corresponding milestone is set forth to facilitate the expeditious implementation of the transactions contemplated by the Merger Agreement and the Plan. Under the PSA, the parties thereto, may terminate the PSA if the Plan has not become effective as to the EFIH Debtors by March 29, 2017, subject to a 90-day extension for certain required regulatory and tax approvals. Therefore the deadline for, and time estimated to, receive the required regulatory and tax approvals extends past the EFIH First Lien DIP Credit Agreement maturity of December 19, 2016.

11.     The EFIH First Lien DIP Facility contains a covenant requiring the EFIH Debtors to maintain at all times at least $150 million of liquidity. For the EFIH Debtors to comply with

6

such covenant through at least June 30, 2017, the EFIH Debtors seek to increase the principal amount of the EFIH First Lien DIP Facility by $75 million, from $5,400 million to $5,475 million.  Without an extension of the EFIH First Lien DIP Facility maturity and increase in principal amount, the EFIH Debtors, on the current timeline for regulatory approvals, would face an Event of Default under the EFIH First Lien DIP Credit Agreement.  A default would undoubtedly create a significant roadblock for the EFIH Debtors in completing their chapter 11 reorganization, diverting the necessary resources and attention from the transactions contemplated by the Merger Agreement and the Plan.  Therefore, the EFIH Debtors seek to extend the maturity of the EFIH First Lien DIP Facility to at least June 30, 2017 and also seek continued access to EFIH Cash Collateral (as defined in the EFIH First Lien DIP Motion) and the continued imposition of priming liens, in each case on the same terms as under the Existing DIP Order (as defined below).

12.    The Amendment contains the following material provisions:[4]

a.    ***Six-Month Extension of Scheduled Maturity Date.*** The parties have negotiated a six-month extension of the Maturity Date from December 19, 2016 to June 30, 2017.

b.    ***Additional Six-Month Extension Option.***    The parties have also negotiated an option to extend the maturity date by another six-months, from June 30, 2017 to December 30, 2017, as necessary.

c.    ***Increase in Principal Amount.***  The parties have agreed to increase the principal amount of the EFIH First Lien DIP Facility by $75 million, from $5,400 million to $5,475 million.

13.    The Amendment to the EFIH First Lien DIP Credit Agreement (and corresponding extension to use of cash collateral) is necessary to permit the EFIH Debtors to

---

[4]    This summary of the provisions of the Amendment is qualified in its entirety by the language of the Amendment itself.  In the event of any inconsistencies between this summary and the Amendment, the Amendment shall control.  Capitalized terms used in paragraph 12 that are not otherwise defined in the Motion shall have the meaning ascribed to such terms in the Amendment.

complete their chapter 11 reorganization whether pursuant to the transactions contemplated by the Merger Agreement and Plan or otherwise. The Amendment does not propose material changes to the other material terms of the EFIH First Lien DIP Credit Agreement or the Existing DIP Order, including the interest rate and collateral package.

14.     Therefore, the EFIH Debtors' entry into the Amendment is a sound exercise of their business judgment and in the best interests of the estates. The EFIH Debtors respectfully request that the Court enter the Order granting the relief requested in this Motion.

**The EFIH Debtors' Need for**
**Use of Cash Collateral and to Obtain Amended and Extended Financing**

15.     As of the the filing of this Motion, the EFIH Debtors have approximately $5.4 billion drawn under the EFIH First Lien DIP Credit Agreement. The Amendment will extend the EFIH First Lien DIP Credit Agreement without triggering an Event of Default therein; with an extension of the EFIH First Lien DIP Credit Agreement, EFIH Debtors should have the requisite liquidity to continue to fund the EFIH Debtors' restructuring-related expenses and the debtor-in-possession financing necessary to consummate the Merger Agreement on a timeline as set forth in the PSA.

16.     Upon the entry of the Order and execution of the Amendment and Engagement Letter, the maturity of the EFIH First Lien DIP Credit Agreement will be extended to June 30, 2017 and the EFIH Debtors will have access to an additional approximately $75 million of cash. The approval of the Amendment and Engagement Letter, with its favorable terms, will substantially enhance the EFIH Debtors' ability to confirm and/or approve the Plan. The benefits of the Amendment and Engagement Letter are highly apparent and any delay diminishes those benefits. Accordingly, the EFIH Debtors respectfully request that the Court enter the Order to continue the EFIH postpetition financing on terms favorable to the estates.

8

**The Aggregate Fees Associated with the DIP Credit Agreement**

17.    The aggregate fees payable in connection with the Amendment and Engagement Letter is estimated to fall within a possible range of approximately $16.575 million to $27.375 million, depending on lender participation.

**Basis for Relief**

I.    **The EFIH Debtors Should Be Authorized to Obtain Amended Postpetition Financing Through the Amendment and Engagement Letter.**

    A.    **Entry into the Amendment and Engagement Letter is an Exercise of the EFIH Debtors' Sound and Reasonable Business Judgment.**

18.    The Court should authorize the EFIH Debtors, as an exercise of the EFIH Debtors' sound business judgment, to enter into the Amendment and Engagement Letter and extend the debtor-in-possession financing, as necessary.

19.    Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances as described in greater detail below. Provided that an agreement to obtain secured credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its sound business judgment in obtaining such credit.  *See*, *e.g.*, *Trans World Airlines, Inc. v. Travelers Int'l AG* (*In re Trans World Airlines, Inc.*), 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment."); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a debtor in the selection of the lender."); *In re Barbara K. Enters., Inc.*, No. 08-11474, 2008 WL 2439649, at *14 (Bankr. S.D.N.Y. June 16, 2008) (explaining that courts defer to a debtor's business judgment "so long as a request for financing does not 'leverage the bankruptcy process' and

9

unfairly cede control of the reorganization to one party in interest."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[c]ases consistently reflect that the court's discretion under section 364 [of the Bankruptcy Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."); *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (noting that approval of postpetition financing requires, inter alia, an exercise of "sound and reasonable business judgment.").

20.     Specifically, to determine whether the business judgment standard is met, a court is "required to examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code.") (citation omitted).

21.     The EFIH Debtors' execution of the Amendment and Engagement Letter is an exercise of their sound business judgment that warrants approval by the Court.  The Amendment and Engagement Letter, together, enable the EFIH Debtors to extend postpetition debtor-in-possession financing through June 30, 2017, with an option to extend further through December 30, 2017 for an additional fee.  The EFIH Debtors negotiated the Amendment and Engagement Letter with the EFIH First Lien DIP Lenders in good faith, at arm's length, and with the assistance of their advisors to obtain the required postpetition financing on terms most favorable to the EFIH Debtors.  Based on the advice of counsel and other professionals, and the

10

EFIH Debtors' own analysis, the EFIH Debtors have determined in their sound business judgment that the Amendment and Engagement Letter provides the necessary extension of financing on more favorable terms than any other reasonably available alternative.

22.    Entry into the Amendment and Engagement Letter will allow the EFIH Debtors to extend and increase the amount of financing, preventing an event of default under the EFIH First Lien Credit Agreement and funding the EFIH Debtors through these Cases, allowing time to consummate the Merger Agreement.  Thus, entry into the Amendment and Engagement Letter is an exercise of the EFIH Debtors' sound business judgment.

**II.    The Payment of Fees is Appropriate.**

23.    The EFIH Debtors have agreed, subject to Court approval, to pay certain fees to the EFIH First Lien DIP Lenders and the DIP Agent in exchange for such lenders providing, and the DIP Agent arranging, the Amendment.  The fees the EFIH Debtors have agreed to pay to the EFIH First Lien DIP Lenders and the DIP Agent, together with the other provisions of the Amendment and Engagement Letter, represent the most favorable terms to the EFIH Debtors on which the EFIH First Lien DIP Lenders and the DIP Agent would agree to make the Amendment available.  When assessing the appropriateness of the Amendment fee, it is important to consider the EFIH Debtors' alternatives for maintaining the EFIH First Lien DIP Facility.  If not for the Amendment, the EFIH Debtors would likely be left with no recourse other than running a full request-for-proposal process with new lenders for a refinancing of the EFIH First Lien DIP Facility.  *See* McMullan Decl. ¶ 10.  The fees associated with running a full financing process for a new EFIH First Lien DIP Facility are likely to be substantially higher than the fee contemplated by the Amendment.  *Id.*

24.     The EFIH Debtors considered the fees associated with the Amendment and alternatively, fees associated with a refinancing, when determining in their sound business judgment that the Amendment and Engagement Letter constituted the best terms on which the EFIH Debtors would obtain the postpetition financing necessary to continue their operations and prosecute their chapter 11 cases.  The EFIH Debtors believe that paying these fees in order to obtain the Amendment is in the best interests of the EFIH Debtors' estates, creditors, and other parties in interest.  Accordingly, the Court should authorize the EFIH Debtors to pay the fees provided under the Amendment and Engagement Letter in connection with entering into those agreements.

**III.     The Amendment and Engagement Letter Was Negotiated in Good Faith and Should Be Afforded the Protection of Section 364(e) of the Bankruptcy Code.**

25.     Section 364(e) of the Bankruptcy Code protects a good faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal.  Specifically, section 364(e) provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

26.     The Amendment and the Engagement Letter was negotiated in good faith and at arm's-length among the EFIH Debtors, the EFIH First Lien DIP Agent, and the EFIH First Lien DIP Lenders, and all of Amendment obligations will be extended by the EFIH First Lien DIP

12

Lenders in good faith (as such term is used in section 364(e) of the Bankruptcy Code). No consideration is being provided to any party in connection with the Amendment other than as described in this Motion, the Amendment, and the Engagement Letter. Moreover, the Amendment and Engagement Letter has been extended in express reliance upon the protections afforded by section 364(e) of the Bankruptcy Code. The DIP Agent and EFIH First Lien DIP Lenders are entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Order or any provision thereof is vacated, reversed, or modified on appeal or otherwise. *See* 11 U.S.C. § 364(e). Accordingly, the DIP Agent and the EFIH First Lien DIP Lenders are "good faith" lenders within the meaning of section 364(e) of the Bankruptcy Code.

**IV.    Modification of the Automatic Stay Provided Under Section 362 of the Bankruptcy Code is Appropriate Under the Circumstances.**

27.    The Order will contain provisions that provide that the automatic stay imposed under section 362(a) of the Bankruptcy Code be lifted to extent necessary to effectuate all of the terms and provisions contained therein, including, without limitation: (a) permit the EFIH Debtors to incur all liabilities and obligations to the EFIH First Lien DIP Lenders under the Amendment, Engagement Letter, and the Orders; and (b) authorize the EFIH Debtors to make payments, and the EFIH First Lien DIP Lenders to retain and apply payments made, in accordance with the terms of the Orders. Stay modification provisions of this sort are ordinary and usual features of debtor in possession financing facilities and, in the EFIH Debtors' business judgment, are reasonable under the present circumstances. Accordingly, the Court should modify the automatic stay to the extent contemplated under the Amendment, Engagement Letter, and the proposed Order.

13

## Waiver of Bankruptcy Rules 6004(a) and 6004(h)

28.     To implement the foregoing successfully, the EFIH Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

29.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as

14

indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under:    (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; and (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

30.    No prior request for the relief sought in this Motion has been made to this or any other court.

15

WHEREFORE, the EFIH Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**.

Wilmington, Delaware
Dated:  September 2, 2016

*/s/ Joseph C. Barsalona II*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
Joseph C. Barsalona II (No. 6102)
920 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:           collins@rlf.com
                     defranceschi@rlf.com
                     madron@rlf.com
                     barsalona@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900
Email:           edward.sassower@kirkland.com
                     stephen.hessler@kirkland.com
                     brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:           james.sprayregen@kirkland.com
                     marc.kieselstein@kirkland.com
                     chad.husnick@kirkland.com
                     steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*

16