# Kazan, McClain, Satterley & Greenwood ℠

**A Professional Law Corporation**

Steven Kazan
David M. McClain
Joseph D. Satterley
Gordon D. Greenwood
Philip A. Harley (1947-2009)
Denise Abrams
Justin Bosl
Ted W. Pelletier
Denyse F. Clancy
John L. Langdoc

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, CA 94607
(510) 302-1000 • (510) 835-4913 • www.kazanlaw.com

Of Counsel
Frances C. Schreiberg

Andrea Huston
Petra DeJesus
Ian A. Rivamonte
Matthew L. Thiel
Michael T. Stewart
William F. Ruiz
Mark A. Swanson
Joseph Nicholson
Ryan Harris
Rachel Berkness
Henry A. Steinberg
Simarjit Kaur
Donovan Hunter
Arcelia Hurtado
Denise R. Smith

## **CONFIDENTIAL**[1]

September 6, 2016

**VIA HAND DELIVERY**

The Honorable Christopher S. Sontchi
U.S. Bankruptcy Court
District of Delaware
824 Market Street, 5th Floor
Wilmington, DE 19801

Re:   *In re Energy Future Holding Corp., et al.*
       **Case No. 14-10979**

Judge Sontchi:

Pursuant to Your Honor's Order Establishing Discovery Procedures, Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy (respectively, "Fenicle" and "Fahy"), both members of the EFH Official Committee of Unsecured Creditors ("Committee"), but acting herein on their own behalf and on behalf of other asbestos claimants, by and through their undersigned personal counsel respectfully submit this letter in lieu of a formal motion, seeking the entry of an order compelling the Debtors to comply with Fenicle and Fahy's First Requests for Documents (the "Requests").

**I.    SCOPE OF THE REQUESTS**

   **A.    Fenicle and Fahy's First Request for Production of Documents**

On May 11, 2016, Fenicle and Fahy served the subject Requests on the Debtors, attached hereto as **Exhibit A**. The requests at issue can be grouped into two distinct categories: (1) requests pertaining to the actual value of the intercompany receivables of the Asbestos Debtors[2],

---

[1] Pursuant to Paragraph 16 of the Confidentiality Agreement and Stipulated Protective Order on file in the above-captioned matter [D.I. 1833] ("Protective Order"), this correspondence contains materials designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by the Debtors.

[2] The "Asbestos Debtors" are: Energy Future Holdings Corporation and its subsidiaries LSGT Gas Company LLC, LSGT SACROC, Inc., EEC Holding, Inc., and EECI, Inc.

The Honorable Christopher S. Sontchi
September 6, 2016
Page 2

the validity of which is not disputed (Req. Nos. 3, 4, 7, 12); and (2) requests related to the Debtors' insurance coverage (Req. Nos. 8, 9,10).[3]

### 1.    Actual Value of Inter-Company Receivables

Requests related to the actual value of the Asbestos Debtors' receivables seek records of the subsidiaries known as the Asbestos Debtors, including board minutes, board committee minutes, promissory notes, etc. reflecting the relevant inter-company transactions along with periodic financial statements which should have recorded on a regular basis the receipt of interest credit reflected as an increase in the value of the assets.

### 2.    Insurance Coverage

The second focus of the requests is asbestos products liability and general liability insurance coverage information. The Debtors' responses to the discovery requests indicate that materials responsive to these requests were produced to the E-side creditors committee more than a year ago, but under a specific "professional eyes only" confidentiality restriction imposed by Debtors' counsel and designed expressly to prevent counsel to Fenicle and Fahy from ever seeing this information. As one would expect, committee counsel at Sullivan & Cromwell and Montgomery McCracken have scrupulously complied with this restriction. Obviously, insurance could be a valuable asset, of no use to anyone but asbestos creditors; information related to insurance coverage is critical for the evaluation of any final proposed resolution of the asbestos debtors' chapter 11 cases.

On June 3, 2016, the Debtors' served their Responses and Objections, attached hereto as **Exhibit B**. After several meet and confer sessions, on August 31, 2016, Debtors agreed to produce ▓▓▓▓▓▓▓▓▓▓▓▓. See correspondence from Michael P. Esser, Esquire, dated August 31, 2016, attached as **Exhibit C**. This agreement is vague; we seek assurance that we will receive relevant materials that have already been provided to the E-side committee, as well as any additional documents necessary to determine the value of the insurance policies and coverage remaining under those policies.

---

[3] A third, limited group of requests concerns the two indemnity agreements listed as liabilities on the SOFA of LSGT Gas Company LLC, dated November 1993 (Req. No. 5, 6, 9). Presumably, those indemnity agreements were designed to protect the purchasers from asbestos liabilities that otherwise could have attached to the assets they acquired. We know nothing more about the status of these agreements or their implications. Obviously, they could be a significant drain on assets available to present and future asbestos claimants. After extensive meet and confer efforts, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We reserve our rights with respect to these requests pending production of these documents. See, **Exhibit C**.

## II.  WHY WE NEED THE REQUESTED DOCUMENTS

There are several reasons to suspect that the listed value of the receivables on the Asbestos Debtors' SOFAs is significantly understated.  When Debtors commenced this case 28 months ago, in April 2014, the Asbestos Debtors filed sworn SOFAs stating that they had no tangible assets, no employees, no operations, and assets and liabilities almost entirely related to inter-company accounts payable and receivable totaling some $990 million.  The Asbestos Debtors were not insolvent, ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.[4]  During the confirmation hearings on the original plan, the Debtors made clear that the Asbestos Debtors' assets (i.e. the inter-company receivables) would remain available in perpetuity as a source of compensation for asbestos claimants, and that the Asbestos Debtors would remain subsidiaries of the acquiring entity, which was represented to be a solvent, credit-worthy company.  However, now that the E-side and T-sides have been separated and the T-side plan has been confirmed, it is still uncertain what assets will be available to compensate asbestos creditors for three reasons.

First, although the Asbestos Debtors' SOFAs are dated April 2014, evidence indicates that the values listed therein may be incorrect and decades out-of-date.  The SOFA for LSGT Gas Company LLC lists three current wholly owned subsidiaries: EEC Holdings, Inc., LSGT SACROC, Inc., and Humphreys & Glasgow Limited [UK].  According to the Debtors' SOFAs, Humphreys & Glasgow owes its parent LSGT Gas Company LLC $3 million, but in fact, LSGT Gas Company LLC apparently sold Humphrey's & Glasgow years earlier:  Jacobs Engineering Group Inc. issued a press release announcing its acquisition of this very company in 2011.[5] Further, that company has now been put into liquidation in the United Kingdom.  ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.[6]  The only logical explanation for the fact that Humphrey's & Glasgow still being listed as a LSGT Gas Company LLC subsidiary, is that the Debtors used old data to compile their SOFAs.[7]

Second, it appears that all of the Asbestos Debtors have been moribund for years.  These companies have no offices, no furniture, no computers, no motor vehicles, no employees, and were doing no business other than passing through the occasional asbestos personal injury complaint to an insurance company for defense and indemnity.  This fact also suggests that the values listed in the Asbestos Debtors' SOFAs are incorrect and out-of-date.  The Asbestos Debtors ceased operations in 1993 when they sold their assets to Raytheon and United Building and Engineering.  There are two ways a parent company can access funds locked up in a subsidiary: the parent can arrange for the subsidiary to declare a dividend to it as the shareholder,

---

[4] ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.

[5] See, **Exhibit E**, email to the U.S. Trustee, p. 2 n. 7. (August 19, 2015).

[6] ▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒▒.

[7] LSGT Gas Company LLC Schedules/Statements filed June 30, 2014, Dkt. 1272, p. 17.

The Honorable Christopher S. Sontchi
September 6, 2016
Page 4

which would be a taxable transaction; or the parent may enter into a loan agreement, borrowing those funds from the subsidiary. To pass muster with the Internal Revenue Service and demonstrate that this is not simply a disguised dividend, there has to be documentation of an arms-length agreement requiring payment, or at least crediting of interest.[8] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[9]. If these receivables went on the books in 1993, then interest should have been credited over the past 23-plus years. We know that the appropriate interest rate under the post Leveraged Buy-Out cash management facility has been 10.875%. It is unclear what the interest rate was in the years prior to the leveraged buyout. If we are correct that interest has not been appropriately credited to the $990 million inter-company cash lending pool, the Asbestos Debtors' listed asset value of these intercompany receivables is certainly significantly understated.

Finally, we note also that the creditors of LSGT Gas Company LLC, LSGT SACROC, Inc. and EEC Holding, Inc. are not represented by the E-side Creditors Committee,[10] which means no one is acting in a fiduciary capacity on behalf of the creditors of those Debtors. The bulk of the assets to which asbestos creditors must look for payment of their claims is tied up in those companies. EECI, Inc. has one asset—an $83.7 million dollar account receivable owed to it by LSGT Gas Company LLC.[11] LSGT Gas Company LLC owes another $502 million to LSGT SACROC, Inc. In turn, LSGT Gas Company LLC's most significant asset is a $560 million account receivable owed to it from EFH Corporation.[12]

The discrepancies described above call into question the actual value of the Asbestos Debtors' booked receivables, and the amounts of available insurance coverage, and thus the Asbestos Debtors' ability to satisfy asbestos claims under the New Plan. Therefore, Fenicle and Fahy propounded the subject Request for Production of Documents.

    A.    **The Debtors' Objections**

On June 3, 2016, the Debtors filed their Response to the First Document Requests (the "Response") based on two primary objections: (1) Debtors suggest that Fenicle and Fahy already possess information called for Request No. 10 i.e. information related to insurance coverage; and

---

[8] Internal Revenue Code Section 482

[9] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

[10] The E-Side Committee is composed of creditors of Energy Future Holdings Corp.; Energy Future Intermediate Holding Company, LLC; EFIH Finance, Inc.; and EECI, Inc. *See In re EFH Corp.*, 522 B.R. 520, 524 n.7 (Bankr. D. Del. 2015).

[11] EECI, Inc., Schedules/Statements filed June 30, 2014, Dkt. No. 1269, p. 13.

[12] LSGT Gas Company LLC, Schedules/Statements filed June 30, 2014, Dkt. No. 1272, p.18.

The Honorable Christopher S. Sontchi
September 6, 2016
Page 5

(2) the Requests seek privileged evidence, are overly broad, unduly burdensome, and unlikely to lead to the discovery of information pertinent to any objection that the asbestos creditors could raise at the confirmation hearing.[13]

### B.   Meet-and-Confer Efforts

Through a series of several phone calls and email exchanges, over several months, Fenicle and Fahy met and conferred with counsel for the Debtors in a good-faith attempt to resolve their differences in a timely manner.  Although Fenicle and Fahy provided more than adequate explanations as to relevancy of the Requests, the Debtors continued to respond by reiterating their initial objections.  Fenicle and Fahy explained to the Debtors that any documents related to insurance coverage were produced to the E-side creditors committee under a specific "professional eyes only" confidentiality restriction.  Fenicle and Fahy offered to accept a waiver of that eyes-only limitation so the committee counsel could share their work product with us as a first step to resolving this issue, but Debtors' counsel has refused.

Finally, on August 31, 2016, Michael P. Esser, of Kirkland & Ellis, .

### III.   ARGUMENT

Contrary to the Debtors' objections, the documents and information requested are highly relevant to the confirmation hearing, as they are necessary to determine the assets available to compensate asbestos claimants.  Fenicle and Fahy are neither in possession of, nor have access to the relevant information requested.

---

[13] See, **Exhibit B**.  The Debtors' objections that the Requests are overly broad, unduly burdensome, and seek privileged material are not specified or made with particularity, as required by Rule 26 and 37 of the Federal Rules of Civil Procedure.  Even more troublesome, the Debtors have yet to provide Fenicle and Fahy with a privilege log, which is required by the Discovery Order.  Fenicle and Fahy requests that the Court deem these objections waived.  *See Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 297 (E.D. Pa. 1980) (stating that "[g]eneral objections without specific support may result in waiver of objections").

[14] See, **Exhibit C**.

The Honorable Christopher S. Sontchi
September 6, 2016
Page 6

### A. Relevance of the Requests

In objecting to the Requests, the Debtors assert that Fenicle and Fahy's claims are unimpaired, and thus the requested discovery cannot be relevant to confirmation of the New Plan. In the Third Circuit, it is well recognized that "[t]he burden is placed on the debtor as plan proponent to demonstrate that the plan leaves the creditor's rights unaltered." *In re Energy Future Holdings Corp.*, 540 B.R. 109, 119 (Bankr. D. Del. 2015) (quoting *In re PPI Enterprises, Inc., 324 F.3d 197*, 203 (3d Cir. 2003)). Here, the Debtors cannot satisfy that burden.

The New Plan seeks to siphon off vast quantities of assets to the T-side. As will be demonstrated at the appropriate time, because the assets available to pay their claims will be diminished by the Plan, the asbestos creditors are not unimpaired, as the Debtors assert. The potential value of assets available to those claimants depends on what assets survive and what other claims will be made against those assets.[15] In order to determine what funds will remain to satisfy asbestos claimants under any New Plan, Fenicle and Fahy need information regarding the current value of the Asbestos Debtors' intercompany accounts receivables, what insurance coverage remains for asbestos claims, and whether any liabilities remain from the 1993 indemnity agreements.

Requests related to the current value of the Asbestos Debtors' account receivables are relevant because of the uncertainty surrounding the assets of the Asbestos Debtors' that will be available satisfy asbestos claims under the New Plan. If there is additional substantial insurance available to satisfy asbestos claims, for compensatory and punitive damages, this would make it easier for the Asbestos Debtors to satisfy all of the claims of the E-side asbestos creditors. We believe that responsive documents will be a relatively limited amount of paper – likely less than a banker's box of documents. Once these documents are reviewed, it is possible, although unlikely, that some focused depositions would be required, and in order to know who to depose and what questions to ask, we need these documents well before the approaching deadline for noticing depositions.

Requests related to insurance coverage are relevant to determine the extent to which there is additional insurance coverage available solely to asbestos claimants. Obviously, if there is remaining insurance coverage available to protect the Asbestos Debtors from asbestos liability claims, that is a critical asset; if there is enough insurance, the prior discussed issue concerning current value of the inter-company receivables becomes much less important. On the other hand, if there is no remaining insurance, then the value of the receivables becomes of overwhelming

---

[15] Moreover, because there has not been any estimation of the Debtors' total asbestos liability, the Debtors cannot demonstrate the amount of additional claims that will be asserted. As this Court is aware, the issue of whether the New Plan's purported discharge of unmanifested asbestos claims comports with due process is before the District Court on appeal. If that appeal is successful, the Asbestos Debtors' aggregate asbestos liability will increase significantly.

The Honorable Christopher S. Sontchi
September 6, 2016
Page 7

importance. In order to ascertain the extent of insurance coverage available to the Debtors for the asbestos liabilities, we request that all documents related to insurance coverage which were produced to the E-side creditors committee under a specific "professional eyes only" confidentiality restriction, be produced as well and that this confidentiality restriction be lifted

### B. Fenicle and Fahy Do Not Possess the Relevant Requested Information

The Debtors object to the Requests on the grounds that they already provided "an extraordinary amount of valuation-related material . . .", and to the extent Fenicle and Fahy already possess the information requested. But while the Debtors may have provided material relevant to the overall value of Oncor and EFH, they have not provided to Fenicle and Fahy bulk of the documents and information covered by the Requests.

The limited list of insurance policies the Debtors provided does not provide any information about the contents of the policies and the extent to which they may be exhausted. Moreover, Fenicle and Fahy have essentially no information regarding the current value of the $990 million in intercompany accounts receivables listed on the Debtors' SOFAs. The Debtors have yet to provide any current information showing the present value of those assets, after application of the intercompany cash management rules, which was supposed to be credited interest on a monthly basis. Even more important, Fenicle and Fahy have no way of testing whether the first-day balances were in fact accurate as of that date.

### IV. CONCLUSION

Fenicle and Fahy respectfully submit that the information they seek from the Debtors is clearly relevant, especially given the financial discrepancies found in the Asbestos Debtors' first-day SOFAs. No reasonable view of the withheld information permits a conclusion that the information sought has no possible bearing of the subject matter of the confirmation hearing. Moreover, Fenicle and Fahy explained to the Debtors their need for the documents specified in the Requests, and their inability to obtain the relevant information by any means other than discovery. Fenicle and Fahy therefore respectfully request a telephonic conference with Your Honor to address these issues at the Court's earliest convenience.

Respectfully submitted,

/s/ Steven Kazan                              .
Steven Kazan (admitted pro hac vice)

Enclosures
cc: All Participating Parties (via EFH_DS_Discovery_Service_List, with exhibits)

CONFIDENTIAL