**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

--------------------------------------------------------- x
In re:                                              :    Chapter 11
                                                    :
ENERGY FUTURE HOLDINGS CORP., *et al.*,  :    Case No. 14-10979 (CSS)
                                                    :
                Debtors.                            :    (Jointly Administered)
                                                    :
--------------------------------------------------------- x    **Related to Docket Nos. 9200, 8357**

**EFIH SECOND LIEN INDENTURE TRUSTEE'S
OBJECTION TO DEBTORS' DISCLOSURE STATEMENT**

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in its capacity as indenture trustee (the "**EFIH Second Lien Trustee**") for the EFIH Second Lien notes (the "**EFIH Second Lien Notes**" and the holders thereof, the "**EFIH Second Lien Noteholders**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011 (together with all supplements, amendments, and exhibits, the "**Indenture**") hereby submits this objection (the "**Objection**") to the debtors' (the "**Debtors**") *Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents* [Dkt. No. 8357] (the "**Disclosure Statement Motion**") and the *Disclosure Statement for the Third Amended Joint Plan of Reorganization* [Dkt. No. 9200] (the

"**Disclosure Statement**").[1]    In support of this Objection, the EFIH Second Lien Trustee

respectfully submits the following:[2]

**PRELIMINARY STATEMENT**

1.      As the Court has been previously informed, the EFIH Second Lien Trustee and

the ad hoc group of EFIH Second Lien Noteholders have been working constructively with the

Debtors and NextEra on the terms of a settlement that would enable  the EFIH Second Lien

Noteholders to support a modified Plan.  Those negotiations continue in earnest, and while the

EFIH Second Lien Trustee and the ad hoc group of EFIH Second Lien Noteholders are hopeful

that a final resolution can be reached, the parties have not yet executed definitive documentation.

As a result, the EFIH Second Lien Trustee is constrained to file this objection to the current

version of the Disclosure Statement on file.

2.      As currently drafted, the Disclosure Statement contains numerous ambiguous

provisions and fails to provide adequate information regarding the specifics of the treatment of

the EFIH Second Lien Notes (who are impaired under the Plan) and the ability of the EFIH

Second Lien Trustee and the EFIH Second Lien Noteholders to collect on their Allowed EIFH

Second Lien Note Claims.  Absent additional disclosure on each of these points, the Disclosure

Statement currently cannot be approved.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Disclosure Statement filed on August 5, 2016 [Docket No. 9200] and the Plan filed on August 23, 2016 [Docket No. 9374].

[2] The EFIH Second Lien Trustee has raised each of these issues with the Debtors and is continuing to work with the Debtors to revise the Disclosure Statement appropriately in advance of the Disclosure Statement hearing.

**OBJECTION**

I.     **The Disclosure Statement Lacks Adequate
       Information and Should Not be Approved**

3.     A disclosure statement must contain "adequate information," or "information of a kind, and in sufficient detail . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan[.]"  11 U.S.C. § 1125(a)(1).  At a minimum, a "disclosure statement should provide the . . .  creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distributions."  *In re Radco Props., Inc., 402 B.R. 666, 683 (Bankr.  E.D.N.C. 2009) (citations omitted).*

4.     Here, both the Plan and the Disclosure Statement provide insufficient information with respect to numerous issues impacting the EFIH Second Lien Note Claims, including: (i) how and when the EFIH Second Lien Note Claims will receive their distributions, (ii) the treatment and payment of the Makewhole Claim for the EFIH Second Lien Notes, (iii) the impairment of the EFIH Second Lien Note Claims, and (iv) the manner in which the fees and expenses of the EFIH Second Lien Trustee will be paid under the Plan.

A.     **Inadequate Disclosure relating to the EFH/EFIH Distribution Account**

5.     While the Plan purports to provide for payment in full of the EFIH Second Lien Note Claims, Article VI.A of the Plan creates substantial ambiguity as to when and how such repayment will occur.  Specifically, the Plan contemplates that the "EFIH Second Lien Note Repayment Amount" (defined to be the amount as allowed under the treatment section) will be deposited into an EFH/EFIH Distribution Account.  Neither the Plan nor the Disclosure Statement, however, has any information regarding *when* distributions will be made to EFIH Second Lien Noteholders from this distribution account.   Nor does the Plan provide for the continued accrual of interest on any distributions placed in the EFH/EFIH Distribution Account

at the contract rate of interest, until such time as distributions are actually made to EFIH Second

Lien Noteholders, as required under Article 12 of the EFIH Second Lien Notes Indenture.[3]

6.      The EFIH Second Lien Trustee reserves all rights to object to the Plan on the

grounds that it is inappropriate to place the EFIH Second Lien Note Repayment Amount into this

separate distribution account and/or withhold distributions from the EFIH Second Lien

Noteholders without reason.  At a minimum, however, the mechanics of distributing the EFIH

Second Lien Note Repayment Amount must be clearly disclosed and explained in the Disclosure

Statement, and the Plan should be clarified to provide for the continued accrual of interest on any

funds placed in the EFH/EFIH Distribution Account until EFIH Second Lien Noteholders are

paid such amounts.

**B.      No Disclosure of Elimination of Liens and other Impairments**

7.      Under the terms of the Plan, the EFIH Second Lien Notes are deemed impaired

under the Plan and are entitled to vote.  Pursuant to section 1124 of the Bankruptcy Code, a

claim is impaired if it alters the "legal, equitable, and contractual rights to which such claim or

interest entitles the holder."  The Disclosure Statement, however, fails to provide any

information as to how the EFIH Second Lien Notes are impaired under the Plan or the effect of

the impairment and the means of collection on allowed EFIH Second Lien Note Claims.

8.      Through discussions with the Debtors, the EFIH Second Lien Trustee understands

that the "impairment" arises because the liens securing the EFIH Second Lien Notes will be

released on the Effective Date and the notes will be cancelled.  The Debtors provide no legal

basis for doing so without the consent of the EFIH Second Lien Noteholders, and it is not clear

---

[3] To the extent this clarification is not made in the Plan, the failure to provide for continuing interest on the EFIH Second Lien Notes when the Debtors have placed the EFIH Second Lien Notes Repayment Amount into the EFH/EFIH Distribution Account would constitute a significant impairment that would need to be prominently disclosed with an explanation for the basis for withholding such interest.

4

how the Debtors will be able to "cram-down" a rejecting class of EFIH Second Lien Noteholders while still releasing their liens.  To provide holders of EFIH Second Lien Note Claims with the requisite adequate information to vote on the Plan, the Disclosure Statement should clearly explain that the Debtors intend to release the EFIH Second Lien Noteholders liens on the Effective Date – as well as any other legal, contractual, or equitable rights being impacted under the Plan.[4]

9.    The Disclosure Statement should also identify the effect of any such impairment – including how the release of liens and cancellation of the EFIH Second Lien Notes impacts the EFIH Second Lien Trustee's ability to prosecute the pending appeal of the Makewhole Claim, defend the appeal in the Intercreditor Litigation and manage any distributions it may need to hold back on account of the Intercreditor Litigation.  The current Plan stripped the important language in the Original Confirmed Plan (which was negotiated between the Debtors and the EFIH Second Lien Indenture Trustee) that clarified that the EFIH Second Lien Notes and the EFIH Second Lien Indenture would remain in full force and effect post-Effective Date to pursue the Makewhole Claim and any other claims with respect to the pending litigation and appeals. Instead, the current Plan only  provides that the cancellation of notes will not impact the ability of indenture trustees to appear in the Chapter 11 Cases or any proceeding in which they are a party, provided this provision does not affect the discharge of claim or result in any expense or

---

[4] For example, the EFIH Second Lien Trustee has asserted other claims that may arise relating to the Intercreditor Litigation.  *See* Disclosure Statement at p. 79.  Article VII.A of the Plan provides that, except as specifically provided as Allowed Claims,  the Plan shall serve as the Debtors' objection to all other EFIH Second Lien Note Claims.  If the Debtors intend to use the Plan to affirmatively object to claims relating to the Intercreditor Litigation or other claims that may arise under the Indenture, the Disclosure Statement must be clarified to explain which claims are being objected to and on what basis.  Moreover, as explained in the EFIH Second Lien Trustee's objection to the Original Confirmed Plan [Docket No. 6614], it is not appropriate for the Plan to serve as a "deemed" objection  to any portion of the EFIH Second Lien Note Claims that are not Allowed or subject to a separate objection and the EFIH Second Lien Trustee reserves the right to raise this issue at confirmation.

liability to the Debtors. Plan § IV.I.[5] To the extent the Debtors intend, through the Plan, to abrogate the EFIH Second Lien Trustee's rights in the pending Intercreditor Litigation, the appeal of the Makewhole Claim, or any other claims or rights arising under the Indenture, this information needs to be directly and explicitly disclosed.

## C.    Payment of Makewhole Claims

10.    Under the Plan, the Reorganized Debtors have agreed to assume liability for payment of the EFIH Second Lien Note Makewhole Claims if those claims are allowed after the Effective Date. Plan § II.B.20 and VI.A.    Several provisions in the Plan and the proposed Ballots, however, eliminated key language from the Original Confirmed Plan and therefore could be read to undermine the EFIH Second Lien Trustee's appellate rights to continue to pursue the Makewhole Claim and collect on the Makewhole Claim if allowed after the Effective Date. Those provisions include:

- The injunction provision of the Plan, which enjoins the pursuit of any claims that are released or discharged under the Plan, without including the clarifying language from the Original Confirmed Plan that carved out the EFIH Second Lien Notes Trustee's pursuit of the appeal of the Makewhole Claims. *See* Original Confirmed Plan § VIII.F("The Plan shall not enjoin or otherwise prevent . . . the EFIH Second Lien Notes Trustee from prosecuting any appeal of any order with respect to any Makewhole Claims or any other Claims held by such parties.").

- The release language in the Ballots, which provides that holders who "(A) vote to accept the Plan, (B) fail to submit a ballot by the EFH/EFIH Voting Deadline, or (C) submit the ballot but abstain from voting to accept or release the Plan without checking the [appropriate] box" will be deemed to consent to the releases set forth in Article VIII.D of the Plan, potentially causing holders of EFIH Second Lien Note Claims to inadvertently release their Makewhole Claims and any other claims.

- The release of the liens and the cancellation of the EFIH Second Lien Notes, both of which, as discussed above, need to remain in place to ensure that the holders of

---

[5] The first sentence of the cancellation of the notes provision (IV.I) states "except as otherwise provided in the Plan (including . . . Article III.B.20 [treatment of EFIH Second Lien Notes]." Since Section III.B.20 was revised from the Original Confirmed Plan to strip out references to the EFIH Second Lien Indenture remaining in place, it is unclear what this reference is to.

the EFIH Second Lien Note Claims can collect on the Makewhole Claims when allowed, or some other means must be provided for their payment.

- The provisions regarding the treatment of any EFIH Second Lien Claims that are allowed as unsecured claims, which directly conflict with the allowance and payment of the EFIH Second Lien Makewhole Claim when ultimately allowed. While Class B6 Claims (General Unsecured Claims against the EFIH Debtors) arguably include any unsecured EFIH Second Lien Makewhole Claim, the allowance of Class B6 Claims derived from the EFIH Second Lien Notes actually excludes any Makewhole Claims.

11.     Each of these conflicting provisions must be reconciled for holders of EFIH Second Lien Note Claims to properly vote on the Plan.  And the extent the Debtors *are* trying to impede the EFIH Second Lien Trustee's right to pursue the appeal and collect on any allowed Makewhole Claim, this is directly relevant to how holders of EFIH Second Lien Note Claims will vote, and must be prominently disclosed in the Disclosure Statement.[6]  The Plan and the Disclosure Statement must also explain *when* the Makewhole Claim would be paid, if allowed after the Effective Date.  Presumably, it should be paid promptly after its allowance, but there is no reason for any ambiguity.

**D.     EFIH Second Lien Trustee Fees and Expenses**

12.     As part of the treatment of the EFIH Second Lien Note Claims, the Plan provides for the allowance of reasonable pre-and post-effective date fees of the EFIH Second Lien Trustee.  These fees are a secured claim which, under the EFIH Second Lien Indenture and section 506(b) of the Bankruptcy Code, must be paid in addition to the principal and interest owed on the EFIH Second Lien Notes.  However, there is no provision in the Plan (or Disclosure

---

[6] For example, in the section on "Treatment of Makewhole Claims" the Debtor includes language reserving their rights as to whether appeals of the confirmation order or any other order of the Bankruptcy Court are equitably moot.  Disclosure Statement at p. 15.  The Debtors should clarify whether the Debtors are specifically reserving their rights to argue that the EFIH Second Lien Makewhole Appeal could be equitably moot (which would directly contradict with its statement in the Plan that the Reorganized Debtors have agreed to assume liability for the Makewhole Claim if allowed after the Effective Date) and if so, include the EFIH Second Lien Trustee's position that the Plan cannot render the Makewhole Appeal equitably moot.

7

Statement) explaining when these fees will be paid.  The EFIH Second Lien Notes Trustee has proposed language that will allow for the Debtors to review the reasonableness of the EFIH Second Lien Trustee's fees and expenses after confirmation to ensure that majority of payments can be made promptly on the Effective Date.

13.    In addition, as the Plan provides for the EFIH Second Lien Trustee to receive reasonable post-Effective Date fees, the Debtors should make clear that the cancellation of the Notes (which the EFIH Second Lien Trustee has not consented to) does not impact the ability of the EFIH Second Lien Notes Trustee to seek payments for the post-Effective Date fees.  The EFIH Second Lien Trustee and its professionals will incur fees in the performance of its duties post-Effective Date – including in defending the pending appeal in the Intercreditor Litigation - and are legally entitled under the Indenture and the Bankruptcy Code to payment of their fees in performing these duties.[7]

## II.    Release Provisions in the Ballot

14.    As noted above, the release language in the Ballots provides that holders who fail to submit a ballot by the EFH/EFIH Voting Deadline or submit a ballot but abstain from voting to accept or reject the Plan without checking the appropriate box will be deemed to consent to the releases.  While it is not appropriate to deem EFIH Second Lien Noteholders who are impaired under the Plan but who do not affirmatively vote in favor of the Plan to be deemed to release any claims, the EFIH Second Lien Trustee recognizes this is a confirmation issue and reserves all rights with respect to the releases.  However, for disclosure purposes, this deemed consent conflicts with the explicit language in the Plan which provides that the EFIH Second Lien Trustee and EFIH Second Lien Noteholders will not be "Releasing Parties" except as

---

[7] The EFIH Second Lien Trustee understands that reasonable post-Effective Date fees will likely be paid from the EFH/EFIH Distribution Account and the Plan and Disclosure Statement should be revised to clarify this point.

otherwise agreed by a holder.  *See* Plan Article I.A.334.  The Ballots must be amended to cure this ambiguity and at a minimum, the Disclosure Statement must clarify under what circumstances the voting EFIH Second Lien Noteholders may be deemed a releasing party.

## III.   Voting Record Date

15.     After the hearing on August 16, 2016 when the Debtors asked to bifurcate the E-Side confirmation scheduling order from the Disclosure Statement Order, the EFIH Second Lien Trustee understood that the Debtors would be filing a revised Disclosure Statement Order to account for the fact that the hearing on the Disclosure Statement Order would be on September 19, 2016.  However, to date, the Debtors have yet to file the revised order and the Disclosure Statement Motion seeks to establish the Voting Record Date as September 1, 2016.

16.     Bankruptcy Rules 3017(d) and 3018(a) provide that the voting record date be the same day as approval of the Disclosure Statement, or another date fixed by the Court, "*for cause*, after notice and a hearing."  There is no reason to depart from the convention that the voting record date be the same date as approval of the Disclosure Statement, nor do the Debtors assert any "cause" to depart from this rule.  In this complex case, it is expected that there will be many last minute revisions to the Disclosure Statement.  The creditors who are voting should be the ones who have the benefit of the final information included in the Disclosure Statement.

## IV.    Reservation of Rights

17.     The EFIH Second Lien Trustee reserves all rights to assert any additional issues and objections after concluding its review of the current Disclosure Statement and all the related Plan documents.  In particular, the EFIH Second Lien Trustee reserves all rights to the extent the Plan and Disclosure Statement are substantively modified in advance of the Disclosure Statement hearing or parties raise new issues that may impact ultimate distributions on account of the EFIH Second Lien Notes.

## Conclusion

WHEREFORE, for the reasons stated above, the EFIH Second Lien Trustee respectfully requests that the Court deny approval of the Disclosure Statement unless the above modifications are incorporated and grant such other relief as is just and proper.

Dated:  September 7, 2016          PACHULSKI STANG ZIEHL & JONES LLP


*/s/ Laura Davis Jones*
Laura Davis Jones (Bar No. 2436)
Robert J. Feinstein (NY Bar No.  RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@ pszjlaw.com
        rfeinstein@ pszjlaw.com


*- and -*

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000
Email: tmayer@kramerlevin.com
        ghorowitz@kramerlevin.com
        jbrody@kramerlevin.com


*- and -*

DOCS_DE:209459.1 23731/001

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: 212-541-1114
Facsimile: 212-904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*