# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

555 California Street
San Francisco, California 94104

Mark McKane, P.C.
To Call Writer Directly:
(415) 439-1473
mark.mckane@kirkland.com

(415) 439-1400

www.kirkland.com

Facsimile:
(415) 439-1500

September 9, 2016

**Via ECF and Hand Delivery**

The Honorable Christopher S. Sontchi
United States Bankruptcy Judge
United States Bankruptcy Court
District of Delaware
824 Market Street, 5th Floor
Wilmington, Delaware 19801

Re:    *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979

Judge Sontchi:

      I write on behalf of the debtors and debtors in possession in the above-captioned cases (the "Debtors") in response to the letter of Steven Kazan, dated September 6, 2016 [D.I. 9484], on behalf of Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle, and David William Fahy (respectively, "Fenicle" and "Fahy") seeking entry of an order compelling the Debtors to comply with Fenicle and Fahy's First Requests for Documents (the "Requests"). Because Fenicle and Fahy, as members of Class A3—Legacy General Unsecured Claims Against the EFH Debtors are unimpaired under the Third Amended Joint Plan of Reorganization (the "Plan") [D.I. 9374],[1] they are not entitled to discovery in connection with confirmation of the Plan with respect to the E Side of the Debtors' capital structure ("E-Side Confirmation"). While the Debtors have endeavored to cooperate with Fenicle and Fahy to avoid the need for Court intervention, and have agreed to produce certain materials, the remaining Requests are unduly burdensome and seek materials that are irrelevant to confirmation of the Plan as it applies to Fenicle and Fahy. Accordingly, Fenicle and Fahy's request should be denied.

      **A.    Fenicle and Fahy Are Unimpaired Under the Plan.**

      The Plan describes the treatment of Class A3 Claims as follows:

---

[1]    *See* Plan, Art. I.A.243 ("'*Legacy General Unsecured Claim Against the EFH Debtors*' means any Claim against the EFH Debtors derived from or based upon liabilities based on asbestos . . . .").

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 9, 2016
Page 2

Except to the extent that a Holder of an Allowed Claim in Class A3, with the consent of the Plan Sponsor (such consent not to be unreasonably withheld), agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class A3, *each such Holder shall receive Reinstatement of such Claim* on the EFH Effective Date.[2]

As was the case in the plan of reorganization confirmed by the Court in December 2015, the Class A3 Claims are reinstated, and holders of such Claims are rendered unimpaired.[3] Class A3 Claims are *unaffected* by the bankruptcy.

As part of the proposed merger (the "Merger") between Reorganized EFH and a wholly owned subsidiary of NextEra Energy, Inc. ("NextEra"), an initial contribution of $250 million will be placed into an escrow account earmarked for payment of asbestos claims.[4] This escrow account does not establish a cap on the payment of future asbestos liabilities, but rather represents an internal accounting mechanism devised by NextEra. Likewise, intercompany claims owed between EFH Corp. and certain Debtors holding asbestos liabilities (the "Asbestos Debtors") will be reinstated to provide funding for future payments of liquidated asbestos claims.[5]

### B.     The Debtors' Meet and Confer Efforts with Fenicle and Fahy

On May 12, 2016, Fenicle and Fahy served twelve document requests on the Debtors, seeking a broad range of materials related to the Asbestos Debtors dating back to 1990, including "Documents related to all the underlying financials for the Asbestos Debtors and their subsidiaries that substantiate the corresponding E-side intercompany Claims from creation (approximately 1990 to date)," "Documents related to the time period prior to the 2007 leveraged buy-out when the Debtors maintained inter-company money pool agreements, with all schedules of internal interest rates as accrued on a quarterly and yearly basis," and "Documents regarding the treatment of EFH Debtor Intercompany Claims, including financial statements and book entry summaries for the quarterly and annual inter-company interest accumulation, and amounts

---

[2]  Plan, Art. III.B.3(b) (emphasis added).

[3]  *Amended Order Confirming the Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to chapter 11 of the Bankruptcy Code* [D.I. 7285-1] at 51.

[4]  *See* Plan, Art. I.A.258 (definition of "Merger Sub Account"), Art. IV.B.9(d).

[5]  Plan, Art. III.B.13(b) ("[C]laims of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. against one or more of EFH Corp., LSGT Gas Company LLC, EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. shall be Reinstated.").

KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 9, 2016
Page 3

due and owing sums on account of the EFH Debtor Intercompany Claims."[6] On May 24, 2016, the Court entered a scheduling order bifurcating discovery between the T Side and the E Side and setting May 2, 2016 as the date on which parties could begin to serve discovery requests related to E-Side Confirmation. The Debtors nonetheless served written responses and objections to Fenicle and Fahy's Requests on June 3, 2016, agreeing to produce documents related to treatment of the Class A3 Claims under the Plan, but largely objecting to Requests seeking historical financial and insurance information as overbroad and unduly burdensome.[7]

Despite the fact that, as unimpaired creditors, Fenicle and Fahy were not entitled to discovery, counsel to the Debtors and counsel to Fenicle and Fahy nonetheless embarked on a series of meet and confer conversations in an effort to identify a manageable scope of discovery, especially as the Debtors' Plan of Reorganization evolved with regard to treatment of the E Side. Then, on July 11, 2016, as the Debtors worked to develop a plan for the E-Side restructuring, the Court entered an order suspending discovery deadlines with regard to E-Side Confirmation. Yet, while other parties focused on confirmation of the Plan with respect to the T Side ("T-Side Confirmation"), Fenicle and Fahy continued to press the Debtors on their Requests, which relate solely to E-Side issues.[8] Indeed, counsel to the Debtors participated in a telephone call with counsel to Fenicle and Fahy on July 25, 2016, only three weeks prior to commencement of the T-Side Confirmation hearing, to discuss their E-Side discovery requests.

Following that call, in an effort to forestall Fenicle and Fahy's seeking Court intervention while E-Side discovery was stayed, the Debtors agreed to evaluate the burden associated with collection, review, and production of documents on three categories which counsel to Fenicle and Fahy identified as their highest priorities: (1) certain insurance agreements; (2) certain indemnity agreements with Raytheon and United Engineers & Constructors and related information; and (3) certain historical intercompany accounts receivable for the Asbestos Debtors.[9]

---

[6] Ex. A May 12, 2016 First Document Requests of Shirley Fenicle, Individually and as Successor-In-Interest to the Estate of George Fenicle, and David William Fahy to Debtors in Connection with Confirmation of the Debtors' New Joint Plan of Reorganization.

[7] Ex. B June 3, 2016 Debtors' Responses and Objections to the First Document Requests of Shirley Fenicle, Individually and as Successor-in-Interest to the Estate of George Fenicle, and David William Fahy to Debtors in Connection with Confirmation of the Debtors' New Joint Plan of Reorganization.

[8] *See* Ex. C July 12, 2016 Email from M. Esser to S. Kazan.

[9] *See* Ex. D July 25, 2016 Email from M. Esser to S. Kazan.

## KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 9, 2016
Page 4

    Meanwhile, on August 3, 2016, while the Debtors were assessing Fenicle and Fahy's Requests and simultaneously preparing for T-Side Confirmation, the Debtors filed the Merger Agreement and Third Amended Plan of Reorganization, which confirmed that the Class A3 Claims would be reinstated.[10]

    The Debtors subsequently determined that the burden associated with producing historical intercompany financial was unmanageable—many of the materials Fenicle and Fahy sought predated electronic record keeping, and many are no longer within the Debtors' possession. On the other hand, the Debtors determined that the insurance policies Fenicle and Fahy sought had already been produced in 2015 and were available to Fenicle and Fahy via the production repository maintained by the Debtors, and the indemnification materials were easily accessible. Accordingly, on August 31, 2016, the Debtors wrote to Fenicle and Fahy, noting that, as the Plan renders them unimpaired, they are not entitled to discovery, but agreeing to produce insurance policies and documents regarding the indemnity agreement with Raytheon.[11]

    Also on August 31, Fenicle and Fahy served a set of 21 supplemental document requests.[12] On September 6, 2016, without making any additional attempt to meet and confer, and before the Debtors' Responses and Objections were due, Fenicle and Fahy filed their letter with the Court seeking an order compelling responses to their Requests. On September 7, 2016, the Debtors served Reponses and Objections to the Fenicle and Fahy supplemental document requests.[13] On September 8, 2016, the Debtors produced the Raytheon materials and identified to Fenicle and Fahy the previously produced insurance policies.[14]

---

[10] *Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry into and Performance Under Plan Support Agreement* [D.I. 9190-2] at 174.

[11] Ex. E, Aug. 31, 2016 Letter from M. Esser to S. Kazan.

[12] Ex. F, Aug. 31, 2016 Second Document Requests of Shirley Fenicle, Individually and as Successor-In-Interest to the Estate of George Fenicle, David William Fahy, and John H. Jones to Debtors in Connection with Confirmation of the Debtors' New Joint Plan of Reorganization.

[13] Ex. G, Debtors' Responses and Objections to the Second Document Requests of Shirley Fenicle, Individually and as Successor-In-Interest to the Estate of George Fenicle, David William Fahy, and John H. Jones in Connection with Confirmation of the Debtors' New Joint Plan of Reorganization.

[14] Ex. H, Sept. 8, 2016 Letter from M. Esser to S. Kazan re Document Production; Ex. I, Letter from M. Esser to S. Kazan re Insurance Policies.

**KIRKLAND & ELLIS LLP**

The Honorable Christopher S. Sontchi
September 9, 2016
Page 5

### C.    Fenicle and Fahy Are Not Entitled to Further Discovery.

Because Fenicle and Fahy's rights are unaffected by the Plan, there is no basis by which they may pursue discovery.[15] Nevertheless, the Debtors have engaged with Fenicle and Fahy on their Requests, and have made available the insurance policies and Raytheon indemnity agreement. Accordingly, the Debtors believe that the only live dispute before the Court regards the Asbestos Debtors' historical accounting for intercompany claims. Discovery on this topic is inappropriate because it is not relevant and because it would be uniquely burdensome to the Debtors.

As to relevance, as noted above, the claims of Fenicle and Fahy and any other asbestos claimant are reinstated and the holders are unimpaired. As creditors who are deemed to accept the Plan, and whose rights are unaltered by the Plan, Fenicle and Fahy are not entitled to *any* discovery, let alone a wide-ranging excavation of decades of the Asbestos Debtors' historical accounting records.

On the other hand, collection, review, and production of the documents Fenicle and Fahy seek—which date back *over 25 years*—would be unduly burdensome to the Debtors, particularly when weighed against the lack of relevance of the materials Fenicle and Fahy seek. The materials sought predate electronic record keeping, and the paper records in many instances are not in the Debtors' possession, or are stored in offsite warehouse spaces in a manner that makes collection and searching particularly onerous.

Federal Rule of Civil Procedure 26(b) instructs courts to consider "whether the burden or expense of the proposed discovery outweighs its likely benefit," and empowers courts to restrict discovery to avoid unnecessary burden. Doing so here, where the burden (which is great) drastically outweighs the benefit of discovery (which is nonexistent) is appropriate.

---

[15]  Fenicle and Fahy, as Class A3 Claimants whose Claims are reinstated, are unimpaired under the Plan. Pursuant to Bankruptcy Code section 1124, creditors are unimpaired where the Plan "leaves unaltered the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest . . . ." 11 U.S.C. § 1124(1); *see also* Plan, Art. I.A.330 (defining "Reinstate," "Reinstated," or "Reinstatement" as "with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.") Unimpaired creditors are not entitled to vote on a plan of reorganization, but rather are deemed to accept the plan. 11 U.S.C. § 1126(f); s*ee also In re Charter Commc'ns*, 419 B.R. 221, 244–45 (Bankr. S.D.N.Y. 2009) ("The holder of a claim or interest who under the plan is restored to his original position, when others receive less or nothing at all, is fortunate indeed and has no cause to complain.") (quoting S. Rep. 95–958, at 120 (1978), U.S.Code Cong. & Admin. News 1978, p. 1935).

# KIRKLAND & ELLIS LLP

The Honorable Christopher S. Sontchi
September 9, 2016
Page 6

    Accordingly, the Debtors request that the Court deny Fenicle and Fahy's request for an order compelling production of documents regarding the historical accounting of intercompany claims.

                                        Sincerely,

                                        */s/ Mark McKane, P.C.*

                                        Mark McKane, P.C.

Enclosures

cc:       Participating Parties (via ECF)