# **<u>EXHIBIT F</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**SECOND DOCUMENT REQUESTS OF SHIRLEY FENICLE, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE ESTATE OF GEORGE FENICLE, DAVID WILLIAM FAHY, AND JOHN H. JONES TO DEBTORS IN CONNECTION WITH CONFIRMATION OF THE DEBTORS' NEW JOINT PLAN OF REORGANIZATION**

Pursuant to Rules 16, 26, 33 and 34 of the Federal Rules of Civil Procedure (the "Federal Rules"), as incorporated by Rules 7016, 7026, 7033, 7034, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States District Court for the District of Delaware, made applicable hereto pursuant to the Local Rules for the United States Bankruptcy Court for the District of Delaware (collectively the "Local Rules"), and the *Order Scheduling Certain Hearing Dates and Deadlines and Establishing Certain Protocols in Connection with Confirmation of the Debtors' Joint Plan of Reorganization as it Relates to the EFH/EFIH Debtors* dated August 24, 2016 [D.I. 9381] (the "Amended Scheduling Order"), Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, and David William Fahy (respectively, "Fenicle" and "Fahy"), both members of the EFH Official Committee of Unsecured Creditors (the "Committee")[2], and John H. Jones (together the "Asbestos Objectors"), by and through their undersigned counsel, hereby request

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] In this discovery, Fenicle and Fahy are acting in their own respective individual capacity and not as members of Committee.

that the Debtors produce the documents responsive to the following document requests in accordance with the Amended Scheduling Order.

The Requests incorporate by reference all definitions and rules of construction set forth in Rule 34 of the Federal Rules and any applicable Local Rules that apply to each Request set forth herein.

**DOCUMENT REQUESTS**

1. Any and all documents relating to Debtors' decision to create the $250,000,000 "Asbestos Account" as described in the proposed "Agreement and Plan of Merger by and Among Nextera Energy, Inc., EFH Merger Co., LLC, Energy Future Intermediate Holding Company LLC, and Energy Future Holdings Corp." [D.I. 9190, Ex. 1 to Ex. A] "the Proposed Merger Agreement").

2. Any and all documents relating to the Debtors' determination and/or calculations of the asbestos liabilities of the Asbestos Debtors as they relate to the Asbestos Account.

3. Any and all documents relating to Debtors' decision to create the "Asbestos Insurance Policy" as described in the proposed "Agreement and Plan of Merger by and Among Nextera Energy, Inc., EFH Merger Co., LLC, Energy Future Intermediate Holding Company LLC, and Energy Future Holdings Corp." [D.I. 9190, Ex. 1 to Ex. A] "the Proposed Merger Agreement").

4. Any and all documents relating to the Debtors' determination and/or calculations of the asbestos liabilities of the Asbestos Debtors as they relate to the Asbestos Insurance Policy.

5. Any and all board presentations, materials, PowerPoint decks, conference call minutes, electronic records, and all other business records in which any reference or discussion was had concerning the four asbestos debtors, asbestos claims, or anything whatsoever related to the inter-company receivables owed to or held by of EEC Holdings, Inc., EECI, Inc., LSGT Gas Company LLC, and LSGT SACROC, Inc., (the "Asbestos Debtors") from 1999 to 2012.

6. Any and all documents, including but not limited to EFH's and LSGT Gas Company LLC's books and records, related to the intercompany transfer of the proceeds from the sale of Ensearch/Ebasco from LSGT Gas Company LLC to EFH.

7. Any and all documents of the Directors, Disinterested Directors, Officers, and Managers of the Asbestos Debtors relating to the Asbestos Debtors.

8. Any and all board presentations, materials, PowerPoint decks, conference call minutes, electronic records, and all other business records in which any reference or discussion to the 1993 sale by Enserch Corp. of its Humphreys and Glasgow Process Contracting, Ltd. subsidiary to Jacobs Engineering Group, Inc. was had.

9. Any and all documents related to annual financials and intercompany transactions of the Asbestos Debtors.

10. Any and all documents related to the tabulation of the Asbestos Claims and the number of those claims being defended.

11. Any and all documents, including but not limited to said proposals,, relating to the Debtors' determination and/or calculations supporting the April 2016 proposal to the various E-Side and T-Side creditors' advisors allocating the reorganized EFH Corp.'s equity among the EFIH creditors.

12. Any and all documents and/or records of oral communication between Debtors and Thomas Vasquez, PhD, as they pertain to the Asbestos Claims.

13. Any and all documents related to the "Adjustment Procedure" referenced in Exhibit 13 to the *Declaration of Michael P. Esser, Esq., in Support of the Debtors' Memorandum of Law in Support of Confirmation of the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9303] (the "Esser Declaration").

14. Any and all documents related to the "Unknown Holdback Amount for Asbestos and OPEB Liabilities" referenced in Exhibit 13 to the Esser Declaration.

15. Any and all documents related to the treatment of the A3 Class Claims under the New Plan..

16. Any and all documents related to the treatment of the A13 Class Claims under the New Plan.

17. Any and all documents related to the treatment of the A15 Class Claims under the New Plan.

18. Any and all documents relating to the Debtors' determination and/or calculations resulting in the formation of the Asbestos Account.

19. Any and all documents relating to the Company Disclosure Letter.

20. Any and all documents related to the Asbestos Debtors' consideration of what will constitute "Conflict Matters."

21. Any and all documents related to the Disinterested Directors and/or Managers' consideration of whether the Asbestos Claims constitute a "Conflict Matter."

**DEFINITIONS**

1. "Accessible Account Deposit" shall have the meaning ascribed to it in the *Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into Performance Under Plan Support Agreement* (the "Merger Motion").

2. "And" and "Or," whether capitalized or not, are intended as terms of inclusion, and not exclusion, and should be construed both disjunctively and conjunctively so as to bring within the scope of these Requests all documents and information which might otherwise be considered to be outside of their scope.

3. "Asbestos Account" shall have the meaning ascribed to it in the *Motion of the EFH/EFIH Debtors for Order (A) Authorizing Entry into Merger Agreement, (B) Approving Termination Fee, and (C) Authorizing Entry Into Performance Under Plan Support Agreement* (the "Merger Motion").

4. "Asbestos Claims" shall mean any Claim against the Debtors derived from or based upon liabilities based on asbestos.

5. "Asbestos Debtors" shall mean EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14- 11039), and LSGT SACROC, Inc. (Case No. 14-11012) collectively.

6. "Asbestos Escrow Agreement" shall have the meaning ascribed to it in the Merger Motion.

7. "Asbestos Insurance Policy" shall have the meaning ascribed to it in the Merger Motion.

8. "Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. § 101, et seq.

9. "Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Delaware.

10. "Board of Directors" shall mean the Directors and Officers of the applicable Debtors.

11. Class A3 Claims" shall mean the Legacy General Unsecured Claims against the EFH Debtors.

12. "Class A13 Claims" shall mean the EFH Debtor Intercompany Claims.

13. "Class A14 Claims" shall mean the Non-EFH Debtor Intercompany Claims.

14. "Company Disclosure Letter" shall mean "Company Disclosure Letter" as such term is defined in the Merger Agreement.

15. "Communication," "communicate," and "communicated," shall mean any oral, written, or electronic utterance, notation, or statement of any nature whatsoever, by and/or to whomsoever made, including without limitation: correspondence, notes, personal conversations, telephone calls, dialogues, discussions, interviews, consultations, telegrams, e-mails, telexes, cables, facsimile transmissions, memoranda, agreements, and other understandings among or between two or more persons, and other oral, written, or electronic communications.

16. "Conflict Matters" shall mean for each of EFH Corp., EFIH, and EFCH/TCEH, as defined in the respective resolutions of the applicable Board of Directors or Board of Managers dated November 7, 2014 and December 9, 2014 including the determination of whether any matter constitutes a "Conflict Matter."

17. "Corporate Records" shall mean any memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation and calling of every kind, whether or not conducted for profit.

18. "Debtors" shall mean, collectively: (a) the TCEH Debtors; (b) the EFIH Debtors; (c) the EFH Debtors; and (d) the EFH Shared Services Debtors.

19. "Disclosure Statement" means, as applicable, the TCEH Disclosure Statement and/or the EFH Disclosure Statement.

20. "Discussion," "discussions," "discuss," "discusses," "mention," "mentions," "describe," "describes," "analyze" or "analyzes" shall mean any and all inquiries, conferences, conversations, negotiations, agreements or other forms or methods of oral communication or such dialogue sent via e-mail, facsimile, letter, telegram, or other written communication.

21. "Disinterested Directors" shall mean the disinterested directors of EFH Corp., EFIH, and/or EFCH/TCEH.

22. "Disputed" shall mean, with regard to any Claim or Interest, a Claim or Interest that is not yet allowed.

23. "Document(s)", whether capitalized or not, shall mean, without limitation and in the broadest possible sense, any writing or other matter (such as charts, photographs, film, audio, video or computer tape or other electronic media or devices) from which information can be obtained, translated if necessary through detection devices into reasonably useable form, including without limitation agreements, letters, appointment books, calendars, electronic mail, computer diskettes, CD-ROMS and other electronically-recorded or stored data, bookkeeping ledgers and journals, memoranda, notes, notebooks, diaries, desk pads, logs, telephone bills and telephone call records. A draft or non-identical copy (including one with notations) is a separate document.

24. "EFH" shall mean Energy Future Holdings Corp., a Texas corporation.

25. "EFH Corp. Claims" shall mean, collectively: (a) the Allowed EFH Legacy Note Claims; (b) the Allowed EFH Swap Claims; (c) the Allowed EFH LBO Note Primary Claims; (d) the Allowed TCEH Settlement Claim; (e) the Allowed EFH Non-Qualified Benefit Claims; (f) the Allowed EFH Unexchanged Note Claims; (g) the Allowed General Unsecured Claims Against EFH Corp.; (h) the Allowed General Unsecured Claims Against EFH Debtors Other Than EFH Corp; and (i) the Allowed Tex-La Guaranty Claims; provided, however, that if the Holders of Allowed EFH LBO Note Primary Claims receive a recovery on account of their

Allowed Class B5 EFH LBO Note Guaranty Claims, the Allowed EFH LBO Note Primary Claims shall not be included in this definition of EFH Corp. Claims; provided further, however, that if the Holders of Allowed Tex-La Guaranty Claims receive full recovery on account of their Allowed Class C1 Other Secured Claims Against the TCEH Debtors, the Allowed Tex-La Guaranty Claims shall not be included in this definition of EFH Corp. Claims.

26.    "EFH Debtors" means, collectively: (a) EFH Corp.; (b) Ebasco Services of Canada Limited; (c) EEC Holdings, Inc.; (d) EECI, Inc.; (e) EFH Australia (No. 2) Holdings Company; (f) EFH Finance (No. 2) Holdings Company; (g) EFH FS Holdings Company; (h) EFH Renewables Company LLC; (i) Generation Development Company LLC; (j) LSGT Gas Company LLC; (k) LSGT SACROC, Inc.; (l) NCA Development Company LLC; and (m) TXU Receivables Company.

27.    "EFH Debtor Intercompany Claims" shall mean any Claim by an EFH Debtor against another EFH Debtor.

28.    "EFH Effective Date" shall have the meaning ascribed to it in the New Plan.

29.    "EFH/EFIH Distribution Account" shall mean one or more escrow accounts designated by EFH Corp. prior to the EFH Effective Date to hold Cash to fund distributions under the Plan consisting of (a) the Merger Sub Cash Amount, (b) the EFIH Second Lien Note Repayment Amount, (c) the Cash distributed to satisfy Allowed EFH Non-Qualified Benefit Claims, and (d) the EFIH Unsecured Creditor Cash Recovery Pool, and (e) any other amounts to be funded into the EFH/EFIH Distribution Account pursuant to the terms of the Plan or Merger Agreement, which account shall be administered by the EFH Plan Administrator Board.

30.    "EFH Plan Administrator Board" shall be a two-member board of directors comprised of current disinterested directors of EFH Corp. and EFIH, which board shall be appointed on or after the TCEH Effective Date by the Plan Sponsor and the EFH Debtors and which board shall be tasked with directing the Disbursing Agent with respect to Cash

distributions made on account of Allowed Claims asserted against the EFH Debtors and EFIH Debtors and shall not, for the avoidance of doubt, be authorized to direct the Disbursing Agent with respect to any Cash distributions made on account of Allowed Claims asserted against the TCEH Debtors or EFH Shared Services Debtors, if any.

31. "Identify" shall mean

    a. when used in reference to a natural person, to state:

        1. the person's full name and present or last known address and telephone number(s); and

        2. the person's present or last known position, title and employment or business affiliation.

    b. when used in reference to a business entity, whether incorporated or not, to state:

        1. the entity's name;

        2. its principal place of business, including its address; and

        3. the telephone number(s) of its principal place of business.

    c. when used in reference to a document, to state:

        1. the author of the document;

        2. the date of the document;

        3. each addressee or copy addressee of the document;

        4. the subject matter of the document; and

        5. the present location of the document and the name of the present custodian of the document.

    d. when used in reference to a communication, act, transaction, event, occasion or instance, including an oral agreement, statement, recommendation or representation, to state:

        1. its date and place of occurrence (or, if a telephone call is involved, so state and provide the location of all parties to such telephone call and identify the person who initiated it);

        2. the identity of each person participating therein, who each such person participating therein represented or purported to represent,

       the nature and subject matter of any circumstances surrounding it, and the substance of what transpired or was said; and

    3. identify all documents summarizing, recording, reflecting, reporting or containing a reference to it.

  32. "Including," whether capitalized or not, shall mean including, but not limited to. Phrases following the term "including" are not intended to be exhaustive of the documents or information sought and shall not in any way be read to limit the scope of the Requests or Interrogatories.

  33. "Insurance Policies" shall mean any insurance policies, insurance settlement agreements, coverage-in-place agreements, or other agreements relating to the provision of insurance entered into by or issued to or for the benefit of any of the Debtors or their predecessors.

  34. "Intercompany Claim" shall mean a Claim or Cause of Action by EFH Corp. or any direct or indirect subsidiary of EFH Corp. against EFH Corp. or any direct or indirect subsidiary of EFH Corp.

  35. "Legacy General Unsecured Claim Against the EFH Debtors" shall mean (i) any Claim against the EFH Debtors derived from or based upon liabilities based on asbestos or, to the extent set forth in the Merger Agreement or on Schedule 6.6(a) to the Company Disclosure Letter, qualified post-employment benefits relating to discontinued operations of the EFH Debtors.

  36. "Legacy General Unsecured Claim Against the TCEH Debtors" shall mean any Claim against the TCEH Debtors derived from or based upon liabilities based on asbestos or qualified post-employment benefits relating to the TCEH Debtors.

  37. "Merger" shall mean that certain merger on the EFH Effective Date of Reorganized EFH with and into Merger Sub in a transaction intended to qualify as a tax-free

reorganization under section 368(a) of the Internal Revenue Code, with Merger Sub continuing as the surviving entity.

38.     "Merger Agreement" shall mean that certain Agreement and Plan of Merger, dated as of [   ] 2016, by and among NextEra, Merger Sub, EFH Corp., and EFIH, as may be amended, supplemented, or otherwise modified from time to time in accordance therewith, including all exhibits and schedules attached thereto, which shall be included in the Plan Supplement.

39.     "Merger Sub" shall mean EFH Merger Co., LLC, a Delaware limited liability company wholly owned by NextEra, with whom and into which Reorganized EFH will merge.

40.     "Merger Sub Account" shall mean a segregated, restricted account, and invested and disbursed in accordance with that certain escrow agreement, dated as of the EFH Effective Date, between Merger Sub and U.S. Bank National Association, and used solely to satisfy Allowed Legacy General Unsecured Claims Against the EFH Debtors that are based on asbestos claims and related costs, including court costs, expert witness costs, attorneys' fees, the cost to procure insurance and all other related costs from time to time during the fifty year term of the escrow agreement and, to the extent any balance (including accrued interest, if any) remains at the end of such term, such balance shall only be paid over to a charity specified in accordance with the terms of such escrow agreement.

41.     "Merger Sub Cash Amount" shall mean the Cash to be delivered by Merger Sub to the EFH/EFIH Distribution Account at the Merger Closing in accordance with the Merger Agreement.

42.     "New Plan" shall mean the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et. al., Pursuant to Chapter 11 of the Bankruptcy Code* dated August 5, 2016, [D.I. 9199], as it may be amended or modified from time to time.

43.     "NextEra" shall mean NextEra Energy, Inc., a Florida corporation.

44. "Person" and "persons" include natural persons, groups of natural persons acting in a collegial capacity (e.g., a committee or counsel), corporations, partnerships, limited partnerships, limited liability partnerships, limited liability companies, associations, trusts, joint ventures, and any other incorporated or unincorporated business, governmental, public or legal entity. A reference to any person shall include, when applicable, its subsidiaries, affiliates, controlled persons, controlling persons, shareholders, officers, directors, members, general partners, employees, agents, attorneys, or other persons acting or purporting to act on its behalf.

45. "Petition Date" shall mean April 29, 2014, the date on which the Debtors commenced the Chapter 11 Cases.

46. "Plan Supplement" shall mean the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than 14 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement comprised of, among other documents, the following, if any and as applicable: (a) New Organizational Documents; (b) the Rejected Executory Contract and Unexpired Lease List; (c) the Assumed Executory Contract and Unexpired Lease List (which shall include the Employment Agreements and provide that such Employment Agreements are assigned to Reorganized TCEH on the TCEH Effective Date); (d) a list of retained Causes of Action; (e) the Reorganized TCEH Debtor Management Incentive Plan; (f) the New Employee Agreements/Arrangements; (g) the Reorganized TCEH Registration Rights Agreement; (h) the identity of the members of the New Boards and management for the Reorganized Debtors; (i) the New Reorganized TCEH Debt Documents; (j) the Merger Agreement; (k) the Tax Matters Agreement; (l) the Transition Services Agreement; (m) the Reorganized TCEH Shareholders' Agreement; (n) the Oncor Letter Agreement; (o) the Separation Agreement; (p) the Spin-Off Tax Receivable Agreement or the Taxable Separation

Tax Receivable Agreement (as applicable); (q) the Amended and Restated Split Participant Agreement; (r) the Taxable Separation Memorandum; and (s) the TRA Information Form.

47. "Plan Support Agreement" shall mean that certain Plan Support Agreement, dated as of August 9, 2015 (as amended on September 11, 2015, October 27, 2015, and November 12, 2015, and as may be amended, supplemented, or otherwise modified from time to time in accordance therewith), by and among the Debtors, the Original Plan Sponsors, the TCEH Supporting First Lien Creditors, the TCEH First Lien Agent, the TCEH Supporting Second Lien Creditors, the TCEH Committee, and certain other Entities, including all exhibits and schedules attached thereto.

48. "Proof of Claim" shall mean a Proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

49. "Proposed Disclosure Statement" shall mean, as applicable, the TCEH Disclosure Statement and/or the EFH Disclosure Statement, as it may be amended or modified from time to time.

50. "Regarding", whether capitalized or not, shall mean concerning, referring to, relating to, evidencing, explaining, constituting or comprising.

51. "Relate," "related," "relating," "relate to," "related to," "relating to," "concern," "concerning," "evidencing," and "reflecting" shall mean, in addition to the words broadest common meanings: referring to, evidencing, constituting, concerning, considering, underlying, modifying, amending, confirming, endorsing, representing, regarding, compromising, setting forth, showing, supporting, disclosing, describing, terminating, revoking, negating, explaining, summarizing, or mentioning directly or indirectly, in whole or in part.

52. "Reorganized EFH" shall mean EFH Corp. on and after the EFH Effective Date, or any successor thereto, including Merger Sub, by merger, consolidation, or otherwise, unless otherwise indicated in the Plan.

53. "Termination Fee" shall have the meaning ascribed to it in the Merger Motion.

54. "You" or "Your", whether capitalized or not, means the party responding to these discovery requests, including any agents, representatives or any person with any ownership interest thereof, or other persons acting, or purporting to act on behalf or under the control of the party responding to these discovery requests.

**INSTRUCTIONS**

1. If any information called for by any discovery request is withheld because You claim that such information is privileged or subject to protection as trial-preparation material, provide a description that will enable other parties to assess the claim, consistent with Federal Rule of Civil Procedure 26(b)(5)(A).

2. As used herein, the singular shall include the plural and the plural shall include the singular whenever necessary to bring within the scope of these discovery requests that which might otherwise be outside their scope.

3. The information sought in the preceding discovery requests includes all Your knowledge and information and all materials in Your possession, custody or control.

4. If You are aware of documents responsive to these document requests, which are not available to You or not subject to Your reasonable access or control, identify any information You may have regarding the location and possessor of such documents. If the addresses and telephone numbers of an individual or source identified in Your responses are available, please provide them.

5. You are under an obligation to supplement Your responses under the circumstances specified in Federal Rule of Civil Procedure 26(e).

Dated: August 31, 2016
Wilmington, Delaware

By: /s/ *Daniel K. Hogan*
Daniel K. Hogan (DE Bar # 2814)
**HOGAN♦McDANIEL**
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, and John H. Jones*

-and-

Steven Kazan (CA Bar # 46855)
Kazan McClain Satterley & Greenwood
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, as successor-in-interest to the Estate of George Fenicle*

-and-

Ethan Early (CT Juris # 417930)
Early Lucarelli Sweeney & Meisenkothen
265 Church Street, 11th Floor
New Haven, CT 06508-1866
Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for David William Fahy*

 -and-

Beth Gori
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*