## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Hearing Date (Requested):** |
| | ) | **September 26, 2016 at 10:00 a.m.** |
| | ) | |
| | ) | **Objection Deadline (Requested):** |
| | ) | **September 20, 2016 at 4:00 p.m.** |

## MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.*, FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND THE TEXAS COMPTROLLER OF PUBLIC ACCOUNTS

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this motion (this "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), approving the settlement with the Texas Comptroller of Public Accounts (the "Texas Comptroller"), substantially in the form attached hereto as **Exhibit 1** to **Exhibit A** (the "Settlement"). In support of this Motion, the Debtors submit the *Declaration of Carla A. Howard, Senior Vice President and General Tax Counsel of Energy Future Holdings Corp. in Support of the Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and the Texas Comptroller* (the "Howard Declaration"), filed contemporaneously herewith. In further support of this Motion, the Debtors respectfully submit as follows.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

RLF1 15146326v.1

## Jurisdiction and Venue

1.     The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

dated February 29, 2012.    This matter is a core proceeding within the meaning of

28 U.S.C. § 157(b)(2), and the Debtors consent pursuant to rule 9013-1(f) of the Local Rules of

Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

Delaware (the "Local Bankruptcy Rules") to the entry of a final order by the Court in connection

with this Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The bases for the relief requested in this Motion are sections 363 and 505 of title

11 of the United States Code (the "Bankruptcy Code") and rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.     By this Motion, the Debtors seek entry of the Order approving the Settlement with

the Texas Comptroller whereby the TCEH Debtors pay the Texas Comptroller $11.8 million for

a mutual release of all claims and liens for prepetition taxes asserted by the Texas Comptroller

against the Debtors and potential refund claims asserted by the Debtors.

## Background

5.     On April 29, 2014, each of the Debtors filed a voluntary petition with the Court

under chapter 11 of the Bankruptcy Code.    The Debtors are operating their businesses and

managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the

2

Bankruptcy Code.  The Court has entered an order for joint administration of these chapter 11 cases.  The Court has not appointed a trustee.  The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570].   Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] and the *Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 8747], filed with the Court on June 17, 2016.

6.      On August 23, 2016, the Debtors filed the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9374] (the "Plan").[2]

7.      On August 29, 2016, the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421].

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

RLF1 15146326v.1

## I.    General Background of Tax Claims and Refunds Subject to the Settlement.

8.    The Texas Comptroller is responsible for collection actions with respect to Texas state taxes, including Texas gross margin tax, sales tax, direct pay tax (which is essentially sales tax that is paid directly by a taxpayer, rather than being collected by a vendor and remitted to the state), gross receipts utilities tax (a kind of tax associated specifically with retail electricity providers such as TXU Energy), and certain other kinds of taxes (collectively, "State Taxes").

9.    The Texas Comptroller has filed a total of 132 proofs of claim against various Debtors for State Taxes.  These proofs of claim are related to, but in many cases do not specifically match, a large number of assessments the Texas Comptroller has asserted against the Debtors for State Taxes.    In total, the Texas Comptroller has filed assessments totaling approximately *$330 million* and proofs of claim totaling approximately *$150 million*.  The Texas Comptroller asserts that certain of these amounts are fully secured and may not fully reflect penalties and interest that are owed.  These assessments and proofs of claim were, in certain cases, net of refunds or other beneficial adjustments asserted by the Debtors and preliminarily agreed to by the Texas Comptroller, but such positions could remain subject to challenge in the event the Settlement is not approved and open audits must be litigated.  A list of the proofs of claim filed by the Texas Comptroller is attached as **Exhibit B** to the Settlement.[3]

10.    Of the $150 million of proofs of claim filed by the Texas Comptroller, approximately $55 million is attributable to the Gross Margin Tax, with the remaining amounts attributable to sales, gross receipts utilities, and direct pay taxes.  With respect to the Gross

---

[3] The filed proofs of claim contain many duplicative proofs of claim or proofs of claim that have been otherwise resolved.  Importantly, the proofs of claim that have been filed do not, in all cases, accurately reflect the Texas Comptroller's position that all of its claims are entitled to secured status under applicable Texas law, and, some proofs of claim do not reflect the full amount of principal and interest that the Texas Comptroller asserts it is entitled to receive.

Margin Tax, under Texas law, every entity in a "combined group" is jointly and severally liable for the full amount ultimately owed. In addition, Oncor is a member of the "combined group" for these purposes. This concept is similar to the "consolidated group" or "-6" liability in the context of federal income taxes, but entities that are disregarded for federal income tax purposes are liable for the Gross Margin Tax.

11.    Setting aside the fact that each of the Debtors (and certain non-Debtor subsidiaries) has "combined group" liability with respect to the Gross Margin Tax, the Debtors estimate that approximately $1.3 million of the total claim amounts for all State Taxes are attributable to EFH. The remaining amount, including substantially all issues that are not related to the Gross Margin Tax, is attributable to the TCEH Debtors, EFH Corporate Services, or EFH Properties Company. The Debtors dispute their liability with respect to many of the asserted claims, as well as the Texas Comptroller's ability to claim secured status with respect to certain claims and the timeliness of a recently-filed amendment to the Texas Comptroller's proofs of claim related to the Gross Margin Tax, but each of these issues is subject to significant dispute and risk on both sides.

12.    In addition to the Debtors' substantive and procedural objections to the Texas Comptroller's claims, the Debtors have also asserted certain refunds and other beneficial adjustments that are either disputed by the Texas Comptroller or potentially subject to setoff rights. These refunds and beneficial adjustments would, if successful, offset any State Taxes owed by the Debtors. In total, the Debtors have submitted approximately $48.5 million of disputed or unfinalized refunds and beneficial positions.[4] Of that amount, approximately $11.5 million is related to "E-side" adjustments, approximately $2.4 million is not readily subject to

---

[4] This amount excludes a $1.3 million sales tax refund attributable to the TCEH Debtors that is not being addressed in the Settlement.

allocation between the "E-side" and "T-side" because they relate to intercompany elimination entries and related items, and the remainder is related to adjustments with respect to the TCEH Debtors, EFH Corporate Services, or EFH Properties Company.

## II.    Terms of the Settlement.

13.    The Debtors have been in active discussions and negotiations with the Texas Comptroller regarding these claims and refunds since the beginning of these cases.  Those discussions have focused on the mutual desire of the Texas Comptroller and the Debtors to reach a global settlement of all issues.  Potential acquirers of EFH, including NextEra, have made it clear that they would strongly prefer not to emerge with any potential remaining liability for the State Taxes, and the TCEH First Lien Ad Hoc Committee has a similar desire with respect to Reorganized TCEH.  This is for good reason.  Certain of the unresolved State Tax issues relate as far back as the *1997* tax year.  Litigation of these claims would be time consuming, distracting, and expensive for the Debtors (or the Reorganized Debtors) as well as the Texas Comptroller.  Many of the issues are highly contested and would be subject to likely appeal, whether in the Bankruptcy Court or pursuant to ordinary Texas tax administrative and court proceedings.  To the extent the Texas Comptroller is ultimately successful, interest would potentially continue to accrue.  Moreover, although the Debtors believe that they would emerge victorious if these issues were fully litigated, the Texas Comptroller feels it would be entitled to a substantial payment, and each side faces very real risks on their respective positions.  Ultimately, emerging with a "clean slate" with respect to all of these issues is of tremendous value to the Debtors.

14.    In recognition of these mutual burdens and risks, the Debtors and the Texas Comptroller exchanged a series of global settlement offers throughout the spring and summer of 2016.  Finally, in August 2016, the Debtors and the Texas Comptroller reached a tentative

agreement on a global settlement that would resolve all State Tax issues.  Pursuant to that global

Settlement, the Debtors would make a single payment of $11.8 million to the Texas Comptroller

within 30 days of the effectiveness of the order approving the Settlement.[5]  The Settlement

releases all claims and potential refunds through the effective date of the order approving the

Settlement, with the exception of (a) Gross Margin Tax (if any) with respect to 2015 or 2016;

(b) any State Taxes other than Gross Margin Tax to the extent such State Taxes have accrued in

2016 but have not yet been paid; and (c) a $1.3 million refund sales tax refund attributable to the

TCEH Debtors that is not being addressed by the Settlement.  The Settlement will also result in

the release of any and all tax liens.  Finally, the Settlement will result in the dismissal of any and

all administrative proceedings related to the State Tax issues being settled and certain releases

with respect to potential "responsible person" liability with respect to so-called "trust fund" taxes

(such as sales taxes).

## III.    Payment of Full Settlement Amount by TCEH.

15.    The Debtors, in consultation with counsel to the TCEH First Lien Ad Hoc

Committee, have determined that 100% of the $11.8 million payment will be paid by the TCEH

Debtors.  The Debtors determined this allocation, and the TCEH First Lien Ad Hoc Committee

agreed to it, because the overwhelming majority of the claims, including Gross Margin Tax

claims for which EFH would be jointly liable, are attributable to the TCEH Debtors or EFH

Corporate Services.  In light of the allocation language in the Tax Matters Agreement, it is

arguable that Reorganized TCEH would be liable for all of these amounts.  Importantly, the

TCEH First Lien Creditors have agreed that this payment will ***not*** be treated as part of the $550

---

[5] A vital aspect of the Settlement is that the $11.8 million amount is ***not*** specifically apportioned among any given asserted claim or offset against any given refund.  This is because the Texas Comptroller is insistent that this Settlement not create a "roadmap" for taxpayers in the future to evaluate the respective strengths and weaknesses of their own potential claims and asserted refunds.

million TCEH Cash Payment, because almost all of the State Taxes are, at a minimum, priority tax claims, and may be secured claims.

16.    The Settlement does result in EFH releasing refunds, and it is arguable that those refunds could exceed the State Taxes that would potentially be owed by EFH.  EFH has determined that the Settlement is, nevertheless, in its own best interests, for a number of reasons.  *First*, EFH is unquestionably liable to the Texas Comptroller for the full amount of any ultimate Gross Margin Tax liability, even if that liability would mostly be allocated to Reorganized TCEH under the Tax Matters Agreement.  EFH has determined that eliminating any "overhang" from that risk is in its best interest, including with respect to its ability to maximize the value of its ownership interest in Oncor.  *Second*, EFH has determined that there is a significant risk that many of its asserted refund claims would, in fact, be disallowed on statute of limitations grounds.  *Third*, EFH has determined that there is a possibility that it would be liable for a portion of any ultimate Gross Margin Tax liability successfully asserted by the Texas Comptroller, even if such liability was related to "T-side" issues, and that the "T-side" may be able to claim it is entitled to receive a portion of the refunds that are related to "E-side" adjustments.  *Fourth*, the time and expense associated with asserting these refunds, including the audit process, the state administrative process, and potential litigation, is necessarily a drain on resources that reduces the value of any such refunds.

17.    For those same reasons, EFH has determined that it will not seek any payment from the TCEH Debtors or Reorganized TCEH in connection with the Settlement.  Any effort to seek such payment would likely put the entire settlement at risk.  The Debtors believe that the TCEH First Lien Ad Hoc Committee would be unlikely to agree to any such payment; indeed, the TCEH First Lien Ad Hoc Committee had to be convinced that payment of the full $11.8

8

million amount by the "T-side" was the appropriate outcome.  Although the Texas Comptroller would likely be willing to accept a construct in which the $11.8 million payment is paid and any inter-Debtor considerations are reserved, the Debtors believe that it is unlikely that the TCEH First Lien Ad Hoc Committee would accept that construct, especially on the eve of a long-awaited emergence of the TCEH Debtors when one of the primary benefits of the Settlement is to "clear up" *all* potential liability with respect to State Taxes (and the various tax liens that the Comptroller has asserted).

18.    The disinterested directors for TCEH and EFH specifically considered these issues and approved the Settlement.[6]  In particular, EFH's disinterested directors considered whether it was appropriate to agree to the Settlement in light of EFH's potential refunds compared to EFH's risks with respect to potential claims.  Ultimately, EFH's disinterested directors concluded that the benefits of fully resolving the State Tax issues outweighed any potential benefits that could be obtained from prosecuting the refund claims that are being released, as well as any effort to "hold up" the Settlement by demanding a payment or compensation from TCEH or Reorganized TCEH (whether under the Tax Matters Agreement or otherwise).

19.    In light of the significant risks and uncertainties that would accompany litigation of any of the State Tax issues, and the certainty of significant legal fees and distraction of key personnel that would accompany any such litigation, the Debtors submit that the Settlement satisfies the requirements of section 363 of the Bankruptcy Code and Bankruptcy Rule 9019.

---

[6] The advisors to the disinterested director for EFIH also reviewed and support the Settlement.

**Basis for Relief**

**I.      The Settlement Satisfies Section 363(b)(1) of the Bankruptcy Code.**

20.      Section 363(b)(1) of the Bankruptcy Code provides that a bankruptcy court, after notice and a hearing, may authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate."   11 U.S.C. § 363(b)(1).   In the Third Circuit, courts have authorized a debtor's use of property of the estate outside the ordinary course of business when such use has a "sound business purpose" and is proposed in good faith.   *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991).   Courts authorize a debtor to use property of the estate outside the ordinary course of business if the debtor can show that:   (a) a sound business reason or emergency justifies the proposed use; (b) adequate and reasonable notice was provided to all interested parties; (c) the proposed use was requested in good faith; and (d) fair and reasonable consideration is provided in exchange for the use of estate assets.   *See In re Exaeris, Inc.*, 380 B.R. 741 (Bankr. D. Del. 2008); *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *7 (D. Del. May 20, 2002); *Hudson*, 124 B.R. at 176.

21.      The Debtors submit that the Settlement satisfies section 363(b)(1) of the Bankruptcy Code.   Specifically, the proposed Settlement was negotiated at arm's length and in good faith.   The Settlement would, if approved, resolve all claims and liens for prepetition taxes asserted by the Texas Comptroller against the Debtors and potential refund claims asserted by the Debtors.   And, as discussed above, the allocation of the benefits and burdens of the Settlement as between the Debtors is also reasonable.   Accordingly, the Debtors respectfully request that the Court approve the Settlement.

II.     **The Settlement is Fair and in the Best Interests of the Debtors' Estates, Is a Proper Exercise of the Debtors' Business Judgment, and Should Be Approved.**

22.     Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

23.     The Settlement is subject to approval by the Court under Bankruptcy Rule 9019(a).  Settlements and compromises are tools often utilized to expedite case administration and to reduce unnecessary administrative costs; as such, they are favored in bankruptcy.  *See In re Nutraquest, Inc.,* 434 F.3d 639, 646 (3d Cir. 2006) ("[i]t is axiomatic that settlement will almost always reduce the complexity and inconvenience of litigation"); *In re Key3Media Grp., Inc.*, 2006 WL 2842462, at *3 (D. Del. Oct. 2, 2006).  Pursuant to Bankruptcy Rule 9019(a), a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed compromise is fair, reasonable, and in the best interest of the estate.  *See In re Marvel Entm't Grp., Inc.*, 222 B.R. 243, 249 (D. Del 1998) ("[T]he ultimate inquiry [is] whether 'the compromise is fair, reasonable, and in the interest of the estate.'") (citation omitted); *In re Nw. Corp.*, 2008 WL 2704341, at *6 (Bankr. D. Del. July 10, 2008) ("[T]he bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interests of the estate.") (citation omitted); *In re Key3Media Grp., Inc.*, 336 B.R. 87, 92 (Bankr D. Del. 2005) ("[T]he bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable.").

24.     A proposed compromise need not be the best result that a debtor could have achieved, but only must fall within the "reasonable range of litigation possibilities."  *In re*

*Energy Corp.*, 886 F.2d 921, 929 (7th Cir. 1989); *In re Sea Containers Ltd.*, 2008 WL 4296562, at *5 (Bankr. D. Del. Sept. 19, 2008); *Key3Media Grp.*, 2006 WL 2842462, at *3.

25.    In determining whether a compromise is fair and equitable, the Third Circuit has adopted a balancing test, under which a bankruptcy court should decide whether to approve a particular compromise or settlement.  The factors of the balancing test are: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." *Nutraquest,* 434 F.3d 639, 643; *see also Key3Media Grp.*, 336 B.R. 87 at 93 (when determining whether a compromise is in the best interests of the estate, courts must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal" (internal citations omitted)).

26.    Based on the above factors, the Debtors believe the Settlement represents a fair and reasonable compromise that is in the best interests of the Debtors' estates.  Both the Debtors and the Texas Comptroller face very real risks on their respective positions.  The Settlement, which globally and efficiently resolves all claims and liens for prepetition taxes asserted by the Texas Comptroller against the Debtors and potential refund claims asserted by the Debtors, falls well within the "reasonable range of litigation possibilities."  This compromise, therefore, preserves value for the Debtors' estates and the Debtors respectfully request that the Court approve the Settlement pursuant to Bankruptcy Rule 9019 and sections 363 and 505 of the Bankruptcy Code.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

27.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

28.     The Debtors shall provide notice of this Motion on the date hereof via first class mail to:  (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company, N.A., in its capacity as indenture trustee under:  (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under:  (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under:  (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under:  (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under:  (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0%

EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) the Texas Comptroller. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

29.    No prior request for the relief sought in this Motion has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this Motion and granting such other and further relief as is appropriate under the circumstances.

Wilmington, Delaware

Dated:   September 9, 2016
         Wilmington, Delaware

                                        /s/ Jason M. Madron
                                        _____
                                        **RICHARDS, LAYTON & FINGER, P.A.**
                                        Mark D. Collins (No. 2981)
                                        Daniel J. DeFranceschi (No. 2732)
                                        Jason M. Madron (No. 4431)
                                        920 North King Street
                                        Wilmington, Delaware 19801
                                        Telephone:      (302) 651-7700
                                        Facsimile:      (302) 651-7701
                                        Email:          collins@rlf.com
                                                        defranceschi@rlf.com
                                                        madron@rlf.com

                                        -and-

                                        **KIRKLAND & ELLIS LLP**
                                        **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                        Edward O. Sassower, P.C. (admitted *pro hac vice*)
                                        Stephen E. Hessler (admitted *pro hac vice*)
                                        Brian E. Schartz (admitted *pro hac vice*)
                                        601 Lexington Avenue
                                        New York, New York 10022-4611
                                        Telephone:      (212) 446-4800
                                        Facsimile:      (212) 446-4900
                                        Email:          edward.sassower@kirkland.com
                                                        stephen.hessler@kirkland.com
                                                        brian.schartz@kirkland.com

                                        -and-

                                        James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
                                        Marc Kieselstein, P.C. (admitted pro hac vice)
                                        Chad J. Husnick (admitted *pro hac vice*)
                                        Steven N. Serajeddini (admitted *pro hac vice*)
                                        300 North LaSalle
                                        Chicago, Illinois 60654
                                        Telephone:      (312) 862-2000
                                        Facsimile:      (312) 862-2200
                                        Email:          james.sprayregen@kirkland.com
                                                        marc.kieselstein@kirkland.com
                                                        chad.husnick@kirkland.com
                                                        steven.serajeddini@kirkland.com

                                        *Co-Counsel to the Debtors and Debtors in Possession*