**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF CARLA A. HOWARD,**
**SENIOR VICE PRESIDENT AND GENERAL TAX COUNSEL**
**OF ENERGY FUTURE HOLDINGS CORP., IN SUPPORT OF**
**THE MOTION OF ENERGY FUTURE HOLDINGS CORP., *ET AL*.,**
**FOR ENTRY OF AN ORDER APPROVING THE SETTLEMENT**
**BETWEEN THE DEBTORS AND THE TEXAS COMPTROLLER**

Pursuant to 28 U.S.C. § 1746, I, Carla A. Howard, declare as follows:

1. I am over the age of 18 and duly authorized to execute this declaration (the "Declaration") on behalf of the Debtors in support of the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Approving the Settlement Between the Debtors and the Texas Comptroller* (the "Settlement Motion").[2]

2. I am the Senior Vice President and General Tax Counsel for Energy Future Holdings Corp. I have been with the Debtors since 2004, became General Tax Counsel in 2008, and became Senior Vice President in 2011. I am responsible for tax matters for the Debtors.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Settlement Motion.

3.      The facts in this Declaration are based on my personal knowledge and review of information and my experience with the Debtors' operations and transactions.  If called to testify, I would testify to the facts set forth herein.

**I.  General Background of Tax Claims and Refunds Subject to the Settlement.**

4.      The Texas Comptroller is responsible for collection actions with respect to Texas state taxes, including Texas gross margin tax, sales tax, direct pay tax (which is essentially sales tax that is paid directly by a taxpayer, rather than being collected by a vendor and remitted to the state), gross receipts utilities tax (a kind of tax associated specifically with retail electricity providers such as TXU Energy), and certain other kinds of taxes (collectively, "State Taxes").

5.      The Texas Comptroller has filed a total of 132 proofs of claim against various Debtors for State Taxes.  These proofs of claim are related to, but in many cases do not specifically match, a large number of assessments the Texas Comptroller has asserted against the Debtors for State Taxes.  In total, the Texas Comptroller has filed assessments totaling approximately $330 million and proofs of claim totaling approximately $150 million.  The Texas Comptroller asserts that certain of these amounts are fully secured and may not fully reflect penalties and interest that are owed.  These assessments and proofs of claim were, in certain cases, net of refunds or other beneficial adjustments asserted by the Debtors and preliminarily agreed to by the Texas Comptroller, but such positions could remain subject to challenge in the event the Settlement is not approved and open audits must be litigated.  A list of the proofs of claim filed by the Texas Comptroller is attached as **Exhibit B** to the Settlement.

6.      Of the $150 million of proofs of claim filed by the Texas Comptroller, approximately $55 million is attributable to the Gross Margin Tax, with the remaining amounts attributable to sales, gross receipts utilities, and direct pay taxes.  With respect to the Gross Margin Tax, under Texas law, every entity in a "combined group" is jointly and severally liable

for the full amount ultimately owed.  In addition, Oncor is a member of the "combined group" for these purposes.  This concept is similar to the "consolidated group" or "-6" liability in the context of federal income taxes, but entities that are disregarded for federal income tax purposes are liable for the Gross Margin Tax.

7.    Setting aside the fact that each of the Debtors (and certain non-Debtor subsidiaries) have "combined group" liability with respect to the Gross Margin Tax, the Debtors estimate that approximately $1.3 million of the total claim amounts for all State Taxes are attributable to EFH.  The remaining amount, including substantially all issues that are not related to the Gross Margin Tax, is attributable to the TCEH Debtors, EFH Corporate Services, or EFH Properties Company.  The Debtors dispute their liability with respect to many of the asserted claims, as well as the Texas Comptroller's ability to claim secured status with respect to certain claims and the timeliness of a recently-filed amendment to the Texas Comptroller's proofs of claim related to the Gross Margin Tax, but each of these issues is subject to significant dispute and risk on both sides.

8.    In addition to the Debtors' substantive and procedural objections to the Texas Comptroller's claims, the Debtors have also asserted certain refunds and other beneficial adjustments that are either disputed by the Texas Comptroller or potentially subject to setoff rights.  These refunds and beneficial adjustments would, if successful, offset any State Taxes owed by the Debtors.  In total, the Debtors have submitted approximately $48.5 million of disputed or unfinalized refunds and beneficial positions.[3]  Of that amount, approximately $11.5 million is related to "E-side" adjustments, approximately $2.4 million is not readily subject to allocation between the "E-side" and "T-side" because they relate to intercompany elimination

---

[3]    This amount excludes a $1.3 million sales tax refund attributable to the TCEH Debtors that is not being addressed in the Settlement.

entries and related items, and the remainder is related to adjustments with respect to the TCEH

Debtors, EFH Corporate Services, or EFH Properties Company.

## II.  Terms of the Settlement.

9.      The Debtors have been in active discussions and negotiations with the Texas

Comptroller regarding these claims and refunds since the beginning of these cases.  Those

discussions have focused on the mutual desire of the Texas Comptroller and the Debtors to reach

a global settlement of all issues.  Potential acquirers of EFH, including NextEra, have made it

clear that they would strongly prefer not to emerge with any potential remaining liability for the

State Taxes, and the TCEH First Lien Ad Hoc Committee has a similar desire with respect to

Reorganized TCEH.  This is for good reason.  Certain of the unresolved State Tax issues relate

as far back as the 1997 tax year.  Litigation of these claims would be time consuming,

distracting, and expensive for the Debtors (or the Reorganized Debtors) as well as the Texas

Comptroller.  Many of the issues are highly contested and would be subject to likely appeal,

whether in the Bankruptcy Court or pursuant to ordinary Texas tax administrative and court

proceedings.  To the extent the Texas Comptroller is ultimately successful, interest would

potentially continue to accrue.  Moreover, although the Debtors believe that they would emerge

victorious if these issues were fully litigated, the Texas Comptroller feels it would be entitled to

a substantial payment, and each side faces very real risks on their respective positions.

Ultimately, emerging with a "clean slate" with respect to all of these issues is of tremendous

value to the Debtors.

10.     In recognition of these mutual burdens and risks, the Debtors and the Texas

Comptroller exchanged a series of global settlement offers throughout the spring and summer of

2016.  Finally, in August 2016, the Debtors and the Texas Comptroller reached a tentative

agreement on a global settlement that would resolve all State Tax issues.  Pursuant to that global

Settlement, the Debtors would make a single payment of $11.8 million to the Texas Comptroller within 30 days of the effectiveness of the order approving the Settlement.[4]  The Settlement releases all claims and potential refunds through the effective date of the order approving the Settlement, with the exception of (a) Gross Margin Tax (if any) with respect to 2015 or 2016; (b) any State Taxes other than Gross Margin Tax to the extent such State Taxes have accrued in 2016 but have not yet been paid; and (c) a $1.3 million refund sales tax refund attributable to the TCEH Debtors that is not being addressed by the Settlement.  The Settlement will also result in the release of any and all tax liens.  Finally, the Settlement will result in the dismissal of any and all administrative proceedings related to the State Tax issues being settled and certain releases with respect to potential "responsible person" liability with respect to so-called "trust fund" taxes (such as sales taxes).

**III.  Payment of Full Settlement Amount by TCEH.**

11.    The Debtors, in consultation with counsel to the TCEH First Lien Ad Hoc Committee, have determined that 100% of the $11.8 million payment will be paid by the TCEH Debtors.  The Debtors determined this allocation, and the TCEH First Lien Ad Hoc Committee agreed to it, because the overwhelming majority of the claims, including Gross Margin Tax claims for which EFH would be jointly liable, are attributable to the TCEH Debtors or EFH Corporate Services.  In light of the allocation language in the Tax Matters Agreement, it is arguable that Reorganized TCEH would be liable for all of these amounts.  Importantly, the TCEH First Lien Creditors have agreed that this payment will ***not*** be treated as part of the $550

---

[4]    A vital aspect of the Settlement is that the $11.8 million amount is ***not*** specifically apportioned among any given asserted claim or offset against any given refund.  This is because the Texas Comptroller is insistent that this Settlement not create a "roadmap" for taxpayers in the future to evaluate the respective strengths and weaknesses of their own potential claims and asserted refunds.

million TCEH Cash Payment, because almost all of the State Taxes are, at a minimum, priority tax claims, and may be secured claims.

12.    The Settlement does result in EFH releasing refunds, and it is arguable that those refunds could exceed the State Taxes that would potentially be owed by EFH.  EFH has determined that the Settlement is, nevertheless, in its own best interests, for a number of reasons. *First*, EFH is unquestionably liable to the Texas Comptroller for the full amount of any ultimate Gross Margin Tax liability, even if that liability would mostly be allocated to Reorganized TCEH under the Tax Matters Agreement.  EFH has determined that eliminating any "overhang" from that risk is in its best interest, including with respect to its ability to maximize the value of its ownership interest in Oncor.  *Second*, EFH has determined that there is a significant risk that many of its asserted refund claims would, in fact, be disallowed on statute of limitations grounds. *Third*, EFH has determined that there is a possibility that it would be liable for a portion of any ultimate Gross Margin Tax liability successfully asserted by the Texas Comptroller, even if such liability was related to "T-side" issues, and that the "T-side" may be able to claim it is entitled to receive a portion of the refunds that are related to "E-side" adjustments.  *Fourth*, the time and expense associated with asserting these refunds, including the audit process, the state administrative process, and potential litigation, is necessarily a drain on resources that reduces the value of any such refunds.

13.    For those same reasons, EFH has determined that it will not seek any payment from the TCEH Debtors or Reorganized TCEH in connection with the Settlement.  Any effort to seek such payment would likely put the entire settlement at risk.  The Debtors believe that the TCEH First Lien Ad Hoc Committee would be unlikely to agree to any such payment; indeed, the TCEH First Lien Ad Hoc Committee had to be convinced that payment of the full $11.8

million amount by the "T-side" was the appropriate outcome.  Although the Texas Comptroller would likely be willing to accept a construct in which the $11.8 million payment is paid and any inter-Debtor considerations are reserved, the Debtors believe that it is unlikely that the TCEH First Lien Ad Hoc Committee would accept that construct, especially on the eve of a long-awaited emergence of the TCEH Debtors when one of the primary benefits of the Settlement is to "clear up" *all* potential liability with respect to State Taxes (and the various tax liens that the Comptroller has asserted).

14.    The disinterested directors for TCEH and EFH specifically considered these issues and approved the Settlement.[5]  In particular, EFH's disinterested directors considered whether it was appropriate to agree to the Settlement in light of EFH's potential refunds compared to EFH's risks with respect to potential claims.  Ultimately, EFH's disinterested directors concluded that the benefits of fully resolving the State Tax issues outweighed any potential benefits that could be obtained from prosecuting the refund claims that are being released, as well as any effort to "hold up" the Settlement by demanding a payment or compensation from TCEH or Reorganized TCEH (whether under the Tax Matters Agreement or otherwise).

15.    In light of the significant risks and uncertainties that would accompany litigation of any of the State Tax issues, and the certainty of significant legal fees and distraction of key personnel that would accompany any such litigation, I believe that the Settlement will benefit the Debtors, their estates, and their creditors.

[*Remainder of page intentionally left blank.*]

---

[5]    The advisors to the disinterested director for EFIH also reviewed and support the Settlement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: September ⁹ , 2016

Carla A. Howard
Senior Vice President and
General Tax Counsel
Energy Future Holdings Corp.