## EXHIBIT A

**SCHEDULE A-41**

Following the Parties' execution of this Schedule A-41, KPMG LLP ("CONTRACTOR") is authorized to perform the Work as identified on behalf of EFH CORPORATE SERVICES COMPANY ("COMPANY") pursuant to the terms and conditions contacting in the Master Services Agreement C0531124C ("the Agreement") dated November 1, 2009 and subsequently amended.

**SCOPE OF WORK AND DELIVERABLES**
The Work will be performed in accordance with the specifications and instructions, if any, attached hereto. The Work will be scheduled at the direction of the COMPANY's Contract Coordinator as identified herein.

**SCOPE OF WORK:**

CONTRACTOR will assist the tax department with the following:

1. Provide tax consulting services with respect to determining whether certain costs incurred by COMPANY and paid to its advisors during bankruptcy are deductible, amortizable, or capitalized for U.S. federal income tax purposes.
2. If requested, CONTRACTOR's tax consulting services to assist COMPANY in gathering reports and records from its advisors (e.g., investment bankers) to serve as additional documentation and support for the U.S. federal income tax treatment of such costs.
3. If requested, CONTRACTOR's tax consulting service will include the issuance of an opinion letter as to the tax treatment of such costs.

CONTRACTOR will provide tax consulting services with respect to the matters as listed above. However, CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

Written advice provided to COMPANY under this SOW will be based on facts, representations, assumptions, and other information COMPANY provides to CONTRACTOR, the completeness, accuracy and timeliness of which are critical factors in CONTRACTOR's ability to timely and accurately complete CONTRACTOR's services. Unless COMPANY requests and CONTRACTOR agrees under a separate writing (a newly issued SOW or addendum to this SOW) after CONTRACTOR's advice has been issued in final form to COMPANY, CONTRACTOR will not update CONTRACTOR's advice to take into account COMPANY updating the facts COMPANY provides to CONTRACTOR through COMPANY's discovery of new or additional facts, or COMPANY updating any information that may have formed the basis of any assumptions CONTRACTOR made in developing CONTRACTOR's advice. In rendering advice, CONTRACTOR will consider tax authorities that are subject to change, retroactively and/or prospectively, and any such changes could affect the advice CONTRACTOR issue to COMPANY.

If matters exceed the scope of this Schedule A-41, CONTRACTOR will issue a separate Schedule A or clarifying addendum to confirm the revised scope and related terms. Furthermore, a separate Schedule A will be issued for each discrete tax consulting project not specified in this Schedule A-41 (e.g., transfer pricing study, corporate acquisition or disposition, etc.) and for tax controversy representation. To be of greatest assistance to COMPANY, CONTRACTOR should be advised in advance of proposed transactions.

The advice or other information in this document was prepared for the sole benefit of CONTRACTOR's client and may not be relied upon by any other person or organization. CONTRACTOR accepts no responsibility or liability in respect of this document to any person or organization other than CONTRACTOR's client.

To be of greatest assistance to COMPANY, CONTRACTOR should be advised in advance of proposed transactions.

**TAX ADVICE STANDARDS:**

If CONTRACTOR is considered to be a tax return preparer under Treasury Regulation §301.7701-15, CONTRACTOR will apply elevated standards in providing tax advice. These standards are dependent on certain characteristics of the entity to which CONTRACTOR's services will be directed as follows:

1. For U.S. public companies or "large private entities" (i.e., private entities with prior year gross revenues of $300 million or more reflected in audited financial statements prepared in accordance with U.S. generally accepted accounting principles): CONTRACTOR must be able to determine that (1) there is "substantial authority" for an undisclosed return position (i.e., the weight of authorities in support of a position is substantial in relation to the weight of authorities in opposition to the position) and (2) a disclosed return position has at least a "realistic possibility" of being sustained on its merits (i.e., approximately a one-in-three or greater likelihood of success if challenged by a tax authority). The laws of some states (e.g., New York) also may impose more stringent return preparation standards for state tax returns. For advice pertaining to a "Tax Shelter" (as defined in IRC §6662(d)(2)(C)(ii)) or a "reportable transaction" with a significant purpose of tax avoidance, tax practitioners must generally conclude their advice satisfies the "more likely than not" standard; if the taxpayer is advised regarding potential taxpayer penalties, tax practitioners may conclude at a "substantial authority" level.
2. For "other private entities" (i.e., entities that do not fall within the definitions above as a U.S. public company or large private entity): CONTRACTOR must be able to determine that a return position is at least "more likely than not" to be upheld (i.e., has a greater than 50 percent likelihood of success if challenged by the taxing authorities).
3. If a return position relates to a transaction that is a "principal purpose transaction," CONTRACTOR must arrive at a "should" confidence level (i.e., approximately a 70% or greater likelihood of success if challenged by the taxing authorities) with respect to the position.
4. CONTRACTOR will not render any advice with respect to a federal or state "listed transaction" or any transaction that is substantially similar to a federal or state "listed transaction."

In determining whether a return position meets the appropriate standard, CONTRACTOR will not take into account the possibility that a tax return will not be audited, that an issue will not be raised on audit, or that an issue will be settled. CONTRACTOR will inform COMPANY as soon as possible if, during CONTRACTOR analysis, CONTRACTOR determine circumstances exist that prevent CONTRACTOR from advising COMPANY under these standards.

**DELIVERABLES:**

Deliverables will be in the format requested by COMPANY depending on the specific tax services that are requested (i.e., oral, e-mail, memorandum, letter, Excel spreadsheet, etc.).

Contract Coordinator: Molly Oltmanns                Phone Number: (214) 812-1132

**WORK SITE**

The Work Site will be the following location(s): CONTRACTOR &/or COMPANY offices located in Dallas, TX.

## COMPENSATION, INVOICES, AND PAYMENT

As full compensation for the satisfactory performance by CONTRACTOR of the Work authorized pursuant to this Schedule A-41, COMPANY will compensate CONTRACTOR as follows.
The fees for this study will be based on the actual time incurred to complete the work at an agreed to CONTRACTOR hourly rate for the roles involved in providing the services as summarized in the table below, not to exceed $750,000. Any extension or increase in spend will require an amendment to the Schedule 41 and additional approval. This estimate assumes there will be no travel to the participant's site(s).

These fees are not dependent on tax or other savings achieved or otherwise based in any way on results obtained.

CONTRACTOR will endeavor to notify COMPANY if CONTRACTOR encounters any circumstances that warrant additional time or expense. If such matters exceed the scope of this Schedule A-41, CONTRACTOR will issue an addendum or separate Schedule A to confirm the scope and related terms of any additional engagements.

**Discounted Professional and Support Staff Fee Schedule**

| Role | Hourly Rate |
|---|---|
| **Partner/Principal** | $720/hr |
| **Tax Managing Director** | $680/hr |
| **Senior Manager** | $660/hr |
| **Manager** | $560/hr |
| **Senior Associate** | $420/hr |
| **Associate** | $260/hr |

The rates specified in this Schedule A-41 will remain in effect, with respect to and until completion of the Work authorized pursuant to this Schedule A-41.

CONTRACTOR acknowledges that the Bankruptcy Court must approve its fees in order to be compensated. In that regard, CONTRACTOR intends to file applications with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court establishing procedures for monthly compensation and reimbursement of expenses for professionals. COMPANY acknowledges that professional time required to prepare detailed applications in accordance with the Bankruptcy Code, applicable rules and guidelines differs from CONTRACTOR's normal billing procedures and, as a result, requires significant effort by CONTRACTOR to comply therewith. As a result, the Company agrees that, subject to Bankruptcy Court approval, CONTRACTOR shall be reimbursed for such professional time incurred.

All invoices shall be sent to:

Ap.invoicing@energyfutureholdings.com

With a copy to:
  Ms. Molly Oltmanns Manager -Tax
  Energy Future Holdings Corp.
  1601 Bryan St, 3rd floor
  Dallas, TX 75201

PRIVILEGES CLAIMED BY COMPANY, WITH RESPECT TO DELIVERABLES OR OTHER DOCUMENTS HEREAFTER DESIGNATED BY COMPANY

√ ATTORNEY-CLIENT COMMUNICATION

√ ATTORNEY WORK PRODUCT

√ TAX ADVISOR

_ OTHER

Any work performed in connection with this engagement before the execution date of this Schedule A-41 is also governed by the terms of this Schedule A41.

KPMG LLP

By: _____
Signature

Name: John Carpenter

Title: Partner

Date. 8/26/16

EFH CORPORATE SERVICES COMPANY

By: _____
Signature

Name: Molly Oltmanns

Title: Manager

Date: 9/8/16