**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) Case No. 14-10979 (CSS) |
| Debtors. | ) (Jointly Administered) |
| | ) **Hearing Date: October 21, 2016 at 1:30 p.m.**<br>) **Objection Deadline: October 6, 2016 at 4:00 p.m.** |

**TCEH DEBTORS' MOTION FOR ENTRY OF AN ORDER
ESTIMATING ASBESTOS CLAIMS FILED AGAINST THE TCEH DEBTORS**

Texas Competitive Electric Holdings Company LLC ("TCEH" and, together with its direct parent company, Energy Future Competitive Holdings Company LLC ("EFCH") and certain of TCEH's direct and indirect subsidiaries, the "TCEH Debtors") file this motion (the "Motion"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), determining the maximum value, for distribution purposes only, of the asbestos bodily injury claims filed against the TCEH Debtors. In support of this Motion, the TCEH Debtors file the *Summary Report Regarding Forecast of the Cost of Resolving All Pending and Proofs of Claim Filings of Asbestos-Related Bodily Injury Claims Against Energy Future Holding Corp. – Claims Associated with TCEH*, attached hereto as **Exhibit 1** (the "Summary Ankura Report"). In further support of this Motion, the TCEH Debtors respectfully state as follows.[2]

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan (as defined below).

RLF1 15217907v.1

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012*. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the above-captioned debtors and debtors in possession (collectively, the "Debtors") consent pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware to the entry of a final order by the Court in connection with this Motion.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested in this Motion are sections 105(a) and 502(c) of title 11 of the United States Code (the "Bankruptcy Code").

**Relief Requested**

4. By this Motion, the TCEH Debtors seek entry of the Order, pursuant to section 502(c) of the Bankruptcy Code and Article VII.C of the Plan, determining the maximum value, for distribution purposes only, of the asbestos bodily injury claims filed against the TCEH Debtors.

**Background**

**I.    The TCEH Debtors' Business Operations and Historical Asbestos Exposure.**

5. The TCEH Debtors have two distinct business units: (a) the electricity generation, mining, wholesale electricity sales, and commodity risk management and trading activities of Luminant Holding Company LLC and its subsidiaries ("Luminant") and (b) the competitive retail electricity sales and related operations of the entities known as TXU Energy ("TXU Energy").

6. Luminant currently owns and operates 15 power plants. Luminant's total electricity generation accounts for approximately 19% of the generation capacity in the market of the Electric Reliability Council of Texas ("ERCOT"), which covers the majority of Texas. Luminant also owns and operates surface lignite coal mines in Texas that supply coal to certain of Luminant's units. Luminant is the largest coal miner in Texas and the ninth-largest coal miner in the United States.

7. TXU Energy sells electricity to approximately 1.7 million residential and business customers, and is the single largest REP by customer count in Texas. TXU Energy serves approximately 25% of the residential customers and approximately 17% of the business customers in the areas of the ERCOT market that are open to competition.

8. Given the nature of the businesses of the TCEH Debtors, they have been named, although infrequently, as defendants in actions asserting asbestos-related liability. From the filing of the first such suit in 1992 until the Petition Date (as defined below), 160 plaintiffs filed approximately 100 asbestos suits against the TCEH Debtors, mostly in Texas.[3] The majority of these cases were filed before 2006. Consistent with an overall drop in Texas asbestos litigation due to tort reform and other factors, approximately 25 suits were filed against the TCEH Debtors between 2007 and the Petition Date.

9. Sixty-nine of the approximately 100 cases were dismissed with zero settlement payment, and 23 cases remained pending as of the Petition Date. Seventy-two plaintiffs received some settlement payment. The TCEH Debtors are unaware of any asbestos-related verdict entered against them.

---

[3] Of the 160 plaintiffs, 105 asserted non-malignant injuries, 14 reported lung cancers, three reported cancer other than lung cancer, and 38 reported mesothelioma.

10. In total, prior to the Petition Date, the TCEH Debtors incurred approximately $11.1 million in prepetition costs related to asbestos litigation—approximately $6.5 million in defense costs and approximately $4.6 million in settlement costs over the course of approximately 22 years.

## II. The Chapter 11 Cases and General Claims Process.

11. On April 29, 2014 (the "Petition Date"), each of the Debtors filed a voluntary petition with the Court under the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Court has entered a final order for joint administration of these chapter 11 cases [D.I. 849]. The Court has not appointed a trustee. The Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") formed an official committee of unsecured creditors of Energy Future Competitive Holdings Company LLC ("EFCH"), Texas Competitive Electric Holdings Company LLC ("TCEH"), the direct and indirect Debtor subsidiaries of EFCH and TCEH, and EFH Corporate Services Company (the "TCEH Creditors' Committee") on May 13, 2014 [D.I. 420] and an official committee of unsecured creditors of Energy Future Holdings Corp., Energy Future Intermediate Holding Company, LLC, EFIH Finance, Inc., and EECI, Inc. (the "EFH Creditors' Committee") on October 27, 2014 [D.I. 2570]. Further information regarding the Debtors' business operations and capital structure is set forth in the declaration of Paul Keglevic in support of the Debtors' first day motions [D.I. 98] and the *Third Amended Disclosure Statement for the Second Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 8753] (the "TCEH Disclosure Statement").

4

12. On June 30, 2014, the Debtors filed their schedules of assets and liabilities (the "Schedules") and statements of financial affairs (the "Statements" and together with the Schedules, the "Schedules and Statements") [D.I. 1237–1307, 1319–1329, 1331–1343, 1345].[4]

13. On May 2, 2014, the Court entered an order establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) as the final date and time for certain customer claimants holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases (the "Customer Proofs of Claim") [D.I. 307].

14. On August 18, 2014, the Court entered an order (the "General Bar Date Order") also establishing October 27, 2014, at 5:00 p.m. (prevailing Eastern Time) (the "General Bar Date") as the final date and time for all persons and entities holding or asserting a claim against the Debtors arising on or before the Petition Date to file proofs of claim in these chapter 11 cases (the "Non-Customer Proofs of Claim" and with the Customer Proofs of Claim, the "Non-Asbestos Proofs of Claim"), except for claims specifically exempt from complying with the General Bar Date, including claims relating to alleged asbestos exposure [D.I. 1866].

15. To date, claimants have filed over 10,000 Non-Asbestos Proofs of Claim in these chapter 11 cases. Since the General Bar Date, the Debtors have conducted a process to review and reconcile these Non-Asbestos Proofs of Claim. To avoid possible improper recovery by claimants, the Debtors have filed 43 omnibus objections to various Non-Asbestos Proofs of Claim resulting in the disallowance or modification of approximately 5,300 claims. The Debtors expect to file additional omnibus objections to claims.

---

[4] On September 26, 2014, the Debtors filed amended Schedules and Statements [D.I. 2146-2216], addressing certain discrete issues.

**III.    The Asbestos Claims Process.**

16.     Beginning in December 2014, the Debtors engaged the EFH Creditors' Committee in discussions regarding an asbestos bar date and notice procedures. On January 7, 2015, the Court issued a lengthy, published opinion holding that it could establish a bar date for unmanifested asbestos claims.[5]

17.     On July 30, 2015, the Court entered an order establishing December 14, 2015, at 5:00 p.m. (prevailing Eastern Time) (the "Asbestos Bar Date") as the final date and time for all persons and entities holding or asserting an asbestos-related claim against the Debtors to file proofs of claim in these chapter 11 cases (the "Asbestos Proofs of Claim"), except for claims specifically exempt from complying with the Asbestos Bar Date, and approving the form and manner of notice of the Asbestos Bar Date [D.I. 5171].

18.     The Debtors provided written notice of the Asbestos Bar Date via mail on current and former employees and contractors as well as known asbestos claimants. As detailed in the Asbestos Bar Date Order and exhibits thereto, the Debtors also effectuated an extensive publication notice plan, including: (i) providing notice in consumer publications, local newspapers, national newspapers, trade publications, and union labor publications; (ii) establishing a dedicated website and toll-free number; (iii) placing Internet banner advertisements and sponsoring Internet search listings; (iv) distributing an informational release to approximately 4,200 print and broadcast media outlets and 5,500 online outlets; and (v) engaging in targeted outreach to labor unions.

19.     In connection with the Asbestos Bar Date, claimants filed approximately 32,000 Asbestos Proofs of Claim. Based on the Debtors' and their advisors' preliminary analysis of the

---

[5] *See In re Energy Future Holdings Corp.*, 522 B.R. 520, 523 (Bankr. D. Del. 2015).

6

Asbestos Proofs of Claim, the Debtors have preliminarily identified approximately 5,000 Asbestos Proofs of Claim asserted against the TCEH Debtors (the "TCEH Asbestos Claims"). Of the TCEH Asbestos Claims, the Debtors have preliminarily identified approximately 1,000 manifested claims and approximately 4,000 unmanifested claims. The Debtors have also preliminary identified that claimants asserted approximately 100 late-filed Asbestos Proofs of Claim against the TCEH Debtors. The TCEH Debtors note that the number of Asbestos Poofs of Claim discussed in the Summary Ankura Report may vary somewhat from the above-stated numbers due to the timing of Ankura's receipt of the Asbestos Proofs of Claim data.

20. The Debtors continue to review the Asbestos Proofs of Claim and reserve all rights to object to such claims to the extent they determine that any claim is not valid.

**IV.    The Claims Reconciliation Process and Estimation.**

21. On August 23, 2016, the Debtors filed the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9374] (the "Plan").

22. On August 29, 2016, the Court entered the *Order Confirming the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code as it Applies to the TCEH Debtors and EFH Shared Services Debtors* [D.I. 9421].

23. The Plan classifies TCEH Unsecured Debt Claims—including the TCEH First Lien Deficiency Claims, the TCEH Second Lien Note Claims, the TCEH Unsecured Note Claims, and the PCRB Claims—in Class C4. The aggregate amount of Allowed Class C4 Claims (excluding the TCEH First Lien Deficiency Claims, which are being waived for the benefit of the Holders of TCEH Deficiency Recipient Claims, as set forth in the Plan) total approximately $7,655,869,077.

7

RLF1 15217907v.1

24.     The TCEH Asbestos Claims are classified in Class C5 of the Plan, which consists of the general unsecured claims against the TCEH Debtors other than EFCH. In addition to the TCEH Asbestos Claims, Class C5 also includes Non-Asbestos Proofs of Claim filed by trade creditors, taxing authorities, and other general unsecured creditors. As noted in Exhibit F to the TCEH Disclosure Statement, the Debtors anticipate that the aggregate liability of the Class C5 Claims will be approximately $145,000,000.

25.     The Plan provides that Holders of Allowed Claims in Class C4 and Class C5 each receive their pro rata share—calculated based on the aggregate amount of Allowed Class C4 Claims and Allowed Class C5 Claims—of the TCEH Cash Payment, which is $550,000,000 less certain adjustments.

26.     Article VII.C of the Plan provides, in pertinent part:

> If the TCEH Debtors determine, in their reasonable discretion and in consultation with the TCEH Committee, that (1) one or more Disputed Class C5 Claims are capable of estimation by the Bankruptcy Court, (2) estimation will materially improve TCEH Effective Date distributions to Holders of Allowed Class C5 Claims, and (3) estimation is otherwise in the best interests of the Estates, the TCEH Debtors shall file one or more motions to estimate such Disputed Class C5 Claims, which motion or motions shall be filed and noticed to be heard (on regular notice to all parties in interest) by the Bankruptcy Court before the TCEH Effective Date (or such other date as determined by the Bankruptcy Court).

No party objected to this provision or argued that this Court lacked jurisdiction to implement it.

27.     While the Debtors' claims administration process remains ongoing, the TCEH Debtors (or Reorganized TCEH Debtors, as applicable) seek to make meaningful distributions to holders of Allowed Claims as soon as reasonably practicable. To enable such distributions to go forward, and pursuant to Article VII.C of the Plan, the TCEH Debtors—in consultation with the TCEH Creditors' Committee—have determined that estimation of the maximum potential value

8

of the TCEH Asbestos Claims is necessary to facilitate distribution of the TCEH Cash Payment as soon as reasonably practicable.

**V.     The Summary Ankura Report.**

28.    In July 2016, the Debtors retained Ankura Consulting Group ("Ankura") to evaluate the prepetition asbestos-related bodily injury claims brought against the TCEH Debtors and the TCEH Asbestos Claims for the purpose of providing a forecast of the cost of resolving the TCEH Asbestos Claims.

29.    Dr. Thomas Vasquez authored the Summary Ankura Report. Dr. Vasquez is a recognized expert in statistical techniques and modeling. Over the past 20 years, he has particularly focused on evaluating loss from asbestos-related and other bodily injury claims, including forecasting future losses. His curriculum vitae is attached at Appendix A to the Summary Ankura Report, which is attached as **Exhibit 1** hereto.

30.    The Debtors provided Ankura with detailed information regarding the Debtors' corporate history, the prepetition asbestos-related claims filed against the TCEH Debtors, additional factual detail regarding the largest, prepetition dollar-value settlements, the Asbestos Proofs of Claim data, and the Asbestos Proofs of Claims.

31.    In the Summary Ankura Report, Dr. Vasquez examined the prepetition asbestos bodily injury claims filed against the TCEH Debtors, including settled claims, claims dismissed with zero settlement payment, and the handful of claims filed against the TCEH Debtors that were pending at the Petition Date. Dr. Vasquez examined the rates at which such claims were filed against the TCEH Debtors, the propensity of asbestos claimants to sue the TCEH Debtors as compared to the total population of asbestos bodily injury claims, and the average defense costs for zero-pay and settled claims.

32. Dr. Vasquez also examined the TCEH Asbestos Claims. Based on the limited information provided in the Asbestos Proofs of Claims, Dr. Vasquez determined the claims were of low quality. Accordingly, he estimated the cost of resolving future claims that would have been filed against the TCEH Debtors, absent the bankruptcy.[6]

33. At page 15 of the Summary Ankura Report, Dr. Vasquez calculates two scenarios for forecasting the total cost of resolving all pending and future asbestos bodily injury claims against the TCEH Debtors. Scenario 1 uses a calibration period from 2010 to 2013 to calculate the indemnity values for pending and future claims. Scenario 2 uses a calibration period from 2011 to 2013. Scenario 1 results in a high-end nominal value of $17.2 million (and $13.2 million net present value) for the aggregate resolution costs (including, but not limited to, indemnity and defense costs) for present and future asbestos bodily injury claims against the TCEH Debtors. Scenario 2 provides a low-end nominal value of $10.9 million.

34. The TCEH Debtors believe that $17.2 million is a reasonable representation of the nominal <u>maximum</u> aggregate value of the TCEH Asbestos Claims, solely for purposes of calculating distributions to Holders of Allowed Class C4 and C5 Claims.

**Basis for Relief**

**I.  The Bankruptcy Code and Plan Authorize Estimation of the TCEH Asbestos Claims.**

35. The Bankruptcy Code provides bankruptcy courts with authority to estimate claims so that distributions can be made. *See In re Great All. Title & Escrow, LLC*, 2009 WL

---

[6] Dr. Vasquez's calculations regarding the numbers of Asbestos Proofs of Claim are based on a preliminary data set of Asbestos Proofs of Claim provided to him in July 2016 and differ somewhat from the numbers of Asbestos Proofs of Claim stated elsewhere in the Motion. As stated in the Summary Ankura Report, Dr. Vasquez continues to examine the Asbestos Proofs of Claim as additional claims are received and reserves the right to refine his preliminary analysis. In any event, because Dr. Vasquez did not rely on the Asbestos Proofs of Claim data for purposes of calculating the numbers or values of future claims, the precise number of Asbestos Proofs of Claim does not impact the analysis.

2018986, at *2 (Bankr. E.D. Va. July 5, 2009); *In re Adelphia Bus. Sols., Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) ("Estimation, authorized under section 502(c) of the Code, provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the results of legal proceedings that could take a very long time to determine.").

36. Section 502(c) of the Bankruptcy Code provides that "[t]here shall be estimated for purpose of allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1). The prospects of a fair reorganization may be "completely thwarted if the energies of the debtor's executives and officers are initially diverted by, and the resources of the debtors are dissipated in the expenses of litigating, the trial of thousands of personal injury suits in the courts throughout the land spread over an interminable period of time." *In re A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1012 (4th Cir. 1986)

37. Bankruptcy courts have used this authority to estimate mass tort personal injury claims, including asbestos claims. *See In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014) (estimating debtor's aggregate liability for mesothelioma claims); *In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 682, 692 (Bankr. S.D. Ohio 1995) (estimating asbestos personal injury claims); *In re UNR Industrs., Inc.*, 45 B.R. 322, 326 (N.D. Ill. 1984) (recognizing that bankruptcy court could estimate 17,000 asbestos-related personal injury and wrongful death claims, although not "for purposes of distribution"); *c.f. In re A.H. Robins Co., Inc.*, 88 B.R. 742, 747 (E.D. Va. 1988) (estimating class of Dalkon Shield-related mass tort personal injury claims).[7]

---

[7] Based on the foregoing, the Debtors respectfully submit that the Court has jurisdiction to enter the Order. However, to the extent that the Court concludes that it does not have jurisdiction to enter the Order, the Debtors respectfully request that, in the alternative, the Court (1) enter a report and recommendation to the United States District Court for the District of Delaware (the "District Court")

38.  Recognizing that courts cannot estimate the value of claims with absolute certainty, estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim." *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135 (3d Cir. 1982); *see also In re Baldwin-United Corp.*, 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985) ("estimation does not require that a bankruptcy judge be clairvoyant").  The principal consideration when estimating the value of claims is "to promote a fair distribution to creditors through a realistic assessment of uncertain claims." *O'Neill v. Continental Airlines. Inc.*, 981 F.2d 1450, 1461 (5th Cir. 1993).

39.  There is no universal procedure for estimating claims under section 502(c) of the Bankruptcy Code.  Rather, a court should apply "whatever method is best suited to the particular contingencies at issue." *Bittner*, 691 F.2d at 135; *see also In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984).  However, when estimating claims, the burden of proof "should be consistent with the burden of proof in claims litigation." *In re Frascella Enters., Inc.*, 360 B.R. 435, 458 (Bankr. E.D. Pa. 2007).  Therefore, while a proof of claim constitutes prima facie evidence of the validity and amount of the claim, a debtor "need only present evidence supporting its objection to shift the burden of proving the claim to the claimant, who bears the ultimate burden of proving the claim." *In re Stone Hedge Props.*, 191 B.R. 59, 65 (Bankr. M.D. Pa. 1995).  The claimant must then prove the validity of its claim "by a preponderance of the truncated evidence presented at the hearing." *In re FRG, Inc.*, 121 B.R. 451, 457 (Bankr. E.D. Pa. 1990).

40.  After a thorough review of the TCEH Debtors' claims history and these chapter 11 cases, Dr. Vasquez has identified a reasonable estimate of the aggregate maximum potential value of the TCEH Asbestos Claims.  In the Summary Ankura Report, Dr. Vasquez examined

---

recommending that the District Court enter a final order granting the Motion and (2) assist the Debtors in any way possible to accelerate the District Court review process.

the prepetition asbestos bodily injury claims filed against the TCEH Debtors, including settled claims, claims dismissed with zero settlement payment, and the handful of asbestos claims filed against the TCEH Debtors that were pending at the Petition Date. Dr. Vasquez examined the rates at which such claims were filed against the TCEH Debtors, the propensity of asbestos claimants to sue the TCEH Debtors as compared to the total population of claims, and the average defense costs for zero-pay and settled claims. He provided two scenarios for the estimated value of the present and future asbestos claims, with a high-end and low-end estimate.

41. Dr. Vasquez also examined the TCEH Asbestos Claims. Based on the limited information provided in the Asbestos Proofs of Claims, Dr. Vasquez determined the claims were of low quality. Accordingly, he estimated the cost of resolving future claims that would have been filed against the TCEH Debtors, absent the bankruptcy.

42. Pursuant to section 502(c) of the Bankruptcy Code and Article VII.C of the Plan, the TCEH Debtors have presented sufficient evidence on which to base a reasonable estimate of the TCEH Asbestos Claims. Accordingly, this Court should determine the maximum value, for distribution purposes only, of the TCEH Asbestos Claims.

## II. Estimation of the TCEH Asbestos Claims for Distribution Purposes Only is Necessary for a Successful Reorganization.

43. Estimation of TCEH Asbestos Claims, for distribution purposes only, is necessary for the successful reorganization of the TCEH Debtors. By establishing the aggregate maximum value of TCEH Asbestos Claims for purposes of distribution, the TCEH Debtors (or Reorganized TCEH Debtors) can have certainty that they are reserving the appropriate amount of funds to make distributions on account of such claims and can then make meaningful distributions to other Holders of Allowed Claims as soon as reasonably practicable.

44. The estimation process requires balancing (a) the need to protect the interests of the Holders of TCEH Asbestos Claims by ensuring that ample funds are reserved for those claimants with (b) the need to make meaningful distributions to Holders of Allowed Claims without undue delay.

45. If the Court does not set a maximum estimated value on the TCEH Asbestos Claims, then the TCEH Debtors may be restricted in their ability to make reasonable distributions before all contingencies underlying those claims have closed—such as the resolution of ongoing litigation that is unlikely to be resolved for at least several years—and the TCEH Debtors have asserted (and the Court has resolved) all objections to the TCEH Asbestos Claims.

46. Waiting to make distributions to the Holders of Allowed Class C4 and C5 Claims until all asserted TCEH Asbestos Claims have been resolved would unnecessarily and improperly delay distributions for undisputed claims that the TCEH Debtors wish to proceed. This would contravene the underlying chapter 11 policy that a "reorganization must be accomplished quickly and efficiently." *Bittner*, 691 F.2d at 137; *see also In re Enron Corp.*, 2006 WL 544463, at *4 (Bankr. S.D.N.Y. Jan. 17, 2006) ("[T]he estimation of claims promotes the purpose of setting the amount of claims that are to receive distributive shares.").

47. Even assuming the TCEH Asbestos Claims were allowed for $100 million more than the TCEH Debtors anticipated, the TCEH Asbestos Claims comprise a very small percentage of the anticipated allowed Claims in Classes C4 and C5.[8] It would be inequitable for this fraction of the claims universe to stymie the TCEH Debtors' (or Reorganized TCEH

---

[8] $100,000,000 / ($7,655,869,077 (Class C4 Claims) + $145,000,000 (amount set forth in TCEH Disclosure Statement for all Class C5 Claims) + $100,000,000 (additional Allowed TCEH Asbestos Claims)) = 1.27 percent.

Debtors') ability to make distributions to creditors who have already waited two-plus years for a recovery.

48. This Court should exercise its authority to estimate the TCEH Asbestos Claims, thereby facilitating the ability of the TCEH Debtors to make prompt and meaningful distributions to their creditor constituencies.

## Reservation of Rights

49. Nothing contained in this Motion or any actions taken by the Debtors pursuant to the relief granted in the Order is intended or should be construed as: (a) an admission as to the validity of any particular claim (including any TCEH Asbestos Claim) against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim (including any TCEH Asbestos Claim) on any grounds; (c) a promise or requirement to pay any particular claim (including any TCEH Asbestos Claim); (d) an admission by the Debtors that any contract or lease is executory or unexpired, as applicable; (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) a request or authorization to assume or reject any agreements under section 365 of the Bankruptcy Code; (g) a waiver of any party's rights to assert that any other party is in breach or default of any agreement; or (h) an admission that any contract or lease is integrated with any other contract or lease.

## Notice

50. The TCEH Debtors shall provide notice of this Motion on the date hereof via first class mail to: (a) the U.S. Trustee; (b) counsel to the TCEH Creditors' Committee; (c) counsel to the EFH Creditors' Committee; (d) Wilmington Trust, N.A., in its capacity as administrative agent under the TCEH first lien credit agreement and collateral agent under the TCEH intercreditor agreements and counsel thereto; (e) Bank of New York Mellon Trust Company,

15

RLF1 15217907v.1

N.A., in its capacity as indenture trustee under: (i) the TCEH unsecured pollution control revenue bonds; and (ii) the EFCH 2037 Notes due 2037, and counsel thereto; (f) American Stock Transfer & Trust Company, LLC, in its capacity as indenture trustee under: (i) the 9.75% EFH senior unsecured notes due 2019; (ii) the 10.0% EFH senior unsecured notes due 2020; (iii) the 10.875% EFH LBO senior unsecured notes due 2017; (iv) the 11.25%/12.0% EFH LBO toggle notes due 2017; (v) the 5.55% EFH legacy notes (series P) due 2014; (vi) the 6.50% EFH legacy notes (series Q) due 2024; and (vii) the 6.55% EFH legacy notes (series R) due 2034, and counsel thereto; (g) Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacities as indenture trustee under: (i) the 11.0% EFIH senior secured second lien notes due 2021; and (ii) the 11.75% EFIH senior secured second lien notes due 2022, and counsel thereto; (h) UMB Bank, N.A. in its capacity as indenture trustee under: (i) the 9.75% EFIH senior unsecured notes due 2019; and (ii) the 11.25%/12.25% EFIH senior toggle notes due 2018, and counsel thereto; (i) Delaware Trust Company of Delaware in its capacity as indenture trustee under: (i) the 6.875% EFIH senior secured notes due 2017; (ii) the 10.0% EFIH senior secured notes due 2020; and (iii), the 11.50% TCEH senior secured notes due 2020, and counsel thereto; (j) Law Debenture Trust Company of New York in its capacity as indenture trustee under: (i) the 10.25% TCEH senior unsecured notes due 2015; and (ii) the 10.50%/11.25% TCEH senior toggle notes due 2016, and counsel thereto; (k) Wilmington Savings Fund Society, FSB in its capacity as indenture trustee under the 15.0% TCEH senior secured second lien notes due 2021, and counsel thereto; (l) counsel to certain holders of claims against the Debtors regarding each of the foregoing described in clauses (c) through (j); (m) the agent for the TCEH debtor-in-possession financing facility and counsel thereto; (n) the agent for the EFIH debtor-in-possession financing facility and counsel thereto; (o) counsel to certain

holders of equity in Texas Energy Future Holdings Limited Partnership; (p) counsel to the Ad Hoc Committee of TCEH Unsecured Noteholders; (q) counsel to the Ad Hoc Committee of TCEH Second Lien Noteholders; (r) Oncor Electric Delivery Holdings Company LLC and counsel thereto; (s) Oncor Electric Delivery Company LLC and counsel thereto; (t) the Securities and Exchange Commission; (u) the Internal Revenue Service; (v) the Office of the United States Attorney for the District of Delaware; (w) the Office of the Texas Attorney General on behalf of the Public Utility Commission of Texas; (x) counsel to the Electric Reliability Council of Texas; (y) those parties that have requested notice pursuant to Bankruptcy Rule 2002; and (z) counsel for the claimants that filed the TCEH Asbestos Claims and pro se claimants that filed TCEH Asbestos Claims. The TCEH Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

51.     No prior request for the relief sought in this Motion has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the TCEH Debtors respectfully request that the Court enter the Order granting the relief requested herein and granting such other and further relief as is appropriate under the circumstances.

Dated: September 22, 2016
      Wilmington, Delaware

*/s/ Jason M. Madron*
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
    defranceschi@rlf.com
    madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
    stephen.hessler@kirkland.com
    brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
    marc.kieselstein@kirkland.com
    chad.husnick@kirkland.com
    steven.serajeddini@kirkland.com

*Co-Counsel to the Debtors and Debtors in Possession*