**<u>EXHIBIT 1</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 467, 8598, 9474** |

## ORDER AUTHORIZING SALE OF NORTH MAIN PROPERTY

**WHEREAS,** the Debtor desires to sell the two tracts of land, Tract I being approximately 30.778 acres and Tract II being a separated tract of approximately 4.706 acres, containing approximately 35.484 total acres in the aggregate, more or less, situated in Tarrant County, Texas, more particularly described as "Tract I" and "Tract II" in **Exhibit A** attached hereto and made a part hereof (collectively, the "Property").

**WHEREAS,** the Property includes an approximately 7.009 acres area on Tract I where an approximately 3.6-acre area of contaminated soils are capped in place, and groundwater located outside of and surrounding the capped portion contains groundwater monitoring wells and groundwater treatment system (collectively referred to herein as the "Site").

**WHEREAS,** the Tarrant Regional Water District, a Water Control and Improvement District, a conservation and reclamation district created under Article 16, Section 59 of the Texas Constitution ("TRWD") desires to purchase the Property.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**WHEREAS,** Texas Commission on Environmental Quality ("TCEQ") is the governmental unit with regulatory responsibility for human health, safety and, the environment with respect to the Property.

**WHEREAS,** TRWD has agreed to certain conditions to the sale as set forth below and such conditions are satisfactory to TCEQ and the Debtor.

**WHEREAS,** upon the Amended and Superseding Order Establishing Procedures to Sell, Transfer, or Abandon Certain De Minimis Assets entered on June 3, 2016 [D.I. 8598] (the "De Minimis Asset Sale Order"); and no answer, objection, or other responsive pleading to the Notice of Sale, filed on September 2, 2016 [D.I. 9474] (the "Sale Notice"),[2] having been filed by the objection deadline of September 12, 2016, it is **HEREBY ORDERED THAT**:

1.    Financial assurance in the amount of $5,531,032.00 (the "Fund") shall be wired directly to the Texas Comptroller's Texas Treasury Safekeeping Trust Company's ("TTSTC") TCEQ account, and into the TRWD subaccount, in accordance with paragraph 2 below. The Fund shall be held for the benefit of TCEQ to ensure completion of the environmental requirements as described in the Financial Assurance Agreement ("FAA"), attached hereto as **Exhibit B**, and Sections 9 and 18(a) of the Conveyance Agreement, attached hereto as **Exhibit C**.

2.    Luminant will deposit into TCEQ's TTSTC account Two Million Seven Hundred Sixty Five Thousand Five Hundred Sixteen Dollars ($2,765,516.00) and TRWD will separately deposit into TCEQ's TTSTC account Two Million Seven Hundred Sixty Five Thousand Five Hundred Sixteen Dollars ($2,765,516.00).

---

[2] Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the Sale Notice.

2

3.      Once such funds are deposited, neither Luminant nor TRWD shall have the right to direct or control the use of such funds, except as provided in the FAA or as approved in writing by the TCEQ's Executive Director or their designee.

4.      TCEQ, and any successor thereto, is a beneficiary to the environmental provisions of the Conveyance Agreement and may enforce the provisions of the Conveyance Agreement relating to the environmental condition of the Property.

5.      Upon closing of the sale, pursuant to the terms of the Conveyance Agreement, the Agreed Order issued on November 24, 1993 by the Texas Natural Resource Conservation Commission, (predecessor to the TCEQ), In the Matter of Texas Utilities Electric; SWR No. 39927 is satisfied.

6.      This Sale Order is fully enforceable by the TCEQ, and any successor thereto, as the sole beneficiary to this Sale.

7.      This Court and any Texas State Court of competent jurisdiction shall have concurrent jurisdiction with respect to all matters arising from or related to the implementation of this Sale Order.

8.      TRWD agrees to be bound by this Sale Order.

9.      The Sale documents shall include the following:

   (a)      The Conveyance Agreement; and

   (b)      The Financial Assurance Agreement.

10.      Copies of these documents are incorporated by reference to this Sale Order as if fully set forth herein.

11.      Subject to the order confirming the Debtors' plan of reorganization [D.I. 9421], notwithstanding anything to the contrary in this Sale Notice, the De Minimis Asset Sale Order and/or any sale agreement, the sale does not release, nullify or enjoin the enforcement of any

3

liability to a governmental unit under police and regulatory statutes or regulations to which any entity would be subject as an owner or operator of the property after the date of the sale, and the buyer reserves all rights and defenses with respect to any such liability other than asserting that the buyer is free of such liability on account of the De Minimis Asset Sale Order. Nothing contained in the Sale Notice, the De Minimis Asset Sale Order and/or any sale agreement releases the buyer of the Property from compliance with any applicable licensing, permitting, registration, authorization, or approval requirements of or with respect to a governmental unit.

12.     The Sale is an arm's-length transaction entitled to the protection of section 363(m) of the Bankruptcy Code.

13.     The Debtors are authorized under section 363(b) of the Bankruptcy Code to sell certain property as described in the Sale Notice (the "Sale"), without further order of the Court or notice to any party, upon the terms and conditions set forth herein and in the Sale Notice.

14.     This Sale Order shall be binding upon and shall govern the acts of all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the property sold pursuant to this Sale Order, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, administrative agencies, governmental departments, secretaries of state and federal, state, and local officials, and each of such person and entity is hereby directed to accept this Sale Order as sole and sufficient evidence of such transfer of title and shall rely upon this Sale Order in consummating the transactions contemplated hereby.

RLF1 15234437v.1

15.     The Sale shall be free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens") pursuant to 363(f) of the Bankruptcy Code, with such Liens attaching only to the proceeds of the Sale, in the same order of priority, with the same validity, extent, and priority as immediately prior to the Sale.

16.     All net proceeds from the Sale (the "Sale Proceeds") shall be treated in accordance with the De Minimis Asset Sale Order, the *Final Order (A) Approving Postpetition Financing for Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates, (B) Granting Liens and Providing Superpriority Administrative Expense Claims, and (C) Modifying the Automatic Stay* [D.I. 856] (the "TCEH DIP Order") authorizing certain of the Debtors to obtain postpetition financing pursuant to that certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement, dated as of May 5, 2014 (as amended, restated, supplemented, or otherwise modified from time to time, the "TCEH DIP Credit Agreement"), and the terms of the TCEH DIP Credit Agreement and related documents (together, the "TCEH DIP Documents").

17.     The TCEH Debtors are authorized to pay those necessary fees and expenses, net of any applicable Sale Proceeds, incurred in the Sale, including removal costs and commission fees to agents, brokers, auctioneers, and liquidators.

18.     To the extent that any inconsistency exists between this order and the terms of the TCEH DIP Order, or any of the TCEH DIP Documents, the terms of such TCEH DIP Order or TCEH DIP Documents (as applicable) shall control.

19.     Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7062, 9014 or otherwise, the terms and conditions of this Sale Order shall be immediately effective and enforceable upon its entry.

5

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Order in accordance with the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order Establishing Procedures to Sell, Transfer, or Abandon Certain De Minimis Assets* [D.I. 467] and Sale Notice.

Dated: September _____, 2016
       Wilmington, Delaware

                                                 _____
                                                 THE HONORABLE CHRISTOPHER S. SONTCHI
                                                 UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**



TBPLS Firm 10193887
TBPE Firm 17957

## METES AND BOUNDS DESCRIPTION

### A 35.484 Acre Tract, more or less

Being a 35.484 acre tract, more or less, situated in the A. Gouhenant Survey, Abstract No. 582, the A. Robinson Survey, Abstract No. 1289, and the M. Baugh Survey, Abstract No. 106, and being comprised of two tracts herein described as "Tract I", a 30.778 acres tract of land more or less out of that remaining portion of land quitclaimed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company by Quitclaim Deed of record in Volume 2423, Page 375 of the Deed Records of Tarrant County, Texas, that same tract of land quitclaimed from the Southwestern Railway Company of Texas to Texas Electric Service Company by Quitclaim Deed recorded in Volume 2423, Page 271, of the Deed Records of Tarrant County, Texas, that certain tract of land conveyed from Tarrant County Water Control Improvement District Number One to Texas Electric Service Company by deed of record in Volume 2745, Page 96 of the Deed Records of Tarrant County Texas, and by the intent as more clearly stated in that certain deed of record from the Tarrant County Water Control District Number One to the Texas Electric Service Company recorded in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, all of those lands conveyed by deed from the Tarrant County Water Control District Number One to Texas Electric Service Company of record in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, a portion of that tract of land conveyed from H.H. Susie M. Cobb to Fort Worth Power and Light Company by deed of record in Volume 759, Page 322 of the Deed Records of Tarrant County, Texas, a portion of the tract of land conveyed to Texas Electric Service Company by deed of record in Volume 15342, Page 160 of the Official Public Records of Tarrant County, Texas, same being that tract of land conveyed from the City of Fort Worth to Fort Worth Power and Light Company by deed of record in Volume 759, Page 324 of the Deed Records of Tarrant County, Texas, all of that called First Tract and Second Tract, portions of the called Fifth and Sixth tract of land conveyed to TXU Generation Company by deed of record in Volume 15342, Page 160 of the Deed Records of Tarrant County, Texas and described by deed of record from R.L. Crowdus and wife, Maud T. Crowdus to Forth Worth Power & Light Company by deed of record in Volume 823, Page 1 of the Deed Records of Tarrant County, Texas, and that same tract of land conveyed from Maud T. Crowdus by deed of record in Volume 1040, Page 319 of the Deed Records of Tarrant County, Texas, part of Blocks 163, 164, 165 and 166 of the City of Fort Worth plat as recorded in Volume 204, Page 59 of the Plat Records of Tarrant County, Texas, part of the Map of the Texas Electric Service Co. Fort Worth Plant Site plat as recorded in Volume 388-E, Page 35 of the Plat Records of Tarrant County, Texas, part of the North Fort Worth Tarrant County Texas plat as recorded in Volume 63, Page 149-150 of the Plat Records of Tarrant County, Texas, all of a tract of land conveyed from W.S. Essex and wife to Fort Worth Power & Light by deed of record in Volume 361, Page 469 of the Deed Records of Tarrant County, Texas, part of a tract of land described as being the Fourth Tract in a deed from J.R. Nutt to Fort Worth Power and Light Company and recorded in Volume 383, Page 27 of the Deed Records of Tarrant County, Texas, same tract also being described in a deed from S.H. Ferril, et ux to Fort Worth Power & Light Co. and recorded in Volume 405, Page 569 of the Deed Records of Tarrant County, Texas, part of both tracts described in a deed from the City of Fort Worth to Fort Worth Power and Light Company and recorded in Volume 682, Page 112 of the Deed Records of Tarrant County, Texas, part of seven (7) tracts described as First, Second, Third, Fourth, Fifth, Sixth and Seventh Tracts in a deed from Joe W. Crowdds to Fort Worth Power and Light Company and recorded in Volume 804, Page 635 of the Deed Records of Tarrant County, Texas, all of a tract of land described in deed from F.E. Guess to Forth Worth Power and Light Company and recorded in Volume 1037, Page 406 of the Deed Records of Tarrant County, Texas, part of thirteen (13) tracts described as Parcel Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Thirty-Eight and Forty-Five in a deed from Fort Worth Power and Light Company to Texas Electric Service Company and recorded in Volume 1108, Page 125 of the Deed Records of Tarrant County, Texas, same being described in a deed from Fort Worth Power and Light Company to Texas Electric Service Company and recorded in Volume 1108, Page 125 of the Deed Records of Tarrant County, Texas, and also comprised of "Tract II", a 4.706 acre remainder of a tract of land comprised of that certain tract of land conveyed from E.W. Wisehart and Mary Wisehart to Fort Worth Power & Light described as Tract 2 by deed of record in Volume 968, Page 571 of the Real Records of Tarrant County, Texas, and that same tract of land conveyed from G.T Hubbard to Texas Electric Service Company by deed of record in Volume 3306, Page 355 of the Deed Records of Tarrant County, Texas. Said compilation of land totals 35.484 acres of land more or less and referenced herein as Tract I and Tract II, and being more particularly described in the metes and description as follows:

"TRACT I" - BEGINNING at a found Cotton Spindle (Y = 6,962,598.33, X = 2,325,621.21) in the southerly right of way line of North Fourth Street (60' R.O.W.) said point being at the northwest corner of a tract of land described as "Annex A - Tract One" as conveyed to Tarrant County College District by deed of record in Instrument #D204331101 of the Official Records of Tarrant County, Texas, same being the northwest corner of said tract of land conveyed to the Tarrant Regional Water District by deed of record in Instrument #D214076713 of the Official Public Records of Tarrant County, Texas, and being on the east line of a portion of North Houston Street as vacated by City Ordinance 2848, from which a found 1/2" iron rod with cap stamped "Brittain Crawford" bears North 59°'49"09 East a distance of 243.45 feet;

*THENCE:* South 30 '01'57" East, along the east line of said vacated portion of North Houston Street, same being the west line of said "Annex A - Tract One, Tarrant Regional Water District, a distance of 731.28 feet to a found 1/2" Iron Rod with yellow cap;



TBPLS Firm 10193887
TBPE Firm 17957

*THENCE:* along the west line of "Annex A – Tract One", Tarrant Regional Water District tract the following six (6) courses and distances:

    *1.* South 60°09'39" West, a distance of 117.27 feet to a found 1/2" Iron Rod with yellow cap;
    *2.* South 30°05'09" East, a distance of 134.79 feet to a found 5/8" Iron Rod with cap stamped "Dunaway Assoc.'
    *3.* South 35°48'22" East, a distance of 183.15 feet to a calculated point;
    *4.* South 42°21'51" West, a distance of 106.64 feet to a calculated point;
    *5.* South 47°38'09" East, a distance of 274.91 feet to a calculated point;
    *6.* South 44°00'22" West, a distance of 72.84 feet to a found 5/8" Iron Rod with cap stamped "Carter Burgess" at the southwest corner of said Tract One, Tarrant Regional Water District tract;

*THENCE:* along the south line of "Annex A – Tract One", Tarrant Regional Water District tract the following seven (7) courses and distances:

    1. South 30°08'32" East, a distance of 24.87 feet to a found 1/2" Iron Rod;
    2. South 64°15'06" East, a distance of 50.98 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
    3. South 78°22'16" East, a distance of 152.86 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
    4. North 72°45'38" East, a distance of 169.63 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
    5. North 59°48'18" East, a distance of 6.46 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
    6. North 39°51'22" East, a distance of 7.55 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
    7. North 63°14'29" East, a distance of 116.47 feet to a found 1/2" Iron Rod with 3" aluminum cap at the southeast corner of "Annex A – Tract One", Tarrant Regional Water District tract and being in the west right-of-way line of said Main Street (100' R.O.W.);

*THENCE:* South 30°03'39" East, along the west right-of-way line of Main Street a distance of 269.69 feet to the approximate center of Trinity River (Current) as located during October 2015;

*THENCE:* South 83°54'18" West, along said approximate center of Trinity River (Current) as located during October, 2015, a distance of 65.26 feet to a calculated point at the northwest corner of a tract of land called Tract 1 conveyed to Tarrant County Water Control District No 1 by deed of record in Volume 2689, Page 118 of the Deed Records of Tarrant County, Texas, same being the northeast corner of a tract of land conveyed from W.S. Essex and wife to Fort Worth Power & Light by deed of record in Volume 361, Page 469 of the Deed Records of Tarrant County, Texas;

*THENCE:* South 00°00'00" East, along the west line of said Tarrant County Water Control District Tract 1 and the east line of said tract conveyed from W.S. Essex a distance of 319.07 feet to a calculated point in the north right-of-way line of Franklin Street;

*THENCE:* South 82°00'00" West, along the north line of said Franklin Street and the south line of said W.S. Essex tract and a tract of land conveyed to R.L. Crowdus to Fort Worth Power & Light by deed of record in Volume 1040, Page 319 of the Deed Records of Tarrant County, Texas, a distance of 293.00 feet to a point at the southwest corner of said R.L. Crowdus tract, same being the southeast corner of a tract of land conveyed to the City of Fort Worth by deed of record in Volume 6099, Page 782 of the Deed Records of Tarrant County, Texas;

*THENCE:* North 00°00'00" West along the west line of said R.L. Crowdus tract and the east line of said City of Fort Worth tract a distance of 152.80 feet to the northeast corner of the City of Fort Worth tract, same being the southeast corner of Ford Street (50' R.O.W.);

*THENCE:* South 62°30'00" West, along the north line of said City of Fort Worth tract and the south right-of-way line of Ford Street a distance of 7.00 feet to an angle point in said north line of said City of Fort Worth tract and the south right-of-way line of Ford Street

*THENCE:* South 77°00'00" West, continuing along the north line of said City of Fort Worth tract and the south right-of-way line of Ford Street a distance of 152.00 feet to a point at the northwest corner of said City of Fort Worth tract, same being the northeast corner of a tract of land called First Tract by deed of record to Fort Worth Power & Light in Volume 823, Page 1;

*THENCE:* South 04°00'00" East, along the west line of said City of Fort Worth tract and the east line of said First Tract a distance of 135.00 feet to a point in the north right-of-way line of Franklin Street, said point being the southwest corner of said City of Fort Worth tract and the southeast corner of the First Tract as conveyed to the Fort Worth Power & Light;

*THENCE:* South 82°00'00" West along the north right-of-way line of Franklin Street and the south line of First Tract and Second Tract conveyed to Fort Worth Power & Light, a distance of 154.38 feet to a point in the east right-of-way line of Taylor Street (50' R.O.W.) as per Lot 1, 2, and 3, Block 1, Radioshack Addition, a subdivision of record Cabinet A, Slide 10730 of the Plat Records of Tarrant County, Texas;



TBPLS Firm 10193887
TBPE Firm 17957

**THENCE:** North 30°44'03" West along the east line of said Taylor Street and the east line of Lot 3, Block 1 of said Radioshack Addition, a distance of 379.88 feet to found 5/8" Iron Rod with cap stamped "Carter Burgess" at the northeast corner of said Lot 3, Block 1, being the east corner of Block 4, Tancor Addition No. 3, a subdivision of record in Volume 388-119, Page 60 of the Plat Records of Tarrant County, Texas, same being in the south line of a tract of land described as Tract Two as conveyed from Tarrant County Water Control District to Texas Electric Service Company by deed of record in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, from which a found "X" in concrete at a point in the east line of Lot 1, Block 1, Radioshack Addition bears South 24°09'05" East a distance of 386.15 feet;

**THENCE:** along the north line of said Block 4, Tancor Addition, No. 3, and the south line of said Tract Two the following nine (9) courses and distances:

1. North 54°20'32" West a distance of 68.56 feet to a point;
2. North 60°48'32" West a distance of 55.76 feet to a point;
3. North 65°03'32" West, a distance of 100.00 feet to a point;
4. North 78°43'32" West, a distance of 100.00 feet to a point;
5. North 84°08'32" West a distance of 100.00 feet to a found 5/8" Iron Rod with cap stamped "Jacobs";
6. South 87°48'16" West, a distance of 204.80 feet to 5/8" Iron Rod with cap stamped "Dunaway Assoc.";
7. South 78°33'32" West, a distance of 101.07 feet to a found 1/2" Iron Rod;
8. South 56°46'51" West, a distance of 400.12 feet to a found 5/8" Iron Rod with cap stamped "Jacobs";
9. South 46°23'19" West, a distance of 38.84 feet to a found 5/8" Iron Rod with cap stamped "Jacobs" for the southwest corner of said Tract Two;

**THENCE:** North 58°03'32" West, along the west line of Tract Two, at 28.64 feet passing a 5/8" Iron Rod with cap stamped "Dunaway Assoc", and continue for a total distance of 140.64 feet to a point at the approximate center of Clear Fork Trinity River (Current) as located during October, 2015, said point being the northwest corner of said Tract Two;

**THENCE:** North 50°01'43" East, along said approximate center of Clear Fork Trinity River (Current) as located during October, 2015, a distance of 142.85 feet to a point of curvature;

**THENCE:** along said curve to the right, having a radius of 1558.76 feet, an arc length of 736.84 feet, a delta of 27°05'03", and a chord which bears North 62°45'35" East a distance of 730.00 feet to a point of intersection of the approximate center of Clear Fork Trinity River (Current) as located during October, 2015, and the north line of Tract A, Texas Electric Service Co. Fort Worth Plant Site, a subdivision of record in Volume 388-E, Page 35, of the Plat Records of Tarrant County, Texas;

**THENCE:** North 21°35'00" West, along the north line of said Tract A, Texas Electric Service Co. Fort Worth Plant Site, a distance of 41.76 feet to a point;

**THENCE:** North 63°00'00" East, continuing along said north line of Tract A, Texas Electric Service Co. Fort Worth Plant Site, a distance of 105.13 feet to a point of intersection of Tract A, Texas Electric Service Co. Fort Worth Plant Site and the approximate center of West Fork Trinity River (Current) as located during October, 2015, same being the southwest line of a tract of land conveyed to Texas Electric Service Company by deed of record in Volume 2745, Page 96 of the Deed Records of Tarrant County, Texas, and intent of said deed is stated clearly in a deed of conveyance for Tract One from Tarrant County Water Control District to Texas Electric Service Company in Volume 3959, Page 597;

**THENCE:** along said approximate center of West Fork Trinity River (Current) as located during October, 2015, and the southwest line of said Texas Electric Service Company tract conveyed by Volume 2745, Page 96, the following seven (7) courses and distances;

1. North 55°08'42" West, a distance of 170.38 feet;
2. North 45°26'55" West, a distance of 84.34 feet;
3. North 40°16'23" West, a distance of 203.07 feet;
4. North 41°41'59" West, a distance of 127.80 feet;
5. North 40°07'24" West, a distance of 75.89 feet;
6. North 36°17'34" West, a distance of 102.71 feet;
7. North 46°59'53" West, a distance of 17.72 feet to a point at the northwest corner of the Texas Electric Service Company tract conveyed by Volume 2745, Page 96;

**THENCE:** North 45°13'54" East, along the northwest line of said Texas Electric Service Company tract conveyed by Volume 2745, Page 96, the northwest line of a Quitclaim deed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company by deed of record in Volume 2423, Page 271, Deed Records of Tarrant County, Texas, and a 7.009 acre tract of land conveyed by Quitclaim Deed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company in Volume 2423, Page 375 of the Deed Records of Tarrant County, Texas, a distance of 702.08 feet to a point at the northeast corner of said 7.009 acre tract;



TBPLS Firm 10193887
TBPE Firm 17957

**THENCE:** South 43°16'16" East, along the east line of the 7.009 acre tract a distance of 7.03 feet to a point at the northwest corner of a tract of land conveyed to TXU Generation Company, LP by deed of record in Volume 2274, Page 536, of the Deed Records of Tarrant County, Texas, said point also being the northwest corner of Block 4-1/2, North Fort Worth Addition, a subdivision of record in Volume Page 149 of the Plat Records of Tarrant County, Texas;

**THENCE:** North 59°59'29" East, along the north line of said TXU Generation Company LP, tract same being the north line of Block 4-1/2 and the south line of North Fourth Street a distance of 98.08 feet to the **POINT OF BEGINNING** of **TRACT I** containing 30.778 acres of land more or less.

**"TRACT II" - BEGINNING** at a found 5/8" Iron Rod with cap stamped "Brooks Baker" (Y = 6,962,177.88, X = 2,328,006.58) at the northeast corner of said Texas Electric Service Company tract conveyed by 3306, Page 355, the northwest corner of Lot 36, and being an angle point in the south line of Lot 37, both of the Cummings Addition, a subdivision of record in Volume 118, Page 32 of the Plat Records of Tarrant County, Texas,

**THENCE:** South 30°28'20" East, along the east line of the Texas Electric Service Company tract, same being the west line of said Lot 36, and the remainder of Lot 35, Cummings Addition, a distance of 149.62 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker" at the east corner of said Texas Electric Service Company tract, same being the southwest corner of said remainder of Lot 35, and being an angle point in the north line of Lot 3, Block 1, Trinity Bluff Addition, according to the subdivision of record in D205151202 of the Official Public Records of Tarrant County, Texas,

**THENCE:** along the south line of said Texas Electric Service Company tract, same being the north line of Lot 3, Block 1, Trinity Bluff Addition, the following three (3) courses and distances:

1. South 30°36'37" West a distance of 54.21 feet to a point;
2. South 38°34'08" West a distance of 54.12 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker";
3. South 59°22'51" West, a distance of 100.31 feet to a found 2" fence corner post at the southwest corner of said Texas Electric Service Company tract, same being the northwest corner of said Lot 3, Block 1, Trinity Bluff Addition, and being in the east line of a tract of land described as Tract 2 conveyed from E.W. Wisehart and wife, Mary Wisehart to Fort Worth Power & Light Company by deed of record in Volume 968, Page 571 of the Real Property Records of Tarrant County, Texas;

**THENCE:** South 30°13'43" East, along the east line of said Fort Worth Power & Light tract and the west line of said Lot 3, Block 1, Trinity Bluff Addition a distance of 189.85 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker" at the south corner of Lot 3, Block 1, Trinity Bluff Addition, from which a found 5/8" Iron Rod with plastic cap stamped "Brooks Baker" bears North 09°23'39" East a distance of 58.12 feet;

**THENCE:** South 24°46'57" West, along the southeast line of the Fort Worth Power & Light Company tract and the northwest line of Lot 4R, Block 1, Trinity Bluff Addition, a subdivision of record in Cabinet B, Slide 3356 of the Plat Records of Tarrant County, Texas and Instrument of record in D207030226 of the Official Public Records of Tarrant County, Texas, a distance of 123.34 feet to a point;

**THENCE:** South 59°39'58" West, along the south line of the Fort Worth Power & Light Company tract and the north lines of Lot 4R, Block 1, Trinity Bluff Addition, and Lot 1, Block 1, Trinity Bluff Addition, a subdivision of record in D205151202 of the Official Public Records of Tarrant County, Texas, and the north line of Lot 1, Block 1, Tarrant County College Downtown Campus Addition, a subdivision of record in Instrument No. D205132348, of the Official Public Records of Tarrant County, Texas, a distance of 299.38 feet to a point for the southwest corner of said Fort Worth Power & Light Company tract;

**THENCE:** North 30°31'29" West, along the southwest line of the Fort Worth Power & Light Company tract, and the northeast line of a 0.23 acre tract of land described as Tract No. 2, conveyed to Tarrant County Water Control and Improvement District No. 1, by deed of record in Volume 2651, Page 225 of the Deed Records of Tarrant County, Texas, a distance of 341.72 feet to a point of curvature at the approximate center of Trinity River (Current) as located during October, 2015;

**THENCE:** along said curve to the left, with the approximate center of Trinity River (Current) as located during October, 2015, having a radius of 1415.71 feet, an arc length of 215.13 feet, a delta angle of 08°42'23", and a chord which bears North 33°12'07" East a distance of 214.92 feet to a point in the southwest line of a 0.675 acre tract of land conveyed to Tarrant Regional Water District by deed of record in Instrument No. D207319687 of the Official Property Records of Tarrant County, Texas;

**THENCE:** South 63°59'31" East, along the southwest line of said 0.675 acre tract a distance of 174.13 feet to the southeast corner of the 0.675 acre tract;

**THENCE:** North 26°00'29" East, along the southeast line of the 0.675 acre tract a distance of 85.00 feet to the northeast corner of the 0.675 acre tract;



TBPLS Firm 10193887
TBPE Firm 17957

**DRIVING** PERFORMANCE.
**DELIVERING** RESULTS.

**THENCE:** North 63°59'31" West, along the northeast line of the 0.675 acre tract a distance of 172.47 feet to a point in the west line of said Tract 2, Fort Worth Power and Light Company as recorded in Volume 968, Page 571 of the Real Property Records of Tarrant County, Texas, same being at the approximate center of Trinity River (Current) as located during October, 2015,

**THENCE:** along said curve to the left, with the approximate center of Trinity River (Current) as located during October, 2015, having a radius of 1415.71 feet, an arc length of 92.65 feet, a delta angle of 03°44'59", and a chord which bears North 23°31'57" East a distance of 92.63 feet to a point;

**THENCE:** North 17°10'53" East, continuing along the approximate center of Trinity River (Current) as located during October, 2015 a distance of 52.23 feet to a point;

**THENCE:** South 72°49'07" East, a distance of 101.10 feet to a point at the lowest acceptable bank of the Trinity River (Current) as located during October, 2015;

**THENCE:** North 74°59'01" East, along the north line of a Texas Electric Service Company tract same being the south line of Lot 37, Cummings Addition, a distance of 159.88 feet to the **POINT OF BEGINNING** of **TRACT II** containing 4.706 acres of land more or less.

All bearings, distances and coordinates are grid and refer to the Texas Coordinate System of NAD83/2011 (HPGN), Texas North Central Zone 4202.

This Field Notes Description constitutes a legal document, and, unless it appears in its entirety, in its original form does not constitute a legal document. It is strongly recommended, for the continuity of future surveys, that this document be incorporated in *all* future conveyances, *without any revisions or deletions.*

This survey was prepared based on a title commitment from Alliant National Title Insurance Company, GF Number 11-00579 with an issued date of 08/31/2016 at 08:00 am.

All bearings, distances and coordinates are grid and refer to the Texas Coordinate System of NAD83/2011 (HPGN), Texas North Central Zone 4202.

This Field Notes Description constitutes a legal document, and, unless it appears in its entirety, in its original form does not constitute a legal document. It is strongly recommended, for the continuity of future surveys, that this document be incorporated in *all* future conveyances, *without any revisions or deletions.*

A plat accompanies this metes and bounds description.



Mark Dillon Harp
Registered Professional Land Surveyor
State of Texas No. 6445
September 20, 2016
Job No. 2015060694

550 Bailey Avenue • Suite 205 • Fort Worth, TX 76107 • Office 817.349.9800 • Fax 979.732.5271 • fscinc.net



BOUNDARY SURVEY OF:
TRACT 1 – 30.778 ACRES
TRACT 2 – 4.706 ACRES

SITUATED IN THE A. GOUHENANT SURVEY, ABSTRACT NUMBER 582, THE A. ROBINSON SURVEY, ABSTRACT NUMBER 1289 AND THE M. BAUGH SURVEY, ABSTRACT NUMBER 106 OF THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS



# BOUNDARY SURVEY OF:
## TRACT 1 - 30.778 ACRES
## TRACT 2 - 4.706 ACRES

SITUATED IN THE A. GOUHENANT SURVEY, ABSTRACT NUMBER 582, THE A. ROBINSON SURVEY, ABSTRACT NUMBER 1289 AND THE M. BAUGH SURVEY, ABSTRACT NUMBER 106 OF THE CITY OF FORT WORTH, TARRANT COUNTY, TEXAS

A. GOUHENANT SURVEY A-582

M. BAUGH SURVEY A-106

A. ROBINSON SURVEY A-1292

TRACT 1 30.778 Acres

TRACT 2 4.706 Acres

## **EXHIBIT B**

## FINANCIAL ASSURANCE AGREEMENT

This Financial Assurance Agreement (**"FAA"**) is entered into between the Texas Commission on Environmental Quality, an Agency of the State of Texas (**"TCEQ"**) and Tarrant Regional Water District, a Water Control and Improvement District, a conservation and reclamation district created under Article 16, Section 59, of the Texas Constitution (**"TRWD"**) upon the terms and conditions set forth herein.

**WHEREAS**, Luminant Generation Company LLC, a Texas limited liability company (**"Luminant"**), is the owner of an approximately 30.778 acre tract of land situated in the A. Gouhenant Survey, Abstract No. 582, the A. Robinson Survey, Abstract No. 1289, and M. Baugh Survey, Abstract No. 106, situated in the City of Fort Worth, Tarrant County, Texas, and described as Tract I on Exhibit "A" attached hereto (the **"Property"**), which includes an area subject to a Texas Natural Resource Conservation Commission (**"TNRCC"**) Agreed Order entered on November 24, 1993 (the **"Agreed Order"**), which Agreed Order resolved an enforcement action relating to an approximately 3.6 acre capped portion and surrounding acreage containing groundwater monitoring wells and groundwater treatment system of the Property (**"Site"**).  In the Agreed Order, the TNRCC (the predecessor to TCEQ) found that soil at the Site, which was the location of a former metals recycling operation, was contaminated by lead, cadmium, chromium, and/or total petroleum hydrocarbons.  Under the terms of the Agreed Order, TNRCC required Texas Utilities Electric (the predecessor to Luminant) to undertake certain measures protective of human health, safety, and environment; design, construct, operate, and maintain a groundwater monitoring system; and meet other requirements described in the Agreed Order including that certain Post-Closure Care Plan dated January, 1997 prepared for TU Electric Company by Freese and Nichols, Inc. and Radian International, as modified or

1

supplemented by the May 12, 2008 letter from Dylan Lawson, Project Manager, Remediation Division, TCEQ, to Mr. Gerald R. Johnson, TXU Business Services, regarding Second Semi-Annual 2007 Groundwater Monitoring Report dated January 7, 2008, TXU North Main Metals Recycling Site, Fort Worth, Texas; TCEQ SWR 39927; EPA ID No. TXT 982813628 (the **"PCC Plan"**);

    **WHEREAS**, collectively the PCC Plan, and all other regulatory and or environmental requirements to which the Site is, or in the future will be subject, are hereinafter collectively referred to as the **"Environmental Requirements"**;

    **WHEREAS**, Luminant and TRWD have agreed to a transaction in principle whereby Luminant will convey the Property to TRWD, and upon the closing of the sale of the Property, TRWD will assume all liability and operational, maintenance, environmental, and any other responsibilities for the Property, including, but not limited to, compliance with the Environmental Requirements for the Property. Luminant, which is the subject of a bankruptcy proceeding in the United States Bankruptcy Court for the District of Delaware, Case 14-10979, would, as of the TCEH Effective Date, as defined in the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Et. Al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 9199-1], filed on August 5, 2016, be discharged from further liability or obligation with respect to the PCC Plan, or otherwise with respect to the Environmental Requirements;

    **WHEREAS**, TCEQ agrees that upon closing of the transfer of the Property, and TRWD's assumption of the liabilities and responsibilities as set forth in paragraph two below, the Agreed Order is satisfied;

**WHEREAS**, Luminant and TRWD have sought the approval of TCEQ to the proposed transfer and discharge described above, and as a condition thereof TCEQ has required that the sum of Five Million, Five Hundred Thirty-One Thousand Thirty-Two Dollars ($5,531,032.00) (the **"Deposit"**) be wired to the Texas Comptroller's Texas Treasury Safekeeping Trust Company for credit to the Treasury Safekeeping subaccount for TRWD as specified in the wiring instructions provided by TCEQ, to be used for the purposes further described herein below (the **"Fund"**);

**WHEREAS**, Luminant and TRWD have agreed to share equally the cost of the Deposit into the Fund;

**WHEREAS**, the Fund is held for the benefit of TCEQ to ensure the completion of the Environmental Requirements for the Site**;** and

**WHEREAS**, this FAA is entered into for the purpose of memorializing certain agreements between TCEQ and TRWD with respect to the Fund, the Environmental Requirements, and the Property.

**NOW, THEREFORE**, in consideration of the foregoing recitals, which are not recitals only but which form part of this FAA, the parties do hereby agree as follows:

1.       On or before the date of the closing of the transfer of the Property from Luminant to TRWD, or as otherwise agreed by TCEQ, but before the TCEH Effective Date, as defined in the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Et. Al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 9199-1], filed on August 5, 2016, Luminant and TRWD shall jointly make the Deposit into the Fund.

2.       At the closing of the sale of the Property, and thereafter, TRWD shall assume and be responsible for any and all liabilities associated with the Property, and completion of the

3

Environmental Requirements.  Regarding the Site, TRWD shall continue implementing the operation, maintenance, and other actions required by the PCC Plan for perpetuity, defined as a period of not fewer than one hundred (100) years or a timeframe otherwise approved in writing by the TCEQ's Executive Director or their designee.  The purpose of the Fund shall be to ensure TRWD's fulfillment of the above obligations.

3.      In regard to the Site, TRWD is required to comply with the Environmental Requirements set out in paragraph 2 above, in perpetuity, which is defined as a period of not fewer than one hundred (100) years following the date of the closing of the transfer of the Property.

4.      After the closing of the sale of the Property, TRWD shall assume all liability for the Property, including, but not limited to, the liabilities and obligations described in paragraph 2, above.  TCEQ agrees that TRWD shall be permitted to apply to TCEQ for withdrawal of up to eighty thousand dollars ($80,000.00) per year from the Fund for reimbursement for the actual costs of the prior year's post-closure care and maintenance related to the Site.  Any approved reimbursements will be made by TCEQ no more frequently than annually.

5.      The steps for the reimbursement process will be reduced to writing after the transfer of the Property to TRWD.  The process will include a requirement for submission to TCEQ of proper receipts and/or other documents as requested for the prior year's work, and upon approvals the written authorization by the TCEQ's Executive Director or their designee to release a reimbursement.  This repayment arrangement may last up to a period not to exceed ten (10) years from the date of the closing of the transfer of the Property.

6.      At the end of the ten-year-reimbursement period, unless other arrangements are approved in writing by TCEQ's Executive Director or their designee, TRWD will thereafter be

responsible for the Site's post-closure care and maintenance costs in perpetuity. The remaining financial assurance balance will thereafter be held in the Treasury Safekeeping Trust, or successor, and no reimbursements to TRWD for post-closure care will be paid from those funds.

7.    TCEQ or its contractors may use the funds to complete the Environmental Requirements in the sole discretion of the TCEQ Executive Director or their designee.

8.    Upon completion of all Environmental Requirements for the Site as determined by the TCEQ Executive Director or their designee, TCEQ will return any remaining funds to TRWD or as otherwise designated by TRWD.

9.    **Governing Law**.  This FAA will be construed and interpreted in accordance with the laws of the State of Texas and venue for any legal proceedings instituted regarding this FAA will be in any competent court of jurisdiction in Travis County, Texas.

This FAA is dated to be effective the _____ day of September, 2016.

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

By:_____

Its:_____

TARRANT REGIONAL WATER DISTRICT, a Water Control and Improvement District

By:_____

Its:_____

P:\TRWD\Trinity River Vision\Tarrant County College\LuminantFinancial Assurance Agreement 09-08-16_TCEQ_09-01-1LFC.docx

5

# **<u>EXHIBIT C</u>**

**CONVEYANCE OF REAL ESTATE**

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | § | |
| | § | **KNOW ALL MEN BY THESE PRESENTS:** |
| **COUNTY OF TARRANT** | § | |

This **CONVEYANCE OF REAL ESTATE** (this "**Contract**") is made by and between Luminant Generation Company LLC, a Texas limited liability company (hereinafter referred to as "**Luminant**"), and Tarrant Regional Water District, a Water Control and Improvement District, a conservation and reclamation district created under Article 16, Section 59 of the Texas Constitution (hereinafter referred to as "**TRWD**") (collectively referred to as the "**Parties**"), upon the terms and conditions set forth herein. The Parties agree, subject to the limitations set forth herein, that the Texas Commission on Environmental Quality ("**TCEQ**" or "**Beneficiary**") is a third party beneficiary of the environmental provisions to this Contract and may enforce said provisions of this Contract.

1.  **Conveyance**. For the consideration and upon and subject to the terms, provisions, and conditions hereinafter set forth, Luminant hereby agrees to convey and TRWD agrees to accept, in fee, the two tracts of land, Tract I being approximately 30.778 acres and Tract II being a separated tract of approximately 4.706 acres, containing approximately 35.484 total acres in the aggregate, more or less, situated in Tarrant County, Texas, more particularly described as "Tract I" and "Tract II" in Exhibit A attached hereto and made a part hereof (collectively, the "**North Main Property**" or the "**Property**").

2.  **Consideration**. As consideration for the conveyance of the Property, in addition to other good and valuable consideration, the sufficiency of which each party hereby acknowledges, TRWD agrees to deposit TRWD's Contribution (as specified and defined in Paragraph 3) and to forever release and discharge Luminant from, and assume liability for, all responsibilities and liabilities relating to the physical, environmental or legal compliance status of the Property in accordance with the provisions of Sections 9 and 18 of this Contract.

3.  **Financial Assurance**. Subject to the terms and provisions of a separate Financial Assurance Agreement ("**FAA**") between TRWD and the TCEQ, financial assurance in the amount of $5,531,032.00 (the "**Fund**") shall be wired directly to the Texas Comptroller's Texas Treasury Safekeeping Trust Company's ("**TTSTC**") TCEQ account, and into the TRWD subaccount. The Fund shall be held for the benefit of TCEQ to ensure completion of the environmental requirements as described in the FAA and Sections 9 and 18(a) hereof or as later amended in writing by the TCEQ's Executive Director or their designee. The Fund shall be held with TTSTC, or its successor, in perpetuity defined as a period of not fewer than one hundred (100) years, or a timeframe otherwise approved in writing by the TCEQ's Executive Director or their designee. Payments made from the Fund and investment of the Fund shall be made at the sole discretion of the TCEQ's Executive Director or their designee or as set out in the FAA.

    Luminant will deposit into TCEQ's TTSTC account Two Million Seven Hundred Sixty Five Thousand Five Hundred Sixteen Dollars ($2,765,516.00) ("**Luminant's**

**Contribution**") and TRWD will separately deposit into TCEQ's TTSTC account Two Million Seven Hundred Sixty Five Thousand Five Hundred Sixteen Dollars ($2,765,516.00) ("**TRWD's Contribution**").  Once such funds are deposited, neither Luminant nor TRWD shall have the right to direct or control the use of such funds, except as provided in the FAA or as approved in writing by the TCEQ's Executive Director or their designee. Luminant and TRWD acknowledge and agree that at least three (3) business days advance processing time is required for TCEQ to coordinate with the Texas Comptroller to establish the TRWD subaccount within the TTSTC TCEQ account.  Accordingly, Luminant and TRWD agree to contact TCEQ's Financial Assurance Unit at the appropriate time to ensure the account is timely established.

4.    **Survey and Title Commitment**.

(a)    Prior to the date hereof, Luminant shall have delivered or caused to be delivered to Luminant and TRWD a copy of a current on-the-ground survey ("**Survey**") of the Property made by a duly licensed surveyor selected by Luminant and approved by TRWD, which Survey has been approved in writing by Luminant and TRWD prior to the date hereof.

(b)    Prior to the date hereof, TRWD shall have delivered or caused to be delivered to Luminant and TRWD:

(i)    A title commitment ("**Title Commitment**") covering the Property binding the Title Company to issue a Texas Owner's Policy of Title Insurance on the standard form of policy prescribed by the Texas State Board of Insurance at the Closing in such amount as directed by TRWD, and

(ii)    True, correct, and legible copies of any and all instruments referred to in the Title Commitment as constituting exceptions or restrictions upon the title of Luminant, except that copies of any liens which are to be released at the Closing may be omitted.

(c)    Prior to the date hereof, TRWD has had the opportunity to review the Title Commitment and the Survey, and to deliver in writing to Luminant such objections as TRWD may have to anything contained therein.  Any such item to which TRWD has not objected prior to the date hereof shall be deemed a "**Permitted Exception,**" provided, however, that (i) TRWD shall have the right to object to new matters shown on any amended commitment; and (ii) Luminant shall be obligated, at its sole cost and expense, to  satisfy any items appearing on Schedule C of the Title Commitment to the satisfaction of Title Company at or prior to Closing so that such matters will not appear on the title policy to be issued to TRWD.  If Luminant fails or refuses to do so, TRWD as its sole and exclusive remedy may terminate this Contract. Without limiting the foregoing, Luminant shall only be required to deliver the Title Company a Seller's Affidavit in a form reasonably satisfactory to Luminant.

5.    **Approval of Title**.

(a)    Upon the Title Company's issuance or unconditional commitment at Closing to issue the Title Policy pursuant to Section 8 of this Contract, or if the Title Company refuses to issue or commit to issue such Title Policy due to TRWD's failure to pay the applicable premium therefor, Luminant shall be deemed to have fulfilled all duties of Luminant as to sufficiency of title required hereunder, subject, however, to the provisions of Sections 4(c), 6(d) and 11(e) hereof.

(b)    Luminant, at Closing, shall also deliver to TRWD the following:

  (i)    State Law Disclosures.    Such disclosures and reports, required by applicable state and local law in connection with the conveyance of real property.

  (ii)    FIRPTA.  A Foreign Investment in Real Property Tax Act affidavit in the form attached hereto as Exhibit B executed by Luminant.  If Luminant fails to provide the necessary affidavit and/or documentation of exemption on the Closing Date, TRWD may proceed with withholding provisions as provided by law.

  (iii)    Additional Documents.  Any additional documents that the Title Company may reasonably require for the proper consummation of the transaction contemplated by this Contract.

6.    **Warranties and Representations by Luminant**.  Luminant makes the following representations and warranties, in each case to Luminant's knowledge (as defined below), all of which will be true and correct as of the date of the Closing and will survive the Closing:

(a)    Luminant holds fee simple title to the Property, subject to the Permitted Exceptions and all other matters of record.

(b)    Luminant has received no notice of condemnation or contemplated condemnation proceedings affecting the Property or any part thereof.

(c)    Other than the Chapter 11 Bankruptcy proceedings filed by Luminant and affiliates with the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") on April 29, 2014 [Case 14-10979], of which TRWD is aware, there is no litigation or threatened litigation affecting Luminant or the Property which would in any way constitute a lien, claim or obligation of any kind against the Property.

(d)    No person, firm or entity, except as set forth herein, has any rights in or right to acquire the Property or any part thereof.  Without limiting the generality of the foregoing, the rights of Tarrant County College District to acquire the Property or any part thereof, as set forth in, *inter alia*, that certain Option Contract and Right of First Refusal, both dated October 20, 2004, between TXU Generation

Company, LP, a Texas limited partnership, and Tarrant County College District, were terminated by the Bankruptcy Court on September 9, 2015 [D.I. 5898] and are of no force or effect.  Luminant shall cause the Title Commitment to be amended to delete any reference to any such rights held by Tarrant County College District.

(e)    Luminant is authorized to convey the Property subject to and in accordance with the *Order Authorizing the Sale of the North Main Property* [D.I. ____] (the "**Sale Order**") approved by the Bankruptcy Court on September __, 2016, attached hereto as Exhibit C.

7.    **Warranties and Representations by TRWD**.  TRWD makes the following representation and warranty, which will be true and correct as of the date of the Closing and will survive the Closing:

(a)    Subject to the terms and provisions hereof, TRWD has the authority to enter into and be bound by and agrees to be bound by the terms of the Sale Order.

8.    **Luminant's Obligations at Closing**.  At Closing, in addition to the other items herein required to be delivered to TRWD by Luminant,  Luminant will deliver to TRWD the following:

(a)    Luminant's executed Special Warranty Deed, substantially in the form as attached hereto as Exhibit D (the "**Deed**"), conveying the Property to TRWD, duly acknowledged and in form for recording, which Deed will convey to TRWD indefeasible title to the Property, free and clear of all liens, encumbrances, covenants, conditions, restrictions, rights-of-way, easements and other matters affecting title to the Property (collectively, "**Liens**") except for Permitted Exceptions or any Liens otherwise waived by TRWD in writing.

(b)    An owner's policy of title insurance required under the Title Commitment (the "**Title Policy**").

(c)    All keys, codes, or other materials or information necessary for TRWD to enter upon, use and operate the Property.

9.    **TRWD's Obligations at Closing.**  At Closing, in addition to the other items herein required to be delivered by TRWD, TRWD agrees to the following:

At the Closing of the sale of the North Main Property, TRWD shall assume and be responsible for any and all liabilities associated with the North Main Property, including, but not limited to, all environmental obligations, operation and maintenance requirements, and all requirements of the Post Closure Care Plan, dated January 1997, prepared for TU Electric Company by Freese and Nichols, Inc. and Radian International, as modified or supplemented by the May 12, 2008 letter from Dylan Lawson, Project Manager, Remediation Division, TCEQ, to Mr. Gerald R. Johnson, TXU Business Services, regarding Second Semi-Annual 2007 Groundwater Monitoring Report dated January 7, 2008, TXU North Main Metals Recycling Site, Fort Worth, Texas; TCEQ

SWR 39927; EPA ID No. TXT 982813628 (the "**PCC Plan**"). TRWD shall continue implementing the operation, maintenance and other actions required by the PCC Plan for a period of not fewer than one hundred (100) years or a timeframe otherwise approved in writing by the TCEQ's Executive Director, or as provided in the FAA. TRWD shall also seek to transfer or apply for any and all permits as might be required by the TCEQ. This Section 9 shall survive Closing.

10.    **TCEQ's Rights as Beneficiary.**    The Parties agree that TCEQ is a beneficiary to the environmental provisions of this Contract and may enforce the provisions of this Contract relating to the environmental condition of the Property. The Parties further agree that they will not amend the environmental provisions hereof or transfer, sell or assign this Contract without the prior written consent of TCEQ's Executive Director or their designee. Notwithstanding the foregoing or any other provision hereof, either Luminant or TRWD may exercise the termination and other rights expressly granted hereunder without the approval of TCEQ.

    (a)    TRWD agrees that it will not convey any part of the Site (defined herein) prior to the time a Certificate of Completion has been issued by TCEQ, or the requirements of the PCC Plan have been completed, as the case may be, with respect to the portion of the Property to be conveyed without the prior written consent of TCEQ's Executive Director or their designee.

    (b)    Upon Closing, pursuant to the terms of this Contract, TCEQ agrees that the Agreed Order issued on November 24, 1993 by the Texas Natural Resource Conservation Commission, (predecessor to the TCEQ), In the Matter of Texas Utilities Electric; SWR No. 39927 (the "**Agreed Order")** is satisfied.

    (c)    This Section 10 shall survive Closing.

11.    **Conditions to Closing.**    The obligations of Luminant and TRWD to consummate the conveyance contemplated hereby are subject to and contingent upon the satisfaction of the following conditions, to the satisfaction of each party in its sole discretion:

    (a)    Luminant's deposit, in full, of Luminant's Contribution, pursuant to Section 3 or assurances thereof satisfactory to TCEQ;

    (b)    TRWD's deposit, in full, of TRWD's Contribution, pursuant to Section 3 or assurances thereof satisfactory to TCEQ;

    (c)    Approval of this Contract by the Bankruptcy Court, pursuant to the Sale Order;

    (d)    Negotiation and execution of the FAA between TRWD and TCEQ; and

    (e)    Satisfaction of all title matters to which TRWD has objected and all matters appearing on Schedule C of the Title Commitment.

12.     **Prorations**.  With respect to the Property, Luminant and TRWD agree to adjust, as of 11:59 p.m. on the day immediately preceding the Closing Date, real estate and personal property taxes and assessments and any assessments by private covenant for the then-current calendar year of Closing (collectively, the "**Proration Items**").  Luminant will be charged and credited for the amount of all of the Proration Items relating to the period up to the Closing Date, and TRWD will be charged and credited for all of the Proration Items relating to the period from and after the Closing Date.  If the actual amounts of the Proration Items are not known as of the Closing Date, the prorations will be made at Closing on the basis of the best evidence then available, using, as to ad valorem taxes, the most recent tax bills for the Property; such proration shall be final and not subject to readjustment post-closing.  All ad valorem real estate and personal property taxes with respect to the Property (to the extent not prorated above) shall be prorated as of 11:59 p.m. of the day immediately preceding the Closing Date for the calendar year in which the Closing Date occurs, regardless of the year for which such taxes are assessed.  Any additional real property taxes relating to the year of Closing or prior years arising out of a change in the use of the Property, or a change in ownership shall be assumed by TRWD effective as of Closing and paid by TRWD when due and payable, and TRWD shall indemnify Luminant, to the extent authorized under the Constitution and the laws of the State of Texas, from and against any and all such taxes.  The provisions of this Section 12 shall survive the Closing.

13.     **Closing**.  The closing of the transaction contemplated hereunder (the "**Closing**") shall be held at Rattikin Title Company (the "**Title Company**") located at 201 Main Street, Suite 800, Fort Worth, Texas 76102, Office: 817-334-1395, and Email: stownsend@rattikintitle.com, on September 23, 2016 (the "**Closing Date**").

    (a)     TRWD and Luminant covenant and agree to use commercially reasonable efforts to close on or before September 23, 2016.

    (b)     Upon Closing, pursuant to the terms of this Contract, TCEQ agrees that the Agreed Order is satisfied.

    (c)     In no event will Closing occur after the TCEH Effective Date, as defined in the Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., Et. Al., Pursuant to Chapter 11 of the Bankruptcy Code [D.I. 9199-1], filed on August 5, 2016. In the event that the Closing has not occurred prior to the TCEH Effective Date, or should the financial assurance as required by Section 3 of this Contract not be posted on or before the TCEH Effective Date, this Contract will be null and void, and each provision of this Contract which expressly or implicitly presumes TRWD has acquired the Property shall be construed as having been contingent upon Closing having occurred. In such instance, the North Main Property shall remain property of the reorganized Luminant and the reorganized Luminant shall retain all environmental liabilities for the Property, including, but not limited to: (i) all environmental obligations, operation and maintenance requirements, and all other requirements of the PCC Plan, and (ii) the outstanding environmental obligations associated with the Agreed Order.

14. **Recording of Deed**.  The Deed shall be recorded in the Official Records of Tarrant County, Texas not later than two (2) business days following the Closing.

15. **Delivery of Possession**.  On the Closing Date, Luminant will deliver possession of the Property to TRWD in its then present condition, subject to all Permitted Exceptions.

16. **Remedies**.  If TRWD fails to perform its obligations pursuant to this Contract, including failure to deposit TRWD's Contribution pursuant to Paragraph 3, at or prior to Closing for any reason except failure by Luminant to perform hereunder, termination of this Contract as provided herein, or the failure of any condition precedent, and such failure is not cured prior to the Closing Date, then Luminant may, as Luminant's sole and exclusive remedy, terminate this Contract by notifying TRWD thereof.  Luminant expressly waives its rights to seek damages or other relief, including specific performance, in the event of a default by TRWD occurring prior to or at the Closing Date.

If Luminant fails to perform its obligations pursuant to this Contract, including failure to deposit Luminant's Contribution pursuant to Paragraph 3, at or prior to Closing for any reason except failure by TRWD to perform hereunder, termination of this Contract as provided herein, or the failure of any condition precedent, and such failure is not cured prior to the Closing Date, then TRWD may, as TRWD's sole and exclusive remedy, terminate this Contract by notifying Luminant thereof, and neither party hereto shall have any further rights or obligations hereunder, except for those which survive the termination of this Contract.  TRWD expressly waives its rights to seek damages, or other relief, including specific performance, in the event of a default by Luminant occurring prior to or at the Closing Date.

17. **Closing Costs**.

(a)     Luminant agrees to pay:

(i)     Luminant's own attorneys' fees incurred in regard hereto;

(ii)    All charges incurred by Luminant for the procurement, preparation and recording of the instruments required to clear Luminant's title for conveyance of the Property in accordance with the provisions hereof; and

(iii)   Unpaid ad valorem taxes and other governmental charges or impositions, if any, as provided by Section 12.

(b)     TRWD agrees to pay:

(i)     All charges for tax certificates;

(ii)    The cost of the owner policy of title insurance, described above, including the cost of amending the boundaries exception and deleting the parties in possession exception, if requested by TRWD;

(iii)    TRWD's own attorneys' fees incurred in regard hereto; and

(iv)    Recording fees charged by the Title Company.

Except as specifically set forth herein to the contrary, each party hereto shall pay its share of the Closing Costs which are normally assessed by the Title Company against a seller or purchaser in a transaction of this character in the county where the Property is located.

18.    **Inspection and Environmental**:

(a)    TRWD acknowledges that the Property includes an area subject to the Agreed Order. The Agreed Order pertains to an approximately 7.009 acres area on Tract I where an approximately 3.6-acre area of contaminated soils are capped in place, and groundwater located outside of and surrounding the capped portion contains groundwater monitoring wells and groundwater treatment system (collectively referred to herein as the "**Site**"). The Agreed Order resolved an enforcement action related to the Site which is a portion of the Property and which is located in Fort Worth, Texas, for violations of the Texas Solid Waste Disposal Act and the Texas Water Code. In the Agreed Order, the TNRCC found that soil at the Site was contaminated by lead, cadmium, chromium, and or total petroleum hydrocarbons and that groundwater contained chlorinated solvents. Under the terms of the Agreed Order and continuing through the PCC Plan, TNRCC required Texas Utilities Electric to clean all contaminated soil and groundwater to levels deemed protective of human health, safety, and environment; design, construct, operate, and maintain a groundwater monitoring system; maintain the PCC Plan; and meet other requirements described therein. TRWD acknowledges that other parts of the Property, beyond the location of the Site, and the groundwater may be contaminated and require future remediation.

(b)    TRWD acknowledges that TRWD is independently and personally familiar with and knowledgeable about the Property and has waived the opportunity to further inspect the Property, and that TRWD has entered into this Contract based upon such familiarity and knowledge. The Property is to be conveyed to and accepted by TRWD at Closing in its then present condition, "**AS-IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**" except as expressly set forth herein. Notwithstanding anything contained herein to the contrary, it is understood and agreed that, except as expressly set forth herein, Luminant and Luminant's agents or employees have not made and are not now making, and they specifically disclaim, any warranties, representations or guaranties of any kind or character, express or implied, oral or written, past, present or future, with respect to the Property, including, but not limited to, warranties, representations or guaranties as to (i) matters of title (other than Luminant's warranty of title); (ii) environmental matters of any kind relating to the Property or any portion thereof (including the condition of the soil or groundwater beneath the Property); (iii) geological conditions, including, without limitation, subsidence, subsurface conditions, water table, underground water reservoirs, limitations regarding the withdrawal of water

and earthquake faults and the resulting damage of past and/or future earthquakes; (iv) whether, and to the extent to which the Property or any portion thereof is affected by any stream (surface or underground), body of water, flood prone area, flood plain, floodway or special flood hazard; (v) drainage; (vi) soil conditions, including the existence of instability, past soil repairs, soil additions or conditions of soil fill, or susceptibility to landslides, or the sufficiency of any undershoring; (vii) zoning to which the Property or any portion thereof may be subject; (viii) the availability of any utilities to the Property or any portion thereof including, without limitation, water, sewage, gas and electric; (ix) usages of adjoining property; (x) access to the Property or any portion thereof, (xi) the value, compliance with the plans and specifications, size, location, age, use, design, quality, description, suitability, structural integrity, operation, title to, or physical or financial condition of the Property or any portion thereof, or any income, expenses, charges, liens, encumbrances, rights or claims on or affecting or pertaining to the Property or any part thereof; (xii) the presence of Hazardous Materials (defined below) in or on, under or in the vicinity of the Property; (xiii) the condition or use of the Property or compliance of the Property with any or all past, present or future federal, state or local ordinances, rules, regulations or laws, building, fire or zoning ordinances, codes or other similar laws; (xiv) the existence or non-existence of underground storage tanks; (xv) any other matter affecting the stability or integrity of the Property; (xvi) the potential for further development of the Property; (xvii) the existence of vested land use, zoning or building entitlements affecting the Property; (xviii) the merchantability of the Property or fitness of the Property for any particular purpose (By executing this Contract, TRWD is affirming that TRWD has not relied on Luminant's or Luminant's agents' or employees' skill or judgment to select or furnish the Property for any particular purpose, and that Luminant makes no warranty that the Property is fit for any particular-purpose); or (xix) tax consequences. **EXCEPT AS EXPRESSLY SET FORTH HEREIN, LUMINANT MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND TO TRWD, INCLUDING, WITHOUT LIMITATION, THE PHYSICAL CONDITION OF THE PROPERTY AND ANY IMPROVEMENTS LOCATED THEREON, OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE OR OF MERCHANTABILITY. TRWD SHALL RELY ON ITS FAMILIARITY AND KNOWLEDGE OF THE PROPERTY IN DETERMINING WHETHER TO ACQUIRE IT.**

(c)     TRWD affirms that it is relying only on its own independent investigation, analysis, and evaluation of the environmental, geological, economic, and other interpretations, and the costs and prospects for further development in relation to the Property including the advice of its counsel or other advisors.

(d)     TRWD accepts the Property "**AS-IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**" and with an expressed acceptance and understanding that TRWD assumes all responsibilities, liabilities, and obligations with respect to contamination, known or unknown, at, on, under, or from the Property. TRWD

further agrees to assume full responsibility for compliance with all obligations attributable in any way to the Property and all laws, orders, rules, and regulations concerning all such conditions, discovered, discoverable, hidden, known, or unknown.

(e)     TRWD agrees Luminant's Contribution to the Fund is in FULL AND COMPLETE SATISFACTION of any obligation that Luminant has with respect to contamination, known or unknown, at, on, under, or from the Property.

(f)     TRWD hereby **FOREVER RELEASES AND DISCHARGES** Luminant from all responsibility and liability relating to the physical, environmental or legal compliance status of the Property, whether arising before or after the Effective Date, and liabilities under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Sections 9601 *et seq.*), as amended ("**CERCLA**"), regarding the condition, valuation, salability or utility of the Property, or its suitability for any purpose whatsoever (including, but not limited to, with respect to the presence in the soil, air, structures and surface and subsurface waters, of Hazardous Materials or other materials or substances that have been or may in the future be determined to be toxic, hazardous, undesirable or subject to regulation and that may need to be specially treated, handled and/or removed from the Property under current or future federal, state and local laws, regulations or guidelines, and any structural and geologic conditions, subsurface soil and water conditions and solid and hazardous waste and Hazardous Materials on, under, adjacent to or otherwise affecting the Property).  TRWD further hereby **WAIVES** (and by Closing this transaction will be deemed to have **WAIVED**) any and all objections and complaints (including, but not limited to, federal, state and local statutory and common law based actions, and any private right of action under any federal, state or local laws, regulations or guidelines to which the Property is or may be subject, including, but not limited to, CERCLA concerning the physical characteristics and any existing conditions of the Property), whether arising before or after the Effective Date.  TRWD further hereby assumes the risk of changes in applicable laws and regulations relating to past, present and future environmental conditions on the Property and the risk that adverse physical characteristics and conditions, including, without limitation, the presence of Hazardous Materials or other contaminants, may not have been revealed by its investigation.  For purposes hereof, "**Hazardous Materials**" means "Hazardous Material," "Hazardous Substance," "Pollutant or Contaminant," and "Petroleum" and "Natural Gas Liquids," as those terms are defined or used in Section 101 of CERCLA, and any other substances regulated because of their effect or potential effect on public health and the environment, including, without limitation, PCBs, lead paint, asbestos, urea formaldehyde, radioactive materials, putrescible materials, and infectious materials.

(g)     TRWD agrees that as of Effective Date, TRWD assumes all risk and liability of whatsoever nature connected to the Property and DOES RELEASE AND DISCHARGE AND MUST, TO THE EXTENT AUTHORIZED UNDER THE CONSTITUTION AND LAWS OF THE STATE OF TEXAS, INDEMNIFY,

HOLD HARMLESS, AND DEFEND LUMINANT AGAINST ALL CLAIMS (INCLUDING EXPENSES ASSOCIATED WITH THE INVESTIGATION OF CLAIMS, TESTING, AND ASSESSMENT), WHETHER BASED ON ANY THEORY OF LIABILITY, INCLUDING TORT, BREACH OF CONTRACT, (EXPRESS OR IMPLIED) BREACH OF WARRANTY (EXPRESS OR IMPLIED), STRICT LIABILITY, REGULATORY LIABILITY, STATUTORY LIABILITY, LIABILITIES ASSOCIATED WITH THE NEGLIGENCE OF LUMINANT, OR OTHER FAULT OR RESPONSIBILITY OF LUMINANT AND RELATING TO ALL PERIODS PRIOR TO, ON, AND AFTER THE EFFECTIVE DATE FOR ANY CLAIM.

(h)     TRWD shall not sell or transfer any part of the Site prior to the time a Certificate of Completion has been issued by TCEQ, or the requirements of the PCC Plan have been completed, as the case may be, with respect to the portion of the Property to be conveyed, to any third party without the prior, express, written consent by TCEQ's Executive Director or their designee.

(i)     If TRWD sells or transfers any part of Tract I of the North Main Property to any third party prior to the TCEQ, or any successor thereto, issuing a Certificate of Completion (or equivalent), or prior to the time the requirements of the PCC Plan have been completed, as the case may be, for said Property (or portion thereof to be sold or transferred), or TCEQ making a determination that all required cleanup, as described in Section 9, of said Property has been completed, if such action is to occur, TRWD agrees that TRWD will require any purchaser(s), assignee(s), grantee(s), transferee(s), and successor(s) of TRWD to release and discharge, and, subject to any limitations found in the Constitution or the laws of the State of Texas, AND HOLD HARMLESS LUMINANT from and against any and all claims and obligations described in Section 18(g) or otherwise under this Contract.  To that end, and subject to the provisions of the preceding sentence, TRWD agrees to cause the provisions of this Section 18 to be incorporated into all subsequent sales or transfers by TRWD of any interest in Tract I of the Property or any portion thereof, and to cause all purchasers or transferees of said property from TRWD to expressly acknowledge their agreement to such terms with respect to Luminant and said property in writing.  This requirement of Section 18(i) shall remain effective and in full force and effect until such time as the TCEQ, or any other regulatory agency with jurisdiction over Tract I of the Property, has issued a Certificate of Completion (or equivalent), acknowledges that the requirements of the PCC Plan have been completed, as the case may be, or otherwise determines that all required cleanup, as described in Section 9, has been completed regarding said Property or any portion thereof to be sold or transferred.  Upon the issuance of a Certificate of Completion (or equivalent) by TCEQ, if such action is to occur, and any required recordation of same in the Real Property Records of Tarrant County, Texas, the provisions of this Section 18(i) shall automatically terminate as to any such tract.

(j)     Upon the first sale or transfer by TRWD of any part of Tract II of the North Main Property to any unaffiliated third party, TRWD agrees that TRWD will require

the purchaser(s), grantee(s), transferee(s), or successor(s) of TRWD to release and discharge, and, subject to any limitations found in the Constitution or the laws of the State of Texas, HOLD HARMLESS LUMINANT from and against any and all claims and obligations described in <u>Section 18(g)</u> or otherwise under this Contract. To that end, and subject to the provisions of the preceding sentence, TRWD agrees to cause the provisions of this <u>Section 18(j)</u> to be incorporated into the first subsequent sale, transfer or conveyance by TRWD of any interest in Tract II of the Property, and to cause the purchaser(s) or transferee(s) of said Property to expressly acknowledge their agreement to such terms with respect to Luminant and said Property in writing. For clarity, this requirement of <u>Section 18(j)</u> shall remain effective and in full force and effect until such time as TRWD has sold, transferred or otherwise conveyed the entirety of Tract II, after which the provisions of this <u>Section 18(j)</u> shall automatically terminate as to Tract II. The provisions of this <u>Section 18(j)</u> shall not, however, apply to any such transferee which is a governmental entity which intends to use all or any part of Tract II so conveyed for governmental purposes.

(k)     THE PROVISIONS OF THIS SECTION 18 ARE A MATERIAL PART OF THE CONSIDERATION FOR LUMINANT'S ENTERING INTO THIS CONTRACT, AND SHALL SURVIVE CLOSING.

19.     **RELEASE**. CONTINGENT AND EFFECTIVE UPON THE EXECUTION OF THIS CONTRACT AND IN CONSIDERATION OF LUMINANT'S CONVEYANCE OF THE PROPERTY AND PAYMENT OF LUMINANT'S CONTRIBUTION, TRWD HEREBY COMPLETELY, FULLY, UNCONDITIONALLY, AND IRREVOCABLY RELEASES LUMINANT, AND ITS AGENTS, DIRECTORS, EMPLOYEES, PARENT ENTITIES, SUBSIDIARIES, SUCCESSORS, ASSIGNS AND AFFILIATED ENTITIES, FROM ANY AND ALL DEMANDS, CLAIMS, DAMAGES, AND LOSSES, WHICH ARE RELATED TO OR ARISE OUT OF THE CONVEYANCE OF THE PROPERTY EXCEPT FOR ANY CLAIM ARISING FROM A BREACH OF THIS CONTRACT.

20.     **Assignment of Contract; Binding Effect**. This Contract may not be assigned by either party without the prior written consent of the other, and the prior, written consent by the TCEQ's Executive Director or their designee. If any assignment is consented to in writing by the other party and TCEQ, this Contract will be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors, legal representatives and assigns.

21.     **Notices**. Any notice or request to be given by either party to this Contract will be given in writing and may be effected by (a) personal delivery, (b) placing such in the United States mail, certified mail, return receipt requested, postage prepaid, or (c) delivering the same in person to such party by a nationally-recognized, overnight delivery service (e.g., Federal Express), and addressed as follows:

| | |
|---|---|
| To TRWD: | Tarrant Regional Water District |
| | 800 E. Northside Dr. |
| | Fort Worth, Texas 76102 |
| | Attention:  R. Steve Christian |
| | Telephone:  817-335-2491 |
| | Email: steve.christian@trwd.com |
| | |
| With copy to: | Pope, Hardwicke, Christie, Schell, Kelly & Taplett, L.L.P. |
| | 500 W. 7th St., Suite 600 |
| | Fort Worth, Texas 76102 |
| | Attention:  Lee F. Christie |
| | Telephone:  817-332-3245 |
| | Email:  lfchristie@popehardwicke.com |
| | |
| To Luminant: | Luminant Generation Company LLC |
| | 1601 Bryan Street, EP 22-110C |
| | Dallas, TX  75201 |
| | Attention:  Kyle Ray, Director – Real Estate Development |
| | Telephone:  214.875.8686 |
| | Email:  kyle.ray@luminant.com |
| | |
| With copy to: | Luminant Generation Company LLC |
| | 1601 Bryan Street, 22nd Floor |
| | Dallas, Texas  75201 |
| | Attention:  Ashlie Alaman |
| | Telephone:  214.875.8119 |
| | Email:  ashlie.alaman@luminant.com |
| | |
| To TCEQ: | Texas Commission on Environmental Quality, Office of Legal Services |
| | P.O. Box 13087 |
| | Austin, Texas 78711-3087 |
| | Attn:  Bankruptcy Program Manager |
| | Email: abigail.ryan@tceq.texas.gov |

22. **Real Estate Commission**.  Luminant and TRWD each warrant and represent to the other that they have not agreed to pay any broker's fee or real estate commission in connection with the conveyance contemplated under this Contract.  Luminant and TRWD hereby agree that they will at all times hereafter, to the extent authorized under the Constitution and the laws of the State of Texas, indemnify and hold harmless one another and their successors and assigns, from and against any and all claims, losses, costs, expenses, liabilities and/or damages, including reasonable attorneys' fees, which the other, its successors or assigns, may hereafter incur, suffer or be required to pay to any individual or entity by reason of a real estate commission due by the indemnifying party in connection with the conveyance contemplated under this Contract.

23.   **Modification of this Contract**.  This Contract may not be modified, amended, or assigned except by a prior agreement in writing signed by Luminant, TRWD, and approved by TCEQ.  TRWD and Luminant may waive any of the conditions contained herein or any of the obligations of the other party hereunder, but any such waiver will be effective only if in writing and signed by the party waiving such condition or obligation and signed by TCEQ's Executive Director or their designee.

24.   **Entire Agreement**.  This Contract constitutes the entire agreement and understanding between and among the Parties and supersedes all prior and contemporaneous agreements and understandings of the Parties in connection therewith. The FAA constitutes the entire agreement and understanding between and among TCEQ and TRWD and supersedes all prior and contemporaneous agreements and understandings of such parties in connection therewith.  No statements, agreements, understandings, representations, warranties or conditions not expressed in this Contract will be binding upon the parties hereto, or will be effective to interpret, change or restrict the provisions of this Contract unless such is in writing signed by both parties hereto and by reference made a part hereof.

25.   **Pre- and Post-Closing Obligations**.  Prior to Closing, the parties agree to cooperate to develop a plan for the transition of services and billings with respect to the contractor(s) currently employed by Luminant to operate and maintain the Site in compliance with the Agreed Order, and Luminant further agrees to provide TRWD with a copy of all contracts for same (or otherwise with respect to the operation of the Site) at least ten (10) days before Closing, together with all material, relevant, and non-privileged documentation in its possession relating to the environmental conditions and remediation of the Site and the Agreed Order, or as otherwise necessary to enable TRWD to acquire full knowledge regarding the nature and extent of any contamination of the Property and all regulatory controls and obligations affecting the Property.  Further, Luminant agrees to provide TRWD with operating manuals and instructions, if any exist, necessary for TRWD to assume operation and control of the Site and to comply with the Agreed Order.  The obligations in this Section 25 shall survive the Closing.

26.   **Survival**.

All covenants and agreements contained herein and intended to be performed subsequent to any Closing hereunder will survive the execution and delivery (a) by Luminant of the Deed described above, and (b) by TRWD of the other Closing documents required hereby and will specifically not be deemed to be merged into or waived by any instrument of Closing, but will expressly survive and be binding upon the applicable party.  The representations and warranties set forth in this Contract shall survive the Closing for a period of six (6) months (the "**Survival Period**").  Terms such as "**to Luminant's knowledge**," or like phrases mean the actual present and conscious awareness or knowledge of Kyle Ray ("**Luminant's Representative**"), without any duty of inquiry or investigation; provided that so qualifying Luminant's knowledge shall in no event give rise to any personal liability on the part of Luminant's Representative, or any other officer or employee of Luminant, on account of any breach of any representation or warranty made by Luminant herein.  Said terms do not include constructive knowledge, imputed knowledge, or knowledge Luminant or such persons do not have but could have

obtained through further investigation or inquiry.  No broker, agent, or party other than Luminant is authorized to make any representation or warranty for or on behalf of Luminant.  Each party shall have the right to bring an action against the other on the breach of a representation or warranty or covenant hereunder or in the documents delivered by Luminant or TRWD at the Closing, but only on the following conditions:  (i) the breach in question results from, or is based on, a condition, state of facts or other matter that was not known prior to Closing by the party bringing the action, and (ii) the party bringing the action for breach gives written notice of such breach to the other party before the end of the Survival Period and files such action on or before the first day following the second anniversary of the Closing Date.  Neither party shall have any liability after Closing for the breach of a representation or warranty or covenant hereunder of which the other party hereto had knowledge as of Closing.

27.    **Governing Law**.  This Contract will be construed and interpreted in accordance with the laws of the State of Texas and venue for any legal proceedings instituted regarding this Contract will be in any competent court of jurisdiction in either Tarrant County or Travis County, Texas.

28.    **Attorneys' Fees**.  In the event of litigation between the parties in connection with this Contract, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs from the non-prevailing party.  The obligation in the immediately preceding sentence shall survive any termination of this Contract or the Closing as a surviving obligation.

29.    **Captions**.  The captions in this Contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this Contract or any provisions hereof.

30.    **Time of the Essence**.  Time is of the essence in this Contract.

31.    **Gender and Number**.  Words of any gender used in this Contract will be construed to include any other gender and words in the singular number will be construed to include the plural, and vice versa, as the context may require herein.

32.    **Counterparts**.  To facilitate execution, this Contract may be executed in as many counterparts as may be convenient or required.  It shall not be necessary that the signature of, or on behalf of, each party, or that the signature of all persons required to bind any party, appear on each counterpart.  All counterparts shall collectively constitute a single instrument.

33.    **Effective Date**.  The "**Effective Date**" (as used herein) of this Contract is the date on which it is executed by the latter to sign of Luminant or TRWD.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

This Contract has been executed by TRWD on this the _____ day of September, 2016.

**TRWD:**

**TARRANT REGIONAL WATER DISTRICT**, a
Water Control and Improvement District

By: _____
Name: _____
Title: _____

THE STATE OF TEXAS               §
                                 §
COUNTY OF TARRANT                §

    This instrument was acknowledged before me on September _____, 2016 by _____, _____ of Tarrant Regional Water District, a water control and improvement district, on behalf of said district and in the capacity therein.

_____
Notary Public, State of Texas

This Contract has been executed by Luminant on this the _____ day of September, 2106.

**LUMINANT:**

**LUMINANT GENERATION COMPANY LLC**, a Texas limited liability company


By: _____

Name: _____

Title: _____


THE STATE OF TEXAS         §
                                        §

COUNTY OF DALLAS         §

This instrument was acknowledged before me on September _____, 2016 by _____, _____ of Luminant Generation Company, a Texas limited liability company, on behalf of said company and in the capacity therein.


_____

Notary Public, State of Texas

This Contract has been executed by the Texas Commission on Environmental Quality on this the _____ day of September, 2016.

**TCEQ**

By: _____

Name: _____

Title: _____



### <u>TITLE COMPANY JOINDER</u>

The Title Company has joined herein for the purposes of (i) evidencing its agreement to act as the Title Company for both TRWD and Luminant in accordance with the terms of this Contract and (ii) acknowledging its receipt of a fully-executed copy of this Contract.

**RATTIKIN TITLE COMPANY**

By: _____

Name: _____

Title: _____

# EXHIBIT A

## LEGAL DESCRIPTION OF THE PROPERTY

## METES AND BOUNDS DESCRIPTION

### A 35.484 Acre Tract, more or less

Being a 35.484 acre tract, more or less, situated in the A. Gouhenant Survey, Abstract No. 582, the A. Robinson Survey, Abstract No. 1289, and the M. Baugh Survey, Abstract No. 106, and being comprised of two tracts herein described as "Tract I", a 30.778 acres tract of land more or less out of that remaining portion of land quitclaimed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company by Quitclaim Deed of record in Volume 2423, Page 375 of the Deed Records of Tarrant County, Texas, that same tract of land quitclaimed from the Southwestern Railway Company of Texas to Texas Electric Service Company by Quitclaim Deed recorded in Volume 2423, Page 271, of the Deed Records of Tarrant County, Texas, that certain tract of land conveyed from Tarrant County Water Control Improvement District Number One to Texas Electric Service Company by deed of record in Volume 2745, Page 96 of the Deed Records of Tarrant County Texas, and by the intent as more clearly stated in that certain deed of record from the Tarrant County Water Control District Number One to the Texas Electric Service Company recorded in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, all of those lands conveyed by deed from the Tarrant County Water Control District Number One to Texas Electric Service Company of record in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, a portion of that tract of land conveyed from H.H. Susie M. Cobb to Fort Worth Power and Light Company by deed of record in Volume 759, Page 322 of the Deed Records of Tarrant County, Texas, a portion of the tract of land conveyed to Texas Electric Service Company by deed of record in Volume 15342, Page 160 of the Official Public Records of Tarrant County, Texas, same being that tract of land conveyed from the City of Fort Worth to Fort Worth Power and Light Company by deed of record in Volume 759, Page 324 of the Deed Records of Tarrant County, Texas, all of that called First Tract and Second Tract, portions of the called Fifth and Sixth tract of land conveyed to TXU Generation Company by deed of record in Volume 15342, Page 160 of the Deed Records of Tarrant County, Texas and described by deed of record from R.L. Crowdus and wife, Maud T. Crowdus to Forth Worth Power & Light Company by deed of record in Volume 823, Page 1 of the Deed Records of Tarrant County, Texas, and that same tract of land conveyed from Maud T. Crowdus by deed of record in Volume 1040, Page 319 of the Deed Records of Tarrant County, Texas, part of Blocks 163, 164, 165 and 166 of the City of Fort Worth plat as recorded in Volume 204, Page 59 of the Plat Records of Tarrant County, Texas, part of the Map of the Texas Electric Service Co. Fort Worth Plant Site plat as recorded in Volume 388-E, Page 35 of the Plat Records of Tarrant County, Texas, part of the North Fort Worth Tarrant County Texas plat as recorded in Volume 63, Page 149-150 of the Plat Records of Tarrant County, Texas, all of a tract of land conveyed from W.S. Essex and wife to Fort Worth Power & Light by deed of record in Volume 361, Page 469 of the Deed Records of Tarrant County, Texas, part of a tract of land described as being the Fourth Tract in a deed from J.R. Nutt to Fort Worth Power and Light Company and recorded in Volume 383, Page 27 of the Deed Records of Tarrant County, Texas, same tract also being described in a deed from S.H. Ferril, et ux to Fort Worth Power & Light Co. and recorded in Volume 405, Page 569 of the Deed Records of Tarrant County, Texas, part of both tracts described in a deed from the City of Fort Worth to Fort Worth Power and Light Company and recorded in Volume 682, Page 112 of the Deed Records of Tarrant County, Texas, part of seven (7) tracts described as First, Second, Third, Fourth, Fifth, Sixth and Seventh Tracts in a deed from Joe W. Crowdds to Fort Worth Power and Light Company and recorded in Volume 804, Page 635 of the Deed Records of Tarrant County, Texas, all of a tract of land described in deed from F.E. Guess to Forth Worth Power and Light Company and recorded in Volume 1037, Page 406 of the Deed Records of Tarrant County, Texas, part of thirteen (13) tracts described as Parcel Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Thirty-Eight and Forty-Five in a deed from Fort Worth Power and Light Company to Texas Electric Service Company and recorded in Volume 1108, Page 125 of the Deed Records of Tarrant County, Texas, same being described in a deed from Fort Worth Power and Light Company to Texas Electric Service Company and recorded in Volume 1108, Page 125 of the Deed Records of Tarrant County, Texas, and also comprised of "Tract II", a 4.706 acre remainder of a tract of land comprised of that certain tract of land conveyed from E.W. Wisehart and Mary Wisehart to Fort Worth Power & Light described as Tract 2 by deed of record in Volume 968, Page 571 of the Real Records of Tarrant County, Texas, and that same tract of land conveyed from G.T Hubbard to Texas Electric Service Company by deed of record in Volume 3306, Page 355 of the Deed Records of Tarrant County, Texas. Said

compilation of land totals 35.484 acres of land more or less and referenced herein as Tract I and Tract II, and being more particularly described in the metes and description as follows:

**"TRACT I"** - **BEGINNING** at a found Cotton Spindle (Y = 6,962,598.33, X = 2,325,621.21) in the southerly right of way line of North Fourth Street (60' R.O.W.) said point being at the northwest corner of a tract of land described as "Annex A - Tract One" as conveyed to Tarrant County College District by deed of record in Instrument #D204331101 of the Official Records of Tarrant County, Texas, same being the northwest corner of said tract of land conveyed to the Tarrant Regional Water District by deed of record in Instrument #D214076713 of the Official Public Records of Tarrant County, Texas, and being on the east line of a portion of North Houston Street as vacated by City Ordinance 2848, from which a found 1/2" iron rod with cap stamped "Brittain Crawford" bears North 59'49"09 East a distance of 243.45 feet;

**THENCE:**  South 30˚01'57" East, along the east line of said vacated portion of North Houston Street, same being the west line of said "Annex A - Tract One, Tarrant Regional Water District, a distance of 731.28 feet to a found 1/2" Iron Rod with yellow cap;

**THENCE:** along the west line of "Annex A – Tract One", Tarrant Regional Water District tract the following six (6) courses and distances:

1. South 60˚09'39" West, a distance of 117.27 feet to a found 1/2" Iron Rod with yellow cap;
2. South 30˚05'09" East, a distance of 134.79 feet to a found 5/8" Iron Rod with cap stamped "Dunaway Assoc."
3. South 35˚48'22" East, a distance of 183.15 feet to a calculated point;
4. South 42˚21'51" West, a distance of 106.64 feet to a calculated point;
5. South 47˚38'09" East, a distance of 274.91 feet to a calculated point;
6. South 44˚00'22" West, a distance of 72.84 feet to a found 5/8" Iron Rod with cap stamped "Carter Burgess" at the southwest corner of said Tract One, Tarrant Regional Water District tract;

**THENCE:** along the south line of "Annex A – Tract One", Tarrant Regional Water District tract the following seven (7) courses and distances:

1. South 30˚08'32" East, a distance of 24.87 feet to a found 1/2" Iron Rod;
2. South 64˚15'06" East, a distance of 50.98 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
3. South 78˚22'16" East, a distance of 152.86 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
4. North 72˚45'38" East, a distance of 169.63 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
5. North 59˚48'18" East, a distance of 6.46 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
6. North 39˚51'22" East, a distance of 7.55 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
7. North 63˚14'29" East, a distance of 116.47 feet to a found 1/2" Iron Rod with 3" aluminum cap at the southeast corner of "Annex A – Tract One", Tarrant Regional Water District tract and being in the west right-of-way line of said Main Street (100' R.O.W.);

**THENCE:** South 30˚03'39" East, along the west right-of-way line of Main Street a distance of 269.69 feet to the approximate center of Trinity River (Current) as located during October 2015;

**THENCE:** South 83˚54'18" West, along said approximate center of Trinity River (Current) as located during October, 2015, a distance of 65.26 feet to a calculated point at the northwest corner of a tract of land called Tract 1 conveyed to Tarrant County Water Control District No 1 by deed of record in Volume 2689, Page 118 of the Deed Records of Tarrant County, Texas, same being the northeast corner of a tract of land conveyed from W.S. Essex and wife to Fort Worth Power & Light by deed of record in Volume 361, Page 469 of the Deed Records of Tarrant County, Texas;

**THENCE:** South 00˚00'00" East, along the west line of said Tarrant County Water Control District Tract 1 and the east line of said tract conveyed from W.S. Essex a distance of 319.07 feet to a calculated point in the north right-of-way line of Franklin Street;

**THENCE:** South 82°00'00" West, along the north line of said Franklin Street and the south line of said W.S. Essex tract and a tract of land conveyed to R.L. Crowdus to Fort Worth Power & Light by deed of record in Volume 1040, Page 319 of the Deed Records of Tarrant County, Texas, a distance of 293.00 feet to a point at the southwest corner of said R.L. Crowdus tract, same being the southeast corner of a tract of land conveyed to the City of Fort Worth by deed of record in Volume 6099, Page 782 of the Deed Records of Tarrant County, Texas;

**THENCE:** North 00°00'00" West along the west line of said R.L. Crowdus tract and the east line of said City of Fort Worth tract a distance of 152.80 feet to the northeast corner of the City of Fort Worth tract, same being the southeast corner of Ford Street (50' R.O.W.);

**THENCE:** South 62°30'00" West, along the north line of said City of Fort Worth tract and the south right-of-way line of Ford Street a distance of 7.00 feet to an angle point in said north line of said City of Fort Worth tract and the south right-of-way line of Ford Street

**THENCE:** South 77°00'00" West, continuing along the north line of said City of Fort Worth tract and the south right-of-way line of Ford Street a distance of 152.00 feet to a point at the northwest corner of said City of Fort Worth tract, same being the northeast corner of a tract of land called First Tract by deed of record to Fort Worth Power & Light in Volume 823, Page 1;

**THENCE:** South 04°00'00" East, along the west line of said City of Fort Worth tract and the east line of said First Tract a distance of 135.00 feet to a point in the north right-of-way line of Franklin Street, said point being the southwest corner of said City of Fort Worth tract and the southeast corner of the First Tract as conveyed to the Fort Worth Power & Light;

**THENCE:** South 82°00'00" West along the north right-of-way line of Franklin Street and the south line of First Tract and Second Tract conveyed to Fort Worth Power & Light, a distance of 154.38 feet to a point in the east right-of-way line of Taylor Street (50' R.O.W.) as per Lot 1, 2, and 3, Block 1, Radioshack Addition, a subdivision of record Cabinet A, Slide 10730 of the Plat Records of Tarrant County, Texas;

**THENCE:** North 30°44'03" West along the east line of said Taylor Street and the east line of Lot 3, Block 1 of said Radioshack Addition, a distance of 379.88 feet to found 5/8" Iron Rod with cap stamped "Carter Burgess" at the northeast corner of said Lot 3, Block 1, being the east corner of Block 4, Tancor Addition No. 3, a subdivision of record in Volume 388-119, Page 60 of the Plat Records of Tarrant County, Texas, same being in the south line of a tract of land described as Tract Two as conveyed from Tarrant County Water Control District to Texas Electric Service Company by deed of record in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, from which a found "X" in concrete at a point in the east line of Lot 1, Block 1, Radioshack Addition bears South 24°09'05" East a distance of 386.15 feet;

**THENCE:** along the north line of said Block 4, Tancor Addition, No. 3, and the south line of said Tract Two the following nine (9) courses and distances:

1. North 54°20'32" West a distance of 68.56 feet to a point;
2. North 60°48'32" West a distance of 55.76 feet to a point;
3. North 65°03'32" West, a distance of 100.00 feet to a point;
4. North 78°43'32" West, a distance of 100.00 feet to a point;
5. North 84°08'32" West a distance of 100.00 feet to a found 5/8" Iron Rod with cap stamped "Jacobs";
6. South 87°48'16" West, a distance of 204.80 feet to 5/8" Iron Rod with cap stamped "Dunaway Assoc.";
7. South 78°33'32" West, a distance of 101.07 feet to a found 1/2" Iron Rod;
8. South 56°46'51" West, a distance of 400.12 feet to a found 5/8" Iron Rod with cap stamped "Jacobs";
9. South 46°23'19" West, a distance of 38.84 feet to a found 5/8" Iron Rod with cap stamped "Jacobs" for the southwest corner of said Tract Two;

**THENCE:** North 58°03'32" West, along the west line of Tract Two, at 28.64 feet passing a 5/8" Iron Rod with cap stamped "Dunaway Assoc", and continue for a total distance of 140.64 feet to a point at the approximate center of Clear Fork Trinity River (Current) as located during October, 2015, said point being the northwest corner of said Tract Two;

**THENCE:** North 50°01'43" East, along said approximate center of Clear Fork Trinity River (Current) as located during October, 2015, a distance of 142.85 feet to a point of curvature;

**THENCE:** along said curve to the right, having a radius of 1558.76 feet, an arc length of 736.84 feet, a delta of 27°05'03", and a chord which bears North 62°45'35" East a distance of 730.00 feet to a point of intersection of the approximate center of Clear Fork Trinity River (Current) as located during October, 2015, and the north line of Tract A, Texas Electric Service Co. Fort Worth Plant Site, a subdivision of record in Volume 388-E, Page 35, of the Plat Records of Tarrant County, Texas;

**THENCE:** North 21°35'00" West, along the north line of said Tract A, Texas Electric Service Co. Fort Worth Plant Site, a distance of 41.76 feet to a point;

**THENCE:** North 63°00'00" East, continuing along said north line of Tract A, Texas Electric Service Co. Fort Worth Plant Site, a distance of 105.13 feet to a point of intersection of Tract A, Texas Electric Service Co. Fort Worth Plant Site and the approximate center of West Fork Trinity River (Current) as located during October, 2015, same being the southwest line of a tract of land conveyed to Texas Electric Service Company by deed of record in Volume 2745, Page 96 of the Deed Records of Tarrant County, Texas, and intent of said deed is stated clearly in a deed of conveyance for Tract One from Tarrant County Water Control District to Texas Electric Service Company in Volume 3959, Page 597;

**THENCE:** along said approximate center of West Fork Trinity River (Current) as located during October, 2015, and the southwest line of said Texas Electric Service Company tract conveyed by Volume 2745, Page 96, the following seven (7) courses and distances:

1. North 55°08'42" West, a distance of 170.38 feet;
2. North 45°26'55" West, a distance of 84.34 feet;
3. North 40°16'23" West, a distance of 203.07 feet;
4. North 41°41'59" West, a distance of 127.80 feet;
5. North 40°07'24" West, a distance of 75.89 feet;
6. North 36°17'34" West, a distance of 102.71 feet;
7. North 46°59'53" West, a distance of 17.72 feet to a point at the northwest corner of the Texas Electric Service Company tract conveyed by Volume 2745, Page 96;

**THENCE:** North 45°13'54" East, along the northwest line of said Texas Electric Service Company tract conveyed by Volume 2745, Page 96, the northwest line of a Quitclaim deed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company by deed of record in Volume 2423, Page 271, Deed Records of Tarrant County, Texas, and a 7.009 acre tract of land conveyed by Quitclaim Deed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company in Volume 2423, Page 375 of the Deed Records of Tarrant County, Texas, a distance of 702.08 feet to a point at the northeast corner of said 7.009 acre tract;

**THENCE:** South 43°16'16" East, along the east line of the 7.009 acre tract a distance of 7.03 feet to a point at the northwest corner of a tract of land conveyed to TXU Generation Company, LP by deed of record in Volume 2274, Page 536, of the Deed Records of Tarrant County, Texas, said point also being the northwest corner of Block 4-1/2, North Fort Worth Addition, a subdivision of record in Volume Page 149 of the Plat Records of Tarrant County, Texas;

**THENCE:** North 59°59'29" East, along the north line of said TXU Generation Company LP, tract same being the north line of Block 4-1/2 and the south line of North Fourth Street a distance of 98.08 feet to the **POINT OF BEGINNING** of **TRACT I** containing 30.778 acres of land more or less.

**"TRACT II"** - **BEGINNING** at a found 5/8" Iron Rod with cap stamped "Brooks Baker" (Y = 6,962,177.88, X = 2,328,006.58) at the northeast corner of said Texas Electric Service Company tract conveyed by 3306, Page 355, the northwest corner of Lot 36, and being an angle point in the south line of Lot 37, both of the Cummings Addition, a subdivision of record in Volume 118, Page 32 of the Plat Records of Tarrant County, Texas,

**THENCE:** South 30°28'20" East, along the east line of the Texas Electric Service Company tract, same being the west line of said Lot 36, and the remainder of Lot 35, Cummings Addition, a distance of 149.62 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker" at the east corner of said Texas Electric Service Company tract, same being the southwest corner of said remainder of Lot 35, and being an angle point in

the north line of Lot 3, Block 1, Trinity Bluff Addition, according to the subdivision of record in D205151202 of the Official Public Records of Tarrant County, Texas,

**THENCE:** along the south line of said Texas Electric Service Company tract, same being the north line of Lot 3, Block 1, Trinity Bluff Addition, the following three (3) courses and distances:

1. South 30˚36'37" West a distance of 54.21 feet to a point;
2. South 38˚34'08" West a distance of 54.12 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker";
3. South 59˚22'51" West, a distance of 100.31 feet to a found 2" fence corner post at the southwest corner of said Texas Electric Service Company tract, same being the northwest corner of said Lot 3, Block 1, Trinity Bluff Addition, and being in the east line of a tract of land described as Tract 2 conveyed from E.W. Wisehart and wife, Mary Wisehart to Fort Worth Power & Light Company by deed of record in Volume 968, Page 571 of the Real Property Records of Tarrant County, Texas;

**THENCE:** South 30˚13'43" East, along the east line of said Fort Worth Power & Light tract and the west line of said Lot 3, Block 1, Trinity Bluff Addition a distance of 189.85 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker" at the south corner of Lot 3, Block 1, Trinity Bluff Addition, from which a found 5/8" Iron Rod with plastic cap stamped "Brooks Baker" bears North 09˚23'39" East a distance of 58.12 feet;

**THENCE:** South 24˚46'57" West, along the southeast line of the Fort Worth Power & Light Company tract and the northwest line of Lot 4R, Block 1, Trinity Bluff Addition, a subdivision of record in Cabinet B, Slide 3356 of the Plat Records of Tarrant County, Texas and Instrument of record in D207030226 of the Official Public Records of Tarrant County, Texas, a distance of 123.34 feet to a point;

**THENCE:** South 59˚39'58" West, along the south line of the Fort Worth Power & Light Company tract and the north lines of Lot 4R, Block 1, Trinity Bluff Addition, and Lot 1, Block 1, Trinity Bluff Addition, a subdivision of record in D205151202 of the Official Public Records of Tarrant County, Texas, and the north line of Lot 1, Block 1, Tarrant County College Downtown Campus Addition, a subdivision of record in Instrument No. D205132348, of the Official Public Records of Tarrant County, Texas, a distance of 299.38 feet to a point for the southwest corner of said Fort Worth Power & Light Company tract;

**THENCE:** North 30˚31'29" West, along the southwest line of the Fort Worth Power & Light Company tract, and the northeast line of a 0.23 acre tract of land described as Tract No. 2, conveyed to Tarrant County Water Control and Improvement District No. 1, by deed of record in Volume 2651, Page 225 of the Deed Records of Tarrant County, Texas, a distance of 341.72 feet to a point of curvature at the approximate center of Trinity River (Current) as located during October, 2015;

**THENCE:** along said curve to the left, with the approximate center of Trinity River (Current) as located during October, 2015, having a radius of 1415.71 feet, an arc length of 215.13 feet, a delta angle of 08˚42'23", and a chord which bears North 33˚12'07" East a distance of 214.92 feet to a point in the southwest line of a 0.675 acre tract of land conveyed to Tarrant Regional Water District by deed of record in Instrument No. D207319687 of the Official Property Records of Tarrant County, Texas;

**THENCE:** South 63˚59'31" East, along the southwest line of said 0.675 acre tract a distance of 174.13 feet to the southeast corner of the 0.675 acre tract;

**THENCE:** North 26˚00'29" East, along the southeast line of the 0.675 acre tract a distance of 85.00 feet to the northeast corner of the 0.675 acre tract;

**THENCE:** North 63˚59'31" West, along the northeast line of the 0.675 acre tract a distance of 172.47 feet to a point in the west line of said Tract 2, Fort Worth Power and Light Company as recorded in Volume 968, Page 571 of the Real Property Records of Tarrant County, Texas, same being at the approximate center of Trinity River (Current) as located during October, 2015,

**THENCE:** along said curve to the left, with the approximate center of Trinity River (Current) as located during October, 2015, having a radius of 1415.71 feet, an arc length of 92.65 feet, a delta angle of 03˚44'59", and a chord which bears North 23˚31'57" East a distance of 92.63 feet to a point;

**THENCE:** North 17˚10'53" East, continuing along the approximate center of Trinity River (Current) as located during October, 2015 a distance of 52.23 feet to a point;

**THENCE:** South 72˚49'07" East, a distance of 101.10 feet to a point at the lowest acceptable bank of the Trinity River (Current) as located during October, 2015;

**THENCE:** North 74˚59'01" East, along the north line of a Texas Electric Service Company tract same being the south line of Lot 37, Cummings Addition, a distance of 159.88 feet to the **POINT OF BEGINNING** of **TRACT II** containing 4.706 acres of land more or less.

All bearings, distances and coordinates are grid and refer to the Texas Coordinate System of NAD83/2011 (HPGN), Texas North Central Zone 4202.

This Field Notes Description constitutes a legal document, and, unless it appears in its entirety, in its original form does not constitute a legal document. It is strongly recommended, for the continuity of future surveys, that this document be incorporated in *all* future conveyances, *without any revisions or deletions*.

Surveyor has made no investigation or search for easements or other matters of record that a title report would not disclose and this survey does not represent warranty of title or a guarantee of ownership.

## EXHIBIT B

## FIRPTA CERTIFICATE

Section 1445 of the Internal Revenue Code provides that a transferee of a U.S. real property interest must withhold tax if the transferor is a foreign person. For U.S. tax purposes (including Section 1445), the owner of a disregarded entity (which has legal title to a U.S. real property interest under local law) will be the transferor of the property and not the disregarded entity. To inform Tarrant Regional Water District, a Water Control and Improvement District ("**Transferee**") that withholding of tax is not required upon the disposition of a U.S. real property interest by **ENERGY FUTURE HOLDINGS CORP.**, a Texas corporation ("**Transferor**"), the beneficial owner of Luminant Generation Company LLC, the undersigned, in his capacity as _____ of Transferor, but not individually, hereby certifies to Transferee the following on behalf of Transferor:

1. Transferor is not a foreign corporation, foreign partnership, foreign trust, or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Transferor is not a disregarded entity as defined in Section 1.1445-2(b)(2)(iii);

3. Transferor's U.S. employer identification number is 46-2488810; and

4. Transferor's office address is 1601 Bryan Street, Dallas, Texas 75201.

Transferor understands that this certification may be disclosed to the Internal Revenue Service by Transferee and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury I declare that I have examined this certification and to the best of my knowledge and belief it is true, correct and complete, and I further declare that I have authority to sign this document on behalf of Transferor.

Dated as of September _____, 2016.

**ENERGY FUTURE HOLDINGS CORP.**, a Texas corporation

By: _____
Name: _____
Title: _____
Date: _____

THE STATE OF TEXAS                  §
                                    §
COUNTY OF DALLAS                    §

  This instrument was acknowledged before me on September \_\_\_\_, 2016 by
_____, _____ of Energy Future Holdings
Corporation, a Texas corporation, on behalf of said corporation and in the capacity therein.

Notary Public,  State of Texas



**<u>EXHIBIT C</u>**

**<u>SALE ORDER</u>**



## EXHIBIT D

## SPECIAL WARRANTY DEED

NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## SPECIAL WARRANTY DEED

| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF TARRANT | § | |

THAT **LUMINANT GENERATION COMPANY LLC**, a Texas limited liability company ("Grantor"), whose mailing address is 1601 Bryan Street, Dallas, TX 75201, for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration paid in cash to Grantor by the Grantee herein named, the receipt and sufficiency of which are hereby acknowledged, and compliance with the terms and conditions of that certain Conveyance of Real Estate between Grantor and Grantee dated September _____, 2016 (the "Conveyance Agreement"), has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does GRANT, BARGAIN, SELL and CONVEY unto **TARRANT REGIONAL WATER DISTRICT**, a conservation and reclamation district created under Article 16, Section 59 of the Texas Constitution ("Grantee"), whose mailing address is 801 East Northside Drive, Fort Worth, Texas 76102, that certain real property situated in the County of Tarrant, Texas, more particularly described on Exhibit A attached hereto and made a part hereof for all purposes, together with all of Grantor's interest in any improvements thereon and appurtenances relating thereto, specifically including all equipment and materials necessary or useful in the operation of the groundwater treatment system currently installed thereon ("Property").

TO HAVE AND TO HOLD the Property subject to the Permitted Exceptions (defined below) and all improvements located thereon, together with all and singular the rights and appurtenances thereto and in any wise belonging unto the said Grantee, its legal representatives, successors and assigns, forever; and Grantor does hereby bind itself, its legal representatives and successors, to WARRANT AND FOREVER DEFEND all and singular the Property subject to the Permitted Exceptions unto the said Grantee, its legal representatives, successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through or under Grantor, but not otherwise.

For the same consideration, Grantor hereby GRANTS, BARGAINS, SELLS and CONVEYS, to Grantee, all of Grantor's (i) rights, titles, powers, privileges, easements, licenses, rights-of-way and interests appurtenant to the Property, (ii) rights, titles, powers, privileges, licenses, easements, rights-of-way and interests, if any, of Grantor, either at law or in equity, in possession or in expectancy, in and to any real estate lying in the streets, highways, roads, alleys,

rights-of-way or sidewalks, open or proposed, in front of, above, over, under, through or adjoining the Property and in and to any strips or gores of real estate adjoining the Property, and (iii) rights, titles, power, privileges, interest, licenses, easements and rights-of-way appurtenant or incident to any of the foregoing.

By acceptance of this Deed, and as a material part of the Consideration, Grantee acknowledges and agrees that Grantee is taking the conveyance of the Property on an "AS-IS" basis, with any and all latent and patent defects, and there is no warranty by Grantor that the Property has a particular financial value or is fit for a particular purpose. By acceptance of this Deed, Grantee further acknowledges and stipulates that Grantee is not relying on any representation, statement, or other assertion with respect to the condition of the Property, but rather is relying on Grantee's personal examination of the Property. Grantee takes title to the Property with the express understanding and stipulation that there are no express or implied warranties except as may or may not be set forth in this Deed.

Grantee assumes and agrees to pay taxes for 2016 and subsequent years.

This conveyance is made and delivered subject to those matters of title (the "Permitted Exceptions") set forth on Exhibit B attached hereto and incorporated herein by reference, but only to the extent the same, in fact, do exist and are applicable to the Property.

This conveyance is made PURSUANT and SUBJECT TO that certain AMENDED AND SUPERSEDING ORDER ESTABLISHING PROCEDURES TO SELL, TRANSFER, OR ABANDON CERTAIN DE MINIMIS ASSETS filed on June 3, 2016 in the United States Bankruptcy Court for the District of Delaware [Case 14-10979] [D.I. 8598], attached hereto as Exhibit B, and in accordance with the ORDER AUTHORIZING THE SALE OF THE NORTH MAIN PROPERTY [D.I. ____] (the "**Sale Order**") approved by the Bankruptcy Court on September __, 2016, attached hereto as Exhibit C; therefore, title to the Property is hereby conveyed free and clear of all liens, save for the lien for property taxes not yet due and payable.

**Inspection and Environmental:**

(a)    Grantee acknowledges that the Property includes an area subject to that certain Agreed Order issued on November 24, 1993 by the Texas Natural Resource Conservation Commission ("TNRCC"), (predecessor to the Texas Commission on Environmental Quality (the "TCEQ"), In the Matter of Texas Utilities Electric; SWR No. 39927 (the "Agreed Order"). The Agreed Order pertains to an approximately 7.009 acres area on Tract I where an approximately 3.6-acre area of contaminated soils are capped in place, and groundwater located outside of and surrounding the capped portion contains groundwater monitoring wells and groundwater treatment system (collectively referred to herein as the "Site"). The Agreed Order resolved an enforcement action related to the Site which is a portion of the Property and which is located in Fort Worth, Texas, for violations of the Texas Solid Waste Disposal Act and the Texas Water Code. In the Agreed Order, the TNRCC found that soil at the Site was contaminated by lead, cadmium, chromium, and or total petroleum hydrocarbons and that groundwater contained chlorinated solvents. Under the terms of the Agreed Order, TNRCC required Texas Utilities Electric to undertake certain activities as set forth therein and maintain a groundwater monitoring system; maintain a post-closure care plan; and meet other requirements described in the Agreed Order. Grantee

acknowledges that other parts of the Property, beyond the location of the Site, and the groundwater may be contaminated and require future remediation.

(b)     Grantee acknowledges that Grantee is independently and personally familiar with and knowledgeable about the Property and has waived the opportunity to further inspect the Property, and that Grantee has accepted this Deed based upon such familiarity and knowledge.  The Property is to be conveyed to and accepted by Grantee at Closing in its then present condition, "AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED" except as expressly set forth herein. Notwithstanding anything contained herein to the contrary, it is understood and agreed that, except as expressly set forth herein, Grantor and Grantor's agents or employees have not made and are not now making, and they specifically disclaim, any warranties, representations or guaranties of any kind or character, express or implied, oral or written, past, present or future, with respect to the Property, including, but not limited to, warranties, representations or guaranties as to (i) matters of title (other than Grantor's warranty of title set forth herein); (ii) environmental matters of any kind relating to the Property or any portion thereof (including the condition of the soil or groundwater beneath the Property); (iii) geological conditions, including, without limitation, subsidence, subsurface conditions, water table, underground water reservoirs, limitations regarding the withdrawal of water and earthquake faults and the resulting damage of past and/or future earthquakes; (iv) whether, and to the extent to which the Property or any portion thereof is affected by any stream (surface or underground), body of water, flood prone area, flood plain, floodway or special flood hazard; (v) drainage; (vi) soil conditions, including the existence of instability, past soil repairs, soil additions or conditions of soil fill, or susceptibility to landslides, or the sufficiency of any undershoring; (vii) zoning to which the Property or any portion thereof may be subject; (viii) the availability of any utilities to the Property or any portion thereof including, without limitation, water, sewage, gas and electric; (ix) usages of adjoining property; (x) access to the Property or any portion thereof, (xi) the value, compliance with the plans and specifications, size, location, age, use, design, quality, description, suitability, structural integrity, operation, title to, or physical or financial condition of the Property or any portion thereof, or any income, expenses, charges, liens, encumbrances, rights or claims on or affecting or pertaining to the Property or any part thereof; (xii) the presence of Hazardous Materials (defined below) in or on, under or in the vicinity of the Property; (xiii) the condition or use of the Property or compliance of the Property with any or all past, present or future federal, state or local ordinances, rules, regulations or laws, building, fire or zoning ordinances, codes or other similar laws; (xiv) the existence or non-existence of underground storage tanks; (xv) any other matter affecting the stability or integrity of the Property; (xvi) the potential for further development of the Property; (xvii) the existence of vested land use, zoning or building entitlements affecting the Property; (xviii) the merchantability of the Property or fitness of the Property for any particular purpose (By executing this Deed, Grantee is affirming that Grantee has not relied on Grantor's or Grantor's agents' or employees' skill or judgment to select or furnish the Property for any particular purpose, and that Grantor makes no warranty that the Property is fit for any particular-purpose); or (xix) tax consequences.  EXCEPT AS EXPRESSLY SET FORTH HEREIN, GRANTOR MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND TO GRANTEE, INCLUDING, WITHOUT LIMITATION, THE PHYSICAL CONDITION OF THE PROPERTY AND ANY IMPROVEMENTS LOCATED THEREON, OR THEIR SUITABILITY FOR ANY PARTICULAR PURPOSE OR OF MERCHANTABILITY.  GRANTEE SHALL RELY ON ITS FAMILIARITY AND

KNOWLEDGE OF THE PROPERTY IN DETERMINING WHETHER TO ACQUIRE IT.

(c)      Grantee affirms that it is relying only on its own independent investigation, analysis, and evaluation of the environmental, geological, economic, and other interpretations, and the costs and prospects for further development in relation to the Property including the advice of its counsel or other advisors.

(d)      Grantee accepts the Property "AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED" and with an expressed acceptance and understanding that  Grantee assumes all responsibilities, liabilities, and obligations with respect to contamination, known or unknown, at, on, under, or from the Property.  Grantee further agrees to assume full responsibility for compliance with all obligations attributable in any way to the Property and all laws, orders, rules, and regulations concerning all such conditions, discovered, discoverable, hidden, known, or unknown.

(e)      Grantee hereby FOREVER RELEASES AND DISCHARGES Grantor from all responsibility and liability relating to the physical, environmental or legal compliance status of the Property, whether arising before or after the Effective Date, and liabilities under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (42 U.S.C. Sections 9601 et seq.), as amended ("CERCLA"), regarding the condition, valuation, salability or utility of the Property, or its suitability for any purpose whatsoever (including, but not limited to, with respect to the presence in the soil, air, structures and surface and subsurface waters, of Hazardous Materials or other materials or substances that have been or may in the future be determined to be toxic, hazardous, undesirable or subject to regulation and that may need to be specially treated, handled and/or removed from the Property under current or future federal, state and local laws, regulations or guidelines, and any structural and geologic conditions, subsurface soil and water conditions and solid and hazardous waste and Hazardous Materials on, under, adjacent to or otherwise affecting the Property).  Grantee further hereby WAIVES (and by Closing this transaction will be deemed to have WAIVED) any and all objections and complaints (including, but not limited to, federal, state and local statutory and common law based actions, and any private right of action under any federal, state or local laws, regulations or guidelines to which the Property is or may be subject, including, but not limited to, CERCLA concerning the physical characteristics and any existing conditions of the Property, whether arising before or after the Effective Date.  Grantee further hereby assumes the risk of changes in applicable laws and regulations relating to past, present and future environmental conditions on the Property and the risk that adverse physical characteristics and conditions, including, without limitation, the presence of Hazardous Materials or other contaminants, may not have been revealed by its investigation.   For purposes hereof, "Hazardous Materials" means "Hazardous Material," "Hazardous Substance," "Pollutant or Contaminant," and "Petroleum" and "Natural Gas Liquids," as those terms are defined or used in Section 101 of CERCLA, and any other substances regulated because of their effect or potential effect on public health and the environment, including, without limitation, PCBs, lead paint, asbestos, urea formaldehyde, radioactive materials, putrescible materials, and infectious materials.

(f)      Grantee agrees that as of Effective Date, Grantee assumes all risk and liability of whatsoever nature connected to the Property and DOES RELEASE AND DISCHARGE AND MUST, TO THE EXTENT AUTHORIZED UNDER THE CONSTITUTION AND LAWS OF

THE STATE OF TEXAS, INDEMNIFY, HOLD HARMLESS, AND DEFEND GRANTOR AGAINST ALL CLAIMS (INCLUDING EXPENSES ASSOCIATED WITH THE INVESTIGATION OF CLAIMS, TESTING, AND ASSESSMENT), WHETHER BASED ON ANY THEORY OF LIABILITY, INCLUDING TORT, BREACH OF CONTRACT, (EXPRESS OR IMPLIED) BREACH OF WARRANTY (EXPRESS OR IMPLIED), STRICT LIABILITY, REGULATORY LIABILITY, STATUTORY LIABILITY, LIABILITIES ASSOCIATED WITH THE NEGLIGENCE OF GRANTOR, OR OTHER FAULT OR RESPONSIBILITY OF GRANTOR AND RELATING TO ALL PERIODS PRIOR TO, ON, AND AFTER THE EFFECTIVE DATE FOR ANY CLAIM.

(g)      If Grantee sells or transfers any part of Tract I of the North Main Property to any third party prior to the TCEQ, or any successor thereto, issuing a Certificate of Completion (or equivalent), or prior to completion of the Post-Closure Care Plan ("PCC Plan"), as such term is defined in the Conveyance Agreement, as the case may be,  for said property (or portion thereof to be sold or transferred), or TCEQ making a determination that all required cleanup of said property has been completed, Grantee agrees that Grantee will require any purchaser(s), assignee(s), grantee(s), transferee(s), and successor(s) of Grantee to release and discharge, and, subject to any limitations found in the Constitution or the laws of the State of Texas, HOLD HARMLESS GRANTOR from and against any and all claims and obligations described above. To that end, and subject to the provisions of the preceding sentence, Grantee agrees to cause the provisions of Section 18(h) of the Conveyance Agreement to be incorporated into all subsequent sales or transfers by Grantee of any interest in Tract I of the Property or any portion thereof, and to cause all purchasers or transferees of said Property from Grantee to expressly acknowledge their agreement to such terms with respect to Grantor and said Property in writing.   This requirement of this Section (g) shall remain effective and in full force and effect until such time as the TCEQ, or any other regulatory agency with jurisdiction over Tract I of the Property, has issued a Certificate of Completion (or equivalent), prior to the time TCEQ acknowledges that the requirements of the PCC Plan have been completed, as the case may be,  or otherwise determines that all required cleanup has been completed regarding said Property or any portion thereof to be sold or transferred.  Upon the issuance of a Certificate of Completion (or equivalent) by TCEQ and recordation of same in the Real Property Records of Tarrant County, Texas, or acknowledgement that the PCC Plan has been completed, as the case may be, the provisions of this Section (g) shall automatically terminate as to any such tract.

**RELEASE.**    EFFECTIVE UPON THE EXECUTION OF THIS DEED AND IN CONSIDERATION OF GRANTOR'S CONVEYANCE OF THE PROPERTY AND PAYMENT OF GRANTOR'S CONTRIBUTION, GRANTEE HEREBY COMPLETELY, FULLY, UNCONDITIONALLY, AND IRREVOCABLY RELEASES GRANTOR, AND ITS AGENTS, DIRECTORS, EMPLOYEES, PARENT ENTITIES, SUBSIDIARIES, SUCCESSORS, ASSIGNS AND AFFILIATED ENTITIES, FROM ANY AND ALL DEMANDS, CLAIMS, DAMAGES, AND LOSSES, WHICH ARE RELATED TO OR ARISE OUT OF THE CONVEYANCE OF THE PROPERTY, EXCEPT FOR ANY BREACH OF THE CONVEYANCE AGREEMENT.

When the context requires, singular nouns and pronouns include the plural.

[*Signatures Follow*]

EXECUTED on the day acknowledged below but effective for all purposes as of the day first above written.

GRANTOR:

**LUMINANT GENERATION COMPANY LLC**,
a Texas limited liability company

By: _____
Name: _____
Title: _____


STATE OF TEXAS           §
                         §
COUNTY OF _____     §

This instrument was acknowledged before me on the ___ day of _____, 2016 by _____, _____ of Luminant Generation Company LLC, on behalf of said limited liability company, for the purposes indicated herein.


_____
Notary Public in and for the State of Texas
Printed Name: _____
My Commission Expires: _____

EXECUTED on the day acknowledged below but effective for all purposes as of the day first above written.

GRANTEE:

**TARRANT REGIONAL WATER DISTRICT**, a
Water Control and Improvement District

By: _____
Name: _____
Title: _____

STATE OF TEXAS            §
                          §
COUNTY OF _____     §

This instrument was acknowledged before me on the ___ day of _____, 2016 by _____, _____ of Tarrant Regional Water District, a Water Control and Improvement District, for the purposes indicated herein.

_____
Notary Public in and for the State of Texas
Printed Name: _____
My Commission Expires: _____

AFTER RECORDING
PLEASE RETURN TO:

Lee F. Christie
POPE, HARDWICKE, CHRISTIE, SCHELL,
    KELLY & TAPLETT, LLP
500 West 7th Street, Suite 600
Fort Worth, Texas 76102

# EXHIBIT A

Legal Description

## METES AND BOUNDS DESCRIPTION

### A 35.484 Acre Tract, more or less

Being a 35.484 acre tract, more or less, situated in the A. Gouhenant Survey, Abstract No. 582, the A. Robinson Survey, Abstract No. 1289, and the M. Baugh Survey, Abstract No. 106, and being comprised of two tracts herein described as "Tract I", a 30.778 acres tract of land more or less out of that remaining portion of land quitclaimed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company by Quitclaim Deed of record in Volume 2423, Page 375 of the Deed Records of Tarrant County, Texas, that same tract of land quitclaimed from the Southwestern Railway Company of Texas to Texas Electric Service Company by Quitclaim Deed recorded in Volume 2423, Page 271, of the Deed Records of Tarrant County, Texas, that certain tract of land conveyed from Tarrant County Water Control Improvement District Number One to Texas Electric Service Company by deed of record in Volume 2745, Page 96 of the Deed Records of Tarrant County Texas, and by the intent as more clearly stated in that certain deed of record from the Tarrant County Water Control District Number One to the Texas Electric Service Company recorded in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, all of those lands conveyed by deed from the Tarrant County Water Control District Number One to Texas Electric Service Company of record in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, a portion of that tract of land conveyed from H.H. Susie M. Cobb to Fort Worth Power and Light Company by deed of record in Volume 759, Page 322 of the Deed Records of Tarrant County, Texas, a portion of the tract of land conveyed to Texas Electric Service Company by deed of record in Volume 15342, Page 160 of the Official Public Records of Tarrant County, Texas, same being that tract of land conveyed from the City of Fort Worth to Fort Worth Power and Light Company by deed of record in Volume 759, Page 324 of the Deed Records of Tarrant County, Texas, all of that called First Tract and Second Tract, portions of the called Fifth and Sixth tract of land conveyed to TXU Generation Company by deed of record in Volume 15342, Page 160 of the Deed Records of Tarrant County, Texas and described by deed of record from R.L. Crowdus and wife, Maud T. Crowdus to Forth Worth Power & Light Company by deed of record in Volume 823, Page 1 of the Deed Records of Tarrant County, Texas, and that same tract of land conveyed from Maud T. Crowdus by deed of record in Volume 1040, Page 319 of the Deed Records of Tarrant County, Texas, part of Blocks 163, 164, 165 and 166 of the City of Fort Worth plat as recorded in Volume 204, Page 59 of the Plat Records of Tarrant County, Texas, part of the Map of the Texas Electric Service Co. Fort Worth Plant Site plat as recorded in Volume 388-E, Page 35 of the Plat Records of Tarrant County, Texas, part of the North Fort Worth Tarrant County Texas plat as recorded in Volume 63, Page 149-150 of the Plat Records of Tarrant County, Texas, all of a tract of land conveyed from W.S. Essex and wife to Fort Worth Power & Light by deed of record in Volume 361, Page 469 of the Deed Records of Tarrant County, Texas, part of a tract of land described as being the Fourth Tract in a deed from J.R. Nutt to Fort Worth Power and Light Company and recorded in Volume 383, Page 27 of the Deed Records of Tarrant County, Texas, same tract also being described in a deed from S.H. Ferril, et ux to Fort Worth Power & Light Co. and recorded in Volume 405, Page 569 of the Deed Records of Tarrant County, Texas, part of both tracts described in a deed from the City of Fort Worth to Fort Worth Power and Light Company and recorded in Volume 682, Page 112 of the Deed Records of Tarrant County, Texas, part of seven (7) tracts described as First, Second, Third, Fourth, Fifth, Sixth and Seventh Tracts in a deed from Joe W. Crowdds to Fort Worth Power and Light Company and recorded in Volume 804, Page 635 of the Deed Records of Tarrant County, Texas, all of a tract of land described in deed from F.E. Guess to Forth Worth Power and Light Company and recorded in Volume 1037, Page 406 of the Deed Records of Tarrant County, Texas, part of thirteen (13) tracts described as Parcel Eight, Nine, Eleven, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Thirty-Eight and Forty-Five in a deed from Fort Worth Power and Light Company to Texas Electric Service Company and recorded in Volume 1108, Page 125 of the Deed Records of Tarrant County, Texas, same being described in a deed from Fort Worth Power and Light Company to Texas Electric Service Company and recorded in Volume 1108, Page 125 of the Deed Records of Tarrant County, Texas, and also comprised of "Tract II", a 4.706 acre remainder of a tract of land comprised of that certain tract of land conveyed from E.W. Wisehart and Mary Wisehart to Fort Worth Power & Light described as Tract 2 by deed of record in Volume 968, Page 571 of the Real Records of Tarrant County, Texas, and that same tract of land conveyed from G.T Hubbard to Texas Electric Service Company by deed of record in Volume 3306, Page 355 of the Deed Records of Tarrant County, Texas. Said

compilation of land totals 35.484 acres of land more or less and referenced herein as Tract I and Tract II, and being more particularly described in the metes and description as follows:

**"TRACT I"** - **BEGINNING** at a found Cotton Spindle (Y = 6,962,598.33, X = 2,325,621.21) in the southerly right of way line of North Fourth Street (60' R.O.W.) said point being at the northwest corner of a tract of land described as "Annex A - Tract One" as conveyed to Tarrant County College District by deed of record in Instrument #D204331101 of the Official Records of Tarrant County, Texas, same being the northwest corner of said tract of land conveyed to the Tarrant Regional Water District by deed of record in Instrument #D214076713 of the Official Public Records of Tarrant County, Texas, and being on the east line of a portion of North Houston Street as vacated by City Ordinance 2848, from which a found 1/2" iron rod with cap stamped "Brittain Crawford" bears North 59˚49'09 East a distance of 243.45 feet;

*THENCE:* South 30˚01'57" East, along the east line of said vacated portion of North Houston Street, same being the west line of said "Annex A - Tract One, Tarrant Regional Water District, a distance of 731.28 feet to a found 1/2" Iron Rod with yellow cap;

*THENCE:* along the west line of "Annex A – Tract One", Tarrant Regional Water District tract the following six (6) courses and distances:

7. South 60˚09'39" West, a distance of 117.27 feet to a found 1/2" Iron Rod with yellow cap;
8. South 30˚05'09" East, a distance of 134.79 feet to a found 5/8" Iron Rod with cap stamped "Dunaway Assoc."
9. South 35˚48'22" East, a distance of 183.15 feet to a calculated point;
10. South 42˚21'51" West, a distance of 106.64 feet to a calculated point;
11. South 47˚38'09" East, a distance of 274.91 feet to a calculated point;
12. South 44˚00'22" West, a distance of 72.84 feet to a found 5/8" Iron Rod with cap stamped "Carter Burgess" at the southwest corner of said Tract One, Tarrant Regional Water District tract;

*THENCE:* along the south line of "Annex A – Tract One", Tarrant Regional Water District tract the following seven (7) courses and distances:

8. South 30˚08'32" East, a distance of 24.87 feet to a found 1/2" Iron Rod;
9. South 64˚15'06" East, a distance of 50.98 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
10. South 78˚22'16" East, a distance of 152.86 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
11. North 72˚45'38" East, a distance of 169.63 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
12. North 59˚48'18" East, a distance of 6.46 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
13. North 39˚51'22" East, a distance of 7.55 feet to a found 1/2" Iron Rod with cap stamped "Brittain Crawford";
14. North 63˚14'29" East, a distance of 116.47 feet to a found 1/2" Iron Rod with 3" aluminum cap at the southeast corner of "Annex A – Tract One", Tarrant Regional Water District tract and being in the west right-of-way line of said Main Street (100' R.O.W.);

*THENCE:* South 30˚03'39" East, along the west right-of-way line of Main Street a distance of 269.69 feet to the approximate center of Trinity River (Current) as located during October 2015;

*THENCE:* South 83˚54'18" West, along said approximate center of Trinity River (Current) as located during October, 2015, a distance of 65.26 feet to a calculated point at the northwest corner of a tract of land called Tract 1 conveyed to Tarrant County Water Control District No 1 by deed of record in Volume 2689, Page 118 of the Deed Records of Tarrant County, Texas, same being the northeast corner of a tract of land conveyed from W.S. Essex and wife to Fort Worth Power & Light by deed of record in Volume 361, Page 469 of the Deed Records of Tarrant County, Texas;

*THENCE:* South 00˚00'00" East, along the west line of said Tarrant County Water Control District Tract 1 and the east line of said tract conveyed from W.S. Essex a distance of 319.07 feet to a calculated point in the north right-of-way line of Franklin Street;

**THENCE:** South 82°00'00" West, along the north line of said Franklin Street and the south line of said W.S. Essex tract and a tract of land conveyed to R.L. Crowdus to Fort Worth Power & Light by deed of record in Volume 1040, Page 319 of the Deed Records of Tarrant County, Texas, a distance of 293.00 feet to a point at the southwest corner of said R.L. Crowdus tract, same being the southeast corner of a tract of land conveyed to the City of Fort Worth by deed of record in Volume 6099, Page 782 of the Deed Records of Tarrant County, Texas;

**THENCE:** North 00°00'00" West along the west line of said R.L. Crowdus tract and the east line of said City of Fort Worth tract a distance of 152.80 feet to the northeast corner of the City of Fort Worth tract, same being the southeast corner of Ford Street (50' R.O.W.);

**THENCE:** South 62°30'00" West, along the north line of said City of Fort Worth tract and the south right-of-way line of Ford Street a distance of 7.00 feet to an angle point in said north line of said City of Fort Worth tract and the south right-of-way line of Ford Street

**THENCE:** South 77°00'00" West, continuing along the north line of said City of Fort Worth tract and the south right-of-way line of Ford Street a distance of 152.00 feet to a point at the northwest corner of said City of Fort Worth tract, same being the northeast corner of a tract of land called First Tract by deed of record to Fort Worth Power & Light in Volume 823, Page 1;

**THENCE:** South 04°00'00" East, along the west line of said City of Fort Worth tract and the east line of said First Tract a distance of 135.00 feet to a point in the north right-of-way line of Franklin Street, said point being the southwest corner of said City of Fort Worth tract and the southeast corner of the First Tract as conveyed to the Fort Worth Power & Light;

**THENCE:** South 82°00'00" West along the north right-of-way line of Franklin Street and the south line of First Tract and Second Tract conveyed to Fort Worth Power & Light, a distance of 154.38 feet to a point in the east right-of-way line of Taylor Street (50' R.O.W.) as per Lot 1, 2, and 3, Block 1, Radioshack Addition, a subdivision of record Cabinet A, Slide 10730 of the Plat Records of Tarrant County, Texas;

**THENCE:** North 30°44'03" West along the east line of said Taylor Street and the east line of Lot 3, Block 1 of said Radioshack Addition, a distance of 379.88 feet to found 5/8" Iron Rod with cap stamped "Carter Burgess" at the northeast corner of said Lot 3, Block 1, being the east corner of Block 4, Tancor Addition No. 3, a subdivision of record in Volume 388-119, Page 60 of the Plat Records of Tarrant County, Texas, same being in the south line of a tract of land described as Tract Two as conveyed from Tarrant County Water Control District to Texas Electric Service Company by deed of record in Volume 3959, Page 597 of the Deed Records of Tarrant County, Texas, from which a found "X" in concrete at a point in the east line of Lot 1, Block 1, Radioshack Addition bears South 24°09'05" East a distance of 386.15 feet;

**THENCE:** along the north line of said Block 4, Tancor Addition, No. 3, and the south line of said Tract Two the following nine (9) courses and distances:

10. North 54°20'32" West a distance of 68.56 feet to a point;
11. North 60°48'32" West a distance of 55.76 feet to a point;
12. North 65°03'32" West, a distance of 100.00 feet to a point;
13. North 78°43'32" West, a distance of 100.00 feet to a point;
14. North 84°08'32" West a distance of 100.00 feet to a found 5/8" Iron Rod with cap stamped "Jacobs";
15. South 87°48'16" West, a distance of 204.80 feet to 5/8" Iron Rod with cap stamped "Dunaway Assoc.";
16. South 78°33'32" West, a distance of 101.07 feet to a found 1/2" Iron Rod;
17. South 56°46'51" West, a distance of 400.12 feet to a found 5/8" Iron Rod with cap stamped "Jacobs";
18. South 46°23'19" West, a distance of 38.84 feet to a found 5/8" Iron Rod with cap stamped "Jacobs" for the southwest corner of said Tract Two;

**THENCE:** North 58°03'32" West, along the west line of Tract Two, at 28.64 feet passing a 5/8" Iron Rod with cap stamped "Dunaway Assoc", and continue for a total distance of 140.64 feet to a point at the approximate center of Clear Fork Trinity River (Current) as located during October, 2015, said point being the northwest corner of said Tract Two;

**THENCE:** North 50°01'43" East, along said approximate center of Clear Fork Trinity River (Current) as located during October, 2015, a distance of 142.85 feet to a point of curvature;

**THENCE:** along said curve to the right, having a radius of 1558.76 feet, an arc length of 736.84 feet, a delta of 27°05'03", and a chord which bears North 62°45'35" East a distance of 730.00 feet to a point of intersection of the approximate center of Clear Fork Trinity River (Current) as located during October, 2015, and the north line of Tract A, Texas Electric Service Co. Fort Worth Plant Site, a subdivision of record in Volume 388-E, Page 35, of the Plat Records of Tarrant County, Texas;

**THENCE:** North 21°35'00" West, along the north line of said Tract A, Texas Electric Service Co. Fort Worth Plant Site, a distance of 41.76 feet to a point;

**THENCE:** North 63°00'00" East, continuing along said north line of Tract A, Texas Electric Service Co. Fort Worth Plant Site, a distance of 105.13 feet to a point of intersection of Tract A, Texas Electric Service Co. Fort Worth Plant Site and the approximate center of West Fork Trinity River (Current) as located during October, 2015, same being the southwest line of a tract of land conveyed to Texas Electric Service Company by deed of record in Volume 2745, Page 96 of the Deed Records of Tarrant County, Texas, and intent of said deed is stated clearly in a deed of conveyance for Tract One from Tarrant County Water Control District to Texas Electric Service Company in Volume 3959, Page 597;

**THENCE:** along said approximate center of West Fork Trinity River (Current) as located during October, 2015, and the southwest line of said Texas Electric Service Company tract conveyed by Volume 2745, Page 96, the following seven (7) courses and distances;

8.  North 55°08'42" West, a distance of 170.38 feet;
9.  North 45°26'55" West, a distance of 84.34 feet;
10.  North 40°16'23" West, a distance of 203.07 feet;
11.  North 41°41'59" West, a distance of 127.80 feet;
12.  North 40°07'24" West, a distance of 75.89 feet;
13.  North 36°17'34" West, a distance of 102.71 feet;
14.  North 46°59'53" West, a distance of 17.72 feet to a point at the northwest corner of the Texas Electric Service Company tract conveyed by Volume 2745, Page 96;

**THENCE:** North 45°13'54" East, along the northwest line of said Texas Electric Service Company tract conveyed by Volume 2745, Page 96, the northwest line of a Quitclaim deed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company by deed of record in Volume 2423, Page 271, Deed Records of Tarrant County, Texas, and a 7.009 acre tract of land conveyed by Quitclaim Deed from St. Louis Southwestern Railway Company of Texas to Texas Electric Service Company in Volume 2423, Page 375 of the Deed Records of Tarrant County, Texas, a distance of 702.08 feet to a point at the northeast corner of said 7.009 acre tract;

**THENCE:** South 43°16'16" East, along the east line of the 7.009 acre tract a distance of 7.03 feet to a point at the northwest corner of a tract of land conveyed to TXU Generation Company, LP by deed of record in Volume 2274, Page 536, of the Deed Records of Tarrant County, Texas, said point also being the northwest corner of Block 4-1/2, North Fort Worth Addition, a subdivision of record in Volume Page 149 of the Plat Records of Tarrant County, Texas;

**THENCE:** North 59°59'29" East, along the north line of said TXU Generation Company LP, tract same being the north line of Block 4-1/2 and the south line of North Fourth Street a distance of 98.08 feet to the **POINT OF BEGINNING** of **TRACT I** containing 30.778 acres of land more or less.

**"TRACT II"** - **BEGINNING** at a found 5/8" Iron Rod with cap stamped "Brooks Baker" (Y = 6,962,177.88, X = 2,328,006.58) at the northeast corner of said Texas Electric Service Company tract conveyed by 3306, Page 355, the northwest corner of Lot 36, and being an angle point in the south line of Lot 37, both of the Cummings Addition, a subdivision of record in Volume 118, Page 32 of the Plat Records of Tarrant County, Texas,

**THENCE:** South 30°28'20" East, along the east line of the Texas Electric Service Company tract, same being the west line of said Lot 36, and the remainder of Lot 35, Cummings Addition, a distance of 149.62 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker" at the east corner of said Texas Electric Service Company tract, same being the southwest corner of said remainder of Lot 35, and being an angle point in

the north line of Lot 3, Block 1, Trinity Bluff Addition, according to the subdivision of record in D205151202 of the Official Public Records of Tarrant County, Texas,

**THENCE:** along the south line of said Texas Electric Service Company tract, same being the north line of Lot 3, Block 1, Trinity Bluff Addition, the following three (3) courses and distances:

4.  South 30˚36'37" West a distance of 54.21 feet to a point;
5.  South 38˚34'08" West a distance of 54.12 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker";
6.  South 59˚22'51" West, a distance of 100.31 feet to a found 2" fence corner post at the southwest corner of said Texas Electric Service Company tract, same being the northwest corner of said Lot 3, Block 1, Trinity Bluff Addition, and being in the east line of a tract of land described as Tract 2 conveyed from E.W. Wisehart and wife, Mary Wisehart to Fort Worth Power & Light Company by deed of record in Volume 968, Page 571 of the Real Property Records of Tarrant County, Texas;

**THENCE:** South 30˚13'43" East, along the east line of said Fort Worth Power & Light tract and the west line of said Lot 3, Block 1, Trinity Bluff Addition a distance of 189.85 feet to a found 5/8" Iron Rod with cap stamped "Brooks Baker" at the south corner of Lot 3, Block 1, Trinity Bluff Addition, from which a found 5/8" Iron Rod with plastic cap stamped "Brooks Baker" bears North 09˚23'39" East a distance of 58.12 feet;

**THENCE:** South 24˚46'57" West, along the southeast line of the Fort Worth Power & Light Company tract and the northwest line of Lot 4R, Block 1, Trinity Bluff Addition, a subdivision of record in Cabinet B, Slide 3356 of the Plat Records of Tarrant County, Texas and Instrument of record in D207030226 of the Official Public Records of Tarrant County, Texas, a distance of 123.34 feet to a point;

**THENCE:** South 59˚39'58" West, along the south line of the Fort Worth Power & Light Company tract and the north lines of Lot 4R, Block 1, Trinity Bluff Addition, and Lot 1, Block 1, Trinity Bluff Addition, a subdivision of record in D205151202 of the Official Public Records of Tarrant County, Texas, and the north line of Lot 1, Block 1, Tarrant County College Downtown Campus Addition, a subdivision of record in Instrument No. D205132348, of the Official Public Records of Tarrant County, Texas, a distance of 299.38 feet to a point for the southwest corner of said Fort Worth Power & Light Company tract;

**THENCE:** North 30˚31'29" West, along the southwest line of the Fort Worth Power & Light Company tract, and the northeast line of a 0.23 acre tract of land described as Tract No. 2, conveyed to Tarrant County Water Control and Improvement District No. 1, by deed of record in Volume 2651, Page 225 of the Deed Records of Tarrant County, Texas, a distance of 341.72 feet to a point of curvature at the approximate center of Trinity River (Current) as located during October, 2015;

**THENCE:** along said curve to the left, with the approximate center of Trinity River (Current) as located during October, 2015, having a radius of 1415.71 feet, an arc length of 215.13 feet, a delta angle of 08˚42'23", and a chord which bears North 33˚12'07" East a distance of 214.92 feet to a point in the southwest line of a 0.675 acre tract of land conveyed to Tarrant Regional Water District by deed of record in Instrument No. D207319687 of the Official Property Records of Tarrant County, Texas;

**THENCE:** South 63˚59'31" East, along the southwest line of said 0.675 acre tract a distance of 174.13 feet to the southeast corner of the 0.675 acre tract;

**THENCE:** North 26˚00'29" East, along the southeast line of the 0.675 acre tract a distance of 85.00 feet to the northeast corner of the 0.675 acre tract;

**THENCE:** North 63˚59'31" West, along the northeast line of the 0.675 acre tract a distance of 172.47 feet to a point in the west line of said Tract 2, Fort Worth Power and Light Company as recorded in Volume 968, Page 571 of the Real Property Records of Tarrant County, Texas, same being at the approximate center of Trinity River (Current) as located during October, 2015,

**THENCE:** along said curve to the left, with the approximate center of Trinity River (Current) as located during October, 2015, having a radius of 1415.71 feet, an arc length of 92.65 feet, a delta angle of 03˚44'59", and a chord which bears North 23˚31'57" East a distance of 92.63 feet to a point;

*THENCE:* North 17˚10'53" East, continuing along the approximate center of Trinity River (Current) as located during October, 2015 a distance of 52.23 feet to a point;

*THENCE:* South 72˚49'07" East, a distance of 101.10 feet to a point at the lowest acceptable bank of the Trinity River (Current) as located during October, 2015;

*THENCE:* North 74˚59'01" East, along the north line of a Texas Electric Service Company tract same being the south line of Lot 37, Cummings Addition, a distance of 159.88 feet to the **POINT OF BEGINNING** of **TRACT II** containing 4.706 acres of land more or less.

All bearings, distances and coordinates are grid and refer to the Texas Coordinate System of NAD83/2011 (HPGN), Texas North Central Zone 4202.

This Field Notes Description constitutes a legal document, and, unless it appears in its entirety, in its original form does not constitute a legal document. It is strongly recommended, for the continuity of future surveys, that this document be incorporated in *all* future conveyances, *without any revisions or deletions*.

Surveyor has made no investigation or search for easements or other matters of record that a title report would not disclose and this survey does not represent warranty of title or a guarantee of ownership.

**EXHIBIT B**

**DE MINIMIS ASSET SALE PROCEDURES ORDER**



## EXHIBIT C

## SALE ORDER

