**Simon E. Fraser**
Direct Phone   302-295-2011
sfraser@cozen.com



September 28, 2016

The Honorable Christopher S. Sontchi
United States Bankruptcy Court for the District of Delaware
824 North King Street, 5th Floor
Wilmington, DE  19801

**Re:   Plan Reserve Proposal Submitted by Morgan Stanley Capital Group Inc. ("MS"), J. Aron & Company ("J. Aron"), and Titan Investment Holdings LP ("Titan," and together with J. Aron and MS, the "Intervenors")**

Dear Judge Sontchi:

On March 11, 2016, this Court issued an order and opinion dismissing an adversary proceeding (the "Adversary Proceeding") brought by the TCEH First Lien Notes Trustee (the "Notes Trustee") and holding that adequate protection payments and plan distributions are not collateral (or the proceeds of collateral) and are not subject to the TCEH First Lien Intercreditor Agreement ("ICA") waterfall.[1]  On March 24, 2016, the Notes Trustee filed a notice of appeal, which remains pending.[2]  We and the Notes Trustee ultimately reached an agreement (Adv. D.I. 123, Ex. A) (the "Stay Stipulation") permitting release of escrowed adequate protection payments to the Intervenors in exchange for our respective undertakings to return any distributed adequate protection holdbacks in the unlikely event that the Notes Trustee were to prevail on appeal.  The parties now face a similar dispute as to plan distributions.  Article III.B.29.d of the Plan, on which the Notes Trustee relies, was intended simply as a placeholder for the reserve to be negotiated by the parties based on the status of the Adversary Proceeding as of the TCEH Effective Date.[3]  It provides no guidance on how any reserve is to be calculated.

We offer a path forward which reflects the approach previously stipulated by the Notes Trustee to resolve holdbacks on adequate protection payments.[4]

- An undertaking to the Notes Trustee severally by the Intervenors (or their affiliates),[5] and any other TCEH First Lien Creditor (other than Holders of TCEH First Lien Notes) that elects to provide such undertaking, similar to the adequate protection undertaking previously

---

[1] The Court reached the same result in another TCEH first lien intercreditor dispute.  *Marathon Asset Mgmt. v. Wilmington Trust N.A.* (*In re Energy Future Holdings Corp.*), 548 B.R. 79, 89-90 (Bankr. D. Del. 2016).

[2] On June 1, 2016, the Notes Trustee filed a (pending) 60(b) motion seeking to partially vacate the Court's prior opinion and order because the operative plan at the time the Court ruled was later withdrawn.  Briefing is complete, and as the current Plan is identical in relevant respects to the prior plan, the 60(b) motion is meritless.

[3] In fact, the language pertaining to the reserve was originally incorporated into the Plan prior to the Court's dismissal of the adversary proceeding in favor of the Intervenors.

[4] A form of order memorializing our proposal is attached hereto as Exhibit 1 (the "Proposed Order").

[5] An affiliate of Titan, Longhorn Capital GS LP ("Longhorn"), owns a participation interest in 89.513% of J. Aron's swap claim.  Accordingly, Longhorn and J. Aron provided undertakings to the Notes Trustee for 89.513% and 10.487% respectively of the adequate protection payments released to J. Aron pursuant to the Stay Stipulation, and would provide the corresponding undertakings for plan distributions released to J. Aron pursuant to the Proposed Order.

The Honorable Christopher S. Sontchi
September 28, 2016
Page 2

agreed to pursuant to the Stay Stipulation.[6]

- A holdback on Reorganized TCEH Common Stock distributions to other TCEH First Lien Creditors (other than Holders of TCEH First Lien Notes) in an amount to be determined by the Court based on the presentations in the respective letter briefs of the other parties.

- A Pro Rata allocation of all other Plan Distributions to the TCEH First Lien Creditors.

This proposal avoids the need for a bond from the Notes Trustee or for the resolution of an unripe and currently non-judiciable dispute concerning the appropriate interest rates of each TCEH First Lien Creditor. Any holdback proposal would need to recognize that the Intervenors are the prevailing party in the litigation, and accommodate the requirements of the Bankruptcy Code and the limited record before the Court on this issue, specifically:

- Any holdback of distributions would have to be applied Pro Rata to all TCEH First Lien Creditors, as required by Section 1123(a)(4) of the Bankruptcy Code prohibiting disparate plan treatment for creditors within a single class without any such creditor's individual consent to any worse treatment. *See, e.g., In re Combustion Eng'g*, *Inc.,* 391 F.3d 190, 239 (3d Cir. 2004).

- Estimation of the aggregate reserve required for the Notes Trustee would have to be based solely on judicial notice of the parties' respective interest rates set forth in the relevant proofs of claim for the swaps and the company's SEC filings with respect to the TCEH Credit Agreement Claims.[7] There is no pleading in the Adversary Proceeding challenging or seeking any determination of any party's interest rate contrary to these rates, and we dispute any entitlement claimed on any different interest rates.

- The Notes Trustee should be required to have "skin in the game" instead of a free option to pursue lengthy appeals at the prevailing parties' expense, and therefore should have to post a significant bond, representing at minimum 50% of the aggregate Reorganized TCEH Common Stock posted collectively by the other TCEH First Lien Creditors, in favor of the prevailing Intervenors and the other prevailing parties to provide protection on the Reorganized TCEH Common Stock that would be held up and unavailable for trading during what may be several years of appellate litigation by the Notes Trustee.[8]

For the foregoing reasons, the Court should enter the Proposed Order attached as Exhibit 1 hereto.

---

[6] The undertakings shall provide that any amounts subsequently required to be returned to the Notes Trustee shall be (as elected in the undertaking filed with the Court) in the form of either (a) the amount of Reorganized TCEH Common Stock that would have been transferred to the Noteholders at the TCEH Effective Date or (b) a cash amount based on the volume weighted average trading price of the Reorganized TCEH Common Stock during the first 5 business days after the TCEH Effective Date.

[7] J. Aron's interest rate, which would be much higher based on its cost of funds, is contractually capped at Prime + 2%, which was estimated to be 5.5% in the calculation set forth in the J. Aron proof of claim filed October 27, 2014 (TCEH Claim No. 9555). Morgan Stanley's interest rate was estimated to be 3.24% in the calculation set forth in the Morgan Stanley proof of claim filed October 15, 2014 (TCEH Claim No. 5304). Morgan Stanley's interest rate based on its actual cost of funds could be higher. The Debtors have consistently stated that the various tranches of the TCEH Credit Agreement debt bear interest at L+350 and L+450 respectively. (EFH 10-K filed Feb. 29, 2016, p. 101).

[8] A chart showing a hypothetical holdback reserve based on these assumptions is attached as Schedule A hereto.

Sincerely,

COZEN O'CONNOR

*/s/ Simon E. Fraser*
Simon E. Fraser (No. 5335)
Mark E. Felger (No. 3919)
1201 North Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2011
Facsimile: (215) 701-2260
sfraser@cozen.com
mfelger@cozen.com

-AND-

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Thomas J. Moloney (admitted *pro hac vice*)
Sean A. O'Neal (admitted *pro hac vice*)
Humayun Khalid (admitted *pro hac vice*)
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
tmoloney@cgsh.com
soneal@cgsh.com
hkhalid@cgsh.com

*Counsel for J. Aron & Company*

The Honorable Christopher S. Sontchi
September 28, 2016
Page 4

                DLA PIPER LLP (US)

                */s/ Ashley R. Altschuler*
                Ashley R. Altschuler (No. 3803)
                R. Craig Martin (No. 5032)
                1201 North Market Street, Suite 2100
                Wilmington, DE 19801
                Telephone: (302) 468-5700
                Facsimile: (302) 394-2341
                ashley.altschuler@dlapiper.com
                craig.martin@dlapiper.com

                -AND-

                CADWALADER, WICKERSHAM & TAFT LLP
                Howard R. Hawkins, Jr. (admitted *pro hac vice*)
                Ellen M. Halstead (admitted *pro hac vice*)
                Michele Maman (admitted *pro hac vice*)
                Thomas J. Curtin (admitted *pro hac vice*)
                One World Financial Center
                New York, New York 10281
                Telephone: (212) 504-6000
                Facsimile: (212) 504-6666
                howard.hawkins@cwt.com
                ellen.halstead@cwt.com
                michele.maman@cwt.com
                thomas.curtin@cwt.com

                Mark C. Ellenberg (admitted *pro hac vice*)
                700 Sixth Street, NW
                Washington, DC 20001
                Telephone: (202) 862-2200
                Facsimile: (202) 862-2400
                mark.ellenberg@cwt.com

                *Counsel for Morgan Stanley Capital Group Inc.*

ROSS ARONSTAM & MORITZ LLP

*/s/ Bradley R. Aronstam*
Bradley R. Aronstam (No. 5129)
Benjamin J. Schladweller (No. 4601)
100 S. West Street
Suite 400
Wilmington, DE 19801
Telephone: (302) 576-1600
baronstam@ramllp.com
bschladweiler@ramllp.com

-AND-

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich
Salvatore Romanello
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
ronit.berkovich@weil.com
salvatore.romanello@weil.com

*Attorneys for Titan Investment Holdings LP*

Attachment

cc: All Counsel of Record via CM/ECF

## Schedule A

## Illustrative Calculation of Hypothetical Holdback Reserve

| | Assumed Postpet. Int. Rate | Base Case Petition Date Claims | | Redistribution Case Postpetition Accrued Claims | | Variance | Redistribution Amount | | Total Value Distributed | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | In $ | % of Total | In $ | % of Total | % of Total | In $ | In Shares | In $ | In Shares |
| 11.50% TCEH 1L Notes due 2020 | 11.50% | $1,816 | 7.0% | $2,312 | 7.9% | 0.9% | $82 | 3,934,402 | $708 | 33,904,939 |
| TCEH 1L Deposit LC & TL due 2014 | L+350 | 3,883 | 15.0% | 4,245 | 14.6% | (0.4%) | (38) | (1,814,341) | 1,292 | 62,262,527 |
| TCEH 1L Deposit LC & TL due 2017 | L+450 | 16,884 | 65.2% | 18,877 | 64.8% | (0.4%) | (37) | (1,807,386) | 5,743 | 276,849,562 |
| TCEH 1L Revolver due 2016 | L+450 | 2,077 | 8.0% | 2,322 | 8.0% | (0.1%) | (5) | (224,488) | 706 | 34,056,144 |
| 1L Credit Facilities | | $22,844 | 88.2% | $25,445 | 87.3% | (0.9%) | ($80) | (3,846,216) | $7,741 | 373,168,233 |
| Morgan Stanley | 3.24% | 226 | 0.9% | 244 | 0.8% | (0.0%) | (3) | (154,507) | 74 | 3,577,425 |
| J. Aron | 5.50% | 945 | 3.6% | 1,071 | 3.7% | 0.0% | 2 | 115,461 | 326 | 15,711,660 |
| Credit Suisse | 3.24% | 12 | 0.0% | 13 | 0.0% | (0.0%) | (0) | (8,029) | 4 | 185,892 |
| Deutsche Bank | 3.24% | 60 | 0.2% | 65 | 0.2% | (0.0%) | (1) | (41,110) | 20 | 951,851 |
| Swap Claims | | $1,243 | 4.5% | $1,393 | 4.8% | (0.0%) | ($2) | (88,186) | $424 | 20,426,829 |
| Total | | $25,903 | 100.0% | $29,149 | 100.0% | - | - | - | $8,868 | 427,500,000 |

The calculation shows that non-note first lien creditors would fund a reserve with 3.934 million shares of Reorganized TCEH Common Stock (representing an aggregate plan value of $82 M). First lien notes would post a reserve of 1.967 million shares (plan value of $41 M) in the aggregate, representing 50% of the stock posted by the non-note first lien creditors.

The analysis uses an assumed emergence date of October 15, 2016, and a plan TEV of $11.6 billion, reflecting the midpoint valuation of the Debtors' Disclosure Statement.

- ∎ Implies total equity value available for distribution of approximately $8.9 billion after taking into account the 5% holdback in shares distribution related to Management's Incentive Plan (MIP)

Interest rates for Credit Suisse and Deutsche Bank swaps could be higher based on their actual cost of funding. For simplicity, in the above calculation they are assumed to be the same as the rate under Morgan Stanley's proof of claim.