

| | | |
|---|---|---|
| BRUSSELS | Times Square Tower | SAN FRANCISCO |
| CENTURY CITY | 7 Times Square | SEOUL |
| HONG KONG | New York, New York 10036-6524 | SHANGHAI |
| LONDON | TELEPHONE (212) 326-2000 | SILICON VALLEY |
| LOS ANGELES | FACSIMILE (212) 326-2061 | SINGAPORE |
| NEWPORT BEACH | www.omm.com | TOKYO |
| | | WASHINGTON, D.C. |

September 28, 2016

WRITER'S DIRECT DIAL
(202) 383-5302

**VIA ECF AND EMAIL**

WRITER'S E-MAIL ADDRESS
pfriedman@omm.com

The Honorable Christopher S. Sontchi, United States Bankruptcy Judge
United States Bankruptcy Court for the District of Delaware
824 Market Street, 5th Floor
Wilmington, Delaware 19801

      Re:    *In re Energy Future Holdings Corp., et al.*, Case No. 14-10979 (Allocation Reserve Dispute)

Dear Judge Sontchi:

    We write on behalf of funds affiliated with Angelo Gordon & Co. L.P., Apollo Management Holdings L.P., and Oaktree Capital Management, L.P. (collectively, the "**TCEH Credit Agreement Lenders**"),[1] each of which is a lender under the TCEH Credit Agreement, concerning the reserve contemplated by Article III.B.29(d) of the Plan.

    The Court should approve a reserve that reasonably reflects the TCEH First Lien Creditors' actual exposure to liability should the TCEH First Lien Notes Trustee prevail in the allocation dispute, which requires taking into account the interest rate at which each TCEH First Lien Creditors' claim accrues. By providing for a reserve "*solely* with respect to any TCEH First Lien Creditor Distributions *that remain subject to the . . . Allocation Dispute*," the Plan expressly requires such an approach. *See* Plan, Art. III.B.29(d). Any reserve proposal that forces creditors not facing liability to reserve distributions, or to reserve more from their distributions than they could owe in the allocation dispute, would violate the Plan and should be rejected. Similarly, the Court should reject any reserve proposal requiring the TCEH Credit Agreement Lenders to fund a reserve on a *pro rata* basis according to the size of their claims. Such an indiscriminate approach ignores applicable interest rates and would result in the TCEH Credit Agreement Lenders overfunding a reserve and subsidizing other stakeholders who would fund far less into the reserve than they might otherwise ultimately be liable for. This approach makes no rational sense and would violate the Plan's plain terms.

    The Plan's reserve requirement can be satisfied if the parties who face liability if the TCEH First Lien Notes Trustee wins sign an undertaking (the "**Undertaking**") in exchange for receiving full Plan Distributions on the TCEH Effective Date. An Undertaking is appropriate because it permits TCEH to expeditiously emerge from bankruptcy, which should be the highest priority of all TCEH creditors. It also fully protects the TCEH First Lien Notes Trustee's ability to enforce any judgment in the allocation dispute by requiring the signing party to certify to its credit-worthiness in exchange for receiving a full distribution. The TCEH First Lien Notes Trustee previously agreed to an Undertaking in connection with the release of escrowed adequate protection payments [Adv. D.I. 132[2]], and what worked then should work now. Given the urgency of the upcoming TCEH Effective Date and the simplicity of implementing the Undertaking, the Court can minimize this reserve dispute by authorizing the parties who face exposure (identified below) to enter into an identical

---

[1]     Capitalized terms used but not defined in this letter have the meanings assigned in the *Third Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9421-1] (the "**Plan**").

[2]     References to "Adv. D.I." are to the docket in the TCEH First Lien Note Intercreditor Action.

Undertaking in exchange for full Plan Distributions on the TCEH Effective Date.

If, however, a party is unwilling or unable to sign an Undertaking, that party's reserve obligations should reflect the liability that party faces in the underlying lawsuit (which is a function of the different interest rates various debt instruments bear). The TCEH First Lien Notes have a stated coupon of 11.50% with no default rate, and face no potential exposure. The accrual rates on the claims under the TCEH Credit Agreement must be calculated assuming that (a) the ABR (alternative base rate) applies during the postpetition period and (b) Default Interest is accruing on the TCEH Credit Agreement loans. The filing of the TCEH Debtors' bankruptcy cases constituted an Event of Default under the TCEH Credit Agreement. *See* TCEH Credit Agreement, § 11.5.[3] As a result, any LIBOR Loans were automatically converted into ABR Loans (each as defined in the TCEH Credit Agreement). *See* TCEH Credit Agreement, § 2.6(b). In addition, all loans outstanding under the TCEH Credit Agreement were automatically accelerated as a result of the Event of Default, and began to accrue an additional 2% Default Interest from and after the date of acceleration (the Petition Date). *See* TCEH Credit Agreement, §§ 2.8(d), 11.13. In total, the loans under the TCEH Credit Agreement that were subject to certain amend and extend transactions bear interest at 8.75% while those that were not extended bear interest at 7.75%. If interest accrues post-petition, that is the rate at which it accrues under the plain terms of the TCEH Credit Agreement.

Using these rates for TCEH Credit Agreement debt is also consistent with the premise of the TCEH First Lien Notes Trustee's lawsuit and the statements of the claimants involved in that dispute. The complaint alleges that the underlying credit documents were specifically designed "to ensure that the bargained-for rights of each group of First Lien Creditors continue to be protected and preserved relative to one another regardless of any insolvency or liquidation proceedings." *See* Amended Complaint, ¶ 24 [Adv. D.I. 30]. In fact, certain TCEH First Lien Noteholders admitted that the TCEH Credit Agreement claims accrue interest at the ABR plus Default Interest rate.[4] Therefore, if interest accrues, the TCEH Credit Agreement Lenders' claims should accrue using the contractually-agreed Default Interest rate.

The TCEH Credit Agreement Lenders understand there is a dispute regarding the appropriate accrual rate for the TCEH First Lien Interest Rate Swap Claims. But that dispute has minimal impact on the TCEH Credit Agreement Claims, who have not actively participated in the litigation for that exact reason.[5] Applying the TCEH Credit Agreement Default Interest rate and assuming the TCEH First Lien Interest Rate Swap Claims accrue interest at the rates asserted in their filed proofs of claim, as set forth below, the maximum number of shares of Reorganized TCEH common stock that holders of TCEH First Lien Credit Agreement Claims should reserve (subject to any creditor's ability and willingness to receive distributions by signing an Undertaking) is 1,123,829 shares (out of 427.5 million to be issued on the TCEH Effective Date), to be withheld exclusively from holders of loans under the TCEH Credit Agreement that were not extended pursuant to certain prepetition transactions:[6]

| Tranche | Interest Rate | Allocable Shares (No Postpetition Interest) | Allocable Shares (With Postpetition Interest) | Reserve |
|---|---|---|---|---|
| **2014 Credit Agreement Loans** | ABR + 450 (7.75%) (Non-extended loan) | 64,076,868 | 62,953,039 | (1,123,829) |
| **2017 Credit Agreement Loans** | ABR + 550 (8.75%) (Extended loan) | 278,656,948 | 279,941,237 | NA |
| **2016 Credit Agreement Revolver** | ABR + 550 (8.75%) (Extended loan) | 34,280,633 | 34,433,642 | NA |
| **J. Aron Swap** | 5.50% | 15,596,200 | 14,400,570 | (1,195,630) |
| **Other Swaps** | 3.24% | 4,918,815 | 4,295,837 | (622,978) |

For all of these reasons, we respectfully request that the Court enter an order substantially in the form attached hereto.

---

[3] A copy of the TCEH Credit Agreement is attached as Exhibit E to the Amended Complaint in the TCEH First Lien Note Intercreditor Action [Adv. D.I. 30]. The relevant excerpts are attached to this letter as Exhibit 1.

[4] *See* Aurelius Capital Management LP's Limited Objection to the TCEH Debtors' Motion to Use Cash Collateral [D.I. 632], at ¶ 3 n.5 ("Post-bankruptcy, the debt held by the First Lien Lenders would bear interest at Prime Rate + 250 basis points or Prime Rate + 350 basis points depending on the tranche, plus 2.00% of default interest" [i.e., ABR + 450 or ABR + 550].).

[5] In contrast, recognizing that they face the most exposure, holders of the TCEH First Lien Interest Rate Swap Claims successfully intervened in the underlying lawsuit and prevailed on motions to dismiss the amended complaint.

[6] Depending on the assumptions made regarding compounding and interest on interest, final reserve amounts may be subject to adjustment. The TCEH Credit Agreement Lenders believe any such adjustments would likely be immaterial.

Respectfully submitted,

*Peter Friedman*

cc (via e-mail):

George A. Davis, O'Melveny & Myers LLP
Chad J. Husnick, Kirkland & Ellis LLP
Thomas J. Moloney, Cleary Gottlieb Steen & Hamilton LLP
Ronit Berkovich, Weil, Gotshal & Manges LLP
Jeremy C. Hollembeak, Kobre & Kim LLP
Mark C. Ellenberg, Cadwalader, Wickersham & Taft LLP
Mark D. Kotwick, Seward & Kissel LLP
Allen W. Kornberg, Paul, Weiss, Rifkind, Wharton & Garrison LLP