## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: D.I. 9287** |

## DEBTORS' OMNIBUS REPLY IN SUPPORT OF
## OBJECTIONS TO CONTESTED PRO SE CLAIMS

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] file

this reply (this "Reply") in support of the Debtors' Objections to Contested Pro Se Claims and to

the Formal Responses filed by Pro Se Claimants.[3]   In support of this Reply and the relief

requested in the Objections, the Debtors submit the *Declaration of Daniel McKillop, Senior*

*Manager, Contact Center Operations, in Support of the Debtors' Omnibus Reply in Support of*

*Objections to Contested Pro Se Claims* (the "McKillop Declaration") and the *Declaration of*

*Sinead Soesbe, Senior Counsel, in Support of the Debtors' Omnibus Reply in Support of*

*Objections to Contested Pro Se Claims* (the "Soesbe Declaration"), both filed

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the *Motion of Energy Future Holdings Corp., et al., for Entry of an Order (I) Scheduling Hearing Dates and Certain Deadlines and Establishing Certain Procedures in Connection with Adjudicating Contested Objections to Pro Se Claims and (II) Approving Notice Thereof* [D.I. 9011] (the "Pro Se Claims Protocol Motion").

[3] None of the Contested Pro Se Claims to be addressed at the Pro Se Claims Hearings are Asbestos Proofs of Claim.

contemporaneously herewith.  In further support of the Objections, the Debtors respectfully state as follows.

## **Preliminary Statement**

1.      Over the course of these chapter 11 cases, the Debtors have engaged in an extensive and rigorous review of the approximately 10,000 non-Asbestos Proofs of Claim filed on the Claims Register, resulting (to date) in forty-three Objections to nearly 5,500 claims. Despite this volume, Objections to only a few dozen claims remain unresolved—the vast majority of which are the Contested Pro Se Claims.

2.      None of the Contested Pro Se Claims evidence valid liabilities against the Debtors.  These claims were overwhelmingly filed by current or former customers and fall into four general categories:  (a) unsubstantiated claims concerning issues with a customer account and for which there is no supporting evidence in the Debtors' books and records, (b) submissions that are blank or that do not articulate a discernible claim, (c) claims against entities that are not Debtors, or (d) miscellaneous claims that have no basis in fact or law.  The Debtors expended considerable effort to reach out to Pro Se Claimants to explain the claims administration process, discuss their Proofs of Claim, elicit further information and documentation, review their customer accounts over the telephone (if applicable), and to reconcile their assertions with the Debtors' records.  Notwithstanding these efforts, the Debtors have been unable to come to a consensual resolution regarding the Contested Pro Se Claims—either because the Debtors and the Pro Se Claimant are at an impasse in their discussions or because the Debtors have been unsuccessful in their attempts to reach the Pro Se Claimant.

3.      The Debtors have afforded the Pro Se Claimants more than ample time to digest the Debtors' position regarding the deficiencies of their Proofs of Claim, to unearth any facts or documentation that could support or help articulate their claims, to engage counsel if they so

2

desired, and to reach out to the Debtors with additional information.  However, each of the

Pro Se Claimants has failed to offer any support or argument that suggests they hold a valid

claim against the Debtors.  Therefore, the Debtors respectfully request that the Court enter an

order disallowing and expunging from the Claims Register the Contested Pro Se Claims.

## The Debtors' Claims Reconciliation Efforts

4.      The Debtors conducted an intensive process to review and reconcile the Proofs of

Claim filed in these chapter 11 cases.  The Debtors, together with their advisors, Alvarez &

Marsal North America, LLC ("A&M"), reviewed each Proof of Claim and the supporting

documentation attached thereto, if any.  The Debtors compared any allegations made therein to

the Debtors' books and records and schedules of liabilities to determine the validity of the claims

asserted.  Where a Proof of Claim was filed by a current or former customer of TXU Energy

Retail Company LLC ("TXU Energy") and described a specific basis for the claim related to a

customer account, a TXU Energy customer service representative tried to reach the claimant to

discuss and attempt to resolve their complaint prior to the Debtors filing an Objection to the

Proof of Claim.[4]

5.      The Debtors objected to Proofs of Claims they determined to be invalid or for

which there was insufficient information to identify or verify the claim being asserted.  Upon

receiving a response (formal or informal)[5] to an Objection, the Debtors directed their counsel to

---

[4] McKillop Declaration ¶ 4.  On May 2, 2014, the Court granted the Debtors the authority to resolve customer complaints in the ordinary course of business.  *See Interim Order Authorizing the Debtors to (A) Maintain and Administer Customer Programs and Customer Agreements, (B) Honor Prepetition Obligations Related Thereto, (C) Pay Certain Expenses on Behalf of Certain Organizations, (D) Fix the Deadline to File Proofs of Claim for Certain Customer Claims, and (E) Establish Procedures for Notifying Customers of Commencement of the Debtors' Chapter 11 Cases, Assumption of the Customer Agreements, and the Bar Date for Customer Claims* [D.I. 307].

[5] By "formal" response, the Debtors refer to writings filed on the Court's docket in the chapter 11 cases.  By "informal" response, the Debtors refer to messages left on the Debtors' telephone hotline, e-

3

reach out to the applicable claimant to discuss their Proof of Claim and, where appropriate, the Debtors reviewed and investigated any new information provided by the claimant.

6.    **Customer Claims (Account Complaints).**    Where it was apparent that the claimant believed there was an issue with their customer account at TXU Energy, the claimant's information was provided to representatives from TXU Energy's customer service team (the "TXU Team"), led by Senior Manager in Contact Center Operations, Daniel McKillop.[6] According to a protocol developed by Mr. McKillop, in-house counsel, and the Debtors' bankruptcy counsel, the TXU Team reviewed each claimant's assertions and customer account and called each claimant to discuss the results of their review.[7]

7.    Where the TXU Team identified a problem with an account, they resolved the issue as they would in the ordinary course of business.[8]  Where the results of the TXU Team's review contradicted the claimant's assertions and indicated that no problem with the account existed, the TXU Team reached out to discuss TXU Energy's position with the claimant and ask whether the explanation resolved the claimant's concerns.[9]  In many cases, these conversations did resolve the claimant's complaint and the Objection.[10]  However, in several instances, after listening to the TXU Team's review of their account, the claimant still believed they held a claim against the Debtors.[11]  In other instances, the TXU Team was unable to reach the claimant (the TXU Team made at least three attempts, on separate days, to call each claimant, leaving a

---

mails sent to the Debtors' counsel or general case address, and letters mailed to the Debtors' counsel that were not filed on the Court's docket in the chapter 11 cases.

[6] McKillop Declaration ¶ 5.

[7] *Id.*

[8] *Id.* ¶ 6.

[9] *Id.*

[10] *Id.* ¶ 7.

[11] *Id.*

4

voicemail message where possible).[12]  The TXU Team then reported the results of their outreach to the Debtors' in-house counsel,[13] who would then either contact the claimant to confirm that no resolution was reached or direct the Debtors' advisors to effectuate the agreed resolution of the Objection.

8.      **Customer Claims (Unknown).**  Many Proofs of Claim were filed using the customized form sent to current and former TXU Energy customers, but failed to articulate a claim against the Debtors.  Where a claimant's response to the Objection provided insufficient information—and in many cases, no information—to enable the Debtors to evaluate the Proof of Claim, the Debtors directed their advisors to contact the claimant to request information and documentation about the claim the claimant was seeking to assert.  In several instances, the Debtors were unable to obtain sufficient information to evaluate or investigate whether a valid claim exists, either because the claimant did not respond to the Debtors' efforts to contact them or the claimant was unable to provide such documentation (or, in some cases, even articulate the claim they intended to assert).  In connection with preparing this Reply and for the Pro Se Claims Hearings, the TXU Team reviewed the customer accounts belonging to the remaining Pro Se Claimants in this category—specifically, the TXU Team looked at deposit, billing, and account service information.[14]  The TXU Team did not find any issues with these claimants' customer accounts.[15]

9.      **Claims Against Non-Debtor Third-Parties.**  Where the documentation appended to a Proof of Claim, or additional information supplied by a claimant during

---

[12] *Id.*

[13] *Id.*

[14] *Id.* ¶ 8.  The TXU Team also performed this review for two Pro Se Claimants who asserted claims on account of unknown class action suits related to rates. *Id.*

[15] *Id.*

RLF1 15500905v.1

subsequent discussions with the Debtors or their advisors, indicated that the asserted claim was against or involved a non-Debtor entity, the Debtors reviewed their books and records to determine whether and how the named entity was related to the Debtors, including by researching whether the entity is a predecessor or affiliate of a Debtor.[16] Certain of the Proofs of Claim referenced Oncor Electric Delivery Company LLC ("Oncor"). While Debtor EFIH indirectly owns approximately 80% of Oncor, Oncor is not a Debtor in these chapter 11 cases and, importantly, is "ring-fenced" from the Debtors.[17] Therefore, claims against Oncor are not claims against the Debtors' estates. Upon confirming that the entity implicated by the claimant's information was not a Debtor, the Debtors reached out to the claimant to communicate their position that the claim, even if valid, would not be a liability against the Debtors' estates.

10.    **Other Claims.** Where a claimant made a specific assertion that did not appear to be related to a TXU Energy customer account or a non-Debtor, the Debtors reviewed their books and records to determine whether the assertion had any merit.[18] Where new information provided by the claimant in their response to an Objection or in discussions with the Debtors did not change the Debtors' view that the claim was invalid, or where the claimant's response did not provide new information, the Debtors directed their advisors to inform the claimant that the disagreement persisted and to explain the Debtors' position concerning their claim.

11.    Most often, the Debtors were able to consensually resolve responses to the Objections. Of the approximately 190 responses from individuals, the Debtors consensually resolved approximately 135—just over 70 percent. Where the Debtors' discussions with the

---

[16] Soesbe Declaration ¶ 3.

[17] *See Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., et al., in Support of First Day Motions,* ¶¶ 6, 9 [D.I. 98].

[18] Soesbe Declaration ¶ 4.

6

claimant did not lead to a resolution, or where the Debtors were unable to engage with the claimant at all, the Debtors informed the claimant that the Objection to their claim would be scheduled for a hearing at a date to be determined.

12.    The majority of these adjourned claims were filed by Pro Se Claimants. Given the number and nature of the Contested Pro Se Claims, the Debtors filed the Pro Se Claims Protocol Motion on July 26, 2016, requesting that the Court approve a schedule and procedures to govern the resolution of the Contested Pro Se Claims.

13.    On August 15, 2016, the Court entered an order granting the Pro Se Claims Protocol Motion [D.I. 9287] (the "Pro Se Claims Protocol Order"), which provided, among other things, that (a) a Contested Pro Se Claim would be disallowed and expunged if no Formal Response to the Objection to such claim was filed with the Court by September 19, 2016, and (b) a Pro Se Claimant will not be allowed to participate in the Pro Se Claims Hearings unless they returned the Questionnaire to the Debtors by September 19, 2016. Twelve Pro Se Claimants did not timely file a Formal Response or return a Questionnaire and, on September 26, 2016, the Court entered orders disallowing or modifying, as applicable, the relevant Contested Pro Se Claims.[19]

---

[19] *See Order (Third) Sustaining Debtors Twelfth Omnibus (Non-Substantive) Objection To (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 9658]; Order (Fourth) Sustaining Debtors Thirteenth Omnibus (Non-Substantive) Objection To (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 9659]; Order (Third) Sustaining Debtors Eighteenth Omnibus (Substantive) Objection To (Certain Improperly Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 9660]; Order (Third) Sustaining Debtors Sixth Omnibus (Non-Substantive) Objection To (Insufficient Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 9661]; Order (Fourth) Sustaining Debtors Third Omnibus (Non-Substantive) Objection to (No Supporting Documentation) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1 [D.I. 9662].* The Debtors received Questionnaires, but no Formal Responses, from two Pro Se Claimants after the Court entered the orders sustaining the Objections to their claims.

14.     Thirteen Pro Se Claimants failed to timely file a Formal Response, but did timely return a Questionnaire.   While the associated Contested Pro Se Claims can be disallowed pursuant to the Pro Se Claims Protocol Order, the Debtors have determined to permit these Pro Se Claimants to prosecute their claims at the Pro Se Claims Hearings to the extent that such Pro Se Claimants appear at the Pro Se Claims Hearings.   The Debtors address these, and the other thirty-one remaining Contested Pro Se Claims in this Reply.

## Argument

15.     A chapter 11 debtor "has the duty to object to the allowance of any claim that is improper." *Int'l Yacht & Tennis, Inc. v. Wasserman Tennis, Inc. (In re Int'l Yacht & Tennis, Inc.),* 922 F.2d 659, 661-62 (11th Cir. 1991); *see also* 11 U.S.C. §§ 704(a)(5), 1106(a)(1), and 1107(a).   While the burden of proof for determining the validity of claims rests on different parties at different stages of the objection process, ultimately, "it is for the claimant to prove his claim, not for the objector to disprove it." *In re Kahn,* 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) (citations omitted).   As explained by the United States Court of Appeals for the Third Circuit:

> The burden of proof for claims brought in the bankruptcy court under 11 U.S.C.A. § 502(a) rests on different parties at different times.   Initially, the claimant must allege facts sufficient to support the claim.   If the averments in his filed claim meet this standard of sufficiency, it is '*prima facie*' valid [citations omitted].   In other words, a claim that alleges facts sufficient to support legal liability to the claimant satisfies the claimants' initial obligation to go forward.   The burden of going forward then shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim. . . .   In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.   If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.

*In re Allegheny Int'l Inc.,* 954 F.2d 167, 173-74 (3d. Cir. 1992) (citation omitted).

16.    None of the Pro Se Claimants have proven their claims are valid.  Indeed, most fail to articulate a claim at all or to provide any documentation or information that supports the claim being asserted.  By contrast, the Debtors undertook a painstaking process to understand and diligence each Contested Pro Se Claim.  In every case, the Debtors were unable to find any support for liability to the Pro Se Claimant in their records or, if applicable, in the law.

17.    The following chart contains summaries of the Contested Pro Se Claims, setting forth:  (a) the liability and facts alleged by each Pro Se Claimant in their Proof of Claim, Formal Response(s), and any discussions with the Debtors or their advisors;  (b) the results of the Debtors' post-Objection filing diligence efforts;  and (c) the Debtors' arguments against the claim.  These summaries are reproduced in a chart, attached hereto as **Exhibit A**, that sets forth additional information, including Proof of Claim numbers, the amount and priority asserted, docket numbers for Formal Responses, information about the applicable Objection, whether the Pro Se Claimant returned a Questionnaire, and at which Pro Se Claims Hearing the claim is scheduled to be heard.

| Claimant | Description and Response |
|---|---|
| | *Customer Claims (Account Complaints)* |
| **Barbara Betts**<br><br>Undetermined Amount | • Description of Claim:  The Proof of Claim does not include a description of the claim being asserted or any supporting documentation.  During a conversation with Debtors' counsel on January 5, 2015, the claimant was unable to articulate a basis for the asserted claim, but mentioned an account with TXU Energy.<br><br>• Diligence Efforts:[20]  The TXU Team spoke with the claimant's husband on February 5, 2015, during which conversation the claimant's husband stated that the claim is related to a report of an unpaid balance on his credit report and that the balance was incurred by his daughter initiating service under his name without authorization.  The TXU Team sent a request to the consumer reporting agencies to delete the report and credited the claimant's account for the amount of the charges.  Despite agreeing that the issue was resolved by those actions, the claimant declined to resolve the Objection.<br><br>• Debtors' Response:  The credit reporting issue described by the claimant does not give rise to a claim against the Debtors (and claimant points to no authority in support of such theory for recovery).  The claimant has acknowledged that the issue has already been resolved.  Therefore, the claimant has not articulated any existing |

---

[20] McKillop Declaration at 3.

| Claimant | Description and Response |
|---|---|

liability against the Debtors.

**Christina Matheu**

Undetermined Amount

- Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. During a conversation with Debtors' counsel on March 20, 2015, the claimant asserted that TXU Energy overcharged her.

- Diligence Efforts:[21]  The TXU Team reviewed the claimant's account and determined that there was no indication the claimant was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU team spoke with the claimant on April 8, 2015, during which conversation the claimant indicated to the TXU Team that she was certain she was being charged more than what other service providers were charging.

- Debtors' Response: The claimant has not provided any evidence of overcharges and a review of the customer account shows no indication that an incorrect rate or other improper charge was applied.  Even if another service provider would have charged the claimant a lower rate, such occurrence would not give rise to a right to payment or other entitlement that constitutes a claim under section 502 of the Bankruptcy Code (and claimant points to no authority in support of such theory for recovery).

**Cynthia Smith**

Undetermined Amount

- Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. During a conversation with Debtors' counsel on December 23, 2014, the claimant asserted that she was charged for gas when no appliance in her apartment was connected to a gas line.

- Diligence Efforts:[22]  The TXU Team reviewed the claimant's account and determined that the claimant had enrolled in the "TXU Energy MarketEdgeSM" pricing plan, which has a pricing component that is based on the current month's price of natural gas pursuant to NYMEX. The method for calculating the price for electric service was clearly included in materials provided to the customer. At no point was the claimant billed for gas, which is a service that is not provided by the Debtors. The TXU Team was unable to reach the claimant to discuss.

- Debtors' Response: The claimant has not provided any evidence that she was charged for gas.  The Debtors' records indicate that the claimant was correctly billed according to their selected pricing plan and, therefore, no liability is owed to the claimant.

**Deborah Moore**

$12,780.00

- Description of Claim: The claimant asserts that she was overcharged for services over a period of ten years while deployed overseas (from 2004 to 2011).  The claimant appended certain payment receipts and bills from 2007, 2008, and 2010 to the Proof of Claim.

- Diligence Efforts:[23] The TXU Team spoke with the claimant on January 27, 2015, during which conversation the claimant asserted that the premises connected to the account were vacant during her deployment.  The TXU Team reviewed the claimant's account and determined that the claimant first enrolled in electric service from TXU Energy on February 2, 2006, that on March 24, 2006, the claimant

---

[21] *Id.* at 4.

[22] *Id.*

[23] *Id.*

| Claimant | Description and Response |
|---|---|

added her sister, Terri Moore, to the account, and that both the claimant and her sister called TXU Energy throughout the time in question, usually to make a payment, balance inquiry, or payment arrangement—during none of these calls did the claimant or her sister indicate they believed they were being over- or improperly charged. The account was briefly enrolled in automatic payment, but removed for failed payment attempts. The TXU Team further determined that the account was accurately billed for electricity used according to a meter. The TXU Team spoke with the claimant on January 27, 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.

- Debtors' Response: The Debtors' records indicate that the claimant was correctly billed for electricity usage. Had the Debtors been charging the claimant for services that the claimant believed were not being used due to a vacant home, the claimant had ample opportunity to raise the issue and to decline to pay or to suspend service during the numerous calls the claimant made to TXU Energy during the period in question. Furthermore, there is no support for the amount the claimant asserts was improperly charged—several of the receipts attached to the Proof of Claim appear to be duplicative and the total amount reflected is substantially less than the amount claimed.

**Jack Rogers Beard Jr.**

$2,000 plus undetermined amounts

- Description of Claim: The Proof of Claim states only that the claimant was "over billed;" no documentation or further information was provided in the claimant's Formal Response. The Debtors' counsel was unable to reach the claimant to request additional information.
- Diligence Efforts:[24]    The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which he was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing (other than an issue in 2009 where invoices were inadvertently not sent to the customer for a period of time and which issue was promptly resolved by delivering a cumulative invoice that was subsequently paid by the claimant). The TXU Team was unable to reach the claimant to discuss.
- Debtors' Response: The claimant has not provided any evidence of overcharges. On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount.

**Jackie McClain**

$2,000.00

- Description of Claim: The Proof of Claim states only that the claim is for "services performed." In response to the Formal Response, Debtors' counsel sent an e-mail to the claimant on March 3, 2015, explaining the type of information and documentation that would be necessary to substantiate a claim. The claimant responded that she had been over-charged, but provided no supporting documentation.

---

[24] *Id.*

RLF1 15500905v.1

| Claimant | Description and Response |
|---|---|
| | • Diligence Efforts:[25]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing.  The TXU Team was unable to reach the claimant to discuss. |
| | • Debtors' Response:  The claimant has not provided any evidence of overcharges.  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.  In addition, there is no support for the asserted claim amount. |
| **Jacquelyn Myles**<br><br>$3,523.01 | • Description of Claim:  The claimant asserts that she was charged for services during a period when she was not living at home.  In the Formal Response, the claimant asserts that someone visited the property daily to collect mail and check on the house. |
| | • Diligence Efforts:[26]  The TXU Team reviewed the claimant's account and determined that she was accurately billed for electricity used according to a meter.  At no time did the claimant request to discontinue or suspend service during the time in question. |
| | • Debtors' Response:  The claimant's customer account shows that the claimant was appropriately billed for electricity services used according to a meter operated by a third party.  If a property is not disconnected from service, electricity may still be used (for example, by appliances that remain plugged in or by visitors turning on lights when checking on the property).  A customer is responsible for electricity used while their account is active.  Furthermore, there is no support for the amount the claimant asserts was improperly charged—the amounts listed on the invoice appended to the Proof of Claim are substantially less than the amount claimed. |
| **Joan H. Hughes**<br><br>$7,444.40 | • Description of Claim:  According to a complaint submitted by the claimant to the Public Utility Commission of Texas ("PUCT") in November 2007 and to an order dismissing the proceeding in 2008 (the "PUCT Order"), each appended to the Proof of Claim and Formal Response, the claimant appears to allege that TXU Energy committed fraud by overbilling the claimant and changing service terms without the claimant's consent.  The Proof of Claim appears to be reasserting the claims made in the 2007 complaint and does not appear to be asserting new claims. |
| | • Debtors' Response:  The claim has already been adjudicated by the PUCT Order, which dismissed the proceeding initiated by the claimant.  The claimant is precluded from asserting a claim against the Debtors' estates for the same alleged actions.  See, e.g., Labelle Processing Co. v. Swarrow, 72 F.3d 308, 313 (3d Cir. 1995) ("Under the doctrine of res judicata or claim preclusion, a subsequent suit based on the same cause of action as a prior suit that involved the same parties or their privies is barred where there has been a final judgment on the merits in the prior suit.").  Furthermore, the claims have no merit.  The PUCT Order includes a careful review of each of the claimant's allegations and found, among other things, that:  (1) there were no inconsistencies or errors in the invoices or amounts charged to the claimant, PUCT Order at 3-5, (2) the only material change in the claimant's service terms was the addition of a guarantee against rate increases, which benefits |

---

[25] *Id.*

[26] *Id.*

| Claimant | Description and Response |
|---|---|
| | the customer, and which state regulations did not require to be noticed to the customer, PUCT Order at 6, and (3) concluded that the claimant failed to state any claim for which relief may be granted, PUCT Order at 7-8. In addition, there is no support for the asserted claim amount. |
| **Judy Allen**<br><br>Undetermined Amount | • <u>Description of Claim</u>: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. The Formal Response appends statements from non-Debtor energy providers (including Center Point Energy and Just Energy). During a conversation with Debtors' counsel on April 6, 2015, the claimant asserted that TXU Energy overcharged her during the years 2010 to 2013.<br>• <u>Diligence Efforts</u>:[27] The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team was unable to reach the claimant to discuss.<br>• <u>Debtors' Response</u>: The claimant has not provided any evidence of overcharges. On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. |
| **Kathey Neal**<br><br>Undetermined Amount | • <u>Description of Claim</u>: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. In an e-mail to Debtors' counsel, dated December 22, 2014, the claimant stated they believed that the rates charged by electric companies were "outrageous" and that the public was overcharged.<br>• <u>Diligence Efforts</u>:[28] The TXU Team reviewed the claimant's account and determined that the claimant made a complaint to TXU Energy customer service after receiving her first invoice in mid-2009. As a gesture of goodwill, a TXU Energy supervisor changed the claimant to a plan with a lower rate per kilowatt hour used and waived the "early cancellation fee" for the prior selected plan. The claimant switched to a different provider when the term of her plan expired. The TXU Team spoke with the claimant on February 4, 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.<br>• <u>Debtors' Response</u>: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to support the claim asserted against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. General dissatisfaction with service does not give rise to a right to payment or other entitlement that constitutes a claim under section 502 of the Bankruptcy Code (and claimant points to no authority in support of such theory for recovery). Furthermore, the claimant's customer account shows no indication that an incorrect rate or other improper charge was applied and claimant already received a benefit from the Debtors on account of a rate complaint. |
| **Linda and Jeffrey Lammers** | • <u>Description of Claim</u>: The claimants assert that TXU Energy changed or increased their rates without their agreement. On July 24, 2015, the claimants submitted a |

[27] *Id.* at 5.

[28] *Id.*

RLF1 15500905v.1

| Claimant | Description and Response |
|---|---|
| $700.00 | letter to the Court requesting copies of their monthly bills for the prior four years so that they could have the documentation necessary to prove their claim [D.I. 5258]. After attempting to contact the claimants by telephone, the Debtors responded with the requested invoices on August 28, 2015.[29] The claimants have not subsequently provided support for their claim. |

- Diligence Efforts:[30]  The claimants were among those customers to whom TXU Energy customer service representatives reached out prior to filing an Objection to their claim. The representatives left three voicemail messages, which the claimants did not return.  Following the Objection and Formal Response, the TXU Team reviewed the claimants' account and determined that on May 24, 2010, Ms. Lammers contacted TXU Energy to change their plan, which was about to expire.  Ms. Lammers selected the "Texas Choice 14" plan, which expired on August 17, 2011, at which time the account rolled to a month-to-month per stated company policy.  The plan structures changed and the claimants' account was updated accordingly on both April 17, 2012 and May 14, 2014.  The claimants were sent a notification by letter each time their plan changed, with the exception of the May 14, 2014 change, when the notification of the impending change was included on the April 2014 bill.  TXU Energy received only two communications from the claimants after the initial May 24, 2010 call—an e-mail in March 2012 indicating that their meter was falling away from the wall and an e-mail on July 2, 2012 stating that they would like to review available plans (a TXU customer service representative responded with a standard reply advising the claimants to call the customer service department, there is no record of the claimants making such call).  The TXU Team further determined that the claimants were billed correctly according to the various plans that were in effect.

- Debtors' Response:  On the face of the claimants' papers, the claimants have failed to allege facts sufficient to support the claim asserted against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimants' Proof of Claim.  In addition, there is no support for the asserted claim amount.

**Lorenzo Pipkin**

$15,600.00

- Description of Claim:  The claimant asserts that he was overcharged during the years 1988 to 2014. No supporting documentation is attached to the Proof of Claim.

- Diligence Efforts:[31]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which he was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing.  The TXU Team spoke with the claimant on May 8, 2015, informing him of the results of the review, but the claimant declined to resolve the Objection.

- Debtors' Response:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to support the claim asserted against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.  In addition, there is no support for the

---

[29] *See Certification of Counsel Regarding "Debtors Seventeenth Omnibus (Substantive) Objection to (Substantive Duplicate, No Liability, and No Claim Asserted) Claims Pursuant to Section 502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Bankruptcy Rule 3007-1"* [D.I. 5831].

[30] McKillop Declaration at 5.

[31] *Id.*

| Claimant | Description and Response |
|---|---|
| | asserted claim amount. |

**Maria Soto**

Undetermined Amount

- Description of Claim:  The Proof of Claim does not include a description of the claim being asserted or any supporting documentation.  During a conversation with Debtors' counsel on January 5, 2015, the claimant asserted that she was overcharged.

- Diligence Efforts:[32]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing.  The TXU Team spoke with the claimant on several occasions in February 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.

- Debtors' Response:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Mary Jame Phillips**

$49,925.00

- Description of Claim:  The Proof of Claim does not include a description of the claim being asserted or any supporting documentation.  During a conversation with Debtors' counsel on April 10, 2015, the claimant's son asserted that the claimant was overcharged.

- Diligence Efforts:[33]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing.  The TXU Team was unable to reach the claimant to discuss.

- Debtors' Response:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.  In addition, there is no support for the asserted claim amount.

**Melvin Williams**

Undetermined Amount

- Description of Claim:  Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation.  During a conversation with Debtors' counsel on April 10, 2015, the claimant stated that he "thinks" he may have been over-charged.

- Diligence Efforts:[34]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which he was enrolled and that there were

---

[32] *Id.*

[33] *Id.* at 6.

[34] *Id.*

| Claimant | Description and Response |
|---|---|

no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team attempted to contact the claimant on May 12, 2015, but the claimant disconnected the call upon being informed that the call was regarding his claim.

- Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Robert Walker**

Undetermined Amount

- Description of Claim: Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. In a voicemail the claimant left with the Debtors' hotline, the claimant asserted that he was overcharged.

- Diligence Efforts:[35]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which he was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team attempted to contact the claimant on May 12, 2015, but the claimant disconnected the call upon being informed that the call was regarding his claim.

- Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Rose S. Washington**

$425.00

- Description of Claim:  In her Formal Response, the claimant stated that in November 2013 she elected a plan with a rate of 11 cents per kilowatt hour, but that she was charged 13 cents and never refunded the difference.

- Diligence Efforts:[36]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. In addition, the TXU Team determined that the claimant had not selected a new plan in 2013, but instead had been on a month-to-month plan since 2011. The TXU Team spoke with the claimant on April 2, 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.

- Debtors' Response: The claimant's customer account shows no indication that an incorrect rate or other improper charge was applied. As the claimant did not submit evidence that she enrolled in a plan with rates different from those that were charged, and that the Debtors' records indicate that the claimant was properly charged, the Debtors submit that there is no evidence of a liability against the Debtors. In addition, there is no support for the asserted claim amount.

**Shanta Woods**

$4,775.00

- Description of Claim:  The Proof of Claim does not include a description of the claim being asserted or any supporting documentation.

- Diligence Efforts:[37]  The TXU Team spoke with the claimant on January 27, 2015, during which conversation the claimant stated that TXU Energy never returned her

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

| Claimant | Description and Response |
|---|---|

deposit and that she had received a letter from TXU Energy several years earlier notifying her that the company had overcharged her by $4,775. The TXU Team reviewed the claimant's account and determined that no deposit was required or collected from the claimant, there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled, and there were no apparent discrepancies in the service, contract, pricing, or billing. In addition, there was no notation in the customer's account regarding a communication about overcharges being sent—per company practice, any such communications to customers are noted in the customer's account. The TXU Team spoke with the claimant on January 28, 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.

- Debtors' Response: The claimant's customer account shows no indication that an incorrect rate or other improper charge was applied and the Debtors have no record of sending any letter informing the claimant that she had been overcharged. As the claimant has not provided any documentation to support that she paid a deposit, was overcharged, or was even informed that she had been overcharged, the Debtors submit that there is insufficient evidence to support the claim.

**Sharron Carter**

**$5,000.00**

- Description of Claim: In a note appended to the Proof of Claim, the claimant stated that she had been overcharged. During a conversation with Debtors' counsel, the claimant questioned why her bill increased during the winter.
- Diligence Efforts:[38]  The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team spoke with the claimant on May 12, 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.
- Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount.

**Stephen W. Mitchell**

**$5,000.00**

- Description of Claim:  Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or attach any supporting documentation.
- Diligence Efforts:[39]  The TXU Team reviewed the claimant's account and determined that on January 21, 2013, the customer reported that his electricity flickered, causing certain appliances to cease working. TXU Energy forwarded the report to Oncor for review and investigation. TXU Energy is not responsible for, and therefore does not reimburse for any damages associated with, the quality of electricity delivery. Otherwise, the TXU Team's review of the claimant's account showed no indication the customer was charged more than the appropriate rate under service plan in which he was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team was unable to reach the claimant to discuss.
- Debtors' Response: On the face of the claimant's papers, the claimant has failed to

---

[38] Id.

[39] Id.

| Claimant | Description and Response |
|---|---|
| | allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount. |

**Teretta Vaughn**

Undetermined Amount

- <u>Description of Claim</u>: The Proof of Claim does not include a description of the claim being asserted and appends only an account history. During a conversation with Debtors' counsel on April 10, 2015, the claimant asserted that she had been overcharged.
- <u>Diligence Efforts</u>:[40] The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team spoke with the claimant on May 11, 2015, informing her of the results of the review, but the claimant declined to resolve the Objection.
- <u>Debtors' Response</u>: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Yolanda Small**

$12,475.00

- <u>Description of Claim</u>: The Proof of Claim states only that the claimant was "overcharged" and appends two account details. The Debtors' counsel was unable to reach the claimant to solicit additional information.
- <u>Diligence Efforts</u>:[41] The TXU Team reviewed the claimant's account and determined that there was no indication the customer was charged more than the appropriate rate under the service plan in which she was enrolled and that there were no apparent discrepancies in the service, contract, pricing, or billing. The TXU Team attempted to contact the claimant on May 12, 2015, but the claimant disconnected the call upon being informed that the call was regarding her claim.
- <u>Debtors' Response</u>: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount.

*Customer Claims (Unknown)*

**Austin Kovach**

$13,988.00

- <u>Description of Claim</u>: Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. The Debtors' counsel left several voicemails in an attempt to solicit additional information, but the claimant did not respond.
- <u>Diligence Efforts</u>:[42] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- <u>Debtors' Response</u>: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence

---

[40] *Id.* at 7.

[41] *Id.*

[42] *Id.*

| Claimant | Description and Response |
|---|---|

of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount.

**Cora Redic**

Undetermined Amount

- Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. The Debtors' counsel was unable to reach the claimant to solicit additional information.
- Diligence Efforts:[43] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Donald Cox**

Undetermined Amount

- Description of Claim: Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. The Debtors' counsel sent an e-mail to the claimant requesting additional information, but the claimant did not respond.
- Diligence Efforts:[44] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Jesus Moreno**

$2,775.00

- Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. In his Formal Response, the claimant made general allegations that utilities companies were taking advantage of their customers, but acknowledged that he had no proof and did not keep records. In a conversation between the claimant and Debtors' counsel dated February 10, 2015, the Claimant declined to specify the claim being asserted against the Debtors and indicated he filled out the proof of claim only to express general dissatisfaction with the Debtors and the chapter 11 cases.
- Diligence Efforts:[45] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- Debtors' Response: General dissatisfaction with service does not give rise to a right to payment or other entitlement that constitutes a claim under section 502 of the Bankruptcy Code (and claimant points to no authority in support of such theory for recovery). On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the

---

[43] *Id.*

[44] *Id.*

[45] *Id.*

| Claimant | Description and Response |
|---|---|
| | asserted claim amount. |
| **JoAnn M. Robinson**<br><br>$30,500.00 | • Description of Claim: Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted (though the claimant checked the boxes indicating the claim is entitled to priority under sections 503(b)(9) and 507(a) of the Bankruptcy Code for goods sold, domestic support obligations, wages, employee benefit plans, personal property, taxes owed to governmental units, and other). The Formal Response appends letters from various claims traders regarding offers to purchase the priority portion of the claimant's claim. During a conversation with Debtors' counsel on March 18, 2015, the claimant was unable to articulate a basis for a claim against the Debtors.<br><br>• Diligence Efforts:[46] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.<br><br>• Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount. A review of the claimant's submissions indicates that the claimant may have been confused by the bar date notice and the offers from third parties to purchase her claim. |
| **Kimberley Olbrish**<br><br>Undetermined Amount | • Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. The Debtors sent two letters to the claimant requesting a discussion concerning the claim, but the claimant did not respond.<br><br>• Diligence Efforts:[47] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.<br><br>• Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. |
| **Marilyn Bell**<br><br>Undetermined Amount | • Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. The Formal Response states only that the claimant has been a customer of TXU Energy since the 1980s and that the claim is for $6,000. The Debtors' counsel sent an e-mail on April 6, 2016, requesting a description of the claim being asserted, but the claimant did not respond.<br><br>• Diligence Efforts:[48] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.<br><br>• Debtors' Response: On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence |

---

[46] *Id.*

[47] *Id.*

[48] *Id.*

20

| Claimant | Description and Response |
|----------|-------------------------|
| | of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. |

**Nikita Denise Bailey-Kelly**

$300.00

- Description of Claim:  Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. The Debtors' counsel sent an e-mail on April 14, 2016, requesting a description of the claim being asserted, but the claimant did not respond.
- Diligence Efforts:[49]  The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- Debtors' Response:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.  In addition, there is no support for the asserted claim amount.

**Ruth Caesar**

Undetermined Amount

- Description of Claim:  Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. The Formal Response was submitted by the claimant's daughter, notifying the Court that the claimant was unable to respond due to a health-related incident. The Debtors' counsel sent a letter on January 8, 2016, granting the requested adjournment and requesting a description of the claim being asserted, but the claimant did not respond.
- Diligence Efforts:[50]  The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- Debtors' Response:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Susan Keyes**

Undetermined Amount

- Description of Claim:  Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. The Debtors' counsel sent a letter on January 8, 2016, requesting a description of the claim being asserted, but the claimant did not respond.
- Diligence Efforts:[51]  The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.
- Debtors' Response:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

RLF1 15500905v.1

*Claims Against Non-Debtor Third Parties*

**Amelia Maurillo**

$18,150.00

- Description of Claim: In the Formal Response, the claimant asserts that her claim is for non-payment of royalties under an oil, gas, and mineral lease agreement entered into with Dale Property Services in February 2007, a copy of which is attached to the Formal Response.

- Diligence Efforts:[52] The Debtors reviewed the oil, gas, and mineral lease included with the Formal Response and confirmed that the Debtors are not a party to the lease. The Debtors reviewed their books and records and verified that Dale Property Services is not a Debtor, nor a predecessor or affiliate of the Debtors.

- Debtors' Response: According to the terms of the oil, gas, and mineral lease, Dale Property Services—a non-Debtor third party—is the sole entity liable for royalties due. In fact, the Debtors are not mentioned at all in the lease or the accompanying letter. Therefore, on the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. In addition, there is no support for the asserted claim amount.

**Annie Brinkley**

$5,063.00

- Description of Claim: The claim relates to a solar hot water heater that the claimant states was installed by a company called "Green Monster." Attached to the Proof of Claim is a summary of the claimant's issue with the heater and attempts to resolve the issue, which references several companies (Banz, FAFCO, Oncor, and Green Monster), as well as an invoice from "Green Python LLC."

- Diligence Efforts:[53] The Debtors reviewed the history and documentation provided by the claimant and confirmed that the Debtors are not connected to the installation of the heater. The Debtors reviewed their books and records and verified that none of the companies referenced in the Proof of Claim are a Debtor, nor a predecessor or affiliate of the Debtors (other than Oncor).

- Debtors' Response: While the claimant asserts that she contacted Oncor regarding the issue, the claimant does not indicate what connection, if any, Oncor had to the heater. Furthermore, Oncor is a non-Debtor affiliate of the Debtors; any claim against Oncor would not be a claim against the Debtors' estates. The other referenced companies have no relevant connection to the Debtors and none of the Debtors make or install solar power systems or water heaters. Therefore, on the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. In addition, there is no support for the asserted claim amount.

**Donna Phillips**

Undetermined Amount

- Description of Claim: The claimant appears to be asserting a claim related to a mining lease located in Smith County, Texas.

- Diligence Efforts:[54] The Debtors reviewed their books and records and determined that they do not have mining operations in the county where the lease is located and, therefore, are not party to any mining leases located in that county.

- Debtors' Response: As the claimant has failed to provide the Debtors with a copy of the applicable lease, the Debtors are unable to trace or substantiate the claimant's claim. Therefore, on the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.

---

[52] Soesbe Declaration at 2.

[53] *Id.*

[54] *Id.*

| | |
|---|---|
| **Gerald and DeAnna Edwards**<br><br>Undetermined Amount | • <u>Description of Claim</u>:  None of the papers submitted by the claimants provide a clear description of the claim being asserted.  The Proof of Claim attaches documentation of patents held by Mr. Edwards for a "digging tooth," as well as copies of easements, assignments, and other real property contracts between the claimants and various non-Debtor third parties.  A Formal Response [D.I. 3388] indicates Ms. Edwards is confused by the notices sent to Mr. Edwards, who is a former customer of TXU Energy, and attaches correspondence with a variety of companies that are non-Debtor third parties. |
| | • <u>Diligence Efforts</u>:[55]  The Debtors reviewed the various papers submitted by the claimants and were unable to identify a claim being asserted against the Debtors.  The Debtors' records show no indication of a connection to the properties or patents included in the claimant's papers. |
| | • <u>Debtors' Response</u>:  On the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  In fact, no Debtor appears in any of the supporting documentation.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. |
| **Melva Johnson-Cauley**<br><br>$2,000.00 plus undetermined amounts | • <u>Description of Claim</u>:  The asserted claim is for royalties owed under an oil, gas, and mineral lease agreement entered into with Dale Property Services on August 8, 2008, a copy of which is appended to the Proof of Claim. |
| | • <u>Diligence Efforts</u>:[56]  The Debtors reviewed the oil, gas, and mineral lease included with the Formal Response and confirmed that the Debtors are not a party to the lease. The Debtors reviewed their books and records and verified that Dale Property Services is not a Debtor, nor a predecessor or affiliate of the Debtors. |
| | • <u>Debtors' Response</u>:  According to the terms of the oil, gas, and mineral lease, Dale Property Services—a non-Debtor third party—is the sole entity liable for royalties due.  In fact, the Debtors are not mentioned at all in the lease or the accompanying letter and e-mail.  Therefore, on the face of the claimant's papers, the claimant has failed to allege facts sufficient to establish a claim against the Debtors.  The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.  In addition, there is no support for the asserted claim amount. |

---

[55] *Id.*

[56] *Id.*

**Tim Villarreal**

$15,250.00

- Description of Claim: The Proof of Claim does not include a description of the claim being asserted or any supporting documentation. In his Formal Response and during a telephone call with Debtors' counsel on April 14, 2016, the claimant stated that he is asserting a WARN Act claim against his former employer, Jevic Transportation, which he asserts was "spun off" from the Debtors.

- Diligence Efforts: The Debtors reviewed their books and records and verified that there is no (and never has been) any affiliation with Jevic Transportation.[57] During the April 14, 2016 telephone call, the Debtors' counsel explained the lack of connection between the Debtors and Jevic Transportation to the claimant, who did not accept the explanation.

- Debtors' Response: Jevic Transportation is not a Debtor, but rather a company unrelated to the Debtors and which filed its own petition for chapter 11 relief in the District of Delaware in 2008. Jevic Transportation's chapter 11 cases are being jointly administered under *In re Jevic Holding Corp.*, Case No. 08–11006 (BLS). Therefore, any WARN Act claims the claimant may hold against Jevic Transportation are not liabilities against the Debtors or their estates. In addition, there is no support for the asserted claim amount.

*Other Claims*

**Leo Griffin**

$2,775.00

- Description of Claim: The Proof of Claim does not include a description of the claim being asserted. The Formal Response attaches payment confirmations as proof that the claimant had an account with TXU Energy. During a conversation with Debtors' counsel on February 10, 2015, the claimant asserted that he was part of a class action regarding overcharges.

- Diligence Efforts: The Debtors reviewed their books and records and determined that they are not aware of any class action against the Debtors fitting the claimant's description.[58] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.[59]

- Debtors' Response: The Debtors do not dispute that the claimant was a TXU Energy customer; the claimant's status as a customer does not, in itself, give rise to a claim. The Debtors have no record of a class action suit, and claimant provided no evidence of one, that would give rise to a claim for the benefit of the claimant. Therefore, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount.

**Mason Guy**

Undetermined Amount

- Description of Claim: Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted or any supporting documentation. During a conversation with Debtors' counsel on December 31, 2014, the claimant asserted that he was part of a class action regarding gas prices.

---

[57] *Id.*

[58] *Id.* at 3.

[59] McKillop Declaration at 8.

- Diligence Efforts: The Debtors reviewed their books and records and determined that they are not aware of any class action against the Debtors fitting the claimant's description.[60] The TXU Team reviewed the claimant's customer account, including deposit, billing, and account service information, and did not find any issues.[61]
- Debtors' Response: The Debtors have no record of a class action suit, and claimant provided no evidence of one, that would give rise to a claim for the benefit of the claimant. Furthermore, the Debtors do not sell gas. Therefore, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim.

**Maurice Jefferson**

$35,000.00 and $99,000.00 plus undetermined amounts

- Description of Claim: The claim is for a severance payment allegedly distributed to employees in connection with the 2007 restructuring.
- Diligence Efforts:[62] The Debtors reviewed their books and records and determined that they are not aware of any severance program of the kind and from the time described.
- Debtors' Response: The Debtors have no record of the severance program described by the claimant, who has provided no documentation or evidence of the alleged severance program, nor any details as to why he believes such a severance program existed. In addition, there is no support for the asserted claim amount. Furthermore, the Debtors have no record of unpaid amounts due to the claimant.

**Monica Regina Hawkins**

$110,177.00

- Description of Claim: The Proof of Claim indicates the claimant is asserting a claim in connection with a foreclosure or mortgage note from Wells Fargo Home Mortgage and/or with an unspecified class action settlement.
- Diligence Efforts: The Debtors reviewed their books and records and determined that they are not aware of any class action against the Debtors fitting the claimant's description and verified that Wells Fargo Home Mortgage is not a Debtor, nor a predecessor or affiliate of the Debtors.[63] The TXU Team reviewed the claimant's customer account and determined that there are no outstanding or unresolved issues.[64]
- Debtors' Response: The Debtors have no connection to Wells Fargo Home Mortgage or to the note identified in the Proof of Claim and do not make home loans. The Debtors have no record of a class action suit, and claimant provided no evidence of one, that would give rise to a claim for the benefit of the claimant. Therefore, the claimant has failed to allege facts sufficient to establish a claim against the Debtors. The lack of evidence of grounds for a claim in the Debtors' books and records further supports disallowing the claimant's Proof of Claim. In addition, there is no support for the asserted claim amount.

**Wayne English**

$24,580.00

- Description of Claim: The claimant asserts that he is entitled to damages for selling his bonds at a loss.
- Debtors' Response: When purchasing securities, an investor assumes risk that the

---

[60] Soesbe Declaration at 3.

[61] McKillop Declaration at 8.

[62] Soesbe Declaration at 3.

[63] *Id.*

[64] McKillop Declaration at 8.

value of such securities may decrease. *See, e.g.*, *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 247 (3d Cir. 2001) ("The value of a security is related to its expected return and its inherent risk."). Absent a violation of securities laws or other applicable statute, an issuer is not liable to an investor for losses incurred in connection with the sale of securities. Importantly, the claimant makes no allegation that the Debtors violated any law and points to no authority to support his theory that he is entitled to damages in connection with the sale of securities. The cases cited by the claimant in the Formal Response are wholly inapposite: none concern the sale of securities and all involve claims for breach of contract. The claimant misunderstands the legal theories of duty, breach, and mitigation.

| | |
|---|---|
| **Wendy Copeland**<br><br>$12,000.00; $19,000.00; and Undetermined Amount | • <u>Description of Claim</u>:  Neither the Proof of Claim nor the Formal Response includes a description of the claim being asserted against the Debtors. The Formal Response states that a company called Durham Electric performed electrical work on the claimant's house and alleges that Durham Electric was purchased by TXU Energy.<br><br>• <u>Diligence Efforts</u>:[65]  The Debtors reviewed their books and records and confirmed that no company named Durham Electric was ever purchased by the Debtors.<br><br>• <u>Debtors' Response</u>:  Claimant's timely proof of claim no. 5644 was disallowed by the *Order Sustaining Debtors Thirteenth Omnibus (Non-Substantive) Objection to (Insufficient Documentation) Claims* [D.I. 4373]. To the extent the claimant's later-filed claims attempt to re-assert the same liability as that described in claim no. 5644, such liability has already been disallowed by the Court. To the extent the claimant is attempting to assert new claims, such claims are untimely and disallowed by the Debtors' chapter 11 plan. In addition, the claimant has failed to allege facts sufficient to establish a claim against the Debtors and there is no support for the asserted claim amounts. |

## Conclusion

18.    The Debtors respectfully submit that they have gone over and above that which is required of a chapter 11 debtor undertaking a claims administration process. As set forth above, the Pro Se Claimants were provided numerous opportunities to explain, support, and supplement their Proofs of Claim.[66] Even where it was clear that a Pro Se Claimant had not met the initial burden to establish a *prima facie* valid claim, the Debtors scoured customer accounts and their books and records—often based on no more than a hint of what a claimant was attempting to assert—to verify that the claimant did not in fact hold a claim that they were having difficulty

---

[65] Soesbe Declaration at 3.

[66] Notably, by the time the Pro Se Claims Protocol Order was entered on August 15, 2016, the Pro Se Claimants had been on notice that their claims were disputed for as many as twenty months (and no fewer than five months). The earliest Objection to a Contested Pro Se Claim was filed on December 12, 2014 [D.I. 2992], and the most recent Objection was filed on March 24, 2016 [D.I. 8069].

describing.    This diligence is a direct reflection of the importance TXU Energy places on customer service and the seriousness with which the Debtors have approached their duties as debtors in possession.

19.    The results of the Debtors' claims reconciliation efforts, combined with the complete absence of reliable factual or legal support for any of the Contested Pro Se Claims, makes clear that none of these claims are valid.    Therefore, the Debtors respectfully submit that the Court should grant the relief requested in the applicable Objections and disallow the Contested Pro Se Claims.

[<em>Remainder of page intentionally left blank.</em>]

Dated: October 21, 2016
Wilmington, Delaware

**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Jason M. Madron (No. 4431)
920 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
defranceschi@rlf.com
madron@rlf.com

-and-

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Edward O. Sassower, P.C. (admitted *pro hac vice*)
Stephen E. Hessler (admitted *pro hac vice*)
Brian E. Schartz (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:    edward.sassower@kirkland.com
stephen.hessler@kirkland.com
brian.schartz@kirkland.com

-and-

James H.M. Sprayregen, P.C. (admitted *pro hac vice*)
Marc Kieselstein, P.C. (admitted *pro hac vice*)
Chad J. Husnick (admitted *pro hac vice*)
Steven N. Serajeddini (admitted *pro hac vice*)
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    james.sprayregen@kirkland.com
marc.kieselstein@kirkland.com
chad.husnick@kirkland.com
steven.serajeddini@kirkland.com

Co-Counsel to the Debtors and Debtors in Possession