1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4

5    In re:                        :

                                    :    Chapter 11

6    ENERGY FUTURE HOLDINGS CORP., :

     et al.,                        :    Case No. 14-10979 (CSS)

7                                    :

             Debtors.               :    (Jointly Administered)

8    _____:

9

10                                United States Bankruptcy Court

11                                824 North Market Street

12                                Wilmington, Delaware

13                                October 26, 2016

14                                10:05 a.m. – 10:22 a.m.

15

16

17

18

19

20

21    B E F O R E :

22    HON CHRISTOPHER S. SONTCHI

23    U.S. BANKRUPTCY JUDGE

24

25    ECRO OPERATOR:   LESLIE MURIN

1    HEARING re Twenty-Second Omnibus (Non-Substantive) Objection

2    to Claims (Wrong Debtor) Pursuant to Section 502(b) of the

3    Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and

4    Local Bankruptcy Rule 3007-1 [D.I. 4976; filed July 10,2015]

5

6    HEARING re Twenty-Third Omnibus (Substantive) Objection to

7    (Certain Improperly Asserted) Claims Pursuant to Section

8    502(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003,

9    and 3007 and Local Bankruptcy Rule 3007-1 [D.I. 4978; filed

10   July 10, 2015]

11

12   HEARING re Twenty-Eighth Omnibus (Substantive) Objection to

13   (Certain Improperly Asserted) Claims Pursuant to Section

14   502(b) of the Bankruptcy Code, Bankruptcy Rule 3007-1 [D.I.

15   5373; filed August 17, 2015]

16

17   HEARING re Debtors' Thirty-Seventh Omnibus (Substantive)

18   Objection to Certain Improperly Asserted Claims Pursuant to

19   Section 502(b) of the Bankruptcy Code,

20

21   HEARING re Debtors' Thirty-Ninth Omnibus (Substantive)

22   Objection to Substantive Duplicate and No Liability Claims

23   Pursuant to Section 502(b) of the Bankruptcy Code,

24   Bankruptcy Rules 3001, 3003, and 3007, and Local Bankrtupcy

25   Rule 3007-1 [D.I. 8069; filed March 24, 2016]

1    HEARING re Debtors' Forty-Second Omnibus (Substantive)

2    Objection to No Liability Claims Pursuant to Section 502(b)

3    of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and

4    3007, and Local Bankruptcy Rule 3007-1 [D.I. 8728; filed

5    June 15, 2016]

6

7    HEARING re Objection of Energy Future Holdings Corp., et al,

8    to Proof of Claim 13319 Filed by the City of Dallas [D.I.

9    9409; filed August 26, 2016]

10

11   HEARING re Motion of Energy Future Holdings Corp., et al.,

12   for an Order Authorizing Entry into and Performance Under

13   the Stipulation Between Luminant Generation Company LLC and

14   United States Enrichment Corporation [D.I. 9572; filed

15   September 16, 2016]

16

17   HEARING re Motion of Energy Future Holdings Corp., et al.,

18   for an Order Authorizing Entry into and Performance Under

19   the Stipulation Between Luminant Generation Company LLC and

20   BHP Billiton Olympic Dam Corporation Pty Ltd. [D.I. 9575;

21   filed September 16, 2016]

22

23   HEARING re Motion of Energy Future Holdings Corp., et al.,

24   for an Order Authorizing Entry into and Performance Under

25   the Stipulation Between Luminant Generation Company LLC and

1    Forest Creek Wind Farm, LLC [D.I. 9703; filed September 28,

2    2016]

3

4    HEARING re Third Amended Joint Plan of Reorganization of

5    Energy Future Holdings Corp., et al., Pursuant to Chapter 11

6    of the Bankruptcy Code [D.I. 9374; filed August 23, 2016]

7

8    HEARING re Interim Fee Applications

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

1    A P P E A R A N C E S :

2

3    WHITE & CASE LLP

4         Attorney for the Ad Hoc Group of Restructured Creditors

5

6    BY:  J. CHRISTOPHER SHORE

7

8    FOX FOTHSCHILD LLP

9         Attorney for the Ad Hoc Group of Restructured Creditors

10

11   BY:  COURTNEY EMERSON

12

13   GITLIN & CO., LLC

14        Attorney for Chairman of the Fee Committee

15

16   BY:  RICHARD GITLIN

17

18   GODFREY & KAHN, S.C.

19        Attorney for the Fee Committee

20

21   BY:  KATHERINE STADLER

22

23

24

25

1   PATTERSON BELKNAP WEBB & TYLER

2       Attorney for Law Debenture Trust Company

3

4   BY:  BRIAN GUINEY

5

6   MORRIS JAMES LLP

7       Attorney for Law Debenture of New York, Indenture

8       Trustee

9

10  BY:  ERIC MONTO

11

12   POTTER ANDERSON & CORROON LLP

13       Attorney for Deutsche Bank New York

14

15  BY:  R. STEPHEN MCNEILL

16

17  U.S. DEPARTMENT OF JUSTICE

18       U.S. Trustee

19

20  BY:  RICHARD SCHEPACARTER

21

22  HOGAN MCDANIEL

23       Attorneys for for Fenicle & Fahy

24

25  BY:  DANIEL K HOGAN

```
1    Benesch, Friedlander, Coplan & Aronoff LLP

2          Attorneys for Fee Committee

3

4    BY:  WILLIAM M. ALLEMAN

5

6    KIRKLAND & ELLIS

7          Attorneys for Debtor

8

9    BY:  APARNA YENAMANDRA

10

11   RICHARDS, LAYTON & FINGER, P.A.

12          Co-Counsel to the Debtors

13

14   BY:  JASON M. MADRON

15

16   KLEHR HARRISON HARVEY BRANZBURG LLP

17          Counsel to UMB Bank N.A. Indenture Trustee

18

19   BY:  RAYMOND LEMISCH

20

21   O'KELLY, ERNST & BIELLI LLP

22          Co-Counsel to Energy Future Holdings Corp.

23

24   BY:  DAVID KLAUDER

25
```

1    APPEARING TELEPHONICALLY:

2    MARK BAGGETT

3    ASHLEY F. BARTRAM

4    MATTHEW G. BOUSLOG

5    KELLIE CAIRNS

6    MATTHEW CHIAPPARDI

7    ERIC C. DAUCHER

8    MICHAEL J. EDELMAN

9    MARK A. FINK

10   MARK FLANNAGAN

11   MICHAEL G ALEN

12   TODD M. GOREN

13   MARK W. HANCOCK

14   TAYLOR B. HARRISON

15   MARK F. HEBBEIN

16   JOSEPH H. HUSTON, JR.

17   NATASHA HWANGPO

18   HAROLD KAPLAN

19   ALEXA J. KRANZLEY

20   PATRICK C. MAXCY

21   PAMELA S. MORIN

22   RICHARD PEDONE

23   LARS A. PETERSON

24   JASON B. SANJANA

25   NED S. SCHODEK

1   NOAH M. SCHOTTENSTEIN

2   JENNIFER SHARRET

3   MICHAEL SHEPHERD

4   ANDREW M. THAU

5   AMER TIWANA

6   CARL TULLSON

7   MICHAEL TURKEL

8   TAMARA VAN HEEL

9   RYAN A. WAGNER

10   PETER YOUNG

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 10

```
 1                     P R O C E E D I N G S
 2              CLERK:  All rise.
 3              THE COURT:  Please be seated.  Good morning.
 4              MR. MADRON:  Good morning, Your Honor.  For the
 5     record, Jason Madron of Richards, Layton & Finger on behalf
 6     of the Energy Future Holdings Corp and its affiliated
 7     Chapter 11 Debtors.  I'm joined today in the courtroom by my
 8     co-counsel, Aparna Yenamandra of Kirkland & Ellis.
 9              Your Honor, we are before the Court this morning
10     for a combined omnibus and uncontested fee hearing.  With
11     respect to the omnibus portion of today's hearing, I'll just
12     briefly walk through the agenda.
13              Agenda Items 1 through 7 are various claim
14     objections where, since our last monthly omnibus hearing
15     either further order has been entered by Your Honor, a
16     notice of settlement has been filed where the parties have
17     agreed to further adjourn the hearing from today's date to a
18     future hearing date.
19              Your Honor, Agenda Items 8 through 10 were three
20     motions to approve certain claim settlements, all of which
21     were unopposed and on of account of which Your Honor has
22     already entered orders based upon certifications of no
23     objection having been filed.
24              Agenda Item 11, Your Honor, is an extant -- or the
25     -- well, until this morning was the only remaining extant T-
```

1    side cure objection and that is resolved, subject to reading

2    certain agreed language into the record of this morning's

3    hearing, which I will do now.  And this is the cure

4    objection that had been filed by Data Systems and Solutions,

5    LLC at Docket Entry 9281.

6            MR. EDELMAN:  This is Michael Edelman from Vedder

7    Price, the counterparty, the DS&S.  Part of what you're

8    reading is that the parties have executed the documents.  I

9    still think it's taking a few minutes for the parties to

10   sign, so can we maybe read that after the parties have

11   signed?  I think -- I'm just waiting for email confirmation,

12   so maybe we could take this up at the end, that you can read

13   the -- this into the record?

14           THE COURT:  All right. Well, we don't have -- this

15   is a very short hearing, but we'll certainly defer -- we'll

16   move on to the fee applications and then we'll come back and

17   deal with the DDS issue.  So we'll give you a few more

18   minutes.

19           MR. EDELMAN:  All right.

20           MR. MADRON:  Thank you, Your Honor.

21           MR. EDELMAN:  I appreciate it.  Thank you.

22           THE COURT:  You're welcome.

23           MR. MADRON:  So with that, Your Honor, we'll pass

24   to Agenda Item 12, which relates to 30 interim period and

25   final fee applications inclusive of two interim fee

1     applications of lead counsel to the fee committee, as well

2     as the chair of the fee committee's firm and six Section

3     503(b) fee requests, all of which are before the Court on an

4     uncontested basis for approval today.

5              And with that I'll yield the podium to counsel to

6     the fee committee to address those matters.

7              THE COURT:  Okay.

8              MR. ALLEMAN:  Good morning, Your Honor.  Bill

9     Alleman for the fee committee.  I'm here with my co-counsel,

10    Ms. Stadler and Mr. Gitlin, the chairman of the fee

11    committee.  And if I may, I'd like to turn it over to Ms.

12    Stadler.

13             THE COURT:  Yes.  Of course.

14             MR. ALLEMAN:  Thank you.

15             MS. STADLER:  Good morning, Your Honor.

16             THE COURT:  Good morning.

17             MS. STADLER:  We are here, as Mr. Alleman said, to

18    present 28 retained professional fee applications for the

19    Court's consideration and approval.  Most are professionals'

20    fifth or sixth interim fee applications for work performed

21    in January through April of this year. One is a final fee

22    application for a professional that finished its work last

23    year in October.  That professional is McDermott, Will &

24    Emery --

25             THE COURT:  Right.

1             MS. STADLER:  -- which I will address again in a

2    second.

3             We also have six requests for Section 503(b)

4    substantial contribution compensation from professionals for

5    the ad hoc T-side unsecured noteholders group, as well as

6    the TCEH second lien collateral agent.  There are, of

7    course, other 503(b) requests outstanding, namely those for

8    the TCEH second lien group, which is led by Brown Rudnick.

9    Those remain to be resolved for Court approval.  We have

10   reported to those professionals and are awaiting

11   supplemental documentation of expenses and answers to some

12   questions that the fee committee raised.  We hope to have

13   those resolved before the end of the year, that, of course,

14   is contingent upon receipt of supplemental information from

15   those professionals.

16             I do have a couple of fee issues to update Your

17   Honor on.  As you well know, the T-side emergence date was

18   October 3rd and as a result of that effective date

19   occurring, a number of professionals, 13 to be exact, are no

20   longer retained professionals under the bankruptcy code.

21   Those professionals are expected to file final fee

22   applications roughly 45 days from the effective date, so

23   sometime in mid-November.  Those professionals will file

24   final applications and will be subject to separate reporting

25   and a separate order on final compensation for the T-side.

1          That leaves 21 professionals that have or will

2     file seven interim period fee applications.  Many of those

3     have been filed, not all.  Those are for the professionals

4     that continue to work on the E-side process.

5          I have the draft orders here.  The 503(b) order

6     for final compensation is a separate order. I have an

7     omnibus order for interim compensation, which I'm going to

8     have to keep and revise slightly.  McDermott, Will & Emery

9     called ten minutes ago and asked that we slightly revise the

10    way the order is worded with respect to them.  That

11    application, as you know, is final.  And apparently that's

12    not clear in the terms of the order.  So --

13               THE COURT:  Okay.

14               MS. STADLER:  -- I will change that.

15               THE COURT:  Not changing the numbers, just the

16    language?

17               MS. STADLER:  Correct.

18               THE COURT:  Okay.

19               MS. STADLER:  So with that, Mr. Gitlin would like

20    to make a couple of remarks.  But I'm happy to answer

21    questions if you have any.

22               THE COURT:  All right.  I have something I want to

23    say, but I'll wait till I hear -- what Mr. Gitlin has to

24    say, who I looked at in the elevator and looked the other

25    way earlier today.  So I apologize.  I was distracted.  I

1     needed my coffee.  Yes, please.

2             MR. GITLIN:  Good morning, Your Honor.  Richard

3     Gitlin, chairman of the fee committee.

4             Your Honor, just two items I'd like to comment on

5     today.  The first is 503(b).  As Your Honor will recall, the

6     last time I was here we had an argument as to whether the

7     Committee would review 503(b) and Your Honor decided the

8     Committee should.

9             And since that time I just want to compliment the

10    503(b) professionals.  Since that hearing where we did have

11    a heated contest, they have been professional and

12    constructive in working with the Committee.  And in fact,

13    I'd like to highlight White & Case because they have

14    particularly worked with us constructively.  We entered into

15    a very fair settlement and I'm very appreciative of that,

16    Your Honor.

17            The second item is the fixed fee professionals,

18    Your Honor.  We mentioned to the Court before that we are

19    watching, very carefully, their monthly payments to

20    determine whether or not they are still required in the

21    amount they're being paid.  And I would report to the Court

22    that we did strike an agreement with Lazard --

23            THE COURT:  Yes.

24            MR. GITLIN:  -- starting in January, Lazard

25    stopped its monthly payments of $250,000 by agreement with

1    our fee committee, subject to certain conditions, but we

2    entered into, again, with them, a highly constructive

3    arrangement.

4             With respect to the others, they are on notice,

5    and we are actively looking at their hourly rates, as the

6    net effect of that and we will, accordingly report to the

7    Court in the future.  Those are the two items, Your Honor.

8             THE COURT:  Well, that last point was actually my

9    point.  When I was looking at the fixed fee professionals

10   for this period, which was January through April, which was

11   post-confirmation of the initial plan, and pre the trigger

12   of that plan not being effective, I was concerned.  So for

13   example, Guggenheim, for the E-side committee gets a million

14   dollars, the plan -- there wasn't anything for Guggenheim to

15   do in that four months, so --

16             MR. GITLIN:  Yeah.  Yeah.

17             THE COURT:  -- or very little and that concerned

18   me.  And the others were the conflict counsel fee apps, so

19   Golden, Greenhill and SOLIC.  But when I thought more about

20   that, I remembered that starting in about late February

21   there was this pivot to considering what happens if the plan

22   didn't go effective.  So there was more substantive work for

23   the conflict counsel to do.  But I was concerned about that,

24   too, and I wanted to note that for the record.

25             I think probably not going to be an issue with at

1    least EFIH and EFH conflict counsel, since they still have

2    an active plan that's being worked on.

3                  MR. GITLIN:  Yeah.

4                  THE COURT:  And TCEH was active through the summer

5    trying to get its plan confirmed, so probably not an issue.

6    But Guggenheim concerns me --

7                  MR. GITLIN:  Yeah, the rates --

8                  THE COURT:  -- that seems excessive.

9                  MR. GITLIN:  I think the rates for Guggenheim and

10   others, as you look at the effort, you can identify how much

11   effort they put in by turning their fixed monthly fee into

12   an hourly rate --

13                 THE COURT:  Right.

14                 MR. GILTLIN:  -- which we done.  And the hourly

15   rates, as a result of that, are really quite high and --

16                 THE COURT:  Right.

17                 MR. GITLIN:  -- in some cases quite unreasonable.

18   We've agreed with them that we'd watch and see if their

19   effort went up and equalized it, but I suspect we'll have

20   some work to do with them, Your Honor.

21                 THE COURT:  Right.  Well, you know, and I

22   understand when they're active I mean there's -- you know,

23   they would probably say, look, there was a time when our

24   hourly rate was way low, because we were working way harder

25   than our fixed rate and now we're just making our money

1   back, but that's not quite the way I think about it, even

2   though that might be the way they think about it.  So --

3              MR. GITLIN:  No, we've -- those comments are

4   helpful to us, Your Honor.

5              THE COURT:  Okay.  So just -- I agree with you,

6   let's keep an eye on it, because you know, the -- of course

7   the case is active again, as we move towards confirmation,

8   hopefully, but we'll see what happens in connection with the

9   second, I guess the third plan in this case.  But yeah,

10  let's keep an eye on that.  So, thank you.

11             MR. GITLIN:  Okay.  Thank you, Your Honor.

12             THE COURT:  All right.  And I had no comments,

13  except the fee auditor's report, as always -- fee

14  committee's report, excuse me, as always I very much

15  appreciate the work of the fee committee in this case.  The

16  amount of judicial resources that are being spared are well

17  worth the amount of money involved.  I can't even imagine

18  what it would have taken to go through just the White & Case

19  application over the long amount of time that was involved

20  in that representation and the large amount of work that was

21  done.  So it's of tremendous value to the Court and I

22  continue to very much appreciate it.

23             The numbers continue to mount.  They are very,

24  very large, by any measure. But this is an extremely

25  complicated case where we're trying to restructure $45

1    billion of debt.  And we've already restructured about 25

2    billion by the first T-side plan going effective.  So I try

3    to keep that in perspective when I look at these sort of

4    eye-popping numbers.

5           But the Court is very cognizant and will keep a

6    weather eye on the fees, particularly if we enter a post-

7    confirmation world on the E-side.  I'm very much going to

8    need to make sure that the amount of work and fees that are

9    incurred after that occurs, if -- again, if it happens, drop

10   dramatically.  But, we'll -- we're getting way ahead of

11   ourselves in that, so we'll deal with that when it arises.

12          Having said all that, I am happy to approve the

13   fees as -- well, let's say, I'm willing to approve the fees

14   as modified and I have no issues or questions in connection

15   with the fee committee's fees either.  So I'll approve them

16   in the amount sought, which are also fixed fee amounts but I

17   know that they're very busy, so I'm not concerned about the

18   fixed fees involved in that -- in those instances. So,

19   that's that.  And I'll await the order and the certification

20   and have signed the 503 order.

21          So can we turn --

22          MR. GITLIN:  Thank you, Your Honor.

23          THE COURT:  -- back to DDS?

24          MR. MADRON:  Your Honor, again for the record,

25   Jason Madron of Richards, Layton & Finger.

1            Turning back to the Data Systems and Solution, LLC

2    cure matter, which is Agenda Item 11, at least as of when I

3    walked over to the lectern, I had not received confirmation

4    that the documents had been signed.  However, I would

5    propose to read the following into the record, which is a

6    slight tweak on what we had previously agreed with the

7    parties.  I think that it, hopefully, should be sufficient

8    to get to the same place.  So --

9            THE COURT:  Any objection to that, sir?

10            MR. EDELMAN:  Not at all.

11            THE COURT:  Do -- okay.  You may proceed.

12            MR. MADRON:  Thank you, Your Honor.  So the

13    agreement of the parties being read into the record is as

14    follows:

15            First, that the parties will shortly execute a

16    supplemental agreement which amends the current agreement

17    between DS&S and Luminant.

18            Two, by tomorrow DS&S will file a request for

19    payment of an administrative claim in the approximate amount

20    of $4.1 million.

21            Three, subject to DS&S filing that request, the T-

22    side debtors, or reorganized T-side debtors will make a $2

23    million payment on the administrative claim, on or prior to

24    November 2nd, 2016 with the remainder of approximately $2.1

25    million being paid pursuant to the schedule and terms set

1   forth in the amended agreements.

2           And finally, that the T-side debtors, stated on

3   the record, which I'm authorized and hereby doing, that the

4   amended agreements between DS&S and Luminant, as amended by

5   the executed supplemental agreement, are irrevocably being

6   assuming and assigned to TEXCP Company, LLC an affiliate of

7   Luminant who will own and operate the Comanche Peak Nuclear

8   Power Plant and will be DS&S's counterparty under the

9   agreements.

10          With that, Your Honor, assuming that opposing

11  counsel is satisfied, that should fully and finally resolve

12  the DS&S cure objection, which was the last remaining extant

13  T-side cure objection.

14          THE COURT:  Any comment?

15          MR. EDELMAN:  This is Michael Edelman for DS&S

16  from Vedder Price.

17          The recitation was correct.  I understand that the

18  parties -- that one signature has been transferred, so the

19  parties are momentarily executing the supplement that amends

20  the agreement.

21          THE COURT:  Thank you.  And I apologize, I said

22  DDS earlier, and not DSS, so I apologize.

23          This raises a point and maybe one for

24  clarification, just so the records clear, since you're

25  making representations about agreements by reorganized TCEH.

1    So does Kirkland and Richards continue to represent

2    reorganized TCEH?

3              MR. MADRON:  Yes, Your Honor, we do in the Chapter

4    11 cases.

5              THE COURT:  Okay.  Kirkland as well?

6              MS. YENAMANDRA:  Yes, Your Honor.

7              THE COURT:  All right. Very good.

8              All right. I'll accept that and I don't think you

9    actually require me to do anything, which is the best kind

10   of resolution.

11             MR. MADRON:  That's correct, Your Honor.  Nothing

12   -- no Court action is required.

13             THE COURT:  Okay.  Great.  Anything else for

14   today?

15             MR. MADRON:  That is all, Your Honor.

16             THE COURT:  All right.

17             MR. MADRON:  We will see Your Honor on November

18   the 8th.

19             THE COURT:  All right. See you then.  We're

20   adjourned.

21             MR. MADRON:  Thank you, Your Honor.

22

23

24                        * * * * *

25

Page 23

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5
     Sonya                    Digitally signed by Sonya Ledanski
                              Hyde
6                             DN: cn=Sonya Ledanski Hyde,
     Ledanski Hyde            o=Veritext, ou,
                              email=digital@veritext.com, c=US
7                             Date: 2016.10.27 16:37:15 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  October 27, 2016