## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| ENERGY FUTURE HOLDINGS CORP., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## UNDERTAKING FOR TCEH FIRST LIEN
## CREDITOR PLAN DISTRIBUTION ALLOCATION DISPUTE

Pursuant to the terms of the Order Establishing the Plan Reserve for TCEH First Lien Creditor Plan Distribution Allocation Dispute (D.I. 9718) (the "Order"),[2] each of the undersigned entities (each, an "Undertaking Party" and collectively, the "Undertaking Parties") provides this Undertaking for the sole benefit of the TCEH First Lien Notes Trustee with respect to 97.95% (the "Undertaking Percentage") of the Plan Distributions Holdback to the $110,881,473.51 (as of the Petition Date) Allowed TCEH First Lien Credit Agreement Claims (the "Claims") held, in the aggregate, by AEH (CB), L.P. and AP VII TXU (CS), LP (the "Holders of the Claims"):

1.      The Undertaking Parties (collectively, "Fund VII") certify and represent that as of the date hereof they and their related Fund VII investment vehicles under common control have a collective "net worth" (defined as assets in excess of current and long term debt obligations, or in the case of a financial manager, as assets under management) in excess of $2 billion.

---

[1] The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, for which the debtors have requested joint administration, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Order.

2.      Promptly upon the entry of an order by a court of competent jurisdiction that directs the reversal of the Allocation Order, or has the effect of reversing the finding and conclusion in the Allocation Order that the Petition Date Allocation Method (as defined in the Allocation Order) is the appropriate method for distributing the Plan Distributions and determines that the Plan Distributions are to be allocated among the TCEH First Lien Creditors pursuant to the Postpetition Interest Allocation Method (as defined in the Allocation Order) (a "Reversal Order"), Reorganized TCEH shall provide written notice of such Reversal Order (a "Reversal Order Notice") to each Undertaking Party via facsimile and overnight delivery service at the address listed below in the signature block. The Reversal Order Notice shall include all necessary instructions for compliance with the Reversal Order.

3.      The Undertaking Parties hereby jointly and severally agree that, within 12 Business Days of delivery of the Reversal Order Notice, they or one or more of their affiliates shall cause each of the Holders of the Claims to deposit to Escrow, in accordance with the instructions provided in the Reversal Order Notice:  (a) with respect to the Reorganized TCEH Common Stock portion of the Plan Distributions Holdback distributed to the Holders of the Claims ("TCEH Stock Holdback"), either (i) their Undertaking Percentage of the TCEH Stock Holdback; **OR** (ii) if the Holders of the Claims or the Undertaking Parties have sold the TCEH Stock Holdback, a cash amount representing the aggregate price at which their Undertaking Percentage of the TCEH Stock Holdback was so sold;[3] **AND** (b) with respect to the other Plan Distributions Holdback received by the Holders of the Claims (the "Non-Stock Holdback"), either (X) their Undertaking Percentage of the Non-Stock Holdback, **OR** (Y) a cash amount representing the product of (i) their Undertaking Percentage times (ii) the Holdback Percentage

---

[3] Each Undertaking Party shall elect the form (i.e., cash or in-kind) in which it undertakes to return its Undertaking Percentage of Plan Distributions Holdback that was distributed in stock form.

times (iii) the Allowed amount of the Claims times (iv) the Non-Stock Distribution Value pursuant to the Order, regardless of whether such Holders of the Claims or Undertaking Parties retain or have transferred all or any portion of the Non-Stock Holdback, **OR** (Z) if the Holders of the Claims or the Undertaking Parties have sold the Non-Stock Holdback to an unaffiliated party or at a market value (if there is an established trading price for this consideration at the time of sale), a cash amount representing the aggregate price at which their Undertaking Percentage of the Non-Stock Holdback has been sold and additional cash (if any) received by the Holders of the Claims or the Undertaking Parties with respect to their Undertaking Percentage of the Non-Stock Holdback.

4.      The Undertaking Parties, jointly and severally, for so long as they have not fully complied with Paragraph 3 above within the time required hereby (i) consent to entry by the Court of a money judgment against them in an amount up to the amount with respect to which the Undertaking Parties have an obligation pursuant to Paragraph 3 above but which has not been returned to Escrow (or another account as may be directed by a court of competent jurisdiction) pursuant to Paragraph 3 above, (ii) waive any and all "mere conduit" and other defenses that they might otherwise be able to raise in proceedings to obtain or enforce such a judgment or any other proceedings regarding the enforcement of the Order, and (iii) agrees, from and after entry of a money judgment against them pursuant to Paragraph 4(i), not to oppose any party in interest from seeking to enforce such judgment until satisfied in full and to pay the costs and reasonable attorneys' fees incurred by such party in connection with enforcing such judgment; provided, however, that nothing herein shall affect any Undertaking Party's right to contest whether the conditions of Paragraph 2 have been satisfied.

5.     The TCEH First Lien Notes Trustee shall have no obligation to take any action or pursue any remedy in connection with any Undertaking Party's breach of this Undertaking absent receiving a direction and an indemnity in accordance with the terms of the First Lien Notes Indenture that is satisfactory to the TCEH First Lien Notes Trustee in its sole discretion.

6.     Each Undertaking Party shall take reasonable actions to ensure that its representations in this Undertaking continue to be accurate and complete, and that it is able to satisfy the obligations it has assumed in accordance with this Undertaking.  Each Undertaking Party's obligations under this Undertaking shall terminate upon compliance with the TCEH First Lien Creditor Plan Distribution Allocation Order (as defined in the Plan) or by Court order.

7.     If at any time while this Undertaking remains outstanding, any Undertaking Party's representations in this Undertaking cease to be accurate or complete in any material respect, such Undertaking Party shall be required to satisfy its obligations under Paragraphs 2 and 3 above as if a Reversal Order had been entered.  Within three (3) business days of any of the following, such Undertaking Party shall provide written notice to the TCEH First Lien Notes Trustee, which notice shall be deemed effective on the date sent, via overnight delivery service, to counsel for the TCEH First Lien Notes Trustee as set forth below:

a.  The representations in this Undertaking by such Undertaking Party are or will imminently become materially inaccurate and incomplete, whereby the notice shall state with particularity the inaccuracy or incompleteness;

b.  A resolution of the board of directors or decision by or on behalf of equivalent authorized decision-making body or individual(s) to execute an agreement providing for, take or commence any legal or administrative act or proceeding to execute or enter into any voluntary merger, acquisition, dissolution, winding up,

liquidation by such Undertaking Party; provided, that nothing in this paragraph 7(b) shall require such Undertaking Party to make any disclosure prohibited under applicable law;

c.  Such Undertaking Party shall become aware that it is the subject of any involuntary merger, acquisition, dissolution, winding up, liquidation or other similar event; and

d.  Any change to the address or other information set forth by such Undertaking Party in the signature block of this Undertaking.

8.      In the event that notice to any Undertaking Party is required, including without limitation in the event of the entry of a Reversal Order, such notice shall be deemed effective on the date sent, via overnight delivery service, to the applicable Undertaking Party at the address listed below in the signature block.

9.      Each Undertaking Party hereby submits to the jurisdiction of the Bankruptcy Court for the District of Delaware for the resolution of any disputes arising as a result of this Undertaking.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

[SIGNATURE PAGE TO UNDERTAKING]

Date: October 28, 2016

_____
Undertaking Party: Apollo Investment Fund VII,
L.P.
By:       Apollo Advisors VII, L.P., its General
Partner
By:       Apollo Capital Management VII, LLC, its
General Partner
By:       _____
          Christopher R. Gruszczynski, Vice
President
          (212) 515-3200

c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, New Castle County, Delaware 19808
ADDRESS FOR NOTICE AND SERVICE OF
PROCESS

_____
Undertaking Party: Apollo Overseas Partners
(Delaware) VII, L.P.
By:       Apollo Advisors VII, L.P., its General
Partner
By:       Apollo Capital Management VII, LLC, its
General Partner
By:       _____
          Christopher R. Gruszczynski, Vice
President
          (212) 515-3200

c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, New Castle County, Delaware 19808
ADDRESS FOR NOTICE AND SERVICE OF
PROCESS

_____

Undertaking Party: Apollo Overseas Partners
(Delaware 892) VII, L.P.
By:        Apollo Advisors VII, L.P., its General
Partner
By:        Apollo Capital Management VII, LLC, its
General Partner
By:        _____
            Christopher R. Gruszczynski, Vice
President
            (212) 515-3200

c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, New Castle County, Delaware 19808
ADDRESS FOR NOTICE AND SERVICE OF
PROCESS


_____
Undertaking Party: Apollo Overseas Partners VII,
L.P.
By:        Apollo Advisors VII, L.P., its Managing
General Partner
By:        Apollo Capital Management VII, LLC, its
General Partner
By:        _____
            Christopher R. Gruszczynski, Vice
President
            (212) 515-3200

c/o Walkers SPV Limited
Walker House, Mary Street, George Town,
Grand Cayman KY1-9002, Cayman Islands
ADDRESS FOR NOTICE AND SERVICE OF
PROCESS


_____
Undertaking Party: Apollo Investment Fund (PB)
VII, L.P.
By:        Apollo Advisors VII, L.P., its General
Partner
By:        Apollo Capital Management VII, LLC, its
General Partner
By:        _____

Christopher R. Gruszczynski, Vice President
(212) 515-3200

c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, New Castle County, Delaware 19808
ADDRESS FOR NOTICE AND SERVICE OF
PROCESS