## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| _____ | ) | Chapter 11 |
| In re | ) |  |
|  | ) | Case No. 14-10979 (CSS) |
| ENERGY FUTURE HOLDINGS CORP., *et al.,*[1] | ) |  |
|  | ) | (Jointly Administered) |
| Debtors. | ) |  |
|  | ) | Re: Case Nos. 14-10992, 14-10990, |
| _____ | ) | 14-11039, and 14-11012 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF SHIRLEY FENICLE,
DAVID WILLIAM FAHY, JOHN H. JONES, AND DAVID HEINZMANN
TO DISMISS CHAPTER 11 PETITIONS OF ASBESTOS DEBTORS EECI, INC.,
EEC HOLDINGS, INC., LSGT SACROC, INC., AND LSGT GAS CO. LLC[2]
PURSUANT TO 11 U.S.C. § 1112(B)**

*CONFIDENTIAL—FILED UNDER TEMPORARY SEAL*
**SUBJECT TO ENERGY FUTURE HOLDINGS
PROTECTIVE ORDER**

**[REDACTED]**

---

[1]   The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

[2]   EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT SACROC, Inc. (Case No. 14-11012), and LSGT Gas Co. LLC (Case No. 14-11039).

# TABLE OF CONTENTS

Background ........................................................................................................................2

   The Asbestos Debtors ................................................................................................. 2

   The Movants ............................................................................................................... 6

   The Plan ...................................................................................................................... 8

Argument .........................................................................................................................8

I.    The Asbestos Debtors' cases must be dismissed as not filed in good faith because they have not demonstrated any financial distress. ........................................................................11

II.   The Asbestos Debtors' cases must be dismissed because they were not filed to maximize property of the estates for their creditors, but, rather, to discharge asbestos claims.............13

Conclusion ......................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 15375 Mem'l Corp. v. Bepco, L.P.*,
  589 F.3d 605 (3d Cir. 2009)............................................................................ *passim*

*In re Antelope Techs., Inc.*,
  431 F. App'x 272 (5th Cir. 2011) ...............................................................9, 14

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 LaSalle St. P'ship*,
  526 U.S. 434 (1999).....................................................................................10, 17

*Dunes Hotel Assocs. v. Hyatt Corp.*,
  245 B.R. 492 (D.S.C. 2000)........................................................................14, 17

*In re Energy Future Holdings Corp.*,
  522 B.R. 520 (Bankr. D. Del. 2015) .........................................................1, 2, 4

*In re G-I Holdings, Inc.*,
  385 F.3d 313 (3d Cir. 2004)..............................................................................17

*In re HBA East, Inc.*,
  87 B.R. 248 (Bankr. E.D.N.Y. 1988)..............................................................14

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108 (3d Cir. 2004)........................................................9, 11, 13, 16

*Investors Grp., LLC v. Pottorff*,
  518 B.R. 380 (N.D. Tex. 2014)........................................................................14

*In re JER/Jameson Mezz Borrower II, LLC*,
  461 B.R. 293 (Bankr. D. Del. 2011) ...........................................................9, 16

*In re Liberate Techs.*,
  314 B.R. 206 (Bankr. N.D. Cal. 2004) ..............................................12, 13, 15, 16

*Marsch v. Marsch*,
  36 F.3d 825 (9th Cir. 1994) .............................................................................14

*In re PPI Enters. (U.S.), Inc.*,
  324 F.3d 197 (3d. Cir. 2003)............................................................................13

*In re Penn Cent. Transp. Co.*,
  458 F. Supp. 1346 (E.D. Pa. 1978) ................................................................17

*Pepper v. Litton*,
    308 U.S. 295 (1939) ........................................................................................................... 10

*In re S. Canaan Cellular Invs., LLC*,
    420 B.R. 625 (E.D. Pa. 2009) ........................................................................................... 14

*In re SGL Carbon Corp.*,
    200 F.3d 154 (3d Cir. 1999) ..................................................................................... *passim*

Movants Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann (the "**Movants**") bring this motion to dismiss the Chapter 11 cases of Debtors EECI, Inc.,[3] EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC (the "**Asbestos Debtors**"), on the ground that the petitions were not filed in good faith.

The Asbestos Debtors did not file the petitions for a valid reorganizational purpose. ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████ Under controlling Third Circuit law, this is not a proper reorganization purpose.  And it is inimical to the fundamental principle that bankruptcy must not be used to obtain a windfall at the expense of creditors.

The Asbestos Debtors' cases must be dismissed.

---

[3]     EECI was formerly known as EBASCO, "which was at various times affiliated with Boise Cascade, Halliburton and Raytheon Corporation (all of which have had asbestos-related personal injury liability)."  *In re Energy Future Holdings Corp.* ("***In re EFH Corp.***"), 522 B.R. 520, 524 (Bankr. D. Del. 2015).  EBASCO built, serviced, maintained, and repaired power plants nationwide.

## BACKGROUND

Energy Future Holdings Corp. ("**EFH Corp.**") and 69 of its direct and indirect subsidiaries (the "**Debtors**"), including EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC (together, the "**Asbestos Debtors**"),[4] filed petitions for reorganization under Chapter 11 on April 29, 2014 (the "**Petition Date**"). *See* Voluntary Petition, Apr. 29, 2014. The Debtors' bankruptcies were consolidated "for procedural purposes only" and have been administered jointly, pursuant to Federal Rule of Bankruptcy Procedure 1015 and Local Bankruptcy Rule 1015-1. *See* Interim Order Directing Joint Administration of the Debtors' Chapter 11 Cases ¶ 2, May 1, 2014, D.I. 287. The bankruptcy cases are not substantively consolidated. *Id.* ¶ 5. Each of the Asbestos Debtors has a separate bankruptcy case.[5]

### *The Asbestos Debtors*

The Asbestos Debtors were in the business of building, servicing, maintaining, and repairing power plants, or are successors to entities that were engaged in that business. *See In re EFH Corp.*, 522 B.R. at 523. Asbestos-containing insulation was installed throughout the power plants. *Id.* at 524. Insulators, pipefitters, electricians, welders, and other workers disturbed the insulation by drilling or cutting into it on a regular basis, releasing toxic asbestos fibers, which became airborne and were inhaled by everyone working in the plants. *Id.* As this Court has found, anyone working in such power plants was inevitably exposed to asbestos: "[a]sbestos exposure was virtually unavoidable in power plants built prior to 1980." *Id.*

---

[4]    EECI, Inc., EEC Holdings, Inc., and LSGT SACROC, Inc. are all subsidiaries of LSGT Gas Company, LLC. LSGT Gas Company, LLC, in turn, is a subsidiary of Debtor EFH Corp.

[5]    EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).

The Asbestos Debtors had been sued pre-petition for asbestos-related injuries associated with the Asbestos Debtors' electricity generation activities and discontinued gas distribution businesses.  Debtors' Reply in Support of Bar Date with Respect to Asbestos Claims ("**Debtors' Bar Date Reply**") ¶ 6, Aug. 11, 2014, D.I. 1804; Hr'g Transcript, 71:5-8, Aug. 13, 2014 (attached as **Ex. 2**); Declaration of Paul Keglevic, Executive Vice President, Chief Financial Officer, and Co-Chief Restructuring Officer of Energy Future Holdings Corp., *et al.*, in Support of First Day Motions ¶ 52, Apr. 29, 2014, D.I. 98.



They have assets of at least $990 million in admittedly valid inter-company claims,[7] which are reinstated by the Plan.

---

[6] In connection with the confirmation of the now-defunct previous plan, this Court observed that reinstatement of the Asbestos Debtors' $990 million in inter-company claims "ensures that a reorganized EFH will continue to fund asbestos-related expenses that may arise at the Asbestos Debtor[s]."  Hr'g Transcript, 57:13-15, Dec. 3, 2015 (attached as **Ex. 8**).  The court noted also that "reorganized EFH will be a solvent entity . . . ."  *Id.* at 61:23.

*See* Plan Art. III(B)(13).  The Debtors have estimated that their annual costs for resolving

asbestos claims are approximately $3 million each year,[8] 

---

7

8        *See In re EFH Corp.*, 522 B.R. at 525 ("The Debtors estimate that their asbestos expenses
average up to $3 million annually."). The Debtors have maintained throughout these bankruptcy
cases that their asbestos liabilities are not material.  Debtors' Bar Date Reply ¶ 6.  *See In re EFH
Corp.*, 522 B.R. at 525 ("The Debtors believe that litigation and settlement expenses incurred in
connection with asbestos claims against the debtors are not material."); *id.* at n.8 (citing Hr'g Tr.
71:14-16, Aug. 13, 2014 (comparing $3 million estimated annual expenses with estimated $36
billion in assets, $49 billion in liabilities, including funded indebtedness, and $5.9 billion in
consolidated annual revenues for the year ending December 31, 2013)).

9

10



The officers and directors of the Asbestos Debtors are officers and employees of their parent, Debtor EFH Corp., or other affiliates.



### The Movants

Ms. Fenicle and Mr. Fahy filed timely proofs of claim in these cases.  Ms. Fenicle is the successor-in-interest to the estate of George Fenicle, a mesothelioma victim, and also was exposed to Debtors' asbestos brought home by her husband on his clothing.  Mr. Fahy is a mesothelioma claimant.  Ms. Fenicle and Mr. Fahy are members of the "E-Side" Unsecured Creditors' Committee, which was appointed to represent the interests of the unsecured creditors of Debtors EFH Corp., EFIH Corp., EFIH Finance, and EECI, Inc. (the "**E-Side Committee**").  *See* Notice of Appointment of Committee of Unsecured Creditors, Oct. 27, 2014, D.I. 2570; *see*



*also* Second Amended Notice of Appointment of Committee of Unsecured Creditors, Jan. 30, 2015, D.I. 3403.[16]

At various times during the period from 1963 through 1965, Mr. Jones was exposed to the Debtors' asbestos while working as an electrician for independent contractors at the Hanford Nuclear Plant in Washington State, which is on the EECI site list filed in the Debtors' bankruptcy cases.  *See* Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for New Plan ¶ 2, Aug. 1, 2016, D.I. 9165.  Mr. Jones was diagnosed with metastatic malignant mesothelioma on December 14, 2015 (*id.* ¶ 3), which was the bar date for filing proofs of claim in the Debtors' bankruptcy cases—and one week after entry of the Confirmation Order.  Mr. Jones did not receive notice of and was unaware of the bar date, and he did not file a proof of claim in these bankruptcy cases.  *Id.*.

Mr. Heinzmann has claims against the Debtors for personal injury arising from his exposure to asbestos at the Mountain Creek Power Plant in Dallas, Texas, the Stryker Creek Power Plant in Jacksonville, Texas, and the FPL Power Plant in Ft. Myers, Florida.  *See* Notice of Intent to Participate in Disclosure Statement Proceedings and Confirmation Proceedings for New Plan ¶ 2, Nov. 3, 2016, D.I. 10030.  All three power plants are on the EECI site list provided by Debtors in these bankruptcies.  *Id.* ¶ 2.  Mr. Heinzmann was diagnosed with mesothelioma on July 15, 2016.  *Id.*  He was not notified of, and was unaware of, the bar date in these cases, and did not file a proof of claim.  *Id.*

---

[16]    No estate fiduciary was appointed to represent the interests of unsecured creditors of EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc.  Moreover, the Court denied a motion to appoint a future claimants' representative to protect the interests of Unmanifested Claimants.  *See* Order Denying Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative, Aug. 11, 2015, D.I. 5265.

***The Plan***

Under the Plan, asbestos-related claims against the Asbestos Debtors (Class A3 claims) for which proofs of claim were timely filed would be paid in full or reinstated. *See* Plan at Art. III(B)(3). Asbestos claims for which proofs of claim were not timely filed would be discharged, including claims of persons who, post-confirmation, have suffered or will suffer cognizable injuries caused by pre-petition exposure to the Debtors' asbestos-containing products ("**Unmanifested Claimants**"). *See* Plan at Art VII(F). Thus, Unmanifested Asbestos Claims for which no proofs of claim were filed would be discharged—including the claims of those who are unaware that they were exposed to the Debtors' asbestos, the claims of persons who will suffer loss when a family members succumbs to an asbestos-related illness caused by pre-petition exposure, and even the claims of future spouses or unborn children of those persons.

The Plan provides that the Asbestos Debtors would remain separate corporate entities, wholly-owned by reorganized EFH Corp. which, in turn, will be wholly owned by NextEra, Inc. All EFH Debtor Intercompany Claims (Class A3), and interests in the EFH Debtors other than EFH Corp. held by the Asbestos Debtors would be reinstated. *See* Plan Art. III(B)(15). All General Legacy Unsecured Claims, including Asbestos Claims (Class A3) against the Asbestos Debtors also would be reinstated. *See* Plan Art. III(B)(3). Thus, the only practical effect the Plan would have on the Asbestos Debtors is that it would allow them to shed their future liabilities for Unmanifested Asbestos Claims, without compensation.

## ARGUMENT

In the Third Circuit, "Chapter 11 bankruptcy petitions are 'subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith.'" *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 (3d Cir. 2009) (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d Cir. 2004)). "The burden is on the bankruptcy petitioner to establish [good faith]." *Id.*; *see also*

*In re JER/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298 (Bankr. D. Del. 2011).  Whether

the debtor has demonstrated good faith is a matter of law.  *See 15375 Mem'l Corp.*, 589 F.3d at

616 ("[W]hether the basic and inferred facts of a case support the conclusion of good faith in the

filing of a Chapter 11 bankruptcy petition, *i.e.*, whether the application of law to fact was proper,

is . . . an ultimate fact and . . . is essentially, a conclusion of law.").[17]

 The Third Circuit has instructed that a Chapter 11 petition is not filed in good faith unless

the debtor is in "some degree of financial distress."  *Integrated Telecom*, 384 F.3d at 121.

Moreover, a petition "is not filed in good faith unless it serves a valid reorganizational purpose,"

and is not filed "merely to obtain tactical litigation advantages."  *In re SGL Carbon Corp.*, 200

F.3d 154, 165 (3d Cir. 1999).  *See also 15375 Mem'l Corp.*, 589 F.3d at 618; *Integrated

Telecom*, 384 F.3d at 119-20.  "The Supreme Court has identified two of the basic purposes of

Chapter 11 as (1) 'preserving going concerns' and (2) 'maximizing property available to satisfy

creditors.'"  *Integrated Telecom*, 384 F.3d at 119 (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n

v. 203 LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)).  A debtor can demonstrate a valid

bankruptcy purpose by showing that the petition "preserve[s] a going concern" or that the

petition "maximiz[es] the value of the debtor's estate," by "add[ing] or preserv[ing] value that

would otherwise be unavailable to creditors outside of bankruptcy."  *15375 Mem'l Corp.*, 589

F.3d at 619-20 (quoting *Integrated Telecom*, 384 F.3d at 120); *see also SGL Carbon*, 200 F.3d at

165 (same).

---

[17] There is no time limit for a motion to dismiss pursuant to section 1112(b); such a motion may be granted even after a plan has been substantially consummated.  *See In re Antelope Techs., Inc.*, 431 F. App'x 272, 274 (5th Cir. 2011) ("Although the plan was substantially consummated, the bankruptcy court found the petition was filed for an improper purpose.  There is a compelling interest in refusing to apply equitable mootness when the petition was not filed in good faith.").

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████   *See 15375 Mem'l Corp.*, 589 F.3d at 619 ("The Debtors . . . have no going concerns to preserve—no employees, offices, or business other than the handling of litigation.").  Nor can they demonstrate that their bankruptcy petitions will maximize the value of their estates.  *See id.* at 620.

Indeed, the Asbestos Debtors' only apparent purpose for seeking to maintain Chapter 11 protection is to cleanse themselves of future liabilities, thus unfairly and improperly benefitting their controlling parent, EFH Corp., at the expense of their asbestos victims, in direct contravention of the fundamental principle of bankruptcy that creditors be paid before stockholders retain equity.  *Cf. Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 444 (1999) (noting "the danger inherent in any reorganization plan proposed by a debtor . . . that the plan will simply turn out to be too good a deal for the debtor's owners.").  The good faith requirement is "designed to fulfill the promise that application of the bankruptcy laws in pursuit of the benefits of reorganization will not operate to create injustice."  Collier on Bankruptcy 7-1112[3]; *see also Pepper v. Litton*, 308 U.S. 295, 307-08 (1939) (a bankruptcy court, "[i]n the exercise of its equitable jurisdiction . . . has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate.").  This Court must exercise its equitable powers to prevent such an injustice by dismissing the Asbestos Debtors' cases.

I.       ***The Asbestos Debtors' cases must be dismissed as not filed in good faith because they have not demonstrated any financial distress.***

The Bankruptcy Code does not require that a debtor be insolvent in order to qualify for bankruptcy protection. *See SGL Carbon*, 200 F.3d at 163-64. But this "does not mean that all solvent firms should have unfettered access to Chapter 11." *Integrated Telecom*, 384 F.3d at 122. Rather, as the Third Circuit has instructed, "Congress intended Chapter 11 to be resorted to by business entities which are experiencing some type of financial difficulty." *Id.* at 121 (internal citation omitted). The good faith requirement "prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way." *Id.* at 119 (quoting *SGL Carbon*, 200 F.3d at 161-62).

The Third Circuit has emphasized that the requirement that a bankruptcy petition be filed in good faith "necessarily requires some degree of financial distress on the part of a debtor." *Id.* at 121 (affirming dismissal of petition as not having been filed in good faith where the debtor was "highly solvent," and had never been in "financial distress"). If a debtor's plan does not have a rehabilitative purpose, the Code provisions that are "designed to accomplish the reorganization objective"—including provisions for the discharge of claims—would "become destructive of the legitimate rights and interests of creditors, the intended beneficiaries." *Id.* at 119.

As the Third Circuit observed in *SGL Carbon*:

Chapter 11 vests petitioners with considerable powers—the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.—that can impose significant hardship on particular creditors. When financially troubled petitioners seek a chance to remain in business, the exercise of those powers is justified. But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code. . . . Courts, therefore, have consistently dismissed Chapter 11 petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11. [I]f a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed.

*SGL Carbon*, 200 F.3d at 166.

In that case, the debtor, SGL Carbon, was a defendant in several civil and criminal antitrust actions. *Id.* at 163. According to its financial disclosure statements, SGL Carbon's assets exceeded its liabilities, and there was no evidence that it had any difficult satisfying its debts as they came due. *Id.* at 166. Moreover, the court noted, the pending litigation was not causing "any significant managerial distraction," unlike cases such as *Johns Manville*, where the debtors faced the prospect "of tens of thousands" of law suits in the future. *Id.* at 164.

Where the debtor is solvent, the court may invoke bankruptcy protection in good faith only if doing so is necessary to avoid "piecemeal liquidation that destroys the going concern value of an enterprise." *In re Liberate Techs.*, 314 B.R. 206, 212 (Bankr. N.D. Cal. 2004) (citing *SGL Carbon*). There, petitioner Liberate had "cash well in excess of its liabilities," but was suffering operational losses and had several pending lawsuits. *Id.* at 209. Liberate argued that its petition was filed in good faith because, it asserted, the pending litigation was interfering with its ability to sell its assets, and it wanted to reorganize so that the assets could be sold free and clear. *Id.* The *Liberate* court rejected the argument, finding that Liberate was not facing "a true flood of litigation." *Id.* at 213. Liberate's real purpose for seeking Chapter 11 protection, the court held, was that "bankruptcy offered enticing advantages in dealing with that litigation." *Id.* at 214. Thus, the court dismissed the case as not having been filed in good faith.



████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

II.    ***The Asbestos Debtors' cases must be dismissed because they were not filed to maximize property of the estates for their creditors, but, rather, to discharge asbestos claims.***

An insolvent debtor may file under Chapter 11 in order to maximize the value of its estate, and at the same time take advantage of the provisions of the Bankruptcy Code.[18]  But where, as here, a solvent debtor that has already ceased doing business files bankruptcy with no intention to reorganize as a going concern, and "with no reasonable expectation that Chapter 11 proceedings will maximize the value of the debtor's estate for creditors," but, rather, in order to take advantage of the "singular provisions" of the Bankruptcy Code, the petition is not filed in good faith, and must be dismissed.  *Integrated Telecom*, 384 F.3d at 112; *see also 15375 Mem'l Corp.*, 589 F.3d at 618-19; *SGL Carbon*, 200 F.3d at 163-69.  "Chapter 11 was designed to give those teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liabilities."  *SGL Carbon*, 200 F.3d at 166 (internal citation omitted).

Thus, in *SGL Carbon*, the Third Circuit found that the filing was in bad faith because the debtor was not in financial distress and had no need to reorganize, and the bankruptcy filing was a litigation tactic designed to frustrate prosecution of pending antitrust claims.  *SGL Carbon*, 200 F.3d at 158.  Under its proposed reorganization plan, all of SGL Carbon's creditors—including its parent—were to be paid in full, except for the antitrust plaintiffs, which, the court stated,

---

[18]    *See, e.g.*, *In re PPI Enters. (U.S.), Inc.*, 324 F.3d 197, 211-12 (3d. Cir. 2003) (not bad faith for insolvent debtor to file petition in order to cap landlord's claim pursuant to § 502(b)(6)); *Integrated Telecom*, 384 F.3d at 123 (discussing *PPI*).

suggested that SGL Carbon's true purpose for filing was not to reorganize, but, rather, "to put pressure on antitrust plaintiffs to accept the company's settlement terms." *See id.* at 167.  Ruling that the case should be dismissed as filed in bad faith, the court observed that "the Bankruptcy Code presents an inviting safe harbor" for companies seeking ways to "rapidly conclude litigation" and "maintain access to . . . capital markets." *Id.* at 169.  The court cautioned that the "possibility of abuse" of the safe harbor must be guarded against, in order to "protect the integrity of the bankruptcy system and the rights of all involved in such proceedings." *Id.* at 169.[19]

The cases at bar present a textbook example of the kind of abuse of the bankruptcy process that the Third Circuit cautioned against in *SGL Carbon*: the Asbestos Debtors—and their controlling parent, EFH Corp.—are seeking to "rapidly conclude litigation" and "maintain access to . . . capital markets."  *SGL Carbon*, 200 F.3d at 169.  The Asbestos Debtors' filing for bankruptcy did not maximize the property available to satisfy creditors:  they have not identified

---

[19]    Numerous cases have dismissed bankruptcy cases as filed in bad faith on similar grounds. *See Marsch v. Marsch*, 36 F.3d 825, 827-29 (9th Cir. 1994) (a petition was dismissed as filed in bad faith where the debtor had sufficient financial means to pay a judgment but instead filed a chapter 11 petition for the purposes of invoking the automatic stay as a replacement for a supercedeas bond for an appeal of that judgment); *Dunes Hotel Assocs. v. Hyatt Corp.*, 245 B.R. 492, 511-12 (D.S.C. 2000) (dismissing a bankruptcy upon a finding that the debtor sought the protections of bankruptcy only as a tactic in litigation); *In re Antelope Techs., Inc.*, 431 F. App'x. 272, 275 (5th Cir. 2011) (affirming dismissal of bankruptcy case, finding "the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative [litigation]"); *Investors Grp., LLC v. Pottorff*, 518 B.R. 380, 384 (N.D. Tex. 2014) (affirming dismissal of bankruptcy case, finding that "[a]fter conducting a thorough hearing, the bankruptcy court concluded that the primary purpose for filing the bankruptcy petition was to gain an advantage in the derivative lawsuit."); *In re S. Canaan Cellular Invs., LLC*, 420 B.R. 625, 631 (E.D. Pa. 2009) ("[I]f the sole purpose of the bankruptcy filing is to obtain a tactical litigation advantage, the petition is considered to have fallen outside the legitimate scope of the bankruptcy laws and may properly be dismissed."); *In re HBA East, Inc.*, 87 B.R. 248, 259-60 (Bankr. E.D.N.Y. 1988) ("As a general rule where, as here, the timing of the filing of a Chapter 11 petition is such that there can be no doubt that the primary, if not sole, purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.").

any "assets that [were] threatened outside of bankruptcy . . . but that could be preserved or maximized in an orderly liquidation [or reorganization] under Chapter 11." *15375 Mem'l Corp.*, 589 F.3d at 621-22.    Rather than maximizing the value of the estates for the benefit of the creditors, the only impact of the bankruptcies would be to reduce creditors' recoveries by discharging the claims of unselfconscious, unaware, and unrepresented Unmanifested Asbestos Claimants.

The desire to discharge claims is not a valid justification for a Chapter 11 filing.    Rather, a discharge of claims is merely "a consequential benefit of an otherwise good faith filing." *15375 Mem'l Corp.*, 589 F.3d at 620.    The "'desire to take advantage of the protections of the Code,' such as the automatic stay of litigation outside of bankruptcy,"—or the discharge of claims—"'cannot establish *good* faith as a matter of law' given 'the truism that every bankruptcy petition seeks some advantage offered in the Code [and that] any other rule would eviscerate any limitation that the good faith requirement places on Chapter 11 filings.'"    *Id.*; *see also id.* at 622 ("[W]e reiterate that the desire to take advantage of the protections of the Code cannot establish . . . *good* faith . . . so the establishment of a bar date for claims . . . does not evidence good faith.") (internal citations omitted)).    *See also Liberate*, 314 B.R. at 217 ("need for bankruptcy relief is not established by showing that debtor would benefit from the provisions of the Bankruptcy Code, where such benefit is not necessary to protect creditors or prevent liquidation").

By the same token, ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████    *Cf. Liberate*, 314 B.R. at 217 ("A company that . . . can clearly pay

---

[20]    Some courts have held that, when affiliated entities are in bankruptcy, the court should consider not just the circumstances of the individual debtor, but should consider the interests of

all creditors in full does not have a need for bankruptcy relief merely because it might be able to sell on better terms if it could use section 363(f) to sell the business free and clear of liens and claims.").  As the *Liberate* court observed, that a bidder would prefer to purchase assets free and clear of claims concerns only how much a debtor can return to its equity holders, and does not concern whether the debtor can pay its creditors. *Id.  See also Integrated Telecom*, 384 F.3d at 126 (debtor did not "offer any authority that the Code can be used to effectuate a liquidation that has no hope of maximizing the value of the company . . . but simply facilitates dissolution on terms favorable to equity interests."); *see also In re JER/Jameson*, 461 B.R. at 303 (holding that the debtor's desire to effect a sale was not a legitimate purpose because "the sale process contemplated in the bankruptcy case must be designed to realize some value that would not be available outside of bankruptcy" and "there is no evidence that the bankruptcy case will do that").

The Asbestos Debtors' directors and managers are officers and employees of their corporate parent, EFH Corp.  The Third Circuit has instructed that such "mixed allegiances" may prevent a debtor's decision-makers from adequately protecting the debtor's interests. *15375 Mem'l Corp.*, 589 F.3d at 624 (finding that the debtors' representative, who was also employed as an officer of the debtors' parents, was primarily concerned with protecting the debtors'

---

the entire group.  *See, e.g.*, *JER/Jameson*, 461 B.R. at 301 (considering the debtors "holistically").  The Third Circuit has not adopted that reasoning.  Nor would it alter the analysis here.  The discharge of asbestos claims are not crucial to, and have no practical impact on, EFH Corp.'s reorganization plan. If the Asbestos Debtors' cases were dismissed, Unmanifested Asbestos Claims would not be discharged,  ████████████████████████████████████ ████████████████████████████████████████████████████████  And the Debtors have maintained throughout these cases that the Asbestos Debtors would have sufficient assets to satisfy their asbestos liabilities even if no claims were discharged.  *See* Ex. 8 (Hr'g Transcript, Dec. 3, 2015), 57:12-15 (finding that reinstatement of the Asbestos Debtors' $990 million in inter-company claims "ensures that a reorganized EFH will continue to fund asbestos-related expenses that may arise at the Asbestos Debtor[s].")

parents, not the debtors; and that his "mixed allegiances prevented him from adequately protecting the Debtors' interests."). ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ As debtors-in-possession, the Asbestos Debtors owe fiduciary duties to their creditors. *See In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3d Cir. 2004) (quoting *In re Marvel Entertainment Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998) ("debtor-in-possession is a fiduciary of the creditors")). But throughout these cases, the Asbestos Debtors' representatives have been primarily concerned with protecting the interests of EFH, Corp., rather than the interests of the Asbestos Debtors and their creditors.

The Supreme Court has instructed that debtors and their insiders should not be permitted to "use the reorganization process to gain an unfair advantage," as they have done in this case. *203 N. LaSalle St. P'ship*, 526 U.S. 434, 444 (1999). "The bankruptcy laws are intended as a shield, not a sword." *In re Penn Cent. Transp. Co.*, 458 F. Supp. 1346, 1356 (E.D. Pa. 1978). The Asbestos Debtors, as solvent debtors-in-possession, cannot remain in Chapter 11 merely to pursue their efforts to discharge claims and obtain a windfall for themselves and their controlling parent at the expense of their creditors. *See Dunes Hotel Assocs.*, 245 B.R. at 506-07. Their petitions must be dismissed as not being filed in good faith.

## CONCLUSION

Movants respectfully submit that, for the foregoing reasons, the reorganization cases of the Asbestos Debtors should be dismissed with prejudice.


Dated: November 8, 2016
      Wilmington, Delaware     By:    */s/ Daniel K. Hogan*
                                    Daniel K. Hogan (DE Bar # 2814)
                                    **HOGAN♦McDANIEL**
                                    1311 Delaware Avenue

Wilmington, Delaware  19806
Telephone:  (302) 656-7540
Facsimile: (302) 656-7599
dkhogan@dkhogan.com

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann*

-and-

Leslie M. Kelleher (admitted *pro hac vice*)
Jeanna M. Koski (admitted *pro hac vice*)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, N.W.
Washington, DC 20005
Telephone: (202) 862-5000

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann*

-and-

Steven Kazan (admitted *pro hac vice*)
KAZAN MCCLAIN SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Telephone: (510) 302-1000
Facsimile: (510) 835-4913

*Counsel for Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle*

-and-

Ethan Early (admitted *pro hac vice*)
EARLY LUCARELLI SWEENEY & MEISENKOTHEN
265 Church Street, 11th Floor
New Haven, CT 06508-1866

18

Telephone: (203) 777-7799
Facsimile: (203) 785-1671

*Counsel for David William Fahy*

-and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM, LLC
8357 Main Street
Ellicott City, MD 21043-4603
Telephone (410) 750-7825
Facsimile (443) 583-0430
ruck@rucklawfirm.com

*Counsel for David Heinzmann*