# EXHIBIT A

**New Organizational Documents for Certain Reorganized EFH Debtor Subsidiaries and Reorganized EFIH**

This Exhibit A includes the following organizational documents:

- Third Amended and Restated Limited Liability Company Agreement of Energy Future Intermediate Holding Company LLC

- First Amendment to the Amended and Restated Limited Liability Company Agreement of LSGT Gas Company LLC

- Certificate of Amendment of LSGT Gas Company LLC

# THIRD AMENDED AND RESTATED
# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC

This Third Amended and Restated Limited Liability Company Agreement (this "Agreement") of Energy Future Intermediate Holding Company LLC (the "Company"), dated this ___ day of _____, 201_, is entered into by Energy Future Holdings Corp., a Texas corporation, as the sole member of the Company (the "Member"), for the purpose of governing the affairs of the Company.

WHEREAS, the Member entered into the Amended and Restated Limited Liability Company Agreement of the Company on July 8, 2008;

WHEREAS, the Member entered into the Second Amended and Restated Limited Liability Agreement of the Company on September 15, 2011 (the "Second Amended and Restated Agreement"); and

WHEREAS, this Agreement amends and restates the Second Amended and Restated Agreement in all respects, and constitutes the governing instrument of the Company.

## ARTICLE I

## LIMITED LIABILITY COMPANY

Section 1.1    *Name*.  The name of the limited liability company is Energy Future Intermediate Holding Company LLC.

Section 1.2    *Principal Business Office*.  The principal business office of the Company shall be located at 1601 Bryan Street, Dallas, Texas 75201, or such other location as may hereafter be determined by the Member.

Section 1.3    *Registered Office*.  The address of the registered agent of the Company in the State of Delaware is: Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE  19808. The Member may, in its sole and absolute discretion, change the registered agent to another Person who qualifies as a registered agent under the Act.

Section 1.4    *Registered Agent*.  The name of the registered agent of the Company for service of process on the Company in the State of Delaware is Corporation Service Company.

Section 1.5    *Foreign Qualifications*.  An officer of the Company shall execute, deliver and file any certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in any foreign jurisdiction in which the Company may wish to conduct business.

Section 1.6    *Purpose*.  The purpose of the Company is to engage in any lawful business or activity for which a limited liability company may be organized under the Delaware Limited Liability Company Act, as amended from time to time (the "Act").

1

Section 1.7   *Powers*.  The Company (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 1.6 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 1.8   *Capital Contributions*.   The Member has made certain capital contributions to the Company, and may make such other capital contributions to the Company as it may determine appropriate in its sole discretion.  The provisions of this Agreement, including this Section 1.8, are intended solely to benefit the Member and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member shall have no duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 1.9   *Allocation of Profits and Losses*.  The Company's profits and losses shall be allocated to the Member; provided, however, that no allocation of any loss to the Member shall create any obligation on the Member to make any capital contribution to the Company to offset such loss (or otherwise), the Member having no obligation to make any such capital contribution, as provided in Section 1.8 above.

Section 1.10   *Distributions*.  Distributions in any form, including cash or other assets, shall be made to the Member at the times and in the aggregate amounts determined by the Member.  Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to any Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law.

Section 1.11   *Other Business*.  The Member and any Affiliate of the Member may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others.  The Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

When used in this Agreement, "Affiliate" means, with respect to any individual, corporation, partnership, joint venture, limited liability company, limited liability partnership, association joint-stock company, trust, unincorporated organization, or other organization, whether or not a legal entity, or any governmental authority ("Person"), any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person, and "Control" means the possession, directly or indirectly, or the power to direct or cause the direction, of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise, "Controlling" and "Controlled" have correlative meanings.  Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

# ARTICLE II

# MANAGEMENT

Section 2.1    *Management of the Company*.

(a)    *Member Management*.  In accordance with Section 18-402 of the Act, management of the Company shall be vested in the Member.

(b)    *Management Rights and Authority*.  The Member shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise, possessed by members of a limited liability company under the laws of the State of Delaware to the extent such powers are consistent with the terms of this Agreement and are appropriate or useful in carrying out the purposes of the Company as set forth in this Agreement, including, without limitation, the power:

(i)    To borrow money and, as security therefor, to mortgage, pledge or otherwise encumber any and all assets of the Company, including the rights of the Company under any agreements;

(ii)    To cause to be paid all amounts due and payable by the Company to any Person and to collect all amounts due to the Company; and to make contributions to subsidiaries of the Company to be used to pay amounts due or to become due and payable by the subsidiaries;

(iii)    To employ or cause a subsidiary of the Company to employ such agents, employees, managers, accountants, attorneys, consultants and other Persons, necessary or appropriate to carry out the business and affairs of the Company or subsidiary, and to pay such fees, expenses, salaries, wages and other compensation to such Person as the Member shall determine;

(iv)    To pay, extend, renew, modify, adjust, submit to arbitration, prosecute, defend or compromise, upon such terms as the Member may determine and upon such evidence as it may deem sufficient, any obligation, suit, liability, cause of action or claim, including taxes, either in favor of or against the Company or any subsidiary thereof;

(v)    To pay any and all fees and to make any and all expenditures which the Member deems necessary or appropriate in connection with the organization of the Company and subsidiaries, the management of the affairs of the Company and subsidiaries and the carrying out of its obligations and responsibilities under this Agreement and the Act, and to enforce all rights of the Company;

(vi)    To take all actions, undertake all obligations and responsibilities and exercise all rights and privileges which the Company, as the member, shareholder or partner of any subsidiary, has under its organizational documents and the law under which such subsidiary is organized, including, but not limited to, making, on behalf of the

3

Company, contributions to and accepting on behalf of the Company, distributions from subsidiaries;

(vii) To prosecute, protect and defend or cause to be protected and defended all patents, patent rights, trade names, trademarks and service marks, and all applications with respect thereto, which may be held by the Company or a subsidiary thereof and to take all reasonable and necessary actions to protect the secrecy of and the proprietary rights with respect to any trade secrets, know-how, secret processes or other proprietary information and to prosecute and defend all rights of the Company or a subsidiary in connection therewith;

(viii) To enter into, execute, acknowledge and deliver any and all contracts, agreements or other instruments necessary or appropriate to carry on the business of the Company as set forth herein;

(ix) To cause to be paid any and all taxes, charges and assessments that may be levied, assessed or imposed upon any of the assets of the Company, or that arise as a result of the activities of the Company, unless the same are contested by the Company in good faith;

(x) To file all applications by the Company for, or accept, necessary permits, licenses and other governmental approvals, or any amendment to or withdrawal or termination of such applications or governmental approvals;

(xi) To establish and maintain one or more accounts for the Company in such financial institutions as the Member may from time to time designate pursuant to the Company's banking resolutions;

(xii) To make distributions to the Member;

(xiii) To cause the Company to make or revoke any of the elections under the United States Internal Revenue Code of 1986, as amended, that are made at the Company level and to cause the Company to request and obtain interpretative or exemptive advice and orders from federal and state regulatory authorities;

(xiv) To maintain liability and casualty insurance in amounts and with coverages consistent with prudent commercial standards and with insurers of recognized responsibility;

(xv) To invest funds not immediately needed in the operation of the business;

(xvi) To borrow funds from the Member or any of the Member's Affiliates;

(xvii) To acquire and dispose of real, personal, intangible and mixed property and interests herein; and

4

(xviii)  To appoint officers who shall manage the Company.

(c) *Meetings; Actions by Written Consent*.  The Member may conduct meetings by means of conference telephone or other communications equipment so long as all Persons participating in the meeting can hear one another. On any matter that is to be voted on, consented to or approved by the Member, action may be taken without a meeting, without prior notice and without a vote if consented to, in writing or by electronic transmission, by the Member having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which the Member entitled to vote thereon was present and voted. A consent transmitted by electronic transmission by the Member or by a Person authorized to act on behalf of the Member shall be deemed to be written and signed for purposes of this Section.

Section 2.2    *Officers; Delegation*.  The Member may, from time to time as it deems advisable, appoint Officers of the Company and assign in writing titles (including without limitation President, Vice President, Secretary, and Treasurer) to any such Officer. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Delaware General Corporation Law, the assignment of any such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Unless otherwise determined by the Member, the Officers shall have the power to bind the Company in all transactions, subject to contrary provisions or limitations in this Agreement or action by the Member.  The Member may delegate its powers and authorities to any of these Officers or other authorized representatives.

Section 2.3    *Limitation of Liability*.  Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and no (a) Member or Affiliate of a Member or their respective members, officers, directors, employees, agents, stockholders or partners, (b) manager, officer, employee or agent of the Company or (c) Person who serves on behalf of the Company as a partner, manager, member, officer, director, employee or agent of any other entity (collectively, with all such Persons that are or have been, at any time from and after the date of formation of the Company, among the Persons listed in subsections (a), (b) or (c), the "Covered Persons") shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Covered Person.

(a) The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of the Company or its affairs under this Agreement or the Act shall not be grounds for imposing personal liability on any Covered Person for liabilities of the Company.

(b) Such protections from personal liability shall apply to the fullest extent permitted by applicable law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide greater or broader indemnification rights than such law permitted the Company to provide prior to such amendment).

5

(c) To the extent that, at law or in equity, a Covered Person or any other person has duties (including fiduciary duties) to the Company or to another Member or manager or to another person that is a party to or is otherwise bound by this Agreement, those duties are hereby eliminated to the fullest extent allowed under Delaware law and the Act, including §18-1101 of the Act.  All liabilities for breach of contract and breach of duties (including fiduciary duties) of a Covered Person or any other person to the Company or to another Member or manager or any other person that is a party to or is otherwise bound by this Agreement are hereby eliminated to the fullest extent allowed under Delaware law and the Act, including §18-1101 of the Act.  The elimination of duties and liabilities set forth in this Section 2.3(c) shall be deemed to apply from and after the formation of the Company.

## ARTICLE III

## MEMBERS

Section 3.1    *Sole Member*.  The Member is the sole member of the Company.  The mailing address of the Member is: 1601 Bryan Street, Dallas, Texas, 75201.  The Company has issued all of the limited liability company interests in the Company to the Member.  Additional members may be admitted only by written amendment of this Agreement, executed by the Member.

Section 3.2    *Assignments*.  The Member may assign in whole or in part its limited liability company interests in the Company.  If the Member transfers all of its interests pursuant to this Section 3.2 the transferee shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  Such admission shall be deemed effective immediately prior to the transfer, and, immediately following such admission, the transferor Member shall cease to be a member of the Company.

Section 3.3    *Admission of Additional Members*.  One or more additional members of the Company may be admitted to the Company with the written consent of the Member.

Section 3.4    *Resignation*.  A Member may resign from the Company with the written consent of all of the Members.  If a Member is permitted to resign pursuant to this Section 3.4, an additional member of the Company shall be admitted to the Company, subject to Section 3.3, upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement.  Such admission shall be deemed effective immediately prior to the resignation, and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

## ARTICLE IV

## DISSOLUTION

Section 4.1    *Events of Dissolution*.

(a)     The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the retirement, resignation or dissolution of the last remaining Member or the occurrence of any other event which terminates the continued membership of the last remaining Member, in the Company unless the business of the Company is continued in a manner permitted by the Act or (ii) the entry of a decree of judicial dissolution under the Act.

(b)     Except to the extent set forth in Section 4.1(a) of this Agreement, the occurrence of any event that terminates the continued membership of a Member in the Company shall not cause the dissolution of the Company, and, upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(c)     The bankruptcy (as defined in the Act) of the Member shall not cause the Member to cease to be a member of the Company and upon the occurrence of such an event, the business of the Company shall continue without dissolution.

(d)     In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in the Act.

## ARTICLE V

## INDEMNIFICATION

Section 5.1   *Right to Indemnification*.  Subject to the limitations and conditions as provided in this Article V, each Covered Person who was or is made a party or is threatened to be made a party to or is involved in any threatened, pending or completed action or other proceeding, whether civil, criminal, administrative, arbitrative or investigative, or any appeal in such a proceeding or any inquiry or investigation that could lead to such a proceeding (hereafter a "Proceeding"), by reason of any actions or omissions or alleged acts or omissions of such Covered Person relating to the Company, shall be indemnified by the Company to the fullest extent permitted by applicable law, as the same exists or may hereafter be amended against judgments, penalties (including excise and similar taxes and punitive damages), fines, settlements and reasonable expenses (including, without limitation, attorneys' fees) (all collectively the "Indemnification Amounts") actually incurred by such Covered Person at the time any such Indemnification Amounts are incurred in connection with such Proceeding. Indemnification under this Article V shall continue as to a Covered Person who has ceased to serve in the capacity which initially entitled such Covered Person to indemnity hereunder. Without limiting the generality of the foregoing, it is expressly acknowledged that the indemnification provided in this Article V could involve indemnification for negligence or under theories of strict liability.

Section 5.2   *Limitation on Indemnification*.  Subject to applicable law, notwithstanding any language in this Article V to the contrary, in no event shall any Person be entitled to indemnification pursuant to this Article V if it is established or admitted either (a) in a final judgment of a court of competent jurisdiction or (b) by such Person in any affidavit, sworn

7

statement, plea arrangement or other cooperation with any government or regulatory authority that the Person's acts or omissions that would otherwise be subject to indemnification under this Article V constituted fraud.

Section 5.3    *Advancement of Expenses*.  The right to indemnification conferred in this Article V shall include the right to be paid or reimbursed by the Company the reasonable expenses incurred by a Covered Person of the type entitled to be indemnified above who was, is or is threatened to be made a named defendant or respondent in a Proceeding in advance of the final disposition of the Proceeding, without any determination as to such Covered Person's ultimate entitlement to indemnification hereunder, upon receipt of a written affirmation by such Covered Person of such Covered Person's good faith belief that such Covered Person has met the standard of conduct necessary for indemnification under applicable law and this Article V and a written undertaking by or on behalf of such Covered Person to repay all amounts so advanced if it shall ultimately be determined that such Covered Person is not entitled to be indemnified by the Company under this Article V or if such indemnification is prohibited by applicable law.

Section 5.4    *Appearance as a Witness*.  Notwithstanding any other provision of this Article V, the Company may pay or reimburse expenses incurred by a Covered Person in connection with his or her appearance as a witness or other participation in a Proceeding at a time when such Covered Person is not a named defendant or respondent in the Proceeding.

Section 5.5    *Non-exclusivity of Rights*.  The indemnification and advancement and payment of expenses provided by this Article V shall not be deemed exclusive of any other rights to which a Covered Person indemnified pursuant to this Article V may have or hereafter acquire under any law (common or statutory), provision of this Agreement, any agreement or otherwise.

Section 5.6    *Contract Rights*.  The rights granted pursuant to this Article V shall be deemed to be contract rights, and no amendment, modification or repeal of this Article V shall have the effect of limiting or denying any such rights with respect to actions taken or Proceedings arising prior to any such amendment, modification or repeal.

Section 5.7    *Insurance*.  The Company may purchase and maintain insurance or another arrangement, at its expense, on behalf of itself, any Covered Person, any manager, officer, employee or agent of the Company, or any Person who serves on behalf of the Company as a partner, manager, member, officer, director, employee or agent of any other entity against any liability, expense or loss, whether or not the Company would have the power to indemnify such Person against such liability, expense or loss under the provisions of this Article V.

Section 5.8    *Savings Clause*.  If this Article V or any portion of this Agreement shall be invalidated on any ground by any court of competent jurisdiction, then the Company shall nevertheless indemnify and hold harmless each Covered Person indemnified pursuant to this Article V as to costs, charges and expenses (including attorneys' fees), judgments, fines and amounts paid in settlement with respect to any action, suit or proceeding, whether civil, criminal, administrative or investigative, to the fullest extent permitted by any applicable portion of this Article V that shall not have been invalidated and to the fullest extent permitted by applicable law.

Section 5.9    *Consultation with Counsel*.  The right to indemnification conferred in this Article V on any Covered Person shall include the right to consult with legal counsel, financial advisors and accountants selected by such Covered Person, and any act or omission suffered or taken by such Covered Person on behalf of the Company or in furtherance of the interests of the Company in good faith in reliance upon and in accordance with the advice of such counsel, financial advisors or accountants will be full justification for any such act or omission, and each such Covered Person will be fully protected in so acting or omitting to act; provided that such counsel, financial advisors or accountants were selected with reasonable care.

Section 5.10    *Other Indemnities*.

(a)    The Company acknowledges and agrees that the obligation of the Company under this Agreement to indemnify or advance expenses to any Covered Person for the matters covered thereby shall be the primary source of indemnification and advancement of such Covered Person in connection therewith and any obligation on the part of any Covered Person under any Other Indemnification Agreement to indemnify or advance expenses to such Covered Person shall be secondary to the Company's obligation and shall be reduced by any amount that the Covered Person may collect as indemnification or advancement from the Company.  If the Company fails to indemnify or advance expenses to a Covered Person as required or contemplated by this Agreement, and any Person makes any payment to such Covered Person in respect of indemnification or advancement of expenses under any Other Indemnification Agreement on account of such Unpaid Indemnity Amounts, such other Person shall be subrogated to the rights of such Covered Person under this Agreement in respect of such Unpaid Indemnity Amounts.

(b)    The Company, as an indemnifying party from time to time, agrees that, to the fullest extent permitted by applicable law, its obligation to indemnify Covered Persons under this Agreement shall include any amounts expended by any other Person under any Other Indemnification Agreement in respect of indemnification or advancement of expenses to any Covered Person in connection with any Proceedings to the extent such amounts expended by such other Person are on account of any Unpaid Indemnity Amounts.

"*Other Indemnification Agreement*" means one or more certificate or articles of incorporation, by-laws, limited liability company operating agreement, limited partnership agreement and any other organizational document, and insurance policies maintained by any Member or manager or Affiliate thereof providing for, among other things, indemnification of and advancement of expenses for any Covered Person for, among other things, the same matters that are subject to indemnification and advancement of expenses under this Agreement.

"*Unpaid Indemnity Amounts*" means any amount that the Company fails to indemnify or advance to a Covered Person as required by Article V of this Agreement.

For purposes of this Article V, the term "Company" shall include any predecessor of the Company and any constituent entity (including any constituent of a constituent) absorbed by the Company in a consolidation or merger; the term service "on behalf of the Company" shall include service as an officer, manager, Member or employee of the Company which imposes duties on, or involves services by, such officer, manager, Member or employee with respect to an

9

employee benefit plan, its participants or beneficiaries; any excise taxes assessed on a Person with respect to an employee benefit plan shall be deemed to be indemnifiable expenses; and action by a Person with respect to an employee benefit plan which such Person reasonably believes to be in the interest of the participants and beneficiaries of such plan shall be deemed to be action not opposed to the best interests of the Company.

## ARTICLE VI

## EXCULPATION

Section 6.1    *Exculpation*.  To the fullest extent permitted by applicable law, no Covered Person shall be liable or accountable in damages or otherwise to the Company or to any Member for any loss or liability arising from any act or omission of such Covered Person relating to the Company unless, and only to the extent that, such act or omission constituted fraud.

## ARTICLE VII

## GENERAL PROVISIONS

Section 7.1    *Amendment*.  This Agreement may not be modified, altered, supplemented or amended except by written instrument signed by the Member.

Section 7.2    *Applicable Law*.  This Agreement shall be construed in accordance with and governed by the laws of the State of Delaware.

Section 7.3    *Benefits of Agreement; No Third-Party Rights*.  None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of any Member.  Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third person.

Section 7.4    *Severability of Provisions*.  Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 7.5    *Entire Agreement*.  This Agreement constitutes the entire agreement of the Member with respect to subject matter hereof.

[*Remainder of Page Intentionally Left Blank; Signature Page to Follow*]

IN WITNESS WHEREOF, the undersigned, intending to be legally bound hereby, has duly executed this Agreement effective as of the ___ day of _____, 201_.

    MEMBER:

    ENERGY FUTURE HOLDINGS CORP.

    By: _____

**SIGNATURE PAGE TO**
**AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF**
**ENERGY FUTURE INTERMEDIATE HOLDING COMPANY LLC**

**FIRST AMENDMENT
TO THE
AMENDED AND RESTATED
LIMITED LIABILITY COMPANY AGREEMENT
OF
LSGT GAS COMPANY LLC
A Texas Limited Liability Company**

This First Amendment to the Amended and Restated Company Agreement of LSGT Gas Company LLC, a Texas limited liability company (this "*Amendment*"), is made and entered into to be effective as of the _____ day of _____, _____ (the "*Amendment Date*"), by the sole Member of LSGT Gas Company LLC, a Texas limited liability company (the "*Company*").

WITNESSETH:

WHEREAS, the sole Member of the Company desires to amend the Amended and Restated Limited Liability Company Agreement of LSGT Gas Company LLC, dated September 15, 2011 (the "*Agreement*"), in order to provide for the management of the Company by the sole Member (except as otherwise provided herein, all capitalized terms used herein shall have the meaning set forth in the Agreement); and

WHEREAS, the Company shall continue under the terms of the Agreement as amended pursuant to this Amendment.

NOW, THEREFORE, BE IT RESOLVED, the parties hereto hereby agree as follows:

1. Section 1.2 of the Agreement is hereby deleted and replaced with the following:

    Section 1.2. Registered Office. The registered office of the Company in the State of Texas shall be c/o Corporation Service Company, [          ], Dallas, Texas.

2. Section 1.3 of the Agreement is hereby deleted and replaced with the following:

    Section 1.3. Registered Agent. The name of the registered agent of the Company for service of process in the State of Texas is Corporation Service Company.

3. Section 1.10 of the Agreement is hereby deleted and replaced with the following:

    Section 1.10 *Distributions*. Distributions in any form, including cash or other assets, shall be made to the Member at the times and in the aggregate amounts determined by the Member. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to any Member on account of its interest in the Company if such distribution would violate the Code or any other applicable law.

4. Section 2.1 of the Agreement is hereby deleted and replaced with the following:

Section 2.1  *Management*. The powers of the Company shall be exercised by or under the authority of, and the business and affairs of the Company shall be managed under, its Member.

5. Section 2.2 of the Agreement is hereby deleted and replaced with the following:

Section 2.2 *Officers; Delegation*.  The Company shall have such officers and employees as are designed within this Agreement or as subsequently designed by the Member. The Member may, from time to time as it deems advisable, appoint officers and assign titles (including, without limitation, President, Vice President, Secretary, and Treasurer) to any such person. Unless the Member decides otherwise, if the title is one commonly used for officers of a business corporation formed under the Code, the assignment of such title shall constitute the delegation to such person of the authorities and duties that are normally associated with that office. Any delegation pursuant to this Section 2.2 may be revoked at any time by the Member.

6. Section 2.3 of the Agreement is hereby deleted and replaced with the following:

Section 2.3  *Limitation of Liability*.  Except as otherwise expressly provided  by  the Code, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and no (a) Member or Affiliate of a Member or their respective members, officers, directors, employees, agents, stockholders or partners, (b) manager, officer, employee or agent of the Company or (c) Person who serves on behalf of the Company as a partner, manager, member, officer, director, employee or agent of any other entity (collectively, with all such Persons that are or have been, at any time from and after the date of formation of the Company, among the Persons listed in subsections (a), (b) or (c), the "Covered Persons") shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Covered Person.

(a) The failure of the Company to observe any formalities or requirements relating to the exercise of its powers or management of the Company or its affairs under this Agreement or the Code shall not be grounds for imposing personal liability on any Covered Person for liabilities of the Company.

(b) Such protections from personal liability shall apply to the fullest extent permitted by applicable law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide greater or broader indemnification rights than such law permitted the Company to provide prior to such amendment).

(c) To the extent that, at law or in equity, a Covered Person or any other person has duties (including fiduciary duties) to the Company or to another Member or manager or to another person that is a party to or is otherwise bound by this Agreement, those duties are hereby eliminated to the fullest extent allowed under Texas law and the Code. All liabilities for breach of contract and

breach of duties (including fiduciary duties) of a Covered Person or any other person to the Company or to another Member or manager or any other person that is a party to or is otherwise bound by this Agreement are hereby eliminated to the fullest extent allowed under Texas law and the Code. The elimination of duties and liabilities set forth in this Section 2.3(c) shall be deemed to apply from and after the formation of the Company.

7. Section 5.7 of the Agreement is hereby deleted and replaced with the following:

Section 5.7  *Insurance*.  The Company may purchase and maintain insurance or another arrangement, at its expense, on behalf of itself, any Covered Person, any manager, officer, employee or agent of the Company, or any Person who serves on behalf of the Company as a partner, manager, member, officer, director, employee or agent of any other entity against any liability, expense or loss, whether or not the Company would have the power to indemnify such Person against such liability, expense or loss under the provisions of this Article V.

8. The last three paragraphs of Section 5.10 of the Agreement are hereby deleted and replaced with the following:

"*Other Indemnification Agreement*" means one or more certificate or articles of incorporation, by-laws, limited liability company operating agreement, limited partnership agreement and any other organizational document, and insurance policies maintained by any Member or manager or Affiliate thereof providing for, among other things, indemnification of and advancement of expenses for any Covered Person for, among other things, the same matters that are subject to indemnification and advancement of expenses under this Agreement.

"*Unpaid Indemnity Amounts*" means any amount that the Company fails to indemnify or advance to a Covered Person as required by Article V of this Agreement.

For purposes of this Article V, the term "Company" shall include any predecessor of the Company and any constituent entity (including any constituent of a constituent) absorbed by the Company in a consolidation or merger; the term service "on behalf of the Company" shall include service as an officer, manager, Member or employee of the Company which imposes duties on, or involves services by, such officer, manager, Member or employee with respect to an employee benefit plan, its participants or beneficiaries; any excise taxes assessed on a Person with respect to an employee benefit plan shall be deemed to be indemnifiable expenses; and action by a Person with respect to an employee benefit plan which such Person reasonably believes to be in the interest of the participants and beneficiaries of such plan shall be deemed to be action not opposed to the best interests of the Company.

9. Except to the extent modified or amended by this Amendment, all terms and provisions of the Agreement shall continue in full force and effect and shall remain enforceable and binding in accordance with their respective terms.

10. Any required notices, meetings or consents that are necessary to make an amendment to the Agreement are hereby waived or satisfied.

11. Each party hereto shall take whatever other action is required to give full effect to the provisions of this Amendment, including the acquisition by any Member of any consent to the action provided for herein.

12. This Amendment may be executed in any number of counterparts, all of which taken together shall constitute one and the same Amendment, and any parties to this Amendment may execute this Amendment by signing any one of the counterparts. Any counterpart of this Amendment may be executed via facsimile transmission.

*Remainder of Page Intentionally Left Blank.*
*Signature Page Follows.*

IN WITNESS WHEREOF, the undersigned has executed this Amendment as of the Amendment Date.

MEMBER:

**EFH MERGER CO., LLC**,
a Delaware limited liability company


By: _____
Name: _____
Title: _____

# CERTIFICATE OF AMENDMENT
# OF
# LSGT GAS COMPANY LLC

LSGT Gas Company LLC, a Texas limited liability company (the "*Company*"), for the purpose of amending its Certificate of Formation, hereby certifies that:

*FIRST*: The name of the Company is LSGT Gas Company LLC.

*SECOND*: The original Certificate of Formation was filed effective as of October 1, 2007. The file number issued to the Company by the secretary of state is 0800878176.

*THIRD*: The Certificate of Formation is hereby amended by deleting the current Section 6 and replacing it with the following:

(6) The Company will be managed by its members. The name and address of the sole member are as follows:

| Name | Address |
|---|---|
| EFH Merger Co., LLC | 700 Universe Blvd. Juno Beach, Florida 33408 |

*FOURTH*: This amendment to the Certificate of Formation has been approved in the manner required by the Texas Business Organizations Code and by the governing documents of the Company.

*FIFTH*: This Certificate of Amendment to the Certificate of Formation shall become effective upon filing.

*Remainder of Page Intentionally Left Blank.*
*Signature Page Follows.*

IN WITNESS WHEREOF, the undersigned executed this Certificate of Amendment to the Certificate of Formation as of this ____ day of _____, _____.

        SOLE MEMBER:

**EFH MERGER CO., LLC**,
a Delaware limited liability company

By: _____
Name: _____
Title: _____