**EXHIBIT J**

**Amended and Restated Split Participant Agreement**

EXECUTION VERSION

# AMENDED AND RESTATED SPLIT PARTICIPANT AGREEMENT

This Amended and Restated Split Participant Agreement (the "Agreement"), is dated October 3, 2016, by and between Oncor Electric Delivery Company LLC, a Delaware limited liability company f/k/a TXU Electric Delivery Company, a Texas Corporation ("Oncor") and TEX Operations Company LLC ("RTCEH") (collectively, the "Parties", and each, a "Party").

WHEREAS, on April 29, 2014, Energy Future Holdings Corp., a Texas corporation ("EFH") and certain entities in which it, directly or indirectly, holds an equity interest and certain of their respective subsidiaries (collectively, the "Debtors"), commenced voluntary cases under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. in the United States Bankruptcy Court for the District of Delaware, which cases were jointly administered for procedural purposes only under Case No. 14-10979, *Energy Future Holdings Corp., et al.,* Case No. 14-10979 (CSS) (the "Chapter 11 Cases");

WHEREAS, Oncor, Oncor Electric Delivery Holdings Company LLC, a Delaware limited liability company ("Oncor Holdings") and their current and former direct and indirect subsidiaries have not been and are not Debtors in the Chapter 11 Cases;

WHEREAS, pursuant to the plan of reorganization confirmed as part of the Chapter 11 Cases (the "Plan"), EFH and RTCEH have been separated (the "Separation");

WHEREAS, pursuant to the terms of the Plan, certain rights and obligations of EFH will be transferred to and assumed by RTCEH (the "Transfer");

WHEREAS, the employment of certain current and future retirees of EFH, RTCEH and Oncor (or one of their direct or indirect subsidiaries) has included service that has been allocated to both (i) Oncor Electric Delivery Company LLC, a Delaware limited liability company, (or one of its predecessor regulated electric transmission and distribution utility businesses) and (ii) EFH or one of its direct or indirect subsidiaries that is not a regulated electric transmission and distribution utility (the "Split Participants") with such allocations set forth under the letters from Aon Hewitt to EFH dated November 13, 2012, which are attached hereto as <u>Exhibit I-A</u> the "Aon Hewitt Welfare Letter" and <u>Exhibit II-A</u> the "Aon Calculation Method";

WHEREAS, Oncor and EFH and certain of their predecessors have entered into certain agreements to provide for provision of benefits to the Split Participants; and

WHEREAS, the Parties desire to enter into this Agreement, which shall amend, restate and otherwise replace certain agreements with respect to the provision of certain post-retirement welfare benefits to certain Split Participants, as specified Schedule I to this Agreement, with respect to the provision of pension benefits to certain Split Participants, as set forth in Schedule II to this Agreement, and with respect to the provision of life insurance benefits to certain Split Participants, as set forth in Schedule III.

NOW, THEREFORE, the Parties hereby agree as follows, it being understood and agreed that the following provisions shall govern with respect to <u>Schedules I, II, and III</u> to this Agreement and all exhibits thereto, unless otherwise provided therein:

1. **<u>Undertakings</u>**.  This Agreement consists of this Amended and Restated Split Participant Agreement, Schedule I, II, and III hereto and all exhibits to such Schedules.  Each of RTCEH and Oncor agrees to perform its obligations set forth in Schedules I, II, and III to this Agreement and all exhibits thereto.

2. **<u>Amendment and Termination</u>**.  Except as may otherwise be provided in this Agreement, this Agreement may be amended, modified, or supplemented only by written instrument executed by each of the Parties.

3. **<u>No Third Party Beneficiary Rights</u>**.  Nothing in this Agreement shall create any third party beneficiary rights for any individual or entity, including without limitation, any Split Participant or his/her dependents, nor shall this Agreement be deemed to provide any Split Participant or dependent, or any other individual, with any right to continued coverage under any plan sponsored by Oncor or RTCEH.

4. **<u>Indemnification</u>**.  Except as may otherwise be provided in this Agreement, and other than with respect to any act or omission of an Indemnitee (as defined herein) that constitutes fraud, intentional or willful misconduct, gross negligence or a breach of fiduciary duty or the terms of this Agreement by such Indemnitee, each Party ("Indemnitor") agrees to and will defend, protect, indemnify and hold the other Party ("Indemnitee") harmless from and against all claims, losses, reasonable out-of-pocket expenses, reasonable attorneys' fees, direct, actual damages, demands, judgments, causes of action, suits, and liabilities ("Claims"): (a) arising from any breach by the Indemnitor of its covenants or agreements set forth in this Agreement; or (b) related to a Party's rights or obligations under this Agreement including, but not limited to, (i) such indemnifying Party's operation and administration of the benefit plans, (ii) modification of the benefits by the Party making the decision to modify such benefits or (iii) reduction in the rate of any participant subsidy by the Party implementing such reduction.

5. **<u>Notices</u>**.  Any notices or other communications to be provided between the Parties hereunder shall be provided in writing (including email or facsimile) to the following addresses:

   If to Oncor:

   Oncor Electric Delivery Company LLC
   1616 Woodall Rogers Freeway
   Dallas, Texas 75202
   Attn: Ms. Kerri Veitch
   Email: kerri.veitch@oncor.com
   With copy to: General Counsel

If to RTCEH:

TEX Operations Company LLC
1601 Bryan Street
Dallas, Texas 75201
Attn: Cyndie Ewert
Email: cyndie.ewert@energyfutureholdings.com
With copy to:  General Counsel

6. **Entire Agreement**.  Except as otherwise provided herein, this Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any and all understandings and agreements (whether oral or in writing), relating hereto, including the Original Agreement, the 2014 Agreement and the Funding Agreement (in each case as hereinafter defined in Schedule I or II to this Agreement).

7. **Binding Effect**.  This Agreement shall bind and inure to the benefit of the Parties and their respective successors and permitted assigns.  Neither this Agreement nor any of the rights, interests and obligations hereunder of either Party may be directly or indirectly assigned or delegated by either Party (in each case, whether (i) by merger, consolidation or dissolution of a Party, (ii) by contract, operation of law or (iii) otherwise) without the express prior written consent of the other Party, and any purported assignment or delegation in violation of this Agreement shall be null and void. For purposes of this Section 7, the term "merger" refers to any merger in which a Party is a constituent entity, regardless of whether it is the surviving or merged entity.  As a condition to, and prior to the consummation of, any direct or indirect transfer or other disposition of all or substantially all of its assets (whether in a single transaction or a series of related or unrelated transactions) the Party engaging in such transfer or other disposition shall, subject to the preceding provisions of this Section 7, require the transferee to assume all of such Party's obligations hereunder.

8. **Severability**.  All rights and restrictions contained in this Agreement may be exercised and shall be applicable and binding only to the extent that they do not violate any applicable laws and are intended to be limited to the extent necessary so that they will not render this Agreement illegal, invalid or unenforceable.  If any term of this Agreement shall be held to be illegal, invalid or unenforceable by a court of competent jurisdiction, it is the intention of the Parties that the remaining terms hereof shall constitute their agreement with respect to the subject matter hereof, and all of such remaining terms shall remain in full force and effect.

9. **Novation**.  Except for obligations that are due but not paid as of the date of this Agreement, RTCEH and Oncor hereby novate EFH's obligations under the Original Agreement, the 2014 Agreement and the Funding Agreement.

10. **Governing Law**.  This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Texas.

11. **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which shall be considered one and the same

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**ONCOR ELECTRIC DELIVERY COMPANY LLC**

By: *Deborah L. Dennis*

Name: Deborah L. Dennis

Title: Senior Vice President

**TEX OPERATIONS COMPANY LLC**

By: _____

Name:_____

Title:_____

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first written above.

**ONCOR ELECTRIC DELIVERY COMPANY LLC**

By:

    Name:

    Title:

**TEX OPERATIONS COMPANY LLC**

By:

Name:  David D. Faranetta

Title: Senior Vice President and Treasurer

## SCHEDULE I
## POST-RETIREMENT WELFARE BENEFITS

WHEREAS, that certain Agreement entered into by and between TXU Electric Delivery Company, a Texas corporation, and TXU Energy Company LLC, a Delaware limited liability company, dated March 10, 2005 (the "Original Agreement") set forth certain provisions regarding the allocation to Oncor of a portion of the cost for post-retirement welfare benefits to be provided to Split Participants (which benefits are currently provided under the Oncor Retiree Welfare Plan but which benefits may be provided through a successor plan to the Oncor Retiree Welfare Plan in the future (such plan, together with any such successor plan (but not including the OSPP (as defined below)), collectively referred to as the "Oncor Plan")) to certain current and future eligible Split Participants as listed on Annex A to the Administration Manual (as defined in Section 4 below) who are eligible for a retiree benefits subsidy as of the date hereof, as such Annex A may be amended from time to time in accordance with the provisions of the Administration Manual (the "Oncor Plan Split Participants");

WHEREAS, that certain Split Participant Agreement entered into by and between Oncor and EFH, dated April 28, 2014 and effective July 1, 2014 (the "2014 Agreement") modified the Original Agreement;

WHEREAS, pursuant to the Original Agreement, as modified by the 2014 Agreement, Oncor is obligated to fund that portion of the welfare benefit costs for the Oncor Plan Split Participants with respect to such Oncor Plan Split Participants' service allocated to Oncor under the Aon Hewitt Welfare Letter, and EFH is obligated to fund the remaining welfare benefit costs of the Oncor Plan Split Participants, in each case, less the Oncor Plan Split Participants' contributions;

WHEREAS, pursuant to the 2014 Agreement, beginning on January 1, 2015, Oncor began administering the Oncor Plan, and EFH agreed to pay Oncor for EFH's portion of the costs associated with providing welfare benefits coverage for the Oncor Plan Split Participants (including certain administrative costs);

WHEREAS, as a result of the Separation and the Transfer, Oncor and RTCEH will not be under "common control" within the meaning of Section 414(c) of the Internal Revenue Code of 1986, as amended (the "Code"), or part of a "control group" within the meaning of Section 3(40)(B)(ii) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA");

WHEREAS, as a result of the lack of common control under ERISA, among other things, the Oncor Plan could be a multiple employer welfare arrangement as defined in Section 3(40) of ERISA (a "MEWA") treated as self-insured for purposes of the Texas Insurance Code if both RTCEH and Oncor were to continue to fund the Oncor Plan as described in the 2014 Agreement beyond the Separation and Transfer;

WHEREAS, the Parties desire to amend and restate within this Schedule I the 2014 Agreement to:  (a) provide for the establishment of a separate post-retirement welfare benefit plan for the benefit of the Oncor Plan Split Participants that is a "fully-insured" plan; (b) permit the subsequent conversion of such fully-insured plan to a "self-funded" or "partially-funded" plan if a written and binding advisory opinion from the Employee Benefits Security

Administration of the U.S. Department of Labor ("DOL") is issued to the effect that the Oncor Split Participant Plan is not a MEWA as defined in 3(40) of ERISA (such "fully-insured" and/or "self-funded" or "partially-funded" plan is hereinafter referred to as the "Oncor Split Participant Plan" or "OSPP"); and (c)  set forth the funding obligations of RTCEH and Oncor under the OSPP; and

WHEREAS, it is the intention of the Parties that RTCEH's and Oncor's obligations with respect to the costs of post-retirement welfare benefits for the Oncor Plan Split Participants under the OSPP shall continue to be allocated in a manner consistent with the past practices of Oncor and EFH under the Oncor Plan prior to the Separation and the Transfer and in accordance with the Aon Hewitt Welfare Letter.

NOW, THEREFORE, the Parties hereby agree as follows:

1.  **Transition Period.**  Oncor will continue to provide medical (including prescription drug coverage), vision, life insurance and dental benefits to the Oncor Plan Split Participants, to the extent eligible, under the Oncor Plan, on the same terms and conditions as heretofore provided under the Oncor Plan (including on a self-insured basis for purposes of medical, prescription drug, and dental coverage) through the last day of the calendar year following the year of the Separation and Transfer, or such earlier date as determined in Oncor's discretion (the "Transition Period"), provided however, that Oncor shall have given advance written notice to RTCEH of such earlier date not less than ninety (90) days prior to such date.  During the Transition Period, RTCEH shall pay its portion of (i) the aggregate benefit obligation costs, subject to the cap established by EFH in 2012 (as further described in the Administration Manual (as defined below) and the memorandum from Aon Hewitt to EFH, dated August 7, 2015 (the "Aon Memorandum"), attached hereto as Exhibit I-B), with respect to medical, prescription drug, vision, life insurance and dental benefits for each Oncor Plan Split Participant, and (ii) the Administrative Costs (as defined below), each of the foregoing as allocated pursuant to the Aon Hewitt Welfare Letter and historical practice between Oncor and EFH except, in each instance, as may be provided otherwise in the Administration Manual. During the Transition Period, RTCEH shall not amend or terminate the amount of its contribution (determined consistent with the Aon Hewitt Welfare Letter) that it provides for Oncor Plan Split Participant benefit obligation costs.

2.  **Establishment of Separate Oncor Split Participant Plan**.

    a.  Effective no later than immediately following the end of the Transition Period, Oncor shall have established, with insurers selected by Oncor, a separate fully-insured post-retirement welfare benefit plan for the Oncor Plan Split Participants and shall have transferred the liabilities associated with such fully-insured plan from the Oncor Plan to the OSPP.

    b.  At any time, either Party may apply for a written and binding advisory opinion from the DOL to the effect that the OSPP or a similar alternative post-retirement welfare benefit arrangement is not, or would not be, a MEWA.  In the event that such requested advisory opinion is obtained to the reasonable

satisfaction of the Parties, the Parties may mutually agree to convert the funding status of the OSPP from a fully-insured arrangement to a "self-funded" or "partially-funded" arrangement.

3.    **Coverage and Benefits under the Oncor Split Participant Plan**.

a.    No later than immediately following the end of the Transition Period, to the extent an Oncor Plan Split Participant is or would otherwise become eligible for medical (including prescription drug coverage), vision, dental, and life insurance benefits under the Oncor Plan according to its terms in effect as of the end of the Transition Period, such Oncor Plan Split Participant shall be or will become eligible for such benefits under the OSPP.  Subject to Section 9, Oncor shall use commercially reasonable efforts to offer benefits under the OSPP that are in the aggregate substantially equivalent to those benefits offered to former Oncor employees who are retirees under the Oncor Plan ("Substantial Coverage Equivalence"); provided, however that Oncor's obligations pursuant to this sentence shall be deemed satisfied if it (i) determines, in its sole but good faith judgment, that no available insurance product provides Substantial Coverage Equivalence and (ii) offers an insurance product that, in its sole but good faith judgment, provides benefits that are as close as reasonably possible to Substantial Coverage Equivalence. The determination of Substantial Coverage Equivalence shall not take into account any incremental cost attributable to the OSPP's status as a fully-insured plan when compared to the Oncor Plan's status as a self-insured arrangement. Oncor shall be deemed to comply with this Section 3(a) if both: (i) Oncor determines, in its sole but good faith judgment, that the cost to the Oncor Plan Split Participants of benefits that provide Substantial Coverage Equivalence is unduly burdensome to the Oncor Plan Split Participants, and (ii) Oncor instead provides such benefit options based on and reflecting the Oncor Subsidy (as defined below) that, in Oncor's sole but good faith judgment, are collectively in the best interests of the Oncor Plan Split Participants.  Nothing in this Section 3 shall diminish Oncor's obligations under Section 9.

b.    As further set forth in the Administration Manual, Oncor shall timely provide to RTCEH information on the benefits and coverages to be provided under the OSPP, including any changes in benefits, as compared to the benefits provided to former Oncor employees who are retirees under the Oncor Plan. Any active employees who will be eligible for benefits under the OSPP following retirement will not be eligible for such benefits under any welfare plans maintained by RTCEH after retirement so long as this Schedule I is in effect.  Active employees who are future eligible Oncor Plan Split Participants shall continue to be credited with service for purposes of determining the premium subsidies provided to them by Oncor and RTCEH for post-retirement welfare benefits in accordance with the practice in effect for such crediting of service as of the date of this Agreement.  Oncor shall for all purposes, including those relating to the Oncor Plan Split Participants, be the

sponsor of the OSPP, and Oncor or its designee shall be the plan administrator for the OSPP.  In no event shall Oncor be (i) limited in any way in offering benefits to participants under any of its other plans as it determines, in its sole but good faith judgment, or (ii) required to incur any expense related to benefits offered to Oncor Plan Split Participants that is greater than has been determined reasonable by the Public Utility Commission of Texas pursuant to Section 36.065 of the Texas Utilities Code (the Public Utility Regulatory Act (PURA)).

4.    **Allocation of Costs under the Oncor Plan and the Oncor Split Participant Plan**.

a.    The Aon Hewitt Welfare Letter describes the current and past practices of allocating the costs associated with providing post-retirement welfare benefit coverage for the Oncor Plan Split Participants between Oncor and EFH, including the practices prior to the Separation and the Transfer, and the Parties agree that such practices will be continued by RTCEH and Oncor following the Separation and the Transfer for so long as this Schedule I is in effect except as otherwise provided herein or in the Administration Manual. RTCEH and Oncor will each continue to pay its own portion of the costs (including Administrative Costs, as defined below) associated with providing welfare benefit coverage for the Oncor Plan Split Participants according to the allocations set forth in the Aon Hewitt Welfare Letter subject to both: (i) as to the RTCEH portion of the costs, the cap described in the Administration Manual and the Aon Memorandum; and (ii) the ability of RTCEH and Oncor to reduce the amount of their respective contributions in accordance with the provisions described in this Agreement.

b.    Following the Transition Period, RTCEH shall not amend or terminate the amount of the contribution it provides for Oncor Plan Split Participant premium subsidies unless it provides at least one hundred fifty (150) days' notice to Oncor and such advanced notice to Oncor Plan Split Participants as required by any applicable law of such amendment or termination, and provided that such amendment or termination may only become effective as of the first day of a plan year. RTCEH shall be fully responsible for any additional administrative expenses that may be incurred by Oncor as a result of RTCEH's amendment and termination of the premium subsidies it provides to the Oncor Plan Split Participants.

c.    For each plan year that the OSPP is a fully-insured arrangement, RTCEH will pay Oncor for RTCEH's share of the costs associated with providing post-retirement welfare benefits to the Oncor Plan Split Participants (including the annual premium, Administrative Costs and the Overhead Fee, as defined below) calculated using the methodologies described in the Aon Hewitt Welfare Letter in accordance with the procedures set forth in this Section 4 and the administration manual attached hereto as <u>Exhibit I-C</u> containing details regarding the operations and administration of the Oncor Plan during the Transition Period and the OSPP following the Transition Period,

developed and mutually agreed to by the Parties and as amended from time to time by written consent of the Parties to the extent specified therein (the "Administration Manual").    Oncor shall invoice RTCEH monthly for RTCEH's monthly premium subsidy, and monthly share of the Administrative Costs and Overhead Fee. Each invoice shall have sufficient details as to the Administrative Costs as to allow RTCEH to identify and reconcile its share of the Administrative Costs.  RTCEH will pay Oncor any undisputed amount of an invoice within thirty (30) days of receipt and disputed amounts shall be reconciled in accordance with the dispute resolution process set forth in the Administration Manual.

d.    As further set forth in the Administration Manual, Oncor will perform periodic true-up calculations of RTCEH's aggregate premium subsidies paid to Oncor.  Oncor will notify RTCEH in writing of the results of these true-up calculations promptly after the calculations are completed and will, upon request, provide RTCEH with the information relied upon to make its calculations. As further set forth in the Administration Manual, Oncor will also perform periodic true-up calculations of RTCEH's share of the Administrative Costs paid to Oncor. Oncor shall keep and retain full and accurate records relating to the calculation of RTCEH's aggregate premium subsidies, the Administrative Costs including RTCEH's allocable share of such costs, vendor invoices, insurance carrier statements and any true-up calculations (the "SPA Records").    Oncor shall preserve such SPA Records for each calendar year for seven (7) calendar years following the end of such calendar year. During such period, RTCEH or its agents shall have the right, at RTCEH's sole expense, to review such SPA Records during Oncor's normal business hours, provided that such right may be exercised by RTCEH no more than once per calendar year.  For any year that the OSPP is a self-insured arrangement or is a partially fully-insured and partially self-insured arrangement, the Parties agree that the terms of the Administration Manual shall govern the payment, subsidy and true-up calculations associated with the OSPP.  Any disputed amounts shall be reconciled in accordance with the dispute resolution process set forth in the Administration Manual, provided, however, that RTCEH must notify Oncor of any disputed amounts by within two (2) years after receipt of a true-up calculation. After two (2) years from receipt of a true-up calculation, RTCEH may not dispute any item in such true-up calculation and Oncor will have no obligation to make any reimbursements pursuant to such true-up calculation.

e.    For purposes of this Schedule I, "Administrative Costs" shall mean with respect to the plan under which the Oncor Plan Split Participants are being provided with post-retirement welfare benefits, the total annual amount of administrative costs and expenses incurred by Oncor, relating to Oncor Plan Split Participants, in sponsoring, maintaining and administering the Oncor Plan or the OSPP (as applicable), including without limitation, proportionate costs associated with communications to Oncor Plan Split  Participants, third party vendor/benefit provider administrative costs and costs of legal

compliance (e.g., preparing Form 5500s, summaries of benefits and coverage, summary plan descriptions, summary annual reports and other applicable reporting and disclosure requirements), set-up and other costs associated with creating and adopting the OSPP, costs associated with developing an open enrollment process for Oncor Plan Split Participants and calculating premium subsidies, and external actuarial, legal, consulting and accounting fees and costs of Oncor in sponsoring, maintaining and administering the Oncor Plan or the OSPP (as applicable).

f.  Commencing on January 1 following the date of this Agreement, in addition to the Administrative Costs described above, RTCEH will pay Oncor an annual administration fee as set forth in the Administration Manual to cover a portion of administrative overhead expenses Oncor incurs with respect to maintenance of the Oncor Plan or the OSPP (as applicable) (the "Overhead Fee").

5.  **Administration**.  Oncor shall in all respects be responsible for the customary administration of retiree welfare benefits for the Oncor Plan Split Participants.  For the avoidance of doubt, such administration services shall include but may not be limited to:  benefit distributions; vendor selection, oversight and management; benefits strategy and plan design; participant communications, including but not limited to those required by law; benefit accounting and claims processing; issue resolution; IRS Form W-2 processing for group term life insurance coverage; Retiree Club communications and inquiries; participant data and records management; selection and rollout of technology and support; and engagement of actuarial, accounting, consulting and legal services related to the Oncor Plan, OSPP, and any other arrangement by which Oncor provides the Oncor Subsidy.  Oncor agrees that it will give RTCEH a reasonable opportunity to preview all participant communications created by or under Oncor's direction that relate to material plan changes or amendments prior to the distribution of such communications to the Oncor Plan Split Participants.  Notwithstanding anything in this Agreement to the contrary, RTCEH will be responsible for any initial communications to Oncor Plan Split Participants regarding any reduction in or termination of its payment of premium subsidies for post-retirement welfare benefits provided under the Oncor Plan or the OSPP (as applicable) on behalf of Oncor Plan Split Participants. RTCEH agrees that it will give Oncor a reasonable opportunity to preview any such communications prior to the distribution of such communications to the Oncor Plan Split Participants and will notify Oncor of the anticipated distribution date for such communications.  Oncor agrees that it will send to RTCEH a copy of all communications provided to Oncor Plan Split Participants contemporaneous with the distribution of such communications to such Oncor Plan Split Participants.

6.  **Oncor Plan and OSPP Amendment, Modification or Termination**.  Nothing in this Schedule I shall be deemed to constitute a provision of, or an amendment to the Oncor Plan, OSPP or any other benefit plan maintained by either Oncor or RTCEH. During the Transition Period, Oncor agrees it will not materially amend or modify (with an amendment or modification being deemed material only if such

amendment or modification would require Oncor to send a summary of material modifications to participants under applicable law) or terminate the Oncor Plan or, if applicable, the OSPP with respect to the benefits available to the Oncor Plan Split Participants, other than as contemplated herein or as required by applicable law, without the written consent of RTCEH, which consent will not be unreasonably withheld. Subject to the requirements of Section 9 herein, in the event that either (i) RTCEH reduces the amount of the contribution that it provides for Oncor Plan Split Participant benefits under the OSPP by 50% or more as compared to the contributions of EFH as of immediately before the date of this Agreement (a "50% RTCEH Subsidy Reduction") or (ii) RTCEH fails to make any payment due under this Schedule I (including the Administration Manual) within ninety (90) days of its due date, Oncor may, in its sole and absolute discretion, modify or terminate the OSPP.

7. **No Third Party Beneficiary Rights.**  Nothing in this Schedule I shall create any third party beneficiary rights for any individual, including without limitation, any Oncor Plan Split Participant or his/her dependents, nor shall this Schedule I be deemed to provide any Oncor Plan Split Participant or dependent, or any other individual, with any right to continued coverage under the OSPP or any other plan of Oncor or RTCEH.  This Schedule I relates solely to the Oncor Plan Split Participants and does not affect Oncor's welfare benefit obligations related to any participant who is not an Oncor Plan Split Participant.

8. **Schedule I Amendment, Modification, or Termination.**

    a.  This Schedule I may be amended or terminated by written agreement of the Parties.

    b.  This Schedule I will automatically terminate in the event that Oncor terminates the Oncor Plan during the Transition Period or each of the Oncor Plan, the OSPP, and any alternative arrangement provided under Section 9 following the Transition Period.

    c.  Without limiting the generality of the foregoing, in the event that RTCEH shall fail to pay the contribution that it provides for Oncor Plan Split Participant benefits within: (i) thirty (30) days of its due date, Oncor may, subject to any limitations set forth in the Administration Manual, invoice the Oncor Plan Split Participants for such amounts unpaid by RTCEH, and (ii) ninety (90) days of its due date, Oncor may terminate the OSPP and provide benefits to such Oncor Plan Split Participants from and after the date of the OSPP termination pursuant to Section 9 below.

9. **Oncor's Post-Separation and Transfer Obligation.**  Notwithstanding any other provision in this Agreement to the contrary, Oncor shall after the Separation and Transfer offer an arrangement under which Oncor shall provide a subsidy ("Oncor Subsidy") for post-retirement medical (including prescription drug coverage) and life insurance benefits for Oncor Plan Split Participants, as applicable, for as long as Oncor offers such benefits and provides a per-participant subsidy for such benefits

to retirees under the Oncor Plan.  If upon (i) a 50% RTCEH Subsidy Reduction or (ii) a failure of RTCEH to make any payment due under this Schedule I (including the Administration Manual) within ninety (90) days of its due date, Oncor terminates the OSPP pursuant to Section 6 or Section 8(c), for as long as Oncor offers such benefits and provides a per-participant subsidy for such benefits to retirees under the Oncor Plan, Oncor shall determine the benefits to be offered to Oncor Plan Split Participants in its sole and absolute discretion under this Section 9 (which shall in all events include the Oncor Subsidy and may include cash payments to the Oncor Plan Split Participants equal to the Oncor Subsidy in lieu of the provision of any post-retirement benefits), and Sections 3 and 6 shall have no further force or effect.

10. **Cooperation**.  The Parties agree to cooperate with each other in any reasonable manner to carry out the terms of this Agreement.  RTCEH acknowledges and agrees that in order to facilitate operation of the Oncor Plan and the OSPP, as the case may be, Oncor will need information from RTCEH with respect to each Oncor Plan Split Participant who retired or retires from RTCEH or its affiliates and their predecessors, and RTCEH agrees to provide such information to Oncor in the manner and at the times specified in the Administration Manual. Oncor acknowledges and agrees that Oncor shall provide to RTCEH information required to fulfill its obligations under this Agreement, including, without limitation, Oncor Plan Split Participant contact information, information regarding plan amendments, actuarial data, and accounting information, on an annual basis, or more frequently upon request as may be further specified in the Administration Manual.  The Parties agree to work together in good faith, as necessary, to implement an appropriate approach that satisfies any new regulatory requirements applicable to the OSPP in the future.

## SCHEDULE II
## RETIREMENT PLAN OBLIGATIONS

WHEREAS, the Parties acknowledge that, pursuant to the Plan, RTCEH has assumed the EFH Retirement Plan from EFH and as a result RTCEH sponsors, maintains and administers (or, if applicable, will sponsor, maintain and administer) the EFH Retirement Plan that covers certain Split Participants ("EFH Split Participants");

WHEREAS, the Separation Agreement by and between TXU Corp., a Texas corporation and Oncor Holdings dated October 10, 2007 set forth certain provisions regarding the shared funding of pension benefits under the EFH Retirement Plan for the EFH Split Participants (such provisions are hereinafter collectively referred to as the "Funding Agreement");

WHEREAS, RTCEH shall for all purposes be the sponsor of the EFH Retirement Plan and RTCEH or its designee shall be plan administrator for the EFH Retirement Plan;

WHEREAS, the Parties desire and agree to continue to share the costs of funding of the EFH Retirement Plan as described in this Schedule II; and

NOW, THEREFORE, the Parties hereby agree as follows:

1.  **Aon Calculation Method**.  The Parties acknowledge and agree to continue to utilize the methods of allocating liabilities, costs and expenses associated with the EFH Retirement Plan that are in effect on the date hereof, including (i) the method of allocating any amount that may be required to be contributed to any trust established for the purpose of funding benefits under the EFH Retirement Plan, and (ii) the method for allocating between the Parties pension liabilities, costs and expenses under the EFH Retirement Plan (which method is described in the direct 2008 rate case testimony filed with the Public Utilities Commission of Texas by Don Shipman, and more specifically described in the letter from Aon Hewitt to EFH dated November 13, 2012, addressing pension benefits, which is attached hereto as <u>Exhibit II-A</u> (together with any mutually-agreed upon updates to said allocations, the "Aon Calculation Method")).  The Parties agree that the Aon Calculation Method is fair, appropriate and non-arbitrary, and that, pursuant to such method, each Party will bear its fair share of such liabilities, costs and expenses.  The term "Allocable Liabilities" shall mean, with respect to each Party, the projected benefit obligations allocated to such Party by the enrolled actuary for the EFH Retirement Plan in accordance with the Aon Calculation Method.  The Parties further agree that Allocable Liabilities shall be calculated by taking into account, if applicable, (i) any plan termination liability; (ii) any premiums payable to the Pension Benefit Guaranty Corporation (the "PBGC"); (iii) the cost of obtaining annuities; and (iv) any other costs or expenses under the EFH Retirement Plan.  The term "Allocable Assets" shall mean, with respect to each Party, the fair value of the plan assets allocated to such Party by the enrolled actuary for the EFH Retirement Plan in accordance with the Aon Calculation Method.  For avoidance of doubt, the Parties acknowledge that the Aon Calculation Method utilizes Generally Accepted Accounting Principles ("GAAP") to calculate Allocable Liabilities and Allocable Assets for an ongoing plan and a plan undergoing a "standard" plan termination as defined in ERISA § 4041(b), and that the Aon Calculation Method utilizes the actuarial assumptions outlined in 29 C.F.R. § 4044 in the event of a "distress" or "involuntary" plan termination as defined in

13

ERISA § 4041(c) or 4042.  RTCEH shall not alter or otherwise change the Aon Calculation Method without the prior written agreement of Oncor other than as otherwise required by law.  RTCEH as sponsor of the EFH Retirement Plan may amend the EFH Retirement Plan at any time, as required by federal laws, in order to ensure that the EFH Retirement Plan maintains its qualified plan status and is in compliance with the requirements of any applicable collective bargaining agreement, ERISA, the Code and other applicable laws.  Except as set forth in the immediately preceding sentence, RTCEH further agrees it will not amend, modify or terminate the EFH Retirement Plan during the Transition Period without the consent of Oncor, which consent will not be unreasonably withheld and will not, without the consent of Oncor, which will not be unreasonably withheld, amend, modify or terminate the EFH Retirement Plan at any time thereafter if such amendment, modification or termination reflects a material increase in the accrued benefit provided to any Split Participant and that would result in a material increase in Oncor's Allocable Liabilities with respect to the EFH Retirement Plan.

2.  **Ongoing Reimbursement by Oncor to RTCEH in Respect of EFH Retirement Plan**.

   a.  Prior to the start of each plan year commencing after the year of the Separation and Transfer, the actuary for the EFH Retirement Plan will send a statement to Oncor and RTCEH identifying each Party's share of the required minimum contributions (determined in accordance with Code Section 412 and ERISA Section 302) (each such contribution a "Minimum Contribution," and collectively, the "Minimum Contributions") with respect to the EFH Retirement Plan for such plan year and the due dates for the same, together with supporting documentation showing the calculation of such Minimum Contributions.  Each Party's share of each Minimum Contribution shall be calculated by multiplying the amount of such Minimum Contribution by the percentage determined by dividing (i) such Party's "Allocable Share of Unfunded Benefit Liabilities" (as defined below) by (ii) the sum of (A) such Party's Allocable Share of Unfunded Benefit Liabilities plus (B) the other Party's Allocable Share of Unfunded Benefit Liabilities (each such Party's portion of the Minimum Contribution as so determined is hereafter referred to as such Party's "Allocable Share of Minimum Contribution").  In the event the sum of all of Oncor's Allocable Share of Minimum Contributions for a plan year exceeds its Allocable Share of Unfunded Benefit Liabilities for such plan year, Oncor's total Allocable Share of Minimum Contributions for such plan year shall be reduced to equal its Allocable Share of Unfunded Benefit Liabilities for such plan year, and RTCEH shall be responsible for the difference.  In the event the Allocable Share of Unfunded Benefit Liabilities for both Oncor and RTCEH are both zero, but there is a scheduled minimum contribution for the year, all scheduled contributions will be allocated to RTCEH.

   b.  If the actuary cannot provide an allocation prior to the first required contribution for a plan year, the Parties agree that the actuary may provide an allocation based on an estimate of the contribution and its allocation (with any differences between the estimated allocation and the final allocation reflected in subsequent contributions after the final allocation is completed).

c.  For each plan year, the actuary for the EFH Retirement Plan will perform a true-up calculation of each Party's Allocable Share of Unfunded Benefit Liabilities for such plan year and shall adjust each Party's Allocable Share of Minimum Contribution accordingly for the next plan year.

d.  RTCEH shall tender each Minimum Contribution (including, for the avoidance of doubt, Oncor's Allocable Share of Minimum Contribution and RTCEH's Allocable Share of Minimum Contribution) to the EFH Retirement Plan trust no later than ten (10) days prior to its due date.  Within ten (10) days of receipt by Oncor from RTCEH of written documentation evidencing RTCEH's contribution to the trust established for the EFH Retirement Plan of the total Minimum Contribution due (including, for the avoidance of doubt, Oncor's Allocable Share of Minimum Contribution and RTCEH's Allocable Share of Minimum Contribution), Oncor agrees to pay to RTCEH its Allocable Share of Minimum Contribution.  In the event RTCEH does not contribute all or a portion of a Minimum Contribution to the trust established for the EFH Retirement Plan by the due date of such Minimum Contribution, Oncor may tender the unpaid portion of its Allocable Share of Minimum Contribution on behalf of RTCEH directly to the trust established for the EFH Retirement Plan.  Notwithstanding any provision of this Schedule II to the contrary, the payment by Oncor of its funding obligation under this Section 2 is conditioned on RTCEH making a corresponding contribution in respect of its Allocable Share of Minimum Contribution.  Oncor's payment to RTCEH pursuant to this Section 2 shall reimburse RTCEH for the amount RTCEH tendered to the EFH Retirement Plan with respect to Oncor's Allocable Share of Minimum Contribution.

e.  For purposes of this Schedule II, the term "Allocable Share of Unfunded Benefit Liabilities" with respect to each Party shall mean the positive difference (if any) between (i) the applicable Party's Allocable Liabilities minus (ii) the applicable Party's Allocable Assets, as determined in accordance with Section 1 of this Schedule II on an ongoing basis.  If a Party's Allocable Assets exceeds such Party's Allocable Liabilities, the Party's Allocable Share of Unfunded Benefit Liabilities shall be zero. In calculating a Party's "Allocable Share of Unfunded Benefit Liabilities," Allocable Assets and Allocable Liabilities shall be determined as of the end of the year preceding the relevant contribution year.

f.  For the year in which the Separation and Transfer occurs, the Party's agree to provide any required minimum funding contributions in accordance with a statement to be provided by the actuary following the effective date of this Agreement.

3.  **Specific Event Reimbursement by Oncor to RTCEH in Respect of EFH Retirement Plan**.  In the event that in any given plan year the enrolled actuary of the EFH Retirement Plan determines that any of the benefit restrictions under Code Section 436 ("Benefit Restrictions")  may, in its reasonable discretion, apply to the EFH Retirement Plan, the enrolled actuary shall calculate the contribution amount owed by each Party to avoid the Benefit Restrictions based on each Party's Allocable Share of Unfunded Benefit Liabilities and shall advise the Parties of the timing of the required contributions; provided, however, that if a Party's Allocable Share of Unfunded Benefit Liabilities is

zero, the other Party shall tender the entire contribution amount necessary to avoid the Benefit Restrictions.

Oncor shall, upon written request from RTCEH, which request shall include supporting documentation showing the calculation of such contribution amount owed and evidence of RTCEH's payment to the trust under the EFH Retirement Plan of such amount (the "Benefit Restriction Request"), timely tender to RTCEH its Allocable Share of Unfunded Benefit Liabilities up to the maximum amount required to avoid Benefit Restrictions. For the avoidance of doubt, Oncor shall not remit payment to RTCEH in accordance with this Section 3 until RTCEH has contributed such amount to the trust under the EFH Retirement Plan. Notwithstanding any provision of this Schedule II to the contrary, the payment by Oncor of its funding obligation under this Section 3 is conditioned on RTCEH making a corresponding contribution in respect of its Allocable Share of Unfunded Benefit Liabilities unless RTCEH's Allocable Share of Unfunded Benefit Liabilities is zero at the time such contribution is necessary. RTCEH shall timely tender its Allocable Share of Unfunded Benefit Liabilities up to the maximum amount owed to avoid Benefit Restrictions as well as the amount of the Benefit Restriction Request to the EFH Retirement Plan trust. Oncor's payment of the Benefit Restriction Request to RTCEH shall reimburse RTCEH for the amount RTCEH tendered to the EFH Retirement Plan with respect to the Benefit Restriction Request. In the event that RTCEH fails to timely tender the amount of the Benefit Restriction Request to the EFH Retirement Plan trust, Oncor will tender the amount of the Benefit Restriction Request on behalf of RTCEH directly to the EFH Retirement Plan trust.

4.  **Plan Termination**. In the event that RTCEH wishes to terminate the EFH Retirement Plan under a standard or distress termination, RTECH shall provide Oncor with notice of at least one hundred fifty (150) days prior to the proposed termination date. In the event RTCEH receives written notice of the PBGC's intent to initiate an involuntary termination of the EFH Retirement Plan, RTCEH shall promptly provide Oncor with such written notice. In the case of a standard, distress, or involuntary plan termination, the EFH Retirement Plan enrolled actuary shall calculate the (i) plan termination liability and (ii) any other costs or expenses under the EFH Retirement Plan, in accordance with the assumptions for terminating such plan and each Party shall pay its respective share of the plan termination liability by the date indicated by the enrolled actuary, which shall in each case be prior to the date(s) mandated by ERISA. Notwithstanding any provision of this Schedule II to the contrary, in the event that Oncor has a funding obligation under this Section 4 as a result of a standard termination, the payment by Oncor of its funding obligations under this Section 4 is conditioned on RTCEH making a corresponding contribution in respect of its share of such termination liabilities. Upon satisfaction of Oncor's payment of such liability and other costs and expenses, Oncor shall have no further obligation to RTCEH in respect of the EFH Retirement Plan other than as provided in this Agreement.

5.  **Contributing Sponsor Status**. Notwithstanding any other provision of this Agreement or Schedule II to the contrary, the Parties acknowledge and agree that Oncor's obligation in respect of the funding of the EFH Retirement Plan is solely a contractual obligation to RTCEH under this Agreement and that Oncor shall be liable under this Schedule II only

for its Allocable Share of Unfunded Benefit Liabilities and shall not be liable for RTCEH's Allocable Share of Unfunded Benefit Liabilities under the EFH Retirement Plan. It is the intent of the Parties that Oncor is not and will not become a "contributing sponsor" of the EFH Retirement Plan as such term is defined in ERISA Section 4001(a)(13), and nothing contained in this Schedule II or otherwise in this Agreement shall be construed otherwise.

6. **Plan Administrative Expenses**.   Except as otherwise provided in <u>Exhibit II-B</u>, the Parties agree that Permissible Expenses (as defined below) shall be charged against each party's Allocable Assets in proportion to each party's Allocable Assets compared to the total assets under the EFH Retirement Plan as of the date designated by the plan administrator.   The term "Permissible Expenses" includes those expenses properly payable from the plan assets of the EFH Retirement Plan in accordance with ERISA. Expenses that are not properly payable from plan assets shall be allocated in accordance with historical practice.

7. **Dispute Resolution**.   Notwithstanding any provision of this Agreement to the contrary, Oncor may engage its own enrolled actuary to calculate its Allocable Liabilities, Allocable Assets, Allocable Share of Unfunded Benefit Liabilities, and any and all payments to be made by Oncor in accordance with this Schedule II.  If the Parties' enrolled actuaries do not agree on any such calculations, the Parties agree that they shall cause each enrolled actuary to prepare and deliver to the other a statement setting forth the enrolled actuary's calculation and methodologies.   The Parties agree to negotiate in good faith for 60 days following receipt of such statements in order to come to an agreement as to such calculations.   If, at the end of such 60 day period, the enrolled actuaries and the Parties have not resolved such disputes, the two enrolled actuaries shall select a third enrolled actuary, and such third enrolled actuary shall determine which of the calculation and methodologies prepared by the two prior enrolled actuaries is correct. Such new enrolled actuary's determination shall be set forth in a written statement delivered to the Parties and the determination shall be final, binding and non-appealable. All fees and expenses of such third enrolled actuary shall be borne 50% by Oncor and 50% by RTCEH.

8. **Reservation of Rights**.  Nothing in this Schedule II shall be deemed to constitute a provision of, or an amendment to the EFH Retirement Plan or any other benefit plan maintained by either Oncor or RTCEH, nor shall this Schedule II be deemed to limit, in any way, the authority of either Oncor or RTCEH to amend or terminate their respective benefit plans from time to time in accordance with the terms of such plans except as otherwise provided in Section 1 hereof.

9. **No Third Party Beneficiary Rights**.  Nothing in this Schedule II shall create any third party beneficiary rights for any individual, including without limitation, any EFH Split Participant or his/her beneficiary, nor shall this Schedule II be deemed to provide any EFH Split Participant or beneficiary, or any other individual, with any right to continued coverage under the EFH Retirement Plan or any other plan of Oncor or RTCEH.  This Schedule II relates solely to the EFH Retirement Plan and does not affect RTCEH's obligation to any participant or beneficiary who is not an EFH Split Participant.

10. **Termination**.  This Schedule II will automatically terminate in the event that (a) the EFH Retirement Plan is terminated; or (b) benefits under the EFH Retirement Plan are no longer payable to EFH Split Participants.

11. **Representation on EFH Retirement Plan Investment Committee**. During the term of the obligations under this Schedule II the investments of the trust for the EFH Retirement Plan shall be governed by a committee (the "Investment Committee"), and Oncor shall have the right to have three (3) voting members named by Oncor when the Investment Committee has seven (7) voting members.

## SCHEDULE III

## LIFE INSURANCE

WHEREAS, certain retirees of Oncor, RTCEH and their predecessors and affiliates may be eligible for life insurance subsidies from both Oncor and RTCEH; and

WHEREAS, the Parties have agreed to address the provision of life insurance benefits to such retirees in accordance with this Schedule III.

NOW, THEREFORE, the Parties hereby agree as follows:

1.      On October 3, 2016, RTCEH will pay Oncor $7,000,000 for full payment of the life insurance premiums for Split Participants listed in the attached Exhibit III-A in proportion to their assigned non-regulated service.

2.      Oncor will assume all of RTCEH's obligations and liabilities with respect to life insurance benefits being provided to the Split Participants listed in the attached Exhibit III-A and, subject to the provisions set forth in this Section 2, any other Split Participants not listed on Exhibit III-A who (i) retire from RTCEH or an affiliate, successor or predecessor of RTCEH (or a successor or predecessor of an affiliate of RTCEH) prior to December 31, 2016, and (ii) for whom RTCEH has agreed to provide life insurance benefits upon retirement (the "Future Eligible Life Split Participants"). If there are more than fifty (50) Future Eligible Life Split Participants, the Parties agree that they will calculate an amount to be paid by RTCEH to Oncor to cover RTCEH's obligations and liabilities with respect to the aggregate life insurance benefits for such Future Eligible Life Split Participants (the "Additional Payment"). Oncor shall provide the life insurance benefit to such Future Eligible Life Split Participants if: (i) there are no more than fifty (50) Future Eligible Life Split Participants; or (ii) RTCEH pays the Additional Payment to Oncor.

3.      Oncor will continue providing the same level of life insurance benefits currently provided.

4.      If Oncor terminates the life insurance benefits being provided to the Split Participants listed on Exhibit III-A and the Future Eligible Life Split Participants, if any, prior to the date that all amounts paid in Sections 1 and 2 of this Schedule III have been used by Oncor to pay or fund premiums for such life insurance benefits, Oncor shall pay to RTCEH the net amount paid under Sections 1 and 2 less the actual out-of-pocket amounts used to pay life insurance premiums for such participants through the date on which such benefits are terminated.

19

# EXHIBIT I-A

## AON HEWITT WELFARE LETTER

2203435.1

**EXHIBIT I-B**

**AON HEWITT MEMORANDUM**

2203435.1

**EXHIBIT I-C**

**ADMINISTRATION MANUAL**

2203435.1

**EXHIBIT II-A**

**AON CALCULATION METHOD**

2203435.1

**EXHIBIT II-B**

**EXPENSES**

No expenses listed.

24

2203435.1

**EXHIBIT III-A**

**LIFE INSURANCE SPLIT PARTICIPANT LIST**

2203435.1

**EXHIBIT I-A**

**AON HEWITT WELFARE LETTER**



November 13, 2012

Mr. Robert Moussaid
Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, TX 75201-3411

Dear Robert,

Subject:   Documentation of Assignment of Postretirement Welfare Benefits—Revised

This letter documents the process that took effect on January 1, 2005, to (1) assign postretirement welfare plan benefits, (2) calculate postretirement welfare plan liabilities, (3) allocate postretirement welfare plan assets, and (4) calculate accounting costs for the following business segments that participate in the EFH Postretirement Welfare Plan:

- Oncor Electric Delivery (Regulated Operations)
- Non-regulated EFH Operations
    - Mining (Luminant Mining Services)
    - Sandow
    - Other Genco (Luminant Power Services)
    - EFH Corp.
    - Retail (TXU Energy Retail)
    - Business Services (EFH Corp. Services)
    - Portfolio Management (Luminant Energy Services)
    - Discontinued Operations

This letter updates our previous letter dated January 26, 2012, to reflect the agreement between EFH and Oncor related to the allocation of pre-2002 service for certain employees of Business Services and EFH Corp.

## Assignment of Postretirement Welfare Plan Benefits

Section 36.065 of the Public Utility Regulating Act provides that benefits attributable to the service of employees and retirees who were employed by the predecessor integrated electric utility before the utility's unbundling (as of January 1, 2002) shall be assigned to Oncor Electric Delivery. A copy of this section of the Act is attached for reference. As described below, the assignment of benefits depends on the date on which an individual separates from service as well as the business segment for which he or she works.

2711 North Haskell Avenue | Suite 800 | Dallas, TX 75204
t +1.214.989.0000 | f +1.214.989.2683 | aonhewitt.com
Proprietary & Confidential



## Plan Participants Separating Before January 1, 2002 ("Pre-2002 Terminations")

Plan benefits for employees who separated from service with EFH prior to January 1, 2002, and did not subsequently transfer after January 1, 2005, are assigned as follows:

- Benefits for most pre-2002 terminations are fully assigned to the business segment based on the company code reported by EFH in the census data:
    - Benefits for those reported with company codes for Electric Delivery, Genco (including Mining and Sandow), or Retail are fully assigned to Oncor.
    - Benefits for those reported with company codes for Portfolio Management or Discontinued Operations are fully assigned to the business segment indicated by their reported company code.
- Benefits for pre-2002 terminations with a reported company code for Business Services or EFH Corp. are assigned as follows:
    - 64.43% of the benefit is assigned to Oncor.
    - 35.57% of the benefit is assigned to the business segment indicated by their reported company code.

The 64.43% allocation represents the average aggregate portion of the time that Business Services spent supporting the regulated electric utility as of January 1, 2002, as determined by EFH.

Some pension plan participants were reported by EFH with two company codes and two corresponding monthly pension benefit fields. Pension benefits for these pre-2002 terminations were assigned directly based on the reported pension amounts. For consistency, postretirement welfare benefits for these pre-2002 terminations were assigned in the same proportion as the pension benefits.

## Plan Participants Separating On or After January 1, 2002 ("Post-2001 Terminations")

Plan benefits for employees who separated from service with EFH on or after January 1, 2002, and did not subsequently transfer after January 1, 2005, are assigned as follows:

- Benefits for post-2001 terminations reported with company codes for Electric Delivery are fully assigned to Oncor.
- Benefits for post-2001 terminations reported with company codes for Portfolio Management or Discontinued Operations are fully assigned to the business segment indicated by their reported company code.
- Benefits for post-2001 terminations reported with company codes for Genco (including Mining and Sandow) or Retail are assigned as follows:
    - A portion of each plan participant's benefit is assigned to Oncor. The applicable portion is calculated as the ratio of (a) service as of December 31, 2001, over (b) total service at separation of employment.
    - The remaining portion of each plan participant's benefit is assigned to the business segment indicated by their reported company code at the time they separated from service. The remaining portion is calculated as the ratio of (a) service beginning January 1, 2002, over (b) total service at separation of employment.



- Benefits for post-2001 terminations with a reported company code for Business Services or EFH Corp. are assigned as follows:
    - A portion of each plan participant's benefit is assigned to Oncor. The applicable portion is calculated as the ratio of (a) service as of December 31, 2001, over (b) total service at separation of employment. This ratio is further multiplied by 64.43%
    - The remaining portion of each plan participant's benefit is assigned to the business segment indicated by their reported company code at the time they separated from service. This portion includes 35.57% of the amount attributable to service as of December 31, 2001, plus the full amount attributable to service beginning January 1, 2002.
- Company codes as of January 1, 2002, were not available at the time the initial assignment of benefits was performed. Therefore, the assignment of benefits related to pre-2002 service is based on the company code reported as of January 1, 2005 (as a proxy for January 1, 2002). The calculations are generally based on credited service at separation of employment as reported by EFH. For cases where this information was not reported, the service was instead calculated from the vesting service date, if reported, or else from the hire date.
- Some pension plan participants were reported by EFH with two company codes and two corresponding monthly pension benefit fields. These data elements were not reflected in the assignment of benefits for post-2001 terminations.

## Impact of 2012 Agreement

When the approach to assign benefits was first adopted in 2005, EFH was not concerned about the assignment of individual benefit amounts since all EFH and Oncor employees were covered by the same pension and retiree welfare plans. That situation changed during 2012 as a separate nonqualified pension plan has now been adopted by Oncor and the formulas for determining participant contributions to the retiree medical plan are scheduled to differ between Oncor and EFH beginning January 1, 2013.

Under the initial assignment, Business Services employees who terminated employment after January 1, 2005, were treated differently than similarly situated Business Services employees who terminated prior to that date. In recognition of the new situation regarding pension and retiree medical plans, EFH and Oncor agreed to assign benefits for all Business Services employees the same way, based on the approach previously used for pre-2005 terminations. EFH and Oncor also agreed to assign benefits for employees of EFH Corp. using the same approach as for employees of Business Services.

In recognition of this change, certain benefits were re-assigned during 2012 from Business Services and EFH Corp. to Oncor. At the same time, plan assets equal to the benefit obligation attributable to these re-assigned benefits were re-allocated from Business Services and EFH Corp. to Oncor for the pension plans. The asset transfer related to the OPEB plan will be determined by EFH and Oncor, and will not impact the FAS 106 expense calculation. Because the prior assignment method has been communicated to and approved by the Public Utility Commission, Oncor asked that these benefits be separately identified and tracked. As a result, the associated benefit obligations, corresponding plan assets and resulting pension and post retirement welfare cost will not be included in rate case recovery.



## Transfers Between Business Segments

Plan benefits attributable to service prior to January 1, 2002, are assigned to business segments based on an employee's reported company code as of January 1, 2005, as described above. If an employee transfers between business segments after January 1, 2005, benefits attributable to service after January 1, 2002, are assigned to the business segment based on the company code reported as of separation of employment.

Multiple transfers between business segments and transfers prior to January 1, 2005, are not reflected in the assignment of benefits. Rather, benefits attributable to pre-2002 service are assigned based on the company code reported as of January 1, 2005, and benefits attributable to service after January 1, 2002, are assigned based on the company code reported as of separation of employment.

Exhibit 1 of this letter illustrates the process for some sample plan participants. Exhibit 2 graphically illustrates the process.

## Calculation of Postretirement Welfare Plan Liabilities

Once the health care and life insurance benefits for each plan participant are assigned to each business segment, the relevant actuarial liabilities are calculated at each valuation date based on the assigned portions of the benefits.

### Accounting

Liabilities for ASC 715 (formerly known as FAS 106) accounting are:

- Expected postretirement benefit obligation ("EPBO") is the actuarial present value of the company-subsidized portion of all projected benefits expected to be paid by the plan to the plan participant and any covered dependents.

- Accumulated postretirement benefit obligation ("APBO") is the portion of the EPBO attributed to past service over the total projected service at the date a retiree is fully eligible for retiree benefit coverage. An individual's APBO is shared between business segments in the same proportion as the benefit is assigned. The difference between an individual's EPBO and APBO (i.e. future service accruals) is fully borne by the current business segment.

- Service cost ("SC") is the actuarial present value of benefits attributable to the current year. An individual's SC is fully borne by the current business segment.

Exhibit 3 of this letter shows the progression of the APBO from January 1, 2005, through December 31, 2010. The APBOs for health care benefits and life insurance benefits are shown separately.

### Benefit Payments and Retiree Premiums

Health care benefit payments and retiree premiums within the health care trusts (Union VEBA, Non-Union VEBA and 401(h) account) are reported by the trustee; however, the trustee does not assign each individual's portion to the separate business segments. Therefore, the aggregate benefit payments and retiree premiums are allocated to the business segments each year in proportion to the



expected health care payment amounts for the year that are implicit in the actuarial calculation of plan liabilities.

Likewise, life insurance benefits within the Life Insurance VEBA are reported by the trustee; however, the trustee does not assign each individual's portion to the separate business segments. Therefore, the aggregate benefit payment amount is allocated to the business segments each year in proportion to the expected life insurance payment amount for the year that is implicit in the actuarial calculation of plan liabilities.

## Allocation of Plan Assets

As of January 1, 2005, all health care trust assets in the Union VEBA, Non-Union VEBA and 401(h) account, except those directly attributable to the former TXU Gas Company were assigned to Oncor, as directed by EFH. The rationale for this decision was that all trust fund contributions were made prior to 2002 by the regulated power/generation company pursuant to rate case requirements, so the entire fund balance should be assigned to Oncor.

Life Insurance VEBA assets were also fully assigned to Oncor based on the same rationale. However, the life insurance continuance reserve (ICR) assets as of January 1, 2005, were assigned to the business units (including Oncor) in proportion to the APBO for the life insurance benefits the ICR fund supports. The rationale for this decision was that contributions to the ICR were made by all TXU business units, so the fund balance should be allocated in proportion to the benefit liabilities.

Each subsequent year, the fair value of plan assets for each business segment is tracked by:

- Adding employer contributions allocated among business segments as determined by EFH.
- Subtracting claims payments based on the assignment described above.
- Adding retiree premiums based on the assignment described above.
- Reflecting a proportionate share of investment returns, net of plan expenses.

Exhibit 4 of this letter shows the progression of the fair value of assets from January 1, 2005, through December 31, 2010.

## Calculation of Accounting Costs

### Accounting Balances

The following procedures were used to allocate the accounting balances among business segments at January 1, 2005:

- Prior to January 1, 2005, the unrecognized prior service cost and unrecognized net transition obligation, and associated amortization amounts, were maintained separately for each business segment. These amounts continued to be maintained after January 1, 2005.
- The net amount recognized on the balance sheet was allocated to each business segment in proportion to the funded status (APBO less fair value of plan assets).
- The unrecognized net gain/loss was allocated to each business segment as a balancing item.



The accounting balances were established for each business segment at January 1, 2005. Each subsequent year, the balances are tracked based on the amortization amount and newly established bases for the year. New prior service cost bases are calculated for each business segment based on the impact of plan changes on the benefits assigned as described above. New net gains/losses are calculated directly for each business segment based on the differences between expected and actual experience on assigned plan liabilities and tracked assets.

Effective October 10, 2007, Energy Future Holdings Corp. recognized purchase accounting for the non-regulated operations. As a result, all unrecognized accounting balances attributable to non-regulated operations were eliminated at that time.

## Accounting Cost

The postretirement benefit expense under ASC 715 (formerly known as FAS 106) for each business segment is calculated as follows:

- Service cost is calculated separately for each business segment as described above.

- Interest cost is determined for each business segment based on the APBO calculated separately for each business segment as described above.

- Expected return on plan assets is calculated separately for each business segment based on the assets tracked for each business segment as described above.

- The net transition obligation is amortized for each business segment in accordance with the allocation described above.

- Prior service costs are amortized for each business segment in accordance with the allocation and treatment of subsequent plan changes as described above.

- The amortization of net (gains)/losses is determined separately for regulated and non-regulated operations, and then allocated proportionally over the non-regulated business segments.

## Valuation Assumptions

The valuation assumptions used for the plan are determined as follows:

- A single discount rate is determined based on the aggregate plan cash flows.

  - Upon evaluation of the discount rate separately for regulated and non-regulated operations, the rate was found not to be significantly different.

- A single expected rate of return assumption is determined based on the weighted average of the plan's trust funds.

- Other valuation assumptions are generally applied consistently for all business segments, unless future expectations warrant differences.

## Closing

For your reference, I have also attached the 2008 rate case testimony prepared by Pierce Noble which provides additional details of the benefit assignment and cost calculations. I hope this provides you sufficient documentation for your files.



Let us know if you have any questions.

Sincerely,

Aon Hewitt

Alan S. Taper
FSA, EA
Partner

AST:mct 03509L037
cc: Mr. Drew Boswell, Aon Hewitt
    Mr. Brian Levine, Aon Hewitt
    Mr. Brian Walker, Aon Hewitt



Exhibit 1

# Assignment of Postretirement Welfare Benefits for Sample Plan Participants

## Pre-2002 Terminations

|  | Oncor Electric Delivery | Genco, Retail | EFH Corp., Business Services | Portfolio Mgmt., Discontinued Ops. |
|---|---|---|---|---|
| Eligibility Date | 01/01/1993 | 01/01/1993 | 01/01/1993 | 01/01/1993 |
| Separation Date | 12/31/2000 | 12/31/2000 | 12/31/2000 | 12/31/2000 |
| Regulated Portion of Benefit | 100.00% | 100.00% | 64.43% | 0.00% |
| Nonregulated Portion of Benefit | 0.00% | 0.00% | 35.57% | 100.00% |

## Post-2001 Terminations

|  | Oncor Electric Delivery | Genco, Retail | EFH Corp., Business Services | Portfolio Mgmt., Discontinued Ops., Business Services |
|---|---|---|---|---|
| Eligibility Date | 01/01/1996 | 01/01/1996 | 01/01/1996 | 01/01/1996 |
| Separation Date | 12/31/2003 | 12/31/2003 | 12/31/2003 | 12/31/2003 |
| Pre-2002 Service | 6.0 years | 6.0 years | 6.0 years | 6.0 years |
| Post-2001 Service | 2.0 years | 2.0 years | 2.0 years | 2.0 years |
| Pre-2002 Ratio | N/A | 75.00% | 75.00% | N/A |
| Regulated Portion of Pre-2002 Benefit | 100.00% | 100.00% | 64.43% | 0.00% |
| Regulated Portion of Total Benefit[1] | 100.00% | 75.00% | 48.32% | 0.00% |
| Non-regulated Portion of Total Benefit[2] | 0.00% | 25.00% | 51.68% | 100.00% |

---

[1] Assigned to Oncor Electric Delivery.
[2] Assigned to the non-regulated business segment reported at separation.



Assignment of Postretirement Welfare Plan Benefits

Exhibit 2

Exhibit 3



Energy Future Holdings Corp.
Historical Progression of Accumulated Postretirement Benefit Obligation from January 1, 2005 through December 31, 2010

| | Health | | | Life | | | Health & Life | | |
|---|---|---|---|---|---|---|---|---|---|
| | Nonregulated | Oncor | Subtotal | Nonregulated | Oncor | Subtotal | Nonregulated | Oncor | Total |
| APBO, January 1, 2005 | $ 170,828,768 | $ 699,154,805 | $ 869,983,573 | $ 15,110,160 | $ 101,658,478 | $ 116,768,638 | $ 185,938,928 | $ 800,813,283 | $ 986,752,211 |
| Service Cost | 7,319,846 | 4,863,072 | 12,182,918 | 414,505 | 339,611 | 754,116 | 7,734,351 | 5,202,683 | 12,937,034 |
| Interest Cost | 9,613,235 | 40,051,133 | 49,664,368 | 869,534 | 5,920,477 | 6,790,011 | 10,482,769 | 45,971,610 | 56,454,379 |
| Participant Contributions[1] | 3,381,143 | 12,291,921 | 15,673,064 | - | - | - | 3,381,143 | 12,291,921 | 15,673,064 |
| Medicare Part D Reimbursement[1] | 2,411,270 | 2,528,842 | 4,940,112 | - | - | - | 2,411,270 | 2,528,842 | 4,940,112 |
| Plan Amendments | - | - | - | - | - | - | | | |
| Actuarial (Gain)/Loss[1] | (3,092,858) | 62,196,969 | 59,104,411 | 174,240 | 2,290,205 | 2,464,445 | (2,918,318) | 64,487,174 | 61,568,856 |
| Benefits Paid[1] | (16,608,086) | (52,025,773) | (68,633,859) | (1,186,343) | (3,909,949) | (5,096,292) | (17,794,429) | (55,935,722) | (73,730,151) |
| APBO, December 31, 2005 | $ 173,853,618 | $ 769,060,969 | $ 942,914,587 | $ 15,382,096 | $ 106,298,822 | $ 121,680,918 | $ 189,235,714 | $ 875,359,791 | $ 1,064,595,505 |
| APBO, January 1, 2006 | $ 173,853,618 | $ 769,060,969 | $ 942,914,587 | $ 15,382,096 | $ 106,298,822 | $ 121,680,918 | $ 189,235,714 | $ 875,359,791 | $ 1,064,595,505 |
| Service Cost | 7,005,503 | 5,314,379 | 12,319,882 | 423,408 | 441,592 | 865,000 | 7,428,911 | 5,755,971 | 13,184,882 |
| Interest Cost | 9,173,871 | 43,827,199 | 53,001,070 | 834,272 | 6,089,740 | 6,924,012 | 10,008,143 | 49,916,939 | 59,925,082 |
| Participant Contributions | 1,126,689 | 13,084,954 | 14,211,643 | - | - | - | 1,126,689 | 13,084,954 | 14,211,643 |
| Medicare Part D Reimbursement | 2,411,270 | 2,528,842 | 4,940,112 | - | - | - | 2,411,270 | 2,528,842 | 4,940,112 |
| Plan Amendments | - | - | - | - | - | - | | | |
| Actuarial (Gain)/Loss | (58,690,517) | (65,345,652) | (124,036,169) | (5,808,715) | (19,872,949) | (25,681,664) | (64,499,232) | (85,218,601) | (149,717,833) |
| Benefits Paid | (12,246,452) | (43,810,079) | (56,056,531) | (534,094) | (3,008,228) | (3,542,322) | (12,780,546) | (46,818,307) | (59,598,853) |
| APBO, December 31, 2006 | $ 122,633,982 | $ 724,660,612 | $ 847,294,594 | $ 10,296,967 | $ 89,948,977 | $ 100,245,944 | $ 132,930,949 | $ 814,609,589 | $ 947,540,538 |
| APBO, January 1, 2007 | $ 122,633,982 | $ 724,660,612 | $ 847,294,594 | $ 10,296,967 | $ 89,948,977 | $ 100,245,944 | $ 132,930,949 | $ 814,609,589 | $ 947,540,538 |
| Service Cost | 6,244,568 | 5,191,972 | 11,436,540 | 287,325 | 280,128 | 567,453 | 6,531,893 | 5,472,100 | 12,003,993 |
| Interest Cost | 7,072,076 | 42,045,667 | 49,117,743 | 587,464 | 5,200,325 | 5,787,789 | 7,659,540 | 47,245,992 | 54,905,532 |
| Participant Contributions | 1,197,676 | 15,723,772 | 16,921,448 | - | - | - | 1,197,676 | 15,723,772 | 16,921,448 |
| Medicare Part D Reimbursement | 4,410,973 | 179,680 | 4,590,653 | - | - | - | 4,410,973 | 179,680 | 4,590,653 |
| Plan Amendments | - | - | - | - | - | - | | | |
| Actuarial (Gain)/Loss | (2,408,829) | (33,979,772) | (36,388,601) | (259,954) | (9,336,542) | (9,596,496) | (2,668,783) | (43,316,314) | (45,985,097) |
| Benefits Paid | (11,422,182) | (45,850,314) | (57,272,496) | (650,469) | (3,970,051) | (4,620,526) | (12,072,652) | (49,820,370) | (61,893,022) |
| APBO, December 31, 2007 | $ 127,728,264 | $ 707,971,617 | $ 835,699,881 | $ 10,261,332 | $ 82,122,832 | $ 92,384,164 | $ 137,989,596 | $ 790,094,449 | $ 928,084,045 |
| APBO, January 1, 2008 | $ 127,728,264 | $ 707,971,617 | $ 835,699,881 | $ 10,261,332 | $ 82,122,832 | $ 92,384,164 | $ 137,989,596 | $ 790,094,449 | $ 928,084,045 |
| Service Cost | 5,705,078 | 4,427,574 | 10,133,250 | 180,636 | 110,453 | 291,089 | 5,886,312 | 4,538,027 | 10,424,339 |
| Interest Cost | 8,247,903 | 44,961,580 | 53,209,483 | 675,236 | 5,168,554 | 5,843,790 | 8,923,139 | 50,130,134 | 59,053,273 |
| Participant Contributions | 3,044,751 | 12,972,002 | 16,016,753 | - | - | - | 3,044,751 | 12,972,002 | 16,016,753 |
| Medicare Part D Reimbursement | 974,176 | 3,363,051 | 4,337,227 | - | - | - | 974,176 | 3,363,051 | 4,337,227 |
| Plan Amendments | - | - | - | - | - | - | | | |
| Actuarial (Gain)/Loss | (7,179,872) | (22,956,716) | (30,136,588) | (648,989) | (4,465,068) | (5,114,057) | (7,828,861) | (27,421,784) | (35,250,645) |
| Revised Methodology Accounting Adjustment | 2,532,914 | (2,532,914) | - | 511,719 | (511,719) | - | 3,044,633 | (3,044,633) | - |
| Benefits Paid | (11,171,612) | (47,659,780) | (58,831,392) | (639,877) | (3,725,119) | (4,364,996) | (11,811,489) | (51,384,899) | (63,196,388) |
| APBO, December 31, 2008 | $ 129,882,200 | $ 700,546,414 | $ 830,428,614 | $ 10,340,057 | $ 78,699,933 | $ 89,039,990 | $ 140,222,257 | $ 779,246,347 | $ 919,468,604 |
| APBO, January 1, 2009 | $ 129,882,200 | $ 700,546,414 | $ 830,428,614 | $ 10,340,057 | $ 78,699,933 | $ 89,039,990 | $ 140,222,257 | $ 779,246,347 | $ 919,468,604 |
| Service Cost | 5,784,780 | 4,391,892 | 10,176,672 | 183,797 | 107,786 | 291,583 | 5,968,577 | 4,499,678 | 10,468,255 |
| Interest Cost | 8,620,848 | 46,797,498 | 55,418,344 | 678,482 | 5,209,078 | 5,887,560 | 9,299,328 | 52,006,576 | 61,305,904 |
| Participant Contributions | 3,039,819 | 13,026,827 | 16,066,646 | 876,821 | 5,499,925 | 6,376,746 | 3,916,640 | 18,526,752 | 22,443,392 |
| Medicare Part D Reimbursement | 1,196,216 | 4,510,220 | 5,706,436 | - | - | - | 1,196,216 | 4,510,220 | 5,706,436 |
| Plan Amendments | - | - | - | - | - | - | | | |
| Actuarial (Gain)/Loss | 14,986,868 | 89,093,448 | 104,080,116 | 397,076 | 3,465,599 | 3,862,675 | 15,383,744 | 92,559,047 | 107,942,791 |
| Benefits Paid | (11,220,108) | (47,466,557) | (58,686,665) | (737,141) | (4,623,757) | (5,360,898) | (11,957,249) | (52,090,314) | (64,047,563) |
| APBO, December 31, 2009 | $ 152,290,421 | $ 810,899,742 | $ 963,190,163 | $ 11,739,092 | $ 88,358,564 | $ 100,097,656 | $ 164,029,513 | $ 899,258,306 | $ 1,063,287,819 |
| APBO, January 1, 2010 | $ 152,290,421 | $ 810,899,742 | $ 963,190,163 | $ 11,739,092 | $ 88,358,564 | $ 100,097,656 | $ 164,029,513 | $ 899,258,306 | $ 1,063,287,819 |
| Service Cost | 6,854,686 | 5,418,105 | 12,272,791 | 243,549 | 137,735 | 381,284 | 7,098,235 | 5,555,840 | 12,654,075 |
| Interest Cost | 6,735,318 | 46,728,794 | 53,464,112 | 686,511 | 5,040,849 | 5,707,160 | 9,401,829 | 51,769,443 | 61,171,272 |
| Participant Contributions | 2,756,245 | 12,087,405 | 14,843,650 | 244,078 | 1,585,785 | 1,829,863 | 3,000,323 | 13,673,190 | 16,673,513 |
| Medicare Part D Reimbursement | 907,080 | 3,420,059 | 4,327,139 | - | - | - | 907,080 | 3,420,059 | 4,327,139 |
| Plan Amendments | - | - | - | - | - | - | | | |
| Actuarial (Gain)/Loss | 13,348,525 | 81,576,038 | 94,924,563 | 880,169 | 2,008,903 | 2,889,072 | 14,228,694 | 83,584,941 | 97,813,635 |
| Benefits Paid | (11,031,000) | (48,939,252) | (59,970,352) | (656,490) | (4,265,245) | (4,921,735) | (11,687,590) | (53,204,497) | (64,892,087) |
| APBO, December 31, 2010 | $ 173,861,175 | $ 911,190,891 | $ 1,085,052,066 | $ 13,116,909 | $ 92,866,391 | $ 105,983,300 | $ 186,978,084 | $ 1,004,057,282 | $ 1,191,035,366 |

[1] We have estimated the allocation of some information for 2005 since this information was not available from the disclosure results provided by Mercer

Exhibit 4



## Energy Future Holdings Corp.
Historical Progression of Postretirement Welfare Plan Assets from January 1, 2005 through December 31, 2010

| | Health | | | Life | | | Health & Life | | |
|---|---|---|---|---|---|---|---|---|---|
| | Nonregulated | Oncor | Subtotal | Nonregulated | Oncor | Subtotal | Nonregulated | Oncor | Total |
| Fair Value of Plan Assets, 1/1/2005 | $ 18,683,956 | $ 160,246,108 | $ 179,130,064 | $ 3,317,454 | $ 46,263,630 | $ 49,581,084 | $ 22,201,410 | $ 206,509,738 | $ 228,711,148 |
| Employer Contributions[1] | 3,709,115 | 47,891,870 | 51,600,985 | - | - | - | 3,709,115 | 47,891,870 | 51,600,985 |
| Participant Contributions[1] | 2,505,330 | 11,814,417 | 14,319,747 | - | - | - | 2,505,330 | 11,814,417 | 14,319,747 |
| Benefits Paid[1] | (10,555,537) | (46,245,270) | (56,800,807) | (1,186,343) | (3,909,949) | (5,096,292) | (11,741,880) | (50,155,219) | (61,897,099) |
| Actual Return on Plan Assets[1] | 1,043,902 | 8,639,643 | 9,683,545 | 133,123 | 2,388,048 | 2,521,171 | 1,177,025 | 11,027,691 | 12,204,716 |
| Fair Value of Plan Assets, 12/31/2005 | $ 15,586,766 | $ 182,346,768 | $ 197,933,534 | $ 2,264,234 | $ 44,741,729 | $ 47,005,963 | $ 17,851,000 | $ 227,088,497 | $ 244,939,497 |
| Fair Value of Plan Assets, 1/1/2006 | $ 15,586,766 | $ 182,346,768 | $ 197,933,534 | $ 2,264,234 | $ 44,741,729 | $ 47,005,963 | $ 17,851,000 | $ 227,088,497 | $ 244,939,497 |
| Employer Contributions | 1,728,093 | 25,839,824 | 27,567,917 | - | - | - | 1,728,093 | 25,839,824 | 27,567,917 |
| Participant Contributions | 1,126,689 | 13,084,954 | 14,211,643 | - | - | - | 1,126,689 | 13,084,954 | 14,211,643 |
| Benefits Paid | (12,246,452) | (43,810,079) | (56,056,531) | (534,094) | (3,008,228) | (3,542,322) | (12,780,546) | (46,818,307) | (59,598,853) |
| Actual Return on Plan Assets | 987,665 | 16,314,941 | 17,302,606 | 268,464 | 5,812,032 | 6,080,496 | 1,256,129 | 22,126,973 | 23,383,102 |
| Fair Value of Plan Assets, 12/31/2006 | $ 7,182,761 | $ 193,776,408 | $ 200,959,169 | $ 1,998,604 | $ 47,545,533 | $ 49,544,137 | $ 9,181,365 | $ 241,321,941 | $ 250,503,306 |
| Fair Value of Plan Assets, 1/1/2007 | $ 7,182,761 | $ 193,776,408 | $ 200,959,169 | $ 1,998,604 | $ 47,545,533 | $ 49,544,137 | $ 9,181,365 | $ 241,321,941 | $ 250,503,306 |
| Employer Contributions | 11,375,282 | 33,322,020 | 44,697,302 | - | - | - | 11,375,282 | 33,322,020 | 44,697,302 |
| Participant Contributions | 1,197,676 | 15,723,772 | 16,921,448 | - | - | - | 1,197,676 | 15,723,772 | 16,921,448 |
| Benefits Paid | (11,422,182) | (45,850,314) | (57,272,495) | (650,469) | (3,970,057) | (4,620,526) | (12,072,651) | (49,820,371) | (61,893,022) |
| Actual Return on Plan Assets | 281,210 | 7,081,721 | 7,362,931 | 103,584 | 2,820,254 | 2,923,838 | 384,794 | 9,901,975 | 10,285,769 |
| Fair Value of Plan Assets, 12/31/2007 | $ 8,614,747 | $ 204,053,607 | $ 212,668,354 | $ 1,451,719 | $ 46,395,730 | $ 47,847,449 | $ 10,066,466 | $ 250,449,337 | $ 260,515,803 |
| Fair Value of Plan Assets, 1/1/2008 | $ 8,614,747 | $ 204,053,607 | $ 212,668,354 | $ 1,451,719 | $ 46,395,730 | $ 47,847,449 | $ 10,066,466 | $ 250,449,337 | $ 260,515,803 |
| Employer Contributions | 8,576,188 | 31,055,581 | 39,631,769 | - | - | - | 8,576,188 | 31,055,581 | 39,631,769 |
| Participant Contributions | 3,044,751 | 12,972,002 | 16,016,753 | - | - | - | 3,044,751 | 12,972,002 | 16,016,753 |
| Benefits Paid | (11,171,612) | (47,659,780) | (58,831,392) | (639,877) | (3,725,119) | (4,364,996) | (11,811,489) | (51,384,899) | (63,196,388) |
| Actual Return on Plan Assets | (1,799,862) | (42,550,854) | (44,350,716) | (243,457) | (10,045,902) | (10,289,359) | (2,043,319) | (52,596,756) | (54,640,075) |
| Revised Methodology Accounting Adjustment | (273,391) | 273,391 | - | (51,301) | 51,301 | - | (324,692) | 324,692 | - |
| Fair Value of Plan Assets, 12/31/2008 | $ 8,990,821 | $ 158,143,947 | $ 165,134,768 | $ 517,084 | $ 32,676,010 | $ 33,193,094 | $ 7,507,905 | $ 190,819,957 | $ 198,327,862 |
| Fair Value of Plan Assets, 1/1/2009 | $ 8,990,821 | $ 158,143,947 | $ 165,134,768 | $ 517,084 | $ 32,676,010 | $ 33,193,094 | $ 7,507,905 | $ 190,819,957 | $ 198,327,862 |
| Employer Contributions | 4,629,436 | 17,816,316 | 22,445,752 | 74,528 | - | 74,528 | 4,703,964 | 17,816,316 | 22,520,280 |
| Participant Contributions | 3,039,819 | 13,026,827 | 16,066,646 | 876,821 | 5,499,925 | 6,376,746 | 3,916,640 | 18,526,752 | 22,443,392 |
| Benefits Paid | (11,220,108) | (47,466,557) | (58,686,665) | (737,141) | (4,623,757) | (5,360,898) | (11,957,249) | (52,090,314) | (64,047,563) |
| Actual Return on Plan Assets | 894,000 | 25,683,585 | 26,577,585 | 24,218 | 4,951,541 | 4,975,759 | 918,218 | 30,635,126 | 31,553,344 |
| Fair Value of Plan Assets, 12/31/2009 | $ 4,333,968 | $ 167,204,118 | $ 171,538,086 | $ 755,510 | $ 38,503,719 | $ 39,259,229 | $ 5,089,478 | $ 205,707,837 | $ 210,797,315 |
| Fair Value of Plan Assets, 1/1/2010 | $ 4,333,968 | $ 167,204,118 | $ 171,538,086 | $ 755,510 | $ 38,503,719 | $ 39,259,229 | $ 5,089,478 | $ 205,707,837 | $ 210,797,315 |
| Employer Contributions | 5,116,715 | 17,918,462 | 23,035,177 | 1,032,303 | 449,046 | 1,481,349 | 6,149,018 | 18,367,508 | 24,516,526 |
| Participant Contributions | 2,758,245 | 12,087,405 | 14,843,650 | 244,078 | 1,585,785 | 1,829,863 | 3,000,323 | 13,673,190 | 16,673,513 |
| Benefits Paid | (11,031,100) | (48,939,252) | (59,970,352) | (656,490) | (4,265,245) | (4,921,735) | (11,687,590) | (53,204,497) | (64,892,087) |
| Actual Return on Plan Assets | 337,143 | 19,303,797 | 19,640,940 | 48,380 | 4,118,346 | 4,166,726 | 385,523 | 23,422,143 | 23,807,666 |
| Fair Value of Plan Assets, 12/31/2010 | $ 1,512,971 | $ 167,574,530 | $ 169,087,501 | $ 1,423,781 | $ 40,391,851 | $ 41,815,632 | $ 2,936,752 | $ 207,966,181 | $ 210,902,933 |

[1] We have estimated the allocation of some information for 2005 since this information was not available from the disclosure results provided by Mercer

**EXHIBIT I-B**

**AON HEWITT MEMORANDUM**



## Memo

| | |
|---|---|
| To | Cyndie Ewert |
| From | Brian Walker |
| Date | August 7, 2015 |
| Re | EFH Determination of Retiree Rates for Medicare Eligible Retirees |

In 2013, Energy Future Holdings (EFH) implemented a limit or cap on how much it would subsidize retiree medical benefits for Medicare eligible retirees. This limit is subject to a 3% increase each year. In addition, the plan provides prescription drug coverage through EGWP (Employer Group Waiver Plan) such that the plan is eligible for certain federal subsidies and drug discounts.

## 2012 Cap

The cap was set based on 2012 costs and was determined differently for each of the plan options (Medical with Legacy Rx, Medical with Rx and Medical Only). Since the plan receives certain subsides from EGWP, EFH decided how it would treat each portion of the subsidies to determine the cap. The EGWP subsidies generally include three pieces: i) direct EGWP subsidy, ii) federal capitation payments and iii) 50% manufacturer discount on brand drugs. EFH defined the plan cost to establish the 2012 cap equal to per capita cost less the 50% manufacturer discount on brand drugs. EFH has continued to define plan costs similarly to determine the retiree's cost share. Retirees are eligible for the full manufacturer discount at point of service.

## Determination of Retiree Rates

Retirees pay a percentage of the cap based on the applicable rate band (0%, 10%, 20%, 40%, 60% or 100%), plus any excess over the cap. This is equivalent to the plan cost less EFH's subsidized portion of the cap.

Below is summary of the 2016 cap and an illustration on how capped rates are determined:

| Plan | (A) 2016 Cap | (B) 2016 Cost Less 50% Brand Rx Discount | (C) Excess Over 2016 Cap Cost, B-A | (D) 2016 Cost Less All EGWP Subsides | (E) Retiree Rate for 20% Cost Share, 20% X A plus C, not greater than D | (F) 2016 Employer Net Subsidy, D-E |
|---|---|---|---|---|---|---|
| **Medical with Legacy Rx** | $5,083 | $5,600 | $517 | $4,900 | $1,534 | $3,366 |
| **Medical with Rx** | $4,698 | $5,300 | $602 | $4,700 | $1,542 | $3,158 |
| **Medical Only** | $1,895 | $2,400 | $505 | $2,400 | $ 884 | $1,516 |

Note that the direct EGWP subsidy and federal capitation payments are not reflected in the determination of the retiree rates, but these amounts offset EFH's plan cost. The plan is restricted from charging more than the plan cost net of all EGWP subsidies (shown in column D which may apply in rate bands where the retiree cost share is high, e.g. access only coverage).

**Aon Hewitt** | Retirement and Investment
2711 North Haskell Avenue | Suite 800 | Dallas, TX 75204
t +1.214.989.0000 | f +1.214.989.0683 | aon.com
Proprietary & Confidential  10505M001



For "split" retirees where a portion of their employer subsidy is considered regulated, these retirees pay a prorated premium since the regulated portion (Oncor's) is not subject to the cap. For example, if a split retiree is allocated as 70% regulated, the retiree will pay 70% of the premium rate not subject to the cap plus 30% of the premium rate subject to the cap (as described above). Note that the retiree premium not subject to the cap is simply the retiree cost share of column B (cost less the 50% manufacturers' discount on brand drugs).

Retirees are also eligible to elect coverage on a Medicare exchange. In this situation, the HRA provided by EFH is a weighted average rate of the net cost reflecting the employer cap. Currently, very few retirees elect this option.

**EXHIBIT I-C**

**ADMINISTRATION MANUAL**

Dated October 3, 2016

# Oncor Split Participant Plan Administration Manual

Operation and Administration of the Oncor Plan Split Participants' Retiree Health and Welfare Benefits

## I. Purpose

The purpose of this manual is to establish general guidelines for certain aspects of administering health and welfare benefits for Oncor Plan Split Participants and is a supplement to, and incorporated into, that certain Amended and Restated Split Participant Agreement, dated as of October 3, 2016 (the "SPA"), by and between Oncor Electric Delivery Company LLC, a Delaware limited liability company f/k/a TXU Electric Delivery Company, a Texas corporation and TEX Operations Company LLC, a Delaware limited liability company ("RTCEH").  Undefined capitalized terms used herein shall have the meanings given them in the SPA.

## II. Determination of Oncor Plan Split Participants

The Parties agree that each individual included on Annex A hereto is an Oncor Plan Split Participant. Future determinations as to whether an individual is an Oncor Plan Split Participant will be made by mutual agreement among the Parties, and if necessary, Annex A will be updated to reflect the mutual agreement of the Parties with respect to such individual.  In the event the Parties cannot agree whether an individual should be an Oncor Plan Split Participant listed on Annex A, the Parties will resolve such dispute in accordance with the dispute resolution provisions included in subparagraph XIII.2. herein.

## III. Plan Design Changes

Oncor will communicate to RTCEH the expected benefits to be provided to retirees under the Oncor Plan or the OSPP on an annual basis no later than 60 days prior to the beginning of the plan year for which such benefits are to become effective and a description of any changes to the benefits as compared to the prior year. Oncor will communicate to RTCEH any mid-year plan design, insurance carrier and benefit changes that relate to the Oncor Plan Split Participants no later than 60 days prior to the effective date of such change.  In preparation for the transition of the Oncor Plan Split Participants from the Oncor Plan to the OSPP, Oncor shall provide RTCEH with a copy of the OSPP, summary plan description and/or summary of material modifications, participant communications and information regarding the insurance carriers and benefits selected to be provided under the OSPP to RTCEH at least 60 days prior to the end of the Transition Period. This Section III shall be effective for so long as Section 3 of Schedule I to the SPA remains in effect.

## IV. Individual Insurance Payment Determinations

Oncor will, in its sole discretion, determine the total insurance payment required for an Oncor Plan Split Participant's participation in the OSPP and in doing so may divide any aggregate increase or decrease in the costs of providing benefits under the OSPP for participants over age 65 and participants under age 65 among all Oncor Plan Split Participants.

2203438.1

Dated October 3, 2016

## V. Calculation of Oncor Plan Split Participant Retiree Allocation Factors

Certain active employees of Oncor and RTCEH may become eligible to receive subsidized post-retirement medical benefits under the Oncor Plan or the OSPP, as applicable, upon retirement. Such active employees of Oncor and RTCEH will continue to be credited with service for their employment with Oncor or RTCEH (or an RTCEH affiliate) following the Separation and Transfer for purposes of determining the subsidies provided to them by Oncor and RTCEH in accordance with past practice. RTCEH will send census data including the name, date of hire, and current enrollment elections for active employees of RTCEH that are Oncor Plan Split Participants to Oncor (or Oncor's designee) by October 1st of each year.  While any Oncor Plan Split Participant is actively employed by Oncor or RTCEH (or an RTCEH affiliate) and before such individual retires and becomes eligible to receive subsidized post-retirement medical under either the Oncor Plan or the OSPP, the actuary for the Oncor Plan or the OSPP, as applicable (the "Oncor Actuary"), will calculate on an annual basis, the factor that determines the portion of the employee's total subsidy that is attributable to Oncor  (the "Regulated/Oncor Allocation Factor" or "RAF).  The remaining portion of the subsidy (1 minus RAF) is attributable to RTCEH. The RAF for such an eligible active employee of Oncor or RTCEH (or an RTCEH affiliate) for the year of retirement will be calculated assuming such eligible active employee continues employment through July 1 of such year.  For the next  year, the Oncor Actuary will calculate an updated RAF using such employee's actual service, and Oncor will use such updated RAF to calculate RTCEH's and Oncor's respective portions of the total subsidy for such Oncor Plan Split Participant going forward. The RAF for all retirees who are Oncor Plan Split Participants as of the effective date of the SPA will be the RAF recorded in Oncor's records as of such date as used in accordance with past practice; however, nothing herein shall limit Oncor's ability to adjust a retiree's RAF in good faith in the event errors in a RAF calculation are discovered.   In the event an existing RAF is disputed by either Party and the Parties cannot agree, the Parties will resolve such dispute in accordance with the dispute resolution provisions included in Section XIII, subsection (1), of this manual.

## VI. Annual Rates and Subsidy Determination Process

Once Oncor has received rates from insurance carriers for the upcoming plan year and determined the annual rate schedule for Oncor Plan Split Participants, Oncor will provide such annual rate schedule to RTCEH. The rates provided will reflect the total cost of each medical option to be offered to Oncor Plan Split Participants for the next plan year. Within 30 days of receipt of such rate schedule, but in no event later than September 1st, RTCEH will calculate the RTCEH subsidy for the rate schedule, including any impact of the RTCEH Subsidy Cap (as defined in paragraph VII below), and send the RTCEH subsidy schedule to Oncor or Oncor's designee.

Oncor (or its designee) will apply the RTCEH and Oncor subsidies to determine each individual payment rate for each option available and incorporate the information in the system of record and the enrollment system.

## VII. RTCEH Subsidy Cap

The RTCEH subsidy calculation for post-65 retirees includes a cap (the "RTCEH Subsidy Cap") that became effective on January 1, 2013 and is summarized in the AON Memorandum attached as Exhibit I-B to the SPA.  The RTCEH Subsidy Cap is applied separately to each medical option and each coverage

level and may increase by no more than 3% per year.  RTCEH may not decrease the RTCEH Subsidy Cap during the Transition Period or during the middle of a plan year thereafter.

## VIII. Participant Communications

Oncor will develop and send all Oncor Plan Split Participant communications related to the Oncor Plan and the OSPP with the exception of any communications related to a change in RTCEH's subsidy. Initial communications regarding a change in RTCEH's subsidy will be developed and sent to Oncor Plan Split Participants by RTCEH. RTCEH will provide to Oncor a copy of any such participant communication and a list of the participants receiving the communication at least 14 days prior to the expected mail date.

Oncor will share draft annual enrollment communications with RTCEH as early as possible but no later than 14 days prior to the expected mailing or communication date unless both parties agree to a shorter time period.

Oncor will endeavor to share with RTCEH drafts of Oncor Plan Split Participant communications that are developed by or under Oncor's direction with RTCEH at least 30 days prior to the mailing or communication date. In the event 30 days is not possible, Oncor will share with RTCEH drafts of the communications at least 14 days prior to the mail or communication date.

## IX. Communications to Future Oncor Plan Split Participants

Annually, Oncor will prepare and provide to RTCEH Oncor Plan Split Participant communications to be delivered to active RTCEH employees who may become participants in the Oncor Plan or OSPP, as applicable, in the future. Prior to distributing such communications each year, RTCEH will inform Oncor of how the materials will be communicated. Once annually, RTCEH may request Oncor to conduct a "train the trainer" session to review and discuss the communications. RTCEH will be the point of contact for active RTCEH employees who have inquiries related to the Oncor Plan or OSPP, as applicable. Oncor will not accept inquiries from active RTCEH employees until they have retired and their information is received by Oncor on the weekly automated file discussed in paragraph X below.

## X. Participant Information

To ensure eligible RTCEH employees are enrolled in the Oncor Plan or OSPP, as applicable, as quickly as possible when they retire or otherwise leave RTCEH, RTCEH will send to Oncor or its designee a weekly automated data file in the form attached hereto as Annex B. If, due to unforeseen circumstances, an automated file is not available, RTCEH will send to Oncor or its designee a weekly manual file in Microsoft Excel including such information reasonably requested by Oncor. RTCEH will give Oncor as much advance warning as possible in the event RTCEH is aware of any future separation of service that involves more than 10 Oncor Plan Split Participants in one week. This will allow time for Oncor to inform and prepare service providers.

Oncor will send to RTCEH quarterly a census file of all split participants that includes their enrollment information, rate band and RAF.

RTCEH will send a separate notification, no less than monthly, to Oncor or its designee that includes any Oncor Plan Split Participants that RTCEH has rehired.  As active RTCEH employees, these individuals are not eligible for coverage under Oncor Plan or OSPP, as applicable.  RTCEH will inform such individuals of the loss of coverage under the Oncor Plan or OSPP, as applicable, prior to rehiring them.

## XI. Compliance and Reporting

Oncor will prepare and file all Form 5500 and other compliance documents for the Oncor Plan and the OSPP, as applicable, including on behalf of each participating employer should the plan be deemed a Multiple Employer Welfare Arrangement (MEWA).

## XII. Reconciliation and Payment of Expenses

1. **Self-Insured Reconciliation Process under the Oncor Plan**

   During the time that Oncor Plan Split Participants are covered under a self-insured plan (i.e. the Oncor Plan), RTCEH's  actuary, at RTCEH's expense, on an annual basis will estimate RTCEH's total subsidy liability for Oncor Plan Split Participants for that year, including claims, expenses, and Administrative Costs and reflecting rebates, subsidies and retiree contributions. On a monthly basis, RTCEH will send 1/12 of such estimated total annual subsidy liability to Oncor showing the amount allocated to each of the following codes: P= 401h, U=Union VEBA, N=Non-Union VEBA, and K=Key.  Payment is due on the first day of each month.

   Oncor will consolidate Oncor Plan Split Participant claims, expenses, Administrative Costs, rebates, subsidies and retiree contributions on a quarterly basis according to the true-up process developed and finalized by Aon Hewitt, Oncor and EFH and documented in an Aon Hewitt letter dated September 29, 2016, attached hereto as Annex C. Oncor will submit an invoice for any necessary adjustments, with supporting documents to RTCEH on a quarterly basis. If there is any over-payment or under-payment of such Administrative Costs, claims, and expenses, RTCEH's next monthly payment(s) to Oncor will be adjusted accordingly.

   Any payment or reimbursement due to either party as a result of the review described in Section 4(d) of Schedule I to the SPA will be applied to RTCEH's payment to Oncor the next month. If there are any disputed amounts, both Oncor and RTCEH will follow the dispute resolution process described in subparagraph XIII.1. below.

   As stated above, Administrative Costs incurred by Oncor in sponsoring, maintaining and administering the Oncor Plan are included in the quarterly true-up process. Each Party's portion of the total Administrative Costs will be determined based on the Aon Hewitt Welfare Letter. Examples of such Administrative Costs include, to the extent consistent with the SPA:
   - Costs associated with communications to participants
   - Third party vendor/benefit provider administrative costs
   - Legal compliance costs (preparation of 5500's, summaries of benefits and coverage, summary plan descriptions, summary annual reports and other applicable reporting and disclosure requirements)
   - Actuarial, legal, consulting and accounting fees and costs, and any taxes

2.  **Fully-Insured Reconciliation Process under the OSPP**

   During the time that Oncor Plan Split Participants are covered under a fully insured plan (i.e., the OSPP), Oncor will invoice RTCEH monthly for its share of insurance premiums. Monthly invoices from Oncor will be sent 30 days in advance of the coverage period (i.e., January coverage will be invoiced on December 1 and due January 1).

   Each month, Oncor will review the vendor premium invoices for the OSPP.  In the event there are adjustments to the RTCEH portion of the premiums for various reasons including coverage changes, additions, or drops, Oncor will adjust the next monthly invoice to be billed to RTCEH. At RTCEH's request, Oncor will provide supporting documentation related to the monthly invoices such as copies of related vendor invoices.

   Any payment or reimbursement due to either party as a result of the review described in Section 4(d) of Schedule I to the SPA will be applied to RTCEH's payment to Oncor the next month. If there are any disputed amounts, both Oncor and RTCEH will follow the dispute resolution process described in subparagraph XIII.1. below.

   As Administrative Costs are incurred by Oncor in sponsoring, maintaining and administering the OSPP, Oncor will invoice RTCEH on a monthly basis. Each Party's portion of the total Administrative Costs will be determined based on the Aon Hewitt Welfare Letter. Examples of such Administrative Costs include, to the extent consistent with the SPA:
   - Costs associated with communications to participants
   - Third party vendor/benefit provider administrative costs
   - Legal compliance costs (preparation of 5500's, summaries of benefits and coverage, summary plan descriptions, summary annual reports and other applicable reporting and disclosure requirements)
   - Actuarial, legal, consulting and accounting fees and costs, and any taxes

3.  **Overhead Administrative Expenses**

   In addition to the Administrative Costs, on an annual basis, RTCEH will pay Oncor an Overhead Fee to cover RTCEH's respective portion of the Human Resources administrative overhead expenses Oncor incurs with respect to the Oncor Plan Split Participants. The Overhead Fee for 2016 is $61,200 and shall be adjusted each year by the percentage increase or decrease, as the case may be, in the Consumer Price Index for the preceding year. Oncor will invoice the annual Overhead Fee in monthly installments no later than February 1 of each year, and RTCEH will pay such the Overhead Fee within 30 days of receipt of the invoice.

## XIII. Dispute Resolution Process

1.  **Calculation Disputes**

   RTCEH, at its own expense, may engage its own actuary to review and confirm any welfare benefit calculation under the SPA. If the Parties' actuaries do not agree on any such calculations,

the Parties agree that they shall cause each actuary to prepare and deliver to the other a statement setting forth the actuary's calculation and methodologies. The Parties shall negotiate in good faith for 60 days following receipt of such statements in order to come to an agreement as to such calculations. If, at the end of the 60 day period the actuaries and the Parties have not resolved such disputes, the Parties shall engage the service of a third actuary mutually agreed upon by the Parties, and such third actuary shall determine which of the calculations prepared by the two prior actuaries is correct. Such new actuary's determination shall be set forth in a written statement delivered to the Parties and shall be final, binding and non-appealable. All fees and expenses of such new actuary shall be borne 50% by Oncor and 50% by RTCEH.

2.  **Non-Calculation Disputes**

    In the event that the Parties have a dispute not related to a calculation hereunder, such dispute will first be escalated to the highest ranking Human Resources officer of each Party to discuss. If after 30 days the Parties are still not able to come to a resolution, either Party may then seek any other remedies available to it by law.

## XIV. Amendments

Sections II, V-VII, and XI-XIV may be amended or modified only upon written agreement of both Oncor and RTCEH.  The remaining provisions of this manual may be amended or modified by Oncor, provided that: (i) the effect of any such amendment or modification is purely administrative or ministerial; (ii) any such amended or modified provision does not conflict with the terms of the SPA or Sections II, V-VII, or XI-XIV of this manual; and (iii) RTCEH is provided with notice of such amendment or modification at least 30 days prior to its effective date.  If Oncor terminates the OSPP pursuant to Section 6 or 8(c) of the SPA and is providing benefits pursuant to the second sentence of Section 9 of Schedule I of the SPA, Oncor may amend any provision of this manual other than Section II, V, VII or XI-XIV.  In the event of any conflict between the terms of this Administration Manual and the terms of the SPA, the terms of the SPA shall apply.

**Annex A**
**Oncor Plan Split Participants**

**ANNEX A – CURRENT SPLIT PARTICIPANTS**

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| ID Number | Name |
|-----------|------|
| 81 | |
| 53 | |
| 74 | |
| 65 | |
| 53 | |
| 22 | |
| 50 | |
| 91 | |
| 34 | |
| 96 | |
| 81 | |
| 14 | |
| 27 | |
| 78 | |
| 76 | |
| 78 | |
| 4 | |
| 82 | |
| 88 | |
| 68 | |
| 68 | |
| 7 | |
| 87 | |
| 17 | |
| 78 | |
| 55 | |
| 50 | |
| 7 | |
| 49 | |
| 17 | |
| 37 | |
| 78 | |
| 19 | |
| 69 | |
| 9 | |
| 14 | |
| 81 | |
| 89 | |
| 82 | |
| 62 | |
| 84 | |
| 51 | |
| 89 | |
| 25 | |
| 51 | |
| 39 | |
| 95 | |
| 82 | |
| 95 | |
| 81 | |

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 58 | [redacted] |
| 5 | [redacted] |
| 77 | [redacted] |
| 2 | [redacted] |
| 50 | [redacted] |
| 78 | [redacted] |
| 36 | [redacted] |
| 58 | [redacted] |
| 83 | [redacted] |
| 43 | [redacted] |
| 89 | [redacted] |
| 57 | [redacted] |
| 8 | [redacted] |
| 96 | [redacted] |
| 87 | [redacted] |
| 61 | [redacted] |
| 55 | [redacted] |
| 46 | [redacted] |
| 2 | [redacted] |
| 33 | [redacted] |
| 0 | [redacted] |
| 81 | [redacted] |
| 15 | [redacted] |
| 30 | [redacted] |
| 86 | [redacted] |
| 87 | [redacted] |
| 6 | [redacted] |
| 72 | [redacted] |
| 18 | [redacted] |
| 60 | [redacted] |
| 72 | [redacted] |
| 68 | [redacted] |
| 49 | [redacted] |
| 75 | [redacted] |
| 89 | [redacted] |
| 77 | [redacted] |
| 57 | [redacted] |
| 48 | [redacted] |
| 11 | [redacted] |
| 70 | [redacted] |
| 94 | [redacted] |
| 77 | [redacted] |
| 9 | [redacted] |
| 25 | [redacted] |
| 46 | [redacted] |
| 16 | [redacted] |
| 55 | [redacted] |
| 67 | [redacted] |
| 7 | [redacted] |
| 65 | [redacted] |
| 61 | [redacted] |
| 75 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

2
21
48
60
27
98
31
68
63
16
81
90
15
42
12
16
48
69
70
43
27
76
35
6
81
44
96
63
3
33
90
23
30
13
22
82
45
21
92
77
41
26
56
32
79
88
99
8
99
51
78
87

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

64
41
5
74
89
30
96
56
94
15
95
2
47
4
65
61
97
27
38
14
90
46
12
37
90
13
5
89
54
75
91
36
31
71
68
52
66
7
36
80
4
36
38
27
1
41
87
74
58
42
57
91

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 14 | [redacted] |
| 99 | [redacted] |
| 63 | [redacted] |
| 88 | [redacted] |
| 54 | [redacted] |
| 65 | [redacted] |
| 52 | [redacted] |
| 62 | [redacted] |
| 67 | [redacted] |
| 5 | [redacted] |
| 12 | [redacted] |
| 35 | [redacted] |
| 94 | [redacted] |
| 49 | [redacted] |
| 76 | [redacted] |
| 28 | [redacted] |
| 1 | [redacted] |
| 99 | [redacted] |
| 26 | [redacted] |
| 69 | [redacted] |
| 73 | [redacted] |
| 52 | [redacted] |
| 65 | [redacted] |
| 18 | [redacted] |
| 38 | [redacted] |
| 45 | [redacted] |
| 97 | [redacted] |
| 27 | [redacted] |
| 6 | [redacted] |
| 74 | [redacted] |
| 78 | [redacted] |
| 7 | [redacted] |
| 41 | [redacted] |
| 31 | [redacted] |
| 56 | [redacted] |
| 15 | [redacted] |
| 76 | [redacted] |
| 89 | [redacted] |
| 69 | [redacted] |
| 31 | [redacted] |
| 51 | [redacted] |
| 72 | [redacted] |
| 98 | [redacted] |
| 84 | [redacted] |
| 76 | [redacted] |
| 76 | [redacted] |
| 3 | [redacted] |
| 83 | [redacted] |
| 97 | [redacted] |
| 51 | [redacted] |
| 74 | [redacted] |
| 99 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| |
|---|
| 25 |
| 40 |
| 16 |
| 28 |
| 65 |
| 17 |
| 67 |
| 4 |
| 54 |
| 89 |
| 83 |
| 12 |
| 49 |
| 26 |
| 88 |
| 66 |
| 8 |
| 18 |
| 31 |
| 30 |
| 35 |
| 28 |
| 85 |
| 54 |
| 78 |
| 31 |
| 23 |
| 87 |
| 41 |
| 55 |
| 0 |
| 54 |
| 42 |
| 57 |
| 60 |
| 47 |
| 28 |
| 93 |
| 28 |
| 29 |
| 69 |
| 84 |
| 60 |
| 65 |
| 71 |
| 58 |
| 28 |
| 50 |
| 40 |
| 21 |
| 2 |
| 11 |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

67 [redacted]
36 [redacted]
54 [redacted]
93 [redacted]
83 [redacted]
18 [redacted]
58 [redacted]
77 [redacted]
61 [redacted]
1 [redacted]
98 [redacted]
91 [redacted]
17 [redacted]
61 [redacted]
85 [redacted]
58 [redacted]
87 [redacted]
85 [redacted]
23 [redacted]
34 [redacted]
65 [redacted]
77 [redacted]
39 [redacted]
73 [redacted]
70 [redacted]
83 [redacted]
5 [redacted]
93 [redacted]
95 [redacted]
62 [redacted]
40 [redacted]
29 [redacted]
67 [redacted]
2 [redacted]
83 [redacted]
51 [redacted]
83 [redacted]
16 [redacted]
52 [redacted]
85 [redacted]
72 [redacted]
15 [redacted]
83 [redacted]
81 [redacted]
17 [redacted]
43 [redacted]
44 [redacted]
15 [redacted]
10 [redacted]
43 [redacted]
50 [redacted]
4 [redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 44 | [redacted] |
| 1 | |
| 0 | |
| 45 | |
| 41 | |
| 6 | |
| 41 | |
| 71 | |
| 73 | |
| 2 | |
| 46 | |
| 9 | |
| 67 | |
| 0 | |
| 73 | |
| 63 | |
| 37 | |
| 24 | |
| 98 | |
| 51 | |
| 78 | |
| 84 | |
| 68 | |
| 41 | |
| 24 | |
| 22 | |
| 77 | |
| 52 | |
| 12 | |
| 88 | |
| 92 | |
| 78 | |
| 95 | |
| 22 | |
| 94 | |
| 60 | |
| 37 | |
| 94 | |
| 19 | |
| 89 | |
| 75 | |
| 77 | |
| 48 | |
| 56 | |
| 45 | |
| 47 | |
| 11 | |
| 18 | |
| 83 | |
| 98 | |
| 18 | |
| 76 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

93
11
29
89
77
44
43
55
98
94
21
65
0
55
41
74
55
98
93
12
24
85
94
61
71
67
99
3
96
90
26
61
55
84
82
99
24
31
72
17
56
56
76
96
97
80
20
17
9
35
59
81

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

16
51
52
75
15
57
47
34
86
69
41
90
65
44
17
25
3
81
91
55
87
57
19
83
52
77
34
32
38
38
17
88
64
71
62
94
71
67
71
28
40
97
59
55
47
78
76
56
13
0
36
81

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

76
76
61
51
77
47
29
10
32
17
36
30
62
36
81
1
33
80
60
91
20
87
13
8
80
44
85
35
30
29
16
99
44
99
0
12
77
69
39
45
2
43
28
50
85
7
10
68
7
56
0
3

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 66 | [redacted] |
| 15 | |
| 58 | |
| 52 | |
| 63 | |
| 96 | |
| 60 | |
| 68 | |
| 71 | |
| 15 | |
| 33 | |
| 69 | |
| 24 | |
| 29 | |
| 38 | |
| 38 | |
| 82 | |
| 10 | |
| 31 | |
| 90 | |
| 16 | |
| 59 | |
| 86 | |
| 17 | |
| 14 | |
| 24 | |
| 85 | |
| 8 | |
| 67 | |
| 44 | |
| 40 | |
| 14 | |
| 87 | |
| 19 | |
| 92 | |
| 56 | |
| 78 | |
| 16 | |
| 20 | |
| 61 | |
| 16 | |
| 19 | |
| 54 | |
| 31 | |
| 66 | |
| 81 | |
| 44 | |
| 36 | |
| 15 | |
| 88 | |
| 7 | |
| 16 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

91
45
31
24
98
25
51
45
85
76
46
82
35
89
82
79
74
21
88
2
89
57
38
18
61
26
61
85
51
4
58
94
35
65
12
98
43
14
40
53
66
63
6
60
23
22
18
67
43
27
30
6

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

38
79
27
67
24
25
73
12
30
78
86
29
5
71
93
10
88
4
55
91
87
22
44
96
80
51
52
3
87
5
94
29
41
32
80
1
96
75
95
18
19
32
75
34
90
47
20
40
1
9
62
64

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 92 | [redacted] |
| 8 | [redacted] |
| 79 | [redacted] |
| 91 | [redacted] |
| 17 | [redacted] |
| 82 | [redacted] |
| 82 | [redacted] |
| 11 | [redacted] |
| 88 | [redacted] |
| 19 | [redacted] |
| 10 | [redacted] |
| 13 | [redacted] |
| 94 | [redacted] |
| 31 | [redacted] |
| 96 | [redacted] |
| 43 | [redacted] |
| 60 | [redacted] |
| 57 | [redacted] |
| 79 | [redacted] |
| 97 | [redacted] |
| 14 | [redacted] |
| 94 | [redacted] |
| 56 | [redacted] |
| 24 | [redacted] |
| 80 | [redacted] |
| 91 | [redacted] |
| 15 | [redacted] |
| 28 | [redacted] |
| 46 | [redacted] |
| 49 | [redacted] |
| 52 | [redacted] |
| 4 | [redacted] |
| 80 | [redacted] |
| 58 | [redacted] |
| 98 | [redacted] |
| 43 | [redacted] |
| 72 | [redacted] |
| 31 | [redacted] |
| 17 | [redacted] |
| 99 | [redacted] |
| 93 | [redacted] |
| 35 | [redacted] |
| 86 | [redacted] |
| 92 | [redacted] |
| 45 | [redacted] |
| 61 | [redacted] |
| 0 | [redacted] |
| 21 | [redacted] |
| 28 | [redacted] |
| 8 | [redacted] |
| 75 | [redacted] |
| 83 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

72
18
37
2
67
89
13
95
51
87
68
70
94
10
46
56
84
11
48
65
0
10
47
35
57
58
72
75
98
3
68
81
43
59
98
66
75
32
67
54
95
20
4
33
1
23
63
28
50
58
26
28

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 93 | [redacted] |
| 10 | |
| 25 | |
| 85 | |
| 23 | |
| 99 | |
| 81 | |
| 41 | |
| 85 | |
| 61 | |
| 50 | |
| 54 | |
| 98 | |
| 98 | |
| 23 | |
| 89 | |
| 61 | |
| 34 | |
| 97 | |
| 25 | |
| 42 | |
| 27 | |
| 33 | |
| 85 | |
| 58 | |
| 70 | |
| 29 | |
| 83 | |
| 0 | |
| 37 | |
| 59 | |
| 68 | |
| 56 | |
| 39 | |
| 55 | |
| 6 | |
| 90 | |
| 8 | |
| 16 | |
| 63 | |
| 37 | |
| 71 | |
| 22 | |
| 39 | |
| 57 | |
| 35 | |
| 4 | |
| 6 | |
| 64 | |
| 79 | |
| 3 | |
| 68 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 77 | [redacted] |
| 30 | [redacted] |
| 31 | [redacted] |
| 23 | [redacted] |
| 10 | [redacted] |
| 77 | [redacted] |
| 39 | [redacted] |
| 20 | [redacted] |
| 12 | [redacted] |
| 78 | [redacted] |
| 31 | [redacted] |
| 50 | [redacted] |
| 70 | [redacted] |
| 66 | [redacted] |
| 89 | [redacted] |
| 82 | [redacted] |
| 49 | [redacted] |
| 82 | [redacted] |
| 96 | [redacted] |
| 81 | [redacted] |
| 61 | [redacted] |
| 59 | [redacted] |
| 49 | [redacted] |
| 46 | [redacted] |
| 56 | [redacted] |
| 68 | [redacted] |
| 94 | [redacted] |
| 57 | [redacted] |
| 84 | [redacted] |
| 67 | [redacted] |
| 40 | [redacted] |
| 34 | [redacted] |
| 7 | [redacted] |
| 44 | [redacted] |
| 26 | [redacted] |
| 90 | [redacted] |
| 6 | [redacted] |
| 29 | [redacted] |
| 79 | [redacted] |
| 18 | [redacted] |
| 49 | [redacted] |
| 81 | [redacted] |
| 74 | [redacted] |
| 51 | [redacted] |
| 37 | [redacted] |
| 2 | [redacted] |
| 73 | [redacted] |
| 87 | [redacted] |
| 46 | [redacted] |
| 57 | [redacted] |
| 76 | [redacted] |
| 70 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 12 | [redacted] |
| 56 | [redacted] |
| 47 | [redacted] |
| 7 | [redacted] |
| 57 | [redacted] |
| 73 | [redacted] |
| 98 | [redacted] |
| 15 | [redacted] |
| 87 | [redacted] |
| 41 | [redacted] |
| 13 | [redacted] |
| 2 | [redacted] |
| 97 | [redacted] |
| 89 | [redacted] |
| 14 | [redacted] |
| 3 | [redacted] |
| 17 | [redacted] |
| 95 | [redacted] |
| 9 | [redacted] |
| 73 | [redacted] |
| 72 | [redacted] |
| 85 | [redacted] |
| 6 | [redacted] |
| 83 | [redacted] |
| 30 | [redacted] |
| 69 | [redacted] |
| 19 | [redacted] |
| 40 | [redacted] |
| 72 | [redacted] |
| 62 | [redacted] |
| 29 | [redacted] |
| 70 | [redacted] |
| 37 | [redacted] |
| 82 | [redacted] |
| 10 | [redacted] |
| 41 | [redacted] |
| 86 | [redacted] |
| 77 | [redacted] |
| 6 | [redacted] |
| 66 | [redacted] |
| 49 | [redacted] |
| 97 | [redacted] |
| 57 | [redacted] |
| 55 | [redacted] |
| 81 | [redacted] |
| 21 | [redacted] |
| 80 | [redacted] |
| 2 | [redacted] |
| 45 | [redacted] |
| 74 | [redacted] |
| 72 | [redacted] |
| 85 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

42 [redacted]
61
68
33
85
6
91
25
18
49
97
1
28
33
44
4
58
89
47
85
82
13
81
13
59
2
10
60
91
31
69
17
39
92
23
97
25
19
24
12
12
11
5
56
73
49
56
91
9
43
29
86



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

28
93
94
24
34
39
62
24
61
99
37
9
27
49
60
16
87
38
2
65
20
49
74
34
47
68
1
80
99
21
92
47
74
32
20
88
47
22
31
77
30
9
37
49
88
67
44
11
97
28
17
61

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

57 [redacted]
64
65
10
89
74
38
72
80
78
35
92
61
87
58
57
35
79
91
68
68
15
87
3
73
91
20
2
86
0
43
21
35
9
91
75
86
73
1
39
18
22
59
32
18
93
37
15
1
85
51
87



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

7
95
24
83
51
69
78
8
62
6
13
73
84
85
5
35
9
75
83
87
30
3
51
23
72
98
77
72
78
71
39
97
56
27
48
46
86
21
20
87
44
4
74
36
30
78
63
93
80
97
52
36

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

0
47
4
76
76
22
97
71
4
4
86
24
2
23
19
63
51
62
52
12
77
50
73
67
11
38
89
85
72
20
1
33
50
11
20
33
74
4
88
83
86
75
40
6
58
89
39
98
93
93
37
23

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

3
71
27
19
32
74
38
99
30
2
6
83
94
85
64
43
29
0
27
71
11
33
4
57
70
7
83
75
22
56
47
90
28
79
21
72
91
11
23
76
38
81
7
56
79
9
84
65
86
51
31
39

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 47 | [redacted] |
| 52 | [redacted] |
| 65 | [redacted] |
| 11 | [redacted] |
| 55 | [redacted] |
| 86 | [redacted] |
| 14 | [redacted] |
| 99 | [redacted] |
| 65 | [redacted] |
| 30 | [redacted] |
| 81 | [redacted] |
| 95 | [redacted] |
| 6 | [redacted] |
| 55 | [redacted] |
| 99 | [redacted] |
| 16 | [redacted] |
| 60 | [redacted] |
| 79 | [redacted] |
| 29 | [redacted] |
| 4 | [redacted] |
| 65 | [redacted] |
| 11 | [redacted] |
| 16 | [redacted] |
| 87 | [redacted] |
| 42 | [redacted] |
| 65 | [redacted] |
| 96 | [redacted] |
| 61 | [redacted] |
| 99 | [redacted] |
| 62 | [redacted] |
| 99 | [redacted] |
| 44 | [redacted] |
| 91 | [redacted] |
| 0 | [redacted] |
| 54 | [redacted] |
| 39 | [redacted] |
| 57 | [redacted] |
| 32 | [redacted] |
| 20 | [redacted] |
| 90 | [redacted] |
| 71 | [redacted] |
| 83 | [redacted] |
| 12 | [redacted] |
| 24 | [redacted] |
| 80 | [redacted] |
| 8 | [redacted] |
| 70 | [redacted] |
| 29 | [redacted] |
| 84 | [redacted] |
| 88 | [redacted] |
| 56 | [redacted] |
| 20 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 99 | [redacted] |
| 8 | [redacted] |
| 3 | [redacted] |
| 96 | [redacted] |
| 45 | [redacted] |
| 38 | [redacted] |
| 35 | [redacted] |
| 24 | [redacted] |
| 97 | [redacted] |
| 11 | [redacted] |
| 0 | [redacted] |
| 46 | [redacted] |
| 74 | [redacted] |
| 97 | [redacted] |
| 46 | [redacted] |
| 92 | [redacted] |
| 85 | [redacted] |
| 36 | [redacted] |
| 33 | [redacted] |
| 2 | [redacted] |
| 52 | [redacted] |
| 99 | [redacted] |
| 66 | [redacted] |
| 13 | [redacted] |
| 95 | [redacted] |
| 14 | [redacted] |
| 67 | [redacted] |
| 47 | [redacted] |
| 79 | [redacted] |
| 41 | [redacted] |
| 8 | [redacted] |
| 90 | [redacted] |
| 37 | [redacted] |
| 50 | [redacted] |
| 77 | [redacted] |
| 25 | [redacted] |
| 16 | [redacted] |
| 58 | [redacted] |
| 55 | [redacted] |
| 47 | [redacted] |
| 81 | [redacted] |
| 51 | [redacted] |
| 92 | [redacted] |
| 27 | [redacted] |
| 86 | [redacted] |
| 41 | [redacted] |
| 71 | [redacted] |
| 65 | [redacted] |
| 44 | [redacted] |
| 47 | [redacted] |
| 0 | [redacted] |
| 55 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

96
5
48
78
78
15
8
73
27
8
48
13
56
42
96
36
82
20
65
37
36
57
78
43
50
82
41
42
42
66
42
87
98
99
63
97
91
55
89
28
71
0
48
79
74
82
25
57
56
17
83
48

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

76
88
92
43
79
24
22
15
78
83
19
59
7
4
93
2
52
11
43
56
50
11
29
86
64
23
69
14
60
33
10
43
93
78
35
65
14
53
93
93
34
4
73
79
90
0
17
19
80
55
83
1

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

59 [redacted]
1
24
41
68
95
11
39
81
78
88
91
82
24
98
23
50
70
17
20
43
17
67
25
50
65
30
74
92
94
13
2
48
0
60
63
78
88
45
78
85
20
48
2
82
69
70
27
45
34
11
3



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

86
23
85
23
19
12
76
90
40
70
71
27
46
98
11
84
45
28
12
42
86
97
81
89
96
64
74
28
52
74
93
43
6
5
94
28
7
75
79
54
90
50
85
38
76
59
81
59
52
4
89
85

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 99 | [redacted] |
| 47 | |
| 94 | |
| 49 | |
| 74 | |
| 74 | |
| 76 | |
| 31 | |
| 49 | |
| 79 | |
| 92 | |
| 96 | |
| 5 | |
| 82 | |
| 35 | |
| 3 | |
| 62 | |
| 4 | |
| 2 | |
| 96 | |
| 4 | |
| 76 | |
| 98 | |
| 62 | |
| 70 | |
| 99 | |
| 8 | |
| 1 | |
| 80 | |
| 45 | |
| 43 | |
| 12 | |
| 85 | |
| 61 | |
| 24 | |
| 62 | |
| 61 | |
| 50 | |
| 50 | |
| 95 | |
| 0 | |
| 81 | |
| 46 | |
| 29 | |
| 87 | |
| 21 | |
| 53 | |
| 63 | |
| 68 | |
| 88 | |
| 66 | |
| 84 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

57
83
53
93
96
5
81
91
59
30
86
4
74
35
7
2
0
8
84
80
8
53
1
75
86
10
4
71
93
14
97
84
54
41
79
91
35
4
43
30
7
62
41
79
33
58
79
58
16
45
97
81

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

52
89
61
66
69
15
69
1
6
87
72
81
22
14
98
79
62
54
73
90
86
79
27
13
27
31
71
7
27
32
10
42
10
67
96
94
46
50
36
18
50
84
61
8
83
32
11
89
80
42
46
54

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

87
98
22
99
4
77
18
54
27
36
74
57
58
35
4
55
27
34
81
14
14
86
70
66
46
56
74
57
35
40
38
99
93
46
96
4
48
48
3
28
51
79
9
48
64
19
9
78
9
28
29
13

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 8 | [redacted] |
| 25 | [redacted] |
| 6 | [redacted] |
| 62 | [redacted] |
| 51 | [redacted] |
| 88 | [redacted] |
| 86 | [redacted] |
| 19 | [redacted] |
| 1 | [redacted] |
| 90 | [redacted] |
| 52 | [redacted] |
| 56 | [redacted] |
| 8 | [redacted] |
| 46 | [redacted] |
| 25 | [redacted] |
| 51 | [redacted] |
| 36 | [redacted] |
| 98 | [redacted] |
| 76 | [redacted] |
| 26 | [redacted] |
| 75 | [redacted] |
| 93 | [redacted] |
| 57 | [redacted] |
| 98 | [redacted] |
| 76 | [redacted] |
| 33 | [redacted] |
| 70 | [redacted] |
| 95 | [redacted] |
| 61 | [redacted] |
| 54 | [redacted] |
| 23 | [redacted] |
| 57 | [redacted] |
| 99 | [redacted] |
| 92 | [redacted] |
| 66 | [redacted] |
| 59 | [redacted] |
| 1 | [redacted] |
| 39 | [redacted] |
| 28 | [redacted] |
| 22 | [redacted] |
| 44 | [redacted] |
| 39 | [redacted] |
| 16 | [redacted] |
| 1 | [redacted] |
| 66 | [redacted] |
| 79 | [redacted] |
| 51 | [redacted] |
| 83 | [redacted] |
| 16 | [redacted] |
| 15 | [redacted] |
| 1 | [redacted] |
| 74 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

47
71
44
66
5
8
85
44
74
79
90
42
94
63
68
97
3
52
58
75
75
14
38
92
53
81
31
2
98
72
20
15
6
26
73
23
88
2
80
95
45
97
31
75
46
92
36
35
16
54
37
87

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 61 | [redacted] |
| 11 | [redacted] |
| 14 | [redacted] |
| 34 | [redacted] |
| 68 | [redacted] |
| 63 | [redacted] |
| 81 | [redacted] |
| 5 | [redacted] |
| 3 | [redacted] |
| 83 | [redacted] |
| 57 | [redacted] |
| 4 | [redacted] |
| 44 | [redacted] |
| 4 | [redacted] |
| 88 | [redacted] |
| 45 | [redacted] |
| 61 | [redacted] |
| 70 | [redacted] |
| 58 | [redacted] |
| 72 | [redacted] |
| 60 | [redacted] |
| 57 | [redacted] |
| 94 | [redacted] |
| 6 | [redacted] |
| 97 | [redacted] |
| 28 | [redacted] |
| 81 | [redacted] |
| 91 | [redacted] |
| 4 | [redacted] |
| 42 | [redacted] |
| 64 | [redacted] |
| 86 | [redacted] |
| 2 | [redacted] |
| 39 | [redacted] |
| 72 | [redacted] |
| 41 | [redacted] |
| 40 | [redacted] |
| 4 | [redacted] |
| 48 | [redacted] |
| 27 | [redacted] |
| 36 | [redacted] |
| 43 | [redacted] |
| 26 | [redacted] |
| 74 | [redacted] |
| 23 | [redacted] |
| 1 | [redacted] |
| 86 | [redacted] |
| 49 | [redacted] |
| 57 | [redacted] |
| 30 | [redacted] |
| 54 | [redacted] |
| 10 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

48
50
60
8
72
80
81
97
36
86
95
96
7
82
20
77
85
34
56
78
14
80
82
91
84
27
35
69
66
25
76
76
51
15
57
65
98
57
38
64
60
84
33
33
68
70
82
81
2
16
56
16

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

82
15
31
84
40
85
18
57
94
99
64
75
41
0
8
52
45
83
0
0
26
22
60
18
76
66
52
6
74
2
79
40
98
2
36
24
80
19
47
6
96
58
15
44
12
89
20
19
87
21
58
45

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 91 | [redacted] |
| 45 | [redacted] |
| 98 | [redacted] |
| 97 | [redacted] |
| 20 | [redacted] |
| 65 | [redacted] |
| 10 | [redacted] |
| 99 | [redacted] |
| 61 | [redacted] |
| 10 | [redacted] |
| 82 | [redacted] |
| 32 | [redacted] |
| 84 | [redacted] |
| 13 | [redacted] |
| 82 | [redacted] |
| 38 | [redacted] |
| 30 | [redacted] |
| 38 | [redacted] |
| 52 | [redacted] |
| 90 | [redacted] |
| 30 | [redacted] |
| 19 | [redacted] |
| 27 | [redacted] |
| 73 | [redacted] |
| 2 | [redacted] |
| 77 | [redacted] |
| 93 | [redacted] |
| 17 | [redacted] |
| 74 | [redacted] |
| 79 | [redacted] |
| 47 | [redacted] |
| 26 | [redacted] |
| 63 | [redacted] |
| 48 | [redacted] |
| 78 | [redacted] |
| 77 | [redacted] |
| 57 | [redacted] |
| 44 | [redacted] |
| 40 | [redacted] |
| 98 | [redacted] |
| 36 | [redacted] |
| 47 | [redacted] |
| 16 | [redacted] |
| 99 | [redacted] |
| 45 | [redacted] |
| 54 | [redacted] |
| 4 | [redacted] |
| 60 | [redacted] |
| 86 | [redacted] |
| 24 | [redacted] |
| 55 | [redacted] |
| 91 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| |
|---|
| 44 |
| 86 |
| 42 |
| 94 |
| 58 |
| 8 |
| 94 |
| 22 |
| 27 |
| 77 |
| 98 |
| 74 |
| 78 |
| 55 |
| 80 |
| 39 |
| 0 |
| 9 |
| 28 |
| 94 |
| 98 |
| 31 |
| 53 |
| 94 |
| 21 |
| 93 |
| 68 |
| 46 |
| 32 |
| 84 |
| 41 |
| 7 |
| 9 |
| 98 |
| 93 |
| 53 |
| 26 |
| 14 |
| 26 |
| 20 |
| 95 |
| 39 |
| 42 |
| 54 |
| 57 |
| 0 |
| 23 |
| 97 |
| 3 |
| 61 |
| 19 |
| 42 |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

49
36
76
38
10
11
36
88
88
37
18
67
49
95
31
34
67
35
76
76
34
9
12
97
66
80
19
68
95
21
73
82
53
4
92
45
62
99
25
37
45
83
97
40
61
17
14
10
19
44
47
97

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 50 | [redacted] |
| 95 | [redacted] |
| 25 | [redacted] |
| 32 | [redacted] |
| 57 | [redacted] |
| 13 | [redacted] |
| 2 | [redacted] |
| 19 | [redacted] |
| 30 | [redacted] |
| 39 | [redacted] |
| 43 | [redacted] |
| 83 | [redacted] |
| 76 | [redacted] |
| 7 | [redacted] |
| 34 | [redacted] |
| 20 | [redacted] |
| 63 | [redacted] |
| 3 | [redacted] |
| 88 | [redacted] |
| 20 | [redacted] |
| 39 | [redacted] |
| 34 | [redacted] |
| 83 | [redacted] |
| 30 | [redacted] |
| 29 | [redacted] |
| 98 | [redacted] |
| 89 | [redacted] |
| 40 | [redacted] |
| 4 | [redacted] |
| 42 | [redacted] |
| 6 | [redacted] |
| 51 | [redacted] |
| 37 | [redacted] |
| 33 | [redacted] |
| 72 | [redacted] |
| 21 | [redacted] |
| 91 | [redacted] |
| 99 | [redacted] |
| 12 | [redacted] |
| 16 | [redacted] |
| 29 | [redacted] |
| 54 | [redacted] |
| 56 | [redacted] |
| 29 | [redacted] |
| 52 | [redacted] |
| 60 | [redacted] |
| 73 | [redacted] |
| 2 | [redacted] |
| 52 | [redacted] |
| 71 | [redacted] |
| 75 | [redacted] |
| 46 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 0 | [redacted] |
| 62 | |
| 11 | |
| 40 | |
| 4 | |
| 96 | |
| 53 | |
| 76 | |
| 67 | |
| 77 | |
| 95 | |
| 3 | |
| 97 | |
| 19 | |
| 48 | |
| 66 | |
| 40 | |
| 73 | |
| 91 | |
| *38* | |
| *95* | |



## ANNEX A – POTENTIAL FUTURE SPLIT PARTICIPANTS

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| ID Number | Name |
|-----------|------|
| 81 | |
| 19 | |
| 73 | |
| 79 | |
| 45 | |
| 17 | |
| 85 | |
| 69 | |
| 90 | |
| 52 | |
| 88 | |
| 38 | |
| 50 | |
| 60 | |
| 44 | |
| 21 | |
| 11 | |
| 67 | |
| 93 | |
| 30 | |
| 82 | |
| 12 | |
| 78 | |
| 70 | |
| 28 | |
| 98 | |
| 10 | |
| 73 | |
| 96 | |
| 4 | |
| 56 | |
| 33 | |
| 78 | |
| 31 | |
| 97 | |
| 50 | |
| 74 | |
| 45 | |
| 18 | |
| 30 | |
| 23 | |
| 82 | |
| 44 | |
| 98 | |
| 14 | |
| 45 | |
| 50 | |
| 84 | |
| 15 | |
| 68 | |
| 49 | |
| 22 | |

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

87
30
87
59
94
9
74
57
41
1
56
24
99
77
5
3
36
92
60
11
97
99
67
35
74
86
63
86
6
56
88
85
71
48
65
20
19
70
64
16
83
21
66
57
61
90
61
32
42
9
72
90
42
87
12

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 9 | [redacted] |
| 6 | [redacted] |
| 71 | [redacted] |
| 17 | [redacted] |
| 26 | [redacted] |
| 76 | [redacted] |
| 91 | [redacted] |
| 76 | [redacted] |
| 50 | [redacted] |
| 20 | [redacted] |
| 89 | [redacted] |
| 73 | [redacted] |
| 43 | [redacted] |
| 69 | [redacted] |
| 10 | [redacted] |
| 23 | [redacted] |
| 8 | [redacted] |
| 85 | [redacted] |
| 99 | [redacted] |
| 97 | [redacted] |
| 5 | [redacted] |
| 96 | [redacted] |
| 76 | [redacted] |
| 24 | [redacted] |
| 17 | [redacted] |
| 49 | [redacted] |
| 67 | [redacted] |
| 5 | [redacted] |
| 52 | [redacted] |
| 54 | [redacted] |
| 23 | [redacted] |
| 73 | [redacted] |
| 5 | [redacted] |
| 12 | [redacted] |
| 89 | [redacted] |
| 15 | [redacted] |
| 58 | [redacted] |
| 59 | [redacted] |
| 0 | [redacted] |
| 63 | [redacted] |
| 76 | [redacted] |
| 85 | [redacted] |
| 1 | [redacted] |
| 24 | [redacted] |
| 95 | [redacted] |
| 46 | [redacted] |
| 71 | [redacted] |
| 46 | [redacted] |
| 49 | [redacted] |
| 35 | [redacted] |
| 12 | [redacted] |
| 14 | [redacted] |
| 18 | [redacted] |
| 95 | [redacted] |
| 92 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 39 | [redacted] |
| 38 | [redacted] |
| 23 | [redacted] |
| 44 | [redacted] |
| 82 | [redacted] |
| 1 | [redacted] |
| 11 | [redacted] |
| 99 | [redacted] |
| 1 | [redacted] |
| 90 | [redacted] |
| 43 | [redacted] |
| 87 | [redacted] |
| 95 | [redacted] |
| 99 | [redacted] |
| 84 | [redacted] |
| 46 | [redacted] |
| 5 | [redacted] |
| 70 | [redacted] |
| 48 | [redacted] |
| 63 | [redacted] |
| 69 | [redacted] |
| 22 | [redacted] |
| 19 | [redacted] |
| 49 | [redacted] |
| 64 | [redacted] |
| 76 | [redacted] |
| 85 | [redacted] |
| 52 | [redacted] |
| 9 | [redacted] |
| 90 | [redacted] |
| 3 | [redacted] |
| 25 | [redacted] |
| 72 | [redacted] |
| 80 | [redacted] |
| 35 | [redacted] |
| 39 | [redacted] |
| 42 | [redacted] |
| 99 | [redacted] |
| 40 | [redacted] |
| 14 | [redacted] |
| 9 | [redacted] |
| 63 | [redacted] |
| 33 | [redacted] |
| 45 | [redacted] |
| 33 | [redacted] |
| 81 | [redacted] |
| 54 | [redacted] |
| 57 | [redacted] |
| 22 | [redacted] |
| 29 | [redacted] |
| 23 | [redacted] |
| 42 | [redacted] |
| 95 | [redacted] |
| 41 | [redacted] |
| 71 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 57 | [redacted] |
| 18 | [redacted] |
| 90 | [redacted] |
| 44 | [redacted] |
| 64 | [redacted] |
| 31 | [redacted] |
| 52 | [redacted] |
| 85 | [redacted] |
| 20 | [redacted] |
| 49 | [redacted] |
| 75 | [redacted] |
| 4 | [redacted] |
| 66 | [redacted] |
| 37 | [redacted] |
| 56 | [redacted] |
| 64 | [redacted] |
| 8 | [redacted] |
| 7 | [redacted] |
| 2 | [redacted] |
| 71 | [redacted] |
| 12 | [redacted] |
| 42 | [redacted] |
| 63 | [redacted] |
| 77 | [redacted] |
| 32 | [redacted] |
| 7 | [redacted] |
| 15 | [redacted] |
| 76 | [redacted] |
| 90 | [redacted] |
| 14 | [redacted] |
| 72 | [redacted] |
| 61 | [redacted] |
| 65 | [redacted] |
| 19 | [redacted] |
| 22 | [redacted] |
| 8 | [redacted] |
| 31 | [redacted] |
| 24 | [redacted] |
| 34 | [redacted] |
| 96 | [redacted] |
| 5 | [redacted] |
| 99 | [redacted] |
| 47 | [redacted] |
| 28 | [redacted] |
| 40 | [redacted] |
| 96 | [redacted] |
| 8 | [redacted] |
| 63 | [redacted] |
| 5 | [redacted] |
| 75 | [redacted] |
| 49 | [redacted] |
| 57 | [redacted] |
| 36 | [redacted] |
| 77 | [redacted] |
| 52 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 6 |  |
| 89 | |
| 31 | |
| 77 | |
| 5 | |
| 30 | |
| 61 | |
| 62 | |
| 8 | |
| 71 | |
| 12 | |
| 67 | |
| 22 | |
| 14 | |
| 4 | |
| 72 | |
| 62 | |
| 26 | |
| 53 | |
| 48 | |
| 1 | |
| 32 | |
| 4 | |
| 9 | |
| 95 | |
| 39 | |
| 36 | |
| 57 | |
| 72 | |
| 94 | |
| 91 | |
| 69 | |
| 46 | |
| 71 | |
| 10 | |
| 36 | |
| 22 | |
| 43 | |
| 67 | |
| 45 | |
| 24 | |
| 25 | |
| 39 | |
| 73 | |
| 55 | |
| 71 | |
| 33 | |
| 47 | |
| 68 | |
| 14 | |
| 42 | |
| 82 | |
| 76 | |
| 3 | |
| 39 | |

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 8 | [redacted] |
| 0 | |
| 69 | |
| 42 | |
| 19 | |
| 3 | |
| 62 | |
| 58 | |
| 71 | |
| 63 | |
| 30 | |
| 14 | |
| 93 | |
| 19 | |
| 44 | |
| 4 | |
| 13 | |
| 90 | |
| 8 | |
| 11 | |
| 43 | |
| 28 | |
| 7 | |
| 0 | |
| 8 | |
| 57 | |
| 88 | |
| 63 | |
| 65 | |
| 88 | |
| 6 | |
| 11 | |
| 81 | |
| 82 | |
| 92 | |
| 34 | |
| 36 | |
| 35 | |
| 93 | |
| 29 | |
| 43 | |
| 42 | |
| 5 | |
| 30 | |
| 3 | |
| 6 | |
| 21 | |
| 46 | |
| 0 | |
| 82 | |
| 67 | |
| 42 | |
| 26 | |
| 88 | |
| 54 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 92 | [redacted] |
| 84 | |
| 90 | |
| 21 | |
| 26 | |
| 14 | |
| 62 | |
| 0 | |
| 4 | |
| 90 | |
| 16 | |
| 92 | |
| 21 | |
| 65 | |
| 57 | |
| 24 | |
| 30 | |
| 32 | |
| 46 | |
| 54 | |
| 39 | |
| 84 | |
| 58 | |
| 6 | |
| 23 | |
| 99 | |
| 33 | |
| 91 | |
| 72 | |
| 77 | |
| 90 | |
| 72 | |
| 40 | |
| 18 | |
| 79 | |
| 71 | |
| 34 | |
| 35 | |
| 17 | |
| 51 | |
| 36 | |
| 72 | |
| 95 | |
| 45 | |
| 78 | |
| 7 | |
| 37 | |
| 75 | |
| 79 | |
| 83 | |
| 20 | |
| 51 | |
| 57 | |
| 33 | |
| 86 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 70 |  |
| 51 | |
| 34 | |
| 17 | |
| 25 | |
| 53 | |
| 31 | |
| 17 | |
| 14 | |
| 51 | |
| 11 | |
| 21 | |
| 9 | |
| 85 | |
| 12 | |
| 89 | |
| 28 | |
| 50 | |
| 98 | |
| 30 | |
| 63 | |
| 58 | |
| 7 | |
| 17 | |
| 7 | |
| 91 | |
| 49 | |
| 15 | |
| 2 | |
| 20 | |
| 39 | |
| 5 | |
| 3 | |
| 75 | |
| 48 | |
| 23 | |
| 93 | |
| 24 | |
| 10 | |
| 44 | |
| 82 | |
| 94 | |
| 59 | |
| 81 | |
| 1 | |
| 0 | |
| 76 | |
| 93 | |
| 71 | |
| 15 | |
| 30 | |
| 47 | |
| 99 | |
| 86 | |
| 73 | |

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

51
47
22
36
58
11
6
95
34
75
13
85
51
17
17
49
17
60
60
11
59
81
75
1
94
25
13
57
29
10
36
30
96
13
60
59
38
57
33
7
71
4
79
80
14
19
38
9
69
81
87
66
28
97
95

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 84 | [redacted] |
| 35 | [redacted] |
| 27 | [redacted] |
| 58 | [redacted] |
| 33 | [redacted] |
| 69 | [redacted] |
| 11 | [redacted] |
| 71 | [redacted] |
| 72 | [redacted] |
| 98 | [redacted] |
| 46 | [redacted] |
| 11 | [redacted] |
| 95 | [redacted] |
| 2 | [redacted] |
| 61 | [redacted] |
| 27 | [redacted] |
| 35 | [redacted] |
| 4 | [redacted] |
| 26 | [redacted] |
| 26 | [redacted] |
| 45 | [redacted] |
| 55 | [redacted] |
| 1 | [redacted] |
| 3 | [redacted] |
| 65 | [redacted] |
| 77 | [redacted] |
| 98 | [redacted] |
| 58 | [redacted] |
| 65 | [redacted] |
| 51 | [redacted] |
| 33 | [redacted] |
| 99 | [redacted] |
| 19 | [redacted] |
| 8 | [redacted] |
| 85 | [redacted] |
| 97 | [redacted] |
| 72 | [redacted] |
| 59 | [redacted] |
| 14 | [redacted] |
| 0 | [redacted] |
| 6 | [redacted] |
| 46 | [redacted] |
| 92 | [redacted] |
| 86 | [redacted] |
| 7 | [redacted] |
| 41 | [redacted] |
| 8 | [redacted] |
| 37 | [redacted] |
| 34 | [redacted] |
| 69 | [redacted] |
| 67 | [redacted] |
| 43 | [redacted] |
| 66 | [redacted] |
| 95 | [redacted] |
| 79 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 28 | [redacted] |
| 96 | [redacted] |
| 51 | [redacted] |
| 95 | [redacted] |
| 11 | [redacted] |
| 42 | [redacted] |
| 97 | [redacted] |
| 90 | [redacted] |
| 8 | [redacted] |
| 3 | [redacted] |
| 92 | [redacted] |
| 43 | [redacted] |
| 26 | [redacted] |
| 9 | [redacted] |
| 87 | [redacted] |
| 90 | [redacted] |
| 3 | [redacted] |
| 22 | [redacted] |
| 42 | [redacted] |
| 90 | [redacted] |
| 81 | [redacted] |
| 62 | [redacted] |
| 73 | [redacted] |
| 96 | [redacted] |
| 11 | [redacted] |
| 78 | [redacted] |
| 22 | [redacted] |
| 84 | [redacted] |
| 81 | [redacted] |
| 10 | [redacted] |
| 41 | [redacted] |
| 18 | [redacted] |
| 20 | [redacted] |
| 22 | [redacted] |
| 55 | [redacted] |
| 29 | [redacted] |
| 75 | [redacted] |
| 6 | [redacted] |
| 14 | [redacted] |
| 7 | [redacted] |
| 27 | [redacted] |
| 86 | [redacted] |
| 93 | [redacted] |
| 16 | [redacted] |
| 65 | [redacted] |
| 60 | [redacted] |
| 10 | [redacted] |
| 51 | [redacted] |
| 36 | [redacted] |
| 37 | [redacted] |
| 83 | [redacted] |
| 33 | [redacted] |
| 91 | [redacted] |
| 97 | [redacted] |
| 48 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

3
60
84
80
40
15
56
8
29
35
49
16
82
24
2
99
62
67
81
43
24
75
43
12
92
27
94
25
18
92
91
89
65
2
59
46
24
82
35
44
36
5
18
77
60
12
43
76
66
49
38
91
14
29
98

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

80
45
43
19
42
9
65
28
70
15
70
73
94
22
63
74
12
75
86
94
28
15
58
78
29
39
53
91
30
65
39
63
62
76
31
79
57
77
26
34
57
54
63
6
4
46
54
49
24
53
92
55
27
74
33

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

81
21
98
28
0
0
64
4
36
70
38
90
42
42
95
51
33
69
81
64
29
96
47
59
11
90
44
28
33
78
69
78
65
30
67
27
67
11
57
86
78
42
42
99
29
2
78
62
44
87
35
74
16
71
78

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

10
22
1
27
98
27
33
36
29
90
38
88
38
6
22
64
19
48
78
34
15
85
21
82
33
70
94
10
5
7
86
54
67
85
71
94
92
25
61
57
88
13
53
85
58
30
51
82
5
29
21
77
33
14
29

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 32 | [redacted] |
| 36 | |
| 62 | |
| 75 | |
| 95 | |
| 43 | |
| 45 | |
| 35 | |
| 57 | |
| 83 | |
| 44 | |
| 0 | |
| 30 | |
| 42 | |
| 86 | |
| 28 | |
| 25 | |
| 92 | |
| 70 | |
| 16 | |
| 59 | |
| 79 | |
| 89 | |
| 71 | |
| 66 | |
| 91 | |
| 44 | |
| 74 | |
| 51 | |
| 65 | |
| 19 | |
| 33 | |
| 84 | |
| 38 | |
| 17 | |
| 49 | |
| 0 | |
| 5 | |
| 11 | |
| 48 | |
| 68 | |
| 93 | |
| 24 | |
| 15 | |
| 68 | |
| 29 | |
| 70 | |
| 14 | |
| 82 | |
| 59 | |
| 95 | |
| 95 | |
| 88 | |
| 9 | |
| 4 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 90 | [redacted] |
| 6 | |
| 87 | |
| 8 | |
| 61 | |
| 22 | |
| 10 | |
| 92 | |
| 61 | |
| 95 | |
| 53 | |
| 31 | |
| 34 | |
| 44 | |
| 64 | |
| 2 | |
| 17 | |
| 57 | |
| 8 | |
| 34 | |
| 18 | |
| 30 | |
| 83 | |
| 97 | |
| 70 | |
| 77 | |
| 96 | |
| 70 | |
| 5 | |
| 81 | |
| 31 | |
| 41 | |
| 8 | |
| 33 | |
| 45 | |
| 19 | |
| 74 | |
| 94 | |
| 17 | |
| 9 | |
| 78 | |
| 79 | |
| 10 | |
| 71 | |
| 24 | |
| 75 | |
| 8 | |
| 14 | |
| 73 | |
| 98 | |
| 38 | |
| 28 | |
| 7 | |
| 0 | |
| 67 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

48
22
92
26
15
90
13
72
70
39
18
79
83
77
0
9
28
85
24
76
45
80
79
87
74
76
16
1
32
25
34
50
58
90
32
10
16
40
69
83
41
1
19
18
0
12
14
29
91
63
0
66
22
9
5

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 20 | [redacted] |
| 50 | [redacted] |
| 15 | [redacted] |
| 64 | [redacted] |
| 19 | [redacted] |
| 64 | [redacted] |
| 67 | [redacted] |
| 77 | [redacted] |
| 55 | [redacted] |
| 62 | [redacted] |
| 34 | [redacted] |
| 49 | [redacted] |
| 67 | [redacted] |
| 1 | [redacted] |
| 52 | [redacted] |
| 43 | [redacted] |
| 34 | [redacted] |
| 8 | [redacted] |
| 92 | [redacted] |
| 18 | [redacted] |
| 47 | [redacted] |
| 38 | [redacted] |
| 93 | [redacted] |
| 47 | [redacted] |
| 64 | [redacted] |
| 8 | [redacted] |
| 51 | [redacted] |
| 89 | [redacted] |
| 21 | [redacted] |
| 63 | [redacted] |
| 69 | [redacted] |
| 70 | [redacted] |
| 31 | [redacted] |
| 84 | [redacted] |
| 16 | [redacted] |
| 3 | [redacted] |
| 61 | [redacted] |
| 81 | [redacted] |
| 55 | [redacted] |
| 99 | [redacted] |
| 93 | [redacted] |
| 20 | [redacted] |
| 87 | [redacted] |
| 25 | [redacted] |
| 53 | [redacted] |
| 67 | [redacted] |
| 91 | [redacted] |
| 65 | [redacted] |
| 26 | [redacted] |
| 38 | [redacted] |
| 54 | [redacted] |
| 86 | [redacted] |
| 28 | [redacted] |
| 80 | [redacted] |
| 40 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 89 | [redacted] |
| 70 | |
| 1 | |
| 96 | |
| 79 | |
| 14 | |
| 25 | |
| 62 | |
| 8 | |
| 4 | |
| 85 | |
| 17 | |
| 36 | |
| 55 | |
| 31 | |
| 21 | |
| 1 | |
| 46 | |
| 40 | |
| 93 | |
| 57 | |
| 91 | |
| 30 | |
| 95 | |
| 8 | |
| 86 | |
| 10 | |
| 94 | |
| 20 | |
| 36 | |
| 34 | |
| 91 | |
| 31 | |
| 81 | |
| 39 | |
| 83 | |
| 9 | |
| 18 | |
| 55 | |
| 48 | |
| 46 | |
| 78 | |
| 3 | |
| 61 | |
| 5 | |
| 29 | |
| 49 | |
| 71 | |
| 80 | |
| 11 | |
| 87 | |
| 95 | |
| 20 | |
| 99 | |
| 57 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

25
28
76
16
51
82
63
2
71
9
30



**Annex B**
**Participant Information**

# EFH TO ONCOR

# MIGRATE RETIREES

2203382.1

# Employee Demographics Record

| # | Name | Required | Format | Example | Notes |
|---|------|----------|--------|---------|-------|
| 1 | Transaction_Type | Yes | Text | E | "E" for employee's demographics |
| 2 | Employee_ID | Yes | Text | 12345678 | |
| 3 | Employee_ID | Yes | Text | 12345678 | Indicates demographics are for employee and maintains alignment. |
| 4 | Relationship | Yes | Text | E | Value is hard-coded to be "E" for employee. |
| 5 | First_Name | Yes | Text | James | |
| 6 | Last_Name | Yes | Text | Smith | |
| 7 | Date_of_Birth | Yes | MM/DD/YYYY | 01/02/1950 | |
| 8 | Gender | No | Text | M | M or F |
| 9 | SSN | No | Text | 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 | Social Security Number |
| 10 | Action_Type | Yes | Text | AC | Value is hard-coded to be "AC." |
| 11 | Action_Reason | Yes | Text | A1 | Value is hard-coded to be "A1." |
| 12 | Employee_Group | Yes | Text | 2 | Value is hard-coded to be "2." |
| 13 | Employee_Subgroup | Yes | Text | R2 | Value is hard-coded to be "R2." |
| 14 | Company_Code | No | Text | 0014 | Values coincide with SAP codes. |
| 15 | Contract_Field | No | Text | N | PUNK code |
| 16 | Retirement_Date | Yes | MM/DD/YYYY | 09/30/2015 | |
| 17 | Home_Address_Line_1 | No | Text | 123 Smith St | |
| 18 | Home_Address_Line_2 | No | Text | Apt 2 | |
| 19 | Home_City | No | Text | Dallas | |
| 20 | Home_State | No | Text | TX | USPS State Code |
| 21 | Home_Zip | No | Text | 75631 | |
| 22 | Home_Country | No | Text | USA | If not USA, value will be blank. |
| 23 | Home_Telephone | No | Text | 2141112222 | |
| 24 | Primary_Address_Line_1 | No | Text | PO Box 111 | |
| 25 | Primary_Address_Line_2 | No | Text | POA | |
| 26 | Primary_Address_City | No | Text | Dallas | |
| 27 | Primary_Address_State | No | Text | TX | USPS State Code |
| 28 | Primary_Address_Zip | No | Text | 75631 | |
| 29 | Primary_Address_Country | No | Text | USA | If not USA, value will be blank. |
| 30 | Annual_Salary | No | Currency | 90,000.00 | |
| 31 | Disability_Indicator | No | Text | Yes | Expected values include: "Yes" or null |
| 32 | Disability_Date | No | MM/DD/YYYY | 12/15/2014 | |
| 33 | Medicare_Indicator | No | Text | Yes | Expected values include: "Yes" or null |
| 34 | Smoker_Indicator | No | Text | Yes | Expected values include: "Yes" or null |
| 35 | Regulated_Rate_Allocation | No | Text | 0.654 | RAF |
| 36 | Life Only Allocation | No | Text | 0.654 | Life Only RAF |
| 37 | Last Day Worked | No | MM/DD/YYYY | 12/15/2014 | |

## *Dependent Demographics Record*

| # | Name | Required | Format | Example | Notes |
|---|------|----------|--------|---------|-------|
| 1 | Transaction_Type | Yes | Text | D | "D" for dependent record |
| 2 | Employee_ID | Yes | Text | 12345678 | |
| 3 | Dependent_ID | Yes | Text | 12345678100 | |
| | Dependent_Type | Yes | Text | 02 | Values will be SAP codes:<br>• 01 for Spouse<br>• 02 for Dependent/Child. |
| 4 | Dependent_First_Name | Yes | Text | Thomas | |
| 5 | Dependent_Last_Name | Yes | Text | Smith | |
| 6 | Dependent_Date_of_Birth | No | MM/DD/YYYY | 01/02/1995 | |
| 7 | Dependent_Gender | No | Text | M | M or F |
| 8 | Dependent_SSN | No | Text | 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 | Social Security Number |
| 9 | Dependent_Address_Line_1 | No | Text | 123 Smith St | |
| 10 | Dependent_Address_Line_2 | No | Text | Apt 2 | |
| 11 | Dependent_City | No | Text | Dallas | |
| 12 | Dependent_State | No | Text | TX | USPS State Code |
| 13 | Dependent_Zip | No | Text | 75631 | |
| 14 | Dependent_Country | No | Text | USA | If not USA, value will be blank. |
| 15 | Home_Telephone | No | Text | 2141112222 | Employee's telephone |
| 16 | Primary_Address_Line_1 | No | Text | PO Box 111 | Employee's primary address line 1 |
| 17 | Primary_Address_Line_2 | No | Text | POA | Employee's primary address line 2 |
| 18 | Primary_Address_City | No | Text | Dallas | Employee's primary address city |
| 19 | Primary_Address_State | No | Text | TX | Employee's primary address state |
| 20 | Primary_Address_Zip | No | Text | 75631 | Employee's primary address zip |
| 21 | Primary_Address_Country | No | Text | USA | Employee's primary address country; If not USA, value is blank. |
| 22 | Dependent_Disability_Indicator | No | Text | Yes | Expected values include: "Yes" or null |
| 23 | Dependent_Medicare_Indicator | No | Text | Yes | Expected values include: "Yes" or null |
| 24 | Dependent_Smoker_Indicator | No | Text | Yes | Expected values include: "Yes" or null |

## *Employee Record of Benefit Election*

| # | Name | Required | Format | Example | Notes |
|---|------|----------|--------|---------|-------|
| 1 | Transaction_Type | Yes | Text | B | "BE" for employee's benefit election(s). |
| 2 | Employee_ID | Yes | Text | 12345678 | |
| 3 | Benefit_Coverage_Type | No | Text | Medical | See below for list of possible values.[**] |
| 4 | Benefit_Plan | No | Text | Blue Cross HSA | See below for list of possible values.[++] |
| 5 | Coverage | No | Text | Employee | Coverage Level; See below for list of possible values.[‖] |
| 6 | Coverage_Amount | No | Text | $132,000.00 | Applicable only to Life Insurance Plan(s) |

## *Dependent Record of Benefit Election*

| # | Name | Required | Format | Example | Notes |
|---|------|----------|--------|---------|-------|
| 1 | Transaction_Type | No | Text | B | "BD" for dependent's benefit election(s). |
| 2 | Employee_ID | No | Text | 12345678 | |
| 3 | Dependent_ID | No | Text | 12345678100 | |
| 4 | Benefit_Coverage_Type | No | Text | Medical | See below for list of possible values.[**] |
| 5 | Benefit_Plan | No | Text | Blue Cross HSA | See below for list of possible values.[++] |
| 6 | Coverage | No | Text | Employee | Coverage Level; See below for list of possible values.[!!] |
| 7 | Coverage_Amount | No | Text | $132,000.00 | Applicable only to Life Insurance Plan(s) |

## [**] Benefit Coverage Types :

- Medical
- Medical HMO
- Dental
- Vision
- Basic Life
- Basic AD&D
- Optional Life
- Optional Spouse Life
- Optional Child Life
- ~~Optional Employee AD&D~~
- ~~Optional Family AD&D~~

## [++]Benefit Plans :

- Blue Cross HRA
- Blue Cross HSA
- Blue Cross MyHealth HRA
- Blue Cross MyHealth HSA
- Scott & White HMO Health Plan
- Aetna DPO Plan A
- Aetna DPO Plan B
- UHC VISION
- MetLife (Employee)
- MetLife (Employee Only)
- MetLife Program A (Employee)
- MetLife Program B (Employee)
- MetLife Spouse NonSmoker (Spouse)
- MetLife Smoker (Spouse)
- MetLife Program A (Spouse)
- MetLife (Child)
- MetLife (Employee + Family)

## [!!]Coverage :

- Employee
- Employee + Spouse
- Employee + Child(ren)
- Employee + Family
- 0.5 X Salary
- 1 X Salary
- 2 X Salary
- 3 X Salary
- 4 X Salary
- 5 X Salary
- 6 X Salary
- $10,000
- $15,000
- $20,000

**Annex C**
**AON True-up Letter**



*Proprietary & Confidential*

## Memo

| | |
|---|---|
| **To** | Kerri Veitch, Oncor Electric Delivery Company<br>Cyndie Ewert, Energy Future Holdings |
| **From** | Katie Laughlin |
| **Cc** | Alan Taper, Aon Hewitt<br>Brian Walker, Aon Hewitt |
| **Date** | September 29, 2016 |
| **Re** | OPEB Claims True-up Methodology for Split Retirees |

Each quarter a true-up of retiree welfare claims and expenses for "split" participants in the Oncor OPEB plan is completed. The objective is to calculate the portion of the claims and expenses that should be assigned to EFH and then compare this to the amounts EFH contributed into the trusts or paid outside the trust.

This memo documents the data and process used to allocate claims and expenses for split retirees between Oncor and EFH.

## Data

Below is a summary of the data we use to determine the claims true-up:

- **Claims and administrative expenses incurred in and rebates received for years after 2014**—Oncor's data for claims incurred after 2014, along with administrative expenses and premiums paid from the trusts and rebates received. These amounts are allocated by trust codes and separated between 100% Oncor retirees and split retirees.

- **Trust statements and transactions**—Oncor trust statements and transaction detail as of each quarter end, for each account. The transaction detail is used to review and compare with Oncor's claims and expenses files. The transaction detail is also used to confirm the trust contributions made by EFH.

- **Administrative expenses paid outside trusts**—Oncor's data for administrative expenses paid outside the trusts.

- **EFH contributions for key retirees**—Oncor's data for the amounts EFH paid outside the trusts for key retiree claims.

- **Contribution schedule**—Each year Aon provides a contribution schedule by business segment for the Union VEBA, Nonunion VEBA, 401(h) Account, Life VEBA and key retirees.

**Aon Hewitt** | Retirement and Investment
2711 North Haskell Avenue | Suite 800 | Dallas, TX 75204
t +1.214.989.0000 | aon.com



Examples of administrative expenses for the Oncor Plan and/or OSPP (fully-insured plan) reflected above include:

- Costs associated with communications to participants
- Third party vendor/benefit provider administrative costs
- Legal compliance costs such as preparation of Forms 5500, summaries of benefits and coverage, summary plan descriptions, summary annual reports and other applicable reporting and disclosure requirements
- Legal, consulting and accounting fees and costs, and any taxes

## Allocation Process

Below is a summary of the process used to allocate claims and expenses for split retirees between Oncor and EFH:

- **Claims and administrative expenses incurred in and rebates received for 2014**—Since claims and expenses incurred in and rebates received for 2014 are not identified separately from the claims and expenses incurred in and rebates received after 2014, Oncor validates that the transactions from the trust that do not align with the Oncor data for the quarter are due to claims and expenses incurred in and rebates received for 2014. These amounts are allocated between Oncor and EFH in proportion to weighted average expected claims for 2014 from the FAS 106 valuation census data and reflecting the allocation factors assigned to each participant. Beginning in 2017, these amounts will be allocated between Oncor and EFH using weighted average expected claims for the current year from the FAS 106 valuation census data and reflecting the allocation factors assigned to each participant. Each year Aon provides this split percentage.

- **Claims and administrative expenses incurred in and rebates received for years after 2014**—Oncor is assigned all claims, expenses and rebates identified for 100% Oncor retirees and an allocated portion of claims identified for split retirees. Claims, expenses and rebates for split retirees are allocated between Oncor and EFH using weighted average expected claims for the current year from the FAS 106 valuation census data and reflecting the allocation factors assigned to each participant. Each year Aon provides this split percentage.

- **Administrative expenses paid outside trusts**—Since certain expenses paid outside the trust are not separated between 100% Oncor retirees and split retirees, these expenses are allocated based on participant headcounts. Oncor is assigned all expenses for 100% Oncor retirees and an allocated portion of expenses for split retirees. Split retirees are allocated in the same proportion to the current year claims. Each year Aon provides this split percentage.

- **Contribution schedule**—Oncor provides EFH with a revised contribution amount for the second month following the quarter end for the Union VEBA, Nonunion VEBA, 401(h) Account, Life VEBA, key retirees and other expenses. In the event the surplus or deficit for the Union VEBA, Nonunion VEBA, 401(h) Account, Life VEBA or key retirees is greater than the regularly scheduled contribution for the month, the contribution amounts for the third month following the quarter end are adjusted as well.

**EXHIBIT II-A**

**AON CALCULATION METHOD**



November 13, 2012

Mr. Robert Moussaid
Energy Future Holdings Corp.
Energy Plaza
1601 Bryan Street
Dallas, TX 75201-3411

Dear Robert,

Subject:   Documentation of Pension Plan Assignment—Revised

This letter documents the process that took effect on January 1, 2005, to (1) assign pension plan benefits, (2) calculate pension plan liabilities, (3) allocate pension plan assets, and (4) calculate pension costs for the following business segments that participate in the EFH Retirement Plan:

- Oncor Electric Delivery (Regulated Operations)
- Non-regulated EFH Operations
    - Mining (Luminant Mining Services)
    - Sandow
    - Other Genco (Luminant Power Services)
    - EFH Corp.
    - Retail (TXU Energy Retail)
    - Business Services (EFH Corp. Services)
    - Portfolio Management (Luminant Energy Services)
    - Discontinued Operations

This letter updates our previous letter dated January 3, 2012, to reflect the agreement between EFH and Oncor related to the allocation of pre-2002 service for certain employees of Business Services and EFH Corp.

## Assignment of Pension Plan Benefits

Section 36.065 of the Public Utility Regulating Act provides that benefits attributable to the service of employees and retirees who were employed by the predecessor integrated electric utility before the utility's unbundling (as of January 1, 2002) shall be assigned to Oncor Electric Delivery. A copy of this section of the Act is attached for reference. As described below, the assignment of benefits depends on the date on which an individual separates from service as well as the business segment for which he or she works.

2711 North Haskell Avenue | Suite 800 | Dallas, TX 75204
t +1.214.989.0000 | f +1.214.989.2683 | aonhewitt.com
Proprietary & Confidential



## Plan Participants Separating Before January 1, 2002 ("Pre-2002 Terminations")

Plan benefits for employees who separated from service with EFH prior to January 1, 2002, and did not subsequently transfer after January 1, 2005, are assigned as follows:

- Benefits for most pre-2002 terminations are fully assigned to the business segment based on the company code reported by EFH in the pension census data:
    - Benefits for those reported with company codes for Electric Delivery, Genco (including Mining and Sandow), or Retail are fully assigned to Oncor.
    - Benefits for those reported with company codes for Portfolio Management or Discontinued Operations are fully assigned to the business segment indicated by their reported company code.
- Benefits for pre-2002 terminations with a reported company code for Business Services or EFH Corp. are assigned as follows:
    - 64.43% of the benefit is assigned to Oncor.
    - 35.57% of the benefit is assigned to the business segment indicated by their reported company code.

The 64.43% allocation represents the average aggregate portion of the time that Business Services spent supporting the regulated electric utility as of January 1, 2002, as determined by EFH.

- Some plan participants were reported by EFH with two company codes and two corresponding monthly benefit fields. Benefits for these pre-2002 terminations were assigned directly based on the reported amounts.

## Plan Participants Separating On or After January 1, 2002 ("Post-2001 Terminations")

Plan benefits for employees who separated from service with EFH on or after January 1, 2002, and did not subsequently transfer after January 1, 2005, are assigned as follows:

- Benefits for post-2001 terminations reported with company codes for Electric Delivery are fully assigned to Oncor.
- Benefits for post-2001 terminations reported with company codes for Portfolio Management or Discontinued Operations are fully assigned to the business segment indicated by their reported company code.
- Benefits for post-2001 terminations reported with company codes for Genco (including Mining and Sandow) or Retail are assigned as follows:
    - A portion of each plan participant's benefit is assigned to Oncor. The applicable portion is calculated as the ratio of (a) service as of December 31, 2001, over (b) total service at separation of employment.
    - The remaining portion of each plan participant's benefit is assigned to the business segment indicated by their reported company code at the time they separated from service. The remaining portion is calculated as the ratio of (a) service beginning January 1, 2002, over (b) total service at separation of employment.
- Benefits for post-2001 terminations with a reported company code for Business Services or EFH Corp. are assigned as follows:



- A portion of each plan participant's benefit is assigned to Oncor. The applicable portion is calculated as the ratio of (a) service as of December 31, 2001, over (b) total service at separation of employment. This ratio is further multiplied by 64.43%.

- The remaining portion of each plan participant's benefit is assigned to the business segment indicated by their reported company code at the time they separated from service. This portion includes 35.57% of the amount attributable to service as of December 31, 2001, plus the full amount attributable to service beginning January 1, 2002.

- Company codes as of January 1, 2002, were not available at the time the initial assignment of benefits was performed. Therefore, the assignment of benefits related to pre-2002 service is based on the company code reported as of January 1, 2005 (as a proxy for January 1, 2002). The calculations are generally based on credited service at separation of employment as reported by EFH. For cases where this information was not reported, the service was instead calculated from the vesting service date, if reported, or else from the hire date.

- Some plan participants were reported by EFH with two company codes and two corresponding monthly benefit fields. These data elements were not reflected in the assignment of benefits for post-2001 terminations.

## Impact of 2012 Agreement

When the approach to assign benefits was first adopted in 2005, EFH was not concerned about the assignment of individual benefit amounts since all EFH and Oncor employees were covered by the same pension and retiree welfare plans. That situation changed during 2012 as a separate nonqualified pension plan has now been adopted by Oncor and the formulas for determining participant contributions to the retiree medical plan are scheduled to differ between Oncor and EFH beginning January 1, 2013.

Under the initial assignment, Business Services employees who terminated employment after January 1, 2005, were treated differently than similarly situated Business Services employees who terminated prior to that date. In recognition of the new situation regarding pension and retiree medical plans, EFH and Oncor agreed to assign benefits for all Business Services employees the same way, based on the approach previously used for pre-2005 terminations. EFH and Oncor also agreed to assign benefits for employees of EFH Corp. using the same approach as for employees of Business Services.

In recognition of this change, certain benefits were re-assigned during 2012 from Business Services and EFH Corp. to Oncor. At the same time, plan assets equal to the benefit obligation attributable to these re-assigned benefits were re-allocated from Business Services and EFH Corp. to Oncor. Because the prior assignment method has been communicated to and approved by the Public Utility Commission, Oncor asked that these benefits be separately identified and tracked. As a result, the associated benefit obligations, corresponding plan assets and resulting pension cost will not be included in rate case recovery.



### Transfers between Business Segments

Plan benefits attributable to service prior to January 1, 2002, are assigned to business segments based on an employee's reported company code as of January 1, 2005, as described above. If an employee transfers between business segments after January 1, 2005, benefits attributable to service after January 1, 2002, are assigned to the business segment based on the company code reported as of separation of employment.

Multiple transfers between business segments and transfers prior to January 1, 2005, are not reflected in the assignment of benefits. Rather, benefits attributable to pre-2002 service are assigned based on the company code reported as of January 1, 2005, and benefits attributable to service after January 1, 2002, are assigned based on the company code reported as of separation of employment.

Exhibit 1 of this letter illustrates the process for some sample plan participants. Exhibit 2 graphically illustrates the process.

## Calculation of Pension Plan Liabilities

Once the pension benefit for each plan participant is assigned to each business segment, the relevant actuarial liabilities are calculated at each valuation date based on the assigned portions of the benefit.

### Accounting

Liabilities for ASC 715 (formerly known as FAS 87) accounting are:

- Accumulated benefit obligation ("ABO") is the actuarial present value of benefits, based on current service and pay. An individual's ABO is shared between business segments in the same proportion as the benefit is assigned.

- Projected benefit obligation ("PBO") is the actuarial present value of benefits, based on current service and pay projected to retirement or separation of employment. This measure is the basis for financial and regulatory reporting. An individual's PBO is shared between business segments in the same proportion as the benefit is assigned.

- Total benefit obligation ("TBO") is the actuarial present value of all benefits expected to be paid to an individual from the plan, including projected future service accruals. The difference between an individual's TBO and PBO (i.e. future service accruals) is fully borne by the current business segment.

- Service cost ("SC") is the actuarial present value of benefits earned during the current year calculated on a PBO basis. An individual's SC is fully borne by the current business segment.

Exhibit 3 of this letter shows the progression of the PBO from January 1, 2005, through December 31, 2010, for each business segment.



## Funding

Liabilities for determination of the minimum funding requirements are allocated as follows:

- Target liability ("TL") is the actuarial present value of benefits, based on current service and pay (similar to ABO). This measure is the basis for statutory calculations under ERISA and the Pension Protection Act of 2006. An individual's TL is shared between business segments in the same proportion as the benefit is assigned.

- Target normal cost ("TNC") is the actuarial present value of benefits earned during the current year calculated on a TL basis. The portion of an individual's TNC associated with additional service accruals is fully borne by the current business segment. The portion of the individual's TNC associated with pay increases on past service benefits is shared between business segments in the same proportion as the benefit is assigned.

Prior to January 1, 2008, the liabilities for plan funding were calculated differently based on the funding methods allowed prior to the Pension Protection Act of 2006. The attribution of accrued liability was similar to the current approach; the attribution of the normal cost was dependent on the specific funding method being used.

## Benefit Payments

Benefit payments made from the pension plan trust are reported by the trustee; however, the trustee does not assign each individual's benefit to the separate business segments. Therefore, the aggregate benefit payment amount is allocated to the business segments each year in proportion to the expected benefit payment amount for the year that is implicit in the actuarial calculation of plan liabilities.

## Allocation of Pension Plan Assets

As of January 1, 2005, the fair value of plan assets was allocated to each business segment in proportion to TBO, calculated as described above. Exhibit 4 of this letter shows the initial allocation of the fair value of plan assets as of January 1, 2005.

Each subsequent year, the fair value of plan assets for each business segment is tracked by:

- Adding employer contributions allocated among business segments as determined by EFH.

- Subtracting benefit payments based on the assignment described above.

- Reflecting a proportionate share of investment returns, net of plan expenses.

Exhibit 5 of this letter shows the progression of the fair value of assets from January 1, 2005, through December 31, 2010, for each business segment.

The market-related value of plan assets is determined separately for regulated and non-regulated operations, and then allocated among the non-regulated business segments in proportion to fair value of assets. To determine the separate market-related value of assets for the regulated and non-regulated operations, asset gains/losses and plan expenses are allocated in proportion to a weighted average fair value of assets.



## Calculation of Pension Costs

### Accounting Balances

The following procedures were used to allocate the accounting balances among business segments at January 1, 2005:

- The unrecognized net transition obligation and associated amortizations were allocated to each business segment in proportion to PBO.

- The unrecognized prior service cost and associated amortizations were allocated to each business segment in proportion to remaining future service of participants.

- The net amount recognized on the balance sheet was allocated to each business segment in proportion to the funded status (PBO less fair value of plan assets).

- The unrecognized net gain/loss was allocated to each business segment as a balancing item.

The initial accounting balances were established for each business segment at January 1, 2005. Each subsequent year, the balances are tracked based on the amortization amount and newly established bases for the year. New prior service cost bases are calculated for each business segment based on the impact of plan changes on the benefits assigned as described above. New net gains/losses are calculated directly for each business segment based on the differences between expected and actual experience on assigned plan liabilities and tracked assets.

Effective October 10, 2007, Energy Future Holdings Corp. recognized purchase accounting for the non-regulated operations. As a result, all unrecognized accounting balances attributable to non-regulated operations were eliminated at that time.

### Pension Cost

The pension expense under ASC 715 (formerly known as FAS 87) for each business segment is calculated as follows:

- Service cost is calculated separately for each business segment as described above.

- Interest cost is determined for each business segment based on the PBO calculated separately for each business segment as described above.

- Expected return on plan assets is calculated separately for each business segment based on the assets tracked for each business segment as described above.

- The net transition obligation is amortized for each business segment in accordance with the initial allocation described above.

- Prior service costs are amortized for each business segment in accordance with the initial allocation and treatment of subsequent plan changes as described above.

- The amortization of net (gains)/losses is determined separately for regulated and non-regulated operations, and then allocated proportionally over the non-regulated business segments.



## Valuation Assumptions

The valuation assumptions used for the plan are determined as follows:

- A single discount rate is determined based on the aggregate plan cash flows.
  - Upon evaluation of the discount rate separately for regulated and non-regulated operations, the rate was found not to be significantly different.
- Since the investment policy has historically been the same for the regulated and non-regulated operations, a single expected rate of return assumption has been used.
  - In the event the investment policies for regulated and non-regulated operations are significantly different, the expected return assumption would be determined separately.
- Other valuation assumptions are generally applied consistently for all business segments, unless future expectations warrant differences.

## Closing

For your reference, I have also attached the 2008 rate case testimony prepared by Don Shipman which provides additional details of the benefit assignment and cost calculations. I hope this provides you sufficient documentation for your files.

Let us know if you have any questions.

Sincerely,

Aon Hewitt

Alan S. Taper
FSA, EA
Partner

AST:mct 03509L036
cc: Mr. Brian Levine, Aon Hewitt
    Mr. Joe Lopez, Aon Hewitt
    Mr. Brian Walker, Aon Hewitt



Exhibit 1

# Assignment of Benefits for Sample Plan Participants

## Pre-2002 Terminations

|  | Oncor Electric Delivery | Genco, Retail | EFH Corp., Business Services | Portfolio Mgmt., Discontinued Ops. |
|---|---|---|---|---|
| Eligibility Date | 01/01/1993 | 01/01/1993 | 01/01/1993 | 01/01/1993 |
| Separation Date | 12/31/2000 | 12/31/2000 | 12/31/2000 | 12/31/2000 |
| Regulated Portion | 100.00% | 100.00% | 64.43% | 0.00% |
| Total Benefit | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Regulated Benefit[1] | 1,000.00 | 1,000.00 | 644.30 | 0.00 |
| Nonregulated Benefit[2] | 0.00 | 0.00 | 355.70 | 1,000.00 |

## Post-2001 Terminations

|  | Oncor Electric Delivery | Genco, Retail | EFH Corp., Business Services | Portfolio Mgmt., Discontinued Ops., Business Services |
|---|---|---|---|---|
| Eligibility Date | 01/01/1996 | 01/01/1996 | 01/01/1996 | 01/01/1996 |
| Separation Date | 12/31/2003 | 12/31/2003 | 12/31/2003 | 12/31/2003 |
| Pre-2002 Service | 6.0 years | 6.0 years | 6.0 years | 6.0 years |
| Post-2001 Service | 2.0 years | 2.0 years | 2.0 years | 2.0 years |
| Pre-2002 Ratio | N/A | 75.00% | 75.00% | N/A |
| Regulated Portion of Pre-2002 Benefit | 100.00% | 100.00% | 64.43% | 0.00% |
| Total Benefit | $1,000.00 | $1,000.00 | $1,000.00 | $1,000.00 |
| Regulated Benefit[1] | 1,000.00 | 750.00 | 483.23 | 0.00 |
| Nonregulated Benefit[2] | 0.00 | 250.00 | 516.77 | 1,000.00 |

---

[1] Assigned to Oncor Electric Delivery.
[2] Assigned to the non-regulated business segment reported at separation.



Exhibit 2

## Assignment of Benefits



1. Some individuals reported in these business units had specific pension benefit amounts indicated as Electric Delivery; postretirement welfare plan benefits were assigned in proportion to the resulting pension benefit assignments.

Proprietary & Confidential | 10505L036-Assignment of Benefits-Revised.doc/004-K1-0102191

Exhibit 3

# Progression of Projected Benefit Obligation by Business Segment

## EFH Retirement Plan

| | Mining | Sandow | Other Genco | Total Genco | EFH Corp. | Retail | Business Services | Portfolio Management | Subtotal Non-regulated | Discontinued Operations | Total Non-regulated | Oncor | Total Plan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Projected Benefit Obligation, January 1, 2005 | 21,515,507 | 1,363,662 | 44,961,487 | 67,844,656 | 16,983,624 | 14,515,393 | 85,541,911 | 14,792,131 | 199,677,715 | 505,261,119 | 704,938,834 | 1,469,156,499 | 2,174,095,333 |
| Service Cost | 5,070,631 | 441,034 | 11,645,338 | 17,157,003 | 117,587 | 1,331,977 | 1,280,722 | 730,222 | 20,617,511 | 117,788 | 20,735,299 | 14,680,204 | 35,415,503 |
| Interest Cost | 1,282,548 | 81,565 | 2,664,602 | 4,048,815 | 2,181,700 | 585,457 | 5,017,402 | 876,030 | 12,889,404 | 27,913,801 | 40,903,205 | 85,572,821 | 126,276,026 |
| Plan Amendments | | | | | | | | | | | | | |
| Actuarial (Gain)/Loss | 2,305,261 | 208,177 | 4,828,663 | 7,342,101 | (755,323) | 480,329 | 5,536,947 | 874,763 | 13,479,017 | 34,148,543 | 47,627,560 | 104,618,304 | 152,245,864 |
| Benefits Paid | (383,535) | (7,625) | (731,144) | (1,122,304) | (3,332,489) | (385,834) | (4,138,613) | (360,629) | (9,720,693) | (47,506,970) | (68,927,663) | (67,523,178) | (124,350,877) |
| Projected Benefit Obligation, December 31, 2005 | 29,785,011 | 2,087,463 | 63,389,946 | 95,272,420 | 15,195,099 | 16,827,522 | 93,228,369 | 16,909,544 | 237,442,554 | 519,934,281 | 757,377,235 | 1,606,324,312 | 2,363,681,547 |
| Projected Benefit Obligation, January 1, 2006 | 29,785,011 | 2,087,463 | 63,389,946 | 95,272,420 | 15,195,099 | 16,827,522 | 93,228,369 | 16,909,544 | 237,442,554 | 519,934,281 | 757,377,235 | 1,606,324,312 | 2,363,681,547 |
| Service Cost | 5,982,574 | 458,632 | 13,430,964 | 19,872,170 | 59,969 | 829,805 | 1,554,381 | 1,046,267 | 23,362,592 | 197,859 | 23,560,451 | 16,690,698 | 40,251,149 |
| Interest Cost | 1,698,521 | 116,738 | 3,476,157 | 5,291,476 | 712,573 | 587,657 | 5,145,341 | 1,044,421 | 12,781,468 | 29,396,180 | 42,177,648 | 90,154,515 | 132,332,163 |
| Plan Amendments | | | | | | | | | | | | | |
| Actuarial (Gain)/Loss | (659,471) | (109,308) | (4,056,948) | (4,825,727) | (2,236,075) | (6,338,306) | (3,150,342) | 1,867,514 | (15,623,889) | 655,822 | (14,968,067) | (28,871,047) | (43,839,114) |
| Benefits Paid | (470,122) | (21,099) | (2,076,315) | (2,567,536) | (1,418,939) | (400,553) | (3,699,396) | (411,933) | (8,659,235) | (30,141,502) | (38,839,732) | (72,738,437) | (111,578,205) |
| Projected Benefit Obligation, December 31, 2006 | 36,306,513 | 2,532,486 | 74,163,804 | 113,002,803 | 12,111,727 | 11,306,072 | 93,088,483 | 19,755,815 | 249,264,900 | 520,042,635 | 769,307,535 | 1,611,540,001 | 2,380,847,536 |
| Projected Benefit Obligation, January 1, 2007 | 36,306,513 | 2,532,486 | 74,163,804 | 113,002,803 | 12,111,727 | 11,306,072 | 93,088,483 | 19,755,815 | 249,264,900 | 520,042,635 | 769,307,535 | 1,611,540,001 | 2,380,847,536 |
| Service Cost | 6,148,350 | 396,530 | 11,820,004 | 18,362,884 | 61,450 | 935,514 | 1,667,252 | 983,468 | 21,910,568 | 144,614 | 22,055,182 | 16,559,133 | 38,614,315 |
| Interest Cost | 2,110,310 | 136,121 | 4,328,931 | 6,635,362 | 905,283 | 646,842 | 5,561,316 | 1,102,333 | 14,873,436 | 23,860,493 | 44,733,929 | 94,070,749 | 138,813,678 |
| Plan Amendments | | | | | | | | | | | | | |
| Actuarial (Gain)/Loss | (3,208,624) | (568,494) | (8,841,551) | (12,618,669) | 3,373,886 | (722,231) | (2,522,766) | (2,113,609) | (14,604,409) | (32,991,072) | (47,555,481) | (124,245,924) | (171,801,405) |
| Benefits Paid | (802,236) | (23,717) | (1,593,893) | (2,419,536) | (1,889,243) | (516,721) | (4,597,694) | (791,042) | (9,924,836) | (34,092,083) | (44,016,919) | (74,181,291) | (118,198,180) |
| Projected Benefit Obligation, December 31, 2007 | 40,632,223 | 2,472,926 | 78,977,295 | 122,982,444 | 14,763,103 | 11,650,276 | 93,286,271 | 18,837,565 | 261,519,659 | 483,004,587 | 744,524,246 | 1,523,771,698 | 2,268,295,944 |
| Projected Benefit Obligation, January 1, 2008 | 40,632,223 | 2,472,926 | 78,977,295 | 122,982,444 | 14,763,103 | 11,650,276 | 93,286,271 | 18,837,565 | 261,519,659 | 483,004,587 | 744,524,246 | 1,523,771,698 | 2,268,295,944 |
| Service Cost | 5,699,497 | 417,808 | 10,800,932 | 16,918,225 | 50,392 | 1,111,537 | 1,289,335 | 907,363 | 20,276,872 | 95,663 | 20,372,535 | 15,157,659 | 35,530,194 |
| Interest Cost | 2,698,512 | 192,230 | 5,311,872 | 8,202,614 | 852,350 | 764,290 | 5,465,176 | 1,345,949 | 16,625,381 | 31,632,007 | 48,257,388 | 96,141,371 | 144,338,759 |
| Plan Amendments | | | | | | | | | | | | | |
| Actuarial (Gain)/Loss | 472,051 | 447,951 | 935,835 | 1,855,843 | (1,136,169) | 45,342 | (10,316,820) | 1,860,050 | (7,882,801) | 2,187,970 | (5,694,831) | (46,819,684) | (52,514,515) |
| Benefits Paid | (1,123,684) | (49,756) | (2,725,045) | (3,297,495) | (1,513,462) | (688,189) | (4,361,058) | (956,489) | (10,816,059) | (33,270,982) | (44,087,686) | (75,724,026) | (119,821,710) |
| Projected Benefit Obligation, December 31, 2008 | 48,378,605 | 3,482,147 | 94,800,979 | 146,661,631 | 13,016,214 | 12,883,247 | 85,357,966 | 21,803,411 | 279,722,409 | 483,649,245 | 763,371,654 | 1,512,517,018 | 2,275,888,672 |
| Projected Benefit Obligation, January 1, 2009 | 48,378,605 | 3,482,147 | 94,800,979 | 146,661,631 | 13,016,214 | 12,883,247 | 85,357,966 | 21,803,411 | 279,722,409 | 483,649,245 | 763,371,654 | 1,512,517,018 | 2,275,888,672 |
| Service Cost | 4,878,655 | 467,274 | 9,548,079 | 14,894,008 | | 1,337,610 | 1,207,196 | 960,598 | 18,399,412 | 51,598 | 18,451,010 | 13,735,148 | 32,186,158 |
| Interest Cost | 3,436,315 | 265,284 | 6,825,530 | 10,577,129 | 720,827 | 1,005,830 | 5,844,949 | 1,471,512 | 19,620,247 | 31,301,965 | 50,922,212 | 103,712,784 | 154,634,996 |
| Plan Amendments | | | | | | | | | | | | | |
| Actuarial (Gain)/Loss | 7,596,955 | 683,464 | 19,348,683 | 27,629,142 | (1,202,331) | 3,301,257 | 12,399,357 | 3,018,743 | 45,146,168 | 37,517,090 | 82,663,258 | 223,863,214 | 306,526,472 |
| Benefits Paid | (1,577,949) | (60,470) | (2,823,186) | (4,461,605) | (1,273,538) | (2,685,556) | (4,844,642) | (2,659,603) | (18,924,944) | (34,088,920) | (46,613,433) | (81,743,522) | (128,356,955) |
| Projected Benefit Obligation, December 31, 2009 | 54,726,334 | 5,029,268 | 136,663,510 | 196,419,112 | 11,584,088 | 20,342,769 | 103,041,296 | 28,531,915 | 370,141,070 | 519,013,384 | 889,154,454 | 1,782,010,964 | 2,671,165,418 |
| Projected Benefit Obligation, January 1, 2010 | 54,726,334 | 5,029,268 | 136,663,510 | 196,419,112 | 11,584,088 | 20,342,769 | 103,041,296 | 28,531,915 | 370,141,070 | 519,013,384 | 889,154,454 | 1,782,010,964 | 2,671,165,418 |
| Service Cost | 6,472,534 | 467,734 | 12,115,790 | 19,056,058 | | 1,603,439 | 1,255,671 | 946,317 | 22,556,048 | 81,117 | 22,637,165 | 18,386,627 | 41,023,792 |
| Interest Cost | 3,647,740 | 334,983 | 8,762,928 | 12,745,651 | 932,558 | 1,289,726 | 5,753,705 | 1,657,965 | 22,323,575 | 29,449,305 | 51,772,880 | 103,646,397 | 155,623,277 |
| Plan Amendments | | | | | | | | | | | | | |
| Actuarial (Gain)/Loss | 18,078,864 | (740,308) | 34,940,773 | 52,277,329 | (237,631) | 3,782,186 | 4,348,847 | 2,581,657 | 60,612,388 | 182,567 | 60,794,955 | 118,107,369 | 228,902,324 |
| Benefits Paid | (1,799,015) | (65,055) | (3,980,922) | (5,844,987) | (889,014) | (731,147) | (4,108,288) | (939,786) | (12,533,220) | (28,945,959) | (41,479,179) | (78,466,030) | (119,945,209) |
| Projected Benefit Obligation, December 31, 2010 | 91,785,512 | 4,773,729 | 188,704,078 | 285,263,720 | 8,972,657 | 26,097,023 | 110,291,193 | 32,777,068 | 463,401,661 | 519,780,414 | 983,182,275 | 2,003,691,347 | 2,987,073,622 |

*Sandow related to 524 EFH amendment





Exhibit 4

# Initial Allocation of Asset Value as of January 1, 2005

## EFH Retirement Plan

| Business Segment | Total Benefit Obligation | Fair Value of Assets |
|---|---|---|
| Mining | $          71,590,951 | $          55,553,391 |
| Sandow | 5,307,974 | 4,118,900 |
| Other Genco | 157,667,263 | 122,347,182 |
| Total Genco | $         234,566,189 | $         182,019,473 |
| EFH Corp. | 17,896,528 | 13,887,409 |
| Retail | 32,098,640 | 24,908,013 |
| Business Services | 98,605,699 | 76,516,387 |
| Portfolio Management | 24,743,162 | 19,200,284 |
| Subtotal Non-regulated | $         407,910,218 | $         316,531,566 |
| Discontinued Operations | 506,082,187 | 392,711,385 |
| Total Non-regulated | $         913,992,405 | $         709,242,951 |
| Oncor | 1,625,957,146 | 1,261,715,781 |
| Total Plan | $       2,539,949,551 | $       1,970,958,732 |

Note: Fair value of assets was allocated in proportion to total benefit obligation calculated as of
      January 1, 2005.

Exhibit 5

# Progression of Asset Value by Business Segment

## EFH Retirement Plan

| | Mining | Sandow | Other Genco | Total Genco | EFH Corp. | Retail | Business Services | Portfolio Management | Subtotal Non-regulated | Discontinued Operations | Total Non-regulated | Oncor | Total Plan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fair Value of Plan Assets, January 1, 2005 | $ 55,553,391 | $ 4,118,900 | $ 122,347,182 | $ 182,019,473 | $ 13,887,409 | $ 24,908,013 | $ 76,516,387 | $ 19,200,284 | $ 316,531,566 | $ 392,711,385 | $ 709,242,951 | $ 1,261,715,781 | $ 1,970,958,722 |
| Employer Contributions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Benefits Paid | (382,936) | (7,075) | (730,144) | (1,120,155) | (3,332,489) | (365,634) | (4,126,613) | (363,602) | (9,320,693) | (47,508,970) | (56,827,663) | (67,523,516) | (124,351,179) |
| Actual Return/(Loss) on Plan Assets | 3,502,141 | 260,334 | 7,716,468 | 11,478,943 | 773,099 | 1,564,084 | 4,709,449 | 1,203,089 | 19,728,664 | 23,339,914 | 43,068,578 | 77,679,164 | 120,747,742 |
| Fair Value of Plan Assets, December 31, 2005 | $ 58,672,596 | $ 4,372,159 | $ 129,333,506 | $ 192,378,261 | $ 11,328,019 | $ 26,106,263 | $ 77,087,223 | $ 20,039,771 | $ 326,939,537 | $ 368,544,329 | $ 695,483,866 | $ 1,271,871,429 | $ 1,967,355,295 |
| Fair Value of Plan Assets, January 1, 2006 | $ 58,672,596 | $ 4,372,159 | $ 129,333,506 | $ 192,378,261 | $ 11,328,019 | $ 26,106,263 | $ 77,087,223 | $ 20,039,771 | $ 326,939,537 | $ 368,544,329 | $ 695,483,866 | $ 1,271,871,429 | $ 1,967,355,295 |
| Employer Contributions | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Benefits Paid | (470,122) | (21,099) | (2,076,315) | (2,567,536) | (1,616,933) | (400,665) | (3,699,266) | (411,931) | (8,608,225) | (30,141,507) | (38,839,732) | (72,738,477) | (111,578,209) |
| Actual Return/(Loss) on Plan Assets | 7,196,493 | 537,136 | 15,769,378 | 23,532,986 | 1,285,343 | 3,390,283 | 9,265,394 | 2,442,593 | 39,726,518 | 43,529,731 | 83,256,249 | 136,628,278 | 219,884,527 |
| Fair Value of Plan Assets, December 31, 2006 | $ 65,398,967 | $ 4,888,196 | $ 143,026,567 | $ 213,343,720 | $ 11,004,423 | $ 28,895,993 | $ 82,653,351 | $ 22,070,343 | $ 357,967,830 | $ 381,932,553 | $ 739,900,383 | $ 1,335,761,230 | $ 2,075,661,613 |
| Fair Value of Plan Assets, January 1, 2007 | $ 65,398,967 | $ 4,888,196 | $ 143,026,567 | $ 213,343,720 | $ 11,004,423 | $ 28,895,993 | $ 82,653,351 | $ 22,070,343 | $ 357,967,830 | $ 381,932,553 | $ 739,900,383 | $ 1,335,761,230 | $ 2,075,661,613 |
| Employer Contributions | - | - | - | - | - | - | - | - | - | - | - | - | 1,337,915 |
| Benefits Paid | (802,328) | (23,717) | (1,593,893) | (2,419,936) | (1,669,243) | (516,721) | (4,507,884) | (191,042) | (9,824,836) | (24,092,083) | (44,016,919) | (74,161,261) | (118,178,180) |
| Actual Return/(Loss) on Plan Assets | 4,348,689 | 326,241 | 9,517,061 | 14,192,041 | 679,743 | 1,916,085 | 5,373,134 | 1,459,187 | 23,617,886 | 24,412,786 | 48,030,666 | 86,910,785 | 134,981,451 |
| Fair Value of Plan Assets, December 31, 2007 | $ 68,945,329 | $ 5,190,720 | $ 150,980,578 | $ 225,116,625 | $ 9,994,923 | $ 30,295,277 | $ 83,524,591 | $ 22,729,458 | $ 371,660,874 | $ 372,253,256 | $ 743,914,130 | $ 1,349,848,679 | $ 2,093,762,809 |
| Fair Value of Plan Assets, January 1, 2008 | $ 68,945,329 | $ 5,190,720 | $ 150,980,578 | $ 225,116,625 | $ 9,994,923 | $ 30,295,277 | $ 83,524,591 | $ 22,729,458 | $ 371,660,874 | $ 372,253,256 | $ 743,914,130 | $ 1,349,848,679 | $ 2,093,762,809 |
| Employer Contributions | - | - | - | - | - | 4,800,000 | 9,800,000 | - | 14,600,000 | 99,834,879 | 114,434,879 | 45,640,473 | 160,075,362 |
| Benefits Paid | (1,123,684) | (48,766) | (2,123,046) | (3,297,496) | (1,513,462) | (688,198) | (4,361,058) | (956,489) | (10,816,702) | (33,270,982) | (44,087,684) | (75,734,026) | (119,821,710) |
| Actual Return/(Loss) on Plan Assets | (13,475,038) | (1,018,032) | (29,541,510) | (44,034,580) | (2,099,894) | (5,901,811) | (16,597,533) | (4,384,625) | (73,017,345) | (77,369,887) | (150,667,432) | (262,045,721) | (412,653,153) |
| Fair Value of Plan Assets, December 31, 2008 | $ 54,346,607 | $ 4,123,922 | $ 119,314,021 | $ 177,784,550 | $ 11,182,567 | $ 23,705,168 | $ 72,365,998 | $ 17,388,344 | $ 302,426,627 | $ 361,227,266 | $ 663,653,893 | $ 1,057,709,405 | $ 1,721,363,298 |
| Fair Value of Plan Assets, January 1, 2009 | $ 54,346,607 | $ 4,123,922 | $ 119,314,021 | $ 177,784,550 | $ 11,182,567 | $ 23,705,168 | $ 72,365,998 | $ 17,388,344 | $ 302,426,627 | $ 361,227,266 | $ 663,653,893 | $ 1,057,709,405 | $ 1,721,363,298 |
| Employer Contributions | 1,323,622 | 259,036 | 10,109,883 | 11,692,541 | - | 3,454,816 | 4,988,725 | 2,819,332 | 22,955,414 | 18,062,377 | 41,017,781 | 63,455,312 | 104,473,003 |
| Benefits Paid | (1,577,049) | (60,470) | (2,823,166) | (4,460,685) | (1,272,245) | (870,201) | (4,844,642) | (1,106,740) | (12,554,513) | (34,088,920) | (46,643,433) | (81,743,522) | (128,386,955) |
| Actual Return/(Loss) on Plan Assets | 9,201,683 | 703,339 | 20,256,968 | 30,162,102 | 1,811,992 | 3,988,048 | 12,017,077 | 2,902,430 | 50,881,649 | 61,908,482 | 112,790,131 | 179,066,928 | 291,857,059 |
| Fair Value of Plan Assets, December 31, 2009 | $ 63,204,940 | $ 5,025,817 | $ 146,857,416 | $ 215,088,173 | $ 12,071,203 | $ 30,467,631 | $ 83,627,168 | $ 22,455,002 | $ 363,709,177 | $ 407,109,205 | $ 770,818,382 | $ 1,218,488,073 | $ 1,989,306,455 |
| Fair Value of Plan Assets, January 1, 2010 | $ 63,204,940 | $ 5,025,817 | $ 146,857,416 | $ 215,088,173 | $ 12,071,203 | $ 30,467,631 | $ 83,627,168 | $ 22,455,002 | $ 363,709,177 | $ 407,109,205 | $ 770,818,382 | $ 1,218,488,073 | $ 1,989,306,455 |
| Employer Contributions | - | - | - | - | - | - | - | - | - | - | - | 40,500,000 | 40,500,000 |
| Benefits Paid | (1,799,010) | (65,055) | (3,880,922) | (5,844,987) | (889,014) | (731,147) | (4,108,286) | (959,766) | (12,533,220) | (28,541,559) | (41,074,779) | (78,466,030) | (119,945,290) |
| Actual Return/(Loss) on Plan Assets | 8,319,719 | 666,760 | 19,344,288 | 28,330,727 | 1,552,522 | 4,019,664 | 10,892,544 | 2,934,363 | 47,729,735 | 52,429,189 | 100,158,924 | 159,961,040 | 260,119,964 |
| Fair Value of Plan Assets, December 31, 2010 | $ 69,725,649 | $ 5,627,523 | $ 162,220,782 | $ 237,573,923 | $ 12,734,716 | $ 33,756,048 | $ 90,411,426 | $ 24,429,579 | $ 398,905,692 | $ 430,592,435 | $ 829,498,127 | $ 1,340,463,083 | $ 2,169,961,210 |



**EXHIBIT II-B**

**EXPENSES**


[No expenses listed]

# EXHIBIT III-A

## LIFE INSURANCE SPLIT PARTICIPANT LIST

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

Exhibit III - A - Current Life Split Participants

| ID Number | Name |
| --- | --- |
| 74 | |
| 57 | |
| 17 | |
| 65 | |
| 94 | |
| 74 | |
| 88 | |
| 39 | |
| 55 | |
| 56 | |
| 73 | |
| 20 | |
| 44 | |
| 85 | |
| 41 | |
| 17 | |
| 86 | |
| 81 | |
| 84 | |
| 97 | |
| 28 | |
| 31 | |
| 85 | |
| 48 | |
| 85 | |
| 1 | |
| 87 | |
| 53 | |
| 20 | |
| 45 | |
| 5 | |
| 91 | |
| 52 | |
| 60 | |
| 74 | |
| 58 | |
| 80 | |
| 74 | |
| 29 | |
| 80 | |
| 62 | |
| 56 | |
| 30 | |
| 32 | |
| 84 | |
| 4 | |
| 66 | |
| 25 | |
| 29 | |
| 87 | |
| 11 | |

Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

*11*
*46*
*8*
*46*
*2*
*98*
*47*
*46*
*85*
*78*
*69*
*18*
*2*
*74*
*19*
*62*
*2*
*63*
*4*
*31*
*86*
*57*
*6*
9
*79*
*72*
*69*
*64*
*16*
*79*
*46*
*72*
*53*
*47*
*79*
*52*
*98*
*16*
*3*
*70*
*64*
*31*
*48*
*84*
*58*
*59*
81
53
74
65
53
22
50
91
34

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

96 [redacted]
81
14
27
78
76
78
4
82
88
68
68
7
87
17
78
55
50
7
49
17
37
78
19
69
9
14
81
89
82
62
84
51
89
25
51
39
95
82
95
81
58
5
77
2
50
78
36
58
83
43
89
57
8
96



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

87
61
55
46
2
33
0
81
15
30
86
87
6
72
18
60
72
68
49
75
89
77
57
48
11
70
94
77
9
25
46
16
55
67
7
65
61
75
2
21
48
60
27
98
31
68
63
16
81
90
15
42
12
16
48

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

69
70
43
27
76
35
6
81
44
96
63
3
33
90
23
30
13
22
82
45
21
92
77
41
26
56
32
79
88
99
8
99
51
78
87
64
41
5
74
89
30
96
56
94
15
95
2
47
4
65
61
97
27
38
14

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 90 | [redacted] |
| 46 | |
| 12 | |
| 37 | |
| 90 | |
| 13 | |
| 5 | |
| 89 | |
| 54 | |
| 75 | |
| 91 | |
| 36 | |
| 31 | |
| 71 | |
| 68 | |
| 52 | |
| 66 | |
| 7 | |
| 36 | |
| 80 | |
| 4 | |
| 36 | |
| 38 | |
| 27 | |
| 1 | |
| 41 | |
| 87 | |
| 74 | |
| 58 | |
| 42 | |
| 57 | |
| 91 | |
| 14 | |
| 99 | |
| 63 | |
| 88 | |
| 54 | |
| 65 | |
| 52 | |
| 62 | |
| 67 | |
| 5 | |
| 12 | |
| 35 | |
| 94 | |
| 49 | |
| 76 | |
| 28 | |
| 1 | |
| 99 | |
| 26 | |
| 69 | |
| 73 | |
| 52 | |
| 65 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

18
38
45
97
27
6
74
78
7
41
31
56
15
76
89
69
31
51
72
98
84
76
76
3
83
97
51
74
99
25
40
16
28
65
17
67
4
54
89
83
12
49
26
88
66
8
18
31
30
35
28
85
54
78
31

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 23 | [redacted] |
| 87 | [redacted] |
| 41 | [redacted] |
| 55 | [redacted] |
| 0 | [redacted] |
| 54 | [redacted] |
| 42 | [redacted] |
| 57 | [redacted] |
| 60 | [redacted] |
| 47 | [redacted] |
| 28 | [redacted] |
| 93 | [redacted] |
| 28 | [redacted] |
| 29 | [redacted] |
| 69 | [redacted] |
| 84 | [redacted] |
| 60 | [redacted] |
| 65 | [redacted] |
| 71 | [redacted] |
| 58 | [redacted] |
| 28 | [redacted] |
| 50 | [redacted] |
| 40 | [redacted] |
| 21 | [redacted] |
| 2 | [redacted] |
| 11 | [redacted] |
| 67 | [redacted] |
| 36 | [redacted] |
| 54 | [redacted] |
| 93 | [redacted] |
| 83 | [redacted] |
| 18 | [redacted] |
| 58 | [redacted] |
| 77 | [redacted] |
| 61 | [redacted] |
| 1 | [redacted] |
| 98 | [redacted] |
| 91 | [redacted] |
| 17 | [redacted] |
| 61 | [redacted] |
| 85 | [redacted] |
| 58 | [redacted] |
| 87 | [redacted] |
| 85 | [redacted] |
| 23 | [redacted] |
| 34 | [redacted] |
| 65 | [redacted] |
| 77 | [redacted] |
| 39 | [redacted] |
| 73 | [redacted] |
| 70 | [redacted] |
| 83 | [redacted] |
| 5 | [redacted] |
| 93 | [redacted] |
| 95 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

62
40
29
67
2
83
51
83
16
52
85
72
15
83
81
17
43
44
15
10
43
50
4
44
1
0
45
41
6
41
71
73
2
46
9
67
0
73
63
37
24
98
51
78
84
68
41
24
22
77
52
12
88
92
78

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

95
22
94
60
37
94
19
89
75
77
48
56
45
47
11
18
83
98
18
76
93
11
29
89
77
44
43
55
98
94
21
65
0
55
41
74
55
98
93
12
24
85
94
61
71
67
99
3
96
90
26
61
55
84
82

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

99
24
31
72
17
56
56
76
96
97
80
20
17
9
35
59
81
16
51
52
75
15
57
47
34
86
69
41
90
65
44
17
25
3
81
91
55
87
57
19
83
52
77
34
32
38
38
17
88
64
71
62
94
71
67

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

71
28
40
97
59
55
47
78
76
56
13
0
36
81
76
76
61
51
77
47
29
10
32
17
36
30
62
36
81
1
33
80
60
91
20
87
13
8
80
44
85
35
30
29
16
99
44
99
0
12
77
69
39
45
2

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

43
28
50
85
7
10
68
7
56
0
3
66
15
58
52
63
96
60
68
71
15
33
69
24
29
38
38
82
10
31
90
16
59
86
17
14
24
85
8
67
44
40
14
87
19
92
56
78
16
20
61
16
19
54
31

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 66 | [redacted] |
| 81 | [redacted] |
| 44 | [redacted] |
| 36 | [redacted] |
| 15 | [redacted] |
| 88 | [redacted] |
| 7 | [redacted] |
| 16 | [redacted] |
| 91 | [redacted] |
| 45 | [redacted] |
| 31 | [redacted] |
| 24 | [redacted] |
| 98 | [redacted] |
| 25 | [redacted] |
| 51 | [redacted] |
| 45 | [redacted] |
| 85 | [redacted] |
| 76 | [redacted] |
| 46 | [redacted] |
| 82 | [redacted] |
| 35 | [redacted] |
| 89 | [redacted] |
| 82 | [redacted] |
| 79 | [redacted] |
| 74 | [redacted] |
| 21 | [redacted] |
| 88 | [redacted] |
| 2 | [redacted] |
| 89 | [redacted] |
| 57 | [redacted] |
| 38 | [redacted] |
| 18 | [redacted] |
| 61 | [redacted] |
| 26 | [redacted] |
| 61 | [redacted] |
| 85 | [redacted] |
| 51 | [redacted] |
| 4 | [redacted] |
| 58 | [redacted] |
| 94 | [redacted] |
| 35 | [redacted] |
| 65 | [redacted] |
| 12 | [redacted] |
| 98 | [redacted] |
| 43 | [redacted] |
| 14 | [redacted] |
| 40 | [redacted] |
| 53 | [redacted] |
| 66 | [redacted] |
| 63 | [redacted] |
| 6 | [redacted] |
| 60 | [redacted] |
| 23 | [redacted] |
| 22 | [redacted] |
| 18 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

67
43
27
30
6
38
79
27
67
24
25
73
12
30
78
86
29
5
71
93
10
88
4
55
91
87
22
44
96
80
51
52
3
87
5
94
29
41
32
80
1
96
75
95
18
19
32
75
34
90
47
20
40
1
9

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

62
64
92
8
79
91
17
82
82
11
88
19
10
13
94
31
96
43
60
57
79
97
14
94
56
24
80
91
15
28
46
49
52
4
80
58
98
43
72
31
17
99
93
35
86
92
45
61
0
21
28
8
75
83
72

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

18
37
2
67
89
13
95
51
87
68
70
94
10
46
56
84
11
48
65
0
10
47
35
57
58
72
75
98
3
68
81
43
59
98
66
75
32
67
54
95
20
4
33
1
23
63
28
50
58
26
28
93
10
25
85



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 23 | [redacted] |
| 99 | |
| 81 | |
| 41 | |
| 85 | |
| 61 | |
| 50 | |
| 54 | |
| 98 | |
| 98 | |
| 23 | |
| 89 | |
| 61 | |
| 34 | |
| 97 | |
| 25 | |
| 42 | |
| 27 | |
| 33 | |
| 85 | |
| 58 | |
| 70 | |
| 29 | |
| 83 | |
| 0 | |
| 37 | |
| 59 | |
| 68 | |
| 56 | |
| 39 | |
| 55 | |
| 6 | |
| 90 | |
| 8 | |
| 16 | |
| 63 | |
| 37 | |
| 71 | |
| 22 | |
| 39 | |
| 57 | |
| 35 | |
| 4 | |
| 6 | |
| 64 | |
| 79 | |
| 3 | |
| 68 | |
| 77 | |
| 30 | |
| 31 | |
| 23 | |
| 10 | |
| 77 | |
| 39 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

[redacted]

20
12
78
31
50
70
66
89
82
49
82
96
81
61
59
49
46
56
68
94
57
84
67
40
34
7
44
26
90
6
29
79
18
49
81
74
51
37
2
73
87
46
57
76
70
12
56
47
7
57
73
98
15
87
41



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

[redacted]

13
2
97
89
14
3
17
95
9
73
72
85
6
83
30
69
19
40
72
62
29
70
37
82
10
41
86
77
6
66
49
97
57
55
81
21
80
2
45
74
72
85
42
61
68
33
85
6
91
25
18
49
97
1
28



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 33 | [redacted] |
| 44 | |
| 4 | |
| 58 | |
| 89 | |
| 47 | |
| 85 | |
| 82 | |
| 13 | |
| 81 | |
| 13 | |
| 59 | |
| 2 | |
| 10 | |
| 60 | |
| 91 | |
| 31 | |
| 69 | |
| 17 | |
| 39 | |
| 92 | |
| 23 | |
| 97 | |
| 25 | |
| 19 | |
| 24 | |
| 12 | |
| 12 | |
| 11 | |
| 5 | |
| 56 | |
| 73 | |
| 49 | |
| 56 | |
| 91 | |
| 9 | |
| 43 | |
| 29 | |
| 86 | |
| 28 | |
| 93 | |
| 94 | |
| 24 | |
| 34 | |
| 39 | |
| 62 | |
| 24 | |
| 61 | |
| 99 | |
| 37 | |
| 9 | |
| 27 | |
| 49 | |
| 60 | |
| 16 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 87 | [redacted] |
| 38 | [redacted] |
| 2 | [redacted] |
| 65 | [redacted] |
| 20 | [redacted] |
| 49 | [redacted] |
| 74 | [redacted] |
| 34 | [redacted] |
| 47 | [redacted] |
| 68 | [redacted] |
| 1 | [redacted] |
| 80 | [redacted] |
| 99 | [redacted] |
| 21 | [redacted] |
| 92 | [redacted] |
| 47 | [redacted] |
| 74 | [redacted] |
| 32 | [redacted] |
| 20 | [redacted] |
| 88 | [redacted] |
| 47 | [redacted] |
| 22 | [redacted] |
| 31 | [redacted] |
| 77 | [redacted] |
| 30 | [redacted] |
| 9 | [redacted] |
| 37 | [redacted] |
| 49 | [redacted] |
| 88 | [redacted] |
| 67 | [redacted] |
| 44 | [redacted] |
| 11 | [redacted] |
| 97 | [redacted] |
| 28 | [redacted] |
| 17 | [redacted] |
| 61 | [redacted] |
| 57 | [redacted] |
| 64 | [redacted] |
| 65 | [redacted] |
| 10 | [redacted] |
| 89 | [redacted] |
| 74 | [redacted] |
| 38 | [redacted] |
| 72 | [redacted] |
| 80 | [redacted] |
| 78 | [redacted] |
| 35 | [redacted] |
| 92 | [redacted] |
| 61 | [redacted] |
| 87 | [redacted] |
| 58 | [redacted] |
| 57 | [redacted] |
| 35 | [redacted] |
| 79 | [redacted] |
| 91 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

68
68
15
87
3
73
91
20
2
86
0
43
21
35
9
91
75
86
73
1
39
18
22
59
32
18
93
37
15
1
85
51
87
7
95
24
83
51
69
78
8
62
6
13
73
84
85
5
35
9
75
83
87
30
3

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

51 [redacted]
23 [redacted]
72 [redacted]
98 [redacted]
77 [redacted]
72 [redacted]
78 [redacted]
71 [redacted]
39 [redacted]
97 [redacted]
56 [redacted]
27 [redacted]
48 [redacted]
46 [redacted]
86 [redacted]
21 [redacted]
20 [redacted]
87 [redacted]
44 [redacted]
4 [redacted]
74 [redacted]
36 [redacted]
30 [redacted]
78 [redacted]
63 [redacted]
93 [redacted]
80 [redacted]
97 [redacted]
52 [redacted]
36 [redacted]
0 [redacted]
47 [redacted]
4 [redacted]
76 [redacted]
76 [redacted]
22 [redacted]
97 [redacted]
71 [redacted]
4 [redacted]
4 [redacted]
86 [redacted]
24 [redacted]
2 [redacted]
23 [redacted]
19 [redacted]
63 [redacted]
51 [redacted]
62 [redacted]
52 [redacted]
12 [redacted]
77 [redacted]
50 [redacted]
73 [redacted]
67 [redacted]
11 [redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

38
89
85
72
20
1
33
50
11
20
33
74
4
88
83
86
75
40
6
58
89
39
98
93
93
37
23
3
71
27
19
32
74
38
99
30
2
6
83
94
85
64
43
29
0
27
71
11
33
4
57
70
7
83
75

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

22
56
47
90
28
79
21
72
91
11
23
76
38
81
7
56
79
9
84
65
86
51
31
39
47
52
65
11
55
86
14
99
65
30
81
95
6
55
99
16
60
79
29
4
65
11
16
87
42
65
96
61
99
62
99

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

44
91
0
54
39
57
32
20
90
71
83
12
24
80
8
70
29
84
88
56
20
99
8
3
96
45
38
35
24
97
11
0
46
74
97
46
92
85
36
33
2
52
99
66
13
95
14
67
47
79
41
8
90
37
50

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

77
25
16
58
55
47
81
51
92
27
86
41
71
65
44
47
0
55
96
5
48
78
78
15
8
73
27
8
48
13
56
42
96
36
82
20
65
37
36
57
78
43
50
82
41
42
42
66
42
87
98
99
63
97
91

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 55 | [redacted] |
| 89 | [redacted] |
| 28 | [redacted] |
| 71 | [redacted] |
| 0 | [redacted] |
| 48 | [redacted] |
| 79 | [redacted] |
| 74 | [redacted] |
| 82 | [redacted] |
| 25 | [redacted] |
| 57 | [redacted] |
| 56 | [redacted] |
| 17 | [redacted] |
| 83 | [redacted] |
| 48 | [redacted] |
| 76 | [redacted] |
| 88 | [redacted] |
| 92 | [redacted] |
| 43 | [redacted] |
| 79 | [redacted] |
| 24 | [redacted] |
| 22 | [redacted] |
| 15 | [redacted] |
| 78 | [redacted] |
| 83 | [redacted] |
| 19 | [redacted] |
| 59 | [redacted] |
| 7 | [redacted] |
| 4 | [redacted] |
| 93 | [redacted] |
| 2 | [redacted] |
| 52 | [redacted] |
| 11 | [redacted] |
| 43 | [redacted] |
| 56 | [redacted] |
| 50 | [redacted] |
| 11 | [redacted] |
| 29 | [redacted] |
| 86 | [redacted] |
| 64 | [redacted] |
| 23 | [redacted] |
| 69 | [redacted] |
| 14 | [redacted] |
| 60 | [redacted] |
| 33 | [redacted] |
| 10 | [redacted] |
| 43 | [redacted] |
| 93 | [redacted] |
| 78 | [redacted] |
| 35 | [redacted] |
| 65 | [redacted] |
| 14 | [redacted] |
| 53 | [redacted] |
| 93 | [redacted] |
| 93 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

34
4
73
79
90
0
17
19
80
55
83
1
59
1
24
41
68
95
11
39
81
78
88
91
82
24
98
23
50
70
17
20
43
17
67
25
50
65
30
74
92
94
13
2
48
0
60
63
78
88
45
78
85
20
48

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 2 | [redacted] |
| 82 | |
| 69 | |
| 70 | |
| 27 | |
| 45 | |
| 34 | |
| 11 | |
| 3 | |
| 86 | |
| 23 | |
| 85 | |
| 23 | |
| 19 | |
| 12 | |
| 76 | |
| 90 | |
| 40 | |
| 70 | |
| 71 | |
| 27 | |
| 46 | |
| 98 | |
| 11 | |
| 84 | |
| 45 | |
| 28 | |
| 12 | |
| 42 | |
| 86 | |
| 97 | |
| 81 | |
| 89 | |
| 96 | |
| 64 | |
| 74 | |
| 28 | |
| 52 | |
| 74 | |
| 93 | |
| 43 | |
| 6 | |
| 5 | |
| 94 | |
| 28 | |
| 7 | |
| 75 | |
| 79 | |
| 54 | |
| 90 | |
| 50 | |
| 85 | |
| 38 | |
| 76 | |
| 59 | |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

[redacted]

81
59
52
4
89
85
99
47
94
49
74
74
76
31
49
79
92
96
5
82
35
3
62
4
2
96
4
76
98
62
70
99
8
1
80
45
43
12
85
61
24
62
61
50
50
95
0
81
46
29
87
21
53
63
68



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

88
66
84
57
83
53
93
96
5
81
91
59
30
86
4
74
35
7
2
0
8
84
80
8
53
1
75
86
10
4
71
93
14
97
84
54
41
79
91
35
4
43
30
7
62
41
79
33
58
79
58
16
45
97
81

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

52
89
61
66
69
15
69
1
6
87
72
81
22
14
98
79
62
54
73
90
86
79
27
13
27
31
71
7
27
32
10
42
10
67
96
94
46
50
36
18
50
84
61
8
83
32
11
89
80
42
46
54
87
98
22

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

99
4
77
18
54
27
36
74
57
58
35
4
55
27
34
81
14
14
86
70
66
46
56
74
57
35
40
38
99
93
46
96
4
48
48
3
28
51
79
9
48
64
19
9
78
9
28
29
13
8
25
6
62
51
88

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 86 | [redacted] |
| 19 | [redacted] |
| 1 | [redacted] |
| 90 | [redacted] |
| 52 | [redacted] |
| 56 | [redacted] |
| 8 | [redacted] |
| 46 | [redacted] |
| 25 | [redacted] |
| 51 | [redacted] |
| 36 | [redacted] |
| 98 | [redacted] |
| 76 | [redacted] |
| 26 | [redacted] |
| 75 | [redacted] |
| 93 | [redacted] |
| 57 | [redacted] |
| 98 | [redacted] |
| 76 | [redacted] |
| 33 | [redacted] |
| 70 | [redacted] |
| 95 | [redacted] |
| 61 | [redacted] |
| 54 | [redacted] |
| 23 | [redacted] |
| 57 | [redacted] |
| 99 | [redacted] |
| 92 | [redacted] |
| 66 | [redacted] |
| 59 | [redacted] |
| 1 | [redacted] |
| 39 | [redacted] |
| 28 | [redacted] |
| 22 | [redacted] |
| 44 | [redacted] |
| 39 | [redacted] |
| 16 | [redacted] |
| 1 | [redacted] |
| 66 | [redacted] |
| 79 | [redacted] |
| 51 | [redacted] |
| 83 | [redacted] |
| 16 | [redacted] |
| 15 | [redacted] |
| 1 | [redacted] |
| 74 | [redacted] |
| 47 | [redacted] |
| 71 | [redacted] |
| 44 | [redacted] |
| 66 | [redacted] |
| 5 | [redacted] |
| 8 | [redacted] |
| 85 | [redacted] |
| 44 | [redacted] |
| 74 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 79 | [redacted] |
| 90 | [redacted] |
| 42 | [redacted] |
| 94 | [redacted] |
| 63 | [redacted] |
| 68 | [redacted] |
| 97 | [redacted] |
| 3 | [redacted] |
| 52 | [redacted] |
| 58 | [redacted] |
| 75 | [redacted] |
| 75 | [redacted] |
| 14 | [redacted] |
| 38 | [redacted] |
| 92 | [redacted] |
| 53 | [redacted] |
| 81 | [redacted] |
| 31 | [redacted] |
| 2 | [redacted] |
| 98 | [redacted] |
| 72 | [redacted] |
| 20 | [redacted] |
| 15 | [redacted] |
| 6 | [redacted] |
| 26 | [redacted] |
| 73 | [redacted] |
| 23 | [redacted] |
| 88 | [redacted] |
| 2 | [redacted] |
| 80 | [redacted] |
| 95 | [redacted] |
| 45 | [redacted] |
| 97 | [redacted] |
| 31 | [redacted] |
| 75 | [redacted] |
| 46 | [redacted] |
| 92 | [redacted] |
| 36 | [redacted] |
| 35 | [redacted] |
| 16 | [redacted] |
| 54 | [redacted] |
| 37 | [redacted] |
| 87 | [redacted] |
| 61 | [redacted] |
| 11 | [redacted] |
| 14 | [redacted] |
| 34 | [redacted] |
| 68 | [redacted] |
| 63 | [redacted] |
| 81 | [redacted] |
| 5 | [redacted] |
| 3 | [redacted] |
| 83 | [redacted] |
| 57 | [redacted] |
| 4 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

44
4
88
45
61
70
58
72
60
57
94
6
97
28
81
91
4
42
64
86
2
39
72
41
40
4
48
27
36
43
26
74
23
1
86
49
57
30
54
10
48
50
60
8
72
80
81
97
36
86
95
96
7
82
20



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

77
85
34
56
78
14
80
82
91
84
27
35
69
66
25
76
76
51
15
57
65
98
57
38
64
60
84
33
33
68
70
82
81
2
16
56
16
82
15
31
84
40
85
18
57
94
99
64
75
41
0
8
52
45
83

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

0
0
26
22
60
18
76
66
52
6
74
2
79
40
98
2
36
24
80
19
47
6
96
58
15
44
12
89
20
19
87
21
58
45
91
45
98
97
20
65
10
99
61
10
82
32
84
13
82
38
30
38
52
90
30

[redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

19 [redacted]
27 [redacted]
73 [redacted]
2 [redacted]
77 [redacted]
93 [redacted]
17 [redacted]
74 [redacted]
79 [redacted]
47 [redacted]
26 [redacted]
63 [redacted]
48 [redacted]
78 [redacted]
77 [redacted]
57 [redacted]
44 [redacted]
40 [redacted]
98 [redacted]
36 [redacted]
47 [redacted]
16 [redacted]
99 [redacted]
45 [redacted]
54 [redacted]
4 [redacted]
60 [redacted]
86 [redacted]
24 [redacted]
55 [redacted]
91 [redacted]
44 [redacted]
86 [redacted]
42 [redacted]
94 [redacted]
58 [redacted]
8 [redacted]
94 [redacted]
22 [redacted]
27 [redacted]
77 [redacted]
98 [redacted]
74 [redacted]
78 [redacted]
55 [redacted]
80 [redacted]
39 [redacted]
0 [redacted]
9 [redacted]
28 [redacted]
94 [redacted]
98 [redacted]
31 [redacted]
53 [redacted]
94 [redacted]



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 21 | [redacted] |
| 93 | [redacted] |
| 68 | [redacted] |
| 46 | [redacted] |
| 32 | [redacted] |
| 84 | [redacted] |
| 41 | [redacted] |
| 7 | [redacted] |
| 9 | [redacted] |
| 98 | [redacted] |
| 93 | [redacted] |
| 53 | [redacted] |
| 26 | [redacted] |
| 14 | [redacted] |
| 26 | [redacted] |
| 20 | [redacted] |
| 95 | [redacted] |
| 39 | [redacted] |
| 42 | [redacted] |
| 54 | [redacted] |
| 57 | [redacted] |
| 0 | [redacted] |
| 23 | [redacted] |
| 97 | [redacted] |
| 3 | [redacted] |
| 61 | [redacted] |
| 19 | [redacted] |
| 42 | [redacted] |
| 49 | [redacted] |
| 36 | [redacted] |
| 76 | [redacted] |
| 38 | [redacted] |
| 10 | [redacted] |
| 11 | [redacted] |
| 36 | [redacted] |
| 88 | [redacted] |
| 88 | [redacted] |
| 37 | [redacted] |
| 18 | [redacted] |
| 67 | [redacted] |
| 49 | [redacted] |
| 95 | [redacted] |
| 31 | [redacted] |
| 34 | [redacted] |
| 67 | [redacted] |
| 35 | [redacted] |
| 76 | [redacted] |
| 76 | [redacted] |
| 34 | [redacted] |
| 9 | [redacted] |
| 12 | [redacted] |
| 97 | [redacted] |
| 66 | [redacted] |
| 80 | [redacted] |
| 19 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

| | |
|---|---|
| 68 | [redacted] |
| 95 | [redacted] |
| 21 | [redacted] |
| 73 | [redacted] |
| 82 | [redacted] |
| 53 | [redacted] |
| 4 | [redacted] |
| 92 | [redacted] |
| 45 | [redacted] |
| 62 | [redacted] |
| 99 | [redacted] |
| 25 | [redacted] |
| 37 | [redacted] |
| 45 | [redacted] |
| 83 | [redacted] |
| 97 | [redacted] |
| 40 | [redacted] |
| 61 | [redacted] |
| 17 | [redacted] |
| 14 | [redacted] |
| 10 | [redacted] |
| 19 | [redacted] |
| 44 | [redacted] |
| 47 | [redacted] |
| 97 | [redacted] |
| 50 | [redacted] |
| 95 | [redacted] |
| 25 | [redacted] |
| 32 | [redacted] |
| 57 | [redacted] |
| 13 | [redacted] |
| 2 | [redacted] |
| 19 | [redacted] |
| 30 | [redacted] |
| 39 | [redacted] |
| 43 | [redacted] |
| 83 | [redacted] |
| 76 | [redacted] |
| 7 | [redacted] |
| 34 | [redacted] |
| 20 | [redacted] |
| 63 | [redacted] |
| 3 | [redacted] |
| 88 | [redacted] |
| 20 | [redacted] |
| 39 | [redacted] |
| 34 | [redacted] |
| 83 | [redacted] |
| 30 | [redacted] |
| 29 | [redacted] |
| 98 | [redacted] |
| 89 | [redacted] |
| 40 | [redacted] |
| 4 | [redacted] |
| 42 | [redacted] |



Names redacted to prevent release of potentially HIPAA protected information. The parties have agreed to the list of names.

6
51
37
33
72
21
91
99
12
16
29
54
56
29
52
60
73
2
52
71
75
46
0
62
11
40
4
96
53
76
67
77
95
3
97
19
48
66
40
73
91
*38*
*95*

[redacted]

