**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| *In re:* | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | Case No. 14-10979 (CSS) |
| | (Jointly Administered) |
| Debtors.[1] | **Re: Docket No. 9612, 10076** |
| | **Hearing Date: December 1, 2016 at 10:00 a.m.**<br>**Objections Due: November 15, 2016 by 2 p.m.** |

**OBJECTION OF SHIRLEY FENICLE, WILLIAM FAHY, JOHN H. JONES, AND
DAVID HEINZMANN TO CONFIRMATION OF THE
DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION
<u>AS IT RELATES TO THE EFH DEBTORS AND EFIH DEBTORS</u>**

*CONFIDENTIAL—FILED UNDER TEMPORARY SEAL*
SUBJECT TO ENERGY FUTURE HOLDINGS
PROTECTIVE ORDER

**[REDACTED]**

---

[1]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these chapter 11 cases, which are being jointly administered on an interim basis, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the debtors' proposed claims and noticing agent at http://www.efhcaseinfo.com.

# TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

Overview.........................................................................................................................1

Argument ........................................................................................................................2

I.   The Plan was proposed by a means forbidden by law because it would violate the due
     process rights of unmanifested asbestos claimants..................................................3

     A.  Under controlling Third Circuit law, due process requires that Unmanifested
         Asbestos Claimants must be represented in the bankruptcy process if their rights
         are affected........................................................................................................3

     B.  Unmanifested Asbestos Claimants cannot be identified, and cannot be given
         constitutionally adequate notice.......................................................................5

         1.   *Mullane and Covey*: Whether notice is adequate depends on the circumstances
              of the case. ................................................................................................6

         2.   Unmanifested Asbestos Claimants, like incompetent persons, cannot be given
              notice...........................................................................................................8

     C.  The discharge of Unmanifested Asbestos Claims in the circumstances of these
         cases would violate due process. ....................................................................11

         1.   *Connecticut v. Doehr*: factors to be considered in determining whether due
              process has been afforded. .........................................................................12

         2.   Application of the *Doehr* factors shows that the discharge of Unmanifested
              Asbestos Claims here would fall short of the demands of due process......14

         3.   Unmanifested Asbestos Claims cannot be discharged in the circumstances of
              these cases..................................................................................................19

     D.  Retrospective reinstatement of claims cannot remedy a violation of the due
         process rights of Unmanifested Asbestos Claimants........................................22

II.  The Plan cannot be confirmed because it was not proposed in good faith, as required by
     Bankruptcy Code Section 1129(a)(3) ....................................................................25

Conclusion ....................................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ACandS, Inc.*,
  311 B.R. 36 (Bankr. D. Del. 2004) ...................................................................25, 27, 28, 31

*In re Am. Capital Equip., LLC*,
  688 F.3d 145 (3d Cir. 2012)......................................................................................2, 26, 30

*In re Amatex Corp.*,
  755 F.2d 1034 (3d Cir. 1985)............................................................................................3

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................5, 9, 10, 25

*Avellino v. M. Frenville Co.*,
  744 F.2d 332 (3d Cir. 1984)........................................................................................4, 23, 24

*Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*,
  526 U.S. 434 (1999).......................................................................................................18

*Butner v. United States*,
  440 U.S. 48 (1979), *superseded in part by statute*, Bankruptcy Reform Act,
  Pub. L. No. 103-394; 108 Stat. 4106 .........................................................................18, 21, 27

*Castleman v. Liquidating Trustee*,
  No. 6:06-CV-1077 (LEK), 2007 WL 2492792 (N.D.N.Y. Aug. 28, 2007)......................20, 22

*In re Cent. Hanover Bank & Tr. Co.*,
  75 N.Y.S.2d 397 (N.Y. Surr. Ct. 1947) .................................................................................7

*In re Chateaugay Corp.*,
  2009 WL 367490 (Bankr. S.D.N.Y. Jan. 14, 2009)..............................................................20

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004)......................................................................................3, 11, 12

*Commodity Futures Trading Comm'n v. Weintraub*,
  471 U.S. 343 (1985)........................................................................................................27

*Connecticut v. Doehr*,
  501 U.S. 1, 9 (1991)........................................................................................12, 13, 14, 15

*In re Coram Healthcare Corp.*,
  271 B.R. 228 (Bankr. D. Del. 2001) ....................................................................................27

*Covey v. Town of Somers*,
351 U.S. 141 (1956).............................................................................7, 8, 11, 25

*In re Eagle-Picher Indus. Inc.*,
137 B.R. 679 (Bankr. S.D. Ohio 1992)...................................................................9

*In re EFH Corp.*,
522 B.R. 520 (Bankr. D. Del. 2015) ..............................................................17, 28

*Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*,
878 F. Supp. 473 (E.D.N.Y. and S.D.N.Y. 1995), *aff'd in part, vacated in
part, In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996) ............16

*In re Flintkote Co.*,
486 B.R. 99 (Bankr. D. Del. 2012) .........................................................................8

*Fuentes v. Shevin*,
407 U.S. 67 (1972)................................................................................................15

*In re Furley's Transp., Inc.*,
272 B.R. 161 (Bankr. D. Md. 2001), *aff'd*, 306 B.R. 514 (D. Md. 2002) ..............28

*In re G-I Holdings, Inc.*,
385 F.3d 313 (3d Cir. 2004)..................................................................................27

*In re Grossman's Inc.*,
607 F.3d 114 (3d Cir. 2010)........................................................................ *passim*

*JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*,
No. 07-51602 (Bankr. D. Del. June 28, 2011)......................................................24

*Mitchell v. W. T. Grant Co.*,
416 U.S. 600 (1974)..............................................................................................15

*Mullane v. Cent. Hanover Bank & Trust*,
339 U.S. 306 (1950)......................................................................................6, 7, 10

*In re Natural Land Corp.*,
825 F.2d 296 (11th Cir. 1987) ..............................................................................31

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
330 F.3d 548 (3d Cir. 2003)..................................................................................10

*Pepper v. Litton*,
308 U.S. 295 (1939)..............................................................................................32

*In re Phoenix Piccadilly, Ltd.*,
849 F.2d 1393 (11th Cir. 1988) ............................................................................31

*In re Placid Oil Co.*,
    753 F.3d 151 (5th Cir. 2014) ................................................................20

*In re Specialty Prods. Holding Corp.*,
    No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013)..........................20

*Stellwagen v. Clum*,
    245 U.S. 605 (1918).................................................................................19

*In re Tribune Co.*,
    464 B.R. 126 (Bankr. D. Del.), *on reconsideration*, 464 B.R. 208 (Bankr. D.
    Del. 2011) .............................................................................................2

*In re W.R. Grace & Co.*,
    475 B.R. 34 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d
    332 (3d Cir. 2013)..........................................................................26, 28

*In re Waterman S.S. Corp.*,
    141 B.R. 552 (Bankr. S.D.N.Y. 1992), *vacated on other grounds*, 157 B.R.
    220 (S.D.N.Y. 1993) ......................................................................9, 21

*Wolf v. Weinstein*,
    372 U.S. 633 (1963).................................................................................27

*In re WR Grace & Co.*,
    729 F.3d 332 (3d Cir. 2013)........................................................25, 26, 28

*Wright v Owens*,
    679 F.3d 101 (3d Cir. 2012)........................................................4, 5, 14

*Zerand-Bernal Grp., Inc. v. Cox*,
    23 F.3d 159 (7th Cir. 1994) .......................................................9, 19

## Statutes

11 U.S.C. § 524(g) ............................................................................ *passim*

11 U.S.C. § 1129(a)(3)...........................................................2, 25, 30

## Other Authorities

Georgene Vairo, *Mass Tort Bankruptcies: The Who, the Why and the How*, 78
    Am. Bankr. L. J. 93 (2004) ................................................................7

H.R. Rep. No. 103-835 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340 ..................10

Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is
    This Notice Really Necessary?* 78 Am. Bankr. L. J. 339 (2004) ....................11

Shirley Fenicle, individually and as successor-in-interest to the Estate of George Fenicle, David William Fahy, John H. Jones, and David Heinzmann ("**Objectors**") by their undersigned counsel, hereby submit this Objection ("**Objection**") to the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.*, et al., *Pursuant to Chapter 11 of the Bankruptcy Code*, dated September 21, 2016 (as may be further amended, the "**Plan**") (D.I. 9612), as it relates to the EFH Debtors and EFIH Debtors.[2]

## **OVERVIEW**

The Debtors' Plan is an flagrant abuse of the bankruptcy process. The Debtors vigorously opposed the appointment of a representative for future Unmanifested Asbestos Claimants,[3] and no estate fiduciary was appointed to protect their interests. Now, the Debtors seek to discharge the claims of those unidentifiable and unrepresented claimants, in order to benefit equity. Under the Plan, the Asbestos Debtors[4] would shed their liabilities for future asbestos-related claims—and EFH Corp. and other Debtor affiliates would shed their derivative liability for such claims—without notice or compensation, in order to benefit equity at the expense of the Debtors' asbestos victims. This result would violate the due process rights of the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Plan.

[3] "**Unmanifested Asbestos Claimants**" refers to persons who, after the bar date set in these cases, have suffered or will suffer cognizable injuries caused by pre-petition exposure to the Debtors' asbestos-containing products; "**Unmanifested Asbestos Claims**" refers to the claims of such claimants.

[4] "**Asbestos Debtors**" refers to EECI, Inc. (Case No. 14-10992), EEC Holdings, Inc. (Case No. 14-10990), LSGT Gas Co. LLC (Case No. 14-11039), and LSGT SACROC, Inc. (Case No. 14-11012).

claimants, is inconsistent with the objective and purposes of the Code, and epitomizes the bad faith that, under § 1129(a)(3), precludes confirmation.[5]

## ARGUMENT

Bankruptcy Code Section 1129(a)(3) provides that a "court shall confirm a plan only if, *inter alia,* it 'has been proposed in good faith and not by any means forbidden by law.'" *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012) (internal citation omitted). "The plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a)." *In re Tribune Co.*, 464 B.R. 126, 151-52 (Bankr. D. Del.), *on reconsideration*, 464 B.R. 208 (Bankr. D. Del. 2011) (quoting *In re Exide Tech.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003)). The Debtors cannot meet that burden in these cases.

The Plan cannot be confirmed as it was proposed by a means forbidden by law: it would violate the due process rights of Unmanifested Asbestos Claimants by discharging their claims without constitutionally adequate notice, without compensation, without representation, and without any other protections of their rights. *See* Part I, below. A claimant must be afforded due process before his or her claim is discharged in bankruptcy. At a minimum, due process requires that the claimant be provided meaningful notice and an opportunity to be heard. But, as this Court has already recognized, Unmanifested Asbestos Claimants by definition cannot be identified and cannot identify themselves. Thus, it is not possible to provide them notice, just as it is not possible to provide notice to an incompetent person.

---

[5] Relevant facts are set out in Objectors' motion to dismiss the Chapter 11 petitions of the Asbestos Debtors, which is incorporated herein by reference. *See* Memorandum of Law in Support of Motion of Shirley Fenicle, David William Fahy, John H. Jones, and David Heinzmann to Dismiss Chapter 11 Petitions of Asbestos Debtors EECI, Inc., EEC Holdings, Inc., LSGT SACROC, Inc., and LSGT Gas Co. LLC Pursuant to 11 U.S.C. § 1112(b) ("**Motion to Dismiss**"), Nov. 8, 2016 (filed under temporary seal) (redacted version filed at D.I. 10076).

Having successfully opposed the appointment of a representative for the Unmanifested Asbestos Claimants, the Debtors cannot now have the Unmanifested Asbestos Claims of those claimants discharged because, *inter alia*, there has been no fiduciary appointed to represent their interests, no provision made for compensation in the future, and no other safeguards of their rights adopted.  Nor is there any valid bankruptcy purpose for the discharge.

The Plan also cannot be confirmed because it was not proposed in good faith.  *See* Part II, below.  The Plan was not proposed to deal fairly with, and maximize the recovery of, the Debtors' asbestos victims.  Rather, it was designed to discharge the future claims of Unmanifested Asbestos Claimants without any compensation, so that equity could benefit.  This kind of self-dealing is a breach of the Debtors' fiduciary duties to their asbestos creditors, and an abuse of the bankruptcy process.

## I.    THE PLAN WAS PROPOSED BY A MEANS FORBIDDEN BY LAW BECAUSE IT WOULD VIOLATE THE DUE PROCESS RIGHTS OF UNMANIFESTED ASBESTOS CLAIMANTS.

### A.    Under controlling Third Circuit law, due process requires that Unmanifested Asbestos Claimants must be represented in the bankruptcy process if their rights are affected.

The Third Circuit has repeatedly instructed that due process requires that unmanifested asbestos claimants must be adequately represented in the bankruptcy process if their rights are affected: "In the resolution of future asbestos liability, under bankruptcy or otherwise, future claimants must be adequately represented throughout the process."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 (3d Cir. 2004)) (internal citations omitted); *see also In re Amatex Corp.*, 755 F.2d 1034, 1045 (3d Cir. 1985) (holding that future asbestos claimants (*i.e.*, those who had been exposed to the debtor's asbestos but not yet been diagnosed with asbestos-related illnesses) were entitled to representation during reorganization proceedings).  While the court has not

decided whether there are circumstances under which notice to a future claims representative appointed by the court will by itself be sufficient to afford due process to unknown future claimants, it has made clear that, at the least, the appointment of such a representative is necessary. *See Wright v Owens*, 679 F.3d 101 (3d Cir. 2012) (noting that future claimants' representatives have been appointed in bankruptcy proceedings "in part, to address the broader issue of whether discharging unknown future claims [*i.e.*, unmanifested claimants] comports with due process.")[6]

In these cases, the Debtors vigorously—and successfully—opposed the appointment of a future claimants' representative. *See* Objection of Energy Future Holdings Corp., *et al.*, to the Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative and Joinder of Shirley Fenicle, as Successor-in-Interest to the Estate of George Fenicle, and David William Fahy to the Motion of Charlotte and Curtis Liberda to Appoint Legal Representative, dated August 4, 2015 (D.I. 5209); Order Denying Motion of Charlotte Liberda and Curtis Liberda to Appoint Legal Representative, Aug. 11, 2015, D.I. 5265.   Thus, no estate fiduciary was appointed to represent their interests of these absent claimants.[7]   For that reason alone,

---

[6]    In *Wright*, the Third Circuit ruled that it would violate due process to discharge the claims of unmanifested claimants who had been exposed to the debtor's asbestos pre-petition because, at the time the plan was confirmed, it was understood that they did not have claims, pursuant to the court's recently-overruled *Frenville* decision.  *Wright*, 679 F.3d at 104 (citing *Avellino v. M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984)).   The court stated that it was not expressing any "opinion on the broader issue of whether discharging unknown future claims comports with due process."   *Wright*, 679 F.3d at 108, n.7.   "Because a future claims representative was not appointed in these bankruptcy cases," the court stated, "we leave open whether, when such a representative provides persons with unknown future claims an opportunity to participate in the bankruptcy case through that representation, they are afforded due process through otherwise adequate notice to the future claims representative."   *Id.*

[7]    The "E-Side" Unsecured Creditors' Committee was appointed to represent the interests of the unsecured creditors of Debtors EFH Corp., EFIH Corp., EFIH Finance, and EECI, Inc. *(footnote continued)*

Unmanifested Asbestos Claims cannot be discharged, *see Wright*, 679 F.3d at 108, n.7, and the Debtors' Plan cannot be confirmed.

    **B.    Unmanifested Asbestos Claimants cannot be identified, and cannot be given constitutionally adequate notice.**

Having ensured that Unmanifested Asbestos Claimants were denied their due process right to representation throughout these bankruptcy proceedings, the Debtors cannot now rely on the pretext that these unidentifiable, unselfconscious, and unrepresented claimants have been afforded due process through the Debtors' notice program.

The Fifth Amendment requires that a claimant be afforded due process before his or her claim is discharged in bankruptcy. The Third Circuit has instructed that "if a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so." *Wright*, 679 F.3d at 107 n.6.

---

*See* Notice of Appointment of Committee of Unsecured Creditors, Oct. 27, 2014, D.I. 2570; *see also* Second Amended Notice of Appointment of Committee of Unsecured Creditors, Jan. 30, 2015, D.I. 3403. No estate fiduciary was appointed to represent the interests of unsecured creditors of EEC Holdings, Inc., LSGT Gas Co. LLC, and LSGT SACROC, Inc., which are the main Asbestos Debtors, holding more than $900 million of the Asbestos Debtors' $990 million in admittedly valid intercompany receivables. Moreover, the E-Side Committee could not represent the interests of both current and future asbestos claimants, as their interests are in conflict. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) ("[F]or the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."). Indeed, the E-Side Committee itself recognized the conflict, noting "potential, if not actual, conflict of interests between the Unmanifested Asbestos Claimants and other persons and entities within the constituency represented by . . . " the E-Side Committee because the interests of those other persons and entities was "to maximize their own recovery, which may require minimizing the claims of Unmanifested Asbestos Claims. Notice of Emergency Motion of the EFH Official Committee for Entry of an Order (I) Adjourning the Hearing, Currently Scheduled for June 1, 2015, on the Debtors' Proposed Form of Order (A) Setting Bar Date for Filing Asbestos Proofs of Claim, (B) Approving the Form of and Manner for Filing Asbestos Proofs of Claim, and (C) Approving Notice Thereof ¶ 9 & n.4, May 21, 2015, D.I. 4553.

1.    **Mullane and Covey***: Whether notice is adequate depends on the circumstances of the case.*

In *Mullane v. Cent. Hanover Bank & Trust*, 339 U.S. 306, 314 (1950), the Supreme Court held that, at a minimum, the due process clause requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  At confirmation of the now-defunct previous plan, this Court relied on *Mullane* in holding that publication notice under the Debtors' bar date notice program satisfied the requirements of due process for the Unmanifested Asbestos Claimants. Hr'g Transcript, 58:2-6, Dec. 3, 2015 (attached as **Ex. 1**).  The situation in *Mullane*, however, was far different from that in these cases.

*Mullane* involved a proceeding for judicial settlement of the accounts of a common trust fund created by pooling a number of small trust funds for administrative purposes.  *Mullane*, 339 U.S. at 310.  As required by state law, the lower court appointed two special guardians, one to represent persons known or unknown who did not otherwise appear in the proceeding and who had any interest in the income of the fund, and another to represent similar persons with an interest in the principal of the fund.  *Id*.  Notification of the proposed settlement was given by publication in a local newspaper, as provided by state law.  *Id*. at 309.  The special guardian for the income beneficiaries challenged the constitutionality of the notice of the proposed settlement.

The Supreme Court held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Id*. at 314.  The means employed to provide notice, the Court emphasized, "must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  *Id*. at 315.  Thus, the Court held, while known present

beneficiaries with known addresses were entitled to personal notice by mail, under the circumstances of that case, publication notice was adequate for the unknown beneficiaries. *Id.* at 318. "[I]n view of the character of the proceedings and the nature of the interest" involved, the Court held, the trustee was not required to undertake extensive searches to locate unknown "conjectural or future" beneficiaries, as the expense of extended searches would outweigh the potential advantages. *Id.* at 317-18. Rather, the Court held, the unknown beneficiaries could be noticed by publication, which, the Court found, was "all that the situation permits." *Id.* at 317.

Significantly, unlike the claimants here, the unknown "conjectural or future" beneficiaries of the trusts in *Mullane* were identifiable, and could recognize themselves as the persons to whom an appropriate notice was directed.[8] Moreover, the state statute under which the *Mullane* action proceeded required the appointment of guardians to represent the interests of the unknown beneficiaries, whereas in the cases at bar, no future claimants' representative was appointed.

Six years after the *Mullane* decision, in *Covey v. Town of Somers*, the Supreme Court made clear that, where the person to whom the notice is addressed is incompetent and thus cannot be informed by the notice—that is, where notice is not possible—no form of purported notice can satisfy due process. 351 U.S. 141 (1956). In *Covey*, the Town of Somers foreclosed

---

[8]    The trust fund at issue in *Mullane* was comprised of 113 participating estates or trusts with 315 known beneficiaries. *See In re Cent. Hanover Bank & Tr. Co.*, 75 N.Y.S.2d 397, 408 (N.Y. Surr. Ct. 1947). The Court noted that the "unknown" interested parties could have been identified, albeit only by "extensive investigations . . . of the births, deaths and other occurrences which might increase, decrease or otherwise change the groups of interested persons." *Id. See* Georgene Vairo, *Mass Tort Bankruptcies: The Who, the Why and the How*, 78 Am. Bankr. L.J. 93, 134 (2004) ("[N]either *Mullane* nor any case following it involved claimants who were not only unknown to the party sending the notice but who were in essence unknown to themselves and who therefore would not recognize themselves as the intended targets of the notice even were the notice actually received.").

on property owned by Nora Brainard, in order to enforce tax liens.  Notice was given by mail, by posting at the post office, and by publication in two local papers.  Ms. Brainard was a long-time resident of the town, and town officials and citizens knew that she was "a person without mental capacity to handle her affairs or to understand the meaning of any notice served upon her."  *Id*. at 146.  Shortly after the foreclosure, Ms. Brainard was declared of unsound mind, and committed.  Appellant was appointed her fiduciary, and sought to overturn the foreclosure, asserting that Ms. Brainard's due process rights had been violated.

The Court agreed, rejecting the contention that the due process clause "does not require the State to take measures in giving notice to an incompetent beyond those deemed sufficient in the case of the ordinary taxpayer."  *Id*.  Quoting *Mullane*, the Court reiterated that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties" of the action, that "process which is a mere gesture is not due process," and that the means of providing notice must be what one would use if one were "desirous of actually informing the absentee."  *Id*.  "Notice to a person known to be an incompetent who is without the protection of a guardian," the Court held, "does not measure up to this requirement."  *Id*.  Because Ms. Brainard could not understand the notice and its implications, the Court held, it did not satisfy due process.  *Id*. at 147.

   **2.**  ***Unmanifested Asbestos Claimants, like incompetent persons, cannot be given notice.***

Like the incompetent in *Covey*, the Unmanifested Asbestos Claimants in these cases cannot be given notice:  they cannot identify themselves, and they cannot know that their interests will be affected.  As Bankruptcy Judge Fitzgerald (since retired) stated, "An exposed asbestos creditor who has not yet manifested an injury . . . is one who is impossible to identify, such that providing actual notice is, itself, impossible."  *In re Flintkote Co.*, 486 B.R. 99, 128

(Bankr. D. Del. 2012). The Bankruptcy Court for the Southern District of New York ruled to the same effect, finding that no Unmanifested Asbestos Claimant, "who, by definition, had yet to manifest any detectible injury prior to confirmation, could be deemed to have relinquished substantive rights when, even if that individual had read the 'notice,' those individuals would have remained completely unaware that their substantive rights were affected." *In re Waterman S.S. Corp.*, 141 B.R. 552, 559 (Bankr. S.D.N.Y. 1992), *vacated on other grounds*, 157 B.R. 220 (S.D.N.Y. 1993). Other courts are in accord. *See Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 163 (7th Cir. 1994) (notice to future claimants "might well be infeasible"); *In re Eagle-Picher Indus. Inc.*, 137 B.R. 679, 680 (Bankr. S.D. Ohio 1992) (noting that "[f]uture claimants, of course, would not be affected by a bar date, for they are as a class inherently unknown and unknowable.").

In *Amchem*, the Supreme Court itself recognized these practical "impediments" to providing "adequate notice" to unmanifested asbestos claimants. That case involved opt-out notice to a putative class of asbestos victims under Federal Rule of Civil Procedure 23. The Court noted:

> Many persons in the exposure-only category . . . may not even know of their exposure, or realize the extent of the harm they may incur. Even if they fully appreciate the significance of class notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to stay in or opt out.

> Family members of asbestos-exposed individuals may themselves fall prey to disease or may ultimately have ripe claims for loss of consortium. Yet large numbers of people in this category—future spouses and children of asbestos victims—could not be alerted to their class membership. And current spouses and children of the occupationally exposed may know nothing of that exposure.

*Amchem*, 521 U.S. at 628.

The Court did not reach the issue of whether the class notice in that case was constitutionally adequate, as it affirmed the Third Circuit's denial of class certification on the ground that Rule 23's requirements of common issue predominance and adequacy of representation were not satisfied. However, the Court emphasized that, "we recognize the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous." *Id.*[9]

In these cases, Unmanifested Asbestos Claimants have not fallen ill and cannot be identified, even by themselves. And "even if they fully appreciate the significance of [a] notice, those without current afflictions may not have the information or foresight needed to decide, intelligently, whether to [file a claim]." *Amchem,* 521 U.S. at 628. The purpose of notice is to afford interested persons the opportunity to be heard. *Mullane*, 339 U.S. at 314. Because Unmanifested Asbestos Claimants cannot be given notice, they cannot be given an opportunity to be heard. Indeed, Congress recognized that future asbestos claimants "do not have their own voice"[10] when it enacted Bankruptcy Code Section 524(g) to address the "unique problems and

---

[9]    That the Supreme Court's statements are dicta does not mean that they may be ignored. As the Third Circuit has instructed:

> [W]e should not idly ignore considered statements the Supreme Court makes in dicta. The Supreme Court uses dicta to help control and influence the many issues it cannot decide because of its limited docket. 'Appellate courts that dismiss these expressions [in dicta] and strike off on their own increase the disparity among tribunals (for other judges are likely to follow the Supreme Court's marching orders) and frustrate the evenhanded administration of justice by giving litigants an outcome other than the one the Supreme Court would be likely to reach were the case heard there.'

*Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 561 (3d Cir. 2003) (citation omitted).

[10]    H.R. Rep. No. 103-835, at 40 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3340, 3349.

complexities associated with asbestos liability," and afford due process to future asbestos claimants. *Combustion Eng'g*, 391 F.3d at 234. Given the "unselfconscious and amorphous" nature of Unmanifested Asbestos Claimants, notice necessarily is a "mere gesture," and is not "reasonably calculated" to reach them, just as notice cannot be reach an incompetent person. *Covey*, 351 U.S. at 146. As one commentator has noted, "notice by publication is an exercise in futility as applied to creditors who are not only unknown to the debtor, but are also unknown to themselves. . . . [W]hen an individual cannot recognize that he or she has a claim in a bankruptcy case and, therefore, cannot make a decision about how to assert that claim, that person is functionally or constructively 'incompetent' for purposes of the bankruptcy case." Laura B. Bartell, *Due Process for the Unknown Future Claim in Bankruptcy—Is This Notice Really Necessary?* 78 Am. Bankr. L.J. 339, 354, 366 (2004).

The notice here does not satisfy due process.

## C. The discharge of Unmanifested Asbestos Claims in the circumstances of these cases would violate due process.

The Objectors do not contend that it is never possible to discharge future, unmanifested asbestos claims in a manner that comports with due process. Indeed, Congress provided a means of doing so in asbestos cases when it enacted Bankruptcy Code Section 524(g) to address the "unique problems and complexities associated with asbestos liability," while supporting the "equitable resolution of asbestos-related claims" and making it "possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process." *Combustion Eng'g*, 391 F.3d at 234. Under that statute, a debtor against whom asbestos-related claims have been asserted in the past may propose and have confirmed a plan under which all current and future asbestos claims will be channeled to a trust, which will step into the debtor's shoes and assume responsibility for the resolution and payment of such

11

claims.  In exchange for funding the trust, the debtor will be released from liability for the asbestos claims.  In order to obtain that release from liability, however, the debtor's plan must provide safeguards for the rights of future, unmanifested asbestos claimants.  As set out by the Third Circuit in *Combustion Engineering*, "[t]he several prerequisites set forth in § 524(g) are designed to protect the interests of future claimants whose claims are permanently enjoined.  Among these, the plan must be approved by a super-majority of current claimants, and must provide substantially similar treatment to present and future claimants.  Furthermore, the court must appoint a futures representative to act as fiduciary for the interests of future claimants." *Combustion Eng'g*, 391 F.3d at 237 (citing 11 U.S.C. §§ 524(g)(2)(B)(ii)(IV)(bb), 524(g)(4)(B)(1), 524(g)(2)(B)(i)(V)).

Here, the Debtors ensured that no representative was appointed to protect the interests of Unmanifested Asbestos Claimants, and chose not to propose a plan that would satisfy the requirements of section 524(g).  Having eschewed the path provided by Congress, the Debtors cannot, in the circumstances of these cases, have their Plan confirmed, insofar as it would purport to discharge the future claims of Unmanifested Asbestos Claimants.

        **1.**        **Connecticut v. Doehr***: factors to be considered in determining whether due process has been afforded.*

In *Connecticut v. Doehr*, the Supreme Court considered what process must be afforded where, as in these cases, a private party enlists the aid of the government to deprive another of his or her property without providing prior notice and an opportunity to be heard.  501 U.S. 1, 9 (1991).  In that case, a plaintiff in a civil suit for assault and battery petitioned to attach the home of the defendant, Brian Doehr.  The suit did not involve the real estate, and the plaintiff had no pre-existing interest in the home.  Under Connecticut law, the prejudgment remedy was available on verification by the plaintiff that there was "probable cause" to sustain the validity of the

plaintiff's claims.  No bond was required to insure the payment of damages if the attachment were proven wrongful.  When his property was attached, Mr. Doehr filed suit in federal court, asserting that the attachment violated the due process clause of the Fourteenth Amendment.  The district court upheld the state statute, and the Court of Appeals for the Second Circuit reversed.

The Supreme Court affirmed the decision of the Court of Appeals, and instructed that, in determining what process must be afforded when a private party enlists the aid of the government to deprive another of property by prejudgement attachment or similar procedure, the court must consider three factors:

> [F]irst, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, . . . principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections.

*Doehr*, 501 U.S. at 11.

Applying the factors in *Doehr*, the Court found, first, that the property interests affected by attachment are significant, noting that, among other things, attachment clouds title and impairs the ability to sell the property.  Even a temporary or partial impairment of property rights, the Court held, "are sufficient to merit due process protection."  *Id*. at 12.  Second, the Court found that the risk of erroneous deprivation was high, because at most the state statute required only that the plaintiff demonstrate probable cause to believe judgment would be rendered in favor of the plaintiff, which could be made out on the basis of conclusory, self-serving statements, with no response from the defendant.  *Id*. at 14.  That a prompt post-attachment hearing was available did not reduce the risk, as it would not cure the temporary deprivation that would already have occurred.  *Id*. at 15.  Finally, the interests of the plaintiff

were too minimal to justify pre-judgment attachment: his only interest was "to ensure the availability of assets to satisfy his judgment if he prevailed on the merits of his action," and the plaintiff had not even alleged that Mr. Doehr was going to take steps to encumber the real estate or make it unavailable to satisfy a judgment, or that there was any other exigent circumstance. *Id.* at 16. Moreover, there was no governmental interest at stake. *Id.* Thus, the Court held, the statute "clearly falls short of the demands of due process." *Id.* at 18.

> **2.** **Application of the Doehr *factors shows that the discharge of Unmanifested Asbestos Claims here would fall short of the demands of due process.***

An examination of the *Doehr* factors demonstrates that the discharge of Unmanifested Asbestos Claims under the Plan in these cases would also "clearly fall[] short of the demands of due process." *Id.*

> a.    *The private interests of the claimants are significant.*

The private interests affected by the discharge in these cases are significant. The discharge would be a complete deprivation of the Unmanifested Asbestos Claimants' rights to pursue otherwise valid and compensable claims in the tort system. The Debtors—and this Court—have acknowledged that "there may be unmanifested claimants for whom the bar date, as applied to their specific case may not comport with due process." Hr'g Transcript, 59:6-11, Dec. 3, 2015 (Ex. 1). As a constitutional matter, their claims cannot be discharged. "[I]f a claimant is not afforded due process, a plan of reorganization and confirmation order that purport to discharge claims will not do so." *Wright*, 679 F.3d at 107 n.6.

The Court has previously noted that a claimant whose due process rights have been violated by the discharge may file a motion with the Bankruptcy Court to permit a late-filed claim. Hr'g Transcript, 62:15-63:4, Dec. 3, 2015 (Ex. 1). But, as in *Doehr*, the availability of a

post-deprivation hearing in the Bankruptcy Court does not cure the deprivation of the property interest.[11]   If the Plan were confirmed, an Unmanifested Asbestos Claimant who is diagnosed after the Bar Date—such as Mr. Jones or Mr. Heinzmann—must either make a motion to the Bankruptcy Court to file a late claim or face a motion for contempt in Bankruptcy Court if he or she commences suit in state court without doing so.   Having to appear before the Bankruptcy Court, which may be far from the claimant's home, and bearing the burden of demonstrating a violation of due process is itself a significant barrier to suit that the claimant must overcome before he or she can assert state law claims, and imposes costs and burdens that may be substantial.   And even if the claimant were to succeed, the deprivation of property would have already occurred.   Just as "temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection," (*Doehr*, 501 U.S. at 12), the discharge of claims here, regardless of how temporary, also triggers due process concerns.   "Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).

> b.    *Erroneous deprivation is certain, and the value of additional safeguards is apparent.*

The risk of erroneous deprivation is not just substantial in these cases:  it is certain, which this Court acknowledged during confirmation hearings on the previous plan, though the Court considered that fact irrelevant to the due process analysis: "[t]he fact that there may be

---

[11]    This is not a situation like that in *Mitchell v. W. T. Grant Co.*, in which the Supreme Court upheld Louisiana's sequestration statute because, among other things, an immediate post-deprivation hearing was available.  416 U.S. 600 (1974).  In *Mitchell*, prejudgment seizure of property subject to a lien was justified in order to prevent alienation or waste of the encumbered property.  By contrast, in these cases, as in *Doehr*, there are no exigent circumstances that would justify extinguishing the rights of the claimholders without notice.

unmanifested claimants for whom the bar date, as applied to their specific case may not comport with due process, is simply irrelevant."   Hr'g Transcript 59:6-11, Dec. 3, 2015 (Ex. 1). Inevitably, there will be a significant number of Unmanifested Asbestos Claimants who—like Mr. Jones and Mr. Heinzmann—have valid and compensable claims, and who did not file proofs of claim.  Regardless of whether they were aware of the Debtors' bankruptcy or saw the Debtors' notice program, by definition they were unaware that they would suffer injury in the future, and could not be provided constitutionally adequate notice.  These Unmanifested Asbestos Claimants would be deprived of their claims without any notice and opportunity for a determination of the merits of those claims.

The value of additional safeguards—including appointing a legal representative for Unmanifested Asbestos Claimants, and ensuring adequate compensation for those claimants when they suffer asbestos-related injuries—is apparent.  As District Court Judge Weinstein, at that time designated to hear asbestos cases in the Eastern and Southern Districts of New York, observed, "future interests are best protected 'by requiring that "fair and just recovery procedures be[] made available to [future claimants]" . . . and by ensuring that they receive vigorous and faithful vicarious representation.'" *Findley v. Falise (In re Joint E. & S. Dist. Asbestos Litig.)*, 878 F. Supp. 473, 565 (E.D.N.Y. and S.D.N.Y. 1995) (citation omitted), *aff'd in part, vacated in part, In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764 (2d Cir. 1996).

Indeed, Congress has recognized that additional procedural safeguards are necessary to protect the interests of future, unmanifested asbestos claimants, and provided such safeguards in Bankruptcy Code Section 524(g).  Whether or not Section 524(g) provides the exclusive route for bankruptcy treatment of future, unmanifested asbestos claims need not be decided here. However, as the Third Circuit instructed in *Grossman's*, one of the factors that should be

considered in determining whether Unmanifested Asbestos Claims may be discharged is "whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g)." *JELD-WEN, Inc. v. Van Brunt* (*In re Grossman's, Inc.*), 607 F.3d 114, 127-28 (3d Cir. 2010). Here, the Debtors chose not to establish such a trust. Because the Unmanifested Asbestos Claimants were not—and could not be—given notice of the bar date, and have been deprived of any of the procedural safeguards set out in Section 524(g), their claims cannot be discharged under the Debtors' plan.

      c.      *The Debtors have no countervailing interest, and the public interest in ensuring equitable treatment of claimants further militates against discharge.*

As discussed in greater detail in Part II, below, the Debtors have no valid reorganizational purpose for seeking to discharge Unmanifested Asbestos Claims. They are not seeking to maximize the property available to creditors, or to expedite distribution of the assets of the estates. Nor are they seeking a fresh start free from the overhang of future claims: all asbestos claims for which proofs of claim have been timely filed would be reinstated, or "passed through" to the Reorganized Debtors. *See* Plan art. III(B)(13). And the Debtors have represented to this Court that they will be able to pay all Unmanifested Asbestos Claims as they arise in the future, regardless of how many such claims are asserted.[12] Hr'g Transcript 57:12-15, Dec. 3, 2015 (Ex.

---

[12]     The Debtors have maintained throughout these bankruptcy cases that their asbestos liabilities are not material. Debtors' Reply in Support of Bar Date with Respect to Asbestos Claims ("**Debtors' Bar Date Reply**") ¶ 6, Aug. 11, 2014, D.I. 1804. *See In re EFH Corp.*, 522 B.R. 520, 525 (Bankr. D. Del. 2015) ("The Debtors believe that litigation and settlement expenses incurred in connection with asbestos claims against the debtors are not material."); *id.* at n.8 (citing Hr'g Tr. 71:14-16, Aug. 13, 2014 (comparing $3 million estimated annual expenses with estimated $36 billion in assets, $49 billion in liabilities, including funded indebtedness, and $5.9 billion in consolidated annual revenues for the year ending December 31, 2013)).

1).    ████████████████████████████████████████████████████████

███████████████████████████████████████████████ ██  ████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████ █

      The Debtors' only interest in discharging the claims is to benefit equity at the expense of their creditors.  This is not a valid bankruptcy purpose.  To the contrary, it is in direct contravention of the fundamental principle of bankruptcy that creditors be paid before stockholders retain equity.  *Cf. Bank of America Nat'l Trust and Sav. Ass'n v. 203 North LaSalle Street P'ship*, 526 U.S. 434, 444 (1999) (noting "the danger inherent in any reorganization plan proposed by a debtor . . . that the plan will simply turn out to be too good a deal for the debtor's owners.").  The Supreme Court has instructed that debtors should not be permitted to "use the reorganization process to gain an unfair advantage."  *203 N. LaSalle St. P'ship*, 526 U.S. at 444.  The Supreme Court has also instructed that a debtor should not obtain a windfall by the mere happenstance of bankruptcy.  *Butner v United States*, 440 U.S. 48, 55 (1979).  Allowing these solvent Asbestos Debtors to use bankruptcy to escape their tort liabilities by extinguishing the future claims of unidentifiable and unselfconscious Unmanifested Asbestos Claimants without notice, compensation, or consideration of their claims would not only violate the due process rights of claimants in these cases, it would also create a "further incentive to enter bankruptcy for

---

█ ██████████████████████████████████████████████████████████
███████████████████████████████████████████████
█ ██████████████████████████████████████████████████████████
██████████████████████████████████████

reasons that have nothing to do with the purposes of bankruptcy law." *Zerand-Bernal Grp., Inc.*, 23 F.3d at 163 (holding that a sale under Code § 363 could not be used to discharge the successor liabilities of non-debtors for future Bankruptcy claims, in order to maximize the value of the assets sold).

Moreover, in these cases, there is no "ancillary interest of the government" that would weigh in favor of permitting discharge of Unmanifested Asbestos Claims.  In most bankruptcy cases, the bankruptcy goal of providing the debtors a fresh start will weigh heavily in favor of discharging claims for which proofs of claims were not filed.  *See Stellwagen v. Clum*, 245 U.S. 605, 617 (1918) (noting that the bankruptcy goal of affording debtor a "fresh start" is of "great public interest").  Here, however, as noted above, the Debtors are not seeking the discharge of these claims to give them a fresh start.  The only governmental interest relevant here is the strong governmental interest in ensuring equitable treatment of creditors in bankruptcy, which dictates that the Unmanifested Asbestos Claims cannot be discharged.  *See Stellwagen*, 245 U.S. at 617 (noting bankruptcy goal of distributing the debtors' property among creditors).

**3.      *Unmanifested Asbestos Claims cannot be discharged in the circumstances of these cases.***

This Court need determine only whether it would violate due process to discharge the Unmanifested Asbestos Claims in the circumstances of these cases.  The Court need not decide whether unmanifested asbestos claims can ever be discharged, or the circumstances under which such a discharge may occur.  Objectors note, however, that they are not aware of any case in which a court entered an order discharging unmanifested asbestos claims without compensation

where, as here, the debtor was aware that a significant number of such claims would arise in the future.[15]

In cases where courts have found that future, unmanifested asbestos claims could be discharged without the holders of those claims being afforded the protections of Bankruptcy Code Section 524(g), the courts found that the debtors had not been subject to asbestos claims pre-petition, or were not aware that significant numbers of such claims would arise in the future. In *In re Placid Oil Co.*, for example, the Fifth Circuit noted that "no instances of asbestos-related injury or illness were known to Placid prior to confirmation." 753 F.3d 151, 157 (5th Cir. 2014). Similarly, in *In re Chateaugay Corp.*, Nos. 86 B 11270(BRL) to 86 B 11334(BRL), 86 B 11402(BRL), 86 B 11464(BRL), 2009 WL 367490, at *6 (Bankr. S.D.N.Y. Jan. 14, 2009), the court noted "there had been no prepetition asbestos incidents or events that would suggest an awareness of a potential class of asbestos claimants." And the court in *Castleman v. Liquidating Trustee*, No. 6:06-CV-1077 (LEK), 2007 WL 2492792, at *8 (N.D.N.Y. Aug. 28, 2007), found

---

[15]    Objectors are aware of only one other case in which a court indicated an intention to impose a bar date on unmanifested asbestos claims. *In re Specialty Prods. Holding Corp.*, No. 10-11780, 2013 WL 2177694 (Bankr. D. Del. May 20, 2013) ("*Bondex*"). Unlike in these cases, the *Bondex* court appointed a legal representative for future claimants, who stated his intention to assert a claim on behalf of the unmanifested claimants. *See* Supplement of the Future Claimants' Representative to the Joint Objection of the Committee of Asbestos Personal Injury Claimants and the Future Claimants' Representative to the Debtors' Certification of Counsel Regarding Order Establishing Bar Dates for Filing Proofs of Claim and Approving Related Relief, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Jan. 2, 2014) (D.I. 4441); Hr'g Tr. 50:4-16, Dec. 17, 2013. Moreover, the *Bondex* court never ruled that the unmanifested claims in that case would be discharged. The parties ultimately agreed to a 524(g) plan in that case, and a bar date was never imposed. *See* Order Confirming the Joint Plan of Reorganization of Specialty Prods. Holding Corp., Bondex Int'l, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., as Modified, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 10, 2014) (D.I. 5261); Findings of Fact and Conclusions of Law Regarding Confirmation of the Joint Plan of Reorganization of Specialty Prods. Holding Corp., Bondex Int'l, Inc., Republic Powdered Metals, Inc. and NMBFiL, Inc., as Modified, *In re Specialty Prods. Holding Corp.*, No. 10-11780 (Bankr. D. Del. Dec. 11, 2014) (D.I. 5262).

that "there is insufficient evidence suggesting that [the debtors] had reason to believe it was subject to mass tort litigation resulting from exposure to asbestos at the time it filed for bankruptcy or published notice of the bar date such that it could reasonably expect there to be future unknown claimants with injuries that had not yet manifested themselves."

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ The Debtors chose not to propose a plan that satisfies the requirements of Section 524(g), but, rather, to pass their asbestos claims through to the Reorganized Debtors.  That is their prerogative.  But it is not their prerogative to run roughshod over the rights of the Unmanifested Claimants.  Having elected not to provide the Unmanifested Claimants with the protections of Section 524(g), they are not entitled to a discharge of the claims of those creditors.

There is no legitimate bankruptcy reason in these cases for discharging Unmanifested Claims.  Permitting such a discharge will result in a windfall to the solvent Asbestos Debtors and their controlling parent at the expense of their tort victims.[17]  The Debtors seek to obtain this windfall through the pretense that they have provided "notice" to unidentifiable and unselfconscious Unmanifested Asbestos Claimants, while opposing all efforts of Objectors and others to ensure that the rights of these claimants are represented, and that their claims are preserved.  This Court should not tolerate such "efforts to sandbag a class of known creditors." *Waterman*, 141 B.R. at 558.  Under the circumstances of these cases, the mandates of due

---

[16]  ████████████████████████████████████████████

[17]      *Cf. Butner*, 440 U.S. at 55 (noting that debtors should not receive a windfall because of the happenstance of bankruptcy).

process do not permit the discharge of Unmanifested Asbestos Claims.  The Plan cannot be confirmed insofar as it would discharge these claims.

### D.    Retrospective reinstatement of claims cannot remedy a violation of the due process rights of Unmanifested Asbestos Claimants.

At the previous confirmation hearing, this Court acknowledged that Unmanifested Asbestos Claimants who are diagnosed after the Bar Date would be able to successfully challenge the discharge of their claims on the ground that their due process rights had been violated.  Nonetheless, the Court confirmed the prior plan, which would have discharged such claims, holding that "[t]he fact that there may be unmanifested claimants for whom the bar date, as applied to their specific case may not comport with due process, is simply irrelevant.  As long as the notice given by the Debtors is reasonably calculated, the bar date is facially constitutional."  Hr'g Transcript 59:6-11, Dec. 3, 2015 (Ex. 1).  The Court continued:

> [T]he standard of due process here is prospective.  It is entirely possible that an unmanifested claimant may bring a claim after the bar date, argue the Debtors' notice scheme was unconstitutional, as applied to her, and be correct in that argument.  She would have her claim reinstated and the Debtors would then be free to dispute its validity and/or her damages.  But that is a retrospective determination, an unconstitutional, as applied, determination.  That determination is irrelevant to whether the Debtor's notice scheme prospectively satisfies due process.

*Id*. at 62:15-25 (Ex. 1).

In so ruling, the Court adopted an argument made previously by the Debtors that, under the Third Circuit's decision in *Grossman's*, any analysis of whether the discharge of Unmanifested Claims violates due process must be made retrospectively, on a case-by-case basis, and cannot be made prospectively, before the discharge is ordered.

Objectors respectfully submit that the Debtors led this Court into error with a mischaracterization of the Third Circuit's decision in *Grossman's*.  Nowhere in its opinion does

the Third Circuit even suggest that a bankruptcy court has authority to confirm a plan that would discharge unmanifested asbestos claims even though, as in these cases, it is clear that the discharge violates the due process rights of the holders of those claims.  It does not.

The plan of reorganization in *Grossman's* was confirmed in December 1997.  Almost 10 years later, Mary Van Brunt, who had been exposed to Grossman's asbestos products pre-petition, was diagnosed with mesothelioma.  She and her husband sued Grossman's successor in interest, JELD-WEN.  Both the bankruptcy and district courts, relying on the Third Circuit's decision in *Frenville*,[18] found that, when the plan was confirmed, the Van Brunts had not held "claims" within the meaning of Section 101(5) of the Bankruptcy Code, as their claims had not accrued under state law until 2007, when Ms. Van Brunt was diagnosed, and therefore their claims were not discharged at confirmation.  The Third Circuit reversed, overruling the *Frenville* "accrual" test for when a claim arose, and holding that a bankruptcy claim arises "when an individual is exposed pre-petition to a product or other conduct giving rise to an injury." *Grossman's*, 607 F.3d at 125.  Thus, the court held, the Van Brunts' claims arose pre-petition. *Id.*

The court emphasized, however, that its ruling "d[id] not necessarily mean that the Van Brunts' claims were discharged by the Plan of Reorganization." *Id.*  The court remanded the matter to the district court, noting that the determination of whether the claims were discharged "depends on factors applicable to the particular case and is best determined by the appropriate bankruptcy court or the district court." *Id.* at 127.  The court also noted a number of factors that the lower court "may wish to consider" in making that determination:

---

[18]      *Avellino v. M. Frenville Co.*, 744 F.2d 332 (3d Cir. 1984).

the circumstances of the initial exposure to asbestos, whether and/or when the claimants were aware of their vulnerability to asbestos, whether the notice of the claims bar date came to their attention, whether the claimants were known or unknown creditors, whether the claimants had a colorable claim at the time of the bar date, and other circumstances specific to the parties, including whether it was reasonable or possible for the debtor to establish a trust for future claimants as provided by § 524(g).

*Id*. at 127-28. The court then remanded the case to the district court for further proceedings.[19]

It is not surprising that, when it issued the confirmation order in *Grossman's*, the bankruptcy court did not consider the due process rights of unmanifested asbestos claimants. Nor is it surprising that the confirmation order in that case was not challenged on the grounds that it violated the due process rights of such claimants: under the *Frenville* "accrual" test that was controlling law at that time, it was understood that unmanifested asbestos claimants did not hold "claims" that could be discharged on confirmation of a plan of reorganization. It was only when the Third Circuit overruled *Frenville* and changed the definition of "claim" that the question of whether the Van Brunts' claims were discharged even arose.

Nothing in the Third Circuit's opinion in *Grossman's* can be read as supporting the proposition that, before issuing an order confirming the Plan, this Court cannot consider whether, under the circumstances of these cases, the discharge of Unmanifested Asbestos Claims would violate the due process rights of unknown, absent claimants, or that the Court may consider the due process issues retrospectively only, on a case-by-case basis, if and when the discharge is challenged. Indeed, such a rule would be directly contrary to the Supreme Court's decision in

---

[19]    The district court never decided whether the claims had been discharged, as the parties in *Grossman's* settled. *See* Notice of Settlement, *JELD-WEN, Inc. v. Van Brunt (In re Grossman's, Inc.)*, No. 07-51602 (Bankr. D. Del. June 28, 2011) (D.I. 71).

*Doehr*, which teaches that, before issuing an order that would deprive a person of property without notice, a court must ensure that the order comports with due process.

The purpose of the due process clause is to prevent or minimize unfair or erroneous deprivations of property.  As the Supreme Court observed in *Amchem*, and as the Bankruptcy Court acknowledged in these cases, if Unmanifested Asbestos Claims are discharged, such erroneous deprivations will certainly occur.  It is undisputed that, post-bar date, Unmanifested Asbestos Claimants have suffered injuries caused by exposures to the Debtors' asbestos, and more will suffer injuries in the future.  It is also undisputed that the identity of those claimants cannot be ascertained until, at some point in the future, their illnesses are diagnosed.  Because they were not—and could not be—provided notice, and no legal representative was appointed to represent them,[20] no provision was made for their compensation, and no other steps taken to safeguard their rights, the discharge of their claims would not comport with due process.

## II.    THE PLAN CANNOT BE CONFIRMED BECAUSE IT WAS NOT PROPOSED IN GOOD FAITH, AS REQUIRED BY BANKRUPTCY CODE SECTION 1129(A)(3)

Bankruptcy Code § 1129(a)(3) provides that a plan cannot be confirmed unless it "has been proposed in good faith."  11 U.S.C. § 1129(a)(3).  "The good faith standard requires that the plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code.'"  *In re ACandS, Inc.*, 311 B.R. 36, 42 (Bankr. D. Del. 2004) (internal citations omitted). *See also In re WR Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013) ("[T]he important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the

---

[20]    *See Covey*, 351 U.S. at 146 ("Notice to . . . an incompetent who is without the protection of a guardian does not measure up" to the requirements of due process.).

objectives and purposes of the Bankruptcy Code.") (internal citations omitted).  The objectives and purposes of the Bankruptcy Code include "preserving going concerns and maximizing property available to satisfy creditors," "giving debtors a fresh start in life," "discourag[ing] debtor misconduct," "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," and "achieving fundamental fairness and justice."  *Id.*  (internal citations and quotation marks omitted).

A determination of good faith "requires a factual inquiry into a totality of the circumstances surrounding the plan's proposal."  *In re W.R. Grace & Co.*, 475 B.R. 34, 87 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).  *See also Am. Capital Equip.*, 688 F.3d at 157 ("[I]nformation affecting the good faith determination might be added to the record throughout the process leading up to confirmation.").  The subjective intent of the plan proponents is one factor to be considered by the court.  *See WR Grace*, 729 F.3d 332, 348 (3d Cir. 2013) ("Subjective intent . . . is one factor in determining that a Plan is not being used for purposes contrary to the Code's objectives.")  "A lack of good faith is evident when 'the debtor seeks to delay or frustrate the legitimate efforts of creditors to enforce their rights.'"  *W.R. Grace*, 475 B.R. at 89 (citation omitted).

Here, the Plan was not proposed in good faith, with honesty and good intentions.  Instead of dealing fairly with, and maximizing the recovery of, their asbestos victims, the Debtors have put forward a plan that would "delay or frustrate" the efforts of Unmanifested Asbestos Claimants to enforce their rights.  It would do so by purporting to discharge the future claims of large swathes of Unmanifested Asbestos Claimants without compensation, and without constitutionally adequate notice or other safeguards of their rights, all for the benefit of equity. The Plan thus runs directly counter to the bedrock principle of bankruptcy law that a debtor

should not receive "a windfall merely by reason of the happenstance of bankruptcy." *Butner*, 440 U.S. at 55 (citation omitted).  Insofar as the Plan would discharge Unmanifested Asbestos Claims, it is not consistent with the objectives and purposes of the Bankruptcy Code, and cannot be confirmed.

As debtors-in-possession, the Asbestos Debtors "bear[] essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession." *Wolf v. Weinstein*, 372 U.S. 633, 649-50 (1963);  *see also In re G-I Holdings, Inc.*, 385 F.3d 313, 319 (3d Cir. 2004) ("debtor-in-possession is a fiduciary of the creditors").  "[T]hese fiduciary responsibilities fall . . . upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court." *Wolf*, 372 U.S. at 649-50.  "Indeed, the willingness of courts to leave debtors in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 355 (1985) (internal citation omitted).  The debtor's "duty of loyalty . . . includes an obligation to refrain from self dealing, to avoid conflicts of interests and the appearance of impropriety." *In re Coram Healthcare Corp.*, 271 B.R. 228, 235 (Bankr. D. Del. 2001).

A plan cannot be confirmed where, as here, it would benefit controlling stakeholders who were the primary drafters of the plan, to the detriment of another group of stakeholders. Thus, for example, in *ACandS*, the bankruptcy court found that the plan was not proposed in good faith because it had been drafted primarily by and for the benefit of a group of claimants, to the detriment of other claimants. "[G]iven . . . the obvious self-dealing that resulted from control of the debtor," the court held, "it is impossible to conclude that the plan was consistent with the

objectives and purposes of the Bankruptcy Code." *ACandS*, 311 B.R. at 43; *W.R. Grace*, 729

F.3d at 348 (discussing *ACandS*).

Here, too, the Plan evidences the "obvious self-dealing that resulted from control of the

debtor." The Plan would cleanse the Asbestos Debtors of future asbestos liabilities for

Unmanifested Asbestos Claims—and would cleanse parent Debtor EFH Corp. and the other

Debtor affiliates of any successsor-in-interest or similar derivative liability for such claims—

without providing any compensation for those claims. The Debtors' "job . . . is to make sure the

creditors are paid." *In re Furley's Transp., Inc.*, 272 B.R. 161, 176-77 (Bankr. D. Md. 2001),

*aff'd*, 306 B.R. 514 (D. Md. 2002) (internal citation omitted). But rather than make sure that all

of their creditors will be paid, the Debtors are seeking to discharge future Unmanifested

Asbestos Claims without compensation. The discharge serves only one interest—that of

equity—at the expense of the asbestos victims. This kind of self-dealing precludes a finding of

good faith.

The Debtors have no valid reorganizational purpose for discharging these claims. They

have maintained throughout these bankruptcy cases that their asbestos liabilities are not

material.[21] Under the Plan, all asbestos claims for which timely proofs-of-claim were filed will

pass-through the bankruptcy to the Reorganized Debtors. Plan art. III(B)(13). The Debtors have

not sought an estimation of the value of the claims for allowance purposes, or to cap the funds

available to pay those claims. And the Debtors have consistently maintained that asbestos

---

[21]    *See* Debtors' Bar Date Reply ¶ 6. *See In re EFH Corp.*, 522 B.R. at 525 ("The Debtors
believe that litigation and settlement expenses incurred in connection with asbestos claims
against the debtors are not material."); *id.* at n.8 (citing Hr'g Tr. 71:14-16, Aug. 13, 2014
(comparing $3 million estimated annual expenses with estimated $36 billion in assets, $49
billion in liabilities, including funded indebtedness, and $5.9 billion in consolidated annual
revenues for the year ending December 31, 2013)).

liabilities would not be an impediment to feasibility even if no claims were barred by the discharge provisions of the Plan.    Indeed, when Ms. Fenicle and Mr. Fahy objected to confirmation of the previous plan on feasibility grounds, pointing out that the bar date was after the confirmation hearing, and that the claims that had not been liquidated could result in a significant liability that had not been estimated,[22] the Debtors stated the asbestos liabilities were forecastable and that "[i]n the context of th[eir] $42 billion reorganization, that liability is no[t an] impediment to feasibility, no matter the ultimate size of Class A3 [asbestos claims against the EFH Debtors] (including any Claims filed between confirmation and the asbestos bar date)." Debtors' Omnibus Reply to Plan Confirmation Objections ¶ 174, Oct. 31, 2015, D.I. 6817. ████

████████████████████████████████████████████████████

████████████████████████████████ ██ ████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████ ███

As set out in the Motion to Dismiss, the Asbestos Debtors had no valid reorganization purpose for filing for bankruptcy, and their Chapter 11 petitions were filed in bad faith.  *See* Motion to Dismiss at 11-17. ████████████████████████████████████████

████████████████████████████████████████████████████

---

[22]    Trial Brief and Omnibus Objection of Fenicle and Fahy to (I) Motion of Energy Future Holdings Corp., *et al.*, to Approve a Settlement of Litigation Claims and Authorize the Debtors to Enter into and Perform Under the Settlement Agreement and (II) Confirmation of the Fifth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., *et al.* at 14, Oct. 23, 2015, D.I. 6610.

██  ████████████████████████████████████████

██  ████████████████████████████████████████████████

███████ and have scheduled additional liabilities of less than $40 million, while they have

assets of at least $990 million. ██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████   ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████

The Asbestos Debtors' lack of good faith in filing for bankruptcy protection necessarily

means that their plans were not proposed in good faith.[25] "The taint of a petition filed in bad

---

[25]    Objectors do not question that EFH Corp. had a valid reorganization purpose.   But, as the Third Circuit has instructed, a determination that a petition was filed in good faith does not determine whether the plan was proposed in good faith:

> A prior determination that a bankruptcy petition was filed or proceeded in good faith does not necessarily preclude a later inquiry into whether a plan under that petition is proposed in good faith for purposes of confirmation.  The question of whether a Chapter 11 bankruptcy petition is filed in good faith is a judicial doctrine, distinct from the statutory good faith requirement for confirmation pursuant to § 1129(a)(3) . . . . It might be that a bankruptcy case which is filed and proceeds in good faith nevertheless results in a plan that does not fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

*Am. Capital Equip.*, 688 F.3d at 157.  As shown above, the Plan with respect to EFH Corp. and the other Debtors was not proposed in good faith and cannot be confirmed insofar as it would discharge future Unmanifested Asbestos Claims.

faith must naturally extend to any subsequent reorganization proposal; thus, any proposal submitted by a debtor who filed his petition in bad faith would fail to meet section 1129's good faith requirement." *In re Natural Land Corp.*, 825 F.2d 296, 298 (11th Cir. 1987). *See also In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) ("The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith.")  Just as the Asbestos Debtors filed their Chapter 11 petitions in order to shed their asbestos liabilities, the Plan as it relates to those Debtors was proposed for that purpose as well:  The Asbestos Debtors would remain separate corporate entities, wholly-owned by reorganized EFH Corp. which, in turn, will be wholly owned by NextEra, Inc.;  all EFH Debtor Intercompany Claims (Class A3) and interests in the EFH Debtors other than EFH Corp. held by the Asbestos Debtors would be reinstated (*see* Plan art. III(B)(15)); and all General Legacy Unsecured Claims, including Asbestos Claims (Class A3) against the Asbestos Debtors, also would be reinstated. *See* Plan art. III(B)(3).  Thus, the only practical effect the Plan would have on the Asbestos Debtors is that it would allow them to shed their future liabilities for Unmanifested Asbestos Claims, without compensation.

As in *ACandS*, it is "impossible to conclude that this plan is imbued with fundamental fairness."  *ACandS*, 311 B.R. at 43.  It is fundamentally unfair to discharge the claims of Unmanifested Asbestos Claimants who have no estate fiduciary to represent their interests, without compensating those claimants, while all other claims are paid in full, and equity retains value.  To allow the Debtors to have confirmed a Plan that would discharge such claims in the circumstances of these cases would be a perversion of the reorganization law and an abuse of the bankruptcy process.

The Supreme Court has instructed that a bankruptcy court "[i]n the exercise of its equitable jurisdiction . . . has the power . . . to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 307-08 (1939).  The Court should exercise that power here, and deny confirmation.

## **CONCLUSION**

For the foregoing reasons, Objectors respectfully submit that the Plan cannot be confirmed with respect to the Asbestos Debtors, and, with respect to the remaining EFH/EFIH Debtors, cannot be confirmed insofar as it would discharge Unmanifested Asbestos Claims.

Dated:  November 15, 2016          Respectfully submitted:
        Wilmington, Delaware

                          By:    /s/ Daniel K. Hogan
                                 Daniel K. Hogan (DE Bar # 2814)
                                 HOGAN MCDANIEL
                                 1311 Delaware Avenue
                                 Wilmington, Delaware  19806
                                 Telephone:  (302) 656-7540
                                 Facsimile: (302) 656-7599
                                 dkhogan@dkhogan.com

                                 *Counsel for Shirley Fenicle, individually and as
                                 successor-in-interest to the Estate of George
                                 Fenicle, David William Fahy, John H. Jones, and
                                 David Heinzmann*

                                 -and-

                                 Steven Kazan (admitted *pro hac vice*)
                                 KAZAN MCCLAIN SATTERLEY &
                                 GREENWOOD
                                 A Professional Law Corporation
                                 Jack London Market
                                 55 Harrison Street, Suite 400
                                 Oakland, CA 94607
                                 Telephone: (510) 302-1000
                                 Facsimile: (510) 835-4913

                                 *Counsel for Shirley Fenicle, individually and as
                                 successor-in-interest to the Estate of George
                                 Fenicle*

                                 -and-

                                 Ethan Early (admitted *pro hac vice*)
                                 EARLY LUCARELLI SWEENEY &
                                 MEISENKOTHEN
                                 265 Church Street, 11th Floor
                                 New Haven, CT 06508-1866
                                 Telephone: (203) 777-7799
                                 Facsimile: (203) 785-1671

                                 *Counsel for David William Fahy*

                                 -and-

Jonathan Ruckdeschel (admitted *pro hac vice*)
THE RUCKDESCHEL LAW FIRM LLC
8357 Main Street
Ellicott City, MD 21043
Telephone:  410-750-7825
Facsimile: 443-583-0430

*Counsel for David Heinzmann*

-and-

Beth Gori
Gori Julian & Associates, P.C.
156 North Main Street
Edwardsville, IL 62025
Telephone: (618) 659-9833
Facsimile: (618) 659-9834

*Counsel for John H. Jones*