**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered)<br><br>**Re: Docket No. 9612**<br><br>Objection Deadline: Nov. 15, 2016 at 2:00 p.m.<br>Hearing Date: Dec. 1, 2016 at 10:00 a.m. |

**CONTRARIAN CAPITAL MANAGEMENT, LLC'S
OBJECTION TO CONFIRMATION OF THE DEBTORS' FOURTH
AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE
HOLDINGS CORP. *ET AL*., PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE AS IT APPLIES TO THE EFH AND THE EFIH DEBTORS**

Contrarian Capital Management, LLC (as advisors, or affiliates of advisors to holders, or managers of various accounts with investment authority, contractual authority or voting authority, "Contrarian"), by its undersigned counsel, hereby objects (the "Objection") to confirmation of the Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp. ("EFH Corp."), *et al.*, Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 9612] as it applies to the EFH Debtors and the EFIH Debtors[1] (the "E-Side Plan").

I.  **INTRODUCTION**

As set forth more fully below, Contrarian requests that the Court find that:

(i) the E-Side Plan contemplates transfers of EFH Corp.'s assets to NextEra Energy Inc. ("NextEra") without reasonably equivalent value to EFH Corp.;

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the E-Side Plan.

(ii) the EFH Corp. officers and directors' failure to negotiate a more equitable plan structure evinces a failure to satisfy their fiduciary duties;

(iii) the E-Side Plan and requested rulings impermissibly seek to circumvent the procedural safeguards applicable to the sale of assets under Section 363 of the Bankruptcy Code;

(iv) the E-Side Plan is not feasible because it is subject to a condition—disallowance of the EFIH First and Second Lien Noteholders' Makewhole Claims—that can and should be determined now, but instead is left for some indeterminate point, and

(v) the E-Side Plan does not satisfy the plan confirmation requirements set forth in section 1129 of the Bankruptcy Code for numerous reasons, including because the contemplated transfer of EFH Corp. assets will constitute fraudulent transfers.

Specifically, at the hearing on the confirmation of the E-Side Plan (the "Confirmation Hearing"), this Court is being asked by the Debtors to:

A. Approve the E-Side Plan, which includes:

   i. Transfers or uses of EFH Corp.'s accumulated net operating losses ("NOLs") to or by NextEra, to the benefit of EFIH bondholders and, depending on the allowance of the Makewhole Claims without fair equivalent value to EFH Corp; and

   ii. Allowance of Makewhole Claims to the EFIH First Lien noteholders and the EFIH Second Lien noteholders; and

B. Confirm the E-Side Plan for the EFH Debtors and the EFIH Debtors.

Contrarian opposes the entry of any order granting the relief outlined above. Contrarian remains open to negotiating a consensual resolution of these matters. Barring such a resolution, however, Contrarian must object to the Plan as set forth below. In further support of this Objection, Contrarian respectfully states as follows:

## II. FACTUAL BACKGROUND

### A. The Debtors' Bankruptcy Cases and the T-Side Plan

1. On April 29, 2014, the Debtors commenced these chapter 11 cases. A final order directing their joint administration was entered on June 5, 2014.

2. On April 14, 2015, the Debtors filed their initial plan of reorganization and disclosure statement [Docket Nos. 4142 & 4143].

3. The Debtors' initial plan of reorganization and disclosure statement were subsequently amended, and on August 29, 2016, the Third Amended Joint Plan of Reorganization as it Applies to the TCEH Debtors and the EFH Shared Services Debtors (the "T-Side Plan") was confirmed [Docket No. 9421].

### B. The E-Side Plan and Disclosure Statement

4. On September 21, 2016, the Debtors filed the E-Side Plan and Disclosure Statement [Docket No. 9616].

5. The E-Side Plan contemplates the wholesale acquisition of EFH Corp.'s assets (via a Merger Agreement), including EFH Corp.'s NOLs (which NextEra can then use to offset future taxable income).[2]

6. Moreover, pursuant to the E-Side Plan, the class of EFH Legacy Note Claims (Class A4) is Impaired under the E-Side Plan and is to receive their Pro Rata distribution of the

---

[2] *See* E-Disclosure Statement at 10; Merger Agreement ("[A]t the Effective Time, all of the property, rights, privileges, powers and franchises of the reorganized Company and Merger Sub shall vest in the Surviving Company[.]")

EFH Creditor Recovery Pool.[3] The class of EFIH First and Second Lien Note Claims (Class B3 and B4) will receive payment in full in Cash of, among other things, any Makewhole Claims that are held to be allowed by a court of competent jurisdiction, pursuant to a Final Order, whether entered before, on, or after the EFH Effective Date.[4] While a condition precedent to the EFH Effective Date is that such Makewhole Claims are Disallowed Makewhole Claims, such condition may be waived by NextEra.[5] To the extent such Makewhole Claims are allowed prior to the EFH Effective Date, recovery to the EFH Corp. creditors is diminished. If such claims are significant enough, there may not be any value flowing to EFH Corp. and its Legacy bondholders, despite the transfer of EFH Corp.'s NOLs to facilitate the NextEra transaction. The Plan provides that the holders of the EFIH unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 (the "PIK Noteholders") will have a "true up" for any dilution caused by allowance of the Makewhole Claims (that is, if NextEra decides to waive the condition requiring disallowance of the Makewhole Claims).[6] However, EFH Corp. creditors have no such protection.

7.      Accordingly, an issue for the Confirmation Hearing will be the determination of how and why the officers and directors, and in particular the EFH Disinterested Directors, agreed

---

[3]    See E-Disclosure Statement at 11; E-Side Plan at III.B.4.
[4]    See E-Disclosure Statement at 12; E-Side Plan at III.B.19-20.
[5]    See E-Disclosure Statement at 16 ("The Plan contemplates, and effectiveness of the Plan is conditioned on all EFIH First Lien Note Claims and EFIH Second Lien Note Claims that are Makewhole Claims becoming Disallowed Makewhole Claims, though such condition can be waived by the Plan Sponsor in its sole and absolute discretion. To the extent such Makewhole Claims are not Disallowed Makewhole Claims, a condition to the EFH Effective Date will be unable to be satisfied. Such condition can, however, be waived by the Plan Sponsor in its sole and absolute discretion."); E-Side Plan, IX.D.10; E-Side Plan, IX.E ("The conditions to the EFH Effective Date set forth in Articles IX.D.7, IX.D.8, IX.D.10, IX.D.11, and IX.D.13 may be waived by the Plan Sponsor in its sole and absolute discretion.").
[6]    See E-Disclosure Statement at 46 ("[I]f a court of competent jurisdiction enters a Final Order before the EFH Effective Date, allowing Makewhole Claims asserted by Holders of EFIH First Lien Note Claims (whether as Secured Class B3 Claims, as applicable, or as Unsecured Class B6 Claims), a condition precedent to the EFH Effective Date shall not be satisfied, though such condition may be waived by the Plan Sponsor in its sole and absolute discretion. If the Plan Sponsor determines to waive such condition, such Allowed Makewhole Claims will be paid in full, in Cash, without reducing the recoveries to Holders of Allowed Class B6 Claims.").

to those terms, and others, without ensuring fair equivalent value for EFH Corp., its estate and its creditors.

### III. ARGUMENT

8.  As set forth more fully below, the E-Side Plan may not be confirmed because it contemplates the transfer or use of EFH Corp.'s assets—in the form of NOLs—without an exchange of fair equivalent value to EFH Corp.

9.  EFH Corp. is under no obligation to allow its NOLs to be consumed for the direct benefit of EFIH and its creditors, as well as NextEra, but with no benefit to EFH Corp.. Rather, it is undisputed that EFH Group's tax attributes, including its NOLs, are property of EFH Corp.'s estate. *See e.g., In re Prudential Lines, Inc.*, 107 B.R. 832 (Bankr. S.D.N.Y. 1989), aff'd 119 B.R. 430 (S.D.N.Y. 1990), aff'd 928 F. 2d 565 (2d Cir. 1991). Here, only EFH Corp., for federal income tax purposes, possesses the legal interests in, and the right to control, the disposition and use of the EFH Group's tax attributes, including the NOLs, regardless of how and when the NOLs were generated.[7] Furthermore, even if a portion of the EFH Group's NOLs were economically attributable to losses realized by EFIH, since EFIH is classified as a disregarded entity for U.S. federal income tax purposes, income, losses and tax attributes in respect of such losses (including NOLs) of EFIH are considered income, losses or attributes of its owner, EFH Corp., for U.S. federal tax purposes. *See, e.g.,* 26 C.F.R. § 301.7701-2(c)(2); *In re Conex Holdings, LLC*, 518 B.R. 792 (Bankr. D. Del. 2014)*.*

---

[7]  To determine whether a debtor has an interest in property such that it is property of that debtors' estate, courts look to applicable non-bankruptcy law. Property of the estate includes, among other things, "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). Estate property includes all of a debtor's rights and expectancies and is a concept that "has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Segal v. Rochelle, 382 U.S. 375, 379, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) ; see also, e.g., 11 U.S.C. § 541(c)(1)(A) (providing that assets become estate property notwithstanding any provision of non-bankruptcy law that would prevent their being liquidated or transferred by the debtor); H.R. REP. No. 95–595, at 175–76 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6136 (making clear that "property of the estate" includes all "contingent interests and future interests, whether or not transferable by the debtor").

### A. Confirmation of the E-Side Plan, as Contemplated, Involves the Use of Property of EFH Corp.'s Estate to the Detriment of EFH Corp.'s Stakeholders

10. Under the E-Side Plan, EFH Corp. may receive no consideration for the use of its own NOLs. Rather, given that the EFIH First and Second Lien Noteholders' Makewhole Claims are allowed under the E-Side Plan (if upheld by a final order of a court of competent jurisdiction), the consideration EFH Corp. and its creditors should have received from NextEra for its NOLs will instead flow to EFIH and its creditors.

11. Such transfer of the value of the consideration received from NextEra for EFH Corp.'s NOLs to EFIH's First and Second Lien Noteholders without receiving reasonably equivalent value in exchange impermissibly denies EFH Corp. and its stakeholders the benefit of these valuable tax assets and is, in effect, a fraudulent transfer of these tax benefits to EFIH.

### B. The E-Side Plan Does Not Satisfy the Requirements of Bankruptcy Code Section 1129

12. The E-Side Plan runs afoul of section 1129 of the Bankruptcy Code and cannot be approved. Indeed, the Debtors bear the "burden of proving that the Plan complies with all of the requirements of the Bankruptcy Code for confirmation." *In re Wash. Mut., Inc.*, 442 B.R. 314, 328 (Bankr. D. Del. 2011) (denying confirmation because plan proponents did not meet their burden); *see also In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003) (denying confirmation of plan and stating that "plan proponent bears the burden of establishing the plan's compliance with each of the requirements set forth in § 1129(a) . . ."); *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *2 (Bankr. D. Del. Nov. 10, 2011) ("As the plan proponent, the burden rests with the Debtors to demonstrate that the requirements of Bankruptcy Code § 1129 have been satisfied.").

### a) The E-Side Plan Violates Section 1129(a)(3) Because the Transactions Contemplated Therein Violate Applicable State Law

13. The E-Side Plan violates section 1129(a)(3) because it violates applicable state law. Section 1129(a)(3) provides that a plan can only be approved if it is proposed in good faith and "not by any means forbidden by law." Section 1129(a)(3) incorporates state and other applicable non-bankruptcy law and requires that a plan "must not only comply with the provisions of the Code, but must meet the standards for approval of such a transaction under [applicable state] corporate law." *In re Zenith Elecs. Corp.*, 241 B.R. 92, 108 (Bankr. D. Del. 1999). Here, the transfer of NOLs to NextEra would violate the Texas Uniform Fraudulent Transfer Act ("TUFTA"), which provides that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

TEX. BUS. & COM. CODE § 24.006(a). "Section 24.006(a) requires [the] Court to examine whether [the transferor] received reasonably equivalent value when [the transferor] transferred . . . assets to [the transferee]." *United States v. Evans*, 513 F. Supp. 2d 825, 835 (W.D. Tex. 2007). To sustain a fraudulent transfer claim under TUFTA section 24.006(a), the creditor has to prove that (1) its claim against the debtor arose prior to the transfer of the property in question; (2) the property was transferred for less than reasonably equivalent value, and (3) the debtor was insolvent at the time of the transfer, or was rendered insolvent as a result of the transfer. *See Wren Alexander, Invs., L.L.C. v. IRS* (*In re Wren Alexander Invs., L.L.C.*), 2012 U.S. Dist. LEXIS 189240, *13 (W.D. Tex. Mar. 30, 2012).

14. All the elements of TUFTA section 24.006 are present here and EFH Corp.'s proposed transfer of EFH Corp.'s NOLs to NextEra would be fraudulent as to creditors, because, as demonstrated above, and as will be further shown at trial, EFH Corp. will have made the

7

transfers without receiving a reasonably equivalent value (potentially no value) at a time when EFH Corp. is insolvent.

15.     Because TUFTA's concept of "value" was adopted from the Bankruptcy Code, cases decided under the Bankruptcy Code are persuasive. *See Bowman v. El Paso CGP Co., L.L.C.*, 431 S.W.3d 781, 786 (Tex. App. Houston 14th Dist. 2014). Under section 548 of the Bankruptcy Code, courts have repeatedly determined that a debtor's NOLs are property of the estate that can be recovered as a fraudulent transfer.[8] Here, EFH Corp. will not receive anything of value—let alone reasonably equivalent value—in exchange for its transfer of its NOLs to NextEra.

16.     It is quite clear that EFH Corp. is insolvent. The *Schedules of Assets and Liabilities* for EFH Corp. indicate that it had approximately $5.195 billion in liabilities and $3.520 billion in assets as of the Petition Date [Docket No. 1237, at 10], and there is no realistic scenario where the EFH Corp. creditors will be paid in full.

17.     The transfer of EFH Corp.'s NOLs to NextEra for no consideration is separately avoidable under section 24.006(b) of TUFTA, which provides that a "transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider

---

[8]     *See e.g., United States v. Towers* (*In re Feiler*), 230 B.R. 164, 171 (B.A.P. 9th Cir. 1999) (affirming decision of bankruptcy court that "(1) an IRC § 172(b)(3) NOL election was an interest of Debtors in property; (2) the Election constituted a transfer pursuant to § 548 because it disposed of Debtors' right to a current tax refund in exchange for the right to carry forward their NOL; and (3) the transfer was fraudulent because (a) the parties stipulated that it was made within one year of the filing of the bankruptcy petition, Debtors did not receive reasonably equivalent value, and Debtors were insolvent at the time the Election was made, and (b) the United States directly benefitted from the Election because it was not required to pay a $ 247,493 tax refund."); *Kapila v. United States* (In re Taylor), 386 B.R. 361, 372 (Bankr. S.D. Fla. 2008) (stating that "bankruptcy law permit[s] the trustee as the fiduciary for the bankruptcy estate to recover those tax attributes which existed prepetition for the benefit of the prepetition creditors. Allowing the Trustee to recover as fraudulent the Debtor's transfer of his NOL carryback prevents the gross inequity created by the irrevocability of the NOL carryback waiver").

had reasonable cause to believe that the debtor was insolvent." TEX. BUS. & COM. CODE § 24.006(b) (emphasis added).

18.     Here, the EFH Corp.'s NOLs inure to the benefit of insiders, EFIH. The definition of "insider" under TUFTA mirrors the definition in the Bankruptcy Code. See TEX. BUS. & COM. CODE § 24.002 (7) ("Insider" includes: . . . (D) an affiliate, or an insider of an affiliate as if the affiliate were the debtor . . . .); § 24.002 (7) (defining "affiliate").

19.     In sum, if the transactions and recoveries contemplated by the E-Side Plan were to occur, all the elements for a fraudulent transfer under TUFTA are met. The Court should not bless a transaction that would be avoidable outside of bankruptcy.

### C. The E-Side Plan is Not Feasible

20.     The E-Side Plan is also unconfirmable because it is not feasible. Section 1129(a)(11) of the Bankruptcy Code provides that a plan can only be confirmed if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). In the absence of resolution of the status of the EFIH First and Second Lien Noteholders' Makewhole Claims, as well as resolution of the fraudulent transfer of EFH Corp.'s NOLs, the Current Plan is not feasible and a hearing to consider confirmation of the Current Plan should not be permitted to commence as it will be a waste of resources. *See In re ARN LTD. Ltd. P'ship*, 140 B.R. 5, 14 (Bankr. D.D.C. 1992) (holding that the feasibility test was not met where the plan was dependent on conditions being satisfied and whether those conditions would be met was entirely uncertain); *In re Sis Corp.*, 120 B.R. 93, 95 (Bankr. N.D. Ohio 1990) ("A plan submitted on a conditional basis thwarts this legislative intent and therefore renders a plan infeasible.").

## IV. RESERVATION OF RIGHTS

21. Contrarian reserves any and all rights to (a) amend or supplement this Objection and otherwise take any additional or further action with respect to the E-Side Plan, and (b) be heard before this Court with respect to confirmation of the E-Side Plan.

## V. CONCLUSION

22. For the reasons set forth above, Contrarian respectfully requests that the Court deny the Debtors' request to confirm the E-Side Plan to the extent that the E-Side Plan's authorization of the payment of EFIH's First and Second Lien Noteholders' Makewhole Claims results in less than a full recovery of the value of the NOLs to EFH Corp. and its creditors.

Dated: November 15, 2016
Wilmington, Delaware

HOGAN MCDANIEL

By: /s/: *Garvan F. McDaniel*
Garvan F. McDaniel, (DE. #4167)
1311 Delaware Avenue
Wilmington, Delaware 19806
Telephone: (302) 656-7540
Facsimile: (302) 656-7599
Email: gfmcdaniel@dkhogan.com

– and –

KASOWITZ, BENSON, TORRES
 & FRIEDMAN LLP

David S. Rosner, Esq.
Andrew K. Glenn, Esq.
Daniel A. Fliman, Esq.
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800
Email: DRosner@kasowitz.com
           AGlenn@kasowitz.com
           DFliman@kasowitz.com
*Counsel to Contrarian Capital Management, LLC*