**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
| ENERGY FUTURE HOLDINGS CORP., *et al.*, | ) | Case No. 14-10979 (CSS) |
| *Debtors*. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**DECLARATION OF PHILIP D. ANKER**
**WITH RESPECT TO EXHIBITS FILED IN SUPPORT OF**
**OBJECTION OF DELAWARE TRUST COMPANY,**
**AS TRUSTEE FOR THE EFIH FIRST LIEN NOTES,**
**TO CONFIRMATION OF FOURTH AMENDED JOINT PLAN OF**
**<u>REORGANIZATION</u>**

I, PHILIP D. ANKER, hereby certify and declare as follows based upon my own personal information and knowledge:

1.      I am an attorney at law, duly admitted and in good standing to practice in the State of New York, the District of Columbia and pro hac vice before this Court, and I am a member of the law firm Wilmer Cutler Pickering Hale and Dorr LLP, 7 World Trade Center, 250 Greenwich Street, New York, New York 10007.

2.      I submit this declaration in support of the Objection of Delaware Trust Company, as Trustee for the EFIH First Lien Notes, to Confirmation of Fourth Amended Joint Plan of Reorganization.

3.      Attached hereto as Exhibit A is a true and correct copy of excerpts from the Transcript of the October 19, 2016 Deposition of Andy Wright.

4.      Attached hereto as Exhibit B is a true and correct copy of excerpts from the Transcript of October 18, 2016 Deposition of Anthony Horton.

5.      Attached hereto as Exhibit C is a true and correct copy of excerpts from the Transcript of October 13, 2016 Deposition of Paul Keglevic.

6.      Attached hereto as Exhibit D is a true and correct copy of excerpts from the Transcript of October 25, 2016 Deposition of Mark Hickson.

7.      Attached hereto as Exhibit E is a true and correct copy of excerpts from the Transcript of November 8, 2016 Deposition of David Ying.

8.      Attached hereto as Exhibit F is a true and correct copy of excerpts from the Expert Report of David Ying dated October 21, 2016.

DATED this 15th day of November, 2016.

Respectfully submitted,

  /s/ Philip D. Anker
Philip D. Anker
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-230-8800
Facsimile:  212-230-8888

## **Exhibit A**

**Transcript of the October 19, 2016 Deposition of Andy Wright excerpts**

**This exhibit has been redacted pursuant to the Confidentiality and Stipulated Protective Order, D.I. 9381-1 (the "Protective Order").  An unredacted copy of the exhibit is being filed under seal pursuant to the Protective Order.**

1              CONFIDENTIAL - ANDY WRIGHT

2    UNITED STATES BANKRUPTCY COURT

3    FOR THE DISTRICT OF DELAWARE

     -----------------------------------------x

4    In Re:

5    Energy Future Holdings Corporation, et al.,

6                     Debtors.

7    Chapter 11

8    Case No. 14-10979

9    Jointly Administered

10   -----------------------------------------x

11

12            * * *CONFIDENTIAL* * *

13         DEPOSITION OF ANDY WRIGHT

14            New York, New York

15            October 19, 2016

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 114065

1      CONFIDENTIAL - ANDY WRIGHT

2      ████████████    ██████████

██   ███   ████

██   ███   ██████████████████████

██   ████████████████████████████████

██         ████████████   ████████████

██   ███   ██████

8      Q.    Is it the debtors' understanding that

9      the plan provides for the allowance of the EFIH

10     first liens' reasonable fees and expenses?

11     A.    Reasonable and documented fees and

12     expenses, yes.

13     Q.    Under the terms of the plan, what

14     entity will pay allowed EFIH first lien fees and

15     expenses?

16     A.    Can you restate the question?

17     Q.    Sure.  Under the terms of the plan,

18     what entity will pay allowed EFIH first lien fee

19     and expense claims?

20     A.    EFIH.

21     Q.    The EFIH first lien trustee has filed

22     proofs of claims seeking payment of its fees and

23     expenses, correct?

24     A.    That's my understanding.

25     Q.    And the EFIH first lien trustee has

1    CONFIDENTIAL - ANDY WRIGHT

2    also provided documentation of its fees and

3    expenses to the debtors --

4         MR. McKANE:  Objection to form.

5    Q.    -- through July 2016?

6         MR. McKANE:  Objection to form.

7    A.    That's my understanding, yes.

8    Q.    Have the debtors filed an objection to

9    those claims for fees and expenses?

10   A.    I don't know.

11   Q.    Do the debtors intend to file an

12   objection to those claims?

13        MR. McKANE:  Mr. Wright, I have to

14        instruct you not to answer to the extent

15        that to do so would divulge attorney-client

16        communications regarding the debtors'

17        strategy in responding to unreasonable fees

18        and expenses.

19   Q.    What is the factual basis for the

20   debtors' objections to the EFIH first lien fees

21   and expenses?

22        MR. McKANE:  I'm going to object to

23        the form of the question.

24        To the extent that your understanding

25        as to what objections may or may not be

CONFIDENTIAL - ANDY WRIGHT

1

2    asserted in the future about the EFIH first

3    lien fees and expenses, you are not

4    authorized to disclose that information.

5    That is attorney work product, not just

6    attorney-client communication, and you're

7    not authorized to divulge the work product.

8    But if you have an understanding, separate

9    and apart from anything you have learned

10   from Kirkland or anybody else about the work

11   product for the basis for an objection that

12   is yet to be filed, go ahead and answer.

13        A.    Look, we have received your -- or,

14   received the trustee's bills.  They have not

15   been reviewed to date and no decision has been

16   made one way or the other.  The work that was --

17   those invoices will work themselves through the

18   process just like every other invoice will.

19        Q.    But as far as you're aware, no

20   objection has been filed yet to those fees and

21   expenses?

22        A.    I'm not aware of any objection to

23   date.

24        Q.    Are the debtors aware of any other

25   party that intends to object to our fee and

1          CONFIDENTIAL - ANDY WRIGHT

2    expense claims?

3              MR. McKANE:  I also will give you the

4         same instruction in terms of attorney-client

5         communications.  To the extent you know of

6         something solely through the discussions

7         with your lawyers, you're not authorized to

8         divulge it.

9              MR. ASHLEY:  I'll also object to the

10        form of the question.

11             THE WITNESS:  I'm not aware.

12   BY MS. GOSTIN:

13        Q.   As the debtors understand the plan, if

14   the first lien fee claims are allowed as of the

15   effective date but are not paid on the effective

16   date, does the plan provide that those claims

17   will accrue interest?

18             MR. McKANE:  Objection to form.

19             Are we supposed to assume going

20        forward when you use the term "fees," that

21        these are now approved reasonable and

22        documented fees?

23             MS. GOSTIN:  I can restate my

24        question.

25             MR. McKANE:  Okay.

1           CONFIDENTIAL - ANDY WRIGHT

2     BY MS. GOSTIN:

3          Q.    As the debtors understand the plan, if

4     the 1L fee claims are allowed as of the

5     effective date but are not paid on the effective

6     date, does the plan provide that those allowed

7     fee claims will accrue interest?

8               MR. McKANE:  Objection to the form of

9          the question.

10              Go ahead.

11         A.    I guess it depends on how the Court

12    allows the claim.  I don't know.  If you could

13    point me to a place in the plan about that, I'm

14    happy to look at it, but I don't know off the

15    top of my head.

16         Q.    We'll come back to that.

17              So we discussed before whether the

18    allowance of the make-whole claims would reduce

19    recoveries for EFIH unsecured creditors.  So I

20    have the same question with respect to our fee

21    claims.

22              As the debtors understand the plan,

23    would allowance of the EFIH 1L fee claims,

24    either before or after the effective date,

25    affect recoveries for EFIH unsecured creditors?

1                CONFIDENTIAL - ANDY WRIGHT

2        A.    No.

3        Q.    And that is regardless of the amount

4   in which the EFIH first lien fee claims are

5   allowed?

6             MR. McKANE:   Objection to the form of

7        the question.

8        A.    The answer is the same.

9   ▮▮    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮   ▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮    ▮▮   ▮▮▮▮▮▮▮▮▮

13       Q.    The EFIH first lien notes are

14  currently secured by a lien on substantially all

15  the assets of EFIH; is that correct?

16       A.    Correct.

17       Q.    And the claims of the EFIH first liens

18  are currently oversecured; is that correct?

19       A.    I think that's a fair

20  characterization, yes.

21       Q.    And the first lien notes currently

22  have priority over the second lien notes; is

23  that correct?

24       A.    As a legal matter, yes.

25       Q.    The plan the Bankruptcy Court

1                CONFIDENTIAL - ANDY WRIGHT
2   confirmed last year -- I'll refer to that as the
3   Hunt plan -- provided that claims based on or
4   derived from the EFIH first lien notes would be
5   left unimpaired; is that right?
6            MR. McKANE:  Objection to form.
7            Go ahead.
8       A.    I think that's right, yes.
9       Q.    Is it the debtors' understanding that
10  claims based on or derived from the EFIH first
11  lien notes are impaired under the current plan?
12      A.    Yes, that's what it says.
13      Q.    How does the current plan impair or
14  alter the rights of the EFIH first lien notes?
15           MR. McKANE:  Objection to form.
16           You can provide your understanding.
17      A.    My understanding is that the B3 claims
18  are impaired because the liens are being
19  stripped.
20      Q.    Does the plan impair or alter the
21  rights of the EFIH first lien noteholders or
22  trustee other than because the liens are being
23  stripped?
24           MR. McKANE:  Again, you can provide
25      your understanding.

1                  CONFIDENTIAL - ANDY WRIGHT

2       A.    My understanding is no, it's the lien

3   strip is which -- is providing for the

4   impairment.

5       Q.    And that is the only basis for the

6   impairment?

7            MR. ASHLEY:  I couldn't hear the

8       question.

9       Q.    Sorry.  I said, and that is the only

10  basis for the impairment?

11           MR. McKANE:  Objection to form.  It

12      calls for a legal conclusion.

13           You can provide your understanding.

14      A.    That's my understanding, but there may

15  be other technical reasons.  I'm not a

16  bankruptcy lawyer, so I'd have to rely on the

17  advice of K&E when it comes to what determines

18  whether something is impaired or unimpaired, but

19  that's one of the reasons it is unimpaired or

20  impaired is because the liens are being stripped

21  under the plan.

22      Q.    And I guess putting aside sort of the

23  legal definition of impairment, you're not aware

24  of any other provisions of the plan that alter

25  the rights of the first lien noteholders or

1                CONFIDENTIAL - ANDY WRIGHT

2    trustee?

3          MR. ASHLEY:  Objection to the form.

4          MR. McKANE:  Objection to the form.

5      Same.  Calls for a legal conclusion.

6          Go ahead.

7      A.    Well, for instance, and you may ask me

8    about this further, but the indenture, the

9    collateral trust agreement, other -- the

10   agreements that underlie the first lien

11   obligations are being canceled at the time of

12   the effective time of the plan.  So that's

13   altering, I guess, the rights at least with

14   respect to those portions of those agreements

15   that are being canceled.

16     Q.    The Hunt plan provided that the liens

17   securing the EFIH first lien notes would remain

18   in place until all claims under those notes had

19   either been disallowed by final order or paid in

20   full, except that the liens would be

21   subordinated to the liens securing the exit

22   financing; is that right?

23     A.    I don't have -- I don't know for sure

24   that that's exactly how it worked.  It sounds

25   right to me, but if you would like to show me

1                 CONFIDENTIAL - ANDY WRIGHT
2    the Hunt plan, I'm happy to look at it and
3    confirm it for you.
4         Q.    Okay.  We'll take a look.
5               The EFIH first liens also have a claim
6    for accrued but unpaid interest; is that right?
7         A.    Correct.
8         Q.    And is it the debtors' understanding
9    that that claim is allowed under the plan?
10        A.    If the Bankruptcy Court says so, yes.
11        Q.    What do you mean by if the Bankruptcy
12   Court says so?
13              MR. McKANE:  Objection to form.
14              Go ahead.
15        A.    Well, if in the confirmation order it
16   allows that claim, yes.
17        Q.    So when you said if the Bankruptcy
18   Court says so, did you mean if the plan is
19   confirmed?
20        A.    Correct.
21        Q.    And is it the debtors' understanding
22   that under the terms of the plan that claim will
23   be paid on or as soon as reasonably practicable
24   after the effective date?
25        A.    Yes.

1              CONFIDENTIAL - ANDY WRIGHT

2      Q.    And is it the debtors' understanding

3   that under the terms of the plan that claim will

4   accrue interest to the extent it is not paid on

5   the effective date?

6      A.    Yes.

7      Q.    So before I had asked about whether

8   the EFIH first lien fee claims would also accrue

9   interest to the extent they are allowed but not

10  paid on the effective date.

11          As you just told me, our interest

12  claim will accrue interest to the extent it is

13  not paid on the effective date.  So, going back

14  to the fee claims, to the extent our fee claims

15  are allowed but unpaid on the effective date,

16  will they accrue interest under the terms of the

17  plan?

18          MR. McKANE:  Objection to form.  I

19      think it misstates prior testimony, and

20      also, I have to instruct you not to answer

21      to the extent your understanding as to the

22      application of interest to a fee component

23      of a claim is something you only understand

24      through your discussions with counsel.

25          MR. ASHLEY:  I'll join the objection.

1                    CONFIDENTIAL - ANDY WRIGHT

2              THE WITNESS:  Yeah, I -- I won't

3       answer that question.

4    BY MS. GOSTIN:

5       Q.    As far as the debtors are aware, does

6    the term -- do the terms of the plan provide for

7    fee claims of the EFIH first lien trustee that

8    are allowed but not paid on the effective date

9    to accrue interest?

10             MR. McKANE:  Object to form.

11             You can give your understanding.

12      A.    Can you restate the question?  I'm not

13   sure I --

14      Q.    Sure.  As the debtors understand the

15   plan, do the terms of the plan provide for the

16   EFIH first lien fee claims that are allowed but

17   not paid on the effective date to accrue

18   interest?

19             MR. McKANE:  Object.  He asked you to

20        restate the question.  You just reasked the

21        question.  He's asking you to reformulate

22        the question in a way that maybe he can

23        understand it better.

24      A.    Well, I guess I'm -- I'm a bit

25   confused because I think you're asking me the

1                    CONFIDENTIAL - ANDY WRIGHT

2    same question just a different way.  And as I

3    said earlier, I don't know what the plan says

4    with respect to fees -- or interest on unpaid

5    fees.  I don't know.

6            If you would like to show me in the

7    plan, I'm happy to look at it, give you my

8    interpretation.

9        Q.    So, going back to the accrued but

10   unpaid interest claim that we were talking about

11   before.

12       A.    Yes.

13       Q.    As the debtors understand the plan,

14   under the terms of the plan, if that interest

15   claim is not paid in full on the effective date,

16   will the liens securing that claim remain in

17   place post-emergence?

18       A.    No.

19       Q.    Suppose that on the effective date the

20   Bankruptcy Court's rulings disallowing the 1L

21   make-whole claims have not been reversed but our

22   appeal is still pending.

23       A.    Uh-huh.

24       Q.    Is it the debtors' understanding that

25   the plan provides that in that scenario the

1             CONFIDENTIAL - ANDY WRIGHT

2    liens securing the 1L make-whole claim would be

3    extinguished upon emergence?

4         A.    So, in your example, NextEra has

5    waived the condition because the condition

6    hasn't been satisfied, there's still disallowed

7    make-whole claims, and we have otherwise gone

8    effective?

9         Q.    So in my scenario --

10        A.    Yeah.

11        Q.    -- the Bankruptcy Court's order

12   disallowing the claims have not been reversed.

13        A.    Okay.

14        Q.    Our appeal is simply still pending.

15        A.    October.

16        Q.    We're essentially still in the same

17   situation we are today.

18        A.    Okay.

19        Q.    So my question is, in that scenario,

20   does the plan provide for the liens securing our

21   make-whole claim to be extinguished upon

22   emergence?

23        A.    Yes.

24        Q.    So if the first lien make-whole claim

25   were then to be allowed after the effective

1                    CONFIDENTIAL - ANDY WRIGHT

2    date, that claim would not be secured by a lien,

3    correct?

4        A.    Correct.

5        Q.    Under the terms of the plan, if the

6    EFIH first lien and second lien make-whole

7    claims are both allowed after the effective

8    date, will the EFIH first liens have any

9    priority over the EFIH second liens?

10            MR. McKANE:  Objection to form.  Calls

11       for speculation.

12       A.    They won't have their current liens.

13   Whether or not they have priority would be a

14   legal question at the time.

15       Q.    So now I'm going to have a different

16   scenario.

17       A.    Okay.

18       Q.    Suppose that before the effective date

19   the Third Circuit were to reverse and to hold

20   that the EFIH first lien make-whole claim is to

21   be allowed --

22       A.    Okay.

23       Q.    -- but the debtors were to seek

24   rehearing in the Third Circuit or cert. in the

25   Supreme Court, and that is pending as of the

1                   CONFIDENTIAL - ANDY WRIGHT

2     effective date.

3                   Under the terms of the plan, in that

4     scenario, would the liens securing the first

5     lien make-whole claim be extinguished upon

6     emergence?

7                   MR. ASHLEY:  Objection to the form.

8                   MR. McKANE:  Object to the form.

9          Calls for a legal conclusion and

10         speculation.

11         A.    When -- if the effective date occurs,

12    the liens will be released.

13         Q.    If the make-whole claim is allowed

14    before the effective date but is not paid on the

15    effective date, is it the debtors' understanding

16    that under the terms of the plan the liens will

17    still be released?

18         A.    Yes.

19         Q.    And are there any circumstances under

20    the terms of the plan in which the liens

21    securing the EFIH first lien notes will not be

22    extinguished upon emergence?

23                   MR. ASHLEY:  Objection to form.

24                   MR. McKANE:  Same objection.

25         A.    No.

1              CONFIDENTIAL - ANDY WRIGHT

2    is Unimpaired under the Plan."  Do you see that?

3         A.    Yes.

4         Q.    Why did the treatment of the claims

5    based on or derived from the EFIH first lien

6    notes change from "unimpaired" under Wright

7    Exhibit 4 to "impaired" under the current plan?

8              MR. ASHLEY:  Objection to form.

9              MR. McKANE:  Same objection.

10             Go ahead, you can answer the question.

11        A.    Look, my understanding is because the

12   liens are being stripped.

13

1              CONFIDENTIAL - ANDY WRIGHT



## Exhibit B

**Transcript of October 18, 2016 Deposition of Anthony Horton excerpts**

**This exhibit has been redacted pursuant to the Confidentiality and Stipulated Protective Order, D.I. 9381-1 (the "Protective Order").  An unredacted copy of the exhibit is being filed under seal pursuant to the Protective Order.**

1      PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

2     UNITED STATES BANKRUPTCY COURT

3     FOR THE DISTRICT OF DELAWARE

      ----------------------------------------x

4     In Re:

5     Energy Future Holdings Corporation, et.,

6                     Debtors.

7     Chapter 11

8     Case No. 14-10979

9     Jointly Administered

10    ----------------------------------------x

11

12   * * *(PAGES 89-93 MARKED HIGHLY CONFIDENTIAL)* * *

13            DEPOSITION OF ANTHONY HORTON

14                New York, New York

15                October 18, 2016

16

17

18

19

20

21

22

23    Reported by:

24    KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25    JOB NO. 114064

1    PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

2         that's why it's going to create a lot of

3         confusion with this witness.

4    BY MR. GRINGER:

5         Q.    Okay.  Well, let me ask both questions

6    then to respect that.

7         A.    Sure.  No worries.

8         Q.    Do the debtors expect that -- I'm

9    assuming that we're now in a scenario in which

10   the plan has gone effective.

11        Do the debtors expect that the

12   reorganized EFIH entity will be able to satisfy

13   the full amount of the EFIH first lien

14   make-whole claim if it is allowed?

15        A.    Do you mind repeating that?

16        Q.    Sure.  In a scenario in which the plan

17   has gone effective, do the debtors expect that

18   reorganized EFIH will be able to satisfy the

19   full amount of the EFIH first lien make-whole

20   claim if it is allowed?

21        A.    Absolutely.

22        Q.    And in a scenario in which both the

23   EFIH first and second lien make-whole claims are

24   allowed, do the debtors expect that reorganized

25   EFIH will be able to satisfy the full amount of

1   PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

2   determines that they must be paid, so the

3   scenario in which the first, second lien

4   make-whole claims are allowed the PIK make-whole

5   claim is allowed and must be paid, do the

6   debtors believe that the plan is feasible?

7           MR. McKANE:  Can I ask a clarifying

8       question?  Are you asking post-emergence?

9       Because feasibility is obviously a post-pay,

10      looking-forward analysis, right?  You have

11      to have emerged and then you evaluate.  So

12      I'm assuming you're asking the question

13      after the emergence.

14          MR. GRINGER:  Correct.  Sorry.

15  BY MR. GRINGER:

16      Q.    With that clarification?

17      A.    I believe that this is going to be an

18  extremely well-capitalized company and that

19  there will be -- whether the first lien, second

20  lien and the PIK make-wholes are made and are

21  allowed, the plan will be feasible.

22      Q.    Changing gears slightly, is it your

23  understanding, Mr. Horton, that the EFIH first

24  lien notes today are secured by a first priority

25  lien on substantially all of the assets of EFIH,

1    PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON



<u>**Exhibit C**</u>

**Transcript of October 13, 2016 Deposition of Paul Keglevic excerpts**


**This exhibit has been redacted pursuant to the Confidentiality and Stipulated Protective Order, D.I. 9381-1 (the "Protective Order").  An unredacted copy of the exhibit is being filed under seal pursuant to the Protective Order.**

1

2              UNITED STATES BANKRUPTCY COURT

3               FOR THE DISTRICT OF DELAWARE

4    ------------------------------------x

5    In Re:

6    Energy Future Holdings Corporation,

7    et al.,

8                          Debtors.

9

10   Chapter 11

11   Case No. 14-10979

12   Jointly Administered

13   ------------------------------------x

14        Contains Highly Confidential Portions

15         Bound Separately - Pages 113-116

16          DEPOSITION OF PAUL KEGLEVIC

17               New York, New York

18               October 13, 2016

19

20

21

22   Reported by:

23   MARY F. BOWMAN, RPR, CRR

24   JOB NO. 113993

25

Contains Highly Confidential Portions Bound Separately

1                        Keglevic

2    that if the appeal is successful, it brings

3    back the question of whether, in fact, it

4    is owed and how much.

5         Q.    Let me rephrase the question.

6    And again, I'm just asking for your

7    understanding.

8              Do you understand that if at the

9    completion of the legal proceedings

10   regarding the EFIH first lien make whole

11   claim there is a final order allowing that

12   claim, that claim will be paid pursuant to

13   the terms of the plan?

14        A.    Yes.

15        Q.    And do you understand that if

16   pursuant -- do you also understand that if

17   at the completion of the legal proceedings

18   regarding the EFIH first lien make whole

19   claim there is a final order allowing

20   interest on that claim, that interest will

21   be paid under the terms of the plan?

22        A.    Yes, the claim will be paid as

23   it's outlined by whatever final order a

24   court issues.

25        Q.    So if there is a final order

Contains Highly Confidential Portions Bound Separately

1                          Keglevic

2    providing for payment of the principal

3    amount of the claim, it will be paid,

4    right?

5         A.    Correct.

6         Q.    And if there is a final order

7    providing for payment of interest on the

8    claim, that will be paid, right?

9         A.    That's my understanding.

10        Q.    And it is also your understanding

11   that if there is a final order providing

12   for compounding of interest, that is

13   interest on interest, that will be paid,

14   right?

15             MR. McKANE:   Objection to form.

16             Go ahead.

17        A.    Yes.

18        Q.    And you also understand that the

19   EFIH first liens have a claim for fees and

20   costs they have incurred, right?

21        A.    I'm not that familiar with their

22   claim, but that wouldn't surprise me.

23        Q.    And is it your understanding that

24   under the plan, if those fees are allowed,

25   they will have to be paid pursuant to the

Contains Highly Confidential Portions Bound Separately

1                         Keglevic

2       Q.     Do you have any sense, ballpark?

3       A.     I don't recall.

4       Q.     Mr. Keglevic, I'm going to try to

5   move this along, but if you need me to get

6   more granular, I will.

7             You may recall that I once took

8   your deposition in connection with the Hunt

9   plan, and I asked you a series of questions

10  regarding the feasibility of the plan, and

11  in particular regarding the ability of

12  reorganized EFIH following the effective

13  date of the plan to pay my clients' make

14  whole claim and the second liens' make

15  whole claim and the PIKs' make whole claim,

16  plus interest thereon if those -- if that

17  was the result of the litigation.

18            And I want to ask you now to

19  focus on this plan.  You know that one of

20  the requirements for confirmation of a plan

21  is that the plan be feasible, right, sir?

22      A.     I do.

23      Q.     Do you have any doubt that if

24  the -- if following consummation of this

25  plan, my clients' make whole is allowed,

Contains Highly Confidential Portions Bound Separately

1                       Keglevic

2    principal plus interest plus compounded

3    interest, the second liens' make whole is

4    allowed, principal plus interest plus

5    compounded interest, the PIKS' make whole

6    is allowed, including interest and

7    compounded interest, do you have any doubt

8    that reorganized EFIH will be able to

9    satisfy those liabilities?

10       A.    No.  In fact, they are in a --

11   your claims are in a better position under

12   this plan than they were under the Hunt

13   plan by virtue of this plan not

14   incorporating 5.4 billion dollars of debt,

15   secured debt at reorganized EFIH.

16       Q.    Under the Hunt plan, while the

17   DIP would have been paid off, it would have

18   been refinanced with new debt at like

19   amount, right?

20       A.    That's correct.

21       Q.    Whereas under this plan, the

22   first lien DIP debt will be taken out with

23   equity, with cash, right?

24       A.    That's correct.

25       Q.    Do you have a -- let's back up.

Contains Highly Confidential Portions Bound Separately

1                        Keglevic

2    are they not?

3        A.    Yes.

4        Q.    Do you have an understanding,

5    assuming that there are outstanding

6    disputed claims as of the effective date,

7    whether the liens will or will not remain

8    in place?

9        A.    Yes.  The plan provides that they

10   will be stripped.  I -- obviously, just to

11   support my prior -- I don't consider that

12   impairment, but I am aware of that element.

13       Q.    OK.  Let me ask you if you could

14   look back at Exhibit Number 3.  And can I

15   ask you to turn to, on the top it is page

16   91 of 126.  Bottom, it is page 89.

17            MR. McKANE:  That's 1.

18       Exhibit 1.  DS is 3, the plan is 1.

19            MR. ANKER:  I want the disclosure

20       statement.  I'm sorry.

21            MR. McKANE:  Those end in 212.

22       Q.    I'm on the wrong thing, but I'll

23   get to it.  Let me get you the right page,

24   I apologize.

25            Page 35 of 212, 26 on the bottom.

Contains Highly Confidential Portions Bound Separately

1                    Keglevic

2       A.    I'm there.

3       Q.    And do you see footnote -- do you

4  see that for class B3, the first lien note

5  claims, it provides for 100 percent

6  distribution?  Do you see that?  The box?

7       A.    Yes.

8       Q.    Then there is a footnote.  Do you

9  see it?

10       A.    19, yes.

11       Q.    Right.

12             And the footnote says, "Although

13  holders of allowed EFIH first lien claims

14  are receiving 100 percent distribution of

15  their allowed claims, holders of allowed

16  EFIH first lien note claims are impaired

17  because certain of their legal and

18  equitable rights are being altered under

19  the plan.  As set forth in the plan,

20  reorganized EFIH will pay in full and cash

21  any make whole claim asserted by holders of

22  EFIH first lien note claims that are

23  allowed by final order after the EFH

24  effective date, but for the avoidance of

25  doubt, the liens on the collateral securing

Contains Highly Confidential Portions Bound Separately



Keglevic

Contains Highly Confidential Portions Bound Separately



Keglevic

Contains Highly Confidential Portions Bound Separately

1                      Keglevic

2          I think your clients are in a

3    better position, from my financial

4    expertise, than you were under the Hunt

5    plan.

6      Q.    I actually didn't ask you,

7    Mr. Keglevic, about whether my clients were

8    in a better position.  I simply asked you,

9    from the perspective of the debtors, am I

10   correct that the debtors believed a plan

11   was financially feasible in which the liens

12   remained in place securing 5.4 billion plus

13   the contingent claims of the EFIH first

14   liens and the second liens?

15     A.    We did.  And my prior answer

16   explained to you why we believed this plan

17   without the liens is still financially

18   feasible.

19     Q.    And if my client -- if this plan

20   goes effective and my client gets a

21   judgment for its make whole, with or

22   without interest, it will simply at that

23   point be an unsecured creditor of the

24   reorganized debtors, right?

25          MR. McKANE:

Contains Highly Confidential Portions Bound Separately

1                        Keglevic

2        A.    Well, I don't know legally.  It

3   won't have liens, but it will certainly

4   have a confirmation order that requires

5   payment, which I think is pretty

6   substantial, and potentially different than

7   a whole bunch of other unsecured creditors,

8   trade creditors, et cetera, and I would

9   think it gives you a route of

10  enforceability that doesn't exist for many

11  unsecured creditors.

12             So I'm not a lawyer, but I see it

13  as being slightly improved over the

14  traditional unsecured creditor.

15       Q.    Will we have any priority over

16  the second liens if the second liens get a

17  judgment for their make whole at the same

18  time?

19       A.    No.

20       Q.    And today, the first liens have

21  priority over the second liens, do they

22  not?

23       A.    They do.

24

Contains Highly Confidential Portions Bound Separately



## **Exhibit D**

**Transcript of October 25, 2016 Deposition of Mark Hickson excerpts**

**This exhibit has been redacted pursuant to the Confidentiality and Stipulated Protective Order, D.I. 9381-1 (the "Protective Order").  An unredacted copy of the exhibit is being filed under seal pursuant to the Protective Order.**

1

2              UNITED STATES BANKRUPTCY COURT

3                FOR THE DISTRICT OF DELAWARE

4      -------------------------------------x

5      In Re:

6      Energy Future Holdings Corporation,

7      et al.,

8                               Debtors.

9

10     Chapter 11

11     Case No. 14-10979

12     Jointly Administered

13     -------------------------------------x

14              *CONTAINS CONFIDENTIAL AND

15              HIGHLY CONFIDENTIAL PORTIONS*

16              DEPOSITION OF MARK HICKSON

17                   New York, New York

18                   October 25, 2016

19

20

21

22     Reported by:

23     MARY F. BOWMAN, RPR, CRR

24     JOB NO. 114645

25



1                   Hickson - CONFIDENTIAL

2    ███████████████████████

     █      ██        ████████

     █      ██        ██████████████████████

     █       ███████████████████████████████████

     █       ███████████████████████████

     █       ████████████████████████████████████

     █       ██████████    ██████████████████████████████

     █       ████████████████████████████████

     ██      ███████████████████████████████████████

     ██      ██████████████████████████████

     ██      ██████████

13        Q.    And do you believe that

14   reorganized EFIH would be able to satisfy

15   those claims without reducing payments to

16   EFIH unsecured creditors?

17             MR. BALL:  Objection, form.

18             MR. STEPHANY:  Objection to form.

19             MR. BALL:  Objection, calls for

20        speculation.

21        A.    Now, you're getting in -- I think

22   you're getting into -- we first assumed

23   they -- an effective date, but now you want

24   me to assume recoveries of the PIKs at the

25   effective date and make an assumption or

1                    Hickson - CONFIDENTIAL

2    scenario where you're asking  me to assume

3    closing and therefore to assume all

4    conditions to close have been satisfied or

5    waived and assume the 900 million.  So be

6    determined independently of the 900 million

7    dollars total of make-whole claims.

8

1          Hickson - CONFIDENTIAL





1        Hickson - CONFIDENTIAL

15       Q.    Under the terms of the plan, what

16   will happen to the liens securing the EFIH

17   first lien notes upon emergence?

18       A.    My understanding is that the

19   liens will be released on or prior to the

20   effective date.

21       Q.    Under the terms of the plan, are

22   there any circumstances in which the liens

23   securing the EFIH first lien notes will not

24   be released upon emergence?

25            MR. STEPHANY:   Objection to form.

1          Hickson - CONFIDENTIAL

2          MR. BALL:  Objection to form.

3     A.     Not that I'm aware of, no.



1                  Hickson - CONFIDENTIAL







Hickson - CONFIDENTIAL

## Exhibit E

**Transcript of November 8, 2016 Deposition of David Ying excerpts**

**This exhibit has been redacted pursuant to the Confidentiality and Stipulated Protective Order, D.I. 9381-1 (the "Protective Order").  An unredacted copy of the exhibit is being filed under seal pursuant to the Protective Order.**

CONTAINS CONFIDENTIAL PORTION

1

2           UNITED STATES BANKRUPTCY COURT

3             FOR THE DISTRICT OF DELAWARE

4    ------------------------------------x

5    In Re

6    Energy Future Holdings Corporation,

7    et al.,

8                        Debtors.

9

10   Chapter 11

11   Case No. 14-10979

12   Jointly Administered

13   ------------------------------------x

14

15       *CONTAINS CONFIDENTIAL PORTION*

16        DEPOSITION OF DAVID Y. YING

17            New York, New York

18            November 8, 2016

19

20

21

22

23

24   Reported by: MARY F. BOWMAN, RPR, CRR

25   Job No: 115148

1                    D. Ying - Confidential

2    claim, you also assume accrued interest

3    thereon, is that correct?

4         A.    Yes.

5         Q.    And you're assuming semi-annual

6    compounding, is that correct?

7         A.    I believe so, yes.

8         Q.    Is it correct that in each of the

9    four scenarios you look at page 10, the --

10   all make-whole claims could be set -- could

11   likely be satisfied by NextEra and

12   reorganized EFIH, correct?

13                MR. STEPHANY:  Objection, form.

14        A.    The total dollar amounts could

15   easily be met by NextEra and/or EFIH, yes.

16        Q.    Do you also understand that the

17   EFIH first and second liens have a claim

18   for legal fees associated with enforcing

19   what we contend are EFIH's obligations to

20   pay the make-whole?

21        A.    I am not aware of the issue with

22   respect to fees.

23        Q.    And your report doesn't account

24   for those fees, correct?

25        A.    We only address the make-whole

CONTAINS CONFIDENTIAL PORTION



1                    D. Ying - Confidential

2    sufficient creditworthiness to raise

3    third-party debt financing, correct?

4        A.    I do.

5

CONTAINS CONFIDENTIAL PORTION



Page 41

1              D. Ying - Confidential

## Exhibit F

**Expert Report of David Ying dated October 21, 2016 excerpts**


**This exhibit has been redacted pursuant to the Confidentiality and Stipulated Protective Order, D.I. 9381-1 (the "Protective Order").  An unredacted copy of the exhibit is being filed under seal pursuant to the Protective Order.**

*Highly Confidential*

# David Ying's Expert Report

**October 21, 2016**

EVERCORE

Highly Confidential

Expert Report

EVERCORE

10