**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Energy Future Holdings Corp., *et al.*,[1] | ) | Case No. 14-10979 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Hearing Date: December 1, 2016 at 10:00 a.m.** |
|  | ) | **Objection Deadline: November 15, 2016 at 3:00 p.m.** |
|  | ) | **Re: Docket No. 9612** |

**LIMITED OBJECTION OF THE AD HOC GROUP OF TCEH UNSECURED**
**NOTEHOLDERS TO CONFIRMATION OF THE FOURTH AMENDED JOINT**
**PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP.,**
***ET AL.*, PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Ad Hoc Group of TCEH Unsecured Noteholders (the "Ad Hoc Group") hereby files

its limited objection to confirmation of the *Fourth Amended Joint Plan of Reorganization of*

*Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I.

9612] (the "Plan") as it relates to the EFH/EFIH Debtors.[2]   The Ad Hoc Group respectfully

represents as follows:

**PRELIMINARY STATEMENT**

Pursuant to the now-consummated T-side plan, holders of T-side unsecured claims hold

the beneficial interest in substantially all of the prepetition equity of EFH Corp.  Those equity

interests are being cancelled under the Plan without distribution.  Despite that economic reality,

the Ad Hoc Group has patiently stood back, without protest, and allowed the EFH/EFIH Debtors

---

[1]      The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of
the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these
chapter 11 cases, for which joint administration has been granted, a complete list of the debtors and the last four
digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be
obtained on the website of the debtors' claims and noticing agent at http://efhcaseinfo.com.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in
the Plan or the Amended and Restated Plan Support Agreement, dated September 19, 2016 [D.I. 9584-4] (the "E-
side PSA"), as applicable.

to pursue their long-awaited emergence from chapter 11 pursuant to the Plan.  Indeed, if that Plan had any sponsor other than NextEra Energy, Inc. ("NextEra"), the Ad Hoc Group would have no objection at all.  But NextEra *is* the Plan's sponsor, and as set forth herein NextEra *is* overreaching in an attempt to whitewash what the Ad Hoc Group believes may have been substantial efforts to frustrate consummation of the *Sixth Amended Joint Plan of Reorganization of Energy Future Holdings Corp.,* et al., *Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 7285-1] (the "Hunt Plan").

Almost exactly one year ago, NextEra filed a *Statement of NextEra Energy, Inc. with Respect to Pending Confirmation Matters and Feasible Alternative Restructuring* [D.I. 7028] (the "Statement") on the docket of the Chapter 11 Cases informing all parties-in-interest that it was willing to consummate a transaction with the Debtors that did not utilize a REIT structure but nonetheless portended to pay E-side creditors in full or otherwise unimpair them.  At first blush, given its filing during the confirmation hearing on the Hunt Plan, the Statement appeared to have been intended to influence certain of the Debtors' creditors to press their confirmation objections or to have the Court block the Hunt Plan as being not feasible.  Perhaps.  But the Statement may have had another far more harmful effect in another jurisdiction.

As the Ad Hoc Group informed the Court repeatedly in the run up to confirmation of the Hunt Plan, the prospect of an alternate, less complicated, more traditional disposition of the Debtors' interests in Oncor was always going to impact severely and negatively the likelihood of the Hunt Plan garnering regulatory approval in Texas.  NextEra knew this, just as it knew that it was prohibited by Texas law from having any direct ex parte contact with commissioners of the Public Utility Commission of Texas (the "PUC") while the application for approval of the Hunt Plan transaction was pending before the PUC.

Based on the limited information that it has uncovered to date, the Ad Hoc Group believes that NextEra may have intended to use the Court's docket as a means of communicating directly with the PUC, which it knew was actively monitoring the Court's docket, regarding an alternate structure that might convince the PUC commissioners to pass on the Hunt Plan application.  All NextEra had to say was that it was ready, willing and able to close into a traditional structure and still pay all of the EFH/EFIH Debtors' creditors in full.[3]

From the Ad Hoc Group's perspective, the reasons why the Hunt Plan did not receive PUC approval should be entirely irrelevant to the Court's approval of the present Plan.  NextEra, however, is insisting otherwise.  As part of the Plan, it is seeking to have the Court bless **all** of its prior conduct in the Chapter 11 Cases, even if, in fact, it actively and illegally interfered with the consummation of the Hunt Plan and destroyed billions of dollars of distributable value in a fervent pursuit of Oncor.

As we had previously discussed with the Court, NextEra has insisted that the order confirming the Plan include a finding that NextEra has acted in good faith "in all respects in connection with the Chapter 11 Cases."  Although NextEra was aware of the Ad Hoc Group's objection to such a finding for over a month, counsel for the Ad Hoc Group was informed at noon today that NextEra has agreed to eliminate any such proposed finding from the confirmation order,[4] but that NextEra is unwilling to modify or eliminate other plan provisions

---

[3]    In that regard, it is somewhat remarkable that all of the E-side creditors who are now receiving less than payment in full seem willing to release NextEra from its prior commitments made in the Statement.

[4]    The Ad Hoc Group objected to such a proposed finding as it would have applied to conduct in connection with the Hunt Plan – not just the Plan – and is beyond what is permitted under section 363(m) of the Bankruptcy Code.  See 11 U.S.C. § 363(m) (providing that reversal or modification on appeal of an authorization of a sale under section 363(b) does not affect the validity of the sale "to an entity that **purchased** . . . such property in good faith") (emphasis added); In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986) ("'The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct **in the course of the sale proceedings**.'") (emphasis added) (citation omitted); Sheehan v. Dobin, Civ. Action No. 10-5054 (FLW), 2011 U.S. Dist. LEXIS 46004, at *9 (D.N.J. Apr. 28, 2011) ("Typically, 'good faith' involves the integrity of the purchaser **in the course of conduct at the sales proceedings**.") (emphasis added) (citation omitted).  At noon today, the Debtors informed

3

that would impact claims and Causes of Action the members of the Ad Hoc Group may have

against NextEra, its Affiliates and their agents.  More specifically, as set forth below, NextEra

has insisted that as a condition to consummation of the Plan the Court (1) must provide all of its

officers, directors, employees, agents and affiliates with non-consensual third-party releases for

any and all conduct relating to the Chapter 11 Cases, and (2) must provide NextEra itself with a

non-consensual third-party release of any and all claims relating to the Chapter 11 Cases other

than those specifically relating to "the Debtors' pursuit of regulatory approvals" under the Hunt

Plan (although, in fact, it was Oncor Electric that sought regulatory approval from the PUC, not

the Debtors).

Consistent with its desire not to impact consummation of the T-side "plan B" or with

confirmation of the E-side Plan, the Ad Hoc Group has maintained a light presence and has taken

extremely limited discovery to determine whether the foregoing relief being requested by

NextEra is appropriate.  Most notably, the Ad Hoc Group deposed Mr. Mark Hickson, NextEra's

lead officer on the Oncor acquisition.  NextEra has subsequently designated substantially all of

the questions and Mr. Hickson's answers in that eighty-page deposition as "Confidential."

Indeed, despite numerous meet and confers with its counsel, NextEra has refused to de-designate

any of that testimony, even though it covers non-confidential matters such as:

- Which officers of NextEra were placed in charge of the Oncor acquisition beginning in 2014;

- How those officers learned of the Hunt Plan, which halted their acquisition plans;

- What those officers' initial reactions were to the Hunt Plan that would have paid all of NextEra's $45 million of EFIH PIK Note claims (see D.I. 6898 ("NextEra beneficially owns over $45 million in principal amount of EFIH PIK Notes.")) in full with post-petition interest;

- How it came to be that a NextEra subsidiary, Gexa Energy, LP ("Gexa"), filed and

counsel for the Ad Hoc Group that NextEra has agreed to eliminate any such proposed finding from the confirmation order.

actively prosecuted an objection to the Hunt Plan application before the PUC, including a specific objection to a proposed income tax allowance in Oncor Electric's rates;

- What control NextEra had over the operations and funding of Gexa and over any decision to prosecute a PUC objection to the Hunt Plan application;

- Why NextEra filed the Statement on the Court's docket;

- What NextEra knew about the potential effect of the Statement on approval of the Hunt Plan transactions;

- What NextEra knew about the PUC's monitoring of the Court's docket; and

- What NextEra knew about the prohibition in Texas on making ex parte contacts with PUC commissioners regarding an active application process.

None of those matters are confidential within the meaning of section 107 of the Bankruptcy Code, and none of the testimony given should be sealed if the Ad Hoc Group's limited objection needs to be prosecuted at the confirmation hearing. The Court need not, however, address all of the factual details surrounding what NextEra may or may not have done to frustrate consummation of the Hunt Plan in order to obtain its prize. As set forth below, NextEra's present attempt, by way of non-consensual third-party releases, to insulate itself and its Affiliates from a potential later action regarding any such attempts are objectionable as a matter of law.

## LIMITED OBJECTION

**The Non-Consensual Release of Claims and Causes of Action of the Original Plan Sponsors and the Holders of TCEH Unsecured Notes Against NextEra and Its Affiliates Is Impermissible.**

1. The members of the Ad Hoc Group (in their capacities as Original Plan Sponsors[5] (i.e., the Equity Investors and Backstop Purchasers (each as defined in the Hunt Plan)) and Holders of TCEH Unsecured Notes) have not consented to the release of any of their claims or

---

[5]   The "Original Plan Sponsors" include the Equity Investors and the Backstop Purchasers and, on and after the date that the Merger and Purchase Agreement (as defined in the Hunt Plan) was executed by the parties thereto, and where consent, approval or waiver of the Original Plan Sponsors was required under or in connection with the Hunt Plan, Ovation Acquisition I, L.L.C. ("Ovation"). See Hunt Plan Art. I.A.274. Because no such consent, approval or waiver *under or in connection with the Hunt Plan* is being sought from the Original Plan Sponsors in connection with the Plan, Ovation is not an Original Plan Sponsor, and thus, not a Releasing Party, under the Plan.

Causes of Action against NextEra, its Affiliates or any of their agents under the Plan, and therefore object to the Plan insofar as it seeks to effectuate such releases. Article VIII.D of the Plan, entitled "Releases by Holders of Claims and Interests," provides that as of the Effective Date, the Original Plan Sponsors and Holders of TCEH Unsecured Note Claims are deemed to have released and discharged each Released Party, including Plan Sponsor NextEra, its wholly-owned subsidiary NextEra Energy Capital Holdings, Inc., its subsidiary EFH Merger Co., LLC, and such entities' current and former Affiliates and the current and former directors, managers and officers of such entities and their Affiliates, "from any and all Claims and Causes of Action." See Plan Art. VIII.D ("As of the Effective Date, each Releasing Party is deemed to have released and discharged each . . . Released Party from any and all Claims and Causes of Action . . . ."); id. at Art. I.A.337 (defining "Releasing Parties"); id. at Art. I.A.336 (defining "Released Parties"); id. at Art. I.A.32 (defining "Causes of Action").[6]  Although, this proposed third-party, non-Debtor release contains a carve-out for "any claims or Causes of Action against the Plan Sponsors relating to the Debtors' pursuit of regulatory approvals under the [Hunt] Plan" (the "Release Carve-Out"), see id. at Art. VIII.D, such Release Carve-Out is too narrow and fails to

---

[6]      As defined in the Plan, "Causes of Action" means

> any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

Id. at Art. I.A.32.

sufficiently protect the Original Plan Sponsors' ability to pursue claims and Causes of Action against NextEra, its Affiliates or any of their agents for any misconduct during these Chapter 11 Cases that may have interfered with consummation of the Hunt Plan.

2.      For example, the Release Carve-Out does not exempt from release any claims or Causes of Action against NextEra relating to the pursuit of regulatory approvals under the Hunt Plan by parties *other than* the Debtors, such as Ovation or Oncor Electric. Technically, it was those latter two entities that sought regulatory approval and, given the ring-fence measures in place, the Debtors had a minimal role in that process. It seems the spirit of the Release Carve-Out is to include the regulatory approvals, regardless of the entity that was seeking such approvals, but that is not what it provides. Nor does the Release Carve-Out exempt from release any claims or Causes of Action against NextEra's Affiliates such as Gexa or its officers, employees or representatives that may have engaged in interfering conduct. Moreover, the Release Carve-Out does not exempt from release any claims or Causes of Action against NextEra, its Affiliates or their agents for any of their actions not strictly related to the Debtors' pursuit of regulatory approvals under the Hunt Plan (that is, actions that may have been only tangentially related to such approvals). The members of the Ad Hoc Group object to the Plan's third-party release provision solely as it relates to NextEra, its Affiliates and their agents and to the extent that the release would bar the members of the Ad Hoc Group from pursuing claims or Causes of Action related to the Hunt Plan or the consummation thereof.[7]

---

[7]      In an attempt to resolve this limited objection, the Ad Hoc Group proposed to the Debtors and NextEra that the Release Carve-Out be modified as follows:

> **Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any claims or Causes of Action against ~~the Plan Sponsor~~ one or more of NextEra and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and**

3.     The Third Circuit has declined to establish a blanket rule permitting or prohibiting the non-consensual releases of non-debtors by third parties, see Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 213-14 (3d Cir. 2000), but this Court has held that it does not have the power to grant a third-party release of a non-debtor unless the releasing party consents to such release, for example through contract or by voting in favor of the plan. See In re Wash. Mut., Inc., 442 B.R. 314, 352 (Bankr. D. Del. 2011) (citing In re Coram Healthcare Corp., 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties"); In re Zenith Elecs. Corp., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (holding that releases of non-derivative third-party claims against non-debtor "cannot be accomplished without the affirmative agreement of the creditor affected")).   The Court has also recognized other very limited circumstances under which non-consensual releases of non-debtors may be approved, stating that:

> [N]on-consensual releases may be approved only in an "extraordinary" case if all of the following four factors are present: (i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the Debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting [parties], i.e., whether the non-consenting [parties] received reasonable compensation in exchange for the release.

_____

**assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such (the "Plan Sponsor Released Parties")** relating to the ~~Debtors' pursuit of regulatory approvals under the~~ **Original Confirmed Plan** or the consummation thereof **or claims or Causes of Action that may be brought by** one or more of **the Plan Sponsor** Released **Parties against another party who brings a claim or Cause of Action against the Plan Sponsor** Released Parties **in connection with the** ~~Debtors' pursuit of regulatory approvals under the~~ **Original Confirmed Plan** or the **consummation thereof.**

The Debtors informed counsel for the Ad Hoc Group at noon today that such proposal was rejected by NextEra.

In re Exide Techs., 303 B.R. 48, 75 (Bankr. D. Del. 2003) (citing In re Genesis Health Ventures, Inc., 266 B.R. 591, 607-08 (Bankr. D. Del. 2001)); see also In re Tribune Co., 464 B.R. 126, 203 (Bankr. D. Del. 2011).  The proposed releases of NextEra, its Affiliates, and their agents do not satisfy any standard set forth by this Court for approval of non-consensual releases of non-debtors.

4.      First, the members of the Ad Hoc Group (in their capacity as Holders of TCEH Unsecured Notes) are not voting parties with respect to the Plan and do not have the option to opt-out of the releases therein.  Nor have they consented to the release of their claims or Causes of Action against NextEra, its Affiliates or their agents through contract or otherwise.  On this basis alone, the Court should not approve *any* non-consensual release of NextEra, its Affiliates or their agents except to the extent a person or entity may have affirmatively consented to that release.

5.      Second, the proposed releases fails to satisfy the Exide criteria required for approval of such non-consensual releases.  Most notably, the proposed release is not necessary to the success of the Plan.  NextEra's Affiliates (and their agents) are providing no financial contribution to the Plan, and NextEra, which is providing consideration, has agreed to the Release Carve-Out, which fails to exempt conduct related to non-consummation of the Hunt Plan, including regulatory approvals.  In addition, the releases are unfair to the members of the Ad Hoc Group because they are receiving no compensation, let alone reasonable compensation, in exchange for releasing their claims and Causes of Action against NextEra, its Affiliates and their agents.[8]  Indeed, the beneficial interests they hold in substantially all of the prepetition equity of EFH Corp. are being cancelled under the Plan without distribution.

---

[8]      The "disarmament and drag" agreed to by the Original Plan Sponsors and the Debtors in the Settlement

6.      Thus, the proposed non-consensual releases of NextEra, its Affiliates and their

agents are impermissible as a matter of law

Dated: Wilmington, Delaware
       November 15, 2016                   FOX ROTHSCHILD LLP

                              By:   */s/ Jeffrey M. Schlerf*
                                   Jeffrey M. Schlerf (No. 3047)
                                   L. John Bird (No. 5310)
                                   919 North Market St., Suite 300
                                   Wilmington, DE 19801
                                   Telephone:  (302) 654-7444
                                   Facsimile:  (302) 463-4971
                                   jschlerf@foxrothschild.com
                                   lbird@foxrothschild.com

                                   WHITE & CASE LLP
                                   Thomas E Lauria (admitted *pro hac vice*)
                                   Matthew C. Brown (admitted *pro hac vice*)
                                   Southeast Financial Center, Suite 4900
                                   200 South Biscayne Blvd.
                                   Miami, FL 33131
                                   Telephone:  (305) 371-2700
                                   Facsimile:  (305) 358-5744
                                   tlauria@whitecase.com
                                   mbrown@whitecase.com

                                   WHITE & CASE LLP
                                   J. Christopher Shore (admitted *pro hac vice*)
                                   Gregory M. Starner (admitted *pro hac vice*)
                                   1155 Avenue of the Americas
                                   New York, NY 10036
                                   Telephone:  (212) 819-8200
                                   Facsimile:  (212) 354-8113
                                   cshore@whitecase.com
                                   gstarner@whitecase.com

                                   *Counsel to the Ad Hoc Group of*
                                   *TCEH Unsecured Noteholders*

---

Agreement and Plan Support Agreement did not reference much less contemplate the release of claims or Causes of Action against third parties like NextEra or its Affiliates who may have interfered with the Original Plan Sponsors' efforts to consummate the Hunt Plan.