## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                          :    Chapter 11
                                                :
ENERGY FUTURE HOLDINGS CORP., et al.,  :    Case No. 14-10979 (CSS)
                                                :
                      Debtors.                  :    (Jointly Administered)
                                                :
-------------------------------------------------------- x    Related to Docket No. 9612
```

## EFIH SECOND LIEN TRUSTEE'S
## OBJECTION TO DEBTORS' PLAN OF REORGANIZATION

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.      The EFIH Second Lien Note Claims ....................................................................... 2

        A.      Claims Related to the Intercreditor Litigation ........................................... 3

II.     Prior Plan Treatment of EFIH Second Lien Note Claims........................................ 6

III.    The Current Plan .................................................................................................... 6

OBJECTION ..................................................................................................................... 7

I.      The Debtors Cannot Cram-Down the EFIH Second Lien Notes ............................. 7

        A.      The Debtors Cannot Satisfy Section 1129(b) of the Bankruptcy Code ........ 7

        B.      The Plan Cannot Release Liens ................................................................... 10

        C.      The Plan Must Clearly Explain the Source of Payment for all Aspects of
                the EFIH Second Lien Note Claims and Ensure that Sufficient Amounts
                will Be Available ........................................................................................ 12

        D.      The Plan Must Have an Adequate Reserve for Fees and Expenses ............ 14

II.     The Debtors Cannot Use the Plan as a Deemed Claims Objection .......................... 15

III.    The Confirmation Order Must Find that Reorganized EFIH Will Have the Ability
        to Pay all EFIH Second Lien Note Claims .............................................................. 17

IV.     The Process for Review and Payment of the EFIH Second Lien Trustee's Fees
        and Expenses is Inappropriate ................................................................................ 18

CONCLUSION ................................................................................................................... 21

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Allegheny Int'l Inc.,*
  954 F.2d 167 (3d Cir. 1992) ................................................................................................. 16

*In re Cady,*
  2007 WL 2215384 (Bankr. D. Id. 2007) ............................................................................... 13

*In De DeMarco,*
  258 B.R. 30 (Bankr. M.D. Fla. 2000) .................................................................................... 13

*In re Dynamic Brokers, Inc.,*
  293 B.R. 489 (B.A.P. 9th Cir. 2002) ..................................................................................... 16

*In re Freymiller Trucking, Inc.,*
  190 B.R. 913 (Bankr. W.D. Okla. 1996) ................................................................................. 9

*In re Holt,*
  153 B.R. 215 (Bankr. N.D. Ill. 1993) ..................................................................................... 16

*In re Investment Company of the Southwest,*
  341 B.R. 298 (B.A.P. 10th Cir. 2006) .................................................................................... 10

*In re Lightsquared Inc.,*
  513 B.R. 56 (Bankr. S.D.N.Y. 2014) ..................................................................................... 11

*In re Murel Holding Corp.,*
  75 F.2d 941 (2d Cir. 1935) ....................................................................................................... 8

*In re Philadelphia Newspapers, LLC,*
  599 F.3d 298 (3d Cir. 2010) ..................................................................................................... 9

*RadLAX Gateway Hotel. LLC v. Amalgamated Bank,*
  132 S. Ct. 2065 (2012) .......................................................................................................... 8, 9

*In re River East Plaza,*
  669 F.3d 826 (7th Cir. 2012) ................................................................................................... 10

*In re Sunflower Racing,*
  219 B.R. 587 (Bankr. Ka. 1998) ............................................................................................. 11

*In re U.S. Mineral Products,*
  2005 WL 5898300 (Bankr. D. Del. 2005) .............................................................................. 14

*In re Wiersma,*
  227 Fed. Appx. 603 (9th Cir. 2007) ..................................................................................9

**Statutes**

11 U.S.C. § 506(b) ..................................................................................................18, 20

11 U.S.C. § 1129 ....................................................................................................... *passim*

**Other Authorities**

Fed. R. Bankr. P. 3001(f) ......................................................................................15, 20

Fed. R. Bankr. P. 3007-1 ...............................................................................................16

Fed. R. Bankr. P. 9013 ...................................................................................................16

Fed. R. Bankr. P. 9014 ...................................................................................................16

H.R. Rep. 95–595, 95th Cong., 2d Sess. (1977), reprinted in 1978 U.S.C.C.A.N.
  5963..............................................................................................................................9, 11

Computershare Trust Company, N.A. and Computershare Trust Company of Canada, in their capacity as indenture trustee (the "**EFIH Second Lien Trustee**") for the EFIH Second Lien notes (the "**EFIH Second Lien Notes**" and the holders thereof, the "**EFIH Second Lien Noteholders**") issued by Energy Future Intermediate Holding Company LLC and EFIH Finance Inc. (collectively, "**EFIH**") pursuant to the Indenture dated as of April 25, 2011 (together with all supplements, amendments, and exhibits, the "**Indenture**") hereby submit this objection (the "**Objection**") to the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**") [Docket. No. 9612].[1] The EFIH Second Lien Trustee also joins in the EFIH First Lien Trustee's objection to the Plan. In support of this Objection, the EFIH Second Lien Trustee respectfully submits the following:

## PRELIMINARY STATEMENT

1.      The Plan, as currently proposed, cannot be confirmed, as it seeks to cram-down the proposed Plan treatment on the EFIH Second Lien Noteholders in violation of §1129(b)(2)(A).[2]

2.      For example, notwithstanding that certain components of the EFIH Second Lien Note Claims may not be finally adjudicated until *after* the Effective Date, the Plan proposes to strip the liens securing the EFIH Second Lien Notes *on* the Effective Date. Moreover, the Plan does not explain who is ultimately responsible for payment of certain components of the EFIH Second Lien Note Claims that have yet to be adjudicated and therefore impairs the ability of the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan and Disclosure Statement [Docket No. 9616].

[2] The EFIH Second Lien Trustee is not aware of any holder of EFIH Second Lien Notes that supports the Plan, other than Fidelity, who is the largest holder of EFH Notes. As the Court is aware, Fidelity only signed a plan support agreement (on behalf of its Second Lien Notes) after the Merger Consideration was increased for the benefit of Fidelity's EFH Claims. Accordingly, the EFIH Second Lien Trustee expects that the EFIH Second Lien Notes class will vote to reject the Plan.

EFIH Second Lien Trustee and EFIH Second Lien Noteholders to collect on their secured claims (whenever such claims Allowed).

3.      The Debtors cannot take away the rights of the EFIH Second Lien Trustee and EFIH Second Lien Noteholders (which are indisputably oversecured) without their consent. Accordingly, the Court cannot confirm the Plan unless the Debtors modify the Plan to render the EFIH Second Lien Note Claims unimpaired.  Among other things, the EFIH Second Lien Trustee and EFIH Second Lien Noteholders must retain their liens for any liabilities assumed by Reorganized EFIH and the Plan must create a secured reserve for any claims to be paid out of the EFIH/EFIH Distribution Account.

4.      In addition, the EFIH Second Lien Trustee also objects to other provisions of the Plan, Confirmation Order and Plan Supplement.  First, the Debtors cannot use the Plan as a deemed claims objection for the non-adjudicated claims.  Second, in order to sustain their burden on feasibility, the Debtors must include a finding in the Confirmation Order that Reorganized EFIH will have the ability to pay all EFIH Second Lien Note Claims.  Finally, the process for review and payment of the EFIH Second Lien Trustee's fees and expenses is inappropriate and contrary to what was previously agreed to and included in the order approving the Disclosure Statement.

## BACKGROUND

### I.      The EFIH Second Lien Note Claims

5.      The Plan provides, in Article III.B.20, that the Allowed EFIH Second Lien Note Claims include the following amounts:

(i) outstanding principal and accrued unpaid prepetition interest (including Additional Interest and interest on interest);

(ii) accrued and unpaid post-petition interest (including Additional Interest and interest on interest) through the EFH Effective Date;

- 2 -

(iii) reasonable and documented fees, expenses and indemnification claims, whether incurred or accruing before, on or after the EFH Effective Date (and interest thereon to the extent provide by such notes, indentures or agreements); and

(iv) any other claims, including any Makewhole Claims, and interest thereon, of the EFIH Second Lien Notes Trustee or EFIH Second Lien Noteholders, if and to the extent such claims are allowed by a court of competent jurisdiction pursuant to a Final Order, whether entered before, on, or after the EFH Effective Date.

6.　　Each component of the EFIH Second Lien Note Claims are at different stages of determination. There is no dispute as to the entitlement of the principal and accrued interest claims.[3] The fees and expense claims will be determined in accordance with the procedure outlined in the Plan Supplement (and discussed below). The Makewhole Claims are currently *sub judice* before the Third Circuit. There are also, as described by the Debtors in the Plan (category (iv) above), potentially significant additional claims against the Debtors, that arise out of the Intercreditor Litigation, that have yet to be adjudicated (or even objected to by any party).[4]

A.　　**Claims Related to the Intercreditor Litigation**[5]

7.　　As the Court is aware, the EFIH First Lien Trustee filed a complaint for declaratory judgment and injunctive relief against the EFIH Second Lien Trustee seeking turnover of any payments to be made to the EFIH Second Lien Noteholders to compensate the EFIH First Lien Noteholders for their asserted makewhole claim (the "**Intercreditor Litigation**"). On June 3, 2016, the Court granted the EFIH Second Lien Trustee's motion to dismiss the Intercreditor Litigation and the EFIH First Lien Trustee has appealed the decision to the district court (where briefing has been completed and it is currently pending). Although the

---

[3] The EFIH Second Lien Trustee does not expect there to be any meaningful dispute as to the amount of the unpaid principal and accrued interest and reserves all rights as to exact calculation of these amounts.

[4] The foregoing description of additional other claims is not exhaustive and the EFIH Second Lien Trustee reserves all rights with regard to the EFIH Second Lien Note Claims.

[5] The Debtors are well aware of these claims as the EFIH Second Lien Trustee has raised these claims in the past *See* EFIH Second Lien Trustee's Objection to Original Confirmed Plan [Docket No. 6614], *Disclosure Statement* at 52 (explaining EFIH Second Lien Trustee's position on claims relating to the Intercreditor Litigation).

Intercreditor Litigation is between the EFIH First Lien Trustee and the EFIH Second Lien Trustee, both the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders may have claims against the Debtors arising out of, or as a by-product of, the Intercreditor Litigation.

      i.   **Future Interest Claim**

8.     Pursuant to Section 12.01 of the EFIH Second Lien Note Indenture, the Debtors' obligations under that Indenture cannot be discharged until (i) all notes have become due and payable, (ii) no default with respect to the indenture or the notes has occurred and is continuing, (iii) the Issuer has paid or caused to be paid all sums payable by it under the Indenture, and (iv) the Issuer has delivered irrevocable instructions to the EFIH Second Lien Trustee to apply the money towards the payment of the notes. *See* EFIH Second Lien Note Indenture § 12.01(2).

9.     The EFIH Second Lien Note Indenture also provides that:

> If the Trustee or Paying Agent is unable to apply any money or Government Securities in accordance with Section 12.01 hereof by reason of *any legal proceeding* or by reason of any order or judgment of any court or governmental authority enjoining, restraining or otherwise prohibiting such application, the Issuer's and any Guarantor's obligations under this Indenture and the Notes *shall be revived and reinstated as though no deposit had occurred* pursuant to Section 12.01 hereof . . . .

*See* EFIH Second Lien Note Indenture § 12.02 (emphasis added). In short, if the EFIH Second Lien Trustee cannot make payments to the holders of the EFIH Second Lien Notes due to the pendency of a legal proceeding, the obligations under the Indenture cannot be released or discharged.

10.    As it is unlikely the Intercreditor Litigation will be finally resolved prior to the Effective Date, in the exercise of its duties and in compliance with the EFIH Second Lien Indenture, the EFIH Second Lien Trustee expects to hold back a portion of the distribution to the EFIH Second Lien Noteholders pending the final resolution of the Intercreditor Litigation. The

Plan, however, only provides for payment of post-petition interest until distributions are made to the EFIH Second Lien Trustee.[6] The EFIH Second Lien Indenture, meanwhile, provides that interest will continue accruing on the EFIH Second Lien Notes unless and until all principal is paid in full in accordance with the EFIH Second Lien Notes. *See* EFIH Second Lien Note Indenture §§ 2.08; 4.01. Because the EFIH Second Lien Trustee is unable to remit the full distribution of principal it receives from the Debtors to EFIH Second Lien Noteholders due to the pending Intercreditor Litigation (*See* EFIH Second Lien Note Indenture § 12.02), the principal will not have been "paid in full" and the EFIH Second Lien Noteholders will continue to accrue interest at the contract rate on the amounts that cannot be distributed (the **"Future Interest Claim"**).[7]

ii. **Indemnification Claim**

11.     Section 7.07 of the EFIH Second Lien Indenture provides that "[t]he Issuer and the Guarantors, jointly and severally, shall indemnify the Trustee for, and hold the Trustee harmless against any and all loss, damage, claims, liability, or expense (including attorneys' fees) . . . [and] the obligations of the Issuer under this Section 7.07 shall survive the satisfaction and discharge of this Indenture." *See* EFIH Second Lien Note Indenture § 7.07. To the extent the EFIH Second Lien Trustee faces any liability as a result of the Intercreditor Litigation (including exposure to the claim, its actions in the litigation or in any decision to hold the reserve), it will have an indemnification claim against the Debtors.

---

[6] Article III.B.20 of the Plan provides that the Allowed Claim only includes interest through the Effective Date, but the distribution provision of the Plan (Article VI) clarifies that if distributions are not made to the EFIH Second Lien Trustee on the Effective Date, then EFIH Second Lien Noteholder will continue to accrue interest on such unpaid amounts.

[7] Moreover, the EFIH Second Lien Trustee may also need to exercise its charging lien from distributions to advance such costs for fees and expenses (as permitted under Sections 6.13(i) and 7.07 of the EFIH Second Lien Indenture), and this may also reduce the actual distributions to EFIH Second Lien Noteholders, increasing the amounts the Debtors are ultimately required to pay.

## II.    Prior Plan Treatment of EFIH Second Lien Note Claims

12.    In September 2015, the Debtor solicited votes in connection with the Original Confirmed Plan.  In the solicitation version of the Original Confirmed Plan, the EFIH Second Lien Notes were deemed "unimpaired" and were not entitled to vote.  The solicitation version of the Original Confirmed Plan sought to discharge the liens securing the EFIH Second Lien Notes on the effective date and impaired the ability of the EFIH Second Lien Notes Trustee to continue prosecution of the Makewhole appeal.

13.    The EFIH Second Lien Trustee objected to the Original Confirmed Plan and, following mediation, the Debtors ultimately agreed to render the EFIH Second Lien Notes truly unimpaired, i.e., the liens securing the EFIH Second Lien Notes would remain in place through and after the Effective Date until all claims relating to the EFIH Second Lien Notes (including, but not limited to, the Makewhole Claim) were resolved by Final Order (and paid, if Allowed).  In addition, any and all claims and rights that the EFIH Second Lien Trustee and EFIH Second Lien Noteholders had under the Indenture and related documents were preserved against the Reorganized Debtors.

## III.    The Current Plan

14.    The current Plan purports to provide for payment in full in cash of the Allowed amount of the EFIH Second Lien Note Claims (whether allowed pre- or post-Effective Date).  *See* Article III.B.20 of the Plan.  Notwithstanding that the Plan acknowledges that several components of the EFIH Second Lien Note Claims may not be allowed and/or paid until after the Effective Date, the Plan inappropriately discharges the liens of the EFIH Second Lien Notes on the Effective Date.  *See* Article VIII.B of the Plan.[8]

---

[8] The Disclosure Statement states that the EFIH Second Lien Notes are impaired because certain legal and equitable rights are being altered under the Plan.  Specifically, while Reorganized EFIH will pay in full, in Cash, any

15.    The Plan, however, only details the source of payment for some, but not all, components of the EFIH Second Lien Note Claims.  For example, claims for principal and accrued interest will be paid out of the Merger Consideration on the Effective Date (or as soon as reasonably practicable thereafter).  *See* Article VI.A of the Plan.  Claims for fees and expenses will be paid out of the Merger Consideration (from reserves in the EFH/EFIH Distribution Account) following completion of the fee review process detailed in the Plan Supplement.  *See* Article VI.A of the Plan..  In addition, the source of payment of the Makewhole Claims depends on timing of allowance:  If the Makewhole Claims are allowed after the Effective Date, the claim will be paid by Reorganized EFIH.  If the Makewhole Claims are allowed prior to the Effective Date (and NextEra waives the condition precedent that Makewhole Claims be disallowed claims), the claim will be paid from the Merger Consideration.  *See* Article VI.A of the Plan.

16.    The Plan, however, does not clearly explain the source of payment of the indemnification   claims and the "other claims" (including the Future Interest Claim).

## OBJECTION[9]

### I.    The Debtors Cannot Cram-Down the EFIH Second Lien Notes

#### A.    The Debtors Cannot Satisfy Section 1129(b) of the Bankruptcy Code

17.    The EFIH Second Lien Trustee expects that Class B4 (the EFIH Second Lien Note Claims) will vote to reject the Plan.  A debtor's plan may only be confirmed over the objection of a class of impaired claims if the plan is "fair and equitable" under 11 U.S.C. § 1129(b).

---

Makewhole Claims asserted by Holders of EFIH Second Lien Notes that are allowed by Final order after the EFH Effective Date, the liens securing the EFIH Second Lien Note Claims will be released on the EFH Effective Date. *Disclosure Statement* at 26, FN 20.  As described herein, the EFIH Second Lien Trustee believes that there are other provisions of the Plan that also render the EFIH Second Lien Notes impaired.

[9] On November 10, 2016, the Debtors filed the Plan Supplement.  The EFIH Second Lien Trustee is still in the process of reviewing the Plan Supplement documents.

18.    Section 1129(b)(2)(A) of the Bankruptcy Code provides three ways in which a plan can be deemed fair and equitable with respect to secured claims. Subsection (i) addresses when the secured creditor retains its liens, subsection (ii) addresses when there is a sale of the property free and clear of liens and subsection (iii) provides "for the realization by such holders of the indubitable equivalent of such claims." 11 U.S.C. § 1129(b)(2)(A)(i)-(iii). The third prong "is a residual provision covering dispositions under all other plans." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2072 (2012).

19.    Neither sections 1129(b)(2)(A)(i) or (ii) of the Bankruptcy Code are applicable here: the liens securing the EFIH Second Lien Note Claims are being released and the collateral is not being sold. In addition, the Debtors cannot satisfy option (iii). The EFIH Second Lien Noteholders are not receiving the indubitable equivalent of their claims: they are at best receiving an unsecured claim (for their Makewhole claims) in exchange for their previously secured claim (and are thereby being exposed to a substantially higher risk of non-payment) and, with respect to other claims, it is unclear how, when or whether they are receiving anything.

20.    The standard for indubitable equivalence was first articulated by Judge Learned Hand in *In re Murel Holding Corp*, and then incorporated into § 1129(b)(2)(A)(iii) of the Bankruptcy Code. *In re Murel Holding Corp.*, 75 F.2d 941, 942 (2d Cir. 1935) (the relief accorded to the dissenting creditor must be "a substitute of the most indubitable equivalence"). The legislative history of § 1129(b)(2)(A) provides some insight into how Congress intended the indubitable equivalence standard to be applied:

> Abandonment of the collateral to the creditor would clearly satisfy indubitable equivalence, as would a lien on similar collateral. However, present cash payments less than the secured claim would not satisfy the standard because the creditor is deprived of an opportunity to gain from a future increase in value of the collateral.

> *Unsecured notes as to the secured claim or equity securities of the*
> *debtor would not be the indubitable equivalent.*

H.R. Rep. 95–595, 95th Cong., 2d Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6544 (emphasis added).

21.    In order to satisfy the indubitable equivalent standard, the proposed plan treatment for the secured creditors must leave no doubt that the creditors are receiving value equal to their existing security interests.  See *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 310 (3d Cir. 2010) (reversed in part on other grounds in *RadLAX*, 132 S.Ct. 2065); see also *In re Freymiller Trucking, Inc.*, 190 B.R. 913, 915-16 (Bankr. W.D. Okla. 1996) ("Something is dubitable if it is open to doubt or question and, conversely, is indubitable if it is not open to any doubt. . . . In other words, is there any real doubt but that, as a matter of fact, the [creditor] will be paid in full?" (quoting from the 1981 edition of Webster's Unabridged Third International Dictionary)). The proposed treatment must both "compensate for present value" and "insure the safety of the principal".  *In re Wiersma*, 227 Fed. Appx. 603, 607 (9th Cir. 2007) ("To the extent a debtor seeks to alter the collateral securing a creditor's loan, providing the 'indubitable equivalent' requires that the substitute collateral not increase the creditor's risk exposure" (quoting *In re Arnold & Baker Farms*, 85 F.3d 1415, 1422 (9th Cir. 1996)).

22.    As discussed below, the Plan impairs the rights of the EFIH Second Lien Trustee and EFIH Second Lien Noteholders by (i) releasing liens for claims against Reorganized EFIH, (ii) failing to provide a clear means of collection for certain non-adjudicated claims and (iii) failing to provide a separate secured and sufficient reserve for claims to be paid from the EFIH/EFIH Distribution Account.  Accordingly, the Plan cannot be confirmed because it does

not provide the EFIH Second Lien Trustee and EFIH Second Lien Noteholders with the indubitable equivalent for any of these modifications to their contractual rights.

### B.    The Plan Cannot Release Liens

23.    Although the Debtors acknowledge that certain components of the EFIH Second Lien Note Claims (specifically the Makewhole Claims and "other claims") may not be Allowed by Final Order until after the Effective Date (*see* Article III.B.20 of the Plan), the Plan seeks to release the liens on the Effective Date.[10]  The Debtors cannot arbitrarily strip away the security interests underlying the EFIH Second Lien Notes.

24.    The Debtors are proposing to swap a secured claim for an unsecured claim. An unsecured claim—even against an entity that may be highly valuable—is not the indubitable equivalent.  In *In re Investment Co. of the Sw.*, the Bankruptcy Appellate Panel for the Tenth Circuit found that exchanging a "first lien on the most easily saleable assets for a junior lien on less easily marketable assets, or a totally unsecured interest in personal property never valued by the Court, is not the indubitable equivalent of its claim." 341 B.R. 298, 324 (10th Cir. 2006). The Court continued that "even if the personal property assets are highly valued, the right to receive payment upon liquidation, from personal property assets that would have to be shared with all other creditors (assuming none has a security or other superior claim to that collateral)" did not provide the indubitable equivalent. *Id.*[11]  As discussed above, the legislative history of

_____

[10] The discharge of liens also impacts the rights of holders of EFIH Second Lien Notes with respect to principal and accrued interest to the extent there is a delay between the Effective Date and actual distributions.  While there is some internal inconsistency within the "Release of Liens" provision of the Plan whether liens are released on the Effective Date or when distributions are made (*See* Article VIII.B of the Plan), deposition testimony from Mr. Wright confirmed that the liens will be released on the Effective Date of the Plan Wright Dep. 42:3-43:22, Oct. 19, 2016. The relevant portions of Mr. Wright's deposition transcript with respect to this issue are attached hereto as **Exhibit 1**.

[11] Courts have also found that substituted collateral that carries higher risk, such as collateral with higher inflation risk or collateral that is merely hypothetical, does not satisfy § 1129(b)(2)(A)(iii). *See In re River E. Plaza*, 669 F.3d 826, 832 (7th Cir. 2012) (finding that lien on 30-year treasury bonds was not the indubitable equivalent of a secured

§ 1129(b) further states that unsecured notes or claims are not the indubitable equivalent of a secured claim. H.R. Rep. 95–595, 95th Cong., 2d Sess. (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6544

25.   The EFIH Second Lien Trustee anticipates that the Debtors may respond that NextEra (as future owner of Reorganized EFIH) has affirmed its ability to pay the Makewhole Claims if allowed post-Effective Date. *See* Article VI of the Plan. That "promise to pay," however, will do the EFIH Second Lien Noteholders little good if, for example, post-Effective Date, NextEra starts layering secured debt on the assets of EFIH. Moreover, if, for whatever reason, NextEra fails to honor on its commitment, as secured creditors, the EFIH Second Lien Noteholders would have a significantly greater enforcement mechanism, i.e., foreclosure, than simply suing as an unsecured creditor. Put simply, the EFIH Second Lien Noteholders bargained for a claim secured by collateral and the Bankruptcy Code does not allow the Debtors to deprive the EFIH Second Lien Noteholders of their rights as secured creditors.

26.   While the reason for discharging the liens in violation of the Bankruptcy Code is irrelevant to the indubitable equivalent test, the fact that there is no business necessity for doing so undercuts any arguments in the Debtors' or NextEra's favor. ██████████████ ██

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

---

claim on real property); *see also In re Sunflower Racing*, 219 B.R. 587, 601 (Bankr. D. Kan. 1998) (finding that stripping a creditor's mortgage lien and replacing it with a future letter of credit was not indubitable equivalent). Similarly, providing a previously senior secured creditor with a subordinated lien cannot typically satisfy the indubitable equivalent standard. *See In re LightSquared Inc.*, 513 B.R. 56, 70 (Bankr. S.D.N.Y. 2014) (finding that it was not indubitable equivalent to swap the creditors' first lien notes for a note which altered the type of interest received, had a longer maturity than the previous note and was secured by a third lien behind at least $2.2 billion in senior debt).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ In the joint application to the PUC filed by Oncor and NextEra, NextEra submitted affidavits from Mr. Hickson, Mr. Reed and Mr. Neligan in which they each testified that the Reorganized Debtor would be responsible for the make-whole claims post-effective date and payment of those claims would have no impact on Oncor ratepayers. *See* excerpts from joint application to the PUC, attached hereto as **Exhibit 3**. The only reason NextEra was insistent on releasing the liens was to benefit NextEra's overall business and ability to raise capital—at the expense of the EFIH Second Lien Noteholders.

**C.     The Plan Must Clearly Explain the Source of Payment for all Aspects of the EFIH Second Lien Note Claims and Ensure that Sufficient Amounts will Be Available**

27.     As noted above, the Plan does not explain the source of payment for certain components of the EFIH Second Lien Note Claims that have yet to be adjudicated – including the indemnification claims of the EFIH Second Lien Trustee and the Future Interest Claim.[13] As also mentioned above, the Plan does, however, provide that these claims will be part of the Allowed Claim for the EFIH Second Lien Notes if and when Allowed by Final Order (whether pre or post-Effective Date). Failure to provide a means for repayment of these claims is a further impairment as it effectively cuts off the rights to eventually collect on the claim.

---

[12] The relevant portions of Mr. Keglevic, Mr. Wright and Mr. Hickson's deposition transcripts with respect to this issue are attached hereto as **Exhibit 2**.

[13] The EFIH Second Lien Trustee does not read the Plan to cut-off its rights to prosecute the Makewhole appeal or to seek payment of its pre-and post-Effective Date fees and expenses. However, to the extent any provision could be read to the contrary, that would be a further impairment for which the Debtors cannot satisfy cram-down of the EFIH Second Lien Notes.

28.     There is nothing in § 1129(b) of the Bankruptcy Code that creates a distinction in the treatment for secured claims based on whether such claims are before or after the effective date of the Plan.[14] The Plan must ensure that if these claims are ultimately allowed, the EFIH Second Lien Trustee and the EFIH Second Lien Noteholders have recourse to collect (either against Reorganized EFIH or from the EFH/EFIH Distribution Account) *Cf. In De DeMarco*, 258 B.R. 30, 36 (Bankr. M.D. Fla. 2000) (court would not confirm chapter 13 plan because stripping the creditor of its liens would leave it with no recourse against the reorganized debtor if its secured claim was eventually allowed).   As discussed above, the test for indubitable equivalent is whether there is any doubt the claim will be paid.  Here, the EFIH Second Lien Trustee and EFIH Second Lien Noteholders do not know how or when they will be paid on the claims that have yet to be adjudicated (and if ultimately Allowed, if there is sufficient money to pay for these claims) and are certainly not receiving the indubitable equivalent of their secured claim.

29.     If these claims are intended to be a liability of Reorganized EFIH, the Plan must clearly say so and, as discussed above, the liens securing these claims should not be released.  If these claims are intended to be paid from the Merger Consideration, then the Plan must explicitly provide so and set up a separate subaccount reserve for it within the EFH/EFIH Distribution Account (or if no subaccount, maintain a lien on the EFIH/EFIH Distribution Account) through and until conclusion of any appeal. The reserve must be sufficient to pay the full amount of the non-adjudicated claims. *See In re Cady*, No. 06-005022, 2007 WL 2215384, at *4 (Bankr. D. Idaho, July 30, 2007) (plan that provided at timely mechanism by which disputed claim would be resolved and retained creditor's liens and ability to foreclose if it did not receive prompt payment

---

[14] Although § 1129(b)(2)(A)(i)(II) measures deferred cash payments having a value "as of the effective date of the plan" equal to the secured claim, the remainder of § 1129(b) does not limit treatment of the secured claim to the effective date of a plan.

constituted indubitable equivalent); *In re U.S. Mineral Prods. Co.*, No. 01-2471, 2005 WL 5898300, at *22 (Bankr. D. Del. Nov. 29, 2005) (plan which set aside cash in an escrow reserve fund, in amount that both parties stipulated was maximum amount of the claim, was fair and equitable treatment under § 1129)(b)(2)(A)).    Absent these changes, the Plan cannot be confirmed.

### D.    The Plan Must Have an Adequate Reserve for Fees and Expenses

30.    The Plan provides that fees and expense claims (both pre- and post-Effective Date) will be paid as soon as reasonably practicable following completion of the fee review process set forth in the Plan Supplement. *See* Article VI.A of the Plan.  Given the timing of the fee review process (which the EFIH Second Lien Trustee also objects to below), the EFIH Second Lien Trustee's pre-Effective Date fees will not be finally resolved by the Effective Date. In addition, due to the appeal of the Intercreditor Litigation, the EFIH Second Lien Trustee will incur post-Effective Date fees and expenses relating to that appeal (which could be significant if the case is remanded to this Court for further proceedings).

31.    These fees and expense claims will be paid out of the Merger Consideration with reserves in the EFH/EFIH Distribution Account.  It is unclear, however, how much the Debtors are reserving for these fees and expenses and if such reserve will be sufficient to cover the future fees and expenses (and interest thereon).[15]    The Debtors must ensure that the EFH/EFIH Distribution Account contains an adequate reserve for fees and expenses of the EFIH Second Lien Trustee with a sufficient cushion to ensure that the EFIH Second Lien Trustee (and by extension, the EFIH Second Lien Noteholders to the extent the EFIH Second Lien Trustee

---

[15] In Exhibit M to the Plan Supplement ("Disclosures Regarding EFH/EFIH Distribution Account"), the Debtors provide a non-binding good faith estimate of $100 million for certain amounts to be reserved in the EFH/EFIH Distribution Account, including post-Effective Date fees and expenses claims of the EFIH Second Lien Trustee. The $100 million specifically does not include the pre-Effective Date fees.  The EFIH Second Lien Trustee does not know how much the Debtors are contemplating to reserve for pre-Effective Date fees or how much of the $100 million is attributable to post-Effective Date fees.

exercises its charging lien) is not exposed if the reserve proves to be insufficient. Moreover, unless the reserve for EFIH Second Lien Trustee fees and expenses is in a separate subaccount which cannot be used for other purposes, the EFIH Second Lien Trustee must maintain a lien on the EFH/EFIH Distribution Account.

32.    As secured creditors, the EFIH Second Lien Trustee and EFIH Second Lien Noteholders must be paid in full before unsecured creditors. The current structure of the EFH/EFIH Distribution Account imposes the risk of collection on the EFIH Second Lien Trustee and EFIH Second Lien Noteholders if the reserve is insufficient and therefore does not provide such creditors with the indubitable equivalent of their secured claims.

## II.    The Debtors Cannot Use the Plan as a Deemed Claims Objection

33.    As noted above, several claims relating to the EFIH Second Lien Notes have not yet been adjudicated but will be included as part of the Allowed Claim (to the extent ultimately Allowed by Final Order). *See* Article III.B.20 of the Plan. However, another provision of the Plan appears to be inconsistent with the Plan treatment and purports to serve as an "objection" to "all other" claims. Specifically, Article VII.A of the Plan provides:

> Except as specifically provided as Allowed Claims pursuant to Article III.B of the Plan or otherwise objected to by the Debtors in the Chapter 11 Cases, *the Plan shall serve as the Debtors' objection to all other . . . EFIH Second Lien Note Claims . . . under the respective indentures.* If the Bankruptcy Court sustains the Debtors' objection to these Claims, the Confirmation Order will disallow such Claims against the Debtors. The Holders of such Claims may respond to the Debtors' objection to such Claims by filing an objection to the Plan.

34.    As an initial matter, the Bankruptcy Rules do not permit the Debtors to object to claims via a mere sentence in a plan. The EFIH Second Lien Trustee timely filed proofs of claim, which constitute prima facie evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f). Having satisfied the initial burden with respect to the EFIH Second Lien Note Claims, "[t]he burden of going forward then shifts to the objector *to produce evidence*

- 15 -

*sufficient to negate the* prima facie *validity of the filed claim.*" *In re Allegheny Int'l Inc.*, 954 F.2d 167, 173 (3d Cir. 1992) (emphasis added). The lone statement in the Plan that the Debtors object to certain unspecified claims is, by definition, insufficient to overcome the prima facie validity of these claims. And even if the Plan could somehow be construed as a motion contesting these claims under Bankruptcy Rule 9014, such a motion must "setting forth relief or order sought" and "state with particularity the grounds therefor." Fed. R. Bankr. P. 9013; *see also* Fed. R. Bankr. P. 9014(a). The Plan "objection" does not meet these requirements.

35.     In addition, this provision also runs afoul of the Debtors' own claims procedure process and Bankruptcy Rule 3007.[16] Moreover, it would be patently unfair to allow the Debtors to raise substantive issues with components of the EFIH Second Lien Note Claims for the first time in their reply to confirmation objections (due November 28), and only afford the EFIH Second Lien Trustee and Noteholders less than 3 days to respond. And this is aside from the fact that plan confirmation is not the appropriate time to litigate the substance of particular aspects of the EFIH Second Lien Note Claims. In fact, certain courts have denied a debtor's attempt to fold in claims objection into plans. *See In re Dynamic Brokers, Inc.*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2002) ("[T]here is no rule that authorizes an objection to claims to be litigated in chapter 11 plan confirmation proceedings without complying with Rule 3007."); *In re Holt*, 153 B.R. 215, 216 (Bankr. N.D. Ill. 1993) ("The terms of a plan cannot be used to deviate from established proof of claim procedures to determine the amount of a claim.").

36.     The Debtors should be required to clarify that this Plan provision is not an attempt to litigate (or cut-off) EFIH Second Lien Trustee and EFIH Second Lien Noteholders' right to

---

[16] In the context of amending Bankruptcy Rule 3007 for omnibus claims, the Debtors committed to provide "the basis for the Debtors' objection to such Claimant's Proof of Claim" on 30 days' notice   [Docket No. 2849, at ¶21 and Docket No. 2963]. There is no reason the Debtors should give less specificity or less time for a substantive claims objection.

- 16 -

assert the claims described above and any other claims relating to the EFIH Second Lien Notes. To the extent the Debtors intend to use the Plan as its "claims objection," the EFIH Second Lien Trustee must be afforded a full and fair opportunity to respond.

37.     The Debtors should similarly not be able to use an estimation procedure described in Article VII of the Plan with regard to the non-adjudicated components of the EFIH Second Lien Note Claims. Such a procedure may functionally preclude the EFIH Second Lien Noteholders from collecting the full amount of their claims, if and when Allowed, which, as discussed above, would run afoul of § 1129(b) of the Bankruptcy Code.

**III.    The Confirmation Order Must Find that Reorganized EFIH Will Have the Ability to Pay all EFIH Second Lien Note Claims**

38.     The Confirmation Order must include a finding, like in the Original Confirmed Plan, that the Reorganized Debtors will have the ability to pay any and all portions of the EFIH Second Lien Note Claims allowed post-Effective Date.[17]

39.     Such a finding is not controversial. The Plan treatment provisions contemplates that all claims relating to the EFIH Second Lien Notes that are Allowed by Final Order even post-Effective Date are still part of the Allowed Claims. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████   Excerpts of the

---

[17] The EFIH Second Lien Trustee understands that nothing in the Plan or Confirmation Order will be used to fix the amount of the Makewhole Claims, fees and expenses or any other claims relating to the EFIH Second Lien Notes and the EFIH Second Lien Trustee reserves all rights with respect to the calculation of all claims (including interest thereon).

Ying deposition are attached hereto as **Exhibit 4**. The proposed finding is also necessary for the Debtors to satisfy their burden in establishing the Plan's feasibility.

**IV.** **The Process for Review and Payment of the EFIH Second Lien Trustee's Fees and Expenses is Inappropriate**

40.    The EFIH Second Lien Notes are clearly oversecured and the fees and expenses of the EFIH Second Lien Trustee and its professionals are unquestionably included in the claim securing the EFIH Second Lien Notes under § 506(b) of the Bankruptcy Code and under the EFIH Second Lien Indenture.    Notwithstanding these facts, the Debtors have made a determination not to pay the EFIH Second Lien Trustee's fees and expenses for over a year and a half (since March 2015), despite receiving periodic invoices from the EFIH Second Lien Trustee and despite the fact that such claims themselves likely accrue interest.

41.    With that in mind, the process outlined for review of fees and expenses for the EFIH Second Lien Trustee is inappropriate, as it seeks to create unnecessary delay and create new (and unfair) standards for approval of such fees and expenses.    The Plan Supplement contemplates the following process: forty-five days after the Effective Date, the EFIH Second Lien Trustee shall submit its invoices to the Debtors or Reorganized EFH and the U.S. Trustee. Within ten business days after receipt of the invoices, the Debtors will pay 80% of the requested fees and 100% of the requested expenses (which shall be subject to disgorgement).    The Debtors/Reorganized EFIH then have ninety days to review the fees and respond with a "final compensation proposal."    If the parties cannot come to an agreement on such "proposal" within thirty days, the EFIH Second Lien Trustee can *then* request the Court to the "proposal."

42.    As initial matter, the start-time for this process is directly contrary to the Debtors' agreement in the Disclosure Statement Order.    In its Disclosure Statement objection, the EFIH Second Lien Trustee argued that the Debtors must disclose when they are going to review and

- 18 -

pay the fees and expenses of the EFIH Second Lien Trustee. In an effort resolve this objection, the Debtors committed to start the fee review process "as soon as reasonably practicable following the entry of the EFH/EFIH Confirmation Order." *See* Order (A) Approving the EFH/EFIH Disclosure Statement, (B) Establishing the EFH/EFIH Voting Record Date, EFH/EFIH Voting Deadline and Other Dates, (C) Approving Procedures for Solicitation, Receiving and Tabulating Votes on the Plan, and (D) Approving the Manner and Form of Notice and Other Related Documents, ¶ 20 [Docket No. 9585]. The EFIH Second Lien Trustee should be able to submit its accrued but unpaid invoices for review immediately after confirmation so that it is possible the Court can review and adjudicate any dispute on pre-Effective Date fees and expenses prior to the Effective Date.[18]

43.    Moreover, there is also no reason to allow for such a lengthy time to review and ultimately pay the reasonable fees and expenses following submission. In January 2016, counsel to the EFIH Second Lien Trustee submitted detailed redacted invoices to counsel to the Debtors in accordance with the procedure accompanying the Original Confirmed Plan and the EFIH Second Lien Trustee is not aware of any objections to such invoices. Since that time, counsel to the EFIH Second Lien Trustee has submitted periodic fee statements to counsel to the Debtors. The EFIH Second Lien Trustee has not been paid any fees and expenses since March 2015 and yet now, seeks to subject the EFIH Second Lien Trustee to some of the same rules as estate professionals (by only paying 80% of the fees). The EFIH Second Lien Trustee further reserves the right to seek immediate payment of unpaid fees prior to the Effective Date.

---

[18] During deposition, Mr. Wright testified that he understood the fee review process would start shortly after confirmation ("we're going to have a fairly lengthy period between confirmation and when the plan actually goes effective because of the PUC review in Texas and during that period, we will diligently work to review the fees." Wright Dep. 73:13-74:8, October 19, 2016. An excerpt of the deposition transcript is attached hereto as **Exhibit 5**.

44.     In addition, the Debtors' proposed process attempts to re-write the law on allowance of secured claims. First, the Debtors seek to impose an additional requirement that interest on fees and expenses is only allowed if it is "expressly" provided for in the agreement. This appears to create a new "rule of explicitness" requirement not contained anywhere in § 506(b). Second, instead of simply reviewing the fees and expenses for reasonableness (and having the Court ultimately decide whether such fees are reasonable if the parties cannot come to an agreement), the Debtors have created the new concept of a Non-Retained Compensation Proposal and provide that such "proposal" is what the Court will decide on. Lastly, the Debtors appear to be trying to shift the burden on approval, by requiring that the Non-Retained Professional be required to seek the Court's approval, as opposed to the burden being on the objecting party (as required under Fed. R. Bankr. P. 3001(f)).

45.     The fee review process also completely ignores how the Debtors intend to address post-Effective Date fees and expenses, which are part of the Allowed EFIH Second Lien Note Claims and for which there will be a reserve (*see* Article III.B.20 and Article VI.A of the Plan). As discussed above, the EFIH Second Lien Trustee will incur fees post-Effected Date (including in connection with pending appeals) and the EFIH Second Lien Trustee should be able to submit its invoices for post-Effective Date fees and expenses on a routine basis with payment following a prompt review.

46.     Lastly, the proposed fee review process is further defective in that (i) it should not require a ruling or order of the Court if there is no dispute as to the fees after the review period and (ii) the EFIH Second Lien Trustee should be entitled to submit redacted invoices as appropriate (as it was entitled to do in connection with the fee review process following confirmation of the Original Confirmed Plan).

## CONCLUSION

WHEREFORE, for the reasons stated above and in the FIH First Lien Trustee's objection to the Plan, the EFIH Second Lien Trustee respectfully requests that the Court deny confirmation of the Plan unless appropriate modifications are made and grant such other relief as is just and proper.

Dated:  November 15, 2016          PACHULSKI STANG ZIEHL & JONES LLP

/s/     Laura Davis Jones
Laura Davis Jones
(Bar No. 2436)
Robert J. Feinstein
(NY Bar No. RF-2836)
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@ pszjlaw.com
         rfeinstein@ pszjlaw.com

- and -

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas Moers Mayer
Gregory A. Horowitz
Joshua K. Brody
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 715-9100
Facsimile:  (212) 715-8000
Email: tmayer@kramerlevin.com
         ghorowitz@kramerlevin.com
         jbrody@kramerlevin.com

- and -

BRYAN CAVE LLP

Stephanie Wickouski
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-1114
Facsimile: (212) 904-0514
Email: stephanie.wickouski@bryancave.com

*Counsel to the EFIH Second Lien Trustee*