# **<u>EXHIBIT 1</u>**

1        CONFIDENTIAL - ANDY WRIGHT

2   UNITED STATES BANKRUPTCY COURT

3   FOR THE DISTRICT OF DELAWARE

    ----------------------------------------x

4   In Re:

5   Energy Future Holdings Corporation, et al.,

6                    Debtors.

7   Chapter 11

8   Case No. 14-10979

9   Jointly Administered

10  ----------------------------------------x

11

12          * * *CONFIDENTIAL* * *

13        DEPOSITION OF ANDY WRIGHT

14           New York, New York

15           October 19, 2016

16

17

18

19

20

21

22

23  Reported by:

24  KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25  JOB NO. 114065

1          CONFIDENTIAL - ANDY WRIGHT

2    effective date.

3          Under the terms of the plan, in that

4    scenario, would the liens securing the first

5    lien make-whole claim be extinguished upon

6    emergence?

7          MR. ASHLEY:  Objection to the form.

8          MR. McKANE:  Object to the form.

9    Calls for a legal conclusion and

10   speculation.

11   A.     When -- if the effective date occurs,

12   the liens will be released.

13   Q.     If the make-whole claim is allowed

14   before the effective date but is not paid on the

15   effective date, is it the debtors' understanding

16   that under the terms of the plan the liens will

17   still be released?

18   A.     Yes.

19   Q.     And are there any circumstances under

20   the terms of the plan in which the liens

21   securing the EFIH first lien notes will not be

22   extinguished upon emergence?

23         MR. ASHLEY:  Objection to form.

24         MR. McKANE:  Same objection.

25   A.     No.

1          CONFIDENTIAL - ANDY WRIGHT

2     Q.    Under the terms of the plan, what debt

3 will reorganized EFIH have upon emergence?

4          MR. McKANE:  Objection to form.

5     A.    What do you mean by debt, when you say

6 debt?

7          MR. McKANE:  The funded debt?

8     Q.    So the plan provides for the second

9 lien debt to be paid off; is that correct?

10    A.    Well, it provides that the DIP will be

11 paid, repaid in full, and yes, the second liens

12 will have to be repaid in full, correct.

13    Q.    And it also provides for all other

14 debt at EFIH to be paid in full; is that

15 correct?

16    A.    Pre-petition, yes, debt.

17    Q.    Under the terms of the plan, what

18 liens will reorganized EFIH have on its assets

19 upon emergence?

20    A.    None that I'm aware of at that moment.

21 What NextEra chooses to do after that is their

22 own business.

23          MS. GOSTIN:  So I'm going to mark this

24     as Exhibit 4.  Wright, excuse me, Wright

25     Exhibit 4.

# EXHIBIT 2

Page 1

1

2              UNITED STATES BANKRUPTCY COURT

3                FOR THE DISTRICT OF DELAWARE

4    ------------------------------------x

5    In Re:

6    Energy Future Holdings Corporation,

7    et al.,

8                             Debtors.

9

10   Chapter 11

11   Case No. 14-10979

12   Jointly Administered

13   ------------------------------------x

14         Contains Highly Confidential Portions

15            Bound Separately - Pages 113-116

16            DEPOSITION OF PAUL KEGLEVIC

17                 New York, New York

18                 October 13, 2016

19

20

21

22   Reported by:

23   MARY F. BOWMAN, RPR, CRR

24   JOB NO. 113993

25

# REDACTED

1    PARTIALLY HIGHLY CONFIDENTIAL - ANTHONY HORTON

2    UNITED STATES BANKRUPTCY COURT

3    FOR THE DISTRICT OF DELAWARE

     ----------------------------------------x

4    In Re:

5    Energy Future Holdings Corporation, et.,

6                     Debtors.

7    Chapter 11

8    Case No. 14-10979

9    Jointly Administered

10   ----------------------------------------x

11

12   * * *(PAGES 89-93 MARKED HIGHLY CONFIDENTIAL)* * *

13          DEPOSITION OF ANTHONY HORTON

14              New York, New York

15              October 18, 2016

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 114064

**REDACTED**

**REDACTED**

Page 1

1          CONFIDENTIAL - ANDY WRIGHT

2   UNITED STATES BANKRUPTCY COURT

3   FOR THE DISTRICT OF DELAWARE

    ----------------------------------------x

4   In Re:

5   Energy Future Holdings Corporation, et al.,

6                  Debtors.

7   Chapter 11

8   Case No. 14-10979

9   Jointly Administered

10  ----------------------------------------x

11

12           * * *CONFIDENTIAL* * *

13        DEPOSITION OF ANDY WRIGHT

14           New York, New York

15           October 19, 2016

16

17

18

19

20

21

22

23  Reported by:

24  KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25  JOB NO. 114065

# REDACTED

1

2            UNITED STATES BANKRUPTCY COURT

3             FOR THE DISTRICT OF DELAWARE

4    ------------------------------------x

5    In Re:

6    Energy Future Holdings Corporation,

7    et al.,

8                         Debtors.

9

10   Chapter 11

11   Case No. 14-10979

12   Jointly Administered

13   ------------------------------------x

14

15

16            DEPOSITION OF MARK HICKSON

17              New York, New York

18              October 25, 2016

19

20

21

22   Reported by:

23   MARY F. BOWMAN, RPR, CRR

24   JOB NO. 114645

25

# REDACTED

# EXHIBIT 3

**PUC DOCKET NO. 46238**

| | | |
|---|---|---|
| **JOINT REPORT AND APPLICATION** | § | |
| **OF ONCOR ELECTRIC DELIVERY** | § | **PUBLIC UTILITY COMMISSION** |
| **COMPANY LLC AND NEXTERA** | § | |
| **ENERGY, INC. FOR REGULATORY** | § | **OF TEXAS** |
| **APPROVALS PURSUANT TO PURA** | § | |
| **§§ 14.101, 39.262 AND 39.915** | § | |
| | § | |

**TABLE OF CONTENTS**

| <u>Section</u> | <u>Page</u> |
|---|---|
| Joint Report and Application | 2 |
| Exhibit A – Application for Sale, Transfer, or Merger | 25 |
| Exhibit B – Proposed Direct and Newspaper Notice | 44 |
| Exhibit C – Proposed Protective Order | 45 |
| Exhibit D – Proposed Preliminary Order | 63 |
| **Testimony** | |
| Robert Shapard | 67 |
| David Davis | 90 |
| James Greer | 100 |
| Stephen Ragland | 115 |
| Mark Hickson | 127 |
| Jess Totten | 189 |
| Michael Spoor | 295 |
| John Reed | 314 |
| Patrick Neligan, Jr. | 498 |

1   **Q.    WHO ARE THE WITNESSES TESTIFYING IN SUPPORT OF THE**

2   **APPLICATION?**

3   A.    Mr. Robert Shapard introduces the Oncor witnesses in his Direct Testimony.  The

4   table that follows identifies the NextEra Energy witnesses and describes the subject

5   matter addressed by each witness in the order in which their Direct Testimony

6   appears in the Application.

7   **TABLE 1: NEXTERA ENERGY WITNESSES**

| WITNESS | SUMMARY |
|---|---|
| **Mark Hickson**<br>Senior Vice President, Corporate Development, Strategy, and Integration, NextEra Energy | - Introduces NextEra Energy's witnesses, and presents the Proposed Transactions<br><br>- Describes the specific relief sought by the Applicants in this proceeding, and discusses why the Proposed Transactions are in the public interest and should be approved<br><br>- Sponsors NextEra Energy's proposed Regulatory Commitments |
| **Jess Totten**<br>Principal, Osprey Energy Group, LLC | - Describes the protections provided by PURA and the Commission's rules regarding interactions between a Texas electric utility and its affiliates<br><br>- Describes the affiliate relationships that Oncor had under EFH ownership and those that Oncor will have under NextEra Energy's ownership<br><br>- Sponsors Oncor's updated Code of Conduct and other affiliate conduct-related Regulatory Commitments as proposed by NextEra Energy<br><br>- Provides an expert opinion regarding whether the updated Code of Conduct and other affiliate conduct-related Regulatory Commitments ensure sufficient protections among and between Oncor and its affiliates and support a finding that the Proposed Transactions are in the public interest |

PUC Docket No. 46238                                    Mark Hickson – Direct
                                                              NextEra Energy, Inc.

140

| WITNESS | SUMMARY |
|---|---|
| **Michael Spoor**<br>Vice President, Transmission and Substation, Florida Power & Light Company | - Describes NextEra Energy's qualifications, experience, and commitment to ensuring that Oncor customers continue to receive safe and reliable electric service at a reasonable cost after the Proposed Transactions close |
| **John Reed**<br>Chairman and Chief Executive Officer, Concentric Energy Advisors, Inc. | - Provides an expert opinion regarding whether the Proposed Transactions meet the Commission's standards for approval and the basis for that opinion, including a review of key features of the Proposed Transactions and NextEra Energy's Regulatory Commitments<br><br>- Discusses certain legacy liabilities at the EFH and/or EFIH level, and testifies that there are no expected negative consequences for Oncor and its customers arising from these legacy liability issues<br><br>- Discusses improvements in Oncor's financial strength, credit ratings, and other benefits that will be created as a result of the Proposed Transactions<br><br>- Supports NextEra Energy's proposed ring-fence structure and financial protections for Oncor |
| **Patrick Neligan, Jr.**<br>Partner, Neligan LLP | - Discusses the Joint Plan and the process and timing necessary to receive Bankruptcy Court approval of the Joint Plan as well as the potential impact of continued delays in EFH's emergence from bankruptcy |

1              **III.  NEXTERA ENERGY**

2    **Q.    PLEASE PROVIDE AN OVERVIEW OF NEXTERA ENERGY.**

3    A.    NextEra Energy is a financially strong industry leader that delivers safe, reliable,

4          and economical electric utility service to millions of customers.  NextEra Energy is

5          a Fortune 200 company with consolidated 2015 revenues of approximately $17.5

6          billion and total assets of approximately $85 billion.  NextEra Energy has

7          approximately 14,300 employees in 27 states and Canada, including Texas.

PUC Docket No. 46238                              Mark Hickson – Direct
                                                  NextEra Energy, Inc.

141

1     National Association.  NextEra Energy's access to these institutions to support the

2     proposed acquisition demonstrates its strong financial position, strengthens its

3     ability to access capital, and provides further assurance of NextEra Energy's ability

4     to obtain financing for the Proposed Transactions.

5   **Q.**    **HAS NEXTERA ENERGY REACHED ANY OTHER DECISIONS WITH**

6     **RESPECT TO THE BANKRUPTCY PROCEEDING THAT ARE**

7     **IMPORTANT TO SUPPORT THE PROPOSED TRANSACTIONS?**

8   A.    Yes.  Mr. Neligan's Direct Testimony describes pending "make whole" litigation

9     arising from the bankruptcy proceeding.  The litigation primarily involves claims

10     with respect to first lien and second lien debt.  Oncor and its customers will be

11     unaffected by the outcome of this litigation.

12  **Q.**    **IS THE CONSIDERATION THAT NEXTERA ENERGY WILL PAY FOR**

13     **ONCOR EQUAL TO THE REASONABLE VALUE OF ONCOR'S ASSETS?**

14  A.    While no assets of Oncor will be directly sold, leased, or transferred, the

15     consideration that NextEra Energy will pay for EFH is the result of a competitive

16     sale process, which typically leads to a reasonable value for a seller's assets,

17     including Oncor.  Therefore, the total enterprise value of approximately $18.7

18     billion is a reasonable value for Oncor in its entirety, and proportionately EFH's

19     80.03 percent indirect interest, TTHC's 19.75 percent interest, and OMI's 0.22

20     percent interest in Oncor.

21  **Q.**    **HAS NEXTERA ENERGY MADE ANY COMMITMENTS TO FURTHER**

22     **SUPPORT THE PROPOSED ACQUISITION OF ONCOR?**

23  A.    Yes.  In addition to its commitment to extinguish the debt directly above Oncor,

PUC Docket No. 46238                       Mark Hickson – Direct
NextEra Energy, Inc.

152

1 **Q.    WILL THERE BE LEGACY LIABILITIES AT THE EFH AND/OR EFIH**

2 **LEVEL THAT NEED TO BE RESOLVED?**

3 A.    Yes, there are certain legacy liabilities that need to be addressed: (1) claims against

4 EFH relating to asbestos exposure; (2) a transaction-related tax liability that

5 presents a remote potential liability for EFH; and (3) potential "make-whole"

6 claims against EFIH.

7 **Q.    WHAT ARE THE EXPECTED CONSEQUENCES FOR ONCOR AND ITS**

8 **CUSTOMERS ARISING FROM THESE LEGACY LIABILITY ISSUES?**

9 A.    There are no negative consequences for Oncor or its customers.  NextEra Energy

10 has committed that none of the expenses or liabilities related to EFH's bankruptcy

11 will be recovered through rates charged by Oncor (Regulatory Commitment 32).

12 **Q.    PLEASE DESCRIBE THE RISKS RELATED TO CLAIMS AGAINST EFH**

13 **RELATING TO ASBESTOS EXPOSURE AND THE STEPS NEXTERA**

14 **ENERGY AND EFH HAVE TAKEN TO MITIGATE THESE RISKS.**

15 A.    These risks relate to exposure to asbestos claims filed against EFH and certain

16 asbestos subsidiaries.  The primary steps taken by NextEra Energy and EFH to

17 mitigate these risks include extensive due diligence to understand the nature, merit,

18 and estimated liability exposure of any asbestos claims and the establishment of an

19 escrow account to fund payments and expenses associated with these estimated

20 liabilities.  The due diligence conducted by NextEra Energy and EFH included

21 gaining an understanding of the prevalence and settlement history of past claims,

22 reviewing claims proceedings, seeking input from asbestos experts, forensic

23 accountants, and other consultants, and conducting actuarial analyses of the

PUC Docket No. 46238                                              John Reed – Direct
                                                                          NextEra Energy, Inc.

331

1    significant threat to the financial health of Merger Sub, and pose no threat to the

2    financial strength of Oncor.  NextEra Energy's plans to mitigate, manage, and

3    resolve these issues are robust and reliable, and will not result in these potential

4    liabilities being borne by Oncor's customers.  *See* Regulatory Commitment 32.

5  **Q.    YOU MENTIONED AN ADDITIONAL LEGACY LIABILITY RELATED**

6  **TO "MAKE-WHOLE" CLAIMS AGAINST EFIH.  WHAT ARE THESE**

7  **CLAIMS?**

8  A.    The "make-whole" claims against EFIH are described in more detail in the Direct

9    Testimony of Mr. Patrick Neligan, Jr.  Prior to the EFH bankruptcy, EFIH had

10    substantial first lien and second lien note debt.  The indentures for these notes

11    contained provisions that, if the notes were redeemed before maturity, the holders

12    would be entitled to certain lump-sum, make-whole payments.  After the

13    commencement of the EFH bankruptcy proceeding, EFIH refinanced all of its first

14    lien debt and some of its second lien debt.  The noteholders have argued that this

15    refinancing made the make-whole payments due and payable.

16    This issue was litigated as part of the bankruptcy proceeding.  The

17    Bankruptcy Court and the U.S. District Court for the District of Delaware both

18    determined that no make-whole payments were due to first or second lien

19    noteholders, but the noteholders have appealed these decisions and the claims are

20    now pending before the U.S. Third Circuit Court of Appeals.

PUC Docket No. 46238                                                John Reed – Direct
                                                                   NextEra Energy, Inc.

334

1   **Q.   IF THE THIRD CIRCUIT COURT OF APPEALS DETERMINES THAT**

2   **THE MAKE-WHOLE CLAIMS SHOULD BE ALLOWED, COULD THAT**

3   **IMPACT ONCOR?**

4   A.    No.  As explained in the Direct Testimonies of Messrs. Neligan and Hickson, even

5         if the Third Circuit Court of Appeals determines that the make-whole payments are

6         due, in no event will the make-whole claims be the responsibility of Oncor and its

7         customers.

8   **Q.   IS THERE ANY NEED FOR ADDITIONAL COMMITMENTS TO**

9   **PROTECT ONCOR AND ITS CUSTOMERS FROM THESE POTENTIAL**

10  **LIABILITIES?**

11  A.    No.  These issues have been more than adequately addressed in the Regulatory

12        Commitments for the Proposed Transactions.

13  **Q.   IN EVALUATING THE PROPOSED TRANSACTIONS, DID YOU**

14  **CONSIDER THE POTENTIAL IMPACT ON TEXAS'S ELECTRIC**

15  **MARKETS?**

16  A.    Yes, and I conclude that approval of the Proposed Transactions will not negatively

17        impact the Electric Reliability Council of Texas, Inc. ("ERCOT") competitive

18        generation market or Texas's retail electric market.  As I discuss in more detail later

19        in my Direct Testimony, the Proposed Transactions will simply substitute NextEra

20        Energy for EFH as the ultimate parent of Oncor, returning it to a traditional

21        ownership structure.  As discussed by Mr. Jess Totten in his Direct Testimony,

22        NextEra Energy has made a number of commitments regarding the conduct and

23        activities of its affiliates that are incorporated in a proposed updated Code of

PUC Docket No. 46238                                    John Reed – Direct
                                                       NextEra Energy, Inc.

335

1   A.    Yes.  At a September 26, 2016 hearing, the Honorable Judge Christopher Sontchi

2         discussed this letter and offered certain comments to clarify his view of the

3         Merger Agreement and the termination fee.  Of particular note, Judge Sontchi

4         stated that:

5                 the termination fee is payable by … EFH Holdings Corp. or EFH,
6                 and its direct subsidiary, … Energy Future Intermediate Holding
7                 Company LLC or, as we all know it, EFIH.  It is not payable by
8                 Oncor or its rate payers.  If the termination fee is payable, it will
9                 constitute an administrative expense claim payable by EFH and
10               EFIH.  That administrative expense will be senior in priority to the
11               substantial unsecured claims at EFH and EFIH and will directly
12               and adversely [a]ffect the recoveries of those unsecured
13               creditors.[11]

14   **Q.**    **ARE THERE ANY OTHER DEVELOPMENTS RELATING TO THE EFH**

15         **BANKRUPTCY PROCEEDING THAT YOU WOULD LIKE TO**

16         **DISCUSS?**

17   A.    Yes.  On September 27, 2016, the United States Court of Appeals for the Third

18         Circuit heard consolidated oral argument in appeals regarding the EFIH first and

19         second lien "make-whole" claims that were not allowed in the EFH bankruptcy

20         proceeding.  To summarize this issue briefly, at the time of the bankruptcy filing,

21         EFH's subsidiary, EFIH, had substantial first lien and second lien note debt.  In

22         the Third Circuit proceeding, it is argued that the indentures for these notes

23         contained provisions that provide that, if the notes were redeemed before

24         maturity, the holders would be entitled to certain one-time lump-sum "make-

25         whole" payments to account for the future interest payments they would no longer

---

[11] *See In re Energy Future Holdings Corp., et al.*, No. 14-10979 (CSS) (Bankr. D. Del. Sept. 29, 2016), Transcript of Sept. 29, 2016 Hr'g at 14:8-19.

PUC Docket No. 46238                                Patrick Neligan, Jr. – Direct
NextEra Energy, Inc.

508

1 be entitled to receive.  After the commencement of the Bankruptcy Cases, EFIH

2 repaid essentially all of its EFIH first lien debt and a portion of its EFIH second

3 lien debt.  EFH and EFIH argued that the filing of the bankruptcy automatically

4 accelerated these notes and made them immediately due and payable and, as a

5 result, these notes would not be considered to be redeemed prior to maturity, but

6 were paid when due and therefore did not give rise to a make-whole claim.

7   The EFIH first lien and second lien make-whole issue was litigated as part

8 of the EFH bankruptcy proceeding.  The Bankruptcy Court determined that no

9 make-whole payments were due to EFIH first and second lien note-holders.[12]

10 The noteholders appealed to the United States District Court for the District of

11 Delaware, which agreed with the Bankruptcy Court and determined that no make-

12 whole payments were due.[13]  The noteholders subsequently appealed to the Third

13 Circuit, and oral argument was held on September 27, 2016.  The issue is now

14 pending a decision from the Third Circuit.

15 **Q.** **COULD THESE MAKE-WHOLE CLAIMS POTENTIALLY IMPACT**

16  **ONCOR?**

17 A. No.  In no event will such make-whole claims be the responsibility of Oncor or its

18  customers.  NextEra Energy continues to have discussions with holders of first

19  and second lien make-whole claims to settle such claims.  Even if a settlement

---

[12] *See Computershare Trust Company, N.A. v. Energy Future Intermediate Holding Company LLC*, Adv. Pro. No. 14-50405 (CSS), Docket No. 62 (Bankr. D. Del. Oct. 28, 2015); *Delaware Trust Company v. Energy Future Intermediate Holding Company LLC*, Adv. Pro. No. 14-50363 (CSS), Docket No. 304 (Bankr. D. Del. July 8, 2015).

[13] *See Computershare Trust Company, N.A. v. Energy Future Intermediate Holding Company LLC*, Nos. 15-1011-RGA, 15-1014-RGA, 15-1015-RGA, Docket No. 25 (D. Del. Apr. 12, 2016); *Delaware Trust Company v. Energy Future Intermediate Holding Company LLC*, No. 15-620-RGA, Docket No. 57 (D. Del. Feb. 16, 2015).

PUC Docket No. 46238       Patrick Neligan, Jr. – Direct
NextEra Energy, Inc.

509

1    cannot be reached with the holders of first and second lien make-whole claims

2    and the Third Circuit were to overturn the Bankruptcy Court and the District

3    Court and agree with the noteholders that make-whole payments are due, any

4    such claims will reduce the recoveries of the unsecured creditors of EFH and/or

5    be the responsibility of Reorganized EFIH, depending upon the timing of the

6    Third Circuit ruling relative to the effective date of the Joint Plan as it relates to

7    the E-Side Debtors and the timing of the closing of the proposed transaction with

8    EFH.

9    **B.**    **Approval Process for the Joint Plan**

10    **Q.**    **HOW DOES THE PROPOSED TRANSACTION WITH EFH RELATE TO**

11    **THE BANKRUPTCY?**

12    A.    The proposed transaction with EFH is the centerpiece of the Joint Plan as it relates

13    to the E-Side Debtors, which, if successful, would resolve the Bankruptcy Cases

14    for these entities.  Commission approval of the proposed transaction with EFH is

15    one of the conditions to completion of the Joint Plan as it pertains to the E-Side

16    Debtors.

17    **Q.**    **PLEASE DESCRIBE THE PROCESS FOR APPROVAL OF THE**

18    **MERGER AGREEMENT AND CONFIRMATION OF THE JOINT PLAN.**

19    A.    The E-Side Debtors and NextEra Energy have entered into the Merger Agreement

20    and other associated agreements to support the Joint Plan.  On September 19,

21    2016, the EFH Debtors received Bankruptcy Court authorization to enter into and

22    perform under the Merger Agreement and other agreements in connection with

23    the Joint Plan.  On September 19, the Bankruptcy Court also approved

PUC Docket No. 46238            Patrick Neligan, Jr. – Direct
NextEra Energy, Inc.

510

# **<u>EXHIBIT 6</u>**

CONTAINS CONFIDENTIAL PORTION

1

2           UNITED STATES BANKRUPTCY COURT

3            FOR THE DISTRICT OF DELAWARE

4  -------------------------------------x

5  In Re

6  Energy Future Holdings Corporation,

7  et al.,

8                    Debtors.

9

10  Chapter 11

11  Case No. 14-10979

12  Jointly Administered

13  -------------------------------------x

14

15     *CONTAINS CONFIDENTIAL PORTION*

16      DEPOSITION OF DAVID Y. YING

17         New York, New York

18         November 8, 2016

19

20

21

22

23

24  Reported by: MARY F. BOWMAN, RPR, CRR

25  Job No: 115148

# REDACTED

# **EXHIBIT 7**

1            CONFIDENTIAL - ANDY WRIGHT

2    UNITED STATES BANKRUPTCY COURT

3    FOR THE DISTRICT OF DELAWARE

       ----------------------------------------x

4    In Re:

5    Energy Future Holdings Corporation, et al.,

6                Debtors.

7    Chapter 11

8    Case No. 14-10979

9    Jointly Administered

10   ----------------------------------------x

11

12          * * *CONFIDENTIAL* * *

13        DEPOSITION OF ANDY WRIGHT

14         New York, New York

15          October 19, 2016

16

17

18

19

20

21

22

23   Reported by:

24   KATHY S. KLEPFER, RMR, RPR, CRR, CLR

25   JOB NO. 114065

1              CONFIDENTIAL - ANDY WRIGHT

5        Q.    The second lien trustee also has its

6   own claim for fees and expenses.  Are you aware

7   that Computershare has submitted invoices

8   through August 31 to the company for that?

9        A.    Yes.

10       Q.    Has the company reviewed any of those

11  fees yet?

12       A.    No, we have not.

13       Q.    Are you aware of when the company

14  intends to start reviewing those fees?

15       A.    Well, I'm not sure I said this

16  earlier, but as we've said, we will propose a

17  review process in the plan supplement.  It may

18  take the form of an external review, internal

19  review, a combination of the two, but we'll work

20  with the fee committee to do that; and once we

21  put that process in place, we will begin the

22  process of reviewing the fee -- fee applications

23  or the invoices.

24       Q.    And is it contemplated that that fee

25  review process will start shortly after

1             CONFIDENTIAL - ANDY WRIGHT

2    confirmation?

3         A.    Look, we've got a -- we're going to

4    have a fairly lengthy period between

5    confirmation and when the plan actually goes

6    effective because of the PUC review in Texas,

7    and during that period, we will diligently work

8    to review the fees.

9         Q.    Thank you.  Just a few quick followup

10   questions about the -- Ms. Gostin touched on

11   regarding payment of the make-whole claim if

12   it's allowed prior to the effective date.

13        A.    Okay.

14        Q.    So that's the situation where NextEra

15   will have waived the condition?

16        A.    Yes.

17        Q.    What is the source of payment if that

18   claim is allowed pre-effective date and NextEra

19   waives the condition?  Does it come out of the

20   merger sub cash amount?

21             MR. McKANE:  Objection to form.

22   Vague.

23             Go ahead.

24        A.    Yes, it will come out of the pot that

25   basically NextEra is contributing to under the