**EXHIBIT A**

**CERTIFICATION OF ERIC MENDELSOHN**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,[14]<br><br>Debtors. | Chapter 11<br><br>Case No. 14-10979 (CSS)<br><br>(Jointly Administered) |

## CERTIFICATION OF ERIC MENDELSOHN

I, Eric Mendelsohn, hereby certify that:

1.      I am a Managing Director with the applicant firm, Greenhill & Co., LLC ("Greenhill"), and I make this certification in accordance with Local Rule 2016-2 of the United States Bankruptcy Court for the District of Delaware (the "Local Rule").

2.      I have read this Final Fee Application of Greenhill, as financial advisor to the disinterested member of the board of managers of each of Energy Future Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC (collectively, the "TCEH Debtors"), for Allowance of Compensation and Reimbursement of Expenses for the period November 17, 2014 through October 3, 2016.

3.      I understand the Local Rules, and believe that the Application complies with provisions of the Local Rules, the United State Bankruptcy Code and the orders of this Court.

Dated:    November 15, 2016

/s/ Eric Mendelsohn
**Greenhill & Co., LLC**
Eric Mendelsohn
Managing Director
300 Park Avenue
New York, NY 10022

---

[14]    The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810. The location of the debtors' service address is 1601 Bryan Street, Dallas, Texas 75201. Due to the large number of debtors in these Chapter 11 cases, which are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing agent at http://www.efhcaseinfo.com.

**EXHIBIT B**

**COPY OF THE ENGAGEMENT LETTER**

CONFIDENTIAL

November 17, 2014

Energy Future Competitive Holdings Company LLC
1601 Bryan Street
Dallas, Texas 75201

Texas Competitive Electric Holdings Company LLC
1601 Bryan Street
Dallas, Texas 75201

Attn: Hugh E. Sawyer, Manager

Dear Mr. Sawyer:

This letter confirms the terms under which Energy Future Competitive Holdings Company LLC ("EFCH") and Texas Competitive Electric Holdings Company LLC ("TCEH") (EFCH and TCEH shall be referred to herein, collectively with their debtor subsidiaries, as the "Company") have engaged Greenhill & Co., LLC ("Greenhill" or the "Financial Advisor") as the financial advisor to be directed by their respective disinterested manager (the "Disinterested Manager") in respect of the Company's proceedings (the "Bankruptcy Proceeding") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and a possible Restructuring (as defined below) and with respect to such other financial matters as to which the Company and the Financial Advisor may agree in writing during the term of this engagement, as more specifically discussed herein. For purposes hereof, the term "Company" includes any entity formed or invested in by TCEH and/or EFCH to consummate a Restructuring, and shall also include any successor to or assignee of all or substantially all of the assets and/or business of any such entity, whether pursuant to a Plan (as defined below) or otherwise. If appropriate in connection with performing its services for the Company hereunder, the Financial Advisor may utilize the services of one or more of its affiliates, in which case references herein to the Financial Advisor shall include such affiliates.

All of the obligations of the Company under this Agreement shall be the joint and several obligations of EFCH and TCEH.

1.    Scope of Services. In connection with its engagement hereunder, the Financial Advisor proposes to undertake the below services on behalf of the Company at the direction of the Disinterested Manager:

    a.    General Financial Advisory Services. The Financial Advisor shall, in each case if reasonably requested by the Disinterested Manager:

        i.    review and analyze the business, operations, and financial projections of the Company;

        ii.    evaluate the Company's potential debt capacity in light of its projected cash flows;

        iii.    assist in the determination of a capital structure for the Company;

        iv.    assist in the determination of a range of values for the Company on a going concern basis;

        v.    advise and attend meetings of the Company's Board of Managers and its Committees with respect to matters on which we have been engaged to advise hereunder; and

        vi.    provide such other financial advisory and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Disinterested Manager and Greenhill.

    b.    Restructuring Services. If the Company determines to pursue a Restructuring, the Financial Advisor shall, in each case if reasonably requested by the Disinterested Manager and at the direction of the Disinterested Manager:

        i.    advise and assist the Company at the direction of the Disinterested Manager in structuring and effecting the financial aspects of such a Restructuring, subject to the terms and conditions of this agreement;

        ii.    provide financial advice and assistance to the Company at the direction of the Disinterested Manager in developing and seeking approval of a Restructuring plan (as the same may be modified from time to time, a "Plan") under chapter 11 of the Bankruptcy Code;

        iii.    in connection therewith, provide financial advice and assistance to the Company at the direction of the Disinterested Manager in structuring any new securities, other consideration or other inducements to be offered and/or issued under the Plan;

iv.   assist the Company at the direction of the Disinterested Manager
      and/or participate in negotiations with entities or groups affected
      by the Plan;

v.    provide testimony, as necessary, with respect to matters on which
      we have been engaged to advise the Company at the direction of
      the Disinterested Manager in the Bankruptcy Proceeding; and

vi.   assist the Company at the direction of the Disinterested Manager in
      preparing and/or reviewing documentation within our area of
      expertise required in connection with the Plan.

For purposes of this agreement, the term "Restructuring" shall mean any sale,
recapitalization, reorganization and/or restructuring (including, without limitation,
through any exchange, conversion, cancellation, settlement, forgiveness, retirement
and/or modification or amendment to the terms, conditions or covenants) of all or a
portion of the Company's equity and/or debt securities and/or other indebtedness,
obligations or liabilities (including, without limitation, bank debt, swap liabilities,
pension liabilities, OPEB liabilities, preferred stock, partnership interests, capital or
operating lease obligations, trade claims, other contract or tort obligations, and other on
and off balance sheet indebtedness), however such result is achieved, including, without
limitation, pursuant to an exchange transaction, a Plan or a solicitation of consents,
waivers, acceptances or authorizations, an acquisition or sale related transaction, the
issuance of new securities or debt instruments and/or other similar transactions or series
of transactions.

In rendering its services to the Company hereunder, the Financial Advisor is not
assuming any responsibility for the Company's underlying business decision to pursue (or
not to pursue) any business strategy or to effect (or not to effect) any Restructuring or
other transaction (each, a "Transaction"). The Company and the Disinterested Manager
agree that the Financial Advisor shall not have any obligation or responsibility to provide
accounting, audit, "crisis management," or business consultant services for the Company
and shall have no responsibility for designing or implementing operating, organizational,
administrative, cash management or liquidity improvements. Nothing in this Agreement
is intended to obligate or commit the Financial Advisor to provide any services other than
those set forth above. Each of the Company and the Disinterested Manager confirms that
it will rely on its own counsel, accountants and other similar expert advisors for legal,
accounting, tax, regulatory and other similar advice.

The Company shall make available to the Financial Advisor all information concerning
the business, assets, operations, financial condition and prospects of the Company that
the Financial Advisor reasonably requests in connection with the services to be
performed for the Company hereunder and shall provide the Financial Advisor with
reasonable access to the Company's officers, managers, employees, independent
accountants, counsel and other advisors and agents as the Financial Advisor deems
reasonably appropriate.   In order to coordinate effectively the Company's and the
Financial Advisor's activities to effect a Transaction, the Company will promptly inform

the Financial Advisor of any discussions, negotiations or inquiries regarding a possible Transaction (including any such discussions, negotiations or inquiries that have occurred prior to the date of this agreement). The Company represents that all information furnished by it or on its behalf to the Financial Advisor, at all times during the Financial Advisor's engagement will be accurate and complete in all material respects. Each of the Disinterested Manager and the Company recognizes and confirms that in advising the Disinterested Manager and completing its engagement hereunder, the Financial Advisor will be using and relying on publicly available information and on data, material and other information furnished to the Financial Advisor by the Company and other parties. It is understood that in performing under this engagement, the Financial Advisor may assume and rely upon the accuracy and completeness of, and is not assuming any responsibility for independent verification of, such publicly available information and the other information so furnished.

2.    Compensation. The Financial Advisor's compensation for services rendered under this agreement will consist of the following cash fees:

   a.    Monthly Advisory Fee. A non-refundable financial advisory fee of $250,000 per month (the "Monthly Advisory Fee"), which shall be due and paid promptly by the Company monthly in advance, commencing upon execution of this engagement letter. The Monthly Advisory Fee shall continue to be payable thereafter on each monthly anniversary thereof during the term of this engagement.

   b.    Transaction Fee. Upon consummation of any Restructuring, the Financial Advisor shall be entitled to receive a transaction fee (the "Transaction Fee"), payable promptly at the closing thereof, equal to $9,500,000.

   c.    Credit of Fee. An amount equal to 50% of any Monthly Advisory Fees that arise after the 9th month of the term of this Agreement, to the extent paid, shall be creditable against the Transaction Fee.

3.    Recognition of Fee Structure. The Company and the Financial Advisor acknowledge and agree that the hours worked, the results achieved and the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and the Financial Advisor have taken this into account in setting the fees hereunder. No fee payable to any other person, by the Company or any other party, shall affect any fee payable to the Financial Advisor hereunder.

4.    Out-of-Pocket Expenses. In addition to any fees payable by the Company to the Financial Advisor hereunder, the Company shall, whether or not any transaction contemplated by this agreement shall be proposed or consummated, reimburse the Financial Advisor on a monthly basis for its travel and other reasonable and documented out-of-pocket expenses (including all fees and expenses of counsel) incurred in connection with, or arising out of the Financial Advisor's activities under or contemplated by this engagement. The Company shall also reimburse

the Financial Advisor, at such times as the Financial Advisor shall request, for any sales, use or similar taxes (including additions to such taxes, if any) arising in connection with any matter referred to or contemplated by, this engagement. All such reimbursements shall be made promptly upon submission by the Financial Advisor of statements for such expenses.

In the event the Financial Advisor, any of its affiliates, or any of their respective officers, managers, employees, agents and each other entity or person, if any, controlling the Financial Advisor or any of its affiliates (collectively, the "Greenhill Parties") is: (i) required to appear as a witness or to produce documents in any Proceeding (as defined in Schedule A hereto) brought by or against the Company or any participant in any transaction covered hereby in which a Greenhill Party is not named as a defendant; or (ii) requested by the Company to appear as a witness, to produce documents or to assist the Company in the preparation of its position in any Proceeding brought by or against the Company or any participant in any transaction covered hereby in which a Greenhill Party is not named as a defendant, the Company agrees to reimburse the Financial Advisor or such Greenhill Party, as appropriate, for all reasonable expenses (including, without limitation, fees and expenses of legal counsel) as incurred by it in connection with such party's preparing and appearing as a witness, producing documents or in its assistance to the Company for the preparation of its position; provided, however that the Company shall not be obligated to reimburse Financial Advisor or such Greenhill Party for the allocated cost of any internal legal counsel. The obligations set forth in this paragraph shall survive any termination of this Agreement.

5.    Indemnification.  The Company agrees to indemnify the Financial Advisor and certain related persons in accordance with the indemnification provisions ("Indemnification Provisions") attached to this agreement as Schedule A. Such Indemnification Provisions are an integral part of this agreement, and the terms thereof are incorporated by reference herein. Such Indemnification Provisions shall survive any termination or completion of the Financial Advisor's engagement hereunder.

6.    Termination.  This agreement and the Financial Advisor's engagement hereunder may be terminated by either the Disinterested Manager or the Financial Advisor at any time, upon 30 days prior written notice thereof to the other party, provided, however, that (a) termination of the Financial Advisor's engagement hereunder shall not affect the Company's continuing obligation to indemnify the Financial Advisor and certain related persons as provided for in Schedule A to this agreement, and its continuing obligations and agreements under paragraphs 7, 8, 9, 10 and 12 hereof, (b) notwithstanding any such termination (except in the case of a termination of this engagement by Financial Advisor that is not the result of a breach by the Company or the Disinterested Manager that had not been promptly remedied upon written request by the Financial Advisor), the Financial Advisor, shall, to the extent applicable, be entitled to the full fees in the amounts and at the times provided for in paragraph 2 hereof in respect of any Restructuring

announced or resulting from negotiations occurring during the period from the date hereof until twelve months following any such termination, and (c) any termination of the Financial Advisor's engagement hereunder shall not affect the Company's obligation to pay any fees accrued or reimburse any expenses incurred through the date of termination.

7.    Independent Contractor.   The Financial Advisor has been retained under this agreement as an independent contractor with no fiduciary or agency relationship to the Disinterested Manager, the Company or to any other party.  The advice (oral or written) rendered by the Financial Advisor pursuant to this agreement is intended solely for the benefit and use of the Company and the Disinterested Manager in considering the matters to which this agreement relates, and the Company and the Disinterested Manager agree that such advice may not be relied upon by any other person or entity, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner for any purpose, nor shall any public references to the Financial Advisor be made by the Company or the Disinterested Manager, without the prior written consent of the Financial Advisor.

8.    Credit.  The Disinterested Manager agrees that the Financial Advisor shall have the right to place advertisements in financial and other newspapers and journals at its own expense describing its services to the Disinterested Manager hereunder; provided that the Financial Advisor will submit a copy of any such advertisement to the Company and the Disinterested Manager for their approval, which approval shall not be unreasonably withheld or delayed.

9.    Choice of Law; Jurisdiction.  This agreement shall be deemed to be made in New York.    This agreement and all controversies arising from or relating to performance of this agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to such state's rules concerning conflicts of laws that might provide for any other choice of law.   The Company and the Financial Advisor hereby irrevocably consents to personal jurisdiction in the Supreme Court of the State of New York in New York County, Commercial Part, or any Federal court sitting in the Southern District of New York for the purposes of any suit, action or other proceeding arising out of this agreement or any of the agreements or transactions contemplated hereby, which is brought by or against the Company or the Financial Advisor, hereby waives any objection to venue with respect thereto, and hereby agrees that all claims in respect of any such suit, action or proceeding shall be heard and determined in any such court, and that such courts shall have exclusive jurisdiction over any claims arising out of or relating to such agreements or transactions; provided that during the pendency of the Bankruptcy Proceeding, each of the Company and the Financial Advisor agree that any such claims shall be heard and determined by the Bankruptcy Court (as defined below). The Company and the Financial Advisor hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail,

postage prepaid, to the Company or the Financial Advisor (as applicable) at its address set forth above, such service to become effective ten (10) days after such mailing. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR ACTION ARISING OUT OF THIS AGREEMENT OR CONDUCT IN CONNECTION WITH THE FINANCIAL ADVISOR'S ENGAGEMENT IS HEREBY WAIVED.

10.    Successors and Assigns.  This agreement shall be binding upon the Financial Advisor and the Company and their respective successors and assigns (including, in the case of the Company, any successor to all or a substantial portion of the assets and/or the businesses or operations of the Company under a Plan).  This agreement is not intended to confer any rights upon any shareholder, creditor, owner or partner of the Company, or any other person or entity not a party hereto other than the Indemnified Persons referenced in the Indemnification Provisions contained herein.

11.    Chapter 11.  The Company shall use its commercially reasonable efforts to promptly apply to the bankruptcy court having jurisdiction over its chapter 11 cases (the "Bankruptcy Court") for the approval pursuant to sections 327 and 328 of the Bankruptcy Code of this agreement and the Financial Advisor's retention by the Company under the terms of this agreement and subject to the standard of review provided in section 328(a) of the Bankruptcy Code and not subject to any other standard of review under section 330 of the Bankruptcy Code.    The Company shall supply the Financial Advisor with a draft of such application and any proposed order authorizing the Financial Advisor's retention sufficiently in advance of the filing of such application and proposed order to enable the Financial Advisor and its counsel to review and comment thereon. The Financial Advisor shall have no obligation to provide any services under this agreement unless the Financial Advisor's retention under the terms of this agreement is approved under section 328(a) of the Bankruptcy Code by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is acceptable to the Financial Advisor in all material respects. The Financial Advisor acknowledges that in the event that the Bankruptcy Court approves its retention by the Company, the Financial Advisor's fees and expenses shall be subject to the jurisdiction and approval of the Bankruptcy Court under section 328(a) of the Bankruptcy Code and any applicable fee and expense guideline orders.  In the event that the Financial Advisor's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses of the Financial Advisor hereunder as promptly as practicable in accordance with the terms hereof.

12.    Entire Agreement.  This agreement (together with the Confidentiality Agreement, dated December 1, 2014, between the parties) embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or

effective unless the same is set forth in writing signed by a duly authorized representative of each party.

13.  Authority.  Each party hereto represents and warrants that it has all requisite power and authority to enter into this agreement and the transactions contemplated hereby.  Each party hereto further represents and warrants that this agreement has been duly and validly authorized by all necessary corporate or other action on the part of the Company or the Financial Advisor (as applicable) and has been duly executed and delivered by the Company or the Financial Advisor (as applicable) and constitutes a legal, valid and binding agreement of the Company or the Financial Advisor (as applicable), enforceable in accordance with its terms; provided, however, that the Financial Advisor hereby acknowledges that its retention in any chapter 11 case by the Company shall be subject to prior Bankruptcy Court approval as provided in paragraph 11 of this agreement.

14.  Counterparts.  For the convenience of the parties, any number of counterparts of this Agreement may be executed by the parties hereto.  Each such counterpart shall, and shall be deemed to, be an original instrument, but all such counterparts taken together shall constitute one and the same agreement.

We are pleased to accept this engagement and look forward to working with the Disinterested Manager and the Company.  Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this letter, which shall thereupon constitute a binding agreement between the Financial Advisor and the Company.

Very truly yours,

Greenhill & Co., LLC

By: _____
Bradley A. Robins
Managing Director

By: _____
Eric Mendelsohn
Managing Director

Accepted and Agreed to:

Energy Future Competitive Holdings Company LLC

By: _____
Hugh E. Sawyer, Manager

Accepted and Agreed to:

Texas Competitive Electric Holdings Company LLC

By: _____
Hugh E. Sawyer, Manager

SCHEDULE A

INDEMNIFICATION

Recognizing that transactions of the type contemplated in the attached letter agreement sometimes result in litigation and that Greenhill's role is advisory, the Company agrees to indemnify and hold harmless Greenhill, its affiliates and their respective officers, directors, employees, agents and each other entity or person, if any, controlling Greenhill or any of its affiliates (collectively, the "Indemnified Parties"), from and against any losses, claims, damages, demands and liabilities (or actions or proceedings in respect thereof), joint or several, related to or arising in any manner out of any activities performed or services furnished pursuant to the attached letter agreement, the transactions contemplated thereby or Greenhill's role in connection therewith (the "Indemnified Activities"). In addition, the Company will promptly reimburse the Indemnified Parties for all expenses (including, without limitation, fees and expenses of external legal counsel), as incurred, in connection with (i) the investigation of, preparation for or defense or pursuit of any pending or threatened investigative, administrative, judicial, or regulatory or other claim, action or proceeding or any arbitration or investigation in any jurisdiction related to or arising in any manner out of any Indemnified Activities, whether or not in connection with pending or threatened litigation to which Greenhill (or any other Indemnified Party) or the Company or any of its securityholders is a party (collectively, "Proceedings") and (ii) enforcing any Indemnified Parties rights under the attached letter agreement (including this Schedule A); provided, however the Company shall not be obligated to provide reimbursement of expenses to any Indemnified Party with respect to any successful action by the Company against an Indemnified Party to enforce the attached letter agreement. Notwithstanding the foregoing, the Company shall not be liable in respect of any losses, claims, damages, demands, liabilities or expenses that a court of competent jurisdiction shall have determined by final nonappealable judgment resulted solely from the gross negligence, bad faith or willful misconduct of an Indemnified Party.

Upon receipt by an Indemnified Party of actual notice of a Proceeding against such Indemnified Party in respect of which indemnity may be sought hereunder, such Indemnified Party shall promptly notify the Company with respect thereto. In addition, an Indemnified Party shall promptly notify the Company after any Proceeding is commenced (by way of service with a summons or other legal process giving information as to the nature and basis of the claim) against such Indemnified Party in respect of which indemnity may be sought hereunder. In any event, failure to notify the Company shall not relieve the Company from any liability which the Company may have on account of this indemnity or otherwise, except to the extent the Company shall have been materially prejudiced by such failure, including the forfeiture by the Company of substantial rights and defenses. The Company will, if requested by any Indemnified Party, assume the defense of any Proceeding in respect of which indemnity may be sought hereunder, including the employment of counsel reasonably satisfactory to Greenhill and the payment of the fees and expenses of such counsel, in which event, except as provided below, the Company shall not be liable for the fees and expenses of any other counsel

retained by any Indemnified Party in connection with such Proceeding. In any such Proceeding the defense of which the Company shall have so assumed, any Indemnified Party shall have the right to participate in such Proceeding and to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (i) the Company and such Indemnified Party shall have mutually agreed in writing to the retention of such counsel, (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner or (iii) the named parties to any such Proceeding (including any impleaded parties) include the Company and such Indemnified Party and representation of both parties by the same counsel would, in the opinion of counsel to such Indemnified Party, be inappropriate due to actual or potential conflicts of interests between the Company and such Indemnified Party, including situations in which there are one or more legal defenses available to the Indemnified Party that are different from or additional to those available to the Company. The Company shall not be liable for any settlement of any Proceeding effected without its written consent, but if settled with such consent or if there is a final judgment against an Indemnified Party, the Company agrees to indemnify the Indemnified Party from and against any loss or liability by reason of such settlement or judgment. The Company will not settle any Proceeding in respect of which indemnity may be sought hereunder, whether or not any Indemnified Party is an actual or potential party to such Proceeding, without Greenhill's written consent, which shall not be unreasonably withheld, conditioned or delayed, provided, however, the Company may make such a settlement without the consent of Greenhill if the settlement includes an unconditional release of the Indemnified Parties from any and all liability arising out of such Proceeding and does not include a statement as to or an admission of fault, culpability or a failure to act, by or on behalf of any Indemnified Party.

The Company agrees that if any indemnification or reimbursement sought pursuant to this Schedule A were for any reason not to be available to any Indemnified Party or insufficient to hold it harmless as and to the extent contemplated by this Schedule A, then the Company shall contribute to the amount paid or payable by such Indemnified Party in respect of losses, claims, damages and liabilities in such proportion as is appropriate to reflect the relative benefits to the Company and its shareholders on the one hand, and Greenhill on the other, in connection with the transactions contemplated by the attached letter agreement (whether or not consummated) as well as any other equitable considerations. It is hereby agreed that the relative benefits to the Company and/or its shareholders and to Greenhill with respect to transactions contemplated by the attached letter agreement shall be deemed to be in the same proportion as (i) the total value received or contemplated to be received by the Company and/or its shareholders pursuant to transactions contemplated by the attached letter agreement (whether or not consummated) bears to (ii) the fees paid or to be paid to Greenhill under the attached letter agreement. In no event shall the Indemnified Parties be required to contribute or otherwise be liable for an amount in excess of the aggregate amount of fees actually received by Greenhill pursuant to the attached letter agreement (excluding amounts received by Greenhill as reimbursement of expenses).

The Company further agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or any person asserting

claims on behalf of or in right of the Company for or in connection with Greenhill's engagement hereunder or the transactions contemplated by the attached letter agreement except for losses, claims, damages, liabilities or expenses that a court of competent jurisdiction shall have determined by final nonappealable judgment resulted solely from the gross negligence, bad faith or willful misconduct of such Indemnified Party. The indemnity, reimbursement and contribution obligations of the Company shall be in addition to any liability which the Company may otherwise have to an Indemnified Party, shall not be limited by any rights that an Indemnified Party may otherwise have and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company or an Indemnified Party.

The indemnity, reimbursement and contribution provisions set forth herein shall remain operative and in full force and effect regardless of (i) any withdrawal, termination or consummation of or failure to initiate or consummate any transaction contemplated by the attached letter agreement, (ii) any investigation made by or on behalf of any party hereto or any person controlling (within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended) any party hereto, (iii) any amendment or other modification or termination or the completion or expiration of the attached letter agreement or Greenhill's engagement and (iv) whether or not Greenhill shall, or shall not be called upon to, render any formal or informal advice in the course of such engagement.

**EXHIBIT C**

**COPY OF THE GREENHILL RETENTION ORDER**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ENERGY FUTURE HOLDINGS | ) | Case No. 14-10979 (CSS) |
| CORP., et al.[1], | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | **RE: Docket Nos. 3062 and 3580** |

## AMENDED AND RESTATED ORDER AUTHORIZING
## ENERGY FUTURE COMPETITIVE HOLDINGS COMPANY LLC
## AND TEXAS COMPETITIVE ELECTRIC HOLDINGS COMPANY LLC
## TO RETAIN AND EMPLOY GREENHILL & CO. AS INDEPENDENT
## FINANCIAL ADVISOR EFFECTIVE *NUNC PRO TUNC* TO NOVEMBER 17, 2014

Upon the application (the "**Application**")[2] of debtors and debtors-in-possession Energy

Future Competitive Holdings Company LLC ("**EFCH**"), and Texas Competitive Electric

Holdings Company LLC ("**TCEH**" and with EFCH and their debtor subsidiaries, the "**TCEH**

**Debtors**") for entry of an order authorizing the TCEH Debtors to retain and employ Greenhill &

Co., LLC ("**Greenhill**") as their independent financial advisor in connection with Conflict

Matters (including the determination by the TCEH Debtors' Disinterested Manager of whether

any matter constitutes a "**Conflict Matter**"), effective *nunc pro tunc* to November 17, 2014; all

as more fully set forth in the Application, the Robins Declaration and the Supplemental Robins

Declaration; and the Court having previously entered the *Order Authorizing Energy Future*

*Competitive Holdings Company LLC and Texas Competitive Electric Holdings Company LLC to*

*Retain and Employ Greenhill & Co. as Independent Financial Advisor Effective Nunc Pro*

---

[1]  The last four digits of Energy Future Holdings Corp.'s tax identification number are 8810.  The location of the debtors'
service address is 1601 Bryan Street, Dallas, Texas 75201.  Due to the large number of debtors in these chapter 11 cases, which
are being jointly administered, a complete list of the debtors and the last four digits of their federal tax identification numbers is
not provided herein.  A complete list of such information may be obtained on the website of the debtors' claims and noticing
agent at http://www.efhcaseinfo.com.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application and/or the
Initial Order (as defined herein).

*Tunc to November 17, 2014* on January 13, 2015 (the "**Initial Order**") [D.I. 3283], whereby this Court found that: (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) venue of this case and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409, (d) the relief requested in the Application, as modified by the Initial Order was in the best interests of the TCEH Debtors' estates, their creditors, and other parties-in-interest, (e) the TCEH Debtors had provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances; and the Official Committee of TCEH Unsecured Creditors (the "**Committee**") having filed an Objection to the Application on January 9, 2015 (the "**Objection**") [D.I. 3222]; and a hearing on the Application having occurred on January 13, 2015 before this Court (the "**Hearing**"); and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at such Hearing; and the Court having determined that the terms and conditions of Greenhill's employment (as modified by the Initial Order), including the Fee and Expense Structure set forth in the Greenhill Engagement Letter (attached to the Initial Order as Exhibit 1), were reasonable as required by § 328(a) of the Bankruptcy Code; and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing established just cause for the relief granted therein; and the various parties having consensually agreed that any determination with respect to approval of Greenhill's Transaction Fee was to be deferred to a future time; and the parties now having consensually agreed to all issues related to the Fee and Expense Structure set forth in the Greenhill Engagement Letter, including the payment of the Transaction Fee; and the Committee having withdrawn its Objection; and the Court having found that the payment of the Transaction Fee, pursuant to the terms of the Greenhill Engagement Letter, is in the best interests of the

TCEH Debtors' estates, their creditors, and other parties-in-interest; and the Court finding that it

is proper to amend and restate the Initial Order to account for the various changes thereto; and

the Court having found that the TCEH Debtors have previously provided appropriate notice and

the opportunity for a hearing on the Application under the circumstances; and the Court finding

that (a) it continues to have jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

(b) this continues to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) venue of this

case and the Application in this district continues to be proper pursuant to 28 U.S.C. §§ 1408 and

1409; and the Court having previously reviewed the Application and having heard the statements

in support of the relief requested therein at the Hearing; and upon all of the proceedings before

the Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      This Order amends and restates the Initial Order, which upon execution of this

Order, shall be of no further force and effect.

2.      The Application is granted as set forth herein, as amended by this Order, effective

*nunc pro tunc* to November 17, 2014.

3.      To the extent the Application, the Robins Declaration, the Supplemental Robins

Declaration, the Greenhill Engagement Letter or the Initial Order is inconsistent with this Order,

the terms of this Order shall govern.

4.      The TCEH Debtors are authorized pursuant to §§ 327(a) and 328 of the

Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1 to employ and retain Greenhill

as their independent financial advisor to advise them on Conflict Matters, including whether a

matter constitutes a Conflict Matter, consistent with the terms and conditions set forth in the

Engagement Letter (as amended by this Order), effective *nunc pro tunc* to November 17, 2014,

and to pay fees and reimburse expenses to Greenhill on the terms and times specified in the

Greenhill Engagement Letter, as modified by this Order (it being understood that,

notwithstanding anything to the contrary contained in the Application, the Robins Declaration,

the Supplemental Robins Declaration, or the Greenhill Engagement Letter, the Services

approved by this Order shall be limited to those that are related to Conflict Matters (including the

determination by the TCEH Debtors' Disinterested Manager of whether any matter constitutes a

Conflict Matter)).

     5.     The terms of the Greenhill Engagement Letter are approved in all respects except

as limited or modified herein.

     6.     The term "Restructuring" as defined in the Greenhill Engagement Letter is

amended to read as follows: "Any sale, recapitalization, reorganization and/or restructuring

(including, without limitation, through any exchange, conversion, cancellation, settlement,

forgiveness, retirement and/or modification or amendment to the terms, conditions or covenants)

of all or a material portion of the Company's equity and/or debt securities and/or other

indebtedness, obligations or liabilities (including, without limitation, bank debt, swap liabilities,

pension liabilities, OPEB liabilities, preferred stock, partnership interests, capital or operating

lease obligations, trade claims, other contract or tort obligations, and other on and off balance

sheet indebtedness), however such result is achieved, including, without limitation, pursuant to

confirmation of a Plan, an exchange transaction, a solicitation of consents, waivers, acceptances

or authorization, an acquisition or sale related transaction, the issuance of new securities or debt

instruments and/or other similar transactions or series of transactions, and with respect to which

Greenhill has provided the Company and/or the Disinterested Manager advice regarding Conflict

Matters; *provided*, *however*, that no Restructuring, as such term is defined herein, shall be

deemed to have occurred following a conversion of the Bankruptcy Proceeding to a case under chapter 7 of the Bankruptcy Code."

7.     The payment of Greenhill's Monthly Advisory Fee, documented out of pocket expenses (including all fees and expenses of counsel), the Transaction Fee and the indemnification terms as set forth in the Greenhill Engagement Letter, as modified by this Order, are approved pursuant to § 328(a) of the Bankruptcy Code and Greenhill shall be compensated and reimbursed pursuant to § 328(a) of the Bankruptcy Code with respect to such amounts, subject to the procedures set forth below in paragraph 15 and in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other applicable orders of this Court.

8.     None of the fees payable to Greenhill shall constitute a "bonus" or fee enhancement under applicable law.

9.     Greenhill shall use reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these chapter 11 cases.

10.     Notwithstanding any provision to the contrary in this Order, the U.S. Trustee shall have the right to object to Greenhill's request(s) for interim and final compensation and reimbursement based on the reasonableness standard provided in § 330 of the Bankruptcy Code, not § 328(a) of the Bankruptcy Code. This Order and the record relating to the Court's consideration of the Application shall not prejudice or otherwise affect the rights of the U.S. Trustee to challenge the reasonableness of Greenhill's fees under the standard set forth in the preceding sentence. Accordingly, nothing in this Order or the record shall constitute a finding of fact or conclusion of law binding the U.S. Trustee, on appeal or otherwise, with respect to the reasonableness of Greenhill's fees.

11.     Greenhill shall include in its fee applications, among other things, time records setting forth, in summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the TCEH Debtors in half-hour increments, but Greenhill shall be excused from keeping time in tenth-hour increments.

12.     Greenhill is granted a waiver of the information requirements relating to compensation requests set forth in Local Rule 2016-2(d) to the extent requested in the Application.

13.     Greenhill shall file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in §§ 330 and 331 of the Bankruptcy Code; provided, however, the fee applications filed by Greenhill shall be subject to review only pursuant to the standard of review set forth in § 328 of the Bankruptcy Code and not subject to the standard of review set forth in § 330 of the Bankruptcy Code, except as otherwise expressly set forth herein.

14.     In the event of a conversion of all or substantially all of these chapter 11 cases to cases under chapter 7, no Transaction Fee shall be payable.

15.     Pursuant to the terms of the Greenhill Engagement Letter, Greenhill is entitled to reimbursement by the TCEH Debtors for reasonable expenses incurred in connection with the performance of its engagement under the Greenhill Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of Greenhill's counsel (which counsel shall not be required to be retained pursuant to § 327 of the Bankruptcy Code or otherwise), in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, any applicable orders of this Court and the Fee Guidelines

promulgated by the Office of the United States Trustee, provided however, that Greenhill shall

not seek reimbursement for any services provided by Greenhill's counsel to the TCEH Debtors;

provided further, that Greenhill shall attach the invoices of Greenhill's counsel together with any

application seeking allowance of reimbursement for the fees, disbursements and other charges of

its counsel.

16.     The relief granted herein shall be binding upon any chapter 11 trustee appointed

in any of these chapter 11 cases, or upon any chapter 7 trustee appointed in the event of a

subsequent conversion of any of these chapter 11 cases to cases under chapter 7.

17.     The TCEH Debtors shall be bound by the indemnification, contribution,

reimbursement, exculpation and other provisions of the Greenhill Engagement Letter, as

modified herein, and will indemnify and hold harmless Greenhill and the other Indemnified

Parties (as defined in the Greenhill Engagement Letter) pursuant to the Greenhill Engagement

Letter, subject, during the pendency of these chapter 11 cases, to the following:

(a) Greenhill shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefor are approved by the Court;

(b) the TCEH Debtors shall have no obligation to indemnify Greenhill, or provide contribution or reimbursement to Greenhill, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from Greenhill's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the TCEH Debtors allege the breach of Greenhill's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F .3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by the Court, after notice and a hearing, to be a claim or expense for which Greenhill should not receive indemnity, contribution or reimbursement under the terms of the Greenhill Engagement Letter as modified by this Order, and;

(c) if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, Greenhill believes that it is entitled to the payment of

any amounts by the TCEH Debtors on account of the TCEH Debtors' indemnification, contribution and/or reimbursement obligations under the Greenhill Engagement Letter (as modified by this Order), including, without limitation, the advancement of defense costs, Greenhill must file an application therefor in the Court, and the TCEH Debtors may not pay any such amounts to Greenhill before the entry of an order by the Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by Greenhill for indemnification, contribution or reimbursement, and not a provision limiting the duration of the TCEH Debtors' obligation to indemnify Greenhill. All parties-in-interest shall retain the right to object to any demand by Greenhill for indemnification, contribution or reimbursement.

18.     The TCEH Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

19.     Absent further order of this Court, the fees and expenses incurred by Greenhill shall be paid by the TCEH Debtors.

20.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order and the Initial Order.

Wilmington, Delaware
Dated: March 3, 2015

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATED BANKRUPTCY JUDGE

**EXHIBIT D**

**SUMMARY OF EXPENSES BY CATEGORY**

**Cumulative Expenses by Expense Category**

| Disbursements and Charges | Amount |
|---|---|
| Airfare | $16,148 |
| Hotel | 5,004 |
| Ground Transportation | 11,939 |
| Meals | 16,208 |
| Legal | 188,731 |
| Other | - |
| **Total Requested (*)** | **$238,031** |
| Adjustments per Fee Committee | (12,401.07) |
| **Total** | **$225,629.67** |

*Note: The Retention Order provides for the payment of Greenhill's legal expenses.  *See* Retention Order at paragraph 6.

2

**EXHIBIT E SUMMARYOF HOURS BY PROFESSIONALS AND BY MATTER**

**BIOGRAPHIES OF GREENHILL PROFESSIONALS**

- **Eric Mendelsohn.** Eric Mendelsohn is a Managing Director and the Head of the Financing Advisory & Restructuring Group. Prior to joining Greenhill in 2012 Mr. Mendelsohn served as a Managing Director and a founding member of Lazard's Restructuring Group for 13 years. Mr. Mendelsohn has 21 years of restructuring and debt financing experience and has advised debtor and creditors in the following restructuring transactions: Atlas Air Worldwide (Chapter 11), CAI Wireless (Prepackaged Chapter 11 restructuring), Centro Properties Group (Out-of-court restructuring), Cooper Standard (Chapter 11 restructuring), Hayes Lemmerz (Chapter 11 restructuring), H & R Block (Covenant amendment), Insight Health Services (Prepackaged Chapter 11 restructuring), Journal Register (Chapter 11 restructuring), Milacron (Out-of-court restructuring), Metaldyne (Chapter 11 restructuring), Quiznos – Lenders (Out-of-court restructuring), Sun Healthcare Group (Chapter 11 restructuring), United Auto Workers – GM (Out-of-court restructuring of retiree health obligations) and WorldCom (Chapter 11 restructuring). In addition to his work in the restructuring space, Mr. Mendelsohn has also worked on several M&A and financing transactions for the following clients: Collins & Aikman (363 Sales to WL Ross affiliate), Bearing Point – Lenders (363 Sale to Deloitte), Eddie Bauer – Lenders (363 Sale to Golden Gate), Fruit of the Loom (Chapter 11 Sale to Berkshire Hathaway), Hayes Lemmerz (Advisor and co-manager of IPO), Hilite International (Sale to 3i), H & R Block (Sale of Option One to WL Ross affiliate and registered direct equity offering), Tower Automotive (Advisor and co-manager of IPO), Tower Automotive (Chapter 11 Sale to Cerberus), US Treasury – Chrysler (Loan refinancing and equity sale), US Treasury – GM (Advisor to largest shareholder in GM's $20 billion IPO) and Air Transportation Stabilization Board – US Airways (Chapter 11 Merger with America West and private placement of restructured securities). Mr. Mendelsohn holds an MBA from The Wharton School and a BA from Middlebury College. He is licensed by the NASD and the New York Stock Exchange with a Series 7 General Securities license and Series 24 General Securities Principal license.
- **Bradley Robins.** Bradley Robins was a Managing Director and Co-Head of the Financing Advisory Restructuring Group. Prior to joining Greenhill in 2001, Mr. Robins was a Senior Officer in Houlihan Lokey Howard & Zukin's Financial Restructuring Group. Mr. Robins previously practiced law at Wachtell, Lipton, Rosen & Katz for seven years in the Creditors' Rights Department. Mr. Robins has advised debtor and creditors in the following transactions: Retirement Systems of the City of Detroit (Chapter 9), Bearing Point (Chapter 11), Refco (Chapter 11), Loral (Chapter 11), U.S. Shipping (Chapter 11), Adelphia (Chapter 11), AT&T Canada (Out-of-court restructuring), WebLink (Chapter 11), Bethlehem Steel (Chapter 11), Delta (Chapter 11), Constar International (Chapter 11), Eclipse Aviation (Chapter 11), Regal Cinemas (Chapter 11), American Commercial Lines (Out-of-court exchange offer) and AmeriServe Food Service (Chapter 11 sale).

- **Gregory Randolph.** Gregory Randolph is a Managing Director focused on opportunities in the energy and power industries. Prior to Greenhill, Mr. Randolph was a Managing Director in the energy and power group of Goldman, Sachs & Co. where he ran the Project Finance and Midstream Energy Groups. Prior to his 12 years at Goldman Sachs, he worked in the project finance group at Salomon Brothers. He began his career as an analyst at J.P. Morgan. Mr. Randolph has served as lead banker to Alliance Pipeline ($3.5bn projection financing), Ameren ($900mm sale of its merchant energy business), Atlantic Power (dividend policy and strategic alternatives), Bosque Power Company ($800mm restructuring), Capital Power ($2bn sale of the partnership to Atlantic Power); Cusiana Pipeline ($2bn project financing), Cogentrix (numerous independent power financings), Crosstex (combination with Devon Energy Corporation's midstream assets valued at $4.8bn), Deer Park ($1bn refinery financing), Dynegy (acquisition of LS Power and the subsequent sale of interests in 9 power plants to LS Power), Enron (several project financings), Hiland Partners ($3.0 sale to Kinder Morgan); HOVENSA ($1bn joint venture financing), Inergy ($475mm acquisition of Star Gas Propane and the $230mm acquisition of Stagecoach gas storage facility); Kinder Morgan (acquisition of the $950mm Trans Mountain Pipeline and $6.2bn dropdown of Tennessee Gas Pipeline and 50% of El Paso Natural Gas), Mitsubishi Diamond Energy (numerous power financings), Niska Gas Storage ($912mm sale to Brookfield Infrastructure Parnters) and Ras Laffan ($5.3bn LNG financing).
- **Richard Lieb.** Richard Lieb is a Senior Advisor at Greenhill and focuses on advisory opportunities in the real estate industry and in financial restructuring with significant experience in REIT transactions.  Mr. Lieb joined Greenhill in 2005 after a 20-year career in real estate investment banking at Goldman Sachs. Mr. Lieb has served as lead sell-side banker to The Rouse Company, The Grand Shoppes, Security Capital Group, Jacobs, Cadillac Fairview, American Health Properties and Citicorp, buy-side banker to Security Capital Group, Westfield and Vornado, and led the IPOs of General Growth, CBL, Security Capital U.S. Realty, Forest City, Cadillac Fairview and Link REIT.
- **Stephanie Shideler.** Stephanie Shideler is a Principal in the Financing Advisory & Restructuring Group. Since joining Greenhill in 2009, Ms. Shideler has advised companies across numerous industry sectors, including such companies as Ameren Corporation, Stora Enso Oyj, Inergy L.P., Bosque Power Company, and Quebecor World. Ms. Shideler has also advised creditors in the restructurings of Hawker Beechcraft and NewPage Corporation. Prior to joining Greenhill, Ms. Shideler was a Director at UBS in the Restructuring and Leveraged Finance Group. Ms. Shideler received a BA from Pomona College and an MBA from The Wharton School, University of Pennsylvania.
- **Jochen Schmitz.** Jochen Schmitz is a Vice President in the Financing Advisory & Restructuring Group. Prior to Greenhill, Mr. Schmitz worked in the banking group of WestLB New York and the merchant banking group of FCF in Europe and the Middle East. Jochen also worked in the strategy group of Levi Strauss in Hong Kong. Mr. Schmitz has advised companies across numerous sectors, including The Retirement Systems of the City of Detroit, Atlantic Power, Ameren, First United Ethanol, Draexlmaier, Starwood Energy and Hackberry Wind. Mr. Schmitz received his BSc International Business from Maastricht University and his MBA from the Hong Kong University of Science and Technology.

- **Aparajita Tripathi.** Aparajita Tripathi was an Analyst at Greenhill. During her time at Greenhill, Ms. Tripathi worked on several transactions both in the Mergers & Acquisitions as well as the Financing Advisory & Restructuring Group. Ms. Tripathi received a B.A. in Social Studies at Harvard University.
- **Laurence Coman.** Laurence Coman was an Analyst at Greenhill. During his time at Greenhill, Mr. Coman worked on several transactions both in the Mergers & Acquisitions as well as the Financing Advisory & Restructuring Group. Mr. Coman received a B.S. in Economics from The Wharton School and a B.A. in International Studies from the The College of Arts & Sciences at the University of Pennsylvania.
- **Timothy Mergenthal.** Timothy Mergenthal was an Analyst at Greenhill. During his time at Greenhill, Mr. Mergenthal worked on several transactions both in the Mergers & Acquisitions as well as the Financing Advisory & Restructuring Group. Mr. Mergenthal received a B.S. in Commerce at the University of Virginia.
- **Ludwig Kerck.** Ludwig Kerck was an Analyst at Greenhill. During his time at Greenhill, Mr. Kerck worked on several transactions both in the Mergers & Acquisitions as well as the Financing Advisory & Restructuring Group. Mr. Kerck received a B.A. in International Studies and Hispanic Studies from the The College of Arts & Sciences at the University of Pennsylvania.
- **Frances Wang.** Frances Wang is an Analyst at Greenhill. Since joining Greenhill in 2015, Ms. Wang has worked on several transactions both in the Mergers & Acquisitions as well as the Financing Advisory & Restructuring Group. Ms. Wang received a B.A. in Computer Science and Economics at Wellesley College.

## SUMMARY OF HOURS BY PROFESSIONALS

Greenhill professionals rendering services during the Compensation Period were:

| Name of Professional | Position | Total Hours |
|---|---|---|
| Bradley A. Robins | Co-Head of Restructuring | 875.0 |
| Eric Mendelsohn | Co-Head of Restructuring | 953.0 |
| Gregory G. Randolph | Managing Director | 85.5 |
| Stephanie Shideler | Principal | 897.5 |
| Jochen Schmitz | Vice President | 1,446.0 |
| Aparajita Tripathi | Analyst | 458.5 |
| Laurence Coman | Analyst | 334.0 |
| Timothy Mergenthal | Analyst | 1,792.0 |
| Ludwig Kerck | Analyst | 70.5 |
| Frances Wang | Analyst | 112.5 |
| **Total** | | **7,024.5** |

(Greenhill does not charge hourly rates to TCEH Debtors and no hourly rates are associated with any Greenhill professionals.)

*Note: Hours exclude certain Greenhill employees (such as legal, administrative and research personnel) who have worked on this matter during the period, but do not report their hours worked in connection with this matter.

## SUMMARY OF HOURS BY MATTER

Greenhill professionals rendered the following services during the Compensation Period:

| Project Category | Total Hours |
|---|---|
| Communication with Professionals and Parties-In-Interest | 1,844.5 |
| Preparation and / or Review of Court Filings | 122.5 |
| Court Testimony / Deposition and Preparation | 684.5 |
| Valuation & Recoveries Analysis | 1,431.0 |
| Capital Structure Review & Analysis | 80.0 |
| Merger & Acquisition Research | 73.0 |
| General Financial Analysis, Research & Diligence | 2,139.0 |
| Plan of Reorganization | 286.0 |
| General Case Administration & Other | 364.0 |
| **Total** | **7,024.5** |

*Note: Hours exclude certain Greenhill employees (such as legal, administrative and research personnel) who have worked on this matter during the period, but do not report their hours worked in connection with this matter.

7