IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ENERGY FUTURE HOLDINGS CORP., *et al.*,<br><br>Debtors. | ) Chapter 11<br>)<br>) Case No. 14-10979 (CSS)<br>)<br>) (Jointly Administered)<br>)<br>) **Re: D.I. 9612**<br>) **Hearing Start Date: December 1, 2016 at 10:00 a.m. ET**<br>) **Objection Deadline: November 15, 2016 at 11:59 p.m. ET (extended with consent by Debtors)** |

**LIMITED OBJECTION OF UMB BANK, N.A., AS INDENTURE TRUSTEE, TO CONFIRMATION OF THE FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF ENERGY FUTURE HOLDINGS CORP., *ET AL.* PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

UMB Bank, N.A., as Indenture Trustee (the "Trustee") for the unsecured 11.25%/12.25% Senior Toggle Notes Due 2018 and the 9.75% Senior Notes due 2019, by and through its undersigned counsel, files this limited objection (the "Limited Objection") in connection with confirmation of the *Fourth Amended Joint Plan of Reorganization of Energy Future Holdings Corp., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 9612] as it relates to the "E-Side Debtors" (the "Plan").[1] In support of this Limited Objection, the Trustee respectfully submits as follows:

**LIMITED OBJECTION**

1. As previously highlighted by the Trustee in its limited objection (the "Disclosure Statement Objection") [D.I. 8575] to approval of the Disclosure Statement for the E-Side Debtors (the "Disclosure Statement"), the Trustee is supportive of the E-Side Debtors' efforts to quickly proceed toward confirmation of a chapter 11 plan for the E-Side Debtors' estates,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan or the Disclosure Statement, as applicable.

including confirmation and consummation of this Plan.[2] As the Court is well aware, these cases were commenced two and a half years ago. The Trustee believes that a prolonged and a heavily contested confirmation hearing would only result in further reduction of creditor recoveries. Thus, assuming the EFIH Unsecured Noteholders in Class B6 vote to accept the Plan, and subject to the issues raised herein, the Trustee is supportive of Plan confirmation. The EFIH Unsecured Noteholders, in voting to accept the Plan, will have demonstrated that they too support this goal and, in doing so, are willing to make significant economic concessions (*i.e.*, waiver of Makewhole Claims, cap on postpetition interest at the Federal Judgment Rate). These concessions provide junior creditor constituencies with increased recoveries to which they were otherwise not entitled, all in an effort to smooth the E-Side Debtors' exit from bankruptcy.

2. Nevertheless, despite this shared goal, certain refinements are needed in the Plan Supplement and/or the Confirmation Order before the Plan can be confirmed. Accordingly, the Trustee files this Limited Objection.

### A. Distributions that Will Be Made to Holders of Class B6 Claims on the Effective Date Must be Provided for in the Confirmation Order

3. As first highlighted in the Disclosure Statement Objection, the E-Side Debtors still have not committed to providing any distribution to the holders of Class B6 claims on the Effective Date. Rather, the Plan merely states that the holders of Class B6 claims *may* receive a distribution on the Effective Date (*see* Plan at VI.A), dependent on the EFH Plan Administrator Board making a determination with respect to, among other things, certain Claim and reserve amounts. *See id.* This means that, very likely, the timing, and amount, of distributions to the EFIH Unsecured Noteholders will be in limbo on the Effective Date, with no guarantee of when

---

[2] This Limited Objection, and the Trustee's support of the Plan, is premised on the Trustee's belief that the EFIH Unsecured Noteholders will, as a class, vote to accept the Plan. In the event that Class B6 does not vote to accept the Plan, the Trustee reserves all rights to object to confirmation of the Plan and argue, among other things, that the Plan does not satisfy the requirements of Bankruptcy Code section 1129.

*any* distributions will be made to EFIH Unsecured Noteholders. As part of the Plan Supplement, the E-Side Debtors have provided a good-faith estimate that they will need to reserve $100 million to account for various amounts owed under the Plan. *See* Plan Supplement, Exhibit M. Upon information and belief, more than sufficient value exists in the "waterfall" to provide for payment *in full* of the currently Allowed EFIH Unsecured Note Claims on the Effective Date, while also providing for any necessary and appropriate reserves.

4.    Despite evidence supporting this outcome, the E-Side Debtors have refused to provide additional clarity and/or certainty regarding the distribution timing and process, relying instead on an opaque statement that the EFIH Unsecured Noteholders *may* receive a distribution on the Effective Date. In fact, the E-Side Debtors have failed to provide *any* reason why a significant portion, if not all, of the distribution to be made to the EFIH Unsecured Noteholders should not be made on the Effective Date. As such, the Plan and Confirmation Order should require a significant, if not a full, distribution to the EFIH Unsecured Noteholders on the Effective Date. Furthermore, to the extent that the E-Side Debtors fail to make distributions in full on the Effective Date to the holders of the EFIH Unsecured Note Claims, the Trustee reserves the right to request that the Court compel the E-Side Debtors to timely make distributions to the EFIH Unsecured Noteholders in full and/or provide additional information related to the expected timing and amount of the distribution(s).

### B. *There Should be a Mechanism to Review and/or Challenge the Reserves Being Established under the Plan*

5.    As noted above, certain reserves are being established under the Plan. In the Plan Supplement, the E-Side Debtors have estimated that $100 million will be needed to fund these reserves. However, the E-Side Debtors fail to provide support for how these reserve amounts were estimated nor do the E-Side Debtors provide any mechanism for review, or objecting to,

3

these amounts. *See* Plan Supplement, Exhibit M. The Plan and/or Confirmation Order should be modified to provide for these review rights. Further, to the extent the EFIH Unsecured Noteholders do not receive a distribution in full on the Effective Date, the Trustee reserves all rights to object, challenge and/or seek further relief from the Court related to such estimates and the establishment of such reserves and the Confirmation Order should reflect this.

### C. *More Transparency Must be Required of EFH Plan Administrator Board*

6.  The Plan provides for the establishment of the EFH Plan Administrator Board. Pursuant to the Plan, the EFH Plan Administrator Board is authorized to set up certain reserves and make distributions to holders of Claims against the E-Side Debtors. Although the Disclosure Statement provides that certain distribution reports will be made to the advisors to the Trustee, there is no clarity on administration and governance of the EFH Plan Administrator Board (including oversight for making distributions), nor on how the EFH/EFIH Distribution Account will be managed and the mechanics and oversight for making distributions from this account. The particulars of the EFH Plan Administrator Board and EFH/EFIH Distribution Account are only relevant to the Trustee to the extent the EFIH Unsecured Noteholders are not entitled to receive their distribution in full on the Effective Date. However, because the timing of distributions remains an open issue, the Trustee requests that the Court require the Debtors to provide creditors with clarity regarding the expected timing for distributions and reserves all rights to come before this Court to the extent it has concerns regarding the EFH Plan Administrator Board and/or the EFH/EFIH Distribution Account.

### D. Clarification is Required in the Plan Supplement or Confirmation Order Regarding Payment of the EFIH Unsecured Notes Trustee Fees and Expenses

7. The Plan provides that the EFH Plan Administrator Board will pay the unpaid EFIH Unsecured Notes Trustee Fees and Expenses, subject to approval by the Fee Committee and the Bankruptcy Court, but that, for the avoidance of doubt, "such fees and expenses shall not be included in the amount of any Allowed Claims under the EFIH Unsecured Notes Indentures." *See* Plan at IV.R.[3] The Trustee agrees that if the EFIH Unsecured Notes Trustee Fees and Expenses are approved by the Fee Committee and the Bankruptcy Court, then such fees and expenses need not be included in the amount of any Allowed Claims under the EFIH Unsecured Notes Indenture. However, to the extent any of these fees and expenses are not approved by the Fee Committee and the Bankruptcy Court under Article IV of the Plan, the EFIH Unsecured Notes Trustee reserves the right not only to assert its further charging lien rights, but to argue that these fees and expenses should properly be paid as part of or in conjunction with the "Allowed" EFIH Unsecured Note Class B6 Claims, separate and independent of the procedures set forth in the Plan. *See id.* at III.B(22) (providing, under the Allowance provision, that the EFIH Unsecured Note Claims are Allowed in an amount equal to the sum of, among other things "the amount of ***any other Claims*** (but in any case excluding the Makewhole Claims) under the EFIH Unsecured Notes or EFIH Unsecured Note Indentures, if and to the extent such Claims are Allowed. . . .") (emphasis added). To the extent the Plan can be read to cut off this right, or purports to serve as an objection to treating these EFIH

---

[3] The Plan also clarifies that nothing in the Plan shall limit, impair or modify the Trustee's ability or right to exercise the charging lien pursuant to the EFIH Unsecured Note Indentures post-Confirmation. *See id.* at III.B(22).

5

Unsecured Notes Trustee Fees and Expenses as "Allowed" Claims,[4] the Trustee objects to this provision. Language should be added to the Confirmation Order preserving the Trustee's ability to pursue this option.

8.  In addition, the E-Side Debtors filed in the last several days fee review procedures for "non-retained professionals." *See* Plan Supplement, Exhibit F (the "Fee Procedures"). Under the Fee Procedures, the non-retained professionals must submit to, among other parties, the E-Side Debtors and the U.S. Trustee full invoices for fees incurred through the EFH Effective Date, within 45 days of the Effective Date. The E-Side Debtors (or Reorganized EFH) will then pay the applicable professional 80% of the requested fees and 100% of the requested expenses within 10 business days after receipt of such invoices. The Fee Procedures do not expressly prohibit the Trustee and its advisors from submitting invoices, and receiving approval and payment on account of such fees and expenses, after confirmation of the Plan but *prior to* the Effective Date. The Trustee intends to do just that, and requests that the Plan Supplement expressly provide for the submission of fees following the EFH Confirmation Date. Processing the Trustee's outstanding fees and expenses in advance of the Effective Date will potentially limit the need for the Trustee to hold back and apply, pursuant to its charging lien, a substantial reserve or amount

---

[4] Article VII.A of the Plan provides that "[e]xcept as specifically provided as Allowed Claims pursuant to Article III.B of the Plan or otherwise objected to by the Debtors in the Chapter 11 Cases, the Plan shall serve as the Debtors' objection to all other. . . EFIH Unsecured Note Claims. . . under the respective Indentures." It is not clear whether this language is meant to serve as an objection to treating the EFIH Unsecured Notes Trustee Fees and Expenses as Allowed Claims if not paid pursuant to Article IV.R of the Plan. To the extent the Plan purports to serve as a "claim objection" for the Allowance of any Claims arising under the EFIH Unsecured Notes Indentures, the Trustee questions whether a plan of reorganization can ever properly be used as a claim objection. *See, e.g.*, Fed. R. Bankr. P. 3001(f); 3007(a) (setting forth the procedural requirements for a claim objection); *In re Dynamic Brokers, Inc.*, 293 B.R. 489, 496 (B.A.P. 9th Cir. 2003) ("Not only is it more difficult for a creditor to litigate against the entire collective body of other creditors and owners in a plan confirmation proceeding, but the evidence relevant to a plan confirmation is so different from the evidence relevant to a claim objection that the two proceedings simply do not form a convenient trial unit."). Even if a plan of reorganization can serve as a claim objection in certain circumstances, it is not proper here, where the E-Side Debtors attempt to object to such Claims through one sentence in the Plan, without additional detail of what specific Claims are the subject of the objection or the basis thereof. Accordingly, clarifying language must be added to the Confirmation Order addressing this point, and preserving the Trustee's right to argue that the EFIH Unsecured Notes Trustee Fees and Expenses are Allowed Claims.

on account of accrued fees and expenses from distributions made to EFIH Unsecured Noteholders on or around the Effective Date. As such, the procedures should be clarified to reflect that this is permissible.

### *E. Clarification is Necessary Regarding the Precise Allowance and Disallowance of EFIH Unsecured Noteholder Claims and Related Procedural Requirements*

9. In addition to the issues addressed above, the Confirmation Order should provide absolute clarity regarding the intended disallowance of, and required next steps with respect to, the Trustee's Makewhole Claims and claims for postpetition interest in excess of the federal judgment rate. Specifically, to avoid any confusion, the Confirmation Order should contain clear language regarding the effect of the Plan in disallowing those claims, including mooting the Trustee's appeal of this Court's ruling regarding the Trustee's postpetition interest claims and any potential request for this Court to exercise its equitable power to require payment of additional postpetition interest beyond the federal judgment rate based on certain equitable factors (in accordance with this Court's remarks in its October 30, 2015 Opinion [D.I. 6782]). Furthermore, insofar as the confirmed Plan would seem to require the dismissal of the Trustee's pending appeals with respect to its Makewhole Claims and claims for postpetition interest beyond the federal judgment rate, the Confirmation Order should clearly articulate and dictate such requirement and related procedures.

## **RESERVATION OF RIGHTS**

10. As of the date hereof, the proposed Confirmation Order has not yet been filed. The Trustee has been in communications with the advisors to the Debtors regarding certain clarifying language that they believe should be included in the Confirmation Order. Although the E-Side Debtors seemed receptive to including this clarifying language, the Trustee has not yet seen a draft of the Confirmation Order. The Trustee reserves all rights to object to, or

request changes to the proposed Confirmation Order, after it has had a chance to fully review the filed version.

11.     This Limited Objection is submitted without prejudice to, and with a full reservation of, the Trustee's right to supplement this Limited Objection or to file further objections to Plan confirmation in advance of or in connection with confirmation of the Plan. Nothing herein shall be deemed to waive the Trustee's right to assert any additional arguments in connection with confirmation of the Plan or in response to any objection to the Trustee's claims or rights under the Plan.

[*Remainder of page intentionally left blank.*]

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth in this Limited Objection, the Trustee respectfully requests that the Court (a) order that the Plan and/or Confirmation Order be modified to address the concerns raised in this Limited Objection and (b) grant such other and further relief as the Court deems appropriate under the circumstances.

Dated: November 15, 2016
Wilmington, Delaware

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira S. Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036
Telephone:    (212) 872-1000
Facsimile:    (212) 872-1002

Scott L. Alberino (admitted *pro hac vice*)
Joanna F. Newdeck (admitted *pro hac vice*)
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Telephone:    (202) 887-4000
Facsimile:    (202) 887-4288

By:  */s/ Raymond H. Lemisch*
**KLEHR HARRISON HARVEY BRANZBURG LLP**
Raymond H. Lemisch (DE ID No. 4204)
919 Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 426-1189
Facsimile: (302) 426-9193

*-and-*

**FOLEY & LARDNER LLP**
Harold L. Kaplan (admitted *pro hac vice*)
Mark F. Hebbeln (admitted *pro hac vice*)
Lars A. Peterson (admitted *pro hac vice*)
321 North Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700

Barry G. Felder (admitted *pro hac vice*)
Jonathan H. Friedman (admitted *pro hac vice*)
90 Park Avenue
New York, NY 10016
Telephone: (212) 682-7474
Facsimile: (212) 687-2329

*Co-Counsel for UMB BANK, N.A., as Trustee*